1    • a document containing the product launch dates and related advertising
2        for all Mattel new products between Fall 2005 and Spring 2006.

3    75.   After Mattel discovered that Brisbois had copied these sensitive
4    documents to a thumb drive, Mattel notified Canadian law enforcement authorities.
5    Canadian law enforcement authorities recovered from Brisbois a thumb drive with
6    the volume label "BACKPACK" containing the documents that Brisbois had
7    copied from Mattel's computer system.  Mattel later learned that while she was
8    working as a Vice President of Sales at MGA, Brisbois accessed and modified
9    documents on that thumb drive.

10    76.   After joining MGA, Brisbois repeatedly traveled to MGA's
11   offices in Van Nuys, California and met with Larian and Brawer.  In February,
12   2006, knowing that Mattel trade secrets had been seized from MGA's Mexico City
13   offices and that at least three MGA employees were under criminal investigation,
14   MGA nonetheless issued a press release trumpeting its 2005 performance, with
15   Larian himself concluding, "Our international teams in Mexico and Canada have
16   done a fantastic job."

17   **VII. MGA PERSUADES OTHER EMPLOYEES LEAVING MATTEL TO**
18   **JOIN MGA TO MISAPPROPRIATE MATTEL TRADE SECRETS**
19   **FOR THE BENEFIT OF MGA**

20    77.   In the past few years, MGA has hired directly from Mattel's
21   United States operations at least 25 employees, from Senior Vice-President level to
22   lower level employees.  On information and belief, many of these employees were
23   specifically targeted and recruited by MGA, including by Larian and Brawer, based
24   on the Mattel confidential and proprietary information they could access.  Many of
25   these employees had access to information that Mattel considers to be highly
26   proprietary and confidential.  Mattel believes that some of those former Mattel
27   employees may be observing their obligations not to misappropriate, disclose or
28   use Mattel's confidential and proprietary information.  Mattel is informed and

EXHIBIT 3 PAGE 82

-51-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  believes, however, that certain additional employees accessed, copied and took

2  from Mattel confidential and proprietary information, including Mattel's strategic

3  plans; business operations, methods and systems; marketing and advertising

4  strategies and plans; future product lines; product profit margins; and customer

5  requirements. The misappropriated confidential and proprietary information

6  included information that these Mattel employees were not authorized to access.

7  On information and belief, the misappropriated confidential and proprietary

8  information taken from Mattel is being disclosed to and used by MGA for the

9  benefit of MGA and to the detriment of Mattel.

10 **VIII. LARIAN MAKES MISREPRESENTATIONS TO RETAILERS**

11 **ABOUT MATTEL'S PRODUCTS**

12        78.    Counter-defendants have engaged in other illegal practices in

13 their efforts to compete unfairly with Mattel. Larian has a practice of sending e-

14 mail messages to a "Bratz News" distribution list that Larian created or that was

15 created for him. Mattel is informed and believes that the recipients of e-mail

16 messages sent to the "Bratz News" distribution list include members of the media

17 as well as representatives of many of Mattel's most significant customers.

18        79.    On May 12, 2006, Larian sent an e-mail message to the "Bratz

19 News" distribution list that included a reference to Mattel's updated MY SCENE

20 MY BLING BLING product with real gems. Mattel had not publicly announced

21 this product at the time that Larian sent his May 12, 2006 e-mail. In fact, Mattel

22 had guarded the identification of this particular product.

23        80.    Shortly thereafter, Larian engaged in a campaign of calling

24 Mattel's most significant customers, including but not limited to Target and TRU,

25 regarding the MY SCENE MY BLING BLING product with real gems. In an

26 effort to dissuade these retailers from purchasing Mattel's MY SCENE MY BLING

27 BLING product with real gems, Larian knowingly made false factual statements

28 about that product to each retailer. As of the writing of this Second Amended

1 Answer and Counterclaims, Mattel is aware that Larian represented to each retailer

2 that each was the only retailer to purchase the product and that Mattel would not be

3 supporting the product with television advertising.  At the time that Larian made

4 these statements, he knew them to be false.  As a result of Larian's

5 misrepresentations, at least one retailer cancelled its order for 75,000 units of the

6 MY SCENE MY BLING BLING product with real gems.  Only after Mattel

7 learned of Larian's misrepresentations and was able to correct them was Mattel able

8 to assure the retailer that Larian's representations were false and to persuade the

9 retailer to reinstate the order.

10        81.   Such conduct is not an isolated incident.  MGA and Larian, in an

11 effort to gain an unfair competitive advantage, repeatedly issued false and

12 misleading press releases.  In these press releases, MGA and Larian have

13 misrepresented Bratz's sales, Bratz's market share, Bratz's position vis-à-vis

14 Mattel's BARBIE products, sales of Mattel's BARBIE products, and the market

15 share of Mattel's BARBIE products.

16 **CLAIMS FOR RELIEF**

17 **<u>First Counterclaim</u>**

18 **Copyright Infringement**

19 **(Against MGA, MGA Entertainment (HK) Limited,**

20 **Larian, Bryant and Does 4 through 10)**

21       82.   Mattel repeats and realleges each and every allegation set forth in

22 paragraphs 1 through 81, above, as though fully set forth at length.

23       83.   Mattel is the owner of copyrights in works that are fixed in

24 tangible media of expression and that are the subject of valid, and subsisting,

25 copyright registrations owned by Mattel.  These include, without limitation, the

26 works that are the subject of Registrations VA 1-378-648, VA 1-378-649, VA 1-

27 378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-

28

EXHIBIT __3__ PAGE __84__

2154363.2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-378-660, VAu 715-270, VAu 715-271 and VAu 715-273.

84.   Counter-defendants have reproduced, created derivative works from and otherwise infringed upon the exclusive rights of Mattel in its protected works without Mattel's authorization.  Counter-defendants' acts violate Mattel's exclusive rights under the Copyright Act, including without limitation Mattel's exclusive rights to reproduce its copyrighted works and to create derivative works from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and 501.

85.   Counter-defendants' infringement (and substantial contributions to the infringement) of Mattel's copyrighted works is and has been knowingly made without Mattel's consent and for commercial purposes and the direct financial benefit of Counter-defendants.  Counter-defendants, moreover, have deliberately failed to exercise their right and ability to supervise the infringing activities of others within their control to refrain from infringing Mattel's copyrighted works and have failed to do so in order to deliberately further their significant financial interest in the infringement of Mattel's copyrighted works.  Accordingly, Counter-defendants have engaged in direct, contributory and vicarious infringement of Mattel's copyrighted works.

86.   By virtue of defendants' infringing acts, Mattel is entitled to recover Mattel's actual damages plus Counter-defendants' profits, Mattel's costs of suit and attorneys' fees, and all other relief permitted under the Copyright Act.

87.   Counter-defendants' actions described above have caused and will continue to cause irreparable damage to Mattel, for which Mattel has no remedy at law.  Unless Counter-defendants are restrained by this Court from continuing their infringement of Mattel's copyrights, these injuries will continue to occur in the future.  Mattel is accordingly entitled to injunctive relief restraining Counter-defendants from further infringement.

EXHIBIT __3_ PAGE _85_

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

## Second Counterclaim

### Violation of the Racketeer Influenced and Corrupt Organizations Act

### 18 U.S.C. §§ 1962(c) and 1964(c)

### (Against All Counter-defendants)

88.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 87, above, as though fully set forth at length.

89.   Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas and Brisbois were employed by and associated-in-fact with an enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "MGA Criminal Enterprise").  The MGA Criminal Enterprise is made up of the MGA Group (MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, certain of the Doe Counter-defendants and Brawer), the Bryant Group (Bryant and certain of the Doe Counter-defendants), the Mexican Group (Machado, Trueba and Vargas) and the Canadian Group (Brisbois).  In addition, beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, were employed by and associated-in-fact with a second enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "Bratz Criminal Enterprise").

90.   MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois, and the Other Former Employees, and each of them, for the purpose of executing and attempting to execute the scheme to improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information, by

EXHIBIT 3 PAGE 56

2154363.2

1   means of tortious, fraudulent and criminal conduct, did and do unlawfully, willfully

2   and knowingly conduct and participate, directly and indirectly, in the conduct of

3   the MGA Criminal Enterprise's affairs and, in the case of MGA, MGA

4   Entertainment (HK) Limited, Larian, Bryant, and certain of the Doe Counter-

5   defendants, the Bratz Criminal Enterprise's affairs, through a pattern of

6   racketeering activity.  Their actions include multiple, related acts in violation of:

7   18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1512

8   (tampering with a witness victim, or informant), 18 U.S.C. § 1952 (interstate and

9   foreign travel to aid racketeering), and 18 U.S.C. § 2319(a) and 17 U.S.C. §

10   506(a)(1)(A) (criminal copyright infringement).

11        91.   MGA, MGA Entertainment (HK) Limited, MGA de Mexico,

12   Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas,

13   Brisbois, and the Other Former Employees, and each of them, shared the common

14   purpose of enabling MGA to obtain confidential, proprietary and otherwise

15   valuable Mattel property through improper means in order to assist MGA in

16   illegally competing with Mattel domestically and throughout the world.

17        92.   The MGA Criminal Enterprise and Bratz Criminal Enterprise as

18   described herein are and have been at all relevant times continuing enterprises

19   because, among other reasons, each is designed to and did unlawfully acquire the

20   confidential business information and property of Mattel and incorporated this

21   information and property into MGA's ongoing business, marketing strategies and

22   business methods, practices and processes.  The conduct of each enterprise

23   continues through the date of this Second Amended Answer and Counterclaims and

24   is ongoing by virtue of MGA's continuing use of Mattel's information and property,

25   all to the detriment of Mattel.

26        93.   The pattern of racketeering activity, as defined by 18 U.S.C.

27   §§ 1961(1) and (5), presents both a history of criminal conduct and a distinct threat

28   of continuing criminal activity.  This activity consists of multiple acts of

2154363.2

-56-

EXHIBIT __3__ PAGE __87__

1 | racketeering by each member of the MGA Criminal Enterprise and Bratz Criminal

2 | Enterprise, is interrelated, not isolated and is perpetrated for the same or similar

3 | purposes by the same persons.  This activity extends over a substantial period of

4 | time, up to and beyond the date of this Second Amended Answer and

5 | Counterclaims.  These activities occurred after the effective date of 18 U.S.C.

6 | §§ 1961 *et seq.,* and the last such act occurred within 10 years after the commission

7 | of a prior act of racketeering activity.  These racketeering activities included

8 | repeated acts of:

9 |     (a)   Mail Fraud:  Counter-defendants MGA, MGA Entertainment

10 |            (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and

11 |            Does 4 through 10, aided and abetted by each other and some or

12 |            all of the remaining members of the MGA Criminal Enterprise,

13 |            having devised a scheme or artifice to defraud Mattel of its

14 |            confidential trade secret information and property by conversion,

15 |            false representations, concealment and breaches of fiduciary duty,

16 |            did for the purpose of furthering and executing such a scheme or

17 |            artifice to defraud, deposited or caused to be deposited matters or

18 |            things to be sent or delivered by the Postal Service, or any private

19 |            or commercial interstate carrier, or took or received matters or

20 |            things therefrom, or knowingly caused matters or things to be

21 |            delivered by mail or such carrier according to the direction

22 |            thereon, or at the place at which it is directed to be delivered by

23 |            the person to whom it is addressed, in violation of 18 U.S.C.

24 |            § 1341 and 18 U.S.C. § 2, as alleged with greater particularity in

25 |            the foregoing paragraphs and as evidenced by, among other

26 |            things, the true and correct copies of communications and other

27 |            evidence included in Exhibit C;

28 |

EXHIBIT 3 PAGE 58

154363.2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

(b) <u>Wire Fraud</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, having devised a scheme or artifice to defraud Mattel of its confidential and trade secret information and property by conversion, false representations, concealment and breaches of fiduciary duty, did for the purpose of furthering and executing such a scheme or artifice to defraud, transmit and cause to be transmitted by means of wire communications in interstate or foreign commerce, writing, signs, signals, pictures or sound, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs and as evidenced by, among other things, the true and correct copies of communications and other evidence included in Exhibit C;

(c) <u>Tampering With a Witness, Victim or Informant</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, did corruptly alter, destroy, mutilate, or conceal more than one record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding, including this action, including without limitation by:

   i.     altering Bryant's contract with MGA relating to Bratz to conceal evidence that Bryant faxed the contract from the BARBIE COLLECTIBLES department of Mattel, using a fax

EXHIBIT _3_ PAGE _59_

1   machine owned by Mattel and while Bryant was employed by

2   Mattel;

3      ii. altering numerous original Bratz drawings created

4   by Bryant by adding false and misleading date notations of

5   "8/1998" and "© 8/1998" to the drawings even though the

6   drawings were not created in August 1998; and

7      iii. destroying electronic and other evidence, including

8   by destroying evidence previously contained on Carter Bryant's

9   and Isaac Larian's computer hard drives.

10      Such actions are in violation of 18 U.S.C. § 1512 and 18

11   U.S.C. § 2, as alleged with greater particularity in the foregoing

12   paragraphs;

13    (d) <u>Interstate and Foreign Travel in Aid of Racketeering Enterprises</u>:

14   Counter-defendants MGA, MGA Entertainment (HK) Limited,

15   MGA de Mexico, Larian, Bryant, Machado and Does 4 through

16   10, aided and abetted by each other and some or all of the

17   remaining members of the MGA Criminal Enterprise, traveled in

18   interstate and foreign commerce, or used the mail or any facility

19   in interstate or foreign commerce, with the intent to promote,

20   manage, establish, carry on and facilitate the promotion,

21   management, establishment and carrying on of unlawful activity,

22   *i.e.* bribery, in violation of the laws of the State of California,

23   *Cal. Penal Code* § 641.3, all in violation of 18 U.S.C. § 1952 and

24   18 U.S.C. § 2, as alleged with greater particularity in the

25   foregoing paragraphs;

26    (e) <u>Criminal Copyright Infringement</u>: Counter-defendants MGA,

27   MGA Entertainment (HK) Limited, MGA de Mexico, Larian,

28   Bryant, Machado and Does 4 through 10, aided and abetted by

EXHIBIT __3__ PAGE __90__

1  each other and some or all of the remaining members of the MGA

2  Criminal Enterprise, willfully infringed Mattel's copyrights,

3  including with respect to documents containing Mattel trade

4  secret and confidential information, for purposes of commercial

5  advantage and private financial gain, all in violation of 18 U.S.C.

6  § 2319(a) and 17 U.S.C. § 506(a)(1)(A), as alleged with greater

7  particularity in the foregoing paragraphs.

8       94.   The persons alleged herein to have violated 18 U.S.C. § 1962(c)

9  are separate from, though employed by or associated with, MGA, the MGA Group,

10  the Bryant Group, the Mexican Group and the Canadian Group.

11      95.   MGA had a role in the racketeering activity that was distinct

12  from the undertaking of those acting on its behalf.  MGA also attempted to benefit,

13  and did benefit, from the activity of its employees and agents alleged herein, and

14  thus was not a passive victim of racketeering activity, but an active perpetrator.

15      96.   Mattel has been injured in its business or property as a direct

16  and proximate result of the Counter-defendants' and the other enterprise members'

17  violations of 18 U.S.C. § 1962(c), including injury by reason of the predicate acts

18  constituting the pattern of racketeering activity.

19      97.   As a result of the violations of 18 U.S.C. § 1962(c), by MGA,

20  MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado,

21  Does 4 through 10, Brawer, Trueba, Vargas, Brisbois and the Other Former

22  Employees, Mattel has suffered substantial damages, in an amount to be proved at

23  trial.  Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to recover treble its

24  general and special compensatory damages, plus interest, costs and attorneys, fees,

25  incurred by reason of Counter-defendants' violations of 18 U.S.C. § 1962(c).

26

27

28

EXHIBIT __3__ PAGE _91_

-60-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

### Third Counterclaim

**Conspiracy To Violate the Racketeer**

**Influenced And Corrupt Organizations Act**

**(18 U.S.C. §§ 1962(d) and 1964(c))**

**(Against All Counter-defendants)**

98.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 97, above, as though fully set forth at length.

99.   Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois and the Other Former Employees willfully, knowingly and unlawfully, did conspire, combine, confederate and agree together to violate 18 U.S.C. § 1962(c).

100.   These conspirators were employed by and associated-in-fact with the MGA Criminal Enterprise engaging in, and the activities of which affect, interstate and foreign commerce.  Specifically, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the MGA Criminal Enterprise's affairs through a pattern of racketeering activity.  In addition, MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the Bratz Criminal Enterprise's affairs through a pattern of racketeering activity.

101.   The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), including acts of mail fraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2; acts of wire fraud in violation of 18 U.S.C. § 1343 and 18

EXHIBIT __3__ PAGE 92

1  U.S.C. § 2; acts of tampering with witnesses, victims or informants in violation of

2  18 U.S.C. § 1512 and 18 U.S.C. § 2; acts of interstate and foreign travel in aid of

3  racketeering enterprises in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2; and

4  acts of criminal copyright infringement in violation of 18 U.S.C. § 2319(a) and 17

5  U.S.C. § 506(a)(1)(A).

6      102. Counter-defendants and the other members of the MGA Criminal

7  Enterprise schemed to defraud Mattel and steal its property and trade secret

8  information by means of false representation, breaches of fiduciary duty,

9  conversation and concealment, as more fully set forth in the foregoing paragraphs.

10     103. In furtherance of this unlawful conspiracy, and to effect its

11  objectives, Counter-defendants and various co-conspirators committed numerous

12  overt acts, including but not limited to those set forth in the foregoing paragraphs.

13     104. Mattel has been injured in its business or property as a direct and

14  proximate result of the Counter-defendants' and the other enterprise members'

15  violations of 18 U.S.C. § 1962(d), including injury by reason of the predicate acts

16  constituting the pattern of racketeering activity.

17     105. As a result of the conspiracies between and among all Counter-

18  defendants and the other conspirators to violate 18 U.S.C. § 1962(c), Mattel has

19  suffered substantial damages, in an amount to be proved at trial. Pursuant to 18

20  U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special

21  compensatory damages, plus interest, costs and attorneys, fees, incurred by reason

22  of Counter-defendants' violations of 18 U.S.C. § 1962(d).

23              **Fourth Counterclaim**

24         **Misappropriation of Trade Secrets**

25   **(Against Counter-defendants MGA, MGA de Mexico,**

26         **Larian, Machado and Does 4 through 10)**

27     106. Mattel repeats and realleges each and every allegation set forth in

28  paragraphs 1 through 105, above, as though fully set forth at length. EXHIBIT __3__ PAGE 93

2154363.2

-62-

107.  As used herein, "Trade Secret Material" shall mean the documents, materials and information stolen by Machado, Trueba, Vargas, Brisbois, the Other Former Employees, and other persons acting for, on behalf of or at the direction of MGA and/or Larian.  Prior to their theft by Counter-defendants, the Trade Secret Materials gave Mattel a significant competitive advantage over its existing and would-be competitors, including MGA.  This advantage, as to MGA, has now been compromised as a result of Counter-defendants' unlawful activities.

108.  Mattel made reasonable efforts under the circumstances to maintain the confidentiality of the Trade Secret Materials, including by having employees and consultants who may have access the Trade Secret Materials sign confidentiality agreements that oblige them not to disclose the Trade Secret Materials or characteristics of the Trade Secret Materials; by limiting the circulation of said materials within Mattel; by protecting and limiting access to computers with log-in identifications and passwords; by limiting each employee's access to electronic files to those that the particular employee needs to access; by educating employees on the nature of Mattel's information that is confidential and proprietary; and by reminding employees on a regular and periodic basis of their obligation to protect and maintain Mattel's confidential and proprietary information.

109.  Mattel's Trade Secret Materials derive independent economic value from not being generally known to the public or to other persons who can obtain economic benefit from their disclosure.

110.  Counter-defendants have illegally obtained the trade secret materials, as set forth above, and through other means of which Mattel is presently unaware.

111.  Counter-defendants have used and disclosed Mattel's Trade Secret Materials without Mattel's consent and without regard to Mattel's rights, and

EXHIBIT _3_ PAGE _94_

-63-

2154363.2

1  without compensation, permission, or licenses for the benefit of themselves and

2  others.

3       112.  Counter-defendants' conduct was, is, and remains willful and

4  wanton, and was taken with blatant disregard for Mattel's valid and enforceable

5  rights.

6       113.  Counter-defendants' wrongful conduct has caused and, unless

7  enjoined by this Court, will continue in the future to cause irreparable injury to

8  Mattel.  Mattel has no adequate remedy at law for such wrongs and injuries.  Mattel

9  is therefore entitled to a permanent injunction restraining and enjoining Counter-

10  defendants, and each of them, as well as their agents, servants, and employees, and

11  all persons acting thereunder, in concert with, or on their behalf, from further using

12  in any manner Mattel's trade secrets.

13       114.  In addition, as a proximate result of Counter-defendants'

14  misconduct, Mattel has suffered actual damages, and Counter-defendants have been

15  unjustly enriched.

16       115.  The aforementioned acts of the Counter-defendants were willful

17  and malicious, including in that Counter-defendants misappropriated Mattel's trade

18  secrets with the deliberate intent to injure Mattel's business and improve their own.

19  Mattel is therefore entitled to enhanced damages.  Mattel is also entitled to

20  reasonable attorney's fees.

21                    **Fifth Counterclaim**

22                    **Breach of Contract**

23                    **(Against Bryant)**

24       116.  Mattel repeats and realleges each and every allegation set forth in

25  paragraphs 1 through 115, above, as though fully set forth at length.

26       117.  Pursuant to his Employment Agreement, Bryant agreed that he

27  would not, without Mattel's express written consent, engage in any employment or

28  business other than for Mattel or assist in any manner any business competitive

EXHIBIT 3 PAGE 95

1    with the business or future business plans of Mattel during his employment with

2    Mattel. Pursuant to his Mattel Employment Agreement, Bryant further assigned to

3    Mattel all right, title and interest in "inventions," including without limitation

4    "designs" and other works that he conceived, created or reduced to practice during

5    his employment by Mattel. In addition, pursuant to the Conflict Questionnaire,

6    Bryant certified that, other than as disclosed, he had not worked for any competitor

7    of Mattel and had not engaged in any business venture or transaction involving a

8    Mattel competitor that could be construed as a conflict of interest. Bryant further

9    promised that he would notify his supervisor immediately of any change in his

10    situation that would cause him to change any of the foregoing certifications or

11    representations.

12         118. The Employment Agreement and the Conflict Questionnaire are

13    valid, enforceable contracts, and Mattel has performed each and every term and

14    condition of the Employment Agreement and Conflict Questionnaire required to be

15    performed by Mattel.

16         119. Bryant materially breached the foregoing contracts with Mattel,

17    in that, among other things, he secretly aided, assisted and worked for a Mattel

18    competitor during his employment with Mattel without the express written consent

19    of Mattel.

20         120. As a consequence of Bryant's breach, Mattel has suffered and

21    will, in the future, continue to suffer damages in an amount to be proven at trial.

22    Such damages include, without limitation, the amounts paid by the competitor to

23    Bryant during his Mattel employment; the amounts paid by MGA to Bryant during

24    his Mattel employment; the amount that Mattel paid Bryant during the time he

25    wrongfully worked with MGA; the value of information and intellectual property

26    owned by Mattel which Bryant provided to MGA; the value of the benefits that

27    MGA obtained from Bryant during the time he was employed by Mattel; and the

28

EXHIBIT 3 PAGE 96

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1   value of the benefits that MGA obtained from Bryant as a result of the work he

2   performed for or with MGA during his Mattel employment.

3       121.  Bryant's conduct has caused, and unless enjoined will continue to

4   cause, irreparable injury to Mattel that cannot be adequately compensated by

5   money damages and for which Mattel has no adequate remedy at law.  Bryant

6   specifically acknowledged in his Employment Agreement that his breach of the

7   Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be

8   entitled to injunctive relief to enforce this Agreement, in addition to damages and

9   other available remedies."  Accordingly, Mattel is entitled to orders mandating

10  Bryant's specific performance of his contracts with Mattel and restraining Bryant

11  from further breach.

12  **Sixth Counterclaim**

13  **Intentional Interference with Contract**

14  **(Against MGA, Larian and Does 4 through 10)**

15      122.  Mattel repeats and realleges each and every allegation set forth in

16  paragraphs 1 through 121, above, as though fully set forth at length.

17      123.  Valid agreements existed between Mattel and Bryant, Brawer,

18  Machado, Trueba, Vargas, Brisbois and the Other Former Employees (collectively,

19  the "Mattel Employees")

20      124.  At all times herein mentioned, MGA, Larian and Does 4 through

21  10 knew that the Mattel Employees had a duty under their agreements not to work

22  for or assist any competitor of Mattel, such as MGA.  In addition, at all times

23  mentioned herein, MGA, Larian and Does 4 through 10 knew that Bryant had

24  assigned to Mattel, and was obligated to disclose to Mattel all inventions, including

25  designs and other works, created, conceived or reduced to practice during their

26  employment with Mattel.

27

28

EXHIBIT __3__ PAGE 97

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

125.  Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, induced and encouraged the Mattel Employees to breach their contracts with Mattel.

126.  As a direct and proximate result of Counter-defendants' efforts and inducements, the Mattel Employees did breach their contracts with Mattel.

127.  As a result of said breaches, Mattel has suffered damages and will imminently suffer further damages, including the loss of its competitive position and lost profits, in an amount to be proven at trial.

128.  Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

### Seventh Counterclaim

### Breach of Fiduciary Duty

### (Against Bryant and Machado)

129.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 128, above, as though fully set forth at length.

130.  Bryant and Machado held positions of trust and confidence with Mattel.  In their positions, Bryant and Machado had access to and were entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of their job assignments and duties.  In their positions, Bryant and Machado also represented Mattel in its dealings with third parties and, in actions in the course and scope of their employment with Mattel, were agents of Mattel.  They confirmed their relationship of trust with Mattel in respective employee agreements.  Bryant and Machado thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests

EXHIBIT _3_ PAGE _98_

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1   or that would deprive Mattel of any opportunities, profit or advantage which Bryant

2   or Machado might bring to Mattel.

3        131. Bryant breached his fiduciary duty to Mattel in that, while

4   employed by Mattel, he secretly aided and assisted a competitor of Mattel,

5   including without limitation by entering into an agreement with a Mattel

6   competitor. As alleged above, Bryant also breached the aforementioned duty by

7   using Mattel property and resources for the benefit of, and to aid and assist, himself

8   personally and MGA.

9        132. Machado breached his fiduciary duty to Mattel, in that while

10  employed by Mattel, he secretly aided and assisted a competitor of Mattel by,

11  among other things, misappropriating Mattel trade secret and proprietary

12  information and providing said information to officers of MGA. Machado also

13  breached the aforementioned duty by using Mattel property and resources for the

14  benefit of, and to aid and assist, himself personally and MGA.

15       133. As a direct and proximate result of Counter-defendants' wrongful

16  conduct, Mattel has incurred damages in an amount to be determined at trial.

17       134. Counter-defendants acted with malice, fraud and oppression, and

18  in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an

19  award of exemplary damages against Counter-defendants in an amount to be

20  determined at trial.

21       135. Furthermore, Counter-defendants' conduct has caused, and unless

22  enjoined will continue to cause, irreparable injury to Mattel that cannot be

23  adequately compensated by money damages and for which Mattel has no adequate

24  remedy at law. Accordingly, Mattel is entitled to an order restraining further

25  breach of Bryant's fiduciary duty to Mattel and/or restraining Counter-defendants

26  from continuing to benefit from such breach.

27

28

EXHIBIT ___3___ PAGE _99_

SECOND AMENDED ANSWER AND COUNTERCLAIMS

### Eighth Counterclaim

**Aiding and Abetting Breach of Fiduciary Duty**

**(Against MGA, Larian and Does 4 through 10)**

136.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 135, above, as though fully set forth at length.

137.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant held a position of trust and confidence at Mattel.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to secretly developing and designing Bratz while employed by Mattel and by secretly assisting Larian and MGA .

138.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) held positions of trust and confidence at Mattel.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to taking confidential trade secret information from Mattel's premises and providing that information to a competitor.

139.  Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, encouraged, aided and abetted and gave substantial assistance to the Mattel Employees to breach their fiduciary duties to Mattel, knowing that their conduct would constitute breaches of their fiduciary duties to Mattel.

140.  As a direct and proximate result of Counter-defendants' efforts, the Mattel Employees did breach their fiduciary duties to Mattel and Mattel has incurred damages in an amount to be proven at trial.  Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

EXHIBIT _3_ PAGE _102_

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1    141.  In taking the aforesaid actions, MGA, Larian and Does 4 through
2  10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's
3  rights.  Accordingly, Mattel is entitled to recover exemplary damages from
4  Counter-defendants in an amount to be determined at trial.

### Ninth Counterclaim

### Breach of Duty of Loyalty

### (Against Bryant and Machado)

8    142.  Mattel repeats and realleges each and every allegation set forth in
9  paragraphs 1 through 141, above, as though fully set forth at length.

10    143.  As employees of Mattel, Bryant and Machado owed a duty of
11  undivided loyalty to Mattel.  Pursuant to this duty, Bryant and Machado could not
12  compete with Mattel or assist a competitor of Mattel during their employment with
13  Mattel.  Pursuant to this duty, Bryant and Machado were required to always give
14  preference to Mattel's business over their own, similar interests during the course of
15  their employment with Mattel.

16    144.  Bryant and Machado breached their duty of loyalty to Mattel in
17  that, while employed by Mattel, they secretly aided, assisted and worked for a
18  competitor of Mattel, including without limitation by entering into agreements with
19  a Mattel competitor.  As alleged above, they also breached the aforementioned duty
20  by using Mattel property and resources for the benefit of, and to aid and assist,
21  themselves personally and the competitor of Mattel.

22    145.  As a direct and proximate result of Counter-defendants' wrongful
23  conduct, Mattel has incurred damages in an amount to be determined at trial.

24    146.  Counter-defendants acted with malice, fraud and oppression, and
25  in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an
26  award of punitive damages against Counter-defendants in an amount to be
27  determined at trial.

28

EXHIBIT __3__ PAGE __10/__

-70-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1    147.  Furthermore, Counter-defendants' conduct has caused, and unless

2    enjoined will continue to cause, irreparable injury to Mattel that cannot be

3    adequately compensated by money damages and for which Mattel has no adequate

4    remedy at law.  Accordingly, Mattel is entitled to an order restraining further

5    breach of Counter-defendants' duty of loyalty to Mattel and/or restraining Counter-

6    defendants from continuing to benefit from such breach.

7    148.  In breaching their duty of loyalty to Mattel, Bryant and Machado

8    acted with malice, fraud and oppression, and in conscious disregard of Mattel's

9    rights.  Accordingly, Mattel is entitled to recover exemplary damages from

10    Counter-defendants in an amount to be determined at trial.

11                              **Tenth Counterclaim**

12                    **Aiding and Abetting Breach of Duty of Loyalty**

13                       **(Against MGA, Larian and Does 4 through 10)**

14    149.  Mattel repeats and realleges each and every allegation set forth in

15    paragraphs 1 through 148, above, as though fully set forth at length.

16    150.  MGA, Larian and Does 4 through 10 knew that Bryant, as an

17    employee of Mattel, owed a duty of loyalty to his employer.  MGA, Larian and

18    Does 4 through 10 knew that this duty included an obligation on the part of Bryant

19    not to compete with Mattel or assist a competitor of Mattel during the term of his

20    employment with Mattel.  MGA, Larian and Does 4 through 10 also knew that

21    Bryant was required to give preference to Mattel's business over his own, similar

22    interests or those of Mattel's competitors. or those of Mattel's competitors during

23    the course of his employment with Mattel.

24    151.  MGA, Larian and Does 4 through 10 knew that the Mattel

25    Employees (excluding Bryant) were employed by Mattel, and, as employees of

26    Mattel, that they owed duties of loyalty to Mattel.  MGA, Larian and Does 4

27    through 10 knew that these duties included an obligation on the part of the Mattel

28

EXHIBIT __3__ PAGE _102_

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1  Employees (excluding Bryant) not to compete with Mattel or assist a competitor of
2  Mattel during their Mattel employment.

3  152.  Despite such knowledge, Counter-defendants MGA, Larian and
4  Does 4 through 10 intentionally and without justification solicited, encouraged,
5  aided and abetted and gave substantial assistance to the Mattel Employees to
6  breach their duties of loyalty to Mattel, knowing that their conduct would constitute
7  breaches of their duties of loyalty to Mattel.

8  153.  As a further consequence of Counter-defendants' efforts, Mattel
9  has suffered injury and is entitled to compensatory damages in an amount to be
10  proven at trial.

11  154.  In taking the aforesaid actions, MGA, Larian and Does 4 through
12  10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's
13  rights.  Accordingly, Mattel is entitled to recover exemplary damages from
14  Counter-defendants in an amount to be determined at trial.

15  **Eleventh Counterclaim**
16  **Conversion**
17  **(Against All Counter-defendants)**

18  155.  Mattel repeats and realleges each and every allegation set forth in
19  paragraphs 1 through 154, above, as though fully set forth at length.

20  156.  Counter-defendants wrongfully converted Mattel property and
21  resources by appropriating and using them for their own benefit and gain and for
22  the benefit and gain of others, without the permission of Mattel.

23  157.  Mattel was entitled to, among other things, the exclusive right
24  and enjoyment in property and tangible materials owned by Mattel, including
25  without limitation such proper and materials that were created by Bryant while he
26  was a Mattel product designer.  Such property was taken by Bryant from Mattel to
27  further his own interests and, in at least some instances, provided by Bryant to
28  Larian and MGA in furtherance of the interests of Bryant, Larian and MGA.

2154363.2

EXHIBIT 3 PAGE 103

-72-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

158. In addition, Counter-defendants wrongfully converted Mattel's property by removing the Trade Secret Materials in electronic and paper form from Mattel's offices. Counter-defendants did so without Mattel's permission and continue to possess them.

159. As a direct and proximate result of Counter-defendants' wrongful conversion of Mattel property, including those relating to Bratz and Mattel's Trade Secret Materials, Mattel has incurred damages. Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

160. As a result of Counter-defendants' acts of conversion, Mattel is entitled to damages in an amount sufficient to indemnify Mattel for the loss suffered, which is not measured by the value of the property misappropriated, but includes the lost profits that Mattel suffered as a result of the conversion or, alternatively, the profits generated by the Counter-defendants that would not have been generated but for the conversion. Only such a measure of damages would fully and fairly compensate Mattel for the injury it suffered due to Counter-defendants' acts of conversion.

161. Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

162. Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining Counter-defendants from further conversion of Mattel property and resources and/or restraining Counter-defendants from continuing to benefit from such conversion.

EXHIBIT 3 PAGE 104

1

2

3

4

5
**Twelfth Counterclaim**

**Unfair Competition**

**(Common Law and *Cal. Bus. & Prof. Code* § 17200)**

**(Against All Counter-defendants)**

163.   Mattel repeats and realleges each and every allegation set forth in

6
paragraphs 1 through 162, above, as though fully set forth at length.

7
164.   Section 17200 of the California Business and Professions Code

8
prohibits unfair competition, including "any unlawful, unfair or fraudulent business

9
act or practice . . . ."

10
165.   By engaging in the foregoing conduct, Counter-defendants have,

11
individually and in combination, engaged in unlawful, unfair and/or fraudulent acts

12
of unfair competition in violation of both the common law of the state of California

13
and *Cal. Bus. & Prof. Code* § 17200 *et seq.*  Such conduct included, without

14
limitation, MGA's commercial bribery of Bryant in violation of *Cal. Penal Code*

15
§ 641.3 and misappropriation of trade secrets in violation of 18 U.S.C. § 1832(a).

16
Such conduct also included, without limitation, MGA's and Larian's disparagement

17
of Mattel's products and misrepresentations as alleged above.

18
166.   As a result of the aforementioned conduct, Mattel has suffered

19
damages and will imminently suffer further damages, including but not limited to

20
lost profits in an amount to be proven at trial.  No adequate remedy at law exists for

21
the wrongs and injuries Mattel has suffered and will continue to suffer, and Mattel

22
is entitled to an injunction enjoining Counter-defendants' continued wrongful acts.

23
Mattel is also entitled to recover compensatory and exemplary damages pursuant to

24
the doctrine of common law unfair competition and *Cal. Civ. Code* § 3294.

25

26

27

28

EXHIBIT __3__ PAGE __105__

SECOND AMENDED ANSWER AND COUNTERCLAIMS

## Thirteenth Counterclaim

### Declaratory Relief

### (Against All Counter-defendants)

167.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 166, above, as though fully set forth at length.

168.  As shown in the foregoing paragraphs above, an actual controversy exists between Mattel and Counter-defendants regarding Counter-defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

169.  Accordingly, Mattel seeks a declaration of the Court that Counter-defendants have no valid or protectable ownership rights or interests in Bratz, and that Mattel is the true owner of the same, and further seeks an accounting and imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and over all revenues and other monies or benefits derived or obtained from MGA's and Bryant's purported ownership, use, sale, distribution and licensing of Bratz.

170.  Mattel seeks a declaration of the Court that any and all agreements between Bryant, on the one hand, and MGA, on the other hand, in which Bryant purports to assign to MGA any right, title or interests in any work that he conceived, created or reduced to practice while a Mattel employee, including but not limited to the Bratz designs, is void and of no effect, including without limitation because Bryant had previously assigned said right, title or interest to Mattel and because Mattel was otherwise the owner of said right, title or interest.

### Prayer for Relief

WHEREFORE, Mattel respectfully requests judgment:

1.   For a declaration that Counter-defendants have no valid or protectable ownership interests or rights in Bratz designs and works conceived,

2154363.2

-75-

EXHIBIT 3 PAGE 106

SECOND AMENDED ANSWER AND COUNTERCLAIMS

created or reduced to practice by Bryant during the term of his Mattel employment and/or by any others then-employed by Mattel, as well as in all derivatives prepared therefrom, and that Mattel is the true owner of the foregoing;

2.    For a declaration that any agreement between Bryant, on the one hand, and MGA or any person or entity, on the other hand, in which Bryant purported to assign any right, title or interests in any work that he conceived, created or reduced to practice while a Mattel employee, including but not limited to the Bratz designs, is void and of no effect;

3.    For an Order enjoining and restraining Counter-defendants, their agents, servants and employees, and all persons in active concert or participation with them, from further wrongful conduct, including without limitation from imitating, copying, distributing, importing, displaying, preparing derivatives from and otherwise infringing Mattel's copyright-protected works;

4.    For an Order, pursuant to 17 U.S.C. § 503(a) and other applicable law, impounding all of Counter-defendants' products and materials that infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles by which copies of the works embodied in Mattel's copyrights may be reproduced or otherwise infringed;

5.    For an Order mandating that Counter-defendants return to Mattel all tangible items, documents, designs, diagrams, sketches or any other memorialization of inventions created or reduced to practice during Bryant's employment with Mattel as well as all Mattel property converted by Counter-defendants;

6.    For an Order mandating specific performance by Bryant to comply with and satisfy Bryant's contractual obligations to Mattel;

7.    That Mattel be awarded, and Counter-defendants be ordered to disgorge, all payments, revenues, profits, monies and royalties and any other benefits derived or obtained as a result of the conduct alleged herein, including

-76-

EXHIBIT 3 PAGE 107

2154363.2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

without limitation of all revenues and profits attributable to Counter-defendants' infringement of Mattel's copyrights under 17 U.S.C. § 504;

8.    For an accounting of all profits, monies and/or royalties from the exercise of ownership, use, distribution, sales and licensing of Bratz;

9.    For the imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and all profits, monies, royalties and any other benefits derived or obtained from Counter-defendant's exercise of ownership, use, sale, distribution and licensing of Bratz;

10.    That Mattel recover its actual damages and lost profits;

11.    That Counter-defendants be ordered to pay exemplary damages in a sum sufficient to punish and to make an example of them, and deter them and others from similar wrongdoing;

12.    That Counter-defendants be ordered to pay treble its general and special damages, plus interest, costs and attorney's fees incurred by reason of Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

13.    That Counter-defendants be ordered to pay double damages due to their willful and malicious misappropriation of Mattel's trade secrets with deliberate intent to injure Mattel's business and improve its own;

14.    That Counter-defendants pay to Mattel the full cost of this action and Mattel's attorneys' and investigators' fees; and

EXHIBIT ___3___ PAGE _108_

SECOND AMENDED ANSWER AND COUNTERCLAIMS

21154363.2

1          15.    That Mattel have such other and further relief as the Court may

2   deem just and proper.

3

4   DATED:  July 12, 2007         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

5

6                         By _____

7                            John B. Quinn

8                            Attorneys for Defendant and Counter-claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT __3__ PAGE _109_

-78-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

154363.2

1

## DEMAND FOR JURY TRIAL

2

3          Mattel, Inc. respectfully requests a jury trial on all issues triable

4   thereby.

5

6   DATED:  July 12, 2007          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
7

8                                  By _____
9                                       John B. Quinn
                                        Attorneys for Defendant and Counter-
10                                      claimant Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT  3  PAGE  110

-79-

2154363.2

**Exhibit A**

EXHIBIT __3__ PAGE __111__

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

## 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in the Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

(a) I agree to communicate to the Company promptly and fully as practicable all inventions (as defined below) conceived or reduced to practice by me (alone or jointly with others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provided that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development, of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

## 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will insure to the benefit of and be binding upon the successors and assigns of the the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

_____
Employee Signature

CARTER H. BRYANT
Employee Name (print)

01/04/99
Date

MATTEL INC.
By: _____
Signature

TERESA NEWCOMB
Name of Witness (print)

EXHIBIT A PAGE 80

M 0001622

EXHIBIT 3 PAGE 112

**Exhibit B**

EXHIBIT 3 PAGE 113

# CONFLICT OF INTEREST QUESTIONNAIRE

*BRYANT, CARTER H.*          *PROJECT DESIGNER*

Name (Last, first, M.I.)                          Job Title                          Department

**Instructions:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond,' option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Recipient of any commission, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

- ○ YES  ● NO    1. Have you owned, directly or indirectly, any interest in a Mattel supplier?
- ○ YES  ● NO    2. Have you owned, directly or indirectly, and interest in a Mattel competitor?
- ○ YES  ● NO    3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?
- ● YES  ○ NO    4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?
- ● YES  ○ NO    5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?
- ○ YES  ● NO    6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?
- ○ YES  ● NO    7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?
- ○ YES  ● NO    8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?
- ○ YES  ● NO    9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

*4, 5; freelance design + artwork in 1998,*
*from appr. 5/98 - 11/98 for the Ashton Drake*
*galleries.*

I certify that I have read Mattel's policies concerning Conflicts of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized persons. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

*[signature]*                          *01/04/98*

Signature                                                Date

EXHIBIT **B**  PAGE **81**          M 0001621

EXHIBIT __3__ PAGE __114__

1   DALE M. CENDALI (*admitted pro hac vice*)
    DIANA M. TORRES (S.B. #162284)
2   STEVEN J. OLSON (S.B. #182240)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, California 90071-2899
4   Telephone: (213) 430-6000
    Facsimile: (213) 430-6407
5   Email: dtorres@omm.com

6   PATRICIA GLASER (S.B. # 55668)
    CHRISTENSEN, GLASER, FINK,
7   JACOBS, WEIL & SHAPIRO LLP
    10250 Constellation Boulevard, 19th Floor
8   Los Angeles, California  90067
    Telephone:  (310) 553-3000
9   Facsimile:   (310) 556-2920
    Email: pglaser@chrisglase.com
10
    Attorneys for Counter-defendants MGA
11  Entertainment, Inc., Isaac Larian, MGA
    Entertainment (HK) Limited, and MGAE de
12  Mexico S.R.L. de C.V.

13

14

15              UNITED STATES DISTRICT COURT

16            CENTRAL DISTRICT OF CALIFORNIA

17                   EASTERN DIVISION

18  CARTER BRYANT, an individual,        Case No. CV 05-2727 SGL (RNBx)
                                         (Consolidated with CV 04-09049 and
19              Plaintiff,               CV 04-9059)

20        v.                             ANSWER AND AFFIRMATIVE
                                         DEFENSES OF MGA
21  MATTEL, INC., a Delaware Corporation, ENTERTAINMENT INC., MGA
                                         ENTERTAINMENT (HK)
22              Defendant               LIMITED, AND MGAE DE
                                         MEXICO S.R.L. DE C.V. TO
23                                       MATTEL, INC.'S SECOND
                                         AMENDED ANSWER AND
24                                       COUNTERCLAIMS

25

26  CONSOLIDATED WITH               Judge:      Hon. Stephen G. Larson
                                    Courtroom: 1
27  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v.
28  MATTEL, INC.

EXHIBIT _4_ PAGE _115_

1    Counter-defendants MGA Entertainment, Inc. ("MGA"), MGA

2   Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively

3   the "MGA Defendants") hereby answer, for themselves alone, the Second

4   Amended Answer and Counterclaim of Counter-claimant Mattel Inc., as follows:

5          As a preliminary matter, Mattel's use of headings throughout its

6   counterclaims is improper, and therefore no response to Mattel's headings is

7   required.  If any response is required, MGA Defendants deny all allegations

8   contained in Mattel's headings.

9                                **RESPONSES**

10         1.    MGA Defendants deny the allegations set forth in paragraph 1.

11         2.    MGA Defendants deny the allegations set forth in paragraph 2.

12         3.    MGA Defendants admit that MGA decided to expand into

13   Mexico in or about 2004, and deny the remaining allegations set forth in paragraph

14   3.

15         4.    MGA Defendants deny the allegations set forth in paragraph 4.

16         5.    MGA Defendants deny the allegations set forth in paragraph 5.

17         6.    MGA Defendants admit that the Court has federal question

18   jurisdiction over this action pursuant to 28 U.S.C. § 1331, deny that 17 U.S.C. §§

19   101 and 18 U.S.C. § 1964(c) apply to the extraterritorial conduct alleged in the

20   Counterclaims, and deny that Mattel is entitled to any relief on its Counterclaims.

21         7.    MGA Defendants admit that venue is proper in this District for

22   Mattel's claims based on conduct alleged to have occurred within this District and

23   deny that venue is proper in this District for acts alleged to have occurred in

24   Mexico, Canada, Hong Kong, or other places outside of this District.

25         8.    MGA Defendants admit the allegations set forth in paragraph 8.

26         9.    MGA Defendants admit the allegations set forth in the first and

27   second sentences of paragraph 9, and deny the remaining allegations set forth in

28   paragraph 9.

EXHIBIT __4__ PAGE _116_

1           10.    MGA Defendants admit the allegations set forth in paragraph

2   10.

3           11.    MGA Defendants admit the allegations set forth in the first

4   sentence of paragraph 11, and deny the remaining allegations set forth in paragraph

5   11.

6           12.    MGA Defendants admit the allegations set forth in paragraph

7   12.

8           13.    MGA Defendants admit the allegations set forth in the first

9   sentence of paragraph 13, and deny the remaining allegations set forth in paragraph

10   13.

11           14.    MGA Defendants admit the allegations set forth in paragraph

12   14.

13           15.    Paragraph 15 is a statement of Mattel's legal position, to which

14   no response is necessary.  To the extent a response is required, MGA Defendants

15   deny the allegations set forth in paragraph 15.

16           16.    MGA Defendants admit the allegations set forth in the first

17   sentence of paragraph 16.  MGA Defendants are without sufficient knowledge to

18   admit or deny the remaining allegations set forth in paragraph 16, and on that basis,

19   deny the remaining allegations set forth in paragraph 16.

20           17.    MGA Defendants are without sufficient knowledge to admit or

21   deny the allegations set forth in paragraph 17, and on that basis, deny the

22   allegations set forth in paragraph 17.

23           18.    MGA Defendants are without sufficient knowledge to admit or

24   deny the allegations set forth in paragraph 18, and on that basis, deny the

25   allegations set forth in paragraph 18.

26           19.    MGA Defendants admit that MGA is a toy manufacturer, that

27   MGA began as a consumer electronics business and expanded into the toy business

28   with licenses to sell handheld electronic games, and later expanded its business by

EXHIBIT 4 PAGE 117

1   launching the Bratz fashion doll line, and deny the remaining allegations set forth in

2   paragraph 19.

3           20.    MGA Defendants deny the allegations set forth in paragraph 20.

4           21.    MGA Defendants admit that Carter Bryant is a former employee

5   of Mattel, and state that they are without sufficient knowledge to admit or deny the

6   remaining allegations set forth in paragraph 21, and on that basis, deny the

7   remaining allegations set forth in paragraph 21.

8           22.    MGA Defendants are without sufficient knowledge to admit or

9   deny the allegations set forth in paragraph 22, and on that basis, deny the

10  allegations set forth in paragraph 22.

11          23.    MGA Defendants are without sufficient knowledge to admit or

12  deny the allegations set forth in paragraph 23, and on that basis, deny the

13  allegations set forth in paragraph 23.

14          24.    MGA Defendants are without sufficient knowledge to admit or

15  deny the allegations set forth in paragraph 24, and on that basis, deny the

16  allegations set forth in paragraph 24.

17          25.    MGA Defendants are without sufficient knowledge to admit or

18  deny the allegations set forth in paragraph 25, and on that basis, deny the

19  allegations set forth in paragraph 25.

20          26.    MGA Defendants deny the allegations set forth in paragraph 26.

21          27.    MGA Defendants deny the allegations set forth in paragraph 27.

22          28.    MGA Defendants deny the allegations set forth in paragraph 28.

23          29.    MGA Defendants deny the allegations set forth in paragraph 29.

24          30.    MGA Defendants admit that after MGA made the decision to

25  proceed with the manufacture of the Bratz dolls, MGA employees communicated

26  with employees of MGA Entertainment (HK) Limited on subjects including the

27  manufacturing of Bratz, and deny the remaining allegations set forth in the first

28

EXHIBIT __4__ PAGE __118__

1   sentence of paragraph 30.  MGA Defendants admit the second sentence of

2   paragraph 30.

3        31.   MGA Defendants admit that samples of the four original Bratz

4   dolls were shown at the Hong Kong Toy Fair in January 2001, and deny the

5   remaining allegations set forth in paragraph 31.

6        32.   MGA Defendants admit that MGA and its subsidiaries have

7   distributed and sold Bratz and Bratz-related products in many countries throughout

8   the world, that MGA and its subsidiaries have licensed Bratz to third parties, that

9   MGA has derived annual revenues from its sales and licenses of Bratz in excess of

10  $500 million, that MGA and its subsidiaries continue to market, sell and license

11  Bratz and intend to continue to do so, and deny the remaining allegations set forth

12  in paragraph 32.

13       33.   MGA Defendants deny the allegations set forth in paragraph 33.

14       34.   MGA Defendants deny the allegations set forth in paragraph 34.

15       35.   MGA Defendants deny the allegations set forth in paragraph 35.

16       36.   MGA Defendants admit that Bryant had an agreement with

17  MGA, state that the terms of the agreement speak for themselves, and deny the

18  remaining allegations set forth in paragraph 36.

19       37.   MGA Defendants admit that in or about late 2003 or early 2004,

20  MGA decided to form a new corporation, MGAE de Mexico, S.R.L. de C.V., to

21  conduct business in Mexico, admit that MGAE de Mexico hired three employees of

22  Mattel's Mexican subsidiary, and deny the remaining allegations set forth in

23  paragraph 37.

24       38.   MGA Defendants admit that Carlos Gustavo Machado Gomez

25  was a Marketing Manager, Boys Division, for Mattel Mexico, admit that Machado

26  was employed at Mattel Mexico from April 1997 until April 19, 2004, admit that

27  Machado had access to some nonpublic business information of Mattel Mexico, and

28  state that they are without sufficient knowledge to admit or deny the remaining

- 5 -

EXHIBIT _4_ PAGE_/19_

1  allegations set forth in paragraph 38, and on that basis, deny the remaining

2  allegations set forth in paragraph 38.

3      39.   MGA Defendants admit that Mariana Trueba Almada was a

4  Marketing Manager, Girls Division, for Mattel Mexico, admit that Trueba had

5  access to some nonpublic business information of Mattel Mexico, and state that

6  they are without sufficient knowledge to admit or deny the remaining allegations

7  set forth in paragraph 39, and on that basis, deny the remaining allegations set forth

8  in paragraph 39.

9      40.   MGA Defendants admit that Pablo Vargas San Jose was a Trade

10  Marketing Manager for Mattel Mexico, admit that Vargas was employed at Mattel

11  Mexico from March 2001 until April 19, 2004, admit that Vargas had access to

12  some nonpublic business information of Mattel Mexico, and state that they are

13  without sufficient knowledge to admit or deny the remaining allegations set forth in

14  paragraph 40, and on that basis, deny the remaining allegations set forth in

15  paragraph 40.

16      41.   MGA Defendants admit that in or about early 2004, Machado,

17  Trueba and Vargas discussed leaving Mattel Mexico, admit that Machado, Trueba

18  and Vargas resigned from Mattel Mexico on April 19, 2004, admit that they did not

19  identify their new employer to Mattel Mexico, admit that Machado, Trueba and

20  Vargas were offered and accepted employment with MGAE de Mexico, and deny

21  the remaining allegations set forth in paragraph 41.

22      42.   MGA Defendants admit that MGA personnel communicated by

23  telephone with Machado and Vargas prior to their Mattel resignations, admit that

24  MGA personnel, including Isaac Larian, communicated by e-mail with Machado

25  and Vargas concerning terms of employment through an America Online e-mail

26  account with the address <plot04@aol.com>, and deny the remaining allegations

27  set forth in paragraph 42.

28

EXHIBIT _4_ PAGE _120_

43.   MGA Defendants admit that in or about March 2004, Machado, Trueba, and Vargas made plans to travel from Mexico to Los Angeles in April 2004, admit that in or about March 2004, Machado, Trueba and Vargas discussed with MGA personnel, including Larian, employment at MGAE de Mexico, state that the quoted <plot04@aol.com> e-mails speak for themselves, and deny the remaining allegations set forth in paragraph 43.

44.   MGA Defendants are without sufficient knowledge to admit or deny the allegations set forth in paragraph 44, and on that basis, deny the allegations set forth in paragraph 44.

45.   MGA Defendants are without sufficient knowledge to admit or deny the allegations set forth in paragraph 45, and on that basis, deny the allegations set forth in paragraph 45.

46.   MGA Defendants are without sufficient knowledge to admit or deny the allegations set forth in paragraph 46, and on that basis, deny the allegations set forth in paragraph 46.

47.   MGA Defendants are without sufficient knowledge to admit or deny the allegation set forth in the third sentence of paragraph 47, and on that basis, deny these allegations, and deny the remaining allegations set forth in paragraph 47.

48.   MGA Defendants deny the allegations set forth in paragraph 48.

49.   MGA Defendants deny the allegations set forth in paragraph 49.

50.   MGA Defendants are without sufficient knowledge to admit or deny the allegation that MGA publicized a claim that, in 2005, it had increased its Mexican market share by 90% over the prior year, and on that basis, deny this allegation, and deny the remaining allegations set forth in paragraph 50.

51.   MGA Defendants deny the allegations set forth in paragraph 51.

52.   MGA Defendants deny the allegations set forth in paragraph 52.

53.   MGA Defendants admit that on October 27, 2005, Mexican authorities searched MGAE de Mexico and seized certain documents, and state that

- 7 -

EXHIBIT 4  PAGE 121

1   they are without sufficient knowledge to admit or deny the remaining allegations

2   set forth in paragraph 53, and on that basis, deny the remaining allegations set forth

3   in paragraph 53.

4         54.    MGA Defendants admit that Machado was transferred from

5   MGAE de Mexico to MGA's office in Van Nuys, California, admit that Machado

6   resides in the County of Los Angeles, and deny the remaining allegations set forth

7   in paragraph 54.

8         55.    MGA Defendants admit the allegations set forth in the first

9   sentence of paragraph 55. MGA Defendants admit that Tyco Toys hired Brawer on

10  April 22, 1996, and state that they are without sufficient knowledge to admit or

11  deny the remaining allegations set forth in the second sentence of paragraph 55, and

12  on that basis, deny the remaining allegations set forth in the second sentence of

13  paragraph 55. MGA Defendants admit the allegations set forth in third sentence of

14  paragraph 55. MGA Defendants admit that on April 9, 1997, Brawer became a

15  Marketing Director for Mattel in Mount Laurel, New Jersey, and state that the

16  remaining allegations in the fourth sentence of paragraph 55 are a statement of

17  Mattel's legal position, to which no response is necessary.  To the extent a response

18  is required, MGA Defendants deny the remaining allegations set forth in paragraph

19  55.

20        56.    MGA Defendants are without sufficient knowledge to admit or

21  deny the allegations set forth in paragraph 56, and on that basis, deny the

22  allegations set forth in paragraph 56.  The last sentence of paragraph 56 is a

23  statement of Mattel's legal position, to which no response is necessary.  To the

24  extent a response is required, MGA Defendants deny the remaining allegations set

25  forth in paragraph 56.

26        57.    MGA Defendants admit that by 2003, Brawer had advanced

27  within Mattel to a Senior Vice President position over customer marketing, and

28  state that the remaining allegations in the first sentence of paragraph 57 are a

EXHIBIT _4_ PAGE _122_

1  statement of Mattel's legal position, to which no response is necessary.  To the

2  extent a response is required, MGA Defendants deny the remaining allegations set

3  forth in the first sentence of paragraph 57. MGA Defendants admit that in his

4  executive position, Brawer was provided access to certain nonpublic Mattel

5  information.

6        58.    MGA Defendants admit the allegations set forth in the first

7  sentence of paragraph 58.  MGA Defendants deny the allegations set forth in the

8  second sentence of paragraph 58.  MGA Defendants are without sufficient

9  knowledge to admit or deny the remaining allegations set forth in paragraph 58, and

10  on that basis, deny the remaining allegations set forth in paragraph 58.

11        59.    MGA Defendants are without sufficient knowledge to admit or

12  deny the allegations set forth in paragraph 59, and on that basis, deny the

13  allegations set forth in paragraph 59.

14        60.    MGA Defendants admit that in April 2004, Mattel made Brawer

15  a Senior Vice President/General Manager, and state that they are without sufficient

16  knowledge to admit or deny the remaining allegations set forth in paragraph 60, and

17  on that basis, deny the remaining allegations set forth in paragraph 60.

18        61.    MGA Defendants admit that in May 2004, Brawer began

19  performing General Manager duties, working with one of Mattel's major retail

20  customer accounts, and state that they are without sufficient knowledge to admit or

21  deny the remaining allegations set forth in paragraph 61, and on that basis, deny the

22  remaining allegations set forth in paragraph 61.

23        62.    MGA Defendants admit the allegations set forth in the first

24  sentence of paragraph 62.  MGA Defendants admit that as Brawer left, he carried a

25  large cardboard box, and deny the remaining allegations set forth in the second

26  sentence of paragraph 62.  MGA Defendants state that they are without sufficient

27  knowledge to admit or deny the remaining allegations set forth in paragraph 62, and

28  on that basis, deny the remaining allegations set forth in paragraph 62.

EXHIBIT 4 PAGE 123

63.     MGA Defendants admit the allegations set forth in paragraph 63.

64.     MGA Defendants admit that on September 20, 2004, Mattel hand-delivered a letter to Brawer, state that the contents of the letter speak for themselves, and deny the remaining allegations set forth in paragraph 64.

65.     MGA Defendants admit that at his exit interview on September 29, 2004, Brawer was given a copy of an agreement with Tyco that he had signed on April 22, 1996, and a copy of Mattel's Code of Conduct, admit that Brawer stated that he had not signed the Code of Conduct, and deny the remaining allegations set forth in paragraph 65.

66.     MGA Defendants admit that on October 1, 2004, Brawer's last day of employment with Mattel, Mattel delivered a letter to Brawer, state that the contents of the letter speak for themselves, and deny the remaining allegations set forth in paragraph 66.

67.     MGA Defendants admit that Brawer became MGA's Executive Vice President of Sales and Marketing, admit that he was responsible for sales worldwide, admit that he had and continues to have responsibility for MGA's accounts with some of the same retailers that he worked with while at Mattel, and deny the remaining allegations set forth in paragraph 67.

68.     MGA Defendants admit that Brawer stated during his exit interview that he had returned all confidential proprietary information to Mattel, state that he did not provide copies of information from his personal contacts file, and deny the remaining allegations set forth in paragraph 68.

69.     MGA Defendants admit that since leaving Mattel, Brawer has had contacts with certain Mattel employees, both by telephone and electronic mail, and deny the remaining allegations set forth in paragraph 69.

70.     MGA Defendants deny the allegations set forth in paragraph 70.

- 10 -

EXHIBIT   4   PAGE 124

1        71.    MGA Defendants are without sufficient knowledge to admit or

2   deny the allegations set forth in paragraph 71, and on that basis, deny the

3   allegations set forth in paragraph 71.

4        72.    MGA Defendants are without sufficient knowledge to admit or

5   deny the allegations set forth in paragraph 72, and on that basis, deny the

6   allegations set forth in paragraph 72.

7        73.    MGA Defendants admit that on September 26, 2005, Brisbois

8   resigned from Mattel Canada, state that she took a position as Vice President of

9   National Accounts at MGAE Canada, and deny the remaining allegations set forth

10  in the first sentence of paragraph 73. MGA Defendants are without sufficient

11  knowledge to admit or deny the remaining allegations set forth in paragraph 73, and

12  on that basis, deny the remaining allegations set forth in paragraph 73.

13       74.    MGA Defendants admit that Brisbois spoke with Isaac Larian

14  by telephone on or about the evening of September 22, 2005, deny that Brisbois

15  copied approximately 45 Mattel documents onto a USB or thumb drive on that

16  same date, deny that Brisbois concealed the thumb drive the last time she left

17  Mattel Canada's office, and state that they are without sufficient knowledge to

18  admit or deny the remaining allegations set forth in paragraph 74, and on that basis,

19  deny the remaining allegations set forth in paragraph 74.

20       75.    MGA Defendants are without sufficient knowledge to admit or

21  deny the allegations set forth in paragraph 75, and on that basis, deny the

22  allegations set forth in paragraph 75.

23       76.    MGA Defendants admit that Brisbois traveled several times to

24  MGA's offices in Van Nuys, California and met with Larian and Brawer, that

25  MGA issued a press release, state that the press release speaks for itself, and state

26  that they are without sufficient knowledge to admit or deny the remaining

27  allegations set forth in paragraph 76 and, on that basis, deny the remaining

28  allegations set forth in paragraph 76.

EXHIBIT _4_ PAGE _125_

77.     MGA Defendants admit that MGA has hired at least 25 employees directly from Mattel's United States operations in the past few years, and deny the remaining allegations set forth in paragraph 77.

78.     MGA Defendants deny the allegations set forth in the first sentence of paragraph 78. MGA Defendants admit that Larian has sent email messages to a "Bratz News" distribution list, admit that the recipients of e-mail messages sent to the "Bratz News" distribution list includes members of the media as well as representatives of customers of both MGA and Mattel, and deny the remaining allegations set forth in paragraph 78.

79.     MGA Defendants admit that on May 12, 2006, Larian sent an email message to the "Bratz News" distribution list that included a reference to the new My Scene product with real gems, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 79, and on that basis, deny the remaining allegations set forth in paragraph 79.

80.     MGA Defendants admit that Larian told one retailer that such retailer was the only retailer with plans to purchase MY SCENE BLING BLING with real gems, at a time when Larian had a good faith belief that such retailer was the only retailer with plans to purchase MY SCENE BLING BLING with real gems, and deny the remaining allegations set forth in paragraph 80.

81.     MGA Defendants deny the allegation set forth in paragraph 81.

82.     MGA Defendants repeat their responses contained in paragraphs 1 through 81 of this Answer and incorporate them by reference as though fully and completely set forth herein.

83.     MGA Defendants deny the allegations set forth in paragraph 83.

84.     MGA Defendants deny the allegations set forth in paragraph 84.

85.     MGA Defendants deny the allegations set forth in paragraph 85.

86.     MGA Defendants deny the allegations set forth in paragraph 86.

87.     MGA Defendants deny the allegations set forth in paragraph 87.

EXHIBIT 4 PAGE 126

1          88.    MGA Defendants repeat their responses contained in paragraphs

2    1 through 87 of this Answer and incorporate them by reference as though fully and

3    completely set forth herein.

4          89.    MGA Defendants deny the allegations set forth in paragraph 89.

5          90.    MGA Defendants deny the allegations set forth in paragraph 90.

6          91.    MGA Defendants deny the allegations set forth in paragraph 91.

7          92.    MGA Defendants deny the allegations set forth in paragraph 92.

8          93.    MGA Defendants deny the allegations set forth in paragraph 93.

9          94.    MGA Defendants deny the allegations set forth in paragraph 94.

10         95.    MGA Defendants deny the allegations set forth in paragraph 95.

11         96.    MGA Defendants deny the allegations set forth in paragraph 96.

12         97.    MGA Defendants deny the allegations set forth in paragraph 97.

13         98.    MGA Defendants repeat their responses contained in paragraphs

14   1 through 97 of this Answer and incorporate them by reference as though fully and

15   completely set forth herein.

16         99.    MGA Defendants deny the allegations set forth in paragraph 99.

17         100.   MGA Defendants deny the allegations set forth in paragraph

18   100.

19         101.   MGA Defendants deny the allegations set forth in paragraph

20   101.

21         102.   MGA Defendants deny the allegations set forth in paragraph

22   102.

23         103.   MGA Defendants deny the allegations set forth in paragraph

24   103.

25         104.   MGA Defendants deny the allegations set forth in paragraph

26   104.

27         105.   MGA Defendants deny the allegations set forth in paragraph

28   105.

EXHIBIT 4 PAGE 127

106.   MGA Defendants repeat their responses contained in paragraphs 1 through 105 of this Answer and incorporate them by reference as though fully and completely set forth herein.

107.   MGA Defendants deny the allegations set forth in paragraph 107.

108.   MGA Defendants deny the allegations set forth in paragraph 108.

109.   MGA Defendants deny the allegations set forth in paragraph 109.

110.   MGA Defendants deny the allegations set forth in paragraph 110.

111.   MGA Defendants deny the allegations set forth in paragraph 111.

112.   MGA Defendants deny the allegations set forth in paragraph 112.

113.   MGA Defendants deny the allegations set forth in paragraph 113.

114.   MGA Defendants deny the allegations set forth in paragraph 114.

115.   MGA Defendants deny the allegations set forth in paragraph 115.

116.   MGA Defendants repeat their responses contained in paragraphs 1 through 115 of this Answer and incorporate them by reference as though fully and completely set forth herein.

117.   MGA Defendants deny the remaining allegations set forth in paragraph 117.

118.   MGA Defendants deny the allegations set forth in paragraph 118.

- 14 -

EXHIBIT _4_ PAGE 128

1         119.  MGA Defendants deny the allegations set forth in paragraph

2   119.

3         120.  MGA Defendants deny the allegations set forth in paragraph

4   120.

5         121.  MGA Defendants deny the allegations set forth in paragraph

6   121.

7         122.  MGA Defendants repeat their responses contained in paragraphs

8   1 through 121 of this Answer and incorporate them by reference as though fully and

9   completely set forth herein.

10        123.  MGA Defendants deny the allegations set forth in paragraph

11  123.

12        124.  MGA Defendants deny the allegations set forth in paragraph

13  124.

14        125.  MGA Defendants deny the allegations set forth in paragraph

15  125.

16        126.  MGA Defendants deny the allegations set forth in paragraph

17  126.

18        127.  MGA Defendants deny the allegations set forth in paragraph

19  127.

20        128.  MGA Defendants deny the allegations set forth in paragraph

21  128.

22        129.  MGA Defendants repeat their responses contained in paragraphs

23  1 through 128 of this Answer and incorporate them by reference as though fully and

24  completely set forth herein.

25        130.  The first and fifth sentences of paragraph 130 are statements of

26  Mattel's legal position, to which no response is necessary.  To the extent a response

27  is required, MGA Defendants deny the allegations set forth in the first and fifth

28  sentences of paragraph 130.  MGA Defendants are without sufficient knowledge to

EXHIBIT 4 PAGE 129

1    admit or deny the remaining allegations set forth in paragraph 130, and on that

2    basis, deny the remaining allegations set forth in paragraph 130.

3            131.   MGA Defendants deny the allegations set forth in paragraph

4    131.

5            132.   MGA Defendants deny the allegations set forth in paragraph

6    132.

7            133.   MGA Defendants deny the allegations set forth in paragraph

8    133.

9            134.   MGA Defendants deny the allegations set forth in paragraph

10   134.

11           135.   MGA Defendants deny the allegations set forth in paragraph

12   135.

13           136.   MGA Defendants repeat their responses contained in paragraphs

14   1 through 135 of this Answer and incorporate them by reference as though fully and

15   completely set forth herein.

16           137.   MGA Defendants deny the allegations set forth in paragraph

17   137.

18           138.   MGA Defendants deny the allegations set forth in paragraph

19   138.

20           139.   MGA Defendants deny the allegations set forth in paragraph

21   139.

22           140.   MGA Defendants deny the allegations set forth in paragraph

23   140.

24           141.   MGA Defendants deny the allegations set forth in paragraph

25   141.

26           142.   MGA Defendants repeat their responses contained in paragraphs

27   1 through 141 of this Answer and incorporate them by reference as though fully and

28   completely set forth herein.

- 16 -

EXHIBIT _4__ PAGE _130_

1            143.   Paragraph 143 is a statement of Mattel's legal position, to which

2  no response is necessary.  To the extent a response is required, MGA Defendants

3  deny the allegations set forth in the paragraph 143.

4            144.   MGA Defendants deny the allegations set forth in paragraph

5  144.

6            145.   MGA Defendants deny the allegations set forth in paragraph

7  145.

8            146.   MGA Defendants deny the allegations set forth in paragraph

9  146.

10           147.   MGA Defendants deny the allegations set forth in paragraph

11  147.

12           148.   MGA Defendants deny the allegations set forth in paragraph

13  148.

14           149.   MGA Defendants repeat their responses contained in paragraphs

15  1 through 148 of this Answer and incorporate them by reference as though fully and

16  completely set forth herein.

17           150.   MGA Defendants deny the allegations set forth in paragraph

18  150.

19           151.   MGA Defendants deny the allegations set forth in paragraph

20  151.

21           152.   MGA Defendants deny the allegations set forth in paragraph

22  152.

23           153.   MGA Defendants deny the allegations set forth in paragraph

24  153.

25           154.   MGA Defendants deny the allegations set forth in paragraph

26  154.

27

28

EXHIBIT __4__ PAGE _131_

1          155.   MGA Defendants repeat their responses contained in paragraphs
2    1 through 154 of this Answer and incorporate them by reference as though fully and
3    completely set forth herein.

4          156.   MGA Defendants deny the allegations set forth in paragraph
5    156.

6          157.   MGA Defendants deny the allegations set forth in paragraph
7    157.

8          158.   MGA Defendants deny the allegations set forth in paragraph
9    158.

10          159.   MGA Defendants deny the allegations set forth in paragraph
11    159.

12          160.   MGA Defendants deny the allegations set forth in paragraph
13    160.

14          161.   MGA Defendants deny the allegations set forth in paragraph
15    161.

16          162.   MGA Defendants deny the allegations set forth in paragraph
17    162.

18          163.   MGA Defendants repeat their responses contained in paragraphs
19    1 through 162 of this Answer and incorporate them by reference as though fully and
20    completely set forth herein.

21          164.   MGA Defendants deny the allegations set forth in paragraph
22    164.

23          165.   MGA Defendants deny the allegations set forth in paragraph
24    165.

25          166.   MGA Defendants deny the allegations set forth in paragraph
26    166.

27

28

EXHIBIT _4_ PAGE _132_

1    167.   MGA Defendants repeat their responses contained in paragraphs

2  1 through 166 f this Answer and incorporate them by reference as though fully and

3  completely set forth herein.

4    168.   MGA Defendants deny the allegations set forth in paragraph

5  168.

6    169.   Paragraph 169 is a statement of Mattel's legal position, to which

7  no response is necessary.  To the extent a response is required, MGA Defendants

8  deny the allegations set forth in the paragraph 169.

9    170.   Paragraph 170 is a statement of Mattel's legal position, to which

10  no response is necessary.  To the extent a response is required, MGA Defendants

11  deny the allegations set forth in the paragraph 170.

12                              **AFFIRMATIVE DEFENSES**

13      Without admitting any wrongful conduct on the part of MGA Defendants or

14  any Counter-Defendant, and without admitting that Mattel suffered any loss,

15  damage, or injury, MGA Defendants allege the following affirmative defenses to

16  the Counterclaims.  By designating the following as affirmative defenses, MGA

17  Defendants do not in any way waive or limit any defenses which are or may be

18  raised by their denials, allegations, and averments set forth herein.  MGA

19  Defendants also do not, by alleging any affirmative defense, admit that Mattel does

20  not have the burden of proof for any or all facts underlying any of those defenses.

21  These defenses are pled in the alternative, and are raised to preserve the rights of

22  MGA Defendants to assert such defenses, and are without prejudice to their ability

23  to raise other and further defenses.

24                              **FIRST AFFIRMATIVE DEFENSE**

25                              (Failure to State a Claim)

26      Mattel's counterclaims fail to state a claim against MGA Defendants upon

27  which relief can be granted.

28

EXHIBIT _4_ PAGE _133_

## SECOND AFFIRMATIVE DEFENSE

### (Lack of Standing)

Mattel's counterclaims are barred in whole or in part by its lack of standing.

## THIRD AFFIRMATIVE DEFENSE

### (Unclean Hands)

Mattel's counterclaims are barred in whole or in part by Mattel's unclean hands. This affirmative defense is based, in part, on Mattel's efforts to undermine MGA's business and to "kill" Bratz at any cost which include, but are not limited to, Mattel's: efforts to infringe and dilute MGA's trade dress, copy MGA's products, packaging, themes, and advertising (including for Mattel products My Scene, Diva Starz, Wee 3 Friends, Acceleracers, and Polly Pocket, to name a few), and engage in other acts of unfair competition against MGA as alleged in MGA's complaint against Mattel; efforts to create negative publicity or press about MGA, MGA products, Bryant, Larian, or MGA employees; efforts to fund or commission market research or studies that portray Bratz or MGA products negatively; efforts to interfere with MGA's acquisition of or investment in Zapf Creation AG; efforts to include negative references to MGA or Bratz on Mattel's "We Believe in Girls" website; efforts or intent to interfere with business dealings or contractual relations between MGA and Smoby Group; influencing Nickelodeon to reject MGA advertisements or to limit time slots for advertisements; assisting parties in lawsuits against MGA; monitoring, "spying on" or gaining knowledge of MGA's trade secrets, non-public information, non-public activities, unreleased products, and product development; gaining access, or attempts to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false pretenses; wrongfully obtaining MGA's costs and sales information through Mattel-employed category managers at retailers; inducing non-party customers to breach confidentiality agreements with MGA and divulge non-public information about MGA's unreleased products; covertly investigating MGA, its officers and

EXHIBIT 4 PAGE 134

1   employees, and their family members; contacting persons under false pretense in
2   order to interrogate them about Bratz and this litigation; coercing Mattel employees
3   to accept restrictive covenants (right before massive layoff) and non-compete
4   clauses and other efforts to prevent prospective MGA employees from accepting
5   offers of employment; delay in suing Carter Bryant because, *inter alia*, Mattel
6   wanted Bryant to testify in an unrelated Mattel case; falsely inflating its Barbie
7   sales figures in an effort to mislead the public and retailers; and taking all measures
8   to conceal its bad acts, including the willful non-retention and destruction of
9   documents.  These averments are made on information and belief except where
10  MGA Defendants have knowledge thereof.

11  ### FOURTH AFFIRMATIVE DEFENSE
12  #### (Laches)
13  Mattel's counterclaims are barred by the equitable doctrine of laches.  MGA
14  Defendants avers that Mattel was on notice no later than March 2002 as to Bryant's
15  involvement with MGA and the creation of the original Bratz dolls.

16  ### FIFTH AFFIRMATIVE DEFENSE
17  #### (Statute of Limitations)
18  Mattel's counterclaims are barred by the applicable statutes of limitations.

19  ### SIXTH AFFIRMATIVE DEFENSE
20  #### (Good Faith)
21  Mattel cannot maintain its counterclaims against MGA Defendants because
22  MGA Defendants acted in good faith and in conformity with applicable laws, and
23  did not directly or indirectly induce the act or acts constituting the alleged causes of
24  actions.

25  ### SEVENTH AFFIRMATIVE DEFENSE
26  #### (Information Readily Ascertainable)
27
28

EXHIBIT 4 PAGE 135

1   MGA Defendants cannot be liable for misappropriation of information that
2   was readily ascertainable by proper means at the time of the alleged acquisition or
3   use.

4   **EIGHTH AFFIRMATIVE DEFENSE**

5   (Acts or Omissions of Others)

6   Mattel's damages, if any, were not caused by MGA Defendants and are not
7   attributable to any acts or omissions of MGA Defendants.

8   **NINTH AFFIRMATIVE DEFENSE**

9   (Res Judicata)

10   Mattel's counterclaims are barred in whole or in part by res judicata.

11   **TENTH AFFIRMATIVE DEFENSE**

12   (Estoppel)

13   Mattel's counterclaims are barred in whole or in part by estoppel.

14   **ELEVENTH AFFIRMATIVE DEFENSE**

15   (Acquiescence)

16   Mattel's counterclaims are barred in whole or in part by acquiescence.

17   **TWELFTH AFFIRMATIVE DEFENSE**

18   (Lack of Ownership)

19   Mattel is neither the legal nor beneficial owner in the copyrights purportedly
20   at issue.

21   **THIRTEENTH AFFIRMATIVE DEFENSE**

22   (Invalid Copyrights)

23   Mattel's purported copyrights have expired or are otherwise invalid.

24   **FOURTEENTH AFFIRMATIVE DEFENSE**

25   (Failure to Mitigate)

26   MGA Defendants deny that Mattel suffered any damages, but even if it did,
27   Mattel failed to take reasonable steps to mitigate those purported damages.

28

EXHIBIT 4 PAGE 136

## FIFTEENTH AFFIRMATIVE DEFENSE

### (No Statutory Damages or Attorneys' Fees)

Mattel is barred from recovering statutory damages and/or attorneys' fees because it failed to register the copyrights that are purportedly at issue within the time required by 17 U.S.C. § 412.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Innocent Intent)

MGA Defendants deny that Mattel owns any copyright interest in the alleged works, but even if MGA Defendants infringed any copyright interest held by Mattel, MGA Defendants did so without knowledge or intent.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Waiver)

Mattel's counterclaims are barred in whole or in part by waiver.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Abandonment)

Mattel has abandoned any interest it may have had in the alleged copyrighted works.

## NINETEENTH AFFIRMATIVE DEFENSE

### (*De Minimus* Use)

MGA Defendants deny that Mattel owns any copyright interest in the alleged works, but even if Mattel could craft a claim that the Bratz dolls incorporate an aspect of a Mattel copyrighted work, such use would be *de minimus* and non-infringing.

EXHIBIT _4_ PAGE _137_

## TWENTIETH AFFIRMATIVE DEFENSE

### (Joint Authorship)

MGA Defendants deny that Mattel owns any copyright interest in the alleged works, but even if it did, any liability would be eliminated or greatly diminished by the doctrine of joint authorship.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Undiscovered Defenses)

MGA Defendants have insufficient knowledge or information upon which to form a belief as to whether additional defenses are available.  MGA Defendants reserve the right to assert any further or additional defenses upon receiving more complete information regarding the matters alleged in the Counterclaims, through discovery or otherwise.

WHEREFORE, MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V., pray for relief as follows:

a.   that the Counterclaims be dismissed with prejudice;

b.   that judgment be entered in favor of counter-defendants and against counterclaimant;

c.   that counter-defendants recover their costs and attorneys' fees; and

d.   that the Court award such other and further relief as is just and proper.

Dated: August 13, 2007                O'MELVENY & MYERS LLP



Steven J. Olson
Attorneys for Counter-defendants
MGA Entertainment, Inc., Isaac Larian,
MGA Entertainment (HK) Limited, and
MGAE de Mexico S.R.L. de C.V.

LA2:837754.6

- 24 -

EXHIBIT __4__ PAGE _138_

1     UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3      EASTERN DIVISION

4       -  -  -

5  HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6       -  -  -

7 CARTER BRYANT,      )
           )
8      PLAINTIFF,  )
           )
9    VS.      ) NO. ED CV 04-09049
           ) (LEAD LOW NUMBER)
10 MATTEL, INC.,     )
           )
11     DEFENDANTS. ) STATUS/SCHEDULING
           )   CONFERENCE
12 AND RELATED ACTIONS,  )
           )

13

14

15    REPORTER'S TRANSCRIPT OF PROCEEDINGS

16     RIVERSIDE, CALIFORNIA

17    MONDAY, FEBRUARY 12, 2007

18      1:49 P.M.

19       **CERTIFIED**

20       **COPY**

21

22

23    THERESA A. LANZA, RPR, CSR
    FEDERAL OFFICIAL COURT REPORTER
24    3470 12TH STREET, RM. 134
    RIVERSIDE, CALIFORNIA  92501
25     (951) 274-0844
    CSR11457@SBCGLOBAL.NET EXHIBIT ___5___ PAGE _139_

```
 1   APPEARANCES:

 2

 3   ON BEHALF OF PLAINTIFF/COUNTER DEFENDANT MATTEL, INC.:

 4

 5                         QUINN EMANUEL
                          BY:  JOHN B. QUINN
 6                         865 S. FIGUEROA STREET,
                          10TH FLOOR
 7                         LOS ANGELES, CALIFORNIA  90017
                          (213) 624-7707
 8

 9   ON BEHALF OF PLAINTIFF/COUNTER COMPLAINANT/DEFENDANT,
     CARTER BRYANT:
10

11                         LITTLER MENDELSON
                          BY:  KEITH A. JACOBY
12                         2049 CENTURY PARK EAST,
                          FIFTH FLOOR
13                         LOS ANGELES, CALIFORNIA  90067
                          (310) 553-0308
14

15   ON BEHALF OF MGA ENTERTAINMENT:

16                         O'MELVENY & MYERS LLP
                          BY:  DIANA M. TORRES
17                         400 SOUTH HOPE STREET
                          LOS ANGELES, CA  90071-2899
18                         (213) 430-6556

19

20

21

22

23

24

25                                          EXHIBIT 5 PAGE 140
```

1  WITNESSES AND INTERROGATORIES AND THE LIKE.

2        AS FAR AS 05-2727, THE JURY TRIAL DATE WILL BE

3  JULY 1, 2008; THE HEARING ON ANY MOTIONS IN LIMINE WILL BE

4  JUNE 23, 2008, 10:00 A.M.; THE FINAL PRE-TRIAL CONFERENCE WILL

5  BE JUNE 2, 2008, 11:00 A.M.; THE LAST DATE TO CONDUCT A

6  SETTLEMENT CONFERENCE IN THAT CASE WILL BE APRIL 21, 2008; THE

7  LAST DATE FOR HEARING DISPOSITIVE MOTIONS IN THAT CASE WILL BE

8  APRIL 7, 2008, 10:00 A.M.; DISCOVERY CUTOFF WILL BE MARCH 3,

9  2008.

10       ANY FURTHER AMENDMENTS OR THE ADDITION OF PARTIES IN

11 EITHER OF THESE CASES IS GOING TO REQUIRE LEAVE OF COURT.

12       THESE ARE THE LIMITS I'M GOING TO PUT ON EXPERT

13 DEPOSITIONS AND INTERROGATORIES.  NOW, THESE LIMITS ARE -- I

14 DON'T WANT TO SAY THEY ARE SOFT LIMITS, BUT THEY ARE LIMITS

15 WHICH THE COURT WOULD CERTAINLY UNDERSTAND OR WOULD INVITE

16 COUNSEL TO SUBMIT A MOTION TO EXPAND, IF THERE'S REASON TO.

17 BUT I JUST WANT TO HAVE SOME PARAMETERS PLACED ON THIS AT THE

18 OUTSET.

19       AS FAR AS NONEXPERT DEPOSITIONS, I'M GOING TO LIMIT

20 EACH SIDE TO 24; SO THAT WILL BE A TOTAL OF 48 BETWEEN THE TWO

21 SIDES, WHICH WOULD HOPEFULLY CAPTURE MOST OF THE INDIVIDUALS

22 WHO HAVE SOME INFORMATION TO PROVIDE IN THIS CASE.  I'M GOING

23 TO LIMIT THE NUMBER OF EXPERT WITNESSES TO 20 ON EACH SIDE, AND

24 THEN THE TOTAL NUMBER OF INTERROGATORIES TO A TOTAL NUMBER OF

25 50 TO EACH SIDE.

EXHIBIT _5_ PAGE _141_

1        AGAIN, IF YOU GET TO THE POINT WHERE YOU NEED 21

2   EXPERT WITNESSES FOR SOME REASON, OR YOU NEED 25 FACT

3   WITNESSES, YOU CAN MAKE APPLICATION TO THIS COURT AND THE COURT

4   WILL CONSIDER THAT AFTER YOU, OF COURSE, HAVE MET AND CONFERRED

5   AND TRIED TO WORK THAT OUT ON YOUR OWN.  BUT WE HAVE TO HAVE          02:2(

6   SOME PARAMETERS ON THIS.

7        ARE THERE ANY QUESTIONS?

8        THE COURT WILL BE ISSUING ITS SCHEMATIC WHICH WILL

9   HAVE ALL THESE DATES AND THE COURT'S SCHEDULING ORDERS AND

10  CALCULATIONS, BUT ARE THERE ANY GENERAL QUESTIONS ABOUT WHAT         02:21

11  THE COURT IS TRYING TO ACCOMPLISH HERE?

12       MS. TORRES:  YOUR HONOR, YOU JUST SAID 50

13  INTERROGATORIES EACH SIDE.  THE FEDERAL RULES ORDINARILY

14  PROVIDE FOR INTERROGATORIES TO PARTIES, AND THERE ARE A NUMBER

15  OF PARTIES THAT THEY ARE TRYING TO SERVE, WHO THEY MAY HAVE          02:21

16  ALREADY SERVED, I DON'T KNOW.

17       ARE THOSE PARTIES INCLUDED IN THAT 50 LIMIT?

18       THE COURT:  THERE'S ONE PARTY, ESSENTIALLY, ON THE

19  OTHER SIDE, AND YOU HAVE TWO PARTIES.

20       MS. TORRES:  WELL, THEY HAVE ALSO NAMED -- ACTUALLY             02:21

21  WE HAVE THREE PARTIES NOW; THEY SUED OUR CEO ISAAC LARIAN AND

22  THEY HAVE NAMED ANOTHER EMPLOYEE AND TWO INDIRECT SUBSIDIARIES.

23       THE COURT:  WELL, MR. JACOBY, YOU'RE HERE ON BEHALF

24  OF MR. BRYANT.  WOULD YOU REALLY NEED ANOTHER 50

25  INTERROGATORIES BEYOND WHAT MGA WOULD BE SUBMITTING ON THESE         02:22

EXHIBIT _5_ PAGE _142_

1   CLAIMS CONCERNING BRATZ OWNERSHIP?

2            MR. JACOBY:  PROBABLY NOT.  BUT, I MEAN, I THINK IT

3   IS A CONCERN THAT THERE ARE POTENTIALLY FOUR PARTIES WHO AREN'T

4   EVEN HERE TODAY.

5            THE COURT:  LET'S TRY TO WORK WITHIN THE CONFINES OF

6   THE 50 INTERROGATORIES, AND IF YOU NEED MORE, AGAIN, THE COURT

7   IS GOING TO BE FORTHCOMING, IF THERE'S A NEED FOR IT.  AND IT'S

8   THE TYPE OF ORDER THAT IF YOU CAN STIPULATE AMONGST YOURSELVES,

9   YOU'RE NOT GOING TO NEED AN ORDER FROM THE COURT.

10           BUT IF YOU'RE NOT AGREEING AMONGST YOURSELVES, THEN

11  YOU'RE GOING TO HAVE TO COME BACK TO THE COURT BEFORE YOU BUST

12  THOSE LIMITS.  UNLIKE EVERY OTHER ORDER THE COURT ISSUES, WHERE

13  ONCE THE COURT ISSUES AN ORDER AND YOU NEED AN ORDER FROM THE

14  COURT TO ALTER THAT, THIS IS ONE THAT I WILL GIVE YOU AUTHORITY

15  AMONGST YOURSELVES TO STIPULATE TO A GREATER NUMBER.  BUT LETS

16  BE REASONABLE.  I CAN'T IMAGINE YOU CAN'T WORK THIS OUT.  I

17  JUST DON'T WANT TO HAVE OPEN-ENDED NUMBERS OF INTERROGATORIES

18  AND EXPERTS.

19           MS. TORRES:  WE DON'T EITHER, AND I DON'T THINK WE'LL

20  NEED 50 PER PARTY.

21           MR. QUINN:  IN THE UNLIKELY EVENT THERE WERE A

22  DISAGREEMENT ON THAT, DOES THAT COME TO YOU?

23           THE COURT:  YES, THAT COMES TO ME.

24           MR. QUINN:  THANK YOU, YOUR HONOR.

25           THE COURT:  BUT GIVEN THE SIGNIFICANCE OF THIS CASE

EXHIBIT 5 PAGE 143

25

```
 1   AND THE RESOURCES THAT QUINN EMANUEL AND O'MELVENY & MYERS AND

 2   LITTLER ARE ALL DEVOTING TO THIS, THESE DATES ARE PRETTY FIRM;

 3   SO PLAN ACCORDINGLY.

 4            MR. JACOBY:  THANK YOU, YOUR HONOR.

 5            MR. QUINN:  THANK YOU, YOUR HONOR.                    02:23

 6            THE COURT:  ALL RIGHT.  GOOD LUCK.

 7

 8

 9

10

11

12

13

14

15

16

17                         CERTIFICATE

18

19   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
20   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
21   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.
22

23   _____        2-22-07
     THERESA A. LANZA, CSR, RPR               DATE
24   FEDERAL OFFICIAL COURT REPORTER

25
                                        EXHIBIT 5 PAGE 144
```

1

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3               EASTERN DIVISION

4                  - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                  - - -

7    CARTER BRYANT, ET. AL.,          )
                                      )
8                   PLAINTIFFS,       )
                                      )
9            VS.                      )   NO. ED CV 04-09049
                                      )   (LEAD LOW NUMBER)
10   MATTEL, INC., ET. AL.,           )
                                      )
11                  DEFENDANTS.       )   MOTIONS
                                      )
12   AND CONSOLIDATED ACTIONS,        )
                                      )

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16             RIVERSIDE, CALIFORNIA

17           MONDAY, DECEMBER 3, 2007

18                 10:06 A.M.

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
           FEDERAL OFFICIAL COURT REPORTER
24            3470 12TH STREET, RM. 134
           RIVERSIDE, CALIFORNIA  92501
25               951-274-0844
           CSR11457@SBCGLOBAL.NET      EXHIBIT _6_ PAGE _145_

**CERTIFIED COPY**

5

1    REQUESTED ADDITIONAL INTERROGATORY DIRECTED TOWARDS THE

2    AFFIRMATIVE DEFENSES.  BUT IT'S PRECISELY THAT PROCESS OF

3    FURTHER DISCOVERY WITH RESPECT TO THE AFFIRMATIVE DEFENSES

4    WHICH SEEMS, TO THE COURT ANYWAY, TO MAKE THE NOTION OF

5    STRIKING THE AFFIRMATIVE DEFENSES AS PREMATURE, BECAUSE IT'S

6    PRECISELY IN RESPONSE TO THAT INTERROGATORY THAT THE

7    INFORMATION THAT MATTEL CLAIMS IS LACKING MIGHT BECOME APPARENT

8    AND PERHAPS THEN WE COULD ADDRESS THAT.

9            I SUPPOSE THAT'S BOLSTERED BY THE NOTION THAT, AT

10   LEAST FROM MY READING, THESE AFFIRMATIVE DEFENSES LARGELY

11   RELATE TO THE SECOND PHASE, NOT TO THE FIRST PHASE, NOT THE

12   INITIAL TRIAL THAT WE'RE GOING TO DO; AND THAT FURTHERS MY

13   SENSE THAT THIS JUST MAY BE PREMATURE.  I DON'T WANT TO TAKE

14   THE EASY WAY OUT HERE, BUT I JUST KIND OF THINK THAT THIS MIGHT

15   NOT BE THE TIME FOR US TO BE ADDRESSING THESE AFFIRMATIVE

16   DEFENSES.

17           WITH THOSE THOUGHTS IN MIND, LET ME HEAR FROM

18   COUNSEL.  AND SINCE MATTEL IS MOVING PARTY, I'LL PERMIT YOU TO

19   PROCEED FIRST.

20           **MR. COREY:**  THANK YOU, YOUR HONOR.  I APPRECIATE

21   THAT.

22           IT'S INTERESTING THAT YOU POINT OUT THAT YOUR

23   PERCEPTION OF THE UNCLEAN HANDS DEFENSE SPECIFICALLY AS THE

24   ALLEGATIONS RELATE TO PHASE TWO, BECAUSE I CAN REPRESENT TO THE

25   COURT THAT AS RECENTLY AS LAST FRIDAY, ONE OF MY PARTNERS,

EXHIBIT _6_ PAGE _146_

DECEMBER 3. 2007                          BRYANT V MATTEL

6

1    SCOTT KIDMAN, WAS INFORMED BY COUNSEL FOR MGA THAT MGA HAS

2    TAKEN THE POSITION THAT THE ENTIRETY OF THE UNCLEAN HANDS

3    DEFENSE WILL BE TRIED IN PHASE ONE AND THAT'S ONE OF THE

4    JUSTIFICATIONS FOR THEM PURSUING SOME OF THE DISCOVERY THAT

5    THEY'RE PURSUING NOW.

6         **THE COURT:**  WELL, I'LL HAVE TO HEAR HOW THAT'S GOING

7    TO WORK.  I'LL BE CURIOUS TO HEAR HOW THE ENTIRETY OF THAT

8    DEFENSE COMES INTO PHASE ONE.  I GUESS I DON'T UNDERSTAND THAT,

9    BUT I'M SURE IT WILL BE EXPLAINED TO ME.

10        **MR. COREY:**  I DON'T UNDERSTAND IT EITHER, GIVEN THAT

11   IT SEEMS TO ME TO BE IN DIRECT CONTRAVENTION TO THE COURT'S

12   PHASING ORDER, BECAUSE PART OF THE UNCLEAN HANDS DEFENSE, AT

13   LEAST AS IT'S CURRENTLY BEEN PLED, INCLUDES THE UNFAIR

14   COMPETITION CLAIMS THAT MGA IS ASSERTING.

15        THAT BEING SAID, I DON'T THINK THAT IT'S PREMATURE

16   FOR THE COURT TO LOOK AT THE DEFENSE AS ALLEGED AND --

17   ACTUALLY, TO TAKE A HARD LOOK AT THE DEFENSE AND --

18        **THE COURT:**  I'VE TAKEN A HARD LOOK AT THE DEFENSE.

19   MY QUESTION IS, YOU'RE ASKING FOR MORE DISCOVERY ON THE

20   DEFENSES; CORRECT?

21        **MR. COREY:**  WE'RE ASKING FOR MORE DISCOVERY ON ALL OF

22   THE DEFENSES.  BUT I THINK WITH RESPECT TO THE UNCLEAN HANDS

23   DEFENSE AND TO THE WAIVER, ESTOPPEL, AND ACQUIESCENCE DEFENSES

24   IN PARTICULAR, I THINK THE COURT CAN LOOK AT THOSE AS THEY'VE

25   BEEN ALLEGED AND FIND THAT THEY'RE DEFECTIVE.  FRANKLY, THEY

EXHIBIT _6_ PAGE _147_

DECEMBER 3. 2007                    BRYANT V MATTEL

12

1   HAVEN'T TOLD US WHAT FACTS THEY THINK SUPPORT THEIR DEFENSES.

2   AND WE OBVIOUSLY NEED TO KNOW THIS, BOTH TO PREPARE FOR TRIAL

3   AND, AS THE COURT ADVERTED TO, FOR OTHER POTENTIAL PRETRIAL

4   MOTIONS, LIKE A SUMMARY JUDGMENT MOTION ON THEIR AFFIRMATIVE

5   DEFENSES.  THE ONLY WAY WE CAN GET THAT IS THROUGH THE

6   CONTENTION INTERROGATORIES THAT WE'RE SEEKING LEAVE ON.

7            I'M HAPPY TO RUN THROUGH THE FACTORS, IF THE COURT

8   WOULD LIKE, THE 26(B)(2) FACTORS.

9            **THE COURT:**  IT'S NOT NECESSARY.

10           **MR. PROCTOR:**  THE ONE OTHER POINT THAT I DID WANT TO

11  ADDRESS IS DEFENDANTS' PERSISTENT ACCUSATIONS ABOUT MATTEL'S

12  DISCOVERY AND DEFENDANTS' ASSERTIONS THAT MATTEL HAS AN

13  INSATIABLE APPETITE FOR DISCOVERY.

14           ON FRIDAY WE GOT ANOTHER 200 REQUESTS FOR PRODUCTION

15  FROM MGA, BRINGING THE TOTAL NUMBER OF REQUESTS FOR PRODUCTION

16  THEY SERVED TO SOMETHING LIKE 1,250.

17           **THE COURT:**  THE COURT UNDERSTANDS THAT BOTH SIDES

18  HAVE REQUESTED A LOT OF DISCOVERY.

19           **MR. PROCTOR:**  VERY WELL.

20           **THE COURT:**  THANK YOU, COUNSEL.

21           **MR. ROTH:**  CARL ROTH ON BEHALF OF THE MGA DEFENDANTS.

22  I'M GOING TO ADDRESS THE MOTION TO STRIKE THE AFFIRMATIVE

23  DEFENSE; MR. WERDEGAR IS GOING TO ADDRESS THE MOTION TO SERVE

24  AN ADDITIONAL INTERROGATORY.  GIVEN YOUR TENTATIVE, I WILL KEEP

25  MY COMMENTS RELATIVELY CONCISE.

EXHIBIT _6_ PAGE _148_

DECEMBER 3. 2007                    BRYANT V MATTEL

13

1          FIRST, I THINK THE COURT IS ADDRESSING THE MOTION TO

2   STRIKE THE AFFIRMATIVE DEFENSE FROM THE RIGHT FRAMEWORK; THAT

3   IS TO SAY, GIVEN THAT THE MOTION IS ADDRESSED AT THE PLEADINGS

4   STAGE, CAN YOU, LOOKING AT THE MOTION, DISCERN FOR CERTAIN THAT

5   THERE IS NO PLAUSIBLE RELATIONSHIP BETWEEN THE ALLEGATIONS THAT

6   SUPPORT THE UNCLEAN HANDS DEFENSE AND THE SUBJECT MATTER OF THE

7   CASE?

8          THE QUESTION IS, WHAT IS THE SUBJECT MATTER OF THE

9   CASE?

10         IN THAT REGARD, I WANT TO FOCUS --

11         **THE COURT:**  CLARIFY THIS FIRST ISSUE.  MAYBE I'M

12  CONFUSED NOW.  DESCRIBE HOW YOU PLAN ON USING THE UNCLEAN HANDS

13  DEFENSE, COUNSEL.

14         **MR. ROTH:**  YOUR HONOR, I WASN'T A PARTY TO

15  COMMUNICATIONS THAT MAY HAVE HAPPENED WITH --

16         **THE COURT:**  IF YOU'RE GOING TO SPEAK ON BEHALF OF

17  YOUR CLIENT, THOUGH, YOU'RE RESPONSIBLE FOR IT.

18         **MR. ROTH:**  I CAN TELL YOU THAT FROM OUR PERSPECTIVE,

19  MOST OF THE UNCLEAN HANDS ALLEGATIONS ARE LIKELY GOING TO

20  RESULT IN EVIDENCE THAT IS RELEVANT TO PHASE TWO OF THE CASE,

21  WHERE BOTH SIDES HAVE UNFAIR TRADE PRACTICE CLAIMS.  IT MAY BE

22  THAT A SUBSTANTIAL PORTION OF IT IS RELEVANT TO 1-A.

23         AS YOUR HONOR HAS INDICATED IN THE PAST --

24         **THE COURT:**  THIS IS THE KIND OF VAGARIES THAT I CAN

25  UNDERSTAND CONFUSE AND COMPLICATE MATTERS FOR THE PLAINTIFF.

EXHIBIT _6_ PAGE _149_

1       CAN ANYONE SPEAK TO THIS CONVERSATION THAT SUPPOSEDLY

2 TOOK PLACE?

3       **MR. NOLAN:**  YOUR HONOR, I CANNOT, BUT IF I COULD JUST

4 INQUIRE WITH COUNSEL WHO MADE THE STATEMENT FROM MY TEAM.

5       **THE COURT:**  THAT'S REASONABLE.

6       (SOTTO VOCE DISCUSSION BETWEEN COUNSEL.)

7       **MR. ROTH:**  YOUR HONOR, AS I INDICATED, OUR VIEW IS

8 THAT FOR THE MOST PART, THE UNCLEAN HANDS DEFENSE RELATES TO

9 PHASE TWO OF THE CASE.

10       **THE COURT:**  SO ARE YOU WILLING TO SAY THAT YOU ARE

11 NOT GOING TO BE BRINGING AN UNCLEAN HANDS DEFENSE IN PHASE ONE?

12       **MR. ROTH:**  NO, WE'RE NOT WILLING TO --

13       **THE COURT:**  OKAY.  THEN YOU'RE GOING TO NEED TO

14 EXPLAIN THE EXTENT TO WHICH THE UNCLEAN HANDS DEFENSE IS GOING

15 TO BE RAISED IN PHASE ONE.

16       **MR. ROTH:**  OKAY.

17       THE UNCLEAN HANDS DEFENSE RELATES TO THE BRATZ

18 INTELLECTUAL PROPERTY.

19       **THE COURT:**  OKAY.  THAT'S PRETTY BROAD.

20       IN WHAT WAY, COUNSEL?

21       **MR. ROTH:**  IN THE SENSE THAT WE ALLEGE, IN CONNECTION

22 WITH THE COPYRIGHT CLAIMS, INFRINGEMENT AND UNFAIR PRACTICE AS

23 IT RELATES TO MR. CARTER [SIC] AND THE BRATZ INTELLECTUAL

24 PROPERTY.  THAT IS THE SUBJECT MATTER PHASE.

25       **THE COURT:**  WHAT SPECIFICALLY HAPPENED HERE THAT WAS

EXHIBIT _6_ PAGE _150_

DECEMBER 3. 2007                BRYANT V MATTEL

15

1   UNCLEAN BY MATTEL?

2          **MR. ROTH:**  OUR ALLEGATIONS ARE THAT MATTEL MADE

3   DISPARAGING REMARKS REGARDING MR. BRYANT, MGA, AND THE BRATZ

4   PRODUCTS FOLLOWING THE COMMERCIAL EXPLOITATION OF THAT

5   INTELLECTUAL PROPERTY BY MGA.

6          NOW, THAT, WE THINK, IS RELEVANT TO PHASE ONE OF THE

7   CASE.  IT'S PRIMARILY RELEVANT, WE ACKNOWLEDGE, TO PHASE TWO OF

8   THE CASE.

9          IN ADDITION, WITH RESPECT TO PHASE 1-A AND THE

10  INFRINGEMENT ISSUES THAT ARISE IN CONNECTION WITH PHASE 1-A,

11  THIS COURT MAY BE ASKED, IF LIABILITY IS DETERMINED AT SOME

12  POINT, TO ISSUE AN INJUNCTION IN THIS CASE.  IN THE CONTEXT OF

13  A PROCEEDING BEFORE THIS COURT REGARDING WHETHER OR NOT AN

14  INJUNCTION SHOULD BE ISSUED, ALL OF THE ALLEGATIONS REGARDING

15  INEQUITABLE CONDUCT WILL BE RELEVANT TO THIS COURT.

16         **THE COURT:**  GO BACK TO THESE NEGATIVE COMMENTS.

17         ARE THESE -- AND I DON'T MEAN TO MAKE TOO FINE A

18  POINT ON THIS -- ARE THESE NEGATIVE STATEMENTS ABOUT BRATZ, OR

19  ARE THESE ABSOLUTELY FALSE DISPARAGING COMMENTS?

20         WHAT IS YOUR ALLEGATION?

21         **MR. ROTH:**  THEY ARE FALSE DISPARAGING COMMENTS

22  REGARDING BRATZ AND MGA.

23         **THE COURT:**  DIRECTED TO CARTER BRYANT, OR DIRECTED TO

24  MGA?

25         **MR. ROTH:**  DIRECTED TO MGA.

EXHIBIT _6_ PAGE _151_

DECEMBER 3. 2007                    BRYANT V MATTEL

16

1          THE COURT:  SUCH AS?

2          MR. ROTH:  COMMENTS REGARDING THE CHARACTERISTICS OF

3     THE PRODUCTS AND SO FORTH.

4          THE COURT:  BUT GIVE ME AN EXAMPLE OF A COMMENT THAT

5     WAS MADE.

6          MR. ROTH:  YOUR HONOR, I CAN'T GO --

7          THE COURT:  YOU CAN'T GIVE ME ONE EXAMPLE?

8          MR. ROTH:  NO, I CAN'T.

9          THE COURT:  CAN ANYBODY FROM MGA GIVE ME ONE EXAMPLE

10    OF ONE DISPARAGING FALSE STATEMENT MADE BY MATTEL TOWARDS MGA?

11         MR. NOLAN:  YOUR HONOR, I THINK IT GOES --

12         IF I COULD.

13         THE CONTENTION WILL BE THAT MATTEL ENGAGED IN A

14    SERIES OF FALSE STATEMENTS TO THE PRESS WITH RESPECT TO THE

15    NATURE OF THE BUSINESS PRACTICES OF MGA, AND, IN PARTICULAR,

16    HOW IT RELATES TO THE MARKETING OF BRATZ.  THERE'S A CONTENTION

17    THAT BRATZ -- MGA WAS MISSTATING IN THE MARKETPLACE THE BREADTH

18    OF ITS SUCCESS, THE ORIGINALITY OF ITS DESIGN, THE SCOPE OF THE

19    MARKET SHARE THAT IT ENJOYED, AND ITS MARKET POSITION RELATING

20    TO MATTEL AT VARIOUS POINTS; ALL OF WHICH, WE BELIEVE, WERE

21    FALSE AND WERE INTENDED TO INJURE THE BRATZ LINE.

22         AND NOW YOU'RE GOING TO ASK, 'WELL, WHAT RELEVANCE

23    DOES THAT HAVE TO POSSIBLY' --

24         THE COURT:  THAT'S NOT GOING TO BE MY QUESTION.  MY

25    QUESTION GOES BACK TO -- YOU REFER TO A SERIES OF STATEMENTS,

EXHIBIT _6_ PAGE _152_

DECEMBER 3. 2007                    BRYANT V MATTEL

1    AND I'M ASKING FOR ONE EXAMPLE OF ONE STATEMENT.

2            I SENSE, AND I'M GETTING AN APPRECIATION FOR, THE

3    FRUSTRATION THAT THE PLAINTIFF HAS IN ADDRESSING THIS

4    AFFIRMATIVE DEFENSE WITHOUT, AT THIS LATE DATE, HAVING

5    SPECIFICS.  FOR THE COURT TO BE ABLE TO DETERMINE WHETHER OR

6    NOT THIS IS LEGALLY A SUFFICIENT BASIS TO BRING THE UNCLEAN

7    HANDS DEFENSE, SPECIFICALLY IN THIS FIRST PHASE WHERE IT'S MORE

8    LIMITED AND THE NEXUS NEEDS TO BE MUCH MORE TIGHTER IN THE

9    CONTEXT OF THIS COPYRIGHT CLAIM FOR IT TO BE A COLORABLE

10   DEFENSE, IT WOULD BE EXTRAORDINARY HELPFUL TO KNOW EXACTLY WHAT

11   STATEMENTS WE'RE TALKING ABOUT.

12           **MR. NOLAN:**  I CAN APPRECIATE THAT, YOUR HONOR, AND I

13   APOLOGIZE FOR NOT BEING ABLE TO GIVE YOU THE DATE AND THE

14   SPECIFIC COMMENTS.  I CAN ONLY TALK ABOUT GENERALITIES.  BUT,

15   FRANKLY, THE POSITION THAT WE UNDERSTOOD --

16           **THE COURT:**  WHEN ARE WE GOING TO MOVE ON FROM THE

17   POINT WHERE WE CAN ONLY SPEAK ABOUT GENERALITIES?

18           **MR. NOLAN:**  YOUR HONOR, I THINK PART OF IT IS GOING

19   TO BE TRYING TO RESOLVE THE ISSUE OF THE INTERROGATORY RESPONSE

20   AND OUR COMING FORWARD AND GIVING EXAMPLES AS TO WHAT EVIDENCE

21   WE WILL BE RELYING ON, YOUR HONOR.

22           **THE COURT:**  BUT I TRUST YOU HAD THE EVIDENCE THAT

23   YOU'RE GOING TO RELY ON BEFORE YOU MADE THE DEFENSE.  YOU DON'T

24   MAKE THE DEFENSE AND THEN COME UP WITH THE EVIDENCE YOU'RE

25   GOING TO RELY ON.

EXHIBIT _6_ PAGE _153_

DECEMBER 3. 2007                           BRYANT V MATTEL

1    **MR. NOLAN:**  OF COURSE, YOUR HONOR, AND I APOLOGIZE.

2   WE ARE IN THE CASE, WE'VE DONE AN AWFUL LOT OF WORK.  THE FACT

3   THAT I CAN'T GO FROM 'A' TO 'Z' ON SPECIFIC --

4    **THE COURT:**  I'M JUST ASKING FOR 'A,' COUNSEL; NOT 'A'

5   THROUGH 'Z.'

6    **MR. NOLAN:**  WELL, YOUR HONOR, I TALKED ABOUT THE

7   COMMENTS THAT WERE EMANATING FROM MATTEL IN THE MARKETPLACE

8   ABOUT MGA'S MISSTATEMENTS WITH RESPECT TO THE ORIGIN OF THE

9   BRATZ DOLL; FALSE STATEMENTS WITH RESPECT TO WHAT WE WERE DOING

10   IN CONNECTION WITH STEALING MATERIALS FROM MATTEL, TRADE

11   SECRETS; STATEMENTS WITH RESPECT TO -- OVER STATEMENTS BY MGA

12   WITH RESPECT TO THE SUCCESS IN THE MARKETPLACE; ALL OF WHICH

13   WAS DESIGNED TO CALL INTO QUESTION THE INTEGRITY OF THE BRATZ

14   MARKETING SCHEME.  NOT IN AN EFFORT, FRANKLY, TO COMPETE FAIRLY

15   WITH MGA, BUT, FRANKLY, TO PUT INTO THE MARKETPLACE, AND WITH

16   OTHER VENDORS, THE SUGGESTION THAT MGA WAS NOT PLAYING STRAIGHT

17   AND THAT VENDORS SHOULD NOT BE DEALING WITH MGA.

18    WE CAN LAY ALL OF THAT OUT.  IT WILL BE IN THE FORM

19   OF DISCOVERY.  WE HAVE PROVIDED A SUBSTANTIAL AMOUNT OF

20   INFORMATION ALREADY TO THEM IN TERMS OF RESPONDING TO

21   INTERROGATORIES, PRODUCTION OF DOCUMENTS, RFA'S.

22    **THE COURT:**  YOU COULD HAVE DONE THIS IN THE STATEMENT

23   OF GENUINE ISSUES IN RESPONSE TO THE MOTION FOR SUMMARY

24   JUDGMENT.  I LOOKED FOR THAT IN VAIN.  AN ALTERNATIVE MOTION

25   WAS BROUGHT SEEKING SUMMARY JUDGMENT ON THESE DEFENSES, AND I

EXHIBIT _6_ PAGE _154_

DECEMBER 3. 2007                    BRYANT V MATTEL

1    COULDN'T FIND ANYWHERE YOUR STATEMENT OF GENUINE ISSUES.  I

2    TRUST YOU DISPUTE THESE FACTS, AND I GET GENERALIZED STATEMENTS

3    THROUGHOUT YOUR OPPOSITION DISPUTING THOSE FACTS.  BUT I WAS

4    HOPING, AT LEAST AT THIS HEARING, THAT I WOULD GET SOMETHING A

5    LITTLE BIT MORE CONCRETE, COUNSEL.

6          **MR. NOLAN:**  YOUR HONOR, TO BE HONEST WITH YOU, I

7    DIDN'T -- ALTHOUGH IT WAS FRAMED IN THE ALTERNATIVE FOR A

8    SUMMARY JUDGMENT, I FRANKLY DID NOT SEE THE MOVING PARTIES

9    COMPLY WITH THE REQUIREMENTS FOR SETTING THIS UP AS A SUMMARY

10   JUDGMENT MOTION.

11         WE THOUGHT THAT THIS WAS NOT AN ATTACK ON THE

12   PLEADINGS AS SUCH.  WE THOUGHT IT WAS AN ODD STATE TO BE

13   RAISING IT AT THIS POINT IN TIME.  I THOUGHT IT WOULD HAVE BEEN

14   IN THE FORM OF BOTH SIDES COMING TOGETHER, SUBMITTING

15   CONTENTIONS OF FACTS.  BUT THEY DIDN'T DO IT, EITHER, IN THE

16   MOVING PAPERS, YOUR HONOR.

17         MY POINT ONLY IS THAT WE WILL BE PREPARED -- AND WE

18   CAN, YOUR HONOR, IN VERY SHORT ORDER -- TO ARTICULATE THOSE

19   WITH PRECISION, IF THE COURT REQUESTS THAT.  RIGHT NOW, THIS

20   MORNING, I CONFESS THAT I DON'T HAVE -- I MEAN, I HAVE A LOT OF

21   INFORMATION WITH ME, BUT I DON'T HAVE THE EXACT DOCUMENTS THAT

22   WE WOULD RELATE IT TO.

23         THERE ARE ALSO ISSUES, YOUR HONOR, WITH RESPECT TO

24   THE DISCOVERY THAT SHOULD BE ALLOWED INTO SOME OF THESE

25   ALLEGATIONS THAT WE'VE MADE.

EXHIBIT _6_ PAGE _155_

1          **THE COURT:**  ARE YOU EQUALLY IN THE DARK ON THE NATURE

2    OF THE FACTUAL ALLEGATIONS BEHIND THOSE AFFIRMATIVE DEFENSES?

3          **MR. WERDEGAR:**  YOUR HONOR, WE TALKED ABOUT THE

4    PLEADINGS IN THE CONTEXT OF A MOTION TO STRIKE.  THEIR

5    AFFIRMATIVE DEFENSES, IN THEIR SECOND AMENDED ANSWER AND

6    COUNTERCLAIM, ARE PLED IN THE MOST BOILERPLATE FASHION

7    POSSIBLE.

8          **THE COURT:**  AND I TAKE IT YOU HAVE SQUANDERED YOUR

9    WEALTH OF INTERROGATORIES WITHOUT ASKING ABOUT THOSE FACTUAL

10   ALLEGATIONS.

11         **MR. WERDEGAR:**  WELL, YOUR HONOR, THERE'S A LIMIT ON

12   THE INTERROGATORIES, AND THERE SHOULD BE, AND THERE'S CHOICES

13   THAT NEED TO BE MADE.  WE COULD USE SOME OF OUR REMAINING ONES

14   TO SEARCH THERE, BUT WE WOULD BE FORCED TO THEN NOT TAKE

15   DISCOVERY IN ANOTHER AREA THAT IS ALSO RELEVANT.  WE'VE TRIED

16   TO MAKE THOSE CHOICES.  BUT I THINK THAT IF MATTEL IS NOT GOING

17   TO BE COMPELLED TO MAKE THOSE KINDS OF CHOICES, THAT SHOULD BE

18   MUTUAL.

19         **THE COURT:**  IF NOTHING ELSE, I CERTAINLY WANT TO BE

20   FAIR.

21         THE RATIONALE -- I SHOULDN'T NEED ANOTHER MOTION, BUT

22   THE RATIONALE THAT I APPLIED TO MATTEL IS NOT UNIQUE TO MATTEL,

23   AS IT IS TO ANY OTHER PARTY.  I THINK BOTH SIDES SHOULD BE ABLE

24   TO HAVE THE FACTUAL ALLEGATIONS UPON WHICH THESE -- IF YOU'RE

25   GOING TO MOVE FORWARD ON AN AFFIRMATIVE DEFENSE AND YOU WANT

EXHIBIT 6 PAGE 156

1  THE COURT TO CONSIDER THAT AND YOU WANT TO PRESENT THAT TO THE

2  JURY TRIAL, YOU BETTER MAKE CLEAR THE FACTUAL ALLEGATIONS THAT

3  IT'S BASED ON.  I'M CERTAINLY NOT SAYING ANYTHING REVOLUTIONARY

4  HERE.

5           MR. WERDEGAR:  ONE LAST POINT, YOUR HONOR, WHICH I

6  HOPE WILL FORESTALL, PERHAPS, A MOTION TO COMPEL RELATED TO THE

7  SUPPLEMENTAL INTERROGATORY DOWN THE ROAD, IF IT IS GRANTED.

8           THE WAY THEIR REQUESTED INTERROGATORY IS DRAFTED,

9  THEY'RE ASKING FOR ALL FACTS SUPPORTING EACH AFFIRMATIVE

10 DEFENSE.  AND IN OUR PLEADINGS, WE CITE A NUMBER OF CASES THAT

11 HAVE POINTED OUT THAT ANY TIME YOU REQUEST, QUOTE, UNQUOTE,

12 "ALL FACTS," THAT REALLY IS A PROBLEMATIC SORT OF REQUEST.  AND

13 A NUMBER OF DISTRICT COURTS -- AND WE CITE THREE IN OUR

14 PLEADINGS -- HAVE SAID THAT HOW THAT SHOULD PROPERLY BE

15 INTERPRETED IS LAYING FORTH YOUR PRINCIPAL FACTS, LAYING FORTH

16 THE PRINCIPAL BASIS FOR A DEFENSE.

17          THE COURT:  LET'S LAY FORTH SOME FACTS, COUNSEL.

18 LET'S START WITH THAT.  HOW'S THAT?

19          MR. WERDEGAR:  ALL RIGHT, YOUR HONOR.

20          THE COURT:  ALL RIGHT.

21          MR. WERDEGAR:  THANK YOU VERY MUCH.

22          THE COURT:  THANK YOU.

23          MR. NOLAN:  YOUR HONOR, THE PROPOSAL THAT WE CAN

24 MAYBE ENTER INTO IS THAT WE HAVE A MEET-AND-CONFER MAYBE BY THE

25 END OF THIS WEEK ON THE AFFIRMATIVE DEFENSE ISSUE AND THE

EXHIBIT _6_ PAGE _157_

DECEMBER 3, 2007                              BRYANT V MATTEL

1   HEARING, PARTICULARLY IN THE CONTEXT OF PHASE ONE, WHICH IS A

2   SLIGHTLY DIFFERENT STANDARD WITH RESPECT TO, AT LEAST, THE

3   UNCLEAN HANDS DEFENSE IN PHASE ONE.  BUT I'LL TAKE A LOOK AT

4   THAT, AND I'LL ISSUE SOMETHING IN WRITING SOON.

5          I DON'T WANT TO HOLD UP THE DISCOVERY PROCESS AT ALL,

6   SO LET'S GO AHEAD AND GET THIS INTERROGATORY SERVED.  LET'S

7   MEET AND CONFER ABOUT FURTHER INTERROGATORIES THAT MGA MIGHT

8   NEED, THAT CARTER BRYANT MIGHT NEED, WITH RESPECT TO THESE

9   AFFIRMATIVE DEFENSES, AND LET'S START SHOWING WHAT WE HAVE AND

10  MOVE THIS THING ALONG.  AS MR. NOLAN HAS REMINDED US ALL, WE

11  HAVE 57 DAYS UNTIL DISCOVERY ENDS.

12          THANK YOU, COUNSEL.

13

14

15

16

17

18                      CERTIFICATE

19

20  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
21  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
    ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.

23

24  _____          _12-10-07_
    THERESA A. LANZA, CSR, RPR                    DATE
25  FEDERAL OFFICIAL COURT REPORTER

EXHIBIT _6_ PAGE _158_

DECEMBER 3, 2007                          BRYANT V MATTEL