## CONFORMED COPY

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2007 SEP 26  PM 2:28

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

FILED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>      Plaintiff,<br><br>    v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>      Defendant.<br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO THIRD NOTICE OF DEPOSITION UNDER RULE 30(b)(6); DENYING REQUEST FOR SANCTIONS** |

### I. INTRODUCTION

On July 13, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Compel MGA to Produce Witnesses Pursuant to Mattel's Third Notice of Deposition Under Rule 30(b)(6) and for Sanctions." Specifically, Mattel seeks an order compelling MGA Entertainment, Inc. ("MGA") to produce witnesses on Topics 1-3, 6-8, 9 and 11-13 of Mattel's Third Rule 30(b)(6) Notice. On

EXHIBIT 7 PAGE 159

1   July 31, 2007, MGA submitted an opposition brief.  On August 6, 2007, Mattel submitted a reply

2   brief.  The matter was heard on September 24, 2007.  Having considered the motion papers and

3   the comments of counsel, Mattel's motion is granted in part and denied in part, and the request for

4   sanctions is denied.

5                                   II. BACKGROUND

6          Mattel first served a Rule 30(b)(6) Notice of Deposition of MGA in February of 2005,

7   which specified eight topics for deposition.  Mattel served a Second Notice of Deposition of

8   MGA in February of 2007, which specified forty-six topics for deposition.  On June 5, 2007,

9   Mattel served a Third Notice of Deposition of MGA (the "Third Notice"), which is the subject of

10  the present motion to compel.  The Third Notice specifies sixteen topics for deposition.  On June

11  29, 2007, MGA served objections to the Third Notice, and on July 5, 2007, the parties met and

12  conferred.  The parties were not able to resolve their disputes regarding four subject matters: hard

13  drives and other storage devices (Topics 1-3); prior inconsistent statements to the press (Topics 6-

14  8); "test projects" for MGA (Topic 9); and payments MGA made to Isaac Larian, Farhad Larian

15  and Morad Zarabi (Topic 11-13).  The topics at issue are set forth below.

16                          Hard Drives and Other Storage Devices

17         1.     The IDENTITY, current or last known location, and disposition of

18         each STORAGE DEVICE that each of the following PERSONS has used to

19         create, generate, prepare, draft, send and/or receive any DOCUMENT or

20         DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or

21         ANGEL at any time since January 1, 1999, including without limitation the date

22         of acquisition and the date of disposition of each STORAGE DEVICE:  Isaac

23         Larian, Farhad Larian, Paula Garcia, BRYANT, Kami Gillmour, Veronica

24         Marlow, Mercedeh Ward, Margaret Hatch-Leahy, Jennifer Maurus, Judy Rich,

25         Ninette Pembleton, Kerrie Brode, Victoria O'Connor, Aileen Storer, Charles

26         O'Connor, Helene Bartels, Colleen O'Higgins, Vivian Matt, Maureen Mullen,

27         Rachel Harris, Barbara Malcolm, David Dees, Ben Ton, Dave Malacrida.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _7_ PAGE _160_

2

2.      The IDENTITY, current or last known location, and disposition of each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of this Notice, including without limitation the date of creation and the date of disposition of each such backup or copy.

3.      YOUR search for and production of DOCUMENTS and DIGITAL INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this Notice.

### Prior Inconsistent Statements to the Press

6.      YOUR statements to Christopher Palmeri in connection with the Business Week article entitled "To Really Be A Player, Mattel Needs Hotter Toys," published on or about July 28, 2003, including without limitation in connection with the statement that Isaac Larian "got the idea for Bratz after seeing his own kids run around in navel-bearing tops and hip-huggers."

7.      YOUR statements to Denise I. O'Neal in connection with the Chicago Sun-Times article entitled "Bratz Packers Are What's Cool in Doll World," published on or about March 5, 2004, including without limitation in connection with the statements that MGA's "creative team decided the name should be catchy and not have more than six letters.  Keeping with today's trend of making names more 'cool' by changing the spelling, MGA executives decided to replace the 's' with a 'z'"

8.      YOUR statements to Jeff Weiss in connection with the San Fernando Valley Business Journal article entitled "Immigrant's Creative Company Shakes Up Toy Industry," published on or about March 29, 2004, including without limitation in connection with the statement that "[i]t was Jason's idea for Bratz."

### "Test Projects" for MGA

9.      The IDENTITY of each PERSON who YOU had perform, or who

1  YOU requested, asked or solicited to perform, any "test project" in advance of or

2  in consideration of employment by YOU since January 1, 1995, including without

3  limitation the IDENTITY of each such PERSON who was a MATTEL employee

4  at the time.

5  <u>Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi</u>

6  11.  Payments of money or any other item of value that YOU have

7  made to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac

8  Larian since January 1, 1999, including without limitation (a) the amounts of such

9  payment and the equivalent dollar value of each of item of value, (b) the dates of

10  such payment, (c) the IDENTITY of each recipient of such payment, (d) the

11  IDENTITY of each bank or financial institution account to which such payment

12  was made and (e) the reasons for each such payment.

13  12.  Payments of money or any other item of value that YOU have

14  made to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad

15  Larian since January 1, 1999, including without limitation (a) the amounts of each

16  such payment and the equivalent dollar value of each of item of value, (b) the

17  timing of each such payment, (c) the IDENTITY of each recipient of each such

18  payment, (d) the IDENTITY of each bank or financial institution account to

19  which such payment was made and (e) the reasons for each such payment.

20  13.  Payments of money or any other item of value that YOU have

21  made to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad

22  Zarabi since January 1, 1999, including without limitation (a) the amounts of each

23  such payment and the equivalent dollar value of each item of value, (b) the timing

24  of each such payment, (c) the IDENTITY of each recipient of each such payment,

25  (d) the IDENTITY of each bank or financial institution account to which such

26  payment was made and (e) the reasons for each such payment.

27  Zeller Decl., Ex. 23.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _7_ PAGE _162_

4

1    Mattel seeks an order compelling MGA to produce witnesses to testify on Topics 1-3, 6-8,
2    9 and 11-13, and overruling all of MGA's objections and limitations.  Mattel contends that the
3    testimony it seeks is relevant, not unduly burdensome, and not otherwise objectionable as
4    cumulative or duplicative of any other deposition testimony already given in the case.
5    MGA contends that Mattel's Third Notice is invalid because Mattel failed to obtain leave
6    of court to take MGA's deposition after having previously deposed several 30(b)(6) designees.
7    MGA contends that Rule 30(a)(2)(B), Fed.R.Civ.P., requires Mattel to establish good cause for
8    examining MGA any further.  MGA further contends that Mattel has not established the requisite
9    good cause, and instead improperly has attempted to shift the burden of proof to MGA to justify
10   its objections to the Third Notice.  Lastly, MGA contends that Mattel has had many opportunities
11   to obtain, and in many cases has already obtained, the information it now moves to compel.

12                                   III. STANDARDS

13   Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain
14   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any
15   party." Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the
16   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.
17   Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., the court shall limit the frequency or extent of
18   use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably
19   cumulative or duplicative, or is obtainable from some other source that is more convenient, less
20   burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by
21   discovery in the action to obtain the information sought; or (iii) the burden or expense of the
22   proposed discovery outweighs its likely benefit, taking into account the needs of the case, the
23   amount in controversy, the parties' resources, the importance of the issues at stake in the
24   litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.
25   26(b)(2)(C).
26   Pursuant to Rule 30, Fed.R.Civ.P., a party may take the testimony of any person, including
27   a party, by deposition upon oral examination without leave of court, except as provided in Rule
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __7__ PAGE _163_ 5

1    30(a)(2), Fed.R.Civ.P.  In particular, Rule 30(a)(2) specifies that a party must obtain leave of

2    court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2),

3    Fed.R.Civ.P., if "the person to be examined already has been deposed in the case."  Fed.R.Civ.P.

4    30(a)(2)(B).

5                                   IV. DISCUSSION

6            As a threshold matter, the parties dispute whether Rule 30(a)(2)(B), Fed.R.Civ.P., applies

7    to depositions taken pursuant Rule 30(b)(6), Fed.R.Civ.P.  There is caselaw to support each

8    party's position.  See e.g. Ameristar Jet Starter, Inc. v. Signal Composites, Inc., 244 F.3d 189 (1st

9    Cir. 2001) (second Rule 30(b)(6) subpoena issued without leave of court was invalid); In re

10   Sulfuric Acid Antitrust Litig., 2005 WL 1994105 (D. Ill. Aug. 19, 2005) (holding that second

11   Rule 30(b)(6) subpoena issued without leave of court was invalid); Innomed Labs, LLC v. Alza

12   Corp., 211 F.R.D. 237 (S.D. N.Y. 2002) (quashing overbroad 30(b)(6) subpoena issued without

13   leave of court); Quality Aero Tech., Inc. v. Telemetrie Elektronik, 212 F.R.D. 313, 319 (E.D.

14   N.C. 2002) (holding that Rule 30(a)(2)(B) does not apply to Rule 30(b)(6) depositions).  For

15   purposes of the present motion, however, it is unnecessary to resolve this conflict in the law

16   because the debate is purely academic and inconsequential.  As Mattel has requested, Mattel's

17   motion is treated herein as a motion for leave to serve an additional 30(b)(6) notice with

18   additional topics.  In evaluating the appropriateness of the topics, it is Mattel's burden to

19   demonstrate that there is good cause for such discovery (see e.g. Boston Scientific Corp. v. Cordis

20   Corp., 2004 WL 1945643 (N.D.Cal. 2004)), applying the principles stated in Rule 26(b)(2),

21   Fed.R.Civ.P.

22                      Hard Drives and Other Storage Devices (Topics 1-3)

23           Topic 1 seeks information regarding the location and disposition of computer hard drives

24   or other storage devices used by specified MGA employees or contractors that contain or

25   contained documents related to the Bratz or Angel projects.  Topic 2 seeks the identification and

26   last known location of any backup, copy or image of the hard drives or storage devices identified

27   in Topic 1. Topic 3 seeks information regarding MGA's search for and production of documents

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___7___ PAGE _164_

1   and digital information from the hard drives and storage devices referenced in Topic 1.

2       MGA objected to Topics 1-3 as overbroad, unduly burdensome, vague, ambiguous,

3   irrelevant, and not reasonably calculated to lead to admissible evidence.  MGA also objected to

4   Topics 1-3 to the extent that the information sought is obtainable through other more convenient,

5   less burdensome and less expensive means.  Lastly, MGA objected to Topics 1-3 as unreasonably

6   cumulative and duplicative of information already provided by Ken Lockhart, Vice President and

7   Chief Information Officer for MGA.

8       Topics 1-3 unquestionably seek information that is relevant within the meaning of Rule

9   26(b)(1), Fed.R.Civ.P., which specifically authorizes discovery regarding any matter, not

10  privileged, that is relevant to the claim or defense of any party, including "the existence,

11  description, nature, custody, condition, and location of any books, documents or other things."  A

12  portion of the discovery sought, however, is unreasonably cumulative and duplicative of

13  information already provided by Mr. Lockhart.  MGA designated Mr. Lockhart as a 30(b)(6)

14  witness to testify about MGA's retention, destruction and data back-up policies, MGA's digital

15  information systems and application software, employees' electronic messaging systems, and

16  MGA's policies regarding the use of transportable media.  Mr. Lockhart testified about the

17  location and disposition of MGA employees' hard drives and storage devices in general.

18      Mattel contends that Topics 1-3 differ from the topics in the Second Notice and the

19  testimony previously given by Mr. Lockhart in that Mattel now seeks information about the

20  locations and dispositions of hard drives used by 24 named individuals.  Mattel contends that the

21  testimony it seeks will enable it to assess MGA's production, including whether any documents

22  requested or compelled by the Court were destroyed, not collected or otherwise made unavailable

23  to Mattel.  Mattel's Reply at p.7.

24      Although Mattel's stated objective for seeking testimony regarding Topics 1-3 may be

25  legitimate, the burden and expense of a Rule 30(b)(6) deposition is not justified under the

26  circumstances of this case.  Mattel has accused MGA of obstructing discovery, and in particular

27  withholding Bryant's computer.  There is no evidence, however, to suggest that MGA has refused

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT __7__ PAGE _165_

1  or failed to search for and produce responsive documents located on the hard drives of the other

2  individuals named in Topic 1. It is burdensome and expensive to prepare a witness to testify

3  about the locations and dispositions of hard drives used for 24 different individuals. The likely

4  benefit of undergoing such a burden and expense is doubtful. Furthermore, there are other less

5  burdensome and less expensive means of assessing whether MGA has complied with its

6  discovery obligations, including for example, document requests and interrogatories. Therefore,

7  Mattel's motion is denied as to Topics 1-3.

8  <u>Prior Inconsistent Statements to the Press (Topics 6-8)</u>

9  Topics 6-8 seek testimony regarding three public statements made by Isaac Larian

10  regarding who conceived of Bratz. MGA objected to Topics 6-8 as irrelevant and not reasonably

11  calculated to lead to admissible evidence. MGA also objected to Topics 6-8 to the extent that the

12  information sought is obtainable through other more convenient, less burdensome and less

13  expensive means. Further, MGA objected to Topics 6-8 as unreasonably cumulative and

14  duplicative of information already provided by MGA and/or Carter Bryant. MGA also objected

15  to a deposition on these Topics "to the extent that the statements referenced above were not made

16  by MGA as a corporate actor and thus they are not the appropriate subject of a 30(b)(6)

17  designation." Zeller Decl., Ex. 24.

18  Mattel contends that Topics 6-8 are the proper subject of a Rule 30(b)(6) deposition

19  because each of the statements identified therein was made by MGA's Chief Executive Officer,

20  Isaac Larian. Mattel acknowledges that it already deposed Isaac Larian regarding one of the

21  articles identified in Topics 6-8, but contends that it is not attempting to re-depose him. Rather,

22  Mattel contends that it is entitled to elicit testimony that will bind the corporation so that it will

23  not be "sandbagged" at trial. Mattel's Reply at p.6.

24  MGA accuses Mattel of misusing the 30(b)(6) procedure when Mattel knows that Isaac

25  Larian is the person who should be, and already has been, deposed about the statements identified

26  in Topics 6-8. MGA also contends that Mattel opted to limit its examination of Isaac Larian to

27  one article, and that Mattel's failure to fully question Isaac Larian in no way justifies deposing

28

1   MGA now.  MGA also contends that Mattel could avail itself of other discovery methods, such as

2   interrogatories or requests for admission, to obtain further information about the publications

3   identified in Topics 6-8.

4          Topics 6-8 seek information relevant to the central issue in the case:  who conceived of

5   Bratz.  Mattel's use of the 30(b)(6) procedure is justified in order to obtain testimony that will

6   bind the corporation.  The testimony Mattel now seeks is not unreasonably cumulative or

7   duplicative of testimony it has already sought from Isaac Larian because Mattel previously

8   questioned Isaac Larian about only one of the articles identified in Topics 6-8.  Further, the likely

9   benefit to Mattel of testimony from Isaac Larian (or another corporate designee) regarding Topics

10  6-8 outweighs the burden and expense to MGA, given the importance of the testimony Mattel

11  seeks.  Mattel's motion is granted as to Topics 6-8.

12                          "Test Projects" for MGA (Topic 9)

13         In Topic 9, Mattel seeks the identity of each person MGA had perform or who MGA

14  requested, asked or solicited to perform, any "test project" in advance of or in consideration of

15  employment by MGA since January 1, 1995.  MGA objected to Topic 9 as irrelevant, not

16  reasonably calculated to lead to the discovery of admissible evidence, overbroad, unduly

17  burdensome, and unreasonably cumulative and duplicative.  MGA also objected to Topic 9 as

18  vague and ambiguous, particularly with respect to the term "test project."  MGA also objected to

19  Topic 9 to the extent that the information sought is obtainable through other, more convenient,

20  less burdensome and less expensive means.  MGA also objected to Topic 9 as seeking

21  confidential, proprietary, and commercially sensitive information with no relevance to the

22  litigation.

23         When Carter Bryant was deposed by Mattel, he testified that he "did sort of a tryout kind

24  of a project for" MGA.  Zeller Decl., Ex. 29 at 9:19-20.  He also referred to this "tryout" project

25  as a "test assignment."  Id. at 515-516.  In light of Bryant's testimony, Mattel's stated purpose of

26  Topic 9 is to "obtain information that will refute MGA and Bryant's assertions that Bryant's

27  working for MGA while employed by Mattel was no different than a supposedly standard

28

1  industry practice of having candidates for creative positions make artwork as part of the job

2  interview." Mattel's Motion at p.22.

3       MGA acknowledges that Mattel provided a definition for the phrase "test assignment" in

4  its motion papers. MGA's Opposition at p.10. MGA nevertheless contends that Topic 9 remains

5  objectionable as overbroad, reasoning that it would require MGA to provide information "with

6  regard to how it proceeded with hiring virtually every single employee hired since 1995."

7  MGA's Opposition at p.9. MGA also contends that it would be unduly burdensome to require

8  MGA to have a designee review and potentially memorize information about every single person

9  who has applied for a job at MGA since 1995, particularly when Bryant only began working for

10  MGA in 2000. MGA contends that a contention interrogatory is more appropriate than a 30(b)(6)

11  deposition to obtain the information called for in Topic 9.

12       Topic 9 seeks information relevant to one of MGA and Bryant's defenses, namely their

13  claim that Bryant's work for MGA while employed by Mattel was no different than a standard

14  industry practice of having candidates for creative positions make artwork as part of the job

15  interview. Topic 9, however, is objectionable because it is overbroad and burdensome. In

16  particular, Topic 9 is overbroad in terms of the specified time frame because Bryant did not begin

17  working at MGA until the year 2000. Topic 9 is also objectionable because the information

18  sought is more appropriately obtained through a contention interrogatory, which would be

19  significantly less burdensome and less expensive than a 30(b)(6) deposition. Therefore, Mattel's

20  motion is denied as to Topic 9. In lieu of taking a 30(b)(6) deposition on Topic 9, Mattel is

21  granted leave to serve a contention interrogatory regarding Topic 9 limited to the years 1998

22  through 2004.

23  <u>Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi (Topics 11-13)</u>

24       In Topics 11-13, Mattel seeks information regarding payments made by MGA to Isaac

25  Larian (Topic 11), Farhad Larian (Topic 12), and Morad Zarabi (Topic 13). MGA objected to

26  these Topics as irrelevant, not reasonably calculated to lead to the discovery of admissible

27  evidence, overbroad, unduly burdensome, and unreasonably cumulative and duplicative. MGA

28

10

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 7 PAGE 168

1   also objected to Topics 11-13 to the extent that the information sought is obtainable through

2   other, more convenient, less burdensome and less expensive means.  MGA also objected to

3   Topics 11-13 as seeking confidential, proprietary, and commercially sensitive information with no

4   relevance to the litigation.

5        Mattel explains that Morad Zarabi arbitrated a dispute between Isaac Larian and Farhad

6   Larian that involved the timing of the creation of Bratz.  More specifically, Farhad Larian claimed

7   that Isaac Larian concealed from him MGA's development with Carter Bryant of Bratz dolls and

8   alleged that Bryant began working with MGA during a time Bryant was employed by Mattel.

9   Mattel considers all three individuals involved in the arbitration as witnesses in this litigation, and

10   therefore seeks information that may establish their bias.  Mattel also emphasizes that Isaac

11   Larian is a party to the litigation, and that payments made by MGA to him are relevant to Mattel's

12   claim for punitive damages, and may be used as impeachment evidence.  Lastly, although Mattel

13   acknowledges that it deposed Isaac Larian regarding payments he received from MGA, Mattel

14   contends that it is entitled to testimony from MGA to corroborate or refute his testimony.

15        MGA contends that Topics 11-13 are not relevant to this lawsuit.  In particular, MGA

16   objects to Topics 12 and 13 as seeking "private financial records of persons who are neither

17   parties nor witnesses in this action, and whose only connection is knowing people involved in the

18   lawsuit."  MGA's Opposition at p. 13.  With regard to payments to Isaac Larian, MGA contends

19   that Mattel already had the opportunity to ask him about payments during his deposition.  MGA

20   also contends that Mattel is not entitled to conduct discovery regarding Isaac Larian's net worth at

21   this time.  Even if Mattel is entitled to conduct such discovery, MGA contends that payments

22   made to him would not establish his net worth because they represent only one of many sources

23   of income and do not account for his other assets and liabilities.

24        MGA's payments to Isaac Larian and Farhad Larian are relevant to the claims and

25   defenses in the case.  Payments to Isaac Larian and Farhad Larian may also show possible bias

26   and be used for impeachment purposes.  Moreover, MGA's payments to Isaac Larian may be

27   relevant to Mattel's claim for punitive damages.  Payments to Isaac Larian are a component of his

28

1   net worth, even if they represent one source of income. The burden of producing such information

2   does not outweigh its relevance, taking into consideration the circumstances of this case.

3   Furthermore, there is no stay on discovery pertaining to punitive damages.  Accordingly, Mattel's

4   motion is granted as to Topics 11 and 12.

5        In contrast, MGA's payments to Morad Zarabi are irrelevant.  His only connection to this

6   litigation appears to be with the arbitration proceedings.  Any potential relevance of MGA's

7   payments to Morad Zarabi is outweighed by the burden and the intrusion into his private financial

8   affairs.  Mattel's motion is denied as to Topic 13.

9                        <u>V. CONCLUSION</u>

10       For the reasons set forth above, it is hereby ordered as follows:

11       1.    Mattel's motion to compel is granted as to Topics 6-8, 11 and 12.

12       2.    Mattel's motion to compel is denied as to Topics 1-3, 9 and 13.  In lieu of taking a

13   deposition on Topic 9, Mattel is hereby granted leave to serve a contention interrogatory

14   regarding Topic 9 that is limited to the years 1998 through 2004.

15       3. Mattel's request for sanctions is denied.

16   Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

17   Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20   Dated: September _25_, 2007

21                            HON. EDWARD A. INFANTE (Ret.)

                                  Discovery Master

22

23

24

25

26

27

28

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 26, 2007, I served the attached ORDER GRANTING IN PART AND DENYI8NG IN PART MATTEL'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO THIRD NOTICE OF DEPOSITION UNDER RULE 30(b)(6); DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 26, 2007, at San Francisco, California.

_____
Sandra Chan

EXHIBIT ___7___ PAGE __171__

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
2 | (johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
5 | Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
6 | Facsimile:  (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

11 | CARTER BRYANT, an individual,

12 | Plaintiff,

13 | vs.

14 | MATTEL, INC., a Delaware

15 | corporation,

16 | Defendant.

17 |

18 | AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)
Consolidated with
Case Nos. CV 04-09059 & CV 05-2727

NOTICE OF MOTION AND MOTION OF MATTEL, INC.:

(1)    TO STRIKE AFFIRMATIVE DEFENSES (NOS. 2, 8, 9, 10, 11, 13, 14, 16, 18, 19 AND 20) OF MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT (HK) LIMITED, AND MGAE DE MEXICO S.R.L. DE C.V. UNDER FED. R. CIV. P. 12(F), OR IN THE ALTERNATIVE,

(2)    FOR PARTIAL SUMMARY JUDGMENT; AND

MEMORANDUM OF POINTS AND AUTHORITIES

[Statement Of Uncontroverted Facts And Conclusions Of Law; and Declarations of Jon D. Corey and B. Dylan Proctor Filed Concurrently]

Date:   November 19, 2007
Time:   10:00 a.m.
Place:   Courtroom 1

**Phase 1**
Discovery Cut-Off:    January 14, 2008
Pre-Trial Conference: April 7, 2008
Trial Date:              April 29, 2008

19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

07209/2247141.3

1

**Phase 2**
Discovery Cut-Off:      March 3, 2008
Pre-Trial Conference: June 2, 2008
Trial Date:                 July 1, 2008

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 8  PAGE 173

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that on November 19, 2007, at 10:00 a.m., or as soon

3  thereafter as the matter may be heard, in the courtroom of Honorable Stephen G.

4  Larson, located at 3470 Twelfth Street, Riverside, California, 92501, Mattel, Inc. will,

5  and hereby does, move the Court, pursuant to Federal Rule of Civil Procedure 12(f), for

6  an order striking MGA Entertainment, Inc.'s, MGA Entertainment (HK) Limited's, and

7  MGAE de Mexico S.R.L. de C.V.'s ("Defendants") Affirmative Defense Nos. 2, 8, 9,

8  10, 11, 13, 14, 16, 18, 19 and 20, or, in the alternative, for partial summary judgment

9  pursuant to Federal Rule of Civil Procedure 56, for judgment against Defendants and in

10  favor of Mattel on those Affirmative Defenses.

11      This Motion is made on the grounds that Affirmative Defense Nos. 2, 8, 9, 10,

12  11, 13, 14, 16, 18, 19 and 20 are insufficient as a matter of law.  Affirmative Defense

13  No. 2 for unclean hands fails because it is based on allegations that are not directly

14  related to the transactions alleged in Mattel's counterclaims.  Unclean hands is also not

15  a recognized defense against Mattel's RICO and copyright claims.  Affirmative Defense

16  Nos. 9, 10 and 13 -- for estoppel, acquiescence, and waiver -- fail because they are

17  based on the same allegations as MGA's laches defense and do not include allegations

18  sufficient to support estoppel, waiver or acquiescence.  Affirmative Defense Nos. 8, 11,

19  14, 16, 18, 19 and 20 each only consist of a single conclusory sentence and do not

20  provide Mattel with fair notice of the basis for each defense.

21      In the alternative, Mattel seeks partial summary judgment on the grounds that

22  Defendants have no evidence to support the identified affirmative defenses, and the

23  evidence adduced creates no disputed issue of material fact which would preclude entry

24  of partial summary judgment on those defenses.

25      This Motion is based on this Notice of Motion and Motion, the accompanying

26  Memorandum of Points and Authorities, the Declaration of B. Dylan Proctor filed

27  concurrently herewith, the Declaration of Jon D. Corey filed concurrently herewith, all

28  the other pleadings and other papers on file in this action, any matters of which this

07209/2247141.3

-2-

MATTEL'S MOTION TO STRIKE MGA'S AFFIRMATIVE DEFENSES

EXHIBIT _6_ PAGE _174_

1    Court may take judicial notice, and such further evidence and argument as may be
2    presented at or before the hearing on this matter.

3                    **Certification of Local Rule 7-3 Compliance**

4            Mattel originally met and conferred with counsel for Defendants regarding the
5    deficiencies in their answer on August 28, 2007, after which Defendants agreed to serve
6    and amended answer, which they did. As set forth in the accompanying Declaration of
7    B. Dylan Proctor, Mattel attempted to further meet and confer with counsel for the
8    Defendants regarding the deficiencies in their amended answer pursuant to <u>Local Rule</u>
9    7-3, but counsel for the Defendants did not respond to Mattel's requests to do so.

10

11   DATED: October 9, 2007            QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
12

13                                     By  _Jon D. Corey 1885_____
14                                         Jon D. Corey
                                           Attorneys for Plaintiff
15                                         Mattel, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2247141.3

-3-

MATTEL'S MOTION TO STRIKE MGA'S AFFIRMATIVE DEFENSES

EXHIBIT 8  PAGE 175

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

PRELIMINARY STATEMENT .......................................................................... 1

STATEMENT OF ALLEGATIONS ................................................................... 1

ARGUMENT ........................................................................................................ 5

I.    THE COURT CAN, AND SHOULD, STRIKE LEGALLY INSUFFICIENT DEFENSES ...................................................................... 5

II.   THE MGA DEFENDANTS' UNCLEAN HANDS DEFENSE IS NOT LEGALLY SUFFICIENT .................................................................... 6

   A.   The Unclean Hands Defense Is Not Transactionally Related to Mattel's Counterclaims .................................................................... 6

   B.   Allegations Regarding Mattel's Purported Efforts to Disparage MGA Fail For The Additional Reason That The Alleged Conduct Is Protected .......................................................................... 10

   C.   Mattel's Investigation Related To This Case Is Not Unclean Hands, But Rather Required By The Federal Rules ........................... 11

   D.   Allegations Regarding Mattel's Alleged Conduct Concerning Non-Parties Is Not A Valid Basis For An Unclean Hands Defense ............................................................................................... 12

   E.   Unclean Hands Is Not a Valid Defense to Mattel's RICO Claims ....... 13

   F.   MGA Does Not Allege a Valid Unclean Hands Defense to Mattel's Copyright Infringement Counterclaim .................................. 14

III.  MGA'S ESTOPPEL, WAIVER, AND ACQUIESCENCE DEFENSES ARE INSUFFICIENT AS A MATTER OF LAW ............................................ 15

   A.   MGA's Estoppel Defense Is Insufficient As A Matter Of Law ........... 16

   B.   MGA's Waiver Defense Is Insufficient As A Matter Of Law .............. 17

   C.   MGA's Acquiescence Defense Is Insufficient As A Matter Of Law ..................................................................................................... 18

IV.   SEVERAL OF MGA'S AFFIRMATIVE DEFENSES DO NOT PROVIDE FAIR NOTICE ................................................................................. 19

   A.   Fair Notice Requires More Than A Conclusory Averment Of The Affirmative Defense ..................................................................... 19

1    B.    Several of MGA's Affirmative Defenses Do Not Give Mattel
           Fair Notice.................................................................. 20
2
   V.    MATTEL WILL SUFFER PREJUDICE IF MGA'S AFFIRMATIVE
3        DEFENSES ARE NOT STRICKEN ........................................... 22
4        A.    Mattel Need Not Show Prejudice ...................................... 22
5        B.    Mattel Will Be Prejudiced If The Defenses Are Not Stricken ............ 23
6   VI.   IN THE ALTERNATIVE,  THE COURT SHOULD GRANT
          PARTIAL SUMMARY JUDGMENT ON MGA'S AFFIRMATIVE
7         DEFENSES ................................................................. 23
8   CONCLUSION.................................................................. 25

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 8 PAGE 177

1

## **TABLE OF AUTHORITIES**

2
**Page**

3
### **Cases**

4
In re 2TheMart.com. Inc. Securities Litig.,
5   114 F. Supp. 2d 955 (C.D. Cal. 2000) ......................................................... 6

6   A&M Records, Inc. v. Napster, Inc.,
7       239 F.3d 1004 (9th Cir. 2001) ............................................................... 17

Applied Elastometrics, Inc. v. Z-Man Fishing Products, Inc.,
8       2007 WL. 2814646 (N.D. Cal. 2007) .................................................... 24

9   Arthur v. Davis,
10      126 Cal. App. 3d 684, 178 Cal. Rptr. 920 (1981) ............................... 6

Bianchi v. State Farm Fire & Casualty Co.,
11      120 F. Supp. 2d 837 (C.D. Cal. 2000) ................................................... 5

12  Bieter Co. v. Blomquist,
13      848 F. Supp. 1446 (D. Minn. 1994) ..................................................... 13

California Scents v. Surco Products, Inc.,
14      406 F.3d 1102 ...................................................................................... 10

15  California v. United States,
16      512 F. Supp. 36 (N.D. Cal. 1981) ........................................................ 22

Castaic Lake Water Agency v. Whittaker Corp.,
17      272 F. Supp. 2d 1053 (C.D. Cal. 2003) ............................................... 25

18  Celotex Corp. v. Catrett,
19      477 U.S. 317 (1986) ....................................................................... 24, 25

D.S. America (East), Inc. v. Chromagrafx Imaging Systems, Inc.,
20      873 F. Supp. 786 (E.D.N.Y. 1995) ...................................................... 20

21  Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.,
22      890 F.2d 165 (9th Cir. 1989) .................................................................. 6

F.T.C. v. Medicor LLC,
23      2001 WL. 765628 (C.D. Cal. 2001) ............................................... 17, 18

24  Fantasy, Inc. v. Fogerty,
25      984 F.2d 1524 (9th Cir. 1993) ...................................................... 5, 6, 23

Federal Deposit Ins. Corp. v. Crosby,
26      774 F. Supp. 584 (W.D. Wash. 1991) .................................................... 5

27  Fladeboe v. American Isuzu Motors, Inc.,
        150 Cal. App. 4th 42, 58 Cal. Rptr. 3d 225 (2007) ............................. 11
28

MATTEL'S MOTION TO STRIKE MGA'S AFFIRMATIVE DEFENSES

EXHIBIT 8 PAGE 178

Freezor v. Wal-Mart Stores, Inc.,
    2006 WL 220152 (S.D. Cal. 2006) .................................................... 5

Ganley v. County of San Mateo,
    2007 WL 902551 (N.D. Cal. 2007) ..................................................22

Goehring v. Chapman Univ.,
    121 Cal. App. 4th 353, 17 Cal. Rptr. 3d 39 (2004) ................... 17, 18

Greenawalt v. Rogers,
    151 Cal. 630, 91 P. 526 (1907) ........................................................19

Heckler v. Community Health Servs.,
    467 U.S. 51 (1984) ...........................................................................16

Heller Financial, Inc. v. Midwhey Powder Co., Inc.,
    883 F.2d 1286 (7th Cir. 1989) ................................................... 19, 21

ITT Telecom Products Corp. v. Dooley,
    214 Cal. App. 3d 307, 262 Cal. Rptr. 2d 773 (1989) ......................11

Ivanhoe Fin., Inc. v. Highland Banc Corp.,
    2004 WL 2091997 (N.D. Ill. 2004) ..................................................21

Kaiser Aluminum, Etc. v. Avondale Shipyards, Inc.,
    677 F.2d 1045 (5th Cir. 1982) ........................................................... 5

Kendall-Jackson Winery, Ltd. v. Superior Court,
    76 Cal. App. 4th 970, 90 Cal. Rptr. 2d 743 (2000) .................... 6, 10

Lobato v. Ford,
    2007 WL 2593485 (D. Colo. 2007) ..................................................25

Los Angeles News Service v. Tullo,
    973 F.2d 791 (9th Cir. 1992) ............................................................14

Magnesystems, Inc. v. Nikken, Inc.,
    933 F. Supp. 944 (C.D. Cal. 1996) ................................................ 7, 8

Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A.,
    2005 WL 975773 (S.D. Fla. 2005) ...................................................21

Mesnick v. Caton,
    183 Cal. App. 3d 1248, 228 Cal. Rptr. 779 (1986) ................... 12, 13

In re Napster, Inc. Copyright Litig.,
    191 F. Supp. 2d 1087 (N.D. Cal. 2002) ...........................................14

In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig.,
    636 F. Supp. 1138 (C.D. Cal. 1986) .................................................13

Orth-O-Vision, Inc. v. Home Box Office,
    474 F. Supp. 672 (S.D.N.Y. 1979) ...................................................14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MATTEL'S MOTION TO STRIKE MGA'S AFFIRMATIVE DEFENSES

EXHIBIT 8 PAGE 179

Perma Life Mufflers, Inc. v. Int'l Parts Corp.,
   392 U.S. 134 (1968) ................................................................. 13

Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,
   324 U.S. 806 (1945) ................................................................. 7

Qarbon.com Inc. v. eHelp Corp.,
   315 F. Supp. 2d 1046 (N.D. Cal. 2004) ................................... 19, 20

Renalds v. S.R.G. Restaurant Group,
   119 F. Supp. 2d 800 (N.D. Ill. 2000) ....................................... 20

Rhinehart v. Stauffer,
   638 F.2d 1169 (9th Cir. 1979) .................................................. 12

Ross v. CCS Intern. Ltd.,
   2000 WL. 1804103 (S.D.N.Y. 2000) ................................ 17, 18, 21

S.E.C. v. Brincat,
   2001 WL. 1662099 (N.D. Ill. 2001) .......................................... 21

Scott v. Federal Life Ins. Co.,
   200 Cal. App. 2d 384, 19 Cal. Rptr. 258 (1962) ....................... 16

Sidney-Vinstein v. A.H. Robins Co.,
   697 F.2d 880 (9th Cir. 1983) .................................................... 23

Skulnick v. Roberts Express, Inc.,
   2 Cal. App. 4th 884, 3 Cal. Rptr. 2d 597 (1992) .................. 16, 17

Smith v. Wal-Mart Stores,
   2006 WL. 2711468 (N.D. Cal. 2006) .................................. 20, 23

Solano Concrete Co. v. Lund Constr. Co.,
   64 Cal. App. 3d 572, 134 Cal. Rptr. 552 (1976) .................. 17, 18

Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors,
   786 F.2d 1400 (9th Cir. 1986) .................................................. 14

Survivor Prod. LLC v. Fox Broadcasting Co.,
   2001 WL. 35829270 (C.D. Cal. 2001) .................................... 5, 14

Thornton v. Rhoden,
   245 Cal. App. 2d 80, 53 Cal. Rptr. 706 (1966) ........................ 11

U.S. v. Bailey,
   444 U.S. 394 (1980) .................................................................. 24

U.S. v. Hempfling,
   2007 WL. 1299262 (E.D. Cal. 2007) ........................................ 19

Unelko Corp. v. Rooney,
   912 F.2d 1049 (9th Cir. 1990) .................................................. 10

07209/2247141.3

EXHIBIT _8_ PAGE _180_

United States v. King Features Entm't, Inc.,
   843 F.2d 394 (9th Cir. 1988)................................................................ 18

Wyshak v. City Nat'l Bank,
   607 F.2d 824 (9th Cir. 1979)................................................................ 19

## **Statutes**

Cal. Civ. Code § 47(b)........................................................................ 11

Cal. Civ. Code § 3516........................................................................ 18

Fed. R. Civ. P. Rule 11........................................................................ 12

Fed. R. Civ. P. 12(f)................................................................ 1, 5, 22

Fed. R. Civ. P. 15(a)........................................................................ 8

Fed. R. Civ. P. 26(a)(1)................................................................ 24, 25

Fed. R. Civ. P. 56(c)........................................................................ 24

Local Rule 7-3........................................................................ 2

## **Other Authorities**

2 Schwing, California Affirmative Defenses, § 32:1 at 186 (2007) ........................ 19

3 M. Nimmer, Nimmer on Copyright, § 13.09[B] at 13-145 (1988) ........................ 14

4 J. McCarthy, McCarthy on Trademarks & Unfair Competition,
   § 27:99 (4th ed. 2004) ................................................................ 10

California Practice Guide: Federal Civil Procedure Before Trial § 9:409 ................ 22

Restatement (Second) of Torts § 892A(2)................................................ 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07209/2247141.3

MATTEL'S MOTION TO STRIKE MGA'S AFFIRMATIVE DEFENSES

EXHIBIT _8_ PAGE _181_

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    <u>**Preliminary Statement**</u>

3        The MGA defendants pleaded an unclean hands defense that lists every supposed

4    Mattel bad act that MGA could conjure.  These include, for example, accusations that

5    Mattel interfered with European corporate acquisitions to which MGA was not a party

6    and assisted unidentified parties in other lawsuits against MGA.  The Ninth Circuit and

7    this Court have recognized, however, that unclean hands is not a license to list every

8    bad act that comes to mind or to try generally the parties' morals.  The unclean hands

9    defense must be directly related to Mattel's counterclaims.  Because the acts alleged as

10   establishing unclean hands bear no direct relationship to Mattel's counterclaims, it

11   should be stricken.

12       With its unclean hands defense MGA tries to introduce collateral allegations—

13   actually disguised claims—without leave of Court to do so.  MGA previously attempted

14   to take discovery on some of the same alleged conduct which forms the basis for this

15   affirmative defense.  Judge Infante sustained Mattel's objections because the conduct

16   had no bearing on Mattel's counterclaims.  The Court should strike the unclean hands

17   defense, rather than reward MGA for attempting to circumvent Judge Infante's prior

18   rulings by attempting to introduce new, unrelated claims without leave of Court.

19       MGA's affirmative defenses of estoppel, waiver and acquiescence are also

20   insufficient as a matter of law.  The same factual allegation—that Mattel allegedly

21   delayed in bringing suit—is the basis for each defense.  Delay, without more, is not a

22   sufficient basis for an estoppel, waiver or acquiescence defense.

23       Many of MGA's affirmative defenses also consist of only a single conclusory

24   sentence invoking the affirmative defense, without providing any hint of a factual basis.

25   These defenses should therefore be stricken for a failure to provide fair notice.

26   <u>**Statement of Allegations**</u>

27   <u>Mattel's Original Complaint and the Consolidated Cases.</u>  Mattel filed its original

28   complaint on April 27, 2004, alleging that a former employee, Carter Bryant, breached

-1-
MATTEL'S MOTION TO STRIKE MGA'S AFFIRMATIVE DEFENSES

EXHIBIT 8   PAGE 82

1   his common law, statutory and contractual duties to Mattel by working with and

2   assisting a Mattel competitor, MGA, while employed by Mattel.[1]  While at Mattel,

3   Bryant worked on the "Bratz" project, a line of fashion dolls, that MGA later marketed.[2]

4   On December 7, 2004, MGA filed an answer in intervention to Mattel's complaint

5   against Bryant claiming that the action put at issue MGA's rights in Bratz .[3]

6        MGA filed a complaint against Mattel on April 13, 2005 alleging that Mattel

7   engaged in "serial copycatting" of the Bratz dolls.[4]  Mattel's complaint and MGA's

8   complaint were later consolidated along with a declaratory relief action filed by Bryant

9   that was later dismissed.[5]

10       Mattel's Amended Complaint and Counterclaims.  On November 19, 2006,

11  Mattel moved for leave to amend its complaint.  The Court granted Mattel's motion,

12  allowing Mattel's new claims to be alleged as counterclaims to MGA's unfair

13  competition complaint.[6]  Mattel filed its Second Amended Answer and Counterclaims

14  on July 12, 2007.   Mattel's claims against MGA Entertainment, Inc., MGA

15  Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V. (collectively, "MGA")

16  include claims for copyright infringement, violation of RICO, conspiracy to violate

17  RICO, misappropriation of trade secrets, intentional interference with contract, aiding

18

19

20

21   [1]   Mattel's Complaint in Case No. 04-9059 SGL (RNBx), dated April 27, 2004
    ("Original Complaint"), attached as Exhibit 8 to the Declaration of B. Dylan
22  Proctor, dated October 9, 2007 ("Proctor Dec.").
    [2]   Id., ¶¶ 12-13.
23   [3]   Stipulation Permitting MGA to Intervene as a Party to This Action, dated
24  December 7, 2004, Proctor Dec. Ex. 9.
    [4]   MGA's Complaint in Case No. 05-02727 CBM (RZx), dated April 13, 2005,
25  Proctor Dec. Ex. 10.
    [5]   Minute Order Re Consolidation dated June 19, 2006, Proctor Dec. Ex. 11.
26   [6]   Order Regarding Mattel's Motion for Leave to Amend, dated January 11,
27  2007, Proctor Dec. Ex. 12.

28

1 | and abetting breach of fiduciary duty, aiding and abetting breach of duty of loyalty,
2 | conversion and unfair competition.[7]
3 |       Mattel alleges, among other things, that MGA encouraged, aided and paid Bryant
4 | to develop Bratz designs while Bryant was a Mattel employee, knowing that such
5 | conduct was a breach of Bryant's contractual duties to Mattel;[8] that MGA and Bryant
6 | intentionally concealed these facts from Mattel;[9] that Mattel is the rightful owner of
7 | Bratz drawings; and that MGA's infringement of Mattel copyrights in those drawings
8 | harmed, and continues to harm, Mattel.
9 |       Mattel also alleges that MGA approached three senior Mattel employees of
10 | Mattel's Mexican subsidiary, enticed them to steal "virtually all Mattel confidential and
11 | proprietary information that they could access and bring it with them to MGA," where
12 | they were hired to assist in establishing and running MGA's new Mexican subsidiary.[10]
13 | The three Mattel employees "stole virtually every type of document a competitor would
14 | need to enter the Mexican market and to compete with Mattel in Mexico, in the United
15 | States, and elsewhere."[11]
16 |       Mattel alleges that MGA also enticed Ron Brawer, a Mattel executive, to leave
17 | Mattel for MGA and, in the process, to steal Mattel's trade secrets, including files that
18 | contained "contact information for Mattel customers, most notably [Toys 'R Us], and
19 | extensive contact information for Mattel employees, including titles, e-mail addresses
20 | and telephone numbers."[12]  Brawer used that information for the benefit of MGA by
21 | targeting "certain Mattel employees who have broad access to Mattel proprietary
22 |
23 |
24 |     [7]   Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007 ("Mattel's Counterclaims"), Proctor Dec. Ex. 13.
25 |     [8]  <u>Id.</u>, ¶ 33.
26 |     [9]  <u>Id.</u>, ¶ 35.
27 |     [10]  <u>Id.</u>, ¶ 43.
28 |     [11]  <u>Id.</u>, ¶ 48.
    [12]  <u>Id.</u>, ¶ 68.

07209/2247141.3

EXHIBIT 8 PAGE 184

1 information in an effort to induce and encourage them to join MGA and to steal or

2 otherwise wrongfully misappropriate Mattel trade secrets."[13]

3      Mattel also alleges that "[i]n an effort to increase its market share in Canada and

4 elsewhere, MGA stole Mattel trade secrets regarding Mattel's customers, sales, projects,

5 advertising and strategy."[14]  MGA induced Janine Brisbois, a Mattel employee with

6 responsibility for major Mattel accounts Toys 'R Us and Wal-Mart, to leave Mattel to

7 join MGA where she has responsibility for MGA's accounts with those retailers.  In the

8 process of leaving Mattel, Ms. Brisbois stole approximately 45 documents containing

9 Mattel trade secret and proprietary information.[15]

10      Mattel alleges that Isaac Larian, MGA's CEO, made repeated misrepresentations

11 to retailers about Mattel's products.  For example, "[i]n an effort to dissuade [one of

12 Mattel's most significant customers] from purchasing Mattel's MY SCENE MY BLING

13 BLING product with real gems, Larian knowingly made false factual statements about

14 that product to each retailer."[16]  MGA and Larian have "repeatedly issued false and

15 misleading press releases" in which they have "misrepresented Bratz's sales, Bratz's

16 market share, Bratz's position vis-a-vis Mattel's BARBIE products, sales of Mattel's

17 BARBIE products, and the market share of Mattel's BARBIE products."[17]

18      MGA's Answer.  MGA answered Mattel's counterclaims on August 13, 2007.[18]

19 After meeting and conferring, MGA acknowledged deficiencies in its affirmative

20

21

22

23

24

25

26

27

28

---

[13] Id., ¶ 69.
[14] Id., ¶ 70.
[15] Id., ¶ 74.
[16] Id., ¶ 80.
[17] Id., ¶ 81.
[18] MGA's Answer and Affirmative Defenses, dated August 13, 2007, Proctor Dec. Ex. 14.

defenses and served an amended answer on September 19, 2007.  MGA's amended answer asserted twenty-two affirmative defenses; certain of which remain deficient.[19]

## Argument

### I.   THE COURT CAN, AND SHOULD, STRIKE LEGALLY INSUFFICIENT DEFENSES

Pursuant to Rule 12(f), a Court "may order stricken from any pleading any insufficient defense."  Courts grant motions to strike when an asserted defense is insufficient as a matter of law.  See, e.g., Bianchi v. State Farm Fire & Casualty Co., 120 F. Supp. 2d 837, 841 (N.D. Cal. 2000) (motion to strike is proper where defense is insufficient as a matter of law); Federal Deposit Ins. Corp. v. Crosby, 774 F. Supp. 584, 585 (W.D. Wash. 1991) ("An affirmative defense may be stricken pursuant to Federal Rule of Civil Procedure 12(f) if it is insufficient as a matter of law. . . . An affirmative defense is insufficient if as a matter of law it cannot succeed under any circumstances"); Feezor v. Wal-Mart Stores, Inc., 2006 WL 220152, at *1 (S.D. Cal. 2006) ("A 12(f) motion is proper 'when the defense is insufficient as a matter of law.'") (citing Kaiser Aluminum, Etc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1057 (5th Cir. 1982)).  Here, MGA's Affirmative Defense Nos. 2, 8, 9, 10, 11, 13, 14, 16, 18, 19 and 20 are insufficient as a matter of law and the Court should strike them.  See Survivor Prod. LLC v. Fox Broadcasting Co., 2001 WL 35829270 (C.D. Cal. 2001) (striking unclean hands defense with prejudice as "insufficient defense" under Rule 12(f)).

Rule 12(f) similarly permits the Court to strike from any answer "immaterial" or "impertinent" matter.  Fed. R. Civ. P. 12(f). "Immaterial" matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds,

---

[19]   MGA's Amended Answer and Affirmative Defenses, dated September 19, 2007 ("MGA's Amended Answer"), Proctor Dec. Ex. 5.

1  510 U.S. 517, 534-35 (1994)). "Impertinent" matter consists of "statements that do not

2  pertain, and are not necessary, to the issues in question." Id.; see also In re

3  2TheMart.com., Inc. Securities Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000)

4  (defining impertinent matter to include allegations "which are inadmissible as

5  evidence").

6  **II.   THE MGA DEFENDANTS' UNCLEAN HANDS DEFENSE IS NOT**

7  **LEGALLY SUFFICIENT**

8        **A.   The Unclean Hands Defense Is Not Transactionally Related to**

9             **Mattel's Counterclaims**

10        The doctrine of unclean hands "demands that a plaintiff act fairly *in the matter*

11  *for which he seeks a remedy.*" Kendall-Jackson Winery, Ltd. v. Superior Court, 76 Cal.

12  App. 4th 970, 978, 90 Cal. Rptr. 2d 743, 748-49 (1999) (emphasis added).  "It is

13  fundamental to the operation of the doctrine that the alleged misconduct by the plaintiff

14  *relate directly to the transaction* concerning which the complaint is made." Dollar

15  Systems, Inc. v. Avcar Leasing Systems, Inc., 890 F.2d 165, 173 (9th Cir. 1989)

16  (quoting Arthur v. Davis, 126 Cal. App. 3d 684, 693-94, 178 Cal. Rptr. 920, 925

17  (1981)) (emphasis added). "The determination of the unclean hands defense cannot be

18  distorted into a proceeding to try the general morals of the parties." Kendall-Jackson,

19  76 Cal. App. 4th at 978.

20        Mattel alleges that MGA (1) stole Mattel's trade secrets and confidential and

21  proprietary information, (2) infringed Mattel copyrights, (3) interfered with agreements

22  between Mattel and its employees, and (4) made knowingly false statements about

23  Mattel's products.

24        The factual grounds for MGA's unclean hands defense have nothing to do with

25  Mattel's counterclaims, but are a virtual grab-bag of any random allegation that MGA

26  could contrive.  MGA alleges that Mattel: (1) engaged in "efforts to infringe and dilute

27  MGA's trade dress, copy MGA's products, packaging, themes, and advertising," (2)

28  engaged in "efforts to fund or commission market research or studies that portray Bratz

07209/2247141.3

-6-

MATTEL'S MOTION TO STRIKE MGA'S AFFIRMATIVE DEFENSES

EXHIBIT 8 PAGE 181

1  or MGA products negatively; (3) "monitor[ed], 'sp[ied] on' or gain[ed] knowledge of

2  MGA's trade secrets, non-public information, non-public activities, unreleased

3  products, and product development," (4) "gain[ed] access, or attempt[ed] to gain access,

4  to MGA showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false

5  pretenses," (5) "wrongfully obtain[ed] MGA's cost and sales information through

6  Mattel-employed category managers at retailers," (6) "covertly investigat[ed] MGA, its

7  officers and employees, and their family members," (7) engaged in "efforts to interfere

8  with MGA's acquisition of or investment in Zapf Creation AG," (8) engaged in "efforts

9  or intent to interfere with business dealings or contractual relations between MGA and

10  Smoby Group," (9) "influenc[ed] Nickelodeon to reject MGA advertisements or to limit

11  time slots for advertisements," (10) "induc[ed] non-party customers to breach

12  confidentiality agreements with MGA and divulge non-public information about

13  MGA's unreleased products," and (11) "coerc[ed] [Mattel's] employees to accept

14  restrictive covenants (right before a massive layoff) and non-compete clauses and other

15  efforts to prevent prospective MGA employees from accepting offers of

16  employment."[20]  The allegations fail to establish an unclean hands defense.  They are

17  merely an excuse to broaden discovery improperly and to attempt to get unrelated "bad

18  acts" before the jury.

19       Magnesystems, Inc. v. Nikken, Inc., 933 F. Supp. 944, 953 (C.D. Cal. 1996), is

20  instructive.  In Magnesystems, the plaintiff sued for patent infringement.  Defendants

21  tried to defend the infringement claim by alleging that plaintiff had infringed their

22  patents.  The Court rejected defendants' argument, holding that the unclean hands

23  doctrine requires "a connection to 'the matter in which [the plaintiff] seeks relief.'"  Id.

24  (quoting Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,

25  324 U.S. 806, 814 (1945)).  The Court found that "[p]laintiff's alleged misconduct ha[d]

26  no direct relationship to the [patent-in-suit] or [p]laintiff's conduct in obtaining the

27

28

---

[20]  MGA Amended Answer, at 20-21, Proctor Dec. Ex. 5.

EXHIBIT _8_ PAGE _188_

MATTEL'S MOTION TO STRIKE MGA'S AFFIRMATIVE DEFENSES

1  patent-in-suit." Id. at 953.  The Court stressed that any alleged infringement by the

2  plaintiff could, and should, be addressed in a separate action, not as an affirmative

3  defense in an unrelated case: "In essence, Defendants have trespassed upon Plaintiff's

4  property.  For this, Plaintiff can sue for damages. . . .  Conversely, if Plaintiff has

5  trespassed upon Defendants' property, Defendants can sue Plaintiff for damages. . . .

6  One trespass does not cancel the other.  Both trespasses can be remedied." Id.

7       MGA, like the defendants in Magnesystems, bases its unclean hands defense on

8  allegations having "no direct relationship" to Mattel's counterclaims.  MGA could try to

9  assert those claims against Mattel separately—and, in fact MGA concedes that it has

10 asserted some of those claims, including the infringement claims, in its unfair

11 competition complaint.  As for the claims not already asserted, MGA merely seeks to

12 circumvent the requirements that it first obtain the Court's leave to amend its own

13 complaint to assert those claims.  See Fed. R. Civ. P. 15(a).

14      Judge Infante rejected MGA's efforts to take discovery on some of the allegations

15 in the unclean hands defense, finding that they have nothing to do with Mattel's

16 counterclaims.  For example, MGA's purported unclean hands defense includes

17 allegations that Mattel engaged in "efforts to fund or commission market research or

18 studies that portray Bratz or MGA products negatively," and that Mattel products,

19 including its "Polly Pocket" product, "infringe and dilute MGA's trade dress, copy

20 MGA's products, packaging, themes, and advertising" MGA subpoenaed Mattel

21 advertising agencies seeking documents related to "Polly Pocket" and to market

22 research relating to MGA products "Bratz," "Alien Racers" or MGA," including focus

23 groups and advertisements.[21]  Judge Infante granted Mattel's motion for a protective

24 order, ruling that the requests were "far beyond the scope of permissible discovery

25

26  [21]  Order Granting in Part and Denying In Part Mattel's Motion for Protective

27  Order Regarding Polly Pocket Documents dated April 19, 2007, at 2:19-3:17,
    Proctor Dec. Ex. 15.

28

EXHIBIT 8  PAGE 189

1   under Rule 26" and only required documents to be produced to the extent that the

2   subpoenaed parties had information related to MGA's sole Polly Pocket allegation

3   already in issue.[22]

4   　　Similarly, Judge Infante denied MGA's requests for documents related to

5   whether Mattel "set prices based on confidential information from MGA" because no

6   allegation in MGA's complaint "related to below market pricing" or "any allegation that

7   Mattel misappropriated confidential pricing information from MGA."[23]   MGA also

8   sought, and Judge Infante denied, documents "tending to support or refute MGA's

9   assertion that Mattel interfered with MGA's dealings with such parties [buyers,

10   merchandisers, retailers, suppliers, licensees] by providing false or misleading

11   information concerning MGA products, the ownership of Bratz and exerting pressure

12   on these parties not to license or sell MGA products."[24]   Judge Infante denied MGA's

13   request because MGA made no "attempt to link these requests to any of the numerous

14   and far-ranging allegations of unfair competition in its complaint.  Instead MGA makes

15   a very generalized argument that the requests seek information relevant to its

16   allegations that Mattel interfered with MGA's business dealings with third parties."[25]

17   Judge Infante also denied MGA's motion to compel Mattel to produce documents

18   referring or relating to communications between Mattel and the press, public relations

19   firms and former MGA or Mattel employees for the same reasons.[26]

20

21

----

22   　　[22]   Id., at 7:2-12.

23   　　[23]   Order Granting in Part and Denying in Part MGA's Motion to Compel
Documents Responsive to First Set of Requests for Production of Documents Dated

24   November 22, 2006, at 15:8-14, Proctor Dec. Ex. 16.

25   　　[24]   Id., at 17:3-6.
　　[25]   Id., at 17:16-20, see id., at 18:25-19:20 (denying MGA motion to compel the

26   production of documents relating to business dealings between any licensee,

27   supplier, manufacturer, distributor or merchandiser of MGA).
　　[26]   Id., at 18:16-23.

28

07209/2247141.3

EXHIBIT  8   PAGE  190

1    MGA's bad conduct litany of allegations has nothing to do with Mattel's

2    counterclaims against MGA, but are simply an effort to expand improperly the scope of

3    discovery, contrary to Judge Infante's explicit rulings, and the scope of the issues to be

4    presented to the jury. MGA's wish to harass Mattel in discovery and to try the morals

5    of Mattel, however, do not make an unclean hands defense. Such allegations should be

6    stricken from MGA's answer. See Kendall-Jackson Winery, Ltd, 76 Cal. App. 4th at

7    978 ("The determination of the unclean hands defense cannot be distorted into a

8    proceeding to try the general morals of the parties").

9    **B.   Allegations Regarding Mattel's Purported Efforts to Disparage**

10           **MGA Fail For The Additional Reason That The Alleged Conduct**

11           **Is Protected**

12    MGA's unclean hands defense includes allegations that Mattel disparaged MGA;

13    however, the First Amendment protects the accused conduct. MGA alleges that Mattel

14    engaged in efforts to (1) "create negative publicity or press about MGA, MGA

15    products, Bryant, Larian, or MGA employees," (2) "fund or commission market

16    research or studies that portray Bratz or MGA products negatively," (3) "include

17    negative references to MGA or Bratz on Mattel's "We Believe in Girls' website," and

18    (4) assist "parties in lawsuits against MGA."

19    The First Amendment renders privileged statements that are not false. See

20    Unelko Corp. v. Rooney, 912 F.2d 1049, 1057-58 (9th Cir. 1990) (holding that

21    disparaging statements are protected by First Amendment where there is no evidence

22    the statements are false). MGA accuses Mattel of product disparagement, which

23    requires a false statement. See California Scents v. Surco Products, Inc., 406

24    F.3d 1102, 1109 (citing 4 J. McCarthy, McCarthy on Trademarks & Unfair

25    Competition, § 27:99 (4th ed. 2004)). MGA has not alleged any false statements, nor

26    can it. Rather, MGA merely alleges that Mattel created "negative" publicity or press,

27    portrayed Bratz or MGA products "negatively," and made "negative" references to

28    MGA or Bratz. Because MGA has not alleged that the unidentified "negative"

EXHIBIT 8 PAGE 191

-10-

1  statements are false, the First Amendment protects the accused conduct. <u>See</u> <u>Unelko</u>

2  <u>Corp. v. Rooney</u>, 912 F.2d 1049, 1057-58 (9th Cir. 1990) (holding that disparaging

3  statements are protected by First Amendment where there is no evidence the statements

4  are false).[27]

5       Further, MGA's alleges that Mattel's claims are barred because it supposedly

6  assisted unidentified parties in unidentified ways in unidentified lawsuits against MGA.

7  California's litigation privilege, however, protects such assistance.[28]   California

8  statutory law makes privileged statements made "in any . . . judicial proceeding." <u>Cal.</u>

9  <u>Civ. Code</u> § 47(b); <u>see also</u> <u>ITT Telecom Products Corp. v. Dooley</u>, 214 Cal.

10  App. 3d 307, 313-14, 262 Cal. Rptr. 2d 773 (1989). "This privilege is absolute in that it

11  applies regardless of whether a statement was uttered with malice or bad faith." <u>Id.</u>

12  (quoting <u>Thornton v. Rhoden</u>, 245 Cal. App. 2d 80, 93, 53 Cal. Rptr. 706 (1966)). In

13  <u>ITT Telecom</u>, the court held that statements in litigation made by a non-party consultant

14  "in order to assist ITT's adversary in litigation" were protected by the litigation

15  privilege. <u>Id.</u> at 315.  Here, any alleged assistance Mattel has provided to MGA's

16  adversaries in *other* lawsuits, is not only insufficiently related to this suit by definition,

17  but is privileged and cannot form the basis of an unclean hands defense.

18       C.   **Mattel's Investigation Related To This Case Is Not Unclean Hands,**

19            **But Rather Required By The Federal Rules**

20       MGA's allegation that Mattel "covertly investigat[ed] MGA, its officers and

21  employees, and their family members" cannot form the basis of an unclean hands

22  defense because it is not inequitable conduct.  <u>See</u> <u>Fladeboe v. American Isuzu</u>

23

24  [27]  Protected statements are not sufficient to plead either bad faith or else

25  unconscionable or inequitable conduct because the purported misconduct is
   protected by the First Amendment.  <u>See</u> <u>Fladeboe v. American Isuzu Motors, Inc.</u>,

26  150 Cal. App. 4th 42, 58 Cal. Rptr. 3d 225, 235-36 (2007) (holding that "unclean
   hands requires unconscionable, bad faith, or inequitable conduct").

27  [28]  MGA Amended Answer, at 20, Proctor Dec. Ex. 5.

28

EXHIBIT _8_ PAGE _192_

1 | Motors, Inc., 150 Cal. App. 4th 42, 56 (2007) ("unclean hands requires unconscionable,
2 | bad faith, or inequitable conduct").  Mattel has a duty to investigate allegations of
3 | wrongdoing including an obligation under Rule 11 to conduct an investigation to
4 | determine whether evidence supports the alleged wrongdoing.  See Rhinehart v.
5 | Stauffer, 638 F.2d 1169, 1171 (9th Cir. 1979) (before filing an action, attorney has duty
6 | to investigate claims to see that they have merit).  Mattel's compliance with its duty to
7 | investigate its claims cannot be inequitable conduct in support of a defense of unclean
8 | hands.

9 | **D.    Allegations Regarding Mattel's Alleged Conduct Concerning Non-**
10 | **Parties Is Not A Valid Basis For An Unclean Hands Defense**

11 | MGA's unclean hands defense includes allegations regarding Mattel's conduct
12 | toward persons who are not parties to this litigation.  Unclean hands "applies to conduct
13 | between the litigants themselves, not to conduct of a litigant towards a nonparty."
14 | Mesnick v. Caton, 183 Cal. App. 3d 1248, 1263, 228 Cal. Rptr. 779 (1986) ("The courts
15 | cannot use this doctrine to penalize a litigant's supposed inequitable conduct which is
16 | both unrelated to a matter before the court and addressed toward a party not involved in
17 | that pending matter.") (citing cases).

18 | MGA alleges that Mattel (1) "contact[ed] persons under false pretense in order to
19 | interrogate them about Bratz and this litigation," (2) "falsely inflat[ed] its Barbie sales
20 | figures in an effort to mislead the public and retailers," (3) coerced Mattel employees to
21 | accept restrictive covenants; and (4) engaged in "efforts to interfere with MGA's
22 | acquisition of or investment in Zapf Creation AG."  These allegations relate to Mattel's
23 | supposed conduct toward non-parties.  The first three allegations relate to Mattel's
24 | alleged conduct towards unspecified "persons," "the public and retailers," and "Mattel
25 | employees," respectively.  Even if the allegations had any factual basis—and they do
26 | not—such conduct concerning persons other than MGA is no defense to Mattel's
27 | claims against MGA.

28 |

EXHIBIT __8__ PAGE _193_

1    MGA's allegation that Mattel engaged in "efforts to interfere with MGA's

2  acquisition of or investment in Zapf Creation AG" is deficient for the same reason.  No

3  named defendant was involved in the "acquisition of or investment in Zapf Creation

4  AG." Lisa Tonnu, an executive at MGA, testified that MGA did not own an interest in

5  Zapf.[29] Ms. Tonnu acknowledged that the companies that acquired an interest in Zapf

6  were "not within the MGA corporate structure."[30]  MGA's allegations regarding Zapf

7  therefore cannot form the basis of an unclean hands defense because Mattel's alleged

8  misconduct concerned a non-party.  See Mesnick, 183 Cal. App. at 1263 (unclean

9  hands applies only to "conduct between the litigants themselves, not to conduct of a

10  litigant towards a nonparty").

11    Finally, in another example of Mattel's purported "bad conduct," MGA asks the

12  Court to bar Mattel's claims because it delayed in suing Bryant so that he could testify

13  for Mattel in an unrelated case.  Even if (contrary to fact and law) that were a defense

14  for Bryant, it is not a defense that MGA can invoke.

15      **E.    Unclean Hands Is Not a Valid Defense to Mattel's RICO Claims**

16    Mattel's Counterclaim includes claims under the Racketeer Influenced and

17  Corrupt Organizations Act (RICO).[31]  Unclean hands is not a recognized defense to a

18  RICO claim.  See In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Sec.

19  Litig., 636 F. Supp. 1138, 1156 (C.D. Cal. 1986) (unclean hands defense should not

20  prohibit action that "advances RICO's broad anti-racketeering policies") (citing Perma

21  Life Mufflers, Inc. v. Int'l Parts Corp., 392 U.S. 134, 139 (1968)); see also Bieter Co. v.

22  Blomquist, 848 F. Supp. 1446, 1448-50 (D. Minn. 1994) (defenses of unclean hands

23

24    [29]   Volume I of Lisa Tonnu's Deposition, dated July 19, 2007, at 61:4-9, attached
25  as Exhibit 1 to the Declaration of Jon D. Corey, dated October 9, 2007 ("Corey
     Dec.").
26    [30]   Volume II of Lisa Tonnu's Deposition, dated September 24, 2007, at 311:4-
27  312:24, Corey Dec. Ex. 2.
      [31]   Mattel's Counterclaims, ¶¶ 88-105, Proctor Dec. Ex. 13.

28

07209/2247141.3

EXHT __8__ PAGE _194_

MATTEL'S MOTION TO STRIKE MGA'S AFFIRMATIVE DEFENSES

1  and *in pari delicto* are not valid in a RICO action).  As a matter of law, MGA's unclean

2  hands defense should be stricken as to Mattel's second and third counterclaims.

3      **F.**    **MGA Does Not Allege a Valid Unclean Hands Defense to Mattel's**

4          **Copyright Infringement Counterclaim**

5      The Ninth Circuit has recognized that the unclean hands defense "is rarely

6  effective" against a claim for copyright infringement.  Los Angeles News Service v.

7  Tullo, 973 F.2d 791, 799 (9th Cir. 1992).  It is "recognized only rarely, when the

8  plaintiff's transgression is of serious proportions and relates directly to the subject

9  matter of the infringement action."  Survivor Prod. LLC, 2001 WL 35829270, at *3

10  (quoting 3 M. Nimmer, Nimmer on Copyright, § 13.09[B] at 13-145 (1988)).

11  Generally, an unclean hands defense applies to copyright claims only when the plaintiff

12  has misused the copyrights at issue by either (1) overreaching in the protection of its

13  copyright by licensing it on unduly restrictive terms or (2) violating antitrust laws in a

14  way that "offend[s] the public policy behind the copyright grant."  In re Napster, Inc.

15  Copyright Litig., 191 F. Supp. 2d 1087, 1102-05 (N.D. Cal. 2002) (discussing

16  copyright misuse and unclean hands defense); see also Supermarket of Homes, Inc. v.

17  San Fernando Valley Bd. of Realtors, 786 F.2d 1400, 1408 (9th Cir. 1986) (same).

18      MGA does not allege either.  MGA makes no allegation that Mattel has licensed

19  the copyrights at issue in Mattel's counterclaims, let alone on unduly restrictive terms.

20  MGA also makes no allegation that Mattel has violated antitrust laws.  To establish

21  unclean hands on this basis, MGA's allegations must demonstrate a "nexus between . . .

22  alleged anti-competitive actions and [Mattel's] power over copyrighted material."  In re

23  Napster, Inc. Copyright Litig., 191 F. Supp. at 1108 (quoting Orth-O-Vision, Inc. v.

24  Home Box Office, 474 F. Supp. 672, 686 (S.D.N.Y. 1979)).  "[G]eneralized antitrust

25  violations will not suffice."  In re Napster, Inc. Copyright Litig., 191 F. Supp. at 1108.

26  MGA's unclean hands defense includes general allegations of unfair competition, but

27  none of the allegations are related to Mattel's use of its copyrights.  MGA's unclean

28

EXHIBIT 8 PAGE 195

07209/2247141.3

1     hands defense therefore fails as a matter of law as a defense to Mattel's copyright

2     infringement counterclaim and should be stricken as to that claim.

3    **III.**     **MGA'S ESTOPPEL, WAIVER, AND ACQUIESCENCE DEFENSES**

4         **ARE INSUFFICIENT AS A MATTER OF LAW**

5      MGA's Third, Ninth, Tenth, and Thirteenth Affirmative Defenses allege laches,

6     estoppel, acquiescence, and waiver, respectively.   With those defenses, MGA has

7     simply taken a single factual allegation and repackaged it under four separate headings.

8     As to each, MGA alleges:

9          Mattel believed from the time that Carter Bryant left

10          Mattel's employ that he was going to perform work for a

11          Mattel competitor.  Mattel began investigating Bryant and

12          MGA Defendants, including Bryant's role in the creation

13          and development of Bratz, at least as early as March 2002

14          and thereafter continued its investigation into Bryant's role

15          in the creation and development of Bratz, as well as his

16          work with MGA, in August 2002 after Mattel's CEO,

17          Robert Eckert, received an 'anonymous letter' that claimed

18          that Bryant stole the idea for Bratz from Mattel and sold it

19          to MGA Defendants.  Nonetheless, Mattel waited years to

20          bring suit, all the while allowing MGA Defendants to

21          spend years developing their business and invest tens of

22          millions of dollars developing the Bratz products and

23          building the Bratz brand.[32]

24

25

26

27     _____

[32]    MGA's Amended Answer, at 21-22, Proctor Dec. Ex. 5.

28

EXHIBIT _8_ PAGE _196_

-15-

1    For its acquiescence defense, MGA includes an additional, vague allegation that

2 Mattel has "tolerated and condoned conduct by other employees similar to the alleged

3 conduct by Bryant and others on which Mattel bases its claims."[33]

4    **A.    MGA's Estoppel Defense Is Insufficient As A Matter Of Law**

5    Equitable estoppel "is based on the theory that the party estopped has by his

6 declarations or conduct misled another to his prejudice so that it would be inequitable

7 to allow the true facts to be used against the party misled." Scott v. Federal Life Ins.

8 Co., 200 Cal. App. 2d 384, 391, 19 Cal. Rptr. 258 (1962). Here, MGA raises estoppel

9 as its Ninth Affirmative Defense, alleging that Mattel wrongfully delayed filing suit.

10 MGA fails to allege the necessary elements of an estoppel defense, which require that:

11 "(1) The party to be estopped must be apprised of the facts; (2) he must intend that his

12 conduct shall be acted upon, or must so act that the party asserting the estoppel had a

13 right to believe it was so intended; (3) the other party must be ignorant of the true state

14 of facts; and (4) he must rely upon the conduct to his injury." Skulnick v. Roberts

15 Express, Inc., 2 Cal. App. 4th 884, 890, 3 Cal. Rptr. 2d 597 (1992); see also Heckler v.

16 Community Health Servs., 467 U.S. 51, 59 (1984) ("the party claiming the estoppel

17 must have relied on its adversary's conduct 'in such a manner as to change his position

18 for the worse,' and that reliance must have been reasonable in that the party claiming

19 the estoppel did not know nor should it have known that its adversary's conduct was

20 misleading").

21    Mattel's alleged conduct -- "investigating Bryant and MGA Defendants,

22 including Bryant's role in the creation and development of Bratz," and then "waiting"

23 before filing suit[34] -- is not something that MGA "could reasonably believe that

24 [Mattel] intended" MGA would "act[] upon." Scott, 200 Cal. App. 2d at 391. Nor does

25 MGA allege it *did* act upon Mattel's conduct -- it cannot show detrimental reliance.

26

27    [33] Id., at 23.

28    [34] Id., at 23.

EXHIBIT _8_ PAGE _197_

1  MGA alleges the Bratz dolls were further developed while Mattel "waited" while it

2  "investigated," but that is not detrimental reliance. MGA has not suffered, and does not

3  allege it suffered, any harm as a result of Mattel's alleged conduct. Quite the opposite,

4  it has greatly profited, and been unjustly enriched, from the development of the Bratz

5  dolls.

6      MGA also does not, and cannot, allege that Mattel knew the "true state of facts."

7  Skulnick, 2 Cal. App. 4th at 890. MGA alleges that Mattel knew as of the year 2000

8  that Bryant was going to work for an alleged competitor, but even if that were true (and

9  it is not) that is not sufficient knowledge to give rise to an estoppel because Mattel

10  could not have filed suit based merely on that. Indeed, this Court has held that Mattel's

11  claims only "became more than merely speculative and in fact became probable" on

12  November 24, 2003.[35] Investigating and not immediately filing suit simply does not

13  give rise to an estoppel defense, and certainly does not based on MGA's allegations.

14  This defense should be stricken. See F.T.C. v. Medicor LLC, 2001 WL 765628, at *4

15  (C.D. Cal. 2001) (striking affirmative defense of estoppel where elements of estoppel

16  were not alleged); see also Ross v. CCS Intern. Ltd., 2000 WL 1804103, at *4

17  (S.D.N.Y. 2000) (striking waiver and consent defenses where defendants failed to

18  demonstrate all of the requisite elements of the defenses).

19      **B.  MGA's Waiver Defense Is Insufficient As A Matter Of Law**

20      MGA's Thirteenth Affirmative Defense of waiver should also be stricken as

21  insufficient as a matter of law. For waiver to apply, "it must be shown that the party

22  had knowledge of the right and the intent to waive or forego it." Solano Concrete

23  Co. v. Lund Constr. Co., 64 Cal. App. 3d 572, 575, 134 Cal. Rptr. 552 (1976); see also

24  A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1026 (9th Cir. 2001) (waiver of

25  copyright "occurs only if there is an intent by the copyright proprietor to surrender

26

27  [35]  See Order Denying Motion for Terminating Sanctions, dated August 27,
     2007, at 3, Proctor Dec. Ex. 17.

28

EXHIBIT _8_ PAGE _198_

-17-

MATTEL'S MOTION TO STRIKE MGA'S AFFIRMATIVE DEFENSES

1  rights in his work"); Goehring v. Chapman Univ., 121 Cal. App. 4th 353, 386, 17 Cal.

2  Rptr. 3d 39 (2004) ("A finding of waiver requires clear and convincing evidence of

3  intentional relinquishment of a known right with awareness of the relevant facts");

4  United States v. King Features Entm't, Inc., 843 F.2d 394, 399 (9th Cir. 1988) ("Waiver

5  is the intentional relinquishment of a known right with knowledge of its existence and

6  the intent to relinquish it").

7      Here, MGA's allegation that Mattel improperly delayed filing suit does not

8  support a waiver defense. Mattel did not waive any rights prior to discovering MGA's

9  and Bryant's wrongdoing as it did not have the requisite "knowledge of the right and the

10  intent to waive or forego it" -- and MGA does not allege otherwise. Solano, 64 Cal.

11  App. 3d at 575. Moreover, mere alleged delay is not "clear and convincing evidence of

12  intentional relinquishment of a known right." Goehring, 121 Cal. App. 4th at 386.

13  Indeed, MGA pleads itself out of court on this entire defense because it is inconsistent

14  with the allegations MGA does make. MGA alleges that, upon learning of MGA's and

15  Bryant's unlawful activities, Mattel "began investigating Bryant and MGA

16  Defendants."[36] Such action demonstrates Mattel's desire to *protect* its interests, not an

17  intent to *waive* them. The Court should strike this defense.

18      C.    **MGA's Acquiescence Defense Is Insufficient As A Matter Of Law**

19      MGA's acquiescence defense likewise fails. MGA again alleges supposed delay,

20  but "mere delay in asserting rights is not an acquiescence or consent." Ross v. CCS

21  Intern. Ltd., 2000 WL 1804103, *4 (S.D.N.Y. 2000). Further, MGA does not identify

22  to what Mattel purportedly acquiesced or to which of Mattel's claims the defense

23  allegedly applies. See Ross v. CCS Intern. Ltd., 2000 WL 1804103, at *4 (S.D.N.Y.

24  2000) (striking acquiescence affirmative defense where defendant failed to show an

25  intentional relinquishment of copyrights); cf. F.T.C. v. Medicor LLC, 2001 WL

26

27  ────────────────

   [36]   MGA's Amended Answer, at 24, Proctor Dec. Ex. 5.

28

07209/2247141.3

EXHIBIT 8  PAGE 199

1    765628, at *3 (C.D. Cal. 2001) (striking consent affirmative defense where it "offer[ed]
2    Plaintiff no indication as to how consent would bar [Plaintiff's] claims").

3        Nor can MGA allege the necessary elements for acquiescence.  In pleading
4    acquiescence, MGA is essentially asserting a consent defense.  Cal. Civ. Code § 3516
5    ("Acquiescence in error takes away the right of objecting to it."); 2 Schwing, California
6    Affirmative Defenses, § 32:1 at 186 (2007).  To plead consent, MGA must show that
7    Mattel consented to the particular misconduct at issue; that Mattel did so absent any
8    fraud, duress, undue influence, or mistake; and that Mattel never terminated its
9    purported consent.  See 2 Schwing California Affirmative Defenses, § 32:3 at 195
10   (2007) ("To be a defense, the consent given must have been to the very act or
11   circumstance that caused the harm giving rise to the action.") (citing Restatement
12   (Second) of Torts § 892A(2)); see also Greenawalt v. Rogers, 151 Cal. 630, 635, 91 P.
13   526 (1907) ("consent is not real or free when obtained through: (1) Duress; (2) menace;
14   (3) fraud; (4) undue influence; or (5) mistake"); 2 Schwing California Affirmative
15   Defenses, § 32:5 at 206 (2007) ("Once given, consent is only effective until
16   terminated").  MGA again alleges none of the required elements.

17   **IV.    SEVERAL OF MGA'S AFFIRMATIVE DEFENSES DO NOT**
18   **        PROVIDE FAIR NOTICE**
19       **A.    Fair Notice Requires More Than A Conclusory Averment Of The**
20       **        Affirmative Defense**

21       Other MGA affirmative defenses should be stricken for failure to provide fair
22   notice.  "The key to determining the sufficiency of pleading an affirmative defense is
23   whether it gives plaintiff fair notice of the defense."  Wyshak v. City Nat'l Bank, 607
24   F.2d 824, 827 (9th Cir. 1979).  "Affirmative defenses are governed by the same
25   pleading standard as complaints."  Qarbon.com Inc. v. eHelp Corp., 315 F. Supp.
26   2d 1046, 1049 (N.D. Cal. 2004).  Thus, courts require that affirmative defenses be more
27   than "bare bones conclusory allegations."  U.S. v. Hempfling, 2007 WL 1299262, at *4
28   (E.D. Cal. 2007) ("If an affirmative defense is insufficient on its face, or comprises no

1   more than 'bare bones conclusory allegations,' it must be stricken."); <u>see also</u> <u>Heller</u>

2   <u>Financial, Inc. v. Midwhey Powder Co., Inc.</u>, 883 F.2d 1286, 1294-95 (7th Cir. 1989)

3   (striking affirmative defenses where they contained "nothing but bare bones conclusory

4   allegations" and "failed totally to allege the necessary elements of the alleged claims").

5        An affirmative defense must inform the opposing party of the nature of the

6   defense, the relevant elements of the defense, and the factual basis for the defense.  <u>See</u>

7   <u>Qarbon</u>, 315 F. Supp. 2d at 1050 (striking affirmative defenses where defenses did not

8   include factual allegations); <u>D.S. America (East), Inc. v. Chromagrafx Imaging</u>

9   <u>Systems, Inc.</u>, 873 F. Supp. 786, 797 (E.D.N.Y. 1995) ("An affirmative defense must

10  sufficiently apprise the opposing party of the nature of the defense, providing the

11  opposing party with adequate notice of the relevant elements of the defense"); <u>Smith v.</u>

12  <u>Wal-Mart Stores</u>, 2006 WL 2711468, at *8-9 (N.D. Cal. 2006) (striking affirmative

13  defenses of waiver, estoppel, and consent because they did not provide fair notice and

14  "could refer to any of several legal doctrines"); <u>Renalds v. S.R.G. Restaurant Group</u>,

15  119 F. Supp. 2d. 800, 803 (N.D. Ill. 2000) (striking affirmative defense that did not

16  indicate how allegations were connected to the case at hand).

17      **B.**    <u>**Several of MGA's Affirmative Defenses Do Not Give Mattel Fair**</u>

18              <u>**Notice**</u>

19      Even after amending its Answer, MGA's Eighth, Eleventh, Fourteenth, Sixteenth,

20  Eighteenth, Nineteenth, and Twentieth Affirmative Defenses still consist of a single,

21  conclusory sentence which provides no notice as to the factual basis for each defense,

22  the claims to which the defenses apply or the required elements of each defense.  Such

23  conclusory pleading is improper.  <u>See, e.g.</u>, <u>Qarbon.com</u>, 315 F. Supp. 2d at 1049-50;

24  <u>Renalds</u>, 119 F. Supp. 2d at 803.

25

26

27

28

EXHIBIT __8__ PAGE __201__

1    For example, MGA "good faith" defense pleads that "Mattel's counterclaims are
2   barred in whole or in part because the MGA Defendants acted in good faith."[37]  This
3   pleading is woefully insufficient and does not put Mattel on notice as to which of
4   Mattel's counterclaims this applies to, nor does it put Mattel on notice as to which facts
5   this defense is based on. See Heller, 883 F.2d at 1294-95 (striking affirmative defense
6   of good faith which consisted of a "bare bones conclusory allegation"); S.E.C. v.
7   Brincat, 2001 WL 1662099, at *1 (N.D. Ill. 2001) (striking good faith defense where no
8   factual basis was provided).

9    With respect to its "failure to mitigate" defense, MGA simply states that "Mattel
10  failed to take reasonable steps to mitigate those purported damages" without identifying
11  what mitigating measures Mattel allegedly failed to take.  That is inadequate.  See
12  Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., 2005 WL
13  975773, at *12 (S.D. Fla. 2005) (striking failure to mitigate defense where defendant
14  did not include supporting facts); Ivanhoe Fin., Inc. v. Highland Banc Corp., 2004 WL
15  2091997, at *3-4 (N.D. Ill. 2004) (striking defense where defendant failed to state what
16  measures plaintiff allegedly failed to take to mitigate damages).

17   Other MGA defenses are similarly deficient.  MGA refers to "acts or omissions
18  of others" as its Eighth Affirmative Defense, but does not state what other acts or
19  omissions it refers to or who did them.  It pleads "abandonment" as its Fourteenth
20  Affirmative Defense, but does not identify what copyright interests Mattel has allegedly
21  abandoned or how Mattel abandoned them.  See Ross v. CCS Inter. Ltd., 2000 WL
22  1804103, at *4 (S.D.N.Y. 2000) (striking abandonment defense where defendants failed
23  to allege "some overt act which manifests an intent to surrender rights in the
24  copyrighted material").  MGA does not identify which works it claims were "jointly
25  authored" for its Sixteenth Affirmative Defense, and refused during a conference of
26  counsel to say whether the allegedly jointly authored works were even those Mattel

27
28

[37]   MGA's Amended Answer, at 25, Proctor Dec. Ex. 5.

EXHIBIT __8__ PAGE _202_

-21-
MATTEL'S MOTION TO STRIKE MGA'S AFFIRMATIVE DEFENSES

1  claims it owns and that MGA infringes.[38]   MGA's Nineteenth and Twentieth

2  Affirmative Defenses of "lack of authority" and "lack of standing" likewise consist only

3  of conclusory averments of the title of the defense.

4       The Court should strike these affirmative defenses for failing to provide Mattel

5  with fair notice of the bases of the defenses, the claims MGA believes they apply to, or

6  how they relate to the case at hand.

7  **V.    MATTEL WILL SUFFER PREJUDICE IF MGA'S AFFIRMATIVE**

8       **DEFENSES ARE NOT STRICKEN**

9       Defendants maintained at one point that Mattel should not move to strike

10  affirmative defenses, "the pleading of which does not expand the scope of the case and

11  causes no prejudice to Mattel."[39] No showing of prejudice is required, and in any event

12  the prejudice to Mattel from MGA's deficient pleading is apparent.

13       **A.    Mattel Need Not Show Prejudice**

14       Motions to strike are the proper means to address an inadequate pleading of an

15  affirmative defense, regardless of prejudice. See Fed. R. Civ. P. 12(f) ("[U]pon motion

16  made by a party within 20 days after the service of a pleading upon the party or upon

17  the court's own initiative at any time, the court may order stricken from any pleading

18  any insufficient defense"); Ganley v. County of San Mateo, 2007 WL 902551, at *2

19  (N.D. Cal. 2007) ("In the Ninth Circuit, motions to strike are proper, even if the

20  material is not prejudicial to the moving party, if granting the motion would make trial

21  less complicated or otherwise streamline the ultimate resolution of the action.");

22  California v. United States, 512 F. Supp. 36, 38 (N.D. Cal. 1981) (motion to strike is

23  proper where motion may have the "effect of making the trial of the action less

24  complicated or have the effect of otherwise streamlining the ultimate resolution of the

25  action"); California Practice Guide: Federal Civil Procedure Before Trial § 9:409 (The

26

27  _____

[38]   Letter from Proctor to MGA Counsel, dated August 30, 2007, Proctor Dec. Ex. 3.

28

EXHIBIT _8_ PAGE _203_

-22-

MATTEL'S MOTION TO STRIKE MGA'S AFFIRMATIVE DEFENSES

07209/2247141.3

1   Rutter Group 2007) ("orders striking portions of pleadings are proper although they are

2   not shown to be prejudicial to the moving party, if granting the motion will make the

3   trial less complicated or otherwise streamline ultimate resolution of the action") (citing

4   Fantasy Inc. v. Fogerty, 984 F.2d 1524, 1528 (9th Cir. 1993).

5          **B.**    **Mattel Will Be Prejudiced If The Defenses Are Not Stricken**

6         In any event, the prejudice to Mattel is clear given that a number of MGA's

7   affirmative defenses are insufficient as a matter of law and purport to greatly expand

8   the issues for discovery and trial in this case.  Mattel should not have to spend its

9   resources responding to discovery regarding and preparing rebuttals to legally

10  insufficient defenses, and having to do so is prejudice.  See, e.g., Sidney-Vinstein v.

11  A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983) ("function of a 12(f) motion to

12  strike is to avoid the expenditure of time and money that must arise from litigating

13  spurious issues by dispensing with those issues prior to trial"); Smith v. Wal-Mart

14  Stores, 2006 WL. 2711468, at *4 (N.D. Cal. 2006).  Moreover, many of MGA's

15  affirmative defenses do not provide Mattel with adequate notice as to the bases for its

16  defenses or even the claims they purport rebut.  Without this necessary information,

17  Mattel can only guess how these defenses relate to the case , which also is prejudicial.[40]

18  **VI.**   **IN THE ALTERNATIVE, THE COURT SHOULD GRANT PARTIAL**

19        **SUMMARY JUDGMENT ON MGA'S AFFIRMATIVE DEFENSES**

20        In the alternative, the Court should grant partial summary judgment against

21  MGA's Affirmative Defense Nos. 2, 8, 9, 10, 11, 13, 14, 16, 19 and 20.  A court may

22

23  [39]   Letter from Glad to Proctor, dated August 29, 2007, Proctor Dec. Ex. 2.
    [40]   This prejudice could be tempered if Mattel had sufficient interrogatories to

24  assert a contention interrogatories seeking the factual basis for each affirmative
    defense, the persons with knowledge of those facts and the documents supporting

25  each defense.  The Court, however, has limited Mattel to 50 interrogatories.

26  February 12, 2007 Minute Order re Scheduling Conference, Proctor Dec. Ex. 18.  In
    light of the complexity of the consolidated cases, Mattel will seek and demonstrate

27  its need for not only additional interrogatories, but additional depositions.

28

EXHIBIT _8_ PAGE _204_

1   grant partial summary judgment on an affirmative defense pursuant to Rule 56 when

2   there is no "genuine issue as to any material fact and [] the moving party is entitled to

3   judgment as a matter of law." See Fed. R. Civ. P. 56(c).  The Supreme Court has noted

4   that "the question whether a particular affirmative defense is sufficiently supported by

5   testimony to go to the jury may often be resolved on a motion for summary judgment."

6   U.S. v. Bailey, 444 U.S. 394, 412 n.9 (1980);  Applied Elastometrics, Inc. v. Z-Man

7   Fishing Products, Inc., 2007 WL 2814646, at *6 (N.D. Cal. 2007) (granting partial

8   summary judgment against affirmative defense).  "One of the principal purposes of the

9   summary judgment rule is to isolate and dispose of factually unsupported claims or

10  defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

11       Here, MGA alleged an unclean hands defense in its original answer in

12  intervention.[41]  Nevertheless, in its initial disclosures, which were supplemented as of

13  September 21, 2007, after MGA served its Amended Answer, MGA failed to identify

14  either witnesses or documents that supported its unclean hands defense (although it did

15  identify documents ostensibly supporting the claims in its unfair competition

16  complaint).[42]  See Fed. R. Civ. P. 26(a)(1) (requiring the disclosure of witnesses and

17  documents relating to "claims *and defenses*") (emphasis added).  For example, MGA

18  identified no witness or document related to Zapf, Smoby, Polly Pocket, creation of

19  negative press or publicity about MGA or its products, funding Market research or

20  studies that portray Bratz or MGA negatively, negative references on Mattel's "We

21  Believe In Girls" website, assisting parties in other lawsuits, obtaining MGA trade

22  secrets, inducing customers to breach confidentiality agreements, coercing Mattel

23  employees to accept restrictive covenants and non-compete clauses, or delaying suing

24

25

26  [41]   MGA's Answer in Intervention at 7, Proctor Dec. Ex. 19.
27  [42]   See generally MGA Entertainment, Inc.'s Supplemental Disclosures and
     MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V. and Larian's
     Initial Disclosures dated September 21, 2007, Proctor Dec. Ex. 20.

28
                                        EXHIBIT _8_ PAGE _205_

1   Carter Bryant.[43]  It thus follows that Mattel must conclude that MGA has no evidence

2   supporting its claims—or at least no evidence disclosed to Mattel.[44]

3           Once the moving party has demonstrated the absence of evidence supporting the

4   non-moving party's defenses, it is the non-moving party's burden to "go beyond the

5   pleadings and . . . designate 'specific facts showing that there is a genuine issue for

6   trial.'"  Celotex Corp., 477 U.S. at 324.  It is MGA's burden to come forward with

7   sufficient evidence to create a genuine issue of material fact on each of its affirmative

8   defenses.  Id.; see also Castaic Lake Water Agency v. Whittaker Corp., 272 F. Supp. 2d

9   1053, 1080 (C.D. Cal. 2003).  This MGA cannot do, as its own initial discloses

10  confirm.  Because MGA cannot establish with admissible evidence the elements of its

11  affirmative defenses, partial summary judgment is warranted.

## Conclusion

13          Mattel respectfully requests that the Court strike the identified Affirmative

14  Defenses or, alternatively, grant partial summary judgment against them.

15  DATED:  October 9, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

17                                   By _____
18                                      Jon D. Corey
                                        Attorneys for Mattel, Inc.

---

[43]   MGA's Amended Answer, at 20-21, Proctor Dec. Ex. 5.
[44]   MGA identified some witnesses who may possess knowledge related to MGA's alleged defenses, but identifies for no witness the "subject of the information" that he or she may possess. Such vague disclosures are insufficient. Fed. R. Civ. P. 26(a)(1); see Lobato v. Ford, 2007 WL 2593485, at *5 (D. Colo. 2007) (ruling that "the disclosing party must provide more than a perfunctory statement that the identified person has information "about the case.").

EXHIBIT _8_ PAGE _206_

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)
                                          Consolidated with
12                     Plaintiff,         Case Nos. CV 04-09059 & CV 05-2727

13        vs.                            MATTEL, INC.'S REPLY TO MGA
                                          ENTERTAINMENT, INC.'S
14  MATTEL, INC., a Delaware             OPPOSITION TO MOTION TO:
    corporation,
15                                        (1) TO STRIKE AFFIRMATIVE
                                          DEFENSES (NOS. 2, 8, 9, 10, 11, 13, 14,
16                     Defendant.         16, 18, 19 AND 20) OF MGA
                                          ENTERTAINMENT, INC., MGA
17                                        ENTERTAINMENT (HK) LIMITED,
                                          AND MGAE DE MEXICO S.R.L. DE
18  AND CONSOLIDATED ACTIONS             C.V. UNDER FED. R. CIV. P. 12(F), OR
                                          IN THE ALTERNATIVE; AND
19
                                          (2)  FOR PARTIAL SUMMARY
20                                        JUDGMENT

21                                        Date:   November 19, 2007
                                          Time:   10:00 a.m.
22                                        Place:  Courtroom 1

23                                        Phase One
                                          Discovery Cut-Off:   January 28, 2008
24                                        Pre-Trial Conference: May 5, 2008
                                          Trial Date:          May 27, 2008

25

26

27

28

EXHIBIT _9_ PAGE _207_

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................ 1

I.   MGA'S UNCLEAN HANDS DEFENSE SHOULD BE STRICKEN ............ 1

   A.   The Court Has Authority To Strike MGA's Deficient Defense ............. 1

   B.   The Unclean Hands Defense Is Not Related To The Counterclaims ............................................................................. 2

      1.   MGA Elected Not to Justify (Nor Could It) How Certain Allegations Directly Related To Mattel's Counterclaims............. 2

      2.   Allegedly Similar Misconduct Is Not Related Misconduct ......... 5

   C.   MGA's Unclean Hands Defense Is Otherwise Deficient........................ 6

      1.   Privileged Conduct Cannot Be Unclean Hands ......................... 6

      2.   Conduct Allegedly Directed To Third Parties States No Unclean Hands Defense................................................................ 7

      3.   MGA Has No Cognizable Unclean Hands Defense to RICO..................................................................................... 8

      4.   No Unclean Hands Defense Lies To The Copyright Claim......... 8

II.  MGA'S ESTOPPEL, WAIVER, AND ACQUIESCENCE DEFENSES ARE INSUFFICIENT AS A MATTER OF LAW ................................... 9

III. MANY OF MGA'S DEFENSES DO NOT PROVIDE FAIR NOTICE.......... 9

IV.  SUMMARY JUDGMENT IS WARRANTED ..................................... 10

EXHIBIT 9 PAGE 208

1

## **TABLE OF AUTHORITIES**

2
**Page**

3
### **Cases**

4
Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.,
5
   1996 WL. 467293 (N.D. Cal. July 24, 1996) ...................................................... 1

6
Alfa Leisure, Inc. v. King of the Road,
7
   2004 WL. 1375684 (C.D. Cal. 2004) ........................................................... 11

8
American Home Assurance Co. v. Pope,
   2005 WL. 1312975 (W.D. Mo. June 1, 2005) ............................................... 5

9
Bieter Co. v. Blomquist,
   848 F. Supp. 1446 (D. Minn. 1994) ............................................................. 8

10

11
Cal. Dept. of Toxic Substances Control v. Alco Pac., Inc.,
   217 F. Supp. 2d 1028 (C.D. Cal. 2002) ....................................................... 2

12
Celotex Corp. v. Catrett,
   477 U.S. 317 (1986) .................................................................................. 10

13

14
Cleanmaster Indus., Inc. v. Sandra Shewry,
   491 F. Supp. 2d 937 (C.D. Cal. April 7, 2007) ........................................... 11

15
D.S. America (East), Inc. v. Chromagrafx Imaging Systems, Inc.,
   873 F. Supp. 786 (E.D.N.Y. 1995) ............................................................ 10

16

17
Daingerfield Island Protective Soc'y v. Babbitt,
   40 F.3d 442 (D.C. Cir. 1994) ..................................................................... 10

18
F.T.C. v. Medicor LLC,
   2001 WL. 765628 (C.D. Cal. Jan. 26, 2001) ............................................. 10

19

20
Federal Ins. Co. v. Burlington Northern & Santa Fe Ry. Co.,
   270 F. Supp. 2d 1183 (C.D. Cal. 2003) ..................................................... 11

21
First Beverages, Inc. v. Royal Crown Cola Co.,
   612 F.2d 1164 (9th Cir. 1980) ..................................................................... 8

22

23
Geraghty & Miller, Inc. v. Conoco, Inc.,
   234 F.3d 917 (5th Cir. 2000) ...................................................................... 10

24
Germo Mfg. Co. v. McClellan,
   107 Cal. App. 532 (1930) ......................................................................... 4, 7

25

26
Goerhring v. Chapman Univ.,
   121 Cal. App. 4th 353 (2004) ...................................................................... 9

27
Heller Fin., Inc. v. Midwhey Powder Co.,
   883 F.2d 1286 (7th Cir. 1989) ................................................................... 10

28

-ii-

EXHIBIT 9 PAGE 209

1   Homami v. Iranzadi,
2       211 Cal. App. 3d 1104 (1989) ........................................................ 8

3   Insurance Co. of N. Am. v. Liberty Mutual Ins. Co.,
        128 Cal. App. 3d 297 (1982) .......................................................... 2
4
    Intel Corp. v. Hyundai Elec. Am., Inc.,
5       692 F. Supp. 1113 (N.D. Cal. 1987) ............................................... 1

6   Kendall-Jackson Winery, Ltd. v. Superior Court,
        76 Cal. App. 4th 970 (1999) ..................................................... 3, 5
7
    Liew v. Official Receiver and Liquidator (Hong Kong),
8       685 F.2d 1192 (9th Cir. 1982) ....................................................... 1

9   Lucent Tech., Inc. v. Gateway, Inc.,
        2007 WL 2900484 (S.D. Cal. Oct. 1, 2007) .................................... 7
10
    Magnesystems, Inc. v. Nikken, Inc.,
11      933 F. Supp. 944 (C.D. Cal. 1996) ................................................ 5

12  Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys.,
        2005 WL 975773 (S.D. Fla. March 4, 2005) ................................ 10
13
    MicroStrategy Inc. v. Business Objects, S.A.,
14      331 F. Supp. 2d 396 (E.D. Va. 2004) ............................................ 5

15  Morgan Stanley DW Inc. v. Rothe,
        150 F. Supp. 2d 67 (D.D.C. 2001) ................................................ 5
16
    In re Napster, Inc. Copyright Litig.,
17      191 F. Supp. 1087 (N.D. Cal. 2002) .............................................. 8

18  In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig.,
        636 F. Supp. 1138 (C.D. Cal. 1986) .............................................. 7
19
    Network Caching Tech., LLC v. Novell, Inc.,
20      2001 WL 36043487 (N.D. Cal. Dec., 2001) .................................. 1

21  Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP,
        133 Cal. App. 4th 658 (2005) ........................................................ 3
22
    Pisconeri v. City of Ontario,
23      95 Cal. App. 4th 1037 (2002) ....................................................... 2

24  Qarbon.com Inc. v. eHelp Corp.,
        315 F. Supp. 2d 1046 (N.D. Cal. 2004) ......................................... 1
25
    RTC v. Hecht,
26      818 F. Supp. 894 (D. Md. 1992) ................................................... 6

27  Raychem Corp. v. PSI Telecomm.,
        1995 WL 108193 (N.D. Cal. March, 6 1995) ................................ 2
28
    Richards v. Neilsen Freight Lines,
        810 F.2d 898 (9th Cir. 1987) ....................................................... 11

07209/2289287.9

EXHIBIT __9__ PAGE _210_

1  Ross v. CCS Int'l Ltd.,
2     2000 WL. 1804103 (S.D.N.Y. Dec. 8, 2000)..............................9, 10

3  Rudzinski v. Met. Life Ins. Co.,
      2007 WL. 2973830 (N.D. Ill. October 4, 2007)..............................5
4
   SEC v. McCaskey,
5     56 F. Supp. 2d 323 (S.D.N.Y. 1999)..............................2

6  Scott v. Federal Life Ins. Co.,
      200 Cal. App. 2d 384 (1962)..............................9
7
   SEC v. Sands,
8     902 F. Supp. 1149 (C.D. Cal. 1995)..............................2

9  SecuriMetrics, Inc. v. Hartford Cas. Ins. Co.,
      2005 WL. 2463749 (N.D. Cal. Oct. 4, 2005)..............................10
10
   Survivor Prod. LLC v. Fox Broadcasting Co.,
11    2001 WL. 35829270 (C.D. Cal. June 12, 2001)..............................2

12 Synopsys, Inc. v. Magma Design Automation, Inc.,
      2007 WL. 420184 (N.D. Cal. Feb. 6, 2007)..............................1
13
   Tatum v. City and County of San Francisco,
14    441 F.3d 1090 (9th Cir. 2006)..............................12

15 Vacco Indus., Inc. v. Van Den Berg,
      5 Cal. App. 4th 34  (1992)..............................3, 4
16
   Waterloov Gutter Prot. Sys. Co. v. Absolute Gutter Prot., LLC.,
17    64 F. Supp. 2d 398 (D.N.J. 1999)..............................7

18 Wong v. United States,
      373 F.3d 952 (9th Cir. 2004)..............................10
19
   Woodfield v. Bowman,
20    193 F.3d 354 (5th Cir. 1999)..............................10

21 Xilinx, Inc. v. Altera Corp.,
      1994 WL. 782236 (N.D. Cal. Feb. 8, 1994)..............................1
22

23                          **Statutes**

24 Cal. Civ. Code § 47(b)..............................6

25 Fed. R. Civ. P., 56(c)..............................11

26 Fed. Civ. Proc. Before Trial ¶ 14:144 (2007)..............................11

27

28

07209/2289287.9

EXHIBIT 9 PAGE 211

1

## Other Authorities

Local Rule 8 ................................................................................................. 9

Local Rule 12(b)(6) ..................................................................................... 2

Local Rule 56(f) .................................................................................. 1, 11, 12

Local Rule 56-3 .......................................................................................... 11

Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1380 (3d ed. 2004) ................ 6

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 9 PAGE 212

**Preliminary Statement**

Unclean hands defenses are not "tit-for-tat." Mattel accused MGA of stealing Mattel trade secrets, interfering with its employee contracts, and infringing its copyrights. MGA's unclean hands defense accuses Mattel of engaging in purportedly similar acts. Unless the allegations are "directly related" to Mattel's claims, however, the defense fails. Here, MGA confuses "similar" and "related." Tacitly recognizing this fatal flaw, MGA seeks to characterizes the dispute as a "battle" between MGA and Mattel, effectively asking the Court to ignore the law and condone a free-for-all. MGA's opposition thus exposes the defense for what it is—an effort by MGA to unduly expand discovery that Judge Infante already found to be improper, avoid obtaining the necessary leave of Court to assert new claims and put before a jury every supposed bad act of Mattel that it can conjure up. Motions to strike are meant for such circumstances.

In responding to Mattel's alternative motion for summary judgment, the law gave MGA two options: (1) present evidence to create a triable issue or (2) satisfy Rule 56(f). MGA has done neither. It protests that proof supporting its defenses exists, but fails to present (or even identify) any. Indeed, MGA does not challenge a single aspect of Mattel's Separate Statement. Nor does MGA try to meet Rule 56(f), undoubtedly because it is the party that would possess any relevant evidence if it existed. MGA's dual omissions are fatal, and Mattel's motion should be granted.

**I.   MGA'S UNCLEAN HANDS DEFENSE SHOULD BE STRICKEN**

**A.   The Court Has Authority To Strike MGA's Deficient Defense**

Contrary to MGA's insinuations, courts strike deficient unclean hands defenses. E.g., Liew v. Official Receiver and Liquidator (Hong Kong), 685 F.2d 1192, 1195 (9th Cir. 1982) (affirming order striking unclean hands defense).[1] MGA cites a single case

---

[1]   See also Qarbon.com Inc. v. eHelp Corp., 315 F. Supp. 2d 1046, 1049-50 (N.D. Cal. 2004) (granting motion to strike affirmative unclean hands defense, among others); Intel Corp. v. Hyundai Elec. Am., Inc., 692 F. Supp. 1113, 1117 (N.D. Cal. 1987) (same); Synopsys, Inc. v. Magma Design Automation, Inc., 2007 WL 420184 (N.D. Cal. Feb. 6, 2007) (denying motion for reconsideration of decision to strike unclean hands defense); Network Caching Tech., LLC v. Novell, Inc., 2001 WL 36043487, at *4 (N.D. Cal. Dec., 2001) (striking (footnote continued)

EXHIBIT 9 PAGE 213

1  suggesting that unclean hands defenses should not be stricken, but there the court struck

2  the defense, along with eleven other defenses. <u>SEC v. Sands</u>, 902 F. Supp. 1149, 1166

3  (C.D. Cal. 1995). Also contrary to MGA's assertion, Mattel did cite authority "in which

4  an unclean hands defense raised against a private plaintiff was stricken." This included

5  <u>Survivor Prod. LLC v. Fox Broadcasting Co.</u>, 2001 WL 35829270, at * 5 (C.D. Cal.

6  June 12, 2001), where the court struck an unclean hands defense that, like MGA's, was

7  unrelated to a copyright claim.

8      **B.    The Unclean Hands Defense Is Not Related To The Counterclaims**

9      MGA's argument that unidentified factual disputes save its deficient defense

10  from being stricken is wrong. MGA concedes that the unclean hands allegations must

11  be taken as true for purposes of a motion to strike. Opp. at 7 (citing <u>Cal. Dept. of Toxic</u>

12  <u>Substances Control v. Alco Pac., Inc.</u>, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002)).[2]

13  Mattel agrees (although a different standard applies to summary judgment), and in this

14  regard the standard is no different than dismissal under <u>Rule</u> 12(b)(6). Taking MGA's

15  allegations as true, the defense fails as a matter of law as discussed below.

16      **1.    MGA Elected Not to Justify (Nor Could It) How Certain**

17      **Allegations Directly Related To Mattel's Counterclaims**

18      Rather than focus on the appropriate standard—namely, whether the acts alleged

19  as unclean hands directly relate to Mattel's claims — MGA argues that its catalog of

20  bad acts relate to Mattel's counterclaims because the consolidated cases are a "battle"

21  between MGA and Mattel. That is not the law. "The misconduct that brings the clean

22

23  unclean hands defense); <u>Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.</u>, 1996 WL 467293, at *13 (N.D. Cal. July 24, 1996) (same); <u>Raychem Corp. v. PSI Telecomm.</u>, 1995 WL

24  108193, at *5 (N.D. Cal. March, 6 1995) (same); <u>Xilinx, Inc. v. Altera Corp.</u>, 1994 WL 782236, at *3-4 (N.D. Cal. Feb. 8, 1994) (same).

25     [2]  The cases MGA cites to argue that the unclean hands defense is "fact dependent" are also inapposite. <u>SEC v. McCaskey</u>, 56 F. Supp. 2d 323 (S.D.N.Y. 1999), did not involve an

26  unclean hands defense at all. <u>Insurance Co. of N. Am. v. Liberty Mutual Ins. Co.</u>, 128 Cal. App. 3d 297, 307 (1982), held that the allegations in plaintiff's complaint were sufficient to

27  avoid a demurrer on defendant's unclean hands defense. <u>Pisconeri v. City of Ontario</u>, 95 Cal. App. 4th 1037, 1053 (2002), found that a unclean hands defense did not bar the trial court

28  from granting plaintiff's petition for writ of mandate.

EXHIBIT ___9___ PAGE _214_

1    hands doctrine into play must relate directly to the cause at issue.  Past improper

2    conduct or prior misconduct that only indirectly affects the problem before the court

3    does not suffice. . . .  The misconduct 'must relate directly to the transaction concerning

4    which the complaint is made, i.e., it must pertain to the very subject matter involved

5    and affect the equitable relations between the litigants.'"  Kendall-Jackson Winery, Ltd.

6    v. Superior Court, 76 Cal. App. 4th 970, 979 (1999); see Peregrine Funding, Inc. v.

7    Sheppard Mullin Richter & Hampton LLP, 133 Cal. App. 4th 658, 680-81 (2005).

8        Here, the "cause at issue" and the "subject matter involved" are Mattel's

9    counterclaims: (1) MGA stole *Mattel's* trade secrets, (2) MGA infringed *Mattel*

10   copyrights, (3) MGA interfered with agreements between *Mattel* and its employees, and

11   (4) MGA made repeated false representations to *Mattel's* customers about *Mattel's*

12   products.  MGA's opposition spends less than two pages trying to establish the required

13   direct connection between Mattel's claims and its litany of listed supposed bad acts.

14   Opp. at 12-13.  Indeed, MGA makes *no* attempt to explain the supposed connection

15   between Mattel's claims and the vast majority of those acts,[3] thus conceding that they

16   do not relate and should be stricken.

17

18   _____

19       [3]  The allegations MGA makes no effort to show have any direct connection to Mattel's
     counterclaims include its accusations that Mattel: (1) engaged in "efforts to infringe and dilute
20   MGA's trade dress, copy MGA's products, packaging, themes, and advertising;" (2) interfered
     "with MGA's acquisition of or investment in Zapf Creation AG;" (3) engaged in "efforts or
21   intent to interfere with business dealings or contractual relations between MGA and Smoby
     Group;" (4) influenced "Nickelodeon to reject MGA advertisements or to limit time slots for
22   advertisements;" (5) engaged in "monitoring, 'spying on' or gaining knowledge of MGA's
     trade secrets, non-public information, non-public activities, unreleased products, and product
23   development," (6) "gain[ed] access, or attempt[ed] to gain access, to MGA showrooms, Plan-
     o-Grams, merchandising displays, Toy Fair displays on false pretenses," (7) "wrongfully
24   obtain[ed] MGA's cost and sales information through Mattel-employed category managers at
     retailers," (8) "induc[ed] non-party customers to breach confidentiality agreements with MGA
25   and divulge non-public information about MGA's unreleased products;" (9) "covertly
     investigat[ed] MGA, its officers and employees, and their family members;" (10) "contact[ed]
26   persons under false pretenses in order to interrogate them about Bratz and this litigation;" and
     (11) delay[ed] in suing Carter Bryant."  Amended Answer at 20-21.

27

28

-3-

EXHIBIT 9 PAGE 215

1      The few alleged acts that MGA argues are related to Mattel's claims[4] fare no

2  better, as Vacco Indus., Inc. v. Van Den Berg, 5 Cal. App. 4th 34 (1992), illustrates.

3  Vacco accused defendant and his associates of trade secret theft and violation of non-

4  competition agreements.  Defendant invoked unclean hands because Vacco wrongfully

5  terminated him.  The appellate court ruled the termination could not form the basis for

6  unclean hands.  "Vacco's misconduct in terminating Van Den Berg's employment for a

7  pretextual reason *does not implicate the equities between the parties arising our of the*

8  *willful and malicious tortious misconduct alleged in plaintiffs' complaint* and found by

9  the jury to be true."  Id. at 53 (emphasis added).  The court distinguished between the

10  parties' employment relationship and defendant's obligation to refrain from a tortious

11  invasion of Vacco's proprietary rights.  Id.  To find Vacco's termination to justify an

12  unclean hands defense to theft and misappropriation claims, the court reasoned, would

13  mean "every terminated employee could justify and defend charges of theft and

14  misappropriation of his former employer's proprietary interests by establishing breach

15  or wrongful termination of an express or implied employment contract. . . .  Such a

16  result finds no support in law or common sense" and would "encourage unfair

17  competition and theft of trade secrets by every discharged employee who felt wronged

18  by an employer's act."  Id.; see Germo Mfg. Co. v. McClellan, 107 Cal. App. 532, 545

19  (1930) (plaintiff was entitled to enjoin former agents and employees from using trade

20  secrets stolen during the course of employment even though plaintiff was "guilty of

21  acts and conduct in dealing with others" and did "not measure up to the moral code of

22  square dealing").

23

24  ───────────────────

25  [4]   MGA attempts to forge a connection between only the following allegations and
    Mattel's counterclaims:  "Mattel's efforts to create negative publicity or press about MGA
26  [and] MGA products," "Mattel's efforts to include negative references to MGA or Bratz on
    Mattel's 'We Believe in Girls' website," "Mattel's falsely inflating its Barbie sales figures in an
27  effort to mislead the public and retailers," and Mattel supposed "interfering in dealings with
    customers, meddling in relations with employees and employee agreements, disparaging the
28  others' products, stealing trade secrets, and falsely inflating performance figures."  Opp. at
    12:18-22, 13:6-8, 20-23.

EXHIBIT 9 PAGE 216

1    Here, as in <u>Vacco</u>, none of MGA's alleged misconduct is any more related to

2  Mattel's trade secret theft or other claims than Vacco and Van Den Berg's employment

3  relationship. Indeed, under this authority, MGA's allegations regarding Mattel's

4  ostensible conduct towards its employees specifically fail to state a defense. <u>See</u>

5  Amended Answer at 21:1-15 (allegedly coercing employees to accept restrictive

6  covenants and non-compete clauses and delaying in suing Carter Bryant).

**2.   <u>Allegedly Similar Misconduct Is Not Related Misconduct</u>**

8    . Because it cannot show that the alleged improper conduct relates to Mattel's

9  claims, MGA principally relies on the fact that it has accused Mattel of "remarkably

10  similar misconduct." Opp. at 13. Similarity is the only thing that MGA's table (on pp.

11  5-6 of the Opposition) is supposed to show. That conduct may be similar does not

12  make it "directly related" to Mattel's counterclaims. <u>See MicroStrategy Inc. v. Business

13  Objects, S.A.</u>, 331 F. Supp. 2d 396, 419 (E.D. Va. 2004) (allegations that plaintiffs

14  engaged in conduct similar to defendant was not sufficient to support unclean hands);

15  <u>Morgan Stanley DW Inc. v. Rothe</u>, 150 F. Supp. 2d 67, 80 (D.D.C. 2001) (same);

16  <u>Magnesystems, Inc. v. Nikken, Inc.</u>, 933 F. Supp. 944, 953 (C.D. Cal. 1996)

17  (defendant's allegation that plaintiff infringed *defendant's* patent not sufficient basis for

18  unclean hands against plaintiff's claim that defendant infringed *plaintiff's* patent).

19    Notably, MGA provides no authority in which a court found similar, or even

20  "remarkably similar," allegations sufficient for the defense to be "related." <u>Kendall-

21  Jackson</u>, which MGA cites, does not hold that "similar," but not related, conduct by a

22  plaintiff justifies an unclean hands defense. Furthermore, in that case, the court ruled

23  that Kendall-Jackson's underlying copyright infringement suit was based on allegations

24  that Gallo "us[ed] a variety of unfair marketing strategies," similar to the allegedly

25  unfair "marketing practices that support[ed] [Kendall-Jackson's] unclean hands

26  defense." 76 Cal. App. 4th at 987-88. Noting that "a malicious prosecution lawsuit [is]

27  in and of itself a relitigation of the prior action," the court found a triable issue of fact as

28  to whether *Gallo's* allegedly unfair business practices that gave rise to the original

EXHIBIT 9 PAGE 217

1   action were directly related to *Gallo's* allegedly unfair business practices that formed

2   the basis of the unclean hands defense. Id. at 988. Kendall-Jackson does not hold that

3   unclean hands allegations based on *plaintiff's* unfair business practices are a defense to

4   plaintiff's causes of action based on *defendant's* unfair business practices.[5]

5      **C.**   **MGA's Unclean Hands Defense Is Otherwise Deficient**

6           **1.**   **Privileged Conduct Cannot Be Unclean Hands**

7        MGA quarrels over whether its unclean hands defense must assert actionable

8   conduct. No matter. The underlying conduct must be *improper*. Because some of the

9   conduct MGA alleged is privileged, it is not *improper* and the defense fails.

10        Statements protected by the First Amendment are not improper. Mot. at 10. To

11   avoid First Amendment protection, MGA must accuse Mattel of making false

12   statements in connection with alleged negative publicity about MGA or its products,

13   including on Mattel's "We Believe in Girls" web site or assisting other parties' lawsuits

14   against MGA. MGA has not done so, nor can it. Recognizing this, MGA argues that

15   the Court must deny the Motion because truth or falsity of the allegations is disputed.

16   Opp. at 16. But the allegations' truth or falsity is not before the Court. MGA did not

17   allege that any of Mattel's statements are false (nor can it).[6]

18        The litigation privilege protects Mattel's assistance of "parties in lawsuit against

19   MGA." Cal. Civ. Code § 47(b). MGA asserts that Judge Manella ruled that "'neither

20   the litigation privilege nor the Noerr-Pennington doctrine provides a basis for striking'

21

22       [5]  While Mattel believes the entire defense should be stricken, the Court may strike portions of it. Rudzinski v. Met. Life Ins. Co., 2007 WL 2973830, at *3 (N.D. Ill. October 4, 2007) (striking portions of defense); American Home Assurance Co. v. Pope, 2005 WL 1312975, at *1 (W.D. Mo. June 1, 2005) (same); RTC v. Hecht, 818 F. Supp. 894, 900 (D. Md. 1992) (same).

24       [6]  MGA cannot salvage its defense by arguing that it accused Mattel of making false statements in its Complaint. Compare Amended Answer at 20:1–21:16 with MGA Complaint ¶ 79 (accusing Mattel of making false statements to a major US retailer about MGA offering below-market pricing to another retailer and making false statements to a UK retailer about MGA discontinuing a product line). Not only are those unrelated on their face to the allegations made in the unclean hands defense, but MGA can scarcely cure the fatal defects in its Answer to Mattel's counterclaims through a different pleading. See 5C Wright & Miller, Federal Practice & Procedure § 1380 (3d ed. 2004) (matters outside of the pleadings should not normally be considered in ruling on a motion to strike).

EXHIBIT 9 PAGE 218

1   allegations of "bad-faith conduct'" because whether conduct was in good-faith or bad-

2   faith is a factual question. Opp. at 16. She made that ruling solely in the context of

3   *pre*-litigation conduct, specifically demand letters. Whether conduct is undertaken in

4   bad faith is pertinent *only before litigation started.* Here, MGA accused Mattel of

5   assisting unidentified parties in existing "lawsuits." The litigation privilege protects

6   post-litigation conduct, like the conduct MGA alleges, *even if in bad faith.* Mattel

7   identified this distinction in its Motion (at p. 11), and Judge Manella drew that

8   distinction in the paragraph following the one that MGA cites. Aug 26, 2005 Order at

9   22. Accordingly, MGA's allegation that Mattel's supposed assistance of unidentified

10  parties in "lawsuits against MGA" constitutes unclean hands must be stricken.[7]

11              **2.    Conduct Allegedly Directed To Third Parties States No**

12                     **Unclean Hands Defense**

13          By definition, conduct toward *non-parties* does not relate to the counterclaims or

14  affect the equitable relationship between the *parties*. Mot. at 12-13; Lucent Tech., Inc.

15  v. Gateway, Inc., 2007 WL 2900484, at *9 (S.D. Cal. Oct. 1, 2007) (alleged improper

16  conduct in marketplace and in governmental disclosures did not give rise to unclean

17  hands defense between litigants); Germo Mfg. Co., 107 Cal. App. 3d at 539 (improper

18  conduct to third parties within industry did not give rise to unclean hands defense as

19  between the litigants).[8]

20  _____

    [7]   MGA notes that, in some circumstances, federal law may limit the scope of a state's
21  protective privileges. See Opp. 16 n.5. While the cases cited (on the scope of state privileges
    in section 1983 actions) might be apposite if this case were a civil rights case, it is clear that
22  state litigation privileges will frequently apply where, as here, the privilege will not undermine
    important federal policies or constitutional rights. See Waterloov Gutter Prot. Sys. Co. v.
23  Absolute Gutter Prot., LLC., 64 F. Supp. 2d 398, 411-415 (D.N.J. 1999) (applying state
    litigation privilege to bar claims of unfair competition against alleged patent infringer). The
24  privileges relied upon by Mattel include the First Amendment as well. MGA cites no
    authority that effectively repeals state litigation privileges in federal court, and to the contrary
25  it is beyond dispute that such privileges are consistent with federal law.

26      [8]   Tacitly conceding this defect, MGA repeats its argument that the Court should permit
    MGA's defense to survive because MGA alleged in its Complaint that Mattel's acts with
27  regard to third parties were actually aimed at MGA. Opp. at 17. As a comparison of the
    actual allegations show, however, MGA's defense purports to assert numerous acts mentioned
28  nowhere in the Complaint. Furthermore, under the law as shown above, the Answer must
    stand alone and cannot be saved by reference to other documents.

07209/2289287.9

                                        -7-

EXHIBIT  9  PAGE  219

### 3.   MGA Has No Cognizable Unclean Hands Defense to RICO

MGA provides no authority that unclean hands is a cognizable defense to RICO claims.  Mattel's authority holds that it is not.  In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig., 636 F. Supp. 1138, 1156 (C.D. Cal. 1986), held that the fact that the plaintiff "may to some extent be embarking on this litigation with unclean hands should not by itself prohibit the [plaintiff] from bringing an action that otherwise advances RICO's broad anti-racketeering policies."  Bieter Co. v. Blomquist, 848 F. Supp. 1446, 1449 (D. Minn. 1994), likewise held that "*unclean hands* is not a valid defense to [plaintiff's] RICO claims."[9]

### 4.   No Unclean Hands Defense Lies To The Copyright Claim

The unclean hands defense to copyright infringement applies in narrow circumstances — unduly restrictive licensing or antitrust violations — which MGA does not even argue are present here.  In re Napster, Inc. Copyright Litig., 191 F. Supp. 2d 1087, 1102-05 (N.D. Cal. 2002).  Instead, MGA cites a 1992 unpublished district court case and one from Iowa, and concedes that its only alleged basis for the defense to the infringement claim is "willful non-retention and destruction of documents" and "wait[ing] years to bring suit."  Opp. at 18:15-16.  MGA's defense fails as to Mattel's copyright claims.[10]

---

[9]   MGA's attempt to distinguish these cases because its unclean hands defense is ostensibly different than an *in pari delicto* defense is irrelevant, given that MGA's second affirmative defense is "unclean hands/*in pari delicto*" and that Bieter specifically referred to the "unclean hands" defense.  848 F. Supp. at 1449.  Moreover, *in pari delicto* is less applicable here than unclean hands.  To apply, MGA must allege that Mattel was complicit in MGA's trade secret theft, RICO violations, infringement and interference with contracts with Mattel employees.  MGA does not suggest this, nor can it, so the defense — whatever it is called — fails.  See First Beverages, Inc. v. Royal Crown Cola Co., 612 F.2d 1164, 1172 (9th Cir. 1980) ("The doctrine of *in pari delicto* is that a plaintiff who has participated in wrongdoing cannot recover when he suffers injury as a result of the wrongdoing.") (citing Memorex Corp. v. IBM, 555 F.2d 1379, 1381 (9th Cir. 1977)); Homami v. Iranzadi, 211 Cal. App. 3d 1104, 1112 (1989) (refering to *in pari delicto* as the "familiar cry of plaintiffs who find that they have been wronged by their companions in illegal ventures").

[10]   Judge Infante ruled that MGA was not entitled to discovery on acts alleged in the unclean hands defense because they were irrelevant to the parties' claims.  MGA argues the Court should ignore those Orders because they were "well-before Mattel asserted its counterclaims" (Mot. at 8-10), but that is demonstrably false.  Mattel lodged its First Amended Complaint on November 20, 2006, and was granted leave to file it on January 11, 2007. (footnote continued)

EXHIBIT __9__ PAGE _220_

## II.   MGA'S ESTOPPEL, WAIVER, AND ACQUIESCENCE DEFENSES ARE INSUFFICIENT AS A MATTER OF LAW

Contrary to MGA's contention, the Court need not resolve factual disputes to strike MGA's estoppel, waiver and acquiescence defenses. Those defenses fail even if the allegations are accepted as true. The gravamen of each is that Mattel delayed in bringing suit. But mere delay does not constitute estoppel, waiver or acquiescence. Mot. at 15-19. MGA does not (and cannot) allege that it reasonably believed Mattel intended MGA to act or rely upon Mattel's alleged delay to support an estoppel, or that Mattel intentionally relinquished its rights as required to show waiver or acquiescence. E.g., Scott v. Federal Life Ins. Co., 200 Cal. App. 2d 384, 391 (1962) (party to be estopped must intend that his conduct be acted upon or that the party asserting the estoppel believed it was so intended); Goehring v. Chapman Univ., 121 Cal. App. 4th 353, 386 (2004) ("[W]aiver requires clear and convincing evidence of intentional relinquishment of a known right."); Ross v. CCS Int'l Ltd., 2000 WL 1804103, at *4 (S.D.N.Y. Dec. 8, 2000) (delay in asserting rights is not acquiescence or consent).[11]

## III.   MANY OF MGA'S DEFENSES DO NOT PROVIDE FAIR NOTICE

The Court should strike MGA's defenses of acts or omissions of others, failure to mitigate, abandonment, joint authorship, good faith, lack of authority, and lack of standing. Each consists of a conclusory sentence, with no elements and no factual basis,[12] and thus denies Mattel the fair notice that Rule 8 requires. Courts often strike affirmative defenses missing the necessary elements. Mot. at 17-21.

---

Notice of Lodging First Amended Complaint dated November 20, 2006, Supp. Corey Dec. Ex. 1; See Order Regarding Mattel's Motion for Leave to Amend, dated January 11, 2007, Proctor Dec. Ex. 12. Judge Infante entered his orders months later — on April 19, 2007 and May 22, 2007. Proctor Dec. Ex. 15, 16. And, MGA cannot refute on the merits here, and did not appeal to this Court, the substance of Judge Infante's rulings that the sought-after discovery strayed far beyond any claim or defense—confirming that the acts MGA now alleges as unclean hands are not related to Mattel's counterclaims (let alone directly related).

[11]   Rather than address these deficiencies, MGA argues that these three defenses provide fair notice. Opp. at 23. Mattel did not challenge these defenses on fair notice grounds.

[12]   Separately, MGA argues that its affirmative defenses should not be stricken because "in some instances [it] has provided multiple pages of factual detail," referring to pages 20-21 of (footnote continued)

EXHIBIT 9   PAGE 221

1    Ignoring authorities cited by Mattel,[13] MGA asserts that pleading a name alone is

2  enough (Opp. at 19-20), but the cases it cites are inapposite.  Wong v. United States,

3  373 F.3d 952 (9th Cir. 2004), holds that an *employment discrimination plaintiff* need

4  not plead all of the elements of a prima facie case because in that context it refers to a

5  specific *evidentiary* showing -- not a pleading requirement.  Id. at 969.  The case thus

6  could not be less pertinent here.[14]  Indeed, Woodfield v. Bowman, 193 F.3d 354 (5th

7  Cir. 1999), cited by MGA, rejects "title-pleading" when the defense is more

8  complicated or the factual basis is not apparent.  Id. at 362 ("baldly 'naming' the broad

9  affirmative defenses of 'accord and satisfaction' and 'waiver and/or release' falls well

10  short of the minimum particulars needed" to identify the affirmative defenses).  The

11  affirmative defenses Mattel challenges for lack of notice require more than a "bare

12  bones conclusory allegation" to provide fair notice.  See Merrill Lynch Bus. Fin. Servs.,

13  Inc. v. Performance Mach. Sys., 2005 WL 975773, at *12 (S.D. Fla. March 4, 2005)

14  (striking failure to mitigate defense pleaded without supporting facts); Ross v. CCS Int'l

15  Ltd., 2000 WL 1804103, at *4 (striking conclusory abandonment defense).[15]  They

16  should be stricken.

17  **IV.    SUMMARY JUDGMENT IS WARRANTED**

18    Mattel demonstrated the absence of evidence supporting MGA's Affirmative

19  ───────────────────

20  its Amended Answer.  Those pages contain only unclean hands and laches defenses, which Mattel does not challenge on notice grounds.

21    [13]  MGA neither addresses nor distinguishes F.T.C. v. Medicor LLC, 2001 WL 765628, at

22  *4 (C.D. Cal. Jan. 26, 2001); Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294-95 (7th Cir. 1989); nor D.S. America (East), Inc. v. Chromagrafx Imaging Systems, Inc., 873 F. Supp. 786, 797-98 (E.D.N.Y. 1995), which Mattel cited.

23    [14]  SecuriMetrics, Inc. v. Hartford Cas. Ins. Co., 2005 WL 2463749 (N.D. Cal. Oct. 4,

24  2005), does not dispense with an element-pleading requirement either.  There, the plaintiff attacked the defense because it failed to "fit the facts of the case" and did not "allege facts

25  demonstrating" the defense.  Id. at *6-7 (striking "policy provisions" and "breach of duties" defenses for failure to plead facts regarding which policy and contract provisions they were

26  based on).  The other decisions cited by MGA as approving "title-pleading" do so only when the name alone is sufficient to disclose the nature of the defense, such as a statute of

27  limitations.  See Geraghty & Miller, Inc. v. Conoco, Inc., 234 F.3d 917, 925 (5th Cir. 2000) (citing Daingerfield Island Protective Soc'y v. Babbitt, 40 F.3d 442, 444-45 (D.C. Cir. 1994)).

28    [15]  MGA also complains about Mattel's defenses, but they are not before the Court.

EXHIBIT 9 PAGE 222

1   Defense Nos. 2, 8-11, 13, 14, 16, 19 and 20.  Celotex Corp. v. Catrett, 477 U.S. 317,

2   323-24 (1986).   To avoid summary judgment, MGA was required to "present

3   significant probative evidence tending to support its claim or defense." Richards v.

4   Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Not only has MGA failed to

5   present "pleadings, depositions, answers to interrogatories and admissions on file,

6   together with affidavits" (Fed. R. Civ. P., 56(c)), but MGA does not even suggest one

7   specific factual dispute in connection with those defenses.  Without contrary evidence,

8   the Court should grant the motion.  Indeed, because MGA also did not present a

9   Statement of Genuine Issues in opposition to Mattel's motion, Local Rule 56-3 dictates

10  the same result.  "[T]he Court will assume that the material facts as claimed and

11  adequately supported by the moving papers are admitted to exist without controversy,

12  except to the extent that such material facts are (a) included in the 'Statement of

13  Genuine Issues' and (b) controverted by declaration or other written evidence *filed in*

14  *opposition to the motion.*" (Emphasis added).[16]

15       MGA argues that summary judgment is premature, but it in no way complies

16  with Rule 56(f), which that MGA must meet to avoid judgment on those grounds.  To

17  validly invoke Rule 56(f), MGA must submit a declaration showing: (1) facts

18  establishing that evidence controverting a material fact exists, (2) specific reasons why

19  such evidence cannot be presented, (3) how MGA would obtain such evidence, and (4)

20  how additional time will enable MGA to collect said evidence.  Hon. William W.

21  Schwarzer et al., Fed. Civ. Proc. Before Trial ¶ 14:144 (2007) (citing Rule 56(f) and

22  cases).  MGA fails to meet these requirements and could not do so in any event.  First,

23  any evidence of a direct relationship between Mattel's alleged misconduct toward MGA

24

25  [16]   See also Cleanmaster Indus., Inc. v. Sandra Shewry, 491 F. Supp. 2d 937, 941 n.1
    (C.D. Cal. April 7, 2007) (party opposing summary judgment must point to countervailing
26  evidence); Alfa Leisure, Inc. v. King of the Road, 2004 WL 1375684, at *3 (C.D. Cal. 2004)
    (granting summary judgment when non-moving party failed to comply with Local Rule 56-3);
27  Federal Ins. Co. v. Burlington Northern & Santa Fe Ry. Co., 270 F. Supp. 2d 1183, 1186-87
    (C.D. Cal. 2003) (noting that the party disputing facts must cite to specific evidence, and
28  finding facts undisputed when party offered no contrary evidence).

EXHIBIT _9_ PAGE _223_

1   and its counterclaims is unquestionably in MGA's own possession. Furthermore, this is
2   not a "recently filed affirmative defense," and MGA has had sufficient opportunity for
3   discovery.   MGA alleged an unclean hands defense in its original answer in
4   intervention some three years ago.  MGA has had well over a year-and-a-half to pursue
5   discovery. MGA also has known of the counterclaims for almost a year.[17]  Moreover,
6   MGA identifies no witnesses or documents that support its defenses, either in its
7   supplemental disclosures served less than two months ago or in its opposition here.[18]
8   This includes, in particular, a wholesale failure by MGA to show that MGA itself even
9   has any interest in Zapf or Smoby—evidence that would surely be in MGA's possession
10  if it existed—or to support any of the litany of other allegations it makes.[19]  Summary
11  judgment is thus warranted. Tatum v. City and County of San Francisco, 441 F.3d
12  1090, 1100-01 (9th Cir. 2006) (affirming grant of summary judgment and denial of
13  Rule 56(f) continuance when non-moving party failed to "identify by affidavit the
14  specific facts that further discovery would reveal and explain why those facts would
15  preclude summary judgment").

16  DATED:  November 12, 2007          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
17
18                                     By
                                          Jon D. Corey
19                                        Attorneys for Mattel, Inc.
20
21

---

22  [17]   November 20, 2006 Notice of Lodging First Amended Complaint, Corey Dec. Ex. 1.

23  [18]   MGA tries to identify individuals who possess facts related to MGA's unfair
    competition case, as if they were facts alleged in the unclean hands defense. Significantly,
24  MGA fails to identify a single, specific fact any one of these individuals has to support its
    defenses or to provide an affidavit from those witnesses. Moreover, MGA has not alleged as
25  an affirmative defense the "hiring and employment practices and policies of Mattel," Mattel's
    "interference with MGA's advertising efforts," "threats to and intimidation of retailers,
26  suppliers, licensees and distributors, manufacturers and former employees and freelances," or
    "improper influence of standard-setting and industry organization." These are allegations in
27  MGA's Complaint, not its Amended Answer. Compare MGA Complaint ¶¶ 75, 77, 80-98,
    113 with Amended Answer at 20-21, Proctor Dec. Ex. 5.

28  [19]   Amended Answer at 20-21, Proctor Dec. Ex. 5.

EXHIBIT  9  PAGE  224

# PAGES EXHIBIT 9 PAGE 225 TO 242 INTENTIONALLY LEFT BLANK

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

**PRIORITY SEND**
& ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES – GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                          Date:  July 2, 2007

Title:     CARTER BRYANT -v- MATTEL, INC.
             AND CONSOLIDATED ACTIONS
===========================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes                                   Theresa Lanza
          Courtroom Deputy Clerk                       Court Reporter

ATTORNEYS PRESENT FOR CARTER               ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                              John B. Quinn
                                           Brett Dylan Proctor
                                           Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:

Dale M. Cendali
Patricia Glaser

PROCEEDINGS:    MINUTE ORDER

       As set forth more fully herein, the Court hereby makes the following ruling regarding matters
heard on July 2, 2007:

(1)    The Court **GRANTS** Mattel's Motion re Trial Structure (docket #462);

(2)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Motion re Discovery Master's
       May 15, 2007, Order (docket #505);

(3)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Ex Parte Application

MINUTES FORM 90                                       Initials of Deputy Clerk _jh_
CIVIL – GEN                          1                Time: 01/15

EXHIBIT _10_ PAGE _243_

regarding date of production of documents (docket #545); and

(4)     The Court **DENIES** MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508).

(5)     The Court **DENIES** the parties' oral request for modification of pretrial and trial dates.

(1)     Motion re Trial Structure (docket #462)

Previous orders of the Court specified that the claims and counterclaims brought in this action will be tried in two phases.  The parties have agreed, in large part, to a refinement of the Court's mandate that all issues regarding the ownership of Bratz shall be tried in Phase 1.  Where the parties differ is upon a proposal by Mattel that the Phase 1 be bifurcated into two sub-phases, with Mattel's copyright infringement claim (its first counterclaim in the 05-02727 case) and all Phase 1 damages being tried after all the other issues.  Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the original drawings.  This approach has the appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings.  A finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the need for Phase 1(b).

Accordingly, **THE COURT ADOPTS MATTEL'S MODIFICATION OF DEFENDANTS' PROPOSAL,** as set forth at 8-9 of its Memorandum Regarding Trial Structure, filed June 20, 2007.  Phase 1(a) and Phase 1(b) (if necessary) will be tried to the same jury.

(2)     MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505), and
(3)     MGA's Ex Parte Application regarding date of production of documents (docket #545).

The Discovery Master's May 15, 2007, Order compels production of documents regarding ink, paper, and chemical analysis and documents relating to unreleased MGA products.  The order required that documents be produced no later than the end of May.

The Court reviews the Discovery Master's orders under the "clearly erroneous" or "contrary to law" standard set forth in Fed. R. Civ. P. 72(a).

The Discovery Master's order compels the production of only non-privileged documents.  Therefore, MGA's arguments that the Discovery Master's order requires production of documents in violation of the attorney-client privilege are misplaced.  If the only responsive documents are privileged, then MGA need not produce them, but must produce a privilege log.

MGA acknowledges that it has raised an argument before the Court that was not raised

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT __10__ PAGE __244__

before the Discovery Master, namely, that Mattel has failed to establish that there are "exceptional circumstances" that allow Mattel to "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B).  MGA contends that the Discovery Master's order is contrary to law based on this standard, and that it was incumbent upon Mattel to raise it below.  The Court disagrees.  Mattel would be required to establish that exceptional circumstances existed if MGA objected to production on that grounds.  A party seeking production cannot be expected to rebut all arguments that could possibly be raised by a party resisting production.  MGA has not convinced the Court that the Discovery Master's failure to require Mattel to rebut an argument that was not raised by MGA is contrary to law.

MGA contends that the Discovery Master's order compelling production of documents regarding unreleased products is contrary to law.  Relevant to that determination is a balancing test required to be applied by the Ninth Circuit when trade secrets are requested by a competitor in discovery.  See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) ("Specifically, in this case we must balance the risk to [defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [plaintiff] that protection of [defendant's] trade secrets [will] impair[] prosecution of [plaintiff's] claims.").

Here, the documents sought are of a particularly sensitive nature.  They represent some of the most secretive documents maintained by MGA, and they are being ordered to be produced to MGA's fierce competitor.  The Discovery Master recognized the sensitive nature of the documents and entered a strict protective order that severely limits access to those documents and that goes well beyond the normal "attorney eyes only" designation.

MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings.  That is clear.  However, MGA's argument attempts to limit the discovery to issues involved in Phase 1 of the trial.  There has been no bifurcation of discovery.

Mattel correctly points out that these documents are relevant to a number of its other claims.  Specifically, if they show unreleased products that are similar to Mattel's unreleased products, the documents would be highly probative of Mattel's misappropriation of trade secrets claim.  Moreover, these documents could be relevant to Mattel's RICO claims based on alleged acts of criminal copyright infringement.

Balancing tests are inherently subjective and particularly susceptible to varying interpretation by individual judicial officers.  This Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result.  However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.

The parties have a long history regarding the production of documents ordered in the May 15, 2007, Order, which is set forth in their papers and which need not be repeated here.  Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no

EXHIBIT _10_ PAGE _245_

later than two weeks after that date.  Accordingly, the Court **ORDERS** that MGA complete the document production set forth in the Discovery Master's May 15, 2007, order no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which shall be produced no later than August 14, 2007.

Accordingly, the Court **GRANTS** in part MGA's motion re the Discovery Master's May 15, 2007, Order, extending the document production date as set forth above.  The Motion is **DENIED** in all other respects.

Likewise, the Court **GRANTS** in part MGA's ex parte application re date of production of documents, extending the document production date as set forth above.  The application is **DENIED** in all other respects.

(4)    MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508)

The Discovery Master's May 16, 2007, Order compelled the Rule 30(b)(6) depositions of witnesses on the topics of MGA's net worth, prior sworn statements, and ink, paper, and chemical analysis performed by MGA.

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters *known or reasonably available* to the organization.

Fed. R. Civ. P. 30(b)(6) (emphasis added).  "The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation."  Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz. 1991) (internal citation omitted).  Another purpose of Rule 30(b)(6) is aptly described by the District Court for the District of Columbia:

> [The purpose of Rule 30(b)(6) is to] prevent[] serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying', which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself.

Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C. 1999) (citing the 1970 Advisory Committee Notes to Rule 30(b)(6)).

The Discovery Master's order compelling Rule 30(b)(6) depositions in the specified

EXHIBIT _10_ PAGE _246_

categories serve both these purposes and is not contrary to law.

Although MGA's net worth may not be known to it, MGA does not contend that the information is not readily available. That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law.

MGA likewise does not contend that information regarding prior sworn statements are not readily available to it. Although contending that this is not an appropriate subject for a Rule 30(b)(6) deposition, MGA fails to cite authority in support of that contention. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

The ink, paper, and chemical analysis topic is likewise a proper subject of a Rule 30(b)(6) deposition. To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this topic based on that blanket objection. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

Accordingly, the Court **DENIES** MGA's motion re the Discovery Master's May 16, 2007, Order.

(5)    Oral Request for Modification of pretrial and trial dates.

Although no motion or ex parte application on the subject was pending before the Court, the parties made an oral request at the hearing to continue certain pretrial and trial dates. A discussion ensued and it became apparent that no final agreement was reached by the parties regarding extending these dates. Accordingly, the Court **DENIES** the parties' oral request for modification of pretrial and trial dates. The Court will consider counsels' stipulation regarding extensions of those dates only where all counsel unqualifiedly stipulate to those dates. Until the scheduling order is modified by the Court, the dates previously set by the Court remain in effect. In addition, the Court is unlikely to entertain a continuance of the Phase 1 trial past April, 2008.

IT IS SO ORDERED.

EXHIBIT _10_ PAGE _247_

# CONFIDENTIAL
# THIS EXHIBIT FILED UNDER SEAL PURSUANT TO
# PROTECTIVE ORDER OF 1- 4 -2005



## quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

December 7, 2007

**VIA EMAIL AND FACSIMILE**

Timothy Miller, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111

Mark Overland, Esq.
Overland Borenstein Scheper & Kim, LLP
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071

John Keker, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

Re:    Mattel v. Bryant, Case No. CV 04-9049 SGL (RNBx)

Dear Counsel:

I write pursuant to Local Rule 7-3 to request a meeting of counsel regarding Mattel's anticipated motion for leave to take Rule 30(b)(6) depositions of third parties Zapf Creation AG ("Zapf") and Smoby Group ("Smoby"), and to take the deposition of MGA Entertainment, Inc. on additional matters.  As discussed further below, Mattel requests these additional depositions (over the 24 agreed between the parties) to discover what facts, if any, support MGA's and Larian's recently-pleaded affirmative defense of "unclean hands."

MGA and Larian have pleaded in their answers that Mattel's counterclaims are barred "in whole or in part on Mattel's unclean hands and wrongful acts."  In support of this purported defense, MGA and Larian raised numerous new allegations for the first time.  For example, MGA and Larian alleged that Mattel made "efforts to interfere with MGA's acquisition of or investment in Zapf Creation AG" and that Mattel made "efforts or inten[ded] to interfere with business dealings or contractual relations between MGA and Smoby Group."  Other new allegations

**quinn emanuel urquhart oliver & hedges, llp**

07209/2318217.1   NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

EXHIBIT _12_ PAGE _334_

Timothy Miller, Esq.
Mark Overland, Esq.
John Keker, Esq.
December 7, 2007

included:  (i) Mattel made "efforts to create negative publicity or press about MGA, MGA products, Bryant, Larian, or MGA employees"; (ii) Mattel "monitor[ed], 'sp[ied] on' or gain[ed] knowledge of MGA's trade secrets, non-public information, non-public activities, unreleased products, and product development"; and (iii) Mattel "gain[ed] access, or attemp[ed] to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false pretenses."  Finally, MGA and Larian stated that their unclean hands defense was based on allegations that included, but were *not limited to*, those contained in their answers.

As you are aware, on December 3, 2007, Judge Larson granted Mattel's motion to serve a supplemental interrogatory regarding Counter-defendants' affirmative defenses to Mattel's counterclaims and ordered defendants to answer the interrogatory without objection.  Judge Larson's ruling indicates that Mattel is entitled to additional discovery on Counter-defendants' recently-pleaded affirmative defenses, which, as discussed above, contain many new allegations.

Just as Mattel is entitled to additional written discovery, I am hopeful that you will agree that Mattel is entitled to additional depositions with respect MGA's and Larian's new allegations. Should the parties not reach agreement on this issue, then Mattel contemplates filing a motion with Judge Larson seeking leave.

Please let me know when you are available to discuss this issue.

Very truly yours,

*B. Dylan Proctor /by HSA*

B. Dylan Proctor

EXHIBIT *12* PAGE 335