1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10               UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                   EASTERN DIVISION

13  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

14              Plaintiff,                  Consolidated with
                                           Case No. CV 04-09059
15       vs.                               Case No. CV 05-02727

16  MATTEL, INC., a Delaware corporation   Hon. Stephen G. Larson

17              Defendant.                 MATTEL, INC.'S REPLY BRIEF IN
                                           SUPPORT OF *EX PARTE*
18  ─────────────────────────────         APPLICATION TO ENFORCE
                                           COURT ORDERS COMPELLING
19  AND CONSOLIDATED ACTIONS               PRODUCTION OF TANGIBLE
                                           ITEMS; AND FOR MODIFICATION
20                                         OF SCHEDULING ORDER

21
                                           Hearing Date:  TBA
22                                         Time:          TBA
                                           Place:         TBA
23
                                           Phase 1:
24                                         Discovery Cut-Off: January 28, 2008
                                           Pre-Trial Conference: May 5, 2008
25                                         Trial Date:  May 27, 2008

26
                                           **[Declaration of Diane C. Hutnyan
27                                         filed concurrently herewith]**

28

07209/2369145.1

MATTEL'S REPLY ISO EX PARTE APP. TO ENFORCE COURT ORDERS
COMPELLING PRODUCTION OF TANGIBLES

### Preliminary Statement

MGA's opposition brief is a creative *non sequitur,* designed to distract this Court from the simple issues at hand.  While MGA skirts or ignores every issue in the application and spends much of its opposition on a few transparent excuses, it bears noting that ***all the facts in Mattel's application are undisputed.***  Mattel's requested relief should be granted without further delay.

### Argument

I. **The Facts And Law Supporting Mattel's Application Are Undisputed**

It is undisputed that:

- MGA regards molds and "other things" as outside the scope of Mattel's requests;

- Molds are clearly within the scope of at least nine of Mattel's requests, as to each of which full production was compelled by Judge Infante months ago;

- The only molds MGA has produced were produced when this issue came to a head on January 3, 2008;

- MGA has not made a reasonable inquiry and diligent search for all molds within its possession, custody and control;

- Although MGA regards Mattel's requests as not calling for "other things" that are clearly responsive to Mattel's requests, it still refuses to reveal what those "other things" are, making it impossible to challenge MGA's further limitation on production;

- No Bratz head molds -- including the Bratz roto skin-master -- have ever been produced;

- The first Bratz molds and tooling done by Wah Shing date from 2000, and are both highly relevant and still unaccounted for;

07209/2369145.1

MATTEL'S EX PARTE APP. TO ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLES

1   ▪ Clay sculpts, rubber molds, face paint masks, master heads, mold control
2       drawings and other tooling and related documentation listed on pages 12 and
3       13 of Mattel's brief are still missing from MGA's production;
4   ▪ MGA has never produced any evidence of the undertaking that supposedly
5       prevents the twelve polyurethane samples and the four painted rubber decor-
6       masters in Hong Kong from being shipped to the U.S. for the production
7       ordered by this Court (and which counsel for MGA said it would file before
8       this Court *in camera* in opposition to Mattel's application);
9   ▪ MGA has never produced any evidence of its efforts to gain temporary
10      release of these items;
11  ▪ MGA has produced no declaration or other fact supporting the alleged
12      prohibitive difficulty or burden of bringing the metal molds from China for
13      inspection; and
14  ▪ MGA has produced no declaration or other fact explaining why it did not
15      have the items in Hong Kong and China shipped when it was first compelled
16      to do so.

17          MGA's brief, and the general declarations and lawyer argument
18  supporting its brief, are filled with the same qualifications and word games that
19  plagued the parties' meet-and-confer.  For example, though the question raised by
20  this application is whether MGA acted improperly in failing to produce all
21  responsive tangible items, MGA asks this Court rhetorically whether it has acted
22  improperly in producing the few things it has produced, which is clearly not the
23  issue.  Further, MGA, and the supporting declaration of Mr. Khare, both repeatedly
24  claim that MGA did not *"deliberately"* exclude tangible items from its searches and
25  did not tell anyone to hide tangible items.  But both Mr. Khare and MGA refuse to
26  state that MGA included all responsive tangible items in its searches, whether
.27
28

1  deliberately or not, which is the issue at hand.[1]  And there is obviously no need to

2  tell someone to hide tangible items when they are in Asia and no one is asking for

3  them.

4          Of course, a more important question is raised here:  why would

5  someone fight not to produce all of the tangible items related to the early design and

6  development of Bratz?  The significant probative value that these items have, in

7  light of MGA's refusal to acknowledge their responsiveness to these Court-ordered

8  requests, and its refusal to simply reassure Mattel and the Court that it conducted, or

9  will conduct, an immediate and thorough search for all such items, all underscore

10  the importance of granting Mattel's requested relief without further delay.

11

12  **II.    Having No Facts To Support Its Contention That Production In The U.S.**

13          **Is Prohibited Or Burdensome, MGA Should Either Produce the Items**

14          **Here Or Pay For The Costs Of Production In Asia**

15          MGA contends that Mattel has shown "no interest" in inspecting the

16  items in Hong Kong and Shenzhen.  But the correspondence attached to the Hutnyan

17  Declaration in support of Mattel's application clearly contradicts this, and evidences

18  (1) Mattel asking repeatedly to have the items in Asia made available to it here in

19  the United States, (2) MGA's refusal to do so, (3) Mattel's requests for MGA to

20  provide any evidence whatsoever supporting that refusal in an effort to resolve the

21  issue; and (4) MGA's refusal to provide such support.[2]

22

23
_____

24  [1]  Of course, Mattel submits that a party, represented by sophisticated counsel
    and ordered to produce all responsive materials -- yet then failing to recognize and
25  incorporate the definitions applicable to the requests in producing responsive
    materials -- *is* deliberately excluding whole categories of responsive materials.
26
    [2]  Declaration of Diane C. Hutnyan In Support Of Mattel, Inc.'s Ex Parte
27  Application To Enforce Court Orders Compelling Production Of Tangible
        (footnote continued)

28

07209/2369145.1 07209/23
69145.1

1    Given that MGA has failed to provide any facts to this Court

2  supporting its position that it is prohibited, or too burdensome, to produce the Hong

3  Kong and Shenzhen items in the United States, Mattel respectfully requests that the

4  Court order MGA to produce them in the United States.

5    If not, Mattel will continue trying to make the arrangements necessary

6  to conduct the inspections and scanning in Hong Kong and China.  MGA complains

7  bitterly that Mattel did not immediately accept dates earlier provided, but Mattel

8  was not in a position to do so.   Once Mattel realized that MGA would not

9  compromise on this issue, it asked for several contiguous dates, and it is still

10  working on accepting them.  In contrast to a simple shipment of items from one

11  country to another, three-dimensional scanning of items in Hong Kong and

12  Shenzhen requires a great deal of planning.[3]  It either requires the scanning

13  technician to travel with the equipment -- which is quite expensive and delicate --

14  into and out of these countries, and ensuring that the power source will be adequate

15  to run the equipment; or it requires lining up the same or similar equipment in the

16  countries in question.[4]  Sometimes items to be scanned must be dusted with a fine

17  white powder, which is obviously difficult to travel with.[5]  Also, three-dimensional

18  scanning is best accomplished where the light can be controlled, and where there is

19  no danger of sway (hence, scanning on high floors of skyscrapers is less advisable

20

21

22  Materials; And For Modification of Scheduling Order, dated January 23, 2008,

23  Exhs. 2, 3, 4, 5, 11, 12, 17, 18, 19 and 22.

24    [3]  Supplemental Declaration of Diane C. Hutnyan In Support Of Mattel, Inc.'s *Ex Parte* Application To Enforce Court Orders Compelling Production Of Tangible

25  Materials; And For Modification of Scheduling Order, dated January 28, 2008, at ¶

26  1.

    [4]  *Id.*, at ¶¶ 2-4.

27    [5]  *Id.*, at ¶ 1-3.

28

1  than scanning in a shorter building, or on lower floors).[6]  Finally, the scanning can

2  be somewhat time consuming, and so having several contiguous days in which to

3  accomplish it (which Mattel was not offered until January 23) is needed.[7]  If Mattel

4  must shoulder the burden of doing this, MGA should pay for it.

5

6  **III.    The Requested Modification To The Scheduling Order Is Needed**

7  **Because of MGA's Unexplained Violations of Court Orders, And Is A**

8  **Reasonable Accommodation Designed to Finalize Discovery Relating To**

9  **The Tangible Items In Question Expeditiously**

10          MGA's failure to provide any facts explaining or excusing its non-

11  production of these highly-relevant and responsive tangible items, and its failure to

12  provide any facts supporting the propriety of its refusal to produce in the United

13  States, Mattel submits that the requested scheduling modification is appropriate and

14  necessary.   Should the Court prefer a shorter modification of the schedule, an

15  alternative would be to order immediate production in the U.S. and then provide

16  enough time after arrival for the scanning, for any follow-up discovery limited to the

17  items in question, and for analysis by Mattel's experts.

18          That MGA has produced millions of pages of documents and hundreds

19  of tangible items is beside the point.[8]  The importance of *this particular evidence*

20  that has prevented their production.  These items should be produced immediately.

21

---

22  [6]  *Id.*, at ¶ 6.
    [7]  *Id.*, at ¶ 5; *see also* Park Declaration, Exh. 3 (only offering the items on parts

23  of non-contiguous days).

24  [8]  Even more beside the point are MGA's arguments concerning Mattel's production.   MGA must meet its own Court-ordered discovery obligations

25  regardless of the status of Mattel's discovery, and MGA is free to bring its own

26  motion on that issue if it wants to.  *See Lumbermens Mut. Cas. Ins. Co. v. Maffei,* 2006 WL 2709835, at *5 n.21 (D. Alaska 2006) ("The rules do not authorize one

27  party to withhold discoverable material in retaliation for the opposing party's

28  (footnote continued)

## Conclusion

For all of the foregoing reasons, Mattel respectfully requests that its application be granted in its entirety.

DATED:  January 28, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By_____

Diane C. Hutnyan
Attorneys for Plaintiff and Cross-Defendant Mattel, Inc.

---

withholding of discoverable material."); *Monster Cable Prods., Inc. v. The Quest Group*, 2005 WL 2596451, at *7 (N.D. Cal. 2005) ("Discovery, however, is not a game of tit-for-tat.").

07209/2369145.107209/23
69145.1

-6-