58.   The factual basis for YOUR claim that MATTEL has infringed, diluted or otherwise violated any trade dress that YOU contend YOU own in the CONTESTED MGA PRODUCTS.

59.   The factual basis for YOUR claim that MATTEL has engaged in "strong-arm tactics, and other illegitimate, unfair and anti-competitive means."

60.   COMMUNICATIONS between YOU and any PERSON RELATING TO the departure from MATTEL of any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

61.   COMMUNICATIONS between YOU and any PERSON RELATING TO the obligations to MATTEL, including the duty of confidentiality, of any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

62.   COMMUNICATIONS between YOU and any current or FORMER MATTEL EMPLOYEE or MATTEL or contractor RELATING TO the ownership of any idea, concept, design, or product.

63.   COMMUNICATIONS between YOU and any PERSON RELATING TO the retention, destruction, transfer, or use of any information or DOCUMENTS known to or possessed by any current or former MATTEL employee or contractor.

64.   Mattel's alleged "warnings," "threats" or "intimidation" that are the subject of YOUR claims, including but not limited to all COMMUNICATIONS with any present or former licensees of MATTEL and any present or former distributors and retailers of MGA and MATTEL products.

65.   MATTEL's alleged responsibility for "shortage of doll hair in October 2002."

66.   MATTEL's alleged "manipulation of the retail market," including by its alleged tampering with MGA's retail displays.

67.   MATTEL's alleged false statements about YOU or YOUR business practices.

68.    MATTEL's alleged violation of any rules or restrictions relating to data provided to subscribers by NPD or any other wrongful conduct relating to NPD.

69.    COMMUNICATIONS between YOU and NPD, other than periodic reports transmitted by NPD or information made available to YOU by NPD, between January 1, 2000 and the present.

70.    YOUR contracts and agreements with NPD since January 1, 1999, including without limitation any allegation by NPD that YOU were or have been in breach or violation thereof.

71.    The status of YOUR NPD subscription between January 1, 1999 and the present.

72.    MATTEL's alleged inducement of CARU to place onerous restrictions on MGA advertisements, and require MGA to amend aspects of commercials that have gone unchallenged in other parties' commercials.

73.    COMMUNICATIONS between YOU and CARU between January 1, 2000 and the present RELATING TO MATTEL, ANY CONTESTED MGA PRODUCTS, ANY CONTESTED MATTEL PRODUCTS or any other subject or matter that YOU are relying upon in this ACTION.

74.    MATTEL's allegedly improper influence with or within TIA, including but not limited to the procedures for and manner in which the Toy of the Year was selected for 2003.

75.    YOUR COMMUNICATIONS with TIA RELATING TO Toy of the Year since January 1, 2000 or any other subject or matter on which YOU base any claim.

76.    MATTEL's purported power, influence and intimidation to threaten retailers, suppliers, licensees, distributors, manufacturers and industry bodies so as to limit or prevent MGA from doing business.

77.    MATTEL's alleged intimidation of or threats against MGA's current and potential employees.

07209/2254636.1

FOURTH NOTICE OF DEPOSITION OF MGA

Exhibit 18 Page 140

78.   YOUR monthly, quarterly and annual financial reports, including financial statements (both audited and unaudited) for the years 1998 through the present, inclusive.

79.   The identity of DOCUMENTS that YOU have reason to believe were created by or originated from MATTEL (excluding MATTEL products that YOU purchased at retail) at any time since January 1, 1998.

80.   The destruction of any DOCUMENT RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

81.   COMMUNICATIONS with, or inquiry or investigation by, any government entity, industry organization, safety compliance, or consumer organization RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

82.   YOUR understanding or belief of whether the BRYANT/MGA AGREEMENT was lawful when YOU entered into it, and DOCUMENTS and COMMUNICATIONS related thereto.

83.   The public perception of the CONTESTED MGA PRODUCTS, including without limitation with respect to the appropriateness or suitability of Bratz for children.

84.   The factual basis for YOUR alleged belief that YOU had the right to market products developed as a result of the BRYANT/MGA AGREEMENT and to the lawful right to fully exploit the drawings drawn and presented by BRYANT prior to the execution of the BRYANT/MGA AGREEMENT, and the DOCUMENTS and COMMUNICATIONS YOU so relied upon when YOU entered into the agreement.

85.   The factual basis for YOUR contention that YOU believed at the time YOU entered into the BRYANT/MGA AGREEMENT that it would be lawful for YOU to acquire THE BRATZ PITCH MATERIALS from BRYANT, and the DOCUMENTS and COMMUNICATIONS YOU so relied upon at the time YOU entered into the BRYANT/MGA AGREEMENT.

FOURTH NOTICE OF DEPOSITION OF MGA

**Exhibit 18 Page 141**

86.   YOUR belief or non-belief that BRYANT created or improved any of THE BRATZ PITCH MATERIALS while employed by MATTEL, and the DOCUMENTS and COMMUNICATIONS YOU so relied upon.

87.   Any investigation or inquiry YOU conducted to confirm the timing of BRYANT'S work prior to executing the BRYANT/MGA AGREEMENT, including but not limited to DOCUMENTS and COMMUNICATIONS RELATING thereto.

88.   The factual bases for YOUR affirmative defenses.

89.   The IDENTITY of all DOCUMENTS that were in the possession of Farhad Larian that YOU claim were reviewed by Quinn Emanuel Urquhart Oliver & Hedges LLP at any time prior to January 1, 2007.

90.   The factual bases for YOUR allegations in the GLASER LETTER, including YOUR allegation that DOCUMENTS in the possession of Farhad Larian and reviewed by Quinn Emanuel Urquhart Oliver & Hedges LLP were purportedly privileged and confidential.

91.   Any services Farhad Larian has provided to YOU since January 1, 2005, including any litigation consulting services.

92.   The IDENTITY of DOCUMENTS that Farhad Larian was provided with or had access to, including YOUR allegedly privileged and confidential DOCUMENTS, since January 1, 2001.

93.   The terms of any contracts or agreements, including any confidentiality agreements, between YOU and Farhad Larian.

94.   The identity of each doll, accessory, product, work or item produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or on YOUR behalf that was BASED ON any BRATZ DESIGN or any design derivative of any BRATZ DESIGN.

95.   Except for deposition testimony provided in this ACTION, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO

-24-

1    BRATZ and that REFER OR RELATE TO the time period prior to June 30, 2001

2    (regardless of when such testimony or sworn statement was taken, given, signed, made

3    or filed).

4              96.    The authenticity, content, timing, meaning, and truth and accuracy

5    of YOUR COMMUNICATIONS with any PERSON, including without limitation any

6    retailer and the media, that REFER OR RELATE TO the National Labor Committee

7    dated December 21, 2006 entitled "Made in China: The Sweatshop Behind the Bratz"

8    or the Hau Tai K4 factory.

9              97.    The identity of each doll, product, packaging or other matter that

10   YOU have accused of infringing, diluting or otherwise violating YOUR purported

11   rights in any of the CONTESTED MGA PRODUCTS, the IDENTITY of each

12   manufacturer of each doll, product, packaging or other matter and the specific aspects

13   of each such doll, product, packaging or other matter that YOU have claimed was

14   confusingly or substantially similar to any of the CONTESTED MGA PRODUCTS.

15             98.    The identity, and outcome and resolution, of each lawsuit that YOU

16   have brought or cease and desist letter YOU have sent each doll, product, packaging or

17   other matter that YOU have accused of infringing, diluting or otherwise violating

18   YOUR purported rights in any of the CONTESTED MGA PRODUCTS.

19        .    99.    The job responsibilities of each FORMER MATTEL EMPLOYEE

20   in the first six months after each joined MGA.

21             100.   YOUR scheduling, planning, inventory, shipping, distribution or

22   forecasting software since January 1, 2005, including but not limited to any and all

23   changes, improvements, acquisitions, upgrades and purchases.

24             101.   DOCUMENTS created by each of the FORMER MATTEL

25   EMPLOYEES in the first six months after each joined MGA

26             102.   The make-up, source, calculation and purpose of the amounts

27   presented in MGA documents Bates-numbered MGA 0101018-21 (Exhibit 661) and

28   MGA 08185789 (Exhibit 662).

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026.

On January 9, 2008, I served true copies of the following documents described as:

**1. FOURTH NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)**

**2. NOTICE OF DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)**

on the parties in this action as follows:

| | |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP<br>  Thomas J. Nolan, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA  90071<br>Telephone:  213.687.5000<br>Facsimile:  213.687.5600 | **Attorneys for *MGA Entertainment, Inc., MGA Entertainment (HK) Ltd., Isaac Larian and MGAE de Mexico, S.R.L. de C.V.*** |
| Overland Borenstein Scheper & Kim, LLP<br>  Mark E. Overland, Esq.<br>  David C. Scheper, Esq.<br>  Alexander H. Cote, Esq.<br>300 South Grand Avenue, Suite 2750<br>Los Angeles, CA 90071<br>Telephone:  213.613.4655<br>Facsimile: 213.613.4656 | **Attorneys for *Carlos Gustavo Machado Gomez*** |

[√]   **[PERSONAL]** by personally delivering the document listed above to the person(s) at the address(es) set forth above.

Case No. CV 04-9049 SGL (RNBx)
PROOF OF SERVICE

Exhibit 18 Page 144

1  I declare that I am employed in the office of a member of the bar of this court at

2  whose direction the service was made

3       Executed on January 9, 2008, at Los Angeles, California.

4

5

6       David Quintana

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2347166

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On January 9, 2008, I served true copies of the following documents described as:

**1. FOURTH NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)**

**2. NOTICE OF DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)**

on the parties in this action as follows:

| | |
|---|---|
| Keker & Van Nest, LLP<br>  John W. Keker, Esq.<br>  Michael H. Page, Esq.<br>  Christa M. Anderson, Esq.<br>710 Sansome Street<br>San Francisco, CA 94111<br>Telephone: 415.391.5400<br>Facsimile: 415.397.7188 | **Attorneys for *Carter Bryant*** |

[√]   **[MAIL]** As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business, addressed as set forth below. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

1    I declare that I am employed in the office of a member of the bar of this court

2  at whose direction the service was made

3    Executed on January 9, 2008, at Los Angeles, California.

4

5

6  Tiffany Garcia

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2347166

Case No. CV 04-9049 SGL (RNBx)
PROOF OF SERVICE

Exhibit 18 Page 147

Exhibit 19

00029/2340430.1

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>NOTICE OF DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) |
| AND CONSOLIDATED ACTIONS | |

07975/2280277.2

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

Exhibit 19 Page 148

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |      PLEASE TAKE NOTICE that on January 23, 2008 beginning at

3 | 9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of

4 | defendant MGAE de Mexico, S.R.L. de C.V. at the offices of Quinn Emanuel

5 | Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles,

6 | CA 90017.  Pursuant to <u>Fed. R. Civ. P.</u> 30(b)(6), MGAE de Mexico, S.R.L. de C.V.

7 | shall designate one or more officers, directors, managing agents or other persons

8 | who consent to testify on its behalf concerning each of the topics set forth in

9 | Exhibit A hereto.

10 |      PLEASE TAKE FURTHER NOTICE that the deposition will take

11 | place before a duly authorized notary public or other officer authorized to administer

12 | oaths at depositions, and will continue from day to day, Sundays, Saturdays and

13 | legal holidays excepted, until completed.

14 |      PLEASE TAKE FURTHER NOTICE that, pursuant to <u>Fed. R. Civ.</u>

15 | <u>P.</u> 30(b)(2), the deposition will be videotaped.  Mattel also reserves the right to use

16 | Livenote or other technology for real-time transcription of the testimony.

17 |

18 | DATED:  January 9, 2008        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

19 |

20 |                 By _____

21 |                    Michael T. Zeller
                   Attorneys for Mattel, Inc.

22 |

23 |

24 |

25 |

26 |

27 |

28 |

07975/2280277.2

-1-
NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

Exhibit 19 Page 149

# EXHIBIT A

1.     "YOU," "YOUR" or "MGA" means MGAE de Mexico, S.R.L. de C.V., any of its current or former employees (including but not limited to MACHADO, TRUEBA and VARGAS) , officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.     "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

3.     "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or DESIGNS or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.  Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

-2-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

Exhibit 19 Page 150

4.      "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

5.      "BRATZ DOLL" means any doll that is or has ever been distributed, marketed, sold or offered for sale under the name "Bratz" or as part of the "Bratz" line.

6.      "BRATZ PRODUCT" means any product, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form: (i) that is or has ever been distributed, marketed or sold under the name "Bratz" or as part of the "Bratz" line; (ii) depicts, incorporates, embodies, consists of or REFERS OR RELATES TO BRATZ; and/or (iii) that is or has ever been distributed, marketed or sold in any packaging that includes the name "Bratz" or depicts, incorporates, embodies, consists of or REFERS OR RELATES TO BRATZ.

7.      "BRATZ LICENSE" means any license that REFERS OR RELATES TO any BRATZ PRODUCT.

8.      "SYSTEM" or "SYSTEMS" means any computer or network of computers or other network devices that allow a two or more computers to share information and equipment, including but not limited to local area networks, wide area networks, storage area networks, client-server networks or peer-to-peer networks. The use of the term "SYSTEM" or "SYSTEMS" also includes the brand, model number,

-3-
NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

Exhibit 19 Page 151

1  technical specifications, and capacities of the computers who are part of each such

2  SYSTEM.

3    9.    "DIGITAL INFORMATION" means any information created or

4  stored digitally, including but not limited to electronically, magnetically or optically.

5    10.    "ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-

6  9059 SGL (RNBx), filed by Mattel on April 27, 2004, and the cases consolidated

7  therewith.

8    11.    "IDENTITY" means the following:

9    (a)    with reference to an individual or individuals, means to

10  state, fully and separately as to each, such individual's full name, any known

11  business title, current or last known business affiliation, current or last known

12  residential address, current or last known business address, current or last known

13  relationship to MGA, and current or last known telephone number.

14    (b)    with reference to an entity or entities, means to state, fully

15  and separately as to each, such entity's full name, state (or country) of incorporation

16  or organization, present or last known address, and present or last known telephone

17  number.

18    (c)    with reference to any other DOCUMENT or

19  DOCUMENTS, means to describe each DOCUMENT by Bates number.  In the

20  event that a DOCUMENT does not have a Bates number, IDENTITY means, with

21  respect to each such DOCUMENT, to provide a complete description of it such that

22  it may be the subject of a request for the production of documents, including by

23  stating the date, IDENTITY of the author, addressee(s), signatories, parties, or other

24  PERSONS identified therein, its present location or custodian and a description of

25  its contents.

26    12.    "RELATING TO" or "REFERS OR RELATES TO" means

27  constituting, embodying, containing, referring to, commenting on, evidencing,

28  regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to,

07975/2280277.2

-4-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

Exhibit 19 Page 152

1 concerning, supporting, contradicting, negating, revoking or otherwise relating to in
2 any manner.
3      13.   "COMMUNICATION," in the plural as well as the singular,
4 means any transmittal and/or receipt of information, whether such was oral or
5 written, and whether such was by chance, prearranged, formal or informal, and
6 specifically includes, but is not limited to, conversations in person, telephone
7 conversations, electronic mail (including instant messages and text messages),
8 voicemail, letters, memoranda, statements, media releases, magazine and newspaper
9 articles, and video and audio transmissions.
10      14.   "DOCUMENT" means all "WRITINGS" and "RECORDINGS"
11 as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and
12 Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all
13 writings and records of every type and description including, but not limited to,
14 contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic
15 mail ("e-mail"), records of telephone conversations, handwritten and typewritten
16 notes of any kind, statements, reports, minutes, recordings, transcripts and
17 summaries of meetings, voice recordings, pictures, photographs, drawings,
18 computer cards, tapes, discs, printouts and records of all types, studies, instruction
19 manuals, policy manuals and statements, books, pamphlets, invoices, canceled
20 checks and every other device or medium by which or through which information of
21 any type is transmitted, recorded or preserved. Without any limitation on the
22 foregoing, the term "DOCUMENT" shall include all copies that differ in any respect
23 from the original or other versions of the DOCUMENT, including, but not limited
24 to, all drafts and all copies of such drafts or originals containing initials, comments,
25 notations, insertions, corrections, marginal notes, amendments or any other variation
26 of any kind.
27      15.   "PERSON" or "PERSONS" means all natural persons,
28 partnerships, corporations, joint ventures and any kind of business, legal or public

1  entity or organization, as well as its, his or her agents, representatives, employees,

2  officers and directors and any one else acting on its, his or her behalf, pursuant to

3  its, his or her authority or subject to its, his or her control.

4           16.    "LARIAN" means Isaac Larian, and all of his past or present

5  employees, officers, agents, representatives, attorneys, consultants, independent

6  contractors, any predecessors or successors in interest, and any other PERSON

7  acting on his behalf, pursuant to his authority or subject to his control.

8           17.    "MACHADO" means Carlos Gustavo Machado Gomez, and all

9  of his current or former employees, agents, representatives, attorneys, accountants,

10  vendors, consultants, independent contractors, predecessors-in-interest and

11  successors-in-interest, and any other PERSON acting on his behalf, pursuant to his

12  authority or subject to his control.

13           18.    "TRUEBA" means Mariana Trueba Almada, and all of her

14  current or former employees, agents, representatives, attorneys, accountants,

15  vendors, consultants, independent contractors, predecessors-in-interest and

16  successors-in-interest, and any other PERSON acting on her behalf, pursuant to her

17  authority or subject to her control.

18           19.    "VARGAS" means Pablo Vargas San Jose, and all of his current

19  or former employees, agents, representatives, attorneys, accountants, vendors,

20  consultants, independent contractors, predecessors-in-interest and successors-in-

21  interest, and any other PERSON acting on his behalf, pursuant to his authority or

22  subject to his control.

23           20.    "FORMER MATTEL EMPLOYEES" means any former

24  MATTEL employee who left MATTEL to join YOU, including but not limited to

25  MACHADO, TRUEBA and VARGAS.

26           21.    The singular form of a noun or pronoun includes within its

27  meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of

28  the masculine form of a pronoun also includes within its meaning the feminine form

07975/2280277.2

-6-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

Exhibit 19 Page 154

1 | of the pronoun so used, and *vice versa*; the use of any tense of any verb includes
2 | also within its meaning all other tenses of the verb so used, whenever such
3 | construction results in a broader request for information; and "and" includes "or"
4 | and *vice versa*, whenever such construction results in a broader disclosure of
5 | documents or information.

### Topics of Examination

7 |     1.    YOUR knowledge of any MATTEL product prior to the time
8 | that such product had been announced or disclosed by MATTEL to retailers or the
9 | public.

10 |     2.    YOUR receipt, reproduction, copying, storage, transmission,
11 | transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or
12 | information, including but not limited to any compilation of information, that was
13 | prepared, made, created, generated, assembled or compiled by or for MATTEL and
14 | that was not publicly available at the time of YOUR receipt of such DOCUMENT,
15 | data and/or information.

16 |     3.    YOUR receipt, reproduction, copying, storage, transmission,
17 | transfer, retention, destruction, deletion or use of any MATTEL line list or other
18 | DOCUMENT prepared by MATTEL identifying MATTEL products in the planning,
19 | design or development phase.

20 |     4.    The hiring, engagement or retention by YOU of any current or
21 | former MATTEL employee or contractor, including but not limited to the terms of
22 | all employment agreements and agreements RELATING TO confidentiality or the
23 | invention, authorship, or ownership of any concept or product.

24 |     5.    The seizure of DOCUMENTS by Mexican authorities from
25 | YOUR office in Mexico City, Mexico, including but not limited to the IDENTITY
26 | of such DOCUMENTS and YOUR PRESERVATION of any MATTEL authored
27 | DOCUMENT after the execution of the search warrant by Mexican authorities.

28 |

07975/2280277.2

-7-
NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

Exhibit 19 Page 155

6.     COMMUNICATIONS RELATING TO the search of YOUR office in Mexico City, Mexico that was conducted by Mexican authorities.

7.     The IDENTITY of all DOCUMENTS received by YOU, directly or indirectly, from any FORMER MATTEL EMPLOYEE authored by or for the benefit of MATTEL, or RELATING TO MATTEL or any MATTEL product, plan, client, customer, current or former MATTEL employee, sales, advertising, marketing, analysis, tool or procedure.

8.     COMMUNICATIONS with any PERSON RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from any FORMER MATTEL EMPLOYEE.

9.     COMMUNICATIONS between YOU and any of the FORMER MATTEL EMPLOYEES prior to April 20, 2004, including without limitation any and all DOCUMENTS any of the FORMER MATTEL EMPLOYEES transmitted to or shared with YOU prior to April 20, 2004.

10.    COMMUNICATIONS between YOU and any of the FORMER MATTEL EMPLOYEES RELATING TO MATTEL or any MATTEL product, potential product, business plan, line list, DOCUMENT or pricing.

11.    COMMUNICATIONS between any of the FORMER MATTEL EMPLOYEES and LARIAN, Thomas Park and/or Susanna Kuemmerle prior to April 20, 2004.

12.    Travel to Los Angeles, California by any of the FORMER MATTEL EMPLOYEES between January 1, 2004 and April 20, 2004.

13.    The content, meaning and authenticity of e-mail messages, including attachments and metadata, sent from or received by YOU to or from the e-mail address <plot04@aol.com>.

07975/2280277.2

-8-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

Exhibit 19 Page 156

14.     The content, meaning and authenticity of e-mail messages, including attachments and metadata, sent from or received at the e-mail address <argentrade@aol.com> to or from the e-mail address <plot04@aol.com>.

15.     The content, meaning and authenticity of e-mail messages, including attachments and metadata, sent from or received at the e-mail address <argentrade@aol.com> to or from any of the FORMER MATTEL EMPLOYEES.

16.     COMMUNICATIONS RELATING TO YOUR market planning and product development RELATING TO the toy market in Mexico prepared, created, sent or transmitted, whether in whole or in part, by MACHADO, TRUEBA and/or VARGAS at any time prior to April 30, 2005.

17.     COMMUNICATIONS between YOU and any PERSON RELATING TO the departure or resignation from MATTEL of any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

18.     The job responsibilities of each FORMER MATTEL EMPLOYEE in the first six months after each joined MGA.

19.     The content, meaning and authenticity of each personnel file maintained or created by YOU RELATING TO any FORMER MATTEL EMPLOYEE.

20.     Any and all agreements between YOU and any of the FORMER MATTEL EMPLOYEES, including all drafts of such agreements and COMMUNICATIONS related thereto.

21.     Compensation, money or any other item of value paid by YOU to any FORMER MATTEL EMPLOYEE, whether directly or indirectly, or paid to any PERSON for the benefit of or RELATING TO any FORMER MATTEL EMPLOYEE.

22.     Any promotions, raises, bonuses, monetary incentives, payments, awards, transfers, warnings, admonishment, discipline, reprimands, demotions or

07975/2280277.2

-9-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

Exhibit 19 Page 157

1  terminations of or received by any of the FORMER MATTEL EMPLOYEES while
2  employed by YOU.

3         23.    Any agreements, contracts, offers, promises, proposals or requests
4  RELATING TO the indemnification of or by any of the FORMER MATTEL
5  EMPLOYEES or the payment of legal fees by or for any of the FORMER MATTEL
6  EMPLOYEES.

7         24.    COMMUNICATIONS between YOU and any PERSON
8  RELATING TO the obligations to MATTEL, including the duty of confidentiality,
9  of any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

10         25.    COMMUNICATIONS between YOU and any current or
11  FORMER MATTEL EMPLOYEE or MATTEL contractor RELATING TO the
12  ownership of, or any right, title or interest in, any idea, concept, design, or product.

13         26.    COMMUNICATIONS between YOU and any PERSON
14  RELATING TO the retention, destruction, transfer, or use of any information or
15  DOCUMENTS known to or possessed by any current or former MATTEL
16  employee or contractor.

17         27.    The IDENTITY of DOCUMENTS that YOU have reason to
18  believe were created by or originated from MATTEL, other than MATTEL products
19  that YOU purchased at retail at any time since January 1, 2004.

20         28.    The development of MGA's 2005 product line, including the
21  IDENTITY of each person who participated in the decision making leading up to
22  such product line.

23         29.    The development of MGA's 2006 product line, including the
24  IDENTITY of each person who participated in the decision making leading up to
25  such product line.

26         30.    Any warning, admonition, discipline or other adverse
27  employment action by YOU RELATING TO any of YOUR current or former
28

-10-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

Exhibit 19 Page 158

1   employees for using a competitor's confidential or proprietary information, trade

2   secrets or intellectual property.

3         31.    YOUR policies or procedures regarding the use or prohibition of

4   use of an competitor's confidential or proprietary information, trade secrets or

5   intellectual property.

6         32.    YOUR efforts to maintain the secrecy of YOUR claimed trade

7   secrets and the date YOU started such efforts.

8         33.    Any failures to comply with YOUR efforts to maintain the

9   secrecy of YOUR trade secrets, and any violations of YOUR policies or procedures

10  with respect to the maintenance of the secrecy of YOUR trade secrets.

11        34.    The IDENTITY of each individual who has failed to comply with or

12  violated YOUR policies and procedures to maintain the secrecy of YOUR trade secrets.

13        35.    Any alleged failures of MATTEL to maintain the secrecy of its trade

14  secrets.

15        36.    COMMUNICATIONS between YOU and any individual while

16  the individual was employed by MATTEL.

17        37.    The factual bases for YOUR affirmative defenses.

18        38.    The product name, product number and SKU of each BRATZ

19  PRODUCT, including without limitation each BRATZ DOLL, sold by YOU or

20  YOUR licensees, and the number of units of each sold by YOU or YOUR licensees.

21        39.    YOUR cost of goods sold, unit cost and other costs for each

22  BRATZ PRODUCT, including without limitation BRATZ DOLLS, sold by YOU or

23  YOUR licensees.

24        40.    YOUR revenues and profits, including gross, net and incremental

25  profits, from the sale of each BRATZ PRODUCT sold by YOU or YOUR licensees.

26        41.    The number of units of each BRATZ PRODUCT sold by YOU

27  or YOUR licensees, the identity of each customer to whom YOU or YOUR

28

-11-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

Exhibit 19 Page 159

1   licensees have ever sold any BRATZ PRODUCT, and the revenues and profits that
2   YOU have earned therefrom by customer.

3         42.    Customer returns to YOU of BRATZ PRODUCTS, including
4   without limitation BRATZ DOLLS, sold or distributed by YOU or YOUR licensees.

5         43.    Customer rebates or credits given by YOU or YOUR licensees to
6   customers in connection with BRATZ PRODUCTS, including without limitation
7   BRATZ DOLLS.

8         44.    YOUR cost allocation procedures.

9         45.    YOUR sales, profit and cash flow projections or forecasts for
10  BRATZ PRODUCTS, including without limitation BRATZ DOLLS.

11        46.    The BRATZ DOLLS' share of the fashion doll market in Mexico
12  including, without limitation, the extent to which BRATZ has been or is gaining or
13  losing market share in the Mexico fashion doll market.

14        47.    YOUR net worth on a yearly basis from January 1, 2004 to the
15  present.

16        48.    YOUR monthly, quarterly and annual financial reports, including
17  financial statements (both audited and unaudited) from January 1, 2004 through the
18  present, inclusive.

19        49.    YOUR tax returns from January 1, 2004 to the present, including
20  all schedules and work papers RELATING TO their preparation and filing.

21        50.    YOUR corporate structure since January 1, 2004, including without
22  limitation YOUR relationship with MGA Entertainment, Inc., to MGA Entertainment
23  Mexico, Inc. and the IDENTITY of YOUR officers, directors, shareholders and
24  employees.

25        51.    The factual bases for YOUR affirmative defenses.

26        52.    The retention or destruction policies, procedures and practices for
27  YOUR DOCUMENTS and DIGITAL INFORMATION that REFER OR RELATE TO
28  BRATZ since January 1, 2004, including without limitation the retention or destruction

07975/2280277.2

-12-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

Exhibit 19 Page 160

1    of DOCUMENTS and DIGITAL INFORMATION when (a) hardware is replaced,

2    modified or upgraded and (b) when PERSONS leave YOUR employ.

3          53.    The preservation, collection, destruction, removal, transfer, loss or

4    impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection

5    with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

6          54.    The preservation, collection, destruction, removal, transfer, loss or

7    impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1,

8    2004 that REFER OR RELATE TO MATTEL (including without limitation to any

9    MATTEL product, plan or information) that YOU received in any manner from any

10    PERSON who was at the time an employee of MATTEL or who had previously been

11    an employee of MATTEL.

12          55.    YOUR DIGITAL INFORMATION data backup policies, practices

13    and procedures from January 1, 2004 to the present, including without limitation the

14    location and specifications of any media used to preserve YOUR DIGITAL

15    INFORMATION and the software, if any, used to preserve YOUR DIGITAL

16    INFORMATION.

17          56.    The DIGITAL INFORMATION SYSTEMS and the application

18    software that YOU have used since January 1, 2004 that REFER OR RELATE TO

19    design, development, planning, inventory, manufacturing, sales, shipping and

20    accounting, including without limitation the common or shared storage for such

21    DIGITAL INFORMATION SYSTEMS, remote access of such DIGITAL

22    INFORMATION SYSTEMS, and any changes, modifications or upgrades to such

23    DIGITAL INFORMATION SYSTEMS or application software.

24          57.    The IDENTITY of PERSONS, including without limitation

25    vendors, who since January 1, 2004 have been responsible for or supported YOUR

26    DIGITAL INFORMATION SYSTEMS, including without limitation the IDENTITY of

27    such PERSON who serviced or provided hardware for YOUR DIGITAL

28    INFORMATION SYSTEMS, hosted, stored, archived or maintained YOUR DIGITAL

-13-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

Exhibit 19 Page 161

1   INFORMATION, including but not limited to internet service providers, and provided

2   analytical, training or implementation services with respect to YOUR DIGITAL

3   INFORMATION SYSTEMS.

4          58.    The electronic messaging SYSTEMS used by YOUR employees

5   within the scope of their employment between January 1, 2004 and the present,

6   including but not limited to electronic mail, instant messenger, telephone or voice-mail,

7   and the routing of such electronic messages to, from or within MGA.

8          59.    YOUR policies, practices and procedures regarding the use of

9   transportable media that contain or are capable of containing DIGITAL

10  INFORMATION, including but not limited to floppy discs, compact discs, DVDs, USB

11  drives, portable hard drives, digital cameras and personal digital assistants.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-14-

Exhibit 19 Page 162

Exhibit 20

00029/2340430.1

THOMAS J. NOLAN (Bar No. 66992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone:  (213) 687-5000
Facsimile:  (213) 687-5600
E-mail:      tnolan@skadden.com

RAOUL D. KENNEDY (Bar No. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Embarcadero Center, 38th Floor
San Francisco, California 94111-5974
Telephone:  (415) 984-6400
Facsimile:  (415) 984-2698
E-mail:      rkennedy@skadden.com

Attorneys for Cross-Defendants
MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
MGAE De Mexico, S.R.L. De C.V., and ISAAC LARIAN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation<br><br>Defendant.<br><br>Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC.<br><br>CONFIDENTIAL – ATTORNEY'S EYES ONLY – FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**DISCOVERY MATTER**<br>**[To be heard by Discovery Master Hon. Edward A. Infante (Ret.)]**<br><br>**NOTICE OF MOTION AND MOTION OF MGA ENTERTAINMENT INC. AND MGAE DE MEXICO, S.R.L. DE C.V. FOR PROTECTIVE ORDER FROM MATTEL, INC'S FOURTH NOTICE OF DEPOSITION OF MGA AND NOTICE OF DEPOSITION OF MGA MEXICO PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**<br><br>Date:  February 8, 2008<br>Time:  TBD<br>Place:  JAMS<br><br>**Phase 1:**<br>Discovery Cut-Off:     January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date:                May 27, 2008 |

MGA AND MGA MEXICO'S MOT. FOR PROTECTIVE ORDER FROM 30(b)(6) DEPOSITION NOTICES

Exhibit 20 Page 163

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that MGA Entertainment, Inc. ("MGA") and MGAE De Mexico, S.R.L. De C.V. ("MGA Mexico") hereby move the Court pursuant to Federal Rule of Civil Procedure 26(c) for an order protecting them from the discovery sought in certain of the topics set forth in the Fourth Notice of Deposition of MGA Entertainment, Inc. Pursuant To <u>Federal Rule of Civil Procedure 30(b)(6)</u> ("Fourth MGA Notice") and the Notice of Deposition of MGAE De Mexico, S.R.L. De C.V. Pursuant To <u>Federal Rule Of Civil Procedure 30(b)(6)</u> ("MGA Mexico Notice") (collectively, "Notices"), served by Mattel, Inc. ("Mattel"), as set forth herein.

MGA and MGA Mexico move for an order pursuant to Federal Rule of Civil Procedure 26(c)(1)(A) forbidding Mattel from deposing MGA on Topics 1-4, 6-14, 16, 20-29, 31, 33, 35, 38, 42, 49-54, 56-66, 68-88 and 95-102 of the Fourth MGA Notice, and MGA Mexico on Topics 2-3, 5, 18-20, 22-32, 36-37, 47, 49-56 and 59 of the MGA Mexico Notice on the grounds that each of those topics is either unduly burdensome, duplicative and cumulative of prior discovery, or lack the "reasonable particularity" required by Federal Rule of Civil Procedure 30(b)(6), as set forth in MGA's Separate Statement No. 1 and MGA Mexico's Separate Statement No. 2 (Federal Rule of Civil Procedure 26(b)(2)(C)(i)-(iii));

MGA and MGA Mexico move for an order pursuant to Federal Rule of Civil Procedure 26(c)(1)(C) prescribing that Mattel may not depose MGA on Topics No. 5, 17, 18, 30, 37, 39-41, 43-48, 55, 67, 89-92 and 94 of the Fourth MGA Notice, and MGA Mexico on Topics No. 1, 7, 12, 21, 33-35, 57-58 of the MGA Mexico Notice, but may instead serve properly framed interrogatories seeking the same information ((Federal Rule of Civil Procedure 26(b)(2)(C)(i));

1    MGA and MGA Mexico move, in the alternative, for an order pursuant to
2    Federal Rule of Civil Procedure 26(c)(1)(D) modifying and limiting the scope of the
3    Topics in the Fourth MGA Notice and the MGA Mexico Notice identified in the
4    preceding paragraphs and Topics 5, 32 and 36 of the Fourth MGA Notice and Topics
5    4, 6, 9-11, 13-17, 45 and 48 of the MGA Mexico Notice, to eliminate the duplicative,
6    cumulative and unduly burdensome nature of the topics and so that the topics are
7    stated with reasonable particularity in compliance with Federal Rule of Civil
8    Procedure 30(b)(6).  MGA and MGA Mexico will provide Mattel and the Court with
9    proposed modifications and limitations if so directed by the Court.
10    This Motion is made on the grounds that deposition topics included in the
11    Fourth MGA Notice and the MGA Mexico Notice fail to describe the topics for
12    deposition with the "reasonable particularity" required by Rule 30(b)(6) of the
13    Federal Rules of Civil Procedure; seek information that is not properly the subject of
14    a Rule 30(b)(6) deposition; the deposition topics are unduly burdensome, duplicative
15    and/or cumulative of other discovery already obtained by Mattel; and because the
16    deposition topics are overly broad and seek discovery that is neither relevant to the
17    claims and defenses in this action nor reasonably calculated to lead to the discovery
18    of admissible evidence.
19    MGA and MGA Mexico attempted to meet and confer with Mattel regarding
20    the Rule 30(b)(6) deposition notices that are the subject of this Motion but were
21    unable to come to a resolution of the dispute.
22    This Motion is based upon this Notice of Motion and accompanying
23    memorandum of points and authorities; the accompanying Separate Statement No. 1
24    and Separate Statement No. 2; the declaration of Timothy A. Miller filed
25    concurrently herewith; the records and files of this Court; and any other matter of
26    ///
27    ///
28    ///

- 2 -

1    which the Court may take judicial notice. Discovery Master Hon. Edward Infante

2    (Ret.) will preside over the hearing on this Motion, which will occur on February 8,

3    2008, at a time and manner to be determined.

4    DATED: January 18, 2008        SKADDEN, ARPS, SLATE, MEAGHER &
                                    FLOM, LLP
5

6                                   By: _____
                                              RAOUL D. KENNEDY
7

8                                      Attorneys for Cross-Defendants
                                       MGA Entertainment, Inc., MGA
9                                      Entertainment (HK) Limited,
                                       MGAE De Mexico, S.R.L. De C.V.,
                                       and ISAAC LARIAN
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

MGA AND MGA MEXICO'S MOT. FOR PROTECTIVE ORDER FROM 30(b)(6) DEPOSITION NOTICES

Exhibit 20 Page 166

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ........................................................... 1

STATEMENT OF FACTS ................................................................. 6

STANDARD FOR PROTECTIVE ORDER ........................................ 11

ARGUMENT .................................................................................... 12

I.    MATTEL'S 30(b)(6) TOPICS FAIL TO DESCRIBE THE TOPICS FOR EXAMINATION WITH ANY PARTICULARITY .. 12

II.    MANY OF MATTEL'S 30(b)(6) TOPICS SEEK INFORMATION THAT SHOULD BE OBTAINED, IF AT ALL, THROUGH CONTENTION INTERROGATORIES RATHER THAN DEPOSITIONS ................................................................ 15

    A.    The Court Should Forbid Discovery In Response To Those Rule 30(b)(6) Topics That Improperly Seek All Factual Support For All Of MGA's Claims........................................... 16

    B.    The Information Sought In Certain of Mattel's Rule 30(b)(6) Topics Should Be Obtained Through Contention Interrogatories ...................................................................... 19

    C.    Mattel Improperly Seeks To Obtain Legal Conclusions Through Its 30(b)(6) Notices ........................................... 20

III.    MANY OF THE TOPICS IN MATTEL'S 30(b)(6) NOTICES ARE UNDULY BURDENSOME........................................... 22

IV.    MANY OF THE TOPICS IN MATTEL'S 30(b)(6) NOTICES ARE CUMULATIVE OF OTHER DISCOVERY, TO WHICH MGA HAS ALREADY RESPONDED ...................................... 24

CONCLUSION ................................................................................ 34

-i-

<div align="center">

**TABLE OF AUTHORITIES**

</div>

**PAGE(S)**

<u>CASES</u>

*3M Co. v. Kanbar*
No. C06-01225, 2007 WL 1794936 (N.D. Cal. June 19, 2007) ............... 11, 20, 21

*Alexander v. FBI*
188 F.R.D. 111 (D.D.C. 1998) ....................................................................... 13, 15

*Clean Earth Remediation & Constr. Servs. v. Am. Int'l Group*
245 F.R.D. 137 (S.D.N.Y. 2007)............................................................................ 17

*CSX Transp. v. Vela*
No. C06-01225, 2007 WL 3334966 (S.D. Ind. Nov. 8, 2007) ............................. 24

*Gross Int'l Ams., Inc. v. MAN Roland, Inc.*
No. Civ. 03-CV-5613-SM, 2006 WL 1134930 (D.N.H. Apr. 28, 2006).............. 20

*Grynberg v. Total S.A.*
No. 03-cv-01280-WYD-BNB, 2006 WL 1186836 (D. Col. May 3, 2006).......... 17

*Hiskett v. Wal-Mart Stores, Inc.*
180 F.R.D. 403 (D. Kan. 1998) .............................................................................. 17

*IBP, Inc. v. Mercantile Bank of Topeka*
179 F.R.D. 316 (D. Kan. 1998).............................................................................. 17

*In re Indep. Serv. Orgs. Antitrust Litig.*
168 F.R.D. 651 (D. Kan. 1996).................................................................. 15, 17, 22

*Innomed Labs, LLC v. Alza Corp.*
211 F.R.D. 237 (S.D.N.Y. 2002)............................................................... 12, 13, 15

*Lawrence v. First Kansas Bank & Trust Co.*
169 F.R.D. 657 (D. Kan. 1996)........................................................................ 18, 20

*McCormick-Morgan, Inc. v. Teledyne Indus.*
134 F.R.D. 275 (N.D. Cal. 1991) .................................................................... passim

*Moses v. Halstead*
236 F.R.D. 667 (D. Kan. 2006)............................................................................... 17

*Reed v. Bennet*
193 F.R.D. 689 (D. Kan. 2000)........................................................................ 12, 15

*Safeco of America v. Rawstron*
181 F.R.D. 441 (C.D. Cal. 1998) .......................................................................... 18

*SmithKline Beecham Corp. v. Apotex Corp.*
No. 98 C 3952, 2000 WL 116082 (N.D. Ill. Jan. 24, 2000)................... 6, 15, 17, 20

*Southern Boston Management Corp. v. BP Prods North Am., Inc.*
No. 03 CIV 6845 (RBM)(RLE), 2006 WL 162916 (S.D.N.Y Jan. 19, 2006). 12, 13

<div align="center">-ii-</div>

**STATUTES**

Fed. R. Civ. P. 26(b)(2)(C) ................................................................... 11

Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii) ................................................ 11, 16, 33

Fed. R. Civ. P. 26(c)(1)(A), (C), (D) ............................................ 12, 33

Fed. R. Civ. P. 26(c)(1)(C) ..................................................................... 16

Fed. R. Civ. P. 26(c)(1). .......................................................................... 11

Fed. R. Civ. Proc. 30(b)(6) ..................................................................... 12

## PRELIMINARY STATEMENT

1
2    Following a January 7, 2008, hearing on Mattel's motion for leave to take
3    additional discovery in excess of the numerical limits on depositions and
4    interrogatories, Judge Larson granted Mattel leave to take the depositions of
5    approximately 49 individual deponents, to serve a set of supplemental interrogatories
6    and to serve two Rule 30(b)(6) deposition notices, one to MGA Entertainment Inc.
7    ("MGA")[1] and another to MGAE De Mexico, S.R.L. De C.V. ("MGA Mexico").[2]
8    Mattel served those Rule 30(b)(6) notices on January 9, 2008.  Together, Mattel's
9    Rule 30(b)(6) notices to MGA and MGA Mexico contain 161 topics of examination
10   covering hundreds of products manufactured by MGA and Mattel over the past
11   several years and seeking oral testimony regarding every fact supporting MGA and
12   MGA Mexico's claims and defenses in this action.[3]  Just one of the 161 topics
13   demands oral testimony describing "[t]he factual basis for [MGA's] affirmative
14   defenses." (Fourth MGA Notice Topic 88; MGA Mexico Notice Topic 37, 51.)
15   Mattel included the following catch-all 30(b)(6) topic:

> To the extent not disclosed in response to any other Topic,
> all other facts RELATING TO any claim made by YOU
> against MATTEL or the CONTESTED MATTEL
> PRODUCTS, and the IDENTITY of all PERSONS with
> knowledge thereof.

19   (Fourth MGA Notice, Topic 26, Miller Decl. Ex. A at 18.)  Mattel refused to identify
20   which of the 161 topics it wanted MGA and MGA Mexico to address prior to the
21   discovery cutoff of January 28, 2008.

22
---
[1]    MGA Entertainment, Inc. ("MGA") and MGAE De Mexico, S.R.L. De C.V. ("MGA Mexico") will be referred to herein collectively as "MGA" unless context requires specificity.

[2]    See Order Granting In Part And Denying In Part Mattel's Motion For Leave Top Take Additional Discovery (Jan. 7, 2008) at 2 ("Mattel may serve the notices of deposition . . . attached to the moving papers as Exs. A-C.").

[3]    See Fourth Notice of Deposition of MGA Entertainment, Inc. Pursuant To Federal Rule of Civil Procedure 30(b)(6) ("Fourth MGA Notice"); Notice of Deposition of MGAE De Mexico, S.R.L. De C.V. Pursuant To Federal Rule Of Civil Procedure 30(b)(6) ("MGA Mexico Notice") (collectively, "Notices").

-1-

1    The topics quoted in the preceding paragraph and the vast majority of Mattel's

2  other 161 topics are improper on their face, as discussed below.  Nevertheless, in

3  discussions over the weekend following the issuance of these Rule 30(b)(6) notices,

4  Mattel took the position that Judge Larson had "compelled" MGA and MGA Mexico

5  to testify on all topics in the notices and had foreclosed any objections or disputes

6  with respect to the propriety of those 30(b)(6) topics.  Based on this position, Mattel

7  refused to narrow any of the 161 topics contained in its notices.  (Miller Decl. ¶¶ 8-9.)

8    Mattel's interpretation of Judge Larson's order is unsupported.  Judge Larson

9  found good cause for relief from the numerical limits on depositions and

10 interrogatories.  His order nowhere foreclosed objections that might be raised to that

11 discovery (other than the objection that it exceeded the permissible limits on

12 discovery).  Moreover, Judge Larson's order expressly distinguished between the

13 "individual" depositions (which Mattel was permitted to "take") and the Rule

14 30(b)(6) deposition notices and interrogatories, which Mattel was permitted only to

15 "serve," thus leaving open the possibility that objections could be made to these

16 lengthy and detailed discovery requests.  (Jan. 7 Order at 3, Miller Decl. Ex. G at

17 161.)  In addition, Judge Larson expressly reaffirmed this Court's authority to hear

18 and resolve all discovery disputes.  (*Id.* at 2.)

19    Mattel's 30(b)(6) notices contain a convoluted morass of unduly burdensome

20 deposition topics that do not come close to describing with "reasonable particularity"

21 the matters on which MGA or MGA Mexico are being asked to testify, as required

22 by Rule 30(b)(6).  For example, Mattel seeks testimony regarding nearly every

23 aspect of hundreds of MGA and Mattel products in a series of topics utilizing the

24 defined terms CONTESTED MGA PRODUCTS and CONTESTED MATTEL

25 PRODUCTS.  Testimony on just a few of the 161 topics would take weeks to

26 complete:

27 ///

28

-2-

1    Topic 1:  The invention, creation, origin, conception, authorship, design and development of the CONTESTED
2    MGA PRODUCTS, including without limitation the circumstances under which and the date(s) on which each
3    occurred and the IDENTITY and role(s) of each PERSON involved.
4
5    Topic 2:  Any revisions, modifications or changes made to any of the CONTESTED MGA PRODUCTS, including
6    without limitation any proposed alternatives, modifications or changes (whether or not implemented) to such
7    CONTESTED MGA PRODUCTS, the date(s) on which such revisions, modifications or changes were made or
8    proposed and the reasons for their implementation or non-implementation.
9    Topic 10:  The tooling and manufacture of any of the CONTESTED MGA PRODUCTS, including but not
10   limited to all invoices, contracts, sales orders, purchase orders and payment relating thereto and including but not
11   limited to all DOCUMENTS relating to the engineering, preparation, fabrication and creation of the molds and face
12   paint masks used in connection therewith and to the film and/or digital files used in connection with the packaging
13   therefor.
14   Topic 11:  The marketing, advertising, promotion and licensing of the CONTESTED MGA PRODUCTS,
15   including but not limited to all marketing studies, marketing plans, sales plans, sales forecasts, strategies,
16   surveys and analyses and including the identity of the channels in which such have been or are disseminated or
17   distributed.
18   (Miller Decl. Ex. A at 14-16.)  These topics are not stated with reasonable
19   particularity and, thus, MGA cannot know how to prepare a witness to testify fully
20   and completely on each topic.  Moreover, as stated, these topics could potentially be
21   read to require the witness to provide oral testimony, from memory, regarding nearly
22   every aspect of the development, manufacture and marketing of hundreds of MGA
23   products.  Rule 30(b)(6) witnesses are human beings, not computers.  This is an
24   impossible task.
25       As one court recognized in a complex intellectual property litigation, "no one
26   human being can be expected to set forth, especially orally in deposition, a fully
27   reliable and sufficiently complex account of all the bases for the contentions made
28   and positions taken . . . ."  *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134

-3-

1   *F.R.D. 275, 286 (N.D. Cal. 1991)* (ordering party seeking discovery to use

2   contention interrogatories instead of 30(b)(6) testimony), *rev'd in part on other*

3   *grounds*, 765 F. Supp. 611 (N.D. Cal. 1991).   Mattel seeks to impose an impossible

4   burden on MGA and then "later try to use the transcripts of these depositions to limit

5   the evidence and arguments [the party] could present, or to argue, as on a motion for

6   summary judgment, that there were insufficient bases for one or more of the

7   contentions [a party] was making or the positions [a party] was taking." *Id.*  The

8   Court should issue an order protecting MGA from this harassment.

9        Mattel's other ploy is to litigate MGA into oblivion by maximizing the burden

10   of litigation through duplicative and cumulative discovery.  It appears that Mattel has

11   taken its past interrogatories, document requests and even prior 30(b)(6) topics and

12   recycled those prior discovery requests into Rule 30(b)(6) topics.  For example:

13       Compare Fourth MGA Notice Topic 8:  "The first date that
each of the CONTESTED MGA PRODUCTS was shown

14       to any PERSON not employed by MGA, whether in
concept, prototype, or finished form, and the IDENTITY of

15       each PERSON involved therein," with Interrogatory No. 3:
"For each concept, design, product, or product packaging

16       identified in YOUR response to Interrogatory No. 2, state
the following facts and IDENTIFY all PERSONS with

17       knowledge of those facts: (1) the first date that each such
concept, design, product, or product packaging was shown

18       or otherwise disclosed to any PERSON not employed by
MGA; (2) the circumstances and location of that disclosure

19       and the name(s) of PERSONS to whom the disclosure was
made; and (3) the first date that each product was made

20       available for retail sale."

21       Compare Fourth MGA Notice Topic 21: " Any potential or
actual confusion, any potential or actual mistake or any

22       potential or actual deception of any PERSON as to the
origin, affiliation, sponsorship or association of the

23       CONTESTED MGA PRODUCTS or CONTESTED
MATTEL PRODUCTS that YOU are aware of, including

24       but not limited to all studies, surveys, interviews, reports
and COMMUNICATIONS regarding any such confusion,

25       mistake or deception.," with Interrogatory No. 7: "State all
facts RELATING TO the allegations in YOUR

26       COMPLAINT  that consumers, the press, and retailers
have confused YOUR products, packaging, and

27       commercials with those of MATTEL, or vice versa.
YOUR response should IDENTIFY all DOCUMENTS that

28       support or otherwise bear on YOUR response and all

**Exhibit 20 Page 173**

1   PERSONS who have knowledge of the facts stated in
    YOUR RESPONSE."

2   Compare Fourth MGA Notice Topic 51: "Mattel's alleged
3   intimidation, coercion or threats to retailers, licensees,
    suppliers and others in the industry," with Interrogatory No.
4   5: "State all facts RELATING TO the allegations in
    Paragraphs 9 and 113 of YOUR COMPLAINT that
5   MATTEL 'intimidated, coerced and threatened retailers,
    licensees, suppliers and others in the industry' and
6   'willfully and maliciously used its power, influence and
    intimidation to threaten certain retailers, suppliers,
7   licensees, distributors and manufacturers so as to limit, if
    not prevent, MGA from doing business with these retailers,
8   suppliers, licensees, distributors and manufacturers, using
    its power and influence to intimidate and manipulate
9   industry bodies.' YOUR response should IDENTIFY all
    DOCUMENTS that support or otherwise bear on YOUR
10  response and all PERSONS who have knowledge of the
    facts stated in YOUR RESPONSE."

11  Compare Fourth MGA Notice Topic 52: "The factual basis
12  for YOUR claim that Mattel 'serially imitated and copy-
    catted [sic] the look of MGA products, trade dress,
13  trademarks, themes, ideas, advertising and
    packaging,'" with Interrogatory No. 6: "State all facts
14  RELATING TO the allegation in Paragraph 9 of YOUR
    COMPLAINT that 'Mattel has . . . serially imitated and
15  copy-catted [sic] the look of MGA products, trade dress,
    trademarks, themes, ideas, advertising and packaging,' or
16  any other contention by YOU that MATTEL created,
    designed, derived, or developed products, packaging, and
17  advertising using concepts, products, or intellectual
    property owned by YOU. YOUR response should
18  IDENTIFY all DOCUMENTS that support or otherwise
    bear on YOUR response and all PERSONS who have
19  knowledge of the facts stated in YOUR RESPONSE."

20  Compare Fourth MGA Notice Topic 54: "The
    identification of YOUR alleged trade dress in connection
21  with the CONTESTED MGA PRODUCTS, including
    without limitation with respect to "themes," and the factual
22  bases for YOUR claim that YOU have any legally
    protected , interest in such trade dress," with Interrogatory
23  No. 48: "Separately IDENTIFY each trade dress that YOU
    contend MATTEL has copied, infringed, or diluted or that
24  is otherwise the subject of YOUR claims, defenses, or
    allegations in THIS ACTION."

25

26  (Miller Decl. Ex. A at 16, 17 and 21, Ex. I at 212, 217, 229, 235, and Ex. Q at 594.)

27  MGA has already provided the information reasonably available to the Company

28  with respect to these issues by answering the interrogatories.  It should not be

-5-

1  subjected to the additional burden and expense of providing duplicative Rule 30(b)(6)

2  testimony on the same topics.

3      In addition, Mattel seeks oral testimony regarding MGA's allegations in this

4  action when contention interrogatories would be a far less expensive and

5  burdensome means of obtaining the same information.   For example, Mattel seeks

6  testimony regarding the "the basis," "the factual basis" or "the factual bases" for

7  particular allegations made by MGA. (*See* Fourth MGA Notice Topics 49, 50, 52-56,

8  58, 59, 84, 85, 88, 90, Miller Decl. Ex. A.)  As Mattel argued in opposition to

9  MGA's motion to compel Rule 30(b)(6) testimony from Mattel, such information is

10 more efficiently sought through the contention interrogatory device. *See SmithKline*

11 *Beecham Corp. v. Apotex Corp., No. 98 C 3952, 2000 WL 116082, at \*9 (N.D. Ill.*

12 *Jan. 24, 2000)* (refusing to compel 30(b)(6) deposition where party "could readily

13 have obtained the same information in a more efficient manner by propounding

14 'standard' interrogatories upon its opponent").

15     This Court should exercise its power under Federal Rule of Civil Procedure

16 26(c) to protect MGA from Mattel's abusive and burdensome litigation tactics.  The

17 Court should issue an order (i) forbidding Mattel from obtaining discovery in

18 response to certain of the topics, including topics that seek "all facts" supporting

19 MGA's and MGA Mexico's claims and defenses in the action and that are

20 duplicative of prior discovery requests, and (ii) requiring Mattel to seek information

21 regarding MGA's specific allegations through the less burdensome and expensive

22 contention interrogatory device.

23                      **STATEMENT OF FACTS**

24     On November 19, 2007, Mattel moved Judge Larson for leave to take

25 additional discovery in this action.  (Miller Decl. ¶5.)  Mattel requested leave to

26 serve 19 supplemental interrogatories, take Carter Bryant's deposition for an

27 additional 21 hours, take 48 additional depositions, and serve two additional Rule

28 30(b)(6) notices, one to MGA and another to MGA Mexico. (*See* Mattel's Proposed

-6-

1  Order Granting Mattel Inc's Motion for Leave to Take Additional Discovery, at 1-2,
2  Miller Decl. Ex. E.)  In requesting this additional discovery, Mattel sought relief
3  from Judge Larson's 24-deposition limit.  (Miller Decl. D.)  Mattel specified in its
4  moving papers the 48 additional depositions that it wanted to take, and sought "leave
5  to serve the First Notice of Deposition of MGAE de Mexico . . . and an additional
6  Notice of Deposition of MGA . . . ."  (Mattel Brief at 2:8-10, Miller Decl. Ex. D; *see*
7  *also* Proposed Order at 2, Miller Decl. Ex. E.)

8       Mattel attached the requested Rule 30(b)(6) deposition notices to its moving
9  papers as Exhibits A and B.  (*Id.*)  Mattel represented to the Court that its proposed
10  Rule 30(b)(6) notices related to Phase 2 of the trial, saying that it had "not
11  propounded a Rule 30(b)(6) Notice of Deposition on MGA or MGAE de Mexico
12  related to either MGA's unfair competition claims or Mattel's counterclaims," and
13  that the requested Rule 30(b)(6) notices "contain topics of testimony which relate to
14  those claims."  (Mattel Brief at 15:7-11, Miller Decl. Ex. D.)  In arguing that the
15  requested discovery would not threaten the trial schedule set by Judge Larson, Mattel
16  represented to the Court that "the bulk of the additional discovery Mattel seeks is for
17  Phase 2," and characterized as "puzzling" the notion that its Rule 30(b)(6) topics
18  related solely to Phase 1 issues.  (Mattel Brief at 2:8-9, 4-5 n.4, Miller Decl. Ex. D.)

19       Following the January 7, 2008, hearing, Judge Larson issued a Minute Order
20  that contained four separate orders, including his Order Granting In Part And
21  Denying In Part Mattel's Motion For Leave To Take Additional Discovery (the
22  "January 7 Order").  Judge Larson prefaced his orders by reaffirming the authority of
23  this Court to hear and decide all discovery disputes in this action:

24          To the extent that this Order decides issues more properly
        decided by the Discovery Master and/or preempts issues
25          currently pending before the Discovery Master, it does so
        only to resolve those issues in the most expeditious manner
26          possible.  As the Court's order appointing the Discovery
        Master requires, any and all discovery disputes must be
27          presented to the Discovery Master for his resolution.

28

-7-

1 │ (Jan. 7 Order at 2, Miller Decl. Ex. G.)[4]  Thus, Judge Larson acknowledged that

2 │ there could be disputes between the parties with respect to the discovery that he was

3 │ authorizing in his January 7 Order, and expressly deferred to this Court to resolve

4 │ those disputes.

5 │       Judge Larson granted Mattel's request for additional discovery, in part,

6 │ including by permitting Mattel to exceed the 24 deposition limit:

7 │           Specifically, the Court grants Mattel's request to take the
  │           individual depositions relating to the Bratz claims (set forth
8 │           in the moving papers at 9-11) and relating to the trade
  │           secret and RICO claims (set forth in the moving papers at
9 │           13).  Mattel may serve the notices of deposition and
  │           propound the interrogatories attached to the moving papers
10 │           as Exs. A-C.

11 │ (Jan. 7 Order at 3, Miller Decl. Ex. G.)  Thus, although the Court specifically

12 │ permitted Mattel to "*take*" the depositions of the *individuals* identified by Mattel on

13 │ the specified pages of its moving papers, the Court only permitted Mattel to "*serve*"

14 │ the Rule 30(b)(6) Notices to MGA and MGA Mexico, which had been attached as

15 │ Exhibits A and B to Mattel's moving papers.  Nowhere in the January 7 Order did

16 │ Judge Larson preclude MGA from raising objections to the 161 topics enumerated in

17 │ those Rule 30(b)(6) notices, or even address the propriety of those topics.  Indeed, as

18 │ noted above, Judge Larson expressly deferred to this Court with respect to any

19 │ discovery disputes that may arise.

20 │       In granting Mattel's motion, Judge Larson authorized Mattel to take

21 │ approximately 49 individual depositions and to serve the two Rule 30(b)(6)

22 │ deposition notices at issue in this Motion.  In addition, to protect the Phase 1 trial

23 │ schedule, Judge Larson specifically prohibited the taking of any of the permitted

24 │

25 │     [4]     Judge Larson stated at the hearing that MGA's *ex parte* application to
26 │ compel depositions was probably a matter that could have been considered by this
   │ Court, but nevertheless elected to hear the matter on the merits and grant the
27 │ application in his Minute Order. (Rep. Tr. at 54:5-16, Miller Decl. Ex. F.)  This may
   │ explain Judge Larson's reference to his decision regarding certain issues more
28 │ properly decided by the Discovery Master.

MGA AND MGA MEXICO'S MOT. FOR PROTECTIVE ORDER FROM 30(b)(6) DEPOSITION NOTICES

Exhibit 20 Page 177

1  depositions in February 2008 absent the stipulation of the parties and assurance to

2  Judge Larson that such discovery would not interfere with the trial schedule:

3        The Court has heretofore refrained from bifurcating
       discovery relating to Phase 1 and Phase 2, believing that
4        such an action is fraught with the potential of unnecessarily
       compounding discovery disputes in a case already
5        predisposed to such disputes.  Nevertheless, in light of the
       additional discovery permitted by this Order, and to the
6        extent that counsel for the parties who are asserting or
       defending against claims to be tried in Phase 2 of the trial
7        are in agreement, the Court will consider a stipulation of
       those parties that designates certain depositions as "Phase
8        2" depositions that may be conducted during the month of
       February, if counsel can assure the Court that such
9        depositions can be so conducted without altering the
       Court's pretrial schedule regarding Phase 1.

10

11  (Jan. 7 Order at 3, Miller Decl. Ex. G.)

12       Mattel served the Rule 30(b)(6) notices of the depositions of MGA and MGA

13  Mexico on January 9, 2008.  (Miller Decl. Exs. A and B.)  The notice of deposition

14  of MGA contains 102 separate topics of examination, and the notice of deposition of

15  MGA Mexico contains an additional 59 topics, for a grand total of 161 topics.  (*Id.*)

16  Mattel noticed the depositions on all 161 topics for January 23, 2008.  (*Id.*)  As noted

17  above, the topics of examination seek testimony regarding all facts that support all of

18  MGA's claims and defenses in the action.  (Miller Decl. Exs. A and B (Fourth MGA

19  Notice Topic 26 and 88; MGA Mexico Topics 37, 51).)  In addition, Mattel seeks

20  testimony on a broad array of subjects related to what it refers to as the

21  "CONTESTED MGA PRODUCTS" and the "CONTESTED MATTEL

22  PRODUCTS."  (*See, e.g., id.* at A (Fourth MGA Notice Topics 1-2, 6-27, 29, 31, 34,

23  48-49, 54, 57-58, 73, 80-81, 83, 97-98).)  Although Mattel defines these terms so

24  broadly that they could be read to include nearly every MGA product sold in the past

25  several years, Mattel estimates that the Phase 2 claims include over 440 Mattel

26  products and more than 200 MGA products, and cite MGA discovery responses

27  identifying 117 witnesses with knowledge of the creation or promotion of those

28  products.  (Mattel Br. at 1:22-23, 13:17-14:2, Miller Decl. Ex. D.)  These are only

-9-

1 | some of the 161 topics propounded by Mattel. The breathtaking scope of these

2 | incredibly burdensome topics is discussed in more detail below and in the

3 | accompanying Separate Statement No. 1 (Fourth MGA Notice) and Separate

4 | Statement No. 2 (MGA Mexico Notice).

5 |         At the request of counsel for Mattel, lead trial counsel for the MGA parties

6 | and lead trial counsel for Mattel conferred by telephone over the weekend of January

7 | 12-13 to discuss the additional discovery that had been authorized by Judge Larson.

8 | (Miller Decl. ¶8.) Counsel for MGA attempted to confer with Mattel's counsel

9 | regarding the Rule 30(b)(6) notices to MGA and MGA Mexico during those

10 | telephonic conferences. (*Id.*) Counsel for MGA asked counsel for Mattel to identify

11 | those topics among the 161 contained in the Rule 30(b)(6) notices on which Mattel

12 | genuinely needed corporate testimony. (*Id.*) Mattel refused to identify any subset of

13 | the topics of examination that it would be willing to accept. (*Id.*)

14 |         In addition, Mattel's counsel took the position that Judge Larson, in granting

15 | the additional discovery sought by Mattel (including the Rule 30(b)(6) notices), had

16 | already ruled that good cause existed for the discovery sought in each of the topics

17 | set forth in the proposed Rule 30(b)(6) notices, "compelled" the Rule 30(b)(6) (and

18 | other) depositions and, thereby, foreclosed any objections that MGA or MGA

19 | Mexico might make to those topics. (Miller Dec. ¶9.) Judge Larson's January 7

20 | Order does not support Mattel's interpretation. As noted above and as MGA's

21 | counsel pointed out to Mattel's counsel, Judge Larson authorized Mattel to "serve"

22 | the Rule 30(b)(6) notices to MGA and MGA Mexico and expressly deferred to this

23 | Court with respect to discovery disputes that might arise as the parties complete

24 | Phase 1 discovery. (Jan. 7 Order at 2, 3, Miller Decl. Ex. G.)

25 |         MGA and MGA Mexico have designated or will designate a witness to testify

26 | on eight of the topics propounded by Mattel in the 30(b)(6) notices at issue in this

27 | Motion -- -- Topics 15 and 19 from the Fourth MGA Notice and Topics 38 through

28 | 43 of the MGA Mexico notice. (Miller Decl. ¶10.) MGA and MGA Mexico served

MGA AND MGA MEXICO'S MOT. FOR PROTECTIVE ORDER FROM 30(b)(6) DEPOSITION NOTICES

Exhibit 20 Page 179

1   Mattel with written objections to the remaining topics.  (Miller Decl. ¶11, Exs. R and

2   S.)  Given Mattel's unyielding position that all topics in its Rule 30(b)(6) notice had

3   been "compelled" and its refusal to narrow the 161 topics at all, MGA and MGA

4   Mexico filed this Motion.  Nevertheless, MGA remains willing to meet and confer

5   with Mattel regarding MGA and MGA Mexico's objections to the topics of

6   examination in an attempt to reach agreement as to a reasonable scope of

7   examination.

8                   **STANDARD FOR PROTECTIVE ORDER**

9          A protective order may issue to "protect a party or person from annoyance,

10  embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).

11  As the party seeking protection, MGA bears the burden of demonstrating that good

12  cause exists for the protective order.  *Id.  See also 3M Co. v. Kanbar*, No. C06-01225

13  JW (HRL), 2007 WL 1794936 (N.D. Cal. June 19, 2007).  Under Federal Rule of

14  Civil Procedure 26(b)(2)(C), the Court:

15          must limit the frequency or extent of discovery otherwise
            allowed by these rules or by local rule if it determines that:
16
            (i) the discovery sought is unreasonably cumulative or
17          duplicative, or can be obtained from some other source that
            is more convenient, less burdensome, or less expensive;
18
            (ii) the party seeking discovery has had ample opportunity
19          to obtain the information by discovery in the action; or

20          (iii) the burden or expense of the proposed discovery
            outweighs its likely benefit, considering the needs of the
21          case, the amount in controversy, the parties' resources, the
            importance of the issues at stake in the action, and the
22          importance of the discovery in resolving the issues.

23  Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

24         Once good cause is established for a protective order under Rule 26(b)(2)(C),

25  Federal Rule 26(c)(1) empowers the Court to fashion several types of remedies to

26  protect MGA and MGA Mexico from the discovery sought in any of the individual

27  Rule 30(b)(6) topics propounded by Mattel, including:

28          (A)  forbidding the disclosure or discovery;

                                        -11-

1            * * * *

2       (C)  prescribing a discovery method other than the one
        selected by the party seeking discovery;
3
        (D)  forbidding inquiry into certain matters, or limiting the
4       scope of disclosure or discovery to certain matters…

5  Fed. R. Civ. P., 26(c)(1)(A), (C) and (D).

6       As discussed in more detail below, good cause exists to forbid or limit the

7  discovery sought in many of the topics set forth in Mattel's Rule 30(b)(6) deposition

8  notices.

9                           **ARGUMENT**

10 **I.   MATTEL'S 30(b)(6) TOPICS FAIL TO DESCRIBE THE TOPICS FOR
        EXAMINATION WITH ANY PARTICULARITY**

11
12      Rule 30(b)(6) allows a party to notice the deposition of a corporation and to

13 specify the areas of inquiry.  Fed. R. Civ. P. 30(b)(6).  Rule 30(b)(6) notices must

14 identify the area of inquiry "with reasonable particularity the matters for

15 examination."  *Id.*  The "reasonable particularity" requirement exists to ensure that a

16 witness can be prepared properly; failure to describe deposition topics with sufficient

17 particularity prevents counsel from adequately identifying and preparing corporate

18 witnesses. *S. Boston Mgmt. Corp. v. BP Prods. N. Am., Inc.*, No. 03CIV6845

19 (RBM)(RLE), 2006 WL 162916, at *1-2 (S.D.N.Y Jan. 19, 2006); *Innomed Labs,*

20 *LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002).  As one court noted:

21              An overbroad Rule 30(b)(6) notice subjects the noticed
22              party to an impossible task.  To avoid liability, the noticed
               party must designate persons knowledgeable in the areas of
23              inquiry listed in the notice… Where, as here, the defendant
               cannot identify the outer limits of the areas of inquiry
24              noticed, compliant designation is not feasible.

25 *Reed v. Bennet*, 193 F.R.D. 689, 692 (D. Kan. 2000).

26      Courts routinely refuse to force 30(b)(6) deponents to respond to deposition

27 topics drafted without reasonable particularity. *See id.  See also Southern Boston,*

28
                                   -12-

1  2006 WL 162916, at *1 (refusing to compel party to produce witness to testify where

2  "notice does not meet the 'reasonable particularity' requirement"); *Innomed*, 211

3  F.R.D. at 240 (refusing to compel further in response to overbroad notice, in

4  contradiction to the 'reasonable particularity' requirement"); *Alexander v. FBI*, 188

5  F.R.D. 111, 121 (D.D.C. 1998) (refusing to compel testimony on topic seeking "'any

6  other matters relevant to this case, or which may lead to the discovery of relevant

7  evidence'" on the grounds that the notice was not sufficiently particularized)

8  (Citation omitted).

9      Mattel made no effort to reasonably particularize its 30(b)(6) topics, as just a

10  few examples from its topics make clear. For example, Topic No. 88 demands that

11  MGA produce a witness to testify concerning: "The factual bases for YOUR

12  affirmative defenses." (Fourth MGA Notice Topic No. 88, Miller Decl. Ex. A.)

13  Mattel seeks the same testimony from MGA Mexico, twice.  (MGA Mexico Topic

14  Nos. 37 and 51, Miller Decl. Ex. B.)  Other of Mattel's topics similarly demand

15  testimony regarding massive, undifferentiated topics.  For example, Mattel's topics 1

16  & 2 to MGA provide as follows:

17          Fourth MGA Notice Topic 1:  The invention, creation,
            origin, conception, authorship, design and development of
18          the CONTESTED MGA PRODUCTS, including without
            limitation the circumstances under which and the date(s) on
19          which each occurred and the IDENTITY and role(s) of
            each PERSON involved.
20
            Fourth MGA Notice Topic 2:  Any revisions, modifications
21          or changes made to any of the CONTESTED MGA
            PRODUCTS, including without limitation any proposed
22          alternatives, modifications or changes (whether or not
            implemented) to such CONTESTED MGA PRODUCTS,
23          the date(s) on which such revisions, modifications or
            changes were made or proposed and the reasons for their
24          implementation or non-implementation.

25  (Fourth MGA Notice Topics 1-2, Miller Decl. Ex. A.)

26      These topics are boundless.  Mattel's definition of "CONTESTED MGA

27  PRODUCTS" incorporates six defined product lines which, taken together, take

28

MGA AND MGA MEXICO'S MOT. FOR PROTECTIVE ORDER FROM 30(b)(6) DEPOSITION NOTICES

Exhibit 20 Page 182

1 more than three pages even to list.[5]  Mattel estimates that the topics involve over 440

2 Mattel products and over 200 MGA products.  (Mattel Br. in Support of Motion for

3 Leave to Take Additional Discovery at 1, 13, Miller Decl. D.)  Mattel's demand also

4 covers every conceivable aspect of each product, including the "invention, creation,

5 origin, conception, authorship, design, [] development[,] . . . revisions,

6 modifications or changes made to" these product lines.  Mattel points to MGA

7 discovery responses identifying 117 individuals with "knowledge of the creation or

8 promotion of those products."  (Mattel Br. at 13-14, Miller Decl. Ex. D.)  Given

9 Mattel's previous Rule 30(b)(6) demands in this action, including with respect to the

10 131 deposition topics that it propounded before the 161 at issue here, Mattel may

11 contend that MGA is required to interview all 117 individuals in order to comply

12 with these two topics alone, and produce a witness to testify – from memory –

13 regarding every conceivable aspect of literally hundreds of different products.

14      If there was any question that Mattel made no effort to particularize its

15 deposition topics, that question is answered by Mattel's Topic 26 to MGA,  which

16 demands that MGA produce a witness to testify about the following:

17      To the extent not disclosed in response to any other Topic,
       all other facts RELATING TO any claim made by YOU
18      against MATTEL or the CONTESTED MATTEL
       PRODUCTS, and the IDENTITY of all PERSONS with
19      knowledge thereof.

20 (Miller Decl. Ex. A.)  As was the case in *Alexander*, which Mattel quoted to this

21 Court with approval,[6] Topic No. 26 and others like it fail to describe the matters for

22 examination with reasonable particularity.  188 F.R.D. at 121 (holding that notice

23 seeking testimony "regarding any other matters relevant to this case, or which may

24

25

26  [5]    See Fourth MGA Notice at 6-9, ¶¶ 18-23, Miller Decl. Ex. A.

27  [6]    Mattel, Inc.'s Opposition To MGA's Motion To Compel Mattel To
    Produce Witnesses Pursuant To Notice Of Deposition Under Rule 30(b)(6), Or, In
28  The Alternative, For Leave To Serve Such Notice at 18-19, Miller Decl. Ex. T.

-14-

1    lead to the discovery of relevant evidence," was not reasonably particularized)

2    (internal quotation marks and citation omitted).

3        Mattel compounds the sweeping vagueness of its topics by adding language

4    that broadens many even further.  For example, many topics describe a broad area of

5    testimony and then include the notation that some subset of information is "included

6    but not limited to" the topic.  *See, e.g.*, Fourth MGA Notice Topics Nos. 10, 13, 14,

7    18-23, 28, 34, 74, 100, Miller Decl. Ex. A [not exclusive].  Under Mattel's own

8    interpretation of Rule 30, use of the "included but not limited to language" renders

9    these topics "defective on their face."[7]  *See also Innomed*, 211 F.R.D. at 240 (holding

10    that "included but not limited to" language in deposition notice "turns the subpoena

11    into an overbroad notice, in contradiction to the 'reasonable particularity' required

12    by Rule 30(b)(6)"); *Reed*, 193 F.R.D. at 692 (similar language caused "Rule 30(b)(6)

13    notice to be overbroad" because noticed party "cannot identify the outer limits of the

14    areas of inquiry noticed").  MGA should not be forced to guess what it is that Mattel

15    seeks.

16    **II.**    **MANY OF MATTEL'S 30(b)(6) TOPICS SEEK INFORMATION THAT**

       **SHOULD BE OBTAINED, IF AT ALL, THROUGH CONTENTION**

17      **INTERROGATORIES RATHER THAN DEPOSITIONS**

18        As Mattel argued in papers recently submitted to this Court, Rule 30(b)(6)

19    depositions should not be used in the place of contention interrogatories to obtain the

20    factual support of a party's claims and defenses.[8]  *See SmithKline*, 2000 WL 116082,

21    at *9  (refusing to compel 30(b)(6) deposition where party "could readily have

22    obtained the same information in a more efficient manner by propounding 'standard'

23    interrogatories upon its opponent"); *In re Indep. Serv. Orgs.*, 168 F.R.D. at 654

24    (granting motion for protective order, reasoning that a party "is not required to have

25

26    [7]      Opp. at 17 (citing *Reed*, 193 F.R.D. at 692), Miller Decl. Ex. T.

27    [8]      Opp., at 23-24 (citing *SmithKline Beecham*, 2000 WL 116082, at *9; *In re Indep. Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996);

28    *McCormick-Morgan*, 134 F.R.D. at 286-87)(Miller Decl. Ex. T).

-15-

**Exhibit 20 Page 184**

1  counsel marshal all of its factual proof and prepare a witness to be able to testify on a

2  given defense or counterclaim") (internal quotation marks omitted); *McCormick-*

3  *Morgan*, 134 F.R.D. at 286-87 (noting difficulties for a non-lawyer witness testifying

4  about contentions in complex intellectual property litigation).

5      Yet, Mattel violates its own rule in the 30(b)(6) notices issued to MGA and

6  MGA Mexico.  Many of the topics set forth in the notices are recapitulations of

7  contention interrogatories already served on MGA.  Others read like classic

8  contention interrogatories, seeking testimony on all facts supporting a particular

9  allegation by MGA or MGA Mexico.  Still others are improper on their face,

10  whether in the form of a 30(b)(6) topic or a contention interrogatory, seeking

11  testimony on all facts supporting MGA's and MGA Mexico's claims and defenses in

12  the action.  The Court should put a stop to this abuse, and order that any topics that

13  can properly be framed as contention interrogatories be removed from the notice and

14  propounded under that alternative discovery method.  See Fed. R. Civ. P.

15  26(b)(2)(C)(i) (protective order should issue where "the discovery sought . . . can be

16  obtained from some other source that is more convenient, less burdensome, or less

17  expensive"); *id.* at 26(c)(1)(C) (authorizing the Court to issue a protective order

18  "prescribing a discovery method other than the one selected by the party seeking

19  discovery").  MGA should not be required to undergo the burden and expense of

20  preparing corporate witnesses to testify on the facts supporting its contentions in the

21  case when that discovery can more appropriately and efficiently be obtained through

22  contention interrogatories.

23  **A.    The Court Should Forbid Discovery In Response To Those Rule**
24  **30(b)(6) Topics That Improperly Seek All Factual Support For All**
    **Of MGA's Claims**
25

26      The Court should forbid the discovery sought in Topics 26, 37 and 54 because

27  it is improperly overbroad and unduly burdensome on its face, whether sought

28  through 30(b)(6) testimony or contention interrogatories.  In those topics, Mattel

-16-

1  seeks oral testimony regarding "[t]he factual bases for [MGA's and MGA Mexico's]
2  affirmative defenses" and, to the extent not otherwise covered by the other 160
3  topics, "all other facts" supporting MGA's claims against Mattel.  (Fourth MGA
4  Notice Topics  26, 54, Miller Decl. Ex. A; MGA Mexico Notice Topic 37, Miller
5  Decl. Ex. B).  As Mattel's own authority demonstrates, these deposition topics are
6  improper: "the recipient of a Rule 30(b)(6) request is not required to have its counsel
7  muster all of its factual evidence to prepare a witness to be able to testify regarding a
8  defense or claim." *SmithKline*, 2000 WL 116082, at*9 (*citing In re Indep. Serv.*
9  *Orgs.*, 168 F.R.D. at 654).
10        The Court should forbid the requested discovery on these topics altogether
11  because they would be improper even as contention interrogatories.  Many courts
12  reject out of hand this type of contention interrogatory as overly broad, unduly
13  burdensome and therefore "inherently improper".  *Clean Earth Remediation &*
14  *Constr. Servs., Inc. v. Am. Int'l Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007)
15  ("[A] number of cases have held that interrogatories seeking identification of all
16  facts supporting a particular allegation are *inherently improper*.") (emphasis added)
17  (collecting cases); *see, e.g., Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006)
18  ("'[C]ontention interrogatories' are overly broad and unduly burdensome on their
19  face if they seek 'all facts' supporting a claim or defense, such that the answering
20  party is required to provide a narrative account of its case"); *Grynberg v. Total S.A.*,
21  Civil Action No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6-7 (D. Col. May
22  3, 2006); *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-05 (D. Kan. 1998)
23  ("Interrogatories should not require the answering party to provide a narrative
24  account of its case."); *IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321
25  (D. Kan. 1998) ("[t]o require specifically 'each and every' fact and application of
26  law to fact . . . would too often require a laborious, time-consuming analysis, search,
27  and description of incidental, secondary, and perhaps irrelevant and trivial details").
28

1    For example, in *Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657

2  (D. Kan. 1996), the court held that plaintiff's contention interrogatories requiring

3  defendant to "state all facts" supporting its denial of allegations made in plaintiff's

4  complaint were overly broad and placed an unreasonable burden on the defendant.

5  *Id.* at 662-663.  The district court recognized:

6          Part of that burden arises in this case by the characteristic
           common to these interrogatories for asking defendant to
7          provide "all" facts in support of its denials of allegations
           pled by plaintiff. To state "all" facts in support of a
8          negative proposition, of course, includes an inventory of
           evidence which defendant itself would offer at trial to
9          refute the claims of plaintiff. Beyond that, however, it
           would further require defendant to provide essentially a
10         review of facts and commentary to support its evaluation, if
           any, that the anticipated evidence of plaintiff as to each
11         disputed paragraph of the complaint simply lacks weight or
           credibility. The request for "all" facts, based not only upon
12         knowledge, but also upon simply information and belief,
           adds a significant and unreasonable burden to the task of
13         the answering party.

14  *Id.* at 663.  In finding the interrogatories to be unduly burdensome, the district court

15  anticipated just the type of abusive discovery that Mattel seeks in these 30(b)(6)

16  deposition topics:

17         the interrogatories in question would require defendant to
           provide the equivalent of a narrative account of its case in
18         defense, addressing each issue and detail raised by its
           denials. This would include every evidentiary fact, details
19         of testimony by supporting witnesses, contents of
           supporting documents, and even argumentative
20         justification for its belief of facts beyond the knowledge of
           defendant. The Court can hardly construe the intent of
21         plaintiff as anything less, given her requests for "all facts"
           and her repeated emphasis in her memoranda upon the
22         word "all."

23  *Id.* at 662; *see also Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-448 (C.D. Cal.

24  1998) (following *Lawrence* and holding that interrogatories that sought to require the

25  answering party to state all facts supporting the denial of statements made in requests

26  for admission were unduly burdensome; finding with respect to the "identification of

27  facts" that "as the court suggested in *Lawrence*, the universe of potentially

28  responsive information is almost endless").

-18-

1    **B.**   **The Information Sought In Certain of Mattel's Rule 30(b)(6) Topics**
2          **Should Be Obtained Through Contention Interrogatories**

3          In a series of 30(b)(6) topics, Mattel seeks testimony regarding the "the basis,"

4    "the factual basis" or "the factual bases" for particular allegations made by MGA or

5    MGA Mexico. (*See* Fourth MGA Notice Topics 49, 50, 52-56, 58, 59, 84, 85, 88,

6    90)(Miller Decl. Ex. A). Other topics similarly demand testimony regarding

7    contentions at issue. (Fourth MGA Notice Topics 64-68, 72, 74, 76, 77.)(*Id.*) These

8    are classic contention interrogatories converted to unduly burdensome 30(b)(6)

9    deposition topics. For example:

10         The factual basis for YOUR claim that any of MATTEL'S
           actions have caused actual dilution. (Fourth MGA Notice,
11         Topic 50)

12         Mattel's alleged intimidation, coercion or threats to
           retailers, licensees, suppliers and others in the industry."
13         (Fourth MGA Notice, Topic 51)

14         The factual basis for YOUR claim that Mattel "serially
           imitated and copy-catted [sic] the look of MGA products,
15         trade dress, trademarks, themes, ideas, advertising and
           packaging." (Fourth MGA Notice, Topic 52)
16
           The basis for YOUR claim that the Bratz dolls launched in
17         2001 were "unique and distinctive." (Fourth MGA Notice,
           Topic 53)
18
           The identification of YOUR alleged trade dress in
19         connection with the CONTESTED MGA PRODUCTS,
           including without limitation with respect to "themes," and
20         the factual bases for YOUR claim that YOU have any
           legally protected interest in such trade dress. (Fourth MGA
21         Notice, Topic 54)

22         The factual basis for YOUR allegation that advertising
           executives have expressed concern about "Bratz" and
23         Mattel's "My Scene," what concerns they expressed and
           the IDENTITY of each such executive. (Fourth MGA
24         Notice, Topic 55)

25         The factual basis for YOUR allegation that the press
           confused YOUR products with MATTEL products and
26         "has taken notice" of alleged confusion between "Bratz"
           and "My Scene." (Fourth MGA Notice, Topic 56)
27
           The factual basis for YOUR claim that MATTEL has
28         infringed, diluted or otherwise violated any trade dress that

                                      -19-

YOU contend YOU own in the CONTESTED MGA PRODUCTS.  (Fourth MGA Notice, Topic 58)

The factual basis for YOUR claim that MATTEL has engaged in "strong-arm tactics, and other illegitimate, unfair and anti-competitive means."  (Fourth MGA Notice, Topic 59)

(Fourth MGA Notice, Miller Decl. Ex.A.)  These are only a few examples.  The following topics are likewise more suitable for interrogatories than burdensome 30(b)(6) topics:  No. 5, 17, 18, 30, 37, 39-41, 43-48, 55, 67, 89-92 and 94 of the Fourth MGA Notice, and MGA Mexico on Topics No. 1, 7, 12, 21, 33-35, 57-58 of the MGA Mexico Notice.

As Mattel has argued, the Court should require Mattel to obtain this information through the less burdensome and expensive, and more efficient, means of contention interrogatories.  *See SmithKline*, 2000 WL 116082, at *9  (finding that "standard" contention interrogatories would be more efficient than requested 30(b)(6) testimony).

C.    **Mattel Improperly Seeks To Obtain Legal Conclusions Through Its 30(b)(6) Notices**

Rule 30(b)(6) depositions are properly limited to factual matters.  Rule 30(b)(6) notices that "in effect, seek[] legal conclusions . . . should not form the basis for 30(b)(6) deposition topics."  *3M Co.*, 2007 WL 1794936, at *2; *see also Gross Int'l Ams., Inc. v. MAN Roland, Inc.*, No. Civ. 03-CV-513-SM, 2006 WL 1134930, at *1 (D.N.H. Apr. 28, 2006) (refusing to compel 30(b)(6) deponent in patent case to answer questions about claim construction "because claim construction is a question of law, and legal contentions are not a proper subject for factual discovery").  This rule is particularly important in complex intellectual property litigation, as the Court explained in *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275 (N.D. Cal. 1991):

to set forth the bases for contentions in this case, it is not enough to describe real world facts and events, even in

-20-

1   considerable detail. Rather, determining what the bases for
    contentions are in this environment involves complex
2   judgments about the relationship between at least three
    kinds of things: (1) evidence/facts/events in the real world
3   (outside litigation), (2) "claims" as particularly set forth in
    the patent in issue and in other patents or other material
4   presented to the patent office, and (3) principles of
    intellectual property law set forth in statutes and in judicial
5   opinions. A non-lawyer deponent might have great
    knowledge about the products in issue here, but be quite ill-
6   equipped to reason reliably about the legal implications of
    the relationship between those products, or their
7   components, and the various claims of the patent in suit or
    of other patents or prior art.

8

9   134 F.R.D. at 287. As is standard where a party seeks to obtain legal theories

10  through a Rule 30(b)(6) deposition, the Court in *McCormick* ordered the parties to

11  respond using contention interrogatories.

12      Many of Mattel's deposition topics, and the definitions employed by Mattel,

13  incorporate concepts of intellectual property law that render the topics inappropriate

14  for response in a 30(b)(6) deposition. For example, Mattel demands that MGA

15  produce a witness to testify concerning "[t]he factual basis for YOUR claim that any

16  of the CONTESTED MGA PRODUCTS have acquired secondary meaning or are

17  famous." (Fourth MGA Notice Topic 49.) Likewise, MGA is asked to testify

18  regarding "MATTEL'S alleged copying, infringement or dilution of the

19  CONTESTED MGA PRODUCTS or any claimed EMBODIMENT thereof" (Topic

20  No. 25), and "[t]he factual basis for YOUR claim that MATTEL has infringed,

21  diluted or otherwise violated any trade dress that YOU contend YOU own in the

22  CONTESTED MGA PRODUCTS" (Fourth MGA Notice Topic 58). (Miller Decl.

23  Ex. A.)

24      MGA should be protected from having to designate a witness in response to

25  these topics. *See 3M Co.*, 2007 WL 1794936, at *2 (granting motion for protective

26  order from 30(b)(6) topics in a trademark infringement case because notice called for

27  legal conclusions through use of terms of art from trademark law).

28

-21-

**III.   MANY OF THE TOPICS IN MATTEL'S 30(b)(6) NOTICES ARE UNDULY BURDENSOME**

Mattel's 30(b)(6) topics impose an undue burden on MGA.  As the Court in *McCormick-Morgan* noted, in complex intellectual property litigation, "no one human being can be expected to set forth, especially orally in deposition, a fully reliable and sufficiently complex account off all the bases for the contentions made and positions taken . . . ." 134 F.R.D. at 286; *see also In re Indep. Serv. Orgs.*, 168 F.R.D. at 654 ("Even under the present-day liberal discovery rules, [a party] is not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or counterclaim.").  The Court in *McCormick-Morgan* described the correct concern expressed by a party served with improper 30(b)(6) notices, stating the fear that a party "would later try to use the transcripts of these depositions to limit the evidence and arguments [the party] could present, or to argue, as on a motion for summary judgment, that there were insufficient bases for one or more of the contentions [a party] was making or the positions [a party] was taking." 134 F.R.D. at 286 .  The court therefore granted a motion for a protective order. *Id.* at 287.

Notwithstanding these admonitions, which Mattel itself has cited to this Court,[9] Mattel demands that MGA produce 30(b)(6) witnesses to testify in minute detail about vast amounts of evidence and contentions put at issue in this matter. The unreasonable burden Mattel would place on MGA is compounded by the definitions Mattel employs, which could be read to require MGA witnesses to testify in detail concerning the details of thousands of individuals, documents, conversations and other facts.

A mere sample of Mattel's requests demonstrate that it would be impossible – to say nothing of the wasted time and money required – to comply with these topics.

---

[9]   Mattel's Opp. at 23-24, Miller Decl. Ex. T.

Exhibit 20 Page 191

1  For example, as noted above, Topics 1 and 2 of the Fourth MGA Notice demand

2  testimony regarding every conceivable aspect of hundreds of products. See supra

3  Part I.  Likewise, Mattel's Topic No. 5 to MGA seeks testimony concerning:

4          The content, meaning, authenticity and source of
           COMMUNICATIONS, advertisements, and/or
5          promotional statements that provide a basis for any claim
           by YOU against MATTEL.
6

7  MGA Topic No. 5.  Mattel defined "communications" to include:

8          any transmittal, and/or receipt of information, whether such
           was oral or written, and whether such was by chance,
9          prearranged, formal or informal, and specifically includes,
           but is not limited to, conversations in person, telephone
10         conversations, electronic mail (including instant messages
           and text messages), voicemail, letters, memoranda,
11         statements, media releases, magazine and newspaper
           articles, and video and audio transmissions.
12

13  Id. at 4-5, ¶ 14.  Thus, in order to comply with this topic and Mattel's definitions,

14  MGA would be required to prepare witnesses to testify regarding every aspect of

15  every promotional claim – in every media, whether oral or in writing, formal or

16  informal – related to MGA's claims against Mattel.

17       Many other of Mattel's topics are likewise so vast, and concern details so

18  minute, that it would be impossible for MGA to prepare witnesses to testify about

19  them completely, including the following:

20         The target market or potential target market, and the
           demographics of any actual, potential or prospective
21         consumers, customers, purchasers or licensees of the
           CONTESTED MGA PRODUCTS. (MGA Topic No. 17.)
22

23         Any complaints or dissatisfaction concerning the
           CONTESTED MGA PRODUCTS, including but not
24         limited to the returns of, or the number of or rate of defects
           for, such products.  (MGA Topic No. 20.)
25

26         DOCUMENTS created by each of the FORMER MATTEL
           EMPLOYEES in the first six months after each joined
27         MGA.  (MGA Topic No. 101.)

28  (Miller Decl. Ex. A.)

-23-

1    As noted above, Mattel's definitions compound the burden the Notices impose

2  on MGA.  For example, any topic that incorporates Mattel's definition of

3  "communication," reprinted above, could be read to require an individual to

4  memorize exact details of potentially hundreds of thousands of conversations, emails,

5  newspaper articles. To comply with Mattel's demand that it identify an individual,

6  for example, MGA's witness would need to testify regarding the individual's name,

7  current or last known business title, current or last known business affiliation, current

8  or last known residential and business address and current or last known phone

9  number.  (Fourth MGA Notice at  3, ¶ 9.(a), Miller Decl. Ex. A).  Particularly given

10  the availability of other forms of discovery, MGA should not be forced to prepare

11  witnesses to marshal this sort of minutiae.  *See, e.g., McCormick-Morgan*, 134 F.R.D.

12  at 286.

13  **IV.   MANY OF THE TOPICS IN MATTEL'S 30(b)(6) NOTICES ARE**

14        **CUMULATIVE OF OTHER DISCOVERY, TO WHICH MGA HAS**
       **ALREADY RESPONDED**

15

16    Good cause to limit Mattel's deposition topics also exists because MGA has

17  already responded to interrogatories seeking much of the same information.  In *CSX*

18  *Transportation Inc.  v. Vela*, No. 2:06-CV-112-RLY-WGH, 2007 WL 3334966, at

19  *6 (S.D. Ind. Nov. 8, 2007), for example, the court granted a motion for protective

20  order where a party sought a 30(b)(6) deposition on the same matters the noticed

21  party had previously answered in discovery.  2007 WL 3334966, at*6.  "That being

22  the case, additional testimony is unduly burdensome."  *Id.*  As in *McCormick-*

23  *Morgan*, there is "no reason to permit the parties in this case to pursue the kind of

24  information [at issue] through more than one discovery device."  134 F.R.D. at 286.

25  Because MGA has already responded to contention and other interrogatories about

26  the same subject matter noticed in Mattel's Rule 30(b)(6) notices, there is no need

27  for the depositions to go forward.

28

For example, Topics in the Fourth MGA Notice seek a broad range of information regarding hundreds of MGA products that has already been the subject of prior interrogatories (listed below):

The invention, creation, origin, conception, authorship, design and development of the CONTESTED MGA PRODUCTS, including without limitation the circumstances under which and the date(s) on which each occurred and the IDENTITY and role(s) of each PERSON involved. (Fourth MGA Notice, Topic 1)

Any revisions, modifications or changes made to any of the CONTESTED MGA PRODUCTS, including without limitation any proposed alternatives, modifications or changes (whether or not implemented) to such CONTESTED MGA PRODUCTS, the date(s) on which such revisions, modifications or changes were made or proposed and the reasons for their implementation or non-implementation. (Fourth MGA Notice, Topic 2)

The first date of manufacture, shipment and availability for distribution and retail sale of each of the CONTESTED MGA PRODUCTS. (Fourth MGA Notice, Topic 7)

The first date that each of the CONTESTED MGA PRODUCTS was shown to any PERSON not employed by MGA, whether in concept, prototype, or finished form, and the IDENTITY of each PERSON involved therein. (Fourth MGA Notice, Topic 8)

The display, exhibition, publication, circulation, or other dissemination of the CONTESTED MGA PRODUCTS to distributors, retailers, licensees, the media, or the public, including but not limited to toy and trade shows and conventions and the date(s) on which such occurred. (Fourth MGA Notice, Topic 14)

Any potential or actual confusion, any potential or actual mistake or any potential or actual deception of any PERSON as to the origin, affiliation, sponsorship or association of the CONTESTED MGA PRODUCTS or CONTESTED MATTEL PRODUCTS that YOU are aware of, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such confusion, mistake or deception. (Fourth MGA Notice, Topic 21)

MATTEL'S alleged copying, infringement or dilution of the CONTESTED MGA PRODUCTS or any claimed EMBODIMENT thereof. (Fourth MGA Notice, Topic 25)

Any damage, loss, injury or unjust enrichment that YOU claim has been sustained by reason of any act or omission

-25-

by MATTEL, including but not limited to any alleged lost profits, lost sales, lost royalty, lost opportunity, lost license, revenue, price erosion, or consequential or incidental damage, including but not limited to the causation for any such alleged unjust enrichment, damage, loss, or injury and the amounts of all such damage, loss, injury or unjust enrichment. (Fourth MGA Notice, Topic 28)

Any similarity or dissimilarity between any of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS. (Fourth MGA Notice, Topic 31)

The hiring, engagement, or retention by YOU of any current or former MATTEL employee or contractor since January 1, 1999, including but not limited to the terms of all employment agreements and agreements RELATING TO confidentiality or the invention, authorship, or ownership of any concept or product. (Fourth MGA Notice, Topic 32)

The factual basis for YOUR claim that any of the CONTESTED MGA PRODUCTS have acquired secondary meaning or are famous. (Fourth MGA Notice, Topic 49)

The factual basis for YOUR claim that any of MATTEL'S actions have caused actual dilution. (Fourth MGA Notice, Topic 50)

Mattel's alleged intimidation, coercion or threats to retailers, licensees, suppliers and others in the industry. (Fourth MGA Notice, Topic 51)

The factual basis for YOUR claim that Mattel "serially imitated and copy-catted [sic] the look of MGA products, trade dress, trademarks, themes, ideas, advertising and packaging." (Fourth MGA Notice, Topic 52)

The identification of YOUR alleged trade dress in connection with the CONTESTED MGA PRODUCTS, including without limitation with respect to "themes," and the factual bases for YOUR claim that YOU have any legally protected , interest in such trade dress. (Fourth MGA Notice, Topic 54)

The factual basis for YOUR allegation that the press confused YOUR products with MATTEL products and "has taken notice" of alleged confusion between "Bratz" and "My Scene." (Fourth MGA Notice, Topic 56)

The factual basis for YOUR claim that MATTEL has infringed, diluted or otherwise violated any trade dress that YOU contend YOU own in the CONTESTED MGA PRODUCTS. (Fourth MGA Notice, Topic 58)

-26-

Mattel's alleged "warnings," "threats" or "intimidation" that are the subject of YOUR claims, including but not limited to all COMMUNICATIONS with any present or former licensees of MATTEL and any present or former distributors and retailers of MGA and MATTEL products. (Fourth MGA Notice, Topic 64)

MATTEL'S alleged "manipulation of the retail market," including by its alleged tampering with MGA's retail displays. (Fourth MGA Notice, Topic 66)

MATTEL'S alleged violation of any rules or restrictions relating to data provided to subscribers by NPD or any other wrongful conduct relating to NPD. (Fourth MGA Notice, Topic 68)

MATTEL'S alleged inducement of CARU to place onerous restrictions on MGA advertisements, and require MGA to amend aspects of commercials that have gone unchallenged in other parties' commercials. (Fourth MGA Notice, Topic 72)

MATTEL'S allegedly improper influence with or within TIA, including but not limited to the procedures for and manner in which the Toy of the Year was selected for 2003. (Fourth MGA Notice, Topic 74)

YOUR understanding or belief of whether the BRYANT/MGA AGREEMENT was lawful when YOU entered into it, and DOCUMENTS and COMMUNICATIONS related thereto. (Fourth MGA Notice, Topic 82)

(Miller Decl. Ex. A.)

MGA has already answered a series of interrogatories propounded by Mattel seeking substantially the same information:

IDENTIFY, fully and separately, each and every PERSON who was involved in the marketing, advertising, promotion, licensing, offering for sale, conception, origin, creation, design, development, sculpting, engineering, reduction to practice, tooling or painting of, or who otherwise produced or contributed to any EMBODIMENT of the CONTESTED MGA PRODUCTS, including without limitation by fully and separately describing each PERSON's role and the start and end dates of such PERSON's involvement. (Mattel's First Set of Interrogatories re Claims of Unfair Competition (propounded 12/20/06), No. 1.) (Miller Decl. Ex. I at 201-02.)

IDENTIFY, fully and separately, each and every concept, design, product, or product packaging that YOU contend

-27-

1   MATTEL copied or infringed (including without limitation
    by internal job or product number, SKU, and bar code
2   number) and, for each such concept, design, product, or
    product packaging, describe, with specificity and in detail,
3   those attributes of the concept, design, product, or product
    packaging that were copied or infringed by MATTEL and
4   the alleged source(s) of those attributes. (Mattel's First Set
    of Interrogatories re Claims of Unfair Competition, No. 2.)
5   (Miller Decl. Ex. I at 205.)

6   For each concept, design, product, or product packaging
    identified in YOUR response to Interrogatory No. 2, state
7   the following facts and IDENTIFY all PERSONS with
    knowledge of those facts: (1) the first date that each such
8   concept, design, product, or product packaging was shown
    or otherwise disclosed to any PERSON not employed by
9   MGA; (2) the circumstances and location of that disclosure
    and the name(s) of PERSONS to whom the disclosure was
10  made; and (3) the first date that each product was made
    available for retail sale. (Mattel's First Set of
11  Interrogatories re Claims of Unfair Competition, No. 3.)
    (Miller Decl. Ex. I at 212.)
12

13  State all facts RELATING to any claim that YOU have
    sustained damage, loss, or injury, or there has been unjust
14  enrichment, by reason of any act or omission by MATTEL.
    YOUR response should explain in detail any calculation of
15  damage, loss, injury, or unjust enrichment that YOU have
    made or which has been made on YOUR behalf or at
16  YOUR request, and should IDENTIFY all DOCUMENTS
    that support or otherwise bear on YOUR response and all
17  PERSONS who have knowledge of the facts stated in
    YOUR RESPONSE. (Mattel's First Set of Interrogatories
18  re Claims of Unfair Competition, No. 4.) (Miller Decl. Ex.
    I at 215-16).

19  State all facts RELATING TO the allegations in
    Paragraphs 9 and 113 of YOUR COMPLAINT that
20  MATTEL 'intimidated, coerced and threatened retailers,
    licensees, suppliers and others in the industry' and
21  'willfully and maliciously used its power, influence and
    intimidation to threaten certain retailers, suppliers,
22  licensees, distributors and manufacturers so as to limit, if
    not prevent, MGA from doing business with these retailers,
23  suppliers, licensees, distributors and manufacturers, using
    its power and influence to intimidate and manipulate
24  industry bodies.' YOUR response should IDENTIFY all
    DOCUMENTS that support or otherwise bear on YOUR
25  response and all PERSONS who have knowledge of the
    facts stated in YOUR RESPONSE. (Mattel's First Set of
26  Interrogatories re Claims of Unfair Competition, No. 5.)
    (Miller Decl. Ex. I at 217-18.)
27

28  State all facts RELATING TO the allegation in Paragraph
    9 of YOUR COMPLAINT that 'Mattel has . . . serially

-28-

Exhibit 20 Page 197

imitated and copy-catted [sic] the look of MGA products, trade dress, trademarks, themes, ideas, advertising and packaging,' or any other contention by YOU that MATTEL created, designed, derived, or developed products, packaging, and advertising using concepts, products, or intellectual property owned by YOU. YOUR response should IDENTIFY all DOCUMENTS that support or otherwise bear on YOUR response and all PERSONS who have knowledge of the facts stated in YOUR RESPONSE. (Mattel's First Set of Interrogatories re Claims of Unfair Competition, No. 6.) (Miller Decl. Ex. I at 229.)

State all facts RELATING TO the allegations in YOUR COMPLAINT that consumers, the press, and retailers have confused YOUR products, packaging, and commercials with those of MATTEL, or vice versa. YOUR response should IDENTIFY all DOCUMENTS that support or otherwise bear on YOUR response and all PERSONS who have knowledge of the facts stated in YOUR RESPONSE. (Mattel's First Set of Interrogatories re Claims of Unfair Competition, No. 7.) (Miller Decl. Ex. I at 235.)

State all facts RELATING TO any allegation by YOU that MATTEL engaged in any unfair practice RELATING TO NPD, including without limitation the use of NPD data, alleged changes of NPD product classifications, or MGA's NPD subscription. YOUR response should IDENTIFY all DOCUMENTS that support or otherwise bear on YOUR response and all PERSONS who have knowledge of the facts stated in YOUR RESPONSE. (Mattel's First Set of Interrogatories re Claims of Unfair Competition, No. 9.) (Miller Decl. Ex. I at 242.)

State all facts RELATING TO any allegation by YOU that MATTEL engaged in any unfair practice RELATING TO any toy industry or consumer organization, including without limitation CARU and TIA. YOUR response should IDENTIFY all DOCUMENTS that support or otherwise bear on YOUR response and all PERSONS who have knowledge of the facts stated in YOUR RESPONSE. (Mattel's First Set of Interrogatories re Claims of Unfair Competition, No. 10.) (Miller Decl. Ex. I at 245.)

IDENTIFY each and every instance in which BRATZ was shown, displayed, or exhibited prior to June 1, 2001, including without limitation by stating the date(s) on which each such instance occurred and the location where each such instance occurred, and IDENTIFY each and every person with knowledge thereof. (Mattel's Second Set of Interrogatories (propounded 4/28/05), No. 10.) (Miller Decl. Ex. M at 328.)

-29-

IDENTIFY each and every BRATZ INVENTION YOU contend was CREATED, in whole or in part, after October 19, 2000 and before June 1, 2001, and for each BRATZ INVENTION so identified state all FACTS that support YOUR contention that such BRATZ INVENTION (or aspects or portions thereof) was CREATED after October 19, 2000 and before June 1, 2001, and IDENTIFY ALL PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE to such facts." (Mattel's Revised Third Set of Interrogatories (propounded 9/21/07), No. 28.) (Miller Decl. Ex. N at 349-50.)

State all facts that support YOUR contention, if YOU so contend, that YOU acted with an innocent state of mind or reasonably believed that MATTEL did not own any rights in any BRATZ INVENTION when BRYANT purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts. (Mattel's Revised Third Set of Interrogatories, No. 36.) (Miller Decl. Ex. N at 413.)

IDENTIFY all PERSONS who at any time have been employed by or under contract with MATTEL, who are now or have been employed by or under contract with YOU since January 1, 1999, and, for each such PERSON, state his or her name, date of hire or effective date of contract, the date on which YOU first had contact with such PERSON regarding potential employment or contracting, the date(s) on which such PERSON was interviewed for possible employment or contracting, each title (if any) such PERSON has held while employed by or under contract with YOU, and the date of termination (if applicable). (Mattel's Revised Third Set of Interrogatories, No. 41.) (Miller Decl. Ex. N at 437-38.)

For each concept, design, product, product packaging, or other matter that YOU contend MATTEL copied or infringed ... state the date that each such concept, design, product, product packaging or other matter was conceived, and IDENTIFY all PERSONS with knowledge of, and all DOCUMENTS that REFER OR RELATE to the foregoing." (Mattel's Amended Fourth Set of Interrogatories (propounded 10/23/07), No. 43.) (Miller Decl. Ex. P at 581.)

For each concept, design, product, product packaging or other matter that YOU contend MATTEL copied or infringed ... state the date that each such concept, design, product, product packaging or other matter was first fixed in any tangible medium of expression (if ever), and IDENTIFY all PERSONS with knowledge of, and all DOCUMENTS that REFER OR RELATE to the foregoing.

-30-

1  (Mattel's Amended Fourth Set of Interrogatories, No. 44.)
(Miller Decl. Ex. P at 584.)

2
3  Separately IDENTIFY each trade dress that YOU contend
MATTEL has copied, infringed, or diluted or that is
otherwise the subject of YOUR claims, defenses, or
4  allegations in THIS ACTION. (Mattel's Seventh Set of
Interrogatories (propounded 10/25/07), No. 48.) (Miller
5  Decl. Ex. Q at 594.)

6  For each trade dress identified in response to Interrogatory
No. 48, separately and fully IDENTIFY each and every
7  MATTEL product, packaging, or other matter that YOU
contend copies, infringes, or dilutes such trade dress,
8  including ... each and every element of the claimed trade
dress that YOU contend MATTEL has copied, infringed,
9  or diluted. (Mattel's Seventh Set of Interrogatories, No.
49.) (Miller Decl. Ex. Q at 599.)

10
For each trade dress identified in response to Interrogatory
11  No. 48, separately and completely IDENTIFY all facts that
support YOUR contention that such trade dress is
12  protectible, all DOCUMENTS that REFER OR RELATE
to the foregoing and all PERSONS with knowledge of the
13  foregoing. (Mattel's Seventh Set of Interrogatories, No.
50.) (Miller Decl. Ex. Q at 604-05.)

14

15  Mattel also attempted to get another bite at the 30(b)(6) apple by duplicating

16  topics propounded to MGA in prior Rule 30(b)(6) notices.  For example, Topic 95

17  from Mattel's Fourth Notice to MGA is:

18  Fourth MGA Notice Topic 95.  Except for deposition
testimony provided in this ACTION, the testimony,
19  transcripts, declarations, affidavits and other sworn written
statements of any other type by or from YOU or made on
20  YOUR behalf that a REFER OR RELATE TO BRATZ and
that REFER OR RELATE TO the time period prior to June
21  30, 2001 (regardless of when such testimony or sworn
statement was taken, given, signed, made or filed).  (Miller
22  Decl. Ex. A.)

23  Topic 95 is duplicative of Topic 34 in Mattel's Second Notice to MGA:

24  Second MGA Notice Topic 34.  Other than those
previously filed and served in this ACTION or in which
25  Mattel, Inc.'s counsel in this ACTION was in attendance,
the testimony, transcripts, declarations, affidavits and other
26  sworn written statements of any other type by or from
YOU or made on YOUR behalf that REFER OR RELATE
27  TO BRATZ THAT REFER OR RELATE TO the time
period prior to June 30, 2001 (regardless of when such

28

-31-
MGA AND MGA MEXICO'S MOT. FOR PROTECTIVE ORDER FROM 30(b)(6) DEPOSITION NOTICES

Exhibit 20 Page 200

testimony or sworn statement was taken, given, signed, made or filed).  (Miller Decl. Ex. A at 53.)

Also, compare Topic 13 in Mattel's Fourth Notice with Topic 33 in its Second Notice to MGA:

> Fourth MGA Notice Topic 13.  Any copyright, patent, design right or any other registration or application for registration of the CONTESTED MGA PRODUCTS, including but not limited to all COMMUNICATIONS relating thereto, and all filings, declarations, affidavits, correspondence, notes and other DOCUMENTS relating thereto. (Miller Decl. Ex. D.)

> Second MGA Notice Topic 33.  The applications for registration and the registrations for copyright, patent, trademark or any other right that REFER OR RELATE TO BRATZ or BRATZ DESIGNS sought, made or obtained by, for or on behalf of YOU or BRYANT, including without limitation COMMUNICATIONS pertaining thereto. (Miller Decl. Ex. C at 53.)

Similarly, compare Topic 10 from Mattel's Fourth Notice with Topics 7, 12 and 13 from Mattel's Second Notice:

> Fourth MGA Notice Topic 10.  The tooling and manufacture of any of the CONTESTED MGA PRODUCTS, including but not limited to all invoices, contracts, sales orders, purchase orders and payment relating thereto and including but not limited to all DOCUMENTS relating to the engineering, preparation, fabrication and creation of the molds and face paint masks used in connection therewith and to the film and/or digital files used in connection with the packaging therefor. (Miller Decl. Ex. A.)

> Second MGA Notice Topic 7.  The identity of, and the design, development, sculpting, development, engineering, rotocasting, modeling, prototyping and first sale of, any doll, product, work or item that has been produced, developed, manufactured, licensed, sold or offered for sale by, for or on behalf of YOU and that was BASED ON any DESIGN [of Carter Bryant].

> Second MGA Notice Topic 12.  The actual, proposed, requested or contemplated manufacture, fabrication or tooling (including the production of molds) of BRATZ, including without limitation the timing thereof and the IDENTITY of each manufacturer and potential manufacturer used, proposed or considered.

> Second MGA Notice Topic 13.  COMMUNICATIONS prior to June 30, 2001 between YOU and any manufacturer,

-32-

distributor, wholesaler, retailer, or any contemplated, proposed or potential manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE TO BRATZ or any BRATZ DESIGN. (Miller Decl. Ex. C at 50-51.)

In the same vein, compare Topic 7 from Mattel's Fourth Notice with Topic 14 from its Second Notice:

Fourth MGA Notice Topic 7. The first date of manufacture, shipment and availability for distribution and retail sale of each of the CONTESTED MGA PRODUCTS. (Miller Decl. Ex. A.)

Second MGA Notice Topic 14. When and where BRATZ was first manufactured, shipped, distributed and sold, and the IDENTITIES and roles of PERSONS involved therein. (Miller Decl. Ex. C at 51.)

The lengthy list of duplicative and cumulative topics set forth above is only partial. It appears that Mattel has taken prior discovery requests propounded by it in this action, including interrogatories, document requests and prior 30(b)(6) notices, and converted them into a convoluted and overgrown list of proposed Rule 30(b)(6) topics. The Federal Rules do not permit this type of harassment. Topics that are cumulative of prior discovery requests are identified in MGA's Separate Statement No. 1 and MGA Mexico's Separate Statement No. 2, and include: Topics 1, 7-9, 14, 21-22, 25-26, 28-29, 31-33, 35, 49-51, 56-60, 64-66, 68-77, 80, 82, 84-87, 95, and 97 of the Fourth MGA Notice; and Topics 2, 4-5, 8, 31-32, 47, 50, 52-56, and 59 of the MGA Mexico Notice. The Court should not permit further discovery on these cumulative requests. Fed. R. Civ. P. 26(b)(2)(C)(i) (protective order must issue where "the discovery sought is unreasonably cumulative or duplicative"); *id.* Rule 26(c)(1)(A) (empowering the Court to forbid the requested discovery).

///
///
///
///

-33-

## CONCLUSION

For the foregoing reasons, MGA and MGA Mexico respectfully request that a protective order issue relieving them of their respective obligations to produce witnesses in response to the topics, as specified above and in Separate Statement No. 1 and Separate Statement No. 2 and in the accompanying [Proposed] Protective Order.

DATED: January 18, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____
RAOUL D. KENNEDY

Attorneys for Cross-Defendants MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE De Mexico, S.R.L. De C.V., and ISAAC LARIAN

-34-

Exhibit 20 Page 203

  

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA - Eastern Division
CIVIL MINUTES – GENERAL

Case No.   CV 04-09059 SGL(RNBx)                      Date:  February 12, 2007
Title:     MATTEL, INC. -v- CARTER BRYANT, DOES 1-10, INCLUSIVE
           Consolidated Action
           CV 05-02727 SGL(RNBx)   MGA ENTERTAINMENT v. MATTEL, INC.,

PRESIDING: HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                                Theresa Lanza
Courtroom Deputy Clerk                    Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:         ATTORNEYS PRESENT FOR DEFENDANTS:

John B. Quinn and Michael Zeller for      Diana M. Torres for MGA
Mattel                                    Keith A. Jacoby for Carter Bryant

PROCEEDINGS:   SCHEDULING CONFERENCE PURSUANT TO FRCP 16(b)

The Court convened a scheduling conference pursuant to FRCP 16(b). Court and counsel discussed case management and thereafter the court set the following schedule: See attachment "Schedule of Trial and Pretrial Dates."

Counsel stipulated pursuant to Local Rule 16-14, to settlement procedure #3, to a retired judicial officer or other private or non-profit dispute resolution body for mediation type settlement proceedings. The Court approves the request and refers this case to an outside Mediator to act as the Settlement Officer. Counsel are directed to contact such outside Mediator to schedule a settlement conference as soon as the parties believe such a conference would be fruitful. The cut-off to complete the mandatory settlement procedures under Local Rule 16-14, is December 3, 2007, in Case No. CV 04-09059-SGL (RNBx) Mattel, Inc. v. Carter Bryant, and the cut-off to complete the mandatory settlement procedures under Local rule 16-14, is April 21, 2008, in Case No. CV 05-02727 SGL (RNBx) MGA Entertainment v. Mattel, Inc.

The Court further ordered that in both Case No. CV 04-09049-SGL (RNBx), Mattel, Inc. v. Carter Bryant, and Case No. CV 05-02727 SGL (RNBx), MGA Entertainment v. Mattel, Inc.:

1.   Non-Expert Depositions are limited to a total of 24 for each side for both cases.
2.   Expert Depositions are limited to a total of 20 for each side for both cases.
3.   Interrogatories are limited to 50 for each side for both cases.

IT IS SO ORDERED.

MINUTES FORM 90                                      Initials of Deputy Clerk: jh
CIVIL – GEN           Page 1    FEB 2 2 2007          00/30

Exhibit 20 Page 204

  

## SCHEDULE OF TRIAL AND PRETRIAL DATES

CASE NAME:    MGA ENTERTAINMENT, INC. V. MATTEL, INC., et al.,

CASE NO:      CV 05-2727-SGL (RNBx)

| Matter | Time | Court Order |
|---|---|---|
| Jury Trial Date | 9:30 am | 07/01/08 |
| Estimated Length of Trial | | |
| (Hearing on Motions in Limine; Hearing on Disputed Jury Instructions | 10:00 am | 06/23/08 |
| Final Pretrial Conference, LR 16-7 Motions in Limine to be filed | 11:00 am | 06/02/08 |
| Lodge Pretrial Conference Order, LR 16-6 to 16-6.2; File Contentions of Fact and Law, LR16-2.8; Exhibit & Witness Lists, LR 16-4 to 16-5; File Status Report regarding Settlement; File Rule 26(e)(1) Supplementation File Agreed Upon Set of Jury Instructions and Verdict Forms LR 49-1 to 49-2, 51-1 to 51-5.1; File Joint Statement regarding Disputed Instructions, Verdicts, etc. | | 05/19/08 |
| Last date to conduct Settlement Conference | | 04/21/08 |
| Last date for hearing motions, LR 7.2, et seq. | 10:00 am | 04/07/08 |
| Discovery cut-off | | 03/03/08 |
| Last date to Amend Pleadings or Add Parties | | Closed |

### ADDITIONAL MATTERS TO BE DETERMINED AT SCHEDULING CONFERENCE

LR 16-14.4 Settlement Selection:
to be discussed

☐ 1. CT/USMJ          ☑ 3. Outside ADR

☐ 2. Attorney Settlement Panel     ☐

DOE Dismissal:          Complaint Filed: 04/13/05      SET DATE
                        Dismissal Date:                to be discussed

Exhibit 20 Page 205

Received:   2/22/07   3:31PM;   RightFAX -> JetFax M820;   Page 1

RightFAX               2/22/2007 3:16      PAGE 001/003    Fax Server

**From:**   Name:        United States District Court
                         312 North Spring Street
                         Los Angeles, CA 90012
            Voice Phone: (213) 894-5474

**To:**     Name:        Michael Zeller
            Company:

                         865 S Figueroa St, 10th Floor,
            City/State:  Los Angeles, CA 90017-2543
            Fax Number:  213-443-3100

<div align="center">

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**



## Automated Document Delivery Service

*Notice pursuant to Rule 77(d) FRCiv.P*
*The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

</div>

**Fax Notes:**

Case 2:05-CV-02727 : MGA ENTERTAINMENT INC V. MATTEL INC ET AL

*Pursuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search Warrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents (Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail address for each division is as follows:*

<div align="center">

*Western Division: CrimIntakeCourtDocs-LA@cacd.uscourts.gov*
*Southern Division: CrimIntakeCourtDocs-SA@cacd.uscourts.gov*
*Eastern Division: CrimIntakeCourtDocs-RS@cacd.uscourts.gov*

</div>

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

<div align="center">

**Switch to e-mail delivery and get these documents sooner!
To switch, complete and submit
Optical Scanning Enrollment / Update form G-76.
Call 213-894-5474 for help and free technical support.**

</div>

*If you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case, a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for which you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

Date and time of transmission:        Thursday, February 22, 2007 3:14:36 PM
Number of pages including this cover sheet:   03

Exhibit 20 Page 206

EXHIBIT 21 REMOVED

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 22 REMOVED

PURSUANT TO PROTECTIVE ORDER

Exhibit 23

00029/2340430.1

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017 | TEL: (213) 443-3000  FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3130

WRITER'S INTERNET ADDRESS
joncorey@quinnemanuel.com

January 27, 2008

VIA E-MAIL AND FACSIMILE

Thomas J. Nolan, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 S. Grand Ave.
Los Angeles, CA  90071

Michael Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA  94111

Alexander Cote, Esq.
Overland Borenstein Scheper & Kim, LLP
300 S. Grand Ave., Ste. 2750
Los Angeles, CA  90071

Re:   Bryant v. Mattel

Dear Messrs. Nolan, Page and Cote:

I am writing pursuant to Local Rule 7-19 to give notice that on January 28, 2008, Mattel will apply ex parte to Judge Larson for an order (1) to compel the depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment (pursuant to Rule 30(b)(6)), and MGAE de Mexico (pursuant to Rule 30(b)(6)), and (2) for leave to take the depositions of other witnesses on or before February 29, 2008; or, in the alternative, for an order shortening time to hear a the application seeking the foregoing relief.

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY  10010 | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA  94111 | TEL (415) 875-6600  FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA  94065 | TEL (650) 801-5000  FAX (650) 801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711  FAX +81 3 5561-1712

Exhibit 23 Page 213

Among the depositions Mattel seeks leave to take on or before February 29, 2008, are the following three categories:

1) Properly served third-parties who were not available before January 28, and as to whom MGA refused to stipulate to taking their depositions in February: Joyce Ng, Andrea Koch, Gentle Giant Studios, Amy Myers, Christensen Glaser, Jorge Castilla, and Kami Gilmour;

2) Witnesses subject to the January 7 Order who, despite Mattel's diligent efforts, have not yet been served; and,

3) Witnesses whose depositions MGA has asked Judge Infante to quash, including the following deponents subject to the January 7 Order: Daphne Gronich, Joe Tiongco, Wachovia Corporation, Moss Adams, MGA (pursuant to Rule 30(b)(6)), and MGAE de Mexico (pursuant to Rule 30(b)(6).

Please advise us immediately whether your clients will oppose the application.

Furthermore, the application is necessitated in part by your clients' continued refusal to stipulate that Mattel may depose in February 2008, various persons and entities who advised that they were unavailable prior to January 28, 2008 and accordingly many affirmatively requested that their depositions be conducted in February. Such persons and entities include, Andreas Koch, Gentle Giant Studios, Jorge Castilla, Amy Myers, Christensen Glaser, Kami Gilmour, and Joyce Ng. Please let us know immediately whether your clients will reconsider and stipulate that the depositions of the above persons and entities may be conducted in February so that Mattel may narrow the issues raised by its ex parte application.

Best Regards,

Jon D. Corey
07209/2369048.1