QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>        Plaintiff,<br><br>    vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>        Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Hon. Edward Infante (Ret.) Pursuant To Order Of December 6, 2006]**<br><br>[PUBLIC REDACTED] DECLARATION OF B. DYLAN PROCTOR IN SUPPORT OF MOTION OF MATTEL, INC. TO COMPEL PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD AS PRIVILEGED BY MGA, ISAAC LARIAN AND THIRD PARTY DAVID ROSENBAUM<br><br>Hearing Date:    TBD<br>Time:            TBD<br>Place:           TBD<br><br>Phase 1<br>Discovery Cut-off:    January 28, 2008<br>Pre-trial Conference:  May 5, 2008<br>Trial Date:   May 27, 2008 |

## PROCTOR DECLARATION

I, B. Dylan Proctor, declare as follows:

1.     I am a member of the bar of the State of California and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel").  I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.     On December 19, 2007, I sent a letter to David Rosenbaum requesting a meet and confer regarding, among other things, documents listed on Mr. Rosenbaum's privilege log that do not appear to be privileged.  Attached as Exhibit 1 is a true and correct copy of my letter to Mr. Rosenbaum.  Mr. Rosenbaum responded on December 21, 2007, stating that he would not be available to meet and confer until January, and that he wanted Amy Park, counsel for MGA, to participate in the meet and confer.  Attached as Exhibit 2 is a true and correct copy of Mr. Rosenbaum's letter to me.

3.     On January 10, 2008 and several times thereafter, I met and conferred with Mr. Rosenbaum and Ms. Park.  Mr. Rosenbaum conceded during the meet and confer that the draft agreement with notes withheld on his log was not transmitted from attorney to client.  Rather, according to Mr. Rosenbaum, the notes merely reflect his thoughts or comments about changes proposed by Bryant's lawyer, Anne Wang, in a draft she had set to Mr. Rosenbaum.  Mr. Rosenbaum stated that at some point in time, either before or after he made the notes, he then offered his client advice regarding the changes proposed by Ms. Wang.  But at no point did Mr. Rosenbaum claim that the notes on the withheld agreement were ever transmitted to his client.

4.     Attached as Exhibit 3 is a true and correct copy of Isaac Larian's Revised Privilege Log, dated January 23, 2008.

-1-

1      5.      Attached as Exhibit 4 is a true and correct copy of the

2   Supplemental Revised Privilege and Redaction Log for MGA's 2005 Document

3   Production, dated November 16, 2007.

4      6.      Attached as Exhibit 5 is a true and correct copy of David

5   Rosenbaum's Privilege Log, dated October 26, 2007.

6      7.      Attached as Exhibit 6 is a true and correct copy of David

7   Rosenbaum's Amended Second Privilege Log, dated January 21, 2008.

8      8.      Attached as Exhibit 7 is a true and correct copy of a draft of the

9   agreement between MGA and Carter Bryant produced by David Rosenbaum,

10   through MGA, and bates stamped DR 00073-85.

11      9.      Attached as Exhibit 8 is a true and correct copy of the Order

12   Granting Mattel's Motion to Compel MGA to Produce Documents Bearing Bates

13   Nos. MGA 0800793-0800794 and MGA 0829296-0829305, dated December 17,

14   2007.

15      10.     Attached as Exhibit 9 is a true and correct copy of Mattel's

16   Motion for Order Finding Waiver and to Compel Production of Documents

17   Withheld as Privileged, dated January 23, 2008.

18      11.     Attached as Exhibit 10 is a true and correct copy of the Amended

19   Answer and Affirmative Defenses of MGA Entertainment Inc., MGA Entertainment

20   (HK) Limited, and MGAE de Mexico S.R.L. de C.V. to Mattel, Inc.'s Second

21   Amended Answer and Counterclaims, dated September 19, 2007.

22      12.     Attached as Exhibit 11 is a true and correct copy of MGA's

23   Complaint in Case No. 05-2727, dated April 13, 2005.

24

25

26

27

28

1          13.    Attached as Exhibit 12 is a true and correct copy of an email

2   chain between Isaac Larian and David Rosenbaum, dated February 10, 2001 through

3   February 15, 2001, produced by MGA as bates-stamp numbers MGA 3708210-

4   MGA 3708211.

5

6          I declare under penalty of perjury under the laws of the United States of

7   America that the foregoing is true and correct.

8          Executed this 28th day of January, 2008, at Los Angeles, California.

9

10                            B. Dylan Proctor

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2369059.1

PROCTOR DECLARATION ISO MATTEL'S MOTION TO COMPEL

**EXHIBIT 1**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

December 19, 2007

**VIA FACSIMILE AND U.S. MAIL**

David Rosenbaum, Esq.
Law Offices of David Rosenbaum
6303 Owensmouth Avenue, 10th Floor
Woodland Hills, California 91367
Fax: (818) 936-3055

Re:     Mattel, Inc. v. Bryant

Dear Mr. Rosenbaum:

I write to request a meet and confer pursuant to Section 5 of the Stipulation for Appointment of a Discovery Master and the Local Rules regarding your objections and responses to Mattel's subpoena for production of documents, which we received on December 3, 2007.

First, you state that you do not have any responsive, non-privileged documents to provide in response to Requests 16, 17 and 18 concerning bill and fee statements, fee and indemnification agreements and payments to you made by Bryant, MGA or Larian. From your privilege log, it appears you possess such documents but are withholding them on the basis of privilege, which is inappropriate. The Court has already found fee and indemnity agreements to be relevant to bias and credibility, and non-privileged. See Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at 11-12; Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for Sanctions, dated June 19, 2007, at 2-

**quinn emanuel urquhart oliver & hedges, llp**

07209/2322170.1

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

EXHIBIT _1_ PAGE _4_

4; Order Re Motions Heard on June 11, 2007, dated June 27, 2007, at 33-34.[1]  Copies of these orders are attached for your reference.  Furthermore, the withheld documents are relevant to crucial issues of timing in this case.  If responsive documents such as fee statements or bills reflect any privileged matters such content may be redacted, but the documents may not be withheld in their entirety as they have been.  Please let us know if you will provide us with documents responsive to these requests in their entirety or in redacted form.

Second, you state you will provide all responsive, non-privileged documents subject to your objections regarding Request Nos. 1-15, 19-26 and 28-29.  As to Request Nos. 16-18 and 27, you state that you have no responsive, non-privileged documents.  Please confirm that you have not withheld any documents on the basis of non-privilege objections.  In other words, please confirm that all responsive documents have been either produced or logged.  If responsive documents have been neither logged nor produced, please be prepared to explain on what basis that is so.

Third, you claim that the draft contract with handwritten comments referenced in entry number 19 on your privilege log is subject to the work product privilege.  It is unclear from the description on your privilege log that this document was prepared in anticipation of litigation.  The same is true as to other documents for which the work product privilege is claimed.  Please be prepared to explain why this document and others are subject to the work product privilege.

Fourth, please confirm for all of the entries on your privilege log that you have produced all portions of these documents that do not reflect the client's confidential communications and/or legal advice.  Also, please be prepared to explain the relationships between the individuals referenced in your privilege log to enable Mattel to assess the claims of privilege.

---

[1]  See also United States v. Blackman, 72 F.3d 1418, 1424 (9th Cir. 1995) ("[a]s a general rule, client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege"); Clarke v. American Commerce Natl. Bank, 974 F.2d 127, 129 (9th Cir. 1992) ("Our decisions have recognized that the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege"); In re Grand Jury Subpoenas, 803 F.2d 493, 499 (9th Cir. 1986) (reversing order quashing a subpoena and requiring attorneys to identify third parties paying their fees).

EXHIBIT _1_ PAGE _5_

I look forward to hearing from you regarding your availability for a meet and confer within the next 5 court days, as required by the Order Appointing a Discovery Master in this action.  If we are not able to resolve these matters informally, we intend to file a motion to compel the production of improperly withheld documents and a complete privilege log, and for other appropriate relief.

Very truly yours,

Dylan Proctor

B. Dylan Proctor

3

EXHIBIT ___/___ PAGE ___6___

**EXHIBIT 2**

## DAVID S. ROSENBAUM
ATTORNEY AT LAW
6303 OWENSMOUTH AVENUE, 10ᵀᴴ FLOOR
WOODLAND HILLS, CALIFORNIA 91367
TELEPHONE: (818) 936-3455
TELEFAX: (818) 936-3055
E-MAIL: drosenbaum@dsrlawoffice.com
ADMITTED TO PRACTICE LAW IN CALIFORNIA AND NEW YORK

December 21, 2007

**BY FAX AND E-MAIL**
B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10ᵗʰ Floor
Los Angeles, CA 90017

      **Re: Mattel, Inc. v Bryant**

Dear Mr. Proctor:

      I am in receipt of your letter dated December 19, 2007.

      I am willing to meet and confer by telephone with you. Without addressing your references in your letter as to various orders issued in the case (other than to say that I do not believe that as a third party I am bound by them), I am not available to engage in this conversation until January 8, 2008. I will be away on vacation from December 26, 2007 through January 4, 2008 and January 8ᵗʰ is convenient both for me and for Amy Park, counsel for MGA, who has informed me that she intends to participate in the conference call.

      I propose that we schedule this conference call for 2PM on January 8ᵗʰ. If that is not convenient for you, please suggest some alternate times/dates after 2PM on January 8ᵗʰ.

                Sincerely,

                David S. Rosenbaum

cc: Amy Park, Esq.

EXHIBIT 2 PAGE 7

**EXHIBIT 3**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 4**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 5**

**Privilege Log of David Rosenbaum re:  Mattel Inc.'s Subpoena Duces Tecum, Dated October 26, 2007**
**In the Action Captioned *Bryant v. Mattel Inc.*, Case No. CV 04-9049 SGL (RNBx),and Consolidated Cases**

| No. | Primary Date | Item Type | From | To | Cc | Bcc | Privilege Type | Description |
|---|---|---|---|---|---|---|---|---|
| 1. | 07/02/01 | Email | Isaac Larian | Patty Glaser, Esq. | David Rosenbaum, Esq. | | Attorney-Client | Email message requesting legal advice regarding lawsuit. |
| 2. | 02/22/01 | Email Chain | David Rosenbaum, Esq. | Victoria O'Connor | | | Attorney-Client; Work Product | Email chain requesting and reflecting legal advice regarding contract. |
| 3. | 02/22/01 | Email Chain | Victoria O'Connor | David Rosenbaum, Esq. | | | Attorney-Client; Work Product | Email chain requesting and reflecting legal advice regarding contract. |
| 4. | 02/21/01 | Email Chain | David Rosenbaum, Esq. | Victoria O'Connor | | | Attorney-Client; Work Product | Email chain requesting and reflecting legal advice regarding contract. |
| 5. | 02/21/01 | Email | Victoria O'Connor | David Rosenbaum, Esq. | | | Attorney-Client | Email message requesting legal advice regarding contract. |
| 6. | 02/10/01 | Email | Isaac Larian | David Rosenbaum, Esq. | | | Attorney-Client | Email message requesting legal advice regarding contract.<br><br>DR 00001-2 |
| 7. | 02/12/01 | Email | David Rosenbaum, Esq. | Isaac Larian | Victoria O'Connor | | Attorney-Client; Work Product | Email message reflecting legal advice regarding contract.<br><br>DR 00003-4 |

EXHIBIT 5 PAGE 28 6

12 - 3

| No. | Primary Date | Item Type | From | To | Cc | Bcc | Privilege Type | Description |
|---|---|---|---|---|---|---|---|---|
| | 02/10/01 | Email | Isaac Larian | David Rosenbaum | | | Attorney-Client | Email message requesting legal advice regarding contract. |
| 8. | 02/10/01 | Email | Isaac Larian | David Rosenbaum, Esq. | | | Attorney-Client | Email message requesting legal advice regarding contract. DR 00005 |
| 9. | 10/04/00 | Email Chain | Victoria O'Connor | David Rosenbaum, Esq. | | | Attorney-Client; Work Product | Email chain requesting and reflecting legal advice regarding contract. |
| 10. | 10/05/00 | Email Chain | David Rosenbaum, Esq. | Victoria O'Connor | | | Attorney-Client; Work Product | Email chain requesting and reflecting legal advice regarding contract. |
| 11. | 10/05/00 | Email Chain | David Rosenbaum, Esq. | Victoria O'Connor | | | Attorney-Client; Work Product | Email chain requesting and reflecting legal advice regarding contract. |
| 12. | 10/05/00 | Email | David Rosenbaum, Esq. | Victoria O'Connor | | | Attorney-Client; Work Product | Email message reflecting legal advice regarding contract. DR 00006-7 |
| | 10/04/00 | Email | Victoria O'Connor | David Rosenbaum, Esq. | | | Attorney-Client | Email message requesting legal advice regarding contract. |

EXHIBIT 5 PAGE 287

2

| No. | Primary Date | Item Type | From | To | Cc | Bcc | Privilege Type | Description |
|---|---|---|---|---|---|---|---|---|
| | 10/04/00 | Email | David Rosenbaum, Esq. | Victoria O'Connor | | | Attorney-Client; Work Product | Email message reflecting legal advice regarding contract. |
| | 10/05/00 | Email | Victoria O'Connor | David Rosenbaum, Esq. | | | Attorney-Client | Email message requesting legal advice regarding contract. |
| 13. | 10/04/00 | Email Chain | David Rosenbaum, Esq. | Victoria O'Connor | | | Attorney-Client; Work Product | Email chain requesting and reflecting legal advice regarding contract. |
| 14. | 09/28/00 | Email | David Rosenbaum, Esq. | Victoria O'Connor | | | Attorney-Client; Work Product | Email message reflecting legal advice regarding contract.<br><br>DR 00008-9 |
| 15. | 09/28/00 | Email | David Rosenbaum, Esq. | Victoria O'Connor | | | Attorney-Client; Work Product | Email message reflecting legal advice regarding contract. |
| 16. | 09/25/00 | Email | Victoria O'Connor | David Rosenbaum, Esq.; Dennis Medici, Esq. | | | Attorney-Client | Email message requesting legal advice regarding contract.<br><br>DR 00010-12 |
| | 09/25/00 | Email | David Rosenbaum, Esq. | Victoria O'Connor; Dennis Medici, Esq. | | | Attorney-Client; Work Product | Email message reflecting legal advice regarding contract. |

EXHIBIT 5 PAGE 288

| No. | Primary Date | Item Type | From | To | Cc | Bcc | Privilege Type | Description |
|---|---|---|---|---|---|---|---|---|
| | 09/25/00 | Email | Victoria O'Connor | Dennis Medici, Esq. | David Rosenbaum, Esq. | | Attorney-Client | Email message requesting legal advice regarding contract. |
| | 09/25/00 | Email | Dennis Medici, Esq. | Victoria O'Connor | David Rosenbaum, Esq. | | Attorney-Client; Work Product | Email message reflecting legal advice regarding contract. |
| 17. | 09/25/00 | Email Chain | Victoria O'Connor | Dennis Medici, Esq. | David Rosenbaum, Esq. | | Attorney-Client | Email message requesting legal advice regarding contract.<br><br>DR 00013-14 |
| | 09/25/00 | Email Chain | Dennis Medici, Esq. | Victoria O'Connor | David Rosenbaum, Esq. | | Attorney-Client; Work Product | Email message reflecting a legal advice regarding contract. |
| 18. | 09/19/00 | Draft Contract | | | | | Work Product | Draft contract with attorney's handwritten comments. |
| 19. | 09/19/00 | Email | Victoria O'Connor | David Rosenbaum, Esq. | | | Attorney-Client; Work Product | Email message requesting legal advice regarding contract.<br><br>DR 00015-16 |

EXHIBIT 5 PAGE 289

| No. | Primary Date | Item Type | From | To | Cc | Bcc | Privilege Type | Description |
|---|---|---|---|---|---|---|---|---|
| | 09/19/00 | Email | David Rosenbaum, Esq. | Victoria O'Connor | | | Attorney-Client; Work Product | Email message reflecting legal advice regarding contract. |
| 20. | 09/19/00 | Email | David Rosenbaum, Esq. | Victoria O'Connor | | | Attorney-Client; Work Product | Email message reflecting legal advice regarding contract.<br><br>DR 00017-18 |
| 21. | 09/14/00 | Email Chain | Victoria O'Connor | David Rosenbaum, Esq. | | | Attorney-Client; Work Product | Email chain requesting and reflecting legal advice regarding contract. |
| 22. | 09/12/00 | Email Chain | David Rosenbaum, Esq. | Victoria O'Connor | Dennis Medici, Esq. | | Attorney-Client; Work Product | Email chain requesting and reflecting legal advice regarding contract. |
| 23. | 09/14/00 | Email Chain | Victoria O'Connor | David Rosenbaum, Esq. | | | Attorney-Client; Work Product | Email chain requesting and reflecting legal advice regarding contract. |
| 24. | 09/12/00 | Email Chain | Victoria O'Connor | David Rosenbaum, Esq. | Dennis Medici, Esq. | | Attorney-Client; Work Product | Email chain requesting and reflecting legal advice regarding contract. |
| 25. | 09/12/00 | Email Chain | David Rosenbaum, Esq. | Victoria O'Connor | Dennis Medici, Esq. | | Attorney-Client; Work Product | Email chain requesting and reflecting legal advice regarding contract. |
| 26. | 07/02/01 | Email | Isaac Larian | Patty Glaser, Esq. | David Rosenbaum, Esq. | | Attorney-Client | Email message requesting legal advice regarding insurance. |

EXHIBIT 5 PAGE 290

| No. | Primary Date | Item Type | From | To | Cc | Bcc | Privilege Type | Description |
|---|---|---|---|---|---|---|---|---|
| 27. | 09/23/03 | Email | David Rosenbaum, Esq. | Isaac Larian | Larry Feldman, Esq.; Robert Turner, Esq.; Mitchell Kamarck, Esq.; joelk@ffork.com | | Attorney-Client; Work Product | Email message reflecting legal advice regarding litigation. |
| 28. | 09/22/03 | Email | Isaac Larian | David Rosenbaum, Esq. | Larry Feldman, Esq.; Robert Turner, Esq.; Mitchell Kamarck, Esq.; joelk@ffork.com | | Attorney-Client; Work Product | Email message requesting legal advice regarding litigation. |
| 29. | 5/27/03 | Letter | David Rosenbaum, Esq. | Keith Jacoby, Esq. | | | Attorney-Client; Work Product | Letter reflecting legal advice regarding litigation. |
| 30. | 6/21/05-7/7/05 | Email Chain | David Rosenbaum, Esq. | Daphne Gronich, Esq. | | | Attorney-Client; Work Product | Email chain requesting and reflecting legal advice regarding litigation. |

EXHIBIT 5 PAGE 291

| No. | Primary Date | Item Type | From | To | Cc | Bcc | Privilege Type | Description |
|---|---|---|---|---|---|---|---|---|
| 31. | 6/21/05-7/7/05 | Email Chain | Daphne Gronich, Esq. | David Rosenbaum, Esq. | Isaac Larian; Larry Feldman, Esq.; Bob Turner Esq. | | Attorney-Client; Work Product | Email chain requesting and reflecting legal advice regarding litigation. |
| 32. | 6/21/05-7/13/05 | Email Chain | David Rosenbaum, Esq. | Bernie Fischbach, Esq. | | | Attorney-Client; Work Product | Email chain requesting and reflecting legal advice regarding litigation. |
| 33. | 6/21/05 | Email | David Rosenbaum, Esq. | Daphne Gronich, Esq. | | | Attorney-Client; Work Product | Email message reflecting legal advice regarding litigation. |
| 34. | 6/21/05 | Email Chain | Daphne Gronich, Esq. | David Rosenbaum, Esq. | | | Attorney-Client; Work Product | Email chain requesting and reflecting legal advice regarding litigation. |
| 35. | 9/12/00 | Time Sheet | David Rosenbaum, Esq. | | | | Attorney-Client | Time record reflecting the nature of legal services provided. |
| 36. | 9/18/00 | Time Sheet | David Rosenbaum, Esq. | | | | Attorney-Client | Time record reflecting the nature of legal services provided. |
| 37. | 9/26/00 | Time Sheet | David Rosenbaum, Esq. | | | | Attorney-Client | Time record reflecting the nature of legal services provided. |
| 38. | 9/28/00 | Time Sheet | David Rosenbaum, Esq. | | | | Attorney-Client | Time record reflecting the nature of legal services provided. |
| 39. | 9/29/00 | Time Sheet | David Rosenbaum, Esq. | | | | Attorney-Client | Time record reflecting the nature of legal services provided. |

EXHIBIT 5 PAGE 292

| No. | Primary Date | Item Type | From | To | Cc | Bcc | Privilege Type | Description |
|---|---|---|---|---|---|---|---|---|
| 40. | 9/19/00 | Time Sheet | David Rosenbaum, Esq. | | | | Attorney-Client | Time record reflecting the nature of legal services provided. |
| 41. | 10/4/00 | Time Sheet | David Rosenbaum, Esq. | | | | Attorney-Client | Time record reflecting the nature of legal services provided. |
| 42. | 6/24/01 | Time Sheet | David Rosenbaum, Esq. | | | | Attorney-Client | Time record reflecting the nature of legal services provided. |
| 43. | 7/2/01 | Time Sheet | David Rosenbaum, Esq. | | | | Attorney-Client | Time record reflecting the nature of legal services provided. |
| 44. | 7/9/01 | Time Sheet | David Rosenbaum, Esq. | | | | Attorney-Client | Time record reflecting the nature of legal services provided. |

EXHIBIT 5 PAGE 293

**EXHIBIT 6**

**Amended Second Privilege Log of David Rosenbaum, Esq. re:  Mattel Inc.'s Subpoena Duces Tecum, Dated January 21, 2008
In the Action Captioned *Bryant v. Mattel Inc.*, Case No. CV 04-9049 SGL (RNBx), and Consolidated Cases**

| No. | Primary Date | Item Type | From | To | Cc | Bcc | Privilege Type | Description |
|---|---|---|---|---|---|---|---|---|
| 45. | 06/05/02 | Email | Lee Ravdin | Isaac Larian; David Rosenbaum, Esq. | Victoria O'Connor; Julie Mote, Esq.; Larry Deitch; Fabianne Chonavel; Paula Treantafelles | | Attorney-Client | Email message between and among MGA employees, David Rosenbaum, Esq., Lee Ravdin (an MGA agent), and Larry Deitch (an MGA agent) reflecting confidential legal advice regarding contract negotiations. |
| 46. | 05/20/02 | Email chain | Victoria O'Connor | Isaac Larian; David Rosenbaum, Esq. | Julie Mote, Esq.; Beth Cahill | | Attorney-Client | Email chain between and among MGA employees, David Rosenbaum, Esq., Lee Ravdin (an MGA agent) and Larry Deitch (an MGA agent) reflecting confidential legal advice regarding contract negotiations. |

EXHIBIT 6  PAGE 294

| No. | Primary Date | Item Type | From | To | Cc | Bcc | Privilege Type | Description |
|---|---|---|---|---|---|---|---|---|
| 47. | 05/16/02 | Email chain | Victoria O'Connor | David Rosenbaum, Esq. | | | Attorney-Client | Email chain between and among MGA employees, David Rosenbaum, Esq., Lee Ravdin (an MGA agent) and Larry Deitch (an MGA agent) reflecting confidential legal advice regarding contract negotiations. |
| 48. | 05/16/02 | Email chain | Isaac Larian | David Rosenbaum, Esq.; Victoria O'Connor | Julie Mote, Esq.; Beth Cahill | | Attorney-Client | Email chain between and among MGA employees, David Rosenbaum, Esq., Lee Ravdin (an MGA agent) and Larry Deitch (an MGA agent) reflecting confidential legal advice regarding contract negotiations. |
| 49. | 05/16/02 | Email chain | David Rosenbaum, Esq. | Isaac Larian; Victoria O'Connor | Julie Mote, Esq.; Beth Cahill | | Attorney-Client | Email chain between and among MGA employees, David Rosenbaum, Esq. and Larry Deitch (an MGA agent) reflecting confidential legal advice regarding contract negotiations. |

EXHIBIT 6 PAGE 295

2

| No. | Primary Date | Item Type | From | To | Cc | Bcc | Privilege Type | Description |
|---|---|---|---|---|---|---|---|---|
| 50. | 05/16/02 | Email chain | Larry Deitch | David Rosenbaum, Esq.; Victoria O'Connor; Lee Ravdin | Isaac Larian | | Attorney-Client | Email chain between and among MGA employees, David Rosenbaum, Esq., Lee Ravdin (an MGA agent) and Larry Deitch (an MGA agent) reflecting confidential legal advice regarding contract negotiations. |
| 51. | 03/01/02 | Email chain | David Rosenbaum, Esq. | David Rosenbaum, Esq. Home | | | Attorney-Client | Email chain between and among MGA employees, David Rosenbaum, Esq. and Larry Deitch (an MGA agent) reflecting confidential legal advice regarding contract negotiations. |
| 52. | 05/16/02 | Email chain | David Rosenbaum, Esq. | Larry Deitch; Victoria O'Connor; Lee Ravdin | Isaac Larian | | Attorney-Client | Email chain between and among MGA employees, David Rosenbaum, Esq., Lee Ravdin (an MGA agent) and Larry Deitch (an MGA agent) reflecting confidential legal advice regarding contract negotiations. |

EXHIBIT 6 PAGE 296

| No. | Primary Date | Item Type | From | To | Cc | Bcc | Privilege Type | Description |
|-----|------|------|------|------|------|------|------|------|
| 53. | 05/16/02 | Email chain | David Rosenbaum, Esq. | Isaac Larian; Victoria O'Connor | Julie Mote, Esq.; Beth Cahill | | Attorney-Client | Email chain between and among MGA employees, David Rosenbaum, Esq., Lee Ravdin (an MGA agent) and Larry Deitch (an MGA agent) reflecting confidential legal advice regarding contract negotiations. |
| 54. | 05/16/02 | Email chain | David Rosenbaum, Esq. | Larry Deitch; Victoria O'Connor; Lee Ravdin | Isaac Larian | | Attorney-Client | Email chain between and among MGA employees, David Rosenbaum, Esq., Lee Ravdin (an MGA agent) and Larry Deitch (an MGA agent) reflecting confidential legal advice regarding contract negotiations. |
| 55. | 02/12/01 | Email chain | David Rosenbaum, Esq. | Isaac Larian | Victoria O'Connor | | Attorney-Client | Email chain requesting and reflecting legal advice regarding contract and intellectual property issues. |
| 56. | 02/22/01 | Email chain | David Rosenbaum, Esq. | Victoria O'Connor | | | Attorney-Client | Email chain requesting and reflecting legal advice regarding contract. |
| 57. | 02/21/01 | Email chain | David Rosenbaum, Esq. | Victoria O'Connor | | | Attorney-Client | Email chain requesting and reflecting legal advice regarding contract. |
| 58. | 02/15/01 | Email chain | David Rosenbaum, Esq. | Isaac Larian | | | Attorney-Client | Email chain requesting and reflecting legal advice regarding contract. |

EXHIBIT __6__ PAGE _297_

| No. | Primary Date | Item Type | From | To | Cc | Bcc | Privilege Type | Description |
|---|---|---|---|---|---|---|---|---|
| 59. | 02/12/01 | Email chain | David Rosenbaum, Esq. | Isaac Larian | Victoria O'Connor | | Attorney-Client | Email chain requesting and reflecting legal advice regarding contract and intellectual property issues. |
| 60. | 10/05/00 | Email chain | David Rosenbaum, Esq. | Victoria O'Connor | | | Attorney-Client | Email chain requesting and reflecting legal advice regarding contract. |
| 61. | 10/04/00 | Email chain | David Rosenbaum, Esq. | Victoria O'Connor | | | Attorney-Client | Email chain requesting and reflecting legal advice regarding contract. |
| 62. | 10/03/00 | Email | David Rosenbaum, Esq. | Victoria O'Connor | | | Attorney-Client | Email message reflecting legal advice regarding contract.<br><br>DR 00106-7 |
| 63. | 10/03/00 | Email chain | David Rosenbaum, Esq. | Victoria O'Connor | | | Attorney-Client | Email chain reflecting legal advice regarding contract.<br><br>DR 00123 |
| 64. | 09/28/00 | Email | David Rosenbaum, Esq. | Victoria O'Connor | | | Attorney-Client | Email message reflecting legal advice regarding contract.<br><br>DR 00141-42 |
| 65. | 09/26/00 | Email chain | David Rosenbaum, Esq. | Victoria O'Connor; Dennis Medici | | | Attorney-Client | Email chain requesting and reflecting legal advice regarding contract.<br><br>DR 00152-53 |

EXHIBIT 6 PAGE 298

| No. | Primary Date | Item Type | From | To | Cc | Bcc | Privilege Type | Description |
|---|---|---|---|---|---|---|---|---|
| 66. | 09/19/00 | Email chain | David Rosenbaum, Esq. | Victoria O'Connor; Dennis Medici | | | Attorney-Client | Email chain requesting and reflecting legal advice regarding contract.<br><br>DR 00154-55 |
| 67. | 09/12/00 | Email chain | David Rosenbaum, Esq. | Victoria O'Connor; Dennis Medici | | | Attorney-Client | Email chain requesting and reflecting legal advice regarding contract. |
| 68. | 09/12/00 | Email chain | David Rosenbaum, Esq. | Victoria O'Connor; Dennis Medici | | | Attorney-Client | Email chain requesting and reflecting legal advice regarding contract. |
| 69. | 08/14/07 | Email chain | Rich Daniels, Esq. | David Rosenbaum, Esq. | | | Attorney-Client; Work Product | Email chain with attachment containing confidential communications and reflecting strategy regarding the current litigation.<br><br>Bates Nos. DR 06188-89 |
| • | 09/19/00 | Email Attachment | | | | | Attorney-Client | Draft contract with attorney's handwritten comments reflecting confidential communications with client.<br>Bates Nos. DR 06190-202 |

EXHIBIT ___6___ PAGE ___299___

**EXHIBIT 7**

**MGA ENTERTAINMENT**
16730 Schoenborn Street
North Hills, California 91343

Dated as of  ~~{September 18, 2000}~~

Mr. Carter Bryant
1319 West 160th Street
Gardena, California 90247

Dear Mr. Bryant:

Set forth below are the terms and conditions upon which we (hereinafter "MGA") are retaining you ("Bryant") to consult and advise MGA in the design and development of certain products which MGA wishes to manufacture and distribute (hereinafter our agreement is sometimes referred to as the "MGA Consulting Agreement"). ~~{Our}~~ [The] agreement [between these two Parties] is as follows:                                                                     REDACTED

                                                REDACTED

1.      Retention as Consultant/Services: MGA retains Bryant to provide his services to consult with MGA and advise MGA on the design and development by MGA of a line of dolls presently known as "Bratz" (the "MGA Products"). Bryant will render his services at such locations and times REDACTED as ~~{may be designated by MGA}~~ [set forth herein]. It is understood and agreed that Bryant shall provide his services on a "top priority" basis as his services pertain to other clients of Bryant. In addition, Bryant and all other Bryant staff will take direction from and be under the supervision of such person(s) as may be [reasonably] designated by MGA from time to time ~~{upon }~~[in accordance with the intentions of the Parties hereunder upon written] notice to Bryant. It is understood and agreed that, subject to MGA's prior written consent, Bryant may retain third party contractors ("Contractors") to assist at his direction in the services to be rendered hereunder. Such third parties shall be compensated ~~{at hourly rates}~~ [in a manner] ("Contractor Fees") to be determined between the [Bryant and such third] parties and shall be subject to the terms of this Agreement, including without limitation, paragraphs 3, 4, and 7, below. Bryant shall enter into agreements with all Contractors on a form approved by MGA as conforming to the terms of this Agreement and confirming MGA's ownership of all results and proceeds of the services provided by any such Contractors; such form is attached a Exhibit "A" to this Agreement, and is incorporated herein by reference.

                                                REDACTED

2.      Term/Exclusivity:  The Term shall commence on the date of this Agreement. MGA shall have the right to terminate this Agreement on not less than ~~{thirty (30)}~~ [forty (45)] days prior written notice to Bryant. During the Term of this Agreement, Bryant will not provide consulting services to any person, firm or corporation engaged in the design, development and manufacture and sale of dolls or similar products.

3.      Ownership [of the Bryant Work Product]: All results and proceeds of the services provided [during the term of this Agreement] by Bryant hereunder and any Contractor, including

                                                                                    REDACTED

{00006662.DOC/ / 09/19/2000 12:04 AM}                     2

                                                            **DR 00073**

EXHIBIT _7_ PAGE _300_

without limitation, any inventions, and any documentation related thereto, and any other material, whether written or oral (collectively, the "Bryant Work Product") shall be {considered "work made for hire"}[assigned to] and shall be owned exclusively, throughout the world, {and in perpetuity} by MGA (including all copyrights and patents therein and thereto, and all renewals and extensions thereof). MGA shall have the sole and exclusive right to use the Bryant Work Product, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify the Bryant Work Product and the results of Bryant's services hereunder and the Contractors' services{, and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised}. MGA shall have the sole and exclusive right to copyright or patent the Bryant Work Product in MGA's name, as the owner and author thereof, and to secure any and all registrations, renewals and extensions of such copyrights and patents in MGA's name or Bryant's name or the Contractors' names, as permitted pursuant to applicable statute[, and MGA shall exercise its best efforts to **secure such registrations, renewals and extensions of such copyright or patent**]. Bryant expressly waives, and shall cause all Contractors to waive, any "moral rights" (as such term is commonly understood around the world) in and to the Bryant Work Product prepared by Bryant and/or the Contractors pursuant to the Agreement. Bryant shall, upon request, execute, acknowledge and deliver, and shall cause each Contractor to execute, acknowledge and deliver, to MGA such additional documents as MGA may deem necessary to evidence and effectuate MGA's rights hereunder{, and Bryant hereby grants to MGA the right as Bryant's attorney in fact to execute, acknowledge, deliver and record in the U.S. Copyright Office, the U.S. Patent Office or elsewhere any and all such documents. If, whether by statutory amendment to the U.S. Copyright and/or Patent Laws, or a decision by a court of competent jurisdiction interpreting such laws, MGA shall not be deemed to be the author or owner of the Bryant Work Product, this Agreement and each agreement with a Contractor shall, nevertheless, constitute an irrevocable assignment by Bryant and each Contractor, as applicable, to MGA of any and all of Bryant's and each Contractors' right, title and interest, including copyright and patent (and all renewals and extensions thereof), in and to the Bryant Work Product}. Bryant acknowledges and agrees, and shall cause each Contractor to acknowledge and agree, that he and they have no interest in and shall not, by virtue of this Agreement or any services rendered by Bryant and/or each Contractor to MGA acquire any interest in the MGA Products and that MGA may exploit the MGA Products and any derivative works thereto, without obligation to Bryant and/or the Contractors, except as provided in Paragraph 4, below. [Nothing in this agreement shall be construed as preventing Bryant from making use of information in the public domain.

**3a.** **Ownership of Improvements or Modifications:**

"Improvements" means any idea, design, concept, technique, invention, discovery, or enhancement made by Bryant and/or an employee or a contractor of Bryant that accomplish incidental, performance, structural or functional improvements to the MGA Products. "Modifications" means any idea, design, concept, technique, invention, discovery, or enhancement made by Bryant and/or an employee or contractor of Bryant that correct errors, update or otherwise modify the Bryant Work Product. MGA shall have sole and exclusive ownership of any such Improvements and Modifications made during the first nine months of the Agreement identified in paragraph 4a. Any Improvements and Modifications made by Bryant thereafter shall be solely and exclusively owned by Bryant.

**3b.** **Reversion of Ownership to Bryant:**

{00006662.DOC/ / 09/19/2000  12:04 AM}

**DR 00074**

EXHIBIT 7 PAGE 301

REDACTED

If royalties paid to Bryant by MGA under paragraph 4(b) do not total One Hundred Thousand Dollars (U.S. $100,000.00) by June 30, 2002, then Bryant shall have the option to terminate this Agreement within forty-five (45) days thereafter by written notice to MGA.  Upon such termination, MGA shall immediately assign all of its right, title and interest, including copyright and patent (and all renewals and extensions thereof), in and to the Bryant Work Product under paragraph 3 and/or the Improvements or Modifications under paragraph 3a to Bryant.]

REDACTED

4.     **Compensation/Costs:**

(a)     For the first six (6) months of the Term of this Agreement, MGA shall pay Bryant for his services at the rate of five thousand five hundred dollars ($5,500.00) per month; for the next three (3) months of the Term, MGA shall pay Bryant for his services at the rate of five thousand dollars ($5,000.00) per month.  All sums paid to Bryant as monthly fees shall be deemed to be non-refundable[, fully recoupable advances against any royalties that may be payable to Bryant pursuant to paragraph 4(b), below][.  Each of such monthly fees shall be paid by MGA within fifteen (15) days after receipt of a monthly record from Bryant as defined in paragraph 4(d)].

REDACTED

REDACTED

(b)     MGA shall pay to Bryant a royalty of {three} [five] percent [{(3%)}][(5%)] of the Net {Sales} Receipts from the  sales [or licensing] by MGA of any of the MGA Products [and/or any derivative works thereto] developed by MGA on which Bryant provided his consulting services[, and/or any copyrighted or patented element or feature thereof attributable to Bryant].  As used herein, the term "Net {Sales} Receipts" means all monies actually received by MGA from [[(1)] its customers on sales of MGA Products[, any derivative works thereto, and/or any copyrighted or patented element or feature thereof attributable to Bryant,] less (i) any and all excise, sales, value added or comparable or similar taxes; (ii) freight and similar third party handling charges paid or payable by MGA; and (iii) returns, [and reasonable] discounts, allowances or credits (inclusive of co-op and trade discounts and allowances)[, and (2) its licensees on licensing of MGA Products and/or any derivative works thereto on which Bryant provided his consulting services, and/or any copyrighted or patented element or feature thereof attributable to Bryant].  MGA shall account to Bryant on a calendar quarterly basis within thirty (30) days after the end of each quarter. All statements of royalties rendered by MGA hereunder shall be conclusive, final, and binding on Bryant, shall constitute an account stated, and shall not be subject to any question for any reason whatsoever unless specific written objection, stating the basis thereof, is given by Bryant to MGA within two (2) years after the date rendered.  No action, suit, or proceeding of any nature in respect of any royalty statement or other accounting rendered by MGA hereunder may be maintained against MGA unless such action, suit, or proceeding is commenced against MGA  in a court of competent jurisdiction within one (1) year after the date of MGA's notice rejecting such objection. Bryant or his representatives shall have the right, not more than once per {year and not more than once per} statement of royalties, to examine MGA's books and records relating to the sales of such MGA Products, such examination to be conducted during MGA's normal business hours and upon reasonable prior written notice.

REDACTED

DR 00075

EXHIBIT 7 PAGE 302

REDACTED

[(b')     MGA shall exercise reasonable business efforts to market, **promote, distribute,** sell and/or license the MGA Products and/or any derivative works thereto **and to collect on all monies due from sales or licensing thereof.**]

(c)     All costs and expenses incurred by Bryant in connection with the **performance of his** obligations hereunder shall be borne solely by Bryant, except as otherwise agreed **and incurred with** MGA's prior written consent.  In the event MGA requests Bryant to travel to the **Orient on MGA's** behalf in connection with his services hereunder, MGA will reimburse Bryant for all travel expenses incurred in connection therewith, such as parking, airfare (economy class), auto rental, meals and hotel accommodations. Reimbursement shall be at the actual cost of such item **without any** mark-up.

REDACTED

(d)     Bryant shall submit ~~{invoices}~~ [records] to MGA  ~~{for his monthly fees (and )[(and~~ **invoices for any]** reimbursable expenses~~{, if and as agreed}~~ [as provided **under paragraph 4(c))]** on a monthly basis.  Each ~~{invoice shall provide sufficient detail to support the monthly fee charges and hours rendered}~~ [record shall briefly identify the services performed **under the Agreement]** (and shall include satisfactory copies of bills and/or payments for reimbursable **expenses,** as applicable).  ~~{MGA shall pay each such invoice within fifteen (15) days after receipt of such invoice, provided, however, MGA reserves the right to request further explanation or documentation before paying any invoice submitted by Bryant.}~~ [Upon request by MGA, Bryant **shall use reasonable** effort to provide further explanation of or documentation on the records.]

REDACTED

5.     Warranties and Indemnity:  Bryant represents, warrants and agrees that:

(a)     he has the right and is free to execute this Agreement, to grant the rights granted by him to MGA hereunder, and to perform each and every term and provision hereof; .

(b)     neither the execution and delivery of this Agreement nor the performance by Bryant of any of his obligations hereunder will constitute a violation, breach or default under any agreement, arrangement or understanding, or any other restriction of any kind, to which Bryant is a party or by which Bryant is bound;

(c)     the Bryant Work Product shall be free of all liens and encumbrances and there will be no claims, demands or actions pending or threatened with respect thereto; ~~{and that the Bryant Work Product is original and no part thereof infringes or shall infringe upon any common law or statutory rights or intellectual property rights of any third party including: without limitation, contractual rights, patents, copyrights, mask work rights, trade secrets, rights of privacy and other intellectual property rights;}~~

(d)     he shall comply with all applicable laws and regulations in force during the Term of this Agreement with respect to the services to be rendered hereunder; and

(e)     he shall indemnify and hold MGA harmless from and against any and all claims, losses, costs, judgments, settlements, damages and expenses (including reasonable counsel fees) arising from any breach by him of any of the warranties, representations and agreements made by him hereunder.

6.     Default/Termination:

{00006662.DOC//09/19/2000 12:04 AM)

DR 00076

EXHIBIT  7  PAGE  303

(a)     In the event either {party} [Party] fails to perform any of its material obligations hereunder, or breaches any representation, warranty or agreement contained herein, the other {party} [Party] may terminate this Agreement on thirty (30) days prior written notice, provided the breaching {party} [Party] shall not have remedied such failure within such thirty (30) day period.

**REDACTED**

(b)     Upon the termination of this Agreement {Bryant} [each Party] shall turn over to {MGA} [the other Party] all materials relating to the MGA Products furnished by {MGA to Bryant or }[the Party to the other Party or the other Party] shall give {MGA} [the Party] satisfactory evidence of their destruction.

7.     **Confidentiality:**

(a)     Bryant shall keep in confidence and not disclose to any third party, without the written permission of MGA, the Confidential Information made known to him under this Agreement. As used herein, the term "Confidential Information" means information relating to MGA's products (whether current or projected), product titles, customers, employees, tools and techniques, designs, drawings, schematics and other documentation relating thereto and other confidential and proprietary business information of MGA and which is expressly labeled or identified to Bryant in writing as "confidential" or which, under the circumstances of such disclosure, Bryant knows, or reasonably should know, are treated by MGA as confidential. This requirement of confidentiality shall not apply to any information that is (i) in the public domain through no wrongful act of Bryant; (ii) rightfully received by the Bryant from a third party who is not bound by a restriction of nondisclosure; (iii) already in the Bryant's possession without restriction as to disclosure; or (iv) required to be disclosed by operation of law or by order of a court or administrative body of competent jurisdiction, (provided that prior to such disclosure, MGA shall first receive notice thereof from Bryant and have the opportunity to contest such order or requirement of disclosure or seek appropriate protective order).

**REDACTED**

(b)     Bryant agrees and acknowledges that all Confidential Information [disclosed to him by MGA] shall be and remain the sole property of MGA. Nothing contained in this Agreement shall be construed as granting to Bryant any right, title or interest of any kind, by license or otherwise, to the Confidential Information [disclosed by MGA], the intellectual property therein or any part or copy thereof. Bryant further acknowledges and agrees that nothing contained herein shall be construed as granting Bryant any right to develop, manufacture, produce and/or distribute any product(s) derived from or which otherwise uses any of the Confidential Information [disclosed by MGA], or authorize or in any way assist others to do so. Bryant may not make, sell, license or distribute copies of the Confidential Information [disclosed by MGA] and may not sublicense, transfer or assign in any manner whatsoever this Agreement or any of Bryant's rights or obligations under this Agreement.

(c)     {Bryant} [Each Party] acknowledges that {his} [its] failure to perform any of the terms or conditions of this Agreement shall result in immediate and irreparable damage to {MGA. Bryant} [the other Party. Each Party] also acknowledges that there may be no adequate remedy at law for such failures and that in the event thereof {MGA} [the other Party] shall be entitled to equitable relief in the nature of injunction and to all other available relief, at law and/or in equity.

8.     **Notices:** All notices, statements and/or payments to be given to the parties hereunder shall be addressed to the parties at the addresses set forth on the first page hereof or at such other address as the parties shall designate in writing from time to time. All notices shall be in writing and

{00006662.DOC// 09/19/2000  12:04 AM}

**DR 00077**

EXHIBIT _7_ PAGE _304_

shall either be served by personal delivery, mail, or facsimile (if confirmed by mail or personal delivery of the hard copy), all charges prepaid. Except as otherwise provided herein, such notices shall be deemed given when personally delivered, all charges prepaid, or on the date five (5) days following the date of mailing, except that notices of change of address shall be effective only after the actual receipt thereof. Copies of all notices to MGA shall be sent to Fischbach, Perlstein & Lieberman LLP, 1875 Century Park East, Suite 850, Los Angeles, California 90067, Attention: David S. Rosenbaum, Esq. [Copies of all notices to Bryant shall be sent to Carter Bryant 1319 West 160th Street, Gardena, California 90247.]          **REDACTED**

9.      Independent Contractor/No Partnership/Third Party Beneficiary: Bryant's relationship with MGA is that of an independent contractor. Bryant does not have, and will not represent that he has, any power, right or authority to bind MGA, or to assume or create any obligation or responsibility, express or implied, on behalf of MGA in MGA's name. Nothing stated in the Agreement shall be construed as constituting a partnership or as creating the relationships of employer/employee or principal/agent between the parties. In all matters relating to the Agreement, Bryant shall not act as MGA's employee within the meaning or application of any federal or state unemployment insurance laws, or any other laws or regulations which may impute any obligations or liabilities to MGA by reason of an employment relationship. Bryant will be solely responsible for all taxes, including without limitation, employee and employer, and that he carries all of his own insurance. Neither of the parties hereto shall hold itself out contrary to the terms of this provision by advertising or otherwise. This Agreement shall not be construed to be for the benefit of any third party.

**REDACTED**   10.     Services [and Obligations] Rendered Deemed Special, etc.:  {Bryant} [Each Party] acknowledges that the services to be rendered {by him hereunder} [and/or obligations imposed under this Agreement] are of a special, unique, extraordinary and intellectual character which gives them peculiar value, the loss of which cannot be adequately compensated for in an action at law and that a breach of any term, condition or covenant hereof will cause irreparable harm and injury {to MGA} and in addition to any other available relief {MGA} [the Parties] will be entitled to seek injunctive relief.

11.     General Provisions:

(a)     This Agreement may not be assigned by either {party} [Party] hereto either voluntarily or by operation of law. Any such assignment shall not relieve such {party} [Party] of its obligations hereunder.

(b)     The titles of the paragraphs of this Agreement are for convenience only and shall not in any way affect the interpretation of any paragraph of this Agreement or the Agreement itself.

(c)     A waiver by either {party} [Party] of the terms or conditions of this Agreement in any instance shall not be deemed or construed to be a waiver of such terms or conditions for the future or of any subsequent breach thereof. All remedies, rights, undertakings, obligations and agreements contained herein shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either {party} [Party].

(d)     Neither {party} [Party] hereto shall be liable to the other for any incidental, consequential, special or punitive damages of any nature or kind, arising out of in connection with a breach by such {party} [Party] of this Agreement, whether such liability is asserted on the basis

{00005662.DOC / / 09/19/2000 12:04 AM}

7

EXHIBIT 7 PAGE 305

of contract, tort (including negligence or strict liability), or otherwise, even if such {party} [Party] has been warned of the possibility of any such loss or damage.

(e)      This Agreement shall be construed and interpreted pursuant to the laws of the State of California, applicable to agreements made and to be performed entirely therein, and the parties hereto submit and consent to the jurisdiction of the courts of the State of California, including Federal Courts located therein, should Federal jurisdiction requirements exist, in any action brought to enforce (or otherwise relating to) this contract.

(f)      This Agreement constitutes the entire Agreement between the {parties} [Parties] hereto and supersedes all prior agreements, whether written or oral, with respect to the subject matter herein contained.  No provision of this Agreement shall be deemed waived, amended or modified by either {party} [Party] unless such waiver, amendment or modification shall be in writing and signed by a duly authorized officer of the {party} [Party] against whom the waiver, amendment or modification is to be enforced.

(g)      Nothing contained in this Agreement shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provision of this Agreement and any material statute, law, ordinance, order or regulation contrary to which the parties hereto have no legal right to contract, the latter shall prevail, but in such event any provision of this Agreement so affected shall be curtailed and limited only to the extent necessary to bring it within the legal requirements.

(h)

(i)

(j)

(k)

(l)

(m)

Kindly indicate your agreement with the foregoing by signing in the space provided below.

Very truly yours,

MGA ENTERTAINMENT

By:_____

Its:_____

AGREED TO AND ACCEPTED:

{00006662.DOC/ / 09/19/2000  12:04 AM}

8

DR 00079

EXHIBIT  7   PAGE  306

CARTER BRYANT

Social Security Number

DR 00080

EXHIBIT 7 PAGE 307

EXHIBIT "A"

INDEPENDENT CONTRACTOR AGREEMENT

The parties to this Agreement ("Agreement") are CARTER BRYANT an individual whose address is 1319 West 160th Street, Gardena, California ("Bryant") and, [an individual whose address is _____ ("Contractor").

Bryant has asked Contractor to provide certain copyrightable and/or patentable work for Bryant in connection with Bryant' services (the "Project") to MGA Entertainment ("MGA") relating to the design and development by MGA of a line of dolls presently known as "Bratz" (the "MGA Product"); and Contractor is willing to perform such work. Contractor's work under this Agreement will be part of what Bryant provides to MGA.  In order to fulfill his obligations to MGA, Bryant wishes to obtain ownership of all rights, including copyrights and patents, in Contractor's work under this Agreement.  Contractor is willing to transfer all rights in the work to Bryant.  Therefore, the parties represent and agree as follows:

1.     Ownership:  All results and proceeds of the services provided by Contractor hereunder, including without limitation, any inventions, and any documentation related thereto, and any other material, whether written or oral (collectively, the "Work Product") shall be [considered "work made for hire"][assigned to] and shall be owned exclusively, throughout the world, [and in perpetuity] by MGA (including all copyrights and patents therein and thereto, and all renewals and extensions thereof). MGA shall have the sole and exclusive right to use the Work Product, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify the Work Product and the results of Contractor's services hereunder, and to freely use, perform, distribute, exhibit and exploit such materials and license and/or sublicense them in any and all media now known or hereafter devised.  MGA shall have the sole and exclusive right to copyright or patent the Work Product in MGA's name, as the owner and author thereof, and to secure any and all registrations, renewals and extensions of such copyrights and patents in MGA's name or Contractor's name as permitted pursuant to applicable statute. Contractor expressly waives any "moral rights" (as such term is commonly understood around the world) in and to the Work Product prepared by Contractor pursuant to this Agreement. Contractor shall, upon request, execute, acknowledge and deliver to MGA such additional documents as MGA may deem necessary to evidence and effectuate MGA's rights hereunder[, and Contractor hereby grants to MGA the right as Contractor's attorney-in-fact, to execute, acknowledge, deliver and record in the U.S. Copyright Office, the U.S. Patent Office or elsewhere any and all such documents. If, whether by statutory amendment to the U.S. Copyright and/or Patent Laws, or a decision by a court of competent jurisdiction interpreting such laws, MGA shall not be deemed to be the author or owner of the Work Product, this Agreement shall, nevertheless, constitute an irrevocable assignment by Contractor to MGA of any and all of Contractor's right, title and interest, including copyright and patent (and all renewals and extensions thereof), in and to the Work Product].  Contractor acknowledges and agrees that Contractor has no interest in and shall not, by virtue of this Agreement or any services rendered by Contractor to MGA acquire any interest in the MGA Products and any derivative works thereto which may embody or incorporate or be derivative of the Work Product. Contractor shall not use display or distribute the Work Product for any purpose other than the Project without MGA's prior written permission.

2.     Contractor's Representations and Warranties:  Contractor represents and warrants to Bryant and MGA as follows: (a) all portions of the Work are original; (b) none of the Work

DR 00081

EXHIBIT 7 PAGE 308

infringes the rights of any third parties; (c) all persons working with or for Contractor on the Project are Contractor's employees working within the scope of their employment or have executed an enforceable "work for [hire/copyright assignment] [hire/assignment]" agreement covering the Project in favor of Contractor or MGA.

     3.    Third Party Beneficiary:  MGA is an intended beneficiary of Contractor's obligations under this Agreement and shall be entitled to enforce them fully.  MGA's rights under this Agreement shall vest immediately upon execution by Bryant and Contractor.

     4.    General Provisions:  This Agreement shall be governed by the internal laws of the state of California.  This Agreement is the complete and final expression of the agreement of the parties with respect to the described project and copyright ownership.  There are no other understandings, representations or agreements, oral or written, between the parties that vary or contradict this Agreement.

DATED this _____ day of _____, 2000.

 

 

CARTER BRYANT _____

 

 

[Contractor] _____

DR 00082

EXHIBIT 7  PAGE 309

——————— REVISION LIST ———————

The bracketed numbers refer to the Page and Paragraph for the start of the paragraph in both the old and the new documents.

[1:4 1:4] Changed    "of September 18, 2000" to "of "
[1:9 1:9] Changed    "Our " to "The "
[1:9 1:9] Changed    "Our agreement is as" to "The agreement ... Parties is as"
[1:10 1:10] Changed "as may be designated by MGA." to "as set forth herein."
[1:10 1:10] Changed "person(s) ... by MGA from" to "person(s) ... by MGA from"
[1:10 1:10] Changed "upon " to "in accordance ... upon written "
[1:10 1:10] Changed "at hourly rates " to "in a manner "
[1:10 1:10] Changed "the parties" to "the Bryant ... third parties"
[1:11 1:11] Changed "thirty (30) " to "forty (45) "
[1:12 1:12] Changed "Ownership:" to "Ownership ... Work Product:"
[1:12 1:12] Changed "provided by" to "provided during ... Agreement by"
[1:12 1:12] Changed "considered ... for hire" " to "assigned to "
[1:12 1:12] Changed "world, and in perpetuity by" to "world, by"
[1:12 1:12] Changed "services, ... hereafter devised." to "services."
[1:12 1:12] Changed "statute." to "statute, and ... or patent."
[1:12 1:12] Changed "hereunder, ... Work Product." to "hereunder."
[1:12 1:12] Changed "below. " to "below. Nothing ... public domain."
[1:12 2:1] Add Paras "3a. Ownership of ... 3a to Bryant. "
[2:2 3:2] Changed    ", fully-recoupable ... 4(b), below" to ". Each of ... paragraph 4(d)"
[2:3 3:3] Changed    "three " to "five "
[2:3 3:3] Changed    "(3%) " to "(5%) "
[2:3 3:3] Changed    "the Net Sales Receipts from" to "the Net Receipts from"
[2:3 3:3] Changed    "sales by" to "sales or licensing by"
[2:3 3:3] Changed    "Products developed" to "Products and/or ... developed"
[2:3 3:3] Changed    "services." to "services, ... to Bryant."
[2:3 3:3] Changed    ""Net Sales Receipts"" to ""Net Receipts""
[2:3 3:3] Changed    "from its" to "from (1) its"
[2:3 3:3] Changed    "Products less" to "Products, ... Bryant, less"
[2:3 3:3] Changed    "returns, discounts," to "returns, and ... discounts,"
[2:3 3:3] Changed    "allowances)." to "allowances), ... to Bryant."
[2:3 3:3] Changed    "per year and ... statement" to "per statement"
[2:3 3:4] Add Para  "(b') MGA shall ... licensing thereof."
[3:2 3:6] Changed    "invoices " to "records "
[3:2 3:6] Changed    "for his monthly fees (and " to "(and invoices for any "
[3:2 3:6] Changed    ", if and as agreed) " to "as provided ... paragraph 4(c)) "
[3:2 3:6] Changed    "invoice shall ... rendered " to "record shall ... Agreement."

{00006662.DOC//09/19/2000 12:04 AM}

12

**DR 00083**

EXHIBIT   7   PAGE   310

| [3:2 3:6] Changed | "MGA shall ... by Bryant." to "Upon request ... the records." |
|---|---|
| [3:6 4:4] Changed | "thereto; and ... property rights; " to "thereto; " |
| [4:2 4:8] Changed | "either party fails" to "either Party fails" |
| [4:2 4:8] Changed | "other party may" to "other Party may" |
| [4:2 4:8] Changed | "breaching party shall" to "breaching Party shall" |
| [4:3 4:9] Changed | "Agreement Bryant shall" to "Agreement each Party shall" |
| [4:3 4:9] Changed | "to MGA all" to "to the other Party all" |
| [4:3 4:9] Changed | "MGA to Bryant or " to "the Party ... other Party " |
| [4:3 4:9] Changed | "give MGA satisfactory" to "give the Party satisfactory" |
| [4:6 5:1] Changed | "Information shall" to "Information ... MGA shall" |
| [4:6 5:1] Changed | "Confidential Information, the" to "Confidential ... by MGA, the" |
| [4:6 5:1] Changed | "Confidential Information, or" to "Confidential ... by MGA, or" |
| [4:6 5:1] Changed | "Information and" to "Information ... by MGA and" |
| [4:7 5:2] Changed | "(c) Bryant ... his failure" to "(c) Each Party ... its failure" |
| [4:7 5:2] Changed | "MGA, Bryant." to "the other ... Each Party " |
| [4:7 5:2] Changed | "MGA " to "the other Party " |
| [5:1 5:3] Changed | "Esq." to "Esq. Copies ... California 90247." |
| [5:3 6:1] Changed | "Services Rendered" to "Services and Obligations Rendered" |
| [5:3 6:1] Changed | "Bryant " to "Each Party " |
| [5:3 6:1] Changed | "by him hereunder " to "and/or obligations ... Agreement " |
| [5:3 6:1] Changed | "injury to MGA and" to "injury and" |
| [5:3 6:1] Changed | "relief MGA will" to "relief the Parties will" |
| [5:5 6:3] Changed | "either party hereto" to "either Party hereto" |
| [5:5 6:3] Changed | "such party of" to "such Party of" |
| [5:7 6:5] Changed | "party " to "Party " |
| [5:7 6:5] Changed | "either party." to "either Party." |
| [5:8 6:6] Changed | "Neither party hereto" to "Neither Party hereto" |
| [5:8 6:6] Changed | "such party of" to "such Party of" |
| [5:8 6:6] Changed | "such party has" to "such Party has" |
| [6:2 6:8] Changed | "parties " to "Parties " |
| [6:2 6:8] Changed | "either party unless" to "either Party unless" |
| [6:2 6:8] Changed | "the party against" to "the Party against" |
| [6:4 7:1] Del Paras | "\\ |

{00006662.DOC/ / 09/19/2000 12:04 AM}

DR 00084

EXHIBIT ___7___ PAGE __311__

\\"
| | | |
|---|---|---|
| [8:5 8:5] Changed | "considered ... for hire" " to "assigned to " |
| [8:5 8:5] Changed | "world, and in perpetuity by" to "world, by" |
| [8:5 8:5] Changed | "hereunder, ... Work Product." to "hereunder," |
| [9:1 8:6] Changed | "hire/copyright assignment" to "hire/assignment" |

{00006662.DOC/ / 09/19/2000 12:04 AM}

14

**DR 00085**

EXHIBIT 7 PAGE 312

**EXHIBIT 8**

1 | Hon. Edward A. Infante (Ret.)
JAMS
2 | Two Embarcadero Center
Suite 1500
3 | San Francisco, California  94111
Telephone:    (415) 774-2611
4 | Facsimile:    (415) 982-5287

5

6

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

11

12 | CARTER BRYANT, an individual,

13 | Plaintiff,

14 | v.

15 | MATTEL, INC., a Delaware corporation,

16 | Defendant.

17

18

19

20 | CONSOLIDATED WITH
MATTEL, INC. v. BRYANT and
MGA ENTERTAINMENT, INC. v. MATTEL,
21 | INC.

22

23

24 | I. INTRODUCTION

25 | Mattel, Inc. ("Mattel") submitted a "Motion to Compel Withheld MGA Documents That

26 | Prove MGA Was Developing Bratz as Early as June 2000."  Specifically, Mattel seeks an order

27 | compelling MGA to produce documents bearing Bates Nos. MGA 0800973-0800974 and MGA

28

CASE NO. C 04-09049 SGL (RNBx)
JAMS Reference No. 1100049450

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

**ORDER GRANTING MATTEL'S
MOTION TO COMPEL MGA TO
PRODUCE DOCUMENTS BEARING
BATES NOS. MGA 0800973-0800974
AND MGA 0829296-0829305**

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

12-17          EXHIBIT 8 PAGE 313

1  0829296 – 0829305, which Mattel characterizes as "smoking gun" documents that prove MGA

2  was developing Bratz as early as June 2000.  MGA contends that the disputed documents were

3  inadvertently produced and are protected by the attorney-client privilege.  At MGA's request,

4  Mattel destroyed the disputed documents.  Mattel, however, disputes MGA's claims of privilege

5  and presently seeks an order compelling production of the disputed documents.  MGA submitted

6  an opposition together with a supporting declaration, and lodged the disputed documents for an *in*

7  *camera* review.  Mattel submitted a reply.  The matter was heard on December 14, 2007.

## II. BACKGROUND

8

9      Mattel's claims in this case include allegations that "Carter Bryant [hereinafter "Bryant"]

10  conceived, created and developed Bratz designs while he was employed by Mattel as a doll

11  designer."  Mattel alleges that "using Mattel resources and while employed by Mattel, Bryant

12  took steps to assist MGA to produce dolls," and that he "concealed his Bratz work from Mattel

13  and wrongfully sold Bratz to MGA while he was a Mattel employee."  Mattel's Second Amended

14  Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, ¶¶2, 26, attached as Ex. 3

15  to Proctor Decl.  Mattel alleges that "as a result of the efforts of Bryant and other Mattel

16  employees working on Bratz (which was done without Mattel's knowledge), the Bratz dolls had

17  been designed and were far along in development during the time that Bryant was employed by

18  Mattel and prior to the time that Bryant left Mattel on October 20, 2000."  Id. at Counterclaims,

19  ¶36.  Mattel claims ownership of Bratz works created by Bryant while he was employed by

20  Mattel, asserts that Bryant breached his duties of loyalty and fiduciary duties to Mattel, and

21  claims that MGA aided and abetted Bryant.  Defendants dispute these allegations.

22      The timing of Bryant's creation and development of Bratz is a central issue in the case,

23  and thus has been the focus of a substantial amount of discovery.  Bryant testified at his

24  deposition that he first pitched the Bratz concept to MGA when he met Paula Garcia in August of

25  2000.  According to the deposition testimony of Bryant and MGA's Isaac Larian ("Larian"),

26  Bryant met Larian for the first time in September 2000.  Larian testified that at the time of the

27  September meeting, Bryant had names for each Bratz doll character.  Larian also testified,

28  however, that one of the Bratz dolls, "Yasmin," was subsequently named after his daughter

EXHIBIT __8__ PAGE __314__

1    Jasmine.

2          Another witness, Anna Rhee, testified that Bryant asked her to paint Bratz doll heads in

3    June 2000.  Bryant, however, testified that he did not ask Ms. Rhee to paint faces for Bratz dolls

4    until November 2000.

5          In the course of discovery, MGA produced documents bearing Bates Nos. MGA 0800973-

6    0800974 and MGA 0829296-0829305 to Mattel.  On August 7, 2007, however, MGA sent Mattel

7    a letter asserting that the documents are protected by the attorney-client privilege and were

8    inadvertently produced.  Accordingly, Mattel destroyed its copies of the disputed documents and

9    so confirmed to MGA.

10         The first document in question, marked as MGA 0800973-0800974, is an internal

11   document sheet (the "Docket Sheet") from Russ, August, Kabat & Kent, trademark prosecution

12   counsel for MGA, regarding MGA's trademark application for "Bratz."  The Docket Sheet

13   includes such information as the name of the mark, the country, the name of the registrant, the

14   application number, the application date (December 11, 2000), the registration number, the

15   registration date (December 2, 2003), the term, the date the renewal is due (December 2, 2013),

16   and the type of goods/services the mark is used for ("Dolls").  Mattel is particularly interested in

17   the notation "Dates of Use:  6-15-2000," which appears in a box entitled "Remarks" on the

     second page of the Docket Sheet.

18         The second document in question, marked as MGA 0829296-0829305, is a facsimile

19   dated December 7, 2000 (the "Fax") from Lucy B. Arant, trademark counsel at Russ, August,

20   Kabat & Kent to Paula Garcia (then known as Paula Traentafellas) at MGA.  The first page of the

21   Fax includes a written message from Ms. Arant to Ms. Garcia stating that the Fax attaches four

22   trademark applications for Isaac Larian's review and signature.  The message also includes the

23   following remarks by Ms. Arant to Ms. Garcia:  "You indicated that all four of the applications

24   have a date of first use of June 15, 2000.  Please confirm that this is correct."  The remainder of

25   the Fax consists of the "intent to use" trademark applications for "Jade," "Yasmin," "Sasha," and

26   "Bratz."  These "intent to use" trademark applications do not include any information regarding

27   "dates of use."

28
     Bryant v. Mattel, Inc.,                                                                              3
     CV-04-09049 SGL (RNBx)

EXHIBIT __8__ PAGE _315_

1   Mr. Larian executed MGA's trademark applications for "Jade," "Yasmin," "Sasha," and

2   "Bratz" on the day the Fax was sent, December 7, 2000, and the applications were filed with the

3   Patent and Trademark Office ("PTO"). MGA subsequently filed a statement of use for each of

4   the four marks that specified dates in May of 2001 for the "date of first use" and a "date of first

5   use in commerce," which are significantly different from the June 15, 2000 date noted in the

6   Docket Sheet and the Fax.

7   Mattel contends that the disputed documents, and in particular the June 15, 2000 date

8   noted therein, are relevant to its claim that Bryant secretly worked with MGA on Bratz while he

9   was employed by Mattel. Bryant was employed at Mattel from January 4, 1999 until October 20,

10   2000. Mattel also contends that the disputed documents are relevant to challenge the credibility

    of defendants' key witnesses, and to substantiate the testimony of Ms. Rhee.

11   Furthermore, Mattel contends that neither of the disputed documents are protected by the

12   attorney-client privilege. Mattel contends that the Docket Sheet is not a communication, much

13   less a communication from MGA to counsel for the purpose of obtaining legal advice. Rather, in

14   Mattel's view, the Docket Sheet is an internal law firm document that contains basic facts that are

15   not privileged.

16   Mattel also contends that even if the Docket Sheet were a privileged communication, the

17   information contained within it, including the date of first use information, is not privileged

18   because MGA did not communicate the information for the purpose of keeping it confidential.

19   Rather, Mattel contends that MGA communicated the date of first use and other information listed

20   on the Docket Sheet to its trademark attorneys so that they could use the information to register

21   MGA's marks with the PTO. Indeed, Mattel points out that after MGA submitted its "intent to

22   use" trademark applications, MGA submitted a "statement of use" for each of its marks to the

23   PTO that specified a "date of first use," although the specified "date of first use" was not June 15,

24   2000.

25   Moreover, Mattel contends that applicants for trademarks must disclose to the PTO a date

26   of first use of the mark. Mattel explains that an applicant may initially apply to register a

27   trademark by filing an application for use of a trademark or by filing an application for bona fide

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    4

EXHIBIT __8__ PAGE __316__

1   intention to use a trademark (see 15 U.S.C. §1051(a) and (b)), but in either case the applicant

2   must eventually disclose a "date of first use" of the mark.  A use-based application must include

3   the date of first use of the mark at the outset.  See 15 U.S.C. §1051(a)(1).  In contrast, an "intent

4   to use" applicant must, within six month of the PTO's issuance of notice of allowance, file a

5   "statement that verifies the mark is in use in commerce, the date of first use in commerce, the

6   goods and services in connection with the mark are used in commerce, and the manner in which

7   the mark is being used."  Eastman V. Kodak Co. v. Bell & Howell Document Management

8   Products Co., 994 F.2d 1569, 1570 (C.A. Fed. 1993).  Mattel reasons that because MGA was

9   required to submit information about the date of first use to the PTO in order for MGA to obtain a

10  trademark registration, MGA could not have provided the information to trademark counsel with

    any reasonable expectation or intention that such information would remain confidential.

11
        Mattel contends that the Fax is not privileged because it is a communication from counsel

12  to MGA, not vice versa, and that the attachments are non-privileged trademark applications.

13  Mattel also contends that the Fax is not privileged because it does not reveal any confidential

14  communication for the purpose of rendering legal advice.  Rather, Mattel reiterates that MGA was

15  required to submit information about the date of first use to the PTO in order for MGA to obtain a

16  trademark registration, and therefore MGA could not have expected or intended that such

17  information remain confidential.

18      MGA contends that the declaration of MGA employee Paula Garcia demonstrates that the

19  communications by MGA to its counsel regarding date of first use for the Bratz doll marks were

20  intended to be confidential attorney-client communications for the purpose of obtaining legal

21  advice for trademark applications.  Accordingly, MGA contends that the references to the date of

22  first use in the Docket Sheet and the Fax are protected because the references reflect a client

23  confidence transmitted as part of a privileged communication.

24      MGA contends that Ms. Arant's role was not as a "mere conduit of data" or transcriber.

25  See e.g., Knogo Corp. v. United States, 213 U.S.P.Q. 936, 940, 1980 WL 39083 (Ct. Cl. Trial

26  Div. 1980) (rejecting the characterization of patent attorneys as mere "conduits" to the PTO).

    Instead, MGA describes her role as providing what information should be included in the

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                                                              5

EXHIBIT _8_ PAGE _3/7_

trademark applications and how it should be sent out.  MGA contends that Ms. Arant requested "dates of first use" information from Ms. Garcia in connection with advising MGA regarding "intent to use" trademark applications.  MGA's Opposition, pp. 5-6.  According to MGA, "dates of first use" information has significance to "intent to use" applications for two reasons:  first, an "intent to use" application is only appropriate for marks not already in use; and second, an applicant has six months from the "date of first use" to use the mark before it is abandoned. MGA emphasizes, however, that "dates of first use" are not among the facts disclosed to the PTO as part of an "intent to use" application.  MGA reasons, therefore, that it is incorrect for Mattel to assume that Ms. Garcia intended her communications regarding date of first use to be made public.

MGA also contends that Mattel erroneously relies on MGA's later filings of the "statement of use" documents to argue that Ms. Garcia conveyed "dates of first use" to Ms. Arant with the intent that those dates would be publicly disclosed.  MGA contends that Mattel has no evidentiary support for such a conclusion, and that indeed, Mattel's submissions show that different attorneys from two different law firms prepared the "statement of use" filings for MGA and specified different "dates of first use" for each mark than the June 15, 2000 date that Ms. Garcia allegedly communicated to Ms. Arant.

MGA contends further that "[e]ven as to information that made its way into the 'intent to use applications,' the documents generated in the preparation and drafting of applications that reflect attorney-client discourse are shielded by the attorney-client privilege."  MGA's Opposition at p.7.  Borrowing the reasoning in McCook Metals L.L.C. v. Alcoa Inc., 192 F.R.D. 242, 252 (N.D. Ill. 2000), MGA asserts that drafts "necessarily reflect the communications between a client and his attorney as the attorney attempts to put forth the invention in the best light possible to protect a client's legal right."  MGA also contends that attorney-client protection extends to factual information provided to counsel for the purpose of providing legal advice.  See e.g. In re Spalding Sports Worldwide, Inc., 203 F.3d 800 (Fed. Cir. 2000) (invention record submitted to legal counsel for the purpose of obtaining legal advice was privileged); TeKnowledge Corp. v. Akamai Techs., Inc., 2004 U.S. Dist. LEXIS 19109, at *6 (N.D. Cal. Aug. 10, 2004) ("technical

1   information communicated to a patent attorney does not warrant different treatment than any

2   other information communicated to an attorney in the process of obtaining legal services.").

3        As for Mattel's argument that the documents in question are "smoking gun" evidence,

4   MGA responds that the Bratz launch occurred in June 2001, at which time the marks were first

5   used.  MGA asserts that "[a]ny contrary information contained in the documents in question was

6   an error that should have no bearing on whether the information is privileged."  MGA's

7   Opposition, p.2.  Ms. Garcia explains in her declaration that the June 15, 2000 date was

8   erroneous.  MGA also contends that there could have been no "date of first use" of Bratz in June

9   2000 within the meaning of trademark law.  MGA reasons that the Lanham Act requires that "first

10   use" be "actual use in commerce," or "bona fide use [] in the ordinary course of trade," (Fila

11   Sport S.p.A. v. Diadora America, Inc., 141 F.R.D. 75, 78 (D. Ill. 1991), and that Bratz was not

12   being used in commerce in June 2000.

### III. DISCUSSION

13        The essential elements of the attorney-client privilege are:  "(1) When legal advice of any

14   kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the

15   communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the

16   client's instance, permanently protected (7) from disclosure by the client or by the legal adviser

17   (8) unless the protection be waived."  United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002).

18   The burden is on the party asserting the privilege to establish all the elements of the privilege.

19   United States v. Munoz, 233 F.3d 1117, 1128 (9th Cir. 2000).  "Because the attorney-client

20   privilege has the effect of withholding relevant information from the factfinder, it is applied only

21   when necessary to achieve its limited purpose of encouraging full and frank disclosure by the

22   client to his or her attorney."  Clark v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir.

23   1992).

### MGA has Failed to Establish that the Docket Sheet is Privileged

24        MGA argues that the attorney-client privilege extends to the Docket Sheet because it was

25   a "paper [] prepared by an attorney or at an attorney's request for the purpose of advising the

26   client, [which was] based on and would tend to reveal the client's confidential communications."

27

28

EXHIBIT __8__ PAGE _319_

1  MGA's Opposition at p.9 (citing In re Fischel, 557 F. 2d 209,211 (9th Cir. 1977)).  MGA's

2  argument, however, is unsupported by evidence.

3      The declaration of Paula Garcia fails to specifically address the Docket Sheet.  Instead,

4  Ms. Garcia generalizes as follows:

5          Prior to the launch of Bratz, I communicated with outside lawyers for

6      MGA in connection with protecting MGA's trademarks for the "Bratz" line of

7      products it hoped to launch in June 2001.  These communications were for the

8      purpose of obtaining legal advice from MGA's trademark counsel, including

9      communications in or about December 2000 with Lucy Arant of Russ, August,

10     Kabat & Kent LLP.  In general, I intended and expected my communications with

11     counsel in connection with MGA's trademark filings to be confidential, including

12     communications regarding the anticipated date of MGA's first use of the "Bratz"

13     marks.

   Garcia Decl. In Support of MGA's Opposition, ¶3.

14     Nowhere in the evidentiary record submitted by MGA does MGA explain why or how the

15  Docket Sheet was created or maintained.  MGA does not explain who created the Docket Sheet or

16  provide the source of the information contained therein.  MGA has not established the requisite

17  elements of the attorney-client privilege for this specific document.  See e.g. Automated

18  Technologies, Inc. v. Knapp Logistics & Automation, Inc., 382 F.Supp.2d 1372, 1375 (N.D. Ga.

19  2005) (party invoking privilege has the burden of proving "that the particular communications

20  were confidential"); Kodish v. Oakbrook Terrace Fire Protection Dist., 235 F.R.D. 447, 453

21  ("The party seeking to assert the privilege must show that the particular communication was part

22  of a request for advice or part of the advice, and that the communication was intended to be and

23  was kept confidential.").  MGA has failed to carry its burden of establishing that the Docket Sheet

24  is protected by the attorney-client privilege.

25              MGA has Failed to Establish That the Fax is Privileged

26     An in camera review of the Fax confirms that the document constitutes a communication

27  between MGA and counsel regarding MGA's trademark applications.  That the Fax constitutes a

28
   Bryant v. Mattel, Inc.,                                                                              8
   CV-04-09049 SGL (RNBx)

EXHIBIT _8_ PAGE _320_

1   communication between MGA and counsel, however, is insufficient without more to establish

2   that the Fax is privileged.  MGA must also establish that the Fax is a confidential communication

3   for the purpose of rendering legal advice.  See e.g. Automated Technologies, Inc. v. Knapp

4   Logistics & Automation, Inc., supra; Kodish v. Oakbrook Terrace Fire Protection Dist., supra.

5   MGA has failed to do so.  Ms. Garcia's declaration does not even mention the Fax, much less

6   specify that the information contained therein was intended to be confidential for the purpose of

7   rendering legal advice.  Instead, Ms. Garcia speaks in generalities about communications

8   regarding MGA's trademark applications.  In fact, the Fax does not contain any legal opinions or

9   advice.  The only attorney-client communication reflected in the Fax is the statement regarding

10   the "date of first use."

11        MGA could not have had a reasonable expectation that the June 15, 2000 "date of first

12   use" stated in the Fax would be kept confidential.  As Mattel points out, in order to obtain a full

13   trademark registration, an applicant must disclose the "dates of first use" to the PTO.  This is true

14   regardless of whether the applicant initially files an "intent to use" application or a use-based

15   application.  See 15 U.S.C. §1051(a)(2) (use-based application must include the date of first use

16   of the mark); Eastman V. Kodak Co. v. Bell & Howell Document Management Products Co., 994

17   F.2d at 1570 (an "intent to use" applicant must file a "statement that verifies . . . the date of first

18   use in commerce).

19        MGA relies on Ms. Garcia's declaration that she generally expected her communications

20   with trademark counsel to be confidential.  However, a client's subjective belief as to whether a

21   communication is privileged must be reasonable in order for the attorney-client privilege to

22   attach.  Speaker ex rel. Speaker v. County of San Bernadino, 82 F.Supp.2d 1105, 1112-1113

23   (C.D. Cal. 2000) (client's subjective belief "should be reasonable in order to lay claim to the

24   protections of the privilege"); Griffith v. Davis, 161 F.R.D. 687, 696 (C.D. Cal. 1995) (attorney-

25   client privilege not applicable to information communicated to attorney where client knew

26   information would be used in his employer's administrative investigation).  Although a client's

27   subjective belief of confidentiality is necessary for the attorney-client privilege to attach, it is not

28   sufficient.  See In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 923 (8th Cir. 1997)

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT ___8___ PAGE ___321___

1    ("[W]e know of no authority . . . holding that a client's beliefs, subjective or objective, about the

2    law of privilege can transform an otherwise unprivileged conversation into a privileged one.").

3         Nevertheless, MGA attempts to identify confidential reasons why Ms. Garcia might have

4    communicated "date of first use" information to Ms. Arant.  According to MGA, the only reason

5    Ms. Arant solicited "date of first use" information from Ms. Garcia was (i) to determine whether

6    an "intent to use" application would be proper and (ii) to determine when MGA should file its

7    applications.  MGA asserts that "these legal considerations led Ms. Arant to request 'dates of first

8    use' from Ms. Garcia."  MGA's Opposition at p.6.  However, there is no evidence of record to

     substantiate MGA's contentions.

9
         MGA's failure to provide evidence to substantiate its claim that the Fax reveals the
10
     substance of a confidential communication is fatal to its claim of privilege.  Because a mark's
11
     date of first use is factual information that must be conveyed to the PTO to secure a trademark
12
     application, communication of this information is not privileged.  Weil Ceramics & Glass, Inc. v.
13
     Work, 110 F.R.D. 5000, 504 (E.D. N.Y. 1986) ("The party claiming the privilege must clearly
14
     show that a document renders legal advice and does not, for example, merely contain facts later
15
     disclosed in a patent or trademark application"); see also United States v. White, 950 F.2d 426,
16
     430 (7th Cir. 1991) ("when information is disclosed for the purpose of assembly into a bankruptcy
17
     petition and supporting schedules, there is no intent for the information to be held in confidence
18
     because the information is to be disclosed on documents publicly filed").
19
         MGA contends, however, that the June 15, 2000 date was not actually disclosed to the
20
     PTO and points out that Mattel's own submissions show that different attorneys from two
21
     different law firms prepared the "statement of use" filings for MGA and specified different "dates
22
     of first use" for each mark than the June 15, 2000 date that Ms. Garcia allegedly communicated to
23
     Ms. Arant.  That the June 15, 2000 date was not actually disclosed is irrelevant.  What is relevant
24
     is whether Ms. Garcia actually and reasonably intended and expected the "dates of first use"
25
     information she provided to Ms. Arant to remain confidential when she made the communication,
26
     not whether the information was actually conveyed to the public.  See In re Grand Jury
27
     Proceedings, 727 F.2d 1352, 1358 (4th Cir. 1984) (information given to attorney to prepare

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                        10

     EXHIBIT _8_ PAGE _322_

1   prospectus was not protected by attorney-client privilege, even though no prospectus was ever

2   actually issued); United States v. Lawless, 709 F.2d 485, 487 (7th Cir. 1983) ("[I]f the client

3   transmitted the information so that it might be used on the tax return, such a transmission destroys

4   any expectation of confidentiality.").

5        Lastly, MGA's reliance on McCook, supra, and other related caselaw[1] is misplaced. In

6   McCook, the court held that draft patent applications were privileged because they "contain[ed]

7   the legal opinion and advice of the attorney regarding the wording of technical specifications,

8   claims, and prior art, and whether an item is included, all of which are necessary to secure a legal

9   claim for the client." McCook, 192 F.R.D. at 252-253. In contrast, the Fax at issue in this case

10  reflects no such attorney opinions or advice. Indeed, the only attorney-client communication

11  reflected in the Fax is the statement regarding the "date of first use." The cases cited by MGA are

12  inapplicable to communications conveying date of first use information in the trademark context

13  because, as discussed previously, a trademark attorney does not have discretion regarding whether

14  to disclose the "date of first use" information to the PTO.[2]

### IV. CONCLUSION

15       For the reasons set forth above, Mattel's motion to compel MGA to produce documents

16  bearing Bates Nos. MGA 0800973-0800974 and MGA 0829296-0829305 is granted. MGA shall

17  produce said documents on or before December 28, 2007.

18       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

19  Master, Mattel shall file this Order with the Clerk of Court forthwith.

20

21  Dated: December _17_, 2007

22                                    HON. EDWARD A. INFANTE (Ret.)
                                      Discovery Master

23

24  _____

      [1] See Rohm v. Haas Co. v. Brotech Corp., 815 F.Supp. 793, 797 (D. Del. 1993); Hyuk Suh v. Choon Sik Yang, 1997 U.S. Dist. LEXIS
25   20077 (N.D. Cal. No. 18, 1977); Conner Peripherals, Inc. v. Western Digital Corp., 1993 U.S. Dist. LEXIS 20149 (N.D. Cal. June 8, 1993);
      TeKnowledge Corp. v. Akamai Techs. Inc., 2004 U.S. Dist. LEXIS 19109 (N.D. Cal. Aug. 10, 2004).

26       [2] Mattel argues in the alternative that even if the disputed documents were privileged, MGA has waived the privilege. Because MGA

27  has failed to establish the requisite elements of the attorney-client privilege as to the disputed documents, it is unnecessary to address Mattel's
      waiver argument herein.

28
      Bryant v. Mattel, Inc.,                                                              11
      CV-04-09049 SGL (RNBx)

EXHIBIT  8  PAGE  323

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on December 17, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL MGA TO PRODUCE DOCUMENTS BEARING BATES NOS. MGA 0800973-0800974 AND MGA 0829296-0829305 in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on December 17, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT __8__ PAGE __324__

**EXHIBIT 9**

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>             Plaintiff,<br><br>      vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>             Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order of December 6, 2006]**<br><br>NOTICE OF MOTION AND MOTION OF PLAINTIFF MATTEL, INC. FOR ORDER FINDING WAIVER AND TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED; AND<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br><br>[Declaration of Bernard B. Smyth filed concurrently]<br><br>Date:   February 8, 2008<br>Time:   9:30 a.m.<br>Place:  TBA<br><br>**Phase 1**<br>Discovery Cut-Off:    January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date:           May 27, 2008 |

MATTEL'S MOTION FOR ORDER FINDING IMPLIED WAIVER AND TO COMPEL DOCUMENTS

EXHIBIT 9 PAGE 325

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2             PLEASE TAKE NOTICE that, at a conference before Discovery Master

3    Hon. Edward Infante (Ret.) that will occur on February 8, 2008 at 9:30 a.m., or at

4    another date and time to be set by Judge Infante, plaintiff Mattel, Inc. ("Mattel") will,

5    and hereby does, move the Court pursuant to <u>Federal Rules of Civil Procedure</u> 26 and

6    37 to compel MGA Entertainment, Inc. ("MGA") and Isaac Larian to produce all

7    documents, communications and information related to advice they sought and/or

8    received prior to April 27, 2004, regarding the legal propriety of MGA's contracting

9    with Bryant regarding Bratz, MGA's subsequent copying, development, production

10   and sales of Bratz, and MGA's or Bryant's obligations to Mattel, including without

11   limitation (1) Entry Nos. 655-657 and 660 on MGA's August 14, 2007 Supplemental

12   Privilege Log, (2) Entry Nos. 12-19 and 21-27 on MGA's Supplemental Revised

13   Privilege and Redaction Log for MGA's 2005 Document Production, (3) Entry Nos.

14   89 and 90 on Isaac Larian's Privilege Log, and (4) testimony in response to questions

15   that MGA's counsel instructed Isaac Larian not to answer at his deposition (<u>see</u>

16   Larian Depo. Tr. at 47:22-48:1).

17            This Motion is made on the grounds that MGA and Isaac Larian have

18   waived any claimed privilege as to these materials because they have affirmatively

19   asserted good faith affirmative defenses, putting protected information relevant to

20   those defenses at issue, and because the application of the attorney-client privilege or

21   work product doctrine would deny Mattel information vital to responding to MGA

22   and Larian's affirmative defenses.

23            This Motion is based on this Notice of Motion and Motion, the

24   accompanying Memorandum of Points and Authorities, the Declaration of Bernard B.

25   Smyth filed concurrently herewith, the records and files of this Court, and all other

26   matters of which the Court may take judicial notice.

27

28

07209/2356870.1

-2-
MATTEL'S MOTION FOR ORDER FINDING IMPLIED WAIVER AND TO COMPEL DOCUMENTS

EXHIBIT _9_ PAGE _326_

1

## __Statement of Rule 37-1 Compliance__

2          The parties met and conferred regarding MGA and Larian's implied

3    waiver of privilege on January 23, 2008.

4

5    DATED:  January 23, 2008            QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
6

7                                       By _____
8                                          Bernard B. Smyth
                                           Attorneys for Plaintiff
9                                          Mattel, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2                                                                                     **Page**

3

PRELIMINARY STATEMENT ................................................................... 1

4

STATEMENT OF FACTS ........................................................................ 2

5

6   ARGUMENT ......................................................................................... 8

7   I.     FAIRNESS DEMANDS THAT MGA AND LARIAN PRODUCE
          PROTECTED INFORMATION ...................................................... 8

8

9   II.    MGA AND LARIAN HAVE IMPLIEDLY WAIVED PRIVILEGE .............. 11

10  CONCLUSION ..................................................................................... 15

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

EXHIBIT __9__ PAGE _328_

# TABLE OF AUTHORITIES

**Page**

### Cases

*Bittaker v. Woodford,*
   331 F.3d 715 (9th Cir. 2003) ................................................................. 10

*Chevron Corp. v. Pennzoil Corp.,*
   974 F.2d 1156 (9th Cir. 1992) ................................................................. 8

*Cox v. Administrator U.S. Steel & Carnegie,*
   17 F.3d 1386 (11th Cir. 1994), <u>cert denied,</u> 513 U.S. 1110 (1995) ............. 9, 12, 14

*Hearn v. Rhay,*
   68 F.R.D. 574 (E.D. Wash. 1975) ...................................................... 11, 12, 13

*United States v. Amlani,*
   169 F.3d 1189 (9th Cir. 1999) .......................................................... 11, 12

*United States v. Blizerian,*
   926 F.2d 1285 (2d Cir. 1991), <u>cert denied</u>, 502 U.S. 813 (1991) ................... 12, 13

07209/2356870.1

EXHIBIT 9 PAGE 329

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

The lynchpin of a number of MGA's and Isaac Larian's affirmative defenses is their allegation that they "acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA . . . was valid and permissible." MGA claims it "did not believe that Mattel owned any of the materials Carter Bryant presented to it" and, in fact, "took steps to confirm the timing of Bryant's work prior to executing the agreement" with him. Yet MGA and Larian have refused to produce any information showing what those steps were and what advice they sought and received regarding (i) the propriety of contracting with Bryant and (ii) the subsequent copying, development, production and sales of Bratz. They have consistently shielded that information behind the attorney-client privilege.

Thus, MGA and Larian are withholding substantial evidence showing what they were told regarding the propriety of their actions, while at the same time baldly professing their good faith. For example, as evidence of his good faith, Larian testified that he instructed an MGA executive to consult with MGA's attorneys concerning Bryant's contract obligations with Mattel before he contracted with Bryant and that she did so. However, MGA's counsel instructed Larian not to go beyond that partial disclosure. MGA is thus trying to rely on the consultation with counsel -- and the implication that it was advised that MGA could properly contract with Bryant -- as evidence of its good faith, but at the same time withhold the actual substance of the advice. MGA and Larian are likewise withholding dozens of emails from the dates leading up to the execution of MGA's agreement with Bryant that show what MGA asked its lawyers and what its lawyers told it regarding the propriety of contracting with Bryant.

MGA is also withholding several emails to and from its attorneys after MGA first unveiled Bratz. Those emails are described as seeking and receiving legal

1   advice regarding Bryant's contract and licensing.  They likely show what MGA was

2   told about the propriety of further copying and sales of Bratz.  Further, MGA is

3   withholding communications with its litigation counsel from June 2001 -- nearly

4   three years before Mattel filed suit -- which are described as "requesting legal advice

5   regarding Mattel litigation" and "seeking legal advice regarding Bratz."

6          Fairness demands that MGA and Larian produce those documents and

7   any other information they are withholding regarding advice they sought and/or

8   received regarding the legal propriety of MGA's contract with Bryant and subsequent

9   copying and sales of Bratz.  The case law is clear that in asserting their good faith as

10  affirmative defenses, MGA and Larian have put in issue otherwise privileged

11  information showing their true state of mind regarding the legal propriety of their

12  actions.  In order to fairly respond to MGA's asserted "good faith," Mattel needs

13  access to the documents that would show what advice MGA and Larian were

14  provided, and what steps they took (and asked their lawyers to take) to do "due

15  diligence" about Bryant's representations and Bryant's relationship with Mattel.  The

16  only actual evidence necessary to test MGA's "good faith" defenses in this case is

17  privileged communications that MGA and Larian refuse to produce.  MGA and

18  Larian cannot use the privilege as both a sword -- in baldly proclaiming their good

19  faith -- and as a shield.

20                          **Statement of Facts**

21         Mattel's Counterclaims and MGA's "Good Faith" Affirmative Defenses.

22  Mattel filed its Second Amended Answer and Counterclaims on July 12, 2007.[1]

23  Mattel alleges, among other things, that MGA and Larian (collectively, "MGA")

24  encouraged, aided and paid Carter Bryant to develop Bratz designs while Bryant was

25

26

27  [1]   Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims,
    dated July 12, 2007, attached as Exhibit 3 to the concurrently filed Declaration of

28  Bernard B. Smyth ("Smyth Dec.").

07209/2356870.1

-2-

1  a Mattel employee, knowing that such conduct was a breach of Bryant's contractual

2  duties to Mattel;[2] that MGA and Bryant intentionally concealed these facts from

3  Mattel;[3] that Mattel is the rightful owner of Bratz drawings; and that MGA's

4  infringement of Mattel copyrights in those drawings harmed, and continues to harm,

5  Mattel.[4]  Mattel claims that MGA and Larian are liable for, among other things,

6  aiding and abetting Bryant's breaches of duty to Mattel, copyright infringement, and

7  willful copyright infringement.[5]

8  MGA asserted 22 affirmative defenses in response to Mattel's

9  counterclaims.  Central to a number of those defenses is MGA's claim that it "acted

10  with a good faith belief that Bryant owned the rights to his original Bratz drawings

11  and that his assignment of such rights to MGA . . . was valid and permissible."[6]

12  MGA also separately asserts the defense of "good faith" to Mattel's counterclaims.[7]

13  Thus, MGA has affirmatively put its state of mind at issue and done so repeatedly.

14  <u>MGA's Discovery Responses Demonstrate Continued Reliance on Its</u>

15  <u>Alleged "Good Faith."</u>  Discovery in this case also has demonstrated that MGA

16  clearly intends to rely on its alleged "good faith" in defending Mattel's counterclaims.

17  In response to requests for admissions, MGA acknowledged that "it contends it

18  believed at the time it entered into its agreement with Bryant and at all times

19  thereafter" that:

20

21

22  [2]  <u>Id.</u>, ¶ 33.

23  [3]  <u>Id.</u>, ¶ 35.

24  [4]  <u>Id.</u>, ¶¶ 83-87.

25  [5]  <u>Id.</u>, ¶¶ 83-87, 136-141, 149-154.

[6]  <u>See, e.g.,</u> MGA's Fifth and Sixth Affirmative Defenses, Amended Answer and

26  Affirmative Defenses of MGA Entertainment Inc., MGA Entertainment (HK)

27  Limited, and MGAE de Mexico S.R.L. de C.V. to Mattel, Inc.'s Second Amended

Answer and Counterclaims, dated September 19, 2007, at p. 22, Smyth Dec., Exh. 4.

28  [7]  MGA's Eighteenth Affirmative Defense, <u>Id.</u> at p. 25.

- "[I]t had the right to market products developed as a result of its agreement with Bryant;"[8]

- "[I]t would have the lawful right to fully exploit the drawings drawn and presented by Bryant prior to the execution of MGA's agreement with Bryant;"[9]

- "[I]t had the right to fully exploit products developed as a result of its agreement with Bryant;"[10] and

- "[I]t had the lawful right to fully exploit the drawings drawn and presented by Bryant prior to the execution of its agreement with Bryant."[11]

In addition, as recently as January 7, 2008, MGA served interrogatory responses in which it contended that "MGA acted in good faith when Bryant transferred and MGA acquired all rights to the Bratz concept,"[12] and that MGA "acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA [] was valid and permissible."[13]   MGA contends that, "despite [its] fair inquiry" it did not know that Carter Bryant entered into an inventions agreement with Mattel.[14]   According to MGA, these contentions support its affirmative defenses.[15]

<u>MGA Shields the Only Evidence that Could Rebut Its Alleged "Good Faith" Behind the Attorney-Client Privilege.</u>  Although MGA has repeatedly injected its alleged "good faith" as to the central events in this case, it refuses to produce the

---

[8]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at p. 4, Smyth Dec., Exh. 5.
[9]   <u>Id.</u> at p. 5.
[10]   <u>Id.</u> at p. 6.
[11]   <u>Id.</u> at p. 8.
[12]   MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses, dated January 7, 2008, at p. 35, Smyth Dec., Exh. 6.
[13]   <u>Id.</u> at p. 32.
[14]   MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s Revised Third Set of Interrogatories, dated January 7, 2008, at pp. 79-80, Smyth Dec., Exh. 7.
[15]   <u>Id.</u>

-4-

MATTEL'S MOTION FOR ORDER FINDING IMPLIED WAIVER AND TO COMPEL DOCUMENTS

EXHIBIT __9__ PAGE _333_

1   communications with its attorneys that are the only evidence of (1) what it actually

2   thought, and was advised about, the legal propriety of contracting with Bryant and the

3   subsequent copying and sales of Bratz, and (2) what inquiry, if any, it asked its

4   lawyers to conduct.  MGA has withheld those communications as privileged.

5          According to MGA, Isaac Larian and other MGA personnel, including

6   Victoria O'Connor, first met with Bryant on September 1, 2000.  MGA admits that

7   "Bryant told them . . . that he was employed by Mattel at that time."[16]  MGA claims

8   that despite some undisclosed "fair inquiry," it did not know Bryant had signed an

9   inventions agreement with Mattel.  However, MGA produced a fax from the same

10  time period (September 14, 2000) from Bryant to David Rosenbaum, who both

11  Larian and O'Connor testified was the attorney MGA hired to assist with the Bryant

12  contract,[17] in which Bryant encloses his offer letter with Mattel.  That offer letter

13  expressly calls attention to his Confidential Information and Inventions Agreement.[18]

14  In the fax, Bryant advised MGA's lawyer that he was "unable to look into this too

15  much . . . without risking suspicion" on Mattel's part.[19]

16         MGA claims that "Bryant and his counsel . . . represented and warranted

17  to MGA that Bryant was the exclusive originator and owner of his Bratz ideas and

18  drawing and that no third party had any interest or rights in the drawings or ideas

19  reflected in the drawings."[20]  Despite Bryant's alleged representations, Larian testified

20  that in entering into a contract with Bryant he "wanted to make sure . . . that this idea

21

22  [16]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set
    of Requests for Admission, dated August 21, 2007, at p. 21, Smyth Dec., Exh. 5.

23  [17]   Deposition Transcript of Victoria O'Connor, dated December 6, 2004

24  ("O'Connor Depo. Tr."), at 226:24-227:7, Smyth Dec., Exh. 10; Larian Depo. Tr. at
    50:25-51:6, 140:18-140:21, Smyth Dec., Exh. 9.

25  [18]   See Smyth Dec., Exh. 8.

26  [19]   Id.

27  [20]   MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory
    Regarding Defendants' Affirmative Defenses, dated January 7, 2008, at p. 35, 76-77,

28  Smyth Dec., Exh. 6.

EXHIBIT 9 PAGE 334

1   that he was showing us was nothing that was at Mattel or Mattel had done."[21]   In fact,

2   MGA has stated that "[b]ased on the information provided to it, MGA did not believe

3   that Mattel owned any of the materials Carter Bryant presented to it, *but nonetheless*

4   *took steps to confirm the timing of Mr. Bryant's work prior to executing the*

5   *agreement*, as Mr. Larian testified to at his deposition."[22]   At his deposition, Larian

6   testified that, as evidence of his good faith, he asked Victoria O'Connor to make sure

7   to check with MGA's attorney regarding whether Bryant had a contract with Mattel.[23]

8          However, MGA has refused to disclose what its attorneys told it

9   regarding the legal propriety of contracting with Bryant.   MGA's counsel instructed

10  Larian not to answer, on attorney-client privilege grounds, questions regarding what

11  MGA asked its attorneys about the propriety of contracting with Bryant and what its

12  attorneys told MGA.[24]   MGA is also withholding more than a dozen emails between

13  O'Connor and Rosenbaum that were sent between September 1, 2000, the date of the

14  claimed meeting with Bryant, and October 4, 2000, the date Bryant's contract was

15  executed.[25]   Those emails are all described as messages "rendering [or requesting]

16  legal advice regarding Carter Bryant contract."[26]   Many emails between O'Connor

17  and Rosenbaum from the same time period were withheld by Rosenbaum as well.[27]

---

20  [21]   Deposition Transcript of Isaac Larian, dated July 18, 2006 ("Larian Depo. Tr."), at 46:16-19, Smyth Dec., Exh. 9.

22  [22]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at p. 12 (emphasis added), Smyth Dec., Exh. 5.

24  [23]   Larian Depo. Tr. at 47:16-23, Smyth Dec., Exh. 9.

[24]   Id. at 47:22-48:1.

25  [25]   Supplemental Revised Privilege and Redaction Log for MGA's 2005 Document Production, Entry Nos. 12-19, 21-27, Smyth Dec., Exh. 11.

[26]   Id.

27  [27]   David Rosenbaum's Privilege Log, Entry Nos. 9-17, 19-25, Smyth Dec., Exh. 12.

-6-

MATTEL'S MOTION FOR ORDER FINDING IMPLIED WAIVER AND TO COMPEL DOCUMENTS

EXHIBIT __9__ PAGE _335_

1   Those emails may include advice regarding the propriety of MGA contracting with

2   Bryant and MGA's or Bryant's obligations to Mattel.

3              MGA alleges that it first unveiled Bratz at the Hong Kong Toy Fair in

4   January 2001.[28]  The next month, on February 10, 2001, Isaac Larian emailed David

5   Rosenbaum, noting that "Bratz are very hot."[29]  MGA redacted the rest of that email

6   as privileged, describing it as "requesting legal advice regarding Carter Bryant

7   contract and licensing."[30]  That email apparently started a series of communications --

8   first between Larian and Rosenbaum and then between O'Connor and Rosenbaum --

9   all described as "requesting [or rendering] legal advice regarding Carter Bryant

10  contract and licensing."[31]  MGA is withholding all of those communications.

11             MGA is thus withholding dozens of emails between MGA and its

12  counsel that, based on their description, evidence legal advice MGA requested and

13  received regarding the legal propriety of contracting with Bryant, both before the

14  contract with him was executed and once it became apparent that MGA would begin

15  significant efforts copying, developing, producing and selling Bratz.

16             Isaac Larian is also personally withholding on privilege grounds

17  documents that appear to evidence what he knew regarding the legal propriety of

18  MGA's contract with Bryant and subsequent development of Bratz.  Larian's privilege

19  log, which the Discovery Master ordered Larian to provide and which was served last

20  week, includes a June 30, 2001 email from Larian to Patricia Glaser, Larian's

21  litigation counsel.  The email is described as a "message requesting legal advice

---

[28]  MGA's Complaint in Case No. 05-2727, dated April 13, 2005, ¶ 23, Smyth Dec., Exh. 13.

[29]  See Smyth Dec., Exh. 14.

[30]  Supplemental Revised Privilege and Redaction Log for MGA's 2005 Document Production, Entry No. 8, Smyth Dec., Exh. 11.

[31]  Id., Entry Nos. 3-6, 8-11.

MATTEL'S MOTION FOR ORDER FINDING IMPLIED WAIVER AND TO COMPEL DOCUMENTS

07209/2356870.1

EXHIBIT __9__ PAGE _336_

1    regarding Mattel litigation,"[32] and was sent approximately when the Bratz dolls were

2    first put on sale,[33] well before Mattel filed suit in April 2004.  Additional emails from

3    Larian to Glaser between June 29, 2001 and July 2, 2001, are listed on MGA's logs as

4    well,[34] including one described as an email "seeking legal advice regarding Bratz."[35]

5    These 2001 communications between Larian and Glaser are particularly suspicious in

6    light of Victoria O'Connor's testimony.  She testified that the executed agreement

7    between Bryant and MGA was faxed to her by Bryant with a heading at the top

8    stating "Barbie Collectibles."[36]  She acknowledged that the heading caused her

9    concern "because [Bryant] was still at Mattel at the time the contract was executed."[37]

10   She expressed that concern to Isaac Larian.[38]  Larian then asked her to whiteout

11   "Barbie Collectibles" from the faxed agreement and send it to Patricia Glaser.[39]

12                                        **Argument**

13   **I.    FAIRNESS DEMANDS THAT MGA AND LARIAN PRODUCE**

14          **PROTECTED INFORMATION**

15               In the Ninth Circuit as elsewhere, "[t]he privilege which protects

16   attorney-client communications may not be used both as a sword and a shield.  When

17   a party raises a claim which in fairness requires disclosure of the protected

18   communication, the privilege may be implicitly waived."  Chevron Corp. v. Pennzoil

19   Corp., 974 F.2d 1156, 1162 (9th Cir. 1992) (citation omitted).

20   _____

21   [32]   Larian Privilege Log, Entry No. 89, Smyth Dec., Exh. 15.  Entry No. 90 on
22   Larian's log is another communication from Larian to Glaser, dated June 29, 2001.
      [33]   MGA's Complaint in Case No. 05-2727, dated April 13, 2005, ¶ 23 ("MGA
23   introduced [Bratz] to consumers in June 2001."), Smyth Dec., Exh. 13.
      [34]   MGA's August 14, 2007 Supplemental Privilege Log, Entry Nos. 655-657, 660,
24   Smyth Dec., Exh. 16.
25   [35]   Id., Entry No. 660.
      [36]   O'Connor Depo. Tr. at 18:13-18, Smyth Dec., Exh. 10.
26   [37]   Id. at 20:8-20.
      [38]   Id. at 20:8-21:20.
27   [39]   Id. at 18:13-18.
28

1     It is unfair for MGA to argue that it should be absolved of liability

2   because it supposedly had a good faith belief that its actions were lawful, while at the

3   same time withholding from production communications with its attorneys bearing on

4   that very subject.  The withheld communications reflect the "steps [MGA took] to

5   confirm the timing of Mr. Bryant's work prior to executing the agreement" and the

6   "fair inquiry" MGA claims it conducted, and apparently form the basis of MGA's

7   claim that "at the time it entered into its agreement with Bryant . . . it had the lawful

8   right to fully exploit the drawings drawn and presented by Bryant."[40]   Such

9   communications may show that MGA was, in truth, aware that Mattel had or may

10  have legal rights to Bratz and are critical evidence regarding the merits of MGA's

11  "good faith" defenses and are the only way for Mattel to test its claim of good faith.

12     Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1418-20

13  (11th Cir. 1994), cert denied, 513 U.S. 1110 (1995), is instructive.  In that case, the

14  defendant claimed that at the time it revised the leave-of-absence policy at issue in

15  the case it "believed the policy to be lawful." Id. at 1418.  Thus, defendant's alleged

16  "good faith" was at issue.  Although the defendant did not claim that its belief was

17  based on communications with attorneys, the court upheld a finding of implied

18  waiver because defendant's claimed belief "necessarily implicates all of the

19  information at its disposal when it made the decision to change the leave of absence

20  policy." Id.  The court ordered the defendant to produce communications with its

21  lawyers about the lawfulness of its policy, holding that defendant's allegation of

22  "good faith" injected "into the case an issue that in fairness requires an examination

23  of otherwise protected communications." Id. at 1419.

24

25

---

26    [40]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set
       of Requests for Admission, dated August 21, 2007, at p. 8, 12, Smyth Dec., Exh. 5;
27    MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s Revised
28    Third Set of Interrogatories, at pp. 79-80, dated January 7, 2008, Smyth Dec., Exh. 7.

07209/2356870.1

-9-

1    Similarly here, MGA has injected into this litigation what advice it
2  received from its lawyers regarding the legality of its contract with Bryant and its
3  rights to copy and sell Bratz.  MGA cannot obtain the benefit of invoking the advice
4  of counsel as establishing good faith -- including the clear implication that Bryant
5  was legally free to contract with MGA -- but withhold the rest of the communication.
6  Fairness requires that Mattel be permitted to examine that information.  That is
7  especially true here because the *only* evidence of what MGA knew regarding the
8  lawfulness of its actions has been withheld as privileged.  By "assert[ing] claims the
9  opposing party cannot adequately dispute unless it has access to the privilege
10 materials,"  Bittaker v. Woodford, 331 F.3d 715, 719 (9th Cir. 2003), MGA has
11 waived the privilege.

12    It is clear that MGA sought and obtained legal advice regarding the
13 propriety of entering into a contract with Bryant, who it knew to be employed by
14 Mattel as a doll designer, to acquire Bratz, and subsequent copying of Bratz.  Larian
15 testified that in entering into a contract with Bryant he "wanted to make sure . . . that
16 this idea that he was showing us was nothing that was at Mattel or Mattel had
17 done."[41]  MGA has stated that it "took steps to confirm the timing of Mr. Bryant's
18 work prior to executing the agreement."[42]  MGA claims to have conducted a "fair
19 inquiry."[43]  This is a partial disclosure, for MGA's benefit, of its communications with
20 counsel.  And MGA concedes that it affirmatively has put its alleged good faith at
21 issue.[44]  Yet MGA has refused to provide testimony or produce documents that

---

[41]  Larian Depo. Tr. at 46:16-19, Smyth Dec., Exh. 9.
[42]  MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at p. 12, Smyth Dec., Exh. 5.
[43]  MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s Revised Third Set of Interrogatories, at pp. 79-80, dated January 7, 2008, Smyth Dec., Exh. 7.
[44]  MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at pp. 4-8, Smyth Dec., Exh. 5.

EXHIBIT 9  PAGE 339

1  demonstrate what those steps were or what MGA learned in taking those steps.  The

2  closest MGA has come to providing that information is when Larian testified that he

3  asked Victoria O'Connor to make sure to check with MGA's attorney regarding

4  whether Bryant had a contract with Mattel, but he was then promptly interrupted by

5  his counsel and instructed not to divulge any attorney-client communications.[45]  Such

6  partial "lifting of the veil" to gain an advantage is clearly improper.

7          MGA and Larian are withholding dozens of documents that, based on

8  privilege log descriptions, appear to involve legal advice regarding the propriety of

9  MGA's actions.  Those include emails from Larian to Patricia Glaser seeking legal

10  advice regarding "Bratz" and "Mattel litigation" even as Bratz was first being released

11  and no litigation was pending.   Fairness demands that MGA produce those

12  documents and any other information that MGA is withholding as privileged

13  regarding advice it sought and/or obtained regarding the propriety of contracting with

14  Bryant, MGA's or Bryant's obligations to Mattel, and the propriety of MGA's

15  copying, development, production and/or sales of Bratz.

16  **II.     MGA AND LARIAN HAVE IMPLIEDLY WAIVED PRIVILEGE**

17          As MGA has recognized,[46] the Ninth Circuit applies the three-part test

18  set forth in Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975), to determine

19  whether a party has impliedly waived privilege: "(1) assertion of the privilege was a

20  result of some affirmative act, such as filing suit, by the asserting party; (2) through

21  this affirmative act, the asserting party put the protected information at issue by

22  making it relevant to the case; and (3) application of the privilege would have denied

23  the opposing party access to information vital to his defense."  See also United States

24

25  _____

26  [45]   Larian Depo. Tr. at 47:16-23, Smyth Dec., Exh. 9.

27  [46]   See MGA's Notice of Motion and Motion to Compel Regarding Mattel's
Privilege Waiver by Claim Assertion, dated December 18, 2007, at pp. 15-16, Smyth

28  Dec., Exh. 17.

07209/2356870.1

1   v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999) (applying the Hearn test for implied

2   waiver).

3             Under the Hearn test, which MGA heavily relies on in its recently filed

4   motion for implied waiver against Mattel, MGA and Larian have waived the privilege

5   by asserting their "good faith" affirmative defenses.    The facts here are closely

6   analogous to those in Hearn, where the court found implied waiver.    In Hearn,

7   defendants asserted as a defense "in their answer that they 'have acted in good faith.'"

8   Hearn, 68 F.R.D. at 578.  The court found that all the elements of its three-part test

9   were satisfied because:

> [D]efendants invoked the privilege in furtherance of an affirmative defense they asserted for their own benefit; through this affirmative act they placed the privileged information at issue, for the legal advice they received is germane to the qualified immunity defense they raised; and one result of asserting the privilege has been to deprive plaintiff of information necessary to 'defend' against defendants' affirmative defenses, for the protected information is also germane to plaintiff's burden of proving malice or unreasonable disregard of his clearly established constitutional rights.

18  Id. at 581.

19            The same is true here.  First, as in Hearn, MGA has asserted the privilege

20  by alleging the affirmative defense of "good faith."  The assertion of an affirmative

21  defense based on good faith is a particularly common grounds for finding implied

22  waiver.  See, e.g., Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1419

23  (11th Cir. 1994), cert denied, 513 U.S. 1110 (1995) ("Having gone beyond mere

24  denial, affirmatively to assert good faith, USX injected the issue of its knowledge of

25  the law into the case and thereby waived the attorney-client privilege."); United

26  States v. Blizerian, 926 F.2d 1285, 1293 (2d Cir. 1991), cert denied, 502 U.S. 813

27  (1991) (defendant's good faith assertion that his actions were lawful waived attorney-

28  client privilege).

1    Second, MGA's "good faith" defenses have affirmatively put privileged

2   information at issue.  In <u>Hearn</u>, the court found that privileged information was put at

3   issue because the legal advice defendants received was "germane" to the defense they

4   raised.  Here, MGA acknowledges that it "took steps to confirm the timing of Mr.

5   Bryant's work prior to executing the agreement."[47]  It also contends that it conducted

6   a "fair inquiry" into Bryant's representations about his creation and ownership of

7   Bratz.[48]  Larian testified that he told Victoria O'Connor to talk to MGA's lawyers.[49]

8   MGA's privilege log includes a number of emails between MGA and its lawyers

9   regarding Bryant's contract, Mattel litigation and the like.  Not only are such

10   communications "germane" to MGA's "good faith" defenses, they are the *only*

11   evidence of the steps MGA took to determine the propriety of its actions.  MGA has

12   shielded everything in this regard by asserting the privilege.

13    Third, as in <u>Hearn</u>, the result of MGA's privilege assertions has been to

14   deprive Mattel of information "necessary to 'defend' against [MGA's] affirmative

15   defenses."  The information MGA is withholding is critical to Mattel's ability to

16   respond to MGA's purported "good faith" defenses because, as discussed in Section I

.17   above, it is the *only* evidence of what advice MGA solicited and received regarding

18   the propriety of its actions and the steps it claims it took to ensure that Bryant could

19   and did lawfully assign rights to Bratz and that no Mattel rights were infringed.

20    In short, MGA contends that its actions in contracting with Bryant and

21   subsequent acts of copying, developing, producing and selling Bratz were in good

22   faith because it believed they were lawful.  And MGA contends that it cannot be

23

24

25    [47]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at p. 12, Smyth Dec., Exh. 5.

26    [48]   MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s Revised Third Set of Interrogatories, at pp. 79-80, dated January 7, 2008, Smyth

27   Dec., Exh. 7.

28    [49]   Larian Depo. Tr. at 47:16-23, Smyth Dec., Exh. 9.

07209/2356870.1

MATTEL'S MOTION FOR ORDER FINDING IMPLIED WAIVER AND TO COMPEL DOCUMENTS

EXHIBIT __9__ PAGE __342__

1   liable to Mattel because of its good faith.[50]  These contentions have placed at issue

2   numerous otherwise protected attorney-client communications, including relevant

3   documents listed on MGA's and Larian's privilege logs.  Those communications are

4   the only evidence of what MGA asked and was told about the legal propriety of its

5   actions.  Mattel needs the information withheld to fairly respond to MGA's "good

6   faith" defenses.

7           Those facts are in marked contrast to the facts MGA relies on to claim

8   that Mattel impliedly waived the privilege in MGA's currently pending motion.

9   MGA argues that Mattel waived the privilege because Mattel alleges that MGA and

10  Bryant concealed their wrongful acts.  But Mattel has produced substantial non-

11  privileged information regarding when Mattel learned of Bryant's wrongful conduct.

12  MGA thus already has sufficient information to litigate its statute of limitations and

13  laches defenses.  Here, MGA and Larian have produced *no* information regarding

14  what they asked or were told about the propriety of their actions -- information that is

15  necessary to assess their "good faith" defenses.  Moreover, Mattel has not raised its

16  alleged good intent as an affirmative defense or claim as MGA has.  Rather, Mattel

17  simply denies *MGA's* contentions that Mattel's claims are time barred.  See, e.g., Cox

18  v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1419 (11th Cir. 1994), cert

19  denied, 513 U.S. 1110 (1995) ("*Having gone beyond mere denial, affirmatively to*

20  *assert good faith*, USX injected the issue of its knowledge of the law into the case

21  and thereby waived the attorney-client privilege." (emphasis added)).  MGA has

22  impliedly waived the privilege; Mattel has not.

23

24

_____

25   [50]   MGA's Fifth, Sixth and Eighteenth Affirmative Defenses, Amended Answer

26   and Affirmative Defenses of MGA Entertainment Inc., MGA Entertainment (HK)

27   Limited, and MGAE de Mexico S.R.L. de C.V. to Mattel, Inc.'s Second Amended
     Answer and Counterclaims, dated September 19, 2007, at pp. 22, 25, Smyth Dec.,

28   Exh. 4.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court enter an Order (1) finding that MGA and Isaac Larian have impliedly waived the attorney-client and work product privileges as to all documents, communications, and information related to advice they sought and/or received prior to April 27, 2004, regarding the legal propriety of MGA's contracting with Bryant, MGA's or Bryant's obligations to Mattel, and their subsequent copying, development, production and sales of Bratz, and (2) compelling MGA to produce the documents specified herein and overruling the instructions not to answer specified herein.

DATED:  January 23, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By ___Dylan Proctor /BBS___
   B. Dylan Proctor
   Attorneys for Plaintiff
   Mattel, Inc.

1

## PROOF OF SERVICE

2    I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

3

4    On January 23, 2008, I served true copies of the following document(s) described as **NOTICE OF MOTION AND MOTION OF PLAINTIFF**

5    **MATTEL, INC. FOR ORDER FINDING WAIVER AND TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED; AND**

6    **MEMORANDUM OF POINTS AND AUTHORITIES** on the parties in this action as follows:

7

8    John W. Keker, Esq.
     Michael H. Page, Esq.

9    Christa M. Anderson, Esq.
     Keker & Van Nest, LLP

10   710 Sansome Street
     San Francisco, CA  94111

11

12   **BY FEDEX:** I deposited such document(s) in a box or other facility regularly maintained by FedEx, or delivered such document(s) to a courier or driver

13   authorized by FedEx to receive documents, in sealed envelope(s) or package(s) designated by FedEx with delivery fees paid or provided for, addressed to the

14   person(s) being served.

15   I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

16

17   Executed on January 23, 2008, at Los Angeles, California.

18

19   _____
     Rita Turner

20

21

22

23

24

25

26

27

28

07209/2140692.1

PROOFS OF SERVICE

EXHIBIT ___9___ PAGE __345__

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action. My business address is Apex Attorney Services, 1055 West Seventh Street, Suite 250, Los Angeles, CA 90017.

On January 23, 2008, I served true copies of the following document(s) described as **NOTICE OF MOTION AND MOTION OF PLAINTIFF MATTEL, INC. FOR ORDER FINDING WAIVER AND TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED; AND MEMORANDUM OF POINTS AND AUTHORITIES** on the parties in this action as follows:

| | |
|---|---|
| Thomas J. Nolan, Esq. | Mark E. Overland, Esq. |
| Skadden, Arps, Slate, Meagher & Flom LLP | David C. Scheper, Esq. |
| 300 So. Grand Ave. | Alexander H. Cote, Esq. |
| Suite 3400 | Overland, Borenstein, Scheper & & Kim, LLP |
| Los Angeles CA 90071 | 300 S. Grand Avenue, Suite 2750 |
| | Los Angeles, CA 90071 |

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 23, 2008, at Los Angeles, California.

_____

07209/2190147.1

PROOFS OF SERVICE

EXHIBIT _9_ PAGE _346_

**EXHIBIT 10**

1   DALE M. CENDALI (admitted pro hac vice)
    DIANA M. TORRES (S.B. #162284)
2   MARC F. FEINSTEIN (S.B. #158901)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, California 90071-2899
4   Telephone: (213) 430-6000
    Facsimile: (213) 430-6407
5   Email: dtorres@omm.com

6   PATRICIA GLASER (S.B. # 55668)
    CHRISTENSEN, GLASER, FINK,
7   JACOBS, WEIL & SHAPIRO LLP
    10250 Constellation Boulevard, 19th Floor
8   Los Angeles, California 90067
    Telephone: (310) 553-3000
9   Facsimile:  (310) 556-2920
    Email: pglaser@chrisglase.com

10
    Attorneys for Counter-defendants MGA
11  Entertainment, Inc., Isaac Larian, MGA
    Entertainment (HK) Limited, and MGAE de
12  Mexico S.R.L. de C.V.

13

14

15              **UNITED STATES DISTRICT COURT**

16             **CENTRAL DISTRICT OF CALIFORNIA**

17                    **EASTERN DIVISION**

18  CARTER BRYANT, an individual,          Case No. CV 05-2727 SGL (RNBx)
                                           (Consolidated with CV 04-09049 and
19              Plaintiff,                 CV 04-9059)

20        v.                               **AMENDED ANSWER AND
                                           AFFIRMATIVE DEFENSES OF
21  MATTEL, INC., a Delaware Corporation,  MGA ENTERTAINMENT INC.,
                                           MGA ENTERTAINMENT (HK)
22              Defendant                  LIMITED, AND MGAE DE
                                           MEXICO S.R.L. DE C.V. TO
23                                         MATTEL, INC.'S SECOND
                                           AMENDED ANSWER AND
24                                         COUNTERCLAIMS**

25
    CONSOLIDATED WITH
26                                         Judge:      Hon. Stephen G. Larson
    MATTEL, INC. v. BRYANT and             Courtroom: 1
27  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.
28

EXHIBIT _10_ PAGE _347_

1        Counter-defendants MGA Entertainment, Inc. ("MGA"), MGA

2    Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively

3    the "MGA Defendants") hereby answer, for themselves alone, the Second

4    Amended Answer and Counterclaim of Counter-claimant Mattel Inc., as follows:

5        As a preliminary matter, Mattel's use of headings throughout its

6    counterclaims is improper, and therefore no response to Mattel's headings is

7    required.  If any response is required, MGA Defendants deny all allegations

8    contained in Mattel's headings.

9                                    **RESPONSES**

10       1.    MGA Defendants deny the allegations set forth in paragraph 1.

11       2.    MGA Defendants deny the allegations set forth in paragraph 2.

12       3.    MGA Defendants admit that MGA decided to expand into

13   Mexico in or about 2004, and deny the remaining allegations set forth in paragraph

14   3.

15       4.    MGA Defendants deny the allegations set forth in paragraph 4.

16       5.    MGA Defendants deny the allegations set forth in paragraph 5.

17       6.    MGA Defendants admit that the Court has federal question

18   jurisdiction over this action pursuant to 28 U.S.C. § 1331, deny that 17 U.S.C. §§

19   101 and 18 U.S.C. § 1964(c) apply to the extraterritorial conduct alleged in the

20   Counterclaims, and deny that Mattel is entitled to any relief on its Counterclaims.

21       7.    MGA Defendants admit that venue is proper in this District for

22   Mattel's claims based on conduct alleged to have occurred within this District and

23   deny that venue is proper in this District for acts alleged to have occurred in

24   Mexico, Canada, Hong Kong, or other places outside of this District.

25       8.    MGA Defendants admit the allegations set forth in paragraph 8.

26       9.    MGA Defendants admit the allegations set forth in the first and

27   second sentences of paragraph 9, and deny the remaining allegations set forth in

28   paragraph 9.

EXHIBIT _10_ PAGE _348_

1      10.     MGA Defendants admit the allegations set forth in paragraph

2      10.

3           11.     MGA Defendants admit the allegations set forth in the first

4      sentence of paragraph 11, and deny the remaining allegations set forth in paragraph

5      11.

6           12.     MGA Defendants admit the allegations set forth in paragraph

7      12.

8           13.     MGA Defendants admit the allegations set forth in the first

9      sentence of paragraph 13, and deny the remaining allegations set forth in paragraph

10     13.

11          14.     MGA Defendants admit the allegations set forth in paragraph

12     14.

13          15.     Paragraph 15 is a statement of Mattel's legal position, to which

14     no response is necessary.  To the extent a response is required, MGA Defendants

15     deny the allegations set forth in paragraph 15.

16          16.     MGA Defendants admit the allegations set forth in the first

17     sentence of paragraph 16.  MGA Defendants are without sufficient knowledge to

18     admit or deny the remaining allegations set forth in paragraph 16, and on that basis,

19     deny the remaining allegations set forth in paragraph 16.

20          17.     MGA Defendants are without sufficient knowledge to admit or

21     deny the allegations set forth in paragraph 17, and on that basis, deny the

22     allegations set forth in paragraph 17.

23          18.     MGA Defendants are without sufficient knowledge to admit or

24     deny the allegations set forth in paragraph 18, and on that basis, deny the

25     allegations set forth in paragraph 18.

26          19.     MGA Defendants admit that MGA is a toy manufacturer, that

27     MGA began as a consumer electronics business and expanded into the toy business

28     with licenses to sell handheld electronic games, and later expanded its business by

EXHIBIT *10* PAGE *349*

1  launching the Bratz fashion doll line, and deny the remaining allegations set forth in

2  paragraph 19.

3        20.    MGA Defendants deny the allegations set forth in paragraph 20.

4        21.    MGA Defendants admit that Carter Bryant is a former employee

5  of Mattel, and state that they are without sufficient knowledge to admit or deny the

6  remaining allegations set forth in paragraph 21, and on that basis, deny the

7  remaining allegations set forth in paragraph 21.

8        22.    MGA Defendants are without sufficient knowledge to admit or

9  deny the allegations set forth in paragraph 22, and on that basis, deny the

10  allegations set forth in paragraph 22.

11        23.    MGA Defendants are without sufficient knowledge to admit or

12  deny the allegations set forth in paragraph 23, and on that basis, deny the

13  allegations set forth in paragraph 23.

14        24.    MGA Defendants are without sufficient knowledge to admit or

15  deny the allegations set forth in paragraph 24, and on that basis, deny the

16  allegations set forth in paragraph 24.

17        25.    MGA Defendants are without sufficient knowledge to admit or

18  deny the allegations set forth in paragraph 25, and on that basis, deny the

19  allegations set forth in paragraph 25.

20        26.    MGA Defendants deny the allegations set forth in paragraph 26.

21        27.    MGA Defendants deny the allegations set forth in paragraph 27.

22        28.    MGA Defendants deny the allegations set forth in paragraph 28.

23        29.    MGA Defendants deny the allegations set forth in paragraph 29.

24        30.    MGA Defendants admit that after MGA made the decision to

25  proceed with the manufacture of the Bratz dolls, MGA employees communicated

26  with employees of MGA Entertainment (HK) Limited on subjects including the

27  manufacturing of Bratz, and deny the remaining allegations set forth in the first

28

LA2:841935.2

EXHIBIT 10 PAGE 350

1  sentence of paragraph 30.  MGA Defendants admit the second sentence of

2  paragraph 30.

3       31.    MGA Defendants admit that samples of the four original Bratz

4  dolls were shown at the Hong Kong Toy Fair in January 2001, and deny the

5  remaining allegations set forth in paragraph 31.

6       32.    MGA Defendants admit that MGA and its subsidiaries have

7  distributed and sold Bratz and Bratz-related products in many countries throughout

8  the world, that MGA and its subsidiaries have licensed Bratz to third parties, that

9  MGA has derived annual revenues from its sales and licenses of Bratz in excess of

10 $500 million, that MGA and its subsidiaries continue to market, sell and license

11 Bratz and intend to continue to do so, and deny the remaining allegations set forth

12 in paragraph 32.

13      33.    MGA Defendants deny the allegations set forth in paragraph 33.

14      34.    MGA Defendants deny the allegations set forth in paragraph 34.

15      35.    MGA Defendants deny the allegations set forth in paragraph 35.

16      36.    MGA Defendants admit that Bryant had an agreement with

17 MGA, state that the terms of the agreement speak for themselves, and deny the

18 remaining allegations set forth in paragraph 36.

19      37.    MGA Defendants admit that in or about late 2003 or early 2004,

20 MGA decided to form a new corporation, MGAE de Mexico, S.R.L. de C.V., to

21 conduct business in Mexico, admit that MGAE de Mexico hired three employees of

22 Mattel's Mexican subsidiary, and deny the remaining allegations set forth in

23 paragraph 37.

24      38.    MGA Defendants admit that Carlos Gustavo Machado Gomez

25 was a Marketing Manager, Boys Division, for Mattel Mexico, admit that Machado

26 was employed at Mattel Mexico from April 1997 until April 19, 2004, admit that

27 Machado had access to some nonpublic business information of Mattel Mexico, and

28 state that they are without sufficient knowledge to admit or deny the remaining

EXHIBIT _10_ PAGE _351_

1   allegations set forth in paragraph 38, and on that basis, deny the remaining
2   allegations set forth in paragraph 38.
3         39.   MGA Defendants admit that Mariana Trueba Almada was a
4   Marketing Manager, Girls Division, for Mattel Mexico, admit that Trueba had
5   access to some nonpublic business information of Mattel Mexico, and state that
6   they are without sufficient knowledge to admit or deny the remaining allegations
7   set forth in paragraph 39, and on that basis, deny the remaining allegations set forth
8   in paragraph 39.
9         40.   MGA Defendants admit that Pablo Vargas San Jose was a Trade
10  Marketing Manager for Mattel Mexico, admit that Vargas was employed at Mattel
11  Mexico from March 2001 until April 19, 2004, admit that Vargas had access to
12  some nonpublic business information of Mattel Mexico, and state that they are
13  without sufficient knowledge to admit or deny the remaining allegations set forth in
14  paragraph 40, and on that basis, deny the remaining allegations set forth in
15  paragraph 40.
16        41.   MGA Defendants admit that in or about early 2004, Machado,
17  Trueba and Vargas discussed leaving Mattel Mexico, admit that Machado, Trueba
18  and Vargas resigned from Mattel Mexico on April 19, 2004, admit that they did not
19  identify their new employer to Mattel Mexico, admit that Machado, Trueba and
20  Vargas were offered and accepted employment with MGAE de Mexico, and deny
21  the remaining allegations set forth in paragraph 41.
22        42.   MGA Defendants admit that MGA personnel communicated by
23  telephone with Machado and Vargas prior to their Mattel resignations, admit that
24  MGA personnel, including Isaac Larian, communicated by e-mail with Machado
25  and Vargas concerning terms of employment through an America Online e-mail
26  account with the address <plot04@aol.com>, and deny the remaining allegations
27  set forth in paragraph 42.
28

LA2:841935.2

- 6 -

EXHIBIT _10_ PAGE _352_

1        43.    MGA Defendants admit that in or about March 2004, Machado,

2  Trueba, and Vargas made plans to travel from Mexico to Los Angeles in April

3  2004, admit that in or about March 2004, Machado, Trueba and Vargas discussed

4  with MGA personnel, including Larian, employment at MGAE de Mexico, state

5  that the quoted <plot04@aol.com> e-mails speak for themselves, and deny the

6  remaining allegations set forth in paragraph 43.

7        44.    MGA Defendants are without sufficient knowledge to admit or

8  deny the allegations set forth in paragraph 44, and on that basis, deny the

9  allegations set forth in paragraph 44.

10        45.    MGA Defendants are without sufficient knowledge to admit or

11  deny the allegations set forth in paragraph 45, and on that basis, deny the

12  allegations set forth in paragraph 45.

13        46.    MGA Defendants are without sufficient knowledge to admit or

14  deny the allegations set forth in paragraph 46, and on that basis, deny the

15  allegations set forth in paragraph 46.

16        47.    MGA Defendants are without sufficient knowledge to admit or

17  deny the allegation set forth in the third sentence of paragraph 47, and on that basis,

18  deny these allegations, and deny the remaining allegations set forth in paragraph 47.

19        48.    MGA Defendants deny the allegations set forth in paragraph 48.

20        49.    MGA Defendants deny the allegations set forth in paragraph 49.

21        50.    MGA Defendants are without sufficient knowledge to admit or

22  deny the allegation that MGA publicized a claim that, in 2005, it had increased its

23  Mexican market share by 90% over the prior year, and on that basis, deny this

24  allegation, and deny the remaining allegations set forth in paragraph 50.

25        51.    MGA Defendants deny the allegations set forth in paragraph 51.

26        52.    MGA Defendants deny the allegations set forth in paragraph 52.

27        53.    MGA Defendants admit that on October 27, 2005, Mexican

28  authorities searched MGAE de Mexico and seized certain documents, and state that

EXHIBIT _10_ PAGE _353_

1   they are without sufficient knowledge to admit or deny the remaining allegations

2   set forth in paragraph 53, and on that basis, deny the remaining allegations set forth

3   in paragraph 53.

4           54.   MGA Defendants admit that Machado was transferred from

5   MGAE de Mexico to MGA's office in Van Nuys, California, admit that Machado

6   resides in the County of Los Angeles, and deny the remaining allegations set forth

7   in paragraph 54.

8           55.   MGA Defendants admit the allegations set forth in the first

9   sentence of paragraph 55. MGA Defendants admit that Tyco Toys hired Brawer on

10  April 22, 1996, and state that they are without sufficient knowledge to admit or

11  deny the remaining allegations set forth in the second sentence of paragraph 55, and

12  on that basis, deny the remaining allegations set forth in the second sentence of

13  paragraph 55. MGA Defendants admit the allegations set forth in third sentence of

14  paragraph 55. MGA Defendants admit that on April 9, 1997, Brawer became a

15  Marketing Director for Mattel in Mount Laurel, New Jersey, and state that the

16  remaining allegations in the fourth sentence of paragraph 55 are a statement of

17  Mattel's legal position, to which no response is necessary. To the extent a response

18  is required, MGA Defendants deny the remaining allegations set forth in paragraph

19  55.

20          56.   MGA Defendants are without sufficient knowledge to admit or

21  deny the allegations set forth in paragraph 56, and on that basis, deny the

22  allegations set forth in paragraph 56. The last sentence of paragraph 56 is a

23  statement of Mattel's legal position, to which no response is necessary. To the

24  extent a response is required, MGA Defendants deny the remaining allegations set

25  forth in paragraph 56.

26          57.   MGA Defendants admit that by 2003, Brawer had advanced

27  within Mattel to a Senior Vice President position over customer marketing, and

28  state that the remaining allegations in the first sentence of paragraph 57 are a

LA2:841935.2

- 8 -

EXHIBIT 10 PAGE 354

1  statement of Mattel's legal position, to which no response is necessary. To the

2  extent a response is required, MGA Defendants deny the remaining allegations set

3  forth in the first sentence of paragraph 57. MGA Defendants admit that in his

4  executive position, Brawer was provided access to certain nonpublic Mattel

5  information.

6           58.   MGA Defendants admit the allegations set forth in the first

7  sentence of paragraph 58. MGA Defendants deny the allegations set forth in the

8  second sentence of paragraph 58. MGA Defendants are without sufficient

9  knowledge to admit or deny the remaining allegations set forth in paragraph 58, and

10 on that basis, deny the remaining allegations set forth in paragraph 58.

11          59.   MGA Defendants are without sufficient knowledge to admit or

12 deny the allegations set forth in paragraph 59, and on that basis, deny the

13 allegations set forth in paragraph 59.

14          60.   MGA Defendants admit that in April 2004, Mattel made Brawer

15 a Senior Vice President/General Manager, and state that they are without sufficient

16 knowledge to admit or deny the remaining allegations set forth in paragraph 60, and

17 on that basis, deny the remaining allegations set forth in paragraph 60.

18          61.   MGA Defendants admit that in May 2004, Brawer began

19 performing General Manager duties, working with one of Mattel's major retail

20 customer accounts, and state that they are without sufficient knowledge to admit or

21 deny the remaining allegations set forth in paragraph 61, and on that basis, deny the

22 remaining allegations set forth in paragraph 61.

23          62.   MGA Defendants admit the allegations set forth in the first

24 sentence of paragraph 62. MGA Defendants admit that as Brawer left, he carried a

25 large cardboard box, and deny the remaining allegations set forth in the second

26 sentence of paragraph 62. MGA Defendants state that they are without sufficient

27 knowledge to admit or deny the remaining allegations set forth in paragraph 62, and

28 on that basis, deny the remaining allegations set forth in paragraph 62.

LA2:841935.2

EXHIBIT  10  PAGE  355