63.    MGA Defendants admit the allegations set forth in paragraph 63.

64.    MGA Defendants admit that on September 20, 2004, Mattel hand-delivered a letter to Brawer, state that the contents of the letter speak for themselves, and deny the remaining allegations set forth in paragraph 64.

65.    MGA Defendants admit that at his exit interview on September 29, 2004, Brawer was given a copy of an agreement with Tyco that he had signed on April 22, 1996, and a copy of Mattel's Code of Conduct, admit that Brawer stated that he had not signed the Code of Conduct, and deny the remaining allegations set forth in paragraph 65.

66.    MGA Defendants admit that on October 1, 2004, Brawer's last day of employment with Mattel, Mattel delivered a letter to Brawer, state that the contents of the letter speak for themselves, and deny the remaining allegations set forth in paragraph 66.

67.    MGA Defendants admit that Brawer became MGA's Executive Vice President of Sales and Marketing, admit that he was responsible for sales worldwide, admit that he had and continues to have responsibility for MGA's accounts with some of the same retailers that he worked with while at Mattel, and deny the remaining allegations set forth in paragraph 67.

68.    MGA Defendants admit that Brawer stated during his exit interview that he had returned all confidential proprietary information to Mattel, state that he did not provide copies of information from his personal contacts file, and deny the remaining allegations set forth in paragraph 68.

69.    MGA Defendants admit that since leaving Mattel, Brawer has had contacts with certain Mattel employees, both by telephone and electronic mail, and deny the remaining allegations set forth in paragraph 69.

70.    MGA Defendants deny the allegations set forth in paragraph 70.

EXHIBIT _10_ PAGE _356_

71.   MGA Defendants are without sufficient knowledge to admit or deny the allegations set forth in paragraph 71, and on that basis, deny the allegations set forth in paragraph 71.

72.   MGA Defendants are without sufficient knowledge to admit or deny the allegations set forth in paragraph 72, and on that basis, deny the allegations set forth in paragraph 72.

73.   MGA Defendants admit that on September 26, 2005, Brisbois resigned from Mattel Canada, state that she took a position as Vice President of National Accounts at MGAE Canada, and deny the remaining allegations set forth in the first sentence of paragraph 73. MGA Defendants are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 73, and on that basis, deny the remaining allegations set forth in paragraph 73.

74.   MGA Defendants admit that Brisbois spoke with Isaac Larian by telephone on or about the evening of September 22, 2005, deny that Brisbois copied approximately 45 Mattel documents onto a USB or thumb drive on that same date, deny that Brisbois concealed the thumb drive the last time she left Mattel Canada's office, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 74, and on that basis, deny the remaining allegations set forth in paragraph 74.

75.   MGA Defendants are without sufficient knowledge to admit or deny the allegations set forth in paragraph 75, and on that basis, deny the allegations set forth in paragraph 75.

76.   MGA Defendants admit that Brisbois traveled several times to MGA's offices in Van Nuys, California and met with Larian and Brawer, that MGA issued a press release, state that the press release speaks for itself, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 76 and, on that basis, deny the remaining allegations set forth in paragraph 76.

- 11 -

EXHIBIT 10 PAGE 357

77.   MGA Defendants admit that MGA has hired at least 25 employees directly from Mattel's United States operations in the past few years, and deny the remaining allegations set forth in paragraph 77.

78.   MGA Defendants deny the allegations set forth in the first sentence of paragraph 78.  MGA Defendants admit that Larian has sent email messages to a "Bratz News" distribution list, admit that the recipients of e-mail messages sent to the "Bratz News" distribution list includes members of the media as well as representatives of customers of both MGA and Mattel, and deny the remaining allegations set forth in paragraph 78.

79.   MGA Defendants admit that on May 12, 2006, Larian sent an email message to the "Bratz News" distribution list that included a reference to the new My Scene product with real gems, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 79, and on that basis, deny the remaining allegations set forth in paragraph 79.

80.   MGA Defendants admit that Larian told one retailer that such retailer was the only retailer with plans to purchase MY SCENE BLING BLING with real gems, at a time when Larian had a good faith belief that such retailer was the only retailer with plans to purchase MY SCENE BLING BLING with real gems, and deny the remaining allegations set forth in paragraph 80.

81.   MGA Defendants deny the allegation set forth in paragraph 81.

82.   MGA Defendants repeat their responses contained in paragraphs 1 through 81 of this Answer and incorporate them by reference as though fully and completely set forth herein.

83.   MGA Defendants deny the allegations set forth in paragraph 83.

84.   MGA Defendants deny the allegations set forth in paragraph 84.

85.   MGA Defendants deny the allegations set forth in paragraph 85.

86.   MGA Defendants deny the allegations set forth in paragraph 86.

87.   MGA Defendants deny the allegations set forth in paragraph 87.

EXHIBIT 10 PAGE 358

1    88.    MGA Defendants repeat their responses contained in paragraphs

2  1 through 87 of this Answer and incorporate them by reference as though fully and

3  completely set forth herein.

4    89.    MGA Defendants deny the allegations set forth in paragraph 89.

5    90.    MGA Defendants deny the allegations set forth in paragraph 90.

6    91.    MGA Defendants deny the allegations set forth in paragraph 91.

7    92.    MGA Defendants deny the allegations set forth in paragraph 92.

8    93.    MGA Defendants deny the allegations set forth in paragraph 93.

9    94.    MGA Defendants deny the allegations set forth in paragraph 94.

10    95.    MGA Defendants deny the allegations set forth in paragraph 95.

11    96.    MGA Defendants deny the allegations set forth in paragraph 96.

12    97.    MGA Defendants deny the allegations set forth in paragraph 97.

13    98.    MGA Defendants repeat their responses contained in paragraphs

14  1 through 97 of this Answer and incorporate them by reference as though fully and

15  completely set forth herein.

16    99.    MGA Defendants deny the allegations set forth in paragraph 99.

17    100.    MGA Defendants deny the allegations set forth in paragraph

18  100.

19    101.    MGA Defendants deny the allegations set forth in paragraph

20  101.

21    102.    MGA Defendants deny the allegations set forth in paragraph

22  102.

23    103.    MGA Defendants deny the allegations set forth in paragraph

24  103.

25    104.    MGA Defendants deny the allegations set forth in paragraph

26  104.

27    105.    MGA Defendants deny the allegations set forth in paragraph

28  105.

LA2:841935.2

- 13 -

EXHIBIT _10_ PAGE _359_

1          106.   MGA Defendants repeat their responses contained in paragraphs

2   1 through 105 of this Answer and incorporate them by reference as though fully and

3   completely set forth herein.

4          107.   MGA Defendants deny the allegations set forth in paragraph

5   107.

6          108.   MGA Defendants deny the allegations set forth in paragraph

7   108.

8          109.   MGA Defendants deny the allegations set forth in paragraph

9   109.

10          110.   MGA Defendants deny the allegations set forth in paragraph

11   110.

12          111.   MGA Defendants deny the allegations set forth in paragraph

13   111.

14          112.   MGA Defendants deny the allegations set forth in paragraph

15   112.

16          113.   MGA Defendants deny the allegations set forth in paragraph

17   113.

18          114.   MGA Defendants deny the allegations set forth in paragraph

19   114.

20          115.   MGA Defendants deny the allegations set forth in paragraph

21   115.

22          116.   MGA Defendants repeat their responses contained in paragraphs

23   1 through 115 of this Answer and incorporate them by reference as though fully and

24   completely set forth herein.

25          117.   MGA Defendants deny the remaining allegations set forth in

26   paragraph 117.

27          118.   MGA Defendants deny the allegations set forth in paragraph

28   118.

LA2:841935.2

EXHIBIT _10_ PAGE _360_

1    119.   MGA Defendants deny the allegations set forth in paragraph

2    119.

3    120.   MGA Defendants deny the allegations set forth in paragraph

4    120.

5    121.   MGA Defendants deny the allegations set forth in paragraph

6    121.

7    122.   MGA Defendants repeat their responses contained in paragraphs

8    1 through 121 of this Answer and incorporate them by reference as though fully and

9    completely set forth herein.

10   123.   MGA Defendants deny the allegations set forth in paragraph

11   123.

12   124.   MGA Defendants deny the allegations set forth in paragraph

13   124.

14   125.   MGA Defendants deny the allegations set forth in paragraph

15   125.

16   126.   MGA Defendants deny the allegations set forth in paragraph

17   126.

18   127.   MGA Defendants deny the allegations set forth in paragraph

19   127.

20   128.   MGA Defendants deny the allegations set forth in paragraph

21   128.

22   129.   MGA Defendants repeat their responses contained in paragraphs

23   1 through 128 of this Answer and incorporate them by reference as though fully and

24   completely set forth herein.

25   130.   The first and fifth sentences of paragraph 130 are statements of

26   Mattel's legal position, to which no response is necessary.  To the extent a response

27   is required, MGA Defendants deny the allegations set forth in the first and fifth

28   sentences of paragraph 130.  MGA Defendants are without sufficient knowledge to

EXHIBIT 10 PAGE 361

1  admit or deny the remaining allegations set forth in paragraph 130, and on that

2  basis, deny the remaining allegations set forth in  paragraph 130.

3            131.   MGA Defendants deny the allegations set forth in paragraph

4  131.

5            132.   MGA Defendants deny the allegations set forth in paragraph

6  132.

7            133.   MGA Defendants deny the allegations set forth in paragraph

8  133.

9            134.   MGA Defendants deny the allegations set forth in paragraph

10  134.

11            135.   MGA Defendants deny the allegations set forth in paragraph

12  135.

13            136.   MGA Defendants repeat their responses contained in paragraphs

14  1 through 135 of this Answer and incorporate them by reference as though fully and

15  completely set forth herein.

16            137.   MGA Defendants deny the allegations set forth in paragraph

17  137.

18            138.   MGA Defendants deny the allegations set forth in paragraph

19  138.

20            139.   MGA Defendants deny the allegations set forth in paragraph

21  139.

22            140.   MGA Defendants deny the allegations set forth in paragraph

23  140.

24            141.   MGA Defendants deny the allegations set forth in paragraph

25  141.

26            142.   MGA Defendants repeat their responses contained in paragraphs

27  1 through 141 of this Answer and incorporate them by reference as though fully and

28  completely set forth herein.

EXHIBIT _10_ PAGE _362_

1    143.   Paragraph 143 is a statement of Mattel's legal position, to which

2  no response is necessary. To the extent a response is required, MGA Defendants

3  deny the allegations set forth in the paragraph 143.

4    144.   MGA Defendants deny the allegations set forth in paragraph

5  144.

6    145.   MGA Defendants deny the allegations set forth in paragraph

7  145.

8    146.   MGA Defendants deny the allegations set forth in paragraph

9  146.

10    147.   MGA Defendants deny the allegations set forth in paragraph

11  147.

12    148.   MGA Defendants deny the allegations set forth in paragraph

13  148.

14    149.   MGA Defendants repeat their responses contained in paragraphs

15  1 through 148 of this Answer and incorporate them by reference as though fully and

16  completely set forth herein.

17    150.   MGA Defendants deny the allegations set forth in paragraph

18  150.

19    151.   MGA Defendants deny the allegations set forth in paragraph

20  151.

21    152.   MGA Defendants deny the allegations set forth in paragraph

22  152.

23    153.   MGA Defendants deny the allegations set forth in paragraph

24  153.

25    154.   MGA Defendants deny the allegations set forth in paragraph

26  154.

27

28

LA2:841935.2

- 17 -

EXHIBIT 10 PAGE 363

1    155.   MGA Defendants repeat their responses contained in paragraphs
2  1 through 154 of this Answer and incorporate them by reference as though fully and
3  completely set forth herein.

4    156.   MGA Defendants deny the allegations set forth in paragraph
5  156.

6    157.   MGA Defendants deny the allegations set forth in paragraph
7  157.

8    158.   MGA Defendants deny the allegations set forth in paragraph
9  158.

10    159.   MGA Defendants deny the allegations set forth in paragraph
11  159.

12    160.   MGA Defendants deny the allegations set forth in paragraph
13  160.

14    161.   MGA Defendants deny the allegations set forth in paragraph
15  161.

16    162.   MGA Defendants deny the allegations set forth in paragraph
17  162.

18    163.   MGA Defendants repeat their responses contained in paragraphs
19  1 through 162 of this Answer and incorporate them by reference as though fully and
20  completely set forth herein.

21    164.   MGA Defendants deny the allegations set forth in paragraph
22  164.

23    165.   MGA Defendants deny the allegations set forth in paragraph
24  165.

25    166.   MGA Defendants deny the allegations set forth in paragraph
26  166.

27

28

EXHIBIT _10_ PAGE _364_

1        167.   MGA Defendants repeat their responses contained in paragraphs

2    1 through 166 f this Answer and incorporate them by reference as though fully and

3    completely set forth herein.

4        168.   MGA Defendants deny the allegations set forth in paragraph

5    168.

6        169.   Paragraph 169 is a statement of Mattel's legal position, to which

7    no response is necessary.  To the extent a response is required, MGA Defendants

8    deny the allegations set forth in the paragraph 169.

9        170.   Paragraph 170 is a statement of Mattel's legal position, to which

10   no response is necessary.  To the extent a response is required, MGA Defendants

11   deny the allegations set forth in the paragraph 170.

12                            **AFFIRMATIVE DEFENSES**

13        Without admitting any wrongful conduct on the part of MGA Defendants or

14   any Counter-Defendant, and without admitting that Mattel suffered any loss,

15   damage, or injury, MGA Defendants allege the following affirmative defenses to

16   the Counterclaims.  By designating the following as affirmative defenses, MGA

17   Defendants do not in any way waive or limit any defenses which are or may be

18   raised by their denials, allegations, and averments set forth herein.  MGA

19   Defendants also do not, by alleging any affirmative defense, admit that Mattel does

20   not have the burden of proof for any or all facts underlying any of those defenses.

21   These defenses are pled in the alternative, and are raised to preserve the rights of

22   MGA Defendants to assert such defenses, and are without prejudice to their ability

23   to raise other and further defenses.

24                          **FIRST AFFIRMATIVE DEFENSE**

25                            (Failure to State a Claim)

26        Mattel's counterclaims fail to state a claim against MGA Defendants upon

27   which relief can be granted.

28

EXHIBIT 10 PAGE 365

## SECOND AFFIRMATIVE DEFENSE

### (Unclean Hands/*in Pari Delicto*)

Mattel's counterclaims are barred in whole or in part by Mattel's unclean hands and wrongful acts. This affirmative defense is based, in part, on Mattel's efforts to undermine MGA's business and to "kill" Bratz at any cost which include, but are not limited to, Mattel's efforts to infringe and dilute MGA's trade dress, copy MGA's products, packaging, themes, and advertising (including for Mattel products My Scene, Diva Starz, Wee 3 Friends, Acceleracers, Polly Pocket, and Little Mommy products, to name a few), and engage in other acts of unfair competition against MGA as alleged in MGA's complaint against Mattel; Mattel's efforts to create negative publicity or press about MGA, MGA products, Bryant, Larian, or MGA employees; Mattel's efforts to fund or commission market research or studies that portray Bratz or MGA products negatively; Mattel's efforts to interfere with MGA's acquisition of or investment in Zapf Creation AG; Mattel's efforts to include negative references to MGA or Bratz on Mattel's "We Believe in Girls" website; Mattel's efforts or intent to interfere with business dealings or contractual relations between MGA and Smoby Group; Mattel's influencing Nickelodeon to reject MGA advertisements or to limit time slots for advertisements; assisting parties in lawsuits against MGA; Mattel's monitoring, "spying on" or gaining knowledge of MGA's trade secrets, non-public information, non-public activities, unreleased products, and product development; gaining access, or attempts to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false pretenses; Mattel's wrongfully obtaining MGA's costs and sales information through Mattel-employed category managers at retailers; Mattel's inducing non-party customers to breach confidentiality agreements with MGA and divulge non-public information about MGA's unreleased products; Mattel's covertly investigating MGA, its officers and employees, and their family members; Mattel's contacting persons under false

EXHIBIT *10* PAGE *366*

1    pretense in order to interrogate them about Bratz and this litigation; Mattel's

2    coercing its employees to accept restrictive covenants (right before a massive

3    layoff) and non-compete clauses and other efforts to prevent prospective MGA

4    employees from accepting offers of employment; Mattel's delay in suing Carter

5    Bryant because, *inter alia*, Mattel wanted Bryant to testify in an unrelated Mattel

6    case; Mattel's falsely inflating its Barbie sales figures in an effort to mislead the

7    public and retailers; and Mattel's taking all measures to conceal its bad acts,

8    including the willful non-retention and destruction of documents. Additionally,

9    Mattel believed from the time that Carter Bryant left Mattel's employ that he was

10   going to perform work for a Mattel competitor. Mattel began investigating Bryant

11   and MGA Defendants, including Bryant's role in the creation and development of

12   Bratz, at least as early as March 2002. Nonetheless, Mattel waited years to bring

13   suit, all the while allowing MGA Defendants to spend years developing their

14   business and invest tens of millions of dollars developing the Bratz products and

15   building the Bratz brand. These averments are made on information and belief

16   except where MGA Defendants have knowledge thereof.

### THIRD AFFIRMATIVE DEFENSE

#### (Laches)

19        Mattel's counterclaims are barred by the equitable doctrine of laches

20   because, among other things, Mattel believed from the time that Carter Bryant left

21   Mattel's employ that he was going to perform work for a Mattel competitor. Mattel

22   began investigating Bryant and MGA Defendants, including Bryant's role in the

23   creation and development of Bratz, at least as early as March 2002 and thereafter

24   continued its investigation into Bryant's role in the creation and development of

25   Bratz, as well as his work with MGA, in August 2002 after Mattel's CEO, Robert

26   Eckert, received an "anonymous letter" that claimed that Bryant stole the idea for

27   Bratz from Mattel and sold it to MGA Defendants. Nonetheless, Mattel waited

28   years to bring suit, all the while allowing MGA Defendants to spend years

LA2:841935.2

- 21 -

EXHIBIT _10_ PAGE _367_

1   developing their business and invest tens of millions of dollars developing the Bratz

2   products and building the Bratz brand.

3   ### FOURTH AFFIRMATIVE DEFENSE

4   #### (Statute of Limitations)

5       Mattel's counterclaims are barred by the applicable statutes of limitations,

6   including but not limited to, 18 U.S.C. § 1961 *et seq.*, 17 U.S.C. § 507(b), and Code

7   of Civil Procedure §§ 337, 339, 343 and 338(c).

8   ### FIFTH AFFIRMATIVE DEFENSE

9   #### (*Bona Fide* Purchaser for Value)

10      Mattel cannot maintain its counterclaims against MGA Defendants because

11  MGA Defendants paid valuable consideration for Bryant's assignment of his rights

12  in the original Bratz drawings to MGA Defendants, and MGA Defendants acted

13  with a good faith belief that Bryant owned the rights to his original Bratz drawings

14  and that his assignment of such rights to MGA Defendants was valid and

15  permissible.

16  ### SIXTH AFFIRMATIVE DEFENSE

17  #### (17 U.S.C. § 205(d))

18      Mattel cannot maintain its counterclaims against MGA Defendants because,

19  among other things, MGA Defendants acted with a good faith belief that Bryant

20  owned the rights to his original Bratz drawings and that his assignment of such

21  rights to MGA Defendants was valid and permissible.

22  ### SEVENTH AFFIRMATIVE DEFENSE

23  #### (Information Readily Ascertainable)

24      MGA Defendants cannot be liable, either on their own account or by

25  association with other defendants, for misappropriation of information that was

26  readily ascertainable by proper means at the time of the alleged acquisition or use.

27  Such information includes, but is not limited to, the identity of suppliers,

28

EXHIBIT _10_ PAGE _368_

1  manufacturers, distributors and retailers; contact information for the same; and

2  sales, marketing and media data.

3  **EIGHTH AFFIRMATIVE DEFENSE**

4  (Acts or Omissions of Others)

5  Mattel's damages, if any, were not caused by MGA Defendants and are not

6  attributable to any acts or omissions of MGA Defendants.

7  **NINTH AFFIRMATIVE DEFENSE**

8  (Estoppel)

9  Mattel's counterclaims are barred in whole or in part by the equitable

10  doctrine of estoppel because, among other things, Mattel believed from the time

11  that Carter Bryant left Mattel's employ that he was going to perform work for a

12  Mattel competitor. Mattel began investigating Bryant and MGA Defendants,

13  including Bryant's role in the creation and development of Bratz, at least as early as

14  March 2002. Nonetheless, Mattel waited years to bring suit, all the while allowing

15  MGA Defendants to spend years developing their business and invest tens of

16  millions of dollars developing the Bratz products and building the Bratz brand.

17  **TENTH AFFIRMATIVE DEFENSE**

18  (Acquiescence)

19  Mattel's counterclaims are barred in whole or in part by acquiescence

20  because, among other things, Mattel believed from the time that Carter Bryant left

21  Mattel's employ that he was going to perform work for a Mattel competitor. Mattel

22  began investigating Bryant and MGA Defendants, including Bryant's role in the

23  creation and development of Bratz, at least as early as March 2002. Nonetheless,

24  Mattel waited years to bring suit, all the while allowing MGA Defendants to spend

25  years developing their business and invest tens of millions of dollars developing the

26  Bratz products and building the Bratz brand. Additionally, Mattel tolerated and

27  condoned conduct by other employees similar to the alleged conduct by Bryant and

28  others on which Mattel bases its claims.

EXHIBIT _10_ PAGE _369_

## ELEVENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

MGA Defendants deny that Mattel suffered any damages, but even if it did, Mattel failed to take reasonable steps to mitigate those purported damages.

## TWELFTH AFFIRMATIVE DEFENSE

### (No Statutory Damages or Attorneys' Fees)

Mattel is barred from recovering statutory damages and/or attorneys' fees because it failed to register the copyrights that are purportedly at issue within the time required by 17 U.S.C. § 412.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Waiver)

Mattel's counterclaims are barred in whole or in part by waiver because, among other things, Mattel believed from the time that Carter Bryant left Mattel's employ that he was going to perform work for a Mattel competitor.  Mattel began investigating Bryant and MGA Defendants, including Bryant's role in the creation and development of Bratz, at least as early as March 2002.  Nonetheless, Mattel waited years to bring suit, all the while allowing MGA Defendants to spend years developing their business and invest tens of millions of dollars developing the Bratz products and building the Bratz brand.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Abandonment)

Mattel has abandoned any interest it may have had in the alleged copyrighted works.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (*De Minimus* Use)

MGA Defendants deny that Mattel owns any copyright interest in the alleged works, but even if Mattel could craft a claim that the Bratz dolls incorporate an

- 24 -

EXHIBIT _10_ PAGE _370_

1    aspect of a Mattel copyrighted work, such use would be *de minimus* and non-

2    infringing.

### SIXTEENTH AFFIRMATIVE DEFENSE

#### (Joint Authorship)

5    MGA Defendants deny that Mattel owns any copyright interest in the alleged

6    works, but even if it did, any liability would be eliminated or greatly diminished by

7    the doctrine of joint authorship.

### SEVENTEENTH AFFIRMATIVE DEFENSE

#### (Competition Privilege/Justification)

10    Mattel's counterclaims are barred in whole or in part on the grounds that the

11    acts of the MGA Defendants were lawful competition or justified.

### EIGHTEENTH AFFIRMATIVE DEFENSE

#### (Good Faith)

14    Mattel's counterclaims are barred in whole or in part because the MGA

15    Defendants acted in good faith.

### NINETEENTH AFFIRMATIVE DEFENSE

#### (Lack of Authority)

18    Mattel's counterclaims are barred in whole or in part on the grounds that to

19    the extent any person committed an unlawful or tortious act, the person lacked

20    authority to commit such act on behalf of the MGA Defendants.

### TWENTIETH AFFIRMATIVE DEFENSE

#### (Lack of Standing)

23    Mattel's counterclaims are barred in whole or in part by its lack of standing.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

#### (Joinder in Defenses of Co-Defendants)

26    MGA Defendants hereby adopt and incorporate by reference any and all

27    other affirmative defenses that have been or will be asserted by any other defendant

28    (including Bryant) in this litigation to the extent that defendants may share in such

LA2:841935.2

- 25 -

EXHIBIT *10* PAGE *371*

1  affirmative defenses.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Undiscovered Defenses)

MGA Defendants have insufficient knowledge or information upon which to form a belief as to whether additional defenses are available.  MGA Defendants reserve the right to assert any further or additional defenses upon receiving more complete information regarding the matters alleged in the Counterclaims, through discovery or otherwise.

WHEREFORE, MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V., pray for relief as follows:

    a.   that the Counterclaims be dismissed with prejudice;

    b.   that judgment be entered in favor of counter-defendants and against counterclaimant;

    c.   that counter-defendants recover their costs and attorneys' fees; and

    d.   that the Court award such other and further relief as is just and proper.

Dated:  September 19, 2007

O'MELVENY & MYERS LLP

_Marc F. Feinstein_
Marc F. Feinstein
Attorneys for Counter-defendants
MGA Entertainment, Inc., Isaac Larian,
MGA Entertainment (HK) Limited, and
MGAE de Mexico S.R.L. de C.V.

LA2:841935.2

- 26 -

EXHIBIT _10_ PAGE _372_

## PROOF OF SERVICE

I, Karen A. Nakatsu, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899.  On September 19, 2007, I served the within document(s):

**AMENDED ANSWER AND AFFIRMATIVE DEFENSES OF MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT (HK) LIMITED, AND MGAE DE MEXICO S.R.L. DE C.V. TO MATTEL, INC.'S SECOND AMENDED ANSWER AND COUNTERCLAIMS**

☒  by causing to be personally served the document(s) listed above to the person(s) listed below.

John B. Quinn, Esq.
Michael T. Zeller, Esq.
B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street,
10th Floor
Los Angeles, CA 90017

☒  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.  I am readily familiar with the firm's practice of collecting and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Patricia Glaser, Esq.
Christensen, Glaser, Fink, Jacobs,
Weil & Shapiro, LLP
10250 Constellation Blvd.,
19th Floor
Los Angeles, CA 90067

Michael H. Page, Esq.
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111

James W. Spertus, Esq.
Law Offices of James W. Spertus
12100 Wilshire Blvd., Suite 620
Los Angeles, CA 90025

LA2:817525.2

EXHIBIT _10_ PAGE _373_

1      I declare under penalty of perjury under the laws of the United States that the

2  above is true and correct.

3      Executed on September 19, 2007, at Los Angeles, California.

4

5                                   Karen A. Nakatsu

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA2:817525.2

EXHIBIT _10_ PAGE _374_

**EXHIBIT 11**

FILED

APR 13 PM 3:04

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

1  DALE M. CENDALI
   (of counsel, not admitted in California)
2  DIANA M. TORRES (S.B. #162284)
   PAULA E. AMBROSINI (S.B. #193126)
3  O'MELVENY & MYERS LLP
   400 South Hope Street
4  Los Angeles, CA 90071-2899
   Telephone: (213) 430-6000
5  Facsimile: (213) 430-6407
   email:    dtorres@omm.com
6
   PATRICIA GLASER (S.B. # 55668)
7  CHRISTENSEN, MILLER, FINK,
   JACOBS, GLASER, WEIL &
8  SHAPIRO LLP
   10250 Constellation Boulevard, 19th Floor
9  Los Angeles, CA 90067
   Telephone: (310) 553-3000
10 Facsimile: (310) 556-2920

11 Attorneys for Plaintiff
   MGA Entertainment, Inc.
12

13
14              UNITED STATES DISTRICT COURT
15            CENTRAL DISTRICT OF CALIFORNIA

                          CV 05-02727 CBM (RZx)

16 MGA ENTERTAINMENT, INC.,        Case No.

17              Plaintiff,         COMPLAINT FOR FALSE
                                   DESIGNATION OF ORIGIN,
18      v.                         AFFILIATION, ASSOCIATION OR
                                   SPONSORSHIP (15 U.S.C. § 1125
19 MATTEL, INC., a Delaware        (a)); UNFAIR COMPETITION (15
   Corporation, and DOES 1-10,     U.S.C. § 1125 (a), Cal. Bus. & Prof.
20                                 Code § 17200 et seq. and California
                Defendants.        Common Law); DILUTION (15
21                                 U.S.C. § 1125 (c), Cal. Bus. & Prof
                                   Code § 14330 and California Common
22                                 Law); AND UNJUST ENRICHMENT

23                                 DEMAND FOR JURY TRIAL
24
25
26
27
28

                                   EXHIBIT 11 PAGE 375

1    Plaintiff MGA Entertainment, Inc. for its complaint against

2    Defendants Mattel, Inc. and DOES 1-10 alleges and avers as follows:

3

4                              **PARTIES**

5        1.    Plaintiff MGA Entertainment, Inc. ("MGA") is a California

6    corporation organized and existing under the laws of the State of California, with a

7    principal place of business in Van Nuys, California.

8        2.    MGA is informed and believes, and based thereon alleges, that

9    Defendant Mattel, Inc. ("Mattel") is a Delaware corporation with a principal place

10   of business in El Segundo, California.

11       3.    MGA is ignorant of the true names and capacities of the defendants

12   sued herein under the fictitious names DOES 1 through 10 inclusive.  MGA will

13   seek leave of court to amend this complaint to allege such names and capacities

14   when they are ascertained.  MGA is informed and believes, and based thereon

15   alleges, that each of the fictitiously named DOE defendants is responsible in some

16   manner for the wrongful conduct alleged herein.  MGA further alleges that each

17   defendant acted in concert with, as agent or representative for, or at the request or

18   on behalf of another or Mattel.  Each charging allegation contained herein is,

19   therefore, also hereby alleged against each fictitiously named DOE defendant.

20

21                      **JURISDICTION AND VENUE**

22       4.    Through this action MGA asserts claims against Mattel arising under

23   the Lanham Act, 15 U.S.C. Sections 1125 (a) and (c), California Business and

24   Professions Code Sections 17200 *et seq.*, California Business and Professions Code

25   Section 14330 and California common law.  This Court has original subject matter

26   jurisdiction over MGA's federal claims pursuant to 15 U.S.C. Sections 1116 and

27   1121, 28 U.S.C. Section 1338(a), and 28 U.S.C. Section 1331, and supplemental

28

                                  1

EXHIBIT _11_ PAGE _376_

1   subject matter jurisdiction over MGA's state law claims pursuant to 28 U.S.C.

2   Section 1367(a).

3       5.    This Court has specific personal jurisdiction over Mattel, as it has

4   purposefully committed, within the State of California, the acts from which these

5   claims arise and/or has committed tortious acts outside California, knowing and

6   intending that such acts would cause injury to MGA within the state.  The Court

7   also has general personal jurisdiction over Mattel, as it conducts continuous,

8   systematic and routine business within the State of California and the County of

9   Los Angeles.

10       6.    Venue is proper in the United States District Court for the Central

11   District of California pursuant to 28 U.S.C. Sections 1391(b) and 1391(c).

12

13   **FACTUAL BACKGROUND**

14       7.    MGA seeks by this action to halt Mattel's habitual and unfair tactics of

15   competition-by-intimidation and serial copycatting of MGA's products, which

16   Mattel has used in an unbridled effort to cause confusion in the market place and

17   eliminate MGA as a competitor in the toy and fashion doll market long dominated

18   and controlled by Mattel.

19       8.    MGA is a privately-held company in the San Fernando Valley that

20   began in 1979 as a small consumer electronics business.  In 1987, the company

21   made its first foray into the toy business when it secured rights to market handheld

22   LCD games featuring licensed Nintendo® characters.  Building on that small

23   success, the company began marketing products for popular licensed properties

24   such as the "Power Rangers"® and "Hello Kitty"®.  This little-known but

25   successful company, however, was propelled into the limelight after its daring

26   release in June 2001 of an innovative line of fashion dolls called "BRATZ".

27   "BRATZ" are multi-ethnic fashion dolls that sport a fresh new urban and

28   contemporary look and fashion.  At the time of the release of "BRATZ", "Barbie"

2

EXHIBIT _11_ PAGE _377_

1   sales were in a slump, Mattel was in turmoil, and the market was ripe for something

2   new, exciting and inventive.  "BRATZ" fit the bill.  It is the first fashion doll that

3   has been able to seriously challenge "Barbie" for market share, and begin to loosen

4   Mattel's 50-year iron-fisted grip on the fashion doll market.

5          9.      Mattel has not taken kindly to the challenge.  Either unable or

6   unwilling to compete against "BRATZ" fairly, and on a level-playing field, Mattel

7   has, instead, taken a more expeditious approach, resorting to unfair and anti-

8   competitive business practices.  Wielding its substantial clout and influence in the

9   toy industry, Mattel has tried to muscle MGA out of business.  MGA is informed

10  and believes that Mattel has intimidated, coerced and threatened retailers, licensees,

11  suppliers and others in the industry – both in the U.S. and internationally – in order

12  to inhibit and stifle MGA's ability to compete with Mattel and to prevent MGA

13  from obtaining licensees, contracts and supplies for its products.  Mattel has also

14  serially imitated and copy-catted the look of MGA products, trade dress,

15  trademarks, themes, ideas, advertising and packaging, including for the "BRATZ"

16  line of dolls.  MGA brings this action to stop Mattel's tortious, unfair and anti-

17  competitive conduct and to recover the extensive damage that Mattel's illicit

18  behavior has caused, and continues to cause, MGA.  Mattel's own website states:

19  "As the global leader in the toy industry, we believe that how we achieve success is

20  just as important as the success itself."  It also proclaims that "unwavering integrity

21  defines our corporate culture on every level, guiding how we work and how we do

22  business."  Mattel's own corporate governance standards require it to "play by the

23  rules," complete fairly and be a good corporate citizen.  Mattel's actions, however,

24  speak louder than its words.

25

26

27

28

EXHIBIT _11_ PAGE _378_

## Mattel History and Performance

10.    Mattel is the world's largest toy company, but it owes its immense success chiefly to a single product: "Barbie." Since her debut in 1959, "Barbie" has been the fuel for Mattel's growth and success, turning Mattel into an international powerhouse. By the late 1990's, Mattel's annual sales of the doll approached or topped $1.8 billion and Mattel stock reached a record high of approximately $45.00 a share. At that time, the average American girl had eight "Barbie" dolls, and "Barbie" was the world's best-selling toy.

11.    Mattel's reliance on a single, 40-year old product for as much as 50% of its business turned out to be a risky business model, however. Resting on its laurels, Mattel failed to react to the shifting tastes of consumers, changing dynamics in the industry, and an increasing focus on technologically advanced and interactive toys. "Barbie's" record sales fell into a tailspin. According to one report, Adrienne Fontanella, Mattel's "Barbie" brand president, would later be quoted as saying that, "The world changed very quickly, and we missed a beat. . . Barbie wasn't talking to girls. She just wasn't hitting it."

12.    Sales began to plunge in 1997, and Mattel began posting a series of net income losses. In the first quarter of 1998, sales of the "Barbie" brand dropped 17%. This steep slide was followed by another in the second quarter, when sales fell again, down by 15%. By the end of 1998, Mattel reported an overall 14% decline in "Barbie" sales for the year and analysts were using words such as "devastating" and "a catastrophe" to describe Mattel's earnings. The company's stock fell as much as 27% in a single day. "Barbie" was having a crisis.

13.    Jill Barad, who had taken over as Mattel's chairman and chief executive in January 1997, at the height of Mattel's success, had to do something fast. Instead of focusing on and investing in new product development, however, which would obviously take time, Mattel embarked on a series of acquisitions that were seemingly aimed at quickly diversifying the company's product line and

4

EXHIBIT _11_ PAGE _379_

reducing its reliance on "Barbie" and on traditional retailers, such as Toys-R-Us and Wal-Mart. Mattel spent a reported $881 million in March 1997 to purchase Tyco Toys and acquire the "Matchbox" toy car brand. Just more than a year later, it spent $700 million for the Pleasant Co., a mail-order doll company and maker of the "American Girl" doll collection. And in December 1998, Mattel announced plans to fork out a monumental $3.5 billion to buy the Learning Company, followed quickly by Mattel's purchase, in March 1999, of a software company, Purple Moon.

14.    Despite these acquisitions, the company continued to struggle. The retail environment and buying patterns had unquestionably changed, but Mattel had not kept up. Despite Mattel's feverish acquisitions, Mattel's mainstay and primary profit-generator was still "Barbie." But "Barbie" had grown stale, and sales languished. Posting additional losses in the first quarter of 1999, Mattel announced that it would lay off 3,000 employees – 10% of its work force.

15.    Mattel's stock plummeted again in late 1999, dropping 30% on Mattel's announcement that it would fall as much as 55% short of analysts' earning estimates for the third quarter. Mattel blamed its troubles primarily on its expensive, $3.5 billion acquisition of the Learning Company, which had turned out to be a disaster fraught with licensing and distribution problems, bad debt, high product returns and high advertising costs.

16.    By early 2000, Mattel's stock had crashed to as low as $8 per share, and some analysts considered Mattel vulnerable to a takeover. Investors clamored for Ms. Barad's resignation, and got their wish.

17.    Jill Barad resigned from Mattel in February 2000.

18.    For three months, the company was without a permanent chief executive until Robert Eckert took the helm in May 2000. Mr. Eckert had spent 23 years at Kraft Foods, a subsidiary of Altria Group, Inc., and was widely credited

5

EXHIBIT _11_ PAGE _380_

1  with reviving its ailing cheese business.  Investors looked for him to do the same

2  for Mattel.

3      19.    Upon his arrival at Mattel, Mr. Eckert's promise, according to *Wall*

4  *Street Journal* reports, was to deliver a "leaner and meaner" Mattel.

5      20.    The "leaner" Mattel came quickly.  Mr. Eckert laid off hundreds,

6  closed factories in the United States, shipped production to Mexico, and sold off the

7  Learning Company at a fraction of what Mattel had paid for it.  It helped Mattel's

8  bottom-line, but did nothing to spur sales growth.  Even under Mr. Eckert's "leaner

9  meaner" leadership, domestic "Barbie" sales remained in a slump into 2001.  In an

10  industry that had become increasingly driven by consumer whims and fads, and the

11  hot, must-have toys of the moment, Mattel remained disinterested in devoting its

12  resources to searching for or developing a new blockbuster toy.  Mr. Eckert's

13  business plan was not to diversify, but to build upon and expand sales of its existing

14  brands.  Mattel was, after all, still generating billions in revenue despite the decline

15  of "Barbie."  And so, Mattel remained committed to its age-worn icon and its two

16  other core brands, Fisher-Price and Hot Wheels, with each of the three accounting

17  for approximately a third of the company's sales.

18      21.    Then came the competition – MGA's "BRATZ".

19

20  **"BRATZ" Dolls Revolutionize The Fashion Doll Market**

21      22.    "BRATZ" challenged "Barbie's" half-century domination of the

22  fashion-doll market like nothing ever before had been able to do.

23      23.    MGA unveiled a preliminary sample of the "BRATZ" doll at the Hong

24  Kong Toy Fair in January 2001, while continuing to finalize the product throughout

25  that spring.  Finished products were first shipped in May 2001.  MGA introduced

26  the line to consumers in June 2001.

27

28

6

EXHIBIT __11__ PAGE __381__

24.   Unlike "Barbie" dolls, the "BRATZ" line of dolls and branded products sported a hip, multi-ethnic urban look that appealed to contemporary teenage and pre-teen girls.

### MGA's "BRATZ"



25.   At approximately 9.5 to 10 inches tall, the "BRATZ" dolls were intentionally shorter than "Barbie" dolls and looked like no other, with disproportionately large heads, big, dramatic eyes and lips, small, thin bodies, oversized feet (to emphasize shoe fashion and to stand on their own, unlike "Barbie," which requires a stand), and up-to-date fashions.

7

EXHIBIT __11__ PAGE __382__

26.   Indeed, the classic "Barbie" look was nowhere to be seen in these dolls; they would never be confused with "Barbie".

### MGA's "BRATZ"                    Mattel's "Barbie"

   

27.   Featuring and embodying the slogan "The Girls With a Passion for Fashion!", "BRATZ" dolls revitalized, transformed and expanded the fashion doll market, in particular proving popular among "tween" age girls – those between childhood and adolescence – who had been all but abandoned as a market by Mattel.

28.   The "BRATZ" line – with its unique and distinctive look – is well recognized and has been critically acclaimed and praised by consumers, retailers and toy industry analysts alike. In 2001, the "BRATZ" line won the Toy Industry Association ("TIA") People's Choice Toy of the Year Award, the Family Fun Toy of the Year Award and Toy Wishes Hot Pick Award. In 2002, the "BRATZ" line again won the TIA People's Choice Toy of the Year Award and the Family Fun Toy of the Year Award. LIMA, the licensing industry's official arm, awarded MGA's "BRATZ" the best character license of the year as well as the overall best licensed property of the year for 2003. MGA's "BRATZ" also earned the coveted TIA "Property of the Year" and "Girl Toy of the Year" for 2003, as well as the Family Fun Toy of the Year Award. MSNBC named "BRATZ" the "Hottest Toy of the Year," and both MGA and "BRATZ" received several other accolades in

EXHIBIT _11_ PAGE _383_

2004, including the Suppliers Performance Award by Retail Category (the "SPARC" award) in the Girls' Toys category sponsored by DSN Retailing Today/Apparel Merchandising.

29.     Although but a tiny fraction of Mattel's size, with "BRATZ", MGA was able to chip away at Mattel's stranglehold on the fashion doll market, gaining shelf space and market share as "Barbie" sales remained flat or, at times, declined.

30.     The competition that MGA (once a licensee of Mattel!) and "BRATZ" posed to Mattel was unexpected and unwelcomed by Mattel. Where "Barbie" had once enjoyed a 90% share of the fashion doll market in 1997, that share had already slipped to 85% or less by the time of the release of "BRATZ". With the company still struggling under Mr. Eckert to overcome prior years of declining sales and mounting debt, "Barbie," Mattel – and Mr. Eckert – simply could not afford the untimely competition. Mr. Eckert's "leaner" Mattel was not enough to battle more potential erosion in "Barbie's" market share. Mattel had to combat "BRATZ" and MGA, and in the process revealed Mr. Eckert's "meaner" Mattel.

**Mattel's Response to "BRATZ" and Efforts to Thwart MGA's Competition**

31.     Mattel was not poised to nimbly respond to "BRATZ" with a new, creative product of its own – indeed, it had been antithetical to Mattel's corporate culture and mentality for Mattel to even conceive that a product might vie for shelf space with "Barbie", let alone be available for sale to consumers mere months after first being shown to retailers. Mattel had to take a more expeditious route.

32.     Instead of fairly competing, Mattel waged war against MGA using a wide-array of tortious, unfair and anti-competitive practices including systematic, serial copycatting and intellectual property infringement, aided by intimidation, threats and other acts of unfair competition and anti-competitive conduct, all with one goal in mind – to banish MGA from the market – or minimize its ability to capture any meaningful share before it could do any real harm to Mattel.

EXHIBIT _11_ PAGE _384_

1   **Mattel's serial copycatting and intellectual property infringement**

2       33.   Mattel's serial copycatting of MGA's product lines began with the

3   "BRATZ" dolls themselves, but quickly extended to MGA's packaging, themes,

4   accessories, advertising and even other product lines.

5       34.   The first four "BRATZ" dolls that MGA launched in 2001, named

6   Jade, Yasmin, Cloe and Sasha, met their wannabe "BRATZ PACK" members in

7   October 2002 with Mattel's launch of three "My Scene" dolls named Madison,

8   Chelsea and "Barbie." This was no ordinary "Barbie", however. Indeed, not even

9   close. Mattel designed its "My Scene" dolls to evoke the unique and distinctive

10  look of the "BRATZ" – also with disproportionately oversized heads, artfully

11  made-up almond-shaped eyes, large, overly-lined and lipsticked lips, trendy, hip

12  clothes and hair styles, and over-sized feet.

13

14  **Mattel's Traditional "Barbie"**      **Mattel's "My Scene" Doll**

15                              circa 2002            circa 2004

  

  

EXHIBIT 11 PAGE 385

35.     These confusingly similar "BRATZ" imitators may have been originally intended to buy Mattel time while it worked to release another product the following summer, called "Flavas". MGA's founder, Isaac Larian, was quoted by the media as having predicted that the move would backfire on Mattel, and it did. Released in July 2003, Mattel's "Flavas" dolls took the urban, "hip-hop" look too far, and were widely viewed as portraying a trampy, "bad-girl" image. The dolls were not well-received, and rumor has it that Mattel had to sell them at below cost prices to get rid of inventory. Most apparently wound up in discount bins, and Mattel has seemingly abandoned the line.

36.     Realizing that "My Scene" was its best bet for riding MGA's successful coattails and capitalizing on the unique and inherently distinctive look that MGA had developed in its "BRATZ" dolls – and MGA's substantial goodwill – Mattel has systematically proceeded to modify the "My Scene" dolls since their original release, particularly their eyes, to increase their similarity to "BRATZ" more and more over time.

37.     Indeed, when Mattel found out that its initial line of "My Scene" dolls had trouble competing with "BRATZ", they simply *became* "BRATZ", in every version, whether blonde, brunette or African American. A few pictures here are worth a thousand words.

### BLONDE

| Mattel's Traditional "Barbie" | Mattel's Original "My Scene" | Mattel's Recent "My Scene" |
|---|---|---|
|  |  |  |

11

EXHIBIT __11__ PAGE _386_

1

**Mattel's
Traditional "Barbie"**

**Mattel's
Original "My Scene"**

**Mattel's
Recent "My Scene"**

2

3





4

5

6

7

8

9

**BRUNETTE**

10

**Mattel's
Traditional "Theresa"**

**Mattel's
Original "My Scene"**

**Mattel's
Recent "My Scene"**

11

12





13

14

15

16

17

18





19

20

21

22

23

24

25

26

27

28

EXHIBIT _11_ PAGE _387_

## AFRICAN AMERICAN

| **Mattel's<br>Traditional "Barbie"** | **Mattel's<br>Original "My Scene"** | **Mattel's<br>Recent "My Scene"** |
| --- | --- | --- |

38.   The original "My Scene" eye, as shown here, for example, has recently turned into a virtual carbon-copy of the "BRATZ" eye.

### Original Mattel "My Scene" Eye

 

13

EXHIBIT 11 PAGE 388

39.    The "My Scene" eye pictured above, for instance, has lashes that radiate almost straight out, circumferentially, from the eyelids and, although the eye is more almond shaped than a "Barbie" eye, the eye is not so sleepy and heavy lidded as a "BRATZ" eye and is only lightly shadowed. The new "My Scene" eye, in contrast, is dramatically more similar to a "BRATZ" eye, as shown below in a side-by-side comparison. The doe-eyed innocent look of the "My Scene" eye shown above is gone; replaced with a sultrier look, characteristic of "BRATZ." The new "My Scene" eye, as shown below, boasts lashes that sweep out and away from the outer corner of the eye, just like the "BRATZ" eye. The new "My Scene" eye is also more heavy lidded and thickly lined, and the make-up is more markedly pronounced and dramatic.

**MGA's "BRATZ" Eye**                              **New Mattel "My Scene" Eye**

     

40.    Indeed, the progression of the "My Scene" eye, as it has departed from "Barbie" and edged closer and closer to "BRATZ", is readily apparent from virtually every angle, as shown here:

14

EXHIBIT _11_ PAGE _389_

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## BLONDE

**Mattel's Traditional "Barbie"** | **Mattel's Original "My Scene"** | **Mattel's Recent "My Scene"**



## BRUNETTE

**Mattel's Traditional "Theresa"** | **Mattel's Original "My Scene"** | **Mattel's Recent "My Scene"**



15

EXHIBIT _11_ PAGE _390_



AFRICAN AMERICAN

EXHIBIT 11 PAGE 391

41.    Mattel has not stopped at the eyes, however.  Mattel has also incrementally but steadily modified its "My Scene" packaging, and the manner in which the dolls are displayed, to more closely mimic the packaging, trade-dress and overall look and total image of MGA's "BRATZ".

42.    To illustrate, Mattel's "My Scene" dolls were initially marketed like this:

**Mattel's Early "My Scene" Packaging**



43.    Little by little, however, the packaging has changed, creeping ever closer and closer to the open and transparent style of the "BRATZ" packaging. First, the panels seen running down each side of the front of the "My Scene" box shown above, framing the doll and giving the packaging a closed-in look, were changed as shown here:

**Intermediate Mattel "My Scene" Packaging**



17

EXHIBIT _11_ PAGE _392_

1     44.    Mattel replaced this intermediate packaging style with another that

2  looked even more similar to the "BRATZ" packaging, as shown here in a side-by-

3  side comparison:

4

5           **MGA's "BRATZ"**           **Mattel's "My Scene"**

6    **"Wintertime Wonderland" Packaging**    **"Chillin' Out" Packaging**

7

8                      

9

10

11

12

13     45.    Then later, Mattel changed its packaging and product display yet again

14  to look even more closely and confusingly similar to MGA's packaging and "*tout*

15  *ensemble,*" as shown here

16

17          **MGA's "BRATZ"**        **Mattel's Recent "My Scene"**

18    **"SPORTZ" Packaging**     **"MIAMI GETAWAY" Packaging**

19                   

20

21

22

23

24

25

26

27

28

EXHIBIT 11 PAGE 393

46.   In this incarnation, Mattel notably abandoned the signature figure-eight style design that had appeared on its prior "My Scene" packaging, making this recent version clearer and more transparent on the front and sides than ever before, and much more like "BRATZ", accordingly.  Mattel also discarded its traditional, rectangular shaped box and, like "BRATZ", adopted an unusual, non-rectangular shaped box.  Mattel even adopted the "flying banner" ribbon-style slogan running across the middle of the box, similar to that used on the "BRATZ" packaging.

47.   As if these pointed and deliberate efforts to confuse and mislead consumers were not enough, Mattel exacerbated the confusion, and furthered the impression that the "My Scene" line and the "BRATZ" line are related, by taking up MGA's practice of regularly releasing new dolls in connection with a theme – but not just *any* theme, often *MGA's theme.*

48.   For example, when MGA released its "Wintertime Wonderland" theme in Fall 2003, Mattel released its "Chillin Out!" theme.  Each doll in MGA's line came with winter-sports accessories, such as a snowboard or skis and ski boots.  Each doll in Mattel's line featured winter sports accessories, also including snowboards or ski and ski boots.  Even MGA's color schemes and some of the clothing styles seemed to have made their way into the Mattel products.

49.   When MGA released its "Formal Funk" theme, Mattel released its "Night on the Town" theme.  "BRATZ Formal Funk" was an elaborately themed line with its dolls in hip formalwear; so was Mattel's "Night on the Town."

50.   When MGA released its distinctive "Sun-Kissed Summer" theme, Mattel released its confusingly similar "Jammin' in Jamaica" theme.  Each line featured a bright blue-and-orange color scheme, beach accessories, such as surfboards, and beachwear clothing.  Mattel's "Jammin' in Jamaica" "Guava Gulch Tiki Lounge" playset also contained elements remarkably similar to MGA's "Sun-Kissed Summer" playset.

19

EXHIBIT _11_ PAGE _394_

51.    Mattel also began running television commercials for its "My Scene" dolls bearing a remarkable similarity to "BRATZ" commercials, combining live action with animated sequences set to similar sounding pop music and lyrics.

52.    Mattel even stooped so low as to mimic "BRATZ" accessories and related products in order to further create consumer confusion in the marketplace.

53.    For instance, when MGA came up with its distinctive "BRATZ" "Runway Disco", Mattel came out with a "My Scene" Sound Lounge with packaging that imitated MGA's trapezoidal box.

54.    Mattel's conduct cannot be explained by sheer coincidence, nor is it merely fair competition.  It is a calculated and intentional effort unquestionably designed to trade off of MGA's hard work and goodwill, create confusion in the marketplace, steal MGA's thunder and momentum, and dilute and blur away the novelty and distinctiveness of MGA's products.  Out of the seemingly endless possibilities that Mattel could have chosen for a new line of dolls, packaging, themes, color schemes, commercials, accessories and playsets, Mattel deliberately chose *not* to come out with something unique, new or different and has, instead, focused its efforts and resources on flooding the market with something so close to "BRATZ" that the public will, can, and does, simply mistake it for "BRATZ".

55.    As yet another example of this, when MGA came out with a "BRATZ" "Funky Fashion Makeover Head," Mattel came out with a confusingly similar – indeed, practically identical – "My Scene" styling head.

EXHIBIT _11_ PAGE _395_

| MGA's "BRATZ" "Funky Fashion Makeover Head" | Mattel's "My Scene" "Stylin' Head" |
|---|---|

  

  

56.   Indeed, Mattel's "My Scene" styling head is so close to the "BRATZ" styling head that even the press have mistakenly pictured and identified it as MGA's "BRATZ". The picture of Mattel's "My Scene" styling head shown below, for instance, appeared in the press with a caption indicating that the child was trying out different hairstyles "on a *Bratz* hair and makeup doll head."



Hairstyle practice

EXHIBIT _11_  PAGE _396_

57.    Creating further confusion, Mattel's television commercial for its "My Scene" styling head was like watching a re-run of MGA's commercial for its "Funky Fashion Makeover Head".

58.    At one point in time, Mattel also used a portion of the "BRATZ" dolls' now-famous trademarked tag line "The Girls With a Passion for Fashion" on Mattel's' website for its "Diva Starz" dolls, asking its website users:  "Do you have a passion for fashion?"

59.    Mattel has even recently come out with a confusingly similar line of "My Scene" plush pets, which adopt the distinctive look of MGA's "BRATZ" line. The "My Scene" pets feature large, humanlike eyes and wear clothing making them remarkably and confusingly similar to "BRATZ" products, including "BRATZ PETZ", as seen in this example where the pets each wear a jacket, a cap and carry a purse:

**MGA's "BRATZ Dogz"**                                    **Mattel's "My Scene" dog**

                                    

60.    And here too, Mattel chose to package its pets the same way that MGA packaged its "BRATZ PETZ", sitting in an open box, with no top and with partial side panels that slope from a narrow front panel to a higher back panel.

61.    Indeed, the similarity of the "My Scene" pets to "BRATZ PETZ" has confused even sophisticated retailers who have mistakenly merchandised "My Scene" dogs in the middle of the "BRATZ" section of a retail display, next to and as if they were part of MGA's "BRATZ Petz" line.  It comes as no surprise that

22

EXHIBIT _11_ PAGE _397_

1   customers too have been confused.

2       62.    Indeed, Mattel's television commercials and "My Scene" products
3   have become so confusingly similar to MGA's that even advertising executives
4   have expressed concern.  One went so far as to say that although imitation is the
5   best form of flattery, what the individual had seen at Mattel's showroom, and how
6   its "My Scene" dolls now look so confusingly similar to "BRATZ", was
7   "shocking."  This person further opined that it was clear that Mattel is intending to
8   confuse customers and capture "BRATZ" market share, and even asked MGA if it
9   was considering legal action.

10      63.    The press also has taken notice of Mattel's attempts to confuse
11  consumers.  On or about February 18, 2005, a visitor to MGA's showroom from a
12  prominent news publication stated, "Oh my, I just came from Mattel's showroom
13  and their new 'My Scene' packaging is just like 'BRATZ' minus the handle."
14  Another member of the press visiting MGA's showroom offered the unsolicited
15  comment, "have you seen the new 'My Scene' dolls eyes are exactly like
16  'BRATZ'?"  Yet another opined that Mattel's "My Scene" line was exactly like
17  "BRATZ", indeed, so much so that the reporter confusingly thought that Mattel had
18  bought "BRATZ", and still another has commented on Mattel's imitation of MGA.
19  On or about February 16, 2005, during an interview of a Mattel representative on
20  local network news in New York, "My Scene Barbie" was displayed by a Mattel
21  representative.  During conversation about the dolls, the interviewer exclaimed that
22  they looked like "BRATZ".  The Mattel representative just laughed – but this is no
23  laughing matter.  This colloquy was available for replay and viewing, and was even
24  transcribed, on the internet.

25      64.    Customers too have been similarly confused.  Some actually contacted
26  MGA seeking to purchase "My Scene" dolls.

27      65.    Mattel's conduct is planned, deliberate and intentional.  Mattel has
28  systematically, copied, imitated and liberally borrowed many of the distinctive,

23

EXHIBIT _11_ PAGE _39 8_

essential elements that identify and make "BRATZ" dolls "BRATZ" dolls, diluting the brand, creating customer confusion, and unfairly stifling competition.

66.    Ironically, Mattel sued one of its other competitors in Europe for doing much the same thing: "systematically copying and borrowing elements" from "My Scene", on grounds that "this conduct constitutes unfair competition and passing off." Indeed it does.

67.    What is more, Mattel's conduct has reached beyond "BRATZ" and "BRATZ"-related products to include other new MGA toy lines.

68.    For example, MGA's "4-Ever Best Friends" line was the obvious, and well-recognized model for Mattel's "Wee 3 Friends" line. Mattel even adopted changes to the color scheme of its similarly-shaped packaging to create confusion with MGA's distinctive packaging.

| **MGA's "4-Ever Best Friends"** | **Mattel's "Wee 3 Friends"** |
|---|---|
|  |  |

EXHIBIT _11_ PAGE _399_

69.   In the second half of 2002, MGA's "Mommy's Little Patient," originally designed as the first in a series of "Mommy's Little . . ." dolls, was followed by Mattel's "Little Mommy" doll.

| MGA's <br> "Mommy's Little Patient" | Mattel's <br> "Little Mommy Potty Training Baby Doll" |

 

70.   Sparing nothing, Mattel has also extended its monkey-see monkey-do behavior into its boys' line.  When MGA came out with its "Alien Racers" line of toy racing vehicles, for instance, Mattel rushed to revamp and rename one of its "Hot Wheels" lines.  Although well-known and clearly branded for decades as "Hot Wheels", Mattel's answer to MGA's "Alien Racers" was to re-brand and market its Hot Wheels Highway 35 line under an "AcceleRacerS" logo.  MGA's line consists of "extreme" radio controlled racing vehicles marketed in connection with a strong, almost battle-like, science fiction theme.  MGA's logo accentuates the "A", "R", and "S" in compressed block lettering.  Mattel's line also consists of extreme racing vehicles marketed in connection with a strong, almost battle-like, theme.  Mattel's logo too accentuates the "A", "R", and "S" in compressed block lettering.

25

EXHIBIT _11_ PAGE _400_

71.    Here, too, Mattel's mimicry has spilled over into Mattel's advertising and thematic presentation and marketing of this toy line.  In particular, Mattel has adopted MGA's "other-worldly" theme in its commercials.  For instance, in Mattel's commercials, the product, whose logo appears as "AcceleRacerS", now compete against alien-like Cyborgs engaged in a "race to save the world," mimicking MGA's alien theme and commercials in which MGA's "Alien Racers" are engaged in a "race to save the universe."

72.    None of this is coincidence.  Mattel has deliberately adopted a pattern and practice of coming out with variations of MGA's products to create confusion in the marketplace, interfere with MGA's business and divert profits away from MGA.  Mattel says, on its website, that it is in the business of creating "[t]he world's premier toy brands [of] today and tomorrow."  It seemingly does so, however, by borrowing liberally from its competitors, even when it refreshes its own existing brands and products.

73.    MGA has suffered extensive injury from Mattel's conduct.  Mattel's habitual, serial simulation of MGA's products, product lines and trade dress has allowed Mattel to take a free ride on the extensive amount of time, expense and creative development MGA expends on developing new products, product packaging and presentation, giving Mattel an unfair advantage, and making it virtually impossible for MGA to compete with Mattel on a level playing field.

**Mattel's additional unfair, manipulative, anti-competitive conduct**

74.    This already substantial injury has been exacerbated by the strong-arm tactics, and other illegitimate, unfair and anti-competitive means that Mattel has used to manipulate the market and ensure that its control and domination of the industry can continue unabated.

EXHIBIT _11_ PAGE _401_

75.   For example, wielding the litigation privilege as a potential shield for intimidating conduct, Mattel has sent threatening letters to several of its former employees who now work for MGA warning them not to disclose ***even publicly available information*** about Mattel, including the names and positions of Mattel employees.  Mattel even went so far as to sue one of its former senior executives, after he had the temerity to resign and join MGA in October 2004.  Not only was Mattel's lawsuit dismissed for failure to state a viable claim, but Mattel thereafter seemingly could not muster up a shred of evidence sufficient to support an amended complaint.  As a result, Mattel's case against its former executive was dismissed with prejudice.

76.   Mattel has also warned a number of companies, including the biggest publishing entity in the United Kingdom, not to license MGA products, or risk retribution.  The threats are not idle.  In May 2004, Mattel terminated one of its licensees, apparently in retribution for licensing "BRATZ".  While some companies have been courageous enough to take the risk, others have not, and MGA has lost valuable licensing opportunities as a result.

77.   Mattel has used similar intimidation to pressure distributors and retailers, particularly in foreign countries, not to distribute "BRATZ", to reduce shelf and display space for "BRATZ" and to place "BRATZ" in unfavorable locations at retail outlets.

78.   When MGA faced a shortage of doll hair in October 2002, MGA is informed and believes that the reason for that shortage was that Mattel had locked MGA out by buying up the supply from the two main hair supply companies.

79.   Mattel has also manipulated the retail market.  For instance, Mattel merchandisers have been caught tampering with MGA's retail displays, replacing favorably located MGA merchandise with Mattel merchandise instead.  MGA is also informed and believes that Mattel has falsely told a major United States retailer that MGA was giving another major United States retailer below-market pricing

EXHIBIT __11__ PAGE __402__

and falsely told a United Kingdom retailer that MGA was discontinuing one of its lines, in order to make such line less attractive to buyers and thereby attempt to increase sales of the competitive Mattel product and improve its own sales, at MGA's expense.

80.    Even supposedly unbiased and impartial industry organizations have fallen prey to Mattel's abusive wield of power, to MGA's detriment.

81.    NPD Funworld ("NPD"), for one, is the leading supplier of sales statistics in the toy industry.  Accurate NPD statistics are essential for efficient product-line management.  Without these statistics, it is difficult, if not impossible, for toy companies to assess and measure the relative success of their products in key categories.  It is, however, a subscription service, and NPD restricts the manner in which its subscribers may use the data it provides.

82.    Mattel has regularly ignored the restrictions – using NPD data about Mattel's comparative standing relative to other companies in press releases and in communications with retailers and financial investors who are not NPD subscribers.

83.    Mattel generates substantially more annual subscription revenue for NPD than does MGA, and carries more clout.

84.    After MGA had subscribed to the service for more than 12 years, NPD terminated MGA's subscription in 2003 theoretically on the grounds that MGA misused NPD data in a press release.

85.    MGA is informed and believes that the termination was the result of pressure from Mattel, notwithstanding Mattel's own frequent violations of NPD's restrictions.

86.    In addition to this, the market share numbers that NPD generates are heavily dependent on the category in which NPD places a particular product.  MGA is informed and believes that Mattel also pressured NPD into changing certain product classifications for its "BRATZ" products in order to manipulate the data

28

EXHIBIT _11_ PAGE _403_

1   and preserve Mattel's market share rankings in the critical fashion doll category –

2   and thereby lower MGA's.

3        87.    The Children's Advertising Review Unit ("CARU") is another

4   organization that, upon information and belief, appears to have been subject to

5   improper influence by Mattel. CARU is the toy industry's supposedly independent

6   self-regulatory body in charge of maintaining standards in advertising. CARU's

7   approval is considered critical within the toy industry to avoiding regulatory action

8   by the Federal Trade Commission.

9        88.    CARU is heavily subsidized by Mattel.

10        89.    Upon information and belief, Mattel has used its influence as a major

11   contributor to CARU's budget to induce CARU to place onerous restrictions on

12   MGA advertisements, and require MGA to amend aspects of commercials that have

13   gone unchallenged in other parties' commercials.

14        90.    As a result of CARU's restrictions, MGA has been forced to incur

15   unnecessary costs for reshooting and producing or re-editing its commercials.

16        91.    On several occasions, CARU has also either strongly suggested, if not

17   also required, that MGA respond to inquiries about its website policies and make

18   substantial changes to the "BRATZ" website notably and significantly in excess of

19   restrictions imposed on Mattel and others.

20        92.    Even TIA, the toy industry's trade association, is apparently not

21   untainted by Mattel's influence and power. Each year, TIA presents the Toy-of-

22   the-Year Awards, the most prestigious of which had been the award for Toy of the

23   Year. Winning the Toy of the Year Award is a significant achievement that not

24   only very likely increases the sales of the winning toy, but also denotes the winning

25   company as a leader in toy innovation and generates substantial goodwill with

26   retailers, distributors, licensees, and customers.

27        93.    For the years 2000 (the first year of the award), 2001 and 2002, the

28   Toy of the Year award was chosen by consumer vote. The awards ceremony was

EXHIBIT 11 PAGE 404

1  then held the following year, at a dinner in New York. (For example, the awards
2  dinner for the year 2000 award was held in February 2001). Leap Frog won the
3  2000 People's Choice Toy of the Year Award and MGA won the 2001 and 2002
4  People's Choice Toy of the Year Awards. With the 2003 Toy of the Year Award,
5  however, the rules suddenly changed. Now, the award is selected by members of
6  the industry.

7       94.    Upon information and belief, this change was orchestrated by a Fisher
8  Price (a Mattel subsidiary) executive who, until recently, served as the Chairman of
9  TIA.

10      95.    Perhaps not surprisingly given this change in the winner selection
11  procedures, "Hokey Pokey Elmo" ("Elmo"), a Fisher Price toy, won for the year
12  2003 (awarded in 2004), beating out the other leading nominee, "BRATZ Formal
13  Funk Super Stylin' Runway Disco."

14      96.    TIA has refused to provide MGA with the vote count procedure and
15  totals for this award, despite repeated requests.

16      97.    MGA is also informed and believes that Mattel was instrumental in
17  attempting to keep MGA from participating as a sponsor in this year's "Kids'
18  Choice Awards."

19      98.    Mattel has clearly engaged in tortious, illegal and unethical behavior in
20  its unfettered efforts to disrupt, if not destroy, MGA. Indeed, this is apparently
21  Mattel's current *modus operandi* when it comes to "competing" in the industry.
22  The once immensely successful "LeapFrog" interactive learning product, for
23  example, has apparently been one of Mattel's other recent victims.

24      99.    Mattel may not shield its illegal, unfair and unethical business practices
25  from the public eye. It is time for the truth to be told, and the world to know of
26  Mattel's unfair, unethical and illegal business practices and unfair competition.
27  "Barbie" does not "play nice" with others (particularly her competitors), and needs
28  to be taught how "to share" (at least in the fashion doll marketplace). She cannot be

EXHIBIT  *11*  PAGE  *40J*

1   allowed to continue to be the playground bully and trample on the rights of others,

2   including MGA.

3        100.   As a result of Mattel's manipulative, illegal, unfair, unethical and anti-

4   competitive conduct, MGA has suffered and, unless abated, will continue to suffer

5   lost sales, lost licensing fees, lost contracts, lost relationships, lost business

6   opportunities and other damages and harm for which there is no adequate remedy at

7   law. Its ability to enter new markets and product lines has been hampered and

8   delayed. Its production costs have increased, its reputation and relationships with

9   important players in the industry have been negatively impacted, the value of its

10  business has been diminished, and its ability to attract, hire and retain employees

11  has been affected.

12

13                    **FIRST CLAIM FOR RELIEF**

14  **(False Designation of Origin or Affiliation in Violation of 15 U.S.C. § 1125 (a))**

15       101.   MGA repeats and realleges the allegations contained in paragraphs 1

16  through 100 of this Complaint and incorporates them by reference as though fully

17  and completely set forth herein.

18       102.   MGA's "BRATZ" line has a unique and distinctive style and

19  distinctive characteristics, such as the disproportionately large head, large dramatic

20  eyes with a distinctive presentation (including the eye shape, make-up and lashes),

21  pouty, plump lips with a distinctive presentation (including the lip shape and make-

22  up), small, thin bodies, oversized feet, and up-to-date fashions. MGA's "BRATZ"

23  line is known for and recognized by the total image that is presented by its product

24  and the style and arrangement of the packaging and display. This "*tout ensemble*"

25  is representatively described and depicted herein. The characteristics of MGA's

26  "BRATZ" line, alone or in combination, have come to identify the "BRATZ" line

27  and its source, MGA, and thus serve as protectable trade dress. MGA's trade dress

28  in its "BRATZ" line is purely aesthetic and non-functional or, if any utility exists, it

EXHIBIT _4_ PAGE _406_

is not essential to the purpose, quality or source identifying attributes of the aesthetics. MGA's trade dress in its "BRATZ" line is inherently distinctive or has acquired distinction within the meaning of the Lanham Act.

103. Similarly, MGA's "BRATZ PETZ," part of the "BRATZ" line, also has its own unique and distinctive characteristics, such as the humanlike eye and unusual appearance of the animals dressed in clothing. MGA's "BRATZ PETZ" line has become known for and recognized by the total image that is presented by the product and the style and arrangement of its packaging. This "*tout ensemble*" is representatively described and depicted herein. The characteristics of MGA's "BRATZ PETZ", alone or in combination, have come to identify the "BRATZ PETZ" line and its source, MGA, and thus serve as protectable trade dress. MGA's trade dress in its "BRATZ PETZ" line is purely aesthetic and non-functional or, if any utility exists, it is not essential to the purpose, quality or source identifying attributes of the aesthetics. MGA's trade dress in its "BRATZ PETZ" line is inherently distinctive or has acquired distinction within the meaning of the Lanham Act.

104. Mattel's production, sale and marketing of "My Scene" dolls, including styling heads and doll heads, and "My Scene" pets that are confusingly similar to MGA's "BRATZ" line (including its "BRATZ PETZ"), without MGA's permission or consent, constitutes designation and use of a term, symbol, device or combination thereof that is false or misleading within the meaning of 15 U.S.C. Section 1125 and is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association, or as to the origin, sponsorship, or approval of Mattel's goods or commercial activities, within the meaning of 15 U.S.C. Section 1125. MGA has been damaged by Mattel's acts.

105. Mattel's conduct has been intentional and willful, and is calculated specifically to trade off the goodwill that MGA has developed in its successful "BRATZ" line. By its aforesaid acts, particularly its imitation of the distinctive

EXHIBIT _11_ PAGE _407_

1    features of MGA's "BRATZ" line in connection with goods sold and distributed in

2    interstate commerce, Mattel has infringed and is likely to continue to infringe on

3    MGA's substantial rights in and to the "BRATZ" line trade dress.  In so doing,

4    Mattel has falsely represented and designated to the public generally and consumers

5    of fashion doll products specifically the source and origin of Mattel's "My Scene"

6    fashion doll products in violation of 15 U.S.C. § 1125(a).

7         106.   MGA has been damaged by, and Mattel has profited from, Mattel's

8    wrongful conduct in an amount to be proven at trial.

9         107.   For each act of infringement, MGA is entitled to recover its actual

10   damages as well as Mattel's profits from such infringement.

11        108.   Monetary relief alone, however, is not adequate to address fully the

12   irreparable injury that Mattel's illegal actions have caused and will continue to

13   cause MGA, if not enjoined.  MGA is therefore entitled to preliminary and

14   permanent injunctive relief to stop Mattel's ongoing infringement of MGA's trade

15   dress.

16                       **SECOND CLAIM FOR RELIEF**

17   **(Unfair Competition in Violation of 15 U.S.C. § 1125 (a) and Unfair**

18   **Competition and Unfair Business Practices in Violation of Cal. Bus. & Prof.**

19   **Code § 17200 *et seq.* and California Common Law)**

20        109.   MGA repeats and realleges the allegations contained in paragraphs 1

21   through 108 of this Complaint and incorporates them by reference as though fully

22   and completely set forth herein.

23        110.   Mattel has deliberately and, indeed, repeatedly adopted, imitated and

24   mimicked the make-up, appearance, features, trade dress, and image of MGA's

25   products, packaging and advertising, including its repackaging and refreshing of

26   older Mattel toys.  Mattel's actions were and are done with the intent to deceive

27   consumers, cause confusion and mistake, and interfere with the ability of

28   consumers to identify the source of goods by appearance and packaging.  By this

EXHIBIT _11_ PAGE _408_

1   conduct, Mattel pirates and exploits, by subliminal or conscious association with

2   MGA, the goodwill and reputation of MGA and derives benefit therefrom.

3       111.   Mattel has particularly and deliberately poached upon the commercial

4   magnetism of MGA's "BRATZ" and the success of "BRATZ". Mattel's conduct

5   has been intentional and willful, and is calculated specifically to trade off the

6   goodwill that MGA has developed in its successful "BRATZ" line.

7       112.   By its acts, including its intentional imitation of the distinctive features

8   of MGA's "BRATZ" dolls, which has progressively become closer and closer, as

9   well as its imitation of "BRATZ" themes, packaging and the overall look, feel and

10   total image of the "BRATZ" line, imitation of other MGA products, packaging and

11   advertising, and other conduct alleged herein, Mattel has engaged in unfair

12   competition under both federal and California state law.

13       113.   Mattel has also willfully and maliciously used its power, influence and

14   intimidation to threaten certain retailers, suppliers, licensees, distributors and

15   manufacturers so as to limit, if not prevent, MGA from doing business with these

16   retailers, suppliers, licensees, distributors and manufacturers, using its power and

17   influence to intimidate and manipulate industry bodies. Mattel has further used its

18   power and influence to attempt to, if not actually, intimidate and threaten MGA's

19   current and potential employees so as to cause MGA competitive injury.

20       114.   Alone, in combination, or in totality, Mattel's actions discussed and

21   alleged herein constitute unfair competition and unfair business practices within the

22   meaning of federal law, California statutory law and/or California common law.

23       115.   As a result of its conduct, Mattel has derived substantial monetary and

24   non-monetary benefit and business advantage. Mattel has also wrongfully diverted

25   profits away from MGA and to Mattel and, on information and belief, deprived

26   MGA of the patronage of a large number of actual and potential customers.

27       116.   MGA has been damaged by, and Mattel has profited from, Mattel's

28   wrongful conduct in an amount to be proven at trial.

34

EXHIBIT 11 PAGE 409

117.   Monetary relief alone, however, is not adequate to address fully the irreparable injury that Mattel's actions have caused and will continue to cause MGA, if not enjoined.  MGA is therefore entitled to preliminary and permanent injunctive relief to stop Mattel, and all persons acting in concert with Mattel, from engaging in acts of unfair competition and unfair business practices.

118.   MGA is further entitled to relief whereby Mattel is ordered to pay restitution for damages resulting from Mattel's unfair competition and unfair business practices.

### THIRD CLAIM FOR RELIEF

### (Dilution in Violation of 15 U.S.C. § 1125 (c); Cal. Bus. & Prof. Code § 14330 and California Common Law)

119.   MGA repeats and realleges the allegations contained in paragraphs 1 through 118 of this Complaint and incorporates them by reference as though fully and completely set forth herein.

120.   The look and trade dress of the MGA products referenced herein are distinctive and famous, and have been since before Mattel launched its similar versions.  By its aforesaid acts, Mattel caused and continues to cause blurring and dilution of the distinctive look of MGA's products and trade dress, which previously served as a unique source identifier for MGA, within the meaning of the Lanham Act, California Business and Professions Code § 14330 and/or California common law.

121.   Mattel's conduct has been intentional and willful, calculated specifically to trade on MGA's goodwill and reputation and to cause dilution of MGA's famous marks, particularly those connected with MGA's famous and successful "BRATZ" doll head, "BRATZ" doll product line, "BRATZ Funky Fashion Makeover Head" and "BRATZ PETZ" line.

122.   MGA has been damaged by, and Mattel has profited from, Mattel's wrongful conduct in an amount to be proven at trial.

35

EXHIBIT _11_ PAGE _410_

123. Monetary relief alone, however, is not adequate to address fully the irreparable injury that Mattel's actions have caused and will continue to cause MGA, if not enjoined. MGA is therefore entitled to preliminary and permanent injunctive relief to stop Mattel's ongoing dilution.

## FOURTH CLAIM FOR RELIEF

### (Unjust Enrichment)

124. MGA repeats and realleges the allegations contained in paragraphs 1 through 123 of this Complaint and incorporates them by reference as though fully and completely set forth herein.

125. As a result of the conduct alleged herein, Mattel has been unjustly enriched to MGA's detriment. MGA seeks a worldwide accounting and disgorgement of all ill-gotten gains and profits resulting from Mattel's inequitable activities.

## PRAYER FOR RELIEF

WHEREFORE, MGA prays for relief, as follows:

1. That Mattel, its agents, servants and employees and all persons acting in concert be restrained preliminarily and permanently from directly or indirectly:

   a. using confusingly similar trade dress;

   b. improperly influencing, or attempting to improperly influence, standard-setting and industry organizations;

   c. engaging in unfair competition and unfair business practices; and

   d. diluting MGA's trade dress;

2. For general and actual damages, according to proof at trial but believed to reach or exceed tens of millions of dollars;

3. For the disgorgement of all profits derived by Mattel for its acts of:

   a. false designation of origin or affiliation;

36

EXHIBIT _11_ PAGE _411_

1            b.      unfair competition and unfair business practices; and

2            c.      dilution;

3     4.     For costs of suit and reasonable attorneys' fees;

4     5.     For punitive and/or exemplary damages as a result of Mattel's willful

5 and malicious conduct to the extent allowable by law; and

6     6.     For such other and further relief as the Court deems just and proper.

7

8 Dated:       April 13, 2005           PATRICIA GLASER

9                                      CHRISTENSEN, MILLER, FINK,

10                                      JACOBS, GLASER, WEIL & SHAPIRO LLP

11                                      DALE M. CENDALI

12                                      DIANA M. TORRES
                                     PAULA E. AMBROSINI
                                     O'MELVENY & MYERS LLP

13

14

15                              By:

16                                  Diana M. Torres
                                 Attorneys for Plaintiff
                                 MGA ENTERTAINMENT, INC.

17

18

19

20

21

22

23

24

25

26

27

28

37

EXHIBIT _11_ PAGE _412_

## DEMAND FOR JURY TRIAL

MGA hereby demands a jury trial on all triable issues.

Dated:        April 13, 2005

PATRICIA GLASER
CHRISTENSEN, MILLER, FINK,
JACOBS, GLASER, WEIL &
SHAPIRO LLP

DALE M. CENDALI
DIANA M. TORRES
PAULA E. AMBROSINI
O'MELVENY & MYERS LLP

By: _____
    Diana M. Torres
Attorneys for Plaintiff
MGA ENTERTAINMENT, INC.

38

EXHIBIT __11__ PAGE __413__

**EXHIBIT 12**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**