# EXHIBIT 1

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

December 19, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>

Timothy A. Miller, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Embarcadero Center
Suite 3800
San Francisco, CA 94111

Re:     <u>Mattel, Inc. v. Carter Bryant</u>

Dear Tim:

I write pursuant to section 5 of the Discovery Master Stipulation to request that MGA meet and confer regarding its failure to produce the calendars and planners of its employees for the year 2000 that refer or relate to Bratz and/or communications with Carter Bryant, as well as MGA's failure to produce all compelled calendars and planners in full and un-redacted form.

On March 14, 2005, Mattel requested that MGA produce all documents relating to Bratz and/or MGA's communications with Mr. Bryant prior to January 1, 2001, including employees' calendars and planners. <u>See</u>, <u>e.g.</u>, Mattel's First Set of Requests for Production, Nos. 32 & 69. After MGA failed to do so, Mattel moved to compel and the Court ordered MGA to produce these documents in un-redacted form on May 15, 2007. <u>See</u> Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, at 8:7-21 & 14:8-12. Nonetheless, seven months after being ordered to do so, MGA appears to have still not produced the compelled documents.

MGA witnesses have testified that MGA provided Franklin Planners to its employees in the year 2000. <u>See</u>, <u>e.g.</u>, Deposition of David Malacrida, dated August 30, 2007, at 109:22-24; Deposition of Kerri Brode, dated August 15, 2007, at 159:4-6. Per MGA's discovery responses

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2329422.1


EXHIBIT 1 PAGE 12

and witnesses' testimony, Cecilia Kwok, Edmond Lee, Paula Garcia, Stephen Lee, Franki Tsang, Samuel Wong, William Ragsdale, Wendy Ragsdale, Mercedeh Ward, Kerri Brode, Rebecca Harris, Victoria O'Conner, Martin Hitch, Aileen Storer, Andreas Koch, Dennis Medici, Jim Olmstead, Clementina Jarrin, Jennifer Maurus, Jessica Caiafa, Julie Chomo, Paul Warner, Charles O'Connor, Jackie Bielke, Jeremy Davis, Jonathan Buford, Leon Djigurian, Margo Chazen, Ninette Pembleton and Vivian Matt were each MGA or MGA HK employees who worked on Bratz and/or communicated with Carter Bryant in the year 2000. However, to Mattel's knowledge, MGA appears to have still not produced the compelled Franklin Planners, or any other calendars or planners, for these individuals.

Further, many of Isaac Larian's calendars for the critical 2000-2001 time period have been produced in incomplete form, with data excluded. See, e.g., MGA 0861252, 0878780, 0878779, 0878778, 878777. Many of Mr. Larian's calendars for the 2004-2005 time period were also produced in incomplete form. See, e.g. MGA 0861359, 0861361, 0861350-52, 0861283, 0861243, 0861203-04 and 0861992-94. We also do not possess Mr. Larian's calendars for key periods of time. For example, MGA has only produced his calendars from the months of September, November and December in the year 2000. MGA should produce all these documents in complete and un-redacted form.

The few calendars and planners MGA has produced are rife with improper redactions in violation of the May 15 Order. For example, documents bates stamped MGA 003704-05, 003707-13, 0008931, 00089950, 008903R, 008908R, 008923R, 008931R and 008950R were produced in redacted form. Documents bates stamped MGA 0861334, 861206 and 861192-93 also appear to be redacted, even though they are not marked with a "redacted" stamp. Pursuant to MGA's commitments and the Court's Orders, please produce all these documents in un-redacted form.

Finally, MGA promised to allow Mattel to inspect Dave Malacrida's original day planner, but has still not given Mattel any dates for this inspection. See Michael T. Zeller's October 29, 2007 letter to Thomas Nolan. Please let me know when Mr. Malacrida's planner will be made available for inspection. Also, MGA long ago committed to provide deposition dates for the continued Malacrida deposition. If Mattel does not receive the promised dates promptly, we will have no choice but to move to compel, and may seek sanctions.

If MGA does not produce all the compelled calendars and planners in complete and un-redacted form, Mattel anticipates bringing a motion to enforce, and may seek sanctions. Please let me know when you are available to meet and confer regarding these issues.

Very truly yours,

B. Dylan Proctor
07209/2329422.1

EXHIBIT 1 PAGE 7

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**   December 19, 2007

**NUMBER OF PAGES, INCLUDING COVER: 3**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Timothy A. Miller, Esq. **Skadden, Arps, Slate, Meagher & Flom LLP** | (415) 984-6400 | (415) 984-2698 |

**FROM:**   B. Dylan Proctor, Esq.

**RE:**   *Mattel, Inc. v. Bryant*



07209/2330048.1

CLIENT # 7209    ROUTE/ RETURN TO:   **Tiffany Garcia - 3**    ☒ CONFIRM FAX
☒ INCLUDE CONF. REPORT

OPERATOR:   _Priscilla_    CONFIRMED?   ☐ No  ☐ YES: _____

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

EXHIBIT __1__ PAGE __8__

12/19/2007 12:55 FAX  121344331        QEUOH-24188                              ☑ 001

```
*********************
***   TX REPORT   ***
*********************
```

TRANSMISSION OK

TX/RX NO                 2816
RECIPIENT ADDRESS        76706#7209#14159842698
DESTINATION ID
ST. TIME                 12/19 12:54
TIME USE                 01'04
PAGES SENT                 3
RESULT                   OK

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA  94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

DATE:   December 19, 2007        NUMBER OF PAGES, INCLUDING COVER: 3

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Timothy A. Miller, Esq.<br>**Skadden, Arps, Slate, Meagher & Flom LLP** | (415) 984-6400 | (415) 984-2698 |

FROM:   B. Dylan Proctor, Esq.

RE:   *Mattel, Inc. v. Bryant*

EXHIBIT __1__ PAGE __9__

# EXHIBIT 2

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3112**

WRITER'S INTERNET ADDRESS
**dylanproctor@quinnemanuel.com**

January 4, 2008

**VIA FACSIMILE AND U.S. MAIL**

Andrew C. Temkin, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue Suite 1100
Palo Alto, California 94301

Re:    Mattel, Inc. v. Bryant

Dear Andrew:

I write further to our meet and confer of earlier today regarding Mattel's request that MGA produce the overdue planners and calendars of its employees who worked on Bratz.

During our call, you explained that MGA has searched and been unable to locate Franklin Planners for most of the employees listed in Mattel's prior letter.  Specifically, you confirmed that MGA had searched and been unable to locate Franklin Planners for the following employees:

- Cecilia Kwok
- Edmond Lee
- Stephen Lee
- Frankie Tsiang
- Samuel Wong
- Mercedeh Ward
- Victoria O'Connor
- Martin Hitch
- Aileen Storer
- Andreas Koch

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

XHIBIT 2 PAGE 10

- Dennis Medici
- Jim Olmstead
- Clementine Jarrin
- Jennifer Maurus
- Jessica Caiafa
- Paul Warner
- Charles O'Connor
- Jackie Bielke
- Jeremy Davis
- Jonathan Buford
- Margo Chazen

You explained, as to these individuals, that MGA either never provided planners to them or if it did they cannot be found. You stated that you did not know what happened to any planners for these individuals which may have existed.

You also stated that MGA has found planners from the year 2000 for Rebecca Harris and Julie Chomo. You confirmed that, to the extent it has not done so already, MGA will produce these planners in unredacted form.

You stated that you are continuing to investigate whether MGA has planners for Paula Garcia and Kerri Brode. I look forward to hearing from you further in this regard.

I also asked about MGA's search for electronic or other calendars, aside from Franklin Planners, for these and any other individuals who worked on Bratz in the year 2000. You stated that based on my letter you had investigated to date only the status of these individuals' Franklin Planners, not any other calendars which they may have had. You agreed to confirm whether MGA has access to other calendars, including electronic calendars (such as an Outlook calendar), which these employees may have used. I look forward to hearing from you further in this regard.

As to the calendars for Mr. Larian, you advised that MGA was contemplating making a proposal of some sort. You confirmed that MGA has calendars for Mr. Larian which have not been produced, including for the year 2000, and that MGA has not yet decided what its position on these calendars will be. I look forward to receiving any proposal you wish to make.

We also discussed the redacted documents Mattel has asked MGA to produce in unredacted form pursuant to the Court's prior Orders. You stated that you were in the process of confirming whether these documents were compelled by the May 15th Order, and if they were, MGA would produce them in unredacted form. I look forward to receiving the documents promptly.

Last, we discussed the deposition of Mr. Malacrida. As you know, MGA previously agreed to make Mr. Malacrida available for another day of deposition, and when we last spoke I stated that Mattel was not willing to agree to a half-day time limitation in advance. In your most recent letter on this subject, you advised that Mr. Malacrida is available on January 25, 2008, and asked me to "confirm" that the deposition will not exceed half a day. As I stated in my letter of yesterday, Mattel is not in a position to provide that confirmation. When we discussed that

2

**EXHIBIT 2 PAGE 11**

matter today, you confirmed that MGA nevertheless will make Mr. Malacrida available for deposition on January 25, 2008, without any pre-set time limitation. You explained that, based on Mattel's questioning and the conduct of the deposition, if MGA feels it necessary to suspend the deposition to make a motion for a protective order, it will do so, but MGA agrees that there will not be any pre-set time limitation on the deposition. Please consider this confirmation that the deposition will go forward on January 25, 2008, on the date that you have offered.

Please do not hesitate to contact me if you have any questions. I also look forward to speaking with you next week regarding the pending matters you have agreed to investigate further and report back about.

Very truly yours,

B. Dylan Proctor /pj

B. Dylan Proctor

BDP:lak
2341799

3

EXHIBIT 2 PAGE 12

TRANSMISSION VERIFICATION REPORT

```
                                    TIME   : 01/04/2008 22:54
                                    NAME   : JOHN B QUINN
                                    FAX    : 2134890088
                                    TEL    : 2134433201
                                    SER.#  : BROE5J272067
```

```
        DATE,TIME              01/04  22:53
        FAX NO./NAME           16504704570
        DURATION               00:01:13
        PAGE(S)                04
        RESULT                 OK
        MODE                   STANDARD
                               ECM
```

EXHIBIT 2 PAGE 13

# EXHIBIT 3

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3112**

WRITER'S INTERNET ADDRESS
**dylanproctor@quinnemanuel.com**

January 10, 2008

**VIA FACSIMILE AND U.S. MAIL**

Andrew C. Temkin, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue Suite 1100
Palo Alto, California 94301

Re:    <u>Mattel, Inc. v. Bryant</u>

Dear Andrew:

I write further to our ongoing meet and confer regarding MGA's failure to produce planners and calendars for its employees involved in Bratz.  I have not received any response to my letter of January 4, 2008.  I also have not received the additional documents MGA has located to date. Please let me know by 12:00 p.m. on January 11, 2008, if MGA intends to produce these documents and what the results of MGA's follow up investigation have been, if any.  I look forward to hearing from you promptly.

Very truly yours,

B. Dylan Proctor

BDP:lak

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2348309.1

**EXHIBIT 3 PAGE 14**

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

**DATE:**   January 10, 2008

**NUMBER OF PAGES, INCLUDING COVER: 2**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Andrew C. Temkin, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP | 650-470-4500 | 650-470-4570 |

**FROM:**   B. Dylan Proctor, Esq.

**RE:**   *Mattel, Inc. v. Bryant*

**MESSAGE:**



07209/2348379.1

| CLIENT # | 7209 | ROUTE/<br>RETURN TO: | Tiffany Garcia/3rd Floor | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | PRISCILLA | | CONFIRMED?  ☐ No ☐ YES: _____ | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

EXHIBIT 3 PAGE 15

```
************************
***    TX REPORT    ***
************************
```

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 4772 |
| RECIPIENT ADDRESS | 76706#7209#16504704570 |
| DESTINATION ID | |
| ST. TIME | 01/10 11:17 |
| TIME USE | 00'52 |
| PAGES SENT | 2 |
| RESULT | OK |

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

### LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**     January 10, 2008

**NUMBER OF PAGES, INCLUDING COVER: 2**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Andrew C. Temkin, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP | 650-470-4500 | 650-470-4570 |

**FROM:**     B. Dylan Proctor, Esq.

**RE:**     *Mattel, Inc. v. Bryant*

**MESSAGE:**

EXHIBIT 3  PAGE 16

# EXHIBIT 4

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE

PALO ALTO, CALIFORNIA 94301
———
TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

DIRECT DIAL
650-470-4624
DIRECT FAX
650-470-4570
EMAIL ADDRESS
ATEMKIN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 10, 2008

**BY EMAIL AND U.S. MAIL**

Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

RE:   Bryant v. Mattel: Franklin Planners and Continued Deposition of Dave Malacrida

Dear Mr. Proctor:

This in response to your letter dated January 4, 2008 (that we received on January 5) and further to our meet and confer of the fourth.

With respect to the Franklin Planners for the employees identified in your letter, this will confirm that for the following former employees, MGA has searched for and been unable to locate the requested planners.  This will also confirm that because they are former employees, we are unable to confirm whether these employees even used a planner in the year 2000 or might have taken any planner that they did use upon leaving MGA.

- Cecilia Kwok (MGA HK)
- Franki Tsang (MGA HK)
- Mercedeh Ward
- Victoria O'Conner
- Martin Hitch
- Andreas Koch
- Dennis Medici
- Jeremy Davis
- Jonathan Buford

- Stephen Lee (MGA HK)
- Samuel Wong (MGA HK)
- Clementina Jarrin
- Jennifer Maurus
- Jessica Caiafa
- Paul Warner
- Jackie Bielke
- Margo Chazen

EXHIBIT 4 PAGE 17

Dylan Proctor
January 10, 2008
Page 2

As I informed you, William Ragsdale, Wendy Ragsdale, and Vivian Matt do not appear to have been employees of MGA and, accordingly, would not have received planners. Similarly, Ninette Pembleton was not employed by MGA in 2000.

This will also confirm that Edmond Lee and Jim Olmstead did not use a day planner in 2000. In addition, due to their hire dates, it appears that neither Aileen Storer nor Leon Djigurian received planners in 2000.

With respect to Rebecca Harris, Kerri Brode, and Paula Garcia, we have confirmed that no day planners for the year 2000 were found following MGA's search.

A partial planner was found for Julie Chomo, which, consistent with MGA's discovery responses and Judge Infante's relevant orders, will be produced promptly.

As you requested, we are investigating whether these employees might have used electronic calendars, such as Microsoft Outlook. We will get back to you in this regard as soon as we have information to report.

With respect to Mr. Larian's calendars,[1] Mr. Larian will provide a signed verification that nothing is being withheld from his calendars that is responsive to information sought in a discovery request in accordance with Mr. Larian's discovery responses and/or as ordered by the Court.

As we have discussed, MGA will produce MGA 0008903R, MGA 0008908R, MGA 0008923R, MGA 0008931R and MGA 0008950R without redactions. We have enclosed these pages Bates Nos. MGA 376684 – MGA 376688 and will also include them in a future electronic production.[2]

With respect to the other redacted calendar pages at Bates Nos. MGA 0003704 – MGA 0003705 and MGA 0003707 – MGA 0003713, we are verifying the nature of the redactions and will get back to you after we have been able to confirm the information. Although we did not discuss it during the meet and confer, with respect to Bates Nos. MGA 0861192 – MGA 0861193; MGA 0861206, and MGA 0861334, we are also investigating whether there is in fact a redaction or merely an artifact in the electronic documents and will get back to you with our results.

---

[1] As we informed you during the meet and confer, MGA 0861992 – MGA 0861994 are pages from a magazine. You confirmed that the inclusion of these ranges in your letter was an error.

[2] We discussed that it is our understanding that MGA 0008950 and MGA 0008950R are the same document as are MGA 0008931 and MGA 0008931R. You explained that this understanding was consistent with the manner in which previous counsel for MGA produced or reproduced documents.

EXHIBIT 4 PAGE 18

Dylan Proctor
January 10, 2008
Page 3

     With respect to the continued deposition of Dave Malacrida, as I told you in our conference on the subject, we see no reason why this deposition cannot be concluded within 3.5 hours (one-half day) of additional testimony, and you have provided none.  As you state in your letter, we have agreed to proceed with the deposition without seeking, in advance, a limitation on the additional testimony of Mr. Malacrida.  However, as you acknowledge, this agreement is without prejudice to our right to suspend the deposition to seek relief from the Court and to make any argument in support of such an application, including that the deposition should be limited to 3.5 hours of additional testimony.  To be clear, under no circumstance will MGA allow Mr. Malacrida's continued deposition to extend beyond the 7 hour limitation provided by Federal Rule of Civil Procedure 30(d)(2).

     Very truly yours,

     Andrew C. Temkin

Enclosures

EXHIBIT 4  PAGE 19



*This friendship is never serene.*
*— Marie de Sévigné*

Veronica
626-393-5763 cell

Thursday,

**Daily Record of Events**       4th Day  361 Left   Week 1

~~Leon~~ taking PO books home

~~VIOLETTE WHITE~~

~~THE SIGNS TO REDO~~

mention Hockey color change w/Andreas

~~Carlos/Katrine: sell sheets~~

Leon Signs for Jennifer due -

→ Ad for Toy Book - Bratz

e-mail HR - IM we are writing

✓ e-mail office - meeting

CONFIDENTIAL - ATTORNEYS' EYES ONLY            MGA 3766684

EXHIBIT ___4___ PAGE ___20___



**Daily Record of Events**

Wednesday

17th Day  348 Left  Week 3

Call on Models - NY

Von Stamp w/ Mary

Email printouts for Victoria

Mfg. Blister for Bratz

NY Disneyto Mock-ups - 3

Seat sell sheets out for print

Email Jasmine to planner

Email ? for LA party Tuesday

Set Leon for NY invites

Call   818-574-1003  Matthew Turner?
                     818 & 867-8577

Album cover invite disk to Kinkos

CONFIDENTIAL – ATTORNEYS' EYES ONLY

MGA 3766685

EXHIBIT 4 PAGE 21



CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3766686

EXHIBIT 4 PAGE 22



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3766688

EXHIBIT 4 PAGE 24

# EXHIBIT 5

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

### 300 SOUTH GRAND AVENUE
### LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

DIRECT DIAL
650-470-4624
DIRECT FAX
650-470-4570
EMAIL ADDRESS
ATEMKIN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
——
BOSTON
CHICAGO
HOUSTON
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
——
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 23, 2008

**BY EMAIL AND U.S. MAIL**

Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

RE:    <u>Bryant v. Mattel</u>

Dear Mr. Proctor:

Further to our January 10, 2008 letter, we provide the following update.

The review of Ms. Chomo's partial planner for the year 2000 did not result in the discovery of responsive documents.

With respect to the search for electronic calendars, several Outlook calendars were found and responsive non-privileged documents, if any, will be produced promptly.

With respect to the redacted calendar pages at Bates Nos. MGA 0003704 – MGA 0003705 and MGA 0003707 – MGA 0003713, MGA will produce the documents without reactions promptly.

Very truly yours,

Andrew C. Temkin

259831-Palo Alto Server 1A - MSW

EXHIBIT 5 PAGE 25

# EXHIBIT 6

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2    Michael T. Zeller (Bar No. 196417)
     Shane H. McKenzie (Bar No. 228978)
3   865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
4   Telephone: (213) 443-3000
    Facsimile: (213) 443-3100
5
    Attorneys for Plaintiff and Counter-Defendant
6   Mattel, Inc.

7

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11

12   MATTEL, INC., a Delaware corporation,  )  Case No. CV 04-09059 NM (RNBx)
                                            )
13              Plaintiff,                  )
                                            )  MATTEL, INC.'S FIRST SET OF
14        v.                                )  REQUESTS FOR PRODUCTION
                                            )  OF DOCUMENTS AND
15   CARTER BRYANT, an individual           )  TANGIBLE THINGS TO MGA
                                            )  ENTERTAINMENT INC.
16              Defendant.                   )
                                            )
17   _____)
                                            )
18   CARTER BRYANT, on behalf of himself,    )
     all present and former employees of     )
19   Mattel, Inc., and the general public,   )
                                            )
20              Counterclaimant,            )
                                            )
21        v.                                )
                                            )
22   MATTEL, INC., a Delaware corporation,  )
                                            )
23              Counter-defendant.           )
     _____)

24

25

26

27

28   EXHIBIT 6 PAGE 24

07209/642197.1

                                          3/14

ORIGINAL

1    Pursuant to <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u>, Plaintiff

2  and Counter-Defendant Mattel, Inc. hereby requests that MGA Entertainment Inc.

3  make available for inspection and copying the following documents and things

4  within thirty days of the service of these Requests, at the offices of Quinn Emanuel

5  Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th Floor, Los

6  Angeles, California 90036.

7    These Requests shall be deemed to be continuing, and MGA

8  Entertainment Inc. shall be obligated to supplement its responses to these requests

9  at such times and to the extent required by <u>Rule</u> 26(e) of the <u>Federal Rules of Civil</u>

10 <u>Procedure</u>.

11

12    <u>DEFINITIONS</u>

13

14    For purposes of this Request for Production of Documents:

15    A.    "YOU" or "YOUR" means MGA Entertainment Inc. and any of

16 its current or former employees, officers, directors, agents, representatives,

17 attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and

18 successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

19 authority or subject to its control.

20    B.    "MATTEL" means Mattel, Inc. and any of its current or former

21 employees, officers, directors, agents, representatives, attorneys, subsidiaries,

22 divisions, affiliates, predecessors-in-interest and successors-in-interest, and any

23 other PERSON acting on its behalf, pursuant to its authority or subject to its

24 control.

25    C.    "DOCUMENT" or "DOCUMENTS" means all "writings" and

26 "recordings" as those terms are defined in <u>Rule</u> 34 of the <u>Federal Rules of Civil</u>

27 <u>Procedure</u> and <u>Rule</u> 1001 of the <u>Federal Rules of Evidence</u>, including, but not

28 limited to, all writings and records of every type and description including, but not

**EXHIBIT 6 PAGE 27**    -2-

07209/642197.1

FIRST REQUEST FOR PRODUCTION TO MGA

1  limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles,

2  electronic mail ("e-mail"), records of telephone conversations, handwritten and

3  typewritten notes of any kind, statements, reports, minutes, recordings, transcripts

4  and summaries of meetings, voice recordings, pictures, photographs, drawings,

5  computer cards, tapes, discs, printouts and records of all types, studies, instruction

6  manuals, policy manuals and statements, books, pamphlets, invoices, canceled

7  checks and every other device or medium by which or through which information

8  of any type is transmitted, recorded or preserved.  Without any limitation on the

9  foregoing, the term "DOCUMENT" shall include all copies that differ in any

10 respect from the original or other versions of the DOCUMENT, including, but not

11 limited to, all drafts and all copies of such drafts or originals containing initials,

12 comments, notations, insertions, corrections, marginal notes, amendments or any

13 other variation of any kind.

14         D.    "REFER OR RELATE TO" means constituting, embodying,

15 containing, referring to, commenting on, evidencing, regarding, discussing,

16 describing, mentioning, reflecting, expressing, pertaining to, concerning,

17 supporting, contradicting, negating, revoking or otherwise relating to in any

18 manner.

19         E.    "PERSON" or "PERSONS" means all natural persons,

20 partnerships, corporations, joint ventures and any kind of business, legal or public

21 entity or organization, as well as its, its or her agents, representatives, employees,

22 officers and directors and any one else acting on its, its or her behalf, pursuant to

23 its, its or her authority or subject to its, its or her control.

24         F.    "BRYANT" means Carter Bryant, any of his current or former

25 agents, representatives, attorneys, employees, partners, joint venturers,

26 predecessors-in-interest and successors-in-interest, and any other PERSON acting

27 on his behalf, pursuant to his authority or subject to his control.

28

**EXHIBIT** _U_ **PAGE** _28_

FIRST REQUEST FOR PRODUCTION TO MGA

G.    "BRATZ" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also, previously or subsequently called) and any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such doll is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and all prototypes, models, samples and versions of such doll or any portion thereof.

H.    "ANGEL" means any project that is the subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20, MGA000724-28 and MGA000734, and any doll (sometimes purportedly called "Angel," "Angel Faces" and/or "Prayer Angels") or any portion thereof that is the subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20, MGA000724-28 and MGA000734, including all prototypes, models, samples and versions of such doll(s) or any portion thereof.  Without limiting the generality of the foregoing, "ANGEL" means any project or any doll or any portion thereof that is the subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20, MGA000724-28 and MGA000734, regardless of what any such project or doll has in fact been called, and regardless of what any such project or doll is or has been also, previously or subsequently called.

I.    "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

EXHIBIT _C_ PAGE _29_

FIRST REQUEST FOR PRODUCTION TO MGA

1   J.   "COMMUNICATION" or "COMMUNICATIONS" means and
2   includes any disclosure, transfer or exchange of information between two or more
3   PERSONS, whether orally or in writing, including, without limitation, any
4   conversation or discussion by means of meeting, letter, telephone, note,
5   memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic
6   or other medium, including without limitation in written, audio or video form.

7   K.   The singular form of a noun or pronoun includes within its
8   meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of
9   the masculine form of a pronoun also includes within its meaning the feminine
10  form of the pronoun so used, and *vice versa*; the use of any tense of any verb
11  includes also within its meaning all other tenses of the verb so used, whenever
12  such construction results in a broader request for information; and "and" includes
13  "or" and *vice versa*, whenever such construction results in a broader disclosure of
14  documents or information.

15
16  <u>INSTRUCTIONS</u>
17
18  A.   Unless otherwise specified, these requests call for
19  DOCUMENTS prepared on or after January 1, 1995 through the present.
20  Documents shall be produced in their original file folders, or in lieu thereof, any
21  writing on the file folder from which each such document is taken shall be copied
22  and appended to such document and the person for whom or department, division,
23  or office for which the document or the file folder is maintained shall be
24  identified.

25  B.   YOU are to produce all DOCUMENTS requested hereby that
26  are in YOUR possession, custody and control.

27  C.   In the event that any document called for by these requests is to
28  be withheld on the basis of a claim of privilege or immunity from discovery, that

EXHIBIT 6 PAGE 30

)7209/642197.1

-5-

1 | document is to be identified by stating (i) any addressor and addressee; (ii) any
2 | indicated or blind copy; (iii) the document's date, subject matter, number of pages,
3 | and attachments or appendices; (iv) all persons to whom the document was
4 | distributed, shown, or explained; (v) its present custodian; and (vi) the nature of
5 | the privilege or immunity asserted.

6 |      D.    In the event that any document called for by these requests has
7 | been destroyed or discarded, that document is to be identified by stating: (i) any
8 | addressor and addressee; (ii) any indicated or blind copies; (iii) the document's
9 | date, subject matter, number of pages, and attachments or appendices; (iv) all
10 | persons to whom the document was distributed, shown, or explained; (v) the date
11 | of destruction or discard, manner of destruction or discard, and reason for
12 | destruction or discard; (vi) the persons who were authorized to carry out such
13 | destruction or discard; and (vii) whether any copies of the document presently
14 | exist and, if so, the name of the custodian of each copy.

16 | ## REQUESTS FOR PRODUCTION

18 | **REQUEST FOR PRODUCTION NO. 1:**

19 |     All DOCUMENTS that REFER OR RELATE TO any agreement or
20 | contract between YOU and BRYANT, including without limitation all drafts
21 | thereof and all actual or proposed amendments, modifications and revisions
22 | thereto.

24 | **REQUEST FOR PRODUCTION NO. 2:**

25 |     All DOCUMENTS that REFER OR RELATE TO the performance of
26 | any agreement or contract between YOU and BRYANT.

**EXHIBIT** $\underline{\varphi}$ **PAGE** $\underline{3l}$

1 | RELATE TO any agreement or contract between Margaret Hatch (also known as

2 | Margaret Leahy and/or Margaret Hatch-Leahy) and Mattel, Inc.

3

4 | **REQUEST FOR PRODUCTION NO. 31:**

5 | All COMMUNICATIONS between YOU and BRYANT that REFER

6 | OR RELATE TO Mattel, Inc. or any officer, director, employee or representative

7 | of Mattel, Inc.

8

9 | **REQUEST FOR PRODUCTION NO. 32:**

10 | All DOCUMENTS prepared, written, transmitted or received

11 | (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE

12 | TO BRATZ.

13

14 | **REQUEST FOR PRODUCTION NO. 33:**

15 | All DOCUMENTS that REFER OR RELATE TO BRATZ that

16 | REFER OR RELATE TO any time prior to January 1, 2001 (regardless of when

17 | such document was prepared, written, transmitted or received, whether in whole or

18 | in part).

19

20 | **REQUEST FOR PRODUCTION NO. 34:**

21 | All DOCUMENTS prepared, written, transmitted or received

22 | (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE

23 | TO ANGEL.

24

25 | **REQUEST FOR PRODUCTION NO. 35:**

26 | All DOCUMENTS that REFER OR RELATE TO ANGEL that

27 | REFER OR RELATE TO any time prior to January 1, 2001 (regardless of when

28

EXHIBIT _&_ PAGE _32_

-13-

FIRST REQUEST FOR PRODUCTION TO MGA

1  REQUEST FOR PRODUCTION NO. 66:

2        All COMMUNICATIONS between YOU and any PERSON that

3  REFER OR RELATE TO the distribution or proposed or potential distribution of

4  BRATZ prior to June 1, 2001.

5

6  REQUEST FOR PRODUCTION NO. 67:

7        All COMMUNICATIONS between YOU and Universal Commerce

8  Corp., Ltd. prior to June 1, 2001.

9

10  REQUEST FOR PRODUCTION NO. 68:

11        All DOCUMENTS that REFER OR RELATE TO Mattel, Inc., or that

12  were prepared, authored or created by Mattel, Inc. or any officer, director,

13  employee or representative of Mattel, Inc., that BRYANT has ever provided to,

14  shown, described to, communicated to or disclosed in any manner to YOU.

15

16  REQUEST FOR PRODUCTION NO. 69:

17        All COMMUNICATIONS between YOU and BRYANT prior to

18  January 1, 2001, including without limitation all diaries, notes, calendars, logs,

19  phone records and letters, that reflect, record or memorialize or otherwise REFER

20  OR RELATE TO any such COMMUNICATIONS.

21

22  REQUEST FOR PRODUCTION NO. 70:

23        All COMMUNICATIONS between YOU and Elise Cloonan that

24  REFER OR RELATE TO BRYANT, Mattel, Inc., BRATZ and/or Anna Rhee,

25  including without limitation all diaries, notes, calendars, logs, phone records and

26  letters, that reflect, record or memorialize or otherwise REFER OR RELATE TO

27  any such COMMUNICATIONS.

28

**EXHIBIT _6_ PAGE _33_**

FIRST REQUEST FOR PRODUCTION TO MGA

1 | REQUEST FOR PRODUCTION NO. 99:

2 |       All doll heads, sculpts, prototypes, models, samples and tangible

3 | items that REFER OR RELATE TO DESIGNS for dolls, doll accessories or toys

4 | that BRYANT produced, created, authored, conceived of or reduced to practice,

5 | whether alone or jointly with others, prior to January 1, 2001.

6 |

7 | REQUEST FOR PRODUCTION NO. 100:

8 |       All doll heads, sculpts, prototypes, models, samples and tangible

9 | items that support, refute or otherwise REFER OR RELATE TO any facts

10 | underlying YOUR Affirmative Defenses in this action.

11 |

12 |

13 | DATED:  March 14, 2005       QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP

14 |

15 | By _____
      Shane Heather McKenzie

16 |       Attorneys for Plaintiff/Counter-defendant
      Mattel, Inc.

17 |

EXHIBIT 6 PAGE 34

-26-

**PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA** )
) SS
**COUNTY OF LOS ANGELES** )

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On March 14, 2005, I served the foregoing document described as **Mattel, Inc.'s First Set of Requests For Production of Documents And Tangible Things to MGA Entertainment Inc.** on all interested parties in this action.

**Robert F. Millman, Esq.**
**Douglas A. Wickham, Esq.**
**Littler Mendelson**
**A Professional Corporation**
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
**FAX: 310-553-5583**

[   ]   By placing [ ] the original [ ] true copies thereof enclosed in sealed envelopes addressed as follows:

[ X ]   **BY MAIL:**   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ X ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

Executed on March 14, 2005, at Los Angeles, California.

[   ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[ X ]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Rebecca A. Ramos
Print Name

Signature

EXHIBIT 6 PAGE 35

1

# PROOF OF SERVICE
1013A(3) CCP Revised 5/1/88

2

**STATE OF CALIFORNIA**                )
                                        ) SS
3

**COUNTY OF LOS ANGELES**              )

4

        I am employed in the county of Los Angeles State of California. I am over the age of 18
5
and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor,
Los Angeles, California 90017.

6

        On March 14, 2005, I served the foregoing document described as **Mattel, Inc.'s First Set
of Requests For Production of Documents And Tangible Things to MGA Entertainment Inc.**
7
on all interested parties in this action.

8

                        **Paula E. Ambrosini, Esq.**
                        **O'Melveny & Meyers**
9
                        400 So. Hope Street
                        Los Angeles, CA  90071
10
                        (213) 430-6407

11

[  ]    By placing [ ] the original [ ] true copies thereof enclosed in sealed envelopes addressed as
        follows:

12

[  ]    **BY MAIL:**    I deposited such envelope in the mail at Los Angeles, California. The
13
        envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar"
        with the firm's practice of collection and processing correspondence for mailing. Under that
14
        practice it would be deposited with U.S. postal service on that same day with postage thereon
        fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that
15
        on motion of the party served, service is presumed invalid if postal cancellation date or
        postage meter date is more than one day after date of deposit for mailing in affidavit.

16

[ X ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s)
17
        set forth above on this date.

18

[ X ]   **BY PERSONAL SERVICE** I caused to be delivered such envelope by hand to the
        addressee.

19

Executed on March 14, 2005, at Los Angeles, California.

20

[  ]    (State) I declare under penalty of perjury under the laws of the State of California that the
        above is true and correct.

21

22

[ X ]   (Federal) I declare that I am employed in the office of a member of the bar of this court at
        whose direction the service was made.

23

24

Rebecca A. Ramos
25
Print Name                                              Signature

26

27

28

EXHIBIT _6_ PAGE _36_

# EXHIBIT 7

**ORIGINAL**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2   johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5   (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Plaintiff and Cross-
   Defendant
9  Mattel, Inc.

10                    UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12                          EASTERN DIVISION

13  CARTER BRYANT, an              CASE NO. CV 04-9049 SGL (RNBx)
    individual,
14                                 Consolidated with
              Plaintiff,          Case No. CV 04-09059
15                                 Case No. CV 05-02727
         vs.
16                                 **DISCOVERY MATTER**
    MATTEL, INC., a Delaware
17  corporation,                  **[To Be Heard By Discovery Master Hon.
                                   Edward Infante (Ret.) Pursuant To The Court's
18            Defendant.          Order Of December 6, 2006]**

19                                 MATTEL, INC.'S NOTICE OF MOTION AND
    AND CONSOLIDATED               MOTION TO COMPEL PRODUCTION OF
20  ACTIONS                        DOCUMENTS AND INTERROGATORY
                                   ANSWERS BY MGA ENTERTAINMENT, INC.;
21
                                   AND MEMORANDUM OF POINTS AND
22                                 AUTHORITIES

23                                 [Separate Statement and Declaration of Michael T.
                                   Zeller filed concurrently herewith]
24
                                   Hearing Date:  TBA
25                                 Time:  TBA
                                   Place:  TBA
26
                                   Discovery Cut-off:  None Set
27                                 Pre-trial Conference:  None Set
                                   Trial Date:  None Set
28  EXHIBIT __7__ PAGE __37__

                                                          2-2

                              MATTEL, INC.'S MOTION TO COMPEL

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |        PLEASE TAKE NOTICE that at a telephonic conference before

3 | Discovery Master Hon. Edward Infante (Ret.) that will occur on a date and at a time

4 | to be determined by Judge Infante, plaintiff Mattel, Inc. ("Mattel") will, and hereby

5 | does,  move the Court:

6 |        (1) to compel MGA Entertainment, Inc. ("MGA") to produce

7 | documents responsive to Mattel Request Nos. 1, 2, 6, 7, 8, 9, 10, 11, 12, 13, 26, 27,

8 | 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 43, 45, 46, 49, 50, 51, 53, 55, 57, 59, 61, 63,

9 | 64, 66, 67, 69, 70, 88, 90, 91, 92, 96, 97, 98, 99, 100, including all documents,

10 | regardless of date of creation, relating to the origins of Bratz and the design,

11 | development and marketing of Bratz prior to June 31, 2001;

12 |        (2) to compel MGA to produce all redacted documents in un-redacted

13 | form; serve a complete privilege log; and complete its production by producing

14 | missing attachments, fax cover pages and the like;

15 |        (3) to compel MGA to answer fully and completely Mattel

16 | Interrogatories Nos. 5-11; and

17 |        (3) for an award of sanctions against MGA in the amount of $6,700.00,

18 | which represents a portion of the costs incurred by Mattel in bringing this Motion.

19 |        This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 34

20 | and 37 on the grounds that Mattel's Requests seek discoverable information and

21 | MGA's objections lack merit.

22 |        This motion shall be heard by the Honorable Edward Infante,

23 | Discovery Master.  The parties met and conferred regarding this motion on August 8

24 | and 16, 2006 and on January 26, 2007.

25 |

26 |

27 |

28 | **EXHIBIT _1_ PAGE _38_**

MATTEL, INC.'S MOTION TO COMPEL

1   This Motion is based on this Notice of Motion and Motion, the
2   accompanying Memorandum of Points and Authorities, the Declaration of
3   Michael T. Zeller filed concurrently herewith, the Separate Statement filed
4   concurrently herewith, the records and files of this Court, and all other matters of
5   which the Court may take judicial notice.

6

7   DATED:  February 2, 2007        QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
8

9                                   By  _____
10                                      Michael T. Zeller
                                        Attorneys for Plaintiff and Cross-Defendant
11                                      Mattel, Inc.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27   EXHIBIT 7 PAGE 39
28

07209/2046181.3

-ii-

1

## TABLE OF CONTENTS

2                                                                                          <u>Page</u>

3

4   MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

5   Preliminary Statement ..................................................................................... 1

6   Argument ......................................................................................................... 3

7   I.      MGA's Production Is Incomplete And Unintelligible. ...................................... 3

8   II.     MGA Has Engaged In A Practice Of Failing To Produce Responsive
            Documents Until Mattel Discovers Such Documents From Other
9           Sources. ......................................................................................................... 7

10  III.    MGA's Refusal To Produce Any Documents From Its Hong Kong
            Subsidiary Is Contrary To Law. ................................................................... 11
11
    IV.     MGA's Failure To Produce Prior Testimony Regarding Bratz Frustrates
12          Mattel's Ability To Gather Evidence And Identify Witnesses. ...................... 13

13  V.      MGA's Failure To Provide Full And Complete Answers To Mattel's
            Interrogatories Relating To The Origins Of Bratz Frustrates Mattel's
14          Ability To Gather Evidence And Identify Witnesses. .................................... 15

15  VI.     MGA Should Be Sanctioned. ........................................................................ 18

16

17

18

19

20

21

22

23

24

25

26

27

28   EXHIBIT 7  PAGE 40

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

In re ATM Fee Antitrust Litigation,
   233 F.R.D. 542 (N.D. Cal. 2005) ................................................. 12

Bohannon v. Honda Motor Co., Ltd., et al.,
   127 F.R.D. 536 (D. Kan. 1989) ................................................. 14

Braley v. Campbell,
   832 F.2d 1504 (10th Cir. 1987) ................................................. 19

Davis v. Fendler,
   650 F.2d 1154 (9th Cir. 1981) ................................................. 16

Hyde & Drath v. Baker,
   24 F.3d 1162 (9th Cir. 1994) ................................................. 19

Miller v. Federal Express Corp.,
   186 F.R.D. 376 (W.D. Tenn. 1999) ................................................. 17

RTC v. Dabney,
   73 F.3d 262 (10th Cir. 1995) ................................................. 19

Richmark Corp. v. Timber Falling Consultants,
   959 F.2d 1468 (9th Cir.), cert. denied, 506 U.S. 948 (1992) ............... 16

U.S. v. Internaitonal Union of Petroleum and Industrial Workers,
   870 F.2d 1450 (9th Cir. 1989) ................................................. 12

VNA Plus, Inc. v. Apria Healthcare Group, Inc.,
   1999 WL 386949 (D. Kan. 1999) ................................................. 17

## **Statutes**

28 U.S.C. § 1927 ................................................. 19

Fed. R. Civ. P. 33(b)(3) ................................................. 16

Fed. R. Civ. P. 33(b)(6) ................................................. 7

Fed. R. Civ. P. 33(d) ................................................. 17

Fed. R. Civ. P. 34 ................................................. i

Fed. R. Civ. P. 37(a)(4) ................................................. 19

EXHIBIT 7 PAGE 41

1 | **Miscellaneous**

2 | Moore's Federal Practice § 33.174[2]......................................................... 16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 7 PAGE 42

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Mattel, Inc. ("Mattel") seeks to compel defendant MGA Entertainment, Inc. ("MGA") to produce all documents—regardless of their date of creation—relating to the origin, conception, design and development of Bratz and to fully answer Mattel's Interrogatories on those subjects.   As the Discovery Master observed in his recent Order granting Mattel's motion to compel against defendant Carter Bryant, "at the heart of this lawsuit is a dispute over the rights to the 'Bratz' dolls."[1]   The Order makes clear that documents relating to the origin, design and development of Bratz are thus discoverable.

MGA, however, continues to withhold information on these subjects and, despite Mattel's repeated requests, has failed to cure the deficiencies in MGA's production.   To date, Mattel has produced nearly 60,000 pages of documents.   In contrast, MGA has produced a few thousand pages.[2]   Not only are certain categories of critical documents relating to Bratz absent from MGA's production,[3] but what little MGA has produced is itself deficient.   Among other things, MGA's production includes pages that are replete with redactions, often to the point where all or most of the entire page is blank except for the Bates number, "Attorneys' Eyes Only" and "Redacted" stamps put on them by attorneys.[4]   The net result of these multiple deficiencies is to render MGA's production both woefully incomplete and

---

[1]   Order Granting Mattel's Motion to Compel Production of Documents, dated January 25, 2007, at 2, attached as Exhibit 1 to the Declaration of Michael T. Zeller, dated February 1, 2007 and filed concurrently herewith ("Zeller Dec.").

[2]   Zeller Dec., ¶ 3.

[3]   For instance, MGA has not produced any internal documents from its Hong Kong office, even though it was involved in the development of Bratz.   See Zeller Dec., Exh. 7.

[4]   See e.g., sample pages from MGA's production, Zeller Dec., Exhs. 2-6.

**EXHIBIT 7 PAGE 43**

-1-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1  unintelligible, and MGA has failed to produce clearly relevant documents regarding

2  the origin, conception, design and development of Bratz.  MGA's failure to comply

3  with its discovery obligations also extends to its incomplete or non-existent answers

4  to Mattel's Interrogatories seeking basic information about these same subjects.

5  These facts alone justify granting Mattel's Motion to Compel.  However, these

6  deficiencies are even more disturbing in light of MGA's pattern of not producing

7  critical documents or identifying witnesses involved with Bratz until Mattel

8  independently discovers such documents from another source or such witnesses

9  come forward.

10         MGA also has no legitimate excuse for its stonewalling here.  MGA's

11  arguments attempting to justify its incomplete and heavily redacted production, such

12  as its artificial "First Generation Bratz" distinction, are virtually identical to the

13  positions that Bryant had asserted in his refusals to produce relevant Bratz

14  documents and that the Discovery Master had rejected in his Order granting Mattel's

15  Motion to Compel against Bryant.  Although MGA at one point stated that it would

16  reconsider its positions in light of that Order, MGA nevertheless opted to persist in

17  its failures and refusals.   MGA should be compelled to produce responsive

18  documents without redactions (except to protect attorney-client privilege or attorney

19  work product and are reflected on a privilege log) responsive to Mattel's document

20  requests and to fully and completely answer Mattel's Interrogatories.

21         MGA's (and Bryant's) pattern of obstructionism notwithstanding,

22  Mattel has uncovered evidence confirming that (1) Bryant designed Bratz while

23  employed by Mattel; (2) Bryant used Mattel resources to design Bratz; (3) MGA

24  contracted with Bryant to obtain the rights to Bratz knowing that Bryant was

25  employed by Mattel; and (4) MGA paid Bryant for work performed on Bratz while

26

27

28  EXHIBIT 7 PAGE 44

1  he was still employed by Mattel.[5]  Furthermore, Mattel has uncovered evidence of,

2  and is asserting claims for, trade secret theft, copyright infringement and acts of

3  unfair competition by defendants.[6]  MGA's incomplete production and its

4  inadequate Interrogatory answers jeopardize Mattel's ability to pursue its rights and

5  to defend itself against MGA's own claims -- claims for which MGA recently

6  announced it would be seeking "billions" of dollars in damages.[7]  Mattel respectfully

7  requests that the Discovery Master grant this motion in its entirety, including by

8  ordering MGA to produce all non-privileged documents relating to the origin,

9  conception, design and development of Bratz, and to fully answer Mattel's

10  Interrogatories.

11

12  **Argument**

13  I.  **MGA's Production Is Incomplete And Unintelligible.**

14          MGA's production contains numerous inappropriate redactions that do

15  not appear to be based on privilege, such that more than half of MGA's production

16  consists of pages that are <u>entirely</u> redacted.[8]  Pages with text are frequently so

17  heavily redacted as to be unintelligible.  For instance, multiple emails produced by

18  MGA have everything but the "To," "From" and "Subject" header information

19  redacted.[9]  Other pages include illegible text or images and/or have text or other

20

21  _____

22      [5]  Mattel's Amended Answer and Cross-Complaint in *MGA v. Mattel, Inc.*, Case

23  No. CV 05-2727 SGL (RNBx) (the "Unfair Competition Case") at ¶¶ 26-27, Zeller
    Dec., Exh. 8.

24      [6]  <u>Id.</u> at ¶¶ 37-54.
        [7]  "Nightline" transcript at 5, Zeller Dec., Exh. 56.  MGA Complaint at ¶ 101-

25  125, Zeller Dec., Exh. 9.  Moreover, MGA's Complaint states on its face that it

26  seeks "tens of millions" of dollars from Mattel.  <u>Id.</u> at Prayer ¶ 2.
        [8]  <u>See, e.g.</u> Entirely redacted pages from MGA's production, Zeller Dec., Exh. 2.

27      [9]  <u>See, e.g.</u> Heavily redacted emails from MGA's production Zeller Dec., Exh. 3.

28  **EXHIBIT 7 PAGE 45**

-3-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1    information cut-off.[10]    Other pages reference attachments to emails and other

2    documents, but the attachments are missing.[11]    In addition, invoices are produced for

3    which no corresponding check stubs, purchase orders or requisitions were

4    produced.[12]    In some cases, the identifying information necessary to match invoices

5    with other financial documents may have been redacted.    Many other pages are even

6    redacted in their entirety.[13]

7            MGA's justifications for its heavy-handed redactions are almost

8    identical to the ones that Bryant had asserted and that were rejected by the

9    Discovery Master in his Order Granting Mattel's Motion to Compel Production of

10   Documents of Bryant.    For instance, like Bryant, MGA has withheld information

11   and documents relating to any Bratz product other than "First Generation" Bratz—

12   an artificial, and illogical, limitation which the Discovery Master rejected.[14]

13   Further, MGA imposed a "First Generation" Bratz limitation with regards to royalty

14   statements from MGA to Bryant, producing heavily redacted statements that show

15   only Bryant's earnings on the "First Generation" Bratz.    This limitation, too, was one

16   rejected by the Discovery Master in his Order.[15]    Like Bryant, MGA also stood on

17   its refusal to produce evidence relating to agreements between MGA and Bryant,

18   including their fee arrangements.    The Discovery Master similarly rejected this

19   limitation on discovery, noting that such agreements go to issues of liability, bias

20   and lack of credibility.[16]

21   _____

22   [10]    See, e.g., Cut-off and illegible pages from MGA's production, Zeller Dec.,
     Exh. 4.

23   [11]    See, e.g., Email with missing attachment from MGA's production, Zeller

24   Dec., Exh. 5.

25   [12]    See, e.g., Invoice from MGA's production, Zeller Dec., Exh. 6.
     [13]    See, e.g., Zeller Dec, Exh. 2.

26   [14]    See Discovery Master's Order at 12-13, Zeller Dec., Exh. 1.

27   [15]    Id. at 13-14.
     [16]    Id. at 12.

28

**EXHIBIT  7  PAGE  46**

J7209/2046181.3

1        Consistent with the Discovery Master's Order, and because they seek
2   clearly discoverable information, MGA should be compelled to produce the
3   following categories of documents:

4   • Documents referring or relating to Bryant's agreements with MGA,
5     including communications exchanged by the parties and drafts of the
6     agreements;[17]

7   • Documents referring or relating to agreements discussed or negotiated
8     by Bryant and MGA while he was employed by Mattel other than
9     signed agreements that were "reached" while Bryant was employed by
10    Mattel;[18]

11  • Documents referring or relating to Bryant's fee agreements with MGA
12    or other indemnity agreements relating to this action;[19]

13  • All documents relating to works created or services provided by Bryant
14    to MGA during his Mattel employment, regardless of whether they
15    resulted in a Bratz doll released in June of 2001;[20]

16  • All non-privileged documents referring or relating to designs that
17    Bryant created, authored, produced, conceived of or reduced to practice
18    after October 20, 2000 as purported "works-made-for-hire" (whether in
19    whole or in part) for or on behalf of MGA;[21]

20  • All documents referring or relating to the conception, creation, design,
21    development, engineering or sculpting of Bratz;[22]

22
23  _____
24  [17] Id. at 12.
25  [18] Id. at 12.
        [19] Id. at 12.
26  [20] Id. at 12-13.
27  [21] Id. at 12-13.
        [22] Id. at 12-13.
28

EXHIBIT 1 PAGE 47

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

17209/2046181.3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- All non-privileged documents referring or relating to work, activities or services that Bryant performed concerning Bratz after October 20, 2000;[23]

- All non-privileged documents referring or relating to Bryant's participation in the conception, creation, design, development, sculpting, tooling, production or manufacture of Bratz;[24]

- All prototypes, models, samples and tangibles referring or relating to designs for dolls, doll accessories or toys that Bryant produced, created, authored, conceived of or reduced to practice, whether alone or jointly with others, for MGA;[25]

- All documents relating to Bryant's payments from MGA, including all royalty statements in unredacted form;[26]

- All communications between Bryant and MGA or third parties that relate to designs Bryant created while employed by Mattel;[27]

- All communications between Bryant and MGA that relate to Mattel employees;[28]

- All communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment;[29]

---

[23] Id. at 12-13.
[24] Id. at 12-13.
[25] Id. at 12-13.
[26] Id. at 13-14.
[27] Id. at 15-16.
[28] Id. at 15-16.
[29] Id. at 15-16.

EXHIBIT 7 PAGE 48

-6-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1    • All non-privileged communications between Bryant and MGA that

2    post-date Bryant's Mattel employment;[30] and

3    • All non-privileged documents referring or relating to any copyright,

4    patent or any other application or registration for designs that Bryant

5    produced, created, authored, conceived of or reduced to practice,

6    whether alone or jointly with others, since January 1, 1995, including

7    without limitation all communications pertaining thereto.[31]

8         An Order is necessary to ensure that MGA can no longer use artificial

9    distinctions to cherry-pick what documents it chooses to produce and which

10   documents it chooses to withhold from Mattel and to ensure that what MGA

11   produces is produced in unredacted from (unless it is to protect privilege and is

12   reflected on a privilege log).

13

14   II.   **MGA Has Engaged In A Practice Of Failing To Produce Responsive**

15         **Documents Until Mattel Discovers Such Documents From Other Sources.**

16         On multiple occasions, MGA has failed to produce responsive

17   documents until after a third party produces them.  For example, Anna Rhee, an

18   MGA vendor, produced documents in January 2005 pursuant to subpoena and

19   testified at her deposition that invoices she submitted to MGA in June 2000 were

20   invoices for Bratz face-painting.[32]  Subsequently, MGA produced the invoices in

21

22

23   ──────────────

     [30]  Id. at 15-16.

24   [31]  Id. at 16.

     [32]  Deposition of Anna Rhee ("Rhee Deposition"), dated January 7, 2005, at
25   105:2-110:9, Zeller Dec., Exh. 10; Rhee Invoice, Zeller Dec., Exh. 11.  A more
26   detailed account of matters pertaining to Ms. Rhee's testimony and documents is
     included in Mattel's motion to compel with respect to MGA's Rule 30(b)(6) witness,
27   Kerri Brode.

28   EXHIBIT __7__ PAGE __49__

07209/2046181.3

-7-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1   question and their alleged internal backup.[33]  In September 2006, another third-party

2   witness, Steven Linker, produced design drawings, emails and other documents

3   relating to Bratz that Linker had received *from or exchanged with MGA and*

4   *Bryant* before Bryant left Mattel.[34]   Neither MGA nor Bryant had produced

5   previously many of these documents.

6            Linker's testimony and the documents he produced, including emails

7   and other documents relating to Bratz that pre-dated Bryant's departure from Mattel

8   and that had not been produced by MGA or Bryant, established that the Bratz

9   project was much further along before Bryant left Mattel than MGA and Bryant had

10  claimed.   For example, before Linker's testimony, MGA had produced an email

11  relating to Bratz development that Linker's design partner, Liz Hogan, had sent to

12  MGA on October 23, 2000, a date which was conveniently after Bryant left Mattel.

13  MGA, however, had not produced the earlier emails—those pre-dating Bryant's last

14  day of employment at Mattel—that Hogan had exchanged with MGA on that very

15  same subject.[35]  Mattel obtained those only when Linker produced them pursuant to

16  subpoena.   These were not the only documents that MGA withheld.   Among

17  Linker's production was a key design drawing for the three-dimensional Bratz

18  dolls—a drawing Bryant previously testified at his deposition that he had not created

19  until November 2000 after he had left Mattel.[36]   Linker's testimony and the

---

[33]  See, e.g., Rhee Invoice from MGA's Production, Zeller Dec., Exh. 12.
[34]  Deposition of Steven Linker ("Linker Deposition"), dated September 13, 2006, at 56:21-59:23, 66:7-67:9, 76:22-78:23, 80:16-91:5, Zeller Dec., Exh. 13; Hogan emails, Zeller Dec., Exh. 14; packet produced by Steve Linker that he received from MGA on October 19, 2000 that includes a Bratz design drawing by Carter Bryant, Bates No. SL00044, Zeller Dec., Exh. 15.
[35]  Hogan email from MGA's Production, Zeller Dec., Exh. 16.
[36]  Deposition of Carter Bryant ("Bryant Deposition") at 350:16-350:25, 351:15-353:13, 527:17-528:20, Zeller Dec., Exh. 17; Bratz design drawing by Carter Bryant, Zeller Dec., Exh. 18.

EXHIBIT 7 PAGE 50

7209/2046181.3

1   documents he produced, however, prove that MGA itself gave that same design

2   drawing (as well as other Bratz development documents) to Linker at a meeting with

3   MGA on October 19, 2000, <u>before</u> Bryant left Mattel.[37]   It was only after Linker's

4   deposition and MGA's glaring omissions had been revealed that MGA then

5   produced documents referencing the October 19, 2000 meeting between Linker and

6   MGA that Linker had testified.[38]

7          Although MGA produced a few documents referencing the October 19,

8   2000 meeting with Linker, and did so only after MGA's failure to produce highly

9   material documents was exposed, MGA still has not produced any drafts,

10  communications or similar documents relating to the materials that MGA gave

11  Linker before Bryant left Mattel.  Those materials, which include finished design,

12  marketing and pricing documents for Bratz, undoubtedly did not emerge from thin

13  air in full-blown fashion.  In fact, Hogan's emails show that the packaging team

14  needed detailed information about the Bratz doll products—size, piece-count, price,

15  etc.—before she and Linker could provide a quote for Bratz packaging work to

16  MGA.[39]   Yet, to this day, MGA has not produced documents or drafts showing how

17  or when the Bratz products reflected in the MGA materials that Linker produced

18  were designed, or how or when the retail prices, the product piece counts, the

19  information developed to describe each doll, and the prices for the dolls and

20  fashions that are listed in the materials were determined.

21          Further highlighting the point, there is, overall, an enormous disparity

22  between the extensive work that Mattel is now learning was done on Bratz

23  development before Bryant left Mattel and the minimalistic source documentation

24

25      [37]   Linker Deposition at 77:6-78:23, Zeller Dec., Exh. 13; Bratz design drawing

26  by Carter Bryant produced by Steve Linker, Zeller Dec., Exh. 15.

        [38]   Day Planner Pages, Zeller Dec., Exh. 19.

27      [39]   Hogan emails, Zeller Dec., Exh. 14.

28

EXHIBIT 7 PAGE 51

07209/2046181.3

1 that MGA has produced for it.   Just two days before Linker's deposition in
2 September 2006, MGA produced for the first time bare bones invoices showing that
3 one vendor alone had already billed at least 169 hours for Bratz work she performed
4 before Bryant left Mattel.[40]  Although this and other evidence thus strongly suggests
5 that extensive Bratz design and development was underway before Bryant left
6 Mattel, many categories of documents and communications that undoubtedly were
7 created as a matter of course reflecting the particulars of all this activity (and likely
8 also showing additional Bratz activity) have not been produced by MGA and
9 Bryant.

10         Mattel has reason to believe other responsive documents are being
11 withheld as well.   MGA is obligated to produce bank records in its possession,
12 custody or control relating to products at issue in this case per a subpoena served on
13 Union Bank of California and an agreement the parties reached relating to those
14 records on June 20, 2006.[41]   Pursuant to this agreement, MGA produced certain
15 cancelled checks from Union Bank.[42]   However, Mattel's request was broader than
16 simply cancelled checks, encompassing signature cards, bank statements and deposit
17 slips.[43]   In addition, relevant and responsive checks appear not to have been
18 produced.  Cancelled checks from the Union Bank records and calendar entries from
19 a recent MGA production on January 4, 2007 identify David Dees as being a design

---

20

21   [40]  See Marlow invoices produced by MGA, Zeller Dec., Exh. 20.
22   [41]  Per the parties' agreement, MGA's counsel took possession of the documents
23 produced by Union Bank pursuant to the subpoena; MGA then was to produce any
documents relating to products at issue in the litigation and to produce documents
24 relating to particular vendors at Mattel's request.  See Zeller Dec., ¶ 23; see also
Subpoena of Union Bank of California, Zeller Dec., Exh. 21.
25   [42]  See, e.g., Cancelled checks produced by Union Bank, Zeller Dec., Exh. 22.
26   [43]  See Attachment A to Subpoena of Union Bank of California, Zeller Dec.,
27 Exh. 21; see also Dees Invoices from Union Bank's production, Zeller Dec., Exh.
22.
28

EXHIBIT 1 PAGE 52

07209/2046181.3

1    vendor who billed an extensive amount of work on Bratz—$4,000 worth as of

2    February 2001 and another $7,015 by mid May 2001.[44] Nonetheless, Mattel has not

3    received other documents showing the design work that he did on the project before

4    then. MGA was obligated under Mattel's Requests to provide documents relating to

5    Dees, a vendor who worked on Bratz during the relevant time period. Moreover,

6    per the parties' agreement relating to the Union Bank records, Mattel can request

7    documents for a specific vendor by name; however, Mattel should not be forced to

8    guess which vendors performed work on Bratz.

9         Mattel cannot be expected to receive only those MGA documents it

10   happens to obtain from third parties who have responsive documents—particularly

11   given that MGA and Bryant also had failed to identify third parties who have

12   relevant knowledge and documents, such as Linker, in their Interrogatory

13   responses.[45] MGA should be compelled to produce all documents—regardless of

14   date of creation—relating to the origin, creation, conception, design and

15   development of Bratz.

16

17   **III.**    **MGA's Refusal To Produce Any Documents From Its Hong Kong**

18         **Subsidiary Is Contrary To Law.**

19         MGA's Hong Kong office, MGA Entertainment (HK) Limited ("MGA

20   Hong Kong"), played a key role in Bratz and has documents and things responsive

21   to Mattel's document requests. MGA, however, refuses to produce documents or

22   things from MGA Hong Kong, and instead has limited its production to only

23

24

---

25   [44]   Id.; see also Day planner pages, Zeller Dec., Exh. 23.

     [45]   See MGA's Response to Mattel's Interrogatory Nos. 5 & 6, Zeller Dec., Exh.

26   25; see also Mattel's Separate Statement In Support Of Mattel's Motion To Compel,

27   dated February 1, 2007 and filed concurrently herewith, ("Separate Statement") at 60:16-60:26.

28

EXHIBIT 1 PAGE 53

1   communications between MGA in the U.S. and MGA Hong Kong.[46]   MGA

2   maintains that MGA Hong Kong is a separate company not located within the

3   jurisdiction of the United States and that documents and things located there are not

4   under MGA's "possession, custody or control."   However, MGA Hong Kong is

5   controlled by MGA and its central purpose is to implement parent MGA's policy.

6   Therefore, MGA has "legal control" over MGA Hong Kong and should be

7   compelled to produce any documents in its Hong Kong subsidiary's possession,

8   custody or control.  See In re ATM Fee Antitrust Litigation, 233 F.R.D. 542, 544

9   (N.D. Cal. 2005) (where the court ordered a company to produce any documents in

10   its wholly-owned subsidiary's custody that were responsive to the plaintiffs' requests

11   for production of documents as well as answer any interrogatories related to

12   information within the possession of the subsidiary).

13          Like MGA, the defendant in ATM conceded that its subsidiary had

14   responsive documents, but it contended that because the subsidiary was a "separate

15   legal entity," the defendant company did not have control over the documents. Id. at

16   545.   The ATM court rejected this argument, instead applying the "legal control

17   standard" for a parent's obligation to produce documents in the possession and

18   custody of a subsidiary.  Id. at 545 (internal cites omitted).  A parent company has

19   "legal control" of its subsidiary if it has "the legal right to obtain documents upon

20   demand" and not simply the defendant's practical ability to obtain the documents

21   requested.  See U.S. v. Internaitonal Union of Petroleum and Industrial Workers,

22   870 F.2d 1450, 1463 (9th Cir. 1989).

23          Even based upon MGA's limited, heavily sanitized production, it is

24   clear that MGA exercises legal control over MGA Hong Kong.  There are numerous

25   emails in which MGA's CEO Isaac Larian gives specific direction to MGA Hong

26

27   _____

    [46]   Zeller Dec., Exh. 7.

28

EXHIBIT 7 PAGE 54

1  Kong about everything from personnel issues in Hong Kong to more general
2  manufacturing and sales issues.[47]  In addition, Mr. Larian and Jahangir Makabi, both
3  of whom are MGA officers, are the sole directors of MGA Hong Kong.  Bryant also
4  personally visited and worked at MGA Hong Kong in the Fall of 2000 to work on
5  Bratz.[48]  Obtaining discovery from MGA Hong Kong is critical because MGA Hong
6  Kong was intimately involved with the production of Bratz in 2000 and early 2001;
7  thus it unquestionably has internal documents and things that can shed light on this
8  critical, and contested, time period.  Further, in its Interrogatory responses, MGA
9  identifies only five people in the United States and then "various people then
10  employed in Hong Kong" as being involved in the conception, origin, creation, etc.
11  of the first embodiments of Bratz.[49]  On the one hand, MGA states that it is not
12  obligated to produce responsive documents from MGA Hong Kong in response to
13  the Requests; simultaneously, MGA states that it does not have to identify by name
14  individuals in Hong Kong who worked on Bratz in response to the Interrogatories
15  because their identities can be determined from the documents.  Neither argument
16  taken alone has merit, but together they certainly must fail.

17

18  **IV.**  **MGA's Failure To Produce Prior Testimony Regarding Bratz Frustrates**
19      **Mattel's Ability To Gather Evidence And Identify Witnesses.**

20          Initially, MGA categorically refused to produce any declarations,
21  affidavits or other sworn written statements of any type by MGA that referred or
22  related to Bratz or Angel—the name that Rhee testified she was told to use on her

23
24
25  [47]  See Larian email produced by MGA, Zeller Dec., Exhs. 26.
26  [48]  See Bryant Deposition at 489:12-490:9, Zeller Dec., Exh. 17.
27  [49]  See MGA's Response to Mattel's Interrogatory No. 5, Zeller Dec., Exh. 25;
    see also Separate Statement at 60:11-61:20.
28

EXHIBIT 1 PAGE 55

-13-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

early invoices for Bratz.[50]   Similarly, MGA categorically refused to produce any transcripts or video and/or audio recordings of statements made by MGA under oath that referred or related to Bratz or Angel.[51]   MGA also refused to produce any documents that referred or related to Bratz or Angel that were filed, submitted and served in the suit and/or arbitration proceedings brought by Farhad Larian—a former MGA executive and Isaac Larian's brother.[52]   MGA maintained that such documents were not relevant to the subject matter of the lawsuit or reasonably calculated to lead to the discovery of admissible evidence.[53]

This argument is without merit.   Any statements of fact made by MGA in other sworn testimony relating to the timing, origins, and creation of Bratz or Angel are relevant to this case in myriad ways, including for purposes of identifying additional witnesses, establishing admissions of fact and impeachment through prior statements.   See Bohannon v. Honda Motor Co., Ltd., et al., 127 F.R.D. 536, 540 (D. Kan. 1989) ("The transcripts of deposition testimony given and approved by employees of [defendant]...are discoverable statements.")   The prior sworn statements by MGA that Mattel has been able to obtain through a third party—but that were never produced by MGA—revealed that (1) Bratz was first exhibited in the fall of 2000 and (2) key Bratz design drawings that Bryant had testified in this

---

[50]   Zeller Dec., Exh. 7.
[51]   Id.
[52]   Id.   Farhad Larian brought suit against his brother because Farhad claimed that Isaac had concealed the development of Bratz beginning in early 2000 from Farhad in order to buy Farhad's share of the company at a reduced price.   Thus materials in the case would be directly relevant to the origins and timing of Bratz.
[53]   Id.

EXHIBIT 7 PAGE 56

J7209/2046181.3

-14-

1   case were created in 1998 were, in fact, created in 2000.[54]   Both of these facts are

2   obviously highly relevant to the present suit.

3        Over the course of the parties' meet and confers, MGA stated that it

4   would explore the possibility of producing such testimony and sworn statements if

5   Mattel agreed to produce testimony regarding products such as Flavas.[55]   However,

6   such products are at best only tangentially related to this suit.   While Mattel may be

7   amenable to producing such materials, Mattel should not have to barter to get

8   discovery to which it is clearly entitled and has long sought.    Such testimony

9   relating to Bratz is particularly important because the early development of Bratz is

10  highly contested in this case and MGA has made conflicting public statements over

11  the years regarding the origins of Bratz—attributing Bratz to everyone from Larian's

12  son to Larian himself to the result of some sort of doll design contest.[56]

13

14  **V.   MGA's Failure To Provide Full And Complete Answers To Mattel's**

15  **Interrogatories Relating To The Origins Of Bratz Frustrates Mattel's**

16  **Ability To Gather Evidence And Identify Witnesses.**

17        The deficiencies in MGA's production are magnified by the equally

18  serious shortcomings in MGA's responses to Mattel's Interrogatories relating to the

19  origins of Bratz.[57]

20

21  _____

22

23  [54]   See Larian affidavit, Zeller Dec., Exh. 27;   see also Lee Shiu Cheung
    affidavit and Exhibit LSC-3 to the affidavit, Zeller Dec., Exh. 28.

24  [55]   Torres Letter, Zeller Dec., Exh. 36.

25  [56]   See, e.g., Zeller Dec., Exh. 29.
    [57]   See Mattel, Inc.'s Second Set of Interrogatories to Defendant MGA

26  Entertainment, Inc. (the "Interrogatories"), Zeller Dec., Exh. 24; MGA's Response to

27  Mattel's Second Set of Interrogatories (the "Interrogatory Responses"), Zeller Dec.,
    Exh. 25.

28  EXHIBIT __7__ PAGE __57__

1    As an initial matter, MGA failed to serve a response to Mattel's Second

2    Set of Interrogatories within the 30 days required by Rule 33(b)(3).[58]  By failing to

3    serve a timely response (or timely objection), MGA has waived all objections.  "Any

4    ground not stated in a timely objection is waived . . . ."  Federal Rule of Civil

5    Procedure 33(b)(4).   Any objection not made within 30 days of service of an

6    interrogatory is waived unless the responding party seeks an extension of time to

7    answer or object.  Id.; see Moore's Federal Practice § 33.174[2]; Davis v. Fendler,

8    650 F.2d 1154, 1160 (9th Cir. 1981) (holding that untimely service of response to

9    interrogatories waives objections); Richmark Corp. v. Timber Falling Consultants,

10   959 F.2d 1468, 1473 (9th Cir.) (stating that "failure to object to discovery requests

11   within the time required constitutes a waiver of any objection."), cert. denied, 506

12   U.S. 948 (1992).  Because MGA failed to provide full and complete responses

13   (without objection), Mattel may move the Court to order MGA to do so.  See, e.g.,

14   Richmark Corp., 959 F.2d at 1473.

15        Furthermore, MGA's responses to Mattel's Second Set of

16   Interrogatories were, and remain, substantively deficient.  Indeed, MGA's responses

17   to many of the Interrogatories simply consist of improper objections without any

18   substantive response.  For example, the instructions to Mattel's Interrogatories direct

19   _____

20   [58]   MGA's unverified Responses to Mattel's Second Set of Interrogatories were

21   faxed, without proof of service, at approximately 10:30 p.m. on May 30, 2006—six
     days after they were due.  Mattel personally served its Second Set of Interrogatories

22   to Defendant MGA Entertainment, Inc. on April 28, 2005.  Pursuant to Federal Rule

23   of Civil Procedure 33(b)(3), MGA had thirty (30) days to respond to Mattel's
     interrogatories.  Judge Manella issued an order staying proceedings on May 20,

24   2005.  At the time of the order, seven days remained for MGA to respond to Mattel's

25   Second Set of Interrogatories.  Judge Larson issued an order lifting the stay on May
     17, 2006.  Accordingly, taking the stay into account, MGA's responses were due no

26   later than May 24, 2006.  See Zeller Dec., Exh. 30; see also Court's Order Staying

27   Discovery in Mattel, Inc. v. Bryant; Bryant v. Mattel, Inc.; and MGA Entertainment,
     Inc. v. Mattel, Inc., dated May 20, 2005, Zeller Dec., Exh. 31.

28

EXHIBIT 7 PAGE 58

-16-

1  MGA to provide particulars about responsive individuals such as each individual's

2  name, address, telephone number and relationship to MGA.[59]   MGA completely

3  disregarded this.  Interrogatory No. 5 asked MGA to identify each person who was

4  involved in the creation, design and development of Bratz.   In response, MGA

5  named a few individuals who were known already in this litigation, in addition to

6  wholly unspecified "various people then employed in Hong Kong, the names of

7  whom are contained in documents previously produced by MGA."

8            MGA's responses violate Fed. R. Civ. P. 33(d).   Rule 33(d) requires

9  MGA to identify referenced documents specifically and in detail, either by their

10  Bates numbers or else through a sufficiently detailed description of them to allow

11  Mattel to ascertain which specific documents are being referenced.  See, e.g., Miller

12  v. Federal Express Corp., 186 F.R.D. 376, 385 (W.D. Tenn. 1999) (holding that,

13  under Rule 33(d), "[t]he responding party must specify the documents from which

14  the answer may be derived with sufficient detail to permit the requesting party to

15  locate it" and compelling party to identify such documents "by Bates numbers the

16  documents" being referenced); VNA Plus, Inc. v. Apria Healthcare Group, Inc.,

17  1999 WL 386949, at *5 (D. Kan. 1999) (party may not "simply refer generically" to

18  documents produced in interrogatory response).   This deficiency is present in

19  MGA's response to Interrogatory No. 6 as well.   MGA's vague, generalized

20  reference to a heavily redacted, incomplete production also compounds the

21  shortcomings of an already deficient answer.  The particular information requested

22  in Mattel's instruction is exactly the type of information—among other

23  information—that MGA redacted in its production or have explicitly stated it is

24  withholding, such as the MGA Hong Kong documents.

25

26

27  [59]   See Interrogatories at 4:1-5:5, Zeller Dec, Exh. 24.

28  EXHIBIT 7 PAGE 59

1        Moreover, MGA simply objects to Interrogatory Nos. 7-9 and 11

2   without providing any substantive response. As noted above, these objections were

3   waived by MGA's failure to timely respond to the Interrogatories. Even if the

4   objections were timely, MGA's objections don't hold water. Interrogatories 7 and 8

5   seek critical evidence that goes to the heart of this case—the earliest representations

6   of Bratz and the project known as "Angel." As the Discovery Master has noted, the

7   rights to Bratz are at issue in this case.[60] Further, MGA contests Anna Rhee's

8   testimony that work she performed work in June 2000 on Bratz, contending that

9   Rhee actually worked on a different project identified as "Angel" or "Prayer Angels"

10   at that time. Interrogatory No. 9 asks MGA to identify each sworn statement that

11   refers or relates to the origins and creation of Bratz. As with the evidence sought by

12   Interrogatory Nos. 7 and 8, this information is critical to this case. Finally,

13   Interrogatory No. 11 asks MGA to identify phone numbers for its CEO Isaac Larian.

14   Given Mr. Larian's personal involvement in Bratz, this information may bear on the

15   defendants' story regarding the timing of Bratz. Without the numbers, Mattel cannot

16   check for them against phone records. MGA has no basis for withholding any of

17   this information and, therefore, should be compelled to provide full and complete

18   answers to the Interrogatories in question.

19

20   **VI.   MGA Should Be Sanctioned.**

21        Under the Federal Rules, a party bringing a motion to compel is entitled

22   to the "reasonable expenses incurred in making the motion, including attorney's fees,

23   unless the court finds that the motion was filed without the movant's first making a

24   good faith effort to obtain the disclosure or discovery without court action, or that

25   the opposing party's nondisclosure, response or objection was substantially justified,

26   _____

27   [60]   Discovery Master's Order at 2, Zeller Dec., Exh. 1.

28   EXHIBIT 7   PAGE 60

07209/2046181.3

-18-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1  or that other circumstances make an award of expenses unjust." <u>Fed. R. Civ. P.</u>
2  <u>37(a)(4)</u>.  The burden of establishing substantial justification is on the party being
3  sanctioned.   <u>Hyde & Drath v. Baker</u>, 24 F.3d 1162, 1171 (9th Cir. 1994).
4  Independently, sanctions may be imposed under 28 U.S.C. § 1927, which provides
5  that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably
6  and vexatiously may be required by the court to satisfy personally the excess costs,
7  expenses, and attorneys' fees reasonably incurred because of such conduct."
8  Sanctions under this section are appropriate "for conduct that, viewed objectively,
9  manifests either intentional or reckless disregard of the attorney's duties to the
10  court." <u>RTC v. Dabney</u>, 73 F.3d 262, 265 (10th Cir. 1995), citing <u>Braley v.</u>
11  <u>Campbell</u>, 832 F.2d 1504, 1512 (10th Cir. 1987).

12          Sanctions are called for here.  MGA cannot offer any legitimate excuse
13  for its repeated failure to produce clearly responsive documents and fully answer
14  Interrogatories on matters that go to core issues in this case.  MGA has asserted
15  numerous objections that have no basis in law or fact.  MGA has withheld, and
16  continues to withhold, indisputably relevant information.  MGA has redacted vast
17  portions of documents, stripping them of salient information, and rendering them
18  unintelligible.    And MGA has produced documents that are demonstrably
19  incomplete, including faxed communications that omit crucial information.  Most
20  troubling, MGA has been caught hiding the ball: failing to produce highly relevant
21  MGA documents until after Mattel discovers the documents via third parties.
22  MGA's actions are contrary to its obligations and imperil the truth-seeking function
23  of the Court.

24          Throughout the meet and confer process, MGA claimed it would
25  remedy the deficiencies with its production, but never actually took any action to do
26
27
28  EXHIBIT _7_ PAGE _61_

1  so.[61]  When Mattel again approached MGA after the holidays to obtain compliance
2  in the hopes of avoiding motion practice, MGA promised that it would rectify some
3  unspecified problems with the May 2005 production, but then still did not do so.
4  When queried as to its intent, during a meet and confer on January 26, 2007, all
5  MGA would commit to was making superficial changes to its production, such as
6  correcting illegible text and cut-offs, rather than addressing the production's
7  substantive defects.[62]  Although MGA represented at that time that it would review
8  the Discovery Master's recent Order compelling Bryant's production to determine
9  whether or not MGA would reconsider any of its positions and that it would let
10  Mattel know by January 30, that date came and went without further response by
11  MGA.[63]

12         MGA's stratagems are the definition of unreasonable and vexatious,
13  and MGA and its counsel should be sanctioned for the fees and costs Mattel has
14  been forced to expend as a result of its evasions in connection with its document
15  production and Interrogatory responses.  Mattel therefore requests that MGA be
16  ordered to pay $4,700.00 as partial reimbursement for the fees and costs that Mattel
17  has incurred on this Motion.[64]

18
19
20
21
22
23
24

25  [61]  See Zeller Dec., ¶ 34, Exh. 32-43.
26  [62]  See Zeller Dec., Exhs. 42 & 43.
27  [63]  See Zeller Dec. Exh. 43.
28  [64]  See Zeller Dec., ¶ 57.

EXHIBIT 7 PAGE 62

1

2                                    **Conclusion**

3            In light of the myriad deficiencies in MGA's production, Mattel

4    respectfully requests that MGA be compelled to fully answer Mattel's

5    Interrogatories and to produce all documents responsive to Mattel's document

6    requests, including, most importantly, those relating to the origin, conception,

7    design and development of Bratz.

8

9    DATED:  February 2, 2007          QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
10

11                                     By
                                          Michael T. Zeller
12                                        Attorneys for Plaintiff and Cross-Defendant
                                          Mattel, Inc.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   EXHIBIT 7 PAGE 63