# EXHIBIT 8

CONFORMED COPY

LODGED    FILED

2007 MAY 16  PM 1:59  2007 MAY 16  PM 2:00

CLERK U.S. DISTRICT COURT  CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.    CENTRAL DIST. OF CALIF.
RIVERSIDE                  RIVERSIDE
BY                         BY

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:   (415) 774-2611
4  Facsimile:   (415) 982-5287

5

6

7                UNITED STATES DISTRICT COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9                    EASTERN DIVISION

10

11 | CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12 |        Plaintiff,

13 |   v.                                  Consolidated with
                                           Case No. CV 04-09059
14 | MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15 |        Defendant.                      **ORDER GRANTING MATTEL'S
                                           MOTION TO COMPEL PRODUCTION
16 |                                        OF DOCUMENTS AND
                                           INTERROGATORY RESPONSES BY
17 | CONSOLIDATED WITH                      MGA**
   MATTEL, INC. v. BRYANT and
18 | MGA ENTERTAINMENT, INC. v. MATTEL,
   INC.
19 |

20                    I.  INTRODUCTION

21       On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

22 of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February

23 20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

24 reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under

25 submission pending the parties' submission of a proposed protective order, which was received

26

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                                    1

EXHIBIT B PAGE 64

1   on April 23, 2007. Having considered the motion papers and comments of counsel at the hearing,

2   Mattel's motion to compel is granted.

3                          II.  BACKGROUND

4       A.  Requests for Documents

5         In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6   became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7   categories of documents, to be produced in ten days.  MGA filed a motion to quash, which the

8   court granted because of the short amount of time provided for compliance with the subpoena.

9   The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10   some of Mattel's requests.  In particular, the parties agreed to limit production to the "first

11   generation" Bratz dolls.  On August 12, 2004, MGA produced documents.

12        In 2005, the parties stipulated to supplementing their document productions on May 16,

13   2005.  Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14        In September of 2006, MGA made a supplemental production of documents.  On February

15   5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16   with legibility problems.  On February 20, 2007, MGA produced an additional 224 pages of

17   documents to replace earlier produced documents with legibility problems.

18        Mattel now moves to compel MGA to produce documents responsive to its requests.  As a

19   preliminary matter, Mattel contends that MGA's production is deficient because it contains

20   redactions and cut-off text.  Further, Mattel contends that MGA's production is incomplete with

21   respect to essentially five categories of documents.  First, Mattel contends that MGA is

22   withholding documents relating to the origins of Bratz and Bryant's work for MGA.  Mattel

23   believes that MGA's production is incomplete based upon its review of documents that have been

24   produced by third party Steven Linker.  According to Mattel, Linker's documents from October

25   of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26   previously represented.  Mattel also contends that MGA's responses to the document requests

27

28

EXHIBIT _8_ PAGE _05_

1    contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2    responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3    show when certain dates relating to Bratz occurred.  Mattel contends that these "carve outs

4    purport to allow MGA to cherry-pick what it will and will not produce to Mattel."  Mattel's

5    Separate Statement at 17:11-13.  Mattel also contends that the carve-outs fail to provide notice of

6    what is or is not being withheld.  Mattel also contends that MGA's objections based upon its

7    confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8    protective order in place.  In addition, Mattel contends that MGA's objection to producing

9    documents relating to activities or conduct in foreign countries is wholly improper because those

10   documents may contain information relevant to Mattel's claims.

11        Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12   such documents relate to the "first generation" Bratz dolls.  Mattel argues that whether the work

13   ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14   discovery purposes.  Mattel contends that the works created by Bryant during his Mattel

15   employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16   a Bratz doll released at a particular time.[1]

17        Mattel next contends that MGA is improperly withholding documents about designs

18   Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19   be derivative of work he did when employed by Mattel.  Mattel contends that it is entitled to

20   explore whether such works and the profits from Bratz dolls other than the "first generation"

21   Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22   and damages.  Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23   improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24   information as well as MGA's unfair competition claims.

25   _____

26        [1]  Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
     to compel Bryant to produce documents.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                          3

EXHIBIT 8 PAGE 66

1        Mattel also asserts that MGA is improperly withholding documents relating to products,

2    services and matters other than those relating to "dolls."  According to Mattel, it has evidence that

3    Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4    Mattel.  Mattel contends that any such ideas or contributions may belong to it pursuant to the

5    Inventions Agreement.

6        Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7    payments for the "first generation" Bratz dolls.  Mattel asserts that such information is relevant

8    because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9    (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10    damages; and (3) payments may show when and what trade secret information Bryant and other

11    defendants allegedly misappropriated from Mattel.

12        Fourth, Mattel seeks documents relating to MGA's agreements with Bryant.  Mattel

13    contends that all agreements between Bryant and MGA are relevant, not just the original

14    September 18, 2000 agreement.  In particular, Mattel contends that it is entitled to discover all

15    documents relating to MGA and Bryant's alleged joint defense agreement because such

16    information would be relevant to demonstrate bias and lack of credibility.

17        Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18    statements from other cases that refer or relate to Bratz or Angel.  Mattel contends that such

19    information may reveal relevant information about the date of creation of Bryant's Bratz

20    drawings.

21        In response, MGA denies withholding responsive documents and asserts that it has

22    produced volumes of documents responsive to Mattel's requests.  In particular, MGA represents

23    that it has produced all responsive and relevant documents that it was able to locate in response to

24    request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70.  Further, MGA asserts that even

25    before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26    motion.  In particular, MGA represents that it is diligently working to produce documents related

27

28

EXHIBIT _8_ PAGE _67_

1    to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2    49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed

3    Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4    have been released on the market.  In addition, MGA represents that it has agreed to produce

5    documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More

6    specifically, MGA represents that it agreed to review and produce documents provided to it by

7    Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8    Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.

9    Therefore, MGA views the motion as unnecessary.

10         MGA next contends that Mattel's motion should be denied for the following additional

11    reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for

12    unreleased products.  MGA asserts that its product design documents for its unreleased toy

13    concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that

14    designs and drawings for products currently under development, over six years after Bryant first

15    created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that

16    documents relating to unreleased products are ordered produced, MGA requests a protective order

17    under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18    than the current protective order provides.  In the alternative, MGA requests that any order

19    compelling production of documents relating to unreleased products should essentially be stayed

20    until after MGA's products are publicly released.

21         Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22    attorneys' fees because the information is privileged.  Furthermore, MGA contends that the

23    information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

EXHIBIT 8 PAGE 68

in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's Opposition at 24:9-12.[2]

Third, MGA asserts that Mattel is not entitled to review all non-public witness statements and litigation documents concerning Bratz for a variety of reasons, including because Mattel has refused to produce similar types of documents. More significantly, MGA contends that Mattel's requests for non-public witness statements are "a blatant attempt to avoid the discovery limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations imposed by this Court." MGA's Opposition at 25:6-7. MGA explains its position as follows. MGA is involved in litigation against a number of counterfeiters and infringers in Asia. In 2003, Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel abandoned its claims based upon "Toon Teens" in this court. Thereafter, those defendants took the position that MGA did not own, and therefore could not enforce, the rights to Bratz. MGA was thus forced to litigate the issue of ownership. MGA contends that "[i]n effect, by prompting foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created a situation in which MGA has been forced to give testimony and provide evidence related to issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

Fourth, MGA contends that Mattel is not entitled to documents concerning a family dispute between MGA's chief executive officer and his brother because such documents are in no way relevant to this lawsuit. MGA explains that the brothers were involved in an arbitration proceeding relating to MGA's CEO's purchase of his brother's interest in MGA. Moreover, MGA contends that the brothers were bound by a protective order prohibiting the use of any documents or testimony for any purpose other than the arbitration.

---

[2]    Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

EXHIBIT _8_ PAGE _69_

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2  files because they contain confidential information and are not relevant to the lawsuit. Sixth,

3  MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4  in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd. Lastly,

5  MGA objects to producing documents relating to any testing performed to determine the date that

6  Bratz documents were created. MGA contends that such discovery is premature and should not

7  proceed until experts are designated.

8    B. Interrogatories

9    On April 28, 2005, Mattel served its Second Set of Interrogatories. On May 20, 2005,

10  however, the district court stayed the action. On May 17, 2006, the district court lifted the stay.

11  On May 30, 2006, MGA responded to the interrogatories.

12    Mattel contends that MGA's responses to the interrogatories were untimely. Further,

13  Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14  because they lack substantive information and consist almost entirely of objections. MGA

15  responds that the motion is moot because it is prepared to provide supplemental responses to its

16  interrogatories. MGA does not otherwise assert any additional grounds for opposing Mattel's

17  motion to compel responses to interrogatories.

18                                    III. DISCUSSION

19    A. Rule 26 of the Federal Rules of Civil Procedure

20    Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22  party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

23  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24  Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT _B_ PAGE _70_

1    opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2    expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3    the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4    the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5    26(b)(2).

6         B.   Document Requests

7              1.   Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8                   34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9         The requests above seek discoverable information regarding the origins of Bratz and

10   Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11   response to request nos. 6, 26, 27, 32, 33, 34, 35, 55, and 69 (MGA's Opposition at 13:4-5), and is

12   "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13   and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14   14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15   products and documents from MGA Hong Kong.

16        As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17   its production to "relevant and responsive non-objectionable documents" or documents

18   "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19   might be excluding documents that are responsive to the request based upon its unilateral

20   determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21   document requests ordered herein without these restrictions.

                        Design Documents for Unreleased Products

23        MGA's design documents for unreleased products are relevant to Mattel's claims and

24   defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25   parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26   design documents for unreleased products that constitute trade secret information.  See Stipulation

27

28

EXHIBIT  8  PAGE  71

1  to Modify Protective Order; And Proposed Order Thereon ("stipulation").  The parties' stipulation

2  has been approved and entered as an order of the court.  MGA is ordered to produce design

3  documents for unreleased products that are responsive to Mattel's document requests in

4  accordance with the terms of the stipulation and order.

5  <u>Documents from MGA Hong Kong</u>

6      Documents relating to activities or conduct in foreign countries are relevant and

7  discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8  Bratz.  Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9  provides reciprocal discovery from its subsidiaries.

10      Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein.  MGA is ordered to produce

12  documents from MGA Hong Kong.

13      Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15      2. <u>Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,</u>

16  <u>61, 63, 66, 67, 70, 88, 90, 91</u>

17      Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls.  MGA represents, however, that it has agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21      As stated previously, design documents for yet unreleased products are relevant and

22  discoverable.  <u>See</u> Order Modifying Protective Order.  Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25      //

26      //

27

28

EXHIBIT 8 PAGE 72

**3.** <u>MGA's Payments to Bryant (Nos. 43, 45)</u>

MGA represents that it has already agreed to produce documents related to Bratz, without limiting its production to "first generation" Bratz.  MGA's motion at 13:7-14:3.  Nevertheless, Mattel is entitled to an order compelling production of such documents by a date certain.  Mattel's motion is granted with respect to request nos. 43 and 45.

**4.** <u>MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)</u>

MGA represents that it has already agreed to produce non-privileged documents responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not relevant (MGA's motion at 13:7-14:3).  These requests seek documents relating to fee or indemnity agreements between MGA and Bryant .

Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility.  Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50.  Any responsive documents withheld on the basis of a privilege must be properly identified in a privilege log.

**5.** <u>Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40, 41,</u>

In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits, and other sworn written statements from cases that refer or relate to Bratz or Angel.  Mattel anticipates that these documents could provide evidence relating to the conception date for Bratz.

Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception date for Bratz.  MGA admits in its opposition brief that this issue was litigated in its suits against alleged counterfeiters and infringers.[3]  The issue also appears to have been raised in the arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian.  In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

---

[3]  Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

EXHIBIT 8 PAGE 73

1    that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2    documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3    protective order that prohibits the use of any documents or testimony for any purpose other than

4    the arbitration.  MGA, however, has not provided any evidence of the protective order.

5    Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6           6. Documents Regarding Date-Testing (Request No. 92)

7           Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8    from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9    testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10   and including without limitation all results and reports relating thereto."  MGA contends that the

11   request is premature, and should proceed in the course of expert discovery.

12          The request calls for relevant discovery and there is no basis for delaying production of

13   responsive documents, other than expert reports.  The timing of expert reports is governed by

14   Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15          C. Interrogatories

16          Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17   MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18   responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19   interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20   court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21   served.  The district court lifted the stay on May 17, 2006.

22

23

24

_____

25       [4] In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's

26   personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore
     should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                          11

EXHIBIT __8__ PAGE __74__

1    Neither party has cited to any caselaw governing the calculation of the 30-day period

2    when there is an intervening stay in discovery.  In the absence of any caselaw, MGA's responses

3    will be treated as timely in order to preserve any valid objections MGA may have asserted.

4    Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5    conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6    tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7    before December 31, 2001, including a description of each person's role and the start and end

8    dates of each person's involvement.  In response, MGA asserted numerous objections, but did

9    provide the names of five individuals.

10    The interrogatory clearly seeks information relevant to the claims at issue.  MGA's

11    objections are without merit.  The interrogatory is not vague, ambiguous, compound or overbroad.

12    Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13    for confidential, proprietary or commercially sensitive information, or seeks information

14    protected by the attorney-client privilege.  Furthermore, MGA's response is incomplete insofar as

15    it fails to provide the description of each person's role and the start and end dates of each person's

16    involvement.  Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17    5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18    Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19    embodiment of Angel.  MGA is ordered to provide a complete response to Interrogatory No. 6 for

20    the reasons previously discussed in connection with Interrogatory No. 5.

21    Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22    December 31, 2001.  In response, MGA asserted numerous objections and did not provide any

23    substantive information.

24    MGA's objections are without merit.  The interrogatory clearly seeks information relevant

25    to establishing when Bryant first conceived Bratz.  The interrogatory is not vague, ambiguous,

26    compound or overbroad.  Nor has MGA carried its burden of establishing that the interrogatory is

27

28

EXHIBIT _8_ PAGE _75_

1   unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2   seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3   provide a complete response to Interrogatory No. 7.

4       Interrogatory No.8 asks MGA to identify each and every embodiment of Angel.  MGA is

5   ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6   discussed in connection with Interrogatory No. 7.

7       Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8   or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9   or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10   substantive information.

11       The interrogatory seeks information relevant to establishing when Bryant first conceived

12   Bratz.  Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13   ordered to provide a complete response to Interrogatory No. 9.

14       Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15   was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16   which each such instance occurred, the location of each show or exhibit, and the identity of

17   persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18   objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19   about January 2001 and New York Toy Fair, New York, in or about February 2001.

20       Once again, MGA's boiler-plate objections are unsubstantiated.  The information is

21   potentially relevant to establish when Bryant conceived Bratz.  Further, the response is

22   incomplete insofar as it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23   to provide a complete response to Interrogatory No. 10.

24       Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25   including without limitation each office, home and cell phone number, in the name of, for the

26   benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28

EXHIBIT 8 PAGE 76

1  January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2  limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous

3  boiler-plate objections.

4        Once again, MGA has failed to substantiate any of its objections with supporting

5  declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to

6  provide a full response to Interrogatory No. 11.

7                              IV. CONCLUSION

8        For the reasons set forth above, Mattel's motion to compel production of documents is

9  granted.  MGA shall produce all non-privileged documents that are responsive to the requests

10  identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except

11  for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's

12  motion to compel interrogatory answers is also granted.  MGA shall produce documents and

13  provide responses to interrogatories consistent with this Order, and produce a privilege log in

14  compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for

15  sanctions is denied.

16        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17  Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21  Dated: May /5, 2007

22                                    HON. EDWARD A. INFANTE (Ret.)
                                      Discovery Master
23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT 8 PAGE 77

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT 8 PAGE 78

# EXHIBIT 9

1  DALE M. CENDALI (admitted *pro hac vice*)
   MICHAEL KEATS *(admitted pro hac vice)*
2  DIANA M. TORRES (S.B. #162284)
   JAMES P. JENAL (S.B. # 180190)
3  O'MELVENY & MYERS LLP
   400 South Hope Street
4  Los Angeles, CA  90071-2899
   Telephone:  (213) 430-6000
5  Facsimile:   (213) 430-6407
   Email:       jjenal@omm.com
6

7  PATRICIA GLASER (S.B. #55668)
   CHRISTENSEN, GLASER, FINK, JACOBS,
8  WEIL & SHAPIRO, LLP
   10250 Constellation Boulevard, 19th Floor
9  Los Angeles, CA  90067
   Telephone:  (310) 553-3000
10 Facsimile:   (310) 557-9815

11 Attorneys for MGA Entertainment, Inc.

12

13            **UNITED STATES DISTRICT COURT**

              **CENTRAL DISTRICT OF CALIFORNIA**
14
                      **EASTERN DIVISION**
15

16 CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)
                                        (consolidated with CV 04-9059 & 05-2727)
17              Plaintiff,

18      v.                              **MGA ENTERTAINMENT INC.'S**
                                        **MEMORANDUM OF POINTS AND**
   MATTEL, INC., a Delaware             **AUTHORITIES IN SUPPORT OF**
19 Corporation,                         **MOTION OBJECTING TO PORTIONS**
                                        **OF THE DISCOVERY MASTER'S**
20              Defendant.              **MAY 15, 2007 ORDER GRANTING**
                                        **MATTEL'S MOTION TO COMPEL**
21                                      **PRODUCTION OF DOCUMENTS AND**
                                        **INTERROGATORY RESPONSES BY**
22                                      **MGA**

23                                      **[Federal Rule of Civil Procedure 72(a);**
                                        **Local Rule 72-2.1]**
24
25 CONSOLIDATED WITH                    Hearing Date:  _____, 2007
   MATTEL, INC. v. BRYANT and           Time:                    a.m.
26 MGA ENTERTAINMENT, INC. v.           Location:      Courtroom 1
   MATTEL, INC.
27

28

   EXHIBIT 9 PAGE 79

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................. 2

II.     BACKGROUND ............................................................................. 4

    A.    Mattel's Seeks Production of Documents Regarding Ink-Testing........ 4

    B.    Mattel Seeks Documents from Bryant and MGA Concerning Unreleased Products ......................................................... 6

    C.    The Special Master Orders Production of Documents and Supplementation of Interrogatories by May 31, 2007 .................... 7

III.    ARGUMENT ................................................................................. 8

    A.    The Special Master's Order Compelling MGA to Produce Documents Concerning Ink-testing is Wrong as a Matter of Law ...... 8

    B.    The Special Master's Order Compelling MGA to Produce Unreleased Product Information for 2007, 2008 and Beyond is Clearly Erroneous .......................................................... 11

        1.    Documents Concerning Unreleased Product Information Are Trade Secrets And Are Not Necessary to Mattel's Prosecution of its Claims ...................................... 11

        2.    Mattel's Requests Are Overbroad ............................ 14

        3.    In the Alternative The Stipulated Protective Order Governing Documents Concerning Unreleased Products Scheduled for Release in 2007 Should be Extended to Cover Products Scheduled for Release in 2008 ................... 15

    C.    The Special Master Imposed An Undue Burden on MGA by Requiring it To Produce Documents and Supplement Interrogatories by May 31, 2007 ........................................ 15

IV.     CONCLUSION ............................................................................. 16

EXHIBIT 9 PAGE 80

-i-

# TABLE OF AUTHORITIES

**Page**

*CASES*

1 Fed. R. Serv. 3d 609 (S.D.N.Y. 1985) .................................................................. 14

28 U.S.C. §636(b)(1)(C) ............................................................................................ 8

Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir.) ................................................................................................................. 12

Fed. R. Civ. P. 26(c)(7) ..................................................................................... 11, 12

Fed. Rule Civ. Pro. 26(b)(4)(B) .................................................................................9

In re Napster, Inc. v. Copyright Litigation, 479 F.3d 1078, 1089 (9th Cir. 2007) .............................................................................................................. 8

In re Pizza Time Theatre Securities Litigation, 113 F.R.D. at 96 ......................... 11

In re Shell Oil Refinery 132 F.R.D. 437, 440-441 (D. La. 1990) ..............................9

Moore U.S.A. Inc. v. The Standard Register Co., 206 F.R.D. 72, 75 (W.D.N.Y. 2001) ...........................................................................................9

Moore U.S.A., 206 F.R.D. at 75; Perry v. United States, CA3:96-CV-2038-T, 1997 U.S. Dist. LEXIS 23875 at * 10 (D. Tex. Feb. 4, 1997) .......................................................................................................... 10

see Am. Heavy Moving & Rigging Co. v. Robb Techs., L.L.C., No. 2:04-CV-00933-JCM (GWF), 2006 U.S. Dist. LEXIS 51276, *10 (D. Nev. July 24, 2006) ................................................................................. 12

Tennenbaum v. Deloitte & Touche, 77 F.3d 337, 340 (9th Cir. 1996) .................... 8

USA v. Bell, C 94-20342, 1994 U.S. Dist. LEXIS 17408 at *10 (N.D. Cal. November 9, 1994) ....................................................................................9

EXHIBIT 9 PAGE 81        - ii -

1   This memorandum of points and authorities is filed in support of MGA

2   Entertainment, Inc.'s ("MGA") Objections to Discovery Master's May 15, 2007

3   Order Granting Mattel, Inc.'s ("Mattel") Motion to Compel Production of

4   Documents and Interrogatory Answers by MGA (hereinafter "the Order") in the

5   case originally captioned *Mattel, Inc. v. Bryant,* Case No. CV 04-9059 SGL

6   (RNBx).[1]

7   **I.    INTRODUCTION**

8   This is a *de novo* appeal from an order of the Special Master directing MGA

9   to produce, among other things, the work product of a consulting expert retained by

10  and operating under the direction of its outside trial counsel.  The Special Master's

11  Order violates Rule 26 of the Federal Rules of Civil Procedure, which precludes

12  discovery of communications with a non-testifying consulting expert absent

13  extraordinary circumstances.  The Special Master ordered MGA to produce "all

14  documents that refer or relate to any testing of or sampling from any documents

15  that refer or relate to Bratz or Bryant, including without limitation any such testing

16  or sampling in connection with any ink, paper or chemical analysis to date any such

17  documents and including without limitation all results and reports relating thereto."[2]

18  The only documents responsive to this request are communications with an ink

19  expert retained by MGA's trial counsel.  The Special Master did not cite any

20  extraordinary circumstances in rendering its decision.  Indeed, Mattel did not even

21  argue that there were any extraordinary circumstances sufficient to justify invading

22  MGA's counsel's work product privilege.  Rather, the Special Master merely

23  concluded that an ink test performed by a retained consulting expert might be

24

25  _____

26  [1] The parties met and conferred on May 24, 2007, but were unable to resolve the issues raised in this appeal.

27  [2] Declaration of Kendall J. Burr In Support of MGA Entertainment, Inc.'s Motion Objecting to Portions of the Discovery Master's May 15, 2007 Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA

28  ("Burr Decl."), Exh. 10 at 11:7-11:10.

EXHIBIT 9 PAGE 82

1     "relevant" to the issues in this case.[3]

2        The conclusory assertion that privileged documents and work product might

3     be relevant to litigation does not make them producible. No federal court has

4     required the disclosure of a consulting expert's work product in the absence of a

5     showing of extraordinary circumstances. There is no reason why this Court should

6     be the first to do so. MGA respectfully submits that the Special Master's Order is

7     contrary to controlling law and should be vacated and reversed.

8        The Special Master also ordered MGA to produce numerous documents and

9     drawings related to *unreleased* products -- MGA's most valuable and highly

10    protected trade secrets -- including products currently in development and

11    scheduled for release in 2007, 2008 and beyond.[4] Mattel never even asked for these

12    documents in discovery -- the Special Master simply entered an order broad enough

13    to encompass them. These documents have absolutely no bearing on the issues in

14    this phase of the litigation, namely, whether Carter Bryant ("Bryant") breached his

15    employment agreements while working at Mattel, and whether Bryant

16    misappropriated Mattel's "property" when he left Mattel to work with MGA on his

17    "Bratz" concept. Because these documents are not essential to Mattel's case, the

18    risk of disclosure of MGA's most highly prized trade secrets outweighs Mattel's

19    need to obtain these documents. Moreover, the required production is overbroad

20    and imposes a severe burden on MGA because it requires MGA to produce *all* of

21    its unreleased product drawings from 2001 and beyond to the very same entity,

22    Mattel, which has been misappropriating MGA's intellectual property for the past

23    six years.

24        MGA respectfully submits that the Special Master's Order is clearly

25    erroneous and should be vacated and reversed. In the alternative, MGA seeks

26    extension of the modified protective order entered in this case to unreleased

27

28

---

[3] *Id.* at 11:12-11:13.

[4] *Id.* at 8:23-9:4.

**EXHIBIT 9 PAGE 33**

1  products scheduled for release in 2008.

2       Lastly, the Special Master ordered MGA to produce by May 31, 2007, *all*

3  documents responsive to Mattel's requests (including volumes of documents

4  referring or relating to "Bratz") from MGA, as well as from MGA's indirect

5  subsidiary in Hong Kong; and to supplement its responses to Mattel's

6  interrogatories.[5]  The issue of timing was not briefed by the parties, was not

7  discussed at oral argument, and it was not anticipated that MGA would be given a

8  mere two weeks and two days to collect, review and produce responsive documents

9  from both MGA and its indirect subsidiary in the Far East and to collect sufficient

10  information to supplement MGA's responses to ten interrogatories.  The Special

11  Master's order patently imposes an undue burden on MGA and should be vacated

12  and reversed.  MGA should be given an additional 60 days to comply with the

13  Special Master's Order.

14  **II.**  **BACKGROUND**

15      **A.**  **Mattel's Seeks Production of Documents Regarding Ink-Testing**

16       On March 14, 2005, Mattel propounded its First Set of Requests for the

17  Production of Documents by MGA which included Request No. 92 (hereinafter

18  "Request No. 92") that refer or relate to "any testing of or sampling" of

19  documents.[6]  MGA refused to respond to this request on the grounds that it sought

20  work product from a consulting expert and was wholly premature with respect to

21  any undesignated testifying expert.[7]  MGA therefore withheld production of

22  documents responsive to this Request because the only existing responsive

23  documents were privileged communications between MGA's outside counsel and a

24  consulting expert.

25       In June 2006, Mattel requested that this Court appoint an expert in the field

26  

_____

27  [5] Burr Decl., Exh. 10 at 14:12-14:14.
   [6] Burr Decl., Exh. 1 at 24:19-24:24.

28  [7] Burr Decl., Exh. 2 at 82:20-82:23.

- 4 -

EXHIBIT 9 PAGE 84

1    of questioned documents examination and ink and paper chemistry analysis.[8]  In an

2    apparent ploy to obtain discovery concerning ink-testing conducted by MGA's

3    consulting expert that it was not otherwise entitled to, Mattel implied in its motion

4    papers that MGA and/or Bryant had destroyed evidence by making holes in "Bratz"

5    drawings.[9]  Mattel's insinuation in its papers was so strong that this Court issued an

6    order to show cause as to why it should not appoint an expert.  At argument,

7    however, Mattel's counsel was forced to concede that no evidence had been

8    compromised.[10]  To convince the Court of the complete inaccuracy of Mattel's

9    accusations, however, MGA and Bryant were forced to explain in general terms

10   certain ink-testing performed by a consulting expert.[11]  The Court denied Mattel's

11   motion.  MGA did not, at that time or at any time since, designate a testifying

12   expert in this area or disclose the results of their expert's work.

13         On February 2, 2007, in yet another attempt to obtain expert discovery to

14   which it otherwise is not entitled, Mattel filed its Motion to Compel Production of

15   Documents and Interrogatory Answers by MGA in which it sought to compel MGA

16   to produce, among other things, documents responsive to Mattel's Request No.

17   92.[12]  The only reference to Request No. 92 in the entirety of Mattel's briefing in

18   support of its Motion to Compel is buried in its "Separate Statement in Support of

19   Mattel's Motion to Compel" in which Request No. 92 is grouped in with numerous

20   other Requests concerning "the origins of Bratz."[13]  Mattel's papers did not identify

21   *any* basis for obtaining access to MGA's consulting expert's work product.

22         MGA argued in its opposition to Mattel's motion to compel that Mattel's

23   Request was premature and that MGA should not be compelled to produce

24

25   [8] *See* Burr Decl., Exh. 3.
     [9] *Id.* at 4:24-7:3.
26   [10] *Id.* at 13:10-13:15.
27   [11] *See* Burr Decl., Exh. 4.
     [12] Burr Decl., Exhs. 6 and 7.
28   [13] Burr Decl., Exh. 7 at 43:6-43:26.

- 5 -

EXHIBIT 9 PAGE 85

documents responsive to this request because it had not yet designated any experts with respect to ink-testing.[14]  Nevertheless, the Special Master ruled that documents concerning ink-testing were "relevant" and that "there [was] no basis for delaying production of responsive documents, other than expert reports." [15]  The Special Master did not address MGA's arguments that Mattel was not entitled to expert discovery until MGA designated testifying experts, nor did the Special Master provide any reason for contravening the Federal Rules of Civil Procedure and well-established precedent which states that the work product of a consulting expert is not discoverable absent a showing of exceptional circumstances.

## B.  Mattel Seeks Documents from Bryant and MGA Concerning Unreleased Products

On January 25, 2007, the Special Master issued an order compelling further production of documents from Bryant.[16]  Mattel took the position that the Special Master's January 25, 2007 Order required Bryant to produce drawings and designs created in 2006 or later irrespective of whether such drawings or designs resulted in a product that already had been released to the public.[17]  MGA, however, objected to producing documents related to unreleased products as being wholly irrelevant to the issues in this phase of the litigation, namely, whether Carter Bryant ("Bryant") breached his employment agreements while working at Mattel, and whether Bryant misappropriated Mattel's "property" when he left Mattel to work with MGA on his "Bratz" concept.  Immediately after issuance of the Special Master's January 25 Order, Mattel filed its February 2, 2007 Motion to Compel, requesting that the Special Master direct MGA to produce documents related to unreleased products.

Because the issue was of such import, MGA and Bryant jointly sought clarification that the Special Master's January 25 Order did not require the

---

[14] Burr Decl., Exh. 8 at 27:9-27:16
[15] Burr Decl., Exh. 10 at 11:12
[16] Burr Decl., Exh. 5.
[17] Burr Decl., Exh. 9 at 9:21-12:8.

- 6 -

EXHIBIT 9 PAGE 86

1  production of drawings or designs for products that have not been released.[18]  In the

2  alternative MGA and Bryant sought a protective order providing that such

3  documents either (a) need not be produced at all; (b) need not be produced until

4  after the products had been released to the public; or (c) would be produced

5  pursuant to a more restrictive protective order than was currently in place.[19]

6      The Special Master denied MGA and Bryant's request for clarification;

7  indicated that his January 25, 2007 order did require production of documents

8  concerning unreleased products scheduled for release in 2007, 2008 and beyond;

9  and entered a more restrictive protective order governing the production of such

10  documents.[20]  In the May 15 Order, the Special Master also directed MGA to

11  produce documents concerning unreleased products.[21]  The Special Master

12  reasoned that these documents were relevant to Mattel's breach of contract claim in

13  the Bryant case, as well as, Mattel's copyright infringement and trade secret

14  misappropriation counterclaims.[22]  Irrespective of the modified protective order,

15  MGA believes that the Special Master's Order compelling production of documents

16  that are irrelevant to the Bryant case and which are overbroad, imposing an undue

17  burden on MGA, is clearly erroneous and should be reversed and vacated.  In the

18  alternative however, MGA seeks extension of the modified protective order to

19  unreleased products scheduled for release in 2008.

20  **C.    The Special Master Orders Production of Documents and Supplementation of Interrogatories by May 31, 2007**

21

22      In connection with the Special Master's May 15 Order, the Special Master

23  directed MGA to produce *all* documents responsive to Mattel's requests (including

24  volumes of documents referring or relating to "Bratz") from MGA, as well as from

25  _____

26  [18] Burr Decl., Exh. 11 at 3:6-3:7.
    [19] *Id.* at 3:8-3:14.

27  [20] *Id.*
    [21] Burr Decl., Exh. 10 at 9:2-9:4.

28  [22] Burr Decl., Exh. 11 at 7:11-7:17.

-7-

**EXHIBIT 9 PAGE 87**

1  MGA's indirect subsidiary in Hong Kong; and to supplement its responses to

2  Mattel's interrogatories.  The issue of timing was not briefed by the parties nor was

3  it discussed at oral argument.  MGA did not anticipate that the Special Master

4  would grant MGA a little more than two weeks in which to collect, review and

5  produce all documents from MGA and its subsidiary in the Far East including all

6  documents that refer or relate to Bratz.  As such, MGA seeks reversal of only that

7  portion of the Special Master's order compelling production of documents and

8  supplementation of interrogatories by May 31, 2007.[23]

9  **III.   ARGUMENT**

10       This Court's review of the Discovery Master's May 15, 2007 Order is *de*

11  *novo.  See* 28 U.S.C. §636(b)(1)(C) ("A judge of the court shall make a *de novo*

12  determination of those portions of the report or specified proposed findings or

13  recommendations as to which objection is made.  A judge of the court may accept,

14  reject or modify in whole or in part, the findings or recommendations made by the

15  magistrate [judge].  The judge may also receive further evidence or recommit the

16  matter to the magistrate [judge] with instructions."); *see also In re Napster, Inc. v.*

17  *Copyright Litigation*, 479 F.3d 1078, 1089 (9th Cir. 2007) (rulings as to the scope

18  of privilege "involve mixed questions of law and fact and are reviewed *de novo*");

19  *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996).  For the

20  reasons discussed below, a (partial) reversal of the Discovery Master's Orders

21  granting Mattel's motions to compel is essential.

22       **A.   The Special Master's Order Compelling MGA to Produce**
23            **Documents Concerning Ink-testing is Wrong as a Matter of Law**

24       Mattel seeks access to the work product of MGA's consulting expert as well

25  as any undesignated experts -- all in advance of the time required by this Court's

26  Scheduling Order for designating experts.[24]  MGA addressed this point in its brief

---

27  [23] Burr Decl., Exh. 10 at 14:12-14:14.

28  [24] The Special Master also ordered on May 16, 2007, among other things, that MGA produce a witness pursuant to Rule 30(b)(6) to give testimony concerning "testing or

**EXHIBIT 9 PAGE 88**

1   in opposition to Mattel's motion to compel, but the Special Master ignored it and

2   ordered MGA to produce documents responsive to Mattel's Request No. 92

3   because (a) the documents are "relevant" and (b) there is no basis to withhold

4   them.[25]  The Special Master's determination that these documents are discoverable

5   is wrong as a matter of law for several reasons:

6          First, the work product of a consulting expert is not discoverable absent a

7   showing of exceptional circumstances.  Fed. Rule Civ. Pro. 26(b)(4)(B) (providing,

8   in relevant part, that where a consulting expert has been specially retained by a

9   party in anticipation of litigation, and has developed or acquired facts known and

10  opinions held in anticipation of litigation, those facts and opinions are only

11  discoverable upon a showing of "exceptional circumstances"); *See also USA v.*

12  *Bell*, C 94-20342, 1994 U.S. Dist. LEXIS 17408 at *10 (N.D. Cal. November 9,

13  1994).  Accordingly, there is no basis under the Federal Rules of Civil Procedure to

14  compel MGA to produce its consulting expert's ink-test work product.

15         Second, expert discovery is wholly inappropriate here because the parties

16  have not even designated their testifying experts and are not scheduled to do so

17  until November 14, 2007.  "A party is free to make, as well as to revise, strategic

18  decisions regarding which witnesses will testify at any time up until the court-

19  imposed designation deadline." *In re Shell Oil Refinery* 132 F.R.D. 437, 440-441

20  (D. La. 1990); *See also, Moore U.S.A. Inc. v. The Standard Register Co.*, 206

21  F.R.D. 72, 75 (W.D.N.Y. 2001) (granting motion for protective order where party

22  had not yet designated an expert as a "testifying expert").  Time and again, MGA

23  has reiterated that it has not yet designated any experts as "testifying experts" and

24  may in fact, refrain from designating a testifying expert on ink-testing entirely.[26]

25  Thus, to the extent MGA has consulted with *any* undesignated experts in this case

26

27  sampling of documents."  MGA's appeal of the May 16, 2007 Order will follow.
    [25] Burr Decl., Exh. 10 at 11:12-11:13.

28  [26] Burr Decl., Exh. 9 at 27:11-27:13

- 9 -

EXHIBIT 9 PAGE 89

1   in anticipation of litigation or for trial preparation purposes, Mattel is not yet

2   entitled to discovery of that expert's work product. *In re Shell Oil Refinery*, 132

3   F.R.D. at 440 (defendant had no obligation to decide which experts it would call at

4   trial or disclose information about any experts expected to be called until deadline

5   for designating experts pursuant to case management order). Rather, Mattel must

6   wait until the MGA makes the strategic decision to designate an expert as a

7   testifying expert unless it can show "exceptional circumstances." *Id.*

8       Third, Mattel utterly failed in its motion to compel documents responsive to

9   Request No. 92 to indicate any circumstances -- extraordinary or otherwise -- under

10   which it should be entitled to the work product of any consulting or heretofore

11   undesignated expert, or to obtain any other information concerning MGA's

12   strategic decisions to designate testifying witnesses. In the absence of such

13   argument by Mattel, the Special Master made no finding that special circumstances

14   were present here. Rather, the Special Master's Order compelling MGA to produce

15   documents responsive to Request No. 92 was based solely on a conclusory

16   assertion that MGA's counsel's and consultant's documents were "relevant" to the

17   issues in this case.[27] That plainly falls far short of a showing of exceptional

18   circumstances.

19       If the Special Master's order is permitted to stand, MGA will be the only

20   party in this litigation required to determine and disclose its expert designations far

21   earlier than required by this Court's Scheduling Order. Further, it would force

22   MGA to produce documents that are unquestionably work product, a serious

23   invasion of its counsel's work product privilege. *See Moore U.S.A.*, 206 F.R.D. at

24   75; *Perry v. United States*, CA3:96-CV-2038-T, 1997 U.S. Dist. LEXIS 23875 at *

25   10 (D. Tex. Feb. 4, 1997) (non-testifying expert opinion protected as work-product

26   which only becomes discoverable if defendant ultimately designates the expert as a

27

28   [27] Burr Decl., Exh. 10 at 11:12.

- 10 -

**EXHIBIT 9 PAGE 90**

1  "testifying expert"). Compelling production of these documents at this point also

2  violates Rule 26(b)(4)(B), which was designed to prevent litigants from "trying to

3  cut case-preparation corners by leaching basic information or valuable opinions

4  from experts retained by their opponents." *See In re Pizza Time Theatre Securities*

5  *Litigation*, 113 F.R.D. at 96.

6         To the extent that MGA decides to designate a testifying expert on ink-

7  testing, MGA certainly will disclose the identity of expert witnesses to be called at

8  trial by no later than November 14, 2007, and will produce any documents, data or

9  information considered in forming any opinions contained in the expert's report in

10  accordance with the Federal Rules and this Court's Scheduling Order. At that

11  point, Mattel will have ample opportunity to explore any documents upon which

12  MGA's expert opinion is based. Until such time as MGA designates its testifying

13  experts, however, it should not be required to produce any documents created by or

14  in connection therewith.

15  **B.    The Special Master's Order Compelling MGA to Produce
16           Unreleased Product Information for 2007, 2008 and Beyond is
17           Clearly Erroneous**

18          **1.    Documents Concerning Unreleased Product Information
                    Are Trade Secrets And Are Not Necessary to Mattel's
19                   Prosecution of its Claims**

20         MGA sought from the Discovery Master, a protective order pursuant to Rule

21  26(c) providing either that such documents either (a) need not be produced at all;

22  (b) need not be produced until after the products had been released to the public; or

23  (c) would be produced pursuant to a more restrictive protective order than was

24  currently in place." See FED. R. CIV. P. 26(c)(7). Although the Special Master did

25  impose a more restrictive protective order than was currently in place, that order is

26  insufficient to protect the inadvertent disclosure of trade secrets particularly with

27  respect to products scheduled for release in 2007, 2008 and beyond. The Special

28  Master incorrectly determined that the "relevance" of such documents to Mattel's

EXHIBIT 9 PAGE 91

1    claims rendered them discoverable and, even though the Special Master recognized

2    Mattel's need for unreleased product information to be relatively small, ordered

3    their production anyway by June 29, 2007.[28]

4          In determining whether a protective order should be granted, the Ninth

5    Circuit requires that a court balance the risk to the disclosing party of inadvertent

6    disclosure of trade secrets to competitors against the risk to the moving party that

7    protection of the trade secret would *impair* the prosecution of its claims. *Brown*

8    *Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.) (upholding

9    protective order granting access to source codes and other trade secret materials

10   only to an independent consultant), *cert. denied sub nom.*, *BB Asset Mgmt., Inc. v.*

11   *Symantec Corp.*, 506 U.S. 869 (1992) (emphasis added).  The fact that MGA and

12   Mattel are direct competitors weighs significantly in favor of protection of

13   confidential information. *see Am. Heavy Moving & Rigging Co. v. Robb Techs.,*

14   *L.L.C.*, No. 2:04-CV-00933-JCM (GWF), 2006 U.S. Dist. LEXIS 51276, *10 (D.

15   Nev. July 24, 2006) ("The courts generally hold that there is a greater likelihood of

16   harm where disclosure of trade secrets is sought in litigation between competitors")

17   (citation omitted).

18         There is no question but that MGA's drawings for unreleased products fit

19   squarely within the scope of trade secret information covered by Rule 26(c) and

20   "should not be revealed" at all or, at the least, "should not be revealed" prior to

21   public release of the products. FED. R. CIV. P. 26(c)(7).   As MGA indicated in its

22   request for clarification, a toy manufacturer's unreleased toy concepts, *i.e.*, those

23   that have not been made public, are among its most highly valuable trade secrets.[29]

24   Although such drawings and designs are valuable even *after* the product's public

25   release, their value is enormous prior to their public release because they represent

26   works in progress and new ideas for advancing and developing product lines; it is

27   ───────────────

[28] Burr Decl., Exh. 11 at 10:15-10:25; 12:3-12:4

28   [29] Burr Decl., Exh. 12 at ¶ 4.

- 12 -

EXHIBIT 9 PAGE 92

1    the new ideas and designs that are most likely to generate new sales.[30]  And,

2    because of their tremendous value, MGA protects its product drawings in a number

3    of ways:  restricting access to a very small number of people, requiring strict

4    confidentiality agreements, using password-protected computers, and employing

5    security guards at their facilities who prohibit entry to unauthorized personnel and

6    who check even authorized personnel on their way out.[31]

7         MGA takes even greater efforts to protect some of its yet-unreleased "Bratz"

8    products.  In fact, with respect to some new "Bratz" products, there are *only two*

9    people – Carter Bryant and Paula Garcia – who know what the concept is and who

10   see the early product drawings.[32]  Even after Garcia approves and Bryant and

11   Garcia have finalized the concept, only a small number of people on the "Bratz"

12   development team have exposure to the drawings.[33]

13        The danger of inadvertent disclosure of MGA's trade secrets, even with the

14   modified protective order in place, still severely outweighs Mattel's need for these

15   documents.  Mattel's ability to prosecute the issues in the Mattel v. Bryant case

16   would not be impaired in the slightest were it unable to obtain these documents at

17   all or only after the underlying products were released to the public.  Mattel argued,

18   and the Special Master agreed, that unreleased product information was relevant to

19   its claims in the Bryant case that it "owns works" created by Bryant during his

20   employment at Mattel and to its claim that Bryant purportedly breached a

21   continuing obligation of "confidentiality" not to use what Mattel purports to be

22   misappropriated "property."  It is not.  Currently unreleased product development

23   documents have no bearing on whether Bryant created the original Bratz concept

24   during his employment at Mattel, and that Mattel therefore "owns" the original

25   Bratz concept.  Moreover, nowhere in Mattel's complaint against Bryant does

---

[30] *Id.*

[31] *Id.* at ¶¶ 5-6.

[32] *Id.* at ¶ 6.

[33] *Id.*

EXHIBIT 9 PAGE 93                    - 13 -

1    Mattel allege that Bryant has engaged in subsequent breaches of his confidentiality

2    agreement by continuing to work for MGA. In fact, Mattel alleged only that Bryant

3    breached his confidentiality obligations while *employed* by Mattel.

4         Most importantly, "relevance" is not the test for determining whether to limit

5    the discoverability of trade secrets -- it is whether the potential damage to MGA is

6    outweighed by Mattel's need for these documents to proceed on its claims. Since

7    Mattel's need for these documents is extremely small and the potential damage to

8    MGA extremely great, the Special Master should have issued a protective order

9    directing that these documents either need not be produced or need only be

10   produced after the products at issue were released to the public.

11        To the extent these documents are relevant at all, they only are marginally

12   relevant to Mattel's copyright counterclaims, which are not set to be litigated until

13   July, 2008. As such, even if the Court decides that this marginal need for

14   documents outweighs MGA's interest in protecting its trade secrets, such

15   documents concerning products scheduled for release in 2008 need not be produced

16   by June 29, 2007 as the Special Master has indicated.

### 2.    Mattel's Requests Are Overbroad

18        MGA argued in its brief, that Mattel's requests were overbroad in that they

19   sought all documents pertaining to "Bratz" or to Bryant's work for MGA after June,

20   2001, are overbroad and should be limited at most to drawings or work for "Bratz"

21   products that have been released to the public or that are in fact scheduled for

22   release. In *Intersong-USA, Inc. v. CBS, Inc.*, a case of alleged copyright

23   infringement by Julio Iglesias and others, the plaintiff had similarly requested

24   information on "all" musical compositions that the defendants had authored.

25   Recognizing the overbreadth of this request, the Court held that the defendants

26   should produce information for musical compositions "actually published" over a

27   ten-year period. 1 Fed. R. Serv. 3d 609 (S.D.N.Y. 1985). The Special Master did

28

EXHIBIT 9 PAGE 94         - 14 -

1  not address the issue of MGA's breadth objection, but instead ruled that all

2  documents concerning unreleased products were discoverable.

3      Mattel's requests require the production of volumes of documents that are

4  only of limited relevance to the issues in this case.  As such, MGA's objection that

5  these requests are overbroad should be sustained and the requests limited to

6  drawings or work for "Bratz" products that have been released to the public or that

7  are in fact scheduled for release.

8      **3.    In the Alternative The Stipulated Protective Order**
9          **Governing Documents Concerning Unreleased Products**
          **Scheduled for Release in 2007 Should be Extended to Cover**
10         **Products Scheduled for Release in 2008**

11     The parties had entered into a stipulated protective order in the event

12  that the Special Master ordered production of MGA's unreleased product

13  information, which governs the production of documents concerning unreleased

14  products scheduled for release in 2007.  That stipulation provided that (a) the

15  parties could withhold documents concerning products scheduled for release in

16  2007 until June 29th 2007; (b) the parties would enter a further stipulation in

17  connection with unreleased products schedule for release in 2008; and (b) if the

18  parties could not agree to a further stipulation with respect to documents scheduled

19  for release in 2008, the stipulation with respect to 2007 documents would apply.

20  However, in the event this Court agrees with the Order of the Special Master and

21  determines that drawings for all unreleased MGA products are somehow relevant,

22  MGA requests further protection pursuant to Federal Rule of Civil Procedure 26(c)

23  for those unreleased products scheduled for release in 2008, namely, that

24  documents concerning these products need not be produced until the month in

25  which the relevant products are shipped to the United States from Asia.   Such an

26  Order would at least protect the most recent products developed by MGA and

27  scheduled for release next year.

28

EXHIBIT _9_ PAGE _95_                          - 15 -

**C.**   **The Special Master Imposed An Undue Burden on MGA by Requiring it To Produce Documents and Supplement Interrogatories by May 31, 2007**

The Special Master ordered MGA to produce by May 31, 2007, *all* documents responsive to Mattel's requests from both MGA and MGA's indirect subsidiary in Hong Kong, including all documents related to "Bratz"; and to supplement MGA's interrogatory responses.  The issue of timing was not briefed by the parties and it was not anticipated that MGA would be given a mere two weeks and two days to collect, review and produce responsive documents from both MGA and an indirect subsidiary in the Far East, as well as to collect the information necessary to supplement its interrogatory responses.  The Discovery Master's order imposes a severe undue burden on MGA and should be vacated and reversed with respect to the timing of MGA's production.  Instead, MGA should be given 60 days in which to complete its production and supplement its interrogatory responses.

**IV.**   **CONCLUSION**

For the foregoing reasons, the Court should vacate and reverse the Discovery Master's Order as to Mattel's Request No. 92; vacate and reverse the Order compelling MGA to produce documents related to unreleased products (or in the alternative to extend the current protective order to products scheduled for release in 2008); and vacate the Order with respect to MGA's time in which to comply and grant MGA's request for an additional 60 days in which to comply with the Special Master's Order.

Dated: May 30, 2007

O'MELVENY & MYERS LLP

*Michael Keats*

By:  Michael Keats
Attorneys for MGA Entertainment, Inc.

EXHIBIT 9 PAGE 96          - 16 -

# EXHIBIT 10

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

**PRIORITY SEND**
& ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES – GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                    Date:  July 2, 2007

Title:    CARTER BRYANT -v- MATTEL, INC.
          AND CONSOLIDATED ACTIONS

====================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                          Theresa Lanza
Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                         John B. Quinn
                                      Brett Dylan Proctor
                                      Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:

Dale M. Cendali
Patricia Glaser

ENTERED
CLERK, U.S. DISTRICT COURT
JUL - 5 2007
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION    BY DEPUTY

DOCKETED ON CM
JUL - 5 2007
BY _____ 164

PROCEEDINGS:   MINUTE ORDER

        As set forth more fully herein, the Court hereby makes the following ruling regarding matters heard on July 2, 2007:

(1)    The Court **GRANTS** Mattel's Motion re Trial Structure (docket #462);

(2)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505);

(3)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Ex Parte Application

MINUTES FORM 90                                                    Initials of Deputy Clerk _jh_
CIVIL – GEN                          1                             Time: 01/15

EXHIBIT 10 PAGE 97

608

171/2/07

regarding date of production of documents (docket #545); and

(4)   The Court **DENIES** MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508).

(5)   The Court **DENIES** the parties' oral request for modification of pretrial and trial dates.

(1)   Motion re Trial Structure (docket #462)

Previous orders of the Court specified that the claims and counterclaims brought in this action will be tried in two phases. The parties have agreed, in large part, to a refinement of the Court's mandate that all issues regarding the ownership of Bratz shall be tried in Phase 1. Where the parties differ is upon a proposal by Mattel that the Phase 1 be bifurcated into two sub-phases, with Mattel's copyright infringement claim (its first counterclaim in the 05-02727 case) and all Phase 1 damages being tried after all the other issues. Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the original drawings. This approach has the appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings. A finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the need for Phase 1(b).

Accordingly, **THE COURT ADOPTS MATTEL'S MODIFICATION OF DEFENDANTS' PROPOSAL**, as set forth at 8-9 of its Memorandum Regarding Trial Structure, filed June 20, 2007. Phase 1(a) and Phase 1(b) (if necessary) will be tried to the same jury.

(2)   MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505), and
(3)   MGA's Ex Parte Application regarding date of production of documents (docket #545).

The Discovery Master's May 15, 2007, Order compels production of documents regarding ink, paper, and chemical analysis and documents relating to unreleased MGA products. The order required that documents be produced no later than the end of May.

The Court reviews the Discovery Master's orders under the "clearly erroneous" or "contrary to law" standard set forth in Fed. R. Civ. P. 72(a).

The Discovery Master's order compels the production of only non-privileged documents. Therefore, MGA's arguments that the Discovery Master's order requires production of documents in violation of the attorney-client privilege are misplaced. If the only responsive documents are privileged, then MGA need not produce them, but must produce a privilege log.

MGA acknowledges that it has raised an argument before the Court that was not raised

EXHIBIT 10 PAGE 98

before the Discovery Master, namely, that Mattel has failed to establish that there are "exceptional circumstances" that allow Mattel to "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B).  MGA contends that the Discovery Master's order is contrary to law based on this standard, and that it was incumbent upon Mattel to raise it below.  The Court disagrees.  Mattel would be required to establish that exceptional circumstances existed if MGA objected to production on that grounds.  A party seeking production cannot be expected to rebut all arguments that could possibly be raised by a party resisting production.  MGA has not convinced the Court that the Discovery Master's failure to require Mattel to rebut an argument that was not raised by MGA is contrary to law.

MGA contends that the Discovery Master's order compelling production of documents regarding unreleased products is contrary to law.  Relevant to that determination is a balancing test required to be applied by the Ninth Circuit when trade secrets are requested by a competitor in discovery.  See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) ("Specifically, in this case we must balance the risk to [defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [plaintiff] that protection of [defendant's] trade secrets [will] impair[] prosecution of [plaintiff's] claims.").

Here, the documents sought are of a particularly sensitive nature.  They represent some of the most secretive documents maintained by MGA, and they are being ordered to be produced to MGA's fierce competitor.  The Discovery Master recognized the sensitive nature of the documents and entered a strict protective order that severely limits access to those documents and that goes well beyond the normal "attorney eyes only" designation.

MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings.  That is clear.  However, MGA's argument attempts to limit the discovery to issues involved in Phase 1 of the trial.  There has been no bifurcation of discovery.

Mattel correctly points out that these documents are relevant to a number of its other claims.  Specifically, if they show unreleased products that are similar to Mattel's unreleased products, the documents would be highly probative of Mattel's misappropriation of trade secrets claim.  Moreover, these documents could be relevant to Mattel's RICO claims based on alleged acts of criminal copyright infringement.

Balancing tests are inherently subjective and particularly susceptible to varying interpretation by individual judicial officers.  This Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result.  However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.

The parties have a long history regarding the production of documents ordered in the May 15, 2007, Order, which is set forth in their papers and which need not be repeated here.  Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no

later than two weeks after that date.  Accordingly, the Court **ORDERS** that MGA complete the document production set forth in the Discovery Master's May 15, 2007, order no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which shall be produced no later than August 14, 2007.

Accordingly, the Court **GRANTS** in part MGA's motion re the Discovery Master's May 15, 2007, Order, extending the document production date as set forth above.  The Motion is **DENIED** in all other respects.

Likewise, the Court **GRANTS** in part MGA's ex parte application re date of production of documents, extending the document production date as set forth above.  The application is **DENIED** in all other respects.

(4)     MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508)

The Discovery Master's May 16, 2007, Order compelled the Rule 30(b)(6) depositions of witnesses on the topics of MGA's net worth, prior sworn statements, and ink, paper, and chemical analysis performed by MGA.

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters *known or reasonably available* to the organization.

Fed. R. Civ. P. 30(b)(6) (emphasis added).  "The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation." Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz. 1991) (internal citation omitted).  Another purpose of Rule 30(b)(6) is aptly described by the District Court for the District of Columbia:

> [The purpose of Rule 30(b)(6) is to] prevent[] serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying', which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself.

Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C. 1999) (citing the 1970 Advisory Committee Notes to Rule 30(b)(6)).

The Discovery Master's order compelling Rule 30(b)(6) depositions in the specified

EXHIBIT 10 PAGE 100

categories serve both these purposes and is not contrary to law.

Although MGA's net worth may not be known to it, MGA does not contend that the information is not readily available. That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law.

MGA likewise does not contend that information regarding prior sworn statements are not readily available to it. Although contending that this is not an appropriate subject for a Rule 30(b)(6) deposition, MGA fails to cite authority in support of that contention. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

The ink, paper, and chemical analysis topic is likewise a proper subject of a Rule 30(b)(6) deposition. To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this topic based on that blanket objection. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

Accordingly, the Court **DENIES** MGA's motion re the Discovery Master's May 16, 2007, Order.

(5)   Oral Request for Modification of pretrial and trial dates.

Although no motion or ex parte application on the subject was pending before the Court, the parties made an oral request at the hearing to continue certain pretrial and trial dates. A discussion ensued and it became apparent that no final agreement was reached by the parties regarding extending these dates. Accordingly, the Court **DENIES** the parties' oral request for modification of pretrial and trial dates. The Court will consider counsels' stipulation regarding extensions of those dates only where all counsel unqualifiedly stipulate to those dates. Until the scheduling order is modified by the Court, the dates previously set by the Court remain in effect. In addition, the Court is unlikely to entertain a continuance of the Phase 1 trial past April, 2008.

IT IS SO ORDERED.

EXHIBIT 10 PAGE 101

# EXHIBIT 11

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

07209/2090486.1

# EXHIBIT 12

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 13

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 14

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 15

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 16

**THIS EXHIBIT IS FILED UNDER SEAL**
**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 17

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 18

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 19

ORIGINAL

1  HOWARTH & SMITH
   DON HOWARTH (State Bar No. 53783)
2  SUZELLE M. SMITH (State Bar No. 113992)
   BRIAN D. BUBB (State Bar No. 137408)
3  ROBERT D. BRAIN (State Bar No. 98815)
   800 Wilshire Blvd., Suite 750
4  Los Angeles, California 90017

5  (213) 955-9400

6  Attorneys for Plaintiff
   FARHAD LARIAN

7

**FILED**
LOS ANGELES SUPERIOR COURT

AUG 2 5 2003

JOHN A. CLARKE, CLERK
C. L. Coleman
BY C. L. COLEMAN, DEPUTY

Case assigned to
Judge Rodney Nelson.

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                FOR THE COUNTY OF LOS ANGELES

10                                          BC301371

11  FARHAD LARIAN,                    )  CASE NO.
                                      )
12       Plaintiff,                   )  VERIFIED COMPLAINT FOR:
                                      )
13  vs.                               )  1)  FRAUD & DECEIT IN THE
                                      )      INDUCEMENT OF
14  ISAAC LARIAN and DOES 1 through   )      ARBITRATION
    50, inclusive,                    )      AGREEMENT;
15                                    )
         Defendants.                  )  2)  BREACH OF FIDUCIARY
16                                    )      DUTIES;
                                      )
17                                    )  3)  FRAUD & DECEIT IN THE
                                      )      CONDUCT OF
18                                    )      ARBITRATION PROCESS;
                                      )
19                                    )  4)  BREACH OF IMPLIED
                                      )      COVENANT OF GOOD
20                                    )      FAITH AND FAIR DEALING;
                                      )
21                                    )  5)  VIOLATION OF
                                      )      CALIFORNIA
22                                    )      CORPORATIONS CODE §§
                                      )      25401 AND 25501;
23                                    )
                                      )  6)  VIOLATION OF
24                                    )      CALIFORNIA
                                      )      CORPORATIONS CODE §§
25                                    )      25402 AND 25502;
                                      )
26                                    )  7)  FRAUD & DECEIT RE
                                      )      DECEMBER 2000
27                                    )      AGREEMENT;
28

CIT/CASE: BC301371 LEA/DEF#:
RECEIPT #: CI8243111037
DATE PAID: 08/25/03 12:03:44 PM
PAYMENT: $269.50
RECEIVED:
CHECK:
CASH:
CHANGE:
CARD:
269.50
0310

03P391001.618                                    VERIFIED COMPLAINT

**EXHIBIT 14-137**

EXHIBIT 19 PAGE 180

| | |
|---|---|
| 1 | 8) NEGLIGENT MISREPRESENTATION; |
| 2 | |
| 3 | 9) UNFAIR COMPETITION, IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200; and |
| 4 | |
| 5 | 10) RESCISSION BASED ON MISTAKE |
| 6 | |

7

8      DEMAND FOR JURY TRIAL

9      Plaintiff, FARHAD LARIAN ("Plaintiff" or "Fred") alleges as follows:

10      **COMMON ALLEGATIONS**

11      **Parties and Venue**

12           1.      Plaintiff Farhad Larian, also known as "Fred" Larian, is now, and at all

13      times herein mentioned was, a resident of the State of California.  He is currently residing

14      in Los Angeles County, California.

15           2.      Defendant Isaac Larian ("Isaac") is now, and at all time herein mentioned

16      was, a resident of Los Angeles County, California.

17           3.      Plaintiff is unaware of the true names and capacities of Defendant DOES 1

18      through 50, inclusive, and therefore sues such Defendants by fictitious names.  Plaintiff

19      will amend this complaint to show the true names and capacities of, and to make specific

20      allegations against, these Defendants if and when additional information against them is

21      ascertained.  Plaintiff is informed and believes and thereon alleges that each of the

22      Defendants, including each fictitiously named Defendant, is liable in some manner for the

23      events referred to in this complaint.

24           4.      At all times mentioned herein, each Defendant was the agent of each of the

25      other Defendants, and was acting within the course and scope of said agency in

26      performing the acts described herein.

27           5.      Venue is proper in Los Angeles County under California Code of Civil

28      Procedure § 395 because Defendant Isaac Larian resides in Los Angeles County.

03:P391001.618                                             VERIFIED COMPLAINT

**EXHIBIT 14-138**

EXHIBIT 19 PAGE 181

11.     One method the brothers' discussed was having one brother buy out the other's equity interest.  Over the years, various such purchases were discussed and on one occasion an outside appraisal of the Company, performed at the specific request of Isaac, valued the Company at $35 million to $40 million.

12.     By 1999, Isaac, as President, had assumed control of sales, product development and financial matters.  At Isaac's direction, Fred assumed responsibility for major projects such as customs regulations, facilities management and warehouse distribution control, and was not as involved in the day-to-day sales or financial control of the Company.  For his role, Isaac took a significantly greater salary.

**Defendant's Concealment of the Bratz Doll Line**

13.     Plaintiff is informed and believes that beginning in or about late 1999 and early 2000, Isaac became aware of a potential new product line that had tremendous potential for the Company.  The new product line involved the "Bratz" dolls and related products.  Bratz dolls are "hipper" and more "edgy" than Barbie and Barbie-type dolls, and are aimed at the post-adolescent, pre-teen and early teen market, i.e., a market where the allure of playing with Barbie-type dolls wanes.

14.     Plaintiff is informed and believes that during this same time period, Isaac devised a plan to keep this business opportunity secret from Fred and to gain control of the Company by buying Fred's shares at a value which did not include this new business opportunity.  Isaac concealed from Plaintiff, his brother and partner and stockholder, knowledge he had, as well as his intentions and actions undertaken, regarding the Bratz product line.

15.     In or about early 2000, Isaac called a meeting to discuss the new Bratz product line with selected individuals in the Company.  Plaintiff is informed and believes that those present at the meeting spoke enthusiastically of the tremendous opportunity the Bratz line presented for the Company as, *inter alia*, it captured a vacant market niche.

///

4

03:P391001.618                                                    VERIFIED COMPLAINT

EXHIBIT 14-140

EXHIBIT 19 PAGE 182

1    Fred was not present for this meeting.  Upon information and belief, Isaac took steps to

2    conceal the results of the meeting from Fred.

3        16.    Also in or about February 2000, Isaac tried to dissuade Fred from attending

4    the New York Toy Fair, even though Fred had routinely and regularly attended such toy

5    fairs in the past.  The New York Toy Fair is an important venue for discussing and

6    researching the market potential of new product lines.  Isaac was furious when he

7    discovered that Plaintiff was traveling to New York for the fair.  Plaintiff was expelled by

8    Isaac from meetings he tried to attend and was excluded from any discussions Isaac may

9    have had relating to the Bratz line of products at the fair.

10        17.    In early March 2000, while continuing to conceal from Fred the Company's

11    plans for the Bratz line, Isaac offered to purchase all of Plaintiff's 45 percent interest in

12    the Company for $9 million.  The offer was based on a total value of the Company of $20

13    million.  Upon information and belief, Isaac knew at the time he made the offer of the

14    Company's plans already in place, and actions already undertaken, regarding the Bratz

15    line, and that such plans made the Company worth well in excess of $20 million.

16        18.    As set forth herein, the two brothers divided responsibilities with Isaac,

17    assuming control of sales, product development and financial matters, and Fred assuming

18    responsibility for major projects.  Financial information was handled by Isaac and the

19    Controller, Dennis Medici.  Throughout 2000 Isaac repeatedly and routinely shared with

20    Fred any financial information that showed the Company was performing poorly, while

21    withholding any positive financial information about the Company, including the plans

22    for the Bratz line.  Indeed, in May 2000 Isaac told the Company's the Controller, Dennis

23    Medici, that he was to no longer give Fred any information regarding the financial

24    operation of the Company. During this period, Isaac gave Fred only bleak financial news

25    about the Company and continued to conceal the Company's plans and actions

26    undertaken regarding Bratz.

27        19.    On or about September 18, 2000, Isaac caused the Company to enter into a

28    worldwide licensing agreement for the Bratz dolls and related items.  The existence of

5

EXHIBIT 14-141

EXHIBIT 19 PAGE 183

# EXHIBIT 20

FILED

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100

2007 SEP 10 PM 3: 38
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY_____

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

11  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

12              Plaintiff,                 Consolidated with
                                           Case No. CV 04-09059
13        vs.                              Case No. CV 05-02727

14  MATTEL, INC., a Delaware              **DISCOVERY MATTER**
    corporation,
15                                        **[To Be Heard By Discovery Master
                                          Hon. Edward Infante (Ret.)]**
16              Defendant.

17  AND CONSOLIDATED ACTIONS              MATTEL, INC.'S NOTICE OF
                                          MOTION AND MOTION TO
18                                        ENFORCE THE COURT'S ORDER
                                          OF MAY 15, 2007, TO COMPEL
19                                        MGA TO PRODUCE COMPELLED
                                          DOCUMENTS IN UN-REDACTED
20                                        FORM, AND FOR SANCTIONS; AND

21                                        MEMORANDUM OF POINTS AND
                                          AUTHORITIES

22                                        Date:   TBA
                                          Time:   TBA
23                                        Place:  Telephonic

24                                        **Phase 1**
25                                        Discovery Cut-Off:      January 14, 2008
                                          Pre-Trial Conference:   April 7, 2008
26                                        Trial Date:             April 29, 2008

27                                        **Phase 2**
                                          Discovery Cut-Off:      March 3, 2008
28                                        Pre-Trial Conference:   June 2, 2008
                                          Trial Date:             July 1, 2008

EXHIBIT 20 PAGE 184

07209/2213124.4

MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF MAY 15, 2007 AND FOR SANCTIONS

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that, at a telephonic conference before Discovery

3 Master Hon. Edward Infante (Ret.), that will occur at a time to be set by Judge

4 Infante, Mattel, Inc. will, and hereby does, move the Court: (1) to enforce the

5 Court's May 15, 2007 Order Granting Mattel, Inc.'s motion to compel MGA to

6 produce documents in un-redacted form; and (2) for sanctions against MGA,

7 including prospective monetary sanctions to obtain MGA's compliance with the

8 May 15, 2007 Order.

9       This Motion is made on the grounds that MGA has failed and refused to

10 produce compelled documents in un-redacted form as ordered by the Court and has

11 continued to redact its compelled documents in willful violation of the Court's

12 Order.

13       This Motion is based on this Notice of Motion and Motion, the accompanying

14 Memorandum of Points and Authorities, the Declaration of B. Dylan Proctor filed

15 concurrently herewith, the Declaration of Michael T. Zeller filed concurrently

16 herewith, the records and files of this Court, and all other matters of which the Court

17 may take judicial notice.

18

19             **Statement of Rule 37-1 Compliance**

20       The parties met and conferred on August 10, 2007, and times thereafter,

21 regarding MGA's failure and refusal to produce documents compelled by the May

22 15, 2007 Order in un-redacted form.

23

24 DATED: September 7, 2007       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

25

26                    By _Dylan Proctor as_

27                    B. Dylan Proctor
                     Attorneys for Plaintiff

28 **EXHIBIT 20 PAGE 185**     Mattel, Inc.

07209/2213124.4

MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF MAY 15, 2007 AND FOR SANCTIONS

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS .................................................................................... 3

    A.    The Discovery Master Rejects MGA's Improper Redactions ................ 3

    B.    MGA's Failure to Comply with the Court's May 15, 2007 Order Compelling MGA to Produce Documents in Un-Redacted Form.......... 4

    C.    Mattel's Meet and Confer Efforts to Obtain MGA's Compliance .......... 7

ARGUMENT ...................................................................................................... 10

I.    THE COURT SHOULD ENFORCE ITS MAY 15 ORDER AND REQUIRE MGA TO PRODUCE ITS DOCUMENTS IN UN-REDACTED FORM ..................................................................................... 10

    A.    Even After the May 15 Order, MGA Has Continued to Produce Compelled Documents with Redactions Based on Grounds Other Than Privilege ...................................................................................... 10

    B.    MGA Has Also Failed to Produce Un-Redacted Copies of Documents That MGA Had Improperly Produced in Redacted Form Prior to the May 15 Order .......................................................... 11

II.    MGA'S FAILURE TO COMPLY WITH THE MAY 15 ORDER HAS BEEN WILLFUL, AND IT SHOULD BE SANCTIONED ......................... 12

CONCLUSION.................................................................................................... 14

EXHIBIT __20__ PAGE __186__

1

# TABLE OF AUTHORITIES

2

**Page**

3

## Cases

4

Grimes v. City and County of San Francisco,
    951 F.2d 236 (9th Cir. 1991)........................................................13, 14

RTC v. Dabney,
    73 F.3d 262 (10th Cir. 1995).............................................................14

U.S. v. Westinghouse Electric Corp.,
    648 F.2d 642 (9th Cir. 1981)..............................................................13

5

6

7

8

9

## Statutes

10

28 U.S.C. § 1927..................................................................................13

Federal Rule of Civil Procedure 37(b)(2)...............................................13

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT** *20* **PAGE** *187*

07209/2213124:4

-ii-

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

The Discovery Master's May 15, 2007 Order compelling MGA to produce documents was unequivocal: MGA was required to "produce all documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine."[1] Directly flouting the Order, MGA continues to improperly redact non-privileged information from its documents, including the key Bratz-related documents it was compelled to produce no later than July 31, 2007. Not only is MGA thus in deliberate violation of the May 15 Order's plain language, but now -- more than a month after the Court imposed deadline for its production of these critical documents -- MGA still has not produced compelled documents in an intelligible form, thereby subverting the May 15 Order and depriving Mattel of information that the Discovery Master ruled Mattel is entitled to long ago.

For example, on August 3, 2007, after the Court-ordered production deadline had passed, MGA produced a copy of Isaac Larian's calendar from September 2000 -- a crucial time period in this litigation -- virtually entirely redacted. Also on August 3, 2007, MGA produced the deposition transcript of Mr. Larian in the Art Attacks v. MGA case, with over 100 pages of Mr. Larian's testimony heavily or entirely redacted. The redacted testimony appears to include information regarding critical matters such as MGA's revenues from Bratz, the conception date of Bratz, and MGA's purported acquisition of Bratz -- information that is highly relevant to liability and damages issues in this case and that MGA was indisputably ordered not to redact. MGA has gone so far as to even redact the word indices of compelled

---

[1]   Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA dated May 15, 2007 ("May 15 Order") at 14:10-11, attached as Exhibit 1 to the concurrently filed Declaration of Michael T. Zeller ("Zeller Dec.").

**EXHIBIT 20 PAGE 188**

1  deposition transcripts, apparently to hinder Mattel from being able to search the
2  deposition transcripts by key words.   Examples of other improperly redacted
3  documents (though by no means all, or even most of them) are included as exhibits.[2]

4      MGA's defiance of the May 15 Order also extends to documents that MGA
5  had produced in redacted form prior to May 15, 2007.  Mattel's motion to compel
6  specifically challenged those redactions, which in many instances made the
7  documents unintelligble, and the May 15 Order required MGA to produce in un-
8  redacted form all documents that MGA had previously produced with redactions
9  that were not based on privilege.   Nonetheless, MGA has still failed to produce un-
10  redacted versions of many of these documents as well.

11      MGA has no excuse for these violations of the May 15 Order.  Mattel has
12  been actively pursuing motion practice for over eight months now simply to obtain
13  un-redacted copies of key documents relating to Bratz.   The issue of MGA's
14  improper document redactions was litigated on Mattel's original motion to compel in
15  February 2007.  The Discovery Master advised MGA at the hearing in early March
16  2007 -- six months ago -- that he would be granting Mattel's motion.  The Discovery
17  Master then issued his written Order compelling MGA to produce its documents in
18  un-redacted form on May 15, 2007 -- nearly four months ago.  Even though the
19  deadline for MGA's compliance itself passed more than a month ago, MGA still has
20  not complied.

21      This is no accident.   To the contrary, MGA's redactions represent intentional
22  and willful violations of the Court's Order.  Mattel has repeatedly met and conferred
23  with MGA regarding these issues to avoid this motion, but MGA simply dragged its
24  feet and undertook no commitment to comply and, in other instances, refused to

25
26
27  [2]  See Zeller Dec.  Exhs. 3-43, Declaration of B. Dylan Proctor, filed
concurrently herewith ("Proctor Dec."), Exhs. 2, 4 and 6.
28

**EXHIBIT 20 PAGE 189**

MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF MAY 15, 2007 AND FOR SANCTIONS

07209/2213124.4

1 abide by the Order. For example, Mattel advised MGA, after meeting and
2 conferring for weeks, that its redactions to MGA's financial records from Union
3 Bank, which MGA only produced in *any* form weeks after the Court-ordered
4 deadline, were improper under the May 15 Order: "MGA has been compelled to
5 produce its documents with no redactions other than those needed to assert a claim
6 of privilege, which these are not."[3]  MGA simply ignored this letter and numerous
7 other attempts by Mattel to obtain compliance. The Discovery Master should
8 compel MGA to comply once again and should sanction MGA for its willful
9 disregard of the Order, including by imposing prospective monetary sanctions to
10 obtain compliance with the Order.

11                          **Statement of Facts**

12  A.    **The Discovery Master Rejects MGA's Production of Improper**
13         **Redactions**

14      On February 2, 2007, Mattel moved to compel MGA to, among other things,
15 produce its documents in un-redacted form.   On that motion, Mattel provided
16 hundreds of pages of examples from MGA's thin, deficient production which had
17 been redacted, and summarized them:

18      MGA's production contains numerous inappropriate redactions that do
19      not appear to be based on privilege, such that more than half of
20      MGA's production consists of pages that are <u>entirely</u> redacted. Pages
21      with text are frequently so heavily redacted as to be unintelligible.
22      For instance, multiple emails produced by MGA have everything but
23      the "To," "From" and "Subject" header information redacted.  Other
24      pages include illegible text or images and/or have text or other
25      information cut-off.  Other pages reference attachments to emails and

26  ——————————————————————
27  [3]  Proctor Dec. Exh. 5.
28

**EXHIBIT** _80_ **PAGE** _190_

-3-

1   other documents, but the attachments are missing.  In addition,

2   invoices are produced for which no corresponding check stubs,

3   purchase orders or requisitions were produced.  In some cases, the

4   identifying information necessary to match invoices with other

5   financial documents may have been redacted.  Many other pages are

6   even redacted in their entirety.[4]

7   MGA opposed, in part, on grounds that the redacted information was irrelevant

8   and/or contained trade secrets.[5]

9       The Discovery Master heard the matter on March 5, 2007 and, as part of the

10  proceedings, advised MGA that he would grant Mattel's motion.[6]  On May 15, 2007,

11  the Discovery Master issued his written Order granting Mattel's motion to compel.[7]

12  In doing so, the Discovery Master specifically directed MGA to "produce all

13  documents in un-redacted form, except for redactions that are justified by the

14  attorney-client privilege or work product doctrine."[8]   The Discovery Master

15  overruled MGA's unilateral limitations and objections.[9]

16  **B.    MGA's Failure to Comply with the Court's May 15, 2007 Order**

17  **Compelling MGA to Produce Documents in Un-Redacted Form**

18      MGA filed with the District Court objections to portions of the May 15 Order,

19  but did not object to the Discovery Master's ruling that it must produce all

20

21

---

22

23   [4] Mattel's Motion to Compel Production of Documents and Interrogatory Answers by MGA, dated February 2, 2007, at 3:14-4:6 (cites omitted).

24   [5] See MGA's Opposition to Mattel's Motion to Compel Production of

25   Documents and Interrogatories, dated February 20, 2007.

     [6] Zeller Dec. ¶ 2.

26   [7] May 15 Order, Zeller Dec. Exh. 1.

27   [8] Id. at 14:10-11.

     [9] See id.

28

**EXHIBIT 20 PAGE 191**

MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF MAY 15, 2007 AND FOR SANCTIONS

1    compelled documents in un-redacted form.[10]   The District Court rejected all the

2    objections MGA did make and upheld the Discovery Master's May 15 Order, but

3    allowed MGA until July 31, 2007 to produce the documents compelled by the

4    May 15 Order.[11]

5       Although the deadline for MGA's compliance passed five weeks ago, MGA's

6    productions nevertheless still contain numerous inappropriate redactions that do not

7    appear to be based on privilege, in violation of the May 15 Order.[12]   Indeed, even

8    the compelled documents produced by MGA for the first time *after* the May 15

9    Order contain improper redactions.  For example:

10      • Dozens of compelled purchase orders and payment voucher forms are

11      redacted, with "unit cost," "amount," "amount paid," "discount," "write-off,"

12      "net," "date requested," "date promised," and/or "total value" fields

13      blanked out.[13]

14      • Bratz-related e-mails are partially or even entirely redacted.[14]

15      • Isaac Larian's September 2000 calendar is virtually entirely redacted.[15]

16      • Dozens of sworn statements and transcripts of proceedings in other matters

17      are redacted so heavily that hundreds of pages were produced blank.[16]   For

18      example, Isaac Larian's deposition transcript in the Art Attacks, Inc. v.

19      MGA Entertainment, Inc. case had over 100 pages of Mr. Larian's testimony

20

21

---

22    [10] See MGA Entertainment's Memorandum of Points and Authorities in Support

23 of Motion Objecting to Portions of the Discovery Master's May 15, 2007 Order, dated May 30, 2007, Zeller Dec. ¶ 3.

24    [11] See July 2, 2007 Order, at 2-4, Zeller Dec. Exh. 2.

25    [12] See, e.g., Zeller Dec. Exhs. 3-43, Proctor Dec Exhs. 2, 4, and 6.

   [13] See, e.g., Zeller Dec. Exhs. 20-40.

26    [14] See, e.g., Zeller Dec. Exhs. 41-42.

27    [15] Zeller Dec. Exh. 43.

   [16] See, e.g., Zeller Dec. Exhs. 10-19.

28

**EXHIBIT 20 PAGE 192**

heavily or entirely redacted.[17]   The redacted testimony appears to include information regarding: (i) MGA's licensing and royalty revenues from Bratz; (ii) compensation that MGA paid to Carter Bryant for Bratz; (iii) Larian's communications with Bryant regarding creation and development of the Bratz line; and (iv) dates that MGA first started work on Bratz -- all topics directly relevant to liability and damages issues in this case, as the Discovery Master has found.[18]  Even the indices of compelled deposition transcripts are entirely redacted.[19]

• MGA's August 21, 2007 production of Union Bank statements (already three weeks late) was so heavily redacted as to be unintelligible.[20]  More than half of the pages contained illegible text and information and/or had text or information cut-off.[21]  After Mattel threatened motion practice, MGA re-produced many of these documents on August 27, 2007 (and then again on August 29, 2007), but even the newly produced versions still contain redactions that are not privilege-related.[22]  MGA continues to redact bank account numbers, information about its subsidiary accounts, and other financial data from the documents.[23] None of these redactions appear to be based on privilege.

Pursuant to the May 15 Order, MGA was also required to provide Mattel with un-redacted copies of the documents MGA had previously produced in redacted

---

[17]  Zeller Dec. ¶ 5, Exh. 10.
[18]  See id.
[19]  See, e.g., Zeller Dec. Exh. 12.
[20]  Proctor Dec. Exh. 2.
[21]  See id.
[22]  Proctor Dec. ¶¶ 4, 6 & Exs. 4, 6.
[23]  Proctor Dec. Exh. 6.

EXHIBIT 20 PAGE 193
-6-

07209/2213124.4

form.[24]   MGA has not met this obligation either.   Rather, there are numerous documents that MGA produced before May 15 that Mattel has never received in un-redacted form.   For example, some emails that were redacted in their entirety have never been produced in un-redacted form.[25]   Other MGA documents that were produced pre-May 15 have financial information redacted.[26]   None of these redactions are based on privilege.

C.   **Mattel's Meet and Confer Efforts to Obtain MGA's Compliance**

On August 3, 2007, Mattel sent a letter requesting that MGA meet and confer regarding MGA's continued production of improperly redacted documents in violation of the May 15 Order.[27]   MGA failed to respond.[28]   Accordingly, on August 10, 2007, Mattel sent a follow-up letter reiterating its request.[29]   Later that day, the parties met and conferred.   During the meet and confer, Mattel's counsel gave several specific examples of MGA's improper redactions and Diana Torres, MGA's counsel, assured Mattel that she would "look into" the issue and get back to Mattel.[30]

On or about August 17, 2007, the parties again met and conferred.[31]   During that meet and confer, Mattel provided MGA with yet more examples of MGA's improper redactions.[32]   Without disputing that MGA had no right to redact documents compelled by the May 15 Order (except for privilege), MGA's counsel

---

[24]   Zeller Dec. Exh. 1.
[25]   See, e.g., Zeller Dec. Exhs. 3-5.
[26]   See, e.g., Zeller Dec. Exhs. 7-9.
[27]   Zeller Dec. ¶ 9, Exh. 44.
[28]   Zeller Dec. ¶ 10.
[29]   Zeller Dec. ¶ 10, Exh. 45.
[30]   Zeller Dec. ¶ 11.
[31]   Zeller Dec. ¶ 12.
[32]   Id.

**EXHIBIT 20 PAGE 194**

MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF MAY 15, 2007 AND FOR SANCTIONS

1   again said that she would investigate MGA's production and get back to Mattel.[33]

2   On August 21, 2007, the parties again spoke, and MGA's counsel again assured

3   Mattel that she was still "looking into it" and would respond promptly.[34]  She did

4   not.[35]

5       Having heard nothing further from MGA's counsel, Mattel sent MGA a

6   follow-up letter on September 3, 2007, stating that Mattel would have no choice but

7   to file a motion if MGA failed to rectify its improper redactions.[36]  The parties

8   conferred yet again on September 5, 2007.[37]  During that discussion, Mattel

9   reiterated that MGA had had over a month since Mattel sent its first meet and confer

10   letter to comply with the May 15 Order, yet there had been no progress

11   whatsoever.[38]  Mattel provided MGA with numerous additional examples of the host

12   of improper redactions not based on privilege that MGA made to documents that

13   were compelled by the May 15 Order.[39]  These examples included prior sworn

14   testimony (including witness statements and transcripts), emails, notes and

15   calendars.[40]  Mattel sent a confirming e-mail to MGA that same day and again made

16   clear its view that MGA was in violation of the May 15 Order as a result of its

17   improper redactions.[41]  To date, MGA has neither produced its redacted documents

18   in un-redacted form nor given Mattel any commitment that it would do so.[42]

19

20

---

21   [33] Id.

22   [34] Id.

23   [35] Id. ¶ 13.

   [36] Id., Exh. 47.

24   [37] Id. ¶ 14.

25   [38] Id.

   [39] Id.

26   [40] Id.

27   [41] Id., Exh. 48.

   [42] Zeller Dec. ¶ 14.

28   **EXHIBIT 20 PAGE 195**

1    The parties also separately met and conferred on August 17, 2007, regarding

2  MGA's failure to produce the documents it had received from Union Bank, as

3  required by the May 15 Order.[43]  During the meet and confer, MGA acknowledged

4  that it had not yet produced all responsive documents from Union Bank, though it

5  was required to do so by July 31, 2007.[44]  MGA then promised to produce all Union

6  Bank statements by August 21, 2007, but stated that it intended to redact these

7  documents.[45]  Mattel explained by letter that same day that MGA was *not* entitled to

8  redact these documents and reiterated that the May 15 Order specifically compelled

9  MGA to produce its compelled documents in un-redacted form, except for

10  redactions justified by the attorney-client privilege or work-product doctrine.[46]

11    Nonetheless, MGA's August 21 production of Union Bank documents -- in

12  addition to being nearly three weeks late -- was so heavily redacted as to be

13  unintelligible.   Many pages were *entirely* redacted.[47]   Though MGA promised

14  Mattel that it would provide these same documents with MGA's "final" redactions

15  by August 23, 2007, MGA failed to do so, and then avoided Mattel's follow-up

16  efforts.  When MGA finally re-produced these documents on August 27, 2007 (and

17  then again, with minor modifications, on August 29, 2007), the re-produced versions

18  still had bank account numbers, information about subsidiaries, and other financial

19  data improperly redacted.[48]  None of this information is privileged.  Mattel wrote to

20

21

22

23  _____

    [43]  Proctor Dec. ¶ 2.
24  [44]  Id.
    [45]  Id.
25  [46]  Id., Exh. 1.
26  [47]  Id. ¶ 3, Exh. 2.
    [48]  Id. ¶ 4, Ex. 4 and 6.
27

28

EXHIBIT 20 PAGE 196

1  MGA on August 28, 2007, stating that its redactions violate the May 15 Order.[49]

2  MGA still has not produced the Union Bank statements in un-redacted form.[50]

**Argument**

3

4  I.    **THE COURT SHOULD ENFORCE ITS MAY 15 ORDER AND**

5        **REQUIRE MGA TO PRODUCE ITS COMPELLED DOCUMENTS IN**

6        **UN-REDACTED FORM**

7        A.    **Even After the May 15 Order, MGA Has Continued to Produce**

8               **Compelled Documents with Redactions Based on Grounds Other**

9               **Than Privilege**

10     The May 15 Order requires MGA to "produce all documents in un-redacted

11  form, except for redactions that are justified by the attorney-client privilege or work

12  product doctrine."[51]  MGA has repeatedly violated this Order and produced, even

13  after May 15, 2007, hundreds of compelled documents with improper redactions,

14  including purchase orders, payment vouchers, e-mails, transcripts and sworn

15  statements.[52]

16     For example, numerous of the compelled sworn statements and transcripts of

17  proceedings in other matters are redacted so heavily that *hundreds of pages* were

18  produced blank.[53]  The testimony of one MGA witness in the MGA v. Ubi Soft

19  arbitration, Luc Vahal, was produced entirely redacted.[54]  Isaac Larian's deposition

20  transcript in the Art Attacks Inc., LLC v. MGA Entertainment, Inc. case has over

21  100 pages of Mr. Larian's testimony heavily or entirely redacted.[55]  The redacted

22

23    [49]  Id., Exh. 5.

24    [50]  Id. ¶ 6.

25    [51]  Zeller Dec. Exh. 1 at 14:10-11.

      [52]  See, e.g., Zeller Dec. Exhs. 3-43, Proctor Dec. Exs. 2, 4, 6.

26    [53]  See, e.g., Zeller Dec. Exhs. 10-19.

27    [54]  Zeller Dec. Exh. 11.

      [55]  Zeller Dec. Exh. 10

28

**EXHIBIT 20 PAGE 197**

1   testimony appears to include information regarding: (i) MGA's licensing and royalty
2   revenues from Bratz; (ii) compensation that MGA paid to Carter Bryant for Bratz;
3   (iii) Larian's communications with Bryant regarding creation and development of
4   the Bratz line; and (iv) dates that MGA first started work on Bratz -- all key issues
5   and information that MGA was indisputably ordered to produce without redactions
6   by the May 15 Order.[56]

7       Many compelled purchase orders and payment vouchers are also redacted,
8   with "unit cost," "amount," "amount paid," "discount," "write-off," "net," "date
9   requested," "date promised" and/or "total value" fields blanked out.[57]   Similarly,
10  more than half of the pages in MGA's Union Bank production contain redactions
11  that violate the May 15 Order, and hinder Mattel from gleaning pertinent
12  information from the documents.  For instance, identifying information necessary to
13  match the bank statements with other financial documents appears to have been
14  redacted.[58]

15      Despite numerous meet and confers on the subject, MGA has failed to comply
16  with the May 15 Order.

17      **B.**    **MGA Has Also Failed to Produce Un-Redacted Copies of**
18      **Documents That MGA Had Improperly Produced in Redacted**
19      **Form Prior to the May 15 Order**

20      The May 15 Order also required MGA to provide Mattel with un-redacted
21  copies of those documents that MGA previously produced in redacted form, unless
22  such redactions were based on privilege or attorney work product doctrine.[59]
23  However, MGA has not complied with this obligation either.   Many emails

---

[56]  See id.
[57]  See, e.g., Zeller Dec. Exhs. 20-40.
[58]  Proctor Dec. Exh. 6.
[59]  Zeller Dec. Exh. 1.

EXHIBIT 20 PAGE 198

-11-

07209/2213124.4

1  produced by MGA prior to May 15, 2007 had their content redacted in their

2  entirety.[60]   Other documents produced prior to May 15 were redacted to conceal

3  financial information.[61]   These redactions are not based on privilege, yet many of

4  these documents were never re-produced by MGA in un-redacted form.[62]

5      Prior to May 15, 2007, MGA also produced multiple versions of the same

6  documents with merely different redactions.   For example, in May 2005, MGA

7  produced two versions of the same accounting chart.   One version was heavily

8  redacted -- leaving only one column of the chart in the document.[63]   The other

9  version was less redacted, but still had much information blanked out.[64]   MGA is

10 obligated to produce its documents, such as the chart, with *no* redactions. but has

11 failed to do so.   MGA is not entitled to ignore the plain language of the May 15

12 Order.

13 **II.**   **MGA'S FAILURE TO COMPLY WITH THE MAY 15 ORDER HAS**

14      **BEEN WILLFUL, AND IT SHOULD BE SANCTIONED**

15      MGA's continuing failure to comply with the May 15 Order has been willful

16 and flagrant.   MGA has intentionally violated the Court's Order to delay and

17 obstruct Mattel's ability to obtain information it is plainly entitled to and hinder its

18 ability to take follow-up discovery before the discovery cut-off date in January.[65]

19      It is no coincidence that the documents MGA continues to redact also are of

20 critical importance.   For example, MGA has redacted Mr. Larian's sworn testimony

21 regarding MGA's revenues from Bratz, compensation paid to Bryant for Bratz, and

22

23 _____

24   [60]  See, e.g., Zeller Dec. Exhs. 3-5.
     [61]  See, e.g., Zeller Dex. Exhs. 7-9.
25   [62]  Zeller Dec. ¶ 4.
     [63]  Zeller Dec. Exh. 7.
26   [64]  Zeller Dec. Exh. 8.
27   [65]  The discovery cut-off date for Phase One is January 14, 2008.
28

**EXHIBIT** 20 **PAGE** 199

-12-

07209/2213124.4

1  the conception date of Bratz.[66]  *Hundreds of pages* of testimony by MGA witnesses

2  regarding these and other key subjects are blanked out.[67]  Phase One discovery in

3  this case is set to close in only five months.  By delaying compliance and stringing

4  Mattel along in the process, MGA is trying to cut-off or narrow Mattel's opportunity

5  to question witnesses at deposition and to conduct follow up discovery once Mattel

6  finally gets the documents MGA was ordered to produce long ago.

7      Mattel gave MGA notice of its intention to file this motion if MGA failed to

8  rectify its improper redactions more than a month ago.[68]  Since then, Mattel has sent

9  MGA no fewer than five letters, and participated in repeated meet and confers to

10 attempt to obtain compliance.[69]  Instead of complying with the Order or even trying

11 to, MGA dragged out the meet and confer process for over a month, to cause further

12 delay.[70]

13      MGA's willful non-compliance with the May 15 Order should not be

14 tolerated.   Sanctions are justified.   The Discovery Master has broad authority to

15 sanction MGA for its disobedience of the May 15 Order.   Under Federal Rule of

16 Civil Procedure 37(b)(2), the Court "may make such orders in regard to the failure

17 [to comply with the Court's Order] as are just."   See also U.S. v. Westinghouse

18 Electric Corp., 648 F.2d 642, 651 (9th Cir. 1981) ("The choice of discovery

19 sanctions is left to the discretion of the district court."); accord Grimes v. City and

20 County of San Francisco, 951 F.2d 236, 240-241 (9th Cir. 1991) (courts "may,

21 within reason, use as many and as varied sanctions as are necessary to hold the

22 scales of justice even.").   Independently, sanctions may be imposed under 28 U.S.C.

23 § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in

24

25  [66]  Zeller Dec. Exh. 10.
    [67]  Zeller Dec. Exhs. 10-19.
26  [68]  Zeller Dec. Exh. 44.
27  [69]  Zeller Dec. Exs. 44-45, 47; Proctor Dec. Exs. 1, 5.

28

EXHIBIT *20* PAGE *200*

MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF MAY 15, 2007 AND FOR SANCTIONS

1  any case unreasonably and vexatiously may be required by the court to satisfy
2  personally the excess costs, expenses, and attorneys' fees reasonably incurred
3  because of such conduct."  Sanctions under this section are appropriate "for conduct
4  that, viewed objectively, manifests either intentional or reckless disregard of the
5  attorney's duties to the court."  RTC v. Dabney, 73 F.3d 262, 265 (10th Cir. 1995).

6      Sanctions are needed here as a deterrent, and to coerce compliance.  Mattel
7  respectfully requests that MGA be ordered to pay $3,500 as partial reimbursement
8  for the fees and costs that Mattel has incurred in bringing this motion.[71]  Mattel also
9  requests that MGA be fined $5,000 for every day that it fails to produce its
10 documents in un-redacted form, so as to ensure compliance and prevent still further
11 motion practice on this matter.  See Grimes, 951 F.2d at 241 ("magistrates may
12 impose prospective sanctions pursuant to Rule 37 where such sanctions are
13 necessary to enforce compliance with a valid discovery order").

14                              **Conclusion**

15     For the foregoing reasons, the Discovery Master should enforce his May 15,
16 2007 Order and (1) again require MGA to produce documents in un-redacted form,
17 (2) impose sanctions on MGA in the amount of $3,500 to reimburse Mattel for at
18 least part of its attorney's fees, and (3) impose prospective sanctions until MGA
19 fully complies with the May 15 Order.

20
21 DATED:  September 7, 2007           QUINN EMANUEL URQUHART OLIVER &
22                                     HEDGES, LLP
23                                     By _____ DS
24                                        B. Dylan Proctor
25                                        Attorneys for Plaintiff
                                         Mattel, Inc.
26
27  [70]  Zeller Dec. ¶¶ 9-14.
28  [71]  See Zeller Dec. ¶ 15.

EXHIBIT 20 PAGE 201

-14-

MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF MAY 15, 2007 AND FOR SANCTIONS

07209/2213124.4

# EXHIBIT 21

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12 | CARTER BRYANT, an individual,      | Case No. CV 04-09049 SGL (RNBx)
                                          | Consolidated with
13 |                Plaintiff,           | Case No. CV 04-09059
                                          | Case No. CV 05-02727
14 |         vs.
                                          | **DISCOVERY MATTER**
15 | MATTEL, INC., a Delaware corporation,
                                          | **Hon. Edward A. Infante (Ret.)**
16 |                Defendant.           | **Discovery Master**

17 |                                     | [PROPOSED] ORDER REGARDING
                                          | MATTEL, INC.'S MOTION TO
18 | AND CONSOLIDATED CASES              | ENFORCE THE COURT'S ORDER
                                          | OF MAY 15, 2007, TO (I) COMPEL
19 |                                     | MGA TO PRODUCE COMPELLED
                                          | DOCUMENTS (INCLUDING FEE
20 |                                     | AND/OR INDEMNITY
                                          | AGREEMENTS BETWEEN MGA
21 |                                     | AND BRYANT), (II) ORDER THAT
                                          | ANY PRIVILEGE OBJECTIONS
22 |                                     | HAVE BEEN WAIVED, AND (III)
                                          | IMPOSE SANCTIONS

23 |                                     | Date:   December 14, 2007
24 |                                     | Time:   10:45 a.m.
                                          | Place:  JAMS
25 |
                                          | **Phase I:**
26 |                                     | Discovery Cut-Off:   January 28, 2008
                                          | Pre-Trial Conference: May 5, 2008
27 |                                     | Trial Date:          May 27, 2008
28

EXHIBIT 21 PAGE 202
                    12-19

07209/2326426.1

PROPOSED ORDER

**[PROPOSED] ORDER**

Mattel, Inc.'s Motion to Enforce the Court's Order of May 15, 2007 to (I) Compel MGA to Produce Compelled Documents (Including Fee and/or Indemnity Agreements Between MGA And Bryant), (II) Order That Any Privilege Objections Have Been Waived, and (III) Impose Sanctions (the "Motion") came on for hearing before me on December 14, 2007. The matter having been fully briefed and argued, and good cause appearing, IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED IN PART AND DENIED IN PART.

2. MGA Entertainment, Inc. ("MGA") shall produce all non-privileged documents responsive to Request Nos. 1, 2, 49 and 50 in Mattel's First Set of Requests for Production dated March 14, 2005, including documents relating to fee and/or indemnity agreements between Carter Bryant and MGA, as the Discovery Master previously ordered in his May 15, 2007 Order;

3. MGA shall identify any and all documents withheld from its production pursuant to Paragraph 1 above as privileged on a privilege log.

4. Mattel's request that the privilege be deemed waived is DENIED;

5. MGA and/or its prior counsel of record shall pay Mattel monetary sanctions in the amount of $3,500; and

6. The foregoing requirements shall be satisfied on or before December 31, 2007.

**IT IS SO ORDERED.**

DATED: _12-19-_, 2007

Hon. Edward A. Infante (Ret.)
Discovery Master

EXHIBIT 21 PAGE 203

PROPOSED ORDER

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on December 19, 2007, I served the attached: (1) ORDER RE MATTEL, INC.'S MOTION TO ENFORCE THE COURT'S ORDER OF MAY 15, 2007 TO COMPEL MGA TO PRODUCE COMPELLED DOCUMENTS IN UNREDACTED FORM AND FOR ANCTIONS; (2) ORDER RE MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED; and (3) ORDER REGARDING MATTEL, INC.'S MOTION TO ENFORCE THE COURT'S ORDER OF MAY 15, 2007, TO (I) COMPEL MGA TO PRODUCE COMPELLED DOCUMENTS (INCLUDING FEE AND/OR INDEMNITY AGREEMENTS BETWEEN MGA AND BRYANT), (II) ORDER THAT ANY PRIVILEGE OBJECTIONS HAVE BEEN WAIVED, AND (III) IMPOSE SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on December 19, 2007, at San Francisco, California.

_Sandra Chan_
Sandra Chan

EXHIBIT 21 PAGE 204

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc

(RNBx), AO279, DISCOVERY, RELATED-G

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Proctor, Brett on 12/20/2007 at 11:01 AM PST and filed on 12/20/2007

**Case Name:**      Carter Bryant v. Mattel Inc
**Case Number:**     2:04-cv-9049
**Filer:**          Mattel Inc
**Document Number:** 1304

**Docket Text:**
Order Regarding Mattel, Inc.'s Motion to Enforce the Court's Order of May 15, 2007, to (I) Compel MGA to Produce Compelled Documents (Including Fee and/or Indemnity Agreements Between MGA and Bryant), (II) Order That Any Privilege Objections Have Been Waived, and (III) Impose Sanctions filed by Defendant Mattel Inc re: MOTION to Enforce[977] (Proctor, Brett)

### 2:04-cv-9049 Notice has been electronically mailed to:

Timothy L Alger     timalger@quinnemanuel.com

Christa M Anderson   canderson@kvn.com

Jon D Corey     joncorey@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Raoul D Kennedy    rkennedy@skadden.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com

Mark E Overland    moverland@obsklaw.com

Michael H Page    mhp@kvn.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

**EXHIBIT** 21 **PAGE** 205

John Elliot Trinidad    jtrinidad@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock    awaltonhadlock@kvn.com

Matthew M Werdegar    mwerdegar@kvn.com

Michael T Zeller    michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Michelle M Campana
Skadden Arps Slate Meagher & Flom LLP
4 Times Square
New York, NY 10036-6522

John W Keker
Keker & Van Nest
710 Sansome St
San Francisco, CA 94111-1704

Kenneth A Plevan
Skadden Arps Slate Meagher & Flom
4 Times Sq
New York, NY 10036-6522

John B Quinn
Quinn Emanuel Urquhart Oliver & Hedges
865 S Figueroa St, 10th Fl
Los Angeles, CA 90017-2543

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\laurakinsey\Desktop\Order re Fee Agreements.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/20/2007] [FileNumber=5104226-0
] [6835a40c9ab0ec0f01534c75991f9b98a7e12e83d817f8d45c79399ed7b68292040
30c93d75a0ca88b39ca83e1f4a440b2b418d09448c41e9a4be89abff5e219]]

EXHIBIT 21 PAGE 206