# EXHIBIT 15

### Michael T Zeller

| From: | Michael T Zeller |
|---|---|
| Sent: | Friday, January 04, 2008 7:07 PM |
| To: | LMcfarland@kmwlaw.com |
| Cc: | Christa Anderson; Dylan Proctor; Christopher Tayback; Jon Corey; Carl Roth; Miller, Timothy; Bridget Hauler |
| Subject: | Mattel adv. MGA |

**Attachments:** 2341711_Meet and confer letter to McFarland re Marlow depo.DOC

Attached please find a soft copy of a meet and confer letter relating to the Marlow deposition. For your convenience, I have also reproduced the text below. Please let us know when you are available to meet and confer on these and the other outstanding issues we have asked to meet and confer on for some time now.

Dear Larry:

I am writing to request a meet and confer pursuant to paragraph 5 of the Discovery Master Order and Local Rule 37-1 in connection with the deposition of Veronica Marlow.

First, Mattel is entitled to additional time for her deposition. Ms. Marlow raised a large number of new issues about which Mattel is entitled to question her further. For instance, Ms. Marlow revealed that three Mattel employees worked on Bratz while employed by Mattel beginning in the 2000 time period. See Deposition Transcript of Veronica Marlow, dated December 28, 2007, at 306:8-25, 363:15-21. At least two of these individuals worked on Bratz while employed by Mattel for several years. Id. at 288:8-289:21, 307:8-308:1. Neither MGA nor Bryant had ever disclosed these facts previously.

As a further result of such new revelations, Mattel lacked sufficient time to depose Ms. Marlow regarding numerous other topics that go to the heart of this case and on which Ms. Marlow has unique knowledge. For instance, Ms. Marlow is one of a handful of people to whom Mr. Bryant acknowledges showing his Bratz illustrations prior to presenting them to MGA. In addition, she is allegedly the individual who introduced Mr. Bryant to MGA and was involved with Bratz at MGA from its inception. Per Ms. Marlow's own invoices, she performed 169 hours of work on Bratz for MGA prior to the time Mr. Bryant left Mattel in October 2000 and worked with Mr. Bryant to design the fashions and hairstyles for the first Bratz dolls. She also was one of a handful of people who prepared the Bratz dolls used at Hong Kong Toy Fair just two-and-a-half months after Mr. Bryant left Mattel. In addition, she was one of two designers in June 2000 who worked on MGA's alleged "Angel" project—the name of which the face painter of Bratz alleges she was told by Mr. Bryant to use on invoices submitted to MGA for work on Bratz. Because of the unreasonable time constraints on her depositions, Mattel lack sufficient time to inquire into her work on "Angel," on her multitude of invoices showing her work early on, on her work for Hong Kong Toy Fair or on documents relating to the three, newly revealed Mattel employees.

Furthermore, Ms. Marlow worked on multiple Bratz products through 2005, including with the newly revealed Mattel employees. Many of these products are relevant to MGA's claims as well as Mattel's claim. The limited time provided by Ms. Marlow was not sufficient to ask questions about these numerous products either.

Compounding this was Ms. Marlow's belated production of additional documents, including on the day

EXHIBIT ___15___

PAGE ___162___

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT __15__

PAGE __163__

of the deposition and including documents that could not be copied because of their quality.[1] One of these documents was a contract with MGA that neither MGA nor Ms. Marlow had produced before. Mattel was denied a meaningful opportunity to question her on these documents.

Not only would it have been impossible to complete Ms. Marlow's deposition in the time allotted under the best of circumstances, but the witness's and counsel's own actions further interfered with Ms. Marlow's deposition. For instance, she gave long, non-responsive speeches to some questions. The record was also replete with improper, suggestive objections and obstructionist tactics by you and other defense counsel. For instance, you repeatedly objected to a line of questioning by stating that various questions were "asked and answered" and that Ms. Marlow had stated that one of Bryant's original Bratz drawings was "very different" from the released Bratz doll, when in fact, Ms. Marlow had never testified thusly. Marlow Depo. Tr. at 174:4-177:3.

In addition, counsel improperly instructed Ms. Marlow not to answer questions based on purported privileges. You improperly instructed Ms. Marlow not to answer questions based on attorney-client privilege, when the information in question was clearly not privileged and indeed could not have been. See, e.g., Marlow Depo. Tr. at 87:8-13. Your other instructions with respect to conversations between Ms. Marlow and her husband fail for the reasons laid out in Mattel's letter of December 18, 2007.

In light of the large number of topics on which Mattel still needs to question Ms. Marlow and in light of counsel's improper instructions and conduct, Mattel anticipates that it needs an additional two days of deposition with Ms. Marlow.

Please let me know when you and your co-counsel are available to meet and confer regarding Ms. Marlow's deposition. In the event that we cannot resolve these matters, Mattel anticipates moving to compel additional deposition time with Ms. Marlow, to overrule instructions not to answer and for sanctions against counsel for Ms. Marlow, MGA and Bryant. I look forward to hearing from you.

Very truly yours,

/s/

Michael T. Zeller

[1]  As you know, the pages had been faxed to us the day before but, because the bulk of the pages were photographic images, they were entirely black when faxed. You then provided us with a single set of the photographs on the day of the deposition, but because of their low quality they could not be reproduced. At that time we asked for a legible copy of the photographed documents, but we did not receive them from you either at the deposition or since then. We accordingly renew our request for legible copies of these documents.

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3180
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: michaelzeller@quinnemanuel.com

EXHIBIT _____ 15

PAGE _____ 164

1/15/2008

## Michael T Zeller

| From: | Michael T Zeller |
|---|---|
| Sent: | Friday, January 04, 2008 7:07 PM |
| To: | LMcfarland@kmwlaw.com |
| Cc: | Christa Anderson; Dylan Proctor; Christopher Tayback; Jon Corey; Carl Roth; Miller, Timothy; Bridget Hauler |
| Subject: | Mattel adv. MGA |

**Attachments:** 2341711_Meet and confer letter to McFarland re Marlow depo.DOC

Attached please find a soft copy of a meet and confer letter relating to the Marlow deposition. For your convenience, I have also reproduced the text below. Please let us know when you are available to meet and confer on these and the other outstanding issues we have asked to meet and confer on for some time now.

Dear Larry:

I am writing to request a meet and confer pursuant to paragraph 5 of the Discovery Master Order and Local Rule 37-1 in connection with the deposition of Veronica Marlow.

First, Mattel is entitled to additional time for her deposition. Ms. Marlow raised a large number of new issues about which Mattel is entitled to question her further. For instance, Ms. Marlow revealed that three Mattel employees worked on Bratz while employed by Mattel beginning in the 2000 time period. See Deposition Transcript of Veronica Marlow, dated December 28, 2007, at 306:8-25, 363:15-21. At least two of these individuals worked on Bratz while employed by Mattel for several years. Id. at 288:8-289:21, 307:8-308:1. Neither MGA nor Bryant had ever disclosed these facts previously.

As a further result of such new revelations, Mattel lacked sufficient time to depose Ms. Marlow regarding numerous other topics that go to the heart of this case and on which Ms. Marlow has unique knowledge. For instance, Ms. Marlow is one of a handful of people to whom Mr. Bryant acknowledges showing his Bratz illustrations prior to presenting them to MGA. In addition, she is allegedly the individual who introduced Mr. Bryant to MGA and was involved with Bratz at MGA from its inception. Per Ms. Marlow's own invoices, she performed 169 hours of work on Bratz for MGA prior to the time Mr. Bryant left Mattel in October 2000 and worked with Mr. Bryant to design the fashions and hairstyles for the first Bratz dolls. She also was one of a handful of people who prepared the Bratz dolls used at Hong Kong Toy Fair just two-and-a-half months after Mr. Bryant left Mattel. In addition, she was one of two designers in June 2000 who worked on MGA's alleged "Angel" project—the name of which the face painter of Bratz alleges she was told by Mr. Bryant to use on invoices submitted to MGA for work on Bratz. Because of the unreasonable time constraints on her depositions, Mattel lack sufficient time to inquire into her work on "Angel," on her multitude of invoices showing her work early on, on her work for Hong Kong Toy Fair or on documents relating to the three, newly revealed Mattel employees.

Furthermore, Ms. Marlow worked on multiple Bratz products through 2005, including with the newly revealed Mattel employees. Many of these products are relevant to MGA's claims as well as Mattel's claim. The limited time provided by Ms. Marlow was not sufficient to ask questions about these numerous products either.

Compounding this was Ms. Marlow's belated production of additional documents, including on the day

EXHIBIT __15__

PAGE __165__

WRITER'S DIRECT DIAL NO.
(213) 443-3180

WRITER'S INTERNET ADDRESS
michaelzeller@quinnemanuel.com

January 4, 2008

**VIA EMAIL AND U.S. MAIL**

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212


Re:     Mattel v. Bryant, et al.

Dear Larry:

I am writing to request a meet and confer pursuant to paragraph 5 of the Discovery Master Order
and Local Rule 37-1 in connection with the deposition of Veronica Marlow.

First, Mattel is entitled to additional time for her deposition. Ms. Marlow raised a large number
of new issues about which Mattel is entitled to question her further. For instance, Ms. Marlow
revealed that three Mattel employees worked on Bratz while employed by Mattel beginning in
the 2000 time period. See Deposition Transcript of Veronica Marlow, dated December 28, 2007,
at 306:8-25, 363:15-21. At least two of these individuals worked on Bratz while employed by
Mattel for several years. Id. at 288:8-289:21, 307:8-308:1. Neither MGA nor Bryant had ever
disclosed these facts previously.

As a further result of such new revelations, Mattel lacked sufficient time to depose Ms. Marlow
regarding numerous other topics that go to the heart of this case and on which Ms. Marlow has
unique knowledge. For instance, Ms. Marlow is one of a handful of people to whom Mr. Bryant
acknowledges showing his Bratz illustrations prior to presenting them to MGA. In addition, she
is allegedly the individual who introduced Mr. Bryant to MGA and was involved with Bratz at

EXHIBIT __/5__

PAGE __/66__

MGA from its inception. Per Ms. Marlow's own invoices, she performed 169 hours of work on Bratz for MGA prior to the time Mr. Bryant left Mattel in October 2000 and worked with Mr. Bryant to design the fashions and hairstyles for the first Bratz dolls. She also was one of a handful of people who prepared the Bratz dolls used at Hong Kong Toy Fair just two-and-a-half months after Mr. Bryant left Mattel. In addition, she was one of two designers in June 2000 who worked on MGA's alleged "Angel" project—the name of which the face painter of Bratz alleges she was told by Mr. Bryant to use on invoices submitted to MGA for work on Bratz. Because of the unreasonable time constraints on her depositions, Mattel lack sufficient time to inquire into her work on "Angel," on her multitude of invoices showing her work early on, on her work for Hong Kong Toy Fair or on documents relating to the three, newly revealed Mattel employees.

Furthermore, Ms. Marlow worked on multiple Bratz products through 2005, including with the newly revealed Mattel employees. Many of these products are relevant to MGA's claims as well as Mattel's claim. The limited time provided by Ms. Marlow was not sufficient to ask questions about these numerous products either.

Compounding this was Ms. Marlow's belated production of additional documents, including on the day of the deposition and including documents that could not be copied because of their quality.[1] One of these documents was a contract with MGA that neither MGA nor Ms. Marlow had produced before. Mattel was denied a meaningful opportunity to question her on these documents.

Not only would it have been impossible to complete Ms. Marlow's deposition in the time allotted under the best of circumstances, but the witness's and counsel's own actions further interfered with Ms. Marlow's deposition. For instance, she gave long, non-responsive speeches to some questions. The record was also replete with improper, suggestive objections and obstructionist tactics by you and other defense counsel. For instance, you repeatedly objected to a line of questioning by stating that various questions were "asked and answered" and that Ms. Marlow had stated that one of Bryant's original Bratz drawings was "very different" from the released Bratz doll, when in fact, Ms. Marlow had never testified thusly. Marlow Depo. Tr. at 174:4-177:3.

In addition, counsel improperly instructed Ms. Marlow not to answer questions based on purported privileges. You improperly instructed Ms. Marlow not to answer questions based on attorney-client privilege, when the information in question was clearly not privileged and indeed could not have been. See, e.g., Marlow Depo. Tr. at 87:8-13. Your other instructions with respect to conversations between Ms. Marlow and her husband fail for the reasons laid out in Mattel's letter of December 18, 2007.

---

[1]   As you know, the pages had been faxed to us the day before but, because the bulk of the pages were photographic images, they were entirely black when faxed. You then provided us with a single set of the photographs on the day of the deposition, but because of their low quality they could not be reproduced. At that time we asked for a legible copy of the photographed documents, but we did not receive them from you either at the deposition or since then. We accordingly renew our request for legible copies of these documents.

2

EXHIBIT __15__

PAGE __167__

In light of the large number of topics on which Mattel still needs to question Ms. Marlow and in light of counsel's improper instructions and conduct, Mattel anticipates that it needs an additional two days of deposition with Ms. Marlow.

Please let me know when you and your co-counsel are available to meet and confer regarding Ms. Marlow's deposition. In the event that we cannot resolve these matters, Mattel anticipates moving to compel additional deposition time with Ms. Marlow, to overrule instructions not to answer and for sanctions against counsel for Ms. Marlow, MGA and Bryant. I look forward to hearing from you.

Very truly yours,

/s/

Michael T. Zeller

3

EXHIBIT __15__

PAGE __168__

WRITER'S DIRECT DIAL NO.
**(213) 443-3180**

WRITER'S INTERNET ADDRESS
**michaelzeller@quinnemanuel.com**

January 4, 2008

**VIA EMAIL AND U.S. MAIL**

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:     Mattel v. Bryant, et al.

Dear Larry:

I am writing to request a meet and confer pursuant to paragraph 5 of the Discovery Master Order and Local Rule 37-1 in connection with the deposition of Veronica Marlow.

First, Mattel is entitled to additional time for her deposition. Ms. Marlow raised a large number of new issues about which Mattel is entitled to question her further. For instance, Ms. Marlow revealed that three Mattel employees worked on Bratz while employed by Mattel beginning in the 2000 time period. See Deposition Transcript of Veronica Marlow, dated December 28, 2007, at 306:8-25, 363:15-21. At least two of these individuals worked on Bratz while employed by Mattel for several years. Id. at 288:8-289:21, 307:8-308:1. Neither MGA nor Bryant had ever disclosed these facts previously.

As a further result of such new revelations, Mattel lacked sufficient time to depose Ms. Marlow regarding numerous other topics that go to the heart of this case and on which Ms. Marlow has unique knowledge. For instance, Ms. Marlow is one of a handful of people to whom Mr. Bryant acknowledges showing his Bratz illustrations prior to presenting them to MGA. In addition, she is allegedly the individual who introduced Mr. Bryant to MGA and was involved with Bratz at

EXHIBIT ___15___

PAGE ___169___

MGA from its inception. Per Ms. Marlow's own invoices, she performed 169 hours of work on Bratz for MGA prior to the time Mr. Bryant left Mattel in October 2000 and worked with Mr. Bryant to design the fashions and hairstyles for the first Bratz dolls. She also was one of a handful of people who prepared the Bratz dolls used at Hong Kong Toy Fair just two-and-a-half months after Mr. Bryant left Mattel. In addition, she was one of two designers in June 2000 who worked on MGA's alleged "Angel" project—the name of which the face painter of Bratz alleges she was told by Mr. Bryant to use on invoices submitted to MGA for work on Bratz. Because of the unreasonable time constraints on her depositions, Mattel lack sufficient time to inquire into her work on "Angel," on her multitude of invoices showing her work early on, on her work for Hong Kong Toy Fair or on documents relating to the three, newly revealed Mattel employees.

Furthermore, Ms. Marlow worked on multiple Bratz products through 2005, including with the newly revealed Mattel employees. Many of these products are relevant to MGA's claims as well as Mattel's claim. The limited time provided by Ms. Marlow was not sufficient to ask questions about these numerous products either.

Compounding this was Ms. Marlow's belated production of additional documents, including on the day of the deposition and including documents that could not be copied because of their quality.[1] One of these documents was a contract with MGA that neither MGA nor Ms. Marlow had produced before. Mattel was denied a meaningful opportunity to question her on these documents.

Not only would it have been impossible to complete Ms. Marlow's deposition in the time allotted under the best of circumstances, but the witness's and counsel's own actions further interfered with Ms. Marlow's deposition. For instance, she gave long, non-responsive speeches to some questions. The record was also replete with improper, suggestive objections and obstructionist tactics by you and other defense counsel. For instance, you repeatedly objected to a line of questioning by stating that various questions were "asked and answered" and that Ms. Marlow had stated that one of Bryant's original Bratz drawings was "very different" from the released Bratz doll, when in fact, Ms. Marlow had never testified thusly. Marlow Depo. Tr. at 174:4-177:3.

In addition, counsel improperly instructed Ms. Marlow not to answer questions based on purported privileges. You improperly instructed Ms. Marlow not to answer questions based on attorney-client privilege, when the information in question was clearly not privileged and indeed could not have been. See, e.g., Marlow Depo. Tr. at 87:8-13. Your other instructions with respect to conversations between Ms. Marlow and her husband fail for the reasons laid out in Mattel's letter of December 18, 2007.

---

[1]    As you know, the pages had been faxed to us the day before but, because the bulk of the pages were photographic images, they were entirely black when faxed. You then provided us with a single set of the photographs on the day of the deposition, but because of their low quality they could not be reproduced. At that time we asked for a legible copy of the photographed documents, but we did not receive them from you either at the deposition or since then. We accordingly renew our request for legible copies of these documents.

07209/2336249.1

2

EXHIBIT __15__

PAGE __170__

In light of the large number of topics on which Mattel still needs to question Ms. Marlow and in
light of counsel's improper instructions and conduct, Mattel anticipates that it needs an additional
two days of deposition with Ms. Marlow.

Please let me know when you and your co-counsel are available to meet and confer regarding
Ms. Marlow's deposition. In the event that we cannot resolve these matters, Mattel anticipates
moving to compel additional deposition time with Ms. Marlow, to overrule instructions not to
answer and for sanctions against counsel for Ms. Marlow, MGA and Bryant. I look forward to
hearing from you.

Very truly yours,

/s/

Michael T. Zeller

07209/2336249.1                                 3        EXHIBIT ___15___

                                                        PAGE ___171___

# EXHIBIT 16

## quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

November 15, 2007

VIA FACSIMILE AND U.S. MAIL

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:     Bryant v. Mattel, Inc.

Dear Larry:

I write regarding additional outstanding discovery issues relating to your clients, Ms. Hatch-
Leahy, Ms. Marlow, Ms. Cloonan and Ms. Halpern.

First, in July of this year, you suggested that each of these individuals may have additional
documents to produce in response to Mattel's subpoenas to them. Since that time, according to
our records, we have received the following productions of documents from them:

*      Ms. Leahy:  29 pages (KMW-L 00077.01 - KMW-L 00105.01) produced on
       August 14, 2007 and 352 pages (KMW-L 00077.02 - KMW-L 00428) produced
       on October 26, 2007.  We also received 2 sets of printouts from Ms. Leahy's hard
       drives on October 29, 2007, consisting of 42 pages (ML1FR000001 -
       ML1FR000042) and 182 pages (ML2FR00043 - ML2FR00224), respectively.
       This is in addition to the 76 pages (SABW-L 00001 - SABW-L 00076) produced
       on May 17, 2005.

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2294931.1

EXHIBIT ___/6_____

PAGE ___/72_____

- Ms. Marlow: 2,374 pages (KMW-M 00667 - KMW-M 03040) produced on
  August 29, 2007, 1,640 pages (KMW-M 03041 - KMW-M 04680) produced on
  September 24, 2007 and 2,014 pages (KMW-M 04681 - KMW-M 06694)
  produced on October 11, 2007. This is in addition to the 662 pages (SABW-M
  00001 - SABW-M 00662) produced on May 17, 2005 and the 4 pages (SABW-M
  00663 - SABW-M 00666) produced on August 16, 2006.

- Ms. Cloonan: Hard copy printouts of 27 pages (ACFR000364 - ACFR000390)
  from her hard drive received on October 29, 2007. To our knowledge, other than
  these documents on her computer, Ms. Cloonan has never produced any
  documents in response to Mattel's subpoena.

- Ms. Halpern: Hard copy printouts of 140 pages (SHFR000225 - SHFR000364)
  from her hard drive received on October 29, 2007. This is in addition to the 131
  pages (SH 0001 - SH 0131) produced on May 6, 2005.

Please confirm that your clients' productions of responsive documents are now complete. As you
know, none of your clients has ever produced a privilege log of documents withheld on privilege
grounds, and we understand based on prior communications that your clients have not withheld
responsive documents based on any of their objections. Accordingly, please also confirm that all
documents which are responsive to Mattel's subpoenas to your clients and which are in your
clients' possession, custody or control have now been produced. As you have suggested in the
past, we hope to resolve any outstanding issues regarding your clients' document productions in
short order, before your clients are deposed, to the extent it is possible to do so.

Second, upon review of the documents your clients have recently produced, it is apparent that
your clients are continuing to improperly redact their documents. In fact, all of the recent
productions contain numerous redactions.[1] Nor have your clients remedied the improper
redactions they have made in prior document productions.[2] Even more troubling, it appears that
some documents have been redacted and produced without any indication that they were
redacted. For example, the redacted documents from Ms. Halpern's production of May 6, 2005

---

[1]  See, e.g., the documents stamped KMW-L 00088.02, KMW-L 00117, KMW-L 00169,
KMW-L 00224, KMW-L 00265, KMW-L 00293 and KMW-L 00333, from Ms. Leahy's October
26, 2007 production; the documents stamped KMW-M 03048, KMW-M 03128, KMW-M
03131, KMW-M 03175-76, KMW-M 03469-72, KMW-M 03532-33, KMW-M 03891, KMW-M
04383-84 and KMW-M 04576-80, from Ms. Marlow's September 24, 2007 production; and the
documents stamped KMW-M 04683, KMW-M 04727, KMW-M 04862, KMW-M 04985,
KMW-M 05114, KMW-M 05171 and KMW-M 05709, from Ms. Marlow's October 11, 2007
production.

[2]  See, e.g., the documents stamped SH 0097, SH 0108, SH 0119 and SH 0120, from Ms.
Halpern's May 6, 2005 production; and the documents stamped SABW-L 00001, SABW-L
00009 and SABW-L 00011, from Ms. Leahy's May 17, 2005 production.

07209/2294931.1                                        2

EXHIBIT   16
PAGE     173

lack redaction stamps -- there are merely blank areas in the documents. Documents KMW-L
00388 and KMW-L 00426 from Ms. Leahy's October 26, 2007 production and document
SABW-L 00050 are also examples of documents that appear to be redacted but which do not
bear redaction stamps.

We are entitled to unredacted copies of all documents that have been produced by your clients.
The redactions to your clients' documents do not appear to be made on the basis of privilege, and
as noted we have never received a privilege log for any of your clients. Redactions on any other
basis with respect to these documents are improper. In fact, in Orders dated January 25, 2007
and May 15, 2007 Judge Infante expressly held that Bryant's and MGA's redactions on grounds
other than privilege are improper given the Protective Order in place in this case, which fully
addresses any perceived confidentiality concerns.

Last, I do not believe we have received responses to two additional matters Ms. Wines
previously discussed with you. First, in the past we have requested (including in a letter dated
June 25, 2007 and an email dated June 27, 2007) that you confirm for all four of your clients
whether they have fee agreements, written or otherwise, with MGA. As you know from the
Orders we have directed to your attention, Judge Infante has found such fee agreements to be
relevant to bias and credibility and non-privileged. You confirmed in a letter dated June 28,
2007 that you would review Judge Infante's Orders and relevant case law and then get back to us.
To our knowledge, we have not received any further response. Accordingly, please confirm
whether your clients have such agreements with MGA as soon as possible and, if they do, please
promptly produce these agreements and all documents relating to the agreements.

Second, in the past you stated (including by letter dated June 28, 2007) that you would confirm
with Ms. Marlow that her Wells Fargo account was the only checking account she used for
MGA. Again, to our knowledge we have not received any further response in this regard. As
you know, we are now aware of a Bank of America account used by Ms. Marlow as well. Please
let us know if the Bank of America and Wells Fargo accounts are the only checking accounts
Ms. Marlow used in connection with her work for MGA. If Ms. Marlow used other accounts in
connection with her work with MGA, please provide us with the name of the bank(s) and the
account numbers.

I look forward to hearing from you at your earliest convenience, and remain hopeful we will be
able to resolve these issues without motion practice. Out of an abundance of caution, please
consider this to be a request for a meet and confer on a contemplated motion to compel and for
sanctions pursuant to Section 5 of the Order for the Appointment of a Discovery Master.

Very truly yours,

B. Dylan Proctor

3

EXHIBIT ____16____

PAGE ____174____

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**   November 15, 2007          **NUMBER OF PAGES, INCLUDING COVER: 4**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Larry McFarland, Esq. Keats, McFarland & Wilson, LLP | 310-248-3830 | 310-860-0363 |

**FROM:**   B. Dylan Proctor, Esq.

**RE:**   Mattel, Inc. v. Bryant

**MESSAGE:**

NOV 1 5 2007

| 07209/2152611.1 | | ROUTE/ | | ☒ CONFIRM FAX |
|---|---|---|---|---|
| CLIENT # | 07209 | RETURN TO: | Tiffany Garcia/3rd Floor | ☒ INCLUDE CONF. REPORT |
| OPERATOR: | | | CONFIRMED?   ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT ____16____

PAGE ____175____

Confirmation Report — Memory Send

```
                              Page      : 001
                              Date & Time: 11-15-2007   12:33
                              Line 1    : 2134433100
                              Line 2    :
                              Machine ID : QUINN EMANUEL
```

| | | |
|---|---|---|
| Job number | : | 419 |
| Date | : | 11-15  12:31 |
| To | : | ☎9414#07209#13108600363 |
| Number of pages | : | 004 |
| Start time | : | 11-15  12:31 |
| End time | : | 11-15  12:33 |
| Pages sent | : | 004 |
| Status | : | OK |

Job number   : 419          *** SEND SUCCESSFUL ***

## QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

### LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE:   November 15, 2007                    NUMBER OF PAGES, INCLUDING COVER: 4

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Larry McFarland, Esq.<br>Keats, McFarland & Wilson, LLP | 310-248-3830 | 310-860-0363 |

FROM:   B. Dylan Proctor, Esq.

RE:   Mattel, Inc. v. Bryant

MESSAGE:

| 07209/2153411.1 | | ROUTE/ | | ☑ CONFIRM FAX |
|---|---|---|---|---|
| CLIENT # | 07209 | RETURN TO: | Tiffany Garcia/3rd Floor | ☑ INCLUDE CONF. REPORT |
| OPERATOR: | *curli* | | CONFIRMED?   ☐ No  ☐ Yes | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT _____16_____

PAGE _____176_____

# EXHIBIT 17

## quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

November 28, 2007

**VIA FACSIMILE AND U.S. MAIL**

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:     Mattel, Inc. v. Bryant

Dear Larry:

I write in response to your letter of November 21, 2007.

First, your proposal to make photocopies of the three dimensional objects your clients have made available for inspection and to produce those photocopies with Bates numbers is acceptable. Please provide these photocopies once they have been made. You are correct in your assertion that the photographs and videotapes we have taken of these objects are protected work product in our view. However, you are incorrect in asserting that Mattel has agreed not to use these photographs or videotapes at trial. Mattel did not agree to that in the past, and is not willing to so agree now. We are not presently in a position, or required, to disclose our trial exhibits. Nor do we understand why your clients, all third parties, would have any legitimate interest in delimiting Mattel's trial exhibit list.

Second, regarding the three-dimensional objects you received from Ms. Marlow and Ms. Leahy, we will send someone from our office to review them this Friday, November 30 at 9:30 a.m. Please let us know if this date and time does not work for you for any reason, and we will re-schedule.

quinn emanuel urquhart oliver & hedges, llp

07209 2302513.1

EXHIBIT __17__

PAGE __177__

Third, regarding Ms. Cloonan's computer disk or drive, we would ask that you please provide the drive to Data Chasers as you suggest. We will agree to follow the protocol outlined in our September 13, 2007 letter, with the understanding set forth in your letter that you will review anything found by Data Chasers within 5 court days of receipt and provide the same to us. We expect you will proceed with appropriate expedition to ensure that Ms. Cloonan's documents are produced to Mattel sufficiently in advance of her deposition to enable Mattel to examine her on them as needed.

Fourth, as we stated in our letters of June 25, 2007 and November 15, 2007, Judge Infante has already found fee agreements to be relevant to bias and credibility, and non-privileged. See Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at 11-12; Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for Sanctions, dated June 19, 2007, at 2-4. Copies of these orders are attached for your reference. As the Court has held, the Business and Professions Code's privilege provisions do not apply in this federal question case, which is governed by federal privilege law. Nevertheless, we understand from your letter that your clients have withheld fee agreements without listing them on any privilege log. We hereby ask once again that they be produced. Please let us know if you are willing to do so. If not, we will plan to address the issue to the Court.

Fifth, and again as we stated in our letter of November 15, 2007, we believe we are entitled to unredacted copies of all documents that have been produced by your clients. You do not assert that the redactions to your clients' documents were made on the basis of privilege, and redactions on any other basis are improper. In fact, in Orders dated January 25, 2007 and May 15, 2007, Judge Infante expressly held that redactions on grounds other than privilege are improper given the protective order in place in this case, which fully addresses any perceived confidentiality or privacy concerns. See Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at 14; Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 11, n. 4. Copies of these orders are attached for your reference. We hereby request again that you produce your clients' documents in unredacted form. Please let us know if you are willing to do so. If not, we will plan to address the issue to the Court. Please understand, however, that if Mattel is not able to examine your clients on redacted or other withheld information because you have withheld it at the time of their depositions, Mattel reserves its right to question your clients on such information in the future at a renewed deposition, once Mattel obtains access to the withheld information.

Last, please provide the information regarding additional bank accounts used by Ms. Marlow in connection with her work at MGA. We will agree to abide by the protocol outlined in the September 13, 2007 and November 2, 2007 letters regarding documents that are obtained from additional accounts.

07209/2302513.1

2

EXHIBIT  17

PAGE  178

In our letter of November 15, 2007, we requested a meet and confer on a contemplated motion to compel and for sanctions. If you wish to discuss these matters, please let me know when you are available to meet and confer this week. I look forward to hearing from you.

Very truly yours,

B. Dylan Proctor

Enclosures

EXHIBIT ___17___

PAGE ___179___

# EXHIBIT 18

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 19

RECEIVED

DEC 0 5 2007

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212
www.kmwlaw.com

WRITER'S DIRECT DIAL
(310) 777-3750
WRITER'S EMAIL
tmcfarland@kmwlaw.com

December 3, 2007

VIA FACSIMILE AND U.S. MAIL

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:    Mattel v. Bryant

Dear Dylan:

I am writing in response to your letter dated November 28, 2007.

First, we will make photocopies of the three-dimensional objects that have been produced
to you and will assign each photo a Bates number.  With respect to my question regarding the
photographs and video taken by your firm of the sculpts and three-dimensional objects that we
have produced, you ignored my question with respect to whether you intend to use these
videotapes or photographs at the depositions of any of my clients.  I would appreciate the
courtesy of an answer.

Second, this letter serves to confirm that an associate from your office, along with two
assistants, visited our offices today to photograph and videotape the remaining three-dimensional
items produced by Ms. Marlow and Ms. Leahy.  We expect that they will return tomorrow to
complete their review of the items.

Third, with respect to the computer disk belonging to Ms. Cloonan, we spoke with Mr.
Albee on Friday.  Mr. Albee emailed me the search results on Friday and we will review and
respond within the five-day time frame as agreed.

Fourth, you state that "Judge Infante has already found fee agreements to be relevant to
bias and credibility, and non-privileged."[1]  Our review of the orders attached to your letter reveals
that these orders apply to Mr. Bryant and MGA, who are, of course, both parties to this litigation.
We are not aware of any orders entered by Judge Infante with respect to the production of retainer
agreements by third parties.  Moreover, your reliance on Judge Infante's orders is undercut by the

---

[1] As we have repeatedly stated, it is our position that all discovery disputes with respect to our witnesses must be
heard by Magistrate Judge Block.

EXHIBIT ____19____

PAGE ____181____

B. Dylan Procter, Esq.
December 3, 2007
Page 2

positions taken by your firm. It is my understanding that after Judge Infante's order dated January 25, 2007, your firm objected to the production of third-party retainer letters as privileged and that you have stood by these objections and not produced these agreements. In the Objections of Mattel, Inc. and Timothy James Lider to MGA Entertainment Inc.'s Subpoena for Production of Documents, dated March 29, 2007, you stated as follows:

Request NO. 9:

All DOCUMENTS constituting, mentioning, referring or relating to any agreement or contract between YOU and MATTEL, including MATTEL's inside and outside counsel.

RESPONSE TO REQUEST NO. 9:

Mattel and Lider object to Request No. 9 on the grounds that it is overbroad and unduly burdensome, including in that it seeks all documents on this subject, regardless of whether such documents relate to products or matters at issue in this case. Mattel and Lider further object to the Request on the grounds that it seeks documents that are not relevant to this action or likely to lead to the discovery of admissible evidence. Mattel and Lider further object to this Request on the grounds that it seeks confidential, proprietary and trade secret information that has no bearing on the claims or defenses in this case. Mattel and Lider further object to this Request on the grounds that it seeks documents that are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and the non-designated expert consultant privilege.

Without waiving, and subject to, the foregoing objections and/or privileges, Lider responds as follows: Lider will produce responsive documents in his possession, custody or control, if any, relating to the chain of custody of electronic data relating to MGA's and the other counter-defendants' thefts of Mattel's trade secrets, to the extent not protected by the attorney-client privilege, the work product doctrine and/or the non-designated expert consultant privilege.

If you have produced the retainer letter for Mr. Lider or any other third-party, please provide me with a copy of that document.

Further, it is my understanding that as recently as September 4, 2007, which is well after the dates of all of the orders from Judge Infante that you rely on in your letter, Mattel has continued to take the position that retainer letters are privileged. I am at a loss to understand how you can contend that "Judge Infante has already found fee agreements to be relevant to bias and credibility, and non-privileged," while at the same time objecting as follows:

EXHIBIT ___/9___

PAGE___/8∂___

B. Dylan Procter, Esq.
December 3, 2007
Page 3

### Request 530:

All DOCUMENTS, including but not limited to agreements, draft agreements and correspondence, REFERRING OR RELATING TO the payment or offer of payment of attorneys fees by MATTEL to any PERSON in connection this ACTION.

### Response:

In addition to the general objections stated above which are incorporated herein by reference, Mattel objects to this Request on the grounds that it is overbroad, unduly burdensome and unintelligible, including in that it seeks all documents on this subject without limitation as to time, and regardless of whether such documents relate to products or matters at issue in this case. Mattel further objects to the Request on the grounds that it seeks documents that are not relevant to this action or likely to lead to the discovery of admissible evidence. Mattel further objects to this Request on the grounds that it calls for the disclosure of information subject to the attorney-client privilege, joint defense privilege, the attorney work-product doctrine and other applicable privileges.

Subject to and without waiving the foregoing objections, Mattel responds as follows: Mattel will produce such responsive, non-privileged documents that are in Mattel's possession, custody, or control, if any, that Mattel has been able to locate after a diligent search and reasonable inquiry, to the extent not previously produced.

### Request 531:

DOCUMENTS sufficient to show YOUR fee arrangement with YOUR counsel Quinn Emanuel Urquhart Oliver & Hedges LLP for services in connection with this ACTION, including, but not limited to, a copy of the fee agreement or retainer agreement between YOU and Quinn Emanuel Urquhart Oliver & Hedges LLP.

### Response:

In addition to the general objections stated above which are incorporated herein by reference, Mattel objects to this Request on the grounds that it is overbroad, unduly burdensome and unintelligible, including in that it seeks all documents on this subject without limitation as to time, and regardless of whether such documents relate to products or matters at issue in this case. Mattel further objects to the Request on the grounds that it seeks documents that are not relevant to this action or likely to lead to the discovery of admissible evidence. Mattel further objects to this Request on the grounds that it calls for the disclosure of information subject to the attorney-client privilege, the attorney work-product doctrine and other applicable privileges.

EXHIBIT __19__

PAGE __183__

B. Dylan Procter, Esq.
December 3, 2007
Page 4

You also state in your letter that, "[a]s the Court has held, the Business and Professions
Code's privilege provisions do not apply in this federal question case, which is governed by
federal privilege law." I do not see this holding in the orders attached to your letter. If I have
missed it, I would appreciate it if you would direct me to this holding. Finally, with respect to
your statements regarding a privilege log, as I stated in my letter dated November 21, 2007, it is
our position that the fee agreements between our clients and their attorneys, as well as all
correspondence between our clients and their attorneys, are privileged. In all of my years of
practice, I have never provided a privilege log listing all of the correspondence between me and
my clients where my clients are not parties to the litigation. If you believe that I am required to
do this, please direct me to the relevant authority. In addition, please confirm whether your firm
has produced such a privilege log identifying all communications to and from Mattel.

Fifth, we continue to disagree with your contention that you are "entitled to unredacted
copies of all documents that have been produced by your clients." In support of your argument
you again cite to orders by Judge Infante that address specific discovery disputes between the
parties to this action. Not only are all discovery disputes by their nature fact specific, in the case
of disputes with a third party witness, nonparty status may be considered in evaluating the burden
of complying with a production subpoena under Rule 45. *See Richards of Rockford, Inc. v. Pac.
Gas & Elec. Co.*, 71 F.R.D. 388, 390 (N.D. Cal. 1976) (status of nonparty considered in deciding
motion to compel testimony and production of documents); *see also Katz v. Batavia Marine &
Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty status may be
considered by the court in weighing the burdens"). Therefore, the orders that you rely on are not
controlling as to my clients. In addition, I do not appreciate your threat that if we do not do what
you want, you will burden our third-party witnesses with an additional day of deposition. As you
know, I have long taken the position that I will not allow the depositions of these witnesses to go
beyond one day of seven hours. With respect to the redactions, the matters that we redacted from
the documents were not relevant to this litigation and I am unaware of any requirement that we
produce irrelevant information. For example, certain email chains contained both relevant and
irrelevant information, and we properly redacted the irrelevant information. However, in an
effort to avoid burdening the Court with unnecessary motion practice, we will produce to you
unredacted copies of all of the documents that we have produced other than Ms. Leahy's planner.
Our position with respect to Ms. Leahy's planner is set forth in my letter dated November 14,
2007 and remains unchanged.

Lastly, with respect to the bank records of Ms. Marlow, on Thursday, November 29, 2007,
at approximately 5:00 p.m. you notified me for the first time that your firm was in possession of
all of Ms. Marlow's bank records from Wells Fargo. As you know, this is a violation of the
agreement reached with your partner Susan Wines. That agreement required that all bank
records be produced to me for my review and I would produce all of the documents that related
to agreed upon persons and entities. That agreement was reached after I notified Ms. Wines that I
intended to file an ex parte application to quash a similar subpoena served on Mattel Federal
Credit Union with respect to the bank records for Ms. Cloonan and Ms. Marlow. As you know,
Ms. Wines confirmed our agreement in a letter dated June 14, 2007. In addition, in letters dated

EXHIBIT _____19_____

PAGE _____184_____

B. Dylan Procter, Esq.
December 3, 2007
Page 5

July 23, 2007, September 21, 2007, and November 21, 2007, I notified your firm that I had not yet received the bank records from Wells Fargo. When you told me on Thursday that you were in possession of all of Ms. Marlow's bank records from Wells Fargo, I asked you to agree to return all copies and originals of the Wells Fargo bank records, to confirm that your firm had not reviewed or made any use of these documents and to provide me with the date that your firm received these documents. You told me that you would consider my request. On Friday, I received a copy of the Wells Fargo documents with a cover letter from you that stated as follows:

> Further to our conversation of today, enclosed herewith you will find the Wells
> Fargo documents relating to your client, Veronica Marlow, as produced by Mattel
> to the other parties in this action. As I explained, Wells Fargo sent these
> documents directly to us without any prompting by us, notwithstanding our prior
> understanding that the documents would be produced to you, and in the normal
> course of handling they were produced to all parties on October 2, 2007.

Although you did not answer my question with respect to when your firm received these documents, I note that the Wells Fargo declaration provided with the documents is dated August 27, 2007, which is well after both the date of the agreement entered into by Ms. Wines and my letter dated July 23, 2007, informing you that I had not yet received the banking records. Without waiver of our position that your firm has violated Ms. Marlow's privacy rights and has breached the agreement entered into with Ms. Wines, I reiterate my request that you return all copies and originals of the Wells Fargo bank records, confirm that your firm has not reviewed or made any use of these documents, and provide me with the date that your firm received these documents.

With respect to your request regarding additional bank accounts used by Ms. Marlow in connection with her work with MGA, in light of your firm's violation of our agreement and, as I mentioned to you on Thursday, I believe that Ms. Marlow needs additional protection in order to proceed. What I suggested during our telephone conversation is that you identify the place of production as our offices in all of the subpoenas served on these additional financial institutions. If you agree to this condition, I will provide you with the additional information.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

cc: Thomas J. Nolan
Michael Page

EXHIBIT _19_

PAGE _185_

# EXHIBIT 20

## quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

January 25, 2008

<u>VIA FACSIMILE AND U.S. MAIL</u>
**(310) 860-0363**

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

<u>Production of Redacted Documents by Veronica Marlow</u>

Dear Counsel:

In your letter dated December 3, 2007, you represented that, "we will produce to you unredacted copies of all of the documents that we have produced other than Ms. Leahy's planner." I have attached a copy of that letter for your convenience. Our review of the documents you have since produced as unredacted versions of prior redacted documents shows that the following documents (at least) have still not been produced in unredacted form:

KMW- M 007060
KMW- M 007116
KMW- M 007120
KMW- M 007201
KMW- M 007307
KMW- M 007605
KMW- M 007643

EXHIBIT _____20_____

PAGE _____186_____

### quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2367403.1

As you know, the withholding of these documents -- which include key evidence relating to the
pending Cabrera deposition, among others -- is prejudicing Mattel's ability to complete needed
discovery. Please confirm by the close of business today that these documents will be produced
no later than the close of business Tuesday, January 29th. Absent your agreement to do so we
will be seeking an appropriate order from the Court compelling this production.

Very truly yours,

James Webster (csN)

James J. Webster

JJW:csn
07209/2367403.1
Encl.

cc:     Thomas J. Nolan, Esq.
        Mark E. Overland, Esq.
        Michael H. Page, Esq.

2

EXHIBIT __20__

PAGE __187__

 

## KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212
www.kmwlaw.com

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

December 3, 2007

VIA FACSIMILE AND U.S. MAIL

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:    Mattel v. Bryant

Dear Dylan:

I am writing in response to your letter dated November 28, 2007.

First, we will make photocopies of the three-dimensional objects that have been produced to you and will assign each photo a Bates number. With respect to my question regarding the photographs and video taken by your firm of the sculpts and three-dimensional objects that we have produced, you ignored my question with respect to whether you intend to use these videotapes or photographs at the depositions of any of my clients. I would appreciate the courtesy of an answer.

Second, this letter serves to confirm that an associate from your office, along with two assistants, visited our offices today to photograph and videotape the remaining three-dimensional items produced by Ms. Marlow and Ms. Leahy. We expect that they will return tomorrow to complete their review of the items.

Third, with respect to the computer disk belonging to Ms. Cloonan, we spoke with Mr. Albee on Friday. Mr. Albee emailed me the search results on Friday and we will review and respond within the five-day time frame as agreed.

Fourth, you state that "Judge Infante has already found fee agreements to be relevant to bias and credibility, and non-privileged."[1] Our review of the orders attached to your letter reveals that these orders apply to Mr. Bryant and MGA, who are, of course, both parties to this litigation. We are not aware of any orders entered by Judge Infante with respect to the production of retainer agreements by third parties. Moreover, your reliance on Judge Infante's orders is undercut by the

---

[1] As we have repeatedly stated, it is our position that all discovery disputes with respect to our witnesses must be heard by Magistrate Judge Block.

EXHIBIT _____20_____

PAGE _____188_____

B. Dylan Procter, Esq.
December 3, 2007
Page 2

positions taken by your firm. It is my understanding that after Judge Infante's order dated
January 25, 2007, your firm objected to the production of third-party retainer letters as privileged
and that you have stood by these objections and not produced these agreements. In the
Objections of Mattel, Inc. and Timothy James Lider to MGA Entertainment Inc.'s Subpoena for
Production of Documents, dated March 29, 2007, you stated as follows:

Request NO. 9:

All DOCUMENTS constituting, mentioning, referring or relating to any
agreement or contract between YOU and MATTEL, including MATTEL's inside
and outside counsel.

RESPONSE TO REQUEST NO. 9:

Mattel and Lider object to Request No. 9 on the grounds that it is overbroad and
unduly burdensome, including in that it seeks all documents on this subject,
regardless of whether such documents relate to products or matters at issue in this
case. Mattel and Lider further object to the Request on the grounds that it seeks
documents that are not relevant to this action or likely to lead to the discovery of
admissible evidence. Mattel and Lider further object to this Request on the
grounds that is seeks confidential, proprietary and trade secret information that
has no bearing on the claims or defenses in this case. Mattel and Lider further
object to this Request on the grounds that it seeks documents that are protected
from disclosure by the attorney-client privilege, the attorney work product
doctrine, and the non-designated expert consultant privilege.

Without waiving, and subject to, the foregoing objections and/or privileges, Lider
responds as follows: Lider will produce responsive documents in his possession,
custody or control, if any, relating to the chain of custody of electronic data
relating to MGA's and the other counter-defendants' thefts of Mattel's trade
secrets, to the extent not protected by the attorney-client privilege, the work
product doctrine and/or the non-designated expert consultant privilege.

If you have produced the retainer letter for Mr. Lider or any other third-party, please
provide me with a copy of that document.

Further, it is my understanding that as recently as September 4, 2007, which is well after
the dates of all of the orders from Judge Infante that you rely on in your letter, Mattel has
continued to take the position that retainer letters are privileged. I am at a loss to understand
how you can contend that "Judge Infante has already found fee agreements to be relevant to bias
and credibility, and non-privileged," while at the same time objecting as follows:

EXHIBIT ___20___

PAGE ___189___

B. Dylan Procter, Esq.
December 3, 2007
Page 3

### Request 530:

All DOCUMENTS, including but not limited to agreements, draft agreements and correspondence, REFERRING OR RELATING TO the payment or offer of payment of attorneys fees by MATTEL to any PERSON in connection this ACTION.

### Response:

In addition to the general objections stated above which are incorporated herein by reference, Mattel objects to this Request on the grounds that it is overbroad, unduly burdensome and unintelligible, including in that it seeks all documents on this subject without limitation as to time, and regardless of whether such documents relate to products or matters at issue in this case. Mattel further objects to the Request on the grounds that it seeks documents that are not relevant to this action or likely to lead to the discovery of admissible evidence. Mattel further objects to this Request on the grounds that it calls for the disclosure of information subject to the attorney-client privilege, joint defense privilege, the attorney work-product doctrine and other applicable privileges.

Subject to and without waiving the foregoing objections, Mattel responds as follows: Mattel will produce such responsive, non-privileged documents that are in Mattel's possession, custody, or control, if any, that Mattel has been able to locate after a diligent search and reasonable inquiry, to the extent not previously produced.

### Request 531:

DOCUMENTS sufficient to show YOUR fee arrangement with YOUR counsel Quinn Emanuel Urquhart Oliver & Hedges LLP for services in connection with this ACTION, including, but not limited to, a copy of the fee agreement or retainer agreement between YOU and Quinn Emanuel Urquhart Oliver & Hedges LLP.

### Response:

In addition to the general objections stated above which are incorporated herein by reference, Mattel objects to this Request on the grounds that it is overbroad, unduly burdensome and unintelligible, including in that it seeks all documents on this subject without limitation as to time, and regardless of whether such documents relate to products or matters at issue in this case. Mattel further objects to the Request on the grounds that it seeks documents that are not relevant to this action or likely to lead to the discovery of admissible evidence. Mattel further objects to this Request on the grounds that it calls for the disclosure of information subject to the attorney-client privilege, the attorney work-product doctrine and other applicable privileges.

EXHIBIT _____20_____

PAGE _____190_____

B. Dylan Procter, Esq.
December 3, 2007
Page 4

You also state in your letter that, "[a]s the Court has held, the Business and Professions Code's privilege provisions do not apply in this federal question case, which is governed by federal privilege law." I do not see this holding in the orders attached to your letter. If I have missed it, I would appreciate it if you would direct me to this holding. Finally, with respect to your statements regarding a privilege log, as I stated in my letter dated November 21, 2007, it is our position that the fee agreements between our clients and their attorneys, as well as all correspondence between our clients and their attorneys, are privileged. In all of my years of practice, I have never provided a privilege log listing all of the correspondence between me and my clients where my clients are not parties to the litigation. If you believe that I am required to do this, please direct me to the relevant authority. In addition, please confirm whether your firm has produced such a privilege log identifying all communications to and from Mattel.

Fifth, we continue to disagree with your contention that you are "entitled to unredacted copies of all documents that have been produced by your clients." In support of your argument you again cite to orders by Judge Infante that address specific discovery disputes between the parties to this action. Not only are all discovery disputes by their nature fact specific, in the case of disputes with a third party witness, nonparty status may be considered in evaluating the burden of complying with a production subpoena under Rule 45. *See Richards of Rockford, Inc. v. Pac. Gas & Elec. Co.*, 71 F.R.D. 388, 390 (N.D. Cal. 1976) (status of nonparty considered in deciding motion to compel testimony and production of documents); *see also Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty status may be considered by the court in weighing the burdens"). Therefore, the orders that you rely on are not controlling as to my clients. In addition, I do not appreciate your threat that if we do not do what you want, you will burden our third-party witnesses with an additional day of deposition. As you know, I have long taken the position that I will not allow the depositions of these witnesses to go beyond one day of seven hours. With respect to the redactions, the matters that we redacted from the documents were not relevant to this litigation and I am unaware of any requirement that we produce irrelevant information. For example, certain email chains contained both relevant and irrelevant information, and we properly redacted the irrelevant information. However, in an effort to avoid burdening the Court with unnecessary motion practice, we will produce to you unredacted copies of all of the documents that we have produced other than Ms. Leahy's planner. Our position with respect to Ms. Leahy's planner is set forth in my letter dated November 14, 2007 and remains unchanged.

Lastly, with respect to the bank records of Ms. Marlow, on Thursday, November 29, 2007, at approximately 5:00 p.m. you notified me for the first time that your firm was in possession of all of Ms. Marlow's bank records from Wells Fargo. As you know, this is a violation of the agreement reached with your partner Susan Wines. That agreement required that all bank records be produced to me for my review and I would produce all of the documents that related to agreed upon persons and entities. That agreement was reached after I notified Ms. Wines that I intended to file an ex parte application to quash a similar subpoena served on Mattel Federal Credit Union with respect to the bank records for Ms. Cloonan and Ms. Marlow. As you know, Ms. Wines confirmed our agreement in a letter dated June 14, 2007. In addition, in letters dated

EXHIBIT __20__

PAGE __191__

B. Dylan Procter, Esq.
December 3, 2007
Page 5

July 23, 2007, September 21, 2007, and November 21, 2007, I notified your firm that I had not yet received the bank records from Wells Fargo. When you told me on Thursday that you were in possession of all of Ms. Marlow's bank records from Wells Fargo, I asked you to agree to return all copies and originals of the Wells Fargo bank records, to confirm that your firm had not reviewed or made any use of these documents and to provide me with the date that your firm received these documents. You told me that you would consider my request. On Friday, I received a copy of the Wells Fargo documents with a cover letter from you that stated as follows:

> Further to our conversation of today, enclosed herewith you will find the Wells Fargo documents relating to your client, Veronica Marlow, as produced by Mattel to the other parties in this action. As I explained, Wells Fargo sent these documents directly to us without any prompting by us, notwithstanding our prior understanding that the documents would be produced to you, and in the normal course of handling they were produced to all parties on October 2, 2007.

Although you did not answer my question with respect to when your firm received these documents, I note that the Wells Fargo declaration provided with the documents is dated August 27, 2007, which is well after both the date of the agreement entered into by Ms. Wines and my letter dated July 23, 2007, informing you that I had not yet received the banking records. Without waiver of our position that your firm has violated Ms. Marlow's privacy rights and has breached the agreement entered into with Ms. Wines, I reiterate my request that you return all copies and originals of the Wells Fargo bank records, confirm that your firm has not reviewed or made any use of these documents, and provide me with the date that your firm received these documents.

With respect to your request regarding additional bank accounts used by Ms. Marlow in connection with her work with MGA, in light of your firm's violation of our agreement and, as I mentioned to you on Thursday, I believe that Ms. Marlow needs additional protection in order to proceed. What I suggested during our telephone conversation is that you identify the place of production as our offices in all of the subpoenas served on these additional financial institutions. If you agree to this condition, I will provide you with the additional information.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

cc: Thomas J. Nolan
    Michael Page

EXHIBIT __20__

PAGE __192__