# EXHIBIT 21

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com
January 2, 2008

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

VIA FACSIMILE, U.S. MAIL and E-MAIL

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:     Mattel v. Bryant

Dear Dylan:

I am writing in response to your letter dated December 21, 2007, which responds to my letter dated December 18, 2007.

With respect to the photographs and videotapes that your firm has taken of the three-dimensional objects produced by my clients, my clients' interest in these photographs and videotapes is simple. As established at the deposition of Ms. Leahy, you have questioned my clients about these photographs and will presumably question my clients at trial with respect to the additional photographs as well as the videotapes. You further state that "[y]ou have never provided any authority suggesting that these photographs and videotapes are not, as Mattel claims, protected work product. If you have any authority, please let me know." I would point you to my December 18th letter where I stated as follows:

> Moreover, your decision to waive work-product protection as to a portion of the photographs during the depositions means that you have chosen to waive any such work-product protection you could have possibly claimed in those photographs. *See Kintera, Inc. v. Convio, Inc.,* 219 F.R.D. 503, 512-13 (S.D. Cal. 2003) ("A party cannot reasonably expect to preserve confidentiality of work product while simultaneously disclosing substantive components of that document."). Therefore, we are again requesting that you provide us with copies of all the photographs and videotapes that you have taken of the three-dimensional objects that we produced.

If you have any authority to the contrary, please provide it to me. Otherwise, I expect that you will provide me with copies of all of the photographs and videotapes that you have taken of the items produced by my clients. If you refuse, we will have no choice but to file a motion.

EXHIBIT ___21___

PAGE ___193___

B. Dylan Procter, Esq.
January 2, 2008
Page 2

Regarding the fee agreements, you have not responded to the following, also from my December 18th letter:

> Regarding the fee agreements, I am at a loss to understand how you can contend that "Mattel's objections to other subpoenas and Mattel's responses to other parties' requests for production are irrelevant here." The point is simple. Mattel is taking the position with respect to my clients that Judge Infante's orders require the production of retainer letters, while at the same time, Mattel has continued to object to the production of retainer letters after the entry of Judge Infante's order. Your silence with respect to my request in my December 3, 2007 letter, that "[i]f you have produced the retainer letter for Mr. Liden or any third party, please provide me with a copy of that document," says everything. You have not provided me with any such retainer letters and, therefore, I can only assume that you have continued to refuse to produce them.

I would appreciate a response.

Finally, with respect to the Wells Fargo documents, you continue to state that they "were produced to Mattel and all parties months ago" when you know that you did not provide the documents to me until November 30, 2007. It is also undisputed that the Wells Fargo documents include tax records which are private and confidential based on the authorities set forth in my December 18th letter. The issue here is simple. As set forth in my December 18th letter, I am requesting that you return all copies and originals of the bank records to me, confirm that your firm has not reviewed or made any use of these documents, and provide me with the date that your firm received these bank records. We will then review the Wells Fargo documents pursuant to the protocol that we have both agreed to and produce to you all of the documents required by the protocol. I assume from all of your correspondence that you are refusing to do this, so we will have to bring a motion. Please let me know if I am wrong.

Finally, this is to put you on notice one more time that we have still not received the Marlow's bank records from Bank of America that you subpoenaed. I sincerely hope that you have not received these as well. Please let me know. I also have not received copies of any subpoenas to the institutions identified in my letter dated December 11, 2007. Please let me know if any such subpoenas have been served, and if so, please provide me copies.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/jlt
cc: Thomas J. Nolan
    Michael Page

EXHIBIT _21_
PAGE _194_

# EXHIBIT 22

AO 88 (Rev. 11/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF LOS ANGELES

MATTEL, INC., a Delaware Corporation

### SUBPOENA IN A CIVIL CASE

v.

CARTER BRYANT, an Individual; and DOES
1 through 10, inclusive

Case Number: [1] CV 04-9059 NM (RNBx)

TO: Veronica Marlow    (818) 360-9150
    12250 Woodley
    Granada Hills, CA  91344

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in
the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):
SEE ATTACHMENT "A"

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP. | March 25, 2005 |
| 865 So. Figueroa Street, 10th Fl., Los Angeles, CA 90017 | 9:30 a.m. |
| (213) 443-3000 |  |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiff, Mattel, Inc. | March 14, 2005 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
SHANE H. McKENZIE, ESQ., Quinn Emanuel Urquhart Oliver & Hedges, LLP.
865 So. Figueroa Street, 10th Floor, Los Angeles, CA  90017   (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, parts C & D on reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

EXHIBIT _____ 22 _____ ___:6

PAGE _____ 195

AO-88

AO 88 (Rev. 11/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | | PLACE | |
|---|---|---|---|---|

**SERVED**

| SERVED ON (PRINT NAME) | | MANNER OF SERVICE | |
|---|---|---|---|

| SERVED BY (PRINT NAME) | | TITLE | |
|---|---|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
          DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

EXHIBIT _____22_____

PAGE _____196_____

## ATTACHMENT A

### Documents And Tangible Things To Be Produced

### I.   DEFINITIONS.

1.   "YOU" or "YOUR" means Veronica Marlow, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

2.   "CARTER BRYANT" means Carter Bryant and any of his current or former agents, representatives, employees, attorneys, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.   "BRATZ" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Bratz" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and all DESIGNS and versions of such doll or any portion thereof.

4.   "ANGEL" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Angel" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Angel" line, and all DESIGNS and versions of such doll or any portion thereof.

5.   "PRAYER ANGELS" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Prayer Angels" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Prayer Angels" line, and all DESIGNS and versions of such doll or any portion thereof.

6.   "MATTEL" means Mattel, Inc., any subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

ATTACHMENT A

EXHIBIT _____$22$_____

PAGE _____$197$_____

7.     "MGA" means MGA Entertainment Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

8.     "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

9.     "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

10.     "DOCUMENT" means any "writing" or "recording" as defined in Federal Rule of Evidence 1001 and includes any tangible thing upon which any expression, communication or representation has been recorded, including but not limited to correspondence, e-mails, preliminary, intermediate or final drafts, memoranda, notes, reports of telephone or other oral conversations, audio or videotape recordings, computer tape, computer disk or storage media, computer printout, CD-ROM disk, optical storage disk, other electronic medium, and all other writings and recordings of any kind.

11.     "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

12.     "REFERRING OR RELATING TO" means reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing or indicating in any way.

ATTACHMENT A

EXHIBIT _22_

PAGE _198_

## II.    INSTRUCTIONS.

A.    YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

B.    If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such DOCUMENTS identify each DOCUMENT and provide the following information:

1.    The privilege or protection that you claim precludes disclosure;

2.    The subject matter of the DOCUMENT (without revealing the content as to which the privilege or protection is claimed);

3.    The date, author(s), addressee(s); and

4.    Any additional facts on which YOU would base YOUR claim of privilege or protection.

C.    YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

D.    YOU are required to identify the source of all DOCUMENTS produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

E.    Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

## III.    DOCUMENTS AND TANGIBLE THINGS TO BE PRODUCED.

1.    All DOCUMENTS REFERRING OR RELATING TO BRATZ any time prior to January 1, 2001 (regardless of when such DOCUMENT was created, written, received or transmitted), including without limitation any work or services performed by YOU or any other PERSON on BRATZ prior to January 1, 2001.

2.    All DOCUMENTS REFERRING OR RELATING TO ANGEL, including without limitation any work or services performed by YOU or any other PERSON on ANGEL.

ATTACHMENT A

EXHIBIT _____ *22* _____

PAGE _____ *199* _____

3.    All DOCUMENTS REFERRING OR RELATING TO PRAYER ANGELS, including without limitation any work or services performed by YOU or any other PERSON on PRAYER ANGELS.

4.    All DOCUMENTS REFERRING OR RELATING TO any agreements or contracts REFERRING OR RELATING TO BRATZ, ANGEL and/or PRAYER ANGELS between YOU and any PERSON.

5.    All DOCUMENTS REFERRING OR RELATING TO CARTER BRYANT any time prior to January 1, 2001 (regardless of when such DOCUMENT was created, written, received or transmitted).

6.    All DOCUMENTS REFERRING OR RELATING TO Anna Rhee any time prior to January 1, 2001 (regardless of when such DOCUMENT was created, written, received or transmitted).

7.    All DOCUMENTS, including without limitation phone records, REFERRING OR RELATING TO COMMUNICATIONS between Anna Rhee, on the one hand, and YOU, MGA and/or CARTER BRYANT prior to January 1, 2001.

8.    All DOCUMENTS REFERRING OR RELATING TO this litigation.

9.    All DOCUMENTS REFERRING OR RELATING TO any work or services that YOU performed for or on behalf of any competitor of MATTEL, including without limitation MGA, during the term of YOUR MATTEL employment.

10.    All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS between YOU and MGA during the term of YOUR MATTEL employment.

11.    All doll heads, sculpts, prototypes, models, samples, molds and tangible items that were created, prepared or made, whether in whole or in part, prior to January 1, 2001 that REFER OR RELATE TO BRATZ.

ATTACHMENT A

EXHIBIT _____ *22*

PAGE _____ *200*

12.  All doll heads, sculpts, prototypes, models, samples, molds and tangible items that REFER OR RELATE TO ANGEL and/or PRAYER ANGELS.

5

ATTACHMENT A

EXHIBIT  *22*

PAGE  *201*

**PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES )

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On **March 16, 2005,** I served the foregoing document described as **Subpoena in a Civil Case for Production of Documents on Veronica Marlow** on all interested parties in this action.

| | |
|---|---|
| Robert F. Millman, Esq. | Paula E. Ambrosini, Esq. |
| Douglas A. Wickham, Esq. | O'Melveny & Meyers, LLP |
| Littler Mendelson, P.C. | 400 S. Hope Street |
| 2049 Century Park East, 5th Floor | Los Angeles, CA 90071 |
| Los Angeles, California 90067-3107 | |
| Phone: 310-553-0308 | Phone: 213-430-6000 |
| Fax: 310-553-5583 | Fax: 213-430-6407 |

[   ] By placing [ ] the original [ ] true copies thereof enclosed in sealed envelopes addressed as follows:

[   ] **BY MAIL:** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[ ] **BY OVERNIGHT COURIER** I caused each envelope with postage prepaid to be sent by Federal Express.

[ X ] **BY PERSONAL SERVICE** I caused to be delivered such envelope by hand to the addressee.

Executed on March 16, 2005, at Los Angeles, California.

[ ] (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X] (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Rebecca A. Ramos

EXHIBIT _22_

PAGE _202_



**FILING / SERVICE OF PROCESS INSTRUCTIONS**

**INVOICE NO.**

**183845**

L.A. (213) 482-1567 • FAX (213) 482-1572
O.C. (714) 835-6570 • FAX (714) 835-6670
www.nowlegalservices.com

PLEASE CHECK TYPE OF SERVICE REQUESTED

☐ COURT SERVICE     ☑ SERVICE OF PROCESS

249909

PLEASE NOTE ANY SPECIFIC OR TIMELY FILING/SERVICE REQUIREMENTS

| CHARGE TO | DATE | REFERENCE NUMBER |
|---|---|---|
| | 3/14/05 | 7209 |

QUINN EMANUEL URQUHART
865 SOUTH FIGUEROA STREET # 1000
LOS ANGELES CA 90017 (213) 624-7707

**METHOD OF SERVICE REQUESTED**

☐ RUSH          RETURN BY
☐ SPECIAL PICK UP.     ☐ SPECIAL
☑ SAME DAY          ☐ SAME DAY
☐ NEXT DAY          ☐ NEXT DAY
☐ RETAINER          ☐ CALL FROM COURT
COMPLETE BY: _____

REQUESTED BY. ATTY / SECRETARY / NUMBER
Rebecca Ramos x 3050

CASE NUMBER
CV 04-9059 NM (RNBx)

PLAINTIFF
Mattel, Inc

COURT ADDRESS

DOCUMENT TO BE FILED/SERVED:
Subpoena in a Civil Case for Production of DTCs

VS
DEFENDANT
Carter Bryant

☐ FILE   ☐ CONFORM   ☐ ISSUE   ☐ CERTIFY
                                ☐ RECORD
☐ COURT RESEARCH   ☐ FORM REQUEST   ☐ COPY REQUEST   ☐ OTHER

Fees Advanced 900
Amount
Check 13666

SPECIAL INSTRUCTIONS / DESCRIPTION OF PERSON (IF KNOWN)

Amount
Check

Amount
Check

Provided by Client
Amount
Check

COURT SERVICE FEES
PROCESS SERVICE FEES
ATTEMPTS
BAD ADDRESS
RUSH/SPEC PUR
RESEARCH
INVESTIGATION
MILEAGE
DIRECT COSTS
ADVANCE FEES
ADV FEE CHARGES
PHONE
PARKING

PERSONS/ENTITIES TO BE SERVED AND KNOWN ADDRESS
(One Entity Per Invoice)   (PLEASE INDICATE NAME EXACTLY AS IT SHOULD APPEAR ON PROOF OF SERVICE)

NAME: Veronica Marlow          NAME:

ADDRESS: 12250 Woodley          ADDRESS: EXHIBIT 22
Granada Hills, CA 91344          PAGE 203

PHONE: (818) 360-9150          PHONE:
☑ HOME  ☑ BUSINESS          ☐ HOME  ☐ BUSINESS

SERVICE: ☐ PERSONAL   ☐ POST   ☐ DELIVER   ☐ SUBSTITUTION OK

| HEIGHT | WEIGHT | HAIR | EYES | AGE | RACE | SEX | ADDITIONAL |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

INVOICE TOTAL

| DATE SERVED | TIME SERVED | PROCESS SERVER | PERSON SERVED | TITLE |
|---|---|---|---|---|
| | | | | |

**RETURN COPY**

## TERMS AND CONDITIONS

All references made to 'you' and 'your' on this invoice shall mean the Sender and its employees and agents. All references made to 'us' and 'our' shall mean Now Legal Service, its employees and agents (NLS). You agree to all terms of this invoice whenever you give us your package to deliver. These terms of agreement shall not be altered or modified by anyone or any authority. A federal tax is required by Internal Revenue Code Section 4271 on any air transportation used by this service and is included in basic charges when applicable. All disputes or claims against Now Legal Service (NLS) will be submitted to final and binding arbitration and not to any other forum for resolution.

## LIABILITY FOR LOSS OR DAMAGE

If your package is lost or damaged, our liability will be limited to $50.00 or your actual damages, whichever is less. NLS will not be liable for loss, damage or delay related to factors we could not foresee or control, including but not limited to acts of God, weather conditions, natural disasters, mechanical delays, acts of war, strikes or civil disruption, acts of public enemies or acts or omissions of public authorities with actual or apparent authority (e.g. customers or quarantine officials). NLS will not be liable under any circumstances for any incidental, consequential or special damages, even if we were made aware that such damages might be incurred.

In the event that service of process or any filing is determined to be improper for any reason occasioned by the acts or omissions of NLS, the Sender is entitled to a refund of charges. No refund will be made for failure to serve or file because of an incorrect address, inadequate or ambiguous instructions, improper or incomplete documents supplied, or the availability of the party at the time of service.

NLS has the right to open and inspect any package given to us for delivery. We reserve the right to refuse to accept your package if the transportation of your goods is prohibited by law or by any rules agreed to on this invoice. Responsibility for paying all charges reverts to the Sender, even if arrangements are made for payment of delivery charges by the recipient or other party.

Use of this form constitutes authorization of service and full responsibility for payment and all legal fees required to collect payment.

EXHIBIT 22

PAGE 204

AO 89 (Rev. 11/94) Subpoena in a Civil Case

| PROOF OF SERVICE | |
|---|---|
| DATE | PLACE |
| March 15, 2005 | 12250 Woodley |
| **SERVED** 12:35 p.m. | Granada Hills, CA 91344 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| VERONICA MARLOW (Witness Fee Paid $40.00) | Personal |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| William Guevara | Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on March 16, 2005
DATE

SIGNATURE OF SERVER 1301 West 2nd Street, #206
Los Angeles, CA 90026
(213) 482-1567

ADDRESS OF SERVER  Reg. L.A. County #4298

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

EXHIBIT  22

PAGE  205

AO 88 (Rev. 11/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF LOS ANGELES

MATTEL, INC., a Delaware Corporation

## SUBPOENA IN A CIVIL CASE

v.

CARTER BRYANT, an Individual; and DOES
1 through 10, inclusive

Case Number:[1] CV 04-9059 NM (RNBx)

TO: Veronica Marlow        (818) 360-9150
    12250 Woodley
    Granada Hills, CA 91344

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT "A"

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP. | March 25, 2005 |
| 865 So. Figueroa Street, 10th Fl., Los Angeles, CA 90017 | 9:30 a.m. |
| (213) 443-3000 | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiff, Mattel, Inc. | March 14, 2005 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
SHANE H. McKENZIE, ESQ., Quinn Emanuel Urquhart Oliver & Hedges, LLP.
865 So. Figueroa Street, 10th Floor, Los Angeles, CA 90017   (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, parts C & D on reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

EXHIBIT _____22_____

PAGE _____206_____

AO-88

## ATTACHMENT A

### Documents And Tangible Things To Be Produced

### I.    DEFINITIONS.

1.    "YOU" or "YOUR" means Veronica Marlow, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

2.    "CARTER BRYANT" means Carter Bryant and any of his current or former agents, representatives, employees, attorneys, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.    "BRATZ" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Bratz" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and all DESIGNS and versions of such doll or any portion thereof.

4.    "ANGEL" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Angel" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Angel" line, and all DESIGNS and versions of such doll or any portion thereof.

5.    "PRAYER ANGELS" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Prayer Angels" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Prayer Angels" line, and all DESIGNS and versions of such doll or any portion thereof.

6.    "MATTEL" means Mattel, Inc., any subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

ATTACHMENT A

EXHIBIT _____22_____

PAGE _____207_____

7.    "MGA" means MGA Entertainment Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

8.    "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

9.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

10.    "DOCUMENT" means any "writing" or "recording" as defined in Federal Rule of Evidence 1001 and includes any tangible thing upon which any expression, communication or representation has been recorded, including but not limited to correspondence, e-mails, preliminary, intermediate or final drafts, memoranda, notes, reports of telephone or other oral conversations, audio or videotape recordings, computer tape, computer disk or storage media, computer printout, CD-ROM disk, optical storage disk, other electronic medium, and all other writings and recordings of any kind.

11.    "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

12.    "REFERRING OR RELATING TO" means reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing or indicating in any way.

2

ATTACHMENT A

EXHIBIT __22__

PAGE __208__

II.    INSTRUCTIONS.

   A. YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

   B. If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such DOCUMENTS identify each DOCUMENT and provide the following information:

    1. The privilege or protection that you claim precludes disclosure;

    2. The subject matter of the DOCUMENT (without revealing the content as to which the privilege or protection is claimed);

    3. The date, author(s), addressee(s); and

    4. Any additional facts on which YOU would base YOUR claim of privilege or protection.

   C. YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

   D. YOU are required to identify the source of all DOCUMENTS produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

   E. Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

III.    DOCUMENTS AND TANGIBLE THINGS TO BE PRODUCED.

  1. All DOCUMENTS REFERRING OR RELATING TO BRATZ any time prior to January 1, 2001 (regardless of when such DOCUMENT was created, written, received or transmitted), including without limitation any work or services performed by YOU or any other PERSON on BRATZ prior to January 1, 2001.

  2. All DOCUMENTS REFERRING OR RELATING TO ANGEL, including without limitation any work or services performed by YOU or any other PERSON on ANGEL.

3

ATTACHMENT A

EXHIBIT _22_

PAGE _209_

3. All DOCUMENTS REFERRING OR RELATING TO PRAYER ANGELS, including without limitation any work or services performed by YOU or any other PERSON on PRAYER ANGELS.

4. All DOCUMENTS REFERRING OR RELATING TO any agreements or contracts REFERRING OR RELATING TO BRATZ, ANGEL and/or PRAYER ANGELS between YOU and any PERSON.

5. All DOCUMENTS REFERRING OR RELATING TO CARTER BRYANT any time prior to January 1, 2001 (regardless of when such DOCUMENT was created, written, received or transmitted).

6. All DOCUMENTS REFERRING OR RELATING TO Anna Rhee any time prior to January 1, 2001 (regardless of when such DOCUMENT was created, written, received or transmitted).

7. All DOCUMENTS, including without limitation phone records, REFERRING OR RELATING TO COMMUNICATIONS between Anna Rhee, on the one hand, and YOU, MGA and/or CARTER BRYANT prior to January 1, 2001.

8. All DOCUMENTS REFERRING OR RELATING TO this litigation.

9. All DOCUMENTS REFERRING OR RELATING TO any work or services that YOU performed for or on behalf of any competitor of MATTEL, including without limitation MGA, during the term of YOUR MATTEL employment.

10. All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS between YOU and MGA during the term of YOUR MATTEL employment.

11. All doll heads, sculpts, prototypes, models, samples, molds and tangible items that were created, prepared or made, whether in whole or in part, prior to January 1, 2001 that REFER OR RELATE TO BRATZ.

ATTACHMENT A

EXHIBIT __22__

PAGE __210__

12. All doll heads, sculpts, prototypes, models, samples, molds and tangible items that REFER OR RELATE TO ANGEL and/or PRAYER ANGELS.

ATTACHMENT A

EXHIBIT _22_

PAGE _211_

# EXHIBIT 23

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

www.kmwlaw.com

January 16, 2008

VIA FACSIMILE and E-MAIL

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:    Mattel v. Bryant

Dear Dylan:

I am writing with regard to several outstanding issues discussed during our meetings of counsel held on January 9 and January 11, 2008, and with respect to the correspondence noted below.

**Lucy Arant**

Responding to your letter dated January 10, 2008, in which you asked me to confirm that Ms. Arant is not withholding any non-logged documents, as we discussed during our meeting of counsel on January 9, 2007, I provided you with amended responses and objections to Mattel's document request that day. I also provided you with an amended privilege log.

With regard to documents responsive to Request No. 28 of Mattel's subpoena for the production of documents, I can confirm that our position is set out in the response to the same in Arant's amended objections and responses dated January 8, 2008. I reiterate that the filed intent-to-use trademark applications and any related statements of use fully satisfy Mattel's request that Arant produce:

DOCUMENTS sufficient to show each instance in which YOU have filed or caused to be filed an intent-to-use application for a name, mark, designation or source identifier, or any contemplated, proposed, considered, putative or formative name, mark, designation or

EXHIBIT ___23___

PAGE ___212___

B. Dylan Procter, Esq.
January 16, 2008
Page 2

source identifier, that had been used or was in use prior to the time such application was
filed or caused to be filed.

In addition, these documents are as readily available to Mattel as they are to Arant, including
without limitation by accessing the public records hosted on the Trademark Office web site at
www.uspto.gov. Moreover, as you know, Ms. Arant filed a revised declaration which did not .
contain the statement regarding filing intent-to-use applications which you refer to in your
Request No. 28.

Additionally, we do not believe that any privileged documents have been withheld, other
than as set forth on the privilege log. However, we are reviewing the documents again to confirm
that everything is included in the privilege log. If we locate any additional relevant documents
that are being withheld for privilege, we will provide you with an amended privilege log by
Friday, January 18, 2008.

### Photographs and Videos Used During Depositions

I write in response to your last letter of January 11, 2008. As I set forth fully in my letter
of December 18, 2008, you have waived the work product protection with respect to the
photographs and videotapes of the three-dimensional objects which we produced for inspection,
by using some of these photographs at Ms. Leahy's deposition. In furtherance of my follow-up
letters of January 2, 2008, and January 11, 2008, I again request that these documents be
produced in their entirety. It is clear under the relevant authority that your use of the photographs
during a deposition has resulted in a waiver of the work product protection which you have
claimed in those items. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503 512-13 (S.D. Cal.
2003). In my letter of January 11, 2008, I presented further legal authority in support of my
position. You have failed to provide any relevant legal authority contrary to this position.
Indeed, the citations in your January 11, 2008, letter do not support your conclusion that the
photographs constitute opinion work product rather than factual work product, but instead simply
reiterate the general rule that opinion work product is treated differently than fact work product
with respect to waiver. This may be true, but it is not relevant here because the photos and video
do not constitute opinion work product. *See Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 n.4
(8th Cir. 1998) ("Ordinary work product includes such items as photographs and raw
information.").

However, I see that you have agreed in your letter dated January 11, 2008, to provide us
copies of all of the photographs and videos taken of the three-dimensional items if I agree to do
the same. I would point your attention to my letter of December 18, 2007, in which I clearly
stated that we had provided you with copies of all of our photos on December 11, 2007. I also
reminded you of this during our telephonic meeting of counsel on January 9, 2008.

EXHIBIT 23
PAGE 2/3

B. Dylan Procter, Esq.
January 16, 2008
Page 3

Unfortunately, you have made MGA's agreement a condition of Mattel's agreement to produce these photographs and videotapes. That is an issue that you need to raise with MGA's attorneys. I request that you reconsider your position and agree to provide us with all of the photographs and videos that you have taken of the three-dimensional objects produced by my clients and . remind you again that my clients have already done the same.

### Computers

With regard to your request that I agree to a new protocol as set forth in Mr. Tayback's email dated January 9, 2008, for the review of the computers, hard disk drives, and zip disk (the "Computers") belonging to Ms. Leahy and Ms. Cloonan, as you know, these Computers have already been reviewed pursuant to the protocol that your partner, Susan Wines, and I agreed to several months ago. Moreover, all of the documents located by the expert's search pursuant to the agreed to protocol have already been produced and both Ms. Leahy and Ms. Cloonan have already been deposed. We are, therefore, not willing at this late date to agree to a new protocol.

As you know, Ms. Wines and I spent a considerable amount of time meeting and conferring with respect to a protocol for the review of the Computers. The result of these discussions was the protocol set forth in Ms. Wines' letter dated September 13, 2007. Both Mattel and I agreed to be bound by this protocol. In addition, as I have repeatedly stated, one of the most important issues for me was that this protocol be agreed to and all documents located pursuant to the protocol be produced prior to the depositions of my witnesses. As you know, this was accomplished. Now that the depositions of Ms. Leahy and Ms. Cloonan have been taken, you are attempting to re-review the Computers pursuant to a new protocol. This is not acceptable and you have presented no basis to justify your attempt to change the protocol. In the email dated January 9, 2008, from Mr. Tayback, he stated that "the testimony of the witnesses makes clear that there are graphical (and perhaps other) files on the Cloonan and Leahy hard drives that are relevant, responsive, non-privileged documents but which were either not produced by you or not identified by the prior search protocol." However, the fact that there could be graphical files on the Computers is not new information. As you know, Mr. Bryant testified during his deposition that he and/or Ms. Cloonan may have utilized the computer belonging to Ms. Cloonan to create graphics for Bratz. Unfortunately, it appears as though this effort to alter the protocol previously agreed upon is simply part of a larger strategy to never commit to an agreement and/or conclude a deposition.

With regard to the computers belonging to Ms. Marlow, as I stated during our conference on January 9, 2008, in response to the subpoena, we produced all relevant and responsive documents in Ms. Marlow's possession, custody or control, which included emails residing on her computers. Accordingly, Ms. Marlow has fully complied with her discovery obligations. It is both unreasonable and beyond the scope of Mattel's discovery rights to require Ms. Marlow to

EXHIBIT __23__

PAGE __214__

B. Dylan Procter, Esq.
January 16, 2008
Page 4

produce her actual computer hard drives to Mattel. Ms. Marlow has fully complied with her discovery obligations by searching her hard drives and producing all relevant documents in response to Mattel's requests. As you know, when a party is obligated to produce electronically-stored documents in response to discovery requests, it is the responding party's obligation to conduct the search and review its own documents. *See Peskoff v. Faber*, 240 F.R.D. 26, 31 (D.D.C. 2007) ("[T]he producing party has the obligation to search available electronic systems for the information demanded."), *quoting McPeek v. Ashcroft*, 202 F.R.D. 31, 32 (D.D.C. 2001)). The mere fact that a requesting party is skeptical that a responding party has produced copies of all relevant and non-privileged documents does not warrant compelling production of the responding party's computer hard drives. *McCurdy Group, LLC v. Am. Biomedical Group, Inc.*, 9 Fed. Appx. 822, 831 (10th Cir. 2001). *See also Ameriwood Indus., Inc. v. Liberman*, No. 4-06CV524-DJS, 2006 WL 3825291, at *4 (E.D. Mo. Dec. 27, 2006) ("[A] party may not inspect the physical hard drives of a computer merely because the party wants to search for additional documents responsive to the party's document requests."). Ms. Marlow is not required to go above and beyond the requirements placed on a party and produce her computer hard drives to Mattel.

Finally, your claim that you just now learned during her deposition that Ms. Marlow occasionally used computers is inaccurate. You have known for quite some time that Ms. Marlow sent and received email because we produced such relevant emails well prior to her deposition and I believe that MGA has also produced emails which were sent to Ms. Marlow. With respect to your allegation that I had "previously represented to Mattel that Ms. Marlow does not have any hard drives which she used for work relating to Bratz," I am unaware of making any such representation. Because you insist that I have, please advise as to when and where I made the alleged representation.

### Bank Records

I write further in response to your latest letter on this subject dated January 11, 2008. With regard to the Wells Fargo documents belonging to Ms. Marlow that were produced directly to you in violation of our agreed upon protocol, you stated in your letter dated January 10, 2008, that you would consider my request that you purge yourself of those documents and return them to me so that they may be reviewed pursuant to the protocol. In your letter of January 11, 2008, you proposed supplementing the review protocol for all bank records produced and to be produced by adding documents referring to the following:

    (1)    Isabel Ana Cabrera

    (2)    Beatriz Morales

    (3)    Maria Elena Salazar

    (4)    Payments made to, or work or services performed by, any other Mattel employee

EXHIBIT    23

PAGE    2/5

B. Dylan Procter, Esq.
January 16, 2008
Page 5

     (5)     Payments made by, or any services performed for, any competitors of Mattel,
               including any company involved in the sale of dolls or toys, while your clients
               were employed at Mattel

     (6)     The dates on which any entities with which your clients are affiliated were
               established, including but not limited to payments to the Franchise Tax Board or
               other tax entities.

        With regard to items (1), (2), (3), and (6), I agree to amend the protocol for review of the
bank records. However, item (4) is too vague and should be qualified to read "while such person
was an employee of Mattel." Item (5) is also too vague and should be amended to read that
competitors of Mattel are defined as any company involved in the sale of dolls or toys, not
simply "including any company involved in the sale of dolls or toys," as you have drafted it. If
you are amenable to these changes, please advise us accordingly.

### Retainer Letters

        With regard to your request that I produce any retainer letters signed by my clients, you
have taken the position that various orders entered by Judge Infante with respect to Mr. Bryant ·
are controlling as to my non-party clients. As you know, I was not involved with the motions
ruled on by Judge Infante, but your firm obviously was. As I pointed out in my letter dated
December 18, 2007:

     Regarding the fee agreements, I am at a loss to understand how you can contend that
     "Mattel's objections to other subpoenas and Mattel's responses to other parties' requests
     for production are irrelevant here." The point is simple. Mattel is taking the position
     with respect to my clients that Judge Infante's orders require the production of retainer
     letters, while at the same time, Mattel has continued to object to the production of retainer
     letters after the entry of Judge Infante's order. Your silence with respect to my request in
     my December 3, 2007 letter, that "[i]f you have produced the retainer letter for Mr. Liden
     or any third party, please provide me with a copy of that document," says everything. You
     have not provided me with any such retainer letters and, therefore, I can only assume that
     you have continued to refuse to produce them.

As I told you during our meet and confer on Friday, January 11, 2008, if Mattel agrees that the
orders entered by Judge Infante require Mattel to produce all retainer letters relating to non-
parties and if in fact Mattel produces such retainer letters, I will also agree to produce the retainer
letters for my third party clients. With respect to your statement during our call on January 11,
2008, that the two situations were like "apples and oranges," I request that you reconsider your

EXHIBIT    $\underline{23}$

PAGE    $\underline{216}$

B. Dylan Procter, Esq.
January 16, 2008
Page 6

position. The issue is simple – what is Mattel's interpretation of Judge Infante's order with respect to retainer letters for non-parties.

As far as whether I will be providing a privilege log as you propose in your letter of January 10, 2008, I reiterate my previous statement that the purpose of a privilege log is to make the receiving party aware of any documents that the producing party is withholding based upon privilege. Rule 26 lays out the purpose of providing a privilege log as being to "expressly make the claim" of privilege and to "describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." F.R.C.P. 26(b)(5). In this case, the purpose of the privilege log has been fully satisfied – I have told you that I am not producing the retainer letters between my clients and their attorneys. (Nor am I producing the correspondence between my clients and their attorneys.) You are aware of the claim of privilege and what is not being produced. I can also confirm that these retainer letters were not copied or addressed to other parties or third parties.

### Additional Deposition Dates

With respect to your request that my clients be made available for additional deposition dates, as I have repeatedly stated, this request is unreasonable. I have made my clients available for the full seven hours (and beyond in some instances) as required by the federal rules and believe that demanding additional time of these non-party witnesses is not warranted. In particular, I write in response to the issues raised in the letter from Mr. Zeller dated January 4, 2008, and his mischaracterization of why he believes he did not have enough time to question Ms. Marlow. As a preliminary matter, with regard to Mr. Zeller's belief that he did not have time to question Ms. Marlow regarding other Mattel employees she has worked with, documents identifying the other Mattel employees Ms. Marlow worked with were produced well prior to the deposition and Mr. Zeller had plenty of time to review these documents prior to the deposition and did in fact question her extensively about these individuals during the deposition.

In addition, the assertions by Mr. Zeller in the third and fourth paragraphs of his letter that Mattel lacked sufficient time to depose Ms. Marlow regarding Mr. Bryant's drawings and the Prayer Angels project are simply untrue. All of these topics were covered in great detail during the deposition. With regard to the several pages of additional documents produced on the day before the deposition, I have difficulty understanding how those might have adversely affected Mr. Zeller's ability to question Ms. Marlow regarding them. Mr. Zeller stated at the deposition that all these documents except one had been previously produced by MGA or Bryant. With respect to the one new document, Mr. Zeller had seven hours to question Ms. Marlow regarding this document, but he chose not to do so.

EXHIBIT ___23___

PAGE ___217___

B. Dylan Procter, Esq.
January 16, 2008
Page 7

Finally, with regard to the specific instructions Mr. Zeller has taken issue with, he claims that at Marlow Depo. Tr 174:4 – 177:3, my objections were "suggestive" and "obstructionist." I reject this assertion, and believe that my objections and those of counsel for Bryant and MGA were well within the federal rules. Furthermore, I will point out again that his line of questioning was an attempt to put words in Ms. Marlow's mouth to support your purported legal conclusion that the drawings at issue were "substantially similar" to the final Bratz product, when in fact Ms. Marlow repeatedly disagreed with your conclusion, stating that:

Q:      Are they – are they more different or are they more similar?

A:      They're more different.

Not satisfied with Ms. Marlow's answer, Mr. Zeller repeatedly asked the same question over and over in different formats in a failed attempt to get Ms. Marlow to answer the question to his pleasing. If Mr. Zeller had instead asked direct questions and not wasted time forcing Ms. Marlow to repeat herself multiple times, he would have had more than enough time available to him to ask all of the questions that he believes he needed to.

Mr. Zeller also complains about Ms. Marlow's testimony at 87:8 – 13, as follows:

Q:      Did you have some legal questions in your mind at that time prior to the time that you talked to Mr. Contopolous?

This question was part of an improper line of questioning regarding Ms. Marlow's communications with her attorney, Mr. Contopolous. Prior to this question, Ms. Marlow had testified that she was seeking legal representation from Mr. Contopolous regarding this litigation. See *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir.1996) ("A client is entitled to hire a lawyer, and have his secrets kept, for legal advice regarding the client's business affairs.").

In addition, Ms. Marlow fully answered Mr. Zeller's questions with respect to what questions were in her mind prior to the time that she spoke to Mr. Contopolous as follows:

Mr. McFarland:      Why don't we read it back.

(The record was read by the court reporter as follows:

"Q:      Did you have some questions in your mind at that time prior to the time that you talked to Mr. Contopolous?")

EXHIBIT  23

PAGE  218

B. Dylan Procter, Esq.
January 16, 2008
Page 8

Mr. McFarland:      Objection, she's asked and answered your questions or mine
                    regarding this litigation. She talked to Mr. Contopolous.

By Mr. Zeller:

Q:   You can go ahead and answer.

A:   I don't have anything to say about that.

Q:   You're refusing to answer the question?

Mr. McFarland:      No, she's already answered your question.

By Mr. Zeller:

Q:   What was it specifically about -- tell me everything it was about the litigation
     between Carter Bryant and Mattel that you had on your mind prior to the time that
     you spoke with Mr. Contopolous?

Mr. McFarland:      She's asked and answered the question.

Did you have anything else in your mind other than what you've said?

The Witness:      No.

By Mr. Zeller:

Q:   So it was just that there was litigation and nothing else?

A:   Yes.

Q:   There was nothing in particular?

Mr. McFarland:      She's --

The Witness:  No.

Mr. McFarland:      -- answered the question. You have answered the question.

The Witness:  I answered the question.

By Mr. Zeller:

Q:   There was nothing in particular; right?

A:   Right.


## Marital Privilege Instructions

With respect to the marital privilege issue, I am both surprised and confused by your
continued attempts to limit the marital privilege to criminal cases. As explained in my January 2,
2008, letter to you:

Federal common law recognizes two distinct forms of marital privilege. The first is the
privilege against adverse spousal testimony, which invests in the testifying witness the

EXHIBIT _____23_____

PAGE _____219_____

B. Dylan Procter, Esq.
January 16, 2008
Page 9

privilege of not being compelled to testify against one's spouse. <u>Trammel v. United States</u>, 445 U.S. 40 (1980). The second is the confidential marital communications privilege, which provides that "[c]ommunications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged," and which may be asserted by either spouse to bar the testimony of the other regarding marital communications made in confidence. <u>Wolfe v. United States</u>, 291 U.S. 7, 14 (1934)....

As I further provided, courts have held that the confidential marital communications privilege "may be asserted by either spouse in both civil and criminal proceedings, while the testimonial privilege ... is recognized only in criminal proceedings." <u>281 Syosset Woodbury</u>, 862 F. Supp. 847, 852 (E.D.N.Y. 1994); <u>see also</u> <u>Englemann v. Nat'l Broad. Co., Inc.</u>, No. 94 Civ, 5616(MBM)(AJP), 1995 WL 214500, at *2 *(S.D.N.Y. Apr. 10, 1995) ("The second of the two federal marital privileges, the spousal confidential communications privilege ... applies in both criminal and civil cases.").

Nevertheless, you continue to allege that I "have not offered any authority supporting the proposition that the marital privilege applies in civil cases." To the contrary, I believe that is exactly what I did and that it is you that have failed to offer any authority supporting the proposition that confidential marital communications, the one form of the privilege that is relevant here, applies only in criminal cases. Instead, you merely re-assert your claim that marital privilege does not apply here and cite to cases which address only the first form of marital privilege, the privilege against adverse spousal testimony. Specifically, your most recent reference to <u>Ryan v. Commissioner of Internal Revenue</u>, 568 F.2d 531, 542 (7th Cir. 1977) demonstrates my point exactly. In your January 11, 2008, letter, you cite <u>Ryan</u> to argue that marital privilege is "only applicable in criminal cases." However, like <u>281 Syosset Woodbury</u>, <u>Ryan</u> actually supports my position that only the privilege against adverse spousal testimony is limited to criminal cases. In <u>Ryan</u>, the Seventh Circuit affirmed the Tax Court's rejection of "the Ryans' claim of marital privilege because the privilege against *adverse spousal testimony* is only applicable in criminal proceedings." <u>Id.</u> at 537(emphasis added), 542 ("The Tax Court held that the privilege against *adverse spousal testimony* was only available in criminal cases and therefore was not applicable in civil tax proceedings.") (emphasis added).

Moreover, your claim that the three Supreme Court and Ninth Circuit cases cited in my January 2, 2008, letter "each addressed marital privilege within the context of criminal matters, not civil litigation," is misleading. Indeed, while these cases involved criminal proceedings, two of the three addressed the privilege against adverse spousal testimony. Although the third, <u>Wolfe v. United States</u>, 291 U.S. 7, 14 (1934), addressed the confidential marital communications privilege, the Court actually acknowledged that the two forms of marital privilege are in fact distinct. <u>Id.</u> ("Hence it is that the privilege with respect to communications extends to the testimony of husband or wife even though the different privilege, excluding the testimony of one against the other, is not involved."). Thus, you have once again failed to show that the confidential marital communications privilege is limited to criminal cases.

EXHIBIT __23__

PAGE __220__

B. Dylan Procter, Esq.
January 16, 2008
Page 10

My responses to the testimony set forth in your letter of January 11, 2008, are set forth below:

Ms. Cloonan's testimony at 38:6-17:

    Q:    Other than Mr. McFarland here, have you discussed the lawsuit with anybody?

    A.:    Not much more than to tell people that I was involved in it; my father, my stepmother, my family, my husband.

This question was answered by Ms. Cloonan, regardless of any instruction.

Ms. Cloonan's testimony at 06:23 – 108:9; see 108:2:

    Q:    What did you and he discuss on that subject?

    A:    I don't recall.

This question was also answered by Ms. Cloonan, regardless of any instruction.

Ms. Cloonan's testimony at 108:11 – 14:

    Q:    Have you discussed this lawsuit with your husband?

    A:    I'm not going to answer that.

    Q:    You can't tell me one way or the other?

    A:    Do I have to? If I have to, I will.

    Mr. McFarland: Well, first of all, it's asked and answered. She's already told you she mentioned to her husband and other people.

As I stated on the record, I reiterate that this question was answered previously in the deposition as set forth above, regardless of any instruction.

Ms. Cloonan's testimony at 109: 1 – 8; see 109:15 – 18:

    Q:    Prior to Christmas of last year, did you discuss this lawsuit with your husband, Mr. Sandham, your current husband?

EXHIBIT   23

PAGE   221

B. Dylan Procter, Esq.
January 16, 2008
Page 11

    A:    I don't know.

Even assuming that the confidential marriage communications privilege does not apply to domestic partners who subsequently marry, you have failed to meet your burden to establish that this conversation occurred prior to marriage and that it, therefore, may not be protected by the marriage privilege. "When encountering a privilege objection at deposition, examining counsel should insist on making a record that will permit meaningful judicial evaluation of the privilege claim." 7 *Moore's Federal Practice* § 30.43[2] (Matthew Bender 3d ed.). Ms. Cloonan answered that she did not know whether this conversation occurred before or after she was married to her husband. It was Mr. Zeller's responsibility to make the showing that the instruction was improper, and he failed to do so.

### Attorney-Client Privilege Instructions

In your letter dated January 11, 2008, you also claim that Ms. Cloonan was improperly instructed regarding facts disclosed during her conversations with counsel. I am unaware of any ruling by Judge Infante so limiting the attorney client communication privilege. Please provide me with the order you are referring to.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/ccd

cc:  Thomas J. Nolan
     Michael Page

EXHIBIT 23
PAGE 222

## Laura Kinsey

**From:**       Dylan Proctor
**Sent:**       Wednesday, January 16, 2008 6:33 PM
**To:**         MGA / Bryant Team; Laura Kinsey
**Subject:**    Fw: Bryant v. Mattel

**Attachments:**   Letter to D. Proctor 01-16-08 (Outstanding Issues).pdf



Letter to D. Proctor
01-16-08 ...

Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 3rd Floor
Los Angeles, CA  90017

Direct:  (213) 443-3112
Main Phone:  (213) 443-3000
Main Fax:  (213) 443-3100

E-mail:  dylanproctor@quinnemanuel.com
Web:   www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

----- Original Message -----
From: Janice L.Trayes <Jtrayes@kmwlaw.com>
To: Dylan Proctor
Cc: Larry W. McFarland <LMcfarland@kmwlaw.com>; Christian C. Dowell <CDowell@kmwlaw.com>
Sent: Wed Jan 16 18:06:24 2008
Subject: Bryant v. Mattel

Mr. Proctor, please find attached a letter dated today from Larry McFarland to your attention.  Should you have any difficulty opening the attachment, please do not hesitate to contact me.

Regards,

Janice Trayes

Assistant to Larry W. McFarland

EXHIBIT ___23___

PAGE __223__

Janice Trayes / Keats McFarland & Wilson LLP / 9720 Wilshire Blvd. PH Suite / Beverly Hills, CA  90212 / Ph: (310) 777-3747 / Fax: (310) 860-0363 / e-mail: jtrayes@kmwlaw.com <mailto:jtrayes@kmwlaw.com>

1

EXHIBIT _____ 23

PAGE _____ 224

2

# EXHIBIT 24

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**