QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017–2543
Telephone:  (213) 443–3000
Facsimile:  (213) 443–3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>　　　　　Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04–9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04–09059<br>Case No. CV 05–02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]**<br><br>[PUBLIC REDACTED] DECLARATION OF MELISSA GRANT IN SUPPORT OF MOTION OF MATTEL, INC. FOR AN ORDER ENFORCING COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS<br><br>Hearing Date:  TBA<br>Time:  TBA<br>Place:  TBA<br><br>**Phase I**<br>Discovery Cut–off:  January 28, 2008<br>Pre–trial Conference:  May 5, 2008<br>Trial Date:  May 27, 2008 |

07209/2369575.2

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE THREE COMPUTER HARD DRIVES

# DECLARATION OF MELISSA GRANT

I, Melissa Grant, declare as follows:

1.      I am a member of the bars of the State of California and an associate at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for plaintiff and counter-defendant, Mattel, Inc. ("Mattel").  I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.      Attached as Exhibit 1 is a true and correct copy of the Order of the Discovery Master Hon. Edward Infante (Ret.), dated January 25, 2007.

3.      Attached as Exhibit 2 is a true and correct copy of excerpts of the Omnibus Discovery Hearing Transcript, dated January 3, 2008.

4.      Attached as Exhibit 3 is a true and correct copy of the Order Requiring the Filing of Affidavits Re Evidence Preservations, dated August 27, 2007.

5.      Attached as Exhibit 4 is a true and correct copy of the Order Granting Motion to Enforce the Court's Order of August 27, 2007, and Denying Request for Sanctions, dated January 7, 2008.

6.      Attached as Exhibit 5 is a true and correct copy of excerpts of the deposition of Carter Bryant ("Bryant"), taken on November 4 and 5, 2005.

7.      Attached as Exhibit 6 is a true and correct copy of the Circuit City receipt dated October 21, 2000, and produced in this case by Bryant.

8.      Attached as Exhibit 7 is a true and correct copy of excerpts of the Joint Stipulation Re: Mattel's Motion to Compel Production of Documents, filed on January 6, 2005.

9.      Attached as Exhibit 8 is a true and correct copy of a letter dated November 1, 2004 from Keith Jacoby, counsel for Bryant, to John Quinn, Kirkland Garey, and Jon Corey, counsel for Mattel.

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE THREE COMPUTER HARD DRIVES

1      10.   Attached as Exhibit 9 is a true and correct copy of a letter dated

2   November 17, 2004 from Kirk Garey, counsel for Mattel, to Mr. Jacoby, counsel for

3   Bryant.

4      11.   Attached as Exhibit 10 is a true and correct copy of the

5   [Redacted] Declaration of Keith A. Jacoby in Support of Defendant and Cross-

6   Claimant Carter Bryant's Portion of Joint Stipulation (without exhibits).

7      12.   Mattel's original motion to compel the Desktop filed in January

8   2005 was not ruled upon because discovery was stayed before it was resolved.

9   After the stay was lifted and the Discovery Master was appointed, Mattel renewed

10   its motion to compel Bryant's computer hard drives in early January 2007 and again

11   specifically sought production of the Desktop hard drive.

12      13.   Attached as Exhibit 11 is a true and correct copy excerpts of the

13   Separate Statement of Mattel, Inc. in Support of Motion to Compel Production of

14   Documents by Carter Bryant, filed on January 4, 2007.

15      14.   Attached as Exhibit 12 is a true and correct copy of the

16   Declaration of Michael T. Zeller in Support of Mattel, Inc.'s Motion to Compel

17   Production of Documents by Carter Bryant filed January 4, 2007 (without exhibits).

18      15.   Attached as Exhibit 13 is a true and correct copy excerpts of the

19   Separate Statement of Defendant Carter Bryant in Opposition to Mattel's Motion to

20   Compel, filed on January 11, 2007.

21      16.   Attached as Exhibit 14 is a true and correct copy excerpts of the

22   Declaration of Keith A. Jacoby in Support of Carter Bryant's Opposition to Mattel,

23   Inc.'s Motion to Compel Production of Documents (without exhibits).

24      17.   Attached as Exhibit 15 is a true and correct copy of the

25   Stipulation and Order re: Request to Extend Deadline Within Which Carter Bryant

26   Must Comply with the Discovery Master's January 25, 2007 Order Granting Mattel's

27   Motion to Compel Production of Documents dated February 23, 2007.

28

1        18.    Attached as Exhibit 16 is a true and correct copy of an e-mail

2  message dated February 27, 2007, from Douglas Wickham, Bryant's former counsel,

3  to Michael Zeller.

4        19.    Attached as Exhibit 17 is a true and correct copy of the Letter

5  dated March 2, 2007 from Douglas Wickham to Michael Zeller.

6        20.    Attached as Exhibit 18 is a true and correct copy of the letter

7  dated March 16, 2007 from Douglas Wickham to Michael Zeller.

8        21.    Attached as Exhibit 19 is a true and correct copy of the letter

9  dated March 27, 2007 from Douglas Wickham to John Quinn.

10       22.    Attached as Exhibit 20 is a true and correct copy of the letter

11  dated March 26, 2007 from Michael Zeller to Douglas Wickham.

12       23.    Attached as Exhibit 21 is a true and correct copy of the letter

13  dated April 6, 2007 from Michael Zeller to Douglas Wickham.

14       24.    Attached as Exhibit 22 is a true and correct copy of the Notice of

15  Motion and Motion of Mattel, Inc. for an Order to Enforce Court's January 25, 2007

16  Order Compelling Carter Bryant to Produce Desktop Computer Hard Drive, dated

17  April 10, 2007.

18       25.    Attached as Exhibit 23 is a true and correct copy of the letter

19  dated April 23, 2007 from Keith A. Jacoby, Bryant's former counsel, to Michael

20  Zeller.

21       26.    Attached as Exhibit 24 is a true and correct copy of the Minute

22  Order dated July 2, 2007.

23       27.    Not long after the Court upheld the Discovery Master's ruling by

24  Order dated May 15, 2007 that information related to defendants' unreleased

25  products is relevant to Mattel's claims, and approved a third-tier of protection under

26  the Stipulated Protective Order for sensitive to guard the sensitive nature of such

27  materials, Bryant's current counsel produced the Laptop that Bryant purchased at the

28

1 | end of 2001 or beginning of 2002, and the July 2004 image of its hard drive, for

2 | inspection and forensic imaging by Mattel.

3 |        28.    Examination of the images of Bryant's Desktop (purchased in

4 | October 2000) and Laptop (purchased at the end of 2001 or early 2002) hard drives

5 | has revealed that a software program called "Evidence Eliminator" was installed and

6 | run in 2002, and that data from the period of 2000 and 2001 appears to be missing.

7 | Attached as Exhibit 25 is a true and correct copy of the Evidence Eliminator website

8 | homepage, available at http://www.evidence-eliminator.com/product.d2w, reflecting

9 | that the creators of the program have stated that its purpose is to permanently

10 | destroy data and render it unrecoverable.

11 |        29.    Attached as Exhibit 26 is a true and correct copy of excerpts of

12 | the [Rough] transcript of the deposition of Carter Bryant, taken on January 23, 2008.

13 |        30.    Attached as Exhibit 27 is a true and correct copy of the

14 | Declaration of Carter Bryant in Response to Court's Response for Information

15 | Regarding Document Preservation, filed January 15, 2008.

16 |        31.    Attached as Exhibit 28 is a true and correct copy of the excerpts

17 | of the [Rough] transcript of the deposition of Carter Bryant, taken on January 24,

18 | 2008.

19 |        32.    On April 2, 2007, my colleague Michael T. Zeller initiated the

20 | meet and confer process with Bryant's former counsel regarding Bryant's Desktop

21 | and thereafter regarding Bryant's Laptop.  Since then, Bryant produced the Desktop

22 | and Laptop to Mattel for inspection and forensic imaging, along with images of

23 | those drives.  Bryant's current counsel, Michael Page, and Mr. Zeller began the meet

24 | and confer process regarding Bryant's more recent hard drives in or around

25 | September 2007.  Bryant refused to produce those hard drives.  Mr. Zeller sent an e-

26 | mail message to Michael Page and Christa Anderson, Bryant's current counsel,

27 | dated January 4, 2008, regarding Bryant's continuing failure to produce his other

28 | hard drives and/or forensic images of them and requesting another meet and confer

on this issue before Mattel filed a motion to enforce the January 25, 2007 Order compelling their production and seeking sanctions. By e-mail message dated January 7, 2008, Michael Werdergar, Bryant's current counsel, responded to Mr. Zeller's January 4, 2008 e-mail message. In his e-mail message, Mr. Wedergar stated that Bryant would not produce his other hard drives for two reasons. First, Bryant's counsel claims that the January 25, 2007 Order applied only to Bryant's Desktop, Laptop, and his parents' computer. Second, Bryant's counsel claimed that Mattel's request for Bryant's other hard drives was a "fishing expedition." Attached as Exhibit 29 is a true and correct copy of the e-mail message exchange between Michael T. Zeller and Mathew M. Werdeger, dated January 4 and January 7, 2008, respectively.

33.     Mattel has incurred attorneys' fees and costs in excess of $3,500.00 in bringing this motion. I spent more than three hours of time researching and preparing the motion, for a total of more than $1320 at my regular billing rate. Michael T. Zeller and B. Dylan Proctor, Quinn Emanuel partners, were also involved in preparing this motion. Mr. Zeller and Proctor each spent more than one hour of their time in preparing this motion, for total of more than $1,255 at their regular billing rates.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28th day of January, 2008, at Los Angeles, California.

_____
Melissa Grant

# THIS

# PAGE

# LEFT

# INTENTIONALLY

# BLANK

**Exhibit 1**

CONFORMED COPY

FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA  94111
415-774-2611
415-982-5287 (fax)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, <br><br> Plaintiff, <br><br> v. <br><br> MATTEL, INC., a Delaware corporation, <br><br> Defendant. <br><br> CONSOLIDATED WITH <br> MATTEL, INC. v. BRYANT and <br> MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. C 04-09049 SGL (RNBx) <br> JAMS Reference No. 1100049530 <br><br> Consolidated with <br> Case No. CV 04-09059 <br> Case No. CV 05-2727 <br><br> **ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |

## I.  INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1]  Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

1

EXHIBIT 1   PAGE 8
1-26

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel

Production of Documents is GRANTED.

## II.  BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls.  This highly

lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made

commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of

Bratz dolls now rival Mattel's Barbie doll.

A.  Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed

suit against its former employee Bryant in state court asserting claims for breach of contract,

breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion.  Mattel

employed Bryant as a product designer from September 1995 through April 1998, and from

January 1999 through October 2000.  Upon starting his second term, Bryant signed an Employee

Confidential Information and Inventions Agreement which required him not to engage in any

employment or business other than for Mattel, or invest or assist in any manner any business

competitive with the business or future business plans of Mattel.  Bryant also assigned to Mattel

all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his

employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that

he had not worked for any of Mattel's competitors in the prior twelve months and had not

engaged in any business dealings creating a conflict of interest.  Bryant agreed to notify Mattel of

any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for

a Mattel competitor (later identified as MGA).  Bryant entered into an agreement with MGA to

provide product design services on a "top priority" basis.[2]  The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA.  Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel.  In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction).  Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA.  The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls.  In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls.  In August of 2004, the district court remanded the action.

B. Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement.  Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

---

[2] Bryant has already produced his agreement with MGA.  Therefore, the existence of the agreement does not appear to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT  1   PAGE  10

### C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction.  Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act.  Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake.  After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

### D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

### E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims.  MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

### F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant.  In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review.  Mattel filed an appeal, and the district court stayed discovery in May of 2005.  Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling.  After the stay was lifted the district court consolidated all three actions for all purposes.  There is no scheduling order currently in place.

EXHIBIT __1__ PAGE __12__

G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

EXHIBIT  1   PAGE 13

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to compel. The parties informed the court that they would submit a stipulation and order. See Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel Production of Documents, counsel will be submitting a stipulation and order which will be dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to memorialize the parties' meet and confer session, but were unable to reach final agreement because Bryant insisted upon including the following sentence in the stipulation: "The stipulation resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23. From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel waive its right to all further discovery in connection with its requests. Mattel proposed the following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in this Stipulation shall preclude or limit Mattel from seeking further discovery on any matter, including as to matter on which the parties could not reach complete agreement, or preclude or limit any right of Bryant to object or resist to such discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was unacceptable to Bryant. At the direction of the Discovery Master, the parties met and conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

EXHIBIT  1  PAGE  14

1,600 pages of documents to date.  Mattel contends, however, that the production is inadequate

and consistent with a pattern of stonewalling.[3]  Accordingly, Mattel filed the instant motion to

compel responsive documents, which includes a request for sanctions in the amount of $7,805.

    J.   Mattel's Motion to Compel Production of Documents

    Mattel's motion has three parts.  First, Mattel seeks an order compelling Bryant to produce

the following categories of requested documents:  (a) documents relating to Bratz designs created

by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for

Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-

related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA

that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was

exposed to while working at Mattel.  Mattel's Motion at 6.  Mattel asserts that these categories of

documents are relevant to establish Bryant's liability and would reveal works rightfully owned by

Mattel.

    Second, as to other categories of documents which Bryant has agreed to produce, Mattel

contends that Bryant has imposed unjustified limitations.  According to Mattel, Bryant will not

produce any responsive documents that were created after the suit was filed; Bryant will not

produce any communications with MGA "created" after the end of his Mattel employment;

Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view,

"resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known

contracts between him and MGA and refuses to produce non-privileged communications relating

those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3]  According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear.  Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed.  Mattel again obtained a court order compelling the deposition and sanctions.  To date, only Bryant and Larian have been deposed.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT  1    PAGE 15

his earnings from his work for MGA.  Mattel's Motion at 7.  Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel.  He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004.  Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims.  Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter.  See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies.").  Accordingly, in the summer and fall of 2004, he produced the following categories of documents:  documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4]  There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center.  MGA denies the accusation.

EXHIBIT __1__  PAGE __16__

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

EXHIBIT __1__   PAGE __17__

requests and that the stipulation controlled to the extent they were inconsistent. Bryant's Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process and asks the Discovery Master to order the disposition of this motion in a manner consistent with the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks the Discovery Master to order Mattel not to revisit any of the requests that were the subject of Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone records and financial information because these records are protected by privacy rights. Lastly, Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit was filed.

### III.  DISCUSSION

A. The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

The parties' extensive submissions make it clear that the parties did not resolve the issues raised in the instant motion. The parties met and conferred extensively and in good faith, reaching compromises on virtually all categories of documents in dispute. Despite their efforts, however, the parties were ultimately unable to execute a binding stipulation because they were unable to agree on any provision to govern Mattel's future right to pursue additional discovery from Bryant. It is clear that the parties deemed it necessary to include such a provision in the draft stipulation in order to protect their respective positions. Because the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT ___1___ PAGE ___18___

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by

the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a

legitimate dispute over language governing Mattel's future right to pursue additional discovery

from Bryant, the Discovery Master denies Mattel's request for sanctions.

B.  Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

party." Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Id.

Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

unreasonably cumulative or duplicative, or is obtainable from some other source that is more

convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

26(b)(2).

C.  Mattel's Requests for Production

Request Nos. 2, 13, 48:  Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related

agreements.  Bryant is withholding responsive documents, including (a) documents relating to his

Bratz agreements with MGA other than final signed agreements, including communications

exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

<u>Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55: Documents Relating to Bratz's Development and Other Projects that Bryant Worked on for MGA</u>

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

employment, regardless of whether they resulted in a Bratz doll released in June of 2001.  Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001.  Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works.  Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46:  Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA.  Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA.  Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information.  Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns.  Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims.  First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion.  Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel.  Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

when the payments were actually made.  Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement.  Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works.  Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages.  17 U.S.C. §504(b).  The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market.  For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation.  Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel.  Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant.  Among other things, the protective order provides protection for confidential trade secret information.  It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only."  The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.  Bryant,

however, is not required to produce tax returns, provided that he otherwise fully complies with these requests as ordered.

Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

Mattel seeks production of Bratz-related communications and communications with MGA. More specifically, Mattel seeks production of four categories of documents Bryant has refused to produce: (1) communications between Bryant and MGA or third parties that explicitly relate to designs Bryant created while employed by Mattel; (2) communications between Bryant and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment; and (4) communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant contends that the discovery requests for communications between Bryant and MGA are overbroad. Bryant asserts that there are many former Mattel employees and friends of his who have privacy rights that would be impinged upon if he were to disclose his communications. Bryant also asserts that he has his own confidentiality interest regarding any information that he shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they would require him to reveal the identity of current Mattel employees seeking employment with MGA or Bryant.

The Discovery Master finds that Mattel's requests for all communications between Bryant and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential" private information about current or former employees, contractors or vendors (including employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

privileged documents responsive to Request Nos. 20, 23, 27, and 28.  However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA.  Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

Request Nos. 49, 51:  Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

Request No. 9:  Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration.  Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper.  Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1.  Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT __1__  PAGE __24__

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED. However, Bryant

need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30,

31, 32, 33, 34, 35, 36, 45, and 46.

2. Bryant shall produce all redacted documents in un-redacted form, except for redactions

that are justified by the attorney-client privilege or work product doctrine or his telephone records

pursuant to the terms of this Order.

3. Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5),

Fed.R.Civ.P.

4. Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his

computers for forensic imaging.

5. Bryant shall complete his production by producing missing attachments, fax cover

pages and all other missing responsive documents.

6. Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7. Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

Mattel shall file this Order with the Clerk of Court forthwith.


IT IS SO ORDERED.


Dated: January 25, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master


Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT _1_ PAGE _25_

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjakian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjakjian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

EXHIBIT ___1___ PAGE ___26___

**Exhibit 2**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an
individual,

       Plaintiff,

  vs.

MATTEL, INC., a Delaware
corporation,

       Defendants.

No. CV 04-9049 SGL
(RNBx)

**CERTIFIED COPY**

_____

Consolidated with MATTEL, INC. v.
BRYANT and MGA ENTERTAINMENT, INC.
v. MATTEL, INC.

_____

HEARING BEFORE THE HONORABLE EDWARD A. INFANTE

San Francisco, California

Thursday, January 3, 2008

Reported by:
DANA M. FREED
CSR No. 10602

JOB No. 79867

EXHIBIT 2    PAGE 27

1                  UNITED STATES DISTRICT COURT
               CENTRAL DISTRICT OF CALIFORNIA
2                     EASTERN DIVISION

3    CARTER BRYANT, an
     individual,
4
                    Plaintiff,
5
          vs.                        No. CV 04-9049 SGL
6                                    (RNBx)
     MATTEL, INC., a Delaware
7    corporation,

8                   Defendants.

9

10   _____
     Consolidated with MATTEL, INC. v.
11   BRYANT and MGA ENTERTAINMENT, INC.
     v. MATTEL, INC.
12   _____

13

14            Hearing before the Honorable EDWARD A. INFANTE,

15   at JAMS, Two Embarcadero Center, Suite 1500, San Francisco,

16   California, beginning at 1:30 p.m. and ending at 4:05 p.m.

17   on Thursday, January 3, 2008, before DANA M. FREED,

18   Certified Shorthand Reporter No. 10602.

19

20

21

22

23

24

25            EXHIBIT  2   PAGE 28

1  APPEARANCES:

2

3  For the Plaintiff CARTER BRYANT, an individual:

4          KEKER & VAN NEST LLP
           BY:   MATTHEW M. WERDEGAR
5                JOHN TRINIDAD
           Attorneys at Law
6          710 Sansome Street
           San Francisco, California 94111-1704
7          415.391.5400

8  For the Defendant MATTEL, INC., a Delaware
   corporation:
9
           QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
10         BY:   JON COREY
                 TIMOTHY L. ALGER
11               B. DYLAN PROCTOR
           Attorneys at Law
12         865 Figueroa Street, 10th Floor
           Los Angeles, California 90017
13         213.443.3000

14 For the Defendants MGA Entertainment, Inc., MGA
   Entertainment (HK) Limited, and Isaac Larian:
15
           SKADDEN ARPS SLATE MEAGHER & FLOM LLP
16         BY:   RAOUL D. KENNEDY
                 AMY S. PARK
17         Attorneys at Law
           Four Embarcadero Center, 38th Floor
18         San Francisco, California 94111-5974
           415.984.6400
19
   Also Present:
20
           MAUREEN McCUAIG
21

22

23

24

25                           EXHIBIT  2   PAGE  29

1    number of depositions, that would, it would have to be

2    subject to that order by Judge Larson.  With that,

3    we'll submit.

4              JUDGE INFANTE:  Okay.  I appreciate your

5    arguments on both sides.

6              The first comment I want to make is that

7    I agree with the reasoning in the well-cited case of

8    Shelton versus American Motors from the Eighth

9    Circuit.  Courts should be very careful and very

10   cautious in allowing parties to depose opposing

11   parties lawyers, even former lawyers, for all the

12   reasons stated in that well-drafted opinion.

13             And of course, many other courts,

14   particularly courts that deal with discovery issues,

15   namely district courts, have agreed and applied the

16   concerns in Shelton versus American Motors.  And I

17   have cited it in my prior decisions as well when I was

18   on the bench.  And have been very, very conservative

19   about allowing attorneys, even former attorneys, to be

20   deposed or subpoenaed.

21             So I start with a great degree of caution.

22   And I agree with the principles of Shelton that there

23   should be essentially no other means to obtain the

24   information from elsewhere.  Secondly, that the

25   information must be clearly relevant and not

EXHIBIT  2   PAGE  50

68

1   privileged.  And thirdly, that the information should

2   be crucial to the preparation of the case.

3        I think crucial may be too strong a word.

4   It's not necessarily consistent with Rule 26.  I would

5   use words like essential or necessary.  But in any

6   event, I embrace those teachings.

7        And so my initial reaction is to put a very

8   heavy burden on the party who seeks to discover

9   information from a deponent's prior attorney.  The

10  problem in this case is the various statements made by

11  Littler's, by the firm's counsel with respect to the

12  condition and whereabouts of Mr. Bryant's former

13  computers, hard drives, laptops, et cetera.  The

14  statements are all part of the record here and the

15  inconsistency in those statements is alarming.  There

16  is in Mattel's claims, claims of spoliation.  I have

17  no idea whether they have any merit.  But they're

18  specifically pled.

19        I find the material you're seeking is

20  relevant.  I'm not clear as to whether it's available

21  from any other source.  I also find the information

22  you're seeking is essential and necessary to the

23  preparation of your entire case.  I do believe that

24  you should take the deposition of Mr. Bryant on this

25  question first.  And so I'm not prepared to grant your

EXHIBIT  2   PAGE  31

1   motion at this time.  Nor am I prepared to quash the

2   subpoena at this time.  I do believe the subpoena is

3   overbroad.  And the most discovery that would be

4   allowed would be discovery with respect to the hard

5   drives, which you set forth on page 11 of your brief

6   in the first three bullet points.

7            With respect to questioning Littler regarding

8   facts, regarding destructive testing conducted on the

9   original Bratz drawings, I find that you already have

10  sufficient information with respect to that subject.

11  And the information is not crucial, essential, or even

12  necessary, to the preparation of your case.  And

13  therefore, I would quash the subpoena with respect to

14  those items.

15           Does someone have a copy of the subpoena?

16  I misplaced mine.

17           Thank you, Mr. Werdegar.

18           MR. WERDEGAR:  There's a little highlighting

19  on two of the topics, but I wouldn't consider it work

20  product.

21           JUDGE INFANTE:  I just want to refer to it.

22  It was Exhibit No. 29.  If you take the designated

23  topics of testimony that are requested, and there are

24  8, I'd like to specifically relate my ruling to the

25  8 topics in the subpoena.   EXHIBIT 2  PAGE 32

70

1          I, the undersigned, a Certified Shorthand

2     Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4     before me at the time and place herein set forth; that

5     any witnesses in the foregoing proceedings, prior to

6     testifying, were duly sworn; that a record of the

7     proceedings was made by me using machine shorthand

8     which was thereafter transcribed under my direction;

9     that the foregoing transcript is a true record of the

10    testimony given.

11         Further, that if the foregoing pertains to

12    the original transcript of a deposition in a Federal

13    Case, before completion of the proceedings, review of

14    the transcript [  ] was [  ] was not requested.

15         I further certify I am neither financially

16    interested in the action nor a relative or employee

17    of any attorney or party to this action.

18         IN WITNESS WHEREOF, I have this date

19    subscribed my name.

20

21    Dated: ____JAN - 4 2008____

22

23                    _____

                      DANA M. FREED
24                    CSR No. 10602

25

EXHIBIT 2 PAGE 33

**Exhibit 3**

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority ___✓___   Send _____
Entered ___✓___   Closed _____
JS-5/JS-6 _____   JS-2/JS-3 _____
Scan Only _____   Docketed on CM ___✓___
THIS CONSTITUTES NOTICE OF
ENTRY AS REQUIRED BY FRCP 77(d)

8/29/07

EASTERN DIVISION
BY_____ DEPUTY

**PRIORITY SEND**
& ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES – GENERAL

Case No.   CV 04-09049 SGL (RNBx)                    Date:  August 27, 2007

Title:   CARTER BRYANT -v- MATTEL, INC.
         AND CONSOLIDATED ACTIONS
======================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Gina L. Guzman                        Theresa Lanza
           Courtroom Deputy Clerk                Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker, Esq.                       John B. Quinn, Esq.
(morning session only)                    Michael T. Zeller, Esq.
                                          Jon D. Corey, Esq.

ATTORNEYS PRESENT FOR MGA:

Patricia Glaser, Esq.
Diana M. Torres, Esq.

PROCEEDINGS:      ORDER DENYING MOTION FOR TERMINATING SANCTIONS;
                  ORDER DENYING REQUEST FOR INTERLOCUTORY
                  APPEAL; ORDER REQUIRING FILING OF AFFIDAVITS RE
                  EVIDENCE PRESERVATION

     This matter is before the Court on MGA's and Carter Bryant's Motion for Terminating
Sanctions, filed on July 24, 2007 (docket #689).  This matter was heard on August 27, 2007, at
which time it was taken under submission. The Court has considered the moving, opposition, and
reply briefs, as well as the many declarations and other evidence presented by the parties.  The

MINUTES FORM 90                                    Initials of Deputy Clerk ___glg___
CIVIL – GEN                                        Time: 02/52
                          1                        **Docket No. 895**

EXHIBIT  3    PAGE 34

`RightFAX`                    /2007 2:34   FAGE 003/006    x Server

Court has also considered the arguments presented at the August 27 hearing and the sworn testimony given by Michael C. Moore, in-house counsel for Mattel. Although at the hearing the Court indicated it would defer ruling on the present motion pending further filings by all parties regarding their efforts to preserve evidence, upon further reflection the Court sees no reason to delay ruling on the current motion.[1]  As set forth below, the Court **DENIES** the motion.

Based on their inherent power to sanction for "abusive litigation practices," district courts may impose sanctions against a party who destroys evidence, including the ultimate sanction of dismissal. Leon v. IDX Systems Corp., 464 F.3d 951, 958 (9th Cir. 2006). Dismissal is a harsh sanction, which may nonetheless be imposed upon those parties who have "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995). However, before imposing the ultimate sanction of dismissal, district courts should consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Id. Nevertheless, district courts need not make explicit findings regarding each of these factors and, in any event, "a finding of willfulness, fault, or bad faith is required for dismissal to be proper." Leon, 464 F.3d 951, 958 (9th Cir. 2006) (internal quotation marks and citation omitted).

"A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" Id. at 959 (quoting United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002) (finding no willful spoliation where documents were destroyed in the routine course of business)). Neither Leon nor Kitsap elaborate on when a party has the "notice" necessary to trigger the duty to preserve evidence. However, in In re Napster, Inc. Copyright Litigation, 462 F.Supp.2d 1060, 1068 (N.D. Cal. 2006), the district court presented a persuasive discussion of the standard, first rejecting an argument that the duty to preserve evidence arises only when litigation is "imminent," and then setting forth a lesser standard. Specifically, the Napster court noted that the duty arose "when a party should have known that the evidence may be relevant to future litigation," and that any such "future litigation" must be "probable," and not merely "possib[le]." (internal quotation marks and citation omitted).

Keeping in mind these standards, the Court turns to the categories of evidence MGA and Bryant allege that Mattel has despoiled. As articulated by the Court at the hearing on this matter, those categories are (1) Mattel employees' emails, (2) documents maintained on the Zeus document storage system, (3) the delay in producing certain Rule 30(b)(6) witnesses, (4) Carter

---

[1]  By the same token, upon further reflection, the Court sees no reason to delay ruling on MGA's request for interlocutory appeal of the present order. See 28 U.S.C. § 1292(b) (stating that certifications for interlocutory appeal should be set forth in the order to be appealed). The Court's ruling on that matter appears infra.

MINUTES FORM 90
CIVIL – GEN

Initials of Deputy Clerk __gjg_____
Time: 02/52
**Docket No. 895**

EXHIBIT 3  PAGE 35

RightFAX                    /2007 2:34       004/006          x Server

Bryant's missing phone records, and (5) Carter Bryant's missing time records.

In considering the arguments of the parties regarding when Mattel's duty to begin to preserve evidence arose, the Court determines that November 24, 2003, marks the date when litigation between Mattel and Bryant became more than merely speculative and in fact became probable. On this date, in-house counsel for Mattel received in discovery in an unrelated action a copy of a contract between MGA and Bryant that pre-dated Bryant's resignation from Mattel. This contract appeared to Mattel to violate certain employment agreements executed by Bryant and Mattel, thus giving rise to one of the current consolidated actions. Although prior to this date an internal investigation may have raised a <u>suspicion</u> on Mattel's part that litigation might arise, there was no evidence presented to the Court that Mattel should have known it had a viable claim against Bryant before November 2003. <u>Cf.</u> Fed. R. Civ. P. 11(b)(3) ("By presenting to the court . . . a pleading . . . , an attorney
. . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .").

The Court heard testimony from Michael C. Moore, in-house counsel for Mattel, regarding the efforts to preserve email communications and other evidence. Counsel for MGA and Bryant cross-examined Mr. Moore at the hearing on this matter. The Court credits his testimony. The efforts Mr. Moore described regarding the preservation of emails is reasonable, and certainly does not amount to spoliation. Moore described communications with specific individuals identified by Mattel as those most likely to have information relevant to the litigation and efforts made to preserve any evidence those individuals had in their custody or control. Emails not otherwise archived from the relevant time period – mostly September and October, 2000 – had already been deleted from Mattel's email servers in accordance with its email retention policies. Mattel cannot be faulted for deleting these emails in the regular course of business before it had notice of its claims against Bryant.

In April, 2005, the current litigation took a dramatic turn, when MGA filed suit against Mattel. At that time, <u>all</u> Mattel employees were instructed to maintain any evidence potentially relevant to the litigation. When that suit was filed, Mattel took action to preserve all of its emails, capturing emails that date back to December, 2004. They retain these backup tapes to this day. MGA and Bryant make much of Mattel's failure to suspend its 90-day auto-delete policy regarding emails, but fail to address two key points: First, Mattel altered only the storage mechanism for its emails, it did not actually delete any emails; and second, Mattel, a number of years ago, informed MGA that it was not planning on suspending its 90-day auto-delete policy, and MGA did not at that time object.

As for the Zeus tapes, there is simply no evidence of spoliation. First and foremost, as the system has been described to the Court, the system is a cumulative file system that continues to accumulate. The system is still in operation, does not have an auto-delete function, and

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk __glg_____
Time: 02/52

3                          Docket No. 895

EXHIBIT   3   PAGE   36

information dating back to all relevant time period in this case may be accessed from it. Additionally, Mattel's in-house counsel testified as to the existence of several backup tapes that it can make available to MGA and Bryant. Finally, outside of pure speculation, there is no evidence that anyone has deleted anything from the Zeus system. Although production issues may still remain with respect to these data, preservation of this data, in the Court's view, is simply not an issue based on the record before the Court.

The delay in producing certain Rule 30(b)(6) witnesses is not a proper basis for terminating sanctions in this case. No motions to compel were brought to compel these witnesses's depositions at earlier times, and MGA and Bryant's accusations that the delay in producing them for deposition is part of a cover-up of the destruction of evidence is mere unfounded speculation. Moreover, the Court is mindful that MGA has been found by the discovery master to be guilty of the very same unexcused delay of which it accuses Mattel. See August 14, 2007, J. Infante Order, at 8 and 9 (attached to the Supplemental Proctor Decl. as Ex. 1).

Although Mattel is at a loss to explain the missing phone records from the critical month of October, 2000, there is no evidence that the records were destroyed. Moreover, other evidence presented by Mattel, especially phone records produced by Bryant that show he was in contact with MGA during that time period, suggest that the missing records would not assist Bryant.

The "missing" time records were either never created or were deleted. There is no evidence that the latter occurred. In fact, the only evidence on this point, from Mattel's Rule 30(b)(6) witness, is that although deletion of time records is possible, he was unaware of any instances of that occurring. Artavia Depo. 116, 170-71.

In sum, MGA and Bryant have failed to present any evidence regarding the "willfulness, fault, or bad faith" required to justify the imposition of terminating sanctions. Leon, 464 F.3d at 958. Many of MGA and Bryant's allegations, especially those raised in connection with Mattel's failure to suspend its auto-delete policy (portrayed as a wholesale failure to preserve emails less than 90-days old) and the availability of data from the Zeus system, are nothing more than rhetoric laced with hyperbole. Other allegations, such as Mattel's motive for delaying certain Rule 30(b)(6) depositions, and the destruction of Bryant's October, 2000, phone records and time records, are nothing more than sheer speculation, unsupported by evidence. Although counsel impressed upon the Court MGA's conviction of the righteousness of its cause, such overzealous conviction as witnessed by the Court at the hearing is no substitute for proof.

Accordingly, the Court **DENIES** MGA's and Bryant's Motion for Terminating Sanctions.

At the hearing, counsel for MGA and Bryant requested the Court certify the present order for interlocutory appeal. That request is **DENIED**. Permissive interlocutory appeals are governed by 28 U.S.C. § 1292(b):

When a district judge, in making in a civil action an order not otherwise

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk __glg_____
Time: 02/52

4

Docket No. 895

EXHIBIT  3  PAGE  37

appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Id. Here, there is no "controlling question of law" in controversy. The law is quite settled. Accordingly, certification for interlocutory appeal of the present order is unwarranted.

As stated at the hearing, the Court **ORDERS** all parties to set forth, in affidavit form, their preservation efforts and policies with respect to the present litigation on or before September 10, 2007.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL — GEN

Initials of Deputy Clerk __glg_____
Time: 02/52
**Docket No. 895**

EXHIBIT  3   PAGE  38

`RightFAX                    0/2007 2:34    #:24569001/006        x Server`

**rom:**    Name:    United States District Court
312 North Spring Street
Los Angeles, CA  90012
Voice Phone:  (213) 894-5474

**To:**    Name:    Michael Zeller
Company:

865 S Figueroa St, 10th Fl,
City/State:    Los Angeles, CA 90017-2543
Fax Number:    213-624-0643

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA



## Automated Document Delivery Service
*Notice pursuant to Rule 77(d) FRCiv.P*
*The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

**Fax Notes:**

Case 2:04-CV-09049 : CARTER BRYANT V. MATTEL INC

*Pursuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search Warrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents (Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail address for each division is as follows:*

*Western Division: CrimIntakeCourtDocs-LA@cacd.uscourts.gov*
*Southern Division: CrimIntakeCourtDocs-SA@cacd.uscourts.gov*
*Eastern Division: CrimIntakeCourtDocs-RS@cacd.uscourts.gov*

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

**Switch to e-mail delivery and get these documents sooner!**
**To switch, complete and submit**
**Optical Scanning Enrollment / Update form G-76.**
**Call 213-894-5474 for help and free technical support.**

*If you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case, a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for which you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

Date and time of transmission:    Thursday, August 30, 2007 2:34:04 PM
Number of pages including this cover sheet:  06

8/29    EXHIBIT  3   PAGE 39

**Exhibit 4**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                    Date: January 7, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS
=======================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

       Jim Holmes                              Theresa Lanza
       Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:  **Christa Martine Anderson**      **John B. Quinn and Michael T. Zeller**

ATTORNEYS PRESENT FOR MGA:            ATTORNEY PRESENT FOR CARLOS
**Thomas J.  Nolan**                       GUSTAVO MACHADO GOMEZ:
**Carl A. Roth**                           **Mark E. Overland**
**Anna Park**
                                      ATTORNEY PRESENT FOR NON-PARTY
ATTORNEY PRESENT FOR NON-             STERN & GOLDBERG: **Kien C. Tiet**
PARTIES ANA ELISE CLOONAN,
MARGARET HATCH-LEHY, AND             ATTORNEY PRESENT FOR NON-PARTY
VERONICA MARLOW: **Larry W.**              KAYE SCHOLER, LLP: **Bryant S. Delgadillo**
**McFarland**


PROCEEDINGS:     **ORDER GRANTING IN PART AND DENYING IN PART
                 MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL
                 DISCOVERY (DOCKET #1134)**

                 **ORDER GRANTING MOTION TO ENFORCE THE COURT'S
                 ORDER OF AUGUST 27, 2007, AND DENYING REQUEST FOR
                 SANCTIONS  (DOCKET #1143)**

MINUTES FORM 90                                      Initials of Deputy Clerk: jh
CIVIL -- GEN                      1                  Time: 1/30

EXHIBIT  4   PAGE  40

**ORDER GRANTING MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)**

**ORDER GRANTING CARTER BRYANT AND MGA DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)**

These matters were heard on January 7, 2008. The Court rules as set forth below.

To the extent that this Order decides issues more properly decided by the Discovery Master and/or preempts issues currently pending before the Discovery Master, it does so only to resolve those issues in the most expeditious manner possible. As the Court's order appointing the Discovery Master requires, any and all discovery disputes must be presented to the Discovery Master for his resolution.

**MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY (DOCKET #1134)**

This motion is **GRANTED IN PART**. Leave to take additional depositions and propound additional interrogatories are granted to the extent they are consistent with Fed. R. Civ. P. 26(b)(2). See Fed. R. Civ. P. 30(a)(2)(A) (depositions), 33(a) (interrogatories). Rule 26(b)(2) requires a Court to limit discovery where it is unreasonably cumulative or duplicative; where it can be obtained from a more convenient, less burdensome, or less expensive source; where a party has already had ample opportunity to obtain information from discovery; where the burden or the expense of the requested discovery outweighs its likely benefit, taking into account the factors of the parties' resources, the importance of the issues at stake, and the importance of the requested discovery in resolving these issues. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Considering this standard, the Court concludes that Mattel has shown good cause to grant additional discovery given the complexity of this case, the number of parties, recent developments related to the substitution of counsel, the concerns regarding retention and spoliation of evidence, and the delay in receiving paper

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT __4__ PAGE __41__

discovery caused by numerous discovery disputes and a Court-imposed stay requested by MGA upon substitution of counsel. Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) and relating to the trade secret and RICO claims (set forth in the moving papers at 13). Mattel may serve the notices of deposition and propound the interrogatories attached to the moving papers as Exs. A - C. Additionally, the parties must answer Mattel's previously propounded interrogatories to which the sole objection raised was that those interrogatories exceeded the allowable number of interrogatories.

The Court has heretofore refrained from bifurcating discovery relating to Phase 1 and Phase 2, believing that such an action is fraught with the potential of unnecessarily compounding discovery disputes in a case already predisposed to such disputes. Nevertheless, in light of the additional discovery permitted by this Order, and to the extent that counsel for the parties who are asserting or defending against claims to be tried in Phase 2 of the trial are in agreement, the Court will consider a stipulation of those parties that designates certain depositions as "Phase 2" depositions that may be conducted during the month of February, if counsel can assure the Court that such depositions can be so conducted without altering the Court's pretrial schedule regarding Phase 1.

Conversely, in light of the standard of review employed regarding the Discovery Master's orders, the Court **DENIES** that portion of Mattel's motion that seeks additional time in which to depose Carter Bryant. The Court cannot say that the Discovery Master's order allowing an additional nine hours to depose Carter Bryant is contrary to law based on the Discovery Master's unchallenged factual findings.

### MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF AUGUST 27, 2007 AND REQUEST FOR SANCTIONS (DOCKET #1143)

This motion is **GRANTED**. The Court's order clearly applied to "all parties." No party sought relief therefrom or clarification of the Court's order.

As prepared in purported compliance with the Court's order, the affidavit of Carlos Gustavo Machado Gomez is inadequate as it lacks facts and relies instead on conclusory language. Machado must file an affidavit that complies with the

EXHIBIT  4   PAGE  42

Court's order as set forth below.

Carter Bryant has refused to comply with the Court's order and has not filed the required affidavit.

Both these parties must file, on or before January 15, 2008, an affidavit setting forth a factual description of their preservation efforts, policies, customs, and/or practices with respect to potentially discoverable documents related to the present litigation.  The failure of these parties to comply with this Order will result in the imposition of contempt sanctions to coerce their compliance.

The Court **DENIES** Mattel's request for costs and sanctions.

## MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)

This motion is **DENIED**.  The Court's order referred to the Discovery Master any and all discovery disputes, including those involving third parties.

Although the parties stipulated to the Discovery Master, that stipulation was entered as the Court's order, and as such, all parties are subject to that order unless relieved from it upon proper motion.

The order was entered as a valid Rule 53(a)(1)(C) order, not requiring the consent of any party or nonparty.  Machado has not convinced the Court that, as a subsequently added party, he was required to be given the opportunity to object to the order before it could be applied to him.  See Fed. R. Civ. P. 53(b)(1) (requiring notice and opportunity to be heard prior to the appointment of a special master).  Importantly, Machado could have, but did not, seek relief from this order within a reasonable amount of time after he became a party to this case.  Furthermore, the Court does not find any basis to exclude Machado from the reach of the Court's order appointing the Discovery Master pursuant to his present objections.

## DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)

Carter Bryant and the MGA defendants may depose the ten individuals set

MINUTES FORM 90
CIVIL -- GEN

4

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT  4    PAGE  43

forth in their moving papers.  The testimony of all Rule 30(b)(6) witnesses "count" as only one deposition for purposes of determining the total number of depositions conducted by each side.

Carter Bryant and the MGA defendants are not relieved of the requirement that they serve subpoenas on all these deponents other than the current officers of Mattel (represented to the Court to be Tim Kilpin, Kevin Farr, and Evelyn Viohl).  To the extent that Mattel has made prior written agreements to produce deponents who are under its control, it is expected to do so.

As to all the depositions permitted by this Order, all counsel are expected to coordinate their schedules with those of the deponents such that the depositions are held prior to the discovery cutoff date of January 28, 2008.  However, as set forth above in connection with Mattel's motion to take additional discovery, Phase 2 depositions may be taken in February pursuant to a Court-approved stipulation.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN

5

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT  4  PAGE  44

**Exhibit 5**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**Exhibit 6**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**Exhibit 7**

**RECEIVED**

JAN 1 2 2005

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
1     Michael T. Zeller (Bar No. 196417)
    Jon D. Corey (Bar No. 185066)
2   Tania M. Krebs (Bar No. 227281)
   865 South Figueroa Street, 10th Floor
3   Los Angeles, California 90017-2543
   (213) 443-3000 (telephone)
4   (213) 443-3100 (facsimile)

5   Attorneys for Plaintiff and Counter-Defendant
   Mattel, Inc.
6
   LITTLER MENDELSON
7     Robert F. Millman (Bar No. 062152)
    · Douglas A. Wickham (Bar No. 127268)
8     Keith A. Jacoby (Bar No. 150233)
   2049 Century Park East, 5th Floor
9   Los Angeles, California 90067-3107
   (310) 553-0308 (telephone)
10  (310) 553-5583 (facsimile)

11  Attorneys for Defendant and Counter-Claimant
   Carter Bryant
12
13            UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 15 MATTEL, INC., a Delaware corporation, | CASE NO. CV 04 9059 NM (RNBx) |
| 16           Plaintiff, | **DISCOVERY MATTER** |
| 17      v. | Hon. Robert N. Block |
| 18 CARTER BRYANT, an individual, and DOES 1 through 10, inclusive, | **[UNREDACTED] JOINT STIPULATION RE: MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| 19           Defendants. | |

Hearing Date:      January 25, 2005
21 CARTER BRYANT, on behalf of    Time:              9:30 a.m.
   himself, all present and former   Courtroom:         540
22 employees of Mattel, Inc., and the
   general public,
                                   Discovery Cut-off:      Not Set
23           Counter-Claimant,     Pretrial Conference:    Not Set
                                   Trial:                  Not Set
24      v.

25 MATTEL, INC., a Delaware
   corporation,                      **FILED UNDER SEAL**
26                                   **HIGHLY CONFIDENTIAL**
             Counter-Defendant.     **ATTORNEYS' EYES ONLY**
27

28                         EXHIBIT  7  PAGE 8 4

[UNREDACTED] JOINT STIPULATION

1  on a date certain in August, only to unilaterally renege at the last minute. Even after

2  that, it took two Court Orders compelling Bryant's deposition before he appeared.

3        Bryant persists in similar tactics with respect to his document

4  production, despite Mattel's repeated efforts to resolve the matter without judicial

5  intervention. He either has failed or refused to produce key categories of information,

6  including documents directly relating to his breaches of his duties to Mattel.  For

7  example, Bryant refuses to produce *any* responsive documents that were created after

8  this suit was filed in April 2004, even though there is no basis in law or logic for such

9  a limitation, especially in this case where his breached obligations to Mattel include

10  obligations that are still in force. He additionally has imposed a multitude of other

11  restrictions on his production by refusing to disclose documents "created" after

12  certain dates, even as to plainly relevant categories of information and even though

13  such information is relevant regardless of when it was "created."

14        Moreover, what Bryant has produced is woefully incomplete. He has not

15  produced all of his contracts with MGA and refuses to produce non-privileged

16  communications relating to those contracts. He is withholding entire categories of

17  financial information relating to his work for MGA, and the financial documents he

18  did produce are so heavily redacted that they are useless.  Bryant has turned over

19  faxed documents that are missing fax header information and/or that lack fax cover

20  sheets. This is particularly troubling because timing and the chronology of events are

21  important to the merits of central issues in the case.  His production also includes a

22  variety of documents that refer to other documents, including attachments, that have

23  not been produced. Although Bryant agreed weeks ago to inquire into these and other

24  deficiencies, he has not responded to Mattel's follow-up efforts on the matter.

25        Bryant also has failed to produce, even in hard copy form, emails and

26  other electronic documents that are known to exist relating to his work on the "Bratz"

27  project and for MGA. He nevertheless has rebuffed Mattel's requests to inspect the

28  hard drives of his computers, even though he himself has made no attempt to

1    determine whether deleted files on the drives contain responsive information and
2    even though the law is clear that Mattel is entitled to such information.

3        Mattel respectfully requests that its motion to compel be granted.

4

5    **<u>Bryant's Introductory Statement</u>**

6        To understand and appreciate the issues raised in Plaintiff and
7    Counter-defendant Mattel Inc.'s ("Mattel") discovery motion, it is critical for the
8    Court to consider the procedural posture within which the motion arises. This case
9    has been twice removed to Federal Court by Defendant and Counter-claimant Carter
10   Bryant ("Bryant") on the grounds that diversity jurisdiction and federal question
11   jurisdiction exist. Mattel has steadfastly insisted that no federal questions have been
12   raised by its Complaint, and that diversity jurisdiction does not exist *because Bryant*
13   *cannot prove that more than $75,000 is in controversy*. On one hand, Mattel has
14   postured to Judge Manella that this case is a small employment lawsuit regarding
15   Bryant's alleged performance of services for a competitor, in the weeks before he
16   terminated his employment at Mattel. On the other hand, Mattel urges this Court to
17   compel responses to *wide ranging* discovery requests, covering documents created
18   by Bryant and others over the course of his entire life, on subject matters that could
19   only be germane to this lawsuit if Mattel were seeking to recover all of the money
20   Bryant has earned since leaving Mattel, *i.e.* royalties earned over the course of the
21   past four years as a result of the sale of products sold under the trade name "Bratz."
22   Mattel's inconsistent positions taken before Judge Manella and before this Court
23   cannot be reconciled with each other.

24       Mattel should not be permitted to gain any advantage from its
25   duplicitous assertions about the scope of this lawsuit. Mattel alleges Bryant violated
26   his contractual duties and duty of loyalty to Mattel in the weeks leading up to his
27   resignation. Bryant's compensation during his last weeks of employment at Mattel
28   totaled less than **REDACTED**. Since then, he has earned **REDACTED** from

1    disclosing yet more confidential Mattel information.    Bryant's limitation cannot be

2    sustained.

3            **Bryant Also Should Be Ordered To Turn Over His Hard Drives.**    A

4    request for "documents" under Rule 34 operates as a request for documents stored in

5    electronic form.    See Playboy Enterprises, Inc. v. Welles, 60 F. Supp. 2d 1050, 1053

6    (S.D. Cal. 1999); Fed. R. Civ. P. 34, advisory committee's note.[66]    Yet, among the

7    documents and things that Bryant has refused to produce are the hard drives from his

8    computers.    Bryant used these computers to communicate with and perform work for

9    MGA, but he refuses to allow Mattel to inspect any of their hard drives.[67]    Bryant used

10   three different computers that Mattel is aware of that are relevant here.    First, Bryant

11   purchased a desktop computer in October 2000 (the "Desktop").[68]    Bryant admitted at

12   deposition that he used this computer for a period of time and then gave it to his

13   niece.[69]    Second, Bryant purchased a laptop computer in November 2001.[70]    Third,

14   Bryant testified that he used his parent's computer for a time, including during the

15   time that he purportedly created "Bratz."[71]

16            There is more than ample basis to believe that the hard drives of these

17   computers contain responsive documents and relevant information.    Bryant's

18   production includes a smattering of documents that were computer-generated or

19   printed from a computer, although he has not produced all such documents known to

20   exist as explained further below.    For example, Bryant has produced hard copies of a

21   few electronic-mail messages.[72]    He has also produced documents that were created by

22

23       [66]    Mattel's requests also explicitly defined "documents" to include electronic
24   data and documents.    Zeller Dec., ¶ 10 and Exh. 12.
         [67]    Zeller Dec., Exh. 49.
25       [68]    Zeller Dec., ¶ 30 and Exh. 72 (at 246:3-5).
26       [69]    Zeller Dec., Exh. 72 (at 246:2-246:17).
         [70]    Zeller Dec., Exh. 72 (at 245:7-248:11).
27       [71]    Zeller Dec., Exh. 72 (at 245:25-246:1).
28       [72]    Zeller Dec., ¶ 30 and Exh. 26.

EXHIBIT 7   PAGE 87

58

[UNREDACTED] JOINT STIPULATION

1    computer, including correspondence.[73]

2           During a telephone conversation with Bryant's counsel, Mattel first

3    learned of the existence of the Desktop and that Bryant had purportedly given it away

4    to his niece.[74]  In later correspondence, Bryant's counsel indicated that he had looked

5    at the hard drive of the Desktop, but located no responsive documents.[75]  He refused

6    to allow Mattel to inspect the hard drive,[76] even though there is no evidence that

7    Bryant made any effort to conduct a forensic analysis of that hard drive or to

8    determine whether any deleted documents could be retrieved and produced.[77]  Indeed,

9    because as far as Mattel could tell Bryant did not create any forensic copy of that (or

10   any other) hard drive, Mattel requested that Bryant's counsel take possession of the

11   hard drives to ensure that any evidence that they may contain is not destroyed.[78]

12   Counsel for Bryant never responded.[79]

13          Compelling the production of the hard drives to Mattel is appropriate for

14   two principal reasons.  First, it is appropriate to ensure that evidence is not lost and to

15   permit Mattel to ascertain whether any files of relevant materials have been deleted.

16   Because Bryant's counsel will not make these hard drives available for inspection

17   (and indeed has not undertaken to secure the computers to ensure that no electronic

18   evidence is destroyed), Mattel should be permitted to make mirror-images of the hard

19   drives of each computer.  Creating a mirror-image not only is forensically sound, but

20   it takes very little time and causes no disruption to the computer's functionality.  Even

21   if the evidence on Bryant's computers has been or is deleted or otherwise tampered

22   with, the hard drives must be produced.  Deleted computer records are discoverable.

---

23   [73] Zeller Dec., ¶ 31

24   [74] Zeller Dec., ¶ 36 and Exh. 46.

25   [75] Zeller Dec., ¶ 37 and Exh. 49.

26   [76] Id.

27   [77] Zeller Dec., ¶ 37.

28   [78] Zeller Dec., ¶ 38.

     [79] Zeller Dec., ¶ 38.

EXHIBIT  7  PAGE  88

59

1    <u>See</u> <u>Simon Property Group L.P. v. mySimon, Inc.</u>, 194 F.R.D. 639, 640 (S.D. Ind.

2    2000) ("[C]omputer records, including records that have been 'deleted,' are

3    documents discoverable under Fed. R. Civ. P. 34.").

4           Second, Mattel is entitled to discovery to determine whether the

5    computers contain additional responsive documents.  The evidence suggests that they

6    do.  Bryant's counsel has represented that he looked at one hard drive for responsive

7    documents, but apparently has made no effort to look for or recover deleted data from

8    that hard drive and made no effort to examine the other computers at all.[80]

9    Deficiencies in Bryant's production confirms that the hard drives likely contain

10   relevant materials.   Bryant used email in his exchanges with MGA and others

11   pertaining to Bratz.[81]   He also recorded various e-mail addresses that he used and

12   produced a document containing some of them to Mattel.[82]   Elsewhere, in a letter,

13   Bryant specifically invited the recipient to contact him by e-mail: "Please do not

14   hesitate to email me if you have further questions."[83]  Yet, there is irrefutable evidence

15   that Bryant has not turned over even hard copies of all his responsive emails or their

16   attachments.   MGA, for example, produced e-mail messages that Bryant exchanged

17   with Isaac Larian and Paula Treantafelles of MGA in 2000.[84]  Yet, Bryant has not

18   produced these emails in any form, and, given the dates on the emails, it is highly

19   likely that files containing these and other emails are on the hard drive of his Desktop.

20   Indeed, despite the existence of such known, additional electronic documents,

21   Bryant's entire production (approaching 1600 pages) contains only a few pages of

22   computer-generated documents: a few e-mail messages, four letters, and a résumé.

23   Mattel is entitled to inspect the hard drives of Bryant's computers to determine

24   whether they contain responsive documents.

25       [80] Zeller Dec., ¶ 37.
26       [81] Zeller Dec., Exhs. 24-26.
27       [82] Zeller Dec., Exhs. 40 & 73 (at 400:11-21).
         [83] Zeller Dec., Exh. 21.
28       [84] Zeller Dec., Exhs. 24 & 25.

EXHIBIT 7 PAGE 89

1    Bryant may argue that his "personal" computers should somehow be
2  immune from discovery.  That argument would be wrong.  Courts permit inspection of
3  home computers.  <u>See</u>, <u>e.g.</u>, <u>Superior Consultant Co. v. Bailey</u>, No. 00-CV-73439,
4  2000 WL 1279161, at *13 (E.D. Mich. Aug. 22, 2000) (ordering defendants to "create
5  and produce to defense counsel a backup file of defendant Bailey's laptop computer,
6  and a backup file of any personal computer hard-drive to which defendant Bailey has
7  had access at any time").   Such an inspection is particularly appropriate where, as
8  here, the responding party used the computer for business purposes.

9    For these reasons, Bryant should be ordered to make all computer hard
10  drives within his possession, custody or control available for Mattel's inspection and
11  forensic imaging.

12    **Bryant Should Be Compelled To Produce His Telephone Records**
13  **Without Redactions.**  Bryant's telephone records are responsive to these requests.
14  Bryant has produced some telephone records.[85]  He saw fit, however, to redact the
15  vast majority of the call information on these documents.  He went so far as to redact
16  *all* of the call information on his Pacific Bell telephone bills.[86]  Bryant has also
17  produced no telephone bills for a carrier known as "tti National, Inc." for any date
18  prior to October 23, 2000 for one phone number or any date prior to October 26, 2000
19  for another phone number.[87]  While Bryant may assert, yet again, that rights of
20  confidentiality or privacy justify his stonewalling, the Protective Order more than
21  adequately protects any such rights.  He should be ordered to produce the telephone
22  records in his possession without redaction.

23    Bryant's objections should be overruled in their entirety, and he should
24  be ordered to produce all responsive documents.

25

26    [85] See Zeller Dec., ¶ 28 and Exh. 34.
27    [86] See Exhibit 34 to Zeller Dec.
28    [87] Zeller Dec., Exh. 34.

EXHIBIT 7   PAGE 90

[UNREDACTED] JOINT STIPULATION

## C.   **Bryant's Position**

There is perhaps nothing more far-fetched in this motion than Mattel's contention that "Bryant has completely refused to produce communications between himself and MGA." Bryant has not "refused" to produce communications between himself and MGA. To the contrary, he has produced his agreement, his royalty statements, all manner of artwork that was done for MGA or that was assigned to MGA. Moreover, and contrary to Mattel's contentions, Bryant has made an extensive and diligent search for responsive and relevant information. As Bryant's counsel has expressly told Mattel, Bryant made the hard drive of the computer he used from 2000 to 2002 available to his counsel, and counsel spent scores of attorney hours searching for documents at Bryant's home and in his studio, and produced responsive documents. Counsel has not found any responsive documents or relevant information on his computer hard drives, however. (Jacoby Decl. ¶ 22). Mattel's unsubstantiated comment that Bryant's counsel "apparently has made no effort to look for or recover deleted data from that hard drive and made no effort to examine the other computers at all" is a complete falsehood, and contradicts express representations made to Mattel's counsel in the meet and confer that Bryant's counsel had expended significant time examining the computer. While Bryant has tirelessly searched for and inspected his computer hard drives for relevant information, there is irrefutable evidence that Mattel has not turned over all of its electronic data related to Bryant, such as responsive emails or their attachments, and Mattel has refused to make its technical person knowledgeable available for deposition. (Jacoby Decl. ¶ 23).

Mattel complains that Bryant has not simply turned over the hard drive from Bryant's home computer, which he gave to his niece in 2002. That hard drive, however, contains personal information and data that is unquestionably protected by his constitutional right of privacy, and that of his niece. See Cal. Const. art. I, § I.; also see TBG Insurance Serv's Corp. v. Superior Court, 96 Cal. App. 4th 443 (2002)

EXHIBIT   7   PAGE 91

1   (reasonable expectation of privacy exists in the use of a personal home computer that

2   is owned by a party).   Federal law similarly supports Bryant's right to privacy.

3   Pursuant to the Erie doctrine, federal courts sitting in diversity should apply state

4   substantive law and federal procedural law. Other circuits have also held that a

5   reasonable expectation of privacy exists in home computers.   U.S. v. Lifshitz,

6   369 F.3d 173 (2nd Cir. 2004); Trulock v. Freeh, 275 F.3d 391, 403 (4th Cir. 2001);

7   Guest v. Leis, 255 F.3d 325, 333 (6th Cir. 2001).

8              Mattel cites to Superior Consultant Co. v. Bailey, No. 00-CV-73439,

9   2000 WL 1279161, at *13 (E.D. Mich. Aug. 22, 2000) to support its contention that

10  Bryant has no privacy rights to his "personal" home computers.  The facts in Bailey

11  are distinguishable from the case here, as in Bailey, the Plaintiff used his personal

12  computer to access his ex-employer's database of confidential, proprietary and trade

13  secret information.  Here, Bryant has not done so.

14             Mattel also seeks unredacted versions of both Bryant's telephone records

15  and the telephone records of his parents and friends.  Bryant already produced pages

16  of telephone records reflecting all phone calls between MGA and himself, redacted to

17  exclude his own personal (non-MGA related) phone calls and the phone calls of his

18  family and roommates (Richard Irman and Elise Cloonan).  He also produced redacted

19  phone records from Veronica Marlow, the individual who introduced Bryant to MGA.

20  He produced those records in good faith, even though they are not his own, because

21  they were turned over by Marlow to his attorneys during this litigation (Jacoby Decl.

22  ¶ 25)

23             Mattel is not entitled to unredacted versions of Bryant's telephone

24  records.  Those records contain calls to and from family and friends, and calls by his

25  roommates to others, which are obviously unrelated to this action.  Under California

26  law, "A subscriber has a reasonably expectation that records of his calls will be

27  utilized only for the accounting functions of the telephone company in determining his

28

63

EXHIBIT  7  PAGE  92

1    bills.  He has no reason to expect that his personal life, as disclosed by the calls he

2    makes and receives, and the day and time of those calls, will be disclosed to

3    outsiders."  <u>People v. McKunes</u>, 51 Cal. App. 3d 487 (1975).  Bryant is entitled to a

4    reasonable expectation of privacy in the personal calls he received or made from his

5    home by any of his family members regarding issues unrelated to this case.  Similarly,

6    Bryant's parents and friends are entitled to a reasonable expectation of privacy in the

7    personal calls they received or made from their home regarding issues unrelated to

8    this case.  Therefore, there is nothing to compel here.

9            The Requests seeking communications with MGA or referring to "Bratz"

10   are also overbroad and burdensome, as stated, in that most of them contain no

11   limitation as to the type of communications or records sought.  For example, Request

12   No. 27 asks for "ALL DOCUMENTS that REFER OR RELATE TO

13   COMMUNICATIONS between YOU and MGA after October 20, 2000."  As framed,

14   Bryant would have to produce every piece of communication since October 20, 2000

15   until today between MGA and himself.  As noted above, however, Bryant has already

16   produced the records of his communications with MGA that pertain to his initial

17   contract with MGA and his work on the First Generation "Bratz."

18

19                          <u>**ISSUE NO. 6**</u>

20      **Should Bryant Be Compelled To Produce Mattel-Related Documents?**

21           Set forth below are: (A) Mattel's Requests that are relevant to Issue No. 6

22   and Bryant's Responses to Mattel's Requests; (B) Mattel's position; and (C) Bryant's

23   position.

24

25

26

27

28                                         EXHIBIT 7   PAGE 93

                              64

**Exhibit 8**

RECEIVED

NOV 0 2 2004

ARIZONA



A PROFESSIONAL CORPORATION

CALIFORNIA

COLORADO

Keith A. Jacoby
Direct: 310.772.7284
Direct Fax: 310.553.5583
kjacoby@littler.com

November 1, 2004

DISTRICT OF
COLUMBIA

**VIA MAIL AND FACSIMILE 213.624.0643**

FLORIDA

John B. Quinn, Esq.
Kirkland Garey, Esq.
John Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

GEORGIA

ILLINOIS

Re:  **Mattel, Inc. v. Carter Bryant and Related Cross-Claim,** Los Angeles Superior
      Court Case No. BC 314398

Dear Messrs. Quinn and Garey:

MINNESOTA

This letter is in response to Mr. Garey's letter of October 28, 2004. That letter contained
several misrepresentations and misstatements of the positions I previously articulated on
behalf of Mr. Bryant to Mr. Garey and Mr. Corey, and I will rearticulate those positions here.

NEVADA

Preliminarily, my client and I take exception to your baseless accusation that the Bryant
production has been "sanitized." Nothing of the sort has occurred. I explained to you that
Mr. Bryant is an individual who moved several times between 1998 and 2004. He is not
required to maintain documents in the manner that a corporation such as Mattel is required to
do, and he has not done so. Of course, it is possible that documents were misplaced over the
years, or simply discarded, well before this lawsuit was filed. To be sure, Mr. Bryant never
expected to be sued by Mattel three and one-half years after his employment ended. That
being said, we are all fortunate that Mr. Bryant did maintain quite a number of documents
from the late 1990's and 2000, and all legitimately sought responsive documents in his
possession, custody and control have been produced, or are being produced today. This
production is the product of extensive searches at Mr. Bryant's places of work and home.
That said, I will look into the purported gaps in the production Mr. Garey's letter outlines,
and if further responsive documents are located, they will be produced. As indicated during
my call with Mr. Garey, Mr. Bryant will make a supplemental document production to
Mattel today, and allow Ms. Tania Krebs to view certain three dimensional items responsive
to Mattel's document requests at my office, at 3:00 p.m.

NEW JERSEY

NEW YORK

OHIO

PENNSYLVANIA

Regarding requests to inspect Mr. Bryant's home computer, I have made further inquires on
that subject to Mr. Bryant and my colleagues. Mr. Bryant did not own a home computer

TEXAS

**EXHIBIT  8  PAGE  94**

WASHINGTON

THE NATIONAL EMPLOYMENT & LABOR LAW FIRM℠

2049 Century Park East, 5th Floor, Los Angeles, California 90067.3107  Tel: 310.553.0308  Fax: 310.553.5583  www.littler.com

John B. Quinn, Esq.
Kirkland Garey, Esq.
Jon Corey, Esq.
November 1, 2004
Page 2

during his time at Mattel. He later purchased a computer, which he used for a time, and then gave away to his niece. That computer has been retrieved and searched for responsive documents, and none have been located. Mr. Bryant declines to produce his hard drive for inspection for the reasons articulated in his response to Mattel's document request.

Regarding the draft of the Bryant/MGA agreement prepared by Mr. Bryant's counsel, you have misstated my position. That document is not germane to this case in any respect. The proposed edits by Ms. Wang were almost entirely rejected by MGA and never had any legal effect. They have no bearing no Mattel's claims. During our call, I contrasted this position with Mattel's position on Mr. Bryant's requests relating to the Mattel Inventions and Assignments Agreement and Conflict of Interest Questionnaire. Originally, Mr. Bryant sought all drafts of these documents. That request was objected to as overbroad, and despite numerous meet and confers, counsel has not abandoned that position. I agreed to limit his requests to seek only forms of the agreements that were actually used by Mattel, from 1995 to the present. This would be highly relevant if, for example, Mattel has modified the agreement in response to a ruling or legal opinion that any part of the agreement was unenforceable. Mattel still refuses to produce these documents. I do not see how Mattel can on one hand refuse to produce documents actually used in the course of its business, and on the other hand insist that draft documents in Bryant's possession which were never used and never had any legal effect must be produced. This is typical of Mattel's strategy of seeking to obtain from Mr. Bryant the widest possible range of discovery, while for its own part agreeing to allow virtually no discovery to go forward.

Regarding the production of "First Generation Bratz" documents, that limitation was expressly agreed upon by Mr. Zeller, with respect to documents produced by both MGA and Mr. Bryant. We agreed that the limitation was without prejudice to seeking further documents at a later time. Mr. Zeller has never revisited this limitation with me, though Mattel appears to be revoking it now. A wholesale production of all post-June 2001 Bratz related documents would be a massive undertaking that is totally unjustified by the claims stated by Mattel to date. We see no basis to produce these documents at this time, and you have articulated none.

With respect to categories of documents Mr. Bryant has simply objected to, I represent that I am unaware of any documents in Mr. Bryant's possession, custody or control relating to Mattel document request no. 21 (other than Bryant himself). All other requests that were simply objected to were either unintelligible as written, or were both wildly overbroad and otherwise objectionable for the reasons stated in the objections. I would note, however, that

EXHIBIT __8__ PAGE __95__

John B. Quinn, Esq.
Kirkland Garey, Esq.
Jon Corey, Esq.
November 1, 2004
Page 3

responsive documents produced in response to other valid requests would, in some cases, be responsive to those objectionable categories as well.

Sincerely,

Keith A. Jacoby

Los_Angeles:381579.3 028307.1010

EXHIBIT __8__ PAGE _96_

**Exhibit 9**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

November 17, 2004

**Via Facsimile and U.S. Mail**

Keith A. Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107

Re:    *Mattel, Inc. v. Carter Bryant*

Dear Mr. Jacoby:

I write in response to your letter of November 1, 2004 regarding Carter Bryant's Objections and Responses to Mattel, Inc.'s First Set of Requests for Production of Documents and Tangible Things. Mattel has not accused you or your client of "sanitizing" the Bryant document production. My letter of October 28, 2004 stated, "We cited [during our October 25, 2004 meet and confer] certain examples in which it appeared that the production had been 'sanitized' of such information." For example, the MGA production contained documents that suggested that there had been facsimile communications between Bryant and Kinuyo Shichijyo in the fall of 2000 and that had not been produced by Bryant (MGA Bates #427-28). On the eve of the Bryant deposition, on November 1, 2004 at 3:00 p.m., you made available for the first time, several previously withheld documents, including two letters, dated September 18, 2000, between Carter Bryant and Kinuyo Shichijyo regarding Bryant's attempts to find a hair supplier for MGA's "new doll line" (Bryant Bates #s 1201-02). This was when Bryant was still employed at Mattel. It would strain credulity to suggest that these documents were simply overlooked by Mr. Bryant in responding to Mattel's earlier document requests. We cited several other examples of what appeared to be gaps in your client's production to you in our conference call which you indicated you would look into. Please advise when we might expect the results of your further inquiry.

Despite the existence of a protective order, your client is refusing to produce the hard drive from the computer he apparently gave to his niece. Previously produced documents evidence e-mail correspondence between Bryant and others. These and other e-mail messages, not to mention

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 30023 Mirabau Drive, Suite 1, Indian Wells, California 92210 | TEL 760-775-8500 FAX 760-775-8510
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-813-3000 FAX 858-813-3100

EXHIBIT 9 PAGE 97

other responsive documents, likely exist on that hard drive. We must insist that this hard drive be made available for inspection and copying by Mattel in the next ten days. Moreover, as you are aware, the continued use of the hard drive may result in the destruction of relevant evidence. Until this dispute can be resolved, Mattel expects you, as Bryant's counsel, to secure possession of the hard drive and not to use it until an inspection can be agreed upon or ordered by the Court.

Despite our request for unredacted phone records and the existence of a protective order, on November 1, 2004, Bryant provided us with photocopies of phone records that had a significant number of telephone numbers redacted from them. Because of the existence of the protective order, which covers the phone records, Mattel is entitled to unredacted telephone records. We also note that you committed to review other documents being withheld from production that you thought might not be covered by the protective order and provide us with a list of any such documents. To date, we have not received any list from you and must assume that there are no such documents.

Mattel requested Bryant to produce any documents referring or relating to any agreement or contract between Bryant and any other individual that was proposed, offered, discussed, negotiated or executed while Bryant was employed with Mattel, including all drafts of such agreements or contracts, save for the final agreement which has been produced. It appears from your most recent correspondence regarding this topic that you are now attempting to narrow this request down to one specific document, apparently prepared by Bryant's counsel. To date, your client has produced no correspondence or notes, memoranda, e-mails, or any other documentation pertaining to any communications concerning draft employment agreements. Any such documentation, should it exist, is relevant to this lawsuit. Your attempt to link the production of these requested documents to Mattel's objection to producing draft employment agreements between it and other Mattel employees besides Bryant is misplaced. If your client still refuses to produce all documents responsive to this request, you will leave us no alternative but to move to compel.

With respect to the "First Generation Bratz" objection, we must stand on our earlier stated position and insist that these documents be produced.

By the statements in your November 1 letter, you have now backtracked from the representations you made during our October 25, 2004 conference call regarding those responses to which Bryant objected to without indicating that responsive documents would be produced. You have now limited that representation to Mattel's Request No. 21. We disagree with your characterization that any of the Mattel requests are "unintelligible," "wildly overbroad," or "otherwise objectionable." If you are unable to withdraw these unfounded objections as to all other requests in which no responsive documents were produced, you will leave us no alternative but to move to compel.

We are still awaiting receipt of the verification you agreed your client would provide attesting to the fact that all non-privileged responsive documents have been produced or that a diligent

2

EXHIBIT __9__ PAGE __98__

search has been made with respect to all other requests and no responsive documents were located.  Finally, you have acknowledged that Bryant's responses were incomplete and incorrect. Please provide an amended verified response that corrects these deficiencies by close of business on November 22, 2004.

Mattel is of the opinion that we have resolved all those outstanding issues that can be resolved without judicial assistance.  If you disagree, please contact me at your convenience.

Best regards,

Kirkland Garey

07209/619572.1

EXHIBIT __9__ PAGE __99__

3