1  REQUEST FOR PRODUCTION NO. 86:

2       All personnel and vendor files for Sarah Halpern.

3  RESPONSE TO REQUEST FOR PRODUCTION NO. 86:

4       MGA incorporates by reference its General Response and General Objections

5  above, as though fully set forth herein.  MGA further objects to the request to the

6  extent it seeks the production of documents that are protected from disclosure under

7  any applicable privilege, doctrine or immunity, including without limitation the

8  attorney-client privilege, the work product doctrine, the right of privacy, and all other

9  privileges recognized under the constitutional, statutory or decisional law of the

10  United States of America, the State of California or any other applicable jurisdiction.

11  MGA further objects to this request on the grounds that it is vague and ambiguous in

12  its use of the terms "personnel and vendor files."  MGA further objects to this

13  request on the grounds that it is overly broad and unduly burdensome in that it seeks

14  documents not relevant to the claims or defenses in this action and not reasonably

15  calculated to lead to the discovery of admissible evidence.  Mattel has not

16  demonstrated how *all* personnel and vendor files for Sarah Halpern could be relevant

17  to the claims and defenses in this action, let alone established that the relevancy of

18  these documents outweighs the individual's fundamental right of privacy.  The

19  request is not limited to the subject matter of this action and requires disclosure of

20  private, confidential documents that are not relevant to this action, and is thus

21  impermissibly overbroad.  See Aug. 13 Order at 9:17-20; May 22 Order at 21:5-7.

22  MGA further objects to this request as being overly broad and unduly burdensome

23  on the grounds that it is not limited in time.  MGA further objects to the request to

24  the extent it seeks confidential, proprietary or commercially sensitive information,

25  the disclosure of which would be inimical to the business interests of MGA.  MGA

26  further objects to the request to the extent it violates the privacy rights of third parties

27  to their private, confidential, proprietary or trade secret information.  Such

28   

EXHIBIT 4, PAGE 323

MGA'S SUPPLEMENTAL RESPONSES
TO MATTEL'S THIRD SET OF REQUESTS FOR PRODUCTION

1    information may also be subject to protective orders governing other litigations

2    thereby precluding disclosure in response to this request.

3         MGA further objects to this request as cumulative, duplicative, and unduly

4    burdensome to the extent that it seeks documents previously requested by Mattel or

5    produced by MGA in response to Mattel's document requests, including, but not

6    limited to:  Request No. 60 from Mattel, Inc.'s First Set of Requests for Documents

7    and Things re Claims of Unfair Competition to MGA Entertainment, Inc.

8    <u>SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 86</u>:

9         MGA incorporates by reference its General Response and General Objections

10   above, as though fully set forth herein.  MGA further objects to the request to the

11   extent it seeks the production of documents that are protected from disclosure under

12   any applicable privilege, doctrine or immunity, including without limitation the

13   attorney-client privilege, the work product doctrine, the right of privacy, and all other

14   privileges recognized under the constitutional, statutory or decisional law of the

15   United States of America, the State of California or any other applicable jurisdiction.

16   MGA further objects to this request on the grounds that it is vague and ambiguous in

17   its use of the terms "personnel and vendor files."  MGA further objects to this

18   request on the grounds that it is overly broad and unduly burdensome in that it seeks

19   documents not relevant to the claims or defenses in this action and not reasonably

20   calculated to lead to the discovery of admissible evidence.  Mattel has not

21   demonstrated how *all* personnel and vendor files for Sarah Halpern could be relevant

22   to the claims and defenses in this action, let alone established that the relevancy of

23   these documents outweighs the individual's fundamental right of privacy.  The

24   request is not limited to the subject matter of this action and requires disclosure of

25   private, confidential documents that are not relevant to this action, and is thus

26   impermissibly overbroad.  <u>See</u> Aug. 13 Order at 9:17-20; May 22 Order at 21:5-7.

27   MGA further objects to this request as being overly broad and unduly burdensome

28

EXHIBIT 4, PAGE 324

153

1  on the grounds that it is not limited in time.  MGA further objects to the request to

2  the extent it seeks confidential, proprietary or commercially sensitive information,

3  the disclosure of which would be inimical to the business interests of MGA.  MGA

4  further objects to the request to the extent it violates the privacy rights of third parties

5  to their private, confidential, proprietary or trade secret information.  Such

6  information may also be subject to protective orders governing other litigations

7  thereby precluding disclosure in response to this request.

8       MGA further objects to this request as cumulative, duplicative, and unduly

9  burdensome to the extent that it seeks documents previously requested by Mattel or

10  produced by MGA in response to Mattel's document requests, including, but not

11  limited to:  Request No. 60 from Mattel, Inc.'s First Set of Requests for Documents

12  and Things re Claims of Unfair Competition to MGA Entertainment, Inc.

13       Subject to and without waiving the foregoing objections, MGA will produce

14  non-privileged documents from Sarah Halpern's personnel or vendor file that refer or

15  relate to work or services provided by Ms. Halpern on Bratz prior to January 1, 2001,

16  if any, in its possession, custody or control that it is able to locate following a

17  reasonably diligent search.

18  REQUEST FOR PRODUCTION NO. 87:

19       To the extent not produced in response to any other Request for Production, all

20  personnel and vendor files for each person identified in Exhibit 664 (bearing Bates

21  numbers MGA 0868630-31).

22  RESPONSE TO REQUEST FOR PRODUCTION NO. 87:

23       MGA incorporates by reference its General Response and General Objections

24  above, as though fully set forth herein.  MGA further objects to the request to the

25  extent it seeks the production of documents that are protected from disclosure under

26  any applicable privilege, doctrine or immunity, including without limitation the

27  attorney-client privilege, the work product doctrine, the right of privacy, and all other

28

EXHIBIT 4 , PAGE 325

154

1    privileges recognized under the constitutional, statutory or decisional law of the

2    United States of America, the State of California or any other applicable jurisdiction.

3    MGA further objects to this request on the grounds that it is vague and ambiguous in

4    its use of the terms "personnel and vendor files." MGA further objects to this

5    request on the grounds that it is overly broad and unduly burdensome in that it seeks

6    documents not relevant to the claims or defenses in this action and not reasonably

7    calculated to lead to the discovery of admissible evidence. Mattel has not

8    demonstrated how all personnel and vendor files for each person identified in Exhibit

9    664 could be relevant to the claims and defenses in this action, let alone established

10   that the relevancy of these documents outweighs the individual's fundamental right

11   of privacy. MGA further objects to the request as oppressive, unduly burdensome

12   and harassing given the number of individuals listed in Exhibit 664. The request is

13   not limited to the subject matter of this action and requires disclosure of private,

14   confidential documents that are not relevant to this action, and is thus impermissibly

15   overbroad. See Aug. 13 Order at 9:17-20; May 22 Order at 21:5-7. MGA further

16   objects to this request as being overly broad and unduly burdensome on the grounds

17   that it is not limited in time. MGA further objects to the request to the extent it seeks

18   confidential, proprietary or commercially sensitive information, the disclosure of

19   which would be inimical to the business interests of MGA. MGA further objects to

20   the request to the extent it violates the privacy rights of third parties to their private,

21   confidential, proprietary or trade secret information. Such information may also be

22   subject to protective orders governing other litigations thereby precluding disclosure

23   in response to this request. MGA further objects to this request as cumulative,

24   duplicative, and unduly burdensome to the extent that it seeks documents previously

25   requested by Mattel or produced by MGA in response to Mattel's document requests.

26

27                                                    EXHIBIT 4, PAGE 326

28

MGA'S SUPPLEMENTAL RESPONSES
TO MATTEL'S THIRD SET OF REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 88:

1    To the extent not produced in response to any other Request for Production, all
personnel and vendor files for each person who has worked as an employee of or
vendor for YOU and who also has been at any time an employee of or vendor for
MATTEL.

RESPONSE TO REQUEST FOR PRODUCTION NO. 88:

MGA incorporates by reference its General Response and General Objections
above, as though fully set forth herein.  MGA further objects to the request to the
extent it seeks the production of documents that are protected from disclosure under
any applicable privilege, doctrine or immunity, including without limitation the
attorney-client privilege, the work product doctrine, the right of privacy, and all other
privileges recognized under the constitutional, statutory or decisional law of the
United States of America, the State of California or any other applicable jurisdiction.
MGA further objects to this request on the grounds that it is vague and ambiguous in
its use of the terms "personnel and vendor files."  MGA further objects to this
request on the grounds that it is overly broad and unduly burdensome in that it seeks
documents not relevant to the claims or defenses in this action and not reasonably
calculated to lead to the discovery of admissible evidence.  Mattel has not
demonstrated how all personnel and vendor files for each person who has worked as
an employee of or vendor for MGA and who also has been at any time an employee
of or vendor for MATTEL could be relevant to the claims and defenses in this action,
let alone established that the relevancy of these documents outweighs the
individual's fundamental right of privacy.  MGA further objects to the request as
vague and ambiguous, oppressive, unduly burdensome and harassing given the
number of individuals who may have worked as an employee or vendor for both
MGA and Mattel in their lifetime.  The request is not limited to the subject matter of
this action and requires disclosure of private, confidential documents that are not

EXHIBIT 4, PAGE 32

156

MGA'S SUPPLEMENTAL RESPONSES
TO MATTEL'S THIRD SET OF REQUESTS FOR PRODUCTION

1 relevant to this action, and is thus impermissibly overbroad.  See Aug. 13 Order at

2 9:17-20; May 22 Order at 21:5-7.  MGA further objects to this request as being

3 overly broad and unduly burdensome on the grounds that it is not limited in time.

4 MGA further objects to the request to the extent that it seeks documents not in

5 MGA's possession, custody or control.  MGA further objects to the request to the

6 extent it seeks confidential, proprietary or commercially sensitive information, the

7 disclosure of which would be inimical to the business interests of MGA.  MGA

8 further objects to the request to the extent it violates the privacy rights of third parties

9 to their private, confidential, proprietary or trade secret information.  Such

10 information may also be subject to protective orders governing other litigations

11 thereby precluding disclosure in response to this request.

12 MGA further objects to this request as cumulative, duplicative, and unduly

13 burdensome to the extent that it seeks documents previously requested by Mattel or

14 produced by MGA in response to Mattel's document requests, including, but not

15 limited to:  Request Nos. 79-89 from Mattel's First Set of Requests for Production of

16 Documents and Tangible Things to MGA, and Request No. 60 from Mattel, Inc.'s

17 First Set of Requests for Documents and Things re Claims of Unfair Competition to

18 MGA Entertainment, Inc., and Request No. 201 from Mattel's First Set of Requests

19 for Documents and Things to Isaac Larian.

20 DATED: January 9, 2008

21             SKADDEN, ARPS, SLATE, MEAGHER &
              FLOM, LLP
22

23             By:  _____
24                  Timothy A. Miller
                    Attorneys for Counter-Defendants, MGA
25                  ENTERTAINMENT, INC., ISAAC
                    LARIAN, MGA ENTERTAINMENT (HK)
26                  LIMITED, AND MGAE de MEXICO
                    S.R.L. de C.V.
27

28                                          EXHIBIT 4 , PAGE 322

MGA'S SUPPLEMENTAL RESPONSES
TO MATTEL'S THIRD SET OF REQUESTS FOR PRODUCTION

**EXHIBIT 5**

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE

PALO ALTO, CALIFORNIA 94301

TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

RECEIVED

JAN 1 0 2008

DIRECT DIAL
650-470-4624
DIRECT FAX
650-470-4570
EMAIL ADDRESS
ATEMKIN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 9, 2008

**BY EMAIL AND FEDEX**

Dylan Proctor, Esq.
Scott Kidman, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

RE:   Bryant v. Mattel; Mattel's Third Set of RFP To MGA

Dear Dylan and Scott:

This letter is to follow up on our teleconferences over the past several weeks regarding MGA's responses and objections to Mattel's Third Set of Requests for Production to MGA. I enclose MGA's Objections and Supplemental Responses to Mattel, Inc.'s Third Set Of Requests For Production Of Documents And Things (the "Supplemental RFP Responses"), which reflect MGA's agreement to produce certain documents in response to Requests Nos. 31, 35, 37, 39, 41, and 78-85, as we discussed during our conferences.

**Requests Nos. 1-30: Documents from unrelated litigations involving MGA entities**

Requests 1-30 seek a broad array of documents related to 25 "BRATZ LAWSUITS" that purportedly involved the MGA entities and the Bratz line of products.[1] As I noted in our conferences, MGA has already produced over 14,599 pages[2] of documents from a number of the

---

[1] During the meet and confer with Mr. Proctor on December 31, we notified you that three of the cases defined as "BRATZ LAWSUITS" did not involve the Bratz line of products at all. These matters include: <u>Kin Yat Industrial Company Limited v. MGA Entertainment (H.K.) Limited</u>, <u>Golden Bright Manufacturer Limited v. Sunlight Electronic Toys</u>, and <u>MGA Entertainment Inc. and Elliot Rudell trading as Rudell Design v. Wealth Ocean Industrial Limited</u>.

[2] Among the over 3.4 million pages already produced by MGA in this case.

EXHIBIT __5__, PAGE __329__

Dylan Proctor
Scott Kidman
January 9, 2008
Page 2

identified cases in response to other duplicative discovery requests.[3]  In particular, we call your attention to these specific documents, among others, that have already been produced for the following cases:

- <u>Art Attacks Ink, LLC v. MGA Entertainment, Inc.</u> (MGA 0862033- MGA 0862245, MGA 0863002-MGA 0863859, MGA 0863902-MGA 0864225, MGA 0868866-MGA 0869526, and MGA 0874043-MGA 0875237)

- <u>MGA Entertainment v. Fun 4 All</u> (MGA 0862246-MGA 0863001 and MGA 0871766-MGA 0872521)

- <u>MGA Entertainment v. Ubisoft</u> (MGA 0864226-MGA 0865640, MGA 0872522-MGA 0873936, and MGA 0873990-MGA 0874042)

- <u>McDonald's Corporation v. MGA Entertainment, Inc. f/k/a ABC International Traders</u> (MGA 0866262-MGA 0868038, MGA0869995 - MGA0871306)

- <u>MGA Entertainment, Inc. v. Thomas Christopher Joseph Metson</u> (MGA 0868039-MGA 0868091 and MGA 0873937-MGA 0873989)

- <u>Karen Dudnikov, Michael Meadors v. MGA Entertainment, Inc.</u> (MGA0871307 - MGA0871499)

- <u>MGA Entertainment, Inc. v. Multitoy, Inc., Yuan-Lan Liu, Jeff Wu dba TMC Toys, All Toys Imports, Inc., Susan Liu, ToysDivision, Inc., Tom Liu, Does 1-20</u> (MGA0871500 - MGA0871749)

- Declarations and exhibits from proceedings in Hong Kong (MGA 0883033-MGA 0886347), including:

  o <u>MGA Entertainment Inc. v. Hunglam Toys Company Limited; Choy Kam Ying, Candy; Kwok Yin Kwan, May; Kwok Chin Hung</u>

  o <u>MGA Entertainment Inc. formerly known as ABC  International Traders, Inc. doing business as MGA Entertainment v. Toys & Trends (Hong Kong) Limited, Cityworld Limited, Jurg Willi Kesselring</u>

---

[3]  As set forth in MGA's Responses to Mattel's Third Set of RFPs to MGA, Requests 1-30 are duplicative of, among other previously propounded document requests, the following: Request Nos. 38, 41 and 90 from Mattel's First Set of Requests for Production of Documents and Tangible Things to MGA, Request Nos. 5-12, and 20 from Mattel, Inc.'s First Set of Requests for Documents and Things re Claims of Unfair Competition to MGA Entertainment, Inc.

EXHIBIT 5 , PAGE 330

Dylan Proctor
Scott Kidman
January 9, 2008
Page 3

  o  ABC International Traders, Inc. doing business as MGA Entertainment V. Qualiman Industrial Company Limited; Prime Designs, Limited

  o  MGA Entertainment Inc. & MGA Entertainment (H.K.) Limited V. Double Grand Corporation Limited

  o  MGA Entertainment Inc. V. Hujnglam Toys Company Limited

   In addition, documents relating to MGA's rights with respect to the Bratz line of products (Requests No. 26, 27, and 28) have also been produced in this case.

   Mattel has made no showing that any additional documents that may come within the scope of Requests 1-30 relate to the claims and defenses in this case or would otherwise lead to the discovery of admissible evidence. During the course of our meet and confers, I repeatedly requested that Mattel narrow these requests, particularly in light of the burden to MGA to produce (or log privileged) responsive documents. For example, we suggested that Mattel should start by limiting its requests to a subset of the actions identified in the defined term "BRATZ LAWSUITS." You refused to limit these requests in any way.

   Responding to these requests as stated would place undue burden on MGA. The 25 lawsuits identified in your definition of the term "BRATZ LAWSUITS" span approximately seven years of litigation, include approximately 29 parties and, conservatively, have generated hundreds of volumes of files. Each of these files would need to be reviewed carefully because, as one would expect, they are likely to contain vast quantities of information that is protected from disclosure by the attorney-client privilege and work product doctrine. The extreme burden and cost to MGA of reviewing these documents and logging privileged documents far outweighs any marginal relevance of the documents related to these litigations that have not already been produced in response to other requests.

   In light of the foregoing, MGA will not produce additional documents in response to these requests as stated.

**Request No. 31: Documents Relating to the use of the term "Jade" in connection with any MGA doll**

   As we discussed during our meet and confer, subject to and without waving MGA's objections, MGA will produce non-privileged documents responsive to this request, if any exist, that were created prior to January 1, 2001 that refer or relate to the use (or considered, proposed or potential use) of the term "Jade" in connection with any MGA doll, product or other matter, to the extent any such documents are within MGA's and can be located following a reasonably diligent search.


EXHIBIT 5 , PAGE 33

Dylan Proctor
Scott Kidman
January 9, 2008
Page 4

**Requests Nos. 32-41: Documents Relating to Sandra Bilotto**

As we also have discussed, documents responsive to these requests relating to Sandra Bilotto and, in particular, payments to and invoices from Ms. Bilotto have already been produced in response to prior, duplicative requests. *See* MGA 0878994-MGA 0879007. Several of the requests relating to Ms. Bilotto seek documents concerning MGA's knowledge of and Ms. Bilotto's work for Mattel. We asked you to inform us whether Ms. Bilotto actually performed any work for Mattel to understand the relevance of these requests. You could not tell us whether Ms. Bilotto worked for Mattel. Please provide us with this information so that we may better understand how these requests seek documents that are relevant to the claims and defenses in this action.

During the meet and confer on January 7, 2008, we raised the fact that, contrary to your letter, Requests Nos. 32-41 are not narrowly tailored to Ms. Bilotto's work on Prayer Angels and are therefore needlessly burdensome on MGA. We invited you to narrow these requests to Ms. Bilotto's work on Prayer Angels. You refused any such limitation. MGA will not produce documents in response to these overly broad requests as stated. Although it has already produced documents that are responsive to these requests in connection with its responses to prior duplicative requests, MGA will produce documents in response to Requests Nos. 32-34, 36, 38, 40 as follows (to the extent that additional documents can be found following a reasonably diligent search):

Request No. 35: Subject to its objections, MGA will produce non-privileged documents in its possession, custody or control, if any, that it is able to locate following a reasonably diligent search that refer or relate to work or services provided by Sandra Bilotto on Prayer Angels to MGA prior to January 1, 2001.

Request No. 37: Subject to its objections, MGA will produce non-privileged tangible items provided by Sandra Bilotto to MGA prior to January 1, 2001, relating to Prayer Angels, including head sculpts, prototypes and models in its possession, custody or control, if any, that it is able to locate following a reasonably diligent search.

Request No. 39: Subject to its objections, MGA will produce non-privileged documents in its possession, custody or control, if any, that it is able to locate following a reasonably diligent search that refer or relate payments made to Sandra Bilotto for work on Prayer Angels prior to January 1, 2001.

Request No. 41: Subject to its objections, MGA will produce non-privileged documents in its possession, custody or control, if any, that it is able to locate following a reasonably diligent search that refer or relate, to communications between Isaac Larian and Sandra Bilotto prior to January 1, 2001 that refer and relate to Prayer Angels.

EXHIBIT _5_ , PAGE_332_

Dylan Proctor
Scott Kidman
January 9, 2008
Page 5

We understand that Requests Nos. 36, 38 and 41 relate to issues that will be addressed in Phase II of the trial in this action. As you know, at the hearing held before Judge Larson on Monday, January 7, 2008, Tom Nolan proposed that Phase II discovery be stayed to permit the parties to complete Phase I discovery and preserve the current trial schedule. Judge Larson agreed to consider that proposal. As we discussed during our meet and confers, we believe that it is inefficient to expend the parties' efforts on Phase II discovery at this time, particularly in light of the fact that only three weeks remain to the Phase I cutoff. MGA will not produce documents in response to Requests Nos. 36, 38, and 41 (or Requests 32-35, 37 and 39-40 to the extent those requests seek documents related to Phase II issues) at this time in order to permit Judge Larson to consider our suggestion that Phase II discovery should be deferred to permit the parties to complete Phase I discovery.

**Requests 42, 76, and 77: Documents Relating to Paula Garcia**

As we discussed during the meet and confer with Mr. Kidman, Request No. 42[4] is overbroad and completely untethered to the issues in the present litigation. In particular, as we also discussed, due to Ms. Garcia's position at MGA, this request conceivably calls for virtually every communication between Mr. Larian and Ms. Garcia since the inception of the Bratz product to today. In addition, MGA has produced over 3.4 million pages of documents in this case, including communications sought by this request. If there are specific communications that you contend have not been produced, please let us know.

You refused to limit Request No. 42 in any way. Accordingly, in light of the foregoing and the fact that MGA has already produced documents responsive to this request, MGA will not produce additional documents in response to Request No. 42.

Requests Nos. 76 and 77 seek all payments by MGA to Ms. Garcia prior to January 1, 2002 and all payments, including bonuses and incentive payments by MGA to Ms. Garcia without limitation, respectively. We proposed limiting these requests to payments to Ms. Garcia associated with Bratz, which you rejected.

---

[4] Request No. 42 seeks "All COMMUNICATIONS between Isaac Larian and Paula Garcia, including without limitation all such COMMUNICATIONS that REFER OR RELATE TO MATTEL, and MATTEL doll or product, BRYANT or BRATZ." During the meet and confer you stated that Mattel would amend the request to delete the words "including without limitation all such communications."

EXHIBIT 5 , PAGE 333

Dylan Proctor
Scott Kidman
January 9, 2008
Page 6

**Requests 43-54: Documents relating to Scooter Samantha; Requests 56-66, 67-72: Documents relating to Space Babes; and Requests 67-68, and 73: Documents relating to Scott Reyes**

We understand that Requests Nos. 43-55 (Scooter Samantha), 56-67 and 69-72 (Space Babes);[5] 68, 73-75 (Scot Reyes), seek documents relating to Phase II issues. As discussed above, we believe it is inefficient to expend the parties' efforts on Phase II discovery at this time, particularly in light of the fact that only three weeks remain to the Phase I cutoff. Judge Larson is considering our suggestion that Phase II discovery should be deferred until after Phase I discovery is complete. Accordingly, MGA will not produce documents in response to these requests at this time in order to permit Judge Larson to consider our suggestion that Phase II discovery should be deferred to permit the parties to complete Phase I discovery.

**Request 78-88: Personnel and vendor files**

Requests Nos. 78-86 seek personnel and vendor files for the following: Maureen Mullen (née Chianese), Scot Reyes, Sandra Bilotto, Steve Linker, Veronica Marlow, Peter Marlow, Wendy Ragsdale, Billy Ragsdale and Sarah Halpern. As I told you during our conferences, MGA may have already produced some documents from these files in response to other more narrowly tailored requests. Nevertheless, subject to and without waiving its objections, MGA will produce non-privileged documents from the identified personal and vendor files that refer or relate to work or services provided by named individuals on Bratz prior to January 1, 2001, if any, in its possession, custody or control, that it is able to locate following a reasonably diligent search.

With respect to Request Nos. 87, 88 (and to the extent Requests Nos. 78-86 seek the same documents or information), these requests seek the personnel and vendor files for 114 persons that Mattel claim have performed work for both MGA and Mattel. We understand these requests to seek documents relating to Phase II issues. Accordingly, MGA will not produce documents in response to these requests at this time in order to permit Judge Larson to consider our suggestion that Phase II discovery should be deferred to permit the parties to complete Phase I discovery.

Please feel free to call me if you have any questions or would like to discuss these matters further.

Very truly yours,

Andrew C. Temkin

---

[5] During the meet and confer we explained that the "Space Babes" product was not released to the market.

EXHIBIT 5 , PAGE 334

Exhibit 6

Calendared)
RECEIVED

NOV 16 2007

1  THOMAS J. NOLAN (Bar No. 066992)
   HARRIET S. POSNER (Bar. No. 116097)
2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue
3  Los Angeles, California 90071-3144
   Telephone:  (213) 687-5000
4  Facsimile:   (213) 687-5600
   E-mail:   tnolan@skadden.com
5             hposner@skadden.com

6  RAOUL D. KENNEDY (Bar No.  40892)
   TIMOTHY A. MILLER (Bar No. 154744)
7  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   4 Embarcadero Center, 38th Floor
8  San Francisco, CA  94111-5974
   Telephone:  (415) 984-6400
9  Facsimile:   (415) 984-2698
   Email:    rkennedy@skadden.com
10            tmiller@skadden.com

11 AMY S. PARK (Bar No. 208204)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
12 525 University Avenue
   Palo Alto, CA  94301
13 Telephone:  (650) 470-4500
   Facsimile:   (650) 470-4570
14 Email:    apark@skadden.com

15 Attorneys for Counter-Defendants,
   MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
16 (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

17          UNITED STATES DISTRICT COURT

18          CENTRAL DISTRICT OF CALIFORNIA

19              EASTERN DIVISION

20 CARTER BRYANT, an individual      )  CASE NO. CV 04-9049 SGL (RNBx)
                                     )
21          Plaintiff,               )  Consolidated with Case No. 04-9059
                                     )  and Case No. 05-2727
22      v.                           )
                                     )  **MGA'S SIXTH SET OF**
23 MATTEL, INC., a Delaware          )  **REQUESTS FOR THE**
   corporation                       )  **PRODUCTION OF**
24                                   )  **DOCUMENTS AND THINGS**
            Defendant.               )  **IN CASE NO. 05-2727**
25                                   )
                                     )
26                                   )  Honorable Stephen G. Larson
                                     )  Courtroom 1
27 _____)

28

EXHIBIT ___6__, PAGE 335

11-16

| | |
|---|---|
| 1 | |
| 2 | Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. ) ) ) ) ) ) |

Discovery Cut-Off:  March 3, 2008

**PROPOUNDING PARTY:**      MGA ENTERTAINMENT, INC.

**RESPONDING PARTY:**      MATTEL, INC.

**SET NUMBER:**      SIX

**NOs.:**      540 - 571

EXHIBIT 6 , PAGE 336

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiff MGA Entertainment, Inc. ("MGA") requests that defendant Mattel, Inc. ("Mattel") produce all DOCUMENTS and tangible things described, in accordance with the Definitions and Instructions set forth below, at 9:00 a.m. on December 16, 2007, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 300 South Grand Avenue, Los Angeles, California 90071.

## DEFINITIONS

As used in these Requests:

1.      "BARBIE" means and refers to each image, character, logo, doll, toy, styling head, plush toy, play set, accessory, product, packaging or any other thing that is or has ever been manufactured, marketed or sold by YOU, or others under licensed by YOU, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name "Barbie."

2.      "BRATZ" means and refers to each image, character, logo, doll, fashion doll, plush toy, styling head, toy, accessory, product, packaging, theme, or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license, as part of a line of goods or merchandise commonly known as, or sold and marketed under the "Bratz" trademark or trade dress.

3.      "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, and any other person acting on his behalf, pursuant to his authority or subject to his control.

4.      "COMMUNICATION[S]" means any transmission of information from one person or entity to another, including, without limitation, by personal meeting, conversation, letter, telephone, facsimile or electronic mail. Each request that encompasses information relating in any way to communications to, from or within a

**EXHIBIT 6 , PAGE 337**

1 business or corporate entity is hereby designated to mean, and should be construed to

2 include, all communications by and between representatives, employees, agents or

3 servants of the business or corporate entity.

4      5.     "CONFLICT OF INTEREST QUESTIONNAIRE" shall mean any form

5 of employment agreement concerning, *inter alia*, relations, if any, between Mattel's

6 employees, suppliers, and/or competition, whether known by the title "Conflict of

7 Interest Questionnaire" or any other title, including without limitation the form of

8 Conflict of Interest Questionnaire entitled "Conflict of Interest Questionnaire"

9 executed by BRYANT on or about January 4, 1999.

10      6.     "DOCUMENT[S]" incorporates the full meaning of Federal Rule of

11 Civil Procedure 34, and shall be construed in the broadest sense to mean any and all

12 writings, tangible things and property, of any kind, that are now or that have been in

13 YOUR actual or constructive possession, custody or control, including, but not

14 limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed,

15 punched, copied, recorded, transcribed, graphic or photographic matter of any kind

16 or nature, in, through, or from which information may be embodied, translated,

17 conveyed or stored, whether an original, a draft or copy, however produced or

18 reproduced, whether sent or received or neither, including, but not limited to, notes,

19 memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports,

20 inter- and intra-office COMMUNICATIONS, work papers, work sheets, work

21 records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets,

22 estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders,

23 telephone records, telegrams, telexes, literature, invoices, contracts, purchase orders,

24 estimates, recordings, transcriptions of recordings, records, books, pamphlets,

25 periodicals, publications, papers, tapes, DVDs, video CDs, video, audio and digital

26 recordings, television commercials, story boards, website or other spot

27 advertisements, movies, movie trailers, prototypes, products, diaries, calendars,

28

EXHIBIT 4 , PAGE 338

1  charts, drawings, sketches, messages, photographs and data contained in or

2  accessible through any electronic data processing system, including, but not limited

3  to, computer databases, data sheets, data processing cards, computer files and tapes,

4  computer disks, CD-ROMs, computer metadata, microfilm, microfiche, electronic

5  mail, website and web pages and transcriptions thereof and all other

6  memorializations of any conversations, meetings and conference, by telephone or

7  otherwise.  The term DOCUMENT also means every copy of a DOCUMENT, where

8  such copy is not an identical duplicate of the original, whether because of deletions,

9  underlinings, showing of blind copies, initialing, signatures, receipt stamps,

10  comments, notations, differences in stationery or any other difference or

11  modification of any kind.

12       7.  "EMPLOYEE INVENTIONS AGREEMENT" shall mean any form of

13  Mattel employment agreement concerning, *inter alia*, (i) ownership of inventions,

14  and (ii)(a) trade secrets and/or (iii) conflicts, whether known by the title "Employee

15  Confidential Information and Inventions Agreement" or any other title, including

16  without limitation the form of Employee Inventions Agreement entitled "Employee

17  Confidential Information and Inventions Agreement" executed by BRYANT on or

18  about January 4, 1999.

19       8.  "MATTEL," "YOU," or "YOUR" means the party Mattel, Inc. and any

20  of its past or present officers, directors, agents, employees, representatives,

21  consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-

22  interest, entities and persons acting in joint venture or partnership relationships with

23  YOU and any others acting on YOUR behalf, pursuant to YOUR authority or subject

24  to YOUR control.

25       9.  "MGA" means MGA Entertainment, Inc. and any of its past or present

26  officers, directors, agents, employees, representatives, consultants, attorneys, parents,

27  subsidiaries, divisions, affiliates, predecessors-in-interest, entities and persons acting

28

EXHIBIT 6 , PAGE 339

1  in joint venture or partnership relationships with MGA and any others acting on

2  MGA's behalf, pursuant to its authority or subject to its control.

3      10.   "MY SCENE" means and refers to each image, character, logo, doll,

4  fashion doll, toy, styling head, plush toy, play set, accessory, product, packaging or

5  any other thing that is or has ever been manufactured, marketed or sold by YOU, or

6  others under licensed by YOU, as part of a line of goods or merchandise commonly

7  known as, or sold and marketed under the name "My Scene."

8      11.   "MY SCENE DOLL" means any fashion doll that is or has ever been

9  distributed, marketed, sold or offered for sale under the name "My Scene" or as part

10  of the "My Scene" line, including separate themes.

11      12.   "REFERRING OR RELATING TO" should be construed in the

12  broadest possible sense to mean concerning, consisting of, referring to, relating to,

13  describing, discussing, constituting, evidencing, containing, reflecting, mentioning,

14  pertaining to, citing, summarizing, analyzing or bearing any logical or factual

15  connection with the matter discussed.

16

17                        **INSTRUCTIONS**

18      1.   YOU are instructed to produce all non-privileged DOCUMENTS in

19  YOUR possession, custody or control.  A DOCUMENT is in YOUR "possession,

20  custody, or control" if it is in YOUR physical possession, or if, as a practical matter,

21  YOU have the ability, upon request, to obtain possession of the DOCUMENT or a

22  copy thereof from another person or entity who has physical possession of the

23  DOCUMENT.

24      2.   YOU are instructed to produce all non-privileged DOCUMENTS

25  responsive to these Requests to the extent YOU have not previously produced them

26  to MGA.

27

28

EXHIBIT 6 , PAGE 340

1    3.    If any DOCUMENT or category of DOCUMENTS is not produced in

2  full, please state with particularity the reason or reasons it is not being produced in

3  full.

4    4.    Each DOCUMENT is to be produced as it is kept in the usual course of

5  business, including all file folders, binders, notebooks, and other devices by which

6  such DOCUMENTS may be organized, separated, or identified.

7    5.    Each DOCUMENT maintained or stored electronically in native,

8  electronic format is to be produced with all relevant metadata intact and in an

9  appropriate and useable electronic manner.

10    6.    Unless otherwise noted, these Requests seek DOCUMENTS from

11  January 1, 1998, to the present.

12    7.    These Requests impose a continuing obligation subsequent to your

13  initial production to the full extent provided for in Rule 26(e) of the Federal Rules of

14  Civil Procedure.

15

16                        **REQUESTS FOR PRODUCTION**

17  <u>**REQUEST NO. 540:**</u>

18    Each of MATTEL's Brand Directional Outlines.

19  <u>**REQUEST NO. 541:**</u>

20    Each version of the EMPLOYEE INVENTIONS AGREEMENT adopted

21  and/or used by or on behalf of MATTEL, including specifically the version

22  identified by Lissa Freed at her deposition, pages 56-59, implemented by MATTEL

23  according to her testimony during the years 2004-2006.

24  <u>**REQUEST NO. 542**</u>

25    Each version of MATTEL's "Proprietary Information Checkout" form, and/or

26  each version of any similar forms used for a comparable purpose in connection with

27

28                                EXHIBIT _6_ , PAGE 241

1  employee exit processing, whether known by the name "Proprietary Information

2  Checkout" form or any other name.

3  **REQUEST NO. 543:**

4      All DOCUMENTS concerning each instance in which any provision of an

5  EMPLOYEE INVENTIONS AGREEMENT was breached or alleged to be breached

6  by an employee, independent contractor, or any other person with whom MATTEL

7  had entered into an EMPLOYEE INVENTIONS AGREEMENT, including but not

8  limited to employee personnel files to the extent not protected by applicable federal

9  or state privacy laws; letters, e-mails, or other forms of correspondence; and

10  DOCUMENTS sufficient to evidence litigations.

11  **REQUEST NO. 544:**

12      Each version of the CONFLICT OF INTEREST QUESTIONNAIRE adopted

13  and/or used by or on behalf of MATTEL.

14  **REQUEST NO. 545:**

15      Each DOCUMENT evidencing a disclosure by a MATTEL employee of pre-

16  employment inventions disclosed to MATTEL in connection with the employee's

17  execution of MATTEL's CONFLICT OF INTEREST QUESTIONNAIRE.

18  **REQUEST NO. 546:**

19      All DOCUMENTS concerning each instance in which any provision of a

20  CONFLICT OF INTEREST QUESTIONNAIRE was breached or alleged to be

21  breached by an employee, independent contractor, or any other person with whom

22  MATTEL had entered into a CONFLICT OF INTEREST QUESTIONNAIRE,

23  including but not limited to employee personnel files to the extent not protected by

24  applicable federal or state privacy laws; letters, e-mails, or other forms of

25  correspondence; and DOCUMENTS sufficient to evidence litigations.

26

27  EXHIBIT 6 , PAGE 342

28

**REQUEST NO. 547:**

All DOCUMENTS evidencing a MATTEL reminder COMMUNICATION to MATTEL employees and/or independent contractors relating to their obligations under any of the EMPLOYEE INVENTIONS AGREEMENT, CONFLICT OF INTEREST QUESTIONNAIRE, and/or MATTEL's policy concerning conflict(s) of interest.

**REQUEST NO. 548:**

DOCUMENTS sufficient to evidence each complaint, tip, or other COMMUNICATION, whether oral or written, received by MATTEL that alleged a breach and/or violation of any of the EMPLOYEE INVENTIONS AGREEMENT, the CONFLICT OF INTEREST QUESTIONNAIRE, and/or MATTEL's policies concerning conflict(s) of interest.

**REQUEST NO. 549:**

Each "brand brief," "creative brief," or other similar DOCUMENT concerning the advertising strategy for MATTEL's "BARBIE" products, including but not limited to "BARBIE" dolls.

**REQUEST NO. 550:**

Each "brand brief," "creative brief," or other similar DOCUMENT concerning the advertising strategy for MATTEL's "MY SCENE" products, including but not limited to "MY SCENE" DOLLS.

**REQUEST NO. 551:**

Each report, study, presentation, memorandum, or other DOCUMENT that analyzed the effectiveness of any television commercial or any advertising campaign for MATTEL's "BARBIE" products, including but not limited to "BARBIE" dolls.

**REQUEST NO. 552:**

Each report, study, presentation, memorandum, or other DOCUMENT that analyzed the effectiveness of any television commercial or any advertising campaign

EXHIBIT 6 , PAGE 343

1 | for MATTEL's "MY SCENE" products, including but not limited to "MY SCENE"

2 | DOLLS.

3 | **REQUEST NO. 553:**

4 | DOCUMENTS sufficient to evidence each of MATTEL's policies, procedures,

5 | rules, or strategies, whether written or oral, concerning the number and/or types of

6 | products perceived as being in actual or potential competition with MATTEL's

7 | "BARBIE" dolls that MATTEL would market, sell, offer for sale, or otherwise

8 | introduce to consumers.

9 | **REQUEST NO. 554:**

10 | To the extent not already produced in response to the foregoing Requests, all

11 | DOCUMENTS and things identified in response to MGA's Second Set of

12 | Interrogatories.

13 | **REQUEST NO. 555:**

14 | Each report of consumer or customer research relating to the market for

15 | fashion dolls and/or any specific fashion doll, whether marketed by MATTEL or

16 | otherwise.

17 | **REQUEST NO. 556:**

18 | All DOCUMENTS relating to each "stopper" product introduction launched

19 | by MATTEL in response to the launch of a MATTEL competitor's product, and all

20 | DOCUMENTS assessing the success of MATTEL's "stopper" product.

21 | **REQUEST NO. 557:**

22 | DOCUMENTS sufficient to evidence each assessment by or for MATTEL of

23 | the BRATZ line of products.

24 | **REQUEST NO. 558:**

25 | All DOCUMENTS relating to each disclosure, whether written or oral, made

26 | to MATTEL by a MATTEL employee or independent contractor of "Proprietary

27 | Subject Matter made or conceived during the term of [an employee's or independent

28 |

EXHIBIT ᒪ , PAGE 34

1 | contractor's] employment" as this phrase is used in MATTEL's "Proprietary
2 | Information Checkout" form.

**REQUEST NO. 559:**

All DOCUMENTS relating to each COMMUNICATION, whether written or oral, made to MATTEL by a MATTEL employee or independent contractor of "inventions… conceived or reduced to practice by [an employee or independent contractor] (along or jointly by others) at any time during [an employee's or independent contractor's] employment by Mattel" as this phrase is used in the Inventions Agreement.

**REQUEST NO. 560:**

DOCUMENTS sufficient to evidence the identify of the MATTEL officers, officials, or other designees to whom disclosures were made or were designated to be made by MATTEL employees and/or independent contractors of "Proprietary Subject Matter made or conceived during the term of [an employee's or independent contractor's] employment" as this phrase is used in MATTEL's "Proprietary Information Checkout" form.

**REQUEST NO. 561:**

DOCUMENTS sufficient to evidence each of MATTEL's policies, procedures, or processes, whether written or oral, concerning the disclosure by MATTEL employees and/or independent contractors of "Proprietary Subject Matter made or conceived during the term of [an employee's or independent contractor's] employment" as this phrase is used in MATTEL's "Proprietary Information Checkout" form.

**REQUEST NO. 562:**

DOCUMENTS sufficient to evidence each of MATTEL's policies, procedures, or processes, whether written or oral, concerning the disclosure by MATTEL employees and/or independent contractors of "inventions . . . conceived or reduced to

EXHIBIT ⑥ , PAGE 345

1  practice by [an employee or independent contractor] (along or jointly by others) at

2  any time during [an employee's or independent contractor's] employment by

3  [MATTEL]" as this phrase is used in the Inventions Agreement.

4  **REQUEST NO. 563:**

5      DOCUMENTS sufficient to show all records of sales figures, revenues and

6  profits pertaining to BARBIE from January 1, 1990 to the present.

7  **REQUEST NO. 564:**

8      All DOCUMENTS REFERRING OR RELATING TO YOUR profits,

9  including, but not limited to, gross profits and gross margins, from the sale of each

10  MY SCENE DOLL sold by YOU or YOUR licensees.

11  **REQUEST NO. 565:**

12      YOUR general ledgers from January 1, 1995 through the present.

13  **REQUEST NO. 566:**

14      All DOCUMENTS REFERRING OR RELATING TO business plans,

15  forecasts, budgets and projects prepared by YOU in connection with each of YOUR

16  products, including but not limited to BARBIE and MY SCENE.

17  **REQUEST NO. 567:**

18      All DOCUMENTS REFERRING OR RELATING TO market research and

19  competitive studies and analyses prepared or conducted by YOU with respect to the

20  fashion doll market.

21  **REQUEST NO. 568:**

22      All DOCUMENTS REFERRING OR RELATING TO any position taken by

23  YOU in any litigation, arbitration or other legal proceeding that any damages owed

24  by YOU for copyright infringement should be apportioned.

25  **REQUEST NO. 569:**

26      All DOCUMENTS REFERRING OR RELATING TO any position taken by

27  YOU in any litigation, arbitration or other legal proceeding relating to the estimated

28

EXHIBIT 6 , PAGE 346

1   value of original drawings, designs or ideas for a product, including, but not limited

2   to, such determinations expressed as a fraction or percentage of the overall value of

3   that product and other related products based on those original drawings, designs or

4   ideas.

5   **REQUEST NO. 570:**

6        All DOCUMENTS REFERRING OR RELATING TO any research or

7   investigation by YOU to determine the estimated value of original drawings, designs

8   or ideas for any toy, including, but not limited to, fashion dolls owned or licensed by

9   MATTEL, including, but not limited to, such determinations expressed as a fraction

10   or percentage of the overall value of all products based on those original drawings,

11   designs or ideas.

12   **REQUEST NO. 571:**

13        All DOCUMENTS REFERRING OR RELATING TO any decision made by

14   YOU to sell, grant or license to any PERSON the rights to any toy design or idea,

15   including, but not limited to fashion dolls, that YOU did not intend to exploit or

16   develop.

17   DATED:    November 16, 2007

18

19                     SKADDEN, ARPS, SLATE, MEAGHER &

20                     FLOM, LLP

21

22                     *Thomas G. Nolan / PHN*

23                     Thomas J. Nolan

24

25                     Attorneys for Counter-Defendants, MGA
                        ENTERTAINMENT, INC., ISAAC LARIAN,

26                     MGA ENTERTAINMENT (HK) LIMITED,
                        AND MGAE de MEXICO S.R.L. de C.V.

27                     EXHIBIT _6_, PAGE _347_

28

---

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, 34th Floor, Los Angeles, CA 90071.

On **November 16, 2007**, I served the foregoing document described as:

## MGA's SIXTH SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS IN CASE NO. 05-2727

on the interested parties in this action addressed as follows:

### SEE ATTACHED SERVICE LIST

[X]   (BY PERSONAL SERVICE)   ☐   By personally delivering copies to the person served. (FEDERAL) (As Noted.)

[X]   I caused such documents to be hand delivered to the office of the addressee. (FEDERAL) (As Noted.)

[X]   BY FEDERAL EXPRESS) I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with Federal Express and the fact that the correspondence would be deposited with Federal Express that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices. (As Noted.)

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on November 16, 2007 at Los Angeles, California.

Becky S. Isomoto
PRINT NAME                                    SIGNATURE

EXHIBIT 6, PAGE 348

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.
Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000
(213) 443-3100 (Fax)

*Attorneys for Mattel, Inc.*
*(Personal Service)*

Mark E. Overland
Alexander H. Cote
David C. Scheper
Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
Los Angeles, CA  90071
(213) 613-4655
(213) 613-4656 (Fax)
*Attorneys for Carlos Gustavo Machado*
*Gomez*
*(Federal Express)*

John W. Keker, Esq.
Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415)391-5400
(415) 397-7188 (Fax)

*Attorneys for Carter Bryant*
*(Federal Express)*

EXHIBIT ___, PAGE 349

Exhibit 7

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

DIRECT DIAL
(21 3) 687-5368
DIRECT FAX
(21 3) 621-5368
EMAIL ADDRESS
RHERRING@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 3, 2008

**VIA FACSIMILE & U.S. MAIL**

Mr. Jon D. Corey
Mr. B. Dylan Proctor
Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP
865 South Figueroa St., 10th Floor
Los Angeles, CA 90017

RE:     *Mattel v. Bryant*

Gentlemen:

We are writing to request a meet and confer session under paragraph 5 of the Discovery Master stipulation to discuss Mattel's improper objections and responses to MGA's Sixth Set for Production of Documents.

**Improper General Objections**

Mattel asserts fifteen boilerplate "general objections." Each of these objections lacks specificity and is void. Please confirm that Mattel is not withholding any documents or curtailing its search for responsive documents based on any General Objection.

General Objection 1:

Mattel objects to every request "to the extent" they seek to impose obligations beyond those permitted by the Federal Rules of Civil Procedure. Mattel, however, fails to identify any request that supposedly violates the Federal Rules. This objection lacks specificity and is without merit.

General Objection 2:

Mattel objects to every request "to the extent" they seek information protected by the attorney client privilege, the attorney work product doctrine, the right of privacy or "any other applicable law privilege, immunity, doctrine or other ground of privilege." Documents allegedly protected by the attorney client privilege must be identified appropriately on a log. Mattel does not appear to have complied with this

EXHIBIT _X_, PAGE_350_

Quinn, Emanuel, etc.
January 3, 2008
Page 2

requirement, as the last privilege log we have from you is dated in September 2007.
Your objection on privacy grounds is without merit. In a letter dated December 13,
2007, Mr. Zeller stated that the "Discovery Master has ruled that the Protective
Order is sufficient to alleviate any privacy concerns...."

General Objections 3 and 4:

Mattel's objects to every request "to the extent" they are overly broad, burdensome
or seek irrelevant information. These generic objections lack any specificity and
cannot justify Mattel withholding or failing to search for responsive documents.

General Objection 5, 7 and 8:

Mattel's objections that the requests seek documents available from third parties or
publicly available sources has no merit. Mattel cannot refuse to search for and
produce responsive documents within its possession, custody or control and require
MGA to seek these documents from other sources. Under Federal Rule of Civil
Procedure 34, Mattel must produce all responsive documents with in its possession,
custody or control.

General Objection 9:

Mattel cannot refuse to produce documents based on "trade secret" or
"confidentiality" concerns. As stated in Mr. Zeller's December 13, 2007, the Court
has entered a Protective Order in this case that allows parties to designate
information as confidential. Moreover, Mattel has asserted a purported trade secrets
claim in this case and must produce all documents relating to that claim or MGA's
defenses to that claim.

General Objection 10:

Mattel objects to several definitions included in MGA's requests as supposedly being
overbroad, vague or ambiguous. Mattel, however, fails to identify how these
definitions are vague or overbroad. These types of generic, nonspecific objections
are improper. Please confirm you are not withholding, or limiting your search for,
responsive documents based on these improper objections.

General Objection 11:

Mattel objects to every request that seeks documents referring or relating to a given
topic as supposedly being unduly burdensome. Mattel, however, fails to identify any
specific burden associated with any specific request. Again, these types of
nonspecific objections are inappropriate. We trust that Mattel is not withholding or
failing to search for responsive documents based on this generic objection.

EXHIBIT 7 , PAGE 351

Quinn, Emanuel, etc.
January 3, 2008
Page 3

Moreover, Mattel has served virtually identical requests seek all documents relating or referring to a specific topic, thus calling into question whether Mattel's objections are being asserted in good faith.

General Objection 12:

Mattel objects to every request "to the extent" it seeks information about matters not within the Court's subject matter jurisdiction. Mattel, however, fails to identify any information or matter that it claims is not within the Court's jurisdiction. This type of nonspecific, generic objection is improper. The objection also in incomprehensible. The Court has subject matter jurisdiction over this case and personal jurisdiction over Mattel. Please confirm that Mattel is not withhold or failing to search for documents based on this objection.

**Improper Specific Objections**

Request No. 540:

This request seeks each of Mattel's Brand Directional Outlines. Mattel refuses to produce any responsive documents, instead asserting several boilerplate objections that ignore the language of the requests. For example, Mattel objects that the request is unlimited as to time. This objection is frivolous in light of Instruction No. 6, which limits the relevant time period to January 1, 1998 to the present, unless otherwise stated. Mattel also objects that this request is vague and ambiguous. This objection also is frivolous in light of Mattel's production of several documents referring to its "Brand Directional Outlines" or "BDOs." These documents appear to contain critical information regarding Mattel's marketing of infringing and competitive products – information that goes directly to several issues in this case, including Phase I damages issues. Please produce all responsive documents immediately.

Request Nos. 541, 542 and 544:

These requests seek each version of Mattel's Employee Inventions Agreement, Conflict of Interest Questionnaire, and Proprietary Information Checkout Form. Mattel asserts several boilerplate objections, but responds by stated that it already has produced each version of these documents. Please confirm that Mattel is not relying on any of its objections in limiting it search for or production of responsive documents.

Requests Nos. 543, 545, 546, 547, 548, 558, 559 and 560:

These requests seek documents regarding Mattel's interpretations of and efforts to enforce the Employee Inventions Agreement and Conflict of Interest Questionnaire.

EXHIBIT 7 , PAGE 52

Quinn, Emanuel, etc.
January 3, 2008
Page 4

Mattel asserts several boilerplate objections and refuses to produce any documents. Your breadth and "unlimited as to time" objections are frivolous as noted above. Your relevance and burden objection also are without merit. You fail to support your burden objections with any facts. The Employee Inventions Agreement and Conflict of Interest Questionnaire are form documents. Mattel's prior positions taken with respect to the meaning of and efforts to enforce these documents are directly relevant to interpreting these agreements in this case. *See Warner Bros., Inc. v. Curtis Management Group, Inc.*, 1995 WL 420043, at *12 (C.D. Cal. March 31, 1993) ("The evidence offered by Defendants at trial as to WB's understanding of the scope of its rights under similar agreements with other performers also proves that WB found itself bound by the time restrictions on its use of its performers' 'names and likenesses,' ignored the words 'or otherwise' as they related to 'acts, poses, plays and appearances,' and instructed its licensees accordingly."). Your reliance on the September 12, 2007 Order also is misplaced. These requests are different from those at issue in the September 12 Order, and the Discovery Master specially ordered Mattel to produce documents relating to positions previously taken with regard to the Employee Inventions Agreement and Conflict of Interest Questionnaire, thus confirming the validity of these requests.

Request Nos. 549, 550, 551, 552 and 553:

These requests seek Mattel's brand briefs and similar documents concerning Mattel's advertising and branding strategy for Barbie products and My Scene products. The requested documents are important to, among other issues, evaluating the damages and apportionment of damages Mattel is seeking in Phase I of this case. Mattel asserts several boilerplate objections and then refuses to produce any documents for Barbie products, but agrees to produce certain responsive documents relating to My Scene products. First, as to the My Scene products, please confirm that Mattel is not limiting its search or production based on its objections, which are improper as discussed above. Second, Mattel's response to Request No. 550, which concerns My Scene products, states that Mattel only is producing documents relating to the "My Scene products at issue." This response is inappropriate. Mattel does not specify which My Scene products it believes are "at issue." Mattel's discovery responses state that it is seeking damages from MGA in the form of lost sales and lost profits relating to products that compete with Bratz. Mattel's position seems to be that both Barbie and My Scene products compete with Bratz. We are entitled to test whether Mattel's alleged lost sales and profits relate to its own flawed advertising and branding strategies, rather than some alleged wrongdoing by MGA. For this same reason, documents relating to the advertising and branding strategy of Barbie products are relevant, as are documents relating to who Mattel perceives as the competition for Barbie products. Please produce all responsive documents immediately.

EXHIBIT 7 , PAGE 353

Quinn, Emanuel, etc.
January 3, 2008
Page 5

Request No. 554:

This request seeks all document identified in response to MGA's second set of interrogatories. Mattel states that it cannot respond because it has not yet responded to the interrogatories. Please provide a supplemental response confirming that all responsive documents will be produced as soon as Mattel provides its interrogatory responses.

Request Nos. 555, 556 and 567:

This request seeks documents regarding consumer or customer research relating to the market for fashion dolls and Mattel's strategy of using "stopper products" in response to the launch of competitive products, as referenced in several documents already produced in this case. These requests are directly relevant to assessing Mattel's claim for damages in this case, including the calculation of damages and the issue of apportionment. Mattel asserts the same set of boilerplate objections and then refuses to produce any responsive documents. As set forth above, these objections have no merit. The requested documents are directly relevant to, among other things, the damages issues that will be tried in Phase I of this case. Please produce all responsive documents immediately.

Request No. 557:

This request seeks documents sufficient to evidence each assessment by or for Mattel of the Bratz line of products. Like the requests above, this requests is directly relevant to the damages issues to be tried in Phase I of this case, including apportionment. Mattel already has produced documents showing it conducted research and other assessments regarding the reasons for the success of the Bratz line of products. Mattel cannot selectively produce only those documents that it believes are helpful and refuse to produce other similar materials that may contradict Mattel's position. Mattel needs to produce all similar studies or assessments of the Bratz line of products. Please produce all responsive documents immediately.

Request Nos. 561 and 562:

These requests seek documents sufficient to evidence Mattel's policies and procedures concerning certain terms in the Proprietary Information Checkout form and the Mattel Inventions Agreement. Mattel asserts several boilerplate objections, but states that "Mattel has already produced documents responsive to this Request." This response is improper. Mattel cannot selectively produce which responsive documents it wants to produce; it has an obligation to produce all responsive documents. Please do so immediately.

EXHIBIT 7 , PAGE 354

Quinn, Emanuel, etc.
January 3, 2008
Page 6


Request Nos. 563, 564, 565 and 566:

These requests seek various financial information relating to Mattel's sale, expenses and profits. Other than documents relating to My Scene profits, Mattel has refused to produce responsive documents. This refusal is baseless. The requested documents are directly relevant to calculating damages in the Phase I trial, and Mattel has sought nearly identical information from MGA. Please produce all responsive documents immediately.

Request Nos. 568, 569, 570 and 571:

These requests seek documents relating to positions Mattel has taken in other litigation on damages issues similar to those at issue in this case, including apportionment, the valuation of original drawings, designs and ideas, and certain licensing issues. Mattel has asserted boilerplate objections and refused to produce any responsive documents. This refusal is improper. Positions Mattel has taken in previous litigation regarding the proper method of apportionment, the valuation of original drawings and designs, and licensing may undercut the positions Mattel is taking in this case and are therefore directly relevant to these damages issue. Moreover, Mattel has served similar requests on MGA seeking documents relating to other litigation. Please produce all responsive documents immediately.

If Mattel does not withdraw its improper objections and produce the documents requested, we will seek relief from the Discovery Master. We look forward to hearing from you.


Sincerely,

Robert J. Herrington

EXHIBIT 7 , PAGE 355

**Exhibit 8**

1   DALE M. CENDALI (admitted *pro hac vice*)
    DIANA M. TORRES (S.B. #162284)
2   JAMES P. JENAL (S.B. # 180190)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, CA  90071-2899
4   Telephone:   (213) 430-6000
    Facsimile:   (213) 430-6407
5   Email:       jjenal@omm.com

6   PATRICIA GLASER (S.B. #55668)
    CHRISTENSEN, GLASER, FINK,
7   JACOBS, WEIL & SHAPIRO, LLP
    10250 Constellation Boulevard, 19th Floor
8   Los Angeles, CA  90067
    Telephone:   (310) 553-3000
9   Facsimile:   (310) 557-9815

10  Attorneys for MGA Entertainment, Inc.

RECEIVED

FEB 2 1 2007

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>MATTEL, INC., a Delaware Corporation,<br><br>        Defendant.<br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v.<br>MATTEL, INC. | Case No.  CV 04-09049 SGL (RNBx)<br>(consolidated with CV 04-9059 & 05-2727)<br><br>**DISCOVERY MATTER**<br><br>**MGA ENTERTAINMENT, INC.'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY ANSWERS**<br><br>Hearing date:    March 5, 2007<br>Hearing time:    8:00 a.m. |

EXHIBIT 8 , PAGE 356

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................ 2

II.     FACTS AND PROCEDURAL BACKGROUND ........................... 3

III.    ARGUMENT ............................................................................. 10

    A.    Mattel's Motion Is Unnecessary And Should Be Denied With Respect To The Majority Of Documents Specifically Identified Therein ........................................................................... 10

    B.    Mattel's Motion With Respect To The Remaining Requests Should Be Denied Because They Seek Documents Not Relevant To This Litigation, Documents Covered By A Protective Order, Or Documents Of The Type Mattel Itself Has Refused To Produce ........................................................................... 16

    C.    Mattel Is Not Entitled To Information Concerning Bryant's Attorneys' Fees ................................................................... 24

    D.    Mattel Is Not Entitled To Irrelevant, One-Sided Discovery .............. 24

    E.    Mattel Is Not Entitled To Expert Discovery At This Time ................. 27

    F.    Mattel's Assertions That MGA Has Withheld Documents Until Mattel Receives Them From Other Sources And/Or Because Of "Evidence" Concerning The Timing Of The Creation And Development of "Bratz" Are Without Merit ................................ 28

    G.    Mattel's Motion To Compel Further Interrogatory Responses Should Be Denied As Moot .................................................... 31

    H.    If Sanctions Are Warranted, They Are Warranted Against Mattel ............................................................................... 32

IV.    CONCLUSION ......................................................................... 32

EXHIBIT ___, PAGE 357

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

# TABLE OF AUTHORITIES

**Page**

## CASES

Advanced Modular Sputtering, Inc. v. Superior Court,
132 Cal. App. 4th 826 (2d Dist. 2005)......................................... 20

Am. Heavy Moving & Rigging Co. v. Robb Techs., L.L.C.,
No. 2:04-CV-00933-JCM (GWF), 2006 U.S. Dist. LEXIS 51276,
(D. Nev. July 24, 2006).................................................... 22

Brown Bag Software v. Symantec Corp.,
960 F.2d 1465 (9th Cir.) ................................................. 22

Computer Economics, Inc. v. Gartner Group Inc., 50 F. Supp. 2d 980
(S.D. Cal. 1999) .......................................................... 19

Intersong-USA, Inc. v. CBS, Inc., 1 Fed. R. Serv. 3d 609 (S.D.N.Y.
1985) ..................................................................... 20

Vermont Microsystems, Inc. v. Autodesk, Inc., 88 F.3d 142 (2d Cir.
1996) ..................................................................... 19

## STATUTES

Cal. Civ. Code, § 3426.1(d) .............................................. 22

Fed. R. Civ. Proc. 26 ................................................ 21, 22

Fed. R. Civ. Proc. 33(b) ................................................. 31

Fed. R. Civ. Proc. 6(a) .................................................. 31

EXHIBIT __8__, PAGE __358__

- ii -

1  This memorandum of points and authorities is filed in support of MGA

2  Entertainment, Inc.'s ("MGA") Opposition to Mattel, Inc.'s ("Mattel") motion to

3  compel production of documents and interrogatory answers in the case originally

4  captioned *Mattel, Inc. v. Bryant*, Case No. CV 04-9059 SGL (RNBx).

5  **I.   INTRODUCTION**

6  Mattel's motion to compel is a disingenuous attempt to convince this Court

7  that MGA is withholding relevant documents and refusing to produce documents

8  until Mattel discovers the existence of such documents from other sources.  In

9  actuality, and contrary to Mattel's assertion, MGA long ago produced volumes of

10  documents responsive to Mattel's requests and, indeed, produced far more

11  documents of substance than has Mattel.[1]  In response to a letter from Mattel on

12  January 7, 2007, in which Mattel complained about documents produced in August

13  2004, May 2005, and September 2006, MGA agreed to address the vast majority of

14  the issues Mattel raises in this motion.  Before the date for MGA's response,

15  however, Mattel filed the instant motion to compel.  MGA continued its production

16  regardless and, as of the date of this opposition, will have produced virtually all, if

17  not all, of the documents at issue.

18  The real issues raised by Mattel's motion, however, are those about which

19  Mattel makes only passing reference: (1) whether Mattel is entitled to unfettered

20  access to all of MGA's financial records, regardless of whether they pertain to any

21

22  [1] Although Mattel claims to have produced some 60,000 pages of documents, it neglects
to mention that 32,000 pages of those documents were produced on January 5, 2007,
23  and further neglects to mention that almost all of those documents are copies of Mattel product
catalogues, incomprehensible and, by Mattel's own admission, incomplete phone records,
24  and single page photographs of apparently every Barbie doll Mattel has ever produced,
including "Shrek Barbie," "Queen of England Barbie," "Classical Goddess Barbie," and
25  catalogs of Barbie's from the 1960's.  Additionally, a large number of the documents in
Mattel's January 2007 production are duplicative of documents within the very same
26  production, and several images from the "My Scene," "DIVA STARZ," and "Little
Mommy" lines are recurrent with unsubstantial alteration.  (*See* Declaration of Antonio
27  De Anda ¶ 2).  Mattel has produced virtually no electronic mail or documents concerning
the origin and development of "My Scene," "DIVA STARZ," or "Flavas," the product
28  lines at issue in MGA's claims.  (*Id.* ¶ 3.)

EXHIBIT ___ 8 , PAGE 359        MGA'S OPPOSITION TO
~~MATTEL~~'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

product at issue in this lawsuit; (2) whether Mattel is entitled to unfettered access to MGA's design plans for yet-unreleased "Bratz" products; and (3) whether Mattel is entitled to compel the types of documents from MGA that Mattel itself has refused to produce, such as witness statements made in other legal proceedings and documents in the possession of indirect subsidiaries. MGA respectfully submits that the answer to each of those questions is no.

## II.   FACTS AND PROCEDURAL BACKGROUND

Over the past six weeks, Mattel has papered this Court with thousands of pages of one-sided, incomplete and inaccurate stories about the conduct of MGA and Carter Bryant, whether germane to the issue at hand or not. MGA and Bryant have tried not to burden the Special Master with the parties' differences on the merits or their differences on discovery disputes prior to the Special Master's appointment. Indeed, MGA recognizes that the case has changed substantially over the past few months. But, to convey fully the baselessness of Mattel's latest motion *and Mattel's true objective*, MGA must recount Mattel's prior conduct and the agreements that the parties reached before this calendar year, all of which Mattel now neglects to mention. As set forth more fully below, Mattel's motion is far more about obtaining access to MGA's financial information unrelated to the products at issue, plans for future product development, and other one-sided discovery, than it is about obtaining better copies of supposedly "illegible" documents and the laundry list of other issues Mattel raises in its motion.

In April 2004, three and a half years after Bryant left Mattel's employ, Mattel filed a vaguely worded, five count complaint against him, and him alone. Two months later, even though the name "MGA" appeared nowhere in its complaint, Mattel served MGA, its most threatening competitor, with an eight page subpoena for 21 categories of documents to be produced, ostensibly, in ten days, without even

EXHIBIT 8 , PAGE 360

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1    discussing a protective order.[2]  Notably, at that time, Mattel was finally waking up

2    to the fact that "Barbie," the doll that had acted as Mattel's tentpole for decades,

3    was no longer relevant to little girls[3] -- a fact that MGA had realized years before.

4         In response to Mattel's subpoena, MGA filed a motion to quash, which was

5    subsequently granted.  Magistrate Block found that Mattel's subpoena failed to

6    provide sufficient time for compliance and ordered Mattel to meet and confer with

7    MGA.[4]  The parties later met and conferred on the scope of production and agreed

8    that documents relating only to the original, or "first generation" "Bratz" dolls need

9    be produced.[5]  The parties then engaged in a mutual exchange of documents on

10   August 12, 2004.[6]  In the meantime, Bryant, a Missouri resident, removed the case

11   to federal court and Mattel (who routinely had five intellectual property lawyers

12   attend discovery hearings in state court) moved to remand, claiming that the case

13   was a simple employment case, not a copyright case, and that the federal court's

14   $75,000 jurisdictional minimum had not been met.[7]  Mattel's tactic succeeded, and

15   the case was remanded to state court on August 20, 2004.

16        Mattel's August 12, 2004, production was substantially lacking, however.

17   Although Bryant had asked for documents concerning his employment at Mattel,

18   including Mattel's records of his attendance, his email, his telephone calls, etc.,

19   Mattel refused to produce them.[8]  Bryant was subsequently forced to obtain a

20   protective order prohibiting Mattel from deposing him until after it had produced

21   the requested documents.[9]

22        That protective order, issued by the Hon. Gregory Alarcon in Los Angeles

23   _____

24   [2] See Declaration of Diana M. Torres ("Torres Decl.") filed concurrently, ¶ 2 & Exh. A.
     [3] See Declaration of Keith A. Jacoby ("Jacoby Decl.") in support of Bryant's Opposition
     to Mattel's Motion for Remand, dated December 22, 2004, ¶ 17 & Exh. 12.

25   [4] Torres Decl., ¶ 2 & Exh. B (Magistrate Block's Order, dated June 28, 2004).
     [5] Jacoby Decl. ¶ 12.

26   [6] Torres Decl. ¶ 3.

27   [7] Torres Decl. ¶ 4.
     [8] Id.

28   [9] Id.

EXHIBIT 8 , PAGE 36

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1   Superior Court, precipitated a watershed moment in Bryant's discovery from

2   Mattel.  In October 2004, Mattel produced over 400 previously undisclosed

3   documents.  First, on October 8, Mattel produced the "Toon Teens" drawings[10] and

4   photographs previously produced in August.  Three days later, Mattel produced an

5   exchange of correspondence and a cooperation agreement between Mattel and

6   Cityworld, the defendants in a lawsuit in Hong Kong filed by MGA, with whom

7   Mattel entered into an information sharing agreement and to whom Mattel provided

8   "Toon Teens" documents so that Cityworld could claim to the Hong Kong court

9   that "Bratz" originated with Mattel, not Bryant, and that therefore MGA does not

10  own and cannot enforce the rights to "Bratz."[11]  Two more days later, Mattel

---

[10] An article published July 16, 2003, in *The Wall Street Journal* ("WSJ") quoted an unnamed source inside Mattel for the assertion that Bryant copied "Bratz" from a project done by Mattel employee Lily Martinez:

> Inside Mattel, some are convinced the "Bratz" borrow liberally from a Mattel project that was scrapped at the testing stage in 1998.

Mattel had previously produced the drawings to Bryant's counsel in response to a specific verbal request for drawings and photographs of the project referenced in the WSJ article, but stated that the drawings and the project generally were *not* responsive to Bryant's document requests and, in fact, were unrelated to the case. (Jacoby Decl. ¶¶ 4-5 & Exh. 2.)  When forced to produce documents requested by Bryant pursuant to Judge Alarcon's order, however, Mattel produced the "Toon Teens" documents *without* the disingenuous assertion that the photographs and documents were not responsive to Bryant's requests and unrelated to the case. (Jacoby Decl. ¶¶ 7-8.)  Mattel's counsel then questioned Bryant extensively at deposition about "Toon Teens" and their supposed "substantial similarity" to "Bratz." (Jacoby Decl. ¶ 3, & Exh. 1.)  On October 26, 2004, during a Local Rule 37-2 conference arising from the fact that Mattel refused to produce a witness in response to Bryant's deposition notice, Bryant offered to withdraw its request for a witness on "Toon Teens"-related subjects if Mattel would stipulate that it was not contending that Bryant copied "Bratz" from "Toon Teens" and did not claim that the revenue stream from the sale of other Mattel doll products were wrongfully encroached upon by "Bratz," because "Bratz" was allegedly derivative of "Toon Teens." ***Mattel refused.*** (Jacoby Decl. ¶ 11.) In recent months, however, Mattel agreed not to pursue any claim that "Bratz" is similar to "Toon Teens," no doubt realizing that the child-like caricatures of "Toon Teens" bear so little resemblance to "Bratz" that it is inconceivable that its claim would prevail; and, of course, Mattel needed to take that position to defeat Bryant's declaratory relief claim of ownership and non-infringement. (Torres Decl. ¶ 10 & Exh. G (Order Granting Motions to Dismiss, dated July 18, 2006).)

[11] Pursuant to the cooperation agreement, which Mattel drafted, Mattel agreed to "provide to Cityworld copies of (i) Mattel's design drawings known as "Toon Teens" and (ii) photographs of "Toon Teens" prototypes. In return, Cityworld agreed to provide Mattel with documents, including "copies of all "Bratz" design drawings," "the contracts relating to 'Bratz,'" and the affirmation to which such documents were attached. (Jacoby Decl. ¶

EXHIBIT 8 - PAGE 362

1   produced the letter dated August 2002 addressed to Mattel CEO Robert Eckert, in

2   which the anonymous author alleges that Bryant stole the "Bratz" idea from Mattel.

3   Handwritten notes on that letter indicate (and subsequent deposition testimony

4   confirmed) that, at Mr. Eckert's suggestion, Mattel's Vice President of World Wide

5   Security investigated the allegations.[12]   (MGA and Bryant recently had to compel

6   Mattel to produce documents related to that investigation, which they have not yet

7   received.)

8        Until the case was remanded to state court in late August 2004 by the

9   Honorable Nora M. Manella, Mattel agreed to limit its discovery requests to only

10  "first generation" "Bratz" dolls in order to maintain the fiction that there was

11  perhaps less than $75,000 in controversy, and that it was not claiming copyright

12  infringement.[13]   On October 28 and 30, 2004, however, believing that the case was

13  safely ensconced in state court, Mattel informed Bryant it would no longer honor

14  that limitation but, instead, was proceeding with discovery concerning *all* "Bratz"

15  products, including those being developed today.[14]   Mattel's purported rationale --

16  "damages."[15]   Mattel's overt efforts to seek far more than $75,000 from Bryant

17  landed it back in federal court, and this time Judge Manella denied remand.[16]

18       Mattel nonetheless continued to make every effort to avoid facing the

19  standards applicable under federal copyright law and, after failing to obtain remand

20  from Judge Manella, appealed her decision.[17]   Mattel also moved to dismiss

21  Bryant's complaint for declaratory judgment, which sought a ruling that he owned

22  _____
    9 & Exh. 7.)

23  [12] Jacoby Decl. ¶ 10 & Exh. 8.

    [13] Jacoby Decl. ¶ 12.
24
    [14] Jacoby Decl. ¶ 13 & Exh. 9.

25  [15] Torres Decl. ¶ 5 & Exh. C (Bryant Dep. taken on November 8, 2004, at 702:15-703:9).

26  [16] Torres Decl. ¶ 6, Exh. D (Order Denying Plaintiff Mattel, Inc.'s Motion to Remand and Certifying Question for Interlocutory Review, dated March 4, 2005).

27  [17] At this point, Mattel finally conceded that $75,000 was in controversy but argued that MGA's intervention defeated diversity jurisdiction. (Torres Decl. ¶ 7, Exh. E (Mattel's Opening Brief at 8)).  That argument failed.  (Torres Decl. ¶ 6, Exh. F (Order Affirming

28  District Court's denial of motion to remand)).

EXHIBIT 6 - 4 , PAGE 323

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1    the rights to "Bratz" at the time he conveyed them to MGA and that nothing he did

2    infringed any copyright owned by Mattel.

3          In the meantime, in 2005, after lengthy conferences of counsel, the parties

4    stipulated to supplementing their document productions on May 16, 2005. Faced

5    with the fact that Bryant's work for MGA long after his departure from Mattel bore

6    no relevance to the "state law" claims it had asserted in April 2004, Mattel retreated

7    from its October 2004 position that all things "Bratz" were relevant to its claims,

8    and, at least with respect to MGA, agreed to continue limiting its discovery requests

9    to "first generation" "Bratz." Mattel's lead counsel confirmed that agreement even

10   after remand but, to resolve any issue as to what constituted "first generation"

11   "Bratz," the parties agreed to a date cut-off of June 2001, the month when MGA's

12   first "Bratz" dolls were made available for sale.[18]

13         In September 2006, following the parties' lengthy conferences of counsel in

14   July and August 2006, MGA made a supplemental production of documents.

15   Mattel, after subpoenaing long-time Mattel vendor Steve Linker who worked on

16   Mattel's 2000 "DIVA STARZ" line, produced for the first time boxes of old DIVA

17   STARZ drawings, signaling its apparent intention to convert its former "Toon

18   Teens" theory into one involving "DIVA STARZ."[19]

19         On November 20, 2006, Mattel filed a motion for leave to amend its

20   complaint to allege the long-denied copyright ownership and infringement claim,

21   along with vague claims for civil RICO violations and trade secret

22   misappropriation. On January 12, 2007, the Honorable Stephen G. Larson allowed

23   Mattel to assert its claims in these consolidated actions, not as additional claims in

24   its original complaint but as counterclaims to MGA's Lanham Act and unfair

25   competition claims filed in April 2005. MGA and Bryant filed motions to dismiss

26   Mattel's RICO and trade secrets claims on several grounds, including that Mattel

27   _____

[18] Torres Decl. ¶ 12.

28   [19] Torres Decl. ¶ 20.

EXHIBIT  8 , PAGE 364

failed to identify their alleged predicate acts or Mattel's alleged trade secrets.[20]

Mattel now moves to compel MGA to produce all manner of documents, claiming that:

1. MGA's prior productions are deficient because they contain redactions and cut-off text, and because Mattel has obtained documents from third parties that MGA has not produced;

2. MGA is somehow at fault because Union Bank did not produce sufficient documents in response to Mattel's subpoena;

3. MGA's document production is deficient because it has not produced all documents from MGA HK Ltd, Inc., an indirect foreign subsidiary;

4. MGA's document production is deficient because it has not produced statements concerning "Bratz" made by witnesses in the course of other proceedings covered by protective orders in those proceedings;

5. MGA's document production is deficient because MGA supposedly has not produced all documents concerning contracts with Bryant; and

6. MGA's document production is deficient because MGA has not produced documents concerning subsequent generations of "Bratz."

In its motion, Mattel makes no mention of the facts that:

1. The redactions at issue, on documents produced months or years ago, concern MGA products -- such as "Hoppity Bouncy Baby," "Insectobots," "Scooter Samantha," and others -- that have no bearing whatsoever on Mattel's claims, or that MGA agreed to produce, and has produced, documents without redactions save for pricing and financial information concerning unrelated products;

2. The cut-off text about which Mattel complains, again on documents produced to Mattel months or years ago is, with perhaps a handful of exceptions,

---

[20] Torres Decl. ¶ 24, Exhs. M & N (Memorandum of Points and Authorities in Support of MGA and Isaac Larian's Joint Motion to Dismiss Mattel's Amended Answer and Counterclaims; Memorandum of Points and Authorities In Support of Carter Bryant's Motion to Dismiss Counterclaims II, III, V, VII, IX, and XI).

8

EXHIBIT 8 , PAGE

1 | completely inconsequential, or that MGA agreed to produce, and has produced,

2 | new copies of those documents;

3 |     3. Mattel has never sought to compel further production from Union Bank;

4 |     4. None of Mattel's document requests contain a request for documents from

5 | MGA HK Ltd., and Mattel never even mentioned its interest in those documents

6 | until August 2006, but declined to agree that Mattel would produce documents

7 | from its own subsidiaries, on the sole basis that Mattel has more subsidiaries than

8 | does MGA;

9 |     5. Statements concerning "Bratz" made by witnesses in the course of other

10 | proceedings are covered by protective orders in those proceedings, and Mattel has

11 | refused to agree to produce statements in its own possession, custody or control

12 | concerning the origin of the Mattel products at issue, including both "My Scene"

13 | and "DIVA STARZ;"[21]

14 |     6. MGA has already produced all non-privileged contracts entered or

15 | contemplated with Bryant prior to his last day at Mattel or that concern "Bratz,"

16 | including non-privileged documents concerning any supposed "fee agreement" in

17 | this litigation. Mattel appears to be seeking privileged documents and drafts,

18 | however, and/or alleged contracts between MGA and Bryant entered into long after

19 | he left Mattel that have nothing to do with "Bratz;" and

20 |     7. MGA has already agreed to produce documents concerning subsequent

21 | generations of "Bratz," which were not at issue until January 12, 2007, but has

22 | taken the position that the documents Mattel really wants -- unreleased product

23 | design drawings -- have no bearing on this case or, at the very least, should not be

24 | produced until *after* the release of those products.

25 |

---

26 | [21] Mattel mentions its refusal to agree to produce witness statements concerning "Flavas,"
27 | but makes no mention of its refusal to agree to produce witness statements concerning "My Scene," the product at the heart of MGA's Lanham Act and unfair competition claims, or "DIVA STARZ," a product now directly at issue in Mattel's newly-minted
28 | theory of ownership and infringement. (Mot. at 15).

-9-

EXHIBIT ___8___, PAGE 3~~~~~~

1    In short, Mattel's omnibus motion to compel is not an attempt to compel the
2    documents specifically identified in the motion but rather an attempt to gloss over
3    the real issues and thereby obtain a broad order that encompasses far-reaching
4    documents and sets precedent on a wide variety of issues without requiring Mattel
5    to address their relevance.

6    **III.   ARGUMENT**

7         **A.   Mattel's Motion Is Unnecessary And Should Be Denied With**
8             **Respect To The Majority Of Documents Specifically Identified**
9             **Therein**

10            **1.   MGA Has Either Already Cured Any Alleged Deficiencies**
                  **In Its Production Or Is In The Process Of Addressing Any**
11                **Remaining Deficiencies**

12        As a preliminary matter, the majority of Mattel's motion to compel is
13   unnecessary and should be denied on that basis alone.  On January 26, 2007, the
14   parties met and conferred regarding a host of purported deficiencies in MGA's
15   2004, 2005 and 2006 document productions.  During the conference of counsel,
16   MGA agreed to review its production and to reproduce unredacted, or modified
17   redacted copies of documents, where appropriate, and to produce copies of any
18   missing attachments to documents where the attachments were relevant to a claim
19   or defense in the litigation.[22]  In addition, MGA agreed to review the copies of
20   documents in its possession on which Mattel claimed the text had been cut-off or
21   was "illegible," and to reproduce those documents if MGA's copies contained
22   information missing from Mattel's documents.[23]  Finally, MGA agreed to review
23   the Court's Order Granting Mattel's Motion to Compel Production of Documents
24   as to Carter Bryant, to determine what impact the Court's Order had on MGA's
25   document production.[24]  *Before the deadline for MGA's production*, however,

26   ───────────────
27   [22] Torres Decl. ¶ 18.
     [23] *Id.*
28   [24] *Id.*

EXHIBIT 8 , PAGE 367

- 10 -

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1    Mattel filed the instant motion to compel seeking, among other things, the very

2    same documents that MGA agreed to produce.

3          MGA has already cured many of the alleged "deficiencies" in its production

4    and will have resolved any remaining alleged "deficiencies" before this matter is

5    heard.  Following the parties' conference of counsel, MGA began the process of

6    reviewing its production and unredacting documents, as agreed.[25]  *Notably, many of*

7    *Mattel's complaints have no merit, as their complaints stem from a fundamental*

8    *misunderstanding of the documents produced.*  Thereafter, on February 5, 2007,

9    MGA reproduced unredacted documents, or documents with substantially fewer

10   redactions for its production through May 2005.[26]  MGA also produced missing

11   attachments to documents where the attachment was relevant to the "Bratz" or

12   "Prayer Angel" product lines, the only products at issue during the time frame of

13   the documents in the production.[27]  MGA has continued to review the remainder of

14   its production to date to determine whether additional documents need to be

15   reproduced, and has been producing on a rolling basis any such documents that are

16   identified.[28]  As of the date of this opposition brief, the only documents of this type

17   that MGA has not reproduced are payment-type documents where part of a word or

18   number was cut off by the copier.[29]  As MGA's counsel has explained to Mattel, the

19   copies of those documents in counsel's possession (which were produced last

20   September, but about which Mattel made no complaint until January), are

21

22   [25] Declaration of Stacie McLean ("McLean Decl.") ¶ 2.

23   [26] *Id.*  The only redactions to the reproduced documents were either based on privacy concerns for third parties, such as social security numbers, or else include information for products that are not relevant to this litigation.  *Id.* ¶ 2.

24   [27] McLean Decl. ¶ 3.

25   [28] McLean Decl. ¶ 2.

26   [29] Moreover, the majority of the text that was cut-off or "illegible" on the documents produced to Mattel was either so minor (such as the top portion of a word or number) that

27   it did not affect Mattel's ability to read, understand or use the document, or else was present and fully legible elsewhere on the document (such as an invoice number that

28   appeared in two places on the document, one of which was "cut-off" and one of which was not).  (McLean Decl., ¶ 4).

EXHIBIT 8 , PAGE 368

- 11 -

1  substantially the same as those that had been produced to Mattel.[30]  Accordingly,

2  MGA requested the original files so that any documents that were "illegible" or had

3  text cut-off could be reproduced, as needed.[31]  Those documents were in an off-site

4  storage facility and were not retrieved until the business day before this opposition

5  was due; as MGA had already agreed, if they contain the allegedly "illegible" or

6  cut-off text, MGA will produce them, and expects to do so in the next two days.[32]

7      Mattel, however, wants more – although it dare not admit this openly, Mattel

8  apparently wants all MGA financial data, regardless of the product.  For example,

9  Mattel attached to its motion to compel a 100-page spreadsheet containing financial

10 data ostensibly to show that MGA has redacted far too much and should be required

11 to produce such documents in unredacted form.[33]  Notably, however, the

12 information redacted from the spreadsheet *relates to products not at issue in this*

13 *litigation*, including Power Rangers, Hello Kitty, Scooter Samantha and Hoppity

14 Bouncy Baby.  It is thus clear that Mattel's goal is to have MGA produce all

15 financial data, regardless of whether the product is at issue in this litigation.  *There*

16 *is absolutely no basis on which Mattel is entitled to such commercially sensitive*

17 *information about its most significant competitor.*[34]

18      **2.**    **MGA Has Already Produced Documents In Response To**
19          **Mattel's Requests Or Is In The Process Of Producing**
20          **Relevant Documents In Its Possession**

21      **a.**    **MGA Has Already Produced Documents In Response**
22          **To Most Of Mattel's Requests**

23  Mattel's motion also seeks to have MGA produce documents that were

---

24  [30] Torres Decl. ¶ 18.

25  [31] McLean Decl. ¶ 4.

26  [32] McLean Decl. ¶ 4.

    [33] Declaration of Michael T. Zeller in support of Mattel's Motion to Compel, ¶ 4, Exh. 2.

27  [34] As set forth more fully in section III.B.1.b *infra*, the Protective Order in this case is inadequate to protect MGA from disclosure, as Mattel has frequently paraphrased or

28  included summaries of information designated confidential or "attorneys eyes only" in public filings.

                                        **EXHIBIT**  8  **, PAGE** 369

1   produced long ago.  Mattel is well aware of this fact and, effectively, seeks

2   documents that either *do not exist* or are simply not in MGA's possession.

3        First, MGA has produced all responsive and relevant documents that it was

4   able to locate after a diligent search in response to Request Nos.: 6, 7, 9,[35] 26, 27,

5   32, 33, 34,[36] 35,[37] 36, 55, 69 and 70.[38]  MGA has also previously produced

6   documents in response to many of Mattel's remaining requests.  Given MGA's

7   agreement to produce documents related to "Bratz" other than "First Generation"

8

9   [35] Mattel's Second Set of Requests For Production, Request No. 9 seeks "All
    DOCUMENTS that REFER OR RELATE To any work, activities or services, including
10  without limitation any freelance work or consulting services, that Veronica Marlow
    performed for or with YOU or on YOUR behalf prior to January 1, 2001 (regardless of
11  when any such document was prepared, created, received or transmitted, whether in whole
    or in part)."  MGA has produced all relevant and responsive documents in response to this
12  request that it was able to locate with regard to Ms. Marlow's work on "Bratz" and
    "Prayer Angels."  Ms. Marlow has worked on many projects for MGA other than those at
13  issue in this litigation.  Thus, documents related to Ms. Marlow's work on projects not at
    issue in this litigation and which are not relevant to any party's claims or defenses, have
14  not been produced.
    [36] Mattel's Second Set of Requests For Production, Request No. 34 seeks "All
15  DOCUMENTS prepared, written, transmitted or received (whether in whole or in part)
    prior to January 1, 2001 that REFER OR RELATE TO ANGEL."  The parties previously
16  agreed that MGA would produce documents responsive to this request that reflect major
    milestones in the development of "Prayer Angels."  (Torres Decl. ¶ 13.)  Accordingly,
17  MGA has already produced all relevant and responsive documents that it could locate,
    consistent with the parties' agreement.
18  [37] Mattel's Second Set of Requests For Production, Request No. 35 seeks "All
    DOCUMENTS that REFER OR RELATE TO ANGEL that REFER OR RELATE TO
19  any time prior to January 1, 2001 (regardless of when such document was prepared,
    written, transmitted or received, whether in whole or in part."  The parties previously
20  agreed that MGA would produce documents responsive to this request that reflect major
    milestones in the development of "Prayer Angels."  (Torres Decl. ¶ 13.)  Accordingly,
21  MGA has already produced all relevant and responsive documents that it could locate,
    consistent with the parties' agreement.
22  [38] Mattel's Second Set of Requests For Production, Request No. 70 seeks "All
    COMMUNICATIONS between YOU and Elise Cloonan that REFER OR RELATE TO
23  BRYANT, Mattel, Inc., BRATZ and/or Anna Rhee, including without limitation all
    diaries, notes, calendars, logs, phone records and letters, that reflect, record, or
24  memorialize or otherwise REFER OR RELATE TO any such COMMUNICATIONS."
    MGA has produced all relevant and responsive documents that it could locate in response
25  to this request with regard to communications between MGA and Elise Cloonan that refer
    or relate to Bryant, Mattel, or Bratz.  MGA has also produced all relevant and responsive
26  documents that it could locate in response to this request that refer or relate to Ms. Rhee
    that relate to the present litigation, or that relate to First Generation Bratz.  Other
27  communications relating to Ms. Rhee, who has worked on various other projects for
    MGA, are not relevant to the claims or defenses of the parties in the litigation and should
28  not be required to be produced.

EXHIBIT 8 , PAGE 370

- 13 -

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1   "Bratz," as well as to produce certain documents -- that were not relevant to a claim

2   or defense prior to January 12, 2007, however, MGA is diligently working to

3   produce documents in response to many additional requests. [39]

4       Finally, consistent with the parties' agreement, MGA has produced all

5   documents relevant to "Bratz" or "Prayer Angels" that it received from Union Bank

6   in response to Mattel's subpoena. [40]  Pursuant to that agreement, MGA agreed to

7   review and produce documents provided to it by Union Bank for the years 1999 -

8   2001 concerning payments that it could identify as being for "Bratz" or an entirely

9   separate project, "Prayer Angels," discussed *infra*.  Indeed, Mattel itself

10  acknowledges that MGA's production of cancelled checks and wire transfers

11  related to payments made with regard to "Bratz" or "Prayer Angels." [41]  Mattel,

12  however, complains that other types of documents are missing.  Union Bank

13  provided no other documents that indicated they were related in any way to "Bratz"

14  or "Prayer Angels." [42]  Accordingly, Mattel's motion on this issue should be denied.

15      **b.**    **MGA Has Agreed To Produce Documents Pertaining**

16         **To Subsequent Generations Of Released Bratz Dolls**

       **Based On The Changed Nature Of The Case But**

17         **Should Not Be Compelled To Do So Because They**

18         **Became Relevant Only In Mid January**

19      Mattel next attempts to argue that MGA's objection to producing documents

20  relating to "Bratz," other than "First Generation" "Bratz," was improper and that

21  the Court should compel MGA to produce such documents.  As Mattel is well

22  aware, however, subsequent generations of "Bratz" dolls became relevant to

23  Mattel's claims only on January 12, 2007, when Judge Larson granted Mattel leave

24

25

26  [39] Those requests are Request Nos.: 1, 2, 8, 10, 11, 43, 45, 46, 49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.

27  [40] Torres Decl., ¶ 21.
  [41] Mot. at 10.

28  [42] Torres Decl., ¶ 21.

EXHIBIT _8_ , PAGE 37

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1  to amend its answer and assert counterclaims in the *MGA v. Mattel* litigation.[43]

2  That same date, Mattel asserted claims seeking a declaration of ownership of the

3  "Bratz" copyrights and demanding relief for MGA's "infringement" of Mattel's

4  purported rights in "Bratz," among various other claims.[44]  Prior thereto, Mattel had

5  repeatedly asserted that it was not claiming copyright infringement.  Accordingly,

6  MGA's prior objection to producing documents were appropriate as documents

7  related to subsequent "Bratz" products[45] were not relevant to any claims or defenses

8  of the parties.[46]  In fact, as recently as August 2006 (the last conference of counsel

9  concerning this issue), Mattel had agreed that MGA needed to produce documents

10 pertaining only to the "first generation Bratz" dolls.[47]  Given the changed nature of

11 the case, however, MGA already informed Mattel that it would produce documents

12 pertaining to subsequent generations of "Bratz" dolls that have been released on the

13 market.[48]  Accordingly, Mattel's request for an order compelling MGA to produce

14 such documents should be denied.

15
          c.     **MGA Has Agreed To Produce Royalty Statements To**
16                **Bryant Based On This Court's January 25th Order**

17        During the meet and confer, counsel for MGA also agreed to review the

18 Court's Order Granting Mattel's Motion To Compel with regard to Bryant to

19 determine if the Court's Order had any impact on MGA's obligation to produce

20

21 ───────────────

22 [43] Notably, Mattel has not produced any documents of the same type they are seeking from MGA -- those related to the creation or development of "DIVA STARZ" or "My Scene."  Such documents are clearly relevant and Mattel's failure to produce such

23 documents will be the subject of a forthcoming motion to compel.

24 [44] Many of the new counterclaims asserted by Mattel are the subject of pending motions to dismiss filed by MGA and Bryant.

25 [45] MGA has never refused to produce documents pertaining to the specific products at issue in its own claims against Mattel but those documents were not the subject of

26 Mattel's document requests because discovery on those claims did not begin until last month.

27 [46] *See* FED. R. CIV. PROC. 26(b).

   [47] Torres Decl. ¶ 12.

28 [48] Torres Decl. ¶ 23.

EXHIBIT **8** , PAGE **372**

- 15 -

documents to Mattel.[49]  After having reviewed this Court's recent Order, and so as to avoid further burdening the Court, MGA agrees to produce any remaining royalty statements for payments made to Bryant within 30 days.  Mattel never raised this issue again before filing its motion.

In short, the majority of Mattel's motion seeks documents that MGA has either already reproduced, or else has agreed to reproduce within a reasonable amount of time.  MGA should not be ordered to do that which it has already done, or which it has already agreed to do and on which it is diligently working.  Accordingly, Mattel's motion should be denied.

**B.** **Mattel's Motion With Respect To The Remaining Requests Should Be Denied Because They Seek Documents Not Relevant To This Litigation, Documents Covered By A Protective Order, Or Documents Of The Type Mattel Itself Has Refused To Produce**

      **1.** **Mattel Is Not Entitled To MGA's Product Design Documents For Unreleased Products, Which Are Highly Valuable Trade Secrets That Have No Bearing On This Case**

            **a.** **MGA's Product Design Documents For Unreleased Products Are Highly Valuable Trade Secrets That Have No Bearing On This Case**

In connection with this Court's January 25, 2007 Order granting Mattel's motion to compel further production of documents from Bryant, Mattel has taken the position that the parties must produce drawings and designs for MGA products currently under development and not yet released to the public.  MGA's "Bratz" products, first released in the summer of 2001, are now sold worldwide and compete directly with certain products marketed by Mattel.[50]  As discussed *infra*, MGA's product design documents for its unreleased toy concepts, *i.e.*, those that

---

[49] Torres Decl. ¶ 18.

[50] *See* Declaration of Paula D. Garcia in Support of Carter Bryant and MGA's Request for Clarification, Reconsideration and/or Further Protection, dated February 9, 2007 ("Garcia Decl."), ¶ 3.

EXHIBIT 8 , PAGE 373

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1   have not been made public, are among its most highly valuable trade secrets.[51]  The

2   drawings and designs for those concepts represent works in progress and ideas for

3   advancing and developing product lines.[52]

4   　　　The creative development process is one that is fluid, not static.[53]  To develop

5   a product, MGA and Bryant may create and develop scores of drawings that they

6   modify and improve throughout the development cycle.[54]  At MGA, the

7   development process is constant and extremely rapid.[55]  In fact, MGA, which is not

8   burdened by extensive corporate bureaucracy, is known in the toy industry for its

9   development speed and market responsiveness.[56]  Often in this fast-paced

10   development process, MGA goes back to, or builds on, prior drawings.[57]

11   　　　MGA protects its product designs and drawings through a number of ways.

12   For example, employees are required to sign confidentiality agreements, computers

13   are password protected, and MGA's product design buildings have security guards

14   who prohibit entry to unauthorized personnel and who check even authorized

15   personnel on their way out.[58]  Even vendors, manufacturers, suppliers and other

16   third parties who may see a product design late in the development process are

17   required to sign strict confidentiality agreements.[59]

18   　　　MGA's drawings for some of its yet-unreleased "Bratz" products are even

19   more closely protected.  When MGA begins to develop a new "Bratz" line, only a

20   very limited number of people know about it.[60]  In fact, with respect to some new

21   "Bratz" products, there are *only two* people – Carter Bryant and Paula Garcia – who

---

[51] Garcia Decl., ¶ 4.
[52] *Id.*
[53] *Id.* at 7.
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.* at 5.
[59] *Id.*
[60] *Id.* at 6.

EXHIBIT __8__, PAGE 374

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1   know what the concept is and who see the early product drawings.[61]  Even after

2   Garcia approves, and Bryant and Garcia have finalized, the concept, only a small

3   number of people on the "Bratz" development team have exposure to the drawings

4   before they are nearly ready for release.[62]

5       Even if some of the "Bratz" drawings that Bryant created for MGA after June

6   30, 2001, may be relevant to claims at issue in this action,[63] drawings for unreleased

7   products are not.[64]  Such documents are clearly not relevant to any of Mattel's

8   claims in its original complaint, which alleged only that Bryant breached his

9   confidentiality obligations *while employed by Mattel*.[65]  Indeed, Mattel has

10  repeatedly confirmed that it stated only alleged claims for employment-based duties

11  in the *Mattel v. Bryant* action.[66]  Designs and drawings for products currently under

12  development, over six years later, therefore have no relevance to Mattel's original

13  contract and fiduciary claims.  Mattel's new copyright counterclaims are also based

14  on its allegation that Bryant created the original "Bratz" drawings *while employed*

15  *at Mattel*.[67]  Mattel did not argue in its motion papers or at oral argument that

16  drawings and designs for products *currently* under development – over six years

17  after the termination of Bryant's employment at Mattel – are relevant to its

18  copyright infringement or ownership claims.  Indeed, at oral argument on Mattel's

19  motion for leave to amend its complaint, Mattel's lead counsel, John Quinn, stated

20  that Mattel's copyright theories rest on its contention that Bryant created the

---

[61] *Id.*

[62] *Id.*

[63] While MGA has agreed to produce such documents, it does not concede that the majority have any relevance to the claims or defenses in this litigation.

[64] As an initial matter, Mattel cannot possibly have suffered any cognizable injury relating to MGA products that have not yet been released, and indeed has never before taken the position that such products are relevant.

[65] Complaint dated April 27, 2004, ¶ 12.

[66] *See* Torres Decl., ¶ 6, Exh. D (Order Denying Plaintiff Mattel, Inc.'s Motion to Remand and Certifying Question for Interlocutory Review, dated March 4, 2005).

[67] Complaint dated January 12, 2007, ¶ 26.

EXHIBIT ____ 8 , PAGE 375

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1  original "Bratz" drawings while employed at Mattel.[68]  Another Mattel attorney,

2  Michael Zeller, confirmed this during a conference of counsel on an unrelated issue

3  on February 12, 2007.[69]

4          Nor are such documents relevant to Mattel's other counterclaims.  Mattel's

5  trade secret claim is based on allegations of theft of *business information*, not of

6  designs and drawings.[70]  Consequently, designs and drawings are not relevant to

7  any of Mattel's counterclaims founded on its allegations of trade secret theft.

8  Moreover, even if designs and drawings were relevant to Mattel's trade secret

9  claims, Mattel has failed to provide a designation of its alleged trade secrets "with

10 reasonable particularity," as called for by the California Code of Civil Procedure

11 section 2019.210 (formerly 2019(d)), which provides that "before commencing

12 discovery relating to the trade secret, the party alleging the misappropriation shall

13 identify the trade secret with reasonable particularity." Further, discovery on all of

14 Mattel's other claims, which are factually dependent on its allegations of trade

15 secret misappropriation, must similarly be stayed pending a more particularized

16 identification of the trade secrets allegedly misappropriated.[71]

17         These documents should also be excluded from production because of the

18 broad scope of Mattel's requests.  In *Intersong-USA, Inc. v. CBS, Inc.*, a case of

19 alleged copyright infringement by Julio Iglesias and others, the plaintiff had

20

21 [68] Torres Decl., ¶ 22.
   [69] *Id.*

22 [70] *See* Declaration of Michael T. Zeller ("Zeller Decl.") filed in Support of Mattel's
   Motion to Compel, ¶ 10, Exh. 8 (Mattel's Amended Answer and Counterclaims, filed

23 January 12, 2007, ¶¶ 37, 48, 68, and 74).

24 [71] *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826 (2d Dist.
   2005) (where all of the plaintiff's 10 claims were "factually dependent" on its trade secret

25 claim, discovery on any of the claims could commence only after the allegedly
   misappropriated trade secrets had been identified with reasonable particularity); *Computer*

26 *Economics, Inc. v. Gartner Group Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999).
   (establishing the applicability of California's statutory provision to federal cases,

27 including cases where pendent jurisdiction applies to state law claims, under the Erie
   doctrine); *see also Vermont Microsystems, Inc. v. Autodesk, Inc.*, 88 F.3d 142 (2d Cir.

28 1996)(applying California trade secret law and specifically this provision without dispute
   or need for discussion).

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1   requested information on *all* musical compositions that the defendants had

2   authored.[72]  Recognizing the overbreadth of this request, the Court held that the

3   defendants should produce information for musical compositions "actually

4   published" over a ten-year period.[73]  Similarly, Mattel's requests for all documents

5   pertaining to "Bratz" or to Bryant's work for MGA after June, 2001, are overbroad

6   and should be limited to drawings or work for "Bratz" products that have been

7   released to the public.

8                 **b.**      **Drawings For Unreleased MGA Products In**

9                         **Development Are Extremely Valuable And The**

10                        **Protective Order Is Inadequate**

11        In the event the Special Master determines that drawings for unreleased

12  MGA products are somehow relevant and properly within the scope of the Court's

13  Order, MGA requests further protection pursuant to Federal Rule of Civil

14  Procedure 26(c).  Rule 26(c) provides for the issuance of "any order which justice

15  requires,"[74] and suggests various additional methods of protection that are not

16  available to MGA under the Protective Order currently in place.  Such an order

17  could provide for discovery "only on specified terms and conditions, including a

18  designation of the time or place."[75]  Specifically, the rule provides for an order "that

19  a trade secret or other confidential research, development, or commercial

20  information not be revealed or revealed only in a designated way."[76]

21        In determining whether such an order should be granted, the Ninth Circuit

---

[72] 1 Fed. R. Serv. 3d 609 (S.D.N.Y. 1985).

[73] *Id.*

[74] Rule 26(c) provides for the issuance of a protective order upon motion by a party that has conferred in good faith in an effort to resolve the dispute without court action, and for good cause shown.  MGA attempted to resolve this issue with Mattel in connection with drawings of unreleased products in Bryant's possession and may have reached agreement with respect to those limited drawings, but Mattel specifically stated that it would not extend the terms of any agreement reached with Bryant to documents pertaining to unreleased MGA products in *MGA's* possession.  (Torres Decl. ¶ 23).

[75] FED. R. CIV. P. 26(c)(2).

[76] FED. R. CIV. P. 26(c)(7).

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

requires that a court balance the risk to the disclosing party of inadvertent disclosure of trade secrets to competitors against the risk to the moving party that protection of the trade secret would impair the prosecution of its claims.[77] The fact that MGA and Mattel are direct competitors weighs significantly in favor of protection of confidential information.[78]

Drawings for unreleased products fit squarely within the scope of trade secret information covered by Rule 26(c) and "should not be revealed" at all or, at the least, "should not be revealed" prior to public release of the products.[79] A trade secret is defined under California law as information that "(1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."[80]

Both prongs of this test are met in this case. First, a toy manufacturer's unreleased toy concepts, *i.e.*, those that have not been made public, are among its most highly valuable trade secrets.[81] Although such drawings and designs are valuable even *after* the product's public release, their value is enormous prior to their public release because they represent works in progress and new ideas for advancing and developing product lines; it is the new ideas and designs that are most likely to generate new sales.[82] Second, because of their tremendous value,

---

[77] *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.) (upholding protective order granting access to source codes and other trade secret materials only to an independent consultant), *cert. denied sub nom.*, *BB Asset Mgmt., Inc. v. Symantec Corp.*, 506 U.S. 869 (1992).

[78] Garcia Decl. ¶ 3; *see Am. Heavy Moving & Rigging Co. v. Robb Techs., L.L.C.*, No. 2:04-CV-00933-JCM (GWF), 2006 U.S. Dist. LEXIS 51276, *10 (D. Nev. July 24, 2006) ("The courts generally hold that there is a greater likelihood of harm where disclosure of trade secrets is sought in litigation between competitors") (citation omitted).

[79] FED. R. CIV. P. 26(c)(7).

[80] CAL. CIV. CODE, § 3426.1(d).

[81] Garcia Decl., ¶ 4.

[82] *Id.*

EXHIBIT ___21 - 8___, PAGE 398

MGA'S OPPOSITION TO MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1    MGA protects its product drawings in a number of ways:  restricting access to a

2    very small number of people, requiring strict confidentiality agreements, using

3    password-protected computers, and employing security guards at their facilities

4    who prohibit entry to unauthorized personnel and who check even authorized

5    personnel on their way out.[83]

6         MGA takes even greater efforts to protect some of its yet-unreleased "Bratz"

7    products.  In fact, with respect to some new "Bratz" products, there are *only two*

8    people – Carter Bryant and Paula Garcia – who know what the concept is and who

9    see the early product drawings.[84]  Even after Garcia approves and Bryant and

10   Garcia have finalized the concept, only a small number of people on the "Bratz"

11   development team have exposure to the drawings.[85]

12        There is good cause for heightened protection of drawings for unreleased

13   products.  As set forth above, any relevance of such drawings to the issues in *Mattel*

14   *v. Bryant,* which, according to Mattel, has only ever stated alleged claims for

15   employment-based duties, is marginal at best.  In contrast, the potential damage to

16   MGA of any disclosure of the drawings, or even the concepts represented by the

17   drawings, is substantial.  This potential disclosure is real:  both sides have a

18   substantial number of personnel working on this case.  Indeed, Mattel's recent

19   filings with the special master reveal the names of 13 lawyers at Quinn Emanuel

20   working on behalf of Mattel in this matter.  Without question, there are numerous

21   other staff members and outside vendors -- such as copy services, couriers, court

22   reporters, experts and their respective staffs -- who also handle documents in this

23   case on a regular basis.  The current Protective Order allows disclosure to each of

24   these groups of people even for documents restricted as "Attorneys Eyes Only."

25   The fact that such a large number of people can have access to documents accorded

26

---

27   [83] *Id.* at 5-6.

     [84] *Id.* at 6.

28   [85] *Id.*

EXHIBIT 22 - 9 , PAGE 399

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

even the highest level of confidentiality under the Protective Order, by necessity, magnifies the potential for disclosure, which, even if inadvertent, could be tremendously valuable to a competitor and hence tremendously harmful to MGA.

Moreover, it has been Mattel's practice to summarize or paraphrase the contents of confidential documents or testimony in briefs and other papers filed with the Court.[86] If Mattel's attorneys were allowed to review drawings of unreleased MGA products in development and then summarize them -- even conceptually -- in open court or in documents not filed under seal, that information would be publicly available -- and hence available to Mattel itself and other MGA competitors. This possibility alone warrants protecting the drawings of MGA's products in development until after the products themselves have been released.

### c. In The Alternative, Drawings For Unreleased MGA Products Should Not Be Required Prior To Their Public Release

Finally, even if the Special Master determines that such documents *are* relevant to any of Mattel's counterclaims and should be produced in discovery, they should not be produced now. Judge Larson recently issued a scheduling order setting trial on Mattel's original claims, in *Mattel v. Bryant,* in February 2008, with discovery continuing thereafter until March 2008, with trial in July 2008, on MGA's Lanham Act and unfair competition claims against Mattel and Mattel's counterclaims against MGA and Bryant. Thus, even if it is determined that drawings and designs relating to unreleased products may conceivably be relevant

---

[86] In fact, as recently as February 5, in its lengthy filing entitled "Mattel's Portions of Rule 26(f) Report," Mattel included confidential information regarding early "Bratz" development in its descriptions of documents designated "attorneys' eyes only" and of deposition testimony also designated "attorneys' eyes only." (*See* Torres Decl.¶ 26.) For instance, Mattel described information found on a confidential invoice provided to MGA by one of its vendors, Veronica Marlow. (*Id.*) Mattel also used information found in an email designated "attorney's eyes only" to describe the work performed by Stephen Lee and Cecelia Kwok, employees of MGA Hong Kong, on "Bratz." (*Id.*) Mattel also used the AEO testimony of MGA's CEO, Isaac Larian, purportedly to describe the duties of Paula Garcia, MGA's Vice President of Product Design and Development and a product manager on the "Bratz" line. (*Id*).

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1   to Mattel's counterclaims, the immediate production of such documents should not

2   be required at this time.

### C.    Mattel Is Not Entitled To Information Concerning Bryant's Attorneys' Fees

Mattel also seeks documents related to any indemnification agreements

between MGA and Bryant.[87]   First, MGA has already produced the only non-

privileged documents responsive to this request.[88]   Moreover, the existence of any

fee or indemnity agreement is not relevant to any claim or defense in this litigation

and has no bearing on any potential "bias" because there is no dispute that Bryant's

interests in this case are aligned with those of MGA, and that Bryant is "biased" in

that sense.  *In fact, MGA and Bryant previously offered to stipulate to that, and*

*again offer to so stipulate now.*  Mattel, however, has refused any such stipulation.[89]

Accordingly, MGA should not be required to produce documents related to any fee

or indemnity agreement, even if any non-privileged documents existed.

### D.    Mattel Is Not Entitled To Irrelevant, One-Sided Discovery

#### 1.    Mattel Is Not Entitled To Review All Non-Public Witness Statements And Litigation Documents Concerning "Bratz"

Mattel also should not be allowed to conduct a far-flung fishing expedition

through a broad array of non-public documents from other legal proceedings.  First,

Mattel's request for documents related to prior sworn testimony should be denied

because Mattel has refused to produce similar types of documents.[90]   In particular,

MGA previously indicated that it would agree to produce such documents, subject

to any protective orders, if Mattel agreed to produce similar documents for "DIVA

---

[87] *See* Mattel's Second Set of Requests For Production, Request Nos. 49 and 50.

[88] Torres Decl., ¶ 14.

[89] *Id.*

[90] Mattel's Second Set of Requests For Production, Request Nos. 37-40 seek affidavits, declarations, transcripts and other public and non-public pleadings from other suits and legal proceedings that refer or relate to "Bratz" or "Prayer Angels."

EXHIBIT  6 , PAGE 301

- 24 -

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1   STARZ," "My Scene" and other products at issue in this litigation.[91]  Mattel

2   refused.  Discovery is not a one way street and Mattel has not demonstrated the

3   inability to obtain the underlying documents and testimony directly.  If such

4   documents are to be produced by one side, they should be produced by both.

5        More importantly, however, Mattel's request is a blatant attempt to avoid the

6   discovery limitations imposed by both the Federal Rules of Civil Procedure and

7   those additional limitations imposed by this Court.  As Mattel is well aware, MGA

8   is involved in litigation against a number of counterfeiters and blatant infringers in

9   Asia.  Until 2003, those cases involved only one issue: whether the defendants in

10  those cases had the right to produce counterfeit "Bratz" dolls.  In 2003, however,

11  Mattel began feeding documents to those defendants concerning the abandoned

12  Mattel project, "Toon Teens," referenced above, contending that those documents

13  proved that Bryant created "Bratz" while working at Mattel.[92]  Thereafter, the

14  defendants in those cases (and in other cases where the defendants were represented

15  by lawyers who also represented Mattel) took the position that MGA did not own,

16  and therefore could not enforce, the rights to "Bratz."  To defend itself against those

17  spurious claims concerning "Toon Teens" – which Mattel has since renounced in

18  open court before Judge Larson,[93] MGA has been forced to litigate the issue of

19  ownership, as well as issues related to the specific defendants in those cases, in

20  other tribunals not subject to the strict requirements of the Federal Rules of Civil

21  Procedure.[94]  In effect, by prompting foreign counterfeiters to espouse a theory that

22  Mattel now admits has no merit, Mattel has created a situation in which MGA has

23  been forced to give testimony and provide evidence related to issues in this case

24  that Mattel now seeks to obtain wholesale.  Such underhanded tactics should not be

25

---

26  [91] Torres Decl., ¶ 15.

      [92] Jacoby Decl. ¶ 9.

27  [93] Torres Decl. ¶ 10 & Exh. G (Order Granting Motions to Dismiss, dated July 18, 2006, at 4).

28  [94] Torres Decl. ¶ 4.

EXHIBIT __8__, PAGE _382_ - 25 -

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1    condoned.

2        **2.    Mattel Is Not Entitled To Discovery Concerning A Family**
3            **Dispute Involving MGA's Chief Executive Officer And His**
4            **Brother**

5        In a similar vein, Mattel seeks documents related to an arbitration proceeding

6    between Isaac Larian and his brother Farhad Larian relating to the former's

7    purchase of the latter's interest in MGA as well as any personnel file MGA

8    maintains regarding Mr. Farhad Larian.[95]   Mattel's request should be rejected.   That

9    arbitration, to which MGA itself was not a party, pertained to a family dispute

10   (which Mr. Farhad Larian voluntarily dismissed) and was governed by a protective

11   order that prohibits the use of any documents or testimony for any purpose other

12   than that arbitration.[96]   Similarly, personnel files contain confidential information

13   protected from disclosure, even in discovery, by California law.   Mattel has made

14   no showing that either testimony from that arbitration or Mr. Farhad Larian's

15   personnel file are in any way relevant to a claim or defense in the present litigation.

16   Particularly given the privacy concerns involved in both family disputes and

17   personnel files, MGA should not be required to produce documents in response to

18   these requests.

19       **3.    Mattel Is Not Entitled To Compel From MGA The**
20           **Documents Of Its Indirect Subsidiary MGA HK, Ltd.**

21       Mattel also seeks documents from MGA that belong to, and are in the

22   possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd.

23   Although this litigation has been going on for nearly three years, Mattel has never

24   sought to obtain documents directly from that subsidiary and, notably, does not

25   claim to have done so in its motion here.   Moreover, Mattel did not even raise this

26   _____

27   [95] *See* Mattel's Second Set of Requests For Production, Request Nos. 41 (seeking documents related to the arbitration proceedings) and 88 (seeking Farhard Larian's personnel file).

28   [96] Torres Decl., ¶ 17.

EXHIBIT ___ 9 , PAGE 383    - 26 -

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1    issue until a conference of counsel more than two years after Mattel filed its

2    complaint. At that time, MGA's counsel offered to explore a reciprocal

3    arrangement with respect to such documents. Mattel's response: that a reciprocal

4    arrangement would be too burdensome for it because Mattel supposedly has more

5    subsidiaries than does MGA.[97] Mattel – the self-proclaimed world's largest toy

6    maker – should not be allowed to engage in such one-sided and inherently unfair

7    discovery tactics on the basis of supposed "burden."

8    ### E.   Mattel Is Not Entitled To Expert Discovery At This Time

9    Finally, Mattel seeks documents related to any testing that MGA or Bryant

10   may have performed on documents that refer or relate to "Bratz."[98] Such a request

11   is premature. The time for designating experts has not yet arrived, and MGA has

12   made no determination as to whom it will be designating as its testifying experts in

13   this litigation. MGA will be prepared to produce expert reports, as well as any

14   other expert materials required by the Federal Rules of Civil Procedure, at the

15   appropriate time.

16   Mattel's argument that MGA has already designated at least one expert and

17   should be compelled now to produce expert documents is improper. In June 2006,

18   Mattel made the belated request that the Court appoint one document expert to test

19   all documents in this case, to be used jointly by the parties. In support of that

20   argument, Mattel implied in its motion papers that MGA and/or Bryant had

21   destroyed evidence by making holes in "Bratz" drawings.[99] Mattel's insinuation in

22   its papers was so strong that Judge Larson issued an order to show cause as to why

23   the Court should not appoint an expert. At argument, however, Mattel's counsel

24   was forced to concede that *no evidence had been* compromised.[100] In fact, as Judge

---

[97] Torres Decl., ¶ 16.

[98] *See* Mattel's Second Set of Requests For Production, Request No. 92.

[99] Torres Decl. ¶ 11, Exh. I (Order Denying Motion For Appointment of Expert Witnesses, dated August 10, 2006).

[100] Torres Decl. ¶ 11, Exh. I (Order Denying Motion For Appointment of Expert

1  Larson later found, MGA and Bryant did the appropriate thing – very shortly after

2  Mattel filed its complaint, MGA and Bryant date-tested certain original "Bratz"

3  drawings while Mattel waited until the documents were too old to be dated and

4  therefore too old to confirm the merits of MGA and Bryant's defenses.[101]  To

5  convince Judge Larson of the complete inaccuracy of Mattel's accusations,

6  however, MGA and Bryant were forced to explain in general terms the testing they

7  had performed.[102]  They did not, at that time or at any time since, designate a

8  testifying expert in this area or disclose the results of their expert's work.  Mattel

9  should not be allowed to benefit from its false and unsubstantiated accusations that

10  required MGA and Bryant even to acknowledge the fact that they had performed

11  expert analysis.  Accordingly, Mattel's request should be denied.

### F.   Mattel's Assertions That MGA Has Withheld Documents Until Mattel Receives Them From Other Sources And/Or Because Of "Evidence" Concerning The Timing Of The Creation And Development of "Bratz" Are Without Merit

15  Throughout its motion, Mattel argues that additional documents must exist

16  because, supposedly, (1) MGA has failed to produce documents until after Mattel

17  receives them from third parties and (2) Mattel has "learned" that extensive work

18  not reflected in the documents produced was performed on "Bratz" before Bryant

19  left Mattel.  Mattel's assertions are without merit, as are its theories concerning the

20  timing of "Bratz" to which these arguments relate.

21  First, Mattel argues that MGA failed to produce documents allegedly related

22  to work performed by Anna Rhee on "Bratz."  MGA initially produced documents

23  related to Ms. Rhee's work on "Bratz" in August 2004.[103]  On January 7, 2005,

---

25  Witnesses, dated August 10, 2006, at 13 (quoting transcript of hearing on July 24, 2006).

26  [101] Torres Decl. ¶ 11, Exh. I (Order Denying Motion For Appointment of Expert Witnesses, dated August 10, 2006, at 14).

27  [102] Torres Decl. ¶ 11, Ex. H (Response of Bryant and MGA to the Order to Show Cause Regarding the Appointment of Expert Witness(es), dated July 21, 2006, at 5).

28  [103] Torres Decl., ¶ 8.

EXHIBIT   8 , PAGE 385

- 28 -

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1   through the attorney for which Mattel paid, Ms. Rhee produced separate invoices of

2   her work at MGA, including work she performed in June 2000 expressly for a

3   different project released in 2000 called "Prayer Angels" or "Angels" for short.

4   MGA thereafter supplemented its production to show that the work performed by

5   Ms. Rhee in June 2000 was in fact for MGA's "Prayer Angels" project, and was not

6   related to "Bratz." [104]   Since that time, MGA has produced numerous documents

7   showing that "Prayer Angels" preceded "Bratz" by a few months and that Ms.

8   Rhee's June 2000 work was for that project. [105]

9        Mattel, however, persists in its wishful belief that work began on "Bratz"

10   earlier than claimed.  Indeed, Mattel previously argued to the District Court that

11   MGA had altered the documents regarding Ms. Rhee's work in June 2000 to reflect

12   work on "Prayer Angels" when she was (allegedly) actually working on "Bratz" [106]

13   Mattel claims that its argument is supported by Ms. Rhee's deposition testimony, in

14   which she stated that the work she performed in June 2000 was for "Bratz" and that

15   references to "Angel" or "Prayer Angel" on her invoices was a cover for work she

16   performed on "Bratz." [107]   After reviewing the briefing on this issue, the District

17   Court rejected Mattel's argument, finding it "hard to accept." [108]   In particular, the

18   District Court noted that none of the invoices submitted by Ms. Rhee reflected any

19   work performed on "Bratz" until December 2000. [109]   Additionally, the District

20   Court stated that for Mattel's argument to be valid, MGA would have had to alter

21   the documents it produced, *as well as those produced by Ms. Rhee herself.* [110]   In

---

22   [104] *Id.*

23   [105] *Id.*

24   [106] *See* Torres Dec. ¶ 11, Exh. I (Order Denying Motion For Appointment of Expert Witnesses, dated August 10, 2006, at 8).

25   [107] *Id.*; Zeller Decl., ¶ 13; Mot. at 7.

26   [108] *See* Torres Dec. ¶ 11, Exh. I (Order Denying Motion For Appointment of Expert Witnesses, dated August 10, 2006, at 8).

27   [109] *See* Torres Dec. ¶ 11, Exh. I (Order Denying Motion For Appointment of Expert Witnesses, dated August 10, 2006, at 8-9).

28   [110] *See* Torres Dec. ¶ 11, Exh. I (Order Denying Motion For Appointment of Expert Witnesses, dated August 10, 2006, at 8-9).

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1    conclusion, the District Court stated that "[a]n alternative and just as plausible

2    explanation is that Rhee is simply mistaken as to when she began performing work

3    on the Bratz project."[111]   Mattel should not now be allowed to persuade the Special

4    Master that MGA is withholding documents about "Bratz" because of Ms. Rhee's

5    mistaken testimony.[112]

6         Mattel next attempts to rely on documents and testimony from long-time

7    Mattel freelancer Steve Linker.  First, as Mattel is well aware, Mr. Linker did not

8    actually work on the original "Bratz" packaging and therefore was not identified as

9    a vendor about whom responsive documents would exist.[113]   Second, many of the

10   documents produced by Mr. Linker were the same drawings MGA produced to

11   Mattel in August 2004.[114]   Other documents were in the possession of Mr. Linker,

12   not MGA, thus MGA could not have produced them.[115]

13        Finally, Mattel's argument that Mr. Linker's testimony shows that "Bratz"

14   was developed earlier than MGA and Bryant claim also fails.  Indeed, Mr. Linker's

15   testimony is consistent with both the testimony previously offered by Bryant, and

16   the actual timing of the creation of "Bratz."  In September, 2006, Mr. Linker, who

17   was represented by the same Mattel-paid lawyer who represented Ms. Rhee,

18   testified that he had met with Bryant briefly in October 2000 and was given a

19   drawing that he understood to have been created for the "Bratz" doll's sculpt.[116]

20   Two years earlier, Bryant similarly testified that he first met with MGA in August

21   2000, first signed an agreement with MGA regarding "Bratz" on October 4, 2000,

---

[111] *See* Torres Dec. ¶ 11, Exh. I (Order Denying Motion For Appointment of Expert Witnesses, dated August 10, 2006, at 9).

[112] Notably, Ms. Rhee's deposition has not been concluded.

[113] Torres Decl., ¶ 20, Exh. K (Linker Dep. at 188:14-191:9, 193:18-194:14).

[114] *Id.*

[115] *Id.* Those documents with Mr. Linker's notes or handwriting on them, however, were only in the possession of Mr. Linker, and thus could not have been produced by MGA.

[116] Torres Decl., ¶ 20, Ex. K (Linker Dep. at 77-78).  Despite this testimony, even a layman's comparison of the drawing provided by Mr. Linker, which had been produced to Mattel in this litigation years before, and the actual dolls shows that the drawing is *not* a drawing of the sculpt.

EXHIBIT _B_ , PAGE _387_   - 30 -

1    and that he met with Mr. Linker about possibly working on "Bratz" prior to leaving

2    Mattel, in early October 2000.[117]   Accordingly, Mr. Linker's testimony is not

3    inconsistent with testimony that has been of record in this case for over two years.

4         In short, Mattel's assertions that MGA has failed to produce documents until

5    Mattel receives them from third parties and that MGA must be withholding

6    documents because MGA has not produced documents in support of Mattel's

7    misguided theory that "Bratz" was created earlier than it actually was are wholly

8    unsupported and without merit.

9    ## G.   Mattel's Motion To Compel Further Interrogatory Responses Should Be Denied As Moot

10

11        Mattel's arguments concerning MGA's responses to Mattel's Second Set Of

12   Interrogatories is equally bereft.   First, Mattel argues that MGA should be

13   compelled to answer those interrogatories because it failed to timely serve its

14   response.   Contrary to Mattel's assertion, however, MGA's response, which was

15   served on May 30, 2006, was timely.   On April 28, 2005, Mattel served its Second

16   Set of Interrogatories on MGA.   MGA's responses were originally due May 31,

17   2005.[118]   On May 20, 2005, however, Judge Manella issued an order staying the

18   proceedings.   At the time the stay was entered, eleven days remained for MGA to

19   respond to Mattel's interrogatories.   Thereafter, on May 17, 2006, Judge Larson

20   issued an order lifting the stay.   Although MGA's response would have been due

21   eleven days later, that date fell on Memorial Day weekend.   Thus, MGA's response

22   was due May 30, 2006.[119]   Consistent with this, MGA served its response to

---

[117] Torres Decl. ¶ 5, Exh. C (Bryant Dep. taken on November 4, 2004, at 10, 22, 221:20-222:14; Bryant Dep. taken on November 5, 2004, at 282, 380-81).

[118] Pursuant to Federal Rule of Civil Procedure 33(b), MGA's response to Mattel's Second Set of Interrogatories would have been due 30 days later, on May 28, 2005. However, May 28, 2005, was a Saturday, and the following Monday, May 30, 2005, was a legal holiday.   Thus, MGA's response to Mattel's interrogatories would not have been due until May 31, 2005.   *See* FED. R. CIV. PROC. 6(a).

[119] *See* FED. R. CIV. PROC. 6(a).   Mattel attempts to argue that MGA's response was due May 24, 2006, only seven days after the stay was lifted.   However, the stay was not designed to reduce the amount of time that the parties had to respond to discovery

EXHIBIT 8 , PAGE 362    - 31 -

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1    Mattel's interrogatories on May 30, 2006.[120]

2         Mattel next argues that MGA's responses to its interrogatories were deficient

3    and implies that it was prejudiced by alleged deficiencies.  In an attempt to avoid

4    further burdening the Court with this issue, MGA is serving supplemental

5    interrogatory responses to cure any alleged deficiencies in its responses.  Notably,

6    however, Mattel has not been prejudiced by any alleged deficiency in MGA's

7    interrogatory responses -- MGA's responses are substantively identical to those

8    provided by Bryant, which Mattel has possessed since June 2006.  Accordingly,

9    Mattel's motion to compel responses to its interrogatories should be denied.

10         //

11         //

12         //

13         //

14         //

15         //

16         //

17         //

18         //

19         //

20         //

21         //

22         //

23         //

24         //

25         //

26    requests.

27    [120] As Mattel is well aware, MGA's response to Mattel's Second Set of Interrogatories
      was post-marked May 30, 2006, and, contrary to Mattel's assertion, MGA did provide a

28    certificate of service indicating service on May 30, 2006.  *See* Torres Decl. ¶ 25.

- 32 -

EXHIBIT _____, PAGE _____

**H.**    **If Sanctions Are Warranted, They Are Warranted Against Mattel**

Finally, Mattel argues that it is entitled to sanctions.  As set forth at length above, and contrary to Mattel's assertions, MGA has already produced or is diligently working to produce documents in response to Mattel's requests.  In contrast, Mattel filed this motion without specifically informing the Special Master of the documents it truly seeks to compel.  For that, Mattel should be sanctioned.

**IV.   CONCLUSION**

For the reasons set forth above, the Court should deny Mattel's motion to compel and for sanctions.

Dated:  February 20, 2007              O'MELVENY & MYERS LLP

By:  Diana M. Torres
Attorneys for MGA Entertainment, Inc.

LA2:824135.1

EXHIBIT ___, PAGE ___