**Exhibit 9**

CONFORMED COPY

LODGED FILED

2007 MAY 16 PM 1:59 2007 MAY 16 PM 2:00

CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. RIVERSIDE CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. RIVERSIDE

BY BY

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone: (415) 774-2611
Facsimile: (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I. INTRODUCTION

On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA"). On February 20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a reply brief. The matter was heard on March 5, 2007. Thereafter the motion was taken under submission pending the parties' submission of a proposed protective order, which was received

on April 23, 2007. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted.

## II. BACKGROUND

### A. Requests for Documents

In June of 2004, two months after Mattel filed suit against Bryant, and before MGA became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one categories of documents, to be produced in ten days. MGA filed a motion to quash, which the court granted because of the short amount of time provided for compliance with the subpoena. The parties met and conferred in July of 2004, and reached an agreement to limit the scope of some of Mattel's requests. In particular, the parties agreed to limit production to the "first generation" Bratz dolls. On August 12, 2004, MGA produced documents.

In 2005, the parties stipulated to supplementing their document productions on May 16, 2005. Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

In September of 2006, MGA made a supplemental production of documents. On February 5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents with legibility problems. On February 20, 2007, MGA produced an additional 224 pages of documents to replace earlier produced documents with legibility problems.

Mattel now moves to compel MGA to produce documents responsive to its requests. As a preliminary matter, Mattel contends that MGA's production is deficient because it contains redactions and cut-off text. Further, Mattel contends that MGA's production is incomplete with respect to essentially five categories of documents. First, Mattel contends that MGA is withholding documents relating to the origins of Bratz and Bryant's work for MGA. Mattel believes that MGA's production is incomplete based upon its review of documents that have been produced by third party Steven Linker. According to Mattel, Linker's documents from October of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant previously represented. Mattel also contends that MGA's responses to the document requests

contain inappropriate limitations, such as MGA's statement that it will produce "relevant and responsive non-objectionable documents" or only that it will produce documents "sufficient" to show when certain dates relating to Bratz occurred. Mattel contends that these "carve outs purport to allow MGA to cherry-pick what it will and will not produce to Mattel." Mattel's Separate Statement at 17:11-13. Mattel also contends that the carve-outs fail to provide notice of what is or is not being withheld. Mattel also contends that MGA's objections based upon its confidentiality concerns or the privacy rights of third parties are unwarranted in light of the protective order in place. In addition, Mattel contends that MGA's objection to producing documents relating to activities or conduct in foreign countries is wholly improper because those documents may contain information relevant to Mattel's claims.

Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether such documents relate to the "first generation" Bratz dolls. Mattel argues that whether the work ultimately resulted in Bratz dolls that were released at a particular time does not matter for discovery purposes. Mattel contends that the works created by Bryant during his Mattel employment are highly relevant because Mattel owns them, regardless of whether they resulted in a Bratz doll released at a particular time.[1]

Mattel next contends that MGA is improperly withholding documents about designs Bryant created on Bratz dolls that were released after June 2001, even though such designs may be derivative of work he did when employed by Mattel. Mattel contends that it is entitled to explore whether such works and the profits from Bratz dolls other than the "first generation" Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability and damages. Furthermore, Mattel asserts that the "first generation" limitation on discovery is improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary information as well as MGA's unfair competition claims.

---

[1] Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion to compel Bryant to produce documents.

Mattel also asserts that MGA is improperly withholding documents relating to products, services and matters other than those relating to "dolls." According to Mattel, it has evidence that Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the Inventions Agreement.

Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel; (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual damages; and (3) payments may show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel.

Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel contends that all agreements between Bryant and MGA are relevant, not just the original September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all documents relating to MGA and Bryant's alleged joint defense agreement because such information would be relevant to demonstrate bias and lack of credibility.

Fifth, Mattel seeks production of all declarations, affidavits and other sworn written statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such information may reveal relevant information about the date of creation of Bryant's Bratz drawings.

In response, MGA denies withholding responsive documents and asserts that it has produced volumes of documents responsive to Mattel's requests. In particular, MGA represents that it has produced all responsive and relevant documents that it was able to locate in response to request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even before the motion was filed, it had agreed to address the vast majority of the issues raised in this motion. In particular, MGA represents that it is diligently working to produce documents related

to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46, 49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100. MGA represents that it informed Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that have been released on the market. In addition, MGA represents that it has agreed to produce documents relevant to Bratz or Prayer Angels that it received from Union Bank. More specifically, MGA represents that it agreed to review and produce documents provided to it by Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for Bratz or Prayer Angels. MGA also represents that it has agreed to produce royalty statements. Therefore, MGA views the motion as unnecessary.

MGA next contends that Mattel's motion should be denied for the following additional reasons. First, MGA contends that Mattel is not entitled to MGA's product design documents for unreleased products. MGA asserts that its product design documents for its unreleased toy concepts are among its most highly valuable trade secrets. Furthermore, MGA contends that designs and drawings for products currently under development, over six years after Bryant first created his original Bratz drawings, have no relevance to any of Mattel's claims. In the event that documents relating to unreleased products are ordered produced, MGA requests a protective order under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically than the current protective order provides. In the alternative, MGA requests that any order compelling production of documents relating to unreleased products should essentially be stayed until after MGA's products are publicly released.

Second, MGA contends that Mattel is not entitled to information concerning Bryant's attorneys' fees because the information is privileged. Furthermore, MGA contends that the information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's Opposition at 24:9-12.[2]

Third, MGA asserts that Mattel is not entitled to review all non-public witness statements and litigation documents concerning Bratz for a variety of reasons, including because Mattel has refused to produce similar types of documents. More significantly, MGA contends that Mattel's requests for non-public witness statements are "a blatant attempt to avoid the discovery limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations imposed by this Court." MGA's Opposition at 25:6-7. MGA explains its position as follows. MGA is involved in litigation against a number of counterfeiters and infringers in Asia. In 2003, Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel abandoned its claims based upon "Toon Teens" in this court. Thereafter, those defendants took the position that MGA did not own, and therefore could not enforce, the rights to Bratz. MGA was thus forced to litigate the issue of ownership. MGA contends that "[i]n effect, by prompting foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created a situation in which MGA has been forced to give testimony and provide evidence related to issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

Fourth, MGA contends that Mattel is not entitled to documents concerning a family dispute between MGA's chief executive officer and his brother because such documents are in no way relevant to this lawsuit. MGA explains that the brothers were involved in an arbitration proceeding relating to MGA's CEO's purchase of his brother's interest in MGA. Moreover, MGA contends that the brothers were bound by a protective order prohibiting the use of any documents or testimony for any purpose other than the arbitration.

---

[2] Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel files because they contain confidential information and are not relevant to the lawsuit. Sixth, MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd. Lastly, MGA objects to producing documents relating to any testing performed to determine the date that Bratz documents were created. MGA contends that such discovery is premature and should not proceed until experts are designated.

B. Interrogatories

On April 28, 2005, Mattel served its Second Set of Interrogatories. On May 20, 2005, however, the district court stayed the action. On May 17, 2006, the district court lifted the stay. On May 30, 2006, MGA responded to the interrogatories.

Mattel contends that MGA's responses to the interrogatories were untimely. Further, Mattel contends that the interrogatory responses to numbers five through eleven are deficient because they lack substantive information and consist almost entirely of objections. MGA responds that the motion is moot because it is prepared to provide supplemental responses to its interrogatories. MGA does not otherwise assert any additional grounds for opposing Mattel's motion to compel responses to interrogatories.

## III. DISCUSSION

A. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

B. Document Requests

1. Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

The requests above seek discoverable information regarding the origins of Bratz and Bryant's work for MGA. MGA represents that it has produced all responsive documents in response to request nos. 6, 26, 27, 32, 33, 34, 35, 55,and 69 (MGA's Opposition at 13:4-5), and is "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99, and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at 14:1-4 and note 39). MGA does, however, object to producing design documents for unreleased products and documents from MGA Hong Kong.

As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted its production to "relevant and responsive non-objectionable documents" or documents "sufficient" to show when events relating to Bratz occurred. These restrictions suggest that MGA might be excluding documents that are responsive to the request based upon its unilateral determination of what is "relevant" or "sufficient." Mattel shall provide the responses to document requests ordered herein without these restrictions.

Design Documents for Unreleased Products

MGA's design documents for unreleased products are relevant to Mattel's claims and defenses and must be produced. See Order Modifying Protective Order. On April 23, 2007, the parties submitted a stipulation to modify the existing protective order to limit the disclosure of design documents for unreleased products that constitute trade secret information. See Stipulation

to Modify Protective Order; And Proposed Order Thereon ("stipulation"). The parties' stipulation has been approved and entered as an order of the court. MGA is ordered to produce design documents for unreleased products that are responsive to Mattel's document requests in accordance with the terms of the stipulation and order.

Documents from MGA Hong Kong

Documents relating to activities or conduct in foreign countries are relevant and discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with Bratz. Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel provides reciprocal discovery from its subsidiaries.

Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in the context of this motion, and therefore is not addressed herein. MGA is ordered to produce documents from MGA Hong Kong.

Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100.

2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59, 61, 63, 66, 67, 70, 88, 90, 91

Mattel contends that MGA is improperly limiting its document production to the "first generation" Bratz dolls. MGA represents, however, that it has agreed to produce subsequent generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design documents for yet unreleased products.

As stated previously, design documents for yet unreleased products are relevant and discoverable. See Order Modifying Protective Order. Accordingly, MGA is ordered to produce all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59, 61, 63, 66, 67, 70, 88, 90, and 91.

//

//

3. MGA's Payments to Bryant (Nos.43, 45)

MGA represents that it has already agreed to produce documents related to Bratz, without limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless, Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's motion is granted with respect to request nos. 43 and 45.

4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

MGA represents that it has already agreed to produce non-privileged documents responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or indemnity agreements between MGA and Bryant .

Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility. Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any responsive documents withheld on the basis of a privilege must be properly identified in a privilege log.

5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40, 41,

In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits, and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel anticipates that these documents could provide evidence relating to the conception date for Bratz.

Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

[3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

EXHIBIT 9 , PAGE 400

that MGA was developing Bratz by early 2000. Nevertheless, MGA objects to producing documents from the Larians' arbitration on the grounds that the arbitration was governed by a protective order that prohibits the use of any documents or testimony for any purpose other than the arbitration. MGA, however, has not provided any evidence of the protective order. Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6. Documents Regarding Date-Testing (Request No. 92)

Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling from any documents that refer or relate to Bratz or Bryant, including without limitation any such testing or sampling in connection with ink, paper or chemical analysis to date any such documents and including without limitation all results and reports relating thereto." MGA contends that the request is premature, and should proceed in the course of expert discovery.

The request calls for relevant discovery and there is no basis for delaying production of responsive documents, other than expert reports. The timing of expert reports is governed by Rule 26(a)(2)(C), Fed.R.Civ.P. Accordingly, Mattel's motion is granted as to request no. 92.

C. Interrogatories

Mattel contends that MGA's responses to interrogatories were untimely, and therefore MGA has waived its objections to the interrogatories. Pursuant to Rule 33(b)(3), Fed.R.Civ.P., responses to interrogatories are due thirty days after service. In this case, Mattel served its interrogatories on April 28, 2005, and responses were initially due May 31, 2005. The district court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were served. The district court lifted the stay on May 17, 2006.

---

[4] In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's personnel file based upon privacy grounds. The personnel file may have documents relevant to Bratz, and therefore should be produced. The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

Neither party has cited to any caselaw governing the calculation of the 30-day period when there is an intervening stay in discovery. In the absence of any caselaw, MGA's responses will be treated as timely in order to preserve any valid objections MGA may have asserted.

Interrogatory No. 5 seeks the identity of each and every person who was involved in the conception, origin, creation, design, development, sculpting, engineering, reduction to practice, tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz before December 31, 2001, including a description of each person's role and the start and end dates of each person's involvement. In response, MGA asserted numerous objections, but did provide the names of five individuals.

The interrogatory clearly seeks information relevant to the claims at issue. MGA's objections are without merit. The interrogatory is not vague, ambiguous, compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or seeks information protected by the attorney-client privilege. Furthermore, MGA's response is incomplete insofar as it fails to provide the description of each person's role and the start and end dates of each person's involvement. Accordingly, MGA is ordered to provide a complete response to Interrogatory No. 5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 6 for the reasons previously discussed in connection with Interrogatory No. 5.

Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to December 31, 2001. In response, MGA asserted numerous objections and did not provide any substantive information.

MGA's objections are without merit. The interrogatory clearly seeks information relevant to establishing when Bryant first conceived Bratz. The interrogatory is not vague, ambiguous, compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is

unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or seeks information protected by the attorney-client privilege. Accordingly, MG is ordered to provide a complete response to Interrogatory No. 7.

Interrogatory No.8 asks MGA to identify each and every embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 8 for the reasons previously discussed in connection with Interrogatory No. 7.

Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling or painting of Bratz. In response, MGA asserted numerous objections and did not provide any substantive information.

The interrogatory seeks information relevant to establishing when Bryant first conceived Bratz. Furthermore, MGA's boiler-plate objections are unsubstantiated. Accordingly, MGA is ordered to provide a complete response to Interrogatory No. 9.

Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on which each such instance occurred, the location of each show or exhibit, and the identity of persons with knowledge of the shows or exhibits. In response, MGA asserted numerous objections and provided the following information: Hong Kong Toy Fair in Hong Kong in or about January 2001 and New York Toy Fair, New York, in or about February 2001.

Once again, MGA's boiler-plate objections are unsubstantiated. The information is potentially relevant to establish when Bryant conceived Bratz. Further, the response is incomplete insofar as it fails to identify any persons with knowledge. Therefore, MGA is ordered to provide a complete response to Interrogatory No. 10.

Interrogatory No. 11 requires MGA to state the "number for each and every telephone, including without limitation each office, home and cell phone number, in the name of, for the benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

January 1, 1998 through the present, and IDENTIFY each and every carrier (including without limitation any long-distance carrier) for each such number. In response, MGA asserted numerous boiler-plate objections.

Once again, MGA has failed to substantiate any of its objections with supporting declarations or legal authorities. Accordingly, all objections are overruled and MGA is ordered to provide a full response to Interrogatory No. 11.

## IV. CONCLUSION

For the reasons set forth above, Mattel's motion to compel production of documents is granted. MGA shall produce all non-privileged documents that are responsive to the requests identified in this Order. Further, MGA shall produce all documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine. Mattel's motion to compel interrogatory answers is also granted. MGA shall produce documents and provide responses to interrogatories consistent with this Order, and produce a privilege log in compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007. Mattel's request for sanctions is denied.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

Dated: May 15, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

**PROOF OF SERVICE BY E-MAIL**

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

**Exhibit  10**

THOMAS J. NOLAN (Bar No. 066992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
E-mail: tnolan@skadden.com

RAOUL D. KENNEDY (Bar No. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111
Telephone: (415) 984-6400
Facsimile: (415) 984-2698
E-mail: rkennedy@skadden.com

Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation<br><br>Defendant. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**MGA ENTERTAINMENT, INC.'S SUPPLEMENTAL RESPONSES TO MATTEL, INC.'S AMENDED FOURTH SET OF INTERROGATORIES**<br><br>Honorable Stephen G. Larson<br>Courtroom 1 |
| Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Discovery Cut-Off: March 3, 2008 |

**PROPOUNDING PARTY:** **MATTEL, INC. ("MATTEL")**

**RESPONDING PARTY:** **MGA ENTERTAINMENT, INC.**

**SET NUMBER:** **AMENDED FOURTH**

EXHIBIT 10, PAGE 406

11/30

PRELIMINARY STATEMENT

The General Response set forth herein applies to all responses that MGA Entertainment, Inc. ("MGA") is providing in response to these interrogatories (the "Interrogatories") or may in the future provide in response to any discovery request in this action. The Response is made without waiving, or intending to waive but, on the contrary, expressly reserving: (a) the right to object, on the grounds of competency, privilege, relevancy or materiality, or any other proper grounds, to the use of the Response, for any purpose in whole or in part, in any subsequent step or proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other interrogatories or other discovery procedures; and (c) the right at any time to revise, correct, add to, or clarify any of the responses propounded herein.

The Response reflects only the present state of MGA's discovery regarding the information that Mattel seeks. Discovery and other investigation or research concerning this litigation are continuing. It is anticipated that further discovery, independent investigation, and legal research and analysis will supply additional facts and meaning to the known facts, as well as establish entirely new factual conclusions, all of which may lead MGA to discover other information responsive to these Interrogatories. MGA therefore reserves the right to amend or supplement this Response at any time in light of future investigation, research or analysis, and also expressly reserves the right to rely on, at any time, including trial, subsequently discovered information omitted from this Response as a result of mistake, error, oversight or inadvertence. MGA does not hereby admit, adopt or acquiesce in any factual or legal contention, assertion or characterization contained in the Interrogatories or any particular request therein, even where MGA has not otherwise objected to a particular interrogatory, or has agreed to provide information responsive to a particular interrogatory.

EXHIBIT 10, PAGE 407

No incidental or implied admissions are intended by this Response.

These responses should not be taken as an admission that MGA accepts or admits the existence of any facts set forth or assumed by any instruction, definition or interrogatory.

## GENERAL OBJECTIONS

MGA responds to these Interrogatories subject to the following general objections and limitations, each of which is incorporated into each and every response as though fully set forth therein:

1. MGA objects to these Interrogatories to the extent they seek information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA shall not produce such information in response to Mattel's interrogatories. Any disclosure of such protected or privileged information is inadvertent and shall not be construed as a waiver of those privileges or protections. MGA reserves the right to correct the record with regard to any such inadvertent disclosure, as provided for in the Protective Order governing this case.

2. MGA objects to these Interrogatories to the extent they seek information not relevant to the claims or defenses of any party to this action and not reasonably calculated to lead to the discovery of admissible evidence.

3. MGA objects to these Interrogatories to the extent they seek information which by reason of public filing or otherwise is already in Mattel's possession or is readily accessible to Mattel.

4. MGA objects to these Interrogatories to the extent they seek the disclosure of information (1) not within its possession, custody or control; (2) that MGA cannot locate after a reasonably diligent search; or (3) that refer to persons, entities, or events not known to MGA. Such instructions, definitions, or requests are

objectionable where they seek to require more of MGA than any obligation imposed by the Federal Rules of Civil Procedure; subject MGA to unreasonable and undue annoyance, oppression, burden, and expense; and/or seek to impose upon MGA an obligation to investigate or discover information or materials from sources equally accessible to Mattel.

5. MGA objects to these Interrogatories to the extent they are overbroad and unduly burdensome.

6. MGA objects to the definitions and instructions to the extent such definitions and instructions purport to enlarge, expand, or alter in any way the plain meaning and scope of any specific term or specific interrogatories on the ground that such enlargement, expansion, or alteration renders such a term or request vague, ambiguous, unintelligible, overly broad, unduly burdensome, and/or uncertain.

7. MGA objects to the terms YOU, YOUR, BRYANT, LARIAN, MGA, MATTEL, AFFILIATES, PERSON, PERSONS, DESIGN, DESIGNS, BRATZ, SOLD, SELL, SALE, BRATZ DOLL, BRATZ PRODUCT, BRATZ MOVIE, BRATZ TELEVISION SHOW, BASED ON, and REFER OR RELATE TO on the grounds that these terms render the interrogatories overbroad, unduly burdensome, vague and ambiguous and to the extent that they could be read to call for legal conclusions in responding to the interrogatories, including, by way of example and without limitation, as follows:

(a) MGA objects to the definition of the term "BRATZ" (Definitions ¶ 9) as vague, ambiguous, overly broad and unduly burdensome, and designed to mislead and confuse the trier of fact. The definition includes "any project, product, doll or DESIGN ever known by [the Bratz] name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term 'Bratz' (whether in whole or in part and regardless of what such product, doll

or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the 'Bratz' line, and each version or iteration of such product, doll or DESIGN or any portion thereof," and it goes on. By incorporating the definition of DESIGN, the overly broad definition of BRATZ includes two-dimensional and three-dimensional representations, including "works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, inventions and/or improvements . . . ." (Definitions ¶ 8.) These convoluted and multi-part definitions combine to render the interrogatories vague, ambiguous and overly broad, and to include within the term BRATZ things that do not fairly represent the Bratz line of dolls, accessories and related products that are the subject of this case. In responding to these interrogatories, MGA will interpret the term BRATZ to mean the line of dolls introduced by MGA to the market for sale in May or June of 2001 and subsequent dolls, accessories and other products known as Bratz or associated by MGA with the Bratz line of dolls;

(b) MGA objects to the definition of the term "BRATZ DOLL" (Definitions ¶ 12) as vague, ambiguous, overly broad and unduly burdensome, and designed to mislead and confuse the trier of fact. The definition includes any doll that "REFERS OR RELATES TO BRATZ." Mattel's definition of the terms "BRATZ" and "REFERS OR RELATES" renders the definition of "BRATZ DOLL" unintelligible because MGA cannot know, by way of example, what dolls may "deal with, comment on, respond to, . . . or pertain" (Definitions ¶ 17) to "BRATZ." In responding to these interrogatories, MGA will interpret the term "BRATZ DOLL" to mean the line of dolls introduced by MGA to the market for sale in May or June of 2001 and subsequent dolls known as Bratz;

(c) MGA objects to the definition of the term "BASED ON" as vague, ambiguous, overly broad and unduly burdensome, and designed to mislead

and confuse the trier of fact. The definition strays far from the English meaning of "based on" by including terms loaded with legal significance in intellectual property law, such as "substantially similar to," or "a derivative of." In responding to these interrogatories, MGA will not interpret the term "BASED ON," but rather will respond using "based on" in its normal accepted meaning.

(d) MGA objects to the terms "IDENTIFY" or "IDENTITY" as overbroad, unduly burdensome, vague, ambiguous, and oppressive. Mattel's definition of these terms inherently call for answers to multiple discrete questions or subparts to questions. For example, when those terms are used to reference any BRATZ PRODUCT, the use of those terms requests at least 6 different and distinct facts: (a) the full name of the product; (b) the number of the product; (c) the SKU of the number; (d) any other applicable designation of the product useful for identification; (e) the period of time during which the product was, has been, or will be sold; and (f) the identity of each person who has licensed from YOU the right to sell such BRATZ PRODUCT. Therefore, any interrogatory that includes or incorporates the terms IDENTIFY or IDENTITY are necessarily compound and should be posed as separate interrogatories.

(e) MGA objects to the term "any" and "REFER OR RELATE TO" on the grounds and to the extent that they are overbroad, unduly burdensome, and/or are vague and ambiguous in the context of the interrogatories as written and as those interrogatories would be plainly understood absent Mattel's definitions.

8. MGA objects to these interrogatories to the extent that they may unfairly seek to restrict the facts on which MGA may rely at trial. Discovery has not been completed and MGA is not yet necessarily in possession of all the facts and documents upon which MGA intends to rely. All of the responses submitted herewith are tendered to Mattel with the reservation that the responses are submitted without limiting the evidence on which MGA may rely to support the contentions and defenses that MGA may assert at the trial of this action and to rebut or impeach

the contentions, assertions and evidence that Mattel may present. MGA reserves the right to supplement or amend these responses at a future date.

9. MGA objects to each interrogatory to the extent that it seeks information that will be the subject of expert witness testimony and that is therefore premature.

10. In responding to these interrogatories, MGA has not and will not comply with any instructions or definitions that seek to impose requirements in addition to those imposed by the Federal Rules of Civil Procedure and any applicable local rule, any orders entered by the Court in this Action, or other applicable law.

11. Consistent with Rule 33(d) of the Federal Rules of Civil Procedure, MGA objects to providing responses to interrogatories that can be derived from documents that have or will be produced (when requested in compliance with Rule 26) and where the burden to derive such information is substantially the same for Mattel as it is for MGA.

12. MGA objects to each interrogatory to the extent that it seeks the disclosure of confidential, proprietary, or trade-secret information.

13. MGA objects to each interrogatory to the extent that it calls for a legal conclusion.

14. MGA objects to several of those interrogatories that appear to be directed at other parties to the litigation and not to MGA, given the nature of the claims asserted against MGA in this case.

15. MGA reserves the right to object on any ground at any time to such other or supplemental discovery requests as Mattel may propound involving or relating to the same subject matter of these interrogatories.

16. To the extent MGA responds to an interrogatory, it does so without waiving or intending to waive but rather, on the contrary, preserving and intending to preserve, its contention that anything Mr. Bryant did on weekends, evenings, vacation and any other time outside ordinary business hours was not done

while he was working for Mattel. MGA's response may not be taken as an admission that the information it provides in its response in any way reflects or evidences work performed by Mr. Bryant while he was working for Mattel or that MGA adopts or agrees with any fact or legal conclusion assumed, presumed or contained in Mattel's interrogatory.

17. MGA objects to each of Mattel's interrogatories because Mattel has propounded more than 50 interrogatories, including discrete subparts. Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

18. MGA's responses are made based on its understanding and interpretation of each interrogatory. MGA reserves the right to supplement its objections and responses should Mattel subsequently put forth an interpretation of any interrogatory that differs from those of MGA.

**OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES**

Without waiving or departing from its General Response and General Objections, and specifically incorporating them in its response to each Interrogatory below, MGA makes the following additional objections and responses to specific Interrogatories:

**INTERROGATORY NO. 42:**

State all facts that support YOUR contention, if YOU so contend, that any BRATZ DOLLS are not BASED ON BRATZ DESIGNS created by BRYANT on or before October 19, 2000, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**RESPONSE TO INTERROGATORY NO. 42:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including without limitation MGA's objection to the definition of the terms BASED ON, BRATZ DOLLS,

BRATZ, DESIGN, IDENTIFY and REFER OR RELATE TO, and further objects to this interrogatory on the ground that it is overbroad, unduly burdensome, vague and ambiguous.

MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA objects to this interrogatory to the extent it calls for a legal conclusion.

MGA further objects to this interrogatory on the ground that it is premature because the invention, creation, conception, or reduction to practice of Bratz (and other legal concepts that may be relevant) will be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA will identify its experts and make related disclosures in accordance with the Court's orders and applicable rules.

MGA further objects to this interrogatory on the grounds that it seeks information that is not relevant to the claims or defenses of any party to the action and is not reasonably calculated to lead to the discovery of admissible evidence because the INVENTIONS AGREEMENT executed by Carter Bryant in or around January 1999, purports to state that any inventions conceived or reduced to practice by him during his employment with Mattel would be owned by Mattel. The references to the conception and reduction to practice of an invention are terms of art in patent law. Accordingly, copyright law principles of substantial similarity, copying, and derivative works are not relevant to the INVENTIONS AGREEMENT which, by its terms, involves only principles of patent law.

MGA further objects on the ground that this interrogatory is an

overbroad and unduly burdensome contention interrogatory to the extent it asks for "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless").

MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all* DOCUMENTS" (emphasis added).

MGA further objects to this interrogatory because Mattel has propounded more than 50 interrogatories. Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727].

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 42:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including without limitation MGA's objection to the definition of the terms BASED ON, BRATZ DOLLS, BRATZ, DESIGN, IDENTIFY and REFER OR RELATE TO, and further objects to this interrogatory on the ground that it is overbroad, unduly burdensome, vague and ambiguous.

MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or

any other applicable jurisdiction. MGA objects to this interrogatory to the extent it calls for a legal conclusion.

MGA further objects to this interrogatory on the ground that it is premature because the invention, creation, conception, or reduction to practice of Bratz (and other legal concepts that may be relevant) will be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA will identify its experts and make related disclosures in accordance with the Court's orders and applicable rules.

MGA further objects to this interrogatory on the grounds that it seeks information that is not relevant to the claims or defenses of any party to the action and is not reasonably calculated to lead to the discovery of admissible evidence because the INVENTIONS AGREEMENT executed by Carter Bryant in or around January 1999, purports to state that any inventions conceived or reduced to practice by him during his employment with Mattel would be owned by Mattel. The references to the conception and reduction to practice of an invention are terms of art in patent law. Accordingly, copyright law principles of substantial similarity, copying, and derivative works are not relevant to the INVENTIONS AGREEMENT which, by its terms, involves only principles of patent law.

MGA further objects on the ground that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless").

MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession,

custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all* DOCUMENTS" (emphasis added).

Subject to and without waiving the foregoing objections, MGA responds as follows:

Should there be a finding that any intellectual property rights associated with the drawings completed by Carter Bryant in August or September, 1998, and/or subsequent drawings, sketches, and/or representations that Bryant created prior to October 4, 2000, are owned by Mattel, it is MGA's position that the first generation of Bratz dolls, first "reduced to practice," and first expressed in a tangible medium, after October 20, 2000, and all subsequent Bratz dolls, are not substantially similar to, are not a copy of, and are not derivative of Carter Bryant's aforementioned works.

MGA further responds that said first generation of Bratz dolls differ markedly and significantly from the drawings or designs completed by Carter Bryant prior to October 19, 2000. First, with respect to the three-dimensional "dummy" to which Bryant referred at his deposition, it had no material resemblance to the first generation of Bratz dolls. Second, with respect to Carter Bryant's drawings, MGA points out that two-dimensional drawings do not translate into three-dimensional dolls without original, creative effort. Third, there are recognizable and material differences in the total overall look and feel of the first generation Bratz dolls compared to Carter Bryant's drawings completed prior to October 21, 2000. Fourth, there are recognizable and material differences in individual elements of the first generation Bratz dolls compared to Carter Bryant's drawings completed prior to October 21, 2000, including, but not limited to, with respect to the following: hair styles; hair colors; facial expression; depiction of noses; eye art; extent of detail of eye art; lip art; eyebrow art; proportions of the bodies; posture; spatial arrangement of hands; wrists and arms; and proportions and spatial arrangements of the eyes, noses, and mouths. Additional details regarding such differences will be the subject

of expert disclosures and will be provided at a later time.

With respect to any design relating to the Bratz concept that Carter Bryant may have contributed after October 4, 2000 and before October 21, 2000, i.e., during a period that he was performing such services for MGA pursuant to a freelance contract, MGA notes that any such design would have incorporated the original and/or creative input of other artists working for or on behalf of MGA on the Bratz concept, which was owned by MGA as a consequence of the October 4, 2000 transfer of rights from Bryant to MGA. In addition, the first generation of Bratz dolls, and all subsequent Bratz dolls, are not substantially similar to, derivative of, and/or a copy of any work performed or created by Carter Bryant from October 4-October 20, 2000.

The following persons have knowledge of said facts: Isaac Larian; Carter Bryant; Margaret Leahy; Veronica Marlow; Anna Rhee; Mercedeh Ward; Sarah Halpern; Paula Treantafelles (Garcia); Steve Tarmichael; Rebecca Harris; Cecilia Kwok; David Dees; Jesse Ramirez; and Samuel Wong.

The following documents may be relevant to these facts: all DOCUMENTS that refer to or evidence the work performed by MGA employees and freelancers toward the reduction to practice of the first generation of Bratz dolls during the period after October 20, 2000 through June 1, 2001, including but not limited to: Carter Bryant's drawings; the Bratz dolls; My Scene dolls; DOCUMENTS evidencing the development of the first generation of Bratz dolls by employees and freelance artists working for MGA; and invoices submitted by freelancers for work performed on the Bratz Project. The documents evidencing this work are too numerous to identify individually.

**INTERROGATORY NO. 43:**

For each concept, design, product, product packaging or other matter that YOU contend MATTEL copied or infringed, including but not limited to those identified in MGA's Responses To Mattel, Inc.'s First Set Of Interrogatories Re

Claims Of Unfair Competition, Response To Interrogatory No. 2 (and any Supplemental Responses to such Interrogatory), state the date that each such concept, design, product, product packaging or other matter was conceived, and IDENTIFY all PERSONS with knowledge of, and all DOCUMENTS that REFER OR RELATE TO, the foregoing.

**RESPONSE TO INTERROGATORY NO. 43:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including without limitation its objections to the terms IDENTIFY and REFER OR RELATE.

MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory to the extent it calls for a legal conclusion.

MGA also objects to this interrogatory on the ground that it is premature because the invention, creation, conception, or reduction to practice of Bratz (and related issues) will be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA will identify its experts and make related disclosures in accordance with the Court's orders and applicable rules.

MGA further objects to this interrogatory to the extent that it seeks information that is not relevant to the claims or defenses of any party to this action and is not reasonably calculated to lead to the discovery of admissible evidence; the term "conceived" is not a legal term of art that is relevant to MGA's affirmative claims for false designation of origin, affiliation, association or sponsorship, unfair

competition, dilution, and unjust enrichment.

MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "IDENTIFY *all* PERSONS...and *all* DOCUMENTS" (emphasis added).

MGA further objects to this interrogatory because Mattel has propounded more than 50 interrogatories. Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

Subject to and without waiving the foregoing objections, MGA responds as follows: MGA is willing to meet and confer with Mattel regarding this interrogatory and the obligation of Mattel to supplement its responses to MGA's First Set of Interrogatories.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 43:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including without limitation its objections to the terms IDENTIFY and REFER OR RELATE.

MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory to the extent it calls for a legal conclusion.

MGA also objects to this interrogatory on the ground that it is premature because the invention, creation, conception, or reduction to practice of Bratz (and

related issues) will be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA will identify its experts and make related disclosures in accordance with the Court's orders and applicable rules.

MGA further objects to this interrogatory to the extent that it seeks information that is not relevant to the claims or defenses of any party to this action and is not reasonably calculated to lead to the discovery of admissible evidence; the term "conceived" is not a legal term of art that is relevant to MGA's affirmative claims for false designation of origin, affiliation, association or sponsorship, unfair competition, dilution, and unjust enrichment.

MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "IDENTIFY *all* PERSONS...and *all* DOCUMENTS" (emphasis added).

Subject to and without waiving the foregoing objections, MGA responds as follows:

MGA incorporates by reference its response to Interrogatory No. 3 of Mattel's First Set of Interrogatories re Claims of Unfair Competition (including supplemental responses thereto) as though fully set forth herein. MGA notes that, in general, at MGA, product development is completed 7-8 months before the first invoice date, although that time period could be reduced in certain situations to 5-6 months.

**INTERROGATORY NO. 44:**

For each concept, design, product, product packaging or other matter that YOU contend MATTEL copied or infringed, including but not limited to those identified in MGA's Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of Unfair Competition, Response To Interrogatory No. 2 (and any

Supplemental Responses to such Interrogatory), state the date that each such concept, design, product, product packaging or other matter was first fixed in any tangible medium of expression (if ever), and IDENTIFY all PERSONS with knowledge of, and all DOCUMENTS that REFER OR RELATE TO, the foregoing.

**RESPONSE TO INTERROGATORY NO. 44:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including without limitation its objections to the terms IDENTIFY and REFER OR RELATE. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA also objects to this interrogatory to the extent that it calls for a legal conclusion.

MGA also objects to this interrogatory on the ground that it is premature because the invention, creation, conception, or reduction to practice of Bratz (and related issues) will be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA will identify its experts and make related disclosures in accordance with the Court's orders and applicable rules.

MGA further objects to this interrogatory to the extent that it seeks information that is not relevant to the claims or defenses of any party to this action and not reasonably calculated to lead to the discovery of admissible evidence because the phrase "fixed in a tangible medium of expression" is a legal term of art that does not have relevance to MGA's affirmative claims, which are for false designation of origin, affiliation, association or sponsorship, unfair competition,

dilution, and unjust enrichment.

MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "IDENTIFY all PERSONS...and all DOCUMENTS" (emphasis added).

MGA further objects to this interrogatory because Mattel has propounded more than 50 interrogatories. Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

Subject to and without waiving the foregoing objections, MGA responds as follows: MGA is willing to meet and confer with Mattel regarding this interrogatory and the obligation of Mattel to supplement its responses to MGA's First Set of Interrogatories.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 44:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including without limitation its objections to the terms IDENTIFY and REFER OR RELATE. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA also objects to this interrogatory to the extent that it calls for a legal conclusion.

MGA also objects to this interrogatory on the ground that it is premature because the invention, creation, conception, or reduction to practice of Bratz (and

related issues) will be the subject of expert testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA may seek to introduce at trial. MGA will identify its experts and make related disclosures in accordance with the Court's orders and applicable rules.

MGA further objects to this interrogatory to the extent that it seeks information that is not relevant to the claims or defenses of any party to this action and not reasonably calculated to lead to the discovery of admissible evidence because the phrase "fixed in a tangible medium of expression" is a legal term of art that does not have relevance to MGA's affirmative claims, which are for false designation of origin, affiliation, association or sponsorship, unfair competition, dilution, and unjust enrichment.

MGA further objects to the extent that this interrogatory seeks information that is outside MGA's knowledge and is not in MGA's possession, custody, or control. In particular, MGA objects to this interrogatory to the extent that it requests that MGA "IDENTIFY all PERSONS...and all DOCUMENTS" (emphasis added).

Subject to and without waiving the foregoing objections, MGA responds as follows:

EXHIBIT 10, PAGE 424

MGA incorporates by reference its responses to Interrogatory No. 3 of Mattel's First Set of Interrogatories re Claims of Unfair Competition (including supplemental responses thereto) and Interrogatory No. 43 (including supplemental responses thereto) as though fully set forth herein.

DATED: November 30, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: ______________________
Thomas J. Nolan
Attorneys for Counter-Defendants, MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LTD., and MGAE de MEXICO S.R.L.de C.V.

EXHIBIT 10, PAGE 425

19

MGA'S SUPPL. RESPONSES TO MATTEL INC.'S AMENDED 4TH SET OF ROGS NO. CV 04-9049 SGL (RNBx)

Exhibit 11

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

Exhibit 12

CONFORMED COPY

FILED

2007 JAN 26 PM 12: 25

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111
415-774-2611
415-982-5287 (fax)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| CARTER BRYANT, an individual,<br>Plaintiff,<br>v.<br>MATTEL, INC., a Delaware corporation,<br>Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| CONSOLIDATED WITH MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I. INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1] On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief. The matter was heard via telephonic conference call on January 24, 2007. Having

[1] Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

EXHIBIT 12, PAGE 440 1-26

EXHIBIT 12, PAGE 441

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel Production of Documents is GRANTED.

## II. BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of Bratz dolls now rival Mattel's Barbie doll.

### A. Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed suit against its former employee Bryant in state court asserting claims for breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel employed Bryant as a product designer from September 1995 through April 1998, and from January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee Confidential Information and Inventions Agreement which required him not to engage in any employment or business other than for Mattel, or invest or assist in any manner any business competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that he had not worked for any of Mattel's competitors in the prior twelve months and had not engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

provide product design services on a "top priority" basis.[2] The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA. Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel. In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction). Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA. The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls. In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls. In August of 2004, the district court remanded the action.

B. Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement. Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

[2] Bryant has already produced his agreement with MGA. Therefore, the existence of the agreement does not appear to be in dispute.

C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to compel. The parties informed the court that they would submit a stipulation and order. See Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel Production of Documents, counsel will be submitting a stipulation and order which will be dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to memorialize the parties' meet and confer session, but were unable to reach final agreement because Bryant insisted upon including the following sentence in the stipulation: "The stipulation resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23. From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel waive its right to all further discovery in connection with its requests. Mattel proposed the following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in this Stipulation shall preclude or limit Mattel from seeking further discovery on any matter, including as to matter on which the parties could not reach complete agreement, or preclude or limit any right of Bryant to object or resist to such discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was unacceptable to Bryant. At the direction of the Discovery Master, the parties met and conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

1,600 pages of documents to date. Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3] Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

J. Mattel's Motion to Compel Production of Documents

Mattel's motion has three parts. First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents: (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel. Mattel's Motion at 6. Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations. According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

[3] According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear. Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed. Mattel again obtained a court order compelling the deposition and sanctions. To date, only Bryant and Larian have been deposed.

his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel. He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004. Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of 2004, he produced the following categories of documents: documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

[4] There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center. MGA denies the accusation.

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

requests and that the stipulation controlled to the extent they were inconsistent. Bryant's Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process and asks the Discovery Master to order the disposition of this motion in a manner consistent with the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks the Discovery Master to order Mattel not to revisit any of the requests that were the subject of Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone records and financial information because these records are protected by privacy rights. Lastly, Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit was filed.

## III. DISCUSSION

### A. The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

The parties' extensive submissions make it clear that the parties did not resolve the issues raised in the instant motion. The parties met and conferred extensively and in good faith, reaching compromises on virtually all categories of documents in dispute. Despite their efforts, however, the parties were ultimately unable to execute a binding stipulation because they were unable to agree on any provision to govern Mattel's future right to pursue additional discovery from Bryant. It is clear that the parties deemed it necessary to include such a provision in the draft stipulation in order to protect their respective positions. Because the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48: Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55: Documents Relating to Bratz's Development and Other Projects that Bryant Worked on for MGA

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46: Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information. Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns. Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

when the payments were actually made. Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement. Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works. Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages. 17 U.S.C. §504(b). The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market. For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation. Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel. Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant. Among other things, the protective order provides protection for confidential trade secret information. It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only." The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46. Bryant,

however, is not required to produce tax returns, provided that he otherwise fully complies with these requests as ordered.

Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

Mattel seeks production of Bratz-related communications and communications with MGA. More specifically, Mattel seeks production of four categories of documents Bryant has refused to produce: (1) communications between Bryant and MGA or third parties that explicitly relate to designs Bryant created while employed by Mattel; (2) communications between Bryant and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment; and (4) communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant contends that the discovery requests for communications between Bryant and MGA are overbroad. Bryant asserts that there are many former Mattel employees and friends of his who have privacy rights that would be impinged upon if he were to disclose his communications. Bryant also asserts that he has his own confidentiality interest regarding any information that he shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they would require him to reveal the identity of current Mattel employees seeking employment with MGA or Bryant.

The Discovery Master finds that Mattel's requests for all communications between Bryant and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential" private information about current or former employees, contractors or vendors (including employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

privileged documents responsive to Request Nos. 20, 23, 27, and 28. However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA. Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

Request Nos. 49, 51: Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

Request No. 9: Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration. Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper. Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1. Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED. However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2. Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3. Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4. Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5. Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6. Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7. Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

Edward A. Infante

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

**PROOF OF SERVICE BY E-MAIL**

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjakian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjakjian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |