# EXHIBIT 7

Received:   6/28/07   5:17   ;
JUN 28 2007 17:05 FR   ATS MCFARLAND WILSO  3108600363   3108600363 -> QUINN   MANUEL;  Page 2
2945#10595#00002 P.02/05

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

June 28, 2007

WRITER'S DIRECT DIAL

(310) 777-3730
WRITER'S EMAIL
lmcfarland@kmwlaw.com

VIA FACSIMILE

Susan Wines, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   Mattel v. Bryant

Dear Ms. Wines:

I am writing in response to your letter dated June 25, 2007, and to follow up on our meet and confer which we held yesterday morning at 10:00 a.m.  I will address the points in the order set forth in your June 25 letter.

A.   Margaret Hatch-Leahy and Veronica Marlow

I.   Unjustified Redaction of Documents

With respect to the review of Ms. Leahy's day planner and Ms. Marlow's faxes, I have requested these documents.  I will let you know as soon as I have them.

II.   Ms. Marlow's Wells Fargo Account

I will confirm the information with Ms. Marlow when I meet with her.  As you know, she has been in Brazil.

B.   Elise Cloonan

As set forth in my letter dated June 26, 2007, we do not agree that there has been any waiver of Ms. Cloonan's objections, and with that letter we provided you with Ms. Cloonan's written responses.  I have also asked Ms. Cloonan to provide us with a doctor's note.

C.   Sarah Halpern

There are no differences intended by the language in the responses to Request No. 2 and Request No. 3.  For clarity, we hereby modify the response to Request No. 3 to read as follows: "no responsive documents are in the possession, custody or control of Halpern."

EXHIBIT _____ 7 _____

PAGE _____ 61 _____

Susan Wines, Esq.
June 28, 2007
Page 2


D.   Computers

I will ask all four of our clients about computers, including laptops, that they may have used during the relevant time frame.

With respect to the authorities set forth in your June 21, 2007, letter alleging that Mattel is "entitled to inspect and image" the personal computers belonging to Elise Cloonan and Sarah Halpern, the cases that you cite fail to support your position.

For instance, while we, of course, agree that the term "documents" includes documents stored in electronic form, the significance of Playboy Enterprises, Inc. v. Welles, 60 F.Supp.2d 1050 (S.D. Cal. 1999) is that this case establishes a strict protocol to be followed when discoverable information is sought from an opposing party's computer hard drives. The Playboy court set forth a protocol which would allow the party requesting discovery to recover discoverable information while at the same time protecting the privacy and privilege concerns of the responding party. The protocol called for an independent third-party expert, agreed upon by both parties or appointed by the court, to conduct the inspection and create a "mirror image" copy of the defendant's computer hard drive. Following the inspection, the "mirror image" copy would be given to the defendant's counsel, who would then print and review any recovered documents and produce to the plaintiff those communications that are responsive and relevant. Finally, the court noted that the defendant's counsel would be the sole custodian of the "mirror image" copies throughout the litigation.

Your letter also cites Simon Property Group L.P. v. mySimon, Inc., 194 F.R.D. 639 (S.D. Ind. 2000) as support for the proposition that deleted records are discoverable and that courts routinely permit inspection of home computers. As in Playboy, Simon Property also involved a plaintiff seeking access to defendant's computers for the purpose of attempting to recover discoverable information, including deleted files. The court ordered a protocol requiring the inspection and "mirror image" copying to be conducted by a third-party expert. In doing so, the court referred to Playboy's protocol as offering the best approach, and fashioned a protocol which was nearly identical to the one in Playboy. The court stated that plaintiff and defendant should attempt to agree on an expert to inspect and create a "mirror image" of the hard drives, and if they failed to do so, the court would appoint one. The expert would then make the "mirror image" copy, and provide the copy to defendant's counsel. However, the copying would be limited to "the types of files reasonably likely to contain material potentially relevant" to the case.[1]   Thereafter, defendant's counsel would review the records for privilege and responsiveness to plaintiff's discovery requests, and supplement defendant's responses to discovery requests, as appropriate.[2]   Finally, the court ordered that the expert would sign the protective order and retain

---

[1]   Id. at 641; citing Adobe Systems, Inc. v. South Sun Products, Inc., 187 F.R.D. 636, 642-43 (S.D. Cal. 1999) (noting that Microsoft Office 97 occupies more than 200 megabytes on hard drive of a personal computer).
[2]   Id. at 641-42.

EXHIBIT _____ 7

PAGE _____ 6 2

Received:  6/28/07  5:18 ·                   3108600363 -> QUINN  MANUEL;  Page 4
JUN 28 2007 17:06 FR   ATS MCFARLAND WILSO 3108600363      2945#10595#00002 P.04/05

Susan Wines, Esq.
June 28, 2007
Page 3

until the end of the litigation the "mirror image" copies of the hard drives, without "disclos[ing]
the contents of any files or documents to plaintiff or its counsel or other persons."[3]

The third case that you cite, Superior Consultant Co. v. Bailey, 2000 WL 1279161 (E.D.
Mich. 2000), further supports the protocol applied in Playboy and Simon Property. Finally,
Kucala Enterprises, Ltd. v. Auto Wax Co., Inc., 2003 WL21230605 (N.D. Ill. 2003) is not
applicable to our case. That case concerned the plaintiff's acts of spoliation and destruction of
evidence, which is not present with Ms. Cloonan or Ms. Halpern.

Of further significance is the fact that each of the four cases cited in your letter concerns
discovery as between *parties* to an action. However, both of our clients are non-party *witnesses*
in this case. Since courts already protect the privacy and privilege interests of parties in these
inspection cases, there will likely be a much greater level of protection for non-parties. Thus, in
order to inspect our clients' computer hard drives, the Court may force Mattel to meet a much
higher burden than when dealing with a party.

Once again, the central dispute at issue is not, as your letter maintains, whether Mattel has
a right to discover information contained in our clients' computer hard drives. In fact, we agree
that such information is discoverable and, if relevant and non-privileged, should be produced.
However, our clients' computers contain substantial non-relevant and confidential information
that would infringe their rights of privacy if produced. Therefore, based on the foregoing
authorities, we propose to use the protocol set forth in Playboy as follows:

- Your firm and ours mutually agree on an independent third-party, who is an
expert in the field of computer forensics, to conduct the necessary inspection
and "mirror image" copying of our clients' computer hard drives. The
inspection shall include searches for relevant deleted documents and metadata.
If no expert can be jointly agreed upon, the Court shall select an expert.
Regardless of the method of selection, the chosen expert shall sign the
protective order to maintain confidentiality of the documents copied. To the
extent that the computer expert has direct or indirect access to information
protected by the attorney-client privilege, such "disclosure" shall not result in
a waiver of the attorney-client privilege. Mattel shall pay all costs for this
computer expert;

- Once the expert has been chosen, the expert shall make the "mirror image"
copies of Ms. Cloonan's and Ms. Halpern's computer hard drives and shall
search for relevant deleted documents and metadata. Only us and Ms.
Cloonan and/or Ms. Halpern may be present when the computer is inspected
and the mirror images made. Thereafter, the expert shall deliver the "mirror

---

[3]   Id. at 642.

EXHIBIT _____ 7
PAGE _____ 63

Received:    6/28/07   5:16PM;                    3108600363 -> QUINN   MANUEL;   Page 5
JUN 28 2007 17:06 FR   ATS MCFARLAND WILSO   3108600363   2945#10595#00002 P.05/05

Susan Wines, Esq.
June 28, 2007
Page 4

image" copies to us, as counsel for Ms. Cloonan and Ms. Halpern, for our review;

- We will print and review any recovered documents and produce to you all non-privileged documents that are responsive to the subpoenas served on Ms. Cloonan and/or Ms. Halpern, as the case may be. We will set forth all documents that are withheld on a claim of privilege in a privilege log. Depending on the volume of data recovered from the computers, the parties may need to meet and confer regarding relevant search terms so as to make the task of searching the hard drives manageable; and

- We shall be the sole custodian of the "mirror image" copies throughout the litigation.

This protocol will allow Mattel to recover the relevant documents, if any, while maintaining our clients' rights of privacy and confidentiality.

E.     Fee Agreements

I will review the order from Judge Infante and relevant case law regarding third party retainer agreements and get back to you.

F.     Deposition Dates

I will ask our four clients about possible deposition dates.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/jlt

EXHIBIT _____ 7
PAGE _____ 64

Received:   6/28/07  5:17P''·
JUN 28 2007 17:05 FR   .TS MCFARLAND WILSO  3108600363  ··2945#10595#00002 P.01/05
3108600363 -> QUINN ᴱᴹANUEL;  Page 1

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA  90212
TELEPHONE (310) 248-3830
FAX (310) 860-0363

---

## FACSIMILE TRANSMITTAL SHEET

| | | | |
|---|---|---|---|
| **To:** | Susan Wines, Esq. | **From:** | Larry W. McFarland, Esq. |
| **Company:** | Quinn Emanuel Urquhart Oliver & Hedges, LLP | **Date:** | 6/28/2007 |
| **Fax No.:** | 213-443-3100 | **Pages:** | 5 |
| **Phone No.:** | 213-443-3000 | **Ref No.:** | 10306.33 |
| **Re:** | Mattel v. Bryant | | |

☐ URGENT  ☐ FOR REVIEW  ☐ PLEASE COMMENT  ☐ PLEASE REPLY  ☐ PLEASE RECYCLE

NOTES/COMMENTS:

Please see attached.

### PRIVACY NOTICE

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.

If the reader of this message is not the intended recipient or the employee of agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.

EXHIBIT

PAGE ____ 65

# EXHIBIT 8

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3112**

WRITER'S INTERNET ADDRESS
**dylanproctor@quinnemanuel.com**

November 15, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:   <u>Bryant v. Mattel, Inc.</u>

Dear Larry:

I write regarding additional outstanding discovery issues relating to your clients, Ms. Hatch-Leahy, Ms. Marlow, Ms. Cloonan and Ms. Halpern.

First, in July of this year, you suggested that each of these individuals may have additional documents to produce in response to Mattel's subpoenas to them. Since that time, according to our records, we have received the following productions of documents from them:

- <u>Ms. Leahy:</u> 29 pages (KMW-L 00077.01 - KMW-L 00105.01) produced on August 14, 2007 and 352 pages (KMW-L 00077.02 - KMW-L 00428) produced on October 26, 2007. We also received 2 sets of printouts from Ms. Leahy's hard drives on October 29, 2007, consisting of 42 pages (ML1FR000001 - ML1FR000042) and 182 pages (ML2FR00043 - ML2FR00224), respectively. This is in addition to the 76 pages (SABW-L 00001 - SABW-L 00076) produced on May 17, 2005.

EXHIBIT _____8_____

PAGE _____66_____

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700

SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2294931.1

- Ms. Marlow: 2,374 pages (KMW-M 00667 - KMW-M 03040) produced on August 29, 2007, 1,640 pages (KMW-M 03041 - KMW-M 04680) produced on September 24, 2007 and 2,014 pages (KMW-M 04681 - KMW-M 06694) produced on October 11, 2007. This is in addition to the 662 pages (SABW-M 00001 - SABW-M 00662) produced on May 17, 2005 and the 4 pages (SABW-M 00663 - SABW-M 00666) produced on August 16, 2006.

- Ms. Cloonan: Hard copy printouts of 27 pages (ACFR000364 - ACFR000390) from her hard drive received on October 29, 2007. To our knowledge, other than these documents on her computer, Ms. Cloonan has never produced any documents in response to Mattel's subpoena.

- Ms. Halpern: Hard copy printouts of 140 pages (SHFR000225 - SHFR000364) from her hard drive received on October 29, 2007. This is in addition to the 131 pages (SH 0001 - SH 0131) produced on May 6, 2005.

Please confirm that your clients' productions of responsive documents are now complete. As you know, none of your clients has ever produced a privilege log of documents withheld on privilege grounds, and we understand based on prior communications that your clients have not withheld responsive documents based on any of their objections. Accordingly, please also confirm that all documents which are responsive to Mattel's subpoenas to your clients and which are in your clients' possession, custody or control have now been produced. As you have suggested in the past, we hope to resolve any outstanding issues regarding your clients' document productions in short order, before your clients are deposed, to the extent it is possible to do so.

Second, upon review of the documents your clients have recently produced, it is apparent that your clients are continuing to improperly redact their documents. In fact, all of the recent productions contain numerous redactions.[1] Nor have your clients remedied the improper redactions they have made in prior document productions.[2] Even more troubling, it appears that some documents have been redacted and produced without any indication that they were redacted. For example, the redacted documents from Ms. Halpern's production of May 6, 2005

---

[1]  See, e.g., the documents stamped KMW-L 00088.02, KMW-L 00117, KMW-L 00169, KMW-L 00224, KMW-L 00265, KMW-L 00293 and KMW-L 00333, from Ms. Leahy's October 26, 2007 production; the documents stamped KMW-M 03048, KMW-M 03128, KMW-M 03131, KMW-M 03175-76, KMW-M 03469-72, KMW-M 03532-33, KMW-M 03891, KMW-M 04383-84 and KMW-M 04576-80, from Ms. Marlow's September 24, 2007 production; and the documents stamped KMW-M 04683, KMW-M 04727, KMW-M 04862, KMW-M 04985, KMW-M 05114, KMW-M 05171 and KMW-M 05709, from Ms. Marlow's October 11, 2007 production.

[2]  See, e.g., the documents stamped SH 0097, SH 0108, SH 0119 and SH 0120, from Ms. Halpern's May 6, 2005 production; and the documents stamped SABW-L 00001, SABW-L 00009 and SABW-L 00011, from Ms. Leahy's May 17, 2005 production.

EXHIBIT ___8___

PAGE ___67___

lack redaction stamps -- there are merely blank areas in the documents. Documents KMW-L 00388 and KMW-L 00426 from Ms. Leahy's October 26, 2007 production and document SABW-L 00050 are also examples of documents that appear to be redacted but which do not bear redaction stamps.

We are entitled to unredacted copies of all documents that have been produced by your clients. The redactions to your clients' documents do not appear to be made on the basis of privilege, and as noted we have never received a privilege log for any of your clients. Redactions on any other basis with respect to these documents are improper. In fact, in Orders dated January 25, 2007 and May 15, 2007 Judge Infante expressly held that Bryant's and MGA's redactions on grounds other than privilege are improper given the Protective Order in place in this case, which fully addresses any perceived confidentiality concerns.

Last, I do not believe we have received responses to two additional matters Ms. Wines previously discussed with you. First, in the past we have requested (including in a letter dated June 25, 2007 and an email dated June 27, 2007) that you confirm for all four of your clients whether they have fee agreements, written or otherwise, with MGA. As you know from the Orders we have directed to your attention, Judge Infante has found such fee agreements to be relevant to bias and credibility and non-privileged. You confirmed in a letter dated June 28, 2007 that you would review Judge Infante's Orders and relevant case law and then get back to us. To our knowledge, we have not received any further response. Accordingly, please confirm whether your clients have such agreements with MGA as soon as possible and, if they do, please promptly produce these agreements and all documents relating to the agreements.

Second, in the past you stated (including by letter dated June 28, 2007) that you would confirm with Ms. Marlow that her Wells Fargo account was the only checking account she used for MGA. Again, to our knowledge we have not received any further response in this regard. As you know, we are now aware of a Bank of America account used by Ms. Marlow as well. Please let us know if the Bank of America and Wells Fargo accounts are the only checking accounts Ms. Marlow used in connection with her work for MGA. If Ms. Marlow used other accounts in connection with her work with MGA, please provide us with the name of the bank(s) and the account numbers.

I look forward to hearing from you at your earliest convenience, and remain hopeful we will be able to resolve these issues without motion practice. Out of an abundance of caution, please consider this to be a request for a meet and confer on a contemplated motion to compel and for sanctions pursuant to Section 5 of the Order for the Appointment of a Discovery Master.

Very truly yours,

B. Dylan Proctor

EXHIBIT _____ 8

PAGE _____ 68

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000
Facsimile: (213) 443-3100

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000
Facsimile: (212) 849-7100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA  94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

# FACSIMILE TRANSMISSION

**DATE:**     November 15, 2007          **NUMBER OF PAGES, INCLUDING COVER: 4**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Larry McFarland, Esq.<br>Keats, McFarland & Wilson, LLP | 310-248-3830 | 310-860-0363 |

**FROM:**     B. Dylan Proctor, Esq.

**RE:**     Mattel, Inc. v. Bryant

**MESSAGE:**



NOV 1 5 2007

EXHIBIT 8

PAGE 69

| 07209/2152611.1 | | | | |
|---|---|---|---|---|
| CLIENT # | 07209 | ROUTE/<br>RETURN TO: | Tiffany Garcia/3rd Floor | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
| OPERATOR: | *cwh* | | CONFIRMED?   ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

# Confirmation Report — Memory Send

```
                              Page      : 001
                              Date & Time: 11-15-2007   12:33
                              Line 1    : 2134433100
                              Line 2    :
                              Machine ID : QUINN EMANUEL
```

| | | |
|---|---|---|
| Job number | : | 419 |
| Date | : | 11-15  12:31 |
| To | : | ☎9414#07209#13108600363 |
| Number of pages | : | 004 |
| Start time | : | 11-15  12:31 |
| End time | : | 11-15  12:33 |
| Pages sent | : | 004 |
| Status | : | OK |

Job number    : 419          *** SEND SUCCESSFUL ***

## QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE:    November 15, 2007          NUMBER OF PAGES, INCLUDING COVER: 4

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Larry McFarland, Esq.<br>Keats, McFarland & Wilson, LLP | 310-248-3830 | 310-860-0363 |

FROM:    B. Dylan Proctor, Esq.

RE:     Mattel, Inc. v. Bryant

MESSAGE:

| | | | | |
|---|---|---|---|---|
| 07209/2152611.1 | | | | |
| CLIENT # | 07209 | ROUTE/<br>RETURN TO: | Tiffany Garcia/3rd Floor | ☐ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
| OPERATOR: | cisli | | CONFIRMED? ☐ NO ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT ___8___

PAGE ___70___

# EXHIBIT 9

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

November 21, 2007

WRITER'S DIRECT DIAL

(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

VIA FACSIMILE, VIA HAND DELIVERY

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:    Mattel v. Bryant

Dear Dylan:

I am writing in response to your letter dated November 15, 2007.

With respect to the document control numbers listed on the first two pages of your letter, I can confirm that this is a complete list of all the documents produced to date by Ms. Leahy, Ms. Marlow, Ms. Cloonan and Ms. Halpern that were assigned document control numbers.[1][2] The reason that I am making this distinction is that, as you know, Ms. Leahy and Ms. Marlow have produced sculpts and other three-dimensional objects that your firm has photographed and/or videotaped. In order to avoid any confusion, I propose that we make photocopies of each of these produced sculpts and three-dimensional objects and assign each photocopy a bates number. Please let me know if you agree with this proposal. Also, with respect to the photographs taken and the videotapes made by your firm of these sculpts and three-dimensional objects, I previously asked Ms. Wines for copies of these photographs and videotapes. She refused to provide me with copies and told me that it was your firm's position that the photographs and videotapes are work product and that your firm does not intend to use them at any of the depositions or at trial. Please confirm that Ms. Wines' statement is correct and that you will not be using any of these photographs or videotapes at the depositions of any of my clients or at trial.

With respect to your question involving whether the production of documents is complete, I can confirm that Ms. Halpern has produced all responsive documents in her possession, custody and control. With respect to Ms. Marlow, we are delivering to you with this

---

[1] For documents KMW-M 00667 through KMW-M 03040, your notation of the production date as August 29, 2007 does not reflect that an attorney from your office inspected the documents on August 24, 2007.
[2] For documents ACFR000364 through ACFR000390 and SHFR000225 through SHFR000364, your notation of the receipt date as October 29, 2007 does not reflect my letter dated October 26, 2007 to Mr. Zeller and Data Chasers, releasing the documents.

EXHIBIT _____ 9

PAGE _____ 71

B. Dylan Procter, Esq.
November 21, 2007
Page 2

letter document control numbers KMW-M 006695 through KMW-M 007643. In addition, we received some three-dimensional objects from Ms. Marlow for your review. Please let me know when someone from your office is available to inspect them. Regarding Ms. Leahy, she has located some additional three-dimensional objects which are available for your review. Please let me know when someone from your office is available to review these items. With respect to Ms. Cloonan, we noticed that your computer expert did not pick up a computer disk with Ms. Cloonan's computer. I suggest that we provide this disk to Data Chasers pursuant to the terms of our agreement as set forth in the letter from Ms. Wines dated September 13, 2007. In addition, in order to speed things up, we will agree to review anything found by Data Chasers within five court days of receipt from Data Chasers rather than the ten court days set forth in Ms. Wine's letter. Please let me know if this is acceptable. With the production of these last remaining items, I believe that the production from Ms. Marlow, Ms. Leahy, Ms. Halpern and Ms. Cloonan is complete.

Regarding the withholding of documents based on privilege grounds, it is our position that the fee agreements between our clients and their attorneys, as well as all correspondence between our clients and their attorneys, are privileged.

Regarding your statements with respect to redactions, your assertion that our clients have improperly redacted documents is incorrect. In addition, you continue to cite the previously redacted pages from Ms. Leahy's day planner, even though, as you know, additional pages from that day planner were produced pursuant to our agreement with Ms. Wines. (See my letter to you dated November 14, 2007.) I am not aware of any order from Judge Infante that precludes third parties from redacting irrelevant information. If there are any such orders, please provide copies to me. In addition, as I have previously stated, it is our position that any discovery disputes with our third party clients will be heard by Magistrate Judge Block. However, in an effort to try to avoid unnecessary motion practice, we are re-reviewing all of the documents that were redacted, and if there are any errors, we will provide corrected documents to you.

With respect to your request regarding whether Ms. Leahy, Ms. Marlow, Ms. Halpern or Ms. Cloonan have fee agreements with MGA, written or otherwise, without admitting that any such documents exist, it is our position that the request seeks the production of privileged information. Under the attorney-client privilege, confidential communications made by a client to an attorney to obtain legal services are protected from disclosure. California statutory authority provides that "[a] written fee contract shall be deemed to be a confidential communication within the meaning of [Cal. Bus. & Prof. Code § 6068(e)] and of [Cal. Evid. Code § 952]." Section 6068(e)(1) affirms that "[i]t is the duty of an attorney to … maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." Therefore, the requested fee agreements are confidential communications protected under the attorney-client privilege. If you have any authority to the contrary, please let me know. Finally, in response to your assertions in the November 15, 2007 letter, I am not aware of Judge Infante ruling on this issue with respect to any third party. If I am mistaken, please inform me of any such ruling.

EXHIBIT ___9___

PAGE ___72___

B. Dylan Procter, Esq.
November 21, 2007
Page 3


Regarding bank accounts used by Ms. Marlow in connection with her work with MGA, as I stated in my letters to Ms. Wines dated July 23, 2007 and September 21, 2007, we have not received any documents from Wells Fargo in response to your subpoena. In addition, we have not yet received any documents from Bank of America. As soon as we receive these documents, we will comply with the review procedure as set forth in the letter from Ms. Wines dated September 13, 2007, and the letter from you dated November 2, 2007. Finally, with respect to your question whether Ms. Marlow has used any additional bank accounts in connection with her work for MGA, I will provide you this information on the condition that you agree to comply with the protocol set forth in the letter from Ms. Wines dated September 13, 2007, and the letter from you dated November 2, 2007. Please let me know if you agree to this protocol.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/jlt

cc:   Thomas J. Nolan
      Michael Page

Enclosures (KMW-M 006695 through KMW-M 007643)


EXHIBIT ___9___
PAGE ___73___

# EXHIBIT 10

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3112**

WRITER'S INTERNET ADDRESS
**dylanproctor@quinnemanuel.com**

November 28, 2007

**VIA FACSIMILE AND U.S. MAIL**

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:     Mattel, Inc. v. Bryant

Dear Larry:

I write in response to your letter of November 21, 2007.

First, your proposal to make photocopies of the three dimensional objects your clients have made available for inspection and to produce those photocopies with Bates numbers is acceptable. Please provide these photocopies once they have been made.  You are correct in your assertion that the photographs and videotapes we have taken of these objects are protected work product in our view.  However, you are incorrect in asserting that Mattel has agreed not to use these photographs or videotapes at trial.  Mattel did not agree to that in the past, and is not willing to so agree now.  We are not presently in a position, or required, to disclose our trial exhibits.  Nor do we understand why your clients, all third parties, would have any legitimate interest in delimiting Mattel's trial exhibit list.

Second, regarding the three-dimensional objects you received from Ms. Marlow and Ms. Leahy, we will send someone from our office to review them this Friday, November 30 at 9:30 a.m. Please let us know if this date and time does not work for you for any reason, and we will re-schedule.

EXHIBIT _____ 10
PAGE _____ 74

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2302513.1

Third, regarding Ms. Cloonan's computer disk or drive, we would ask that you please provide the drive to Data Chasers as you suggest. We will agree to follow the protocol outlined in our September 13, 2007 letter, with the understanding set forth in your letter that you will review anything found by Data Chasers within 5 court days of receipt and provide the same to us. We expect you will proceed with appropriate expedition to ensure that Ms. Cloonan's documents are produced to Mattel sufficiently in advance of her deposition to enable Mattel to examine her on them as needed.

Fourth, as we stated in our letters of June 25, 2007 and November 15, 2007, Judge Infante has already found fee agreements to be relevant to bias and credibility, and non-privileged. See Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at 11-12; Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for Sanctions, dated June 19, 2007, at 2-4. Copies of these orders are attached for your reference. As the Court has held, the Business and Professions Code's privilege provisions do not apply in this federal question case, which is governed by federal privilege law. Nevertheless, we understand from your letter that your clients have withheld fee agreements without listing them on any privilege log. We hereby ask once again that they be produced. Please let us know if you are willing to do so. If not, we will plan to address the issue to the Court.

Fifth, and again as we stated in our letter of November 15, 2007, we believe we are entitled to unredacted copies of all documents that have been produced by your clients. You do not assert that the redactions to your clients' documents were made on the basis of privilege, and redactions on any other basis are improper. In fact, in Orders dated January 25, 2007 and May 15, 2007, Judge Infante expressly held that redactions on grounds other than privilege are improper given the protective order in place in this case, which fully addresses any perceived confidentiality or privacy concerns. See Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at 14; Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 11, n. 4. Copies of these orders are attached for your reference. We hereby request again that you produce your clients' documents in unredacted form. Please let us know if you are willing to do so. If not, we will plan to address the issue to the Court. Please understand, however, that if Mattel is not able to examine your clients on redacted or other withheld information because you have withheld it at the time of their depositions, Mattel reserves its right to question your clients on such information in the future at a renewed deposition, once Mattel obtains access to the withheld information.

Last, please provide the information regarding additional bank accounts used by Ms. Marlow in connection with her work at MGA. We will agree to abide by the protocol outlined in the September 13, 2007 and November 2, 2007 letters regarding documents that are obtained from additional accounts.

EXHIBIT ____10____

PAGE ____75____

In our letter of November 15, 2007, we requested a meet and confer on a contemplated motion to compel and for sanctions. If you wish to discuss these matters, please let me know when you are available to meet and confer this week. I look forward to hearing from you.

Very truly yours,

B. Dylan Proctor

Enclosures

EXHIBIT _____ 10

PAGE _____ 76

CONFORMED COPY                    FILED

Hon. Edward A. Infante (Ret.)              2007 JAN 26  PM 12: 25
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA  94111
415-774-2611
415-982-5287 (fax)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>    Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | |

### I. INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1] On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief. The matter was heard via telephonic conference call on January 24, 2007. Having

---

[1] Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              1

EXHIBIT ___10___  1-26
PAGE ___77___

REDACTED

EXHIBIT ___10___

PAGE ___78___

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel Production of Documents is GRANTED.

## II. BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of Bratz dolls now rival Mattel's Barbie doll.

A. Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed suit against its former employee Bryant in state court asserting claims for breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel employed Bryant as a product designer from September 1995 through April 1998, and from January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee Confidential Information and Inventions Agreement which required him not to engage in any employment or business other than for Mattel, or invest or assist in any manner any business competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that he had not worked for any of Mattel's competitors in the prior twelve months and had not engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

EXHIBIT ___10___
PAGE ___79___

provide product design services on a "top priority" basis.[2]  The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA.  Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel.  In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

     In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction).  Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA.  The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls.  In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls.  In August of 2004, the district court remanded the action.

     B. Bryant's Cross-complaint

     In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement.  Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

---

[2]  Bryant has already produced his agreement with MGA.  Therefore, the existence of the agreement does not appear to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT ___10___

PAGE ___80___

C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

EXHIBIT ___10___

PAGE ___81___

### G.   Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted.  The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

### H.   Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes.  For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA.  Mattel also sought leave to add a copyright infringement claim.  Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727.  The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

### I.   Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004.  Bryant served objections and responses on July 16, 2004.  The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005.  That motion, however,

EXHIBIT _____ 10

PAGE _____ 82

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to compel. The parties informed the court that they would submit a stipulation and order. See Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel Production of Documents, counsel will be submitting a stipulation and order which will be dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to memorialize the parties' meet and confer session, but were unable to reach final agreement because Bryant insisted upon including the following sentence in the stipulation: "The stipulation resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23. From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel waive its right to all further discovery in connection with its requests. Mattel proposed the following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in this Stipulation shall preclude or limit Mattel from seeking further discovery on any matter, including as to matter on which the parties could not reach complete agreement, or preclude or limit any right of Bryant to object or resist to such discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was unacceptable to Bryant. At the direction of the Discovery Master, the parties met and conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

EXHIBIT 10

PAGE 83

1,600 pages of documents to date. Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3] Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

     J.   Mattel's Motion to Compel Production of Documents

     Mattel's motion has three parts. First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents: (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel. Mattel's Motion at 6. Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

     Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations. According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3]  According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear. Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed. Mattel again obtained a court order compelling the deposition and sanctions. To date, only Bryant and Larian have been deposed.

EXHIBIT   10

PAGE   84

his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel. He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004. Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of 2004, he produced the following categories of documents: documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4] There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center. MGA denies the accusation.

EXHIBIT _____ 10

PAGE _____ 85

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

EXHIBIT ___10___

PAGE ___86___

requests and that the stipulation controlled to the extent they were inconsistent. Bryant's Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process and asks the Discovery Master to order the disposition of this motion in a manner consistent with the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks the Discovery Master to order Mattel not to revisit any of the requests that were the subject of Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone records and financial information because these records are protected by privacy rights. Lastly, Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit was filed.

### III. DISCUSSION

#### A. The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

The parties' extensive submissions make it clear that the parties did not resolve the issues raised in the instant motion. The parties met and conferred extensively and in good faith, reaching compromises on virtually all categories of documents in dispute. Despite their efforts, however, the parties were ultimately unable to execute a binding stipulation because they were unable to agree on any provision to govern Mattel's future right to pursue additional discovery from Bryant. It is clear that the parties deemed it necessary to include such a provision in the draft stipulation in order to protect their respective positions. Because the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

EXHIBIT _____10_____

PAGE _____87_____

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48:  Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

EXHIBIT ____10____

PAGE ____88____

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel

other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c)

documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating

to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims.

Among other things, the withheld documents could establish the timing, nature and scope of

Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In

addition, the withheld documents could be used for impeachment purposes. Further, documents

relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate

bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred

by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged

documents responsive to Request Nos. 2, 13, and 48.

Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55: Documents Relating to Bratz's

Development and Other Projects that Bryant Worked on for MGA

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked

on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls.

Bryant is prepared to produce additional documents relating to work he performed for MGA prior

to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant

breached his employee agreement by allegedly performing services for Mattel and MGA at the

same time. Bryant objects to the requests to the extent they seek any additional documents on

relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not

overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30,

2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

EXHIBIT _____ 10

PAGE _____ 89

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46:  Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA.  Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA.  Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information.  Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns.  Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion.  Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel.  Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

EXHIBIT _____ 10

PAGE _____ 90

when the payments were actually made. Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement. Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works. Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages. 17 U.S.C. §504(b). The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market. For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation. Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel. Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant. Among other things, the protective order provides protection for confidential trade secret information. It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only." The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46. Bryant,

EXHIBIT ___10___

PAGE ___91___

however, is not required to produce tax returns, provided that he otherwise fully complies with these requests as ordered.

Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

Mattel seeks production of Bratz-related communications and communications with MGA. More specifically, Mattel seeks production of four categories of documents Bryant has refused to produce: (1) communications between Bryant and MGA or third parties that explicitly relate to designs Bryant created while employed by Mattel; (2) communications between Bryant and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment; and (4) communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant contends that the discovery requests for communications between Bryant and MGA are overbroad. Bryant asserts that there are many former Mattel employees and friends of his who have privacy rights that would be impinged upon if he were to disclose his communications. Bryant also asserts that he has his own confidentiality interest regarding any information that he shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they would require him to reveal the identity of current Mattel employees seeking employment with MGA or Bryant.

The Discovery Master finds that Mattel's requests for all communications between Bryant and MGA unquestionably seek information relevant to Mattel's claims; they will reveal what Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential" private information about current or former employees, contractors or vendors (including employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

EXHIBIT ____10____

PAGE ____92____

privileged documents responsive to Request Nos. 20, 23, 27, and 28. However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA. Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

Request Nos. 49, 51: Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

Request No. 9: Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration. Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper. Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1. Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT _____ 10

PAGE _____ 93

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2. Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3. Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4. Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5. Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6. Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7. Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

EXHIBIT _____ 10

PAGE _____ 94

CONFORMED COPY
LODGED                     FILED

2007 MAY 16  PM 1:59  2007 MAY 16  PM 2:00

CLERK U.S. DISTRICT COURT CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.  CENTRAL DIST. OF CALIF.
RIVERSIDE                RIVERSIDE
BY_____   BY_____

1 | Hon. Edward A. Infante (Ret.)
  | JAMS
2 | Two Embarcadero Center
  | Suite 1500
3 | San Francisco, California 94111
  | Telephone:  (415) 774-2611
4 | Facsimile:   (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                           EASTERN DIVISION

10

11 | CARTER BRYANT, an individual,           CASE NO. C 04-09049 SGL (RNBx)
                                             JAMS Reference No. 1100049530
12 |           Plaintiff,

13 |     v.                                  Consolidated with
                                             Case No. CV 04-09059
14 | MATTEL, INC., a Delaware corporation,   Case No. CV 05-2727

15 |           Defendant.                    **ORDER GRANTING MATTEL'S
                                             MOTION TO COMPEL PRODUCTION
16 |                                         OF DOCUMENTS AND
                                             INTERROGATORY RESPONSES BY
17 | CONSOLIDATED WITH                       MGA**
    | MATTEL, INC. v. BRYANT and
18 | MGA ENTERTAINMENT, INC. v. MATTEL,
    | INC.
19 |

20                              I. INTRODUCTION

21       On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

22 | of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA"). On February

23 | 20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

24 | reply brief. The matter was heard on March 5, 2007. Thereafter the motion was taken under

25 | submission pending the parties' submission of a proposed protective order, which was received

26

27

28 | Bryant v. Mattel, Inc.,
    | CV-04-09049 SGL (RNBx)                                                    1

EXHIBIT ____10____

PAGE ____95____

1   on April 23, 2007. Having considered the motion papers and comments of counsel at the hearing,

2   Mattel's motion to compel is granted.

3  II. BACKGROUND

4      A. Requests for Documents

5      In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6   became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7   categories of documents, to be produced in ten days.  MGA filed a motion to quash, which the

8   court granted because of the short amount of time provided for compliance with the subpoena.

9   The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10  some of Mattel's requests.  In particular, the parties agreed to limit production to the "first

11  generation" Bratz dolls.  On August 12, 2004, MGA produced documents.

12     In 2005, the parties stipulated to supplementing their document productions on May 16,

13  2005.  Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14     In September of 2006, MGA made a supplemental production of documents.  On February

15  5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16  with legibility problems.  On February 20, 2007, MGA produced an additional 224 pages of

17  documents to replace earlier produced documents with legibility problems.

18     Mattel now moves to compel MGA to produce documents responsive to its requests.  As a

19  preliminary matter, Mattel contends that MGA's production is deficient because it contains

20  redactions and cut-off text.  Further, Mattel contends that MGA's production is incomplete with

21  respect to essentially five categories of documents.  First, Mattel contends that MGA is

22  withholding documents relating to the origins of Bratz and Bryant's work for MGA.  Mattel

23  believes that MGA's production is incomplete based upon its review of documents that have been

24  produced third party Steven Linker.  According to Mattel, Linker's documents from October

25  of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26  previously represented.  Mattel also contends that MGA's responses to the document requests

27

28

EXHIBIT _____ 10

PAGE _____ 96

1  | contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2  | responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3  | show when certain dates relating to Bratz occurred.  Mattel contends that these "carve outs

4  | purport to allow MGA to cherry-pick what it will and will not produce to Mattel."  Mattel's

5  | Separate Statement at 17:11-13.  Mattel also contends that the carve-outs fail to provide notice of

6  | what is or is not being withheld.  Mattel also contends that MGA's objections based upon its

7  | confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8  | protective order in place.  In addition, Mattel contends that MGA's objection to producing

9  | documents relating to activities or conduct in foreign countries is wholly improper because those

10 | documents may contain information relevant to Mattel's claims.

11 |         Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12 | such documents relate to the "first generation" Bratz dolls.  Mattel argues that whether the work

13 | ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14 | discovery purposes.  Mattel contends that the works created by Bryant during his Mattel

15 | employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16 | a Bratz doll released at a particular time.[1]

17 |         Mattel next contends that MGA is improperly withholding documents about designs

18 | Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19 | be derivative of work he did when employed by Mattel.  Mattel contends that it is entitled to

20 | explore whether such works and the profits from Bratz dolls other than the "first generation"

21 | Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22 | and damages.  Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23 | improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24 | information as well as MGA's unfair competition claims.

25 |

26 |         [1]  Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
   | to compel Bryant to produce documents.

27 |

28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT ___10___

PAGE ___97___

1    Mattel also asserts that MGA is improperly withholding documents relating to products,

2  services and matters other than those relating to "dolls." According to Mattel, it has evidence that

3  Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4  Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the

5  Inventions Agreement.

6    Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7  payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant

8  because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9  (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10  damages; and (3) payments may show when and what trade secret information Bryant and other

11  defendants allegedly misappropriated from Mattel.

12    Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel

13  contends that all agreements between Bryant and MGA are relevant, not just the original

14  September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all

15  documents relating to MGA and Bryant's alleged joint defense agreement because such

16  information would be relevant to demonstrate bias and lack of credibility.

17    Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18  statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such

19  information may reveal relevant information about the date of creation of Bryant's Bratz

20  drawings.

21    In response, MGA denies withholding responsive documents and asserts that it has

22  produced volumes of documents responsive to Mattel's requests. In particular, MGA represents

23  that it has produced all responsive and relevant documents that it was able to locate in response to

24  request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even

25  before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26  motion. In particular, MGA represents that it is diligently working to produce documents related

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT   10

PAGE   98

1   to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2   49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed

3   Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4   have been released on the market.  In addition, MGA represents that it has agreed to produce

5   documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More

6   specifically, MGA represents that it agreed to review and produce documents provided to it by

7   Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8   Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.

9   Therefore, MGA views the motion as unnecessary.

10       MGA next contends that Mattel's motion should be denied for the following additional

11   reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for

12   unreleased products.  MGA asserts that its product design documents for its unreleased toy

13   concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that

14   designs and drawings for products currently under development, over six years after Bryant first

15   created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that

16   documents relating to unreleased products are ordered produced, MGA requests a protective order

17   under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18   than the current protective order provides.  In the alternative, MGA requests that any order

19   compelling production of documents relating to unreleased products should essentially be stayed

20   until after MGA's products are publicly released.

21       Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22   attorneys' fees because the information is privileged.  Furthermore, MGA contends that the

23   information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 10
PAGE 99

1   in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2   Opposition at 24:9-12.[2]

3          Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4   and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5   refused to produce similar types of documents. More significantly, MGA contends that Mattel's

6   requests for non-public witness statements are "a blatant attempt to avoid the discovery

7   limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8   imposed by this Court." MGA's Opposition at 25:6-7. MGA explains its position as follows.

9   MGA is involved in litigation against a number of counterfeiters and infringers in Asia. In 2003,

10  Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11  attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12  abandoned its claims based upon "Toon Teens" in this court. Thereafter, those defendants took

13  the position that MGA did not own, and therefore could not enforce, the rights to Bratz. MGA

14  was thus forced to litigate the issue of ownership. MGA contends that "[i]n effect, by prompting

15  foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16  a situation in which MGA has been forced to give testimony and provide evidence related to

17  issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

18         Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19  dispute between MGA's chief executive officer and his brother because such documents are in no

20  way relevant to this lawsuit. MGA explains that the brothers were involved in an arbitration

21  proceeding relating to MGA's CEO's purchase of his brother's interest in MGA. Moreover,

22  MGA contends that the brothers were bound by a protective order prohibiting the use of any

23  documents or testimony for any purpose other than the arbitration.

24

25  _____

26         [2] Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                                                    6

EXHIBIT _____ 10

PAGE _____ 100

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2    files because they contain confidential information and are not relevant to the lawsuit.  Sixth,

3    MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4    in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd.  Lastly,

5    MGA objects to producing documents relating to any testing performed to determine the date that

6    Bratz documents were created.  MGA contends that such discovery is premature and should not

7    proceed until experts are designated.

8    B. Interrogatories

9    On April 28, 2005, Mattel served its Second Set of Interrogatories.  On May 20, 2005,

10    however, the district court stayed the action.  On May 17, 2006, the district court lifted the stay.

11    On May 30, 2006, MGA responded to the interrogatories.

12    Mattel contends that MGA's responses to the interrogatories were untimely.  Further,

13    Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14    because they lack substantive information and consist almost entirely of objections.  MGA

15    responds that the motion is moot because it is prepared to provide supplemental responses to its

16    interrogatories.  MGA does not otherwise assert any additional grounds for opposing Mattel's

17    motion to compel responses to interrogatories.

18    III. DISCUSSION

19    A. Rule 26 of the Federal Rules of Civil Procedure

20    Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21    discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22    party." Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

23    discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24    Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25    unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26    convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28    Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                                7

EXHIBIT _____10_____

PAGE _____101_____

1   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2   expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3   the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4   the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5   26(b)(2).

6       B. Document Requests

7           1. Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8              34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9       The requests above seek discoverable information regarding the origins of Bratz and

10  Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11  response to request nos. 6, 26, 27, 32, 33, 34, 35, 55,and 69 (MGA's Opposition at 13:4-5), and is

12  "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13  and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14  14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15  products and documents from MGA Hong Kong.

16      As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17  its production to "relevant and responsive non-objectionable documents" or documents

18  "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19  might be excluding documents that are responsive to the request based upon its unilateral

20  determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21  document requests ordered herein without these restrictions.

22                      Design Documents for Unreleased Products

23      MGA's design documents for unreleased products are relevant to Mattel's claims and

24  defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25  parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26  design documents for unreleased products that constitute trade secret information.  See Stipulation

27

28  Bryant v. Mattel, Inc.,                                                          8
    CV-04-09049 SGL (RNBx)

EXHIBIT ____10____

PAGE ____102____

1  to Modify Protective Order; And Proposed Order Thereon ("stipulation").  The parties' stipulation

2  has been approved and entered as an order of the court.  MGA is ordered to produce design

3  documents for unreleased products that are responsive to Mattel's document requests in

4  accordance with the terms of the stipulation and order.

5                     Documents from MGA Hong Kong

6         Documents relating to activities or conduct in foreign countries are relevant and

7  discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8  Bratz.  Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9  provides reciprocal discovery from its subsidiaries.

10        Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein.  MGA is ordered to produce

12  documents from MGA Hong Kong.

13        Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15            2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16               61, 63, 66, 67, 70, 88, 90, 91

17        Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls.  MGA represents, however, that it has agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21        As stated previously, design documents for yet unreleased products are relevant and

22  discoverable.  See Order Modifying Protective Order.  Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25        //

26        //

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT ___10___

PAGE ___103___

3. <u>MGA's Payments to Bryant (Nos.43, 45)</u>

MGA represents that it has already agreed to produce documents related to Bratz, without limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless, Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's motion is granted with respect to request nos. 43 and 45.

4. <u>MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)</u>

MGA represents that it has already agreed to produce non-privileged documents responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or indemnity agreements between MGA and Bryant .

Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility. Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any responsive documents withheld on the basis of a privilege must be properly identified in a privilege log.

5. <u>Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40, 41,</u>

In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits, and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel anticipates that these documents could provide evidence relating to the conception date for Bratz.

Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

---

[3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

EXHIBIT    10

PAGE    104

1  that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2  documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3  protective order that prohibits the use of any documents or testimony for any purpose other than

4  the arbitration.  MGA, however, has not provided any evidence of the protective order.

5  Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6         6. Documents Regarding Date-Testing (Request No. 92)

7         Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8  from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9  testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto." MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12         The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports.  The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15         C. Interrogatories

16         Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served.  The district court lifted the stay on May 17, 2006.

22

23

24

25    [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's

26  personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore
   should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28    Bryant v. Mattel, Inc.,                                                                              31
     CV-04-09049 SGL (RNBx)

EXHIBIT ____10____

PAGE ____105____

1    Neither party has cited to any caselaw governing the calculation of the 30-day period
2    when there is an intervening stay in discovery.  In the absence of any caselaw, MGA's responses
3    will be treated as timely in order to preserve any valid objections MGA may have asserted.

4    Interrogatory No. 5 seeks the identity of each and every person who was involved in the
5    conception, origin, creation, design, development, sculpting, engineering, reduction to practice,
6    tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz
7    before December 31, 2001, including a description of each person's role and the start and end
8    dates of each person's involvement.  In response, MGA asserted numerous objections, but did
9    provide the names of five individuals.

10   The interrogatory clearly seeks information relevant to the claims at issue.  MGA's
11   objections are without merit.  The interrogatory is not vague, ambiguous, compound or overbroad.
12   Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls
13   for confidential, proprietary or commercially sensitive information, or seeks information
14   protected by the attorney-client privilege.  Furthermore, MGA's response is incomplete insofar as
15   it fails to provide the description of each person's role and the start and end dates of each person's
16   involvement.  Accordingly, MGA is ordered to provide a complete response to Interrogatory No.
17   5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18   Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any
19   embodiment of Angel.  MGA is ordered to provide a complete response to Interrogatory No. 6 for
20   the reasons previously discussed in connection with Interrogatory No. 5.

21   Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to
22   December 31, 2001.  In response, MGA asserted numerous objections and did not provide any
23   substantive information.

24   MGA's objections are without merit.  The interrogatory clearly seeks information relevant
25   to establishing when Bryant first conceived Bratz.  The interrogatory is not vague, ambiguous,
26   compound or overbroad.  Nor has MGA carried its burden of establishing that the interrogatory is

27
28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                      12

EXHIBIT ___10___

PAGE ___106___

1   unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2   seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3   provide a complete response to Interrogatory No. 7.

4        Interrogatory No.8 asks MGA to identify each and every embodiment of Angel.  MGA is

5   ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6   discussed in connection with Interrogatory No. 7.

7        Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8   or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9   or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10   substantive information.

11        The interrogatory seeks information relevant to establishing when Bryant first conceived

12   Bratz.  Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13   ordered to provide a complete response to Interrogatory No. 9.

14        Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15   was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16   which each such instance occurred, the location of each show or exhibit, and the identity of

17   persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18   objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19   about January 2001 and New York Toy Fair, New York, in or about February 2001.

20        Once again, MGA's boiler-plate objections are unsubstantiated.  The information is

21   potentially relevant to establish when Bryant conceived Bratz.  Further, the response is

22   incomplete insofar as it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23   to provide a complete response to Interrogatory No. 10.

24        Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25   including without limitation each office, home and cell phone number, in the name of, for the

26   benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT _____ 10

PAGE _____ 107

1   January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2   limitation any long-distance carrier) for each such number. In response, MGA asserted numerous

3   boiler-plate objections.

4        Once again, MGA has failed to substantiate any of its objections with supporting

5   declarations or legal authorities. Accordingly, all objections are overruled and MGA is ordered to

6   provide a full response to Interrogatory No. 11.

7                                   IV. CONCLUSION

8        For the reasons set forth above, Mattel's motion to compel production of documents is

9   granted. MGA shall produce all non-privileged documents that are responsive to the requests

10  identified in this Order. Further, MGA shall produce all documents in un-redacted form, except

11  for redactions that are justified by the attorney-client privilege or work product doctrine. Mattel's

12  motion to compel interrogatory answers is also granted. MGA shall produce documents and

13  provide responses to interrogatories consistent with this Order, and produce a privilege log in

14  compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007. Mattel's request for

15  sanctions is denied.

16       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17  Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21  Dated: May /5, 2007

22                                   HON. EDWARD A. INFANTE (Ret.)
                                     Discovery Master

23

24

25

26

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                        14

EXHIBIT ___10___

PAGE ___108___

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq. | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT ___10___

PAGE ___109___

**CONFORMED COPY**



FILED

2007 JUN 20 PM 1: 12

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY ___

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:   (415) 774-2611
4  Facsimile:   (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

                          EASTERN DIVISION
9

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No.1100049530
12           Plaintiff,

13       v.                                Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15           Defendant.                    **ORDER GRANTING IN PART AND
                                           DENYING IN PART MATTEL'S
16                                         MOTION TO ENFORCE THE
                                           COURT'S ORDER OF JANUARY 25,
17                                         2007, TO COMPEL PRODUCTION OF
                                           DOCUMENTS BY CARTER BRYANT
18                                         AND FOR SANCTIONS**

19  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
20  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
21

22

23

24                       I. INTRODUCTION

25      On May 15, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Enforce the Court's

26  Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for

27

28
    Bryant v. Mattel, Inc.,                                                    1
    CV-04-09049 SGL (RNBx)

                                        EXHIBIT _____10_____

                                        PAGE __c6|19|c7__ 110

1   Sanctions." On May 18, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on

2   May 23, 2007, Mattel submitted a reply brief.  Mattel essentially seeks an order compelling

3   Bryant to produce copies of a document identified on Bryant's privilege log that has been

4   withheld on the basis of the attorney-client privilege.[1]  Having considered all the papers submitted

5   by the parties, Mattel's motion to produce the two documents withheld under a claim of privilege

6   is granted and the request for sanctions is denied.

7                                   II. BACKGROUND

8        In early January of 2007, Mattel filed a motion to compel Bryant to produce, among other

9   things, his fee agreement with MGA in response to Request Nos. 2, 13, and 48.  Bryant argued

10  that such agreements are irrelevant and privileged.  The Discovery Master held that the

11  documents relating to fee or indemnity agreements between MGA and Bryant are relevant to

12  demonstrate bias and lack of credibility.  Accordingly, the Discovery Master ordered Bryant to

13  produce, among other things, all non-privileged documents responsive to Request Nos. 2, 13, and

14  48, and to produce a privilege log in compliance with Rule 26(b)(5), Fed.R.Civ.P.  See Discovery

15  Master's Order Granting Mattel's Motion to Compel Production of Documents, dated January 25,

16  2007 (the "January 25, 2007 Order").

17       On March 16, 2007, Bryant served a privilege log that listed as items Nos. 9 and 10 copies

18  of a fee agreement between MGA and the law firm of Littler Mendelson, P.C. ("Littler").  Littler

19  is counsel of record for Bryant in this action.  Notably, however, the privilege log indicates that

20  the author of the fee agreement is "Robert F. Millman, Esq. (attorney with Littler Mendelson,

21  P.C., counsel for MGA Entertainment, Inc., and acting in his capacity as counsel for MGA

22  Entertainment, Inc.)."  Proctor Decl., Ex. 5.  The recipient is identified as "Daphne Gronich, Esq.

---

   [1] The parties were able to resolve a portion of the motion during the briefing process.  In addition to the fee
   agreements, Mattel originally sought production of a communication between MGA's patent counsel to Mr. Bryant
   regarding a patent for interchangeable doll footgear and feet.  A day before the opposition brief was due, Bryant
   offered to produce the communication if Mattel agreed that doing so would not constitute a waiver of privilege as to
   any other document or testimony.  Mattel accepted Bryant's offer.  See Bryant's Opposition at 1 and Mattel's Reply
   at 1.  Mattel continues to assert, however, that Bryant's conduct warrants sanctions because Bryant should have
   offered to produce the communication during the meet and confer process.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                    2

EXHIBIT ___10___

PAGE ___111___

1   (general counsel for MGA Entertainment, Inc.)." Id. Privilege Log Entry Nos. 9 and 10 are both

2   described as an "addendum to retainer agreement between Littler Mendelson, P.C. and MGA

3   Entertainment, Inc." Id. The only difference in the description is that Privilege Log Entry No. 9

4   is "executed," whereas No. 10 is a "draft." Id. In his opposition brief, Bryant represents that

5   items No. 9 and No. 10 are "the same document, save that one copy has two signatures and the

6   other only one." Id. Bryant is not a party to the fee agreement. MGA, however, has apparently

7   asserted the attorney-client privilege as to item Nos. 9 and 10 and Bryant is withholding the

8   document pursuant to their joint defense agreement. Bryant's Opposition at 3.

9       Mattel contends that the fee agreement identified as items No. 9 and 10 should be

10   produced pursuant to the January 25, 2007 Order. Mattel contends that although Bryant was not a

11   party to that agreement, the agreement between MGA and Littler is nevertheless an agreement for

12   MGA to pay Bryant's legal fees and is relevant to show Bryant's bias and lack of credibility.

13   Mattel further contends that the agreement between MGA and Littler is not privileged under

14   Ninth Circuit law. See e.g. United States v. Blackman, 72 F.3d 1418, 1424 (9th Cir. 1995) ("[a]s a

15   general rule, client identity and the nature of the fee arrangement between attorney and client are

16   not protected from disclosure by the attorney-client privilege."); Clarke v. American Commerce

17   Natl. Bank, 974 F.2d 127, 129 (9th Cir. 1992) ("Our decisions have recognized that the identity of

18   the client, the amount of the fee, the identification of payment by case file name, and the general

19   purpose of the work performed are usually not protected from disclosure by the attorney-client

20   privilege.").

21       Bryant contends that the documents at issue are in his possession solely because they were

22   provided to his counsel under a joint defense agreement. He contends that this joint defense

23   agreement prevents him from waiving the attorney-client privilege asserted by MGA. He further

24   asserts that if Mattel wants to challenge the privilege asserted, Mattel should seek the document

25   directly from MGA.

### III. DISCUSSION

26       For reasons already set forth in the January 25, 2007 Order, the documents at issue are

27   relevant to the claims and defenses in the case. Pursuant to the terms of the January 25, 2007

28   
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                          3

EXHIBIT ___10___

PAGE ___112___

1   Order, Bryant was required to either produce the documents or identify them on a privilege log.

2   As the party withholding the documents, Bryant was required to substantiate the claim of

3   privilege under Federal Rule of Civil Procedure 26(b)(5).  He has failed to do so.  Bryant has not

4   made any attempt to submit affidavits or other admissible evidence to establish that, for instance,

5   the withheld documents contain confidential attorney-client communications made for the

6   purpose of giving legal advice.  Nor has he made any challenge to the caselaw cited by Mattel

7   holding that, in general, fee agreements are not privileged under Ninth Circuit law.  That Bryant

8   and MGA are parties to a joint defense agreement does not excuse Bryant from substantiating the

9   underlying claim of attorney-client privilege.  See Griffin v. Davis, 161 F.R.D. 687, 691 (C.D.

10  Cal. 1995).

11      Moreover, MGA, which participated in the meet and confer on this motion and was served

12  with the motion[2], has not made any attempt to substantiate its claim of the attorney-client

13  privilege other than the unsupported assertions in Bryant's privilege log.  Therefore, the claim of

14  privilege is overruled as to privilege log items Nos. 9 and 10 and the documents are ordered

    produced.

15              IV. CONCLUSION

16      For the reasons set forth above, Bryant is ordered to produce privilege log items Nos. 9

17  and 10 forthwith.  Mattel's motion for sanctions is denied.

18      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

19  Master, Bryant shall file this Order with the Clerk of Court forthwith.

20

21  Dated:  June 19, 2007

22                              /s/Edward A. Infante

23                              _____
                                HON. EDWARD A. INFANTE (Ret.)
24                              Discovery Master

25

26      _____
        [2] See Mattel's Reply at 1.
27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                    EXHIBIT    10.

                                                             PAGE    113

                                                                              4

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on June 19, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF JANUARY 25, 2007, TO COMPEL PRODUCTION OF DOCUMENTS BY CARTER BRYANT AND FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | crna@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on June 19, 2007, at San Francisco, California.

_____
Sandra Chan

EXHIBIT _____ 10
PAGE _____ 114

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   November 28, 2007          **NUMBER OF PAGES, INCLUDING COVER:** 42

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Larry McFarland<br>Keats, McFarland & Wilson | 310-248-3830 | 310-860-0363 |

**FROM:**   Jennifer E. Lewis

**RE:**   Mattel, Inc. v. Bryant

**MESSAGE:**


FAXED
NOV 2 8 2007

| CLIENT # | 7209 | ROUTE/<br>RETURN TO: | Linda Cano | ☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT | 10 |
|---|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED?   ☐ NO  ☐ YES: | | |

EXHIBIT

PAGE   115

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

11/28/2007 13:11 FAX  12134433100          QEUOH-LAO                                    ☑001

```
                        *********************
                   ***   TX REPORT   ***
                        *********************


          TRANSMISSION OK

          TX/RX NO              2673
          RECIPIENT ADDRESS     76681#7209#13108600363
          DESTINATION ID
          ST. TIME             11/28 13:01
          TIME USE·            09'35
          PAGES SENT            42
          RESULT               OK
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

DATE:    November 28, 2007                    NUMBER OF PAGES, INCLUDING COVER: 42

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Larry McFarland<br>Keats, McFarland & Wilson | 310-248-3830 | 310-860-0363 |

FROM:    Jennifer E. Lewis

RE:     Mattel, Inc. v. Bryant

MESSAGE:

EXHIBIT _____ 10
PAGE _____ 116

# EXHIBIT 11

DEC 03 2007 18:01 FR KMTS MCFARLAND WILSO  3108600363 TO 7945#10595#00001 P.02/06

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

www.kmwlaw.com

December 3, 2007

VIA FACSIMILE AND U.S. MAIL

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

     Re:    Mattel v. Bryant

Dear Dylan:

     I am writing in response to your letter dated November 28, 2007.

     First, we will make photocopies of the three-dimensional objects that have been produced to you and will assign each photo a Bates number. With respect to my question regarding the photographs and video taken by your firm of the sculpts and three-dimensional objects that we have produced, you ignored my question with respect to whether you intend to use these videotapes or photographs at the depositions of any of my clients. I would appreciate the courtesy of an answer.

     Second, this letter serves to confirm that an associate from your office, along with two assistants, visited our offices today to photograph and videotape the remaining three-dimensional items produced by Ms. Marlow and Ms. Leahy. We expect that they will return tomorrow to complete their review of the items.

     Third, with respect to the computer disk belonging to Ms. Cloonan, we spoke with Mr. Albee on Friday. Mr. Albee emailed me the search results on Friday and we will review and respond within the five-day time frame as agreed.

     Fourth, you state that "Judge Infante has already found fee agreements to be relevant to bias and credibility, and non-privileged."[1] Our review of the orders attached to your letter reveals that these orders apply to Mr. Bryant and MGA, who are, of course, both parties to this litigation. We are not aware of any orders entered by Judge Infante with respect to the production of retainer agreements by third parties. Moreover, your reliance on Judge Infante's orders is undercut by the

---

[1] As we have repeatedly stated, it is our position that all discovery disputes with respect to our witnesses must be heard by Magistrate Judge Block.

EXHIBIT 11

PAGE 17

DEC 03 2007 18:01 FR K⌐ )TS MCFARLAND WILSO   3108600363 TO ?945H10595H00001 P.03/06

B. Dylan Procter, Esq.
December 3, 2007
Page 2

positions taken by your firm. It is my understanding that after Judge Infante's order dated
January 25, 2007, your firm objected to the production of third-party retainer letters as privileged
and that you have stood by these objections and not produced these agreements. In the
Objections of Mattel, Inc. and Timothy James Lider to MGA Entertainment Inc.'s Subpoena for
Production of Documents, dated March 29, 2007, you stated as follows:

> Request NO. 9:
>
> All DOCUMENTS constituting, mentioning, referring or relating to any
> agreement or contract between YOU and MATTEL, including MATTEL's inside
> and outside counsel.
>
> RESPONSE TO REQUEST NO. 9:
>
> Mattel and Lider object to Request No. 9 on the grounds that it is overbroad and
> unduly burdensome, including in that it seeks all documents on this subject,
> regardless of whether such documents relate to products or matters at issue in this
> case. Mattel and Lider further object to the Request on the grounds that it seeks
> documents that are not relevant to this action or likely to lead to the discovery of
> admissible evidence. Mattel and Lider further object to this Request on the
> grounds that is seeks confidential, proprietary and trade secret information that
> has no bearing on the claims or defenses in this case. Mattel and Lider further
> object to this Request on the grounds that it seeks documents that are protected
> from disclosure by the attorney-client privilege, the attorney work product
> doctrine, and the non-designated expert consultant privilege.
>
> Without waiving, and subject to, the foregoing objections and/or privileges, Lider
> responds as follows: Lider will produce responsive documents in his possession,
> custody or control, if any, relating to the chain of custody of electronic data
> relating to MGA's and the other counter-defendants' thefts of Mattel's trade
> secrets, to the extent not protected by the attorney-client privilege, the work
> product doctrine and/or the non-designated expert consultant privilege.

If you have produced the retainer letter for Mr. Lider or any other third-party, please
provide me with a copy of that document.

Further, it is my understanding that as recently as September 4, 2007, which is well after
the dates of all of the orders from Judge Infante that you rely on in your letter, Mattel has
continued to take the position that retainer letters are privileged. I am at a loss to understand
how you can contend that "Judge Infante has already found fee agreements to be relevant to bias
and credibility, and non-privileged," while at the same time objecting as follows:

EXHIBIT _____ 11
PAGE _____ 118

DEC 03 2007 18:02 FR   QTS MCFARLAND WILSO  3109600363 T'   45#10595#00001 P.03/06

B. Dylan Procter, Esq.
December 3, 2007
Page 2

positions taken by your firm. It is my understanding that after Judge Infante's order dated January 25, 2007, your firm objected to the production of third-party retainer letters as privileged and that you have stood by these objections and not produced these agreements. In the Objections of Mattel, Inc. and Timothy James Lider to MGA Entertainment Inc.'s Subpoena for Production of Documents, dated March 29, 2007, you stated as follows:

Request NO. 9:

All DOCUMENTS constituting, mentioning, referring or relating to any agreement or contract between YOU and MATTEL, including MATTEL's inside and outside counsel.

RESPONSE TO REQUEST NO. 9:

Mattel and Lider object to Request No. 9 on the grounds that it is overbroad and unduly burdensome, including in that it seeks all documents on this subject, regardless of whether such documents relate to products or matters at issue in this case. Mattel and Lider further object to the Request on the grounds that it seeks documents that are not relevant to this action or likely to lead to the discovery of admissible evidence. Mattel and Lider further object to this Request on the grounds that is seeks confidential, proprietary and trade secret information that has no bearing on the claims or defenses in this case. Mattel and Lider further object to this Request on the grounds that it seeks documents that are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and the non-designated expert consultant privilege.

Without waiving, and subject to, the foregoing objections and/or privileges, Lider responds as follows: Lider will produce responsive documents in his possession, custody or control, if any, relating to the chain of custody of electronic data relating to MGA's and the other counter-defendants' thefts of Mattel's trade secrets, to the extent not protected by the attorney-client privilege, the work product doctrine and/or the non-designated expert consultant privilege.

If you have produced the retainer letter for Mr. Lider or any other third-party, please provide me with a copy of that document.

Further, it is my understanding that as recently as September 4, 2007, which is well after the dates of all of the orders from Judge Infante that you rely on in your letter, Mattel has continued to take the position that retainer letters are privileged. I am at a loss to understand how you can contend that "Judge Infante has already found fee agreements to be relevant to bias and credibility, and non-privileged," while at the same time objecting as follows:

EXHIBIT ____11____

PAGE ____119____

DEC 03 2007 18:02 F   ATS MCFARLAND WILSO   3108600363    45H10595H00001 P.04/06

B. Dylan Procter, Esq.
December 3, 2007
Page 3

### Request 530:

All DOCUMENTS, including but not limited to agreements, draft agreements and correspondence, REFERRING OR RELATING TO the payment or offer of payment of attorneys fees by MATTEL to any PERSON in connection this ACTION.

### Response:

In addition to the general objections stated above which are incorporated herein by reference, Mattel objects to this Request on the grounds that it is overbroad, unduly burdensome and unintelligible, including in that it seeks all documents on this subject without limitation as to time, and regardless of whether such documents relate to products or matters at issue in this case. Mattel further objects to the Request on the grounds that it seeks documents that are not relevant to this action or likely to lead to the discovery of admissible evidence. Mattel further objects to this Request on the grounds that it calls for the disclosure of information subject to the attorney-client privilege, joint defense privilege, the attorney work-product doctrine and other applicable privileges.

Subject to and without waiving the foregoing objections, Mattel responds as follows: Mattel will produce such responsive, non-privileged documents that are in Mattel's possession, custody, or control, if any, that Mattel has been able to locate after a diligent search and reasonable inquiry, to the extent not previously produced.

### Request 531:

DOCUMENTS sufficient to show YOUR fee arrangement with YOUR counsel Quinn Emanuel Urquhart Oliver & Hedges LLP for services in connection with this ACTION, including, but not limited to, a copy of the fee agreement or retainer agreement between YOU and Quinn Emanuel Urquhart Oliver & Hedges LLP.

### Response:

In addition to the general objections stated above which are incorporated herein by reference, Mattel objects to this Request on the grounds that it is overbroad, unduly burdensome and unintelligible, including in that it seeks all documents on this subject without limitation as to time, and regardless of whether such documents relate to products or matters at issue in this case. Mattel further objects to the Request on the grounds that it seeks documents that are not relevant to this action or likely to lead to the discovery of admissible evidence. Mattel further objects to this Request on the grounds that it calls for the disclosure of information subject to the attorney-client privilege, the attorney work-product doctrine and other applicable privileges.

EXHIBIT ___ 11
PAGE ___ 120

DEC 03 2007 18:03 FP    STS MCFARLAND WILSO  3108600363 TO   45#10595#00001 P.05/06

B. Dylan Procter, Esq.
December 3, 2007
Page 4

        You also state in your letter that, "[a]s the Court has held, the Business and Professions
Code's privilege provisions do not apply in this federal question case, which is governed by
federal privilege law." I do not see this holding in the orders attached to your letter. If I have
missed it, I would appreciate it if you would direct me to this holding. Finally, with respect to
your statements regarding a privilege log, as I stated in my letter dated November 21, 2007, it is
our position that the fee agreements between our clients and their attorneys, as well as all
correspondence between our clients and their attorneys, are privileged. In all of my years of
practice, I have never provided a privilege log listing all of the correspondence between me and
my clients where my clients are not parties to the litigation. If you believe that I am required to
do this, please direct me to the relevant authority. In addition, please confirm whether your firm
has produced such a privilege log identifying all communications to and from Mattel.

        Fifth, we continue to disagree with your contention that you are "entitled to unredacted
copies of all documents that have been produced by your clients." In support of your argument
you again cite to orders by Judge Infante that address specific discovery disputes between the
parties to this action. Not only are all discovery disputes by their nature fact specific, in the case
of disputes with a third party witness, nonparty status may be considered in evaluating the burden
of complying with a production subpoena under Rule 45. *See Richards of Rockford, Inc. v. Pac.
Gas & Elec. Co.*, 71 F.R.D. 388, 390 (N.D. Cal. 1976) (status of nonparty considered in deciding
motion to compel testimony and production of documents); *see also Katz v. Batavia Marine &
Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty status may be
considered by the court in weighing the burdens"). Therefore, the orders that you rely on are not
controlling as to my clients. In addition, I do not appreciate your threat that if we do not do what
you want, you will burden our third-party witnesses with an additional day of deposition. As you
know, I have long taken the position that I will not allow the depositions of these witnesses to go
beyond one day of seven hours. With respect to the redactions, the matters that we redacted from
the documents were not relevant to this litigation and I am unaware of any requirement that we
produce irrelevant information. For example, certain email chains contained both relevant and
irrelevant information, and we properly redacted the irrelevant information. However, in an
effort to avoid burdening the Court with unnecessary motion practice, we will produce to you
unredacted copies of all of the documents that we have produced other than Ms. Leahy's planner.
Our position with respect to Ms. Leahy's planner is set forth in my letter dated November 14,
2007 and remains unchanged.

        Lastly, with respect to the bank records of Ms. Marlow, on Thursday, November 29, 2007,
at approximately 5:00 p.m. you notified me for the first time that your firm was in possession of
all of Ms. Marlow's bank records from Wells Fargo. As you know, this is a violation of the
agreement reached with your partner Susan Wines. That agreement required that all bank
records be produced to me for my review and I would produce all of the documents that related
to agreed upon persons and entities. That agreement was reached after I notified Ms. Wines that I
intended to file an ex parte application to quash a similar subpoena served on Mattel Federal
Credit Union with respect to the bank records for Ms. Cloonan and Ms. Marlow. As you know,
Ms. Wines confirmed our agreement in a letter dated June 14, 2007. In addition, in letters dated

EXHIBIT _____ ll
PAGE _____ l3l

DEC 03 2007 18:03 FF    ATS MCFARLAND WILSO  3103600363 TO   45#10595#00001 P.05/06

B. Dylan Procter, Esq.
December 3, 2007
Page 5

July 23, 2007, September 21, 2007, and November 21, 2007, I notified your firm that I had not yet received the bank records from Wells Fargo. When you told me on Thursday that you were in possession of all of Ms. Marlow's bank records from Wells Fargo, I asked you to agree to return all copies and originals of the Wells Fargo bank records, to confirm that your firm had not reviewed or made any use of these documents and to provide me with the date that your firm received these documents. You told me that you would consider my request. On Friday, I received a copy of the Wells Fargo documents with a cover letter from you that stated as follows:

> Further to our conversation of today, enclosed herewith you will find the Wells Fargo documents relating to your client, Veronica Marlow, as produced by Mattel to the other parties in this action. As I explained, Wells Fargo sent these documents directly to us without any prompting by us, notwithstanding our prior understanding that the documents would be produced to you, and in the normal course of handling they were produced to all parties on October 2, 2007.

Although you did not answer my question with respect to when your firm received these documents, I note that the Wells Fargo declaration provided with the documents is dated August 27, 2007, which is well after both the date of the agreement entered into by Ms. Wines and my letter dated July 23, 2007, informing you that I had not yet received the banking records. Without waiver of our position that your firm has violated Ms. Marlow's privacy rights and has breached the agreement entered into with Ms. Wines, I reiterate my request that you return all copies and originals of the Wells Fargo bank records, confirm that your firm has not reviewed or made any use of these documents, and provide me with the date that your firm received these documents.

With respect to your request regarding additional bank accounts used by Ms. Marlow in connection with her work with MGA, in light of your firm's violation of our agreement and, as I mentioned to you on Thursday, I believe that Ms. Marlow needs additional protection in order to proceed. What I suggested during our telephone conversation is that you identify the place of production as our offices in all of the subpoenas served on these additional financial institutions. If you agree to this condition, I will provide you with the additional information.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

cc: Thomas J. Nolan
    Michael Page

EXHIBIT ___ 11

PAGE 122   ** TOTAL PAGE.05 **

DEC 03 2007 18:00 FR KEATS MCFARLAND WILSO  3109600363 TO 9945#10595#00001 P.01/06

# K E A T S   M c F A R L A N D   &   W I L S O N   LLP

### A T T O R N E Y S   A T   L A W

9720  WILSHIRE  BOULEVARD
PENTHOUSE  SUITE
BEVERLY  HILLS,  CALIFORNIA   90212
TELEPHONE  (310)  248-3830
FAX  (310)  860-0363

## FACSIMILE TRANSMITTAL SHEET

| | | | |
|---|---|---|---|
| **To:** | Dylan Proctor, Esq. | **From:** | Larry W. McFarland, Esq. |
| **Company:** | Quinn Emanuel Urquhart Oliver & Hedges, LLP | **Date:** | 12/3/2007 |
| **Fax No.:** | 213-443-3100 | **Pages:** | 6 |
| **Phone No.:** | 213-443-3000 | **Ref No.:** | 10595.1 |
| **Re:** | Mattel v. Bryant | | |

☐ URGENT  ☐ FOR REVIEW  ☐ PLEASE COMMENT  ☐ PLEASE REPLY  ☐ PLEASE RECYCLE

NOTES/COMMENTS:

Please see attached correspondence.

### PRIVACY NOTICE

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.

If the reader of this message is not the intended recipient or the employee of agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.

EXHIBIT 11
PAGE 193