# EXHIBIT 12

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

December 6, 2007

VIA FACSIMILE AND U.S. MAIL

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:   Mattel v. Bryant, et al.

Dear Larry:

I write in response to your letter of December 3, 2007.

First, thank you for agreeing to provide unredacted copies of all documents produced by Ms.
Marlow, Ms. Leahy and Ms. Cloonan in this action, other than Ms. Leahy's planner.  Although I
have not yet had an opportunity to examine its contents, I received today a letter from you
enclosing unredacted documents.  We will let you know if there are any further issues regarding
these documents (other than, of course, our ongoing disagreement with Ms. Leahy's refusal to
produce unredacted copies of her planner).

Second, please let us know when we can expect to receive the Bates numbered photocopies of
the three-dimensional objects that have been produced by your clients.  Regarding your request
that we inform you whether we intend to show photographs or videotapes of these objects to
your clients at deposition, please understand that we are not required to inform you in advance
what documents and exhibits we intend to show your clients at deposition.  However, as you
know Mattel has subpoenaed the original objects produced by Ms. Leahy for production at the
deposition.

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue. 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560. Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2314479.1

**EXHIBIT** _____

**PAGE** _____ 134

Third, we continue to disagree with your assertions that your clients' fee agreements with MGA need not be produced for reasons we have explained previously. We appear to have inadvertently failed to include the Order holding that federal privilege law applies in this case with our prior letter. See Order Re Motions Heard On June 11, 2007, dated June 27, 2007, at 33-34. Therefore, a copy of this order is attached for your reference, pursuant to your request. As you will see, the Court has clearly held that the Business and Professions Code's privilege provisions which you cited in your November 21, 2007 letter do not apply in this federal question case, which is governed by federal privilege law. Your misguided assertions about Mattel's objections to other subpoenas and Mattel's responses to other parties' requests for production are irrelevant here. Your clients' obligations to produce fee agreements revealing their biases are quite clear under prior Court Orders. If you will not produce them, we will move to compel their production.

Fourth, your assertion that your clients need not log or provide any description of documents they are withholding on privilege claims is erroneous. Third parties are required to produce privilege logs under the Federal Rules. See Federal Rule of Civil Procedure 45(d)(2) ("When information subject to a subpoena is withheld on a claim that it is privileged . . ., the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim"). The "universally accepted" means of claiming that requested documents are privileged is the production of a document-by-document privilege log. See Gail v. New England Gas Co., Inc., 243 F.R.D. 28, 33 (D. R.I. 2007) (discussing requirement in the context of Rule 45); Martinez v. City of Fresno, 2006 WL 3762050, at *6 (E.D. Cal. 2006) (over-generalized descriptions that fail to adequately identify specific documents are insufficient in a privilege log). Here, you have offered literally no description of the purportedly privileged documents you are withholding. That is clearly improper.

Your remark that you have never before logged "all of the correspondence between me and my clients where my clients are not parties to the litigation" is a red herring. The point is, your clients have not produced a privilege log for *any* of their withheld documents, including any documents they are withholding from key time periods in the case. Nevertheless, in an effort to avoid burdening you and your clients to greatest extent possible, we are willing to accept privilege logs from Ms. Marlow, Ms. Cloonan, Ms. Leahy and Ms. Halpern that do not include or log communications that are exclusively between Marlow, Cloonan, Leahy or Halpern and yourself or other attorneys at your firm sent on or after January 1, 2006, that were not copied or addressed to other parties or third parties and that do not relate to fee or indemnification matters. All other documents should be logged. We will assume you are not willing to do so, but please let us know if you will reconsider and will produce the overdue privilege logs as soon as possible.

Fifth, pursuant to your request for this information, our records indicate that we received Ms. Marlow's Wells Fargo bank records from Wells Fargo on September 6, 2007. Contrary to your assertions, however, and as I explained on our call, we did not violate the agreement between yourself and Ms. Wines in any way. In fact, to the contrary, Ms. Wines sent a letter to Wells

EXHIBIT __12__

PAGE __125__

Fargo on June 14, 2007 specifically requesting that Wells Fargo produce Ms. Marlow's documents directly to your office. You were copied on this letter. Thus, as you know, Wells Fargo's production of these documents to our offices was simply a mistake on the part of Wells Fargo, and nothing more.

Regarding your request that we somehow unring the bell and return the Wells Fargo bank records to you, your letter identifies no basis for your position. As you have seen, the documents are non-privileged and discoverable, and they were circulated to all parties months ago. If you have any basis for requesting the return of these non-privileged documents or authorities supporting that request, please let us know. However, the parties' prior agreement that you would pre-screen these documents appears moot at this stage of the proceedings with respect to those documents. Please let us know if you wish to discuss this matter further.

In any case, pursuant to your request, we will agree to identify your office as the place of production on future subpoenas for Ms. Marlow's records that we serve on the additional financial institutions you have agreed to identify. Please provide us with the information concerning additional bank accounts used by Ms. Marlow as soon as possible.

I look forward to hearing from you.

Very truly yours,

B. Dylan Proctor

Enclosures

3

EXHIBIT 12

PAGE 126



CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority ___ Send ___
Entered ___ Closed ___
JS-5/JS-6 ___ JS-2/JS-3 ___
Scan Only___ Docketed on CM ___
___THIS CONSTITUTES NOTICE OF
ENTRY AS REQUIRED BY FRCP 77(d)
JUN 27 2007
EASTERN DIVISION
BY ___ DEPUTY

FILED - EASTERN DIVISION
CLERK, U.S. DISTRICT COURT
JUN 27 2007
CENTRAL DISTRICT OF CALIFORNIA
BY ___ JIM HOLMES DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

Plaintiff,

v.

MATTEL, INC.,

Defendant,

_____

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-09049 SGL

CONSOLIDATED WITH
CV 04-09059 SGL
CV 05-02727 SGL

ORDER RE MOTIONS HEARD ON
JUNE 11, 2007

Presently before the Court is a multitude of motions filed by a number of parties in these consolidated cases. The factual allegations underlying the present actions are expansive and complex. They are set forth below only to the extent necessary for the Court's consideration of the present motions. At their essence, although involving a number of other legal and factual issues, these cases involve the rights to certain fashion dolls.

The present motions, six in total, focus on four basic issues: Two of the motions, filed by certain counter-defendants, address the sufficiency of the allegations made by Mattel, Inc. ("Mattel") in its counterclaims; most notably, these motions challenge the sufficiency of the allegations which underlie Mattel's claims based on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.

Docket No. 577

EXHIBIT 7 12
PAGE 127

1   §§ 1961-1968 ("RICO").  Another motion challenges the Court's exercise of

2   personal jurisdiction over a foreign corporation, MGAE de México, S.R.L. de C.V.

3   ("MGA Mexico").  Two additional motions seek review of a ruling, issued by a court-

4   appointed discovery master, overruling objections made during a party's deposition

5   that were based on the attorney-client and joint-defense privileges.  A final motion

6   heard on June 11, 2007, addresses the Court's scheduling order that divided the

7   issues to be tried in these consolidated cases into two phases.  This last motion will

8   be addressed in a separate order.

9        The Court has reviewed the parties' filings regarding these motions and held

10  a hearing on June 11, 2007.  For the reasons and in the manner set forth more fully

11  herein, the Court makes the following rulings regarding these motions:

12       1.     Motion of MGA Entertainment, Inc., ("MGA") and Issac Larian

13  ("Larian") to Dismiss Mattel's Amended Answer and Counterclaims (docket # 189):[1]

14  **GRANTED IN PART AND DENIED IN PART.**

15       2.     Motion of Carter Bryant to Dismiss Counterclaims II, III, V, VII, IX, and

16  XI (docket # 191):  **GRANTED IN PART AND DENIED IN PART.**

17       3.     Motion of MGA Mexico to Dismiss Mattel's Amended Answer and

18  Counterclaims (docket # 266):  **DENIED.**

19       4.     Motion of MGA Objecting to Discovery Master's March 7, 2007, Order

20  (docket # 308):  **GRANTED IN PART AND DENIED IN PART.**

21       5.     Motion of Carter Bryant Objecting to Discovery Master's March 7,

22  2007, Order (docket # 306):  **GRANTED IN PART AND DENIED IN PART.**

23

24

25

26

27       [1] Joining in this Motion were MGA Entertainment (HK) Ltd. ("MGA Hong

28  Kong"); Carter Bryant ("Bryant"), and MGA Mexico.

2

EXHIBIT ___12___

PAGE ___128___

## I. Factual Allegations

The following allegations appear in the Amended Answer and Counterclaims ("AAC"):

### A.   Bryant's Employment by Mattel

Carter Bryant was hired by Mattel as a Barbie product designer in January 1999.  (AAC ¶ 21.)  At that time, Bryant signed an "Employee Confidential Information and Inventions Agreement," wherein he agreed not to assist or work for a Mattel competitor while employed by Mattel and that the designs and inventions he created while employed by Mattel were Mattel property.  (AAC ¶¶ 22-23.)  Bryant also executed a "Conflict of Interest Questionnaire" wherein he certified that, other than as disclosed, he had not worked for a Mattel competitor in the past year, had not engaged in a business transaction with a Mattel competitor that could create a conflict of interest, and that he would inform Mattel immediately if such an event occurred.  (AAC ¶¶ 24-25.)  While still employed by Mattel, Bryant used Mattel property and resources to develop and design the Bratz concept.  (AAC ¶ 26.)  Bryant also allegedly enlisted other Mattel employees to perform work on the Bratz line, in some cases, falsely informing those employees that they were working on a Mattel project.  (AAC ¶ 27.)

### B.   MGA's Involvement in Bryant's Conduct

MGA knew of and encouraged Bryant's misappropriation of Mattel property and resources.  (AAC ¶ 33.)  Bryant made affirmative misrepresentations to Mattel, including that he was leaving Mattel for "non-competitive" pursuits.  (AAC ¶ 28.)  Bryant and MGA concealed from Mattel that Bryant developed Bratz while employed by Mattel, that Bryant worked with MGA during the time he was employed by Mattel, and that Larian and others, not Bryant, were the creators of Bratz.  (AAC ¶ 35.)  Prior to his departure from MGA, Bryant entered into a contract with MGA to provide design services to MGA on a "top priority" basis.  (AAC ¶ 36.)  Bryant left Mattel's employ on October 20, 2000; three weeks later, MGA

3

EXHIBIT ___12___

PAGE ___129___

1  showed the Bratz prototypes to focus groups and retailers.  (AAC ¶ 29.)  Soon

2  thereafter, MGA showed the Bratz line to retailers at the Hong Kong Toy Fair in

3  January, 2001, and then began manufacturing and selling the dolls to retailers for

4  an annual revenue in the excess of $500 million.  (AAC ¶¶ 31-32.)

5  C.  **Proprietary Information**

6      1.  **Mexico**

7      Counter-defendant Carlos Gustavo Machado Gomez ("Machado"), nonparty

8  Mariana Trueba Almada ("Trueba"), and nonparty Pablo Vargas San Jose

9  ("Vargas") were upper-level employees at Mattel Mexico.  (AAC ¶¶ 38-40.)  In the

10  three months before all three simultaneously resigned from Mattel Mexico on April

11  19, 2004, they were in contact with MGA via an email account with the address

12  "plot04@aol.com".  (AAC ¶ 42.)  The three former employees allegedly used this

13  account to supply MGA with confidential and proprietary Mattel information.  (AAC

14  ¶ 42.)  The three also copied various proprietary Mattel documents onto USB flash

15  drives prior to resigning.  (AAC ¶ 44-46.)  Shortly before her departure, Trueba

16  increased her access to Mattel's confidential information and attended a meeting at

17  which Mattel personnel analyzed Barbie programs for the United States, Canada,

18  and South America.  (AAC ¶ 47.)

19      Among them, Machado, Trueba, and Vargas stole documents containing

20  information regarding Mattel's future products, production and shipping costs, sales

21  information, customer information, marketing information, and strategic research

22  information both in Mexico and worldwide.  (AAC ¶ 48.)  The stolen data was not

23  limited to the Mexican market; rather, the information stolen had the potential, and

24  in fact did, give MGA an unfair competitive advantage in the United States and

25  around the world.  (AAC ¶ 49.)

26      In an attempt to conceal his actions, Machado ran a software program on his

27  Mattel computer in order to erase information pertaining to his contact with MGA.

28  (AAC ¶ 51.)  When Mattel alerted Mexican authorities about the theft, they seized

4

EXHIBIT  12

PAGE  130

1   from MGA's Mexico City offices, pursuant to a search warrant, a large number of
2   documents containing Mattel trade secrets and confidential information.  (AAC
3   ¶ 53.)
4          Shortly after the theft, Machado, Trueba, and Vargas traveled to Los
5   Angeles to meet face-to-face with MGA personnel.  (AAC ¶ 52.)
6          **2.    Canada**
7          Jane Brisbois was the Director of Sales for the Girls Division in Canada.
8   (AAC ¶ 71.)  When she was hired in 1999, she agreed to preserve and not disclose
9   Mattel's proprietary information.  (AAC ¶ 71.)  While still employed by Mattel,
10  Brisbois spoke with Larian on September 22, 2005.  (AAC ¶ 74.)  That same day,
11  Brisbois copied approximately 45 Mattel documents containing Mattel trade secret
12  information into a USB flash drive that she took from the Mattel Canada office.
13  (AAC ¶ 74.)  The files taken by Brisbois included documents regarding Mattel sales,
14  advertising strategies, market analyses, product launch dates, and profit margins in
15  Canada, Mexico, and the United States.  (AAC ¶ 74.)  Four days later, she resigned
16  from Mattel.  (AAC ¶ 74.)
17         When Mattel learned of Brisbois' misappropriation of Mattel documents, it
18  notified Canadian law enforcement officials, who were able to recover the flash
19  drive and the documents from Brisbois.  (AAC ¶ 75.)
20         **3.    United States**
21         Ron Brawer was Mattel's Senior Vice President and General Manager.
22  (AAC ¶ 55.)  On September 17, 2004, Brawer informed Mattel that he was leaving
23  Mattel to work for MGA.  (AAC ¶ 63.)  During Brawer's exit interview, he falsely
24  represented that he had returned all proprietary information to Mattel; specifically,
25  Brawer took the information in his contacts file which included contact information
26  for Mattel customers and Mattel employees.  (AAC ¶ 68.)  Brawer has since used
27  the contact information to induce certain Mattel employees to join MGA and
28  misappropriate Mattel trade secrets.  (AAC ¶ 69.)

5

EXHIBIT _____ 12
PAGE _____ 131

1    MGA has also allegedly hired at least 25 other Mattel employees, some of

2  whom have provided MGA with Mattel's confidential information.  (AAC ¶ 77.)

3  **D.    Larian's Communications Regarding Mattel's New Product Line**

4    On May 12, 2006, Larian sent an email message to an email distribution list

5  that included a reference to a new Mattel Barbie line ("MY SCENE MY BLING

6  BLING") which Mattel had not yet made public.  (AAC ¶ 79.)  The distribution of the

7  email included members of the media and many of Mattel's most significant

8  customers.  (AAC ¶ 78.)  Soon after sending the email, Larian began calling these

9  significant customers and making false representations about the product;

10  specifically, Larian told each that it was the only retailer to purchase the product

11  and that Mattel would not be supporting the product with television advertising.

12  (AAC ¶ 80.)

13  **E.    Exhibit C**

14    In Exhibit C to the AAC, Mattel references a number of communications,

15  numbering well over one hundred, that it contends constitutes predicate acts of mail

16  fraud or wire fraud.  Exhibit C does not describe the contents of those

17  communications.

18                    **II. Counterclaims Asserted**

19    Based on these allegations, Mattel asserts the following counterclaims:

20  (1) Copyright Infringement, including willful, vicarious, and contributory

21  infringement, asserted against MGA, MGA Hong Kong, Larian and Bryant;

22  (2) violation of RICO's substantive prohibition, 18 U.S.C. § 1962(c), asserted as

23  authorized by 18 U.S.C. § 1964(c) against all defendants, which alleges predicate

24  acts of, *inter alia*, mail fraud, wire fraud, and criminal copyright infringement; (3) a

25  violation of RICO's prohibition against conspiracies, 18 U.S.C. § 1962(d), asserted

26  against all defendants; (4) state-law misappropriation of trade secrets against MGA,

27  MGA Mexico, Larian, and Machado; (5) breach of contract, asserted against Bryant

28  only and based on certain employment agreements between Bryant and Mattel;

6

EXHIBIT ___12___

PAGE ___132___

1    (6) intentional interference with contract, asserted against MGA and Larian and

2    based on Bryant's employment agreements; (7) breach of fiduciary duty, asserted

3    against Bryant and Machado; (8) aiding and abetting breach of fiduciary duty,

4    asserted against MGA and Larian; (9) breach of the duty of loyalty, asserted

5    against Bryant and Machado; (10) aiding and abetting breach of the duty of loyalty,

6    asserted against MGA and Larian; (11) conversion, asserted against all counter-

7    defendants; (12) violation of California's unfair competition law, Cal. Bus. & Prof.

8    Code § 17200, asserted against all counter-defendants; and finally, (13) a claim for

9    declaratory relief.

10       **III. Counter-Defendants' Motions to Dismiss for Failure to State a Claim**

11          The parties have moved to dismiss a number of Mattel's counterclaims on

12   various grounds.  The Court addresses each claim in turn, considering at all times

13   the standard for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

14   A.    **Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

15          In lieu of an answer, a party may, as the counter-defendants have here, file a

16   motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which provides that such a

17   motion may be made where the pleader has "fail[ed] to state a claim upon which

18   relief can be granted."  Id.  In deciding a Rule 12(b)(6) motion, the Court must also

19   consider the requirements of Fed. R. Civ. P. 8(a), which requires only a "short and

20   plain statement of the claim showing that the pleader is entitled to relief" or, when

21   the claim at issue avers fraud or mistake, the motion must be considered in

22   conformity with Fed. R. Civ. P. 9(b), which requires fraud and mistake to be pleaded

23   with particularity.  See 5A Charles A. Wright & Arthur Miller, Federal Practice and

24   Procedure, §1356 (1990); James Wm. Moore, Moore's Federal Practice, Vol. 2

25   § 12.34[1][c].

26          In bringing a motion pursuant to Rule 12(b)(6), the moving party has the

27   burden of persuading the Court that the complaint has failed to state a claim upon

28   which relief can be granted.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406,

7

EXHIBIT 12

PAGE 133

1  1409 (3d Cir.), cert. denied, 501 U.S. 1222 (1991). In considering the motion,

2  "courts must consider the complaint in its entirety," and read it in the light most

3  favorable to the plaintiff, accepting as true all factual allegations in the complaint, as

4  well as reasonable inferences to be drawn therefrom. Tellabs, Inc. v. Makor Issues

5  & Rights, Ltd., __ U.S. __, No. 06-484,  2007 WL 1773208, at *9 (June 21, 2007);

6  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  However, the Court need not

7  accept any unwarranted deductions of fact, or conclusory legal statements cast in

8  the form of factual allegations.  See Western Mining Council v. Watt, 643 F.2d 618,

9  624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981).

10    Generally, a court cannot consider evidence in deciding a Rule 12(b)(6)

11  motion; however, a court may consider exhibits attached to the complaint as well as

12  documents that are not physically attached to the complaint but "whose contents

13  are alleged in [the] complaint and whose authenticity no party questions." Branch v.

14  Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), cert. denied, 512 U.S. 1219 (1994).

15  Facts of which a court may take judicial notice pursuant to Fed. R. Evid. 201 are

16  also properly considered.  Mir v. Little Company of Mary Hospital, 844 F.2d 646,

17  649 (9th Cir. 1988).

18  **B.    RICO Claims**

19    The counter-defendants devote most of their motions to the sufficiency of the

20  allegations regarding Mattel's RICO claims. The Court's analysis begins, as it must

21  when considering a federal statute, with the language of that statute.  The

22  substantive RICO prohibition at issue is found in 18 U.S.C. § 1962(c):

23        It shall be unlawful for any person employed by or associated

24    with any enterprise engaged in, or the activities of which affect,

25    interstate or foreign commerce, to conduct or participate, directly or

26    indirectly, in the conduct of such enterprise's affairs through a pattern

27    of racketeering activity or collection of unlawful debt.

28  Id. Conspiracies to violate this substantive prohibition are themselves prohibited by

8

EXHIBIT  12

PAGE  134

1   § 1962(d), which states that "[i]t shall be unlawful for any person to conspire to

2   violate any of the provisions of subsection (a), (b), or (c) of this section." Id.  Many

3   of these terms are defined by the statutory language, including "racketeering

4   activity," "enterprise," and "pattern of racketeering activity":

5           (1) "racketeering activity" means . . . (B) any act which is

6       indictable under any of the following provisions of title 18, United

7       States Code: . . . section 1341 (relating to mail fraud), section 1343

8       (relating to wire fraud), . . . section 1512 (relating to tampering with a

9       witness, victim, or an informant), . . . section 1952 (relating to

10      [interstate and foreign travel or transportation in aid of racketeering

11      enterprises]), [and] section 2319 (relating to criminal infringement of a

12      copyright)[.]

13                            . . . .

14          (4) "enterprise" includes any individual, partnership,

15      corporation, association, or other legal entity, and any union or group

16      of individuals associated in fact although not a legal entity;

17          (5) "pattern of racketeering activity" requires at least two acts of

18      racketeering activity, one of which occurred after the effective date of

19      this chapter and the last of which occurred within ten years (excluding

20      any period of imprisonment) after the commission of a prior act of

21      racketeering activity[.]

22   18 U.S.C. § 1961.

23      In considering a Rule 12(b)(6) motion seeking to dismiss a RICO claim, the

24   Court measures the sufficiency of alleged predicate acts of wire fraud and mail

25   fraud by the Rule 9(b) "pleading-with-particularity" standard; however, the Court

26   measures the sufficiency of all other predicate acts by the more lenient standard set

27   forth in Rule 8(a).  Compare Fed. R. Civ. P. 9(b) ("In all averments of fraud or

28   mistake, the circumstances constituting fraud or mistake shall be stated with

9

EXHIBIT ___12___

PAGE ___135___

1   particularity. Malice, intent, knowledge, and other condition of mind of a person

2   may be averred generally.") with Fed. R. Civ. P. 8(a) ("A pleading which sets forth a

3   claim for relief, . . . shall contain . . . (2) a short and plain statement of the claim

4   showing that the pleader is entitled to relief . . . ."); see Lancaster Community Hosp.

5   v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991) (applying Rule

6   9(b) standard to allegations of mail fraud and noting that "[t]he Ninth Circuit has

7   repeatedly insisted that [Rule 9(b)] be followed in RICO actions alleging the

8   predicate act of mail fraud."), cert. denied, 502 U.S. 1094 (1992).

9          In order to state its claim under § 1962(c), Mattel "must allege (1) conduct

10   (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing

11   injury to [its] business or property." Ove v. Gwinn, 264 F.3d 817, 825 (9th Cir.

12   2001) (internal quotation marks and citation omitted). Here, counter-defendants'

13   motions challenge the first, second, fourth, and fifth elements.

14          1.    "Conduct or Participate"

15          Bryant contends that his role in any alleged scheme or enterprise is too

16   tenuous to constitute the "conduct" necessary to impose RICO liability. In order to

17   have RICO liability imposed upon him, a defendant must "conduct or participate,

18   directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of

19   racketeering activity . . . ." 18 U.S.C. § 1962(c). The United States Supreme Court

20   has elaborated on this statutory language in Reves v. Ernst & Young, 507 U.S. 170,

21   179 (1993), wherein it noted:

22          [T]he word "participate" makes clear that RICO liability is not limited to

23          those with primary responsibility for the enterprise's affairs, just as the

24          phrase "directly or indirectly" makes clear that RICO liability is not

25          limited to those with a formal position in the enterprise, but some part

26          in directing the enterprise's affairs is required.

27   Id. Here, Mattel has alleged that Bryant secretly developed Bratz while employed

28   by Mattel and using Mattel's resources and employees, that he concealed that fact

EXHIBIT  12

PAGE  136

1    when he had a duty to disclose it, and that he did these things in order to facilitate

2    the development of the Bratz concept by Mattel's direct competitor, in violation of,

3    *inter alia*, criminal copyright law. These allegations, if proven to be true, are

4    sufficient to impose RICO liability on Bryant.

5         2.    **Enterprise**

6         Bryant's motion challenges the sufficiency of the allegations regarding a

7    RICO enterprise. That enterprise is alleged to be an "association-in-fact" enterprise

8    comprised of the counter-defendants, Brawer, Trueba, Vargas, Brisbois, and

9    others. (AAC ¶ 89.) Mattel alleges that counter-defendants participated in or

10   conducted the affairs of the association-in-fact enterprise through a pattern of

11   racketeering activities, including, as detailed in the AAC, predicate acts of mail

12   fraud, wire fraud, evidence tampering, interstate and foreign travel to aid

13   racketeering activities, and criminal copyright infringement. (AAC ¶ 90.) The

14   counter-defendants' goal is alleged to have been to "execut[e] or attempt to

15   execut[e] [a] scheme to improperly defraud Mattel and steal its trade secret or

16   otherwise confidential and proprietary information . . . ." (AAC ¶ 90.)

17        A recent *en banc* decision of the Ninth Circuit sets forth a comprehensive

18   analysis of the sufficiency of allegations regarding a RICO enterprise necessary to

19   state a claim. See Odom v. Microsoft Corp., 486 F.3d 541, 2007 WL 1297249 (9th

20   Cir. 2007) (designated for publication). That decision provides the blueprint for the

21   Court's present analysis.

22        Odom involved an alleged scheme involving consumers who purchased

23   computers from Best Buy retail stores. Id. at 543. The computers would include a

24   Microsoft compact disc that the cashier would scan; the consumer's credit card was

25   also scanned for purchase. Id. The credit card information was transmitted to

26   Microsoft, and Microsoft would, at some point, begin making unauthorized charges

27   to the credit card used to purchase the computer, ostensibly for Microsoft's

28   provision of Internet services. Id. Odom brought substantive RICO and RICO

EXHIBIT ___12___

PAGE ___137___

1   conspiracy claims based on these allegations. Id. at 544.

2          The Ninth Circuit first noted the evidenced judicial resistance to RICO in the

3   lower courts, contrasted with the Supreme Court's four reversals of such narrow

4   readings of RICO. Id. at 545-47 (citing United States v. Turkette, 452 U.S. 576

5   (1981) (rejecting notion that RICO prohibited only the infiltration of legitimate

6   businesses by organized crime); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 481

7   (1985) (rejecting notion that RICO could be used to impose civil liability only where

8   the defendant had been criminally convicted and that such liability was limited to a

9   narrow measure of damages); National Organization for Women v. Scheidler, 510

10  U.S. 249 (1994) (rejecting the notion that RICO liability could be imposed only when

11  the acts of a RICO enterprise had an economic motive); and Cedric Kushner

12  Promotions v. King, 533 U.S. 158 (2001) (reversing lower court's ruling that no

13  RICO claim was stated where president and sole shareholder of a corporation was

14  alleged to have associated with his wholly owned corporation as a RICO

15  "enterprise," and relying on fact that person and corporation were separate legal

16  entities). In Odom, the Ninth Circuit understandably viewed these four holdings as

17  a "general instruction that we should not read the statutory terms of RICO

18  narrowly." Odom, 486 F.3d at 547 (internal citation omitted).

19          In Odom, the Ninth Circuit clarified -- and relaxed -- the standard for pleading

20  and proving an "associated-in-fact" enterprise such as the one alleged here:

21                 The definition of "enterprise" in the text of RICO is fairly

22          straightforward. In its entirety, the definition is as follows: "'enterprise'

23          includes any individual, partnership, corporation, association, or other

24          legal entity, and any union or group of individuals associated in fact

25          although not a legal entity." 18 U.S.C. § 1961(4). As is evident from

26          the text, this definition is not very demanding. A single "individual" is

27          an enterprise under RICO. Similarly, a single "partnership," a single

28          "corporation," a single "association," and a single "other legal entity"

12

EXHIBIT ____ 12

PAGE ____ 138

1   are all enterprises.  At issue in this case is the last kind of enterprise

2   listed in the definition -- a "group of individuals associated in fact."  It is

3   undisputed that a corporation can be an "individual" for purposes of

4   an associated-in-fact enterprise.

5   Id. at 548.

6     The Ninth Circuit acknowledged that "enterprise" must be something greater

7   than merely a pattern of racketeering activity; however, the court rejected the notion

8   that an enterprise must have a particular ascertainable organizational structure.  Id.

9   at 551 ("We take this opportunity to join the circuits that hold that an

10  associated-in-fact enterprise under RICO does not require any particular

11  organizational structure, separate or otherwise.") (citations omitted).  A party need

12  only set forth factual allegations of "a group of persons associated together for a

13  common purpose of engaging in a course of conduct," "evidence of an ongoing

14  organization, formal or informal," and "evidence that the various associates function

15  as a continuing unit."  Id. at 552 (internal citations and quotation marks omitted).

16    As for the common purpose, it was met in Odom, where the plaintiff had

17  alleged the following:

18     [D]efendants had the common purpose of increasing the

19     number of people using Microsoft's Internet Service, and doing so by

20     fraudulent means.  Best Buy furthered this common purpose by

21     distributing Microsoft Internet Trial CD's and conveying its customers'

22     debit and credit card information to Microsoft.  Microsoft then used the

23     information to activate customer accounts.

24  Id.  Here, Mattel has alleged the common purpose of attempting to defraud Mattel

25  and steal its trade secrets.  Mattel's many factual allegations, detailed herein,

26  support this alleged common purpose.

27    As for the "ongoing organization" requirement, the Ninth Circuit in Odom

28  noted that the plaintiffs had met that element, which was met where the

13

EXHIBIT ___12___

PAGE ___139___

1   organization was alleged to be "a vehicle for the commission of two or more

2   predicate crimes." Id. (internal quotation marks and citation omitted).  The Ninth

3   Circuit noted the following factual allegations:

4           Microsoft and Best Buy established mechanisms for

5       transferring plaintiffs' personal and financial information from Best Buy

6       to Microsoft. That information then allowed Microsoft to activate

7       plaintiffs' Internet accounts without their knowledge or permission.

8       These mechanisms enabled Microsoft to bill plaintiffs improperly for

9       MSN services in 2001, 2002 and 2003.

10  Id. Here, plaintiffs have alleged that the counter-defendants coordinated their many

11  efforts at depriving Mattel of its proprietary information and its intellectual property.

12  The allegations regarding common use of the "plot04@aol.com" email address to

13  transfer confidential Mattel information to MGA support the finding of an "ongoing

14  organization." So, too, do the allegations regarding the repeated communications

15  between Bryant and MGA.

16        The "continuing unit" requirement does not appear to the Court to mandate

17  that the organization continues to this day;[2] rather, the requirement is related to the

18  notion that RICO was not meant to address discrete instances of fraud or criminal

19  conduct.  "[T]he continuity requirement focuses on whether the associates'

20  behavior was 'ongoing' rather than isolated activity." Id. at 553 (internal quotation

21  marks and citation omitted).  Related to that concern, it is also clear to the Court

22  that this requirement is related to the duration of the racketeering activities. See id.

23  ("An almost two-year time span is far more than adequate to establish that Best

24  Buy and Microsoft functioned as a continuing unit.").  Here, the allegations do not

25  reveal that the conduct complained of was mere isolated activity; rather, Mattel sets

26  forth allegations of racketeering activity that spanned a period of three years.  The

27

28        [2] Nevertheless, Mattel alleges that the enterprise exists to this day by virtue
    of its continued use of Mattel's information and property.

14

EXHIBIT ___12___

PAGE ___140___

1  allegations describe a scheme consisting of corporate warfare between competitors
2  that has been waged over a long period of time and waged on a number of fronts,
3  both foreign and domestic. The "continuing unit" requirement is therefore satisfied.
4      Accordingly, the Court finds that Mattel has sufficiently pleaded the existence
5  of a RICO enterprise.

6      **3.    Predicate Acts of Racketeering Activity**

7          **a.    Mail Fraud and Wire Fraud**

8  The criminal prohibition against mail fraud is found at 18 U.S.C. § 1341:

9          Whoever, having devised or intending to devise any scheme or
10         artifice to defraud, . . . for the purpose of executing such scheme or
11         artifice or attempting so to do, places in any post office or authorized
12         depository for mail matter, any matter or thing whatever to be sent or
13         delivered by the Postal Service, or deposits or causes to be deposited
14         any matter or thing whatever to be sent or delivered by any private or
15         commercial interstate carrier, or takes or receives therefrom, any such
16         matter or thing, . . . shall be fined under this title or imprisoned not
17         more than 20 years, or both.

18 Id. The Ninth Circuit has described the elements of mail fraud as "(1) proof of a
19 scheme to defraud; (2) using or causing the use of the malls to further the
20 fraudulent scheme; and (3) specific intent to defraud." United States v. Rogers, 321
21 F.3d 1226, 1229 (9th Cir. 2003) (internal citation omitted).

22     The criminal prohibition against wire fraud is similar:

23         Whoever, having devised or intending to devise any scheme or
24         artifice to defraud, . . . transmits or causes to be transmitted by means
25         of wire, radio, or television communication in interstate or foreign
26         commerce, any writings, signs, signals, pictures, or sounds for the
27         purpose of executing such scheme or artifice, shall be fined under this
28         title or imprisoned not more than 20 years, or both.

EXHIBIT ___12___

PAGE ___141___

1   18 U.S.C. § 1343.  The Ninth Circuit has described the elements of wire fraud as

2   "(1) a scheme to defraud; (2) use of the wires in furtherance of the scheme; and

3   (3) a specific intent to deceive or defraud."  United States v. Shipsey, 363 F.3d 962,

4   971 (9th Cir. 2004) (citations omitted).

5          As all parties acknowledge, the predicate acts of mail fraud and wire fraud

6   must be pleaded with particularity pursuant to Fed. R. Civ. P. 9(b).  Specifically,

7   Mattel must detail "the time, place, and manner of each act of fraud, [and it must

8   set forth] the role of each defendant in each scheme."  Lancaster Community

9   Hosp., 940 F.2d at 405.  This standard applies in RICO actions alleging predicate

10  acts of mail fraud.  Id.

11         Here, Mattel sets forth allegations of predicate acts of mail fraud and wire

12  fraud referenced in Exhibit C to the AAC.  However, these alleged predicate acts

13  are insufficiently pleaded because they fail to adequately describe the contents of

14  the communications; specifically, they fail to detail time, place and manner of "each

15  act of fraud."  The substantive RICO claim is therefore dismissed to the extent it is

16  premised on those communications.  Mattel is **GRANTED** leave to amend the RICO

17  claim based on this insufficiency; Mattel must attach to the Second Amended

18  Answer and Counterclaims ("SAAC") copies of the referenced communications.

19  The contents of packages referenced in Exhibit C must be described in order to

20  meet the Rule 9(b) requirements.

21         At oral argument, counsel for MGA argued that the substance of many, if not

22  all of the communications, cannot be read to further a scheme to defraud.  That

23  argument will be considered another day, after Mattel files the SAAC.  However, the

24  Court takes the opportunity today to note that, given the broad scope of the alleged

25  scheme to defraud, including the criminal copyright infringement allegations,

26  otherwise innocuous and routine communications regarding day-to-day operations

27  and product development may be found to be in furtherance of that scheme.  See

28  Tellabs, Inc. v. Makor Issues & Rights, Ltd., ___ U.S. ___, No. 06-484, 2007 WL

16

EXHIBIT _____ 12

PAGE _____ 142

1  1773208, at *9 (June 21, 2007) (noting that, in considering a Rule 12(b)(6) motion,

2  "courts must consider the complaint in its entirety").

3          Counter-defendants also argue that Mattel failed to plead each defendant's

4  role in furtherance of the scheme to defraud. As interpreted by the Ninth Circuit,

5  the Rule 9(b) standard clearly requires that a plaintiff so plead. Lancaster

6  Community Hosp., 940 F.2d at 405. However, the Court will view the

7  communications alleged to constitute mail and wire fraud in conjunction with all the

8  allegations set forth regarding the alleged scheme in the counterclaims. See Flood

9  v. Makowski, No. 3:CV-03-1803, 2004 WL 1908221, at *14 (M.D. Pa., Aug. 24,

10  2004) (applying the principle that reasonable inferences in favor of a plaintiff must

11  be made when considering a Rule 12(b)(6) motion and noting that "[a]lthough

12  Plaintiffs' Complaint does not expressly identify how each particular mail or wire

13  communication furthered the scheme, the Complaint clearly alleges facts which

14  create an unquestionable inference that the alleged communications furthered the

15  scheme.").

16          Counter-defendants also argue that, because the emails alleged to

17  constitute wire fraud were sent among individuals physically located in the same

18  state, Mattel will not be able to establish the interstate nature of the

19  communications. See 18 U.S.C. § 1343 (setting forth the requirement that

20  communications be transmitted "in interstate or foreign commerce"). Mattel has

21  alleged that the communications were transmitted in interstate or foreign

22  commerce. (AAC ¶ 93(b).) This suffices at the pleadings stage; however,

23  eventually Mattel will be called upon to support these allegations with evidence.

24  See First Pacific Bancorp, Inc. v. Bro, 847 F.2d 542, 547 (9th Cir. 1988) (implicitly

25  holding that wire fraud must be supported, at the summary judgment stage, by

26  evidence of interstate wire fraud).

27          The Court dismisses the RICO claim to the extent it is based on the alleged

28  predicate acts of mail fraud and wire fraud because those acts are not pleaded with

EXHIBIT ___12___

PAGE ___143___

1  particularity as required by Rule 9(b). Mattel is **GRANTED** ten days' leave to file a

2  SAAC that incorporates and attaches and/or describes the communications and the

3  contents of packages referenced in Exhibit C.

4       b.    **Evidence Tampering**

5       Unlike the mail fraud and wire fraud allegations, the allegations regarding the

6  remaining predicate acts are governed by the more lenient pleading standards of

7  Rule 8(a). See Slade v. Gates, No. 01-8244-RMT, 2002 WL 31387263, at *6 (C.D.

8  Cal., Oct. 11, 2002). The Court considers the sufficiency of those remaining

9  allegations pursuant to this Rule.

10      The criminal prohibition against tampering with evidence is found at 18

11  U.S.C. § 1512:

12          Whoever corruptly . . . alters, destroys, mutilates, or conceals a

13          record, document, or other object, or attempts to do so, with the intent

14          to impair the object's integrity or availability for use in an official

15          proceeding . . . shall be fined under this title or imprisoned not more

16          than 20 years, or both.

17  Id. Mattel's opposition makes clear that its evidence tampering allegations are

18  based upon two categories of documents: The first category of documents,

19  perhaps composed of only one multi-page document, involves the alleged alteration

20  of Bryant's contract with MGA to remove a fax header showing that the date of its

21  execution, which predated the effective date of Bryant's resignation from Mattel,[3]

22  The second category of documents are those filed with the United States Copyright

23  Office, which are alleged to omit the disclosure that certain Bratz drawings were

24  "works for hire," and which are alleged to have had alterations made to certain

25

26       [3] The AAC merely alleges that counter-defendants Bryant and MGA

27  "tamper[ed] with and defac[ed] documents which showed that . . . Bryant was a

    Mattel employee while he was working for and with MGA . . . ." (AAC ¶ 35.)

28  However, it is clear from other filings by the parties that, at a minimum, this

    allegation refers to MGA's contract with Bryant.

EXHIBIT ___12___

PAGE ___144___

1   relevant dates.  (See AAC ¶ 35; Mattel Opp. to MGA's Motion at 9.)

2        As to the first category, a predicate act is sufficiently alleged.  Mattel has

3   alleged that a document was altered in a manner designed to conceal critical

4   evidence, highly relevant to the present official proceeding, regarding the timing of

5   the execution of the document.

6        Conversely, it is unclear whether Mattel has alleged a predicate act with

7   respect to the second category of documents.  The issue of whether submitting

8   fraudulent registrations and "altering relevant dates" on documents submitted to the

9   United States Copyright Office has not been fully briefed by the parties; the issue

10  was framed in this manner only upon the filing of the reply.[4]  Therefore, the Court

11  reserves this issue for a later date, and anticipates that it will be addressed by the

12  parties in a motion to dismiss the SAAC.

13       c.    **Travel Act Violation**

14       Federal criminal law prohibits interstate or foreign travel to aid in

15  racketeering activities.  18 U.S.C. § 1952; see also 18 U.S.C. § 1961 (defining a

16  violation of § 1962 as a RICO predicate act).  In relevant part, the criminal

17  prohibition states:

18           Whoever travels in interstate or foreign commerce or uses the

19       mail or any facility in interstate or foreign commerce, with intent to . . .

20       promote, manage, establish, carry on, or facilitate the promotion,

21       management, establishment, or carrying on, of any unlawful activity,

22       and thereafter performs or attempts to perform . . . [such an act,] shall

23       be fined under this title, imprisoned not more than 5 years, or

24       both . . . .

25                     . . . .

26           As used in this section . . . "unlawful activity" means . . .

27  _____

28       [4] The Court does not view this failure as the fault of any party.

EXHIBIT 12

PAGE 145

1    extortion, bribery, or arson in violation of the laws of the State in which

2    committed or of the United States . . . .

3  Id.  Mattel alleges that Bryant and others traveled in interstate commerce to commit

4  commercial bribery in violation of California's prohibition against commercial

5  bribery, which in relevant part provides:

6              (a) Any employee who solicits, accepts, or agrees to accept

7       money or any thing of value from a person other than his or her

8       employer, other than in trust for the employer, corruptly and without

9       the knowledge or consent of the employer, in return for using or

10      agreeing to use his or her position for the benefit of that other person,

11      and any person who offers or gives an employee money or any thing

12      of value under those circumstances, is guilty of commercial bribery.

13  Cal. Penal Code § 641.3.  Several allegations support a violation of § 641.3(a),

14  which in turn supports a violation of 18 U.S.C. § 1952.  Mattel has alleged that

15  Bryant, while still employed by Mattel, entered into a contract with MGA to provide

16  design services to MGA on a "top priority" basis, and used Mattel property,

17  employees, and resources to develop and design the Bratz concept.

18          Counter-defendants argue that the requirement under California's

19  commercial bribery statute that a violator act "corruptly" is not met because Bryant

20  did not intend to injure Mattel.  Such an intent is not required; rather it is sufficient

21  that Bryant is alleged to have intended to defraud Mattel.  See Cal. Penal Code

22  § 341.3(d)(3) (defining "corruptly" as involving the intent "to injure *or* defraud")

23  (emphasis added).

24          d.    Criminal Copyright Violations

25          The parties dispute the relevant pleading standard that governs the

26  allegations which underlie the criminal copyright violation claim.  Counter-

27  defendants would have the Court apply the more exacting Rule 9(b) standards

28  because, in their assessment, the claim "sounds in fraud."  Mattel, however,

EXHIBIT     12

PAGE     146

1    contends that there is no reason to depart from the more lenient Rule 8(a) standard

2    generally applied to copyright claims because, in its assessment, the claims "sound

3    in copying, not fraud." (Mattel Opposition to MGA's Motion at 4.)

4           The recent Ninth Circuit case on this issue, cited by both parties, stands for

5    the unremarkable proposition that, consistent with Rule 9(b), all **averments** of fraud

6    must be pleaded with particularity, regardless of whether fraud is an essential

7    element of the claim to which the averment relates. See Vess v. Ciba-Geigy Corp.

8    USA, 317 F.3d 1097, 1103 (9th Cir. 2003); Fed. R. Civ. P. 9(b) ("In all **averments**

9    of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

10   with particularity.") (emphasis added).

11          Considering Rules 8(a), 9(b), and the teachings of Vess, a spectrum

12   emerges. At the left end of this spectrum are claims that do not involve any

13   allegations of fraud. Those need only satisfy Rule 8(a)'s "short and plain

14   statement" standard. At the opposite end of the spectrum are claims based solely

15   on fraud, and the facts underlying such a claim must be alleged with particularity

16   pursuant to Rule 9(b). Lying closer to the Rule 9(b) end of the spectrum is a

17   category of claims discussed in Vess:

18              In cases where fraud is not a necessary element of a claim, a

19          plaintiff may choose nonetheless to allege in the complaint that the

20          defendant has engaged in fraudulent conduct. In some cases, the

21          plaintiff may allege a unified course of fraudulent conduct and rely

22          entirely on that course of conduct as the basis of a claim. In that

23          event, the claim is said to be "grounded in fraud" or to "sound in

24          fraud," and the pleading of that claim as a whole must satisfy the

25          particularity requirement of Rule 9(b).

26   Vess, 317 F.3d at 1103-04 (internal citations omitted). It is into this category MGA

27   contends that the allegations of criminal copyright claims fit, and MGA therefore

28   contends that all allegations regarding the criminal copyright claims must be

EXHIBIT ___12___

PAGE ___147___

1   pleaded with particularity.

2      However, <u>Vess</u> sets up another category, lying closer to the Rule 8(a) part of

3   the spectrum (but nevertheless requiring pleading with some particularity):

4           In other cases, however, a plaintiff may choose not to allege a

5       unified course of fraudulent conduct in support of a claim, but rather

6       to allege some fraudulent and some non-fraudulent conduct.  In such

7       cases, only the allegations of fraud are subject to Rule 9(b)'s

8       heightened pleading requirements. . . . The rule does not require that

9       allegations supporting a claim be stated with particularity when those

10      allegations describe non-fraudulent conduct.

11          [In other words,] in a case where fraud is not an essential

12      element of a claim, only allegations ("averments") of fraudulent

13      conduct must satisfy the heightened pleading requirements of Rule

14      9(b). Allegations of non-fraudulent conduct need satisfy only the

15      ordinary notice pleading standards of Rule 8(a).

16  <u>Id.</u> at 1104-05.

17     Whether fraud is an essential element of criminal copyright infringement

18  must be determined by reference to the statutory language and any interpretative

19  case law.  In relevant part, the prohibition against criminal copyright infringement

20  provides: "Any person who violates section 506(a) (relating to criminal offenses) of

21  title 17 shall be punished as provided [herein] in and such penalties shall be in

22  addition to any other provisions of title 17 or any other law."  18 U.S.C. § 2319.  In

23  turn, the relevant provision in 17 U.S.C. § 506 states that "[a]ny person who willfully

24  infringes a copyright shall be punished as provided under section 2319 of title 18, if

25  the infringement was committed . . . for purposes of commercial advantage or

26  private financial gain . . . ."  17 U.S.C. § 506(a)(1)(A).  The elements of the offense

27  are easily gleaned from the straightforward statutory language:  "Criminal

28  infringement of copyright has three elements: (1) infringement of a copyright

EXHIBIT _____ 12

PAGE _____ 148

1  (2) done wilfully (3) for purposes of commercial advantage or private financial gain."

2  United States v. Goss, 803 F.2d 638, 642 (11th Cir. 1986).

3          Clearly, fraud is not an essential element of a criminal copyright claim, taking

4  it out of the category at the far end of the spectrum described above, and

5  necessitating an inquiry into whether Mattel has chosen to incorporate a fraud

6  element into its criminal copyright claim.  The AAC at ¶ 93(e) reveals that the

7  criminal copyright claim is premised upon the "willfull[] infringe[ment of] Mattel's

8  copyrights, including with respect to documents containing Mattel trade secret and

9  confidential information . . . ."  The Opposition fills in more details regarding this

10  claim, noting that the criminal copyright claim is premised upon the Bratz-related

11  works, Bratz-derivative works, and works contained within Mattel's allegedly

12  purloined trade secrets and confidential information.  (Mattel Opposition to MGA's

13  Motion at 5).

14          These allegations do not "allege a unified course of fraudulent conduct and

15  rely entirely on that course of conduct as the basis of a claim" such that the claim

16  could be said to "sound in fraud" and therefore require pleading with particularity as

17  to the entire claim.  The allegations establish that much of the conduct complained

18  of consists of simple copying of the Bratz-related works or the creation of Bratz-

19  derivative works.  Such allegations are unrelated to allegations of fraud.  Therefore,

20  if this claim falls anywhere on the spectrum other than the Rule 8(a) category, it

21  falls in the category described by Vess as those claims in which a claimant chooses

22  to "allege some fraudulent and some non-fraudulent conduct."  Id. at 1104.

23          When one considers that the alleged predicate acts of criminal copyright

24  infringement are but a small part of a larger, and singular, claim brought pursuant to

25  RICO, it is evident that the RICO claim falls neatly into the category of claims that

26  are based partly on fraudulent and partly on non-fraudulent conduct.  The Court

27  has already found that certain fraudulent conduct -- that supporting the alleged

28  predicate acts of mail fraud and wire fraud -- is insufficiently pleaded.  The current

23

EXHIBIT  12

PAGE  149

1  focus, however, is whether the allegations supporting the predicate acts of criminal

2  copyright infringement involve fraudulent conduct.

3       Here, there are two types of works allegedly infringed.  The first type is the

4  Bratz-related and Bratz-derivative works.  The second type is Mattel's other trade

5  secrets and confidential information.  Both types are alleged -- with particularity -- to

6  have been procured by MGA through fraudulent conduct, but the criminal copyright

7  infringement predicate acts do not implicate that fraudulent conduct.  Rather, they

8  implicate only questions of whether counter-defendants wilfully infringed Mattel's

9  works for commercial advantage or private financial gain.  Here, Mattel has

10  sufficiently alleged predicate acts of criminal copyright infringement by alleging that

11  MGA and other counter-defendants willfully infringed its copyrights for purposes of

12  gaining commercial advantage and private financial gain.  As Mattel correctly

13  contends, state of mind, in this instance willfulness, may be pleaded generally.  See

14  Ferguson Beauregard/Logic Controls v. Mega systems, LLC, 350 F.3d 1327, 1343

15  (Fed. Cir. 2003).

16       4.    Injury to Business or Property

17       "Recovery under RICO is limited to those injuries flowing from predicate

18  acts . . . ."  Resolution Trust Corp. v. Keating, 186 F.3d 1110, 1117 (9th Cir. 1999)

19  (citing Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497 (1985)).  Here, Mattel

20  has alleged damages flowing from the alleged acts of racketeering activity.  (AAC

21  ¶ 96).  Damages easily flow from theft of trade secrets and confidential information

22  committed by a direct competitor and from infringement of copyrights that are

23  alleged to have been used to make millions -- if not billions -- of dollars.

24       Counter-defendants argue that Mattel lacks standing to sue on behalf of its

25  subsidiaries.  This issue arises because many of the allegations of the thefts of

26  trade secrets involve actions taken in Mexico or Canada by employees of Mattel's

27  foreign subsidiaries.  Mattel argues that it is not attempting to sue for damages

28  incurred by its subsidiaries; rather, Mattel alleges that much of the confidential

EXHIBIT ___12___

PAGE ___150___

1   information stolen by the employees of Mattel's subsidiaries belonged not to

2   Mattel's subsidiaries, but to Mattel itself.  Based on these allegations, Mattel may

3   sue for damages it sustained.  Mattel may not sue for damages incurred by its

4   foreign subsidiaries.

5           5.      **Ruling on Motions to Dismiss**

6           The Motions to Dismiss the RICO claims are **GRANTED** in part.  As set forth

7   herein, the alleged predicate acts of mail fraud and wire fraud are insufficiently

8   alleged, and Mattel is **GRANTED** leave to amend the AAC.

9   **C.      Trade Secrets**

10          MGA contends that Mattel has failed to plead its trade secrets with sufficient

11  particularity to comply with its duties under Cal. Code Civ. P. § 2019.210, which

12  provides:

13              In any action alleging the misappropriation of a trade secret

14          under the Uniform Trade Secrets Act . . . , before commencing

15          discovery relating to the trade secret, the party alleging the

16          misappropriation shall identify the trade secret with reasonable

17          particularity subject to any orders that may be appropriate under

18          Section 3426.5 of the Civil Code [involving in camera reviews and

19          sealing of court documents].

20  Id.  Based on the unambiguous language of the statute, the Court agrees with

21  Mattel's characterization of this requirement as one related to discovery rather than

22  related to pleading.

23          The Court also agrees that, by identifying documents in discovery by Bates-

24  stamp number, Mattel has complied with the dictates of § 2019.210.  See

25  Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal.App.4th 826, 835-36,

26  (2005) (internal quotation marks and citations omitted) ("[Reasonable particularity]

27  means that the plaintiff must make some showing that is reasonable, i.e., fair,

28  proper, just and rational[,] . . . under all of the circumstances to identify its alleged

25

EXHIBIT ___12___

PAGE ___151___

1  trade secret in a manner that will allow the trial court to control the scope of

2  subsequent discovery, protect all parties' proprietary information, and allow them a

3  fair opportunity to prepare and present their best case or defense at a trial on the

4  merits."). MGA's complaints regarding the volume of documents so identified, and

5  their skepticism of Mattel appropriately attaching such an identification to many of

6  those identified documents, are not properly addressed at this stage of the

7  proceedings.

8          The motion to dismiss the trade secrets claim on this basis is therefore

9  **DENIED**.

10  **D.    Duplicative State-Law Claims**

11          Bryant's motion to dismiss Mattel's duplicative state-law claims is **DENIED**.

12  The state-law counterclaims asserted against Bryant in the AAC admittedly overlap

13  with the claims asserted against him in the 04-9059 case, however, the factual

14  allegations underlying the claims asserted in the AAC are broader in scope than

15  those underlying the claims asserted in the 04-9059 case.

16                  **IV. Motion to Dismiss for Lack of Personal Jurisdiction**

17          MGA Mexico challenges this Court's exercise of personal jurisdiction over it.

18  As set forth below, the Court concludes that it may, consistent with California law

19  and the federal Due Process Clause, exercise specific personal jurisdiction over

20  this admittedly foreign corporation.

21  **A.    The Constitutional Exercise of Personal Jurisdiction**

22          Where a party moves to dismiss a claim for lack of personal jurisdiction, the

23  party asserting the claim bears the burden of demonstrating that jurisdiction is

24  appropriate.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir.

25  2004).  However, in opposing a motion to dismiss for lack of personal jurisdiction,

26  the party asserting the claim need only make a *prima facie* showing of jurisdictional

27  facts.  Id.  Disputed facts are to be resolved in favor of the exercise of personal

28  jurisdiction.  Id.

EXHIBIT     12

PAGE     152

1       Because there is no applicable federal statute governing personal

2   jurisdiction, the Court applies the law of the state in which the district court sits. Id.

3   (citations omitted). "Because California's long-arm jurisdictional statute is

4   coextensive with federal due process requirements, the jurisdictional analyses

5   under state law and federal due process are the same." Id. at 800-01 (citations

6   omitted). In order for a court's exercise of personal jurisdiction over a nonresident

7   defendant to be constitutionally permissible, the defendant must have "minimum

8   contacts" with the forum state "such that the exercise of jurisdiction does not offend

9   traditional notions of fair play and substantial justice." Id. at 801 (internal quotation

10  marks and citation omitted).

11      Personal jurisdiction may be either general or specific.  For general personal

12  jurisdiction to apply, a defendant (or here, a counter-defendant) "must engage in

13  continuous and systematic general business contacts . . . that approximate a

14  physical presence in the forum state." Id. (internal quotation marks and citations

15  omitted).

16      To determine whether it has specific personal jurisdiction over a nonresident

17  defendant, the Court employs a three-part test:

18          (1) The non-resident defendant must purposefully direct his

19          activities or consummate some transaction with the forum or resident

20          thereof; or perform some act by which he purposefully avails himself

21          of the privilege of conducting activities in the forum, thereby invoking

22          the benefits and protections of its laws; (2) the claim must be one

23          which arises out of or relates to the defendant's forum-related

24          activities; and (3) the exercise of jurisdiction must comport with fair

25          play and substantial justice, i.e. it must be reasonable.

26  Id. at 802.

27      The party asserting the claim bears the burden of establishing the first two

28  parts of the test. Id.  If that party establishes the first two parts, then the burden

EXHIBIT ___12___

PAGE ___153___

1  shifts to the party resisting the Court's exercise of personal jurisdiction "to present a

2  *compelling case* that the exercise of jurisdiction would not be reasonable." Id.

3  (emphasis added).

4      The first part of the test is satisfied by either "purposeful availment" or

5  "purposeful direction." Id. Purposeful availment is shown when a defendant avails

6  itself of the privilege of doing business in a forum state, usually met when the

7  defendant took some action in the forum, such as executing or performing a

8  contract there. Id. By virtue of such actions, a defendant "purposefully avails itself

9  of the privilege of conducting activities within the forum State, thus invoking the

10  benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

11  When taking advantage of these "benefits and protections," a defendant must also

12  "submit to the burdens of litigation in that forum." Burger King Corp. v. Rudzewicz,

13  471 U.S. 462, 476 (1985).

14      By contrast, purposeful direction, involves actions by the defendant outside

15  of the forum state but that are directed at the forum. Schwarzenegger, 374 F.3d at

16  803. The purposeful direction analysis is derived from a three-part "effects test"

17  that finds its roots in the Supreme Court's decision in Calder v. Jones, 465 U.S. 783

18  (1984). Pursuant to this analysis, the defendant must "have (1) committed an

19  intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

20  defendant knows is likely to be suffered in the forum state." Id.; Schwarzenegger,

21  374 F.3d at 803. All three parts of the test must be satisfied. The second part of

22  the effects test is described by the Ninth Circuit as the "express aiming"

23  requirement, and requires that the counter-defendants "expressly aimed" its

24  intentional act at California. See Schwarzenegger, 374 F.3d at 806. Specifically,

25  "express aiming" is found where the defendant is alleged to have engaged in

26  wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident

27  of the forum state." Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082,

28

EXHIBIT ___12___

PAGE ___154___

1087 (9th Cir. 2000).[5]

Assuming that the party asserting a claim can establish that the party resisting the Court's exercise of personal jurisdiction has met either the purposeful availment or express aiming part of the three-part test regarding the exercise of specific personal jurisdiction, courts next consider whether the claim arises out of or relates to the forum-related activities. In making this determination, the Court considers whether the contacts with the forum gave rise to the claims asserted, employing a "but for" standard. See Doe v. Unocal Corp., 248 F.3d 915, 924 (9th Cir. 2001).

Once the purposeful availment/express aiming and relatedness requirements are established, the burden shifts to the party resisting the Court's exercise of jurisdiction to show that exercise of jurisdiction is unreasonable. In determining reasonableness, the Court considers seven factors:

> 1) the extent of the defendant's purposeful interjection into the forum
> state's affairs; 2) the burden on the defendant; 3) conflicts of law
> between the forum and defendant's home jurisdiction; 4) the forum's
> interest in adjudicating the dispute; 5) the most efficient judicial
> resolution of the dispute; 6) the plaintiff's interest in convenient and
> effective relief; and 7) the existence of an alternative forum.

---

[5] What constitutes, or doesn't constitute, "express aiming" is best illustrated by example. For instance, in Pebble Beach Co. v. Caddy, 453 F.3d 1151 (9th Cir. 2006), no express aiming was found where the owner of a bed-and-breakfast in England (overlooking a pebbly beach) used the term "pebblebeach," the name of a famous golf course located in California, on its web site. Id. at 1153, 1156-57. The Ninth Circuit acknowledged that it might be foreseeable that the defendant's use of the web site might have some effect on California, but noted that mere foreseeability of effect in a forum state is not enough to constitute express aiming. Id. at 1157. In contrast to Pebble Beach is the case of Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998), in which the Ninth Circuit found that the express aiming requirement was met where the defendant registered plaintiff's marks as Internet domain names in order to force a California plaintiff to pay him money.

EXHIBIT ___12___

PAGE ___155___

1    Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991) (internal citation

2    omitted).  No factor is dispositive and the Court must balance all seven.  Id.

3    (internal citation omitted).

4    **B.    MGA Mexico's Contacts with the Forum State**

5          The AAC alleges that Issac Larian and other MGA officers, while in

6    California, executed a plot to target three high-level employees of Mattel Mexico,

7    and entice them to steal Mattel's trade secrets.  In written offers of employment to

8    these three individuals, Issac Larian held himself out to be the CEO of MGA

9    Mexico.  This plot was facilitated by a number of cross-border communications

10   among the participants as well as travel to the United States by the targeted

11   employees.

12   **C.    The Court May Exercise Personal Jurisdiction over MGA Mexico**

13         The AAC repeatedly alleges that Larian, who held himself out to be MGA

14   Mexico's CEO, and who was designated as MGA Mexico's "legal agent" in Mexican

15   registration document actively sought to induce others to access and steal Mattel's

16   trade secrets while located in the California.  See Velázquez Decl. Exs. A-C; Salem

17   Decl. Ex. B.  This constitutes purposeful availment.

18         To the extent that any of the actions taken in Mexico by the three Mexican

19   employees may be imputed to Mattel Mexico, there is also purposeful direction.

20   The alleged actions taken on behalf of MGA Mexico were specifically engineered to

21   result in the alleged illegal acquisition of trade secrets belonging to Mattel, a

22   California resident.[6]

23         The relatedness requirement is also clearly met.  The contacts with

24   California involve actions allegedly taken in order to further the illegal acquisition of

25   Mattel's trade secrets, leading to the present claims against MGA Mexico for

26   misappropriation of trade secrets and the related RICO claims.

27   _____

28         [6]  The AAC alleges the theft of trade secrets belonging not only to Mattel's
     Mexican subsidiary, but also to Mattel itself, which is a California corporation.

                                        30

EXHIBIT ___12___

PAGE ___156___

The burden, therefore, is on MGA Mexico to show that the exercise of jurisdiction is unreasonable.[7] As noted previously, the Court considers seven factors. The first factor the Court considers is the defendant's purposeful interjection. For the reasons the Court has found purposeful availment and purposeful direction, this factor favors the exercise of personal jurisdiction.

MGA Mexico argues, without elaboration, that the burden of defending itself in California is "significant." However, the assumption underlying this argument is that the present action is more properly litigated by MGA's and Mattel's Mexican subsidiaries. This assumption misses the point of Mattel's claim against MGA Mexico; Mattel, the parent company, was itself injured by MGA's Mexico's alleged misappropriation of its own trade secrets because the alleged misappropriation was not limited to trade secrets belonging to its Mexican subsidiary. The argument based on this faulty assumption is therefore unconvincing. In order to show unreasonableness, the burden on the defendant must be great. See Panavision, 141 F.3d at 1323 ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.") (internal quotation marks and citation omitted).

As to the third and seventh factors, regarding conflicts of law and the

---

[7] In its reply, MGA Mexico declares that it "made a 'compelling case' in support of its motion to dismiss that it would be unreasonable to force it to litigate in this forum." MGA Mexico Reply at 10. However, MGA Mexico's motion papers fail to acknowledge that they bear the burden on this issue. See MGA Mexico's Memorandum of Points and Authorities at 10 ("Finally, Mattel has failed to satisfy the third element required for specific jurisdiction – that the exercise of jurisdiction over the defendant would be reasonable."). As Mattel accurately predicted in its opposition papers, MGA Mexico implicitly acknowledged its burden in the reply, and used the occasion to improperly present additional arguments for the first time. Although the Court ordinarily would not consider such arguments, it does so here because it does not change the Court's ultimate conclusion. See In re Intuit Privacy Litigation, 138 F.Supp.2d 1272, 1275 n.3 (C.D. Cal. 2001) ("this court does not consider arguments raised anew for the first time in a reply brief as to do so would unfairly deny the non-moving party an opportunity to respond.").

31

EXHIBIT ____12____

PAGE ____157____

1   existence of an alternative forum, MGA Mexico makes veiled references to the

2   criminal action in Mexico as constituting a choice of forum made by Mattel,

3   apparently implying that Mattel, having chosen to pursue criminal charges in

4   Mexico, should be precluded from invoking the power of this Court. It appears to

5   the Court that MGA Mexico has failed to fully and clearly articulate this argument

6   because it is untenable. Whether Mexican authorities pursue criminal charges

7   based on the same conduct underlying the claims in this action is irrelevant to

8   whether this Court may constitutionally exercise personal jurisdiction over MGA

9   Mexico. Therefore, MGA Mexico's argument on this issue is unpersuasive.

10      The fourth factor, the interest in adjudicating the dispute, weighs in favor of

11   the exercise of personal jurisdiction, as does the sixth, the plaintiff's interest in

12   convenient and effective relief.

13      MGA Mexico argues that the fifth factor weighs in its favor when the Court

14   considers that the site of injury, which it does not believe is California, is the most

15   efficient forum. However, this argument is premised on the rejected assumption

16   that the present action is more properly litigated between MGA's and Mattel's

17   Mexican subsidiaries.

18      On balance, a consideration of the reasonableness factors reveals that MGA

19   Mexico has fallen far short of establishing the "compelling case" necessary to

20   render the Court's exercise of personal jurisdiction unreasonable.

21      The Court concludes that Mattel has established the first two parts of the

22   specific personal jurisdiction test, and that MGA Mexico has failed to establish that

23   the Court's exercise of personal jurisdiction over it is otherwise unreasonable.

24   Accordingly, the Court **DENIES** MGA Mexico's motion to dismiss.

25                     **V. MGA's and Bryant's Motions Regarding**

26                     **the Discovery Master's March 7, 2007, Order**

27      MGA and Bryant seek review of a decision that resolved discovery disputes

28   that arose during Bryant's deposition, and that was rendered by the Court-

EXHIBIT ___12___

PAGE ___158___

1   appointed discovery master, Judge Edward A. Infante (Ret.), on March 7, 2007.

2   The Court's order appointing Judge Infante provides that his orders resolving

3   discovery disputes shall be reviewed in the same manner as those made by a

4   magistrate judge of this Court.

5         Pursuant to Fed. R. Civ. P. 72(a), when the parties object to the ruling of a

6   magistrate judge on a non-dispositive manner, such as a discovery dispute, the

7   district judge may modify or set aside only those portions of the magistrate judge's

8   order that are "clearly erroneous or contrary to law." Id.

9         The "clearly erroneous" language refers to factual findings. See e.g.,

10  Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension

11  Trust, 508 U.S. 602, 622 (1993) (discussing the clearly erroneous standard). Here,

12  there were no explicit factual findings or legal conclusions made by Judge Infante

13  regarding the relevant rulings; therefore, the Court reviews the record presented to

14  Judge Infante to determine whether his rulings are contrary to law. See March 7,

15  2007, Order.

16        Questions that do not seek the substance of attorney-client communications

17  generally do not implicate the attorney-client privilege. United States v. Carrillo, 16

18  F.3d 1046, 1050 (9th Cir. 1994) (finding no violation of the attorney-client privilege

19  where prosecutor, who asked whether a criminal defendant had consulted with his

20  attorney during a recess in order to raise an inference of attorney coaching of

21  testimony during the trial, stopped short of asking defendant the substance of

22  defendant's communications with his attorney). Therefore, questions such as the

23  one addressed by objection No. 38, asking whether Bryant talked to counsel for

24  MGA during a break from his deposition, are not subject to objection based on the

25  attorney-client privilege. This conclusion is consistent with Judge Infante's Order.

26        Mattel's question regarding who is paying Bryant's legal fees, addressed by

27  objection No. 42, is likewise not objectionable. MGA and Bryant argue that state

28  law applies; however, because the present consolidated actions involve both

33

EXHIBIT ___12___

PAGE ___159___

1    federal and state-law claims, the federal law of privilege applies.  Agster v.

2    Maricopa County, 422 F.3d 836, 839-40 (9th Cir. 2005) ("Where there are federal

3    question claims and pendent state law claims present, the federal law of privilege

4    applies.").  To that end, consistent with federal privilege law, fee-payment

5    arrangements are relevant to credibility and bias, and if asked in discovery, Bryant

6    must disclose who is paying his legal fees.  See United States v. Blackman, 72 F.3d

7    1418, 1424 (9th Cir. 1995) ("As a general rule, client identity and the nature of the

8    fee arrangement between attorney and client are not protected from disclosure by

9    the attorney-client privilege.").  This conclusion is also consistent with Judge

10   Infante's Order.

11          However, in this case, the joint-defense privilege protects from disclosure the

12   substance of certain statements made by Bryant and his attorneys in the presence

13   of attorneys representing MGA.  "The joint defense privilege protects

14   communications between an individual and an attorney for another when the

15   communications are 'part of an on-going and joint effort to set up a common

16   defense strategy,'"  United States v. Bay State Ambulance and Hosp. Rental

17   Service, Inc., 874 F.2d 20, 28 (1st Cir. 1989) (internal quotation marks and citation

18   omitted).  Generally, to rely on the joint-defense privilege, a party must establish

19   three elements: "(1) [T]he communications were made in the course of a joint

20   defense effort, (2) the statements were designed to further the effort, and (3) the

21   privilege has not been waived." Id.

22          The Court finds the first element was met.  The Court, based on its review of

23   the record pending before Judge Infante, is satisfied that the parties had in place at

24   the time of Bryant's deposition, and have in place today, a valid joint-defense

25   agreement.  The Court also finds that the second element was met.  Mattel cannot

26   seriously contend that MGA's interests are not aligned with Bryant's in this action,

27   or that counsels' thorough preparation of Bryant for his deposition was not designed

28   to further the joint defense effort.  Finally, as for the third element, there is no

EXHIBIT ___12___

PAGE ___160___

1   suggestion in the record that any party has waived the attorney-client privilege.

2   Accordingly, the Court holds that Judge Infante's rulings on Objection Nos.

3   39 and 50 are contrary to law to the extent those rulings require Bryant to divulge

4   the substance of his communications with counsel for MGA.

5   **VII. Conclusion**

6   In the manner set forth more fully herein, the Court makes the following

7   rulings:

8   1.      Motion of MGA Entertainment, Inc., ("MGA") and Issac Larian

9   ("Larian") to Dismiss Mattel's Amended Answer and Counterclaims (docket # 189):

10  **GRANTED IN PART AND DENIED IN PART.**

11  2.      Motion of Carter Bryant to Dismiss Counterclaims II, III, V, VII, IX, and

12  XI (docket # 191):  **GRANTED IN PART AND DENIED IN PART.**

13  3.      Motion of MGA Mexico to Dismiss Mattel's Amended Answer and

14  Counterclaims (docket # 266):  **DENIED.**

15  4.      Motion of MGA Objecting to Discovery Master's March 7, 2007, Order

16  (docket # 308):  **GRANTED IN PART AND DENIED IN PART.**

17  5.      Motion of Carter Bryant Objecting to Discovery Master's March 7,

18  2007, Order (docket # 306):  **GRANTED IN PART AND DENIED IN PART.**

19  Mattel is **GRANTED** ten days' leave to amend the AAC in conformity with

20  this Order.  The Counter-defendants shall answer or otherwise respond to the

21  SAAC no later than thirty days after the filing of the SAAC.

22

23

24

25

26

27

28

EXHIBIT ___12___

PAGE ___161___

1       The Motion Re Trial Structure (docket #462) has been the subject of further

2   briefing by the parties and is set for further oral argument on July 2, 2007.  Ruling

3   on that matter is **DEFERRED** pending oral argument.

4       DATE:  June 27, 2007

5

6   STEPHEN G. LARSON
    UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

36

EXHIBIT 12

PAGE 162

Received:   6/27/07   3:21PM
RightFAX                6/27/2007 3:04   PAGE 001/037

RightFAX -> QUINN E  )UEL;   Page 1
                              Fax Server

'om:       Name:         United States District Court
                         312 North Spring Street
                         Los Angeles, CA  90012
           Voice Phone:  (213) 894-5474


0:         Name:         Michael Zeller
           Company:
                         865 S Figueroa St, 10th Floor,
           City/State:   Los Angeles, CA 90017-2543
           Fax Number:   213-443-3100



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

## Automated Document Delivery Service
*Notice pursuant to Rule 77(d) FRCiv.P*
*The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

x Notes:

se 2:04-CV-09049 : CARTER BRYANT V. MATTEL INC

*rsuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search Warrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents (Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail address for each division is as follows:*

Western Division:  CrimIntakeCourtDocs-LA@cacd.uscourts.gov
Southern Division:  CrimIntakeCourtDocs-SA@cacd.uscourts.gov
Eastern Division:  CrimIntakeCourtDocs-RS@cacd.uscourts.gov.

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

**Switch to e-mail delivery and get these documents sooner!**
**To switch, complete and submit**
**Optical Scanning Enrollment / Update form G-76.**
**Call 213-894-5474 for help and free technical support.**

*you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case, a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for hich you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

te and time of transmission:      Wednesday, June 27, 2007 3:04:20 PM
mber of pages including this cover sheet:  37

EXHIBIT  12

PAGE  163

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

<u>NEW YORK</u>
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

<u>LOS ANGELES</u>
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

<u>SAN FRANCISCO</u>
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

<u>SILICON VALLEY</u>
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**    December 6, 2007          **NUMBER OF PAGES, INCLUDING COVER: 41**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Larry McFarland, Esq. **Keats McFarland & Wilson LLP** | 310-248-3830 | 310-860-0363 |

**FROM:**    B. Dylan Proctor, Esq.

**RE:**    *Mattel v. Bryant, et al.*

**MESSAGE:**

FAXED
DEC 0 6 2007

07209/2285534.1

| CLIENT # | 7209 | ROUTE/ RETURN TO: | Tiffany Garcia/3rd Floor | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED?   ☐ NO  ☐ YES: _____ | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT _____ 12

PAGE _____ 164

12/06/2007 16:02 FAX 12134433440          QEUOH-LA0                                    ☑001

```
                    ***********************
                    ***   TX REPORT   ***
                    ***********************

        TRANSMISSION OK

        TX/RX NO               2782
        RECIPIENT ADDRESS      9414#07209#13108600363#
        DESTINATION ID
        ST. TIME               12/06 15:53
        TIME USE               08'51
        PAGES SENT               41
        RESULT                 OK
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

DATE:     December 6, 2007          NUMBER OF PAGES, INCLUDING COVER: 41

|  | NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|---|
|  | Larry McFarland, Esq.<br>Keats McFarland & Wilson LLP | 310-248-3830 | 310-860-0363 |

FROM:     B. Dylan Proctor, Esq.

RE:       *Mattel v. Bryant, et al.*

MESSAGE:

EXHIBIT _12_

PAGE _165_

# EXHIBIT 13

**RECEIVED**

## KEATS McFARLAND & WILSON LLP

DEC 2 0 2007

ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS. CALIFORNIA 90212

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

www.kmwlaw.com

December 18, 2007

VIA FACSIMILE, U.S. MAIL and E-MAIL

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

      Re:    Mattel v. Bryant

Dear Dylan:

      I am writing to follow-up on my letter dated December 11, 2007, and in response to your letter dated December 6, 2007.

      With respect to Ms. Leahy's planner, as you know, at Ms. Leahy's deposition we produced the entire day planner in un-redacted form.  This issue is now resolved.

      Regarding the Bates numbered photocopies of the three-dimensional objects that our clients produced, as you know, on December 11, 2007, we delivered these documents to you. With respect to the use of photographs at the depositions of my clients, as I had suspected, Mr. Zeller did indeed show my clients copies of photographs (and introduced as exhibits documents that had no Bates numbers) at their depositions that you refused to produce to me in advance. My understanding is that even if these documents are considered "work product," the work product doctrine protects the confidentiality of documents up until the time that you decide to use them in the case, at which time you must produce them.  Obviously, you decided to use the photographs at my client's depositions prior to the time of their depositions.  Your refusal to produce these photographs ahead of the depositions in the face of my continuing requests is improper.  Moreover, your decision to waive work-product protection as to a portion of the photographs during the depositions means that you have chosen to waive any such work-product protection you could have possibly claimed in those photographs. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 512-13 (S.D. Cal. 2003) ("A party cannot reasonably expect to preserve confidentiality of work product while simultaneously disclosing substantive components of that document.").  Therefore, we are again requesting that you provide us with copies of all the

EXHIBIT ___13___

PAGE ___166___

B. Dylan Procter, Esq.
December 18, 2007
Page 2

photographs and videotapes that you have taken of the three-dimensional objects that we produced.

     Regarding the fee agreements, I am at a loss to understand how you can contend that "Mattel's objections to other subpoenas and Mattel's responses to other parties' requests for production are irrelevant here." The point is simple. Mattel is taking the position with respect to my clients that Judge Infante's orders require the production of retainer letters, while at the same time, Mattel has continued to object to the production of retainer letters after the entry of Judge Infante's order. Your silence with respect to my request in my December 3, 2007 letter, that "[i]f you have produced the retainer letter for Mr. Liden or any third party, please provide me with a copy of that document," says everything. You have not provided me with any such retainer letters and, therefore, I can only assume that you have continued to refuse to produce them. Finally, as you also know, we have an ongoing disagreement regarding whether discovery disputes with respect to our clients should be heard by Judge Infante or Magistrate Judge Block. As we have repeatedly stated, it is our position that these disputes should be heard by Magistrate Judge Block. Mattel has now filed a motion on this issue with a hearing date of January 7, 2007. As soon as Judge Larson rules on Mattel's motion, we will know who is right. However, I would note that there is no dispute that Judge Infante has jurisdiction over discovery disputes between Mattel and MGA. Mattel's continuing objection to the production of retainer letters is, therefore, all the more incomprehensible in light of what you characterize as clear rulings from Judge Infante that all retainer letters must be produced. Finally, as you know, I allowed both Ms. Leahy and Ms. Cloonan to answer questions regarding whether they had spoken to attorneys and who is paying their legal fees. We therefore have acted consistently with Judge Larson's orders with respect to Mr. Bryant as set forth in Judge Larson's Order Re Motions heard on June 11, 2007, pp. 33-34 ("[Q]uestions such as the one addressed by objection No. 38, asking whether Bryant talked to counsel for MGA during a break from his deposition, are not subject to objection based on the attorney-client privilege.... [F]ee-payment arrangements are relevant to credibility and bias, and if asked in discovery, Bryant must disclose who is paying his legal fees.").

     With respect to your allegation that our clients are "withholding documents" from key time periods in this case, after the depositions of Ms. Leahy and Ms. Cloonan, you now know that this statement is not accurate. Regarding your request for a date-restricted privilege log of communications between me and my clients, I am still at a loss to understand the basis for this request. Moreover, since we obviously do not agree with your demand that our clients produce their retainer letters, this issue will more than likely need to be resolved after it is determined who is to hear discovery disputes with respect to our clients – Judge Infante or Magistrate Judge Block. In the meantime, please let me know if Mattel has produced a similar privilege log and I can then consider your request.

     Finally, regarding the personal Wells Fargo bank records of Ms. Marlow, we continue to insist that you return all copies and originals of the Wells Fargo bank records, confirm that your firm has not reviewed or made any use of these documents, and provide me with the date that your firm received these documents. Although you claim that you gave copies of these bank

EXHIBIT ___13___

PAGE ___167___

B. Dylan Procter, Esq.
December 18, 2007
Page 3

records to "all parties months ago," it is undisputed that you did not provide copies to me until November 30, 2007, and then only after I had sent several letters notifying you that I had not received the documents from Wells Fargo. As to your statement regarding "unringing the bell," it is very simple -- the most that can be done at this point is to comply with my requests set forth above. Also, your statement that the Wells Fargo bank records are not privileged is inaccurate. Without limitation, the bank records include federal tax information which is private and confidential, and is recognized as protected matter by both the Ninth Circuit and this Court. *See Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); *S. Cal. Hous. Rights Ctr. v. Krug*, No. CV06-1420SJOJCX, 2006 WL 4122148, at *3 (C.D. Cal. Sept. 5, 2006).

I reiterate my demand that you return all copies and originals of the Wells Fargo bank records, confirm that your firm has not reviewed or made any use of these documents, and provide me with the date that your firm reviewed these documents. As you know, we have been meeting and conferring with respect to this issue for some time. Please consider this notice that if you do not agree to these demands, we will file a motion with the Court seeking this relief.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/eg

cc: Thomas J. Nolan
    Michael Page

EXHIBIT ____13____

PAGE ____168____

# EXHIBIT 14

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

January 10, 2008

<u>VIA FACSIMILE AND U.S. MAIL</u>

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:     <u>Mattel v. Bryant</u>

Dear Larry:

I write further to our January 9, 2008 meeting of counsel.

First, with respect to agreements relating to the payment of your clients' fees, as I explained on our call and in prior letters, your clients' obligations to produce fee agreements revealing their biases are quite clear under prior Court Orders.  You stated that you will consider this further and get back to me.

Second, with respect to your clients' failures to provide privilege logs, in an effort to avoid burdening you and your clients to greatest extent possible, and as we have advised before, we are willing to accept privilege logs from Ms. Marlow, Ms. Cloonan, Ms. Leahy and Ms. Halpern that do not include or log communications that (1) are exclusively between Marlow, Cloonan, Leahy or Halpern, on the one hand, and yourself or other attorneys at your firm, on the other hand, (2) were sent on or after January 1, 2006, (3) were not copied or addressed to other parties or third parties and (4) do not relate to fee or indemnification matters.  All other documents should be logged.  You stated that you also wished to consider this matter further.

EXHIBIT ____14____

PAGE ____169____

quinn emanuel urquhart oliver & hedges, llp

07209/2348622.1

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

Third, with respect to the photographs and videos that we have taken of the products produced by your clients, we are not obligated to provide you with copies of these materials. As I explained, these are opinion work product. Additionally, the work product of all photographs is not waived by the waiver of the privilege as to one photograph. You stated that you will consider this and get back to me. As of today, as you know, you have never provided any authority that suggests that these photographs are not protected work product, which I have invited.

Fourth, as I explained during our call, Ms. Marlow's records from Wells Fargo bank which were inadvertently produced directly to us contain relevant information, including but not limited to records of substantial payments from Carter Bryant and MGA and payments made by Marlow to individuals she just disclosed for the first time two weeks ago as Mattel employees who have been working on Bratz, including Beatrice Morales and Ana Cabrera. These are clearly non-privileged and discoverable. Some of these payments were made out to "cash," and there are other records of checks made to "cash" which may relate to Mattel employees who worked on Bratz. Moreover, these documents have been produced and were circulated to all parties months ago. As we have explained, a motion to quash a subpoena becomes moot once the documents have been produced.

Although you expressed concerns that some of these documents may include sensitive information, such as checks made out to the Franchise Tax Board, you have not alleged that the documents contain any information that is privileged. Nevertheless, I proposed that you identify any irrelevant sensitive information, which we can examine and potentially address by redaction or some other appropriate method. You agreed to consider this proposal.

You proposed that the documents be given back to you for your review, that the prior protocol be amended to include any new names identified by Mattel, such as Beatrice Morales and Ana Cabrera, and that you will then give back all relevant documents pursuant to the protocol. I agreed to consider that proposal.

Fifth, regarding the Supplemental Responses of Lucy Arant, you confirmed that she has not withheld any non-logged documents, other than documents responsive to Request No. 28. You confirmed that Ms. Arant will not voluntarily produce such documents. Please let me know if you reconsider.

Sixth, in regards to our request for additional deposition time with your clients, you confirmed that they will not be made available.

EXHIBIT _____ 14

PAGE _____ 170

I look forward to speaking with your further on the matters we agreed to consider on Friday, January 11, 2008 at 5:00 p.m.

Very truly yours,

B. Dylan Proctor

B. Dylan Proctor

07209/2348622.1

EXHIBIT  14

PAGE  171

# EXHIBIT 15

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

January 11, 2008

<u>VIA FACSIMILE AND U.S. MAIL</u>

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:    <u>Mattel v. Bryant</u>

Dear Larry:

I write further to our meet and confer of earlier today.

You have confirmed that you will not make any of your clients available for further deposition testimony absent a Court Order.

You have also confirmed that you will not make any computers or disks available, to Mattel or independent experts, for any purpose.  You rejected all the proposals made by my partner Chris Tayback on Wednesday.

You rejected my request that your clients provide a narrowed privilege log as set forth in my letter of January 10, 2008, and prior letters.

You stated that you would make your clients' fee agreements available if Mattel agrees to also make its agreements with third parties available.  As I have repeatedly explained, Mattel is discussing this matter with MGA's counsel concurrently.  You have no legitimate interest in those discussions.  Your attempt to render your compliance with your obligations contingent on matters which do not affect your clients is improper.

EXHIBIT _____ 15

PAGE _____ 172

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

Regarding the Wells Fargo documents, you rejected my request that you simply identify the allegedly sensitive documents so that we can address those amicably. As I explained, we believe that our legal position has merit, and that you are not entitled to have these documents "returned" to you. However, we are considering this matter further and will get back to you with our final position.

Last, the following are the items we wish to add to the protocol for both (1) newly issued subpoenas which include your address as the place of production and (2) previously issued subpoenas for which we agreed that, as a preliminary matter, you would review responsive documents and produce pursuant to a protocol. As you know, in our view you were obligated to provide this information long ago. However, we are supplementing the protocol such that it will also include all documents referring or relating to:

- Isabel Ana Cabrera

- Beatriz Morales

- Maria Elena Salazar

- Payments made to, or work or services performed by, any other Mattel employee

- Payments made by, or any services performed for, any competitors of Mattel, including any company involved in the sale of dolls or toys, while your clients were employed by Mattel

- The dates on which any entities with which your clients are affiliated were established, including but not limited to payments to the Franchise Tax Board or other tax entities.

Please let me know whether you will agree to produce all documents regarding the foregoing from the records we have subpoenaed.

I look forward to your prompt response.

Very truly yours,

*Dylan Proctor /sic*

B. Dylan Proctor

07209/2351046.1

EXHIBIT ___15___

PAGE ___173___

2

# EXHIBIT 16

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

June 1, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:   <u>Mattel, Inc. v. Bryant</u>

Dear Mr. McFarland:

I write to address certain outstanding issues regarding Margaret Hatch-Leahy's responses to Mattel's Subpoena, served on March 14, 2005, Veronica Marlow's responses to Mattel's Subpoena, served on March 25, 2005, Elise Cloonan's responses to Mattel's Subpoena, served on May 13, 2005, and Sarah Halpern's responses to Mattel's Subpoena, served on March 14, 2005.

**A.      Margaret Hatch-Leahy and Veronica Marlow**

I write pursuant to <u>Local Rule</u> 37-1 to request a meet and confer regarding Margaret Hatch-Leahy's responses to Mattel's Subpoena, served on March 14, 2005 and Veronica Marlow's responses to Mattel's Subpoena, served on March 25, 2005. Mattel anticipates discussing the following issues at that conference.

**I.      Unjustified Redaction of Documents**

Of the limited documents that Ms. Hatch-Leahy has produced to Mattel, many are so heavily redacted that they are not useful and indeed are often unintelligible. Much of the redacted

EXHIBIT ___16___
PAGE ___174___

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2085672.2

information seems to be highly relevant information relating to Carter Bryant and Bratz. For
example, information pertaining to Carter Bryant and Bratz dolls has been heavily redacted from
Ms. Hatch-Leahy's planner. Such information is clearly discoverable. We perceive no
reasonable basis for the redaction of this pertinent information. That is especially so because
there is a protective order in effect in this case, and every document produced by Ms. Hatch-
Leahy has been stamped "Attorneys' Eyes Only."

Ms. Marlow's document production is also improperly redacted. For example, documents
SABW-M 00429, 431, 436 and 437 appear to have certain information redacted from the fax
headers. There is no conceivable basis for how such information would be privileged and, no
privilege log has been produced to us. Even more troubling however, is that there is no
indication that information has been redacted in the first place -- just blank spaces where
information should normally appear. Please provide these documents in unredacted form and
confirm either that there are no other redactions in Ms. Marlow's production or that any other
redactions have been properly logged (and provide a copy of the log to us).

## II.    Unjustified Objections to Production

In Ms. Marlow's and Ms. Hatch-Leahy's amended objections and responses dated May 12, 2005,
each insists that she "will not withhold any non-privileged documents on the basis of [her
general] objections." It remains unclear, however, whether documents have been withheld on
the basis of claims of privilege or privacy. The responses to Request No. 8 indicates that
documents apparently have been withheld on such a basis.

If no documents have been withheld, we request confirmation of this fact. However if any
documents have been withheld based on privilege or privacy claims, Ms. Hatch-Leahy's and
Ms. Marlow's boilerplate objections are insufficient in that they provide no description of the
documents, communications or things not disclosed that would enable Mattel to assess such
claims. *See Burlington N. & Santa Fe Ry. Corp. v. U.S. Dist. Court for Dist. of Montana*, 408
F.3d 1142, 1148 (9th Cir. 2005). Accordingly, please provide a privilege log detailing any and
all responsive documents which have been withheld.

## III.   Missing Documents

Although Ms. Marlow produced an IRS Form 1099 from MGA for the year 2000 showing
approximately $38,000 in income, we only received copies of three check stubs totaling about
$2,800 for that year. Please confirm that Ms. Marlow does not possess any other evidence of
payment for the year 2000 from MGA and has no other income in any other year from MGA.

I appreciate your consideration and am hopeful we will be able to resolve these issues without
having to burden the Court with a motion.

EXHIBIT ___16___

PAGE ___175___

**B.**   **Elise Cloonan**

Mattel previously served a subpoena on your client, Elise Cloonan, on May 13, 2005. Mattel's
subpoena called for the production of documents on May 27, 2006. As you know, before the
return date, the District Court stayed all proceedings in this action. Now that the stay of
discovery has been lifted, we again request that Ms. Cloonan search for and produce all
documents that are responsive to Mattel's subpoena. A duplicate copy of the subpoena is
enclosed. We hope to obtain the documents as soon as possible, and in any event by no later
than June 18, 2007, but we are of course happy to work with you to find a convenient date for the
production and to assist in any way we can.

In addition, we want to schedule a time for Ms. Cloonan's deposition. Please let me know of her
available dates in the first two weeks of July 2007.

**C.**   **Sarah Halpern**

As you may recall, you met and conferred with Shane McKenzie, from my office, regarding the
production of Ms. Halpern's hard drive from the relevant time period and the forensic
examination thereof, among other issues. On May 13, 2005, Ms. McKenzie sent you a letter
confirming your conversations and proposing specific terms for the forensic examination. I write
to re-convey our proposal regarding the forensic examination of Ms. Halpern's hard drive and to
once again request the production of that drive.

I have attached copies of the May 13, 2005 letter sent by my office to you, as well as the March
14, 2005 subpoena served on Ms. Halpern. That letter sets forth our forensic examination
proposal.

Aside from the hard drive examination issue, we wish to address several other issues as well.
First, our May 13, 2005 letter requested confirmation that (1) Ms. Halpern's 2001 federal tax
return is the only tax return filed by Ms. Halpern that reflects a payment by MGA relating to
Bratz, and (2) Ms. Halpern conducted another search for responsive documents pursuant to your
agreement with Ms. McKenzie. Please confirm whether these statements are correct or not.

Second, Ms. Halpern's responses to Request Nos. 1, 5, 6, 7, and 11 indicate that Ms. Halpern was
willing to produce responsive documents. However, Ms. Halpern also made a number of
objections to those Requests. Please confirm that, notwithstanding her objections, Ms. Halpern
has produced <u>all</u> responsive documents where she has indicated that she "is willing to produce
responsive documents pursuant to the Protective Order." If responsive documents have been
withheld based on a claim of privilege or for some other reason, please describe the withheld
documents with sufficient particularity to enable Mattel to assess the basis for withholding the
documents.

Third, Ms. Halpern's response to Request No. 2 appears to indicate that she is aware of, but does
not possess, responsive documents. <u>Compare</u> Response to Request No. 2 ("no responsive

EXHIBIT _____ 16

PAGE _____ 176

documents are in the possession, custody or control of Halpern") <u>with</u> Response to Request No. 3
(Ms. Halpern "is not aware of any documents responsive to this request").  Assuming we
correctly interpret the response to Request No. 2, please indicate what documents Ms. Halpern
believes are responsive to that Request and where she believes those documents may be located.

Please let me know at your earliest convenience, and in any event no later than June 8, 2007,
whether our forensic examination proposal and the other terms set forth in this letter regarding
Ms. Halpern's production are acceptable.  Out of an abundance of caution, please also consider
this letter a request for an in person conference of counsel regarding Sarah Halpern's responses to
Mattel's Subpoena, served on March 14, 2005 pursuant to <u>Local Rule</u> 37-1.

I appreciate your consideration and look forward to hearing from you at your earliest
convenience.


Very truly yours,

Susan L. Wines

Attachments

EXHIBIT _____ 16
PAGE _____ 177

**CLOONAN SUBPOENA**

EXHIBIT ____16____

PAGE ____178____

AO 88 (Rev. 11/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

__Central__   DISTRICT OF __California__

MATTEL, INC., a Delaware Corporation

**SUBPOENA IN A CIVIL CASE**

v.

CARTER BRYANT, an Individual; and DOES
1 through 10, inclusive

Case Number:¹ CV 04-9059 NM (RNBx)

TO:  Elise Cloonan
     1219 W. 160th Street
     Gardena, CA  90247

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment "A"

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP. | May 27, 2005 |
| 865 So. Figueroa Street, 10th Floor | 10:00 a.m. |
| Los Angeles, CA  90017       (213) 443-3000 | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Shane McKenzie* Attorney for Plaintiff, Mattel, Inc. | May 12, 2005 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
SHANE H. McKENZIE, ESQ., Quinn Emanuel Urquhart Oliver & Hedges, LLP.
865 So. Figueroa Street, 10th Floor, Los Angeles, CA  90017   (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, parts C & D on reverse)
¹ If action is pending in district other than district of issuance, state district under case number.

EXHIBIT ___16___
PAGE ___179___

AO-88

AO 88 (Rev. 11/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE | |
|---|---|---|---|
| SERVED | | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

EXHIBIT _____ 16

PAGE _____ 180

# ATTACHMENT A

## Documents And Tangible Things To Be Produced

### I.  DEFINITIONS.

1.     "YOU" or "YOUR" means Elise Cloonan, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

2.     "CARTER BRYANT" means Carter Bryant and any of his current or former agents, representatives, employees, attorneys, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.     "BRATZ" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Bratz" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and all DESIGNS and versions of such doll or any portion thereof.

4.     "ANGEL" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Angel" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Angel" line, and all DESIGNS and versions of such doll or any portion thereof.

5.     "PRAYER ANGELS" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Prayer Angels" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Prayer Angels" line, and all DESIGNS and versions of such doll or any portion thereof.

6.     "MATTEL" means Mattel, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any

ATTACHMENT A

EXHIBIT _____ 16

PAGE _____ 181

other PERSON acting on its behalf, pursuant to its authority or subject to its control.

7.    "MGA" means MGA Entertainment Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

8.    "TOON TEENS" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as the name "Toon Teens" (whether in whole or in part and regardless of what such doll is or has been also called), and all DESIGNS and versions of such doll or any portion thereof.

9.    "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

10.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

11.    "DOCUMENT" means any "writing" or "recording" as defined in Federal Rule of Evidence 1001 and includes any tangible thing upon which any expression, communication or representation has been recorded, including but not limited to correspondence, e-mails, preliminary, intermediate or final drafts, memoranda, notes, reports of telephone or other oral conversations, audio or videotape recordings, computer tape, computer disk or storage media, computer printout, CD-ROM disk, optical storage disk, other electronic medium, and all other writings and recordings of any kind.

12.    "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note,

ATTACHMENT A

EXHIBIT _____ 16

PAGE _____ 182

memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic
or other medium, including without limitation in written, audio or video form.

        13.    "REFERRING OR RELATING TO" means reflecting,
identifying, describing, summarizing, evidencing, referencing, concerning,
discussing or indicating in any way.

## II.    INSTRUCTIONS.

        A.    YOU are to produce all DOCUMENTS requested hereby that
are in YOUR possession, custody and control.

        B.    If YOU contend that YOU are not required to produce certain
DOCUMENTS called for by these requests on the grounds of a privilege or
protection that YOU are not prepared to waive, in lieu of producing such
DOCUMENTS identify each DOCUMENT and provide the following
information:

        1.    The privilege or protection that you claim precludes
disclosure;

        2.    The subject matter of the DOCUMENT (without
revealing the content as to which the privilege or protection is claimed);

        3.    The date, author(s), addressee(s); and

        4.    Any additional facts on which YOU would base YOUR
claim of privilege or protection.

        C.    YOU are required to identify any and all DOCUMENTS
sought by this document request that have been destroyed.

        D.    YOU are required to identify the source of all DOCUMENTS
produced, and the person for whom, or department, division or office for which,
such DOCUMENTS are maintained.

        E.    Each DOCUMENT shall be produced in its original file folder,
or in lieu thereof, any writing on the file folder from which each such
DOCUMENT is taken shall be copied and appended to such DOCUMENT.

ATTACHMENT A

EXHIBIT _____ 16

PAGE _____ 183

III.   DOCUMENTS AND TANGIBLE THINGS TO BE PRODUCED.

1.   All DOCUMENTS REFERRING OR RELATING TO BRATZ any time prior to December 31, 2001 (regardless of when such DOCUMENT was created, written, received or transmitted), including without limitation any work or services performed by YOU or any other PERSON on BRATZ prior to December 31, 2001.

2.   All DOCUMENTS REFERRING OR RELATING TO ANGEL, including without limitation any work or services performed by YOU or any other PERSON on ANGEL.

3.   All DOCUMENTS REFERRING OR RELATING TO PRAYER ANGELS, including without limitation any work or services performed by YOU or any other PERSON on PRAYER ANGELS.

4.   All DOCUMENTS REFERRING OR RELATING TO any agreements or contracts between YOU and MGA, including without limitation all COMMUNICATIONS relating thereto.

5.   All DOCUMENTS REFERRING OR RELATING TO any agreements or contracts REFERRING OR RELATING TO BRATZ, ANGEL and/or PRAYER ANGELS between YOU and any PERSON, including without limitation all COMMUNICATIONS relating thereto.

6.   All DOCUMENTS REFERRING OR RELATING TO CARTER BRYANT.

7.   All DOCUMENTS, including without limitation phone records, REFERRING OR RELATING TO COMMUNICATIONS between CARTER BRYANT, on the one hand, and YOU and/or MGA on the other hand.

8.   All DOCUMENTS REFERRING OR RELATING TO Anna Rhee.

4

ATTACHMENT A

EXHIBIT ____16____

PAGE ____184____

9.    All DOCUMENTS, including without limitation phone records, REFERRING OR RELATING TO COMMUNICATIONS between Anna Rhee, on the one hand, and YOU, MGA and/or CARTER BRYANT, on the other hand.

10.    All DOCUMENTS REFERRING OR RELATING TO this litigation.

11.    All DOCUMENTS REFERRING OR RELATING TO any work or services that YOU performed with, for or on behalf of any competitor of MATTEL, including without limitation MGA, during the term of YOUR MATTEL employment.

12.    All DOCUMENTS REFERRING OR RELATING TO MGA, including without limitation all DOCUMENTS REFERRING OR RELATING TO any money or payment made by MGA to YOU.

13.    All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS between YOU and MGA prior to June 11, 2002.

14.    All DOCUMENTS, including without limitation phone records, REFERRING OR RELATING TO any COMMUNICATIONS between YOU and MGA after April 27, 2004.

15.    All DOCUMENTS REFERRING OR RELATING TO TOON TEENS.

16.    All doll heads, sculpts, prototypes, models, samples, molds and tangible items that were created, prepared or made, whether in whole or in part, prior to December 31, 2001 REFERRING OR RELATING TO BRATZ.

17.    All doll heads, sculpts, prototypes, models, samples, molds and tangible items REFERRING OR RELATING TO ANGEL and/or PRAYER ANGELS.

ATTACHMENT A

EXHIBIT _____ 16

PAGE _____ 185

**MAY 13 LETTER**

EXHIBIT ____ 16 ____

PAGE ____ 186 ____

May 13, 2005


**BY FACSIMILE**
 **AND U.S. MAIL**

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA  90212


Re:    Mattel v. Bryant

Dear Mr. McFarland:

Thank you for meeting with me on Friday, April 29, 2005.  I am writing to address some
outstanding issues regarding the subpoena to Ms. Halpern.

During the meet and confer, you agreed to produce Ms. Halpern's hard drive from the relevant
period, subject to a stipulated agreement regarding the procedure for a forensic examination.
Further to our phone discussion on the subject on May 9, 2005, the specific proposal is as
follows: We will pay for the forensic examination.  The examiners will take possession of Ms.
Halpern's hard drive, subject to the confidentiality provisions in the protective order.  The
examiners will make a forensic "image" of the hard drive, to determine whether the hard drive
has been "wiped clean."  If the computer has not been "wiped clean," then the parties can discuss
the terms of the key word search, which will be used to generate a report of the files remaining
on the hard drive.

We will share the report with counsel for Halpern, MGA and Bryant and discuss privilege,
privacy and other disclosure issues at that time.  All parties will reserve their rights as to whether

EXHIBIT _____ 16
PAGE _____ 137

any documents recovered from the hard drive are actually produced.  Please let me know
whether this proposal is acceptable to Ms. Halpern at your earliest convenience.

In addition, you have produced Ms. Halpern's 2001 1099 federal tax form.  You stated that this is
Ms. Halpern's only tax return that reflects payment from MGA relating to Bratz.  If this is
incorrect, please let me know as soon as possible.

Please also confirm that Ms. Halpern conducted another search for documents after our meet and
confer on April 29, as you agreed she would, in an attempt to locate any records which she may
have overlooked in her prior search.  You agreed that this search would include a search for all
documents relating to payment from MGA, including without limitation check stub receipts.  We
would also like confirmation that she has looked for any phone records she may have for the
relevant time period, 1998-2001.

I look forward to hearing from you.


Very truly yours,



Shane Heather McKenzie

07209/#652479v1<QuinnEmanuel> -letter to McFarland re Agreement to Produce

2

EXHIBIT ____16____

PAGE ____188____

HALPERN SUBPOENA

EXHIBIT ___16___

PAGE ___189___

AO 88 (Rev. 11/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

CENTRAL   DISTRICT OF LOS ANGELES

MATTEL, INC., a Delaware Corporation

## SUBPOENA IN A CIVIL CASE

v.

CARTER BRYANT, an Individual; and DOES
1 through 10, inclusive

Case Number: ¹ CV 04-9059 NM (RNBx)

TO:  Sarah Halpern          (818) 547-1550
     1418 Hillcrest Avenue
     Glendale, CA  91202

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT "A"

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP. | March 25, 2005 |
| 865 So. Figueroa Street, 10th Fl., Los Angeles, CA 90017 | 9:30 a.m. |
| (213) 443-3000 |  |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Shane McKenzie_ | |
| Attorney for Plaintiff, Mattel, Inc. | March 14, 2005 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
SHANE H. McKENZIE, ESQ., Quinn Emanuel Urquhart Oliver & Hedges, LLP.
865 So. Figueroa Street, 10th Floor, Los Angeles, CA  90017   (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, parts C & D on reverse)

¹ If action is pending in district other than district of issuance, state district under case number.

EXHIBIT _____ 16

PAGE _____ 190

AO-68

AO 88 (Rev. 11/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) **PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) **DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

EXHIBIT ___16___

PAGE ___191___

## ATTACHMENT A

### Documents And Tangible Things To Be Produced

I.   DEFINITIONS.

1.     "YOU" or "YOUR" means Sarah Halpern, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

2.     "CARTER BRYANT" means Carter Bryant and any of his current or former agents, representatives, employees, attorneys, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.     "BRATZ" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Bratz" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and all DESIGNS and versions of such doll or any portion thereof.

4.     "ANGEL" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Angel" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Angel" line, and all DESIGNS and versions of such doll or any portion thereof.

5.     "PRAYER ANGELS" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Prayer Angels" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Prayer Angels" line, and all DESIGNS and versions of such doll or any portion thereof.

6.     "MATTEL" means Mattel, Inc., any subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

EXHIBIT _____ ATTACHMENT A
                        16

PAGE _____ 192

7.     "MGA" means MGA Entertainment Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

8.     "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

9.     "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

10.     "DOCUMENT" means any "writing" or "recording" as defined in Federal Rule of Evidence 1001 and includes any tangible thing upon which any expression, communication or representation has been recorded, including but not limited to correspondence, e-mails, preliminary, intermediate or final drafts, memoranda, notes, reports of telephone or other oral conversations, audio or videotape recordings, computer tape, computer disk or storage media, computer printout, CD-ROM disk, optical storage disk, other electronic medium, and all other writings and recordings of any kind.

11.     "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

12.     "REFERRING OR RELATING TO" means reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing or indicating in any way.

ATTACHMENT A

EXHIBIT __16__

PAGE __193__

II.   INSTRUCTIONS.

      A.   YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

      B.   If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such DOCUMENTS identify each DOCUMENT and provide the following information:

      1.   The privilege or protection that you claim precludes disclosure;

      2.   The subject matter of the DOCUMENT (without revealing the content as to which the privilege or protection is claimed);

      3.   The date, author(s), addressee(s); and

      4.   Any additional facts on which YOU would base YOUR claim of privilege or protection.

      C.   YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

      D.   YOU are required to identify the source of all DOCUMENTS produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

      E.   Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

III.   DOCUMENTS AND TANGIBLE THINGS TO BE PRODUCED.

      1.   All DOCUMENTS REFERRING OR RELATING TO BRATZ any time prior to January 1, 2001 (regardless of when such DOCUMENT was created, written, received or transmitted), including without limitation any work or services performed by YOU or any other PERSON on BRATZ prior to January 1, 2001.

      2.   All DOCUMENTS REFERRING OR RELATING TO ANGEL, including without limitation any work or services performed by YOU or any other PERSON on ANGEL.

ATTACHMENT A

EXHIBIT ___16___

PAGE ___194___

3.   All DOCUMENTS REFERRING OR RELATING TO PRAYER ANGELS, including without limitation any work or services performed by YOU or any other PERSON on PRAYER ANGELS.

4.   All DOCUMENTS REFERRING OR RELATING TO any agreements or contracts REFERRING OR RELATING TO BRATZ, ANGEL and/or PRAYER ANGELS between YOU and any PERSON.

5.   All DOCUMENTS REFERRING OR RELATING TO CARTER BRYANT any time prior to January 1, 2001 (regardless of when such DOCUMENT was created, written, received or transmitted).

6.   All DOCUMENTS REFERRING OR RELATING TO Anna Rhee any time prior to January 1, 2001 (regardless of when such document was created, written, received or transmitted).

7.   All DOCUMENTS, including without limitation phone records, REFERRING OR RELATING TO COMMUNICATIONS between Anna Rhee, on the one hand, and YOU, MGA and/or CARTER BRYANT prior to January 1, 2001.

8.   All DOCUMENTS REFERRING OR RELATING TO this litigation.

9.   All DOCUMENTS REFERRING OR RELATING TO any work or services that YOU performed for or on behalf of any competitor of MATTEL, including without limitation MGA, during the term of YOUR MATTEL employment.

10.   All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS between YOU and MGA during the term of YOUR MATTEL employment.

11.   All doll heads, sculpts, prototypes, models, samples, molds and tangible items that were created, prepared or made, whether in whole or in part, prior to January 1, 2001 that REFER OR RELATE TO BRATZ.

ATTACHMENT A

EXHIBIT _____ $\dagger$ 6

PAGE _____ 195

12.   All doll heads, sculpts, prototypes, models, samples, molds and
      tangible items that REFER OR RELATE TO ANGEL and/or
      PRAYER ANGELS.

ATTACHMENT A

EXHIBIT ____16____

PAGE ____196____

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

<u>NEW YORK</u>
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

<u>LOS ANGELES</u>
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

<u>SAN FRANCISCO</u>
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

<u>SILICON VALLEY</u>
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE: June 1, 2007          NUMBER OF PAGES, INCLUDING COVER:

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Larry McFarland, Esq. | | (310) 860-0363 |

FROM: Susan Wines

RE: Mattel / Cloonan, Halpern, Hatch-Leahy, Marlow

MESSAGE:



| CLIENT # 7209 | ROUTE/ RETURN TO: | Jeneffer Lewis | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |
|---|---|---|---|
| OPERATOR: | | CONFIRMED? ☐ NO ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

EXHIBIT 16

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

PAGE 197

# Confirmation Report — Memory Send

Page            : 001
Date & Time: 06-01-2007    06:02pm
Line 1      : 2134433100
Line 2      :
Machine ID : QUINN EMANUEL

| | | |
|---|---|---|
| Job number | : | 081 |
| Date | : | 06-01  05:54pm |
| To | : | ☎9414#07209#13108600363 |
| Number of pages | : | 024 |
| Start time | : | 06-01  05:54pm |
| End time | : | 06-01  06:02pm |
| Pages sent | : | 024 |
| Status | : | OK |
| Job number | : 081 | *** SEND SUCCESSFUL *** |

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE: June 1, 2007                    NUMBER OF PAGES, INCLUDING COVER:

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Larry McFarland, Esq. | | (310) 860-0363 |

FROM: Susan Wines

RE: Mattel / Cloonan, Halpern, Hatch-Leahy, Marlow

MESSAGE:

| | | |
|---|---|---|
| CLIENT # 7209 | ROUTE/ RETURN TO: | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |
| OPERATOR: UW | | CONFIRMED?  ☐ NO  ☐ YES: |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT _____ 16

PAGE _____ 198

# EXHIBIT 17

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3730

WRITER'S EMAIL

lmcfarland@kmwlaw.com

June 22, 2007

<u>VIA FACSIMILE</u>

Susan Wines, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

     Re:   <u>Mattel v. Bryant</u>

Dear Susan:

     I am writing to confirm our meet and confer regarding your letter dated June 1, 2007. For ease, I will follow the structure of your letter.

     A.I.    Ms. Leahy is attempting to locate her day planner and is willing to have an attorney from your office come to our office and review the original unredacted day planner. After the review, if you believe that certain portions of the day planner should not have been redacted, we will meet and confer with respect to those portions.

          With respect to Ms. Marlow's documents which you contend have had information redacted from the fax header, my understanding is that this is not the case. In any event, we are willing to have an attorney from your offices review the original documents in our offices.

     II.    With respect to Ms. Marlow's and Ms. Leahy's amended objections, no documents have been withheld from production on the grounds of privilege or privacy.

     III.   As I mentioned, Ms. Marlow is in Brazil on vacation, but I have learned that she is returning late next week. However, I can confirm that Ms. Marlow does have income from MGA for years other than 2000. Documents relevant to this issue may be produced by Wells Fargo, but as I mentioned, I have not yet received any documents from them. In addition, when Ms. Marlow returns, I will meet with her regarding documents relating to her work for MGA.

EXHIBIT   17

PAGE   199

JUN 22 2007 18:31     ATS MCFARLAND WILSO  310860030     2945#10306#00033 P.03/04

Susan Wines, Esq.
June 22, 2007
Page 2

B.      As we discussed, please let me know if Ms. Cloonan's prior counsel served a written response to the subpoena. If not, we will do so. With respect to physical documents, I have confirmed with Ms. Cloonan that she does not have any responsive documents. With respect to the computer, please see the discussion below with respect to Ms. Halpern.

C.      With respect to Ms. Halpern's documents, all responsive documents have been produced. I have a call into her to confirm again that the 2001 federal tax return is the only tax return filed by Ms. Halpern that reflects a payment by MGA relating to Bratz.

With respect to the inspection of her computer, as we discussed it is our position that Ms. Halpern has serious privacy concerns that would be unnecessarily invaded by your proposal of providing the hard drive (or copies thereof) to your firm and allowing Mattell to have unlimited access to all of the information that may be contained on this drive (I say "may" because Ms. Halpern believes that this computer was wiped clean, but a computer expert may be able to recover certain files). However, I am reviewing the authorities set forth in your June 21, letter and I hope to be able to respond to you regarding the law during our telephone conference on Wednesday, June 27, at 10:00 a.m.

With respect to Ms. Halpern's objections, she is not withholding the production of responsive documents.

With respect to your inquiry regarding Ms. Halpern's responses to Request No. 2 and Request No. 3, I am confused. In the written responses we have, Ms. Halpern's responses are identical as follows:

| REQUEST FOR PRODUCTION NO. 2: | REQUEST FOR PRODUCTION NO. 3: |
|---|---|
| All DOCUMENTS REFERRING OR RELATING TO ANGEL, including without limitation any work or services performed by YOU or any other PERSON on ANGEL. | All DOCUMENTS REFERRING OR RELATING TO PRAYER ANGELS, including without limitation any work or services performed by YOU or any other PERSON on PRAYER ANGELS. |

| RESPONSE TO REQUEST NO. 2: | RESPONSE TO REQUEST NO. 3: |
|---|---|
| Halpern refers to and incorporates herein all of the General Objections set forth above. Halpern objects to this request to the extent that it calls for the production of documents that are protected by the attorney-client privilege, attorney work product doctrine, joint defense privilege, common interest privilege or any other similar privilege or protection. Halpern also objects to the extent that this request | Halpern refers to and incorporates herein all of the General Objections set forth above. Halpern objects to this request to the extent that it calls for the production of documents that are protected by the attorney-client privilege, attorney work product doctrine, joint defense privilege, common interest privilege or any other similar privilege or protection. Halpern also objects to the extent that this request |

EXHIBIT _____
PAGE _____

JUN 22 2007 18:31  ˙   ˙ATS MCFARLAND WILSO   31086003F˙  ˙ 2945#10306#00033 P.04/04

Susan Wines, Esq.
June 22, 2007
Page 3

| RESPONSE TO REQUEST NO. 2: | RESPONSE TO REQUEST NO. 3: |
|---|---|
| calls for documents containing Confidential Information, particularly in the absence of a protective order. Halpern objects to this request as vague and ambiguous, particularly as it relates to the words "work or services." Halpern further objects to this request as unduly burdensome. Halpern objects on the grounds that Mattel has not demonstrated a need for production at this time that outweighs the burden imposed on Halpern, a nonparty, particularly to the extent that Mattel may not have exhausted its other possible sources of such documents. Halpern objects to this request on the grounds that it seeks documents that are not relevant to any claim or defense in this litigation, nor likely to lead to the discovery of admissible evidence. Halpern further objects that Mattel does not give Halpern a reasonable time for compliance with this Request. Subject to and without waiving any of the foregoing general and specific objections, Halpern responds as follows: Halpern has conducted a diligent search and a reasonable inquiry in an effort to comply with this request and no responsive documents are in the possession, custody or control of Halpern. | calls for documents containing Confidential Information, particularly in the absence of a protective order. Halpern objects to this request as vague and ambiguous, particularly as it relates to the words "work or services." Halpern further objects to this request as unduly burdensome. Halpern objects on the grounds that Mattel has not demonstrated a need for production at this time that outweighs the burden imposed on Halpern, a nonparty, particularly to the extent that Mattel may not have exhausted its other possible sources of such documents. Halpern objects to this request on the grounds that it seeks documents that are not relevant to any claim or defense in this litigation, nor likely to lead to the discovery of admissible evidence. Halpern further objects that Mattel does not give Halpern a reasonable time for compliance with this Request. Subject to and without waiving any of the foregoing general and specific objections, Halpern responds as follows: Halpern has conducted a diligent search and a reasonable inquiry in an effort to comply with this request and no responsive documents are in the possession, custody or control of Halpern. |

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/ jlt

EXHIBIT _____ 17 _____

PAGE _____ 201 _____

JUN 22 2007 18:30 ͞QTS MCFARLAND WILSO 31086003F ͵ 2945#10306#00033 P.01/04

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212
TELEPHONE (310) 248-3830
FAX (310) 860-0363

---

# FACSIMILE TRANSMITTAL SHEET

| | | | |
|---|---|---|---|
| To: | Susan Wines, Esq. | From: | Larry W. McFarland, Esq. |
| Company: | Quinn Emanuel Urquhart Oliver & Hedges, LLP | Date: | 6/22/2007 |
| Fax No.: | 213-443-3100 | Pages: | 4 |
| Phone No.: | 213-443-3000 | Ref No.: | 10306.33 |
| Re: | Mattel v. Bryant | | |

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

NOTES/COMMENTS:

Please see attached.

**PRIVACY NOTICE**

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.

If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.

EXHIBIT ___

PAGE _____ 202

# EXHIBIT 18

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

January 23, 2008

<u>VIA FACSIMILE AND U.S. MAIL</u>

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:     <u>Mattel v. Bryant</u>

Dear Larry:

I write in response to your letter of January 16, 2008.  We will respond to the other points in your letter at a later time, but wanted to address the issue of your clients' fee agreements and logs of withheld documents.

If you wish to voluntarily produce your clients' fee agreements without the need for motion practice, please do so by Friday.

If you wish to voluntarily produce a log of withheld documents for your clients, if any, pursuant to the guidelines set forth in our letter of January 10, please do so by Friday as well.

I look forward to your response.

Very truly yours,

B. Dylan Proctor

EXHIBIT _____ 18
PAGE _____ 203

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2364071.1

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:** January 23, 2008

**NUMBER OF PAGES, INCLUDING COVER: 2**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Larry McFarland, Esq. Keats, McFarland & Wilson LLP | 310-248-3830 | 310-860-0363 |

**FROM:** Dylan Proctor, Esq.

**RE:** Mattel v. Bryant

**MESSAGE:**

JAN 2 3 2008

EXHIBIT 18

PAGE 204

07209/2315439.2

| CLIENT # | 7209 | ROUTE/ RETURN TO: | Monica Soliz | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |

**OPERATOR:** CONFIRMED? ☐ NO ☐ YES: _____

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

# Confirmation Report — Memory Send

```
Page      : 001
Date & Time: 01-23-2008   18:31
Line 1    : 2134433100
Line 2    :
Machine ID : QUINN EMANUEL
```

| | | |
|---|---|---|
| Job number | : | 434 |
| Date | : | 01-23  18:30 |
| To | : | ☎9414#07209#13108600363 |
| Number of pages | : | 002 |
| Start time | : | 01-23  18:30 |
| End time | : | 01-23  18:31 |
| Pages sent | : | 002 |
| Status | : | OK |

Job number     : 434                    *** SEND SUCCESSFUL ***

## QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

### LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**     January 23, 2008

**NUMBER OF PAGES, INCLUDING COVER: 2**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Larry McFarland, Esq.<br>Keats, McFarland & Wilson LLP | 310-248-3830 | 310-860-0363 |

**FROM:**     Dylan Proctor, Esq.

**RE:**     Mattel v. Bryant

**MESSAGE:**

EXHIBIT ___18___

PAGE ___205___

07209/2315439.2

CLIENT # ___7209___     ROUTE/
                        RETURN TO: __Monica Soliz__     ☒ CONFIRM FAX
                                                        ☒ INCLUDE CONF. REPORT

OPERATOR: ___Willie___          CONFIRMED?  ☐ No  ☐ Yes: _____

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.