# EXHIBIT 19

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

January 27, 2008

<u>VIA FACSIMILE</u>
<u>U.S. MAIL and E-MAIL</u>

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

     Re:   <u>Mattel v. Bryant</u>

Dear Dylan:

     I am writing with regard to your letter of January 23, 2008, regarding the issue of fee agreements and privilege logs. You asked if I wished to voluntarily produce my clients' fee agreements without the need for motion practice and whether I will produce a log of withheld documents as well.

     I would like to direct your attention to my letter to you dated January 16, 2008, and reiterate my position with regard to retainer letters. As I stated in my letter of December 18, 2008, reiterated in our meet and confer on January 11, 2008, and again restated in my last letter on this issue of January 16, 2008, if Mattel agrees that the orders entered by Judge Infante require Mattel to produce all retainer letters relating to non-parties and if in fact Mattel produces such retainer letters, I will also agree to produce the retainer letters for my third party clients. I await your response to this question. I am still unclear as to what Mattel's interpretation of Judge Infante's order with respect to retainer letters for non-parties is.

     With regard to the production of any privilege logs, I also reiterate my position as stated in my letter of January 16, 2008, that the purpose of a privilege log is to make the receiving party aware of any documents that the producing party is withholding based upon privilege. You are aware that I am withholding the retainer letters, and the purpose of the privilege log is therefore

EXHIBIT _____ 19
PAGE _____ 206

☑003/003

B. Dylan Procter, Esq.
January 27, 2008
Page 2


satisfied. Any demand that I produce a privilege log for the purpose of identifying the retainer
letters is unduly burdensome on my clients as I have explained to you on numerous occasions.


Very truly yours,


Larry W. McFarland
Keats McFarland & Wilson LLP


LWM/ccd

cc:  Thomas J. Nolan
     Michael Page


EXHIBIT ___19___

PAGE ___207___

01/27/2008 SUN 21:03  FAX 131  '00363                                    ☒001/003

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212
TELEPHONE (310) 248-3830
FAX (310) 860-0363

## FACSIMILE TRANSMITTAL SHEET

| To: | Dylan Proctor, Esq. | From: | Larry W. McFarland, Esq. |
|---|---|---|---|
| Company: | Quinn Emanuel Urquhart Oliver & Hedges, LLP | Date: | 1/27/2008 |
| Fax No.: | 213-443-3100 | Pages: | 3 |
| Phone No.: | 213-443-3000 | Ref No.: | 10595.1 |
| Re: | Mattel v. Bryant | | |

☐ URGENT  ☐ FOR REVIEW  ☐ PLEASE COMMENT  ☐ PLEASE REPLY  ☐ PLEASE RECYCLE

NOTES/COMMENTS:

Please see attached correspondence.

### PRIVACY NOTICE

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.

If the reader of this message is not the intended recipient or the employee of agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.

EXHIBIT _____

PAGE _____ 208

# EXHIBIT 20

```
 1    Hon. Edward A. Infante (Ret.)
      JAMS
 2    Two Embarcadero Center
      Suite 1500
 3    San Francisco, California  94111
      Telephone:    (415) 774-2611
 4    Facsimile:    (415) 982-5287

 5

 6

 7

 8                    UNITED STATES DISTRICT COURT

 9                  CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

12    CARTER BRYANT, an individual,         CASE NO. CV 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
13               Plaintiff,

14          v.                              Consolidated with
                                            Case No. CV 04-09059
15    MATTEL, INC., a Delaware corporation, Case No. CV 05-2727

16               Defendant.                 ORDER RE MATTEL'S MOTIONS TO
                                            COMPEL FARHAD LARIAN, KAYE
17                                          SCHOLER AND STERN &
                                            GOLDBERG TO PRODUCE
18                                          DOCUMENTS

19    CONSOLIDATED WITH
20    MATTEL, INC. v. BRYANT and
      MGA ENTERTAINMENT, INC. v. MATTEL,
21    INC.

22

23

24                         I. INTRODUCTION

25          The following motions are pending for decision, each of which seeks discovery from non-

26    parties: Mattel, Inc.'s ("Mattel") (1) Motion to Compel Farhad Larian to Produce Documents; (2)

27    Motion to Compel Kaye Scholer to Produce Documents; and (3) Motion to Compel Stern &

28
```

EXHIBIT ___20___

PAGE ___209___

1    Goldberg to Produce Documents. Each of the non–parties submitted oppositions.[1] In addition,

2    MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de

3    Mexico S.R.L. de C.V. (collectively "MGA") submitted oppositions to the motions. Mattel

4    submitted a consolidated reply on January 3, 2008. The motions were heard on January 16, 2008,

5    at which time Mattel agreed to hold in abeyance its Motion to Compel Stern & Goldberg to

6    Produce Documents. This Order, therefore, addresses only Mattel's motions to compel Farhad

7    Larian and Kaye Scholer to produce documents.

8         On January 22, 2008, the parties submitted a Stipulation Regarding Protective Orders to

9    facilitate production of documents responsive to the subpoenas at issue.

10                                      II. BACKGROUND

11        Since the inception of MGA in 1979 until December of 2000, Isaac Larian, a defendant

12   herein and MGA's CEO, and his brother Farhad Larian, a non-party, shared ownership and

13   management of MGA. A dispute developed between the two brothers and in March of 2000,

14   Isaac Larian proposed that Farhad Larian sell his interest in MGA to him.

15        On September 28, 2000, the Larian brothers agreed to have their uncle, Morad Zarabi,

16   arbitrate their dispute and decide a fair value for MGA and also decide which brother should sell

17   his ownership interest to the other. The brothers' agreement to arbitrate was entered into ten days

18   after the alleged effective date of Carter Bryant's contract purportedly assigning rights to Bratz to

19   MGA. Isaac Larian did not tell his brother about the contract with Bryant.

20        Mr. Zarabi retained an appraiser, Ernest Dutcher, to value MGA based on "the period

21   ending December 31, 1999." By December 4, 2000, Mr. Zarabi determined that Farhad Larian

22   should sell his 45% ownership interest in MGA to Isaac Larian and the two entered into an

23   Agreement for Sale of Stock by which Farhad Larian sold his interest for $8.775 million.

24

25

26   _____

27   [1] Mattel contends that Kaye Scholer's opposition was not timely filed and therefore should not be
     considered. Although the opposition was ten days late, Kaye Scholer's brief will nevertheless be considered in the
     interest of resolving these disputes on the merits.

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT ____20____

PAGE ____210____

2

1       In the summer of 2002, Farhad Larian complained to Mr. Zarabi that Isaac Larian had

2   allegedly fraudulently concealed Bratz during the negotiations that led to Farhad Larian's sale of

3   MGA stock.  Mr. Zarabi oversaw another appraisal of MGA based upon information he gathered

4   in 2002.  Mr. Dutcher produced an appraisal on February 13, 2003 that valued MGA as of

5   December 31, 2000 and projected a 2001 revenue growth rate of twenty-five percent (25%) based

6   upon "hot projects that came along."  Mattel's Motion at p.4, Ex. 8 to Decl. of Juan Pablo Albán.

7   Other information relied upon by Mr. Dutcher suggests that MGA had expansionary plans in 2000

8   compared to the prior four years.

9       Unable to resolve his disputes through Mr. Zarabi, Farhad Larian sued Isaac Larian,

10  alleging, among other things, that (a) in late 1999 or early 2000, Isaac Larian and MGA became

11  aware of a new product line called Bratz; (b) starting in early 2000 and throughout 2000, Isaac

12  Larian and MGA devised plans to develop and distribute Bratz; and (c) Isaac Larian concealed the

13  plans for Bratz from Farhad Larian and Mr. Zarabi in order to keep the valuation of MGA

14  artificially low.  Notably, MGA and Bryant claim in the instant lawsuit that they did not even

15  meet until September 2000.

16      Isaac Larian successfully moved to compel arbitration of Farhad Larian's claims.  In early

17  February 2005, Mr. Zarabi declined to serve as arbitrator and the court appointed another

18  arbitrator.  A few weeks later, Farhad Larian filed suit against Mr. Zarabi alleging that he

19  conspired with Isaac Larian to conceal facts.

20      The arbitration of Farhad Larian's claims started on November 16, 2005.  Two days into

21  the proceedings, however, Farhad Larian dismissed his claims.  Isaac Larian sought to recover his

22  attorneys' fees and won an award in excess of $1 million against his brother.

23  Mattel Subpoenas Farhad Larian to Produce Documents

24      On August 31, 2007, Mattel subpoenaed Farhad Larian to appear for deposition and to

25  produce (1) documents relating to the Larian v. Larian disputes; (2) documents related to non-

26  Bratz allegations by Mattel and MGA, primarily related to allegations of trade secret theft; (3)

27  documents relating to Farhad Larian's relationship to MGA, including his position there,

28

EXHIBIT _____ 20

PAGE _____ 211

3

1  ownership interests, and payments from MGA or Isaac Larian to Farhad Larian; (4) Farhad

2  Larian's knowledge and possession of documents specifically from the instant lawsuit, including

3  his communications with Mattel; and (5) information about the location of responsive documents.

4  The majority of Mattel's requests seek documents in the first category described above.

5          On September 21, 2007, Farhad Larian served responses and objections in which he

6  agreed to produce documents responsive to eleven of Mattel's forty-one document requests.

7  After a brief stay of discovery, counsel for Farhad Larian and Mattel met and conferred beginning

8  on November 20, 2007.  During the meet and confer process, Farhad Larian agreed to produce

9  documents responsive to some, but not all of Mattel's forty-one requests.  On November 21,

10  2007, Farhad Larian produced approximately one red well of documents.

11          The parties held a second meet and confer conference call on November 27, 2007, and

12  were able to resolve their disputes regarding many more, but not all requests.  In particular, the

13  parties were ultimately able to resolve their disputes regarding the requests for documents related

14  to non-Bratz allegations.  At the conclusion of the second meet and confer session, it was agreed

15  that Farhad Larian would make a supplemental production of documents on December 6, 2007,

16  and provide a written supplemental response.  The parties attempted to schedule another meet and

17  confer session, but could not agree upon a date.  On the evening of December 6, 2007, Mattel

18  filed the instant motion.  Mattel seeks an order compelling Farhad Larian to produce documents

19  responsive to every request in its subpoena; overruling each of Farhad Larian's objections; and

20  ordering him to produce a document-by-document privilege log.

21  Mattel Subpoenas Isaac Larian's Attorney –Kaye Scholer

22          On or about September 6, 2007, Mattel also subpoenaed Kaye Scholer, the firm that

23  represented Isaac Larian in the Larian v. Larian proceedings.  The subpoena consisted of thirty-

24  five (35) requests seeking the same five categories of documents it subpoenaed from Farhad

25  Larian.  Kaye Scholer's representation of Isaac Larian included defending him in two related

26  Superior Court actions, two arbitration proceedings and an appeal to the California Court of

27  Appeals, all of which covered a period of several years.  As a result of this representation Kaye

28  

EXHIBIT _____ 20

PAGE _____ 212

4

1    Scholer has accumulated approximately fifty-six (56) boxes of its client's files, including, among

2    other things, correspondence files, pleading files, discovery files, witness preparation files,

3    research files, exhibits, attorney work files, and billing files.

4            On or about September 18, 2007, Kaye Scholer served its objections, asserting, among

5    other things, that the requests are duplicative, unreasonably cumulative, harassing and oppressive.

6    The parties met and conferred on October 11 and 29, 2007.  Kaye Scholer agreed to review the

7    following files for responsive documents:  (1) pleading files; (2) discovery files; and (3)

8    arbitration exhibits.  Kaye Scholer's rationale for limiting its search for responsive documents to

9    these three files was to avoid undue burden because most of the documents in other files would be

10   protected by the work product doctrine and/or the attorney-client privilege.  Kaye Scholer also

11   agreed to produce documents responsive to the majority of Mattel's requests.  However, Kaye

12   Scholer repeatedly informed Mattel that it objected to producing a document-by-document

13   privilege log because it would be unduly burdensome, expensive and inconvenient.

14           In the instant motion, Mattel seeks an order compelling Kaye Scholer to produce

15   documents responsive to every request in its subpoena and overruling Kaye Scholer's objections,

16   including privilege, or alternatively, compelling Kaye Scholer to produce a document-by-

17   document privilege log.

18   Mattel's Other Discovery Efforts

19           Mattel has attempted to obtain documents related to the Larian v. Larian proceedings from

20   MGA and Isaac Larian.  As far as Mattel can ascertain, however, MGA has produced only four

21   documents relating to the Larian v. Larian proceedings and Isaac Larian has produced none.

22           Mattel also searched public filings in the Larian v. Larian and Larian v. Zarabi et al. civil

23   lawsuits.  Mattel found Mr. Dutcher's declaration that included the appraisals described above,

24   however, Mattel was not able to locate any of the raw data on which Mr. Dutcher relied.  Mattel

25   also served subpoenas on third parties involved in the Larian v. Larian proceedings, and met with

26   limited success.

27   //

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT _____ 20 _____

PAGE _____ 213 _____

5

III. STANDARDS

Rule 45 of the Federal Rules of Civil Procedure requires third parties to produce documents (and reasonably accessible electronically stored information) that are responsive to a subpoena that a party serves on them. Fed.R.Civ.P. 45(b), (d). If the subpoenaed documents are relevant and there is good cause for their production, the subpoena is enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying or embarrassing. The factors to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena. A person withholding subpoenaed information under a claim of attorney-client privilege or protected by the work product doctrine must expressly make the claim and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed.R.Civ.P. 45(d)(2).

Rule 45(c)(1), Fed.R.Civ.P., provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Furthermore, "[t]he issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees-- on a party or attorney who fails to comply." Id.

IV. DISCUSSION

A. Documents Subpoenaed from Farhad Larian

Mattel contends that each of the categories of documents it seeks from Farhad Larian is relevant and that there is good cause for production. First, Mattel contends that the Larian v. Larian proceedings are relevant because Farhad Larian's allegations about the timing of the origins and early development of Bratz and MGA's concealment thereof parallel and provide support for the crux of Mattel's claims in the instant litigation. Second, Mattel contends that documents about Farhad Larian's relationship with MGA are relevant to his credibility. In particular, Mattel contends that payments from Isaac Larian and/or MGA to Farhad Larian are

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 20

PAGE _____ 214

6

1  relevant to credibility and possible bias.  Third, Mattel contends that documents relating to this

2  action are clearly relevant, especially in light of MGA and Isaac Larian's threat to disqualify

3  Mattel's counsel based upon purported communications between Mattel's counsel and Farhad

4  Larian.  Fourth, Mattel contends that it seeks information about the location of responsive

5  documents to determine whether Farhad Larian destroyed documents or for another reason no

6  longer has them.

7       Mattel next contends that Farhad Larian has failed to carry his burden of demonstrating

8  that the requests at issue are unreasonable, oppressive, annoying or embarrassing.  Further, Mattel

9  contends that the protective order in place in this lawsuit is sufficient to address Farhad Larian's

10  confidentiality or privacy concerns.  Lastly, Mattel contends that Farhad Larian's privilege log is

11  inadequate because it fails to justify his claims of privilege and work product protection on a

12  document-by-document basis.

13       Farhad Larian contends that Mattel's motion should be denied because Mattel violated its

14  meet and confer obligations by filing the motion before he made his scheduled supplemental

15  production and before the parties' meet and confer discussions had concluded.  According to

16  Farhad Larian, on November 27, 2007, it was agreed that he would make a supplemental

17  production of documents on December 6, 2007, and that he would provide a written supplemental

18  response.  Farhad Larian complied with this agreement and, on December 6, 2007, provided a

19  written supplemental response and, as Mattel acknowledges, approximately six boxes containing

20  approximately 12,000 pages of documents.  Nevertheless, Mattel filed the instant motion on

21  December 6, 2007, without reviewing the supplemental document production and written

22  supplemental response.  Farhad Larian also represents that as of December 6, 2007, the day

23  Mattel filed the instant motion, the parties acknowledged the need for a further meet and confer

24  session, as reflected in the numerous e-mails and correspondence exchanged between counsel.

25  Furthermore, Farhad Larian represents that after Mattel filed the instant motion, he requested that

26  Mattel take the motion off-calendar because his supplemental responses resolved the parties'

27  disputes as to all but three requests and because there was potential for resolving the remaining

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 20

PAGE _____ 215

7

1 | requests as well, but that Mattel refused.

2 |       Farhad Larian contends that in light of his supplemental production, he is now in full

3 | compliance with Mattel's subpoena, except for three requests. He represents that he has produced

4 | over 12,000 documents, including all non-privileged documents from the Larian v. Larian matters

5 | that relate to Bratz (including its origin), Carter Bryant, Mattel, a fee agreement between Farhad

6 | and MGA, and all documents related to appraisals of MGA that are not privileged or otherwise

7 | covered by a protective order. He also contends that the privilege log he has produced to Mattel,

8 | which describes the withheld documents by category instead of document-by-document, is

9 | sufficient to substantiate his claims of privilege and work product protection. As for the three

10 | remaining requests, Nos. 23, 24 and 41, Farhad Larian contends that they are overbroad, harassing

11 | and cumulative and invade his and his family's privacy.

12 | Farhad Larian Has Substantially Complied with the Subpoena

13 |       Farhad Larian made a substantial supplemental production and provided a supplemental

14 | written response on December 6, 2007. Indeed, Mattel acknowledges that it received

15 | approximately six boxes of documents from Farhad Larian, which contain approximately 12,000

16 | pages of documents. Nevertheless, Mattel contends in its reply brief that there are a few

17 | deficiencies in Farhad Larian's production. For example, Mattel contends that Farhad Larian has

18 | not produced (1) documents bates stamped "MZ" and "ED"; (2) raw data provided to the

19 | appraisers in the Larian v. Larian litigations and the 2000 financial models that Farhad Larian

20 | claimed Isaac Larian prepared; (3) three boxes of documents that Farhad Larian's counsel showed

21 | Mattel's counsel and upon which MGA's disqualification threats against Mattel's counsel are

22 | based; (4) the Dutcher Declaration; and (5) documents responsive to Request Nos. 17-19. Mattel

23 | also contends that Farhad Larian has improperly limited its production to only those documents

24 | that directly reference Bratz and Carter Bryant.

25 |       At the hearing, counsel for Farhad Larian confirmed that all responsive documents,

26 | including the documents identified in Mattel's reply brief, had been or would be produced after

27 | the parties executed the Stipulation Regarding Protective Orders, which has now been

28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 20

PAGE _____ 216

8

1   accomplished.  Significantly, counsel represented that Farhad Larian did not limit his production

2   to only those documents that directly reference Bratz and Carter Bryant, and that his supplemental

3   responses make this point clear.  Counsel for Farhad Larian also represented that all privileged

4   documents have been identified on a privilege log.

5        In light of the December 6, 2007 supplementation, and based upon the representations

6   made by counsel for Farhad Larian at the hearing, Farhad Larian has substantially discharged his

7   obligation to comply with Mattel's subpoena.  Therefore, there is no need for an order compelling

8   any further production of documents.

9        <u>Farhad Larian's Objections to the Three Remaining Requests are Justified</u>

10       The only three requests to which Farhad Larian objects are Nos. 23, 24 and 41, which are

11   set forth in full below:

12       <u>Request No. 23</u>:  All DOCUMENTS RELATING TO any and all payments of
     money or transfers of anything of value that ISAAC LARIAN, his FAMILY
13       MEMBERS and/or MGA have made, have offered or have proposed, promised or
     agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS at
14       any time from January 1, 1999 through the present.

15       <u>Request No. 24</u>:  All DOCUMENTS RELATING TO any and all payments of
     money or transfers of anything of value that any PERSON has made, has offered
16       or has proposed, promised or agreed to make, to or for the benefit of YOU or
     YOUR FAMILY MEMBERS and that was related in any way to BRATZ,
17       BRYANT, MGA or this ACTION at any time from January 1, 1999 through the
     present.

18
     <u>Request No. 41</u>:  DOCUMENTS sufficient to IDENTIFY since January 1, 1999
19       through the present (a) each account with any bank or financial institution that
     YOU have or have had, or that YOU have or have had any legal beneficial
20       interest in; (b) each telephone subscription service account that YOU have or have
     had, or that YOU use or have used; and (c) each email account that YOU have or
21       have had, or that YOU use or have used.

22
     Farhad Larian contends that Mattel's stated justification for the requests – bias and credibility – is
23
     questionable because he is not an adverse witness to Mattel.  Farhad Larian represents that MGA
24
     has never asked him to testify on the company's behalf.  Rather, only Mattel intends to call him as
25
     a witness.  Farhad Larian asserts that there is no reason for Mattel to impeach its own witness.
26
         Furthermore, Farhad Larian contends that even if it is advantageous for Mattel to attack
27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

     EXHIBIT ___20___

     PAGE ___217___

     9

1    his credibility, the scope of Mattel's requests go far beyond what Mattel is reasonably entitled to

2    receive through discovery. He contends that pursuant to Rule 26, Fed.R.Civ.P., he should not be

3    subjected to discovery that is burdensome, cumulative, unnecessarily costly, or insufficiently

4    probative to the issues in the litigation to warrant the expense of production. Furthermore, he

5    contends that the usual restrictions on discovery set forth in Rule 26 should be rigorously applied

6    to protect non-parties such as himself.

7        Farhad Larian contends that the three requests at issue are overbroad and harassing in

8    several respects. First, he points out that the requests seek documents from 1999, which is five

9    years before this action was filed and six years before MGA was involved in this action. Farhad

10   Larian contends that payments made to him and his family before this action was filed and before

11   MGA was a party to the case have no relevance to his credibility as a witness in this case.

12   Second, Farhad Larian contends that the requests, as phrased, would include any card that

13   accompanied a gift to anyone in the Larian family, regardless of the dollar value of the gift.

14   Farhad Larian contends that family gifts for birthdays, Chanukah, or general gifts of money

15   between family members, have nothing to do with bias and violate his and his family's privacy

16   rights. Third, Farhad Larian contends that the requests are overbroad because they would require

17   him to disclose all documents reflecting payments he received as an employee of MGA and its

18   predecessor, a company he was employed by for decades.

19       Furthermore, Farhad Larian contends that he has already produced all non-privileged

20   documents which could potentially show bias, including the amount of money he was paid for his

21   shares of MGA, his consulting agreement with MGA after he sold his shares, and his fee

22   agreement with MGA. He contends that requiring him to search for and produce additional

23   payment documents would only result in him producing cumulative information, which is not

24   only irrelevant but violates his and his family's right to privacy under the California Constitution.

25   Farhad Larian also contends that it would be far less intrusive for Mattel to question him at a

26   deposition about payments he received from Isaac Larian and MGA than for him to respond to the

27   three requests at issue.

28   

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____20_____

PAGE _____218_____

10

1       Mattel's motion is denied with respect to Request Nos. 23, 24 and 41. The requests seek

2    information that is only minimally relevant to the claims and defenses in the case. Mattel's only

3    stated justification for the discovery is that it is relevant to establish Farhad Larian's credibility

4    and bias. Although impeachment information is discoverable, Mattel is not entitled to the type of

5    unfettered discovery it is now seeking. Rather, Rule 26(b)(2), Fed.R.Civ.P., requires the court to

6    restrict or prevent discovery if (i) the discovery is unreasonably cumulative or duplicative, or is

7    obtainable from some other source that is more convenient, less burdensome, or less expensive;

8    (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the

9    information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely

10   benefit, taking into account the needs of the case, the amount in controversy, the parties'

11   resources, the importance of the issues at stake in the litigation, and the importance of the

12   proposed discovery in resolving the issues. These restrictions are particularly important to

13   consider where the discovery requests are directed at a non-party. See Moon v. SCP Pool Corp.,

14   232 F.R.D. 633, 638 (C.D. Cal. 2005) (citing Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.,

15   649 F.2d 649 (9th Cir. 1980) (discovery should be "more limited to protect third parties from

16   harassment, inconvenience, or disclosure of confidential information.").

17       Aside from asserting that the requested information is relevant to bias and credibility,

18   Mattel has made no attempt to justify the significant breadth and burden of its requests. The

19   requests are so broad as to include every payment or gift, regardless of amount, made between

20   Farhad and Isaac Larian, their family members and MGA since 1999. The number of years for

21   which Mattel seeks financial information is overbroad. Mattel is seeking documents since 1999,

22   five years before this action was filed and six years before MGA became a party to this action.

23   Mattel fails to explain how any payments MGA or Isaac Larian made to Farhad or his family

24   members before this action was filed or MGA was a party to the action have any bearing on his

25   credibility as a witness in this action. The requests are also overbroad in that they encompass

26   customary gifts between family members and Farhad Larian's routine salary payments, which

27   have only minimal relevance to Farhad Larian's credibility and bias as a witness in this case.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 20

PAGE _____ 219

11

1    The requests are also cumulative of discovery Farhad Larian has already provided. In

2    particular, Farhad Larian represents that he has already disclosed to Mattel the amount of money

3    he was paid for his shares of MGA, his consulting agreement with MGA after he sold his shares,

4    and his fee agreement with MGA. In light of this production , it is unreasonable to require Farhad

5    Larian to search for and produce gift receipts, cards, and the breadth of other financial documents

6    responsive to Request Nos. 23, 24 and 41. Furthermore, there are other less intrusive and

7    burdensome means of obtaining discovery regarding Farhad Larian's credibility and bias. For

8    example, Mattel may question Farhad Larian about payments he received from his brother and

9    MGA during his deposition.

10   Nor has Mattel justified the intrusive and harassing nature of the requests. Personal

11   financial information is afforded protection by the California Constitution that is also recognized

12   by federal courts. Cal. Const., Art. I, §1; Valley Bank of Nevada v. Superior Court, 15 Cal.3d

13   652, 656 (1975); Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987) (federal courts

14   should give "some weight" to privacy rights that are protected by state constitutions); Soto v. City

15   of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995) (right to privacy in financial information has

16   been recognized by federal courts). When a privacy right is asserted as an objection to discovery,

17   the court must balance the need for the information versus the privacy right asserted. Soto, 162

18   F.R.D. at 616.

19   As discussed previously, there is little to no need for the breadth of financial information

20   sought by Mattel. Many of the documents covered by Request Nos. 23, 24, and 41 have little to

21   no relevance to Farhad Larian's credibility and bias as a witness in this case. Furthermore,

22   Farhad Larian has already produced numerous documents showing payments he received from

23   both his brother and MGA. There are also other less intrusive means for obtaining discovery

24   relating to Farhad Larian's credibility and bias. Furthermore, the scope of these three requests

25   unduly intrude into Farhad Larian's private affairs. The requests are so broad as to include gifts

26   exchanged between family members and Farhad Larian's paycheck stubs, and would require

27   Farhad Larian to disclose every account number he has at a bank or financial institution since

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____20_____

PAGE _____220_____

12

1   1999. Thus, the balance tips sharply in favor of protecting Farhad Larian's personal financial

2   information.

3                    Farhad Larian's Privilege Log is Inadequate

4        Mattel challenges the sufficiency of Farhad Larian's privilege log.  At issue is whether

5   Farhad Larian must describe and assert claims of privilege on a document-by-document basis, or

6   whether he may do so categorically.  Farhad Larian is withholding approximately one bankers'

7   box of documents based upon claims of privilege and work product protection.  Farhad Larian's

8   Opposition at p.20, n. 9.

9        Rule 45(d)(2), Fed.R.Civ.P., requires a party responding to a subpoena to provide

10  sufficient information to enable the party seeking discovery to assess the claims of privilege and

11  work product protection.  The "universally accepted" means of claiming that requested documents

12  are privilege is by producing a document-by-document privilege log.  Gail v. New England Gas

13  Co., Inc., 234 F.R.D. 28, 33 (D. R.I. 2007).  The advisory comments to the 1993 amendment to

14  Rule 26(b), however, state that a description of documents by category is appropriate where it

15  would be "unduly burdensome" to provide a document-by-document privilege log.  Specifically,

16  the advisory comment states, "Details concerning time, persons, general subject matter, etc., may

17  be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous

18  documents are claimed to be privileged or protected, particularly if the items can be described by

19  categories."

20       Farhad Larian relies upon the advisory comments and cases citing the advisory comments

21  to support his contention that as a non-party, it would be unduly burdensome to require a

22  document-by-document privilege log in this case.  The cases cited by Farhad Larian, however, are

23  distinguishable from the present case.  In SEC v. Thrasher, 1996 WL 125661 (S.D. N.Y. 1996),

24  the Commission sought production of all communications between defense counsel concerning

25  the lawsuit.  The court observed that this demand, on it face, sought wholesale production of

26  documents that are ordinarily protected from disclosure.  Further, the defendant represented that

27  the requested documents were extremely voluminous and that a document-by-document privilege

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT ___20___
PAGE ___221___

13

1   log would be a long and fairly expensive project to undertake. In <u>Fifty-Six Hope Road Music,</u>

2   <u>Ltd. v. Mayah Collections, Inc.</u>, 2007 WL 1726558 (Nev. 2007), the withheld documents

3   consisted of e-mail communications between plaintiffs and their counsel or between plaintiffs'

4   counsel. Plaintiffs represented that there were hundreds and perhaps thousands of such email

5   communications which were protected by the attorney-client privilege and work product doctrine.

6          In contrast to the volume of documents at issue in <u>Thrasher</u> and <u>Fifty-Six Hope Road</u>

7   <u>Music,</u> Farhad Larian represents that he has about one bankers' box of privileged documents.

8   Farhad has not established that to produce a privilege log on a document-by-document basis for

9   this volume of documents is unduly burdensome. Furthermore, even if it were appropriate for

10  Farhad Larian to produce a privilege log that described documents categorically, which it is not,

11  the information provided in Farhad Larian's privilege log is insufficient to enable Mattel to assess

12  the claims of privilege and work product protection as required by Rule 45, Fed.R.Civ.P. For

13  example, in some instances, Farhad Larian fails to identify the author and recipient of the

14  documents being withheld. In other instances, Farhad Larian fails to provide the date or date

15  ranges for the documents being withheld. Therefore, Farhad Larian is ordered to provide a

16  supplemental privilege log that complies with Rule 45.

17  <u>B. Documents Subpoenaed from Kaye Scholer</u>

18         Mattel contends that the documents it seeks from Kaye Scholer are relevant for all the

19  same reasons previously articulated in the context of Mattel's motion to compel Farhad Larian to

20  produce documents. Mattel contends that its requests are not unreasonable, oppressive, annoying

21  or embarrassing. Mattel points out that Kaye Scholer has separate case files containing all or the

22  vast majority of responsive documents, which undermines Kaye Scholer's boilerplate burden

23  objections. Mattel also points out that it offered to alleviate some of the burden to Kaye Scholer

24  by paying for Kay Scholer's copying costs and by providing a paralegal to inspect documents

25  from Kaye Scholer's files with an agreement that the inspection would not result in a waiver of

26  any privileges. Further, Mattel contends that the protective order in place in this action is

27  sufficient to address any confidentiality concerns Kaye Scholer may have.

28

EXHIBIT _____ 20

PAGE _____ 222

14

1    Mattel next contends that the documents it seeks from Kaye Scholer are not available from

2    other sources, as evidenced by Mattel's repeated and unsuccessful attempts to seek the same

3    documents from MGA.  Indeed, Mattel contends that the documents in Kaye Scholer's possession

4    are in fact documents within MGA's possession, custody and control that should have, but have

5    not yet been, produced pursuant to prior discovery orders obligating MGA and Isaac Larian to

6    produce documents from the <u>Larian v. Larian</u> proceedings.  Mattel also points out that it has

7    searched public files and served additional subpoenas on other third parties involved in the <u>Larian</u>

8    <u>v. Larian</u> proceedings.  Moreover, Mattel argues that federal law requires Kaye Scholer to comply

9    with the subpoena, even if the evidence sought is obtainable from another source.  <u>See</u> <u>e.g.</u> <u>State</u>

10   <u>Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.</u>, 2007 WL 2993840 at *1 (E.D. N.Y. 2007).

11   Mattel contends that Kaye Scholer's proposal to search only certain files for responsive

12   documents is unacceptable because it would inevitably exclude relevant documents.  In particular,

13   Mattel contends that Kaye Scholer's proposal would exclude relevant documents likely to be

14   found in its correspondence file, such as an August 29, 2003 letter from Isaac Larian to Mr.

15   Zarabi relating to an appraisal of MGA, and a letter from Farhad Larian's attorney to Kaye

16   Scholer detailing the evidence of Isaac Larian's alleged concealment of Bratz.  Mattel contends

17   that the relevance of these documents and others that are likely to exist justifies the burden of

18   production on Kaye Scholer.

19   Further, Mattel contends that Kaye Scholer has failed to produce a privilege log in

20   violation of Rule 45(d)(2), Fed.R.Civ.P., and therefore Kaye Scholer has waived any claims of

21   privilege.  In the alternative, Mattel requests an order compelling Kaye Scholer to produce a

22   document-by-document privilege log.

23   Kaye Scholer contends that the instant motion is premature, unnecessary and a waste of

24   judicial resources.  Kaye Scholer represents that after meeting and conferring in good faith, it

25   agreed to produce documents responsive to thirty of the thirty-five requests, and that the

26   remainder of the requests are grossly overbroad.  Further, Kaye Scholer represents that it has

27   completed its review pursuant to the agreement, and is prepared to produce responsive

28

1 | documents. However, Kaye Scholer continues to object to producing a document-by-document

2 | privilege log on the grounds that it would be unduly burdensome and expensive. Kaye Scholer

3 | emphasizes that Mattel is seeking documents from a law firm, and therefore the vast majority of

4 | responsive documents are protected by multiple privileges, including but not limited to the

5 | attorney-client privilege and the work product doctrine. Kaye Scholer estimates that it would take

6 | in excess of seventy (70) hours to create a document-by-document privilege log for this case, and

7 | that the Federal Rules of Civil Procedure do not require Kaye Scholer to undertake such an

8 | unreasonable burden. Furthermore, Kaye Scholer contends that the failure to produce a

9 | document-by-document privilege log does not result in a per-se waiver of any privilege.

10 | MGA also opposes Mattel's motion for several reasons. First, MGA contends that

11 | Mattel's requests are overbroad, encompassing documents that are only marginally related, if at

12 | all, to the claims and defenses in the case. Second, MGA contends that Mattel's requests are

13 | completely duplicative of requests it has served on the parties in the case. In particular, MGA

14 | contends that Mattel has sought the Larian v. Larian documents from both MGA Entertainment,

15 | Inc. and Isaac Larian. See Mattel's Request No. 41 in Mattel's First Set of Request for

16 | Production of Documents and Tangible Things to MGA, and Request Nos. 123-125 in Mattel's

17 | First Set of Requests for Documents and Things to Isaac Larian. MGA and Isaac Larian are both

18 | under court order to comply with the requests, although Isaac Larian is only required to produce

19 | documents that refer or relate to Bratz in response to Request Nos. 123-125. Third, MGA

20 | contends that Mattel's requests to Kaye Scholer are much broader than requests Mattel previously

21 | served on the parties to this case. Fourth, MGA contends that there is no reason Mattel cannot

22 | obtain a complete set of all relevant documents from the Larian v. Larian proceedings without this

23 | third-party subpoena. Fifth, MGA contends that the vast majority of documents Mattel seeks

24 | from Kaye Scholer are protected by the attorney-client privilege, the work product doctrine, or

25 | other privileges, and that it is improper for Mattel to attempt to subpoena these documents and

26 | then insist that Kaye Scholer produce a document-by-document privilege log. In summary, MGA

27 | contends that Mattel has misused the subpoena process by serving deliberately overbroad and

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 20

PAGE 224

16

1  burdensome requests in an attempt to harass and intimidate MGA and non-parties. Accordingly,

2  MGA contends that Mattel's motion should be denied or Mattel's subpoena should be

3  substantially limited in scope.

4        Mattel's Subpoena is Overbroad, Unduly Burdensome and Cumulative

5        Mattel's subpoena to Kaye Scholer is overbroad and is not reasonably tailored to seek

6  documents relevant to the claims and defenses in this case. Of the thirty-five requests Mattel

7  served on Kaye Scholer, all but one begin with the phrase "all documents" or a similarly broad

8  phrase. For example, Request Nos. 1-3, which are set forth below, seek virtually all documents

9  relating to lawsuits and/or arbitrations between Isaac Larian and Farhad Larian:

10       Request No. 1: All DOCUMENTS, including all COMMUNICATIONS,
         RELATING TO any and all arbitration proceedings between FARHAD LARIAN
11       and ISAAC LARIAN, including without limitation all video and/or sound
         recordings, transcripts, exhibits, memoranda, witness statements, declarations,
12       affidavits and sworn testimony given by any PERSON in connection with such
         arbitration proceedings.
13
         Request No. 2: All DOCUMENTS including all COMMUNICATIONS,
14       RELATING TO Los Angeles Superior Court Case No. BC301371 filed by
         FARHAD LARIAN against ISAAC LARIAN and/or any related proceedings,
15       including any appeal thereof, and including without limitation all video and/or
         sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness
16       statements, declarations, affidavits and sworn proceedings and/or any appeal
         related to such lawsuit.
17
         Request No. 3: All DOCUMENTS RELATING TO Los Angeles Superior Court
18       Case No. BC329501 filed by FARHAD LARIAN against ISAAC LARIAN,
         MORAD ZARABI and Kambiz Zarabi, and/or any related proceedings and/or any
19       appeal of such lawsuit, including without limitation all video and/or sound
         recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness
20       statements, declarations, affidavits and sworn testimony given by any PERSON in
         connection with such suit and/or related proceedings and/or any appeal related to
21       such lawsuit.

22  Mattel has not limited the subject matter of these requests (and others) in any way to exclude

23  irrelevant information. To the contrary, Request Nos. 1-3 are drafted in the broadest possible

24  language, encompassing documents that are only marginally related, if at all, to this case. As

25  such, Mattel's requests are also unduly burdensome.

26       Furthermore, Mattel's requests are clearly duplicative of other requests propounded to the

27
28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT 20
PAGE 225

17

1   parties in this action.  In particular, the requests relating to the <u>Larian v. Larian</u> proceedings are

2   duplicative of Mattel's Request No. 41 to MGA and Request Nos. 123-125 to Isaac Larian.

3   During the hearing, counsel for MGA acknowledged that Isaac Larian is required to comply with

4   Request Nos. 123-125, and is prepared to review Kaye Scholer's files for responsive documents

5   to fulfill his responsibility.  Also during the hearing, Kaye Scholer agreed to make its

6   correspondence file available to MGA's counsel for review.

7        In light of Mattel's failure to take reasonable steps to avoid unduly burdening Kaye

8   Scholer and in light of MGA's and Kaye Scholer's representations during the hearing as outlined

9   above, Mattel's motion to compel Kaye Scholer to comply with the full scope of the subpoena is

10   denied.

11       <u>Kaye Scholer's Compromise is Reasonable Under the Circumstances</u>

12        As an alternative to complying with the full scope of the subpoena, Kaye Scholer agreed

13   to review the following files for documents responsive to every one of Mattel's requests except

14   Nos. 1-3, 6 and 10:  (1) pleading files; (2) discovery files; and (3) arbitration exhibits.  Kaye

15   Scholer's Opposition at p.5.  Kaye Scholer's compromise is reasonable under the circumstances.

16   Narrowing the scope of Kaye Scholer's search in this manner will significantly minimize the

17   burden, expense, and inconvenience imposed by the subpoena because, unlike Kaye Scholer's

18   other files, most of the documents in the three files it agreed to search are not likely to be covered

19   by the attorney-client privilege or work product doctrine.  Further, narrowing Kaye Scholer's

20   search in this manner will not significantly deprive Mattel of relevant discovery to which it is

21   entitled because, as stated previously, MGA's counsel represented during the hearing that Isaac

22   Larian is prepared to review Kaye Scholer's documents, including the correspondence file, to

23   comply with Request Nos. 123-125.

24        Accordingly, to the extent it has not already done so, Kaye Scholer shall conduct the

25   agreed upon search of its three files and produce documents responsive to all of Mattel's requests,

26   except Nos. 1-3, 6 and 10.

27   //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___20___

PAGE ___226___

18

1    <u>Kaye Scholer Must Produce a Privilege Log in Compliance with Rule 45</u>

2         Mattel contends that Kaye Scholer has waived its claims of privilege by failing to produce

3    any privilege log.  The law is clear, however, that the failure to produce a document-by-document

4    privilege log does not result in a per-se waiver of any privilege.  <u>See</u> <u>Burlington Northern & Santa</u>

5    <u>Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.</u>, 408 F.3d 1142, 1147 (9th Cir. 2005).  In this

6    case, Kaye Scholer raised a legitimate objection to producing a document-by-document privilege

7    log on the grounds that it would impose an undue burden.  Under these circumstances, a finding

8    of waiver is unjustified.

9         Nevertheless, Kaye Scholer's claim of undue burden is unpersuasive.  Kaye Scholer has

10   acknowledged that most of the documents in the three files it has agreed to search are not likely to

11   be covered by the attorney-client privilege or work product doctrine.  Kaye Scholer Opposition at

12   pp. 5 and 9.  Indeed Kaye Scholer agreed to search these files precisely because they were not

13   likely to contain privileged documents.  Therefore, requiring Kaye Scholer to produce a

14   document-by-document privilege log for documents withheld from these three files should not

15   impose an undue burden.  Accordingly, Kaye Scholer is ordered to produce a document-by-

16   document privilege log for documents withheld from the three files it agreed to search.

17                                    V. CONCLUSION

18        For the reasons set forth above, it is ordered as follows:

19        1. Farhad Larian is in substantial compliance with Mattel's subpoena with respect to all of

20   the requests, except Nos. 23, 24 and 41.  Request Nos. 23, 24 and 41 are overbroad, unduly

21   burdensome, cumulative, harassing and invade the right of privacy of Farhad Larian and his

22   family.  Therefore, Mattel's motion to compel Farhad Larian to produce documents in response to

23   the subpoena is denied.

24        2. Farhad Larian shall produce a document-by-document privilege log to Mattel no later

25   than January 30, 2008.

26        3. Farhad Larian's request for sanctions against Mattel is denied.

27        4. Mattel's subpoena to Kaye Scholer is overbroad, unduly burdensome and cumulative.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 20

PAGE _____ 227

19

1    Therefore, Mattel's motion to compel Kaye Scholer to produce documents responsive to the

2    subpoena is denied.  Instead, Kaye Scholer is ordered to abide by its agreement to review its

3    pleading files, discovery files, and arbitration exhibits for documents responsive to all of Mattel's

4    requests, except Request Nos. 1-3, 6 and 10.  Kaye Scholer shall produce responsive documents

5    no later than January 30, 2008.

6         5. Kaye Scholer shall also produce a document-by-document privilege log identifying all

7    documents withheld from its pleading files, discovery files, and arbitration exhibits, no later than

8    January 30, 2008.

9         6. Mattel shall abide by its agreement to reimburse Farhad Larian and Kaye Scholer for

10   their copying costs.

11        7. Isaac Larian is granted an extension of time to comply with Request Nos. 123-125.

12   Isaac Larian shall deliver documents responsive to these requests to Mattel no later than 12:00

13   p.m. on January 25, 2008.

14        8. Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

15   Master, Mattel shall file this Order with the Clerk of Court forthwith.

16

17   Dated: January 25, 2008                          /s/Edward A. Infante

18                                                    HON. EDWARD A. INFANTE (Ret.)
                                                      Discovery Master
19

20

21

22

23

24

25

26

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT ____20____

PAGE ____228____                                              20

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2008, I served the attached ORDER RE MATTEL'S MOTIONS TO COMPEL FARHAD LARIAN, KAYE SHOLER AND STERN & GOLDBERG TO PRODUCE DOCUMENTS in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Patricia Glaser, Esq. | Christensen, Glaser, Fink, et al. | pglaser@chrisglase.com |
| Scott E. Gizer, Esq. | Christensen, Glaser, Fink, et al. | sgizer@chrisglase.com |
| Alisa Morgenthaler-Lever, Esq. | Christensen, Glaser, Fink, et al. | amorgentaler@chrisglase.com |
| Alan N. Goldberg, Esq. | Stern & Goldberg | agoldberg@sgattys.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| Bryant S. Delgadillo, Esq. | Kaye Scholer | bdelgadi@kayscholer.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 25, 2008, at San Francisco, California.

Sandra Chan

EXHIBIT ___20___

PAGE ___229___

# EXHIBIT 21

CONFORMED COPY

FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111
415-774-2611
415-982-5287 (fax)

2007 JAN 26  PM 12: 25

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>          Plaintiff,<br><br>     v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>          Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | |

## I. INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of

Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter

Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a

reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1] Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT ___21___  1-26

PAGE ___230___

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel Production of Documents is GRANTED.

## II.  BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls.  This highly lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of Bratz dolls now rival Mattel's Barbie doll.

A.  Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed suit against its former employee Bryant in state court asserting claims for breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion.  Mattel employed Bryant as a product designer from September 1995 through April 1998, and from January 1999 through October 2000.  Upon starting his second term, Bryant signed an Employee Confidential Information and Inventions Agreement which required him not to engage in any employment or business other than for Mattel, or invest or assist in any manner any business competitive with the business or future business plans of Mattel.  Bryant also assigned to Mattel all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that he had not worked for any of Mattel's competitors in the prior twelve months and had not engaged in any business dealings creating a conflict of interest.  Bryant agreed to notify Mattel of any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for a Mattel competitor (later identified as MGA).  Bryant entered into an agreement with MGA to

EXHIBIT ___21___

PAGE ___231___

provide product design services on a "top priority" basis.[2]  The agreement further provided that
Bryant would receive royalties and other consideration for sales of products on which he provided
aid or assistance; that all work and services furnished by Bryant to MGA under the agreement
would be considered "works for hire"; and that all intellectual property rights to preexisting work
by Bryant purportedly would be assigned to MGA.  Mattel further alleges that Bryant converted,
misappropriated and misused Mattel property and resources while he was employed at Mattel.  In
the complaint, Mattel claims ownership of all inventions and works created by Bryant during his
Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of
duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting
subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28
U.S.C. §1332 (diversity jurisdiction).  Mattel filed a motion to remand and submitted a copy of
Bryant's agreement with Mattel's competitor, namely MGA.  The agreement was dated
September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to
provide MGA with design services for the Bratz dolls.  In return, MGA agreed to compensate
Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz
dolls.  In August of 2004, the district court remanded the action.

B.  Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-
complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information
and Inventions Agreement.  Bryant's cross-complaint included claims for unfair competition,
rescission, declaratory relief, and fraud.

//

---

[2]  Bryant has already produced his agreement with MGA.  Therefore, the existence of the agreement does not appear
to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT ___21___

PAGE ___332___

C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

EXHIBIT $Q1^4$

PAGE $233$

G.  Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule

12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted.  The district

court also dismissed Bryant's declaratory relief action, finding there existed no reasonable

apprehension of an imminent copyright infringement claim against him by Mattel based upon

Mattel's Toon Teen intellectual property.

H.  Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five

defendants and nine new legal claims alleging a wide range of commercial disputes.  For

example, Mattel's proposed amended complaint contains RICO claims, a trade secret

misappropriation claim, and aiding and abetting claims predicated on allegations that MGA

cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal

Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with

MGA.  Mattel also sought leave to add a copyright infringement claim.  Mattel has recently filed

copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll

designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed

amendments, but only insofar as they are pled in the form of an amended answer and

counterclaim in the case MGA filed against Mattel, CV 05-2727.  The next day, Mattel filed its

amendments as ordered in case no. CV 05-2727.

I.  Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14,

2004.  Bryant served objections and responses on July 16, 2004.  The parties met and conferred,

but ultimately Mattel moved to compel production in January of 2005.  That motion, however,

Bryant v. Mattel, Inc.,                                                                                                    5
CV-04-09049 SGL (RNBx)

EXHIBIT ___21___

PAGE ___234___

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to compel. The parties informed the court that they would submit a stipulation and order. See Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel Production of Documents, counsel will be submitting a stipulation and order which will be dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to memorialize the parties' meet and confer session, but were unable to reach final agreement because Bryant insisted upon including the following sentence in the stipulation: "The stipulation resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23. From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel waive its right to all further discovery in connection with its requests. Mattel proposed the following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in this Stipulation shall preclude or limit Mattel from seeking further discovery on any matter, including as to matter on which the parties could not reach complete agreement, or preclude or limit any right of Bryant to object or resist to such discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was unacceptable to Bryant. At the direction of the Discovery Master, the parties met and conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT _____21_____
PAGE _____235_____

1,600 pages of documents to date.  Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3]  Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

     J.   Mattel's Motion to Compel Production of Documents

     Mattel's motion has three parts.  First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents:  (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel.  Mattel's Motion at 6.  Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

     Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations.  According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3] According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear.  Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed.  Mattel again obtained a court order compelling the deposition and sanctions.  To date, only Bryant and Larian have been deposed.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT _____ 21

PAGE _____ 236

his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel. He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004. Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of 2004, he produced the following categories of documents: documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4]   There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center. MGA denies the accusation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT _____21_____

PAGE _____237_____

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

EXHIBIT ___21___

PAGE ___238___

requests and that the stipulation controlled to the extent they were inconsistent. Bryant's Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process and asks the Discovery Master to order the disposition of this motion in a manner consistent with the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks the Discovery Master to order Mattel not to revisit any of the requests that were the subject of Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone records and financial information because these records are protected by privacy rights. Lastly, Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit was filed.

### III. DISCUSSION

A. <u>The Parties Did Not Reach a Stipulation to Resolve the Instant Motion</u>

The parties' extensive submissions make it clear that the parties did not resolve the issues raised in the instant motion. The parties met and conferred extensively and in good faith, reaching compromises on virtually all categories of documents in dispute. Despite their efforts, however, the parties were ultimately unable to execute a binding stipulation because they were unable to agree on any provision to govern Mattel's future right to pursue additional discovery from Bryant. It is clear that the parties deemed it necessary to include such a provision in the draft stipulation in order to protect their respective positions. Because the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

EXHIBIT 21
PAGE 239

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48: Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

EXHIBIT _21_

PAGE _240_

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55:  Documents Relating to Bratz's Development and Other Projects that Bryant Worked on for MGA

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT ___21___
PAGE ___241___

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46:  Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information. Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns. Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

13

EXHIBIT ___21___

PAGE ___242___

when the payments were actually made.  Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement.  Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works.  Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages.  17 U.S.C. §504(b).  The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market.  For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation.  Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel.  Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant.  Among other things, the protective order provides protection for confidential trade secret information.  It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only."  The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.  Bryant,

EXHIBIT __21__

PAGE __243__

however, is not required to produce tax returns, provided that he otherwise fully complies with these requests as ordered.

Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

Mattel seeks production of Bratz-related communications and communications with MGA. More specifically, Mattel seeks production of four categories of documents Bryant has refused to produce: (1) communications between Bryant and MGA or third parties that explicitly relate to designs Bryant created while employed by Mattel; (2) communications between Bryant and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment; and (4) communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant contends that the discovery requests for communications between Bryant and MGA are overbroad. Bryant asserts that there are many former Mattel employees and friends of his who have privacy rights that would be impinged upon if he were to disclose his communications. Bryant also asserts that he has his own confidentiality interest regarding any information that he shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they would require him to reveal the identity of current Mattel employees seeking employment with MGA or Bryant.

The Discovery Master finds that Mattel's requests for all communications between Bryant and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential" private information about current or former employees, contractors or vendors (including employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

EXHIBIT _____2|_____

PAGE _____2Ч4_____

privileged documents responsive to Request Nos. 20, 23, 27, and 28. However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA. Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

Request Nos. 49, 51: Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

Request No. 9: Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration. Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper. Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1. Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT ___21___

PAGE ___245___

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant
need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30,
31, 32, 33, 34, 35, 36, 45, and 46.

2. Bryant shall produce all redacted documents in un-redacted form, except for redactions
that are justified by the attorney-client privilege or work product doctrine or his telephone records
pursuant to the terms of this Order.

3. Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5),
Fed.R.Civ.P.

4. Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his
computers for forensic imaging.

5. Bryant shall complete his production by producing missing attachments, fax cover
pages and all other missing responsive documents.

6. Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7. Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,
Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

_____
HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT __21__

PAGE __246__

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjaklan Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjakjian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Well & Shapiro, LLP | pglaser@chrismill.com |

EXHIBIT ___21___

PAGE ___247___

# EXHIBIT 22

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12  CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
13          Plaintiff,

14      v.                                 Consolidated with
                                           Case No. CV 04-09059
15  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16          Defendant.                     ORDER GRANTING IN PART AND
                                           DENYING IN PART MATTEL'S
17                                         MOTION TO COMPEL PRODUCTION
                                           OF DOCUMENTS BY ISAAC LARIAN;
18                                         DENYING REQUEST FOR
                                           SANCTIONS
19

20  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
21  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
22

23

24                        I. INTRODUCTION

25      On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production

26  of Documents by Isaac Larian and for Award of Monetary Sanctions." Specifically, Mattel seeks

27  an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First

28  Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12-31

EXHIBIT ___22___

PAGE ___248___

15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199, 207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents withheld based on any claimed privilege. Mattel also seeks an award of sanctions against Larian in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing this motion. Larian submitted an opposition on December 5, 2007.[1] Mattel submitted a reply on December 10, 2007. The matter was heard on December 14, 2007. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in part and denied in part, and the request for sanctions is denied.

II. BACKGROUND

On June 13, 2007, Mattel propounded its First Set of Requests for Production of Documents and Things to Larian, the CEO and majority owner of MGA. On August 6, 2007, Larian filed his initial responses and objections. The parties met and conferred, and on September 25, 2007, Larian served supplemental responses and objections.

Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the 276 Requests. The parties met and conferred further, and Larian ultimately agreed to provide further responses to 55 of the disputed 87 Requests. Specifically, Larian agreed to supplement his responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that have not previously been produced." MGA's Opposition at pp. 1-2.

The remaining 32 Requests at issue can be grouped into ten categories: (1) personal financial data; (2) communications with Mattel employees; (3) statements to the media; (4) telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's arbitration; and (10) MGA Hong Kong and MGA Mexico.

//

---

[1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim statement of Mattel's position. The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve Mattel's motion on the merits.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT 22
PAGE 249

## II. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

### The 55 Requests Resolved During Meet and Confer Session

During the meet and confer session held after the instant motion was filed, Larian agreed to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55 requests are no longer in dispute.

Nevertheless, a court order compelling production is warranted for two reasons. First, Larian has not yet produced documents responsive to the 55 requests or provided a date by which

1   he will do so. Second, Larian's agreement to produce responsive documents is apparently limited

2   to documents from his so-called "personal files." See Opposition at 2:2-3.

3         Mattel's counsel "never agreed that Larian could limit his response to the above requests

4   to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his

5   response to documents in Larian's 'personal files.'" Supp. Decl. of Scott B. Kidman.

6   Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34,

7   Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding

8   parties' "possession, custody or control." The limitation is also unworkable because, as Mattel

9   points out, it "would create a situation by which responsive and highly relevant documents might

10  never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and

11  Larian, on the other hand, deems [a] document not to be part of his 'personal files.'" Reply at p.6.

12  __Market Research for Products Not at Issue:  Request Nos. 79-81__

13         In Request No. 79, Mattel seeks all documents relating to any focus groups relating to

14  Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports. In

15  his supplemental response, Larian agrees to produce the following documents, subject to his

16  general objections:

17         Larian will produce all documents within his possession, custody, or control that
          relate to focus groups for "MGA contested products" and "Mattel contested

18        products," as those terms are defined in Mattel's First Requests for Production
          regarding Claims of Unfair Competition, if any, and that have not already been

19        produced, that he discovers in the course of his reasonable search and diligent
          inquiry, and to which no privilege or other protection applies, including without

20        limitation, the attorney-client privilege or attorney's work product doctrine.

21

22  Mattel's Consolidated Separate Statement at pp. 20-21.

23         In Request No. 80, Mattel seeks all documents relating to any services or work performed

24  by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all

25  videotapes, summaries, notes and reports associated therewith. In his supplemental response,

26  Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to

27  the request and to which no privilege or other protection applies.

28

                                        4

EXHIBIT _____22_____

PAGE _____251_____

1       In Request No. 81, Mattel seeks all documents relating to Alaska Momma.  In his

2  supplemental response, Larian agrees to produce all documents relating or referring to Bratz,

3  Angel or Bryant that are responsive to the request and to which no privilege or other protection

4  applies.

5       Mattel contends that the requests are as narrowly tailored as possible to capture relevant

6  information.  More specifically, Mattel contends that Request No. 79 seeks documents that bear

7  directly on the timing of the development of Bratz, as well as MGA's unfair competition claims

8  and Mattel's defense thereto.  Mattel contends that the requested documents may demonstrate that

9  MGA is guilty of copying Mattel's Barbie and My Scene products.

10       Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome.  As an

11  example, Larian points to Request No. 80, which requests all documents relating to any services

12  or work performed by L.A. Focus, regardless of whether that work has any relation to the claims

13  and defenses in the action or any of the products at issue.  Larian similarly contends that Request

14  Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or

    defense in this case.

15       Mattel's motion to compel Larian to produce all documents responsive to Request No. 79

16  is granted.  The request is reasonably limited in subject matter to Bratz and Angel.  The requested

17  documents are relevant to several issues in the case, including the origin, conception and creation

18  of Bratz.  The requested documents are also relevant to the unfair competition claims.  Larian's

19  supplemental response to Request No. 79 is unduly restrictive.  Among other things, the

20  definitions of "contested MGA products" encompass only those products that provide a basis for

21  any claim by MGA against Mattel, and not claims by Mattel against MGA.

22       Mattel's motion to compel Larian to produce all documents responsive to Request Nos.

23  80-81 is denied.  These requests, as drafted, are clearly overbroad because they have no

24  reasonable limitations on subject matter or time.  In particular, the requests are directed to L.A.

25  Focus and Alaska Momma without regard to whether the services or work the companies

26  provided has any relation to any product at issue.

27       Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT _____22_____

PAGE _____252_____

1   documents related to the products at issue: Bratz and Angel. In Mattel's view, Larian's

2   supplemental response is too narrow and "may result in the exclusion of highly relevant

3   documents because the project, concept or design that is the subject of the focus group is deemed

4   not to relate to something then known as Bratz or Angel." However, Larian acknowledges that

5   these types of hypothetical documents would still fall within the narrower scope of production

6   proposed in his supplemental response.

7          Mattel also contends that it is entitled to all of the requested documents called for by

8   Request No. 80 because they are relevant to credibility and bias, particularly if the documents

9   show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A.

10  Focus used. It is, however, not apparent how deviations from standard procedures would impact

11  credibility or bias.

12         As to Request No. 81, Mattel contends that the documents showing the relationship

13  between Larian or MGA and Alaska Momma are relevant, even if they do not themselves

14  specifically relate to Bratz, Angel or Bryant. Mattel contends that communications from Larian

15  or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant

16  claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's

17  and Bryant's stories about how and when they came to be introduced. Mattel also contends that

18  documents showing other dealings between Larian or MGA and Alaska Momma are relevant to

19  the issues of bias and credibility. Mattel's supposition about the types of documents that might

20  exist does not justify the type of far-reaching request it has propounded. Request No. 81 is also

21  not limited by either subject matter or time.

22         Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in

23  accordance with his supplemental responses.

24  Bryant's Attorney and Niece: Request Nos. 113-115

25         In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne

26  Wang, a lawyer who represented Bryant in his contract negotiations with MGA. In Request No.

27  114, Mattel seeks all documents, including without limitation all communications, between

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT     22

PAGE     253

1  Larian or MGA and Anne Wang. In Request No. 115, Mattel seeks documents relating to Brooke
2  Gilbert, Bryant's niece. In his supplemental responses, Larian agrees to produce documents
3  relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or
4  other protection applies. Thus, the only issue is whether Larian should be required to produce
5  responsive documents that do not relate to Bratz, Angel or Bryant.

6  Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin
7  and conception of Bratz and the timing thereof. Mattel also contends that the documents may
8  disclose relevant information regarding Mattel's claims for breach of contract and inducing
9  breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's
10 contractual obligations with Mattel. Mattel also contends that Larian has failed to carry his
11 burden of demonstrating that the requests are overly burdensome.

12 Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114
13 are inadequate because the limitations on scope may eliminate otherwise relevant documents that
14 do not specifically refer to Bratz, Angel or Bryant. For example, Mattel contends that
15 communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or
16 Bryant may be relevant to the issues of credibility and bias.

17 Mattel contends that Request No. 115 seeks documents that are relevant to determine
18 whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software
19 that had been installed and run on the hard drive. Bryant claims to have given his computer to his
20 niece. Mattel also contends that the requested documents are relevant to the issues of credibility
21 and bias. Further, Mattel contends that Larian's supplemental response to Request No. 115 is
22 inadequate, because evidence of any communication between Larian and his niece, regardless of
23 subject matter, is significant.

24 Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome
25 because they lack any subject matter or time constraints. Further, Larian contends that the
26 requests constitute an improper fishing expedition and necessarily sweep in documents that are
27 not relevant to any claim or defense.

28 //

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT 22
PAGE 254

1   Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied. The

2   requests are overbroad because they are not focused on relevant subject matter and are untethered

3   to any claim or defense. Although Mattel asserts that responsive documents unrelated to Bratz,

4   Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility

5   is too remote to justify the breadth of Mattel's requests.

6   Larian's supplemental responses are sufficient to provide Mattel with relevant and

7   responsive documents. Larian shall produce documents responsive to Request Nos. 113-115 in

8   accordance with his supplemental responses.

9   The Larian Brothers' "Arbitrations and Suits": Request Nos. 123-125

10  In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and

11  suits between Larian and his brother, Farhad Larian. In Request No. 124, Mattel seeks all

12  documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad

13  Larian against Larian, including without limitation all declarations, affidavits, transcripts, video

14  and/or audio recordings and sworn testimony given by any person in such suit or arbitration

15  proceedings. In Request No. 125, Mattel seeks all documents relating to any and all settlements,

16  resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad

17  Larian. In his supplemental responses, Larian agrees to produce all documents referring or

18  relating to Bratz that are responsive to the requests and to which no privilege or other protection

19  applies.

20  Mattel contends that the court has already ruled that the arbitration proceedings between

21  Larian and his brother are relevant because they involve, among other matters, the conception and

22  creation date for Bratz. Mattel contends that Larian's supplemental responses improperly limit

23  the requests to the exclusion of potentially relevant documents. For example, Mattel contends

24  that documents that relate to the business, activities and plans of MGA in early 2000 are relevant

25  to the timing of the development of Bratz, whether or not they specifically refer to Bratz. Mattel

26  also contends that the requested documents are relevant to the value of the Bratz brand and

27  the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

8

EXHIBIT ____22____

PAGE ____255____

1    example, profits from the sale and licensing of Bratz and other information that would impeach

2    Larian's testimony that he has not made any profits from Bratz. Further, Mattel contends that the

3    requested documents may lead to evidence of the assessments or valuations of the net worth or

4    value of MGA or Larian, regardless of any reference to Bratz specifically. Mattel also contends

5    that settlement documents may contain information that bears on the merit of Farhad Larian's

6    claims and the value of Bratz. Mattel also claims that the requested documents are relevant to

7    motive, intent, bias and credibility.

8           Larian contends the instant requests are overbroad and unduly burdensome. Further,

9    Larian contends that the relationship of the requested documents to any of the claims or defenses

10   in the present action is questionable, and the existence of such documents is conjectural.

11   Moreover, Larian contends that many of the categories of documents of interest to Mattel are

12   already the subject of other requests. Larian also contends that Request Nos. 123-125 impose an

13   undue burden because of the protective orders in place that strictly limit the use of any documents

14   from an arbitration and suit between Larian and his brother. Larian represents that he is currently

15   working with Mattel and his brother in an attempt to achieve suitable modifications to the orders

     that are agreeable to all parties.

16          Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is

17   denied. The requests are clearly overbroad in calling for all documents from the arbitrations and

18   suits between Larian and his brother, without any subject matter limitations. Furthermore, these

19   requests are unduly burdensome to the extent they require production of documents that do not

20   refer or relate to Bratz. Such documents have marginal relevance, at best, to the claims and

21   defenses in the case.

22          Larian's supplemental responses to Request Nos. 123 -125 are sufficient. Larian's

23   agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will

24   enable Mattel to obtain documents relevant to the claims and defenses in the case, including many

25   of the categories of documents of interest to Mattel. For example, under Larian's proposed

26   limitation, documents that relate to the business, activities and plans of MGA in 2000 that also

27   refer or relate to Bratz must be produced. Documents relating to the value of the Bratz brand are

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT ___22___

PAGE ___256___

1    also within the scope of Larian's proposed limitation and would have to be produced.  Documents

2    relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be

3    produced.  Further, Larian's proposed limitation does not necessarily foreclose discovery

4    regarding the appraisal of MGA prepared by Mr. Dutcher.  In particular, documents relating to

5    MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue

6    projections must be produced if such documents refer or relate to Bratz.  Accordingly, Larian

7    shall produce documents responsive to Request Nos. 123-125 in accordance with his

8    supplemental responses.

9

     Telephone Records:  Request Nos. 178-181

10          In Request No. 178, Mattel seeks all documents relating to, including without limitation

11   phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

12   from January 1, 1998 through January 1, 2001.  Larian objects to this request.

13          In Request No. 179, Mattel seeks all documents relating to, including without limitation

14   phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

15   from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel.  In his supplemental

16   responses, Larian agrees to produce documents responsive to Request No. 179.  In response to

17   this motion, however, Larian contends that he should be permitted to produce documents

18   responsive to Request No. 179 in redacted form as discussed more fully below.

19          In Request No. 180, Mattel seeks all documents relating to, including without limitation

20   phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

21   from April 1, 2004 through June 1, 2004.  Larian objects to this request.

22          In Request No. 181, Mattel seeks all documents relating to, including without limitation

23   phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf

24   at any time.  In his supplemental response, Larian agrees to produce all documents pertaining to

25   communications made prior to January 1, 2001 that are responsive to the request and to which no

26   privilege or other protection applies.

27   //

28
                                                                                              10
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT _____22_____

PAGE _____257_____

1    Mattel contends that Request No. 178 seeks documents relevant to show Larian's

2    communications with Bryant and other Mattel employees while such employees may still have

3    been employed by Mattel and before Larian claims to have known about Bratz. Similarly, Mattel

4    contends that Request No. 180 seeks documents relevant to Mattel's allegation that MGA, and

5    Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them

6    to steal Mattel trade secrets.

7    Further, Mattel contends that the requested documents regarding telephone records are

8    relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show

9    communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent

10   they show communications with current and former Mattel employees, including Machado,

11   Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements

12   Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses. With respect to

13   burden, Mattel contends that it would be more burdensome to attempt to produce the requested

14   records in redacted form, and further, that the protective order in place is sufficient to protect

     Larian's privacy concerns.

15   Larian contends that the requests regarding telephone records are overbroad, completely

16   unbounded as to subject matter, and necessarily sweep in private information that is completely

17   irrelevant to any of the claims or defenses in the case. Larian also points out that the court

18   previously considered similar requests served on Bryant and allowed production of redacted

19   copies of telephone records as long as Bryant provided a signed verification that none of his

20   redactions related to Bratz, MGA or any other project he worked on for MGA. Specifically,

21   Bryant was permitted to produce redacted phone records as long as he provided a "signed

22   verification that none of the telephone records that were redacted relate or refer in any way to

23   MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA."

24   Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production

25   of Documents by Bryant). Larian contends that he should be permitted to redact responsive

26   documents consistent with the court's prior order. During the meet and confer, Larian offered to

27   provide redacted records and a signed verification that none of the redacted information was

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT 22

PAGE 258

1    relevant to the case, but Mattel did not respond to the offer.

2           Mattel's motion to compel documents responsive to Request Nos. 178 (all documents

3    relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied. The

4    request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in

5    private information that is completely irrelevant to the case. Larian should not be subjected to

6    such an intrusion into his private and business affairs when Mattel has made no attempt to tailor

7    the request to the communications, claims, and defenses identified above.

8           In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records

9    for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters

10   (Bratz and/or Angel). Accordingly, Larian shall abide by his agreement to comply with Request

11   No. 179, as stated in his supplemental response. Larian's proposal to produce responsive

12   documents in redacted form is appropriate to address his privacy concerns. More specifically,

13   Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian

14   provides a signed verification that none of the redacted material refers or relates in any way to

15   MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA,

     or that are otherwise relevant to the case.

16          Mattel's motion to compel documents responsive to Request No. 180 (documents relating

17   to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted. Request No. 180

18   is reasonably tailored to a two month period during which MGA and Larian allegedly recruited

19   employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets. See

20   Mattel's Second Amended Answer and Counterclaims, ¶¶37-54. Larian may produce documents

21   responsive to Request No. 180 in redacted form as specified above with respect to Request No.

22   179.

23          Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian)

24   is overbroad as written because it has no time limits. In his supplemental response, Larian agrees

25   to produce communications prior to January 1, 2001 that are responsive to the request. Larian's

26   proposed limitation is a reasonable compromise that will provide Mattel with relevant documents

27   without imposing an undue burden. Accordingly, Larian shall produce documents responsive to

28

EXHIBIT ___22___

PAGE ___259___

1   Request No. 181 consistent with his supplemental response, and may produce such documents in

2   redacted form as specified above with respect to Request No. 179.

3

4   Statements to the Media:  Request Nos. 190-192, 194-197 and 199

5          In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian

6   and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action.

7   Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes

8   to the issues in the lawsuit.  More specifically, Mattel contends that the request are relevant to

9   Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases

10  regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie

11  products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products.

12  Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may

13  also contain admissions regarding the origin and conception of Bratz and statements relevant to

    damages.

14         Larian contends that the requests are overbroad and unduly burdensome, particularly

15  because several of the requests seek publicly available information.  Further, Larian points out

16  that the court has already considered and rejected as overbroad a nearly identical request served

17  on MGA that called for all documents relating to any communications by MGA with any news

18  organization regarding the contested MGA products or the contested Mattel products.  Larian

19  contends that the same reasoning applies to the instant requests.

20         Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and

21  199 is denied.  Although several of the requests encompass potentially relevant documents, the

22  requests are overbroad and encompass documents that have little to no relevance to the claims and

23  defenses in the case.  Not one of the requests is limited to relevant subject matters, such as Bratz's

24  sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's

25  Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz,

    or damages.

26

27  //

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT ___22___  13

PAGE ___260___

1    Furthermore, many of these overbroad requests seek publicly available information that is

2    readily accessible to Mattel for which Larian should not be burdened.  To the extent the requested

3    documents and information are not publicly available, such documents and information are

4    marginally, if at all, relevant because they are not likely to have caused Mattel compensable harm.

5    In either case, the burden and expense of searching for and producing responsive documents are

6    unjustified.

7    Communications With Mattel Employees:  Request No. 198

8        In Request No. 198, Mattel seeks all communications between Larian and any individual

9    while the individual was employed by Mattel.  Mattel contends that this request is directly

10   relevant to Mattel's claims of trade secret theft, and that the relevancy outweighs any purported

11   burden of production.

12       Larian contends that the request is overbroad and unduly burdensome because it is

13   unrestricted as to time and subject matter.  Larian also points out that the court has previously

14   found a similar request overbroad.  Larian further contends that employees in the toy industry are

15   likely to maintain contacts with other toy manufacturers, and that a large corporation such as

16   Mattel is likely to have a high number of employees communicating with MGA or its officers,

17   which makes the request more unduly burdensome and unreasonable than it appears on its face.

18       Unlike other requests regarding communications, Request No. 198 is reasonably tailored

19   to the specific and numerous allegations in the case regarding alleged trade secret theft.  Although

20   the request is not limited by subject matter, it is limited in other respects to seek relevant

21   documents without imposing an undue burden.  The request is limited to communications

22   between Larian (and not MGA or persons acting on his behalf) and individuals employed at

23   Mattel.  The request is also limited to only those communications that took place while the

24   individuals were employed at Mattel.

25       Nevertheless, an additional temporal limit is appropriate to tailor the request to Mattel's

26   allegations of trade secret theft.  The alleged trade secret theft began with Bryant's conduct in

27   1999 and continued to 2005.  Accordingly, Larian shall produce documents responsive to Request

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

14

EXHIBIT ___22___

PAGE ___261___

1    No. 198 that are limited to the time frame 1999 to 2005.

2

3    Personal Financial Data:  Request Nos. 207-209 and 269

4           In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks

5    or financial institutions and other banking relationships since January 1, 1999.  In Request No.

6    208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such

7    income for each year from 1999 to the present.  In Request No. 209, Mattel seeks Larian's federal

8    and state tax returns for each year from 1999 to the present.  In Request No. 269, Mattel seeks

9    documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from

10   1999 to the present.

11          Mattel contends that Request No. 207 seeks information reasonably calculated to lead to

12   information showing the timing of payments to Bryant and others, which in turn is relevant to the

13   timing of the development of Bratz and issues of credibility.  Mattel contends that Request Nos.

14   208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial

15   condition, which in turn is relevant to damages.  Further, Mattel contends that it is entitled to

16   information regarding the sources of Larian's income to determine whether they are attributable

17   to the alleged misconduct and thus subject to disgorgement.

18          Larian contends that the requested personal financial information is not relevant to the

19   claims or defenses at issue.  More specifically, Larian contends that neither the names of his

20   banks nor his gross income have any bearing upon either compensatory or punitive damages or

21   Mattel's claim for disgorgement of profits.  Larian further contends that there is no support for

22   Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.

23          Larian also contends that all three of the requests overlap substantially with requests

24   Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or

25   burden posed by these requests to him.  Further, Larian contends that the court has previously

26   found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered

27   no reason why the same result should not apply here.

28          Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted.  The

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              15

EXHIBIT _____22_____

PAGE _____262_____

1  requests are reasonably calculated to lead to the discovery of admissible evidence relevant to

2  several issues in the case.  For example, the requested information is likely to lead to information

3  regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of

4  the creation of Bratz.  The requested information is also likely to show Larian's income and net

5  worth, which are relevant to damages.  Further, Larian has failed to establish that the requests are

6  unduly burdensome.  Although Mattel has sought and obtained broad discovery of financial

7  information from MGA, Mattel is also entitled to seek financial information directly from Larian.

8          Mattel's motion is denied as to Request No. 209, provided that Larian complies with

9  Request Nos. 207, 208 and 269.  In light of the discovery of financial information ordered herein

10  and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax

11  returns.

12  Storage Devices:  Request Nos. 222 and 224

13          In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating

14  to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive,

15  delete or modify digital information relating to Bratz, Angel, or Bryant.  Mattel contends that a

16  request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in

17  electronic form.  Mattel also contends that Rule 34 permits a party to obtain and test computer

18  hard drives and other storage devices.

19          Larian contends that the requests are overbroad, unduly burdensome, duplicative, and

20  ignore his privilege and privacy interests.  Larian also objects to an inspection of his actual hard

21  drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which

22  states that the amendment of Rule 34 relating to "electronically stored information is not meant to

23  create a routine right of direct access to a party's electronic information system."  See

24  Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes.  Larian contends that there is no justification for

25  an inspection of his electronic devices because there is no allegation that he improperly deleted

26  documents.

27          Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.

28

EXHIBIT ___22___

PAGE ___263___

With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to authorize the routine production of a party's electronic devices. Mattel attempts to justify Request No. 222 by pointing to various instances of alleged destruction of evidence. See Mattel's Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer laptops; "wiping" information from the hard drives of Larian's computer laptops every six months; redacting "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and destructive testing of Bryant's original Bratz drawings). However, Mattel fails to explain how these alleged instances of evidence destruction justify Request No. 222, other than to assert that it has a right to inspect Larian's storage devices to ensure that relevant information has not been deleted or permanently destroyed. Mattel's stated purpose suggests instead that Mattel is launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal Rules of Civil Procedure. See e.g. Rivera v. NIBCO, Inc., supra. Furthermore, Mattel's stated purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222. Among other things, Request No. 222 encompasses every storage device that Larian has used to copy digital information relating to Bratz. Mattel does not need every CD and DVD containing copies of Bratz-related video and audio content, but that is what the request seeks.

Request No. 222 is also duplicative because it requests information that is sought in numerous other requests served on Larian as well as MGA. Mattel has served hundreds of requests for documents and communications relating to Bratz, Angel, and Bryant. To comply with the requests, Larian was required to search for documents in both hard-copy and electronic form. Under the circumstances, it is unnecessary for Larian to also produce the requested storage devices.

Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims and defenses in the case, and therefore do not justify the burden of production on Larian.

Bryant's Storage Devices: Request Nos. 225, 227 and 228

In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT __22__

PAGE __264__

1   receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2        Larian contends that the requests are improperly directed to him because he does not have

3   personal possession of Bryant's hard drive or storage devices, or other information about those

4   devices. Mattel's Consolidated Separate Statement at p. 206. Larian also contends that the

5   requests are overbroad and unduly burdensome for the reasons discussed above in connection

6   with Request Nos. 222 and 224.

7        Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8   denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9

10  MGA Hong Kong and MGA Mexico:  Request Nos. 272 and 273

11       In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA

12  Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA

13  Mexico"), both of which are named defendants. In his supplemental responses, Larian agrees to

14  produce documents sufficient to show the ownership of these entities.

15       Mattel contends that the requests seek information relevant to refute MGA Mexico's

16  personal jurisdiction defense, and which bear on whether the acts of Larian and others are

17  attributable to the entities. Mattel also contends that Larian's (or MGA's ) ownership interest in

18  these companies is relevant to net worth. Mattel contends that Larian's supplemental response is

19  inadequate because it would allow Larian to withhold contradictory information and conceal the

20  true ownership of the business entities. Furthermore, Mattel contends that it is entitled to know

21  the ownership of these entities at times when different allegedly wrongful acts took place and to

22  determine if the ownership structure changed as a means of concealing assets or concealing the

23  payments of commercial bribes.

24       Larian contends that these requests should not be made to him, but to the entities

25  themselves or to MGA. Further, Larian contends that the requests are duplicative of a request

26  Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

27  served on MGA. Moreover, Larian contends that the requests are overbroad and unduly

28  burdensome, and that at most, he should only have to produce a list of owners.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

18

EXHIBIT $\partial\partial$

PAGE $365$

1    Mattel contends that Larian cannot avoid his duty to respond to these requests simply by

2    saying that the information is obtainable from another source.  Further, Mattel contends that

3    Larian has failed to establish that the requests are unduly burdensome.

4    Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied

5    pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable

6    from another source that is more convenient, less burdensome, or less expensive, namely MGA

7    Mexico and MGA Hong Kong.  The requests are also overbroad and unduly burdensome.

                                IV. CONCLUSION

8    For the reasons set forth above, it is hereby ordered as follows:

9        1.    At meet and confer sessions held after the filing of this motion, Larian agreed to

10   produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-

11   146, 213, 221 and 223.  Accordingly, Larian shall produce, without limitation, all non-privileged

12   documents that are responsive to these Requests.

13       2.    With respect to the remaining requests that are at issue in this motion, Larian shall:

14           A.    produce, without limitation, all non-privileged documents that are

15   responsive to Request Nos.  79, 180, 198 (for the time period 1999-2005), 207, 208 and

16   269; and

17           B.    produce, in accordance with his supplemental responses, non-privileged

18   documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and

19   209.

20           C.    Larian may produce documents responsive to Request Nos. 179, 180 and

21   181 in redacted form as provided herein.

22           D.    Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199,

23   209, 222, 224, 225, 227, 228, 272 and 273.

24       3.    Larian shall produce all non-privileged documents that are required by this Order

25   that are in his possession, custody or control and that have not already been produced no later

26   than January 11, 2008.

27       4.    Larian shall produce a privilege log no later than January 15, 2008.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

EXHIBIT ___22___

PAGE ___266___

1        5.    Mattel's request for sanctions is denied.

2        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3    Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5    Dated: December 31, 2007

                         HON. EDWARD A. INFANTE (Ret.)

6                                Discovery Master

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                     20

EXHIBIT 22

PAGE 267

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 2, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ISAAC LARIAN; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 2, 2008, at San Francisco, California.

Sandra Chan

EXHIBIT 22

PAGE 268

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc
(RNBx), AO279, DISCOVERY, RELATED-G

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Proctor, Brett on 1/3/2008 at 10:45 AM PST and filed on 1/3/2008

**Case Name:**      Carter Bryant v. Mattel Inc
**Case Number:**    2:04-cv-9049
**Filer:**          Mattel Inc
**Document Number:** 1439

**Docket Text:**
Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for Sanctions filed by Defendant Mattel Inc re: MOTION to Compel [1092] (Proctor, Brett)

**2:04-cv-9049 Notice has been electronically mailed to:**

Timothy L Alger    timalger@quinnemanuel.com

Christa M Anderson    canderson@kvn.com

Michelle M Campana    michelle.campana@skadden.com

Jon D Corey    joncorey@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Emil W Herich    eherich@kmwlaw.com

Raoul D Kennedy    rkennedy@skadden.com

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Nathan Meyer    nmeyer@kayescholer.com, dclow@kayescholer,com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com

EXHIBIT ____22____

PAGE ____269____

Mark E Overland    moverland@obsklaw.com

Michael H Page    mhp@kvn.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

John B Quinn    johnquinn@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

John Elliot Trinidad    jtrinidad@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock    awaltonhadlock@kvn.com

Matthew M Werdegar    mmv@kvn.com

Michael T Zeller    michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

John W Keker
Keker & Van Nest
710 Sansome St
San Francisco, CA 94111-1704

Kenneth A Plevan
Skadden Arps Slate Meagher & Flom
4 Times Sq
New York, NY 10036-6522

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\laurakinsey\Desktop\Larian Order.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/3/2008] [FileNumber=5143390-0]
[5a2187944fc1d22750aedb257eb3d8e53a9b8728f71d46135a28ece1a78d4d01e2732
dde016f334ddcc72b8e691e63a2605761dac19ba72309568688b0698f2c]]

EXHIBIT _____ 22
PAGE _____ 270

# EXHIBIT 23

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 24

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 25

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 26

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 27

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 28

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., A DELAWARE )
CORPORATION, )
                                )
        PLAINTIFF, )
                                )
    VS. )  NO. CV 04-9059 NM(RNBX)
                                )
CARTER BRYANT, AN )
INDIVIDUAL; AND DOES 1 )
THROUGH 10, INCLUSIVE, )
                                )
        DEFENDANTS. )
_____)
                                )
AND RELATED COUNTER-CLAIM.)
_____)

WORKING COPY

CONFIDENTIAL TRANSCRIPT

VOLUME I

DEPOSITION OF ANNA RHEE

LOS ANGELES, CALIFORNIA

THURSDAY, FEBRUARY 3, 2005

REPORTED BY:

KAREN E. KAY
C.S.R. NO. 3862, R.M.R., C.R.R.

JOB NO.
C40593LMF

**LUDWIG KLEIN**

10868 KLING STREET
TOLUCA LAKE, CALIFORNIA 91602
800.540.0681        FAX 818.508.6326
e-mail: lois@ludwigklein.com

EXHIBIT _____ 2 8

PAGE _____ 3 4 0

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WORKING COPY

MATTEL, INC., A DELAWARE )
CORPORATION, )
 )
         PLAINTIFF, )
 )
    VS. ) NO. CV 04-9059 NM(RNBX)
 )
CARTER BRYANT, AN )
INDIVIDUAL; AND DOES 1 )
THROUGH 10, INCLUSIVE, )
 )
         DEFENDANTS. )
————————————————————— )
AND RELATED COUNTER-CLAIM.)
————————————————————— )

NONCONFIDENTIAL TRANSCRIPT

VOLUME I

DEPOSITION OF ANNA RHEE

LOS ANGELES, CALIFORNIA

THURSDAY, FEBRUARY 3, 2005

EXHIBIT ___28___

PAGE ___341___

REPORTED BY:

KAREN E. KAY
C.S.R. NO. 3862, R.M.R., C.R.R.

JOB NO.
40593LMF

**LUDWIG KLEIN**

10868 KLING STREET
TOLUCA LAKE, CALIFORNIA 91602
800.540.0681      Fax 818.508.6326
e-mail: lois@ludwigklein.com

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1               UNITED STATES DISTRICT COURT

2               CENTRAL DISTRICT OF CALIFORNIA

3   MATTEL, INC., A DELAWARE   )
    CORPORATION,               )
4                              )
            PLAINTIFF,         )
5                              )
        VS.                    )   NO. CV 04-9059 NM(RNBX)
6                              )
    CARTER BRYANT, AN          )
7   INDIVIDUAL; AND DOES 1     )
    THROUGH 10, INCLUSIVE,     )
8                              )
            DEFENDANTS.        )
9   _____)
                               )
10  CARTER BRYANT, ON BEHALF   )
    OF HIMSELF, ALL PRESENT    )
11  AND FORMER EMPLOYEES OF     )
    MATTEL, INC., AND THE      )
12  GENERAL PUBLIC,            )
                               )
13          COUNTER-CLAIMANT,  )
                               )
14      VS.                    )
                               )
15  MATTEL, INC., A DELAWARE   )
    CORPORATION,               )
16                             )
            COUNTER-DEFENDANT. )
17  _____)

18

19          DEPOSITION OF ANNA RHEE, VOLUME I, TAKEN ON

20      BEHALF OF DEFENDANT CARTER BRYANT AT 2049 CENTURY PARK

21      EAST, LOS ANGELES, CALIFORNIA, COMMENCING AT 10:24

22      A.M. ON THURSDAY, FEBRUARY 3, 2005, BEFORE

23      KAREN E. KAY, C.S.R. NO. 3862, R.M.R., C.R.R.,

24      A CERTIFIED SHORTHAND REPORTER IN AND FOR THE

25      COUNTY OF LOS ANGELES, STATE OF CALIFORNIA.

EXHIBIT    28
          2

NONCONFIDENTIAL TRANSCRIPT - VOLUME I
PAGE    382

LUDWIG KLEIN REPORTERS & VIDEO, INC.    800.540.0681

1  APPEARANCES:

2     FOR THE PLAINTIFF AND COUNTER-DEFENDANT:

3          QUINN EMANUEL
           BY:  MICHAEL T. ZELLER
4               ATTORNEY AT LAW
           865 SOUTH FIGUEROA STREET
5          TENTH FLOOR
           LOS ANGELES, CALIFORNIA 90017
6          213.624.7707  FAX 213.624.0643

7     FOR THE DEFENDANT AND COUNTER-CLAIMANT CARTER BRYANT:

8          LITTLER MENDELSON, P.C.
           BY:  DOUGLAS A. WICKHAM
9               ATTORNEY AT LAW
           2049 CENTURY PARK EAST
10         FIFTH FLOOR
           LOS ANGELES, CALIFORNIA 90067.3107
11         310.553.0308  FAX 310.553.5583

12    FOR THE DEFENDANT M.G.A. ENTERTAINMENT, INC.:

13         O'MELVENY & MYERS, L.L.P.
           BY:  DIANA M. TORRES
14              ATTORNEY AT LAW
           400 SOUTH HOPE STREET
15         FIFTEENTH FLOOR
           LOS ANGELES, CALIFORNIA 90071.2899
16         213.430.6000  FAX 213.430.6407
                    -AND-
17         M.G.A. ENTERTAINMENT, INC.
           BY:  RICHARD DANIELS
18              IN-HOUSE SENIOR COUNSEL
           16380 ROSCOE BOULEVARD
19         VAN NUYS, CALIFORNIA 91406
           818.894.2525  FAX 818.894.0771

20

21

22

23

24                                    EXHIBIT _____ 28

25                                    PAGE _____ 343

                                                          3

NONCONFIDENTIAL TRANSCRIPT - VOLUME I

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

| | | |
|---|---|---|
| 1 | WHEN YOU MAY HAVE MET SOMEBODY, HOW LONG THIS | 11:13:05 |
| 2 | LASTED, AND SO ON AND SO FORTH.  SO I'M NOT TRYING | 11:13:09 |
| 3 | TO TRICK YOU OR ANYTHING LIKE THAT.  I'M TRYING TO | 11:13:12 |
| 4 | WORK THIS THROUGH WITH YOU TO BRING OUT YOUR BEST | 11:13:15 |
| 5 | MEMORY; OKAY? | 11:13:18 |
| 6 | A    OKAY. | 11:13:20 |
| 7 | Q    SO IT'S FAIR TO SAY THAT YOU HAD WORKED IN | 11:13:21 |
| 8 | THE TWO BOOTHS AND THOSE WERE YOUR WORKSPACES BEFORE | 11:13:22 |
| 9 | THE VENDOR ROOM BECAME YOUR WORKSPACE; CORRECT? | 11:13:27 |
| 10 | A    CORRECT. | 11:13:32 |
| 11 | Q .  OKAY.  AND IF YOU STARTED EMPLOYMENT AT | 11:13:33 |
| 12 | MATTEL IN 1995 -- CORRECT? | 11:13:36 |
| 13 | MR. BERMAN:  THAT WAS HER ESTIMATE.  I | 11:13:40 |
| 14 | MEAN, SEE, THE PROBLEM IS YOU'RE TAKING ESTIMATES | 11:13:43 |
| 15 | THAT SHE SAYS SHE'S NOT PRECISE ON, AND THEN YOU'RE | 11:13:44 |
| 16 | PILING TIMES ON TOP OF THEM, AND SO THAT'S CONFUSING | 11:13:47 |
| 17 | TO THE WITNESS.  AND IT'S -- ALSO, I'M GOING TO | 11:13:49 |
| 18 | OBJECT AS IT LACKS -- | 11:13:53 |
| 19 | THE WITNESS:  IT REALLY IS. | 11:13:54 |
| 20 | BY MR. WICKHAM: | 11:13:55 |
| 21 | Q    OKAY.  YOU'VE ESTIMATED THAT YOU STARTED | 11:13:55 |
| 22 | WORKING AT MATTEL IN 1995; CORRECT? | 11:13:57 |
| 23 | A    YES. | 11:14:01 |
| 24 | Q    AND SO, THEREFORE, YOUR BEST ESTIMATE IS | 11:14:02 |
| 25 | THAT'S WHEN YOU FIRST STARTED WORKING IN THE BOOTHS; | 11:14:05 |

LUDWIG KLEIN REPORTERS & VIDEO, INC.    800.540.0681

| | | |
|---|---|---|
| 1 | YES?  CORRECT? | 11:14:07 |
| 2 | A    CORRECT. | 11:14:10 |
| 3 | Q    OKAY.  SO IF YOU TAKE YOUR ESTIMATES OF THE | 11:14:11 |
| 4 | LENGTH OF TIME THAT YOU WERE WORKING IN THE TWO | 11:14:14 |
| 5 | BOOTHS, IS YOUR BEST ESTIMATE THAT YOU STARTED | 11:14:17 |
| 6 | WORKING IN THE VENDOR ROOM IN '96 OR '97? | 11:14:21 |
| 7 | MR. BERMAN:  OBJECTION.  LACKS FOUNDATION. | 11:14:26 |
| 8 | THE WITNESS:  YES. | 11:14:32 |
| 9 | BY MR. WICKHAM: | 11:14:35 |
| 10 | Q    OKAY.  WHO BESIDES CARTER WAS IN THE VENDOR | 11:14:35 |
| 11 | ROOM WHEN YOU WERE ASSIGNED TO WORK THERE? | 11:14:40 |
| 12 | MR. BERMAN:  OBJECTION.  WELL, GO AHEAD. | 11:14:48 |
| 13 | THE WITNESS:  ME, CARTER, ELISE, MELODY, | 11:14:52 |
| 14 | JOEL FELDMAN. | 11:15:17 |
| 15 | BY MR. WICKHAM: | 11:15:18 |
| 16 | Q    SPELL JOEL'S LAST NAME, PLEASE. | 11:15:20 |
| 17 | A    F-E-L-D-M-A-N.  AND THERE'S MORE. | 11:15:22 |
| 18 | Q    TELL ME ALL THE ONES THAT YOU DO REMEMBER. | 11:15:33 |
| 19 | A    OKAY.  THERE'S ANOTHER GIRL.  I DON'T | 11:15:35 |
| 20 | REMEMBER HER NAME.  AND THEN -- I'M TRYING TO THINK. | 11:15:39 |
| 21 | HOLD ON.  THERE WAS MORE.  I JUST DON'T REMEMBER.  I | 11:15:50 |
| 22 | NEVER -- A LOT OF THEM CAME AFTER I LEFT. | 11:16:06 |
| 23 | Q    OKAY.  YOU HAD MENTIONED A PERSON BY THE | 11:16:09 |
| 24 | NAME OF ELISE? | 11:16:12 |
| 25 | A    UH-HUH. | 11:16:15 |

EXHIBIT _____ 28

PAGE _____ 345

50

NONCONFIDENTIAL TRANSCRIPT - VOLUME I

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

| | | | |
|---|---|---|---|
| 1 | Q | WHAT WAS ELISE'S LAST NAME? | 11:16:15 |
| 2 | A | CLOONAN. | 11:16:17 |
| 3 | Q | AND YOU HAD MENTIONED A PERSON BY THE NAME | 11:16:17 |
| 4 | OF MELODY? | | 11:16:19 |
| 5 | A | YES. | 11:16:19 |
| 6 | Q | WHAT WAS MELODY'S LAST NAME? | 11:16:20 |
| 7 | A | I CAN'T REMEMBER. | 11:16:27 |
| 8 | Q | AND ALL THESE PEOPLE WERE ALL WORKING IN | 11:16:33 |
| 9 | THIS VENDOR ROOM AS THEIR OFFICE -- AS THEIR | | 11:16:35 |
| 10 | WORKSPACE? | | 11:16:37 |
| 11 | | MR. BERMAN:  I'M GOING TO OBJECT.  LACKS | 11:16:40 |
| 12 | FOUNDATION.  GO AHEAD. | | 11:16:40 |
| 13 | | THE WITNESS:  YES. | 11:16:42 |
| 14 | | MR. BERMAN:  WE'VE BEEN GOING FOR 53 | 11:16:45 |
| 15 | MINUTES.  IS NOW A CONVENIENT TIME TO TAKE A BREAK? | | 11:16:46 |
| 16 | | MR. WICKHAM:  IT'S NOT REALLY CONVENIENT. | 11:16:50 |
| 17 | | MR. BERMAN:  BUT I WANT TO TAKE A BREAK | 11:16:51 |
| 18 | WITHIN 10 MINUTES. | | 11:16:53 |
| 19 | | MR. WICKHAM:  OKAY. | 11:16:55 |
| 20 | | MR. BERMAN:  SO WHENEVER YOU THINK IT'S | 11:16:56 |
| 21 | APPROPRIATE FOR YOU, BUT I DON'T WANT TO INTERRUPT A | | 11:16:58 |
| 22 | FLOW OR LINE OR WHATEVER SET OF QUESTIONING. | | 11:17:02 |
| 23 | BY MR. WICKHAM: | | 11:17:04 |
| 24 | Q | DO YOU HAVE A RECOLLECTION OF A TIME PERIOD | 11:17:04 |
| 25 | WHEN BOTH YOU AND CARTER WERE WORKING AT MATTEL | | 11:17:11 |

EXHIBIT ___2 8___  51

NONCONFIDENTIAL TRANSCRIPT - VOLUME I

PAGE ___3 4 6___

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

| | | |
|---|---|---|
| 1 | TOGETHER? | 11:17:14 |
| 2 | MR. BERMAN:  OBJECT.  ASSUMES FACTS NOT IN | 11:17:16 |
| 3 | EVIDENCE. | 11:17:19 |
| 4 | THE WITNESS:  YES. | 11:17:21 |
| 5 | BY MR. WICKHAM: | 11:17:22 |
| 6 | Q    OKAY.  WHAT'S YOUR BEST RECOLLECTION AS TO | 11:17:22 |
| 7 | THE LENGTH OF TIME THAT YOU AND HE BOTH WERE WORKING | 11:17:26 |
| 8 | AT MATTEL TOGETHER? | 11:17:29 |
| 9 | A    SEE, THAT'S CONFUSING BECAUSE -- | 11:17:39 |
| 10 | MR. BERMAN:  THEN ASK HIM TO CLARIFY IT. | 11:17:44 |
| 11 | THE WITNESS:  CLARIFY IT, PLEASE. | 11:17:46 |
| 12 | BY MR. WICKHAM: | 11:17:47 |
| 13 | Q    OKAY.  WHAT'S CONFUSING ABOUT IT? | 11:17:47 |
| 14 | A    BECAUSE, FIRST, I WORKED AS A TEMP AND | 11:17:50 |
| 15 | LATER AS A VENDOR, BUT I STILL WORKED WITH HIM. | 11:17:53 |
| 16 | MR. BERMAN:  THAT'S WHAT I -- THAT WAS WHY | 11:17:58 |
| 17 | I OBJECTED. | 11:18:01 |
| 18 | BY MR. WICKHAM: | 11:18:02 |
| 19 | Q    DID THERE COME A TIME DURING THIS FIRST | 11:18:02 |
| 20 | STINT OF EMPLOYMENT WHEN YOU AND CARTER HAD BEEN | 11:18:07 |
| 21 | WORKING TOGETHER AT MATTEL AND THEN CARTER STOPPED | 11:18:10 |
| 22 | WORKING AT MATTEL? | 11:18:15 |
| 23 | MR. BERMAN:  I'M GOING TO OBJECT AS IT'S | 11:18:18 |
| 24 | VAGUE AND AMBIGUOUS.  LACKS FOUNDATION. | 11:18:20 |
| 25 | THE WITNESS:  CAN YOU REPEAT IT AGAIN. | 11:18:22 |

EXHIBIT __28__ 52

NONCONFIDENTIAL TRANSCRIPT - VOLUME I
PAGE ____347____

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

| | | |
|---|---|---|
| 1 | BY MR. WICKHAM: | 11:41:06 |
| 2 | Q    NOW, WITH REGARD TO HAVING A SOCIAL | 12:02:57 |
| 3 | RELATIONSHIP WITH MR. BRYANT, WHO ELSE WOULD JOIN | 12:02:59 |
| 4 | YOU AND HE AS YOU'D GO ABOUT SOCIALIZING? | 12:03:03 |
| 5 | A    RICHARD ERMINE AND ELISE CLOONAN.   ONCE IN | 12:03:09 |
| 6 | AWHILE MELODY BUT NOT MUCH. | 12:03:20 |
| 7 | Q    AND HOW OFTEN WOULD YOU AND MR. BRYANT | 12:03:24 |
| 8 | SOCIALIZE? | 12:03:26 |
| 9 | MR. BERMAN:   OBJECTION.   VAGUE AS TO TIME. | 12:03:28 |
| 10 | THE WITNESS:   MAYBE ONCE A WEEK. | 12:03:35 |
| 11 | BY MR. WICKHAM: | 11:41:23 |
| 12 | Q    AND FOR WHAT TIME PERIOD WERE YOU | 12:03:37 |
| 13 | SOCIALIZING ON A WEEKLY BASIS? | 12:03:40 |
| 14 | A    5, 6 HOURS. | 12:03:51 |
| 15 | Q    WERE YOU GUYS SOCIALIZING ON A WEEKLY BASIS | 12:03:54 |
| 16 | FOR A ONE-YEAR TIME PERIOD, FOR A TWO-YEAR TIME | 12:03:57 |
| 17 | PERIOD, FOR THE LAST TEN YEARS?   WHAT'S YOUR BEST | 12:04:00 |
| 18 | ESTIMATE AS TO THE LENGTH OF TIME THAT YOU WERE | 12:04:03 |
| 19 | SOCIALIZING WITH MR. BRYANT ON A WEEKLY BASIS? | 12:04:07 |
| 20 | A    I DON'T KNOW.   ONCE I GOT TO KNOW HIM, | 12:04:15 |
| 21 | BECAME FRIENDS, WE DID LIKE A ONCE A WEEK AND THEN | 12:04:19 |
| 22 | SOMETIMES STOPPED FOR A MONTH, AND THEN GO ANOTHER | 12:04:28 |
| 23 | FEW WEEKS.   AND, YOU KNOW, DEPENDS ON IF WE'RE BUSY | 12:04:32 |
| 24 | OR NOT. | 12:04:35 |
| 25 | Q    OKAY.   AND HOW LONG DID THAT LAST? | 12:04:36 |

EXHIBIT ___28___ 77

NONCONFIDENTIAL TRANSCRIPT - VOLUME I

PAGE ___348___

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

| | | | |
|---|---|---|---|
| 1 | A | I DON'T KNOW. | 12:04:43 |
| 2 | Q | DID IT LAST FOR SIX MONTHS? | 12:04:45 |
| 3 | A | LONGER. | 12:04:47 |
| 4 | Q | DID IT LAST FOR A YEAR? | 12:04:48 |
| 5 | A | LONGER. | 12:04:50 |
| 6 | Q | DID IT LAST FOR 18 MONTHS? | 12:04:50 |
| 7 | A | LONGER. | 12:04:54 |
| 8 | Q | DID IT LAST FOR TWO YEARS? | 12:04:55 |
| 9 | A | LONGER. | 12:04:59 |
| 10 | Q | DID IT LAST FOR TWO-AND-A-HALF YEARS? | 12:04:59 |
| 11 | A | LONGER. | 12:05:04 |
| 12 | Q | DID IT LAST FOR THREE YEARS? | 12:05:04 |
| 13 | A | POSSIBLY. | 12:05:05 |

14   Q   OKAY.   WHERE WAS MR. BRYANT LIVING AT THAT   12:05:08
15   TIME?   12:05:13
16      MR. BERMAN:   OBJECTION.   ASSUMES FACTS NOT   12:05:14
17   IN EVIDENCE.   12:05:15
18      THE WITNESS:   WHAT TIME?   12:05:16
19   BY MR. WICKHAM:
20   Q   WHEN YOU AND HE WERE SOCIALIZING ONCE A   12:05:18
21   WEEK FOR APPROXIMATELY TWO-AND-A-HALF OR THREE   12:05:21
22   YEARS.   12:05:24
23   A   DIFFERENT PLACES.   12:05:25
24   Q   TELL ME ALL THE PLACES THAT YOU RECALL THAT   12:05:27
25   HE WAS LIVING --   12:05:28

EXHIBIT _____ 28

PAGE _____ 349

78

NONCONFIDENTIAL TRANSCRIPT - VOLUME I

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

| 1 | A | FIRST -- OH, OH. | 12:05:29 |
| 2 | Q | -- WHEN YOU AND HE WERE SOCIALIZING. | 12:05:31 |
| 3 | A | LET ME THINK.  LET ME THINK.  LET ME GO | 12:05:34 |

4  BACKWARDS.  AT THE END HE WAS LIVING IN A HOUSE IN          12:05:53

5  GARDENA WITH RICHARD.  I THINK AT ONE POINT HE WAS          12:05:57

6  LIVING IN A HOUSE WITH ELISE AND RICHARD AND CARTER,        12:06:10

7  LIVING TOGETHER.  AND THEN BEFORE THEN, IT WAS JUST         12:06:16

8  ELISE AND CARTER.  AND BEFORE THAT, HE WAS LIVING           12:06:25

9  IN -- WHAT'S THAT CITY CALLED?  HE WAS LIVING IN A          12:06:37

10 TRAILER WITH HIS BOYFRIEND.  I FORGOT WHAT THE CITY         12:06:43

11 IS CALLED.  IF I HEARD IT, I WOULD KNOW IT, BUT I           12:06:50

12 CAN'T THINK OF IT.          12:06:52

| 13 | Q | WAS IT IN LOS ANGELES COUNTY? | 12:06:53 |
| 14 | A | NO. | 12:06:55 |
| 15 | Q | DO YOU RECALL WHAT COUNTY IT WAS IN? | 12:06:56 |
| 16 | A | NO.  IF YOU COULD TELL ME, I'LL REMEMBER | 12:06:58 |

17 IT.          12:07:00

| 18 | Q | ANTELOPE VALLEY? | 12:07:02 |
| 19 | A | NO. | 12:07:03 |
| 20 | Q | IT WASN'T ANTELOPE VALLEY? | 12:07:04 |
| 21 | A | I DON'T THINK SO. | 12:07:06 |
| 22 | Q | OKAY.  WAS IT IN THE DESERT SOMEWHERE? | 12:07:06 |
| 23 | A | YEAH. | 12:07:14 |
| 24 | Q | BUT YOU DON'T RECALL WHERE? | 12:07:15 |
| 25 | A | NO. | 12:07:16 |

EXHIBIT    28

PAGE    350

79

NONCONFIDENTIAL TRANSCRIPT - VOLUME I

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

| | | |
|---|---|---|
| 1 | Q    OKAY.  YOU'VE GONE BACK THROUGH VARIOUS | 12:07:18 |
| 2 | RECOLLECTIONS OF PLACES WHERE CARTER WAS LIVING. | 12:07:29 |
| 3 | HAVING GONE BACK THROUGH MENTALLY IN YOUR HEAD THAT | 12:07:33 |
| 4 | CHRONOLOGY, DO YOU REMEMBER A PERIOD OF TIME WHEN | 12:07:37 |
| 5 | CARTER STOPPED LIVING IN CALIFORNIA? | 12:07:41 |
| 6 | MR. BERMAN:  OTHER THAN YOU'VE ALREADY | 12:07:46 |
| 7 | TESTIFIED TO. | 12:07:47 |
| 8 | MR. WICKHAM:  CORRECT. | 12:07:48 |
| 9 | THE WITNESS:  NO. | 12:07:51 |
| 10 | BY MR. WICKHAM: | 12:07:51 |
| 11 | Q.   OKAY.  ALL RIGHT.  SO -- STRIKE THAT. | 12:07:56 |
| 12 | MR. BERMAN:  THE HORSE IS DEAD. | 12:07:58 |
| 13 | THE WITNESS:  HEY, YOU GUYS.  EXCUSE ME. | 12:08:00 |
| 14 | BUT I HAVE TO GO TO THE BATHROOM.  2 MINUTES.  2 | 12:08:01 |
| 15 | MINUTES.  I'LL JUST RUN OUT AND COME BACK IN. | 12:08:03 |
| 16 | THE VIDEOGRAPHER:  OFF THE RECORD.  THE | 12:08:08 |
| 17 | TIME IS 12:08. | 12:08:09 |
| 18 | (RECESS.) | 12:13:11 |
| 19 | THE VIDEOGRAPHER:  WE ARE BACK ON THE | 12:13:12 |
| 20 | RECORD.  THE TIME IS 12:14. | 12:14:33 |
| 21 | BY MR. WICKHAM: | 11:41:45 |
| 22 | Q    I WAS WONDERING, DURING THE PERIOD OF TIME | 12:14:38 |
| 23 | THAT MR. BRYANT LIVED IN THE HOUSE IN GARDENA WITH | 12:14:40 |
| 24 | RICHARD THAT YOU'VE JUST DESCRIBED  EXHIBIT _____28_ | 12:14:45 |
| 25 | A    THE LAST ONE?            PAGE _____351_ | 12:14:47 |

80

NONCONFIDENTIAL TRANSCRIPT - VOLUME I

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

| | | | |
|---|---|---|---|
| 1 | Q | CORRECT.  -- WERE YOU SOCIALIZING WITH | 12:14:48 |
| 2 | MR. BRYANT ON ANY SORT OF REGULAR BASIS? | | 12:14:53 |
| 3 | A | YES. | 12:14:58 |
| 4 | Q | HOW FREQUENTLY? | 12:14:59 |
| 5 | A | IT ALL DEPENDED WHETHER I WAS BUSY OR NOT. | 12:15:08 |
| 6 | Q | FAIR ENOUGH. | 12:15:12 |
| 7 | A | IT REALLY DEPENDS. | 12:15:13 |
| 8 | Q | WHAT'S YOUR BEST ESTIMATE AS TO THE | 12:15:16 |
| 9 | FREQUENCY THAT YOU AND MR. BRYANT SOCIALIZED -- | | 12:15:16 |
| 10 | A | EITHER -- | 12:15:20 |
| 11 | MR. BERMAN:  I'LL OBJECT.  LACKS | | 12:15:21 |
| 12 | FOUNDATION. | | 12:15:22 |
| 13 | THE WITNESS:  EITHER ONCE A WEEK OR IT | | 12:15:25 |
| 14 | COULD GO AS LIKE ONCE EVERY COUPLE MONTHS SOMETIMES. | | 12:15:29 |
| 15 | BY MR. WICKHAM: | | |
| 16 | Q | OKAY.  FOR THE PERIOD OF TIME THAT | 12:15:34 |
| 17 | MR. BRYANT LIVED IN THE HOUSE WITH MS. CLOONAN AND | | 12:15:36 |
| 18 | MR. ERMINE, DID YOU SOCIALIZE WITH MR. BRYANT? | | 12:15:40 |
| 19 | A | YES. | 12:15:49 |
| 20 | Q | HOW FREQUENTLY? | 12:15:49 |
| 21 | A | BACK THEN, IT WAS LIKE ONCE A WEEK MAYBE. | 12:16:01 |
| 22 | Q | OKAY.  DURING THE PERIOD OF TIME WHEN | 12:16:12 |
| 23 | MR. BRYANT LIVED IN THAT HOUSE WITH MS. CLOONAN, DID | | 12:16:16 |
| 24 | YOU SOCIALIZE WITH MR. BRYANT? | | 12:16:20 |
| 25 | A | YES. | 12:16:28 |

EXHIBIT ____28____

PAGE ____352____

81

NONCONFIDENTIAL TRANSCRIPT - VOLUME I

LUDWIG KLEIN REPORTERS & VIDEO, INC.  800.540.0681

| | | | |
|---|---|---|---|
| 1 | Q | HOW FREQUENTLY? | 12:16:28 |
| 2 | A | ONCE A WEEK MAYBE. | 12:16:36 |
| 3 | Q | NOW, WAS IT A SITUATION WHERE IT COULD BE | 12:16:39 |

4  ONCE A WEEK AND THEN MONTHS WOULD GO BY AND THEN IT      12:16:41

5  WOULD BE ONCE A WEEK AGAIN --                            12:16:44

6           MR. BERMAN:  ARE WE -- I'M SORRY.  ARE YOU      12:16:47

7  DONE?                                                    12:16:48

8  BY MR. WICKHAM:                                          11:41:58

9     Q    -- OR WAS IT FAIRLY CONSTANT, THAT IT WAS A      12:16:49

10 ONCE-A-WEEK SOCIALIZATION -- SOCIALIZING?                12:16:53

11          MR. BERMAN:  I'M GOING TO OBJECT.  IT'S         12:16:55

12 VAGUE AND AMBIGUOUS AND COMPOUND.                        12:16:56

13          THE WITNESS:  BACK THEN, EARLIER ON, IT WAS     12:17:01

14 A LITTLE MORE.                                           12:17:04

15 BY MR. WICKHAM:                                          11:42:04

16    Q    OKAY.  AND WHERE WERE YOU WORKING DURING         12:17:05

17 THE TIME PERIOD THAT MR. BRYANT WAS LIVING IN THIS       12:17:09

18 HOUSE IN GARDENA?                                        12:17:13

19    A    WAS I WORKING?                                   12:17:15

20    Q    WHERE WERE YOU WORKING?                          12:17:16

21    A    I DON'T REMEMBER EXACTLY.  EITHER WORKING        12:17:23

22 AT MATTEL AS A TEMP OR WORKING FOR MYSELF.               12:17:26

23    Q    OKAY.  YOU DON'T RECALL ONE WAY OR ANOTHER?      12:17:31

24    A    YEAH.                                            12:17:33

25    Q    OKAY.  HOW OFTEN DID YOU GO OVER TO THE          12:17:33

```
1                    REPORTER'S CERTIFICATE

2

3

4              I, KAREN E. KAY, C.S.R. NO. 3862, A CERTIFIED

5    SHORTHAND REPORTER IN AND FOR THE STATE OF CALIFORNIA,

6    DO HEREBY CERTIFY:

7              THAT PRIOR TO BEING EXAMINED THE WITNESS NAMED

8    IN THE FOREGOING PROCEEDINGS WAS BY ME DULY SWORN TO

9    TESTIFY TO THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT

10   THE TRUTH;

11             THAT SAID PROCEEDINGS WERE TAKEN BY ME IN

12   SHORTHAND AT THE TIME AND PLACE HEREIN NAMED AND WAS

13   THEREAFTER TRANSCRIBED INTO TYPEWRITING UNDER MY

14   DIRECTION, SAID TRANSCRIPT BEING A TRUE AND CORRECT

15   TRANSCRIPTION OF MY SHORTHAND NOTES.

16             I FURTHER CERTIFY THAT I HAVE NO INTEREST IN

17   THE OUTCOME OF THIS ACTION.

18

19
                    FEBRUARY 7, 2005
20

21

22

23                  KAREN E. KAY
                    C.S.R. NO. 3862
24

25
```

EXHIBIT _____ 28 _____ 234

CASE _____ 354

# EXHIBIT 29

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**