QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
(timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br>Plaintiff,<br>vs.<br>MATTEL, INC., a Delaware corporation,<br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order of December 6, 2006]**<br><br>[PUBLIC REDACTED] MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY, AND TO OVERRULE INSTRUCTIONS NOT TO ANSWER; AND FOR SANCTIONS<br><br>Date: TBA<br>Time: TBA<br>Place: Telephonic<br><br>Phase I<br>Discovery cutoff: January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

07209/2371600.1

TO THIRD PARTY MARGARET HATCH-LEAHY AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, at a telephonic conference before Discovery Master Hon. Edward Infante (Ret.) that will occur on a date and at a time to be set by Judge Infante, Mattel, Inc. will, and hereby does, move the Court, pursuant to Federal Rules of Civil Procedure 26, 30 and 37:

(1) to compel Margaret Hatch-Leahy to sit for additional deposition time;

(2) to compel Ms. Leahy to answer the questions MGA's counsel improperly instructed Ms. Leahy not to answer during her deposition; and

(3) to sanction Ms. Leahy, MGA, and Carter Bryant and their counsel in the amount of $4,000, to partially reimburse Mattel for its fees and costs in having to bring this motion.

This Motion is made on the grounds that counsel for Ms. Leahy will not allow Mattel to finish deposing Ms. Leahy. In addition, MGA tactically withheld documents relevant to Ms. Leahy's deposition that Mattel was unable to question Ms. Leahy about. This Motion is also made on the grounds that counsel for Ms. Leahy did not have a proper basis for instructing Ms. Leahy not to answer questions and otherwise obstructed the deposition of Ms. Leahy by engaging in abusive discovery tactics, including suggestive objections and narrative speeches.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Tamar Buchakjian and Jennifer Lewis filed concurrently herewith, the records and files of this Court, and all other matters of which the Court may take judicial notice.

**Statement of Rule 37-1 Compliance**

The parties met and conferred regarding Mattel's Deposition of Margaret Hatch-Leahy on December 18, 2007 and times thereafter.

DATED: January 28, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By [signature]
Timothy L. Alger
Attorneys for Mattel, Inc.

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 3

ARGUMENT .......... 11

I. THE DISCOVERY MASTER SHOULD COMPEL THE PRODUCTION OF MS. LEAHY FOR ADDITIONAL DEPOSITION TIME BEFORE THE JANUARY 28, 2008 DISCOVERY CUTOFF .......... 11

A. Defendants Have Not Given Mattel Sufficient Time to Depose Ms. Leahy .......... 11

1. Ms. Leahy Is A Key Percipient Witness .......... 11

B. Counsel Hindered Mattel's Deposition Of Ms. Leahy By Engaging In Delay Tactics And Other Forms Of Obstructionism .......... 15

1. Counsel Strategically Withheld Relevant Documents Without Justification .......... 15

2. MGA's Counsel Created Numerous Delays During the Deposition .......... 16

II. THE COURT SHOULD COMPEL MS. LEAHY TO PROVIDE ANSWERS TO QUESTIONS COUNSEL IMPROPERLY INSTRUCTED HER NOT TO ANSWER .......... 40

III. THE DISCOVERY MASTER SHOULD IMPOSE SANCTIONS .......... 44

CONCLUSION .......... 45

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

AMCO Ins. Co. v. Madera Quality Nut LLC, 2006 WL 931437 (E.D. Cal. 2006) .... 43

Braley v. Campbell, 832 F.2d 1504 (10th Cir. 1987) .... 45

Clarke v. American Commerce Nat'l Bank, 974 F.2d 127 (9th Cir. 1992) .... 40

Damaj v. Farmers Insurance Co., 164 F.R.D. 559 (N.D. Okl. 1995) .... 38

Garcia v. City of El Centro, 214 F.R.D. 587 (S.D. Cal. 2003) .... 43

Grimes v. City and County of San Francisco, 951 F.2d 236 (9th Cir. 1991) .... 44

Hall v. Cliffton Precision, A Division of Litton Systems, Inc., 150 F.R.D. 525 (E.D. Pa. 1993) .... 38

Johnson v. Wayne Manor Apartments, 152 F.R.D. 56 (E.D. Pa. 1993) .... 38

McKay v. C.I.R., 886 F.2d 1237 (9th Cir. 1989) .... 40

Nutmeg Ins. Co. v. Atwell, Vogel & Sterling A Div. of Equifax Services, Inc., 120 F.R.D. 504 (W.D. La. 1988) .... 43

Resolution Trust Corp. v. Dabney, 73 F.3d 262 (10th Cir. 1995) .... 43, 45

U.S. v. Munoz, 233 F.3d 1117 (9th Cir. 2000) .... 44

United States v. Westinghouse Electric Corp., 648 F.2d 642 (9th Cir. 1981) .... 44

## Statutes

28 U.S.C. § 1927 .......... 45

Federal Rules of Civil Procedure

Rule 26(a) .......... 11

Rule 26(a)(1) .......... 13

Rule 30(b)(6) .......... 43

Rule 30(d)(1) .......... 38

Rule 37(a)(4) .......... 44

Rule 37-1 .......... 3

## Other Authorities

8 Wright & Miller, Fed. Practice and Procedure § 2023 (1970) .......... 43

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Margaret Hatch-Leahy is a witness of critical importance. According to MGA, she was the first sculptor of Bratz, having started work on sculpting the Bratz dolls while Carter Bryant was employed by Mattel, in September 2000. Nevertheless, her counsel, who also is counsel for MGA, refuses to allow Mattel to finish deposing Ms. Leahy. Ms. Leahy has unique knowledge about matters that go to the heart of this case, including the origins of Bratz, Carter Bryant's work for MGA while employed by Mattel and the use of Mattel resources for Bratz. She is indisputedly one of the most knowledgeable witnesses regarding the development of Bratz. Mattel should be granted additional time to depose her.

Mattel has deposed Ms. Leahy for a total of 7 hours and 5 minutes. Given her extensive personal knowledge of facts central to this case, 7 hours was not enough time for Mattel to finish its examination. Defendants admit that Ms. Leahy created the first Bratz sculpt at a time when Bryant was still employed by Mattel. According to Paula Garcia, MGA's Bratz project manager since the project's inception, Ms. Leahy was the sole sculptor on the Bratz in the key time period of 2000. During the deposition, Mattel was able to question Leahy about some of her relevant knowledge. However, Mattel was not able to question or fully question her about, among other things the extensive tangibles Leahy possesses which consist of early Bratz sculpts, molds and casts created, Ms. Leahy's use of Mattel resources on Bratz, payments she received from MGA, Leahy's work on Prayer Angels and on her work on numerous subsequent generation Bratz dolls that form the basis of both Mattel's and MGA's claims.

Although Mattel subpoenaed her documents in 2005, Leahy's counsel waited until the day before Ms. Leahy's deposition to produce approximately 175 pages of documents consisting of unidentified photographs of doll casts, molds and sculpts -- with the knowledge that Mattel would not be able to fully analyze the

documents, casts, molds and sculpts in time for Ms. Leahy's scheduled deposition. Moreover, for months Ms. Leahy refused to produce her calendar in its unredacted form. Only some 6 hours after Ms. Leahy's deposition commenced did counsel concede that Ms. Leahy's original planner must be produced. Due to this delay, Mattel did not have enough time to review the unredacted calendar's contents or question Ms. Leahy about it. The belatedly produced documents contain new information on the topics about which Mattel is entitled to question Ms. Leahy -- namely the timing and development of Bratz. Mattel is entitled to resume Ms. Leahy's deposition to question her on the documents counsel delayed in producing without justification.

Additionally, Leahy's, MGA's and Bryant's counsel hindered Ms. Leahy's deposition by taking frequent breaks, improperly coaching Ms. Leahy and even walking out of the deposition mid-question. Moreover, counsel for MGA repeatedly interrupted the questioning through tactics such as demanding that questions be re-read for in-house counsel of MGA, Craig Holden, or demanding that in-house counsel for Mattel, Michael Moore, be shuffled in and out of the deposition. Also, counsel obstructed the deposition by improperly instructing Ms. Leahy not to answer proper questions.

The Discovery Master should compel Ms. Leahy to appear for the completion of her deposition promptly. The Court should also compel Ms. Leahy to provide full and complete answers to the questions that she was improperly instructed not to answer when her deposition is resumed.

**Statement of Facts**

Margaret Hatch-Leahy's Work for Mattel, and On Bratz. Leahy was a Mattel employee until approximately September 5, 2000.[1] At Mattel, she was employed as a sculptor.[2] While Bryant was still employed by Mattel, (and while Leahy apparently was as well) Bryant solicited Leahy to sculpt the Bratz dolls and introduced her to MGA.[3] Leahy created the first Bratz sculpt while Bryant was employed by Mattel.[4] According to MGA's Bratz project manager since the project's inception, Paula Garcia, Leahy was the sculptor on Bratz in the key time period of 2000.[5] Indeed, according to Leahy, she -- and not Bryant -- was the creator of the "appearance" of Bratz.[6] She also worked on Bratz samples exhibited at the Hong Kong Toy Fair in January 2001 and the New York Toy Fair in February 2001.[7]

Mattel Subpoenas Leahy for the Production of Documents. On March 14, 2005, Mattel served a subpoena on Leahy requesting the production of documents.[8] The subpoena requested twelve categories of documents and tangible

---

[1] Margaret Leahy's MGA Application For Employment ("Leahy Employment Application"), dated February 14, 2005, Declaration of Tamar Buchakjian, dated January 28, 2008 and filed concurrently herewith, ("Buchakjian Dec."), Exh. 1, at 16:17-19.

[2] Id. at 14:13-21.

[3] Deposition Tr. of Carter Bryant ("Bryant Depo."), Vol. I, dated November 4, 2004 at 68:22-71:13, Buchakjian Dec. Exh. 2.

[4] Leahy Depo. at 161:5-162:2, Buchakjian Dec. Exh. 5.

[5] Deposition Tr. of Paula Garcia ("Garcia Depo."), Vol. I, dated May 24, 2007 at 255:1-17, Buchakjian Dec. Exh. 3; Garcia Depo., Vol. II, dated May 25, 2007 at 629:6-18, Buchakjian Dec. Exh. 4.

[6] Leahy Depo at 275:2-10, Buchakjian Dec., Exh. 5.

[7] Garcia Depo., Vol. II, dated May 25, 2007 at 481:20-482:1; 489:5-11, Buchakjian Dec. Exh. 4.

[8] Mattel, Inc.'s Subpoena to Margaret Hatch-Leahy, dated March 14, 2005 ("Leahy Subpoena"), Buchakjian Dec., Exh. 6.

items regarding the conception, creation, design and development of Bratz, all of which directly relate to Mattel's claims.[9]

Leahy's Initial Production Is Heavily Redacted. In response to Mattel's subpoena, Leahy produced 76 pages of heavily redacted documents on May 17, 2005. The first twelve pages of this production consisted of redacted pages from Leahy's day planner.[10] On June 1, 2007, after the year long stay in this case was lifted, Mattel requested that Leahy make her original planner available for review since the pages produced from it were so heavily redacted as to be unintelligible.[11] Leahy agreed to make her planner available for inspection by Mattel's counsel.[12]

Mattel's Inspection Of Leahy's Planner Reveals That Leahy Redacted Critically Relevant And Responsive Evidence. On July 6, 2007, counsel for Mattel inspected Leahy's planner.[13] This inspection revealed that Leahy and her counsel had previously failed to produce clearly relevant pages and entries from her planner.[14] For example, a page containing an entry dated June 16, 2000 referencing "Angel" was not produced at all, even though the subpoena clearly requested all documents "referring or relating to Angel."[15] As the Court may recall, "Angel," or "Prayer Angels," is the name Anna Rhee, another early Bratz vendor, testified was

---

9 Id.

10 See SABW-L 00001 - SABW-L 00012, Buchakjian Dec., Exh. 7.

11 Letter from Susan Wines to Larry McFarland, dated June 1, 2007, Buchakjian Dec., Exh 8.

12 Letter from Larry McFarland to Susan Wines, dated June 22, 2007, Buchakjian Dec., Exh 9; Letter from Susan Wines to Larry McFarland, dated June 25, 2007, Buchakjian Dec., Exh. 10; Letter from Larry McFarland to Susan Wines, dated June 28, 2007, Buchakjian Dec., Exh 11.

13 Declaration of Jennifer Lewis, dated November 21, 2007 and filed concurrently herewith ("Lewis Dec."), ¶ 2.

14 Lewis Dec., ¶ 2.

15 See KMW-L 00077.01, Buchakjian Dec., Exh. 12; SABW-L 00001 - SABW-L 00012, Buchakjian Dec., Exh. 7; Leahy Subpoena, Buchakjian Dec., Exh. 6.

the "code name" for Bratz she was told to use when she painted Bratz doll heads in June 2000.[16] Leahy also redacted a reference to a phone number and an extension for Carter Bryant from an entry made prior to September 29, 2000 -- when Carter Bryant was still employed by Mattel -- even though the subpoena clearly called for all documents referring or relating to Carter Bryant prior to January 1, 2001.[17] Leahy also redacted references in her planner to Anna Rhee, Carter Bryant and Mercedeh Ward, an MGA employee, despite the fact that documents referring or relating to communications between Carter Bryant, Anna Rhee and/or MGA were specifically requested in the subpoena.[18] She did all of this without advising Mattel she was withholding such information. To the contrary, at a meet and confer on May 2, 2005, counsel for Leahy agreed that she would produce documents dated prior to January 1, 2001 responsive to Mattel's request for documents referring or relating to Angel, Carter Bryant and Anna Rhee.[19]

<u>The Parties' Meet And Confer Regarding Ms. Leahy's Planner</u>. After Mattel's counsel inspected Leahy's planner, Leahy made a supplemental production of her planner to Mattel.[20] However, even in that supplemental production, the vast majority of the planner was still redacted.[21] The produced pages consisted of a subset of the planner's pages from the relevant time period, and the pages that were produced were still heavily redacted, making it impossible to fully analyze the

---

[16] Deposition Tr. of Anna Rhee , dated February 3, 2005 at 120:24-122:8; 141:11-145:17, Buchakjian Dec., Exh. 13.

[17] See KMW-L 00078.01, Buchakjian Dec., Exh. 12; SABW-L 0001, Buchakjian Dec., Exh. 7; Leahy Subpoena, Buchakjian Dec., Exh. 6.

[18] See KMW-L 00083.01, 00089.01 and 00090.01, Buchakjian Dec., Exh. 15; SABW-L 0001 - SABW-L 00012, Buchakjian Dec., Exh. 7; Leahy Subpoena, Buchakjian Dec., Exh. 6.

[19] Meet and Confer Tr., dated May 2, 2005, at 7:13-8:14, Buchakjian Dec., Exh. 16.

[20] See KMW-L 00077.01-000105.01, Buchakjian Dec., Exh. 12.

planner or present it to the jury in the future.[22]  Mattel thus again asked Leahy to
produce a complete copy of the planner and make it available for photographing
and, if necessary, expert examination.[23]  Leahy refused.[24]

On November 15, 2007, after the expiration of the stay sought by MGA
as a result of substitution of counsel, Mattel again requested that Leahy produce
unredacted copies of all of the documents she had produced.[25]  Leahy responded on
November 21, 2007 and again refused to produce unredacted copies of her day
planner and the other redacted documents she had produced.[26]  On November 28,
2007, Mattel explained again why it is entitled to unredacted copies of all the
documents Leahy had produced including because Leahy did not assert that the
redactions were made on the basis of privilege, and redactions on any other basis are
improper given the protective order in place in this case.[27]  Mattel also served a
subpoena on Leahy requesting that she produce her original planner, among other
original documents, at her deposition on December 12, 2007.[28]

---

[21]  Id.
[22]  Id.
[23]  Letter from Proctor to McFarland, dated November 7, 2007, Buchakjian Dec.,
Exh. 17; Letter from Proctor to McFarland, dated November 9, 2007, Buchakjian
Dec., Exh. 18.
[24]  Letter from McFarland to Proctor, dated November 14, 2007, Buchakjian
Dec., Exh. 19; Letter from Larry McFarland to Dylan Proctor, dated November 21,
2007, Buchakjian Dec., Exh. 21
[25]  Letter from Dylan Proctor to Larry McFarland, dated November 15, 2007,
Buchakjian Dec., Exh. 20.
[26]  Buchakjian Dec., Exh. 21.
[27]  Letter from Dylan Proctor to Larry McFarland, dated November 28, 2007,
Buchakjian Dec., Exh. 22.
[28]  Mattel, Inc.'s Subpoena to Margaret Leahy, dated November 28, 2007,
Buchakjian Dec., Exh. 23; see also Notice of Subpoena Issued to Margaret Leahy,
dated November 28, 2007, Buchakjian Dec., Exh. 24.

Leahy Agrees to Produce All Of The Documents She Previously Redacted In Un-redacted Form, Except For Her Planner. On December 3, 2007, Leahy agreed to produce unredacted copies of all of the documents that she had previously produced, other than her planner.[29] Leahy produced unredacted copies of all of the documents on December 6, 2007, but did not produce an unredacted copy of her planner at that time.[30]

Leahy's Deposition. Ms. Leahy, who is represented by MGA's counsel, Larry McFarland, followed defendants' now-familiar playbook to obstruct discovery, including by first delaying her deposition with promises to appear (while simultaneously claiming unavailability for lengthy periods) and then canceling as the promised dates approached. Indeed, as the Court is aware, every one of defendants' key witnesses have followed this pattern and ultimately refused to sit for deposition until ordered to do so, sometimes multiple times.[31]

Mattel actively sought to schedule Ms. Leahy's deposition since early June – for over six months.[32] Mattel offered to take the deposition at any time in July, but her counsel claimed that she was unavailable until September.[33] When the agreed time-range approached, Leahy failed to appear. After still more delays, and

---

[29] Letter from Larry McFarland to Dylan Proctor, dated December 3, 2007, Buchakjian Dec., Exh. 25.

[30] Letter from Larry McFarland to Dylan Proctor, dated December 5, 2007, Buchakjian Dec., Exh. 26.

[31] This has included named defendants Carter Bryant, Isaac Larian and MGA as well as Paula Garcia, MGA's Bratz project manager from the start. Bryant and Larian would not appear until they were *twice* ordered by the Court and, in the case of Larian, until sanctions were imposed.

[32] Letter from Susan Wines to Larry McFarland, dated June 7, 2007, Buchakjian Dec., Exh. 27.

[33] Buchakjian Dec., ¶ 30.

shortly before MGA applied for a stay because of MGA's substitution of counsel, Leahy proposed, and Mattel confirmed, dates in late October for Ms. Leahy.[34]

While seeking a stay of this case, MGA assured the Court that "MGA certainly did not entertain the substitution of counsel for any purpose of delay or to cause prejudice to anybody."[35] Contrary to that promise however, Ms. Leahy cancelled her scheduled deposition — blaming it on the stay.[36] Mattel was then forced to ask repeatedly for replacement dates and, even then, Ms. Leahy flatly refused to appear for another two months.[37] And, equally troubling, Ms. Leahy refused to commit in any binding way to actually appear even on those belated dates.[38] Only after Mattel was forced to move ex parte to compel her deposition did Mr. McFarland represent to the Court that Ms. Leahy would actually appear for deposition on December 12, 2007.[39]

On December 11, 2007, the day before Ms. Leahy's deposition, Ms. Leahy produced some 175 pages of documents consisting of unidentified

---

[34] Letter from Larry McFarland to Susan Wines, dated September 28, 2007, Buchakjian Dec., Exh. 29; Letter from Michael Zeller to Larry McFarland, dated October 1, 2007, Buchakjian Dec., Exh. 30.

[35] Transcript of the October 15, 2007 Status Conference, at 12:3-5, Buchakjian Dec. Exh. 31.

[36] Letter from Larry McFarland to Michael Zeller and Dylan Proctor, dated October 16, 2007, Buchakjian Dec., Exh. 32.

[37] Letter from Michael Zeller to Larry McFarland, dated October 16, 2007, Buchakjian Dec., Exh. 33; Letter from Michael Zeller to Larry McFarland, dated October 24, 2007, Buchakjian Dec., Exh. 34; Letter from Dylan Proctor to Larry McFarland dated November 2, 2007, Buchakjian Dec., Exh. 35; Letter from Larry McFarland to Dylan Proctor, dated November 12, 2007, Buchakjian Dec., Exh. 36.

[38] Letter from Dylan Proctor to Larry McFarland, dated November 15, 2007, Buchakjian Dec., Exh. 37.

[39] Transcript of Proceedings regarding Mattel's *Ex Parte* Application to (1) Compel Depositions of Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow, or in the Alternative, Modify the Scheduling Order, dated November 20, 2007, Buchakjian Dec. Exh. 38, at 15:1-8.

photographs of doll casts, molds and sculpts of a variety of products, including Bratz and Prayer Angels.[40]

Mattel began the deposition of Ms. Leahy on December 12, 2007, nearly 45 minutes after the scheduled time because of defendants' delays. Throughout the deposition, counsel for Ms. Leahy, MGA and Bryant created numerous delays. Counsel hindered Ms. Leahy's deposition by taking frequent breaks, improperly coaching Ms. Leahy, and walking out of the deposition in mid-question.[41] Counsel for MGA repeatedly interrupted the questioning by demanding that in-house counsel of MGA, Craig Holden, be brought into the deposition and requesting that questions be re-read for Mr. Holden.[42] Similarly, counsel for MGA purposefully interrupted questioning by demanding that in-house counsel for Mattel, Michael Moore, be shuffled in and out of the deposition.[43] The deposition also was slow-going because Ms. Leahy regularly asked for questions to be repeated or rephrased, often on cue from her counsel.[44]

Additionally, counsel obstructed the deposition by improperly instructing Ms. Leahy not to answer questions that did not seek privileged information.[45] These questions included, for example, "Have you spoken with anyone at Mattel about any lawsuit or litigation with MGA or Carter Bryant?" and "Have you ever told anyone else any other reason you left Mattel?"[46]

---

[40] Buchakjian Dec., ¶ 41; Letter from Larry McFarland to Dylan Proctor, dated December 11, 2007, Buchakjian Dec., Exh. 39.

[41] See infra notes 83-109, Buchakjian Dec. Exh. 5.

[42] Leahy Depo at 69:11-70:9; 97:21-98:8; 107:11-108:9; 191:13-17, Buchakjian Dec., Exh. 5.

[43] Leahy Depo at 69:11-23; 97:14-98:16; 120:14-20; 136:19-23, Buchakjian Dec., Exh. 5.

[44] See infra notes 83-109, Buchakjian Dec. Exh. 5.

[45] Leahy Depo at 242:12-243:9, 255:14-256:10, 256:11-21, Buchakjian Dec., Exh. 5.

[46] Leahy Depo at 16:25-17:6; 93:4-8, Buchakjian Dec., Exh. 5.

Even though for months counsel for Leahy refused to produce Ms. Leahy's original calendar in its unredacted form, 4 hours into Ms. Leahy's deposition counsel conceded that Ms. Leahy's original planner must be produced. Counsel for Leahy only did so after two lengthy narratives on the record, thereby further hindering Ms. Leahy's deposition and wasting time.[47] Due to this delay, Mattel did not have enough time to obtain color copies of the unredacted calendar in time to review its contents and to question Ms. Leahy about them. The belatedly produced documents contain new information on the topics about which Mattel is entitled to question Ms. Leahy. For example, Leahy redacted Mattel-related material, such as entries pertaining to a Mattel employee (Chris Sesto) in the model shop whom she had conversations with during a time which she was working on Bratz and apparently for the purpose of seeking assistance on Bratz.[48] Further, Ms. Leahy redacted information which bears on the dating of her entries in the planner.[49] This information pertains directly to the timing and development of Bratz, and defendant's use of Mattel resources for Bratz.

<u>The Parties' Meet And Confer Regarding Ms. Leahy's Continued Deposition</u>. On December 18, 2007, Mattel requested that MGA schedule additional dates to continue Ms. Leahy's deposition and that Ms. Leahy provide full and complete answers to the questions she was instructed not to answer when her deposition resumed.[50] During the parties' meet and confer on January 9, 2008, and thereafter, however, counsel represented that he would not agree to additional

---

[47] Leahy Depo. at 168:4-169:16, Buchakjian Dec. Exh. 5.

[48] Leahy Depo. at 67:15-68:7, Buchakjian Dec. Exh. 5.

[49] Margaret Hatch Leahy's unredacted calendar, Buchakjian Dec. Exh. 40, at 1137-4 - 1137-14.

[50] Letter from Dylan Proctor to Larry McFarland, dated December 18, 2007, Buchakjian Dec., Exh. 41.

testimony.[51] The parties were also unable to reach agreement regarding counsel's improper instructions not to answer certain questions during Ms. Leahy's deposition.[52]

## Argument

### I. THE DISCOVERY MASTER SHOULD COMPEL THE PRODUCTION OF MS. LEAHY FOR ADDITIONAL DEPOSITION TIME BEFORE THE JANUARY 28, 2008 DISCOVERY CUTOFF

#### A. Defendants Have Not Given Mattel Sufficient Time to Depose Ms. Leahy

Ms. Leahy is a key witness. Not only has she been identified by MGA as "possess[ing] information relevant to the conception, creation, design and development of "Bratz,"[53] she also is the person who created the appearance of the Bratz head.[54] To date, defendants have only allowed Mattel to depose Ms. Leahy for a total of approximately 7 hours and 5 minutes.[55] This is simply not enough time for Mattel to cover her extensive personal knowledge regarding Bratz.

##### 1. Ms. Leahy Is A Key Percipient Witness

Ms. Leahy is one of the most important witnesses in the Bryant case. Her importance is evidenced by her own testimony -- she claims that she (and not Bryant) is the creator of the appearance of Bratz.[56] Ms. Leahy has extensive personal knowledge regarding topics that are integral to this litigation, including the

---

51 Buchakjian Dec. ¶ 43.

52 Id.

53 MGA's Rule 26(a) Disclosures, dated January 6, 2005 ¶¶ 4-6, Buchakjian Dec. Exh. 42.

54 Leahy Depo. at 275:2-10, Buchakjian Dec., Exh. 5.

55 Leahy Depo at 311:22-312:1, Buchakjian Dec., Exh. 5.

56 Leahy Depo at 275:2-10, Buchakjian Dec., Exh. 5.

timing and origins of Bratz, Bryant's involvement with MGA, Bryant's work for MGA while employed by Mattel, the development of Bratz, and the use of Mattel resources for Bratz.[57] Ms. Leahy has been identified by MGA and others as the sculptor of Bratz since the product's inception at MGA.[58]

Leahy was a Mattel employee until September 2000.[59] While Bryant was still employed by Mattel, Bryant solicited Leahy to sculpt Bratz dolls and introduced her to MGA.[60] Ms. Leahy attended numerous meetings with Bryant and Garcia to discuss Bratz doll sculptures during a time that Bryant was still employed at Mattel.[61] Leahy created the first Bratz sculpt and, according to Paula Garcia, was the sole sculptor on Bratz in the key time period of 2000.[62] Ms. Leahy's testimony confirmed that the first Bratz sculpt was completed by September 29, 2000 — while Bryant was a Mattel employee.[63] Leahy also worked on Bratz samples exhibited at the Hong Kong Toy Fair in January 2001 and the New York Toy Fair in February 2001.[64]

The extent of Ms. Leahy's knowledge is demonstrated by the critical facts which she revealed for the first time in this case at deposition. For example,

---

57 See Buchakjian Dec. Exh. 42; see e.g., Leahy Depo. at, Buchakjian Dec. Exh. 5, 161:5-162:2, 185:11-190:7.

58 See e.g. Deposition of Isaac Larian, dated July 18, 2006 ("Larian Depo.") at 112:5 -113:25, Buchakjian Dec., Exh. 43.

59 Margaret Leahy's MGA Application For Employment ("Leahy Employment Application"), dated February 14, 2005, Buchakjian Dec., Exh. 1.

60 Deposition Tr. of Carter Bryant ("Bryant Depo."), Vol. I, dated November 4, 2004 at 68:22-71:13, Buchakjian Dec. Exh. 2.

61 Bryant Depo. at 78:11-81:8, Buchakjian Dec., Exh. 2.

62 Deposition Tr. of Paula Garcia ("Garcia Depo."), Vol. I, dated May 24, 2007 at 255:1-17, Buchakjian Dec. Exh. 3; Garcia Depo., Vol. II, dated May 25, 2007 at 629:6-18, Buchakjian Dec. Exh. 4.

63 Leahy Depo. at 161:5-162:24, Buchakjian Dec., Exh. 5.

64 Garcia Depo., Vol. II, dated May 25, 2007 at 481:20-482:1; 489:5-11, Buchakjian Dec. Exh. 4.

Ms. Leahy revealed for the first time that a company called Gentle Giant, a vendor that Ms. Leahy met through her Mattel employment, created the first Bratz mold and did a silicone rubber mold of the first Bratz sculpt in September 2000.[65] Additionally, Gentle Giant did digital scans of the Bratz head after they did the first sculpt.[66] Those scans have not been produced in this case, nor has MGA or any other party ever identified Gentle Giant as a party which may have discoverable information relevant to this case.[67] In addition, Ms. Leahy admitted for the first time at her deposition last month that she worked for Mattel competitors while working for Mattel, in knowing violation of her employment agreements.[68]

Leahy's testimony also revealed that she worked on DIVA STARZ and the Mini DIVA STARZ while employed by Mattel.[69] Documents and designs for Mattel's DIVA STARZ project in late 1999 and in 2000 that pre-date the release of Bratz show that DIVA STARZ dolls share certain common elements with Bratz dolls. For example, names internally considered at Mattel in late 1999 and through 2000 for the DIVA STARZ project -- including "Brats" -- tend to show that Bryant designed Bratz while at Mattel.[70] Ms. Leahy's exposure to aspects of the DIVA

---

[65] Leahy Depo. at 161:5-17, 191:2-25, 224:21-24, Buchakjian Dec., Exh. 5.

[66] Leahy Depo. at 191:21-192:6; 197:3-10, Buchakjian Dec., Exh. 5.

[67] Gentle Giant is not identified on MGA's Supplemental Disclosures Under Rule 26(a)(1), dated September 21, 2007. Nor is it disclosed on MGA's or Bryant's interrogatories. See e.g., MGA's Third Supplemental Responses to Mattel's Second Set of Interrogatories, dated August 21, 2007, Buchakjian Dec. Exh. 50 at 3-6; Carter Bryant's Supplemental Responses to Mattel, Inc.'s Revised Third Set of Interrogatories, dated December 17, 2007, Buchakjian Dec. Exh. 28 at 12-22.

[68] Leahy Depo. at 180:1-181:18, Buchakjian Dec. Exh. 5.

[69] Leahy Depo. at 48:10-24, Buchakjian Dec. Exh. 5.

[70] Names that were internally considered at Mattel during that time period included "Brats" and variations thereon, "Brat Pack," "Boyz" and "Petz." Ms. Garcia acknowledged that "Brats" spelled with an "s" was subsequently considered as a name for the "Bratz" dolls. Deposition of Paula Garcia, dated October 10, 2007 ("Garcia Depo.), Buchakjian Dec. Exh. 48, at 1080:22-1081:9.

STARZ projects while she was a Mattel employee, coupled with the fact that Leahy worked on the Bratz sculpt while she and Bryant were Mattel employees, tends to establish that Bryant created Bratz works and conceived of the name "Bratz" while employed by Mattel and not in 1998 as Bryant has claimed. Given the extent of Leahy's knowledge regarding the timing and development of Bratz and the use of Mattel resources for Bratz, and defense counsel's obstructionism discussed below, Mattel did not have enough time to elicit details regarding these clearly relevant topics.

There are also several plainly relevant topics about which Mattel has not been able to question Leahy at all because of the refusal to afford sufficient time for deposition. These include: Leahy's use of Mattel resources on Bratz, payments Leahy has received from MGA, her work on Prayer Angels, and her work on later "generations" of Bratz dolls that form the basis of MGA's own claims. Further there remain extensive tangible items Ms Leahy possesses and which Mattel was not able to question her on.[71] Eliciting sufficient testimony from Ms. Leahy on these tangible items requires additional time. Indeed, Mattel did not even have enough time to mark and authenticate all of these tangible items and their corresponding photographs as exhibits during Ms. Leahy's deposition, much less depose her on all the items and their photographs.

Ms. Leahy is one of the most important percipient witnesses in this litigation. Given her extensive personal knowledge on the origins of Bratz and the information that came forth only during her deposition, Mattel is entitled to more time to complete Ms. Leahy's deposition.

---

71 Letter from Larry McFarland to Dylan Proctor, dated December 11, 2007, Buchakjian Dec. Exh. 39.

**B. Counsel Hindered Mattel's Deposition Of Ms. Leahy By Engaging In Delay Tactics And Other Forms Of Obstructionism**

**1. Counsel Strategically Withheld Relevant Documents Without Justification**

On December 11, 2007, the day before Ms. Leahy's deposition, Ms. Leahy produced some 175 pages of documents consisting of unidentified photographs of doll casts, molds and sculpts of a variety of products, including Bratz and Prayer Angels.[72]

Furthermore, counsel for Leahy refused to produce Leahy's unredacted calendar until more than halfway through her deposition. This is so even though she agreed to produce unredacted copies of all other previously-redacted documents she had produced and despite the fact that Mattel had been asking for an unredacted copy of Ms. Leahy's planner since at least November 7, 2007.[73] Due to this delay, Mattel did not have enough time to obtain color copies of the unredacted calendar in time to review its contents or question Ms. Leahy about them. The belatedly produced calendar contains new information about which Mattel is entitled to question Ms. Leahy. For example, Leahy redacted Mattel-related material, such as entries pertaining to a Mattel employee (Chris Sesto) in the model shop whom she had conversations with during a time which she was working on Bratz.[74] Further,

---

[72] Buchakjian Dec., ¶ 41; Letter from Larry McFarland to Dylan Proctor, dated December 11, 2007, Buchakjian Dec., Exh. 39.

[73] Leahy Depo at 168:4-169:16, Buchakjian Dec., Exh. 5; Letter from Larry McFarland to Dylan Proctor, dated December 5, 2007, Buchakjian Dec., Exh. 26; Letter from Dylan Proctor to Larry McFarland, dated November 7, 2007, Buchakjian Dec., Exh. 17.

[74] Leahy Depo. at 67:15-68:7, Buchakjian Dec. Exh. 5.

Ms. Leahy redacted information which bears on the dating of her entries in the planner.[75]

As a result of counsel's tactical decision to delay the production of relevant documents, Mattel was not able to complete Ms. Leahy's deposition on the photographs of tangible items Ms. Leahy provided the night before her deposition, and the calendar which was provided halfway through the deposition. Mattel is entitled to continue Ms. Leahy's deposition to question her on these documents.

**2. MGA's Counsel Created Numerous Delays During the Deposition**

Counsel obstructed the deposition in numerous ways, thereby wasting time. For example, counsel for MGA constantly interrupted Mattel's questioning of Leahy by demanding that in-house counsel for MGA be brought into the deposition and requesting that questions be re-read for him[76] or demanding that in-house counsel for Mattel be removed from the deposition.[77]

Further impeding deposition, Ms. Leahy routinely followed counsel's lead by asking for even simple questions to be rephrased whenever counsel objected, thus requiring additional questioning on matters on which Mattel had already questioned her.[78] Ms. Leahy and her counsel also frequently asked for questions to be read back, wasting time.[79]

---

[75] See e.g., Margaret Hatch Leahy's unredacted calendar, Buchakjian Dec. Exh. 40 at 1137-4 - 1137-14.

[76] Leahy Depo at 69:11-70:9; 80:10-15; 97:21-98:8; 101:14-102:4; 107:11-108:9; 120:18-20; 125:7-9; 191:13-17, Buchakjian Dec., Exh. 5.

[77] Leahy Depo at 69:11-23; 97:14-98:17; 120:14-20; 136:19-23, Buchakjian Dec., Exh. 5.

[78] Leahy Depo at 39:10-17, 48:25-49:5, 275:15-276:13; 279:4-280:9;301:9-24; 304:15-305:8, Buchakjian Dec., Exh. 5. at 67:15-72:11.

[79] See infra notes 83-109, Buchakjian Dec. Exh. 5

Leahy's, MGA's and Bryant's counsel also hindered Ms. Leahy's deposition by taking frequent breaks, improperly coaching Ms. Leahy and even walking out of the deposition mid-question.[80] For example, Ms. Leahy and her counsel requested and took repeated breaks during the deposition, not including the lunch break.[81] They also walked out numerous times while a question was pending.[82] Moreover, throughout the deposition, Leahy's counsel repeatedly engaged in speaking, suggestive objections — sometimes even interrupting the witnesses answer mid-stream. Leahy then repeated her counsel's suggestions virtually verbatim. The following examples are illustrative of counsel's improper coaching and delay tactics.

[80] See infra notes 81, & 83-109, Buchakjian Dec. Exh. 5.

[81] Leahy Depo at 55:13; 119:22; 145:23; 169:21; 204:4; 241:9; 263:12; 290:6, Buchakjian Dec., Exh. 5.

Leahy Depo. at 34:23-35:9.[83]

Leahy Depo. at 67:25-66:7.[84]

---

[82] See e.g., Leahy Depo. at 119:4-120:4, Buchakjian Dec. Exh. 5; See also infra notes 83-109, Buchakjian Dec. Exh. 5.

[83] Buchakjian Dec. Exh. 5.

[84] Buchakjian Dec. Exh. 5.



Leahy Depo. at 71:15-72:11.[85]

85 Buchakjian Dec. Exh. 5.

07209/2371600.1

-19-

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY



Leahy Depo. at 70:12-71:14.[86]

[86] Buchakjian Dec. Exh. 5.



Leahy Depo. at 82:15-83:13.[87]

[87] Buchakjian Dec. Exh. 5.

Leahy Depo. at 103:19-104:3.[88]

Leahy Depo. at 119:4-120:4.[89]

[88] Buchakjian Dec. Exh. 5.

07209/2371600.1

-22-

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

Leahy Depo. at 125:5-10.[90]

Leahy Depo. at 136:19-137:8.[91]

[89] Buchakjian Dec. Exh. 5.
[90] Buchakjian Dec. Exh. 5.
[91] Buchakjian Dec. Exh. 5.





Leahy Depo. at 156:12-21.[92]

Leahy Depo. at 157:7-15.[93]

---

[92] Buchakjian Dec. Exh. 5.



Leahy Depo. at 187:11-20.[94]

[93] Buchakjian Dec. Exh. 5.

07209/2371600.1

-25-

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY



[94] Buchakjian Dec. Exh. 5.

Leahy Depo. at 203:12-205:2.[95]

Leahy Depo. at 210:12-20.[96]

[95] Buchakjian Dec. Exh. 5.



Leahy Depo. at 219-220:6.[97]

Leahy Depo. at 264:20-265:7.[98]

---

[96] Buchakjian Dec. Exh. 5.

Leahy Depo. at 269:23-270:5.[99]

[97] Buchakjian Dec. Exh. 5.
[98] Buchakjian Dec. Exh. 5.
[99] Buchakjian Dec. Exh. 5.

Leahy Depo. at 272:23-273:13.[100]

Leahy Depo. at 275:15-24.[101]

[100] Buchakjian Dec. Exh. 5.

Leahy Depo. at 279:16-280:9.[102]

[101] Buchakjian Dec. Exh. 5.

Leahy Depo. at 280:17-281:12.[103]

Leahy Depo. at 282:12-17.[104]

102 Buchakjian Dec. Exh. 5.
103 Buchakjian Dec. Exh. 5.
104 Buchakjian Dec. Exh. 5.

07209/2371600.1

-32-

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

[redacted]

Leahy Depo. at 292:13-22.[105]

[redacted]

Leahy Depo. at 300:5-16.[106]

[redacted]

---

[105] Buchakjian Dec. Exh. 5.



106 Buchakjian Dec. Exh. 5.



Leahy Depo. at 301:21-303:18.[107]

[107] Buchakjian Dec. Exh. 5.

07209/2371600.1
-36-
MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY



Leahy Depo. at 307:4-308:10.[108]

[108] Buchakjian Dec. Exh. 5.



Leahy Depo. at 309:4-310:2.[109]

The Federal Rules of Civil Procedure require that "[a]ny objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner." Fed. R. Civ. P. 30(d)(1). It was improper for Leahy's counsel to use speaking objections to coach the deponent, including through his interruptions of Leahy's answers mid-sentence to attempt to suggest the right answer or warn her of a potentially harmful answer. Hall v. Cliffton Precision, A Division of Litton Systems, Inc., 150 F.R.D. 525, 530 (E.D. Pa. 1993); Damaj v. Farmers Insurance Co., 164 F.R.D. 559, 560 (N.D. Okl. 1995) (frequent and suggestive objections by opposing counsel can, and often do, completely frustrate a deposition's purpose).

Further, it was improper for Leahy's counsel to take her out of the deposition with a question pending. As the court observed in Johnson v. Wayne Manor Apartments, 152 F.R.D. 56, 59 (E.D. Pa. 1993),

> When . . . witness' attorney unilaterally adjourns a deposition to confer regarding the witnesses' testimony, the deposing party is denied the opportunity to obtain the witness' knowledge or opinion, but "instead what [the

---

[109] Buchakjian Dec. Exh. 5.

deposing] counsel has effectively 'discovered' is the opinion and concomitant testimony of the [witness'] attorney."

Despite the fact that Leahy has direct, relevant and critical information to which Mattel is entitled, as seen above, Leahy's counsel deliberately halted her deposition whenever her testimony appeared to be potentially damaging. Rather than allow Mattel to discovery such information, Leahy's counsel interrupted the deposition through coaching, lengthy speaking objections and verbal histrionics. Through lengthy speaking objections, interruptions of Leahy in the middle of her answers, taking Leahy out of the room in the middle of deposition, and unilaterally terminating the deposition, Leahy's counsel prevented a fair examination and unreasonably delayed the deposition. MGA's and Bryant's counsel engaged in similar, improper conduct that wasted considerable time.

Additionally, counsel for Leahy, MGA and Bryant interrupted the deposition by engaging in improper colloquy and walking out of the deposition with the witness in mid-question.[110] For example, Mr. McFarland made a lengthy colloquy regarding his version of Mattel's attempts to obtain Ms. Leahy's unredacted calendar.[111] Mr. McFarland also made a speech regarding his decision to make Leahy's planner available, even though all he needed to say was that the calendar would be produced.[112] Leahy's counsel's interruptions in the middle of Leahy's answers and his litany of narrative, suggestive objections directly contradict the requirement of brief objections and uninterrupted answers necessary for depositions to serve their fact-finding purpose. In short, consistent with their overall strategy to

---

[110] Leahy Depo. at 10:6-11:13; 32:18-34:14, 74:20-76:7; 123:16-124:19; 168:6-169:19; 170:1-11, 175:18-176:9; 214:19-219:3; 261:17-263:6, 263:8-14, 264:20-265:7; 299:23-301:4, 309:4-23, Buchakjian Dec., Exh. 5.

[111] Leahy Depo at 168:4-169:16, Buchakjian Dec., Exh. 5.

[112] Leahy Depo. at 168:4-169:16, Buchakjian Dec., Exh. 5.

obstruct and delay discovery, counsel prevented a fair examination of Leahy, causing unreasonable delay and abusing the discovery process.

Mattel is entitled to additional deposition time to further examine Ms. Leahy for these reasons as well.

## II. THE COURT SHOULD COMPEL MS. LEAHY TO PROVIDE ANSWERS TO QUESTIONS COUNSEL IMPROPERLY INSTRUCTED HER NOT TO ANSWER

The attorney-client privilege protects from discovery only the substance of "confidential communications" between a client and his attorney. Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992); McKay v. C.I.R., 886 F.2d 1237, 1238 (9th Cir. 1989). Leahy's counsel instructed her not to answer questions that did not call for the substance of attorney-client communications. Instead, they merely called for disclosure of facts and information known to Leahy. These questions did not require anything more than a simple "yes" or "no" answer. The following excerpts are illustrative:

Q

Leahy Depo. at 242:12-243:9.[113]

Leahy Depo. at 255:14-256:10.[114]

---

[113] Buchakjian Dec. Exh. 5.



Leahy Depo. at 256:11-21.[115]

The Discovery Master has already ruled on motions that both Bryant and Mattel brought that a witness' own understanding of facts, events and information known to a witness are discoverable.[116] That is because the mere fact

---

114 Buchakjian Dec. Exh. 5.

115 Buchakjian Dec. Exh. 5.

116 On March 28, 2007, Bryant moved to overrule instructions not to disclose facts or understandings learned from communications with counsel, given at the deposition of Alan Kaye. The Discovery Master granted Bryant's motion to compel in substantial part and overruled Mattel's instructions not to disclose facts or understandings learned from communications with counsel, holding that such facts and understandings are not privileged. See Bryant's Separate Statement in Support of the Kaye Motion, Instruction Nos. 15, 17, Buchakjian Dec. Exh. 44; May 4, 2007 Order Granting in Part Bryant's Motion to Overrule Instructions Not to Answer During the Deposition of Alan Kaye ("May 4 Kaye Order"), Buchakjian Dec. Exh. 45, ¶ 1 & Attachment A; Declaration of B. Dylan Proctor dated August 1, 2007 ("08/01/07 Proctor Dec.") ¶ 22, Exhs. 22, 25, Buchakjian Dec. Exh. 46. Bryant's counsel argued in his pleadings regarding the Kaye deposition that "Mattels' counsel

(footnote continued)

that a witness reveals facts to a lawyer or learns facts from a lawyer does not make the facts themselves privileged. "[I]t is only the communications that are subject to attorney-client privilege, and not the foundational facts concerning the communication, or the underlying, independent facts." AMCO Ins. Co. v. Madera Quality Nut LLC, 2006 WL 931437, at *18 (E.D. Cal. 2006); see also Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995) ("Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product"); Garcia v. City of El Centro, 214 F.R.D. 587, 591 (S.D. Cal. 2003) (same); Nutmeg Ins. Co. v. Atwell, Vogel & Sterling A Div. of Equifax Services, Inc., 120 F.R.D. 504, 509 (W.D. La. 1988) ("The courts have consistently held that the work-product concept furnishes no shield against discovery, by interrogatories or by deposition, *of the facts* that the adverse party's lawyer has learned, or the persons from whom he has learned such facts. . .") (citing 8 Wright & Miller, Fed. Practice and Procedure § 2023 (1970) (emphasis in the original)).

---

repeatedly relied upon improper privilege instructions to shield the underlying ***facts*** from discovery, even where no attorney-client communications were involved. . . the mere fact that a witness reveals facts to a lawyer or learns facts from a lawyer does not make such facts privileged." See, e.g., Kaye Motion at 17:10-16 (emphasis in the original), Buchakjian Dec. Exh. 44; 08/01/07 Proctor Dec. Exh. 21, Buchakjian Dec. Exh. 46. The Discovery Master agreed with Bryant's arguments, overruling Mattel's counsel's instructions not to disclose information learned from counsel. See May 4 Kaye Order, Buchakjian Dec. Exh. 44; 08/01/07 Proctor Dec. Exh. 25, Buchakjian Dec. Exh. 46; see also Order Granting Mattel's Motion for an Extension of Time to Depose Paula Garcia in Her Individual Capacity and as a 30(b)(6) Designee, dated August 14, 2007, Buchakjian Dec. Exh. 47, at 12:20-22 (holding that the attorney-client privilege protection "does not extend to the facts underlying privileged communications.").

Questions about whether or not the witness was ever told by anyone that she needed to preserve documents that relate to the litigation or whether she understands that she has an obligation to preserve documents relating to the litigation also do not invade the attorney-client privilege and are not protected by the work-product doctrine. Nor do questions seeking information as to whether Mr. Contopolis was an attorney that MGA or Leahy found. Such facts are not privileged. Leahy bears the burden of supporting her privilege assertions. U.S. v. Munoz, 233 F.3d 1117, 1128 (9th Cir. 2000). Because she cannot do so, the improper instructions set forth should be overruled.

## III. THE DISCOVERY MASTER SHOULD IMPOSE SANCTIONS

Sanctions are justified because Ms. Leahy, MGA, Carter Bryant and their counsel have engaged in a pattern of obstructionism: Counsel first delayed producing Ms. Leahy for months, and then only produced her after Mattel was forced to move ex parte. Counsel then delayed producing Ms. Leahy's unredacted calendar until the day of her deposition. Moreover, when Mattel was finally able to depose Ms. Leahy, counsel obstructed the deposition in numerous ways, including through lengthy speaking objections and colloquy, as discussed above, thereby wasting time. Leahy's, MGA's and Bryant's counsel also hindered Ms. Leahy's deposition by taking frequent breaks, improperly coaching Ms. Leahy and even walking out of the deposition mid-question. Counsel has impeded Mattel's ability to obtain Ms. Leahy's full and complete testimony on matters that are clearly relevant.

The Court has broad authority to sanction counsel for his conduct. Fed. R. Civ. P. 37(a)(4). See also United States v. Westinghouse Electric Corp., 648 F.2d 642, 651 (9th Cir. 1981) ("The choice of discovery sanctions is left to the discretion of the district court."); accord Grimes v. City and County of San Francisco, 951 F.2d 236, 240-241 (9th Cir. 1991) (courts "may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even.").

Independently, sanctions may be imposed under 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under this section are appropriate "for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." RTC v. Dabney, 73 F.3d 262, 265 (10th Cir. 1995) (citing Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987)).

Under these standards, the Court should impose monetary sanctions on Ms. Leahy, MGA, Carter Bryant, and their counsel in the reasonable sum of $4,000, as partial compensation for the attorneys' fees and costs incurred by Mattel relating as a result of discovery abuse and the need to file this motion.

**Conclusion**

For the foregoing reasons, the Court should allow Mattel an additional nine hours of deposition time with Ms. Leahy on or before February 28, 2008. The Court should also compel Ms. Leahy to answer those questions counsel improperly instructed her not to answer when her deposition resumes.

DATED: January 28, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By ________________________
Timothy L. Alger
Attorneys for Mattel, Inc.