# EXHIBIT 7

Case 2:04-cv-09049-SGL-RNB     Document 1504     Filed 01/07/2008     Page 1 of 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                    Date: January 7, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.
                  AND CONSOLIDATED ACTIONS
=========================================================================
=
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes                          Theresa Lanza
           Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT: **Christa Martine Anderson**  **John B. Quinn and Michael T. Zeller**

ATTORNEYS PRESENT FOR MGA:            ATTORNEY PRESENT FOR CARLOS
**Thomas J. Nolan**                   GUSTAVO MACHADO GOMEZ:
**Carl A. Roth**                      **Mark E. Overland**
**Anna Park**
                                      ATTORNEY PRESENT FOR NON-PARTY
ATTORNEY PRESENT FOR NON-             STERN & GOLDBERG: **Kien C. Tiet**
PARTIES ANA ELISE CLOONAN,
MARGARET HATCH-LEHY, AND              ATTORNEY PRESENT FOR NON-PARTY
VERONICA MARLOW: **Larry W.**         KAYE SCHOLER, LLP: **Bryant S. Delgadillo**
**McFarland**


PROCEEDINGS:   **ORDER GRANTING IN PART AND DENYING IN PART**
               **MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL**
               **DISCOVERY (DOCKET #1134)**

               **ORDER GRANTING MOTION TO ENFORCE THE COURT'S**
               **ORDER OF AUGUST 27, 2007, AND DENYING REQUEST FOR**
               **SANCTIONS  (DOCKET #1143)**

MINUTES FORM 90                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                    1                  Time: 1/30

EXHIBIT _____7_____
PAGE _____53_____

## ORDER GRANTING MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)

## ORDER GRANTING CARTER BRYANT AND MGA DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)

These matters were heard on January 7, 2008. The Court rules as set forth below.

To the extent that this Order decides issues more properly decided by the Discovery Master and/or preempts issues currently pending before the Discovery Master, it does so only to resolve those issues in the most expeditious manner possible. As the Court's order appointing the Discovery Master requires, any and all discovery disputes must be presented to the Discovery Master for his resolution.

### MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY (DOCKET #1134)

This motion is **GRANTED IN PART**. Leave to take additional depositions and propound additional interrogatories are granted to the extent they are consistent with Fed. R. Civ. P. 26(b)(2). See Fed. R. Civ. P. 30(a)(2)(A) (depositions), 33(a) (interrogatories). Rule 26(b)(2) requires a Court to limit discovery where it is unreasonably cumulative or duplicative; where it can be obtained from a more convenient, less burdensome, or less expensive source; where a party has already had ample opportunity to obtain information from discovery; where the burden or the expense of the requested discovery outweighs its likely benefit, taking into account the factors of the parties' resources, the importance of the issues at stake, and the importance of the requested discovery in resolving these issues. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Considering this standard, the Court concludes that Mattel has shown good cause to grant additional discovery given the complexity of this case, the number of parties, recent developments related to the substitution of counsel, the concerns regarding retention and spoliation of evidence, and the delay in receiving paper

EXHIBIT _____ 7

PAGE _____ 54

discovery caused by numerous discovery disputes and a Court-imposed stay requested by MGA upon substitution of counsel. Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) and relating to the trade secret and RICO claims (set forth in the moving papers at 13). Mattel may serve the notices of deposition and propound the interrogatories attached to the moving papers as Exs. A - C. Additionally, the parties must answer Mattel's previously propounded interrogatories to which the sole objection raised was that those interrogatories exceeded the allowable number of interrogatories.

The Court has heretofore refrained from bifurcating discovery relating to Phase 1 and Phase 2, believing that such an action is fraught with the potential of unnecessarily compounding discovery disputes in a case already predisposed to such disputes. Nevertheless, in light of the additional discovery permitted by this Order, and to the extent that counsel for the parties who are asserting or defending against claims to be tried in Phase 2 of the trial are in agreement, the Court will consider a stipulation of those parties that designates certain depositions as "Phase 2" depositions that may be conducted during the month of February, if counsel can assure the Court that such depositions can be so conducted without altering the Court's pretrial schedule regarding Phase 1.

Conversely, in light of the standard of review employed regarding the Discovery Master's orders, the Court **DENIES** that portion of Mattel's motion that seeks additional time in which to depose Carter Bryant. The Court cannot say that the Discovery Master's order allowing an additional nine hours to depose Carter Bryant is contrary to law based on the Discovery Master's unchallenged factual findings.

## MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF AUGUST 27, 2007 AND REQUEST FOR SANCTIONS (DOCKET #1143)

This motion is **GRANTED**. The Court's order clearly applied to "all parties." No party sought relief therefrom or clarification of the Court's order.

As prepared in purported compliance with the Court's order, the affidavit of Carlos Gustavo Machado Gomez is inadequate as it lacks facts and relies instead on conclusory language. Machado must file an affidavit that complies with the

MINUTES FORM 90
CIVIL -- GEN                                            3

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT _____ 7
PAGE _____ 55

Court's order as set forth below.

Carter Bryant has refused to comply with the Court's order and has not filed the required affidavit.

Both these parties must file, on or before January 15, 2008, an affidavit setting forth a factual description of their preservation efforts, policies, customs, and/or practices with respect to potentially discoverable documents related to the present litigation.  The failure of these parties to comply with this Order will result in the imposition of contempt sanctions to coerce their compliance.

The Court **DENIES** Mattel's request for costs and sanctions.

### MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)

This motion is **DENIED**.  The Court's order referred to the Discovery Master any and all discovery disputes, including those involving third parties.

Although the parties stipulated to the Discovery Master, that stipulation was entered as the Court's order, and as such, all parties are subject to that order unless relieved from it upon proper motion.

The order was entered as a valid Rule 53(a)(1)(C) order, not requiring the consent of any party or nonparty.  Machado has not convinced the Court that, as a subsequently added party, he was required to be given the opportunity to object to the order before it could be applied to him.  See Fed. R. Civ. P. 53(b)(1) (requiring notice and opportunity to be heard prior to the appointment of a special master). Importantly, Machado could have, but did not, seek relief from this order within a reasonable amount of time after he became a party to this case.  Furthermore, the Court does not find any basis to exclude Machado from the reach of the Court's order appointing the Discovery Master pursuant to his present objections.

### DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)

Carter Bryant and the MGA defendants may depose the ten individuals set

EXHIBIT ___7___

PAGE ___56___

forth in their moving papers. The testimony of all Rule 30(b)(6) witnesses "count" as only one deposition for purposes of determining the total number of depositions conducted by each side.

Carter Bryant and the MGA defendants are not relieved of the requirement that they serve subpoenas on all these deponents other than the current officers of Mattel (represented to the Court to be Tim Kilpin, Kevin Farr, and Evelyn Viohl). To the extent that Mattel has made prior written agreements to produce deponents who are under its control, it is expected to do so.

As to all the depositions permitted by this Order, all counsel are expected to coordinate their schedules with those of the deponents such that the depositions are held prior to the discovery cutoff date of January 28, 2008. However, as set forth above in connection with Mattel's motion to take additional discovery, Phase 2 depositions may be taken in February pursuant to a Court-approved stipulation.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT _____7_____

PAGE _____57_____

# EXHIBIT 8

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

CENTRAL      DISTRICT OF CALIFORNIA

CARTER BRYANT, an individual,

**SUBPOENA IN A CIVIL CASE**

V.

MATTEL, INC., a Delaware corporation,

Case Number:[1]  CV 04-9049 SGL (RNBx)

consolidated with cases CV 04-9059 and CV 05-2727

TO:  Anne Wang
c/o Linda Burrow, Caldwell Leslie
1000 Wilshire Blvd, Suite 600, Los Angeles, CA 90017

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☒  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  Testimony will be recorded stenographically and by videographer.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | January 28, 2008 |
| 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017 | 9:00 am |

☐  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiff, Mattel Inc. | January 14, 2008 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Jon D. Corey, Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor, Los Angeles, CA EXHIBIT  (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

PAGE  58

AO88  (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| | |
|---|---|
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |

| | |
|---|---|
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|---|---|
| | ADDRESS OF SERVER |

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

EXHIBIT

O

# EXHIBIT 9



1    Hon. Edward A. Infante (Ret.)
     JAMS
2    Two Embarcadero Center
     Suite 1500
3    San Francisco, California  94111
     Telephone:    (415) 774-2611
4    Facsimile:    (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11

12   CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049450
13              Plaintiff,

14        v.                                Consolidated with
                                            Case No. CV 04-09059
15   MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16              Defendant.                  **ORDER GRANTING MATTEL'S
                                            MOTION TO COMPEL MGA TO
17                                          PRODUCE DOCUMENTS BEARING
                                            BATES NOS. MGA 0800973-0800974
18                                          AND MGA 0829296-0829305**

19

20   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
21   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.

22

23

24                         I. INTRODUCTION

25        Mattel, Inc. ("Mattel") submitted a "Motion to Compel Withheld MGA Documents That

26   Prove MGA Was Developing Bratz as Early as June 2000." Specifically, Mattel seeks an order

27   compelling MGA to produce documents bearing Bates Nos. MGA 0800973-0800974 and MGA

28
     Bryant v. Mattel, Inc.,                                              1
     CV-04-09049 SGL (RNBx)

                        12-17        EXHIBIT _____9_____
                                     PAGE _____60_____

1   0829296 – 0829305, which Mattel characterizes as "smoking gun" documents that prove MGA

2   was developing Bratz as early as June 2000.  MGA contends that the disputed documents were

3   inadvertently produced and are protected by the attorney-client privilege.  At MGA's request,

4   Mattel destroyed the disputed documents.  Mattel, however, disputes MGA's claims of privilege

5   and presently seeks an order compelling production of the disputed documents.  MGA submitted

6   an opposition together with a supporting declaration, and lodged the disputed documents for an *in*

7   *camera* review.  Mattel submitted a reply.  The matter was heard on December 14, 2007.

## II. BACKGROUND

8        Mattel's claims in this case include allegations that "Carter Bryant [hereinafter "Bryant"]

9   conceived, created and developed Bratz designs while he was employed by Mattel as a doll

10  designer."  Mattel alleges that "using Mattel resources and while employed by Mattel, Bryant

11  took steps to assist MGA to produce dolls," and that he "concealed his Bratz work from Mattel

12  and wrongfully sold Bratz to MGA while he was a Mattel employee."  Mattel's Second Amended

13  Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, ¶¶2, 26, attached as Ex. 3

14  to Proctor Decl.  Mattel alleges that "as a result of the efforts of Bryant and other Mattel

15  employees working on Bratz (which was done without Mattel's knowledge), the Bratz dolls had

16  been designed and were far along in development during the time that Bryant was employed by

17  Mattel and prior to the time that Bryant left Mattel on October 20, 2000."  Id. at Counterclaims,

18  ¶36.  Mattel claims ownership of Bratz works created by Bryant while he was employed by

19  Mattel, asserts that Bryant breached his duties of loyalty and fiduciary duties to Mattel, and

20  claims that MGA aided and abetted Bryant.  Defendants dispute these allegations.

21        The timing of Bryant's creation and development of Bratz is a central issue in the case,

22  and thus has been the focus of a substantial amount of discovery.  Bryant testified at his

23  deposition that he first pitched the Bratz concept to MGA when he met Paula Garcia in August of

24  2000.  According to the deposition testimony of Bryant and MGA's Isaac Larian ("Larian"),

25  Bryant met Larian for the first time in September 2000.  Larian testified that at the time of the

26  September meeting, Bryant had names for each Bratz doll character.  Larian also testified,

27  however, that one of the Bratz dolls, "Yasmin," was subsequently named after his daughter

28

1   Jasmine.

2         Another witness, Anna Rhee, testified that Bryant asked her to paint Bratz doll heads in

3   June 2000.  Bryant, however, testified that he did not ask Ms. Rhee to paint faces for Bratz dolls

4   until November 2000.

5         In the course of discovery, MGA produced documents bearing Bates Nos. MGA 0800973-

6   0800974 and MGA 0829296-0829305 to Mattel.  On August 7, 2007, however, MGA sent Mattel

7   a letter asserting that the documents are protected by the attorney-client privilege and were

8   inadvertently produced.  Accordingly, Mattel destroyed its copies of the disputed documents and

9   so confirmed to MGA.

10        The first document in question, marked as MGA 0800973-0800974, is an internal

11  document sheet (the "Docket Sheet") from Russ, August, Kabat & Kent, trademark prosecution

12  counsel for MGA, regarding MGA's trademark application for "Bratz."  The Docket Sheet

13  includes such information as the name of the mark, the country, the name of the registrant, the

    application number, the application date (December 11, 2000), the registration number, the

14  registration date (December 2, 2003), the term, the date the renewal is due (December 2, 2013),

15  and the type of goods/services the mark is used for ("Dolls").  Mattel is particularly interested in

16  the notation "Dates of Use:  6-15-2000," which appears in a box entitled "Remarks" on the

17  second page of the Docket Sheet.

18        The second document in question, marked as MGA 0829296-0829305, is a facsimile

19  dated December 7, 2000 (the "Fax") from Lucy B. Arant, trademark counsel at Russ, August,

20  Kabat & Kent to Paula Garcia (then known as Paula Traentafellas) at MGA.  The first page of the

21  Fax includes a written message from Ms. Arant to Ms. Garcia stating that the Fax attaches four

22  trademark applications for Isaac Larian's review and signature.  The message also includes the

23  following remarks by Ms. Arant to Ms. Garcia:  "You indicated that all four of the applications

24  have a date of first use of June 15, 2000.  Please confirm that this is correct."  The remainder of

25  the Fax consists of the "intent to use" trademark applications for "Jade," "Yasmin," "Sasha," and

26  "Bratz."  These "intent to use" trademark applications do not include any information regarding

27  "dates of use."

28



EXHIBIT _____9_____

PAGE _____62_____

Mr. Larian executed MGA's trademark applications for "Jade," "Yasmin," "Sasha," and "Bratz" on the day the Fax was sent, December 7, 2000, and the applications were filed with the Patent and Trademark Office ("PTO"). MGA subsequently filed a statement of use for each of the four marks that specified dates in May of 2001 for the "date of first use" and a "date of first use in commerce," which are significantly different from the June 15, 2000 date noted in the Docket Sheet and the Fax.

Mattel contends that the disputed documents, and in particular the June 15, 2000 date noted therein, are relevant to its claim that Bryant secretly worked with MGA on Bratz while he was employed by Mattel. Bryant was employed at Mattel from January 4, 1999 until October 20, 2000. Mattel also contends that the disputed documents are relevant to challenge the credibility of defendants' key witnesses, and to substantiate the testimony of Ms. Rhee.

Furthermore, Mattel contends that neither of the disputed documents are protected by the attorney-client privilege. Mattel contends that the Docket Sheet is not a communication, much less a communication from MGA to counsel for the purpose of obtaining legal advice. Rather, in Mattel's view, the Docket Sheet is an internal law firm document that contains basic facts that are not privileged.

Mattel also contends that even if the Docket Sheet were a privileged communication, the information contained within it, including the date of first use information, is not privileged because MGA did not communicate the information for the purpose of keeping it confidential. Rather, Mattel contends that MGA communicated the date of first use and other information listed on the Docket Sheet to its trademark attorneys so that they could use the information to register MGA's marks with the PTO. Indeed, Mattel points out that after MGA submitted its "intent to use" trademark applications, MGA submitted a "statement of use" for each of its marks to the PTO that specified a "date of first use," although the specified "date of first use" was not June 15, 2000.

Moreover, Mattel contends that applicants for trademarks must disclose to the PTO a date of first use of the mark. Mattel explains that an applicant may initially apply to register a trademark by filing an application for use of a trademark or by filing an application for bona fide

intention to use a trademark (see 15 U.S.C. §1051(a) and (b)), but in either case the applicant must eventually disclose a "date of first use" of the mark. A use-based application must include the date of first use of the mark at the outset. See 15 U.S.C. §1051(a)(1). In contrast, an "intent to use" applicant must, within six month of the PTO's issuance of notice of allowance, file a "statement that verifies the mark is in use in commerce, the date of first use in commerce, the goods and services in connection with the mark are used in commerce, and the manner in which the mark is being used." Eastman V. Kodak Co. v. Bell & Howell Document Management Products Co., 994 F.2d 1569, 1570 (C.A. Fed. 1993). Mattel reasons that because MGA was required to submit information about the date of first use to the PTO in order for MGA to obtain a trademark registration, MGA could not have provided the information to trademark counsel with any reasonable expectation or intention that such information would remain confidential.

Mattel contends that the Fax is not privileged because it is a communication from counsel to MGA, not vice versa, and that the attachments are non-privileged trademark applications. Mattel also contends that the Fax is not privileged because it does not reveal any confidential communication for the purpose of rendering legal advice. Rather, Mattel reiterates that MGA was required to submit information about the date of first use to the PTO in order for MGA to obtain a trademark registration, and therefore MGA could not have expected or intended that such information remain confidential.

MGA contends that the declaration of MGA employee Paula Garcia demonstrates that the communications by MGA to its counsel regarding date of first use for the Bratz doll marks were intended to be confidential attorney-client communications for the purpose of obtaining legal advice for trademark applications. Accordingly, MGA contends that the references to the date of first use in the Docket Sheet and the Fax are protected because the references reflect a client confidence transmitted as part of a privileged communication.

MGA contends that Ms. Arant's role was not as a "mere conduit of data" or transcriber. See e.g., Knogo Corp. v. United States, 213 U.S.P.Q. 936, 940, 1980 WL 39083 (Ct. Cl. Trial Div. 1980) (rejecting the characterization of patent attorneys as mere "conduits" to the PTO). Instead, MGA describes her role as providing what information should be included in the

1   trademark applications and how it should be sent out. MGA contends that Ms. Arant requested

2   "dates of first use" information from Ms. Garcia in connection with advising MGA regarding

3   "intent to use" trademark applications. MGA's Opposition, pp. 5-6. According to MGA, "dates

4   of first use" information has significance to "intent to use" applications for two reasons: first, an

5   "intent to use" application is only appropriate for marks not already in use; and second, an

6   applicant has six months from the "date of first use" to use the mark before it is abandoned.

7   MGA emphasizes, however, that "dates of first use" are not among the facts disclosed to the PTO

8   as part of an "intent to use" application. MGA reasons, therefore, that it is incorrect for Mattel to

9   assume that Ms. Garcia intended her communications regarding date of first use to be made

10  public.

11         MGA also contends that Mattel erroneously relies on MGA's later filings of the

12  "statement of use" documents to argue that Ms. Garcia conveyed "dates of first use" to Ms. Arant

13  with the intent that those dates would be publicly disclosed. MGA contends that Mattel has no

14  evidentiary support for such a conclusion, and that indeed, Mattel's submissions show that

15  different attorneys from two different law firms prepared the "statement of use" filings for MGA

16  and specified different "dates of first use" for each mark than the June 15, 2000 date that Ms.

17  Garcia allegedly communicated to Ms. Arant.

18         MGA contends further that "[e]ven as to information that made its way into the 'intent to

19  use applications,' the documents generated in the preparation and drafting of applications that

20  reflect attorney-client discourse are shielded by the attorney-client privilege." MGA's Opposition

21  at p.7. Borrowing the reasoning in McCook Metals L.L.C. v. Alcoa Inc., 192 F.R.D. 242, 252

22  (N.D. Ill. 2000), MGA asserts that drafts "necessarily reflect the communications between a client

23  and his attorney as the attorney attempts to put forth the invention in the best light possible to

24  protect a client's legal right." MGA also contends that attorney-client protection extends to

25  factual information provided to counsel for the purpose of providing legal advice. See e.g. In re

26  Spalding Sports Worldwide, Inc., 203 F.3d 800 (Fed. Cir. 2000) (invention record submitted to

27  legal counsel for the purpose of obtaining legal advice was privileged); TeKnowledge Corp. v.

28  Akamai Techs., Inc., 2004 U.S. Dist. LEXIS 19109, at *6 (N.D. Cal. Aug. 10, 2004) ("technical

1  information communicated to a patent attorney does not warrant different treatment than any
2  other information communicated to an attorney in the process of obtaining legal services.").
3          As for Mattel's argument that the documents in question are "smoking gun" evidence,
4  MGA responds that the Bratz launch occurred in June 2001, at which time the marks were first
5  used. MGA asserts that "[a]ny contrary information contained in the documents in question was
6  an error that should have no bearing on whether the information is privileged." MGA's
7  Opposition, p.2. Ms. Garcia explains in her declaration that the June 15, 2000 date was
8  erroneous. MGA also contends that there could have been no "date of first use" of Bratz in June
9  2000 within the meaning of trademark law. MGA reasons that the Lanham Act requires that "first
10 use" be "actual use in commerce," or "bona fide use [] in the ordinary course of trade," (Fila
11 Sport S.p.A. v. Diadora America, Inc., 141 F.R.D. 75, 78 (D. Ill. 1991), and that Bratz was not
   being used in commerce in June 2000.

12                                III. DISCUSSION
13         The essential elements of the attorney-client privilege are: "(1) When legal advice of any
14 kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the
15 communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the
16 client's instance, permanently protected (7) from disclosure by the client or by the legal adviser
17 (8) unless the protection be waived." United States v. Martin, 278 F.3d 999 (9th Cir. 2002).
18 The burden is on the party asserting the privilege to establish all the elements of the privilege.
19 United States v. Munoz, 233 F.3d 1117, 1128 (9th Cir. 2000). "Because the attorney-client
20 privilege has the effect of withholding relevant information from the factfinder, it is applied only
21 when necessary to achieve its limited purpose of encouraging full and frank disclosure by the
22 client to his or her attorney." Clark v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir.
23 1992).

24         MGA has Failed to Establish that the Docket Sheet is Privileged
25         MGA argues that the attorney-client privilege extends to the Docket Sheet because it was
26 a "paper [] prepared by an attorney or at an attorney's request for the purpose of advising the
27 client, [which was] based on and would tend to reveal the client's confidential communications."
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    7.

EXHIBIT ___9___

PAGE ___66___

1   MGA's Opposition at p.9 (citing In re Fischel, 557 F. 2d 209,211 (9th Cir. 1977)).  MGA's

2   argument, however, is unsupported by evidence.

3        The declaration of Paula Garcia fails to specifically address the Docket Sheet.  Instead,

4   Ms. Garcia generalizes as follows:

5        Prior to the launch of Bratz, I communicated with outside lawyers for

6        MGA in connection with protecting MGA's trademarks for the "Bratz" line of

7        products it hoped to launch in June 2001.  These communications were for the

8        purpose of obtaining legal advice from MGA's trademark counsel, including

9        communications in or about December 2000 with Lucy Arant of Russ, August,

        Kabat & Kent LLP.  In general, I intended and expected my communications with

10       counsel in connection with MGA's trademark filings to be confidential, including

11       communications regarding the anticipated date of MGA's first use of the "Bratz"

12       marks.

13   Garcia Decl. In Support of MGA's Opposition, ¶3.

14        Nowhere in the evidentiary record submitted by MGA does MGA explain why or how the

15   Docket Sheet was created or maintained.  MGA does not explain who created the Docket Sheet or

16   provide the source of the information contained therein.  MGA has not established the requisite

17   elements of the attorney-client privilege for this specific document.  See e.g. Automated

18   Technologies, Inc. v. Knapp Logistics & Automation, Inc., 382 F.Supp.2d 1372, 1375 (N.D. Ga.

19   2005) (party invoking privilege has the burden of proving "that the particular communications

20   were confidential"); Kodish v. Oakbrook Terrace Fire Protection Dist., 235 F.R.D. 447, 453

21   ("The party seeking to assert the privilege must show that the particular communication was part

22   of a request for advice or part of the advice, and that the communication was intended to be and

23   was kept confidential.").  MGA has failed to carry its burden of establishing that the Docket Sheet

24   is protected by the attorney-client privilege.

                    MGA has Failed to Establish That the Fax is Privileged

25        An in camera review of the Fax confirms that the document constitutes a communication

26   between MGA and counsel regarding MGA's trademark applications.  That the Fax constitutes a

27

28

EXHIBIT ___9___

PAGE ___67___

communication between MGA and counsel, however, is insufficient without more to establish that the Fax is privileged. MGA must also establish that the Fax is a confidential communication for the purpose of rendering legal advice. See e.g. Automated Technologies, Inc. v. Knapp Logistics & Automation, Inc., supra; Kodish v. Oakbrook Terrace Fire Protection Dist., supra. MGA has failed to do so. Ms. Garcia's declaration does not even mention the Fax, much less specify that the information contained therein was intended to be confidential for the purpose of rendering legal advice. Instead, Ms. Garcia speaks in generalities about communications regarding MGA's trademark applications. In fact, the Fax does not contain any legal opinions or advice. The only attorney-client communication reflected in the Fax is the statement regarding the "date of first use."

MGA could not have had a reasonable expectation that the June 15, 2000 "date of first use" stated in the Fax would be kept confidential. As Mattel points out, in order to obtain a full trademark registration, an applicant must disclose the "dates of first use" to the PTO. This is true regardless of whether the applicant initially files an "intent to use" application or a use-based application. See 15 U.S.C. §1051(a)(2) (use-based application must include the date of first use of the mark); Eastman V. Kodak Co. v. Bell & Howell Document Management Products Co., 994 F.2d at 1570 (an "intent to use" applicant must file a "statement that verifies . . . the date of first use in commerce).

MGA relies on Ms. Garcia's declaration that she generally expected her communications with trademark counsel to be confidential. However, a client's subjective belief as to whether a communication is privileged must be reasonable in order for the attorney-client privilege to attach. Speaker ex rel. Speaker v. County of San Bernadino, 82 F.Supp.2d 1105, 1112-1113 (C.D. Cal. 2000) (client's subjective belief "should be reasonable in order to lay claim to the protections of the privilege"); Griffith v. Davis, 161 F.R.D. 687, 696 (C.D. Cal. 1995) (attorney-client privilege not applicable to information communicated to attorney where client knew information would be used in his employer's administrative investigation). Although a client's subjective belief of confidentiality is necessary for the attorney-client privilege to attach, it is not sufficient. See In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 923 (8th Cir. 1997)

1   ("[W]e know of no authority . . . holding that a client's beliefs, subjective or objective, about the

2   law of privilege can transform an otherwise unprivileged conversation into a privileged one.").

3        Nevertheless, MGA attempts to identify confidential reasons why Ms. Garcia might have

4   communicated "date of first use" information to Ms. Arant.  According to MGA, the only reason

5   Ms. Arant solicited "date of first use" information from Ms. Garcia was (i) to determine whether

6   an "intent to use" application would be proper and (ii) to determine when MGA should file its

7   applications.  MGA asserts that "these legal considerations led Ms. Arant to request 'dates of first

8   use' from Ms. Garcia."  MGA's Opposition at p.6.  However, there is no evidence of record to

9   substantiate MGA's contentions.

10       MGA's failure to provide evidence to substantiate its claim that the Fax reveals the

11  substance of a confidential communication is fatal to its claim of privilege.  Because a mark's

12  date of first use is factual information that must be conveyed to the PTO to secure a trademark

13  application, communication of this information is not privileged.  Weil Ceramics & Glass, Inc. v.

14  Work, 110 F.R.D. 5000, 504 (E.D. N.Y. 1986) ("The party claiming the privilege must clearly

15  show that a document renders legal advice and does not, for example, merely contain facts later

16  disclosed in a patent or trademark application"); see also United States v. White, 950 F.2d 426,

17  430 (7th Cir. 1991) ("when information is disclosed for the purpose of assembly into a bankruptcy

18  petition and supporting schedules, there is no intent for the information to be held in confidence

    because the information is to be disclosed on documents publicly filed").

19       MGA contends, however, that the June 15, 2000 date was not actually disclosed to the

20  PTO and points out that Mattel's own submissions show that different attorneys from two

21  different law firms prepared the "statement of use" filings for MGA and specified different "dates

22  of first use" for each mark than the June 15, 2000 date that Ms. Garcia allegedly communicated to

23  Ms. Arant.  That the June 15, 2000 date was not actually disclosed is irrelevant.  What is relevant

24  is whether Ms. Garcia actually and reasonably intended and expected the "dates of first use"

25  information she provided to Ms. Arant to remain confidential when she made the communication,

26  not whether the information was actually conveyed to the public.  See In re Grand Jury

27  Proceedings, 727 F.2d 1352, 1358 (4th Cir. 1984) (information given to attorney to prepare

28

10

EXHIBIT _____ 9

PAGE _____ 69

1   prospectus was not protected by attorney-client privilege, even though no prospectus was ever

2   actually issued); United States v. Lawless, 709 F.2d 485, 487 (7th Cir. 1983) ("[I]f the client

3   transmitted the information so that it might be used on the tax return, such a transmission destroys

4   any expectation of confidentiality.").

5       Lastly, MGA's reliance on McCook, supra, and other related caselaw[1] is misplaced.  In

6   McCook, the court held that draft patent applications were privileged because they "contain[ed]

7   the legal opinion and advice of the attorney regarding the wording of technical specifications,

8   claims, and prior art, and whether an item is included, all of which are necessary to secure a legal

9   claim for the client."  McCook, 192 F.R.D. at 252-253.  In contrast, the Fax at issue in this case

10  reflects no such attorney opinions or advice.  Indeed, the only attorney-client communication

11  reflected in the Fax is the statement regarding the "date of first use."  The cases cited by MGA are

12  inapplicable to communications conveying date of first use information in the trademark context

13  because, as discussed previously, a trademark attorney does not have discretion regarding whether

14  to disclose the "date of first use" information to the PTO.[2]

### IV. CONCLUSION

15      For the reasons set forth above, Mattel's motion to compel MGA to produce documents

16  bearing Bates Nos. MGA 0800973-0800974 and MGA 0829296-0829305 is granted.  MGA shall

17  produce said documents on or before December 28, 2007.

18      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

19  Master, Mattel shall file this Order with the Clerk of Court forthwith.

21  Dated: December 17, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

---

[1] See Rohm v. Haas Co. v. Brotech Corp., 815 F.Supp. 793, 797 (D. Del. 1993); Hyuk Suh v. Choon Sik Yang, 1997 U.S. Dist. LEXIS 20077 (N.D. Cal. No. 18, 1977); Conner Peripherals, Inc. v. Western Digital Corp., 1993 U.S. Dist. LEXIS 20149 (N.D. Cal. June 8, 1993); TeKnowledge Corp. v. Akamai Techs. Inc., 2004 U.S. Dist. LEXIS 19109 (N.D. Cal. Aug. 10, 2004).

[2] Mattel argues in the alternative that even if the disputed documents were privileged, MGA has waived the privilege.  Because MGA has failed to establish the requisite elements of the attorney-client privilege as to the disputed documents, it is unnecessary to address Mattel's waiver argument herein.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT ___9___

PAGE ___70___

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on December 17, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL MGA TO PRODUCE DOCUMENTS BEARING BATES NOS. MGA 0800973-0800974 AND MGA 0829296-0829305 in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on December 17, 2007, at San Francisco, California.

_Sandra Chan_
Sandra Chan

EXHIBIT _____9_____

PAGE _____71_____

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc
(RNBx), AO279, DISCOVERY, RELATED-G

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**Notice of Electronic Filing**

The following transaction was entered by Proctor, Brett on 12/19/2007 at 11:31 AM PST and filed on 12/19/2007

**Case Name:**        Carter Bryant v. Mattel Inc
**Case Number:**    2:04-cv-9049
**Filer:**                Mattel Inc
**Document Number:** 1291

**Docket Text:**
Order Granting Mattel's Motion to Compel MGA to Produce Documents Bearing Bates Nos. MGA 0800973-0800974 and MGA 0829296-0829305 filed by Defendant Mattel Inc re: MOTION to Compel [892] (Proctor, Brett)

**2:04-cv-9049 Notice has been electronically mailed to:**

Timothy L Alger    timalger@quinnemanuel.com

Christa M Anderson    canderson@kvn.com

Jon D Corey    joncorey@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Raoul D Kennedy    rkennedy@skadden.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com

Mark E Overland    moverland@obsklaw.com

Michael H Page    mhp@kvn.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com, fesceroma@obsklaw.com

EXHIBIT _____ 9

PAGE _____ 72

CM/ECF - California Central District                                                  Page 2 of 2

John Elliot Trinidad    jtrinidad@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock    awaltonhadlock@kvn.com

Matthew M Werdegar    mwerdegar@kvn.com

Michael T Zeller    michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Michelle M Campana
Skadden Arps Slate Meagher & Flom LLP
4 Times Square
New York, NY 10036-6522

John W Keker
Keker & Van Nest
710 Sansome St
San Francisco, CA 94111-1704

Kenneth A Plevan
Skadden Arps Slate Meagher & Flom
4 Times Sq
New York, NY 10036-6522

John B Quinn
Quinn Emanuel Urquhart Oliver & Hedges
865 S Figueroa St, 10th Fl
Los Angeles, CA 90017-2543

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\laurakinsey\Desktop\Order.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/19/2007] [FileNumber=5098514-0
] [2d14cdc29c7ddc71c30064ca049d39386c600cb2ac7d044f37070402830168fc55d
dd322ca288a4b7fd94efe0aa4409654cd10545477e534424c90b3cff25950]]

EXHIBIT _____ 9

PAGE _____ 73

# EXHIBIT 10

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 11

# Caldwell Leslie

**RECEIVED**

DEC 2 7 2007

Caldwell Leslie & Proctor, PC

1000 Wilshire Boulevard, Suite 600  Los Angeles, CA  90017-2463   Tel 213.629.9040   Fax 213.629.9022   www.caldwell-leslie.com

**VIA EMAIL (PDF) &**
**FIRST-CLASS MAIL**

**LINDA M. BURROW**
burrow@caldwell-leslie.com

December 26, 2007

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street
10th Floor
Los Angeles, CA  90017

Re:   *Bryant v. Mattel, Inc.*

Dear Mr. Proctor:

This letter responds in part to your letter of December 19, 2007.

While I will not, at this time, respond to all of the issues raised in your letter, I have confirmed with Ms. Wang that she has not at any time represented MGA or Larian and does not recall ever representing another client in a transaction adverse to MGA or Larian.  Accordingly, to the extent that you object to any perceived failure by Ms. Wang to produce documents reflecting communications with MGA or Larian *not* related to this matter, those objections are not well taken.

Very truly yours,

Linda M. Burrow

cc:   Michael J. Proctor, Esq.

978-01/1524.doc

EXHIBIT _____ 11

PAGE _____ 86

# EXHIBIT 12

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 13

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**