**EXHIBIT 1**

**CONFORMED COPY**

1 | Hon. Edward A. Infante (Ret.)
2 | JAMS
  | Two Embarcadero Center
  | Suite 1500
3 | San Francisco, California 94111
  | Telephone:    (415) 774-2611
4 | Facsimile:    (415) 982-5287

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>     Plaintiff,<br><br>     v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>     Defendant.<br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO THIRD NOTICE OF DEPOSITION UNDER RULE 30(b)(6); DENYING REQUEST FOR SANCTIONS** |

**I. INTRODUCTION**

On July 13, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Compel MGA to Produce Witnesses Pursuant to Mattel's Third Notice of Deposition Under Rule 30(b)(6) and for Sanctions." Specifically, Mattel seeks an order compelling MGA Entertainment, Inc. ("MGA") to produce witnesses on Topics 1-3, 6-8, 9 and 11-13 of Mattel's Third Rule 30(b)(6) Notice. On

*Bryant v. Mattel, Inc.,*
*CV-04-09049 SGL (RNBx)*

EXHIBIT  1   PAGE  3

1   July 31, 2007, MGA submitted an opposition brief.  On August 6, 2007, Mattel submitted a reply

2   brief.  The matter was heard on September 24, 2007.  Having considered the motion papers and

3   the comments of counsel, Mattel's motion is granted in part and denied in part, and the request for

4   sanctions is denied.

5                                   II. BACKGROUND

6          Mattel first served a Rule 30(b)(6) Notice of Deposition of MGA in February of 2005,

7   which specified eight topics for deposition.  Mattel served a Second Notice of Deposition of

8   MGA in February of 2007, which specified forty-six topics for deposition.  On June 5, 2007,

9   Mattel served a Third Notice of Deposition of MGA (the "Third Notice"), which is the subject of

10  the present motion to compel.  The Third Notice specifies sixteen topics for deposition.  On June

11  29, 2007, MGA served objections to the Third Notice, and on July 5, 2007, the parties met and

12  conferred.  The parties were not able to resolve their disputes regarding four subject matters: hard

13  drives and other storage devices (Topics 1-3); prior inconsistent statements to the press (Topics 6-

14  8); "test projects" for MGA (Topic 9); and payments MGA made to Isaac Larian, Farhad Larian

15  and Morad Zarabi (Topic 11-13).  The topics at issue are set forth below.

16                          Hard Drives and Other Storage Devices

17          1.     The IDENTITY, current or last known location, and disposition of

18  each STORAGE DEVICE that each of the following PERSONS has used to

19  create, generate, prepare, draft, send and/or receive any DOCUMENT or

20  DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or

21  ANGEL at any time since January 1, 1999, including without limitation the date

22  of acquisition and the date of disposition of each STORAGE DEVICE:  Isaac

23  Larian, Farhad Larian, Paula Garcia, BRYANT, Kami Gillmour, Veronica

24  Marlow, Mercedeh Ward, Margaret Hatch-Leahy, Jennifer Maurus, Judy Rich,

25  Ninette Pembleton, Kerrie Brode, Victoria O'Connor, Aileen Storer, Charles

26  O'Connor, Helene Bartels, Colleen O'Higgins, Vivian Matt, Maureen Mullen,

27  Rachel Harris, Barbara Malcolm, David Dees, Ben Ton, Dave Malacrida.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                          2

EXHIBIT  1   PAGE  4

2.      The IDENTITY, current or last known location, and disposition of each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of this Notice, including without limitation the date of creation and the date of disposition of each such backup or copy.

3.      YOUR search for and production of DOCUMENTS and DIGITAL INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this Notice.

<u>Prior Inconsistent Statements to the Press</u>

6.      YOUR statements to Christopher Palmeri in connection with the Business Week article entitled "To Really Be A Player, Mattel Needs Hotter Toys," published on or about July 28, 2003, including without limitation in connection with the statement that Isaac Larian "got the idea for Bratz after seeing his own kids run around in navel-bearing tops and hip-huggers."

7.      YOUR statements to Denise I. O'Neal in connection with the Chicago Sun-Times article entitled "Bratz Packers Are What's Cool in Doll World," published on or about March 5, 2004, including without limitation in connection with the statements that MGA's "creative team decided the name should be catchy and not have more than six letters.  Keeping with today's trend of making names more 'cool' by changing the spelling, MGA executives decided to replace the 's' with a 'z'"

8.      YOUR statements to Jeff Weiss in connection with the San Fernando Valley Business Journal article entitled "Immigrant's Creative Company Shakes Up Toy Industry," published on or about March 29, 2004, including without limitation in connection with the statement that "[i]t was Jason's idea for Bratz."

<u>"Test Projects" for MGA</u>

9.      The IDENTITY of each PERSON who YOU had perform, or who

EXHIBIT  1  PAGE  5

1    YOU requested, asked or solicited to perform, any "test project" in advance of or

2    in consideration of employment by YOU since January 1, 1995, including without

3    limitation the IDENTITY of each such PERSON who was a MATTEL employee

4    at the time.

5    Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi

6        11.    Payments of money or any other item of value that YOU have

7    made to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac

8    Larian since January 1, 1999, including without limitation (a) the amounts of such

9    payment and the equivalent dollar value of each of item of value, (b) the dates of

10   such payment, (c) the IDENTITY of each recipient of such payment, (d) the

11   IDENTITY of each bank or financial institution account to which such payment

12   was made and (e) the reasons for each such payment.

13       12.    Payments of money or any other item of value that YOU have

14   made to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad

15   Larian since January 1, 1999, including without limitation (a) the amounts of each

16   such payment and the equivalent dollar value of each of item of value, (b) the

17   timing of each such payment, (c) the IDENTITY of each recipient of each such

18   payment, (d) the IDENTITY of each bank or financial institution account to

19   which such payment was made and (e) the reasons for each such payment.

20       13.    Payments of money or any other item of value that YOU have

21   made to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad

22   Zarabi since January 1, 1999, including without limitation (a) the amounts of each

23   such payment and the equivalent dollar value of each item of value, (b) the timing

24   of each such payment, (c) the IDENTITY of each recipient of each such payment,

25   (d) the IDENTITY of each bank or financial institution account to which such

26   payment was made and (e) the reasons for each such payment.

27   Zeller Decl., Ex. 23.

28

EXHIBIT __1__   PAGE __6__

1       Mattel seeks an order compelling MGA to produce witnesses to testify on Topics 1-3, 6-8,

2  9 and 11-13, and overruling all of MGA's objections and limitations.  Mattel contends that the

3  testimony it seeks is relevant, not unduly burdensome, and not otherwise objectionable as

4  cumulative or duplicative of any other deposition testimony already given in the case.

5       MGA contends that Mattel's Third Notice is invalid because Mattel failed to obtain leave

6  of court to take MGA's deposition after having previously deposed several 30(b)(6) designees.

7  MGA contends that Rule 30(a)(2)(B), Fed.R.Civ.P., requires Mattel to establish good cause for

8  examining MGA any further.  MGA further contends that Mattel has not established the requisite

9  good cause, and instead improperly has attempted to shift the burden of proof to MGA to justify

10  its objections to the Third Notice.  Lastly, MGA contends that Mattel has had many opportunities

11  to obtain, and in many cases has already obtained, the information it now moves to compel.

12                        III. STANDARDS

13       Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

14  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

15  party." Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

16  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

17       Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., the court shall limit the frequency or extent of

18  use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably

19  cumulative or duplicative, or is obtainable from some other source that is more convenient, less

20  burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by

21  discovery in the action to obtain the information sought; or (iii) the burden or expense of the

22  proposed discovery outweighs its likely benefit, taking into account the needs of the case, the

23  amount in controversy, the parties' resources, the importance of the issues at stake in the

24  litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

25  26(b)(2)(C).

26       Pursuant to Rule 30, Fed.R.Civ.P., a party may take the testimony of any person, including

27  a party, by deposition upon oral examination without leave of court, except as provided in Rule

28

EXHIBIT   1   PAGE   7

30(a)(2), Fed.R.Civ.P.  In particular, Rule 30(a)(2) specifies that a party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2), Fed.R.Civ.P., if "the person to be examined already has been deposed in the case."  Fed.R.Civ.P. 30(a)(2)(B).

## IV. DISCUSSION

As a threshold matter, the parties dispute whether Rule 30(a)(2)(B), Fed.R.Civ.P., applies to depositions taken pursuant Rule 30(b)(6), Fed.R.Civ.P.  There is caselaw to support each party's position.  See e.g. Ameristar Jet Starter, Inc. v. Signal Composites, Inc., 244 F.3d 189 (1st Cir. 2001) (second Rule 30(b)(6) subpoena issued without leave of court was invalid); In re Sulfuric Acid Antitrust Litig., 2005 WL 1994105 (D. Ill. Aug. 19, 2005) (holding that second Rule 30(b)(6) subpoena issued without leave of court was invalid); Innomed Labs, LLC v. Alza Corp., 211 F.R.D. 237 (S.D. N.Y. 2002) (quashing overbroad 30(b)(6) subpoena issued without leave of court); Quality Aero Tech., Inc. v. Telemetrie Elektronik, 212 F.R.D. 313, 319 (E.D. N.C. 2002) (holding that Rule 30(a)(2)(B) does not apply to Rule 30(b)(6) depositions).  For purposes of the present motion, however, it is unnecessary to resolve this conflict in the law because the debate is purely academic and inconsequential.  As Mattel has requested, Mattel's motion is treated herein as a motion for leave to serve an additional 30(b)(6) notice with additional topics.  In evaluating the appropriateness of the topics, it is Mattel's burden to demonstrate that there is good cause for such discovery (see e.g. Boston Scientific Corp. v. Cordis Corp., 2004 WL 1945643 (N.D.Cal. 2004)), applying the principles stated in Rule 26(b)(2), Fed.R.Civ.P.

### Hard Drives and Other Storage Devices (Topics 1-3)

Topic 1 seeks information regarding the location and disposition of computer hard drives or other storage devices used by specified MGA employees or contractors that contain or contained documents related to the Bratz or Angel projects.  Topic 2 seeks the identification and last known location of any backup, copy or image of the hard drives or storage devices identified in Topic 1.  Topic 3 seeks information regarding MGA's search for and production of documents

EXHIBIT __1__ PAGE __8__

1   and digital information from the hard drives and storage devices referenced in Topic 1.

2       MGA objected to Topics 1-3 as overbroad, unduly burdensome, vague, ambiguous,

3   irrelevant, and not reasonably calculated to lead to admissible evidence. MGA also objected to

4   Topics 1-3 to the extent that the information sought is obtainable through other more convenient,

5   less burdensome and less expensive means. Lastly, MGA objected to Topics 1-3 as unreasonably

6   cumulative and duplicative of information already provided by Ken Lockhart, Vice President and

7   Chief Information Officer for MGA.

8       Topics 1-3 unquestionably seek information that is relevant within the meaning of Rule

9   26(b)(1), Fed.R.Civ.P., which specifically authorizes discovery regarding any matter, not

10   privileged, that is relevant to the claim or defense of any party, including "the existence,

11   description, nature, custody, condition, and location of any books, documents or other things." A

12   portion of the discovery sought, however, is unreasonably cumulative and duplicative of

13   information already provided by Mr. Lockhart. MGA designated Mr. Lockhart as a 30(b)(6)

14   witness to testify about MGA's retention, destruction and data back-up policies, MGA's digital

15   information systems and application software, employees' electronic messaging systems, and

16   MGA's policies regarding the use of transportable media. Mr. Lockhart testified about the

17   location and disposition of MGA employees' hard drives and storage devices in general.

18       Mattel contends that Topics 1-3 differ from the topics in the Second Notice and the

19   testimony previously given by Mr. Lockhart in that Mattel now seeks information about the

20   locations and dispositions of hard drives used by 24 named individuals. Mattel contends that the

21   testimony it seeks will enable it to assess MGA's production, including whether any documents

22   requested or compelled by the Court were destroyed, not collected or otherwise made unavailable

23   to Mattel. Mattel's Reply at p.7.

24       Although Mattel's stated objective for seeking testimony regarding Topics 1-3 may be

25   legitimate, the burden and expense of a Rule 30(b)(6) deposition is not justified under the

26   circumstances of this case. Mattel has accused MGA of obstructing discovery, and in particular

27   withholding Bryant's computer. There is no evidence, however, to suggest that MGA has refused

28

1  or failed to search for and produce responsive documents located on the hard drives of the other

2  individuals named in Topic 1.  It is burdensome and expensive to prepare a witness to testify

3  about the locations and dispositions of hard drives used for 24 different individuals. The likely

4  benefit of undergoing such a burden and expense is doubtful.  Furthermore, there are other less

5  burdensome and less expensive means of assessing whether MGA has complied with its

6  discovery obligations, including for example, document requests and interrogatories.  Therefore,

7  Mattel's motion is denied as to Topics 1-3.

8                    Prior Inconsistent Statements to the Press (Topics 6-8)

9         Topics 6-8 seek testimony regarding three public statements made by Isaac Larian

10 regarding who conceived of Bratz.  MGA objected to Topics 6-8 as irrelevant and not reasonably

11 calculated to lead to admissible evidence.  MGA also objected to Topics 6-8 to the extent that the

12 information sought is obtainable through other more convenient, less burdensome and less

13 expensive means.  Further, MGA objected to Topics 6-8 as unreasonably cumulative and

14 duplicative of information already provided by MGA and/or Carter Bryant.  MGA also objected

15 to a deposition on these Topics "to the extent that the statements referenced above were not made

16 by MGA as a corporate actor and thus they are not the appropriate subject of a 30(b)(6)

17 designation." Zeller Decl., Ex. 24.

18        Mattel contends that Topics 6-8 are the proper subject of a Rule 30(b)(6) deposition

19 because each of the statements identified therein was made by MGA's Chief Executive Officer,

20 Isaac Larian.  Mattel acknowledges that it already deposed Isaac Larian regarding one of the

21 articles identified in Topics 6-8, but contends that it is not attempting to re-depose him.  Rather,

22 Mattel contends that it is entitled to elicit testimony that will bind the corporation so that it will

23 not be "sandbagged" at trial.  Mattel's Reply at p.6.

24        MGA accuses Mattel of misusing the 30(b)(6) procedure when Mattel knows that Isaac

25 Larian is the person who should be, and already has been, deposed about the statements identified

26 in Topics 6-8.  MGA also contends that Mattel opted to limit its examination of Isaac Larian to

27 one article, and that Mattel's failure to fully question Isaac Larian in no way justifies deposing

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    8

EXHIBIT  1  PAGE  10

1  MGA now. MGA also contends that Mattel could avail itself of other discovery methods, such as

2  interrogatories or requests for admission, to obtain further information about the publications

3  identified in Topics 6-8.

4        Topics 6-8 seek information relevant to the central issue in the case: who conceived of

5  Bratz. Mattel's use of the 30(b)(6) procedure is justified in order to obtain testimony that will

6  bind the corporation. The testimony Mattel now seeks is not unreasonably cumulative or

7  duplicative of testimony it has already sought from Isaac Larian because Mattel previously

8  questioned Isaac Larian about only one of the articles identified in Topics 6-8. Further, the likely

9  benefit to Mattel of testimony from Isaac Larian (or another corporate designee) regarding Topics

10  6-8 outweighs the burden and expense to MGA, given the importance of the testimony Mattel

11  seeks. Mattel's motion is granted as to Topics 6-8.

12                            "Test Projects" for MGA (Topic 9)

13        In Topic 9, Mattel seeks the identity of each person MGA had perform or who MGA

14  requested, asked or solicited to perform, any "test project" in advance of or in consideration of

15  employment by MGA since January 1, 1995. MGA objected to Topic 9 as irrelevant, not

16  reasonably calculated to lead to the discovery of admissible evidence, overbroad, unduly

17  burdensome, and unreasonably cumulative and duplicative. MGA also objected to Topic 9 as

18  vague and ambiguous, particularly with respect to the term "test project." MGA also objected to

19  Topic 9 to the extent that the information sought is obtainable through other, more convenient,

20  less burdensome and less expensive means. MGA also objected to Topic 9 as seeking

21  confidential, proprietary, and commercially sensitive information with no relevance to the

22  litigation.

23        When Carter Bryant was deposed by Mattel, he testified that he "did sort of a tryout kind

24  of a project for" MGA. Zeller Decl., Ex. 29 at 9:19-20. He also referred to this "tryout" project

25  as a "test assignment." Id. at 515-516. In light of Bryant's testimony, Mattel's stated purpose of

26  Topic 9 is to "obtain information that will refute MGA and Bryant's assertions that Bryant's

27  working for MGA while employed by Mattel was no different than a supposedly standard

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                            9

EXHIBIT  1  PAGE  11

1     industry practice of having candidates for creative positions make artwork as part of the job

2     interview." Mattel's Motion at p.22.

3          MGA acknowledges that Mattel provided a definition for the phrase "test assignment" in

4     its motion papers. MGA's Opposition at p.10. MGA nevertheless contends that Topic 9 remains

5     objectionable as overbroad, reasoning that it would require MGA to provide information "with

6     regard to how it proceeded with hiring virtually every single employee hired since 1995."

7     MGA's Opposition at p.9. MGA also contends that it would be unduly burdensome to require

8     MGA to have a designee review and potentially memorize information about every single person

9     who has applied for a job at MGA since 1995, particularly when Bryant only began working for

10     MGA in 2000. MGA contends that a contention interrogatory is more appropriate than a 30(b)(6)

11     deposition to obtain the information called for in Topic 9.

12          Topic 9 seeks information relevant to one of MGA and Bryant's defenses, namely their

13     claim that Bryant's work for MGA while employed by Mattel was no different than a standard

14     industry practice of having candidates for creative positions make artwork as part of the job

15     interview. Topic 9, however, is objectionable because it is overbroad and burdensome. In

16     particular, Topic 9 is overbroad in terms of the specified time frame because Bryant did not begin

17     working at MGA until the year 2000. Topic 9 is also objectionable because the information

18     sought is more appropriately obtained through a contention interrogatory, which would be

19     significantly less burdensome and less expensive than a 30(b)(6) deposition. Therefore, Mattel's

20     motion is denied as to Topic 9. In lieu of taking a 30(b)(6) deposition on Topic 9, Mattel is

21     granted leave to serve a contention interrogatory regarding Topic 9 limited to the years 1998

22     through 2004.

23     <u>Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi (Topics 11-13)</u>

24          In Topics 11-13, Mattel seeks information regarding payments made by MGA to Isaac

25     Larian (Topic 11), Farhad Larian (Topic 12), and Morad Zarabi (Topic 13). MGA objected to

26     these Topics as irrelevant, not reasonably calculated to lead to the discovery of admissible

27     evidence, overbroad, unduly burdensome, and unreasonably cumulative and duplicative. MGA

28

EXHIBIT __1__ PAGE __12__

1  also objected to Topics 11-13 to the extent that the information sought is obtainable through

2  other, more convenient, less burdensome and less expensive means.  MGA also objected to

3  Topics 11-13 as seeking confidential, proprietary, and commercially sensitive information with no

4  relevance to the litigation.

5       Mattel explains that Morad Zarabi arbitrated a dispute between Isaac Larian and Farhad

6  Larian that involved the timing of the creation of Bratz.  More specifically, Farhad Larian claimed

7  that Isaac Larian concealed from him MGA's development with Carter Bryant of Bratz dolls and

8  alleged that Bryant began working with MGA during a time Bryant was employed by Mattel.

9  Mattel considers all three individuals involved in the arbitration as witnesses in this litigation, and

10  therefore seeks information that may establish their bias.  Mattel also emphasizes that Isaac

11  Larian is a party to the litigation, and that payments made by MGA to him are relevant to Mattel's

12  claim for punitive damages, and may be used as impeachment evidence.  Lastly, although Mattel

13  acknowledges that it deposed Isaac Larian regarding payments he received from MGA, Mattel

14  contends that it is entitled to testimony from MGA to corroborate or refute his testimony.

15       MGA contends that Topics 11-13 are not relevant to this lawsuit.  In particular, MGA

16  objects to Topics 12 and 13 as seeking "private financial records of persons who are neither

17  parties nor witnesses in this action, and whose only connection is knowing people involved in the

18  lawsuit."  MGA's Opposition at p. 13.  With regard to payments to Isaac Larian, MGA contends

19  that Mattel already had the opportunity to ask him about payments during his deposition.  MGA

20  also contends that Mattel is not entitled to conduct discovery regarding Isaac Larian's net worth at

21  this time.  Even if Mattel is entitled to conduct such discovery, MGA contends that payments

22  made to him would not establish his net worth because they represent only one of many sources

23  of income and do not account for his other assets and liabilities.

24       MGA's payments to Isaac Larian and Farhad Larian are relevant to the claims and

25  defenses in the case.  Payments to Isaac Larian and Farhad Larian may also show possible bias

26  and be used for impeachment purposes.  Moreover, MGA's payments to Isaac Larian may be

27  relevant to Mattel's claim for punitive damages.  Payments to Isaac Larian are a component of his

28

EXHIBIT ___1___ PAGE _13_

1   net worth, even if they represent one source of income. The burden of producing such information

2   does not outweigh its relevance, taking into consideration the circumstances of this case.

3   Furthermore, there is no stay on discovery pertaining to punitive damages.  Accordingly, Mattel's

4   motion is granted as to Topics 11 and 12.

5        In contrast, MGA's payments to Morad Zarabi are irrelevant.  His only connection to this

6   litigation appears to be with the arbitration proceedings.  Any potential relevance of MGA's

7   payments to Morad Zarabi is outweighed by the burden and the intrusion into his private financial

8   affairs.  Mattel's motion is denied as to Topic 13.

9                          V. CONCLUSION

10       For the reasons set forth above, it is hereby ordered as follows:

11       1.   Mattel's motion to compel is granted as to Topics 6-8, 11 and 12.

12       2.   Mattel's motion to compel is denied as to Topics 1-3, 9 and 13.  In lieu of taking a

13   deposition on Topic 9, Mattel is hereby granted leave to serve a contention interrogatory

14   regarding Topic 9 that is limited to the years 1998 through 2004.

15       3.   Mattel's request for sanctions is denied.

16   Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

17   Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20   Dated: September 25, 2007

21                          HON. EDWARD A. INFANTE (Ret.)
                            Discovery Master

22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT  1  PAGE  14

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 26, 2007, I served the attached ORDER GRANTING IN PART AND DENYI8NG IN PART MATTEL'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO THIRD NOTICE OF DEPOSITION UNDER RULE 30(b)(6); DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 26, 2007, at San Francisco, California.

_Sandra Chan_

Sandra Chan

EXHIBIT __1__   PAGE __15__

.

**EXHIBIT 2**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                     EASTERN DIVISION

12  CARTER BRYANT, an individual,       CASE NO. CV 04-9049 SGL (RNBx)

13             Plaintiff,               Consolidated with
                                        Case No. CV 04-09059
14       vs.                            Case No. CV 05-02727

15  MATTEL, INC., a Delaware            THIRD NOTICE OF DEPOSITION OF
    corporation,                        MGA ENTERTAINMENT, INC.
16                                       PURSUANT TO FEDERAL RULE OF
               Defendant.               CIVIL PROCEDURE 30(B)(6)
17
                                        Discovery Cut-Off: October 22, 2007
18                                       Pre-Trial Conference: January 14, 2008
    AND CONSOLIDATED ACTIONS            Trial Date: February 12, 2008
19

20

21

22

23

24

25

26

27

28

07209/2048031.1

                                        06|05|c7

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 26, 2007 beginning on 9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017. Pursuant to Fed. R. Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf concerning each of the topics set forth in Exhibit A hereto.

PLEASE TAKE FURTHER NOTICE that the deposition will take place before a duly authorized notary public or other officer authorized to administer oaths at depositions, and will continue from day to day, Sundays, Saturdays and legal holidays excepted, until completed.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(2), the deposition will be videotaped. Mattel also reserves the right to use Livenote or other technology for real-time transcription of the testimony.

DATED: June 5, 2007                QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By _____
     Michael T. Zeller
     Attorneys for Mattel, Inc.

-1-

THIRD NOTICE OF DEPOSITION OF MGA

EXHIBIT __2__ PAGE __17__

## EXHIBIT A

1.      "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.      "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.      "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or DESIGNS or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith. Without limiting the generality of the foregoing, and contrary to MGA's recent assertions in connection with other Mattel discovery requests, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

07209/2048031.

-2-

THIRD NOTICE OF DEPOSITION OF MGA

EXHIBIT  2   PAGE   18

4.   "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

5.   "ANGEL" refers to those projects, products, dolls or DESIGNS, sometimes called "Angel Faces" and/or "Prayer Angels," that MGA has claimed are the subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20, MGA000724-28 and MGA000734. Without limiting the generality of the foregoing, and contrary to MGA's recent assertions in connection with other Mattel discovery requests, the term "ANGEL" does not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

6.   "IDENTIFY" or "IDENTITY" means the following:

(a)   With reference to an individual, means such individual's name, current or last known business title, current or last known business affiliation, current or last known relationship to YOU, current or last known residential and business address, and current or last known telephone number.

(b)   With reference to an entity or governmental organization, means such entity's or organization's name, present or last-known address, and present or last-known telephone number and the IDENTITY of each individual who has served or participated as a contact for or on behalf of such entity or organization.

(c)   With reference to an account with a bank or financial institution, means the name and address of the bank or financial institution, the account

-3-

EXHIBIT __2__ PAGE __19__

number(s) for or otherwise associated with such account and the name of each holder, including without limitation each beneficial holder, of each such account.

(d)    With reference to a STORAGE DEVICE, means the manufacturer name, brand, model name and number, serial number and all other manufacturer identifiers, and the technical specifications and capacities of such STORAGE DEVICE.

7.    "ACTION" means this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

8.    "DIGITAL INFORMATION" means any information created or stored digitally, including but not limited to electronically, magnetically or optically.

9.    "STORAGE DEVICE" means any computer hard drive, memory, USB device, tape, storage array or any other device or medium that allows a user, whether permanently, temporarily or otherwise, to create, generate, transmit, copy, retain, store or maintain DIGITAL INFORMATION.

10.    "EMPLOYEE AGREEMENT" or "EMPLOYEE AGREEMENTS" means any agreement or contract between YOU and any of YOUR employees that purports to assign to, convey to or vest in YOU in any manner, whether in whole or in part, and whether expressly or by implication or in effect, any right, title or interest in any such employee's inventions, works, work product, ideas, concepts, discoveries, improvements, processes, developments, DESIGNS, know-how, data and/or formulae.

11.    "FAMILY MEMBER" means any PERSON who at any time is, was or has been a parent, spouse, or child of another PERSON.

12.    "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing,

07209/2048031.

-4-

1  mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting,

2  negating, revoking or otherwise relating to in any manner.

3      13.    "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as

4  those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and

5  Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings

6  and records of every type and description including, but not limited to, contracts,

7  agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"),

8  records of telephone conversations, handwritten and typewritten notes of any kind,

9  statements, reports, minutes, recordings, transcripts and summaries of meetings, voice

10 recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and

11 records of all types, studies, instruction manuals, policy manuals and statements, books,

12 pamphlets, invoices, canceled checks and every other device or medium by which or

13 through which information of any type is transmitted, recorded or preserved.  Without

14 any limitation on the foregoing, the term "DOCUMENT" shall include all copies that

15 differ in any respect from the original or other versions of the DOCUMENT, including,

16 but not limited to, all drafts and all copies of such drafts or originals containing initials,

17 comments, notations, insertions, corrections, marginal notes, amendments or any other

18 variation of any kind.

19     14.    "PERSON" or "PERSONS" means all natural persons, partnerships,

20 corporations, joint ventures and any kind of business, legal or public entity or

21 organization, as well as its, his or her agents, representatives, employees, officers and

22 directors and any one else acting on its, his or her behalf, pursuant to its, his or her

23 authority or subject to its, his or her control.

24     15.    The singular form of a noun or pronoun includes within its meaning

25 the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine

26 form of a pronoun also includes within its meaning the feminine form of the pronoun so

27 used, and *vice versa*; the use of any tense of any verb includes also within its meaning

28

07209/2048031.

-5-

THIRD NOTICE OF DEPOSITION OF MGA

EXHIBIT  2  PAGE  21

all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

### Topics of Examination

1.     The IDENTITY, current or last known location, and disposition of each STORAGE DEVICE that each of the following PERSONS has used to create, generate, prepare, draft, send and/or receive any DOCUMENT or DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL at any time since January 1, 1999, including without limitation the date of acquisition and the date of disposition of each such STORAGE DEVICE:

Isaac Larian

Farhad Larian

Paula Garcia

BRYANT

Kami Gillmour

Veronica Marlow

Mercedeh Ward

Margaret Hatch-Leahy

Jennifer Maurus

Judy Rich

Ninette Pembleton

Kerri Brode

Victoria O'Connor

Aileen Storer

Charles O'Connor

Helene Bartels

Colleen O'Higgins

1  Vivian Matt

2  Maureen Mullen

3  Rachel Harris

4  Barbara Malcolm

5  David Dees

6  Ben Ton

7  Dave Malacrida

8      2.    The IDENTITY, current or last known location, and disposition of

9  each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of this

10  Notice, including without limitation the date of creation and the date of disposition of

11  each such backup or copy.

12      3.    YOUR search for and production of DOCUMENTS and DIGITAL

13  INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this Notice.

14      4.    Each of YOUR EMPLOYEE AGREEMENTS since January 1,

15  1995, including without limitation the meaning, validity and enforcement of such

16  EMPLOYEE AGREEMENTS.

17      5.    Any requirement or practice by YOU, at any time since January 1,

18  1995, that YOUR employees sign or execute EMPLOYEE AGREEMENTS.

19      6.    YOUR statements to Christopher Palmeri in connection with the

20  *Business Week* article entitled "To Really Be A Player, Mattel Needs Hotter Toys,"

21  published on or about July 28, 2003, including without limitation in connection with the

22  statement that Isaac Larian "got the idea for Bratz after seeing his own kids run around

23  in navel-bearing tops and hip-huggers."

24      7.    YOUR statements to Denise I. O'Neal in connection with the

25  *Chicago Sun-Times* article entitled "Bratz Packers Are What's Cool in Doll World,"

26  published on or about March 5, 2004, including without limitation in connection with

27  the statements that MGA's "creative team decided the name should be catchy and not

28

THIRD NOTICE OF DEPOSITION OF MGA

EXHIBIT __2__ PAGE __23__

1   have more than six letters. Keeping with today's trend of making names more 'cool' by

2   changing the spelling, MGA executives decided to replace the 's' with a 'z.'"

3         8.   YOUR statements to Jeff Weiss in connection with the *San*

4   *Fernando Valley Business Journal* article entitled "Immigrant's Creative Company

5   Shakes Up Toy Industry," published on or about March 29, 2004, including without

6   limitation in connection with the statement that "[i]t was Jason's idea for Bratz."

7         9.   The IDENTITY of each PERSON who YOU had perform, or who

8   YOU requested, asked or solicited to perform, any "test project" in advance of or in

9   consideration of employment by YOU since January 1, 1995, including without

10  limitation the IDENTITY of each such PERSON who was a MATTEL employee at the

11  time.

12        10.  YOUR relationship with Stephen Lee since April 1, 2004, including

13  without limitation any agreements or contracts between YOU and Stephen Lee.

14        11.  Payments of money or any other item of value that YOU have made

15  to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac Larian since

16  January 1, 1999, including without limitation (a) the amounts of such payment and the

17  equivalent dollar value of each of item of value, (b) the dates of such payment, (c) the

18  IDENTITY of each recipient of such payment, (d) the IDENTITY of each bank or

19  financial institution account to which such payment was made and (e) the reasons for

20  each such payment.

21        12.  Payments of money or any other item of value that YOU have made

22  to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad Larian since

23  January 1, 1999, including without limitation (a) the amounts of each such payment and

24  the equivalent dollar value of each of item of value, (b) the timing of each such

25  payment, (c) the IDENTITY of each recipient of each such payment, (d) the

26  IDENTITY of each bank or financial institution account to which such payment was

27  made and (e) the reasons for each such payment.

28

-8-

13.     Payments of money or any other item of value that YOU have made to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad Zarabi since January 1, 1999, including without limitation (a) the amounts of each such payment and the equivalent dollar value of each of item of value, (b) the timing of each such payment, (c) the IDENTITY of each recipient of each such payment, (d) the IDENTITY of each bank or financial institution account to which such payment was made and (e) the reasons for each such payment.

14.     The nature, extent and timing of work and services that Veronica Marlow, Amy Myers, Sarah Halpern, Maureen Mullen and David Dees provided to, or were requested, solicited or proposed by, YOU at any time from January 1, 1999 through December 31, 2001, inclusive.

15.     Payments of money or any other item of value that YOU have made to Veronica Marlow, Amy Myers, Sarah Halpern, Maureen Mullen and David Dees since January 1, 1999, including without limitation (a) the amounts of each such payment and the equivalent dollar value of each of item of value, (b) the timing of each such payment, (c) the IDENTITY of each recipient of each such payment, (d) the IDENTITY of each bank or financial institution account to which such payment was made and (e) the reasons for each such payment.

16.     The IDENTITY of each PERSON who is not, as of June 5, 2007, an MGA employee and for whom or on behalf of whom YOU are paying, have paid or have offered, promised or agreed to pay fees or costs in connection with this ACTION, any contracts, agreements or other DOCUMENTS between YOU and such PERSON pertaining thereto, the amounts YOU have so paid or agreed to pay to such PERSON and the dates on which such payments were made.

**EXHIBIT 3**

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5      (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
7   Facsimile:  (213) 443-3100

8   Attorneys for Plaintiff Mattel, Inc.

9                   UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                        EASTERN DIVISION

12  CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)

13            Plaintiff,                    Consolidated with Case Nos. CV 04-
                                            9059 and CV 05-2727
14         vs.
                                            MATTEL, INC.'S SUPPLEMENTAL
15  MATTEL, INC., a Delaware                INTERROGATORY PURSUANT TO
    corporation,                            ORDER DATED SEPTEMBER 25,
16                                          2007
             Defendant.
17  ─────────────────────────              Discovery Cut-off:  January 14, 2008
                                            Pre-trial Conference:  April 7, 2008
18  AND CONSOLIDATED ACTIONS                Trial Date:  April 29, 2008

19                                          Discovery Cutoff:  March 3, 2008
                                            Final Pretrial Conf.:  June 2, 2008
20                                          Trial Date:  July 1, 2008

21

22

23  PROPOUNDING PARTY:       Mattel, Inc.

24  RESPONDING PARTIES:      MGA Entertainment, Inc.

25  SET NO.:                 SUPPLEMENTAL

26

27

28

07209/2254170.1

                                10-19

                              MATTEL'S SUPPLEMENTAL INTERROGATORY

EXHIBIT __3__ PAGE __26__

Pursuant to <u>Federal Rule of Civil Procedure</u> 33 and the Court's Order dated September 25, 2007, plaintiff Mattel, Inc. ("Mattel") hereby requests that MGA Entertainment, Inc. answer the following Interrogatory separately and fully, in writing and under oath, within 30 days after service hereof. MGA Entertainment, Inc. shall be obligated to supplement its response to the Interrogatory at such times and to the extent required by the <u>Federal Rules of Civil Procedure</u>.

## Definitions

1.    "MGA," "YOU" and "YOUR" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, experts, divisions, AFFILIATES (including without limitation MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V.), predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control. Without limiting the foregoing, "MGA" includes the entities known as ABC International Traders or ABC International Traders, Inc. For purposes of the these Interrogatories, "MGA" does not include BRYANT.

2.    "MATTEL" means Mattel, Inc., its current employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, AFFILIATES, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

3.    "AFFILIATES" means any and all corporations, proprietorships, d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or indirectly, in whole or in part, own or control, are under common ownership or control with, or are owned or controlled by a PERSON, party or entity, including without limitation each parent, subsidiary and joint venture of such PERSON, party or entity.

4.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or

1 | organization, as well as its, his or her agents, representatives, employees, officers and
2 | directors and any one else acting on its, his or her behalf, pursuant to its, his or her
3 | authority or subject to its, his or her control.

4 |      5.     "DESIGN" or "DESIGNS" means any and all representations,
5 | whether two-dimensional or three-dimensional, and whether in tangible, digital,
6 | electronic or other form, including but not limited to all works, designs, artwork,
7 | sketches, drawings, illustrations, representations, depictions, blueprints, schematics,
8 | diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to
9 | practice, developments, inventions and/or improvements, as well as all other items,
10 | things and DOCUMENTS in which any of the foregoing are or have been expressed,
11 | embodied, contained, fixed or reflected in any manner, whether in whole or in part.

12 |      6.     "DOCUMENT" or "DOCUMENTS" means all "writings" and
13 | "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil
14 | Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited
15 | to, all writings and records of every type and description including, but not limited to,
16 | contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail
17 | ("e-mail"), records of telephone conversations, handwritten and typewritten notes of
18 | any kind, statements, reports, minutes, recordings, transcripts and summaries of
19 | meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes,
20 | discs, printouts and records of all types, studies, instruction manuals, policy manuals
21 | and statements, books, pamphlets, invoices, canceled checks and every other device or
22 | medium by which or through which information of any type is transmitted, recorded or
23 | preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall
24 | include all copies that differ in any respect from the original or other versions of the
25 | DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or
26 | originals containing initials, comments, notations, insertions, corrections, marginal
27 | notes, amendments or any other variation of any kind.
28 |

-3-

EXHIBIT __3__ PAGE __28__

7.   "REFER OR RELATE TO" a given subject matter means relate to, refer to, constitute, contain, embody, depict, incorporate, reflect, evidence, identify, state, deal with, comment on, respond to, describe, analyze, support, refute, contradict, or in any way pertain to that subject matter, either directly or indirectly.

8.   "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

9.   "TEST PROJECT" means any DESIGN, project, assignment or other work of any kind created, developed, improved upon or performed by any candidate, interviewee, applicant or prospective or potential employee or independent contractor in advance of, in consideration of, or otherwise as part of or in connection with any interview or interviewing process for, employment or contracting or potential employment or contracting of any kind.

10.   "IDENTIFY" or "IDENTITY" means the following:

(a)   with reference to an individual or individuals, means to state, fully and separately as to each, such individual's full name, any known business title, current or last known business affiliation, current or last known residential address, current or last known business address, current or last known relationship to MGA, and current or last known telephone number.

(b)   with reference to an entity or entities, means to state, fully and separately as to each, such entity's full name, state (or country) of incorporation or organization, present or last known address, and present or last known telephone number.

(c)   with reference to any other DOCUMENT or DOCUMENTS, means to describe each DOCUMENT by Bates number.   In the event that a

07209/2254170.1

-4-

1   DOCUMENT does not have a Bates number, IDENTIFY means, with respect to each

2   such DOCUMENT, to provide a complete description of it such that it may be the

3   subject of a request for the production of documents, including by stating the date,

4   identity of the author, addressee(s), signatories, parties, or other PERSONS identified

5   therein, its present location or custodian and a description of its contents.

6           (d)     with reference to a TEST PROJECT, means to IDENTIFY

7   the individual who performed, or was requested, asked or solicited to perform, the

8   TEST PROJECT, including without limitation by stating whether the individual was a

9   MATTEL employee at the time; to IDENTIFY the individual who requested, asked for

10   or solicited the TEST PROJECT or caused the TEST PROJECT to be performed; to

11   provide a detailed, full and complete description of the DESIGN, project, assignment or

12   other work that was performed or that was requested, asked or solicited to be

13   performed; and to state the date(s) on which the TEST PROJECT was performed or

14   was requested, asked or solicited to be performed.

15           11.    "Any" as used in these interrogatories includes the word "all," and

16   the word "all" as used in these interrogatories includes the word "any." The singular

17   form of a noun or pronoun includes within its meaning the plural form of the noun or

18   pronoun so used, and vice versa; the use of the masculine form of a pronoun also

19   includes within its meaning the feminine form of the pronoun so used, and vice versa;

20   the use of any tense of any verb includes also within its meaning all other tenses of the

21   verb so used, whenever such construction results in a broader request for information;

22   and "and" includes "or" and vice versa, whenever such construction results in a broader

23   disclosure of documents or information.

24

25

26

27

28

-5-

MATTEL'S SUPPLEMENTAL INTERROGATORY

EXHIBIT _3_ PAGE _30_

## Instructions

A.    When    an    interrogatory    requests    disclosure    of    a COMMUNICATION or other information as to which YOU claim any privilege or protection as a ground for nondisclosure, identify each PERSON who participated in or had knowledge of the COMMUNICATION or other information and provide the following:

(i)    the privilege or protection that YOU claim precludes disclosure;

(ii)    the subject matter of the COMMUNICATION or information (without revealing the content as to which the privilege is claimed); and

(iii)    any additional facts or grounds on which YOU base YOUR claim of privilege or protection.

B.    When an interrogatory requests that YOU provide information, YOU are required to supply all information known by or available to YOU or YOUR employees, officers, directors, agents, representatives, attorneys and experts. If YOU cannot completely answer the interrogatory after making diligent efforts to do so, please so state. Then describe in detail all efforts made to answer the interrogatory; identify every PERSON involved in such efforts; and state the additional information YOU need, if any, to respond completely to the interrogatory.

07209/2254170.1

-6-

MATTEL'S SUPPLEMENTAL INTERROGATORY

EXHIBIT __3__ PAGE __31__

1

**Interrogatory**

2

3  SUPPLEMENTAL INTERROGATORY:

4          IDENTIFY, fully and completely, each and every TEST PROJECT that

5  YOU caused, had, requested, asked or solicited any PERSON to perform during the

6  time period January 1, 1998 through December 31, 2004, inclusive, and IDENTIFY all

7  PERSONS with knowledge thereof and all DOCUMENTS that REFER OR RELATE

8  TO such TEST PROJECT.

9

10  DATED:  October 19, 2007          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
11

12                          By
                                    B. Dylan Proctor
13                                  B. Dylan Proctor
                                    Attorneys for Plaintiff
14                                  Mattel, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT __3__ PAGE __32__

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On October 19, 2007, I served true copies of the following document(s) described as

1.    **MATTEL, INC.'S SUPPLEMENTAL INTERROGATORY PURSUANT TO ORDER DATED SEPTEMBER 25, 2007**

on the parties in this action as follows:

Thomas Nolan, Esq.
**SKADDEN ARPS SLATE MEAGHER & FLOM, LLP**
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Mark E. Overland, Esq.
David C. Scheper, Esq.
Alexander H. Cote
**OVERLAND BORENSTEIN SCHEPER & KIM LLP**
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071-3144

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 19, 2007, at Los Angeles, California.

_____
NOW LEGAL -- Dave Quintana

07209/2261472.1

-1-

EXHIBIT __3__ PAGE __33__

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On October 19, 2007, I served true copies of the following document(s) described as **MATTEL, INC.'S SUPPLEMENTAL INTERROGATORY PURSUANT TO ORDER DATED SEPTEMBER 25, 2007** on the parties in this action as follows:

Michael H. Page, Esq.
**KEKER & VAN NEST, LLP**
710 Sansome Street
San Francisco, CA 94111

**BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 19, 2007, at Los Angeles, California.

Charlene Ho

07209/2261487.1

EXHIBIT ___3___ PAGE __34__

**EXHIBIT 4**

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 5**

1  ROBERT F. MILLMAN, Bar No. 062152
2  DOUGLAS A. WICKHAM, Bar No. 127268
   KEITH A. JACOBY, Bar No. 150233
3  LITTLER MENDELSON
   A Professional Corporation
4  2049 Century Park East, 5th Floor
   Los Angeles, CA 90067.3107
5  Telephone: 310.553.0308
   Facsimile: 310.553.5583
6  Attorneys for Plaintiff
   CARTER BRYANT

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  CARTER BRYANT, an individual        Case No.
12
                    Plaintiff,          **COMPLAINT FOR:**
13
         v.                             **DECLARATORY RELIEF OF**
14                                      **COPYRIGHT NON-**
    MATTEL, INC., a Delaware            **INFRINGEMENT**
15  corporation
16                  Defendant.
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT B**   31

EXHIBIT 5 PAGE 51

1    Plaintiff Carter Bryant ("Bryant") for his complaint against Defendant
2    Mattel, Inc. ("Mattel") alleges as follows:

3                               **PARTIES**

4        1.    Bryant is an individual residing in Springfield-Greene County,
5    Missouri.

6        2.    Bryant is informed and believes, and based thereon alleges, that Mattel
7    is a Delaware corporation with a principal place of business at 333 Continental
8    Boulevard, El Segundo, California.

9                    **JURISDICTION AND VENUE**

10       3.    This is an action under 28 U.S.C. §§ 2201 and 2202 for declaratory
11   relief and further relief based upon a declaratory judgment or decree and the
12   Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*  This Court has original subject
13   matter jurisdiction over Bryant's claim pursuant to 28 U.S.C. §§ 1331 and 1338(a)
14   & (b).

15       4.    This Court has personal jurisdiction over Mattel, as it conducts
16   continuous, systematic and routine business within the State of California and the
17   County of Los Angeles.

18       5.    Venue is proper in the United States District Court for the Central
19   District of California pursuant to 28 U.S.C. §§ 1391(b) & (c).

20                       **BACKGROUND FACTS**

21       6.    Bryant is the creative genius and inspiration behind an immensely
22   successful line of fashion dolls called "Bratz."

23       7.    Since its debut on the market in June, 2001, the "Bratz" line has
24   revitalized and invigorated the fashion-doll industry, long dominated by Mattel's
25   "Barbie" dolls.

26       8.    Mattel, however, does not like the competition.

27

28

                               2

**EXHIBIT B**         32

EXHIBIT __5__ PAGE __52__

9.   First, Mattel, the world's largest toy company, tried, and failed, to drive "Bratz" out of the market by, *inter alia,* introducing competing products that copy the fresh, new and trendy look of "Bratz."

10.   When this failed, Mattel resorted to other tactics – suing Bryant, three and one half years after the launch of "Bratz," in California state court accusing him, among other things, of the alleged "conversion" of Mattel's "ideas, concepts, rights, designs, proprietary information, and other intellectual property and intangible property."

11.   Recent events discussed herein reveal what Mattel intends by this vague and overly-broad pleading.  Mattel intends to try to obtain control over the rights to "Bratz," apparently based, in whole or in part, on grounds that "Bratz" was allegedly copied from and infringes upon a scrapped Mattel project called "Toon Teens," or some other as yet undisclosed Mattel property, which Bryant was supposedly exposed to during a period of time when he was employed by Mattel.

12.   Bryant did not copy or infringe anything in coming up with "Bratz." Since these copyright issues cannot be resolved in state court, due to federal preemption, Bryant has a reasonable fear that Mattel will bring another lawsuit against him for copyright infringement.

13.   Bryant brings this action, accordingly, for a Declaratory Judgment that his past, present, and continuing contributions to and work on the conception and development of "Bratz" did not and do not violate or infringe any copyrights or intellectual or other property owned by Mattel.

### Carter Bryant's Background

14.   Bryant is a creative, innovative, artistic person who since an early age has had a special interest in dolls and fashion design.

15.   As a young boy, when his family could not afford to buy him toys, Bryant would draw them.  Dolls and puppets were particular favorites.  While still very young, Bryant began constructing marionettes from papier-mache.

3

EXHIBIT 8   : 33

EXHIBIT  5   PAGE  53

16.    By age nine, Bryant had begun to draw fashions.  Fashion soon became a passion.  He bought books on Hollywood costume design and studied them intensely.  He made designs for his puppets and drew characters and outfits for them.  He even won a contest drawing "Archie" comic book characters and considered becoming a comic book artist.

17.    Bryant took art classes throughout junior high and high school.  He also began reading, and studying, fashion magazines such as "Vogue" and "Harper's Bazaar," thinking he might one day have a career in fashion design.  He began creating his own fashions based on what he saw in such magazines.

18.    After high school, Bryant considered going to design school, but gave up the dream when he realized that his family could not afford to send him.

19.    Instead, he tried songwriting for a while, and even formed a band in 1988.  For several years, he took dead-end jobs to make ends meet, such as stocking shelves at Toys 'R' Us.  But Bryant never let go of his dream, or gave up his interest in drawing and design.

20.    In 1993 he applied and was accepted to Parsons School of Design in Paris.  Based on the information contained in Parsons' website, since its founding in 1896, Parsons has been a forerunner in the field of art and design and was the first art and design school in America to found a campus abroad in 1920.

21.    Unfortunately, despite loans and work programs, attendance was cost-prohibitive.  Bryant went, instead, to Otis College of Art and Design in Los Angeles.  According to its website, Otis began in 1918, when Los Angeles Times founder Harrison Gray Otis bequeathed his MacArthur Park property for a public art college.  Otis is a four-year college offering bachelor's degrees in a variety of art and design-related areas including architecture, fine arts, fashion design and toy design.

22.    On an accelerated track, Bryant finished his entire first year in just 5 months, from January to June of 1994.  He then applied and was accepted to

4

**EXHIBIT B**    34

EXHIBIT  5  PAGE  54

1  transfer to Parsons, however, again he could not raise enough money to go. He

2  stayed one more semester at Otis, but with only a small scholarship and mounting

3  debt, Bryant left the school in December, 1994. He went home to Missouri for

4  Christmas and ended up staying.

5      23.    Realizing that going to Paris and working as a fashion designer was

6  simply not economically feasible, Bryant got the idea that he might be able to

7  combine his love of dolls and fashion by becoming a fashion designer for dolls in

8  the toy industry. Naturally thinking of "Barbie," the fashion doll that had

9  dominated the market for decades, he put together a portfolio of ten or so drawings

10  to send to Mattel, but lacked the confidence to actually send it to such a huge,

11  intimidating company.

12      24.    By 1995, however, he decided he had nothing to lose. Broke and with

13  no real career opportunities in sight, Bryant sent the package to Mattel.

14          **Bryant's Employment by Mattel**

15      25.    Much to his surprise, Mattel called him for an interview. After

16  completing a "trial project" for the company at its request prior to his being

17  considered for formal employment, he was hired as a temporary employee in

18  September, 1995. He was promoted to a full-time position in November, 1995.

19      26.    During his time at Mattel, Bryant worked exclusively on "Barbie"-

20  related projects for the "Barbie" family of dolls, as directed by Mattel's marketers.

21  Mattel told him what they wanted him to design, and he did what he was directed to

22  do.

23      27.    On occasion, Bryant would offer new, original and creative ideas to

24  Mattel, but Mattel discouraged anything non-traditional. No matter what the idea

25  was, Mattel would try to figure out a way to use it for "Barbie," or not at all.

26      28.    Bryant felt that his creativity and originality were being stifled and

27  suppressed at Mattel.

28

EXHIBIT A

35

EXHIBIT __5__ PAGE __55__

29.    Within two years at Mattel, Bryant was feeling frustrated.  He simply did not fit Mattel's mold.  He also missed his family, and so decided to return home to Missouri.  With some significant design and work experience under his belt, he thought he might be able to build a career as a freelance design artist.

30.    He left California in approximately January 1998, but continued to work for Mattel from Missouri, on a part-time basis, until April, 1998.

### Bryant's Inspiration: "Bratz"

31.    ~~Bryant continued to live with his parents in Missouri for the rest of the~~ 1998, working exclusively on his own ideas and drawings, with the hopes of building a career as a freelance artist.

32.    Among other things, Bryant created greeting cards, and considered going into the greeting card business.  He even applied for a job at Hallmark. Bryant also did a bit of freelance design and artwork for Ashton Drake Galleries of Chicago.  On information and belief, Ashton Drake is the world's largest direct marketer of limited edition, collectible porcelain dolls, and its dolls have sold at auction for as much as $1200.  It is widely renowned among doll collectors for its top-quality, handcrafted collectible dolls.  Ashton Drake employs artists and freelancers to work on its doll programs and new doll concepts.  Bryant worked on "Angel" and "Wedding" theme projects for the company in 1998.  He supplemented his income by working at a clothing store, Old Navy.  But Bryant also worked on his own ideas for dolls – his lifelong obsession.  One day, while returning home from Old Navy, Bryant drove past a high school and had a "eureka" moment.  Inspired by the "bratty" attitude he had observed, as well as advertisements that he had seen relating to hip-hop fashions and other trends of the time, Bryant started sketching multi-ethnic, urban youth, dressed in trendy fashions. Bryant tried to capture in his sketches the "bratty" attitude he had observed.  Little did he know then that his concept, "Bratz," would become a national, indeed, international, sensation.

6

**EXHIBIT A**      3b

EXHIBIT  5  PAGE  5b

33.    Bryant was simply trying to figure out a way to make a living doing what he enjoyed.  Unable to support himself as a freelance artist, however, and turning thirty and not wanting to live at home forever, Bryant realized he needed a steady job.  Based on Mattel's comments to him before he left its employ in 1998 indicating an interest in having him remain with the company, he reapplied and secured a position with Mattel starting in January 1999.

34.    Mattel hired Bryant back to work exclusively on Mattel's "collectibles" line, a high-end, expensive line of "Barbie" dolls designed for adult doll collectors, not children.  He began working for the company again on January 4, 1999.  Again, Mattel's marketing department directed Bryant to create the designs it wanted to market.

35.    Bryant never showed Mattel the ideas, drawings, designs and concepts that he had worked on on his own while he had been gone from the company, including the concept for what later became the "Bratz" dolls.  He already knew that Mattel was not receptive to new, creative, innovative ideas.  Besides that, they were his, and he was afraid that Mattel would not give him credit or compensation.

36.    One day he happened to show his concept for "Bratz" dolls to a friend who did freelance work for MGA Entertainment, Inc.  ("MGA").

37.    Bryant's friend thought that MGA might be interested in talking to Bryant, and arranged a meeting.

38.    MGA ultimately offered Bryant a consulting arrangement.  His agreement with MGA was signed on or about October 4, 2000.  Bryant resigned from Mattel immediately, giving two weeks notice, but stayed at the company until October 20 to finish up and transition the projects on which he had been working.

39.    On information and belief, MGA was founded in 1979 as a small consumer electronics business and made its first foray into the toy business in 1987 marketing handheld LCD games featuring licensed "Nintendo" characters, where its initial success allowed it the opportunity to obtain additional licenses for such

**EXHIBIT B**          37

EXHIBIT 5  PAGE 57

1  popular properties as the "Power Rangers" and others.  By the time Bryant started
2  working for MGA in late 2000, the company was selling other kinds of toys and
3  dolls.

4      40.    After leaving Mattel, Bryant began working with a team of MGA
5  employees and freelancers to develop and physically embody Bryant's concept.
6  The development took substantial time, effort, creativity, money, and know-how,
7  but with this effort, Bryant's concept for "Bratz" dolls was reduced to practice and
8  became a reality.

9          **"Bratz" Dolls Revolutionize The Fashion Doll Market**

10     41.    MGA first unveiled the "Bratz" doll concept at the Hong Kong Toy
11  Fair in January 2001.  In June 2001, MGA introduced the line to the market.

12     42.    Unlike Barbie Dolls, the "Bratz" line of dolls and branded products
13  (collectively "Bratz Dolls") sport a hip, multi-ethnic urban look that appeals to
14  contemporary teenage and pre-teen girls.  At approximately 9.5 to 10 inches tall,
15  the Bratz Dolls are intentionally shorter than Barbie Dolls and look notably
16  different, with large heads, big dramatic eyes and lips, small, thin bodies, oversized
17  feet (to emphasize shoe fashion and to stand on their own, unlike "Barbie," which
18  requires a stand), and up-to-date fashions.

19     43.    Featuring and embodying the slogan "The Girls With a Passion for
20  Fashion!", Bratz Dolls, invigorated, transformed and expanded the fashion doll
21  market, in particular proving popular among "tween" age girls – *i.e.,* those between
22  childhood and adolescence – who Mattel had all but abandoned as a market.

23     44.    On information and belief, the "Bratz" line has been praised by
24  consumers, retailers and toy industry analysts alike.  In 2001, the "Bratz" line won
25  the Toy Industry Association ("TIA") People's Choice Toy of the Year Award, the
26  Family Fun Toy of the Year Award and Toy Wishes Hot Pick Award.  In 2002, the
27  "Bratz" line again won the TIA People's Choice Toy of the Year Award, the
28  Family Fun Toy of the Year Award.  LIMA, the licensing industries official arm,

8

**EXHIBIT B**      38

EXHIBIT 5  PAGE 5D

1    awarded MGA's "Bratz" the best character license of the year as well as the overall

2    best licensed property of the year for 2003.  MGA's "Bratz" also earned the coveted

3    TIA "Property of the Year" and "Girl Toy of the Year," in 2003, as well as the

4    Family Fun Toy of the Year Award.  MSNBC named "Bratz" the "Hottest Toy of

5    the Year," and both MGA and "Bratz" received several other accolades.

6        45.    According to media reports and business analysts, this success caught

7    Mattel by surprise, with many Mattel insiders reportedly assuming that Bratz would

8    be a short-lived fad.

9        46.    As it turned out, "Bratz" was not a fleeting fancy among young girls.

10       47.    Beginning in 2002, "Bratz" really gave "Barbie" a run for its money

11   as the top selling fashion doll.

12       48.    Bryant continues to contribute to, and provide ideas, concepts and

13   designs for "Bratz" on an ongoing basis as a designer and consultant for MGA.  For

14   example, Bryant designed a wholly original male character for MGA, which was

15   turned into the "Bratz Boyz" line of dolls by MGA.

16                **Mattel's Market Response to "Bratz"**

17       49.    In response to "Bratz", Mattel, in 2002, rushed to release "My Scene

18   Barbie," a line of fashion dolls under the "Barbie" name that looked much more

19   like "Bratz" than the traditional main line "Barbie" Doll.  Like "Bratz," "My Scene

20   Barbie" dolls have oversized heads, artfully made-up almond-shaped eyes, large,

21   overly-lined and lipsticked lips, trendy clothes and hair styles, over-sized feet and a

22   more ethnic look.  Like the "Bratz" Dolls, "My Scene" Dolls are packaged with two

23   outfits and an accessory.  And, since fall 2003, like the "Bratz, which are

24   introduced with themes, "My Scene" Dolls are introduced with a theme as well.

25       50.    After the success of MGA's "Bratz Boyz" dolls, Mattel also

26   introduced male doll characters to the "My Scene" line, even though for 45 years

27   the "Barbie" line had only included a single male doll – Barbie's boyfriend "Ken"

28

**EXHIBIT B**     39

EXHIBIT **5** PAGE **59**

1   (whom, after 45 years as her boyfriend, Barbie "dumped" in a 2004 Mattel publicity

2   stunt to revive "Barbie" in the face of the "Bratz" success).

3       51.   On information and belief, the "My Scene" Dolls, however, have not

4   come close to achieving the popularity and acclaim of "Bratz."

5       52.   A year after the debut of "My Scene," Mattel launched "Flavas," a line

6   of urban fashion dolls also intended to appeal to the "tween" market. "Flavas,"

7   were poorly received by children, parents and the toy industry, and Mattel

8   discontinued the line less than a year after its launch.

9         **Mattel's Accusations of Copyright Infringement Against Bryant**

10      53.   Unable to supplant "Bratz" – the more popular, better quality product

11   – with the inferior and less popular "Flavas" or even "My Scene," Mattel changed

12   tactics. It turned to disparaging Bryant, and accusing him of copying from Mattel.

13      54.   In or about July 2003, Mattel "sources" told a *Wall Street Journal*

14   reporter that "[I]nside Mattel, some are convinced the BRATZ borrow liberally

15   from a Mattel project that was scrapped at the testing stage in 1998." Attached

16   hereto as Exhibit A is a true and correct copy of this article.

17      55.   Mattel's thinly veiled accusation of copyright infringement against

18   Bryant took more substantive form when, in April, 2004, Mattel sued Bryant in

19   California state court for, among other things, allegedly "converting" Mattel's

20   intellectual property (the "Bryant Litigation"). Bryant sought discovery from

21   Mattel, accordingly, regarding any Mattel idea, concept, project or product

22   allegedly stolen or copied by Bryant, including "Toon Teens," "Diva Stars," and

23   "My Scene." Faced with objections from Mattel, Bryant offered to take no further

24   discovery on such issues if Mattel would enter into a fact stipulation that it would

25   not claim that Bryant copied "Bratz" from Mattel's "Toon Teens." Mattel refused

26   to enter into such a stipulation. For reasons unknown, Mattel has not yet sued

27   Bryant for copyright infringement. It has, however, enlisted a surrogate to take a

28

10

**EXHIBIT B**   40

EXHIBIT <u>5</u> PAGE <u>60</u>

1   first-run at attempting to establish infringement, perhaps intending to see what the

2   outcome might be before launching a direct attack itself.

3       56.    Specifically, in 2002, MGA filed suit in Hong Kong against the

4   manufacturers of "Funky Tweenz" (known infringers of intellectual property in the

5   toy industry) (the "Hong Kong defendants"). "Funky Tweenz" is a line of "Bratz"

6   knock-off products. In connection with this lawsuit (the "Hong Kong Lawsuit"),

7   Bryant has been informed that MGA filed various documents substantiating its

8   ownership of "Bratz," including with regard to Bryant's involvement in MGA's

9   development of "Bratz" and in its reduction to practice of Bryant's original

10   inspirational sketches. Bryant has also been informed that in August 2004 the

11   Hong Kong defendants produced to MGA's counsel *unreleased photographs* of,

12   and documents relating to, Mattel's "Toon Teens" project – the same project Mattel

13   had mentioned in the *Wall Street Journal* article as the supposed origin of "Bratz."

14   The Hong Kong defendants initially refused, however, to authenticate these

15   documents, or to divulge the source of these photographs. The defendants also

16   refused to explain the purported relevance of the documents to the Hong Kong

17   Lawsuit.

18       57.    Finally, however, Bryant has been informed that on October 7, 2004,

19   the Hong Kong defendants revealed that Mattel was the source of the "Toon Teens"

20   documents and information. Indeed, the Hong Kong defendants have revealed that

21   they – accused copyright infringers -- have a document-sharing agreement with

22   Mattel. Apparently, Mattel prefers to assist known infringers in Hong Kong in

23   trying to prove that Bryant copied Mattel in coming up with "Bratz", instead of

24   trying to prove it themselves in a United States federal court of law – or at least for

25   the time being, that seems to be Mattel's strategy.

26       58.    On information and belief, Mattel, and the same counsel representing

27   it in the Bryant Litigation, have told the Hong Kong defendants that "Bratz" is not

28   an original design and have provided documents and other information to those

**EXHIBIT B**   41

**EXHIBIT 5 PAGE 61**

1   defendants in an effort to assist such infringers to evade liability for copyright

2   infringement of "Bratz" in the Hong Kong action.  On information and belief,

3   Mattel has told the Hong Kong defendants that the "Toon Teens" documents

4   provided to such defendants prove that Bryant copied and infringed Mattel's "Toon

5   Teens" or other Mattel property.

6       59.    Mattel even rushed to register the copyright for its long-shelved "Toon

7   Teens" during the very same month that it claims to have first learned of Bryant's

8   contract with MGA, November, 2003, and using the same counsel that Mattel is

9   using in the Bryant Litigation.  A true and correct copy of this registration is

10  attached hereto as Exhibit B.  Notably, Bryant is informed that the dates on Mattel's

11  "Toon Teens" drawings and pictures reflect that they were created in 1999, *after*

12  Bryant conceived of "Bratz" in 1998.

13      60.    On information and belief, Mattel's copyright registration of "Toon

14  Teens" is no coincidence; it is a preliminary step necessary for Mattel to sue Bryant

15  for copyright infringement.

16      61.    There is no doubt that Mattel intends to get back at Bryant via false

17  allegations and to try to obtain control of Bryant's brainchild any way it can,

18  including falsely alleging that "Bratz" is nothing more than derivative of Mattel's

19  own work(s).  This is wholly untrue.  "Bratz," is an original idea and concept,

20  independently conceived and created during a time when Bryant was not working

21  for Mattel.  The fact that MGA reduced the original designs to practice and further

22  developed "Bratz" into a highly successful product that now competes directly with

23  and has taken market share from Mattel's "Barbie" line of fashion dolls, including

24  as a result of the "Bratz"-inspired and imitating dolls distributed by others, is not to

25  be under-estimated.

26

27

28

EXHIBIT B          42

EXHIBIT _5_ PAGE _62_

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment of Non-infringement)

62.    Bryant repeats and realleges the allegations contained in paragraphs 1 through 61 of this Complaint and incorporates them by reference, as though fully and completely set forth herein.

63.    Bryant has a reasonable apprehension that Mattel will bring an action against him under 17 U.S.C.A. §§ 101, *et seq.* alleging that "Bratz" is not an independent or original work but, rather, is copied, derived from or infringes Mattel's copyrights in "Toon Teens," or some other Mattel work; that Mattel is the rightful owner of his "Bratz" idea, concept or original drawings or works and any copyrights and other intellectual property rights therein; and that Mattel alone possesses the exclusive rights to exploit such rights.

64.    Bryant contends that "Bratz" is his own independent and original idea, concept and work, that "Bratz" dolls were derived from Bryant's original idea, concept and work, and that Mattel has no right in "Bratz" whatsoever.  Bryant denies that he copied any of Mattel's property or work in conceiving and developing "Bratz," and denies that "Bratz" infringes or was derived from any Mattel property or work.

65.    Indeed, "Bratz" and "Toon Teens" are not substantially similar. "Bratz" are sexy, hip, modern fashion dolls with up-to-date fashions, and are designed to look like real teenagers, and the "Bratz" themes and playsets are based on places and activities that real teenagers would go to and do.  Bryant is informed that "Toon Teens," in contrast, appear to be childlike, soft-bodied dolls with "baby-fat" and bright, fantasy-colored hair and are, by Mattel's own statements to the *Wall Street Journal,* "cartoonish."

66.    An actual and justiciable controversy exists between Bryant and Mattel regarding whether Bryant's  ideas, concepts, or designs for, or contributions to,

13

1    "Bratz" were and are original works, or copied from, derivative of or infringing on

2    Mattel's works, be it "Toon Teens," or any other unidentified Mattel work.

3         67.   This actual and justiciable controversy arises under federal copyright

4    law.

5         68.   Bryant seeks Declaratory Judgment of non-infringement; specifically

6    that his ideas, concepts, and designs for, and contributions to, "Bratz" were and are

7    original works, and were and are not copied from, derivative of or infringing on any

8    Mattel work.

9         69.   A judicial declaration of non-infringement is necessary and

10   appropriate at this time pursuant to 28 U.S.C. § 2201, so that Bryant may ascertain

11   his rights and duties with respect to "Bratz," including but not limited to dispelling

12   any potential cloud over his ability to have assigned or otherwise transferred rights

13   to his original works to MGA.  It is also necessary to clear Bryant's name and

14   mitigate the continuing damage to his reputation resulting from Mattel's unfounded

15   representations about Bryant made in the press and to the defendants in the Hong

16   Kong Litigation.

17         WHEREFORE, Bryant hereby prays for relief against Mattel as

18   follows:

19         1.     For a Declaratory Judgment of non-infringement.

20         2.     For a Declaratory Judgment that Bryant's ideas, concepts,

21   drawings and designs for, and contributions to, "Bratz" were and are independent

22   and original works, and were and are not copied from, derivative of or infringing

23   any Mattel work, including, without limitation, Mattel's copyrighted "Toon Teens."

24         3.     For a Declaratory Judgment that Bryant was the sole and true

25   owner of all rights relating to "Bratz" that Bryant heretofore assigned to MGA and

26   that such rights were owned by Bryant free and clear of any ownership claim by

27   Mattel at the time he assigned rights to MGA. .

28         4.     For a Declaratory Judgment that none of Bryant's contributions

14

EXHIBIT B     44

1  to and work on "Bratz" infringes Mattel's copyrighted "Toon Teens" or any other
2  property allegedly owned by Mattel and that all such contributions to and work on
3  "Bratz" by Bryant were independent and original to Bryant.

4          5.      For costs of suit herein, including reasonable attorneys' fees,
5  and such other and further relief as the court may deem just and proper.

6

7      Dated: November 2, 2004              ROBERT F. MILLMAN
                                            DOUGLAS A. WICKHAM
8                                           KEITH A. JACOBY
                                            LITTLER MENDELSON
9

10

11

12                                          By
                                               KEITH A. JACOBY
13                                             Attorneys for Plaintiff
                                               CARTER BRYANT
14

15

16     Los_Angeles:381846.1 028307.1010

17

18

19

20

21

22

23

24

25

26

27

28

                              15

EXHIBIT B          45

EXHIBIT  5   PAGE  65

**EXHIBIT 6**

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 7**

1 │ THOMAS J. NOLAN (Bar No. 066992)
   │ SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 │ 300 South Grand Avenue
   │ Los Angeles, California 90071-3144
3 │ Telephone:   (213) 687-5000
   │ Facsimile:   (213) 687-5600
4 │ E-mail:   tnolan@skadden.com

5 │ KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
   │ SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 │ 4 Times Square
   │ New York, NY  10036
7 │ Telephone:   (212) 735-3000
   │ Facsimile:   (212) 735-2000
8 │ E-mail:   kplevan@skadden.com

9 │ Attorneys for Counter-Defendants,
   │   MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
10│ (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11│                 UNITED STATES DISTRICT COURT

12│                 CENTRAL DISTRICT OF CALIFORNIA

13│                      EASTERN DIVISION

14│ CARTER BRYANT, an individual          )  CASE NO. CV 04-9049 SGL (RNBx)

15│             Plaintiff,                )  Consolidated with Case No. 04-9059
   │                                       )  and Case No. 05-2727
16│        v.                             )
   │                                       )  MGA ENTERTAINMENT
17│ MATTEL, INC., a Delaware              )  INC.'S OBJECTIONS AND
   │ corporation                           )  RESPONSES TO MATTEL
18│                                       )  INC.'S SUPPLEMENTAL SET
   │             Defendant.                )  OF INTERROGATORIES
19│                                       )
20│                                       )
   │                                       )  Honorable Stephen G. Larson
21│                                       )  Courtroom 1
   │                                       )
22│ Consolidated with MATTEL, INC. v.     )  Discovery Cut-Off: March 3, 2008
   │ BRYANT and MGA                        )
23│ ENTERTAINMENT, INC. v.                )
   │ MATTEL, INC.                          )
24│                                       )

25│ PROPOUNDING PARTY:        MATTEL, INC.

26│ RESPONDING PARTY:         MGA ENTERTAINMENT, INC.

27│ SET NUMBER:               SUPPLEMENTAL

28│

                                    11-19
───────────────────────────────────────────────────────────────
MGA'S RESPONSES TO MATTEL INC.'S SUPPLEMENTAL SET OF INTERROGATORIES    NO. CV 04-9049 SGL (RNBx)

EXHIBIT 7 PAGE 73

## PRELIMINARY STATEMENT

The General Response set forth herein applies to all responses that MGA is providing in response to these interrogatories or may in the future provide in response to any discovery request in this action. The Response is made without waiving, or intending to waive but, on the contrary, expressly reserving: (a) the right to object, on the grounds of competency, privilege, relevancy or materiality, or any other proper grounds, to the use of the Response, for any purpose in whole or in part, in any subsequent step or proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other interrogatories or other discovery procedures; and (c) the right at any time to revise, correct, add to, or clarify any of the responses propounded herein.

The Response reflects only the present state of MGA's discovery regarding the information that Mattel seeks. Discovery and other investigation or research concerning this litigation are continuing. It is anticipated that further discovery, independent investigation, and legal research and analysis will supply additional facts and meaning to the known facts, as well as establish entirely new factual conclusions, all of which may lead MGA to discover other information responsive to these interrogatories. MGA therefore reserves the right to amend or supplement this Response at any time in light of future investigation, research or analysis, and also expressly reserves the right to rely on, at any time, including trial, subsequently discovered information omitted from this Response as a result of mistake, error, oversight or inadvertence. MGA does not hereby admit, adopt or acquiesce in any factual or legal contention, assertion or characterization contained in the Interrogatories or any particular request therein, even where MGA has not otherwise objected to a particular interrogatory, or has agreed to provide information responsive to a particular interrogatory.

No incidental or implied admissions are intended by this Response. These responses should not be taken as an admission that MGA accepts or admits the

1

EXHIBIT __7__ PAGE __74__

1  existence of any facts set forth or assumed by any instruction, definition or
2  interrogatory.

## **GENERAL OBJECTIONS**

4        MGA responds to these interrogatories subject to the following general
5  objections and limitations, each of which is incorporated into each and every
6  response as though fully set forth therein:

7        1.     MGA objects to these interrogatories to the extent they seek
8  information that is not subject to disclosure under any applicable privilege, doctrine
9  or immunity, including without limitation the attorney-client privilege, the work
10  product doctrine, the right of privacy, and all other privileges recognized under the
11  constitutional, statutory or decisional law of the United States of America, the State
12  of California or any other applicable jurisdiction.

13        2.     MGA objects to these interrogatories to the extent they seek
14  information not relevant to the claims or defenses of any party to this action and not
15  reasonably calculated to lead to the discovery of admissible evidence.

16        3.     MGA objects to these interrogatories to the extent they seek
17  information which by reason of public filing or otherwise is already in Mattel's
18  possession or is readily accessible to Mattel.

19        4.     MGA objects to these interrogatories to the extent they seek the
20  disclosure of information (1) not currently within its possession, custody or control;
21  (2) that MGA cannot locate after a reasonably diligent search; or (3) that refer to
22  persons, entities, or events not known to MGA. Such instructions, definitions, or
23  requests are objectionable where they seek to require more of MGA than any
24  obligation imposed by the Federal Rules of Civil Procedure; subject MGA to
25  unreasonable and undue annoyance, oppression, burden, and expense; and/or seek to
26  impose upon MGA an obligation to investigate or discover information or materials
27  from sources equally accessible to Mattel.

28

MGA'S RESPONSES TO MATTEL INC.'S SUPPLEMENTAL SET OF INTERROGATORIES   NO. CV 04-9049 SGL (RNBx)

**EXHIBIT __7__ PAGE __75__**

1    5.    MGA objects to these interrogatories to the extent they are

2  overbroad and unduly burdensome.

3    6.    MGA objects to the definitions and instructions to the extent such

4  definitions and instructions purport to enlarge, expand, or alter in any way the plain

5  meaning and scope of any specific term or specific interrogatories on the ground that

6  such enlargement, expansion, or alteration renders such a term or request vague,

7  ambiguous, unintelligible, overbroad, unduly burdensome, and/or uncertain.

8    7.    MGA objects to the following definitions in these interrogatories:

9    (a)    MGA objects to the definition of the terms "DESIGN" and

10 "DESIGNS" as vague, ambiguous, overly broad and unduly burdensome.  The

11 definition strays far from the English meaning of "design" by including "all

12 representations whether two-dimensional or three-dimensional," including "works,

13 designs, artwork, sketches, drawings, illustrations, representations, depictions,

14 blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,

15 rotocasts, reductions to practice, developments, inventions and/or

16 improvements . . . ." (Definitions ¶ 5.)  In responding to these interrogatories, MGA

17 will interpret the terms "DESIGN" and "DESIGNS" consistent with their ordinary

18 accepted meaning.

19    (b)    MGA objects to the definition of the terms "IDENTIFY"

20 and "IDENTITY" as overbroad, unduly burdensome, vague and ambiguous, and

21 oppressive.  Mattel's definition of these terms inherently calls for answers to multiple

22 discrete questions or subparts to questions.  For example, as those terms are used

23 with reference to a "TEST PROJECT" (Definitions ¶ 9) the use of those terms

24 request at least four different and distinct facts:  (a) the identity of the individual who

25 performed, or was requested, asked or solicited to perform, the TEST PROJECT,

26 including without limitation by stating whether the individual was a MATTEL

27 employee at the time; (b) the identity of the individual who requested, asked for or

28 solicited the TEST PROJECT or caused the TEST PROJECT to be performed; (c) a

EXHIBIT __7__ PAGE __76__

1  detailed, full and complete description of the DESIGN, project, assignment or other
2  work that was performed or that was requested, asked or solicited to be performed;
3  and (d) the date(s) on which the TEST PROJECT was performed or was requested,
4  asked or solicited to be performed.  Therefore, any interrogatory that includes or
5  incorporates the terms "IDENTIFY" or "IDENTITY" are necessarily compound, and
6  should be posed as separate interrogatories.  MGA will interpret the terms
7  "IDENTIFY" or "IDENTITY" when used in these interrogatories with reference to a
8  "SOURCE OF INFORMATION" as requesting MGA to identify the "SOURCE OF
9  INFORMATION" searched for the referenced documents with reasonable
10  particularity so as to distinguish it from other sources of information searched for
11  those documents.

12          (c)     MGA also objects to the terms "any" (Definitions ¶ 11) and
13  "REFER OR RELATE TO" (Definitions ¶ 7) on the grounds and to the extent they
14  are overbroad, unduly burdensome, and/or are vague and ambiguous in the context
15  of the interrogatories as written and as those interrogatories would be plainly
16  understood absent Mattel's definitions.

17          8.     MGA objects to these interrogatories to the extent they may
18  unfairly seek to restrict the facts on which MGA may rely at trial.  Discovery has not
19  been completed and MGA is not yet necessarily in possession of all the facts and
20  documents upon which MGA intends to rely.  All of the responses submitted
21  herewith are tendered to Mattel with the reservation that the responses are submitted
22  without limiting the evidence on which MGA may rely to support the contentions
23  and defenses that MGA may assert at the trial of this action and to rebut or impeach
24  the contentions, assertions and evidence that Mattel may present.  MGA reserves the
25  right to supplement or amend these responses at a future date.

26          9.     MGA objects to each interrogatory to the extent it seeks
27  information that will be the subject of expert witness testimony and that is therefore
28  premature.

4

EXHIBIT  7  PAGE  77

1        10.    MGA objects to each interrogatory to the extent it calls for a legal

2  conclusion.

3        11.    MGA objects to each interrogatory to the extent it seeks the

4  disclosure of confidential, proprietary, or trade-secret information.

5        12.    MGA reserves the right to object on any ground at any time to

6  such other supplemental discovery requests as Mattel may propound involving or

7  relating to the same subject matter of these interrogatories.

8        13.    In responding to these interrogatories, MGA has not and will not

9  comply with any instructions or definitions that seek to impose requirements in

10  addition to those imposed by the Federal Rules of Civil Procedure, the local rules of

11  this Court, any orders entered by the Court in this action, or other applicable law.

12        14.    Consistent with Rule 33(d) of the Federal Rules of Civil

13  Procedure, MGA objects to providing responses to interrogatories that can be

14  derived from documents that have or will be produced (when requested in

15  compliance with Rule 26) and where the burden to derive such information is

16  substantially the same for Mattel as it is for MGA.

17        15.    MGA objects to the definitions, instructions, and interrogatories

18  to the extent they seek information that was prepared in anticipation of litigation,

19  constitutes attorney work product, discloses mental impressions, conclusions,

20  opinions or legal theories of any attorney for or otherwise representative of MGA,

21  contains privileged attorney-client communications, or is otherwise protected from

22  disclosure by any privileges, laws or rules.  MGA shall not produce such information

23  in response to Mattel's interrogatories.  Any disclosure of such protected or

24  privileged information is inadvertent and shall not be construed as a waiver of those

25  privileges or protections.  MGA reserves the right to correct the record with regard to

26  any such inadvertent disclosure, as provided for in the Protective Order governing

27  this case.

28

MGA'S RESPONSES TO MATTEL INC.'S SUPPLEMENTAL SET OF INTERROGATORIES    NO. CV 04-9049 SGL (RNBx)

**EXHIBIT 7 PAGE 78**

16.   MGA objects to each of Mattel's interrogatories because Mattel has propounded more than 50 interrogatories, including discrete subparts.  Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

17.   The responses below shall not be construed as an admission as to the relevance or admissibility of any statement or characterization contained in any interrogatory.  MGA reserves all objections, including without limitation, objections as to competency, relevance, materiality, privilege, authenticity, or admissibility.

18.   To the extent MGA responds to an interrogatory, it does so without waiving or intending to waive but rather, on the contrary, preserving and intending to preserve, its contention that anything Mr. Bryant did on weekends, evenings, vacation and any other time outside ordinary business hours was not done while he was working for Mattel.  MGA's response may not be taken as an admission that the information it provides in its response in any way reflects or evidences work performed by Mr. Bryant while he was working for Mattel or that MGA adopts or agrees with any fact or legal conclusion assumed, presumed or contained in Mattel's interrogatory.

## OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES

Without waiving or departing from its General Response and General Objections, and specifically incorporating them in its response to each interrogatory below, MGA makes the following additional objections and responses to specific interrogatories:

## SUPPLEMENTAL INTERROGATORY:

IDENTIFY, fully and completely, each and every TEST PROJECT that YOU caused, had, requested, asked or solicited any PERSON to perform during the time period January 1, 1998 through December 31, 2004, inclusive, and IDENTIFY all PERSONS with knowledge thereof and all DOCUMENTS that REFER OR RELATE TO such TEST PROJECT.

6

EXHIBIT  7  PAGE  79

**RESPONSE TO SUPPLEMENTAL INTERROGATORY:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms "TEST PROJECT," "IDENTIFY" and "REFER OR RELATES TO." MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction.

MGA also objects to the extent this interrogatory requests that MGA "IDENTIFY *all* PERSONS . . . and *all* DOCUMENTS" (emphasis added). MGA further objects to this interrogatory as oppressive and harassing in that it seeks information not relevant to the claims or defenses of any party to this action and not reasonably calculated to lead to the discovery of admissible evidence. MGA further objects to this interrogatory as it appears to be directed at other parties to the litigation and not to MGA.

MGA objects to this interrogatory as compound because it contains discrete subparts that require separate, distinct and multiple responses. Specifically, Mattel's definitions of the terms "IDENTIFY" and "TEST PROJECT" require MGA to provide separate, distinct, and multiple responses. For example, Mattel's definition of the term "IDENTIFY" in the context of this interrogatory purports to require MGA to provide a multitude of discrete facts for each "TEST PROJECT," including: (a) the identity of the individual who performed, or was requested, asked or solicited to perform, the TEST PROJECT, including without limitation by stating whether the individual was a MATTEL employee at the time; (b) the identity of the individual who requested, asked for or solicited the TEST PROJECT or caused the

7

EXHIBIT  7  PAGE 80

1  TEST PROJECT to be performed; (c) a detailed, full and complete description of the

2  DESIGN, project, assignment or other work that was performed or that was

3  requested, asked or solicited to be performed; and (d) the date(s) on which the TEST

4  PROJECT was performed or was requested, asked or solicited to be performed.  This

5  interrogatory is further compounded by Mattel's definition of "IDENTITY," which

6  purports to require MGA to provide the following information for each of the

7  "natural persons" requested to be identified as part of Mattel's definition of

8  "IDENTIFY," above:  (1) the individual's name; (2) any known business title; (3) the

9  current or last known business affiliation; (4) the current or last known residential

10  address; (5) the current or last known business address; (6) the current or last known

11  relationship to MGA; and (7) the current or last known telephone number.

12  Additionally, through Mattel's definition of "YOU," this interrogatory asks for all of

13  the foregoing information about each "TEST PROJECT" relating to, and performed

14  by, each of the multiple separate responding parties in this litigation.

15         MGA further objects to this interrogatory on the grounds that, as

16  phrased, it fails to comply with Judge Infante's Order Granting in Part and Denying

17  in Part Mattel's Motion to Compel MGA to Produce Witnesses Pursuant to Third

18  Notice of Deposition Under Rule 30(b)(6), dated September 25, 2007 (the

19  "September 25 Order").  In the September 25 Order, Judge Infante sustained MGA's

20  objections to Topic 9 of Mattel's Third Notice of Deposition under Rule 30(b)(6) to

21  MGA, which sought testimony as to "the identity of each person MGA had perform

22  or who MGA requested, asked or solicited to perform, any 'test project' in advance of

23  or in consideration of employment by MGA since January 1, 1995."  Based on the

24  representations of Mattel's counsel that Mattel sought in Topic 9 to "'obtain

25  information that will refute MGA and Bryant's assertions that Bryant's working for

26  MGA while employed by Mattel was no different than a supposedly standard

27  industry practice of having candidates for creative positions make artwork as part of

28  the job interview'" (September 25 Order at 9-10), Judge Infante held that Topic 9

8

EXHIBIT 7  PAGE 81

1    sought "information relevant to one of MGA and Bryant's defenses, namely their

2    claim that Bryant's work for MGA while employed by Mattel was no different than a

3    standard industry practice of having candidates for creative positions make artwork

4    as part of the job interview." Judge Infante sustained MGA's objection because

5    Topic 9 was overbroad and burdensome, and "because the information sought is

6    more appropriately obtained through a *contention* interrogatory." (9/25/07 Infante

7    Order at 10) (emphasis added).  MGA objects to Mattel's supplemental interrogatory

8    as propounded because it is not a contention interrogatory.  In accordance with Judge

9    Infante's September 25 Order and subject to and without waiving the foregoing

10   objections, Mattel will interpret Mattel's Supplemental Interrogatory as asking first

11   whether MGA contends that MGA caused, had, requested, asked or solicited Bryant

12   to perform a TEST PROJECT and, if MGA so contends, to "IDENTIFY, fully and

13   completely, each and every TEST PROJECT that YOU caused, had, requested,

14   asked or solicited any PERSON to perform during the time period January 1, 1998

15   through December 31, 2004, inclusive, and IDENTIFY all PERSONS with

16   knowledge thereof and all DOCUMENTS that REFER OR RELATE TO such TEST

17   PROJECT."

18           MGA further objects to Mattel's Supplemental Interrogatory on the

19   ground that it seeks information that is not relevant to the claims or defenses in this

20   action and is not reasonably calculated to lead to the discovery of admissible

21   evidence to the extent it asks MGA to IDENTIFY every TEST PROJECT that it

22   asked any PERSON to perform during the time period January 1, 1998 through

23   December 31, 2004, even if MGA does not contend that MGA caused, had,

24   requested, asked or solicited Bryant to perform a TEST PROJECT.

25

26

27

28

MGA'S RESPONSES TO MATTEL INC.'S SUPPLEMENTAL SET OF INTERROGATORIES    NO. CV 04-9049 SGL (RNBx)

EXHIBIT 7   PAGE 82

1          Subject to and without waiving the foregoing objections, MGA

2   responds as follows:

3          MGA does not contend that it caused, had, requested, asked or solicited

4   Bryant to perform a TEST PROJECT.

5

6   DATED:  November 19, 2007

7                                    SKADDEN, ARPS, SLATE, MEAGHER &
                                     FLOM LLP
8
                                     By: _____
9                                          Thomas J. Nolan
                                     Attorneys for Counter-Defendants, MGA
10                                   ENTERTAINMENT, INC., ISAAC LARIAN,
                                     MGA ENTERTAINMENT (HK) LIMITED,
11                                   AND MGAE de MEXICO S.R.L. de C.V.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                     10

EXHIBIT 7   PAGE 63

**EXHIBIT 8**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

January 10, 2008

<u>VIA FACSIMILE AND U.S. MAIL</u>

Timothy Miller, Esq.
Skadden Arps, Slate, Meagher and Flom LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111

Re:   **Mattel v. Bryant**

Dear Tim:

I write pursuant to Paragraph 5 of the Order for the Appointment of a Discovery Master to request a meet and confer regarding the responses of MGA Entertainment, Inc. to Mattel's First Set of Request for Production dated March 14, 2005.

Based on the language of MGA's responses, MGA appears to be withholding non-privileged, discoverable documents responsive to Request for Production Nos. 28-31, 44, 47, 48, 65, 68, 71-87, 89 and 95. As you know, Mattel moved to compel responses to some requests in the 2005 Requests earlier this year, and MGA was ordered to provide responsive documents in the Court's May 15, 2007 Order. However, Mattel did not move on any of the requests at issue here.

Regarding Request Nos. 48, 65 and 89, MGA's responses appear to indicate that it will not produce any responsive documents. Regarding the balance of the requests listed above, MGA's responses are improperly limited. MGA's responses indicate that MGA is producing "all relevant and responsive non-objectionable" documents, as opposed to all responsive documents. These restrictions are improper.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-5107 FAX 858-812-5156

EXHIBIT __8__ PAGE __84__

Mattel has no desire to obtain duplicates of documents MGA has already produced, and indeed Mattel believes that most or all documents responsive to the requests listed above should already have been produced pursuant to the Court's Orders regarding other requests. However, Mattel is entitled to obtain all responsive documents regarding the request listed above. Accordingly, please be prepared to explain whether MGA is withholding responsive documents and, if so, on what basis it is doing so. If the parties cannot informally resolve their differences, Mattel contemplates filing a motion to compel production of all documents responsive to these requests.

I look forward to hearing from you regarding your availability for a meet and confer within the next five days.


Very truly yours,


B. Dylan Proctor
07209/2349482.1


2

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

<table>
<tr>
<td><b>NEW YORK</b><br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000<br>Facsimile: (212) 849-7100</td>
<td><b>LOS ANGELES</b><br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA  90017<br>(213) 443-3000<br>Facsimile: (213) 443-3100</td>
<td><b>SAN FRANCISCO</b><br>50 California Street, 22nd Floor<br>San Francisco, CA  94111<br>(415) 875-6600<br>Facsimile: (415) 875-6700</td>
</tr>
<tr>
<td><b>TOKYO</b><br>Akasaka Twin Tower Main Building, 6th Floor<br>17-22 Akasaka 2-Chome<br>Minato-ku, Tokyo 107-0052, Japan<br>+81 3 5561-1711<br>Facsimile: +81 3 5561-1712</td>
<td></td>
<td><b>SILICON VALLEY</b><br>555 Twin Dolphin Drive, Suite 560<br>Redwood Shores, CA  94065<br>(650) 801-5000<br>Facsimile: (650) 801-5100</td>
</tr>
</table>

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   January 10, 2008            **NUMBER OF PAGES, INCLUDING COVER: 3**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Timothy Miller, Esq.<br>Skadden Arps Slate Meagher and Flom | | 888.329.1836 |

**FROM:**   Dylan Proctor/Sandy Caruthers {Word Processing}

**RE:**   Mattel v. Bryant

**MESSAGE:**



FAXED
JAN 1 0 2008

<table>
<tr>
<td>CLIENT #   <b>7209</b></td>
<td>ROUTE/<br>RETURN TO:   <b>Shawna Allison</b></td>
<td>☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT</td>
</tr>
<tr>
<td>OPERATOR:  <i>priscilla</i></td>
<td>CONFIRMED?   ☐ NO   ☐ YES:</td>
<td></td>
</tr>
</table>

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed.  If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited.  If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

EXHIBIT __B__ PAGE __86__

01/10/2008 18:27 FAX 12134    J06          QEUGR LAG 2                              @001

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO              4785
RECIPIENT ADDRESS     76706#7209#18883291836
DESTINATION ID
ST. TIME              01/10 18:27
TIME USE              00'47
PAGES SENT            3
RESULT                OK
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

**DATE:**   January 10, 2008

**NUMBER OF PAGES, INCLUDING COVER:** 3

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Timothy Miller, Esq. Skadden Arps Slate Meagher and Flom | | 888.329.1836 |

**FROM:**   Dylan Proctor/Sandy Caruthers {Word Processing}

**RE:**   Mattel v. Bryant

**MESSAGE:**

EXHIBIT ___8___ PAGE 87

**EXHIBIT 9**

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR EMBARCADERO CENTER

SAN FRANCISCO, CALIFORNIA 94111-4144

———

TEL: (415) 984-6400

FAX: (415) 984-2698

http://www.skadden.com

DIRECT DIAL
415-984-2647
EMAIL ADDRESS
TMILLER@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
NEW YORK
PALO ALTO
RESTON
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO

January 17, 2008

Via E-Mail and Facsimile

Dylan Proctor, Esq.
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

RE:   Mattel v. Bryant, et al.

Dear Dylan:

I received your letter dated January 10, 2008, requesting a conference of counsel regarding the Objections and Responses to Mattel's Supplemental Set of Interrogatories of MGA Entertainment, Inc. ("MGA"), served on November 19, 2007.  Your January 10 letter seems to have missed the point.

Mattel's Supplemental Set of Interrogatories served on October 19, 2007 consists only of one supplemental interrogatory, which asks MGA to "IDENTIFY, fully and completely, each and every TEST PROJECT YOU caused, had, requested, asked or solicited any PERSON to perform during the time period January 1, 1998 through December 31, 2004, inclusive, and IDENTIFY all PERSONS with knowledge thereof and all DOCUMENTS that REFER OR RELATE to such TEST PROJECT."

As you noted in your letter, Judge Infante granted Mattel leave to serve an interrogatory in lieu of taking a deposition on Topic No. 9 in the Court's September 25, 2007 Order Granting in Part and Denying in Part Mattel's Motion to Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6).  See September 25, 2007 Order at 12.  However, your letter omitted Judge Infante's express language that Mattel was granted leave to serve a "contention interrogatory."  Id.  (emphasis added.)

EXHIBIT   9   PAGE 88

Dylan Proctor, Esq.
January 17, 2008
Page 2

Mattel's interrogatory, as phrased, failed to comply with the September 25, 2007 Order. Judge Infante held that Topic 9 sought "information relevant to one of MGA and Bryant's defenses, namely their claim that Bryant's work for MGA while employed by Mattel was no different than a standard industry practice of having candidates for creative positions make artwork as part of the job interview." Id. at 10 (emphasis added). Judge Infante sustained MGA's objection because Topic 9 was overbroad and burdensome, and "because the information sought is more appropriately obtained through a contention interrogatory." Id. (emphasis added).

The plain language of the September 25, 2007 Order thus thrice makes clear that the Court was granting Mattel leave to serve an interrogatory probing MGA's claims regarding "test assignments" through a contention interrogatory. Id. at 10, 12. Nevertheless, Mattel propounded an interrogatory that was not a contention interrogatory, contrary to the order. Accordingly, MGA interpreted Mattel's Supplemental Interrogatory in such a way as to comply with the September 25, 2007 Order, as asking first whether MGA contends that MGA caused, had, requested, asked or solicited Bryant to perform a TEST PROJECT and, if MGA so contends, to "IDENTIFY, fully and completely, each and every TEST PROJECT that YOU caused, had, requested, asked or solicited any PERSON to perform during the time period January 1, 1998 through December 31, 2004, inclusive, and IDENTIFY all PERSONS with knowledge thereof and all DOCUMENTS that REFER OR RELATE TO such TEST PROJECT." Thus, while MGA answered a different interrogatory than that propounded by Mattel, MGA properly responded to the contention interrogatory permitted by the September 25, 2007 Order.

Furthermore, your letter misstates our stated objections to the supplemental interrogatory. You contend that "According to MGA, it need simply deny that it solicited Bryant to perform a TEST PROJECT to satisfy its obligations." This is not MGA's position. MGA has only denied that it contends that it caused, had, requested, asked or solicited Bryant to perform a TEST PROJECT. MGA's position on this issue is that a plain reading of the September 25, 2007 Order only requires MGA to address its contentions regarding "TEST PROJECTS," and to such a contention interrogatory, MGA has already provided a complete response.

Please do not hesitate to call if you have any questions.

Very truly yours,

Timothy A. Miller

EXHIBIT  9  PAGE  89

**EXHIBIT 10**

## Tamar Buchakjian

**From:** Dylan Proctor
**Sent:** Friday, January 18, 2008 11:14 AM
**To:** Miller, Timothy
**Cc:** Michael T Zeller; Jon Corey; Tamar Buchakjian
**Subject:** Your letter of yesterday

Tim, I've received your letter of last night regarding Mattel's request for a meet and confer regarding its supplemental interrogatory. We disagree with your characterization of the Court's Order, including for reasons we have already explained. In any case, I gather from your response that MGA does not intend to provide a supplemental response. If you wish to reconisder or to discuss the matter, please let me know. Thanks,


B. Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3112
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  dylanproctor@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT  10  PAGE  90

1/27/2008

**EXHIBIT 11**

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| CARTER BRYANT, AN INDIVIDUAL, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | NO.  CV 04-9040 SGL |
| | ) | (RNBX) |
| MATTEL, INC., A DELAWARE | ) | |
| CORPORATION, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |
| AND CONSOLIDATED ACTION(S) | ) | |
| | ) | |

# TRANSCRIPT OF TELEPHONIC PROCEEDINGS

# SEPTEMBER 24, 2007



REPORTED BY:
EMILY MCCARY
CSR NO. 7304
JOB NO. 07EM086

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT __11__ PAGE __91__

```
 1   HE DID NOT MAKE A -- WHAT ONE MIGHT CONSIDER TO
 2   BE A LOT OF MONEY FOR SOMEONE IN HIS POSITION.
 3             THE TESTIMONY WAS THAT HE MADE
 4   APPROXIMATELY HALF A MILLION DOLLARS LAST YEAR ON
 5   BEHALF OF M.G.A., AS I UNDERSTAND IT.  AND
 6   EVIDENCE OF PAYMENTS BY M.G.A. TO MR. LARIAN
 7   WOULD POTENTIALLY IMPEACH THAT TESTIMONY.
 8             AND SO I THINK THESE TOPICS, LIKE THE
 9   REST, ARE PROPER TOPICS.  AND WHETHER LEAVE IS
10   REQUIRED OR NOT, NEED OR GOOD REASON HAS BEEN
11   SHOWN.
12        JUDGE INFANTE:  THANK YOU.  M.G.A. MAY
13   PROCEED.
14        MR. FEINSTEIN:  THANK YOU, YOUR HONOR.
15   THIS IS MARC FEINSTEIN.
16             THE 30(B)(6) DEPOSITIONS -- I'M GOING
17   TO START, YOUR HONOR, WITH THE ISSUE OF WHETHER
18   MATTEL WAS REQUIRED TO OBTAIN LEAVE OF COURT
19   BEFORE IT SOUGHT A THIRD DEPOSITION OF M.G.A.
20   UNDER OUR RULE 30(B)(6).  AND THAT RULE --
21   30(B)(6) DEPOSITIONS ARE GOVERNED BY RULE
22   30(A)(2)(B) WHICH PROVIDES THAT BEFORE A SECOND
23   DEPOSITION CAN OCCUR, OR ANY DEPOSITION BEYOND
24   INITIAL DEPOSITION CAN OCCUR, THE PARTY SEEKING A
25   DEPOSITION MUST OBTAIN LEAVE OF COURT.
```

12

EXHIBIT __11__ PAGE __92__

1    THE ANNOTATIONS TO THE 1993
2    AMENDMENTS TO RULE 30, WHICH ADDED THE ONE
3    DEPOSITION RULE AS WELL AS THE TEN DEPOSITION
4    LIMIT, STATES, QUOTE, "A DEPOSITION UNDER RULE
5    30(B)(6) SHOULD, FOR PURPOSES OF THIS LIMIT, BE
6    TREATED AS A SINGLE DEPOSITION EVEN THOUGH MORE
7    THAN ONE PERSON MAY BE DESIGNATED TO TESTIFY."
8         IN OUR PAPERS WE'VE IDENTIFIED THREE
9    COURT DECISIONS THAT HELD THAT A SECOND
10   DEPOSITION UNDER RULE 30(B)(6) IS INVALID UNLESS
11   LEAVE OF COURT IS OBTAINED.
12        WE CITED TO THE FIRST CIRCUIT'S
13   DECISION IN AMERISTAR JET CHARTER, INC. VERSUS
14   SIGNAL COMPOSITES FROM 2001 IN WHICH THE FIRST
15   CIRCUIT AFFIRMED THE DISTRICT COURT'S DENIAL OF
16   THE SECOND DEPOSITION.  THE DISTRICT COURT -- THE
17   FIRST CIRCUIT HELD THAT THE SECOND DEPOSITION
18   NOTICE WAS, QUOTE, INVALID, END QUOTE, BECAUSE NO
19   LEAVE OF COURT WAS OBTAINED.
20        WE ALSO CITED TO A 2005 DECISION FROM
21   THE DISTRICT COURT IN ILLINOIS IN IN RE: SULFURIC
22   ACID ANTITRUST LITIGATION, WHICH IS A
23   PARTICULARLY INTERESTING DECISION BECAUSE IT IS
24   THE ONLY DECISION THAT ANY OF THE PARTIES HAVE
25   CITED THAT HAS A VERY DETAILED DISCUSSION OF

13

EXHIBIT  11  PAGE  93

```
 1    THIS -- THIS VERY ISSUE.
 2              THE COURT HELD, QUOTE, "THE
 3    DEFENDANTS CONTEND THAT THEY HAD NO OBLIGATION TO
 4    OBTAIN LEAVE OF COURT TO CONDUCT A SECOND SET OF
 5    RULE 30(B)(6) DEPOSITIONS.  AND IN THEIR RULE
 6    30(A)(2)(B) DOES NOT APPLY TO 30(B)(6)
 7    DEPOSITIONS ESSENTIALLY WHERE THE SECOND
 8    DEPOSITION RELATES TO DIFFERENT TOPICS THAN THE
 9    FIRST.  THE ARGUMENT IGNORES THE TEXT, HISTORY
10    AND PURPOSE OF THE 1993 AMENDMENT TO RULE 30,"
11    END QUOTE.
12              AND THE COURT EXPLAINED THAT, YOU
13    KNOW, WHEN THE 1993 AMENDMENT WAS ADOPTED, THE
14    PURPOSE WAS TO ALLOW, QUOTE, "STRONG INTERVENTION
15    AS TO APPROACH THE DISCOVERY REGULATION," END
16    QUOTE, AND THEN THE NEED FOR SUCH JUDICIAL
17    INVOLVEMENT IS APPARENT WHERE A PARTY IS SEEKING
18    MULTIPLE DEPOSITIONS OF A COMPANY UNDER RULE
19    30(B)(6).
20              IT'S NOT ELEVATING FORM OVER
21    SUBSTANCE TO REQUIRE THAT LEAVE OF COURT BE
22    OBTAINED.  IF LEAVE OF COURT IS NOT OBTAINED,
23    THEN UNDER MATTEL'S INTERPRETATION OF THE RULES A
24    PARTY CAN SEEK AN INDEFINITE NUMBER OF 30(B)(6)
25    DEPOSITIONS OF A COMPANY.  THERE'S NO LIMIT AT
```

14

EXHIBIT __11__ PAGE __94__

1    ALL, ACCORDING TO MATTEL'S INTERPRETATION OF THE

2    RULE, IN TERMS OF THE NUMBER OF DEPOSITIONS THAT

3    CAN BE SOUGHT.  AND THE PURPOSE OF THE ONE

4    DEPOSITION RULE, THE 10 DEPOSITION LIMIT, THE

5    SEVEN HOUR LIMIT, THAT WERE ALL ADDED IN 1993 WAS

6    TO ALLOW THE COURT TO REQUIRE A PARTY TO GO TO

7    THE COURT IF IT WANTED TO EXCEED THOSE LIMITS.

8    AND SO IN THIS CASE OUR POSITION IS THAT MATTEL

9    HAS THAT OBLIGATION.

10             BY THE WAY, WE ALSO CITED TO THE

11   EXPERT CHOICE DECISION FROM THE DISTRICT COURT IN

12   CONNECTICUT IN 2006 WHICH CAME TO THE SAME

13   CONCLUSION AS AMERISTAR AND SULFURIC ACID.  AND

14   IN THE SULFURIC ACID CASE, THE COURT ADDRESSED

15   EXPLICITLY THE DECISION THAT MATTEL CITES,

16   QUALITY ARROW, AND IT CONCLUDED, IN WHAT I THINK

17   IS A VERY WELL-REASONED DECISION, THAT THE

18   QUALITY ARROW DECISION WAS -- WAS ILL-CONCEIVED

19   AND INCORRECT.

20             SO I THINK THAT THE INITIAL

21   PROPOSITION -- OR THE INITIAL ANALYSIS OF

22   MATTEL'S MOTION SHOULD BE BASED ON THE FACT THAT

23   THIS IS A -- A FURTHER -- OR IN THIS CASE A THIRD

24   DEPOSITION THAT IS BEING SOUGHT UNDER RULE 36 OF

25   M.G.A., THEREFORE, MATTEL HAD TO SEEK LEAVE.

15

EXHIBIT __11__ PAGE __95__

1          THE NEXT ISSUE IS MATTEL'S ARGUMENT

2    THAT M.G.A. WAIVED THAT OBJECTION.  IN OTHER

3    WORDS, M.G.A. WAIVED ITS OBJECTION BASED ON THE

4    ONE DEPOSITION RULE, AND MATTEL MAKES THAT

5    ARGUMENT IN ITS REPLY BRIEF, AS WELL AS IN THIS

6    ARGUMENT HERE.

7          RULE 32(D) SETS FORTH THE OBJECTIONS

8    THAT MUST BE MADE PROMPTLY IN WRITING AFTER

9    SERVICE OF THE DEPOSITION NOTICE.  AND MATTEL'S

10   COUNSEL ALLUDED TO RULE 32(D) IN HIS ARGUMENT.

11   RULE 32(D) GOVERNS OBJECTIONS THAT HAVE TO BE

12   MADE AS TO THE NOTICE ITSELF.  AND IT SAYS,

13   QUOTE, "ALL ERRORS AND IRREGULARITIES AND THAT

14   NOTICE FOR TAKING A DEPOSITION ARE WAIVED UNLESS

15   WRITTEN OBJECTIONS ARE PROMPTLY SERVED UPON THE

16   PARTY GIVING THE NOTICE," END QUOTE.

17          NOW, THE REQUIREMENTS OF THE NOTICE

18   FOR A DEPOSITION ARE DESCRIBED IN RULE 30(B) AND

19   INCLUDES SUCH THINGS AS REASONABLE NOTICE OF THE

20   TIME AND PLACE OF THE DEPOSITION, THE NAME AND

21   ADDRESS OF THE DEPONENT, THE METHOD BY WHICH THE

22   TESTIMONY SHALL BE RECORDED, AND IN SOME

23   INSTANCES A DESCRIPTION WITH REASONABLE

24   PARTICULARITY OF THE SUBJECT AREAS FOR THE

25   EXAMINATION.

EXHIBIT __11__ PAGE __96__

1          THOSE ARE THE REQUIREMENTS OF THE

2    NOTICE.  THE ONE DEPOSITION RULE IS NOT A

3    REQUIREMENT OF THE NOTICE, NOR WOULD THE TEN

4    DEPOSITION LIMIT OR THE SEVEN HOUR RULE.  THOSE

5    ARE NOT -- OBJECTIONS ON THOSE GROUNDS ARE NOT

6    SUBJECT TO RULE 32(D).  AND, THEREFORE, AN

7    OBJECTION ON THE BASIS OF THE ONE DEPOSITION RULE

8    WAS NOT WAIVED HERE.  AND THE RATIONALE BEHIND

9    THIS DISTINCTION IS THAT RULE 32(D) APPLIES TO

10   OBJECTIONS THAT ARE CURABLE IF THEY'RE PROMPTLY

11   MADE IN WRITING.  FOR EXAMPLE, IF IT'S A DEFECT

12   IN THE NOTICE BECAUSE IT DOESN'T ALLOW ENOUGH

13   TIME BETWEEN WHEN THE NOTICE IS SERVED AND WHEN A

14   DEPOSITION IS SCHEDULED, THEN A NEW NOTICE CAN BE

15   SERVED THAT ALLOWS AN ADEQUATE AMOUNT OF TIME.

16          IF A NOTICE IS SERVED THAT DOESN'T

17   ADEQUATELY STATE WITH PARTICULARITY THE

18   DESCRIPTION OF THE SUBJECT AREAS, THEN A NEW

19   NOTICE CAN BE SERVED THAT DOES PROVIDE AN

20   ADEQUATE DESCRIPTION OF THOSE SUBJECT AREAS.  BUT

21   IF A PARTY SUCH AS MATTEL IS EXCEEDING THE ONE

22   DEPOSITION RULE, THEN NO MATTER OF ADDITIONAL

23   NOTICE IS EVER GOING TO CURE THEIR PROBLEM.  THE

24   ONLY WAY THAT MATTEL CAN ADDRESS THAT ISSUE IS BY

25   GOING TO COURT AND SEEKING LEAVE.

17

EXHIBIT __11__ PAGE __97__

1          BECAUSE THE SECOND DEPOSITION NOTICE
2    WAS INVALID IN THIS CASE, THE COURT SHOULD DENY
3    MATTEL'S MOTION ON THAT BASIS ALONE.   ON THE
4    OTHER HAND, IF THE COURT TREATS THE MOTION AS ONE
5    FOR LEAVE, THEN THE BURDEN IS ON MATTEL TO SHOW
6    THAT THE SECOND DEPOSITION BEING SOUGHT HERE --
7    REALLY, THE THIRD DEPOSITION BEING SOUGHT HERE
8    AND CONSISTENT WITH THE PRINCIPLES STATED IN RULE
9    26(B)2.
10         MATTEL'S COUNSEL IS INCORRECT WHEN IT
11   SAYS THAT THE STANDARD IS SIMPLY TO SHOW THAT IT
12   HAS A NEED FOR THE DEPOSITION.   THAT IS NOT --
13   ABSOLUTELY NOT THE CORRECT STANDARD IN AN
14   INSTANCE IN WHICH A PARTY IS SEEKING AN EXCEPTION
15   FROM THE ONE DEPOSITION RULE, NOR WOULD IT BE THE
16   CORRECT STANDARD IF A PARTY WERE SEEKING AN
17   EXCEPTION FROM THE TEN DEPOSITION LIMIT OR THE
18   SEVEN HOUR RULE.
19         THE PARTY HAS TO SHOW THAT IT'S
20   ENTITLED TO THE DISCOVERY BASED ON THE PRINCIPLES
21   STATED IN RULE 26(B)2, AND THOSE PRINCIPLES
22   INCLUDE WHETHER THE DISCOVERY IS CUMULATIVE OR
23   DUPLICATIVE, WHETHER DISCOVERY COULD BE OBTAINED
24   FROM ANOTHER SOURCE OR THROUGH OTHER MEANS THAT
25   ARE LESS BURDENSOME, OR WHETHER OR NOT THE BURDEN

18

EXHIBIT __||__ PAGE _98_

```
 1    OF DISCOVERY OUTWEIGHS IT'S LIKELY BENEFIT.
 2    THAT'S THE CORRECT ANALYSIS THAT SHOULD BE
 3    APPLIED HERE IF THE COURT IS INCLINED TO TREAT
 4    THIS MOTION AS ONE FOR LEAVE.
 5            AND IF ONE -- AND I'M GOING TO NOW
 6    WALK THROUGH THE TOPICS AND EXPLAIN WHY, IN OUR
 7    VIEW, MATTEL HAS NOT MET ITS BURDEN TO OBTAIN
 8    LEAVE.
 9            TO BEGIN WITH, THE TOPICS 1 TO 3,
10    WHICH REQUEST INFORMATION ON THE COMPUTER STORAGE
11    DEVICES FOR 24 PERSONS, INCLUDING THE COMPUTER
12    BACKUPS OR IMAGES AND INFORMATION ON THE
13    PRODUCTION OF DOCUMENTS FROM THE STORAGE DEVICES.
14    MATTEL IS ASKING FOR VERY DETAILED INFORMATION
15    REGARDING THE STORAGE DEVICES, INCLUDING, QUOTE,
16    "MANUFACTURER NAME, BRAND, MODEL NAME AND NUMBER,
17    SERIAL NUMBER, AND ALL OTHER MANUFACTURER
18    IDENTIFIERS AND THE TECHNICAL SPECIFICATIONS AND
19    CAPACITIES OF EACH STORAGE DEVICE," END QUOTE.
20            JUST BY ITS VERY TERMS, THIS
21    PARTICULAR REQUEST IS NOT ONE THAT IS SUITABLE
22    FOR A 30(B)(6) DEPOSITION.  A REQUEST OF THIS
23    KIND, THAT IS SEEKING SUCH -- SUCH DETAILED
24    INFORMATION, A COMPILATION OF INFORMATION, IS ONE
25    THAT IS BETTER SUITED FOR AN INTERROGATORY.
```

19

EXHIBIT __11__ PAGE __99__

1    M.G.A. HAS ALREADY PRODUCED A CORPORATE DESIGNEE,

2    KEVIN LOCKHEART, TO TESTIFY REGARDING THE GENERAL

3    SUBJECT OF M.G.A.'S ELECTRONIC STORAGE OF

4    INFORMATION, BACKUP DATA, AND PRESERVATION OF

5    SUCH INFORMATION AT M.G.A.

6            IT IS APPROPRIATE TO PRODUCE A

7    WITNESS OR TO ASK FOR A WITNESS UNDER RULE

8    30(B)(6) TO TESTIFY IN A MORE GENERAL WAY ABOUT

9    THE COMPANY'S PRACTICES REGARDING ELECTRONIC

10   STORAGE.  BUT IT IS NOT APPROPRIATE, IN OUR VIEW,

11   TO REQUIRE A WITNESS TO COME FORWARD TO SIMPLY

12   PROVIDE WHAT IS REALLY SIMPLY A COMPILATION OF

13   DETAILED INFORMATION ABOUT INDIVIDUAL STORAGE

14   DEVICES FOR A GROUP OF TWO DOZEN DIFFERENT

15   PEOPLE.

16            M.G.A. HAS ALREADY RESPONDED TO

17   MATTEL'S REQUEST FOR DOCUMENTS THAT REFER OR

18   RELATE TO BRATZ, INCLUDING ANY DOCUMENTS FROM THE

19   STORAGE DEVICES THAT WOULD BE AT ISSUE HERE.

20   MATTEL, IN ITS OPENING BRIEF, PROVIDED NO

21   CONCRETE REASON AT ALL WHY THE INFORMATION IT IS

22   SEEKING IS RELEVANT.  MATTEL SIMPLY ARGUED IN

23   GENERAL TERMS THAT, QUOTE, INFORMATION ABOUT

24   FILING SYSTEMS OF A PARTY COULD BE DISCOVERABLE,

25   IS LIKELY TO YIELD TO DISCOVERY OF ADMISSIBLE

20

EXHIBIT __11__ PAGE __100__

1    INFORMATION.  NOW IN REPLY, MATTEL ASSERTS THAT

2    IT'S SEEKING THIS INFORMATION TO, QUOTE, "ASSESS

3    M.G.A.'S PRODUCTION," END QUOTE.  M.G.A HAS

4    PRODUCED HUNDREDS OF THOUSANDS OF PAGES OF

5    DOCUMENTS AND A VAST AMOUNT OF ELECTRONIC

6    INFORMATION.  I DON'T THINK THERE'S ANY DISPUTE

7    ABOUT THAT.  THIS ADDITIONAL DEMAND WOULD BE

8    EXTREMELY BURDENSOME, AND IS NOT JUSTIFIED.

9           AGAIN, IF THE COURT WERE TO ALLOW

10   DISCOVERY OF THE REQUESTED INFORMATION, A

11   30(B)(6) DEPOSITION IS NOT THE PROPER VEHICLE.

12   AN INTERROGATORY IS MORE APPROPRIATE.  AND I CAN

13   APPRECIATE THAT THERE IS OFTEN A DISINCLINATION

14   TO GO THE ROUTE OF AN INTERROGATORY FOR FEAR THAT

15   THERE WILL SIMPLY BE, YOU KNOW, AN ENDLESS BACK

16   AND FORTH BETWEEN THE PARTY ASKING FOR, PROPOSING

17   AN INTERROGATORY AND THE PARTY RESPONDING, AND SO

18   ON.

19           I DON'T THINK THAT'S GOING TO HAPPEN

20   HERE.  THIS IS A PRETTY STRAIGHTFORWARD REQUEST

21   INSOFAR AS IT ASKS TO IDENTIFY CERTAIN

22   INFORMATION ABOUT STORAGE DEVICES.  AND THE BEST

23   VEHICLE TO CONVEY THAT INFORMATION, TO RESOLVE

24   ANY ISSUES REGARDING THAT INFORMATION, IS AN

25   INTERROGATORY, NOT HAVING TO -- HAVING TO EDUCATE

21

EXHIBIT __11__ PAGE __101__

1   A WITNESS ON THAT PARTICULAR KIND OF INFORMATION.

2           NOW, WITH REGARD TO TOPICS 6 TO 8,

3   THEY ASKED FOR INFORMATION -- THEY ASKED

4   BASICALLY FOR TESTIMONY SETTING FORTH THE

5   SPECIFIC STATEMENTS THAT WERE MADE TO THREE NEWS

6   PUBLICATIONS REGARDING THREE DIFFERENT ARTICLES.

7           IT'S KNOWN THAT ISAAC LARIAN MADE THE

8   STATEMENTS IN QUESTION.  THIS IS NOT A SITUATION

9   LIKE THE ONE THAT MATTEL'S COUNSEL ALLUDES TO

10  WHERE THERE ARE MANY DIFFERENT NEWS ARTICLES,

11  MANY DIFFERENT PEOPLE WHO MADE STATEMENTS TO THE

12  PRESS.  WHERE THERE IS THE SITUATION INVOLVING

13  MANY DIFFERENT STATEMENTS TO THE PRESS BY

14  DIFFERENT PEOPLE THERE IS A BASIS TO REQUEST A

15  30(B)(6) DEPOSITION, AND THE BASIS IS TO AVOID

16  BANDYING; IT'S TO STREAMLINE THE PROCESS BY WHICH

17  A PARTY, SUCH AS MATTEL, OBTAINS INFORMATION

18  ABOUT STATEMENTS TO THE PRESS, RATHER THAN MATTEL

19  HAVING TO FIND OUT ALL THE DIFFERENT PEOPLE WHO

20  MADE THE STATEMENTS AND HAVING TO CONDUCT

21  SEPARATE DEPOSITIONS OF ALL THOSE PEOPLE.

22  INSTEAD, MATTEL CAN ASK M.G.A. TO -- TO HAVE A

23  SINGLE PERSON BECOME EDUCATED ON THOSE -- ON THAT

24  INFORMATION.

25           SO THERE'S A -- IT'S A DIFFERENT

22

EXHIBIT __11__ PAGE __102__

```
 1   SITUATION THAT I'M DESCRIBING FROM THE ONE THAT
 2   IS ACTUALLY PRESENT HERE WHERE THERE'S A SINGLE
 3   PERSON, ISAAC LARIAN, WHO MADE THE STATEMENTS IN
 4   QUESTION.
 5               IN THAT INSTANCE, THERE'S NO RISK OF
 6   BANDYING, AND THE APPROPRIATE WAY FOR MATTEL TO
 7   SEEK THIS INFORMATION WOULD BE THROUGH AN
 8   EXAMINATION OF MR. LARIAN OR THROUGH
 9   INTERROGATORIES.
10               IN JUDGE LARSON'S JULY 2ND, 2007
11   ORDER ADDRESSING 30(B)(6) NOTICE, HE DID STATE
12   THAT ONE PURPOSE OF A 30(B)(6) DEPOSITION IS TO
13   PREVENT BANDYING.  AND, AS I'VE MENTIONED,
14   THERE'S NO RISK OF BANDYING IN THIS PARTICULAR
15   INSTANCE.
16               AND THE SECOND PURPOSE THAT HE
17   ARTICULATED FOR A RULE 30(B)(6) DEPOSITION IS,
18   QUOTE, "TO CREATE TESTIMONY THAT WILL BIND THE
19   CORPORATION," END QUOTE.  THAT PURPOSE IS
20   CERTAINLY SERVED HERE BY MR. LARIAN TESTIFYING IN
21   HIS INDIVIDUAL CAPACITY ON THE SUBJECT, AS HE IS
22   THE HEAD OF M.G.A. AND THE PERSON WITH KNOWLEDGE
23   OF HIS STATEMENTS TO THE PRESS.
24               EVEN A RULE 30(B)(6) DEPOSITION
25   INVOLVING A CORPORATE DEPOSITION -- A CORPORATE
```

23

EXHIBIT __11__ PAGE _103_

1    DESIGNEE IS ONLY BINDING INSOFAR AS IT'S AN

2    EVIDENTIARY ADMISSION.  IT'S NOT LIKE AN R.F.A.

3    WHERE IT'S BINDING FOR ALL PURPOSES AND YOU CAN'T

4    INTRODUCE ANY EVIDENCE OTHERWISE.  A RULE 36

5    DEPOSITION PROVIDES AN EVIDENTIARY ADMISSION BY

6    A COMPANY.  AND, HERE, IF MR. LARIAN WERE TO

7    TESTIFY ON THESE SUBJECTS -- OR HIS TESTIMONY ON

8    THESE SUBJECTS IS ESSENTIALLY NO DIFFERENT

9    BECAUSE HE IS, AFTER ALL, THE SENIOR EXECUTIVE OF

10   THE COMPANY AND SOMEBODY WITH KNOWLEDGE.

11            AND MATTEL ALREADY QUESTIONED

12   MR. LARIAN ABOUT STATEMENTS HE MADE TO THE PRESS.

13   MATTEL ALREADY HAS HAD AN OPPORTUNITY TO EXAMINE

14   HIM ON THESE PARTICULAR SUBJECTS.  AND IF MATTEL

15   SEEKS A SECOND DEPOSITION OF MR. LARIAN OR

16   FURTHER DEPOSITION OF MR. LARIAN, THAT'S A

17   SEPARATE QUESTION NOT BEFORE THE COURT NOW.

18   THAT'S A SEPARATE QUESTION THAT MATTEL CAN RAISE

19   AT THE APPROPRIATE TIME THROUGH THE APPROPRIATE

20   MEANS.  BUT THERE IS NO CAUSE, IN OUR VIEW, OR NO

21   APPROPRIATE JUSTIFICATION GIVEN WHY THERE SHOULD

22   BE A CORPORATE DESIGNEE TO TESTIFY ON THESE

23   SUBJECTS.

24            REGARDING TOPIC 9, IT ASKS FOR M.G.A.

25   TO IDENTIFY EACH PERSON WHO IT HAD PERFORM OR WHO

24

EXHIBIT  11  PAGE  104

1     IT REQUESTED TO PERFORM A, QUOTE, "TEST PROJECT,"

2     END QUOTE, IN ADVANCE OF OR IN CONSIDERATION OF

3     EMPLOYMENT BY M.G.A. SINCE JANUARY 1ST, 1995.  AS

4     MATTEL'S COUNSEL EXPLAINED, M.G.A. DID INITIALLY

5     OBJECT TO THE PHRASE "TEST PROJECT" BECAUSE IT

6     WAS VAGUE AND UNDEFINED.  MATTEL REFUSED TO PIN

7     DOWN THE DEFINITION UNTIL IT FILED THIS MOTION.

8     NOW MATTEL DEFINES THE TERM AS, QUOTE, "HAVING AN

9     EMPLOYMENT PROSPECT CREATE ARTWORK AS PART OF THE

10     JOB INTERVIEW PROCESS," END QUOTE.

11        MATTEL ASSERTS THIS INFORMATION IS

12     RELEVANT TO REBUT MR. BRYANT'S TESTIMONY THAT HE

13     DID, QUOTE, "SORT OF A TRY-OUT KIND OF PROJECT

14     FOR M.G.A." OKAY.  SO MR. BRYANT GAVE TESTIMONY

15     TO THAT EFFECT, ACCORDING TO MATTEL.  I THINK

16     IT'S HELPFUL TO STEP BACK FROM THAT TESTIMONY

17     AND -- AND VIEW IN CONTEXT THE NATURE OF THAT

18     TESTIMONY AND MATTEL'S EFFORTS TO REBUT IT.  THE

19     NOTION THAT AN INDEPENDENT CONTRACTOR SUCH AS

20     MR. BRYANT, WITH NO PRIOR HISTORY OF WORKING FOR

21     A COMPANY, WOULD BE REVIEWED ON A SMALLER PROJECT

22     BEFORE BEING GIVEN A LARGER PROJECT IS, IN MY

23     VIEW, COMPLETELY UNREMARKABLE.

24        IT WOULD BE AN EXCEPTIONAL INDUSTRY

25     WHERE THAT WAS NOT THE COMMON PRACTICE.  IT SEEMS

25

EXHIBIT 11 PAGE 105

```
1    THAT THIS DISCOVERY IS OF LITTLE, IF ANY,
2    BENEFIT.  YET IT WOULD BE VERY BURDENSOME AS IT
3    COVERS EVERY EMPLOYEE, EVERY EMPLOYEE OF A LARGE
4    INTERNATIONAL COMPANY FOR A PERIOD OF MORE THAN
5    TEN YEARS.  EVEN IF M.G.A.'S PRACTICE REGARDING
6    INDEPENDENT CONTRACTORS WAS RELEVANT, MATTEL IS
7    NOT EVEN SEEKING SUCH INFORMATION.  MATTEL IS
8    ASKING FOR THE IDENTITY OF PERSONS IN ADVANCE OF
9    OR IN CONSIDERATION OF EMPLOYMENT.  THE ISSUE
10   THAT MATTEL IS EXPLORING IS WHETHER M.G.A. HAD
11   EVER HAD ANYBODY DO ANY TEST ARTWORK BEFORE
12   EMPLOYING THE PERSON.
13              MR. BRYANT WAS RETAINED AS AN
14   INDEPENDENT CONTRACTOR.  MATTEL IS SEEKING WHAT
15   IS, ESSENTIALLY, AN APPLES AND ORANGES COMPARISON
16   IN ANY EVENT.  BUT THE MORE BASIC POINT IS
17   THAT -- IS THAT THIS IS AN ISSUE THAT -- WHERE
18   THE DISCOVERY WOULD BE OF LITTLE IF ANY BENEFIT
19   AT ALL, AND YET THE BURDEN THAT'S BEING IMPOSED
20   REQUIRING M.G.A. TO CANVAS ALL OF ITS EMPLOYEES
21   OVER THE LAST TEN YEARS TO SEE IF ANY OF THEM DID
22   ANY -- ANY ARTWORK OR SHOWED ANY ARTWORK OR SO ON
23   IN ADVANCE OF BEING EMPLOYED DOESN'T SEEM TO BE A
24   WORTHWHILE EXERCISE.  THERE ARE SO MANY OTHER
25   THINGS TO DO IN THIS LITIGATION.
```

26

EXHIBIT __11__ PAGE __166__

1    30(B)(6) DEPOSITION THAT IT WAS INTENDED TO HAVE.

2            TOPICS 11 TO 13 ASK FOR A LISTING OF

3    PAYMENTS MADE BY M.G.A. TO ISAAC LARIAN, FARHAD

4    LARIAN, MORAD ZARABI OR ANY OF THEIR FAMILY

5    MEMBERS SINCE JANUARY 1ST, 1999, INCLUDING THE

6    PAYMENT AMOUNT, TIMING, RECIPIENT, THE BANK TO

7    WHICH THE PAYMENT WAS MADE AND THE REASONS FOR

8    THE PAYMENT.  AND, AGAIN, ON ITS FACE THIS IS A

9    REQUEST THAT IS BETTER SUITED FOR AN

10   INTERROGATORY BECAUSE IT SIMPLY ASKS FOR A

11   COMPILATION OF INFORMATION.

12           MATTEL CLAIMS THAT -- I JUST WANT TO

13   WALK THROUGH BRIEFLY MATTEL'S CLAIM THAT THIS

14   INFORMATION -- THIS PAYMENT INFORMATION REGARDING

15   FARHAD LARIAN AND MORAD ZARABI IS RELEVANT TO

16   CREDIBILITY AND BIAS.

17           LET'S BEGIN WITH MR. ZARABI, WHO

18   MATTEL DESCRIBES AS HAVING BEEN AN ARBITRATOR OF

19   A DISPUTE BETWEEN ISAAC LARIAN AND HIS BROTHER

20   FARHAD LARIAN IN WHICH THE TIMING OF THE

21   DEVELOPMENT OF BRATZ WAS AN ISSUE.

22           THERE IS NOTHING -- ABSOLUTELY

23   NOTHING IN THE RECORD ON THIS MOTION TO SHOW THAT

24   MR. ZARABI HAD ANY PERSONAL KNOWLEDGE WHATSOEVER

25   OF THE TIMING OF THE DEVELOPMENT OF BRATZ.

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT __11__ PAGE _108_

1   THERE'S NOTHING IN THE RECORD THAT HE WAS

2   EMPLOYED BY M.G.A. OR IN ANY WAY WAS CONNECTED TO

3   OR WORKED ON BRATZ IN CONNECTION WITH ITS

4   DEVELOPMENT IN THE -- DURING THE PERIOD WHEN THAT

5   TOOK PLACE. AND SO, IN THAT SENSE, HE'S NOT A

6   RELEVANT WITNESS AT ALL IN THIS CASE. AT MOST,

7   HE IS A WITNESS TO AN ARBITRATION.

8            JUDGE INFANTE IS A WITNESS TO

9   NUMEROUS, BUT MORE THAN SHOULD BE NECESSARY,

10   DISCOVERY PROCEEDINGS IN THIS LAWSUIT, BUT I

11   DON'T THINK THE PARTY -- IT WOULD BE APPROPRIATE

12   TO CALL JUDGE INFANTE YEARS FROM NOW TO BE

13   TESTIFYING ABOUT THE UNDERLYING TIMING AND

14   DEVELOPMENT OF BRATZ. AND BY THE SAME TOKEN, I

15   DON'T THINK IT'S APPROPRIATE FOR MR. ZARABI TO BE

16   TESTIFYING ABOUT THOSE MATTERS. HE IS NOT A

17   RELEVANT WITNESS ON THOSE MATTERS. AND FOR THAT

18   REASON ANY PAYMENTS TO HIM AS AN ARBITRATOR ARE

19   ALSO NOT RELEVANT.

20            WITH REGARD TO FARHAD LARIAN,

21   THERE IS ALSO NOTHING IN THE RECORD TODAY TO SHOW

22   THAT FARHAD LARIAN HAS PERSONAL KNOWLEDGE OF THE

23   TIMING OF THE DEVELOPMENT OF BRATZ.

24            EVEN THOUGH HE HAD A DISPUTE WITH HIS

25   BROTHER IN WHICH THE TIMING OF THE DEVELOPMENT

29

EXHIBIT __11__ PAGE __107__

## PROOF OF SERVICE

1

2     I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service,

3     1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4     On January 28, 2008, I served true copies of the following document(s) described as **DECLARATION OF TAMAR BUCHAKJIAN IN SUPPORT OF MATTEL, INC.'S**

5     **NOTICE OF MOTION AND MOTION TO COMPEL A COMPLETE RESPONSE TO MATTEL'S SUPPLEMENTAL INTERROGATORY RE TEST PROJECTS** on the parties in

6     this action as follows:

7     Thomas J. Nolan                          Mark E. Overland
      **Skadden, Arps, Slate, Meagher & Flom**   David C. Scheper

8     **LLP**                                    Alexander H. Cote
      300 South Grand Ave., Ste. 3400          **Overland Borenstein Scheper & Kim**

9     Los Angeles, CA 90071                    **LLP**
                                               300 South Grand Avenue, Suite 2750

10                                             Los Angeles, CA 90071

11

12    **BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s) being served.

13

14    I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

15    Executed on January 28, 2008, at Los Angeles, California.

16

17                                    NOW LEGAL -- Dave Quintana

18

19

20

21

22

23

24

25

26

27

28

07209/2217862.1

1                                    **PROOF OF SERVICE**

2          I am employed in the County of Los Angeles, State of California.  I am over the age of
   eighteen years and not a party to the within action; my business address is 865 South Figueroa
3  Street, 10th Floor, Los Angeles, California 90017-2543.

4  On January 28, 2008, I served true copies of the following document(s) described as
   **DECLARATION OF TAMAR BUCHAKJIAN IN SUPPORT OF MATTEL, INC.'S**
5  **NOTICE OF MOTION AND MOTION TO COMPEL A COMPLETE RESPONSE TO**
   **MATTEL'S SUPPLEMENTAL INTERROGATORY RE TEST PROJECTS** on the parties in
6  this action as follows:
            John W. Keker, Esq.
7           Michael H. Page, Esq.
            Christina M. Anderson, Esq.
8           **Keker & Van Nest, LLP**
            710 Sansome Street
9           San Francisco, CA 94111

10 **BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I
   deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with
11 postage thereon fully prepaid.

12 **BY FEDEX:** I deposited such document(s) in a box or other facility regularly maintained by
   FedEx, or delivered such document(s) to a courier or driver authorized by FedEx to receive
13 documents, in sealed envelope(s) or package(s) designated by FedEx with delivery fees paid or
   provided for, addressed to the person(s) being served.

14
           I declare that I am employed in the office of a member of the bar of this Court at whose
15 direction the service was made.

16         Executed on January 28, 2008, at Los Angeles, California.

17

18         _____
           Andrea Hoeven
19

20

21

22

23

24

25

26

27

28

07209/2217871.1