# EXHIBIT 1

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2       (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3       (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4       (joncorey@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
      Telephone: (213) 443-3000
6   Facsimile:  (213) 443-3100

7   Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11
     CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)
12
                     Plaintiff,
13                                          NOTICE OF DEPOSITION OF MGA
                                            ENTERTAINMENT (HK) LIMITED
14        vs.                               PURSUANT TO FEDERAL RULE OF
                                            CIVIL PROCEDURE 30(B)(6)
15
     MATTEL, INC., a Delaware               Discovery Cut-Off: October 22, 2007
16   corporation,                           Pre-Trial Conference: January 14, 2008
                                            Trial Date: February 12, 2008
17                   Defendant.

18
     AND CONSOLIDATED ACTIONS
19

20

21

22

23

24

25

26

27

28

07209/2048031.1

EXHIBIT 1 PAGE 8

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 21, 2007 beginning on 9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant MGA Entertainment (HK) Limited at the offices of Quinn Emanuel Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017. Pursuant to Fed. R. Civ. P. 30(b)(6), MGA Entertainment (HK) Limited shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf concerning each of the topics set forth in Exhibit A hereto.

PLEASE TAKE FURTHER NOTICE that the deposition will take place before a duly authorized notary public or other officer authorized to administer oaths at depositions, and will continue from day to day, Sundays, Saturdays and legal holidays excepted, until completed.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(2), the deposition will be videotaped.

DATED: June 4, 2007             QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By _____
   Michael T. Zeller
   Attorneys for Mattel, Inc.


**EXHIBIT 1 PAGE 9**

07209/2048031.

-1-

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT (HK) LIMITED

# EXHIBIT A

1.     "YOU," "YOUR" or "MGA" means MGA Entertainment (HK) Limited, any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.     "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.     "BRATZ" means any project, product or doll ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product or doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product or doll or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each EMBODIMENT of such doll or any portion thereof.  As used herein, "product or doll or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.  Without limiting the generality of the foregoing, and contrary to MGA's recent assertions in connection with other Mattel discovery requests, the term "BRATZ" does not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

**EXHIBIT** ⊥ **PAGE** 10

07209/2048031.

4.    "DESIGN" or "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

5.    "EMBODIMENT" means any representation, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

6.    The DRAWINGS means those documents produced as Bates Nos. MGA000053-57,    MGA000392-395,    MGA000435-439,    MGA000455-481 MGA004606,   MGA004608,   MGA004640,   MGA005065,   MGA006423-6426, MGA006432-6436, MGA006438-06440, MGA006442-6467, and SL00016-45.

7.    "ANGEL" refers to those projects, products or dolls, sometimes called "Angel Faces" and/or "Prayer Angels," that are the subject of MGA000706-08, MGA000710-12,    MGA000714-16,    MGA000718-20,    MGA000724-28    and MGA000734. Without limiting the generality of the foregoing, and contrary to MGA's recent assertions in connection with other Mattel discovery requests, the term "ANGEL" does not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

**EXHIBIT** ___1___ **PAGE** ___11___

1    8.    The "ANGEL DOCUMENTS" means each of the following:
2  MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20, MGA000724-
3  26, MGA000724-28 and MGA000734.

4    9.    "BASED ON" means copied or reproduced from, substantially
5  similar to, based on or derived from in any manner, whether in whole or in part.

6    10.    "CREATED" means produced, prepared, created, authored,
7  conceived of or reduced to practice, whether in whole or in part and whether alone or
8  jointly with others.

9    11.    "IDENTIFY" or "IDENTITY" means the following:
10    (a)    With reference to an individual, means such individual's
11  name, current or last known business title, current or last known business affiliation,
12  current or last known relationship to YOU, current or last known residential and
13  business address, and current or last known telephone number.

14    (b)    With reference to an entity or governmental organization,
15  means such entity's or organization's name, present or last-known address, and present
16  or last-known telephone number and the IDENTITY of each individual who has served
17  or participated as a contact for or on behalf of such entity or organization.

18    (c)    With reference to an EMBODIMENT, means the IDENTITY
19  of the individual author(s) or creator(s) of the EMBODIMENT as well as of each other
20  individual who contributed in any manner to the EMBODIMENT; the form, material
21  and medium of the EMBODIMENT (e.g., preliminary three-dimensional resin
22  sculpture, final three-dimensional wax sculpture, digitized file of final three-
23  dimensional wax sculpture, two-dimensional design drawing on paper); each title or
24  name of the EMBODIMENT; the start and end date(s) of the EMBODIMENT's
25  creation or preparation; and the current location of the EMBODIMENT.

26    12.    "COMMUNICATION" or "COMMUNICATIONS" means and
27  includes any disclosure, transfer or exchange of information between two or more
28

**EXHIBIT 1 PAGE 2**

07209/2048031.

PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

13.   "ACTION" means this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

14.   "DIGITAL INFORMATION" means any information created or stored digitally, including but not limited to electronically, magnetically or optically.

15.   "SYSTEM" or "SYSTEMS" means any computer or network of computers or other network devices that allow a two or more computers to share information and equipment, including but not limited to local area networks, wide area networks, storage area networks, client-server networks or peer-to-peer networks. The use of the term "SYSTEM" or "SYSTEMS" also includes the brand, model number, technical specifications, and capacities of the computers who are part of each such SYSTEM.

16.   "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

17.   "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind,

**EXHIBIT 1 PAGE 13**

07209/2048031.

statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

18.   "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

19.   The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

### Topics of Examination

1.   The origin, conception, creation, design, sculpting, development, engineering, rotocasting, modeling and prototyping of BRATZ and BRATZ DESIGNS CREATED prior to June 30, 2001 (regardless of when or whether such was released in any form to the public), including without limitation the timing thereof, the IDENTITY

**EXHIBIT 1 PAGE 14**

1  of each PERSON with knowledge thereof, the IDENTITY of each PERSON involved

2  therein, and the nature, extent and time period(s) of each such PERSON's involvement.

3      2.     The circumstances under which BRATZ or any BRATZ DESIGN

4  first came to YOUR attention, including without limitation the timing, method and

5  manner thereof and the IDENTITY of each PERSON with knowledge thereof.

6      3.     The identity of each doll, product, work or item produced,

7  developed, manufactured, licensed, sold or offered for sale by or for YOU or on YOUR

8  behalf that was BASED ON any BRATZ DESIGN which BRYANT CREATED.

9      4.     To the extent not covered by Topic 3, each EMBODIMENT of any

10  doll, doll accessory or toy that BRYANT CREATED prior to June 30, 2001.

11      5.     The work, activities and/or services that BRYANT performed for or

12  with YOU or on YOUR behalf prior to June 30, 2001.

13      6.     The origin, conception and creation of DESIGNS that BRYANT

14  CREATED prior to June 30, 2001 and in which YOU claim to have, or have ever

15  claimed to have, any right, title or interest (whether in whole or in part).

16      7.     The identity of, and the design, development, sculpting,

17  development, engineering, rotocasting, modeling, prototyping and first sale of, any doll,

18  product, work or item that has been produced, developed, manufactured, licensed, sold

19  or offered for sale by, for or on behalf of YOU and that was BASED ON any DESIGN

20  referenced in Topic 6.

21      8.     Each EMBODIMENT of BRATZ that was CREATED prior to June

22  30, 2001 or that was at any time BASED ON any BRATZ DESIGN which was

23  CREATED prior to June 30, 2001.

24      9.     The DRAWINGS, including without limitation the authorship,

25  creation, dissemination and use thereof and the source, meaning, authenticity and

26  timing of any dates thereon.

27      10.     The email produced by MGA in this ACTION as MGA

28  MGA000422, including without limitation the IDENTITY, current and last known

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT (HK) LIMITED

07209/2048031.

**EXHIBIT __1__ PAGE __15__**

1  location, disposition and use of the DOCUMENTS and tangible items that are
2  referenced in such email.

3       11.    The email and attachment produced by MGA in this ACTION as
4  MGA000007-MGA000009, including without limitation the IDENTITY, current and
5  last known location, disposition and use of each sculpt referenced in and depicted by
6  such email and attachment.

7       12.    The showing of BRATZ at Hong Kong Toy Fair in January 2001,
8  including without limitation the IDENTITY and whereabouts of DOCUMENTS
9  (including photographs and videotapes) and tangible items that REFER OR RELATE
10  TO such toy fair.

11       13.    The showing of BRATZ at Tokyo Toy Fair in February 2001,
12  including without limitation the IDENTITY and whereabouts of DOCUMENTS
13  (including photographs and videotapes) and tangible items that REFER OR RELATE
14  TO such toy fair.

15       14.    The IDENTITY of each vendor or third party who performed or
16  contributed, or who was considered, solicited, requested, proposed or contemplated by
17  YOU or BRYANT to perform or contribute, any activities, work or services in
18  connection with BRATZ or BRATZ DESIGNS prior to June 30, 2001, YOUR
19  COMMUNICATIONS therewith, and the nature, extent and timing of such activities,
20  work or services.

21       15.    The exhibition, or proposed, offered, contemplated or requested
22  exhibition, of BRATZ or any BRATZ DESIGN to any third party prior to June 30,
23  2001, including without limitation each instance in which BRATZ or any BRATZ
24  DESIGN was marketed, offered for sale, pitched, shown or disclosed to, or otherwise
25  discussed with or communicated to, any retailer, wholesaler or distributor and the
26  DOCUMENTS that REFER OR RELATE thereto.

27       16.    The actual, proposed, requested or contemplated manufacture,
28  fabrication or tooling (including the production of molds) of BRATZ, including without

-8-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT (HK) LIMITED

**EXHIBIT __|__ PAGE _16_**

1  limitation the timing thereof and the IDENTITY of each manufacturer and potential
2  manufacturer used, proposed or considered.

3      17.    COMMUNICATIONS prior to June 30, 2001 between YOU and
4  any manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or
5  potential manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE
6  TO BRATZ or any BRATZ DESIGN.

7      18.    When and where BRATZ was first manufactured, shipped,
8  distributed and sold, and the IDENTITIES and roles of PERSONS involved therein.

9      19.    The licensing, including without limitation the proposed or
10 requested licensing, of BRATZ or any BRATZ DESIGN prior to December 31, 2001,
11 including without limitation the timing thereof, the IDENTITY of each such licensee or
12 proposed or requested licensee and the product(s) or proposed product(s) involved.

13     20.    COMMUNICATIONS between YOU and BRYANT prior to
14 January 1, 2001, including without limitation the content, means and timing of such
15 COMMUNICATIONS, the IDENTITY of the PERSONS who were parties thereto and
16 the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

17     21.    COMMUNICATIONS that BRYANT made for YOU or on YOUR
18 behalf with any PERSON other than YOU that REFER OR RELATE TO BRATZ prior
19 to June 30, 2001.

20     22.    YOUR agreements and contracts with BRYANT, including without
21 limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that
22 REFER OR RELATE thereto, and any actual or proposed amendments thereto.

23     23.    Each agreement or contract between YOU and any PERSON other
24 than BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that
25 REFERS OR RELATES to the time period prior to December 31, 2001 (regardless of
26 when such agreement or contract was negotiated or executed), including without
27 limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that
28 REFER OR RELATE thereto, and any actual or proposed amendments thereto.

07209/2048031.

-9-

EXHIBIT 1 PAGE 17

24. YOUR knowledge, prior to April 29, 2004, of BRYANT's contracts and agreements with, and his obligations to, MATTEL.

25. YOUR knowledge of, and access to, non-public MATTEL DIVA STARZ project information and DESIGNS prior to June 30, 2001.

26. The payment of money or anything of value by or for YOU or on YOUR behalf that has been made to, for or on behalf of BRYANT (a) for work, services or activities performed by BRYANT prior to January 1, 2001 (regardless of when such payment was actually made), (b) for DESIGNS CREATED by BRYANT prior to January 1, 2001 (regardless of when such payment was actually made) or (c) in connection with BRATZ or any BRATZ DESIGN at any time, including without limitation the timing, manner and amount(s) thereof and the reasons therefor.

27. Any indemnification and fee arrangement that YOU and/or BRYANT has sought, proposed, requested or obtained in connection with this ACTION.

28. YOUR revenues and profits from BRATZ, including without limitation YOUR gross and net profits, and YOUR costs associated therewith.

29. YOUR net worth.

30. The payment of money or anything of value that YOU have made or offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought or received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s) and reasons therefor.

31. COMMUNICATIONS between YOU and Elise Cloonan that REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including without limitation the IDENTITY of DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

32. COMMUNICATIONS made by, for or on behalf of YOU, whether directly or indirectly, with Anna Rhee, including without limitation since February 2005 (but not including any such COMMUNICATIONS with her legal counsel).

07209/2048031.

-10-

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT (HK) LIMITED

EXHIBIT 1 PAGE 18

1    33.    COMMUNICATIONS between YOU and Veronica Marlow,

2  Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), Sarah

3  Halpern, Steve Linker, Liz Hogan and/or Jesse Ramirez that REFER OR RELATE TO

4  BRYANT, MATTEL, BRATZ and/or Anna Rhee, including without limitation all

5  DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

6    34.    The IDENTITY of each PERSON who, at any time since January 1,

7  1998, has performed any work or services for, by or on behalf of YOU while such

8  PERSON was employed by MATTEL, the nature and timing of each such PERSON's

9  work or services and the amount(s) paid by YOU to each such PERSON.

10    35.    COMMUNICATIONS between YOU and BRYANT that REFER

11  OR RELATE TO MATTEL or REFER OR RELATE TO any DOCUMENT that was

12  prepared, authored or created by MATTEL that BRYANT has ever provided to, shown,

13  described to, communicated to or disclosed in any manner to YOU.

14    36.    The applications for registration and the registrations for copyright,

15  patent, trademark or any other right that REFER OR RELATE TO BRATZ or BRATZ

16  DESIGNS sought, made or obtained by, for or on behalf of YOU or BRYANT,

17  including without limitation COMMUNICATIONS pertaining thereto.

18    37.    Other than those previously filed and served in this ACTION or in

19  which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony,

20  transcripts, declarations, affidavits and other sworn written statements of any other type

21  by or from YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ

22  THAT REFER OR RELATE TO the time period prior to June 30, 2001 (regardless of

23  when such testimony or sworn statement was taken, given, signed, made or filed).

24    38.    COMMUNICATIONS between YOU and Universal Commerce

25  Corp., Ltd. prior to June 30, 2001.

26    39.    The source, meaning and authenticity of SL00013-14, including

27  without limitation the timing of its creation and the handwriting thereon.

28

-11-

EXHIBIT __1__ PAGE _19_

1       40.    YOUR corporate structure since January 1, 1999, including without

2  limitation YOUR relationship with MGA Entertainment, Inc., and the IDENTITY of

3  YOUR officers, directors, shareholders and employees since January 1, 1999.

4       41.    The retention or destruction policies, procedures and practices for

5  YOUR DOCUMENTS and DIGITAL INFORMATION that REFER OR RELATE TO

6  BRATZ since January 1, 1999, including without limitation the retention or destruction

7  of DOCUMENTS and DIGITAL INFORMATION when (a) hardware is replaced,

8  modified or upgraded and (b) when PERSONS leave YOUR employ.

9       42.    The preservation, collection, destruction, removal, transfer, loss or

10  impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection

11  with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

12       43.    The preservation, collection, destruction, removal, transfer, loss or

13  impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1,

14  1999 that REFER OR RELATE TO MATTEL (including without limitation to any

15  MATTEL product, plan or information) that YOU received in any manner from any

16  PERSON who was at the time an employee of MATTEL or who had previously been

17  an employee of MATTEL.

18       44.    The testing of or sampling from DOCUMENTS that REFER OR

19  RELATE TO BRATZ or BRYANT, including without limitation such testing or

20  sampling in connection with any ink, paper or chemical analysis performed or

21  attempted to be performed to date, any DOCUMENTS that REFER OR RELATE

22  thereto and all results and reports relating thereto.

23       45.    YOUR DIGITAL INFORMATION data backup policies, practices

24  and procedures from January 1, 1999 to the present, including without limitation the

25  location and specifications of any media used to preserve YOUR DIGITAL

26  INFORMATION and the software, if any, used to preserve YOUR DIGITAL

27  INFORMATION.

28

-12-

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT (HK) LIMITED

EXHIBIT __1__ PAGE 20

46.     The DIGITAL INFORMATION SYSTEMS and the application software that YOU have used since January 1, 1999 that REFER OR RELATE TO design, development, planning, inventory, manufacturing, sales, shipping and accounting, including without limitation the common or shared storage for such DIGITAL INFORMATION SYSTEMS, remote access of such DIGITAL INFORMATION SYSTEMS, and any changes, modifications or upgrades to such DIGITAL INFORMATION SYSTEMS or application software.

47.     The IDENTITY of PERSONS, including without limitation vendors, who since January 1, 1999 have been responsible for or supported YOUR DIGITAL INFORMATION SYSTEMS, including without limitation the IDENTITY of such PERSON who serviced or provided hardware for YOUR DIGITAL INFORMATION SYSTEMS, hosted, stored, archived or maintained YOUR DIGITAL INFORMATION, including but not limited to internet service providers, and provided analytical, training or implementation services with respect to YOUR DIGITAL INFORMATION SYSTEMS.

48.     The electronic messaging SYSTEMS used by YOUR employees within the scope of their employment between January 1, 1999 and the present, including but not limited to electronic mail, instant messenger, telephone or voice-mail, and the routing of such electronic messages to, from or within MGA.

49.     YOUR policies, practices and procedures regarding the use of transportable media that contain or are capable of containing DIGITAL INFORMATION, including but not limited to floppy discs, compact discs, DVDs, USB drives, portable hard drives, digital cameras and personal digital assistants.

50.     The identity of each PERSON involved in ANGEL, and the nature and time period(s) of each such PERSON's involvement therein.

51.     The conception, design, development, production, sculpting, rotocasting, molding, modeling or prototyping of ANGEL, including without limitation the chronology thereof.

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT (HK) LIMITED

07209/2048031.

EXHIBIT ___1___ PAGE _21_

1    52.    The identity of, and the design, development and first sale of, any
2  products resulting from ANGEL.

3    53.    The source, meaning and authenticity of the ANGEL
4  DOCUMENTS, including of the handwritten notations thereon.

5    54.    The identity of any computer or computer system by or from which
6  the ANGEL DOCUMENTS were created or generated or in which they have been
7  maintained, and the identity of the computer programming or software used in
8  connection therewith.

9    55.    The identity of DOCUMENTS and tangible items that REFER OR
10  RELATE TO ANGEL.

11    56.    YOUR COMMUNICATIONS that REFER OR RELATE TO
12  ANGEL, including without limitation with MGA Entertainment, Inc., prior to
13  December 31, 2001.

14    57.    The identity, source and current location of each head that was
15  provided by, for or on behalf of YOU to Anna Rhee for painting prior to October 21,
16  2000.

17    58.    The identity of each PERSON involved in the conception, design,
18  development, production, sculpting, rotocasting, molding, modeling or prototyping of
19  each head that was provided by, for or on behalf of YOU to Anna Rhee for painting
20  prior to October 21, 2000.

21    59.    To the extent not covered by any other Topic, the roles, involvement
22  and activities of Stephen Lee, Cecelia Kwok, Franki Tsang, Victor Lee, Victor
23  Raymond Fung, CY Ho, Eric Yip, Jimmy Cheng and Samuel Wong in connection with
24  BRATZ and/or ANGEL prior to December 31, 2001, including without limitation the
25  timing of such roles, involvement and activities.

26    60.    To the extent not covered by any other Topic, the IDENTITY,
27  current and last known location, and disposition of DOCUMENTS that REFER OR
28  RELATE TO BRATZ and/or ANGEL that were, prior to December 31, 2001, created,

07209/2048031.

-14-

EXHIBIT 1 PAGE 22

1  generated, sent and/or received by YOU, including without limitation by Stephen Lee,

2  Cecelia Kwok, Franki Tsang, Victor Lee, Eric Yip, Victor Raymond Fung, CY Ho,

3  Jimmy Cheng and/or Samuel Wong.

4         61.    YOUR relationship with Stephen Lee since April 1, 2004, including

5  without limitation any agreements or contracts between YOU and/or MGA

6  Entertainment, Inc., on the one hand, and Stephen Lee, on the other hand.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2048031.

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT (HK) LIMITED

EXHIBIT __1__ PAGE 23

# EXHIBIT 2

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone:   (213) 443-3000
6   Facsimile:   (213) 443-3100

7   Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

12          Plaintiff,
                                         SECOND NOTICE OF DEPOSITION
13                                       OF MGA ENTERTAINMENT, INC.
                                         PURSUANT TO FEDERAL RULE OF
14      vs.                              CIVIL PROCEDURE 30(B)(6)

15  MATTEL, INC., a Delaware
    corporation,                         Discovery Cut-off:  None Set
16                                       Pre-trial Conference:  None Set
            Defendant.                   Trial Date:  None Set
17

18  ─────────────────────────
    AND CONSOLIDATED ACTIONS
19

20

21

22

23

24

25

26

27

28

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT 2 PAGE 24

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 15, 2007 beginning on 9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017. Pursuant to Fed. R. Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf concerning each of the topics set forth in Exhibit A hereto.

PLEASE TAKE FURTHER NOTICE that the deposition will take place before a duly authorized notary public or other officer authorized to administer oaths at depositions, and will continue from day to day, Sundays, Saturdays and legal holidays excepted, until completed.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(2), the deposition will be videotaped.

DATED: February 1, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                                 By _____
                                    Michael T. Zeller
                                    Attorneys for Mattel, Inc.

07209/2048031

-1-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT 2 PAGE 25

**Exhibit A**

EXHIBIT 2 PAGE 26

## EXHIBIT A

1.      "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.      "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.      "BRATZ" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also, previously or subsequently called) and any product or doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product or doll or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each EMBODIMENT of such doll or any portion thereof. As used herein, "product or doll or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.

4.      "DESIGN" or "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the

07209/2048031.

-2-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT 2 PAGE 27

foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

5. "EMBODIMENT" means any representation, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

6. The DRAWINGS means those documents produced as Bates Nos. MGA000053-57, MGA000392-395, MGA000435-439, MGA000455-481 MGA004606, MGA004608, MGA004640, MGA005065, MGA006423-6426, MGA006432-6436, MGA006438-06440, MGA006442-6467, and SL00016-45.

7. "BASED ON" means copied or reproduced from, substantially similar to, based on or derived from in any manner, whether in whole or in part.

8. "CREATED" means produced, prepared, created, authored, conceived of or reduced to practice, whether in whole or in part and whether alone or jointly with others.

9. "IDENTIFY" or "IDENTITY" means the following:

(a) With reference to an individual, means such individual's name, current or last known business title, current or last known business affiliation, current or last known relationship to YOU, current or last known residential and business address, and current or last known telephone number.

(b) With reference to an entity or governmental organization, means such entity's or organization's name, present or last-known address, and present

-3-

**EXHIBIT 2 PAGE 28**

or last-known telephone number and the IDENTITY of each individual who has served or participated as a contact for or on behalf of such entity or organization.

(c)    With reference to an EMBODIMENT, means the IDENTITY of the individual author(s) or creator(s) of the EMBODIMENT as well as of each other individual who contributed in any manner to the EMBODIMENT; the form, material and medium of the EMBODIMENT (e.g., preliminary three-dimensional resin sculpture, final three-dimensional wax sculpture, digitized file of final three-dimensional wax sculpture, two-dimensional design drawing on paper); each title or name of the EMBODIMENT; the start and end date(s) of the EMBODIMENT's creation or preparation; and the current location of the EMBODIMENT.

10.    "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

11.    "ACTION" shall mean this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

12.    "DIGITAL INFORMATION" shall mean any information created or stored digitally, including but not limited to electronically, magnetically or optically.

13.    "SYSTEM" or "SYSTEMS" shall mean any computer or network of computers or other network devices that allow a two or more computers to share information and equipment, including but not limited to local area networks, wide area networks, storage area networks, client-server networks or peer-to-peer networks. The

07209/2048031.

-4-

EXHIBIT 2 PAGE 29

use of the term "SYSTEM" or "SYSTEMS" shall also include the brand, model number, technical specifications, and capacities of the computers who are part of each such SYSTEM.

14.    "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

15.    "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved.  Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

16.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and

07209/2048031

EXHIBIT 2 PAGE 30

directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

17.   The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

## Topics of Examination

1.   The origin, conception, creation, design, sculpting, development, engineering, rotocasting, modeling and prototyping of BRATZ and BRATZ DESIGNS CREATED prior to June 30, 2001 (regardless of when or whether such was released in any form to the public), including without limitation the timing thereof, the IDENTITY of each PERSON with knowledge thereof, the IDENTITY of each PERSON involved therein, and the nature, extent and time period(s) of each such PERSON's involvement.

2.   The circumstances under which BRATZ or any BRATZ DESIGN first came to YOUR attention, including without limitation the timing, method and manner thereof and the IDENTITY of each PERSON with knowledge thereof.

3.   The identity of each doll, product, work or item produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or on YOUR behalf that was BASED ON any BRATZ DESIGN which BRYANT CREATED.

4.   To the extent not covered by Topic 3, each EMBODIMENT of any doll, doll accessory or toy that BRYANT CREATED prior to June 30, 2001.

5.   The work, activities and/or services that BRYANT performed for or with YOU or on YOUR behalf prior to June 30, 2001.

EXHIBIT 2 PAGE 31

6.    The origin, conception and creation of DESIGNS that BRYANT CREATED prior to June 30, 2001 and in which YOU claim to have, or have ever claimed to have, any right, title or interest (whether in whole or in part).

7.    The identity of, and the design, development, sculpting, development, engineering, rotocasting, modeling, prototyping and first sale of, any doll, product, work or item that has been produced, developed, manufactured, licensed, sold or offered for sale by, for or on behalf of YOU and that was BASED ON any DESIGN referenced in Topic 6.

8.    Each EMBODIMENT of BRATZ that was CREATED prior to June 30, 2001 or that was at any time BASED ON any BRATZ DESIGN which was CREATED prior to June 30, 2001.

9.    The DRAWINGS, including without limitation the authorship, creation, dissemination and use thereof and the source, meaning, authenticity and timing of any dates thereon.

10.    The IDENTITY of each vendor or third party who performed or contributed, or who was considered, solicited, requested, proposed or contemplated by YOU or BRYANT to perform or contribute, any activities, work or services in connection with BRATZ or BRATZ DESIGNS prior to June 30, 2001, YOUR COMMUNICATIONS therewith, and the nature, extent and timing of such activities, work or services.

11.    The exhibition, or proposed, offered, contemplated or requested exhibition, of BRATZ or any BRATZ DESIGN to any third party prior to June 30, 2001, including without limitation each instance in which BRATZ or any BRATZ DESIGN was marketed, offered for sale, pitched, shown or disclosed to, or otherwise discussed with or communicated to, any retailer, wholesaler or distributor and the DOCUMENTS that REFER OR RELATE thereto.

12.    The actual, proposed, requested or contemplated manufacture, fabrication or tooling (including the production of molds) of BRATZ, including without

07209/2048031.

-7-

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT 2 PAGE 32

1  limitation the timing thereof and the IDENTITY of each manufacturer and potential
2  manufacturer used, proposed or considered.

3       13.   COMMUNICATIONS prior to June 30, 2001 between YOU and
4  any manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or
5  potential manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE
6  TO BRATZ or any BRATZ DESIGN.

7       14.   When and where BRATZ was first manufactured, shipped,
8  distributed and sold, and the IDENTITIES and roles of PERSONS involved therein.

9       15.   The licensing, including without limitation the proposed or
10 requested licensing, of BRATZ or any BRATZ DESIGN prior to December 31, 2001,
11 including without limitation the timing thereof, the IDENTITY of each such licensee or
12 proposed or requested licensee and the product(s) or proposed product(s) involved.

13      16.   COMMUNICATIONS between YOU and BRYANT prior to
14 January 1, 2001, including without limitation the content, means and timing of such
15 COMMUNICATIONS, the IDENTITY of the PERSONS who were parties thereto and
16 the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

17      17.   COMMUNICATIONS that BRYANT made for YOU or on YOUR
18 behalf with any PERSON other than YOU that REFER OR RELATE TO BRATZ prior
19 to June 30, 2001.

20      18.   YOUR agreements and contracts with BRYANT, including without
21 limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that
22 REFER OR RELATE thereto, and any actual or proposed amendments thereto.

23      19.   Each agreement or contract between YOU and any PERSON other
24 than BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that
25 REFERS OR RELATES to the time period prior to December 31, 2001 (regardless of
26 when such agreement or contract was negotiated or executed), including without
27 limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that
28 REFER OR RELATE thereto, and any actual or proposed amendments thereto.

07209/2048031.

-8-

EXHIBIT 2 PAGE 33

20.   YOUR knowledge, prior to April 29, 2004, of BRYANT's contracts and agreements with, and his obligations to, MATTEL.

21.   YOUR knowledge of, and access to, non-public MATTEL DIVA STARZ project information and DESIGNS prior to June 30, 2001.

22.   The payment of money or anything of value by or for YOU or on YOUR behalf that has been made to, for or on behalf of BRYANT (a) for work, services or activities performed by BRYANT prior to January 1, 2001 (regardless of when such payment was actually made), (b) for DESIGNS CREATED by BRYANT prior to January 1, 2001 (regardless of when such payment was actually made) or (c) in connection with BRATZ or any BRATZ DESIGN at any time, including without limitation the timing, manner and amount(s) thereof and the reasons therefor.

23.   The payment of royalties to, for or on behalf of BRYANT made by or for YOU or on YOUR behalf, including the timing, manner and amounts of such payments and the reasons therefor.

24.   Any indemnification and fee arrangement that YOU and/or BRYANT has sought, proposed, requested or obtained in connection with this ACTION.

25.   YOUR revenues and profits from BRATZ, including without limitation YOUR gross and net profits, and YOUR costs associated therewith.

26.   YOUR net worth.

27.   The payment of money or anything of value that YOU have made or offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought or received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s) and reasons therefor.

28.   COMMUNICATIONS between YOU and Elise Cloonan that REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

07209/2048031

EXHIBIT 2 PAGE 34

29.     COMMUNICATIONS made by, for or on behalf of YOU, whether directly or indirectly, with Anna Rhee, including without limitation since February 2005 (but not including any such COMMUNICATIONS with her legal counsel).

30.     COMMUNICATIONS between YOU and Veronica Marlow, Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), Sarah Halpern, Steve Linker, Liz Hogan and/or Jesse Ramirez that REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including without limitation all DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

31.     The IDENTITY of each PERSON who, at any time since January 1, 1998, has performed any work or services for, by or on behalf of YOU while such PERSON was employed by MATTEL, the nature and timing of each such PERSON's work or services and the amount(s) paid by YOU to each such PERSON.

32.     COMMUNICATIONS between YOU and BRYANT that REFER OR RELATE TO MATTEL or REFER OR RELATE TO any DOCUMENT that was prepared, authored or created by MATTEL that BRYANT has ever provided to, shown, described to, communicated to or disclosed in any manner to YOU.

33.     The applications for registration and the registrations for copyright, patent, trademark or any other right that REFER OR RELATE TO BRATZ or BRATZ DESIGNS sought, made or obtained by, for or on behalf of YOU or BRYANT, including without limitation COMMUNICATIONS pertaining thereto.

34.     Other than those previously filed and served in this ACTION or in which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ THAT REFER OR RELATE TO the time period prior to June 30, 2001 (regardless of when such testimony or sworn statement was taken, given, signed, made or filed).

35.     COMMUNICATIONS between YOU and Universal Commerce Corp., Ltd. prior to June 30, 2001.

07209/2048031.

-10-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT 2 PAGE 35

36.    The source, meaning and authenticity of SL00013-14, including without limitation the timing of its creation and the handwriting thereon.

37.    YOUR corporate structure since January 1, 1999, including without limitation the relationship between MGA Entertainment, Inc. and any of its predecessors, affiliates and subsidiaries.

38.    The retention or destruction policies, procedures and practices for YOUR DOCUMENTS and DIGITAL INFORMATION that REFER OR RELATE TO BRATZ since January 1, 1999, including without limitation the retention or destruction of DOCUMENTS and DIGITAL INFORMATION when (a) hardware is replaced, modified or upgraded and (b) when PERSONS leave YOUR employ.

39.    The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

40.    The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1, 1999 that REFER OR RELATE TO MATTEL (including without limitation to any MATTEL product, plan or information) that YOU received in any manner from any PERSON who was at the time an employee of MATTEL or who had previously been an employee of MATTEL.

41.    The testing of or sampling from DOCUMENTS that REFER OR RELATE TO BRATZ or BRYANT, including without limitation such testing or sampling in connection with any ink, paper or chemical analysis performed or attempted to be performed to date, any DOCUMENTS that REFER OR RELATE thereto and all results and reports relating thereto.

42.    YOUR DIGITAL INFORMATION data backup policies, practices and procedures from January 1, 1999 to the present, including without limitation the location and specifications of any media used to preserve YOUR DIGITAL

-11-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT 2 PAGE 36

1  INFORMATION and the software, if any, used to preserve YOUR DIGITAL
2  INFORMATION.

3       43.  The DIGITAL INFORMATION SYSTEMS and the application
4  software that YOU have used since January 1, 1999 that REFER OR RELATE TO
5  design, development, planning, inventory, manufacturing, sales, shipping and
6  accounting, including without limitation the common or shared storage for such
7  DIGITAL INFORMATION SYSTEMS, remote access of such DIGITAL
8  INFORMATION SYSTEMS, and any changes, modifications or upgrades to such
9  DIGITAL INFORMATION SYSTEMS or application software.

10       44.  The IDENTITY of PERSONS, including without limitation
11  vendors, who since January 1, 1999 have been responsible for or supported YOUR
12  DIGITAL INFORMATION SYSTEMS, including without limitation the IDENTITY of
13  such PERSON who serviced or provided hardware for YOUR DIGITAL
14  INFORMATION SYSTEMS, hosted, stored, archived or maintained YOUR DIGITAL
15  INFORMATION, including but not limited to internet service providers, and provided
16  analytical, training or implementation services with respect to YOUR DIGITAL
17  INFORMATION SYSTEMS.

18       45.  The electronic messaging SYSTEMS used by YOUR employees
19  within the scope of their employment between January 1, 1999 and the present,
20  including but not limited to electronic mail, instant messenger, telephone or voice-mail,
21  and the routing of such electronic messages to, from or within MGA.

22       46.  YOUR policies, practices and procedures regarding the use of
23  transportable media that contain or are capable of containing DIGITAL
24  INFORMATION, including but not limited to floppy discs, compact discs, DVDs, USB
25  drives, portable hard drives, digital cameras and personal digital assistants.

26

27

28

-12-

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT 2 PAGE 37

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On February 1, 2007, I served true copies of the following document(s) described as **SECOND NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)** on the parties in this action as follows:

**BY MAIL TO:**

Keith A. Jacoby, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
Telephone: (310) 553-0308
Facsimile: (310) 553-5583

I enclosed the foregoing as well as a **COURTESY COPY** into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. (Courtesy copy

**BY PERSONAL SERVICE ON:**

Diana M. Torres, Esq.
O'Melveney & Meyers
400 So. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
**Facsimile: (213) 430-6407**

I delivered such envelope(s) **(COURTESY COPY INCLUDED)** by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 1, 2007, at Los Angeles, California.

Mia Albert

Dave Quintana

07209/2049386 1

EXHIBIT 2 PAGE 38

# EXHIBIT 3

**CONFORMED COPY**

FILED

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2     John B. Quinn (Bar No. 090378)
      johnquinn@quinnemanuel.com
3     Michael T. Zeller (Bar No. 196417)
      (michaelzeller@quinnemanuel.com)
4     Jon D. Corey (Bar No. 185066)
      (joncorey@quinnemanuel.com)
5     Timothy L. Alger (Bar No. 160303)
      (timalger@quinnemanuel.com)
6   865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
7   Telephone: (213) 443-3000
    Facsimile:  (213) 443-3100

8   Attorneys for Mattel, Inc.

2007 MAY 18 PM 3: 45

CEN... DISTRICT COURT
... ... OF CALIF.
RIVERSIDE CALIF.

BY_____

9

10                UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                     EASTERN DIVISION

13   CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)

14          Plaintiff,                    Consolidated with
                                          Case No. CV 04-09059
15      vs.                               Case No. CV 05-02727

16   MATTEL, INC., a Delaware corporation,  **DISCOVERY MATTER**

17          Defendant.                    Hon. Edward A. Infante (Ret.)
                                          Discovery Master
18
                                          [PROPOSED] ORDER GRANTING
19   AND CONSOLIDATED CASES               MATTEL INC.'S MOTION TO
                                          COMPEL MGA TO PRODUCE
20                                        WITNESSES FOR DEPOSITION
                                          PURSUANT TO RULE 30(B)(6)
21
                                          Date: May 15, 2007
22                                        Time: 8:15 a.m.
                                          Place: Telephonic
23
                                          Discovery Cut-Off: October 22, 2007
24                                        Pre-Trial Conference: January 14, 2008
                                          Trial Date: February 12, 2008
25

26

27

28

05|8|(7

ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

EXHIBIT _3_ PAGE _39_

*El*

~~[PROPOSED]~~ ORDER

Having considered Mattel, Inc.'s Motion To Compel MGA To Produce Witnesses For Deposition Pursuant To <u>Rule</u> 30(b)(6) (the "Motion"), and all other papers and argument submitted in support of or opposition to the Motion, and finding good cause therefor, Mattel's Motion is GRANTED.

IT IS HEREBY ORDERED that:

1. MGA shall make Paula Garcia available for deposition on or before June 15, 2007 as a designee on Topics 1-3 and 6-8 of Mattel's Notice of Deposition of MGA Pursuant to <u>Rule</u> 30(b)(6) dated February 16, 2005 and in her individual capacity.

2. MGA shall confirm its designees and the dates of the designees' availability for deposition for all Topics except Topic Nos. 25 and 26 in Mattel's Notice of Deposition of MGA Pursuant to <u>Rule</u> 30(b)(6) dated February 1, 2007 (the "Second Notice") on or before May 22, 2007.

3. MGA shall make its designees for all Topics in the Second Notice, except Topic Nos. 25 and 26, available for deposition on or before June 30, 2007.

4. The parties shall meet and confer regarding the timing of the depositions on Topic Nos. 25 and 26 of the Second Notice. Such depositions may take place after June 30, 2007.

5. All of MGA's objections and/or limitations regarding the Topics in Mattel's <u>Rule</u> 30(b)(6) deposition notices are overruled.

//
//
//
//
//
//

EXHIBIT 3 PAGE 40

6.     Mattel's request for sanctions is denied.

**IT IS SO ORDERED.**

DATED: May 16, 2007

Hon. Edward A. Infante (Ret.)
Discovery Master

07209/2121176.1

-2-
ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

EXHIBIT 3 PAGE 41

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 17,

2007, I served the attached ORDER GRANTING MATTEL INC.'S MOTION TO COMPEL

MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(B)(6)

in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michele Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanusi, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that
the above is true and correct.

Executed on May 17, 2007, at San Francisco, California.

Anthony R. Sales

EXHIBIT 3 PAGE 42

# EXHIBIT 4

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
6    Los Angeles, California  90017-2543
     Telephone:  (213) 443-3000
7    Facsimile:  (213) 443-3100

8   Attorneys for Mattel, Inc.

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                         EASTERN DIVISION

12

| | |
|---|---|
| CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| Defendant. | Hon. Edward A. Infante (Ret.)<br>Discovery Master |
| AND CONSOLIDATED CASES | [PROPOSED] ORDER GRANTING MATTEL INC.'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO <u>RULE</u> 30(B)(6) |
| | Date:  May 15, 2007<br>Time:  8:15 a.m.<br>Place:  Telephonic |
| | Discovery Cut-Off:  October 22, 2007<br>Pre-Trial Conference: January 14, 2008<br>Trial Date:  February 12, 2008 |

EXHIBIT 4 PAGE 43

07209/2121176.1

ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

*El*

# [PROPOSED] ORDER

Having considered Mattel, Inc.'s Motion To Compel MGA To Produce Witnesses For Deposition Pursuant To <u>Rule</u> 30(b)(6) (the "Motion"), and all other papers and argument submitted in support of or opposition to the Motion, and finding good cause therefor, Mattel's Motion is GRANTED.

IT IS HEREBY ORDERED that:

1. MGA shall make Paula Garcia available for deposition on or before June 15, 2007 as a designee on Topics 1-3 and 6-8 of Mattel's Notice of Deposition of MGA Pursuant to <u>Rule</u> 30(b)(6) dated February 16, 2005 and in her individual capacity.

2. MGA shall confirm its designees and the dates of the designees' availability for deposition for all Topics except Topic Nos. 25 and 26 in Mattel's Notice of Deposition of MGA Pursuant to <u>Rule</u> 30(b)(6) dated February 1, 2007 (the "Second Notice") on or before May 22, 2007.

3. MGA shall make its designees for all Topics in the Second Notice, except Topic Nos. 25 and 26, available for deposition on or before June 30, 2007.

4. The parties shall meet and confer regarding the timing of the depositions on Topic Nos. 25 and 26 of the Second Notice. Such depositions may take place after June 30, 2007.

5. All of MGA's objections and/or limitations regarding the Topics in Mattel's <u>Rule</u> 30(b)(6) deposition notices are overruled.

//
//
//
//
//
//

**EXHIBIT 4 PAGE 44**

07209/2121176.1

-1-

ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

6.    Mattel's request for sanctions is denied.

**IT IS SO ORDERED.**

DATED: May 16, , 2007

_Edward A. Infante_
Hon. Edward A. Infante (Ret.)
Discovery Master

EXHIBIT 4 PAGE 45

07209/2121176:1

-2-
ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 17,

2007, I served the attached ORDER GRANTING MATTEL INC.'S MOTION TO COMPEL

MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(B)(6)

in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 17, 2007, at San Francisco, California

Anthony R. Sales

EXHIBIT 4 PAGE 46

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California  94111
Telephone:    (415) 774-2611
Facsimile:     (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

        Plaintiff,

    v.

MATTEL, INC., a Delaware corporation,

        Defendant.

CONSOLIDATED WITH
MATTEL, INC. v. BRYANT and
MGA ENTERTAINMENT, INC. v. MATTEL,
INC.

CASE NO. C 04-09049 SGL (RNBx)
JAMS Reference No. 1100049530

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

**ORDER GRANTING IN PART MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF MAY 16, 2007, TO COMPEL MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(b)(6), AND GRANTING REQUEST FOR SANCTIONS**

## I. INTRODUCTION

On June 29, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Enforce The Court's Order of May 16, 2007, To Compel MGA To Produce Witnesses For Deposition Pursuant To

EXHIBIT 4 PAGE 47

Rule 30(b)(6), And For Sanctions."[1]   On July 9, 2007, MGA Entertainment, Inc. ("MGA") submitted an opposition brief, and on July 12, 2007, Mattel submitted a reply brief.  The matter was heard on August 13, 2007.  Although the scope of Mattel's motion was broader[2], during the hearing, Mattel requested an order compelling MGA to designate and produce witnesses on Topic Nos. 21, 25, 26, and 34 and imposing sanctions for MGA's alleged non-compliance with the May 16, 2007 Order, particularly with respect to Topic Nos. 25, 26, 34, 39, 40 and 41.  Having considered the motion papers and the comments of counsel at the hearing, Mattel's motion is granted in part.

## II. BACKGROUND

On May 16, 2007, the undersigned issued an order granting Mattel's Motion to Compel MGA To Produce Witnesses Pursuant To Rule 30(b)(6) (hereinafter the "May 16, 2007 Order") which provided, in pertinent part:

2.   MGA shall confirm its designees and the dates of the designees' availability for deposition for all Topics except Topic Nos. 25 and 26 in Mattel's Notice of Deposition of MGA Pursuant to Rule 30(b)(6) dated February 1, 2007 (the "Second Notice") on or before May 22, 2007.

3.   MGA shall make its designees for all Topics in the Second Notice, except Topics Nos. 25 and 26, available for deposition on or before June 30, 2007.

4.   The parties shall meet and confer regarding the timing of the depositions on Topic Nos. 25 and 26 of the Second Notice.  Such depositions may take place after June 30, 2007.

5.   All of MGA's objections and/or limitations regarding the Topics in Mattel's Rule 30(b)(6) deposition notices are overruled.

---

[1]   Mattel seeks $3,000 in sanctions.

[2]   In its opening brief, Mattel focused on Topic Nos. 25, 26, 34, 39, 40 and 41 and requested an order requiring MGA to designate and produce witnesses on all Topics in Mattel's Second Notice of Deposition of MGA. In its reply brief, Mattel requested an order requiring MGA to produce witnesses on Topic Nos. 11, 13, 14, 19, 21-28, 31, 34, 37 and 39-41.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 4 PAGE 48

1   Proctor Decl., Ex. 1. The parties later agreed to extend the May 22, 2007 deadline for designating

2   witnesses to May 29, 2007.

3       After the May 16, 2007 Order was issued MGA designated and offered dates for some

4   Rule 30(b)(6) witnesses. Mattel accepted the dates, however, in the first week of June MGA

5   canceled the depositions of three designees. On June 7 and again on June 15, 2007, Mattel

6   requested that MGA provide new dates for the three designees.

7       The parties met and conferred on June 22, 2007. MGA offered designees and deposition

8   dates for 14 of the outstanding Topics. Although all but one of the dates that MGA proposed

9   were after the June 30, 2007 deadline, Mattel accepted MGA's schedule. MGA did not, however,

10  identify or produce witnesses to testify on Topics 25, 26, 34 and 39-41, which are the subject of

    the instant motion. These Topics are set forth below.

11  Topic 25: YOUR revenues and profits from BRATZ, including without limitation

12  YOUR gross and net profits, and YOUR costs associated therewith.

13  Topic 26: YOUR net worth.

14  Topic 34: Other than those previously filed and served in this ACTION or in

15  which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony,

16  transcripts, declarations, affidavits and other sworn written statements of any

17  other type by or from YOU or made on YOUR behalf that REFER OR RELATE

18  TO BRATZ THAT REFER OR RELATE TO the time period prior to June 30,

19  2001 (regardless of when such testimony or sworn statement was taken, given,

20  signed, made or filed).

21  Topic 39: The preservation, collection, destruction, removal, transfer, loss or

22  impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in

23  connection with the ACTION and/or any DOCUMENTS requested by MATTEL

24  in the ACTION.

25  Topic 40: The preservation, collection, destruction, removal, transfer, loss or

26  impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since

27  January 1, 1999 that REFER OR RELATE TO MATTEL (including without

28  

EXHIBIT 4 PAGE 49

1    limitation any MATTEL product, plan or information) that YOU received in any

2    manner from any PERSON who was at the time an employee of MATTEL or who

3    had previously been an employee of MATTEL.

4    Topic 41:  The testing of or sampling from DOCUMENTS that REFER OR

5    RELATE TO BRATZ or BRYANT, including without limitation such testing or

6    sampling in connection with any ink, paper or chemical analysis performed or

7    attempted to be performed to date, any DOCUMENTS that REFER OR RELATE

8    thereto and all results and reports relating thereto.

9    Mattel's Second Notice of Deposition, dated February 1, 2007, Proctor Decl., Ex. 6.  During the

10   hearing, Mattel also requested an order compelling MGA to designate a witness and schedule a

11   deposition on Topic No. 21, which seeks:

12   Topic No. 21:  YOUR knowledge of, and access to, non-public MATTEL DIVA

13   STARTZ project information and DESIGNS prior to June 30, 2001.

14   Mattel's Second Notice of Deposition, dated February 1, 2007, Proctor Decl., Ex. 6.

15   MGA indicated that Lisa Tonnu would "likely" be its designee on Topic Nos. 25 and 26,

16   but did not offer a date for her deposition because it was awaiting a ruling from Judge Larson

17   regarding the phasing of trials.  MGA also did not designate a witness on Topic Nos. 26, 34 and

18   41 because it was in the process of appealing the May 16, 2007 Order as it pertained to these

19   topics to Judge Larson.[3]  MGA similarly did not designate a witness on Topic No. 40 because it

20   was awaiting a ruling from Judge Larson on its pending motion to dismiss Mattel's counterclaims.

21   MGA's motion to dismiss was based, in part, on Mattel's purported failure to comply with

22   California Code of Civil Procedure §2019.210.  Apparently, MGA thought that the need for

23   discovery on Topic No. 40 might be obviated if it prevailed on its motion to dismiss.

24

25

26   _____

27   [3]  MGA filed its Objection to the May 16, 2007 Order on May 31, 2007.

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT  4  PAGE  50

1    MGA also did not designate a witness on the entirety of Topic No. 39.  Earlier in June
2    MGA produced Kenneth Lockhart to testify on Topic No. 39.  At the deposition, however,
3    Lockhart testified that he had no knowledge regarding MGA's collection of non-electronic
4    documents, a subject within the scope of Topic No. 39.  Mattel asked MGA to identify another
5    witness to testify regarding the collection of non-electronic documents.  MGA apparently refused
6    to do so because it believed Mattel had agreed to limit Topic No. 39 to exclude that issue.

7         By the end of June 2007, MGA had made only two Rule 30(b)(6) witnesses available for
8    deposition pursuant to the May 16, 2007 Order:  Kenneth Lockhart and Paula Garcia.  Mattel's
9    Motion at p.3.[4]

10        On June 26, 2007, Judge Larson issued a Minute Order scheduling MGA's appeal of the
11   May 16, 2007 Order for hearing on July 2, 2007.  On June 27, 2007, Judge Larson issued an order
12   denying MGA's motion to dismiss, and Mattel renewed its request that MGA produce a witness
13   to testify on Topic No. 40.  The next day MGA responded that it intended to identify a designee
14   and dates for a deposition by the end of the week.

15        On June 29, 2007, Mattel filed the instant motion.  On July 5, 2007, Judge Larson issued
16   an order affirming the May 16, 2007 Order.  That same day MGA confirmed the date and its
17   designation of a witness on Topic Nos. 39 and 40.  MGA also confirmed that it would produce
18   witnesses on Topic Nos. 34 and 41.  On July 9, 2007, MGA provided designations and dates for
19   deposition for Topic Nos. 34 and 41.

20        In this motion, Mattel contends that MGA has refused to designate and/or to produce
21   witnesses on Topic Nos. 21, 25, 26, 34, 39, 40 and 41, even though the May 16, 2007 Order
22   required it to make all of its Rule 30(b)(6) witnesses (except on Topic Nos. 25 and 26) available
23   by the end of June.  Mattel also contends that MGA has refused to meet and confer in good faith

24

25   ────────────────
        [4] A third deposition was scheduled for June, however, it did not take place.  According to Mattel, MGA
26   unilaterally cancelled the deposition the day before it was scheduled to commence.  Mattel Motion at p.4.  According
     to MGA, Mattel agreed to defer the deposition.
27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                              EXHIBIT 4  PAGE 51      5

1   to schedule the deposition of witnesses on Topic Nos. 25 and 26, in violation of the May 16, 2007

2   Order.  Lastly, Mattel contends that MGA's stated justifications for refusing to comply with the

3   May 16, 2007 Order all lack merit.

4       MGA contends that Mattel's motion is premature and unnecessary, and is now moot.

5   MGA explains that after the June 22, 2007 meet and confer, there were only four topics open:

6   "one of which (40) was subject to a ruling anticipated to be coming from Judge Larson any day

7   and which was received before Mattel's motion was filed; two of which (34 and 41) were the

8   express subject of an appeal pending before Judge Larson; and the last was simply the result of an

9   honest disagreement between the parties as to the actual intended scope of the topic (39)."

10  MGA's Opposition at p.2.  MGA denies ever refusing to provide witnesses on these topics, and

11  instead, asserts that it was entitled to receive Judge Larson's rulings before scheduling

12  depositions.  MGA further contends that it identified witnesses and deposition dates soon after

13  Judge Larson issued his orders.

### III. DISCUSSION

15  **Topic Nos. 25 and 26**

16      The May 16, 2007 Order required the parties to meet and confer "regarding the timing of

17  the depositions on Topic Nos. 25 and 26." Proctor Decl., Ex. 1.  During the June 22, 2007 meet

18  and confer session, MGA indicated that it was likely to designate Lisa Tonnu for these topics;

19  however, it did not offer a date for the deposition because it was awaiting Judge Larson's ruling

20  on the phasing of trials.

21      Mattel contends that MGA's purported justification for failing to schedule the depositions

22  is without merit because discovery in this case has not been phased.  Further, Mattel contends that

23  depositions on these two topics cannot be delayed any longer because under the current schedule,

24  expert reports are due in late August.

25      MGA contends that it fulfilled its meet and confer obligations regarding Topic Nos. 25

26  and 26 and took the position that the depositions shouldn't be scheduled until Judge Larson issued

27  a ruling on the phasing of trials.

28

EXHIBIT 4 PAGE 52

1    MGA is not technically in violation of the May 16, 2007 Order with respect to Topic Nos.

2   25 and 26 because it fulfilled its obligation to meet and confer regarding the timing of the

3   depositions.  Therefore, Mattel's motion to enforce the May 16, 2007 Order and request for

4   sanctions are denied as to Topic Nos. 25 and 26.  Nevertheless, MGA's purported justification for

5   delaying scheduling depositions on Topic Nos. 25 and 26 is no longer valid in light of Judge

6   Larson's ruling on the phasing of trials and Mattel is entitled to a date certain for the depositions.

7   **Topic No. 39**

8    The May 16, 2007 Order required MGA to designate a witness on Topic No. 39 by May

9   22, 2007, and to produce its designee for deposition by June 30, 2007.  MGA met these deadlines

10  by designating Kenneth Lockhart on Topic No. 39 and producing him for deposition on June 14

11  and 15, 2007.  Mr. Lockhart, however, was unable to testify regarding the collection of non-

12  electronic documents.  During the parties' subsequent meet and confer, MGA acknowledged that

13  Mr. Lockhart was not proffered regarding the collection of non-electronic documents, but claimed

    that Mattel had previously agreed to limit Topic No. 39 to electronic documents.

14   Mattel denies ever agreeing to so limit Topic No. 39 and contends that "it is preposterous

15  to think that Mattel would agree to such a limitation."  Mattel's Motion at p.10.  Mattel points out

16  that the Topic clearly encompasses both electronic and non-electronic documents, and that the

17  May 16, 2007 Order compels MGA to produce a witness on the Topic as written.

18   In contrast, MGA contends that it designated Mr. Lockhart, Chief Information Officer, on

19  Topic No. 39 "based on its good faith belief that the topic was intended to cover the retention of

20  electronic documents and other 'digital information.'"  MGA's Opposition at p.6.  Nevertheless,

21  on July 5, 2007, MGA designated Lisa Tonnu to testify on Topic No. 39 and indicated that she

22  was available on July 19, 2007.

23   MGA is in substantial compliance with the May 16, 2007 Order, having produced Mr.

24  Lockhart by the June 30th deadline and by offering Lisa Tonnu to testify regarding the remainder

25  of Topic No. 39 after the apparent misunderstanding came to light.  Therefore, Mattel's motion to

    enforce the May 16, 2007 Order is denied with respect to Topic No. 39.

26

27  //

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT 4 PAGE 53

**Topic No. 40**

The May 16, 2007 Order required MGA to designate a witness on Topic No. 40 by May 22, 2007, and to make the witness available for deposition no later than June 30, 2007. At the June 22, 2007 meet and confer session, MGA did not designate or produce a witness on Topic No. 40 because it was awaiting the resolution of its motion to dismiss. On June 27, 2007, Judge Larson denied MGA's motion to dismiss and held that Mattel had already complied with §2019.210. The next day MGA notified Mattel that it would identify a witness on Topic No. 40 and potential dates for deposition by the end of the week. On July 5, 2007, MGA confirmed that Lisa Tonnu would testify on Topic No. 40 and would be available for deposition on July 19, 2007.

Mattel contends that MGA violated the May 16, 2007 without any legitimate basis because Topic No. 40 was not the subject of any appeal. In contrast, MGA contends that it completed its designation and provided available dates promptly after Judge Larson issued his order.

MGA clearly violated the May 16, 2007 by failing to identify a witness to testify on Topic No. 40 and to make the witness available for deposition by June 30th. MGA's non-compliance was willful and inexcusable. MGA could have but failed to request any extension of time to designate and produce a witness on Topic No. 40. MGA has not cited any precedent that excuses a litigant from complying with deadlines imposed by a discovery order, without leave of court, simply because the claim to which the discovery is directed is the subject of a pending motion to dismiss. Mattel's motion is granted as to Topic No. 40 and sanctions are warranted pursuant to Rule 37(b)(2), Fed.R.Civ.P.

**Topic Nos. 34 and 41**

The May 16, 2007 Order required MGA to designate a witness on Topic Nos. 34 and 41 by May 22, 2007 and to produce its designee(s) for deposition by June 30, 2007. At the June 22, 2007 meet and confer session, MGA did not offer any designees or deposition dates for Topic Nos. 34 and 41 because it was in the process of appealing the May 16, 2007 Order to Judge Larson with respect to these topics.

EXHIBIT 4 PAGE 54

1    On May 31, 2007, MGA appealed the May 16, 2007 Order compelling it to produce

2 designees on Topic Nos. 34 and 41.[5] MGA sought a stay of the May 16, 2007 Order as to these

3 Topics pending appeal. On June 21, 2007, the Discovery Master denied the requested stay. On

4 June 22, 2007, MGA filed an "emergency *ex parte*" application with Judge Larson seeking review

5 of the June 21, 2007 Order denying the requested stay. On June 26, 2007, Judge Larson issued a

6 Minute Order scheduling MGA's appeal of the May 16, 2007 Order for hearing on July 2, 2007.

7 A few days after the hearing, Judge Larson issued an order upholding the May 16, 2007 Order.

8 That same day MGA confirmed that it would produce witnesses on Topic Nos. 34 and 41. On

9 July 9, 2007, MGA identified Renato Dionisio to testify on Topic No. 34 and indicated that the

10 witness was available on any one of the following days: August 21-23 or 28-30. MGA identified

Lisa Tonnu to testify on Topic No. 41 and indicated that she was available to testify on July 19.

11    Mattel contends that MGA willfully failed to comply with the May 16, 2007 Order, even

12 after its request for a stay was denied. MGA contends that the instant motion was unnecessary

13 and a waste of judicial resources because Mattel knew before it filed the motion that Judge Larson

14 had moved up the hearing on MGA's appeals and a ruling would be forthcoming.

15    MGA violated the May 16, 2007 Order by failing to designate and produce a witness to

16 testify on Topic Nos. 34 and 41 by the June 30th deadline. The violation was particularly

17 egregious because MGA's request for a stay was denied on June 21, 2007, which still left a few

18 days for MGA to at least designate a witness and propose dates for a deposition, even if the

19 deposition was scheduled beyond the June 30th deadline. Instead, MGA chose to persist in its

20 refusal to comply with the May 16, 2007 Order and gambled that Judge Larson would grant it

21 "emergency" *ex parte* relief. MGA's clear and flagrant violation of a court order warrants

22 sanctions under Rule 37(b)(2), Fed.R.Civ.P.

### IV. CONCLUSION

23    For the reasons set forth above, Mattel's motion is granted in part and denied in part. To

24 the extent MGA has not already done so, MGA shall promptly confirm its designees on Topic

25

26

27    [5]   MGA also appealed the May 16, 2007 Order with respect to Topic No. 26.

28


EXHIBIT 4 PAGE 55

1  Nos. 21, 25, 26 and 34 by August 22, 2007, and make them available for deposition no later than

2  September 27, 2007.

3       Mattel's request for sanctions is granted based upon MGA's willful violation of the May

4  16, 2007 Order by failing to identify witnesses and dates for deposition for Topic Nos. 34, 40 and

5  41 by the designated deadlines.  MGA shall reimburse Mattel in the amount of $1,000 in

6  monetary sanctions pursuant to Rule 37(b)(2), Fed.R.Civ.P., no later than August 22, 2007.

7       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

8  Master, Mattel shall file this Order with the Clerk of Court forthwith.

9

10  Dated: August _14_, 2007

                                      HON. EDWARD A. INFANTE (Ret.)

11                                    Discovery Master

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 4 PAGE 56

10

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 14, 2007, I served the attached ORDER GRANTING IN PART MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF MAY 16, 2007, TO COMPEL MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(b)(6), AND GRANTING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 14, 2007, at San Francisco, California.

Sandra Chan

**EXHIBIT 4 PAGE 57**

# EXHIBIT 5



**CONFORMED COPY**

BY:

2007 AUG 15 PM 12: 14

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT COURT
EASTERN DIVISION

FILED

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                            EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12          Plaintiff,

13      v.                                 Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15          Defendant.                     **ORDER GRANTING MATTEL'S
                                           MOTION FOR AN EXTENSION OF
16                                         TIME TO DEPOSE PAULA GARCIA
                                           IN HER INDIVIDUAL CAPACITY
17                                         AND AS A 30(b)(6) DESIGNEE;
                                           DENYING REQUEST FOR
18  CONSOLIDATED WITH                      SANCTIONS**
    MATTEL, INC. v. BRYANT and
19  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
20

21

22                            I. INTRODUCTION

23          On June 15, 2007, Mattel, Inc. ("Mattel") submitted its "Motion To Enforce The Court's

24  Order To Compel, And For Sanctions."  Specifically, Mattel moves (1) to enforce the Discovery

25  Master's May 16, 2007 Order Granting Mattel's Motion to Compel MGA to Produce Witnesses

26  for Deposition Pursuant to Rule 30(b)(6) by compelling MGA Entertainment, Inc. ("MGA") to

27  produce Paula Garcia for further deposition testimony, or in the alternative, by granting leave for

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

**EXHIBIT  5   PAGE  58**

1   additional time to depose Ms. Garcia on the topics set forth in Mattel's Rule 30(b)(6) notices[1];

2   (2) to compel Ms. Garcia to answer the questions MGA's counsel instructed her not to answer

3   during her deposition; and (3) for sanctions against MGA in the amount of $5,315. MGA

4   submitted an opposition on June 25, 2007; and Mattel submitted a reply on June 29, 2007. The

5   motion was heard on August 13. Having considered the motion papers and the comments of

6   counsel, Mattel's motion for additional time to depose Ms. Garcia is granted, and the request for

7   sanctions is denied.

## II. BACKGROUND

9       In February of 2005 Mattel served a notice of deposition of MGA pursuant to Rule

10   30(b)(6), Fed.R.Civ.P. (the "First Notice"). The parties met and conferred, and by May of 2005

11   MGA named Ms. Garcia as one of the witnesses who would testify on six of the eight topics in

12   the First Notice. Ms. Garcia has been MGA's product manager for Bratz since the product's

13   inception at MGA, and is, in Mattel's view, one of the most important witnesses in its case.

14       The action was stayed from mid-May of 2005 to mid-May of 2006. Thereafter, Mattel

15   renewed its attempts to schedule a 30(b)(6) deposition. In a telephonic conference with the

16   Discovery Master, MGA represented that it would provide Mattel with dates for the deposition.

17   In January of 2007, Mattel was able to depose one of MGA's designees on the First Notice, but

18   not Ms. Garcia due to her unavailability. For the next couple of months, Mattel continued its

19   efforts to schedule Ms. Garcia's deposition without success.

20       In the interim, in February of 2007, Mattel served its Second Notice of Deposition of

21   MGA pursuant to Rule 30(b)(6), Fed.R.Civ.P. (the "Second Notice"). The parties met and

22   conferred, and MGA identified designees for some but not all of the forty-six topics in the

23   Second Notice.

24       After a couple of months had passed without any witnesses being produced for deposition

25   pursuant to the First and Second Notices, Mattel brought a motion to compel. On May 16, 2007,

26

27      [1] Mattel does not specify in its motion papers how much additional time it seeks.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

**EXHIBIT 5 PAGE 59**

1   the Discovery Master granted Mattel's motion to compel and ordered MGA to, *inter alia*; (1)

2   produce Ms. Garcia for deposition on or before June 15, 2007, in her individual capacity and as a

3   designee on Topics 1-3 and 6-8 of Mattel's First Notice; and (2) make its designees available for

4   deposition for all Topics except Nos. 25 and 26 in Mattel's Second Notice on or before June 30,

5   2007 (the "Order").[2]  This is the Order that is the subject of Mattel's motion.

6       After the Court's Order, MGA confirmed Ms. Garcia's designation on the following

7   Topics in Mattel's Second Notice:  Topic Nos. 1-8, 9 (to the extent not covered by previously

8   designated testimony), 10, 12, 13 (with respect to manufacturers only), 16 (to the extent not

9   covered by designated portions of Isaac Larian's and Carter Bryant's depositions), 17, 29, 30, 35,

10  and 36.  MGA offered to produce Ms. Garcia for her deposition on May 24 and 25, 2007, or else

11  not until the end of June.  Mattel accepted the May 24 and 25 dates.  The parties agreed that the

12  this deposition would cover Bryant-related issues, and that they would make separate

13  arrangements to depose Ms. Garcia on the unfair competition, trade secrets and RICO issues in

14  the MGA v. Mattel and Mattel v. MGA suits.  Zeller Decl., Ex. 10; see also MGA's Opposition

15  at p.6, n. 19.

16      Two days before Ms. Garcia's deposition, MGA produced approximately 7,600 pages of

17  documents.  MGA's counsel, Diana Torres, advised Mattel that MGA was willing to defer her

18  deposition in light of the document production.  Ms. Torres also informed Mattel that by

19  proceeding with the deposition as scheduled, Mattel was "choosing to do so at the risk that later

20  discovery (including the [7,600 pages of documents] may be relevant to her deposition and will

21  not be entitled to call her back for that reason."[3]  Zeller Decl., Ex. 10.  Mattel's counsel

22

23      [2]  During the hearing, the undersigned stated that he did not think the seven-hour limitation on depositions
24  applied to Rule 30(b)(6) depositions, but also commented that it did not make sense to be focusing on such a
    "theoretical" issue, as Ms. Garcia had not yet been deposed.  Zeller Decl., Ex. 8.  Mattel's assertion that the
25  Discovery Master "ruled" on this issue is erroneous.

26      [3]  As stated previously, the parties have an agreement, however, that MGA will make Ms. Garcia available
    for a separate deposition on the unfair competition, trade secrets and RICO issues in the MGA v. Mattel and Mattel
27  v. MGA cases.  Zeller Decl., Ex. 10; see also MGA's Opposition at p.6, n. 19.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT  5  PAGE  60

1  responded by accusing MGA of delaying its document production for tactical reasons.  Mattel's

2  counsel also advised MGA that it was proceeding with Ms. Garcia's deposition as scheduled,

3  and furthermore, that it did not believe it was "waiving" its rights to obtain further discovery

4  regarding the 7,600 pages of documents.

5       Mattel began the deposition of Ms. Garcia in her individual and corporate capacity on

6  Thursday, May 24, 2007.  The next day, MGA's counsel offered to delay the deposition from

7  Friday, May 25, 2007, to Tuesday, May 29, 2007, in light of the recent document production.

8  Mattel's counsel rejected the offer because Mattel did not want to delay Ms. Garcia's deposition

9  any further and because Mattel was prepared to question Ms. Garcia about other documents

10  already produced in the case.

11       Mattel deposed Ms. Garcia for a total of 14 hours and 18 minutes.  Mattel asked MGA to

12  produce Ms. Garcia for at least one more day of deposition, however, MGA refused unless

13  Mattel agreed not to "revisit" topics that had already been covered.  Mattel's Motion at p.3.

14  MGA also indicated that even if it were to produce Ms. Garcia for further questioning, it would

15  probably not agree to produce her for an additional full day.

16       Mattel seeks additional time to depose Ms. Garcia.  Mattel contends that 14 hours and 18

17  minutes was not enough time to cover the 24 topics on which Ms. Garcia was designated, much

18  less to cover Ms. Garcia's personal knowledge of facts central to Mattel's claims against Bryant.

19  According to Mattel, the Discovery Master has ruled that the 7-hour rule does not apply to Rule

20  30(b)(6) depositions, and that MGA's refusal to produce Ms. Garcia for further questioning

21  violates the Order.

22       Even if the 7-hour rule applies, Mattel contends that there is good cause to extend the

23  deposition of Ms. Garcia for a number of reasons.  First, Mattel contends that the deposition

24  progressed slowly because Ms. Garcia regularly asked for questions to be repeated or rephrased

25  and often took long pauses before answering.  Mattel also contends that there were lengthy

26  breaks, after which Ms. Garcia returned with clarifications of her prior testimony that required

27

28

EXHIBIT 5 PAGE 61

1 | further questioning. Mattel also contends that Ms. Garcia was not prepared to answer questions

2 | regarding personnel involved in the early phases of the Bratz project.

3 |      Second, Mattel contends that MGA's counsel improperly instructed Ms. Garcia not to

4 | answer questions regarding facts she ostensibly learned from counsel. Third, Mattel contends

5 | that MGA's counsel improperly instructed Ms. Garcia not to answer questions about MGA

6 | Mexico. Mattel admits that the parties had an agreement to limit the scope of Ms. Garcia's

7 | deposition to Bryant-related issues; however, Mattel believes that this agreement did not bar

8 | questions about MGA Mexico's contacts with the United States in light of MGA's then-pending

9 | motion to dismiss MGA Mexico for lack of personal jurisdiction.[4]

10 |      Fourth, Mattel contends that it should be permitted to resume the deposition of Ms.

11 | Garcia because just two days prior to the deposition, MGA produced approximately 7,600 pages

12 | of documents, the bulk of which have Ms. Garcia's name on them and relate to the 2000 and

13 | 2001 time period. Mattel contends that MGA had no legitimate basis for withholding the

14 | documents. Mattel also contends that the production was incomplete insofar as it did not include

15 | documents that the Discovery Master ordered MGA to produce. Lastly, Mattel contends that it

16 | should be given more time to depose Ms. Garcia because MGA has demanded more deposition

17 | time for witnesses on topics that are far less central to this litigation.

18 |      MGA opposes the motion on numerous grounds. As a preliminary matter, MGA accuses

19 | Mattel of using 30(b)(6) depositions as a means to circumvent the district court's order limiting

20 | the number of depositions to be taken by each side. At present, the parties are limited to 24

21 | depositions per side for the entire consolidated action, including both individual and 30(b)(6)

22 | depositions. In MGA's view, Mattel is using 30(b)(6) depositions with excessive numbers of

23 | topics to avoid noticing witnesses to testify in their individual capacity. MGA further contends

24 | that Rule 30(b)(6) depositions are indeed limited to one seven-hour day, and furthermore, that

25 |

26 |     [4] The district court has since denied MGA's motion to dismiss MGA Mexico.

27 |

28 |

EXHIBIT 5 PAGE 62

1 the district court must have intended the limit to apply when he restricted each side to 24

2 depositions.

3      Next MGA contends that Ms. Garcia was deposed on time and in compliance with the

4 Order. According to MGA, Ms. Garcia testified at length about the early development of Bratz,

5 the persons involved in that development process, as well as the other topics for which she had

6 been designated. MGA acknowledges that Ms. Garcia could not recall the names of some of the

7 individuals involved in Bratz; however, MGA believes Mattel could have remedied the situation

8 by simply showing Ms. Garcia documents to refresh her recollection rather than treating the

9 deposition as a memory test.

10      MGA denies engaging in any delay tactics or other forms of obstruction during the

11 deposition. According to MGA, Ms. Garcia requested to have questions rephrased when she did

12 not understand the question. MGA also contends that pauses are appropriate to allow counsel to

13 interject any necessary objections. Furthermore, MGA contends that it properly instructed Ms.

14 Garcia not to answer only when necessary to preserve the attorney-client privilege. MGA also

15 defends its instructions not to answer questions about MGA Mexico because those questions

16 exceeded the agreed upon scope of the deposition. The parties agreed that Ms. Garcia would be

17 made available for one deposition regarding Bryant-related matters and a separate deposition

18 regarding Mattel's counterclaims. MGA considers questions regarding MGA Mexico as

19 irrelevant to Bryant-related matters, and relevant only to Mattel's counterclaims.

20      In MGA's view, Mattel, not MGA is to blame for not completing Ms. Garcia's

21 deposition. MGA asserts that Mattel wasted time by questioning Ms. Garcia on topics not

22 relevant to the litigation, including her addresses for the past year, whether she had any

23 roommates during that time and who they were, and her cell phone bills.

24      MGA also contends that Mattel caused the document production delay by insisting that

25 MGA produce all color documents in a different electronic format than previously requested.

26 Furthermore, MGA contends that it made multiple offers to postpone the deposition to allow

27

28

EXHIBIT 5 PAGE 63

1   Mattel additional time to review the document production.   MGA contends that Mattel chose to

2   move forward with the deposition, and therefore Mattel "has no basis for asserting that MGA's

3   document production was an attempt to prevent Mattel from deposing Ms. Garcia on the topics

4   for which she was designated nor that it had any impact on Mattel's ability to do so." MGA's

5   Opposition, p.6.

6        Lastly, MGA contends Mattel filed the instant motion without meeting and conferring in

7   good faith.  MGA points out that during the meet and confer process, it agreed to produce Ms.

8   Garcia for additional time without the need to resort to motion practice.  More specifically, MGA

9   is prepared to make Ms. Garcia available for an additional four hours, provided that any further

10   questioning "does not revisit already questioned areas of inquiry." MGA's Opposition at p.3.

11                                   III. STANDARDS

12        Rule 30(d) of the Federal Rules of Civil Procedure provides the following with respect to

13   the schedule and duration of depositions:

14        (1) Any objection during a deposition must be stated concisely and in a non-
     argumentative and non-suggestive manner.  A person may instruct a deponent
15   not to answer only when necessary to preserve a privilege, to enforce a limitation
     directed by the court, or to present a motion under Rule (d)(4).
16

17        (2) Unless otherwise authorized by the court or stipulated by the parties, a
     deposition is limited to one day of seven hours.  The court must allow additional
18   time consistent with Rule 26(b)(2) if needed for a fair examination of the
     deponent or if the deponent or another person, or other circumstance, impedes or
19   delays the examination.

20        (3) If the court finds that any impediment, delay, or other conduct has
     frustrated the fair examination of the deponent, it may impose upon the persons
21   responsible an appropriate sanction, including the reasonable costs and attorney's
     fees incurred by any parties as a result thereof.

22

23   The Advisory Committee Notes for Rule 30(d)(2) provide the following guidelines for

24   compliance:

25        Paragraph (2) imposes a presumptive durational limitation of one day of seven
     hours for any deposition.  The Committee has been informed that the overlong
26   depositions can result in undue costs and delays in some circumstances.  This
     limitation contemplates that there will be reasonable breaks during the day for
27   lunch and other reasons, and that the only time to be counted is the time occupied

28

EXHIBIT 5 PAGE 64

by the actual deposition. For purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition. The presumptive duration may be extended, or otherwise altered, by agreement. Absent agreement, a court order is needed. The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order.

Parties considering extending the time for deposition – and courts asked to order an extension – might consider a variety of factors. For example, if the witness needs an interpreter, that may prolong the examination. If the examination would cover events occurring over a long period of time, that may justify allowing additional time. . . .

It is expected that in most instances the parties and the witness will make reasonable accommodations to avoid the need for resort to the court. The limitation is phrased in terms of a single day on the assumption that ordinarily a single day would be preferable to a deposition extending over multiple days; if alternative arrangements would better suit the parties, they may agree to them. It is also assumed that there will be reasonable breaks during the day. Preoccupation with timing is to be avoided.

The rule directs the court to allow additional time where consistent with Rule 26(b)(2) if needed for a fair examination of the deponent. In addition, if the deponent or another person impedes or delays the examination, the court must authorize extra time. The amendment makes clear that additional time should also be allowed where the examination is impeded by an "other circumstance," which might include a power outage, a health emergency, or other event.

\* \* \*

Paragraph (3) includes sanctions provisions formerly included in paragraph (2). It authorizes the court to impose an appropriate sanction on any person responsible for an impediment that frustrated the fair examination of the deponent. This could include the deponent, any party, or any other person involved in the deposition. If the impediment or delay results from an "other circumstance" under paragraph (2), ordinarily no sanction would be appropriate.

See Advisory Committee Notes on the 2000 Amendments to Fed.R.Civ.P. 30(d).

## IV. DISCUSSION

### A. There Is Good Cause For An Extension Of Time To Depose Ms. Garcia

As a preliminary matter, MGA is in compliance with the Order insofar as it has produced Ms. Garcia for deposition in her individual and corporate capacity by the June 30th deadline.[5] Therefore, Mattel's motion, although styled as motion to compel compliance with

---

[5]   Mattel, however, has filed a separate motion to compel compliance with other portions of the Order.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 5 PAGE 65

1   the Order, is treated herein as motion for additional time to complete the deposition of Ms.

2   Garcia pursuant to Rule 30(d)(2), Fed.R.Civ.P.

3        Applying the standards above, Mattel has demonstrated the requisite good cause to

4   warrant an extension of the "presumptive" 7-hour time limit for depositions. Ms. Garcia is,

5   without question, one of the most important witnesses in this case. She has been the product

6   manager for Bratz since the product's inception at MGA. Therefore, she has considerable

7   knowledge regarding the timing and origins of Bratz, Bryant's involvement with MGA, and the

8   development of Bratz. Ms. Garcia was the first person at MGA with whom Bryant spoke. Ms.

9   Garcia was present when Bryant first presented the idea of Bratz to Mr. Larian. Ms. Garcia also

10  met with Bryant and Margaret Leahy to discuss doll sculpting at a time when Bryant was still

11  employed at Mattel. In addition, another witness, Steve Linker, testified that Ms. Garcia

12  contacted him in September of 2000 to create packaging for Bratz and gave him art boards and

13  illustrations in October of 2000. Ms. Garcia was also involved in naming the Bratz characters.

14       Furthermore, MGA has designated Ms. Garcia on numerous topics. MGA designated

15  Ms. Garcia to testify regarding Topics 1-3 and 6-8 of the First Notice, which are set forth below.

16   Topic 1:  The identity of each person involved in the MGA Projects, and the
     nature and time period(s) of each such person's involvement therein.
17

18   Topic 2:  The conception, design and development of the MGA Projects,
     including without limitation the chronology thereof.

19   Topic 3:  The identity of, and the design, development and first sale of, any
     products resulting from the MGA Projects.
20

21   Topic 6:  The identity of documents and tangible items that relate to the MGA
     Projects.

22   Topic 7:  The identity, source and current location of each head that was
     provided by, for, on behalf of MGA or any of its representatives to Anna Rhee
23   for painting prior to October 21, 2000.

24   Topic 8:  The identity of each person involved in the conception, design,
     development, production, sculpting, rotocasting, molding, modeling or
25   prototyping of each head that was provided by, for or on behalf of MGA or any
     of its representatives to Anna Rhee for painting prior to October 21, 2000.
26  //

27

28

EXHIBIT 5 PAGE 66

Zeller Decl., Ex. 1.  MGA also designated Ms. Garcia to testify regarding the following topics in the Second Notice:

**Topic 1:** The origin, conception, creation, design, sculpting, development, engineering, rotocasting, modeling and prototyping of BRATZ and BRATZ DESIGNS CREATED prior to June 30, 2001 (regardless of when or whether such was released in any form to the public), including without limitation the timing thereof, the IDENTITY of each PERSON with knowledge thereof, the IDENTITY of each PERSON involved therein, and the nature, extent and time period(s) of each such PERSON's involvement.

**Topic 2:** The circumstances under which BRATZ or any BRATZ DESIGN first came to YOUR attention, including without limitation the timing, method and manner thereof and the IDENTITY of each PERSON with knowledge thereof.

**Topic 3:** The identity of each doll, product, work or item produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or on YOUR behalf that was BASED ON any BRATZ DESIGN which BRYANT CREATED.

**Topic 4:** To the extent not covered by Topic 3, each EMBODIMENT of any doll, doll accessory or toy that BRYANT CREATED prior to June 30, 2001.

**Topic 5:** The work, activities and/or services that BRYANT performed for or with YOU or on YOUR behalf prior to June 30, 2001.

**Topic 6:** The origin, conception and creation of DESIGNS that BRYANT CREATED prior to June 30, 2001 and in which YOU claim to have, or have ever claimed to have, any right, title or interest (whether in whole or in part).

**Topic 7:** The identity of, and the design, development, sculpting, development, engineering, rotocasting, modeling, prototyping and first sale of, any doll, product, work or item that has been produced, developed, manufactured, licensed, sold or offered for sale by, for or on behalf of YOU and that was BASED ON any DESIGN referenced in Topic 6.

**Topic 8:** Each EMBODIMENT of BRATZ that was CREATED prior to June 30, 2001 or that was at any time BASED ON any BRATZ DESIGN which was CREATED prior to June 30, 2001.

**Topic 9:** The DRAWINGS, including without limitation the authorship, creation, dissemination and use thereof and the source, meaning, authenticity and timing of any dates thereof.

**Topic 10:** The IDENTITY of each vendor or third party who performed or contributed, or who was considered, solicited, requested, proposed or contemplated by YOU or BRYANT to perform or contribute, any activities, work or services in connection with BRATZ or BRATZ DESIGNS prior to June 30, 2001, YOUR COMMUNICATIONS therewith, and the nature, extent and timing of such activities, work or services.

**Topic 12:** The actual, proposed, requested or contemplated manufacture, fabrication or tooling (including the production of molds) of BRATZ, including

1    without limitation the timing thereof and the IDENTITY of each manufacturer and potential manufacturer used, proposed or considered.

2

3    **Topic 13:** COMMUNICATIONS prior to June 30, 2001 between YOU and any manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or potential manufacturer, distributor, wholesaler or retailer, that REFER OR

4    RELATE TO BRATZ or any BRATZ DESIGN.

5    **Topic 16:** COMMUNICATIONS BETWEEN YOU AND BRYANT prior to January 1, 2001, including without limitation the content, means and timing of

6    such COMMUNICATIONS, the IDENTITY of the PERSONS who were parties thereto and the DOCUMENTS that REFER OR RELATE TO such

7    COMMUNICATIONS.

8    **Topic 17:** COMMUNICATIONS that BRYANT made for YOU or on YOUR behalf with any PERSON other than YOU that REFER OR RELATE TO

9    BRATZ prior to June 30, 2001.

10    **Topic 29:** COMMUNICATIONS made by, for or on behalf of YOU, whether directly or indirectly, with Anna Rhee, including without limitation since

11    February 2005 (but not including any such COMMUNICATIONS with her legal counsel).

12

13    **Topic 30:** COMMUNICATIONS between YOU and Veronica Marlow, Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy),

14    Sarah Halpern, Steve Linker, Liz Hogan and/or Jesse Ramirez that REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including

15    without limitation all DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

16    **Topic 35:** COMMUNICATIONS between YOU and Universal Commerce Corp., Ltd. prior to June 30, 2001.

17

18    **Topic 36:** The source, meaning and authenticity of SL00013-14, including without limitation the timing of its creation and the handwriting thereon.

19

20 Zeller Decl., Ex. 3. The specific topics identified above for which Ms. Garcia has been

21 designated are relevant and proper. It is unrealistic to require Mattel to cover the number and

22 breadth of topics for which Ms. Garcia has been designated to testify in a matter of fourteen

23 hours.

24      In addition, just two days prior to the scheduled deposition, MGA produced

25 approximately 7,600 pages of documents. Mattel has reviewed these documents and

26 determined that Ms. Garcia's name appears on the bulk of the documents. Mattel also

27 determined that a significant portion of the documents pertain to a key period (2000 or the first

28

1   half of 2001) and that some deal with the early development of Bratz while Carter Bryant was

2   still with Mattel. Regardless of where the fault lies for the belated document production, Mattel

3   is entitled to a fair examination of the deponent regarding these 7,600 pages of documents.[6]

4       Mattel is also entitled to additional time to depose Ms. Garcia because MGA improperly

5   instructed her not to answer questions regarding MGA Mexico. See Zeller Decl., Ex. 9 at

6   439:10-442:6 and 445:14-18. Although the parties had an agreement to limit the scope of Ms.

7   Garcia's deposition to Bryant-related issues, that agreement was never presented to the court for

8   approval and therefore does not have the force and effect of a court order. In the absence of a

9   court order, an instruction not to answer is improper unless necessary to preserve a privilege.

10  See Fed.R.Civ.P. 30(d)(1).

11      In summary, the four factors above provide ample good cause to justify additional time

12  to depose Ms. Garcia.

13  B.  Instructions Not To Answer Deposition Questions

14      Mattel next contends that counsel improperly asserted the attorney-client privilege as to

15  certain deposition questions. In opposition, MGA contends that counsel properly instructed Ms.

16  Garcia not to answer to avoid revealing the substance of protected attorney-client

17  communications.

18      The attorney-client privilege protects an attorney's communication of legal advice to his

19  client, as well as the client's communication of information to the attorney "to enable him to give

20  sound and informed advice." Upjohn Co. v. United States, 449 U.S. 383, 390 (1981). The

21  protection extends only to communications; however, it does not extend to the facts underlying

22  privileged communications. Id. at 395-96. The Ninth Circuit has described the elements of the

23  attorney-client privilege as follows: "(1) When legal advice of any kind is sought (2) from a

24

25

26      [6]  Furthermore, during the hearing, Mattel indicated that MGA produced more than 100,000 documents
    after Ms. Garcia's deposition. This production of documents provides additional justification for resuming Ms.
27  Garcia's deposition.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                    12

EXHIBIT 5 PAGE 69

1  professional legal adviser in his or her capacity as such, (3) the communications relating to that

2  purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently

3  protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be

4  waived." United States v. Martin, 278 F.3d 988, 999 (9th Cir.2002). The party asserting the

5  privilege has the burden of establishing that the privilege applies. In re Grand Jury Investigation,

6  974 F.2d 1068, 1070 (9th Cir. 1992).

7      In the first excerpt at issue, counsel, Ms. Torres, interjected an objection and instruction

8  not to answer:

9      Q:  How is it that you learned Carter Bryant was employed by Mattel as of the
        time that he had this meeting with you and others that you reference as occurring

10      on September 1, 2000?

11      Ms. Torres:  I object and instruct the witness not to answer if her answer involves
        communications with counsel.

12

13      The Witness:  Then I can't answer the question.

14  Garcia Depo. at 273:6-14, Zeller Decl., Ex. 9.  This objection is sustained because a response

15  would have necessarily revealed the substance of a protected attorney-client communication.

16      In the next excerpt at issue, Mattel posed another question regarding Mr. Bryant's

17  employment with Mattel:

18      Q:  What facts are you aware of from any source as to whether or not Mr. Bryant
        was still working for Mattel as of September 1, 2000?

19

20      Ms. Torres:  I am going to caution the witness not to disclose attorney-client
        communications.  If you can answer that otherwise, go ahead.

21      The Witness:  Then I can't

22      (Instruction not to answer.)

23      Mr. Page:  I pose an objection as to form.

24      The Witness:  I can't answer the question.

25      Mr. Zeller:  Because of the instruction?

26      The Witness:  Yes.

27  //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT 5 PAGE 70

1   Garcia Depo. at 273:20-275:2, Zeller Decl., Ex. 9. The objection is sustained because of the

2   way the question is phrased. If the question had been posed differently, without reference to the

3   source of information and called for disclosure of facts only, the objection would have been

4   improper.

5        In the following excerpt, Ms. Garcia was asked how she learned of the arbitration

6   between Isaac and Fred Larian:

7        Q: At some point, did you come to learn that there was an arbitration or
    litigation between Isaac Larian and Fred Larian?
8

9        A: Yes.

10       Q: How did you learn that?

11       (Ms. Torres): Objection, I'm going to instruct the witness not to answer if she
    learned from counsel.

12       The Witness: I believe it was -- I believe it was through his -- Isaac's assistant,

13       Mr. Zeller: Was it -- I'm blanking on her name. Was it still Dede Brown? Was
    it still Dede Brown at that time?
14

15       A: I don't think so, but I'm not sure.

16  Garcia Depo. at 349:7-21; Zeller Decl., Ex. 9. Ms. Garcia answered the question posed to her

17  and therefore the objection is moot.

18       In the next section, Ms. Garcia also gave a response to the question posed:

19       Q: So is it fair to say that you don't have any knowledge or information as to
    when it is that Mr. Bryant first created Bratz in any form?

20       Ms. Torres: Objection, vague, calls for a legal conclusion.

21       The Witness: Outside of privileged and confidential?

22       Ms. Torres: I will instruct you not to answer to the extent you have knowledge
    that comes solely from counsel.
23

24       The Witness: No.

25  Garcia Depo. at 291:12-22, Zeller Decl., Ex. 9. Because Ms. Garcia gave a response, the

26  objection is moot.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT S PAGE 71

1     In the following excerpts, Mattel sought to question Ms. Garcia about what caused her to

2  change her testimony after returning from a break in the deposition:

3     A: I don't mean to interrupt. I want to state something before we got started.
      With some more thought during our break, I just wanted to state for the record

4     that I am very sure that Margaret Leahy received the armature engineering
      drawings that I mentioned in my earlier testimony. I originally mentioned I

5     wasn't sure, but I'm very sure she received that sketch.

6     Q: What's your basis for now being very sure of that?

7     A: Taking a few minutes with fresh air and thinking through my memory more
      clearly. My memory is more sharp and more clear.

8

9     Q: Between the time that you gave your prior answers about that particular
      drawing and now, you obviously had discussions with MGA's counsel, is that
      correct?

10

11    A: Yes.

12    Q: Did you discuss with them that particular drawing?

13    Ms. Torres: I instruct the witness not to answer on the grounds of attorney-client
      privilege.

14    (Instruction not to answer.)

15    The Witness: I can't answer that question.

16    (By Mr. Zeller)
17    Q: Did you look at the armature drawing that you're referring to?

18    A: During the break?

19    Q: Yes.

20    A: No.

21    Q: It's fair to say what you learned about that drawing was told to you by MGA's
      lawyers during the break?

22    Ms. Torres: Objection, misstates the witness' testimony and calls for attorney-
23    client privilege communications. If you can answer without revealing attorney-
      client privileged communications, go ahead.

24    The Witness: I can't answer the question.

25    (By Mr. Zeller)
26    Q: Based upon the instruction that your counsel is giving you?

27    A: Yes.

28

EXHIBIT 5 PAGE 72

1  Garcia Depo. at 617:16-619:2. The objections are overruled. The questions did not require Ms.

2  Garcia to reveal the content of an attorney-client communication. Rather, the questions posed

3  called for disclosure of underlying facts to which Mattel is entitled.

4  IV. CONCLUSION

5  For the reasons set forth above, additional time to depose Paula Garcia in her individual

6  capacity and as a Rule 30(b)(6) designee is necessary for a fair examination pursuant to Rule

7  30(d)(2) and Rule 26(b)(2), Fed.R.Civ.P. MGA shall make Ms. Garcia available for deposition

8  for an additional fourteen hours.[7] Upon resumption of her deposition, Ms. Garcia shall provide

9  answers to the two questions where counsel's objections have been overruled. The deposition

10  shall be held at a mutually agreeable date and time, and shall be completed no later than

11  September 28, 2007. The motion for sanctions is denied.

12  Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

13  Master, Mattel shall file this Order with the Clerk of Court forthwith.

14

15  Dated: August 14, 2007

16  HON. EDWARD A. INFANTE (Ret.)
   Discovery Master

17

18

19

20

21

22

23

24

25  [7] During oral argument, MGA implied it may de-designate Ms. Garcia as to some topics. Without
   determining whether such a practice is proper or improper, if MGA does de-designate Ms. Garcia as to some topics,
26  it will have no bearing on the finding that fourteen hours are necessary for a full and fair examination of Ms. Garcia
   in her individual and corporate capacities.

27

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                                                                16

EXHIBIT 5 PAGE 73

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 14, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION FOR AN EXTENSION OF TIME TO DEPOSE PAULA GARCIA IN HER INDIVIDUAL CAPACITY AS A 30(b)(6) DESIGNEE; DENYING REQUEST FOR MONETARY SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | ltrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 14, 2007, at San Francisco, California.

_Sandra Chan_
Sandra Chan

EXHIBIT 5 PAGE 74

# EXHIBIT 6

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California  94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12  CARTER BRYANT, an individual,      CASE NO. CV 04-09049 SGL (RNBx)
                                       JAMS Reference No. 1100049530
13              Plaintiff,

14       v.                            Consolidated with
                                       Case No. CV 04-09059
15  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16              Defendant.             **ORDER GRANTING IN PART AND
                                       DENYING IN PART MATTEL'S**
17                                     **MOTION TO ENFORCE COURT'S**
                                       **DISCOVERY ORDERS AND TO**
18                                     **COMPEL; TO OVERRULE**
                                       **PURPORTEDLY IMPROPER**
19                                     **INSTRUCTIONS; AND FOR**
                                       **SANCTIONS**
20

21  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
22  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
23

24

25

26

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT 4 PAGE 75

## I. INTRODUCTION

On December 5, Mattel, Inc. ("Mattel") submitted a "Motion to (1) Enforce Court's Discovery Orders and to Compel; (2) to Overrule Improper Instructions; and (3) for Sanctions." Mattel's motion challenges the sufficiency of the testimony provided by four of MGA Entertainment Inc.'s Rule 30(b)(6) witnesses, Lisa Tonnu, Kenneth Lockhart, Rebecca Harris, and Spencer Woodman, on sixteen separate topics identified in Mattel's Second Notice of Deposition of MGA. MGA submitted an opposition on December 18, 2007. Mattel submitted a reply on December 26, 2007. The matter was heard on January 3, 2008. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in part and denied in part, and the request for sanctions is granted in part.

## II. BACKGROUND

On May 16, 2007, MGA was ordered to produce Rule 30(b)(6) designees for all topics identified in Mattel's Second Notice of Deposition of MGA, except Topic Nos. 25 and 26, on or before June 30, 2007. Mattel's Second Notice of Deposition includes many topics relevant to the case, including, *inter alia*, the development of Bratz before it was made available for purchase; when and whom MGA first offered Bratz for sale; who first manufactured, shipped and distributed Bratz; Bratz revenues and profits; MGA's access to Mattel's earlier DIVA STARZ project that allegedly had elements which subsequently appeared in Bratz; the identity of persons who worked on Bratz and payments made to them; fee and indemnification agreements; MGA's testing and handling of original Bratz drawings; MGA's sworn statements pertaining to Bratz's creation and development; and MGA's evidence preservation and collection. On July 2, 2007, the district court rejected MGA's objections to the May 16, 2007 Order.

MGA designated four different witnesses to testify on the topics identified in Mattel's Second Notice of Deposition of MGA. First, MGA designated Kenneth Lockhart to testify on Topic Nos. 38, 39 and 42. He testified on June 14-15, 2007.

Second, MGA designated Lisa Tonnu to testify on Topic Nos. 24-25, 31, 37, 39 (in part), 40 and 41. She testified on July 19, 2007. In the meantime, Mattel moved for an order compelling MGA to produce witnesses for deposition and sanctions because MGA did not

EXHIBIT 6 PAGE 76

2

1   produce witnesses on certain topics as required by the May 16, 2007 Order.  On August 14, 2007,

2   Mattel's motion was granted in part and denied in part and MGA was ordered, once again, to

3   produce witnesses to testify on several topics.  On September 24-25, 2007, Mattel deposed Ms.

4   Tonnu further on Topic Nos. 21, 24-26, 31, 39, 40 and 41.

5       Third, MGA designated Rebecca Harris to testify on Topic Nos. 11, 13, 14, 19, 22-23 and

6   27-28.  Ms. Harris' deposition was scheduled, but unilaterally cancelled by MGA, on two

7   different occasions.  MGA ultimately produced Ms. Harris on July 20, 2007.

8       Fourth, MGA designated Spencer Woodman to testify on Topic No. 34.  He testified on

9   October 9, 2007.

10      In September of 2007, the parties exchanged several meet and confer letters regarding

11  purported deficiencies in the witnesses' depositions.  In mid October, MGA notified Mattel that it

12  had retained new counsel who would be responding to Mattel's letters.  After a month-long stay

13  that MGA obtained as a result of its substitution of counsel, the parties met and conferred on

14  November 16, 2007 and again on November 21, 2007.  MGA offered to produce Ms. Tonnu

15  again, but only on some of the topics for which she had been designated previously, and only

16  during the second week of January 2008.  The parties continued to exchange letters; however,

17  they were apparently unable to resolve any issues before Mattel filed the instant motion on

    December 5, 2007.

18      Mattel essentially contends that MGA's witnesses were not sufficiently knowledgeable to

19  provide complete testimony on the 30(b)(6) topics at issue, and furthermore, that MGA's counsel

20  obstructed the depositions by making improper objections and instructing witnesses not to

21  answer.  Accordingly, Mattel seeks the following eight categories of relief: (1) an order enforcing

22  the May 16, 2007 and August 14, 2007 Orders and compelling MGA to comply therewith by

23  designating and producing fully prepared witnesses to testify on Topic Nos. 11, 13, 14, 19, 21-25,

24  27, 28, 31, 34 and 39-41 in Mattel's Second Notice of Deposition of MGA on dates of Mattel's

25  selection; (2) an order overruling each of the purportedly improper instructions not to answer

26  questions interposed at the deposition of MGA designees Spencer Woodman and compelling

27  Woodman or other such person selected by MGA as its designee to provide complete testimony

28

on Topic No. 34; (3) an order compelling MGA to produce documents that MGA designee Kenneth Lockhart identified during his June 14, 2007 deposition as documents which he reviewed and relied upon to refresh his recollection in preparation for his deposition; (4) an order overruling each of the purportedly improper instructions not to answer questions interposed at the deposition of MGA designee Lisa Tonnu; (5) an order reopening the deposition of MGA designee Lisa Tonnu based on a purported "complete reversal of testimony" made through written "changes" to her deposition transcript; (6) an order compelling Rebecca Harris to sit for the completion of her deposition and/or compelling such person selected by MGA as its designee to complete the testimony on topics for which Harris was previously designated; (7) an order imposing monetary sanctions ($10,000) for MGA's alleged willful violations of the May 16, 2007 and August 14, 2007 Orders, for MGA's allegedly improper instructions not to answer deposition questions and for MGA's alleged improper coaching, harassing and obstructionist conduct at the September 24-25, 2007 deposition of Lisa Tonnu and at the October 9, 2007 deposition of Spencer Woodman; and (8) a report and recommendation to Judge Stephen G. Larson that recommends the imposition of preclusion sanctions, that certain facts related to the topics compelled be deemed admitted, and/or that MGA be found in contempt for MGA's allegedly willful and repeated violations of the Orders.

   MGA opposes the motion, contending that it substantially complied with its obligation to produce witnesses knowledgeable on each of the topics at issue and that Mattel has had a full and fair opportunity to conduct its examinations.  According to MGA's calculations, the four witnesses testified intelligently for nearly 36 hours over five deposition days.  MGA also explains that its counsel instructed witnesses not to answer two types of questions, namely questions that invaded MGA's work product protection or attorney-client privilege, and questions that exceeded the scope of Topic No. 34.  MGA also contends that Mattel is not entitled to additional time to depose Ms. Harris in particular because Mattel's counsel wasted time and badgered the witness.  MGA acknowledges, however, that Ms. Tonnu did change her testimony and that there are some deficiencies in its witnesses' testimony that justify additional deposition time.  Indeed, MGA points out that prior to the filing of the instant motion, MGA agreed to produce witnesses to

EXHIBIT 6 PAGE 78

4

1   provide additional testimony on Topic Nos. 21, 24, 25, 31, 34 and 40. Further, after the filing of

2   the motion, MGA agreed to produce witnesses to provide additional testimony on Topic No. 39.

3   MGA contends that Mattel's motion to compel additional testimony with respect to topics on

4   which MGA has already agreed to provide additional testimony is premature and should be

5   denied.

6                                   III. STANDARDS

7       Depositions of a corporation are governed by Rule 30(b)(6) of the Federal Rules of Civil

8   Procedure, which provides in pertinent part that:

9           In its notice or subpoena, a party may name as the deponent a public or
        private corporation, a partnership, an association, a governmental agency, or other
        entity and must describe with reasonable particularity the matters for examination.
10      The named organization must then designate one or more officers, directors, or
        managing agents, or designate other persons who consent to testify on its behalf;
11      and it may set out the matters on which each person designated will testify. . . .
        The persons designated must testify about information known or reasonably
12      available to the organization.

13  Fed.R.Civ.P. 30(b)(6) (effective Dec. 1, 2007). Rule 30 also provides that the examination and

14  cross-examination of a deponent proceed as they would at trial under the Federal Rules of

15  Evidence. Fed.R.Civ.P. 30(c)(1). Further, "[a]n objection at the time of the examination--

16  whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking

17  the deposition, or to any other aspect of the deposition--must be noted on the record, but the

18  examination still proceeds; the testimony is taken subject to any objection." Fed.R.Civ.P.

19  30(c)(2). "An objection must be stated concisely in a nonargumentative and nonsuggestive

20  manner. A person may instruct a deponent not to answer only when necessary to preserve a

21  privilege, to enforce a limitation ordered by the court, or to present a motion under Rule

22  30(d)(3)." Id.

23      Rule 30(d)(1), Fed.R.Civ.P., provides that a deposition is limited to one day of seven

24  hours, unless otherwise stipulated or ordered by the court. "The court must allow additional time

25  consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                    EXHIBIT 6 PAGE 79                    5

1   person, or any other circumstance impedes or delays the examination."[1] Fed.R.Civ.P. 30(d)(1).

2   Furthermore, sanctions may be imposed --including the reasonable expenses and attorney's fees

3   incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the

4   deponent. Fed.R.Civ.P. 30(d)(2).

## IV. DISCUSSION

5   A. Mattel's Request for Relief No. 1: Mattel seeks an order enforcing the May 16, 2007 and

6   August 14, 2007 Orders and compelling MGA to comply therewith by designating and producing

7   fully prepared witnesses to testify on Topic Nos. 11, 13, 14, 19, 21-25, 27, 28, 31, 34 and 39-41 in

   Mattel's Second Notice of Deposition of MGA on dates of Mattel's selection.

8

9       Mattel contends that MGA's witnesses were inadequately prepared and failed to provide

10  sufficient testimony on sixteen of the topics identified in the Second Notice of Deposition of

    MGA. Each of the sixteen 30(b)(6) topics at issue is addressed separately below.

11

12      **Topic No. 11:** The exhibition, or proposed, offered, contemplated or requested exhibition,
    of BRATZ or any BRATZ DESIGN to any third party prior to June 30, 2001, including
13  without limitation each instance in which BRATZ or any BRATZ DESIGN was marketed,
    offered for sale, pitched, shown or disclosed to, or otherwise discussed with or
    communicated to, any retailer, wholesaler or distributor and the DOCUMENTS that
14  REFER OR RELATE thereto.

15      Mattel contends that Ms. Harris lacked sufficient knowledge on this topic. In particular,

16  Mattel contends that Ms. Harris could not confirm what form of Bratz or Bratz design ("sculpts")

17  was first exhibited to third parties prior to June 30, 2001.

18      MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

19  this topic. More specifically, MGA contends that Ms. Harris testified about the first exhibition,

20  sale and distribution of Bratz, including presentations to Target stores, and the first sale,

21  distribution and shipment of Bratz under an agreement with Bandai in Spain. MGA contends that

22  it is not reasonable to expect MGA to have investigated specifically what type of Bratz "sculpts"

    were shown at particular exhibitions.

23

24  _____

[1] Rule 26(b)(2), Fed.R.Civ.P., provides that the court shall limit the frequency or extent of use of the
25  discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or
    is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party
26  seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the
    burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case,
27  the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the
    importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

28

EXHIBIT _4_ PAGE _80_

1    Furthermore, MGA points out that Mattel has taken the deposition of MGA HK on the

2    subject of the initial manufacture of Bratz. More specifically, MGA contends that Mattel took the

3    deposition of the head of MGA's Hong Kong operations, Edmond Lee, for two full days, and

4    questioned him about the first manufacture of Bratz by Early Light. Therefore, MGA contends

5    that Mattel has had a full and fair opportunity to examine MGA regarding the first manufacture of

6    Bratz.

7    A review of the transcript confirms that Ms. Harris was not reasonably prepared for her

8    deposition, especially in light of the importance of the timing of the creation of Bratz. For

9    example, she could not specify what was shown to retailers during the year 2000. She testified

10   that MGA used "boards" (i.e. sketched drawings) to show retailers Bratz during the year 2000

11   based upon a telephone conversation she had with Paula Garcia during a break. Mattel is entitled

12   to delve into more detail about these "boards," and such information should be reasonably

13   available to MGA. Ms. Harris testified that Julie Chemo likely attended presentations during the

14   year 2000. Therefore, Mattel is entitled to an order compelling MGA to produce a witness to

15   provide complete testimony on Topic No. 11.

16   **Topic No. 13**: COMMUNICATIONS prior to June 30, 2001 between YOU and any
     manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or potential
     manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE TO BRATZ or
     any BRATZ DESIGN.

17

18   Mattel contends that Ms. Harris' testimony was wholly inadequate. In particular, Mattel

19   contends that Ms. Harris had no knowledge concerning early MGA communications with Bandai,

20   which distributed Bratz in the first market in which it was allegedly sold. Ms. Harris did not have

21   any knowledge or information as to when MGA and Bandai first had any type of contact or

22   communication regarding Bratz. Similarly, Ms. Harris did not have any knowledge or

23   information as to when MGA first had contact with a company called J.H.N. regarding the sale of

24   Bratz in Australia.

25   MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

26   Topic No. 13, as described above in connection with Topic No. 11. Accordingly, MGA objects to

27   any further examination on Topic No. 13.

28   A review of the deposition transcript confirms that Ms. Harris provided significant

1    testimony on Topic No. 13.  However, as Mattel points out, her testimony lacked many details

2    relevant to when Bratz was developed.  For example, Ms. Harris was unable to testify as to any

3    communications or negotiations between MGA and Bandai leading up to the execution of written

4    agreements.  Indeed, Ms. Harris did not know when MGA and Bandia first had any contact

5    regarding Bratz.  Furthermore, MGA did not conduct a reasonable investigation to prepare Ms.

6    Harris for Topic No. 13.  Among other things, MGA made no effort to determine whether the

7    former MGA HK employee known to have been directly involved in the first discussions with

8    Bandai (Martin Hitch) had retained any documents responsive to this topic.  Nor did Ms. Harris

9    speak to Isaac Larian and Jim Olmstead, both of whom authored emails referencing existing

10   distributorship deals in Europe and Australia.  Therefore, Ms. Harris did not fulfill MGA's duty to

11   produce a witness to testify on information known or reasonably available to MGA.  Mattel is

12   entitled to an order compelling MGA to produce a witness to provide complete testimony on

     Topic No. 13.

13          **Topic No. 14**:  When and where BRATZ was first manufactured, shipped, distributed and

14          sold, and the IDENTITIES and roles of PERSONS involved therein.

15          Mattel contends that Ms. Harris did not have any knowledge regarding the identity or role

16   of any person who was involved in the first manufacture of Bratz dolls by Early Light.  Mattel

17   also contends that Ms. Harris had no knowledge as to the date when manufacturing began for the

18   first Bratz dolls.  Furthermore, Mattel contends that MGA should not be permitted to rely on the

19   testimony given by MGA HK's corporate designee to evade providing testimony on this topic

20   because that designee's testimony was deficient.

21          MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

22   Topic No. 14, as described above in connection with Topic No. 11.  Accordingly, MGA objects to

23   any further examination on Topic No. 14.

24          A review of the deposition transcript confirms that Ms. Harris did not have any knowledge

25   regarding the identity or role of any person at MGA who first had contact with Early Light, the

26   first manufacturer of Bratz dolls.  Nor did she know the identity of any person at MGA or at Early

27   Light who was involved in the first manufacture of Bratz dolls.  Furthermore, Ms. Harris stated

     that she did not undertake any investigation to uncover these facts.  Ms. Harris also had no

28

1  information or knowledge regarding the date when manufacturing began for the first Bratz dolls.

2  Ms. Harris testified that personnel in MGA's Hong Kong affiliate coordinated with Early Light.

3  Thus, the information sought by Mattel is reasonably available to MGA. That Mattel also seeks

4  testimony from MGA's Hong Kong affiliate does not excuse MGA from producing a witness

5  sufficiently knowledgeable on Topic No. 14. Therefore, Mattel is entitled to an order compelling

6  MGA to produce a witness to provide complete testimony on Topic No. 14.

7      **Topic No. 21:** YOUR knowledge of, and access to, non-public MATTEL DIVA STARZ project information and DESIGNS prior to June 30, 2001.

8      Mattel contends that Ms. Tonnu was not sufficiently prepared to provide testimony, as

9  evidenced by the fact that two other MGA employees, Paula Garcia and Margaret Leahy, testified

10  that they had "access" to non-public DIVA STARZ information.

11      MGA contends that Ms. Tonnu prepared for her deposition by speaking with five MGA

12  employees, including Paula Garcia. Based upon that investigation, Ms. Harris testified that the

13  five employees did not work on DIVA STARZ. MGA explains that Ms. Garcia merely testified

14  that when she was at Mattel she often spoke to co-workers at Mattel who happened to work on the

15  DIVA STARZ, that those co-workers may have mentioned the existence of the project and that

16  they told Ms. Garcia it was confidential. MGA contends that Ms. Garcia's testimony does not

17  establish "access to" DIVA STARZ information, but the opposite – that the employees did not

18  share details with Ms. Garcia and told her the project was confidential. MGA acknowledges,

19  however, that Ms. Garcia testified that on one occasion she saw a sketch of a DIVA STARZ

20  character.

21      Nevertheless, MGA represents that during the meet and confer process MGA designated

22  Ms. Tonnu to provide further testimony on Topic No. 21, and that she will be deposed on January

23  9, 2008. MGA represents that Ms. Tonnu will be prepared to testify whether each former Mattel

24  employee now employed by MGA had "access to" DIVA STARZ information while employed by Mattel.

25      A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently

26  prepared to testify on Topic No. 21. Ms. Tonnu did not know what DIVA STARZ was.

27  Furthermore, she was not sufficiently informed of the identities of the MGA employees and

28

9

EXHIBIT _C_ PAGE _83_

1    contractors who had access to or worked on DIVA STARZ. For example, Ms. Tonnu was

2    uninformed of Ms. Garcia's and Ms. Leahy's knowledge and access to DIVA STARZ

3    information while employed by Mattel. Such information was known or reasonably available to

4    MGA. Therefore, Mattel is entitled to an order compelling MGA to produce a knowledgeable

5    witness to provide complete testimony on Topic No. 21.

6        **Topic No. 24:** Any indemnification and fee arrangement that YOU and/or BRYANT has

7    sought proposed, requested or obtained in connection with this ACTION.

8        Mattel contends that MGA's designee, Lisa Tonnu, was not sufficiently prepared to

9    testify, despite having been produced twice to testify on this topic. For example, Mattel points

10   out that Ms. Tonnu did not know why MGA agreed to pay Carter Bryant's attorneys' fees or how

11   much MGA had paid or whether Littler Mendelson's fees had been paid in full. Mattel's Motion

12   at pp. 14-15. Furthermore, Mattel points out that Ms. Tonnu did not make any effort to find out

13   the answers to these questions.

14       MGA contends that Ms. Tonnu substantially discharged MGA's obligation to provide

15   testimony in response to this topic. MGA contends that Ms. Tonnu reviewed responsive

16   documents and was able to identify the agreements in her deposition. Further, MGA contends

17   that Ms. Tonnu spoke to MGA's in-house counsel about the agreements and was able to identify

     the individuals involved in the negotiations of those agreements.

18

19       MGA acknowledges, however, that Ms. Tonnu was not able to testify regarding the

20   specifics of those negotiations or the terms of those agreements. MGA represents that prior to the

     filing of this motion, it designated in-house counsel Sam Khare to provide additional testimony on

21   this topic and that Mattel will depose him on January 8, 2008.

22       A review of the deposition transcript confirms that Ms. Tonnu was not prepared to testify

23   as to information known or reasonably available to MGA. For example, Ms. Tonnu did not know

24   why MGA agreed to pay Bryant's fees, did not know how much MGA had paid in fees, and did

25   not know whether MGA had paid Littler Mendelson's fees in full. Accordingly, Mattel is entitled

26   to an order compelling MGA to produce a knowledgeable witness to provide complete testimony

27   on Topic No. 24.

28

EXHIBIT 10 PAGE 84 [10]

**Topic No. 25**:  YOUR revenues and profits from BRATZ, including without limitation, YOUR gross and net profits, and YOUR costs associated therewith.

Mattel contends that Ms. Tonnu lacked the most basic information called for by this topic. For example, Mattel contends that Ms. Tonnu testified that: she did not recall nor could she provide an estimate of how much distribution revenue MGA derived from the Bratz brand between 2001 and the end of 2006; she did not know and could not provide a best estimate for the episodic costs or production costs associated with the distribution revenue; she did not know who in the company could provide this information; she did not know and could not provide a range for how much licensing revenue MGA had received for licensing anything associated with the Bratz brand between 2001 and the end of 2006; she did not know and could not estimate how much revenue the Bratz movie generated; she did not know how much revenue MGA had earned from the Bratz brand; and she did not know how much profit MGA had generated from the Bratz brand.

MGA contends that it substantially discharged its obligation to provide testimony on this topic.  More specifically, MGA contends that Ms. Tonnu testified with the aid of Exhibit 660, a 143-page report summarizing the units sold from 2001 to 2006 organized by "stock-keeping-unit" or "SKU."  MGA contends that Ms. Tonnu prepared for her deposition by speaking with MGA's Director of Finance, Anisse Evans, regarding Exhibit 660.

In the meet and confer process, MGA's counsel offered to provide Mattel with source information from which the profitability of Bratz products at the SKU level could be derived and to produce Ms. Tonnu for follow-up testimony regarding that source financial information so that Mattel's experts would be in a position to draw their own conclusions and opinions as to MGA's profits from Bratz.  MGA represents that Mattel has agreed to depose Tonnu on this topic on January 9, 2008.  MGA also represents that it has produced more than 27,700 pages of source financial information that will be the "starting point" from which MGA's and Mattel's experts will analyze the profitability of Bratz products.  MGA represents that Ms. Tonnu will be prepared to discuss the source financial information produced to Mattel at her continued deposition.

A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently prepared to provide testimony on Topic No. 25.  Ms. Tonnu could not identify, generally or by

EXHIBIT 6 PAGE 85

11

product, Bratz revenues, costs, or gross or net profits. Furthermore, MGA has failed to provide any explanation for why Ms. Tonnu was not educated on the source financial information before her deposition. Accordingly, Mattel is entitled to an order compelling MGA to produce a knowledgeable witness to provide complete testimony on Topic No. 25.

> **Topic No. 27:** The payment of money or anything of value that YOU have made or offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought or received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s) and reasons therefore.

Ms. Cloonan was Carter Bryant's roommate at some point. Bryant testified that he showed her early drawings prior to showing them to MGA. She is not and never has been an employee of MGA.

Mattel contends that Ms. Harris' testimony was incomplete because she only searched for evidence of payment by reviewing vendor files and MGA's electronic purchase order files, and did not review the individual documents within each account payable vendor file. Mattel also contends that Ms. Harris was not sufficiently prepared because she had no knowledge or information as to who was paying her legal fees in this case.

MGA contends that it discharged its obligation to testify on Topic No. 27, emphasizing that Ms. Harris unequivocally represented on behalf of MGA that MGA made no payments to, had no agreements with and had no communications with Elise Cloonan. Furthermore, MGA points out that Mattel took the deposition of Elise Cloonan on December 14, 2007, and she confirmed that she had received no payments from and had no communications with MGA.

A review of the transcript confirms that Ms. Harris' preparation for and testimony regarding Topic No. 27 was adequate. Furthermore, the burden and expense of conducting a deposition on this topic substantially outweigh the potential relevance of the testimony sought. Mattel's motion is denied with respect to Topic No. 27.

> **Topic No. 28:** COMMUNICATIONS between YOU and Elise Cloonan that REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

Mattel contends that Ms. Harris's testimony was insufficient because she admitted she did not have any knowledge or information as to what systems or hard drives in MGA were searched

EXHIBIT 6 PAGE 86

1   for e-mails referencing Elise Cloonan.

2   MGA contends that Mattel is not entitled to further examination on Topic No. 28 because
3   Ms. Harris substantially discharged MGA's obligation to testify on the topic, as described above
4   in reference to Topic No. 27 above.

5   A review of the transcript confirms that Ms. Harris' preparation for and testimony
6   regarding Topic No. 28 was adequate. Furthermore, the burden and expense of conducting a
7   deposition on this topic substantially outweigh the potential relevance of the testimony sought.
8   Mattel's motion is denied with respect to Topic No. 28.

9   **Topic No. 31:** The IDENTITY of each PERSON who, at any time since January 1, 1998, has performed any work or services for, by or on behalf of YOU while such PERSON was employed by MATTEL, the nature and timing of each such PERSON's work or services and the amount(s) paid by YOU to each such PERSON.

11   Mattel contends that the first time MGA produced Ms. Tonnu to testify, she lacked any
12   personal knowledge regarding this topic and that MGA failed to educate her properly on the topic.
13   Ms. Tonnu testified that she spoke to an accounts payable clerk, Ms. Brooks, who had "a list of
14   vendors and the dates in which they were either employed or freelancing with Mattel, and she
15   cross-referenced that in her research." Tonnu Tr. at 147:5-148:20. Mattel points out, however,
16   that Ms. Tonnu testified that she did not know who prepared the list; did not see the criteria used
17   to prepare the list; did not know who the vendors or freelance people were on the list; and did not
18   know whether the list included all former Mattel employees who were working at MGA. MGA
19   produced Ms. Tonnu for a second time regarding Topic No. 31, however, Mattel contends that she
20   was still unprepared.

21   MGA contends that it has substantially discharged its obligation to provide testimony on
22   this topic. MGA explains that Ms. Tonnu testified on this topic based on a review of MGA
23   business records. MGA explains that to prepare for the deposition, it prepared a list of MGA
24   employees who were former Mattel employees, including the dates each person was employed by
25   Mattel. Next, Ms. Brooks searched MGA's accounting records reflecting payments to outside
26   vendors for any evidence of a payment to a former Mattel employee on the list during the period
27   of that person's Mattel employment, or with respect to work or services performed during that
period. MGA contends that Ms. Tonnu testified about this search and the results of the search

1  leading to the identification of three instances of payments to former Mattel employees while the

2  employee was still at Mattel.

3       Nevertheless, MGA represents that prior to the filing of this motion, it designated Ms.

4  Tonnu to provide additional testimony on this topic. Specifically, MGA is prepared to produce

5  Ms. Tonnu to testify regarding whether former Mattel employees may have performed work or

6  services for MGA during their employment with Mattel without being paid for those services.

7  Ms. Tonnu's deposition is scheduled for January 9, 2008.

8       A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently

9  prepared to testify on Topic No. 31. Notably, Ms. Tonnu admitted that she did not know whether

10  any person has at any time since 1998 performed work or services for MGA while that person

11  was a Mattel employee. Further, she testified that she did not speak with or ask any of the former

12  Mattel employees who were working at MGA whether they had provided work or services for

13  MGA while they were Mattel employees. Instead, Ms. Tonnu only knew whether or not

14  payments were made to the former Mattel employees while they were still employees of Mattel.

15  Furthermore, the list of former Mattel employees provided by Ms. Brooks was incomplete

16  because it did not include twelve former Mattel employees. Accordingly, Mattel is entitled to an

17  order compelling MGA to produce a witness to provide complete testimony on Topic No. 31.

**Topic No. 34:** Other than those previously filed and served in this ACTION or in which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ THAT REFER OR RELATE TO the time period prior to June 30, 2001 (regardless of when such testimony or sworn statement was taken, given, signed, made or filed).

     Mattel contends that Mr. Woodman had not been adequately prepared for his deposition

and lacked the most basic knowledge on the topic. Mattel points out that Mr. Woodman had been

employed with MGA for less than one year and that his responsibilities had been limited to the

administration of licensing contracts and royalties. Further, Mattel contends that in preparation

for his deposition, Mr. Woodman "did no more than review a selection of sworn statements

previously made by others, review transcripts of Carter Bryant's deposition testimony, and speak

'for a few minutes' with one other person besides counsel." Mattel's Consolidated Separate

Statement, p.130.

28

EXHIBIT 6 PAGE 88

14

Mattel also contends that Mr. Woodman was not sufficiently prepared to testify regarding "sworn statements in MGA's many submissions to the Copyright Office or Patent and Trademark Office," and sworn testimony from the "Art Attacks" trial. Id. Further, Mattel contends that MGA's counsel improperly instructed Mr. Woodman not to answer certain questions on the basis that Topic No. 34 did not include sworn statements made in connection with the "Art Attacks" matter or statements made in various submissions to the Copyright Office or Patent and Trademark Office. Counsel also instructed Mr. Woodman not to answer certain questions about sworn statements that related to Topic No. 33 and statements that MGA believed did not sufficiently relate to conduct prior to June 30, 2001. Topic No. 33 seeks testimony on applications for registration and the registrations for copyright, patent, trademark or any other right that refer or relate to Bratz or Bratz designs, sought, made or obtained by, for or on behalf of MGA or Bryant, including communications pertaining thereto.

MGA contends that Mattel is not entitled to any further testimony on this topic. MGA explains that Mr. Woodman reviewed 30-50 sworn statements, read the transcript of the depositions of Carter Bryant and Victoria O'Connor, MGA's former Vice President of Licensing, and interviewed Leon Djiguerian in MGA's Product Development. MGA further asserts that Mr. Woodman answered questions as to the completeness or incorrectness of many factual statements contained in the sworn statements placed in front of him by Mattel's counsel. Thus, MGA contends that Mattel obtained exactly the testimony it sought. In MGA's view, Mr. Woodman's testimony regarding the correctness or incorrectness of factual statements identified from the sworn statements is binding on MGA. MGA also contends that Mr. Woodman was not required to investigate the preparation, review and approval of MGA's various sworn statements because such information would be protected from disclosure by the attorney-client privilege and work product doctrine.

MGA next contends that most of the documents shown to Mr. Woodman were not "sworn statements," but rather (i) copyright registrations and certificates that include a statement that the application is "correct to the best of my knowledge," (ii) certificates of registration issued by the USPTO, and (iii) an office action summary by the USPTO. Nevertheless, MGA implicitly

EXHIBIT 16 PAGE 89

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

1    acknowledges that Mr. Woodman did not provide sufficient testimony as to certain applications

2    for registrations containing declarations by Isaac Larian documents (Exhibits 580-584, 590), a

3    declaration by Bryant (Exhibit 502), and an application and amendment referred to in the Bryant

4    declaration (Exhibits 500, 548), and one additional declaration by Isaac Larian, by agreeing to

5    produce Sam Khare to testify regarding these documents.  Mattel is scheduled to depose Mr.

6    Khare on January 8, 2008.

7         MGA contends that prior counsel properly objected to certain questions as outside the

8    scope of Topic No. 34.  In particular, MGA contends that questions directed at statements that did

9    not refer or relate to the time period prior to June 30, 2001 are outside the scope of Topic No. 34.

     Further, MGA contends that where a sworn statement relates in part to the time period before

10   June 30, 2001, and in part to other time periods, the scope of Topic No. 34 is limited by its own

11   terms to that portion of the statement that relates to the specified time period.  MGA also contends

12   that sworn testimony taken at the Art Attacks trial is outside the scope of Topic No. 34 because

13   Mattel's counsel was present at that trial.

14        MGA represents that its present counsel does not condone the instructions not to answer

15   made by prior counsel, and will not attempt to justify those instructions.  Nevertheless, MGA

16   contends that Mattel was not deprived of any discoverable testimony by those instructions

17   because the disputed questions sought information outside the scope of Topic No. 34.  More

18   specifically, MGA represents that each exhibit that was excluded from Mr. Woodman's testimony

19   on the grounds that it was not a "sworn statement" was the subject of examination of MGA's

20   designees on Topic No. 33, Bryan Armstrong and Sam Khare.  MGA also contends that

21   resumption of a deposition on Topic No. 34 beyond what MGA has agreed to provide is

22   unwarranted because Mattel obtained two full days of 30(b)(6) testimony on Topic No. 33.

23        A review of the deposition transcript confirms that Mr. Woodman was not sufficiently

24   prepared to provide testimony on Topic No. 34.  Mr. Woodman did no more than review the

25   sworn statements made by others and the transcripts of Carter Bryant's deposition.  For the sworn

26   statements he did review, Mr. Woodman offered little information beyond what was apparent on

27   the face of the documents.  For example, Mr. Woodman did not know who authorized submitting

28

1    the sworn statement. Ultimately, Mr. Woodman only testified as to whether or not a particular

2    sworn statement was consistent with deposition testimony of Carter Bryant. Furthermore, Mr.

3    Woodman admitted that the testimony he gave had nothing to do with MGA's current beliefs, was

4    not based on any investigation, and had nothing to do with the actual correctness or incorrectness

5    of any of the sworn statements. Mr. Woodman admitted that no matter what inconsistencies

6    existed between Carter Bryant's testimony and MGA's sworn statements, Mr. Woodman always

7    presented Carter Bryant's testimony as to the facts as "true." Thus, Mr. Woodman failed to

8    testify as to information known or reasonably available to MGA. Mr. Woodman's lack of

9    preparedness alone justifies re-opening Topic No. 34. Furthermore, MGA cannot rely on blanket

     claims of privilege to preclude testimony on Topic No. 34.

10      A further deposition on Topic No. 34 is also justified in light of the admittedly improper

11    instructions not to answer, and MGA's acknowledgement that Mr. Woodman did not provide

12    testimony as to Exhibits 500, 502, 548, 580-584, 590. MGA shall abide by its agreement to

13    produce a witness to testify on these exhibits.

14      MGA's interpretation of Topic No. 34 as excluding statements not made under oath or

15    penalty of perjury, and as excluding any portion of a statement under oath that does not refer or

16    relate to the time period prior to June 30, 2001, is overly technical. There is, however, a clear

17    overlap between Topic No. 34 and Topic No. 33, which is not at issue in this motion. When the

18    deposition on Topic No. 34 is resumed, MGA's corporate designee is not required to provide

19    further testimony on statements that were the subject of examination of MGA's designees on

20    Topic No. 33.

21      MGA's interpretation of Topic No. 34 as excluding testimony from the Art Attacks trial is

22    appropriate. Mattel does not contest that its counsel attended the Art Attacks trial. Topic No. 34

23    clearly excludes any proceeding attended by Mattel's counsel. When the deposition on Topic No.

24    34 is resumed, MGA's corporate designee is not required to provide further testimony with

25    respect to the Art Attacks trial.

26      **Topic No. 39**: The preservation, collection, destruction, removal, transfer, loss or
        impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection with

27      the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

28

EXHIBIT 6 PAGE 91

MGA designated two individuals to testify on this topic:  Kenneth Lockhart to testify on electronic evidence; and Lisa Tonnu, to testify on documentary evidence.  Mattel contends that both designees were unable to provide substantive testimony.

Mattel points out that Mr. Lockhart did not know whether the MGA's "PST files" had been searched; whether e-mails had been deleted from the exchange mailbox between late 2004 and the present; whether MGA's "snap servers" had been searched; whether keywords were used to search "PST" files; and what user files were searched.  Further, Mattel contends that Mr. Lockhart was not aware of the location of any hard drive or any image of any hard drive that had been preserved for litigation purposes.

MGA contends that Mr. Lockhart substantially discharged MGA's obligation on Topic 39 with respect to electronic documents.  MGA represents that Mr. Lockhart prepared extensively for his testimony by speaking with various individuals and that he testified at length about the configuration of MGA's computer systems and MGA's policies, practices and procedures for the retention and preservation of electronic documents.

Nevertheless, MGA is willing to produce a witness to testify on its behalf regarding the collection of electronic documents in connection with this action in order to shore up the one area of Mr. Lockhart's testimony that MGA agrees was lacking.

As for Ms. Tonnu, Mattel contends that MGA made no discernible effort to educate her concerning the topic.  Ms. Tonnu testified that she did not know whether MGA has a document retention policy.  Mattel also contends that MGA's counsel instructed Ms. Tonnu not to answer any questions about MGA's preservation and collection of documents based upon unfounded claims of attorney-client privilege.[2]

MGA produced Ms. Tonnu a second time to testify on Topic No. 39, however Mattel contends that her testimony remained deficient.  For example, Ms. Tonnu testified that she prepared for the deposition by speaking with Rich Daniels, MGA's counsel, and by reviewing a

//

---

[2] The instructions not to answer are discussed in a separate section of this Order.

EXHIBIT 6 PAGE 92

18

1  declaration prepared by Daphne Gronich, MGA's General Counsel on the subject of document

2  preservation. Mattel points out, however, that Ms. Tonnu never spoke with Ms. Gronich, and

3  therefore was unable to provide any information beyond what was stated in the four corners of the

4  declaration. In particular, Mattel contends that Ms. Tonnu did not know whether any documents

5  at the MGA campus had been searched for responsive documents. Nor did Ms. Tonnu know what

6  documents were stored at MGA's three off-site facilities and could not confirm whether they had

7  been searched for documents responsive to Mattel's requests.

8       MGA contends that Ms. Tonnu testified fully and completely regarding MGA's

9  preservation of documents in connection with this action. Indeed, MGA contends that the

10  Gronich declaration, which had already been provided to Mattel, contains detailed information

11  regarding MGA's document preservation efforts. MGA also points out that Tonnu testified,

12  based on her investigation and MGA's general policy (that documents generated by employees in

13  the ordinary course of business should not be destroyed and the wide distribution of document

14  preservation notices to MGA employees), that MGA did not knowingly destroy any documents

15  potentially relevant to this action.

16       MGA acknowledges, however, that Ms. Tonnu was not able to testify regarding the actual

17  collection of documents for production in this action. MGA represents that it is willing to

18  produce an additional witness to discuss the collection of hard copy and electronic documents in

19  connection with this action.

20       A review of the deposition transcripts confirms that MGA's witnesses provided a

21  significant amount of testimony on this topic, and in particular regarding document preservation.

22  The one area where they were glaringly deficient was regarding document "collection."

23  Accordingly, MGA is ordered to abide by its agreement to produce a witness to testify further

24  with respect to the "collection" of hard copy and electronic documents. In all other respects,

25  MGA is in substantial compliance with Topic No. 39, and the burden and expense of re-opening a

26  deposition on the entirety of Topic No. 39 outweighs the likely benefit of the testimony Mattel

27  seeks.

28       **Topic No. 40:** The preservation, collection, destruction, removal, transfer, loss or

1   impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1, 1999 that
2   REFER OR RELATE TO MATTEL (including without limitation to any MATTEL product, plan
3   or information) that YOU received in any manner from any PERSON who was at the time an
4   employee of MATTEL or who had previously been an employee of MATTEL.

5         This topic appears to be based, at least in part, upon Mattel's allegations that former
6   Mattel employee Ron Brawer, former Mattel employees in Mattel's offices in Mexico; and a
7   former Mattel employee located in Canada improperly provided MGA with documents containing
8   Mattel trade secrets.

9         Mattel contends that MGA made no discernible effort to educate Ms. Tonnu on Topic No.
10  40, and therefore she was unable to answer whether MGA has or has had in its possession any (1)
11  Mattel strategic plans, (2) any sales or profit information of Mattel, (3) any documents related to
12  Mattel's advertising strategy, (4) any documents relating to the results of Mattel's advertising, (5)
13  documents related to Mattel's pre-release line lists, and (6) documents related to Mattel's strategy
14  with respect to specific customers.  MGA produced Ms. Tonnu a second time, however, Mattel
15  contends that her testimony remained deficient.  In particular, Mattel complains that MGA spoke
16  with only two former employees about the documents described above, when there are many
17  more former Mattel employees working at MGA.

18        MGA contends that Ms. Tonnu spoke with the three individuals at MGA who would be
19  most knowledgeable about the allegations against MGA and testified as to any documents they
20  brought with them from Mattel: Ron Brawer, Susana Kuemmerle and Janine Brisbois.  MGA
    contends that Ms. Tonnu's preparation to testify on Topic 40 was reasonable.

21        Nevertheless, MGA represents that it has agreed to provide additional testimony through
22  Ms. Tonnu to address Mattel's concerns, and that her deposition will take place on January 9,
23  2008.

24        A review of the deposition transcript indicates that Ms. Tonnu did not prepare sufficiently
25  for her testimony.  Ms. Tonnu spoke to only three individuals.  Clearly, there are far more sources
26  of information reasonably available to MGA, namely the many more former Mattel employees
27  now employed at MGA.  MGA made no effort to determine what Mattel documents, if any, these

28                                                                                        20

EXHIBIT 6 PAGE 94

1  individuals possess.  Therefore, Mattel is entitled to an order compelling MGA to produce a

2  witness to provide complete testimony on Topic No. 40.

3  **Topic No. 41:** The testing or sampling from DOCUMENTS that REFER OR RELATE
   TO BRATZ or BRYANT, including without limitation such testing or sampling in

4  connection with any ink, paper or chemical analysis performed or attempted to be
   performed to date, any DOCUMENTS that REFER OR RELATE thereto and all results

5  and reports relating thereto.

6  Mattel deposed Ms. Tonnu on this topic on two separate occasions.  Mattel contends that

7  in each instance, she was unprepared to given any meaningful testimony regarding any ink, paper

8  or chemistry testing performed on Bratz documents.  In particular, Mattel contends that Ms.

9  Tonnu's preparation for her deposition was inadequate because she did not speak to the MGA

10  litigation consultant who performed the testing, Mr. Speckin, but merely read his declaration.

11  Furthermore, Mattel contends that MGA's counsel improperly instructed Ms. Tonnu not to

12  answer questions based upon unfounded claims of work product protection.  Mattel explains that

13  it is not seeking information concerning Mr. Speckin's opinions or the results of his test on Bratz

14  documents.  Instead, Mattel contends that it is seeking factual information concerning the

15  handling and shipment of original Bratz documents, as well as the specific documents that were

16  tested.  In Mattel's view, the factual circumstances surrounding Mr. Speckin's testing are not

17  protected from discovery by the work-product doctrine.

18  Moreover, Mattel contends that MGA provided Mattel's counsel with a list identifying the

19  documents that Mr. Speckin tested and allowed Ms. Tonnu to testify about the identification of

20  documents, thereby waiving any work product protection with respect to the identification of

21  documents.  Mattel also contends that Mr. Speckin's declaration, which was submitted in the

22  case, already discloses the types of tests conducted and therefore any privilege that may have

23  applied has been waived with respect to this subject.

24  MGA contends that it complied with this topic and that Mattel is not entitled to any further

25  examination because further questioning about the testing performed by Mr. Speckin would

26  violate MGA's attorney work product protection.  Mr. Speckin is one of MGA's non-testifying

27  experts.  MGA objects to any further questioning regarding Mr. Speckin's selection of which

28  documents to test, how the documents were handled, which tests were performed on the

EXHIBIT 6 PAGE 95

1   documents, how they were shipped and how they were stored.  MGA contends that further

2   questioning on these subjects would necessarily reveal the mental impressions, legal theories, and

3   conclusions of MGA's counsel and its non-testifying experts formed in anticipation of litigation

4   with Mattel.  Further, MGA contends that Mattel has not carried its heavy burden to demonstrate

5   the "exceptional circumstances" required to invade MGA's work product.

6        A review of the deposition transcript confirms that Ms. Tonnu was not reasonably

7   prepared to testify on Topic No. 41.  Ms. Tonnu did not speak with Mr. Speckin or anyone

8   involved in the testing.  She had only read Mr. Speckin's declaration.  Therefore, she clearly was

9   not in a position to testify as to information known or reasonably available to MGA.  On this basis

10  alone, Mattel is entitled to an order compelling MGA to produce a witness to testify fully on

    Topic No. 41.

11       As for MGA's claims of work production protection, Judge Larson has already indicated

12  that questions of privilege regarding the testing of the Bratz documents must be handled on a

13  question-by-question basis.  The questions at issue are set forth in Mattel's Separate Statement

14  No. 2, and are discussed below in connection with Mattel's Request for Relief No. 4.

15

16  B. Mattel's Request for Relief No. 2:  Mattel seeks an order overruling each of the purportedly
    improper instructions not to answer questions interposed at the deposition of MGA designees
17  Spencer Woodman (Instruction Nos. 46-57) and compelling Woodman or other such person
    selected by MGA as its designee to provide complete testimony on Topic No. 34.

18       Mattel identifies each instance of allegedly improper instructions in its Separate Statement

19  No. 2.  In each instance identified by Mattel, MGA's counsel instructed the witness not to answer

20  questions about matters that counsel believed exceeded the scope of the deposition.  The

21  instructions not to answer were not based upon a claim of privilege, and therefore were clearly

22  improper.

23       Furthermore, as stated previously, MGA has acknowledged that some questions fell within

24  the scope of Topic No. 34 and should be answered.  To that end, MGA has agreed to produce a

25  corporate designee to provide supplemental testimony as to Exhibits 500, 502, 548, 580-584, 590.

26  MGA shall abide by its agreement to produce a witness to testify on these exhibits.

27       Nevertheless, many of the questions identified in the Separate Statement No. 2 for which

28

EXHIBIT 6 PAGE 96

1   an improper instruction not to answer was given clearly exceeded the scope of the deposition

2   notice.  MGA is not required to provide further testimony as to those questions.  For example, the

3   question regarding the Art Attacks trial that Mattel's counsel attended (Instruction No. 46) exceed

4   the scope of Topic No. 34, and do not require any further testimony.  MGA is also not required to

5   provide further testimony as to documents that have been the subject of questioning during the

6   30(b)(6) deposition on Topic No. 33.[3]

7   C. Mattel's Request for Relief No. 3:  Mattel seeks an order compelling MGA to produce
    documents that MGA designee Kenneth Lockhart identified during his June 14, 2007 deposition
8   as documents which he reviewed and relied upon to refresh his recollection in preparation for his
    deposition.

9       Mattel seeks an order compelling MGA to produce documents that Mr. Lockhart

10  identified during his deposition as documents which he reviewed and relied upon to refresh his

11  recollection in preparation for his deposition.

12      MGA contends that the documents Mattel seeks are privileged e-mail communications

13  from MGA's General Counsel to MGA employees regarding their document preservation

14  obligations in light of the present action.  MGA contends that its privilege log demonstrates that

15  the documents are protected by both the attorney-client privilege and the work product doctrine.

16  Furthermore, MGA contends that Mr. Lockhart was required to review the privileged emails

17  because they related to MGA's preservation of documents in connection with this action and they

18  were reasonably available to MGA.

19      Moreover, MGA contends that waiver of the attorney-client privilege and work product

20  doctrine is not automatic where a witness refreshes his recollection with privileged prior to a

21  deposition.  In re Managed Care Litig., 415 F.Supp.2d 1378 (S.D. Fla. 2006); Medtronic Xomed,
    Inc. v. Gyrus ENT LLC, 2006 WL 786425, at *1, 3, 6-7 (M.D. Fla. March 27, 2006).

22      MGA's bare bones privilege log, unaccompanied by any supporting declarations, is

23  insufficient to establish the attorney-client privilege and the work product doctrine.  Further,

24  although there appears to be a split in authority, the weight of authority supports a finding of

25

26      [3] MGA represents that virtually all of the questioning quoted in Mattel's Separate Statement No. 2 at
    Instruction Nos. 47-57 was covered in the deposition on Topic No. 33.  However, MGA's representation cannot be
27  confirmed by the excerpts of the deposition transcript submitted in connection with this motion.

28
                                                                                              23

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                        EXHIBIT 6 PAGE 97

1   waiver.  See e.g. United States ex rel. Bagley v. TRW Inc., 212 F.R.D. 554, 565-566 (C.D. Cal.

2   2003) (requiring disclosure of documents reviewed by relator in preparing for his deposition

3   based upon waiver of work product protection); U.S. v. 22.80 Acres of Land, 107 F.R.D. 25-26

4   (N.D. Cal. 1985) (work product waived where deponents used documents to refresh recollection);

5   Ehrlich v. Howe, 848 F.Supp. 482, 493 (S.D. N.Y. 1994) ("when [c]onfronted with the conflict

6   between the command of Rule 612 to disclose materials used to refresh recollection and the

7   protection afforded by the attorney-client privilege . . . the weight of the authority holds that the

8   privilege is waived."); Marshall v. United States Postal Service, 88 F.R.D. 348, 350 (D. D.C.

9   1980) ("[I]t is apparent that once a document is used to refresh the recollection of a witness,

10  privileges as to that document have been waived.").

11          Furthermore, the interests of justice compel production of the e-mail documents used by

12  Mr. Lockhart to refresh his recollection.  MGA acknowledges that Mr. Lockhart was required to

13  review the e-mails because they related to MGA's preservation of documents.  Mr. Lockart

14  testified that the e-mails refreshed his recollection as to what MGA employees had been requested

15  to preserve.  Accordingly, MGA is ordered to produce the e-mails reference in Mr. Lockhart's

16  deposition.

    D. Mattel's Request for Relief No. 4.  Mattel seeks an order overruling each of the purportedly
17  improper instructions not to answer questions interposed at the deposition of MGA designee Lisa
    Tonnu.

18          In Mattel's Separate Statement No. 2, Mattel identifies each purported instance of

19  improper objections and/or instructions not to answer for which it seeks a ruling.  Each instance

20  of allegedly improper conduct is discussed below.

21

22                              Instruction Nos. 1-5

23          Mattel's counsel posed a series of questions regarding Mr. Larian's trusts.  In each

24  instance, MGA's counsel instructed Ms. Tonnu not to answer.  MGA's counsel objected to the

25  question on privilege and privacy grounds, and objected that the question exceeded the scope of

26  deposition.

27          The privilege objections are overruled because MGA has failed to establish the requisite

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _6_ PAGE 98

24

1   elements of any applicable privilege.  The privacy objections are overruled since there is a

2   protective order in place to address Mr. Larian's privacy concerns regarding his personal finances.

3   The remaining objections do not justify an instruction not to answer.  See Fed.R.Civ.P. 30(c)(2)

4   (an objection must be noted on the record, but the examination still proceeds and the testimony is

5   taken subject to any objection).  Accordingly, MGA shall produce a knowledgeable 30(b)(6)

6   designee to provide complete responses to the questions identified in Mattel's Separate Statement

7   No. 2 as Instruction Nos. 1-5.

Instruction No. 6

8        In this excerpt, the witness wanted to clarify her testimony regarding voucher payments,

9   which prompted Mattel's counsel to ask a series of questions about what prompted her make the

10  clarification, including "that's what counsel told you at the break?"; "[h]ow was your recollection

11  refreshed"; and "[d]id Mr. Jenal tell you what the dates were?"  MGA's counsel objected on

12  privilege grounds and instructed the witness not to answer.

13       The objections are overruled.  The attorney-client privilege protects an attorney's

14  communication of legal advice to his client, as well as the client's communication of information

15  to the attorney "to enable him to give sound and informed advice."  Upjohn Co. v. United States,

16  449 U.S. 383, 390 (1981).  In this instance, the question posed did not require the witness to

17  disclose the substance of an attorney-client communication.  Instead, the questions posed called

18  for the disclosure of underlying facts to which Mattel is entitled.  See Upjohn, supra at 395

19  (finding that the attorney-client privilege does not preclude disclosure of factual information and

20  that the privilege does not protect facts communicated to an attorney).

21       Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

22  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 6.

Instruction Nos. 7-20 and 23

23       In each of these excerpts, Mattel's counsel posed questions regarding testing performed on

24  Bratz drawings.  MGA's counsel objected to the questions based upon the work product doctrine

25  and instructed the witness not to answer.

26       The work product objections are overruled.  The work product doctrine, now codified in

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT 6 PAGE 99

25

1   part in Rule 26(b)(3) of the Federal Rules of Civil Procedure, provides qualified protection for

2   materials prepared by or at the behest of counsel in anticipation of litigation or for trial.  The party

3   claiming work product immunity has the burden of establishing its elements by competent

4   evidence.  In re Kidder Peabody Securities Litigation, 168 F.R.D. 459, 462 (S.D. N.Y. 1996).

5       In the instant case, all of the questions posed to the witness take one of four forms: "do

6   you know whether" or "do you know who" or "do you know what" or "do you know why."  The

7   questions thus call for a simple "yes" or "no" response that did not require divulging any

8   information protected by the work product doctrine.

9       Even if the questions are construed to require substantive responses beyond "yes" or "no,"

10  the information sought is factual (what test was conducted, how documents were stored, whether

11  the documents were handled with cotton or latex gloves, who was with the expert when he

12  performed his tests, what precautions he took).  The questions do not require the witness to

    divulge the mental impressions, the legal theories, or conclusions of Mr. Speckin.

13      Moreover, Rule 26(b)(4)(B), Fed.R.Civ.P., provides that a party may discover facts known

14  or opinions held by an non-testifying expert upon a showing of exceptional circumstances under

15  which it is impracticable for the party seeking discovery to obtain facts or opinions on the same

16  subject by other means.  In the instant case, there is no other practicable means for Mattel to

17  obtain information about the handling, shipping and testing of original Bratz documents while in

18  Mr. Speckin's possession.  Mr. Speckin is a non-testifying expert.  The manner in which Mr.

19  Speckin transported, analyzed, tested or otherwise used the original Bratz drawings is uniquely

20  within his knowledge and plainly relevant.  The original Bratz drawings are a key piece of

21  evidence in this case.  Mattel needs information concerning what, if any, changes, damage, or

22  other alterations were made to the original Bratz drawings.  Mattel is not seeking information

23  regarding Mr. Speckin's opinions or the results of his tests.  Rather, Mattel is seeking only

24  information regarding the handling of the original Bratz documents and more precise

25  identification information for the specific documents that were handled by Mr. Speckin.

26      MGA objects to providing information concerning Mr. Speckin's testing, the testing

27  conditions, the selection of which drawings to test and other logistics.  MGA, however, has

28

1    already disclosed the types of tests performed by Mr. Speckin in a declaration submitted to the

2    court, and has provided Mattel with a list identifying the documents that Mr. Speckin tested,

3    although the list did not identify the documents by Bates numbers.  Therefore, MGA has waived

4    any work product protection to which it may have been entitled with respect to the identification

5    of the original Bratz drawings that were subjected to testing and which tests were performed.

6         Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

7    responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 7-

8    20 and 23.

                            Instruction Nos. 21-22

9         In these excerpts, Mattel's counsel asked Ms. Tonnu whether she could identify or

10   describe any of the documents that were tested by Mr. Speckin.  MGA's counsel objected to the

11   questions based upon the work product doctrine and instructed the witness not to answer

12   The objections are overruled.  As discussed immediately above, the questions call for factual

13   information that is not protected by the work product doctrine.  Even if the work product doctrine

14   applied, the protection has been waived.  Furthermore, this case presents exceptional

15   circumstances under which it is impracticable for Mattel to obtain the information sought by other

16   means.  Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

17   responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 21-

18   22.

                            Instruction Nos. 24-26

19        In these excerpts, Mattel's counsel asked the witness (1) what Ms. Garcia told her about

20   Diva Starz and (2) whether Ms. Garcia told the witness she had access to Diva Starz information

21   while she was at Mattel.  MGA's counsel objected to the questions to the extent the witness'

22   conversations with Ms. Garcia occurred in the presence of counsel and instructed the witness not

23   to answer.

24        The objections are overruled.  The questions do not require the witness to divulge the

25   substance of any privileged communication.  Instead, the questions call for factual information to

26   which Mattel is entitled.

27

28

EXHIBIT 6 PAGE 101

1    Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

2  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 24-

3  26.

### Instruction No. 27

4

5    In this excerpt, Mattel's counsel asked the witness twice whether MGA had access to

6  Mattel internal information regarding Diva Starz prior to February 1st, 2000.  MGA's counsel

7  made a speaking objection, which clearly violated Rule 30(c)(2), Fed.R.Civ.P.  However, the

8  questions do not need to be repeated because the witness provided responses.

### Instruction No. 28

9

10    In this excerpt, Mattel's counsel asked, "MGA is denying that it had access to internal

11  information about Mattel's Diva Starz project prior to September 1st, 2000?"  MGA's counsel

12  objected on the grounds that the question calls for a legal conclusion, calls for the disclosure of

13  privileged information, and exceeds the scope of the deposition.  Counsel also instructed the

    witness not to answer.

14    The objections are overruled.  The question does not call for a legal conclusion and MGA

15  has failed to establish the elements of the attorney-client privilege.

16    Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

17  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 28.

### Instruction Nos. 29-34

18

19    In these excerpts, Mattel's counsel asked as series of questions regarding whether MGA

20  knew Mattel was considering using the name "Brats" and "Boyz" in connection with the Diva

21  Starz project and whether MGA knew Mr. Linker worked on the project.  MGA's counsel made

22  several objections including the following:  assumes facts not in evidence; misstates the witness'

23  prior testimony; compound; outside the scope of the deposition; improper as to form; lacks

24  foundation; vague and ambiguous; calls for speculation; argumentative; and asked and answered.

25  MGA's counsel objected to one question (Instruction No. 30) on the additional ground that it may

26  call for attorney-client communications.  MGA's counsel also instructed the witness not to

27  answer.

28

EXHIBIT 6 PAGE 102

The repeated instructions not to answer were clearly improper. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 29-34.

### Instruction No. 35

In this excerpt, the witness indicated that she did not know whether Mr. Linker worked on the Bratz project. Mattel's counsel then asked, "But you don't know one way or the other?" MGA's counsel objected to the question, asserting that it had been asked and answered and was argumentative. MGA's counsel also instructed the witness not to answer.

The instruction not to answer was clearly improper. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 35.

### Instruction No. 36

In this excerpt, Mattel's counsel asked, "Did you have a conversation with Mr. Jenal about the net worth or the valuation of the company?" MGA's counsel objected on privilege grounds and instructed the witness not to answer.

The objection is overruled. The question calls for a "yes" or "no" answer and does not require the witness to divulge the substance of a privileged communication.

Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 36.

### Instruction No. 37

In this excerpt, Mattel's counsel asked, "What did Mr. Daniels tell you about the net worth or valuation of the company?" MGA's counsel objected on privilege grounds.

The objection is sustained. As phrased, the question potentially calls for the disclosure of the substance of a privileged communication.

### Instruction Nos. 38-40

In these excerpts, MGA's counsel instructed the witness not to answer. The instruction was not based upon a claim of privilege, and therefore was improper. MGA's counsel also made an improper speaking objection. Accordingly, MGA shall produce a knowledgeable 30(b)(6)

29

EXHIBIT 6 PAGE 103

1  designee to provide complete responses to the questions identified in Mattel's Separate Statement

2  No. 2 as Instruction Nos. 38-40.

### Instruction No. 41

3  In this excerpt, Mattel's counsel asked the witness to identify the litigation for which

4  Exhibit 660 was prepared. MGA's counsel objected to the question as calling for work product

5  and instructed the witness not to answer.

6  The work product objection is overruled. The question calls for the disclosure of facts, not

7  work product. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide

8  complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction

9  No. 41.

### Instruction Nos. 42-44

10  In these excerpts, Mattel's counsel posed more questions about the litigation for which

11  Exhibit 660 was prepared, including the identity of the parties to the litigation and whether the

12  litigation was ongoing. MGA's counsel objected on privilege and work product grounds.

13  The objections are overruled. The questions call for the disclosure of facts, not work

14  product. Further, MGA has failed to establish that the questions require the witness to disclose

15  the substance of a privileged communication. Accordingly, MGA shall produce a knowledgeable

16  30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate

17  Statement No. 2 as Instruction Nos. 42-44.

### Instruction No. 45

18  In this excerpt, Mattel's counsel asked whether an attorney by the name of Mr. Daniels

19  wrote a document. The work product objection by MGA's counsel is overruled. The "yes" or

20  "no" question calls for the disclosure of facts, not work product. Accordingly, MGA shall

21  produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions

22  identified in Mattel's Separate Statement No. 2 as Instruction No. 45.

23  E. Mattel's Request for Relief No. 5: Mattel seeks an order reopening the deposition of MGA designee Lisa Tonnu based on a purported "complete reversal of testimony" made through written "changes" to her deposition transcript.

24  Ms. Tonnu made changes to her deposition transcript after her deposition was completed.

28

30

EXHIBIT 6 PAGE 104

1   Counsel asked Ms. Tonnu whether any documents had been collected from MGA's Filenet

2   storage facility, to which she responded "no"; whether Mr. Daniels told her that he was going to

3   collect documents from Filenet, to which she responded "yes"; and whether the documents at

4   Filenet contained any documents responsive to Mattel's request, to which she responded "no."

5   Later, Ms. Tonnu revised her deposition transcript and reversed each of her answers.

6       Mattel contends that Ms. Tonnu's initial answers in the negative precluded a line of

7   questioning into, for example, who collected documents, which documents were collected and

8   how.

9       MGA contends that the changes Ms. Tonnu made do not justify re-opening a deposition.

10  Nevertheless, MGA has no objection to follow-up questions about Ms. Tonnu's revision when she

11  is deposed again in January.

12      In light of MGA's lack of opposition, MGA shall make Ms. Tonnu available for follow-up

13  questioning regarding the revisions to her deposition testimony.

14  F. Mattel's Request for Relief No. 6:  Mattel seeks an order compelling Rebecca Harris to sit for
    the completion of her deposition and/or compelling such person selected by MGA as its designee
15  to complete the testimony on topics for which Harris was previously designated.

16      Mattel seeks an additional day to depose Ms. Harris.  Mattel contends that it needs more

17  than the 7-hours it has already deposed Ms. Harris to complete its questioning on all topics for

18  which she was designated.  Mattel emphasizes that Ms. Harris is designated to testify on nine

19  separate topics, each of which pertains to issues at the heart of the litigation, including the origin,

20  creation, design and development of Bratz prior to June 30, 2001; relevant contracts concerning

21  Carter Bryant and Bratz; payments made to Bryant and other financial information relating to

22  Bratz; and third parties who were involved in or otherwise have knowledge about the creation,

23  design and development of Bratz.

24      In addition to the topics already discussed above in Section "A" to this Order, Mattel

25  contends that it did not have sufficient time to depose Ms. Harris on Topic Nos. 19, 22 and 23,
    which are set forth below:

26      **Topic No. 19:**  Each agreement or contract between YOU and any PERSON other than
        BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that REFERS
27      OR RELATES to the time period prior to December 31, 2001 (regardless of when such
        agreement or contract was negotiated or executed), including without limitation the timing
28      thereof, the negotiations, drafts and COMMUNICATIONS that REFER OR RELATE

31

EXHIBIT _16_ PAGE _105_

1   thereto, and any actual or proposed amendments thereto.

2   **Topic No. 22:**  The payment of money or anything of value by or for YOU or on YOUR
    behalf that has been made to, for or on behalf of BRYANT (a) for work, services or
3   activities performed by BRYANT prior to January 1, 2001 (regardless of when such
    payment was actually made), (2) for DESIGNS CREATED by BRYANT prior to January
4   1, 2001 (regardless of when such payment was actually made) or (c) in connection with
    BRATZ or any BRATZ DESIGN at any time, including amount(s) thereof and the reasons
5   therefore,

6   **Topic No. 23:**  The payment of royalties to, for or on behalf or BRYANT made by or for
    YOU or on YOUR behalf, including the timing, manner and amounts of such payments
7   and the reasons therefore.

8   MGA contends that Mattel has not made the required showing that additional time is "needed to

9   fairly examine the deponent" or that "the deponent, another person, or any other circumstance

10  impedes or delays the examination." Fed.R.Civ.P. 30(d)(1).  Furthermore, MGA contends that

11  Mattel wasted much of the 7-hours with Ms. Harris by asking questions outside the topics for

12  which she was designated and badgering the witness.

13          As discussed already above, Ms. Harris was not sufficiently prepared to testify on several

14  topics and did not discharge MGA's duty to produce a witness to testify as to information known

15  or reasonably available to MGA.  Her lack of preparedness alone justifies additional deposition

16  time.  The relatively large number of topics for which Ms. Harris was designated (Topic Nos. 11,

17  13, 14, 19, 21, 22, 23, 27 and 28), also justifies additional deposition time to enable Mattel to

    fairly examine the deponent.  Many of the topics for which Ms. Harris was designated are highly
18
    relevant to the case.  Mattel has identified a few instances where Mattel was inefficient in
19
    conducting her deposition; however, the deposition generally proceeded at a reasonable pace.
20
    Accordingly, Mattel is granted an additional four hours to complete the deposition of Ms. Harris
21
    on all of the topics for which she was designated, except Topic Nos. 27 and 28 which were
22
    discussed previously.
23
    G. Mattel's Request for Relief No. 7:  Mattel seeks an order imposing sanctions for MGA's
24  alleged willful violations of the May 16, 2007 and August 14, 2007 Orders, for MGA's allegedly
    improper instructions not to answer deposition questions and for MGA's alleged improper
25  coaching, harassing and obstructionist conduct at the September 24-25, 2007 deposition of Lisa
    Tonnu and at the October 9, 2007 deposition of Spencer Woodman in the amount of $10,000.
26
            Sanctions are appropriate based upon MGA's failure to produce 30(b)(6) designees who
27
    were reasonably prepared to testify on seven out of the sixteen topics at issue, namely Topic Nos.
28
                                                                                                    32

EXHIBIT _6_ PAGE _100_

21, 24, 25, 31, 34, 39 and 40.  By agreeing to provide supplemental testimony on these topics, MGA implicitly acknowledges that the witnesses provided insufficient testimony.  Further, MGA's counsel also repeatedly flouted Rule 30(c)(2), Fed.R.Civ.P., and prior orders prohibiting instructions not to answer for reasons other than privilege.  Accordingly, pursuant to Rule 30(d)(2) and 37(b), Fed.R.Civ.P., sanctions are imposed in the amount of $6,000.

H. Mattel's Request for Relief No. 8:  Mattel seeks a report and recommendation to Judge Stephen G. Larson that recommends the imposition of preclusion sanctions, that certain facts related to the topics compelled be deemed admitted, and/or that MGA be found in contempt for MGA's allegedly willful and repeated violations of the Orders.

As previously stated at the December 14, 2007 hearing, it is premature to consider preclusion sanctions and contempt at this time.  If Mattel intends to pursue such sanctions, it may do so only after the close of Phase 1 discovery.

## V. CONCLUSION

For the reasons set forth above, it is hereby ordered as follows:

1.      No later than January 30, 2008, MGA shall produce witnesses who are prepared to testify about information known or reasonably available to MGA in accordance with Rule 30(b)(6), Fed.R.Civ.P., and to provide complete testimony on the following topics as specified herein:  Topic Nos. 11, 13, 14, 19, 21-25, 31, 34 (with limitations noted herein) 39 (with limitations noted herein), 40 and 41.  Mattel's motion is denied as to Topic Nos. 27 and 28.

2.      MGA's 30(b)(6) designee Spencer Woodman shall provide full and complete responses to each of the questions identified in Mattel's Separate Statement No. 2 that are identified herein as requiring a further response because the objections have been overruled and/or the instructions not to answer have been found improper, and the question seeks relevant and privileged information to which Mattel is entitled.

3.      MGA shall produce the e-mails that MGA designee Kenneth Lockhart identified during his June 14, 2007 deposition as documents which he reviewed and relied upon to refresh his recollection in preparation for his deposition.  Mattel is also permitted to conduct reasonable follow-up questioning regarding those documents.

4.      MGA's 30(b)(6) designee Lisa Tonnu shall provide full and complete responses to each of the questions identified in Mattel's Separate Statement No. 2 that are identified herein as

EXHIBIT _6_ PAGE _107_

1  requiring a further response because the objections have been overruled and/or the instructions
2  not to answer have been found improper, and the question seeks relevant information to which
3  Mattel is entitled.

4          5.      In addition to the deposition testimony authorized above, Mattel is granted leave to
5  depose Ms. Tonnu regarding the changes she made to her deposition transcript.

6          6.      Mattel is granted additional time to complete a full and fair examination of Ms.
7  Harris on all of the topics for which she was designated, except Topic Nos. 27 and 28. The
8  deposition of Ms. Harris shall not exceed four (4) hours.

9          7.      Mattel's request for monetary sanctions is granted in part pursuant to Fed.R.Civ.P.
10 37(b). MGA shall pay sanctions in the amount of $6,000 no later than February 11, 2008.

11         8.      Mattel's request for preclusion sanctions and/or a finding of contempt is denied
12 without prejudice.

13         Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
14 Master, Mattel shall file this Order with the Clerk of Court forthwith.

15 Dated: January 8, 2008

16                                      HON. EDWARD A. INFANTE (Ret.)
                                            Discovery Master

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 6 PAGE 108 34

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 9, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; TO OVERRULE PURPORTEDLY IMPROPER INSTRUCTIONS; AND FOR SANCTIONS in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 9, 2008, at San Francisco, California.

*Sandra Chan*

Sandra Chan

EXHIBIT 6 PAGE 109