1   means of tortious, fraudulent and criminal conduct, did and do unlawfully, willfully

2   and knowingly conduct and participate, directly and indirectly, in the conduct of

3   the MGA Criminal Enterprise's affairs and, in the case of MGA, MGA

4   Entertainment (HK) Limited, Larian, Bryant, and certain of the Doe Counter-

5   defendants, the Bratz Criminal Enterprise's affairs, through a pattern of

6   racketeering activity.  Their actions include multiple, related acts in violation of:

7   18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1512

8   (tampering with a witness victim, or informant), 18 U.S.C. § 1952 (interstate and

9   foreign travel to aid racketeering), and 18 U.S.C. § 2319(a) and 17 U.S.C. §

10   506(a)(1)(A) (criminal copyright infringement).

11          91.   MGA, MGA Entertainment (HK) Limited, MGA de Mexico,

12   Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas,

13   Brisbois, and the Other Former Employees, and each of them, shared the common

14   purpose of enabling MGA to obtain confidential, proprietary and otherwise

15   valuable Mattel property through improper means in order to assist MGA in

16   illegally competing with Mattel domestically and throughout the world.

17          92.   The MGA Criminal Enterprise and Bratz Criminal Enterprise as

18   described herein are and have been at all relevant times continuing enterprises

19   because, among other reasons, each is designed to and did unlawfully acquire the

20   confidential business information and property of Mattel and incorporated this

21   information and property into MGA's ongoing business, marketing strategies and

22   business methods, practices and processes.  The conduct of each enterprise

23   continues through the date of this Second Amended Answer and Counterclaims and

24   is ongoing by virtue of MGA's continuing use of Mattel's information and property,

25   all to the detriment of Mattel.

26          93.   The pattern of racketeering activity, as defined by 18 U.S.C.

27   §§ 1961(1) and (5), presents both a history of criminal conduct and a distinct threat

28   of continuing criminal activity.  This activity consists of multiple acts of

1154363.2

EXHIBIT  3
PAGE  140

racketeering by each member of the MGA Criminal Enterprise and Bratz Criminal Enterprise, is interrelated, not isolated and is perpetrated for the same or similar purposes by the same persons. This activity extends over a substantial period of time, up to and beyond the date of this Second Amended Answer and Counterclaims. These activities occurred after the effective date of 18 U.S.C. §§ 1961 *et seq.*, and the last such act occurred within 10 years after the commission of a prior act of racketeering activity. These racketeering activities included repeated acts of:

(a)   <u>Mail Fraud</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, having devised a scheme or artifice to defraud Mattel of its confidential trade secret information and property by conversion, false representations, concealment and breaches of fiduciary duty, did for the purpose of furthering and executing such a scheme or artifice to defraud, deposited or caused to be deposited matters or things to be sent or delivered by the Postal Service, or any private or commercial interstate carrier, or took or received matters or things therefrom, or knowingly caused matters or things to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs and as evidenced by, among other things, the true and correct copies of communications and other evidence included in Exhibit C;

EXHIBIT 3
PAGE 161

2154363.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(b)   <u>Wire Fraud</u>:  Counter-defendants MGA, MGA Entertainment
(HK) Limited, MGA de Mexico, Larian, Bryant, Machado and
Does 4 through 10, aided and abetted by each other and some or
all of the remaining members of the MGA Criminal Enterprise,
having devised a scheme or artifice to defraud Mattel of its
confidential and trade secret information and property by
conversion, false representations, concealment and breaches of
fiduciary duty, did for the purpose of furthering and executing
such a scheme or artifice to defraud, transmit and cause to be
transmitted by means of wire communications in interstate or
foreign commerce, writing, signs, signals, pictures or sound, in
violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, as alleged with
greater particularity in the foregoing paragraphs and as evidenced
by, among other things, the true and correct copies of
communications and other evidence included in Exhibit C;

(c)   <u>Tampering With a Witness, Victim or Informant</u>:  Counter-
defendants MGA, MGA Entertainment (HK) Limited, MGA de
Mexico, Larian, Bryant, Machado and Does 4 through 10, aided
and abetted by each other and some or all of the remaining
members of the MGA Criminal Enterprise, did corruptly alter,
destroy, mutilate, or conceal more than one record, document, or
other object, or attempted to do so, with the intent to impair the
object's integrity or availability for use in an official proceeding,
including this action, including without limitation by:
        i.      altering Bryant's contract with MGA relating to
Bratz to conceal evidence that Bryant faxed the contract from the
BARBIE COLLECTIBLES department of Mattel, using a fax

EXHIBIT 3
PAGE 162

-58-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

machine owned by Mattel and while Bryant was employed by Mattel;

  ii. altering numerous original Bratz drawings created by Bryant by adding false and misleading date notations of "8/1998" and "© 8/1998" to the drawings even though the drawings were not created in August 1998; and

  iii. destroying electronic and other evidence, including by destroying evidence previously contained on Carter Bryant's and Isaac Larian's computer hard drives.

  Such actions are in violation of 18 U.S.C. § 1512 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs;

  (d) <u>Interstate and Foreign Travel in Aid of Racketeering Enterprises</u>: Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, traveled in interstate and foreign commerce, or used the mail or any facility in interstate or foreign commerce, with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of unlawful activity, *i.e.* bribery, in violation of the laws of the State of California, *Cal. Penal Code* § 641.3, all in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs;

  (e) <u>Criminal Copyright Infringement</u>: Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by

2154363.2

EXHIBIT ___3___

PAGE ___163___

1    each other and some or all of the remaining members of the MGA

2    Criminal Enterprise, willfully infringed Mattel's copyrights,

3    including with respect to documents containing Mattel trade

4    secret and confidential information, for purposes of commercial

5    advantage and private financial gain, all in violation of 18 U.S.C.

6    § 2319(a) and 17 U.S.C. § 506(a)(1)(A), as alleged with greater

7    particularity in the foregoing paragraphs.

8        94.    The persons alleged herein to have violated 18 U.S.C. § 1962(c)

9    are separate from, though employed by or associated with, MGA, the MGA Group,

10   the Bryant Group, the Mexican Group and the Canadian Group.

11       95.    MGA had a role in the racketeering activity that was distinct

12   from the undertaking of those acting on its behalf.  MGA also attempted to benefit,

13   and did benefit, from the activity of its employees and agents alleged herein, and

14   thus was not a passive victim of racketeering activity, but an active perpetrator.

15       96.    Mattel has been injured in its business or property as a direct

16   and proximate result of the Counter-defendants' and the other enterprise members'

17   violations of 18 U.S.C. § 1962(c), including injury by reason of the predicate acts

18   constituting the pattern of racketeering activity.

19       97.    As a result of the violations of 18 U.S.C. § 1962(c), by MGA,

20   MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado,

21   Does 4 through 10, Brawer, Trueba, Vargas, Brisbois and the Other Former

22   Employees, Mattel has suffered substantial damages, in an amount to be proved at

23   trial.  Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to recover treble its

24   general and special compensatory damages, plus interest, costs and attorneys, fees,

25   incurred by reason of Counter-defendants' violations of 18 U.S.C. § 1962(c).

26

27

28

EXHIBIT  3

PAGE  164

2154363.2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

**Third Counterclaim**

**Conspiracy To Violate the Racketeer**

**Influenced And Corrupt Organizations Act**

**(18 U.S.C. §§ 1962(d) and 1964(c))**

**(Against All Counter-defendants)**

98.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 97, above, as though fully set forth at length.

99.   Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois and the Other Former Employees willfully, knowingly and unlawfully, did conspire, combine, confederate and agree together to violate 18 U.S.C. § 1962(c).

100.   These conspirators were employed by and associated-in-fact with the MGA Criminal Enterprise engaging in, and the activities of which affect, interstate and foreign commerce.  Specifically, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the MGA Criminal Enterprise's affairs through a pattern of racketeering activity.  In addition, MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the Bratz Criminal Enterprise's affairs through a pattern of racketeering activity.

101.   The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), including acts of mail fraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2; acts of wire fraud in violation of 18 U.S.C. § 1343 and 18

EXHIBIT 3

PAGE 165

2154363.2

-61-

1  U.S.C. § 2; acts of tampering with witnesses, victims or informants in violation of

2  18 U.S.C. § 1512 and 18 U.S.C. § 2; acts of interstate and foreign travel in aid of

3  racketeering enterprises in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2; and

4  acts of criminal copyright infringement in violation of 18 U.S.C. § 2319(a) and 17

5  U.S.C. § 506(a)(1)(A).

6          102.   Counter-defendants and the other members of the MGA Criminal

7  Enterprise schemed to defraud Mattel and steal its property and trade secret

8  information by means of false representation, breaches of fiduciary duty,

9  conversation and concealment, as more fully set forth in the foregoing paragraphs.

10          103.   In furtherance of this unlawful conspiracy, and to effect its

11  objectives, Counter-defendants and various co-conspirators committed numerous

12  overt acts, including but not limited to those set forth in the foregoing paragraphs.

13          104.   Mattel has been injured in its business or property as a direct and

14  proximate result of the Counter-defendants' and the other enterprise members'

15  violations of 18 U.S.C. § 1962(d), including injury by reason of the predicate acts

16  constituting the pattern of racketeering activity.

17          105.   As a result of the conspiracies between and among all Counter-

18  defendants and the other conspirators to violate 18 U.S.C. § 1962(c), Mattel has

19  suffered substantial damages, in an amount to be proved at trial.  Pursuant to 18

20  U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special

21  compensatory damages, plus interest, costs and attorneys, fees, incurred by reason

22  of Counter-defendants' violations of 18 U.S.C. § 1962(d).

23                        **Fourth Counterclaim**

24                   **Misappropriation of Trade Secrets**

25          **(Against Counter-defendants MGA, MGA de Mexico,**

26                   **Larian, Machado and Does 4 through 10)**

27          106.   Mattel repeats and realleges each and every allegation set forth in

28  paragraphs 1 through 105, above, as though fully set forth at length.

2154363.2

-62-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 3
PAGE 166

107. As used herein, "Trade Secret Material" shall mean the documents, materials and information stolen by Machado, Trueba, Vargas, Brisbois, the Other Former Employees, and other persons acting for, on behalf of or at the direction of MGA and/or Larian. Prior to their theft by Counter-defendants, the Trade Secret Materials gave Mattel a significant competitive advantage over its existing and would-be competitors, including MGA. This advantage, as to MGA, has now been compromised as a result of Counter-defendants' unlawful activities.

108. Mattel made reasonable efforts under the circumstances to maintain the confidentiality of the Trade Secret Materials, including by having employees and consultants who may have access the Trade Secret Materials sign confidentiality agreements that oblige them not to disclose the Trade Secret Materials or characteristics of the Trade Secret Materials; by limiting the circulation of said materials within Mattel; by protecting and limiting access to computers with log-in identifications and passwords; by limiting each employee's access to electronic files to those that the particular employee needs to access; by educating employees on the nature of Mattel's information that is confidential and proprietary; and by reminding employees on a regular and periodic basis of their obligation to protect and maintain Mattel's confidential and proprietary information.

109. Mattel's Trade Secret Materials derive independent economic value from not being generally known to the public or to other persons who can obtain economic benefit from their disclosure.

110. Counter-defendants have illegally obtained the trade secret materials, as set forth above, and through other means of which Mattel is presently unaware.

111. Counter-defendants have used and disclosed Mattel's Trade Secret Materials without Mattel's consent and without regard to Mattel's rights, and

EXHIBIT 3
PAGE 167

-63-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

4363.2

1   without compensation, permission, or licenses for the benefit of themselves and

2   others.

3        112. Counter-defendants' conduct was, is, and remains willful and

4   wanton, and was taken with blatant disregard for Mattel's valid and enforceable

5   rights.

6        113. Counter-defendants' wrongful conduct has caused and, unless

7   enjoined by this Court, will continue in the future to cause irreparable injury to

8   Mattel. Mattel has no adequate remedy at law for such wrongs and injuries. Mattel

9   is therefore entitled to a permanent injunction restraining and enjoining Counter-

10  defendants, and each of them, as well as their agents, servants, and employees, and

11  all persons acting thereunder, in concert with, or on their behalf, from further using

12  in any manner Mattel's trade secrets.

13       114. In addition, as a proximate result of Counter-defendants'

14  misconduct, Mattel has suffered actual damages, and Counter-defendants have been

15  unjustly enriched.

16       115. The aforementioned acts of the Counter-defendants were willful

17  and malicious, including in that Counter-defendants misappropriated Mattel's trade

18  secrets with the deliberate intent to injure Mattel's business and improve their own.

19  Mattel is therefore entitled to enhanced damages. Mattel is also entitled to

20  reasonable attorney's fees.

21                    **Fifth Counterclaim**

22                    **Breach of Contract**

23                    **(Against Bryant)**

24       116. Mattel repeats and realleges each and every allegation set forth in

25  paragraphs 1 through 115, above, as though fully set forth at length.

26       117. Pursuant to his Employment Agreement, Bryant agreed that he

27  would not, without Mattel's express written consent, engage in any employment or

28  business other than for Mattel or assist in any manner any business competitive

2154363.2

-64-

EXHIBIT 3

PAGE 168

1    with the business or future business plans of Mattel during his employment with

2    Mattel. Pursuant to his Mattel Employment Agreement, Bryant further assigned to

3    Mattel all right, title and interest in "inventions," including without limitation

4    "designs" and other works that he conceived, created or reduced to practice during

5    his employment by Mattel. In addition, pursuant to the Conflict Questionnaire,

6    Bryant certified that, other than as disclosed, he had not worked for any competitor

7    of Mattel and had not engaged in any business venture or transaction involving a

8    Mattel competitor that could be construed as a conflict of interest. Bryant further

9    promised that he would notify his supervisor immediately of any change in his

10    situation that would cause him to change any of the foregoing certifications or

11    representations.

12        118. The Employment Agreement and the Conflict Questionnaire are

13    valid, enforceable contracts, and Mattel has performed each and every term and

14    condition of the Employment Agreement and Conflict Questionnaire required to be

15    performed by Mattel.

16        119. Bryant materially breached the foregoing contracts with Mattel,

17    in that, among other things, he secretly aided, assisted and worked for a Mattel

18    competitor during his employment with Mattel without the express written consent

19    of Mattel.

20        120. As a consequence of Bryant's breach, Mattel has suffered and

21    will, in the future, continue to suffer damages in an amount to be proven at trial.

22    Such damages include, without limitation, the amounts paid by the competitor to

23    Bryant during his Mattel employment; the amounts paid by MGA to Bryant during

24    his Mattel employment; the amount that Mattel paid Bryant during the time he

25    wrongfully worked with MGA; the value of information and intellectual property

26    owned by Mattel which Bryant provided to MGA; the value of the benefits that

27    MGA obtained from Bryant during the time he was employed by Mattel; and the

28

2154363.2

EXHIBIT 3

PAGE 69

1  value of the benefits that MGA obtained from Bryant as a result of the work he

2  performed for or with MGA during his Mattel employment.

3       121.  Bryant's conduct has caused, and unless enjoined will continue to

4  cause, irreparable injury to Mattel that cannot be adequately compensated by

5  money damages and for which Mattel has no adequate remedy at law.  Bryant

6  specifically acknowledged in his Employment Agreement that his breach of the

7  Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be

8  entitled to injunctive relief to enforce this Agreement, in addition to damages and

9  other available remedies."  Accordingly, Mattel is entitled to orders mandating

10  Bryant's specific performance of his contracts with Mattel and restraining Bryant

11  from further breach.

12  <div align="center">**Sixth Counterclaim**</div>

13  <div align="center">**Intentional Interference with Contract**</div>

14  <div align="center">**(Against MGA, Larian and Does 4 through 10)**</div>

15       122.  Mattel repeats and realleges each and every allegation set forth in

16  paragraphs 1 through 121, above, as though fully set forth at length.

17       123.  Valid agreements existed between Mattel and Bryant, Brawer,

18  Machado, Trueba, Vargas, Brisbois and the Other Former Employees (collectively,

19  the "Mattel Employees")

20       124.  At all times herein mentioned, MGA, Larian and Does 4 through

21  10 knew that the Mattel Employees had a duty under their agreements not to work

22  for or assist any competitor of Mattel, such as MGA.  In addition, at all times

23  mentioned herein, MGA, Larian and Does 4 through 10 knew that Bryant had

24  assigned to Mattel, and was obligated to disclose to Mattel all inventions, including

25  designs and other works, created, conceived or reduced to practice during their

26  employment with Mattel.

27

28

2154363.2

<div align="center">-66-</div>
<div align="center">SECOND AMENDED ANSWER AND COUNTERCLAIMS</div>

EXHIBIT 3
PAGE 170

125. Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, induced and encouraged the Mattel Employees to breach their contracts with Mattel.

126. As a direct and proximate result of Counter-defendants' efforts and inducements, the Mattel Employees did breach their contracts with Mattel.

127. As a result of said breaches, Mattel has suffered damages and will imminently suffer further damages, including the loss of its competitive position and lost profits, in an amount to be proven at trial.

128. Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

<div align="center">

**Seventh Counterclaim**

**Breach of Fiduciary Duty**

**(Against Bryant and Machado)**

</div>

129. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 128, above, as though fully set forth at length.

130. Bryant and Machado held positions of trust and confidence with Mattel. In their positions, Bryant and Machado had access to and were entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of their job assignments and duties. In their positions, Bryant and Machado also represented Mattel in its dealings with third parties and, in actions in the course and scope of their employment with Mattel, were agents of Mattel. They confirmed their relationship of trust with Mattel in respective employee agreements. Bryant and Machado thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

EXHIBIT 3

PAGE 171

1  or that would deprive Mattel of any opportunities, profit or advantage which Bryant

2  or Machado might bring to Mattel.

3      131. Bryant breached his fiduciary duty to Mattel in that, while

4  employed by Mattel, he secretly aided and assisted a competitor of Mattel,

5  including without limitation by entering into an agreement with a Mattel

6  competitor. As alleged above, Bryant also breached the aforementioned duty by

7  using Mattel property and resources for the benefit of, and to aid and assist, himself

8  personally and MGA.

9      132. Machado breached his fiduciary duty to Mattel, in that while

10  employed by Mattel, he secretly aided and assisted a competitor of Mattel by,

11  among other things, misappropriating Mattel trade secret and proprietary

12  information and providing said information to officers of MGA. Machado also

13  breached the aforementioned duty by using Mattel property and resources for the

14  benefit of, and to aid and assist, himself personally and MGA.

15      133. As a direct and proximate result of Counter-defendants' wrongful

16  conduct, Mattel has incurred damages in an amount to be determined at trial.

17      134. Counter-defendants acted with malice, fraud and oppression, and

18  in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an

19  award of exemplary damages against Counter-defendants in an amount to be

20  determined at trial.

21      135. Furthermore, Counter-defendants' conduct has caused, and unless

22  enjoined will continue to cause, irreparable injury to Mattel that cannot be

23  adequately compensated by money damages and for which Mattel has no adequate

24  remedy at law. Accordingly, Mattel is entitled to an order restraining further

25  breach of Bryant's fiduciary duty to Mattel and/or restraining Counter-defendants

26  from continuing to benefit from such breach.

27

28

2154363.2

EXHIBIT 3
PAGE 172

### Eighth Counterclaim

. **Aiding and Abetting Breach of Fiduciary Duty**

**(Against MGA, Larian and Does 4 through 10)**

136. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 135, above, as though fully set forth at length.

137. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant held a position of trust and confidence at Mattel. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to secretly developing and designing Bratz while employed by Mattel and by secretly assisting Larian and MGA .

138. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) held positions of trust and confidence at Mattel. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to taking confidential trade secret information from Mattel's premises and providing that information to a competitor.

139. Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, encouraged, aided and abetted and gave substantial assistance to the Mattel Employees to breach their fiduciary duties to Mattel, knowing that their conduct would constitute breaches of their fiduciary duties to Mattel.

140. As a direct and proximate result of Counter-defendants' efforts, the Mattel Employees did breach their fiduciary duties to Mattel and Mattel has incurred damages in an amount to be proven at trial. Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

EXHIBIT 3

PAGE 173

21543632

-69-

141.  In taking the aforesaid actions, MGA, Larian and Does 4 through 10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

## Ninth Counterclaim

### Breach of Duty of Loyalty

### (Against Bryant and Machado)

142.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 141, above, as though fully set forth at length.

143.  As employees of Mattel, Bryant and Machado owed a duty of undivided loyalty to Mattel.  Pursuant to this duty, Bryant and Machado could not compete with Mattel or assist a competitor of Mattel during their employment with Mattel.  Pursuant to this duty, Bryant and Machado were required to always give preference to Mattel's business over their own, similar interests during the course of their employment with Mattel.

144.  Bryant and Machado breached their duty of loyalty to Mattel in that, while employed by Mattel, they secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into agreements with a Mattel competitor.  As alleged above, they also breached the aforementioned duty by using Mattel property and resources for the benefit of, and to aid and assist, themselves personally and the competitor of Mattel.

145.  As a direct and proximate result of Counter-defendants' wrongful conduct, Mattel has incurred damages in an amount to be determined at trial.

146.  Counter-defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an award of punitive damages against Counter-defendants in an amount to be determined at trial.

SECOND AMENDED ANSWER AND COUNTERCLAIMS

!154363.2

EXHIBIT 3
PAGE 174

147. Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining further breach of Counter-defendants' duty of loyalty to Mattel and/or restraining Counter-defendants from continuing to benefit from such breach.

148. In breaching their duty of loyalty to Mattel, Bryant and Machado acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

### Tenth Counterclaim
### Aiding and Abetting Breach of Duty of Loyalty
### (Against MGA, Larian and Does 4 through 10)

149. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 148, above, as though fully set forth at length.

150. MGA, Larian and Does 4 through 10 knew that Bryant, as an employee of Mattel, owed a duty of loyalty to his employer. MGA, Larian and Does 4 through 10 knew that this duty included an obligation on the part of Bryant not to compete with Mattel or assist a competitor of Mattel during the term of his employment with Mattel. MGA, Larian and Does 4 through 10 also knew that Bryant was required to give preference to Mattel's business over his own, similar interests or those of Mattel's competitors. or those of Mattel's competitors during the course of his employment with Mattel.

151. MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) were employed by Mattel, and, as employees of Mattel, that they owed duties of loyalty to Mattel. MGA, Larian and Does 4 through 10 knew that these duties included an obligation on the part of the Mattel

2154363.2

-71-

EXHIBIT 3

PAGE 175

1  Employees (excluding Bryant) not to compete with Mattel or assist a competitor of
2  Mattel during their Mattel employment.

3       152. Despite such knowledge, Counter-defendants MGA, Larian and
4  Does 4 through 10 intentionally and without justification solicited, encouraged,
5  aided and abetted and gave substantial assistance to the Mattel Employees to
6  breach their duties of loyalty to Mattel, knowing that their conduct would constitute
7  breaches of their duties of loyalty to Mattel.

8       153. As a further consequence of Counter-defendants' efforts, Mattel
9  has suffered injury and is entitled to compensatory damages in an amount to be
10  proven at trial.

11       154. In taking the aforesaid actions, MGA, Larian and Does 4 through
12  10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's
13  rights. Accordingly, Mattel is entitled to recover exemplary damages from
14  Counter-defendants in an amount to be determined at trial.

15  **Eleventh Counterclaim**
16  **Conversion**
17  **(Against All Counter-defendants)**

18       155. Mattel repeats and realleges each and every allegation set forth in
19  paragraphs 1 through 154, above, as though fully set forth at length.

20       156. Counter-defendants wrongfully converted Mattel property and
21  resources by appropriating and using them for their own benefit and gain and for
22  the benefit and gain of others, without the permission of Mattel.

23       157. Mattel was entitled to, among other things, the exclusive right
24  and enjoyment in property and tangible materials owned by Mattel, including
25  without limitation such proper and materials that were created by Bryant while he
26  was a Mattel product designer. Such property was taken by Bryant from Mattel to
27  further his own interests and, in at least some instances, provided by Bryant to
28  Larian and MGA in furtherance of the interests of Bryant, Larian and MGA.

2154363.2

-72-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 3

PAGE 176

158. In addition, Counter-defendants wrongfully converted Mattel's property by removing the Trade Secret Materials in electronic and paper form from Mattel's offices. Counter-defendants did so without Mattel's permission and continue to possess them.

159. As a direct and proximate result of Counter-defendants' wrongful conversion of Mattel property, including those relating to Bratz and Mattel's Trade Secret Materials, Mattel has incurred damages. Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

160.   As a result of Counter-defendants' acts of conversion, Mattel is entitled to damages in an amount sufficient to indemnify Mattel for the loss suffered, which is not measured by the value of the property misappropriated, but includes the lost profits that Mattel suffered as a result of the conversion or, alternatively, the profits generated by the Counter-defendants that would not have been generated but for the conversion. Only such a measure of damages would fully and fairly compensate Mattel for the injury it suffered due to Counter-defendants' acts of conversion.

161. Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

162. Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining Counter-defendants from further conversion of Mattel property and resources and/or restraining Counter-defendants from continuing to benefit from such conversion.

EXHIBIT 3
PAGE 177

2154363.2

-73-

**Twelfth Counterclaim**

**Unfair Competition**

**(Common Law and *Cal. Bus. & Prof. Code* § 17200)**

**(Against All Counter-defendants)**

163.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 162, above, as though fully set forth at length.

164.  Section 17200 of the California Business and Professions Code prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice . . . ."

165.  By engaging in the foregoing conduct, Counter-defendants have, individually and in combination, engaged in unlawful, unfair and/or fraudulent acts of unfair competition in violation of both the common law of the state of California and *Cal. Bus. & Prof. Code* § 17200 *et seq*.  Such conduct included, without limitation, MGA's commercial bribery of Bryant in violation of *Cal. Penal Code* § 641.3 and misappropriation of trade secrets in violation of 18 U.S.C. § 1832(a). Such conduct also included, without limitation, MGA's and Larian's disparagement of Mattel's products and misrepresentations as alleged above.

166.  As a result of the aforementioned conduct, Mattel has suffered damages and will imminently suffer further damages, including but not limited to lost profits in an amount to be proven at trial.  No adequate remedy at law exists for the wrongs and injuries Mattel has suffered and will continue to suffer, and Mattel is entitled to an injunction enjoining Counter-defendants' continued wrongful acts. Mattel is also entitled to recover compensatory and exemplary damages pursuant to the doctrine of common law unfair competition and *Cal. Civ. Code* § 3294.

2154363.2

-74-

EXHIBIT  3

PAGE  178

### Thirteenth Counterclaim

### Declaratory Relief

### (Against All Counter-defendants)

167. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 166, above, as though fully set forth at length.

168. As shown in the foregoing paragraphs above, an actual controversy exists between Mattel and Counter-defendants regarding Counter-defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

169. Accordingly, Mattel seeks a declaration of the Court that Counter-defendants have no valid or protectable ownership rights or interests in Bratz, and that Mattel is the true owner of the same, and further seeks an accounting and imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and over all revenues and other monies or benefits derived or obtained from MGA's and Bryant's purported ownership, use, sale, distribution and licensing of Bratz.

170. Mattel seeks a declaration of the Court that any and all agreements between Bryant, on the one hand, and MGA, on the other hand, in which Bryant purports to assign to MGA any right, title or interests in any work that he conceived, created or reduced to practice while a Mattel employee, including but not limited to the Bratz designs, is void and of no effect, including without limitation because Bryant had previously assigned said right, title or interest to Mattel and because Mattel was otherwise the owner of said right, title or interest.

### Prayer for Relief

WHEREFORE, Mattel respectfully requests judgment:

1. For a declaration that Counter-defendants have no valid or protectable ownership interests or rights in Bratz designs and works conceived,

-75-

2154363.2

EXHIBIT 3
PAGE 179

1   created or reduced to practice by Bryant during the term of his Mattel employment
2   and/or by any others then-employed by Mattel, as well as in all derivatives
3   prepared therefrom, and that Mattel is the true owner of the foregoing;

4       2.    For a declaration that any agreement between Bryant, on the one
5   hand, and MGA or any person or entity, on the other hand, in which Bryant
6   purported to assign any right, title or interests in any work that he conceived,
7   created or reduced to practice while a Mattel employee, including but not limited to
8   the Bratz designs, is void and of no effect;

9       3.    For an Order enjoining and restraining Counter-defendants, their
10  agents, servants and employees, and all persons in active concert or participation
11  with them, from further wrongful conduct, including without limitation from
12  imitating, copying, distributing, importing, displaying, preparing derivatives from
13  and otherwise infringing Mattel's copyright-protected works;

14      4.    For an Order, pursuant to 17 U.S.C. § 503(a) and other
15  applicable law, impounding all of Counter-defendants' products and materials that
16  infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles
17  by which copies of the works embodied in Mattel's copyrights may be reproduced
18  or otherwise infringed;

19      5.    For an Order mandating that Counter-defendants return to Mattel
20  all tangible items, documents, designs, diagrams, sketches or any other
21  memorialization of inventions created or reduced to practice during Bryant's
22  employment with Mattel as well as all Mattel property converted by Counter-
23  defendants;

24      6.    For an Order mandating specific performance by Bryant to
25  comply with and satisfy Bryant's contractual obligations to Mattel;

26      7.    That Mattel be awarded, and Counter-defendants be ordered to
27  disgorge, all payments, revenues, profits, monies and royalties and any other
28  benefits derived or obtained as a result of the conduct alleged herein, including

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

EXHIBIT 3
PAGE 160

1    without limitation of all revenues and profits attributable to Counter-defendants'

2    infringement of Mattel's copyrights under 17 U.S.C. § 504;

3          8.     For an accounting of all profits, monies and/or royalties from the

4    exercise of ownership, use, distribution, sales and licensing of Bratz;

5          9.     For the imposition of a constructive trust over Bratz, including

6    without limitation registrations and applications for registrations relating thereto

7    made or filed by Counter-defendants and third parties, and all profits, monies,

8    royalties and any other benefits derived or obtained from Counter-defendant's

9    exercise of ownership, use, sale, distribution and licensing of Bratz;

10         10.    That Mattel recover its actual damages and lost profits;

11         11.    That Counter-defendants be ordered to pay exemplary damages

12   in a sum sufficient to punish and to make an example of them, and deter them and

13   others from similar wrongdoing;

14         12.    That Counter-defendants be ordered to pay treble its general and

15   special damages, plus interest, costs and attorney's fees incurred by reason of

16   Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

17         13.    That Counter-defendants be ordered to pay double damages due

18   to their willful and malicious misappropriation of Mattel's trade secrets with

19   deliberate intent to injure Mattel's business and improve its own;

20         14.    That Counter-defendants pay to Mattel the full cost of this action

21   and Mattel's attorneys' and investigators' fees; and

22

23

24

25

26

27

28

2154363.2

EXHIBIT  3

PAGE  181

1         15.   That Mattel have such other and further relief as the Court may

2  deem just and proper.

3

4  DATED:  July 12, 2007        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

5

6                         By _____

7                           John B. Quinn

8                           Attorneys for Defendant and Counter-claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2154363.2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 3
PAGE 182

1

# DEMAND FOR JURY TRIAL

2

3       Mattel, Inc. respectfully requests a jury trial on all issues triable

4   thereby.

5

6   DATED:  July 12, 2007              QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
7

8                                      By  John Quinn / BD
9                                          John B. Quinn
                                           Attorneys for Defendant and Counter-
10                                         claimant Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2154363.2

-79-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT  3

PAGE  183

**Exhibit A**

EXHIBIT ___3___

PAGE ___184___

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

MATTEL

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

**1. Provisions Related to Trade Secrets**

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in the Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

**2. Ownership of Inventions**

(a) I agree to communicate to the Company as promptly and fully as practicable all inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

**3. Conflicts with Other Activities**

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

**4. Miscellaneous**

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will insure to the benefit of and be binding upon the successors and assigns of the the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

| | |
|---|---|
| Carter H. Bryant | MATTEL, INC. By: Teresa Newcomb |
| Employee Signature | Signature |
| CARTER H. BRYANT | TERESA NEWCOMB |
| Employee Name (print) | Name of Witness (print) |
| 01/04/99 | |
| Date | |

EXHIBIT 3 PAGE 185

**Exhibit B**

EXHIBIT 3

PAGE 186

# CONFLICT OF INTEREST QUESTIONNAIRE

BRYANT, CARTER H.        PROJECT DESIGNER
Name (Last, First, M.I.)          Job Title                    Department

**Instructions:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Recipient of any commission, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

◯ YES ● NO   1. Have you owned, directly or indirectly, any interest in a Mattel supplier?

◯ YES ● NO   2. Have you owned, directly or indirectly, and interest in a Mattel competitor?

◯ YES ● NO   3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?

● YES ◯ NO   4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?

● YES ◯ NO   5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?

◯ YES ● NO   6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?

◯ YES ● NO   7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?

◯ YES ● NO   8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?

◯ YES ● NO   9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

4, 5, freelance design & artwork in 1998, from appx. 5/98 - 11/98 for the Ashton Drake galleries.

I certify that I have read Mattel's policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family has or has been engaged in any capacity which creates a Conflict of Interest.

Signature _Carter Bryant_        Date 01/04/98

EXHIBIT B PAGE 81       M 0001621

EXHIBIT 3
PAGE 187

# CONFIDENTIAL – FILED UNDER SEAL
# PURSUANT TO PROTECTIVE ORDER

**From:** Timothy Alger [mailto:timalger@quinnemanuel.com]
**Sent:** Monday, January 28, 2008 12:24 PM
**To:** Herrington, Robert J (LAC); Miller, Timothy A (SFC)
**Subject:** MGA's Responses to Mattel's Fifth Set of Requests for Production

1/28/2008

EXHIBIT 6
PAGE 215

Rob and Tim:

I would like to meet and confer with you today regarding MGA's responses to Mattel's Fifth Set of Requests for Production. The wholesale, boilerplate objections made by MGA lack merit and should be withdrawn, and MGA should produce all documents requested.

Let me know when you can discuss today.

Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3223
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: timalger@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

--------------------------------------------------------------
************************************************* To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. *************************************************
************************************************* This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. *************************************************

EXHIBIT 5
PAGE 216

**From:** Miller, Timothy A [mailto:Timothy.Miller@skadden.com]
**Sent:** Monday, January 28, 2008 2:24 PM
**To:** Timothy Alger; Herrington, Robert J (LAC)
**Subject:** RE: MGA's Responses to Mattel's Fifth Set of Requests for Production

Tim:

According to our files, MGA served its Objections and Responses to Mattel's Fifth Set of Requests for Production and Things more than one month ago, on December 27, 2008. To my knowledge, this is Mattel's first request to meet and confer regarding those objections and responses. Your request violates Paragraph 5 of the Discovery Master Stipulation, which requires you to "identify each dispute, state the relief sought, and identify the authority supporting the requested relief in a meet and confer letter." Your brief e-mail does not address any of the specific objections made in MGA's 82-page response. In addition, under Paragraph 5, MGA is entitled to consider any specific issues raised by Mattel and to meet and confer within 5 court days of receipt of the letter required by Paragraph 5. In violation of that mandated timeline, your request for an immediate meet and confer comes literally at the 11th hour, after Noon on the last day of Phase 1 discovery when, as you know, many depositions are in progress. The attorney who supervised the preparation of MGA's responses is tied up in one of those depositions. It simply is not possible to meet and confer regarding those responses today, even if you had complied with the requirement to specify your dispute in a meet and confer letter.

Regards,

Tim

**Timothy A. Miller**
**Skadden, Arps, Slate, Meagher & Flom LLP**
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111
Direct Dial: 415-984-2647
Fax: 415-984-2698
tmiller@skadden.com

EXHIBIT 6
PAGE 217