KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                              Plaintiff,<br><br>     v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>                              Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)<br><br>**DISCOVERY MATTER**<br><br>**SUPPLEMENTAL DECLARATION OF JOHN TRINIDAD IN SUPPORT OF CARTER BRYANT'S MOTION TO QUASH MATTEL INC.'S SUBPOENA ISSUED TO PEOPLES BANK OF THE OZARKS OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER**<br><br>Date:       TBD<br>Time:       TBD<br><br>Date Comp. Filed:  April 13, 2005<br><br>Discovery Cut-Off:  Jan. 28, 2008<br>Pre-Trial Conference:  May 5, 2008<br>Trial Date:  May 27, 2008 |

410131.02

I, JOHN TRINIDAD, declare and state that:

1.      I am an attorney licensed to practice law in the State of California, the State of New York, and in the District of Columbia. I am an associate at the law firm of Keker & Van Nest LLP, located at 710 Sansome Street, San Francisco, California 94111, counsel for plaintiff Carter Bryant in the above-captioned action. I am duly admitted to practice law before this Court.  I have knowledge of the facts set forth herein, and if called to testify as a witness thereto, could do so competently under oath.

2.      Attached hereto as Exhibit A is a true and correct copy of Mattel Inc.'s Notice of Motion and Motion for Leave to Obtain Discovery After the Phase 1 Discovery Cut-Off in Response to Subpoenas Served on Doll Bag, Inc., Veronica Marlow, Inc., Marlow Techno-Logic, Inc., Peoples Bank of the Ozarks and Washington Mutual Bank and Memorandum of Points and Authorities in Support Thereof, filed on January 28, 2008.

3.      Attached hereto as Exhibit B is a true and correct copy of the Notice of Electronic Filing of Mattel Inc.'s Notice of Motion and Motion for Leave to Obtain Discovery After the Phase 1 Discovery Cut-Off in Response to Subpoenas Served on Doll Bag, Inc., Veronica Marlow, Inc., Marlow Techno-Logic, Inc., Peoples Bank of the Ozarks and Washington Mutual Bank and Memorandum of Points and Authorities in Support Thereof, sent on January 28, 2008 at 10:36 PM PST.

4.      Attached hereto as Exhibit C is a true and correct copy of the [Public Redacted] Declaration of Melissa Grant In Support of Mattel, Inc.'s Motion for Leave to Obtain Discovery After the Phase 1 Discovery Cut-Off in Response to Subpoenas Served on Doll Bag, Inc., Veronica Marlow, Inc., Marlow Techno-Logic, Inc., Peoples Bank of the Ozarks and Washington Mutual Bank, filed on January 28, 2008.

1

SUPPLEMENTAL DEC'L OF JOHN TRINIDAD IN SUPPORT OF CARTER BRYANT'S MOTION TO QUASH MATTEL INC.'S SUBPOENA ISSUED TO PEOPLES BANK OF THE OZARKS OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER CASE NO. CV 04-09049 SGL (RNBx)

5.     Attached hereto as Exhibit D is a true and correct copy of Exhibit 8 to the [Public Redacted] Declaration of Melissa Grant In Support of Mattel, Inc.'s Motion for Leave to Obtain Discovery After the Phase 1 Discovery Cut-Off in Response to Subpoenas Served on Doll Bag, Inc., Veronica Marlow, Inc., Marlow Techno-Logic, Inc., Peoples Bank of the Ozarks and Washington Mutual Bank, filed on January 28, 2008.

6.     Attached hereto as Exhibit E is a true and correct copy of Exhibit 11 to the [Public Redacted] Declaration of Melissa Grant In Support of Mattel, Inc.'s Motion for Leave to Obtain Discovery After the Phase 1 Discovery Cut-Off in Response to Subpoenas Served on Doll Bag, Inc., Veronica Marlow, Inc., Marlow Techno-Logic, Inc., Peoples Bank of the Ozarks and Washington Mutual Bank, filed on January 28, 2008.

7.     Attached hereto as Exhibit F is a true and correct copy of the Proof of Service of the Notice of Subpoena Issued to Peoples Bank of the Ozarks.

8.     Attached hereto as Exhibit G is a true and correct copy of an e-mail I received from Mr. James Bowles, counsel to Peoples' Bank of the Ozarks, dated January 29, 2008.

9.     Attached hereto as Exhibit H is a true and correct copy of a fax confirmation and a January 28, 2008 letter I sent to Peoples' Bank of the Ozarks, via facsimile and U.S. Mail.

10.     Attached hereto as Exhibit I is a true and correct copy of a fax confirmation and a January 28, 2008 letter I sent to Melissa Grant, counsel for Mattel, via facsimile, PDF and Federal Express.

11.     Attached hereto as Exhibit J is a true and correct copy of this Court's January 25, 2008 Order re Mattel's Motions to Compel Farhad Larian, Kaye Scholer and Stern & Goldberg to Produce Documents.

12.     Attached hereto as Exhibit K is a true and correct copy of MGA

SUPPLEMENTAL DEC'L OF JOHN TRINIDAD IN SUPPORT OF CARTER BRYANT'S MOTION TO QUASH MATTEL INC.'S SUBPOENA ISSUED TO PEOPLES BANK OF THE OZARKS OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER CASE NO. CV 04-09049 SGL (RNBx)

410131.02

1   Defendants' Notice of Motion and Motion to Quash Subpoena to Bank of America

2   or, in the Alternative, for Protective Order and Memorandum in Support, filed on

3   January 29, 2008.

4

5        I declare under penalty of perjury under the laws of the United States that

6   the foregoing is true and correct and that this declaration was executed on

7   January 30, 2008, at San Francisco, California.

8

9   _____

10   JOHN TRINIDAD

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUPPLEMENTAL DEC'L OF JOHN TRINIDAD IN SUPPORT OF CARTER BRYANT'S MOTION TO QUASH
MATTEL INC.'S SUBPOENA ISSUED TO PEOPLES BANK OF THE OZARKS
OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER
CASE NO. CV 04-09049 SGL (RNBx)

410131.02

# Exhibit A

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9            UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

12 | CARTER BRYANT, an           | CASE NO. CV 04-9049 SGL (RNBx)
   | individual,                 |
13 |                             | Consolidated with
   |           Plaintiff,        | Case No. CV 04-09059
14 |                             | Case No. CV 05-02727
   |      vs.                    |
15 |                             | Hon. Stephen G. Larson
   | MATTEL, INC., a Delaware    |
16 | corporation,                | **MATTEL, INC.'S NOTICE OF MOTION
   |                             | AND MOTION FOR LEAVE TO OBTAIN
17 |      Defendant.             | DISCOVERY AFTER THE PHASE 1
   |                             | DISCOVERY CUT-OFF IN RESPONSE TO
18 |                             | SUBPOENAS SERVED ON DOLL BAG,
   | AND CONSOLIDATED            | INC., VERONICA MARLOW, INC.,
19 | ACTIONS                     | MARLOW TECHNO-LOGIC, INC.,
   |                             | PEOPLE'S BANK OF THE OZARKS AND
20 |                             | WASHINGTON MUTUAL BANK; AND
   |                             |
21 |                             | MEMORANDUM OF POINTS AND
   |                             | AUTHORITIES IN SUPPORT THEREOF**
22 |                             |
   |                             | Hearing Date: February 25, 2008
23 |                             | Time:         10:00 a.m.
   |                             | Courtroom:    Courtroom 1
24 |                             |
   |                             | [Declarations of Melissa Grant, Rudy Flores and
25 |                             | Kenneth Wright filed concurrently]
   |                             |
26 |                             | **Phase 1:**
   |                             | Discovery Cut-off:     January 28, 2008
27 |                             | Pre-trial Conference:  May 5, 2008
   |                             | Trial Date:            May 27, 2008
28 |                             |

07209/2369980.2

                                        MATTEL'S MOTION FOR LEAVE

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that on February 25, 2008, at 10:00 a.m., or

3   as soon thereafter as the matter may be heard, in the courtroom of the Honorable

4   Stephen G. Larson, located at 3470 Twelfth Street, Riverside, California, 92501,

5   Mattel, Inc. will, and hereby does, move the Court for an order granting leave: (1)

6   for Mattel, Inc. to obtain discovery in February 2008 from third parties Doll Bag,

7   Inc., Veronica Marlow, Inc., Marlow Techno-Logic, Inc., Washington Mutual Bank,

8   and People's Bank of the Ozarks; and (2) for Mattel, Inc. to subsequently file any

9   necessary motions to compel regarding those third parties.

10       This Motion is made on the grounds that plaintiff and counter-

11  defendant Mattel, Inc. has diligently attempted to serve subpoenas *duces tecum* on

12  each of Doll Bag, Inc., Veronica Marlow, Inc., Marlow Techno-Logic, Inc.,

13  Washington Mutual Bank, and People's Bank of the Ozarks, prior to the January 28,

14  2008, Phase I discovery cut-off.  Despite Mattel's diligent efforts Doll Bag, Inc.,

15  Marlow Techno-Logic, Inc. and Veronica Marlow, Inc. appear to have avoided

16  service; Mattel was consequently forced to serve the parties on January 28, 2008, by

17  certified mail pursuant to the <u>California Corporations Code</u>.  Washington Mutual

18  Bank and People's Bank of the Ozarks have agreed to comply with the subpoenas

19  but have represented that they need additional time to retrieve certain responsive

20  documents currently held in storage.  Mattel provided counsel for the opposing

21  parties and third parties with proposed stipulations for additional time to permit  the

22  discovery at issue to be completed after the Phase 1 discovery cut-off, but they

23  declined to so stipulate.

24       This Motion is based on this Notice of Motion and Motion, the

25  accompanying Memorandum of Points and Authorities, the Declarations of Melissa

26  Grant, Rudy Flores, and Kenneth Wright filed concurrently herewith, the records

27  and files of this Court, and all other matters of which the Court may take judicial

28  notice.

07209/2369980.2

2

MATTEL'S MOTION FOR LEAVE

Case 2:04-cv-09049-DOC-RNB   Document 1791   Filed 01/30/08   Page 8 of 88   Page ID
#:27232
Case 2:04-cv-09049-SGL-RNB   Document 1230   Filed 01/28/2008   Page 3 of 9

1                     **<u>Statement of Rule 7-3 Compliance</u>**

2         The parties conferred on January 25, 2008 and January 27, 2008 and

3 times thereafter in connection with the issues raised by this motion.

4

5 DATED: January 28, 2008          QUINN EMANUEL URQUHART OLIVER &
                              HEDGES, LLP

6

7                        By_/s/ Timothy L. Alger_____

8                         Timothy L. Alger
                        Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Case 2:04-cv-09049-DOC-RNB   Document 1791   Filed 01/30/08   Page 9 of 88   Page ID
#:27233
Case 2:04-cv-09049-SGL-RNB   Document 1330   Filed 01/28/2008   Page 4 of 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Mattel respectfully seeks leave to obtain limited discovery from certain third parties after the January 28, 2008 Phase 1 discovery cut-off. Mattel also respectfully seeks leave to file any necessary motions to compel regarding these subpoenas within 14 days after receiving responses thereto. Good cause exists for this additional discovery because: (1) despite Mattel's diligent efforts to serve subpoenas on three of the third parties -- Doll Bag, Inc., Marlow Techno-Logic, Inc. and Veronica Marlow, Inc. -- they appear to have avoided service, forcing Mattel to serve the parties on January 28, 2008, by certified mail pursuant to the California Corporations Code; and (2) two of them -- Washington Mutual Bank and People's Bank of the Ozarks -- have represented that they will comply with the subpoenas but need additional time to retrieve certain responsive documents currently maintained in storage.

### Argument

### I. LEAVE TO OBTAIN DISCOVERY AFTER THE DISCOVERY CUT-OFF MAY BE GRANTED ON A SHOWING OF GOOD CAUSE

A party may amend a scheduling order to obtain relief form the discovery cut-off upon a showing of "good cause." Fed. R. Civ. P. 16(b). The Court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 Advisory Committee's Notes (1983 amendment); see also Zivkovic v. Southern Calif. Edison Co., 302 F.3d 1080, 1087-88 (9th Cir. 2002) (amending the scheduling order is within the discretion of the court).

Good cause exists to grant Mattel leave to obtain documents after the January 28, 2008 Phase I discovery cut-off in response to subpoenas *duces tecum* served on Doll Bag, Inc., Marlow Techno-Logic, Inc., Veronica Marlow, Inc.,

07209/2369980.2

1

1  Washington Mutual Bank and People's Bank of the Ozarks.  Mattel was diligent in

2  attempting to serve each of these third parties.  Moreover, leave to obtain the

3  discovery at issue will not affect the Phase I trial date.  The Phase I pre-trial

4  conference is scheduled for April 21, 2008.  If Mattel's request for leave is granted,

5  the discovery at issue will be completed well in advance of that date.

6  **II.   GOOD CAUSE EXISTS FOR MATTEL TO OBTAIN RESPONSES TO**

7  **SUBPOENAS SERVED ON THE THREE VERONICA MARLOW-**

8  **RELATED ENTITIES**

9  Despite diligent efforts Mattel has been unable to personally serve three

10  entities related to Veronica Marlow -- Doll Bag, Inc., Marlow Techno-Logic, Inc.

11  and Veronica Marlow, Inc. -- with a subpoena *duces tecum*.[1]  The registered agent

12  for service of process for each of the three entities is Peter Marlow.[2]  From January

13  16, 2008 through January 23, 2008, Mattel attempted personal service more than 10

14  times on Mr. Marlow at his residence, which is also the address for service of

15  process registered with the California Secretary of State.[3]  Mattel's service efforts

16  were frustrated each time.

17  After repeated failures to personally serve the three Marlow-related

18  entities,  the subpoenas were served pursuant to California Corporations Code §

19  1702(a), by certified mail on January 28, 2008.[4]  That provision allows for service

20  by certified mail where "process against a domestic corporation cannot be served

21  with reasonable diligence upon the designated agent by hand."  See also Green v.

22  Baca, 2005 WL 283361, at *1 (C.D. Cal. 2005) (finding that failure to effect

23

24

25  [1]   *See* Declaration of Rudy Flores  ("Flores Dec.") ¶¶ 2-5, and Declaration of Kenneth Wright ("Wright Dec.") ¶¶ 2-6, concurrently filed herewith.

26  [2]   *See* Declaration of Melissa Grant ("Grant Dec.") ¶ 8, Exh. 10.

27  [3]   *See* Flores Dec. ¶¶ 2-5 and Wright Dec. ¶¶ 2-6.

28  [4]   *See* Grant Dec. ¶ 5,  Exh. 7.

2

MATTEL'S MOTION FOR LEAVE

1   personal service is not a basis for quashing a subpoena and holding substitute

2   service pursuant Rule 5(b) is sufficient).

3           Veronica Marlow is a key witness, as was recognized by Judge Larson

4   at a hearing on Mattel's *ex parte* application to set a date for her deposition.  Marlow

5   introduced Bryant to MGA, was present at his first pitch to MGA, and has since

6   received millions of dollars from MGA as a finder's fee.[5]  At her deposition taken on

7   December 28, 2007, Marlow revealed that three more Mattel employees had secretly

8   worked on Bratz -- and that they did so for five years.[6]  Not only had defendants

9   failed to disclose these obviously relevant facts, but payments to these Mattel

10  employees were made under false names to conceal them.  Marlow also recently

11  testified in deposition that she used her three companies, Doll Bag, Inc., Veronica

12  Marlow, Inc., and Marlow Techno-Logic, Inc. to conduct business during the critical

13  period of time when she worked on Bratz.[7]  Marlow also repeatedly testified that her

14  husband, Peter Marlow, takes care of all her business affairs.[8]

15          Given the critical importance of discovery relating to Marlow's three

16  companies that Mattel learned just one month ago, Mattel respectfully requests leave

17  to obtain documents in response to the subpoenas at issue after the Phase 1

18  discovery cut-off of January 28, 2008.  Each subpoena seeks responsive documents

19  to be produced by February 11, 2008.[9]  Mattel further seeks leave to file a motion to

20  compel responses to the subpoenas -- in the event such a motion is necessary -- by

21

22

23      [5]   *See* Grant Dec., Exh. 12 (Tr. Veronica Marlow Deposition ("Marlow Depo")
    at 106:11-14, 113:10-114:3, 115:10-122:3 dated December 28, 2007).

24      [6]   *See* Grant Dec., Exh. 12 (Marlow Depo at 282:22-330:1; 3-6:14-308:1).

25      [7]   *See* Grant Dec., Exh 12 (Marlow Depo at 15:2-5; 16:1-7, 306:14-308:1; 367:4-
    369:16).

26      [8]   *See* Grant Dec., Exh 12 (Marlow Depo at 321:24-322:2; 323:2-232:5; 324:5-
    21; 265:25-366:2).

27      [9]   *See* Grant Dec., Exh. 7.

28

Case 2:04-cv-09049-DOC-RNB   Document 1791   Filed 01/30/08   Page 12 of 88   Page ID
#:27236
Case 2:04-cv-09049-SGL-RNB   Document 1730   Filed 01/28/2008   Page 7 of 9

1 | no later than February 25, 2008.   Neither the Phase 1 trial date nor the Phase 1 pre-
2 | trial schedule will be affected by granting Mattel leave as requested.

3 | **III.     GOOD CAUSE EXISTS FOR MATTEL TO OBTAIN RESPONSES TO**
4 | **THE SUBPOENA SERVED ON WASHINGTON MUTUAL BANK**

5 | Mattel served a subpoena *duces tecum* on Washington Mutual Bank on
6 | January 18, 2008, seeking the production of documents related to Veronica
7 | Marlow's bank accounts by January 28, 2008.[10]  The documents sought are relevant
8 | to, among other things, the timing of the creation of Bratz and the potential bias of
9 | Marlow and will show the amount and dates of payments made by MGA and/or
10 | Isaac Larian to Marlow.

11 | As discussed above, Marlow revealed at her deposition that she paid
12 | Mattel employees to work on Bratz for the benefit of MGA.  Access to Marlow's
13 | banking records will enable the determination of who performed that work and how
14 | much they was to them.  Mattel seeks those records from the subpoena now at issue.

15 | On January 28, 2008, Washington Mutual Bank contacted Mattel's
16 | counsel on January 28, 2008, and represented that it intended to comply with the
17 | subpoena, but needed at least three weeks to retrieve responsive documents from
18 | storage.[11]  Mattel respectfully requests leave to obtain documents from Washington
19 | Mutual Bank in response to Mattel's subpoena by February 28, 2008.  Mattel also
20 | seeks leave to file a motion to compel responses -- in the event such a motion is
21 | necessary -- by no later than March 14, 2008.

22
23
24
25
26

27 | [10]   *See* Grant Dec., Exh. 9.
28 | [11]   *Id.* at ¶ 10.

Case 2:04-cv-09049-DOC-RNB   Document 1791   Filed 01/30/08   Page 13 of 88   Page ID
#:27237
Case 2:04-cv-09049-SGL-RNB   Document 1730   Filed 01/28/2008   Page 8 of 9

IV.   **GOOD CAUSE EXISTS TO OBTAIN DISCOVERY IN RESPONSE TO
THE SUBPOENA SERVED ON PEOPLE'S BANK OF THE OZARKS**

Mattel served a subpoena *duces tecum* on People's Bank of the Ozarks (the "Bank") on January 21, 2008.[12]  The subpoena sought the production of documents related to Carter Bryant's bank accounts by January 28, 2008.  The documents sought are relevant to, among other things, the timing of the creation of Bratz and the potential bias of Bryant and will show the amount and dates of payments made by MGA and/or Isaac Larian to Bryant.

On January 25, 2008, the Bank contacted Mattel's counsel and stated that it intended to comply with the subpoena, but requested an additional 14 days to retrieve responsive documents.[13]  The Bank represented that it had already assembled a two-feet-high stack of responsive documents for production, but had other responsive documents stored on microfilm.[14]  The Bank stated that it requires the additional time to secure the necessary equipment to access the microfilm records.[15]  Mattel respectfully requests leave to obtain documents from the Bank in response to Mattel's subpoena by February 14, 2008.  Mattel also seeks leave to file a motion to compel responses -- in the event such a motion is necessary -- by no later than February 28, 2008.

---

[12] *See* Grant Dec., Exh. 8.
[13] *Id.* at ¶ 9.
[14] *Id.*
[15] *Id.* and Exh. 11.

Case 2:04-cv-09049-DOC-RNB    Document 1791    Filed 01/30/08    Page 14 of 88    Page ID
#:27238
Case 2:04-cv-09049-SGL-RNB    Document 1730    Filed 01/28/2008    Page 9 of 9

## Conclusion

For the foregoing reasons, Mattel respectfully requests that its motion be granted in its entirety.

DATED:  January 28, 2008                QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP


                                        By /s/ Timothy L. Alger
                                           Timothy L. Alger
                                           Attorneys for Mattel, Inc.

07209/2369980.2

# Exhibit B

## John E. Trinidad

**From:**    cacd_ecfmail@cacd.uscourts.gov
**Sent:**    Monday, January 28, 2008 10:36 PM
**To:**      ecfnef@cacd.uscourts.gov
**Subject:** Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Memorandum in Support of Motion

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended. Direct all inquiries to ecf-helpdesk@cacd.uscourts.gov.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

## Notice of Electronic Filing

The following transaction was entered by Grant, Melissa on 1/28/2008 at 10:36 PM PST and filed on 1/28/2008
**Case Name:**        Carter Bryant v. Mattel Inc
**Case Number:**      2:04-cv-9049
**Filer:**            Mattel Inc
**Document Number:**  1730

**Docket Text:**
MEMORANDUM in Support *Motion for Leave to Obtain Discovery After the Phase 1 Discovery Cut-Off* filed by Counter Claimant Mattel Inc, Defendant Mattel Inc. (Attachments: # (1) Declaration of Melissa Grant# (2) Declaration Rudy Flores and Kenneth Wright)(Grant, Melissa)

**2:04-cv-9049 Notice has been electronically mailed to:**

Juan Pablo Alban    juanpabloalban@quinnemanuel.com

Timothy L Alger    timalger@quinnemanuel.com

Christa M Anderson    canderson@kvn.com

Michelle M Campana    michelle.campana@skadden.com

Jon D Corey    joncorey@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Alan Neil Goldberg    agoldberg@sgattys.com

Melissa Grant     melissagrant@quinnemanuel.com

Emil W Herich     eherich@kmwlaw.com

John W Keker     jkeker@kvn.com, DRoberts@kvn.com, efiling@kvn.com

Raoul D Kennedy     rkennedy@skadden.com

Alisa Morgenthaler Lever     amorgenthaler@chrisglase.com

Nathan Meyer     nmeyer@kayescholer.com, dclow@kayescholer.com

Cyrus S Naim     cyrusnaim@quinnemanuel.com

Thomas J Nolan     tnolan@skadden.com, carl.roth@skadden.com, marcus.mumford@skadden.com

Mark E Overland     moverland@obsklaw.com

Michael H Page     mhp@kvn.com

Kenneth A Plevan     kenneth.plevan@skadden.com, drogosa@skadden.com, sumclaug@skadden.com

Brett Dylan Proctor     dylanproctor@quinnemanuel.com

John B Quinn     johnquinn@quinnemanuel.com

David C Scheper     dscheper@obsklaw.com, feseroma@obsklaw.com

Oleg Stolyar     alexstolyar@quinnemanuel.com

Kien C Tiet     ktiet@sgattys.com

John Elliot Trinidad     jtrinidad@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock     awaltonhadlock@kvn.com

Matthew M Werdegar     mmw@kvn.com

Michael T Zeller     michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\melissagrant\Desktop\Motion for Leave.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/28/2008] [FileNumber=5270774-0]
[34fee44c0dba7c4ede29e2f7008a5f0794d342b233bfbef1df09f3d69d34fbaa4ac2
56c21aa31cd3da1b0cb40fda8f61ada15f4ea221f20608fbf9c46183a364]]
**Document description:**Declaration of Melissa Grant

1/29/2008

**Original filename:**C:\Documents and Settings\melissagrant\Desktop\Declaration of Melissa Grant.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/28/2008] [FileNumber=5270774-1]
[25cc87722b0783925b47bcf4907e2d092a9e70825de3d45a334fcc541a347f759daf
72c7c5e332e5d66994a568190d0c99ed4f555befe21f53f11cf2b7aba21b]]
**Document description:**Declaration Rudy Flores and Kenneth Wright
**Original filename:**C:\Documents and Settings\melissagrant\Desktop\Declarations of Flores and Wright.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/28/2008] [FileNumber=5270774-2]
[76ada76198e40fe273edc281c1c12a06f5082b2d99b3ca460c1dda97b6af4d7011e4
60aecb3c3fcb1171eeb798275b1cce20aece5ebcf1b19ab4b6cc22276a67]]

1/29/2008

# Exhibit C

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13           Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 14      vs. | |
| 15  MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| 16  | [PUBLIC REDACTED] DECLARATION OF MELISSA GRANT IN SUPPORT OF MATTEL, INC.'S MOTION FOR LEAVE TO OBTAIN DISCOVERY AFTER THE DISCOVERY CUT-OFF IN RESPONSE TO SUBPOENAS SERVED ON DOLL BAG, INC., VERONICA MARLOW, INC., MARLOW TECHNO-LOGIC, INC., PEOPLE'S BANK OF THE OZARKS AND WASHINGTON MUTUAL BANK |
| 17           Defendant. | |
| 18  AND CONSOLIDATED ACTIONS | |
| 19  | |
| 20  | |
| 21  | Hearing Date: February 25, 2008<br>Time:         10:00 a.m.<br>Courtroom:  1 |
| 22  | |
| 23  | |
| 24  | Phase 1: |
| 25  | Discovery Cut-off:    January 28, 2008 |
| 26  | Pre-trial Conference: May 5, 2008<br>Trial Date:            May 27, 2008 |
| 27  | |
| 28  | |

07209/2370847.1

Case 2:04-cv-09049-DOC-RNB   Document 1791   Filed 01/30/08   Page 21 of 88   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 1730-2   Filed 01/28/2008   Page 2 of 118
#:27245

### DECLARATION OF MELISSA GRANT

I, Melissa Grant, declare as follows:

1.  I am a member of the bars of the State of California and an associate at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for plaintiff and counter-defendant, Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.  On January 25, 2008, I sent an e-mail message to opposing counsel for MGA, Carter Bryant ("Bryant"), Isaac Larian ("Larian"), and Carlos Gustavo Machado Gomez ("Machado") requesting that they stipulate to extend the deadline for the People's Bank of the Ozarks to produce documents responsive to Mattel's subpoena *duces tecum* from January 28, 2008 to February 11, 2008, without prejudice as to Mattel's right to move to compel after the Phase 1 discovery cut-off in the event that the bank's responses were insufficient. Mattel advised opposing counsel that if they would not agree to the stipulation, Mattel would file a motion seeking leave for additional time. Attached as Exhibit 1 is a true and correct copy of my January 25, 2008 e-mail message. Because opposing counsel had agreed to stipulate to a similar extension proposed by Mattel on the same day regarding a subpoena *duces tecum* served on Wachovia Bank, I sent a second e-mail message to Bryant's counsel and other opposing counsel asking them if they would agree to the proposed stipulation regarding People's Bank of the Ozarks. Attached as Exhibit 2 is a true and correct copy of my e-mail message dated January 27, 2008. Less than five minutes later, I received an e-mail message from Bryant's counsel stating in full: "No, we will not agree." Bryant's counsel gave no reason for their refusal to so stipulate. Attached as Exhibit 3 is a true and correct copy of the e-mail message from Michael Page dated January 27, 2008.

Case 2:04-cv-09049-DOC-RNB   Document 1791   Filed 01/30/08   Page 22 of 88   Page ID
#:27246
Case 2:04-cv-09049-SGL-RNB   Document 1730-2   Filed 01/28/2008   Page 3 of 118

3.    On January 27, 2008, I sent an e-mail message to counsel for third parties Veronica Marlow and her husband Peter Marlow, Larry McFarland (as well as opposing counsel for MGA, Bryant, Larian, and Machado) requesting that he accept service on behalf of Peter Marlow as an individual and as the designated agent for the Veronica Marlow, Inc., Doll Bag, Inc., and Marlow Techno-Logic, Inc. I explained in my e-mail message that Mattel had attempted to serve Mr. Marlow nearly a dozen times but he appeared to be out of town. I also requested that Mr. McFarland and opposing counsel stipulate to additional time to complete this discovery without prejudice of Mattel's right to move to compel further responses should that be necessary. Attached as Exhibit 4 is a true and correct copy of my e-mail message dated January 27, 2008. Approximately two hours later, I received an electronic receipt showing that Mr. McFarland had read my e-mail message. More than ten hours later, I received by e-mail transmission a letter from Mr. McFarland stating that Mr. Marlow had not authorized him to accept service on his behalf and that Mr. McFarland would not agree to the proposed stipulation. Attached as Exhibit 5 are true and correct copies of that electronic receipt and Mr. McFarland's January 27, 2008 letter.

4.    Attached as Exhibit 6 are true and correct copies of the subpoenas *duces tecum* dated January 15, 2008 that Mattel diligently attempted to serve on Peter Marlow as the designated agent for service of process of Veronica Marlow, Inc., Doll Bag, Inc., and Marlow Techno-Logic, Inc.

5.    Attached as Exhibit 7 are true and correct copies of the subpoenas *duces tecum* dated January 28, 2008 that Mattel served by certified mail on Peter Marlow as the designed Veronica Marlow, Inc., Doll Bag, Inc., and Marlow Techno-Logic, Inc.

6.    Attached as Exhibit 8 is a true and correct copy of the subpoena *duces tecum* served by Mattel on the People's Bank of the Ozarks on January 21, 2008.

07209/2370817.1

-3-

Case 2:04-cv-09049-DOC-RNB   Document 1791   Filed 01/30/08   Page 23 of 88   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 1730-2   Filed 01/28/2008   Page 4 of 118
#:27247

1    7.    Attached as Exhibit 9 is a true and correct copy of the subpoena
2    *duces tecum* that Mattel served on Washington Mutual Bank on January 17, 2008.

3    8.    Attached as Exhibit 10 are true and correct of copies of records
4    of the Secretary of State for the State of California listing Peter Marlow as the
5    designated agent for service of process of Veronica Marlow, Inc., Doll Bag, Inc.,
6    and Marlow Techno-Logic, Inc. and the address for each entity as 12250 Woodley
7    Avenue, Granada Hills, CA 91344.

8    9.    On Friday, January 25, 2008, I received a telephone call from
9    Alison Holmes of the People's Bank of Ozarks advising me that the Bank will
10   comply with Mattel's subpoena. Ms. Holmes said that the Bank had already
11   collected most of the responsive documents (consisting of a stack of paper two feet
12   high) but that some of the older records had to be retrieved from microfilm. Ms.
13   Holmes also said that because of technical problems the Bank needed additional
14   time to retrieve and produce the records on microfilm. Later that day, I received
15   two e-mails from James Bowles, the attorney for the People's Bank of the Ozarks
16   reiterating what Ms. Holmes had told me and requesting 14 additional days from
17   January 28, 2008 (the return date on the subpoena) to produce responsive
18   documents. Attached as Exhibit 11 is a true and correct copy of the e-mail messages
19   from James Bowles.

20   10.    On Monday, January 28, 2008, I received a telephone call from
21   Teresa Powell of Washington Mutual Bank. Ms. Powell stated that the Washington
22   Mutual will comply with Mattel's subpoena. However, the Bank had identified four
23   different bank accounts for which it had records responsive to the subpoena. Ms.
24   Powell also told me that the bank needed additional time to retrieve the records from
25   storage. She requested an extension of the return date from January 28, 2008 to at
26   minimum February 19, 2008. She said that the Bank would mail to Mattel a
27   statement of the Bank's intent to comply with the subpoena on January 28, 2008.

28

07209/2370817.1

-4-

Case 2:04-cv-09049-DOC-RNB    Document 1791    Filed 01/30/08    Page 24 of 88    Page ID
Case 2:04-cv-09049-SGL-RNB    Document 1730-2    Filed 01/28/2008    Page 5 of 118
#:27248

1          11.    Attached as Exhibit 12 is a true and correct of relevant excerpts

2  from the transcript of the deposition of Veronica Marlow, dated December 28, 2007.

3

4          I declare under penalty of perjury under the laws of the United States

5  that the foregoing is true and correct.

6          Executed this 28th day of January, 2008, at Los Angeles, California.

7

8

9          Melissa Grant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2370817.1

-5-

# Exhibit D

Case 2:04-cv-09049-SGL-RNB    Document 1791-2    Filed 01/30/08    Page 26 of 88   Page ID
#:27250
Case 2:04-cv-09049-SGL-RNB    Document 1731-2    Filed 01/28/2008    Page 101 of 118

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

## UNITED STATES DISTRICT COURT

WESTERN    DISTRICT OF MISSOURI

CARTER BRYANT, an individual,

V.

MATTEL, INC., a Delaware corporation,

### SUBPOENA IN A CIVIL CASE

Case Number:[1] Cal C.D. CV 04-9049 SGL (RNBx
consolidated with cases CV 04-9059 and CV 05-2727
Central District of CA

TO:  People's Bank of the Ozarks
     305 W. Mt. Vernon
     Nixa, MO 65714

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
    testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in
    the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
    place, date, and time specified below (list documents or objects):
See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | January 28, 2008 |
| 865 S. Figueroa Street, 10th Floor | 9:00 a.m. |
| Los Angeles, CA 90017 |  |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiff, Mattel Inc. | January 15, 2008 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Melissa Grant, Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa Street, 10th Floor, Los Angeles, CA  90017-2543  (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)
[1] If action is pending in district other than district of issuance, state district under case number.

EXHIBIT  8  PAGE 101

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 1/18/2008 | 305 West Mt. Vernon Nixa, MO 65714 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Kim Campbell, Branch Manager, People's Bank of the Ozarks | Personal (Served 1-18-08 at 2:06 p.m.) |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Gary K. Wells | Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on      1/21/2008
                DATE

SIGNATURE OF SERVER

c/o Now Legal Service, 1301 W. 2nd St., Los Angeles,
ADDRESS OF SERVER

CA 90026, (213) 482-1567, Reg. Springfield, MO

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

EXHIBIT   8    PAGE 102

Case 2:04-cv-09049-DOC-RNB   Document 1791   Filed 01/30/08   Page 28 of 88   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 1730-2   Filed 01/28/2008   Page 103 of 118
#:27252

## ATTACHMENT A

### Documents To Be Produced

1.   **DEFINITIONS.**

      i.    "YOU" or "YOUR" means Peoples Bank of the Ozarks, and all of YOUR parents, subsidiaries, divisions, affiliates or affiliated entities, past or present employees, agents, representatives, consultants, independent contractors, any predecessors or successors in interest, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

      ii.    "CARTER BRYANT ENTERPRISES" means any corporation, partnership or other entity which has an ACCOUNT or ACCOUNTS with YOU for which CARTER BRYANT is an authorized signer or has signatory authority over its ACCOUNTS, and any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control. Without any limitation, "CARTER BRYANT ENTERPRISES" shall include any partnerships, corporations, joint ventures, and any kind of business, legal, or public entity or organization owned or operated by or otherwise affiliated with Carter Bryant, as well as their agents, representatives, employees, officers and directors and any one else acting on their behalf, pursuant to their authority, or subject to their control.

      iii.    "CARTER BRYANT" means the individual named Carter Bryant, Social Security No. 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, date of birth 10/1/1968, and any of his current or former employees, agents or representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, relatives (whether by blood or marriage), including any trustees acting for his benefit, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

      iv.    "ACCOUNT" or "ACCOUNTS" means any account of any type, including but not limited to any checking account, savings account, deposit account, credit card account, line of credit account, charge account, and any other account of any other type.

      v.    "PERSON" or "PERSONS" means all natural persons,

EXHIBIT __8__ PAGE _103_

Case 2:04-cv-09049-DOC-RNB    Document 1791    Filed 01/30/08    Page 29 of 88    Page ID
Case 2:04-cv-09049-SGL-RNB    Document 1730-2    Filed 01/28/2008    Page 104 of 118
#:27253

partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and anyone else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

vi.    "DOCUMENT" means any "writing" or "recording" as defined in Federal Rule of Civil Procedure 34 and/or Federal Rule of Evidence 1001 and includes any tangible thing upon which any expression, communication or representation has been recorded, including but not limited to correspondence, e-mails, preliminary, intermediate or final drafts, memoranda, notes, reports of telephone or other oral conversations, audio or videotape recordings, computer tape, computer disk or storage media, computer printout, CD-ROM disk, optical storage disk, other electronic medium, and all other writings and recordings of any kind.

vii.    "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

viii.    "REFERRING OR RELATING TO" means reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing or indicating in any way.

ix.    Wherever used herein, the singular shall include the plural and the plural shall include the singular.

2.    INSTRUCTIONS.

a.    YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

b.    If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such DOCUMENTS identify each DOCUMENT and provide the following information:

07209/2293434.1

EXHIBIT ___8___ PAGE _l o 4_

Case 2:04-cv-09049-DOC-RNB   Document 1791   Filed 01/30/08   Page 30 of 88   Page ID
#:27254
Case 2:04-cv-09049-SGL-RNB   Document 1730-2   Filed 01/28/2008   Page 105 of 118

    (1) The privilege or protection that you claim precludes disclosure;

    (2) The subject matter of the DOCUMENT (without revealing the content as to which the privilege or protection is claimed);

    (3) The date, author(s), addressee(s); and

    (4) Any additional facts on which YOU would base YOUR claim of privilege or protection.

   c. YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

   d. YOU are required to identify the source of all DOCUMENTS produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

   e. Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

3. **DOCUMENTS TO BE PRODUCED.**

  (1) All DOCUMENTS REFERRING OR RELATING TO CARTER BRYANT ENTERPRISES from January 1, 1999 to the present, inclusive.

  (2) All DOCUMENTS REFERRING OR RELATING TO CARTER BRYANT from January 1, 1999 to the present, inclusive.

  (3) All DOCUMENTS REFERRING OR RELATING TO the ACCOUNT maintained by YOU numbered 300368180, including but not limited to statements, monthly statements, annual statements, daily transaction history reports, monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature cards, and COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNT, created between January 1, 1999 and the present, inclusive.

EXHIBIT  8  PAGE  lo5

Case 2:04-cv-09049-DOC-RNB   Document 1791   Filed 01/30/08   Page 31 of 88   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 1730-2   Filed 01/28/2008   Page 106 of 118
#:27255

(4)    All DOCUMENTS REFERRING OR RELATING TO any other ACCOUNT maintained by YOU that is in the name of, for the benefit of or concerns CARTER BRYANT ENTERPRISES or CARTER BRYANT, including but not limited to statements, monthly statements, annual statements, daily transaction history reports, monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature cards, and COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNTS, created between January 1, 1999 and the present, inclusive.

(5)    DOCUMENTS sufficient to show the account number of all ACCOUNTS maintained by YOU in the name of, for the benefit of or concerning CARTER BRYANT ENTERPRISES or CARTER BRYANT between January 1, 1999 and the present, inclusive.

(6)    All DOCUMENTS showing or relating to any account(s) held by CARTER BRYANT ENTERPRISES or CARTER BRYANT or any account(s) for which CARTER BRYANT ENTERPRISES or CARTER BRYANT has signatory authority at any other financial institution.

EXHIBIT __8__ PAGE __106__

# Exhibit E

Case 2:04-cv-09049-DOC-RNB   Document 1791   Filed 01/30/08   Page 33 of 88  Page ID
Case 2:04-cv-09049-SGL-RNB   Document 1730-2   Filed 01/28/2008   Page 117 of 118
#:27257

**Melissa Grant**

| | |
|---|---|
| **From:** | James Bowles [jlbowles.atty@gmail.com] |
| **Sent:** | Friday, January 25, 2008 1:42 PM |
| **To:** | Melissa Grant |
| **Cc:** | aholmes@peoplesbanking.com |
| **Subject:** | Re: Peoples bank subpoena |

Peoples Bank will agree to a stipulation to provide its documents within a 14 day extension from Jan. 28

On 1/25/08, **James Bowles** <jlbowles.atty@gmail.com> wrote:


---------- Forwarded message ----------
From: James Bowles <jlbowles.atty@gmail.com>
Date: Jan 25, 2008 3:24 PM
Subject: Peoples bank subpoena
To: melissa.grant@quinnemanuel.com
Cc: aholmes@peoplesbanking.com

Ms. Grant,
    I am the attorney for Peoples Bank in Nixa, Mo.  The bank personnel have worked long & hard to provide the documents that you requested but due to a mechanical failure, cannot make the deadline. the stack of paper is now 24" high.  We would request 14 more days from Monday; Jan. 28.
    Jim Bowles

EXHIBIT __11__ PAGE __117__

Case 2:04-cv-09049-DOC-RNB   Document 1791-2   Filed 01/30/08   Page 34 of 88   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 1730-2   Filed 01/28/2008   Page 118 of 118
#:27258

## Melissa Grant

**From:** James Bowles [jlbowles.atty@gmail.com]
**Sent:** Friday, January 25, 2008 1:39 PM
**To:** Melissa Grant
**Subject:** Fwd: Peoples bank subpoena

--------- Forwarded message ----------
From: **James Bowles** <jlbowles.atty@gmail.com>
Date: Jan 25, 2008 3:24 PM
Subject: Peoples bank subpoena
To: melissa.grant@quinnemanuel.com
Cc: aholmes@peoplesbanking.com

Ms. Grant,
    I am the attorney for Peoples Bank in Nixa, Mo.  The bank personnel have worked long & hard to
provide the documents that you requested but due to a mechanical failure, cannot make the deadline.  the
stack of paper is now 24" high.  We would request 14 more days from Monday, Jan. 28.
    Jim Bowles

EXHIBIT ___\|\|___   PAGE ___\|\|8___

1/28/2008

# Exhibit F

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2 |   johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3 |   (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4 |   (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5 |   (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6 | Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7 | Facsimile: (213) 443-3100

8 | Attorneys for Plaintiff and Cross-
   Defendant Mattel, Inc.

9 |

10 |                UNITED STATES DISTRICT COURT

11 |              CENTRAL DISTRICT OF CALIFORNIA

12 |                      EASTERN DIVISION

13 | CARTER BRYANT, an                CASE NO. CV 04-9049 SGL (RNBx)
    individual,
14 |                                  Consolidated with Case Nos. CV 04-09059
                 Plaintiff,          and CV 05-02727
15 |
           vs.                       **PROOF OF SERVICE**
16 |
    MATTEL, INC., a Delaware
17 | corporation,
18 |            Defendant.
19 |
    AND CONSOLIDATED
20 | ACTIONS
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

PROOF OF SERVICE

1

## PROOF OF SERVICE

2       I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 1301 West 2nd Street,
3   Suite 206, Los Angeles, California 90026.

4       On January 25, 2008, I served true copies of the following document(s) described :

5       **1)**       **NOTICE OF SUBPOENA ISSUED TO KENNETH R. BAILY, CPA**

6       **2)**       **NOTICE OF SUBPOENA ISSUED TO PEOPLE'S BANK OF THE OZARKS**

7       **3)**       **NOTICE OF SUBPOENA ISSUED TO WASHINGTON MUTUAL BANK**

8       **4)**       **NOTICE OF SUBPOENA ISSUED TO WACHOVIA CORPORATION**

9       **5)**       **NOTICE OF SUBPOENA ISSUED TO DEWBERRY CESIGNER HOLDINGS, INC.**

10  on the parties in this action as follows:

11

12      **SEE ATTACHED LIST**

13

14  **BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s) being served.

15      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

16

17      Executed on January 25, 2008, at Los Angeles, California.

18

19             NOW LEGAL -- Dave Quintana

20

21

22

23

24

25

26

27

28

07209/2366738.1

1

### SERVICE LIST

2

| | |
|---|---|
| Thomas J. Nolan | John W. Keker |
| **Skadden, Arps, Slate, Meagher & Flom, LLP** | Michael H. Page |
| | Christa M. Anderson |
| 300 South Grand Ave., Ste. 3400 | **Keker & Van Nest, LLP** |
| Los Angeles, California 90071 | 710 Sansome Street |
| TEL: (213) 687-5000 | San Francisco, CA 94111 |
| FAX: (213) 687-5600 | TEL: (415) 391-5400 |
| **tnolan@skadden.com** | FAX: (415) 397-7188 |
| | **jkeker@kvn.com** |
| | **mhp@kvn.com** |

3

4

5

6

7

8    Mark E. Overland, Esq.
     David E. Scheper, Esq.
9    Alexander H. Cote, Esq.
     **Overland Borenstein Scheper & Kim, LLP**
10   300 South Grand Avenue
     Suite 2750
11   Los Angeles, CA 90071-3144
     TEL: (213) 613-4655
12   FAX: (213) 613-4656
13   **moverland@obsklaw.com**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

    I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

3

4

    On January 25, 2008, I served true copies of the following document(s) described as:

5

    1)    **NOTICE OF SUBPOENA ISSUED TO KENNETH R. BAILY, CPA**

6

    2)    **NOTICE OF SUBPOENA ISSUED TO PEOPLE'S BANK OF THE OZARKS**

7

    3)    **NOTICE OF SUBPOENA ISSUED TO WASHINGTON MUTUAL BANK**

8

    4)    **NOTICE OF SUBPOENA ISSUED TO WACHOVIA CORPORATION**

9

    5)    **NOTICE OF SUBPOENA ISSUED TO DEWBERRY CESIGNER HOLDINGS, INC.**

10

    on the parties in this action as follows:

11

**SEE ATTACHED LIST**

12

13

**BY ELECTRONIC MAIL TRANSMISSION:** By electronic mail transmission from lucilleclavel@quinnemanuel.com on January 25, 2008, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es). The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

14

15

16

    I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

17

18

    Executed on January 25, 2008, at Los Angeles, California.

19

20

*Lucille Clavel*

21

LUCILLE CLAVEL

22

23

24

25

26

27

28

07209/2366736.1

1

**SERVICE LIST**

2  Thomas J. Nolan                                John W. Keker
   **Skadden, Arps, Slate, Meagher & Flom ,**     Michael H. Page
3  **LLP**                                        Christa M. Anderson
   300 South Grand Ave., Ste. 3400                **Keker & Van  Nest, LLP**
4  Los Angeles, California 90071                   710 Sansome Street
5  TEL: (213) 687-5000                            San Francisco, CA 94111
   FAX: (213) 687-5600                            TEL: (415) 391-5400
6  tnolan@skadden.com                             FAX: (415) 397-7188
   miller@skadden.com                             jkeker@kvn.com
7                                                 mhp@kvn.com

8  Mark E. Overland, Esq.
   David E. Scheper, Esq.
9  Alexander H. Cote, Esq.
   **Overland Borenstein Scheper & Kim, LLP**
10 300 South Grand Avenue
11 Suite 2750
   Los Angeles, CA 90071-3144
12 TEL: (213) 613-4655
   FAX: (213) 613-4656
13 moverland@obsklaw.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit G

## John E. Trinidad

**From:**    James Bowles [jlbowles.atty@gmail.com]
**Sent:**    Tuesday, January 29, 2008 11:12 AM
**To:**      John E. Trinidad
**Subject:**  Fwd: Peoples bank subpoena


---------- Forwarded message ----------
From: **James Bowles** <jlbowles.atty@gmail.com>
Date: Jan 28, 2008 2:41 PM
Subject: Re: Peoples bank subpoena
To: Melissa Grant <melissagrant@quinnemanuel.com>

We now have a threatening letter from John Trinidad regarding the subpoena. He is moving to quash, accordingly, we are going to hold off until we get a court order or the parties come to an agreement.


On 1/28/08, **James Bowles** <jlbowles.atty@gmail.com> wrote:
> In the last 30 minutes the bank received something attempting to quash the subpoena.  I have not seen
> it yet.  For now this is on hold & I'll get back with you. If you know anything about this, please
> advise.
>
>
> On 1/28/08, **Melissa Grant** <melissagrant@quinnemanuel.com> wrote:
>
>> Great. Much appreciated. I'll call Alison
>> Melissa
>>
>>
>> ----- Original Message -----
>> From: James Bowles <jlbowles.atty@gmail.com>
>> To: Melissa Grant
>> Sent: Mon Jan 28 08:18:23 2008
>> Subject: Re: Peoples bank subpoena
>>
>> There should be no problem with you having what has been found picked up at Peoples Bank.  Feel free to call Allison
>> to coordinate @ 417-724-5043.
>>
>>
>> On 1/26/08, Melissa Grant <melissagrant@quinnemanuel.com> wrote:
>>
>>> Ok thanks.
>>>
>>> ----- Original Message -----
>>> From: James Bowles <jlbowles.atty@gmail.com>
>>> To: Melissa Grant
>>> Sent: Sat Jan 26 09:24:52 2008
>>> Subject: Re: Peoples bank subpoena
>>>
>>>
>>> I have forwarded your request to the bank president, but we will not be able to respond until Monday morning.
>>> You should have our response by the time you get to work due to the time difference.

1/29/2008

On 1/25/08, James Bowles <jlbowles.atty@gmail.com> wrote:

Ms. Grant,
    I am the attorney for Peoples Bank in Nixa, Mo.  The bank personnel have worked long & hard to provide the documents that you requested but due to a mechanical failure, cannot make the deadline.  the stack of paper is now 24" high.  We would request 14 more days from Monday, Jan. 28.
    Jim Bowles

1/29/2008

# Exhibit H

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO            1307
CONNECTION TEL         9141772403956647#
SUBADDRESS
CONNECTION ID
ST. TIME            01/28 09:02
USAGE T             00'31
PGS. SENT           3
RESULT              OK
```

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188

## FACSIMILE TRANSMISSION COVER SHEET

January 28, 2008

| To | Telephone | Facsimile |
|---|---|---|
| People's Bank of the Ozarks | 417-725-4191 | 417-724-0395 |

| From | Telephone | Code |
|---|---|---|
| John E. Trinidad | 415-391-5400 | 6647/jselby |

Re    Bryant v. Mattel: (ED) 2:04-cv-09049-SGL-RNB

Number of Pages (Including Cover): 3

## COMMENTS

Please see attached.

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188

## FACSIMILE TRANSMISSION COVER SHEET

January 28, 2008

| To | Telephone | Facsimile |
|---|---|---|
| People's Bank of the Ozarks | 417-725-4191 | 417-724-0395 |

| From | Telephone | Code |
|---|---|---|
| John E. Trinidad | 415-391-5400 | 6647/jselby |

Re   **Bryant v. Mattel:  (ED) 2:04-cv-09049-SGL-RNB**

### Number of Pages (Including Cover): 3

## COMMENTS

Please see attached.

Operator _____                    Time Sent _____

## IF YOU ENCOUNTER ANY DIFFICULTIES RECEIVING THIS TRANSMISSION, PLEASE CALL (415) 676-2277 OR (415) 391-5400

The information contained in this facsimile transmission is legally privileged and confidential and intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you receive this communication in error, please notify us immediately by telephone, and return the original transmission to us at the above address via the U.S. Postal Service. Thank you.

393005.01

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

JOHN E. TRINIDAD
JTRINIDAD@KVN.COM

January 28, 2008

**VIA FACSIMILE & U.S. MAIL**

People's Bank of the Ozarks
305 W. Mt. Vernon
Nixa, MO 65714

Re:   *Bryant v. Mattel*
      United States District Court, Central District of California
      Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)

To whom it may concern:

  Our law office represents Carter Bryant and Richard Irmen in the above mentioned litigation.  On Friday, January 25, 2008, Mattel purported to provide us with notice of a subpoena issued to People's Bank of the Ozarks.  The subpoena is dated January 15, 2008, and seeks the production of documents related to Carter Bryant and Carter Bryant Enterprises by Monday, January 28.  We do not know if People's Bank was properly served with this subpoena but, regardless, the subpoena is invalid for a variety of reasons including:  insufficient time to comply with the January 28, 2007 discovery cut-off in the pending litigation, violation of privacy rights, violation of the Federal Rules of Civil Procedure 45 (for failure by Mattel to provide advance notice of the subpoena to Mr. Bryant), and for being overbroad and harassing.

  The purpose of this letter is to advise you that our clients Carter Bryant and/or Richard Irmen (on behalf of themselves individually and on behalf of businesses in which they have an ownership interest, including Carter Bryant Enterprises) presently intend to file a motion to quash this subpoena.  Pending the resolution of the motion, we write to inform you that People's Bank of the Ozarks does not have Mr. Bryant or Mr. Irmen's permission to produce the materials requested in the subpoena and we seek to confirm that People's Bank, absent that permission, will not produce any responsive documents unless and until there is a final order requiring such a production.

  The subpoena in question would require the production of documents by 9:00AM PST on Monday, January 28.  Therefore, we would greatly appreciate your immediate attention to this matter, and request that you call us to confirm receipt of this letter and to inform us if you intend to file objections to Mattel's subpoena.

410130.01

People's Bank of the Ozarks
January 28, 2008
Page 2

Thank you in advance.  I look forward to hearing from you.

Sincerely,

John E. Trinidad

JET/jas

# Exhibit I

```
                      ********************************
                      ***    MULTI TX/RX REPORT    ***
                      ********************************

TX/RX NO          1306
PGS.              3
TX/RX INCOMPLETE  -----
TRANSACTION OK    (1)   9121344331006647#
                  (2)   9121368756000001#
                  (3)   9121361346560001#

ERROR INFORMATION -----
```

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188

# FACSIMILE TRANSMISSION COVER SHEET

### January 28, 2008

| To | Telephone | Facsimile |
|---|---|---|
| Melissa Grant<br>Quinn Emanuel Urquhart Oliver & Hedges, LLP | 213/443-3000 | 213/443-3100 |
| Thomas J. Nolan<br>Skadden Arps Slate Meagher & Flom | 213/687-5000 | 213/687-5600 |
| Alexander H. Cote<br>Overland Borenstein Scheper & Kim LLP | (213) 613-4655 | (213) 613-4656 |

| From | Telephone | Code |
|---|---|---|
| John E. Trinidad | 415/ 391-5400 | 6647/jselby |

| Re | Bryant v. Mattel: (ED) 2:04-cv-09049-SGL-RNB |
|---|---|

### Number of Pages (Including Cover): 3

## COMMENTS

Please see attached.

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188

## FACSIMILE TRANSMISSION COVER SHEET

January 28, 2008

| To | Telephone | Facsimile |
|---|---|---|
| Melissa Grant<br>Quinn Emanuel Urquhart Oliver & Hedges, LLP | 213/443-3000 | 213/443-3100 |
| Thomas J. Nolan<br>Skadden Arps Slate Meagher & Flom | 213/687-5000 | 213/687-5600 |
| Alexander H. Cote<br>Overland Borenstein Scheper & Kim LLP | (213) 613-4655 | (213) 613-4656 |

| From | Telephone | Code |
|---|---|---|
| John E. Trinidad | 415/ 391-5400 | **6647/jselby** |

Re     **Bryant v. Mattel:  (ED) 2:04-cv-09049-SGL-RNB**

**Number of Pages (Including Cover): 3**

## COMMENTS

Please see attached.

Operator                                                                 Time Sent

## IF YOU ENCOUNTER ANY DIFFICULTIES RECEIVING THIS TRANSMISSION, PLEASE CALL (415) 676-2277 OR (415) 391-5400

The information contained in this facsimile transmission is legally privileged and confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify us immediately by telephone, and return the original transmission to us at the above address via the U.S. Postal Service. Thank you.

393005.01

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

JOHN E. TRINIDAD
JTRINIDAD@KVN.COM

January 28, 2008

**VIA PDF, FACSIMILE & FED EX**

Melissa Grant
Quinn Emanuel Urquhart Oliver & Hedges,
LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017

Re:   Bryant v. Mattel, Inc. and Consolidated Cases

Dear Ms. Grant:

I am writing in regards to Mattel's Notice of Subpoena Issued to People's Bank of the
Ozarks, which was sent by your office to us for the first time on Friday, January 25, 2008.  The
notice appears to have been erroneously dated January 22, 2008.  We also note that the subpoena
itself was signed and presumably served on January 15, 2008.

The subpoena is invalid for failing to comply with Fed. R. Civ. P. 45(b)(1) which
requires notice to parties before service of a subpoena calling for the production of documents.
That failure is all the more egregious given the discovery cut-off in this case.  Moreover, this
subpoena is invalid because it is overbroad, seeks documents irrelevant to the lawsuit, and seeks
to invade Mr. Bryant's privacy rights.

We seek to schedule a meet-and-confer on this subject immediately.  Given that the
subpoena calls for production of such material by 9:00AM on January 28, 2008 and is in flagrant

410129.01

Melissa Grant
January 28, 2008
Page 2


violation of the notice requirements of Fed. R. Civ. P. 45, we currently intend to file a motion for a protective order and to quash should Mattel not withdraw its subpoena.

Sincerely,

*John E. Trinidad* /js

John E. Trinidad

JET

cc:   Thomas J. Nolan
      Alexander H. Cote

410129.01

01/28/2008 09:01 FAX 4153977188     KEKER & VAN NEST     ☑001

```
*******************************
***   MULTI TX/RX REPORT   ***
*******************************
```

| TX/RX NO | 1306 |  |
| PGS. | 3 |  |
| TX/RX INCOMPLETE | ----- |  |
| TRANSACTION OK | (1) | 9121344331006647# |
|  | (2) | 9121368756000001# |
|  | (3) | 9121361346560001# |
| ERROR INFORMATION | ----- |  |

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188

## FACSIMILE TRANSMISSION COVER SHEET

### January 28, 2008

| To | Telephone | Facsimile |
|---|---|---|
| Melissa Grant<br>Quinn Emanuel Urquhart Oliver & Hedges, LLP | 213/443-3000 | 213/443-3100 |
| Thomas J. Nolan<br>Skadden Arps Slate Meagher & Flom | 213/687-5000 | 213/687-5600 |
| Alexander H. Cote<br>Overland Borenstein Scheper & Kim LLP | (213) 613-4655 | (213) 613-4656 |

| From | Telephone | Code |
|---|---|---|
| John E. Trinidad | 415/ 391-5400 | 6647/jselby |

Re    Bryant v. Mattel: (ED) 2:04-cv-09049-SGL-RNB

### Number of Pages (Including Cover): 3

## COMMENTS

Please see attached.

# Exhibit J

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11

12  | | |
    |---|---|
    | CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |

CARTER BRYANT, an individual,

              Plaintiff,

        v.

MATTEL, INC., a Delaware corporation,

              Defendant.

CONSOLIDATED WITH
MATTEL, INC. v. BRYANT and
MGA ENTERTAINMENT, INC. v. MATTEL,
INC.

CASE NO. CV 04-09049 SGL (RNBx)
JAMS Reference No. 1100049530

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

**ORDER RE MATTEL'S MOTIONS TO COMPEL FARHAD LARIAN, KAYE SCHOLER AND STERN & GOLDBERG TO PRODUCE DOCUMENTS**

## I. INTRODUCTION

The following motions are pending for decision, each of which seeks discovery from non-parties:  Mattel, Inc.'s ("Mattel") (1) Motion to Compel Farhad Larian to Produce Documents; (2) Motion to Compel Kaye Scholer to Produce Documents; and (3) Motion to Compel Stern &

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

1   Goldberg to Produce Documents.  Each of the non–parties submitted oppositions.[1]  In addition,

2   MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de

3   Mexico S.R.L. de C.V. (collectively "MGA") submitted oppositions to the motions.  Mattel

4   submitted a consolidated reply on January 3, 2008.  The motions were heard on January 16, 2008,

5   at which time Mattel agreed to hold in abeyance its Motion to Compel Stern & Goldberg to

6   Produce Documents.  This Order, therefore, addresses only Mattel's motions to compel Farhad

7   Larian and Kaye Scholer to produce documents.

8          On January 22, 2008, the parties submitted a Stipulation Regarding Protective Orders to

9   facilitate production of documents responsive to the subpoenas at issue.

10                                          II. BACKGROUND

11         Since the inception of MGA in 1979 until December of 2000, Isaac Larian, a defendant

12   herein and MGA's CEO, and his brother Farhad Larian, a non-party, shared ownership and

13   management of MGA.  A dispute developed between the two brothers and in March of 2000,

14   Isaac Larian proposed that Farhad Larian sell his interest in MGA to him.

15         On September 28, 2000, the Larian brothers agreed to have their uncle, Morad Zarabi,

16   arbitrate their dispute and decide a fair value for MGA and also decide which brother should sell

17   his ownership interest to the other.  The brothers' agreement to arbitrate was entered into ten days

18   after the alleged effective date of Carter Bryant's contract purportedly assigning rights to Bratz to

19   MGA.  Isaac Larian did not tell his brother about the contract with Bryant.

20         Mr. Zarabi retained an appraiser, Ernest Dutcher, to value MGA based on "the period

21   ending December 31, 1999."  By December 4, 2000, Mr. Zarabi determined that Farhad Larian

22   should sell his 45% ownership interest in MGA to Isaac Larian and the two entered into an

23   Agreement for Sale of Stock by which Farhad Larian sold his interest for $8.775 million.

24

25

26

27   [1]  Mattel contends that Kaye Scholer's opposition was not timely filed and therefore should not be considered.  Although the opposition was ten days late, Kaye Scholer's brief will nevertheless be considered in the interest of resolving these disputes on the merits.

28

1         In the summer of 2002, Farhad Larian complained to Mr. Zarabi that Isaac Larian had

2    allegedly fraudulently concealed Bratz during the negotiations that led to Farhad Larian's sale of

3    MGA stock.  Mr. Zarabi oversaw another appraisal of MGA based upon information he gathered

4    in 2002.  Mr. Dutcher produced an appraisal on February 13, 2003 that valued MGA as of

5    December 31, 2000 and projected a 2001 revenue growth rate of twenty-five percent (25%) based

6    upon "hot projects that came along."  Mattel's Motion at p.4, Ex. 8 to Decl. of Juan Pablo Albán.

7    Other information relied upon by Mr. Dutcher suggests that MGA had expansionary plans in 2000

8    compared to the prior four years.

9         Unable to resolve his disputes through Mr. Zarabi, Farhad Larian sued Isaac Larian,

10   alleging, among other things, that (a) in late 1999 or early 2000, Isaac Larian and MGA became

11   aware of a new product line called Bratz; (b) starting in early 2000 and throughout 2000, Isaac

12   Larian and MGA devised plans to develop and distribute Bratz; and (c) Isaac Larian concealed the

13   plans for Bratz from Farhad Larian and Mr. Zarabi in order to keep the valuation of MGA

14   artificially low.  Notably, MGA and Bryant claim in the instant lawsuit that they did not even

15   meet until September 2000.

16        Isaac Larian successfully moved to compel arbitration of Farhad Larian's claims.  In early

17   February 2005, Mr. Zarabi declined to serve as arbitrator and the court appointed another

18   arbitrator.  A few weeks later, Farhad Larian filed suit against Mr. Zarabi alleging that he

19   conspired with Isaac Larian to conceal facts.

20        The arbitration of Farhad Larian's claims started on November 16, 2005.  Two days into

21   the proceedings, however, Farhad Larian dismissed his claims.  Isaac Larian sought to recover his

22   attorneys' fees and won an award in excess of $1 million against his brother.

23   <u>Mattel Subpoenas Farhad Larian to Produce Documents</u>

24        On August 31, 2007, Mattel subpoenaed Farhad Larian to appear for deposition and to

25   produce (1) documents relating to the <u>Larian v. Larian</u> disputes; (2) documents related to non-

26   Bratz allegations by Mattel and MGA, primarily related to allegations of trade secret theft; (3)

27   documents relating to Farhad Larian's relationship to MGA, including his position there,

28

1    ownership interests, and payments from MGA or Isaac Larian to Farhad Larian; (4) Farhad

2    Larian's knowledge and possession of documents specifically from the instant lawsuit, including

3    his communications with Mattel; and (5) information about the location of responsive documents.

4    The majority of Mattel's requests seek documents in the first category described above.

5           On September 21, 2007, Farhad Larian served responses and objections in which he

6    agreed to produce documents responsive to eleven of Mattel's forty-one document requests.

7    After a brief stay of discovery, counsel for Farhad Larian and Mattel met and conferred beginning

8    on November 20, 2007.  During the meet and confer process, Farhad Larian agreed to produce

9    documents responsive to some, but not all of Mattel's forty-one requests.  On November 21,

10   2007, Farhad Larian produced approximately one red well of documents.

11          The parties held a second meet and confer conference call on November 27, 2007, and

12   were able to resolve their disputes regarding many more, but not all requests.  In particular, the

13   parties were ultimately able to resolve their disputes regarding the requests for documents related

14   to non-Bratz allegations.  At the conclusion of the second meet and confer session, it was agreed

15   that Farhad Larian would make a supplemental production of documents on December 6, 2007,

16   and provide a written supplemental response.  The parties attempted to schedule another meet and

17   confer session, but could not agree upon a date.  On the evening of December 6, 2007, Mattel

18   filed the instant motion.  Mattel seeks an order compelling Farhad Larian to produce documents

19   responsive to every request in its subpoena; overruling each of Farhad Larian's objections; and

20   ordering him to produce a document-by-document privilege log.

21   Mattel Subpoenas Isaac Larian's Attorney – Kaye Scholer

22          On or about September 6, 2007, Mattel also subpoenaed Kaye Scholer, the firm that

23   represented Isaac Larian in the Larian v. Larian proceedings.  The subpoena consisted of thirty-

24   five (35) requests seeking the same five categories of documents it subpoenaed from Farhad

25   Larian.  Kaye Scholer's representation of Isaac Larian included defending him in two related

26   Superior Court actions, two arbitration proceedings and an appeal to the California Court of

27   Appeals, all of which covered a period of several years.  As a result of this representation Kaye

28

1   Scholer has accumulated approximately fifty-six (56) boxes of its client's files, including, among

2   other things, correspondence files, pleading files, discovery files, witness preparation files,

3   research files, exhibits, attorney work files, and billing files.

4         On or about September 18, 2007, Kaye Scholer served its objections, asserting, among

5   other things, that the requests are duplicative, unreasonably cumulative, harassing and oppressive.

6   The parties met and conferred on October 11 and 29, 2007.  Kaye Scholer agreed to review the

7   following files for responsive documents:  (1) pleading files; (2) discovery files; and (3)

8   arbitration exhibits.  Kaye Scholer's rationale for limiting its search for responsive documents to

9   these three files was to avoid undue burden because most of the documents in other files would be

10   protected by the work product doctrine and/or the attorney-client privilege.  Kaye Scholer also

11   agreed to produce documents responsive to the majority of Mattel's requests.  However, Kaye

12   Scholer repeatedly informed Mattel that it objected to producing a document-by-document

13   privilege log because it would be unduly burdensome, expensive and inconvenient.

14         In the instant motion, Mattel seeks an order compelling Kaye Scholer to produce

15   documents responsive to every request in its subpoena and overruling Kaye Scholer's objections,

16   including privilege, or alternatively, compelling Kaye Scholer to produce a document-by-

17   document privilege log.

18   <u>Mattel's Other Discovery Efforts</u>

19         Mattel has attempted to obtain documents related to the <u>Larian v. Larian</u> proceedings from

20   MGA and Isaac Larian.  As far as Mattel can ascertain, however, MGA has produced only four

21   documents relating to the <u>Larian v. Larian</u> proceedings and Isaac Larian has produced none.

22         Mattel also searched public filings in the <u>Larian v. Larian</u> and <u>Larian v. Zarabi et al.</u> civil

23   lawsuits.  Mattel found Mr. Dutcher's declaration that included the appraisals described above,

24   however, Mattel was not able to locate any of the raw data on which Mr. Dutcher relied.  Mattel

25   also served subpoenas on third parties involved in the <u>Larian v. Larian</u> proceedings, and met with

26   limited success.

27   //

28

### III. STANDARDS

Rule 45 of the Federal Rules of Civil Procedure requires third parties to produce documents (and reasonably accessible electronically stored information) that are responsive to a subpoena that a party serves on them.  Fed.R.Civ.P. 45(b), (d).  If the subpoenaed documents are relevant and there is good cause for their production, the subpoena is enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying or embarrassing.  The factors to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.  A person withholding subpoenaed information under a claim of attorney-client privilege or protected by the work product doctrine must expressly make the claim and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  Fed.R.Civ.P. 45(d)(2).

Rule 45(c)(1), Fed.R.Civ.P., provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Furthermore, "[t]he issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply."  Id.

### IV. DISCUSSION

A.  Documents Subpoenaed from Farhad Larian

Mattel contends that each of the categories of documents it seeks from Farhad Larian is relevant and that there is good cause for production.  First, Mattel contends that the Larian v. Larian proceedings are relevant because Farhad Larian's allegations about the timing of the origins and early development of Bratz and MGA's concealment thereof parallel and provide support for the crux of Mattel's claims in the instant litigation.  Second, Mattel contends that documents about Farhad Larian's relationship with MGA are relevant to his credibility.  In particular, Mattel contends that payments from Isaac Larian and/or MGA to Farhad Larian are

1   relevant to credibility and possible bias.  Third, Mattel contends that documents relating to this

2   action are clearly relevant, especially in light of MGA and Isaac Larian's threat to disqualify

3   Mattel's counsel based upon purported communications between Mattel's counsel and Farhad

4   Larian.  Fourth, Mattel contends that it seeks information about the location of responsive

5   documents to determine whether Farhad Larian destroyed documents or for another reason no

6   longer has them.

7       Mattel next contends that Farhad Larian has failed to carry his burden of demonstrating

8   that the requests at issue are unreasonable, oppressive, annoying or embarrassing.  Further, Mattel

9   contends that the protective order in place in this lawsuit is sufficient to address Farhad Larian's

10  confidentiality or privacy concerns.  Lastly, Mattel contends that Farhad Larian's privilege log is

11  inadequate because it fails to justify his claims of privilege and work product protection on a

12  document-by-document basis.

13      Farhad Larian contends that Mattel's motion should be denied because Mattel violated its

14  meet and confer obligations by filing the motion before he made his scheduled supplemental

15  production and before the parties' meet and confer discussions had concluded.  According to

16  Farhad Larian, on November 27, 2007, it was agreed that he would make a supplemental

17  production of documents on December 6, 2007, and that he would provide a written supplemental

18  response.  Farhad Larian complied with this agreement and, on December 6, 2007, provided a

19  written supplemental response and, as Mattel acknowledges, approximately six boxes containing

20  approximately 12,000 pages of documents.  Nevertheless, Mattel filed the instant motion on

21  December 6, 2007, without reviewing the supplemental document production and written

22  supplemental response.  Farhad Larian also represents that as of December 6, 2007, the day

23  Mattel filed the instant motion, the parties acknowledged the need for a further meet and confer

24  session, as reflected in the numerous e-mails and correspondence exchanged between counsel.

25  Furthermore, Farhad Larian represents that after Mattel filed the instant motion, he requested that

26  Mattel take the motion off-calendar because his supplemental responses resolved the parties'

27  disputes as to all but three requests and because there was potential for resolving the remaining

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

1   requests as well, but that Mattel refused.

2        Farhad Larian contends that in light of his supplemental production, he is now in full

3   compliance with Mattel's subpoena, except for three requests.  He represents that he has produced

4   over 12,000 documents, including all non-privileged documents from the <u>Larian v. Larian</u> matters

5   that relate to Bratz (including its origin), Carter Bryant, Mattel, a fee agreement between Farhad

6   and MGA, and all documents related to appraisals of MGA that are not privileged or otherwise

7   covered by a protective order.  He also contends that the privilege log he has produced to Mattel,

8   which describes the withheld documents by category instead of document-by-document, is

9   sufficient to substantiate his claims of privilege and work product protection.  As for the three

10  remaining requests, Nos. 23, 24 and 41, Farhad Larian contends that they are overbroad, harassing

11  and cumulative and invade his and his family's privacy.

12                    <u>Farhad Larian Has Substantially Complied with the Subpoena</u>

13       Farhad Larian made a substantial supplemental production and provided a supplemental

14  written response on December 6, 2007.  Indeed, Mattel acknowledges that it received

15  approximately six boxes of documents from Farhad Larian, which contain approximately 12,000

16  pages of documents.  Nevertheless, Mattel contends in its reply brief that there are a few

17  deficiencies in Farhad Larian's production.  For example, Mattel contends that Farhad Larian has

18  not produced (1) documents bates stamped "MZ" and "ED"; (2) raw data provided to the

19  appraisers in the <u>Larian v. Larian</u> litigations and the 2000 financial models that Farhad Larian

20  claimed Isaac Larian prepared; (3) three boxes of documents that Farhad Larian's counsel showed

21  Mattel's counsel and upon which MGA's disqualification threats against Mattel's counsel are

22  based; (4) the Dutcher Declaration; and (5) documents responsive to Request Nos. 17-19.  Mattel

23  also contends that Farhad Larian has improperly limited its production to only those documents

24  that directly reference Bratz and Carter Bryant.

25       At the hearing, counsel for Farhad Larian confirmed that all responsive documents,

26  including the documents identified in Mattel's reply brief, had been or would be produced after

27  the parties executed the Stipulation Regarding Protective Orders, which has now been

28

1   accomplished.  Significantly, counsel represented that Farhad Larian did not limit his production

2   to only those documents that directly reference Bratz and Carter Bryant, and that his supplemental

3   responses make this point clear.  Counsel for Farhad Larian also represented that all privileged

4   documents have been identified on a privilege log.

5         In light of the December 6, 2007 supplementation, and based upon the representations

6   made by counsel for Farhad Larian at the hearing, Farhad Larian has substantially discharged his

7   obligation to comply with Mattel's subpoena.  Therefore, there is no need for an order compelling

8   any further production of documents.

9                  <u>Farhad Larian's Objections to the Three Remaining Requests are Justified</u>

10        The only three requests to which Farhad Larian objects are Nos. 23, 24 and 41, which are

11   set forth in full below:

12        <u>Request No. 23</u>:  All DOCUMENTS RELATING TO any and all payments of
     money or transfers of anything of value that ISAAC LARIAN, his FAMILY

13   MEMBERS and/or MGA have made, have offered or have proposed, promised or
     agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS at

14   any time from January 1, 1999 through the present.

15        <u>Request No. 24</u>:  All DOCUMENTS RELATING TO any and all payments of
     money or transfers of anything of value that any PERSON has made, has offered

16   or has proposed, promised or agreed to make, to or for the benefit of YOU or
     YOUR FAMILY MEMBERS and that was related in any way to BRATZ,

17   BRYANT, MGA or this ACTION at any time from January 1, 1999 through the
     present.

18
     <u>Request No. 41</u>:  DOCUMENTS sufficient to IDENTIFY since January 1, 1999
19   through the present (a) each account with any bank or financial institution that
     YOU have or have had, or that YOU have or have had any legal beneficial

20   interest in; (b) each telephone subscription service account that YOU have or have
     had, or that YOU use or have used; and (c) each email account that YOU have or

21   have had, or that YOU use or have used.

22
     Farhad Larian contends that Mattel's stated justification for the requests – bias and credibility – is

23
     questionable because he is not an adverse witness to Mattel.  Farhad Larian represents that MGA

24
     has never asked him to testify on the company's behalf.  Rather, only Mattel intends to call him as

25
     a witness.  Farhad Larian asserts that there is no reason for Mattel to impeach its own witness.

26
           Furthermore, Farhad Larian contends that even if it is advantageous for Mattel to attack

27

28

1   his credibility, the scope of Mattel's requests go far beyond what Mattel is reasonably entitled to

2   receive through discovery.  He contends that pursuant to Rule 26, Fed.R.Civ.P., he should not be

3   subjected to discovery that is burdensome, cumulative, unnecessarily costly, or insufficiently

4   probative to the issues in the litigation to warrant the expense of production.  Furthermore, he

5   contends that the usual restrictions on discovery set forth in Rule 26 should be rigorously applied

6   to protect non-parties such as himself.

7        Farhad Larian contends that the three requests at issue are overbroad and harassing in

8   several respects.  First, he points out that the requests seek documents from 1999, which is five

9   years before this action was filed and six years before MGA was involved in this action.  Farhad

10  Larian contends that payments made to him and his family before this action was filed and before

11  MGA was a party to the case have no relevance to his credibility as a witness in this case.

12  Second, Farhad Larian contends that the requests, as phrased, would include any card that

13  accompanied a gift to anyone in the Larian family, regardless of the dollar value of the gift.

14  Farhad Larian contends that family gifts for birthdays, Chanukah, or general gifts of money

15  between family members, have nothing to do with bias and violate his and his family's privacy

16  rights.  Third, Farhad Larian contends that the requests are overbroad because they would require

17  him to disclose all documents reflecting payments he received as an employee of MGA and its

18  predecessor, a company he was employed by for decades.

19       Furthermore, Farhad Larian contends that he has already produced all non-privileged

20  documents which could potentially show bias, including the amount of money he was paid for his

21  shares of MGA, his consulting agreement with MGA after he sold his shares, and his fee

22  agreement with MGA.  He contends that requiring him to search for and produce additional

23  payment documents would only result in him producing cumulative information, which is not

24  only irrelevant but violates his and his family's right to privacy under the California Constitution.

25  Farhad Larian also contends that it would be far less intrusive for Mattel to question him at a

26  deposition about payments he received from Isaac Larian and MGA than for him to respond to the

27  three requests at issue.

28

1    Mattel's motion is denied with respect to Request Nos. 23, 24 and 41.  The requests seek

2  information that is only minimally relevant to the claims and defenses in the case.  Mattel's only

3  stated justification for the discovery is that it is relevant to establish Farhad Larian's credibility

4  and bias.  Although impeachment information is discoverable, Mattel is not entitled to the type of

5  unfettered discovery it is now seeking.  Rather, Rule 26(b)(2), Fed.R.Civ.P., requires the court to

6  restrict or prevent discovery if (i) the discovery is unreasonably cumulative or duplicative, or is

7  obtainable from some other source that is more convenient, less burdensome, or less expensive;

8  (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the

9  information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely

10  benefit, taking into account the needs of the case, the amount in controversy, the parties'

11  resources, the importance of the issues at stake in the litigation, and the importance of the

12  proposed discovery in resolving the issues.  These restrictions are particularly important to

13  consider where the discovery requests are directed at a non-party.  See Moon v. SCP Pool Corp.,

14  232 F.R.D. 633, 638 (C.D. Cal. 2005) (citing Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.,

15  649 F.2d 649 (9th Cir. 1980) (discovery should be "more limited to protect third parties from

16  harassment, inconvenience, or disclosure of confidential information.").

17    Aside from asserting that the requested information is relevant to bias and credibility,

18  Mattel has made no attempt to justify the significant breadth and burden of its requests.  The

19  requests are so broad as to include every payment or gift, regardless of amount, made between

20  Farhad and Isaac Larian, their family members and MGA since 1999.  The number of years for

21  which Mattel seeks financial information is overbroad.  Mattel is seeking documents since 1999,

22  five years before this action was filed and six years before MGA became a party to this action.

23  Mattel fails to explain how any payments MGA or Isaac Larian made to Farhad or his family

24  members before this action was filed or MGA was a party to the action have any bearing on his

25  credibility as a witness in this action.  The requests are also overbroad in that they encompass

26  customary gifts between family members and Farhad Larian's routine salary payments, which

27  have only minimal relevance to Farhad Larian's credibility and bias as a witness in this case.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

1    The requests are also cumulative of discovery Farhad Larian has already provided.  In

2    particular, Farhad Larian represents that he has already disclosed to Mattel the amount of money

3    he was paid for his shares of MGA, his consulting agreement with MGA after he sold his shares,

4    and his fee agreement with MGA.  In light of this production , it is unreasonable to require Farhad

5    Larian to search for and produce gift receipts, cards, and the breadth of other financial documents

6    responsive to Request Nos. 23, 24 and 41.  Furthermore, there are other less intrusive and

7    burdensome means of obtaining discovery regarding Farhad Larian's credibility and bias.  For

8    example, Mattel may question Farhad Larian about payments he received from his brother and

9    MGA during his deposition.

10    Nor has Mattel justified the intrusive and harassing nature of the requests.  Personal

11    financial information is afforded protection by the California Constitution that is also recognized

12    by federal courts.  Cal. Const., Art. I, §1; Valley Bank of Nevada v. Superior Court, 15 Cal.3d

13    652, 656 (1975); Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987) (federal courts

14    should give "some weight" to privacy rights that are protected by state constitutions); Soto v. City

15    of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995) (right to privacy in financial information has

16    been recognized by federal courts).  When a privacy right is asserted as an objection to discovery,

17    the court must balance the need for the information versus the privacy right asserted.  Soto, 162

18    F.R.D. at 616.

19    As discussed previously, there is little to no need for the breadth of financial information

20    sought by Mattel.  Many of the documents covered by Request Nos. 23, 24, and 41 have little to

21    no relevance to Farhad Larian's credibility and bias as a witness in this case.  Furthermore,

22    Farhad Larian has already produced numerous documents showing payments he received from

23    both his brother and MGA.  There are also other less intrusive means for obtaining discovery

24    relating to Farhad Larian's credibility and bias.  Furthermore, the scope of these three requests

25    unduly intrude into Farhad Larian's private affairs.  The requests are so broad as to include gifts

26    exchanged between family members and Farhad Larian's paycheck stubs, and would require

27    Farhad Larian to disclose every account number he has at a bank or financial institution since

28

1    1999.  Thus, the balance tips sharply in favor of protecting Farhad Larian's personal financial

2    information.

Farhad Larian's Privilege Log is Inadequate

4        Mattel challenges the sufficiency of Farhad Larian's privilege log.  At issue is whether

5    Farhad Larian must describe and assert claims of privilege on a document-by-document basis, or

6    whether he may do so categorically.  Farhad Larian is withholding approximately one bankers'

7    box of documents based upon claims of privilege and work product protection.  Farhad Larian's

8    Opposition at p.20, n. 9.

9        Rule 45(d)(2), Fed.R.Civ.P., requires a party responding to a subpoena to provide

10   sufficient information to enable the party seeking discovery to assess the claims of privilege and

11   work product protection.  The "universally accepted" means of claiming that requested documents

12   are privilege is by producing a document-by-document privilege log.  Gail v. New England Gas

13   Co., Inc., 234 F.R.D. 28, 33 (D. R.I. 2007).  The advisory comments to the 1993 amendment to

14   Rule 26(b), however, state that a description of documents by category is appropriate where it

15   would be "unduly burdensome" to provide a document-by-document privilege log.  Specifically,

16   the advisory comment states, "Details concerning time, persons, general subject matter, etc., may

17   be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous

18   documents are claimed to be privileged or protected, particularly if the items can be described by

19   categories."

20       Farhad Larian relies upon the advisory comments and cases citing the advisory comments

21   to support his contention that as a non-party, it would be unduly burdensome to require a

22   document-by-document privilege log in this case.  The cases cited by Farhad Larian, however, are

23   distinguishable from the present case.  In SEC v. Thrasher, 1996 WL 125661 (S.D. N.Y. 1996),

24   the Commission sought production of all communications between defense counsel concerning

25   the lawsuit.  The court observed that this demand, on it face, sought wholesale production of

26   documents that are ordinarily protected from disclosure.  Further, the defendant represented that

27   the requested documents were extremely voluminous and that a document-by-document privilege

28

1    log would be a long and fairly expensive project to undertake.  In <u>Fifty-Six Hope Road Music,</u>

2    <u>Ltd. v. Mayah Collections, Inc.,</u> 2007 WL 1726558 (Nev. 2007), the withheld documents

3    consisted of e-mail communications between plaintiffs and their counsel or between plaintiffs'

4    counsel.  Plaintiffs represented that there were hundreds and perhaps thousands of such email

5    communications which were protected by the attorney-client privilege and work product doctrine.

6           In contrast to the volume of documents at issue in <u>Thrasher</u> and <u>Fifty-Six Hope Road</u>

7    <u>Music,</u> Farhad Larian represents that he has about one bankers' box of privileged documents.

8    Farhad has not established that to produce a privilege log on a document-by-document basis for

9    this volume of documents is unduly burdensome.  Furthermore, even if it were appropriate for

10   Farhad Larian to produce a privilege log that described documents categorically, which it is not,

11   the information provided in Farhad Larian's privilege log is insufficient to enable Mattel to assess

12   the claims of privilege and work product protection as required by Rule 45, Fed.R.Civ.P.  For

13   example, in some instances, Farhad Larian fails to identify the author and recipient of the

14   documents being withheld.  In other instances, Farhad Larian fails to provide the date or date

15   ranges for the documents being withheld.  Therefore, Farhad Larian is ordered to provide a

16   supplemental privilege log that complies with Rule 45.

17   <u>B. Documents Subpoenaed from Kaye Scholer</u>

18          Mattel contends that the documents it seeks from Kaye Scholer are relevant for all the

19   same reasons previously articulated in the context of Mattel's motion to compel Farhad Larian to

20   produce documents.  Mattel contends that its requests are not unreasonable, oppressive, annoying

21   or embarrassing.  Mattel points out that Kaye Scholer has separate case files containing all or the

22   vast majority of responsive documents, which undermines Kaye Scholer's boilerplate burden

23   objections.  Mattel also points out that it offered to alleviate some of the burden to Kaye Scholer

24   by paying for Kay Scholer's copying costs and by providing a paralegal to inspect documents

25   from Kaye Scholer's files with an agreement that the inspection would not result in a waiver of

26   any privileges.  Further, Mattel contends that the protective order in place in this action is

27   sufficient to address any confidentiality concerns Kaye Scholer may have.

28

1    Mattel next contends that the documents it seeks from Kaye Scholer are not available from

2    other sources, as evidenced by Mattel's repeated and unsuccessful attempts to seek the same

3    documents from MGA.  Indeed, Mattel contends that the documents in Kaye Scholer's possession

4    are in fact documents within MGA's possession, custody and control that should have, but have

5    not yet been, produced pursuant to prior discovery orders obligating MGA and Isaac Larian to

6    produce documents from the <u>Larian v. Larian</u> proceedings.  Mattel also points out that it has

7    searched public files and served additional subpoenas on other third parties involved in the <u>Larian</u>

8    <u>v. Larian</u> proceedings.  Moreover, Mattel argues that federal law requires Kaye Scholer to comply

9    with the subpoena, even if the evidence sought is obtainable from another source.  See <u>e.g.</u> <u>State</u>

10   <u>Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.</u>, 2007 WL 2993840 at *1 (E.D. N.Y. 2007).

11   Mattel contends that Kaye Scholer's proposal to search only certain files for responsive

12   documents is unacceptable because it would inevitably exclude relevant documents.  In particular,

13   Mattel contends that Kaye Scholer's proposal would exclude relevant documents likely to be

14   found in its correspondence file, such as an August 29, 2003 letter from Isaac Larian to Mr.

15   Zarabi relating to an appraisal of MGA, and a letter from Farhad Larian's attorney to Kaye

16   Scholer detailing the evidence of Isaac Larian's alleged concealment of Bratz.  Mattel contends

17   that the relevance of these documents and others that are likely to exist justifies the burden of

18   production on Kaye Scholer.

19   Further, Mattel contends that Kaye Scholer has failed to produce a privilege log in

20   violation of Rule 45(d)(2), Fed.R.Civ.P., and therefore Kaye Scholer has waived any claims of

21   privilege.  In the alternative, Mattel requests an order compelling Kaye Scholer to produce a

22   document-by-document privilege log.

23   Kaye Scholer contends that the instant motion is premature, unnecessary and a waste of

24   judicial resources.  Kaye Scholer represents that after meeting and conferring in good faith, it

25   agreed to produce documents responsive to thirty of the thirty-five requests, and that the

26   remainder of the requests are grossly overbroad.  Further, Kaye Scholer represents that it has

27   completed its review pursuant to the agreement, and is prepared to produce responsive

28

1    documents. However, Kaye Scholer continues to object to producing a document-by-document

2    privilege log on the grounds that it would be unduly burdensome and expensive. Kaye Scholer

3    emphasizes that Mattel is seeking documents from a law firm, and therefore the vast majority of

4    responsive documents are protected by multiple privileges, including but not limited to the

5    attorney-client privilege and the work product doctrine. Kaye Scholer estimates that it would take

6    in excess of seventy (70) hours to create a document-by-document privilege log for this case, and

7    that the Federal Rules of Civil Procedure do not require Kaye Scholer to undertake such an

8    unreasonable burden. Furthermore, Kaye Scholer contends that the failure to produce a

9    document-by-document privilege log does not result in a per-se waiver of any privilege.

10           MGA also opposes Mattel's motion for several reasons. First, MGA contends that

11   Mattel's requests are overbroad, encompassing documents that are only marginally related, if at

12   all, to the claims and defenses in the case. Second, MGA contends that Mattel's requests are

13   completely duplicative of requests it has served on the parties in the case. In particular, MGA

14   contends that Mattel has sought the Larian v. Larian documents from both MGA Entertainment,

15   Inc. and Isaac Larian. See Mattel's Request No. 41 in Mattel's First Set of Request for

16   Production of Documents and Tangible Things to MGA, and Request Nos. 123-125 in Mattel's

17   First Set of Requests for Documents and Things to Isaac Larian. MGA and Isaac Larian are both

18   under court order to comply with the requests, although Isaac Larian is only required to produce

19   documents that refer or relate to Bratz in response to Request Nos. 123-125. Third, MGA

20   contends that Mattel's requests to Kaye Scholer are much broader than requests Mattel previously

21   served on the parties to this case. Fourth, MGA contends that there is no reason Mattel cannot

22   obtain a complete set of all relevant documents from the Larian v. Larian proceedings without this

23   third-party subpoena. Fifth, MGA contends that the vast majority of documents Mattel seeks

24   from Kaye Scholer are protected by the attorney-client privilege, the work product doctrine, or

25   other privileges, and that it is improper for Mattel to attempt to subpoena these documents and

26   then insist that Kaye Scholer produce a document-by-document privilege log. In summary, MGA

27   contends that Mattel has misused the subpoena process by serving deliberately overbroad and

28

1   burdensome requests in an attempt to harass and intimidate MGA and non-parties.  Accordingly,

2   MGA contends that Mattel's motion should be denied or Mattel's subpoena should be

3   substantially limited in scope.

<u>Mattel's Subpoena is Overbroad, Unduly Burdensome and Cumulative</u>

5          Mattel's subpoena to Kaye Scholer is overbroad and is not reasonably tailored to seek

6   documents relevant to the claims and defenses in this case.  Of the thirty-five requests Mattel

7   served on Kaye Scholer, all but one begin with the phrase "all documents" or a similarly broad

8   phrase.  For example, Request Nos. 1-3, which are set forth below, seek virtually all documents

9   relating to lawsuits and/or arbitrations between Isaac Larian and Farhad Larian:

> <u>Request No. 1</u>:  All DOCUMENTS, including all COMMUNICATIONS, RELATING TO any and all arbitration proceedings between FARHAD LARIAN and ISAAC LARIAN, including without limitation all video and/or sound recordings, transcripts, exhibits, memoranda, witness statements, declarations, affidavits and sworn testimony given by any PERSON in connection with such arbitration proceedings.

> <u>Request No. 2</u>:  All DOCUMENTS including all COMMUNICATIONS, RELATING TO Los Angeles Superior Court Case No. BC301371 filed by FARHAD LARIAN against ISAAC LARIAN and/or any related proceedings, including any appeal thereof, and including without limitation all video and/or sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness statements, declarations, affidavits and sworn proceedings and/or any appeal related to such lawsuit.

> <u>Request No. 3</u>:  All DOCUMENTS RELATING TO Los Angeles Superior Court Case No. BC329501 filed by FARHAD LARIAN against ISAAC LARIAN, MORAD ZARABI and Kambiz Zarabi, and/or any related proceedings and/or any appeal of such lawsuit, including without limitation all video and/or sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness statements, declarations, affidavits and sworn testimony given by any PERSON in connection with such suit and/or related proceedings and/or any appeal related to such lawsuit.

Mattel has not limited the subject matter of these requests (and others) in any way to exclude

irrelevant information.  To the contrary, Request Nos. 1-3 are drafted in the broadest possible

language, encompassing documents that are only marginally related, if at all, to this case.  As

such, Mattel's requests are also unduly burdensome.

       Furthermore, Mattel's requests are clearly duplicative of other requests propounded to the

1   parties in this action.  In particular, the requests relating to the <u>Larian v. Larian</u> proceedings are

2   duplicative of Mattel's Request No. 41 to MGA and Request Nos. 123-125 to Isaac Larian.

3   During the hearing, counsel for MGA acknowledged that Isaac Larian is required to comply with

4   Request Nos. 123-125, and is prepared to review Kaye Scholer's files for responsive documents

5   to fulfill his responsibility.  Also during the hearing, Kaye Scholer agreed to make its

6   correspondence file available to MGA's counsel for review.

7          In light of Mattel's failure to take reasonable steps to avoid unduly burdening Kaye

8   Scholer and in light of MGA's and Kaye Scholer's representations during the hearing as outlined

9   above, Mattel's motion to compel Kaye Scholer to comply with the full scope of the subpoena is

10  denied.

11          <u>Kaye Scholer's Compromise is Reasonable Under the Circumstances</u>

12          As an alternative to complying with the full scope of the subpoena, Kaye Scholer agreed

13  to review the following files for documents responsive to every one of Mattel's requests except

14  Nos. 1-3, 6 and 10:  (1) pleading files; (2) discovery files; and (3) arbitration exhibits.  Kaye

15  Scholer's Opposition at p.5.  Kaye Scholer's compromise is reasonable under the circumstances.

16  Narrowing the scope of Kaye Scholer's search in this manner will significantly minimize the

17  burden, expense, and inconvenience imposed by the subpoena because, unlike Kaye Scholer's

18  other files, most of the documents in the three files it agreed to search are not likely to be covered

19  by the attorney-client privilege or work product doctrine.  Further, narrowing Kaye Scholer's

20  search in this manner will not significantly deprive Mattel of relevant discovery to which it is

21  entitled because, as stated previously, MGA's counsel represented during the hearing that Isaac

22  Larian is prepared to review Kaye Scholer's documents, including the correspondence file, to

23  comply with Request Nos. 123-125.

24          Accordingly, to the extent it has not already done so, Kaye Scholer shall conduct the

25  agreed upon search of its three files and produce documents responsive to all of Mattel's requests,

26  except Nos. 1-3, 6 and 10.

27  //

28

1    <u>Kaye Scholer Must Produce a Privilege Log in Compliance with Rule 45</u>

2          Mattel contends that Kaye Scholer has waived its claims of privilege by failing to produce

3    any privilege log.  The law is clear, however, that the failure to produce a document-by-document

4    privilege log does not result in a per-se waiver of any privilege.  <u>See</u> <u>Burlington Northern & Santa</u>

5    <u>Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.</u>, 408 F.3d 1142, 1147 (9th Cir. 2005).  In this

6    case, Kaye Scholer raised a legitimate objection to producing a document-by-document privilege

7    log on the grounds that it would impose an undue burden.  Under these circumstances, a finding

8    of waiver is unjustified.

9          Nevertheless, Kaye Scholer's claim of undue burden is unpersuasive.  Kaye Scholer has

10   acknowledged that most of the documents in the three files it has agreed to search are not likely to

11   be covered by the attorney-client privilege or work product doctrine.  Kaye Scholer Opposition at

12   pp. 5 and 9.  Indeed Kaye Scholer agreed to search these files precisely because they were not

13   likely to contain privileged documents.  Therefore, requiring Kaye Scholer to produce a

14   document-by-document privilege log for documents withheld from these three files should not

15   impose an undue burden.  Accordingly, Kaye Scholer is ordered to produce a document-by-

16   document privilege log for documents withheld from the three files it agreed to search.

17                               V. CONCLUSION

18         For the reasons set forth above, it is ordered as follows:

19         1. Farhad Larian is in substantial compliance with Mattel's subpoena with respect to all of

20   the requests, except Nos. 23, 24 and 41.  Request Nos. 23, 24 and 41 are overbroad, unduly

21   burdensome, cumulative, harassing and invade the right of privacy of Farhad Larian and his

22   family.  Therefore, Mattel's motion to compel Farhad Larian to produce documents in response to

23   the subpoena is denied.

24         2. Farhad Larian shall produce a document-by-document privilege log to Mattel no later

25   than January 30, 2008.

26         3. Farhad Larian's request for sanctions against Mattel is denied.

27         4. Mattel's subpoena to Kaye Scholer is overbroad, unduly burdensome and cumulative.

28

Therefore, Mattel's motion to compel Kaye Scholer to produce documents responsive to the subpoena is denied.  Instead, Kaye Scholer is ordered to abide by its agreement to review its pleading files, discovery files, and arbitration exhibits for documents responsive to all of Mattel's requests, except Request Nos. 1-3, 6 and 10.  Kaye Scholer shall produce responsive documents no later than January 30, 2008.

5. Kaye Scholer shall also produce a document-by-document privilege log identifying all documents withheld from its pleading files, discovery files, and arbitration exhibits, no later than January 30, 2008.

6. Mattel shall abide by its agreement to reimburse Farhad Larian and Kaye Scholer for their copying costs.

7. Isaac Larian is granted an extension of time to comply with Request Nos. 123-125. Isaac Larian shall deliver documents responsive to these requests to Mattel no later than 12:00 p.m. on January 25, 2008.

8. Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

Dated: January 25, 2008

/s/Edward A. Infante
_____
HON. EDWARD A. INFANTE (Ret.)
Discovery Master

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2008, I served the attached ORDER RE MATTEL'S MOTIONS TO COMPEL FARHAD LARIAN, KAYE SHOLER AND STERN & GOLDBERG TO PRODUCE DOCUMENTS in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Patricia Glaser, Esq. | Christensen, Glaser, Fink, et al. | pglaser@chrisglase.com |
| Scott E. Gizer, Esq. | Christensen, Glaser, Fink, et al. | sgizer@chrisglase.com |
| Alisa Morgenthaler-Lever, Esq. | Christensen, Glaser, Fink, et al. | amorgentaler@chrisglase.com |
| Alan N. Goldberg, Esq. | Stern & Goldberg | agoldberg@sgattys.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| Bryant S. Delgadillo, Esq. | Kaye Scholer | bdelgadi@kayscholer.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 25, 2008, at San Francisco, California.

_____
Sandra Chan

# Exhibit K

Case 2:04-cv-09049-DOC-RNB   Document 1791   Filed 01/30/08   Page 78 of 88   Page ID
#:27302
Case 2:04-cv-09049-SGL-RNB    Document 1762    Filed 01/29/2008    Page 1 of 11

1 | THOMAS J. NOLAN (Bar No. 66992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 | 300 South Grand Avenue
Los Angeles, CA  90071-3144
3 | Telephone:  (213) 687-5000
Facsimile:  (213) 687-5600
4 | E-mail:   tnolan@skadden.com

5 | RAOUL D. KENNEDY (Bar No.  40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 | 4 Embarcadero Center, 38th Floor
San Francisco, California  94111-5974
7 | Telephone:  (415) 984-6400
Facsimile:  (415) 984-2698
8 | Email:    rkennedy@skadden.com

9 | Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA
10 | ENTERTAINMENT (HK) LIMITED, and MGAE de MEXICO S.R.L. de C.V.

11

12 | UNITED STATES DISTRICT COURT

13 | CENTRAL DISTRICT OF CALIFORNIA

14

15 | CARTER BRYANT, an individual )  CASE NO. CV 04-9049 SGL (RNBx)

16 |                     Plaintiff, )  Consolidated with Case No. 04-9059
and Case No. 05-2727

17 |             v. )
**DISCOVERY MATTER**
18 | MATTEL, INC., a Delaware )
corporation )  **[To be heard by Discovery Master
Hon. Edward A. Infante (Ret.)]**
19 |                     Defendant. )
**MGA DEFENDANTS' NOTICE
20 | _____ )  OF MOTION AND MOTION
TO QUASH SUBPOENA TO
21 | Consolidated with MATTEL, INC. v. )  BANK OF AMERICA OR, IN
BRYANT and MGA )  THE ALTERNATIVE, FOR
22 | ENTERTAINMENT, INC. v. )  PROTECTIVE ORDER AND
MATTEL, INC. )  MEMORANDUM IN SUPPORT**

23 |
**[Declarations of Timothy A. Miller
24 |                            and Nelson Richards and Separate
Statement filed under separate cover]**

25 |
Date:  TBD
26 | Time:  TBD
Place: TBD

27

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENA TO BANK OF AMERICA OR, IN THE
ALTERNATIVE, FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

1   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2           PLEASE TAKE NOTICE that on _____, 2008, at ____, or as soon

3   thereafter as the matter may be heard, before the Honorable Edward Infante (Ret.),

4   Discovery Master, located at Two Embarcadero Center, Suite 1500, San Francisco,

5   CA 94111, counter-defendants MGA Entertainment, Inc., Isaac Larian, MGA

6   Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively,

7   the "MGA Defendants") will and hereby do move, pursuant to Federal Rule of Civil

8   Procedure 26(b)(2) and 45(c)(3), for an order quashing a subpoena issued by Mattel,

9   Inc. to non-party Bank of America, or, in the alternative, a protective order limiting

10  the scope of the subpoena.

11          This motion is made on the grounds that Mattel's subpoena is overly broad and

12  seeks information that is irrelevant to this litigation or is unreasonably duplicative or

13  cumulative of documents and information that, to the extent relevant, has already

14  been sought and obtained or is being obtained by Mattel through other discovery.  In

15  addition, Mattel violated Federal Rule of Civil Procedure 45 by failing to serve the

16  MGA Defendants with prior notice of the subpoena.

17          This motion is based on this Notice of Motion and Motion to Quash Subpoena

18  to Bank of America or, in the Alternative, for Protective Order, the attached

19  Memorandum of Points and Authorities in support thereof, the supporting

20  Declarations of Timothy A. Miller and Nelson Richards filed herewith, the pleadings

21  and records on file in this action, and any further evidence and argument as may be

22  presented to the Discovery Master on this motion.

23

24

25

26

27

28

-i-

1

**Statement of Local Rule 7-3 Compliance**

2          The MGA Defendants attempted to meet and confer with Mattel on January 28,

3   2008, regarding the subject of this motion but was unable to communicate directly

4   with Mattel to resolve the matter.  Due to the urgency of the matter which was

5   caused by Mattel's belated service of notice of the subpoena, the MGA Defendants

6   could not delay filing this motion.

7

8   DATED:  January 29, 2008

9                                          SKADDEN, ARPS, SLATE, MEAGHER &
                                           FLOM, LLP

10

11                                         By: _____/s/_____
12                                                Raoul D. Kennedy

13                                         Attorneys for Counter-Defendants
                                           MGA ENTERTAINMENT, INC.,
14                                         ISAAC LARIAN, MGA ENTERTAINMENT
                                           (HK) LIMITED, and MGAE de MEXICO
15                                         S.R.L. de C.V.

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENA TO BANK OF AMERICA OR, IN THE
ALTERNATIVE, FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PRELIMINARY STATEMENT

Counter-defendants MGA Entertainment, Inc. ("MGA"), Isaac Larian, MGA Entertainment (HK) Limited ("MGA HK"), and MGAE de Mexico S.R.L. de C.V. ("MGA Mexico") (collectively, the "MGA Defendants") bring this motion to quash a document subpoena issued by Mattel to Bank of America.

Currently pending before the Discovery Master is the MGA Defendants' Motion to Quash Subpoenas or, in the Alternative, for Protective Order, which seeks to quash or substantially limit overly broad subpoenas that Mattel issued to various financial institutions and other non-parties, including MGA's bank Wells Fargo and Mr. Larian's tax accountant Moss Adams.  (Docket Item ("D.I.") No. 1318.)  The document requests in these subpoenas seek expansive categories of financial information regarding MGA, Mr. Larian, all of Mr. Larian's relatives, and other non-parties and essentially request every scrap of paper and byte of data that the subpoenaed entities have relating to MGA or Mr. Larian.

Despite the MGA Defendants' Motion to Quash, Mattel has continued to serve the same improper requests on other non-parties.  In particular, on January 17, 2008, Mattel served a subpoena on Bank of America literally requesting every document that Bank of America has relating to Mr. Larian and all of his relatives from 1999 through the present.  For the reasons set forth in the MGA Defendants' prior Motion to Quash, which is incorporated herein by reference, the Discovery Master should quash or, at a minimum, substantially limit the scope of Mattel's subpoena to Bank of America because it seeks overly broad categories of documents that are irrelevant to this case or are unreasonably duplicative or cumulative of documents and information that Mattel has obtained through other discovery.  (*Id.* at 13-21.)

Additionally, the Discovery Master should quash the subpoena to Bank of America because Mattel failed to give prior notice of its subpoena as required by Federal Rule of Civil Procedure 45(b)(1).  *See* Fed.R.Civ.P. 45(b)(1) ("***Prior notice***

-1-

Case 2:04-cv-09049-DOC-RNB   Document 1791   Filed 01/30/08   Page 82 of 88   Page ID
#:27306
Case 2:04-cv-09049-SGL-RNB    Document 1762    Filed 01/29/2008    Page 5 of 11

1  of any commanded production of documents and things or inspection of premises

2  before trial *shall be served on each party* in the manner prescribed by Rule 5(b).")

3  (emphasis added).  Mattel did not serve notice of the subpoena on the MGA

4  Defendants until the evening of January 24, 2008—seven days after serving the

5  subpoena on Bank of America and only one court day before the date specified in the

6  subpoena for compliance.  There is simply no excuse for Mattel's clear violation of

7  Rule 45.  Indeed, Mattel's belated notice has given the MGA Defendants very little

8  time to take the appropriate steps to prevent Mattel's improper receipt of documents

9  from Bank of America.

10         Accordingly, the MGA Defendants respectfully request that the Discovery

11  Master grant their motion to quash Mattel's subpoena issued to Bank of America or,

12  at a minimum, issue a protective order substantially limiting the subpoena's scope.

13  **II.   STATEMENT OF FACTS**

14         On January 17, 2008, Mattel's counsel served a subpoena dated January 15,

15  2008, on Bank of America, demanding the production of certain documents.

16  (Declaration of Timothy A. Miller ("Miller Decl."), Ex 1.)  The date specified in the

17  subpoena for compliance was January 28, 2008, which was also the discovery cut-off

18  date.  (*Id.*)  The subpoena contains the following four requests:

19      1.    All DOCUMENTS REFERRING OR RELATING TO ISAAC
20  LARIAN from January 1, 1999 to the present, inclusive.

    2.    All DOCUMENTS REFERRING OR RELATING TO any
21  ACCOUNTS maintained by YOU that are in the name of, for the
22  benefit of or concern ISAAC LARIAN, including but not limited to
statements, monthly statements, annual statements, daily transaction
history reports, monthly transaction history reports, deposit reports,
23  deposit slips, canceled checks, signature cards and
COMMUNICATIONS REFERRING OR RELATING TO such
24  ACCOUNTS, created between January 1, 1999 and the present,
25  inclusive.

    3.    DOCUMENTS sufficient to show the account number of all
26  ACCOUNTS maintained by YOU in the name of, for the benefit of or
27  concerning ISAAC LARIAN between January 1, 1999 and the present,
inclusive.

28

-2-

1          4.     All DOCUMENTS showing or relating to any ACCOUNTS held
2   by ISAAC LARIAN or any ACCOUNTS on which ISAAC LARIAN
    has signatory authority at any other financial institution.

3   (Miller Decl., Ex. 1 at 3.)  The subpoena defines "ISAAC LARIAN" to include Mr.

4   Larian and "all of his … relatives (whether by blood or marriage)."[1]  (*Id.* at 1.)

5          The foregoing requests are nearly identical to requests contained in subpoenas

6   propounded by Mattel on Mr. Larian's tax accountant Moss Adams and MGA's bank

7   Wells Fargo.  Those subpoenas are the subject of the MGA Defendants' previously

8   filed Motion to Quash, which is currently pending before the Discovery Master.  (D.I.

9   No. 1318.)  For example, Request Nos. 1 through 4 of the Bank of America

10  subpoena are identical to Request Nos. 1, 3, 4 and 5 of the Wells Fargo subpoena,

11  respectively, except that the Wells Fargo subpoena seeks such documents with

12  respect to MGA.  (D.I. 1319, Ex. 11 at 3.)  Similarly, Request No. 1 to Bank of

13  America is essentially the same as Request No. 2 to Moss Adams, which demands

14  "[a]ll DOCUMENTS RELATING TO ISAAC LARIAN … from the period

15  beginning January 1, 1999 to the present" and defines "ISAAC LARIAN" to include

16  "all of his … relatives (whether by blood or marriage)."  (D.I. No. 1319, Ex. 12 at 1

17  & 6.)

18         Although Mattel served the subpoena on Bank of America on January 17,

19  2008, Mattel waited until the evening of January 24, 2008—one court day before the

20  January 28 compliance date—to serve notice of the subpoena on the MGA

21  Defendants and other parties to the litigation.  (Miller Decl., Exs. 2-4.)  After

22  receiving the subpoena, the MGA Defendants promptly served objections on Mattel

23  and Bank of America on January 27, 2008.  (Miller Decl., Exs. 5 & 6.)

24

25  _____

26  [1]  In violation of Mr. Larian's privacy rights, Mattel listed Mr. Larian's social
    security number on the subpoena (*id.* at 1), but took no steps to protect such
27  information from being publicly disclosed.  Accordingly, the MGA Defendants have
    redacted Mr. Larian's social security number from the copy of the subpoena
28  submitted with this motion.

1    The MGA Defendants also attempted to contact Bank of America, but were

2  unable to identify, let alone communicate with, the Bank of America representative

3  responsible for handling the subpoena until the afternoon of January 28.

4  (Declaration of Nelson Richards ("Richards Decl."), ¶ 2.)  The MGA Defendants

5  informed the Bank of America representative, Jennifer Long, that the MGA

6  Defendants objected to Mattel's subpoena and were requesting that Bank of America

7  wait to respond until the parties had addressed the MGA Defendants' objections.

8  (Id.)  Ms. Long informed the MGA Defendants' counsel there was no attorney

9  responsible for reviewing the subpoena with whom counsel could speak and that,

10  because a federal subpoena was at issue, Bank of America would not stop production

11  of the documents based solely on a party's request or objection..  (Id.)  Ms. Long

12  stated, however, that Bank of America may stop a production of documents in

13  response to a subpoena if a motion to quash the subpoena were filed and Bank of

14  America were notified of such filing.  (Richards Decl. ¶ 2; Miller Decl. ¶ 8.)

15    Counsel for the MGA Defendants notified counsel for Mattel that it intended

16  to file this motion to quash, or in the alternative for a protective order, in order to

17  protect its rights, but that it is still willing to meet and confer during its pendency.

18  (Miller Decl., Ex. 7.)  Mattel's counsel has yet to respond to this offer.

19  **III.   THE DISCOVERY MASTER SHOULD QUASH MATTEL'S**
20  **     SUBPOENA TO BANK OF AMERICA**

21    **A.    Mattel's Requests to Bank of America Are the Same as the**
       **Abusively Drawn Requests that Are the Subject of the MGA**
22     **Defendants' Pending Motion to Quash and Should Be Quashed for**
       **the Reasons Set Forth in that Motion.**
23

24    Mattel's subpoena to Bank of America suffers from the same fatal defects as

25  Mattel's subpoenas to MGA's bank Wells Fargo and Mr. Larian's tax accountant

26  Moss Adams.  As detailed in the MGA Defendants' pending Motion to Quash, the

27  Wells Fargo and Moss Adams subpoenas must be quashed because they are overly

28  broad and seek documents that are irrelevant or are unreasonably duplicative or

-4-

Case 2:04-cv-09049-DOC-RNB   Document 1791   Filed 01/30/08   Page 85 of 88   Page ID
#:27309
Case 2:04-cv-09049-SGL-RNB   Document 1762   Filed 01/29/2008   Page 8 of 11

1 cumulative of other discovery already obtained by Mattel. (D.I. No. 1318 at 13-21.)

2 The MGA Defendants incorporate by reference herein the arguments set forth in

3 their pending Motion to Quash, which apply with equal force to Mattel's subpoena to

4 Bank of America.

5     As with its requests to Wells Fargo and Moss Adams, Mattel has made no

6 attempt to tailor its document requests to Bank of America to any specific set of

7 relevant, non-duplicative, non-cumulative information. Rather, once again, Mattel

8 has deliberately drafted its requests to be as expansive as possible. Mattel's

9 subpoena to Bank of America *literally* demands everything—"All DOCUMENTS

10 REFERRING OR RELATING TO ISAAC LARIAN from January 1, 1999 to the

11 present, inclusive." (Miller Decl., Ex. 1 at Request No. 1.) Indeed, to make sure

12 there is no doubt how broad Mattel intends its subpoena to be, Mattel has specifically

13 demanded nine years' worth of Mr. Larian's "statements, monthly statements, annual

14 statements, daily transaction history reports, monthly transaction history reports,

15 deposit reports, deposit slips, canceled checks, [and] signature cards." (*Id.* at

16 Request No. 2.)

17     As shown in the MGA Defendants' pending Motion to Quash, such requests

18 are abusively drawn and harassing. (D.I. No. 1318 at 13-19.) This is particularly

19 true in view of Mr. Larian's recent production of nearly 50,000 pages of documents,

20 which included, among other things, documents showing his net worth; his gross

21 income, wages, dividend income, interest income, and other income; his banks and

22 bank accounts; and various other financial documents. (Miller Decl., ¶ 10.) Given

23 financial documents that Mattel has received regarding MGA and Mr. Larian,

24 Mattel's requests to their financial institutions for every financial record available is

25 excessive and improper.

26     In addition to seeking overly broad discovery of financial information

27 regarding Mr. Larian, Mattel's subpoena to Bank of America effectively seeks all

28 such information regarding all of Mr. Larian's relatives. Specifically, Mattel has

-5-

1    broadly defined "ISAAC LARIAN" to include Mr. Larian and "all of his ... relatives

2    (whether by blood or marriage)." (Miller Decl., Ex. 1 at 1.) Thus, Mattel has

3    demanded that Bank of America produce every document from 1999 to the present

4    that it possesses relating to Mr. Larian, his wife, his children, and every other family

5    member, in-law or other relative that Mr. Larian has.

6       Mattel sought the same overly broad categories of financial documents

7    relating to Mr. Larian's relatives from Moss Adams and other non-parties. As

8    detailed in the MGA Defendants' pending Motion to Quash, such requests are

9    improper and intended only to harass Mr. Larian and his family. (D.I. No. 1318 at

10    19-21.) Indeed, the Discovery Master recently rejected a motion to compel by

11    Mattel with respect to similar requests for financial information from Mr. Larian's

12    brother, Farhad Larian, finding that "there is little need for the breadth of financial

13    information sought by Mattel" and that "the scope of these three requests unduly

14    intrude into Farhad Larian's private affairs." (D.I. No. 1699 at 12.) The Discovery

15    Master's concerns about the requests to Farhad Larian, who was a former MGA

16    shareholder and executive, apply with greater force here since Mattel's requests to

17    Bank of America seek financial documents for all of Mr. Larian's relatives,

18    regardless of their connection to MGA or the allegations in this action.

19       Because Mattel's requests to Bank of America are overly broad and abusively

20    drawn, Mattel's subpoena must be quashed.

21      **B.**    **Mattel's Subpoena Should Be Quashed Because Mattel Delayed**
           **Giving Notice of the Subpoena to the MGA Defendants Until a**
22          **Week After Issuing the Subpoena and Only One Court Day Before**
           **Compliance Was Commanded.**
23

24       Rule 45 is clear that parties are entitled to prior notice of subpoenas. Fed. R.

25    Civ. P. 45(b)(1) ("***Prior notice*** of any commanded production of documents and

26    things or inspection of premises before trial ***shall be served on each party*** in the

27    manner prescribed by Rule 5(b).") (emphasis added). When a party propounding a

28    subpoena fails to comply with Rule 45's prior notice requirement, the proper remedy

-6-

1  is to quash the subpoena. *See Firefighters' Inst. for Racial Equality v. St. Louis*, 220

2  F.3d 898, 902 (8th Cir. 2000) (finding proper district court's decision to quash

3  subpoena where plaintiff failed to comply with Rule 45's prior notice requirement);

4  *Williams v. Weems Comty. Mental Health Ctr.*, 2006 U.S. Dist. LEXIS 21845, *5-6

5  (S.D. Miss. April 6, 2006) (quashing subpoena because, *inter alia*, plaintiff did not

6  comply with prior notice requirement); *Florida Media, Inc. v. World Publ'ns, LLC*,

7  236 F.R.D. 693, 695 (M.D. Fla. 2006) ("Plaintiff was obligated to give prior notice

8  to Defendant by serving opposing counsel with the subpoenas. He failed to do so,

9  and his subpoenas are void and unenforceable.").

10      Mattel's failure to serve the MGA Defendants with notice of the Bank of

11  America subpoena until one court day before the date specified by Mattel for

12  compliance is exactly the sort of abuse that Rule 45's prior notice requirement is

13  meant to avoid. *See* Advisory Committee Notes to the 1991 Amendment to Fed. R.

14  Civ. P. 45(b) ("The purpose of such notice is to afford other parties an opportunity to

15  object to the production."). *See also* Cal. Code Civ. P. § 1985.3 (requiring

16  subpoenaing party to give notice of subpoena for personal records at least five days

17  before service of subpoena on custodian of records and at least ten days before date

18  specified for compliance).

19      Had Mattel properly served notice on the MGA Defendants before issuing the

20  subpoena on January 17, 2008, the MGA Defendants clearly would have had more

21  time in which to take appropriate steps to protect against the production of

22  documents in response to Mattel's improper requests. By delaying a week to serve

23  notice, Mattel left the MGA Defendants very little time in which to act. Indeed, it is

24  unclear whether the filing of this motion will be in time to prevent the production of

25  any documents by Bank of America. Moreover, to the extent Mattel is able to obtain

26  any documents from Bank of America before this motion is heard, it is only because

27  Mattel violated its obligation under Rule 45 to give prior notice.

28

-7-

MGA DEFENDANTS' MOTION TO QUASH SUBPOENA TO BANK OF AMERICA OR, IN THE
ALTERNATIVE, FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

1      Accordingly, Mattel's subpoena should be quashed and, to the extent Bank of

2  America has produced any documents before the ruling on this motion, Mattel

3  should be ordered to destroy all copies of such documents immediately and be

4  precluded from relying on them in any way.

5  **IV.   <u>CONCLUSION</u>**

6      For the foregoing reasons, the MGA Defendants respectfully request that the

7  Discovery Master quash Mattel's subpoena to Bank of America, or, at a minimum,

8  issue a protective order substantially narrowing the scope of the subpoena and

9  requiring Mattel to specifically identify the relevant and non-duplicative information

10  that it seeks from Bank of America.

11

12  DATED:  January 29, 2008

                                        SKADDEN, ARPS, SLATE, MEAGHER &

13                             FLOM, LLP

14

15                           By: _____/s/_____

16                               Raoul D. Kennedy

17                           Attorneys for Counter-Defendants

18                           MGA ENTERTAINMENT, INC.,
                               ISAAC LARIAN, MGA ENTERTAINMENT

19                           (HK) LIMITED, and MGAE de MEXICO
                               S.R.L. de C.V.

20

21

22

23

24

25

26

27

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENA TO BANK OF AMERICA OR, IN THE
ALTERNATIVE, FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT