# EXHIBIT 1

**Christopher Tayback**

| | |
|---|---|
| **From:** | Christopher Tayback |
| **Sent:** | Wednesday, December 26, 2007 9:27 PM |
| **To:** | 'Robert.Herrington@skadden.com' |
| **Cc:** | Timothy Alger |
| **Subject:** | Re: Follow-up to today's telephone call |

Robert--

You clearly have concluded that whatever Mattel did to search for documents it was insufficient based on the fact that what was produced was not what MGA expected to receive. I can't respond to MGA's expectations (or yours) regarding the type or quantity of documents that you expected to receive.

I do ask, however, that you at least identify for me precisely which Mattel witnesses you believe have responsive documents that were not produced and which electronic data base you believe contains responsive documents that were not searched. To say that you believe some of the dozens of witnesses identified by Mattel in its initial disclosures and "interrogatory" responses is hardly helpful. As I said, if you want me to respond to any particular concern, I will try--but you have to state it with particularity. Indeed, you asked whether we searched Lily Martinez's computer, and I confirmed for you that we had.

I also note here that Tim Alger told you earlier that the next couple document productions will include emails. Of course, I cannot assure you that what we produce will meet MGA's expectations as to quantity of type of documents.

Having said that, you did not answer my question back to you: is MGA prepared to disclose to Mattel the manner and method by which it has searched for documents, including responding to the interrogatories previously propounded and which I referenced in my last email?


----- Original Message -----
From: Herrington, Robert J <Robert.Herrington@skadden.com>
To: Christopher Tayback
Cc: Timothy Alger
Sent: Wed Dec 26 18:31:43 2007
Subject: RE: Follow-up to today's telephone call

Chris:

We have reason to believe that the email Mattel preserved for several witnesses described as likely to have information regarding MGA, Bratz, and Carter Bryant, as set forth in Mr. Moore's affidavit, contain responsive information. Each of these witnesses has been listed in Mattel's initial disclosures and interrogatory responses as someone with relevant knowledge. It stands to reason that these individuals' emails would contain documents responsive to the topics identified in MGA and Bryant's document requests and the Court's Orders. We also believe the email files Mattel began to preserve in 2004 and 2005 in a more wholesale fashion are likely to have relevant information, as described in Mr. Moore's affidavit. As I explained, we have reason to believe that these email files have not been searched based on the very small number of emails produced by Mattel (less than 2000 at this point) and the objections previously raised by Mattel regarding searching email files. I also understood that Mattel had not searched these email records based on my prior conversation with you and Mr. Alger. Please confirm one way or the other whether these email files were searched for responsive information.

Thank you,
--rob

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY. ALL OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.

1

EXHIBIT 1 PAGE 7

Robert J. Herrington
Skadden, Arps, Slate, Meagher & Flom LLP 300 South Grand Ave. | Suite 3400 | Los Angeles,
CA | 90071 ' Direct: (213) 687-5368 | 7 Fax: (213) 621-5368 | , Email:
rherring@skadden.com

Joanne Otero, Assistant to Robert Herrington ' Direct: (213) 687-5252 | , Email:
jootero@skadden.com <mailto:jootero@skadden.com>

_____

From: Christopher Tayback [mailto:christayback@quinnemanuel.com]
Sent: Wednesday, December 26, 2007 6:07 PM
To: Herrington, Robert J (LAC)
Cc: Timothy Alger
Subject: Re: Follow-up to today's telephone call


Robert--

That's incorrect.  I said that Mattel has searched the various electronic media in its
possession which were likely to have responsive documents.  That includes searches of some
data retrieved from back-up tapes and some data retrieved from Zeus.  What we have not
done is incur the substantial time and expense associated with searching locations where
we have no reason to believe responsive documents are located.  If you have reason to
believe some specific relevant document (or documents) is in Mattel's possession, please
let us know.  If you have information as to where such a document is located within the
various data compilations maintained by Mattel, please say so and we will focus our
efforts there.  When we spoke, you did not identify any specific relevant document or
location that you believed contained a relevant document.

As I said before, we have previously sought from MGA specific information about whether it
had searched specific boxes for particular documents.  MGA refused to say whether it would
or would not (or did or did not) search those specifically requested boxes, but said only
that they searched boxes where they thought responsive documents would be located.  MGA
also has objected and refused to provide a proper answer to our interrogatory asking which
databases it searched for responsive documents regarding the early timeframe for Bratz.
Why is MGA entitled to a response from Mattel about how it has searched for responsive
documentsd that MGA has been unwilling to provide to Mattel?

I am available tomorrow if you wish to discuss this further.

Chris Tayback

----- Original Message -----
From: Herrington, Robert J <Robert.Herrington@skadden.com>
To: Christopher Tayback
Cc: Timothy Alger
Sent: Wed Dec 26 17:24:13 2007
Subject: RE: Follow-up to today's telephone call

Chris:

I want to reconfirm my understanding based on our second conversation this afternoon.  As
I understand it, Mattel has been searching the sources of electronic information
identified in Mr. Moore's affidavit to the extent Mattel believes they might contain
responsive documents.  The only exception is that Mattel has not been searching archived
email / email backup tapes because of concerns regarding cost and whether the archives or
backup tapes contain responsive information.  Please let me know if that is not correct.

Our view is that archived email and backup tapes are sources that are reasonably likely to
contain responsive documents and should be (should have been) searched.  We also believe
the burden/cost issue was addressed and overruled in connection with Judge Infante's May
and September 2007 Orders.  I will call you tomorrow morning to discuss.

2

EXHIBIT 1 PAGE 8

Thank you,
--rob

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY.  ALL OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.


Robert J. Herrington
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071
' Direct: (213) 687-5368 | 7 Fax: (213) 621-5368 | , Email: rherring@skadden.com

Joanne Otero, Assistant to Robert Herrington
' Direct: (213) 687-5252 | , Email: jootero@skadden.com <mailto:jootero@skadden.com>


---

From: Christopher Tayback [mailto:christayback@quinnemanuel.com]
Sent: Wednesday, December 26, 2007 2:36 PM
To: Herrington, Robert J (LAC)
Cc: Timothy Alger
Subject: RE: Follow-up to today's telephone call


I don't think you understood me.  Call me when you have 5 minutes.  213-443-3170.

---

From: Herrington, Robert J [mailto:Robert.Herrington@skadden.com]
Sent: Wednesday, December 26, 2007 2:30 PM
To: Christopher Tayback
Cc: Timothy Alger
Subject: RE: Follow-up to today's telephone call


My letter sought confirmation that Mattel had searched all of the electronic sources identified in Mr. Moore's affidavit (dated 9/10/07) for responsive documents.  From our conversation earlier today, I had understand that the answer was "yes" - except for email backup tapes.  My email below was referring to the computers identified in Mr. Moore's affidavit, paragraphs 14, 17, and 23.

Thank you,
--rob

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY.  ALL OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.


Robert J. Herrington
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071
' Direct: (213) 687-5368 | 7 Fax: (213) 621-5368 | , Email: rherring@skadden.com

Joanne Otero, Assistant to Robert Herrington
' Direct: (213) 687-5252 | , Email: jootero@skadden.com <mailto:jootero@skadden.com>


---

From: Christopher Tayback [mailto:christayback@quinnemanuel.com]
Sent: Wednesday, December 26, 2007 2:18 PM
To: Herrington, Robert J (LAC)
Cc: Timothy Alger
Subject: RE: Follow-up to today's telephone call

3

EXHIBIT 1 PAGE 9

Robert--

What "other computers" are you referring to below?  Are you referring to the three people listed in paragraph 9 of Michael Moore's declaration?

Chris

_____

From: Herrington, Robert J [mailto:Robert.Herrington@skadden.com]
Sent: Wednesday, December 26, 2007 11:39 AM
To: Christopher Tayback
Cc: Timothy Alger
Subject: RE: Follow-up to today's telephone call


Thank you Chris.

One point of clarification:  Based on our conversation this morning, my understanding is that Mattel has searched all the other sources of electronically stored information identified in Mr. Moore's affidavit for responsive documents, aside from email backup tapes (and Zeus, which we are discussing separately).  Is that correct?  For example, has Lily Martinez's imaged hard drive been searched?  What about the other computers identified in Mr. Moore's affidavit?  I just want to make sure my understanding is correct on this point.

Thanks,
--rob

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY.  ALL OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.


Robert J. Herrington
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071
' Direct: (213) 687-5368 | 7 Fax: (213) 621-5368 | , Email: rherring@skadden.com

Joanne Otero, Assistant to Robert Herrington
' Direct: (213) 687-5252 | , Email: jootero@skadden.com <mailto:jootero@skadden.com>


_____

From: Christopher Tayback [mailto:christayback@quinnemanuel.com]
Sent: Wednesday, December 26, 2007 10:44 AM
To: Herrington, Robert J (LAC)
Cc: Timothy Alger
Subject: Follow-up to today's telephone call


Robert--

One of the two issues I said I would follow up on after the call today is whether there are any Fontanella documents that are non-privileged and responsive to the third-party subpoena MGA served on her.  The answer is no.  Neither she nor Patel have any documents responsive to the third-party subpoenas.

Chris

--------------------------------------------------------------------------
To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

4

EXHIBIT 1 PAGE 10

**************************************************
This e-mail and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any e-mail, and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
**************************************************
====================================================================================

5

EXHIBIT __1__ PAGE __11__

# EXHIBIT 2

**From:** Herrington, Robert J [mailto:Robert.Herrington@skadden.com]
**Sent:** Thursday, December 27, 2007 8:12 PM
**To:** Christopher Tayback
**Cc:** Timothy Alger; Eckles, Paul M (NYC)
**Subject:** RE: Follow-up to today's telephone call

Chris:

We are finding it very hard to understand why Mattel is refusing to provide a straightforward response to what is a very simple question - *has Mattel searched the archived email files and email backup tapes identified in Mr. Moore's affidavit (paragraphs 8, 10, 11, 12, 13, 22, 23, 27, 28) for documents responsive to MGA and Bryant's document requests and the categories of documents Mattel was ordered to produce by Judge Infante?*

As explained in my prior correspondence and during our telephone conversations, we are very concerned that Mattel has not been searching email because Mattel has produced about 2000 emails in this case (as compared to almost 20,000 emails produced by MGA) and because Mattel previously objected to searching or producing email. In connection with Judge Infante's May 22, 2007 Order compelling Mattel to produce documents, Mattel objected to searching and producing email based on a burden objection. Judge Infante overruled this and other objections and ordered Mattel to produce certain categories of documents. Mattel moved for reconsideration and asked for an extension of time. On July 19, 2007, Judge Infante denied the motion for reconsideration and ordered Mattel to produce all responsive documents called for in his Order by August 6, 2007. On September 12, 2007, Judge Infante granted another motion to compel filed by MGA, again overruling Mattel's objections and ordering Mattel to produce all responsive documents by September 28, 2007.

After the Court entered these Orders, Mattel produced some 1164 emails (broken down as follows: May 30, 2007: 67 emails produced; June 15, 2007: 292 emails produced; July 6, 2007: 6 emails produced; July 20, 2007: 98 emails produced; August 6, 2007: 45 emails produced; October 29, 2007: 656 emails produced). We have reviewed these documents and a majority have handwriting or other markings, indicating that they were stored and produced from hardcopy files, rather than from electronically stored data sources. This further supports our view that Mattel has not been searching archived email and email backup tapes for responsive documents.

We also are concerned because we are receiving conflicting messages from Mattel on this issue. During our meet and confer conference on December 14, 2007, Mr. Alger indicated that Mattel had not been searching archived or backed up email because of costs concerns and that these issues already had been addressed in prior briefing, including references to it costing more than $900,000 to search backed up email. Mr. Alger, however, declined to provide any further information until I put a further request in writing. I did so on

**EXHIBIT 2 PAGE 12**

December 17, 2007, and we met and conferred on December 26, 2007. During our call at 9:00am on December 26, I understood both you and Mr. Alger to say that archived and backed up email had not been searched because of cost concerns. When we spoke again later that afternoon, I understood you to be saying basically the same thing. But Mattel now appears to be retreating from that position. After multiple meetings and discussions, we still don't have a clear answer as to whether Mattel has been searching archived and backed up email. Mattel's refusal to answer the simple question of whether it has been searching email heightens our concern that Mattel is standing on its prior objections and has not been searching or producing email in response to our document requests and the Court's Orders.

Our inquiry regarding whether Mattel has been searching and producing email is no different from inquiries your firm has made of us regarding whether our client is standing on certain objections. I participated in a conference call with your partner, Scott Kidman, on Monday December 24, 2007 during which Mr. Kidman repeatedly asked whether MGA was standing on certain objections and we agreed to provide him with responses. Our current inquiry regarding Mattel email is no different. Mattel previously objected to searching for and producing email because of cost concerns. We are entitled to know whether Mattel is standing on that objection or not.

Finally, you reference the outstanding dispute regarding the interrogatory Mattel served on MGA regarding its search for documents. As noted in your papers, MGA agreed to provide a source log for documents it has produced in this case, provided that Mattel provides a similar log. As I understand it, Mattel refused this offer and filed a motion to compel. Are you suggesting that Mattel has reconsidered its position and wishes to exchange source logs as previously offered?

Thank you,
--rob

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY. ALL OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.

**Robert J. Herrington**
**Skadden, Arps, Slate, Meagher & Flom LLP**
300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071
☎ Direct: (213) 687-5368 | 🖷 Fax: (213) 621-5368 | ✉ Email: rherring@skadden.com

**Joanne Otero, Assistant to Robert Herrington**
☎ Direct: (213) 687-5252 | ✉ Email: jootero@skadden.com

---

**From:** Christopher Tayback [mailto:christayback@quinnemanuel.com]
**Sent:** Wednesday, December 26, 2007 9:27 PM
**To:** Herrington, Robert J (LAC)
**Cc:** Timothy Alger
**Subject:** Re: Follow-up to today's telephone call

EXHIBIT 2 PAGE 13

# EXHIBIT 3

**From:** Christopher Tayback

**Sent:** Friday, January 04, 2008 9:20 AM

**To:** 'Herrington, Robert J'

**Cc:** Timothy Alger; 'Eckles, Paul M (NYC)'; Christopher Tayback

**Subject:** RE: Follow-up to today's telephone call

Robert--

You seem to have changed what started out as a meet and confer on several issues to a series of interrogatories by email.

I believe I have answered several times now, on the telephone and by email, the "simple" question you claim to be asking. As I said to you by email on December 26: ". . . Mattel has searched the various electronic media in its possession which were likely to have responsive documents. That includes searches of some data retrieved from back-up tapes and some data retrieved from Zeus. What we have not done is incur the substantial time and expense associated with searching locations where we have no reason to believe responsive documents are located. If you have reason to believe some specific relevant document (or documents) is in Mattel's possession, please let us know. If you have information as to where such a document is located within the various data compilations maintained by Mattel, please say so and we will focus our efforts there."

You have not done so. Instead, you are asking whether Mattel has "searched" virtually every data compilation in existence for potentially responsive documents. As I have said to you, Mattel has not searched every document, or every data compilation, in the off-chance of finding something relevant. As you know, we are talking about lots of different systems, tapes, devices, storage mechanisms, etc., that span over a decade of data. You clearly want a short "sound bite" describing what Mattel did or did not do to search for documents. In fact, the way you described it to me on the telephone was that you were looking for some "categorical exclusion" of what, if anything, Mattel did not search. As I told you then, and reiterate now, the scope of what Mattel has done to search for documents involves a huge amount and a wide variety of data, and is not susceptible to a "categorical" statement or a sound bite. Mattel has properly looked where it has reason to believe it will find non-privileged, relevant documents, but not in places where it has no reasonable belief that it will find such documents. So, when you ask whether Mattel searched the "backup tapes identified in Mr. Moore's [September 10, 2007] affidavit," you are expressly referring to his testimony that stated that Mattel preserved "in excess of 4,000 backup tapes containing hundreds of terabytes of data." (Paragraph 27). I told you myself, several times, that Mattel has not, and will not, restore every backup tape. However, I told you, if there was some specific document, or custodian, or location where some specific relevant document would likely be located, we could discuss how to obtain such a document (and at whose cost).

Indeed, I was not the first person to advise MGA of this fact. It has been discussed between counsel several times in the life of this case, and Mattel's counsel told the Court precisely this. And, we have offered to MGA on several occasions (in writing, on the record and orally) the Zeus backup tapes if MGA would prefer to search them itself.

In any event, you are asking now sweeping questions about whether Mattel searched any of dozens of different data sources, including over 4,000 backup tapes. Those are questions properly asked as interrogatories (or depositions) in my opinion. In fact both parties have asked similar questions in

**EXHIBIT 3 PAGE 14**

discovery.

Mattel propounded an interrogatory (No. 47) asking MGA to identify the sources of information from which it collected documents. MGA objected and refused to respond (MGA's Response to Mattel's Interrogatory No. 47). That is the subject of a pending motion to compel. Why should Mattel answer "simple" questions--which you ask about dozens of different custodians and topics in sweeping, cursory fashion--when MGA refused to answer a similar interrogatory. I have to say, I think I showed more direct responsiveness in our few telephone conversations than it appears MGA has shown throughout the discovery process in this case. When you did ask me a discrete, answerable question--such as whether we had searched Lily Martinez's hard drive--I obtained the answer for you and gave it to you (the answer was "yes", though I don't think you liked that answer).

MGA has itself asked virtually the same question in the form of an interrogatory (No. 31)--signed by you, and propounded on December 4. I further cannot understand why you are asking me--in the guise of a "meet and confer"--to answer something that you know you just asked in the form of a discovery request.

You also say that you have received "conflicting" messages from Mattel. That is incorrect. As the support for your conclusion, you cite to your characterizations of conversations you had with me and Tim Alger--yet you will recall that as soon as you tried to summarize our conversation in an email, I promptly corrected you. Disingenuously, when you cite to your understanding of what I said, you refer only to your understanding of our oral conversations, and not the several emails that I have sent you explicitly stating our position. What I have said is consistent with what I wrote, not in conflict with it. I sincerely hope that we do not have to resort to communicating only in writing going forward.

You further compare your request to "similar" ones made by our firm to yours regarding whether it intended to stand on certain objections. I am perplexed by that comparison. To which "objections" to which RFP or Interrogatory are you referring? To my knowledge, you have not identified any.

Lastly, you mention the offer of a "source log"--which MGA offered to exchange in lieu of answering Mattel's Interrogatory No. 47. That offer was rejected because, among other things, the source log proposed by MGA would only identify the source of documents actually produced, not the places where searches were conducted (or not conducted) for documents not produced. As such, the source log would not be a satisfactory substitute for a response to Interrogatory No. 47. That is undoubtedly why MGA has refused to answer Mattel's Interrogatory--because it calls for specific information about where MGA has searched and not searched for key early Bratz documents, which MGA does not want to disclose. Based on what you are seeking from me in your email, the source log proposed to be exchanged by MGA would not appear to provide MGA what it is looking for either to the extent any source searched did not ultimately result in the production of a responsive document. And, I note also that Mattel did not reject MGA's proposal to exchange a source log. In fact, Mattel asked MGA if that was a freestanding proposal MGA was making. MGA said it was not. The only "proposal" Mattel rejected was MGA's demand that Mattel waive its right to the information sought in Interrogatory 47 -- which MGA refuses to provide even in discovery and yet you now effectively demand we provide via email.

Regards,

Christopher Tayback

**EXHIBIT 3 PAGE 15**

# EXHIBIT 4

1    Hon. Edward A. Infante (Ret.)
     JAMS
2    Two Embarcadero Center
     Suite 1500
3    San Francisco, California 94111
     Telephone:    (415) 774-2611
4    Facsimile:    (415) 982-5287

5

6

7                       UNITED STATES DISTRICT COURT

8                       CENTRAL DISTRICT OF CALIFORNIA

9                              EASTERN DIVISION

10

11                                          CASE NO. C 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
12   CARTER BRYANT, an individual,

13          Plaintiff,
                                            Consolidated with
14        v.                                Case No. CV 04-09059
                                            Case No. CV 05-2727
15   MATTEL, INC., a Delaware corporation,

16          Defendant.                      **ORDER GRANTING IN PART AND**
                                            **DENYING IN PART MGA'S MOTION**
17                                          **TO COMPEL DOCUMENTS**
                                            **RESPONSIVE TO FIRST SET OF**
18                                          **REQUESTS FOR PRODUCTION OF**
                                            **DOCUMENTS DATED NOVEMBER**
19   CONSOLIDATED WITH                      **22, 2006**
     MATTEL, INC. v. BRYANT and
20   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
21                                          I.  INTRODUCTION

22         On April 13, 2007, MGA Entertainment, Inc. ("MGA") submitted a motion to compel

23   Mattel, Inc. ("Mattel") to produce documents responsive to MGA's First Set of Requests for

24   Production of Documents dated November 22, 2006 (the "requests"), which generally seeks

25   documents that MGA contends are relevant to its Lanham Act and unfair competition claims.  On

26   April 25, 2007, Mattel submitted its opposition brief, and on May 2, 2007, MGA submitted a

27   reply brief.  The matter was heard via telephonic conference on May 11, 2007.  Having

28

**EXHIBIT 4 PAGE 14**

1    considered the motion papers and comments of counsel at the hearing, MGA's motion to compel

2    is granted in part and denied in part.

3                                    II. BACKGROUND

4          There are two themes underlying MGA's claims for unfair competition against Mattel.

5    First, MGA alleges that Mattel has intentionally "serially imitated and copy-catted the look of

6    MGA products, trade dress, trademarks, themes, ideas, advertising and packaging, including for

7    the 'Bratz' line of dolls," to dilute MGA's brand, create customer confusion, and unfairly stifle

8    competition. MGA's Complaint at ¶¶9, 65. Second, MGA alleges, on information and belief,

9    that "Mattel has intimidated, coerced and threatened retailers, licensees, suppliers and others in

10   the industry – both in the U.S. and internationally – in order to inhibit and stifle MGA's ability to

11   compete with Mattel and to prevent MGA from obtaining licensees, contracts and supplies for its

12   products." Id. at ¶9.

13                             The Alleged Copy-catting

14         Mattel's alleged serial copycatting "began with the 'Bratz' dolls themselves, but quickly

15   extended to MGA's packaging, themes, accessories, advertising and even other product lines."

16   Id. at ¶33. Mattel allegedly "designed its 'My Scene' dolls to evoke the unique and distinctive

17   look of the 'Bratz' – also with disproportionately oversized heads, artfully made-up almond-

18   shaped eyes, large, overly-lined and lipsticked lips, trendy, hip clothes and hair styles, and over-

19   sized feet." Id. at ¶34. Mattel also allegedly "systematically proceeded to modify the 'My Scene'

20   dolls since their original release, particularly their eyes, to increase their similarity to 'Bratz' more

21   and more over time." Id.

22         Further, Mattel allegedly "modified its 'My Scene' packaging, and the manner in which

23   the dolls are displayed, to more closely mimic the packaging, trade-dress and overall look and

24   total image of MGA's 'Bratz.'" Id. at ¶41. For example, Mattel allegedly changed its packaging

25   "to the open and transparent style of the 'Bratz' packaging." Id. at ¶43. Mattel also allegedly

26   hung its packaging and product display to "look even more closely and confusingly similar to

27

28

EXHIBIT 4 PAGE 17₂

1   MGA's packaging and 'tout ensemble.'" Id. at ¶45. Mattel also allegedly "discarded its

2   traditional rectangular shaped box, and like 'Bratz', adopted an unusual, non-rectangular shaped

3   box." Id. at ¶46. Mattel also allegedly "adopted the 'flying banner' ribbon-style slogan running

4   across the middle of the box, similar to that used on the 'Bratz' packaging." Id.

5          In addition to the packaging changes, Mattel allegedly copied "MGA's practice of

6   regularly releasing new dolls in connection with a theme – but not just any theme, often MGA's

7   theme." Id. at ¶47. For example, when MGA released its "Wintertime Wonderland" theme,

8   Mattel allegedly released "Chillin Out." Id. at ¶48. Mattel also allegedly imitated Bratz

9   accessories and related products in order to create consumer confusion in the marketplace. Id. at

10  ¶52. Further, Mattel allegedly "began running television commercials for its 'My Scene' dolls

11  bearing a remarkable similarity to 'Bratz' commercials, combining live action with animated

12  sequences set to similar sounding pop music and lyrics." Id. at ¶51. MGA alleges that Mattel's

13  conduct described above "is a calculated and intentional effort unquestionably designed to trade

14  off of MGA's hard work and goodwill, create confusion in the marketplace, steal MGA's thunder

15  and momentum, and dilute and blur away the novelty and distinctiveness of MGA's products."

16  Id. at ¶54.

17         Further, MGA alleges that when it "came out with a 'Bratz' 'Funky Fashion Makeover

18  Head,' Mattel came out with a confusingly similar – indeed, practically identical – 'My Scene'

19  styling head." Id. at ¶55. Mattel also allegedly "used a portion of the Bratz doll's now-famous

20  trademarked tag line 'The Girls With a Passion for Fashion' on Mattel's website for its 'Diva

21  Starz' dolls, asking its website users: 'Do you have a passion for fashion?'" Id. at ¶58.

22         MGA also alleges that Mattel recently came out with a confusingly similar line of "My

23  Scene" plush pets that have the distinctive look of MGA's "Bratz" line. Id. at ¶59. In addition,

24  Mattel allegedly "chose to package its pets the same way that MGA packaged its 'Bratz Petz',

25  sitting in an open box, with no top and with partial side panels that slope from a narrow front

26  panel to a higher back panel." Id. at ¶60. MGA alleges that the similarity of the "My Scene" pets

27

28

EXHIBIT 4 PAGE 18

3

1    and the "Bratz Petz" has confused sophisticated retailers who have mistakenly merchandised the

2    products together. Id. at ¶61.

3        MGA alleges that Mattel's television commercials and "My Scene" products have become

4    so confusingly similar to MGA's commercials and products that advertising executives have

5    expressed concern. Id. at ¶62. MGA also alleges that the press has taken notice of Mattel's

6    alleged attempts to confuse consumers. Id. at ¶63. Further, MGA alleges that some customers

7    have contacted MGA seeking to purchase "My Scene" dolls. Id. at ¶64.

8        MGA alleges that Mattel's conduct has reached beyond "Bratz" to include other new

9    MGA toy lines. Id. at ¶67. For example, Mattel allegedly modeled its "Wee 3 Friends" line of

10    dolls and packaging on MGA's "4-Ever Best Friends" line. Id. at ¶68. Mattel also allegedly

11    modeled its "Little Mommy Potty Training Baby Doll" on MGA's "Mommy's Little Patient." Id.

12    at ¶69. Mattel also allegedly revamped and renamed one of its "Hot Wheels" lines with the

13    "AcceleRacerS" logo based upon MGA's "AlienRacers" radio controlled racing vehicles. Id. at

14    ¶70.

Additional Allegedly Anti-Competitive Conduct

16        MGA alleges that Mattel has engaged in additional allegedly anti-competitive conduct,

17    including "sending threatening letters to several of its former employees who now work for MGA

18    warning them not to disclose *even publicly available information* about Mattel, including the

19    names and positions of Mattel employees." Id. at ¶75 (emphasis in original). Mattel has also

20    allegedly "warned a number of companies, including the biggest publishing entity in the United

21    Kingdom, not to license MGA products, or risk retribution." Id. at ¶76. MGA alleges that it has

22    lost valuable licensing opportunities as a result of Mattel's conduct. Id.

23        MGA also alleges that "Mattel has used similar intimidation to pressure distributors and

24    retailers, particularly in foreign countries, not to distribute 'Bratz', to reduce shelf and display

25    space for 'Bratz' and to place 'Bratz' in unfavorable locations at retail outlets." Id. at ¶77. MGA

26    further alleges that "[w]hen MGA faced a shortage of doll hair in October 2002, MGA is

27

28

EXHIBIT 4 PAGE 19    4

1   informed and believes that the reason for that shortage was that Mattel had locked MGA out by

2   buying up the supply from the two main hair supply companies." Id. at ¶78.

3        MGA also alleges that Mattel manipulated the retail market.  More specifically, MGA

4   alleges that "Mattel merchandisers have been caught tampering with MGA's retail displays,

5   replacing favorably located MGA merchandise with Mattel merchandise instead." Id. at ¶79.

6   MGA further alleges on information and belief that "Mattel has falsely told a major United States

7   retailer that MGA was giving another major United States retailer below-market pricing and

8   falsely told a United Kingdom retailer that MGA was discontinuing one of its lines, in order to

9   make such line less attractive to buyers and thereby attempt to increase sales of the competitive

10  Mattel product and improve its own sales, at MGA's expense." Id.

11       Next MGA alleges on information and belief that NPD Funworld ("NPD"), the leading

12  supplier of sales statistics in the toy industry, terminated MGA's subscription ostensibly for

13  misusing NPD data and that "the termination was the result of pressure from Mattel." Id. at ¶¶80-

14  85.  MGA also alleges on information and belief that Mattel pressured NPD into changing certain

15  product classifications for "Bratz" products to manipulate the data and preserve Mattel's market

16  share rankings in the "fashion doll" category. Id. at ¶86.

17       MGA further alleges on information and belief that Mattel used its influence as a major

18  contributor to the Children's Advertising Review Unit ("CARU"), which is a unit of the Council

19  of Better Business Bureaus, to "place onerous restrictions on MGA advertisements, and require

20  MGA to amend aspects of commercials that have gone unchallenged in other parties'

21  commercials." Id. at ¶89.  As a result of CARU's restrictions, MGA allegedly incurred

22  unnecessary costs for reshooting and producing or re-editing its commercials. Id. at ¶90.

23       MGA also alleges on information and belief that Mattel's subsidiary, Fisher Price,

24  "orchestrated" a change to the selection process for TIA's "Toy-of-the-Year Awards," which

25  allegedly resulted in a Fisher Price toy beating out "BRATZ Formal Funk Super Stylin' Runway

26  Disco." Id. at ¶¶92-96.  MGA also alleges on information and belief that one year "Mattel was

27

28

1  instrumental in attempting to keep MGA from participating as a sponsor in the 'Kids' Choice
2  Awards.'" Id. at ¶97.
3      As a result of Mattel's alleged conduct described above, MGA has allegedly suffered, and
4  unless abated, will continue to suffer lost sales, lost licensing fees, lost contracts, lost
5  relationships, lost business opportunities and other damages. Id. at ¶100. MGA also alleges that
6  its ability to enter new markets and product lines has been hampered and delayed. Id.
7  Furthermore, MGA alleges that "[i]ts production costs have increased, its reputation and
8  relationships with important players in the industry have been negatively impacted, the value of
9  its business has been diminished, and its ability to attract, hire and retain employees has been
10  affected." Id. Based upon the foregoing, MGA asserts claims for (1) false designation of origin
11  or affiliation in violation of 15 U.S.C. §1125(a); (2) unfair competition in violation of 15 U.S.C.
12  §1125(a) and unfair competition and unfair business practices in violation of Cal. Bus. & Prof.
13  Code §17200 et seq. and California common law; (3) dilution in violation of 15 U.S.C. §1125(c),
14  Cal. Bus. & Prof. Code §14330 and California common law; and (4) unjust enrichment.
15              MGA's First Set of Requests for Production of Documents
16      On November 22, 2006, MGA propounded one hundred fifteen (115) document requests
17  seeking discovery regarding, among other things: (a) Mattel's alleged copycatting efforts and
18  activities with respect to Bratz and other MGA product lines; (b) anti-competitive business
19  practices allegedly carried out by Mattel; and (c) any similar or related activities. In response,
20  Mattel objected to many requests primarily on the grounds that they were overly broad and
21  unduly burdensome. Mattel agreed, however, to produce documents responsive to many of the
22  requests.
23      The parties met and conferred in person on March 9, 2007. MGA's counsel demanded
24  that Mattel withdraw all objections based on relevance. Alger Decl. in Support of Mattel's
25  Opposition at ¶7. Mattel's counsel responded that Mattel was producing responsive documents
26  and would continue to produce responsive documents, but had concerns over the "lack of focus
27
28

EXHIBIT 4 PAGE 21    6

1   and infinite scope" of MGA's document requests. Id. Mattel's counsel suggested that MGA

2   narrow the requests to "those products, retailers, licensees, and time frames that MGA has put at

3   issue in its Complaint and response to interrogatories." Id. MGA's counsel, however, rejected

4   the proposal. Id.

5        A few days later, counsel for MGA sent Mattel's counsel a letter offering several

6   suggestions for limiting the requests. Glad Decl. in Support of MGA's Motion, Ex. 1. In

7   particular, MGA stated that "it would be amenable to certain limitations on the number and

8   identities of custodians whose files must be searched, so long as Mattel is willing to accept

9   reciprocal accommodations for MGA's own document review." Id. Mattel did not respond to the

10  letter, and the instant motion ensued.

11                                  III. STANDARDS

12       Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

13  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

14  party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not

15  permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

16  2004) ("District courts need not condone the use of discovery to engage in 'fishing

17  expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

18  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

19  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

20  the phrase "subject matter involved in the pending action," were intended to target discovery that

21  swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

22  litigate the issues presented by the pleadings but to develop new claims or defenses.). Further,

23  pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit discovery where "the burden or

24  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

25  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

26  the litigation, and the importance of the proposed discovery in resolving the issues."

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

**EXHIBIT 4 PAGE 22** [7]

# IV. DISCUSSION

## A. General Objections

MGA contends that Mattel has improperly withheld documents based on three generalized objections.  First, MGA contends that Mattel has asserted an objection based upon relevance to requests that are not related to facts specifically alleged in MGA's complaint.  MGA contends the objection is improper because it essentially grafts a heightened pleading standard onto discovery requests, is inconsistent with the standard for discovery set forth in Rule 26(b), Fed.R.Civ.P., and goes against the very purpose of discovery.  MGA denies "fishing" for new claims, contending that it is seeking discovery tending to support or refute existing claims.

Second, MGA contends that Mattel has improperly refused to produce "documents related to MGA's BRATZ dolls unless the documents are 'in the context' of Mattel's BARBIE or MY SCENE products."  MGA's Motion at 9:10-11.  MGA contends that all of the documents related to Bratz that it seeks are relevant, regardless of whether they refer to or contemplate Barbie or My Scene.  In particular, MGA contends that documents related to Bratz, even if they do not refer to Barbie or My Scene, are relevant to its claims that (1) Mattel has exerted pressure on licensees not to license Bratz products; (2) Mattel has exerted pressure on retailers or distributors not to distribute Bratz products; (3) Mattel has tampered with Bratz displays; and (4) Mattel intentionally copied Bratz products.

Third, MGA contends that Mattel has improperly limited its production of My Scene documents to only those documents related to the specific acts of product and packaging infringement identified in MGA's complaint.  MGA contends that it is entitled to far more, including documents concerning potential acts of infringement not mentioned in the complaint and documents concerning the development of the My Scene product line from inception of this suit to the present.  In particular, MGA contends that documents concerning the current development of My Scene may tend to show continuing infringement, and therefore are relevant to prove that Mattel's conduct is willful.

**EXHIBIT 4 PAGE 23**

1     Mattel contends that it has produced documents in response to many of MGA's requests,

2  and will continue to do so.  Mattel objects, however, to those requests that require Mattel to

3  produce virtually every document, anywhere in the world, that mentions MGA, Larian, Bratz, or

4  any other MGA product.  Mattel contends that MGA is engaging in an improper fishing

5  expedition, casting its requests so broadly as to require production of documents relating to

6  products and entire product lines that are irrelevant to the suit.  Mattel also contends that the

7  requests are overbroad because they seek documents about subjects such as quality and pricing

8  which do not appear anywhere in MGA's pleadings.  Id.  Furthermore, Mattel contends that

9  MGA's requests are not linked in any manner to MGA's claims in the suit and do not reference

10  any particular alleged wrongdoing by Mattel.

11     Mattel also contends that responding to MGA's document requests would impose a

12  considerable, unjustifiable burden on Mattel.  Mattel emphasizes that it is a large company, with

13  over 140 subsidiaries and affiliates in approximately 43 different countries.  Mattel represents that

14  it has over 5,000 employees in the United States and more than 25,000 employees at subsidiaries

15  and affiliates worldwide.

16     Mattel also represents that its products are sold in thousands of stores.  It represents that it

17  deals with Wal-Mart, Target, K-Mart, and Toys "R" Us on a daily basis, and that these four

18  retailers have more than 4,500 stores in the United States.  Mattel also represents that it deals with

19  many hundreds more retailers domestically and overseas.  Further, Mattel represents that it has

20  relationships with more than 1,400 licensees and licensors.

21     Mattel also represents that the toys it produces vary widely, including collectible card

22  games, electronic handheld devices, toy cars, and the Barbie doll line.  Mattel asserts that it

23  introduces annually more than 2,000 different types of toys, dolls and other products in more than

24  150 nations throughout the world.  Mattel asserts that many products often involve the creation of

25  many categories of documents relating to design, marketing, consumer and market research,

26  planning, engineering, cost, manufacturing, distribution, sales and finance.  Mattel represents that

27

28

EXHIBIT 4 PAGE 24                    9

1   these types of documents are stored on Mattel's over 800 computer servers worldwide, and that

2   countless others are stored in hardcopy or stored on individual employees' desktop computers and

3   laptops.  Furthermore, Mattel represents that many of its network systems, including its e-mail

4   system, are not readily searchable, or searchable at all, by use of keyword terms.  For example,

5   Mattel asserts that the computer system used by Mattel's designers and engineers overwhelmingly

6   consists of graphical files whose content cannot be searched by keywords.

7        Mattel estimates that MGA and its products are referenced in millions of pages of

8   documents and computer files at Mattel.  More specifically, Mattel contends that many groups

9   across Mattel, such as marketing, consumer research, sales, finance, human resources and safety

10  testing, have documents that refer or relate to MGA or its products in some way.  Mattel also

11  contends that a large volume of this information is from third party analysts and third party

12  sources, including retail sales reports that track doll sales across the entire industry, newspaper

13  and magazine articles, commercials and advertisements.  Mattel also represents that it collects

14  great quantities of documents about its competitors that are readily available on the Internet or

15  other public sources, including catalogs, advertising, press releases, and media reports, and from

16  retailers and distributors throughout the world.

17        Furthermore, Mattel represents that its documents, particularly its marketing and sales

18  research documents, often reference many competing products, not just the Bratz dolls at issue.

19  Mattel contends that these types of documents would be difficult to search and collect because, in

20  many instances, the only way to determine whether a particular document mentions Bratz would

21  be to review the entire document.

22        Mattel contends that virtually any employee at Mattel might have documents that are

23  responsive to MGA's requests.  Mattel estimates that "to locate all such documents would take

24  years, cost millions of dollars, and seriously interfere with the operation of Mattel's business."

25  Mattel's Opposition at 17.  Matter also asserts that "[s]uch efforts – including search of Mattel's

26  servers, its employees' computer workstations, hard copy files, computer disks, and video files –

27

28

EXHIBIT 4 PAGE 25

10

1  would be in addition to the cost of attorney review of the materials before they are produced in

2  litigation." Id.  Mattel also contends that the burden and expense of production is multiplied

3  several times further if Mattel is required to search the files in the possession of its worldwide

4  subsidiaries.

5      Mattel contends that even if the search for responsive documents could be accomplished,

6  the resulting document production would provide MGA with countless documents with little or

7  no relevance.  For example, Mattel anticipates that many documents would be discussions of the

8  competition in the context of irrelevant dolls, such as any number of mainline Barbie dolls.

9  Mattel contends that other documents would simply be third party market reports which are

10 equally available to MGA from public sources.  Accordingly, Mattel requests that the motion be

11 denied in full.

12     In its reply, MGA counters that the requests are not unduly burdensome.  MGA contends

13 that contrary to Mattel's assertions, the requests are factually self-limited, containing restrictive

14 language and defining the outer parameters for the documents sought.  Furthermore, MGA

15 contends that it told Mattel that it would be amenable to certain limitations on the number and

16 identities of custodians whose files must be searched, so long as Mattel was amenable to

17 reciprocal accommodations for MGA's own document review.  MGA contends that, at a

18 minimum, Mattel should be required to search the physical and electronic files of its employees.

19 MGA contends that Mattel should not be released wholesale from its discovery obligations based

20 on a purported burden, particularly when it failed to work with MGA in good faith to mitigate that

21 burden.

22     Lastly, MGA argues that any burden to Mattel is outweighed by the benefit to be secured

23 from the discovery.  MGA contends that it "realistically has no other way of obtaining documents

24 tending to support its claims that Mattel engaged in a pattern of conduct with suppliers,

25 distributors, licensees and others constituting unfair competition except from Mattel."  MGA's

26

27

28

EXHIBIT 4 PAGE 26

1    Reply at 10.  Therefore, MGA believes that the benefits of the discovery it seeks are

2    immeasurable and that in contrast, the burden to Mattel is not unreasonable.[1]

3    B. Document Requests

4         In addition to the three general objections described above, Mattel has asserted other

5    objections to certain categories of document requests which MGA contends are improper.  The

6    general objections stated above, as well as the additional objections asserted by Mattel, are

7    reviewed herein in the context of the nine categories of document requests at issue.

8                     1. Document Request Nos. 32-33, 61

9         Request nos. 32, 33 and 61 seek production of communications with sales personnel,

10   merchandisers and retailers relating to alteration of displays or retail spacing of MGA products

11   other than Bratz.  MGA contends that the documents it seeks are relevant to the allegation in

12   paragraph 79 of its complaint that "Mattel merchandisers have been caught tampering with

13   MGA's displays, replacing favorably located MGA merchandise with Mattel merchandise

14   instead."  In its reply brief, MGA clarifies that it "seeks information tending to show that at any

15   time after June 2001, Mattel sales personnel tampered with, or directed others to tamper with,

16   MGA's in-store displays."  MGA's Reply at 8.

17        During the meet and confer process, Mattel agreed to produce documents responsive to

18   request nos. 32-33 and 61 insofar as they related to displays, retail spacing, or shelf space for

19   Bratz, but refused to produce responsive documents relating to any other MGA products.  Glad

20   Decl. in Support of MGA's Motion, Ex. 1.  Mattel contends that request nos. 32 and 33 are

21   overbroad and unduly burdensome insofar as they require production of communications relating

22   to displays, retail spacing, or shelf-space for any other MGA products.  Mattel views the requests

23   as a directive to "go out and find, review and produce essentially all of its retailer

24   _____

25        [1] In a footnote, MGA mentions that Mattel has also withheld documents relating to conduct occurring
     outside of the United States, and that this issue will be addressed in a separate motion.  MGA's Motion at 10, n. 29.

26   Nothing in this Order is intended in any way to permit or foreclose discovery relating to conduct occurring outside of
     the United States.

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT 4 PAGE 27          12

1  communications about any 'change' in any 'display' or any 'retail spacing' for any MGA

2  product." Mattel's Opposition at 10. Mattel contends that MGA, not Mattel, should bear the

3  burden of identifying specific incidents of alleged tampering, and thereafter Mattel will attempt to

4  find and produce pertinent documents relating to those incidents. Id.

5      Mattel also contends that request no. 61 is overbroad and amounts to an improper fishing

6  expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA

7  product, whether or not they have anything to do with anything placed at issue by MGA. Mattel's

8  Opposition at 7-8. Mattel also contends that the request has no linkage to any possible consumer

9  confusion between Bratz and My Scene or between the other products mentioned in MGA's

10  complaint or MGA's responses to Mattel's contention interrogatories. Id. at 8.

11      Request nos. 32, 33, and 61 seek documents relevant to MGA's allegation that "Mattel

12  merchandisers have been caught tampering with MGA's displays, replacing favorably located

13  MGA merchandise with Mattel merchandise instead." MGA's allegation of tampering is broader

14  than just Bratz products, and therefore, Mattel's objection to producing responsive documents for

15  MGA products other than the Bratz line is overruled.

16      Further, the requests are not unduly burdensome. Request nos. 32 and 33 are limited to

17  communications between Mattel and its sales personnel and merchandisers relating to alterations

18  of display or retail spacing for MGA products, and therefore do not require Mattel to search for

19  documents from every single one of its employees. Request no. 61 is also reasonably tailored to

20  seek relevant information, requiring production of communications between Mattel and any

21  retailer, sales person or merchandiser referring or relating to the allocation of shelf space, altering

22  of retail displays, or placement of Bratz in retail stores, including but not limited to

23  communications concerning the placement of "Bratz" relative to My Scene. Contrary to Mattel's

24  assertion, request no. 61 does not require Mattel to search for virtually all documents that mention

25  MGA, Larian, Bratz, or any other MGA product, whether or not they have anything to do with

26  anything placed at issue by MGA. Instead request no. 61 is clearly limited to a defined category

27

28

**EXHIBIT  4  PAGE 28**

1   of communications with certain individuals and/or entities regarding a defined subject matter. In

2   addition, MGA indicates in its reply brief that it seeks documents and communications from June

3   2001 forward. With this temporal limitation, MGA's motion is granted as to request nos. 32, 33

4   and 61.

5                              **2. Document Request Nos. 37-39**

6         Request nos. 37 through 39 call for production of Mattel's communications with CARU

7   relating to MGA and restrictions to be placed on MGA, as well as documents supporting Mattel's

8   allegation in its answer that MGA violated CARU standards. MGA contends that the documents

9   it seeks relevant to its allegation in paragraph 89 of its complaint that "Mattel used its

10   influence as a major contributor to CARU's budget to induce CARU to place onerous restrictions

11   on MGA advertisements, and to require MGA to amend aspects of commercials that have gone

12   unchallenged in other parties' commercials."

13         In its opposition brief, Mattel represents that is prepared to produce documents that bear

14   on MGA's claims and Mattel's defenses involving CARU, but nothing further. Mattel contends

15   that the sweep of these requests "goes far beyond any particular advertisements or the allegations

16   in MGA's complaint that Mattel pressured CARU or obtained better treatment different than

17   MGA." Mattel's Opposition at 10. Furthermore, Mattel contends that the requests are improper

18   because CARU investigates complaints and claims in confidence.

19         MGA's request nos. 37 and 39 seek information relevant to MGA's allegation that Mattel

20   influenced CARU to place restrictions on MGA's advertisements. The Federal Rules of Civil

21   Procedure do not require MGA to identify every instance when CARU imposed restrictions or

22   required amendments to MGA's advertisements before propounding discovery on the subject.

23         Request no. 38 is much broader, however, seeking all communications between Mattel

24   and CARU referring or relating to MGA, Larian, Bratz, or MGA products. Request no. 38 is not

25   limited to the subject of MGA's advertisements, or any other subject that is at issue in the case.

26   Further, request no. 38 is, to a certain extent, cumulative of request nos. 37 and 39.

27

28   

**EXHIBIT 4 PAGE 29**   14

1    Accordingly, MGA's motion is granted with respect to request nos. 37 and 39, but denied

2   as to request no. 38.

3                              3. Document Request No. 43

4    Request no. 43 seeks documents relating to any attempts by Mattel to price My Scene

5   below Bratz.  MGA contends that the documents it seeks are likely to lead to admissible evidence

6   relating to whether Mattel has an "organic process" for setting prices, or whether it set prices

7   based on confidential information obtained from MGA.  MGA's Motion at 13:22.

8    Mattel contends that there is no allegation in MGA's complaint of below-market pricing.

9   Further, Mattel contends that the request is overbroad and seeks documents that have no relevance

10   to any other subject matter in suit.

11    Request no. 43 seeks documents that have no relevance to any claim or defense in the

12   case.  There is no allegation in MGA's complaint related to below-market pricing.  Nor is there

13   any allegation that Mattel misappropriated confidential pricing information from MGA.

14   Accordingly, MGA's motion is denied as to request no. 43.

15                              4. Document Request No. 47

16    Request no. 47 calls for production of documents relating to Mattel's communications

17   with buyers, merchandisers, general merchandise managers, or retailers relating to whether MGA

18   was giving any other U.S. retailer below-market pricing or whether MGA was discontinuing one

19   of its product lines.  MGA contends that these documents are relevant to the allegation in

20   paragraph 79 of its complaint that "Mattel has falsely told a major United States retailer that

21   MGA was giving another major United States retailer below-market pricing and falsely told a

22   United Kingdom retailer that MGA was discontinuing one of its lines."

23    Mattel contends that request no. 47 is improper because it demands documents about

24   "alleged statements to an unidentified retailer and an unidentified toy line" without giving Mattel

25   "a hint as to where to look in order to perform a good-faith search for documents."  Mattel's

26   Opposition at 12.

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

**EXHIBIT 4 PAGE 30**

15

1       Request no. 47 seeks documents relevant to MGA's allegation that Mattel made a false

2   representation to a major United States retailer that MGA was giving another retailer below-

3   market pricing, and falsely told a United Kingdom retailer that MGA was discontinuing a product

4   line. The Federal Rules of Civil Procedure do not require MGA to identify the businesses to

5   whom Mattel allegedly made the false statements as a precondition to propounding discovery.

6   Nor is MGA required to identify every instance in which Mattel allegedly made such false

7   representations before propounding discovery.  Nevertheless, the request is extremely broad and

8   burdensome, requiring Mattel to search for "all documents referring or relating to any

9   communications between Mattel" and buyers, merchandisers, general merchandise managers, or

10  retailers referring or relating to whether MGA was giving another United States retailer below-

11  marketing pricing, or whether MGA was discontinuing one of its lines.  To alleviate some of the

12  burden to Mattel, the request is hereby limited to require production of only Mattel's

13  communications with any buyers, merchandisers, general merchandise managers or retailers

14  about MGA providing below-market pricing or MGA discontinuing a product line.  With this

15  limitation, MGA's motion is granted as to request no. 47.

16      <u>5. Document Request Nos. 48 – 50</u>

17      Request nos. 48 through 50 essentially seek all documents referring or relating to Mattel's

18  communications with any buyers, merchandisers, general merchandise managers, retailers,

19  suppliers, licensees, and potential licensees, referring or relating to Bratz, Larian or MGA

20  regarding the origins, design, development, product launch, sales, promotions, advertising,

21  quality, or price of Bratz or any other MGA product.  During the meet and confer, Mattel agreed

22  to produce some, but not all, responsive documents.  In particular, Mattel objected to producing

23  documents relating to the pricing of Bratz or any MGA product.  Mattel also objected to

24  producing documents relating to Bratz unless the documents also referenced Mattel's My Scene

25  or Barbie products.

26

27

28  **EXHIBIT 4 PAGE 31**   16

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1    MGA contends that these documents are relevant to its allegation that Mattel interfered

2    with its business dealings with third parties.  In its reply brief, MGA asserts that it seeks

3    documents and communications between Mattel and certain third parties "from June 2001 tending

4    to support or refute MGA's assertions that Mattel interfered with MGA's dealings with such

5    parties by providing false or misleading information concerning MGA products, the ownership of

6    'Bratz' and exerting pressure on these parties not to license or sell MGA products."  MGA's

7    Reply at 8.

8        Mattel contends that these requests are overbroad and amount to an improper fishing

9    expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA

10   product, whether or not they have anything to do with anything placed at issue by MGA.  Mattel's

11   Opposition at 7-8.  Mattel also contends that the requests have no linkage to any possible

12   consumer confusion between Bratz and My Scene or between the other products mentioned in

13   MGA's complaint or MGA's responses to Mattel's contention interrogatories.  Id. at 8.

14       This category of requests is clearly overbroad, requiring production of documents that

15   merely mention MGA, Larian, Bratz or other MGA products, regardless of whether or not they

16   have anything to do with the claims and defenses in the case.  MGA has not made any attempt to

17   link these requests to any of the numerous and far-ranging allegations of unfair competition set

18   forth in its complaint.  Instead MGA makes a very generalized argument that the requests seek

19   information relevant to its allegation that Mattel interfered with MGA's business dealings with

20   third parties.  Furthermore, Mattel has carried its burden of establishing that the burden and

21   expense of complying with the requests far exceed their likely benefit, taking into account the

22   needs of the case.  Accordingly, MGA's motion is denied as to request nos. 48 through 50.

23                        6. Document Request Nos. 51 – 55

24       This category of document requests requires production of essentially all documents

25   referring or relating to any communications between Mattel and any public relations firms,

26   members of the press, current or former MGA employees, or former Mattel employees, relating to

27

28

EXHIBIT 4 PAGE 32 17

1  Bratz, Larian, or MGA regarding the origins, design, development, product launch, sales,

2  promotions, advertising, quality, or price of Bratz or any other MGA product.  During the meet

3  and confer process, Mattel agreed to produce some, but not all responsive documents.

4      MGA contends that these documents are relevant to its allegations that Mattel has engaged

5  in serial imitation of MGA products in an attempt to dilute their distinctiveness and create

6  confusion in the marketplace.  MGA also contends that these documents are likely to lead to

7  admissible evidence relating to the creation and ownership of Bratz, Mattel's knowledge and

8  awareness of Bratz products and marketing and its attempt to imitate those products and dilute

9  their distinctiveness.

10     Mattel contends that these requests are overbroad and amount to an improper fishing

11 expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA

12 product, whether or not they have anything to do with anything placed at issue by MGA.  Mattel's

13 Opposition at 7-8.  Mattel also contends that the requests have no linkage to any possible

14 consumer confusion between Bratz and My Scene or between the other products mentioned in

15 MGA's complaint or MGA' responses to Mattel's contention interrogatories.  Id. at 8.

16     Like the previous category of requests, this category of requests is grossly overbroad,

17 requiring production of documents that merely mention MGA, Larian, Bratz or other MGA

18 products, regardless of whether or not they have anything to do with the claims and defenses in

19 the case.  MGA has not made any attempt to link these requests to any of the allegations of unfair

20 competition set forth in its complaint or to the responses it provided to Mattel's contention

21 interrogatories.  Furthermore, Mattel has carried its burden of establishing that the burden and

22 expense of complying with these requests far exceed their likely benefit, taking into account the

23 needs of the case.  Accordingly, MGA's motion is denied as to request nos. 51-55.

24                    7. Document Request Nos. 56 – 58

25     This category of requests requires production of all documents relating to business

26 dealings between any licensee, supplier, manufacturer, retailer, distributor, or merchandiser and

27

28

**EXHIBIT  4  PAGE 33**

18

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1    MGA. MGA contends that these document requests are specifically tailored to documents in

2    Mattel's possession, custody or control concerning MGA's business dealings with licensees,

3    suppliers, manufacturers, retailers, distributors, or merchandisers, and are directly relevant to its

4    claims that Mattel interfered with MGA's business dealings with third parties.

5         Again, Mattel contends that these requests are overbroad and amount to an improper

6    fishing expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other

7    MGA product, whether or not they have anything to do with anything placed at issue by MGA.

8    Mattel's Opposition at 7-8. Mattel also contends that the requests have no linkage to any possible

9    consumer confusion between Bratz and My Scene or between the other products mentioned in

10   MGA's complaint or MGA' responses to Mattel's contention interrogatories. Id. at 8. Mattel

11   also objects to request nos. 57 and 58 insofar as they require Mattel to produce documents that

12   refer "explicitly or implicitly" to business dealings involving MGA.

13        Like the previous two categories of document requests, this category of requests is grossly

14   overbroad. Request nos. 56 and 57 require production of documents referring or relating to

15   MGA's business dealings, without specifying any products or other subject matter limitations.

16   Request no. 58 is narrower, but is unreasonable insofar as it requires Mattel to produce documents

17   that refer "explicitly or implicitly" to business deals involving MGA's Bratz or other products.

18   Furthermore, Mattel has carried its burden of establishing that the burden and expense of

19   complying with the requests far exceed their likely benefit, taking into account the needs of the

20   case. Accordingly, MGA's motion is denied as to request nos. 56 through 58.

21             8. Document Request Nos. 59, 60, 62-63, 99, 101

22        This category of requests requires production of all documents relating to (a) any

23   interference with or inhibition of the licensing or potential licensing of MGA's products, or

24   relating to any limitations or restrictions on any MGA licensee (request nos. 59, 62-63); (b) any

25   third party's licensing or potential licensing of MGA products (request no. 60); and (c)

26   communications between Mattel and MGA's licensees and distributors referring to MGA, Bratz

27

28   EXHIBIT 4 PAGE 34

1    or the claims in this lawsuit (request nos. 99, 101).  MGA contends that the documents it seeks are

2    relevant to its allegation that Mattel exerted its influence on retailers and other third parties not to

3    do business with MGA.

4         Mattel contends that request nos. 59, 60, 62 and 63 are overbroad, seeking all documents

5    that might bear on MGA's business without identifying any particular business dealings.  Mattel

6    also contends that they are overbroad insofar as they require production of all documents related

7    to "any MGA PRODUCT world wide," where "product" is defined as "each image, character,

8    logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been

9    manufactured, marketed or sold by MGA or others under license."  Mattel's Opposition at 9.

10        Mattel also contends that request nos. 99 and 101 are overbroad and amount to an

11   improper fishing expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or

12   any other MGA product, whether or not they have anything to do with anything placed at issue by

13   MGA.  Mattel's Opposition at 7-8.  Mattel also contends that the requests have no linkage to any

14   possible consumer confusion between Bratz and My Scene or between the other products

15   mentioned in MGA's complaint or MGA' responses to Mattel's contention interrogatories.  Id. at

16   8.

17        Request nos. 59, 60, 62, and 63 seek information relevant to MGA's allegations, including

18   among others, that Mattel "warned a number of companies, including the biggest publishing

19   entity in the United Kingdom, not to license MGA products, or risk retribution," and that Mattel

20   "terminated one of its licensees, apparently in retribution for licensing Bratz."  MGA's Complaint

21   at ¶76.  They are also reasonably tailored to require production of only those documents and

22   communications that refer or relate to interference with or inhibition of the licensing or potential

23   licensing of MGA's products, that refer or relate to any limitations or restrictions on any MGA

24   licensee, and that refer or relate to any third party's licensing or potential licensing of MGA

25   products.  Mattel has not established that searching for theses types of responsive documents is

26   unduly burdensome.  Therefore, MGA's motion is granted as to request nos. 59, 60, 62 and 63.

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

**EXHIBIT  4  PAGE  35**  [20]

1    In contrast, however, request nos. 99 and 101 are overbroad, requiring Mattel to search for

2    and produce all documents referring or relating to communications between Mattel and any MGA

3    licensee or distributor that refer or relate to MGA, Bratz, this lawsuit, other litigation involving

4    the parties or their employees, claims by MGA against Mattel or claims by Mattel against MGA

5    or its employees.  For example, the requests would potentially require production of documents

6    that merely mentioned MGA and Bratz but that otherwise have no relevance to the claims and

7    defenses in the suit.  Therefore, MGA's motion is denied as to request nos. 99 and 101.

8                              9. Document Request Nos. 64, 65, 66, 67

9    This category of requests requires production of all documents relating to (a) any third

10   party's agreement or decision not to license, manufacture, promote, distribute or sell MGA

11   products or supply materials or services to MGA, or to limit, restrict, curtail or reduce such

12   activities (request nos. 64-65); and (b) any interference with or inhibition of the supply of goods

13   or services to MGA, or of MGA's distribution of its products (request nos. 66-67).  MGA

14   contends that these documents are relevant to its claims that Mattel interfered with MGA's

15   business dealings with distributors, retailers, and other third parties, as alleged in paragraphs 76-

16   79 of its complaint.

17   Mattel contends that these requests are overbroad, seeking all documents that might bear

18   on MGA's business without identifying any particular business dealings.  Mattel also contends

19   that they are overbroad insofar as they require production of all documents related to "any MGA

20   PRODUCT world wide," where "product" is defined as "each image, character, logo, doll, toy,

21   accessory, product, packaging or other thing or matter that is or has ever been manufactured,

22   marketed or sold by MGA or others under license."  Mattel's Opposition at 9.

23   These requests seek information relevant to MGA's allegation that Mattel interfered with

24   its business dealings.  In particular, MGA has alleged that Mattel "warned a number of

25   companies, including the biggest publishing entity in the United Kingdom, not to license MGA

26   products, or risk retribution," and that Mattel "terminated one of its licensees, apparently in

27

28

1    retribution for licensing Bratz." MGA's Complaint at ¶76. MGA's requests are reasonably

2    calculated to lead to information relevant to this allegation. Although the definition of product is

3    broad, the definition does not render the requests overbroad because they are otherwise limited in

4    subject matter. Further Mattel has failed to establish that it is unduly burdensome to search for

5    and produce documents responsive to this category of requests. Therefore, MGA's motion is

6    granted as to request nos. 64, 65, 66, and 67.

7                          10. Document Request Nos. 102-104

8           This category of requests requires production of Mattel's communications with three

9    companies referring to MGA, Bratz or Larian. MGA contends that these documents are relevant

10   to its claims that Mattel interfered with its business dealings with third parties.

11          Mattel now represents that it will produce communications with Nickelodeon that bear on

12   MGA's allegation regarding sponsorship of the 2005 Kids Choice Awards. Mattel contends,

13   however, that communications with Cartoon Network or 4kids Entertainment are not relevant to

14   any claim or defense in suit.

15          Mattel's communications with Nickelodeon regarding MGA, Bratz or Larian are relevant

16   in light of MGA's allegation that Mattel was "instrumental in attempting to keep MGA from

17   participating as a sponsor in the 'Kids' Choice Awards.'" Id. at ¶97. Therefore, MGA's motion

18   is granted as to request nos. 102. In contrast, MGA has failed to establish that similar

19   communications with Cartoon Network and 4kids Entertainment are relevant to a claim or

20   defense in suit. Therefore, MGA's motion is denied as to request nos. 103 and 104.

21   //

22   //

23   //

24

25

26

27

28

EXHIBIT 4 PAGE 37                    22

## V. CONCLUSION

For the reasons set forth above, MGA's motion to compel is granted in part as to document request nos. 32 ( as modified), 33 (as modified), 61 (as modified), 37, 39, 47 (as modified) , 59, 60, 62, 63, 64, 65, 66, 67, and 102, and denied in part as to document request nos. 38, 43, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 99, 101, 103 and 104.  MGA's request for sanctions is denied.  Mattel shall produce responsive documents as set forth above no later than June 15, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, MGA shall file this Order with the Clerk of Court forthwith.

Dated: May 22, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

EXHIBIT 4 PAGE 38

23

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 22, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL DOCUMENTS RESPONSIVE TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DATED NOVEMBER 22, 2006 in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 22, 2007, at San Francisco, California.

ANTHONY SALES

EXHIBIT 4 PAGE 39

# EXHIBIT 5



1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                          EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12              Plaintiff,

13       v.                                Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15              Defendant.                 ORDER GRANTING IN PART AND
                                           DENYING IN PART MGA'S MOTION
16                                         TO COMPEL MATTEL TO
                                           SUPPLEMENT RESPONSES AND
17                                         PRODUCE DOCUMENTS
                                           RESPONSIVE TO FIRST SET OF
18                                         REQUESTS FOR PRODUCTION OF
                                           DOCUMENTS AND THINGS;
19                                         DENYING REQUEST FOR
                                           SANCTIONS
20
    CONSOLIDATED WITH
21  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v. MATTEL,
22  INC.

23

24

25

26

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

Exhibit  7 , P. 216       **EXHIBIT 5 PAGE 40**

## I. INTRODUCTION

On July 3, 2007, MGA Entertainment, Inc. ("MGA") submitted its "Motion to Compel Mattel, Inc. ("Mattel") to Supplement its Responses and Produce Documents Responsive to MGA's First Set of Requests for the Production of Documents and Things dated January 31, 2005" (the "Requests") in the Mattel v. Bryant case. On July 16, 2007, Mattel submitted an opposition brief and served its Second Supplemental Responses to MGA's Requests. On July 26, 2007, MGA submitted a reply brief.[1] The matter was heard on September 11, 2007. Having considered the motion papers and the comments of counsel at the hearing, MGA's motion to compel is granted in part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

On January 31, 2005, MGA propounded its Requests, which consisted of 332 separate requests for, *inter alia*, (a) documents relating to Bryant, his employment, the property MGA allegedly misappropriated, and Mattel's decision to sue; (b) documents generally concerning the agreements Mattel alleges Bryant breached and the fiduciary duties of similarly situated Mattel employees; (c) MGA's Bratz dolls, including comparisons to Mattel products and evidence that Bryant created, developed, or reduced the Bratz idea to practice during his employment with Mattel; and (d) documents relating to allegations in Mattel's complaint, including damages. Burr Decl., Ex. 1. Mattel served its responses on March 3, 2005, which consisted entirely of objections. Burr Decl., Ex. 2. Most notably, Mattel objected to many of the Requests as duplicative of requests that Bryant had previously propounded and to which Mattel had already responded to by stating it would produce documents.

---

[1] After MGA filed its reply brief, Mattel filed several "supplemental declarations" in support of its Opposition to MGA's motion to compel, which it contends addressed several arguments raised for the first time in MGA's reply brief. On August 22, 2007, MGA submitted a letter brief requesting that the supplemental declarations be stricken and not considered. The next day, Mattel submitted a letter brief asserting that the request to strike should be denied on procedural and substantive grounds, and in the alternative, requesting leave to file the "supplemental declarations." MGA's request to strike the "supplemental declarations" is denied, and Mattel's request for leave to file the "supplemental declarations" is granted.

Exhibit 7, P. 216    EXHIBIT 5 PAGE 41

1    Thereafter, the case was stayed while one of the parties pursued an interlocutory appeal.

2    When the stay was lifted, the parties met and conferred regarding the Requests. Although they

3    were not able to resolve all of their disputes, Mattel apparently confirmed to MGA that it "had

4    already produced documents and would continue to produce documents on the subjects that

5    duplicated Bryant's requests in a manner that was consistent with Mattel's earlier responses."

6    Mattel's Opposition at p.9. In January of 2007, Mattel served supplemental responses to 48

7    Requests ("Supplemental Responses"). Burr Decl., Ex. 3.

8        MGA and Mattel met and conferred again on March 27, 2007. Mattel reiterated that

9    MGA's Requests were duplicative of Bryant's requests. Mattel also contended that MGA's

10   Requests were duplicative of other MGA requests served on November 22, 2006. A few days

11   later, MGA sent a follow-up letter to Mattel identifying the Requests it contended were not

12   duplicative of other requests. Burr Decl., Ex. 5. MGA also sent another letter asking Mattel to

13   confirm whether it would supplement its responses and proposing that Mattel provide such

14   responses by April 10, 2007. When no response was received, on July 3, 2007, MGA filed the

15   instant motion to compel Mattel to supplement its responses to the Requests.

16       MGA contends that Mattel's boilerplate objections, including objections based upon

17   relevance, overbreadth and burden, "vague and ambiguous," and/or "duplicative" are all improper

18   because Mattel has failed to provide any explanation for its objections, much less any evidentiary

19   support for its objections. In addition, MGA contends that Mattel has failed to substantiate its

20   objection that certain Requests are purportedly "duplicative" of other requests. Lastly, MGA

21   contends that Mattel has failed to fulfill its obligation to supplement its responses to the Requests

22   with sufficient information for MGA to determine exactly which documents exist, do not exist,

23   have been produced, or otherwise will not be produced. MGA contends that without the required

24   supplementation, it lacks any means to ascertain the state of Mattel's discovery compliance.

25   Therefore, MGA seeks a court order overruling each of Mattel's objections and compelling

26   Mattel to supplement its responses and produce any remaining documents responsive to MGA's

27   Requests.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    3

Exhibit __7__, P. _217_

EXHIBIT __5__ PAGE __42__

1    On July 16, 2007, Mattel submitted its opposition to the instant motion, its Second
2  Supplemental Responses to MGA's Requests, and its Corrected Second Supplemental Responses
3  to MGA's Requests (hereinafter collectively referred to as "Second Supplemental Responses").
4  Mattel contends that MGA filed the instant motion without completing the meet and confer
5  process and without identifying which responses are purportedly deficient.  Mattel contends that
6  in any event, there is no genuine dispute as to many of the Requests that are the subject of MGA's
7  motion to compel.  Mattel contends that during the meet and confer process, Mattel told MGA
8  that it had already produced documents and would continue to produce documents on the subjects
9  that duplicated Bryant's requests in a manner that was consistent with Mattel's earlier responses.
10  Mattel represents that it has been producing documents it can locate after a reasonable search, and
11  that its Second Supplemental Responses confirm which documents it has been producing in
12  response to 45 out of the 72 Requests at issue.  Mattel also represents that it has produced in
13  excess of 100,000 pages of documents and has offered to make vast quantities of electronic data
14  available for review, inspection, and copying, including electronic data from Mattel's Zeus
15  computer system tapes.  As to the remaining Requests at issue, Mattel stands by its objections that
16  they are overbroad and unduly burdensome.

17    In its reply brief, MGA acknowledges Mattel's Second Supplemental Responses, but
18  contends that they remain inadequate for several reasons.  First, MGA contends that Mattel
19  persists in its objections even for those Requests to which Mattel has agreed to produce
20  responsive documents.  In particular, MGA takes issue with Mattel's continuing objection that the
21  Requests are "duplicative" of other requests propounded by Bryant or MGA.  Therefore, MGA
22  seeks a court order overruling each of Mattel's purportedly baseless objections.  Second, MGA
23  contends that Mattel continues to refuse to collect and produce documents in response to 28
24  Requests that are clearly relevant to the claims and defenses in the case.  Third, MGA contends
25  that Mattel improperly refuses to conduct a "reasonable search for documents," including a search
26  of its Zeus file server and backup tapes of the Zeus server.  MGA's Reply at p.2.  Therefore,
27  MGA seeks an order compelling Mattel to search the Zeus file server and backup tapes for
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

Exhibit _7_, P. _218_          EXHIBIT _5_ PAGE _43_

1  responsive documents at Mattel's expense. Finally, MGA anticipates that Mattel will withhold

2  responsive documents as long as possible to prejudice MGA's ability to prepare for depositions

3  and trial, and therefore should be ordered to complete its production forthwith.

4                                   III. STANDARDS

5         Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

6  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

7  party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

8  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

9  Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P.

10  26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not

11  condone the use of discovery to engage in 'fishing expeditions.'"); Bethstein v. Travelers Ins.

12  Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note

13  to Amendments Effective December 1, 2000) (Congress's changes in the language of Rule 26(c),

14  substituting the words "claim or defense" for the phrase "subject matter involved in the pending

15  action," were intended to prevent discovery that swept far beyond the claims and defenses of the

16  parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to

17  develop new claims or defenses.).

18         Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

19  extent of use of the discovery methods if the court determines that "(i) the discovery sought is

20  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

21  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

22  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

23  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

24  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

25  the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

26  26(b)(2).

27  //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    5

Exhibit  7  , P.  219           EXHIBIT  5  PAGE  44

<b>IV. DISCUSSION</b>

**I. Requests Concerning Bryant, Bryant's Employment, and Mattel's Decision to Sue Bryant**

   **a. Requests seeking documents relating to Mattel's decision to sue Bryant and the timing thereof, any Mattel decision not to sue Bryant, and any Mattel decision as to the litigation against MGA or involving Bratz (Nos. 172-174, 188 and 190)**

   In Request Nos. 172-174, MGA seeks documents related to Mattel's Board of Directors' resolution to litigate regarding Bryant, MGA or Bratz. In Request Nos. 188 and 190, MGA seeks all documents related to "any decision [to sue or not to sue] Bryant."

   MGA contends that documents responsive to Request Nos. 172-174, 188, and 190 are relevant to Bryant's and MGA's defenses based upon the statute of limitations, laches, waiver, and mitigation of damages. MGA contends that during the meet and confer process, Mattel agreed to produce documents responsive to Request Nos. 172-174 and 188, however, the documents have not been produced.

   Mattel represents that it has already produced the Board of Directors meeting minutes that are responsive to Request Nos. 172-174, and that other meeting minutes that have been withheld or redacted for privilege have been placed on a privilege log. Mattel's Opposition at p.32. Mattel objects to Request Nos. 188 and 190 on the grounds that they seek information protected by the attorney-client privilege and/or the work product doctrine. Moreover, Mattel contends that the documents are irrelevant, asserting that Mattel's reasons for suing Bryant have no bearing on the merits of Mattel's claims or MGA's defenses thereto. Nevertheless, Mattel acknowledges that documents responsive to Request Nos. 188 and 190 might be relevant to MGA's statute of limitations and laches defenses. Mattel contends, however, that it has "already agreed to produce documents related to the first time Mattel became aware that Bryant was involved with the creation of Bratz" (Mattel's Opposition at p.33), and that these documents are far more relevant than documents responsive to Request Nos. 188 and 190.

   In its reply, MGA contends that contrary to Mattel's representations, it has not produced non-privileged documents responsive to Request Nos. 172-174. To ensure production, MGA's

Exhibit _7_, P. _220_

**EXHIBIT _5_ PAGE _45_**

1   motion is granted as to Request Nos. 172-174.  Any responsive documents withheld on the basis

2   of a privilege must be identified on a privilege log.

3        Like Request Nos. 172-174, Request Nos. 188 and 190 seek documents that are relevant to

4   MGA's defenses, including the statute of limitations and laches because the documents might

5   establish when Mattel first considered taking legal action against Bryant.  That Mattel believes it

6   has produced documents that are more relevant to MGA's and Bryant's defenses (regarding when

7   Mattel became of aware of Bryant's involvement with the creation of Bratz) does not excuse

8   Mattel from complying with Request Nos. 188 and 190.  If responsive documents are protected by

9   the attorney-client privilege or work product doctrine, Mattel must identify such documents on a

10  privilege log.  MGA's motion is granted as to Request Nos. 188 and 190.

11            **b. Requests seeking documents pertaining to Bryant's work at Mattel, e.g., the
              terms of his employment, job duties and responsibilities; his work at Mattel,**

12            **including the projects he worked on, days and hours worked, with time and
              data entries; phone records; and vacation absence records (Nos. 180-183 and**

13            **258)**

14       In Request No. 180, MGA seeks all documents mentioning, referring or relating to Bryant,

15  including but not limited to Bryant's personnel file and all documents on Mattel's Zeus computer

16  system that mention Bryant.  In Request No. 181, MGA seeks all documents constituting,

17  evidencing, referring to, or reflecting Bryant's work at Mattel, including the projects he worked

18  on.  In Request No. 182, MGA seeks all documents "evidencing the days and hours Bryant

19  worked for Mattel, including all time entries and data on Mattel's 'P2' computer system, and all

20  records reflecting the days and hours Bryant was on vacation or leave of absence."  In Request

21  No. 183, MGA seeks all documents "reflecting records of all phone calls Bryant placed and

22  received and all facsimiles Bryant sent and received during his employment at Mattel."  In

23  Request No. 258, MGA seeks all documents relating to Bryant's employment including, without

24  limitation, documents reflecting the period and conditions of the employment, the terms of the

25  employment, and his job duties and responsibilities.

26       MGA contends that Request Nos. 180-183 and 258 seek information that is clearly

27  relevant to support or refute Mattel's claims, and that Mattel has improperly refused to produce

28

1  responsive documents based upon an array of objections. MGA acknowledges, however, that

2  Mattel has produced Bryant's personnel file, telephone records through September 2000 and some

3  additional responsive documents. Despite this production, MGA continues to seek phone records

4  from October 2000, when Bryant was still working at Mattel.

5       Mattel's Second Supplemental Responses confirm that it will produce documents

6  responsive to all of the Requests in this category except Request No. 180. MGA's motion is

7  granted as to Request Nos. 181-183 and 258 to establish a deadline for completing production.

8       With respect to Request No. 180, Mattel represents that it has "repeatedly offered to make

9  Zeus backup tapes, and other electronic data, available to MGA on mutually agreeable terms."

10 Mattel's Opposition at p.23. Further, Mattel contends that pursuant to Rule 26(b)(2)(B),

11 Fed.R.Civ.P., it is not required to search its Zeus file server data and backup tapes because such

12 an endeavor would be unduly burdensome and costly. Mattel explains that its Zeus system is an

13 immense computer system consisting of 50 terabytes of electronic files that is largely used by

14 Mattel designers and engineers and overwhelmingly consists of graphical files whose content

15 cannot be searched by keywords. Mattel's Opposition at p.20. Further, Mattel represents that it

16 does not have the necessary hardware to restore or search the Zeus backup tapes. Mattel's

17 Opposition at p.25, n. 98.

18      In its reply brief, MGA counters that Mattel has mischaracterized its Zeus system.

19 According to MGA, Mattel's 30(b)(6) witness, Julia Marine, testified that Zeus' directory

20 structure is organized with top-level folders and various levels of subfolders; that individual

21 Mattel employees are each given a home folder and can create subfolders; and that when an

22 employee leaves the company, the folders set up by that employee are not deleted by Mattel's IT

23 department. MGA's Reply at p.9. Therefore, MGA believes it is possible to search the Zeus

24 server for responsive documents by simply locating the folders of relevant departments and

25 employees. Furthermore, MGA suspects that Mattel should be able to conduct a keyword search

26 of file names, even if the contents of the files consist of graphical images.

27      MGA also contends that Mattel has failed to satisfy its burden of showing that a search of

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                           8

Exhibit  7 , P.  222

EXHIBIT  5  PAGE  47

1   its backup tapes for the Zeus server would be unduly burdensome.  Although MGA acknowledges

2   Mattel's representation that it does not have the hardware for searching the backup tapes, MGA

3   contends that Mattel "does not identify any unreasonable cost associated with such a review."

4   MGA's Reply at p.10.

5          Mattel has failed to make the requisite showing that the information on the Zeus system

6   and backup tapes "is not reasonably accessible because of undue burden or cost." Fed.R.Civ.P.

7   26(b)(2)(B).  MGA has suggested a few reasonable methods for searching the Zeus system based

8   upon the deposition testimony of Julia Marine.  For example, Mattel could search its system for

9   folders of relevant departments and employees.  Mattel could apply a keyword search to locate

10  file names for potentially responsive documents.[2]  Further, Mattel has not attempted to quantify

11  the burden and expense of obtaining the necessary hardware to restore or search the backup tapes,

12  whether in terms of time, financial costs, labor, or otherwise.[3]  Therefore, MGA's motion is

13  granted as to Request No. 180.[4]

14              **c. Documents relating to Bryant's involvement with work on Bratz or for
                 MGA, and relating to any activities of Bryant other than his work for Mattel**
15              **(Nos. 186-187, 260)**

16         MGA contends that Request Nos. 186-187 and 260 seek documents relevant to Mattel's

17  claims against Bryant and Bryant's defenses thereto.  MGA contends that Mattel has improperly

18

19         [2] Indeed, in its supplemental submissions, Mattel clarifies that it has conducted searches for Zeus file

20  names by keyword.  Supp. Zeller Decl. at ¶3.

21         [3] Rather, the information Mattel has provided suggests that searching the backup tapes is not unduly

22  burdensome.  In a declaration filed after the reply brief, counsel for Mattel, Mr. Zeller, represents that "vendors
    retained by Mattel's counsel, as well as other electronic discovery vendors I am familiar with, have the hardware and
    other data needed to read the Zeus backup tapes and in fact can read them."  Mattel's Notice of Lodging Regarding
23  Mattel's Opposition to MGA's Motion to Compel, Ex. 2, ¶14.  Further, Mr. Zeller states, "[a]s Mattel's 30(b)(6)
    designee Julia Marine also confirmed, one simply needs to buy the tape drives to read these tapes [citation omitted],
24  which Mattel's vendors have done."  Id.

25         [4] The parties have a general disagreement over whether Mattel has an obligation to search the Zeus system
    and backup tapes for documents responsive to all of MGA's Requests, not just Request No. 180.  See MGA's Reply
26  at pp. 18-20.  As explained above, Mattel has failed to carry its burden of proving that searching the Zeus system and
    backup tapes is unduly burdensome or costly.  Therefore, to the extent MGA's motion to compel is granted as to
27  other Requests herein, Mattel shall conduct a reasonable search of the Zeus system and backup tapes to locate
    responsive documents.

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                        9

                          Exhibit 7, P. 223

                 **EXHIBIT 5 PAGE 48**

1   mentioning, describing, discussing, referring or relating to all communications with Anna Rhee

2   that refer or relate to the Bratz concept, the First Bratz dolls or Bryant's work for MGA." Zeller

3   Decl., Ex. 8.

4        MGA contends that the requested documents are relevant to Mattel's claims that Bryant

5   converted, used, sold, assigned or transferred property that Mattel supposedly owns.  Further,

6   MGA contends that the requested documents are relevant to Bryant's defenses based on the

7   statute of limitations, laches, and waiver because the documents could show when Mattel first

8   became aware of Bryant's relationship with MGA.  MGA also contends that these Requests are

9   "self-limiting to subject matters of direct relevance to this litigation."  MGA's Reply at p.8.

10       Mattel's Second Supplemental Responses confirm that it will produce responsive

11  documents, with two qualifications.  First, Mattel agrees to search for and produce only

12  documents that pertain to matters at issue, and not just because they reference MGA.  Mattel's

13  Opposition at p.34.  Second, Mattel agrees to produce the communications with the various

14  individuals identified in the Requests, but not all documents referring or relating to all

15  communications.  Id.

16       Request Nos. 224-249 seek information relevant to the claims and defenses in the case.

17  They are limited to communications with certain key individuals (Anna Rhee, Margaret Leahy,

18  Margaret Leahy's husband, Victoria O'Connor, Ramona Prince, Lilly Martinez, Ron Longsdorff,

19  Matt Bosquette, Adrienne Fontanella, Tim Kilpin, Sujata Luther, Alan Kaye, and Veronica

20  Marlowe), as well as limited in subject matter.  Documents relating to the communications are

21  also relevant to the claims and defenses in the case, and Mattel has failed to establish that the

22  burden of producing responsive documents outweighs their likely benefit under Rule 26(b)(2),

23  Fed.R.Civ.P.  MGA's motion is granted as to Request Nos. 224-249.

24       **f. Hard drives and backup data for all computers used by Bryant while**
           **employed by Mattel (Request No. 268)**

25

26       In Request No. 268, MGA seeks "[a]ll hard drives and back-up data, no matter how

27  stored, for all computers used by Bryant while employed by Mattel, to the extent such drives and

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11.

Exhibit  7 , P.  225

EXHIBIT  5  PAGE 50

1   back-up data contain data made or accessed by, sent to or received by Bryant." Supp. Zeller

2   Decl., Ex. 4.

3       Mattel contends that issues regarding Bryant's Mattel computer "have long been settled."

4   Mattel's Opposition at p.16. Mattel explains that Bryant claimed at his deposition that he was

5   "computer illiterate," that he had never created any files on any Mattel computers, and that he did

6   not use them for his design work. Id. Further, Mattel represents that when Bryant requested such

7   hard drives, Mattel told him that it would produce any hard drives for computers used by Bryant

8   while at Mattel that could be located. Id. Mattel asserts that it has yet to identify a computer

9   Bryant has used, and that Bryant and MGA have not offered any meaningful information that

10  would assist Mattel in locating one. Mattel represents that Bryant's computer will be produced if

11  and when it is located.

12      Mattel's Second Supplemental Responses confirm that Mattel will produce Bryant's

13  computer if and when it is located. MGA's motion is granted as to Request No. 268 to ensure

14  Mattel's compliance if and when Bryant's computer is located.

15  2. Documents concerning the agreements that Mattel alleges were breached by Bryant and the
    fiduciary duties of persons employed by Mattel in the same or similar capacity as Bryant

16

17          a. Documents from 1997 to the present relating to Mattel's form "Employee
            Confidential Information and Inventions Agreement" and "Conflict of
18          Interest Questionnaire," and negotiations with any employee or prospective
            employee concerning those agreements (Nos. 281-282 and 284-285)
19

20      In Request Nos. 281 and 284, MGA seeks all versions of Mattel's form "Employee

21  Confidential Information and Inventions Agreement" and Mattel's form "Conflict of Interest

22  Questionnaire," and all documents referring or relating to these agreements, including documents

23  related to any negotiations regarding these agreements and Mattel's enforcement of such

24  agreements. In Request Nos. 282 and 285, MGA seeks all documents referring or relating to

25  negotiations regarding these agreements.

26      MGA contends that the documents it seeks are central to Mattel's claim that Bryant

27  breached the two agreements and Bryant's defenses thereto, including Bryant's contention that

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    12

Exhibit __7__, P. __226__

EXHIBIT 5 PAGE 51

1  in the case, which Mattel implicitly conceded by producing various iterations of the two

2  agreements.  As narrowed, the Requests are not overbroad or unduly burdensome because they no

3  longer call for production of documents "mentioning, discussing, describing, referring or relating

4  to" the two agreements and any and all documents involving negotiations concerning these

5  agreements.  That MGA has already deposed a few witnesses regarding the two agreements does

6  not preclude MGA from obtaining documentary evidence on the same subject.  Therefore,

7  MGA's motion is granted as to Request Nos. 281-282 and 284-285, as narrowed by MGA.

8             **b. Documents created after January 4, 1999, concerning the activities of any**
             **Mattel employee in connection with the creation of any property, doll or toy**
9             **for anyone other than Mattel; Mattel's employment policies/contracts**
             **governing the extent to which a part-time or temporary employee may work**
10            **for himself or other companies while also employed by Mattel (Nos. 262-267)**

11           In Request Nos. 262-263, MGA seeks all documents created after January 4, 1999 that

12  evidence, relate or refer to any activities of any current or former Mattel employee performed,

13  while such person was employed by Mattel, in connection with the conception, creation, design or

14  development of any intellectual property, doll, or toy done for or at the request of any company,

15  entity, or person other than Mattel.  In Request Nos. 264-265, MGA seeks all documents that

16  constitute, describe, mention, refer or relate to Mattel's policy regarding part-time or temporary

17  employment at Mattel.  In Request Nos. 266-267, MGA seeks all documents that constitute,

18  describe, mention, refer, or relate to Mattel's policy regarding part-time or temporary employment

19  at Mattel including, without limitation, all documents, agreements, and contracts that describe,

20  discuss, govern, control, regulate, or limit how and to what extent a person employed part-time at

21  Mattel is allowed, or not allowed, to work for himself or herself or other companies or entities,

22  including MGA, while employed by Mattel.

23           MGA contends that Bryant worked for Mattel on a part-time basis in 1998, and that

24  Request Nos. 262-267 seek relevant documents concerning Mattel's employment policies for

25  part-time and temporary employees, including any restrictions on their abilities to work elsewhere

26  while employed by Mattel.  MGA contends that the requested documents are directly relevant to

27  Mattel's breach of contract claims against Bryant and Bryant's defenses thereto, and therefore all

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                                            14

Exhibit _7_, P. _228_          **EXHIBIT _S_ PAGE _53_**

1   responsive documents should be produced.

2           Mattel represents that it has produced various iterations of agreements and policies applied

3   to part-time and temporary Mattel employees.  Mattel contends, however, that each of the

4   Requests in this category is overbroad to the extent they seek any additional documents.  For

5   example, Mattel contends that the Requests are broad enough to encompass documents

6   concerning subjects such as health benefits and vacation leave that have no conceivable bearing

7   on the case.  Further, Mattel contends that the burden of searching for all responsive documents is

8   outweighed by the marginal benefits of the responsive documents.  In fact, Mattel contends that

9   the requested documents are not relevant at all because Bryant claims to have conceived Bratz

10  after he was a part-time employee.  Mattel's Opposition at p.30.

11          Request Nos. 262 and 263 are overbroad.  As written, these requests would potentially

12  require Mattel to review documents relating to all of its many thousands of current and former

13  employees in order to find evidence that an employee conceived, created, designed or developed

14  any intellectual property or doll or toy for at the request of any company or person other than

15  Mattel.  Even if Mattel succeeded in finding such documents, the burden and expense of

16  conducting such a search outweigh the likely benefit of the documents.  Therefore, MGA's

17  motion is denied as to Request Nos. 262 and 263.

18          In its reply brief, MGA agrees to narrow the remaining Requests in this category as

19  follows:

20          Request No. 264:  DOCUMENTS sufficient to identify all iterations of MATTEL'S
            policy regarding part-time employment at MATTEL.

21

22          Request No. 265:  DOCUMENTS sufficient to identify all iterations of MATTEL'S
            policy regarding temporary employment at MATTEL.

23          Request No. 266:  All DOCUMENTS, including agreements and contracts, that describe,
            discuss, govern, control, regulate or limit how and to what extent a person employed part-
24          time at MATTEL is allowed, or not allowed, to work for him or herself or other
            companies or entities, including MGA, while employed by MATTEL.

25
            Request No. 267:  All DOCUMENTS, including agreements and contracts, that describe,
26          discuss, govern, control, regulate or limit how and to what extent a person employed part-
            time at MATTEL is allowed, or not allowed, to work for him or herself or other
27          companies or entities, including MGA, while employed by MATTEL.

28

Exhibit __7__, P. __229__     EXHIBIT __5__ PAGE __54__

1   MGA's Reply brief at p. 15.  As rewritten, these requests target documents that are relevant to

2   Mattel's breach of contract claims against Bryant and Bryant's defenses thereto.  MGA

3   anticipates that Mattel could argue at trial that Bryant conceived of Bratz while he was a part-time

4   employee.  The documents MGA now seeks through its narrowed requests are relevant to

5   establish Mattel's policies and contracts for part-time and temporary employment.  Nor are the

6   Requests unduly burdensome, taking into account the needs of the case, the amount in

7   controversy, the parties' resources, the importance of the issues at stake in the litigation, and the

8   importance of the requested documents in resolving the issues.  MGA's motion is granted as to

9   Request Nos. 264-267 as rewritten in MGA's reply brief.

10  **3. Documents concerning Bratz and the purported Mattel property that forms the basis of its
11  claims**

12              **a.  Documents concerning Bratz including any documents relating to the**
13              **similarities or differences between Bratz and any Mattel property or any**
                **property created by a Mattel employee that it contends served as a source or**
14              **origin for any Bratz concept or product (Nos. 259, 261, and 269)**

15

16          In Request No. 259, MGA seeks production of all documents that evidence, describe,

17  mention, refer, or relate to the similarity of any artwork created by any Mattel employee,

18  including but not limited to Bryant, prior to October 20, 2000, to Bratz.  In Request No. 261,

19  MGA seeks all documents created after January 4, 1999 that evidence, relate or refer to any

20  activities of any current or former Mattel employee performed in connection with the conception,

21  creation, design, or development of Bratz or Bratz intellectual property.  In Request No. 269,

22  MGA seeks all documents that constitute, evidence, describe, depict, refer or relate to any artwork

23  or other work product by Mattel that it contends Bryant used in connection with his creation of

24  anything for MGA, including without limitation, Bratz or Bratz intellectual property.

25          MGA contends that Request Nos. 259, 261, and 269 seek documents that are directly

26  relevant to Mattel's claims that Bryant converted, used, sold, assigned, or transferred property that

27  Mattel claims it owns; damages and causation; and Bryant's defenses, including those based on

28

Exhibit _7_, P. _230_

EXHIBIT _5_ PAGE _55_

1   statute of limitations, laches, waiver, and unclean hands.

2       Mattel's Second Supplemental Responses confirm that it will produce responsive

3   documents. More specifically, Mattel represents that it will produce the "prior art that lead to

4   Bratz." Mattel's Opposition at p.36. Mattel objects, however, to producing documents that do

5   not constitute "prior art," such as marketing, sales planning, engineering, electronics, and

6   programming of the voices of Mattel's Diva Starz line.

7       In its reply brief, MGA confirms that it is only seeking documents relating to the original

8   artwork or work product that Mattel claims Bryant copied, and is not seeking all documents

9   relating to the Diva Starz line. With this clarification, MGA's motion is granted as to Request

10  Nos. 259, 261, and 269.

11      **b. Documents discussing or mentioning Isaac Larian, Paula Treantafelles, or**
        **Mercedeh Ward, authored between June 2000 and October 2001 that**
12      **concern, support, or refute Mattel's contentions in this litigation (Nos. 44-46)**

13      In Request Nos. 44-46, MGA seeks all documents discussing or mentioning Isaac Larian,

14  Paula Treantafelles, or Mercedeh Ward authored between June 2000 and October 2001. Mr.

15  Larian is the President and CEO of MGA, and Ms. Treantafelles and Ms. Ward are former Mattel

16  employees who went to work for MGA and later helped develop the Bratz line. During the meet

17  and confer process, MGA agreed to limit Request Nos. 44-46 to documents that "concern, support

18  or refute Mattel's contentions in this litigation."

19      MGA contends that the requested documents are, at the very least, relevant to MGA's

20  statute of limitations and laches defenses. Further, MGA contends that Request Nos. 44-46 are

21  limited in scope to only documents authored between June 2000 and October 2001 and

22  concerning Mattel's contentions in this litigation. MGA therefore seeks an order compelling

23  Mattel to supplement its responses and produce responsive documents.

24      Mattel acknowledges that MGA offered to limit Request Nos. 44-46 to only documents

25  related to the current litigation, but construes MGA's current motion to compel as seeking

26  compliance with the Requests as originally written. Mattel contends that Request Nos. 44-46, as

27  originally written, are overbroad because there are no limitations on subject matter.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

Exhibit _7_, P. _231_

EXHIBIT _5_ PAGE _56_

1    MGA's motion papers make clear that it is not seeking compliance with Request Nos. 44-

2    46 as originally written. Instead, MGA stands by its offer during the meet and confer process to

3    limit the Requests to documents that "concern, support or refute Mattel's contentions in this

4    litigation." MGA's Motion at p. 19. As narrowed by MGA, Request Nos. 44-46 seek documents

5    relevant to the claims and defenses in the case and are limited in subject matter as well as in

6    temporal scope. MGA's motion is granted as to Request Nos. 44-46.

7

8    4. Documents concerning specific allegations set forth in Mattel's complaint and demands for
     related documents

9

10           a. Documents supporting, refuting or evidencing specific allegations set forth
             in Mattel's complaint (Nos. 296, 302-303, 306-307, and 329-330)

11

12    In these Requests, MGA seeks documents supporting, refuting, or evidencing specific

13    allegations in Mattel's complaint, including, among other things, documents related to (a)

14    Mattel's claims that the Employment Agreement and Conflict Questionnaire are valid,

15    enforceable contracts; (b) Mattel's allegations of damages and harm; and (c) Mattel's allegation

16    that Bryant "used and diverted" Mattel resources and opportunities. MGA also seeks documents

17    depicting the intellectual property allegedly owned by Mattel and relating to ownership of that

18    property.

19           Mattel's Second Supplemental Responses confirm that it agrees to produce responsive,

20    non-privileged documents. MGA's motion is granted as to Request Nos. 296, 302-303, 306-307,

21    329-330.

22           b. Documents evidencing whether persons who are or were employed by
             Mattel in the same or similar capacity as Bryant are or were subject to the
23           same duties and responsibilities that Bryant was allegedly subject to, as
             alleged in Mattel's complaint (Nos. 309, 311, 313, 315, 317, 320, 323)

24

25    In these Requests, MGA seeks all documents evidencing that persons who are or were

26    employed by Mattel in the same or similar capacity as Bryant: hold or held positions of trust and

27    confidence with Mattel (No. 309); had or have access to Mattel's proprietary and confidential

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    18

Exhibit  7 , P. 232

EXHIBIT  5  PAGES 7

1  information (No. 311); were or are entrusted with Mattel's proprietary and confidential

2  information (No. 313); supervised or supervise the work of others (No. 315); exercised or

3  exercise discretion in their job assignments and duties (No. 317); worked or work independently

4  in their job assignments and duties (No. 320); and represented or represent Mattel in its dealings

5  with third parties (No. 323).

6       MGA contends that these Requests are directly relevant to Mattel's allegations in the

7  complaint that Bryant held a position of trust, had access to and was entrusted with Mattel's

8  proprietary and confidential information, supervised the work of others, exercised discretion and

9  worked independently for many of his job assignments and duties, and represented Mattel in its

10  dealings with third parties.  Further, MGA contends that documents pertaining to Mattel's

11  employees other than Bryant are likely to lead to admissible evidence relating to whether Mattel

12  ordinarily views employees in Bryant's position as fiduciaries.

13       Mattel represents that it has already agreed to produce responsive documents insofar as

14  Bryant is concerned.  Mattel, however, objects to the Requests as overbroad and unduly

15  burdensome to the extent they require production of documents pertaining to other persons who

16  are or were employed "in the same or similar capacity as Bryant," which Mattel interprets to

17  mean all of its "designers."  Mattel represents that in El Segundo, it currently employs over 320

18  individuals for the Barbie line alone, not including former employees or designers on other dolls

19  or toys.  Given the size of Mattel's work force, Mattel contends that the burden of production far

20  outweighs any marginal relevance of the responsive documents.

21       In its reply brief, MGA contends that Mattel's objections are based upon a strained

22  interpretation of the phrase "same or similar capacity as Bryant."  In MGA's view, Bryant was a

23  "low-level, salaried employee" at Mattel.  MGA's Reply at p.17.  MGA, however, does not offer

24  an alternative definition for persons employed in the "same or similar capacity as Bryant,"

25  arguing instead that only Mattel is capable of identifying a narrower group of employees.

26       MGA's motion is denied as to this last category of Requests.  The Requests are overbroad

27  and MGA has not offered to narrow the scope of the Requests to a reasonable number of Mattel

28

Exhibit  7 , P. 253

EXHIBIT  5  PAGE 58

1  employees.

2  ## V. CONCLUSION

3  For the reasons set forth above, it is hereby ordered as follows:

4      1.    Mattel's objections, except as to privilege, are overruled.

5      2.    Mattel shall produce all non-privileged responsive documents, to the extent they

6  have not already been produced, for the following Requests: Nos. 44-46 (as narrowed by MGA),

7  172-174, 180-183, 186-188, 190, 224-249, 258-261, 264-267 (as narrowed by MGA), 268-271,

8  281-282 (as narrowed by MGA), 284-285 (as narrowed by MGA), 296, 302-303, 306-307, and

9  329-330.  If no additional non-privileged responsive documents exist, Mattel shall provide such

10  confirmation in writing as to each request.

11      3.    Mattel shall conduct a reasonable search for documents responsive to the Requests

12  identified above, including a search for responsive documents in the Zeus server and back-up

13  tapes.[5]

14      4.    Mattel shall complete its production of all non-privileged responsive documents in

15  accordance with this Order no later than September 28, 2007.

16      5.    MGA's motion ~~to compel is denied as to Requests~~ Nos. 262-263, 309, 311, 313,

17  315, 317, 320 and 323.

18      6.    MGA's request for sanctions is denied.

19  Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

20  Master, MGA shall file this Order with the Clerk of Court forthwith.

21

22

23  Dated: September 12, 2007

24  HON. EDWARD A. INFANTE (Ret.)

25  Discovery Master

26

27  [5] The parties shall further meet and confer to establish parameters for conducting a reasonable search of the

28  Zeus system and backup tapes.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

20

Exhibit 7, P. 234     **EXHIBIT 5 PAGE 59**

<u>PROOF OF SERVICE BY E-MAIL</u>

I, Sandra Chan, not a party to the within action, hereby declare that on September 12, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL MATTEL TO SUPPLEMENT RESPONSES AND PRODUCE DOCUMENTS RESPONSIVE TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendall@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburn@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 12, 2007, at San Francisco, California.

_Sandra Chan_
Sandra Chan

Exhibit __7__, P. __235__

EXHIBIT __5__ PAGE __60__