QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | REPLY IN SUPPORT OF MATTEL, INC.'S *EX PARTE* APPLICATION TO COMPEL THE APPEARANCE FOR DEPOSITION OF ANA CABRERA, BEATRIZ MORALES, MARIA SALAZAR, AND MEL WOODS |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | Date:   February 4, 2008<br>Time:   10:00 a.m.<br>Place:   Courtroom 1 |
| | **Phase 1**<br>Discovery Cut-off:   January 28, 2008<br>Pre-trial Conference:   April 21, 2008<br>Trial Date:   May 27, 2008 |

07209/2374757.1

**<u>Preliminary Statement</u>**

There is no dispute that Mattel only learned at Veronica Marlow's deposition on December 28 2007 that three more of its employees had been secretly working on Bratz dolls for the benefit of MGA from 2000 through 2005.  Nor do the Defendants dispute that Marlow's testimony is true.  Instead, Defendants argue that Mattel should be denied testimony from the direct participants in this misconduct because Mattel should have deposed these employees "immediately."  According to Defendants, Mattel should be punished for supposedly "delaying" for three weeks after Marlow's revelations to notice the depositions, and attributes this "delay" to the time Mattel took to investigate her allegations against the employees.  Of course, three weeks was scarcely "delay," particularly when the holidays are considered.  And Mattel was obligated <u>not</u> to act precipitously in making a decision to terminate employees.  Once the employees admitted their misconduct during the investigation, Mattel immediately noticed their depositions.  The truth of the matter is that Mattel could have taken the depositions long before had this egregious misconduct not been long concealed by Defendants.

Second, Defendants attack the integrity of Mattel's internal investigation.  The Opposition is riddled with inaccuracies regarding how the investigation was done.  But, tellingly, Defendants do not even attempt to dispute the core fact that these Mattel employees secretly worked on Bratz for years and were illegally paid to do so.  Nor could they.  Furthermore, Defendants' very attempts to challenge the evidence by attacking Mattel themselves simply confirm that the depositions of the participants are warranted.

Mattel was unable to take these key depositions before the Phase I discovery cut off because of Defendants' improper conduct.  Indeed, each of these depositions would have taken place in January but for Defendants' interference.  Defendants should not be permitted to benefit by preventing this critical testimony

1  from being taken.  Mattel respectfully submits that the depositions should be

2  ordered to proceed forthwith.

3

4  **<u>Argument</u>**

5

6  **I.    <u>AN EX PARTE APPLICATION WAS APPROPRIATE HERE</u>**

7         As a preliminary matter, it was appropriate for Mattel to bring an *ex*

8  *parte* application here.  As noted in Mattel's application, the inability to depose these

9  witnesses has affected its ability to prepare for trial in Phase I.  Second, these

10 depositions clearly pertain at least in part to Phase I issues (Bratz ownership), and

11 the parties are now past the Phase I discovery cut-off.[1]  A regularly noticed motion

12 heard in late February or early March would, as Defendants have noted, place the

13 parties beyond the mediation and expert discovery deadlines.  Mattel only learned of

14 the need to obtain the testimony of these witnesses on December 28, 2007.  Mattel

15 would be seriously prejudiced if Defendants' suggestion that the depositions be

16 indefinitely deferred were adopted.  An *ex parte* application was the only

17 appropriate relief.[2]

18        Furthermore, the Order at issue was made by this Court.  Only this

19 Court can state its intentions in making that Order or, if necessary, modify the Order

20 to account for the belated disclosure of this wrongdoing.  Mattel respectfully

21 submits that no modification is needed, however, because the plain meaning of the

_____

23  [1]  These depositions also relate to Phase II in that, among other things, they
24  establish further acts of commercial bribery that are predicate acts in Mattel's RICO
    claims.
25  [2]  Defendants also filed an Opposition to Mattel's Supplement Regarding Mel
26  Woods yesterday, January 31, 2008.  This Opposition makes arguments that have no
    bearing on the issues in Mattel's application, and so will not be addressed here.
27  Mattel will be prepared to discuss these arguments at the hearing on Monday,
28  February 4, 2008, if the Court so wishes.

Order is that the depositions would be <u>additional</u> to the allotment of 24 which each of the parties have pursuant to the February 2007 Scheduling Order.[3]  The express purpose of the motion was to obtain *additional* depositions beyond the 24 that had been set by the prior Order.  Mattel has six remaining depositions available to it under that prior Order.  These four depositions would count against those six.

## II.   <u>FOLLOWING MARLOW'S TESTIMONY, MATTEL PROMPTLY INVESTIGATED THE ALLEGATIONS AND NOTICED THE DEPOSITIONS</u>

The Opposition criticizes Mattel for conducting an investigation before seeking to depose Cabrera, Morales, Salazar and Woods. (Opp. at 9.)  Mattel can hardly be faulted for conducting an investigation that commenced immediately after the December 28, 2007 Marlow deposition, and was concluded within two weeks.  With confirmation that the employees had engaged in willful wrongful conduct, their employment was terminated.  Within the following week, Mattel sought to serve the witnesses with deposition subpoenas.[4]  Mattel also promptly served Mel Woods, a former senior MGA executive, on January 15, 2008.[5]

---

[3]   In a separate application, Mattel has sought to compel additional depositions authorized pursuant to the January 7, 2008 Order.  MGA has responded to both that application and the present application in a single opposition.  To avoid any confusion that the combined opposition may cause, Mattel notes that the issues concerning the depositions which are the subject of the present application are authorized separately by the February 2007 Scheduling Order.

[4]   Mattel served Cabrera and Morales on January 16, 2008, and Maria Salazar on January 22, 2008.  Declaration of Cyrus S. Naim, filed on January 28, 2008, at Exhs. 5, 6, 7.  It should be noted that although MGA's counsel represents Salazar, they refused to acknowledge this fact or accept service on her behalf when asked during a January 13, 2008 phone call, and this delayed service of her subpoena.  Declaration of Michael T. Zeller, filed concurrently, at ¶ 2.

[5]   Declaration Of Cyrus S. Naim In Support Of Supplement To Mattel, Inc.'s Ex Parte Application To Compel The Appearance For Deposition Of Ana Cabrera,
   (footnote continued)

1    Mattel already would have deposed all these witnesses if MGA had not

2  filed its Motion to Quash.  MGA's actions prevented Mattel from conducting the

3  depositions during January.  Moreover, of course, the "delay" for which Mattel is

4  blamed would never have arisen if Defendants had not concealed this conduct

5  during earlier discovery in the first place.  Indeed, Defendants each made blanket

6  denials in response to specific questions seeking identification of Mattel employees

7  who worked on Bratz or for MGA.[6]  As set forth in Mattel's Supplement to the *Ex*

8  *Parte* Application, Carter Bryant denied being aware of any other Mattel employee

9  working for MGA while he or she was employed by Mattel.[7]  MGA's <u>Rule</u> 30(b)(6)

10  designee on this topic, Lisa Tonnu, identified no one as having performed work for

11  MGA while also employed by Mattel at any time since 1998.[8]  MGA's interrogatory

12  responses entirely failed to name either Ms. Cabrera or Ms. Morales as ever having

13  worked on Bratz and affirmatively misrepresented that Ms. Salazar did not work on

14  Bratz until more than two years after she left Mattel.[9]

15    The efforts to conceal this wrongdoing were not limited to discovery

16  responses.  The employees were secretly paid in cash, and also in false names with

17  false social security numbers.[10]  The clear intention was that neither the Court, the

18  _____

19  Beatriz Morales, And Maria Salazar, Regarding The Deposition Of Mel Woods,

20  filed January 30, 2008 ("Supp. Naim Dec."), Exhibit 3.

21  [6]  <u>See e.g.</u>, Bryant Depo. Tr. at 286:25-287:5, Supp. Naim Dec., Exh. 5; Tonnu
Depo. Tr. at 301:2-17, Supp. Naim Dec., Exh. 6; MGA's Supplemental Responses to

22  Mattel's Revised Third Set of Interrogatories, dated November 30, 2007, at 64-70,

23  Supp. Naim Dec., Exh. 7.

  [7]  Bryant Depo. Tr. at 286:25-287:5, Supp. Naim Dec., Exh. 5.

24  [8]  Tonnu Depo. Tr. at 301:2-17, Supp. Naim Dec., Exh. 6.

  [9]  MGA's Supplemental Responses to Mattel's Revised Third Set of
25  Interrogatories at 64-70, Supp. Naim Dec., Exh. 7.

26  [10]  Transcript of the interview of Ana Cabrera, dated January 2, 2008, at 118:3-
25, attached to the Declaration of Cyrus S. Naim in support of Mattel, Inc.'s Ex

27  Parte Application To Compel The Appearance For Deposition Of Ana Cabrera,

28  Beatriz Morales, And Maria Salazar, dated January 28, 2008 ("Naim Dec."), at

    (footnote continued)

U.S. Government, nor Mattel would ever learn the truth.  That Defendants were almost successful in concealing the wrongdoing until it was almost "too late" is hardly a good reason to prevent Mattel from taking the depositions now.

### III.  THE DETAILS OF MATTEL'S INVESTIGATION HAVE NO RELEVANCE TO MATTEL'S ENTITLEMENT TO TAKE THE DEPOSITIONS

The Opposition attempts to deflect attention from this blockbuster testimony by portraying the employees who deceived Mattel as sympathetic figures. For purposes of the application, the alleged point is unavailing.  If Defendants ultimately wish to contend that employees who knowingly and secretly work for a competitor—and received money for doing so—should have been treated differently, they are free to do so at another time.  For all the indignation in the Opposition, Defendants do not dispute that Cabrera, Morales and Salazar engaged in this wrongful conduct for the benefit of MGA.  Nor do they dispute that Woods will be able to testify on the issue of MGA's knowledge of this fact.

In a further attempt to divert attention from their own conduct, Defendants criticize Mattel's internal investigation as heavy handed and warranting "scrutiny." (Opp. at 9.)  For example, the Opposition suggests that the witnesses were denied access to counsel, but offer no authority or evidence that they were entitled to or even asked for counsel. (Opp. at 11.)  The claim that Mattel's head of security who conducted the investigation was working outside of Mattel for his own security firm is both irrelevant and incorrect.  De Anda did have such

_____

Exhibit 3; Transcript of the Interview of Beatriz Morales, dated January 14, 2008, at 115:2-20, Naim Dec., Exh. 4.

-5-

1   authorization.[11]  Nor is there any basis to criticize Mattel for conducting an

2   investigation to determine whether Marlow's testimony was accurate.  If Mattel had

3   acted solely on the basis of the testimony of Marlow—who knowingly made secret

4   payments amounting to commercial bribery under false social security numbers—

5   Mattel would no doubt be accused of acting arbitrarily.

6           If anything, defendants' lengthy discussion of the investigation only

7   serves to highlight the relevance of the testimony the witnesses will offer.  The

8   revelation that Bryant was not the only Mattel employee to work on Bratz dolls

9   while employed by Mattel—and indeed that they did so as recently as 2005—is

10  shocking.  That these Mattel employees continued to be paid for their work on Bratz

11  even after Mattel filed this action speaks volumes.  MGA's knowledge and

12  participation in this misconduct, its true scope and the issues MGA says it intends to

13  raise are all more than fair—and even crucial—matters for deposition.

14

15  **IV.   <u>MGA SHOULD NOT BE REWARDED FOR ITS OBSTRUCTIONIST</u>**

16          **<u>TACTICS</u>**

17  Finally, MGA argues that the discovery cut-off has passed, and thus that Mattel

18  should not be permitted to conduct the depositions.  MGA does not dispute that the

19  depositions were timely noticed, but that it caused them to be cancelled.  As the

20  Opposition explains on the eve of the depositions Defendants requested—but had

21  not received—a stay from the Discovery Master.  Such a request is not a good faith

22  basis to prevent a deposition pursuant to a properly served subpoena, and then claim

23  that such delay prohibits the taking of the deposition at all.

24

25

26

27       [11] Transcript of Richard De Anda, dated December 19, 2007, at 87:23-88:12, Zeller Dec., Exh. 1.  And, in any event, his work was as a private investigator—

28  hardly a business competitive with Mattel.

1  |  MGA apparently was well aware of this, because it wrote to Mattel
2  |  after it filed its Motion to Quash instructing *Mattel* to tell the witnesses that the
3  |  depositions were "off," rather than doing so itself.[12]  MGA knew who to contact so it
4  |  could cancel the depositions itself.  It was copied on the January 23, 2008 letter
5  |  from Cabrera and Morales' counsel informing Mattel of their representation,[13] and
6  |  shares counsel with Maria Salazar.  Similarly, <u>MGA's counsel did not disclose that it</u>
7  |  <u>represented Maria Salazar until the day before the deposition</u>—a Sunday evening at
8  |  5:00 p.m.—forcing Mattel to bear the costs of cancellation of the deposition.[14]
9  |  Mattel declined to follow MGA's instruction; yet none of the witnesses appeared.
10 |  But for MGA's obstructionist tactics, Mattel would have taken these
11 |  depositions in January, and MGA cannot use its own obstructionism to now claim it
12 |  is too late.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court order Ms. Cabrera, Ms. Morales, Ms. Salazar, and Mr. Woods to appear for their depositions.

DATED:  February 1, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By /s/ Michael T. Zeller
Michael T. Zeller
Attorneys for Plaintiff
Mattel, Inc.

---

[12]   Letter from Paul M. Eckles to Jon D. Corey dated January 24, 2008, Naim Dec., Exh. 9.

[13]   Facsimile from Maria Diaz to James Webster dated January 23, 2008, Naim Dec., Exh. 8.

[14]   Email from Paul M. Eckles to James Webster dated January 27, 2008, Naim Dec., Exh. 12.