QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| Defendant. | MATTEL, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION (1) TO COMPEL DEPOSITIONS OF DAPHNE GRONICH, JOE TIONGCO, MARIANA TRUEBA, PABLO VARGAS, MGA ENTERTAINMENT, INC. (PURSUANT TO RULE 30(B)(6)), AND MGAE DE MEXICO (PURSUANT TO RULE 30(B)(6)) AND (2) FOR LEAVE TO TAKE DEPOSITIONS IN FEBRUARY 2008 |
| AND CONSOLIDATED ACTIONS | |

Hearing Date: February 4, 2008
Time: 10:00 a.m.
Court Room: Honorable Stephen G. Larson

[Supplemental Declaration of Jon Corey filed concurrently herewith]

**Phase I**
Discovery Cut-off: January 28, 2008
Pre-trial Conference: May 5, 2008
Trial Date: May 27, 2008

07209/2374990.1

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION

**TABLE OF CONTENTS**

**Page**

Preliminary Statement ........................................................................................... 1

Argument ................................................................................................................ 2

I. MGA CONCEDES THAT IT PREVENTED MATTEL FROM COMPLETING DISCOVERY SUBJECT TO THE JANUARY 7 ORDER ............................................................................................ 2

II. THE COURT SHOULD NOT CHANGE ITS PREVIOUS RULINGS DECLINING TO BIFURCATE DISCOVERY .............................. 4

III. MGA'S ADMISSIONS REFLECT THAT PABLO VARGAS AND MARIANA TRUEBA ARE "MANAGING AGENTS" ...................... 4

IV. THE DEPOSITIONS OF DAPHNE GRONICH AND JOE TIONGCO WERE NOT RENDERED UNNECESSARY BY AN EARLIER RULE 30(b)(6) DEPOSITION ............................................................ 7

    A. MGA Does Not Dispute that Daphne Gronich and Joe Tiongco Are Important Witnesses ......................................... 7

    B. MGA Improperly Attempts to Reargue Mattel's Motion for Leave to Take Additional Discovery ........................................ 8

    C. MGA Misrepresents the Status of Daphne Gronich .............................. 9

Conclusion ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

In re Honda American Motor Co.,
  168 F.R.D. 535 (D. Md. 1966) .................................................................... 4, 5

Krauss v. Erie Railroad Co.,
  16 F.R.D. 126 (S.D.N.Y. 1954) ...................................................................... 7

Newark Insurance Co. v. Sartain,
  20 F.R.D. 583 (N.D. Cal. 1957) ..................................................................... 5

**Preliminary Statement**

MGA does not deny that a *party* to this litigation -- Gustavo Machado -- has refused to appear for deposition for months. MGA also does not dispute that it prevented Mattel from taking depositions for months through the artifice of filing last-minute motions and refusing either to provide addresses for its employee-witnesses or to accept subpoenas on their behalf. It also refused to stipulate to allow depositions of witnesses who -- for the witnesses' own reasons -- could not appear before January 28 to proceed thereafter. MGA attempts to justify this behavior by noting wryly that "it would be unusual if Mattel had not experienced some difficulties." (Opp. Mem. at 18:17-18).

Having created or at least exacerbated the problem, MGA asks for relief from having to engage in discovery because its 1000+ lawyer firm might have to "double-track" depositions for some days in February while trying to prepare for a late May trial. (Opp. Mem. at 3:20-21.) For good measure, MGA asks that Mattel be taken to task for its "abusive" practice of seeking to compel discovery that the Court has ordered but MGA has refused to provide.[1]

It is fundamental that cases should be decided on the merits rather than on the gamesmanship. Mattel produced its witnesses for deposition. It should be permitted to conduct the discovery it timely requested and was granted so that a verdict can be based on all relevant evidence rather than the tactics of opposing counsel.

---

[1] MGA ignores that there have been over 20 discovery Orders against MGA and its co-defendants as well as three Orders that have found MGA to be in deliberate violation of Court Orders, including orders on discovery related to the origins and creation of Bratz that defendants refused to produce.

**Argument**

I. **MGA CONCEDES THAT IT PREVENTED MATTEL FROM COMPLETING DISCOVERY SUBJECT TO THE JANUARY 7 ORDER**

MGA argues that "discovery cut-off dates are intended to serve a real purpose" (Opp. Mem. at 3:25-26), and the Court intended only to allow Mattel to "take as many of the depositions identified in the Court's January 7, 2008 Order as it could, subject to the January 28, 2008 cut-off date." (Opp. Mem. at 18:10-11) (emphasis supplied by MGA). MGA, however, engaged in a course of conduct to frustrate and prevent what the Court allowed. For example, neither MGA nor MGAE de Mexico objected to the deposition topics in the Rule 30(b)(6) deposition notices directed to MGA and MGAE de Mexico, which Mattel attached to its motion for leave to take additional discovery filed November 19, 2007. Because there was no controversy concerning the deposition topics, the January 7 Order had no need to address them, but found good cause for Mattel to take those depositions. After the Order issued MGA then declared for the first time that the Court "did not approve the specific topics set forth in those notices" (Opp. Mem. at 4:16) and, on the eve of the depositions, brought a motion to quash set for hearing after the Phase 1 discovery cut-off date.

MGA does not dispute that its Supplemental Initial Disclosures served September 21, 2007, did not provide addresses for numerous witnesses but declared, instead, that the witnesses "may be contacted through MGA's counsel of record." (emphasis added). Nonetheless, after the January 7 Order issued, MGA not only refused to accept subpoenas on their behalf, but also refused to disclose their addresses. Those witnesses included Mariana Trueba and Pablo Vargas -- witnesses whom MGA now claims "are separately represented by counsel." (Opp. Mem. at 17:18.) (As explained below, they are separately represented *only* in a criminal proceeding in Mexico; in this action, they continue to be represented *only* by MGA's

attorneys at Skadden, Arps.) MGA does not dispute that its refusal to provide addresses for its employee witnesses impeded Mattel's ability to depose them on or before January 28.

More significantly, MGA does not contest that it unilaterally prevented many depositions from going forward. For example, it does not dispute that it moved to quash or moved for a protective order as to 11 witnesses whose depositions Mattel had sought either pursuant to the February 12, 2007 Order or the January 7, 2008 Order. (Opp. Mem. at 4:11-15.)

MGA also refused to stipulate to allow February depositions for the convenience of ten witnesses who -- for their own reasons -- were unable to appear prior to January 28, 2008.[2] MGA now argues that if Mattel's application is granted, "the parties will be double-tracking depositions throughout February and likely into March." (Opp. Mem. at 3:21-22.) The claimed harm to MGA is that defending the depositions would prevent its attorneys at the Skadden, Arps firm, from engaging in "trial preparation, including mediation before Ambassador Prosper and the expert discovery phase." (Opp. Mem. at 4:1-3.) This is akin to killing one's parents and asking for mercy as an orphan. Had MGA simply cooperated in discovery, many depositions could have been completed during the week the parties were instead briefing this and other *ex parte* applications. In any event, given the number of offices and lawyers Skadden, Arps has committed to the litigation, it can surely proceed with depositions on a given February day while preparing for a late May trial. If MGA decides to cooperate now, the depositions will easily be completed.

---

[2] The ten witnesses were Jorge Castilla, Joyce Ng, Gentle Giant Studios, Wachovia Corporation, Moss Adams, Andreas Koch, Christensen Glaser, Amy Myers, Rachel Harris, and Kami Gilmour. Since Mattel filed its application, Jeff Weiss's father-attorney has advised Mattel that Mr. Weiss is also willing to appear for deposition. Supplemental Declaration of Jon D. Corey ("Supp. Corey Dec."), ¶ 2.

## II. THE COURT SHOULD NOT CHANGE ITS PREVIOUS RULINGS DECLINING TO BIFURCATE DISCOVERY

MGA's motive for refusing to cooperate in the scheduling of depositions is disclosed at page 4 of its papers: "The discovery Mattel seeks, which relates primarily to Phase II, should be deferred until after the Phase I trial." (Opp. Mem. at 4:3-5.) The request to bifurcate discovery is one that MGA has made repeatedly. Mattel has opposed MGA's request on every occasion. Repeatedly, after considering the parties' positions, the Court has ruled that discovery should *not* be bifurcated. Most recently, the Court explained in the January 7, 2008 Order that bifurcation "is fraught with the potential of unnecessarily compounding discovery disputes in a case already predisposed to such disputes."[3] MGA should not now be allowed to achieve by its own unilateral *fait accompli* that which the Court has repeatedly denied. The Court should allow Mattel to conduct in February the depositions MGA did not allow it to conduct in January.

## III. MGA'S ADMISSIONS REFLECT THAT PABLO VARGAS AND MARIANA TRUEBA ARE "MANAGING AGENTS"

MGA concedes that Mattel set forth the correct standard for determining who is a "managing agent." However, MGA ignores the overarching principle that "doubt[s] about an individual's status as a 'managing agent,' at the pre-trial discovery stage, are resolved in favor of the examining party." In re Honda American Motor Co., 168 F.R.D. 535, 540 (D. Md. 1966) (citing cases).

The deposition of Susana Kuemmerle, the Vice President of MGA Mexico, given January 28, 2008, establishes that Ms. Trueba and Mr. Vargas are "managing agents." Mr. Vargas and Ms. Trueba were sufficiently important to MGAE de Mexico that Isaac Larian personally extended employment offers to

them.[4] Even though they live in Mexico, they were offered substantial six-figure incomes (calculated in U.S. dollars), together with guaranteed severance packages, performance bonuses, vacation bonuses, Christmas bonuses, a car allowance, and other benefits.[5] Mr. Vargas has "approximately 8, 9" people who report to him as Director of Sales, and Ms. Trueba is responsible for handling all "media, public relations."[6] The upper management of MGAE de Mexico was "so tight of a group" that Ms. Kuemmerle, Ms. Trueba, Mr. Vargas and Gustavo Machado "were all forced to multitask."[7] For example, when MGAE de Mexico needed to decide what to charge for its products, "it was just the four of [them] sitting in a room going down a list saying this is what we think a fair price would be."[8] Even today Ms. Kuemmerle, Ms. Trueba, Mr. Vargas, and Mr. Machado sit in a room and set prices through "a combined team effort."[9] Mr. Vargas and Ms. Trueba are clearly executives who exercise discretion in determining corporate policy.

MGA does not dispute that "[t]he 'paramount test' is whether the individual can be expected to identify with the corporation's interests as opposed to an adversary's." Id. at 541. See also Newark Insurance Co. v. Sartain, 20 F.R.D. 583, 586 (N.D. Cal. 1957) ("the latter test [i.e., the deponent's inherent loyalty] is the paramount and perhaps the really determinative one. . . ."). MGA rather argues that:

> Ms. Trueba's and Mr. Vargas's interests are not perfectly aligned with those of MGA. MGA's position is that these employees -- if they did in fact take any "trade secrets" with them from Mattel, which MGA denies -- did so on

---

[3] Exh. 3 to the Declaration of Jon D. Corey, filed concurrently with Ex Parte Application ("Corey Dec.").
[4] Rough Transcript of Susana Kuemmerle taken January 28, 2008 ("Rough Kuemmerle Tr.") at 55:13-15. (All portions of the Kuemmerle Tr. referred to herein are attached as Exhibit 24 to the Supplemental Corey Declaration). See also Exhibits 21 and 22 to the Corey Dec.
[5] See Exhibits 21 and 22 to the Corey Dec. See also Exh. 29.
[6] Rough Kuemmerle Tr. at 86:9-19, Exh. 24.
[7] Rough Kuemmerle Tr. at 123:11-124:7, Exh. 24.
[8] Rough Kuemmerle Tr. at 79:13-80:14, Exh. 24.
[9] Rough Kuemmerle Tr. at 80:15-21, Exh. 24.

07209/2374990.1

-5-
REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION

their own accord, without the knowledge or encouragement of MGA. For that reason, both Ms. Trueba and Mr. Vargas are separately represented by counsel.

Opp. Mem. at 17:14-18. The representation that they are "separately represented by counsel" was untrue last September (when MGA identified them as witnesses who could be contacted through MGA's counsel)[10] and it remains untrue today. Ms. Kuemmerle was asked about that four days ago. She testified:

> Q. Do you know whether Mr. Vargas or Ms. Trueba have retained counsel in connection with this case?
>
> A. Yes. They did.
>
> Q. And do you know who that counsel is?
>
> A. Yes. I know.
>
> Q. Who is it?
>
> A. It's the Franco Guzman law firm.
>
> Q. Not in connection with a criminal, in connection with the case in the United States.
>
> A. Oh. No, they have not retained counsel.
>
> Q. And how do you know that?
>
> A. I know.[11]

Ms. Trueba and Mr. Vargas are the subject of criminal indictment in Mexico related to their theft of Mattel proprietary information for the benefit of MGA. They continue to be represented in this case by MGA's attorneys. Accordingly, the Court may conclude that their interests are aligned with MGA's interests and that their loyalty lies with MGA. See Krauss v. Erie Railroad Co., 16 F.R.D. 126, 127 (S.D.N.Y. 1954) ("A managing agent . . . [is] a person who has 'the interest of the corporation so close to his heart that he could be depended upon

---

[10] See Exhibit 6 to the Corey Dec.
[11] Rough Kuemmerle Tr. at 99:17-100:3, Exh. 24.

to carry out his employer's direction to give testimony if the demand of a party engaged in litigation with the employer.'"). Mattel has, therefore, demonstrated that they are "managing agents" at least such that any doubt must be resolved in its favor.

## IV. THE DEPOSITIONS OF DAPHNE GRONICH AND JOE TIONGCO WERE NOT RENDERED UNNECESSARY BY AN EARLIER RULE 30(b)(6) DEPOSITION

### A. MGA Does Not Dispute that Daphne Gronich and Joe Tiongco Are Important Witnesses

MGA's argument that Mattel's need to depose Daphne Gronich and Joe Tiongco was mooted by a Rule 30(b)(6) deposition *before* the Court issued its January 7, 2008 Order (Opp. Mem. at 6:10-8:1) is an attempt to seek reconsideration. It ignores that Ms. Gronich and Mr. Tiongco were identified *by MGA* as important witnesses concerning its document preservation activities.

On August 29, 2007, the Court ordered the parties to submit declarations setting forth "their preservation efforts and policies with respect to the present litigation on or before September 10, 2007."[12] MGA selected Ms. Gronich as its declarant. MGA submitted both a September 10, 2007 Declaration of Daphne Gronich in Response to Court's Request for Information Regarding Document Preservation, and a December 4, 2007 Supplemental Declaration of Daphne Gronich in Response to Court's Request for Information Regarding Document Preservation.[13] Even though MGA chose Ms. Gronich as its declarant on the issue, it refused to allow her to be subjected to cross-examination as its Rule 30(b)(6) witness. Because MGA twice offered up Ms. Gronich as its declarant concerning its document preservation activities, she can be deposed on that subject.

---

[12] Supp. Corey Dec., Exh. 25 [August 27, 2007 Order].

1    The Rule 30(b)(6) deposition did not moot Mattel's need to depose
2 Mr. Tiongco. MGA's 30(b)(6) witness Kenneth Lockhart, *repeatedly* testified as to
3 his own ignorance on issues related to document collection, retention and
4 preservation and *repeatedly* identified Joe Tiongco as the person who had the
5 knowledge he lacked.[14] For example, Joe Tiongco was the "primary contact" person
6 "for purposes of preserving information or collecting information for purposes of
7 litigation" for relevant time periods.[15] Lockhart also referred Mattel to Tiongco as
8 the person who knew (1) about MGA's backup tape rotation policy for the exchange
9 server database, (2) whether certain MGA servers were searched for documents that
10 Mattel had requested, (3) the location of any hard drive or image of any hard drive
11 that had been preserved for litigation purposes, and (4) about the searches MGA had
12 conducted of relevant e-mail files.[16]

### B. MGA Improperly Attempts to Reargue Mattel's Motion for Leave to Take Additional Discovery

MGA's argument that Mattel lacks "good cause" to depose Gronich and Tiongco ignores the Court's January 7, 2008 Order, reflecting that "Mattel has shown good cause to grant additional discovery given . . . the concerns regarding retention and spoliation of evidence."[17] The Court's finding was based on Section B of Mattel's Motion for Leave to Take Additional Discovery, which argued that "Mattel Needs Additional Depositions Because the Integrity of MGA's and Bryant's Preservation of Documents is at Issue."[18] Notably, the only individuals Mattel specifically requested leave to depose on the issue were Gronich and Tiongco.[19]

---

[13] Supp. Corey Dec., Exhs. 26 and 27.
[14] Exh. 28 at 116:2-14, 150:25-151:5, 158:10-15. 258:17-259:9, 265:1-11, 266:12-267:5.
[15] Id. at 258:17-259:9.
[16] Id. at 116:2-14, 150:25-151:5, 158:10-15. 258:17-259:9, 265:1-11, 266:12-267:5.
[17] Exh. 3 [January 7, 2008 Order], to the Corey Dec.
[18] Exh. 2 to the Corey Dec.
[19] Id.

1 Thus, when the Court found good cause to take discovery from MGA on the issue of
2 "retention and spoliation of evidence," it necessarily found good cause to depose
3 these two witnesses. The only relief Mattel sought by its motion that the Court
4 denied was "that portion of Mattel's motion that seeks additional time in which to
5 depose Carter Bryant."[20]

### C. MGA Misrepresents the Status of Daphne Gronich

MGA's argument that Gronich (a lawyer) was not served is untrue. As attested by the proof of service submitted with Mattel's *ex parte* application (and ignored by MGA), Ms. Gronich was served personally with a deposition subpoena on January 13, 2008, at 11:50 a.m.[21] The reference MGA makes to attempts to serve Ms. Gronich after January 13 refer to attempts to serve her *with another subpoena*. That was done out of an excess of caution when MGA's attorneys denied that Ms. Gronich had been served. In an effort to put that issue to rest, Mattel attempted to serve her again. Such attempts obviously do not invalidate the service of the original subpoena. Notably, neither MGA nor Gronich moved to quash the service on her.

---

[20] Exh. 3 to the Corey Dec.
[21] Exh. J to the Declaration of Christopher E. Price, filed concurrently with Ex Parte Application.

## Conclusion

For the foregoing reasons, the Court should compel the attendance of Gustavo Machado, Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment, and MGAE de Mexico at deposition and should grant Mattel leave to depose on or before February 29, 2008, all witnesses already served with subpoenas or subject to the Court's January 7, 2008 Order.

DATED: February 1, 2008             QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                                    By /s/ Jon D. Corey
                                       Jon D. Corey
                                       Attorneys for Mattel, Inc.