QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) Consolidated with Case Nos. CV 04-09059 & CV 05-2727 |
| Plaintiff, | |
| vs. | **DISCOVERY MATTER** |
| MATTEL, INC., a Delaware corporation, | **[To Be Heard By Hon. Edward Infante (Ret.) Pursuant To Order Of December 6, 2006]** |
| Defendant. | MATTEL, INC.'S OPPOSITION TO MGA'S MOTION TO COMPEL DISCOVERY AS TO ISSUES AS TO WHICH MATTEL HAS PURPORTEDLY WAIVED THE ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES BY CLAIM ASSERTION |
| AND CONSOLIDATED ACTIONS | |
| | [Notice of Lodging and Declaration of Michael T. Zeller filed concurrently] |
| | Date: February 11, 2008 Time: 8:30 a.m. Place: Telephonic |
| | **Phase 1** Discovery Cut-Off: January 28, 2008 Pre-Trial Conference: May 5, 2008 Trial Date: May 27, 2008 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ............................................................................................................ 2

I.   MATTEL HAS NOT IMPLIEDLY WAIVED THE ATTORNEY-CLIENT PRIVILEGE ....................................................................................... 2

  A.   Mattel Has Not Affirmatively Put Privileged Communications At Issue ............................................................................................................ 3

  B.   Application of the Privilege Would Not Deny MGA Access to Information Vital to Its Defense .............................................................. 8

II.  IF THERE WERE AN IMPLIED WAIVER, THE SCOPE MUST BE LIMITED ...................................................................................................... 14

III. MGA IS NOT ENTITLED TO ADDITIONAL RESPONSES TO THE DISCOVERY IT HAS IDENTIFIED ............................................................ 16

IV.  THE DISCOVERY MASTER HAS ALREADY RULED THAT WITHHELD DOCUMENTS RELATED TO MATTEL'S 2002 INVESTIGATIONS ARE PRIVILEGED ...................................................... 21

CONCLUSION ...................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

1st Sec. Bank of Wash. v. Eriksen,
   2007 WL 188881 (W.D. Wash. 2007) .................................................................... 9

Beverly Health & Rehabilitation Services, Inc.,
   2006 WL 3593472 (E.D. Cal. 2006) .................................................................... 24

Bittaker v. Woodford,
   331 F.3d 715 (9th Cir. 2003) ........................................................................... 4, 14

Bordallo v. Reyes,
   763 F.2d 1098 (9th Cir. 1985) ............................................................................ 23

Chamberlain Group v. Interlogix, Inc.,
   2002 WL 467153 (N.D. Ill. 2002) ......................................................................... 3

Chevron Corp. v. Pennzoil Co.,
   974 F.2d 1156 (9th Cir. 1992) .............................................................................. 4

Frontier Refining Inc. v. Gorman-Rupp Co., Inc.,
   136 F.3d 695 (10th Cir. 1998) .............................................................................. 9

Garamendi v. SDI Vendome S.A.,
   276 F. Supp. 2d 1030 (C.D. Cal. 2003) ............................................................... 15

In re Geothermal Resources Int'l, Inc.,
   93 F.3d 648 (9th Cir. 1996) .................................................................................. 8

Hearn v. Rhay,
   68 F.R.D. 574 (E.D. Wash. 1975) ............................................... 2, 3, 4, 6, 7, 8, 9

Hobson v. Wilson,
   737 F.2d 1 (D.C. Cir. 1984), cert. denied, 470 U.S. 1084 (1985) ....................... 15

Holmgren v. State Farm Mutual Automobile Ins. Co.,
   976 F.2d 573 (9th Cir. 1992) ................................................................................ 4

Home Indemnity Co. v. Lane Powell Moss and Miller,
   43 F.3d 1322 (9th Cir. 1995) ................................................................................ 4

In re Imperial Corp. of Am.,
   179 F.R.D. 286 (S.D. Cal. 1998) .......................................................................... 6

In re Intuit Privacy Litigation,
   138 F. Supp. 2d 1272 (C.D. Cal. 2001) ............................................................... 24

Moreno v. Harrison,
   2006 WL 2411421 (N.D. Cal. 2006) ..................................................................... 6

07209/2373650.1

*Motorola, Inc. v. J.B. Rodgers Mechanical Contractors,*
   215 F.R.D. 581 (D. Ariz. 2003)...................................................................23

*Novell, Inc. v. Unicom Sales, Inc.,*
   2004 WL 1839117 (N.D. Cal. 2004)...........................................................14

*Public Services Co. of N.M. v. Lyons,*
   129 N.M. 487, 10 P.3d 166 (N.M. Ct. App. 2000) .......................................7

*Rambus Inc. v. Samsung Electronics Co., Ltd.,*
   2007 WL 3444376 (N.D. Cal. Nov. 13, 2007).............................................6

*Reavis v. Metropolitan Property & Liability Ins. Co.,*
   117 F.R.D. 160 (S.D. Cal. 1987)...................................................................4

*Remington Arms Co. v. Liberty Mutual Ins. Co.,*
   142 F.R.D. 408 (D. Del. 1992).....................................................................7

*Roley v. New World Pictures, Ltd.,*
   19 F.3d 479 (9th Cir. 1994).........................................................................14

*Titan Corp. v. M/A-Com, Inc.,*
   1994 WL 16001739 (S.D. Cal. 1994) ...........................................................6

*U.S. v. Amlani,*
   169 F.3d 1189 (9th Cir. 1999)...............................................2, 3, 4, 5, 8, 9

*Watanabe v. Home Depot USA, Inc.,*
   2003 WL 24272634 (C.D. Cal. 2003)..........................................................23

*Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, Inc.,*
   106 F.3d 894 (9th Cir. 1997)........................................................................14

*Wood v. Midland Credit Management, Inc.,*
   2005 WL 3159637 (C.D. Cal. 2005).............................................................23

**Statutes**

Rule 30(b)(6) ........................................................................................12, 17

Local Rule 7-18 .............................................................................................23

**Other Authorities**

Epstein, *The Attorney Client Privilege and the Work Product Doctrine*
   (5th ed. 2007)................................................................................................5

-iii-
MATTEL'S OPPOSITION TO MGA'S MOTION TO COMPEL RE PRIVILEGE WAIVER BY CLAIM ASSERTION

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

More than a month ago MGA filed a motion seeking a finding that Mattel has impliedly waived the protections of the attorney-client privilege and work product doctrine. As Mattel detailed in its opposition to that motion, MGA's arguments were contrary to the facts and controlling law. In an effort to correct the fatal flaws in its argument, MGA has submitted a new, revised motion seeking a finding of waiver of the privilege. But MGA's second verse is just like the first.

Mattel has not waived the privilege. Under Ninth Circuit law, waiver requires that a party affirmatively place its privileged communications at issue. The Ninth Circuit has found implied waiver *only* where a party (1) relies on privileged information in support of its claims or defenses, or (2) asserts a claim or defense for which the *only* possible evidence available to assess the truthfulness of the claim or defense is privileged information. Neither is true here. Mattel does not rely on privileged information in support of its fraudulent concealment allegations, and substantial non-privileged information exists -- and has been produced -- to assess those allegations. Even now, with attempt number two, MGA is unable to cite to any Ninth Circuit or other Court of Appeals decision that has ever held the privilege to be waived in such circumstances.

The one unpublished district court opinion MGA principally relies on is inconsistent with Ninth Circuit law. Under MGA's overbroad interpretation of implied waiver, the privilege is waived any time a party asserts fraudulent concealment simply because privileged information may be probative of what a party knew. That is not the law in the Ninth Circuit. That privileged communications may be relevant -- the most MGA attempts to show here -- is insufficient to support a waiver.

Further, MGA cannot show that application of the privilege would deny it information critical to its defenses as is required for a finding of implied waiver.

1   In fact, Mattel has produced substantial information -- including responses to

2   interrogatories, documents and testimony -- related to MGA's laches and statute of

3   limitations defenses.  Mattel has not shielded the facts of when and how it learned

4   that Bryant worked for MGA while he was employed by Mattel.

5          Last, to the extent MGA's motion seeks production of privileged

6   documents related to certain investigations undertaken by Mattel in 2002, it is a

7   repeat of a motion that MGA made on April 10, 2007.  At that time, the Discovery

8   Master ruled the documents were privileged and that the privilege had not been

9   waived.  MGA did not move to reconsider that ruling and here fails to make any of

10  the requisite showings to justify reconsideration.  Indeed, despite the fact that Mattel

11  raised the issue in its opposition to MGA's first motion, MGA still simply ignores

12  the Discovery Master's prior ruling all together.

13          MGA's motion should be denied.

14                  **Argument**

15  **I.**    **MATTEL HAS NOT IMPLIEDLY WAIVED THE ATTORNEY-**

16       **CLIENT PRIVILEGE**

17         As MGA acknowledges, the Ninth Circuit has adopted the three-

18  pronged test for implied waiver that was first outlined in <u>Hearn v. Rhay</u>, 68 F.R.D.

19  574, 581 (E.D. Wash. 1975): "First, the court considers whether the party is

20  asserting the privilege as the result of some affirmative act, such as filing suit.

21  Second, the court examines whether 'through this affirmative act, the asserting party

22  puts the privileged information at issue.  Finally, the court evaluates whether

23  allowing the privilege would deny the opposing party access to information vital to

24  its defense." <u>U.S. v. Amlani</u>, 169 F.3d 1189, 1195 (9th Cir. 1999) (citations and

25  internal quotation marks omitted).

26         Contrary to MGA's suggestions, however, these factors do not aid its

27  case here because the second and third prongs are not satisfied.  The only

28  affirmative act MGA claims satisfies the first prong of the test is Mattel's pleading

1  fraudulent concealment to toll the statute of limitations.[1]  But pleading fraudulent
2  concealment does not place privileged information at issue.  Moreover, application
3  of the privilege does not deny MGA access to information vital to its defense
4  because Mattel has already produced the underlying evidence related to MGA's
5  defenses.

6      A.      **Mattel Has Not Affirmatively Put Privileged Communications At**
7              **Issue**

8              In its original motion, MGA argued that attorney-client
9  communications regarding what Mattel "knew or had reason to suspect prior to
10  November 2003" are "*relevant* to the determination of . . . MGA's statute of
11  limitations and laches defense."[2]  Therefore, MGA concluded, "fairness requires that
12  [MGA] be given access to those communications to dispute Mattel's allegations."[3]
13  As Mattel noted in its opposition, Ninth Circuit law is clear that *relevance* is not the
14  standard for waiver of the attorney client privilege.  See Amlani, 169 F.3d at 1195
15  ("[p]rivileged communications do not become discoverable simply because they are
16  related to issues raised in the litigation"); see also Chamberlain Group v. Interlogix,
17  Inc., 2002 WL 467153, at *2 (N.D. Ill. 2002) (finding no waiver where defendant
18  asserted statute of limitations defense despite fact that communications with
19  attorney were "relevant" to defense).

20              Apparently in recognition that relevance alone cannot satisfy the
21  second prong of the Hearn test, MGA now studiously avoids arguing that it is
22  entitled to privilege communications because they may be relevant to Mattel's
23  fraudulent concealment allegations.  Instead, MGA makes the even more incredible
24  assertion that simply pleading fraudulent concealment automatically satisfies both
25
26  _____
27  [1]  MGA's Motion, at p. 16.
    [2]  MGA's Original Motion, at p. 1 (emphasis added).
28  [3]  Id.

1  the first and second prongs of the Hearn test.[4]  Yet MGA provides no explanation
2  why that is so beyond the potential relevance of privileged information to an
3  allegation of fraudulent concealment.

4  Contrary to MGA's assertions, waiver requires that a party *affirmatively*
5  *put at issue* privileged information in support of its claim or defense.  The Ninth
6  Circuit has only found that a party affirmatively put at issue privileged information
7  in two situations: (1) when a party *relies on privileged communications* or work
8  product in support of its claims or defenses, see, e.g., Chevron Corp. v. Pennzoil
9  Co., 974 F.2d 1156 (9th Cir. 1992) (finding implied waiver where defendant
10  asserted an advice of counsel defense); and (2) when the *only* evidence available to
11  assess a party's claim or defense consists of attorney-client communications or work
12  product. See, e.g., Amlani, 169 F.3d at 1191 (finding implied waiver where the only
13  evidence of an essential element of plaintiff's attorney disparagement claim -- the
14  reason the plaintiff fired his attorney -- was privileged communications); Holmgren
15  v. State Farm Mutual Automobile Ins. Co., 976 F.2d 573, 577 (9th Cir. 1992)
16  (finding implied waiver of attorney work product regarding an insurer's counsel's
17  handling of a claim in a cause of action for bad faith claim settlement practices
18  because "[i]n a bad faith insurance claim settlement case, the 'strategy, mental
19  impressions and opinion of [the insurer's] agents concerning the handling of the
20  claim are directly at issue.'") (quoting Reavis v. Metropolitan Property & Liability
21  Ins. Co., 117 F.R.D. 160, 164 (S.D. Cal. 1987)).[5]

22
23

24  [4]  MGA's Motion, at p. 18.
25  [5]  In the other Ninth Circuit implied waiver cases cited by MGA, the Ninth
   Circuit *declined* to find implied waiver. See, e.g., Bittaker v. Woodford, 331 F.3d
26  715 (9th Cir. 2003) (discussing, but declining to find, implied waiver in the context
   of a claim of ineffective assistance of counsel); Home Indemnity Co. v. Lane Powell
27  Moss and Miller, 43 F.3d 1322 (9th Cir. 1995) (discussing, but declining to find,
28  implied waiver in the context of a claim of legal malpractice).

1    Neither situation is present here.  MGA does not and cannot point to

2    any privileged information that Mattel relies on in support of its allegations of

3    fraudulent concealment.  Mattel has not relied on privileged information.  And the

4    evidence related to Mattel's fraudulent concealment allegations is not solely

5    privileged information.  To the contrary, substantial non-privileged evidence bearing

6    on these allegations exists and has been produced to MGA.  That stands in contrast

7    to the situation presented in Amlani.  In Amlani, the Court only found waiver after

8    concluding that non-privileged sources of evidence related to plaintiff's attorney

9    disparagement claim "would be of little, if any, value."  Amlani, 169 F.3d at 1196

10   (finding that the only evidence available to establish why plaintiff terminated his

11   attorney -- a fact essential to plaintiff's attorney disparagement claim -- was

12   plaintiff's communications with his attorneys).

13   Instead of showing reliance on privileged communications or that the

14   only evidence is privileged, as the law requires, MGA argues that simply alleging

15   fraudulent concealment necessarily waives the privilege because any time a party

16   alleges fraudulent concealment, what its attorneys knew and when they knew it is

17   relevant.[6]  Such a rule is contrary to Ninth Circuit law regarding implied waiver.  If

18   MGA's position were accepted, the privilege would be waived whenever privileged

19   information is relevant to a claim or defense.

20   As one of the treatises on which MGA relies itself notes, "[t]he better

21   reasoned cases eschew any broad reading of waiver based on merely raising the

22   defense of laches or equitable estoppel. *Actual reliance on the opinion of counsel* to

23   prove the defense should be required."  Epstein, The Attorney Client Privilege and

24   the Work Product Doctrine (5th ed. 2007), at 545 (emphasis added).  Here, MGA

25   has not shown that Mattel is relying on the opinion of its counsel in support of its

26   assertion of fraudulent concealment.  That is because Mattel is not.

27

28   [6]  MGA's Motion, at pp. 18, 22.

1    As it did in its original motion, MGA principally relies on an

2   unpublished district court decision, <u>Rambus Inc. v. Samsung Electronics Co., Ltd.</u>,

3   2007 WL 3444376 (N.D. Cal. Nov. 13, 2007).[7]  The <u>Rambus</u> court failed to properly

4   apply the second prong of <u>Hearn</u>.  It concluded that the second prong was satisfied

5   simply because attorney-client communications might be relevant to Samsung's

6   claim of fraudulent concealment.  <u>Id.</u> at *4.  MGA's conclusory assertion that

7   "<u>Rambus</u> does not hold that the second prong of <u>Hearn</u> is satisfied by mere

8   relevance of the information sought"[8] is directly at odds with the plain language of

9   the <u>Rambus</u> opinion: "Because Samsung's subjective knowledge regarding

10   Steinberg's work for Rambus is relevant to both its discovery rule and equitable

11   tolling defenses to the statute of limitations, *the protected information is relevant to*

12   *this case and satisfies the second prong of the <u>Hearn</u> test*."  <u>Rambus Inc.</u>, 2007 WL

13   3444376, at *4.  As shown above, any conclusion that relevance alone is sufficient

14   to find implied waiver is not supported by Ninth Circuit law.  <u>See generally</u> <u>Moreno</u>

15   <u>v. Harrison</u>, 2006 WL 2411421, at *3 n.4 (N.D. Cal. 2006) (district court has no

16   authority to disregard Ninth Circuit precedent).

17    In the other district court cases cited by MGA, the courts likewise

18   required that privileged information not merely be *relevant to* the claim of

19   fraudulent concealment, but that it actually be *relied on* by the party asserting the

20   claim.  For example, in <u>In re Imperial Corp. of Am.</u>, 179 F.R.D. 286 (S.D. Cal.

21   1998), the court found implied waiver where the plaintiff contended that it learned it

22   had a claim for legal malpractice by means of counsel's investigation.  MGA claims

23   that the plaintiff in <u>Imperial</u> did not make direct use of privileged material.  Not so.

24   The plaintiff in that case testified "that he *relied on* his attorneys' advice and

25   investigation regarding . . . overcoming [defendant's] statute of limitations defense."

26   <u>Id.</u> at 288 (emphasis added).  Similarly, in <u>Titan Corp. v. M/A-Com, Inc.</u>, 1994 WL

27

28

---

[7]    <u>Id.</u> at pp. 1, 18-20.

MATTEL'S OPPOSITION TO MGA'S MOTION TO COMPEL RE PRIVILEGE WAIVER BY CLAIM ASSERTION

1  16001739, at *2 (S.D. Cal. 1994) (emphasis added), the court held that the "plaintiff

2  put the allegedly protected information in issue by *relying on* its counsel's

3  investigation in order to overcome the statute of limitations bar."

4          MGA trumpets the analysis of a New Mexico state appellate court to

5  support its argument that <u>Hearn</u> does not require a party to affirmatively rely on

6  privileged communications to put at issue the privilege.[9]  The New Mexico state

7  court's analysis is simply wrong.  In fact, federal courts have been critical of the

8  expansive application of the <u>Hearn</u> test by some district courts.  <u>See, e.g.,</u>

9  <u>Remington Arms Co. v. Liberty Mutual Ins. Co.</u>, 142 F.R.D. 408, 413-415 (D. Del.

10  1992) (analyzing <u>Hearn</u> and subsequent cases and noting that some courts have

11  improperly understood <u>Hearn</u> to "mean that the important protected information is

12  'at issue' and 'vital' whenever it contains information relevant to the case").

13          Mattel has never claimed that it learned the basis of its claims by means

14  of privileged attorney-client communications or work product.  Mattel has disclosed

15  that it first learned of the wrongful conduct that is the basis of Mattel's claims when

16  it received a copy of Bryant's agreement with MGA in unrelated litigation.[10]  That

17

18

19

20

21  [8]  <u>Id.</u> at p. 20.

   [9]  <u>Id.</u> at pp. 17-18 (discussing <u>Public Services Co. of N.M. v. Lyons</u>, 129 N.M.

22  487, 10 P.3d 166 (N.M. Ct. App. 2000)).

23  [10]  <u>See</u> Order Denying Motion for Terminating Sanctions, dated August 27,
   2007, at p. 3 ("Mattel received in discovery in an unrelated action a copy of a

24  contract between MGA and Bryant that pre-dated Bryant's resignation from Mattel.
   This contract appeared to Mattel to violate certain employment agreements executed

25  by Bryant and Mattel, thus giving rise to one of the current consolidated actions."),

26  Declaration of B. Dylan Proctor in Support of Mattel's Opposition to MGA's Motion
   to Compel Regarding Mattel's Privilege Waiver by Claim Assertion, dated

27  December 27, 2007 ("Proctor Dec."), Exh. 6, attached as Exhibit 1 to the

28  concurrently filed Notice of Lodging.

1 | agreement was not transmitted to Mattel by means of an attorney-client

2 | communication or attorney work product.[11]

3 | **B.     Application of the Privilege Would Not Deny MGA Access to**

4 | **Information Vital to Its Defense**

5 | MGA's motion should also be denied because MGA cannot meet the

6 | third prong of the Hearn test: it cannot show that application of the privilege would

7 | deny it access to information vital to its defense.  MGA makes the conclusory

8 | assertion that the third prong of the Hearn test is met because "MGA cannot develop

9 | its statute of limitations and laches defenses without information regarding when

10 | Mattel first knew or should have known of its purported claims against MGA."[12]

11 | Yet Mattel has already produced substantial evidence related to those defenses.

12 | MGA has not been denied the factual evidence related to how and when Mattel

13 | learned that Bryant was working for MGA while he was employed by Mattel.

14 | Mattel's privileged communications are not vital to any defense.

15 | Ninth Circuit law is clear that where substantial non-privileged

16 | evidence bearing on a defense has been produced there is no waiver of the privilege.

17 | See Amlani, 169 F.3d at 1195 ("When the sought-after evidence is 'only 'one of

18 | several forms of indirect evidence' about an issue,' the privilege has not been

19 | waived.") (citing In re Geothermal Resources Int'l, Inc., 93 F.3d 648, 653 (9th

20 | Cir.1996)).  Courts properly applying Amlani recognize that "[u]nder Hearn, the

21 |

22 | [11]   And, to the extent that MGA is seeking to invade privilege with respect to

23 | Mattel security investigations, it is not only an improper motion for reconsideration as discussed below but goes even further astray on this prong of the Hearn test.

24 | Claiming that it is entitled to privileged communications or work product in investigations that *failed* to turn up facts revealing that Bryant worked on Bratz

25 | while employed by Mattel or that he had aided MGA while employed by Mattel

26 | would turn the reliance requirement on its head.  Indeed, there would be no logical stopping point for such an argument, and it would eviscerate the core, beneficial

27 | purposes of privilege.

28 | [12]   MGA's Motion, at p. 22.

1    information sought must be 'vital' to defendants' case, *meaning that the information*

2    *is available from no other source.*" See 1st Sec. Bank of Wash. v. Eriksen, 2007

3    WL 188881, at *3 (W.D. Wash. 2007) (emphasis added) (citing Amlani, 169 F.3d at

4    1195 and Frontier Refining Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 701-02

5    (10th Cir.1998)).  Despite this unequivocal rule, MGA argues that it is not the test,

6    stating that it is "contrary to Hearn."[13]  MGA is simply wrong.  Even in Hearn, the

7    court expressly noted that "[i]n an ordinary case" the privilege is not waived, even

8    when privileged information is relevant, because "other means of proof are normally

9    available."  Hearn, 68 F.R.D. at 582.

10         Here, "other means of proof" are clearly available to MGA.  Indeed,

11    MGA devotes pages of its motion to identifying evidence Mattel has *already*

12    *produced* that it claims rebuts Mattel's allegations that it did not become aware that

13    Bryant created Bratz while a Mattel employee or worked with MGA while he was a

14    Mattel employee until November 2003.[14]  For example, MGA makes much of

15    Mattel's 2002 investigation into "'rumor and innuendo that Bryant may be working

16    with MGA on Bratz,' including whether 'Bryant . . . plagiarized [Mattel product]

17    'Toon Teens' and created Bratz dolls for MGA'"[15] and Mattel's August 2002

18    anonymous letter investigation.[16]  Yet MGA *already has* the underlying evidence

19    bearing on those investigations.  Mattel has produced hundreds of pages of non-

20    privileged documents regarding its investigations relating to Bryant and/or MGA,

21

22

---

23    [13]   MGA's Motion, at p. 23.  MGA also asserts that "[i]n its opposition to [MGA's first motion], Mattel incorrectly claimed that the test is whether the defense

24    is 'case dispositive.'" Id.  That is wrong.  It was MGA that argued that it needed

25    privileged information because its statute of limitations and laches defenses were potentially case dispositive.  Mattel noted that "the test here is *not* whether a defense

26    is 'case dispositive.'" Mattel's Original Opposition, at p. 12.

27    [14]   MGA's Motion, at pp. 2-3, 8-10.
      [15]   Id. at p. 2.

28    [16]   Id. at p. 3.

-9-

1   including 2002 investigations discussed in MGA's motion.[17]  As the Discovery

2   Master previously found, Mattel has "conducted a reasonable search . . . and has

3   produced all documents related to the March 2002 investigation that are responsive

4   to MGA and Bryant's document requests."[18]

5           To the extent MGA argues that there may be other unproduced

6   information relating to earlier investigations of Bryant or MGA that are pertinent

7   here, MGA's speculation is unfounded.  MGA took the deposition of Richard De

8   Anda, Mattel's head of security.  Mr. De Anda confirmed that he had not even heard

9   of MGA, Bryant or Bratz before March 2002.[19]  Mr. De Anda also testified at length

10  regarding how and when Mattel first investigated Bryant and MGA.[20]  Given that

11  MGA has the *facts* relating to Mattel's investigations, obtaining Mattel's privileged

12  communications and any of counsel's work product is far from "vital" to MGA's

13  defense.

14          Mattel has also provided interrogatory responses explaining in further

15  detail its investigations of Bryant and MGA, and how and when it first learned of

16  Bryant's wrongful conduct that forms the basis for Mattel's claims.  For example,

17  MGA propounded an interrogatory asking Mattel to "[s]tate, with particularity,

18  when and how MATTEL first learned that BRYANT performed work for MGA."

19  Mattel responded by describing in detail when and how it first learned that Bryant

20  worked on Bratz for MGA while he was still employed by Mattel:

21

22

---

23  [17]  Proctor Dec., ¶ 13, Notice of Lodging, Exh. 1.

    [18]  Order Granting MGA and Bryant's Motion to Compel Production of Certain

24  Documents Withheld Under Claims of Privilege for In Camera Review, and

    Denying Motion to Attest to the Completeness of February 2007 Production, dated

25  May 15, 2007, at p. 6, Proctor Dec., Exh. 2, Notice of Lodging, Exh. 1.

26  [19]  De Anda Depo. Tr. at 166:5-167:9, Proctor Dec., Exh. 7, Notice of Lodging,
    Exh. 1.

27  [20]  See, e.g., De Anda Depo. Tr. at 166:5-177:4, 224:18-227:8, 237:11-258:22,

28  Proctor Dec., Exh. 7, Notice of Lodging, Exh. 1.

1    Mattel conducted an investigation in Spring 2002 based on
2    allegations that Bryant may have plagiarized 'Toon Teens'
3    and created Bratz dolls for MGA, and later in August 2002
4    based on an anonymous letter sent to Mattel.  The letter's
5    author (whoever it was) offered no evidence for his or her
6    allegations.  The potential claims investigated in 2002
7    have not been asserted in this case.  In March 2002, Mattel
8    investigated allegations of possible copyright infringement
9    of "Toon Teens" designs, not whether Mr. Bryant created
10   Bratz or worked with MGA during his Mattel
11   employment.  The potential claims investigated in 2002
12   did not give Mattel any knowledge, or even reason to
13   believe, that Bryant worked for MGA and/or conceived of
14   Bratz while a Mattel employee.

15

16   Subsequently, on November 24, 2003, Mattel obtained a
17   copy of a contract between defendant Carter Bryant and
18   defendant MGA.  That contract -- which Bryant and MGA
19   had entered into while Bryant was employed by Mattel --
20   required Bryant to provide design services to MGA on a
21   "top priority" basis, in conflict with his then-existing
22   obligations to Mattel.  It also purported to grant MGA
23   ownership of works produced by Bryant both before and
24   after the agreement's effective date, in further
25   contravention of his obligations to Mattel.  Through this
26   agreement, Mattel first determined that it was likely that
27   Bryant worked as a designer for a Mattel competitor,

28

1    MGA, while being employed and paid by Mattel for his

2    exclusive services as a designer.[21]

3        In addition, as agreed by the parties, once a pending motion is resolved,

4    MGA will be obtaining non-privileged testimony on several <u>Rule</u> 30(b)(6)

5    deposition topics related to when Mattel first learned of Bryant's wrongful conduct,

6    including for example:

7    •    All acts, omissions, circumstances and/or evidence showing, or
        tending to show, when Mattel first became aware of any alleged
8        wrongful conduct of Bryant.[22]

9    •    All acts, omissions, circumstances and/or evidence showing, or
        tending to show, the manner and mode by which Mattel first
10       became aware of any alleged wrongful conduct of Bryant.[23]

11   •    All acts, omissions, circumstances and/or evidence showing, or
        tending to show, when You first became aware that Bryant was
12       involved in the conception, creation, design and/or reduction to
        practice of Bratz.[24]

13
14   •    All acts, omissions, circumstances and/or evidence showing, or
        tending to show, how You first became aware that Bryant was

15

16   _____

17   [21]   Supplemental Responses to MGA's First Set of Interrogatories to Mattel, Inc.,
     at p. 113, attached as Exhibit 3 to the declaration of Marcus R. Mumford ("Mumford
18   Dec.").

19   [22]   <u>See</u> Order Regarding MGA and Carter Bryant's Joint Motion to Overrule
     Mattel's Relevance Objections and Compel Discovery Relevant to Statute of
20   Limitations and Laches Defenses, Mumford Dec., Exh. 30; Notice of Deposition of
     Plaintiff and Counter-Defendant Mattel, Inc., dated December 21, 2004, Topic No.
21   15, Mumford Dec., Exh. 12.

22   [23]   <u>See</u> Order Regarding MGA and Carter Bryant's Joint Motion to Overrule
     Mattel's Relevance Objections and Compel Discovery Relevant to Statute of
23   Limitations and Laches Defenses, Mumford Dec., Exh. 30; Notice of Deposition of
24   Plaintiff and Counter-Defendant Mattel, Inc., dated December 21, 2004, Topic No.
     16, Mumford Dec., Exh. 12.

25   [24]   <u>See</u> Order Regarding MGA and Carter Bryant's Joint Motion to Overrule
26   Mattel's Relevance Objections and Compel Discovery Relevant to Statute of
     Limitations and Laches Defenses, Mumford Dec., Exh. 30; Notice of Deposition of
27   Plaintiff and Counter-Defendant Mattel, Inc., dated December 21, 2004, Topic No.
28   17, Mumford Dec., Exh. 12.

1        involved in the conception, creation, design and/or reduction to
         practice of Bratz.[25]

2    •   All acts, omissions, circumstances and/or evidence showing, or
3        tending to show, all actions taken by You, including but not
         limited to all circumstances surrounding any investigations you
4        have undertaken, relating to Bratz after You learned that Bryant
         was involved in the conception, creation, design and/or reduction
5        to practice of Bratz.[26]

6        MGA has also had the opportunity to cross-examine Mattel's in-house

7    lawyer, Michael Moore, regarding when Mattel first became aware of the conduct

8    that forms that basis of its claims.  MGA's counsel questioned Mr. Moore at an

9    evidentiary hearing before Judge Larson on MGA's unsuccessful motion for

10   terminating sanctions.  One of the facts at issue was when Mattel first learned of the

11   conduct that forms that basis of its claims, and Mr. Moore provided substantial

12   testimony at the hearing on that subject.[27]  At no time did MGA complain to Judge

13   Larson that the non-privileged information disclosed by him interfered with MGA's

14   ability to get to any facts, let alone vital ones.

15       In short, defendants have already obtained sufficient relevant

16   information to determine when and how Mattel first learned that Bryant was

17   working on Bratz while still employed at Mattel and was aiding MGA while still

18   employed by Mattel.  That the information does not support their laches or statute of

19

20   _____

21   [25]  See Order Regarding MGA and Carter Bryant's Joint Motion to Overrule
     Mattel's Relevance Objections and Compel Discovery Relevant to Statute of
22   Limitations and Laches Defenses, Mumford Dec., Exh. 30; Notice of Deposition of
     Plaintiff and Counter-Defendant Mattel, Inc., dated December 21, 2004, Topic No.
23   18, Mumford Dec., Exh. 12.

24   [26]  See Order Regarding MGA and Carter Bryant's Joint Motion to Overrule
     Mattel's Relevance Objections and Compel Discovery Relevant to Statute of
25   Limitations and Laches Defenses, Mumford Dec., Exh. 30; Notice of Deposition of
     Plaintiff and Counter-Defendant Mattel, Inc., dated December 21, 2004, Topic No.
26   19, Mumford Dec., Exh. 12.

27   [27]  Transcript of August 27, 2007 Hearing, at pp. 83-99, Proctor Dec., Exh. 10,
28   Notice of Lodging, Exh. 1.

-13-

1  limitations defenses does not mean that MGA is entitled to privileged information as
2  well.

3  **II.    IF THERE WERE AN IMPLIED WAIVER, THE SCOPE MUST BE**
4  **LIMITED**

5  Should the Court find implied waiver here -- and it should not -- the
6  scope of any waiver must be narrowly tailored.  "[T]he court must impose a waiver
7  no broader than needed to ensure the fairness of the proceedings before it."  Bittaker
8  v. Woodford, 331 F.3d 715, 720 (9th Cir. 2003).  The implied waiver doctrine
9  requires "closely tailor[ing] the scope of the waiver to the needs of the opposing
10  party."  Id.

11  MGA's requested relief flouts these principles.  MGA demands an
12  overbroad Order concluding that "Mattel has waived the attorney-client and work
13  product concerning what it knew or had reason to suspect prior to November 2003,
14  regarding (a) *Carter Bryant's involvement in Bratz*, (b) his alleged breach of
15  contract, (c) *his work for MGA*, and/or (d) Mattel's alleged 'true owner[ship] of
16  Bratz.'"[28]  That far exceeds the proper scope of any implied waiver.  Information
17  regarding "Bryant's involvement in Bratz" and "his work for MGA," for example, is
18  far broader than what could possibly be necessary for any purported laches or statute
19  of limitations defenses.

20  For a copyright infringement claim, "the statute of limitations begins
21  running upon the plaintiff's actual or constructive knowledge of the wrong."  Novell,
22  Inc. v. Unicom Sales, Inc., 2004 WL 1839117, at *4 (N.D. Cal. 2004) (citing Roley
23  v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994)).  The party asserting
24  the time bar must prove that the opposing party knew of facts giving it *notice of the*
25  *specific cause of action at issue*, not just any cause of action.  Westinghouse Elec.
26  Corp. v. General Circuit Breaker & Elec. Supply, Inc., 106 F.3d 894, 899 (9th Cir.

27

28  [28]  MGA's Motion, at p. 25.

1  1997) (citing Hobson v. Wilson, 737 F.2d 1, 35 (D.C. Cir. 1984), cert. denied, 470

2  U.S. 1084 (1985)).  The notice required for any cause of action to begin to accrue

3  "refer[s] to an awareness of sufficient facts *to identify a particular cause of action*,

4  be it a tort, a constitutional violation or a claim of fraud.  [It does] not mean the kind

5  of notice--based on hints, suspicions, hunches or rumors--that requires a plaintiff to

6  make inquiries in the exercise of due diligence, but not to file suit."  Garamendi v.

7  SDI Vendome S.A., 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003) (quoting

8  Hobson, 737 F.2d at 35).

9        Here, Mattel's claims are based on the fact that Bryant "conceived,

10 created and developed" Bratz concepts and works "*while he was employed by Mattel

11 as a doll designer*" and worked with MGA while he was employed by Mattel.[29]

12 Quite simply, Mattel's causes of action could not possibly have accrued before

13 Mattel learned that Bryant worked on Bratz, or for MGA, *while he was employed by

14 Mattel*.  The relevant question is therefore when Mattel had knowledge that Bryant

15 created Bratz *while a Mattel employee* and worked for MGA *while a Mattel

16 employee*.  Information related to Mattel's knowledge that Bryant worked for MGA

17 or was involved with Bratz *after he left Mattel* is not even pertinent to laches or the

18 statute of limitations, and certainly not "vital."

19        Moreover, the time period MGA espouses -- "before November 2003"

20 -- is overbroad and lacking in principled support.  Judge Larson has ruled that

21 Mattel's claims relate back to its initial complaint in April 2004.[30]  Even according

22 to MGA the earliest possible statute of limitations applicable to any of Mattel's

23 claims is two years.[31]  Thus, the only possibly relevant information to MGA's laches

24 and statute of limitations defenses would be evidence that Mattel was purportedly

---

25  [29]  Mattel, Inc.'s Second Amended Answer and Counterclaims, ¶ 2 (emphasis
26 added), Mumford Dec., Exh. 1.

27  [30]  Order Regarding Mattel's Motion for Leave to Amend, dated January 11,
2007, pp. 13-15, Proctor Dec., Exh. 8, Notice of Lodging, Exh. 1.

28

1  aware of the wrongful conduct that forms the basis of its claims prior to April 2002,

2  not November 2003.

3          Thus, even assuming for argument's sake that there has been an implied

4  waiver of the privilege here, it should be limited to information sufficient to show

5  when Mattel obtained knowledge of Bryant's creation, design and development of

6  Bratz *while he was a Mattel employee* and work for MGA *while he was a Mattel*

7  *employee*, dated prior to April 2002, if any such information exists.  As to the

8  remainder of MGA's request, the drastic relief it seeks is not even arguably justified.

9  **III.    MGA IS NOT ENTITLED TO ADDITIONAL RESPONSES TO THE**

10          **DISCOVERY IT HAS IDENTIFIED**

11          Attempting to correct a fatal flaw in its initial motion, MGA now

12  identifies certain interrogatories, requests for admission, deposition topics and

13  document requests in response to which it seeks an Order compelling Mattel to

14  produced privileged information.  Yet MGA still fails to identify any documents

15  identified on privilege logs or instructions not to answer at deposition on privilege

16  grounds for which it believes Mattel has waived the privilege.  Moreover, the

17  specific discovery MGA identifies itself shows there is no basis for MGA's assertion

18  that Mattel has waived the privilege as to any discovery.[32]

19          First, MGA identifies four interrogatories (Interrogatory Nos. 5, 9-11)

20  and six requests for admissions (Request Nos. 241-245) for which it seeks an Order

21  compelling Mattel to provide additional responses that include "information

22  ――――――――――――

        [31]  Id. at p. 14.

23      [32]  Even if the Court were to find that Mattel has impliedly waived the privilege

24  as to any of the specific discovery requests identified by MGA, for many of the
    requests, Mattel has relevance, burden or other outstanding objections that still

25  apply.  See, e.g., Mattel's Opposition to MGA's Motion to Overrule Mattel's

26  Relevance Objection and Compel Discovery Relevant to Statute of Limitations and
    Laches Defenses (RFP, RFA & Interrogatories), dated January 31, 2008 (addressing

27  each of the interrogatories, requests for admission and document requests identified

28  by MGA in its motion here).

1  protected by the attorney-client and work product privileges."[33]  As an initial matter,
2  Mattel has asserted a number of non-privilege objections to those discovery
3  requests, including a relevance objection that is the subject of a pending motion.[34]
4  Moreover, where Mattel has provided responses, Mattel has *not* withheld *any*
5  responsive information on privilege grounds.[35]  There is thus no basis for an Order
6  compelling Mattel to provide additional responses.

7          Second, MGA has identified eight Rule 30(b)(6) Topics on which it
8  seeks Mattel's knowledge, "including knowledge protected by the attorney-client
9  and work product privileges."[36]  Pursuant to the Discovery Master's January 9, 2008
10  Order, Mattel will be producing a deponent on Topic Nos. 15-21.[37]  Mattel has not
11  and will not take the position that its underlying knowledge, or any underlying facts,
12  are privileged.  MGA will thus obtain testimony regarding Mattel's knowledge on
13  the subjects of those Topics.  Topic No. 26, on the other hand, seeks entirely
14  privileged information: "Communications, discussion, meetings, analyses and the
15  decision-making process regarding measures taken or contemplated by Mattel
16  including, without limitation, any legal action brought or threatened to be brought
17  (including demand letters or other notices) against Bryant including, without
18  limitation, the filing of the Complaint."[38]  MGA will obtain more than sufficient
19  information regarding Mattel's relevant knowledge through testimony on Topic Nos.

20
21  [33]  MGA's Motion, at p. 25.
    [34]  See Mattel's Opposition to MGA's Motion to Overrule Mattel's Relevance
22  Objection and Compel Discovery Relevant to Statute of Limitations and Laches
    Defenses (RFP, RFA & Interrogatories), dated January 31, 2008.
23  [35]  See Declaration of Michael T. Zeller ("Zeller Dec."), dated January 31, 2008,
24  ¶¶ 3-4, concurrently filed herewith.
    [36]  MGA's Motion, at p. 25.
25  [37]  Order Regarding MGA and Carter Bryant's Joint Motion to Overrule Mattel's
26  Relevance Objections and Compel Discovery Relevant to Statute of Limitations and
    Laches Defenses, dated January 9, 2008, Mumford Dec., Exh. 13.
27  [38]  See Notice of Deposition of Plaintiff and Counter-Defendant Mattel, Inc.,
28  dated December 21, 2004, Topic No. 26, Mumford Dec., Exh. 12.

1  15-21. MGA cannot show that the privileged information that is responsive to

2  Topic No. 26 specifically is "vital" to its defense.

3          Third, MGA has identified ten document requests (Request Nos. 186-

4  195) for which it seeks an Order compelling Mattel to produce "documents

5  protected by the attorney-client privilege and work privileges [sic]."[39] Those

6  requests seek information (1) that is far beyond the scope of any purportedly proper

7  waiver, (2) for which Mattel has already produced substantial non-privileged

8  information, and/or (3) that is entirely unrelated to MGA's claimed need.

9          Request Nos. 186-188 and 190-195 seek the following:

10    •    All DOCUMENTS evidencing, mentioning, referring to, or
           relating to BRYANT's involvement with, work on, or connection
11         to the conception, design, creation or development of BRATZ or
           BRATZ INTELLECTUAL PROPERTY.[40]
12
       •   All DOCUMENTS evidencing, mentioning, referring to, or
13         relating to BRYANT's involvement with, contract with, and with
           or for MGA.[41]
14
       •   All DOCUMENTS mentioning, referring to, or relating to
15         YOUR decision to sue BRYANT including, without limitation,
           COMMUNICATIONS mentioning, discussing, describing,
16         referring to, or relating to the reasons and factors that influenced
           the decision, the timing of the decision, and the date and manner
17         in which YOU made the decision.[42]

18     •   All DOCUMENTS mentioning, referring to, or relating to any
           decision not to sue BRYANT including, without limitation,
19         COMMUNICATIONS mentioning, discussing, describing,
           referring to, or relating to the reasons and factors that influenced
20         the decision, the timing of the decision, and the date and manner
           in which YOU made the decision.[43]

21

22    _____

23    [39]  MGA's Motion, at p. 25.
      [40]  MGA's First Set of Requests for the Production of Documents and Things on
24    Mattel, dated January 31, 2005, Request No. 186, Jan. 31 Proctor Dec., Exh. 1.
      [41]  MGA's First Set of Requests for the Production of Documents and Things on
25    Mattel, dated January 31, 2005, Request No. 187, Jan. 31 Proctor Dec., Exh. 1.
      [42]  MGA's First Set of Requests for the Production of Documents and Things on
26    Mattel, dated January 31, 2005, Request No. 188, Jan. 31 Proctor Dec., Exh. 1.
      [43]  MGA's First Set of Requests for the Production of Documents and Things on
27    Mattel, dated January 31, 2005, Request No. 190, Jan. 31 Proctor Dec., Exh. 1.

28

- All DOCUMENTS evidencing, mentioning, referring to, or relating to the date and manner in which YOU first learned of BRYANT's involvement with, work on, and connection to the conception, design, creation or development of BRATZ or BRATZ INTELLECTUAL PROPERTY.[44]

- All DOCUMENTS evidencing, mentioning, referring to, or relating to the date and manner in which YOU first learned of BRYANT's involvement with, contract with, and work with or for MGA.[45]

- All DOCUMENTS evidencing, supporting, documenting or relating to the reasons why YOU did not file a lawsuit against BRYANT sooner than the date of YOUR original complaint including, without limitation, DOCUMENTS evidencing or reflecting YOUR efforts to investigate BRYANT's involvement with, contract with, and with or for MGA.[46]

- All DOCUMENTS evidencing, supporting, documenting or relating to the reasons why YOU did not file a lawsuit against BRYANT sooner than the date of YOUR original complaint including, without limitation, DOCUMENTS evidencing or reflecting YOUR efforts to investigate the nature and scope of BRYANT's involvement with, work on, or connection to the conception, design, creation or development of BRATZ.[47]

- All DOCUMENTS evidencing, supporting, documenting, or relating to the reasons why YOU did not file a lawsuit against BRYANT sooner than the date of YOUR original complaint including, without limitation, all non-privileged DOCUMENTS evidencing or reflecting YOUR efforts to investigate the nature and scope of BRYANT's involvement with, work on, or connection to the conception, design, creation or development of BRATZ INTELLECTUAL PROPERTY.[48]

As with the interrogatories and requests for admission identified by MGA, Mattel has outstanding non-privilege objections to these document requests,

---

[44]   MGA's First Set of Requests for the Production of Documents and Things on Mattel, dated January 31, 2005, Request No. 191, Jan. 31 Proctor Dec., Exh. 1.
[45]   MGA's First Set of Requests for the Production of Documents and Things on Mattel, dated January 31, 2005, Request No. 192, Jan. 31 Proctor Dec., Exh. 1.
[46]   MGA's First Set of Requests for the Production of Documents and Things on Mattel, dated January 31, 2005, Request No. 193, Jan. 31 Proctor Dec., Exh. 1.
[47]   MGA's First Set of Requests for the Production of Documents and Things on Mattel, dated January 31, 2005, Request No. 194, Jan. 31 Proctor Dec., Exh. 1.
[48]   MGA's First Set of Requests for the Production of Documents and Things on Mattel, dated January 31, 2005, Request No. 195, Jan. 31 Proctor Dec., Exh. 1.

07209/2373650.1

MATTEL'S OPPOSITION TO MGA'S MOTION TO COMPEL RE PRIVILEGE WAIVER BY CLAIM ASSERTION

1    including a relevance objection that is the subject of a pending motion.[49]  In

2    addition, these requests are all far broader than what is relevant here -- when Mattel

3    had knowledge that Bryant created Bratz *while a Mattel employee* and worked for

4    MGA *while a Mattel employee*.  For example, MGA seeks all privileged information

5    that "evidences, mentions or refers to" Bryant's involvement in Bratz or work for

6    MGA.  Information related to Mattel's knowledge that Bryant worked for MGA or

7    was involved with Bratz *after he left Mattel* is not relevant to laches or the statute of

8    limitations, and certainly not "vital."

9            Moreover, to the extent the requests do seek relevant information,

10   Mattel has already produced substantial responsive non-privileged information as

11   discussed in Section I.B above.  MGA admits as much, claiming that "the discovery

12   that has been taken in this case has established that there is good reason to believe

13   that at least as early as summer 2001, when Bratz was first released, that Mattel

14   suspected, or had reason to suspect, that Bryant was involved in Bratz and that he

15   also worked for MGA while a Mattel employee."[50]  Thus MGA acknowledges that it

16   believes it has information sufficient to support its statute of limitations and laches

17   defenses.  The privileged documents MGA seeks are not "vital" to its defenses.

18           Request No. 189 seeks "[a]ll DOCUMENTS mentioning, referring to,

19   or relating to any consideration given by Mattel to acquiring MGA."[51]  Such

20   documents are entirely unrelated to the Mattel's fraudulent concealment allegation

21   or MGA's statute of limitations or laches defenses.  MGA provides no explanation

22

23

24

25   [49]  See Mattel's Opposition to MGA's Motion to Overrule Mattel's Relevance
      Objection and Compel Discovery Relevant to Statute of Limitations and Laches
26   Defenses (RFP, RFA & Interrogatories), dated January 31, 2008.

27   [50]  MGA's Motion, at p. 2 (emphasis omitted).
      [51]  MGA's First Set of Requests for the Production of Documents and Things on
28   Mattel, dated January 31, 2005, Request No. 189, Jan. 31 Proctor Dec., Exh. 1.

1  for its request for an Order compelling the production of documents in response to

2  that request.[52]

## IV.   THE DISCOVERY MASTER HAS ALREADY RULED THAT WITHHELD DOCUMENTS RELATED TO MATTEL'S 2002 INVESTIGATIONS ARE PRIVILEGED

6           The Discovery Master has already held that Mattel has properly

7  withheld documents related to its 2002 investigations as privileged.  MGA's claim

8  that Mattel has waived the privilege as to those documents is contrary to that

9  decision, and it is not entitled to another bite at the apple.

10          On April 10, 2007, MGA and Bryant filed a motion to compel

11  documents from Mattel's global security files that Mattel withheld on privilege

12  grounds.[53]  In particular, MGA sought an Order compelling the production of

13  documents related to the same Mattel inquiries (the Spring 2002 investigation

14  regarding potential copyright infringement of "Toon Teens" and the August 2002

15  investigation regarding the anonymous letter) that MGA references in the present

16  motion.[54]  As here, MGA and Bryant had argued on the motion to compel that

17  Mattel should be compelled to produce such documents, claiming Mattel had failed

18  to produce documents reflecting "any findings by any Mattel employee or agent as

19  to when Mattel first learned or what Mattel first knew concerning Mr. Bryant's

20  involvement with MGA or the Bratz line of dolls."[55]  MGA and Bryant also argued,

21

22  [52]  Further, Request No. 195 is expressly limited to "non-privileged documents."
23  A finding of privilege waiver would thus necessary not warrant an Order compelling Mattel to produce additional documents in response to the request.

24  [53]  MGA and Bryant's Joint Motion to (1) Compel Production of Certain
25  Documents Withheld Under Claim of Privilege, (2) Attest to the Completeness of Its February 2007 Production of March 2002 Investigation Documents, and (3) De-
26  Designate Attorney's Eyes Only Documents, dated April 10, 2007, Proctor Dec., Exh. 1, Notice of Lodging, Exh. 1.
27  [54]  Id. at p. 1.
28  [55]  Id. at p. 2.

1   as they do here again, that this information was "highly relevant and strongly

2   support[s] [their] defenses based on laches and the statute of limitations."[56]

3          On May 15, 2007, the Discovery Master entered an Order denying

4   MGA's and Bryant's request that Mattel "certify that it has produced 'all responsive

5   documents concerning its investigations of Carter Bryant, MGA and/or the origins

6   of Bratz."[57]  On July 10, 2007, after an *in camera* review of the Mattel documents at

7   issue, the Discovery Master upheld Mattel's privilege claims as to nearly all the

8   documents withheld.[58]  In so holding, the Discovery Master noted that a necessary

9   element of the attorney-client privilege is that the privilege not have been waived.[59]

10  The Discovery Master therefore necessarily decided that Mattel has not waived the

11  privilege as to the documents at issue.

12         MGA seeks to alter the Discovery Master's July 10, 2007 Order by now

13  moving, yet again, to compel the production of the same documents (including those

14  relating to "Toon Teens" and the anonymous letter) that were the subject of that

15  Order and that the Discovery Master found were privileged.  The present motion is

16  thus, in reality, a motion for reconsideration because it seeks to alter the Discovery

17  Master's prior Order.  Whatever name a movant puts on a motion, "nomenclature is

18  not controlling . . . .  A court must construe whether a motion, however styled, is

19

20  [56]  Id. at pp 1-2.

21  [57]  Order Granting MGA and Bryant's Motion to Compel Production of Certain
    Documents Withheld Under Claims of Privilege for In Camera Review, and

22  Denying Motion to Attest to the Completeness of February 2007 Production, dated
    May 15, 2007, Proctor Dec., Exh. 2, Notice of Lodging, Exh. 1.

23  [58]  Order Re In Camera Review of Global Security Files, dated July 10, 2007,

24  Proctor Dec., Exh. 3, Notice of Lodging, Exh. 1.

25  [59]  The Discovery Master cited the elements of the privilege as follows: "(1)
    When legal advice of any kind is sought (2) from a professional legal adviser in his

26  or her capacity as such, (3) the communications related to that purpose, (4) made in
    confidence (5) by the client, (6) are, at the client's instance, permanently protected

27  (7) from disclosure by the client or by the legal adviser (8) *unless the protection be*

28  *waived*."  Id. at p. 2 (emphasis added).

1  appropriate for the relief requested." Bordallo v. Reyes, 763 F.2d 1098, 1101-02

2  (9th Cir. 1985) (finding that "motion for clarification" actually was such a motion

3  because it only invited interpretation of the judgment, and did not seek to alter or

4  amend the judgment).  Here, by seeking to compel production of the same

5  documents allegedly not protected by privilege that the Discovery Master already

6  declined to order produced because they are privileged, MGA's motion seeks

7  reconsideration.

8          MGA also provides no basis for that decision to be reconsidered.  There

9  does not exist, nor does MGA contend that there exists, "any material difference in

10 fact or law from that presented" to the Discovery Master "that in the exercise of

11 reasonable diligence could not have been known to [MGA] at the time of [the

12 Order]." See Local Rule 7-18(a).  There also has not been, nor does MGA contend

13 there has been, an "emergence of new material facts or change of law occurring after

14 the time" the Order was entered.  See Local Rule 7-18(b).  Finally, MGA has not

15 demonstrated "a manifest showing of a failure to consider material facts" presented

16 to the Discovery Master before his decision, nor even suggested there was such a

17 failure. See Local Rule 7-18(c).  To the contrary, far from making any of these

18 necessary showings, MGA omits any reference to the Discovery Master's decision.

19 MGA's failure to raise its purported implied waiver arguments in its prior motion

20 and its present failure to identify new facts or law bars its motion as to the

21 investigation files.[60]  MGA's motion should be denied for that reason alone.[61]

22

---

23  [60]   See, e.g., Wood v. Midland Credit Management, Inc., 2005 WL 3159637, at
    *1 (C.D. Cal. 2005) (denying motion to reconsider under Local Rule 7-18 because it
24  "is not based no new facts, new law, or a failure of the Court to consider material
    facts"); Watanabe v. Home Depot USA, Inc., 2003 WL 24272634, at *2 (C.D. Cal.
25  2003) (same, where "Defendant does not raise any new evidence or show that this
    Court failed to consider evidence presented to it in Plaintiff's original Motion");
26  Motorola, Inc. v. J.B. Rodgers Mechanical Contractors, 215 F.R.D. 581, 586 (D.
27  Ariz. 2003) (denying motion to reconsider under Central District standards (Local
    Rule 7-18) because "Plaintiffs have not shown material differences in fact or law
28  (footnote continued)

1

### Conclusion

2          For the foregoing reasons, Mattel respectfully requests that the Court

3   deny MGA's motion to compel.

4   DATED: January 31, 2008          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
5

6

7                                    By _____
                                        B. Dylan Proctor
8                                       Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18   that were not and could not have been presented to the Court prior to its decision.
     Nor do Plaintiffs allege new facts, an intervening change in the law, or that the
19   Court failed to consider facts that were before it.").

20      [61]   Having failed in its moving papers to make any argument or factual showing
     on this issue, despite the fact that Mattel raised the issue in opposition to MGA's
21   first motion, it would be improper for MGA to attempt to do so in its reply. See,
22   e.g., Beverly Health & Rehabilitation Services, Inc., 2006 WL 3593472, at *7 (E.D.
     Cal. 2006) ("It is well established in this circuit that courts typically do not consider
23   arguments raised for the first time in a reply brief, as doing so may unfairly deprive
24   [the other party] of its opportunity to make a meaningful response."). Indeed, Judge
     Larson previously noted its impropriety when one of the MGA defendants had
25   engaged in such a tactic before him. Order re Motions Heard on June 11, 2007, at
26   31, n. 7 (citing and quoting In re Intuit Privacy Litigation, 138 F. Supp. 2d 1272,
     1275 n.3 (C.D. Cal. 2001) ("this court does not consider arguments raised anew for
27   the first time in a reply brief as to do so would unfairly deny the non-moving party
28   an opportunity to respond."), Proctor Dec., Exh. 9, Notice of Lodging, Exh. 1.

MATTEL'S OPPOSITION TO MGA'S MOTION TO COMPEL RE PRIVILEGE WAIVER BY CLAIM ASSERTION