QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| vs. | Hon. Stephen G. Larson |
| MATTEL, INC., a Delaware corporation, | MATTEL, INC.'S REPLY IN SUPPORT OF ITS *EX PARTE* APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC |
| Defendant. | MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET |
| AND CONSOLIDATED ACTIONS | HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER |

[Supplemental Declaration of Christopher Tayback and Exhibits; Application to File Under Seal filed concurrently herewith]

Hearing Date:      February 4, 2008
Time:                    10:00 a.m.

**Phase 1:**
Discovery Cut-Off:   January 28, 2008
Pre-Trial Conference: May 5, 2008
Trial Date:               May 27, 2008

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ......................................................................................................... 3

I.      THIS APPLICATION IS PROPERLY BEFORE THIS COURT .................... 3

II.     MATTEL HAS NOT DELAYED ................................................................... 4

III.    MATTEL HAS NOT WAIVED ITS RIGHTS ................................................ 6

IV.     MATTEL IS ENTITLED TO OBTAIN RELEVANT EVIDENCE
        FROM THESE WITNESSES EVEN IF THEY ARE NOT PARTIES ........... 7

        A.      Non-Parties Are Still Required to Comply With Proper
                Discovery Requests, Even Over Privacy Objections ............................ 7

        B.      Mattel Has a Compelling Need for the Documents ............................... 9

        C.      There is Reason to Doubt the Integrity of the Existing Production ...... 11

CONCLUSION ..................................................................................................... 13

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>Cases</u>

4

5
Foltz v. State Farm Mut. Auto. Ins. Co.,
    331 F.3d 1122 (9th Cir. 2003) ...................................................................... 9

6
In re Ford Motor Co.,
    345 F.3d 1315 (11th Cir. 2003) ................................................................... 11

7

8
Keith H. v. Long Beach Unified School District,
    228 F.R.D. 652 (C.D. Cal. 2005) .......................................................... 7, 8, 9

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-ii-

## **Preliminary Statement**

Margaret Hatch-Leahy, Elise Cloonan and Veronica Marlow's ("the witnesses") 25-page opposition to Mattel's *ex parte* application makes four basic arguments: (i) the application should be heard by the Discovery Master rather than the Court; (ii) it is not necessary to proceed *ex parte*; (iii) because two of the witnesses conducted an initial "key word" search of electronic documents for production, Mattel has somehow "waived" the right to obtain otherwise responsive, relevant evidence, including to graphics files pertaining to the origins and development of Bratz; and (iv) as "non-parties," the witnesses' assertion of a vague privacy interest in unspecified computer data means that Mattel is not entitled to otherwise relevant evidence. Stripped of its vitriolic name-calling, the Opposition offers no reason not to grant Mattel's application.

Perhaps most tellingly, nowhere do these witnesses attest that they have in fact produced *all* relevant evidence or even all documents that would be responsive to the outstanding requests. Nor do these witnesses deny with proof that additional relevant evidence is contained on the computers and "zip disk" -- which is labeled "Bratz" -- that Mattel seeks to inspect. Instead, they take the position that they need not produce computer evidence bearing directly on primary issues in the case -- when, where and how Carter Bryant created "Bratz" and who assisted him -- because they are "non-parties." That is far from dispositive. Even if they were simply disinterested third parties, the witnesses' relevant information bearing on core Bratz ownership issues is obviously discoverable. And, they are not disinterested -- Marlow, for example, has been involved in commercial bribery of Mattel employees by paying them to work on Bratz for years[1] and has herself received millions of dollars for her

---

[1]  See Deposition Transcript of Veronica Marlow ("Marlow Depo. Tr."), dated December 28, 2007, at 288:8-289:21, 306:8-25, 307:8-308:1, 363:15-21, Tayback Supplemental Declaration ("Tayback Supp. Dec."), Exh. M.

1  work on Bratz from both Bryant and MGA.[2]

2       Nor do any of the witnesses' other objections hold water.  They state that Mattel

3  agreed to a "protocol" for initially searching the witnesses' electronic data.  However,

4  that "protocol" was, by its *express* terms, without prejudice to Mattel seeking the relief

5  it seeks here (and was never applied to Ms. Marlow's computers in any event because

6  her counsel had previously denied she even had relevant computers).[3]  The "protocol"

7  does not define the parameters of Mattel's rights to obtain relevant information -- the

8  <u>Federal Rules</u> do that.

9       The witnesses next claim that Mattel's *ex parte* is purportedly "replete with

10 factual misstatements," citing Mattel's purported "misstatement" that the witnesses are

11 "represented by 'counsel retained by MGA.'"[4]  However, *MGA itself* has testified that it

12 is paying the fees for Ms. Hatch-Leahy and Ms. Marlow, among others.[5]   The

13 witnesses' lawyer is also listed as a recipient on MGA emails to litigation counsel in

14 this case,[6] and MGA previously stated on the record that the witnesses' counsel was

15 acting for MGA in order to assert privilege.[7]  Indeed, the witnesses' counsel even lists

16 MGA as one of his clients on his website.[8]  That this is the ostensible "misstatement"

17 the witnesses choose to highlight is itself telling.

18      The point is simply this:  Mattel has not waived its rights, and it is entitled to

19 relevant evidence, including (1) the contents of the "zip disk" labeled "Bratz" (which

20 Cloonan has in her possession, but which was likely left at her home by Carter Bryant

---

[2]   Deposition Transcript of Richard Irmen ("Irmen Depo. Tr."), dated September 28, 2007, at 270:20-271:7, Tayback Dec. Exh. 3; Marlow Depo Tr. at 113:10-12, Tayback Supp. Dec., Exh. M.

[3]   <u>See</u> Opposition Brief ("Opp.") at 11:2-9.

[4]   Opp. at 4 fn. 14.

[5]   Deposition Transcript of Lisa Tonnu ("Tonnu Depo. Tr."), Vol. 5, dated January 24, 2008, at 1182:3-6 and 1183:23-1184:3, Tayback Supp. Dec., Exh. A.

[6]   Tayback Supp. Dec., Exh. B (email from MGA showing Larry McFarland, Ms. Cloonan's counsel, as a recipient).

[7]    Deposition Transcript of Margaret Hatch-Leahy ("Leahy Depo. Tr."), dated December 12, 2007, at 260:3 - 264:4, Tayback Supp. Dec., Exh. P.

when they were roommates in 2000), (2) information on Marlow's computers, which have not been searched even under the protocol, (3) any graphical files or other non-key word searchable data related to "Bratz," which the witnesses concede were not searched for under the protocol, (4) information relating to the Mattel employee co-conspirators who were involved in the creation of Bratz, of whom Mattel first learned one month ago, and (5) any data that reflects the deletion of documents related to "Bratz," which can likely only be illuminated by forensic examination of the hard drives.  Mattel also needs access to Cloonan's hard drive to show that Bryant's testimony that her computer was used for his Bratz work done while employed by Mattel is false -- impeaching his testimony and leading to an inference that, in truth, he used Mattel's computers for that work.  Mattel's application should be granted.

## Argument

## I.    THIS APPLICATION IS PROPERLY BEFORE THIS COURT

In search of a pithy way to attack Mattel but avoid the merits (which the witnesses ignore until the 15th page of their Opposition), the witnesses claim that Mattel should have brought the instant motion to the Discovery Master because he is the proper arbiter of discovery disputes involving third parties.[9]

But Mattel does not merely seek further production of electronic data; it also seeks to amend the expert disclosure deadline, which *only* this Court can do.  The witnesses call that request "a ruse" because, they argue, there are other discovery disputes pending for which Mattel has not sought relief from the expert disclosure deadline.  This only proves Mattel's point.  The discovery sought here is *not like* much other fact discovery because it requires analysis by a forensic computer expert.  Only an expert will be able to determine if certain relevant files were deleted from any of these

---

[8]   See http://www.kmwlaw.com, Tayback Supp. Dec., Exh. N.
[9]   Opp. at 1:17-2:2.

computers (or the disk), and when.[10]  Only expert analysis can locate the graphical files not captured by prior searches or indeed that were concealed by, for instance, using coded file names like the "Angel" code name used by Bryant for Bratz, or other such names.   That is why, here, but not as to some other evidence defendants have suppressed, Mattel now seeks modification of the Scheduling Order.  The Discovery Master cannot provide such relief.

## II.   <u>MATTEL HAS NOT DELAYED</u>

Although these witnesses were subpoenaed for depositions and document production in 2005, Mattel was not able to take these depositions until mid-to-late December 2007 because of MGA's and the witnesses' delays.[11]  Numerous new facts were disclosed during these depositions that clarified the need to inspect or more fully inspect these witnesses' computers.

First, the witnesses do not dispute that Mattel discovered for the first time at Ms. Cloonan's deposition on December 14 that a "zip disk" in Ms. Cloonan's possession was labeled "Bratz."  This disk had been provided to her lawyer in April 2005 but was never previously disclosed to Mattel.  Although the witnesses' counsel disavows any impropriety in failing to disclose to Mattel the highly relevant label on the disk between April 2005 and the deposition in December 2007, he does not dispute that the deposition was Mattel's first notice of it.[12]

Second, the witnesses do not dispute that Mattel learned for the first time at Ms. Marlow's deposition on December 28, 2007 that yet more Mattel employees were secretly paid to work on Bratz while they were Mattel employees.[13]  The witnesses

---

[10]   It is expected there will be expert testimony in this case about the use of software called "Evidence Eliminator" by Carter Bryant to purge files from his computers. Deposition Transcript of Carter Bryant ("Bryant Depo. Tr."), Vol. 4, dated January 23, 2008, at 742:6-743:4, Tayback Supp. Dec., Exh. E.

[11]   Mattel took the deposition of Ms. Hatch-Leahy on December 12; Ms. Cloonan on December 14; and Ms. Marlow on December 28, 2007.

[12]   Opp. at 5, fn. 16 and 24, fn. 74.

[13]   Opp. at 19:20-20:2 and 21, fn. 63.

suggest that Mattel knew of these witnesses' *names* in late November 2007[14] -- but that disclosure was both seriously belated itself and a far cry from knowing they had any *role* in "Bratz."  Whatever "key word" terms were searched, these individuals' names -- discovered only after the "key word" searches were performed -- were not among them.  Thus, the witnesses have, without a doubt, withheld critical evidence relating to these Mattel employees' work on Bratz.  Mattel learned this only a month ago.[15]

After Mattel learned this new information, far from delaying, Mattel began the process of trying to get an agreement regarding searching the computers and zip disk from counsel for the witnesses.  Starting on December 20, 2007, right after the Cloonan deposition where it was first revealed, Mattel asked that the "zip disk" labeled "Bratz" be produced in its entirety.[16]  Although he now claims that no further search is warranted, at that time, the witnesses' counsel stated he invited a dialogue regarding a revised search protocol.[17]  Then, after the December 28, 2007 discovery of the additional participants in the development of Bratz, Mattel asked for additional "key word" searches to account for the new discoveries and to allow closer inspection of any non-key-word-searchable images (which Mattel had previously understood and expected would be turned over if they relate to Bratz, a reasonable assumption that Mattel now has reason to question in light of the witnesses' and MGA's failure to produce documents relating to Cabrera, Morales and Salazar, among other things).[18]

---

[14]   Id.

[15]   The Opposition attempts to characterize the role of these individuals as merely "assist[ing] Ms. Marlow with the sewing of the Bratz fashions and nothing more."  (Id. at 21 fn. 63.)  That MGA will make this contention itself only serves to highlight that Mattel *needs* to examine computer evidence to see what was and was not done, and by whom --especially with respect to "graphical" files intended to depict the appearance of the dolls, which are incapable of text-based "key word" searches.

[16]   Tayback Supp. Dec., Exh. F (letter from Mattel counsel to Ms. Cloonan's counsel requesting production of zip disk).

[17]   McFarland Dec., Exh. 11 ("If you have a proposal for a revised [search] protocol please provide it to me.").

[18]   See Tayback Dec. Exh. 19.  For example, although subpoenaed in 2005, Cloonan did not respond until 2007, and at that time claimed not to have responsive documents-- even though we now know that she did, including the "Bratz" zip disk.  See Ana Elise (footnote continued)

1  Counsel for the witnesses then stated he was unavailable over the holidays,
2  repeating several times that he would respond when he returned.[19]  As a result, Mattel
3  could not proceed with a meet and confer until January 9, at which time counsel
4  claimed that he was "considering" Mattel's proposal.[20]  It was not until a week later, on
5  January 16, that he notified Mattel that he was rejecting all of its proposals.  Mattel then
6  filed this application.  Mattel has proceeded diligently.

7  **III.   <u>MATTEL HAS NOT WAIVED ITS RIGHTS</u>**

8  The Opposition details the back and forth that led to the initial review "protocol"
9  in the Fall of 2007.  But it ignores the seminal point:  Mattel specifically reserved its
10 right to seek full discovery of relevant, responsive evidence -- especially if, as here, it
11 became apparent that relevant evidence was not being produced pursuant to it.  The
12 agreement states that it did <u>not</u> "foreclose Mattel from seeking production and
13 inspection of any matter, including without limitation the original data, drives or
14 documents."[21]  For the reasons set forth in Mattel's original application and above, it
15 has only recently become apparent that relevant electronic evidence information is in
16 the witnesses' possession, on their drives, and has not been produced.  The witnesses'
17 responses to Mattel's subpoenas -- served in 2005 -- indicated that all responsive
18 documents would be produced (or that there were none).[22]  They have not been.  Mattel
19 has not waived its rights to seek them now.

20
21
22
_____

Cloonan's Responses and Objections to Mattel's Subpoena for Production of Documents, dated June 26, 2007 (all found at McFarland Dec., Exh. 33).
[19]  Tayback Supp. Dec., para. 8, and Exhs. G and H (communications between Mattel's counsel and Ms. Cloonan's counsel regarding scheduling).
[20]  Tayback Supp. Dec., para. 9.
[21]  Tayback Dec., Exh. 14 (agreement).
[22]  Marlow's Amended Objections and Responses to Subpoena, dated May 12, 2005; Hatch-Leahy's Amended Objections and Responses to Subpoena, dated May 12, 2005; and Cloonan's Responses and Objections to Mattel's Subpoena for Production of Documents, dated June 26, 2007, McFarland Dec., Exh. 33.

## IV.   MATTEL IS ENTITLED TO OBTAIN RELEVANT EVIDENCE FROM THESE WITNESSES EVEN IF THEY ARE NOT PARTIES

### A.   Non-Parties Are Still Required to Comply With Proper Discovery Requests, Even Over Privacy Objections

The Opposition touts the witnesses' status as "non-parties" who have vaguely described "privacy interests" in the items Mattel seeks to search.[23]  Yet these witnesses are unquestionably "interested" ones.  Ms. Marlow received millions of dollars from MGA and Bryant as a "finder's fee" for placing Bryant with MGA;[24]  Marlow worked with Bryant and other Mattel employees on Bratz, and indeed made payments to those other Mattel employees for years.[25]  Hatch-Leahy worked on sculpts for the first Bratz dolls.[26]  And, according to Bryant, Cloonan prepared portions of the written Bratz pitch materials that Bryant presented to MGA while both Bryant and Cloonan were employed by Mattel, on her computer, and Ms. Cloonan's computer was used to create various aspects of Bratz.[27]  Discovery of relevant information is proper even from truly disinterested non-parties, notwithstanding generalized privacy objections.  Here, with witnesses (and counsel) so closely tied to Bryant and MGA, Mattel is undoubtedly entitled to obtain relevant electronic evidence.

As Mattel noted in its application--and the Opposition ignores--this Court consistently allows discovery over non-party privacy objections where there is a protective order and a need for the discovery.  As the Court has explained, "[r]esolution of a privacy objection . . . requires a balancing of the need for the information sought against the privacy right asserted."  <u>Keith H. v. Long Beach Unified School District</u>, 228 F.R.D. 652, 657 (C.D. Cal. 2005) (granting motion to compel even where

---

[23]   Opp. at 16-20.
[24]   Ex Parte Application at 1:15-18; Marlow Depo Tr. at 113:10-114:18, Tayback Supp. Dec., Exh. M.
[25]   Ex Parte Application at 1:18-24.
[26]   Ex Parte Application at 5:1-9.
[27]   Ex Parte Application at 5:10-14.

"plaintiff's document requests indisputably implicate significant privacy rights of minors who are not parties to this litigation . . . [because] the information sought *could* help support plaintiff's claim . . . [and] '[p]laintiff's need for the requested [information] is great [since it] is unlikely to be available from any other source than [d]efendant's files'") (quotations omitted, emphasis added).  The witnesses' status as non-parties does not relieve them of their obligation to produce relevant, responsive information even where some privacy interest is implicated where, as here, there is a strong protective order in place.  <u>Keith</u>, 228 F.R.D. at 657 ("'[A] carefully drafted protective order [can] minimize the impact of this disclosure.'") (quotations omitted).  In fact, the witnesses have *previously* produced ostensibly "private" non-responsive information from their computers (which was identified by key word search) because their interests were adequately protected by the existing protective order.[28]

In any case, the witnesses' assertions of a privacy interest in the electronic data Mattel seeks are dubious at best.  Ms. Cloonan has failed to identify *whether* any specific private, non-responsive information is contained on the zip disk labeled "Bratz," let alone what specific private information is implicated.  Although Ms. Cloonan now submits a declaration claiming that the "zip disk" is her property,[29] she testified at deposition that she did not know what was on the disk.[30]  Even now, her declaration does not assert that any *particular* private information is on that disk, only that it is "likely" (in her uninformed opinion) to be private in some unspecified way.  Yet if no one is willing or able to say what is on the disk, how can she fairly assert a privacy interest in its contents?  And, practically speaking, the disk itself is labeled "Bratz."  The most likely scenario, of course, is that it was left there by her former

---

[28]   Tayback Dec., Exh. 18 (October 26, 2007 letter from counsel for Ms. Cloonan stating that he was producing certain non-privileged, personal, non-responsive documents that had been identified by the "key word" search pursuant to the protective order).

[29]   Opp. at 23:21-24:5 and McFarland Dec., Exh. 32.

1   roommate, Bryant, and either contains or once contained evidence of Bryant's Bratz

2   work.  Similarly, neither Cloonan, Marlow, nor Hatch-Leahy has identified any specific

3   private information that will be unfairly disclosed through the requested inspection

4   process of their computers.[31]

5       In an analogous setting--the enforcement of protective orders--courts require that

6   the party seeking to shield information must show the privacy interest implicated with

7   particularity.  Thus, in the context of protective orders, the Ninth Circuit has held that a

8   party must show "for each particular document" that "specific prejudice or harm will

9   result if no protective order is granted."  See Foltz v. State Farm Mut. Auto. Ins. Co.,

10  331 F.3d 1122, 1130 (9th Cir. 2003) (internal cites omitted).  And even then, where

11  third-party parties show *specific* privacy interests (which the witnesses here have not

12  done), this Court still balances the privacy interest with the moving parties' need for

13  discovery.  Accordingly, as this Court has held, even where "indisputably ... significant

14  privacy rights" of non-party minors are implicated, relevant discovery can be ordered.

15  Keith, 228 F.R.D. at 657-8 (internal cites omitted).

16      **B.**     **Mattel Has a Compelling Need for the Documents**

17      The Opposition cites to cases which hold that the moving party failed to establish

18  the need for inspection of computer data,[32] but that is a truism.  It also glosses over the

19  important point:  there *is* substantial evidence that warrants inspection of the computers

20

21  _____

22  [30]    Deposition Transcript of Ana Elise Cloonan ("Cloonan Depo. Tr."), dated
    December 14, 2007, at 246:24-249:9, Tayback Dec., Exh. 9.

23  [31]    Nor have they even suggested that the inspection requested by Mattel will disrupt
    their systems.  The Opposition suggests that courts generally avoid allowing opposing

24  parties to intrude into the integrity of a witnesses' document maintenance system.
    (Opp. at 15:18-18:17.)  But Mattel seeks nothing that would render any "system"

25  inaccessible by the witnesses or otherwise interfere with its operation.  The computers
    of Ms. Cloonan and Hatch-Leahy have *already* been imaged, and are being held by a

26  third-party, as is the zip disk labeled "Bratz," and the witnesses retain the original.
    Marlow's computers likewise can be imaged.  Thus, nothing about Mattel's request

27  impacts the viability of the witnesses' access to their computers.
    [32]    See Opp. at 17:22-18:17.

28

1   and zip disk at issue here.  In such instances courts allow the moving party to inspect

2   the computer data itself.[33]

3         First, Marlow's testimony revealed new participants--whose role MGA and

4   Bryant had evaded disclosing for the last four years, despite discovery requests aimed at

5   exactly that issue--which have never been the subject of any search for responsive

6   computer documents.[34]   Moreover, Mattel has subsequently learned that Marlow

7   secretly paid these witnesses in cash through false names and false social security

8   numbers in order to conceal their activities[35] -- information also not disclosed to Mattel

9   even at her deposition.

10        Second, the Opposition presents no evidence to show that any of the witnesses'

11  computers were ever searched for graphical files, even though such documents would

12  be responsive to the subpoenas.  Indeed, Ms. Marlow's computer was never subject to

13  any search protocol, and no such graphical files--even those presumably sent by Bryant

14  for Marlow's newly identified "assistants" to work from--were produced.  Thus, even

15  though Marlow admittedly worked with the newly disclosed Mattel employees on

16  Bratz, she produced no computer documents related in any way to the work they

17  admittedly performed.[36]  Similarly, even though Ms. Hatch-Leahy admittedly was in

18  possession of a "digital Bratz head sculpt" during the 2000 Bratz development process,

19  no such computer document was produced.[37]

20        Third, Mattel needs access to Cloonan's computer to assess the veracity of Bryant

21  and show that he used further Mattel resources to work on Bratz.  Bryant has testified

22  that he did not use Mattel's resources to create Bratz, but likely used Cloonan's

---

[33]  See, e.g., cases cited in Opp. at 19:8-20.

[34]  See Ex Parte Application at 7:2-6.

[35]  Transcript of the interview of Ana Cabrera, dated January 2, 2008, at 118:3-25, Tayback Supp. Dec. Exh. Q; Transcript of the Interview of Beatriz Morales, dated January 14, 2008, at 115:2-20, Tayback Supp. Dec., Exh. R.

[36]  Tayback Supp. Dec., para. 15.

[37]  Tayback Supp. Dec., para. 16.

1  computer to do so.[38]  However, Cloonan did not produce evidence of such work when
2  her computer was searched under the protocol.  Examination of the Cloonan hard drive
3  is required to expose Bryant's testimony as untruthful, and prove that Bryant actually
4  used Mattel resources for his work, not Cloonan's computer.  What is <u>not</u> on it is as
5  important as what is.

6       Fourth, there can be no doubt that the present or former contents of the "zip" disk
7  labeled "Bratz" are likely to lead to discoverable, even critical, evidence.  Yet only one
8  document was produced from the "key word" search of that disk.[39]

9       Lastly, what has been *deleted* from the computers is also extremely important
10 evidence, only available by forensic inspection.  At his deposition last week, Carter
11 Bryant admitted to using a program called "Evidence Eliminator" to delete computer
12 files;[40] thus, there is discoverable evidence which can only be obtained by seeing what
13 is NOT on the computers for this reason as well.

14       **C.     <u>There is Reason to Doubt the Integrity of the Existing Production</u>**

15       The witnesses cite cases which even they acknowledge stand for the proposition
16 that where there is evidence of "improper conduct on the part of the responding party,"
17 such as "non-compliance with discovery rules," courts may allow inspection of
18 computer hard drives, regardless of the other circumstances.[41]  <u>See</u> <u>In re Ford Motor</u>
19 <u>Co.</u>, 345 F. 3d 1315, 1317 (11th Cir. 2003).  Even assuming these witnesses had some
20 legitimate privacy objection to the requested inspections (which they do not), there is
21 ample reason to doubt the integrity of these witnesses' document production.

22       First, although Marlow received a subpoena for documents in April 2005 and
23 purported to produce all relevant documents prior to her December 28, 2007 deposition,

24

25       _____
         [38]    Bryant Depo. Tr., Vol. 1, at 250:13-21; Bryant Depo. Tr., Vol. 2, at 292:18-
26 293:3; 294:3-4; 294:11-295:17 Tayback Supp. Dec. Exh. E.
         [39]    Tayback Supp. Dec., para. 12 and Exh. L (copy of document Cloonan produced).
27       [40]    Bryant Depo. Tr., Vol. 4, at 742:6-743:4, Tayback Supp. Dec., Exh. E.
         [41]    Opp. at 19:5-20.
28

she produced highly relevant documents exceedingly late.  In late November 2007, Marlow produced, for the first time, documents reflecting the names of the newly revealed Mattel employees (though not explaining their role).  At her deposition itself, her counsel produced 40 more pages of documents, including a low-quality copy of a *contract* between Marlow and MGA--a document of obvious relevance which should not have been previously withheld.[42]  Ms. Marlow's counsel also produced heavily reacted documents and now refuses to produce un-redacted versions notwithstanding a prior representation by her counsel that she would produce all documents in unredacted form.[43]

These redactions are particularly suspicious also because Ms. Hatch-Leahy had originally produced heavily redacted day planners from the critical 2000 time period.[44] Later, mid-way through her deposition, counsel finally produced a lesser-redacted version that showed highly relevant information related to Mattel and Bratz had been redacted.  For example, previously redacted were references to Ms. Hatch-Leahy's conversations with Mattel employees at the time she was secretly working on Bratz, as well as references to "Angel" from mid-2000, Bryant's and MGA's code name for Bratz, among other things.[45]

And the "zip disk" in Ms. Cloonan's possession was turned over to her counsel in April 2005.  Yet, it was not until the *day of her deposition*, over two years later, that Mattel learned (by asking the right questions) that it was labeled "Bratz," and only a single document produced from it (not related to Bratz).[46]  Mattel needs access to the hard drives to see what else has been concealed by the witnesses' and their counsel's gamesmanship.

---

[42]  Tayback Supp. Dec., para.17.
[43]  Tayback Supp. Dec., Exh. O (examples of redacted documents produced).
[44]  Tayback Supp. Dec., Exh. C (redacted planner produced by Hatch-Leahy).
[45]  Tayback Supp. Dec., Exh. D (second redacted planner).
[46]  See Ex Parte Application at 7:7-17.

1

## **Conclusion**

2        Mattel respectfully requests that the Court grant its *ex parte* application.

3  DATED:  February 1, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

4

5                                    By /s/ Christopher Tayback
6                                       Christopher Tayback
                                        Attorneys for Mattel, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28