QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> MATTEL, INC., a Delaware corporation, <br><br> Defendant. <br><br> AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx) <br><br> Consolidated with Case Nos. CV 04-09059 and CV 05-02727 <br><br> **DISCOVERY MATTER** <br> **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]** <br><br> [PUBLICLY REDACTED] MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION; AND <br><br> MEMORANDUM OF POINTS AND AUTHORITIES <br><br> [Declaration of B. Dylan Proctor filed concurrently herewith] <br><br> Hearing Date: T.B.D. <br> Time: T.B.D. <br> Place: T.B.D. |

07209/2378647.1

MATTEL'S MOTION TO COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at a conference before Discovery Master Hon. Edward Infante (Ret.) that will occur on a date and at a time to be determined, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court for an order compelling defendant MGA Entertainment, Inc. to produce documents responsive to Mattel's Request for Production No. 48, included within its First Set of Requests for Production of Documents and Tangible Things to MGA Entertainment Inc., dated March 14, 2005.

This Motion is made pursuant to Federal Rules of Civil Procedure 34 and 37 on the grounds that Mattel's Request No. 48 seeks relevant information and MGA has no reasonable basis to withhold production of documents responsive to the Request. The Discovery Master has jurisdiction to hear this motion pursuant to the Stipulation and Order for Appointment of a Discovery Master, and pursuant to a stipulation between the parties dated January 28, 2008. See Declaration of B. Dylan Proctor dated February 4, 2008, Exh. 13.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of B. Dylan Proctor filed concurrently herewith, the records and files of this Court, and all other matters of which the Court may take judicial notice.

## Certificate Of Compliance With Local Rule 37-1

The parties met and conferred several times on January 18, 2008 and thereafter regarding Mattel's Request and MGA's objections thereto, but were unable to reach agreement.

DATED: February 4, 2008

Respectfully submitted,

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By_____
B. Dylan Proctor
Attorneys for Mattel, Inc.

209/2376650.2

- 3 -
MATTEL'S MOTION TO COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 2

ARGUMENT .................................................................................................................. 5

I.   COMMUNICATIONS REGARDING THIS ACTION ARE RELEVANT AND DISCOVERABLE ........................................................ 5

    A.   Responsive Communications Are Likely to Lead to Relevant Impeachment Evidence and Information About Witnesses ................... 6

    B.   Responsive Communications Are Likely To Be Probative of Mattel's Claims and Defenses ................................................................ 7

    C.   Responsive Communications By MGA's Authorized Agents Relating to This Action Are Also Discoverable .................................... 9

    D.   Responsive Communications Involving MGA Employees Who Are Former Mattel Employees Are Discoverable ............................... 10

    E.   Mattel's Request Is Not Unduly Burdensome or Overbroad ................ 12

III. COST-SHIFTING IS NOT APPROPRIATE ....................................................... 12

CONCLUSION .............................................................................................................. 14

# TABLE OF AUTHORITIES

**Page**
**Cases**

Aiken v. Rimkus Consulting Group, Inc.,
    2007 WL 1101210 (S.D. Miss. Apr. 4, 2007) .................... 6

Bernstein v. Travelers Ins. Co.,
    447 F. Supp. 2d 1100 (N.D. Cal. 2006) .................... 5

Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc.,
    175 F.R.D. 646 (C.D. Cal. 1997) .................... 6

Cardenas v. Dorel Juvenile Group, Inc.,
    232 F.R.D. 377 (D. Kan. 2005) .................... 13

Funai Elec. Co. v. Orion Elec. Co.,
    2002 WL 1808419 (S.D.N.Y. Aug. 7, 2002) .................... 6

Morgenstern v. Int'l Alliance of Theatrical Stage Employees,
    2006 WL 2385233 (N.D. Cal. Aug. 17, 2006) .................... 13, 14

Oppenheimer Fund, Inc. v. Sanders,
    437 U.S. 340 (1978) .................... 12

Semsroth v. City of Wichita,
    239 F.R.D. 630 (D. Kan. 2006) .................... 13

Steinbach v. Credigy Receivables, Inc.,
    2006 WL 1007272 (E.D. Ky. Apr. 14, 2006) .................... 6

In re Tableware Antitrust Litig.,
    2006 WL 2043730 (N.D. Cal. May 25, 2006) .................... 13

United States v. Abel,
    469 U.S. 45 (1984) .................... 6

**Statutes**

Fed. R. Civ. P. 26 .................... 5, 13

**Other Authorities**

2000 Advisory Committee Note to Rule 26 .................... 7

Wright & Miller, Federal Practice & Procedure: Federal Rules of Evidence § 609 .. 7

## Preliminary Statement

Mattel seeks an order compelling MGA to produce a set of core, obviously relevant documents it is withholding -- non-privileged communications relating to this action.

In Request for Production No. 48 in its First Set of Requests, which is the only request at issue in this motion, Mattel seeks from MGA "[a]ll non-privileged COMMUNICATIONS between YOU and any PERSON that REFER or RELATE TO this action." By definition, such documents are relevant and discoverable -- they are communications expressly relating to this case. Yet, in response, MGA served only objections.

Even though it was not required to do so, Mattel offered to narrow the Request substantially during the meet-and-confer process. As more fully explained below, Mattel told MGA it would accept a production of those communications relating to this action, not previously produced, that involve (i) at least one high-level employee of MGA -- someone operating at the manager level or above, (ii) an authorized agent or attorney of MGA, or (iii) a former Mattel employee who left for MGA. Mattel offered these limitations to ease the burden claimed by MGA -- the burden of searching the emails of the many hundreds of individuals employed by MGA, some of whom may engage in irrelevant or uninformed "gossip" about the case.

MGA agreed in principle to produce the first category of requested documents -- communications involving high level MGA employees. However, MGA refused to perform a search for even these indisputably relevant communications involving its core personnel unless Mattel agrees to pay for it, which is unsupportable given the history of this case. Moreover, MGA steadfastly refuses to comply with the Request, no matter who pays, to the extent it calls for other communications requested by Mattel, even as narrowed. This limitation, and the balance of MGA's objections, are without merit.

Mattel seeks only those communications (that MGA has not produced previously) that refer or relate to this action -- by definition relevant communications, especially when made by MGA's authorized agents, senior personnel and employees who left Mattel for MGA. The requested communications are necessary to evaluate potential biases of witnesses and impeachment. Communications between MGA and/or its agents and third parties about this case may reveal motivations behind the testimony of third parties who testify, or other third parties who are fearful of testifying. Moreover, the communications are central to a number of Mattel claims, including Mattel's RICO Counterclaims, which allege that three MGA entities and at least 15 individuals engaged in an ongoing pattern of racketeering activity across four countries for years. The communications that Mattel seeks to compel may very well reflect ongoing predicate acts.

It is almost impossible to conceive all the myriad ways in which communications involving MGA's core personnel about this case could be relevant. In the face of MGA's objections, Mattel narrowed the Request substantially to limit the claimed burdens and to limit the Request to communications that truly are likely to be most probative, eliminating uninformed "chatter" or "gossip" about the case from entry level MGA employees. As narrowed, MGA should be compelled to produce responsive documents.

### Factual Background

<u>Mattel's Request for Production No. 48.</u> On March 14, 2005, Mattel propounded its First Set of Requests for Production of Documents and Tangible Things to MGA Entertainment Inc. (the "Requests").[1] Request for Production No. 48, included within the Requests, seeks "[a]ll non-privileged

---

[1] Mattel, Inc.'s First Set of Requests for Production of Documents and Tangible Things to MGA Entertainment Inc., dated March 14, 2005, attached to the Declaration of B. Dylan Proctor dated February 4, 2008 ("Proctor Dec.") as Exh. 1.

COMMUNICATIONS between YOU and any PERSON that REFER or RELATE TO this action" (the "Request").[2]

In its Response to this Request, MGA objects and refuses to produce *any* documents based on nothing more than boilerplate grounds, including that the Request purportedly seeks documents that are not relevant and is overbroad, unduly burdensome and oppressive.[3]

<u>Mattel's Attempts to Resolve the Dispute</u>. On January 10, 2008, Mattel wrote to MGA to request a conference on Request No. 48, in part to determine whether MGA continued to withhold documents responsive to that Request as its written responses suggest.[4] Mattel made clear to MGA that it had no desire to obtain duplicates of documents that MGA had already produced and that it hoped that most or all of the documents responsive to Request No. 48 should already have been produced pursuant to the Court's Orders regarding other requests.[5]

During several conferences of counsel, MGA confirmed that some responsive documents had already been produced, but only insofar as they are responsive to other requests.[6] MGA identified a handful of other requests it claimed covered some portion of this Request.[7] However, the requests it identified clearly do not cover the documents sought in this motion and MGA did not contend otherwise.[8] MGA objected that the Request purportedly is overbroad and unduly

---

[2] Id.
[3] MGA Entertainment, Inc.'s Responses to Mattel, Inc.'s First Set of Requests for Production of Documents and Tangible Things, dated April 13, 2005, Proctor Dec., Exh. 2.
[4] Letter from Dylan Proctor to Timothy Miller, dated Jan. 10, 2008, Proctor Dec., Exh. 3.
[5] Id.
[6] Proctor Dec., ¶ 6.
[7] Id.
[8] Id.

burdensome, but did not voice any other objections to the Request or dispute the relevance of responsive communications.[9]

The parties also discussed the scope of Request No. 48.[10] MGA asked Mattel to clarify whether it was seeking only communications between MGA and third parties or also internal communications between MGA employees.[11] Mattel explained that it sought both but, in the interest of resolving the parties' dispute, offered to limit the scope of the Request to communications that refer or relate to this action that (i) involve at least one MGA employee who holds or held a position of manager or higher; (ii) involve MGA's agents and/or attorneys acting on MGA's behalf; or (iii) involve a former Mattel employee who communicated about this action while employed by MGA, regardless of title.[12] Mattel believed that these limitations would alleviate MGA's concern about overbreadth because MGA has, according to MGA, only approximately 150 employees who hold the title of "manager" or "supervisor" or higher.[13] Thus, Mattel's offered limits eliminated the need for MGA to search the emails of all its personnel.

After considering Mattel's offer, MGA agreed to search for and produce the first category of documents, but demanded that Mattel pay.[14] MGA estimated the cost would be somewhere between $20,000 and $45,000.[15] Without explanation, MGA also steadfastly refused to produce the second category of documents, non-privileged communications involving its agents and attorneys

---

[9] Id. ¶ 5.
[10] Id.
[11] See Letter from Dylan Proctor to Amy Park, dated Jan. 18, 2008, Proctor Dec. Exh. 4, and Letter from Amy Park to Dylan Proctor, dated Jan. 18, 2008, Proctor Dec. Exh. 5.
[12] Proctor Dec., ¶ 7.
[13] Id. ¶ 8.
[14] Id.
[15] Id.

acting on MGA's behalf, and has not taken a final position regarding the third category of communications involving former Mattel employees.[16]

Thus, Mattel currently seeks an order compelling MGA to produce communications that refer or relate to this action that (i) involve at least one MGA employee who holds or held a position of manager or higher; (ii) involve MGA's agents and/or attorneys acting on MGA's behalf; and (iii) involve a former Mattel employee who communicated about this action while employed by MGA, regardless of title.

### Argument

### I. COMMUNICATIONS REGARDING THIS ACTION ARE RELEVANT AND DISCOVERABLE

Rule 26 of the Federal Rules of Civil Procedure provides that a party is entitled to discovery that is "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Information sought in discovery need not be admissible at trial if it appears to be "reasonably calculated to lead to the discovery of admissible evidence." Id. The test for relevancy is "whether there appears to be a sufficient connection between the target of the discovery probe and the issues to be litigated to support a conclusion that there is a decent chance that the party propounding the discovery would be able to use the information it uncovers either as evidence or to help find evidence." Bernstein v. Travelers Ins. Co., 447 F. Supp. 2d 1100, 1105 (N.D. Cal. 2006).

Here, where Mattel's Request is by its terms limited to communications *referring or relating to this action*, there is not just "a decent chance," but a virtual certainty, that responsive documents will permit Mattel to "use the information it uncovers either as evidence or to help find evidence." Id. Indeed, at no point during

---

[16] Id.

the parties' meet and confer did MGA even suggest this Request is not likely to lead to the discovery of admissible evidence.[17] It clearly is. For this reason, courts consistently uphold similar requests for production. See, e.g., Steinbach v. Crediqy Receivables, Inc., 2006 WL 1007272, at *9 (E.D. Ky. Apr. 14, 2006) (overruling defendants' objections to requests for production for all "internal communications with respect to Plaintiff, . . . [the] lawsuit, or the claims in [the] [Amended] Complaint"); Aiken v. Rimkus Consulting Group, Inc., 2007 WL 1101210, at *1-2 (S.D. Miss. Apr. 4, 2007) (permitting plaintiff to discover all "communications" and "correspondence" relating to its claim against defendant); Funai Elec. Co. v. Orion Elec. Co., 2002 WL 1808419 (S.D.N.Y. Aug. 7, 2002) (overruling overbreadth objection to plaintiff's requests for production calling for "all communications" between defendant and any third party pertaining to plaintiff or plaintiff's products). The Court should do the same here.

### A. Responsive Communications Are Likely to Lead to Relevant Impeachment Evidence and Information About Witnesses

First, responsive communications are likely to lead to discoverable evidence about witnesses to this case. Communications relating to this action between MGA and third parties, in particular, are likely to be highly probative of *the relationship* between MGA and those third parties. For example, if Isaac Larian has discussed this action or potential testimony in this action with Farhad Larian, or former MGA employees who have or will be deposed, or third party vendors, Mattel is entitled to discover the content of such communications to discover any potential biases. Likewise, if Mr. Larian has discussed the content of testimony or agreements to pay fees, for instance, with any of MGA's current employees, Mattel is entitled to discover those discussions. Communications that bear on "the credibility of . . . witness[es]" are discoverable. See, e.g., United States v. Abel,

---

[17] Id. ¶ 5.

469 U.S. 45, 50-51 (1984); <u>Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc.</u>, 175 F.R.D. 646, 650 (C.D. Cal. 1997); see also 2000 Advisory Committee Note to Rule 26 (explaining that "information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable"); Wright & Miller, <u>Federal Practice & Procedure: Federal Rules of Evidence</u> § 6095 (explaining bias is a "particularly favored basis for attacking credibility"). Clearly, communications *relating to this case* involving MGA's senior personnel or authorized agents and attorneys are likely to lead to admissible bias evidence.

### B. Responsive Communications Are Likely To Be Probative of Mattel's Claims and Defenses

Responsive communications about this action are also likely to lead to evidence that is directly probative of Mattel's claims and defenses. It is difficult to know *how* such communications will be relevant without knowing their content. But it is not difficult to know, and in fact is apparent, that communications which relate to this action and involve MGA's core personnel could themselves be powerful evidence. Indeed, such communications are admissions that can be introduced by Mattel at trial. Statements by MGA's core employees about this case are discoverable.

The potential probative value of responsive communications is especially clear as to Mattel's RICO claims. As the Court is aware, Mattel has alleged that the alleged RICO enterprises are ongoing ventures whose purpose is to damage Mattel:

> Counter-defendants have engaged in an ongoing, widespread pattern of illegal acts, consisting of inducing Mattel employees to steal Mattel's

-7-
MATTEL'S MOTION TO COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION

confidential information or other property and take it with them to MGA to further MGA's business interests and to harm Mattel.[18] Mattel alleges that the RICO conspiracy and violations involved at least three MGA entities and 15 individuals, and that the conspiracy and violations spanned across at least four countries for several years, continuing to this day.[19] The alleged RICO conspiracy involves numerous MGA employees who were included in communications to facilitate, implement and carry out the directives of Larian and others.[20]

Pursuant to MGA's ongoing unlawful practices, Mattel alleges that MGA is in frequent contact with Mattel personnel to attempt to further the enterprises' unlawful activities. For example, Mattel alleges that Ron Brawer, a former Mattel employee who became MGA's Executive Vice-President of Sales and Marketing,

> has had contacts with Mattel employees, both by telephone and by electronic mail. Based on his knowledge of Mattel's operations and the roles of certain Mattel employees, he has targeted certain Mattel employees who have broad access to Mattel proprietary information in an effort to induce and encourage them to join MGA and to steal or otherwise wrongfully misappropriate Mattel confidential information and trade secrets. Brawer has done so by promising these Mattel employees salaries 25 percent or more higher than they earn at Mattel and stating to them that they should not be concerned by legal action

---

[18] Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007 ("SAAC") ¶ 5 at 30, Proctor Dec., Exh. 8.
[19] Id. ¶¶ 21-105 at 34-62.
[20] Id.

taken by Mattel to protect its trade secrets and its rights because such claims are hard to prove and easy to defeat.[21]

Or, to take another example, Mattel alleges, with respect to former Mattel employees who left for MGA Mexico, that:

[REDACTED PURSUANT TO PROTECTIVE ORDER][22]

MGA's communications with Mattel employees about this action are obviously discoverable. Likewise, communications by Brawer or Machado, for example, with others internal to MGA about this action are also clearly discoverable. Indeed, responsive communications that further the alleged enterprises' unlawful scheme would themselves be predicate acts, thus constituting not only admissions but actual elements of Mattel's claims.

As the Court also knows, Mattel's RICO claims include allegations of spoliation of evidence. For example, Mattel alleges that Larian had his computers "wiped" to destroy evidence.[23] Any internal MGA communications about gathering documents relevant to this action (or destroying evidence relevant to this action) are obviously highly relevant and discoverable.

Thus, the ways in which responsive documents could be probative are varied and widespread. It is impossible to list all of these ways without seeing the content of the communications. But, it is self-evident that MGA's senior employees' communications about this case are relevant.

### C. Responsive Communications By MGA's Authorized Agents Relating to This Action Are Also Discoverable

During the meet and confer process, MGA balked at the idea of producing non-privileged communications relating to this action which involve

---

[21] Id. ¶ 69 at 48-49.
[22] See Mattel's Supplemental Responses to MGA's First Set of Interrogatories to Mattel, Inc., dated December 7, 2007, at 28-29, Proctor Dec., Exh. 9.
[23] See SAAC ¶ 92(c) at 58-59, Proctor Dec., Exh. 8.

-9-
MATTEL'S MOTION TO COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION

MGA's authorized agents, including its attorneys. It is not clear why. Such communications are clearly relevant for the same reasons that communications about this case involving MGA's core personnel are relevant -- they could present valuable impeachment evidence and reveal witnesses' biases, and could present valuable admissions relevant to liability issues.

For example, communications between MGA's former counsel and third parties about their prospective testimony or knowledge or documents they possess are obviously relevant. Notes of a conversation taken by an attorney may be work product, but communications *between* MGA's counsel and third parties about this case generally will not be privileged. Yet they could be hugely important. For example, if a third party who Mattel has subpoenaed admitted to MGA that it knows where documents sought by Mattel can be found, Mattel is entitled to know that. If the communications reflect the substance of the witness's knowledge, Mattel is entitled to know that as well. Again, there are any number of ways in which responsive communications could be relevant.

### D. Responsive Communications Involving MGA Employees Who Are Former Mattel Employees Are Discoverable

Finally, communications relating to this action which involve individuals who left Mattel for MGA are also likely to be highly relevant, whether or not MGA's managers are involved in the communications. Again, while it is difficult to know *how* such communications will be relevant without seeing their content, former Mattel employee communications about this case are not random chatter or gossip which are unlikely to be informed or pertinent (as statements by other entry level employees could be). Rather, such communications are likely to be highly informed.

1     According to MGA, MGA, MGA Mexico and MGA Hong Kong have
2  **[REDACTED PURSUANT TO PROTECTIVE ORDER]**.[24] These individuals
3  are involved in this case in a very direct sense: Mattel claims that MGA serially,
4  and unlawfully, solicits Mattel employees and induces them to steal Mattel trade
5  secrets.[25] For this reason, the Discovery Master has in the past compelled MGA to
6  produce documents relating to this group of former Mattel employees who left for
7  MGA, including documents in response to requests for:

- All COMMUNICATIONS between YOU and any PERSON RELATING TO the departure from MATTEL of any current or former MATTEL employee or contractor; and

- All COMMUNICATIONS between YOU and any current or former MATTEL employee or contractor RELATING TO the ownership of any idea, concept, design, or product.[26]

12  MGA objected to both these requests as "grossly overbroad and unduly
13  burdensome."[27] Nevertheless, based on Mattel's explanation that the requests sought
14  documents "regarding MGA's alleged theft of Mattel's trade secrets, and in
15  particular, the theft of trade secrets through targeting and hiring of current and
16  former Mattel employees," the Discovery Master ordered MGA to produce the
17  communications.[28]

18     So too here. Communications involving former Mattel employees who
19  left for MGA are discoverable.

---

[24] MGA Entertainment, Inc.'s Supplemental Responses to Mattel, Inc.'s Revised Third Set of Interrogatories, dated Nov. 30, 2007, at 64-71, Proctor Dec., Exh. 10.
[25] SAAC ¶¶ 5, 77 at 30, 51-52, Proctor Dec., Exh. 8.
[26] See Discovery Master's Order, dated Aug. 13, 2007, at 13-14 (addressing Request for Production Nos. 138 and 140 in Mattel's First Set of Requests for Documents and Things Re Claims of Unfair Competition to MGA), Proctor Dec., Exh. 11.
[27] Id. at 5.
[28] Id. at 12-14.

### E. Mattel's Request Is Not Unduly Burdensome or Overbroad

Mattel expects that MGA's primary objection will be that Mattel's Request purportedly is overbroad or unduly burdensome. It is not.

As framed, Mattel's Request seeks all communications between MGA and anyone relating to this action. In a good faith attempt to resolve this dispute, Mattel has substantially narrowed the request to not apply to *all* of MGA -- which has [REDACTED PURSUANT TO PROTECTIVE ORDER][29] -- but *only* (i) its core personnel, (ii) its authorized agents and attorneys who communicate about this action, and (iii) former Mattel employees at MGA. This represents a finite, reasonable list of individuals whose communications about this case are likely to be probative either of claims or biases. Mattel has no desire to obtain random, low level employees' uniformed discussions about this action. But communications about this action by core MGA individuals are discoverable. That is all Mattel seeks. The Request is not overbroad or unduly burdensome.

## III.  COST-SHIFTING IS NOT APPROPRIATE

MGA agreed to search and produce the first category of documents requested by Mattel, if Mattel pays. Mattel should not be required to do so.

Cost shifting is inappropriate in the absence of an undue burden. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978) (explaining that the "presumption is that the responding party must bear the expense of complying with discovery requests," but may seek a protective order under Rule 26(c) for "undue burden or expense"); Morgenstern v. Int'l Alliance of Theatrical Stage Employees, 2006 WL 2385233, at *5 (N.D. Cal. Aug. 17, 2006) ("Cost-shifting should only be *considered* when discovery imposes an "undue burden or expense" that outweighs the likely benefit of the discovery.") (emphasis added).

---

[29]  See Roster of MGA Employees, Proctor Dec., Exh. 12.

Courts consider several factors to decide whether a discovery request is unduly burdensome, including (i) the specificity of the discovery request; (ii) the quantity of information available from other and more easily accessed sources; (iii) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources; (iv) the importance of the issues at stake in the litigation; and (v) the parties' resources. See, e.g., Semsroth v. City of Wichita, 239 F.R.D. 630, 636-67 (D. Kan. 2006).

Applying these factors, MGA cannot credibly claim that producing indisputably relevant documents is unduly burdensome. Mattel's request is narrowly crafted to obtain only those communications involving core MGA individuals, not all employees, and those involving third parties and agents and former Mattel employees; MGA uniquely possesses these communications and Mattel is unable to obtain them from other sources; responsive communications are likely to lead to evidence that is directly probative of Mattel's claims and likely to include impeachment material and evidence of witnesses' biases; and in the context of this litigation and given MGA's resources, its estimated costs are not unreasonably high. See e.g., Cardenas v. Dorel Juvenile Group, Inc., 232 F.R.D. 377, 380 (D. Kan. 2005) (explaining that objecting party "has the burden to show not only undue burden or expense, but that the burden or expense is unreasonable in light of the benefits to be secured from the discovery"); In re Tableware Antitrust Litig., 2006 WL 2043730, at *3 (N.D. Cal. May 25, 2006) (rejecting cost-shifting where "discovery is relevant and was timely requested"); Morgenstern, 2006 WL 2385233, at *5 (rejecting cost-shifting request where "potential value of . . . information outweighs cost").

Moreover, even if undue burden could be shown here, and it cannot, cost shifting should be rejected. If cost shifting were ordered here, it would become the norm as to nearly every discovery request, rather than an exception to be applied judiciously.

The Discovery Master should compel MGA to produce the communications that Mattel seeks in this motion and bear all costs therefor.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Discovery Master compel MGA to produce all communications that are responsive to Request for Production No. 48 and that (i) involve at least one MGA employee who holds or held a position of manager or higher; (ii) involve MGA's agents and/or attorneys acting on MGA's behalf; or (iii) involve a former Mattel employee who communicated about this action while employed by MGA, regardless of title.

DATED: February 4, 2008

Respectfully submitted,

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/
B. Dylan Proctor
Attorney for Mattel, Inc.