# Exhibit 6

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2 | John B. Quinn (Bar No. 90378)
  | (johnquinn@quinnemanuel.com)
  | Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
  | Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
  | Timothy L. Alger (Bar No. 160303)
5 | (timalger@quinnemanuel.com)
  | 865 South Figueroa Street, 10th Floor
6 | Los Angeles, California 90017-2543
  | Telephone: (213) 443-3000
7 | Facsimile: (213) 443-3100

8 | Attorneys for Mattel, Inc.

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

12 | CARTER BRYANT, an individual,

13 | Plaintiff,

14 | v.

15 | MATTEL, INC., a Delaware corporation,

16 | Defendant.

17 |

18 | AND CONSOLIDATED CASES.

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS RE CLAIMS OF UNFAIR COMPETITION TO MGA ENTERTAINMENT, INC.

21   Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Mattel,

22 Inc. hereby requests that MGA Entertainment, Inc. ("MGA") respond to these

23 document requests ("Requests") and make available for inspection and copying

24 originals of the following documents within 30 days of service at the offices of

25 Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th

26 floor, Los Angeles, CA 90017. MGA shall be obligated to supplement responses to

27 these requests at such times and to the extent required by Rule 26(e) of the Federal

28 Rules of Civil Procedure.

EXHIBIT _U_ PAGE 128

12-18

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

## I.  DEFINITIONS

For purposes of these Requests, the following definitions apply:

A.  The terms "YOU," "YOUR" and "MGA" mean MGA Entertainment, Inc. and any individual or entity acting directly or indirectly by, through, under or on behalf of MGA Entertainment, Inc., including but not limited to current or former directors, officers, employees, agents, contractors, attorneys, accountants, or representatives of MGA Entertainment, Inc. and any corporation, partnership, association, trust, parent, subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest, and any other PERSON acting on its behalf.

B.  The term "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

C.  "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 1001 of the Federal Rules of Evidence and Rule 34 of the Federal Rules of Civil Procedure and shall include all writings, including but not limited to handwriting, typewriting, printing, image, photograph, photocopy, digital file of any kind, transmittal by (or as an attachment to) electronic mail (including instant messages and text messages) or facsimile, video and audio recordings, and every other means of recording upon any tangible thing, any form of communication or representation, and any record thereby created, regardless of the manner in which the record has been stored, and all non-identical copies of such DOCUMENTS, in the possession, custody, or control of YOU, YOUR counsel, or any other PERSON acting on YOUR behalf.

D.  The term "COMMUNICATION," in the plural as well as the singular, means any transmittal and/or receipt of information, whether such was oral or written, and whether such was by chance, prearranged, formal or informal, and

EXHIBIT ___ PAGE 129

1  specifically includes, but is not limited to, conversations in person, telephone

2  conversations, electronic mail (including instant messages and text messages),

3  voicemail, letters, memoranda, statements, media releases, magazine and newspaper

4  articles, and video and audio transmissions.

5        E.    "EMBODIMENT" means any representation of the identified

6  product or its retail packaging, whether two-dimensional or three-dimensional, and

7  whether in tangible, digital, electronic or other form, including but not limited to all

8  works, designs, artwork, sketches, drawings, illustrations, representations,

9  depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models,

10  samples, reductions to practice, developments, inventions and/or improvements, as

11  well as all other items, things and DOCUMENTS in which any of the foregoing are

12  or have been expressed, embodied, contained, fixed or reflected in any manner,

13  whether in whole or in part.

14        F.    "CONTESTED MGA PRODUCTS" means the CONTESTED

15  BRATZ DOLLS PRODUCTS, the CONTESTED BRATZ PETZ PRODUCTS, the

16  CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD, the

17  CONTESTED 4-EVER BEST FRIENDS PRODUCTS, the CONTESTED

18  MOMMY'S LITTLE DOLL PRODUCTS, and the CONTESTED ALIENRACERS

19  PRODUCTS, and any doll, toy, portion thereof, or version thereof that is now or has

20  ever been known as, or sold, offered for sale, licensed, offered for license or

21  marketed under the name or terms "Bratz," "4-ever Best Friends," "Mommy's

22  Little," "Alienracers," or any derivative thereof, that provides a basis for any claim

23  by YOU against MATTEL, including but not limited to "Bratz Dolls," "Bratz

24  Dogz," "Winter Wonderland," "Bratz Sportz," "Formal Funk," "Sun-Kissed

25  Summer," "Funky Fashion Makeover Head," "Runway Disco," "4-ever Best

26  Friends," "Mommy's Little Patient," and "Alienracers."

27        G.    "CONTESTED BRATZ DOLLS PRODUCTS" means any of

28  the following that provides a basis for any claim by YOU against MATTEL: (i) any

07975/1928319.2

EXHIBIT _C_ PAGE 130

1  EMBODIMENT or project ever known by the name "Bratz" or any derivative

2  thereof (whether in whole or in part and regardless of what such EMBODIMENT or

3  project is or has been also, previously or subsequently called) and any doll or any

4  portion thereof that is now or has ever been known as, or sold, offered for sale,

5  licensed, offered for license or marketed under, the name or term "Bratz" or any

6  derivative thereof (whether in whole or in part and regardless of what such doll is or

7  has been also, previously or subsequently called), and all prototypes, models,

8  samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

9  playset and accessory that YOU distribute under the name "Bratz" or any derivative

10  thereof; and/or (iii) any and all other goods, product packaging, advertisements,

11  promotional materials or other thing or item or material manufactured, produced,

12  printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,

13  imported, exported, licensed, offered for license, sold or offered for sale by YOU or

14  on YOUR behalf under the name "Bratz" or any derivative thereof.

15          H.    "CONTESTED BRATZ PETZ PRODUCTS" means any of the

16  following that provides a basis for any claim by YOU against MATTEL:  (i) any

17  EMBODIMENT or project ever known by the name "Bratz Petz" or any derivative

18  thereof (whether in whole or in part and regardless of what such EMBODIMENT or

19  project is or has been also, previously or subsequently called) and any toy pet or any

20  portion thereof that is now or has ever been known as, or sold, offered for sale,

21  licensed, offered for license or marketed under, the name or term "Bratz" or any

22  derivative thereof (whether in whole or in part and regardless of what such toy pet is

23  or has been also, previously or subsequently called), and all prototypes, models,

24  samples and versions of such EMBODIMENT, toy pet or any portion thereof; (ii)

25  any playset and accessory that YOU distribute under the name "Bratz Petz" or any

26  derivative thereof; and/or (iii) any and all other goods, product packaging,

27  advertisements, promotional materials or other thing or item or material

28  manufactured, produced, printed, ordered, marketed, advertised, promoted,

07975/1928319.2

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT 4 PAGE 131

1  displayed, distributed, shipped, imported, exported, licensed, offered for license,

2  sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Petz" or

3  any derivative thereof.

4       I.     "CONTESTED BRATZ FUNKY FASHION MAKEOVER

5  HEAD" means any of the following that provides a basis for any claim by YOU

6  against MATTEL:  (i) any EMBODIMENT or project ever known by the name

7  "Bratz Funky Fashion Makeover Head" or any derivative thereof (whether in whole

8  or in part and regardless of what such EMBODIMENT or project is or has been

9  also, previously or subsequently called) and any styling head or any portion thereof

10 that is now or has ever been known as, or sold, offered for sale, licensed, offered for

11 license or marketed under, the name or term "Bratz" or any derivative thereof

12 (whether in whole or in part and regardless of what such styling head is or has been

13 also, previously or subsequently called), and all prototypes, models, samples and

14 versions of such EMBODIMENT, styling head or any portion thereof; (ii) any

15 accessory that YOU distribute under the name "Bratz Funky Fashion Makeover

16 Head" or any derivative thereof; and/or (iii) any and all other goods, product

17 packaging, advertisements, promotional materials or other thing or item or material

18 manufactured, produced, printed, ordered, marketed, advertised, promoted,

19 displayed, distributed, shipped, imported, exported, licensed, offered for license,

20 sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Funky

21 Fashion Makeover Head" or any derivative thereof.

22       J.     "CONTESTED 4-EVER BEST FRIENDS PRODUCTS" means

23 any of the following that provides a basis for any claim by YOU against MATTEL:

24 (i) any EMBODIMENT or project ever known by the name "4-ever Best Friends" or

25 any derivative thereof (whether in whole or in part and regardless of what such

26 EMBODIMENT or project is or has been also, previously or subsequently called)

27 and any doll or any portion thereof that is now or has ever been known as, or sold,

28 offered for sale, licensed, offered for license or marketed under, the name or term

EXHIBIT ⟨⟨ . . .   132

1  "4-ever Best Friends" or any derivative thereof (whether in whole or in part and

2  regardless of what such doll is or has been also, previously or subsequently called),

3  and all prototypes, models, samples and versions of such EMBODIMENT, doll or

4  any portion thereof; (ii) any playset and accessory that YOU distribute under the

5  name "4-ever Best Friends" or any derivative thereof; and/or (iii) any and all other

6  goods, product packaging, advertisements, promotional materials or other thing or

7  item or material manufactured, produced, printed, ordered, marketed, advertised,

8  promoted, displayed, distributed, shipped, imported, exported, licensed, offered for

9  license, sold or offered for sale by YOU or on YOUR behalf under the name "4-ever

10 Best Friends" or any derivative thereof.

11        K.    "CONTESTED MOMMY'S LITTLE DOLL PRODUCTS"

12 means any of the following that provides a basis for any claim by YOU against

13 MATTEL: (i) any EMBODIMENT or project ever known by the name "Mommy's

14 Little Patient" or similar name or any derivative thereof (whether in whole or in part

15 and regardless of what such EMBODIMENT or project is or has been also,

16 previously or subsequently called) and any doll or any portion thereof that is now or

17 has ever been known as, or sold, offered for sale, licensed, offered for license or

18 marketed under, the name or term "Mommy's Little Patient" or similar name or any

19 derivative thereof (whether in whole or in part and regardless of what such doll is or

20 has been also, previously or subsequently called), and all prototypes, models,

21 samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

22 playset and accessory that YOU distribute under the name "Mommy's Little Patient"

23 or similar name or any derivative thereof; and/or (iii) any and all other goods,

24 product packaging, advertisements, promotional materials or other thing or item or

25 material manufactured, produced, printed, ordered, marketed, advertised, promoted,

26 displayed, distributed, shipped, imported, exported, licensed, offered for license,

27 sold or offered for sale by YOU or on YOUR behalf under the name "Mommy's

28 Little Patient" or similar name or any derivative thereof.

1         L.     "CONTESTED ALIENRACERS PRODUCTS" means any of

2    the following that provides a basis for any claim by YOU against MATTEL: (i) any

3    EMBODIMENT or project ever known by the name "Alienracers" or any derivative

4    thereof (whether in whole or in part and regardless of what such EMBODIMENT or

5    project is or has been also, previously or subsequently called) and any toy vehicle,

6    character, or any portion thereof that is now or has ever been known as, or sold,

7    offered for sale, licensed, offered for license or marketed under, the name or term

8    "Alienracers" or any derivative thereof (whether in whole or in part and regardless

9    of what such toy is or has been also, previously or subsequently called), and all

10   prototypes, models, samples and versions of such EMBODIMENT, toy vehicle,

11   character, or any portion thereof; (ii) any playset and accessory that YOU distribute

12   under the name "Alienracers" or any derivative thereof; and/or (iii) any and all other

13   goods, product packaging, advertisements, promotional materials or other thing or

14   item or material manufactured, produced, printed, ordered, marketed, advertised,

15   promoted, displayed, distributed, shipped, imported, exported, licensed, offered for

16   license, sold or offered for sale by YOU or on YOUR behalf under the name

17   "Alienracers" or any derivative thereof.

18        M.    "CONTESTED MATTEL PRODUCTS" means the

19   CONTESTED MATTEL MY SCENE DOLLS PRODUCTS, the CONTESTED

20   MATTEL MY SCENE PETS PRODUCTS, the CONTESTED MATTEL MY

21   SCENE STYLING HEAD, the CONTESTED MATTEL WEE-3 PRODUCTS, the

22   CONTESTED MATTEL LITTLE MOMMY DOLL PRODUCTS, and the

23   CONTESTED MATTEL ACCELERACERS PRODUCTS, and any doll, toy,

24   portion thereof, or version thereof that is now or has ever been known as, or sold,

25   offered for sale, licensed, offered for license or marketed under the name or terms

26   "My Scene," "Wee-3," "Little Mommy," "AcceleRacerS," or any derivative thereof,

27   that provides a basis for any claim by YOU against MATTEL, including but not

28   limited to "My Scene Dolls," "My Scene Pets," "My Scene Chillin' Out," "My Scene

EXHIBIT __ PAGE 134

1  Miami Getaway," "My Scene Night on the Town," "My Scene Jammin' in Jamaica,"

2  "My Scene Guava Gulch Tiki Lounge," "My Scene Sound Lounge," "My Scene

3  Stylin' Head," "Mattel Wee-3," "Mattel Little Mommy Potty Training Baby Doll,"

4  and "Mattel Acceleracers."

5         N.     "CONTESTED MATTEL MY SCENE DOLLS PRODUCTS"

6  means any of the following that provides a basis for any claim by YOU against

7  MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene"

8  or any derivative thereof (whether in whole or in part and regardless of what such

9  EMBODIMENT or project is or has been also, previously or subsequently called)

10  and any doll or any portion thereof that is now or has ever been known as, or sold,

11  offered for sale, licensed, offered for license or marketed under, the name or term

12  "My Scene" or any derivative thereof (whether in whole or in part and regardless of

13  what such doll is or has been also, previously or subsequently called), and all

14  prototypes, models, samples and versions of such EMBODIMENT, doll or any

15  portion thereof; (ii) any playset and accessory that MATTEL distributes under the

16  name "My Scene" or any derivative thereof; and/or (iii) any and all other goods,

17  product packaging, advertisements, promotional materials or other thing or item or

18  material manufactured, produced, printed, ordered, marketed, advertised, promoted,

19  displayed, distributed, shipped, imported, exported, licensed, offered for license,

20  sold or offered for sale by MATTEL under the name "My Scene" or any derivative

21  thereof.

22         O.     "CONTESTED MATTEL MY SCENE PETS PRODUCTS"

23  means any of the following that provides a basis for any claim by YOU against

24  MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene

25  Pets" or any derivative thereof (whether in whole or in part and regardless of what

26  such EMBODIMENT or project is or has been also, previously or subsequently

27  called) and any toy pet or any portion thereof that is now or has ever been known as,

28  or sold, offered for sale, licensed, offered for license or marketed under, the name or

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT V PAGE 135

1    term "My Scene" or any derivative thereof (whether in whole or in part and

2    regardless of what such toy pet is or has been also, previously or subsequently

3    called), and all prototypes, models, samples and versions of such EMBODIMENT,

4    toy pet or any portion thereof; (ii) any playset and accessory that MATTEL

5    distributes under the name "My Scene Pets" or any derivative thereof; and/or (iii)

6    any and all other goods, product packaging, advertisements, promotional materials

7    or other thing or item or material manufactured, produced, printed, ordered,

8    marketed, advertised, promoted, displayed, distributed, shipped, imported, exported,

9    licensed, offered for license, sold or offered for sale by MATTEL under the name

10    "My Scene Pets" or any derivative thereof.

11         P.      "CONTESTED MATTEL MY SCENE STYLING HEAD"

12    means any of the following that provides a basis for any claim by YOU against

13    MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene

14    Styling Head" or any derivative thereof (whether in whole or in part and regardless

15    of what such EMBODIMENT or project is or has been also, previously or

16    subsequently called) and any styling head or any portion thereof that is now or has

17    ever been known as, or sold, offered for sale, licensed, offered for license or

18    marketed under, the name or term "My Scene" or any derivative thereof (whether in

19    whole or in part and regardless of what such styling head is or has been also,

20    previously or subsequently called), and all prototypes, models, samples and versions

21    of such EMBODIMENT, styling head or any portion thereof; (ii) any accessory that

22    MATTEL distributes under the name "My Scene Styling Head" or any derivative

23    thereof; and/or (iii) any and all other goods, product packaging, advertisements,

24    promotional materials or other thing or item or material manufactured, produced,

25    printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,

26    imported, exported, licensed, offered for license, sold or offered for sale by

27    MATTEL under the name "My Scene Styling Head" or any derivative thereof.

28

1      Q.    "CONTESTED MATTEL WEE-3 PRODUCTS" means any of

2  the following that provides a basis for any claim by YOU against MATTEL:  (i) any

3  EMBODIMENT or project ever known by the name "Wee-3" or any derivative

4  thereof (whether in whole or in part and regardless of what such EMBODIMENT or

5  project is or has been also, previously or subsequently called) and any doll or any

6  portion thereof that is now or has ever been known as, or sold, offered for sale,

7  licensed, offered for license or marketed under, the name or term "Wee-3" or any

8  derivative thereof (whether in whole or in part and regardless of what such doll is or

9  has been also, previously or subsequently called), and all prototypes, models,

10  samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

11  playset and accessory that MATTEL distributes under the name "Wee-3" or any

12  derivative thereof; and/or (iii) any and all other goods, product packaging,

13  advertisements, promotional materials or other thing or item or material

14  manufactured, produced, printed, ordered, marketed, advertised, promoted,

15  displayed, distributed, shipped, imported, exported, licensed, offered for license,

16  sold or offered for sale by MATTEL under the name "Wee-3" or any derivative

17  thereof.

18      R.    "CONTESTED MATTEL LITTLE MOMMY DOLL

19  PRODUCTS" means any of the following that provides a basis for any claim by

20  YOU against MATTEL:  (i) any EMBODIMENT or project ever known by the

21  name "Little Mommy" or any derivative thereof (whether in whole or in part and

22  regardless of what such EMBODIMENT or project is or has been also, previously or

23  subsequently called) and any doll or any portion thereof that is now or has ever been

24  known as, or sold, offered for sale, licensed, offered for license or marketed under,

25  the name or term "Little Mommy" or any derivative thereof (whether in whole or in

26  part and regardless of what such doll is or has been also, previously or subsequently

27  called), and all prototypes, models, samples and versions of such EMBODIMENT,

28  doll or any portion thereof; (ii) any playset and accessory that MATTEL distributes

07975/1928319.2

EXHIBIT ___ PAGE 131

1  under the name "Little Mommy" or any derivative thereof; and/or (iii) any and all

2  other goods, product packaging, advertisements, promotional materials or other

3  thing or item or material manufactured, produced, printed, ordered, marketed,

4  advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

5  offered for license, sold or offered for sale by MATTEL under the name "Little

6  Mommy" or any derivative thereof.

7          S.      "CONTESTED MATTEL ACCELERACERS PRODUCTS"

8  means any of the following that provides a basis for any claim by YOU against

9  MATTEL: (i) any EMBODIMENT or project ever known by the name

10  "AcceleRacers" or any derivative thereof (whether in whole or in part and regardless

11  of what such EMBODIMENT or project is or has been also, previously or

12  subsequently called) and any toy vehicle, character, or any portion thereof that is

13  now or has ever been known as, or sold, offered for sale, licensed, offered for

14  license or marketed under, the name or term "AcceleRacers" or any derivative

15  thereof (whether in whole or in part and regardless of what such toy is or has been

16  also, previously or subsequently called), and all prototypes, models, samples and

17  versions of such EMBODIMENT, toy vehicle, character, or any portion thereof; (ii)

18  any playset and accessory that MATTEL distributes under the name "AcceleRacers"

19  or any derivative thereof; and/or (iii) any and all other goods, product packaging,

20  advertisements, promotional materials or other thing or item or material

21  manufactured, produced, printed, ordered, marketed, advertised, promoted,

22  displayed, distributed, shipped, imported, exported, licensed, offered for license,

23  sold or offered for sale by MATTEL under the name "AcceleRacers" or any

24  derivative thereof.

25          T.      The term "PERSON," in the plural as well as the singular, means

26  any natural person, association, partnership, corporation, joint venture, government

27  entity, organization, trust, institution, proprietorship, or any other entity recognized

28  as having an existence under the laws in United States or any other nation.

138

1    U.    The term "RELATING TO" means any and all of the following
2    terms and their synonyms:  refer to, discuss, constitute, evidence, pertain to,
3    mention, support, contradict, negate, bear on, touch on, contain, embody, reflect,
4    identify, state, deal with, concern, comment on, respond to, relevant to, or describe.
5    V.    "COMPLAINT"  means the Complaint for False Designation of
6    Origin, Affiliation, Association or Sponsorship (15 U.S.C. § 1125(a)); Unfair
7    Competition (15 U.S.C. § 1125(a)); Cal. Bus. & Prof. Code § 17200 *et seq.* and
8    California Common Law); Dilution (15 U.S.C. § 1125(c), Cal Bus. & Prof. Code
9    § 14330 and California Common Law); and Unjust Enrichment, filed by YOU on or
10   about April 13, 2005.

11

12   **II.    INSTRUCTIONS**

13       A.    YOU are to produce all requested DOCUMENTS in YOUR
14   possession, custody or control.

15       B.    If YOU contend that YOU are not required to produce certain
16   DOCUMENTS called for by these Requests on the grounds of a privilege or
17   protection that YOU are not prepared to waive, identify each such DOCUMENT
18   and provide the following information:

19       1.        the date and type of the DOCUMENT, the author(s) and
20                 all recipients;

21       2.        the privilege or protection that YOU claim permits YOU
22                 to withhold the DOCUMENT;

23       3.        the title and subject matter of the DOCUMENT;

24       4.        any additional facts on which YOU base YOUR claim of
25                 privilege or protection; and

26       5.        the identity of the current custodian of the original of the
27                 DOCUMENT.

28

0797S/1928319.2

EXHIBIT 12 PAGE 134

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

C. DOCUMENTS shall be produced in their original file folders, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT and the PERSON for whom or department, division or office for which the DOCUMENT or the file folder is maintained shall be identified.

D. The DOCUMENTS should be produced in their complete and unaltered form. Attachments to DOCUMENTS should not be removed. The DOCUMENTS should not be cut-up, pasted over, redacted or altered in any way for any reason, including alleged nonrelevance. If emails are produced that had attachments, the attachments shall be attached when produced.

E. DOCUMENTS in electronic form shall be produced in that form.

F. In the event that any DOCUMENT called for by these requests has been destroyed or discarded, that DOCUMENT is to be identified by stating:

1. the date and type of the DOCUMENT, the author(s) and all recipients;

2. the DOCUMENT's date, subject matter, number of pages, and attachments or appendices;

3. the date of destruction or discard, manner of destruction or discard, and reason for destruction or discard;

4. the PERSONS who were authorized to carry out such destruction or discard;

5. the PERSONS who have knowledge of the content, origins, distribution and destruction of the DOCUMENT; and

6. whether any copies of the document exist and, if so, the name of the custodian of each copy.

EXHIBIT V PAGE 140

## III.   REQUESTS FOR DOCUMENTS AND THINGS

REQUEST FOR PRODUCTION NO. 1:

A sample of each of the CONTESTED MGA PRODUCTS, together with each such product's packaging and all instructions, promotional literature, coupons, bounce-back cards and any other materials inserted in or associated with such packaging.

REQUEST FOR PRODUCTION NO. 2:

A sample of each display, including but not limited to each point-of-purchase or in-store display, prepared, produced, printed, manufactured or used in connection with the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 3:

A complete copy of each advertisement or promotional statement prepared, produced, printed, broadcast, made available to anyone in any manner via the Internet, or otherwise used or disseminated in any way in connection with the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 4:

A complete copy of each COMMUNICATION, advertisement, promotional statement that provides a basis for any claim by YOU against MATTEL.

REQUEST FOR PRODUCTION NO. 5:

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, and ownership of the CONTESTED MGA PRODUCTS.

EXHIBIT __6__ PAGE __141__

1  REQUEST FOR PRODUCTION NO. 6:

2          All DOCUMENTS RELATING TO the invention, creation, origin,

3  conception, authorship, and ownership of any product packaging that provides a

4  basis for any claim by YOU against MATTEL.

5

6  REQUEST FOR PRODUCTION NO. 7:

7          All DOCUMENTS RELATING TO COMMUNICATIONS with any

8  PERSON regarding the invention, creation, origin, conception, authorship, and

9  ownership of the CONTESTED MGA PRODUCTS.

10

11  REQUEST FOR PRODUCTION NO. 8:

12          All DOCUMENTS RELATING TO COMMUNICATIONS with any

13  PERSON regarding the invention, creation, origin, conception, authorship, and

14  ownership of all product packaging that provides a basis for any claim by YOU

15  against MATTEL.

16

17  REQUEST FOR PRODUCTION NO. 9:

18          All DOCUMENTS RELATING TO the invention, creation, origin,

19  conception, authorship, design, development, production, engineering, manufacture,

20  distribution, sale, and ownership of products and packaging that YOU contend

21  provide a basis for any claim against MATTEL, whether or not such claim is made

22  in the COMPLAINT.

23

24  REQUEST FOR PRODUCTION NO. 10:

25          All DOCUMENTS RELATING TO the invention, creation, origin,

26  conception, authorship, design, development, production, engineering, manufacture,

27  distribution, sale, and ownership of all products and packaging that YOU contend

28  MATTEL copied or infringed.

-15-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT _U_ PAGE 142

REQUEST FOR PRODUCTION NO. 11:

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of the CONTESTED MATTEL PRODUCTS and their associated packaging.

REQUEST FOR PRODUCTION NO. 12:

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of all products and packaging that YOU contend MATTEL copied or infringed.

REQUEST FOR PRODUCTION NO. 13:

All DOCUMENTS RELATING TO any revision of any CONTESTED MGA PRODUCTS, including but not limited to any proposed alternatives, modifications or changes (whether or not implemented) to such CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 14:

All DOCUMENTS RELATING TO the first date of availability for retail sale of each of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 15:

All DOCUMENTS RELATING TO the first date that each of the CONTESTED MGA PRODUCTS was shown to any PERSON not employed by MGA, whether in concept, prototype, or finished form.

EXHIBIT __ PAGE __

1 REQUEST FOR PRODUCTION NO. 16:

2          All head sculptures, including all preliminary head sculptures and all

3 versions of such sculptures, made, produced or prepared in connection with the

4 CONTESTED BRATZ DOLLS PRODUCTS.

5

6 REQUEST FOR PRODUCTION NO. 17:

7          All DOCUMENTS RELATING TO the tooling for any of the

8 CONTESTED BRATZ DOLLS PRODUCTS, including but not limited to all

9 invoices, contracts, sales orders, purchase orders and payment relating thereto and

10 including but not limited to all DOCUMENTS relating to the engineering,

11 preparation, fabrication and creation of the molds and face paint masks used in

12 connection therewith and to the film and/or digital files used in connection with the

13 packaging therefor.

14

15 REQUEST FOR PRODUCTION NO. 18:

16          All DOCUMENTS RELATING TO the marketing, advertising,

17 promotion, licensing, offering for sale or sale of the CONTESTED MGA

18 PRODUCTS, including but not limited to all marketing studies, marketing plans,

19 sales plans, sales forecasts, strategies, surveys and analyses and including but not

20 limited to all catalogs, advertisements, brochures, displays and Internet publications.

21

22 REQUEST FOR PRODUCTION NO. 19:

23          All DOCUMENTS RELATING TO the ownership of any right, title or

24 interest, whether in whole or in part, in or to the CONTESTED MGA PRODUCTS.

25

26 REQUEST FOR PRODUCTION NO. 20:

27          All DOCUMENTS RELATING TO any copyright, patent, design right

28 or any other registration or application for registration of the CONTESTED MGA

EXHIBIT _6_ PAGE 144

1  PRODUCTS, including but not limited to the complete file history relating thereto,

2  all COMMUNICATIONS relating thereto, and all filings, declarations, affidavits,

3  correspondence, notes and other DOCUMENTS relating thereto.

4

5  REQUEST FOR PRODUCTION NO. 21:

6         Documents sufficient to identify each of the CONTESTED MGA

7  PRODUCTS by internal job or product number, SKU, and bar code number.

8

9  REQUEST FOR PRODUCTION NO. 22:

10        Documents sufficient to identify the individuals who worked on or

11  were involved in any manner with the invention, creation, origin, conception,

12  authorship, or design of the CONTESTED MGA PRODUCTS.

13

14  REQUEST FOR PRODUCTION NO. 23:

15        All DOCUMENTS RELATING TO the display, exhibition,

16  distribution, publication, circulation, or other dissemination of the CONTESTED

17  MGA PRODUCTS to distributors, the media, or the public, including but not

18  limited to toy and trade shows and conventions.

19

20  REQUEST FOR PRODUCTION NO. 24:

21        All DOCUMENTS RELATING TO any contracts or licenses entered

22  into, negotiated, proposed, or requested RELATING TO any of the CONTESTED

23  MGA PRODUCTS.

24

25  REQUEST FOR PRODUCTION NO. 25:

26        All DOCUMENTS RELATING TO any actual, proposed, offered, or

27  requested licensing, sale, or purchase of the CONTESTED MGA PRODUCTS,

28

EXHIBIT _6_ PAGE _145_

1   including but not limited to all contracts and proposed or offered contracts relating

2   thereto.

3

4   REQUEST FOR PRODUCTION NO. 26:

5        All DOCUMENTS RELATING TO the target market or potential

6   target market, and the demographics of any actual, potential or prospective

7   consumers, customers, purchasers or licensees of the CONTESTED MGA

8   PRODUCTS.

9

10  REQUEST FOR PRODUCTION NO. 27:

11       All DOCUMENTS RELATING TO the number of units of the

12  CONTESTED MGA PRODUCTS manufactured, produced, ordered, stored in

13  inventory, imported, exported, shipped, sold, or offered for sale by any PERSON,

14  including but not limited to YOU.

15

16  REQUEST FOR PRODUCTION NO. 28:

17       All DOCUMENTS RELATING TO revenues received by YOU in

18  connection with each of the CONTESTED MGA PRODUCTS.

19

20  REQUEST FOR PRODUCTION NO. 29:

21       All DOCUMENTS RELATING TO YOUR costs, including but not

22  limited to YOUR per-unit cost, for each of the CONTESTED MGA PRODUCTS.

23

24  REQUEST FOR PRODUCTION NO. 30:

25       All DOCUMENTS RELATING TO YOUR profits, including but not

26  limited to gross, incremental and net profits, for each of the CONTESTED MGA

27  PRODUCTS.

28

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

07975/1928319.2

EXHIBIT 6 PAGE 146

REQUEST FOR PRODUCTION NO. 31:

All DOCUMENTS RELATING TO any complaints or dissatisfaction concerning the CONTESTED MGA PRODUCTS, including but not limited to DOCUMENTS recording the returns of, or the number of or rate of defects for, such products.

REQUEST FOR PRODUCTION NO. 32:

All DOCUMENTS RELATING TO the belief of any PERSON (whether or not such belief is accurate) as to the origin, affiliation, sponsorship or association of the CONTESTED MGA PRODUCTS, including but not limited to all studies, surveys, interviews, reports, and COMMUNICATIONS regarding any such belief.

REQUEST FOR PRODUCTION NO. 33:

All DOCUMENTS RELATING TO the belief of any PERSON (whether or not such belief is accurate) as to the origin, affiliation, sponsorship or association of the CONTESTED MATTEL PRODUCTS, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such belief.

REQUEST FOR PRODUCTION NO. 34:

All DOCUMENTS RELATING TO any potential or actual confusion, any potential or actual mistake or any potential or actual deception of any PERSON as to the origin, affiliation, sponsorship or association of the CONTESTED MGA PRODUCTS, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such confusion, mistake or deception.

07975/1928319.2

EXHIBIT 6 PAGE 147

REQUEST FOR PRODUCTION NO. 35:

All DOCUMENTS RELATING TO any potential or actual confusion, any potential or actual mistake or any potential or actual deception of any PERSON as to the origin, affiliation, sponsorship or association of the CONTESTED MATTEL PRODUCTS, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such confusion, mistake or deception.

REQUEST FOR PRODUCTION NO. 36:

All DOCUMENTS RELATING TO any consumer studies, reports, surveys, interviews or reports regarding the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 37:

All DOCUMENTS RELATING TO the marketing, advertising, promotion, licensing, offering for sale or sale of the CONTESTED MATTEL PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans, sales forecasts, strategies, surveys and analyses and including but not limited to all catalogs, advertisements, brochures, displays and Internet publications.

REQUEST FOR PRODUCTION NO. 38:

All DOCUMENTS RELATING TO the ownership of any right, title or interest, whether in whole or in part, in or to the CONTESTED MATTEL PRODUCTS.

EXHIBIT C PAGE 148

1  REQUEST FOR PRODUCTION NO. 39:

2      All DOCUMENTS RELATING TO the invention, creation, origin,

3  conception, authorship, design, and ownership of the CONTESTED MATTEL

4  PRODUCTS.

5

6  REQUEST FOR PRODUCTION NO. 40:

7      All DOCUMENTS RELATING TO the display, exhibition,

8  distribution, publication, circulation, or other dissemination of the CONTESTED

9  MATTEL PRODUCTS to distributors, the media, or the public, including but not

10  limited to toy and trade shows and conventions.

11

12  REQUEST FOR PRODUCTION NO. 41:

13      All COMMUNICATIONS between YOU and any stock analyst,

14  investment analyst, investment bank, institutional lender, or venture capital fund

15  since January 1, 1999.

16

17  REQUEST FOR PRODUCTION NO. 42:

18      All COMMUNICATIONS between YOU and any individual while the

19  individual was employed by MATTEL.

20

21  REQUEST FOR PRODUCTION NO. 43:

22      All COMMUNICATIONS between YOU and MATTEL RELATING

23  TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL

24  PRODUCTS.

25

26

27

28

EXHIBIT 6 PAGE 149

1  REQUEST FOR PRODUCTION NO. 44:

2         All COMMUNICATIONS between YOU and any PERSON

3  RELATING TO the claims made in YOUR COMPLAINT or the facts that YOU

4  contend support such claims.

5

6  REQUEST FOR PRODUCTION NO. 45:

7         All DOCUMENTS RELATING TO YOUR knowledge of MATTEL's

8  alleged infringement of YOUR claimed EMBODIMENTS.

9

10  REQUEST FOR PRODUCTION NO. 46:

11         All DOCUMENTS RELATING TO any unjust enrichment, damage,

12  loss, or injury that YOU claim has been sustained by reason of any act or omission

13  by MATTEL, including but not limited to all DOCUMENTS RELATING TO any

14  alleged lost profits, lost sales, lost opportunity, lost license, price erosion,

15  consequential or incidental damage, information or intellectual property provided to

16  any competitor, or benefit obtained by any competitor, including but not limited to

17  all DOCUMENTS RELATING TO the causation for any such alleged unjust

18  enrichment, damage, loss, or injury.

19

20  REQUEST FOR PRODUCTION NO. 47:

21         All DOCUMENTS supporting YOUR contention that MATTEL

22  created, designed, derived, or developed products, packaging, and advertising using

23  concepts, products, or intellectual property owned by YOU.

24

25  REQUEST FOR PRODUCTION NO. 48:

26         All DOCUMENTS RELATING TO the copying, reproduction or use

27  of any MATTEL work, product, or EMBODIMENT by YOU or on YOUR behalf.

28

EXHIBIT _6_ PAGE _150_

1   REQUEST FOR PRODUCTION NO. 49:

2            All DOCUMENTS RELATING TO any similarity or dissimilarity

3   between, on the one hand, any of the CONTESTED MGA PRODUCTS and any

4   other work or product developed, manufactured, or distributed by any other person

5   or entity, including but not limited to MATTEL.

6

7   REQUEST FOR PRODUCTION NO. 50:

8            All DOCUMENTS RELATING TO the reasons why consumers

9   purchase any of the CONTESTED MGA PRODUCTS, including but not limited to

10  all consumer surveys, studies and comments pertaining thereto.

11

12  REQUEST FOR PRODUCTION NO. 51:

13           All DOCUMENTS RELATING TO the channels of trade or potential

14  or prospective channels of trade for the CONTESTED MGA PRODUCTS.

15

16  REQUEST FOR PRODUCTION NO. 52:

17           All DOCUMENTS RELATING TO any similarity or dissimilarity

18  between any of the CONTESTED MGA PRODUCTS and any EMBODIMENTS

19  authored, created, distributed, made, sold or offered for sale by any PERSON other

20  than YOU.

21

22  REQUEST FOR PRODUCTION NO. 53:

23           All DOCUMENTS RELATING TO any similarity or dissimilarity

24  between any of the CONTESTED MGA PRODUCTS and any of the CONTESTED

25  MATTEL PRODUCTS.

26

27

28

07975/1928319.2

-24-

EXHIBIT 𝒞 PAGE 151

REQUEST FOR PRODUCTION NO. 54:

All DOCUMENTS RELATING TO any COMMUNICATION by YOU with any news organization regarding the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 55:

All periodicals, whether they be magazines, newspapers, newsletters, or any other type of periodical, that mention the CONTESTED MGA PRODUCTS that have been published since January 1, 1999.

REQUEST FOR PRODUCTION NO. 56:

All television or radio broadcasts or cablecasts that mention the CONTESTED MGA PRODUCTS that have been disseminated since January 1, 1999.

REQUEST FOR PRODUCTION NO. 57:

All Internet postings or COMMUNICATIONS that mention the CONTESTED MGA PRODUCTS that have been disseminated since January 1, 1999.

REQUEST FOR PRODUCTION NO. 58:

All DOCUMENTS RELATING TO publicity by YOU or about the CONTESTED MGA PRODUCTS since January 1, 1999, including but not limited to advertising, media releases, and public relations material.

REQUEST FOR PRODUCTION NO. 59:

All DOCUMENTS RELATING TO any effort by YOU to recruit employees or contractors since January 1, 1999, including but not limited to

EXHIBIT 𝒰 PAGE 152

1  advertising, media releases, brochures, articles, catalogs, handbooks, and public
2  relations material.
3
4  <u>REQUEST FOR PRODUCTION NO. 60:</u>
5          All DOCUMENTS RELATING TO the hiring, engagement, or
6  retention by YOU of any current or former MATTEL employee or contractor since
7  January 1, 1999, including but not limited to all employment agreements and
8  agreements RELATING TO confidentiality or the invention, authorship, or
9  ownership of any concept or product.
10
11  <u>REQUEST FOR PRODUCTION NO. 61:</u>
12          All DOCUMENTS RELATING TO any of the CONTESTED
13  MATTEL PRODUCTS that were obtained by YOU before the date that such
14  product was first offered for sale to the general public.
15
16  <u>REQUEST FOR PRODUCTION NO. 62:</u>
17          All DOCUMENTS, since January 1, 1999, RELATING TO YOUR
18  receipt, reproduction, copying, storage, transmission, transfer, retention, destruction,
19  deletion or use of any DOCUMENTS, data and/or information, including but not
20  limited to any compilation of information, that was prepared, made, created,
21  generated, assembled or compiled by or for MATTEL and that was not publicly
22  available at the time of YOUR receipt of such DOCUMENT, data and/or
23  information.
24
25  <u>REQUEST FOR PRODUCTION NO. 63:</u>
26          All DOCUMENTS, since January 1, 1999, RELATING TO YOUR
27  knowledge of any MATTEL product prior to the time that such product had been
28

EXHIBIT <u>C</u> PAGE <u>153</u>

1  announced or disclosed by MATTEL to retailers or the public, including but not

2  limited to the CONTESTED MATTEL PRODUCTS.

3

4  REQUEST FOR PRODUCTION NO. 64:

5  All DOCUMENTS, since January 1, 1999, RELATING TO YOUR

6  receipt, reproduction, copying, storage, transmission, transfer, retention, destruction,

7  deletion or use of any MATTEL line list or other DOCUMENT prepared by

8  MATTEL identifying MATTEL products in the planning, design or development

9  phase.

10

11  REQUEST FOR PRODUCTION NO. 65:

12  Copies of all DOCUMENTS that were seized by Mexican authorities

13  from MGA's office in Mexico City, Mexico.

14

15  REQUEST FOR PRODUCTION NO. 66:

16  All DOCUMENTS RELATING TO the DOCUMENTS, data and/or

17  information that were seized by Mexican authorities from MGA's office in Mexico

18  City, Mexico.

19

20  REQUEST FOR PRODUCTION NO. 67:

21  All DOCUMENTS, including all COMMUNICATIONS, RELATING

22  to the search of MGA's office in Mexico City, Mexico that was conducted by

23  Mexican authorities.

24

25  REQUEST FOR PRODUCTION NO. 68:

26  All DOCUMENTS RELATING TO the email account

27  <plot04@aol.com>, including but not limited to all emails and attachments sent

28

EXHIBIT 12 PAGE 194

1  from, sent to, received by, transmitted by way of or through and/or stored in such

2  account in any manner.

3

4  REQUEST FOR PRODUCTION NO. 69:

5          All DOCUMENTS RELATING TO when the email account

6  <plot04@aol.com> was first registered, set up or established.

7

8  REQUEST FOR PRODUCTION NO. 70:

9          All DOCUMENTS identifying each PERSON who registered, set up,

10  established or used the email account <plot04@aol.com>.

11

12  REQUEST FOR PRODUCTION NO. 71:

13          All COMMUNICATIONS between YOU and Carlos Gustavo

14  Machado Gomez ("Machado") prior to April 20, 2004.

15

16  REQUEST FOR PRODUCTION NO. 72:

17          All DOCUMENTS RELATING TO COMMUNICATIONS between

18  YOU and Machado prior to April 20, 2004, including but not limited to all calendar

19  entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

20

21  REQUEST FOR PRODUCTION NO. 73:

22          All DOCUMENTS, including but not limited to all

23  COMMUNICATIONS with any PERSON, RELATING TO Machado prior to April

24  20, 2004.

25

26

27

28

07975/1928319.2

-28-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT C PAGE 155

1  REQUEST FOR PRODUCTION NO. 74:

2  All DOCUMENTS, including but not limited to all

3  COMMUNICATIONS with any PERSON, RELATING TO Machado's resignation

4  from Mattel.

5

6  REQUEST FOR PRODUCTION NO. 75:

7  All DOCUMENTS, including but not limited to all

8  COMMUNICATIONS with any PERSON, RELATING TO compensation, money

9  or any other item of value paid to Machado, whether directly or indirectly, by YOU.

10

11  REQUEST FOR PRODUCTION NO. 76:

12  All DOCUMENTS received by YOU, directly or indirectly, from

13  Machado RELATING TO any MATTEL product or plan.

14

15  REQUEST FOR PRODUCTION NO. 77:

16  All DOCUMENTS, including but not limited to all

17  COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt,

18  reproduction, copying, storage, transmission, transfer, retention, destruction,

19  deletion or use of any DOCUMENTS, data and/or information, including but not

20  limited to any compilation of information, that was prepared, made, created,

21  generated, assembled or compiled by or for MATTEL and that YOU received,

22  directly or indirectly, from Machado.

23

24  REQUEST FOR PRODUCTION NO. 78:

25  A copy of each personnel file maintained or created by YOU

26  RELATING TO Machado.

27

28

EXHIBIT  C  PAGE  156

1   REQUEST FOR PRODUCTION NO. 79:

2          All DOCUMENTS, including but not limited to all

3   COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

4   in part, by Machado RELATING TO any of the CONTESTED MGA PRODUCTS.

5

6   REQUEST FOR PRODUCTION NO. 80:

7          All DOCUMENTS, including but not limited to all

8   COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

9   in part, by Machado RELATING TO any of the CONTESTED MATTEL

10  PRODUCTS.

11

12  REQUEST FOR PRODUCTION NO. 81:

13         All COMMUNICATIONS between YOU and Mariana Trueba Almada

14  ("Trueba") prior to April 20, 2004.

15

16  REQUEST FOR PRODUCTION NO. 82:

17         All DOCUMENTS RELATING TO COMMUNICATIONS between

18  YOU and Trueba prior to April 20, 2004, including but not limited to all calendar

19  entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

20

21  REQUEST FOR PRODUCTION NO. 83:

22         All DOCUMENTS, including but not limited to all

23  COMMUNICATIONS with any PERSON, RELATING TO Trueba prior to April

24  20, 2004.

25

26

27

28

-30-

EXHIBIT ⊌ PAGE 157

REQUEST FOR PRODUCTION NO. 84:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Trueba's resignation from Mattel.

REQUEST FOR PRODUCTION NO. 85:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Trueba, whether directly or indirectly, by YOU.

REQUEST FOR PRODUCTION NO. 86:

All DOCUMENTS received by YOU, directly or indirectly, from Trueba RELATING TO any MATTEL product or plan.

REQUEST FOR PRODUCTION NO. 87:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Trueba.

REQUEST FOR PRODUCTION NO. 88:

A copy of each personnel file maintained or created by YOU RELATING TO Trueba.

EXHIBIT $\mathcal{Q}$ PAGE 158

1 | REQUEST FOR PRODUCTION NO. 89:

2 |        All DOCUMENTS, including but not limited to all

3 | COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

4 | in part, by Trueba RELATING TO any of the CONTESTED MGA PRODUCTS.

5 |

6 | REQUEST FOR PRODUCTION NO. 90:

7 |        All DOCUMENTS, including but not limited to all

8 | COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

9 | in part, by Trueba RELATING TO any of the CONTESTED MATTEL

10 | PRODUCTS.

11 |

12 | REQUEST FOR PRODUCTION NO. 91:

13 |        All COMMUNICATIONS between YOU and Pablo Vargas San Jose

14 | ("Vargas") prior to April 20, 2004.

15 |

16 | REQUEST FOR PRODUCTION NO. 92:

17 |        All DOCUMENTS RELATING TO COMMUNICATIONS between

18 | YOU and Vargas prior to April 20, 2004, including but not limited to all calendar

19 | entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

20 |

21 | REQUEST FOR PRODUCTION NO. 93:

22 |        All DOCUMENTS, including but not limited to all

23 | COMMUNICATIONS with any PERSON, RELATING TO Vargas prior to April

24 | 20, 2004.

25 |

26 |

27 |

28 |

EXHIBIT _C_ PAGE 159

REQUEST FOR PRODUCTION NO. 94:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Vargas' resignation from Mattel.

REQUEST FOR PRODUCTION NO. 95:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Vargas, whether directly or indirectly, by YOU.

REQUEST FOR PRODUCTION NO. 96:

All DOCUMENTS received by YOU, directly or indirectly, from Vargas RELATING TO any MATTEL product or plan.

REQUEST FOR PRODUCTION NO. 97:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Vargas.

REQUEST FOR PRODUCTION NO. 98:

A copy of each personnel file maintained or created by YOU RELATING TO Vargas.

EXHIBIT _C_ PAGE 160

REQUEST FOR PRODUCTION NO. 99:

All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Vargas RELATING TO any of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 100:

All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Vargas RELATING TO any of the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 101:

All COMMUNICATIONS between YOU and Janine Brisbois ("Brisbois") prior to September 27, 2005.

REQUEST FOR PRODUCTION NO. 102:

All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and Brisbois prior to September 27, 2005, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

REQUEST FOR PRODUCTION NO. 103:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brisbois prior to September 27, 2005.

EXHIBIT 6 PAGE 161

REQUEST FOR PRODUCTION NO. 104:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brisbois' resignation from Mattel.

REQUEST FOR PRODUCTION NO. 105:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Brisbois, whether directly or indirectly, by YOU.

REQUEST FOR PRODUCTION NO. 106:

All DOCUMENTS received by YOU, directly or indirectly, from Brisbois RELATING TO any MATTEL product or plan.

REQUEST FOR PRODUCTION NO. 107:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Brisbois.

REQUEST FOR PRODUCTION NO. 108:

A copy of each personnel file maintained or created by YOU RELATING TO Brisbois.

EXHIBIT 10 PAGE 162

1  REQUEST FOR PRODUCTION NO. 109:

2          All DOCUMENTS, including but not limited to all

3  COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

4  in part, by Brisbois RELATING TO any of the CONTESTED MGA PRODUCTS.

5

6  REQUEST FOR PRODUCTION NO. 110:

7          All DOCUMENTS, including but not limited to all

8  COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

9  in part, by Brisbois RELATING TO any of the CONTESTED MATTEL

10 PRODUCTS.

11

12 REQUEST FOR PRODUCTION NO. 111:

13         All COMMUNICATIONS between YOU and Ron Brawer ("Brawer")

14 prior to October 2, 2004.

15

16 REQUEST FOR PRODUCTION NO. 112:

17         All DOCUMENTS RELATING TO COMMUNICATIONS between

18 YOU and Brawer prior to October 2, 2004, including but not limited to all calendar

19 entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

20

21 REQUEST FOR PRODUCTION NO. 113:

22         All DOCUMENTS, including but not limited to all

23 COMMUNICATIONS with any PERSON, RELATING TO Brawer prior to

24 October 2, 2004.

25

26

27

28

EXHIBIT _C_ PAGE 163

REQUEST FOR PRODUCTION NO. 114:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brawer's resignation from Mattel.

REQUEST FOR PRODUCTION NO. 115:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Brawer, whether directly or indirectly, by YOU.

REQUEST FOR PRODUCTION NO. 116:

All DOCUMENTS received by YOU, directly or indirectly, from Brawer RELATING TO any MATTEL product or plan.

REQUEST FOR PRODUCTION NO. 117:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Brawer.

REQUEST FOR PRODUCTION NO. 118:

All DOCUMENTS RELATING TO the existence or extent of competition or substitution between any of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

EXHIBIT 6 PAGE 164

1  REQUEST FOR PRODUCTION NO. 119:

2      All DOCUMENTS RELATING TO the facts that YOU contend

3  support the claims for relief in YOUR COMPLAINT.

4

5  REQUEST FOR PRODUCTION NO. 120:

6      All DOCUMENTS RELATING TO any claim by YOU that any of the

7  CONTESTED MGA PRODUCTS have acquired secondary meaning or are famous.

8

9  REQUEST FOR PRODUCTION NO. 121:

10      All DOCUMENTS RELATING TO any claim by YOU that

11  MATTEL's actions have caused actual dilution.

12

13  REQUEST FOR PRODUCTION NO. 122:

14      All DOCUMENTS RELATING TO the allegation in Paragraph 9 of

15  YOUR COMPLAINT that "Mattel has intimidated, coerced and threatened retailers,

16  licensees, suppliers and others in the industry."

17

18  REQUEST FOR PRODUCTION NO. 123:

19      All DOCUMENTS RELATING TO the allegation in Paragraph 9 of

20  YOUR COMPLAINT that "Mattel has . . . serially imitated and copy-catted [sic] the

21  look of MGA products, trade dress, trademarks, themes, ideas, advertising and

22  packaging."

23

24  REQUEST FOR PRODUCTION NO. 124:

25      All DOCUMENTS RELATING TO the allegation in Paragraphs 34

26  and 36 of YOUR COMPLAINT that the Bratz dolls launched in 2001 were "unique

27  and distinctive."

28

EXHIBIT ℓ PAGE 105

1   REQUEST FOR PRODUCTION NO. 125:

2         All DOCUMENTS RELATING TO any allegation by YOU that YOU

3 have any legally protected interest in any of the following "themes" or any other

4 Bratz "theme" that you contend was copied by MATTEL: "Winter Wonderland,"

5 "Bratz Sportz," "Formal Funk," "Sun-Kissed Summer."

6

7   REQUEST FOR PRODUCTION NO. 126:

8         All DOCUMENTS RELATING TO any allegation by YOU that YOU

9 have any legally protected interest in any "color scheme" that you contend was

10 copied by MATTEL.

11

12   REQUEST FOR PRODUCTION NO. 127:

13         All DOCUMENTS RELATING TO the allegation in Paragraph 56 of

14 YOUR COMPLAINT that the press has confused YOUR products with those of

15 MATTEL, or vice versa.

16

17   REQUEST FOR PRODUCTION NO. 128:

18         All DOCUMENTS RELATING TO any allegation by YOU that

19 anyone has confused any commercial for YOUR Funky Fashion Makeover Head

20 with any commercial for MATTEL's My Scene Styling Head.

21

22   REQUEST FOR PRODUCTION NO. 129:

23         All DOCUMENTS RELATING TO any allegation by YOU that

24 MATTEL has used any "tag line" allegedly belonging to YOU, including but not

25 limited to "Passion for Fashion" or any derivative thereof.

26

27

28

EXHIBIT _Q_ PAGE _106_

REQUEST FOR PRODUCTION NO. 130:

All DOCUMENTS RELATING TO the allegation in Paragraph 61 of YOUR COMPLAINT that retailers have been confused by Bratz Petz and MATTEL's My Scene Pets, including but not limited to YOUR allegation that "even sophisticated retailers . . . have mistakenly merchandised 'My Scene' dogs in the middle of the 'BRATZ' section of a retail display, next to and as if they were part of MGA's 'BRATZ Petz' line."

REQUEST FOR PRODUCTION NO. 131:

All DOCUMENTS RELATING TO the allegation in Paragraph 62 of YOUR COMPLAINT that advertising executives have "expressed concern" about "Bratz" and Mattel's "My Scene," including but not limited to the alleged remarks set forth in Paragraph 62.

REQUEST FOR PRODUCTION NO. 132:

All DOCUMENTS RELATING TO the allegations in Paragraph 63 of YOUR COMPLAINT that the press "has taken notice" of alleged confusion between "Bratz" and Mattel's "My Scene," including but not limited to the alleged remarks set forth in Paragraph 63.

REQUEST FOR PRODUCTION NO. 133:

All DOCUMENTS RELATING TO the allegation in Paragraph 64 of YOUR COMPLAINT that customers have contacted YOU to purchase Mattel's "My Scene" dolls.

EXHIBIT _G_ PAGE _167_

1   REQUEST FOR PRODUCTION NO. 134:

2         All DOCUMENTS RELATING TO any allegation by YOU that YOU

3   have a legally protected interest in what YOU describe in Paragraph 71 of YOUR

4   COMPLAINT as "MGA's 'other-worldly' theme."

5

6   REQUEST FOR PRODUCTION NO. 135:

7         All DOCUMENTS RELATING TO the allegation in Paragraph 71 of

8   YOUR COMPLAINT that MATTEL's commercials and product "mimic[] MGA's

9   alien theme and commercials in which MGA's 'AlienRacers' are engaged in a 'race

10  to save the universe.'"

11

12  REQUEST FOR PRODUCTION NO. 136:

13        All DOCUMENTS RELATING TO the allegation in Paragraph 74 of

14  YOUR COMPLAINT that MATTEL has engaged in "strong-arm tactics, and other

15  illegitimate, unfair and anti-competitive means."

16

17  REQUEST FOR PRODUCTION NO. 137:

18        All DOCUMENTS RELATING TO the allegations in Paragraph 75 of

19  YOUR COMPLAINT regarding MATTEL's dealings and COMMUNICATIONS

20  with former employees, including but not limited to all COMMUNICATIONS

21  between YOU and any present or former employees or contractors of MATTEL.

22

23  REQUEST FOR PRODUCTION NO. 138:

24        All COMMUNICATIONS between YOU and any PERSON

25  RELATING TO the departure from MATTEL of any current or former MATTEL

26  employee or contractor.

27

28

-41-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT 6   PAGE 168

**REQUEST FOR PRODUCTION NO. 139:**

All COMMUNICATIONS between YOU and any PERSON RELATING TO the obligations to MATTEL, including the duty of confidentiality, of any current or former MATTEL employee or contractor.

**REQUEST FOR PRODUCTION NO. 140:**

All COMMUNICATIONS between YOU and any current or former MATTEL employee or contractor RELATING TO the ownership of any idea, concept, design, or product.

**REQUEST FOR PRODUCTION NO. 141:**

All COMMUNICATIONS between YOU and any PERSON RELATING TO the retention, destruction, transfer, or use of any information or DOCUMENTS known to or possessed by any current or former MATTEL employee or contractor.

**REQUEST FOR PRODUCTION NO. 142:**

All DOCUMENTS RELATING TO the "warnings" or "threats" alleged in Paragraph 76 of YOUR COMPLAINT, including but not limited to all COMMUNICATIONS with any present or former licensees of MATTEL.

**REQUEST FOR PRODUCTION NO. 143:**

All DOCUMENTS RELATING TO the "intimidation" alleged in Paragraph 77 of YOUR COMPLAINT, including but not limited to all COMMUNICATIONS with any present or former distributors and retailers of MGA and MATTEL products.

EXHIBIT 10 PAGE 169

REQUEST FOR PRODUCTION NO. 144:

All COMMUNICATIONS between YOU and any retailer, wholesaler or distributor RELATING TO the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 145:

All DOCUMENTS RELATING TO the allegation in Paragraph 78 of YOUR COMPLAINT that MATTEL was responsible for what YOU refer to as a "shortage of doll hair in October 2002."

REQUEST FOR PRODUCTION NO. 146:

All DOCUMENTS RELATING TO the allegation in Paragraph 79 of YOUR COMPLAINT that MATTEL has "manipulated the retail market," including but not limited to all COMMUNICATIONS with any persons RELATING TO YOUR allegation that "Mattel merchandisers have been caught tampering with MGA's retail displays."

REQUEST FOR PRODUCTION NO. 147:

All DOCUMENTS RELATING TO any allegation by YOU that MATTEL has made false statements about YOU or YOUR business practices, including but not limited to the allegations in Paragraph 79 of YOUR COMPLAINT.

REQUEST FOR PRODUCTION NO. 148:

All DOCUMENTS RELATING TO any allegation by YOU that MATTEL has violated any rules or restrictions relating to data provided to subscribers by NPD or engaged in any other wrongful conduct relating to NPD.

EXHIBIT Q PAGE 170

1    REQUEST FOR PRODUCTION NO. 149:

2            All DOCUMENTS RELATING TO any COMMUNICATIONS

3    between YOU and NPD, other than periodic reports, between January 1, 2000 and

4    the present.

5

6    REQUEST FOR PRODUCTION NO. 150:

7            DOCUMENTS sufficient to show the status of YOUR NPD

8    subscription between January 1, 2000 and the present.

9

10   REQUEST FOR PRODUCTION NO. 151:

11           All DOCUMENTS RELATING TO the allegation in Paragraph 89 of

12   YOUR COMPLAINT that MATTEL "used its influence . . . to induce CARU to

13   place onerous restrictions on MGA advertisements, and require MGA to amend

14   aspects of commercials that have gone unchallenged in other parties' commercials."

15

16   REQUEST FOR PRODUCTION NO. 152:

17           All DOCUMENTS RELATING TO any COMMUNICATIONS

18   between YOU and CARU between January 1, 2000 and the present.

19

20   REQUEST FOR PRODUCTION NO. 153:

21           All DOCUMENTS RELATING TO any allegation by YOU that

22   MATTEL has exercised improper influence with or within TIA, including but not

23   limited to the procedures for and manner in which the Toy of the Year was selected

24   for 2003.

25

26   REQUEST FOR PRODUCTION NO. 154:

27           All DOCUMENTS RELATING TO any COMMUNICATIONS with

28   TIA RELATING TO Toy of the Year since January 1, 2000.

-44-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT Ⓒ PAGE 171

**REQUEST FOR PRODUCTION NO. 155:**

All DOCUMENTS RELATING TO the allegation in Paragraph 113 of YOUR COMPLAINT that MATTEL has "willfully and maliciously used its power, influence and intimidation to threaten certain retailers, suppliers, licensees, distributors and manufacturers so as to limit, if not prevent, MGA from doing business with these retailers, suppliers, licensees, distributors and manufacturers, using its power and influence to intimidate and manipulate industry bodies."

**REQUEST FOR PRODUCTION NO. 156:**

All DOCUMENTS RELATING TO the allegation in Paragraph 113 of YOUR COMPLAINT that MATTEL has "used its power and influence to attempt to, if not actually, intimidate and threaten MGA's current and potential employees so as to cause MGA competitive injury."

**REQUEST FOR PRODUCTION NO. 157:**

YOUR quarterly and annual profit and loss statements (both audited and unaudited) for the years 2000 through the present, inclusive.

**REQUEST FOR PRODUCTION NO. 158:**

YOUR quarterly and annual financial statements (both audited and unaudited) for the years 2000 through the present, inclusive.

**REQUEST FOR PRODUCTION NO. 159:**

YOUR annual reports for each of the years 2000 through the present, inclusive.

EXHIBIT 10  PAGE 172

REQUEST FOR PRODUCTION NO. 160:

All DOCUMENTS received from MATTEL (whether directly or indirectly) by YOU at any time since January 1, 1999.

REQUEST FOR PRODUCTION NO. 161:

All DOCUMENTS that YOU have reason to believe were created by or originated from MATTEL, other than MATTEL products that YOU purchased at retail.

REQUEST FOR PRODUCTION NO. 162:

All DOCUMENTS RELATING TO the destruction or retention of any DOCUMENT RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 163:

All internal MGA COMMUNICATIONS and schedules RELATING TO document retention or destruction between January 1, 1999 and the present.

REQUEST FOR PRODUCTION NO. 164:

All DOCUMENTS RELATING TO any COMMUNICATIONS with, or inquiry or investigation by, any government entity RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 165:

All DOCUMENTS RELATING TO any COMMUNICATIONS with, or inquiry or investigation by, any toy industry organization, safety compliance, or consumer organization RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

EXHIBIT 6 PAGE 173

1    REQUEST FOR PRODUCTION NO. 166:

2              To the extent not produced in response to any other Request for

3    Production, all DOCUMENTS and tangible things upon which YOU intend to rely

4    upon in this action.

5

6    DATED:  December 18, 2006          QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
7

8                                   By _____

9                                        Timothy L. Alger

10                                       Attorneys for Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/1928319.2

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT 6 PAGE 174

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026.

On December 18, 2006, I true copies of the following document(s) described as:

**MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS RE CLAIMS OF UNFAIR COMPETITION TO MGA ENTERTAINMENT, INC.**

on the parties in this action as follows:

| | |
|---|---|
| Diana M. Torres, Esq.<br>O'Melveny & Myers<br>400 So. Hope Street<br>Los Angeles, CA  90071<br>Telephone: (213) 430-6000<br>Facsimile: (213) 430-6407 | Keith A. Jacoby, Esq.<br>Littler Mendelson<br>2049 Century Park East, 5th Floor<br>Los Angeles, CA  90067-3107<br>Telephone: (310) 553-0308<br>Facsimile: (310) 553-5583 |

[√]   [PERSONAL] by personally delivering the document listed above to the person(s) at the address(es) set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made

Executed on December 18, 2006 at Los Angeles, California.

David Quintana

07209/2020338.1

Case No. SACV 05-00953 JVS (ANx)
PROOF OF SERVICE

EXHIBIT 6 PAGE 175