QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>        Plaintiff,<br><br>   vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>        Defendant.<br><br>AND CONSOLIDATED CASES | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard by Discovery Master Hon. Edward Infante (Ret.)]**<br><br>REPLY IN SUPPORT OF MOTION OF MATTEL, INC. TO COMPEL THE CONTINUED DEPOSITION OF ISAAC LARIAN AND TO OVERRULE INSTRUCTIONS NOT TO ANSWER<br><br>**[Supplemental Declaration of B. Dylan Proctor filed concurrently]**<br><br>Date: Feb. 11, 2008<br>Time: 9:30 a.m.<br>Place: Telephonic<br><br>**Phase 1:**<br>Discovery Cut-Off:     January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date:                    May 27, 2008 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................ 2

I. MGA AND LARIAN IGNORE THAT THEIR COUNSEL *AGREED* THAT LARIAN WOULD BE PRODUCED FOR A CONTINUED DEPOSITION ................................................................................................. 2

II. THE "APEX" DOCTRINE DOES NOT IMMUNIZE LARIAN FROM QUESTIONING, NOR DOES IT LIMIT MATTEL'S TIME WITH THE WITNESS ................................................................................................ 5

    A. MGA Waived Any "Apex" Objection to Larian's Deposition by Failing To Assert It When MGA Agreed To Produce Him .................... 5

    B. MGA Bears the Heavy Burden To Show the Applicability of the "Apex" Exception ............................................................................. 5

    C. The "Apex" Exception Does Not Apply to Larian ............................... 7

    D. No Timing, Subject-Matter, or Duration Limitations Should Be Imposed ............................................................................................. 11

III. THE DISCOVERY MASTER SHOULD OVERRULE CERTAIN INSTRUCTIONS NOT TO ANSWER AT THE LARIAN DEPOSITION ......................................................................................... 13

CONCLUSION ...................................................................................................... 14

# TABLE OF AUTHORITIES

Page

## Cases

Collins v. International Dairy Queen,
  189 F.R.D. 496 (M.D. Ga. 1999) ........................................................................ 9

Blankenship v. Hearst Corp.,
  519 F.2d 418 (9th Cir. 1975) ............................................................................. 5

E. & J. Gallo Winery v. EnCana Energy Servs., Inc.,
  2005 WL. 3710352 (E.D. Cal. 2005) ................................................................. 5

Grateful Dead Productions v. Sagan,
  2007 WL. 2155693 (N.D. Cal. 2007) ............................................................. 5, 8

San Francisco Bay Area Rapid Transit Dist. v. Spencer,
  2006 WL. 2734289 (N.D. Cal. 2006) ................................................................ 5

Shelton v. Am. Motors Corp.,
  805 F.2d 1323 (8th Cir. 1986) ......................................................................... 12

Spreadmark, Inc. v. Federated Dep't Stores, Inc.,
  176 F.R.D. 116 (S.D.N.Y. 1997) ....................................................................... 7

Tillery v. Darby-Rogers Co.,
  2006 WL. 2735162 (M.D. Fla. 2006) ................................................................ 9

U.S. ex rel. Bagley v. TRW, Inc.,
  212 F.R.D. 554 (C.D. Cal. 2003) ..................................................................... 12

United Steelworkers of Am. v. Retirement Income Plan for Hourly-Rated
  Employees of ASARCO, Inc.,
  2008 WL. 62449 (9th Cir. 2008) ....................................................................... 6

WebSideStory, Inc. v. NetRatings, Inc.,
  2007 WL. 1120567 (S.D. Cal. 2007) ............................................................. 5, 7

## Statutes

Fed. R. Civ. P. 11 ..................................................................................................... 9

Fed. R. Civ. P. 26(c) ................................................................................................ 5

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

MGA and Larian do not deny that their counsel agreed that (1) Larian's initial deposition would relate to Mattel v. Bryant issues only; *and* (2) Larian would be made available on a separate, later day for deposition on issues in the MGA v. Mattel suit.[1]  Instead, MGA attempts to confuse the issue by equating Phase 1 issues with the Mattel v. Bryant case and Phase 2 issues with the MGA v. Mattel case.

That is not correct.  Under Judge Larson's Scheduling Orders, Phase 1 unambiguously includes a number of claims from the MGA v. Mattel case, including a variety of Mattel counterclaims pleaded directly against Larian, such as Mattel's claims of copyright infringement, conversion and intentional interference with contract.[2]  Mattel asserted all of these Phase 1 claims against Larian (five in total) *after* Larian's initial deposition session.  Thus, he has not been deposed on these claims at all, and MGA's position that Larian need not testify as to Phase 1 issues because he has already been deposed in the Mattel v. Bryant case is mistaken.  Moreover, just yesterday, Judge Larson re-confirmed that "individual depositions that may be related to both Phase 1 and Phase 2," such as Larian's deposition, "may proceed" forthwith.[3]

---

[1]  See Declaration of B. Dylan Proctor in support of Mattel's Motion to Compel Continued Deposition of Isaac Larian, dated January 22, 2008 ("Proctor Dec."), Exh. 7 at 32.

[2]  See July 2, 2007 Order, granting Mattel's Motion re: Trial Structure, at 2 (adopting Mattel's proposal, as set forth at pp. 8-9 of Mattel's Memorandum re: Trial Structure), Supplemental Declaration of B. Dylan Proctor in support of Mattel's Motion to Compel Continued Deposition of Isaac Larian, dated February 5, 2008 ("Supp. Proctor Dec.") Exh. 1; see also Mattel's Memorandum re: Trial Structure, dated June 20, 2007, at 8-9, Supp. Proctor Dec. Exh. 2.

[3]  See Order dated February 4, 2008, at 3, Supp. Proctor Dec. Exh. 3.

MGA and Larian also should not be allowed to renege on their agreement to reproduce Larian. They say, for example, that "Mattel already deposed Mr. Larian for the time permitted by the Federal Rules of Civil Procedure" (Opp. at 1), and that Mattel voluntarily took the risk of deposing Larian "at the outset of fact discovery" (id.). They also belatedly attempt to invoke an "apex witness" objection (although they waived it by agreeing to produce Larian for further deposition). But this all ignores MGA's express agreement that Larian would be made available again -- and not with some stringent two hour time limitation as MGA now proposes. It also entirely ignores that Larian has already been compelled twice to appear for deposition.

The Discovery Master should not countenance MGA's tactics. Rather, Mattel respectfully submits that the Discovery Master should enforce the deal struck by the parties, at MGA's request, and order that Larian be produced for deposition by February 28, 2008, without preset time or subject matter limitations.

The remainder of Mattel's motion seeks an order overruling MGA's instructions to Larian not to answer certain questions. MGA does not even defend the instruction that Larian not answer questions concerning MGA's fee arrangement with Bryant and other instructions. And its only defense of the instruction not to answer the yes-or-no question whether Larian reviewed documents in preparation for his deposition is to mischaracterize the question as asking which specific documents he reviewed. The Discovery Master should overrule these instructions.

## Argument

### I. MGA AND LARIAN IGNORE THAT THEIR COUNSEL *AGREED* THAT LARIAN WOULD BE PRODUCED FOR A CONTINUED DEPOSITION

Mattel recounted (Mot. at 8-10), with exhaustive documentary support, the deal that the parties struck concerning how Larian's deposition was to proceed: *At MGA's request*, and to accommodate MGA, Mattel agreed that Larian's initial

deposition would be limited to issues in the <u>Mattel v. Bryant</u> suit, and that he would appear for deposition again to answer questions regarding any claims in the <u>MGA v. Mattel</u> case.[4]

MGA's and Larian's opposition nowhere even mentions this agreement. That the agreement was negotiated on behalf of MGA and Larian by their prior counsel obviously does not justify allowing them to escape from it. <u>See</u>, <u>e.g.</u>, <u>Acton v. Merle Norman Cosmetics, Inc.</u>, 1998 WL 658816, at *1 (9th Cir. 1998) ("Under California law, a client is bound by the acts of his attorney-agent, if his attorney has actual or apparent authority to bind him.") (internal citations omitted). In fact, following the filing of their opposition, MGA's and Larian's counsel represented to Judge Larson that they have *not* reneged on any agreement that prior counsel made.[5]

Yet, rather than comply with the agreement by producing Larian, MGA's and Larian's counsel have unilaterally insisted that Mattel establish good cause for Larian's continued deposition and that any continued deposition occur only after completion of the Phase 1 trial. <u>See</u> Opp. at 3.[6] This is directly contrary to MGA's and Larian's earlier promises. And in any case, as discussed below, good cause quite clearly exists for further deposition of Larian, who, unlike Mattel's CEO, is intimately involved in virtually every aspect of these consolidated cases.

---

[4] <u>See</u> Declaration of Michael T. Zeller ISO Mattel's Motion to Compel Continued Deposition of Isaac Larian, dated January 22, 2008, ¶ 2 & Exh. 1.
[5] <u>See</u> Declaration of Jon Corey, filed concurrently herewith, ¶ 2.
[6] Larian's new counsel likewise reneged on his prior counsel's agreement to produce documents by October 24, 2007. <u>See</u> generally Mattel's Motion to Compel Production of Documents by Isaac Larian, dated December 17, 2007; MGA's Opposition to Mattel's Motion to Compel Production of Documents by Isaac Larian, dated December 24, 2007; and Mattel's Reply in support of its Motion to Compel Production of Documents by Isaac Larian, dated December 28, 2007, Supp. Proctor Dec. Exhs. 8-10.

MGA and Larian cite Judge Block's statements about taking Larian's deposition early in discovery.  However, MGA and Larian overlook that Judge Block's statement *preceded* the parties' agreement to the extended, two-part deposition, and *preceded* the addition of Mattel's counterclaims against MGA, Larian and others in the MGA v. Mattel case.  It is inapplicable in light of the current state of affairs.

The parties' agreement is also entirely consistent with Judge Larson's view of how the case is to proceed.  Specifically, the agreement does *not* require that the continued deposition occur only after the Phase 1 trial is completed.  Furthermore, Judge Larson's partial Phase 2 stay (ordered yesterday) does not prevent Larian's deposition from going forward.[7]  Judge Larson specifically exempted depositions such as Larian's from the stay, ruling that "individual depositions that may be related to both Phase 1 and Phase 2" "may proceed," and are not subject to the stay imposed on Phase 2 discovery.[8]  Mattel seeks, and is entitled, to depose Larian regarding both Phase 1 and Phase 2 issues, claims and defenses that he has not yet been deposed on.

\*   \*   \*   \*   \*

Even aside from the parties' agreement that Larian would be deposed in two sessions (without any requirement that the second session occur after the Phase

---

[7] This is a departure from prior Orders on the subject.  See Order dated February 4, 2008, at 3 ("MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings.  That is clear.  However, MGA's argument attempts to limit discovery to issues involved in Phase 1 of the trial.  There has been no bifurcation of discovery."), Supp. Proctor Dec. Exh. 3; see also Order dated Oct. 31, 2007 ("[T]he Court DENIES MGA's request to delay or otherwise bifurcate discovery regarding Phase 2 issues."), Supp. Proctor Dec. Exh. 4.

[8] See Order dated February 4, 2008, at 3, Supp. Proctor Dec. Exh. 3.

1 trial), MGA's and Larian's objections to Larian's continued deposition are meritless.

## II. THE "APEX" DOCTRINE DOES NOT IMMUNIZE LARIAN FROM QUESTIONING, NOR DOES IT LIMIT MATTEL'S TIME WITH THE WITNESS

### A. MGA Waived Any "Apex" Objection to Larian's Deposition by Failing To Assert It When MGA Agreed To Produce Him

MGA and Larian waived any "apex" objection with respect to Larian's deposition in the MGA v. Mattel case because they did not invoke it when they agreed to produce him for a two-part deposition, or when he appeared for the first part of the deposition. See Mot. at 10. Ample case law establishes that such an objection to the manner or timing of a deposition is waived in such circumstances. See, e.g., San Francisco Bay Area Rapid Transit Dist. v. Spencer, 2006 WL 2734289, at *1 (N.D. Cal. 2006) ("If a deposition goes beyond the seven-hour limit, counsel must object and adjourn the deposition, or the limit is seen as waived"); E. & J. Gallo Winery v. EnCana Energy Servs., Inc., 2005 WL 3710352, at *4 (E.D. Cal. 2005) ("[T]he magistrate judge correctly concluded Defendant Counsel were provided with actual timely notice of the deposition and waived any right to service of notice by any other means by failing to make timely objection").

Although made in Mattel's Motion, MGA and Larian do not respond to this argument and therefore effectively concede that it is dispositive of their apex objection.

### B. MGA Bears the Heavy Burden To Show the Applicability of the "Apex" Exception

Even aside from MGA's waiver, MGA, as the party resisting discovery, bears the heavy burden under Fed. R. Civ. P. 26(c) to show the applicability of the "apex" exception. See Mot. at 10-11 (citing, e.g., Grateful Dead Productions v. Sagan, 2007 WL 2155693, at *1 (N.D. Cal. 2007) ("A strong showing is required

before a party will be denied the right to take [an apex] deposition.") (quoting Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)); WebSideStory, Inc. v. NetRatings, Inc., 2007 WL 1120567, at *2 (S.D. Cal. 2007) ("A party seeking to prevent [an apex] deposition carries a heavy burden to show why discovery should be denied").

MGA and Larian do not attempt to distinguish or otherwise respond to these authorities cited in Mattel's Motion. Instead, they claim (Opp. at 7) that Mattel is judicially estopped from asserting that the burden lies with MGA/Larian because Mattel made the contrary argument in opposing MGA's motion to compel the deposition of Robert Eckert, Mattel's CEO. But MGA and Larian misapprehend the elements of judicial estoppel. That doctrine does not apply merely because a party has previously asserted an inconsistent position -- the party must also have *prevailed* when asserting it. See, e.g., United Steelworkers of Am. v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc., 2008 WL 62449, at *7 (9th Cir. 2008) ("[W]e inquire whether the party achieved success in the prior proceeding").

Here, Mattel did not prevail, it lost. Mattel had argued that the Court should "issue an order requiring defendants to first exhaust less burdensome means of discovery and limiting Mr. Eckert's deposition testimony to no more than one hour on specific topics for which he has unique and superior personal knowledge."[9] This Court ruled, however, that MGA could proceed forthwith to depose Mr. Eckert for 3 1/2 hours.[10]

Indeed, for this very reason, if it applies at all to this motion, judicial estoppel applies *against MGA*. MGA succeeded in obtaining Mr. Eckert's

---

[9] Mattel's Opposition to Joint Motion to Compel the Deposition Testimony of Robert Eckert, dated December 18, 2007, at 10, Supp. Proctor Dec. Exh. 5.

[10] See Order Regarding MGA and Carter Bryant's Joint Motion to Compel the Deposition Testimony of Robert Eckert, dated Jan. 9, 2008, at 1, Supp. Proctor Dec. Exh. 6.

07209/2376540.5

-6-
REPLY ISO MOTION TO COMPEL DEPOSITION OF LARIAN

deposition.[11] And, in marked contrast to its current position, MGA had argued in its motion to compel Mr. Eckert's deposition that "it is Mattel's burden to demonstrate that the apex rule applies," citing Spreadmark, Inc. v. Federated Dep't Stores, Inc., 176 F.R.D. 116, 118 (S.D.N.Y. 1997) ("An order barring a litigant from taking a deposition is most extraordinary relief. It is the party seeking such an order that bears the burden of proving that the proposed deponent has nothing to contribute.").[12] Yet, MGA has not even attempted to show, let alone shown, that the "apex" rule should apply because Larian's pertinent knowledge is somehow limited. Nor could it. Larian will be MGA's star witness and its key spokesperson at trial on virtually every pertinent Phase 1 and Phase 2 issue.

### C. The "Apex" Exception Does Not Apply to Larian

Indeed, even if Mattel did bear the burden of showing that Larian's deposition is warranted notwithstanding his status as CEO, Mattel plainly has carried that burden. As Mattel explained (Mot. at 11-12), the inquiry is whether the apex witness "has personal knowledge of facts relevant to the lawsuit." WebSideStory, 2007 WL 1120567, at *2. Mattel then demonstrated (Mot. at 12-13) that Larian, himself a named defendant on Mattel's counterclaims in MGA v. Mattel, clearly has such personal knowledge regarding both Phase I and Phase II issues. For example:

- Larian personally sent electronic mail to Bryant, while Bryant was still employed by Mattel, asking him to "please arrange to meet" with an MGA employee (formerly with Mattel) "ASAP" to work on Bratz "full time;"[13]

---

[11] See id.
[12] MGA's Motion To Compel Deposition Testimony of Robert Eckert, dated December 11, 2007, at 6, Supp. Proctor Dec. Exh. 7.
[13] Counterclaims, Exh. C.

- Larian "encouraged, aided and financed Bryant to develop Bratz," knowing full well that Bryant was still employed by Mattel and that any Bratz works thus belonged to Mattel;[14]

- Larian "reproduced, created derivative works from and otherwise infringed upon the exclusive rights of Mattel in its protected [copyright] works;"[15] and

- Larian personally directed MGA in its development and copying of Bratz, which MGA admits included preparing derivative works of Bratz drawings Mattel claims it owns.[16]

There is far more here than "a factual dispute as to whether the deponent has first-hand knowledge of relevant facts," which is all that is required. Grateful Dead, 2007 WL 2155693, at *1 (denying apex objection to deposition).

MGA's attempt to analogize Mattel's present motion with its prior motion to compel the deposition of Mr. Eckert is mistaken. Mr. Eckert is the Chief Executive Officer and Chairman of a public company with scores of vast product lines having nothing to do with this case, such as FISHER PRICE. In contrast, Larian is the CEO and majority owner of a private company that derives the vast majority of its revenues from the products at issue in this litigation (*i.e.*, Bratz). Further, unlike Mr. Eckert, Larian is a named defendant who personally negotiated the purported acquisition of Bratz from Bryant, and met and communicated with Bryant on developing Bratz, while Bryant was still employed by

---

[14] Counterclaims ¶ 33.
[15] Counterclaims ¶ 84.
[16] See generally MGA's Supplemental Responses to Mattel's Sixth Set of Requests for Admission, dated December 14, 2007, Supp. Response Nos. 36, 78, 110, 184, 205, 248, 311, 332, 395, 437, 479, 575, 597, 618, 629, 640, 684, 695, 718, 741, 764, 775 (admitting that MGA prepared one or more derivative works from the drawings attached as Exhibits 3, 5, 7, 11-12, 15, 18-19, 22, 24, 26, 32, 34-37 and 41-46 to the Mattel's Sixth Set of Requests for Admission).

Mattel.  Larian also is integrally involved in the trade secret thefts and RICO counterclaims pleaded by Mattel.  For example, Mattel alleges that:

- Larian was "in frequent telephonic and e-mail contact" with Machado, Trueba and Vargas for over three months prior to their resignations from Mattel and that, "during this time, Machado, Trueba and Vargas supplied Larian with certain Mattel confidential and proprietary information. . ."[17]

- Larian "directed Machado, Trueba and Vargas to steal virtually all Mattel confidential and proprietary information that they could access and bring with them to MGA."[18]

- Larian called Janine Brisbois at her home and "on the same day that she spoke with Mr. Larian and four days before she resigned, Brisbois copied approximately 45 Mattel documents. . . contain[ing] Mattel trade secret and proprietary information."[19]

- Larian "engaged in a campaign of calling Mattel's most significant customers . . . [i]n an effort to dissuade these retailers from purchasing Mattel's MY SCENE MY BLING BLING product with real gems" and "knowingly made false factual statements about that product to each retailer."[20]

Larian's central involvement in Mattel's Phase 2 counterclaims is undisputed.  And, it is undisputed Larian is integrally involved in MGA's claims against Mattel.

---

[17] Counterclaims ¶ 42
[18] Counterclaims ¶ 43
[19] Counterclaims ¶ 74
[20] Counterclaims ¶ 80.

Indeed, during the pre-filing conference, MGA admitted it planned to call Larian at trial to support these claims against Mattel.[21] Larian's nationally televised statements that he will obtain "billions" of dollars from Mattel confirm the same.[22]

MGA does not deny that Larian has key personal knowledge, but instead contends that it relates only to Mattel's counterclaims in MGA v. Mattel, which were asserted after Larian's initial deposition session and thus, according to MGA, cannot justify a second session. See Opp. at 6. MGA is twice wrong. First, as just noted, Larian has personal knowledge relating to *MGA's claims* against Mattel -- which were asserted prior to the initial deposition session (and which MGA requested be addressed later). MGA itself has identified Larian as a person with knowledge of the facts supporting MGA's claims against Mattel, including that Larian was involved in the marketing, advertising, promotion, licensing, offering for sale, conception, origin, creation, design, and development of the products MGA alleges were infringed by Mattel.[23]

Second, even if Larian's personal knowledge did relate only to Mattel's counterclaims, MGA has no authority for the proposition that counterclaims (against the deponent as a named defendant, no less) do not count. Instead, MGA merely suggests, without citation, that "if the rule were otherwise, a party could always re-open a deposition by adding claims or by naming the deponent as an additional defendant." See Opp. at 6. This suggestion is baseless. A party like Mattel is not free to assert claims willy-nilly in order to extend or re-open a deposition. Rather, it is bound by the strictures of Fed. R. Civ. P. 11 and applicable timing limits. Mattel complied with those rules here, as Judge Larson found when he granted Mattel's

---

[21] Proctor Dec. ¶ 12.
[22] Proctor Dec. ¶ 20 & Exh. 21.
[23] MGA's Reponses to Mattel's First Set of Interrogatories Re: Claims of Unfair Competition, dated January 19, 2007, at 7:8, Proctor Dec., Exh. 18.

motion for leave to amend its pleading, over MGA's objections. Accordingly, Mattel is clearly permitted to address the new claims at Larian's continued deposition. See, e.g., Tillery v. Darby-Rogers Co., 2006 WL 2735162, at *5 (M.D. Fla. 2006) ("The Court will allow Defendants to re-depose Plaintiffs regarding the new claims"); Collins v. International Dairy Queen, 189 F.R.D. 496, 498 (M.D. Ga. 1999) (granting defendants' request to reopen depositions of several witnesses based on new claims in amended complaint: "Because of the time that has elapsed, the addition of new claims, and the evident knowledge of the witnesses in particular areas, re-examination of the two witnesses is likely to provide additional information not obtainable at the first depositions.").

### D. No Timing, Subject-Matter, or Duration Limitations Should Be Imposed

Mattel addressed above MGA's argument (Opp. at 8) that any deposition of Larian should take place only after the Phase I trial is completed. Again, what "deference" to Judge Larson's orders requires is that no such timing limitation be imposed. As noted above, Judge Larson confirmed just yesterday that "individual depositions that may be related to both Phase 1 and Phase 2," such as Larian's deposition, "may proceed."[24]

MGA's subject-matter and duration arguments fare no better. As to subject-matter, the MGA v. Mattel issues sweep broadly. For example, Larian's communications with Bryant while he was still employed by Mattel are relevant to both: (i) Mattel's Phase 1 counterclaims against Larian and MGA for intentional interference with contract and aiding and abetting Bryant's breach of fiduciary duty and breach of duty of loyalty to Mattel; *and* (ii) Mattel's Phase 2 counterclaims against Larian and MGA for violations of RICO and trade secret claims, among

---

[24] See Order dated February 4, 2008, at 3, Supp. Proctor Dec., Exh. 3.

others. Of the claims in the <u>MGA v. Mattel</u> case, eight are set for trial in Phase 1, including Mattel's copyright infringement and intentional interference with contract claims, and others, to which Larian is a named defendant. Mattel is entitled to question Larian on such new claims, including regarding Larian's acts (and Larian's knowledge of other defendants' acts) of copying, preparation of derivative works, intentional interference with contract, and aiding and abetting Bryant's breaches of fiduciary duty and duty of loyalty to Mattel. Mattel is also entitled to question Larian about all of his many new defenses, including his far-flung "unclean hands" defense, which puts at issue years of conduct on several continents.[25] Indeed, a deposition of Larian on this new defense alone -- which was added less than six months ago -- will take many, many hours to complete.

Moreover, as discussed in Mattel's opening memorandum (at 15-16) and below, Mattel was improperly circumscribed in the initial session by MGA's inappropriate instructions to Larian not to answer certain questions. Mattel should be allowed in the next session to pose those questions again and follow up. And, no subject-matter limitation was imposed on MGA's deposition of Mattel's CEO (Mr. Eckert), who has far less personal knowledge regarding the issues in this litigation than Larian -- fairness compels that Mattel be given the same freedom in deposing Larian.

As to duration, MGA again ignores the agreement it struck with Mattel prior to the initial session of Larian's deposition, which did not prescribe any durational limitation for the second session. Given the intense factual connection between Larian and the Phase 1 and Phase 2 claims and counterclaims at issue (as compared with the tenuous connection between Mattel's CEO and those claims/counterclaims), Mattel respectfully submits that the Discovery Master afford

---

[25] <u>See</u> Isaac Larian's Amended Answer and Affirmative Defenses to Mattel's Second Amended Answer and Counterclaims, at 16-17, Supp. Proctor Dec. Exh. 11.

it 7 hours, without prejudice to Mattel's right to seek additional time if appropriate and upon the necessary showing.

### III. THE DISCOVERY MASTER SHOULD OVERRULE CERTAIN INSTRUCTIONS NOT TO ANSWER AT THE LARIAN DEPOSITION

Mattel identified (Mot. at 15-18 & Separate Statement) a series of MGA's instructions not to answer that are plainly improper and should be overruled. Mattel explained (Mot. at 15-16), for example, that MGA's instruction not to answer questions regarding the MGA/Bryant fee arrangement is inappropriate because the Discovery Master has ruled that the existence of such a fee arrangement is not privileged and documents relating thereto must be produced. Regarding MGA's instruction not to answer a yes-or-no question on whether Larian reviewed documents in preparation for his initial deposition, Mattel again explained (Mot. at 17-18) that the Discovery Master overruled comparable instructions made at the Bryant deposition.

MGA responds only selectively to Mattel's objections to the instructions and thus concedes that the ones it does not address were improper. See Opp. at 9 ("Most, *If Not All*, Of The Challenged Instructions Were Proper.") (emphasis added); Opp. at 9-10 (responding only regarding Questions 1-4, 7, 8, 9, and 14, and not Questions 5-6 and 10-13). Thus, for example, MGA does not respond to Mattel's objection regarding the instruction (No. 10 in the Separate Statement) that Larian should not answer questions concerning the fee arrangement.

MGA does respond to Mattel's objection to the instruction that Larian not answer the yes-or-no question whether he reviewed documents in preparation for his deposition. But its response (Opp. at 9-10) mischaracterizes Mattel's objection. Even when Mattel did not seek to know *which* documents Larian reviewed, only *whether* Larian reviewed *any* documents, Larian still refused to answer. See Mot. at 18 ("Questions about whether or not Larian reviewed any documents in preparation for his deposition and when Larian saw a particular e-mail

1 | do not call for the substance of any attorney-client communications and are not
2 | protected by the work-product doctrine.  Such facts are not privileged."). Not
3 | surprisingly, MGA's case citations involve only the "which documents" question.
4 | See U.S. ex rel. Bagley v. TRW, Inc., 212 F.R.D. 554, 564 (C.D. Cal. 2003);
5 | Shelton v. Am. Motors Corp., 805 F.2d 1323, 1329 (8th Cir. 1986).  And in any
6 | case, the Court has previously rejected MGA's current position.[26]

Accordingly, MGA's instructions must be overruled.

## Conclusion

For the foregoing reasons and those stated in Mattel's motion and opening memorandum of points and authorities, Mattel respectfully requests that the Discovery Master (1) compel Mr. Larian to appear for deposition without preset limitations on or before February 28, 2008; and (2) overrule each of the instructions set forth in table format in the [Proposed] Order lodged with the motion.

DATED: February 5, 2008           QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

                                  By /s/ Dylan Proctor
                                     B. Dylan Proctor
                                     Attorneys for Mattel, Inc.

---

[26] See, e.g., Proctor Dec. Exh. 28.