1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  jkeker@kvn.com
   MICHAEL H. PAGE - #154913
3  mpage@kvn.com
   CHRISTA M. ANDERSON - #184325
4  canderson@kvn.com
   MATTHEW M. WERDEGAR - #200470
5  mwerdegar@kvn.com
   JOHN E. TRINIDAD - #250468
6  jtrinidad@kvn.com
   AUDREY WALTON-HADLOCK- #250574
7  awaltonhadlock@kvn.com
   710 Sansome Street
8  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
9  Facsimile:  (415) 397-7188

10 Attorneys for Plaintiff
   CARTER BRYANT
11

12                 UNITED STATES DISTRICT COURT

13                CENTRAL DISTRICT OF CALIFORNIA

14                      EASTERN DIVISION

15

16 CARTER BRYANT, an individual,          Case No. CV 04-09049 SGL (RNBx)
                                          (consolidated with CV 04-9059 & 05-
17                          Plaintiff,    2727

18   v.                                   **DISCOVERY MATTER**

19 MATTEL, INC. a Delaware                [To Be Heard by Discovery Master
   Corporation,                           Hon. Edward Infante (Ret.)]
20
                            Defendant.    **CARTER BRYANT'S OPPOSITION
21                                        TO MATTEL INC.'S MOTION FOR
                                          AN ORDER ENFORCING
22 CONSOLIDATED WITH MATTEL,              COURT'S JANUARY 25, 2007
   INC., v. BRYANT and MGA               ORDER COMPELLING BRYANT
23 ENTERTAINMENT, INC. v.                TO PRODUCE COMPUTER HARD
   MATTEL, INC.                           DRIVES AND FOR SANCTIONS**
24
25                                        Date:      TBA
                                          Time:      TBA
26
                                          Date Comp. Filed:  April 13, 2005
27                                        Discovery Cut-Off:  Jan. 28, 2008
                                          Trial Date:  May 27, 2008
28

---

410889.02

BRYANT'S OPPOSITION TO MOTION FOR AN ORDER ENFORCING COURT'S JAN. 25, '07 ORDER
COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS
CASE NO. CV 04-09049 SGL (RNBx)

# TABLE OF CONTENTS

<u>PAGE</u>

A.    The Court's January 25 Order did not address Mr. Bryant's post-2004 Computers ................................................................1

B.    No Cause Exists to Compel Inspection of Mr. Bryant's Other Computers ....................................................................4

    1.    There is no evidence of spoliation .............................................4

    2.    There is no inconsistency regarding Bryant's 2004 through 2007 computers .........................................................8

i

410889.02

# TABLE OF AUTHORITIES

**PAGE**

## FEDERAL CASES

*Playboy Enterprises v. Welles*, 60 F. Supp. 2d 1050 (S.D. Cal. 1999)....... 10

## FEDERAL RULES

Fed. R. Civ. P. 34(a)(1), 2006 Adv. Comm. Notes. .................................... 10

## OTHER AUTHORITY

James W. Moore, et al., *Moore's Federal Practice* §37A.44[3][b] (3d.
    ed. 2007)................................................................................................. 10

BRYANT'S OPPOSITION TO MOTION FOR AN ORDER ENFORCING COURT'S JAN. 25, '07 ORDER
COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS
CASE NO. CV 04-09049 SGL (RNBx)

410889.02

*"Rule 34 was not intended to authorize the routine production of a party's electronic devices."*

--Discovery Master December 31, 2007 Order[1]

Mattel offers no reason why it should be permitted to demand possession and inspection of all of Mr. Bryant's personal computers, simply because it would like to poke around looking for new claims and issues. Indeed, Mattel's motion hardly mentions the computers it seeks to seize. Instead, it repeats and rehashes a series of misstatements, omissions, and outright falsehoods it has already trotted out *ad nauseum*, under the apparent belief that if it shouts them often and stridently enough, they will magically become both true and relevant. They are, however, neither.

Rather than present cause to seize and inspect more of Mr. Bryant's computers (because there is no such cause), Mattel first attempts to convince this Court that it has *already ruled* on this motion. This is nonsense. Mattel has never moved to inspect these computers, and this Court has of course never granted such a motion. Mattel then seeks to justify its new motion by a litany of accusations concerning the two computers it has already inspected. Those accusations consist almost entirely of knowing falsehoods and distortions, as we address below. More to the point, however, they have nothing to do with the computers at issue in *this* motion.

## A.   The Court's January 25 Order did not address Mr. Bryant's post-2004 Computers

In January 2007, Mattel filed the motion to compel it purports to be seeking to enforce here, which was a continuation of its earlier motion filed in January

---

[1] Declaration of Michael H. Page (February 7, 2008) ("Page Decl.") ¶ 2, Ex. A (Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for Sanctions (Dec. 31, 2007) at 17).

1
BRYANT'S OPPOSITION TO MOTION FOR AN ORDER ENFORCING COURT'S JAN. 25, '07 ORDER
COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS
CASE NO. CV 04-09049 SGL (RNBx)

410889.02

1  2005.  That motion sought to compel the production of a laundry list of documents,

2  based on Mattel's September 14, 2004 First Request for Production.[2]  Among other

3  things, that motion sought an order that Bryant produce for forensic imaging three

4  specific computers, which Mattel asserted had been used by Bryant "during the

5  relevant time period."[3]  Although the motion itself is cryptic as to which computers

6  were at issue, the accompanying separate statement could not have been clearer.  It

7  specified three computers:[4]  A desktop computer that Bryant purchased the day

8  after he left Mattel ("The October 2000 Desktop"), a laptop Bryant purchased in

9  early 2002 ("The 2002 Laptop"),[5] and a computer his parents had owned in 1998,

10 but had disposed of before this litigation commenced.

11        Mattel continues to make much of its purported confusion as to what

12 computers Mr. Bryant owned "in the relevant time period," complaining of errors

13 in communications from Bryant's prior counsel which confused the 2002 Laptop

14 (which Bryant continued to own) and the 2000 Desktop (which he had given to his

15 niece before this litigation commenced).  That confusion may have been

16 unfortunate, and it may have been engendered by errors by Bryant's counsel, but

17 what is clear from Mattel's Separate Statement is that Mattel's still-professed

18 confusion had cleared more than a year ago.  Mattel's motion correctly and

[2] Page Decl. ¶ 3, Ex. B (Mattel Inc.'s Notice of Motion and Motion to Compel Production of Documents dated January 4, 2005).

[3] Mot. at 11.

[4] Separate Statement at 58.

[5] The exact date of purchase is unknown; it is sometime between November 2001 and February 2002.

BRYANT'S OPPOSITION TO MOTION FOR AN ORDER ENFORCING COURT'S JAN. 25, '07 ORDER COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS CASE NO. CV 04-09049 SGL (RNBx)

410889.02

specifically identified all three of the computers used by Bryant in the relevant time frame,[6] and those are unambiguously the computers to which this Court's Order applied.

Bryant has complied with that Order entirely.  In July, 2004, shortly after this litigation commenced and long before the discovery requests at issue here, Bryant's counsel took complete forensic images of the relevant computers.[7]  The 2002 Laptop was still in Mr. Bryant's possession.  The October 2000 Desktop had long since been given to Mr. Bryant's niece, but Mr. Bryant borrowed it back for the purpose of imaging it, and then returned it.  The third computer, his parents', had been given away long ago, and was not available.[8]

Thus, as of July 14, 2004, every bit of possibly relevant evidence from the computers at issue had been preserved, and those complete forensic images have been produced to Mattel in accordance with this Court's Order.[9]  The computers themselves have also been produced, inspected, and further forensic images have been taken by Mattel in 2007.[10]  The matter should end there.[11]

---

[6] The only available definition of that "relevant time frame" is that which is set forth in the definitions section of the document requests Mattel seeks to enforce here:  from January 1, 1995 to the date of those requests, September 14, 2004.  Page Decl. ¶ 4, Ex. C (Plaintiff Mattel Inc.'s First Request for Documents and Tangible Things to Defendant Carter Bryant at 4).

[7] Page Decl. ¶ 5. Ex. D (Decl. of Carter Bryant in Response to Court's Request for Information Regarding Document Preservation ¶ 11 dated January 14, 2008 ("Bryant Preservation Decl.")).

[8] Page Decl. ¶ 6, Ex. E (Deposition of Janet Bryant taken on September 25, 2007) (Tr. at 89:11-94:19); *id.* ¶ 7, Ex. F (Deposition of Thomas Bryant taken on September 26, 2007) (Tr. at 45:8-50:17).

[9] Page Decl. ¶ 8, Ex. G (Letter from Trinidad to Zeller dated January 18, 2008); *see also id.* ¶ 9, Ex. H (Letter from Jacoby to Zeller dated April 23, 2007).

[10] Page Decl. ¶ 10, Ex. I (Declaration of Keith A. Jacoby in Opposition to April 10, 2007 Motion of Mattel, Inc. for an Order to Enforce Court's January 25, 2007 Order Compelling Bryant to Produce Desktop Computer Hard Drive dated April 24, 2007 at ¶¶ 3-6.

3

410889.02

1    But Mattel now seeks to convince this Court that its January 25, 2007 Order

2   mandates the inspection of every single computer Mr. Bryant has owned *since* the

3   relevant time period (and presumably every computer he will ever own).  This is

4   absurd, and patently false, for several reasons.  *First*, the discovery requests Mattel

5   claims underlie this motion are expressly limited to the time period from January 1,

6   1995 to September 14, 2004.  *Second*, Mattel's January 2007 motion was expressly

7   directed to three specific computers.  *Third*, most or all of the computers Mattel

8   now seeks to explore *did not even exist* at the time Mattel filed its motion to

9   compel, and could not possibly have been the subject of that motion.  And *fourth*,

10  that motion expressly sought only inspection of computers used "in the relevant

11  time period."  As the relevant events in this case occurred from 1998 to 2001, the

12  two computers at issue in Mattel's prior motion were arguably relevant.  Mr.

13  Bryant's current work and personal computers are not (or at least only marginally

14  so).

15  **B.    No Cause Exists to Compel Inspection of Mr. Bryant's Other Computers**

16

17        **1.    There is no evidence of spoliation**

18        As set forth above, this is not a motion to compel compliance with an earlier

19  order.  It is a new motion, and it fails.  Indeed, it does not even attempt to address

20  the 2004 and 2007 computers it seeks to compel, instead rehashing the history of

21  the pre-2004 computers that have already been repeatedly imaged and produced.

22

23  [11] The forensic images taken in July 2004 render the machines themselves utterly irrelevant.  If,
    immediately after taking those images, the computers had been fed into a wood chipper, not a bit
24  (or byte) of evidence would have been lost.  But Mattel has demonstrated a fanatical fascination
    with the subsequent history of those boxes.  They demanded that Bryant go back to his niece last
25  year, take back the 2000 Desktop, and fly it to Los Angeles for further inspection.  They then
    dragged us all to Missouri to depose Mr. Bryant's niece on her ownership of the computer. They
26  have demanded and received additional inspections of the 2002 Laptop, and additional redundant
    images.  They have moved to compel the deposition of Bryant's trial counsel on the subject of
27  custody of the computers AFTER they were imaged, and have continued to press for that
    deposition even after receiving Mr. Bryant's declaration confirming that the computers were
28  imaged in July 2004 (which Mattel already knew).  Page Decl. ¶ 11, Ex. J (Mattel Inc.'s Motion
    to Compel the Deposition of Littler Mendelson, P.C. dated December 14, 2007).

4

410889.02

1   But Mattel repeats, for at least the sixth time before this Court and Judge Larson, a

2   number of truly outrageous and scurrilous allegations concerning those two

3   computers, in hopes that this Court will confuse repetition for truth.  Accordingly,

4   we must respond.

5       The most dramatic element of Mattel's diatribe is its allegations of spoliation

6   by use of the "Evidence Eliminator" program.[12]  Those allegations are dramatic,

7   however, solely because Mattel omits most of the facts and distorts the rest beyond

8   recognition.  The truth is that there has been no spoliation, and Mattel knows it.

9       Admittedly, the creators of Evidence Eliminator chose a strikingly

10  unfortunate name for their product.  It can indeed be used to eliminate evidence of

11  deleted files from a computer.  But that is not its sole, or even primary, purpose.

12  When used as designed (i.e., as it is set to function "out of the box") Evidence

13  Eliminator performs routine clean-up functions such as deleting cookies and

14  spyware, clearing internet browsing history files, and the like.  Thus Evidence

15  Eliminator's advertisements list those functions first:  "**Speeds-Up** your PC and

16  makes it safer to surf the Internet!"  "Stops your computer spying on you!"[13]

17  Bryant has testified that this is why he installed the program in the first place; he

18  never reset its default configuration (and would have had no idea how to), instead

19  using it "out of the box."[14]  Mattel knows this perfectly well; it has the program

20  and configuration files from both computers, and Bryant has submitted them to the

21  Court in response to prior motions.[15]  Thus, in the unlikely event that Mattel's

22  experts had not looked at them before the last motion, they surely have by now.

23  And yet Mattel's motion continues to falsely assert that Bryant willfully deleted

24

---

[12] *See* Mot. at 10-11.

[13] Page Decl. ¶ 12, Ex.K  (Screenshot of Evidence Eliminator's "splash page").

[14] Page Decl. ¶ 13, Ex. L (Deposition of Carter Bryant Vol. 4 dated January 23, 2008) ("Bryant Depo. Vol. 4") (Tr. at 739:8-740:9, 740:23-741:4).

[15] Page Decl. ¶ 14, Ex. M (Opposition to Mattel Inc.'s Motion for Additional Time and/or to Reopen the Deposition of Carter Bryant for All Purposes and to Overrule Additional Instructions Not to Answer at the Deposition dated August 15, 2007 at p. 12).

5

410889.02

1   files from the 2000 Desktop and 2002 Laptop.[16]

2        More importantly—and also conspicuously absent yet again from Mattel's

3   representations to this Court—is **when** Mr. Bryant installed Evidence Eliminator.

4   Mr. Bryant installed Evidence Eliminator in **July 2002** (Desktop) and **September**

5   **2002** (Laptop).[17]  This lawsuit was not filed until nearly two years later, in **April**

6   **2004**.  As we have previously noted, at the time Mr. Bryant installed Evidence

7   Eliminator, he was under no obligation to preserve **any** evidence, and would have

8   been free to toss his own computers into the sea if he chose.  Mattel knows these

9   dates as well, both because it has possession of the installation logs and because we

10  have already submitted them to the Court in previous pleadings.[18]  And yet Mattel

11  omits those facts from its motion, instead breathlessly leading the Court along with

12  accusations of spoliation.

13       But if Mr. Bryant *didn't* use Evidence Eliminator to destroy evidence, why

14  (Mattel dramatically asks) is that data missing?  The simple answer is that there is

15  no missing data.  Mattel is, quite simply, making it up.  Mattel's brief dramatically

16  announces "Mattel's inspection also confirmed that data from the critical period of

17  2000 through 2001 was missing from both drives."[19]  What inspection?  What

18  data?  When one looks at the "evidence" cited in support of that very serious

19  accusation, one finds . . . . nothing.  More precisely, one finds only a citation to the

20  declaration of Quinn Emanuel associate Melissa Grant that "Examination of the

21  data reveals . . . . that data from the period of 2000 and 2001 appears to be

22  missing."[20]  Putting aside the creative use of the passive voice and the utter lack of

---

23

24  [16] Mot. at 11.

    [17] Page Decl. ¶ 15, Ex. N (Evidence Eliminator Installation Logs).  *See also*, *id.* ¶ 13, Ex. L
25  (Bryant Depo. Vol. 4 Tr. at 741:6-17).

    [18] Page Decl. ¶ 15, Ex. N (Evidence Eliminator Installation Logs)..
26  [19] Mot. at 10.

27  [20] Decl. of Melissa Grant in Support of Mot. for an Order Enforcing Court's Jan. 25, 2007 Order
    Compelling Bryant to Produce Computer Hard Drives and for Sanctions dated January 28, 2008
28  ("Grant Decl.") ¶ 29.

410889.02

1   foundation and competence, **what data appears to be missing**?

2   **None.**  Bryant's 2000 Desktop contains Bratz-related data from 2001, and

3   that data was produced long ago.[21]  Mattel offers no hint as to what data it claims

4   isn't there.  And as for the laptop, how could data from 2000 and 2001 be

5   "missing" from a laptop that didn't even exist then?  The 2002 laptop wasn't even

6   purchased until late 2001 or early 2002.[22]  Not surprisingly, the Bratz-related

7   documents on that computer date from the time of its purchase forward.

8   Finally, the entire proposition that Mr. Bryant deliberately deleted material

9   from the 2000 Desktop in order to thwart Mattel's discovery efforts makes no

10  sense.  Remember that, at the time this lawsuit was filed, Mr. Bryant had long

11  since given that computer away to his niece.[23]  It was not in his possession or

12  control, and was not subject to Mattel's discovery requests.  And yet **before**

13  **receiving any discovery requests** he and his counsel deliberately went and got

14  that computer back from his niece and created a complete forensic record of its

15  contents, thus preserving that evidence.  Why would someone intent on hiding

16  evidence do such a thing?

17  Mattel presents no evidence that Mr. Bryant has **ever** destroyed, or failed to

18  preserve, **any** relevant evidence in this matter.  Its argument rests entirely on the

19  name of a piece of software installed two years before this lawsuit was filed.  This

20  Court must look past the house of rhetorical cards at the facts, and there are no

21  facts supporting a claim of spoliation.

22

23

24  [21] Page Decl. ¶ 16, Ex. O (screen image of 2000 Desktop "My Documents" folder); *id.* ¶ 17, Ex.
    P ("Bratz Logo4" from the "My Documents" folder).  *See also* Grant Decl. ¶ 7, Ex. 6 (Oct. 21,
25  2000 Circuit City receipt).  Mattel may question why there are fewer Bratz-related graphical files
    from 2000-2001 than from later years, and suggest spoliation as an answer.  The truth is more
26  prosaic:  Until Mr. Bryant moved back to Missouri in February 2002, he had no need to scan and
    email his designs to MGA.
27  [22] Page Decl. ¶ 5, Ex. D (Bryant Preservation Decl. ¶ 10).

28  [23] Page Decl. ¶ 5, Ex. D (Bryant Preservation Decl. ¶ 9).

7

410889.02

## 2. There is no inconsistency regarding Bryant's 2004 through 2007 computers

After ten pages of fighting the last war, Mattel devotes a scant 4 paragraphs to discussing the computers that are actually at issue in this motion.[24]  In that discussion, Mattel claims that, in his most recent deposition, "Bryant's story dramatically changed yet again."[25]  But the Court will search in vain for that drama; Bryant's January 15, 2008 Preservation Affidavit and his January 23 deposition testimony are both identical and correct.  As set forth in the Preservation Declaration, there are three computers (which Mattel calls the "2004 Computers") that Bryant acquired after his original computers were imaged in July 2004.[26]  And as Mattel notes in its Motion, on May 15, 2007 this Court ordered that information related to unreleased Bratz products (including electronic information contained on those three computers) would need to be produced at the end of June, 2007.[27]  Information from the three 2004 Computers was forensically preserved in or around May 2007, and documents from those computers were produced on the schedule set by this Court.[28]

Finally, as set forth in both the Preservation Declaration and Bryant's deposition, Bryant's counsel recently searched Bryant's current computers (which Mattel has labeled the "2007 Computers"), copied relevant documents from those computers, and reviewed and produced them.[29]  The "contradiction" Mattel

---

[24] Mot. at 11-12.

[25] *Id.* at 11.

[26] Mot. at 12.  *See also*, Page Decl. ¶ 5, Ex. D (Bryant Preservation Decl. ¶ 12).

[27] Page Decl. ¶ 18, Ex. Q (Order Modifying the Protective Order dated May 15, 2005 at p. 12).  The date of production was delayed, so that the products would be released before information related to them was produced.

[28] Between the collection and the production of those documents, Bryant changed counsel.  The documents were collected and reviewed by Littler Mendelson, and turned over to Keker & Van Nest, which produced them on June 28, 2007.  Page Decl. ¶ 19, Ex. R (Ltr from Trinidad to Zeller dated June 28, 2007).  Keker & Van Nest then conducted its own review of the same three computers, and produced additional (largely redundant) documents on January 18, 2008.  Page Decl. ¶ 8, Ex. G (Letter from Trinidad to Zeller dated January 18, 2008).

[29] Page Decl. ¶ 5, Ex. D (Bryant Preservation Decl. ¶¶ 8, 12); *id.* ¶ 13, Ex. L (Bryant Depo. Vol.

8

imagines is based entirely on Mattel's own misunderstanding, confusing Bryant's deposition and Preservation Declaration testimony regarding the January 2008 collection of data from the "2007 Computers" with his Preservation Declaration concerning the March 2007 imaging of the "2004 Computers."[30] The former was not a complete imaging, while the latter was, both exactly as Bryant testified and declared.

This is the entirely ordinary stuff of discovery. At the outset of discovery, and again in mid-case, and yet again at the conclusion of discovery, Bryant has made each of his computers available to counsel. Counsel, in turn, has copied and preserved all possibly relevant data, has reviewed that data, and has produced responsive documents. This is precisely what we are supposed to do, and far more than Mattel has done. We are puzzled at the paucity of Mattel's production in many areas. For example, recent testimony establishes that literally *scores* of Mattel employees were aware of rampant moonlighting, and were aware as early as 2001 that Carter Bryant was one of the creators of Bratz.[31] And yet, we have no email on those subjects. Surely someone at Mattel said something on those subjects. Does that entitle us, with only that suspicion, to demand that Mattel produce to us for unfettered examination the contents of every computer and hard drive at Mattel, so that we can poke around and indulge our suspicions?

Of course not. But that is exactly what Mattel seeks here. Based on knowingly false and entirely unsupported innuendo, and arguing little more than "inquiring minds want to know," Mattel asks this Court to presume that counsel

---

IV Tr. at 758:10-759:9); *see id.* ¶ 8, Ex. G (Letter from Trinidad to Zeller dated Jan. 18, 2008).

[30] The testimony to which Mattel cites as relating to the March 2007 images is self-evidently about the January 2008 collection of data from the 2007 computers by Keker & Van Nest attorney Audrey Walton-Hadlock. *Compare* Grant Decl. Exh. 28 (Bryant depo: "when Audrey Hadlock had come out to my home . . . ") *with* Bryant Preservation Decl. ¶8 ("On January 2 and 3, 2008, Audrey Walton-Hadlock of Keker & Van Nest visited my home and office and conducted another search for any responsive objects and documents.").

[31] Page Decl. ¶ 20, Ex. S (Deposition of Elise Cloonan taken on December 14, 2007) Tr. at 102:12-104:1).

410889.02

1   has failed to review and produce relevant documents, and to turn that review over

2   to our opponents.

3        As this Court has already ruled once, "Rule 34 was not intended to authorize

4   the routine production of a party's electronic devices."[32]  As the Committee Note

5   to Rule 34 makes clear, the right to discover "electronically stored *information* is

6   not meant tot  create a routine right of direct access to a party's electronic

7   information system . . . . Courts should guard against undue intrusivness resulting

8   from inspection or testing of such systems."  Fed. R. Civ. P. 34(a)(1), 2006 Adv.

9   Comm. Notes.  Thus courts require that a requesting party prove improper conduct

10  before compelling production of a computer hard drive because hard drives "often

11  contain information that is not relevant to the claims and defenses pleading in a

12  complaint, or that is subject to a claim of privilege, such as attorney-client, work

13  product, trademark or copyright privileges."  James W. Moore et al., *Moore's*

14  *Federal Practice* §37A.44[3][b] (3d. ed. 2007); *see also Playboy Enterprises v.*

15  *Welles*, 60 F. Supp. 2d 1050, 1053-4 (S.D. Cal. 1999) (requiring production only

16  on proof of deletion of relevant data, and ordering review of all recovered

17  information by producing party).  Mattel has made no such showing concerning

18  these computers, and is therefore not entitle to seize and inspect them.

19        The invasion Mattel seeks would be outrageous in any circumstances.  It is

20  particularly so in this case, because Mattel seeks to seize and inspect Mr. Bryant's

21  electronic data from *years* after the relevant events, and during the pendency of

22  this action.  That data will include all of Mr. Bryant's privileged communications

23  with his litigation counsel, as well as *current* design work for Mattel's main

24  competitor and every byte of his electronic personal life.  Mattel has made no

25  showing that documents from 2004, 2005, 2006, 2007, or 2008 could possibly

26  inform the question whether Bryant created Bratz in 1998 (as it is clear he did) or

27

28  [32]*See* Note 1, *supra*.

410889.02

1   in 1999 (as Mattel claims), much less a showing that Bryant's counsel failed to

2   review that data and produce any that was relevant.  Balanced against the obvious

3   privacy and privilege issues, Mattel's showing fails miserably.

4           Mattel also makes no suggestion as to how Mr. Bryant's privileges and

5   privacy rights are to be preserved while they seize all of his computers.

6   Presumably, a forensic expert would (once again) copy all of the files, which

7   Bryant's own counsel would (once again) review for privilege before turning them

8   over to Matttel.  It is far too late in the game to start that lengthy process, and

9   Mattel offers no reason why it has waited nine months before bringing this motion

10  after the close of discovery.[33]

11          Mattel makes no showing of cause for this extraordinary invasion of Mr.

12  Bryant's privacy and privilege.  This Court must deny Mattel's motion.[34]

13  Dated:  February 7, 2008                          KEKER & VAN NEST, LLP

14

15

16                                                    By:  /s/ Michael H. Page
                                                         MICHAEL H. PAGE
17                                                       Attorneys for Plaintiff
                                                         CARTER BRYANT
18

19

20

21

22

23

24

25  ───────────────────
[33] Notice of Motion at 3 (parties met and conferred on April 2, 2007).
26  [34] Mattel, as always, seeks sanctions.  We oppose that request as unwarranted.

27

28

410889.02

# ATTACHMENT

# [PROPOSED] ORDER

KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                              Plaintiff,<br><br>v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>                              Defendant. | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)<br><br>**DISCOVERY MATTER**<br><br>[To Be Heard by Discovery Master Hon. Edward Infante (Ret.)]<br><br>**[PROPOSED] ORDER DENYING MATTEL INC.'S MOTION FOR AN ORDER ENFORCING COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS** |
| CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Date:     TBA<br>Time:     TBA<br>Date Comp. Filed:  April 13, 2005<br>Discovery Cut-Off: Jan. 28, 2008<br>Trial Date: May 27, 2008 |

[PROPOSED] ORDER DENYING MATTEL INC.'S MOTION FOR AN ORDER ENFORCING COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS
CASE NO. CV 04-09049 SGL (RNBx)

410952.01

# [PROPOSED] ORDER

The Court has carefully considered the parties' submissions concerning Mattel's Motion for an Order Enforcing Court's January 25, 2007 Order Compelling Bryant to Produce Computer Hard Drives and for Sanctions. Mattel has not shown cause why Bryant should be required to produce his hard drives and computer forensic images. Accordingly, Mattel's motion is DENIED.

IT IS SO ORDERED.

Dated:

By: _____
HON. EDWARD A. INFANTE
Discovery Master

1

410952.01

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On February 7, 2008, I served the following document(s):

**CARTER BRYANT'S OPPOSITION TO MATTEL INC.'S MOTION FOR AN ORDER ENFORCING COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS;**

**[PUBLIC REDACTED] DECLARATION OF MICHAEL H. PAGE IN SUPPORT OF CARTER BRYANT'S OPPOSITION TO MATTEL, INC.'S MOTION FOR AN ORDER ENFORCING COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS;**

**[PROPOSED] ORDER DENYING MATTEL INC.'S MOTION FOR AN ORDER ENFORCING COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS.**

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery;

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

1   Hon. Edward A. Infante
2   JAMS
    Two Embarcadero Center, Suite
3   1500
    San Francisco, CA 94111
4   Tel:   415/774-2649
5   Fax:   415/982-5287
    Email:     schan@jamsadr.com
6

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543
Tel:   213/443-3000
Fax:   213/443-3100
Email:
     johnquinn@quinnemanuel.com
Email:
     michaelzeller@quinnemanuel.com

10   Thomas J. Nolan
     Skadden Arps Slate Meagher &
11   Flom
     300 South Grand Avenue, Suite
12   3400
     Los Angeles, CA 90071-3144
13   Tel:   213/687-5000
     Fax:   213/687-5600
14   Email: tnolan@skadden.com
15

Alexander H. Cote
Overland Borenstein Scheper & Kim LLP
300 S. Grand Avenue, Suite 2750
Los Angeles, California 90071
Tel:   213/613-4660
Fax:   213/613-4656
Email :     acote@obsklaw.com

16

17        Executed on February 7, 2008, at San Francisco, California.
18   I declare under penalty of perjury under the laws of the State of California that the
     above is true and correct.
19

20

21   _____
     KAY SHIDA
22