# EXHIBIT D

1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  jkeker@kvn.com
   MICHAEL H. PAGE - #154913
3  mpage@kvn.com
   CHRISTA M. ANDERSON - #184325
4  canderson@kvn.com
   MATTHEW M. WERDEGAR - #200470
5  mwerdegar@kvn.com
   710 Sansome Street
6  San Francisco, CA 94111-1704
   Telephone: (415) 391-5400
7  Facsimile: (415) 397-7188

8  Attorneys for Plaintiff
   CARTER BRYANT

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

13
   CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
14                                       (consolidated with CV 04-9059 & 05-
                       Plaintiff,        2727
15
        v.                               DECLARATION OF CARTER
16                                       BRYANT IN RESPONSE TO
   MATTEL, INC. a Delaware               COURT'S REQUEST FOR
17 Corporation,                          INFORMATION REGARDING
                                         DOCUMENT PRESERVATION
18                     Defendant.
                                         Dept:     Courtroom 1
19                                       Judge:    Hon. Stephen G. Larson
   CONSOLIDATED WITH MATTEL,
20 INC., v. BRYANT and MGA               Date Comp. Filed: April 13, 2005
   ENTERTAINMENT, INC. v.
21 MATTEL, INC.                          Discovery Cut-Off: Jan. 28, 2008
                                         Pre-Trial Conference: May 5, 2008
22                                       Trial Date: May 27, 2008

23

24

25

26

27

28

409252.01

1    I, CARTER BRYANT, declare and state that:

2    1.    I am an individual residing in Missouri, and a party to this litigation.

3    All of the facts set forth herein are known to me personally, except for those stated

4    on information and belief, and, if called as a witness, I could and would testify

5    competently thereto.

6    2.    I submit this declaration in response to the Court's January 8, 2008

7    Order that I provide "a factual description of [my] preservation efforts, policies,

8    customs, and/or practices with respect to potentially discoverable documents

9    related to the present litigation."

10    3.    Since the outset of this litigation, I have sought to retain everything in

11    my possession that relates to Bratz, my employment by Mattel, and my work as an

12    independent contractor for MGA.  I have repeatedly made all of my documents and

13    physical items available to my counsel, and have turned over to counsel everything

14    that is conceivably relevant to this lawsuit.  I understand my obligation to preserve

15    all relevant evidence, and have not to my knowledge discarded, destroyed, or

16    disposed of any relevant evidence.

17    4.    Specifically, my counsel and their consultants have on at least five

18    separate occasions traveled to my home and office (which is located at my home)

19    in Springfield, Missouri to examine and collect documents and exhibits.

20    5.    On May 18 and 19th, 2004, attorney Robert Millman of Littler,

21    Mendelson, along others, spent two days collecting documents at my home and

22    office, and transported those documents to California.  Those documents included

23    all of my hardcopies of contracts, agreements, correspondence, and the like

24    relating to my employment at Mattel and my work with MGA.  All of those

25    materials had been stored at my home prior to that time, and have remained in the

26    possession of my attorneys (initially Littler Mendelson and later Keker & Van

27    Nest) since May 19, 2004.

28    6.    On July 11 and 12, 2005, Dominic Messiha and Lena Sims of Littler

1

DECLARATION OF CARTER BRYANT
CASE NO. CV 04-09049 SGL (RNBx)

409252.01

1   Mendelson again visited my home/office to collect all Bratz-related and Mattel-

2   related artwork and objects, which they transported to California.  All of those

3   materials had been stored at my home prior to that time, and have remained in the

4   possession of my attorneys (initially Littler Mendelson and later Keker & Van

5   Nest) since July 12, 2005.

6        7.    On March 3, 4, and 5, 2007, Diba Rastigar of Littler Mendelson

7   visited my home/office to collect drawings, correspondence, and physical objects

8   related to my work on later Bratz dolls and accessories, in order to respond to

9   subsequent discovery requests and orders.  All of those materials had been stored

10   at my home prior to that time, and have remained in the possession of my attorneys

11   (initially Littler Mendelson and later Keker & Van Nest) since March 5, 2007.

12        8.    On January 2 and 3, 2008, Audrey Walton-Hadlock of Keker & Van

13   Nest visited my home and office and conducted another search for any responsive

14   objects and documents.  That search included a thorough search of my workshop

15   and office for any addition or new physical objects and drawings created since the

16   prior collections, as well as a search of my paper files and computers for any

17   responsive documents, correspondence, and email.  All of those materials were

18   shipped to counsel's offices in California on January 4, 2008, and remain in the

19   possession of Keker & Van Nest.

20        9.    Prior to the outset of this lawsuit, I owned two personal computers

21   which I used in connection with my work with MGA.  One was an HP Pavilion

22   desktop computer which I acquired on October 21, 2000.  I used this computer

23   until sometime in mid-2002, after which it sat unused at my home.  In October

24   2003, my niece Brooke was attending college, and her computer died.  I gave her

25   the old HP Pavilion computer.

26        10.    In late 2001 or early 2002, I purchased a Compaq Presario 2700

27   laptop computer, which both I and my partner Richard Irmen used.

28        11.    On July 24, 2004, at the direction of my counsel, a technician from

2

DECLARATION OF CARTER BRYANT
CASE NO. CV 04-09049 SGL (RNBx)

1  CoreFacts visited my home/office for the purposed of taking complete forensic

2  images of my computers.  We borrowed the HP Pavilion back from Brooke

3  Gilbert, took a forensic image of its contents, and then returned it to her.

4  CoreFacts also took a forensic image of the Compaq laptop.  My counsel (initially

5  Littler Mendelson and later Keker & Van Nest) thereafter took possession of the

6  laptop.

7      12.    On March 8, 2007, technicians from AON collected and took forensic

8  images of three computers I had used since the imaging in July, 2004, and

9  provided those images to my counsel (initially Littler Mendelson and later Keker

10  & Van Nest).

11      13.    I do not have any computers, files, materials, or other documents or

12  things, at any location, that have not been provided to counsel for inspection.

13      14.    I am informed and believe that all of my files from the former firm of

14  Pretty & Schroeder, which represented me in the past, were provided to and

15  reviewed by my former counsel Littler & Mendelson.

16      15.    I am informed and believe that all of my files and documents that

17  were in the possession of Littler & Mendelson have been transferred to my current

18  counsel Keker & Van Nest.

19      I declare under penalty of perjury under the laws of the United States that

20  the foregoing is true and correct and that this declaration was executed on

21  January 14, 2008, at Springfield, Missouri.

22

23

24                                    CARTER BRYANT

25

26

27

28

# EXHIBIT E

**CONFIDENTIAL TESTIMONY**        9/25/2007        **ATTORNEYS' EYES ONLY**

1

1    IN THE UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    EASTERN DIVISION

4

5    CARTER BRYANT, an
     individual,
                                    Case No. CV 04-9049
6        Plaintiff,                 SGL (RNBx)
                                    Consolidated with:
7     vs.
                                    Case No.
8    MATTEL, INC., a Delaware       CV 04-09059
     corporation,
9                                   Case No.
         Defendant.                 CV 05-02727
10

11

     VIDEOTAPED DEPOSITION OF MS. JANET L. BRYANT
12

13   produced, sworn, and examined on Tuesday,

14   September 25, 2007, at 9 a.m. of that day, at

15   the University Plaza Hotel & Convention Center,

16   333 John Q Hammons Parkway, in the City of

17   Springfield, County of Greene, and State of

18   Missouri, before me, KELLY R. HEISDORFFER, RPR,

19   CSR, CCR, in the above-captioned cause; taken on

20   behalf of the Defendant.

21

22

              ALPHA REPORTING SERVICE
23            3230-G South National
           Springfield, Missouri 65807
24              (417) 887-4110

25

89

1    Q.   And when you say "he may have," you're not sure

2         whether he did?

3    A.   No.

4    Q.   That's correct, you're not sure?

5    A.   That's correct.

6    Q.   You had mentioned that you used that computer

7         from time to time or rarely I think you said.

8              Is that a computer that you and Tom still

9         have?

10   A.   No.

11   Q.   Do you know where it went?

12   A.   Yes.

13   Q.   Where did it go?

14   A.   We gave it to a young girl who was going to

15        college.

16   Q.   Do you know who that young girl is?

17   A.   Yes.  Her name is Nicole Wilson.

18   Q.   And is she someone you and Tom knew at the time?

19   A.   Yes.

20   Q.   And how did you know her?

21   A.   At church.

22   Q.   And when the computer was given to her, was this

23        part of an organized event or drive of the

24        church, or was it something that you did with

25        her?

90

1   A.   We did with her.

2   Q.   You knew or found out that she was going to go

3        to college and she needed a computer, and so you

4        gave her that one?

5   A.   Yes.

6   Q.   And when was this?

7   A.   Five or six years ago.

8   Q.   Do you remember what kind of computer it was?

9   A.   I have no idea, no.

10  Q.   Do you remember if it was a personal computer as

11       opposed to an Apple?

12  A.   I don't remember.

13            MR. PAGE:  Steve Jobs may take issue.

14  Q.   (By Mr. Zeller)  You think Tom would probably

15       know more about this than you do?

16  A.   Yes, Tom would know.

17  Q.   Have you been in contact with Nicole Wilson in

18       recent times?

19  A.   Yes.

20  Q.   Do you know where she is today not this second,

21       but in general?

22  A.   Yes.  She lives in Springfield.

23  Q.   Do you know where in Springfield?

24  A.   No.

25  Q.   Do you know neighborhood or area?

91

1    A.   No.

2    Q.   Does she still go by the name Nicole Wilson?

3    A.   Yes.

4    Q.   I would guess she's approximately in her early

5         to mid 20s?

6    A.   Yes.

7    Q.   Does she still go to the same church?

8    A.   Yes.

9    Q.   And what is the name of that church?

10   A.   Church of Christ, Republic, Missouri.

11   Q.   I'm sorry.   In Republic, Missouri?

12   A.   Yes.

13   Q.   Republic is another town?

14   A.   Yes.

15   Q.   Do you know if anyone has ever -- do you know if

16        anyone has ever asked Nicole Wilson whether she

17        still has that computer or where it went?

18   A.   Yes.

19   Q.   And what do you know about that?

20   A.   Tom asked her about it, and she had given it to

21        someone else and has no idea what has happened

22        to it.

23   Q.   And so it's your understanding that Nicole

24        didn't have any information about where the

25        computer went after she had it?

92

1   A.   That's my understanding, yes.

2   Q.   And this is something that Tom told you about?

3   A.   Well, we both asked Nicole about the computer.

4   Q.   So you were there when Tom asked Nicole about

5        it?

6   A.   No.  He asked her and I asked her separately.

7   Q.   I see.  So let's focus on the occasion which you

8        talked to her.  Did you ask her specifically

9        where the computer went?

10  A.   I said, Nicole do you still have the computer?

11       No.  I gave it to so and so, and I don't know

12       where it is.

13  Q.   Did Nicole at the time tell you the name of the

14       person she gave it to?

15  A.   No.

16  Q.   Did Nicole give you an indication, as you

17       understood it, as to whether or not she knew who

18       that person was?

19  A.   No, she didn't give me any indication.  I don't

20       know if she did Tom.

21  Q.   I'm sorry.  What was the last part?

22  A.   I don't know whether she talked to Tom or

23       whether she told him.

24  Q.   I'm sorry.  But if I understand you correctly,

25       she did not tell you the name of somebody she

93

1        gave it to?

2    A.   No.

3    Q.   That's correct?

4    A.   Correct.

5    Q.   And did you ask her who the person was?

6    A.   I don't remember if I asked her directly.  She

7         just said she had given it to someone, and she

8         didn't know where it was.

9    Q.   Did you talk to Nicole Wilson about the computer

10        before or after Tom did?

11   A.   Probably right in the same week or so.

12   Q.   But was it your understanding that Tom had

13        already talked to her by the time you talked to

14        her about the computer?

15   A.   I don't know.  Sometimes we split up and he'll

16        talk to her and I'll talk to her separately at

17        services.  So I don't know.

18   Q.   I think you had mentioned that you, of course,

19        have seen Nicole Wilson at church.  Is she

20        someone who is a family friend, or did you meet

21        her through the church?

22   A.   Church.

23   Q.   Do you know her family?

24   A.   Yes.

25   Q.   They also are at the church?

94

1    A.   Yes.

2    Q.   Do you know what her parents' names are?

3    A.   Yes.

4    Q.   And what are those?

5    A.   Randy Wilson, Cindy Wilson.

6    Q.   Do you know if that's Cindy with an I or a Y?

7    A.   Y.

8    Q.   Do you know where they live?

9    A.   I believe they live in Billings.

10   Q.   Billings, Missouri as opposed to Montana I

11        assume?

12   A.   Yes, uh-huh.

13   Q.   So other than the conversations that you and Tom

14        had with Nicole Wilson about the whereabouts of

15        that computer, do you know if anything else has

16        been done to locate it?

17   A.   No, I don't know.

18   Q.   That is all you know about it?

19   A.   That's all I know.

20   Q.   And I take it that the reason why you and Tom or

21        what led for you to ask her about the computer

22        was because of the lawsuit?

23   A.   Yes.

24   Q.   So this was sometime after the lawsuit had

25        already been filed?

```
 1                        REPORTER'S CERTIFICATE

 2
             STATE OF MISSOURI     )
 3                                 )  ss
             COUNTY OF GREENE      )
 4

 5        I, KELLY R. HEISDORFFER, Registered
       Professional Reporter, Certified Shorthand
 6     Reporter, and Certified Court Reporter, do
       hereby certify that the witness was duly sworn
 7     by me; that the facts stated by me in the
       caption hereof are true; that the said witness
 8     did make the above and foregoing answers in
       response to questions propounded as shown; that
 9     I did, in stenotype, report said proceedings;
       and that the above and foregoing typewritten
10     pages contain a full, true, and correct
       transcription of my shorthand notes taken on
11     such occasion.  That the signature to said
       deposition was by agreement of counsel and the
12     witness waived; that said deposition is now
       herewith returned.
13

14        I further certify that I am neither attorney
       for, nor counsel for, nor related to, nor
15     employed by any of the parties to the action in
       which this deposition was taken; and, further,
16     that I am not a relative or employee of any
       attorney or counsel employed by the parties
17     hereto, or financially interested in the action.

18

19     _____
       KELLY R. HEISDORFFER, RPR, CSR, CCR
20                           CCR No. 1025

21

22          ALPHA REPORTING SERVICE
              3230-G South National
23         Springfield, Missouri  65807
                (417) 887-4110
24

25
```

# EXHIBIT F

1

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3              EASTERN DIVISION

4

5     CARTER BRYANT, an individual,

6                 Plaintiff,

7         vs.        Case No. CV-04-9049-SGL (RNBx)

8     MATTEL, INC., a Delaware corporation.

9                 Defendant.

10

11        VIDEOTAPED DEPOSITION OF

12        MR. THOMAS ALVIN BRYANT,

13    produced, sworn, and examined on Wednesday,

14    September 26, 2007, at 11:17 a.m. of that

15    day, at the University Plaza Hotel,

16    333 S. John Q. Hammons Parkway, in the City of

17    Springfield, County of Greene, and State of

18    Missouri, before me, Dawn A. Chapman, RPR, CCR

19    (MO), CCR (KS), in the above-captioned cause;

20    taken on behalf of the Defendant.

21

22

23          ALPHA REPORTING SERVICE
             3230-G South National
24        Springfield, Missouri 65807
               (417) 887-4110
25

Bryant v. Mattel                              9/26/2007                          Thomas Bryant

45

 1          were or what they related to?

 2     A    I don't have an understanding of what they were

 3          or related to because we didn't get into detailed

 4          discussions about it.

 5     Q    So you don't know whether they were for, for

 6          example, for greeting cards?

 7     A    No.  I do not know.

 8     Q    During the time that you and -- and your wife

 9          were living on Sycamore in Kimberling City, and

10          during that same time period when Carter was

11          living with you --

12     A    Uh-huh.

13     Q    -- did you have a computer in the house that

14          people used?

15     A    Yes, I did.

16     Q    And was that a computer that you principally

17          used?

18     A    Yes.

19     Q    Did Carter use that computer from time to time?

20     A    He may have.

21     Q    You're not sure one way or another?

22     A    No.

23     Q    What kind of computer was it?

24     A    It was an IBM desktop.

25     Q    And that was a computer that you had there in

46

1         your house in Kimberling City the whole time

2         during 1998?

3    A    Yes.  Actually it was a Gateway computer, not

4         IBM.  And it was a PC.

5    Q    Okay.  That I take it you ordered through

6         basically Gateway's mail service?

7    A    Yes.

8    Q    They shipped it to you?

9    A    Yes.

10   Q    And -- and that -- that Gateway desktop that you

11        had there in your house was there the whole year

12        during 1998?

13   A    Yes.

14   Q    And where did you have it, did you have it in an

15        office, home office?

16   A    I had it in my home office.

17   Q    And back in that time period, was it hooked up to

18        the internet?

19   A    Dial-up internet, yes.

20   Q    What service did you use back then?

21   A    Let's see, what service did I use?  It was a

22        local one offered out of Branson, but I don't

23        remember the name of it.

24   Q    Was there an e-mail service provider that you had

25        back then?

47

1    A    I had e-mail on that.

2    Q    Was it also through that same local --

3    A    Yes.

4    Q    -- service?

5         Other than that Gateway desktop, did you

6         have any other computers in the house back then?

7    A    No.

8    Q    Do you still have that Gateway desktop today?

9    A    No, I do not.

10   Q    When was the last time you saw it?

11   A    It's three or four years ago, I...

12   Q    And -- and I apologize, you'll have to remind me,

13        were you still living in the house on Sycamore

14        then at that time?

15   A    No.

16   Q    You'd moved?

17   A    Moved to Nixa.

18   Q    And you took the computer with you --

19   A    Yes.

20   Q    -- to the new house in Nixa?

21   A    It was my computer and I took it.

22   Q    So you said that the last time you had it was

23        three to four years ago?

24   A    I'm trying to remember, I don't remember exactly.

25        A family at church had a daughter going away to

48

```
 1            college, she needed a computer, and I was ready

 2            to buy a new one because it was a very slow

 3            processor, and so I gave it to her.

 4     Q      What was her name?

 5     A      Nicole Wilson.

 6     Q      And, so, she was -- Nicole Wilson was going away

 7            to college?

 8     A      Yes.

 9     Q      And -- and you gave her the computer --

10     A      Yes.

11     Q      -- three or four years ago?

12     A      Yes.

13     Q      Do you know where she went to college?

14     A      I do not know.  I know it was in Kansas City

15            somewhere, but I don't know which college.

16     Q      And when you gave it away, did she -- did she

17            come and pick it up or did you take it somewhere

18            to her?

19     A      I took it to church and they loaded it in their

20            car at church.

21     Q      Have you made any -- well, I'll ask it more

22            broadly.  Are you aware of any efforts to try and

23            recover that computer or get it back?

24     A      I asked her -- well, when all this came down,

25            Carter mentioned to me about the computer, if I
```

Bryant v. Mattel                      9/26/2007                      Thomas Bryant

49

```
 1        still had it, and I told him no.  Did I know

 2        where it was, I told him I gave it to Nicole.  So

 3        I asked Nicole if she knew where it was or if she

 4        still had it, she told me she did not have it

 5        anymore, that she had moved around from one

 6        roommate to another roommate and somewhere the

 7        computer either got carted off or misplaced or

 8        maybe even sold, I don't know.  It's not

 9        available.

10   Q    And was this a conversation you had, yourself,

11        with Nicole directly?

12   A    Yes.

13   Q    And, so, she told you the things that -- that you

14        just described?

15   A    Yes.

16   Q    Did she tell you when she last knew where it was?

17   A    No.

18   Q    Did you ask her that?

19   A    No.

20   Q    Do you know if your wife asked her that?

21   A    I do not believe she did.  In fact, I know she

22        didn't, because I was the one talking to Nicole.

23   Q    Well, maybe I should just ask this.  Did your

24        wife talk to Nicole about the computer?

25   A    Not that I'm aware of.
```

Bryant v. Mattel                    9/26/2007                    Thomas Bryant

50

1    Q    And -- and where did you have this conversation

2         with Nicole about the computer, did you call her

3         up or did you run into her somewhere?

4    A    Parking lot of the church.

5    Q    And was this pretty close in time after Carter

6         had mentioned or made inquiries about the

7         computer?

8    A    Yes, I would say so.

9    Q    Other than the conversation you had with -- with

10        Nicole Wilson, do you know of any other efforts

11        that have been made by anyone to try and track

12        down that computer?

13   A    I'm not aware of any.

14   Q    Do you know if anyone -- anyone else, other than

15        yourself, has contacted Nicole Wilson to ask her

16        about the computer?

17   A    I'm not aware of anyone.

18   Q    During the time period -- well, let me -- let me

19        ask, I guess, broadly first.

20             I take it there came a time when you first

21        heard about BRATZ?

22   A    Yeah.

23   Q    And when did you first hear about BRATZ?

24   A    Would you clarify that, please?

25             MR. PAGE:  Let me object, it's vague and

160

```
1                    REPORTER'S CERTIFICATE

2        STATE OF MISSOURI)
                          ) ss
3        COUNTY OF GREENE )

4            I, DAWN A. CHAPMAN, Registered Professional
         Reporter, Certified Shorthand Reporter and
5        Certified Court Reporter, do hereby certify that
         the witness was duly sworn by me; that the facts
6        stated by me in the caption hereof are true; that
         the said witness did make the above and foregoing
7        answers in response to questions propounded as
         shown; that I did, in stenotype, report said
8        proceedings; and that the above and foregoing
         typewritten pages contain a full, true, and
9        correct transcription of my shorthand notes taken
         on such occasion.  That presentment by me to the
10       witness for signature was waived; that the
         deposition will be thereafter by the witness read
11       over, signed, and sworn to on or before the date
         of trial; that said deposition is now herewith
12       returned.

13


14           I further certify that I am neither attorney
         for, nor counsel for, nor related to, nor
15       employed by any of the parties to the action in
         which this deposition was taken; and, further,
16       that I am not a relative or employee of any
         attorney or counsel employed by the parties
17       hereto, or financially interested in the action.

18

19           _____
         DAWN A. CHAPMAN, RPR, CSR, CCR
20                      CCR No. 645

21

22

23           ALPHA REPORTING SERVICE
             3230-G South National
24         Springfield, Missouri 65807
                (417) 887-4110
25
```

# EXHIBIT G

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

JOHN E. TRINIDAD
JTRINIDAD@KVN.COM

January 18, 2008

**VIA FEDERAL EXPRESS AND PDF**

Michael T. Zeller
B. Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543

Re:     Carter Bryant v. Mattel, Case No. C 04-09049 SGL

Dear Michael and Dylan:

As we indicated in prior correspondence, we are in the process of supplementing Mr. Bryant's production.  As previously mentioned, this production may contain duplicates of documents previously produced by Mr. Bryant or others.  However, we are producing in an abundance of caution.

Earlier today, a messenger delivered a CD labeled "BRYANT2_006" to your office, and to your attention.  This CD contains documents bearing bates numbers BRYANT2 008079 to 011043, including documents designated CONFIDENTIAL, CONFIDENTIAL-ATTORNEYS' EYES ONLY, and HIGHLY CONFIDENTIAL - RESTRICTED ATTORNEYS' EYES ONLY under the protective order that governs this case.

Regards,

John E. Trinidad

JET/at
Encl.

cc:     Thomas J. Nolan (w-encl. and via FedEx and pdf)
        Alex Cote (w/o encl. and via pdf only)

# EXHIBIT H

L‌ITTLER MENDELSON®
A PROFESSIONAL CORPORATION

April 23, 2007

Keith A. Jacoby
Direct: 310.772.7284
Direct Fax: 310.553.5583
kjacoby@littler.com

**VIA HAND DELIVERY**

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543

Re:   **Bryant v. Mattel**

Dear Mr. Zeller:

As you know, we recently confirmed that the July 2004 "mirror image" of the 20 GB Quantum Fireball LCT 15 hard drive ("July 2004 Mirror Image") retained by this office is indeed the copy of the hard drive from the desktop computer purchased by Carter Bryant in or about October 2000.  Enclosed with this letter is a copy of the July 2004 Mirror Image.

As recounted in his deposition, Mr. Bryant gave the October 2000 computer to his niece, Brooke Lind Gilbert.  We obtained this computer from Ms. Gilbert on April 19, 2007. In accordance with Discovery Master Infante's ruling, we hereby make this computer and its hard drive immediately available to Mattel's expert for forensic examination in our offices. Please contact and apprise me of the identity of your expert so we can make the appropriate arrangements.

In light of the foregoing, Mattel's motion to compel the production of said hard drive is moot.  We expect that you will immediately contact Discovery Master Infante and withdraw the motion.

All of Mr. Bryant's rights and remedies are hereby reserved, including the right to seek further relief concerning the appropriate manner of inspection and disposition of the Compaq Presario laptop computer hard drive, and all other hard drives in Mr. Bryant's possession, custody or control.

Michael T. Zeller
April 23, 2007
Page 2

If you have any questions concerning the foregoing, please do not hesitate to contact me.

Sincerely,

Keith A. Jacoby

encl.

KAJ:rpe

Firmwide:82358948.1 028307.1010

EXHIBIT I

1   DOUGLAS A. WICKHAM (S.B. #127268)
    dwickham@littler.com
2   KEITH A. JACOBY (S.B. #150233)
    kjacoby@littler.com
3   LITTLER MENDELSON
    A Professional Corporation
4   2049 Century Park East, 5th Floor
    Los Angeles, CA 90067.3107
5   Telephone:  (310) 553-0308
    Facsimile:   (310) 553-5583
6   Attorneys for Carter Bryant

7

8               UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
9                      EASTERN DIVISION

10  CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)
                                         (consolidated with CV 04-9059 & 05-2727)
11                  Plaintiff,
                                         **DISCOVERY MATTER**
12         v.
                                         **[To Be Heard By Discovery Master
13  MATTEL, INC., a Delaware             Hon. Edward Infante (Ret.) Pursuant
    Corporation,                         To The Court's Order Of December 6,
14                                       2006]**

15                  Defendant.           **DECLARATION OF KEITH A.
                                         JACOBY IN OPPOSITION TO
16                                       MOTION OF MATTEL, INC. FOR AN
                                         ORDER TO ENFORCE COURT'S
17                                       JANUARY 25, 2007 ORDER
                                         COMPELLING BRYANT TO
18                                       PRODUCE DESKTOP COMPUTER
                                         HARD DRIVE**

19
                                         Date:  To Be Determined
20                                       Time:  To Be Determined
                                         Place: Telephonic
21
                                         Discovery Cut-Off:  October 31, 2007
22                                       Trial Date:  February 12, 2008
23
24  CONSOLIDATED WITH                    Judge:  Hon. Stephen G. Larson
    MATTEL, INC. v. BRYANT and
25  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.
26

27

28

                                         DECLARATION OF KEITH A. JACOBY

1 I, KEITH A. JACOBY, declare as follows:

2  1. I am an attorney admitted to practice before all courts in the State of

3 California, including this Court. I am a shareholder of the law firm of Littler

4 Mendelson, a Professional Corporation, counsel of record for Carter Bryant

5 ("Bryant") in this matter. I have personal knowledge of the matters set forth herein

6 and, if called as a witness, I could and would testify competently thereto.

7  2. This is yet another discovery issue with a long and tortured history.

8 Only a handful of facts are relevant, however.

9  3. On about April 10, 2007, Mattel. Inc. ("Mattel") filed the instant

10 motion, seeking an order compelling Bryant to produce the original desktop

11 computer purchased by Carter Bryant in or about October 2000 (the "Desktop

12 Computer) for forensic imaging. This computer is the sole subject of Mattel's

13 motion.

14  4. As Bryant has long maintained, Bryant gave the Desktop Computer to

15 his niece, Brooke Lind Gilbert, some time ago. In July 2004, Bryant arranged for a

16 mirror image of the hard drive from the Desktop Computer to be taken. Bryant has

17 previously offered to produce a copy of this mirror image, but Mattel has insisted

18 on inspecting the original.

19  5. In response, Bryant labored to obtain the Desktop Computer from Ms.

20 Gilbert. My office finally received it from Ms. Gilbert on April 19, 2007.

21 Moreover, my office notified Mattel's counsel of this development, indicated that

22 Bryant would make the Desktop Computer immediately available to Mattel for

23 inspection by its forensic expert, and asked that Mattel take the instant motion off

24 calendar.

25  6. On April 23, 2007, I directed a letter to Mattel's counsel renewing

26 Bryant's demand that the motion be placed off calendar. Moreover, as a courtesy, I

27 forwarded a copy of the mirror image to Mattel along with my letter. A true and

28 correct copy of my letter is attached hereto as Exhibit "A".

1.

DECLARATION OF KEITH A. JACOBY

1       7.    Mattel, however, has not indicated that it will place the instant motion

2   off calendar.  Nor has Mattel responded in any way to my letter.

3       8.    Based on the foregoing, the instant motion is moot.  Bryant has

4   complied with the Discovery Master's prior instructions and has made the Desktop

5   Computer available for forensic imaging.  There is no valid reason to maintain the

6   instant motion.

7        I declare under penalty of perjury under the laws of the United States

8   of America and the State of California that the foregoing is true and correct.

9        Executed this 24th day of April, 2007, at Los Angeles, California.

10

11                                     KEITH A. JACOBY

12

Firmwide:82375502.1 028307.1010

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

               DECLARATION OF KEITH A. JACOBY

# EXHIBIT J

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
       John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
       Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
       Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
       Timothy L. Alger (Bar No. 160303)
5      (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
7   Facsimile:   (213) 443-3100

8   Attorneys for Mattel, Inc.

9

10                    UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12                          EASTERN DIVISION

13   CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

14                   Plaintiff,             Consolidated with
                                            Case No. CV 04-09039
15        vs.                               Case No. CV 05-02727

16   MATTEL, INC., a Delaware               **DISCOVERY MATTER**
     corporation,
17                                          **[To Be Heard By Discovery Master
                     Defendant.             Hon. Edward Infante (Ret.) Pursuant
18                                          To The Court's Order Of December
                                            6, 2006]**
19   AND CONSOLIDATED ACTIONS
                                            **MATTEL, INC.'S NOTICE OF
20                                          MOTION AND MOTION TO
                                            COMPEL DEPOSITION OF
21                                          LITTLER MENDELSON, P.C.
                                            PURSUANT TO SUBPOENA**
22
                                            **MEMORANDUM OF POINTS AND
23                                          AUTHORITIES**
                                            [Declaration of Michael T. Zeller filed
24                                          concurrently]

25                                          Hearing Date:    January 4,20008
                                            Time:            TBA
26                                          Place:           Telephonic
                                            **Phase 1**
27                                          Discovery Cut-off:    January 28, 2008
                                            Pre-trial Conference:  April 21, 2008
28                                          Trial Date:           May 27, 2008

07209/2325182.1

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that at a telephonic conference before

3   Discovery Master Hon. Edward Infante (Ret.) that will occur on January 4, 2008,

4   plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court to compel the

5   deposition of Littler Mendelson, P.C. ("Littler"), pursuant to a subpoena issued on

6   September 6, 2007.

7        This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 36

8   and 37 on the grounds that pursuant to the subpoena Mattel seeks to depose Littler

9   on discoverable, non-privileged information, and that Carter Bryant's objections to,

10  and concurrent motion to quash, the deposition are improper and should be

11  overruled.

12       This Motion is based on this Notice of Motion and Motion, the

13  accompanying Memorandum of Points and Authorities, the Declaration of James J.

14  Webster filed concurrently herewith, and all other matters of which the Court may

15  take judicial notice.

16       **<u>Statement of Rule 37-1 Compliance</u>**

17       The parties met and conferred regarding this motion on September 10,

18  2007 and times thereafter.

19

20  DATED:  December 13, 2007    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

21

22                          By

23                            James J. Webster

24                            Attorneys for Mattel, Inc.

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Bryant's sworn deposition testimony in 2005 was that he personally used three computers since October 2000, i.e., the time periods directly relevant to this case. The drives would contain critical evidence of Bryant's activities during the ensuing period. For the past more than two years, Mattel has sought discovery on these drives, and the information they (should) contain. In response, Bryant and his now former counsel, Littler Mendelson, P.C. ("Littler"), have made conflicting representations.

Their initial position was that only <u>one</u> of the three drives could be located—the one for his October 2000 Desktop—and that their allegedly "tireless" search for the only drive they purportedly found yielded <u>no</u> relevant documents. In response, on January 4, 2007, Mattel moved to compel production of the drives. On January 25, 2007, the Court ordered Bryant to produce his hard drives. After delays in Bryant's production of compelled drives, Littler announced that that the Desktop drive could no longer be found. At the same time, Littler revealed that contrary to its prior representations to the Court, it <u>did</u> have possession of another drive (from a Bryant laptop)—which had been in Littler's possession <u>since 2004</u>—and which did contain Bratz related documents.

On April 10, 2007, Mattel moved to enforce the Court's Order, and require immediate production of the drives. In response, after yet more delays, Littler reversed course and revealed without explanation that it had regained possession of the Desktop drive. Mattel inspected two drives and found that a program called "Evidence Eliminator" had been installed apparently to destroy data. On September 6, 2007, Mattel served a <u>Rule</u> 30(b)(6) deposition subpoena on Littler seeking information regarding the handling of the drive.

By this motion, Mattel seeks an Order that it can now depose Littler regarding non-privileged, percipient issues, i.e., to determine when it obtained the

1  drives, how they were preserved, when the Desktop went missing, and if it has any

2  knowledge regarding the destruction of evidence, especially given Littler's

3  conflicting representations to the Court on these subjects. This information is critical

4  to Mattel's preparation for trial, including on the issue of spoliation.  It is also

5  information uniquely in the possession of Littler.

6          Mattel also seeks testimony regarding destructive testing on key Bratz

7  drawings that was conducted while Littler was counsel, without notice to the Court

8  or Mattel.  Judge Larson has already recognized that the handling of these critical

9  documents raises serious questions; only Littler can provide necessary answers on

10  aspects of those documents' handling.

11          Bryant's objections to the deposition are based solely upon an

12  inapplicable Eighth Circuit precedent—Shelton v. Amer. Motors Corp., 805 F.2d

13  1323 (8th Cir. 1986)—which speaks to the protection of opposing trial counsel's

14  litigation tactics and strategy.  But Littler is *former* trial counsel, and Mattel seeks

15  *facts* regarding the handling of evidence wholly unrelated to trial strategy.  In any

16  case, even were Shelton applicable, the deposition is proper because of the critical

17  evidence at issue, and the inability of Mattel to gather it from any other source.  For

18  all these reasons, the Court should compel Littler to appear for deposition.

19

20                          **Factual Background**

21

22          **At Deposition in November  2004, Bryant Identified Three**

23  **Relevant Computers He Used Since October 2000.**  At his deposition on

24  November 4, 2004, Bryant testified that he had used three different computers for

25  the period since 1998.  Two are relevant here.  One was a desktop computer he

26  purchased on October 21, 2000 (the "Desktop")—just one day after he resigned

27

28

07209/2325182.1

1  from Mattel;[1] Bryant testified that he used this computer from 2000 until

2  approximately November 2003 (i.e., five months before this lawsuit was filed), and

3  then gave it to his niece.[2]  The other was the laptop computer Bryant purchased in

4  November 2001 ("the Laptop").[3]

5  **Bryant and Littler Represent That The Desktop Was Examined**

6  **And Contained No Responsive Information.**  Bryant and Littler repeatedly

7  represented that they had possession of the Desktop computer; they also represented

8  that they searched it and found no responsive documents.  Littler confirmed this in a

9  November 1, 2004 letter to Mattel claiming that the Desktop "has been retrieved and

10  searched for responsive documents, and none have been located."[4]  Mattel wrote

11  back asking that the Desktop hard drive be preserved.[5]

12

13

---

14

15  [1]   Circuit City receipt dated October 21, 2000, attached to the Declaration of
    Michael T. Zeller, dated December 13, 2007 filed concurrently herewith ("Zeller

16  Dec."), Exh. 2; Deposition of Carter Bryant ("Bryant Deposition") at 246:3-5, Zeller
    Dec., Exh. 3.

17  [2]   Bryant Deposition at 245:8-17; 246:3-5; 248:5-9, Zeller Dec., Exh. 3.

18  Bryant's counsel elsewhere stated that Bryant had used the Desktop "from 2000 to
    2002" and thus confirmed as well that it pertained to a highly pertinent time period.

19  Joint Stipulation Re: Mattel's Motion to Compel Production of Documents, filed on

20  January 6, 2005 (excerpts) ("Joint Stipulation") at 62:8-10, Zeller Dec., Exh. 5.

    [3]   Bryant Deposition at 247:25-248:2, Zeller Dec., Exh. 3.

21  [4]   Letter dated November 1, 2004 from Keith Jacoby, counsel for Bryant, to John

22  Quinn and Michael Zeller, counsel for Mattel, at p. 2, Zeller Dec., Exh. 4
    ("Regarding [Mattel's] requests to inspect Mr. Bryant's home computer, I have made

23  further inquir[i]es on that subject to Mr. Bryant and my colleagues.  Mr. Bryant did

24  not own a home computer during his time at Mattel.  He later purchased a computer,
    which he used for a time, and then gave away to his niece.  That computer has been

25  retrieved and searched for responsive documents, and none have been located.  Mr.

26  Bryant declines to produce his hard drive for inspection for the reasons articulated in
    his response to Mattel's document request.").

27  [5]   Letter dated November 17, 2004 from Kirk Garey, counsel for Mattel, to Keith

28  A. Jacoby, Zeller Dec., Exh. 1.

1        In January 2005, Mattel filed a motion to compel seeking the

2   production of Bryant's hard drives, including the Desktop hard drive.[6]  Bryant

3   opposed the motion, representing to the Court that he had "tirelessly searched for

4   and inspected" the Desktop drive "for relevant information" and had made an

5   "extensive and diligent search" for responsive information.[7]  Littler's attorney

6   declarations averred that counsel had examined the Desktop—indeed, "extensively"

7   so—and that they spent "scores of attorney hours" searching for responsive

8   documents, and found no responsive documents.[8]

9        Due to an intervening discovery stay, Mattel's original motion to

10  compel was not ruled upon.  After the stay was lifted and the Discovery Master

11  appointed, Mattel renewed its motion to compel production of Bryant's hard drives

12  in early January 2007, again specifically seeking production of the Desktop hard

13  drive.[9]

14       Bryant represented (again) in his Opposition that he had conducted a

15  "diligent" search for the hard drives and stated that the *only* drive he could locate

16

17

---

18     [6]  Joint Stipulation at 3-4, 58-61, Zeller Dec., Exh. 5.

19     [7]  Joint Stipulation at 62:1-13, Zeller Dec., Exh. 5; [Redacted] Declaration of
    Keith A. Jacoby in Support of Defendant and Cross-Claimant Carter Bryant's

20  Portion of Joint Stipulation (excerpted and without exhibits) ("2005 Jacoby Dec.") at

21  ¶¶ 22, 23, attached as Exh. 6 to the Zeller Dec.  Bryant's opposition also made clear
    that the hard drive purportedly searched was from the Desktop. Id. at ¶ 23

22  (referencing the "hard drive from Bryant's home computer, which he gave to his

23  niece in 2002").

24     [8]  Joint Stipulation at 62:2-13, 18-20, Zeller Dec., Exh. 5; 2005 Jacoby Dec. at
    ¶¶ 23, 24, Zeller Dec., Exh. 6.

25     [9]  Zeller Dec. ¶ 8; see also Separate Statement of Mattel, Inc. in Support of

26  Motion to Compel Production of Documents by Carter Bryant, filed on January 4,
    2007 (excerpts) at 57-61, Zeller Dec., Exh. 7; Declaration of Michael T. Zeller in

27  Support of Mattel, Inc.'s Motion to Compel Production of Documents by Carter

28  Bryant (without exhibits) filed January 4, 2007 at ¶ 27, Zeller Dec., Exh. 8.

1  was from the Desktop.[10]  Littler represented (again) that they had searched the

2  Desktop hard drive, but did not find "any responsive documents or relevant

3  information" on it.[11]

4         **On January 25, 2007, the Court Orders Production of the Hard**

5  **Drive, But Bryant's Counsel Fails to Produce Them.**  The Discovery Master

6  granted Mattel's motion to compel.  Among other things, it was ordered that

7  "[p]ursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his

8  computers for forensic imaging" by no later than February 23, 2007 (the "Discovery

9  Order").[12]

10        Shortly before the February 23, 2007 deadline, Littler asked Mattel for

11  an extension of time to comply with the Discovery Order, claiming additional time

12  was required because (i) the quantity of responsive documents "may be significant"

13  and (ii) because Bryant would be traveling.[13]  Mattel agreed to extend Bryant's time

14  to produce the hard drives.[14]

15        Four days later, in a February 27, 2007 email, Littler asserted a new

16  reason for failing to produce the hard drives, i.e., that the hard drive contained some

17  unspecified "highly private material" and seeking "some sort of agreement" on that

18

19

20    [10]  Separate Statement of Defendant Carter Bryant in Opposition to Mattel's Motion to Compel, filed on January 11, 2007 ("Bryant's 2007 Separate Statement")

21  at 39, Zeller Dec., Exh. 9; Declaration of Keith A. Jacoby in Support of Carter

22  Bryant's Opposition to Mattel, Inc.'s Motion to Compel Production of Documents (excerpted and without exhibits) ("2007 Jacoby Dec.") at ¶ 31, Zeller Dec., Exh. 10.

23    [11]  2007 Jacoby Dec., ¶ 31, Zeller Dec., Exh. 10.

24    [12]  Order of the Discovery Master Hon. Edward Infante (Ret.) dated January 25, 2007 at 17, Zeller Dec., Exh. 11.

25    [13]  Stipulation and Order re: Request to Extend Deadline Within Which Carter

26  Bryant Must Comply with the Discovery master's January 25, 2007 Order Granting Mattel's Motion to Compel Production of Documents dated February 23, 2007,

27  Zeller Dec., Exh. 12.

28    [14]  Id.

1   issue.[15]  Yet again, Mattel's counsel agreed to extend the deadline for production so

2   the parties could further discuss this new privacy issue.  In return, Littler agreed to

3   provide a detailed log of the "highly private" files at issue by no later than the end of

4   the following week (by March 23, 2007).[16]  By March 26, 2007, Littler had still not

5   produced that log.[17]

6           **In April 2007, Littler Reveals It Has Possession of Additional Hard**

7   **Drives But No Longer Has the Desktop Drive.**  In view of Littler's failure to

8   comply with the January 25, 2007 Order, Mattel sought to meet and confer in

9   advance of a motion to enforce the Order.[18]  Littler then made two new claims:

10          First, although Littler had previously represented to the Court that it

11  *only* had the Desktop hard drive,[19] it now stated that forensic images of *two* Bryant

12  hard drives had been made in *July 2004*—after this suit was filed and long before

13  Littler's representations to the Court that *only* the Desktop drive had been located.[20]

14  Littler claimed that one of these forensic images made in July 2004 was the Laptop

15  drive that Littler had represented to the Court had not been located.[21]  It thus also

16  _____

17  [15]  E-mail dated February 27, 2007, from Douglas Wickham to John Quinn and

18  Michael Zeller, Zeller Dec., Exh. 13.

19  [16]  Letter dated March 2, 2007 from Douglas Wickham to Michael Zeller, Zeller Dec., Exh. 14; letter dated March 16, 2007 from Douglas Wickham to Michael

20  Zeller, Zeller Dec., Exh. 15;  letter dated March 27, 2007 from Douglas Wickham to Michael Zeller, Zeller Dec., Exh. 18.

21  [17]  Letter dated March 26, 2007 from Michael Zeller to Douglas Wickham, Zeller

22  Dec., Exh. 16.

    [18]  Id.

23  [19]  Bryant's 2007 Separate Statement at 39, Zeller Dec., Exh. 9; 2007 Jacoby

24  Dec. at ¶ 31, Zeller Dec., Exh. 10; Letter dated March 26, 2007 from Douglas

25  Wickham to Michael Zeller, Zeller Dec. Exh. 17; Letter dated March 27, 2007 from Douglas Wickham to Michael Zeller, Zeller Dec., Exh. 19.

26  [20]  Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Zeller

27  Dec., Exh. 21.

    [21]  Id.  More specifically, Bryant identified the two images that were made in

28  July 2004 as being of (1) a 20 GB Travelstar hard drive from a Compaq Presario

    (footnote continued)

1  came to light that Littler had withheld these additional drives since July 2004.[22]

2  Littler further informed Mattel that the imaged data were from the 2002 and 2003

3  time period, giving the impression that the computers from which the hard drives

4  were imaged were not in use before that time.[23]

5        Second, in response to Mattel's specific requests for an explanation

6  regarding the status of the Desktop hard drive, Littler stated that it no longer knew

7  the whereabouts of the Desktop.[24]  Littler stated that it was "not sure" about the

8  accuracy of its prior representations—i.e., that the Desktop drive had been retrieved

9  from Bryant's niece—and that it may have been "wrong."[25]

10  **On April 10, 2007 Mattel Moved to Enforce the Court's January**

11  **25, 2007 Order.**  Faced with these starkly conflicting representations, Mattel moved

12  to enforce the Court's January 25, 2007 Order and compel Bryant to produce the

13  compelled computer hard drives.[26]  The day before Bryant's Opposition was due,

14  Littler  wrote stating that it had discovered an image of the Desktop in its

---

16  laptop, and (2) a 20 GB Quantum Fireball LCT 15 hard drive.  Id., p. 1.  Also during

17  the meet and confer process, Bryant's counsel represented that Bryant was still in possession of the physical hard drive from the laptop but no longer had the Quantum

18  hard drive.  Id., p. 1.

19  [22]  Letter dated March 27, 2007 from Douglas Wickham to Michael Zeller, Zeller Dec. Exh. 19.  Bryant's counsel further disclosed that there were additional

20  "hard drive(s)" that had been "recently copied in Missouri," and that "[a]fter further examination, it appears that these drives also contain highly private, non-responsive

21  documents."  Id.  As noted above, in subsequent conversations, Bryant's counsel

22  stated that there were three images of these additional drives, for a total of at least five hard drive images.  Letter dated April 6, 2007 from Michael Zeller to Douglas

23  Wickham, Zeller Dec., Exh. 21.

24  [23]  Id.

     [24]  Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Zeller

25  Dec., Exh. 21.

26  [25]  Id.; Zeller Dec. ¶ 25.

     [26]  See Notice of Motion and Motion of Mattel, Inc. for an Order to Enforce

27  Court's January 25, 2007 Order Compelling Bryant to Produce Desktop Computer

28  Hard Drive, dated April 10, 2007, Zeller Dec., Exh. 23.

1 possession, and would now make it available to Mattel.[27]  Mattel imaged that drive,

2 and took its motion off calendar.[28]  Shortly after, Littler withdrew as counsel and

3 was replaced by Bryant's current counsel, Keker & Van Nest.[29]  Keker subsequently

4 produced the Laptop drive and the image.

5     Upon reviewing the drives, Mattel discovered that a software program

6 titled "Evidence Eliminator" had been installed and run on them.  Evidence

7 Eliminator purports to be a program designed to permanently destroy data to prevent

8 its use in legal proceedings:  "Evidence Eliminator ... the data destroyed is 'gone

9 forever' and it is impossible to create mirror images of defendants' hard drives ..."[30]

10 This meant that, although it is undisputed that Bryant used the Desktop from

11 October 21, 2000 to November 2003, data from 2000 – 2001 had been eliminated—

12 perhaps explaining why Littler had represented that (without explanation) only data

13 from 2002 to 2003 was present on the drive.

14 **<u>Destructive Testing on the Bratz Drawings</u>**

15     This was not the first instance in which Mattel was aware of damage

16 done to evidence in this case while in the possession of Littler.  Indeed, Mattel

17 uncovered evidence that Littler engaged in destructive testing of the original Bratz

18 drawings without notice to the Court or Mattel.[31]

19

20

21

---

22 [27]  Letter dated April 23, 2007, from Keith A. Jacoby to Michael Zeller. Zeller Dec., Exh. 24.

23 [28]  Mattel, Inc.'s Notice of Withdrawal Without Prejudice of Motion for an Order

24 to Enforce Court's January 25, 2007 Order Compelling Bryant to Produce Desktop Computer Hard Drive, Zeller Dec., Exh. 25.

25 [29]  Request for Approval of Substitution of Attorney, dated May 18, 2007, Zeller

26 Dec., Exh. 26.

27 [30]  Zeller Dec. ¶ 30, Exh. 27.

[31]  Court's Order Denying Appointment of Expert Witnesses ("Expert Witnesses

28 Order"), dated August 11, 2006, at 4:19-7:3, Zeller Dec., Exh. 31.

1    Littler agreed to produce all of Bryant's original Bratz drawings at his

2   deposition in November 2004.[32]  Despite these promises, Bryant brought only a few

3   of his original drawings to the deposition.[33]  Some of these drawings had holes in

4   them, indicating that samples had been extracted for ink and/or paper chemical

5   dating analysis.[34]  Bryant testified that his drawings did not have holes in them when

6   he turned them over to defendants' counsel and that he was unaware of the origin of

7   the holes.[35]  Appearances notwithstanding, defendants' counsel at first denied that

8   anyone engaged in destructive sampling or analysis of Bryant's original drawings.[36]

9   Only after Mattel filed a motion asking the Court to appoint an expert witness did

10   defendants finally reverse course and admit that destructive sampling had been

11   performed on these documents.[37]  In ruling on that motion, the Court recognized that

12   defendants' handling of these "critical documents" raises "serious questions . . .

13   [which cause] the Court much concern about whether the truth seeking functions of

14   the adversarial system have been fundamentally compromised in this case."[38]

## Mattel Serves Subpoenas on Littler Mendelson

16    Faced with Littler's contradictory statements about the hard drives, and

17   apparent spoliation of evidence with regard to the original Bratz drawings, Mattel

18   served a subpoena on Littler for documents,[39] and a second Rule 30(b)(6) subpoena

---

21   [32]  Zeller Dec., Exhs. 32 & 33.

22   [33]  Zeller Dec. ¶ 37.

23   [34]  Zeller Dec. ¶ 38; Bryant Deposition at 459:13-460:16, Zeller Dec., Exh. 3.

    [35]  Bryant Deposition at 460:2-16, Zeller Dec., Exh. 3.

24   [36]  Declaration of Keith Jacoby in support of Bryant's portion of Joint Stipulation

25   Re: Mattel, Inc.'s Motion to Compel Inspection of Original Documents and Tangible Things, filed February 18, 2005, ¶ 11, Zeller Dec., Exh. 34.

26   [37]  Declaration of Erich J. Speckin, dated July 21, 2006, ¶¶ 8, 13, Zeller Dec., Exh. 35.

27   [38]  Expert Witnesses Order at 11:10-13, Zeller Dec., Exh. 31.

28   [39]  Zeller Dec., Exh. 28.

1   to depose Littler.[40]  These subpoenas sought information regarding the hard drive,

2   and preservation and destruction of other evidence in Littler's possession, including

3   destructive testing done on the original Bratz drawings.[41]  Bryant objected, and the

4   parties engaged in a series of meet and confers on the topic.  Bryant took the

5   position that he had no objection to production of documents, but that Littler had no

6   responsive, non-privileged documents in its possession.[42]  Bryant refused to allow

7   the deposition, arguing that it was barred under Shelton v. Amer. Motors Corp., 805

8   F.2d 1323 (8th Cir. 1986).

9

10                                **Argument**

11   **I.   THE LITTLER DEPOSITION IS PROPER BECAUSE LITTLER HAS**

12        **NON-PRIVILEGED AND RELEVANT PERCIPIENT INFORMATION**

13        **REGARDING BRYANT'S COMPUTER DRIVES**

14            Bryant does not and cannot dispute that the information that would be

15   contained on Bryant's computer hard drives from 2000 onwards is probative of

16   Bryant's conduct during his transition from Mattel to MGA in 2000.  As set forth

17   above, serious concerns have arisen as to whether proper steps were taken to

18   preserve evidence, particularly in relation to the 2000 – 2001 period on the Desktop

19   containing the "Evidence Eliminator" program.  Data is missing and Mattel has no

20   explanation  as to why it is missing.  The handling of the computer hard drives is

21   therefore a proper subject of percipient witness testimony.  This will not require any

22   impermissible intrusion into work product or attorney-client communications.

23            The non privileged information Mattel seeks is as follows:

24

25

26   _____

27   [40]  Zeller Dec., Exh. 29.
     [41]  Id.

28   [42]  Zeller Dec., Exh. 30.

1    • When and how Littler or its agents collected Bryant's computer
2       hard drives.
3    • What was done with those drives once they were in Littler's
4       possession, including how those drives were stored, whether
5       evidence was preserved on backup images, and whether and
6       when such drives were reviewed.
7    • Communications with third parties regarding collection and
8       preservation of evidence that were the subject of representations
9       made by Littler.
10   • The facts regarding any other destruction of evidence, such as
11      destructive testing conducted on the original Bratz drawings.
12
13          Courts routinely find that such discovery targeted to issues of spoliation
14   and evidence collection and preservation are proper subjects of discovery.  See, e.g.,
15   Rambus, Inc. v. Infineon Technologies AG, 222 F.R.D. 280, 299 (E.D. Va. 2004)
16   (granting motion to compel documents regarding spoliation); In re Automotive
17   Refinishing Paint Antitrust Litigation, 2006 WL 1479819, *6 (E.D. Pa.) (permitting
18   discovery regarding existence of evidence; "Defendants just want to know whether
19   Plaintiffs possess any such documents at all.  They are merely seeking to uncover
20   the factual basis for Plaintiffs' claims—the central purpose of discovery.").
21          In such cases, courts do not shield a witness with unique percipient
22   evidence simply because that witness is an attorney who has acted as counsel.
23   Riddell Sports Inc. v. Brooks, 158 F.R.D. 555, 559 (S.D.N.Y. 1994) ("[T]the
24   collection of evidence, without any creative or analytic input by an attorney or his
25   agent, does not qualify as work product."); In re Grand Jury Subpoenas dated March
26   9, 2001, 179 F. Supp. 2d 270, 284 (S.D.N.Y. 2001) (same).
27          Mattel expects that Littler will complain that it is being forced to
28   expose its litigation strategy.  Although it is true that Littler has made conflicting

1   representations in the past two years regarding whether it had the Desktop, and

2   whether it contained relevant evidence, Littler's litigation strategy is not at issue.

3   Instead, Mattel seeks and is entitled to know how, whether and by whom evidence

4   has been handled or mishandled.  Littler played a key role in the handling of the

5   evidence which Mattel continues to seek.  There can be no dispute that Littler has

6   unique and percipient information regarding the preservation—or, apparently, the

7   destruction—of evidence concerning Bryant's activities at the very time during

8   which he transitioned from Mattel to MGA and that the District Court and the

9   Discovery Master have directly found to be relevant and indeed crucial.

10  **II.      THE SHELTON RULE DOES NOT APPLY IN THIS CASE**

11       **A.      Courts Have Often Rejected The Shelton Test As Inflexible**

12            Tellingly, as to the subpoena document requests on the same topics,

13  Bryant states that he has no objection to production.  Bryant's objects to the Littler

14  deposition based solely on the theory that Littler was at one time Bryant's intended

15  trial counsel.  In doing so, Bryant invokes out-of-circuit authority which is readily

16  distinguishable here.  Bryant relies upon Shelton v. Amer. Motors Corp., 805 F.2d

17  1323 (8th Cir. 1986) as the sole basis for refusing the deposition.  That case

18  established special rules in the Eighth Circuit designed to limit (but not bar)

19  depositions of opposing counsel.  The Shelton court stated that it wished to prevent

20  the practice of "simply depos[ing] opposing counsel in an attempt to identify the

21  information that opposing counsel has decided is relevant and important to his legal

22  theories and strategy." Id. at 1327.  It further noted a fear that opposing counsel

23  might use the practice to interfere with an attorney's preparation of the case or

24  otherwise harass.  Id.  The Shelton court therefore created a three-prong test before

25  allowing such a deposition:

26            We do not hold that opposing trial counsel is absolutely

27            immune from being deposed.  We recognize that

28            circumstances may arise in which the court should order

1     the taking of opposing counsel's deposition.  But those

2     circumstances should be limited to where the party

3     seeking to take the deposition has shown that (1) no other

4     means exist to obtain the information than to depose

5     opposing counsel; (2) the information sought is relevant

6     and nonprivileged; and (3) the information is crucial to the

7     preparation of the case.

8  Id.

9     As a preliminary matter, Shelton has never been adopted in the Ninth

10  Circuit.  Several courts, including the Second Circuit, have rejected its test as overly

11  harsh, and chosen instead to apply more flexible rules.  See, e.g., In re Subpoena

12  Issued to Dennis Friedman, 350 F.3d 65, 72 (2d Cir. 2003) (rejecting Shelton rule

13  and stating, "the standards set forth in Rule 26 require a flexible approach to lawyer

14  depositions whereby the judicial officer supervising discovery takes into

15  consideration all of the relevant facts and circumstances to determine whether the

16  proposed deposition would entail an inappropriate burden or hardship"); qad.inc v.

17  ALN Associates, Inc., 132 F.R.D. 492, 495 (N.D. Ill. 1990) ("[T]his Court

18  subscribes wholeheartedly to a procedure that rejects any prior restraint in favor of

19  permitting the deposition to go forward, with any individualized objections to be

20  dealt with during its regular course."); Cook, Inc. v. C. R. Bard, Inc., 2003 WL

21  23009047, *1 (S.D. Ind. 2003) ("[T]he Court finds that it was not error for the

22  Magistrate Judge to decline to follow Shelton and permit the deposition of Mr.

23  Godlewski to proceed.").  For the reasons set forth below, Mattel submits that the

24  Shelton rationale does not have application to the deposition at issue here, and

25  should not be embraced by the Court.

26

27

28

**B.    Shelton Does Not Apply to Bar the Deposition of Former Trial Counsel Such as Littler**

By its terms, Shelton is specifically limited to depositions of trial counsel and the harms that might arise therefrom.  The core purpose of the Shelton test is to protect a party from a trial counsel deposition that might disclose strategies and otherwise harass and disrupt trial counsel.  "The Shelton test was intended to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy."  Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 730 (8th Cir. 2002).  The Littler deposition poses no such danger here.  Apart from the fact that Mattel will not be questioning Littler on litigation strategy, Littler has withdrawn as Bryant's counsel, and been replaced by Keker & Van Nest.  Littler is no longer opposing counsel.  The Shelton test should not be applied here.  See, e.g., Calvin Klein Trademark Trust v. Wachner, 124 F. Supp. 2d 207, 211 (S.D.N.Y. 2000) (noting that counsel's role in litigation was "peripheral" and refusing to apply Shelton on that basis).  Indeed, courts considering the issue have routinely permitted prior—as opposed to current—trial counsel to be deposed based on this distinction.  See, e.g., Pamida, Inc., 281 F.3d at 730 (refusing to apply Shelton to bar deposition of counsel); Nakash v. U.S. Dept. of Justice, 128 F.R.D. 32, 34 (S.D.N.Y. 1989) ("[T]he major rationales in these cases—discouraging the depositions of opposing attorneys in a particular lawsuit to avoid unnecessary expense and interference with the attorney-client relationship—are not applicable here.").

For the same reasons, Littler is no longer preparing Bryant's case for trial.  Accordingly, the concern that counsel will be distracted or unable to "devote his or her time and efforts to preparing the client's case" if faced with a deposition simply does not apply.  Shelton, 805 F.2d at 1327.  Nor could this have a chilling effect on future communications with Littler (id.) or lead to the disqualification of

1    counsel who may be called as witnesses. <u>See</u> <u>Kaiser v. Mutual Life Ins. Co. of New</u>

2    <u>York</u>, 161 F.R.D. 378, 382 (S.D. Ind. 1994).

3    **III.**    **EVEN IF ADOPTED HERE, SHELTON DOES NOT IMMUNIZE**

4          **COUNSEL FROM BEING DEPOSED**

5       Even were <u>Shelton</u> to be followed and applied, Mattel should still be

6    permitted to proceed with the deposition. <u>Shelton</u> permits such discovery where (1)

7    the information sought is relevant and non-privileged; (2) the information is crucial

8    to the preparation of the case; and (3) no other means exists to obtain the

9    information at issue than to conduct the deposition.

10      **A.**    **The Information Mattel Seeks is Relevant and Non-Privileged**

11       Mattel is seeking relevant and non-privileged information. The

12    destruction of evidence, including from Bryant's hard drives, is referenced in

13    Mattel's answer and counterclaims in this case.[43] In response, defendants

14    themselves have placed preservation of evidence and spoliation directly at issue in

15    this case also.[44] There can be no dispute that inquiry on such topics seeks relevant

16

17

18

19    [43]   Mattel, Inc.'s Second Amended Answer In Case No. 05-2727, dated July 12, 2007 (without exhibits), at ¶ 93(c), Zeller Dec., Exh. 36 ("Counter-defendants

20    MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of

21    the remaining members of the MGA Criminal Enterprise, did corruptly alter, destroy, mutilate, or conceal more than one record, document, or other object, or

22    attempted to do so, with the intent to impair the object's integrity or availability for

23    use in an official proceeding, including this action, including without limitation by . . . destroying electronic and other evidence, including by **destroying evidence**

24    **previously contained on Carter Bryant's and Isaac Larian's computer hard**

25    **drives.**") (emphasis added); <u>see also</u> <u>id.</u> at ¶ 53 (alleging that Machado destroyed his

26    Mattel hard drive to conceal evidence).
   [44]   <u>See</u> Order Denying Motion For Terminating Sanctions; Order Denying

27    Request For Interlocutory Appeal; Order Requiring Filing Of Affidavits Re

28    Evidence Preservation, dated August 29, 2007, Zeller Dec., Exh. 37.

1  information calculated to lead to the discovery of admissible evidence. See <u>Fed. R.</u>

2  <u>Civ. Proc.</u> 26(b)(1).

3        Mattel therefore satisfies the first prong of the <u>Shelton</u> test.

4  **B.**    **The Information Mattel Seeks is Crucial**

5        Evidence demonstrating that Bryant worked on Bratz while employed

6  by Mattel—or responding to defendants' arguments that he did not—is pivotal in

7  this action.  The Littler deposition will target the extent to which and manner in

8  which data from Bryant's own computers—including during critical times when

9  Bryant began working with MGA—was preserved.  It also will seek information

10  uniquely in Littler's possession about the handling of Bratz drawings that the

11  District Court has found are key evidence when they were in Littler's possession.

12  **C.**    **There are No Other Means of Acquiring the Relevant Information**

13        There are no other means of acquiring the information at issue here.

14  Only Littler knows what it has done with respect to the hard drives and the drawings

15  while they were in its possession.  No other witness would have the same

16  information.  For example, by its own account, Littler has communicated with third

17  parties including Bryant's niece, in taking possession of the Desktop drive.  Littler

18  arranged for and oversaw the imaging of the drives.

19        Mattel has exhausted other means of obtaining the evidence from

20  Littler.  Mattel has already attempted to investigate through the use of a document

21  subpoena on Littler, but no responsive documents have been produced.  In any

22  event, by its nature, investigation of spoliation requires the ability to ask follow-up

23  questions to ferret out the truth, something that interrogatories or other written

24  discovery cannot offer.

25        Thus, even if the <u>Shelton</u> test were applied, Mattel has satisfied each

26  prong of that test.

27

28

1

## Conclusion

2          For the foregoing reasons, Mattel respectfully requests that its motion

3   be granted in its entirety.

4

5   DATED:  December 13, 2007          QUINN EMANUEL URQUHART OLIVER &
                                                          HEDGES, LLP
6

7                                                  By

8                                                        James J. Webster
                                                          Attorneys for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### PROOF OF SERVICE

2          I am employed in the County of Los Angeles, State of California.  I am over the age of
eighteen years and not a party to the within action; my business address is Now Legal Service,
3  1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4  On December 13, 2007, I served true copies of the following document(s) described as **MATTEL,
INC.'S NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION OF LITTLER
5  MENDELSON, P.C. PURSUANT TO SUBPOENA; MEMORANDUM OF POINTS AND
AUTHORITIES** on the parties in this action as follows:

6

7          John W. Keker
           Michael H. Page
           Christa M. Anderson
8          **Keker & Van Nest, LLP**
           710 Sansome Street
9          San Francisco, CA 94111
           *Attorneys for CARTER BRYANT*
10

11

12  **BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s)
being served.

13

           I declare that I am employed in the office of a member of the bar of this Court at whose
14  direction the service was made.

15          Executed on December 13, 2007, at Los Angeles, California.

16

17          _____
           NOW LEGAL -- Dave Quintana
18

19

20

21

22

23

24

25

26

27

28

07209/2169461.1

1

## PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California.  I am over the age of
3  eighteen years and not a party to the within action; my business address is 865 South Figueroa
   Street, 10th Floor, Los Angeles, California 90017-2543.

4  On December 13, 2007, I served true copies of the following document(s) described as **MATTEL,
   INC.'S NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION OF LITTLER
5  MENDELSON, P.C. PURSUANT TO SUBPOENA; MEMORANDUM OF POINTS AND
   AUTHORITIES** on the parties in this action as follows:

6

7      Thomas J. Nolan                           Mark E. Overland, Esq.
       **Skadden, Arps, Slate, Meagher & Flom**  David E. Scheper, Esq.
8      **LLP**                                   Alexander H. Cote, Esq.
       300 South Grand Ave., Ste. 3400           **Overland Borenstein Scheper & Kim,**
9      Los Angeles, California 90071             **LLP**
       *Attorneys for MGA ENTERTAINMENT,*        300 South Grand Avenue
10     *INC.*                                    Suite 2750
                                                 Los Angeles, CA 90071-3144
11                                               *Attorneys for Carlos Gustavo Machado*

12

13 **BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I
   deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with
14 postage thereon fully prepaid.

15     I declare that I am employed in the office of a member of the bar of this Court at whose
16 direction the service was made.

17     Executed on December 13, 2007, at Los Angeles, California.

18

19                                                    _____
                                                      Yolonda J. Dekle
20

21

22

23

24

25

26

27

28

07209/2081332.1

# EXHIBIT K



# EXHIBIT L

729

1          UNITED STATES DISTRICT COURT

           CENTRAL DISTRICT OF CALIFORNIA

2                EASTERN DIVISION

3

4    CARTER BRYANT, an individual,

5          Plaintiff,

6      vs.                    No. C04-09049 SGL (RNBx)

                              Consolidated with

7    MATTEL INC., a           No. CV 04-09059

     Delaware Corporation,        CV 05-2727

8

           Defendant.

9

10   _____

     AND CONSOLIDATED ACTIONS.

12   _____

13

14      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

15      VIDEOTAPED DEPOSITION OF CARTER BRYANT

16          San Francisco, California

17        Wednesday, January 23, 2008

18              Volume 4

19

20

21   Reported by:

     JODI L. BOSETTI

22   CSR No. 11316, RPR

23   JOB No. 81227

24

25

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

739

1    advertisement or something that kind of explained what        12:10

2    it did.                                                       12:10

3         Q    Is that how you learned about the existence         12:10

4    of Evidence Eliminator?                                       12:10

5         A    To the best of my recollection, yes.                12:10

6         Q    You read an advertisement on the Internet?          12:10

7         A    Something to that extent, yes.                      12:10

8         Q    Did you acquire one or more copies of the           12:10

9    Evidence Eliminator software?                                 12:11

10        A    Yes.                                                 12:11

11        Q    Was there a Readme file?                            12:11

12        A    A Readme file?                                      12:11

13        Q    Yes.                                                 12:11

14        A    I don't remember.                                   12:11

15        Q    Was there a file that you received that             12:11

16   described -- on the program that described what it was        12:11

17   and what it did?                                              12:11

18        A    I don't remember.                                   12:11

19        Q    Did you -- did you read on the Internet,            12:11

20   other than this advertisement that you saw, did you go        12:11

21   to a site and read some description of Evidence               12:11

22   Eliminator?                                                   12:11

23        A    No.                                                 12:11

24        Q    Did you ever install Evidence Eliminator on         12:11

25   any computer?                                                 12:11

740

| | | |
|---|---|---|
| 1 | A   Yes. | 12:11 |
| 2 | Q   What computer or computers did you install it | 12:11 |
| 3 | on? | 12:11 |
| 4 | A   I believe I installed it on one of my desktop | 12:11 |
| 5 | computers and also on one of my laptops. | 12:11 |
| 6 | Q   And it's your testimony that your reason for | 12:11 |
| 7 | doing this was just to make your computer run | 12:11 |
| 8 | smoother? | 12:12 |
| 9 | A   Yes. | 12:12 |
| 10 | Q   And what do you mean by that, making your | 12:12 |
| 11 | computer run smoother? | 12:12 |
| 12 | MR. WERDEGAR:   I'm going to object that that | 12:12 |
| 13 | misstates prior testimony. | 12:12 |
| 14 | BY MR. QUINN: | 12:12 |
| 15 | Q   Your turn. | 12:12 |
| 16 | A   My understanding was that it would just help | 12:12 |
| 17 | your Internet connections move faster, it would | 12:12 |
| 18 | restrict pop ups and unwanted ads.  Basically that's | 12:12 |
| 19 | kind of what my understanding was. | 12:12 |
| 20 | Q   And you learned that from reading the | 12:12 |
| 21 | advertisement? | 12:12 |
| 22 | A   Yes. | 12:12 |
| 23 | Q   Did it also come with some type of | 12:12 |
| 24 | instructions, either on the cover or anything, that | 12:12 |
| 25 | accompanied the software? | 12:12 |

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

741

| | | |
|---|---|---|
| 1 | MR. WERDEGAR:  Objection.  Assumes facts. | 12:12 |
| 2 | THE WITNESS:  I don't remember there being any | 12:12 |
| 3 | software.  I just remember downloading the program | 12:12 |
| 4 | from the Internet. | 12:12 |
| 5 | BY MR. QUINN: | 12:12 |
| 6 | Q   When was it that you installed this program | 12:12 |
| 7 | on those two computers? | 12:12 |
| 8 | MR. WERDEGAR:  Objection.  Compound. | 12:12 |
| 9 | THE WITNESS:  I believe it was in 2002. | 12:13 |
| 10 | BY MR. QUINN: | 12:13 |
| 11 | Q   Did you install it on both computers on | 12:13 |
| 12 | roughly the same time? | 12:13 |
| 13 | A   I don't remember. | 12:13 |
| 14 | Q   Well, do you recall there being some gap in | 12:13 |
| 15 | time between the time that you installed it on the | 12:13 |
| 16 | desktop and the time you installed it on the laptop? | 12:13 |
| 17 | A   I think there was a gap in time. | 12:13 |
| 18 | Q   Can you approximate how long that gap was? | 12:13 |
| 19 | A   No. | 12:13 |
| 20 | Q   Were you having problems with your computers | 12:13 |
| 21 | running smoothly at the time that you downloaded | 12:13 |
| 22 | Evidence Eliminator? | 12:13 |
| 23 | A   Yes. | 12:13 |
| 24 | Q   And can you describe what those problems | 12:13 |
| 25 | were? | 12:13 |

758

| | | |
|---|---|---|
| 1 | case? | 12:35 |
| 2 | MR. WERDEGAR:  If you -- if you observed people | 12:35 |
| 3 | coming out and doing that, you can answer that.  If | 12:35 |
| 4 | your understanding is solely based on conversations | 12:35 |
| 5 | you've had with Counsel, you should not disclose that | 12:35 |
| 6 | information. | 12:35 |
| 7 | THE WITNESS:  Can you give me the question one | 12:35 |
| 8 | more time. | 12:35 |
| 9 | BY MR. QUINN: | 12:35 |
| 10 | Q    Sure.  We talked about this process where | 12:35 |
| 11 | each side -- | 12:35 |
| 12 | A    Yeah. | 12:35 |
| 13 | Q    -- looks and sees what documents or data they | 12:35 |
| 14 | have that should be disclosed to the other side as | 12:35 |
| 15 | part of the discovery process. | 12:35 |
| 16 | A    Sure. | 12:35 |
| 17 | Q    And I was asking whether you're aware of | 12:35 |
| 18 | whether or not someone has done that with respect to | 12:35 |
| 19 | the hard drives of these computers that we've been | 12:35 |
| 20 | discussing? | 12:36 |
| 21 | A    Yes, I am aware of that. | 12:36 |
| 22 | Q    And who has done that? | 12:36 |
| 23 | A    Well, it's been done on three separate | 12:36 |
| 24 | occasions, as I told you earlier.  The first occasion | 12:36 |
| 25 | was in 2004, right after the lawsuit was filed.  I | 12:36 |

CARTER BRYANT, V. 4                                    01/23/08
HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

759

1    don't remember exactly who did the imaging.  The        12:36

2    second time it happened the lawyers from Littler came    12:36

3    out, and also I don't remember exactly who did the       12:36

4    imaging.  And the third time the attorneys from Keker    12:36

5    & Van Nest came out, and I believe it was Audrey         12:36

6    Hetlock, I think is her name, did the imaging.           12:36

7         Q    And what computers were imaged on this third   12:36

8    time?                                                    12:36

9         A    The three computers that I have right now.     12:36

10        Q    I see.  And were you personally involved in    12:36

11   going through the data that was on the hard drives of    12:36

12   any of those computers at any time and determining       12:37

13   what was there that should be disclosed as part of the   12:37

14   discovery process?                                       12:37

15        MR. WERDEGAR:  You can answer that yes or no.       12:37

16        THE WITNESS:  No.                                   12:37

17   BY MR. QUINN:                                            12:37

18        Q    Was that something that, in your               12:37

19   understanding, the attorneys did?                        12:37

20        A    Yes.                                           12:37

21        Q    So if I were to ask you specific questions     12:37

22   about what was found when those hard drives were         12:37

23   examined and what decisions were made about what         12:37

24   should be turned over and what shouldn't, would it be    12:37

25   true to say that that's not something that you would     12:37

CARTER BRYANT, V. 4
HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

01/23/08

890

1        I, the undersigned, a Certified Shorthand

2   Reporter of the State of California, do hereby certify:

3        That the foregoing proceedings were taken

4   before me at the time and place herein set forth; that

5   any witnesses in the foregoing proceedings, prior to

6   testifying, were duly sworn; that a record of the

7   proceedings was made by me using machine shorthand which

8   was thereafter transcribed under my direction; that the

9   foregoing is a true record of the testimony given.

10        Further, that if the foregoing pertains to

11   the original transcript of a deposition in a Federal

12   Case, before completion of the proceedings, review of

13   the transcript [ ] was [X] was not requested.

14        I further certify that I am neither

15   financially interested in the action nor a relative or

16   employee of any attorney or party to this action.

17        IN WITNESS WHEREOF, I have this date

18   subscribed my name.

19

20   DATED: _____

21

22

23        _____

          JODI L. BOSETTI

24        CSR NO. 11316, RPR

25