1 THOMAS J. NOLAN (Bar No. 66992)
  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 300 South Grand Avenue
  Los Angeles, California 90071-3144
3 Telephone:  (213) 687-5000
  Facsimile:   (213) 687-5600
4 E-mail:    tnolan@skadden.com

5 RAOUL D. KENNEDY (Bar No. 40892)
  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 4 Embarcadero Center, 38th Floor
  San Francisco, CA  94111-5974
7 Telephone:  (415) 984-6400
  Facsimile:   (415) 984-2698
8 Email:       rkennedy@skadden.com

9 Attorneys for MGA Entertainment, Inc.,
  MGA Entertainment (HK) Limited,
10 MGAE de Mexico S.R.L. de C.V.,
   and Isaac Larian

11                **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13                     **EASTERN DIVISION**

| | |
|---|---|
| 14  CARTER BRYANT, an individual | ) | CASE NO. CV 04-9049 SGL (RNBx) |
| 15                      Plaintiff, | ) | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| 16      v. | ) | |
| 17  MATTEL, INC., a Delaware corporation | ) | **DISCOVERY MATTER** |
| 18                     Defendant. | ) | **[To be heard by Discovery Master Hon. Edward A. Infante (Ret.)]** |
| 19  ─────────────────── | ) | **MGA ENTERTAINMENT, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF MATTEL, INC. FOR ORDER COMPELLING PRODUCTION OF WITHHELD MGA: (1) TRADEMARK SEARCH RESULTS; (2) DATE OF FIRST USE INFORMATION AND (3) FACTUAL DATA COMMUNICATED FOR THE PURPOSE OF FILING TRADEMARK OR OTHER INTELLECTUAL PROPERTY APPLICATIONS** |
| 20  Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | ) | |
| 26 | ) | Hearing Date:  TBD |
| 27 | ) | Time:            TBD |
|  |  | Place:           TBD |

28

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................. ii

MEMORANDUM OF POINTS AND AUTHORITIES.........................................1

I.   PRELIMINARY STATEMENT ..........................................................1

II.  STATEMENT OF FACTS ..................................................................2

III. ARGUMENT...................................................................................3

     A.   Confidential Communications Between MGA and Its Counsel Relating to Trademark and Other Intellectual Property Applications Are Privileged.......................................4

     B.   Communications Between MGA and Counsel Relating to Trademark Searches Are Protected by the Work Product Doctrine ...............................................................................6

     C.   The Documents Cited by Mattel Are Privileged.......................7

     D.   Communications Relating to Date of First Use Information for Trademarks Are Privileged...............................8

     E.   Mattel's Attempt to Compel Disclosure of Factual Data Should Be Rejected.......................................................9

IV.  CONCLUSION ...............................................................................10

MGA'S MEMO OF POINTS AND AUTHORITIES IN OPP. TO MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF TRADEMARK SEARCH RESULTS, ETC.

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

Advanced Cardiovascular Sys., Inc. v. C.R. Bard, Inc.,
  144 F.R.D. 372 (N.D. Cal. 1992) ............................................................... 1, 4, 5, 7

Am. Nat'l. Bank & Trust Co. of Chicago v. Equitable Life Assurance
  Soc'y of the U.S.,
  406 F.3d 867 (7th Cir. 2005) ................................................................. 10

Amerace Corp. v. USM Corp.,
  183 U.S.P.Q. 506 (T.T.A.B. 1974) ......................................................... 6

Conner Peripherals, Inc. v W. Digital Corp.,
  No. C 93-20117 RMW/EAI, 1993 U.S. Dist. LEXIS 20149
  (N.D. Cal. June 8, 1993)........................................................................ 4, 6, 9

CytoSport, Inc. v. Nature's Best, Inc.,
  No. CIV S-06-1799 DFL EFB, 2007 WL 1040993
  (E.D. Cal. Apr. 7, 2007) ........................................................................ 1, 6

Fisons Ltd. v. Capability Brown Ltd.,
  209 U.S.P.Q. 167 (T.T.A.B. 1980) ......................................................... 6

In Hyuk Suh v. Choon Sik Yang,
  No. C 96-20891 EAI, 1997 U.S. Dist. LEXIS 20077,
  (N.D. Cal. Nov. 18, 1997) ...................................................................... 6, 7

Knogo Corp. v. United States,
  213 U.S.P.Q. 936 (Ct. Cl. 1980)............................................................ 2, 5

Miles Labs., Inc. v. Instrumentation Lab., Inc.,
  185 U.S.P.Q. 432 (T.T.A.B. 1975) ......................................................... 6

Teknowledge Corp. v. Akamai Techs., Inc.,
  No. C 02-5741 SI (Related Case No. C 03-3321 SI), 2004 U.S. Dist.
  LEXIS 19109 (N.D. Cal. Aug. 10, 2004) ............................................... 4

-ii-

MGA'S MEMO OF POINTS AND AUTHORITIES IN OPP. TO MATTEL, INC.'S MOTION TO COMPEL
PRODUCTION OF TRADEMARK SEARCH RESULTS, ETC.

## MEMORANDUM OF POINTS AND AUTHORITIES

Counter-defendant MGA Entertainment, Inc. ("MGA") respectfully submits this opposition to Motion of Mattel, Inc. for Order Compelling Production of Withheld MGA:  (1) Trademark Search Results; (2) Date of First Use Information; and (3) Factual Data Communicated for the Purpose of Filing Trademark or Other Intellectual Property Applications, filed on January 23, 2008.

## I.    PRELIMINARY STATEMENT

Under the guise of a challenge to documents listed on MGA's privilege logs, Mattel seeks a blanket ruling that three categories of documents are not privileged:  (1) trademark search results; (2) documents concerning "dates of first use"; and (3) "factual data" communicated to counsel for purposes of trademark or other intellectual property applications.

Mattel's motion should be denied.  First, Mattel's request for an abstract ruling that certain categories of documents listed on MGA's privilege logs are not privileged is improper.  The determination of whether MGA's claim of privilege is warranted must be conducted on a document-by document basis and the applicability of the privilege in any particular instance must consider the pertinent facts.

Second, Mattel's blanket assertion that trademark search results, documents reflecting dates of first use, and factual information communicated to counsel for purposes of trademark or other intellectual property applications are not privileged is contrary to law.  The case law makes clear that to the extent such communications contain an attorney's opinion or impressions as to legal significance of such information, that information falls within the attorney-client privilege or work product doctrine.  CytoSport, Inc. v. Nature's Best, Inc., No. CIV S-06-1799 DFL EFB, 2007 WL 1040993, at *6-7 (E.D. Cal. Apr. 7, 2007).  Furthermore, the mere fact that a confidential communication between a client and his attorney contains facts that later become public does not preclude application of the attorney-client privilege.  See, e.g., Advanced Cardiovascular Sys., Inc. v. C.R. Bard, Inc., 144

1

1  F.R.D. 372, 378 (N.D. Cal. 1992); <u>Knogo Corp. v. United States</u>, 213 U.S.P.Q. 936
2  (Ct. Cl. 1980).

3        Third, the documents cited by Mattel as examples of documents which
4  MGA has improperly withheld actually confirm the appropriateness of MGA's
5  privilege claims.  All the documents in question reflect confidential communications
6  between MGA and its counsel for the purpose of securing legal advice with respect
7  to trademark and other intellectual property matters.  As such, the documents have
8  been properly withheld from production on the grounds of privilege.

9  **II.   <u>STATEMENT OF FACTS</u>[1]**

10        On December 7, 2007 Mattel asked to meet and confer regarding
11  MGA's August 14 and September 5, 2007 privilege logs.  (Proctor Declaration in
12  Support of Mattel's Motion to Compel Production of Previously Withheld
13  Documents Only Portions of Which Are Allegedly Privileged ("Proctor Decl.") ¶11,
14  Ex. 1.)  In its meet and confer letter Mattel expressed the view that documents listed
15  on those logs appeared to consist of the provision of information by MGA to its
16  attorneys for the purpose of trademark or other intellectual property filings are not
17  privileged and should be produced.  (<u>See id.</u>)  In subsequent meet and confer
18  meetings regarding those logs Mattel suggested that the parties should attempt to
19  develop "guidelines" for producing any documents which fell within these categories.
20  (Declaration of José R. Allen in Support of MGA's Memoranda of Points and
21  Authorities in Opposition to Mattel's Motions to Compel (1) Previously Withheld
22  Documents (2) Documents Protected by the Common Interest Privilege and (3)
23  Documents Containing Trademark and Other "Factual" Data ("Allen Decl.") ¶ 19.)

24

---

25  [1]      The facts pertaining to the parties' meet and confer efforts with respect to
   MGA's privilege logs are set forth in MGA's Memorandum of Points and Authorities
26  in Opposition to Mattel, Inc.'s Motion To Compel Production of Previously Withheld
   Documents Only Portions of Which Are Allegedly Privileged, which has been filed
27  herewith.  MGA incorporates that background discussion and will set forth here only
   those facts that pertain to the parties' meet and confer efforts with regard to the
28  trademark search results and other issues raised in Mattel's motion.

1  In a letter dated January 7, 2008, MGA informed Mattel that it disagreed with

2  Mattel's view that such information was presumptively not privileged.  MGA also

3  stated that because of the necessity to make privilege determinations on a document-

4  by-document basis, MGA did not believe it would be productive to attempt to

5  develop guidelines for determining the categories of documents that would be listed

6  on MGA's supplemental privilege logs.  (Proctor Decl. ¶ 17, Ex. 7.)

7         On January 18, 2007, MGA produced redaction logs and documents in

8  redacted form.  (Allen Decl. ¶ 11, Ex. 8.)  Among the documents MGA produced in

9  redacted form were trademark search results attached to or contained within

10 privileged communications between attorney and client, with the privileged

11 communications alone redacted.  (Allen Decl. ¶11, Ex. 8.)  Therefore, Mattel's

12 assertion that it has not received any of MGA's documents in redacted form from the

13 November logs is untrue.

14        With regard to the August and September logs, on December 24, 2007

15 MGA informed Mattel that where appropriate, it would produce documents from

16 those logs in redacted form.  (Proctor Decl. ¶ 14, Ex. 4.)  MGA anticipates that the

17 revised August and September logs and any redacted documents related thereto will

18 be produced on a rolling basis beginning at the end of February 2008.

19 **III.   ARGUMENT**

20        Mattel argues that a client's request for a trademark search and other

21 information provided to counsel in connection with trademark and other intellectual

22 property applications are not privileged (Motion at 7:22-25).  This argument is

23 contradicted by a considerable body of case law and ignores the fundamental

24 elements of the attorney-client privilege and the attorney work product doctrine.

25 Therefore, Mattel's motion should be denied.

26

27

28

A.   **Confidential Communications Between MGA and Its Counsel Relating to Trademark and Other Intellectual Property Applications Are Privileged.**

As the Discovery Master has noted, when assessing claims of privilege it is important to go "back to basics" with regard to the fundamental elements of the privilege.  (Allen Decl. ¶ 20, Ex. 16 (Tr. of January 3, 2008 Hearing at 50:19-20, 52:24-53:9.))  The elements of the privilege were succinctly set forth in <u>Conner Peripherals, Inc. v Western Digital Corp.</u>, No. C 93-20117 RMW/EAI, 1993 U.S. Dist. LEXIS 20149, at *5 (N.D. Cal. June 8, 1993) as follows:

> (1) the asserted holder of the privilege is . . . a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding . . . .

As discussed in the declaration of Samir Khare, filed herewith, because of the highly competitive nature of the toy business, communications between MGA and its counsel are highly confidential because of the need to prevent competitors from learning about a trademark that MGA may be considering using for a new product.  (Khare Decl. ¶ 10-12.)  In addition, MGA's counsel provides legal advice on a broad range of issues relating to the results of trademark searches including actions that MGA should undertake to secure the trademark, potential legal obstacles to the use of a particular mark, and challenges that may be made to a mark.  (Khare Decl. ¶ 12.)  Such communications are presumptively protected by the attorney-client privilege.  <u>Conner Peripherals</u>, 1993 U.S. Dist. LEXIS 20149, at *7-8 (citation omitted); <u>Teknowledge Corp. v. Akamai Techs., Inc.</u>, No. C 02-5741 SI (Related Case No. C 03-3321 SI), 2004 U.S. Dist. LEXIS 19109, at *6 (N.D. Cal. Aug. 10, 2004) ("[T]echnical information communicated to a patent attorney does not warrant different treatment than any other information communicated to an attorney in the process of obtaining legal services.") (citation omitted); <u>Advanced Cardiovascular</u>

4

1   Sys., Inc. v. C.R. Bard, Inc., 144 F.R.D. 372, 378 (N.D. Cal. 1992) ("[W]e do not

2   believe that patent counsel usually serve primarily as conduits, even of technical

3   information . . . . [P]atent lawyers often engage in quite substantial private dialogue

4   as part of the process of shaping and focusing a patent application, and . . . it is

5   reasonable for them to expect that dialogue to remain confidential."); Knogo, 213

6   U.S.P.Q. 941 ("The signed, sworn, and filed application might be considered a

7   communication for relay and not for the attorney's ears alone, but the same cannot be

8   said about the technical communications which preceded the signed, sworn, and filed

9   application.").

10         To overcome the presumption of privilege, the party requesting the

11   documents must make a "very compelling showing" that it was intended that the

12   documents would "be disclosed, without editing, to the PTO." Advanced

13   Cardiovascular, 144 F.R.D. at 378.  Mattel has not and cannot make the "very

14   compelling" showing required to overcome that presumption.  As Mr. Khare makes

15   clear in his declaration, there is considerable give and take between MGA and its

16   counsel before MGA ultimately decides to proceed with trademark and other

17   intellectual property applications and the company's counsel does not act as a "mere

18   conduit" for information provided by MGA.  (Khare Decl. ¶ 12.)

19         Furthermore, the fact that confidential communications between MGA

20   and its attorneys contain facts that later may be publicly disclosed does not destroy

21   the attorney client privilege.  See, e.g., Knogo, 213 U.S.P.Q. 941 (holding that the

22   situation where an inventor conveys factual information to his attorney is like "a

23   client giv[ing] general information to his lawyer so that the lawyer may prepare a

24   complaint in any ordinary civil action. *The fact that some of the information is thus*

25   *publicly disclosed does not waive the privilege."* (emphasis added)).  As Magistrate-

26   Judge Wayne Brazil explained in Advanced Cardiovascular, 144 F.R.D. at 378:

27         It is simply a non-sequitur to suggest that because the
         inventor knows that at some juncture he will be required to
28         disclose "material" *information* to the PTO he cannot

                                    5

1  expect his earlier private *conversations* with his counsel,
2  conversations whose purpose is to determine which information is material, to remain private.  There simply is no equation between disclosing material information and
3  disclosing conversations.

4  MGA's confidential communications with its attorneys regarding trademark searches

5  are analogous to a plaintiff telling his attorney facts that will from the basis of and be

6  alleged in a complaint.  It cannot be seriously argued that because the plaintiff was

7  aware that the facts he conveyed to his attorney later would be publicly disclosed in

8  the complaint, his communications of those facts to his attorney are not privileged.

9  MGA's confidential communications with its attorneys are no less deserving of

10  protection.[2]

11         **B.**   **Communications Between MGA and Counsel Relating to Trademark Searches Are Protected by the Work Product Doctrine**

12

13         MGA's communications with counsel relating to trademark search

14  results also are protected from disclosure under the work product doctrine because

15  they are draft documents that were prepared as part of the trademark registration or

16  patent application process.  See In Hyuk Suh v. Choon Sik Yang, 1997 U.S. Dist.

17  LEXIS 20077, at *16 (N.D. Cal. Nov. 18, 1997) ("[W]ork product immunity from

18  disclosure 'has been held applicable [to] preliminary drafts of legal documents,'

19  which would include draft trademark applications.") (citing Conner Peripherals,

20  _____
[2]    The cases cited by Mattel in its brief do not compel a different result.  In Miles
21  Laboratories, Inc. v. Instrumentation Laboratory, Inc., 185 U.S.P.Q. 432, 434 (T.T.A.B. 1975) the court went on to say after the passage quoted by Mattel that
22  "any comments or opinions provided by [the party's] attorney in relation [to the search reports] are privileged and need not be supplied."  The same was true in all
23  other cases cited by Mattel for this proposition.  See Fisons Ltd. v. Capability Brown Ltd., 209 U.S.P.Q. 167, 171 (T.T.A.B. 1980) (any opinion relevant to trademark
24  report is privileged); Amerace Corp. v. USM Corp., 183 U.S.P.Q. 506, 507 (T.T.A.B. 1974) (same and any documents related to communications between an attorney and
25  his client regarding the adoption of a trademark, infringement of a trademark is also privileged).  None of these cases hold that the results of the report when
26  communicated from attorney to client in the course of providing legal advice would be "per se" not within the privilege.  See also CytoSport, Inc. v. Nature's Best, Inc.,
27  2007 WL 1040993, at *6-7 ("To the extent that any of trademark [search] reports contain an attorney's opinion or impressions as to the legal significance of the [ ]
28  report," that information falls within the attorney-client privilege or work product doctrine.).

MGA'S MEMO OF POINTS AND AUTHORITIES IN OPP. TO MATTEL, INC.'S MOTION TO COMPEL
PRODUCTION OF TRADEMARK SEARCH RESULTS, ETC.

1   1993 U.S. Dist. LEXIS 20149, at *12).  Trademark registrations or applications can

2   result in litigation where the use of a mark is challenged by the holder of the same or

3   similar mark.  See In Hyuk Suh, No. C 96-20891 EAI, 1997 U.S. Dist. LEXIS 20077,

4   at *16.  See also Advanced Cardiovascular, 144 F.R.D. at 376 (discussing potentially

5   adversarial nature of patent application process).  The steps taken by counsel in

6   anticipation of potential litigation over the use of mark are therefore protected by the

7   attorney work product doctrine.

8           C.     **The Documents Cited by Mattel Are Privileged**

9           Mattel speculates that MGA has withheld from production "a number

10   documents that pertain to trademark searches," but complains that it cannot tell

11   precisely how many documents are being withheld.  (Motion at 9:6-12.)  The

12   documents Mattel cites in support of this charge actually confirm MGA's privilege

13   claim for such documents.

14           All of the documents cited on page 11 of Mattel's brief reflect

15   confidential communications between MGA and counsel conveying legal advice

16   regarding trademark registrations or applications.  For example, entry numbers 436

17   and 982 on the August log are e-mails between MGA employees discussing legal

18   advice received from counsel on trademark searches already performed.  There are

19   no "trademark search reports" attached to the documents as Mattel claims.  Further,

20   entry number 347 on the August log and entry numbers 727 and 2762 are e-mails

21   between MGA and its foreign trademark attorneys discussing legal advice regarding

22   trademarks.  Again, there are no "trademark search reports" attached to these

23   documents.[3]  Mattel also speculates that the redacted portions of entry numbers 1-2,

24   28-32, 50 and 53 of the Redaction log are "improperly redacted" and may contain

25   trademark search results that "do not appear to be intertwined with attorney advice

26   regarding the results."  (Motion at 10:4-7.)

27   _____

28   [3]    MGA will produce entry number 1957 on the August log in redacted form, although it too does not contain any "trademark search reports."

1    Two points are noteworthy about these documents.  First, the fact that

2    MGA has produced these documents in redacted form seriously contradicts Mattel's

3    assertion that MGA has indiscriminately withheld all documents relating to

4    trademark searches.  MGA plainly has produced documents relating to trademark

5    results where doing so does not disclose privileged information.  Second, it is evident

6    from a review of the unredacted portions of these documents that they are

7    communications between MGA and its counsel with regard to trademark matters.

8    Mattel's mere speculation that only trademark search results are discussed in the

9    redacted portions of these documents is insufficient to support Mattel's motion to

10   compel.

11   **D.    Communications Relating to Date of First Use Information for Trademarks Are Privileged**

12

13   Mattel makes the sweeping assertion that documents containing dates of

14   first use cannot be privileged and must be produced.  (Motion at 12:16-13:20.)

15   Citing the Discovery Master's Order of December 17, 2007, Mattel theorizes that

16   because the date of first use must be disclosed to the Patent and Trademark Office, it

17   follows that all documents containing such information, such as attorney docket

18   sheets regarding trademarks, draft trademark applications, and draft statements of

19   use, cannot be privileged.  (Motion at 14:13-16:7.)

20   We will not presume to explain to the Discovery Master the meaning of

21   his own rulings.  It suffices to say that the December 17, 2007 Order focused on the

22   documents at issue in that matter and did not set forth any categorical ruling with

23   regard to the privileged status of communications relating to trademark matters.

24   Indeed, in a subsequent hearing on January 3, 2008, the Discovery Master explained

25   that privilege questions ha dot be resolved on the basis of the facts presented.  (Allen

26   Decl. ¶ 20, Ex. 16 at 53:17-25, 54:1-10.)

27   Furthermore, as discussed above (5:19 – 6:10), the fact that confidential

28   communications with counsel include information that later may be publicly

8

disclosed does not preclude application of the attorney-client privilege.  The key consideration is whether the communication in question was a confidential communication with counsel for the purpose of rendering legal advice.  <u>Conner Peripherals</u>, 1993 U.S. Dist. LEXIS 20149, at *5.  Mr. Khare's declaration explains that MGA's communications with its counsel concerning trademark registrations and applications are treated confidentially and that draft documents related to such communications are also treated confidentially until the final decision is reached to make a filing.  (Khare Decl. ¶¶ 11-12.)  Mr. Khare's declaration also establishes MGA seeks legal advice from counsel as to the content and adequacy of its trademark registrations and applications.  (Khare Decl. ¶ 12.)  Therefore, information contained in such communications, such as dates of first use, are privileged.

The documents cited on page 15 of Mattel's brief once again support MGA's privilege claims.  Entry numbers 472, 473, and 521 on the September log are communications of legal advice from MGA's foreign trademark counsel.[4]  Entry numbers 489, 491, 492, and 493 on the September log are communications between MGA employees discussing legal advice received from MGA's foreign trademark counsel.  Entry numbers 1520, and 1609 on the September log and entry numbers 18, 19, and 22 are draft documents prepared by MGA's counsel related to trademark applications and statements of use.  Entry number 35 is a request for information from MGA's trademark counsel to MGA to assist counsel in preparing a trademark application.  These documents are clearly privileged.  Therefore, Mattel's assertion that these documents must be produced is without merit.

### E.    <u>Mattel's Attempt to Compel Disclosure of Factual Data Should Be Rejected</u>

Mattel next argues that factual data communicated to counsel for the purpose of trademark or other intellectual property applications is not privileged.

---

[4]    An attachment to entry number 473 on the August log will be produced. MGA will also produce entry numbers 705 and 1022 on the September log.

1 (Motion at 17-19.)  This argument is essentially a variant of Mattel's arguments with

2 regard to trademark searches and date of first use.  The argument also fails for the

3 same reasons discussed above.

4         In addition, Mattel has not identified a single document on MGA's

5 privilege logs that it contends contains factual data that MGA has improperly

6 withheld.  Instead, Mattel merely speculates that such documents have been included

7 on MGA's privilege logs and that they have been improperly withheld from

8 production.  Because Mattel's claims have no factual basis, its generic and

9 speculative assault of MGA's privilege logs should be rejected.  See Am. Nat'l. Bank

10 & Trust Co. of Chicago v. Equitable Life Assurance Soc'y of the U.S., 406 F.3d 867,

11 879-80 (7th Cir. 2005) (improper for court to base ruling on privileged status of

12 documents on only a sample of those documents selected by opposing party).

13 **IV.**    **<u>CONCLUSION</u>**

14         MGA's confidential communications with counsel relating to trademark

15 and other intellectual property registrations and applications are privileged.

16 Therefore, Mattel's attempt to compel their disclosure should be denied.

17 DATED:  February 7, 2008            Respectfully submitted,

18                                 SKADDEN, ARPS, SLATE, MEAGHER &

19                                 FLOM LLP

20                              /s/ Raoul D. Kennedy

21                               Raoul D. Kennedy

22                   Attorneys for Counter-Defendants, MGA
ENTERTAINMENT, INC., ISAAC LARIAN,
MGA ENTERTAINMENT (HK) LTD., and

23                   MGAE de MEXICO S.R.L. de C.V.

24

25

26

27

28

MGA'S MEMO OF POINTS AND AUTHORITIES IN OPP. TO MATTEL, INC.'S MOTION TO COMPEL
PRODUCTION OF TRADEMARK SEARCH RESULTS, ETC.