QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>　　　　　Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>MATTEL, INC.'S MEMORANDUM REGARDING THE INVESTIGATION OF ANA CABRERA AND BEATRIZ MORALES<br><br>Date:　February 11, 2008<br>Time:　10:00 a.m.<br>Place:　Courtroom 1<br><br>**Phase 1**<br>Discovery Cut-off:　January 28, 2008<br>Pre-trial Conference:　April 21, 2008<br>Trial Date:　May 27, 2008 |

**Preliminary Statement**

Mattel recently learned that three of its employees—Ana Cabrera, Beatriz Morales and Maria Salazar—secretly worked on dozens of Bratz doll products for years while employed by Mattel. Even though that information was responsive to Mattel discovery requests that were the subject of Discovery Master Orders, MGA and Bryant failed to disclose it. Defendants disclosed only Ms. Salazar as having worked on Bratz at all and, as to her, MGA falsely represented in interrogatory responses that she had worked on Bratz only after leaving Mattel.

There is no plausible dispute that this misconduct was deliberate. As they have admitted, Ms. Cabrera and Ms. Morales were paid for their secret work under false names and false social security numbers in order to conceal their wrongdoing. Veronica Marlow, an MGA agent who MGA and Bryant have paid millions of dollars to, executed this scheme by arranging for the use of false tax records, among other things.

In opposing Mattel's *ex parte* last week regarding the number of depositions allowed under the Court's January 7, 2008 Order, MGA criticized Mattel's investigation. MGA's assertions were, and are, irrelevant to the issue that was before the Court: whether Mattel had exceeded its 24-deposition allotment.

At Monday's hearing, after MGA's counsel's highly distorted portrayal of the events, the Court invited Mattel to respond. Mattel submits this memorandum to do so. Mattel's employment counsel, Elena Baca of Paul Hastings Janofsky & Walker LLP, also will be available at the hearing on Monday to address any remaining questions the Court may have concerning the investigation.

**Response**

As explained in Mattel's *ex parte* application, Veronica Marlow testified at her December 28, 2007 deposition that three Mattel employees—including a long-

time employee whom Mattel had trusted and promoted to a supervisory position—had secretly been working on Bratz for *years*.[1] MGA's agent, Veronica Marlow, made secret payments to them and assisted the employees' use of false social security numbers to conceal the payments.[2] Ms. Cabrera and Ms. Morales, who were still working at Mattel, had continued to work on Bratz even after they had learned about the present litigation involving Carter Bryant's similarly secret work with MGA while he was likewise employed by Mattel.[3]

Mattel was closed during the holidays. After it reopened, two Mattel representatives, one from Human Resources and another from Security, interviewed Ms. Cabrera and Ms. Morales to hear their side of the story. Ms. Cabrera admitted to having worked on more than *70* Bratz doll products while a Mattel employee; Ms. Morales to working on *50*.[4] Both admitted knowing this was wrong.[5] Both admitted that they tried to hide their tracks by receiving cash payments under false names and false social security numbers.[6] Ms. Cabrera alone received in excess of $100,000.[7] Mattel had no choice but to terminate their employment.

Hoping to deflect attention from their long-standing failure to disclose these facts in violation of Court Orders compelling such discovery, defendants have

---

[1] Deposition Transcript of Veronica Marlow, dated December 28, 2007 ("Marlow Depo. Tr.") at 306:14-308:1, 363:15-365:17, attached as Exhibit 1 to the Declaration of Cyrus S. Naim, filed concurrently ("Naim Dec.").

[2] Transcript of the interview of Ana Cabrera, dated January 2, 2008 ("Cabrera Tr."), at 118:3-19:23, Naim Dec., Exh. 2; transcript of the interview of Beatriz Morales, dated January 14, 2008 ("Morales Tr."), at 115:2-20, Naim Dec., Exh. 3.

[3] Cabrera Tr. at 39:25-40:20, 46:3-22, Naim Dec., Exh. 2.

[4] Naim Dec., ¶¶ 5-6.

[5] Cabrera Tr. at 117:10-118:8, Naim Dec., Exh. 2; Morales Tr. at 24:14-25:14, 27:11-17, Naim Dec., Exh. 3.

[6] Cabrera Tr. at 46:3-22, 118:3-19:23, Naim Dec., Exh. 2; Morales Tr. at 24:14-25:14, 27:11-17, 115:2-20, Naim Dec., Exh. 3.

[7] Naim Dec., ¶ 7.

argued that the interviews were improper.[8]  First, they complain that Mattel conducted the interviews "without counsel present" and without advising the employees of "any rights they may have had to refuse to answer the company's questions." (Opp. at 11.)  Defendants cite no authority to support the idea that employees are entitled to counsel in this circumstance.  There is no such authority.  An employee is not entitled to "remain silent" simply because an issue arises that could result in their termination.  In the workplace, employees have no Fifth Amendment rights, and no right to counsel, absent government action.  E.g., TRW v. Superior Court, 25 Cal. App. 4th 1834, 1847, 31 Cal. Rptr. 2d 460 (1994) (rejecting application of Fifth Amendment and holding that employee did not have a right to counsel when employer requested interview regarding alleged security violations).

Second, and again without supporting legal authority, defendants object that Mattel conducted the interviews without an interpreter.  Both employees worked for many years at Mattel in El Segundo—in Ms. Cabrera's case for over a decade—without the assistance of an interpreter.  As the audiotapes of the interviews also show, Ms. Cabrera and Ms. Morales also were able to communicate clearly and calmly during the interviews.  Mattel has provided a copy of the audiotape to counsel.

Third, defendants complain that the interviews were recorded without the employees' consent.  This too is wrong.  Before the recording commenced, Mattel obtained the employees' consent.  Then, once the recording began, Mattel reiterated

---

[8] MGA's counsel represented to the Court at the hearing that Ms. Cabrera was supposedly fired "because she sewed an a concrete floor, not knowing what she was sewing until some point in time down the road." Transcript of the Hearing dated February 4, 2008, at 36:1-5, Naim Dec., Exh. 4. This smear is ironic. If Cabrera was forced to work on a concrete floor, she did so *for Marlow and MGA*, not Mattel. Meanwhile, Marlow was being paid millions of dollars by MGA.

that the discussion was being recorded.[9] The employees clearly knew they were being recorded and never objected. Recording such a conversation is clearly permissible so long as all parties are aware of it. E.g., Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th 95, 117-118 (Cal. 2006) ("A business that adequately advises all parties to a telephone call, at the outset of the conversation, of its intent to record the call would not violate the [applicable law].").

Defendants next accuse Mattel of using misleading "interrogation tricks" and of lying to Ms. Cabrera about Ms. Marlow's testimony on the issue of when Ms. Cabrera started working on Bratz. Not so. Marlow did in fact say that Cabrera began working on Bratz within days of Bryant's pitch to Isaac Larian, which was well before 2001.[10] Defendants also chastise Mattel for mentioning the Marlow deposition, claiming it was done to have Ms. Cabrera "change her story." There was nothing improper in refreshing her recollection or confronting her with Ms. Marlow's version of events. Initially, Ms. Cabrera claimed that she never knew she was working on Bratz and only admitted the truth—that she *did* know—when told about Marlow's testimony.[11]

Finally, MGA's counsel represented to the Court that Mattel had improperly opened sealed boxes containing materials that Ms. Cabrera had voluntarily provided to Mattel relating to her Bratz work. MGA's counsel incorrectly advised the Court that this was evidenced by a videotape Mattel had made of the boxes' contents. MGA has it backwards. When Ms. Cabrera provided the boxes to Mattel, they were

---

[9] Cabrera Tr. at 2:18-21, Naim Dec., Exh. 2; Morales Tr. at 2:9-10, Naim Dec., Exh. 3.

[10] Marlow stated that Ms. Cabrera worked for her before she received the sculpt marked Exhibit 1231. Marlow Depo. Tr. at 286:1-287:8, Naim Dec., Exh. 1. She had earlier testified that she had received that sculpt only a few days after the meeting between Carter Bryant and Isaac Larian. Marlow Depo. Tr. at 206:18-24, 209:9-21, 275:19-276:3, Naim Dec., Exh. 1.

[11] Cabrera Tr. at 41:18-44:22, Naim Dec., Exh. 2

not sealed.  Precisely to avoid the kinds of groundless charges now being leveled by MGA, Mattel videotaped the contents of the boxes.  Mattel then sealed the boxes—which is the state in which they have remained since.[12]

DATED:  February 8, 2008    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Plaintiff
   Mattel, Inc.

---

[12] Although not mentioned by MGA's counsel, even before Monday's hearing, Mattel had invited counsel to discuss the handling and preservation of this evidence.  Naim Dec., Exh. 5.  Mattel's invitation went ignored.  Naim Dec., Exh. 6.  At Monday's hearing, the Court directed all involved to meet and confer on that subject.  Mattel then sent another letter requesting a meet and confer.  Naim Dec., Exh. 7.  Earlier today, Mattel heard from Cabrera's counsel in contemplation of a meet and confer, but still has received no response from defendants' counsel on the subject.  Naim Dec., ¶ 12.