1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
7   Facsimile:  (213) 443-3100

8   Attorneys for Mattel, Inc.

9

10              UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12                  EASTERN DIVISION

| | |
|---|---|
| 13  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 14  Plaintiff, | Consolidated with Case No. CV 04-09059 |
| 15  vs. | Case No. CV 05-02727 |
| 16  MATTEL, INC., a Delaware corporation, | MATTEL, INC.'S OPPOSITION TO MGA DEFENDANTS' MOTION TO QUASH DEPOSITION SUBPOENAS |
| 17 | |
| 18  Defendant. | [Declaration of Jon D. Corey submitted concurrently] |
| 19  AND CONSOLIDATED ACTIONS | Date:   TBA |
| 20 | Time:  TBA Place:  TBA |
| 21 | **Phase 1** |
| 22 | Discovery Cut-off:        January 28, 2008 Pre-trial Conference:   April 21, 2008 |
| 23 | Trial Date:                    May 27, 2008 |

24

25

26

27

28

1

2

3

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **Preliminary Statement**

4  MGA seeks to quash deposition subpoenas that Mattel served on six

5  witness because "Mattel is over the numerical limit of [24] authorized depositions in

6  this action and has not been granted leave to depose" those witnesses. Judge Larson

7  rejected the basis for this argument in his February 4, 2008 Minute Order. The

8  Motion is moot and should be denied.

9  MGA seeks to quash the deposition subpoenas that Mattel served on

10  Daphne Gronich and Joe Tiongco because Judge Larson did not grant Mattel leave

11  to depose them. In his February 4, 2008 Minute Order, Judge Larson confirmed that

12  he granted Mattel leave to depose Gronich and Tiongco. The Motion is moot and

13  should be denied.

14  MGA seeks to quash the deposition subpoenas of Wachovia and Moss

15  Adams, both of whom Judge Larson allowed Mattel to depose. Neither Wachovia

16  nor Moss Adams joined in the motion or objected to the topics, so any objections are

17  waived.

18  MGA itself has no standing to prevent these depositions—deposition

19  that, again, Judge Larson expressly allowed—from going forward. MGA articulates

20  not a single evidentiary fact or legal citation justifying its Motion. Nor does it

21  identify a single defective deposition topic. Instead, it cavalierly directs the

22  Discovery Master to a motion to quash documents subpoenas—a very different

23  animal—and says "do the same thing." A proper Motion requires something more

24  than that. Nor should the Discovery Master countenance any effort to remedy these

25  fatal defects on reply.

26

27

28

07209/2378973.3

1

2

## Argument

3   **I.    JUDGE LARSON'S FEBRUARY 4, 2008 ORDER CLARIFIED THAT**

4   **MATTEL MAY TAKE BOTH (1) THE ORIGINAL 24 DEPOSITIONS**

5   **AND; IN ADDITION (2) ALL THE DEPOSITIONS IDENTIFIED IN**

6   **THE MOTION FOR ADDITIONAL DISCOVERY**

7            In its Motion , MGA argued that Mattel cannot take the depositions of

8   Mel Woods, NPD Group, Inc., Ana Isabel Cabrera, Maria Elena Salazar and Beatriz

9   Morales because (i) they were not specifically authorized by the Court in its January

10  7, 2008 Order; and (ii) Mattel had exceeded the 24 depositions that the Court

11  permitted in its original February 12, 2007 Scheduling Order.

12           The February 12, 2007 Scheduling Order allots each side 24

13  depositions.[1]  Mattel has taken 18 of its 24 depositions.[2]  In claiming that Mattel has

14  reached its 24 deposition limit MGA includes Margaret Leahy, Veronica Marlow,

15  Elise Cloonan and Jeanne Galvano, but each of those depositions were authorized as

16  additional depositions in the Court's January 7, 2008 Order.[3]

17

18

19

20  [1]   February 12, 2007 Scheduling Order, , Corey Dec. Ex. 1.

21  [2]   The 18 depositions Mattel has conducted -- i.e., separate from the depositions
    specifically ordered as additional depositions pursuant to the Court's January 7,

22  2008 Order -- were of: Carter Bryant, Victoria O'Connor, Jacqueline Prince, Isaac
    Larian, Steve Linker, Paula Garcia, Brooke Gilbert, Kerri Brode, Dave Malacrida,

23  Janet Bryant, Thomas Bryant, Schuler Bacon, Richard Irmen, Sarah Chui, Maureen

24  Tkacik, Denise O'Neal, MGA 30(b)(6) designees (Kerri Brode, Charmayne Brooks,
    Kenneth Lockhart, Bryan Armstrong, Lisa Tonnu, Rebecca Harris, Samir Khare,

25  Spencer Woodman, Paula Garcia), and an MGA Hong Kong 30(b)(6) designee

26  (Edmond Lee). Corey Dec., ¶ 3.
    [3]   January 7, 2008 Minute Order, Corey Dec. Ex. 2; Motion for Additional

27  Discovery at 9-11, 12-13, Corey Dec. Ex. 4.

28

MATTEL'S OPPOSITION TO MOTION TO QUASH

1   On November 19, 2007, Mattel filed a Motion for Leave to Take
2  Additional Discovery.  On January 7, 2008, the Court granted Mattel's Motion.[4]
3  MGA claims that by finding good cause for Mattel to depose specific, identified
4  witnesses, the Court intended to deprive Mattel of the six remaining depositions
5  slots under the original Scheduling Order.  Mattel disagreed and, consistent with
6  Judge Larson's last order, noticed the depositions of Woods, NPD, Salazar, Cabrera
7  and Morales.

8   As the result of MGA's objections to these depositions, Mattel filed an
9  *Ex Parte* Application to Compel the Appearance for Deposition of Ana Cabrera,
10  Beatriz Morales, and Maria Salazar and Mel Woods.  In those papers, Mattel
11  showed that it had taken only 18 of its 24 depositions allotted to it.  MGA argued
12  that Mattel had taken all the depositions to which it was entitled because Judge
13  Larson did not identify them as witnesses that Mattel could depose in his January 7,
14  2008 Order.

15   Judge Larson confirmed that he did not intend to deprive Mattel of any
16  of its 24 original depositions and that the 24 depositions and the additional
17  depositions were over and above and additional to those as to which Mattel was
18  given leave to depose:

19   The Court's January 7, 2008, order granted leave to take
20   additional discovery *over and above* the previously
21   allocated 24 depositions per side.[5]

22  As to each of these additional witnesses, MGA's Motion must be denied.  Mattel has
23  taken only 18 depositions.  It has six left under the Court's February 2007

24

25   [4]  January 7, 2008 Minute Order, Corey Dec. Ex. 2.
26   [5]  February 4, 2008 Order at 4, Corey Dec. Ex. 3; February 4, 2008 Hearing Tr.
27  at 51:5-8 ("There is no question, to the Court's thinking – and I will make this clear today -- that the 40 I awarded to Mattel . . . were in addition to the 24 that they
28  received."), Corey Dec. Ex. 12.

1  Scheduling Order.  Mattel has elected to use five of those six for Woods, NPD,
2  Cabrera, Morales and Salazar.[6]  The Motion, therefore, should be denied.

3

4  **II.    JUDGE LARSON CLARIFIED THAT THE GRONICH AND**
5  **TIONGCO DEPOSITIONS DO NOT COUNT TOWARDS MATTEL'S**
6  **24-DEPOSITION ALLOCATION.**

7          Judge Larson's February 4, 2008 Minute Order renders moot any claim
8  that Mattel cannot depose Joe Tiongco or Daphne Gronich.  MGA argued that Judge
9  Larson did not give Mattel leave to depose Tiongco or Gronich and that Mattel's
10 attempts to depose them also exceeded the 24 depositions permitted by the
11 Scheduling Order.  Here again, Judge Larson ruled that MGA was incorrect.  Judge
12 Larson clarified his January 7, 2008 Order granting Mattel's Motion for Leave To
13 Take Additional Discovery to confirm that he had granted Mattel leave to depose
14 them:

15          The parties' arguments require the Court to resolve an
16          internal inconsistency in the Court's January 7, 2008 order.
17          The Court's order was meant to grant all parts of Mattel's
18          Motion for Leave to Take Additional Discovery (docket
19          #1134) except the relief sought as to the deposition of
20          Carter Bryant.  The Court amends it 01.07.08 Order by
21          adding in the following language: "[s]pecifically, the
22          Court grants Mattel's request to take the individual
23          depositions...relating to document preservation (set forth

24

25

26
_____

27  [6]  The NPD Group, Inc. subpoena was not addressed in Mattel's Ex Parte
28  Application.

1                   in the moving papers at 14 (Joe Tiongco and Daphne

2                   Gronich).[7]

3 Accordingly the Tiongco and Gronich depositions should proceed forthwith.

4

5 **III.**     **THE DISCOVERY MASTER SHOULD DENY THE MOTION TO**

6          **QUASH AND COMPEL THE DEPOSITIONS OF MOSS ADAMS AND**

7          **WACHOVIA ON THE NOTICED TOPICS**

8             In a throw-away argument (less than a page) that MGA supports with

9 neither evidence nor authority, MGA asks the Discovery Master to reconsider Judge

10 Larson's Order granting Mattel leave to depose Wachovia and Moss Adams. Mattel

11 previously explained to Judge Larson that both Wachovia and Moss Adams possess

12 relevant information. Over MGA's objections, Judge Larson found that Mattel had

13 shown good cause to depose them.[8] Both Wachovia and Moss Adams are, of

14 course, corporations. Undoubtedly Judge Larson knew that when he granted Mattel

15 leave to depose them and that Mattel would have to identify topics of testimony to

16 comply with Rule 30(b)(6). Fed. R. Civ. P. 30(b)(6) (requiring a descriptions of the

17 matters on which examination is requested). Mattel did so. Neither Wachovia nor

18 Moss Adams nor MGA objected to any of the topics. Any objections having now

19 been waived; the Motion must be denied.

20        **A.**     **Mattel Should Be Permitted To Depose Wachovia**

21             Wachovia has information related to the timing and the development of

22 Bratz and damages. Its deposition should go forward. In its Motion for Additional

23 Discovery, Mattel demonstrated to the Court that Wachovia was the "bank identified

24 as being involved in early Bratz financing and knowledgeable about MGA's net

25

26

    [7] February 4, 2008 Minute Order, Corey Dec. Ex. 3.

27     [8] January 7, 2008 Minute Order, Corey Dec. Ex. 2; Motion for Additional

28 Discovery at 9-11, 12-13, Corey Dec. Ex. 4.

worth and value."[9]  Wachovia lent MGA the money it used to fund the creation
and/or development of Bratz.[10]  Wachovia also lent over $100 million to MGA
Entertainment in 2006, with its acquisition of Little Tikes.[11]  The topics of testimony
that Mattel seeks fall squarely within the factual basis for Judge Larson's finding of
good cause for Wachovia's deposition,[12] are narrowly tailored and discrete.  The
topics are:

1.  Any loan agreement or line of credit or other financing arrangement
that Wachovia Corporation has entered into with MGA Entertainment,
Inc., since January 1, 1999.

2.  The information provided to you by MGA Entertainment, Inc. for
purposes of entering into any loan agreement or line of credit or other
financing, at any time since January 1, 1999.

3.  Any explanation or justification that you understood or was provided
for your for why MGA Entertainment, Inc. needed or sought any loan
agreement or line of credit or other financing arrangement from
Wachovia Corporation since January 1, 1999.

4.  The assets of MGA Entertainment, Inc. between January 1, 1999 and
the present.

5.  The value of the assets of MGA Entertainment between January 1,
1999 and the present.

6.  Any other MGA Entertainment, Inc. lenders or persons who extended
or was requested to extend a line of credit to MGA Entertainment, Inc.
since January 1, 1998.[13]

---

[9]  Motion for Additional Discovery at 11, Corey Dec. Ex. 4.

[10]  Farhad Larian stated during his arbitration with Isaac Larian to this effect.

[11]  Tonnu Tr. at 350:9-351:14, Corey Dec. Ex. 5.

[12]  MGA may argue that the topics of testimony should be limited to the specific
factual basis that the Judge Larson relied upon to grant Mattel leave to depose Moss
Adams or Wachovia.  In his February 4, 2008 Minute Order, however, Judge Larson
rejected that exact argument.  Christensen Glaser, who Mattel was also given leave
to depose, argued that Mattel's examination should be limited to Victoria O'Connor's
fax of "the MGA/Bryant agreement that Isaac Larian ordered her to alter."  Judge
Larson rejected that argument, holding that "Mattel may depose Christensen Glaser
on any relevant, non-privileged matter."  February 4, 2008 Minute Order at 4, Corey
Dec. Ex. 3.

[13]  Eckles Dec. Ex. 10 at 51.

1    In short, Mattel seeks from Wachovia a witness to testify about the two,
2    potentially three, loans that Wachovia made to MGA, the information Wachovia
3    used to determine to make those loans and the committed use of those funds, MGA's
4    assets and the value of the assets of MGA, and the identity of any other person who
5    may have lent money or extended a line of credit to MGA. This is proper discovery.

6    **B.    Mattel Should Be Permitted to Depose Moss Adams**

7    Moss Adams is and has been Isaac Larian's accountant during the
8    relevant period. In the Motion for Additional Discovery, Mattel identified Moss
9    Adams as an accounting firm with knowledge of MGA's profits and distributions to
10   Larian.[14] Neither Moss Adams nor Larian objected to any of the topics for
11   examination, which relate directly to the factual justification for Judge Larson's
12   finding of good cause.

13   Mattel seeks testimony regarding Isaac Larian's income, assets and net
14   worth, unquestionably relevant topics.[15] While MGA/Larian have, in the past,
15   sought to quash third-party subpoenas on the grounds that the information is
16   available from a party, that argument (if made in reply), fails here. MGA's designee
17   on the compelled topic of transfers of value from MGA to Larian, Lisa Tonnu, was
18   not even able to state the amount of total annual payments from MGA to Larian.

19   Q.    Well, now -- now -- now I'm asking my general question. If I
20         just wanted to come up with a number for all of the distributions
21         to Mr. Larian, can I do that from this document, 1354?

22

23   [14]  Motion for Additional Discovery at 11, Corey Dec. Ex. 4.
24   [15]  Topics are: 1. Isaac Larian's income from MGA Entertainment, Inc. or other
     sources between January 1, 2000 and the present. 2. Isaac Larian's net worth as of
25   December 31, 2004, December 31, 2005, December 31, 2006 and December 31,
     2007. 3. Isaac Larian's assets between January 1, 2000 and the present. 4. The
26   value of Isaac Larian's assets between January 1, 2000 and the present. 5. The
27   location of Isaac Larian's assets between January 1, 2000 and the present.; Eckles
28   Dec. Ex. 9 at 42.

1    A.    Where there is more text description you can allocate that way.

2           In some instances there's not enough information.

3    Q.    So there's not enough information to come up with a total

4           number for Mr. Larian as opposed to Mr. Makabi in Exhibit

5           1354?

6    A.    No.[16]

7 Exhibit 1354 is a report prepared by MGA to show dividend distributions to or for

8 the benefit of Isaac Larian. But even that document contains significant entries that

9 can not be identified as dividends to Mr. Larian or the other shareholders of MGA.

10 These dividends form the bulk of the transfers of value from MGA to Larian.

11 Because MGA has not been able to state an amount, Mr. Larian's accountant, Moss

12 Adams, can properly be required to do so. Further, MGA has yet to provide either a

13 witness or documentation showing any dividends distributed to Mr. Larian for 2006

14 or 2007.[17]  Moss Adams has this information.

---

[16]   Tonnu Tr. at 859:3-13, Corey Dec. Ex. 6; Exhibit 1354, Corey Dec. Ex. 11. The Topic upon which Ms. Tonnu was designated to testify was Topic No. 11 in Mattel's Third Notice: "Payments of money and any other item of value that you have made to, for, or on behalf of Isaac Larian or any family member of Isaac Larian since January 1st, 1999, including without limitation (a) the amounts of such payment and the equivalent dollar value of each item of value; (b) the dates of such payments; (c) the identity of each recipient of such payment; (d) the identity of each bank or financial institution account to which such payment was made; and (e) the reasons for each such payment." See Mattel's Third Notice of Deposition of MGA Entertainment, Inc., Corey Dec. Ex. 9. The Discovery Master compelled MGA to produce a witness on this topic in his Order dated September 26, 2007. See Corey Dec. Ex. 15; Tonnu Tr. at 742:10-13, Corey Dec. Ex. 6 (Ms. Tonnu testifying that she is the designee on Topic No. 11 in Mattel's Third Notice).

[17]   Tonnu Tr. at 822:11-19, Corey Dec. Ex. 6 (testifying that Exhibit 1354 is limited to information through 2005).

MATTEL'S OPPOSITION TO MOTION TO QUASH

1    Mattel also seeks testimony from Moss Adams regarding transfers of
2  value from Isaac Larian to Carter Bryant, Paula Garcia or Veronica Marlow.[18]  No
3  witness has testified about payments from Isaac Larian.  No documents have been
4  produced showing payments, or showing the absence of payments.  Moss Adams
5  likely has information sufficient to do that.

6    Isaac Larian holds his interests in MGA and its affiliates through trusts.
7  To date, Mattel has identified a number of different trusts that may or may not hold
8  an interest in MGA and to which MGA makes distributions.  These include the Isaac
9  and Angela Larian Family Trust, Isaac Larian Annuity Trust, Isaac E. Larian
10  Qualified Annuity Trust 2004, Isaac Larian and Angela Larian Trust, Angela Larian
11  Grantor Annuity Trust and Isaac Larian Grantor Annuity Trust.  Counsel for Isaac
12  Larian refuses to identify the trusts that hold ownership interests in MGA.[19]  Rather
13  than chasing the trusts to ground, and trying to determine the assets held by each
14  trust, their value, etc., Mattel has asked Moss Adams to testify about the trusts, their
15  assets and distributions, and their value.  No witness has testified about this
16  information.  Such information relates directly to Larian's net worth[20] and it has not
17  been otherwise been provided to MGA by Mr. Larian.

18

19    [18]  Topics are:  6. Payments to or transfers of value from MGA Entertainment,
20  Inc. or Isaac Larian to Carter Bryant between January 1, 2000 and the present.  7.
   Payments to or transfers of value from MGA Entertainment, Inc. or Isaac Larian to
21  Paula Garcia between January 1, 2000 and the present.  8.Payments to or transfers of
22  value from MGA Entertainment, Inc. or Isaac Larian to Veronica Marlow between
   January 1, 2000 and the present.; Eckles Dec. Ex. 9 at 42.
23    [19]  December 24, 2007 Letter from J. Corey to A. Park, Corey Dec. 10.
     [20]  Topics are:  9.  The identity of any trust or other entity in which Isaac Larian
24  is an officer, director, member, shareholder or trustee; has or had a direct or indirect
25  ownership interest; had or has direct or indirect control or of which he or any
26  member of his family (by blood or marriage) is or was an owner, shareholder,
   employee, officer, director, trustee, member or beneficiary between January 1, 2000
27  and the present.  10.  The assets of any trust or other entity identified in Topic No. 9
28  between January 1, 2000 and the present.  11.  The value of the assets of any trust or
     (footnote continued)

MATTEL'S OPPOSITION TO MOTION TO QUASH

1    **C.**    **Any Ruling On the Motion to Quash Subpoenas to Moss Adams or**

2          **Wachovia Will Not Preclude Their Deposition**

3          MGA's asks the Discovery Master to quash the deposition subpoenas

4    because the requests for production of documents to these two firms are allegedly

5    objectionable. Topics of testimony are not document requests, nor do the topics of

6    testimony parallel to the document requests.[21] So, this attempt to cross-breed

7    unidentified document request objections with topics of testimony is a non-starter.[22]

8          **1.**    **Any Objections To the Topics Were Waived Because No One**

9                **Objected to Them**

10         Because neither Wachovia nor Moss Adams nor MGA asserted timely

11   objected to the topics of testimony, they waived any objections. Richmark Corp. v.

12   Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well

13   established that a failure to object to discovery requests within the time required

14   constitutes a waiver of any objection.") (citing Davis v. Fendler, 650 F.2d 1154,

15   1160 (9th Cir. 1981)). Wachovia and Moss Adams further waived by failing to

16

17

18   ───────────────

19   other entity identified in Topic No. 9 between January 1, 2000 and the present. 12.
     Any transfers of value from Isaac Larian or any trust or other entity for which no

20   consideration was received in return.; Eckles Dec. Ex. 9 at 42-43.

21   [21]  Compare Notice of Subpoena to Wachovia with Notice of Deposition of
     Wachovia, Eckles Dec Exs. 10, 12; Compare Notice of Subpoena to Moss Adams

22   with Notice of Deposition of Moss Adams, Eckles Dec. Exs. 9, 11.

23   [22]  To the extent that the Discovery Master proceeds with an analysis of the
     objections to the requests contained in the document subpoenas to Wachovia and

24   Moss Adams, Mattel would refer the Discovery Master to its papers submitted in
     opposition to the Motion to Quash those subpoenas and the associated separate

25   statements, which are incorporated herein by reference: Mattel, Inc.'s: (1)

26   Opposition To MGA's Motion To Quash Or, In The Alternative, For Protective
     Order; And (2) Countermotion To Compel Production Of Documents Responsive

27   To Third-Party Subpoenas; Mattel, Inc's Response To Mga's Separate Statements;

28   and supporting declarations of Jon D. Corey, Michael Zeller, and B. Dylan Proctor.

                                           MATTEL'S OPPOSITION TO MOTION TO QUASH

1 | timely join the motion to quash.  See Fed. R. Civ. P. 7(b)(1); Local Rule 7-4, 7-5.
2 | On that ground alone, the Motion should be denied.

3 |         **2.    MGA Has No Standing to Object to the Topics, and Even If**
4 |                **It Did, the Objections Should Be Overruled**

5 |         MGA has no standing to assert objections to the topics of testimony
6 | that Mattel seeks from Wachovia or Moss Adams.  MGA suffers no burden.  MGA
7 | does not have to prepare a witness.  MGA does not have to interpret a vague or
8 | ambiguous topic.

9 |         Nor are the topics otherwise objectionable.  A Wachovia witness
10 | should be able prepare reasonably quickly to discuss the two or three loans made to
11 | MGA and the related documents.  Mr. Larian's accountant at Moss Adams either has
12 | in his or her head, or reasonably available, all of the information within the scope of
13 | the topics:  assets, revenues, income, trusts, and the identity of other accountants.
14 | The topics succinctly identify the knowledge that each firm could be reasonably
15 | expected to have.

16 |         **3.    The Testimony is Neither Unreasonably Cumulative Nor**
17 |                **Duplicative**

18 |         MGA tries to characterize the testimony sought as unreasonably
19 | cumulative or duplicative.  The objection must be overruled because it identifies no
20 | witness who has testified on any topic sought of Wachovia or Moss Adams, nor can
21 | it.

22 |         Mattel will also need to depose Wachovia and Moss Adams to
23 | authenticate documents, given that MGA has refused to admit the authenticity of a
24 | single document that Mattel asked about.[23]

25 |         From Wachovia, Mattel seeks testimony about the early loan for Bratz
26 | development and the more recent loan that MGA obtained in 2006, financial

27 |

28 | [23]  Corey Dec. ¶ 2.

07209/2378973.3

-11-

1  information and terms in connection with those loans, and representations about use
2  of funds. Mattel has not been able to ask a single witness about the early loan to
3  Wachovia. Mattel attempted to ask Ms. Tonnu about the second loan to Wachovia,
4  but she did know either the particulars of the loan or the particulars about that loan,
5  but she knew precious little.

6       With respect to Moss Adams, as explained above, the only testimony
7  on these topics is deficient. Ms. Tonnu was unable to state the total amount
8  transferred from MGA to Larian, despite being compelled to do so and was not able
9  to identify the amount of any distribution to Larian for 2006 or 2007, despite being
10  compelled to do so.

11       Mattel has not been able to inquire about the Larian Trusts at all. Ms.
12  Tonnu was instructed in an early deposition. After that instruction was overruled,
13  she was able to identify the shareholder trusts and the trustee based on the name of
14  the trust, but knew nothing more about them other than preparing the K-1 tax form
15  that MGA issued to them.[24] Understanding the trusts is crucial to determining Isaac
16  Larian's net worth. Mattel has yet to learn this; Moss Adams knows.

17       **4.    The Topics Seek Relevant Testimony**

18       The testimony sought is relevant. The Court has already ruled that
19  Mattel has demonstrated good cause to depose Wachovia and Moss Adams.[25] The
20  Court was aware of the ambit of their knowledge when so found and allowed their
21  depositions to go forward. In addition, the Discovery Master has previously
22  determined that Bratz development information in the possession of third parties is
23  relevant and should be produced, that damages and net worth information is

24

25

26

27  [24]  Tonnu Tr. at 814:24-816:24, 1285:21-1286:5, 1289:6-14, Corey Dec. Exs. 6, 7.

28  [25]  January 4, 2008 Minute Order, Corey Dec. Ex. 2.

1 relevant, and that Mattel is entitled to information regarding Larian's revenue from
2 MGA.[26] This is what Mattel seeks from Wachovia and Moss Adams.

3     **D.    The Motion Itself is Fatally Defective**

4         A motion must be supported by both evidence and law. MGA's motion
5 has neither. Local Rule 7-5 (requiring "a brief but complete memorandum in
6 support thereof and the *points and authorities* upon which the moving party will
7 rely; and the *evidence* upon which the moving party will rely") (emphasis added);
8 see Local Rule 7-6 to 7-7. Absent an evidentiary or legal basis showing that the
9 Motion is meritorious, which is absent here, the Motion must be denied.

10         Independently, a discovery motion filed in a Central District of
11 California case must comply with Local Rule 37-2.1, which requires a document
12 setting forth either the specific requests or specific question, and any specific
13 objections, so that the Discovery Master will have both precision and context for
14 such rulings. MGA made no effort to do so, but seeks a blanket ruling that none of
15 the topics of testimony is proper. This is the type of blanket argument which the
16 Discovery Master has previously rejected. In their Joint Motion to Overrule Mattel's
17 Relevance Objections and Compel Discovery Relevant to Statute of Limitations and
18 Laches Defenses, Bryant and MGA argued that Mattel should be compelled to
19 supplement *all* of its discovery responses to reflect that Mattel's relevance objection
20 had been overruled.[27] At the January 3, 2008 hearing on this Motion, however, the
21
22
23 [26] See, e.g., Order Granting Mattel's Motion to Compel Production of
Documents and Interrogatory Responses by MGA dated May 15, 2007, Corey Dec.
24 Ex. 13; Order Granting in Part and Denying In Part Mattel's Motion to Compel
Production of Documents by Isaac Larian dated January 2, 2008, Corey Dec. Ex. 14;
25 Order Granting in Part and Denying in Part Mattel's Motion to Compel MGA to
26 Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6)
dated September 26, 2007, Corey Dec. Ex. 15.
27 [27] MGA's and Carter Bryant's Joint Notice of Motion and Motion to Overrule
28 Mattel's Relevance Objection and Compel Discovery Relevant to Statute of
(footnote continued)

MATTEL'S OPPOSITION TO MOTION TO QUASH

1  Discovery Master rejected this argument and indicated he would not compel Mattel
2  on a blanket basis.[28]  In response, defendants withdrew that part of the Motion.[29]
3      MGA again moves on a blanket basis.  In doing so, MGA has failed to
4  comply with the Local Rules, which require that motions compelling further
5  responses to general discovery requests be supported by a document setting forth
6  either the specific requests or specific question, and any specific objections, so that
7  the Discovery Master will have both precision and context for such rulings.  U.S. ex.
8  rel. O'Connell v. Chapman University, 245 F.R.D. 646, 648 (C.D. Cal. 2007)
9  (entering order to show cause for failure to comply with Local Rule 37-2.1); Estate
10 of Gonzalez v. Hickman, 2007 WL 3238725, at *2 (C.D. Cal. 2007) (refusing to
11 hear motion because of party's failure to comply with Local Rule 37-2.1).
12
13                              **Conclusion**
14      For the foregoing reasons, Mattel respectfully requests that the Motion
15 be denied in its entirety.
16
17 DATED:  February 7, 2008         QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
18
19                                  By /s/ Jon Corey
20                                     Jon Corey
                                       Attorneys for Mattel, Inc.
21
22
23
24
25 _____
26 Limitations and Laches Defenses, dated December 10, 2007, at 11-13, Mumford
   Dec., Exh. 6.
27 [28] Transcript of January 3, 2008 Hearing, at 42:17-43:1, Corey Dec. Ex. 11.
28 [29] Id. at 43:2-7.

07209/2378973.3                      -14-