1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

12  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

13              Plaintiff,                  Consolidated with
                                           Case No. CV 04-09059
14       vs.                               Case No. CV 05-02727

15  MATTEL, INC., a Delaware               **[PUBLIC REDACTED]**
    corporation,                           DECLARATION OF JON COREY IN
16                                          SUPPORT OF MATTEL, INC.'S
                Defendant.                  OPPOSITION TO MGA
17                                          DEFENDANTS' MOTION TO QUASH
                                           DEPOSITION SUBPOENAS;
18  AND CONSOLIDATED ACTIONS
                                           Hearing Date:        TBA
19                                          Time:                TBA
                                           Place:               TBA
20
                                           **Phase 1**
21                                          Discovery Cut-off:   January 28, 2008
                                           Pre-trial Conference: April 21 2008
22                                          Trial Date:          May 27, 2008.

23

24

25

26

27

28

-1-

## DECLARATION OF JON D. COREY

I, Jon D. Corey, declare as follows:

1.       I am a member of the bars of the State of California and the District of Columbia. I am a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel"). I make this declaration in support of Mattel's Opposition to MGA Defendants' motion to quash Deposition Subpoenas and Memorandum of Points and Authorities. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.       I have reviewed MGA's responses to Mattel's Second, Third and Fourth Set of Requests for Admission, in which Mattel asked MGA to admit the authenticity of hundreds of documents, including documents that MGA produced. I did not see in my review a single instance in which MGA admitted that one of the subject documents was authentic.

3.       Mattel had conducted 18 depositions that were not permitted by the January 7, 2008 Order granting Mattel leave to take additional deposition. The 18 depositions Mattel has conducted were of: Carter Bryant, Victoria O'Connor, Jacqueline Prince, Isaac Larian, Steve Linker, Paula Garcia, Brooke Gilbert, Kerri Brode, Dave Malacrida, Janet Bryant, Thomas Bryant, Schuler Bacon, Richard Irmen, Sarah Chui, Maureen Tkacik, Denise O'Neal, MGA 30(b)(6) designees (Kerri Brode, Charmayne Brooks, Kenneth Lockhart, Bryan Armstrong, Lisa Tonnu, Rebecca Harris, Samir Khare, Spencer Woodman, Paula Garcia), and an MGA Hong Kong 30(b)(6) designee (Edmond Lee).

4.       Attached as Exhibit 1 is a true and correct copy of the Order Re Scheduling, dated February 12, 2007.

5.       Attached as Exhibit 2 is a true and correct copy of the Order Granting in Part and Denying in Part Mattel's Motion for Leave to take Additional

1   Discovery, and, Granting Motion to Enforce the Court's Order of August 27, 2007,

2   and Denying Request for Sanctions, dated January 7, 2008.

3          6.      Attached as Exhibit 3 is a true and correct copy of the Order,

4   dated February 4, 2008.

5          7.      Attached as Exhibit 4 is a true and correct copy of Mattel's

6   Notice of Motion and Motion for Leave to Take Additional Discovery and

7   Objections to Discovery Master Order of September 28, 2007, dated November 19,

8   2007.

9          8.      Attached as Exhibit 5 is a true and correct copy of the Deposition

10  Transcript of Lisa Tonnu, dated September 24, 2007.

11         9.      Attached as Exhibit 6 is a true and correct copy of the Deposition

12  Transcript of Lisa Tonnu, dated January 17, 2008.

13         10.     Attached as Exhibit 7 is a true and correct copy of the Deposition

14  Transcript of Lisa Tonnu, dated January 24, 2008.

15         11.     Attached as Exhibit 8 is a true and correct copy of Exhibit 1354

16  to the Deposition of Lisa Tonnu, dated January 17, 2008.

17         12.     Attached as Exhibit 9 is a true and correct copy of Mattel's Third

18  Notice of Deposition of MGA Entertainment, Inc., dated June 5, 2007.

19         13.     Attached as Exhibit 10 is a true and correct copy Letter from J.

20  Corey to A. Park, dated December 24, 2007.

21         14.     Attached as Exhibit 11 is a true and correct copy of the Hearing

22  Transcript, dated January 3, 2008.

23         15.     Attached as Exhibit 12 is a true and correct copy of the Hearing

24  Transcript, dated February 4, 2008.

25         16.     Attached as Exhibit 13 is a true and correct copy of the

26  Discovery Master's Order Granting Mattel's Motion to Compel Production of

27  Documents and Interrogatory Responses by MGA dated May 15, 2007.

28

07209/2381149.1                          -3-

17.    Attached as Exhibit 14 is a true and correct copy of the Discovery Master's Order Granting in Part and Denying In Part Mattel's Motion to Compel Production of Documents by Isaac Larian dated January 2, 2008.

18.    Attached as Exhibit 15 is a true and correct copy of the Discovery Master's Order Granting in Part and Denying in Part Mattel's Motion to Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6) dated September 26, 2007.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 7, 2008, at Los Angeles, California.


_/s/_ Jon D. Corey
Jon D. Corey

# EXHIBIT 1

Received:   2/22/07  3:32PM;        RightFAX -> JetFax M920;   Page 2
RightFAX        2/22/2007 3:16    PAGE 002/003    Fax Server

  

**SEND**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  - Eastern Division
### CIVIL MINUTES - GENERAL

Case No.   CV 04-09059 SGL(RNBx)                              Date:  February 12, 2007
Title:     MATTEL, INC. -v- CARTER BRYANT, DOES 1-10, INCLUSIVE
           **Consolidated Action**
           CV 05-02727 SGL(RNBx)    MGA ENTERTAINMENT v. MATTEL, INC.,
=====================================================================

PRESIDING:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                                    Theresa Lanza
Courtroom Deputy Clerk                        Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:            ATTORNEYS PRESENT FOR DEFENDANTS:

John B. Quinn and Michael Zeller for         Diana M. Torres for MGA
Mattel                                       Keith A. Jacoby for Carter Bryant

PROCEEDINGS:     SCHEDULING CONFERENCE PURSUANT TO FRCP 16(b)

      The Court convened a scheduling conference pursuant to FRCP 16(b).  Court and counsel
discussed case management and thereafter the court set the following schedule:  See attachment
"Schedule of Trial and Pretrial Dates."

      Counsel stipulated pursuant to Local Rule 16-14, to settlement procedure #3, to a retired judicial
officer or other private or non-profit dispute resolution body for mediation type settlement proceedings.
The Court approves the request and refers this case to an outside Mediator to act as the Settlement
Officer.  Counsel are directed to contact such outside Mediator to schedule a settlement conference as
soon as the parties believe such a conference would be fruitful. The cut-off to complete the mandatory
settlement procedures under Local Rule 16-14, is December 3, 2007, in Case No. CV 04-09059-SGL
(RNBx) Mattel, Inc. v. Carter Bryant, and the cut-off to complete the mandatory settlement procedures
under Local rule 16-14, is April 21, 2008, in Case No. CV 05-02727 SGL (RNBx) MGA Entertainment v.
Mattel, Inc.

      The Court further ordered that in both Case No. CV 04-09049-SGL (RNBx), Mattel, Inc. v. Carter
Bryant, and Case No. CV 05-02727 SGL (RNBx), MGA Entertainment v. Mattel, Inc.:

      1.    Non-Expert Depositions are limited to a total of 24 for each side for both cases.
      2.    Expert Depositions are limited to a total of 20 for each side for both cases.
      3.    Interrogatories are limited to 50 for each side for both cases.

      IT IS SO ORDERED.                           EXHIBIT __/__ PAGE __3__

MINUTES FORM 90
CIVIL – GEN                    Page 1    FEB 2 2 2007    Initials of Deputy Clerk: jh
                                                         00/30

  

## SCHEDULE OF TRIAL AND PRETRIAL DATES

**CASE NAME:**     MGA ENTERTAINMENT, INC. V. MATTEL, INC., et al.,

**CASE NO:**        CV 05-2727-SGL (RNBx)

| Matter | Time | Court Order |
|---|---|---|
| Jury Trial Date | 9:30 am | 07/01/08 |
| Estimated Length of Trial | | |
| (Hearing on Motions in Limine; Hearing on Disputed Jury Instructions | 10:00 am | 06/23/08 |
| Final Pretrial Conference, LR 16-7 Motions in Limine to be filed | 11:00 am | 06/02/08 |
| Lodge Pretrial Conference Order, LR 16-6 to 16-6.2; File Contentions of Fact and Law, LR16-2.8; Exhibit & Witness Lists, LR 16-4 to 16-5; File Status Report regarding Settlement; File Rule 26(e)(1) Supplementation File Agreed Upon Set of Jury Instructions and Verdict Forms LR 49-1 to 49-2, 51-1 to 51-5.1; File Joint Statement regarding Disputed Instructions, Verdicts, etc. | | 05/19/08 |
| Last date to conduct Settlement Conference | | 04/21/08 |
| Last date for hearing motions, LR 7.2, et seq. | 10:00 am | 04/07/08 |
| Discovery cut-off | | 03/03/08 |
| Last date to Amend Pleadings or Add Parties | | Closed |

### ADDITIONAL MATTERS TO BE DETERMINED AT SCHEDULING CONFERENCE

LR 16-14.4 Settlement Selection:      ☐ 1. CT/USMJ               ☑ 3. Outside ADR
to be discussed
                                      ☐ 2. Attorney Settlement Panel      ☐

DOE Dismissal:                Complaint Filed: 04/13/05        SET DATE
                              Dismissal Date:                  to be discussed

S:\SGL\CIVIL ORDERS\MGA 05-2727 MO 2-12-07.wpd

EXHIBIT ___1___ PAGE ___4___

**From:**

Name:         United States District Court
              312 North Spring Street
              Los Angeles, CA 90012
Voice Phone:  (213) 894-5474

**To:**

Name:         Michael Zeller
Company:
              865 S Figueroa St, 10th Floor,
City/State:   Los Angeles, CA 90017-2543
Fax Number:   213-443-3100

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**



## Automated Document Delivery Service

*Notice pursuant to Rule 77(d) FRCiv.P*
*The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

**Fax Notes:**

Case 2:05-CV-02727 : MGA ENTERTAINMENT INC V. MATTEL INC ET AL

*Pursuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search Warrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents (Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail address for each division is as follows:*

*Western Division: CrimIntakeCourtDocs-LA@cacd.uscourts.gov*
*Southern Division: CrimIntakeCourtDocs-SA@cacd.uscourts.gov*
*Eastern Division: CrimIntakeCourtDocs-RS@cacd.uscourts.gov*

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

**Switch to e-mail delivery and get these documents sooner!**
**To switch, complete and submit**
**Optical Scanning Enrollment / Update form G-76.**
**Call 213-894-5474 for help and free technical support.**

*If you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case, a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for which you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

Date and time of transmission:        Thursday, February 22, 2007 3:14:36 PM
Number of pages including this cover sheet:  03

EXHIBIT ____/ PAGE 5

# EXHIBIT 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                    Date: January 7, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS

==============================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

|  |  |
|---|---|
| Jim Holmes | Theresa Lanza |
| Courtroom Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT: **Christa Martine Anderson**   **John B. Quinn and Michael T. Zeller**

ATTORNEYS PRESENT FOR MGA:             ATTORNEY PRESENT FOR CARLOS
**Thomas J. Nolan**                    GUSTAVO MACHADO GOMEZ:
**Carl A. Roth**                       **Mark E. Overland**
**Anna Park**
                                       ATTORNEY PRESENT FOR NON-PARTY
ATTORNEY PRESENT FOR NON-              STERN & GOLDBERG: **Kien C. Tiet**
PARTIES ANA ELISE CLOONAN,
MARGARET HATCH-LEHY, AND               ATTORNEY PRESENT FOR NON-PARTY
VERONICA MARLOW: **Larry W.**          KAYE SCHOLER, LLP: **Bryant S. Delgadillo**
**McFarland**

PROCEEDINGS:    **ORDER GRANTING IN PART AND DENYING IN PART
                MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL
                DISCOVERY (DOCKET #1134)**

                **ORDER GRANTING MOTION TO ENFORCE THE COURT'S
                ORDER OF AUGUST 27, 2007, AND DENYING REQUEST FOR
                SANCTIONS  (DOCKET #1143)**

MINUTES FORM 90                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                    1                  Time: 1/30

EXHIBIT _2_ PAGE _6_

**ORDER GRANTING MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)**

**ORDER GRANTING CARTER BRYANT AND MGA DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)**

These matters were heard on January 7, 2008. The Court rules as set forth below.

To the extent that this Order decides issues more properly decided by the Discovery Master and/or preempts issues currently pending before the Discovery Master, it does so only to resolve those issues in the most expeditious manner possible. As the Court's order appointing the Discovery Master requires, any and all discovery disputes must be presented to the Discovery Master for his resolution.

**MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY (DOCKET #1134)**

This motion is **GRANTED IN PART**. Leave to take additional depositions and propound additional interrogatories are granted to the extent they are consistent with Fed. R. Civ. P. 26(b)(2). See Fed. R. Civ. P. 30(a)(2)(A) (depositions), 33(a) (interrogatories). Rule 26(b)(2) requires a Court to limit discovery where it is unreasonably cumulative or duplicative; where it can be obtained from a more convenient, less burdensome, or less expensive source; where a party has already had ample opportunity to obtain information from discovery; where the burden or the expense of the requested discovery outweighs its likely benefit, taking into account the factors of the parties' resources, the importance of the issues at stake, and the importance of the requested discovery in resolving these issues. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Considering this standard, the Court concludes that Mattel has shown good cause to grant additional discovery given the complexity of this case, the number of parties, recent developments related to the substitution of counsel, the concerns regarding retention and spoliation of evidence, and the delay in receiving paper

EXHIBIT _2_ PAGE _7_

discovery caused by numerous discovery disputes and a Court-imposed stay
requested by MGA upon substitution of counsel.  Specifically, the Court grants
Mattel's request to take the individual depositions relating to the Bratz claims (set
forth in the moving papers at 9-11) and relating to the trade secret and RICO claims
(set forth in the moving papers at 13).  Mattel may serve the notices of deposition
and propound the interrogatories attached to the moving papers as Exs. A - C.
Additionally, the parties must answer Mattel's previously propounded interrogatories
to which the sole objection raised was that those interrogatories exceeded the
allowable number of interrogatories.

The Court has heretofore refrained from bifurcating discovery relating to Phase
1 and Phase 2, believing that such an action is fraught with the potential of
unnecessarily compounding discovery disputes in a case already predisposed to
such disputes.  Nevertheless, in light of the additional discovery permitted by this
Order, and to the extent that counsel for the parties who are asserting or defending
against claims to be tried in Phase 2 of the trial are in agreement, the Court will
consider a stipulation of those parties that designates certain depositions as "Phase
2" depositions that may be conducted during the month of February, if counsel can
assure the Court that such depositions can be so conducted without altering the
Court's pretrial schedule regarding Phase 1.

Conversely, in light of the standard of review employed regarding the
Discovery Master's orders, the Court **DENIES** that portion of Mattel's motion that
seeks additional time in which to depose Carter Bryant.  The Court cannot say that
the Discovery Master's order allowing an additional nine hours to depose Carter
Bryant is contrary to law based on the Discovery Master's unchallenged factual
findings.

## MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF AUGUST 27, 2007 AND REQUEST FOR SANCTIONS (DOCKET #1143)

This motion is **GRANTED**.  The Court's order clearly applied to "all parties."
No party sought relief therefrom or clarification of the Court's order.

As prepared in purported compliance with the Court's order, the affidavit of
Carlos Gustavo Machado Gomez is inadequate as it lacks facts and relies instead
on conclusory language.  Machado must file an affidavit that complies with the

EXHIBIT _2_ PAGE _8_

Court's order as set forth below.

Carter Bryant has refused to comply with the Court's order and has not filed the required affidavit.

Both these parties must file, on or before January 15, 2008, an affidavit setting forth a factual description of their preservation efforts, policies, customs, and/or practices with respect to potentially discoverable documents related to the present litigation. The failure of these parties to comply with this Order will result in the imposition of contempt sanctions to coerce their compliance.

The Court **DENIES** Mattel's request for costs and sanctions.

## MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)

This motion is **DENIED**. The Court's order referred to the Discovery Master any and all discovery disputes, including those involving third parties.

Although the parties stipulated to the Discovery Master, that stipulation was entered as the Court's order, and as such, all parties are subject to that order unless relieved from it upon proper motion.

The order was entered as a valid Rule 53(a)(1)(C) order, not requiring the consent of any party or nonparty. Machado has not convinced the Court that, as a subsequently added party, he was required to be given the opportunity to object to the order before it could be applied to him. See Fed. R. Civ. P. 53(b)(1) (requiring notice and opportunity to be heard prior to the appointment of a special master). Importantly, Machado could have, but did not, seek relief from this order within a reasonable amount of time after he became a party to this case. Furthermore, the Court does not find any basis to exclude Machado from the reach of the Court's order appointing the Discovery Master pursuant to his present objections.

## DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)

Carter Bryant and the MGA defendants may depose the ten individuals set

EXHIBIT _2_ PAGE _7_

forth in their moving papers.  The testimony of all Rule 30(b)(6) witnesses "count" as only one deposition for purposes of determining the total number of depositions conducted by each side.

Carter Bryant and the MGA defendants are not relieved of the requirement that they serve subpoenas on all these deponents other than the current officers of Mattel (represented to the Court to be Tim Kilpin, Kevin Farr, and Evelyn Viohl).  To the extent that Mattel has made prior written agreements to produce deponents who are under its control, it is expected to do so.

As to all the depositions permitted by this Order, all counsel are expected to coordinate their schedules with those of the deponents such that the depositions are held prior to the discovery cutoff date of January 28, 2008.  However, as set forth above in connection with Mattel's motion to take additional discovery, Phase 2 depositions may be taken in February pursuant to a Court-approved stipulation.

IT IS SO ORDERED.

EXHIBIT 2 PAGE 10

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
3470 Twelfth Street, Riverside, CA 92501
<u>**CIVIL MINUTES – GENERAL**</u>

| | |
|---|---|
| Case No. | CV 04-09049 SGL(RNBx) |
| Title: | CARTER BRYANT -v- MATTEL, INC. |
| | AND CONSOLIDATED ACTIONS |

Date: February 4, 2008

**PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE**

Jim Holmes
Courtroom Deputy Clerk

Theresa Lanza
Court Reporter

**ATTORNEYS PRESENT FOR CARTER BRYANT:**

Michael Page

**ATTORNEYS PRESENT FOR MGA:**

Thomas J. Nolan
Carl A. Roth
Robert J. Harrington

**ATTORNEYS PRESENT FOR THIRD-PARTY WITNESSES**

Larry W. McFarland
Scott Gizer
Ramit Mizrahi
Henry H. Gonzalez
Neal A. Potischman
John Patrick Petrullo

Alexander H. Cote

**ATTORNEYS PRESENT FOR MATTEL:**

John Quinn
Jon D. Corey

**ATTORNEY PRESENT FOR CARLOS GUSTAVO MACHADO GOMEZ:**

MINUTES FORM 90
CIVIL – GEN

1

Initials of Deputy Clerk __ jh __
Time: 1/45

EXHIBIT 3 PAGE 11

PROCEEDINGS:

HEARING ON EX PARTE APPLICATIONS:

1722 EX PARTE APPLICATION to Compel Deposition of Ana Cabrera, Beatriz Morales, and Maria Salazar and Mel Woods

1724 EX PARTE APPLICATION to Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment, Inc.

1538 EX PARTE APPLICATION for Relief from 01-07-2008 Order re Motion Hearing

1583 EX PARTE APPLICATION to Compel Production of Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow

1624 EX PARTE APPLICATION to Enforce Court's Orders Compelling Production of Tangible Items

1628 EX PARTE APPLICATION to Stay pending Review of Discovery Master's January 11, 2008 Order Granting MGA's and Bryant's Motion to Compel

ORDER TO SHOW CAUSE DIRECTED TO COUNSEL LARRY McFARLAND

Having considered the documents submitted in support of and opposition to the applications set forth above, and having heard oral argument, the Court issues its rulings on these matters as stated on the record and as follows:

EX PARTE APPLICATIONS REGARDING DEPOSITIONS
(DOCKET #1722 AND #1724) AND ORDER TO SHOW CAUSE

These applications are DENIED IN PART, subject to the following rulings:

(1)   The Court's January 7, 2008, Order was intended to grant certain specified relief from the numerical limitations on discovery requests; it was not meant to make definitive rulings on burdensomeness, relevance, privilege, or service of discovery requests.

(2)   The Phase 1 discovery deadline has expired. Any Phase 1 discovery not properly served on or before this deadline may not now be pursued. Based on the representation of counsel that process for the letters rogatory on the Hong Kong witnesses has not been initiated, these witnesses may not be deposed on Phase 1 issues. Notwithstanding this ruling, however, the Court is concerned with the allegations by Mattel in its ex parte application regarding certain actions of Larry

MINUTES FORM 90
CIVIL — GEN                            2                    Initials of Deputy Clerk __jh_____
                                                            Time: 1/45

EXHIBIT _3_ PAGE _12_

McFarland, who represents certain third-party witnesses. Mattel submits that Mr. McFarland has been deliberately evading service of a notice of deposition on him and his clients -- serious allegations when made by an officer of the Court against another officer of the Court. Accordingly, Mr. McFarland is ORDERED TO SHOW CAUSE why he and his clients should not be ordered to appear for deposition. A written response to this OSC must be filed no later than February 11, 2008. Other parties may file written replies no later than February 19, 2008. The Court will hear the matter at 10:00 a.m., February 25, 2008, in Courtroom One of the above-referenced Court.

(3)    Phase 1 depositions that have been scheduled past the discovery deadline for the convenience of the witnesses or pursuant to the stipulation of the parties and/or witnesses may proceed as scheduled.

(4)    All discovery related to Phase 2, other than certain individual depositions that may be related to both Phase 1 and Phase 2, is STAYED until further order of the Court.

(5)    As previously ordered and reaffirmed by this Court, all discovery matters shall be presented in the first instance to the Discovery Master. The fact that the Discovery Master's ruling might impact upon the Court's scheduling order does not relieve the parties of following this procedure. For instance, motions to compel, motions to quash, or motions challenging service as to existing discovery requests shall be brought before the Discovery Master. So, too, must objections based on burdensomeness, relevancy, or privilege. In general, and on the matters touched upon herein, the Court expresses no opinion as to these issues, and instead leaves those issues to the Discovery Master to decide in the first instance.

(6)    To the extent that certain challenged depositions are within the scope of the Court's January 7, 2008, Order, and are related to Phase 1 (or to the extent that a given deposition (other than a Rule 30(b)(6) deposition) is related to both Phase 1 and Phase 2), said deposition may proceed subject to the challenges set forth in the previous paragraph. To the extent that the depositions are related to Phase 2, they are STAYED, as set forth above, notwithstanding the January 7, 2008, Order.

(7)    The parties' arguments require the Court to resolve an internal inconsistency in the Court's January 7, 2008, Order. The Court's Order was meant to grant all parts of Mattel's Motion for Leave to Take Additional Discovery (docket #1134) except the relief sought as to the deposition of Carter Bryant. The Court amends its 01.07.08 Order as follows:

       Delete: <Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) and relating to the trade secret and RICO

MINUTES FORM 90
CIVIL -- GEN                              3

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT 3 PAGE 13

claims (set forth in the moving papers at 13).>

Replace with: <Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11), relating to the trade secret and RICO claims (set forth in the moving papers at 13), and relating to document preservation (set forth in the moving papers at 14 (Joe Tiongco and Daphne Gronich)).>

(8)     The Court's January 7, 2008, Order granted leave to take additional discovery over and above the previously allocated 24 depositions per side.  Nevertheless, as to all other depositions, how to "count" the previously allocated depositions is left to the discretion of the Discovery Master.

(9)     At the hearing, counsel for Christensen, Glaser requested that the Court clarify that its January 7, 2008, ruling granted leave to depose it on only one issue.  That is not the case, and the request is DENIED.  Mattel has been granted relief from the numerical limitations that previously restricted its ability to depose those individuals and entities addressed by the Court's January 7, 2008, Order, including its ability to depose Christensen, Glaser.  Unless otherwise restricted by the Discovery Master upon proper presentation of the issue to him, Mattel may depose Christensen, Glaser on any relevant, non-privileged matter.

### MACHADO GOMEZ'S EX PARTE APPLICATION RE JANUARY 7, 2008, ORDER (DOCKET # 1504)

This application is GRANTED.  As noted above, Phase 2 discovery is STAYED until further order of the Court.  The Court will address Phase 2 discovery, motions, pretrial, and trial dates after the conclusion of Phase 1 of the trial.

### MATTEL'S EX PARTE APPLICATION RE MOTION TO COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD PARTIES (DOCKET #1538)

This application is DENIED.  This matter must be addressed in the first instance by the Discovery Master.

### MATTEL'S EX PARTE APPLICATION TO ENFORCE COURT'S ORDERS COMPELLING PRODUCTION OF TANGIBLE ITEMS (#1624)

This application is GRANTED IN PART.  Counsel for MGA shall employ its best efforts to arrange for shipment of those tangible things located in the Peoples' Republic of China ("PRC") to Hong Kong Special Administrative Region ("Hong Kong") for examination in conjunction with those tangible things already located in Hong Kong.  Otherwise, counsel for MGA shall cooperate in the

EXHIBIT _3_ PAGE _14_

arrangements for inspection in both Hong Kong and the PRC.   Mattel's request for costs is denied without prejudice.

Counsel are encouraged to meet and confer with the intent of reaching a stipulation regarding the supplementation of expert reports.  Absent such stipulation, at the appropriate time, the Court will entertain an ex parte application from any party regarding this issue.

### MATTEL'S EX PARTE APPLICATION TO STAY PENDING REVIEW OF DISCOVERY MASTER'S JANUARY 11, 2008 ORDER (DOCKET # 1628)

This application is GRANTED IN PART.  The Court sets the motion for hearing on February 11, 2008.  Opposition shall be filed no later than February 6, 2008; any reply shall be filed no later than February 8, 2008.  The Discovery Master's January 11, 2008, Order is stayed until the issuance of the Court's minute order regarding the February 11, 2008, hearing.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN                                    5                    Initials of Deputy Clerk __jh_____
                                                                     Time: 1/45

EXHIBIT 3 PAGE 15

# NOTICE PARTY SERVICE LIST

**Case No.** CV 04-09049 SGL(RNBx)   **Case Title** Carter Bryant v. Mattel, Inc.

**Title of Document** Minute Order of February 4, 2008

| | |
|---|---|
| Atty Sttlmnt Officer Panel Coordinator | US Attorneys Office – Civil Division –L.A. |
| BAP (Bankruptcy Appellate Panel) | US Attorneys Office – Civil Division – S.A. |
| Beck, Michael J (Clerk, MDL Panel) | US Attorneys Office – Criminal Division –L.A. |
| BOP (Bureau of Prisons) | US Attorneys Office – Criminal Division –S.A. |
| CA St Pub Defender (Calif. State PD) | US Bankruptcy Court |
| CAAG (California Attorney General's Office – Keith H. Borjon, L.A. Death Penalty Coordinator) | US Marshal Service – Los Angeles (USMLA) |
| Case Asgnt Admin (Case Assignment Administrator) | US Marshal Service – Riverside (USMED) |
| | US Marshal Service –Santa Ana (USMSA) |
| Catterson, Cathy (9th Circuit Court of Appeal) | US Probation Office (USPO) |
| Chief Deputy Admin | US Trustee's Office |
| Chief Deputy Ops | Warden, San Quentin State Prison, CA |
| Clerk of Court | |
| Death Penalty H/C (Law Clerks) | |
| Dep In Chg E Div | |
| Dep In Chg So Div | |
| Federal Public Defender | |
| Fiscal Section | |
| Intake Section, Criminal LA | |
| Intake Section, Criminal SA | |
| Intake Supervisor, Civil | |
| PIA Clerk – Los Angeles (PIALA) | |
| PIA Clerk – Riverside (PIAED) | |
| PIA Clerk – Santa Ana (PIASA) | |
| PSA – Los Angeles (PSALA) | |
| PSA – Riverside (PSAED) | |
| PSA – Santa Ana (PSASA) | |
| Schnack, Randall (CJA Supervising Attorney) | |
| Statistics Clerk | |

**ADD NEW NOTICE PARTY** (If sending by fax, mailing address must also be provided) ✓

Name: Ambassador Pierre-Richard Prosper

Firm:

Address (include suite or floor): P.O. Box 581103

Salt Lake City, UT 84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

**JUDGE / MAGISTRATE JUDGE (list below):**

Initials of Deputy Clerk jh

G-75   (03/07)           NOTICE PARTY SERVICE

EXHIBIT 3 PAGE 16

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)    **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**    Minute Order of February 4, 2008

| | |
|---|---|
| Atty Sthont Officer Panel Coordinator | US Attorneys Office - Civil Division -L.A. |
| BAP (Bankruptcy Appellate Panel) | US Attorneys Office - Civil Division - S.A. |
| Beck, Michael J (Clerk, MDL Panel) | US Attorneys Office - Criminal Division -L.A. |
| BOP (Bureau of Prisons) | US Attorneys Office - Criminal Division -S.A. |
| CA St Pub Defender (Calif. State PD) | US Bankruptcy Court |
| CAAG (California Attorney General's Office – Keith H. Borjon, L.A. Death Penalty Coordinator) | US Marshal Service - Los Angeles (USMLA) |
| Case Asgmt Admin (Case Assignment Administrator) | US Marshal Service – Riverside (USMED) |
| Catterson, Cathy (9th Circuit Court of Appeal) | US Marshal Service -Santa Ana (USMSA) |
| Chief Deputy Admin | US Probation Office (USPO) |
| Chief Deputy Ops | US Trustee's Office |
| Clerk of Court | Warden, San Quentin State Prison, CA |
| Death Penalty H/C (Law Clerks) | |
| Dep In Chg E Div | |
| Dep In Chg So Div | |
| Federal Public Defender | |
| Fiscal Section | |
| Intake Section, Criminal LA | |
| Intake Section, Criminal SA | |
| Intake Supervisor, Civil | |
| PIA Clerk - Los Angeles (PIALA) | |
| PIA Clerk - Riverside (PIAED) | |
| PIA Clerk - Santa Ana (PIASA) | |
| PSA - Los Angeles (PSALA) | |
| PSA - Riverside (PSAED) | |
| PSA - Santa Ana (PSASA) | |
| Schnack, Randall (CJA Supervising Attorney) | |
| Statistics Clerk | |

✓  **ADD NEW NOTICE PARTY**
(if sending by fax, mailing address must also be provided.)

Name: Hon. Edward A. Infante (Ret.)

Firm:

Address (include suite or floor): Two Embarcadero

Center, Suite 1500, San Francisco, CA  94111

*E-mail:

*Fax No.:

* For CIVIL cases only

**JUDGE / MAGISTRATE JUDGE** (list below):

| |
|---|
| |
| |
| |

Initials of Deputy Clerk  jh

G-75   (03/07)                    NOTICE PARTY SERVICE LIST

EXHIBIT  3  PAGE  17

# EXHIBIT 4

CONFORMED

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
7   Facsimile: (213) 443-3100

8   Attorneys for Mattel, Inc.

9                 UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                      EASTERN DIVISION

12  CARTER BRYANT, an individual,      CASE NO. CV 04-9049 SGL (RNBx)

13              Plaintiff,             Consolidated with
                                       Case No. CV 04-09059
14        vs.                          Case No. CV 05-02727

15  MATTEL, INC., a Delaware           Hon. Stephen G. Larson
    corporation,
16                                     NOTICE OF MOTION AND MOTION
                Defendant.             OF MATTEL, INC. FOR LEAVE TO
17                                     TAKE ADDITIONAL DISCOVERY
                                       AND OBJECTIONS TO DISCOVERY
18  AND CONSOLIDATED ACTIONS           MASTER ORDER OF SEPTEMBER
                                       28, 2007; AND
19
                                       MEMORANDUM OF POINTS AND
20                                     AUTHORITIES

21                                     [Declaration of B. Dylan Proctor filed
                                       concurrently]
22
                                       Hearing Date: January 7, 2008
23                                     Time:         10:00 a.m.
                                       Courtroom:    1
24
                                       Phase 1:
25                                     Discovery Cut-off:     January 28, 2008
                                       Pre-trial Conference:  May 5, 2008
26                                     Trial Date:            May 27, 2008

27                                     EXHIBIT 4 PAGE 18

28

07209/2299353.1

11-19

-i-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that on January 7, 2008, at 10:00 a.m., or as soon

3  thereafter as the matter may be heard, in the courtroom of Honorable Stephen G.

4  Larson, located at 3470 Twelfth Street, Riverside, California, 92501, Mattel, Inc. will,

5  and hereby does, move the Court, pursuant to <u>Federal Rule of Civil Procedure</u> 26(b)

6  and the Court's February 12, 2007 Scheduling Order, for an order granting Mattel leave

7  to take additional depositions, including <u>Rule</u> 30(b)(6) depositions of defendants MGA

8  Entertainment, Inc., and MGAE de Mexico S.R.L. de C.V., beyond the current limit set

9  by the Court and to serve additional interrogatories on defendants.  Pursuant to 28

10  U.S.C. § 636(b)(1), Mattel also seeks an additional 12 hours to depose Carter Bryant, in

11  addition to the seven hours already permitted by Discovery Master Infante.

12      Mattel makes this Motion on the grounds that the breadth and complexity of this

13  case warrant more than the 24 depositions and 50 interrogatories permitted by the

14  Court's Scheduling Order.  Mattel further makes this Motion on the grounds that, given

15  Bryant's central role in the hundreds of products that MGA has sued upon in this case,

16  and because both the parties and third-parties have produced many millions of pages of

17  documents since Mr. Bryant's deposition in 2005, seven hours is not enough time to

18  fully depose Mr. Bryant.

19      This Motion is based on this Notice of Motion and Motion, the accompanying

20  Memorandum of Points and Authorities, the Declaration of B. Dylan Proctor filed

21  concurrently herewith, the records and files of this Court, and all other matters of which

22  the Court may take judicial notice.

23

24

25

26  EXHIBIT __4__ PAGE __19__

27

28

07209/2299353.1

-ii-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

1 | <u>**Statement of Local Rule 7-3 Compliance**</u>

2 | The parties met and conferred pursuant to <u>Local Rule</u> 7-3 on October 3, 2007,

3 | and times thereafter, but were not able to resolve this motion.

4 |

5 | DATED: November 19, 2007            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6 |

7 |                                     By_____

8 |                                        Jon Corey
                                           Attorneys for Mattel, Inc.

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |                                                    EXHIBIT _4_ PAGE _20_

28 |

07209/2299353.1

-iii-

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT.........................................................................1

STATEMENT OF FACTS ..............................................................................3

ARGUMENT ...................................................................................................6

I.   THE RULES CONTEMPLATE ADDITIONAL DISCOVERY...................6

   A.   Each Category of Claims Warrants More Depositions.........................8

      1.   The Bratz Claims Require Additional Depositions .....................8

      2.   Mattel's Trade Secret and RICO Claims and MGA's Unfair Competition Claims Require Additional Depositions ...............12

   B.   Mattel Needs Additional Depositions Because the Integrity of MGA's and Bryant's Preservation of Documents Is At Issue...............14

   C.   Mattel Seeks Leave to Take 30(b)(6) Depositions On Non-Duplicative Topics..................................................................15

   D.   Mattel Meets The Requirements for Additional Discovery.................15

II.  THE COURT SHOULD GRANT LEAVE WITH RESPECT TO MATTEL'S INTERROGATORIES.......................................................16

III. THE COURT SHOULD ALLOW ADDITIONAL TIME FOR THE BRYANT DEPOSITION ............................................................20

CONCLUSION ...............................................................................25

EXHIBIT _4_ PAGE _21_

-i-

1

## TABLE OF AUTHORITIES

2                                                                                          **Page**

3

### Cases

4

Andamiro v. Konami Amusement of Am.,
    2001 WL 535667 (C.D. Cal. April 26, 2001) ........................................ 8

Bahn v. NME Hosps., Inc.,
    929 F.2d 1404 (9th Cir. 1991) ........................................ 22

Bromgard v. Montana,
    2007 WL 1101179 (D. Mont. April 11, 2007) ........................................ 11, 18

Collaboration Prop. v. Polycom, Inc.,
    224 F.R.D. 473 (N.D. Cal. 2004) ........................................ 8

Fresenius Med. Care Hldgs, Inc. v. Roxane Labs., Inc.,
    2007 WL 764302  Proctor Dec., Ex. 43 ........................................ 23

Rx USA Wholesale, Inc. v. McKesson Corp.,
    2007 WL 1827335 (E.D.N.Y. June 25, 2007) ........................................ 7, 11, 19

Whittingham  v. Amherst Coll.,
    163 F.R.D. 170 (D. Mass. 1995) ........................................ 7

### Statutes

Cal. Civ. Code § 3426.1 ........................................ 20

Fed. R. Civ. P. 26(b) ........................................ 8, 20

Fed. R. Civ. P. 30(a)(2)(A) ........................................ 7, 20

Fed. R. Civ. P. 33 ........................................ 7, 8, 20

Local Rule 7-3 ........................................ 3

Fed. R. Civ. P. 30(b)(6) ........................................ 9, 14, 16, 17

Fed. R. Civ. P. 53(e) ........................................ 21

EXHIBIT 4 PAGE 22

Y9/2299353.1

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

In its Scheduling Order, the Court limited each side to 50 interrogatories and 24 fact depositions.  The Court recognized, however, that the case's complexity could require additional depositions or interrogatories and invited motions for additional discovery, if necessary:  "I don't want to say they are soft limits [on the number of depositions], but they are limits which the Court would certainly understand or would invite counsel to submit a motion to expand if there's reason to.  But I just want to have some parameters placed on this at the outset."  Likewise, with respect to the interrogatory limit, the Court stated:   "[L]et's try and work within the confines of the 50 interrogatories, and if you need more, again, the Court is going to be forthcoming, if there's a need for it."[1]  Mattel respectfully submits that time has come.

Under the Federal Rules, leave to take additional discovery "shall be granted" to the extent consistent with the principles set forth in Rule 26(b)(2).  Fed. R. Civ. P. 30(a)(2)(A) & 33(a).  The additional discovery Mattel seeks is appropriate under that framework.  It is not duplicative of prior discovery, Mattel has not had an adequate opportunity to take discovery on these matters, and the substantial benefits of discovery on these central issues outweigh any burden.  MGA has identified many dozens of witnesses with knowledge of the parties' claims or defenses. Mattel has sued MGA for inducing several Mattel employees to misappropriate many thousands of pages of documents containing Mattel trade secrets over an extended period of time.   For its part, MGA has accused over 400 Mattel products of infringing the trade dress of more than 200 MGA products.  As MGA has proclaimed, it will be seeking "billions" of dollars from Mattel on its claims alone.  Additional depositions are warranted given the breadth and complexity of the claims and defenses in this case and the stakes involved.

---

[1]   February 12, 2007 Scheduling Conference Tr. at 22:12-15 and 24:5-7, Exhibit 7 to the Declaration of B. Dylan Proctor, dated November 19, 2007 ("Proctor Dec.").

EXHIBIT _4_ PAGE _23_

07209/2299353.1

-1-

1    To date, Mattel has taken 18 depositions, which leaves Mattel with six

2    remaining.  Mattel has been able to take only one deposition on its counterclaims or

3    defenses to MGA's unfair competition claims, and as of yet, Mattel has been unable to

4    depose any of the individuals actively involved in the theft of Mattel's trade secrets.

5    The specific individuals who Mattel seeks to depose are identified below, along with

6    the justification for each.  In addition, Mattel cannot obtain without the Court's leave

7    the corporate testimony of MGA or MGAE de Mexico on the facts related to either

8    MGA's unfair competition claims or Mattel's counterclaims.  Mattel seeks leave to

9    serve the First Notice of Deposition of MGAE de Mexico, attached as Exhibit A, and

10   an additional Notice of Deposition of MGA, attached as Exhibit B, on those subjects.

11       Mattel also seeks leave to serve defendants with additional interrogatories.

12   Mattel has served interrogatories seeking MGA's contentions with respect to the

13   creation of Bratz and MGA's unfair competition claims.   Mattel's proposed

14   interrogatories, which are attached as Exhibit C, seek information related to Mattel's

15   counterclaims and to MGA's claims against Mattel for alleged unfair competition, as

16   well as certain of defendants' defenses.[2]

17       Finally, Mattel seeks additional time to depose Mr. Bryant.  Although Bryant was

18   deposed in 2004, since that time MGA and Bryant have produced millions of pages of

19   documents that they had long withheld until compelled by the Court, and the scope of

20   the claims in these consolidated cases has increased dramatically.  Only after Bryant's

21   deposition occurred, MGA asserted its broad unfair competition claims against Mattel.

22   Only after Bryant's deposition occurred, Mattel asserted its counterclaims, including its

23   copyright infringement and RICO counterclaims, against Bryant and other defendants.

24   And, despite the fact that Mattel sought documents relating to the origins of Bratz

25

26   _____

     [2]   Because defendants refuse to answer Mattel's previously served interrogatories based
27   on spurious claims that they exceed the 50 limit, Mattel seeks leave as to them to avoid
     defendants' further quarreling over the counting of interrogatories and thereby obtain
28   obvious information about defendants' own contentions and other critical subjects.

EXHIBIT _4_ PAGE _24_

:09/2299353.1

-2-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

1  before Bryant's initial deposition, both MGA and Bryant were, unbeknownst to Mattel,

2  withholding such documents at the time of the deposition -- this was discovered only

3  after multiple motions to compel brought by Mattel were granted.   Judge Infante

4  recognized that Bryant is the "most knowledge witness with respect to virtually all of

5  the factual issues" and claims in these matters.[3]  Judge Infante nevertheless gave Mattel

6  only seven additional hours for Bryant's deposition (on top of two hours previously

7  granted due to Bryant's and his counsel's improper conduct during the prior deposition).

8  That simply is not enough to depose Bryant on MGA's claims, Mattel's counterclaims

9  and all the newly produced evidence that post-dates the 2004 deposition.   Mattel

10  therefore requests that this Court grant additional time of another 12 hours for a total of

11  21 additional hours to question Bryant.

12                              **Statement of Facts**

13      Mattel's Original Complaint.  Mattel filed its initial Complaint on April 27, 2004,

14  alleging that Carter Bryant breached his duties to Mattel by working with and assisting

15  a Mattel competitor, MGA, while he was employed by Mattel.[4]  While at Mattel,

16  Bryant worked on the "Bratz" project.[5]  On December 7, 2004, MGA filed an answer in

17  intervention claiming that the action put at issue MGA's rights to Bratz.[6]

18      MGA's Complaint.  MGA filed a complaint against Mattel on April 13, 2005

19  alleging that Mattel engaged in "serial copycatting" of the Bratz dolls.[7]  Mattel's action

20  and MGA's action were later consolidated along with a declaratory relief action filed by

21  Bryant, which was later dismissed.[8]

22      Mattel's Counterclaims.  On November 19, 2006, Mattel moved for leave to

23  amend its complaint.  The Court granted Mattel's motion, allowing Mattel's new claims

24  _____

[3]  9/27/07 Hearing Tr. at 24:24-25:2, Proctor Dec., Ex 85.
[4]  Proctor Dec., Ex. 1.
[5]  Id. ¶¶ 12-13.
[6]  Proctor Dec., Ex. 2.
[7]  Proctor Dec., Ex. 3.
[8]  Minute Order Re Consolidation (June 19, 2006), Proctor Dec., Ex. 4.

EXHIBIT _4_ PAGE _25_

109/2299353.1

-3-

1  to be alleged as counterclaims to MGA's complaint.[9]  Mattel filed its Second Amended
2  Answer and Counterclaims on July 12, 2007.  Mattel's counterclaims against MGA
3  Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L.
4  de C.V. include claims for copyright infringement, violation of RICO, conspiracy to
5  violate RICO, misappropriation of trade secrets, intentional interference with contract,
6  aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of
7  loyalty, conversion and unfair competition.[10]  MGA's current amended answer to
8  Mattel's counterclaims asserts twenty-two affirmative defenses.[11]

9       Scheduling Conference.  At the February 12, 2007, and as reflected in a Minute
10  Order, the Court limited depositions to 24 per side and interrogatories to 50 per side.[12]
11  The Court recognized that the parties might need more depositions or interrogatories:

12       I don't want to say they are soft limits [on the number of
13       depositions], but they are limits which the Court would
          certainly understand or would invite counsel to submit a
14       motion to expand if there's reason to.  But I just want to have
15       some parameters placed on this at the outset.
          . . .
16       [L]et's try and work within the confines of the 50
17       interrogatories, and if you need more, again, the Court is
          going to be forthcoming, if there's a need for it.[13]
18

19       Mattel's Interrogatories.  To date, Mattel has propounded 50 interrogatories.[14]  In
20  June 2007, Mattel propounded 19 interrogatories on MGA, MGA Hong Kong, Larian

21

22  [9]  1/11/07 Order Re Mattel's Motion for Leave to Amend, Proctor Dec., Ex. 5.
23  [10]  See Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007 ("Mattel's Counterclaims"), Proctor Dec., Ex. 16.
24  [11]  See MGA's Amended Answer and Affirmative Defenses ("MGA's Amended Answer"), Proctor Dec., Ex. 46.  MGA had filed its original answer on August 13, 2007.
25  Proctor Dec., Ex. 17.  After meeting and conferring, MGA acknowledged deficiencies in its defenses and served its amended answer on September 19, 2007.
26  [12]  2/12/07 Scheduling Order, at 1, Proctor Dec., Ex. 6.
27  [13]  2/12/07 Scheduling Conference Tr., at 22:12-15 and 24:5-7, Proctor Dec., Ex. 7.
    [14]  See Proctor Dec., Exs. 8-12, 15, 64-68.
28

EXHIBIT 4 PAGE 26

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

1209/2299353.1

1   and Bryant, seeking information about Bratz development, their affirmative defenses to

2   Mattel's claims, defendants' contentions regarding unfair competition claims and

3   MGA's benefit from Bratz.[15] Defendants claimed they exceeded the interrogatory limit,

4   and on September 5, 2007, Judge Infante ruled that identical interrogatories served on

5   multiple parties, as well as interrogatories asking defendants to "state all facts"

6   supporting a particular contention, "identify all persons with knowledge of such facts,"

7   and "identify all documents" relevant to such facts, would each count as only one

8   interrogatory.[16] However, an interrogatory asking a party to state facts supporting

9   different affirmative defenses would count as a different interrogatory per defense.[17] In

10   accordance with that ruling, on September 21, 2007, Mattel served revised sets of

11   fifteen interrogatories.[18] Defendants nevertheless still refuse to substantively answer

12   these interrogatories, including because they allegedly exceed the number permitted.[19]

13      Mattel Depositions.  To date, Mattel has taken 18 depositions.  Mattel has had

14   good cause for each of those depositions.  They include:

15   - Carter Bryant – defendant

16   - Victoria O'Connor – former MGA executive with knowledge of MGA's and Larian's spoliation of evidence

17
18   - Jaqueline Prince – witness allegedly supporting Bryant's Bratz creation story

19   - Isaac Larian – defendant

20   - Steve Linker – third party with knowledge of work on Bratz before Bryant left Mattel

21
22   - Paula Garcia – Bratz project manager from the start who worked on Bratz with Bryant before he left Mattel

23   - Brooke Gilbert – Bryant's niece with knowledge of Bryant's computer on which Bryant installed and used "Evidence Eliminator"

24
_____

25   [15]  Proctor Dec., Ex. 13.

26   [16]  9/5/07 Order Re Mattel's Interrogatories, at 5-6, Proctor Dec., Ex. 14.
      [17]  See id. at 7.

27   [18]  Proctor Dec., Ex. 45.
      [19]  See Proctor Dec., Exs. 73-74.

28

EXHIBIT 4 PAGE 27

- Kerri Brode – MGA employee with knowledge of Bryant's work on Bratz while at Mattel

- Dave Malacrida – MGA public relations employee with knowledge regarding early Bratz design and marketing

- Janet Bryant – Bryant's mother and relied upon by Bryant to establish alleged date of Bratz creation

- Thomas Bryant – Bryant's father and relied upon by Bryant to establish alleged date of Bratz creation

- Sarah Chui – worked on Bratz in 2000 for MGA Hong Kong

- Richard Irmen – Bryant's partner and relied upon by Bryant to establish alleged date of Bratz creation

- Maureen Tkacik – *Wall Street Journal* reporter to whom Larian stated, in an interview, that he chose Mr. Bryant's idea for the Bratz over several others after holding "a sort of fashion-doll design contest in late 1999" -- a time during which Bryant was employed by Mattel and months before MGA and Bryant now say they first were introduced

- MGA Entertainment, Inc. – defendant

- MGA Entertainment (HK) Limited – defendant

- Schyler Bacon – MGA employee who recruited Mattel employees who stole trade secrets

- Denise O'Neal – *Chicago Sun Times* reporter to whom Larian made prior inconsistent statements, including that MGA's creative team decided to use the "Brats" name but to change the "s" to a "z"

## Argument

### I.   THE RULES CONTEMPLATE ADDITIONAL DISCOVERY

The Federal Rules require that a party obtain leave before serving interrogatories or taking depositions beyond the limits established by the Court.  See Fed. R. Civ. P. 33(a) (interrogatories); id. 30(a)(2)(A) (depositions).  The purpose of these limits is to allow the Court to "maintain a 'tighter rein' on the extent of discovery and to minimize the potential cost of [w]ide ranging discovery".  Rx USA Wholesale, Inc. v. McKesson Corp., 2007 WL 1827335, at *2-3 (E.D.N.Y. June 25, 2007) (quoting Whittingham v. Amherst Coll., 163 F.R.D. 170, 171-72 (D. Mass. 1995)).  The limits, however, are not intended to "prevent needed discovery," and courts have "broad[] discretion" to allow

EXHIBIT _4_ PAGE _28_

07209/2299353.1

1  additional discovery "based on the complexity" of the case at hand.  Notes of the

2  Advisory Committee (1993) to Fed. R. Civ. P. 26(b) & 33.  Leave to take additional

3  discovery "shall be granted" to the extent consistent with the principles set forth in Rule

4  26(b)(2).  Fed. R. Civ. P. 30(a)(2)(A), & 33(a).  Courts permit additional interrogatories

5  or depositions after considering whether:

6       (1) the discovery sought is unreasonably cumulative or duplicative, or is
7       obtainable from some other source that is more convenient, less
        burdensome, or less expensive; (2) the party seeking discovery has [had]
8       ample opportunity obtain the information sought; or (3) the burden or
        expense of the proposed discovery outweighs its likely benefit, taking into
9       account the needs of the case, the amount in controversy, the party's
10      resources, and the importance of the proposed discovery in resolving the
        issues.
11

12  Andamiro v. Konami Amusement of Am., 2001 WL 535667, at *2 (C.D. Cal. April

13  26, 2001) (depositions); see also Collaboration Prop. v. Polycom, Inc., 224 F.R.D.

14  473, 475 (N.D. Cal. 2004) (interrogatories).

15  **II.   MATTEL SHOULD BE GRANTED ADDITIONAL DEPOSITIONS**

16       Mattel should be permitted to take more than 24 depositions in these

17  consolidated cases.  This action contains three broad categories of significant claims,

18  each of which necessitates additional depositions:  Mattel's Bratz-related claims,

19  MGA's unfair competition claims, and Mattel's trade secret theft and RICO claims.

20  MGA's supplemental initial disclosures identified 86 witnesses with knowledge of

21  MGA's claims and defenses, 62 of whom are not Mattel employees.[20]  Mattel's

22  supplemental disclosures contain nearly double the number of witnesses with

23  knowledge, only 43 of whom are Mattel employees.[21]  Based on the million-and-a-half

24  pages that MGA has recently produced, Mattel is preparing third supplemental

25  _____

26  [20]   See MGA Entertainment, Inc.'s Supplemental Disclosures and MGA Entertainment
     (HK) Limited, MGAE de Mexico S.R.L. de C.V. and Larian's Initial Disclosures Under
27   Rule 26(a)(1), dated September 21, 2007, at 1-16, Proctor Dec., Ex. 18.
     [21]   See Proctor Dec., Ex. 19, at 3-19.

28                                          EXHIBIT _4_ PAGE _29_

1 disclosures which will name additional witnesses.  Mattel can rely on Rule 30(b)(6) to

2 obtain some information, but Mattel cannot effectively prosecute or defend these cases

3 with only 24 depositions.

4       **A.**    **Each Category of Claims Warrants More Depositions**

5           **1.**    **The Bratz Claims Require Additional Depositions**

6        The number of witnesses involved with the creation of Bratz or with knowledge

7 of Bryant's purported story about when he created – and the inconsistent stories that

8 MGA spun in the media – justify additional depositions.  For example, Bryant claims

9 that he created Bratz when he was not a Mattel employee.[22]  He initially identified three

10 people who he claimed could corroborate this story:  Tom and Janet Bryant (his

11 parents) and Richard Irmen (his partner).  Bryant's mother for the first time in this case

12 recently identified a fourth:  her friend, Jeanne Galvano.  Bryant will introduce their

13 testimony to vouch for his story, so Mattel obviously needs and is entitled to depose

14 them.  Similarly, Isaac Larian has repeatedly made conflicting, inconsistent statements

15 about Bratz's creation to the press, among others.[23]  Mattel thus far has deposed two of

16 the journalists who wrote those stories – depositions where Mattel's questioning lasted

17 far less than an hour.  Bryant's "alibi" witnesses and the reporters alone use up one-third

18 of Mattel's originally allotted 24 depositions.

19        In addition, at the time of the Scheduling Order, Bryant and MGA had said only

20 a handful of people worked directly on Bratz prior to 2002:  Bryant, Anna Rhee,

21 Mercedeh Ward, Margaret Leahy, Paula Garcia and unidentified people in Hong

22 Kong.[24]  In a recent supplemental interrogatory response, MGA identified 11 more

23 people who worked on the first Bratz dolls, including Sarah Halpern, Veronica Marlow,

24

25    [22]   Bryant Dep. Tr. at 140:9-141:8, Proctor Dec., Ex. 20.
   [23]   Proctor Dec., Ex. 21.

26    [24]   See Bryant's Objections and Responses to Second Set of Interrogatories

27 Propounded by Mattel, Inc., at 4, Proctor Dec., Ex. 22; MGA's Response to Mattel's
Second Set of Interrogatories, at 4:17-20, Proctor Dec., Ex. 23.

28

EXHIBIT 4 PAGE 30

07209/2299353.1

1  Cecilia Kwok, David Dees, Stephen Tarmichael, Edmond Lee, Franki Tsang, Samuel

2  Wong, Stephen Lee, William Ragsdale and Wendy Ragsdale (and Mattel now knows

3  that even this list is incomplete).[25]  This list does not include anyone involved in early

4  sales, marketing, product testing or advertising of Bratz.

5      When a deponent possesses unique information, courts generally grant leave for

6  additional depositions because they do not undermine the key purpose of the limits –

7  preventing duplicative discovery.  See, e.g., Bromgard v. Montana, 2007 WL 1101179,

8  at *2 (D. Mont. April 11, 2007).  Courts deny additional depositions when deponents

9  are likely to have common, interchangeable information.  And, even in such instances,

10  courts may allow a limited number or sequential depositions to proceed.  See, e.g., Rx

11  USA, 2007 WL 1827335, at *3 (allowing additional deposition testimony on one but

12  not both individuals with generalized information).

13      Here, Mattel seeks depositions of witnesses who each have specific, unique

14  personal knowledge of the Bratz claims as well as about other claims in the case.  All of

15  them are third parties:

16  • Sarah Halpern -- worked on the patterns for the first Bratz dolls

17  • Margaret Leahy -- sculpted the first Bratz dolls and 4-Ever Best Friends

18  • Veronica Marlow -- worked on the first Bratz doll fashions as well on
19    products at issue in MGA's claims

19  • Elise Cloonan -- worked with Bryant on his Bratz pitch to MGA while both
20    were employed by Mattel

21  • Jesse Ramirez -- worked on molds for Bratz

22  • Jeanne Galvano -- alleged witness Bryant's mother recently claimed can
23    verify facts relating to Bratz's creation

23  • Stephen Lee -- Managing Director of MGA Hong Kong during development
24    of Bratz and other products at issue

25  _____

26  [25]  MGA's Third Supplemental Responses to Mattel's Second Set of Interrogatories, at
   4:1-6:3, Proctor Dec., Ex. 24; see Linker Dep. Tr. at 59:22-64:9, Proctor Dec., Ex. 25

27  (testifying that Paula (Treantafelles) Garcia and Bryant approached him and his partner,
   Liz Hogan, before Bryant left Mattel to work on Bratz).

28

EXHIBIT 4 PAGE 31

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

07209/2299353.1

1   • Cecilia Kwok – MGA Hong Kong employee principally involved with first Bratz dolls

2   • Farhad Larian – brother of Isaac Larian, who sued Isaac Larian and alleged, inter alia, that MGA was working on Bratz by early 2000 (months before MGA and Bryant claim to have met) when he was a part owner of MGA[26]

4   • Certain as yet unidentified attorneys who represented parties to disputes between Isaac Larian and Farhad Larian in which the creation of and value of Bratz was at issue

6   • Sandra Bilotto – sculptor who worked on Prayer Angel dolls at issue[27]

7   • Anne Wang – represented Bryant in negotiations with MGA while he was a Mattel employee that led to the agreement dated "as of September 18, 2000"[28]

9   • David Rosenbaum – represented MGA in negotiations with Bryant's first agreement with MGA[29]

11   • Christensen Glaser LLP – firm to which Victoria O'Connor faxed the MGA/Bryant agreement that Isaac Larian had ordered her to alter[30]

12   • Lucy Arant – lawyer with knowledge of MGA's first use of Bratz

13   • Mitchell Kamarck – former MGA counsel who responsible for patent applications, including those in which Isaac Larian had claimed to be the inventor of Bratz features that Bryant has since testified he created[31]

15   • Carol Witschell – lawyer who worked on MGA trademark applications and other trademark matters at issue

16   • Nana Ashong – former MGA employee who stated Bratz was created during Bryant's employment by Mattel[32]

18   • Larry McFarland – wrote MGA copyright registrations that stated the Bratz dolls were created during 2000 and that, after this suit was filed, MGA claimed were incorrect

20   • Eric Yip – MGA Hong Kong Sales Administrator in 2000 and 2001, when Bratz were created and first shipped to Bandai in Spain[33]

---

[26]   See Larian Dep. Tr. at 159:17-160:14, Proctor Dec. Ex. 54.
[27]   Brode Dep. Tr. at 303:9-316:16, Proctor Dec. Ex. 55; Dep. Exhs. 607, 608, 609, Proctor Dec., Ex. 56.
[28]   See Bryant Tr. at 39:6-42:18, Proctor Dec. Ex. 60.
[29]   See O'Connor Dep. Tr. at 94:1-95:21, Proctor Dec., Ex. 61.
[30]   See O'Connor Tr. 17:3-19:19, Proctor Dec., Ex 75.
[31]   See Armstrong Dep. Tr. at 10:7-12, 26:16-23, 244:18-21, Proctor Dec. Ex. 62.
[32]   See Brode Tr. at 87:13-88:11, Proctor Dec., Ex. 55.
[33]   See Harris Dep. Tr. at 121:16-122:17, Proctor Dec. Ex. 63.

EXHIBIT 4 PAGE 32

1    • Gentle Giant Studios – created relevant moldings and casts while Bryant was
2      still employed at Mattel[34]

3    • Christopher Palmeri – *Business Week* reporter who wrote that Larian
       purportedly "got the idea for Bratz after seeing his own kids run around in
4      navel-bearing tops and hip-huggers"[35]

5    • Jeff Weiss – *San Fernando Valley Business Journal* reporter who quoted
       another inconsistent Larian statement concerning the origin of Bratz[36]

6    • Kickapoo High School – where Bryant allegedly found inspiration for Bratz
7      and author of documents refuting that claim

8    • LA Focus – conducted Bratz focus groups, including focus groups that MGA
       denies occured

9    • Joyce Ng – independent contractor who moderated Bratz focus groups

10   • Rachel Harris – former MGA employee who worked on initial Bratz
11     packaging as well as on other packaging which MGA's claims rest on

12   • Peter Marlow – spouse of Veronica Marlow who negotiated millions of
       dollars in payments for Bratz from Bryant on her behalf

13   • Andreas Koch – former MGA manager who has knowledge of Bryant's initial
14     contacts with MGA

15   • Kami Gillmour – former Mattel and MGA employee who has knowledge
       regarding Paula Garcia's employment with MGA, confidential information
16     taken from Mattel and MGA's projects at issue

17   • Mercedeh Ward – engineer on initial Bratz dolls and author of emails
       reflecting the use of Mattel property in its creation

18   • Moss Adams – accounting firm with knowledge of MGA's profits and
19     distributions thereof to Larian (who owns 90% of MGA's shares)

20   • Wachovia Bank – bank identified as being involved in early Bratz financing
       and knowledgeable about MGA's net worth or value

21   • Amy Myers – formerly with MGA and has knowledge of Prayer Angels
22     project that MGA has raised as a defense

23   • Two or three parties MGA sued for infringement of Bratz and whose
       identities are not yet known to Mattel – they will have knowledge of the dolls
24     and other properties MGA has sued on in the past, which is relevant to
       refuting MGA's current claims that earlier iterations of Bratz products look
25     nothing like subsequent iteration of Bratz products

26   _____

27   [34] See Proctor Dec., Ex 72.
     [35] Proctor Dec. Ex. 52.
28   [36] Proctor Dec. Ex. 53.

EXHIBIT _4_ PAGE _33_

07209/2299353.1

-11-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

1    Further, many of these same witnesses are also knowledgeable as to MGA's

2  claims of unfair competition and Mattel's trade secret and RICO claims, as they

3  continued to work with MGA in later years.  For example, MGA has already identified

4  Halpern, Kwok, Leahy, Marlow, Lee, Ward and Yip as individuals involved with the

5  products at issue.[37]  Likewise, Ramirez continued working on molds for subsequent

6  Bratz dolls through at least 2005,[38] while   Kamarck,[39] Witschell,[40] Arant, and

7  McFarland[41] were involved in subsequent Bratz-related intellectual property matters.

8  As such, testimony from these witnesses is essential for both phases of trial.

9          **2.    Mattel's Trade Secret and RICO Claims and MGA's Unfair**

10             **Competition Claims Require Additional Depositions**

11    Mattel has sued MGA for misappropriating Mattel trade secrets and RICO

12  violations by, among other things, stealing thousands of pages of Mattel confidential

13  information in the United States, Canada and Mexico.[42]  Mattel identified Ron Brawer,

14  Janine Brisbois, Gustavo Machado, Mariana Trueba Almada and Pablo Vargas as

15  individuals who misappropriated Mattel trade secrets.  The only person Mattel has been

16  able to depose on its counterclaims is Ms. Bacon, who coordinated MGA's recruiting of

---

[37]    See MGA's Fourth Supp. Response to Interrogatory No. 1 of Mattel's First Set of Interrogatories Re Claims of Unfair Competition, at 10-12, 18, 19, Proctor Dec., Ex. 27.

[38]    See, e.g., Proctor Dec., Ex. 69 (showing various Bratz-related work in 2005).

[39]    See, e.g., Armstrong Tr. 26:5-23, Proctor Dec., Ex. 62 (discussing involvement in Bratz-related patent applications through 2004).

[40]    See, e.g., Proctor Dec., Ex. 70 (discussing involvement with Bratz registrations).

[41]    See, e.g., Proctor Dec., Ex. 71 (discussing involvement with Bratz licensing).

[42]    Mattel's Counterclaims ¶¶ 37-54, 70-76, Proctor Dec., Ex 16.

EXHIBIT _4_ PAGE _34_

1   Mattel employees.[43]   Accordingly, Mattel seeks leave to take the depositions of the

2   following witnesses on such claims:[44]

3   • Ron Brawer – has knowledge of stolen Mattel trade secrets in the U.S.

4   • Janine Brisbois – former Mattel employee who stole Mattel trade secrets

5   • Gustavo Machado – former Mattel employee who stole Mattel trade secrets

6   • Mariana Trueba – former Mattel employee who stole Mattel trade secrets

7   • Pablo Vargas – former Mattel employee who stole Mattel trade secrets

8   • Ricardo Abundis – has knowledge of stolen Mattel trade secrets in Mexico

9   • Jorge Castilla – believed to have stolen Mattel trade secrets in the U.S.

10   • Nic Contreras – believed to have knowledge of stolen Mattel trade secrets

11   • Dan Cooney – believed to have knowledge of stolen Mattel trade secrets

12   • Susan Kuemmerle – believed to have knowledge regarding stolen Mattel

13       trade secrets in Mexico

14   • Shirin Salemnia – believed to have knowledge of stolen Mattel trade secrets

15   • MGAE de Mexico – defendant to trade secret theft and RICO claims

16   • MGA Entertainment, Inc. – defendant

17       Further, MGA has accused Mattel of trade dress infringement and dilution and

18   unfair competition in connection with more than 440 products.[45]   MGA has identified

19

20   [43]   Bacon Dep. Tr. at 12:12-13, 51:22-52:17, 86:8-12, and 114:19-116:9, Proctor Dec.,
        Ex. 28. And even with respect to Ms. Bacon's deposition, MGA attempted to prevent her
21       from testifying on the grounds that Mattel had not noticed her deposition individually, but
22       only as a Rule 30(b)(6) designee. See Proctor Dec., Ex. 29.
        [44]   These are those who Mattel has identified to date. Mattel anticipates that there may
23       be more who will need to be deposed in connection with MGA's unfair competition claims
        and Mattel's counterclaims because (a) it continues to review the over one-and-a-half
24       million pages of documents that MGA produced in the past month and (b) MGA, to date,
25       has failed to identify how it anticipates defending Mattel's counterclaims or which
        documents or witnesses it will rely upon to do so, including by its ongoing failures to
26       answer Mattel contention interrogatories related to its defenses to Mattel's counterclaims.
27   [45]   MGA's Supp. Response to Interrogatory No. 2 Of Mattel, Inc.'s First Set of
        Interrogatories Re Claims of Unfair Competition, at 5-19, Proctor Dec., Ex. 26.

28
                                                            EXHIBIT   4   PAGE 35

1 | 117 witnesses with knowledge of the creation or promotion of those products,[46]
2 | including many of the persons listed above. Mattel has taken the depositions of only
3 | six of those 117 named individuals, and has not yet been able to depose two of them,
4 | Bryant or Larian, regarding the unfair competition allegations.

5 | **B.   Mattel Needs Additional Depositions Because the Integrity of MGA's**
6 | **and Bryant's Preservation of Documents Is At Issue**

7 | Mattel also is entitled to inquire about MGA's and Bryant's preservation and
8 | production of evidence. For example, as MGA's designee on document preservation
9 | testified, MGA had only obtained off-site documents as of the summer of 2007 and had
10 | searched none of these documents for responsive documents, even though the Court
11 | had ordered MGA to produce them and MGA had previously represented that its
12 | production was complete.[47] Further, MGA's designee on MGA's electronic document
13 | preservation and collection testified that MGA's only search of such information was a
14 | single search of Isaac Larian's e-mails in 2005, nothing more.[48] MGA's designee
15 | repeatedly testified that Joe Tiongco, who Mattel seeks to depose, has more
16 | knowledge.[49] In the same vein, Mattel seeks to depose Daphne Gronich, who provided
17 | the preservation declaration on MGA's behalf.[50] In addition, there are serious issues
18 | about Bryant's hard drives, including because of Bryant's prior counsel's conflicting
19 | representations about their collection and preservation – and indeed even their
20 | existence. Mattel therefore seeks testimony on these subjects.[51] Bryant's belated
21 | revelation that he installed and used the "Evidence Eliminator" program on these drives

---

[46]   MGA's Fourth Supp. Resp. Unfair Comp. No. 1, at 5-16, Proctor Dec., Ex. 27.
[47]   9/24/07 Stip. and Order, Proctor Dec., Ex. 30; Tonnu Dep. Tr. at 612:13-612:15,
620:14-621:21, Proctor Dec., Ex. 31; 8/13/07 Order, at 14:18-22, Proctor Dec., Ex. 32.
[48]   See Lockhart Deposition Tr. at 265:1-11, Proctor Dec., Ex. 33.
[49]   Id. at 116:2-14, 150:25-151:5, 158:10-15. 258:17-259:9, 265:1-11, 266:12-267:5.
[50]   See Dec. of Daphne Gronich in Response to Court's Request for Information
Regarding Document Preservation, dated September 10, 2007, Proctor Dec., Ex. 34.
[51]   Notice of Deposition of Littler Mendelson Pursuant to Federal Rule of Procedure
30(b)(6), dated September 6, 2007, Proctor Dec., Ex. 35.

EXHIBIT _4_ PAGE _36_

-14-

1  underscores all the more the legitimacy of full and fair discovery into the integrity of

2  his drives.

3      **C.    Mattel Seeks Leave to Take 30(b)(6) Depositions On Non-Duplicative**

4            **Topics**

5      MGA objected, and the Discovery Master has ruled, that a corporate party who

6  has been deposed pursuant to a Rule 30(b)(6) notice cannot be deposed pursuant to a

7  subsequent notice absent Court leave.[52]  Mattel has not propounded a Rule 30(b)(6)

8  Notice of Deposition on MGA or MGAE de Mexico related to either MGA's unfair

9  competition claims or Mattel's counterclaims.   Mattel's Notices of Deposition—

10 attached as Exhibits A and B—contain topics of testimony which relate to those

11 claims.[53]  Mattel has not previously served any Rule 30(b)(6) Notice on MGAE de

12 Mexico at all, and the topics in the additional Notice to MGA are not duplicative of

13 those in Mattel's prior Notices to MGA.[54]  Mattel respectfully submits that it should be

14 granted leave to proceed with those depositions.

15     **D.    Mattel Meets The Requirements for Additional Discovery**

16     When a deponent possess unique information, courts will generally allow leave

17 for additional depositions because they do not undermine the key purpose of the

18

19 [52]  9/25/07 Order Re Mattel's Motion to Compel MGA to Produce Witnesses Pursuant
   to Third Notice of Deposition Under 30(b)(6), Proctor Dec., Ex. 36.

20 [53]  See Exhibits A & B. Mattel's Fourth Notice of Deposition is far less than
   burdensome compared to MGA's recently served Notice of Deposition, which contains

21 more than 80 topics, each of which has many sub-parts. See MGA Entertainment, Inc.'s
   Notice of Deposition of Mattel, dated September 5, 2007, Proctor Dec., Ex. 40.

22 [54]  Mattel's First Notice of Deposition was narrowly tailored to obtain information

23 related to MGA's contentions that Bryant and Anna Rhee had worked on Prayer Angels,
   not Bratz, while Bryant employed by Mattel. Proctor Dec., Ex. 37. Mattel's Second

24 Notice sought information related to Bratz, including Bratz revenues, costs and profits, and

25 evidence preservation and collection. Proctor Dec., Ex. 38. Mattel's Third Notice sought
   follow-up information on matters that had arisen in discovery, including with respect to

26 specific electronic evidence, specific individuals who worked on the first Bratz dolls,

27 payments made to witnesses or parties, and statements to reporters related to Bratz's
   creation and inspiration. Proctor Dec., Ex. 39.

28                                              EXHIBIT _4_ PAGE _37_

1  limits—preventing duplicative discovery. See, e.g., Bromgard, 2007 WL 1101179, at
2  *2 (D. Mont. April 11, 2007).  As explained above, Mattel seeks depositions of
3  individuals who each have specific, unique knowledge of the underlying events.

4       Without additional depositions, Mattel cannot discover the full extent of MGA's
5  wrongdoing or adequately prepare to defend against MGA's claims.  Mattel seeks a
6  declaration of ownership of Bratz works that Bryant created during his Mattel
7  employment and their derivatives – property that MGA and Bryant have claimed are
8  worth hundreds of millions of dollars and perhaps more.  Mattel has accused MGA of
9  stealing thousands of pages of Mattel's most valuable trade secrets, including product
10 lines, and strategic plans.  MGA has accused Mattel of infringing hundreds of MGA
11 products, alleging "billions" of dollars in damages.  In light of the magnitude of this
12 case, the burden or additional expense of these depositions pales in comparison to
13 Mattel's need to fully prepare to try this case.  As set forth above, the depositions that
14 Mattel seeks by this motion are not collateral, but go to the heart of its claims and
15 defenses.  See, e.g., Rx USA, 2007 WL 1827335, at *2-3 (additional depositions
16 warranted in a dispute between large corporations, given the complexity of the issues
17 and the parties' resources).

18 **III.  THE COURT SHOULD GRANT LEAVE WITH RESPECT TO**
19 **MATTEL'S INTERROGATORIES**

20      Two categories of interrogatories are involved here:  first, Mattel's proposed
21 additional interrogatories that it seeks leave to serve; and, second, interrogatories which
22 Mattel has already served on defendants.

23      **A.   Mattel Should Be Allowed To Propound Additional Interrogatories**
24      Mattel seeks leave to propound additional interrogatories related to MGA's unfair
25 competition claims and Mattel's counterclaims, and MGA's evidence collection and
26 preservation.  To properly prepare for trial, Mattel seeks leave to serve interrogatories
27 requiring defendants to identify the facts, documents and witnesses it will use to prove
28 its claims, defenses and damages.  Mattel's proposed interrogatories thus seek to

EXHIBIT 4 PAGE 38

1  identify which specific Mattel designs or products defendants allege infringe on

2  defendants' designs[55] and trade dress[56] and the facts supporting those legal claims.[57]

3  Additionally, Mattel seeks to determine defendants' position regarding their

4  misappropriation of Mattel documents, including whether defendants contend that no

5  such documents were obtained improperly,[58] that the information contained therein has

6  no value as a trade secret,[59] that the information had been publicly disclosed,[60] that

.7  defendants did not use or disclose such information,[61] that any such disclosure neither

8  benefited defendants nor harmed Mattel,[62] and that defendants have a right to possess,

9  use or disclose any such documents in their possession.[63] These are essential elements

10  of the trade secret theft claim.  See Cal. Civ. Code § 3426.1.  Finally, Mattel seeks

11  information related to MGA's efforts to collect and preserve evidence relevant or

12  potentially relevant to this action.[64]

13       The proposed interrogatories are consistent with the factors set out in Rule 26(b)

14  and should be permitted.  They seek disclosure of specific relevant facts regarding

15  topics which have not been the subject of prior interrogatories.  The majority of Mattel's

16  prior interrogatories focused on issues related to creation and ownership of Bratz.[65]

17  Only Mattel's set of interrogatories relating to MGA's unfair competition claims could

18

19

20  [55]  See Mattel's Proposed Interrogatory No. 51.
    [56]  See Mattel's Proposed Interrogatory No. 52.

21  [57]  See Mattel's Proposed Interrogatories Nos. 53, 54, 55.
    [58]  See Mattel's Proposed Interrogatory No. 56.

22  [59]  See Mattel's Proposed Interrogatory No. 57.
    [60]  See Mattel's Proposed Interrogatory No. 58.

23  [61]  See Mattel's Proposed Interrogatory No. 59.

24  [62]  See Mattel's Proposed Interrogatory No. 60.
    [63]  See Mattel's Proposed Interrogatory No. 61.

25  [64]  See Mattel's Proposed Interrogatories Nos. 63-64.

26  [65]  See First Set to Bryant, Proctor Dec., Ex 8; First Set to MGA, Proctor Dec., Ex. 9;

27  Second Set to Bryant, Proctor Dec., Ex. 11; Second Set to MGA, Proctor Dec., Ex. 10;
    Third Set Revised, Proctor Dec., Ex. 45.

28  EXHIBIT __4__ PAGE 39

07209/2299353.1

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

1 | conceivably overlap with the proposed interrogatories.[66] However, the interrogatories
2 | already propounded focused on issues distinct from the proposed interrogatories—
3 | specifically, facts relating to MGA employees involved with certain MGA products,[67]
4 | MGA's alleged injuries,[68] MGA's allegations regarding Mattel's conduct with certain
5 | third-parties in the industry[69] and MGA's allegations of product confusion.[70] These are
6 | not duplicated in the interrogatories which Mattel is proposing.

7 |      Finally, the benefits of the proposed interrogatories outweigh any added burden,
8 | as these type of facts are properly revealed through interrogatories, and the information
9 | sought by the interrogatories will advance this litigation and avoid surprise at trial.

10 | **B.    The Court Should Grant Leave With Respect To Mattel's**
11 |     **Outstanding Interrogatories That Defendants Will Not Answer**

12 |      To date, Mattel has served 50 interrogatories on the defendants.  Yet, by
13 | objecting to some of those previously served interrogatories served as being compound,
14 | defendants refuse to answer on the purported ground that they exceed the Court's
15 | limit.[71]  Although defendants are wrong, the Court should eliminate further delay and
16 | quarreling by defendants by simply granting Mattel leave to serve them regardless of
17 | how they are counted.

18 |      Mattel has been seeking answers to these basic interrogatories for over five
19 | months now.  To justify their wholesale refusal to answer them, defendants claimed
20 | they exceeded the Court's limit on the number of interrogatories.  Mattel moved to
21 | compel, defendants moved for a protective order, and in a September 5, 2007 Order
22 | Judge Infante provided guidance on the counting of the interrogatories.  Mattel then

---

[66]  See First Set Re Unfair Comp., Proctor Dec., Ex. 12.
[67]  See id. No. 1.
[68]  See id. No. 4.
[69]  See id. Nos. 5, 8, 9, and 10.
[70]  See id. No. 7.
[71]  See Bryant's Objections to Revised Third Set, Proctor Dec., Ex. 73; Bryant's Objections to Amended Fourth Set, Proctor Dec., Ex. 74.

EXHIBIT _4_ PAGE _40_

-18-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

1  propounded revised interrogatories that were consistent with the Discovery Master's

2  Order.

3       Defendants nevertheless claim, once again, that Mattel exceeds its 50 allotted

4  interrogatories.  Not only is this without merit,[72] but it is clear that defendants rehash

5  this objection for no other reason than to obstruct.  Bryant refuses to answer any

6  interrogatory past No. 27 because "Mattel has propounded more than 50

7  interrogatories."[73]  And, even the minimal answers he gave to others amply confirms

8  that he continues to stonewall on even basic discovery in this case.  MGA makes

9  essentially the same objection.[74]  Accordingly, through nothing more than creatively

10

11  [72]  The essence of the defendants' objection is that Mattel's revised interrogatories are
compound interrogatories because they improperly require them to respond to individual

12  interrogatories with "different and distinct facts."  See Bryant's Objections to Revised
Third Set, at 18; Bryant's Objections to Amended Fourth Set, at 4.  For example,

13  defendants frivolously object to having to identify both the name of a product and its
corresponding product number.  But Judge Infante ruled on this matter, explaining that

14  interrogatories "'containing subparts directed at eliciting details concerning [a] common

15  theme should be considered a single question,'" while interrogatories on "discrete issues"
should be treated as multiple interrogatories.  Order re Mattel's Interrogs., at 5 (quoting 8A

16  Wright & Miller, Federal Practice & Procedure § 2168.1 (2d ed. 1994)); see also id. at 7.

17  The scope of Mattel's revised interrogatories is no different than those which Judge Infante
ruled were permissible, as in both instances the "subparts are related and directed to the

18  underlying details of a specifically identified" subject.  See id.  Judge Infante specifically

19  observed that under the Advisory Committee notes,  interrogatories which required distinct
factual answers relating to the same subject—e.g., the time, place, persons present, and

20  contents of a particular communication—should be treated as a single interrogatory.  See

21  id.  Mattel's revised interrogatories are not compound, and defendants' arguments to the
contrary are groundless:  the fact that an interrogatory answer requires different facts does

22  not convert it into a compound interrogatory on different issues.

23  [73]  Bryant's Objections to Revised Third Set, at 7.  Bryant then makes the same
objection to the remaining 23 interrogatories.

24  [74]  See MGA's Objections to Revised Third Set, at 8, Proctor Dec., Ex. 76; MGA (HK)
Ltd.'s Objections to Revised Third Set, at 17, Proctor Dec., Ex. 77; MGAE de Mexico's

25  Objections to Revised Third Set, at 8, Proctor Dec., Ex. 78; Larian's Objections to Revised
Third, at 8, Proctor Dec., Ex. 79; MGA's Objections Amended Fourth Set, at 7, Proctor

26  Dec., Ex. 80; MGA (HK) Ltd.'S Objections to Amended Fourth Set, at 7-8, Proctor Dec.,

27  Ex. 81; MGAE de Mexico's Objections to Amended Fourth Set, at 8, Proctor Dec., Ex. 82;
Larian's Objections to Amended Fourth Set, at 7, Proctor Dec., Ex. 83.

28

EXHIBIT  4  PAGE  41

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

07209/2299353.1

1  counting a few interrogatories as a multitude, defendants manufacture grounds to delay
2  yet more and refuse obviously appropriate discovery.  To the extent that defendants
3  have substantive objections to specific interrogatories, these issues may be properly
4  heard before the Discovery Master.  But defendants should not be permitted to serially
5  raise the same objection to a few specific interrogatories in order to delay for yet more
6  months in responding to the bulk of Mattel's interrogatories.  Mattel requests that this
7  Court cut through this issue by granting Mattel leave, to the extent needed, to serve
8  each of the interrogatories that have been served to date regardless of how they are
9  counted.

10  **IV.   THE COURT SHOULD ALLOW ADDITIONAL TIME FOR THE**
11  **BRYANT DEPOSITION**

12          On September 28, 2007, the Discovery Master issued an Order Granting in Part
13  Mattel's Motion for Additional Time to Depose Carter Bryant for All Purposes,
14  granting Mattel seven additional hours to depose Bryant (in addition to 2 hours
15  previously granted based on counsel's dozens of improper instructions not to answer at
16  the Bryant deposition), but denying Mattel the 21 hours that it sought.[75]  Mattel
17  respectfully submits that the facts, as determined by the Discovery Master, justify far
18  more than seven additional hours, and the Court should grant additional time.

19          Mattel does not contest the Discovery Master's factual findings in any way.  To
20  the contrary, the underlying factual findings were plainly correct.  As Judge Infante
21  noted, Mattel's deposition of Bryant in 2004 took place before MGA even brought its
22  unfair competition claims and before Mattel filed its counterclaims, and Mattel had no
23  opportunity to depose Bryant on either.[76]  Thus, as Judge Infante justifiably found:

24          •    The new claims and defenses that were added to the case after Bryant's
                 deposition justify additional deposition time. . . . Without question,
25

26  [75]  Order Granting in Part Mattel's Motion for Additional Time to Depose Carter
       Bryant for All Purposes (Sept. 28, 2007) ("Order re Additional Time"), at 8:7-13, Proctor
27  Dec., Ex. 43.
       [76]  Id. at 5:2-10.
28

07209/2299353.1

EXHIBIT _4_ PAGE _42_

1    Bryant is a critical witness regarding MGA's unfair competition claims and Mattel has not had an opportunity to depose him on such claims.[77]

2    •    In addition, Mattel filed a counterclaim against Bryant, MGA, and other defendants in 2007, asserting thirteen different claims . . . . Bryant filed an answer asserting over twenty affirmative defenses. Mattel has not had an opportunity to depose Bryant on any of these claims or defenses.[78]

5

6    •    Bryant is the central figure in this litigation and arguably the most important witness *for virtually every claim in the case.* No other witness in the case has his depth and breadth of relevant information.[79]

7    Bryant and MGA cannot dispute any of this. In interrogatory responses, MGA

8    lists Bryant as a person directly involved with and knowledgeable about the allegedly

9

10   infringed MGA products that MGA has put at issue.[80] MGA's responses to Mattel's

11   interrogatories also state that the entire Bratz line is the subject of MGA's claims, and

12   an MGA witness has declared that there are more than 200 Bratz products.[81] Moreover,

13   Paula Garcia, MGA's Vice President of Product Design and Development, has declared

14   that she and Bryant are "the *only* people who know what the concept is and who see

15   the early product drawings" with respect to many Bratz products.[82] That is particularly

16   important because many of both Mattel's *and* MGA's claims will turn on the source and

17   timing of these products at issue. As the Court knows, Mattel's defenses to MGA's

18   infringement claims rest, in part, on the fact that it was MGA which stole and copied

19   Mattel products through its trade secret thefts. Testimony on the origins of those MGA

20   products and when they were created is indispensable.

21

22   [77]  Id. at 5:4-5.
23   [78]  Id. at 5:6-10.
     [79]  Id. at 5:15-17 (emphasis added).
24   [80]  MGA's Responses to Mattel's First Set of Interrogatories Re Claims of Unfair Competition, dated January 19, 2007, Response No. 1, at 6:9, Proctor Dec., Ex. 57.
25   [81]  See Declaration of Patricia Perrier in Support of MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz Ownership in Phase One, dated May 25, 2007,
26   at ¶ 2, Proctor Dec., Ex. 58; MGA Sup. Resp. Unfair Comp. No. 2, Proctor Dec., Ex. 26.
27   [82]  Declaration of Paula Garcia in Support of MGA's Opposition to Mattel's Motion to Compel, dated February 9, 2007, ¶ 6 (emphasis in original), Proctor Dec., Ex. 59.
28

EXHIBIT 4 PAGE 43

-21-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

1    Bryant is also obviously a crucial witness on Mattel's copyright infringement,

2   RICO and other counterclaims, which raise a host of new issues Bryant has not been

3   deposed on. According to MGA, Mattel's copyright infringement claim against Bryant

4   alone relates to "*hundreds* of products."[83]  Bryant was also personally involved, either

5   as sender or recipient, in approximately 100 of the predicate acts of mail and wire fraud

6   alleged by Mattel. [84]  Mattel is entitled to question Bryant about these and all the other

7   issues presented for the first time by Mattel's counterclaims and Bryant's answer.

8        Moreover, as Judge Infante found, "new evidence justifies additional time to

9   depose Bryant."[85]  Judge Infante noted that Bryant's deposition took place before "98

10  percent of Bryant's and MGA's collective document production took place"[86] – and that

11  did not even reflect the more than a million-and-a-half pages, that MGA has produced

12  in recent weeks.[87]  In truth, *99.9%* of defendants' production in this case has occurred

13  only after Bryant's 2004 deposition.  Thus, Mattel has had no opportunity to examine

14  Bryant on the vast bulk of the evidence, whether relevant to new claims or the original

15  ones.  This includes, for example:

16      •   Bryant's fee agreements with MGA, which reflect that MGA is paying
            Bryant's legal fees at its discretion, and which were withheld by Bryant
17          even in the face of prior court orders;

18      •   Bratz design drawings produced by Bryant for the first time this year,
            only after being ordered, which bear handwritten dates of September
19          19, 1999, at time when Bryant was employed by Mattel;

20      •   Bryant's desktop hard drive, which reveals his use of "Evidence
            Eliminator" software, which was not produced until compelled this
21          year.

22  _____

    [83]   See MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz
23  Ownership in Phase One at 3:12-19.
    [84]   See Mattel's Second Amended Answer & Counterclaims, Exhibit C.
24  [85]   Order re Additional Time at 5:20 (font altered), Proctor Dec., Ex. 43.
    [86]   Id. at 5:24-27, Proctor Dec., Ex. 43.  Notably, Judge Infante calculated the 98
25  percent number based on MGA's production of 157,000 pages of documents as of the close
    of briefing in late August.  Since that time MGA has produced over a million-and-a-half
26  pages of documents.  See Proctor Dec. ¶ 45.
    [87]   See Proctor Dec. ¶ 45.
27

28                                          EXHIBIT _4_ PAGE _44_

- Original Bratz drawings, which Bryant did not make available for inspection until this summer, after being ordered to do so, notwithstanding his promise that he would produce such documents at the 2004 deposition.

- A fax from Bryant to David Rosenbaum, outside counsel for MGA, dated September 14, 2000, wherein Bryant stated that he could not ask Mattel's Human Resources any more questions about his contract with Mattel "without risking suspicion."

- October 10, 2000 e-mails between Isaac Larian, Victoria O'Connor and Paula Garcia (formerly Treantafelles), reflecting that Bryant worked on Bratz with MGA "on average about 4 hours a day," starting at least six weeks before he left Mattel.

- Invoices showing that Veronica Marlow, a key third party, billed MGA for 169 hours of development services on Bratz that were performed before Bryant left Mattel.

The list of new evidence that was requested by Mattel before Bryant's deposition but first produced by defendants only later literally goes on and on. As Judge Infante ruled, "a witness may be re-deposed with respect to . . . new developments" in a case, including new documents such as these, as well as new claims.[88]

Despite his factual findings, Judge Infante ruled that Mattel is only entitled to an additional seven hours of deposition. Previously Judge Infante had gave Mattel two additional hours as a result of the improper instructions and objections by counsel at Bryant's deposition.[89] So, under Judge Infante's ruling, Mattel has been limited to only seven hours to depose Bryant – the "most important witness for virtually every claim in the case"[90] – on MGA's claims, Mattel's counterclaims, the hundreds of MGA and Mattel products now at issue about which Bryant has unique knowledge, and the vast amounts of recently produced new evidence. This is unfair. The ruling that Mattel be

[88] Order re Additional Time at 4:20-24 (quoting Fresenius Med. Care Hldgs, Inc. v. Roxane Labs., Inc., 2007 WL 764302 (S.D. Ohio 2007)), Proctor Dec., Ex. 43.

[89] Order re Additional Time at 7:24-25, Proctor Dec., Ex. 43; see Order Granting In Part And Denying In Part Mattel's Motion To Overrule Instructions Not To Answer During The Deposition Of Carter Bryant (March 7, 2007), Proctor Dec., Ex. 44.

[90] Id. at 5:15-17.

EXHIBIT 4 PAGE 45

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

07209/2299353.1

1  granted only seven additional hours is clearly erroneous given Bryant's singular

2  importance, the magnitude of this case and the tectonic shift of claims.

3      Also, based on <u>Rule</u> 30's "presumptive one day, seven-hour limitation on

4  depositions," Judge Infante awarded Mattel a total of 7 hours to depose Bryant on all of

5  MGA's claims and all of Mattel's counterclaims.[91]  It is simply impossible to conduct a

6  deposition on those claims – which had not even been filed when Bryant was first

7  deposed – in that amount of time.  Judge Infante apparently awarded Mattel no

8  additional time based on new evidence, even though 99.9% of defendants' production

9  has taken place since the 2004 deposition.  That effectively punishes Mattel for

10  defendants' discovery misconduct.  Mattel requested defendants' documents before the

11  deposition took place; defendants withheld them at their own peril, not at Mattel's.[92]

12  Mattel is entitled to a fair amount of time to depose the key witness in the case on the

13  new claims and evidence he has not been deposed on.  The Court should afford that,

14  and grant Mattel a total of 21 hours for the deposition.[93]

15

16

---

17  [91]  <u>Id.</u> at 8:10-13.

    [92]  <u>See, e.g.,</u> <u>Fresenius Medical Care Holdings, Inc. v. Roxane Laboratories, Inc.</u>, 2007
18  WL 764302, at *2 (S.D. Ohio 2007) (originally cited by Bryant to Judge Infante) (allowing
19  second deposition because defendant failed to produce requested documents prior to first
    deposition); <u>Robins v. Scholastic Book Fairs</u>, 928 F. Supp. 1027, 1036 (D. Or. 1996) ("the
20  second set of depositions of these individuals was necessary because they had to be
    questioned about additional documents that Defendant produced after the first set of
21  depositions"); <u>Ritchie v. U.S.</u>, 2004 WL 1161171, at *3 (N.D. Cal. 2004) ("when further
22  evidence linking [witness to the project in dispute] subsequently came to light this court
    permitted plaintiff to depose [the witness] a second time").
23  [93]  In the alternative, the Court should exercise its discretion to enlarge Mattel's time
24  to depose Bryant.  The Court previously extended MGA's deadlines to produce documents
    that it was compelled to produce even though Judge Infante had specifically *rejected*
25  MGA's request for additional time to comply and despite MGA's failure to show there was
    any error in that ruling.  Here, there can be no dispute that the Court has the right to ensure
26  that the parties receive fair discovery, proportionate to the magnitude and complexity of
27  the case, and that trial in this matter is conducted without undue surprises which will cause
    prejudice and waste the time of the Court and the jury.
28

EXHIBIT __4__ PAGE _4C_

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**Conclusion**</u>

For the foregoing reasons, Mattel respectfully requests that the Court grant Mattel's motion for leave.

DATED: November 19, 2007        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By Jon Corey /s/
   Jon Corey
   Attorneys for Mattel, Inc.

EXHIBIT 4 PAGE 47

-25-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

**Exhibit A**

EXHIBIT __4__ PAGE __48__

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2     (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
    Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
6   Los Angeles, California  90017-2543
  Telephone:  (213) 443-3000
7   Facsimile:  (213) 443-3100

8   Attorneys for Mattel, Inc.

9             UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                EASTERN DIVISION

12

13   CARTER BRYANT, an individual,       CASE NO. CV 04-9049 SGL (RNBx)

         Plaintiff,                Consolidated with
14                          Case No. CV 04-09059
         vs.                  Case No. CV 05-02727
15

16   MATTEL, INC., a Delaware corporation,   NOTICE OF DEPOSITION OF MGAE
                             DE MEXICO, S.R.L. DE C.V.
17          Defendant.         PURSUANT TO FEDERAL RULE OF
                             CIVIL PROCEDURE 30(B)(6)
18

19   AND CONSOLIDATED ACTIONS

20

21

22

23

24

25

26

27                          EXHIBIT _4_ PAGE _49_
28

07975/2280277.2

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that on _____, 200_ beginning at

3  9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of

4  defendant MGAE de Mexico, S.R.L. de C.V. at the offices of Quinn Emanuel

5  Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles,

6  CA 90017.  Pursuant to Fed. R. Civ. P. 30(b)(6), MGAE de Mexico, S.R.L. de C.V.

7  shall designate one or more officers, directors, managing agents or other persons

8  who consent to testify on its behalf concerning each of the topics set forth in

9  Exhibit A hereto.

10         PLEASE TAKE FURTHER NOTICE that the deposition will take

11  place before a duly authorized notary public or other officer authorized to administer

12  oaths at depositions, and will continue from day to day, Sundays, Saturdays and

13  legal holidays excepted, until completed.

14         PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

15  P. 30(b)(2), the deposition will be videotaped.  Mattel also reserves the right to use

16  Livenote or other technology for real-time transcription of the testimony.

17

18  DATED: December__, 2007        QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES, LLP
19

20                                 By_____
                                       Jon Corey
21                                     Attorneys for Mattel, Inc.

22

23

24

25

26

27                                              EXHIBIT _4_ PAGE _50_

28

07975/2280277.2

-1-
NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

## EXHIBIT A

1.    "YOU," "YOUR" or "MGA" means MGAE de Mexico, S.R.L. de C.V., any of its current or former employees (including but not limited to MACHADO, TRUEBA and VARGAS), officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.    "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

3.    "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or DESIGNS or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.  Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

EXHIBIT _4_ PAGE _51_

0797S/2280277.2

-2-
NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1         4.   "DESIGN" or "DESIGNS" means any and all representations,

2 whether two-dimensional or three-dimensional, and whether in tangible, digital,

3 electronic or other form, including but not limited to all works, designs, artwork,

4 sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

5 diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

6 practice, developments, inventions and/or improvements, as well as all other items,

7 things and DOCUMENTS in which any of the foregoing are or have been

8 expressed, embodied, contained, fixed or reflected in any manner, whether in whole

9 or in part.

10         5.   "BRATZ DOLL" means any doll that is or has ever been

11 distributed, marketed, sold or offered for sale under the name "Bratz" or as part of

12 the "Bratz" line.

13         6.   "BRATZ PRODUCT" means any product, whether two-

14 dimensional or three-dimensional, and whether in tangible, digital, electronic or

15 other form: (i) that is or has ever been distributed, marketed or sold under the name

16 "Bratz" or as part of the "Bratz" line; (ii) depicts, incorporates, embodies, consists of

17 or REFERS OR RELATES TO BRATZ; and/or (iii) that is or has ever been

18 distributed, marketed or sold in any packaging that includes the name "Bratz" or

19 depicts, incorporates, embodies, consists of or REFERS OR RELATES TO

20 BRATZ.

21         7.   "BRATZ LICENSE" means any license that REFERS OR

22 RELATES TO any BRATZ PRODUCT.

23         8.   "SYSTEM" or "SYSTEMS" means any computer or network of

24 computers or other network devices that allow a two or more computers to share

25 information and equipment, including but not limited to local area networks, wide area

26 networks, storage area networks, client-server networks or peer-to-peer networks. The

27 use of the term "SYSTEM" or "SYSTEMS" also includes the brand, model number,

28

EXHIBIT 4 PAGE 52

-3-
NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1 technical specifications, and capacities of the computers who are part of each such

2 SYSTEM.

3         9.    "DIGITAL INFORMATION" means any information created or

4 stored digitally, including but not limited to electronically, magnetically or optically.

5        10.   "ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-

6 9059 SGL (RNBx), filed by Mattel on April 27, 2004, and the cases consolidated

7 therewith.

8        11.   "IDENTITY" means the following:

9           (a)    with reference to an individual or individuals, means to

10 state, fully and separately as to each, such individual's full name, any known

11 business title, current or last known business affiliation, current or last known

12 residential address, current or last known business address, current or last known

13 relationship to MGA, and current or last known telephone number.

14           (b)    with reference to an entity or entities, means to state, fully

15 and separately as to each, such entity's full name, state (or country) of incorporation

16 or organization, present or last known address, and present or last known telephone

17 number.

18           (c)    with reference to any other DOCUMENT or

19 DOCUMENTS, means to describe each DOCUMENT by Bates number. In the

20 event that a DOCUMENT does not have a Bates number, IDENTITY means, with

21 respect to each such DOCUMENT, to provide a complete description of it such that

22 it may be the subject of a request for the production of documents, including by

23 stating the date, IDENTITY of the author, addressee(s), signatories, parties, or other

24 PERSONS identified therein, its present location or custodian and a description of

25 its contents.

26        12.   "RELATING TO" or "REFERS OR RELATES TO" means

27 constituting, embodying, containing, referring to, commenting on, evidencing,

28 regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to,

07975/2280277.2                     -4-

EXHIBIT 4 PAGE 53

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1  concerning, supporting, contradicting, negating, revoking or otherwise relating to in

2  any manner.

3       13.    "COMMUNICATION," in the plural as well as the singular,

4  means any transmittal and/or receipt of information, whether such was oral or

5  written, and whether such was by chance, prearranged, formal or informal, and

6  specifically includes, but is not limited to, conversations in person, telephone

7  conversations, electronic mail (including instant messages and text messages),

8  voicemail, letters, memoranda, statements, media releases, magazine and newspaper

9  articles, and video and audio transmissions.

10       14.    "DOCUMENT" means all "WRITINGS" and "RECORDINGS"

11  as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and

12  Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all

13  writings and records of every type and description including, but not limited to,

14  contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic

15  mail ("e-mail"), records of telephone conversations, handwritten and typewritten

16  notes of any kind, statements, reports, minutes, recordings, transcripts and

17  summaries of meetings, voice recordings, pictures, photographs, drawings,

18  computer cards, tapes, discs, printouts and records of all types, studies, instruction

19  manuals, policy manuals and statements, books, pamphlets, invoices, canceled

20  checks and every other device or medium by which or through which information of

21  any type is transmitted, recorded or preserved.  Without any limitation on the

22  foregoing, the term "DOCUMENT" shall include all copies that differ in any respect

23  from the original or other versions of the DOCUMENT, including, but not limited

24  to, all drafts and all copies of such drafts or originals containing initials, comments,

25  notations, insertions, corrections, marginal notes, amendments or any other variation

26  of any kind.

27       15.    "PERSON" or "PERSONS" means all natural persons,

28  partnerships, corporations, joint ventures and any kind of business, legal or public

EXHIBIT _4_ PAGE _54_

1 entity or organization, as well as its, his or her agents, representatives, employees,
2 officers and directors and any one else acting on its, his or her behalf, pursuant to
3 its, his or her authority or subject to its, his or her control.

4     16.   "LARIAN" means Isaac Larian, and all of his past or present
5 employees, officers, agents, representatives, attorneys, consultants, independent
6 contractors, any predecessors or successors in interest, and any other PERSON
7 acting on his behalf, pursuant to his authority or subject to his control.

8     17.   "MACHADO" means Carlos Gustavo Machado Gomez, and all
9 of his current or former employees, agents, representatives, attorneys, accountants,
10 vendors, consultants, independent contractors, predecessors-in-interest and
11 successors-in-interest, and any other PERSON acting on his behalf, pursuant to his
12 authority or subject to his control.

13     18.   "TRUEBA" means Mariana Trueba Almada, and all of her
14 current or former employees, agents, representatives, attorneys, accountants,
15 vendors, consultants, independent contractors, predecessors-in-interest and
16 successors-in-interest, and any other PERSON acting on her behalf, pursuant to her
17 authority or subject to her control.

18     19.   "VARGAS" means Pablo Vargas San Jose, and all of his current
19 or former employees, agents, representatives, attorneys, accountants, vendors,
20 consultants, independent contractors, predecessors-in-interest and successors-in-
21 interest, and any other PERSON acting on his behalf, pursuant to his authority or
22 subject to his control.

23     20.   "FORMER MATTEL EMPLOYEES" means any former
24 MATTEL employee who left MATTEL to join YOU, including but not limited to
25 MACHADO, TRUEBA and VARGAS.

26     21.   The singular form of a noun or pronoun includes within its
27 meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of
28 the masculine form of a pronoun also includes within its meaning the feminine form

EXHIBIT 4 PAGE 55

07975/2280277.2

1  of the pronoun so used, and *vice versa*; the use of any tense of any verb includes

2  also within its meaning all other tenses of the verb so used, whenever such

3  construction results in a broader request for information; and "and" includes "or"

4  and *vice versa*, whenever such construction results in a broader disclosure of

5  documents or information.

6  <u>**Topics of Examination**</u>

7       1.      YOUR knowledge of any MATTEL product prior to the time

8  that such product had been announced or disclosed by MATTEL to retailers or the

9  public.

10      2.      YOUR receipt, reproduction, copying, storage, transmission,

11 transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or

12 information, including but not limited to any compilation of information, that was

13 prepared, made, created, generated, assembled or compiled by or for MATTEL and

14 that was not publicly available at the time of YOUR receipt of such DOCUMENT,

15 data and/or information.

16      3.      YOUR receipt, reproduction, copying, storage, transmission,

17 transfer, retention, destruction, deletion or use of any MATTEL line list or other

18 DOCUMENT prepared by MATTEL identifying MATTEL products in the planning,

19 design or development phase.

20      4.      The hiring, engagement or retention by YOU of any current or

21 former MATTEL employee or contractor, including but not limited to the terms of

22 all employment agreements and agreements RELATING TO confidentiality or the

23 invention, authorship, or ownership of any concept or product.

24      5.      The seizure of DOCUMENTS by Mexican authorities from

25 YOUR office in Mexico City, Mexico, including but not limited to the IDENTITY

26 of such DOCUMENTS and YOUR PRESERVATION of any MATTEL authored

27 DOCUMENT after the execution of the search warrant by Mexican authorities.

28

EXHIBIT _4_ PAGE _56_

-7-

6.  COMMUNICATIONS RELATING TO the search of YOUR office in Mexico City, Mexico that was conducted by Mexican authorities.

7.  The IDENTITY of all DOCUMENTS received by YOU, directly or indirectly, from any FORMER MATTEL EMPLOYEE authored by or for the benefit of MATTEL, or RELATING TO MATTEL or any MATTEL product, plan, client, customer, current or former MATTEL employee, sales, advertising, marketing, analysis, tool or procedure.

8.  COMMUNICATIONS with any PERSON RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from any FORMER MATTEL EMPLOYEE.

9.  COMMUNICATIONS between YOU and any of the FORMER MATTEL EMPLOYEES prior to April 20, 2004, including without limitation any and all DOCUMENTS any of the FORMER MATTEL EMPLOYEES transmitted to or shared with YOU prior to April 20, 2004.

10.  COMMUNICATIONS between YOU and any of the FORMER MATTEL EMPLOYEES RELATING TO MATTEL or any MATTEL product, potential product, business plan, line list, DOCUMENT or pricing.

11.  COMMUNICATIONS between any of the FORMER MATTEL EMPLOYEES and LARIAN, Thomas Park and/or Susanna Kuemmerle prior to April 20, 2004.

12.  Travel to Los Angeles, California by any of the FORMER MATTEL EMPLOYEES between January 1, 2004 and April 20, 2004.

13.  The content, meaning and authenticity of e-mail messages, including attachments and metadata, sent from or received by YOU to or from the e-mail address <plot04@aol.com>.

EXHIBIT __4__ PAGE __57__

1        14.    The content, meaning and authenticity of e-mail messages,

2  including attachments and metadata, sent from or received at the e-mail address

3  <argentrade@aol.com> to or from the e-mail address <plot04@aol.com>.

4        15.    The content, meaning and authenticity of e-mail messages,

5  including attachments and metadata, sent from or received at the e-mail address

6  <argentrade@aol.com> to or from any of the FORMER MATTEL EMPLOYEES.

7        16.    COMMUNICATIONS RELATING TO YOUR market planning

8  and product development RELATING TO the toy market in Mexico prepared,

9  created, sent or transmitted, whether in whole or in part, by MACHADO, TRUEBA

10  and/or VARGAS at any time prior to April 30, 2005.

11        17.    COMMUNICATIONS between YOU and any PERSON

12  RELATING TO the departure or resignation from MATTEL of any current or

13  FORMER MATTEL EMPLOYEE or MATTEL contractor.

14        18.    The job responsibilities of each FORMER MATTEL

15  EMPLOYEE in the first six months after each joined MGA.

16        19.    The content, meaning and authenticity of each personnel file

17  maintained or created by YOU RELATING TO any FORMER MATTEL

18  EMPLOYEE.

19        20.    Any and all agreements between YOU and any of the FORMER

20  MATTEL EMPLOYEES, including all drafts of such agreements and

21  COMMUNICATIONS related thereto.

22        21.    Compensation, money or any other item of value paid by YOU

23  to any FORMER MATTEL EMPLOYEE, whether directly or indirectly, or paid to

24  any PERSON for the benefit of or RELATING TO any FORMER MATTEL

25  EMPLOYEE.

26        22.    Any promotions, raises, bonuses, monetary incentives, payments,

27  awards, transfers, warnings, admonishment, discipline, reprimands, demotions or

28

EXHIBIT _4_ PAGE _58_

07975/2280277.2

-9-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1  terminations of or received by any of the FORMER MATTEL EMPLOYEES while

2  employed by YOU.

3          23.     Any agreements, contracts, offers, promises, proposals or requests

4  RELATING TO the indemnification of or by any of the FORMER MATTEL

5  EMPLOYEES or the payment of legal fees by or for any of the FORMER MATTEL

6  EMPLOYEES.

7          24.     COMMUNICATIONS between YOU and any PERSON

8  RELATING TO the obligations to MATTEL, including the duty of confidentiality,

9  of any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

10          25.     COMMUNICATIONS between YOU and any current or

11  FORMER MATTEL EMPLOYEE or MATTEL contractor RELATING TO the

12  ownership of, or any right, title or interest in, any idea, concept, design, or product.

13          26.     COMMUNICATIONS between YOU and any PERSON

14  RELATING TO the retention, destruction, transfer, or use of any information or

15  DOCUMENTS known to or possessed by any current or former MATTEL

16  employee or contractor.

17          27.     The IDENTITY of DOCUMENTS that YOU have reason to

18  believe were created by or originated from MATTEL, other than MATTEL products

19  that YOU purchased at retail at any time since January 1, 2004.

20          28.     The development of MGA's 2005 product line, including the

21  IDENTITY of each person who participated in the decision making leading up to

22  such product line.

23          29.     The development of MGA's 2006 product line, including the

24  IDENTITY of each person who participated in the decision making leading up to

25  such product line.

26          30.     Any warning, admonition, discipline or other adverse

27  employment action by YOU RELATING TO any of YOUR current or former

28                                      EXHIBIT _4_ PAGE _59_

07975/2280277.2

-10-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1  employees for using a competitor's confidential or proprietary information, trade

2  secrets or intellectual property.

3         31.    YOUR policies or procedures regarding the use or prohibition of

4  use of an competitor's confidential or proprietary information, trade secrets or

5  intellectual property.

6         32.    YOUR efforts to maintain the secrecy of YOUR claimed trade

7  secrets and the date YOU started such efforts.

8         33.    Any failures to comply with YOUR efforts to maintain the

9  secrecy of YOUR trade secrets, and any violations of YOUR policies or procedures

10  with respect to the maintenance of the secrecy of YOUR trade secrets.

11         34.    The IDENTITY of each individual who has failed to comply with or

12  violated YOUR policies and procedures to maintain the secrecy of YOUR trade secrets.

13         35.    Any alleged failures of MATTEL to maintain the secrecy of its trade

14  secrets.

15         36.    COMMUNICATIONS between YOU and any individual while

16  the individual was employed by MATTEL.

17         37.    The factual bases for YOUR affirmative defenses.

18         38.    The product name, product number and SKU of each BRATZ

19  PRODUCT, including without limitation each BRATZ DOLL, sold by YOU or

20  YOUR licensees, and the number of units of each sold by YOU or YOUR licensees.

21         39.    YOUR cost of goods sold, unit cost and other costs for each

22  BRATZ PRODUCT, including without limitation BRATZ DOLLS, sold by YOU or

23  YOUR licensees.

24         40.    YOUR revenues and profits, including gross, net and incremental

25  profits, from the sale of each BRATZ PRODUCT sold by YOU or YOUR licensees.

26         41.    The number of units of each BRATZ PRODUCT sold by YOU

27  or YOUR licensees, the identity of each customer to whom YOU or YOUR

28

EXHIBIT _4_ PAGE _60_

07975/2280277.2

-11-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1  licensees have ever sold any BRATZ PRODUCT, and the revenues and profits that
2  YOU have earned therefrom by customer.

3      42.    Customer returns to YOU of BRATZ PRODUCTS, including
4  without limitation BRATZ DOLLS, sold or distributed by YOU or YOUR licensees.

5      43.    Customer rebates or credits given by YOU or YOUR licensees to
6  customers in connection with BRATZ PRODUCTS, including without limitation
7  BRATZ DOLLS.

8      44.    YOUR cost allocation procedures.

9      45.    YOUR sales, profit and cash flow projections or forecasts for
10  BRATZ PRODUCTS, including without limitation BRATZ DOLLS.

11      46.    The BRATZ DOLLS' share of the fashion doll market in Mexico
12  including, without limitation, the extent to which BRATZ has been or is gaining or
13  losing market share in the Mexico fashion doll market.

14      47.    YOUR net worth on a yearly basis from January 1, 2004 to the
15  present.

16      48.    YOUR monthly, quarterly and annual financial reports, including
17  financial statements (both audited and unaudited) from January 1, 2004 through the
18  present, inclusive.

19      49.    YOUR tax returns from January 1, 2004 to the present, including
20  all schedules and work papers RELATING TO their preparation and filing.

21      50.    YOUR corporate structure since January 1, 2004, including without
22  limitation YOUR relationship with MGA Entertainment, Inc., to MGA Entertainment
23  Mexico, Inc. and the IDENTITY of YOUR officers, directors, shareholders and
24  employees.

25      51.    The retention or destruction policies, procedures and practices for
26  YOUR DOCUMENTS and DIGITAL INFORMATION that REFER OR RELATE TO
27  BRATZ since January 1, 2004, including without limitation the retention or destruction

28

EXHIBIT _4_ PAGE _61_

1  of DOCUMENTS and DIGITAL INFORMATION when (a) hardware is replaced,

2  modified or upgraded and (b) when PERSONS leave YOUR employ.

3       52.    The preservation, collection, destruction, removal, transfer, loss or

4  impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection

5  with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

6       53.    The preservation, collection, destruction, removal, transfer, loss or

7  impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1,

8  2004 that REFER OR RELATE TO MATTEL (including without limitation to any

9  MATTEL product, plan or information) that YOU received in any manner from any

10  PERSON who was at the time an employee of MATTEL or who had previously been

11  an employee of MATTEL.

12       54.    YOUR DIGITAL INFORMATION data backup policies, practices

13  and procedures from January 1, 2004 to the present, including without limitation the

14  location and specifications of any media used to preserve YOUR DIGITAL

15  INFORMATION and the software, if any, used to preserve YOUR DIGITAL

16  INFORMATION.

17       55.    The DIGITAL INFORMATION SYSTEMS and the application

18  software that YOU have used since January 1, 2004 that REFER OR RELATE TO

19  design, development, planning, inventory, manufacturing, sales, shipping and

20  accounting, including without limitation the common or shared storage for such

21  DIGITAL INFORMATION SYSTEMS, remote access of such DIGITAL

22  INFORMATION SYSTEMS, and any changes, modifications or upgrades to such

23  DIGITAL INFORMATION SYSTEMS or application software.

24       56.    The IDENTITY of PERSONS, including without limitation

25  vendors, who since January 1, 2004 have been responsible for or supported YOUR

26  DIGITAL INFORMATION SYSTEMS, including without limitation the IDENTITY of

27  such PERSON who serviced or provided hardware for YOUR DIGITAL

28  INFORMATION SYSTEMS, hosted, stored, archived or maintained YOUR DIGITAL

EXHIBIT 4 PAGE 62

07975/2280277.2

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1    INFORMATION, including but not limited to internet service providers, and provided

2    analytical, training or implementation services with respect to YOUR DIGITAL

3    INFORMATION SYSTEMS.

4          57.    The electronic messaging SYSTEMS used by YOUR employees

5    within the scope of their employment between January 1, 2004 and the present,

6    including but not limited to electronic mail, instant messenger, telephone or voice-mail,

7    and the routing of such electronic messages to, from or within MGA.

8          58.    YOUR policies, practices and procedures regarding the use of

9    transportable media that contain or are capable of containing DIGITAL

10   INFORMATION, including but not limited to floppy discs, compact discs, DVDs, USB

11   drives, portable hard drives, digital cameras and personal digital assistants.

EXHIBIT  4  PAGE  63

07975/2280217.2

-14-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

**Exhibit B**

EXHIBIT _4_ PAGE _64_

1    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5    Los Angeles, California  90017-2543
     Telephone:  (213) 443-3000
6    Facsimile:  (213) 443-3100

7    Attorneys for Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

             CENTRAL DISTRICT OF CALIFORNIA

10                 EASTERN DIVISION

11

12    CARTER BRYANT, an individual,     CASE NO. CV 04-9049 SGL (RNBx)
          Plaintiff,
13                    Consolidated with
                   Case No. CV 04-09059
14        vs.                 Case No. CV 05-02727

15    MATTEL, INC., a Delaware corporation,    FOURTH NOTICE OF DEPOSITION
          Defendant.         OF MGA ENTERTAINMENT, INC.
16                    PURSUANT TO FEDERAL RULE OF
                   CIVIL PROCEDURE 30(B)(6)
17

18    AND CONSOLIDATED ACTIONS     Discovery Cut-off:  January 14, 2008
                   Pre-trial Conference:  April 7, 2008
                   Trial Date:  April 29, 2008
19

20

21

22

23

24

25

26

27

28

                                   EXHIBIT 4    65

07209/2254636.1

                         FOURTH NOTICE OF DEPOSITION OF MGA

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2           PLEASE TAKE NOTICE that on _____, beginning at 9:30 a.m.

3   Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant

4   MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges

5   LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017.  Pursuant to Fed. R.

6   Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers,

7   directors, managing agents or other persons who consent to testify on its behalf

8   concerning each of the topics set forth in Exhibit A hereto.

9           PLEASE TAKE FURTHER NOTICE that the deposition will take place

10  before a duly authorized notary public or other officer authorized to administer oaths at

11  depositions, and will continue from day to day, Sundays, Saturdays and legal holidays

12  excepted, until completed.

13          PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

14  P. 30(b)(2), the deposition will be videotaped.  Mattel also reserves the right to use

15  Livenote or other technology for real-time transcription of the testimony.

16

17  DATED: _____      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

18

19                                   By_____

20                                      Jon Corey
                                        Attorneys for Mattel, Inc.

21

22

23

24

25

26

27

28                                          EXHIBIT  4  PAGE  66

07209/2254636.1                            -1-

                                   FOURTH NOTICE OF DEPOSITION OF MGA

## **EXHIBIT A**

1. "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2. "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3. "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

4. "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. As used herein, "product, doll or DESIGNS or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith. Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence

-2-

EXHIBIT _4_ PAGE _67_

FOURTH NOTICE OF DEPOSITION OF MGA

1   that is the subject of, or otherwise relevant or responsive to, the Topics of Examination

2   herein.

3       5.      "DESIGN" or "DESIGNS" means any and all representations,

4   whether two-dimensional or three-dimensional, and whether in tangible, digital,

5   electronic or other form, including but not limited to all works, designs, artwork,

6   sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

7   diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

8   practice, developments, inventions and/or improvements, as well as all other items,

9   things and DOCUMENTS in which any of the foregoing are or have been expressed,

10  embodied, contained, fixed or reflected in any manner, whether in whole or in part.

11      6.      "THE BRATZ PITCH MATERIALS" means each and every

12  BRATZ WORK which was displayed, shown, provided, or offered to YOU on or

13  before the date on which YOU executed the BRYANT/MGA AGREEMENT.

14      7.      "BRYANT/MGA AGREEMENT" means the written agreement

15  between CARTER BRYANT and MGA dated as of September 18, 2000, produced as

16  BRYANT 00794-00799, and any other version or versions thereof.

17      8.      "CREATE OR IMPROVE" or "CREATED OR IMPROVED," in

18  the context of a BRATZ WORK or BRATZ WORKS, means to create, improve,

19  develop, modify, alter, conceive, reduce to practice, or otherwise work on the BRATZ

20  WORK or BRATZ WORKS.

21      9.      "IDENTIFY" or "IDENTITY" means the following:

22          (a)     With reference to an individual, means such individual's

23  name, current or last known business title, current or last known business affiliation,

24  current or last known relationship to YOU, current or last known residential and

25  business address, and current or last known telephone number.

26          (b)     With reference to an entity or governmental organization,

27  means such entity's or organization's name, present or last-known address, and present

28  

EXHIBIT _4_ PAGE _68_

07209/2254636.1

-3-

FOURTH NOTICE OF DEPOSITION OF MGA

1  or last-known telephone number and the IDENTITY of each individual who has served

2  or participated as a contact for or on behalf of such entity or organization.

3          (c)    With reference to an account with a bank or financial

4  institution, means the name and address of the bank or financial institution, the account

5  number(s) for or otherwise associated with such account and the name of each holder,

6  including without limitation each beneficial holder, of each such account.

7          (d)    With reference to a STORAGE DEVICE, means the

8  manufacturer name, brand, model name and number, serial number and all other

9  manufacturer identifiers, and the technical specifications and capacities of such

10  STORAGE DEVICE.

11       10.    "DIGITAL INFORMATION" means any information created or

12  stored digitally, including but not limited to electronically, magnetically or optically.

13       11.    "STORAGE DEVICE" means any computer hard drive, memory,

14  USB device, tape, storage array or any other device or medium that allows a user,

15  whether permanently, temporarily or otherwise, to create, generate, transmit, copy,

16  retain, store or maintain DIGITAL INFORMATION.

17       12.    "GLASER LETTER" means the letter sent from Patricia L. Glaser

18  to John B. Quinn, dated July 5, 2007.

19       13.    "REFER OR RELATE TO" means constituting, embodying,

20  containing, referring to, commenting on, evidencing, regarding, discussing, describing,

21  mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting,

22  negating, revoking or otherwise relating to in any manner.

23       14.    "COMMUNICATION," in the plural as well as the singular, means

24  any transmittal and/or receipt of information, whether such was oral or written, and

25  whether such was by chance, prearranged, formal or informal, and specifically includes,

26  but is not limited to, conversations in person, telephone conversations, electronic mail

27  (including instant messages and text messages), voicemail, letters, memoranda,

28

EXHIBIT 4 PAGE 69

FOURTH NOTICE OF DEPOSITION OF MGA

1  statements, media releases, magazine and newspaper articles, and video and audio
2  transmissions.

3      15.    "EMBODIMENT" means any representation of the identified
4  product or its retail packaging, whether two-dimensional or three-dimensional, and
5  whether in tangible, digital, electronic or other form, including but not limited to all
6  works, designs, artwork, sketches, drawings, illustrations, representations, depictions,
7  blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,
8  reductions to practice, developments, inventions and/or improvements, as well as all
9  other items, things and DOCUMENTS in which any of the foregoing are or have been
10  expressed, embodied, contained, fixed or reflected in any manner, whether in whole or
11  in part.

12      16.    "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as
13  those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and
14  Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings
15  and records of every type and description including, but not limited to, contracts,
16  agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"),
17  records of telephone conversations, handwritten and typewritten notes of any kind,
18  statements, reports, minutes, recordings, transcripts and summaries of meetings, voice
19  recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and
20  records of all types, studies, instruction manuals, policy manuals and statements, books,
21  pamphlets, invoices, canceled checks and every other device or medium by which or
22  through which information of any type is transmitted, recorded or preserved.  Without
23  any limitation on the foregoing, the term "DOCUMENT" shall include all copies that
24  differ in any respect from the original or other versions of the DOCUMENT, including,
25  but not limited to, all drafts and all copies of such drafts or originals containing initials,
26  comments, notations, insertions, corrections, marginal notes, amendments or any other
27  variation of any kind.

28                                   EXHIBIT  4  PAGE 70

07209/2254636.1

-5-

FOURTH NOTICE OF DEPOSITION OF MGA

1    17.    "PERSON" or "PERSONS" means all natural persons, partnerships,

2  corporations, joint ventures and any kind of business, legal or public entity or

3  organization, as well as its, his or her agents, representatives, employees, officers and

4  directors and any one else acting on its, his or her behalf, pursuant to its, his or her

5  authority or subject to its, his or her control.

6    18.    "CONTESTED MGA PRODUCTS" means the CONTESTED

7  BRATZ DOLLS PRODUCTS, the CONTESTED BRATZ PETZ PRODUCTS, the

8  CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD, the CONTESTED

9  4-EVER BEST FRIENDS PRODUCTS, the CONTESTED MOMMY'S LITTLE

10  DOLL PRODUCTS, and the CONTESTED ALIENRACERS PRODUCTS, and any

11  other doll, product, toy, packaging, advertisement or other matter that, in whole or in

12  part, provides a basis for any claim or defense by YOU against MATTEL.

13    19.    "CONTESTED BRATZ DOLLS PRODUCTS" means any of the

14  following that provides a basis for any claim by YOU against MATTEL:  (i) any

15  EMBODIMENT or project ever known by the name "Bratz" or any derivative thereof

16  (whether in whole or in part and regardless of what such EMBODIMENT or project is

17  or has been also, previously or subsequently called) and any doll or any portion thereof

18  that is now or has ever been known as, or sold, offered for sale, licensed, offered for

19  license or marketed under, the name or term "Bratz" or any derivative thereof (whether

20  in whole or in part and regardless of what such doll is or has been also, previously or

21  subsequently called), and all prototypes, models, samples and versions of such

22  EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU

23  distribute under the name "Bratz" or any derivative thereof; and/or (iii) any and all

24  other goods, product packaging, advertisements, promotional materials or other thing or

25  item or material manufactured, produced, printed, ordered, marketed, advertised,

26  promoted, displayed, distributed, shipped, imported, exported, licensed, offered for

27  license, sold or offered for sale by YOU or on YOUR behalf under the name "Bratz" or

28  any derivative thereof.

EXHIBIT _4_ PAGE _71_

FOURTH NOTICE OF DEPOSITION OF MGA

07209/2254636.1

20. "CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "Bratz Funky Fashion Makeover Head" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any styling head or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "Bratz" or any derivative thereof (whether in whole or in part and regardless of what such styling head is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, styling head or any portion thereof; (ii) any accessory that YOU distribute under the name "Bratz Funky Fashion Makeover Head" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Funky Fashion Makeover Head" or any derivative thereof.

21. "CONTESTED 4-EVER BEST FRIENDS PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "4-ever Best Friends" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any doll or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "4-ever Best Friends" or any derivative thereof (whether in whole or in part and regardless of what such doll is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU distribute under the name "4-ever Best

1  Friends" or any derivative thereof; and/or (iii) any and all other goods, product
2  packaging, advertisements, promotional materials or other thing or item or material
3  manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,
4  distributed, shipped, imported, exported, licensed, offered for license, sold or offered
5  for sale by YOU or on YOUR behalf under the name "4-ever Best Friends" or any
6  derivative thereof.

7      22.   "CONTESTED MOMMY'S LITTLE DOLL PRODUCTS" means
8  any of the following that provides a basis for any claim by YOU against MATTEL:
9  (i) any EMBODIMENT or project ever known by the name "Mommy's Little Patient"
10  or similar name or any derivative thereof (whether in whole or in part and regardless of
11  what such EMBODIMENT or project is or has been also, previously or subsequently
12  called) and any doll or any portion thereof that is now or has ever been known as, or
13  sold, offered for sale, licensed, offered for license or marketed under, the name or term
14  "Mommy's Little Patient" or similar name or any derivative thereof (whether in whole
15  or in part and regardless of what such doll is or has been also, previously or
16  subsequently called), and all prototypes, models, samples and versions of such
17  EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU
18  distribute under the name "Mommy's Little Patient" or similar name or any derivative
19  thereof; and/or (iii) any and all other goods, product packaging, advertisements,
20  promotional materials or other thing or item or material manufactured, produced,
21  printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,
22  imported, exported, licensed, offered for license, sold or offered for sale by YOU or on
23  YOUR behalf under the name "Mommy's Little Patient" or similar name or any
24  derivative thereof.

25      23.   "CONTESTED ALIENRACERS PRODUCTS" means any of the
26  following that provides a basis for any claim by YOU against MATTEL:  (i) any
27  EMBODIMENT or project ever known by the name "Alienracers" or any derivative
28  thereof (whether in whole or in part and regardless of what such EMBODIMENT or

EXHIBIT _4_ PAGE _73_

-8-

FOURTH NOTICE OF DEPOSITION OF MGA

07209/2254636.1

1    project is or has been also, previously or subsequently called) and any toy vehicle,

2    character, or any portion thereof that is now or has ever been known as, or sold, offered

3    for sale, licensed, offered for license or marketed under, the name or term "Alienracers"

4    or any derivative thereof (whether in whole or in part and regardless of what such toy is

5    or has been also, previously or subsequently called), and all prototypes, models,

6    samples and versions of such EMBODIMENT, toy vehicle, character, or any portion

7    thereof; (ii) any playset and accessory that YOU distribute under the name

8    "Alienracers" or any derivative thereof; and/or (iii) any and all other goods, product

9    packaging, advertisements, promotional materials or other thing or item or material

10    manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,

11    distributed, shipped, imported, exported, licensed, offered for license, sold or offered

12    for sale by YOU or on YOUR behalf under the name "Alienracers" or any derivative

13    thereof.

14         24.    "CONTESTED MATTEL PRODUCTS" means the CONTESTED

15    MATTEL MY SCENE DOLLS PRODUCTS, the CONTESTED MATTEL MY

16    SCENE PETS PRODUCTS, the CONTESTED MATTEL MY SCENE STYLING

17    HEAD, the CONTESTED MATTEL WEE-3 PRODUCTS, the CONTESTED

18    MATTEL LITTLE MOMMY DOLL PRODUCTS, and the CONTESTED MATTEL

19    ACCELERACERS PRODUCTS, and any other MATTEL doll, product, toy,

20    packaging, advertisement or other matter that, in whole or in part, provides a basis for

21    any claim or defense by YOU against MATTEL.

22         25.    "CONTESTED MATTEL MY SCENE DOLLS PRODUCTS"

23    means any of the following that provides a basis for any claim by YOU against

24    MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene" or

25    any derivative thereof (whether in whole or in part and regardless of what such

26    EMBODIMENT or project is or has been also, previously or subsequently called) and

27    any doll or any portion thereof that is now or has ever been known as, or sold, offered

28    for sale, licensed, offered for license or marketed under, the name or term "My Scene"

EXHIBIT 4 PAGE 74

FOURTH NOTICE OF DEPOSITION OF MGA

1  or any derivative thereof (whether in whole or in part and regardless of what such doll

2  is or has been also, previously or subsequently called), and all prototypes, models,

3  samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

4  playset and accessory that MATTEL distributes under the name "My Scene" or any

5  derivative thereof; and/or (iii) any and all other goods, product packaging,

6  advertisements, promotional materials or other thing or item or material manufactured,

7  produced, printed, ordered, marketed, advertised, promoted, displayed, distributed,

8  shipped, imported, exported, licensed, offered for license, sold or offered for sale by

9  MATTEL under the name "My Scene" or any derivative thereof.

10      26.    "CONTESTED MATTEL MY SCENE PETS PRODUCTS" means

11  any of the following that provides a basis for any claim by YOU against MATTEL:

12  (i) any EMBODIMENT or project ever known by the name "My Scene Pets" or any

13  derivative thereof (whether in whole or in part and regardless of what such

14  EMBODIMENT or project is or has been also, previously or subsequently called) and

15  any toy pet or any portion thereof that is now or has ever been known as, or sold,

16  offered for sale, licensed, offered for license or marketed under, the name or term "My

17  Scene" or any derivative thereof (whether in whole or in part and regardless of what

18  such toy pet is or has been also, previously or subsequently called), and all prototypes,

19  models, samples and versions of such EMBODIMENT, toy pet or any portion thereof;

20  (ii) any playset and accessory that MATTEL distributes under the name "My Scene

21  Pets" or any derivative thereof; and/or (iii) any and all other goods, product packaging,

22  advertisements, promotional materials or other thing or item or material manufactured,

23  produced, printed, ordered, marketed, advertised, promoted, displayed, distributed,

24  shipped, imported, exported, licensed, offered for license, sold or offered for

25      27.    "CONTESTED MATTEL MY SCENE STYLING HEAD" means

26  any of the following that provides a basis for any claim by YOU against MATTEL:

27  (i) any EMBODIMENT or project ever known by the name "My Scene Styling Head"

28  or any derivative thereof (whether in whole or in part and regardless of what such

1  EMBODIMENT or project is or has been also, previously or subsequently called) and

2  any styling head or any portion thereof that is now or has ever been known as, or sold,

3  offered for sale, licensed, offered for license or marketed under, the name or term "My

4  Scene" or any derivative thereof (whether in whole or in part and regardless of what

5  such styling head is or has been also, previously or subsequently called), and all

6  prototypes, models, samples and versions of such EMBODIMENT, styling head or any

7  portion thereof; (ii) any accessory that MATTEL distributes under the name "My Scene

8  Styling Head" or any derivative thereof; and/or (iii) any and all other goods, product

9  packaging, advertisements, promotional materials or other thing or item or material

10  manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,

11  distributed, shipped, imported, exported, licensed, offered for license, sold or offered

12  for sale by MATTEL under the name "My Scene Styling Head" or any derivative

13  thereof.

14          28.    "CONTESTED MATTEL WEE-3 PRODUCTS" means any of the

15  following that provides a basis for any claim by YOU against MATTEL:  (i) any

16  EMBODIMENT or project ever known by the name "Wee-3" or any derivative thereof

17  (whether in whole or in part and regardless of what such EMBODIMENT or project is

18  or has been also, previously or subsequently called) and any doll or any portion thereof

19  that is now or has ever been known as, or sold, offered for sale, licensed, offered for

20  license or marketed under, the name or term "Wee-3" or any derivative thereof

21  (whether in whole or in part and regardless of what such doll is or has been also,

22  previously or subsequently called), and all prototypes, models, samples and versions of

23  such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that

24  MATTEL distributes under the name "Wee-3" or any derivative thereof; and/or (iii) any

25  and all other goods, product packaging, advertisements, promotional materials or other

26  thing or item or material manufactured, produced, printed, ordered, marketed,

27  advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

28

EXHIBIT _4_ PAGE _76_

FOURTH NOTICE OF DEPOSITION OF MGA

1  offered for license, sold or offered for sale by MATTEL under the name "Wee-3" or
2  any derivative thereof.

3       29.  "CONTESTED MATTEL LITTLE MOMMY DOLL PRODUCTS"
4  means any of the following that provides a basis for any claim by YOU against
5  MATTEL:  (i) any EMBODIMENT or project ever known by the name "Little
6  Mommy" or any derivative thereof (whether in whole or in part and regardless of what
7  such EMBODIMENT or project is or has been also, previously or subsequently called)
8  and any doll or any portion thereof that is now or has ever been known as, or sold,
9  offered for sale, licensed, offered for license or marketed under, the name or term
10  "Little Mommy" or any derivative thereof (whether in whole or in part and regardless
11  of what such doll is or has been also, previously or subsequently called), and all
12  prototypes, models, samples and versions of such EMBODIMENT, doll or any portion
13  thereof; (ii) any playset and accessory that MATTEL distributes under the name "Little
14  Mommy" or any derivative thereof; and/or (iii) any and all other goods, product
15  packaging, advertisements, promotional materials or other thing or item or material
16  manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,
17  distributed, shipped, imported, exported, licensed, offered for license, sold or offered
18  for sale by MATTEL under the name "Little Mommy" or any derivative thereof.

19       30.  "CONTESTED MATTEL ACCELERACERS PRODUCTS" means
20  any of the following that provides a basis for any claim by YOU against MATTEL:
21  (i) any EMBODIMENT or project ever known by the name "AcceleRacers" or any
22  derivative thereof (whether in whole or in part and regardless of what such
23  EMBODIMENT or project is or has been also, previously or subsequently called) and
24  any toy vehicle, character, or any portion thereof that is now or has ever been known as,
25  or sold, offered for sale, licensed, offered for license or marketed under, the name or
26  term "AcceleRacers" or any derivative thereof (whether in whole or in part and
27  regardless of what such toy is or has been also, previously or subsequently called), and
28  all prototypes, models, samples and versions of such EMBODIMENT, toy vehicle,

EXHIBIT _4_ PAGE _77_

07209/2254636.1

-12-

1  character, or any portion thereof; (ii) any playset and accessory that MATTEL

2  distributes under the name "AcceleRacers" or any derivative thereof; and/or (iii) any

3  and all other goods, product packaging, advertisements, promotional materials or other

4  thing or item or material manufactured, produced, printed, ordered, marketed,

5  advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

6  offered for license, sold or offered for sale by MATTEL under the name

7  "AcceleRacers" or any derivative thereof.

8         31.   "FORMER MATTEL EMPLOYEES" means any former Mattel

9  employee who left MATTEL to join YOU, including but not limited to Janine Brisbois,

10  Ron Brawer, Jorge Castilla, Nic Contreras, Dan Cooney, Carlos Gustavo Machado,

11  Mariana Trueba Almada, Pablo Vargas San Jose and Shirin Salemnia.

12        32.   "COMPLAINT" means the Complaint for False Designation of

13  Origin, Affiliation, Association or Sponsorship (15 U.S.C. § 1125(a)); Unfair

14  Competition (15 U.S.C. § 1125(a)); Cal. Bus. & Prof. Code § 17200 et seq. and

15  California Common Law); Dilution (15 U.S.C. § 1125(c), Cal Bus. & Prof. Code

16  § 14330 and California Common Law); and Unjust Enrichment, filed by YOU on or

17  about April 13, 2005.

18        33.   The singular form of a noun or pronoun includes within its meaning

19  the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine

20  form of a pronoun also includes within its meaning the feminine form of the pronoun so

21  used, and *vice versa*; the use of any tense of any verb includes also within its meaning

22  all other tenses of the verb so used, whenever such construction results in a broader

23  request for information; and "and" includes "or" and *vice versa*, whenever such

24  construction results in a broader disclosure of documents or information.

25

26                          **Topics of Examination**

27        1.   The invention, creation, origin, conception, authorship, design and

28  development of the CONTESTED MGA PRODUCTS, including without limitation the

EXHIBIT  4  PAGE  78

FOURTH NOTICE OF DEPOSITION OF MGA

1  circumstances under which and the date(s) on which each occurred and the IDENTITY

2  and role(s) of each PERSON involved.

3        2.     Any revisions, modifications or changes made to any of the

4  CONTESTED MGA PRODUCTS, including without limitation any proposed

5  alternatives, modifications or changes (whether or not implemented) to such

6  CONTESTED MGA PRODUCTS, the date(s) on which such revisions, modifications

7  or changes were made or proposed and the reasons for their implementation or non-

8  implementation.

9        3.     The development of YOUR 2005 product line, including the

10  IDENTITY of each PERSON who participated in the decision making leading up to

11  YOUR 2005 product line and any changes or modifications thereto, and the invention,

12  creation, origin, conception, authorship, design, development, manufacture, distribution

13  and sale of products therein.

14       4.     The development of YOUR 2006 product line, including the

15  IDENTITY of each PERSON who participated in the decision making leading up to

16  YOUR 2005 product line and any changes or modifications thereto, and the invention,

17  creation, origin, conception, authorship, design, development, manufacture, distribution

18  and sale of products therein.

19       5.     The     content,     meaning,     authenticity     and     source     of

20  COMMUNICATIONS, advertisements, and/or promotional statements that provide a

21  basis for any claim by YOU against MATTEL.

22       6.     COMMUNICATIONS between YOU and any PERSON, including

23  without limitation any retailer or distributor, that REFER OR RELATE TO the

24  CONTESTED MATTEL PRODUCTS.

25       7.     The first date of manufacture, shipment and availability for

26  distribution and retail sale of each of the CONTESTED MGA PRODUCTS.

27

28

07209/2254636.1

EXHIBIT _4_ PAGE _79_

FOURTH NOTICE OF DEPOSITION OF MGA

1        8.    The first date that each of the CONTESTED MGA PRODUCTS
2   was shown to any PERSON not employed by MGA, whether in concept, prototype, or
3   finished form, and the IDENTITY of each PERSON involved therein.

4        9.    The sculptures, including all preliminary sculptures and all versions
5   of such sculptures, made, produced or prepared in connection with the CONTESTED
6   BRATZ DOLLS PRODUCTS.

7       10.    The tooling and manufacture of any of the CONTESTED MGA
8   PRODUCTS, including but not limited to all invoices, contracts, sales orders, purchase
9   orders and payment relating thereto and including but not limited to all DOCUMENTS
10  relating to the engineering, preparation, fabrication and creation of the molds and face
11  paint masks used in connection therewith and to the film and/or digital files used in
12  connection with the packaging therefor.

13      11.    The marketing, advertising, promotion and licensing of the
14  CONTESTED MGA PRODUCTS, including but not limited to all marketing studies,
15  marketing plans, sales plans, sales forecasts, strategies, surveys and analyses and
16  including the identity of the channels in which such have been or are disseminated or
17  distributed.

18      12.    The ownership of any right, title or interest, whether in whole or in
19  part, in or to the CONTESTED MGA PRODUCTS.

20      13.    Any copyright, patent, design right or any other registration or
21  application for registration of the CONTESTED MGA PRODUCTS, including but not
22  limited to all COMMUNICATIONS relating thereto, and all filings, declarations,
23  affidavits, correspondence, notes and other DOCUMENTS relating thereto.

24      14.    The display, exhibition, publication, circulation, or other
25  dissemination of the CONTESTED MGA PRODUCTS to distributors, retailers,
26  licensees, the media, or the public, including but not limited to toy and trade shows and
27  conventions and the date(s) on which such occurred.

28

EXHIBIT __4__ PAGE 80

-15-

FOURTH NOTICE OF DEPOSITION OF MGA

1        15.    YOUR expenditures in advertising or promoting the CONTESTED

2  MGA PRODUCTS, including by year and by medium.

3        16.    Any contracts or licenses entered into, negotiated, proposed, or

4  requested RELATING TO any of the CONTESTED MGA PRODUCTS.

5        17.    The target market or potential target market, and the demographics

6  of any actual, potential or prospective consumers, customers, purchasers or licensees of

7  the CONTESTED MGA PRODUCTS.

8        18.    The number of units of the CONTESTED MGA PRODUCTS

9  manufactured, produced, ordered, stored in inventory, imported, exported, shipped,

10  sold, or offered for sale by any PERSON, including but not limited to YOU.

11        19.    YOUR revenues, costs and profits for each of the CONTESTED

12  MGA PRODUCTS, including but not limited to YOUR per-unit cost, and YOUR gross,

13  incremental and net profits for each of the CONTESTED MGA PRODUCTS.

14        20.    Any complaints or dissatisfaction concerning the CONTESTED

15  MGA PRODUCTS, including but not limited to the returns of, or the number of or rate

16  of defects for, such products.

17        21.    Any potential or actual confusion, any potential or actual mistake or

18  any potential or actual deception of any PERSON as to the origin, affiliation,

19  sponsorship or association of the CONTESTED MGA PRODUCTS or CONTESTED

20  MATTEL PRODUCTS that YOU are aware of, including but not limited to all studies,

21  surveys, interviews, reports and COMMUNICATIONS regarding any such confusion,

22  mistake or deception.

23        22.    Any potential or actual confusion, any potential or actual mistake or

24  any potential or actual deception of any PERSON as to the origin, affiliation,

25  sponsorship or association of the CONTESTED MATTEL PRODUCTS that you are

26  aware of, including but not limited to all studies, surveys, interviews, reports and

27  COMMUNICATIONS regarding any such confusion, mistake or deception.

28

EXHIBIT _4_ PAGE _81_

23.     Any consumer studies, reports, surveys, interviews or reports regarding the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS, included but not limited to YOUR knowledge of the reasons why consumers purchase any of the CONTESTED MGA PRODUCTS or any of the CONTESTED MATTEL PRODUCTS.

24.     Marketing studies, marketing plans, sales plans, sales forecasts, strategies and analyses that REFER OR RELATE TO THE CONTESTED MATTEL PRODUCTS.

25.     MATTEL's alleged copying, infringement or dilution of the CONTESTED MGA PRODUCTS or any claimed EMBODIMENT thereof.

26.     To the extent not disclosed in response to any other Topic, all other facts RELATING TO any claim made by YOU against MATTEL or the CONTESTED MATTEL PRODUCTS, and the IDENTITY of all PERSONS with knowledge thereof.

27.     COMMUNICATIONS between YOU and MATTEL RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

28.     Any damage, loss, injury or unjust enrichment that YOU claim has been sustained by reason of any act or omission by MATTEL, including but not limited to any alleged lost profits, lost sales, lost royalty, lost opportunity, lost license, revenue, price erosion, or consequential or incidental damage, including but not limited to the causation for any such alleged unjust enrichment, damage, loss, or injury and the amounts of all such damage, loss, injury or unjust enrichment.

29.     When, and under what circumstances, YOU became aware that Mattel had created, designed, developed, sold, offered for sale or licensed the CONTESTED MATTEL PRODUCTS.

30.     The copying, reproduction or use of any MATTEL work, product, or EMBODIMENT by YOU or on YOUR behalf since January 1, 1999.

EXHIBIT _4_ PAGE _82_

FOURTH NOTICE OF DEPOSITION OF MGA

1     31.   Any similarity or dissimilarity between any of the CONTESTED
2 MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

3     32.   The hiring, engagement, or retention by YOU of any current or
4 former MATTEL employee or contractor since January 1, 1999, including but not
5 limited to the terms of all employment agreements and agreements RELATING TO
6 confidentiality or the invention, authorship, or ownership of any concept or product.

7     33.   YOUR receipt, reproduction, copying, storage, transmission,
8 transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or
9 information, including but not limited to any compilation of information, that was
10 prepared, made, created, generated, assembled or compiled by or for MATTEL and that
11 was not publicly available at the time of YOUR receipt of such DOCUMENT, data
12 and/or information.

13     34.   YOUR knowledge of any MATTEL product prior to the time that
14 such product had been announced or disclosed by MATTEL to retailers or the public,
15 including but not limited to the CONTESTED MATTEL PRODUCTS.

16     35.   YOUR receipt, reproduction, copying, storage, transmission,
17 transfer, retention, destruction, deletion or use of any MATTEL line list or other
18 DOCUMENT prepared by MATTEL identifying MATTEL products in the planning,
19 design or development phase.

20     36.   The search and seizure of DOCUMENTS by Mexican authorities
21 from MGA's office in Mexico City, Mexico, and all COMMUNICATIONS that
22 REFER OR RELATE thereto.

23     37.   All payments of money or any item of value made by YOU, directly
24 or indirectly, or offered, proposed, promised, requested or solicited by or from YOU,
25 directly or indirectly, in connection criminal proceedings or potential or prospective
26 criminal proceedings against YOU or any of YOUR employees, including without
27 limitation Gustavo Machado, and including without limitation YOUR payment or
28 reimbursement of legal fees for or on behalf of any PERSON.

EXHIBIT _4_ PAGE _83_

-18-

FOURTH NOTICE OF DEPOSITION OF MGA

07209/2254636.1

38.  COMMUNICATIONS between YOU and any PERSON RELATING TO the resignation or departure of any FORMER MATTEL EMPLOYEES from Mattel.

39.  The compensation, money or any other item of value paid to any FORMER MATTEL EMPLOYEE, whether directly or indirectly, by YOU.

40.  The identity of DOCUMENTS RELATING TO any MATTEL product or plan that any FORMER MATTEL EMPLOYEE provide or disclosed to or shared with YOU, directly or indirectly.

41.  COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from any FORMER MATTEL EMPLOYEE.

42.  The content, authenticity, accuracy and meaning of each personnel file maintained or created by YOU RELATING TO any FORMER MATTEL EMPLOYEE.

43.  COMMUNICATIONS between YOU and Pablo Vargas San Jose prior to April 20, 2004.

44.  COMMUNICATIONS between YOU and Janine Brisbois prior to September 27, 2005.

45.  COMMUNICATIONS between YOU and Ron Brawer prior to October 2, 2004.

46.  COMMUNICATIONS between YOU and Carlos Gustavo Machado Gomez ("Machado") prior to April 20, 2004.

47.  COMMUNICATIONS between YOU and Mariana Trueba Almada ("Trueba") prior to April 20, 2004.

EXHIBIT 4 PAGE 84

-19-

FOURTH NOTICE OF DEPOSITION OF MGA

07209/2254636.1

1    48.    The existence or extent of competition or substitution between any
2    of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL
3    PRODUCTS.

4    49.    The factual basis for YOUR claim that any of the CONTESTED
5    MGA PRODUCTS have acquired secondary meaning or are famous.

6    50.    The factual basis for YOUR claim that any of MATTEL's actions
7    have caused actual dilution.

8    51.    Mattel's alleged intimidation, coercion or threats to retailers,
9    licensees, suppliers and others in the industry."

10    52.    The factual basis for YOUR claim that Mattel "serially imitated and
11    copy-catted [*sic*] the look of MGA products, trade dress, trademarks, themes, ideas,
12    advertising and packaging."

13    53.    The basis for YOUR claim that the Bratz dolls launched in 2001
14    were "unique and distinctive."

15    54.    The identification of YOUR alleged trade dress in connection with
16    the CONTESTED MGA PRODUCTS, including without limitation with respect to
17    "themes," and the factual bases for YOUR claim that YOU have any legally protected
18    interest in such trade dress.

19    55.    The factual basis for YOUR allegation that advertising executives
20    have expressed concern about "Bratz" and Mattel's "My Scene," what concerns they
21    expressed and the IDENTITY of each such executive.

22    56.    The factual basis for YOUR allegation that the press confused
23    YOUR products with MATTEL products and "has taken notice" of alleged confusion
24    between "Bratz" and "My Scene."

25    57.    All COMMUNICATIONS relating to customers who have allegedly
26    contacted YOU to purchase Mattel's "My Scene" dolls or any of the CONTESTED
27    MATTEL PRODUCTS.

28

EXHIBIT _4_ PAGE _85_

07209/2254636.1

-20-

FOURTH NOTICE OF DEPOSITION OF MGA

1       58.    The factual basis for YOUR claim that MATTEL has infringed,

2   diluted or otherwise violated any trade dress that YOU contend YOU own in the

3   CONTESTED MGA PRODUCTS.

4       59.    The factual basis for YOUR claim that MATTEL has engaged in

5   "strong-arm tactics, and other illegitimate, unfair and anti-competitive means."

6       60.    COMMUNICATIONS between YOU and any PERSON

7   RELATING TO the departure from MATTEL of any current or FORMER MATTEL

8   EMPLOYEE or MATTEL contractor.

9       61.    COMMUNICATIONS between YOU and any PERSON

10  RELATING TO the obligations to MATTEL, including the duty of confidentiality, of

11  any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

12      62.    COMMUNICATIONS between YOU and any current or FORMER

13  MATTEL EMPLOYEE or MATTEL or contractor RELATING TO the ownership of

14  any idea, concept, design, or product.

15      63.    COMMUNICATIONS between YOU and any PERSON

16  RELATING TO the retention, destruction, transfer, or use of any information or

17  DOCUMENTS known to or possessed by any current or former MATTEL employee or

18  contractor.

19      64.    Mattel's alleged "warnings," "threats" or "intimidation" that are the

20  subject of YOUR claims, including but not limited to all COMMUNICATIONS with

21  any present or former licensees of MATTEL and any present or former distributors and

22  retailers of MGA and MATTEL products.

23      65.    MATTEL's alleged responsibility for "shortage of doll hair in

24  October 2002."

25      66.    MATTEL's alleged "manipulation of the retail market," including by

26  its alleged tampering with MGA's retail displays.

27      67.    MATTEL's alleged false statements about YOU or YOUR business

28  practices.

EXHIBIT _4_ PAGE _86_

07209/2254636.1

FOURTH NOTICE OF DEPOSITION OF MGA

1        68.    MATTEL's alleged violation of any rules or restrictions relating to

2 data provided to subscribers by NPD or any other wrongful conduct relating to NPD.

3        69.    COMMUNICATIONS between YOU and NPD, other than periodic

4 reports transmitted by NPD or information made available to YOU by NPD, between

5 January 1, 2000 and the present.

6        70.    YOUR contracts and agreements with NPD since January 1, 1999,

7 including without limitation any allegation by NPD that YOU were or have been in

8 breach or violation thereof.

9        71.    The status of YOUR NPD subscription between January 1, 1999 and

10 the present.

11        72.    MATTEL's alleged inducement of CARU to place onerous

12 restrictions on MGA advertisements, and require MGA to amend aspects of

13 commercials that have gone unchallenged in other parties' commercials.

14        73.    COMMUNICATIONS between YOU and CARU between

15 January 1, 2000 and the present RELATING TO MATTEL, ANY CONTESTED MGA

16 PRODUCTS, ANY CONTESTED MATTEL PRODUCTS or any other subject or

17 matter that YOU are relying upon in this ACTION.

18        74.    MATTEL's allegedly improper influence with or within TIA,

19 including but not limited to the procedures for and manner in which the Toy of the Year

20 was selected for 2003.

21        75.    YOUR COMMUNICATIONS with TIA RELATING TO Toy of the

22 Year since January 1, 2000 or any other subject or matter on which YOU base any

23 claim.

24        76.    MATTEL's purported power, influence and intimidation to threaten

25 retailers, suppliers, licensees, distributors, manufacturers and industry bodies so as to

26 limit or prevent MGA from doing business.

27        77.    MATTEL's alleged intimidation of or threats against MGA's current

28 and potential employees.

EXHIBIT 4 PAGE 87

07209/2254636.1

-22-

FOURTH NOTICE OF DEPOSITION OF MGA

78.    YOUR monthly, quarterly and annual financial reports, including financial statements (both audited and unaudited) for the years 1998 through the present, inclusive.

79.    The identity of DOCUMENTS that YOU have reason to believe were created by or originated from MATTEL (excluding MATTEL products that YOU purchased at retail) at any time since January 1, 1998.

80.    The destruction of any DOCUMENT RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

81.    COMMUNICATIONS with, or inquiry or investigation by, any government entity, industry organization, safety compliance, or consumer organization RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

82.    YOUR understanding or belief of whether the BRYANT/MGA AGREEMENT was lawful when YOU entered into it, and DOCUMENTS and COMMUNICATIONS related thereto.

83.    The public perception of the CONTESTED MGA PRODUCTS, including without limitation with respect to the appropriateness or suitability of Bratz for children.

84.    The factual basis for YOUR alleged belief that YOU had the right to market products developed as a result of the BRYANT/MGA AGREEMENT and to the lawful right to fully exploit the drawings drawn and presented by BRYANT prior to the execution of the BRYANT/MGA AGREEMENT, and the DOCUMENTS and COMMUNICATIONS YOU so relied upon when YOU entered into the agreement.

85.    The factual basis for YOUR contention that YOU believed at the time YOU entered into the BRYANT/MGA AGREEMENT that it would be lawful for YOU to acquire THE BRATZ PITCH MATERIALS from BRYANT, and the DOCUMENTS and COMMUNICATIONS YOU so relied upon at the time YOU entered into the BRYANT/MGA AGREEMENT.

EXHIBIT 4 PAGE 88

-23-

1       86.    YOUR belief or non-belief that BRYANT created or improved any

2   of THE BRATZ PITCH MATERIALS while employed by MATTEL, and the

3   DOCUMENTS and COMMUNICATIONS YOU so relied upon.

4       87.    Any investigation or inquiry YOU conducted to confirm the timing

5   of BRYANT'S work prior to executing the BRYANT/MGA AGREEMENT, including

6   but not limited to DOCUMENTS and COMMUNICATIONS RELATING thereto.

7       88.    The factual bases for YOUR affirmative defenses.

8       89.    The IDENTITY of all DOCUMENTS that were in the possession of

9   Farhad Larian that YOU claim were reviewed by Quinn Emanuel Urquhart Oliver &

10  Hedges LLP at any time prior to January 1, 2007.

11      90.    The factual bases for YOUR allegations in the GLASER LETTER,

12  including YOUR allegation that DOCUMENTS in the possession of Farhad Larian and

13  reviewed by Quinn Emanuel Urquhart Oliver & Hedges LLP were purportedly

14  privileged and confidential.

15      91.    Any services Farhad Larian has provided to YOU since January 1,

16  2005, including any litigation consulting services.

17      92.    The IDENTITY of DOCUMENTS that Farhad Larian was provided

18  with or had access to, including YOUR allegedly privileged and confidential

19  DOCUMENTS, since January 1, 2001.

20      93.    The terms of any contracts or agreements, including any

21  confidentiality agreements, between YOU and Farhad Larian.

22      94.    The identity of each doll, accessory, product, work or item

23  produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or

24  on YOUR behalf that was BASED ON any BRATZ DESIGN or any design derivative

25  of any BRATZ DESIGN.

26      95.    Except for deposition testimony provided in this ACTION, the

27  testimony, transcripts, declarations, affidavits and other sworn written statements of any

28  other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO

-24-

EXHIBIT _4_ PAGE _89_

1    BRATZ and that REFER OR RELATE TO the time period prior to June 30, 2001

2    (regardless of when such testimony or sworn statement was taken, given, signed, made

3    or filed).

4           96.    The authenticity, content, timing, meaning, and truth and accuracy

5    of YOUR COMMUNICATIONS with any PERSON, including without limitation any

6    retailer and the media, that REFER OR RELATE TO the National Labor Committee

7    dated December 21, 2006 entitled "Made in China: The Sweatshop Behind the Bratz"

8    or the Hau Tai K4 factory.

9           97.    The identity of each doll, product, packaging or other matter that

10   YOU have accused of infringing, diluting or otherwise violating YOUR purported

11   rights in any of the CONTESTED MGA PRODUCTS, the IDENTITY of each

12   manufacturer of each doll, product, packaging or other matter and the specific aspects

13   of each such doll, product, packaging or other matter that YOU have claimed was

14   confusingly or substantially similar to any of the CONTESTED MGA PRODUCTS.

15          98.    The identity, and outcome and resolution, of each lawsuit that YOU

16   have brought or cease and desist letter YOU have sent each doll, product, packaging or

17   other matter that YOU have accused of infringing, diluting or otherwise violating

18   YOUR purported rights in any of the CONTESTED MGA PRODUCTS.

19          99.    The job responsibilities of each FORMER MATTEL EMPLOYEE

20   in the first six months after each joined MGA.

21          100.    YOUR scheduling, planning, inventory, shipping, distribution or

22   forecasting software since January 1, 2005, including but not limited to any and all

23   changes, improvements, acquisitions, upgrades and purchases.

24          101.    DOCUMENTS created by each of the FORMER MATTEL

25   EMPLOYEES in the first six months after each joined MGA

26          102.    The make-up, source, calculation and purpose of the amounts

27   presented in MGA documents Bates-numbered MGA 0101018-21 (Exhibit 661) and

28   MGA 08185789 (Exhibit 662).

EXHIBIT _4_ PAGE _90_

-25-