**Exhibit C**

EXHIBIT _4_ PAGE _91_

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12 | CARTER BRYANT, an individual,    | CASE NO. CV 04-09049 SGL (RNBx)
   |                                  |
13 |         Plaintiff,               | Consolidated with Case Nos. CV 04-
   |                                  | 9059 and CV 05-2727
14 |    vs.                           |
   |                                  | MATTEL, INC.'S SUPPLEMENTAL
15 | MATTEL, INC., a Delaware         | INTERROGATORIES
   | corporation,                     |
16 |                                  |
   |         Defendant.               |
17 |                                  |
18 | AND CONSOLIDATED ACTIONS         |
19

20

21
   PROPOUNDING PARTY:     Mattel, Inc.
22
   RESPONDING PARTIES:    MGA Entertainment, Inc., Isaac Larian, Carter
23
                          Bryant, MGA Entertainment (HK) Limited, MGAE
24
                          de Mexico S.R.L. de C.V., and Carlos Gustavo
25
                          Machado Gomez
26
   SET NO.:               SUPPLEMENTAL
27

28                                    EXHIBIT _4_ PAGE _92_

07209/2239571.2

                              MATTEL'S SUPPLEMENTAL INTERROGATORIES

1    Pursuant to <u>Federal Rule of Civil Procedure</u> 33, plaintiff Mattel, Inc.

2  ("Mattel") hereby requests that MGA Entertainment, Inc., Isaac Larian, Carter

3  Bryant, MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V., and

4  Carlos Gustavo Machado Gomez (collectively, "the Responding Parties")

5  individually answer the following Interrogatories separately and fully, in writing and

6  under oath, within 30 days after service hereof.  The Responding Parties shall be

7  obligated to supplement their responses to the Interrogatories at such times and to

8  the extent required by the <u>Federal Rules of Civil Procedure</u>.

9

10    **Definitions**

11    1.    "YOU" and "YOUR" mean each of the Responding Parties.

12    2.    "MGA" means MGA Entertainment, Inc., any of its current or

13  former employees, officers, directors, agents, representatives, attorneys, experts,

14  divisions, AFFILIATES, predecessors-in-interest and successors-in-interest, and any

15  other PERSON acting on its behalf, pursuant to its authority or subject to its control.

16  Without limiting the foregoing, "MGA" includes the entities known as ABC

17  International Traders or ABC International Traders, Inc.  For purposes of the these

18  Interrogatories, "MGA" does not include BRYANT.

19    3.    "MATTEL" means Mattel, Inc., its current employees, officers,

20  directors, agents, representatives, attorneys, parents, subsidiaries, divisions,

21  AFFILIATES, predecessors-in-interest and successors-in-interest, and any other

22  PERSON acting on its behalf, pursuant to its authority or subject to its control.

23    4.    "AFFILIATES" means any and all corporations, proprietorships,

24  d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or

25  indirectly, in whole or in part, own or control, are under common ownership or control

26  with, or are owned or controlled by a PERSON, party or entity, including without

27  limitation each parent, subsidiary and joint venture of such PERSON, party or entity.

28

EXHIBIT 4 PAGE 93

MATTEL'S SUPPLEMENTAL INTERROGATORIES

5.     "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

6.     "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

7.     "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. As used herein, "product, doll or DESIGN or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith. Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Interrogatories.

EXHIBIT _4_ PAGE _94_

1    8.    "SOLD," "SELL" or "SALE" means to distribute, market, license,

2  sell, offer to sell, or convey or transfer in any way for compensation.

3    9.    "DOCUMENT" or "DOCUMENTS" means all "writings" and

4  "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil

5  Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited

6  to, all writings and records of every type and description including, but not limited to,

7  contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail

8  ("e-mail"), records of telephone conversations, handwritten and typewritten notes of

9  any kind, statements, reports, minutes, recordings, transcripts and summaries of

10  meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes,

11  discs, printouts and records of all types, studies, instruction manuals, policy manuals

12  and statements, books, pamphlets, invoices, canceled checks and every other device or

13  medium by which or through which information of any type is transmitted, recorded or

14  preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall

15  include all copies that differ in any respect from the original or other versions of the

16  DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or

17  originals containing initials, comments, notations, insertions, corrections, marginal

18  notes, amendments or any other variation of any kind.

19    10.   "COMMUNICATION" or "COMMUNICATIONS" means and

20  includes any disclosure, transfer or exchange of information between two or more

21  PERSONS, whether orally or in writing, including without limitation, any conversation

22  or discussion by means of meeting, letter, telephone, note, memorandum, telegraph,

23  telex, telecopier, electronic mail, or any other electronic or other medium, including

24  without limitation in written, audio or video form.

25    11.   "MACHADO" means Carlos Gustavo Machado Gomez, and all of

26  his current or former employees, agents, representatives, attorneys, accountants,

27  vendors, consultants, independent contractors, predecessors-in-interest and successors-

28

EXHIBIT _4_ PAGE _95_

1  in-interest, and any other PERSON acting on his behalf, pursuant to his authority or
2  subject to his control.

3          12.    "TRUEBA" means Mariana Trueba Almada, and all of her current
4  or former employees, agents, representatives, attorneys, accountants, vendors,
5  consultants, independent contractors, predecessors-in-interest and successors-in-
6  interest, and any other PERSON acting on her behalf, pursuant to her authority or
7  subject to her control.

8          13.    "VARGAS" means Pablo Vargas San Jose, and all of his current or
9  former employees, agents, representatives, attorneys, accountants, vendors, consultants,
10 independent contractors, predecessors-in-interest and successors-in-interest, and any
11 other PERSON acting on his behalf, pursuant to his authority or subject to his control.

12         14.    "BRAWER" means Ron Brawer, and all of his current or former
13 employees, agents, representatives, attorneys, accountants, vendors, consultants,
14 independent contractors, predecessors-in-interest and successors-in-interest, and any
15 other PERSON acting on his behalf, pursuant to his authority or subject to his control.

16         15.    "CASTILLA" means Jorge Castilla, and all of his current or former
17 employees, agents, representatives, attorneys, accountants, vendors, consultants,
18 independent contractors, predecessors-in-interest and successors-in-interest, and any
19 other PERSON acting on his behalf, pursuant to his authority or subject to his control.

20         16.    "COONEY" means Dan Cooney, and all of his current or former
21 employees, agents, representatives, attorneys, accountants, vendors, consultants,
22 independent contractors, predecessors-in-interest and successors-in-interest, and any
23 other PERSON acting on his behalf, pursuant to his authority or subject to his control.

24         17.    "BRISBOIS" means Janine Brisbois, and all of her current or former
25 employees, agents, representatives, attorneys, accountants, vendors, consultants,
26 independent contractors, predecessors-in-interest and successors-in-interest, and any
27 other PERSON acting on her behalf, pursuant to her authority or subject to her control.

28

EXHIBIT _4_ PAGE _96_

18.  "RAE" means Ron Rae, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on her behalf, pursuant to her authority or subject to his control.

19.  "CONTRERAS" means Nick Contreras, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on her behalf, pursuant to her authority or subject to his control.

20.  "ABUNDIS" means Ricardo Abundis, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on her behalf, pursuant to her authority or subject to his control.

21.  The "FORMER MATTEL EMPLOYEES" means MACHADO, TRUEBA, VARGAS, BRAWER, CASTILLA, COONEY, BRISBOIS, CONTRERAS, RAE, ABUNDIS, and any other former Mattel employee or contractor who misappropriated Mattel trade secrets or violated his or her obligations to maintain the confidentiality of Mattel's trade secrets.

22.  "REFER OR RELATE TO" a given subject matter means relate to, refer to, constitute, contain, embody, depict, incorporate, reflect, evidence, identify, state, deal with, comment on, respond to, describe, analyze, support, refute, contradict, or in any way pertain to that subject matter, either directly or indirectly.

23.  "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-9059 SGL (RNBx), filed by Mattel on April 27, 2004, and the cases consolidated therewith.

24.  "SLEEKCRAFT FACTORS" means those factors enumerated in AMF Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979), and includes specifically: (1) strength of the mark; (2) similarity of the marks; (3) relatedness of the goods; (4) marketing channels; (5) type of goods and purchaser's likely degree of care; (6)

EXHIBIT __4__ PAGE __77__

-6-

1   evidence of actual confusion; (7) likelihood of expansion of the product lines; and (8)

2   defendant's intent in selecting the mark.

3        25.   "MATTEL DOCUMENTS" means any and all DOCUMENTS

4   stolen, obtained or taken from MATTEL by any PERSON, including but not limited to

5   the DOCUMENTS identified as Bates Numbers M 0019162-M 0019365, M 0019375-

6   M 0019491, M 0019492-M 0019586, M 0030576, M 0019587-M 0022008, M

7   0022009-M 0026076, M 0026077-M 0029024, M 0029025-M 0029042, M 0029043-M

8   0029044, M 0029045-M 0029050, M 0029051-M 0029053, M 0031471-M 0031473, M

9   0029054-M 0029255, M 0031474-M 0031485, M 0029226-M 0030163, M 0030164-M

10   0030173, M 0030174-M 0030183, M 0030261-M 0030268, M 0030269-M 0030278, M

11   0030440-M 0030441, M 0030505-M 0030575, M 0030577-M 0030608, M 0019366-M

12   0019374, M 0030184-M 0030240, M 0030254-M 0030260, M 0030279-M 0030439, M

13   0030442-M 0030470, M 0030471-M 0030501, M 0030609, M 0030610-M 0030625, M

14   0030626-M 0030674, M 0030241-M 0030253, M 0030502-M 0030504, M 0030675-M

15   0030754, M 0030755-M 0030756, M 0030770-M 0030782, M 0030757-M 0030769, M

16   0030783-M 0030788, M 0030789-M 0030799, M 0030800-M 0030834, M 0030835, M

17   0030836-M 0030838, M 0030839-M 0030841, M 0030842-M 0030845, M 0030846-M

18   0030850, M 0030851- M 0030959, M 0030960-M 0030972, M 0030973-M 0031141,

19   M 0031142-M 0031153, M 0031154-M 0031162, M 0031163-M 0031172, M 0031173,

20   M 0031174-M 0031206, M 0031207-M 0031223, M 0031224-M 0031229, M

21   0031230-M 0031247, M 0031248-M 0031258, M 0031259-M 0031262, M 0031263-M

22   0031264, M 0031265, M 0031266, M 0031267, M 0031268, M 0031269, M 0031270-

23   M 0031278, M 0031279-M 0031280, M 0031281-M 0031282, M 0031283-M 0031291,

24   M 0031292-M 0031470, M 0032318, M 0031486-M 0031503, M 0031504-M 0031612,

25   M 0031613-M 0031860, M 0031863-M 0031864, M 0031865-M 0031919, M

26   0031861-M 0031862, M 0031925-M 0032000, M 0031920-M 0031924, M 0032001-M

27   0032009, M 0032010-M 0032057, M 0032058, M 0032059-M 0032070, M 0032071-M

28   0032288, M 0032289, M 0032290-M 0032317, M 0059836-M 0059837, M 0075253-M

EXHIBIT _4_ PAGE _98_

MATTEL'S SUPPLEMENTAL INTERROGATORIES

07209/2239571.2

1  0075260, M 0075261-M 0075277, M 0075278-M 0075289, M 0075290-M 0075307, M
2  0075308-M 0075309, M 0075310-M 0075315, M 0075316-M 0075317, M 0075318-M
3  0075322, M 0075323-M 0075324, M 0075325, M 0075326-M 0075328, M 0075329-M
4  0075333, M 0075334-M 0075375, M 0075376-M 0075378, M 0075379-M 0075380, M
5  0075381-M 0075384, M 0075385, M 0075386-M 0075388, M 0075389, M 0075390,
6  M 0075391, M 0075392-M 0075398, M 0075399-M 0075400, M 0075401-M 0075407,
7  M 0075408, M 0075409-M 0075416, M 0075417-M 0075420, M 0075421, M
8  0075422-M 0075469, M 0075470-M 0075490, M 0075491-M 0075494, M 0075495-M
9  0075515, M 0075516-M 0075531, M 0075532-M 0075552, M 0075553-M 0075572, M
10 0075573, M 0075574-M 0075594, M 0075595-M 0075616, M 0075617, M 0075618-M
11 0075619, M 0075620-M 0075635, M 0075636-M 0075654, M 0075655-M 0075661, M
12 0075662-M 0075699, M 0075700-M 0075709, M 0075710-M 0075713, M 0075714-M
13 0075775, M 0075776-M 0075780, M 0075781-M 0075798, M 0075799-M 0075842, M
14 0075843-M 0075906, M 0075907-M 0075949, M 0075950-M 0076018, M 0076019, M
15 0076020-M 0076132, M 0076133-M 0076143, M 0076144-M 0076145, M 0076146-M
16 0076148, M 0076149-M 0076155, M 0076156-M 0076169, M 0076170-M 0076171, M
17 0076172-M 0076196, M 0076197-M 0076215, M 0076216-M 0076250, M 0076251-M
18 0076264, M 0076265-M 0076279, M 0076280, M 0076281-M 0076311, M 0076312-M
19 0076362, M 0076363-M 0076370, M 0076371, M 0076372-M 0076425, M 0076426-M
20 0076427, M 0076428-M 0076431, M 0076432- M 0076442, M 0076443-M 0076446,
21 M 0100646-M 0100653, M 0098687-M 0098688, M 0098689-M 0098697, M
22 0098698-M 0098723, M 0098724-M 0098771, M 0098772-M 0098832, M 0098833-M
23 0098846, M 0098847-M 0098865, M 0098866-M 0098879, M 0098880-M 0098883, M
24 0098884-M 0098933, M 0098934-M 0098936, M 0098937-M 0098971, M 0098972-M
25 0099436, M 0099437-M 0099439, M 0099440-M 0099448, M 0099449-M 0099461, M
26 0099462-M 0099471, M 0099472-M 0099476, M 0099477-M 0099493, M 0099494-M
27 0099529, M 0099530-M 0099594, M 0099595-M 0099597, M 0099598-M 0099601, M
28 0099602-M 0099618, M 0099619-M 0099628, M 0099629-M 0099656, M 0099657-M

EXHIBIT _4_ PAGE 79

07209/2239571.2

1  0099665, M 0099666-M 0099725, M 0099726-M 0100622, M 0100623-M 0100645, M

2  0100646-M 0100653, M 0100654-M 0100695, M 0100696-M 0100698, M 0100699-M

3  0100700, M 0100701-M 0100735, M 0100736-M 0100741, M 0100742-M 0100774, M

4  0100775-M 0100778, M 0100779-M 0100780, M 0100781, M 0100782, M 0100783-M

5  0100789, M 0100790-M 0100795, M 0100796-M 0100858, M 0100859-M 0100868, M

6  0100869-M 0100878, M 0100879-M 0100891, M 0100892-M 0100905, M 0100906-M

7  0100918, M 0100919-M 0100932, M 0100933-M 0100941, M 0100942-M 0100952, M

8  0100953, M 0100954-M 0100955, M 0100956-M 0100983, M 0100984-M 0101013, M

9  0101014-M 0101064, M 0101065 and M 0101069-M 0101128.

10      26.   "DIGITAL INFORMATION" means any information created or

11  stored digitally, including but not limited to electronically, magnetically or optically.

12      27.   "STORAGE DEVICE" means any computer hard drive, memory,

13  USB device, tape, storage array or any other device or medium that allows a user,

14  whether permanently, temporarily or otherwise, to create, generate, transmit, copy,

15  retain, store or maintain DIGITAL INFORMATION.

16      28.   "SOURCE OF INFORMATION" means any medium containing

17  DOCUMENTS or other information, whether in paper, electronic or other form,

18  including but not limited to any STORAGE DEVICE, file, file cabinet or other any

19  other source of information or DOCUMENTS.

20      29.   "COLLECT," "COLLECTED" or "COLLECTION," with reference

21  to DOCUMENTS, means to collect, review, produce, request, seek, look for, search for,

22  analyze or in any other way collect or review or attempt to collect or review such

23  DOCUMENTS in connection with YOUR search for, review of and/or production of

24  DOCUMENTS in this ACTION.

25      30.   "IDENTIFY" or "IDENTITY" means the following:

26      (a)   with reference to an individual or individuals, means to state,

27  fully and separately as to each, such individual's full name, any known business title,

28  current or last known business affiliation, current or last known residential address,

-9-

EXHIBIT 4 PAGE 102

1   current or last known business address, current or last known relationship to MGA, and

2   current or last known telephone number.

3         (b)     with reference to an entity or entities, means to state, fully and

4   separately as to each, such entity's full name, state (or country) of incorporation or

5   organization, present or last known address, and present or last known telephone

6   number.

7         (c)     with reference to a SOURCE OF INFORMATION, means

8   to describe and state, fully and separately as to each, the SOURCE OF

9   INFORMATION so as to distinctly identify each such SOURCE OF INFORMATION

10  and differentiate each such SOURCE OF INFORMATION from all other SOURCES

11  OF INFORMATION, including without limitation by stating its nature (e.g., USB

12  drive, computer hard drive, file cabinet, etc.), and any unique identifier information

13  (such as hard drive serial number); the physical location(s), including full address

14  information and full identifying computer network drive information if applicable, of

15  each such SOURCE OF INFORMATION (as of the time of YOUR COLLECTION of

16  DOCUMENTS from the SOURCE OF INFORMATION, regardless of whether such

17  DOCUMENTS were thereafter moved elsewhere for the purpose of YOUR review); the

18  IDENTITY of each natural person or individual who is, was or has been associated

19  with each such SOURCE OF INFORMATION; the date(s) on which YOU

20  COLLECTED DOCUMENTS from each such SOURCE OF INFORMATION in

21  connection with this ACTION; and the IDENTITY of any DOCUMENTS, by Bates

22  number, that YOU have produced from each such SOURCE OF INFORMATION to

23  Mattel in this ACTION.

24        (d)     with reference to any other DOCUMENT or DOCUMENTS,

25  means to describe each DOCUMENT by Bates number.   In the event that a

26  DOCUMENT does not have a Bates number, IDENTIFY means, with respect to each

27  such DOCUMENT, to provide a complete description of it such that it may be the

28  subject of a request for the production of documents, including by stating the date,

EXHIBIT __4__ PAGE _101_

MATTEL'S SUPPLEMENTAL INTERROGATORIES

1  identity of the author, addressee(s), signatories, parties, or other PERSONS identified
2  therein, its present location or custodian and a description of its contents.

3          (e)  with reference to the payment of money or other item of
4  value, or any promise, agreement, proposal or offer to pay money or any item of value,
5  means to state the amount of the payment or the value of the item, the IDENTITY of
6  the payor, the IDENTITY of the payee, the IDENTITY of the PERSON on whose
7  behalf it is being made, the IDENTITY of the PERSON on whose behalf it is being
8  received, the date(s) on which such payment or item of value was paid, promised,
9  agreed to be paid, proposed or offered, the nature of the method of payment (e.g., cash,
10  check) and any identifying information accompanying such payment (e.g., check
11  number), and the IDENTITY of each bank or financial institution involved therein.

12      31.  "Any" as used in these interrogatories includes the word "all," and
13  the word "all" as used in these interrogatories includes the word "any."

14      32.  The singular form of a noun or pronoun includes within its meaning
15  the plural form of the noun or pronoun so used, and vice versa; the use of the masculine
16  form of a pronoun also includes within its meaning the feminine form of the pronoun so
17  used, and vice versa; the use of any tense of any verb includes also within its meaning
18  all other tenses of the verb so used, whenever such construction results in a broader
19  request for information; and "and" includes "or" and vice versa, whenever such
20  construction results in a broader disclosure of documents or information.

21
22                **Instructions**
23      A.  When  an  interrogatory  requests  disclosure  of  a
24  COMMUNICATION or other information as to which YOU claim any privilege or
25  protection as a ground for nondisclosure, identify each PERSON who participated in or
26  had knowledge of the COMMUNICATION or other information and provide the
27  following:

28      (i)  the privilege or protection that YOU claim precludes disclosure;

(ii)    the subject matter of the COMMUNICATION or information (without revealing the content as to which the privilege is claimed); and

(iii)   any additional facts or grounds on which YOU base YOUR claim of privilege or protection.

B.    When an interrogatory requests that YOU provide information, YOU are required to supply all information known by or available to YOU or YOUR employees, officers, directors, agents, representatives, attorneys and experts. If YOU cannot completely answer the interrogatory after making diligent efforts to do so, please so state. Then describe in detail all efforts made to answer the interrogatory; identify every PERSON involved in such efforts; and state the additional information YOU need, if any, to respond completely to the interrogatory.

## **Interrogatories**

INTERROGATORY NO. 51:

For each concept, design, product, product packaging or other matter that YOU contend MATTEL has copied, infringed or diluted, including but not limited to those identified in MGA's Responses to Mattel, Inc.'s First Set of Interrogatories Re Claims of Unfair Competition, Response to Interrogatory No. 2 (and any Supplemental Responses to such Interrogatory), describe, fully and separately, each and every concept, design, product, product packaging or other matter of or by MATTEL that YOU contend is a copy of, infringes or dilutes YOUR alleged concept(s), design(s), product(s), product packaging or other matter. Your answer should describe the Mattel concept, design, product, product packaging or other matter with specificity and in detail (including without limitation by product name, product number, SKU, or bar code number), and specify those elements or attributes of YOUR claimed concept,

EXHIBIT _4_ PAGE _103_

MATTEL'S SUPPLEMENTAL INTERROGATORIES

1  design, product, product packaging or other matter that YOU contend were copied,
2  infringed or diluted by MATTEL.

3

4  INTERROGATORY NO. 52:

5         For each trade dress that YOU contend MATTEL copied, infringed or
6  diluted, separately IDENTIFY each product sold by YOU or YOUR licensees that
7  incorporates such trade dress and, for each such product, separately state (a) the number
8  of units, by year, of each such product sold by YOU or YOUR licensees; (b) revenue
9  received by YOU from such SALES of each such product; (c) all costs YOU have
10 incurred in connection with each product, including but not limited to YOUR cost of
11 good sold, and (d) YOUR gross and net profits from each such product.

12

13 INTERROGATORY NO. 53:

14        For each MATTEL concept, design, product, product packaging or other
15 matter that YOU contend is likely to cause confusion, to cause mistake, or to deceive as
16 to affiliation, connection, or association, or as to origin, sponsorship, or approval,
17 separately state all facts that support YOUR contention of such, including but not
18 limited to all facts that support YOUR contention, if YOU so contend, that any of the
19 SLEEKCRAFT FACTORS weighs against MATTEL, and IDENTIFY all PERSONS
20 with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO
21 such facts.

22

23 INTERROGATORY NO. 54:

24        For each concept, design, product, product packaging or other matter that
25 YOU contend MATTEL copied, infringed or diluted, state all facts that support
26 contention, if YOU so contend, that such copying or infringement was intentional or
27 willful, and IDENTIFY all PERSONS with knowledge of such facts and all
28 DOCUMENTS that REFER OR RELATE TO such facts.

EXHIBIT _4_ PAGE _104_

07209/2239571.2

MATTEL'S SUPPLEMENTAL INTERROGATORIES

INTERROGATORY NO. 55:

State all facts which support the allegation in Paragraph 120 of YOUR COMPLAINT that MATTEL has "caused and continues to cause blurring and dilution of the distinctive look of MGA's products and trade dress," and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

INTERROGATORY NO. 56:

IDENTIFY all MATTEL DOCUMENTS that MGA has obtained, received, reviewed, copied, reproduced, transmitted, requested or used at any time since January 1, 1999, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such MATTEL DOCUMENTS.

INTERROGATORY NO. 57:

IDENTIFY all DOCUMENTS that REFER OR RELATE TO any MATTEL product or plan that any of the FORMER MATTEL EMPLOYEES provided, transmitted or disclosed to, shared with or used on behalf of MGA at any time since January 1, 1999, and IDENTIFY all PERSONS with knowledge of such facts.

INTERROGATORY NO. 58:

State all facts which support YOUR contention, if YOU so contend, that YOU and/or MGA did not obtain any MATTEL DOCUMENTS through improper means, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

EXHIBIT _4_ PAGE _105_

MATTEL'S SUPPLEMENTAL INTERROGATORIES

07209/2239571.2

**INTERROGATORY NO. 59:**

State all facts which support YOUR contention, if YOU so contend, that any information in the MATTEL DOCUMENTS does not and/or did not derive independent economic value from not being generally known to the public or other PERSONS who can obtain economic value from its disclosure or use, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**INTERROGATORY NO. 60:**

State all facts which support YOUR contention, if YOU so contend, that any information in the MATTEL DOCUMENTS was known to the public or to PERSONS who can obtain economic value from its disclosure or use, and IDENTIFY all PERSONS with knowledge of the foregoing and all DOCUMENTS that REFER OR RELATE TO the foregoing.

**INTERROGATORY NO. 61:**

State all facts which support YOUR contention, if YOU so contend, that YOU and/or MGA independently developed, or did not otherwise use or disclose, any information in the MATTEL DOCUMENTS, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**INTERROGATORY NO. 62:**

State all facts which support YOUR contention that YOUR use or disclosure of information in the MATTEL DOCUMENTS neither benefited YOU nor MGA nor harmed MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

EXHIBIT 4  PAGE 106

-15-

07209/2239571.2

1  INTERROGATORY NO. 63:

2      State all facts which support YOUR contention, if YOU so contend, that

3  YOU and/or MGA had, has or have any right to copy, possess, use or disclose any

4  MATTEL DOCUMENT, and IDENTIFY all PERSONS with knowledge of such facts

5  and all DOCUMENTS that REFER OR RELATE TO such facts.

6

7  INTERROGATORY NO. 64:

8      To the extent YOU have not previously disclosed such information in a

9  prior interrogatory response YOU provided to Mattel, state all facts which support

10  YOUR claims against Mattel in THIS ACTION, and IDENTIFY all PERSONS with

11  knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such

12  facts.

13

14  INTERROGATORY NO. 65:

15      Describe in detail each and every action YOU have taken, or directed be

16  taken, to locate, maintain or preserve evidence which is, might be or could be relevant

17  or potentially relevant to THIS ACTION.

18

19  INTERROGATORY NO. 66:

20      IDENTIFY each and every SOURCE OF INFORMATION from which

21  YOU have COLLECTED DOCUMENTS for responsiveness and potential production

22  in THIS ACTION.

23

24  INTERROGATORY NO. 67:

25      IDENTIFY fully and separately each and every payment of money or

26  other item of value that YOU have made or given, or any promise, agreement, proposal

27  or offer by YOU to pay money or give any item of value, to or on behalf of any

28  PERSON identified in any of the parties' initial disclosures in this ACTION at any time

1   when such PERSON was not an employee of MGA, including without limitation with

2   respect to legal fees incurred by or on behalf of such PERSON.

3

4   INTERROGATORY NO. 68:

5          To the extent not disclosed in response to prior Interrogatories, IDENTIFY

6   fully and separately each and every payment of money or other item of value that MGA

7   has made, or any promise, agreement, proposal or offer by MGA to pay money or give

8   any item of value, to or on behalf of any of the FORMER MATTEL EMPLOYEES,

9   including without limitation with respect to legal fees incurred by or on behalf of any of

10  the FORMER MATTEL EMPLOYEES.

11

12  INTERROGATORY NO. 69:

13  To the extent not disclosed in response to prior Interrogatories, IDENTIFY fully

14  and separately each and every payment of money or other item of value that YOU have

15  made, or any promise, agreement, proposal or offer by YOU to pay money or give any

16  item of value, since January 1, 1998 to or on behalf of any PERSON who has been

17  employed by MATTEL (excluding ordinary salary and benefits paid to such PERSON

18  while an MGA employee), including without limitation with respect to legal fees

19  incurred by or on behalf of such PERSON and bonuses paid to such PERSON.

20

21

22  DATED: _____        QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
23

24                                  By_____
25                                    B. Dylan Proctor
                                      Attorneys for Mattel, Inc.
26

27

28                                          EXHIBIT _4_ PAGE _108_

# EXHIBIT 5

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
)
          PLAINTIFF, )
)
    V. )   NO.  CV 04-9040  SGL (RNBX)
)
MATTEL, INC., A DELAWARE )
CORPORATION, )
)
          DEFENDANTS. )
————————————————— )
)
AND CONSOLIDATED ACTION (S). )
————————————————— )

# C O N F I D E N T I A L

### ATTORNEYS' EYES ONLY

## DEPOSITION OF LISA TONNU

## VOLUME II

## SEPTEMBER 24, 2007



C O U R T   R E P O R T E R S

REPORTED BY:
J'ANA SIEGERS
CSR NO.  10845
JOB NO. 07AE614-JS

EXHIBIT _5_ PAGE _109_

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

| | | |
|---|---|---|
| 01:47:06 | 1 | AS OF DECEMBER 31ST, 2006, OF $438,000,473 (*SIC*). |
| 01:47:14 | 2 | DO YOU KNOW WHETHER THAT -- |
| 01:47:15 | 3 | MS. MORGENTHALER LEVER:  IS THAT 75? |
| 01:47:16 | 4 | MR. COREY:  EXCUSE ME.  $75. |
| 01:47:20 | 5 | Q.   DO YOU KNOW WHETHER THAT BALANCE HAS |
| 01:47:22 | 6 | GONE -- HAS IT INCREASED OR DECREASED SINCE |
| 01:47:25 | 7 | DECEMBER 31ST, 2006? |
| 01:47:29 | 8 | A.   I DON'T KNOW. |
| 01:47:48 | 9 | Q.   NOW, LOOKING AT LIABILITIES, YOU'VE GOT A |
| 01:47:50 | 10 | LONG-TERM LOAN OF $150 MILLION, AND YOU DIDN'T HAVE |
| 01:47:58 | 11 | ONE IN THE PRIOR YEAR.  WHAT WAS THAT LOAN FOR? |
| 01:48:03 | 12 | A.   THAT WAS ACQUISITION DEBT. |
| 01:48:05 | 13 | Q.   FOR THE LITTLE TIKES ACQUISITION? |
| 01:48:07 | 14 | A.   YES. |
| 01:48:07 | 15 | Q.   WAS IT STRICTLY A FINANCIAL -- WAS IT A |
| 01:48:13 | 16 | CASH TRANSACTION? |
| 01:48:14 | 17 | MS. MORGENTHALER LEVER:  OBJECTION.  VAGUE |
| 01:48:15 | 18 | AND AMBIGUOUS.  CALLS FOR SPECULATION.  LACK OF |
| 01:48:16 | 19 | FOUNDATION. |
| 01:48:19 | 20 | THE DEPONENT:  CAN YOU -- I'M SORRY.  CAN |
| 01:48:20 | 21 | YOU EXPLAIN YOUR QUESTION? |
| 01:48:21 | 22 | BY MR. COREY: |
| 01:48:22 | 23 | Q.   YEAH. |
| 01:48:22 | 24 | WAS THE ACQUISITION -- WAS THE ACQUISITION |
| 01:48:28 | 25 | A CASH TRANSACTION OR WAS THERE ANY STOCK THAT MGA |

EXHIBIT _5_ PAGE _110_

350

| | | |
|---|---|---|
| 01:48:32 | 1 | PROVIDED TO THE FORMER LITTLE TIKES OWNERS AS PART |
| 01:48:38 | 2 | OF THE TRANSACTION? |
| 01:48:40 | 3 | MS. MORGENTHALER LEVER:  YOU MEAN THE |
| 01:48:42 | 4 | CONSIDERATION PROVIDED FOR THE ACQUISITION? |
| 01:48:43 | 5 | MR. COREY:  YEAH. |
| 01:48:46 | 6 | MS. MORGENTHALER LEVER:  YOU CAN ANSWER, |
| 01:48:47 | 7 | ASSUMING THAT THE INFORMATION IS NOT OBTAINED SOLELY |
| 01:48:51 | 8 | THROUGH ATTORNEY-CLIENT COMMUNICATIONS. |
| 01:48:54 | 9 | THE DEPONENT:  CASH. |
| 01:48:54 | 10 | BY MR. COREY: |
| 01:48:56 | 11 | Q.   OKAY.  AND WHO'S THE LENDER FOR THAT LOAN? |
| 01:48:59 | 12 | MS. MORGENTHALER LEVER:  OBJECTION. |
| 01:49:00 | 13 | OUTSIDE THE SCOPE.  SAME INSTRUCTION. |
| 01:49:07 | 14 | THE DEPONENT:  WACHOVIA. |
| 01:49:07 | 15 | BY MR. COREY: |
| 01:49:08 | 16 | Q.   HAS ANY OF THAT LOAN BEEN PAID DOWN SINCE |
| 01:49:11 | 17 | DECEMBER 31ST, 2006? |
| 01:49:12 | 18 | MS. MORGENTHALER LEVER:  OBJECTION. |
| 01:49:13 | 19 | OUTSIDE THE SCOPE.  CALLS FOR SPECULATION.  LACK OF |
| 01:49:16 | 20 | FOUNDATION. |
| 01:49:20 | 21 | THE DEPONENT:  NOT THAT I'M AWARE OF. |
| 01:49:21 | 22 | BY MR. COREY: |
| 01:49:22 | 23 | Q.   IS THAT SOMETHING THAT YOU WOULD EXPECT TO |
| 01:49:24 | 24 | BE AWARE OF IN YOUR EMPLOYMENT WITH MGA, YOUR JOB |
| 01:49:28 | 25 | RESPONSIBILITIES? |

EXHIBIT _5_ PAGE _///_

351

1   DEPONENT.   [FED. R. CIV. P. 30(F)(1)].

2       BEFORE COMPLETION OF THE DEPOSITION, REVIEW OF

3   THE TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.   IF

4   REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND

5   PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED

6   ARE APPENDED HERETO.   [FED. R. CIV. P. 30(E)].

7

8

9   DATED:   OCTOBER 7, 2007.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT _5_ PAGE _112_

504

A & E Court Reporters        (213) 955-0070        Fax: (213) 955-0077

# EXHIBIT 6

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT,  AN INDIVIDUAL,    )
                                  )
               PLAINTIFF,         )
                                  )
        V.                        )        NO.  CV 04-9040 SGL (RNBX)
                                  )
MATTEL, INC., A DELAWARE          )
CORPORATION,                      )
                                  )
               DEFENDANTS.        )
_____    )
                                  )
AND CONSOLIDATED ACTION (S).      )
_____    )

# C O N F I D E N T I A L

**(PURSUANT TO PROTECTIVE ORDER, THIS TRANSCRIPT HAS BEEN DESIGNATED CONFIDENTIAL, ATTORNEYS' EYES ONLY)**

# DEPOSITION OF LISA TONNU

# VOLUME IV

# JANUARY 17, 2008



REPORTED BY:
PAULA PYBURN
CSR NO.  7304
JOB NO. 08AE029-PP

EXHIBIT _6_ PAGE _113_

COURT REPORTERS
515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

1   ON BEHALF OF ISAAC LARIAN OR ANY FAMILY MEMBER OF

2   ISAAC LARIAN SINCE JANUARY 1ST, 1999, INCLUDING

3   WITHOUT LIMITATION (A) THE AMOUNTS OF SUCH PAYMENT

4   AND THE EQUIVALENT DOLLAR VALUE OF EACH -- OF ITEM

5   OF VALUE; (B) THE DATES OF SUCH PAYMENTS; (C) THE          09:29:37

6   IDENTITY OF EACH RECIPIENT OF SUCH PAYMENT; (D) THE

7   IDENTITY OF EACH BANK OR FINANCIAL INSTITUTION

8   ACCOUNT TO WHICH SUCH PAYMENT WAS MADE; AND (E) THE

9   REASONS FOR EACH SUCH PAYMENT.

10          DO YOU UNDERSTAND THAT YOU ARE THE DESIGNEE          09:29:50

11  TO TESTIFY ON BEHALF OF M.G.A. ENTERTAINMENT WITH

12  RESPECT TO TOPIC NO. 11?

13      A.   YES.

14      Q.   AND TOPIC NO. 12 REQUESTS SIMILAR

15  INFORMATION FOR PAYMENTS MADE TO, FOR OR ON BEHALF          09:29:59

16  OF FARHAD LARIAN OR ANY FAMILY MEMBER.

17          DO YOU ALSO UNDERSTAND THAT YOU'RE THE

18  DESIGNEE TO TESTIFY ON BEHALF OF M.G.A.

19  ENTERTAINMENT WITH RESPECT TO TOPIC NO. 12?

20      A.   YES.                                                09:30:11

21      Q.   AND TOPIC NUMBER NO. -- NO. 15 SEEKS

22  SIMILAR INFORMATION WITH RESPECT TO VERONICA MARLOW,

23  AMY MYERS, SARAH HALPERN, MAUREEN MULLEN AND DAVID

24  DEES.

25          DO YOU ALSO UNDERSTAND THAT YOU'RE THE              09:30:26

EXHIBIT _6_ PAGE _114_

742

1    DISTRIBUTION ACCOUNT?

2         A.   SOME OF THE TRANSACTIONS IN HERE ARE ON

3    BEHALF OF, AND SO IT WOULD -- WE TREAT IT AS A

4    DISTRIBUTION TO THE SHAREHOLDER.

5         Q.   SO -- SO -- IT'S -- SO THAT THE MONEY IS --          11:22:47

6    IS GOING TO ISAAC LARIAN'S FATHER BUT THE SOURCE OF

7    THE MONEY IS EITHER AN ADVANCE -- OR IT'S AN ADVANCE

8    ON A DISTRIBUTION OR SOMETHING LIKE THAT; IS THAT

9    RIGHT?

10        A.   IT'S NOT AN ADVANCE; IT'S TREATED AS A             11:23:03

11   DISTRIBUTION.

12        Q.   IT'S A DISTRIBUTION?

13        A.   (WITNESS NODS HEAD UP AND DOWN.)

14        Q.   IF YOU LOOK AT -- IF YOU LOOK AT ISAAC

15   LARIAN'S ENTRY, STARTING ON 22 IT HAS 1999 INCOME           11:23:34

16   TAXES AND 2001 TAXES, BUT THERE'S NO ENTRY FOR 2000

17   TAXES.

18             DO YOU KNOW WHY THAT IS?

19        A.   NO.

20        Q.   AND DO YOU KNOW WHETHER THESE ARE                   11:23:52

21   DISTRIBUTIONS TO -- WELL, HELP ME -- HELP ME

22   UNDERSTAND HOW -- HOW THIS -- WELL, LET'S DO IT THIS

23   WAY.

24             AND WE HAD STARTED DOWN THIS ROAD BEFORE,

25   BUT YOU WERE INSTRUCTED NOT TO ANSWER.  CAN YOU             11:24:16

EXHIBIT _6_ PAGE _115_

```
 1    IDENTIFY FOR ME THE SHAREHOLDERS IN M.G.A.

 2    ENTERTAINMENT, INC.?

 3        A.    CURRENTLY?

 4        Q.    YES.

 5        A.    LARIAN FAMILY TRUST, ISAAC LARIAN GRANTOR          11:24:31

 6    ANNUITY TRUST, ANGELA LARIAN GRANTOR ANNUITY TRUST,

 7    MAKABI FAMILY TRUST, JAHANGIR MAKABI GRANTOR ANNUITY

 8    TRUST, SHIRIN MAKABI GRANTOR ANNUITY TRUST.

 9        Q.    DO YOU KNOW WHAT THE CURRENT PROPORTIONS OF

10    OWNERSHIP ARE?                                              11:25:07

11        A.    NOT SPECIFIC TO EACH TRUST, NO.

12        Q.    DO YOU KNOW BETWEEN MR. MAKABI'S FAMILY AND

13    MR. -- THE MAKABI TRUSTS AND THE LARIAN TRUSTS?

14        A.    CAN YOU BE MORE SPECIFIC?

15        Q.    SURE.  DO YOU KNOW -- DO YOU KNOW THE             11:25:26

16    PROPORTION OF OWNERSHIP IF YOU DIVIDE IT BETWEEN THE

17    MAKABI TRUSTS AND THE LARIAN TRUSTS?

18        A.    WHICH TRUSTS?

19        Q.    YOU SAID YOU DIDN'T -- TAKE A STEP BACK.

20             DO YOU KNOW WHAT PERCENTAGE OF M.G.A.             11:25:36

21    ENTERTAINMENT'S STOCK THE LARIAN FAMILY TRUST OWNS?

22        A.    NO, I DON'T KNOW SPECIFICALLY THE AMOUNT.

23    I CAN'T RECALL.

24        Q.    WHAT'S -- WHAT'S -- YOU CAN'T RECALL

25    CURRENTLY?                                                  11:25:53
```

EXHIBIT _6_ PAGE _116_

815

```
 1        A.    RIGHT.

 2        Q.    WHAT'S YOUR BEST ESTIMATE?

 3              MR. ROTH:   OBJECTION; CALLS FOR

 4   SPECULATION.

 5              THE WITNESS:   I DON'T -- I DON'T KNOW THE          11:26:01

 6   EXACT PERCENTAGE.

 7   BY MR. COREY:

 8        Q.    DO YOU KNOW THE PERCENTAGE BETWEEN -- THAT

 9   THE LARIAN FAMILY TRUST, THE ISAAC LARIAN GRANTOR

10   ANNUITY TRUST, AND THE ANGELA LARIAN GRANTOR ANNUITY        11:26:13

11   TRUSTS TOGETHER OWN?

12        A.    YES.

13        Q.    WHAT IS THAT?

14        A.    81.82 PERCENT.

15        Q.    81-POINT --                                       11:26:23

16        A.    -82.

17        Q.    AND THE BALANCE IS OWNED IN SOME PROPORTION

18   BY THE MAKABI FAMILY TRUST, THE MR. MAKABI GRANTOR

19   ANNUITY TRUST AND THE SHIRIN MAKABI GRANTOR ANNUITY

20   TRUST; CORRECT?                                              11:26:46

21        A.    YES.

22        Q.    AND HOW LONG HAS THAT BEEN THE PROPORTION

23   OF OWNERSHIP?

24        A.    SINCE I'VE BEEN WITH THE COMPANY.

25        Q.    SO THE ENTRIES RELATING TO MR. LARIAN ON          11:26:57
```

EXHIBIT _6_ PAGE _117_

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

1           THE WITNESS:  I DON'T KNOW IF IT'S A TYPO;

2    I'M JUST NOT AWARE OF THIS PARTICULAR TRUST.

3           MR. COREY:  LET'S -- LET'S GO OFF THE

4    RECORD TO SWITCH THE TAPE.

5           THE VIDEO TECHNICIAN:  THIS IS THE END OF          11:36:02

6    TAPE NO. 1.  GOING OFF THE RECORD AT 11:36 A.M.

7           (A RECESS WAS TAKEN FROM 11:36 TO 11:47.)

8           THE VIDEO TECHNICIAN:  THIS IS THE START OF

9    TAPE NO. 2.  GOING BACK ON THE RECORD AT 11:47 A.M.

10   BY MR. COREY:                                              11:47:17

11      Q.   LOOKING AT EXHIBIT 1354, IT LOOKS TO ME

12   LIKE THERE ARE NO ENTRIES AFTER DECEMBER OF 2005.

13      A.   THAT'S CORRECT, BECAUSE THIS INFORMATION

14   WAS TAKEN FROM OUR OLD ACCOUNTING SYSTEM, AND I'M

15   STILL ASKING OUR ACCOUNTING PEOPLE TO PULL DATA FOR        11:47:43

16   2006 AND '07.

17      Q.   OKAY.  AND SO -- SO YOU DON'T HAVE THAT

18   HERE TODAY?

19      A.   NO.  IT HASN'T BEEN PROVIDED YET.

20      Q.   OKAY.  I JUST WANTED TO MAKE SURE THAT I           11:47:52

21   WAS READING IT CORRECTLY.

22           NOW, CAN YOU TURN TO 378- -- WELL, BEFORE

23   WE GET THERE, BUT YOU WILL -- YOU WILL HAVE THAT BY

24   NEXT THURSDAY?

25      A.   I HOPE SO.  I'M RELYING ON AMY, WHO'S              11:48:23

EXHIBIT _6_ PAGE _118_

1    MR. MAKABI?

2        A.    FOR THAT PARTICULAR LINE ITEM?

3        Q.    WELL, NOW -- NOW -- NOW I'M ASKING MY

4    GENERAL QUESTION.  IF I JUST WANTED TO COME UP WITH

5    A NUMBER FOR ALL OF THE DISTRIBUTIONS TO MR. LARIAN,        02:02:52

6    CAN I DO THAT FROM THIS DOCUMENT, 1354?

7        A.    WHERE THERE IS MORE TEXT DESCRIPTION YOU

8    CAN ALLOCATE THAT WAY.  IN SOME INSTANCES THERE'S

9    NOT ENOUGH INFORMATION.

10       Q.    SO THERE'S NOT ENOUGH INFORMATION TO COME       02:03:11

11   UP WITH A TOTAL NUMBER FOR MR. LARIAN AS OPPOSED TO

12   MR. MAKABI IN EXHIBIT 1354?

13       A.    NO.

14       Q.    THE DISTRIBUTION ACCOUNT, CURRENTLY WHAT --

15   WHAT BANK IS THAT WITH?                                    02:03:39

16            MR. ROTH:  OBJECTION; VAGUE AND AMBIGUOUS.

17   BY MR. COREY:

18       Q.    I'M SORRY, AND I'M GOING BACK -- I

19   APOLOGIZE.  WE'RE -- WE'RE -- "DISTRIBUTION ACCOUNT"

20   MEANS TWO THINGS; RIGHT?  IT MEANS THE GENERAL            02:03:48

21   LEDGER ACCOUNT FROM WHICH THE DISTRIBUTION -- IN

22   WHICH THE DISTRIBUTIONS ARE RECORDED, AND IT ALSO

23   MEANS THE -- THE ACCOUNT FROM WHICH CHECKS ARE

24   WRITTEN; RIGHT?  THAT'S THE WAY -- YOU HAVE REFERRED

25   TO BOTH OF THOSE?                                         02:04:02

EXHIBIT _6_ PAGE _119_

859

1   STATE OF CALIFORNIA      )
                             )    SS.
2   COUNTY OF RIVERSIDE      )

3        I, PAULA A. PYBURN, CERTIFIED SHORTHAND

4   REPORTER, CERTIFICATE NUMBER 7304, R.P.R., C.L.R., FOR

5   THE STATE OF CALIFORNIA, HEREBY CERTIFY:

6        THE FOREGOING PROCEEDINGS WERE TAKEN BEFORE ME

7   AT THE TIME AND PLACE THEREIN SET FORTH, AT WHICH TIME

8   THE WITNESS WAS PLACED UNDER OATH BY ME;

9        THE TESTIMONY OF THE WITNESS AND ALL OBJECTIONS

10  MADE AT THE TIME OF THE EXAMINATION WERE RECORDED

11  STENOGRAPHICALLY BY ME AND WERE THEREAFTER TRANSCRIBED;

12       THE FOREGOING TRANSCRIPT IS A TRUE AND CORRECT

13  TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;

14       I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR

15  NOR RELATED TO ANY PARTY TO SAID ACTION NOR IN ANY WAY

16  INTERESTED IN THE OUTCOME THEREOF.

17       IN WITNESS WHEREOF, I HAVE HEREUNTO SUBSCRIBED

18  MY NAME THIS _23rd_ DAY OF _JANUARY_ , 2008.

19

20       _Paula A. Pyburn_

21

22

23

24

25

EXHIBIT _6_ PAGE _120_

81

# EXHIBIT 7

**CERTIFIED COPY**

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
                                )
        PLAINTIFF, )
                                )
    V.                  )    NO. CV 04-9040 SGL (RNBX)
                                )
MATTEL, INC., A DELAWARE )
CORPORATION, )
                                )
        DEFENDANTS. )
                                )
AND CONSOLIDATED ACTION (S). )

# CONFIDENTIAL

**(PURSUANT TO PROTECTIVE ORDER, THIS TRANSCRIPT HAS BEEN DESIGNATED CONFIDENTIAL, ATTORNEYS' EYES ONLY)**

# DEPOSITION OF LISA TONNU

## VOLUME V

## JANUARY 24, 2008



COURT REPORTERS

**REPORTED BY:**
PAULA PYBURN
CSR NO. 7304
JOB NO. 08AE047-PP

EXHIBIT ___2__ PAGE _/2/_

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

| | | |
|---|---|---|
| 1 | MS. HUTNYAN:  THANK YOU. | |
| 2 | Q.  THE TESTIMONY THAT LED UP TO IT WAS: | |
| 3 | DO YOU PROVIDE ANY SERVICES TO | |
| 4 | MR. LARIAN PERSONALLY WITH RESPECT | |
| 5 | TO THIS TAXATION? | 07:08:12 |
| 6 | AND YOU SAID "YES." | |
| 7 | OKAY.  SO YOU HAVE RESPONSIBILITY | |
| 8 | FOR PREPARING HIS TAX RETURNS FOR | |
| 9 | THE TRUSTS? | |
| 10 | I DO NOT PREPARE THEM. | 07:08:20 |
| 11 | AND THEN THE NEXT QUESTION WAS (READING): | |
| 12 | HOW MANY TRUSTS FOR MR. LARIAN DO | |
| 13 | YOU HAVE RESPONSIBILITY FOR? | |
| 14 | A.  SO THIS RELATES TO TAX? | |
| 15 | Q.  PREPARING TAX RETURNS FOR THE TRUST, YES. | 07:08:42 |
| 16 | MR. ROTH:  I HAVE A CONTINUING PRIVACY | |
| 17 | OBJECTION TO THESE QUESTIONS. | |
| 18 | THE WITNESS:  I DON'T PREPARE THE TAX | |
| 19 | RETURNS FOR THE TRUST. | |
| 20 | BY MS. HUTNYAN: | 07:08:52 |
| 21 | Q.  DO YOU HAVE RESPONSIBILITY FOR -- DO YOU | |
| 22 | HAVE ANY RESPONSIBILITY FOR ANY ASPECT OF THE TRUSTS | |
| 23 | FOR MR. LARIAN? | |
| 24 | A.  WE ISSUE K-1S TO THE TRUST. | |
| 25 | Q.  AND DO YOU HAVE A ROLE IN ISSUING K-1S TO | 07:09:08 |

EXHIBIT __7__ PAGE __122__

1285

1    TRUSTS FOR MR. LARIAN?

2         A.   YES.

3         Q.   HOW MANY TRUSTS FOR MR. LARIAN DO YOU ISSUE

4    K-1S FOR?

5         A.   THREE.                                        07:09:21

6         Q.   WHAT ARE THOSE TRUSTS?

7              MR. ROTH:   THIS WAS ASKED AND ANSWERED LAST

8    WEEK.

9              THE WITNESS:   ISAAC LARIAN GRANTOR ANNUITY

10   TRUST, ANGELA LARIAN GRANTOR ANNUITY TRUST, LARIAN     07:09:34

11   LIVING -- LARIAN FAMILY TRUST.   I BELIEVE THAT'S THE

12   NAME OF IT.

13             THE REPORTER:   ARE YOU SAYING "TRUSTS"?

14             THE WITNESS:   TRUST.

15   BY MS. HUTNYAN:                                         07:09:53

16        Q.   THEN ANOTHER QUESTION WHICH RECEIVED AN

17   INSTRUCTION WAS, "IS THERE ONE TRUST THAT HOLDS THE

18   SHARES FOR MR. LARIAN IN M.G.A. ENTERTAINMENT,

19   INC.?"

20             MR. ROTH:   ASKED AND ANSWERED LAST WEEK,     07:10:05

21   COUNSEL.

22             THE WITNESS:   IS THERE ONE TRUST; IS THAT

23   WHAT YOUR QUESTION WAS?

24   BY MS. HUTNYAN:

25        Q.   IS THERE ONE TRUST THAT HOLDS THE SHARES     07:10:13

EXHIBIT _7_ PAGE _123_

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

```
 1          FAMILY TRUST.")
 2   BY MS. HUTNYAN:
 3       Q.   ARE THOSE THE THREE TRUSTS THAT YOU HAD
 4   DESCRIBED IN YOUR TESTIMONY A FEW MINUTES AGO?
 5       A.   YES.                                    07:12:58
 6       Q.   SO WHO IS THE TRUSTEE OF THE ISAAC LARIAN
 7   GRANTOR ANNUITY TRUST?
 8       A.   I BELIEVE IT'S ISAAC LARIAN.
 9       Q.   AND WHO IS THE TRUSTEE OF THE ANGELA LARIAN
10   GRANTOR ANNUITY TRUST?                          07:13:09
11       A.   ANGELA LARIAN.
12       Q.   WHO IS THE TRUSTEE OF THE LARIAN FAMILY
13   TRUST?
14       A.   I BELIEVE IT'S ISAAC AND ANGELA LARIAN.
15       Q.   HOW MANY TRUSTS ARE THERE THAT HOLD        07:13:24
16   MR. MAKABI'S SHARES IN M.G.A. ENTERTAINMENT?
17           MR. ROTH:   ASKED AND ANSWERED.
18           THE WITNESS:   THREE.
19   BY MS. HUTNYAN:
20       Q.   THE SAME THREE TRUSTS THAT WE JUST        07:13:33
21   DISCUSSED?
22       A.   NO.
23       Q.   DIFFERENT TRUSTS?
24       A.   YES.
25       Q.   WHAT ARE THOSE TRUSTS?                    07:13:43
```

EXHIBIT _7_ PAGE _124_

1289

1  STATE OF CALIFORNIA )

2  COUNTY OF RIVERSIDE ) SS.

3

4       I, PAULA A. PYBURN, CSR NO. 7304, R.P.R.,

5  C.L.R., IN AND FOR THE STATE OF CALIFORNIA, DO

6  HEREBY CERTIFY:

7       I AM THE DEPOSITION OFFICER THAT

8  STENOGRAPHICALLY RECORDED THE TESTIMONY IN THE

9  FOREGOING DEPOSITION;

10      PRIOR TO BEING EXAMINED THE DEPONENT WAS FIRST

11 DULY SWORN BY ME;

12      THE FOREGOING TRANSCRIPT IS A TRUE RECORD OF

13 THE TESTIMONY GIVEN.

14      BEFORE COMPLETION OF THE DEPOSITION, REVIEW OF

15 THE TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.  IF

16 REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND

17 PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED

18 ARE APPENDED HERETO.

19

20 DATED  _JANUARY 28th, 2008_

21

22

23       _Paula A. Pyburn_

          PAULA A. PYBURN

24        C.S.R. NO. 7304, R.P.R.

          CERTIFIED LIVENOTE REPORTER

25
                              EXHIBIT _7_ PAGE _125_

                                                      1328

# CONFIDENTIAL
# THIS EXHIBIT FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER OF 1- 4 -2005

# EXHIBIT 8

# CONFIDENTIAL
# THIS EXHIBIT FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER OF 1- 4 -2005

# EXHIBIT 9

# CONFIDENTIAL
# THIS EXHIBIT FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER OF 1- 4 -2005

# EXHIBIT 10

# CONFIDENTIAL
# THIS EXHIBIT FILED UNDER SEAL PURSUANT TO
# PROTECTIVE ORDER OF 1- 4 -2005

# EXHIBIT 11

# EXHIBIT 12

Hearing: [Larson] 2/4/2008 11:01:00 AM

1

```
 1              UNITED STATES DISTRICT COURT
 2             CENTRAL DISTRICT OF CALIFORNIA
 3                  EASTERN DIVISION
 4                       ---
 5      HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING
 6                       ---
 7   CARTER BRYANT, ET. AL.,      )
                                  )
 8           PLAINTIFFS,  )
                          )
 9        VS.             )  NO. ED CV 04-09049
                          )  (LEAD LOW NUMBER)
10   MATTEL, INC., ET. AL.,       )
                                  )
11           DEFENDANTS.  )  EX-PARTE APPLICATIONS
     _____)  RE:  DISCOVERY
12   AND CONSOLIDATED ACTIONS,     )
                                  )
13
14
15          REPORTER'S TRANSCRIPT OF PROCEEDINGS
16                RIVERSIDE, CALIFORNIA
17               MONDAY, FEBRUARY 4, 2008
18                   10:15 A.M.
19
20
21
22
23          THERESA A. LANZA, RPR, CSR
            FEDERAL OFFICIAL COURT REPORTER
24          3470 12TH STREET, RM. 134
            RIVERSIDE, CALIFORNIA  92501
25              951-274-0844
            CSR11457@SBCGLOBAL.NET
```

2

```
 1   APPEARANCES:
 2   ON BEHALF OF CARTER BRYANT:
 3          KEKER & VAN NEST
            BY:  MICHAEL PAGE
 4          710 SANSOME STREET
            SAN FRANCISCO, CALIFORNIA  94111-1704
 5          415-391-5400
 6
     ON BEHALF OF MATTEL:
 7
            QUINN EMANUEL
 8          BY:  JOHN QUINN
            BY:  JON COREY
 9          865 S. FIGUEROA STREET,
            10TH FLOOR
10          LOS ANGELES, CALIFORNIA  90017
            213-624-7707
11
12   ON BEHALF OF MGA ENTERTAINMENT:
13          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
            BY:  THOMAS J. NOLAN
14          BY:  CARL ALAN ROTH
            BY:  ROBERT JAMES HERRINGTON
15          300 SOUTH GRAND AVENUE
            LOS ANGELES, CALIFORNIA  90071-3144
16          213-687-5000
17
     ON BEHALF OF GUSTAVO MACHADO:
18
            OVERLAND BORENSTEIN SCHEPER & KIM LLP
19          BY:  ALEXANDER H. COTE
            300 SOUTH GRAND AVENUE
20          SUITE 2750
            LOS ANGELES, CALIFORNIA  90071
21          213-613-4660
22
     ON BEHALF OF CLOONAN, MARLOW & LEAHY:
23
            KEATS MCFARLAND & WILSON LLP
24          BY:  LARRY W. MCFARLAND
            9720 WILSHIRE BOULEVARD
25          BEVERLY HILLS, CA  90212
            310-777-3750
```

EXHIBIT _12_ PAGE _161_

Hearing: [Larson] 2/4/2008 11:01:00 AM

51

1    MR. NOLAN: I BELIEVE IT WAS 40, PLUS TEN ON OUR
2  PART; ALL IN ALL, IT WAS 50.
3        THE COURT: AND YOU HAD PREVIOUSLY BEEN EACH AFFORDE
4  24.
5        THERE IS NO QUESTION, TO THE COURT'S THINKING -- AND
6  I WILL MAKE THIS CLEAR TODAY -- THAT THE 40 I AWARDED TO MAT
7  AND THE TEN ADDITIONAL ONES I AWARDED TO MGA WERE IN ADDI
8  TO THE 24 THAT THEY RECEIVED.
9        NOW, I WILL LEAVE IT TO JUDGE INFANTE TO COUNT UP THE
10 NUMBER OF DEPOSITIONS THAT HAD BEEN TAKEN PRIOR TO YOUR
11 NOTICING THESE FOUR ADDITIONAL ONES.
12        IF THAT NUMBER COMES UP TO BE 20 OR LESS, THEN
13 THEY'RE IN. IF THAT NUMBER COMES UP TO BE 24 OR MORE, THEN
14 THEY'RE OUT. AND I'M NOT AT THIS POINT CONSIDERING ARGUMEN
15 FOR GOOD CAUSE, TO INCLUDE OR NOT INCLUDE. SIMILARLY, I'M N
16 GOING TO COUNTENANCE ARGUMENTS TO SAY THAT THEY SHOULD
17 BECAUSE THEY KNEW ABOUT THESE PEOPLE BEFORE. WE HAVE A
18 DEADLINE. AS YOU SAY, THE CLOCK EXPIRED. THEY WERE EITHER
19 PART OF THE NUMBER THAT THEY COULD TAKE OR THEY WEREN'T.
20        I ASSUME THAT YOU CAN SIT DOWN AND YOU CAN IDENTIFY
21 FOR JUDGE INFANTE EXACTLY THE NUMBER OF DEPOSITIONS,
22 PARTICULARLY NOW, THAT YOU'VE TAKEN. AND THAT'S WHY, AS FA
23 MR. GRONICH AND MR. TIONGCO ARE CONCERNED --
24        WOULD THAT MAKE IT 42, MR. QUINN?
25        MR. QUINN: YOUR HONOR, I WASN'T SURE 40 WAS THE

52

1  NUMBER.
2        THOSE TWO INDIVIDUALS WERE REFERENCED IN THOSE
3  PAPERS.
4        THE COURT: I DON'T WANT YOU TO LEAVE TODAY -- WE
5  SHOULD BE ABLE TO ANSWER THIS QUESTION. THERE'S ENOUGH L
6  AND THERE'S ENOUGH STUFF IN THIS ROOM THAT WE SHOULD BE A
7  ANSWER THIS QUESTION PLAINLY TO THE COURT.
8        HOW MANY DEPOSITIONS DID I AUTHORIZE EXPRESSLY ON
9  JANUARY 7TH? IF WE NEED TO TAKE A BRIEF RECESS TO COME UP
10 THAT, LET'S DO THAT.
11        MR. NOLAN: YOU REFERENCED SPECIFIC PAGES, AND ON
12 THOSE PAGES, PEOPLE WERE LISTED. OUR POSITION IS THAT THEY
13 WEREN'T LISTED ON THOSE PAGES.
14        WE CAN DO THAT AT A BREAK AND COME BACK AND MAYBE
15 SUBMIT IT TO MR. HOLMES OR WHATEVER.
16        YOUR HONOR, ONLY BECAUSE I KNOW THIS TRANSCRIPT IS
17 GOING TO BE DISSECTED BY BOTH COUNSEL, I JUST WANT TO COM
18 TO WHEN YOU SAID RECENTLY THAT WITH RESPECT TO CABRERA A
19 MORALES AND SALAZAR, THAT IF THEY WERE WITHIN THE NUMBER,
20 THEY'RE IN.
21        THE COURT: THEY'RE IN, SUBJECT TO ANY ARGUMENT THAT
22 YOU'RE MAKING BEFORE JUDGE INFANTE THAT THEY WERE NOT PR
23 NOTICED, SERVED, OR WHATEVER IT MIGHT BE.
24        MR. NOLAN: AND I APOLOGIZE FOR BEING REDUNDANT. I'M
25 TRYING TO AVOID --

EXHIBIT _12_ PAGE _148_

Hearing:  [Larson]  2/4/2008  11:01:00 AM

84

1   AND MR. QUINN WERE ASKED TO FILE A RESPONSE OR A REPLY TO
2   COURT WITH RESPECT TO THE CIRCUMSTANCES.
3       THE COURT:  I THINK THEY INDICATED THAT THEY ALREADY
4   HAVE FILED A REPLY AND THAT THERE'S INFORMATION CONCERNING
5   ON THIS.
6       MR. NOLAN:  I APOLOGIZE FOR NOT UNDERSTANDING.
7       THE COURT:  AM I RIGHT, MR. QUINN?
8       MR. QUINN:  THAT WAS MY UNDERSTANDING.
9       THE COURT:  THEY JUST DIDN'T KNOW ANYTHING ABOUT THE
10  REPLY; THAT WAS SOMEBODY ELSE WHO WROTE THAT; SO THEY DO
11  WANT TO TALK TO ME ABOUT IT RIGHT NOW.
12      THANK YOU.  GOOD AFTERNOON.
13
14
15
16
17
18          CERTIFICATE
19
20  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNIT
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCR
21  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE A
    ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERI
    THE UNITED STATES.
23
24  _____        _____
    THERESA A. LANZA, CSR, RPR          DATE
25  FEDERAL OFFICIAL COURT REPORTER

EXHIBIT 12 PAGE 169

Mattel v. MGA II                    Unsigned                    Page  84

# EXHIBIT 13

CONFORMED COPY
LODGED                    FILED

2007 MAY 16  PM 1:59   2007 MAY 16  PM 2:00

CLERK U.S. DISTRICT COURT  CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.    CENTRAL DIST. OF CALIF.
        RIVERSIDE                  RIVERSIDE
BY_____  BY_____

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:   (415) 774-2611
4   Facsimile:   (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                         EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12          Plaintiff,

13      v.                                 Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15          Defendant.                     **ORDER GRANTING MATTEL'S
                                           MOTION TO COMPEL PRODUCTION
16                                         OF DOCUMENTS AND
                                           INTERROGATORY RESPONSES BY
17  CONSOLIDATED WITH                      MGA**

18  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v. MATTEL,
19  INC.

20                                         I.  INTRODUCTION

21      On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

22  of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February

23  20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

24  reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under

25  submission pending the parties' submission of a proposed protective order, which was received

26

27

28                                         EXHIBIT _13_ PAGE _170_

    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                              1

1    on April 23, 2007.  Having considered the motion papers and comments of counsel at the hearing,

2    Mattel's motion to compel is granted.

3                                      II.  BACKGROUND

4        A.  Requests for Documents

5            In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6    became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7    categories of documents, to be produced in ten days.  MGA filed a motion to quash, which the

8    court granted because of the short amount of time provided for compliance with the subpoena.

9    The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10   some of Mattel's requests.  In particular, the parties agreed to limit production to the "first

11   generation" Bratz dolls.  On August 12, 2004, MGA produced documents.

12           In 2005, the parties stipulated to supplementing their document productions on May 16,

13   2005.  Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14           In September of 2006, MGA made a supplemental production of documents.  On February

15   5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16   with legibility problems.  On February 20, 2007, MGA produced an additional 224 pages of

17   documents to replace earlier produced documents with legibility problems.

18           Mattel now moves to compel MGA to produce documents responsive to its requests.  As a

19   preliminary matter, Mattel contends that MGA's production is deficient because it contains

20   redactions and cut-off text.  Further, Mattel contends that MGA's production is incomplete with

21   respect to essentially five categories of documents.  First, Mattel contends that MGA is

22   withholding documents relating to the origins of Bratz and Bryant's work for MGA.  Mattel

23   believes that MGA's production is incomplete based upon its review of documents that have been

24   produced by third party Steven Linker.  According to Mattel, Linker's documents from October

25   of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26   previously represented.  Mattel also contends that MGA's responses to the document requests

27

28
     Bryant v. Mattel, Inc.,                                    EXHIBIT _13_ PAGE _171_        2
     CV-04-09049 SGL (RNBx)

1   contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2   responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3   show when certain dates relating to Bratz occurred. Mattel contends that these "carve outs

4   purport to allow MGA to cherry-pick what it will and will not produce to Mattel." Mattel's

5   Separate Statement at 17:11-13. Mattel also contends that the carve-outs fail to provide notice of

6   what is or is not being withheld. Mattel also contends that MGA's objections based upon its

7   confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8   protective order in place. In addition, Mattel contends that MGA's objection to producing

9   documents relating to activities or conduct in foreign countries is wholly improper because those

10  documents may contain information relevant to Mattel's claims.

11          Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12  such documents relate to the "first generation" Bratz dolls. Mattel argues that whether the work

13  ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14  discovery purposes. Mattel contends that the works created by Bryant during his Mattel

15  employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16  a Bratz doll released at a particular time.[1]

17          Mattel next contends that MGA is improperly withholding documents about designs

18  Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19  be derivative of work he did when employed by Mattel. Mattel contends that it is entitled to

20  explore whether such works and the profits from Bratz dolls other than the "first generation"

21  Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22  and damages. Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23  improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24  information as well as MGA's unfair competition claims.

25  _____

26       [1]  Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
     to compel Bryant to produce documents.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _13_ PAGE _172_   [3]

1   Mattel also asserts that MGA is improperly withholding documents relating to products,

2   services and matters other than those relating to "dolls."  According to Mattel, it has evidence that

3   Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4   Mattel.  Mattel contends that any such ideas or contributions may belong to it pursuant to the

5   Inventions Agreement.

6   Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7   payments for the "first generation" Bratz dolls.  Mattel asserts that such information is relevant

8   because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9   (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10  damages; and (3) payments may show when and what trade secret information Bryant and other

11  defendants allegedly misappropriated from Mattel.

12  Fourth, Mattel seeks documents relating to MGA's agreements with Bryant.  Mattel

13  contends that all agreements between Bryant and MGA are relevant, not just the original

14  September 18, 2000 agreement.  In particular, Mattel contends that it is entitled to discover all

15  documents relating to MGA and Bryant's alleged joint defense agreement because such

16  information would be relevant to demonstrate bias and lack of credibility.

17  Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18  statements from other cases that refer or relate to Bratz or Angel.  Mattel contends that such

19  information may reveal relevant information about the date of creation of Bryant's Bratz

20  drawings.

21  In response, MGA denies withholding responsive documents and asserts that it has

22  produced volumes of documents responsive to Mattel's requests.  In particular, MGA represents

23  that it has produced all responsive and relevant documents that it was able to locate in response to

24  request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70.  Further, MGA asserts that even

25  before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26  motion.  In particular, MGA represents that it is diligently working to produce documents related

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT *13* PAGE *173*

4

1   to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2   49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed

3   Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4   have been released on the market. In addition, MGA represents that it has agreed to produce

5   documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More

6   specifically, MGA represents that it agreed to review and produce documents provided to it by

7   Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8   Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.

9   Therefore, MGA views the motion as unnecessary.

10       MGA next contends that Mattel's motion should be denied for the following additional

11   reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for

12   unreleased products.  MGA asserts that its product design documents for its unreleased toy

13   concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that

14   designs and drawings for products currently under development, over six years after Bryant first

15   created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that

16   documents relating to unreleased products are ordered produced, MGA requests a protective order

17   under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18   than the current protective order provides.  In the alternative, MGA requests that any order

19   compelling production of documents relating to unreleased products should essentially be stayed

20   until after MGA's products are publicly released.

21       Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22   attorneys' fees because the information is privileged.  Furthermore, MGA contends that the

23   information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _13_ PAGE _174_                    5

1   in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2   Opposition at 24:9-12.[2]

3        Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4   and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5   refused to produce similar types of documents.  More significantly, MGA contends that Mattel's

6   requests for non-public witness statements are "a blatant attempt to avoid the discovery

7   limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8   imposed by this Court."  MGA's Opposition at 25:6-7.  MGA explains its position as follows.

9   MGA is involved in litigation against a number of counterfeiters and infringers in Asia.  In 2003,

10  Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11  attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12  abandoned its claims based upon "Toon Teens" in this court.  Thereafter, those defendants took

13  the position that MGA did not own, and therefore could not enforce, the rights to Bratz.  MGA

14  was thus forced to litigate the issue of ownership.  MGA contends that "[i]n effect, by prompting

15  foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16  a situation in which MGA has been forced to give testimony and provide evidence related to

17  issues in this case that Mattel now seeks to obtain wholesale."  MGA's Opposition at 25:5-24.

18       Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19  dispute between MGA's chief executive officer and his brother because such documents are in no

20  way relevant to this lawsuit.  MGA explains that the brothers were involved in an arbitration

21  proceeding relating to MGA's CEO's purchase of his brother's interest in MGA.  Moreover,

22  MGA contends that the brothers were bound by a protective order prohibiting the use of any

23  documents or testimony for any purpose other than the arbitration.

24

25  _____

26      [2]  Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

27

28

1        Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2 files because they contain confidential information and are not relevant to the lawsuit. Sixth,

3 MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4 in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd. Lastly,

5 MGA objects to producing documents relating to any testing performed to determine the date that

6 Bratz documents were created. MGA contends that such discovery is premature and should not

7 proceed until experts are designated.

8        B. <u>Interrogatories</u>

9        On April 28, 2005, Mattel served its Second Set of Interrogatories. On May 20, 2005,

10 however, the district court stayed the action. On May 17, 2006, the district court lifted the stay.

11 On May 30, 2006, MGA responded to the interrogatories.

12        Mattel contends that MGA's responses to the interrogatories were untimely. Further,

13 Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14 because they lack substantive information and consist almost entirely of objections. MGA

15 responds that the motion is moot because it is prepared to provide supplemental responses to its

16 interrogatories. MGA does not otherwise assert any additional grounds for opposing Mattel's

17 motion to compel responses to interrogatories.

18                                <u>III. DISCUSSION</u>

19        A. <u>Rule 26 of the Federal Rules of Civil Procedure</u>

20        Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21 discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22 party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

23 discovery appears reasonably calculated to lead to the discovery of admissible evidence." <u>Id.</u>

24 Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25 unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26 convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28

1   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2   expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3   the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4   the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5   26(b)(2).

6       B. Document Requests

7           1. Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8              34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9       The requests above seek discoverable information regarding the origins of Bratz and

10  Bryant's work for MGA. MGA represents that it has produced all responsive documents in

11  response to request nos. 6, 26, 27, 32, 33, 34, 35, 55,and 69 (MGA's Opposition at 13:4-5), and is

12  "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13  and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14  14:1-4 and note 39). MGA does, however, object to producing design documents for unreleased

15  products and documents from MGA Hong Kong.

16      As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17  its production to "relevant and responsive non-objectionable documents" or documents

18  "sufficient" to show when events relating to Bratz occurred. These restrictions suggest that MGA

19  might be excluding documents that are responsive to the request based upon its unilateral

20  determination of what is "relevant" or "sufficient." Mattel shall provide the responses to

21  document requests ordered herein without these restrictions.

                                Design Documents for Unreleased Products

23      MGA's design documents for unreleased products are relevant to Mattel's claims and

24  defenses and must be produced. See Order Modifying Protective Order. On April 23, 2007, the

25  parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26  design documents for unreleased products that constitute trade secret information. See Stipulation

27

28

1  to Modify Protective Order; And Proposed Order Thereon ("stipulation").  The parties' stipulation

2  has been approved and entered as an order of the court.  MGA is ordered to produce design

3  documents for unreleased products that are responsive to Mattel's document requests in

4  accordance with the terms of the stipulation and order.

5                                    Documents from MGA Hong Kong

6          Documents relating to activities or conduct in foreign countries are relevant and

7  discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8  Bratz.  Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9  provides reciprocal discovery from its subsidiaries.

10         Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein.  MGA is ordered to produce

12  documents from MGA Hong Kong.

13         Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15         2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16             61, 63, 66, 67, 70, 88, 90, 91

17         Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls.  MGA represents, however, that it has agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21         As stated previously, design documents for yet unreleased products are relevant and

22  discoverable.  See Order Modifying Protective Order.  Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25         //

26         //

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                              EXHIBIT 13  PAGE 178          9

1       3. <u>MGA's Payments to Bryant (Nos.43, 45)</u>

2      MGA represents that it has already agreed to produce documents related to Bratz, without

3 limiting its production to "first generation" Bratz.  MGA's motion at 13:7-14:3.  Nevertheless,

4 Mattel is entitled to an order compelling production of such documents by a date certain.  Mattel's

5 motion is granted with respect to request nos. 43 and 45.

6       4. <u>MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)</u>

7      MGA represents that it has already agreed to produce non-privileged documents

8 responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not

9 relevant (MGA's motion at 13:7-14:3).  These requests seek documents relating to fee or

10 indemnity agreements between MGA and Bryant .

11     Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility.

12 Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50.  Any

13 responsive documents withheld on the basis of a privilege must be properly identified in a

14 privilege log.

15       5. <u>Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40,</u>

16         <u>41.</u>

17      In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits,

18 and other sworn written statements from cases that refer or relate to Bratz or Angel.  Mattel

19 anticipates that these documents could provide evidence relating to the conception date for Bratz.

20      Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception

21 date for Bratz.  MGA admits in its opposition brief that this issue was litigated in its suits against

22 alleged counterfeiters and infringers.[3]  The issue also appears to have been raised in the

23 arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother

24 Farhad Larian.  In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

25 _____

26     [3]  Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _13_ PAGE _179_    10

1   that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2   documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3   protective order that prohibits the use of any documents or testimony for any purpose other than

4   the arbitration.  MGA, however, has not provided any evidence of the protective order.

5   Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6           6. Documents Regarding Date-Testing (Request No. 92)

7       Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8   from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9   testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto."  MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12      The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports.  The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15          C. Interrogatories

16      Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served.  The district court lifted the stay on May 17, 2006.

22

23

24

25      [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's

26  personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore
    should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                                11

EXHIBIT 13 PAGE 180

1    Neither party has cited to any caselaw governing the calculation of the 30-day period

2    when there is an intervening stay in discovery.  In the absence of any caselaw, MGA's responses

3    will be treated as timely in order to preserve any valid objections MGA may have asserted.

4    Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5    conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6    tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7    before December 31, 2001, including a description of each person's role and the start and end

8    dates of each person's involvement.  In response, MGA asserted numerous objections, but did

9    provide the names of five individuals.

10    The interrogatory clearly seeks information relevant to the claims at issue.  MGA's

11    objections are without merit.  The interrogatory is not vague, ambiguous, compound or overbroad.

12    Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13    for confidential, proprietary or commercially sensitive information, or seeks information

14    protected by the attorney-client privilege.  Furthermore, MGA's response is incomplete insofar as

15    it fails to provide the description of each person's role and the start and end dates of each person's

16    involvement.  Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17    5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18    Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19    embodiment of Angel.  MGA is ordered to provide a complete response to Interrogatory No. 6 for

20    the reasons previously discussed in connection with Interrogatory No. 5.

21    Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22    December 31, 2001.  In response, MGA asserted numerous objections and did not provide any

23    substantive information.

24    MGA's objections are without merit.  The interrogatory clearly seeks information relevant

25    to establishing when Bryant first conceived Bratz.  The interrogatory is not vague, ambiguous,

26    compound or overbroad.  Nor has MGA carried its burden of establishing that the interrogatory is

27

28

1  unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2  seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3  provide a complete response to Interrogatory No. 7.

4      Interrogatory No. 8 asks MGA to identify each and every embodiment of Angel.  MGA is

5  ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6  discussed in connection with Interrogatory No. 7.

7      Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8  or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9  or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10  substantive information.

11      The interrogatory seeks information relevant to establishing when Bryant first conceived

12  Bratz.  Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13  ordered to provide a complete response to Interrogatory No. 9.

14      Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15  was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16  which each such instance occurred, the location of each show or exhibit, and the identity of

17  persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18  objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19  about January 2001 and New York Toy Fair, New York, in or about February 2001.

20      Once again, MGA's boiler-plate objections are unsubstantiated.  The information is

21  potentially relevant to establish when Bryant conceived Bratz.  Further, the response is

22  incomplete insofar as it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23  to provide a complete response to Interrogatory No. 10.

24      Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25  including without limitation each office, home and cell phone number, in the name of, for the

26  benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT 13 PAGE 182

1  January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2  limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous

3  boiler-plate objections.

4       Once again, MGA has failed to substantiate any of its objections with supporting

5  declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to

6  provide a full response to Interrogatory No. 11.

7                    IV. CONCLUSION

8       For the reasons set forth above, Mattel's motion to compel production of documents is

9  granted.  MGA shall produce all non-privileged documents that are responsive to the requests

10  identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except

11  for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's

12  motion to compel interrogatory answers is also granted.  MGA shall produce documents and

13  provide responses to interrogatories consistent with this Order, and produce a privilege log in

14  compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for

15  sanctions is denied.

16       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17  Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21  Dated: May 15, 2007

22                    HON. EDWARD A. INFANTE (Ret.)

                        Discovery Master

23

24

25

26

27

28

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT 13 PAGE 184

# EXHIBIT 14

1   Hon. Edward A. Infante (Ret.)
  JAMS
2   Two Embarcadero Center
  Suite 1500
3   San Francisco, California 94111
  Telephone:   (415) 774-2611
4   Facsimile:   (415) 982-5287

5

6

7

8          UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10          EASTERN DIVISION

11

12   CARTER BRYANT, an individual,

13         Plaintiff,

14     v.

15   MATTEL, INC., a Delaware corporation,

16         Defendant.

17

18

19

20   CONSOLIDATED WITH
  MATTEL, INC. v. BRYANT and
21   MGA ENTERTAINMENT, INC. v. MATTEL,
  INC.

22

| CASE NO. CV 04-09049 SGL (RNBx) |
| JAMS Reference No. 1100049530 |
| |
| Consolidated with |
| Case No. CV 04-09059 |
| Case No. CV 05-2727 |
| |
| **ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ISAAC LARIAN; DENYING REQUEST FOR SANCTIONS** |

23

24               I. INTRODUCTION

25     On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production

26   of Documents by Isaac Larian and for Award of Monetary Sanctions." Specifically, Mattel seeks

27   an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First

28   Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199, 207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents withheld based on any claimed privilege. Mattel also seeks an award of sanctions against Larian in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing this motion. Larian submitted an opposition on December 5, 2007.[1] Mattel submitted a reply on December 10, 2007. The matter was heard on December 14, 2007. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

On June 13, 2007, Mattel propounded its First Set of Requests for Production of Documents and Things to Larian, the CEO and majority owner of MGA. On August 6, 2007, Larian filed his initial responses and objections. The parties met and conferred, and on September 25, 2007, Larian served supplemental responses and objections.

Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the 276 Requests. The parties met and conferred further, and Larian ultimately agreed to provide further responses to 55 of the disputed 87 Requests. Specifically, Larian agreed to supplement his responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that have not previously been produced." MGA's Opposition at pp. 1-2.

The remaining 32 Requests at issue can be grouped into ten categories: (1) personal financial data; (2) communications with Mattel employees; (3) statements to the media; (4) telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's arbitration; and (10) MGA Hong Kong and MGA Mexico.

//

---

[1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim statement of Mattel's position. The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve Mattel's motion on the merits.

## II. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

The 55 Requests Resolved During Meet and Confer Session

During the meet and confer session held after the instant motion was filed, Larian agreed to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55 requests are no longer in dispute.

Nevertheless, a court order compelling production is warranted for two reasons. First, Larian has not yet produced documents responsive to the 55 requests or provided a date by which

1    he will do so.  Second, Larian's agreement to produce responsive documents is apparently limited

2    to documents from his so-called "personal files."  <u>See</u> Opposition at 2:2-3.

3            Mattel's counsel "never agreed that Larian could limit his response to the above requests

4    to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his

5    response to documents in Larian's 'personal files.'"  Supp. Decl. of Scott B. Kidman.

6    Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34,

7    Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding

8    parties' "possession, custody or control."  The limitation is also unworkable because, as Mattel

9    points out, it "would create a situation by which responsive and highly relevant documents might

10   never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and

11   Larian, on the other hand, deems [a] document not to be part of his 'personal files.'"  Reply at p.6.

12   <u>Market Research for Products Not at Issue:  Request Nos. 79-81</u>

13           In Request No. 79, Mattel seeks all documents relating to any focus groups relating to

14   Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports.  In

15   his supplemental response, Larian agrees to produce the following documents, subject to his

16   general objections:

17           Larian will produce all documents within his possession, custody, or control that
         relate to focus groups for "MGA contested products" and "Mattel contested
18       products," as those terms are defined in Mattel's First Requests for Production
         regarding Claims of Unfair Competition, if any, and that have not already been
19       produced, that he discovers in the course of his reasonable search and diligent
         inquiry, and to which no privilege or other protection applies, including without
20       limitation, the attorney-client privilege or attorney's work product doctrine.

21

22   Mattel's Consolidated Separate Statement at pp. 20-21.

23           In Request No. 80, Mattel seeks all documents relating to any services or work performed

24   by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all

25   videotapes, summaries, notes and reports associated therewith.  In his supplemental response,

26   Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to

27   the request and to which no privilege or other protection applies.

28

EXHIBIT _14_ PAGE_88_

4

1        In Request No. 81, Mattel seeks all documents relating to Alaska Momma.  In his

2   supplemental response, Larian agrees to produce all documents relating or referring to Bratz,

3   Angel or Bryant that are responsive to the request and to which no privilege or other protection

4   applies.

5        Mattel contends that the requests are as narrowly tailored as possible to capture relevant

6   information.  More specifically, Mattel contends that Request No. 79 seeks documents that bear

7   directly on the timing of the development of Bratz, as well as MGA's unfair competition claims

8   and Mattel's defense thereto.  Mattel contends that the requested documents may demonstrate that

9   MGA is guilty of copying Mattel's Barbie and My Scene products.

10       Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome.  As an

11  example, Larian points to Request No. 80, which requests all documents relating to any services

12  or work performed by L.A. Focus, regardless of whether that work has any relation to the claims

13  and defenses in the action or any of the products at issue.  Larian similarly contends that Request

14  Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or

15  defense in this case.

16       Mattel's motion to compel Larian to produce all documents responsive to Request No. 79

17  is granted.  The request is reasonably limited in subject matter to Bratz and Angel.  The requested

18  documents are relevant to several issues in the case, including the origin, conception and creation

19  of Bratz.  The requested documents are also relevant to the unfair competition claims.  Larian's

20  supplemental response to Request No. 79 is unduly restrictive.  Among other things, the

21  definitions of "contested MGA products" encompass only those products that provide a basis for

22  any claim by MGA against Mattel, and not claims by Mattel against MGA.

23       Mattel's motion to compel Larian to produce all documents responsive to Request Nos.

24  80-81 is denied.  These requests, as drafted, are clearly overbroad because they have no

25  reasonable limitations on subject matter or time.  In particular, the requests are directed to L.A.

26  Focus and Alaska Momma without regard to whether the services or work the companies

27  provided has any relation to any product at issue.

28       Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _14_ PAGE _189_          5

1   documents related to the products at issue: Bratz and Angel. In Mattel's view, Larian's

2   supplemental response is too narrow and "may result in the exclusion of highly relevant

3   documents because the project, concept or design that is the subject of the focus group is deemed

4   not to relate to something then known as Bratz or Angel." However, Larian acknowledges that

5   these types of hypothetical documents would still fall within the narrower scope of production

6   proposed in his supplemental response.

7          Mattel also contends that it is entitled to all of the requested documents called for by

8   Request No. 80 because they are relevant to credibility and bias, particularly if the documents

9   show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A.

10  Focus used. It is, however, not apparent how deviations from standard procedures would impact

    credibility or bias.

11         As to Request No. 81, Mattel contends that the documents showing the relationship

12  between Larian or MGA and Alaska Momma are relevant, even if they do not themselves

13  specifically relate to Bratz, Angel or Bryant. Mattel contends that communications from Larian

14  or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant

15  claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's

16  and Bryant's stories about how and when they came to be introduced. Mattel also contends that

17  documents showing other dealings between Larian or MGA and Alaska Momma are relevant to

18  the issues of bias and credibility. Mattel's supposition about the types of documents that might

19  exist does not justify the type of far-reaching request it has propounded. Request No. 81 is also

20  not limited by either subject matter or time.

21          Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in

22  accordance with his supplemental responses.

23

24  Bryant's Attorney and Niece: Request Nos. 113-115

25          In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne

26  Wang, a lawyer who represented Bryant in his contract negotiations with MGA. In Request No.

27  114, Mattel seeks all documents, including without limitation all communications, between

28

1   Larian or MGA and Anne Wang.  In Request No. 115, Mattel seeks documents relating to Brooke

2   Gilbert, Bryant's niece.  In his supplemental responses, Larian agrees to produce documents

3   relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or

4   other protection applies.  Thus, the only issue is whether Larian should be required to produce

5   responsive documents that do not relate to Bratz, Angel or Bryant.

6           Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin

7   and conception of Bratz and the timing thereof.  Mattel also contends that the documents may

8   disclose relevant information regarding Mattel's claims for breach of contract and inducing

9   breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's

10  contractual obligations with Mattel.  Mattel also contends that Larian has failed to carry his

11  burden of demonstrating that the requests are overly burdensome.

12          Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114

13  are inadequate because the limitations on scope may eliminate otherwise relevant documents that

14  do not specifically refer to Bratz, Angel or Bryant.  For example, Mattel contends that

15  communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or

16  Bryant may be relevant to the issues of credibility and bias.

17          Mattel contends that Request No. 115 seeks documents that are relevant to determine

18  whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software

19  that had been installed and run on the hard drive.  Bryant claims to have given his computer to his

20  niece.  Mattel also contends that the requested documents are relevant to the issues of credibility

21  and bias.  Further, Mattel contends that Larian's supplemental response to Request No. 115 is

22  inadequate, because evidence of any communication between Larian and his niece, regardless of

23  subject matter, is significant.

24          Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome

25  because they lack any subject matter or time constraints.  Further, Larian contends that the

26  requests constitute an improper fishing expedition and necessarily sweep in documents that are

27  not relevant to any claim or defense.

28  //

1   Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied. The

2   requests are overbroad because they are not focused on relevant subject matter and are untethered

3   to any claim or defense. Although Mattel asserts that responsive documents unrelated to Bratz,

4   Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility

5   is too remote to justify the breadth of Mattel's requests.

6   Larian's supplemental responses are sufficient to provide Mattel with relevant and

7   responsive documents. Larian shall produce documents responsive to Request Nos. 113-115 in

8   accordance with his supplemental responses.

9   The Larian Brothers' "Arbitrations and Suits": Request Nos. 123-125

10   In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and

11   suits between Larian and his brother, Farhad Larian. In Request No. 124, Mattel seeks all

12   documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad

13   Larian against Larian, including without limitation all declarations, affidavits, transcripts, video

14   and/or audio recordings and sworn testimony given by any person in such suit or arbitration

15   proceedings. In Request No. 125, Mattel seeks all documents relating to any and all settlements,

16   resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad

17   Larian. In his supplemental responses, Larian agrees to produce all documents referring or

18   relating to Bratz that are responsive to the requests and to which no privilege or other protection

19   applies.

20   Mattel contends that the court has already ruled that the arbitration proceedings between

21   Larian and his brother are relevant because they involve, among other matters, the conception and

22   creation date for Bratz. Mattel contends that Larian's supplemental responses improperly limit

23   the requests to the exclusion of potentially relevant documents. For example, Mattel contends

24   that documents that relate to the business, activities and plans of MGA in early 2000 are relevant

25   to the timing of the development of Bratz, whether or not they specifically refer to Bratz.

26   Mattel also contends that the requested documents are relevant to the value of the Bratz brand and

27   the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

28

1   example, profits from the sale and licensing of Bratz and other information that would impeach

2   Larian's testimony that he has not made any profits from Bratz. Further, Mattel contends that the

3   requested documents may lead to evidence of the assessments or valuations of the net worth or

4   value of MGA or Larian, regardless of any reference to Bratz specifically. Mattel also contends

5   that settlement documents may contain information that bears on the merit of Farhad Larian's

6   claims and the value of Bratz. Mattel also claims that the requested documents are relevant to

7   motive, intent, bias and credibility.

8       Larian contends the instant requests are overbroad and unduly burdensome. Further,

9   Larian contends that the relationship of the requested documents to any of the claims or defenses

10  in the present action is questionable, and the existence of such documents is conjectural.

11  Moreover, Larian contends that many of the categories of documents of interest to Mattel are

12  already the subject of other requests. Larian also contends that Request Nos. 123-125 impose an

13  undue burden because of the protective orders in place that strictly limit the use of any documents

14  from an arbitration and suit between Larian and his brother. Larian represents that he is currently

15  working with Mattel and his brother in an attempt to achieve suitable modifications to the orders

16  that are agreeable to all parties.

17      Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is

18  denied. The requests are clearly overbroad in calling for all documents from the arbitrations and

19  suits between Larian and his brother, without any subject matter limitations. Furthermore, these

20  requests are unduly burdensome to the extent they require production of documents that do not

21  refer or relate to Bratz. Such documents have marginal relevance, at best, to the claims and

22  defenses in the case.

23      Larian's supplemental responses to Request Nos. 123-125 are sufficient. Larian's

24  agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will

25  enable Mattel to obtain documents relevant to the claims and defenses in the case, including many

26  of the categories of documents of interest to Mattel. For example, under Larian's proposed

27  limitation, documents that relate to the business, activities and plans of MGA in 2000 that also

28  refer or relate to Bratz must be produced. Documents relating to the value of the Bratz brand are

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _14_ PAGE _193_

9

1   also within the scope of Larian's proposed limitation and would have to be produced.  Documents

2   relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be

3   produced.  Further, Larian's proposed limitation does not necessarily foreclose discovery

4   regarding the appraisal of MGA prepared by Mr. Dutcher.  In particular, documents relating to

5   MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue

6   projections must be produced if such documents refer or relate to Bratz.  Accordingly, Larian

7   shall produce documents responsive to Request Nos. 123-125 in accordance with his

8   supplemental responses.

9

10  Telephone Records:  Request Nos. 178-181

11          In Request No. 178, Mattel seeks all documents relating to, including without limitation

12  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

13  from January 1, 1998 through January 1, 2001.  Larian objects to this request.

14          In Request No. 179, Mattel seeks all documents relating to, including without limitation

15  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

16  from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel.  In his supplemental

17  responses, Larian agrees to produce documents responsive to Request No. 179.  In response to

18  this motion, however, Larian contends that he should be permitted to produce documents

19  responsive to Request No. 179 in redacted form as discussed more fully below.

20          In Request No. 180, Mattel seeks all documents relating to, including without limitation

21  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

22  from April 1, 2004 through June 1, 2004.  Larian objects to this request.

23          In Request No. 181, Mattel seeks all documents relating to, including without limitation

24  phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf

25  at any time.  In his supplemental response, Larian agrees to produce all documents pertaining to

26  communications made prior to January 1, 2001 that are responsive to the request and to which no

27  privilege or other protection applies.

//

28

1       Mattel contends that Request No. 178 seeks documents relevant to show Larian's

2   communications with Bryant and other Mattel employees while such employees may still have

3   been employed by Mattel and before Larian claims to have known about Bratz.  Similarly, Mattel

4   contends that Request No. 180 seeks documents relevant to Mattel's allegation that MGA, and

5   Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them

6   to steal Mattel trade secrets.

7       Further, Mattel contends that the requested documents regarding telephone records are

8   relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show

9   communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent

10   they show communications with current and former Mattel employees, including Machado,

11   Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements

12   Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses.  With respect to

13   burden, Mattel contends that it would be more burdensome to attempt to produce the requested

14   records in redacted form, and further, that the protective order in place is sufficient to protect

    Larian's privacy concerns.

15       Larian contends that the requests regarding telephone records are overbroad, completely

16   unbounded as to subject matter, and necessarily sweep in private information that is completely

17   irrelevant to any of the claims or defenses in the case.  Larian also points out that the court

18   previously considered similar requests served on Bryant and allowed production of redacted

19   copies of telephone records as long as Bryant provided a signed verification that none of his

20   redactions related to Bratz, MGA or any other project he worked on for MGA.  Specifically,

21   Bryant was permitted to produce redacted phone records as long as he provided a "signed

22   verification that none of the telephone records that were redacted relate or refer in any way to

23   MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA."

24   Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production

25   of Documents by Bryant).  Larian contends that he should be permitted to redact responsive

26   documents consistent with the court's prior order.  During the meet and confer, Larian offered to

27   provide redacted records and a signed verification that none of the redacted information was

28

relevant to the case, but Mattel did not respond to the offer.

Mattel's motion to compel documents responsive to Request Nos. 178 (all documents relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied. The request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in private information that is completely irrelevant to the case. Larian should not be subjected to such an intrusion into his private and business affairs when Mattel has made no attempt to tailor the request to the communications, claims, and defenses identified above.

In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters (Bratz and/or Angel). Accordingly, Larian shall abide by his agreement to comply with Request No. 179, as stated in his supplemental response. Larian's proposal to produce responsive documents in redacted form is appropriate to address his privacy concerns. More specifically, Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian provides a signed verification that none of the redacted material refers or relates in any way to MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA, or that are otherwise relevant to the case.

Mattel's motion to compel documents responsive to Request No. 180 (documents relating to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted. Request No. 180 is reasonably tailored to a two month period during which MGA and Larian allegedly recruited employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets. See Mattel's Second Amended Answer and Counterclaims, ¶¶37-54. Larian may produce documents responsive to Request No. 180 in redacted form as specified above with respect to Request No. 179.

Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian) is overbroad as written because it has no time limits. In his supplemental response, Larian agrees to produce communications prior to January 1, 2001 that are responsive to the request. Larian's proposed limitation is a reasonable compromise that will provide Mattel with relevant documents without imposing an undue burden. Accordingly, Larian shall produce documents responsive to

EXHIBIT _14_ PAGE _196_

1   Request No. 181 consistent with his supplemental response, and may produce such documents in

2   redacted form as specified above with respect to Request No. 179.

3

4   <u>Statements to the Media:  Request Nos. 190-192, 194-197 and 199</u>

5           In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian

6   and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action.

7   Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes

8   to the issues in the lawsuit.  More specifically, Mattel contends that the request are relevant to

9   Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases

10  regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie

11  products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products.

12  Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may

13  also contain admissions regarding the origin and conception of Bratz and statements relevant to

14  damages.

15          Larian contends that the requests are overbroad and unduly burdensome, particularly

16  because several of the requests seek publicly available information.  Further, Larian points out

17  that the court has already considered and rejected as overbroad a nearly identical request served

18  on MGA that called for all documents relating to any communications by MGA with any news

19  organization regarding the contested MGA products or the contested Mattel products.  Larian

20  contends that the same reasoning applies to the instant requests.

21          Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and

22  199 is denied.  Although several of the requests encompass potentially relevant documents, the

23  requests are overbroad and encompass documents that have little to no relevance to the claims and

24  defenses in the case.  Not one of the requests is limited to relevant subject matters, such as Bratz's

25  sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's

26  Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz,

27  or damages.

    //

Furthermore, many of these overbroad requests seek publicly available information that is readily accessible to Mattel for which Larian should not be burdened.  To the extent the requested documents and information are not publicly available, such documents and information are marginally, if at all, relevant because they are not likely to have caused Mattel compensable harm.  In either case, the burden and expense of searching for and producing responsive documents are unjustified.

<u>Communications With Mattel Employees:  Request No. 198</u>

In Request No. 198, Mattel seeks all communications between Larian and any individual while the individual was employed by Mattel.  Mattel contends that this request is directly relevant to Mattel's claims of trade secret theft, and that the relevancy outweighs any purported burden of production.

Larian contends that the request is overbroad and unduly burdensome because it is unrestricted as to time and subject matter.  Larian also points out that the court has previously found a similar request overbroad.  Larian further contends that employees in the toy industry are likely to maintain contacts with other toy manufacturers, and that a large corporation such as Mattel is likely to have a high number of employees communicating with MGA or its officers, which makes the request more unduly burdensome and unreasonable than it appears on its face.

Unlike other requests regarding communications, Request No. 198 is reasonably tailored to the specific and numerous allegations in the case regarding alleged trade secret theft.  Although the request is not limited by subject matter, it is limited in other respects to seek relevant documents without imposing an undue burden.  The request is limited to communications between Larian (and not MGA or persons acting on his behalf) and individuals employed at Mattel.  The request is also limited to only those communications that took place while the individuals were employed at Mattel.

Nevertheless, an additional temporal limit is appropriate to tailor the request to Mattel's allegations of trade secret theft.  The alleged trade secret theft began with Bryant's conduct in 1999 and continued to 2005.  Accordingly, Larian shall produce documents responsive to Request

No. 198 that are limited to the time frame 1999 to 2005.

Personal Financial Data:  Request Nos. 207-209 and 269

In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks or financial institutions and other banking relationships since January 1, 1999.  In Request No. 208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such income for each year from 1999 to the present.  In Request No. 209, Mattel seeks Larian's federal and state tax returns for each year from 1999 to the present.  In Request No. 269, Mattel seeks documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from 1999 to the present.

Mattel contends that Request No. 207 seeks information reasonably calculated to lead to information showing the timing of payments to Bryant and others, which in turn is relevant to the timing of the development of Bratz and issues of credibility.  Mattel contends that Request Nos. 208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial condition, which in turn is relevant to damages.  Further, Mattel contends that it is entitled to information regarding the sources of Larian's income to determine whether they are attributable to the alleged misconduct and thus subject to disgorgement.

Larian contends that the requested personal financial information is not relevant to the claims or defenses at issue.  More specifically, Larian contends that neither the names of his banks nor his gross income have any bearing upon either compensatory or punitive damages or Mattel's claim for disgorgement of profits.  Larian further contends that there is no support for Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.

Larian also contends that all three of the requests overlap substantially with requests Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or burden posed by these requests to him.  Further, Larian contends that the court has previously found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered no reason why the same result should not apply here.

Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted.  The

1   requests are reasonably calculated to lead to the discovery of admissible evidence relevant to

2   several issues in the case.  For example, the requested information is likely to lead to information

3   regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of

4   the creation of Bratz.  The requested information is also likely to show Larian's income and net

5   worth, which are relevant to damages.  Further, Larian has failed to establish that the requests are

6   unduly burdensome.  Although Mattel has sought and obtained broad discovery of financial

7   information from MGA, Mattel is also entitled to seek financial information directly from Larian.

8       Mattel's motion is denied as to Request No. 209, provided that Larian complies with

9   Request Nos. 207, 208 and 269.  In light of the discovery of financial information ordered herein

10  and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax

11  returns.

12  Storage Devices:  Request Nos. 222 and 224

13      In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating

14  to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive,

15  delete or modify digital information relating to Bratz, Angel, or Bryant.  Mattel contends that a

16  request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in

17  electronic form.  Mattel also contends that Rule 34 permits a party to obtain and test computer

18  hard drives and other storage devices.

19      Larian contends that the requests are overbroad, unduly burdensome, duplicative, and

20  ignore his privilege and privacy interests.  Larian also objects to an inspection of his actual hard

21  drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which

22  states that the amendment of Rule 34 relating to "electronically stored information is not meant to

23  create a routine right of direct access to a party's electronic information system."  See

24  Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes.  Larian contends that there is no justification for

25  an inspection of his electronic devices because there is no allegation that he improperly deleted

26  documents.

27      Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.

28

With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to authorize the routine production of a party's electronic devices. Mattel attempts to justify Request No. 222 by pointing to various instances of alleged destruction of evidence. See Mattel's Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer laptops; "wiping" information from the hard drives of Larian's computer laptops every six months; redacting "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and destructive testing of Bryant's original Bratz drawings). However, Mattel fails to explain how these alleged instances of evidence destruction justify Request No. 222, other than to assert that it has a right to inspect Larian's storage devices to ensure that relevant information has not been deleted or permanently destroyed. Mattel's stated purpose suggests instead that Mattel is launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal Rules of Civil Procedure. See e.g. Rivera v. NIBCO, Inc., supra. Furthermore, Mattel's stated purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222. Among other things, Request No. 222 encompasses every storage device that Larian has used to copy digital information relating to Bratz. Mattel does not need every CD and DVD containing copies of Bratz-related video and audio content, but that is what the request seeks.

Request No. 222 is also duplicative because it requests information that is sought in numerous other requests served on Larian as well as MGA. Mattel has served hundreds of requests for documents and communications relating to Bratz, Angel, and Bryant. To comply with the requests, Larian was required to search for documents in both hard-copy and electronic form. Under the circumstances, it is unnecessary for Larian to also produce the requested storage devices.

Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims and defenses in the case, and therefore do not justify the burden of production on Larian.

Bryant's Storage Devices:  Request Nos. 225, 227 and 228

In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

1    receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2          Larian contends that the requests are improperly directed to him because he does not have

3    personal possession of Bryant's hard drive or storage devices, or other information about those

4    devices. Mattel's Consolidated Separate Statement at p. 206. Larian also contends that the

5    requests are overbroad and unduly burdensome for the reasons discussed above in connection

6    with Request Nos. 222 and 224.

7          Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8    denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9
10   MGA Hong Kong and MGA Mexico:  Request Nos. 272 and 273

11         In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA

12   Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA

13   Mexico"), both of which are named defendants. In his supplemental responses, Larian agrees to

14   produce documents sufficient to show the ownership of these entities.

15         Mattel contends that the requests seek information relevant to refute MGA Mexico's

16   personal jurisdiction defense, and which bear on whether the acts of Larian and others are

17   attributable to the entities. Mattel also contends that Larian's (or MGA's ) ownership interest in

18   these companies is relevant to net worth. Mattel contends that Larian's supplemental response is

19   inadequate because it would allow Larian to withhold contradictory information and conceal the

20   true ownership of the business entities. Furthermore, Mattel contends that it is entitled to know

21   the ownership of these entities at times when different allegedly wrongful acts took place and to

22   determine if the ownership structure changed as a means of concealing assets or concealing the

23   payments of commercial bribes.

24         Larian contends that these requests should not be made to him, but to the entities

25   themselves or to MGA. Further, Larian contends that the requests are duplicative of a request

26   Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

27   served on MGA. Moreover, Larian contends that the requests are overbroad and unduly

28   burdensome, and that at most, he should only have to produce a list of owners.

Bryant v. Mattel, Inc.,                                    EXHIBIT _14_ PAGE _202_          18
CV-04-09049 SGL (RNBx)

Mattel contends that Larian cannot avoid his duty to respond to these requests simply by saying that the information is obtainable from another source. Further, Mattel contends that Larian has failed to establish that the requests are unduly burdensome.

Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable from another source that is more convenient, less burdensome, or less expensive, namely MGA Mexico and MGA Hong Kong. The requests are also overbroad and unduly burdensome.

### IV. CONCLUSION

For the reasons set forth above, it is hereby ordered as follows:

1.      At meet and confer sessions held after the filing of this motion, Larian agreed to produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-146, 213, 221 and 223. Accordingly, Larian shall produce, without limitation, all non-privileged documents that are responsive to these Requests.

2.      With respect to the remaining requests that are at issue in this motion, Larian shall:

A.      produce, without limitation, all non-privileged documents that are responsive to Request Nos. 79, 180, 198 (for the time period 1999-2005), 207, 208 and 269; and

B.      produce, in accordance with his supplemental responses, non-privileged documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and 209.

C.      Larian may produce documents responsive to Request Nos. 179, 180 and 181 in redacted form as provided herein.

D.      Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199, 209, 222, 224, 225, 227, 228, 272 and 273.

3.      Larian shall produce all non-privileged documents that are required by this Order that are in his possession, custody or control and that have not already been produced no later than January 11, 2008.

4.      Larian shall produce a privilege log no later than January 15, 2008.

1      5.      Mattel's request for sanctions is denied.

2           Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3    Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5    Dated: December 31, 2007

6                                            HON. EDWARD A. INFANTE (Ret.)
                                                  Discovery Master

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 2, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ISAAC LARIAN; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 2, 2008, at San Francisco, California.

Sandra Chan

EXHIBIT 14 PAGE 205

# EXHIBIT 15

## CONFORMED COPY

FILED

2007 SEP 26  PM 2: 28

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:   (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

                          EASTERN DIVISION
9

10

11 CARTER BRYANT, an individual,            CASE NO. C 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
12          Plaintiff,

13     v.                                   Consolidated with
                                            Case No. CV 04-09059
14 MATTEL, INC., a Delaware corporation,    Case No. CV 05-2727

15          Defendant.                      **ORDER GRANTING IN PART AND
                                            DENYING IN PART MATTEL'S
16                                          MOTION TO COMPEL MGA TO
                                            PRODUCE WITNESSES PURSUANT
17                                          TO THIRD NOTICE OF DEPOSITION
                                            UNDER RULE 30(b)(6); DENYING
18                                          REQUEST FOR SANCTIONS**

19 CONSOLIDATED WITH
   MATTEL, INC. v. BRYANT and
20 MGA ENTERTAINMENT, INC. v. MATTEL,
   INC.
21

22

23                         I. INTRODUCTION

24      On July 13, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Compel MGA to

25 Produce Witnesses Pursuant to Mattel's Third Notice of Deposition Under Rule 30(b)(6) and for

26 Sanctions." Specifically, Mattel seeks an order compelling MGA Entertainment, Inc. ("MGA")

27 to produce witnesses on Topics 1-3, 6-8, 9 and 11-13 of Mattel's Third Rule 30(b)(6) Notice. On

28
   Bryant v. Mattel, Inc.,                  EXHIBIT 15 PAGE 206           1
   CV-04-09049 SGL (RNBx)

1   July 31, 2007, MGA submitted an opposition brief.  On August 6, 2007, Mattel submitted a reply

2   brief.  The matter was heard on September 24, 2007.  Having considered the motion papers and

3   the comments of counsel, Mattel's motion is granted in part and denied in part, and the request for

4   sanctions is denied.

5                              II. BACKGROUND

6          Mattel first served a Rule 30(b)(6) Notice of Deposition of MGA in February of 2005,

7   which specified eight topics for deposition.  Mattel served a Second Notice of Deposition of

8   MGA in February of 2007, which specified forty-six topics for deposition.  On June 5, 2007,

9   Mattel served a Third Notice of Deposition of MGA (the "Third Notice"), which is the subject of

10  the present motion to compel.  The Third Notice specifies sixteen topics for deposition.  On June

11  29, 2007, MGA served objections to the Third Notice, and on July 5, 2007, the parties met and

12  conferred.  The parties were not able to resolve their disputes regarding four subject matters: hard

13  drives and other storage devices (Topics 1-3); prior inconsistent statements to the press (Topics 6-

14  8); "test projects" for MGA (Topic 9); and payments MGA made to Isaac Larian, Farhad Larian

15  and Morad Zarabi (Topic 11-13).  The topics at issue are set forth below.

16                        Hard Drives and Other Storage Devices

17          1.      The IDENTITY, current or last known location, and disposition of

18          each STORAGE DEVICE that each of the following PERSONS has used to

19          create, generate, prepare, draft, send and/or receive any DOCUMENT or

20          DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or

21          ANGEL at any time since January 1, 1999, including without limitation the date

22          of acquisition and the date of disposition of each STORAGE DEVICE:  Isaac

23          Larian, Farhad Larian, Paula Garcia, BRYANT, Kami Gillmour, Veronica

24          Marlow, Mercedeh Ward, Margaret Hatch-Leahy, Jennifer Maurus, Judy Rich,

25          Ninette Pembleton, Kerrie Brode, Victoria O'Connor, Aileen Storer, Charles

26          O'Connor, Helene Bartels, Colleen O'Higgins, Vivian Matt, Maureen Mullen,

27          Rachel Harris, Barbara Malcolm, David Dees, Ben Ton, Dave Malacrida.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _15_ PAGE _207_

2

2.     The IDENTITY, current or last known location, and disposition of each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of this Notice, including without limitation the date of creation and the date of disposition of each such backup or copy.

3.     YOUR search for and production of DOCUMENTS and DIGITAL INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this Notice.

<u>Prior Inconsistent Statements to the Press</u>

6.     YOUR statements to Christopher Palmeri in connection with the Business Week article entitled "To Really Be A Player, Mattel Needs Hotter Toys," published on or about July 28, 2003, including without limitation in connection with the statement that Isaac Larian "got the idea for Bratz after seeing his own kids run around in navel-bearing tops and hip-huggers."

7.     YOUR statements to Denise I. O'Neal in connection with the Chicago Sun-Times article entitled "Bratz Packers Are What's Cool in Doll World," published on or about March 5, 2004, including without limitation in connection with the statements that MGA's "creative team decided the name should be catchy and not have more than six letters.  Keeping with today's trend of making names more 'cool' by changing the spelling, MGA executives decided to replace the 's' with a 'z'"

8.     YOUR statements to Jeff Weiss in connection with the San Fernando Valley Business Journal article entitled "Immigrant's Creative Company Shakes Up Toy Industry," published on or about March 29, 2004, including without limitation in connection with the statement that "[i]t was Jason's idea for Bratz."

<u>"Test Projects" for MGA</u>

9.     The IDENTITY of each PERSON who YOU had perform, or who

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _15_ PAGE _208_

3

1   YOU requested, asked or solicited to perform, any "test project" in advance of or

2   in consideration of employment by YOU since January 1, 1995, including without

3   limitation the IDENTITY of each such PERSON who was a MATTEL employee

4   at the time.

5      Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi

6     11. Payments of money or any other item of value that YOU have

7   made to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac

8   Larian since January 1, 1999, including without limitation (a) the amounts of such

9   payment and the equivalent dollar value of each of item of value, (b) the dates of

10   such payment, (c) the IDENTITY of each recipient of such payment, (d) the

11   IDENTITY of each bank or financial institution account to which such payment

12   was made and (e) the reasons for each such payment.

13     12. Payments of money or any other item of value that YOU have

14   made to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad

15   Larian since January 1, 1999, including without limitation (a) the amounts of each

16   such payment and the equivalent dollar value of each of item of value, (b) the

17   timing of each such payment, (c) the IDENTITY of each recipient of each such

18   payment, (d) the IDENTITY of each bank or financial institution account to

19   which such payment was made and (e) the reasons for each such payment.

20     13. Payments of money or any other item of value that YOU have

21   made to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad

22   Zarabi since January 1, 1999, including without limitation (a) the amounts of each

23   such payment and the equivalent dollar value of each item of value, (b) the timing

24   of each such payment, (c) the IDENTITY of each recipient of each such payment,

25   (d) the IDENTITY of each bank or financial institution account to which such

26   payment was made and (e) the reasons for each such payment.

27   Zeller Decl., Ex. 23.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _15_ PAGE _209_

4

1    Mattel seeks an order compelling MGA to produce witnesses to testify on Topics 1-3, 6-8,

2    9 and 11-13, and overruling all of MGA's objections and limitations.  Mattel contends that the

3    testimony it seeks is relevant, not unduly burdensome, and not otherwise objectionable as

4    cumulative or duplicative of any other deposition testimony already given in the case.

5    MGA contends that Mattel's Third Notice is invalid because Mattel failed to obtain leave

6    of court to take MGA's deposition after having previously deposed several 30(b)(6) designees.

7    MGA contends that Rule 30(a)(2)(B), Fed.R.Civ.P., requires Mattel to establish good cause for

8    examining MGA any further.  MGA further contends that Mattel has not established the requisite

9    good cause, and instead improperly has attempted to shift the burden of proof to MGA to justify

10    its objections to the Third Notice.  Lastly, MGA contends that Mattel has had many opportunities

11    to obtain, and in many cases has already obtained, the information it now moves to compel.

12    <u>III. STANDARDS</u>

13    Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

14    discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

15    party."  Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

16    discovery appears reasonably calculated to lead to the discovery of admissible evidence." <u>Id.</u>

17    Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., the court shall limit the frequency or extent of

18    use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably

19    cumulative or duplicative, or is obtainable from some other source that is more convenient, less

20    burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by

21    discovery in the action to obtain the information sought; or (iii) the burden or expense of the

22    proposed discovery outweighs its likely benefit, taking into account the needs of the case, the

23    amount in controversy, the parties' resources, the importance of the issues at stake in the

24    litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

25    26(b)(2)(C).

26    Pursuant to Rule 30, Fed.R.Civ.P., a party may take the testimony of any person, including

27    a party, by deposition upon oral examination without leave of court, except as provided in Rule

28

1   30(a)(2), Fed.R.Civ.P.  In particular, Rule 30(a)(2) specifies that a party must obtain leave of

2   court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2),

3   Fed.R.Civ.P., if "the person to be examined already has been deposed in the case."  Fed.R.Civ.P.

4   30(a)(2)(B).

5                                        IV. DISCUSSION

6          As a threshold matter, the parties dispute whether Rule 30(a)(2)(B), Fed.R.Civ.P., applies

7   to depositions taken pursuant Rule 30(b)(6), Fed.R.Civ.P.  There is caselaw to support each

8   party's position.  See e.g. Ameristar Jet Starter, Inc. v. Signal Composites, Inc., 244 F.3d 189 (1st

9   Cir. 2001) (second Rule 30(b)(6) subpoena issued without leave of court was invalid); In re

10  Sulfuric Acid Antitrust Litig., 2005 WL 1994105 (D. Ill. Aug. 19, 2005) (holding that second

11  Rule 30(b)(6) subpoena issued without leave of court was invalid); Innomed Labs, LLC v. Alza

12  Corp., 211 F.R.D. 237 (S.D. N.Y. 2002) (quashing overbroad 30(b)(6) subpoena issued without

13  leave of court); Quality Aero Tech., Inc. v. Telemetrie Elektronik, 212 F.R.D. 313, 319 (E.D.

14  N.C. 2002) (holding that Rule 30(a)(2)(B) does not apply to Rule 30(b)(6) depositions).  For

15  purposes of the present motion, however, it is unnecessary to resolve this conflict in the law

16  because the debate is purely academic and inconsequential.  As Mattel has requested, Mattel's

17  motion is treated herein as a motion for leave to serve an additional 30(b)(6) notice with

18  additional topics.  In evaluating the appropriateness of the topics, it is Mattel's burden to

19  demonstrate that there is good cause for such discovery (see e.g. Boston Scientific Corp. v. Cordis

20  Corp., 2004 WL 1945643 (N.D.Cal. 2004)), applying the principles stated in Rule 26(b)(2),

21  Fed.R.Civ.P.

22                        Hard Drives and Other Storage Devices (Topics 1-3)

23          Topic 1 seeks information regarding the location and disposition of computer hard drives

24  or other storage devices used by specified MGA employees or contractors that contain or

25  contained documents related to the Bratz or Angel projects.  Topic 2 seeks the identification and

26  last known location of any backup, copy or image of the hard drives or storage devices identified

27  in Topic 1.  Topic 3 seeks information regarding MGA's search for and production of documents

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _15_ PAGE _211_

6

1   and digital information from the hard drives and storage devices referenced in Topic 1.

2        MGA objected to Topics 1-3 as overbroad, unduly burdensome, vague, ambiguous,

3   irrelevant, and not reasonably calculated to lead to admissible evidence.  MGA also objected to

4   Topics 1-3 to the extent that the information sought is obtainable through other more convenient,

5   less burdensome and less expensive means.  Lastly, MGA objected to Topics 1-3 as unreasonably

6   cumulative and duplicative of information already provided by Ken Lockhart, Vice President and

7   Chief Information Officer for MGA.

8        Topics 1-3 unquestionably seek information that is relevant within the meaning of Rule

9   26(b)(1), Fed.R.Civ.P., which specifically authorizes discovery regarding any matter, not

10  privileged, that is relevant to the claim or defense of any party, including "the existence,

11  description, nature, custody, condition, and location of any books, documents or other things."  A

12  portion of the discovery sought, however, is unreasonably cumulative and duplicative of

13  information already provided by Mr. Lockhart.  MGA designated Mr. Lockhart as a 30(b)(6)

14  witness to testify about MGA's retention, destruction and data back-up policies, MGA's digital

15  information systems and application software, employees' electronic messaging systems, and

16  MGA's policies regarding the use of transportable media.  Mr. Lockhart testified about the

17  location and disposition of MGA employees' hard drives and storage devices in general.

18       Mattel contends that Topics 1-3 differ from the topics in the Second Notice and the

19  testimony previously given by Mr. Lockhart in that Mattel now seeks information about the

20  locations and dispositions of hard drives used by 24 named individuals.  Mattel contends that the

21  testimony it seeks will enable it to assess MGA's production, including whether any documents

22  requested or compelled by the Court were destroyed, not collected or otherwise made unavailable

23  to Mattel.  Mattel's Reply at p.7.

24       Although Mattel's stated objective for seeking testimony regarding Topics 1-3 may be

25  legitimate, the burden and expense of a Rule 30(b)(6) deposition is not justified under the

26  circumstances of this case.  Mattel has accused MGA of obstructing discovery, and in particular

27  withholding Bryant's computer.  There is no evidence, however, to suggest that MGA has refused

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT 15 PAGE 2/2

1  or failed to search for and produce responsive documents located on the hard drives of the other

2  individuals named in Topic 1. It is burdensome and expensive to prepare a witness to testify

3  about the locations and dispositions of hard drives used for 24 different individuals. The likely

4  benefit of undergoing such a burden and expense is doubtful. Furthermore, there are other less

5  burdensome and less expensive means of assessing whether MGA has complied with its

6  discovery obligations, including for example, document requests and interrogatories. Therefore,

7  Mattel's motion is denied as to Topics 1-3.

<u>Prior Inconsistent Statements to the Press (Topics 6-8)</u>

9       Topics 6-8 seek testimony regarding three public statements made by Isaac Larian

10  regarding who conceived of Bratz. MGA objected to Topics 6-8 as irrelevant and not reasonably

11  calculated to lead to admissible evidence. MGA also objected to Topics 6-8 to the extent that the

12  information sought is obtainable through other more convenient, less burdensome and less

13  expensive means. Further, MGA objected to Topics 6-8 as unreasonably cumulative and

14  duplicative of information already provided by MGA and/or Carter Bryant. MGA also objected

15  to a deposition on these Topics "to the extent that the statements referenced above were not made

16  by MGA as a corporate actor and thus they are not the appropriate subject of a 30(b)(6)

17  designation." Zeller Decl., Ex. 24.

18       Mattel contends that Topics 6-8 are the proper subject of a Rule 30(b)(6) deposition

19  because each of the statements identified therein was made by MGA's Chief Executive Officer,

20  Isaac Larian. Mattel acknowledges that it already deposed Isaac Larian regarding one of the

21  articles identified in Topics 6-8, but contends that it is not attempting to re-depose him. Rather,

22  Mattel contends that it is entitled to elicit testimony that will bind the corporation so that it will

23  not be "sandbagged" at trial. Mattel's Reply at p.6.

24       MGA accuses Mattel of misusing the 30(b)(6) procedure when Mattel knows that Isaac

25  Larian is the person who should be, and already has been, deposed about the statements identified

26  in Topics 6-8. MGA also contends that Mattel opted to limit its examination of Isaac Larian to

27  one article, and that Mattel's failure to fully question Isaac Larian in no way justifies deposing

28

EXHIBIT *15* PAGE *213*

1  MGA now.  MGA also contends that Mattel could avail itself of other discovery methods, such as

2  interrogatories or requests for admission, to obtain further information about the publications

3  identified in Topics 6-8.

4        Topics 6-8 seek information relevant to the central issue in the case:  who conceived of

5  Bratz.  Mattel's use of the 30(b)(6) procedure is justified in order to obtain testimony that will

6  bind the corporation.  The testimony Mattel now seeks is not unreasonably cumulative or

7  duplicative of testimony it has already sought from Isaac Larian because Mattel previously

8  questioned Isaac Larian about only one of the articles identified in Topics 6-8.  Further, the likely

9  benefit to Mattel of testimony from Isaac Larian (or another corporate designee) regarding Topics

10  6-8 outweighs the burden and expense to MGA, given the importance of the testimony Mattel

11  seeks.  Mattel's motion is granted as to Topics 6-8.

12        <u>"Test Projects" for MGA (Topic 9)</u>

13        In Topic 9, Mattel seeks the identity of each person MGA had perform or who MGA

14  requested, asked or solicited to perform, any "test project" in advance of or in consideration of

15  employment by MGA since January 1, 1995.  MGA objected to Topic 9 as irrelevant, not

16  reasonably calculated to lead to the discovery of admissible evidence, overbroad, unduly

17  burdensome, and unreasonably cumulative and duplicative.  MGA also objected to Topic 9 as

18  vague and ambiguous, particularly with respect to the term "test project."  MGA also objected to

19  Topic 9 to the extent that the information sought is obtainable through other, more convenient,

20  less burdensome and less expensive means.  MGA also objected to Topic 9 as seeking

21  confidential, proprietary, and commercially sensitive information with no relevance to the

22  litigation.

23        When Carter Bryant was deposed by Mattel, he testified that he "did sort of a tryout kind

24  of a project for" MGA.  Zeller Decl., Ex. 29 at 9:19-20.  He also referred to this "tryout" project

25  as a "test assignment."  <u>Id</u>. at 515-516.  In light of Bryant's testimony, Mattel's stated purpose of

26  Topic 9 is to "obtain information that will refute MGA and Bryant's assertions that Bryant's

27  working for MGA while employed by Mattel was no different than a supposedly standard

28

1  industry practice of having candidates for creative positions make artwork as part of the job

2  interview." Mattel's Motion at p.22.

3       MGA acknowledges that Mattel provided a definition for the phrase "test assignment" in

4  its motion papers. MGA's Opposition at p.10. MGA nevertheless contends that Topic 9 remains

5  objectionable as overbroad, reasoning that it would require MGA to provide information "with

6  regard to how it proceeded with hiring virtually every single employee hired since 1995."

7  MGA's Opposition at p.9. MGA also contends that it would be unduly burdensome to require

8  MGA to have a designee review and potentially memorize information about every single person

9  who has applied for a job at MGA since 1995, particularly when Bryant only began working for

10  MGA in 2000. MGA contends that a contention interrogatory is more appropriate than a 30(b)(6)

11  deposition to obtain the information called for in Topic 9.

12       Topic 9 seeks information relevant to one of MGA and Bryant's defenses, namely their

13  claim that Bryant's work for MGA while employed by Mattel was no different than a standard

14  industry practice of having candidates for creative positions make artwork as part of the job

15  interview. Topic 9, however, is objectionable because it is overbroad and burdensome. In

16  particular, Topic 9 is overbroad in terms of the specified time frame because Bryant did not begin

17  working at MGA until the year 2000. Topic 9 is also objectionable because the information

18  sought is more appropriately obtained through a contention interrogatory, which would be

19  significantly less burdensome and less expensive than a 30(b)(6) deposition. Therefore, Mattel's

20  motion is denied as to Topic 9. In lieu of taking a 30(b)(6) deposition on Topic 9, Mattel is

21  granted leave to serve a contention interrogatory regarding Topic 9 limited to the years 1998

22  through 2004.

23       <u>Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi (Topics 11-13)</u>

24       In Topics 11-13, Mattel seeks information regarding payments made by MGA to Isaac

25  Larian (Topic 11), Farhad Larian (Topic 12), and Morad Zarabi (Topic 13). MGA objected to

26  these Topics as irrelevant, not reasonably calculated to lead to the discovery of admissible

27  evidence, overbroad, unduly burdensome, and unreasonably cumulative and duplicative. MGA

28

EXHIBIT _15_ PAGE _215_

10

1   also objected to Topics 11-13 to the extent that the information sought is obtainable through

2   other, more convenient, less burdensome and less expensive means. MGA also objected to

3   Topics 11-13 as seeking confidential, proprietary, and commercially sensitive information with no

4   relevance to the litigation.

5        Mattel explains that Morad Zarabi arbitrated a dispute between Isaac Larian and Farhad

6   Larian that involved the timing of the creation of Bratz. More specifically, Farhad Larian claimed

7   that Isaac Larian concealed from him MGA's development with Carter Bryant of Bratz dolls and

8   alleged that Bryant began working with MGA during a time Bryant was employed by Mattel.

9   Mattel considers all three individuals involved in the arbitration as witnesses in this litigation, and

10   therefore seeks information that may establish their bias. Mattel also emphasizes that Isaac

11   Larian is a party to the litigation, and that payments made by MGA to him are relevant to Mattel's

12   claim for punitive damages, and may be used as impeachment evidence. Lastly, although Mattel

13   acknowledges that it deposed Isaac Larian regarding payments he received from MGA, Mattel

14   contends that it is entitled to testimony from MGA to corroborate or refute his testimony.

15        MGA contends that Topics 11-13 are not relevant to this lawsuit. In particular, MGA

16   objects to Topics 12 and 13 as seeking "private financial records of persons who are neither

17   parties nor witnesses in this action, and whose only connection is knowing people involved in the

18   lawsuit." MGA's Opposition at p. 13. With regard to payments to Isaac Larian, MGA contends

19   that Mattel already had the opportunity to ask him about payments during his deposition. MGA

20   also contends that Mattel is not entitled to conduct discovery regarding Isaac Larian's net worth at

21   this time. Even if Mattel is entitled to conduct such discovery, MGA contends that payments

22   made to him would not establish his net worth because they represent only one of many sources

23   of income and do not account for his other assets and liabilities.

24        MGA's payments to Isaac Larian and Farhad Larian are relevant to the claims and

25   defenses in the case. Payments to Isaac Larian and Farhad Larian may also show possible bias

26   and be used for impeachment purposes. Moreover, MGA's payments to Isaac Larian may be

27   relevant to Mattel's claim for punitive damages. Payments to Isaac Larian are a component of his

28

1  net worth, even if they represent one source of income. The burden of producing such information

2  does not outweigh its relevance, taking into consideration the circumstances of this case.

3  Furthermore, there is no stay on discovery pertaining to punitive damages.  Accordingly, Mattel's

4  motion is granted as to Topics 11 and 12.

5       In contrast, MGA's payments to Morad Zarabi are irrelevant.  His only connection to this

6  litigation appears to be with the arbitration proceedings.  Any potential relevance of MGA's

7  payments to Morad Zarabi is outweighed by the burden and the intrusion into his private financial

8  affairs.  Mattel's motion is denied as to Topic 13.

9                          V. CONCLUSION

10      For the reasons set forth above, it is hereby ordered as follows:

11      1.     Mattel's motion to compel is granted as to Topics 6-8, 11 and 12.

12      2.     Mattel's motion to compel is denied as to Topics 1-3, 9 and 13.  In lieu of taking a

13  deposition on Topic 9, Mattel is hereby granted leave to serve a contention interrogatory

14  regarding Topic 9 that is limited to the years 1998 through 2004.

15      3. Mattel's request for sanctions is denied.

16  Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

17  Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20  Dated: September 25, 2007

21                          HON. EDWARD A. INFANTE (Ret.)
                            Discovery Master
22

23

24

25

26

27

28
    Bryant v. Mattel, Inc.,                                    12
    CV-04-09049 SGL (RNBx)

EXHIBIT 15 PAGE 217

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 26, 2007, I served the attached ORDER GRANTING IN PART AND DENYI8NG IN PART MATTEL'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO THIRD NOTICE OF DEPOSITION UNDER RULE 30(b)(6); DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 26, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT _15_ PAGE _218_