QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| Defendant. | **[To Be Heard By Hon. Edward Infante (Ret.) Pursuant To Order Of December 6, 2006]** |
| AND CONSOLIDATED ACTIONS | **MATTEL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO BRYANT'S MOTION TO QUASH SUBPOENA ISSUED TO PEOPLE'S BANK OF THE OZARKS OR IN THE ALTERNATIVE, FOR PROTECTIVE ORDER** |
| | [Declaration of Melissa Grant filed concurrently herewith] |
| | Hearing Date:        TBA<br>Time:               TBA<br>Place:              TBA |
| | **Phase 1:**<br>Discovery Cut-off:      January 28, 2008<br>Pre-trial Conference:   May 5, 2008<br>Trial Date:            May 27, 2008 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................. 1

STATEMENT OF FACTS .................................................................... 3

ARGUMENT ................................................................................... 6

I.  MGA'S MOTION TO QUASH SHOULD BE DENIED BECAUSE THE DOCUMENTS SOUGHT MAY BE PRODUCED WITH MINIMAL BURDEN .................................................................... 6

    A.  The Documents Sought Are Relevant to the Claims And Defenses At Issue .................................................................... 7

        1.  The Documents Are Relevant to Disgorgement and Constructive Trust Remedies, as Well as Punitive Damages .................................................................... 7

        2.  Mattel is Entitled to Documents Showing or Related to Bryant's Net Worth .................................................................... 9

        3.  The Documents Sought Are Relevant to Mattel's Commercial Bribery Claims and Evidence of Bias .................. 10

        4.  Bryant's Claim That The Documents Have Been Produced Or Are Otherwise Duplicative Is Baseless ............................... 10

        5.  Mattel is Entitled to the Requested Documents Because of Legitimate Concerns of Spoliation and Document Tampering .................................................................... 11

    B.  Bryant Has Not Shown Undue Burden ................................ 12

    C.  The Subpoenas Are Not Overbroad ................................... 13

II.  BRYANT WAS NOT PREJUDICED BY LACK OF "PRIOR NOTICE" .................................................................... 14

III.  THE REMAINING OBJECTIONS ARE BOILERPLATE AND SHOULD BE OVERRULED .................................................. 15

    A.  The Boilerplate Objections Are Improper ........................... 15

    B.  Bryant's Concern Over Confidentiality Is Frivolous ............. 16

CONCLUSION .................................................................... 16

1

## TABLE OF AUTHORITIES

2

Page

3

### Cases

4

A. Farber and Partners, Inc. v. Garber,
   234 F.R.D. 186 (C.D. Cal. 2006)..........................................................16

5

6

In re Bergeson,
   112 F.R.D. 692 (D. Mont. 1986) ..........................................................10

7

Biocare Med. Techs., Inc. v. Khostowshahi,
   181 F.R.D. 660 (D. Kan. 1998) ............................................................15

8

9

Blaser v. Mt. Carmel Regional Med. Ctr., Inc.
   2007 WL 852641, at *2 (D. Kan. 2007)................................................14

10

Burlesci v. Petersen,
   68 Cal. App. 4th 1062 (1998) .................................................................8

11

12

Clark v. Bunker,
   453 F.2d 1006 (9th Cir. 1972) ................................................................7

13

Cramer v. Biddison,
   65 Cal. Rptr. 624, 257 Cal. App. 2d 720 (1968) ...................................8

14

15

Davis v. Superior Court,
   7 Cal. App. 4th 1008 (1992)..................................................................16

16

E. Bassett Co. v. Revlon, Inc.,
   435 F.2d 656 (2d Cir. 1970) ...................................................................7

17

18

Farmers Ins. Exchange v. Zerin,
   53 Cal. App. 4th 445 (1997)...................................................................8

19

20

Goodman v. U.S.,
   369 F.2d 166 (9th Cir. 1966) ................................................................13

21

Green v. Baca,
   226 F.R.D. 624 (C.D. Cal. 2005)............................................................6

22

23

Heat and Control, Inc. v. Hester Industries, Inc.,
   785 F.2d 1017 (Fed. Cir. 1986) ..............................................................6

24

Housing Rights Center v. Sterling,
   2005 WL. 3320739 (C.D. Cal. 2005) ..................................................8, 9

25

26

JZ Buckingham Investments, LLC v. United States,
   78 Fed. Cl. 15 (Fed. Cl. Ct. 2007) .......................................................13

27

Judson v. Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec,
   476 F. Supp. 2d 913 (N.D. Ill. 2007).....................................................15

28

-ii-

MATTEL INC.'S OPPOSITION TO BRYANT'S MOTION TO QUASH

Korea Supply Co. v. Lockheed Martin Corp.,
    29 Cal. 4th 1134 (2003)............................................................................7, 8

Kraus v. Trinity Management Servs., Inc.,
    23 Cal. 4th 116 (2000)................................................................................7

Kraus v. Willow Park Public Golf Course,
    140 Cal. Rptr. 744, 73 Cal. App. 3d 354 (1977) ....................................8

Northrop Corp. v. McDonnell Douglas Corp.,
    751 F.2d 395 (D.C. Cir. 1984)................................................................12

Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.,
    292 F. Supp. 2d 923 (N.D. Ill. 2003)......................................................13

Panola Land Buyers Ass'n v. Shuman,
    762 F.2d 1550 (11th Cir. 1985) ..............................................................16

Plant Genetic Systems, N.V. v. Northrup King Co., Inc.,
    6 F. Supp. 2d 859 (E.D. Mo. 1998) ........................................................10

Southern California Housing Rights Center v. Krug,
    2006 WL. 4122148 (C.D. Cal. 2006) ..................................................9, 10

State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.,
    2007 WL. 2993840 (E.D.N.Y. 2007) ......................................................10

Taylor v. Polackwich,
    145 Cal. App. 3d 1014 (1983) ..................................................................8

Tubor v. Clift,
    2007 WL. 214260 ( W.D. Wash. 2007) .............................................14, 15

U.S. v. American Optical Co.,
    39 F.R.D. 580 (N.D. Cal. 1966) ................................................................6

Weiss v. Marchus,
    51 Cal. App. 3d 590 (1975) ......................................................................8

Zinter Handling, Inc. v. G.E.,
    2006 WL. 3359317 (N.D.N.Y. 2006)..................................................14, 15

## **Statutes**

17 U.S.C. § 504(b) ..............................................................................................7

Cal. Civ. Code § 2223........................................................................................8

Cal. Civ. Code § 2224........................................................................................8

Fed. R. Civ. P. 45(b) ..........................................................................................6

<u>Fed. R. Civ. P.</u> 45(d) ................................................................................................ 6

### **<u>Other Authorities</u>**

4 Callmann, <u>Unfair Competition and Monopolies</u> § 14.45 (4th ed.) ......................... 7

**Preliminary Statement**

Bryant's motion to quash the People's Bank of the Ozarks subpoena is nothing more than another obstructionist tactic to block Mattel's efforts to obtain relevant financial records that Bryant has failed to produce—notwithstanding the Discovery Master's January 25, 2007 Order to do so.

For more than two years, Bryant refused to produce documents showing his Bratz-related income.  In January 2005 and again in January 2007, Mattel moved to compel their production.  By Order dated January 25, 2007, the Discovery Master granted Mattel's motion and ordered Larian to produce certain financial records—including his personal banking records—from January 1, 1999 to the present.  The records to be produced were to be sufficient to establish any and all payments received by Bryant from MGA defendants and all financial gains and benefits received by Bryant as a result of his wrongful conduct in violation of his duties to Mattel.  The Discovery Master found such records relevant to the claims and defenses at issue.

By mid-January 2008, however, Bryant had yet to produce those financial records.  On January 15, 2008—ten days before the Phase 1 discovery cut-off, Bryant left Mattel no choice but to seek Bryant's banking records by subpoena from the People's Bank of the Ozarks (the "Bank").  The Bank has agreed to comply with the subpoena without objection, and was prepared to produce the vast majority of the documents sought by the return date of January 28, 2008.  But Bryant improperly intervened and sent a "threatening letter" to the Bank if it produced any responsive documents.  No documents have been produced by the Bank as a result of Bryant's intervention and baseless Motion to Quash.

Bryant contends that production of the documents requested in the subpoena would violate his right to privacy. The Discovery Master rejected Bryant's privacy argument in the January 25, 2007 Order, holding that any privacy rights

Bryant has in the financial records sought are thoroughly protected by the operative protective order.

Bryant also makes the conclusory argument that the requests are "wildly overbroad, harassing and duplicative."  Again, the Court ordered Bryant to produce the financial records sought.  His contention is baseless.   With Phase 1 discovery closed, Bryant's history of obstruction, and Mattel's legitimate concerns of spoliation and evidence tampering, Mattel should not be forced to assume Bryant's good-faith production of indisputably relevant and discoverable financial records.

The crucial importance of third-party discovery in this case was underscored again in a key deposition taken only four weeks ago.  At her deposition on December 28, 2007, Veronica Marlow, a third-party witness who long worked directly with Bryant and MGA, testified that she knew of at least three Mattel employees who *for years* worked on Bratz ***while they were employed by Mattel***.[1]  This was a shocking revelation.  Neither MGA nor Bryant had disclosed this information, despite repeated Court Orders and despite the fact that at least one of these individuals was a co-worker of Bryant's at Mattel.  To the contrary, both Bryant and MGA gave flat denials under oath that there was any other Mattel employees knowingly involved.[2]  Yet, by MGA's reasoning here, the Court should have denied Mattel Ms. Marlow's plainly relevant evidence because it purportedly duplicated discovery requested of defendants.  In fact, defendants made that very argument to Judge Larson in resisting producing Ms. Marlow for deposition in the first place, to no avail.

---

[1]   Exh. N at 288:8-289:21, 306:8-25; 307:8-308:1; 363:15-21[Deposition Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007) to the Declaration of Melissa Grant In Support of Mattel's Opposition to MGA's Motion ("Grant Dec. MGA").  All exhibits are to the Grant Dec. In Support of Mattel's Opposition to Bryant's Motion unless otherwise stated.

[2]   Exh. O  (Grant Dec. MGA) at 286:25-287:5 [Dep. Tr. of Carter Bryant, Vol. 2 ("Bryant Tr.")]; Exh. M (Grant Dec. MGA) at 301:2-17 [Dep. Tr. of Lisa Tonnu, Vol. 2 ("Tonnu Tr.)]; Exh. P (Grant Dec. MGA) _ at 64-70 [MGA's Supp. Responses to Mattel's Revised Third Set of Interrogatories].

This Court should not countenance any further attempt by Bryant to foreclose Mattel from obtaining indisputably relevant information from any third party—including the People's Bank of the Ozarks.  Accordingly, Bryant's  Motion should be denied, and production of the documents sought by Mattel from the People's Bank compelled.

## Statement of Facts

**Mattel Subpoenaed Documents Related to Mattel's Claims and Defenses From the Bank of America, Larian's Personal Bank.**  On January 21, 2008, Mattel served a subpoena *duces tecum* on Bryant's personal bank, the Peoples Bank of the Ozarks.[3]  The return date for responsive documents was January 28, 2008—the Phase 1 discovery cut-off.  The subpoena contained six requests:

(1)    All DOCUMENTS REFERRING OR RELATING TO CARTER BRYANT ENTERPRISES from January 1, 1999 to the present, inclusive.

(2) All DOCUMENTS REFERRING OR RELATING TO CARTER BRYANT from January 1, 1999 to the present, inclusive.

(3) All DOCUMENTS REFERRING OR RELATING TO the ACCOUNT maintained by YOU numbered 300368180, including but not limited to statements, monthly statements, annual statements, daily transaction history reports, monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature cards, and COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNT, created between January 1, 1999 and the present, inclusive.

(4) All DOCUMENTS REFERRING OR RELATING TO any other ACCOUNT maintained by YOU that is in the name of, for the benefit of or concerns CARTER BRYANT ENTERPRISES or CARTER BRYANT, including but not limited to statements, monthly statements, annual statements, daily transaction history reports, monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature cards, and COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNTS, created between January 1, 1999 and the present, inclusive.

(5) DOCUMENTS sufficient to show the account number of all ACCOUNTS maintained by YOU in the name of, for the benefit of or

---

[3]   Exh, C _.

concerning CARTER BRYANT ENTERPRISES or CARTER BRYANT between January 1, 1999 and the present, inclusive.

(6) All DOCUMENTS showing or relating to any account(s) held by CARTER BRYANT ENTERPRISES or CARTER BRYANT or any account(s) for which CARTER BRYANT ENTERPRISES or CARTER BRYANT has signatory authority at any other financial institution..[4]

On January 25, 2008, the Bank advised Mattel that it would comply with the subpoena without objection, that it had assembled the vast majority of responsive documents, and that it needed an additional 14 day to retrieve a few months of records from microfilm.[5]  In light of the Bank's request, Mattel asked Bryant and the MGA defendants to stipulate to the additional time for production requested by the Bank.[6]  Bryant flatly refused.[7]

Mattel agreed to the Bank's request and moved for leave to permit the discovery after the Phase 1 discovery cut-off.[8]  Mattel requested that the Bank produce the documents it had already assembled on the subpoena return date of January 28, 2008, and the Bank agreed.[9]

Thereafter, Bryant served objections to the subpoena and improperly sent a "threatening letter" to the Bank if it produced any documents to Mattel.[10]  As a result, Bryant prevented the Bank from not producing **any responsive documents.**[11]

**Foothill Business Services Document Production.**  On December 11, 2007, Mattel issued a subpoena to Foothill Business Services ("Foothill"), Bryant's accountants, seeking relevant financial information relating to Bryant and Carter Bryant Enterprises, which it amended on December 18, 2007 ("Foothill

---

[4]  Exh. C.
[5]  Exh. D
[6]  Grant dec. ¶ 6.
[7]  Id at ¶ 8, Exh. I.
[8]  Id. at ¶ 6.
[9]  Id. at ¶ 9.
[10]  Id. at ¶ 10.
[11]  Id.

Subpoena").[12]  Bryant's counsel objected to the Subpoena and advised Mattel that Bryant intended to file a motion to quash or for a protective order if Mattel did not withdraw it.[13]  Over the course of the next month, counsel met and conferred by telephone, e-mail message, and letter regarding Bryant's objections to the Foothill Subpoena.[14]

By letter dated January 11, 2008, Bryant's counsel confirmed that Bryant agreed to gather from Foothill and produce to Mattel the following documents:

a.     All available profit and loss income statements for Carter Bryant Enterprises ("CBE");

b.     Documents sufficient to show all payments to Bryant from MGA and/or Isaac Larian;

c.     Documents sufficient to show all payments  to Veronica Marlow from Bryant or CBE;

d.     Documents sufficient to show Bryant's net worth;

e.     Documents sufficient to identify any witness or witnesses' counsel to whom Bryant has made any payments for fees, costs, or expenses incurred by that witness in connection with the present litigation and the amount paid, if any, to or on behalf of such witness;

f.     Foothill's document retention policy, if it has one; and

g.     Documents constituting communications between Bryant and Foothill substantively related Bratz[15].

On January 23, 2008—five days before the Phase 1 discovery cut-off— Bryant purported to produce by e-mail "documents in accordance with our

---

[12]  Id. at ¶ 13.
[13]  Id. at ¶ 14.
[14]  Id.
[15]  Id. at ¶ 15.

1  stipulation regarding Mattel's subpoena of Foothill Business Services."[16]  However,

2  the Foothill production consisted of only 10 documents:  two CBE income

3  statements from 2003, four CBE quarterly income statements from 2006, four CBE

4  quarterly incomes statements from 2007, and ledger of payments to Veronica

5  Marlow in 2006 and 2007 only.[17]

6  **Bryant Has Not Provided Mattel with "Prior Notice" of Subpoenas**

7  **Before Serving Them to Third Parties.**  Bryant has served at least six subpoenas

8  on third parties in this action, for which he has **never** provided Mattel "prior

9  notice."[18]

10

11  **Argument**

12  I.  **MGA'S MOTION TO QUASH SHOULD BE DENIED BECAUSE THE**

13  **DOCUMENTS SOUGHT MAY BE PRODUCED WITH MINIMAL**

14  **BURDEN**

15  The Federal Rules of Civil Procedure obligates third parties to produce

16  documents responsive to a subpoena that a party serves on them.  Fed. R. Civ. P.

17  45(b), (d).  MGA does not dispute this.  If the documents are relevant and there is

18  good cause for their production, the subpoena is enforced unless the documents are

19  privileged or the subpoena is unreasonable, oppressive, annoying, or embarrassing.

20  U.S. v. American Optical Co., 39 F.R.D. 580, 583 (N.D. Cal. 1966).

21  As the party moving, Bryant bears the initial burden of persuasion to

22  demonstrate that Mattel's document requests are improper.  See Green v. Baca, 226

23  F.R.D. 624, 653 (C.D. Cal. 2005).  The burden on the party moving to quash a

24  subpoena is a "heavy one."  Heat and Control, Inc. v. Hester Industries, Inc., 785

25  F.2d 1017, 1024-25 (Fed. Cir. 1986) (noting that "the factors required to be

26  balanced by the trial court in determining the propriety of a subpoena are the

27  _____
   [16]  Id. at ¶ 16.

28  [17]  Id.

relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.").  Here, Bryant has utterly failed to meet his burden.

**A.    The Documents Sought Are Relevant to the Claims And Defenses At Issue**

Bryant's asserts in conclusory terms that the documents sought from the Bank are "irrelevant" to the claims and defenses at issue.  Bryant is wrong.

**1.    The Documents Are Relevant to Disgorgement and Constructive Trust Remedies, as Well as Punitive Damages**

One remedy Mattel seeks is disgorgement of all amounts wrongfully obtained.  The disgorgement remedy also provides for the imposition of constructive trusts to recover the ill–gotten gains of Bryant that have been transferred to other parties.[19]  For purposes of establishing disgorgement, Mattel must take into account money transferred from MGA defendants to and from Bryant, regardless of the manner in which it was transferred.  Mattel is entitled to discovery that shows all assets siphoned by defendants.

It is undisputed that disgorgement is a remedy for Mattel's claims against defendants, including copyright infringement and trade secret misappropriation.  17 U.S.C. § 504(b); E. Bassett Co. v. Revlon, Inc., 435 F.2d 656 (2d Cir. 1970) (copyright infringement); 4 Callmann, Unfair Competition and Monopolies § 14.45 (4th ed.); Clark v. Bunker, 453 F.2d 1006, 1011 (9th Cir. 1972) (trades secret misappropriation).  The scope of the disgorgement remedy is set forth in two recent California Supreme Court decisions.  See Kraus v. Trinity Management Servs., Inc., 23 Cal. 4th 116 (2000); Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134 (2003).  The court indicated that:

---

[18]  Id. at ¶ 17.
[19]  Exh. B [Second Amended Answer and Counterclaims] to the Declaration of Melissa Grant.

> "disgorgement" is a broader remedy than restitution. . . . [A]n order for disgorgement "may compel a defendant to surrender *all* money obtained through an unfair business practice even though not all is to be restored to the persons from whom it was obtained or those claiming under those persons.  It has also been used to refer to surrender of *all* profits earned as a result of an unfair business practice regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice."

Korea Supply, 29 Cal. 4th at 1145 (quoting Kraus, 23 Cal. 4th at 127) (emphasis added).  Moreover, an important part of disgorgement is the imposition of a constructive trust to recover ill–gotten gains that have been transferred to others by a defendant.  A constructive trust is intended to prevent unjust enrichment, with equity compelling the restoration to another of property to which the holder thereof is not justly entitled.  Taylor v. Polackwich, 145 Cal. App. 3d 1014, 1022 (1983); Cal. Civ. Code §§ 2223, 2224.  See also Weiss v. Marchus, 51 Cal. App. 3d 590, 600 (1975) (constructive trust may be imposed in case of fraud, mishandling, or almost any case of wrongful acquisition or detention of property to which another is entitled).  When personal property is in dispute, the legislature has allowed plaintiffs to invoke the remedy of constructive trust.  Cal Civ Code §§ 2223, 2224.  To create a constructive or involuntary trust only three conditions are necessary: existence of a res, i.e. property or some interest in property, plaintiff's right to that res and defendant's gain of the res by fraud, accident, mistake, undue influence, violation of the trust or other wrongful act. Kraus v. Willow Park Public Golf Course, 140 Cal. Rptr. 744, 73 Cal. App. 3d 354 (1977); see Cramer v. Biddison, 65 Cal. Rptr. 624, 257 Cal. App. 2d 720 (1968); Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1067 (1998) (constructive trust); Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445, 454–55 (1997) (equitable lien is proper if unjust enrichment and detrimental reliance are implicated).

Mattel needs the documents sought by the subpoenas to prove the amount the defendants must disgorge.  Housing Rights Center v. Sterling, 2005 WL 3320739, *3 (C.D. Cal. 2005) (finding financial information relevant to

1  disgorgement of profits claim).  Money that properly belonged to Mattel was

2  transferred from MGA defendants to or from Bryant.  Mattel should be able to

3  understand how that money was used because Bryant because he has no right to

4  whatever additional gains were realized with Mattel's money.  <u>See</u> <u>id</u>.  Indeed, the

5  right to those additional gains vests solely in Mattel.

6        Thus far, Bryant has produced few if any documents that Mattel has

7  been able to identify from which Mattel may ascertain any gain realized from

8  Bryan'ts use of funds that rightfully belong to Mattel.  Consequently, Bryant's

9  banking records from the Bank People's Bank of the Ozarks are directly relevant.

10      **2.**    <u>**Mattel is Entitled to Documents Showing or Related to**</u>

11            <u>**Bryant's Net Worth**</u>

12        The Discovery Master ruled that as part of the punitive damages

13  remedy, Mattel is entitled to documents reflecting defendants' net worth.  <u>Southern</u>

14  <u>California Housing Rights Center v. Krug</u>, 2006 WL 4122148, *4 (C.D. Cal. 2006)

15  ("When a punitive damages claim has been asserted, a majority of federal courts

16  permit pretrial discovery of financial information about defendants without

17  requiring the plaintiff to establish a prima facie case on the issue of punitive

18  damages.").  Whether or not assets or money were transferred during the period of

19  wrongdoing is relevant to punitive damages, and Mattel is therefore entitled to

20  documents reflecting any such transfer.

21        Bryant has agreed that documents relevant to his net worth are

22  necessary for Mattel's experts to determine the damages that accrued to Mattel as a

23  result of their infringement of Mattel's copyrights, and for punitive damages and to

24  defend against MGA's as yet unspecified damages.  Both the Discovery Master and

25  Judge Larson have previously ruled that Mattel is entitled to such evidence.

26        Here, Bryant has freed Mattel to go to third parties because of his

27  repeated failure and refusal to provide his financial records.

28

**3.     The Documents Sought Are Relevant to Mattel's Commercial Bribery Claims and Evidence of Bias**

As defendants recognizes, the banking records sought by Mattel are also relevant because they bear directly on Mattel's commercial bribery claim. These documents may also lead to evidence of bias and influence on potential witnesses.  Such concerns are not theoretical, as evidence demonstrates that Bryant received payments from MGA while he was a Mattel employee.  Mattel is entitled to seek documents that would uncover additional information about Bryant's involvement in MGA's attempts to bribe or Bryant's attempts to improperly pay *other Mattel employees or vendors*.

**4.     Bryant's Claim That The Documents Have Been Produced Or Are Otherwise Duplicative Is Baseless**

"[N]othing in the Federal Rules of Civil Procedure requires a litigant to rely solely on discovery obtained from an adversary instead of utilizing subpoenas." Id. at *1.  State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840, at *1 (E.D.N.Y. 2007); In re Bergeson, 112 F.R.D. 692, 695 (D. Mont. 1986) (conclusory assertions that documents sought are available from others more economically "does not constitute a showing of unreasonableness or oppressiveness."); see also Plant Genetic Systems, N.V. v. Northrup King Co., Inc., 6 F. Supp. 2d 859, 861–862 (E.D. Mo. 1998) (third party subpoena proper where information sought pertained to a central issue in the underlying claim, it was not burdensome in light of plaintiff's diligent efforts to obtain the information from defendant, and the nonparty had signed protective order prohibiting disclosed information from being seen by plaintiffs counsel or nonparty's competitors).

Here, Bryant has failed to produce his financial records for more than a year notwithstanding the Court's January 25, 2007 Order.  In that Order, the Discovery Master granted Mattels' motion to compel Bryant's financial records such as:

REQUEST FOR PRODUCTION NO. 28:

> All DOCUMENTS that REFER OR RELATE TO any payment of money or consideration made to YOU or for YOUR benefit by any PERSON other than Mattel, Inc., including without limitation by MGA, for work, activities or services that YOU performed during the time period(s) that YOU were employed by Mattel, Inc.

REQUEST FOR PRODUCTION NO. 29:

> All DOCUMENTS that REFER OR RELATE TO any payment of money or consideration made to YOU or for YOUR benefit by any PERSON other than Mattel, Inc., including without limitation by MGA, for DESIGNS that YOU produced, created, authored, conceived of or reduced to practice, whether alone or jointly with others, during the time period(s) that YOU were employed by Mattel, Inc.

REQUEST FOR PRODUCTION NO. 32:

> All DOCUMENTS that REFER OR RELATE TO any payment of money or consideration made to YOU or for YOUR benefit by MGA for services or work that YOU performed for or on behalf of MGA after October 20, 2000.

Bryant cannot refuse to produce such relevant and discoverable documents for months, then object when Mattel seeks such documents from third parties. As the Phase 1 discovery cut–off approached, Bryant left Mattel no choice but to seek documents essential to its claims and defenses from third parties, including the Peoples' Bank of the Ozarks.

### 5.   Mattel is Entitled to the Requested Documents Because of Legitimate Concerns of Spoliation and Document Tampering

Mattel cannot rely on Bryant to actually produce all responsive documents in his possession, custody and control, or that he will produce them in their original condition. As discussed above, Veronica Marlow, a third–party witness who long worked directly with Bryant and MGA, testified that she knew of at least three Mattel employees who *for years* worked on Bratz *while they were*

1  *employed by Mattel.*[20]  Neither MGA nor Bryant had disclosed this information,

2  despite repeated Court Orders and despite the fact that at least one of these

3  individuals was a co–worker of Bryant's at Mattel.  To the contrary, both Bryant and

4  MGA gave flat denials under oath that there was any other Mattel employees

5  knowingly involved.[21]  Yet, by defendants' reasoning here, the Court and Mattel

6  should have been denied Ms. Marlow's plainly relevant evidence because it

7  purportedly duplicated discovery requested of defendants.  In fact, defendants made

8  that very argument to Judge Larson in resisting producing Ms. Marlow for

9  deposition in the first place, to no avail.

10            Furthermore, Mattel must guard against the possibility of further

11  spoliation of evidence and/or document tampering.  Unfortunately, these concerns

12  are not merely speculative or theoretical.  It has already occurred.  For example,

13  Bryant was ordered—after initial delay and refusal—to produce a computer for

14  inspection in this matter.  Mattel learned that a software program called "Evidence

15  Eliminator" had been installed and run on that hard drive.[22]  The Court responded to

16  the concern of spoliation, and specifically ordered Bryant to file affidavit attesting to

17  his preservation of all relevant evidence.

18       **B.    <u>Bryant Has Not Shown Undue Burden</u>**

19            People's Bank of the Ozarks has made no burden objection.  It stands

20  ready to produce.  But, Bryant apparently claims that the requests are so

21  burdensome to justify quashing the subpoena.  A party claiming that production of

22  requested documents is unduly burdensome bears the burden of proving up his

23  objection.  <u>Northrop Corp. v. McDonnell Douglas Corp.</u>, 751 F.2d 395, 403 (D.C.

24

25        [20]   Exh. N (Grant Dec. MGA) at 288:8–289:21, 306:8–25; 307:8–308:1; 363:15–21[Deposition Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007].

26        [21]   Exh. O (Grant Dec. MGA) at 286:25–287:5 [Dep. Tr. of Carter Bryant, Vol. 2

27  ("Bryant Tr.")]; Exh. O at 301:2–17 [Dep. Tr. of Lisa Tonnu, Vol. 2 ("Tonnu Tr.)]; Exh. X at 64–70 [MGA's Supp. Responses to Mattel's Revised Third Set of Interrogatories].

28

-12-

MATTEL INC.'S OPPOSITION TO BRYANT'S MOTION TO QUASH

1   Cir. 1984) (reversing district court's decision quashing subpoena).  The party cannot

2   rest on conclusory assertions.  <u>Goodman v. U.S.</u>, 369 F.2d 166, 169 (9th Cir. 1966)

3   (reversing the quashing of a subpoena because of lack of specific evidence of

4   burden).  "The party must provide specific and compelling proof that the burden is

5   undue."  <u>JZ Buckingham Investments, LLC v. United States</u>, 78 Fed. Cl. 15, 25

6   (Fed. Cl. Ct. 2007) (denying motion to quash).

7           Here, Bryant offers no evidence—such as a declaration or testimony—

8   regarding the time, cost, or burden involved in responding to Mattel's subpoena.

9   Nor could he.  "The burden of showing that a subpoena is unreasonable and

10  oppressive *is upon the party to whom it is directed*."  <u>Goodman v. U.S.</u>, 369 F.2d

11  166, 169 (9th Cir. 1966) (emphasis added).   The People's Bank of the Ozarks,

12  however, has not asserted any objections to the subpoena.  To the contrary, the Bank

13  simply advised Mattel of its intention to comply with the subpoena without

14  objection once the Court rules on the motion to quash.[23]

15          **C.      <u>The Subpoenas Are Not Overbroad</u>**

16          Bryant's assertion that the Mattel's requests are abusively drawn or

17  unduly overbroad is also baseless given that Mattel's document requests are directed

18  to a financial institution.  Financial institutions generate and retain precisely the

19  types of documents responsive to Mattel's requests.

20          Bryant mistakenly relies on <u>Ocean Atlantic Woodland Corp. v. DRH</u>

21  <u>Cambridge Homes, Inc.</u>, 292 F. Supp. 2d 923 (N.D. Ill. 2003), to argue that broad

22  financial discovery from non-parties is necessarily unduly burdensome.  The <u>Ocean</u>

23  <u>Atlantic</u> court, however, did not hold that such discovery is always unwarranted;

24  rather, it held that such discovery is permissible provided it is tied to the claims and

25  defenses at issue.  Here, unlike in <u>Ocean Atlantic</u>, the Discovery Master expressly

26

27  _____
    [22]   Exh. Q (Grant Dec. MGA), at 285:15–287:6 [12/28/07 Deposition Transcript
28  of Richard Irmen].
    [23]   Grant Dec. ¶10 and Exh. J.

-13-

MATTEL INC.'S OPPOSITION TO BRYANT'S MOTION TO QUASH

1  held that Bryant's financial records—including banking records—are relevant to

2  Mattel's damages claim.[24]

3  **II.      BRYANT WAS NOT PREJUDICED BY LACK  OF "PRIOR NOTICE"**

4          Bryant argues that the subpoena is invalid and must be quashed because

5  Mattel did not provide him with "prior notice" before serving it on the Bank.[25]

6  Bryant is wrong.

7          As a preliminary matter, Bryant's objection is disingenuous in light of

8  his conduct.  Indeed, Bryant has repeatedly subpoenaed parties without providing

9  prior notice to Mattel.[26]  He provided no notice, much less prior notice, for six

10  subpoenas he issued to:  Anna Rhee, Verizon California, SBC, Pacific Bell

11  Telephone Co., Steven Linker, and Ogilvy and Mather Worldwide [27]  In addition, he

12  has repeatedly sought to obstruct and thwart Mattel's efforts to obtain indisputably

13  relevant and discoverable documents.  After more than two years of refusing to

14  produce financial records that the Court ordered him to produce, Mattel had no

15  choice but to obtain such records from third parties before Phase 1 discovery cut-off.

16  Bryant's baseless Motion to Quash is yet another attempt to thwart Mattel's right to

17  secure documents directly relevant to its claims and defenses.

18          Moreover,  Bryant was not prejudiced by any delay in receiving notice,

19  since he had sufficient opportunity to object to the subpoena and move to quash.

20  Absent such harm, there is insufficient grounds to quash the subpoena.  "The

21  purpose of such notice is to afford other parties an opportunity to object to the

22  production or inspection, and to serve a demand for additional documents or things."

23  Advisory Committee Note to the 1991 amendments to Rule 45; see also Blaser v.

24  Mt. Carmel Regional Med. Ctr., Inc., slip copy, 2007 WL 852641, at *2-*3 (D. Kan.

25  2007); Zinter Handling, Inc. v. G.E., 2006 WL 3359317, at *2 (N.D.N.Y. 2006).

26  _____

27  [24]  Exh. P at 15–16. [January 25, 2007 Order]
   [25]  Motion at 5.

28  [26]  Grant Decl.
   [27]  Id. at ¶ 17.

-14-

Thus, the majority of court's hold that the "procedural defect" of untimely notice is "an insufficient basis by which to quash subpoenas" where the opposing party suffered no prejudice thereby.  Tubor v. Clift, 2007 WL  214260, at *6 ( W.D. Wash. 2007); see also  Zinter, 2006 WL 3359317, at *2; Doe v. United States, slip copy, 2007 WL 1521550 (D.C. Pa. 2007);  Judson v. Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 476 F. Supp. 2d 913, 929 (N.D. Ill. 2007) (citing cases).

Here, Bryant not only had an opportunity to do so, but he did in fact, serve objections to the subpoena, moved to quash, and improperly stopped the production of any responsive documents by the Bank.  He thus suffered **no prejudice whatsoeve**r.  In such circumstances, there is no basis on which to quash the subpoena.  See, e.g., id.; Biocare Med. Techs., Inc. v. Khostowshahi, 181 F.R.D. 660, 667-68 (D. Kan. 1998) (refusing to quash subpoena for violation of Rule 45's notice requirement where aggrieved party failed to show prejudice from the violation).[28]  Indeed, imposing a draconian sanction such as that urged by Bryant where he has not been prejudiced or harmed would be unfair to Mattel, and would deprive Mattel of documents that are essential to its claims and defenses in this case, and thereby prejudice Mattel's ability to prepare for trial.

## III.   THE REMAINING OBJECTIONS ARE BOILERPLATE AND SHOULD BE OVERRULED

### A.   The Boilerplate Objections Are Improper

Bryant asserts a host of boilerplate objections in an effort to provide a framework for his obstructionist efforts.  Bryant claims that Mattel's document requests are "wildly" overbroad, harassing, duplicative and irrelevant.[29]  Bryant's objections in this regard are the hallmark of boilerplate objections that are improper

---

[28]   The cases on which Bryant relies do not require a contrary result.  In each, the court so ruled without explanation or the party issuing the subpoena had demonstrated further egregious conduct in discovery.  See Mot. 5.

[29]   Mot. at 7-8.

MATTEL INC.'S OPPOSITION TO BRYANT'S MOTION TO QUASH

1  under the Federal Rules of Civil Procedure.  <u>A. Farber and Partners, Inc. v. Garber</u>,

2  234 F.R.D. 186, 188 (C.D. Cal. 2006) (overruling defendant's boilerplate objections

3  as improper and ordering production of documents).  <u>See</u> <u>Panola Land Buyers</u>

4  <u>Ass'n v. Shuman</u>, 762 F.2d 1550, 1559 (11th Cir. 1985) (holding that court did not

5  have discretion to limit discovery on basis of boilerplate objections).

6  **B.**    **<u>Bryant's Concern Over Confidentiality Is Frivolous</u>**

7  Bryant objects that the subpoena seeks documents that invade his right

8  to privacy.[30]  Bryant acknowledges, however, to overcome his privacy objection, the

9  party seeking to discover personal financial information must establish that it is

10  "directly relevant" to a claim at issue and "essential to a fair resolution of the

11  lawsuit."[31]  That is precisely what the Court ruled in its January 25, 2007 Order

12  compelling Bryant to produce his financial records.[32]  The Court rejected Bryant's

13  privacy objection, ruling:  "The protective order filed on January 4, 2005, is

14  sufficient to address any confidentiality concerns by Bryant."[33]

15  **<u>Conclusion</u>**

16  For the reasons set forth above, Mattel respectfully requests that

17  Bryant's Motion to Quash or in the alternative, for a Protective Order, be denied in

18  its entirety.

19

20  DATED:  February 7, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

21

22          By /s/ _____

23                  Jon D. Corey
                    Attorney for Mattel, Inc.

24

25

26

---

[30]  Mot. at 5-6.
[31]  Mot. at 8 (quoting <u>Davis v. Superior Court</u>, 7 Cal. App. 4th 1008, 1010 (1992)).
[32]  Exh. P.
[33]  <u>Id.</u>

-16-

MATTEL INC.'S OPPOSITION TO BRYANT'S MOTION TO QUASH