1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
6   Facsimile:   (213) 443-3100

7   Attorneys for Plaintiff Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11  | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
12  |         Plaintiff,            | Consolidated with |
13  |                               | Case No. CV 04-09059 |
14  |            vs.                | Case No. CV 05-02727 |
15  |                               | **DISCOVERY MATTER** |
16  | MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]** |
17  |         Defendant.            | |
18  | ——————————————————————        | NOTICE OF ERRATA REGARDING EXHIBIT P TO THE DECLARATION |
19  | AND CONSOLIDATED ACTIONS      | OF MELISSA GRANT IN SUPPORT OF MATTEL, INC.'S OPPOSITION |
20  |                               | TO CARTER BRYANT'S MOTION TO QUASH MATTEL, INC.'S |
21  |                               | SUBPOENA ISSUED TO PEOPLE'S BANK OF THE OZARKS OR, IN THE |
22  |                               | ALTERNATIVE, FOR A PROTECTIVE ORDER |
23  |                               | Discovery Cut-off:  None Set |
24  |                               | Pre-trial Conference:  None Set |
25  |                               | Trial Date:  None Set |

26

27

28

07209/2038790.1

                                        NOTICE OF ERRATA

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2           PLEASE TAKE NOTICE that Mattel, Inc. hereby corrects the

3   Declaration of Melissa Grant ("Grant Declaration Bryant") in support of Plaintiff,

4   Mattel, Inc.'s Opposition to Carter Bryant's Motion to Quash Mattel, Inc.'s Subpoena

5   Issued to People's Bank of the Ozarks or, in the Alternative, for a Protective Order,

6   dated February 7, 2008.  Exhibit P was inadvertently omitted from the Grant

7   Declaration Bryant.  Exhibit P is attached hereto.

8

9   DATED:  February 8, 2008          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
10

11                                    By_____
12                                      Melissa Grant
                                        Attorneys for Plaintiff
13                                      Mattel, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit P**

CONFORMED COPY

FILED

2007 JAN 26  PM 12: 25

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, CA  94111
    415-774-2611
4   415-982-5287 (fax)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>     Plaintiff,<br><br>    v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>    Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I. INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1] Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT _____P_____

PAGE _____206_____

1-26

CALENDARED

EXHIBIT _____ $\mathcal{P}$ _____

PAGE _____ 207 _____

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel Production of Documents is GRANTED.

## II. BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of Bratz dolls now rival Mattel's Barbie doll.

A. Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed suit against its former employee Bryant in state court asserting claims for breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel employed Bryant as a product designer from September 1995 through April 1998, and from January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee Confidential Information and Inventions Agreement which required him not to engage in any employment or business other than for Mattel, or invest or assist in any manner any business competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that he had not worked for any of Mattel's competitors in the prior twelve months and had not engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT _____ P _____

PAGE _____ 208 _____

provide product design services on a "top priority" basis.[2]  The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA.  Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel.  In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction).  Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA.  The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls.  In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls.  In August of 2004, the district court remanded the action.

B.  Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement.  Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

---

[2]  Bryant has already produced his agreement with MGA.  Therefore, the existence of the agreement does not appear to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT _____ P _____

PAGE _____ 209 _____

### C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

### D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

### E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

### F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT _____*P*_____

PAGE _____*210*_____

### G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

### H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

### I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT _____ P _____

PAGE _____ 211 _____

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to compel. The parties informed the court that they would submit a stipulation and order. See Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel Production of Documents, counsel will be submitting a stipulation and order which will be dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to memorialize the parties' meet and confer session, but were unable to reach final agreement because Bryant insisted upon including the following sentence in the stipulation: "The stipulation resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23. From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel waive its right to all further discovery in connection with its requests. Mattel proposed the following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in this Stipulation shall preclude or limit Mattel from seeking further discovery on any matter, including as to matter on which the parties could not reach complete agreement, or preclude or limit any right of Bryant to object or resist to such discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was unacceptable to Bryant. At the direction of the Discovery Master, the parties met and conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

EXHIBIT _____ P _____

PAGE _____ 2/2 _____

1,600 pages of documents to date.  Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3]  Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

> J.   Mattel's Motion to Compel Production of Documents

Mattel's motion has three parts.  First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents:  (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel.  Mattel's Motion at 6.  Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations.  According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3]   According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear.  Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed.  Mattel again obtained a court order compelling the deposition and sanctions.  To date, only Bryant and Larian have been deposed.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT _____ P
PAGE _____ 2/3

his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

## K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel. He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004. Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of 2004, he produced the following categories of documents: documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4]   There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center. MGA denies the accusation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT _____ P _____

PAGE _____ 2/4 _____

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT _____ _ρ___

PAGE _____ 2/5

requests and that the stipulation controlled to the extent they were inconsistent. Bryant's Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process and asks the Discovery Master to order the disposition of this motion in a manner consistent with the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks the Discovery Master to order Mattel not to revisit any of the requests that were the subject of Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone records and financial information because these records are protected by privacy rights. Lastly, Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit was filed.

### III.  DISCUSSION

#### A.  The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

The parties' extensive submissions make it clear that the parties did not resolve the issues raised in the instant motion. The parties met and conferred extensively and in good faith, reaching compromises on virtually all categories of documents in dispute. Despite their efforts, however, the parties were ultimately unable to execute a binding stipulation because they were unable to agree on any provision to govern Mattel's future right to pursue additional discovery from Bryant. It is clear that the parties deemed it necessary to include such a provision in the draft stipulation in order to protect their respective positions. Because the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

EXHIBIT _____ P _____

PAGE _____ 216 _____

1  Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by

2  the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

3      Furthermore, because the parties met and conferred in good faith and because they had a

4  legitimate dispute over language governing Mattel's future right to pursue additional discovery

5

6  from Bryant, the Discovery Master denies Mattel's request for sanctions.

7      B. Rule 26 of the Federal Rules of Civil Procedure

8      Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

9  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

10

11  party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

12  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

13  Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

14  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

15

16  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

17  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

18  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

19

20  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

21  the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

22  26(b)(2).

23      C. Mattel's Requests for Production

24      Request Nos. 2, 13, 48:  Documents Relating to Bryant's Agreements with MGA

25      Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related

26

27  agreements. Bryant is withholding responsive documents, including (a) documents relating to his

28  Bratz agreements with MGA other than final signed agreements, including communications

29  exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                            11

EXHIBIT _____ P _____

PAGE _____ 217 _____

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

<u>Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55: Documents Relating to Bratz's Development and Other Projects that Bryant Worked on for MGA</u>

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

EXHIBIT _____ _P_

PAGE _____ _218_

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46: Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information. Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns. Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

EXHIBIT _____ $\rho$

PAGE _____ 219

when the payments were actually made. Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement. Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works. Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages. 17 U.S.C. §504(b). The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market. For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation. Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel. Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant. Among other things, the protective order provides protection for confidential trade secret information. It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only." The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46. Bryant,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT _____ P _____

PAGE _____ 220 _____

1  however, is not required to produce tax returns, provided that he otherwise fully complies with

2  these requests as ordered.

3      Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

4      Mattel seeks production of Bratz-related communications and communications with

5
6  MGA. More specifically, Mattel seeks production of four categories of documents Bryant has

7  refused to produce: (1) communications between Bryant and MGA or third parties that explicitly

8  relate to designs Bryant created while employed by Mattel; (2) communications between Bryant

9  and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating

10 to Bryant's Mattel employment or work Bryant performed for Mattel, except those

11
12 communications "created" prior to the close of Bryant's Mattel employment; and (4)

13 communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant

14 contends that the discovery requests for communications between Bryant and MGA are

15
16 overbroad. Bryant asserts that there are many former Mattel employees and friends of his who

17 have privacy rights that would be impinged upon if he were to disclose his communications.

18 Bryant also asserts that he has his own confidentiality interest regarding any information that he

19
20 shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they

21 would require him to reveal the identity of current Mattel employees seeking employment with

22 MGA or Bryant.

23      The Discovery Master finds that Mattel's requests for all communications between Bryant

24 and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what

25 Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient

26
27 to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential"

28 private information about current or former employees, contractors or vendors (including

29 employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

EXHIBIT _____ *P*_____

PAGE _____ *221*_____

privileged documents responsive to Request Nos. 20, 23, 27, and 28.  However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA.  Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

<u>Request Nos. 49, 51:  Mattel-Related Documents</u>

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

<u>Request No. 9:  Documents re Registrations and Applications for Registrations</u>

Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration.  Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper.  Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1.  Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

EXHIBIT _____*P*_____

PAGE _____*222*_____

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2.  Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3.  Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4.  Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5.  Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6.  Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7.  Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

_____
HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT ___P___

PAGE ___223___

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjaklan Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjakjian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

EXHIBIT _____ P _____

PAGE _____ 224 _____