QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER**<br><br>**[To Be Heard By Hon. Edward Infante (Ret.) Pursuant To Order Of December 6, 2006]** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | **MATTEL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MGA'S MOTION TO QUASH SUBPOENA TO BANK OF AMERICA OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER**<br><br>[Mattel's Response to MGA's Separate Statement and Declaration of Melissa Grant filed concurrently herewith]<br><br>Hearing Date:    TBA<br>Time:             TBA<br>Place:            TBA<br><br>**Phase 1:**<br>Discovery Cut-off:        January 28, 2008<br>Pre-trial Conference:     May 5, 2008<br>Trial Date:               May 27, 2008 |

1

# **TABLE OF CONTENTS**

2

**Page**

3

4   PRELIMINARY STATEMENT ............................................................................ 1

5   STATEMENT OF FACTS .................................................................................... 4

6   ARGUMENT ........................................................................................................ 6

7   I.   MGA'S MOTION TO QUASH SHOULD BE DENIED BECAUSE
        THE DOCUMENTS SOUGHT MAY BE PRODUCED WITH
8       MINIMAL BURDEN .................................................................................. 6

9        A.   The Documents Sought Are Relevant to the Claims And
              Defenses At Issue .............................................................................. 6

10
              1.   The Documents Are Relevant to Disgorgement and
11                 Constructive Trust Remedies, as Well as Punitive
                   Damages ................................................................................ 7

12
              2.   Mattel is Entitled to Documents Showing or Related to
13                 Larian's Net Worth ............................................................ 10

14            3.   The Documents Sought Are Relevant to Mattel's
                   Commercial Bribery Claims and Evidence of Bias ............ 10

15
              4.   MGA Has Not Shown That The Documents Have Been
16                 Produced Or Are Otherwise Duplicative ........................... 12

17                 (a)   That Documents "May" Be Available From Another
                         Source Is Not Sufficient ........................................... 12
18
              5.   Neither Larian Nor MGA Have Produced the Documents
19                 Sought from Bank of America .............................................. 13

20            6.   Mattel is Entitled to the Requested Documents Because of
                   Legitimate Concerns of Spoliation and Document
21                 Tampering ........................................................................... 15

22       B.   MGA Has Not Shown Undue Burden ................................................ 17

23       C.   The Subpoenas Are Not Overbroad .................................................. 18

24   II.  MGA WAS NOT PREJUDICED BY LACK OF "PRIOR NOTICE" ........... 20

25   III. THE REMAINING OBJECTIONS ARE BOILERPLATE AND
        SHOULD BE OVERRULED .................................................................... 21

26       A.   The Boilerplate Objections Are Improper ........................................ 21

27       B.   The Objection Based Upon the Accountant-Client Privilege Is
28            Unfounded ......................................................................................... 22

1

C.    Concerns Over Confidentiality Are Alleviated by the Protective Order ..................................................................................... 22

2

CONCLUSION.......................................................................................... 24

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

<u>A. Farber and Partners, Inc. v. Garber</u>,
  234 F.R.D. 186 (C.D. Cal. 2006) ................................................................... 22, 23

<u>In re Bergeson</u>,
  112 F.R.D. 692 (D. Mont. 1986) .......................................................................... 14

<u>Biocare Med. Techs., Inc. v. Khostowshahi</u>,
  181 F.R.D. 660 (D. Kan. 1998) ............................................................................ 21

<u>Blaser v. Mt. Carmel Regional Med. Ctr, Inc.</u>
  2007 WL 852641 (D. Kan. 2007) ........................................................................ 21

<u>Burlesci v. Petersen</u>,
  68 Cal. App. 4th 1062 (1998) ................................................................................. 9

<u>Clark v. Bunker</u>,
  453 F.2d 1006 (9th Cir. 1972) ............................................................................... 8

<u>Couch v. United States</u>,
  409 U.S. 322 (1972) ............................................................................................. 22

<u>Covey Oil Co. v. Continental Oil Co.</u>,
  340 F.2d 993 (10th Cir. 1965) ............................................................................. 14

<u>Cramer v. Biddison</u>,
  65 Cal. Rptr. 624, 257 Cal. App. 2d 720 (1968) .................................................... 9

<u>Doe v. United States</u>,
  2007 WL 1521550 (D.C. Pa. 2007) ..................................................................... 21

<u>E. Bassett Co. v. Revlon, Inc.</u>,
  435 F.2d 656 (2d Cir. 1970) .................................................................................. 8

<u>Farmers Ins. Exchange v. Zerin</u>,
  53 Cal. App. 4th 445 (1997) ................................................................................... 9

<u>Gohler v. Wood</u>,
  162 F.R.D. 691 (D. Utah 1995) ........................................................................... 23

<u>Goodman v. U.S.</u>,
  369 F.2d 166 (9th Cir. 1966) ............................................................................... 19

<u>Green v. Baca</u>,
  226 F.R.D. 624 (C.D. Cal. 2005) ........................................................................... 6

<u>Heat and Control, Inc. v. Hester Industries, Inc.</u>,
  785 F.2d 1017 (Fed. Cir. 1986) ............................................................................. 6

In re Heritage Bond Litigation,
   2004 WL. 1970058 (C.D. Cal. 2004) .................................................................22

Hilao v. Estate of Marcos,
   103 F.3d 767 (9th Cir. 1996) ............................................................................10

Housing Rights Center v. Sterling,
   2005 WL. 3320739 (C.D. Cal. 2005) ..................................................................9

JZ Buckingham Investments, LLC v. United States,
   78 Fed. Cl. 15 (Fed. Cl. Ct. 2007) ....................................................................19

Judson v. Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec,
   476 F. Supp. 2d 913 (N.D. Ill. 2007) ................................................................21

Korea Supply Co. v. Lockheed Martin Corp.,
   29 Cal. 4th 1134 (2003) ......................................................................................8

Kraus v. Trinity Management Servs., Inc.,
   23 Cal. 4th 116 (2000) ........................................................................................8

Kraus v. Willow Park Public Golf Course,
   73 Cal. App. 3d 354 (1977) .................................................................................9

Northrop Corp. v. McDonnell Douglas Corp.,
   751 F.2d 395 (D.C. Cir. 1984) ..........................................................................18

Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.,
   292 F. Supp. 2d 923 (N.D. Ill. 2003) ................................................................19

Panola Land Buyers Ass'n v. Shuman,
   762 F.2d 1550 (11th Cir. 1985) ........................................................................22

Plant Genetic Systems, N.V. v. Northrup King Co., Inc.,
   6 F. Supp. 2d 859 (E.D. Mo. 1998) .............................................................14, 23

Southern California Housing Rights Center v. Krug,
   2006 WL. 4122148 (C.D. Cal. 2006) ..............................................................9, 10

State Farm Mutual Auto Ins. Co. v. Accurate Medical, P.C,
   2007 WL 2993840 (E.D.N.Y. Oct. 10, 2007) .................................................13, 14

Taylor v. Polackwich,
   145 Cal. App. 3d 1014 (1983) .............................................................................8

Tubor v. Clift,
   2007 WL. 214260 ( W.D. Wash. 2007) .............................................................21

U.S. v. American Optical Co.,
   39 F.R.D. 580 (N.D. Cal. 1966) ..........................................................................6

United States v. Abel,
   469 U.S. 45 (1984) ............................................................................................12

Weiss v. Marchus,
   51 Cal. App. 3d 590 (1975) .................................................................................8

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

Yund v. Covington Foods, Inc.,
    193 F.R.D. 582 (S.D. Ind. 2000) ........................................................... 23

Zinter Handling, Inc. v. G.E.,
    2006 WL. 3359317 (N.D.N.Y. 2006)................................................... 21

### Statutes

17 U.S.C. § 504(b) ........................................................................................ 8

Cal. Civ. Code § 2223.................................................................................... 8

Cal Civ. Code § 2224.................................................................................... 8

Fed. R. Civ. P. 30(b)(6) .............................................................................. 10

Fed. R. Civ. P. 45................................................................................ 6, 20, 21

### Other Authorities

4 Callmann, Unfair Competition and Monopolies § 14.45 (4th ed.) ........................ 8

Wright & Miller,
    Federal Practice & Procedure: Federal Rules of Evidence § 6095 ..................... 12

## **Preliminary Statement**

MGA's motion to quash the Bank of America subpoena is nothing more than another obstructionist tactic to block Mattel's efforts to obtain relevant financial records that Isaac Larian has failed to produce—notwithstanding the Court's Order to do so.

For months, Larian refused to produce indisputably discoverable documents in response to Mattel's requests for production of documents. In October 2007, Mattel moved to compel production. By Order dated December 31, 2007, the Discovery Master granted Mattel's motion and ordered Larian to produce certain financial records—including his personal banking records—from January 1, 1999 to the present. The records to be produced were to be sufficient to establish Larian's income, the sources of his income, his net worth, and all payments from MGA entities to Larian and from Larian to other defendants or Mattel employees. The Discovery Master found such records to be relevant to the claims and defenses at issue.

By mid-January 2008, however, Larian had not yet produced those records. On January 15, 2008—ten days before the Phase 1 discovery cut-off, Mattel was left with no choice but to seek Larian's banking records by subpoena from the Bank of America. Bank of America has agreed to comply with the subpoena without objection. But no documents have been produced by the Bank as a result of MGA's intervention and Motion to Quash.

MGA makes that the requests in the subpoena are duplicative of requests served on them, are overly broad, and seek documents that they have purportedly already produced. With Phase 1 discovery closed, MGA and Larian's history of obstruction, and Mattel's legitimate concerns of spoliation and evidence tampering, Mattel should not be forced to assume MGA and Larian's good-faith production of indisputably relevant and discoverable financial records. Larian and MGA have not identified where in the production such documents exist, if at all.

The prior inconsistencies in what MGA claims to have produced and what it actually has produced is epitomized by its assertion in its Separate Statement in support of its Motion that Larian recently produced "13,000 pages of documents showing his net worth, his income from multiple sources, as well as information regarding his banks and bank accounts,"[1] and the statement in Larian's counsel's declaration that "in mid–January Mr. Larian produced to Mattel nearly 50,000 pages" of such documents.[2]  Because MGA document productions do **not** distinguish "Larian" documents from MGA documents, it is difficult to determine if any of thousands of pages of documents MGA defendants have produced in the past three weeks are in fact "Larian" documents.

To date, Mattel has been able to identify only a small fraction of the production as even arguably Larian "financial" records.  <u>None</u> of those documents include (a) monthly statements of Larian's personal Bank of America account or accounts, (b) Bank of America cancelled checks or wire transfer receipts to or from Larian and any MGA entity—or any other defendant or former Mattel employee, or (c) countless other documents sought by Mattel's subpoena to Bank of America. The list of documents Larian claims to have produced is notable for its lack of specificity (or bates-numbers).  Indeed, conspicuously missing from that list—and Larian's production to date—are documents from 1999 to the present that the Discovery Master ordered him to produce, including:

- Documents sufficient to determine Larian's net worth since 1999.
- Larian's personal banking records.

---

[1]  MGA's Separate Statement in support of MGA's Motion to Quash Subpoena to Bank of America or, in the Alternative, for Protective Order Subpoena, at 6:3–6.
[2]  <u>See</u> Declaration of Timothy A. Miller in support of MGA Defendants' Motion to Quash Subpoena to Bank of America or, in the Alternative, for Protective Order, at ¶ 10.

    • Documents related to payments to third–parties or other defendants by Larian, or the Larian trusts (such as to Bryant and other Mattel employees and vendors).

    • Documents related to the Larian trusts, including any documents showing Isaac Larian's interest in, payments received, or transfers to those trusts.

    The crucial importance of third-party discovery in this case was underscored again in a key deposition taken only four weeks ago.  At her deposition on December 28, 2007, Veronica Marlow, a third-party witness who long worked directly with Bryant and MGA, testified that she knew of at least three Mattel employees who *for years* worked on Bratz ***while they were employed by Mattel***.[3]  This was a shocking revelation.  Neither MGA nor Bryant had disclosed this information, despite repeated Court Orders and despite the fact that at least one of these individuals was a co-worker of Bryant's at Mattel.  To the contrary, both Bryant and MGA gave flat denials under oath that there was any other Mattel employees knowingly involved.[4]  Yet, by MGA's reasoning here, the Court should have denied Mattel Ms. Marlow's plainly relevant evidence because it purportedly duplicated discovery requested of defendants.  In fact, defendants made that very argument to Judge Larson in resisting producing Ms. Marlow for deposition in the first place, to no avail.

    This Court should not countenance any further attempt by MGA and Larian to foreclose Mattel from obtaining indisputably relevant information from any third party—including the Bank of America.  Accordingly, MGA's  Motion should be denied, and the documents sought by Mattel from the Bank of America should be compelled.

---

[3]   Exh. N at 288:8-289:21, 306:8-25; 307:8-308:1; 363:15-21[Deposition Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007] to the Declaration of Melissa Grant ("Grant Dec.").  All exhibits are to the Grant Dec. unless otherwise stated.

[4]   Exh. O at 286:25-287:5 [Dep. Tr. of Carter Bryant, Vol. 2 ("Bryant Tr.")]; Exh. M at 301:2-17 [Dep. Tr. of Lisa Tonnu, Vol. 2 ("Tonnu Tr.")]; Exh. P at 64-70 [MGA's Supp. Responses to Mattel's Revised Third Set of Interrogatories].

1

2                              **Statement of Facts**

3        **Mattel Subpoenaed Documents Related to Mattel's Claims and**

4  **Defenses From the Bank of America, Larian's Personal Bank.**  On January 18,

5  2008, Mattel served a subpoena *duces tecum* on Isaac Larian's personal bank, Bank

6  of America.[5]  The return date for responsive documents was January 28, 2008—the

7  Phase 1 discovery cut-off.  The subpoena contained four requests:

8        1.  All DOCUMENTS REFERRING OR RELATING TO ISAAC
         LARIAN from January 1, 1999 to the present, inclusive.
9
         2.  All DOCUMENTS REFERRING OR RELATING TO any
10       ACCOUNTS maintained by YOU that are in the name of, for the
         benefit of or concern ISAAC LARIAN, including but not limited to
11       statements, monthly statements, annual statements, daily transaction
         history reports, monthly transaction history reports, deposit reports,
12       deposit slips, canceled checks, signature cards, and
         COMMUNICATIONS REFERRING OR RELATING TO such
13       ACCOUNTS, created between January 1, 1999 and the present,
         inclusive.
14
         3.  DOCUMENTS sufficient to show the account number of all
15       ACCOUNTS maintained by YOU in the name of, for the benefit of or
         concerning ISAAC LARIAN between January 1, 1999 and the present,
16       inclusive.

17       4. All DOCUMENTS showing or relating to any ACCOUNTS held by
         ISAAC LARIAN or any ACCOUNTS on which ISAAC LARIAN has
18       signatory authority at any other financial institution.[6]

19       By letter dated January 28, 2008, Bank of America advised Mattel that

20  it had received the January 17, 2008 subpoena and would produce the requested

21  documents without objection.[7]

22       **MGA's Objections and Motion to Quash.**  On January 28, 2008,

23  counsel for MGA and Isaac Larian advised Mattel that the MGA defendants had no

24  choice but to file immediately a motion to quash the Bank of America subpoena

25  because the Bank of America purportedly told MGA's counsel that it would process

26  _____

27       [5]   Exh, C; Exh. I [Tr. of Isaac Larian's deposition taken in the Art Attacks
    action, on December 15, 2005.
28       [6]   Id. ¶4
         [7]   Exh. F_

07209/2380770.1

                                    -4-

the subpoena and produce responsive documents to Mattel "unless we file a motion to quash."[8]  However, on January 29, 2008, Mattel's counsel called the Bank of America and was advised that, in accordance with its policy, the Bank had suspended processing the subpoena and would **not** produce responsive documents until it received a court order advising the bank that MGA's objections had been overruled.[9]

Later that day, Mattel's counsel called MGA's counsel and proposed the parties stipulate to extend the return date of the subpoena to February 11, 2008 and advise the bank that it should not produce documents until that date, to permit the parties time to meet and confer over MGA's objections.[10]  MGA's counsel stated it would consider the proposal and shortly advise Mattel of its decision.[11]

But minutes later, MGA's counsel filed and served the instant motion to quash.  Thereafter, MGA's counsel called Mattel's counsel and stated that because MGA had already filed its motion to quash, Mattel's proposed stipulation was moot.[12]

Notwithstanding MGA's suggestion to the contrary,[13] MGA has not been prejudiced by lack of "prior notice" of the subpoena served on Bank of America.  MGA was able to intervene, assert its objections, and stop any production by the Bank pending the Court's decision on the Motion to Quash.[14]

---

[8]  Grant Decl. ¶7
[9]  Id. ¶8
[10]  Id. ¶9
[11]  Id.
[12]  Id.
[13]  Motion at 6-7.
[14]  Id. ___

-5-

## Argument

**I.** **MGA'S MOTION TO QUASH SHOULD BE DENIED BECAUSE THE DOCUMENTS SOUGHT MAY BE PRODUCED WITH MINIMAL BURDEN**

The <u>Federal Rules of Civil Procedure</u> obligates third parties to produce documents responsive to a subpoena that a party serves on them.  <u>Fed. R. Civ. P.</u> 45(b), (d).  MGA does not dispute this.  If the documents are relevant and there is good cause for their production, the subpoena is enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying, or embarrassing. <u>U.S. v. American Optical Co.</u>, 39 F.R.D. 580, 583 (N.D. Cal. 1966).

As the party moving, MGA bears the initial burden of persuasion to demonstrate that Mattel's document requests are improper.  <u>See</u> <u>Green v. Baca</u>, 226 F.R.D. 624, 653 (C.D. Cal. 2005).  The burden on the party moving to quash a subpoena is a "heavy one."  <u>Heat and Control, Inc. v. Hester Industries, Inc.</u>, 785 F.2d 1017, 1024-25 (Fed. Cir. 1986) (noting that "the factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.").  Here, MGA has failed to meet its burden.

**A.** **The Documents Sought Are Relevant to the Claims And Defenses At Issue**

MGA asserts in conclusory terms that the documents sought from Larian's bank—the Bank of America—are "irrelevant" to the claims and defenses at issue.  As purported support for that assertion, MGA merely refers the Court (and incorporates by reference) to the arguments made in its pending motion to quash Mattel's subpoenas to MGA's bank, Wells Fargo, and to Mr. Larian's tax

1  accountant, Moss Adams.[15]  As shown in Mattel's opposition to that motion, those

2  arguments are without merit.[16]

3        To begin with, MGA mischaracterizes Mattel's stated need for the

4  documents, artificially limiting it to two issues:  (1) Mattel's commercial bribery

5  claim; and (2) to refute Larian's statement he did not receive a bonus in 2003.  The

6  documents sought from Bank of America are relevant to many more issues in

7  dispute, including Mattel's disgorgement and punitive damages claims, as well as to

8  ascertain MGA and Larian's net worth, and the value of MGA's intellectual

9  property and goodwill.

10        **1.**   **The Documents Are Relevant to Disgorgement and**

11            **Constructive Trust Remedies, as Well as Punitive Damages**

12        One remedy Mattel seeks is disgorgement of all amounts wrongfully

13  obtained. The disgorgement remedy also provides for the imposition of constructive

14  trusts to recover the ill–gotten gains of MGA and Isaac Larian that have been

15  transferred to other parties.[17]  For purposes of establishing disgorgement, Mattel

16  must take into account money transferred from MGA and Isaac Larian, regardless of

17  the manner in which it was transferred.  Mattel is entitled to discovery that shows all

18  assets siphoned from MGA or Isaac Larian for which there was no compensation

19  during the period of the alleged wrongful conduct.

20        It is undisputed that disgorgement is a remedy for Mattel's claims

21  against MGA and Larian, including copyright infringement and trade secret

---

22    [15] .See MGA Defendants' Separate Statement in Support of Motion to Quash

23  Subpoena to Bank of America or, in the Alternative for Protective Order ("MGA's Separate Statement re Bank of America") at 5:15–17; see also MGA's Separate

24  Statement in Support of Motion to Quash Subpoenas or, in the Alternative, Motion for Protective Order, filed December 21, 2007 (Docket # 1318) ("MGA Separate

25  Statement re Wells Fargo & Moss Adams"), at 29:13–17.

  [16]   See Mattel's Consolidated Separate Statement in Response to MGA's

26  Statement in Support of Motion to Quash Subpoenas or, in the Alternative, for Protective Order, filed January 18, 2008 (Mattel's Consolidated Separate

27  Statement"). at 32–38.

28

1  misappropriation.  17 U.S.C. § 504(b) and <u>E. Bassett Co. v. Revlon, Inc.</u>, 435 F.2d

2  656 (2d Cir. 1970) (copyright infringement); 4 Callmann, <u>Unfair Competition and</u>

3  <u>Monopolies</u> § 14.45 (4th ed.) and <u>Clark v. Bunker</u>, 453 F.2d 1006, 1011 (9th Cir.

4  1972) (trades secret misappropriation).  The scope of the disgorgement remedy is set

5  forth in two recent California Supreme Court decisions.  <u>See</u> <u>Kraus v. Trinity</u>

6  <u>Management Servs., Inc.</u>, 23 Cal. 4th 116 (2000); <u>Korea Supply Co. v. Lockheed</u>

7  <u>Martin Corp.</u>, 29 Cal. 4th 1134 (2003).  The court indicated that:

8        "disgorgement" is a broader remedy than restitution. . . .
       [A]n order for disgorgement "may compel a defendant to
9        surrender *all* money obtained through an unfair business
       practice even though not all is to be restored to the persons
10       from whom it was obtained or those claiming under those
       persons.  It has also been used to refer to surrender of *all*
11       profits earned as a result of an unfair business practice
       regardless of whether those profits represent money taken
12       directly from persons who were victims of the unfair
       practice."

13

14  <u>Korea Supply</u>, 29 Cal. 4th at 1145 (quoting <u>Kraus</u>, 23 Cal. 4th at 127) (emphasis

15  added).  Moreover, an important part of disgorgement is the imposition of a

16  constructive trust to recover ill–gotten gains that have been transferred to others by a

17  defendant.  A constructive trust is intended to prevent unjust enrichment, with equity

18  compelling the restoration to another of property to which the holder thereof is not

19  justly entitled.  <u>Taylor v. Polackwich</u>, 145 Cal. App. 3d 1014, 1022 (1983); <u>Cal. Civ.</u>

20  <u>Code</u> §§ 2223, 2224.  <u>See also</u> <u>Weiss v. Marchus</u>, 51 Cal. App. 3d 590, 600 (1975)

21  (constructive trust may be imposed in case of fraud, mishandling, or almost any case

22  of wrongful acquisition or detention of property to which another is entitled).  When

23  personal property is in dispute, the legislature has allowed plaintiffs to invoke the

24  remedy of constructive trust.  <u>Cal Civ. Code</u> §§ 2223, 2224.  To create a

25  constructive or involuntary trust only three conditions are necessary: existence of a

26  res, <u>i.e.</u> property or some interest in property, plaintiff's right to that res and

27  _____

28  [17]   Exh. B [Second Amended Answer and Counterclaims] to the Declaration of
     Melissa Grant ("Grant Dec.").  All exhibits are attached to the Grant Dec. unless
     (footnote continued)

1  defendant's gain of the res by fraud, accident, mistake, undue influence, violation of

2  the trust or other wrongful act.  <u>Kraus v. Willow Park Public Golf Course</u>, 140 Cal.

3  Rptr. 744, 73 Cal. App. 3d 354 (1977); <u>see</u> <u>Cramer v. Biddison</u>, 65 Cal. Rptr. 624,

4  257 Cal. App. 2d 720 (1968).  <u>See</u> <u>Burlesci v. Petersen</u>, 68 Cal. App. 4th 1062, 1067

5  (1998) (constructive trust); <u>Farmers Ins. Exchange v. Zerin</u>, 53 Cal. App. 4th 445,

6  454–55 (1997) (equitable lien is proper if unjust enrichment and detrimental reliance

7  are implicated).

8          Mattel needs the documents sought by the subpoenas to prove the

9  amount the defendants must disgorge.  <u>Housing Rights Center v. Sterling</u>, 2005 WL

10  3320739, *3 (C.D. Cal. 2005) (finding financial information relevant to

11  disgorgement of profits claim).  Money that properly belonged to Mattel was

12  transferred from MGA or Isaac Larian to an entity controlled by them.  Mattel

13  should be able to understand how that money was used because MGA and Isaac

14  Larian have no right to whatever additional gains were realized with Mattel's

15  money.  <u>See</u> <u>id</u>.  Indeed, the right to those additional gains vests solely in Mattel.

16  Consequently, Larian's banking records from Bank of America are directly relevant.

17          Furthermore, as the Discovery Master ruled, as part of the punitive

18  damages remedy, Mattel is entitled to documents reflecting MGA and Larian's net

19  worth.  <u>Southern California Housing Rights Center v. Krug</u>, 2006 WL 4122148, *4

20  (C.D. Cal. 2006) ("When a punitive damages claim has been asserted, a majority of

21  federal courts permit pretrial discovery of financial information about defendants

22  without requiring the plaintiff to establish a prima facie case on the issue of punitive

23  damages.").  Whether or not assets or money were transferred during the period of

24  wrongdoing is relevant to punitive damages, and Mattel is therefore entitled to

25  documents reflecting any such transfer.

26

27

28  _____

otherwise stated.

-9-

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

2.   **Mattel is Entitled to Documents Showing or Related to Larian's Net Worth**

Documents relevant to Isaac Larian's net worth are necessary for Mattel's experts to determine the damages that accrued to Mattel as a result of their infringement of Mattel's copyrights, and for punitive damages and to defend against MGA's as yet unspecified damages.  Both the Discovery Master and Judge Larson have previously ruled that Mattel is entitled to evidence related to Larian's net worth:  "That net worth is generally the subject of expert testimony at trial—a proposition disputed by neither Mattel nor the Court—does not render it an improper subject for a Rule 30(b)(6).  Therefore, the Discovery Master's ruling on this issue is not contrary to law."[18]  See, e.g., Hilao v. Estate of Marcos, 103 F.3d 767, 781–82 & n. 7 (9th Cir. 1996) (approved a jury's discretion to consider financial condition as one relevant factor in awarding punitive damages); Southern California Housing Rights Center v. Krug, 2006 WL 4122148, *4 (C.D. Cal. 2006) ("When a punitive damages claim has been asserted, a majority of federal courts permit pretrial discovery of financial information about defendants without requiring the plaintiff to establish a prima facie case on the issue of punitive damages.").

Here, Larian has failed to produce documents sufficient to determine his net worth since 1999, notwithstanding the Discovery Master's order to do so.[19]

3.   **The Documents Sought Are Relevant to Mattel's Commercial Bribery Claims and Evidence of Bias**

As MGA recognizes, the banking records sought by Mattel are also relevant because they bear directly on Mattel's commercial bribery claim.  Contrary to MGA's assertion, their relevance goes beyond simply payments to Carter Byrant. These documents may also lead to evidence of bias and influence on potential

[18]  Exh. L at 5 [July 2, 2007 Order]; Exh. H at 15 [December 31, 2007 Order].
[19]  Grant Dec. ¶12.

-10-

1   witnesses.  Such concerns are not theoretical, as evidence demonstrates that MGA

2   was paying Mr. Bryant while it knew he was a Mattel employee.  Mattel is entitled

3   to seek documents that would uncover additional information about MGA and

4   Larian's attempts to bribe Mr. Bryant *or other Mattel employees or vendors*.

5           As discussed above, contrary to MGA's argument that the bribery issue

6   is limited to Mr. Bryant, Mattel is entitled to seek information related to their

7   bribery or attempted bribery of other personnel.  At her deposition on December 28,

8   2007, Veronica Marlow, a third–party witness who long worked directly with

9   Bryant and MGA, testified that she knew of at least three Mattel employees who *for*

10  *years* worked on Bratz *while they were employed by Mattel*.[20]  This was a shocking

11  revelation.  Neither MGA nor Bryant had disclosed this information, despite

12  repeated Court Orders and despite the fact that at least one of these individuals was

13  a co–worker of Bryant's at Mattel.  To the contrary, both Bryant and MGA gave flat

14  denials under oath that there was any other Mattel employees knowingly involved.[21]

15          Furthermore, payments by or on behalf of MGA, Isaac Larian, or any

16  other defendant to any Mattel employee or witness goes to bias.  Evidence of such

17  bias is relevant and discoverable, especially when it relates to key witnesses.  See

18  United States v. Abel, 469 U.S. 45, 50–51 (1984); see also Wright & Miller, Federal

19  Practice & Procedure: Federal Rules of Evidence § 6095 (bias is a "particularly

20  favored basis for attacking credibility," and "circumstantial evidence of bias" may

21  include evidence of the "payment of bribes or fees").

22          The banking records Mattel has requested from financial institutions

23  are relevant to tracking MGA's payments to third-parties and witnesses.  Bank of

24  America was and is Isaac Larian's bank.[22]  As such, it is an invaluable source of

25

26  [20]   Exh. N_at 288:8–289:21, 306:8–25; 307:8–308:1; 363:15–21[Deposition Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007].

27  [21]   Exh. O at 286:25–287:5 [Dep. Tr. of Carter Bryant, Vol. 2 ("Bryant Tr.")]; Exh. M at 301:2–17 [Dep. Tr. of Lisa Tonnu, Vol. 2 ("Tonnu Tr.")]; Exh. P at 64–70 [MGA's Supp. Responses to Mattel's Revised Third Set of Interrogatories].

28  [22]   Exh. I [Bryant's Art Attacks deposition testimony]; Grant Dec. ¶14

information regarding payments made by Larian, and the documents sought by the subpoena relating to Isaac Larian since 1999—including annual statements, monthly statements, transaction histories, cancelled checks, signature cards, and documents showing which accounts Larian maintains with Bank of America—are highly relevant.

### 4.   MGA Has Not Shown That The Documents Have Been Produced Or Are Otherwise Duplicative

#### (a)   That Documents "May" Be Available From Another Source Is Not Sufficient

MGA argues that the subpoena should be quashed because Mattel requested similar documents from the parties, and because defendants are in possession of responsive documents.  These arguments are insufficient grounds to quash the subpoenas.

Even if the document requests served on Bank of America were identical to the requests served on MGA and Larian, there has been no showing— nor is one conceivable—that MGA and Larian have all of the same documents as are in the possession, custody, or control of Bank of America, or any other third– party.  (For example, there is no reason to believe that Larian would have all of the banking records maintained by Bank of America.  Banks are notoriously thorough in their record keeping, and would have a much more detailed paper trail concerning activity in Larian's account than would Larian.)  Without assurance that MGA and Larian have all of the same documents as Bank of America, this objection is meritless.  In State Farm Mutual Auto Ins. Co. v. Accurate Medical, P.C., the district court rejected a similar argument.  2007 WL 2993840 (E.D.N.Y. Oct. 10, 2007) (denying motion to quash).  There, the plaintiff sought documents regarding third– party financial relationships with the defendant.  In response to the defendant's argument that such documents were available from itself, the court found that it critical that "it is unlikely that the moving defendants would, in fact, possess all the

1  documents sought by plaintiff in the subpoenas." Id. at *1. Significantly, nowhere

2  does MGA undertake to make that showing.

3         Because documents may be available from other sources is not grounds

4  to refuse production.[23]  "[A] person may not avoid a subpoena by saying that the

5  evidence sought from him is obtainable from another." Covey Oil Co. v.

6  Continental Oil Co., 340 F.2d 993, 998 (10th Cir. 1965) (overruled on other

7  grounds); State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL

8  2993840, at *1 (E.D.N.Y. 2007) (same); In re Bergeson, 112 F.R.D. 692, 695 (D.

9  Mont. 1986) (conclusory assertions that documents sought are available from others

10  more economically "does not constitute a showing of unreasonableness or

11  oppressiveness."); see also Plant Genetic Systems, N.V. v. Northrup King Co., Inc.,

12  6 F. Supp. 2d 859, 861-862 (E.D. Mo. 1998) (third party subpoena proper where

13  information sought pertained to a central issue in the underlying claim, it was not

14  burdensome in light of plaintiff's diligent efforts to obtain the information from

15  defendant, and the nonparty had signed protective order prohibiting disclosed

16  information from being seen by plaintiffs counsel or nonparty's competitors).

17         As held by the State Farm court, "nothing in the Federal Rules of Civil

18  Procedure requires a litigant to rely solely on discovery obtained from an adversary

19  instead of utilizing subpoenas." Id. at *1.

20         Finally, as discussed below, even if MGA and Larian had these

21  documents, they have not produced them.

22       **5.**    **Neither Larian Nor MGA Have Produced the Documents**

23            **Sought from Bank of America**

24         MGA argues that the subpoena should be quashed because the

25  information sought is available from and/or was purportedly produced by the

26  parties. But MGA neglects to mention that Larian failed to produce any documents

27

28     [23] See MGA's Separate Statement re Bank of America Subpoena, at 6; see also MGA's Separate Statement re Wells Fargo & Moss Adams Subpoenas, at 31–32.

-13-

1    showing money transfers between him and any MGA entity or any other

2    defendant—notwithstanding the Court's Order to do so.[24]   The inconsistency in

3    what MGA claims to have produced and what it actually did produce is epitomized

4    by its assertion in its Separate Statement that Larian recently produced "13,000

5    pages of documents showing his net worth, his income from multiple sources, as

6    well as information regarding his banks and bank accounts,"[25] and the statement in

7    Larian's counsel's declaration that "in mid–January Mr. Larian produced to Mattel

8    nearly 50,000 pages" of such documents.[26]  Because MGA document productions do

9    not distinguish "Larian" documents from MGA documents, it has been very difficult

10    for Mattel to determine if any of the thousands of pages MGA defendants have

11    produced in the past three weeks are in fact "Larian" documents.[27]

12           To date, Mattel has been able to identify only a fraction of the

13    documents produced as even arguably Larian "financial" records.[28]  And none of

14    those documents include (a) monthly statements of his personal Bank of America

15    account or accounts, (b) cancelled checks or wire transfers reflecting payments to or

16    from Larian any MGA entity—let alone other defendants and Mattel employees, or

17    (c) countless other documents sought by Mattel's subpoena to Bank of America.[29]

18           Even the description of documents Larian claims to have produced is

19    notable for its lack of specificity.  Indeed, conspicuously missing from that

20    description—and Larian's production to date—are financial records from 1999 to

21    the present that the Discovery Master ordered him to produce, including:[30]

22

23    _____

    [24]   Grant Dec., ¶12 & Exh. H [December 31, 2007 Order].
    [25]   MGA's Separate Statement re Bank of America Subpoena, at 6:3–6.
    [26]   See Declaration of Timothy A. Miller in support of MGA Defendants'
24    Motion to Quash Subpoena to Bank of America or, in the Alternative, for Protective
    Order, at ¶ 10.
25    [27]   Grant Dec., ¶11.
    [28]   Id.
26    [29]   Id.  The only documents that Larian appears to have produced related to his
27    personal Bank of America account(s)—as opposed to an account of an MGA
    entity—are those relating to payments made he made to his brother Farhad Larian.
    Id.
28    [30]   Id., ¶12.

1    • Documents sufficient to determine Larian's net worth since 1999.

2    • Larian's personal banking records.

3    • Documents related to payments to third–parties or defendants other

4    than MGA by Larian, or the Larian trusts (such as to Bryant and other Mattel

5    employees and vendors).

6    • Documents related to the Larian trusts, including any documents

7    showing Isaac Larian's interest in, payments received, or transfers to those trusts.

8    In short, Larian cannot refuse to produce relevant and discoverable

9    documents for months, then object when Mattel seeks such documents from third

10   parties.  As the Phase 1 discovery cut–off approached, Larian left Mattel no choice

11   but to seek documents essential to its claims and defenses from third parties,

12   including the Bank of America.

13          **6.    Mattel is Entitled to the Requested Documents Because of**

14                  **Legitimate Concerns of Spoliation and Document Tampering**

15   Mattel cannot rely on MGA and Larian to actually produce all

16   responsive documents in their possession, custody and control, or that they will

17   produce it in their original condition.  As discussed above, Veronica Marlow, a

18   third–party witness who long worked directly with Bryant and MGA, testified that

19   she knew of at least three Mattel employees who *for years* worked on Bratz *while*

20   *they were employed by Mattel*.[31]  Neither MGA nor Bryant had disclosed this

21   information, despite repeated Court Orders and despite the fact that at least one of

22   these individuals was a co–worker of Bryant's at Mattel.  To the contrary, both

23   Bryant and MGA gave flat denials under oath that there was any other Mattel

24   employees knowingly involved.[32]  Yet, by defendants' reasoning here, the Court and

25

26   [31]   Exh. N at 288:8–289:21, 306:8–25; 307:8–308:1; 363:15–21[Deposition Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007].

27   [32]   Exh. O at 286:25–287:5 [Dep. Tr. of Carter Bryant, Vol. 2 ("Bryant Tr.")]; Exh. M at 301:2–17 [Dep. Tr. of Lisa Tonnu, Vol. 2 ("Tonnu Tr.")]; Exh. P at 64–70

28   [MGA's Supp. Responses to Mattel's Revised Third Set of Interrogatories].

1   Mattel should have been denied Ms. Marlow's plainly relevant evidence because it

2   purportedly duplicated discovery requested of defendants.  In fact, defendants made

3   that very argument to Judge Larson in resisting producing Ms. Marlow for

4   deposition in the first place, to no avail.

5          In the past, MGA has produced requested documents only *after* a third–

6   party's production exposed MGA's previous failures to produce.  What documents

7   MGA has produced has been the result of a protracted discovery process in which

8   MGA has demonstrated a pattern of failing to produce relevant, critical, and

9   incriminating, documents until faced with compulsion by the Court or after a third

10  party has already produced them.  For example, in September 2006, a third–party

11  witness, Steven Linker, produced Bratz design drawings and Bratz product

12  development documents.[33]  Linker's production included a multitude of Bratz

13  materials he had received from or exchanged with MGA and Bryant before Bryant

14  left Mattel.[34]  Neither MGA nor Bryant had produced many of them, however.

15  Notably, before Linker's testimony, MGA had produced an email relating to Bratz

16  development that Linker's design partner, Liz Hogan, had sent to MGA on

17  October 23, 200—a date which was conveniently *after* Bryant left Mattel.  MGA,

18  however, had not produced the earlier emails—those pre–dating Bryant's last day of

19  employment at Mattel—that Hogan had exchanged with MGA on that very same

20  subject.  Mattel obtained those only after Linker produced them pursuant to

21  subpoena in September 2006.[35]  Thus, it has often been the case in this litigation that

22  MGA has produced relevant and responsive documents only after a third–party has

23  already done so.

24          Furthermore, Mattel must guard against the possibility of further

25  spoliation of evidence and/or document tampering.  Unfortunately, these concerns

26

27  [33] Grant Dec. ¶25
    [34] Id.
28  [35] Id.

are not merely speculative or theoretical.  It has already occurred.  For example, former Mattel and present MGA employee Mr. Bryant was ordered—after initial delay and refusal—to produce a computer for inspection in this matter.  Mattel learned that a software program called "Evidence Eliminator" had been installed and run on that hard drive.[36]  In addition, there has been credible evidence adduced in this action that MGA has tampered with documents by altering their creation dates, as indicated by fax headers (which were deleted).  The Court responded to the concern of spoliation, and specifically the alteration of the creation date of the documents described above, in an August 9, 2006 order.[37]  Although it did not find the evidence rose to the level of requiring the appointment of a Court appointed expert witness at the time.  It held, "There are serious questions concerning the handling of these critical documents" that caused the Court "much concern about whether the truth seeking functions of the adversarial system have been fundamentally compromised in this case." Id. at 11:10–13.  The Court also stressed its "concern" over MGA's "handling of documents in its possession."[38]  Clearly, therefore, Mattel is within its rights to obtain documents from third–parties even if also in the possession of MGA and Larian.

Given the unavailability of this information from both MGA, Larian, and other sources, MGA's efforts to thwart Mattel's discovery requests seeking this information thus far, and the very real concern over spoliation and tampering, Mattel should not be denied this discovery from third parties.

**B.    MGA Has Not Shown Undue Burden**

Bank of America has made no burden objection.  It stands ready to produce.  But MGA and Larian apparently claim that the requests are so burdensome to justify quashing the subpoenas.  A party claiming that production of

---

[36]  Exh. Q, at 285:15–287:6 [12/28/07 Deposition Transcript of Richard Irmen].
[37]  Exh. N, at 9:4–18:14 [Court's August 9, 2006 Order].
[38]  Id. at 17:23–26.

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

1   requested documents is unduly burdensome bears the burden of proving up their

2   objection.  <u>Northrop Corp. v. McDonnell Douglas Corp.</u>, 751 F.2d 395, 403 (D.C.

3   Cir. 1984) (reversing district court's decision quashing subpoena).  The party cannot

4   rest on conclusory assertions.  <u>Goodman v. U.S.</u>, 369 F.2d 166, 169 (9th Cir. 1966)

5   (reversing the quashing of a subpoena because of lack of specific evidence of

6   burden).  "The party must provide specific and compelling proof that the burden is

7   undue."  <u>JZ Buckingham Investments, LLC v. United States</u>, 78 Fed. Cl. 15, 25

8   (Fed. Cl. Ct. 2007) (denying motion to quash).

9          Here, MGA and Isaac Larian offer no evidence—such as a declaration

10   or testimony—regarding the time, cost, or burden involved in responding to Mattel's

11   Bank of America subpoena.  Nor could they.  "The burden of showing that a

12   subpoena is unreasonable and oppressive *is upon the party to whom it is directed*."

13   <u>Goodman v. U.S.</u>, 369 F.2d 166, 169 (9th Cir. 1966) (emphasis added).  Bank of

14   America, however, has not any objections to the subpoena.  To the contrary, the

15   bank simply advised Mattel of its intention to comply with the subpoena without

16   objection once the Court rules on the motion to quash.[39]

17          **C.      <u>The Subpoenas Are Not Overbroad</u>**

18          MGA and Larian's assertion that the Mattel's requests are abusively

19   drawn or unduly overbroad is also baseless given that Mattel's document requests

20   are directed to a financial institution.  Financial institutions generate and retain

21   precisely the types of documents responsive to Mattel's requests.

22          MGA mistakenly relies on <u>Ocean Atlantic Woodland Corp. v. DRH</u>

23   <u>Cambridge Homes, Inc.</u>, 292 F. Supp. 2d 923 (N.D. Ill. 2003), to argue that broad

24   financial discovery from non-parties is necessarily unduly burdensome.  The <u>Ocean</u>

25   <u>Atlantic</u> court, however, did not hold that such discovery is always unwarranted;

26   rather, it held that such discovery is permissible provided it is tied to the claims and

27   defenses at issue.  Here, unlike in <u>Ocean Atlantic</u>, the Discovery Master expressly

28

1  held that Larian's financial records—including banking records—are relevant to

2  Mattel's damages claim.[40]

3          Further, MGA's claim, based on the Discovery Master's January 28,

4  2008 Order, that the Bank of America subpoena seeks overly broad financial

5  discovery regarding each of Larian's relatives is unavailing.  In the January 28, 2008

6  Order, the Discovery Master denied Mattel's motion to compel "unfettered"

7  financial discovery from Isaac Larian's brother, Farhad Larian.[41]  In so ruling, the

8  Court stated that such broad discovery from a non-party was not warranted because

9  it was not relevant to the claims and defenses at issue, but only to the non-party's

10  credibility and bias as a witness.[42]  In contrast, as discussed above, the documents

11  sought by Mattel's Bank of America subpoena pertain Isaac Larian—a party to this

12  action—and are directly relevant to claims and defenses at issue.  Further, the

13  subpoena seeks only banking records from a financial institution—not broad

14  categories of financial documents from each of Larian's relatives as MGA

15  suggests.[43]  Thus, MGA's argument that the requests are "intended only to harass

16  Mr. Larian and his family" is at best disingenuous.[44]

17          Finally, MGA's objection to subpoena on the grounds that it calls for

18  information concerning Larian's children or other relatives.  As explained above,

19  Mattel is entitled to information concerning Larian's net worth.  Payments that

20  Larian may have made to his children, relatives, employees or acquaintances during

21  the time period reflected in the subpoenas are relevant to his net worth, and efforts

22  he may have made to conceal his true net worth.  Moreover, transfers of value or

23  payments to others during the relevant time may also be relevant to Mattel's

24  remedies, including disgorgement, constructive trust, and punitive damages.

25

26  [39]  Grant Dec. ¶6 and Exh. F [B of A letter]
    [40]  Exh. H at 15–16. [December 31, 2007 Order]

27  [41]  Exh S at 12 [January 28, 2008 Order].
    [42]  Id.

28  [43]  MGA Separate Statement re Bank of America Subpoena, at 6-7.
    [44]  Motion at 6:9.

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

1

2  **II.     MGA WAS NOT PREJUDICED BY LACK OF "PRIOR NOTICE"**

3          MGA argues that the subpoena must be quashed because Mattel did not

4  provide MGA "prior notice" before serving the subpoena on Bank of America.[45]

5  MGA is wrong.

6          As a preliminary matter, defendants' objection is disingenuous in light

7  of defendants' conduct. Indeed, defendants have engaged in the very conduct of

8  which they now complain. Carter Bryant has repeatedly failed to provide Mattel

9  "prior notice" of defendants' third party subpoenas, and defendants have consistently

10  sought to obstruct and thwart Mattel's efforts to obtain relevant and discoverable

11  documents.  As explained above, after months of refusing to produce financial

12  records that the Court ordered defendants to produce, Mattel had no choice but to

13  obtain such records from the third parties before Phase 1 discovery cut-off.  MGA's

14  baseless Motion to Quash is yet another attempt to thwart Mattel's right to secure

15  documents directly relevant to its claims and defenses.

16          Moreover, MGA was not harmed by any delay in receiving notice,

17  since it has sufficient opportunity to object to the subpoenas and move to quash.

18  Absent such harm, there is insufficient grounds to quash the subpoena.  "The

19  purpose of such notice is to afford other parties an opportunity to object to the

20  production or inspection, and to serve a demand for additional documents or things."

21  Advisory Committee Note to the 1991 amendments to Rule 45; see also Blaser v.

22  Mt. Carmel Regional Med. Ctr, Inc., slip copy, 2007 WL 852641, at *2-*3 (D. Kan.

23  2007); Zinter Handling, Inc. v. G.E., 2006 WL 3359317, at *2 (N.D.N.Y. 2006).

24  The "procedural defect" of untimely notice is simply "an insufficient basis by which

25  to quash subpoenas" where the opposing party suffered no prejudice thereby.

26  Tubor v. Clift, 2007 WL 214260, at *6 ( W.D. Wash. 2007); see also Zinter,

27  2006 WL 3359317, at *2; Doe v. United States, slip copy, 2007 WL 1521550 (D.C.

28

1   Pa. 2007); <u>Judson v. Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec</u>, 476 F.

2   Supp. 2d 913, 929 (N.D. Ill. 2007) (citing cases).

3           Here, MGA not only had an opportunity to do so, but it did in fact,

4   serve objections to the subpoena, move to quash, and stop the production of <u>any</u>

5   responsive documents by the Bank.  It has thus suffered no prejudice whatsoever**.**  In

6   such circumstances, there is no basis on which to quash the subpoena.  <u>See, e.g.</u>, <u>id</u>.

7   (citing cases); <u>Biocare Med. Techs., Inc. v. Khostowshahi</u>, 181 F.R.D. 660, 667-68

8   (D. Kan. 1998) (refusing to quash subpoena for violation of Rule 45's notice

9   requirement where aggrieved party failed to show prejudice from the violation).[46]

10  Indeed, imposing a draconian sanction such as that urged by MGA where it has not

11  been prejudiced or harmed would be unfair to Mattel, and would deprive Mattel of

12  documents that are essential to the preparation of its claims and defenses in this

13  case, and thereby prejudice Mattel's ability to prepare for trial.

14

15  **III.   THE REMAINING OBJECTIONS ARE BOILERPLATE AND**

16      **SHOULD BE OVERRULED**

17      **A.   The Boilerplate Objections Are Improper**

18          MGA and Larian assert a host of boilerplate general objections, which

19  they repeat in their specific objections, in an effort to provide a framework for its

20  obstructionist efforts.  Through these objections, they generally assert that Mattel's

21  document requests are irrelevant, overbroad, ambiguous, harassing, cumulative, and

22  unduly burdensome.[47]  MGA and Larian's objections in this regard are the hallmark

23  of boilerplate objections that are improper under the Federal Rules of Civil

24  Procedure.  <u>A. Farber and Partners, Inc. v. Garber</u>, 234 F.R.D. 186, 188 (C.D. Cal.

25  _____

26  [45]   Motion at 6-7.
    [46]   The cases on which MGA relies do not require a contrary result.  In each of

27  those cases, the court either so ruled without explanation, or the party issuing the
    subpoena had demonstrated other egregious conduct in discovery which caused the

28  court to impose harsher penalties.  <u>See</u> Mot. at 6-7.
    [47]   Mot. at 4-5.

1   2006) (overruling defendant's boilerplate objections as improper and ordering

2   production of documents).  See Panola Land Buyers Ass'n v. Shuman, 762 F.2d

3   1550, 1559 (11th Cir. 1985) (holding that court did not have discretion to limit

4   discovery on basis of boilerplate objections).

5   **B.**     **The Objection Based Upon the Accountant-Client Privilege Is**

6           **Unfounded**

7           MGA's objection that the documents are protected from disclosure by

8   the accountant-client privilege is without basis.  The United States Supreme Court

9   has recognized that there is "no confidential accountant-client privilege [that] exists

10  under federal law, and no state created privilege has been recognized in federal

11  cases."  Couch v. United States, 409 U.S. 322, 335 (1972) (collecting cases).

12  Therefore, MGA's assertion of a privilege that is not recognized is frivolous.

13  **C.**     **Concerns Over Confidentiality Are Alleviated by the Protective**

14          **Order**

15          MGA's objection that the subpoena seeks documents protected as

16  containing trade secrets, confidential information, or otherwise protected by a right

17  of privacy is also with merit.[48]  The Court has entered a Protective Order in this

18  action.  Given this salient fact, there is no justification for MGA to assert the

19  disclosure of the requested documents would infringe upon Isaac Larian's privacy

20  interests or other concerns arising from the disclosure of confidential information.

21  Where, as here, the terms of the Protective Order ensure that documents remain

22  confidential and limit their use to litigation purposes, confidentiality concerns are

23  vitiated and the requested documents should be produced.  See, e.g., In re Heritage

24  Bond Litigation, 2004 WL 1970058 at *5, n.12 (C.D. Cal. 2004) ("Any privacy

25  concerns . . . defendants have in their bank records and related financial statements

26  are adequately protected by the protective order, and are not sufficient to prevent

27  

28  [48]   Mot. at 5-6.

1  production in this matter"); <u>A. Farber and Partners, Inc.</u>, 234 F.R.D. at 191-92

2  ("plaintiff's need for defendant Garber's financial documents outweighs defendant

3  Garber's claim of privacy, especially when the 'impact' of the disclosure of the

4  information can be protected by a 'carefully drafted' protective order"); <u>Yund v.</u>

5  <u>Covington Foods, Inc.</u>, 193 F.R.D. 582, 584 (S.D. Ind. 2000); <u>Gohler v. Wood</u>,

6  162 F.R.D. 691, 697 (D. Utah 1995) ("Because the protective order limits disclosure

7  of confidential material to those who are necessarily involved in the case, and these

8  parties may use this information only for purposes of litigating this case, excluding

9  any business purpose, the court concludes Deloitte's confidentiality concerns have

10  been addressed adequately.").

11        <u>Plant Genetic Systems</u> is particularly instructive with respect to MGA's

12  objections based on confidential or private information of some unidentified third

13  party or parties.  6 F. Supp. 2d at 862.  As was the case in <u>Plant Genetic Systems</u>,

14  and consistent with the Discovery Master's prior rulings in this case, the third

15  parties can use the Protective Order in this action to protect information it properly

16  designates as "Confidential" or "Confidential – Attorneys Eyes Only."

17        Further, as the Discovery Master previously ruled with respect to the

18  personnel file of Isaac Larian, the Protective Order in place in this case is sufficient

19  to alleviate any privacy concerns.[49]  Therefore, MGA's objection based upon

20  confidentiality concerns is also without basis.

21

22

23

24

25

26

27

28      [49]   Exh. T at 11, n.4 [Order Dated May 15, 2007].

## Conclusion

For the reasons set forth above, and for those set forth in Mattel's Response to MGA's Separate Statement, Mattel respectfully requests that MGA's Motion to Quash or, in the alternative, for a Protective Order, be denied in its entirety.

DATED:  February 7, 2008       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/_____
    Jon D. Corey
    Attorney for Mattel, Inc.