**INTERROGATORY NO. 31:**

State all facts that support YOUR contention, if YOU so contend, that the INVENTIONS AGREEMENT is not valid and enforceable, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**RESPONSE TO INTERROGATORY NO. 31:**

MGA (HK) incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms INVENTIONS AGREEMENT, IDENTIFY and REFER OR RELATE TO. MGA (HK) also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA (HK) also objects to this interrogatory to the extent that it calls for a legal conclusion.

MGA (HK) objects that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless"). MGA (HK) further objects to the extent that this interrogatory seeks information outside of MGA (HK)'s personal knowledge and is not in MGA (HK)'s possession, custody or control. In particular, MGA (HK) objects to this interrogatory to the extent that it requests that MGA (HK) "state *all* facts . . . and IDENTIFY *all* PERSONS . . . and *all* DOCUMENTS" (emphasis added).

29

EXHIBIT P    PAGE 297

1    MGA (HK) objects to this interrogatory because Mattel has propounded

2  more than 50 interrogatories.  Under Judge Larson's order of February 22, 2007,

3  "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-

4  SGL and CV 05-02727]."

5    Subject to and without waiving the foregoing objections, MGA (HK)

6  responds as follows:  MGA (HK) is willing to meet and confer with Mattel regarding

7  this interrogatory and the obligation of Mattel to supplement its responses to MGA's

8  First Set of Interrogatories.

9  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 31:**

10    MGA (HK) incorporates by reference its General Response and General

11  Objections above, as though fully set forth herein and specifically incorporates

12  General Objection No. 7 (regarding Definitions), including but not limited to its

13  objections to the definitions of the terms INVENTIONS AGREEMENT, IDENTIFY

14  and REFER OR RELATE TO.  MGA (HK) also objects to this interrogatory to the

15  extent it seeks information that is not subject to disclosure under any applicable

16  privilege, doctrine or immunity, including without limitation the attorney-client

17  privilege, the work product doctrine, the right of privacy, and all other privileges

18  recognized under the constitutional, statutory or decisional law of the United States

19  of America, the State of California or any other applicable jurisdiction.  MGA (HK)

20  also objects to this interrogatory to the extent that it calls for a legal conclusion.

21    MGA (HK) objects that this interrogatory is an overbroad and unduly

22  burdensome contention interrogatory to the extent it asks for "all facts" which

23  supports the denial of a statement or allegation.  *See e.g., Safeco of Am. v. Rawstron*,

24  181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all

25  facts, documents, and witnesses that support the denial of a statement or allegation of

26  fact" because the "universe of potentially responsive information is almost endless").

27  MGA (HK) further objects to the extent that this interrogatory seeks information

28  outside of MGA (HK)'s personal knowledge and is not in MGA (HK)'s possession,

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIESNO. CV 04-9049 SGL (RNBx)

EXHIBIT P    PAGE 298

1  custody or control.  In particular, MGA (HK) objects to this interrogatory to the

2  extent that it requests that MGA (HK) "state *all* facts . . . and IDENTIFY *all*

3  PERSONS . . . and *all* DOCUMENTS" (emphasis added).

4  Subject to and without waiving the foregoing objections, MGA (HK)

5  responds as follows:

6  MGA (HK) contends that Paragraph 3-a of the "INVENTIONS

7  AGREEMENT" is unenforceable based on the equitable doctrine of laches, and the

8  statute of limitations, in that Mattel intentionally delayed in taking legal action

9  against MGA or Carter Bryant for several years in the belief that Mattel would be

10 able to drive Bratz out of the marketplace through the introduction of a copycat line

11 of My Scene Barbie dolls.  Mattel only took legal action well after MGA had

12 invested substantial amounts of capital and creative and innovative human effort in

13 the Bratz line of dolls and had experienced enormous success in the market place,

14 changing the fashion doll business forever.  In addition, many Mattel employees

15 knew following the introduction of the first generation of Bratz dolls to the market

16 that Carter Bryant was the originator of the idea that led to the first generation of

17 Bratz dolls.

18 The "INVENTIONS AGREEMENT" is also invalid and unenforceable

19 insofar as it purports to prohibit Bryant from engaging in good faith and reasonable

20 efforts to seek professional opportunities with Mattel competitors while still

21 employed by Mattel.

22 These contentions are based on the following facts and circumstances:

23 MGA (HK) is informed and believes that it was common knowledge at Mattel that

24 many Mattel employees employed in the Mattel design center worked on a freelance

25 basis for third parties, including Mattel competitors.  Despite knowledge of this

26 activity, Mattel rarely, if ever, enforced any rights it may have had to prohibit such

27 freelancing.  Mattel has therefore waived any right it may have had to enforce

28 Paragraph 3-a of the "INVENTIONS AGREEMENT" against Carter Bryant by

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIES NO. CV 04-9049 SGL (RNBx)

EXHIBIT P    PAGE 299

1  virtue of course-of-conduct contract law principles.

2         The following persons have knowledge of the facts and circumstances

3  supporting this contention: current and former members of Mattel management,

4  current and former members of Mattel's legal department, current and former

5  employees in Mattel's Design Center, including, Robert Eckert, Alan Kaye, Matt

6  Bousquette, Adrienne Fontanella, Richard De Anda, Ivy Ross and Margaret Leahy.

7         The following documents may be relevant to these facts:  the

8  "INVENTIONS AGREEMENT;" Mattel documents referring or relating to Mattel's

9  enforcement, or lack thereof, of the provisions of similar agreements between Mattel

10  and its employees; Mattel documents referring or relating to Mattel's knowledge or

11  investigation of suspected violations of similar agreements between Mattel and its

12  employees; Mattel's internal emails that have not been produced; documents from

13  Mattel's Zeus computer systems; documents referring or relating to Mattel's market

14  research; documents referring or relating to Mattel's public relations efforts;

15  documents  referring or relating to Mattel's advertising and advertising strategies.

16  Mattel has produced very few documents in this action in response to MGA's

17  outstanding requests.  MGA recently served additional requests for production of

18  documents.  MGA (HK) reserves the right to supplement this response and all of its

19  other responses after Mattel has completed its production.

20         This response is without prejudice to MGA (HK)'s position that the

21  "INVENTIONS AGREEMENT" as a whole is invalid and unenforceable as a

22  violation of public policy.

23  **INTERROGATORY NO. 32:**

24         State all facts that support YOUR contention, if YOU so contend, that

25  MATTEL is not or would not be entitled to injunctive relief as requested in its

26  COMPLAINT and/or COUNTERCLAIMS if it is ultimately determined that

27  MATTEL owns one or more BRATZ INVENTIONS, and IDENTIFY all PERSONS

28  with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO

32

EXHIBIT  P   PAGE  300

1 | such facts.

2 | **RESPONSE TO INTERROGATORY NO. 32:**

3 |       MGA (HK) incorporates by reference its General Response and General

4 | Objections above, as though fully set forth herein and specifically incorporates

5 | General Objection No. 7 (regarding Definitions), including but not limited to its

6 | objections to the definitions of the terms BRATZ INVENTIONS, IDENTIFY and

7 | REFER OR RELATE TO, and further objects on the ground that the interrogatory is

8 | overbroad, unduly burdensome, vague and ambiguous both generally and

9 | specifically with respect to the terms YOUR, YOU, MATTEL. MGA (HK) also

10 | objects to this interrogatory to the extent it seeks information that is not subject to

11 | disclosure under any applicable privilege, doctrine or immunity, including without

12 | limitation the attorney-client privilege, the work product doctrine, the right of

13 | privacy, and all other privileges recognized under the constitutional, statutory or

14 | decisional law of the United States of America, the State of California or any other

15 | applicable jurisdiction. MGA (HK) further objects to the interrogatory on the ground

16 | that it is premature because matters affecting Mattel's ability to obtain injunctive

17 | relief may be the subject of expert testimony at trial. MGA (HK) objects to this

18 | interrogatory to the extent it seeks to limit the expert testimony that MGA (HK) may

19 | seek to introduce at trial. MGA (HK) will identify its experts and make related

20 | disclosures in accordance with the Court's orders and applicable rules.

21 |       MGA (HK) notes that the issue of injunctive relief will be decided by

22 | the Court after the conclusion of all jury deliberation relevant to the issue. MGA

23 | (HK) believes accordingly that the Court's review of injunctive relief issue will not

24 | occur until the conclusion of Phase 2.

25 |       MGA (HK) further objects on the ground that this interrogatory is an

26 | overbroad and unduly burdensome contention interrogatory to the extent it asks for

27 | "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*

28 | *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

EXHIBIT  P  PAGE 301

1  requests seeking "all facts, documents, and witnesses that support the denial of a

2  statement or allegation of fact" because the "universe of potentially responsive

3  information is almost endless").

4          MGA (HK) further objects to the extent that this interrogatory seeks

5  information that is outside MGA (HK)'s knowledge and is not in MGA (HK)'s

6  possession, custody, or control.  In particular, MGA (HK) objects to this

7  interrogatory to the extent that it requests that MGA (HK) "state *all* facts ... and

8  IDENTIFY *all* PERSONS...and *all* DOCUMENTS" (emphasis added).

9          MGA (HK) further objects to this interrogatory as it asks MGA (HK) to

10  assume facts contrary to evidence, and further asks it to base any response on an

11  incomplete and incomprehensible hypothetical scenario.  *See, e.g., Kendrick v.*

12  *Sullivan*, 125 F.R.D. 1, 3 (D. D.C. 1989) (holding that Rule 33 does not permit

13  contention interrogatories directed at hypothetical scenarios).  Whether or not Mattel

14  is or would or would not be "entitled to injunctive relief" depends on, among other

15  factual and legal factors, which specific "BRATZ INVENTION" Mattel is

16  hypothetically found to own, and whether and/or to what extent it is determined that

17  any Bratz products that have been produced and sold are derivative works of any

18  such BRATZ INVENTIONS, which information is not provided in the incomplete

19  hypothetical scenario posited in this interrogatory.  MGA (HK) also objects to this

20  interrogatory on the grounds that Mattel – not MGA (HK) – bears the burden of

21  proof to show that it is entitled to injunctive relief, if it is ultimately determined that

22  Mattel owns one or more BRATZ INVENTIONS.

23          MGA (HK) further objects to this interrogatory because Mattel has

24  propounded more than 50 interrogatories.  Under Judge Larson's order of February

25  22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

26  04049-SGL and CV 05-02727]."

27  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 32:**

28          MGA (HK) incorporates by reference its General Response and General

34

EXHIBIT  P   PAGE  302

1    Objections above, as though fully set forth herein and specifically incorporates

2    General Objection No. 7 (regarding Definitions), including but not limited to its

3    objections to the definitions of the terms BRATZ INVENTIONS, IDENTIFY and

4    REFER OR RELATE TO, and further objects on the ground that the interrogatory is

5    overbroad, unduly burdensome, vague and ambiguous both generally and

6    specifically with respect to the terms YOUR, YOU, MATTEL.  MGA (HK) also

7    objects to this interrogatory to the extent it seeks information that is not subject to

8    disclosure under any applicable privilege, doctrine or immunity, including without

9    limitation the attorney-client privilege, the work product doctrine, the right of

10   privacy, and all other privileges recognized under the constitutional, statutory or

11   decisional law of the United States of America, the State of California or any other

12   applicable jurisdiction.  MGA (HK) further objects to the interrogatory on the ground

13   that it is premature because matters affecting Mattel's ability to obtain injunctive

14   relief may be the subject of expert testimony at trial.  MGA (HK) objects to this

15   interrogatory to the extent it seeks to limit the expert testimony that MGA (HK) may

16   seek to introduce at trial.  MGA (HK) will identify its experts and make related

17   disclosures in accordance with the Court's orders and applicable rules.

18            MGA (HK) notes that the issue of injunctive relief will be decided by

19   the Court after the conclusion of all jury deliberation relevant to the issue.  MGA

20   (HK) believes accordingly that the Court's review of injunctive relief issue will not

21   occur until the conclusion of Phase 2.

22            MGA (HK) further objects on the ground that this interrogatory is an

23   overbroad and unduly burdensome contention interrogatory to the extent it asks for

24   "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*

25   *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

26   requests seeking "all facts, documents, and witnesses that support the denial of a

27   statement or allegation of fact" because the "universe of potentially responsive

28   information is almost endless").

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIESNO. CV 04-9049 SGL (RNBx)

EXHIBIT  P  PAGE  303

1    MGA (HK) further objects to the extent that this interrogatory seeks

2  information that is outside MGA (HK)'s knowledge and is not in MGA (HK)'s

3  possession, custody, or control.  In particular, MGA (HK) objects to this

4  interrogatory to the extent that it requests that MGA (HK) "state *all* facts … and

5  IDENTIFY *all* PERSONS…and *all* DOCUMENTS" (emphasis added).

6    MGA (HK) further objects to this interrogatory as it asks MGA (HK) to

7  assume facts contrary to evidence, and further asks it to base any response on an

8  incomplete and incomprehensible hypothetical scenario.  *See, e.g., Kendrick v.*

9  *Sullivan*, 125 F.R.D. 1, 3 (D. D.C. 1989) (holding that Rule 33 does not permit

10  contention interrogatories directed at hypothetical scenarios).  Whether or not Mattel

11  is or would or would not be "entitled to injunctive relief" depends on, among other

12  factual and legal factors, which specific "BRATZ INVENTION" Mattel is

13  hypothetically found to own, and whether and/or to what extent it is determined that

14  any Bratz products that have been produced and sold are derivative works of any

15  such BRATZ INVENTIONS, which information is not provided in the incomplete

16  hypothetical scenario posited in this interrogatory.  MGA (HK) also objects to this

17  interrogatory on the grounds that Mattel – not MGA (HK) – bears the burden of

18  proof to show that it is entitled to injunctive relief, if it is ultimately determined that

19  Mattel owns one or more BRATZ INVENTIONS.

20    Subject to and without waiving the foregoing objections, MGA (HK)

21  responds as follows:

22    Mattel is not entitled to injunctive relief for the following reasons:

23    (a)    Mattel is not entitled to injunctive relief in accordance with the

24  principles established by the United States Supreme Court in <u>eBay v. MercExchange</u>,

25  126 S. Ct. 1837 (2006).

26    (b)    The original concepts contributed by Bryant to the creation of the

27  Bratz dolls represent only one of the many factors that combined to make Bratz one

28  of the most successful fashion dolls on the market.  The contributions made by MGA

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIESNO. CV 04-9049 SGL (RNBx)

EXHIBIT P   PAGE 304

1    to the Bratz dolls far outweigh any contributions made by Bryant prior to October

2    21, 2000 in terms of the overall factors that contributed to the commercial success of

3    Bratz.

4              (c)    Mattel played no role in the creation and/or selection of the Bratz

5    slogan, "The Girls with a Passion for Fashion!" or the brand name "Bratz."

6              (d)    Mattel played no role in the development of the Bratz line of

7    dolls' innovative and trend-setting packaging.

8              (e)    Mattel played no role in MGA's improvements, enhancements

9    and changes to the Bratz dolls in the months and years on and/or after October 21,

10   2000.

11             (f)    Mattel played no role in MGA's development of the fashions for

12   the Bratz dolls.

13             (g)    Mattel played no role in the development of Bratz Kidz, Bratz

14   Petz, Bratz Babyz and other successful additions to the Bratz doll family.

15             (h)    Mattel played no role in the development of the myriad of

16   accessories for the Bratz dolls.

17             (i)    Mattel played no role in the development of the successful

18   themes that have enhanced the popularity of the Bratz dolls.

19             (j)    Mattel played no role in the development of the Bratz animated

20   TV series, Bratz TV commercials, or Bratz the movie.

21             (k)    Mattel played no role in the development of the Bratz brand.

22             (l)    If in 2000 Mattel had been presented with the opportunity to

23   develop Bryant's idea for a line of fashion dolls, Mattel would not have pursued said

24   opportunity because of a perceived threat to Mattel's Barbie franchise.

25             (m)    Mattel's inequitable conduct through years of efforts to eliminate

26   competition to its lines of fashion dolls.

27             (n)    Mattel's inequitable conduct through specific acts of unfair

28   competition, as previously set forth in MGA's Responses and Supplemental

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIESNO. CV 04-9049 SGL (RNBx)

EXHIBIT  P   PAGE 305

1 | Responses to Mattel's First Set of Interrogatories Re: Claims of Unfair Competition
2 | Nos. 5, 6, 8, 9 and 10.
3 |         (o)    The equitable doctrine of laches, in that Mattel intentionally
4 | delayed in taking legal action against MGA or Carter Bryant for several years in the
5 | belief that Mattel would be able to drive Bratz out of the marketplace through the
6 | introduction of a copycat line of My Scene Barbie dolls.  Mattel only took legal
7 | action well after MGA had invested substantial amounts of capital and creative and
8 | innovative human effort in the Bratz line of dolls and had experienced enormous
9 | success in the marketplace, changing the fashion doll business forever.
10 |         (p)    The statute of limitations.
11 |         The persons who have knowledge of the facts and circumstances
12 | supporting these contentions of inequitable conduct by Mattel have already been
13 | provided in MGA (HK)'s supplemental responses to Interrogatory Nos. 27, 28, and
14 | 31.
15 |         To the extent that Mattel's interrogatory could be interpreted to require
16 | MGA (HK) to identify all documents that "REFER OR RELATE TO" substantially
17 | all facets of MGA's business, these documents are too numerous to identify
18 | individually without undue burden to MGA (HK).  The following categories of
19 | documents may be relevant to these facts: Mattel's Brand Directional Outlines;
20 | analyses and assessments of Mattel's marketing strategies prepared and/or produced
21 | by Young and Rubicam Brands; Mattel's Marketing Department assessments of
22 | Mattel's advertising and branding strategies; Mattel's Creative Briefs; and publicly
23 | available documents evidencing MGA's trademarks, patents, and copyrights.
24 | **INTERROGATORY NO. 33:**
25 |         State all facts that support YOUR contention, if YOU so contend, that
26 | MATTEL is not entitled to an award of punitive or exemplary damages against
27 | YOU, and IDENTIFY all PERSONS with knowledge of such facts and all
28 | DOCUMENTS that REFER OR RELATE TO such facts.

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIES NO. CV 04-9049 SGL (RNBx)

EXHIBIT P PAGE 306

**RESPONSE TO INTERROGATORY NO. 33:**

1    MGA (HK) incorporates by reference its General Response and General

2 Objections above, as though fully set forth herein and specifically incorporates

3 General Objection No. 7 (regarding Definitions), including but not limited to its

4 objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,

5 and further objects on the ground that the interrogatory is overbroad, unduly

6 burdensome, vague and ambiguous both generally and specifically with respect to

7 the terms YOUR, YOU, and MATTEL.  In particular, by way of example, the term

8 YOU as defined by Mattel could be read to require MGA (HK) to state all facts

9 supporting why Mattel is not entitled to an award of punitive damages against each

10 of the responding parties in this litigation, thereby rendering the interrogatory

11 impermissibly compound.  MGA (HK) also objects to this interrogatory to the extent

12 it seeks information that is not subject to disclosure under any applicable privilege,

13 doctrine or immunity, including without limitation the attorney-client privilege, the

14 work product doctrine, the right of privacy, and all other privileges recognized under

15 the constitutional, statutory or decisional law of the United States of America, the

16 State of California or any other applicable jurisdiction.  MGA (HK) further objects to

17 the interrogatory to the extent it calls for a legal conclusion.

18    MGA (HK) further objects on the ground that this interrogatory is an

19 overbroad and unduly burdensome contention interrogatory to the extent it asks for

20 "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*

21 *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

22 requests seeking "all facts, documents, and witnesses that support the denial of a

23 statement or allegation of fact" because the "universe of potentially responsive

24 information is almost endless").

25    MGA (HK) further objects to the extent that this interrogatory seeks

26 information that is outside MGA (HK)'s knowledge and is not in MGA (HK)'s

27 possession, custody, or control.  In particular, MGA (HK) objects to this

28

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIESNO. CV 04-9049 SGL (RNBx)

EXHIBIT *P* PAGE 3017

1  interrogatory to the extent that it requests that MGA (HK) "state *all* facts … and

2  IDENTIFY *all* PERSONS…and *all* DOCUMENTS" (emphasis added).

3         MGA (HK) also objects to this interrogatory on the grounds that Mattel

4  – not MGA (HK) – bears the burden of proof to show that it is entitled to an award of

5  punitive or exemplary damages.

6         MGA (HK) further objects to this interrogatory because Mattel has

7  propounded more than 50 interrogatories.  Under Judge Larson's order of February

8  22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

9  04049-SGL and CV 05-02727]."

10         Subject to and without waiving the foregoing objections, MGA (HK)

11  responds as follows:  MGA (HK) is willing to meet and confer with Mattel regarding

12  this interrogatory and the obligation of Mattel to supplement its responses to MGA's

13  First Set of Interrogatories.

14  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 33:**

15         MGA (HK) incorporates by reference its General Response and General

16  Objections above, as though fully set forth herein and specifically incorporates

17  General Objection No. 7 (regarding Definitions), including but not limited to its

18  objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,

19  and further objects on the ground that the interrogatory is overbroad, unduly

20  burdensome, vague and ambiguous both generally and specifically with respect to

21  the terms YOUR, YOU, and MATTEL.  In particular, by way of example, the term

22  YOU as defined by Mattel could be read to require MGA (HK) to state all facts

23  supporting why Mattel is not entitled to an award of punitive damages against each

24  of the responding parties in this litigation, thereby rendering the interrogatory

25  impermissibly compound.  MGA (HK) also objects to this interrogatory to the extent

26  it seeks information that is not subject to disclosure under any applicable privilege,

27  doctrine or immunity, including without limitation the attorney-client privilege, the

28  work product doctrine, the right of privacy, and all other privileges recognized under

EXHIBIT P   PAGE 308

1    the constitutional, statutory or decisional law of the United States of America, the

2    State of California or any other applicable jurisdiction.  MGA (HK) further objects to

3    the interrogatory to the extent it calls for a legal conclusion.

4              MGA (HK) further objects on the ground that this interrogatory is an

5    overbroad and unduly burdensome contention interrogatory to the extent it asks for

6    "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*

7    *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

8    requests seeking "all facts, documents, and witnesses that support the denial of a

9    statement or allegation of fact" because the "universe of potentially responsive

10   information is almost endless").

11             MGA (HK) further objects to the extent that this interrogatory seeks

12   information that is outside MGA (HK)'s knowledge and is not in MGA (HK)'s

13   possession, custody, or control.  In particular, MGA (HK) objects to this

14   interrogatory to the extent that it requests that MGA (HK) "state *all* facts … and

15   IDENTIFY *all* PERSONS…and *all* DOCUMENTS" (emphasis added).

16             MGA (HK) also objects to this interrogatory on the grounds that Mattel

17   – not MGA (HK) – bears the burden of proof to show that it is entitled to an award of

18   punitive or exemplary damages.

19             Subject to and without waiving the foregoing objections, MGA (HK)

20   responds as follows:

21             Mattel is not entitled to an award of punitive or exemplary damages

22   against MGA (HK) because:  (i) Mattel does not own any rights in the Bratz dolls,

23   (ii) MGA (HK) has not violated or infringed any rights of Mattel with respect to the

24   Bratz dolls, (iii) Mattel has not shown that MGA (HK) acted in bad faith and (iv)

25   Mattel has not presented any evidence to support the requirements for such an award

26   against MGA (HK).

27   **INTERROGATORY NO. 34:**

28             State all facts that support YOUR contention, if YOU so contend, that

41

EXHIBIT P   PAGE 309

1  YOU did not intentionally interfere with the INVENTIONS AGREEMENT when

2  BRYANT purported to TRANSFER and MGA purported to ACQUIRE rights to

3  BRATZ, and IDENTIFY all PERSONS with knowledge of such facts and all

4  DOCUMENTS that REFER OR RELATE TO such facts.

5  **RESPONSE TO INTERROGATORY NO. 34:**

6            MGA (HK) incorporates by reference its General Response and General

7  Objections above, as though fully set forth herein and specifically incorporates

8  General Objection No. 7 (regarding Definitions), including but not limited to its

9  objections to the definitions of the terms INVENTIONS AGREEMENT, IDENTIFY

10  and REFER OR RELATE TO, and further objects on the ground that the

11  interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally

12  and specifically with respect to the terms YOUR, YOU, BRYANT, MGA,

13  TRANSFER and ACQUIRE.  In particular, by way of example, the term YOU as

14  defined by Mattel could be read to require MGA (HK) to state all facts supporting

15  why each of the responding parties did not "intentionally interfere with the

16  INVENTIONS AGREEMENT," thereby rendering the interrogatory impermissibly

17  compound.  MGA (HK) also objects to this interrogatory to the extent it seeks

18  information that is not subject to disclosure under any applicable privilege, doctrine

19  or immunity, including without limitation the attorney-client privilege, the work

20  product doctrine, the right of privacy, and all other privileges recognized under the

21  constitutional, statutory or decisional law of the United States of America, the State

22  of California or any other applicable jurisdiction.  MGA (HK) further objects to the

23  interrogatory to the extent it calls for a legal conclusion.

24            MGA (HK) further objects on the ground that this interrogatory is an

25  overbroad and unduly burdensome contention interrogatory to the extent it asks for

26  "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*

27  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

28  requests seeking "all facts, documents, and witnesses that support the denial of a

EXHIBIT P  PAGE 310

1    statement or allegation of fact" because the "universe of potentially responsive

2    information is almost endless").

3            MGA (HK) further objects to the extent that this interrogatory seeks

4    information that is outside MGA (HK)'s knowledge and is not in MGA (HK)'s

5    possession, custody, or control.  In particular, MGA (HK) objects to this

6    interrogatory to the extent that it requests that MGA (HK) "state *all* facts … and

7    IDENTIFY *all* PERSONS…and *all* DOCUMENTS" (emphasis added).

8            MGA (HK) further objects to this interrogatory because Mattel has

9    propounded more than 50 interrogatories.  Under Judge Larson's order of February

10   22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

11   04049-SGL and CV 05-02727]."

12   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 34:**

13           MGA (HK) incorporates by reference its General Response and General

14   Objections above, as though fully set forth herein and specifically incorporates

15   General Objection No. 7 (regarding Definitions), including but not limited to its

16   objections to the definitions of the terms INVENTIONS AGREEMENT, IDENTIFY

17   and REFER OR RELATE TO, and further objects on the ground that the

18   interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally

19   and specifically with respect to the terms YOUR, YOU, BRYANT, MGA,

20   TRANSFER and ACQUIRE.  In particular, by way of example, the term YOU as

21   defined by Mattel could be read to require MGA (HK) to state all facts supporting

22   why each of the responding parties did not "intentionally interfere with the

23   INVENTIONS AGREEMENT," thereby rendering the interrogatory impermissibly

24   compound.  MGA (HK) also objects to this interrogatory to the extent it seeks

25   information that is not subject to disclosure under any applicable privilege, doctrine

26   or immunity, including without limitation the attorney-client privilege, the work

27   product doctrine, the right of privacy, and all other privileges recognized under the

28   constitutional, statutory or decisional law of the United States of America, the State

43

EXHIBIT  *P*   PAGE  *311*

1  of California or any other applicable jurisdiction.  MGA (HK) further objects to the

2  interrogatory to the extent it calls for a legal conclusion.

3  MGA (HK) further objects on the ground that this interrogatory is an

4  overbroad and unduly burdensome contention interrogatory to the extent it asks for

5  "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*

6  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

7  requests seeking "all facts, documents, and witnesses that support the denial of a

8  statement or allegation of fact" because the "universe of potentially responsive

9  information is almost endless").

10  MGA (HK) further objects to the extent that this interrogatory seeks

11  information that is outside MGA (HK)'s knowledge and is not in MGA (HK)'s

12  possession, custody, or control.  In particular, MGA (HK) objects to this

13  interrogatory to the extent that it requests that MGA (HK) "state *all* facts … and

14  IDENTIFY *all* PERSONS…and *all* DOCUMENTS" (emphasis added).

15  Subject to and without waiving the foregoing objections, MGA (HK)

16  responds as follows:

17  This interrogatory appears to be directed at other parties to the litigation,

18  and not to MGA (HK).  MGA (HK) was not involved in Bryant's transfer of rights in

19  Bratz to MGA.  MGA acquired the rights in Bratz, and MGA will respond to this

20  interrogatory.

21  **INTERROGATORY NO. 35:**

22  State all facts that support YOUR contention, if YOU so contend, that

23  YOU did not aid or abet any breach of fiduciary duty or duty of loyalty owed by

24  BRYANT to MATTEL when BRYANT performed work or services with or for

25  MGA while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS

26  with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO

27  such facts.

28

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIESNO. CV 04-9049 SGL (RNBx)

EXHIBIT P   PAGE 312

1 | **RESPONSE TO INTERROGATORY NO. 35:**

2 |            MGA (HK) incorporates by reference its General Response and General

3 | Objections above, as though fully set forth herein and specifically incorporates

4 | General Objection No. 7 (regarding Definitions), including but not limited to its

5 | objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,

6 | and further objects on the ground that the interrogatory is overbroad, unduly

7 | burdensome, vague and ambiguous both generally and specifically with respect to

8 | the terms YOU, BRYANT, MGA and MATTEL.  In particular, by way of example,

9 | the term YOU as defined by Mattel could be read to require MGA (HK) to state all

10 | facts supporting why each of the responding parties "did not aid or abet any breach

11 | of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL," thereby

12 | rendering the interrogatory impermissibly compound.  MGA (HK) also objects to

13 | this interrogatory to the extent it seeks information that is not subject to disclosure

14 | under any applicable privilege, doctrine or immunity, including without limitation

15 | the attorney-client privilege, the work product doctrine, the right of privacy, and all

16 | other privileges recognized under the constitutional, statutory or decisional law of

17 | the United States of America, the State of California or any other applicable

18 | jurisdiction.  MGA (HK) further objects to the interrogatory to the extent it calls for

19 | a legal conclusion.

20 |            MGA (HK) further objects on the ground that this interrogatory is an

21 | overbroad and unduly burdensome contention interrogatory to the extent it asks for

22 | "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*

23 | *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

24 | requests seeking "all facts, documents, and witnesses that support the denial of a

25 | statement or allegation of fact" because the "universe of potentially responsive

26 | information is almost endless").

27 |            MGA (HK) further objects to the extent that this interrogatory seeks

28 | information that is outside MGA (HK)'s knowledge and is not in MGA (HK)'s

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIES NO. CV 04-9049 SGL (RNBx)

1  possession, custody, or control.  In particular, MGA (HK) objects to this

2  interrogatory to the extent that it requests that MGA (HK) "state *all* facts ... and

3  IDENTIFY *all* PERSONS...and *all* DOCUMENTS" (emphasis added).

4       MGA (HK) further objects to this interrogatory because Mattel has

5  propounded more than 50 interrogatories.  Under Judge Larson's order of February

6  22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

7  04049-SGL and CV 05-02727]."

8  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 35:**

9       MGA (HK) incorporates by reference its General Response and General

10 Objections above, as though fully set forth herein and specifically incorporates

11 General Objection No. 7 (regarding Definitions), including but not limited to its

12 objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,

13 and further objects on the ground that the interrogatory is overbroad, unduly

14 burdensome, vague and ambiguous both generally and specifically with respect to

15 the terms YOU, BRYANT, MGA and MATTEL.  In particular, by way of example,

16 the term YOU as defined by Mattel could be read to require MGA (HK) to state all

17 facts supporting why each of the responding parties "did not aid or abet any breach

18 of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL," thereby

19 rendering the interrogatory impermissibly compound.  MGA (HK) also objects to

20 this interrogatory to the extent it seeks information that is not subject to disclosure

21 under any applicable privilege, doctrine or immunity, including without limitation

22 the attorney-client privilege, the work product doctrine, the right of privacy, and all

23 other privileges recognized under the constitutional, statutory or decisional law of

24 the United States of America, the State of California or any other applicable

25 jurisdiction.  MGA (HK) further objects to the interrogatory to the extent it calls for

26 a legal conclusion.

27      MGA (HK) further objects on the ground that this interrogatory is an

28 overbroad and unduly burdensome contention interrogatory to the extent it asks for

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIESNO. CV 04-9049 SGL (RNBx)

EXHIBIT P PAGE 314

1 | "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*

2 | *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

3 | requests seeking "all facts, documents, and witnesses that support the denial of a

4 | statement or allegation of fact" because the "universe of potentially responsive

5 | information is almost endless").

6 | MGA (HK) further objects to the extent that this interrogatory seeks

7 | information that is outside MGA (HK)'s knowledge and is not in MGA (HK)'s

8 | possession, custody, or control.  In particular, MGA (HK) objects to this

9 | interrogatory to the extent that it requests that MGA (HK) "state *all* facts … and

10 | IDENTIFY *all* PERSONS…and *all* DOCUMENTS" (emphasis added).

11 | Subject to and without waiving the foregoing objections, MGA (HK)

12 | responds as follows:

13 | This interrogatory appears to be directed at other parties to the litigation,

14 | and not to MGA (HK).  Bryant has not performed work or services for MGA (HK).

15 | Bryant performed work for MGA, and MGA will respond to this interrogatory.

16 | **INTERROGATORY NO. 36:**

17 | State all facts that support YOUR contention, if YOU so contend, that

18 | YOU acted with an innocent state of mind or reasonably believed that MATTEL did

19 | not own any rights in any BRATZ INVENTION when BRYANT purported to

20 | TRANSFER and MGA purported to ACQUIRE rights to BRATZ, and IDENTIFY

21 | all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR

22 | RELATE TO such facts.

23 | **RESPONSE TO INTERROGATORY NO. 36:**

24 | MGA (HK) incorporates by reference its General Response and General

25 | Objections above, as though fully set forth herein and specifically incorporates

26 | General Objection No. 7 (regarding Definitions), including but not limited to its

27 | objections to the definitions of BRATZ INVENTION, IDENTIFY and REFER OR

28 | RELATE TO, and further objects on the grounds that the interrogatory is overbroad,

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIES NO. CV 04-9049 SGL (RNBx)

EXHIBIT P PAGE 315

1  unduly burdensome, vague and ambiguous both generally and specifically with

2  respect to the terms YOU, BRYANT, MGA, TRANSFER, MATTEL and

3  ACQUIRE.  In particular, by way of example, the term YOU as defined by Mattel

4  could be read to require MGA (HK) to state all facts supporting why each of the

5  responding parties "acted with an innocent state of mind," thereby rendering the

6  interrogatory impermissibly compound.  MGA (HK) also objects to this

7  interrogatory to the extent it seeks information that is not subject to disclosure under

8  any applicable privilege, doctrine or immunity, including without limitation the

9  attorney-client privilege, the work product doctrine, the right of privacy, and all other

10  privileges recognized under the constitutional, statutory or decisional law of the

11  United States of America, the State of California or any other applicable jurisdiction.

12          Subject to and without waiving the foregoing objections, MGA (HK)

13  responds as follows:  MGA (HK) is willing to meet and confer with Mattel regarding

14  this interrogatory and the obligation of Mattel to supplement its responses to MGA's

15  First Set of Interrogatories.

16  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 36:**

17          MGA (HK) incorporates by reference its General Response and General

18  Objections above, as though fully set forth herein and specifically incorporates

19  General Objection No. 7 (regarding Definitions), including but not limited to its

20  objections to the definitions of BRATZ INVENTION, IDENTIFY and REFER OR

21  RELATE TO, and further objects on the grounds that the interrogatory is overbroad,

22  unduly burdensome, vague and ambiguous both generally and specifically with

23  respect to the terms YOU, BRYANT, MGA, TRANSFER, MATTEL and

24  ACQUIRE.  In particular, by way of example, the term YOU as defined by Mattel

25  could be read to require MGA (HK) to state all facts supporting why each of the

26  responding parties "acted with an innocent state of mind," thereby rendering the

27  interrogatory impermissibly compound.  MGA (HK) also objects to this

28  interrogatory to the extent it seeks information that is not subject to disclosure under

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIESNO. CV 04-9049 SGL (RNBx)

EXHIBIT _P_ PAGE _316_

1    any applicable privilege, doctrine or immunity, including without limitation the

2    attorney-client privilege, the work product doctrine, the right of privacy, and all other

3    privileges recognized under the constitutional, statutory or decisional law of the

4    United States of America, the State of California or any other applicable jurisdiction.

5            Subject to and without waiving the foregoing objections, MGA (HK)

6    responds as follows:

7            This interrogatory appears to be directed at other parties to the litigation,

8    and not to MGA (HK).  MGA (HK) was not involved in Bryant's transfer of rights in

9    Bratz to MGA.  MGA acquired the rights in Bratz, and MGA will respond to this

10    interrogatory.

11    **INTERROGATORY NO. 37:**

12            State all facts that support YOUR contention, if YOU so contend, that

13    BRYANT did not breach the INVENTIONS AGREEMENT when BRYANT

14    purported to TRANSFER rights to BRATZ to MGA, and IDENTIFY all PERSONS

15    with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO

16    such facts.

17    **RESPONSE TO INTERROGATORY NO. 37:**

18            MGA (HK) incorporates by reference its General Response and General

19    Objections above, as though fully set forth herein and specifically incorporates

20    General Objection No. 7 (regarding Definitions), including but not limited to its

21    objections to the definitions of the terms INVENTIONS AGREEMENT, BRATZ

22    and REFER OR RELATE TO, and further objects on the ground that the

23    interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally

24    and specifically with respect to the terms YOUR, YOU, BRYANT, MGA and

25    TRANSFER.  MGA (HK) also objects to this interrogatory to the extent it seeks

26    information that is not subject to disclosure under any applicable privilege, doctrine

27    or immunity, including without limitation the attorney-client privilege, the work

28    product doctrine, the right of privacy, and all other privileges recognized under the

EXHIBIT _P_ PAGE _317_

1 | constitutional, statutory or decisional law of the United States of America, the State

2 | of California or any other applicable jurisdiction. MGA (HK) further objects to the

3 | interrogatory to the extent it calls for a legal conclusion. MGA (HK) further objects

4 | to the interrogatory on the ground that Mattel – not MGA (HK) – bears the burden of

5 | proof to show that Bryant breached the INVENTIONS AGREEMENT.

6 |        MGA (HK) further objects on the ground that this interrogatory is an

7 | overbroad and unduly burdensome contention interrogatory to the extent it asks for

8 | "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*

9 | *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

10 | requests seeking "all facts, documents, and witnesses that support the denial of a

11 | statement or allegation of fact" because the "universe of potentially responsive

12 | information is almost endless"). MGA (HK) further objects on the ground that it is

13 | an abuse of the discovery process to effectively ask a Party to prove his, her or its

14 | entire case in response to a single interrogatory. *See, e.g., Lawrence v. First Kansas*

15 | *Bank & Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.*,

16 | No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006)

17 | (ruling that interrogatory that asks defendant to "plead and prove its entire case, and

18 | to marshal all evidence, in response to one interrogatory" is overbroad and

19 | "constitutes an abuse of the discovery process").

20 |        MGA (HK) further objects to the extent that this interrogatory seeks

21 | information that is outside MGA (HK)'s knowledge and is not in MGA (HK)'s

22 | possession, custody, or control. In particular, MGA (HK) objects to this

23 | interrogatory to the extent that it requests that MGA (HK) "state *all* facts … and

24 | IDENTIFY *all* PERSONS…and *all* DOCUMENTS" (emphasis added). In

25 | responding to this interrogatory, MGA (HK) undertakes only to make a good faith,

26 | reasonable effort to summarize facts currently known to it, and reserves the right to

27 | supplement its response.

28 |        MGA (HK) further objects to this interrogatory because Mattel has

EXHIBIT P PAGE 318

1   propounded more than 50 interrogatories.  Under Judge Larson's order of February

2   22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

3   04049-SGL and CV 05-02727]."

4          Subject to and without waiving the foregoing objections, MGA (HK)

5   responds as follows:  MGA (HK) is willing to meet and confer with Mattel regarding

6   this interrogatory and the obligation of Mattel to supplement its responses to MGA's

7   First Set of Interrogatories.

8   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 37:**

9          MGA (HK) incorporates by reference its General Response and General

10  Objections above, as though fully set forth herein and specifically incorporates

11  General Objection No. 7 (regarding Definitions), including but not limited to its

12  objections to the definitions of the terms INVENTIONS AGREEMENT, BRATZ

13  and REFER OR RELATE TO, and further objects on the ground that the

14  interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally

15  and specifically with respect to the terms YOUR, YOU, BRYANT, MGA and

16  TRANSFER.  MGA (HK) also objects to this interrogatory to the extent it seeks

17  information that is not subject to disclosure under any applicable privilege, doctrine

18  or immunity, including without limitation the attorney-client privilege, the work

19  product doctrine, the right of privacy, and all other privileges recognized under the

20  constitutional, statutory or decisional law of the United States of America, the State

21  of California or any other applicable jurisdiction.  MGA (HK) further objects to the

22  interrogatory to the extent it calls for a legal conclusion.  MGA (HK) further objects

23  to the interrogatory on the ground that Mattel – not MGA (HK) – bears the burden of

24  proof to show that Bryant breached the INVENTIONS AGREEMENT.

25         MGA (HK) further objects on the ground that this interrogatory is an

26  overbroad and unduly burdensome contention interrogatory to the extent it asks for

27  "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*

28  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

EXHIBIT P    PAGE 319

1  requests seeking "all facts, documents, and witnesses that support the denial of a

2  statement or allegation of fact" because the "universe of potentially responsive

3  information is almost endless").  MGA (HK) further objects on the ground that it is

4  an abuse of the discovery process to effectively ask a Party to prove his, her or its

5  entire case in response to a single interrogatory.  *See, e.g., Lawrence v. First Kansas*

6  *Bank & Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.*,

7  No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006)

8  (ruling that interrogatory that asks defendant to "plead and prove its entire case, and

9  to marshal all evidence, in response to one interrogatory" is overbroad and

10 "constitutes an abuse of the discovery process").

11         MGA (HK) further objects to the extent that this interrogatory seeks

12 information that is outside MGA (HK)'s knowledge and is not in MGA (HK)'s

13 possession, custody, or control.  In particular, MGA (HK) objects to this

14 interrogatory to the extent that it requests that MGA (HK) "state *all* facts … and

15 IDENTIFY *all* PERSONS…and *all* DOCUMENTS" (emphasis added).  In

16 responding to this interrogatory, MGA (HK) undertakes only to make a good faith,

17 reasonable effort to summarize facts currently known to it, and reserves the right to

18 supplement its response.

19         Subject to and without waiving the foregoing objections, MGA (HK)

20 responds as follows:

21         In August or September of 1998, Carter Bryant, inspired by images he

22 was exposed to, including in the August 1998 issue of *Seventeen Magazine*, the

23 appearance of teenagers as well as other images in the public domain, had an idea for

24 a line of fashion dolls that he named Bratz.  At the same time, Bryant sketched a

25 series of drawings to illustrate his conception.  To the extent that some aspect of

26 Bryant's idea would have been protectible under patent law, there was neither a

27 conception nor reduction to practice during the period of Bryant's unemployment

28 with Mattel.  In addition, Bryant's idea for a unique approach to fashion dolls was

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIESNO. CV 04-9049 SGL (RNBx)

R    3 20

1   not covered by the "INVENTIONS AGREEMENT."

2   **INTERROGATORY NO. 38:**

3           State all facts that support YOUR contention, if YOU so contend, that

4   BRYANT did not breach BRYANT's duty of loyalty or fiduciary duties to MATTEL

5   when BRYANT performed work or services with or for MGA while BRYANT was

6   employed by MATTEL, and IDENTIFY all PERSONS with knowledge of such facts

7   and all DOCUMENTS that REFER OR RELATE TO such facts.

8   **RESPONSE TO INTERROGATORY NO. 38:**

9           MGA (HK) incorporates by reference its General Response and General

10  Objections above, as though fully set forth herein and specifically incorporates

11  General Objection No. 7 (regarding Definitions), including but not limited to its

12  objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,

13  and further objects on the ground that the interrogatory is overbroad, unduly

14  burdensome, vague and ambiguous both generally and specifically with respect to

15  the terms YOUR, YOU, BRYANT, MATTEL, MGA and BRATZ.  MGA (HK) also

16  objects to this interrogatory to the extent it seeks information that is not subject to

17  disclosure under any applicable privilege, doctrine or immunity, including without

18  limitation the attorney-client privilege, the work product doctrine, the right of

19  privacy, and all other privileges recognized under the constitutional, statutory or

20  decisional law of the United States of America, the State of California or any other

21  applicable jurisdiction.  MGA (HK) further objects to the interrogatory to the extent

22  it calls for a legal conclusion.  MGA (HK) further objects to the interrogatory on the

23  ground that Mattel – not MGA (HK) – bears the burden of proof to show that Bryant

24  breached any duties, fiduciary or otherwise, to Mattel.

25          MGA (HK) further objects on the ground that this interrogatory is an

26  overbroad and unduly burdensome contention interrogatory to the extent it asks for

27  "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*

28  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIESNO. CV 04-9049 SGL (RNBx)

EXHIBIT P PAGE 321

1   requests seeking "all facts, documents, and witnesses that support the denial of a

2   statement or allegation of fact" because the "universe of potentially responsive

3   information is almost endless").  MGA (HK) further objects on the ground that it is

4   an abuse of the discovery process to effectively ask a Party to prove his, her or its

5   entire case in response to a single interrogatory.  *See, e.g., Lawrence v. First Kansas*

6   *Bank & Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.*,

7   No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006)

8   (ruling that interrogatory that asks defendant to "plead and prove its entire case, and

9   to marshal all evidence, in response to one interrogatory" is overbroad and

10  "constitutes an abuse of the discovery process").

11          MGA (HK) further objects to the extent that this interrogatory seeks

12  information that is outside MGA (HK)'s knowledge and is not in MGA (HK)'s

13  possession, custody, or control.  In particular, MGA (HK) objects to this

14  interrogatory to the extent that it requests that MGA (HK) "state all facts … and

15  IDENTIFY all PERSONS…and all DOCUMENTS" (emphasis added).  In

16  responding to this interrogatory, MGA (HK) undertakes only to make a good faith,

17  reasonable effort to summarize facts currently known to it, and reserves the right to

18  supplement its response.

19          MGA (HK) further objects to this interrogatory because Mattel has

20  propounded more than 50 interrogatories.  Under Judge Larson's order of February

21  22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

22  04049-SGL and CV 05-02727]."

23          Subject to and without waiving the foregoing objections, MGA (HK)

24  responds as follows:  MGA (HK) is willing to meet and confer with Mattel regarding

25  this interrogatory and the obligation of Mattel to supplement its responses to MGA's

26  First Set of Interrogatories.

27  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 38:**

28          MGA (HK) incorporates by reference its General Response and General

EXHIBIT _P_ PAGE 322

1  Objections above, as though fully set forth herein and specifically incorporates
2  General Objection No. 7 (regarding Definitions), including but not limited to its
3  objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,
4  and further objects on the ground that the interrogatory is overbroad, unduly
5  burdensome, vague and ambiguous both generally and specifically with respect to
6  the terms YOUR, YOU, BRYANT, MATTEL, MGA and BRATZ.  MGA (HK) also
7  objects to this interrogatory to the extent it seeks information that is not subject to
8  disclosure under any applicable privilege, doctrine or immunity, including without
9  limitation the attorney-client privilege, the work product doctrine, the right of
10  privacy, and all other privileges recognized under the constitutional, statutory or
11  decisional law of the United States of America, the State of California or any other
12  applicable jurisdiction.  MGA (HK) further objects to the interrogatory to the extent
13  it calls for a legal conclusion.  MGA (HK) further objects to the interrogatory on the
14  ground that Mattel – not MGA (HK) – bears the burden of proof to show that Bryant
15  breached any duties, fiduciary or otherwise, to Mattel.
16       MGA (HK) further objects on the ground that this interrogatory is an
17  overbroad and unduly burdensome contention interrogatory to the extent it asks for
18  "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*
19  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery
20  requests seeking "all facts, documents, and witnesses that support the denial of a
21  statement or allegation of fact" because the "universe of potentially responsive
22  information is almost endless").  MGA (HK) further objects on the ground that it is
23  an abuse of the discovery process to effectively ask a Party to prove his, her or its
24  entire case in response to a single interrogatory.  *See, e.g., Lawrence v. First Kansas*
25  *Bank & Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.*,
26  No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006)
27  (ruling that interrogatory that asks defendant to "plead and prove its entire case, and
28  to marshal all evidence, in response to one interrogatory" is overbroad and

1  "constitutes an abuse of the discovery process").

2      MGA (HK) further objects to the extent that this interrogatory seeks

3  information that is outside MGA (HK)'s knowledge and is not in MGA (HK)'s

4  possession, custody, or control.  In particular, MGA (HK) objects to this

5  interrogatory to the extent that it requests that MGA (HK) "state all facts … and

6  IDENTIFY all PERSONS…and all DOCUMENTS" (emphasis added).  In

7  responding to this interrogatory, MGA (HK) undertakes only to make a good faith,

8  reasonable effort to summarize facts currently known to it, and reserves the right to

9  supplement its response.

10      Subject to and without waiving the foregoing objections, MGA (HK)

11  responds as follows:

12      Bryant was not a fiduciary of Mattel.  Bryant was not an officer or

13  director of Mattel.  Mattel has not proven any facts that would support its claim that

14  Bryant was a fiduciary of Mattel.  MGA (HK) responds further that Bryant did not

15  perform any services for MGA prior to signing his agreement with MGA on October

16  4, 2000.  Bryant's activities with respect to the Bratz concept prior to October 4,

17  2000, were directed to securing a commercially beneficial relationship with MGA,

18  i.e., Bryant "pitched" the concept of Bratz to MGA.  In addition, Bryant's

19  employment with Mattel was at will, and Bryant had the right to leave Mattel to join

20  a competitor, or to work for a competitor, at any time.  Any work that Bryant

21  performed relating to his Bratz ideas during the time period that he was still

22  employed by Mattel constituted lawful steps by Bryant to prepare to embark upon a

23  new career.  Isaac Larian instructed Bryant to leave Mattel immediately upon

24  executing his contract with MGA.  During the period from October 4, 2000, through

25  October 20, 2000, Bryant contributed very little to the development of what later

26  became the first generation of Bratz dolls.

27      The following persons have knowledge of the facts and circumstances

28  supporting this contention:  Isaac Larian, Carter Bryant, Victoria O'Connor, Margaret

EXHIBIT _P_ PAGE _324_

1 | Leahy, Aileen Storer, Veronica Marlow, Paula Garcia, and Anne Wang.

2 | **INTERROGATORY NO. 39:**

3 | IDENTIFY each and every bank or financial institution account that

4 | REFERS OR RELATES TO YOU, including accounts in YOUR name or for YOUR

5 | benefit, since January 1, 1999.

6 | **RESPONSE TO INTERROGATORY NO. 39:**

7 | MGA (HK) incorporates by reference its General Response and General

8 | Objections above, as though fully set forth herein and specifically incorporates

9 | General Objection No. 7 (regarding Definitions), including but not limited to its

10 | objections to the definitions of the terms IDENTIFY and REFERS OR RELATES

11 | TO, and further objects on the ground that the interrogatory is overbroad, unduly

12 | burdensome, vague and ambiguous both generally and specifically with respect to

13 | the terms YOU and YOUR. MGA (HK) also objects to this interrogatory to the

14 | extent it seeks information that is not subject to disclosure under any applicable

15 | privilege, doctrine or immunity, including without limitation the attorney-client

16 | privilege, the work product doctrine, the right of privacy, and all other privileges

17 | recognized under the constitutional, statutory or decisional law of the United States

18 | of America, the State of California or any other applicable jurisdiction. MGA (HK)

19 | further objects to this interrogatory as premature asset discovery under Federal Rule

20 | of Civil Procedure 69(a), as there is presently no judgment for the payment of money

21 | pending against MGA (HK). MGA (HK) further objects on the grounds that it is

22 | overbroad, not relevant to the claims or defenses of any party to the action and not

23 | reasonably calculated to lead to the discovery of admissible evidence.

24 | **INTERROGATORY NO. 40:**

25 | IDENTIFY each and every STORAGE DEVICE that YOU have used

26 | for any purpose which contains or contained DIGITAL INFORMATION that

27 | REFERS OR RELATES TO BRATZ prior to January 1, 2002.

28 |

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIES NO. CV 04-9049 SGL (RNBx)

EXHIBIT P PAGE 325

**RESPONSE TO INTERROGATORY NO. 40:**

1 **RESPONSE TO INTERROGATORY NO. 40:**

2          MGA (HK) incorporates by reference its General Response and General

3  Objections above, as though fully set forth herein and specifically incorporates

4  General Objection No. 7 (regarding Definitions), including but not limited to its

5  objections to the definitions of the terms IDENTIFY, REFERS OR RELATES TO

6  and BRATZ, and further objects to this interrogatory on the grounds that it is

7  overbroad, unduly burdensome, vague and ambiguous both generally and

8  specifically with respect to the terms YOU, STORAGE DEVICE and DIGITAL

9  INFORMATION.  MGA (HK) further objects to this interrogatory as compound

10  because it contains discrete subparts that require separate, distinct and multiple

11  responses.  Specifically, MGA (HK) objects to the terms IDENTIFY and STORAGE

12  DEVICE as overbroad and unduly burdensome, as Mattel's definition of this term

13  calls for responses to multiple discrete subparts.  For example, Mattel's definition of

14  the term IDENTIFY in the context of this interrogatory would require MGA (HK) to

15  provide numerous discrete facts for each STORAGE DEVICE, including:

16          (a)     the individual(s) that use or have used the STORAGE DEVICE;

17          (b)     the current location of the STORAGE DEVICE;

18          (c)     the IDENTITY of the PERSON who possesses the STORAGE

19  DEVICE or if it no longer exists, the date on which it was destroyed or disposed of;

20          (d)     the type of STORAGE DEVICE;

21          (e)     whether the STORAGE DEVICE has ever been copied or imaged

22  (and if so, the current location of each copy or image and the IDENTITY of the

23  PERSONS who possess such copies or image);

24          (f)     the date(s) on which such copies or images were made;

25          (g)     the manufacturer name, brand, model name, model number, and

26  serial number of the STORAGE DEVICE;

27          (h)     the technical specifications and capacities of such STORAGE

28  DEVICE.

EXHIBIT P PAGE 326

1        In addition, Mattel's definition of YOU could be read to require MGA

2   (HK) to provide the foregoing information about STORAGE DEVICES belonging to

3   each of the responding parties.

4        MGA (HK) also objects to this interrogatory to the extent it seeks

5   information that is not subject to disclosure under any applicable privilege, doctrine

6   or immunity, including without limitation the attorney-client privilege, the work

7   product doctrine, the right of privacy, and all other privileges recognized under the

8   constitutional, statutory or decisional law of the United States of America, the State

9   of California or any other applicable jurisdiction.  MGA (HK) further objects to the

10  interrogatory on the ground that it is premature because the invention, creation,

11  conception, or reduction to practice of Bratz (and related issues) will be the subject

12  of expert testimony at trial.  MGA (HK) objects to this interrogatory to the extent it

13  seeks to limit the expert testimony that MGA (HK) may seek to introduce at trial.

14  MGA (HK) will identify its experts and make related disclosures in accordance with

15  the Court's orders and applicable rules.  MGA (HK) further objects to the extent that

16  this interrogatory seeks information that is outside of MGA (HK)'s knowledge and is

17  not in MGA (HK)'s possession, custody or control.

18       MGA (HK) further objects to this interrogatory because Mattel has

19  propounded more than 50 interrogatories.  Under Judge Larson's order of February

20  22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

21  04049-SGL and CV 05-02727]."

22       Subject to and without waiving the foregoing objections, MGA (HK)

23  responds as follows:  MGA (HK) is willing to meet and confer with Mattel regarding

24  this interrogatory and the obligation of Mattel to supplement its responses to MGA's

25  First Set of Interrogatories.

26  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 40:**

27       MGA (HK) incorporates by reference its General Response and General

28  Objections above, as though fully set forth herein and specifically incorporates

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIES NO. CV 04-9049 (SGL)(RNBx)

EXHIBIT _P_   PAGE _27_

1 General Objection No. 7 (regarding Definitions), including but not limited to its

2 objections to the definitions of the terms IDENTIFY, REFERS OR RELATES TO

3 and BRATZ, and further objects to this interrogatory on the grounds that it is

4 overbroad, unduly burdensome, vague and ambiguous both generally and

5 specifically with respect to the terms YOU, STORAGE DEVICE and DIGITAL

6 INFORMATION.   MGA (HK) further objects to this interrogatory as compound

7 because it contains discrete subparts that require separate, distinct and multiple

8 responses.  Specifically, MGA (HK) objects to the terms IDENTIFY and STORAGE

9 DEVICE as overbroad and unduly burdensome, as Mattel's definition of this term

10 calls for responses to multiple discrete subparts.  For example, Mattel's definition of

11 the term IDENTIFY in the context of this interrogatory would require MGA (HK) to

12 provide numerous discrete facts for each STORAGE DEVICE, including:

13        (a)    the individual(s) that use or have used the STORAGE DEVICE;

14        (b)    the current location of the STORAGE DEVICE;

15        (c)    the IDENTITY of the PERSON who possesses the STORAGE

16 DEVICE or if it no longer exists, the date on which it was destroyed or disposed of;

17        (d)    the type of STORAGE DEVICE;

18        (e)    whether the STORAGE DEVICE has ever been copied or imaged

19 (and if so, the current location of each copy or image and the IDENTITY of the

20 PERSONS who possess such copies or image);

21        (f)    the date(s) on which such copies or images were made;

22        (g)    the manufacturer name, brand, model name, model number, and

23 serial number of the STORAGE DEVICE;

24        (h)    the technical specifications and capacities of such STORAGE

25 DEVICE.

26        In addition, Mattel's definition of YOU could be read to require MGA

27 (HK) to provide the foregoing information about STORAGE DEVICES belonging to

28 each of the responding parties.

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIESNO. CV 04-9049 SGL (RNBx)

EXHIBIT  P    PAGE   328

1    MGA (HK) also objects to this interrogatory to the extent it seeks
2    information that is not subject to disclosure under any applicable privilege, doctrine
3    or immunity, including without limitation the attorney-client privilege, the work
4    product doctrine, the right of privacy, and all other privileges recognized under the
5    constitutional, statutory or decisional law of the United States of America, the State
6    of California or any other applicable jurisdiction. MGA (HK) further objects to the
7    interrogatory on the ground that it is premature because the invention, creation,
8    conception, or reduction to practice of Bratz (and related issues) will be the subject
9    of expert testimony at trial. MGA (HK) objects to this interrogatory to the extent it
10   seeks to limit the expert testimony that MGA (HK) may seek to introduce at trial.
11   MGA (HK) will identify its experts and make related disclosures in accordance with
12   the Court's orders and applicable rules. MGA (HK) further objects to the extent that
13   this interrogatory seeks information that is outside of MGA (HK)'s knowledge and is
14   not in MGA (HK)'s possession, custody or control.

15          Subject to and without waiving the foregoing objections, MGA (HK)
16   responds as follows:

17          With respect to North America prior to January 1, 2002, MGA
18   maintained several Snap servers in Los Angeles containing mostly graphic art files.
19   The servers are no longer in service but are currently archived at MGA's Southern
20   California facility. MGA Art Department personnel also used Macintosh desktops
21   and laptops that linked to the snap servers which may have contained files referring
22   to Bratz. Files created with accounting and other back office software applications
23   were saved on sequel servers located in Los Angeles via an application called "Great
24   Plains." MGA personnel's emails were located on an exchange server, also housed
25   in Los Angeles. MGA employees save all company related work files on a file
26   server called the "U Drive," which is also used by MGA (HK) employees. This
27   Drive is still in production and has been upgraded to a Netapp Storage System.
28          With respect to MGA's offices in Hong Kong prior to January 1, 2002,

EXHIBIT P   PAGE 329

1  MGA (HK) Art Department personnel utilized Macintosh desktops that linked to a

2  few file servers housed in Hong Kong to store graphic files.  MGA (HK) personnel

3  connected to the "Great Plains" sequel server located in Southern California.  MGA

4  (HK) maintained its own exchange server in Hong Kong for emails to and from

5  MGA (HK) employees.

6  **INTERROGATORY NO. 41:**

7          IDENTIFY all PERSONS who at any time have been employed by or

8  under contract with MATTEL who are now or have been employed by or under

9  contract with YOU since January 1, 1999, and, for each such PERSON, state his or

10  her name, date of hire or effective date of contract, the date on which YOU first had

11  contact with such PERSON regarding potential employment or contracting, the

12  date(s) on which such PERSON was interviewed for possible employment or

13  contracting, each title (if any) such PERSON has held while employed by or under

14  contract with YOU, and the date of termination (if applicable).

15  **RESPONSE TO INTERROGATORY NO. 41:**

16          MGA (HK) incorporates by reference its General Response and General

17  Objections above, as though fully set forth herein and specifically incorporates

18  General Objection No. 7 (regarding Definitions), including but not limited to its

19  objections to the definitions of the term IDENTIFY and further objects to this

20  interrogatory on the grounds that it is overbroad, unduly burdensome, vague and

21  ambiguous both generally and specifically with respect to the terms YOU.  MGA

22  (HK) also objects to this interrogatory to the extent it seeks information that is not

23  subject to disclosure under any applicable privilege, doctrine or immunity, including

24  without limitation the attorney-client privilege, the work product doctrine, the right

25  of privacy, and all other privileges recognized under the constitutional, statutory or

26  decisional law of the United States of America, the State of California or any other

27  applicable jurisdiction.

28          Subject to and without waiving the foregoing objections, MGA (HK)

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIES NO. CV 04-9049 SGL (RNBx)

EXHIBIT P    PAGE 330

1  responds as follows:  MGA (HK) is willing to meet and confer with Mattel regarding

2  this interrogatory and the obligation of Mattel to supplement its responses to MGA's

3  First Set of Interrogatories.

4  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 41:**

5      MGA (HK) incorporates by reference its General Response and General

6  Objections above, as though fully set forth herein and specifically incorporates

7  General Objection No. 7 (regarding Definitions), including but not limited to its

8  objections to the definitions of the term IDENTIFY and further objects to this

9  interrogatory on the grounds that it is overbroad, unduly burdensome, vague and

10  ambiguous both generally and specifically with respect to the terms YOU.  MGA

11  (HK) also objects to this interrogatory to the extent it seeks information that is not

12  subject to disclosure under any applicable privilege, doctrine or immunity, including

13  without limitation the attorney-client privilege, the work product doctrine, the right

14  of privacy, and all other privileges recognized under the constitutional, statutory or

15  decisional law of the United States of America, the State of California or any other

16  applicable jurisdiction.

17      Subject to and without waiving the foregoing objections, MGA (HK)

18  responds as follows:  the following is a list of all former Mattel employees who have

19  been employed by MGA, MGA (HK) or MGAE de MEXICO S.R.L. de C.V. since

20  January 1, 1999:

21

| ACTIVE EMPLOYEES | MGA POSITION | DATES |
|---|---|---|
| Abundis, Ricardo | Dir. of Inventory/Customer Finance | 12/01/04-Present |
| Bate, Ian | Quality Assurance Mgr. | 7/31/06-Present |
| Black, Nanette | SVP, HR | 2/12/07 -Present |
| Bloodworth III, John E. | Prod. Mgr., Games | 08/21/06-Present |
| Bloomfield, Kevin | Sr. Designer | 11/25/02-Present |

EXHIBIT P  PAGE 331

| ACTIVE EMPLOYEES | MGA POSITION | DATES |
|---|---|---|
| Brawer, Ron | President, Sales, Marketing & Strategic Planning | 10/05/04-Present |
| Brisbois, Janine (CANADA) | VP Nat'l Accts. | 10/04/05-Present |
| Castilla, Jorge | Mgr. Sales Planning | 04/03/06-Present |
| Chang, Suzy | Sr. Development Designer | 08/28/06-Present |
| Cheng, Steve | Sr. Designer | 04/08/02-Present |
| Cody Jr, Gerry | Sr. Designer - Boys Toys | 11/20/06-Present |
| Contreras, Nick | VP Customer Marketing | 11/29/04-Present |
| Cooney Jr., Daniel | VP National Account Mgr. | 05/15/06-Present |
| De La Cruz, Maria | Fashion Design Mgr., Style Guides | 2/12/07 -Present |
| Dixon, Karen | Sr. Producer | 2/19/07 -Present |
| Domingo, Luisito H | Sr. Prelim Dolls Designer | 07/07/03-Present |
| Dominguez, Greg Paul | Prod. Designer | 04/01/02-Present |
| Feldman, Joe | Design Engineer | 12/08/04-Present |
| Forrest, Craig | Prod. Mgr., Games | 5/15/06-Present |
| Garcia, Mia | Dev. Designer | 2/23/05-Present |
| Garcia, Paula | VP Girls Toy Prod. Dev. | 04/17/00-Present |
| Gonzalez, Eduardo | Sr. Dir. of Quality Assurance; | 10/16/06-Present; |
| | Quality Assurance Mgr. | 1/3/05-8/18/05 |
| Hall, Tracy | Sr. Dir. of Prod. Dev., CE/YE | 08/07/06 -Present |
| Hansen, Melody | Face Painter | 03/13/06-Present |
| Hansen, Todd | Packaging Engineer | 5/2/05-Present |
| Hatch, Jill | Sr. Dir., National Sales | 09/18/06 -Present |

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIESNO. CV 04-9049 SGL (RNBx)

EXHIBIT P   PAGE 332

| ACTIVE EMPLOYEES | MGA POSITION | DATES |
|---|---|---|
| Hinh, Michael | Mgr. Category Adv. | 6/28/05- Present |
| Hsu, Janet | SVP Non Toys Prod. Dev. & Licensing | 3/9/05- Present |
| Kao, Alice | Cust. Marketing Mgr. - Hong Kong Office | 2/21/05- Present |
| Kaufman, Ken | Advertising Exec. | 01/03/05- Present |
| Keller, Pamela E | VP Supply Chain & Operations | 09/25/06 - Present |
| Keossian, Alejandro Gabriel | Gr. Designer | 08/11/03- Present |
| Kim (Lee), Joyce | Sr. Playset Designer | 2/23/05- Present |
| Kim, Young Ran | Sample Maker Specialist | 01/15/04- Present |
| Kirst, Kristen | Hair Designer | 03/31/03- Present |
| Komatsu, Ellen | Sr. Prelim Dolls Designer | 08/25/03- Present |
| Larson, Jill | Sales Associate | 12/20/06- Present |
| Law, Adrian (Chi Shing) | Dev. Design Mgr. | 05/01/06- Present |
| Lumabao, Bo | Prod. Mgr. | 2/14/05- Present |
| Marks, Dorothy | Sample Maker Specialist | 07/26/05- Present |
| Martin, Raymond John | Prod. Mgr. of Consumer Electronics | 02/23/04- Present |
| Min, Aye Aye | Hair Designer | 04/17/06- Present |
| Nakamura, Yumi | Mgr. of Style Guides | 1/22/07- Present |
| Natareno, Marvin | Jr. Project Analyst | 01/03/07- Present |
| Nigoghossian, Christine | Sr. Doll Designer | 04/25/05- Present |
| Ochoa, Laura | Trade Marketing Mgr. | 09/01/04- Present |
| Palijo, Amelia Ivy Arafiles | Sr. Sculptress | 02/23/04- Present |
| Pestonji, Danny | Dir. Prod. Dev. Preschool | 06/01/04- Present |
| Phelan, Denise | Sample Maker Specialist | 01/18/05- Present |

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIES NO. CV 04-9049 SGL (RNBx)

EXHIBIT P   PAGE 333

| ACTIVE EMPLOYEES | MGA POSITION | DATES |
|---|---|---|
| Phoosopha, Poottipong | Face Painter | 12/08/03-Present |
| Pickard, Michael | Sr. Project Packaging Engineer | 03/22/04-Present |
| Rae, Ronald | SVP, National Account Sales | 03/12/07-Present |
| Ratleff, Leland | Sr. HR Dir. | 12/04/06-Present |
| Ronquillo, Desiree Elisabeth | Sr. Dev. Designer | 05/03/04-Present |
| Ruiz, Micaela | Sample Maker Specialist | 2/13/06-Present |
| Sasic-Koetsier, Natasha | Illustrator | 06/01/04-Present |
| Salazar, Maria Elena | Sample Maker Supervisor | 03/31/03-Present |
| Salemnia, Shirin | Research Mgr. | 02/17/03-Present |
| Scott, Harvey | Sample Maker Specialist | 08/01/05-Present |
| Smith, Steffen J. | Dir. of Package Dev. | 10/13/03-Present |
| Su, Jier | Dir. of Prod. Planning | 8/16/05-Present |
| Soai, Dennis | Dolls Dev. Design Mgr. | 03/04/02-Present |
| Thompson, Marla | Sample Sourcing & Procurement Mgr. | 04/04/05-Present |
| Tran, Chau Ngoc | Sample Maker Specialist | 05/10/04-Present |
| Trueba, Mariana | Marketing Mgr. | 04/26/04-Present |
| Umana, Esteban | Quality Engineer | 03/19/07-Present |
| Upshaw, Gail | Sample Maker Specialist | 5/23/05-Present |
| Vargas, Pablo | Dir. Sales | 04/26/04-Present |
| Wang, Chang-Chin | Assoc. Face Designer | 05/03/04-Present |
| Ward, Lance | Structural Engineer | 08/02/04-Present |
| Whittaker, Dawn | Sr. Prod. Designer | 12/06/04-Present |
| Wong, Jenny | Sr. Gr. Designer | 09/09/02-Present |

MGA HK'S SUPPL. RESPONSES TO MATTEL'S REVISED 3RD SET OF INTERROGATORIES NO. CV 04-9049 SGL (RNB)

EXHIBIT P PAGE 334

| CURRENT MGA INDEPENDENT CONTRACTORS/FREELANCERS/TEMPS | MGA POSITION | DATES |
|---|---|---|
| Augborne, Troy | Structural Engineer (Temp) | 2/26/07 – 3/2/07, 4/16/07 – Present |
| Bryant, Carter | Prod. Designer/Independent Contractor | |
| Zetino, Reyna | Samplemaker, Temp Assignment | 04/13/07 – Present |

| FORMER EMPLOYEES/FREELANCERS | MGA POSITION | DATES |
|---|---|---|
| Aryapour, Daryoush | Creative Ser. Dir. | 10/25/99-04/14/00 |
| Aguilar, Lourdes | Brand Mgr. | 9/01/04-6/11/06 |
| Blaser, Janet | Dev. Designer | 06/14/04-09/10/04 |
| Bower Violette, Mari Joanne | Prod. Mgr. | 10/13/03-03/10/06 |
| Brown, Lilia | Gr. Designer | 03/31/03-05/05/05 |
| Burlando, Gabriella | Prod. Mgr. | 03/5/02-06/27/06 |
| Chonavel, Fabienne | Marketing Mgr. | 04/10/02-08/23/02 |
| Dailey, Christine | VP Prod. Dev. | 05/07/01-11/22/02 |
| Feicht, Steve | Artist/Jr. Designer Freelancer | 07/18/02-Unknown |
| Gillmour, Kami | VP Marketing | 05/24/99-07/14/00 |
| Hardouin, Christopher | Project Mgr. | 06/04/01-07/23/04 |
| Hitch, Martin | VP Int'l Sales | 01/04/01-06/04/02 |
| Ho, Jeff | Sr. Prod. Artist Freelancer | Unknown-10/04 |
| Huntley, James | Independent Contractor – Miuchiz; VP Marketing | 08/17/06 – Unknown; 5/23/05-08/16/06 |
| Kagan, Randi | Marketing Dir. | 09/23/02-07/22/03 |

67

EXHIBIT P    PAGE 335

| FORMER EMPLOYEES/FREELANCERS | MGA POSITION | DATES |
|---|---|---|
| Koch, Andreas | Prod. Mgr. | 10/18/99–01/11/01 |
| Leahy, Margaret | Sr. Sculptor | Temp To Perm. Eff. 4/4/05 – 03/06/07 |
| Mayer, Lyn Carol | Fabric Artist | 07/21/03–05/05/05 |
| McBride, Susan | Prod. Dir., Games | 06/03/02–01/25/07 |
| Mils, Frank | Mgr. of Quality Assurance | 03/20/06–07/07/06 |
| Nguyen, Xuanlan T | Pattern Maker | 05/19/03–01/03/05 |
| O'Brien, Gary Thomas | Field Sales Dir. | 05/10/04–07/22/04 |
| Otero, Jose | Web Designer | 08/11/03–2/1/06 |
| Owen, Dan | Sr. Playset Mgr. | 08/23/04–12/13/05 |
| Parasole, Nicolletta | Gr. Designer | 01/05/04–6/27/05 |
| Parkinson, Ana Mancia | Dev. Designer | 05/10/04–01/03/07 |
| Rambeau, Roger | VP Operations | 05/13/96–04/03/98 |
| Ramirez, Andrea | Key Account Mgr. | 04/05/05–12/12/06 |
| Reed, Wendy | Soft Goods Spec. | 11/06/00–01/12/01 |
| Reyes, Scot Anthony | Sm. Doll Designer | 05/23/04–3/11/05 |
| Rhee, Anna | Doll Face Design Freelancer | 1/4/07 – 2/13/07 |
| Ross, Lon | Marketing Dir. | 11/13/00–08/03/01 |
| Schwartz, Dena | Sr. Prod. Mgr. | 05/21/01–04/08/02 |
| Shaver, Brandi | Gr. Designer | 05/03/04–06/30/06 |
| Stinnett, Holly | Sr. Brand Mgr. | 07/21/03–1/12/05 |
| Tawil, Lisa | Licensing Coord. | 04/08/02–07/18/03 |
| Terry, Gord | Dir. of Sales | 10/01/01–06/06/02 |

68

EXHIBIT P   PAGE 336

| FORMER EMPLOYEES/FREELANCERS | MGA POSITION | DATES |
|---|---|---|
| Ward, Mercedeh | Sr. Prod. Designer | 10/00-1/01; 3/7/05-8/5/05 |
| Whitaker, Joseph | Consultant | 11/05/96-03/97 |
| Williams, Patrick | SVP Sales | 01/07/01-05/29/01 |
| Wong, Tong | Dev. Designer | 03/10/03-05/16/03 |
| Wright, Cherrise | Soft Goods Mgr. | 05/03/04-8/24/05 |
| Zbojniewicz, Dave | Dir. Bus. Planning/Independent Contractor | 04/04-09/04 |

DATED:  November 30, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____

Thomas J. Nolan

Attorneys for Counter-Defendants, MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) Ltd., and MGAE de MEXICO S.R.L. de C.V.

69

EXHIBIT P   PAGE 337

**Exhibit  Q**

# THIS DOCUMENT HAS BEEN MARKED <u>CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER</u> AND IS THEREFORE SUBMITTED HEREWITH SEPARATELY UNDER SEAL.

Exhibit R

# THIS DOCUMENT HAS BEEN MARKED <u>CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER</u> AND IS THEREFORE SUBMITTED HEREWITH SEPARATELY UNDER SEAL.

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:   (415) 774-2611
4   Facsimile:   (415) 982-5287

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12  CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
13             Plaintiff,

14        v.                               Consolidated with
                                           Case No. CV 04-09059
15  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16             Defendant.                  **ORDER RE MATTEL'S MOTIONS TO
                                           COMPEL FARHAD LARIAN, KAYE
17                                         SCHOLER AND STERN &
                                           GOLDBERG TO PRODUCE
18                                         DOCUMENTS**

19  CONSOLIDATED WITH
20  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v. MATTEL,
21  INC.

22

23

24                      I. INTRODUCTION

25        The following motions are pending for decision, each of which seeks discovery from non-

26  parties:  Mattel, Inc.'s ("Mattel") (1) Motion to Compel Farhad Larian to Produce Documents; (2)

27  Motion to Compel Kaye Scholer to Produce Documents; and (3) Motion to Compel Stern &

28
    Bryant v. Mattel, Inc.,                                              1
    CV-04-09049 SGL (RNBx)

                            **EXHIBIT ___S___ PAGE _366_**

1   Goldberg to Produce Documents. Each of the non–parties submitted oppositions.[1]  In addition,

2   MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de

3   Mexico S.R.L. de C.V. (collectively "MGA") submitted oppositions to the motions.  Mattel

4   submitted a consolidated reply on January 3, 2008.  The motions were heard on January 16, 2008,

5   at which time Mattel agreed to hold in abeyance its Motion to Compel Stern & Goldberg to

6   Produce Documents.  This Order, therefore, addresses only Mattel's motions to compel Farhad

7   Larian and Kaye Scholer to produce documents.

8            On January 22, 2008, the parties submitted a Stipulation Regarding Protective Orders to

9   facilitate production of documents responsive to the subpoenas at issue.

10                                    II. BACKGROUND

11           Since the inception of MGA in 1979 until December of 2000, Isaac Larian, a defendant

12   herein and MGA's CEO, and his brother Farhad Larian, a non-party, shared ownership and

13   management of MGA.  A dispute developed between the two brothers and in March of 2000,

14   Isaac Larian proposed that Farhad Larian sell his interest in MGA to him.

15           On September 28, 2000, the Larian brothers agreed to have their uncle, Morad Zarabi,

16   arbitrate their dispute and decide a fair value for MGA and also decide which brother should sell

17   his ownership interest to the other.  The brothers' agreement to arbitrate was entered into ten days

18   after the alleged effective date of Carter Bryant's contract purportedly assigning rights to Bratz to

19   MGA.  Isaac Larian did not tell his brother about the contract with Bryant.

20           Mr. Zarabi retained an appraiser, Ernest Dutcher, to value MGA based on "the period

21   ending December 31, 1999."  By December 4, 2000, Mr. Zarabi determined that Farhad Larian

22   should sell his 45% ownership interest in MGA to Isaac Larian and the two entered into an

23   Agreement for Sale of Stock by which Farhad Larian sold his interest for $8.775 million.

24

25

26   _____

27   [1] Mattel contends that Kaye Scholer's opposition was not timely filed and therefore should not be
     considered.  Although the opposition was ten days late, Kaye Scholer's brief will nevertheless be considered in the
     interest of resolving these disputes on the merits.

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                           2

                              EXHIBIT  S   PAGE  367

1    In the summer of 2002, Farhad Larian complained to Mr. Zarabi that Isaac Larian had
2    allegedly fraudulently concealed Bratz during the negotiations that led to Farhad Larian's sale of
3    MGA stock. Mr. Zarabi oversaw another appraisal of MGA based upon information he gathered
4    in 2002. Mr. Dutcher produced an appraisal on February 13, 2003 that valued MGA as of
5    December 31, 2000 and projected a 2001 revenue growth rate of twenty-five percent (25%) based
6    upon "hot projects that came along." Mattel's Motion at p.4, Ex. 8 to Decl. of Juan Pablo Albán.
7    Other information relied upon by Mr. Dutcher suggests that MGA had expansionary plans in 2000
8    compared to the prior four years.

9    Unable to resolve his disputes through Mr. Zarabi, Farhad Larian sued Isaac Larian,
10   alleging, among other things, that (a) in late 1999 or early 2000, Isaac Larian and MGA became
11   aware of a new product line called Bratz; (b) starting in early 2000 and throughout 2000, Isaac
12   Larian and MGA devised plans to develop and distribute Bratz; and (c) Isaac Larian concealed the
13   plans for Bratz from Farhad Larian and Mr. Zarabi in order to keep the valuation of MGA
14   artificially low. Notably, MGA and Bryant claim in the instant lawsuit that they did not even
15   meet until September 2000.

16   Isaac Larian successfully moved to compel arbitration of Farhad Larian's claims. In early
17   February 2005, Mr. Zarabi declined to serve as arbitrator and the court appointed another
18   arbitrator. A few weeks later, Farhad Larian filed suit against Mr. Zarabi alleging that he
19   conspired with Isaac Larian to conceal facts.

20   The arbitration of Farhad Larian's claims started on November 16, 2005. Two days into
21   the proceedings, however, Farhad Larian dismissed his claims. Isaac Larian sought to recover his
22   attorneys' fees and won an award in excess of $1 million against his brother.

23   Mattel Subpoenas Farhad Larian to Produce Documents

24   On August 31, 2007, Mattel subpoenaed Farhad Larian to appear for deposition and to
25   produce (1) documents relating to the Larian v. Larian disputes; (2) documents related to non-
26   Bratz allegations by Mattel and MGA, primarily related to allegations of trade secret theft; (3)
27   documents relating to Farhad Larian's relationship to MGA, including his position there,

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __S__ PAGE __368__[3]

1  ownership interests, and payments from MGA or Isaac Larian to Farhad Larian; (4) Farhad

2  Larian's knowledge and possession of documents specifically from the instant lawsuit, including

3  his communications with Mattel; and (5) information about the location of responsive documents.

4  The majority of Mattel's requests seek documents in the first category described above.

5         On September 21, 2007, Farhad Larian served responses and objections in which he

6  agreed to produce documents responsive to eleven of Mattel's forty-one document requests.

7  After a brief stay of discovery, counsel for Farhad Larian and Mattel met and conferred beginning

8  on November 20, 2007.  During the meet and confer process, Farhad Larian agreed to produce

9  documents responsive to some, but not all of Mattel's forty-one requests.  On November 21,

10  2007, Farhad Larian produced approximately one red well of documents.

11         The parties held a second meet and confer conference call on November 27, 2007, and

12  were able to resolve their disputes regarding many more, but not all requests.  In particular, the

13  parties were ultimately able to resolve their disputes regarding the requests for documents related

14  to non-Bratz allegations.  At the conclusion of the second meet and confer session, it was agreed

15  that Farhad Larian would make a supplemental production of documents on December 6, 2007,

16  and provide a written supplemental response.  The parties attempted to schedule another meet and

17  confer session, but could not agree upon a date.  On the evening of December 6, 2007, Mattel

18  filed the instant motion.  Mattel seeks an order compelling Farhad Larian to produce documents

19  responsive to every request in its subpoena; overruling each of Farhad Larian's objections; and

20  ordering him to produce a document-by-document privilege log.

21  <u>Mattel Subpoenas Isaac Larian's Attorney – Kaye Scholer</u>

22         On or about September 6, 2007, Mattel also subpoenaed Kaye Scholer, the firm that

23  represented Isaac Larian in the <u>Larian v. Larian</u> proceedings.  The subpoena consisted of thirty-

24  five (35) requests seeking the same five categories of documents it subpoenaed from Farhad

25  Larian.  Kaye Scholer's representation of Isaac Larian included defending him in two related

26  Superior Court actions, two arbitration proceedings and an appeal to the California Court of

27  Appeals, all of which covered a period of several years.  As a result of this representation Kaye

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT __S__ PAGE __369__

1  Scholer has accumulated approximately fifty-six (56) boxes of its client's files, including, among

2  other things, correspondence files, pleading files, discovery files, witness preparation files,

3  research files, exhibits, attorney work files, and billing files.

4       On or about September 18, 2007, Kaye Scholer served its objections, asserting, among

5  other things, that the requests are duplicative, unreasonably cumulative, harassing and oppressive.

6  The parties met and conferred on October 11 and 29, 2007.  Kaye Scholer agreed to review the

7  following files for responsive documents:  (1) pleading files; (2) discovery files; and (3)

8  arbitration exhibits.  Kaye Scholer's rationale for limiting its search for responsive documents to

9  these three files was to avoid undue burden because most of the documents in other files would be

10  protected by the work product doctrine and/or the attorney-client privilege.  Kaye Scholer also

11  agreed to produce documents responsive to the majority of Mattel's requests.  However, Kaye

12  Scholer repeatedly informed Mattel that it objected to producing a document-by-document

13  privilege log because it would be unduly burdensome, expensive and inconvenient.

14       In the instant motion, Mattel seeks an order compelling Kaye Scholer to produce

15  documents responsive to every request in its subpoena and overruling Kaye Scholer's objections,

16  including privilege, or alternatively, compelling Kaye Scholer to produce a document-by-

17  document privilege log.

18  <u>Mattel's Other Discovery Efforts</u>

19       Mattel has attempted to obtain documents related to the <u>Larian v. Larian</u> proceedings from

20  MGA and Isaac Larian.  As far as Mattel can ascertain, however, MGA has produced only four

21  documents relating to the <u>Larian v. Larian</u> proceedings and Isaac Larian has produced none.

22       Mattel also searched public filings in the <u>Larian v. Larian</u> and <u>Larian v. Zarabi et al.</u> civil

23  lawsuits.  Mattel found Mr. Dutcher's declaration that included the appraisals described above,

24  however, Mattel was not able to locate any of the raw data on which Mr. Dutcher relied.  Mattel

25  also served subpoenas on third parties involved in the <u>Larian v. Larian</u> proceedings, and met with

26  limited success.

27  //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___S___ PAGE ___370___

Case 2:04-cv-09049-DOC-RNB   Document 2022-6   Filed 02/08/08   Page 51 of 80   Page ID
#:30581
Case 2:04-cv-09049-SGL-RNB      Document 1699      Filed 01/28/2008      Page 6 of 21

1                     III. STANDARDS

2         Rule 45 of the Federal Rules of Civil Procedure requires third parties to produce

3   documents (and reasonably accessible electronically stored information) that are responsive to a

4   subpoena that a party serves on them.  Fed.R.Civ.P. 45(b), (d).  If the subpoenaed documents are

5   relevant and there is good cause for their production, the subpoena is enforced unless the

6   documents are privileged or the subpoena is unreasonable, oppressive, annoying or embarrassing.

7   The factors to be balanced by the trial court in determining the propriety of a subpoena are the

8   relevance of the discovery sought, the requesting party's need, and the potential hardship to the

9   party subject to the subpoena.  A person withholding subpoenaed information under a claim of

10  attorney-client privilege or protected by the work product doctrine must expressly make the claim

11  and "describe the nature of the withheld documents, communications, or tangible things in a

12  manner that, without revealing information itself privileged or protected, will enable the parties to

13  assess the claim."  Fed.R.Civ.P. 45(d)(2).

14        Rule 45(c)(1), Fed.R.Civ.P., provides that "[a] party or attorney responsible for issuing

15  and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on

16  a person subject to the subpoena."  Furthermore, "[t]he issuing court must enforce this duty and

17  impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--

18  on a party or attorney who fails to comply."  Id.

19                    IV. DISCUSSION

20  A.  Documents Subpoenaed from Farhad Larian

21        Mattel contends that each of the categories of documents it seeks from Farhad Larian is

22  relevant and that there is good cause for production.  First, Mattel contends that the Larian v.

23  Larian proceedings are relevant because Farhad Larian's allegations about the timing of the

24  origins and early development of Bratz and MGA's concealment thereof parallel and provide

25  support for the crux of Mattel's claims in the instant litigation.  Second, Mattel contends that

26  documents about Farhad Larian's relationship with MGA are relevant to his credibility.  In

27  particular, Mattel contends that payments from Isaac Larian and/or MGA to Farhad Larian are

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT __S__   PAGE __371__

1    relevant to credibility and possible bias.  Third, Mattel contends that documents relating to this

2    action are clearly relevant, especially in light of MGA and Isaac Larian's threat to disqualify

3    Mattel's counsel based upon purported communications between Mattel's counsel and Farhad

4    Larian.  Fourth, Mattel contends that it seeks information about the location of responsive

5    documents to determine whether Farhad Larian destroyed documents or for another reason no

6    longer has them.

7           Mattel next contends that Farhad Larian has failed to carry his burden of demonstrating

8    that the requests at issue are unreasonable, oppressive, annoying or embarrassing.  Further, Mattel

9    contends that the protective order in place in this lawsuit is sufficient to address Farhad Larian's

10   confidentiality or privacy concerns.  Lastly, Mattel contends that Farhad Larian's privilege log is

11   inadequate because it fails to justify his claims of privilege and work product protection on a

12   document-by-document basis.

13          Farhad Larian contends that Mattel's motion should be denied because Mattel violated its

14   meet and confer obligations by filing the motion before he made his scheduled supplemental

15   production and before the parties' meet and confer discussions had concluded.  According to

16   Farhad Larian, on November 27, 2007, it was agreed that he would make a supplemental

17   production of documents on December 6, 2007, and that he would provide a written supplemental

18   response.  Farhad Larian complied with this agreement and, on December 6, 2007, provided a

19   written supplemental response and, as Mattel acknowledges, approximately six boxes containing

20   approximately 12,000 pages of documents.  Nevertheless, Mattel filed the instant motion on

21   December 6, 2007, without reviewing the supplemental document production and written

22   supplemental response.  Farhad Larian also represents that as of December 6, 2007, the day

23   Mattel filed the instant motion, the parties acknowledged the need for a further meet and confer

24   session, as reflected in the numerous e-mails and correspondence exchanged between counsel.

25   Furthermore, Farhad Larian represents that after Mattel filed the instant motion, he requested that

26   Mattel take the motion off-calendar because his supplemental responses resolved the parties'

27   disputes as to all but three requests and because there was potential for resolving the remaining

28

EXHIBIT __S__ PAGE __372__

1   requests as well, but that Mattel refused.

2          Farhad Larian contends that in light of his supplemental production, he is now in full

3   compliance with Mattel's subpoena, except for three requests. He represents that he has produced

4   over 12,000 documents, including all non-privileged documents from the Larian v. Larian matters

5   that relate to Bratz (including its origin), Carter Bryant, Mattel, a fee agreement between Farhad

6   and MGA, and all documents related to appraisals of MGA that are not privileged or otherwise

7   covered by a protective order. He also contends that the privilege log he has produced to Mattel,

8   which describes the withheld documents by category instead of document-by-document, is

9   sufficient to substantiate his claims of privilege and work product protection. As for the three

10  remaining requests, Nos. 23, 24 and 41, Farhad Larian contends that they are overbroad, harassing

11  and cumulative and invade his and his family's privacy.

12                  Farhad Larian Has Substantially Complied with the Subpoena

13         Farhad Larian made a substantial supplemental production and provided a supplemental

14  written response on December 6, 2007. Indeed, Mattel acknowledges that it received

15  approximately six boxes of documents from Farhad Larian, which contain approximately 12,000

16  pages of documents. Nevertheless, Mattel contends in its reply brief that there are a few

17  deficiencies in Farhad Larian's production. For example, Mattel contends that Farhad Larian has

18  not produced (1) documents bates stamped "MZ" and "ED"; (2) raw data provided to the

19  appraisers in the Larian v. Larian litigations and the 2000 financial models that Farhad Larian

20  claimed Isaac Larian prepared; (3) three boxes of documents that Farhad Larian's counsel showed

21  Mattel's counsel and upon which MGA's disqualification threats against Mattel's counsel are

22  based; (4) the Dutcher Declaration; and (5) documents responsive to Request Nos. 17-19. Mattel

23  also contends that Farhad Larian has improperly limited its production to only those documents

24  that directly reference Bratz and Carter Bryant.

25         At the hearing, counsel for Farhad Larian confirmed that all responsive documents,

26  including the documents identified in Mattel's reply brief, had been or would be produced after

27  the parties executed the Stipulation Regarding Protective Orders, which has now been

28

1   accomplished.  Significantly, counsel represented that Farhad Larian did not limit his production

2   to only those documents that directly reference Bratz and Carter Bryant, and that his supplemental

3   responses make this point clear.  Counsel for Farhad Larian also represented that all privileged

4   documents have been identified on a privilege log.

5         In light of the December 6, 2007 supplementation, and based upon the representations

6   made by counsel for Farhad Larian at the hearing, Farhad Larian has substantially discharged his

7   obligation to comply with Mattel's subpoena.  Therefore, there is no need for an order compelling

8   any further production of documents.

9                Farhad Larian's Objections to the Three Remaining Requests are Justified

10        The only three requests to which Farhad Larian objects are Nos. 23, 24 and 41, which are

11   set forth in full below:

12       Request No. 23:  All DOCUMENTS RELATING TO any and all payments of
          money or transfers of anything of value that ISAAC LARIAN, his FAMILY
13       MEMBERS and/or MGA have made, have offered or have proposed, promised or
          agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS at
14       any time from January 1, 1999 through the present.

15       Request No. 24:  All DOCUMENTS RELATING TO any and all payments of
          money or transfers of anything of value that any PERSON has made, has offered
16       or has proposed, promised or agreed to make, to or for the benefit of YOU or
          YOUR FAMILY MEMBERS and that was related in any way to BRATZ,
17       BRYANT, MGA or this ACTION at any time from January 1, 1999 through the
          present.
18

19       Request No. 41:  DOCUMENTS sufficient to IDENTIFY since January 1, 1999
          through the present (a) each account with any bank or financial institution that
20       YOU have or have had, or that YOU have or had any legal beneficial
          interest in; (b) each telephone subscription service account that YOU have or have
21       had, or that YOU use or have used; and (c) each email account that YOU have or
          have had, or that YOU use or have used.
22

23   Farhad Larian contends that Mattel's stated justification for the requests – bias and credibility – is

24   questionable because he is not an adverse witness to Mattel.  Farhad Larian represents that MGA

25   has never asked him to testify on the company's behalf.  Rather, only Mattel intends to call him as

26   a witness.  Farhad Larian asserts that there is no reason for Mattel to impeach its own witness.

27         Furthermore, Farhad Larian contends that even if it is advantageous for Mattel to attack

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __S__ PAGE __374__ 9

1   his credibility, the scope of Mattel's requests go far beyond what Mattel is reasonably entitled to

2   receive through discovery.  He contends that pursuant to Rule 26, Fed.R.Civ.P., he should not be

3   subjected to discovery that is burdensome, cumulative, unnecessarily costly, or insufficiently

4   probative to the issues in the litigation to warrant the expense of production.  Furthermore, he

5   contends that the usual restrictions on discovery set forth in Rule 26 should be rigorously applied

6   to protect non-parties such as himself.

7        Farhad Larian contends that the three requests at issue are overbroad and harassing in

8   several respects.  First, he points out that the requests seek documents from 1999, which is five

9   years before this action was filed and six years before MGA was involved in this action.  Farhad

10  Larian contends that payments made to him and his family before this action was filed and before

11  MGA was a party to the case have no relevance to his credibility as a witness in this case.

12  Second, Farhad Larian contends that the requests, as phrased, would include any card that

13  accompanied a gift to anyone in the Larian family, regardless of the dollar value of the gift.

14  Farhad Larian contends that family gifts for birthdays, Chanukah, or general gifts of money

15  between family members, have nothing to do with bias and violate his and his family's privacy

16  rights.  Third, Farhad Larian contends that the requests are overbroad because they would require

17  him to disclose all documents reflecting payments he received as an employee of MGA and its

18  predecessor, a company he was employed by for decades.

19       Furthermore, Farhad Larian contends that he has already produced all non-privileged

20  documents which could potentially show bias, including the amount of money he was paid for his

21  shares of MGA, his consulting agreement with MGA after he sold his shares, and his fee

22  agreement with MGA.  He contends that requiring him to search for and produce additional

23  payment documents would only result in him producing cumulative information, which is not

24  only irrelevant but violates his and his family's right to privacy under the California Constitution.

25  Farhad Larian also contends that it would be far less intrusive for Mattel to question him at a

26  deposition about payments he received from Isaac Larian and MGA than for him to respond to the

27  three requests at issue.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __S__ PAGE 375

1        Mattel's motion is denied with respect to Request Nos. 23, 24 and 41. The requests seek

2  information that is only minimally relevant to the claims and defenses in the case. Mattel's only

3  stated justification for the discovery is that it is relevant to establish Farhad Larian's credibility

4  and bias. Although impeachment information is discoverable, Mattel is not entitled to the type of

5  unfettered discovery it is now seeking. Rather, Rule 26(b)(2), Fed.R.Civ.P., requires the court to

6  restrict or prevent discovery if (i) the discovery is unreasonably cumulative or duplicative, or is

7  obtainable from some other source that is more convenient, less burdensome, or less expensive;

8  (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the

9  information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely

10  benefit, taking into account the needs of the case, the amount in controversy, the parties'

11  resources, the importance of the issues at stake in the litigation, and the importance of the

12  proposed discovery in resolving the issues. These restrictions are particularly important to

13  consider where the discovery requests are directed at a non-party. See Moon v. SCP Pool Corp.,

14  232 F.R.D. 633, 638 (C.D. Cal. 2005) (citing Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.,

15  649 F.2d 649 (9th Cir. 1980) (discovery should be "more limited to protect third parties from

16  harassment, inconvenience, or disclosure of confidential information.").

17        Aside from asserting that the requested information is relevant to bias and credibility,

18  Mattel has made no attempt to justify the significant breadth and burden of its requests. The

19  requests are so broad as to include every payment or gift, regardless of amount, made between

20  Farhad and Isaac Larian, their family members and MGA since 1999. The number of years for

21  which Mattel seeks financial information is overbroad. Mattel is seeking documents since 1999,

22  five years before this action was filed and six years before MGA became a party to this action.

23  Mattel fails to explain how any payments MGA or Isaac Larian made to Farhad or his family

24  members before this action was filed or MGA was a party to the action have any bearing on his

25  credibility as a witness in this action. The requests are also overbroad in that they encompass

26  customary gifts between family members and Farhad Larian's routine salary payments, which

27  have only minimal relevance to Farhad Larian's credibility and bias as a witness in this case.

28

EXHIBIT ___S___ PAGE _376_

1         The requests are also cumulative of discovery Farhad Larian has already provided.  In

2    particular, Farhad Larian represents that he has already disclosed to Mattel the amount of money

3    he was paid for his shares of MGA, his consulting agreement with MGA after he sold his shares,

4    and his fee agreement with MGA.  In light of this production , it is unreasonable to require Farhad

5    Larian to search for and produce gift receipts, cards, and the breadth of other financial documents

6    responsive to Request Nos. 23, 24 and 41.  Furthermore, there are other less intrusive and

7    burdensome means of obtaining discovery regarding Farhad Larian's credibility and bias.  For

8    example, Mattel may question Farhad Larian about payments he received from his brother and

9    MGA during his deposition.

10        Nor has Mattel justified the intrusive and harassing nature of the requests.  Personal

11   financial information is afforded protection by the California Constitution that is also recognized

12   by federal courts.  Cal. Const., Art. I, §1; Valley Bank of Nevada v. Superior Court, 15 Cal.3d

13   652, 656 (1975); Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987) (federal courts

14   should give "some weight" to privacy rights that are protected by state constitutions); Soto v. City

15   of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995) (right to privacy in financial information has

16   been recognized by federal courts).  When a privacy right is asserted as an objection to discovery,

17   the court must balance the need for the information versus the privacy right asserted.  Soto, 162

18   F.R.D. at 616.

19        As discussed previously, there is little to no need for the breadth of financial information

20   sought by Mattel.  Many of the documents covered by Request Nos. 23, 24, and 41 have little to

21   no relevance to Farhad Larian's credibility and bias as a witness in this case.  Furthermore,

22   Farhad Larian has already produced numerous documents showing payments he received from

23   both his brother and MGA.  There are also other less intrusive means for obtaining discovery

24   relating to Farhad Larian's credibility and bias.  Furthermore, the scope of these three requests

25   unduly intrude into Farhad Larian's private affairs.  The requests are so broad as to include gifts

26   exchanged between family members and Farhad Larian's paycheck stubs, and would require

27   Farhad Larian to disclose every account number he has at a bank or financial institution since

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT ___S___ PAGE __377__

1   1999.  Thus, the balance tips sharply in favor of protecting Farhad Larian's personal financial

2   information.

3                               Farhad Larian's Privilege Log is Inadequate

4          Mattel challenges the sufficiency of Farhad Larian's privilege log.  At issue is whether

5   Farhad Larian must describe and assert claims of privilege on a document-by-document basis, or

6   whether he may do so categorically.  Farhad Larian is withholding approximately one bankers'

7   box of documents based upon claims of privilege and work product protection.  Farhad Larian's

8   Opposition at p.20, n. 9.

9          Rule 45(d)(2), Fed.R.Civ.P., requires a party responding to a subpoena to provide

10   sufficient information to enable the party seeking discovery to assess the claims of privilege and

11   work product protection.  The "universally accepted" means of claiming that requested documents

12   are privilege is by producing a document-by-document privilege log.  Gail v. New England Gas

13   Co., Inc., 234 F.R.D. 28, 33 (D. R.I. 2007).  The advisory comments to the 1993 amendment to

14   Rule 26(b), however, state that a description of documents by category is appropriate where it

15   would be "unduly burdensome" to provide a document-by-document privilege log.  Specifically,

16   the advisory comment states, "Details concerning time, persons, general subject matter, etc., may

17   be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous

18   documents are claimed to be privileged or protected, particularly if the items can be described by

19   categories."

20          Farhad Larian relies upon the advisory comments and cases citing the advisory comments

21   to support his contention that as a non-party, it would be unduly burdensome to require a

22   document-by-document privilege log in this case.  The cases cited by Farhad Larian, however, are

23   distinguishable from the present case.  In SEC v. Thrasher, 1996 WL 125661 (S.D. N.Y. 1996),

24   the Commission sought production of all communications between defense counsel concerning

25   the lawsuit.  The court observed that this demand, on it face, sought wholesale production of

26   documents that are ordinarily protected from disclosure.  Further, the defendant represented that

27   the requested documents were extremely voluminous and that a document-by-document privilege

28

EXHIBIT   S   PAGE   378

1   log would be a long and fairly expensive project to undertake.  In <u>Fifty-Six Hope Road Music,</u>

2   <u>Ltd. v. Mayah Collections, Inc.</u>, 2007 WL 1726558 (Nev. 2007), the withheld documents

3   consisted of e-mail communications between plaintiffs and their counsel or between plaintiffs'

4   counsel.  Plaintiffs represented that there were hundreds and perhaps thousands of such email

5   communications which were protected by the attorney-client privilege and work product doctrine.

6            In contrast to the volume of documents at issue in <u>Thrasher</u> and <u>Fifty-Six Hope Road</u>

7   <u>Music</u>, Farhad Larian represents that he has about one bankers' box of privileged documents.

8   Farhad has not established that to produce a privilege log on a document-by-document basis for

9   this volume of documents is unduly burdensome.  Furthermore, even if it were appropriate for

10  Farhad Larian to produce a privilege log that described documents categorically, which it is not,

11  the information provided in Farhad Larian's privilege log is insufficient to enable Mattel to assess

12  the claims of privilege and work product protection as required by Rule 45, Fed.R.Civ.P.  For

13  example, in some instances, Farhad Larian fails to identify the author and recipient of the

14  documents being withheld.  In other instances, Farhad Larian fails to provide the date or date

15  ranges for the documents being withheld.  Therefore, Farhad Larian is ordered to provide a

16  supplemental privilege log that complies with Rule 45.

17  B. Documents Subpoenaed from Kaye Scholer

18           Mattel contends that the documents it seeks from Kaye Scholer are relevant for all the

19  same reasons previously articulated in the context of Mattel's motion to compel Farhad Larian to

20  produce documents.  Mattel contends that its requests are not unreasonable, oppressive, annoying

21  or embarrassing.  Mattel points out that Kaye Scholer has separate case files containing all or the

22  vast majority of responsive documents, which undermines Kaye Scholer's boilerplate burden

23  objections.  Mattel also points out that it offered to alleviate some of the burden to Kaye Scholer

24  by paying for Kay Scholer's copying costs and by providing a paralegal to inspect documents

25  from Kaye Scholer's files with an agreement that the inspection would not result in a waiver of

26  any privileges.  Further, Mattel contends that the protective order in place in this action is

27  sufficient to address any confidentiality concerns Kaye Scholer may have.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT ___S___ PAGE ___379___

1    Mattel next contends that the documents it seeks from Kaye Scholer are not available from

2    other sources, as evidenced by Mattel's repeated and unsuccessful attempts to seek the same

3    documents from MGA.  Indeed, Mattel contends that the documents in Kaye Scholer's possession

4    are in fact documents within MGA's possession, custody and control that should have, but have

5    not yet been, produced pursuant to prior discovery orders obligating MGA and Isaac Larian to

6    produce documents from the <u>Larian v. Larian</u> proceedings.  Mattel also points out that it has

7    searched public files and served additional subpoenas on other third parties involved in the <u>Larian</u>

8    <u>v. Larian</u> proceedings.  Moreover, Mattel argues that federal law requires Kaye Scholer to comply

9    with the subpoena, even if the evidence sought is obtainable from another source.  <u>See e.g. State</u>

10   <u>Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.</u>, 2007 WL 2993840 at *1 (E.D. N.Y. 2007).

11   Mattel contends that Kaye Scholer's proposal to search only certain files for responsive

12   documents is unacceptable because it would inevitably exclude relevant documents.  In particular,

13   Mattel contends that Kaye Scholer's proposal would exclude relevant documents likely to be

14   found in its correspondence file, such as an August 29, 2003 letter from Isaac Larian to Mr.

15   Zarabi relating to an appraisal of MGA, and a letter from Farhad Larian's attorney to Kaye

16   Scholer detailing the evidence of Isaac Larian's alleged concealment of Bratz.  Mattel contends

17   that the relevance of these documents and others that are likely to exist justifies the burden of

18   production on Kaye Scholer.

19   Further, Mattel contends that Kaye Scholer has failed to produce a privilege log in

20   violation of Rule 45(d)(2), Fed.R.Civ.P., and therefore Kaye Scholer has waived any claims of

21   privilege.  In the alternative, Mattel requests an order compelling Kaye Scholer to produce a

22   document-by-document privilege log.

23   Kaye Scholer contends that the instant motion is premature, unnecessary and a waste of

24   judicial resources.  Kaye Scholer represents that after meeting and conferring in good faith, it

25   agreed to produce documents responsive to thirty of the thirty-five requests, and that the

26   remainder of the requests are grossly overbroad.  Further, Kaye Scholer represents that it has

27   completed its review pursuant to the agreement, and is prepared to produce responsive

28

1   documents.  However, Kaye Scholer continues to object to producing a document-by-document

2   privilege log on the grounds that it would be unduly burdensome and expensive.  Kaye Scholer

3   emphasizes that Mattel is seeking documents from a law firm, and therefore the vast majority of

4   responsive documents are protected by multiple privileges, including but not limited to the

5   attorney-client privilege and the work product doctrine.  Kaye Scholer estimates that it would take

6   in excess of seventy (70) hours to create a document-by-document privilege log for this case, and

7   that the Federal Rules of Civil Procedure do not require Kaye Scholer to undertake such an

8   unreasonable burden.  Furthermore, Kaye Scholer contends that the failure to produce a

9   document-by-document privilege log does not result in a per-se waiver of any privilege.

10          MGA also opposes Mattel's motion for several reasons.  First, MGA contends that

11   Mattel's requests are overbroad, encompassing documents that are only marginally related, if at

12   all, to the claims and defenses in the case.  Second, MGA contends that Mattel's requests are

13   completely duplicative of requests it has served on the parties in the case.  In particular, MGA

14   contends that Mattel has sought the Larian v. Larian documents from both MGA Entertainment,

15   Inc. and Isaac Larian.  See Mattel's Request No. 41 in Mattel's First Set of Request for

16   Production of Documents and Tangible Things to MGA, and Request Nos. 123-125 in Mattel's

17   First Set of Requests for Documents and Things to Isaac Larian.  MGA and Isaac Larian are both

18   under court order to comply with the requests, although Isaac Larian is only required to produce

19   documents that refer or relate to Bratz in response to Request Nos. 123-125.  Third, MGA

20   contends that Mattel's requests to Kaye Scholer are much broader than requests Mattel previously

21   served on the parties to this case.  Fourth, MGA contends that there is no reason Mattel cannot

22   obtain a complete set of all relevant documents from the Larian v. Larian proceedings without this

23   third-party subpoena.  Fifth, MGA contends that the vast majority of documents Mattel seeks

24   from Kaye Scholer are protected by the attorney-client privilege, the work product doctrine, or

25   other privileges, and that it is improper for Mattel to attempt to subpoena these documents and

26   then insist that Kaye Scholer produce a document-by-document privilege log.  In summary, MGA

27   contends that Mattel has misused the subpoena process by serving deliberately overbroad and

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT ___S___ PAGE __381__

Case 2:04-cv-09049-DOC-RNB   Document 2022-6   Filed 02/08/08   Page 62 of 80   Page ID
#:30592
Case 2:04-cv-09049-SGL-RNB      Document 1699      Filed 01/28/2008      Page 17 of 21

1    burdensome requests in an attempt to harass and intimidate MGA and non-parties.  Accordingly,

2    MGA contends that Mattel's motion should be denied or Mattel's subpoena should be

3    substantially limited in scope.

4              Mattel's Subpoena is Overbroad, Unduly Burdensome and Cumulative

5              Mattel's subpoena to Kaye Scholer is overbroad and is not reasonably tailored to seek

6    documents relevant to the claims and defenses in this case.  Of the thirty-five requests Mattel

7    served on Kaye Scholer, all but one begin with the phrase "all documents" or a similarly broad

8    phrase.  For example, Request Nos. 1-3, which are set forth below, seek virtually all documents

9    relating to lawsuits and/or arbitrations between Isaac Larian and Farhad Larian:

10             Request No. 1:  All DOCUMENTS, including all COMMUNICATIONS,
               RELATING TO any and all arbitration proceedings between FARHAD LARIAN
11             and ISAAC LARIAN, including without limitation all video and/or sound
               recordings, transcripts, exhibits, memoranda, witness statements, declarations,
12             affidavits and sworn testimony given by any PERSON in connection with such
               arbitration proceedings.
13
               Request No. 2:  All DOCUMENTS including all COMMUNICATIONS,
14             RELATING TO Los Angeles Superior Court Case No. BC301371 filed by
               FARHAD LARIAN against ISAAC LARIAN and/or any related proceedings,
15             including any appeal thereof, and including without limitation all video and/or
               sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness
16             statements, declarations, affidavits and sworn proceedings and/or any appeal
               related to such lawsuit.
17
               Request No. 3:  All DOCUMENTS RELATING TO Los Angeles Superior Court
18             Case No. BC329501 filed by FARHAD LARIAN against ISAAC LARIAN,
               MORAD ZARABI and Kambiz Zarabi, and/or any related proceedings and/or any
19             appeal of such lawsuit, including without limitation all video and/or sound
               recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness
20             statements, declarations, affidavits and sworn testimony given by any PERSON in
               connection with such suit and/or related proceedings and/or any appeal related to
21             such lawsuit.

22   Mattel has not limited the subject matter of these requests (and others) in any way to exclude

23   irrelevant information.  To the contrary, Request Nos. 1-3 are drafted in the broadest possible

24   language, encompassing documents that are only marginally related, if at all, to this case.  As

25   such, Mattel's requests are also unduly burdensome.

26             Furthermore, Mattel's requests are clearly duplicative of other requests propounded to the

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT   S   PAGE 382

Case 2:04-cv-09049-DOC-RNB   Document 2022-6   Filed 02/08/08   Page 63 of 80   Page ID
#:30593
Case 2:04-cv-09049-SGL-RNB      Document 1699       Filed 01/28/2008     Page 18 of 21

1  parties in this action.  In particular, the requests relating to the <u>Larian v. Larian</u> proceedings are

2  duplicative of Mattel's Request No. 41 to MGA and Request Nos. 123-125 to Isaac Larian.

3  During the hearing, counsel for MGA acknowledged that Isaac Larian is required to comply with

4  Request Nos. 123-125, and is prepared to review Kaye Scholer's files for responsive documents

5  to fulfill his responsibility.  Also during the hearing, Kaye Scholer agreed to make its

6  correspondence file available to MGA's counsel for review.

7          In light of Mattel's failure to take reasonable steps to avoid unduly burdening Kaye

8  Scholer and in light of MGA's and Kaye Scholer's representations during the hearing as outlined

9  above, Mattel's motion to compel Kaye Scholer to comply with the full scope of the subpoena is

10  denied.

11                 <u>Kaye Scholer's Compromise is Reasonable Under the Circumstances</u>

12          As an alternative to complying with the full scope of the subpoena, Kaye Scholer agreed

13  to review the following files for documents responsive to every one of Mattel's requests except

14  Nos. 1-3, 6 and 10:  (1) pleading files; (2) discovery files; and (3) arbitration exhibits.  Kaye

15  Scholer's Opposition at p.5.  Kaye Scholer's compromise is reasonable under the circumstances.

16  Narrowing the scope of Kaye Scholer's search in this manner will significantly minimize the

17  burden, expense, and inconvenience imposed by the subpoena because, unlike Kaye Scholer's

18  other files, most of the documents in the three files it agreed to search are not likely to be covered

19  by the attorney-client privilege or work product doctrine.  Further, narrowing Kaye Scholer's

20  search in this manner will not significantly deprive Mattel of relevant discovery to which it is

21  entitled because, as stated previously, MGA's counsel represented during the hearing that Isaac

22  Larian is prepared to review Kaye Scholer's documents, including the correspondence file, to

23  comply with Request Nos. 123-125.

24          Accordingly, to the extent it has not already done so, Kaye Scholer shall conduct the

25  agreed upon search of its three files and produce documents responsive to all of Mattel's requests,

26  except Nos. 1-3, 6 and 10.

27  //

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                    EXHIBIT __5__ PAGE __383__ [18]

1            <u>Kaye Scholer Must Produce a Privilege Log in Compliance with Rule 45</u>

2         Mattel contends that Kaye Scholer has waived its claims of privilege by failing to produce

3    any privilege log.  The law is clear, however, that the failure to produce a document-by-document

4    privilege log does not result in a per-se waiver of any privilege.  See <u>Burlington Northern & Santa</u>

5    <u>Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.</u>, 408 F.3d 1142, 1147 (9th Cir. 2005).  In this

6    case, Kaye Scholer raised a legitimate objection to producing a document-by-document privilege

7    log on the grounds that it would impose an undue burden.  Under these circumstances, a finding

8    of waiver is unjustified.

9         Nevertheless, Kaye Scholer's claim of undue burden is unpersuasive.  Kaye Scholer has

10   acknowledged that most of the documents in the three files it has agreed to search are not likely to

11   be covered by the attorney-client privilege or work product doctrine.  Kaye Scholer Opposition at

12   pp. 5 and 9.  Indeed Kaye Scholer agreed to search these files precisely because they were not

13   likely to contain privileged documents.  Therefore, requiring Kaye Scholer to produce a

14   document-by-document privilege log for documents withheld from these three files should not

15   impose an undue burden.  Accordingly, Kaye Scholer is ordered to produce a document-by-

16   document privilege log for documents withheld from the three files it agreed to search.

17                       <u>V. CONCLUSION</u>

18        For the reasons set forth above, it is ordered as follows:

19        1. Farhad Larian is in substantial compliance with Mattel's subpoena with respect to all of

20   the requests, except Nos. 23, 24 and 41.  Request Nos. 23, 24 and 41 are overbroad, unduly

21   burdensome, cumulative, harassing and invade the right of privacy of Farhad Larian and his

22   family.  Therefore, Mattel's motion to compel Farhad Larian to produce documents in response to

23   the subpoena is denied.

24        2. Farhad Larian shall produce a document-by-document privilege log to Mattel no later

25   than January 30, 2008.

26        3. Farhad Larian's request for sanctions against Mattel is denied.

27        4. Mattel's subpoena to Kaye Scholer is overbroad, unduly burdensome and cumulative.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1   Therefore, Mattel's motion to compel Kaye Scholer to produce documents responsive to the
2   subpoena is denied.  Instead, Kaye Scholer is ordered to abide by its agreement to review its
3   pleading files, discovery files, and arbitration exhibits for documents responsive to all of Mattel's
4   requests, except Request Nos. 1-3, 6 and 10.  Kaye Scholer shall produce responsive documents
5   no later than January 30, 2008.
6        5. Kaye Scholer shall also produce a document-by-document privilege log identifying all
7   documents withheld from its pleading files, discovery files, and arbitration exhibits, no later than
8   January 30, 2008.
9        6. Mattel shall abide by its agreement to reimburse Farhad Larian and Kaye Scholer for
10   their copying costs.
11        7. Isaac Larian is granted an extension of time to comply with Request Nos. 123-125.
12   Isaac Larian shall deliver documents responsive to these requests to Mattel no later than 12:00
13   p.m. on January 25, 2008.
14        8. Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
15   Master, Mattel shall file this Order with the Clerk of Court forthwith.
16
17   Dated: January 25, 2008              /s/Edward A. Infante
                                    ─────────────────────────
18                                  HON. EDWARD A. INFANTE (Ret.)
                                         Discovery Master
19
20
21
22
23
24
25
26
27
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___S___   PAGE ___385___    20

Case 2:04-cv-09049-DOC-RNB   Document 2022-6   Filed 02/08/08   Page 66 of 80   Page ID
#:30596
Case 2:04-cv-09049-SGL-RNB      Document 1699      Filed 01/28/2008      Page 21 of 21

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2008, I served

the attached ORDER RE MATTEL'S MOTIONS TO COMPEL FARHAD LARIAN, KAYE SHOLER

AND STERN & GOLDBERG TO PRODUCE DOCUMENTS in the within action by email addressed

as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Patricia Glaser, Esq. | Christensen, Glaser, Fink, et al. | pglaser@chrisglase.com |
| Scott E. Glzer, Esq. | Christensen, Glaser, Fink, et al. | sgizer@chrisglase.com |
| Alisa Morgenthaler-Lever, Esq. | Christensen, Glaser, Fink, et al. | amorgentaler@chrisglase.com |
| Alan N. Goldberg, Esq. | Stern & Goldberg | agoldberg@sgattys.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| Bryant S. Delgadillo, Esq. | Kaye Scholer | bdelgadi@kayscholer.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above

is true and correct.

Executed on January 25, 2008, at San Francisco, California.

_____
Sandra Chan

EXHIBIT  S  PAGE  386

CONFORMED COPY

1    Hon. Edward A. Infante (Ret.)
     JAMS
2    Two Embarcadero Center
     Suite 1500
3    San Francisco, California 94111
     Telephone:    (415) 774-2611
4    Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                         EASTERN DIVISION

10

11   CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
12              Plaintiff,

13        v.                                Consolidated with
                                            Case No. CV 04-09059
14   MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15              Defendant.                  **ORDER MODIFYING PROTECTIVE
                                            ORDER**
16

17   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
18   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
19

20

21                          I. INTRODUCTION

22        Presently pending for decision is MGA Entertainment, Inc.'s ("MGA") and Carter

23   Bryant's ("Bryant") "Motion for Clarification Of The Discovery Master's January 25, 2007 Order

24   Or For Protective Order Pursuant to Rule 26(c)."  At issue is whether the January 25, 2007 Order

25

26

27

28

Bryant v. Mattel, Inc.,                                          1
CV-04-09049 SGL (RNBx)

EXHIBIT __T__ PAGE __387__

1   ("Order") requires Bryant to produce drawings and designs in his possession that he created in
2   2006 or later[1] for products currently under development and not yet released to the public.
3   MGA and Bryant filed their motion on February 23, 2007; Mattel submitted an opposition brief
4   on March 2, 2007; and MGA and Bryant submitted a reply brief on March 7, 2007.  The matter
5   was heard via telephonic conference on March 19, 2007, and taken under submission pending the
6   parties' submission of a stipulated protective order, which was received on April 23, 2007.
7         Having considered the motion papers and comments of counsel at the hearing, and for the
8   reasons set forth below, the motion for clarification of the Order is denied.  There is good cause,
9   however, to modify the current protective order to further limit the disclosure of drawings and
10   designs for MGA products currently under development and not yet released to the public.

11                      II. BACKGROUND

12         The Order that is the subject of this motion granted Mattel's motion to compel Bryant to
13   produce documents responsive to numerous document requests relating to the development of
14   Bratz and other projects that Bryant worked on for MGA.  In ruling on Mattel's motion, the
15   Discovery Master rejected Bryant's relevancy and overbreadth objections to producing
16   documents relating to work that Bryant performed for MGA after the release of the First
17   Generation Bratz dolls on June 30, 2001.
18         Neither party specifically addressed whether Mattel was entitled to drawings and designs
19   for MGA products on which Bryant worked and that are currently under development and not yet
20   released to the public.  Mattel has taken the position that the Order requires production of such
21   documents.
22         During the meet and confer process, MGA and Bryant requested that Mattel "agree to a
23   limitation on the disclosure of product drawings and designs for products in development until
24   after that product has been made available for public sale." Torres Decl., Ex. A.  Mattel rejected
25
26   ———————————
      [1]  MGA and Bryant's Reply Brief at 4:28-5:28, n. 4.
27
28   Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)
                                2

EXHIBIT  T  PAGE 388

1   the proposal, asserting that the proposal "would allow Bryant and/or MGA to unilaterally deem

2   something to be 'in development' and thus not produce it, including for designs Bryant previously

3   created and to which Mattel may have rights."  Torres Decl., Ex. A.  The parties had further

4   discussions regarding the disclosure of drawings and designs for products in development but

5   were unable to reach an agreement.

6        MGA and Bryant now request "a clarification that the Order does not require the

7   production of drawings or designs for products that have not yet been released."  MGA and

8   Bryant's Motion at 2:13-15.  In the alternative, MGA and Bryant move for a protective order

9   pursuant to Rule 26(c), Fed.R.Civ.P., providing that drawings or designs for products that have

10  not yet been released (1) need not be produced, or (2) shall be produced only after the products

11  have been released to the public, or (3) shall be produced under other very restrictive conditions

12  to protect their confidentiality.  MGA and Bryant contend that "[e]ven if some of the 'Bratz'

13  drawings that Bryant created for MGA after June 30, 2001, may be relevant to claims at issue in

14  this action, drawings for unreleased products are not."  MGA and Bryant's Motion at 4:28-5:2.

15  Further, they contend that such drawings are highly valuable trade secret documents whose

16  disclosure could severely jeopardize MGA's business.

17        Mattel opposes the motion on numerous grounds.  First, it contends that the motion for

18  clarification is, in effect, an improper motion for reconsideration that does not satisfy the

19  standards for reconsideration, and is another attempt to withhold highly probative evidence that

20  bears directly on Mattel's claims and defenses.  Mattel contends that the Order clearly requires

21  Bryant to produce his drawings, and that MGA and Bryant are now precluded from withholding

22  documents relating to unreleased products because they failed to raise the issue earlier.  Second,

23  Mattel asserts that drawings and designs for unreleased products are relevant to its claims for

24  breach of contract, breach of fiduciary duty, breach of the duty of loyalty, copyright infringement,

25  and misappropriation of trade secrets.  Third, Mattel contends that the protective order currently

26  in place, which addresses trade secret information in particular, is adequate to protect MGA and

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT __T__ PAGE __389__

1   Bryant's interests.  Fourth, Mattel contends that the additional protections MGA and Bryant seek

2   under Rule 26(c), Fed.R.Civ.P., would hamstring its ability to investigate and prosecute its claims

3   and defend against MGA's claims.

4                                          III. DISCUSSION

5   A. The Order Requires Production of Drawings and Designs for Products Not Yet Released

6            The Order clearly requires Bryant to produce all documents in his possession, custody or

7   control relating to Bratz and other products that Bryant has worked on with or for MGA.  Among

8   other things, the Order requires Bryant to produce documents responsive to Mattel's Request Nos.

9   12, 19, 40, 41, and 54.  Request No. 12 seeks production of all documents that refer or relate to

10  work or services that Bryant performed for or on behalf of MGA after October 20, 2000.  See

11  Zeller Decl., Ex. 4.  Request No. 19 seeks production of all documents that refer or relate to

12  designs that Bryant created, authored, produced, conceived of or reduced to practice after October

13  20, 2000 as purported "works-made-for-hire," whether in whole or in part for or on behalf of

14  MGA.  Id.  Request No. 40 seeks production of documents that refer or relate to Bryant's

15  participation in the conception, creation, design, development, sculpting, tooling, production or

16  manufacture of Bratz.  Id.  Request No. 41 seeks production of all documents that refer or relate

17  to designs for Bratz.  Id.  Request No. 54 seeks production of all prototypes, models, samples and

18  tangible items that refer or relate to Bratz.  Id.  Each of these requests covers drawings and

19  designs for Bratz products, regardless of when the drawings and designs were created or whether

20  the products to which they relate have been released.

21           Nowhere does the Order exempt, or even arguably exempt, from production responsive

22  documents relating to products that have not been released.  To the contrary, the Order rejects

23  Bryant's objections based upon relevancy and overbreadth.  In particular, the Order rejects

24  Bryant's "First Generation Bratz" limitation, which sought to limit discovery to only those

25  documents relating to the first dolls sold to the public in the summer of 2001.  Thus, under the

26

27

28

1    Order, Bryant is required to produce drawings and designs in his possession for products currently

2    under development and not yet released to the public.

3          Because the terms of the Order are clear, MGA's and Bryant's request for clarification of

4    the Order is denied.

5    B.  There is Good Cause to Modify the Protective Order as to Drawings and Designs for Products

6    Not Yet Released

7          In the event that designs and drawings for unreleased products under development are

8    found relevant and within the scope of the Order, MGA and Bryant move in the alternative for a

9    protective order pursuant to Rule 26(c), Fed.R.Civ.P., that would provide additional protections

10   not available under the protective order currently in place.  More specifically, MGA and Bryant

11   seek either (1) an order that the designs and drawings for MGA's unreleased products not be

12   revealed at all; (2) an order delaying production of designs and drawings for MGA's unreleased

13   products until the products are released; (3) an order requiring the designs and drawings to be

14   placed in an escrow for an expert to review and prohibiting the expert from removing or copying

15   the documents; or (4) an order providing that the drawings and designs for unreleased products be

16   produced for inspection by only an independent expert at the offices of MGA's counsel, with no

17   copying, photographing or sketching permitted.  Because there is already a protective order in

18   place, MGA and Bryant's motion is construed as one for modification of the existing protective

19   order.[2]

20                                     1. Rule 26 Standards

21         Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

22   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

23

24         [2] Mattel's contention that the present motion is an improper motion for reconsideration is without merit. To
25   the extent MGA and Bryant seek protection under Rule 26(c), Fed.R.Civ.P., their motion raises issues that were not
     within the scope of Mattel's motion to compel production of documents from Bryant.  Furthermore, paragraph 19 of
26   the protective order currently in place provides that a party may, at any time, apply to the Court for a modification of
     its terms.
27

28
     Bryant v. Mattel, Inc.,                                                                        5
     CV-04-09049 SGL (RNBx)

1    party." Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

2    discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Id.

3    Even when discovery is permissible under Rule 26(b)(1), however, discovery may be limited

4    pursuant to Rule 26(c), Fed.R.Civ.P., which provides for the issuance of a protective order upon

5    motion by a party that has conferred in good faith in an effort to resolve the dispute without court

6    action, and for good cause shown.  Rule 26(c) provides for "any order which justice requires to

7    protect a party or person from annoyance, embarrassment, oppression or undue burden or

8    expense," including, among other things, "(1) that the disclosure or discovery not be had; (2) that

9    the discovery may be had only on specified terms and conditions, including a designation of the

10   time or place . . . (5) that the discovery be conducted with no one present except persons

11   designated by the court" and "(7) that a trade secret or other confidential research, development,

12   or commercial information not be revealed or revealed only in a designated way."  In general, in

13   determining whether a protective order should issue for trade secrets, the Ninth Circuit requires

14   that a court balance the risk to the disclosing party of inadvertent disclosure of trade secrets to

15   competitors against the risk to the moving party that protection of the trade secret would impair

16   the prosecution of its claims.  Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th

17   Cir. 1992) (upholding protective order granting access to source code and other trade secret

18   materials to only an independent consultant).

19                                2. The Documents At Issue Are Relevant

20            In support of its motion for a protective order, MGA and Bryant contend that drawings

21   and designs for products not yet released to the public are not relevant to any of Mattel's claims.

22   As an initial matter, MGA and Bryant contend that Mattel cannot possibly have suffered a

23   cognizable injury relating to MGA's products that have not yet been released, and that Mattel has

24   never taken the position that such products are relevant.  MGA and Bryant next contend that the

25   drawings and designs for unreleased products are not relevant to Mattel's counterclaim for

26   copyright infringement because that claim is premised on an allegation that Bryant created the

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                              6

EXHIBIT __T__ PAGE __397__

1   original Bratz drawings while still employed at Mattel. MGA and Bryant similarly contend that

2   drawings and designs for products not yet released to the public are not relevant to Mattel's

3   original claim that Bryant breached his confidentiality obligations while still employed by Mattel.

4   Because Mattel's claims are based upon events occurring while Bryant was still employed by

5   Mattel, MGA and Bryant believe that drawings and designs for products currently under

6   development -- over six years after the termination of Bryant's employment at Mattel -- have no

7   relevance. MGA and Bryant further contend that the drawings and designs for products currently

8   under development are not relevant to Mattel's counterclaim for trade secret misappropriation.

9   MGA and Bryant reason that the trade secret claim is based on the alleged theft of business

10   information, not drawings and designs for products.

11        Consistent with the analysis previously set forth in the Order, the Discovery Master finds

12   that drawings and designs for unreleased products are relevant to Mattel's claims against Bryant.

13   Mattel claims that it owns works created by Bryant during his Mattel employment, regardless of

14   whether the works resulted in a Bratz doll released at a particular time. Further, Mattel's

15   complaint alleges that Bryant breached his confidentiality obligations while employed by Mattel.

16   As Mattel points out, Bryant has a continuing obligation not to use Mattel's confidential and

17   proprietary information.

18        Drawings and designs for unreleased products are also relevant to Mattel's copyright

19   infringement claim. It is true, as MGA and Bryant point out, that Mattel claims it owns

20   copyrights in Bratz works created by Bryant while still employed by Mattel. Mattel, however,

21   also asserts that Bryant has infringed Mattel's alleged copyrights in Bratz works through his

22   ongoing conduct of reproducing and creating derivative works.

23        Drawings and designs for unreleased products are also relevant to Mattel's counterclaim

24   for trade secret misappropriation. Among other things, Mattel alleges that MGA stole its future

25   line lists that detail the Barbie products that Mattel anticipated producing in 2004. Drawings of

26   unreleased MGA products that resemble unreleased products on Mattel's line lists may support

27

28
      Bryant v. Mattel, Inc.,
      CV-04-09049 SGL (RNBx)                                                                      7

EXHIBIT __T__ PAGE _393_

1  Mattel's allegation of trade secret misappropriation, even if the line list might potentially be

2  outdated.  Further, proof of trade secret theft is also relevant to Mattel's defense against MGA's

3  unfair competition claims.[3]

### 3. The Drawings and Designs Are Entitled to Heightened Protection

5  MGA and Bryant contend that drawings and designs for unreleased products fall squarely

6  within the category of trade secret information and should not be revealed at all, or in the

7  alternative, should not be revealed prior to release of the products.  They contend that there is

8  good cause for heightened protection for drawings and designs for unreleased products because

9  any relevance of such drawings and designs is marginal at best, and the potential damage to MGA

10  of any disclosure is substantial.  According to MGA and Bryant, there are thirteen lawyers at

11  Mattel's retained law firm who have recently been named in or on briefs submitted by Mattel.  In

12  addition, MGA and Bryant estimate that there are numerous other staff members and outside

13  vendors – such as copy services, couriers, court reporters, experts and their respective staffs—

14  who also handle documents in this case on a regular basis.  MGA and Bryant contend that the

15  current protective order allows disclosure to each of these groups of people, even for documents

16  restricted as "Confidential – Attorneys' Eyes Only."  Moreover, MGA and Bryant contend that

17  Mattel has a practice of summarizing or paraphrasing contents of confidential documents or

18  testimony in briefs and other papers filed with the Court.  MGA and Bryant suspect that Mattel

19  may follow this practice with respect to drawings and designs of unreleased products, and thereby

20  release MGA's trade secret information to the public.

21  Mattel opposes any modification of the existing protective order, asserting that the parties

22  contemplated exchanging trade secret information, including "non-public information relating to

23

24  _____

[3]  MGA and Bryant's contention that discovery of drawings and designs for unreleased products is barred
25  unless and until Mattel complies with California Code of Civil Procedure section 2019.210 is without merit.
Drawings and designs for unreleased products are relevant to claims other than the trade secret misappropriation
26  claim, such as Mattel's claim for copyright infringement.  Furthermore, the case relied upon by MGA and Bryant,
Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal.App.4[th] 826 (2nd Dist. 2005), is distinguishable from
the present case in that not all of Mattel's claims are "factually dependent" on the trade secret claim.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT T PAGE 394

1    product development and design,"[4] and agreed to certain safeguards for trade secret information.

2    Mattel contends that there is little to no risk of unwarranted disclosure of MGA's trade secrets

3    because Mattel's in-house counsel and employees are not permitted to inspect or know the

4    contents of documents designated as "Confidential--Attorneys' Eyes Only." Mattel also denies

5    disclosing MGA's confidential information in briefs filed with the court.

6         Mattel's argument that MGA is limited to the terms of the current protective order is

7    without merit.  The current protective order was negotiated by the parties at the inception of the

8    case, well before all of the claims and defenses were established.  At that time, the parties did not

9    fully understand or foresee what documents and trade secrets would be relevant and discoverable

10   under Rule 26, Fed.R.Civ.P.  Moreover, paragraph 19 of the protective order provides that a party

11   may, at any time, apply to the court for a modification of its terms.

12        On balance, there is good cause for heightened protection for drawings and designs for

13   unreleased products.  MGA and Mattel are direct competitors.  MGA has submitted the

14   declaration of Paula Garcia to support its claim of trade secrets.  Ms. Garcia is the Vice President

15   of Product Design and Development and is responsible for the design and development of Bratz

16   products.  She states that "[w]ithout question, a toy manufacturer's unreleased toy concepts . . .

17   are among its most highly valuable trade secrets."  Garcia Decl. at ¶4.  She states that "[a]lthough

18   such drawings and designs are valuable even after the product's public release, their value is

19   enormous prior to their public release because it is the new ideas and designs that are most likely

20   to generate new sales." Id.  She further states that MGA protects its product designs and drawings

21   by using confidentiality agreements, computer passwords, and security guards.  She also states

22   that vendors, manufacturers, suppliers and other third parties who may see a product design late in

23   the development process are required to sign strict confidentiality agreements.  Ms. Garcia states

24   that "MGA's drawings for some of its yet-unreleased 'Bratz' products are even more closely

25

26        [4] Protective Order at 2-3.

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                                              9

EXHIBIT __T__ PAGE __395__

1    protected." Id. at ¶6. More specifically, she declares that when MGA begins to develop a new

2    Bratz line, only a very limited number of people know about it. Further, Ms. Garcia asserts, "[i]n

3    fact, with respect to some 'Bratz' products, Carter Bryant and I are the only people who know

4    what the concept is and who see the early product drawings. Even after I approve and we have

5    finalized the concept, only a small number of people on the 'Bratz' development team have

6    exposure to the drawings." Id. Thus, drawings and designs for MGA products not yet released to

7    the public are unquestionably valuable trade secret information.

8        Although the protective order currently in place provides for two tiers of protection, MGA

9    points out that even under the higher "Confidential – Attorneys' Eyes Only" tier, MGA's

10   drawings and designs for unreleased products could be disclosed to at least thirteen of Mattel's

11   lawyers, as well as staff members, and also outside vendors such as copy services, court reporters,

12   experts and their staff. Given the number of people involved in the case, MGA is justifiably

13   concerned about the possibility of inadvertent disclosures of trade secrets that could lead to

14   substantial economic injury.

15        In comparison to the potential risk of harm to MGA, Mattel's need for drawings and

16   designs for unreleased products is relatively small. Mattel's claims and defenses are centered

17   upon Bryant's conduct during his employment at Mattel, which ended in October of 2000, and

18   events leading up to the release of the First Generation of Bratz dolls in the summer of 2001.

19   Although the lawsuit is much broader than the First Generation of Bratz dolls, events occurring

20   after the summer of 2001 become less relevant as more time passes. Approximately six years

21   have passed since the launch of the First Generation Bratz dolls. Furthermore, for purposes of

22   determining damages, drawings and designs for released products are far more relevant than

23   drawings and designs for yet unreleased products. Indeed, as MGA and Bryant point out, it is

24   unlikely that Mattel could have suffered any cognizable injury from MGA products that have not

25   yet been released.

26

27

28

1    In summary, the potential for inadvertent disclosure under the terms of the existing

2    protective order outweighs Mattel's need for drawings and designs for unreleased products.

3    Accordingly, MGA and Bryant are entitled to additional protective measures to prevent

4    inadvertent disclosure of drawings and designs for unreleased products.

5    <u>4. Delaying Production of Drawings and Designs Until</u>

6    <u>Products Are Released Would Impair Mattel's Ability To Prosecute Its Claims</u>

7    MGA and Bryant seek a protective order delaying production of drawings and designs for

8    products under development until the products are actually released.  MGA and Bryant anticipate

9    releasing products in the fall of 2007 and the spring of 2008.  MGA and Bryant's Reply at 4:26-

10   28.  MGA and Bryant contend that production of drawings and designs for products under

11   development prior to their release date would impose an unwarranted burden for two reasons.

12   First, MGA and Bryant assert that Mattel's requests are broad.  Second, they contend that

13   requiring production of drawings and designs would be disruptive to the product development

14   process.  They explain that the creative process is fluid, constant, and extremely rapid.  They

15   explain that for some Bratz products, Bryant may create and develop scores of drawings that are

16   modified and improved throughout the development cycle.  Further, MGA often goes back to, or

17   builds on, prior drawings.  MGA and Bryant contend that "to be forced to turn over these

18   drawings throughout the development process before the product line is finalized, particularly as

19   MGA is operating under such short development cycles, would not only substantially compromise

20   the strict confidentiality measures that MGA has in place but would be extremely disruptive to its

21   ability to do business and therefore significantly impact its ability to compete."  MGA and

22   Bryant's Motion at 11:16-22.

23   MGA and Bryant's proposal to delay production until products are released is unworkable.

24   Although MGA anticipates releasing products in the fall of 2007 and the spring of 2008, there is

25   no guarantee that MGA will meet those release dates.  If there are delays in the release dates,

26   Mattel might not have sufficient time to review the drawings and designs and conduct follow up

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

11

1   discovery under the current schedule.  Trial on Mattel's original claims is scheduled for February

2   of 2008, and trial on MGA's claims and Mattel's counterclaims is scheduled for July of 2008.

3   In light of the trial schedule, any delay beyond June 29, 2007 would unduly prejudice Mattel's

4   ability to prepare for trial.

5   <u>5. Additional Procedures</u>

6   At the hearing, the parties represented that they would submit a stipulation and proposed

7   order with additional terms governing the production of drawings and designs for MGA's

8   products that are under development.  On April 23, 2007, the parties submitted a stipulation and

9   proposed order.  The parties stipulated to define "Subject Documents" as "documents (defined to

10  include both tangible items and electronic data) created after January 1, 2006 that pertain to

11  products which are currently unreleased and scheduled for public release in 2007 or 2008 and

12  that constitute highly sensitive trade secrets of the producing Party." Stipulation and Proposed

13  Order at ¶1.  The main terms of the stipulation are as follows:

14  1. That "Subject Documents" may be withheld from production to the other parties until

15  June 29, 2007.  <u>Id</u>. at ¶2.

16  2. That "Subject Documents" may be designated as "Highly Confidential – Restricted

17  Attorneys' Eyes Only," and that documents so designated "shall not be disclosed in any way to,

18  nor their contents summarized or discussed in substance with, any person other than:  (i) up to

19  three attorneys at the receiving Party's outside law firm; (ii) such independent, outside expert(s)

20  for the receiving Party who outside counsel deems necessary to show such documents for

21  purposes of providing expert opinion or expert testimony; (iii) one assistant or paralegal for each

22  Party . . . (iv) the Court, including the Discovery Master and other personnel identified in

23  paragraphs 6(g) and 7 of the Protective Order; (v) the authors, senders, addressees and

24  designated copy recipients of any document designated 'Highly Confidential – Restricted

25  Attorneys' Eyes Only'; and (vi) such other persons as may be consented to in writing or on the

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT __T__ PAGE __398__

1  record by the Party designating such documents 'Highly Confidential – Restricted Attorneys'

2  Eyes Only.'" Id. at ¶3(b).

3       3. That "[d]ocuments designated as 'Highly Confidential – Restricted Attorneys' Eyes

4  Only' shall not be copied except to create one archival file copy, one working copy for the

5  designated attorneys and/or any designated expert, or for use as exhibits at deposition or trial or

6  in filings with the Court, including the Discovery Master." Id. at ¶3(d).

7       4. That "[e]ach receiving Party's original copy set and all copies of Subject Documents,

8  including any copies for use as exhibits or in motion practice, shall be maintained in a secure,

9  locked file at all times when not physically being used by the receiving party's counsel or

10  expert." Id. at ¶3(e); and

11       5. That the producing Party "shall re-designate or de-designate Subject Documents

12  relating to a product within fourteen (14) days of the following events, whichever occurs earlier:

13  (a) the production is first shipped, or (b) the product is first disclosed to a third party without an

14  express confidentiality agreement." Id. at ¶4

15       Good cause appearing, the stipulation is hereby approved and shall be entered as a

16  separate order of the court.

17                       V. CONCLUSION

18       For the reasons set forth above, MGA and Bryant's motion for clarification of the Order is

19  denied.  MGA and Bryant's alternative motion for a protective order pursuant to Rule 26(c),

20  Fed.R.Civ.P., is granted.  The parties shall abide by the terms of the stipulation and order to

21  modify the protective order.

22       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

23  Master, MGA shall file this Order with the Clerk of Court forthwith.

24  Dated: May 15, 2007

                                    HON. EDWARD A. INFANTE (Ret.)

25                                        Discovery Master

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                    13

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER MODIFYING PROTECTIVE ORDER in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT ___T___ PAGE __400__