1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5  (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017–2543
   Telephone:   (213) 443–3000
7  Facsimile:   (213) 443–3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

12  CARTER BRYANT, an individual,        CASE NO. CV 04–9049 SGL (RNBx)

13              Plaintiff,               Consolidated with Case No. 04–9059
                                         and Case No. 05–2727
14        vs.
                                         **DISCOVERY MATTER**
15  MATTEL, INC., a Delaware
    corporation,                         **[To be heard by Hon. Edward Infante
16                                       (Ret.) Pursuant to January 6, 2006
                Defendant.               Order]**
17
                                         **MATTEL'S SEPARATE
18  CONSOLIDATED WITH                    STATEMENT SUBMITTED IN
                                         RESPONSE TO MGA'S SEPARATE
19  MATTEL, INC. v. BRYANT, and          STATEMENT IN SUPPORT OF ITS
                                         MOTION TO QUASH SUBPOENA
20  MGA ENTERTAINMENT, INC. v.           TO BANK OF AMERICA OR, IN
    MATTEL, INC.,                        THE ALTERNATIVE, FOR
21                                       PROTECTIVE ORDER**
                Cross–Defendant.
22                                       [Mattel, Inc's Opposition to MGA's
                                         Motion to Quash and Declaration of
23                                       Melissa Grant filed concurrently
                                         herewith]
24
                                         Hearing Date:       TBA
25                                       Time:               TBA
                                         Place:              TBA
26
                                         **Phase 1:**
27                                       Discovery Cut–off:    January 28, 2008
                                         Pre–trial Conference:  May 5, 2008
28                                       Trial Date:          May 27, 2008

**I.  THE DISCOVERY MASTER SHOULD QUASH OR ENTER A PROTECTIVE ORDER WITH RESPECT TO MATTEL'S REQUESTS THAT ARE THE SAME AS THE ABUSIVELY DRAWN REQUESTS THAT ARE THE SUBJECT OF THE MGA DEFENDANTS' PENDING MOTION TO QUASH (REQUESTS 1–4 TO BANK OF AMERICA)**

**A.  <u>Mattel's Requests and MGA's Responses</u>**

**<u>BANK OF AMERICA REQUEST NO. 1:</u>**

All DOCUMENTS REFERRING OR RELATING TO ISAAC LARIAN from January 1, 1999 to the present, inclusive.

**<u>RESPONSE TO BANK OF AMERICA REQUEST NO. 1:</u>**

The MGA Entities incorporate by reference their General Objections as though fully set forth herein.  The MGA Entities further object to the extent that this request seeks information that is protected from disclosure under the attorney–client privilege, the work product doctrine and/or the joint interest privilege.  The MGA Entities further object to this request to the extent it seeks documents protected by the accountant–client privilege.  The MGA Entities further object to the request to the extent that it seeks documents protected from disclosure by applicable federal and state tax return privileges.  The MGA Entities further object to this request to the extent that it seeks documents that contain trade secrets, confidential, commercially sensitive and/or other proprietary or competitive information that is subject to the MGA Entities' or any other person's constitutional, statutory or common law right of ' privacy or protection.  The MGA Entities further object that this request calls for the production of documents that are not relevant to a claim or defense in the pending litigation or reasonably calculated to lead to the discovery of admissible evidence.  The MGA Entities further object to this request as being overly broad, burdensome and harassing to a non–party to the extent that it seeks to force Bank of America to produce documents or information available from parties to the litigation.  The MGA Entities further object to this request on the grounds that it is overbroad as to subject matter and time; in particular, the MGA Entities object

1  to the definition of "ISAAC LARIAN" on the grounds that it is overbroad, vague

2  and ambiguous.

3  **BANK OF AMERICA REQUEST NO. 2:**

4     All DOCUMENTS REFERRING OR RELATING TO any

5  ACCOUNTS maintained by YOU that are in the name of, for the benefit of or

6  concern ISAAC LARIAN, including but not limited to statements, monthly

7  statements, daily transaction history reports, monthly transaction history reports,

8  deposit reports, deposit slips, canceled checks, signature cards, and

9  COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNTS,

10  created between January 1, 1999 and the present, inclusive.

11  **RESPONSE TO BANK OF AMERICA REQUEST NO. 2:**

12     The MGA Entities incorporate by reference their General Objections as

13  though fully set forth herein. The MGA Entities further object to the extent that this

14  request seeks information that is protected from disclosure under the attorney–client

15  privilege, the work product doctrine and/or the joint interest. privilege. The MGA

16  Entities further object to this request to the extent it seeks documents protected by

17  the accountant–client privilege. The MGA Entities further object to the request to

18  the extent that it seeks documents protected from disclosure by applicable federal

19  and state tax return privileges. The MGA Entities further object to this request to the

20  extent that it seeks documents that contain trade secrets, confidential, commercially

21  sensitive and/or other proprietary or competitive information that is subject to the

22  MGA Entities' or any other person's constitutional, statutory or common law right

23  of privacy or protection. The MGA Entities further object that this request calls for

24  the production of documents that are not relevant to a claim or defense in the

25  pending litigation or reasonably calculated to lead to the discovery of admissible

26  evidence. The MGA Entities further object to this request as being overly broad,

27  burdensome and harassing to a non–party to the extent that it seeks to force Bank of

28  America to produce documents or information available from parties to the

1  litigation. The MGA Entities further object to this request on the grounds that it is

2  overbroad as to subject matter and time; in particular, the MGA Entities object to

3  the definitions of "YOU," "ACCOUNTS," and "ISAAC LARIAN" on the grounds

4  that they are overbroad, vague and ambiguous. The MGA Entities further object on

5  the grounds that this request is vague, ambiguous and overbroad, particularly as to

6  the meaning of "for the benefit of" and "concern."

7  **BANK OF AMERICA REQUEST NO. 3:**

8  DOCUMENTS sufficient to show the account number of all

9  ACCOUNTS maintained by YOU in the name K for the benefit of or concerning

10  ISAAC LARIAN between January 1, 1999 and the present, inclusive.

11  **RESPONSE TO BANK OF AMERICA REQUEST NO. 3:**

12  The MGA Entities incorporate by reference their General Objections as

13  though fully set forth herein.  The MGA Entities further object to the extent that this

14  request seeks information that is protected from disclosure under the attorney–client

15  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

16  Entities further object to this request to the extent it seeks documents protected by

17  the accountant–client privilege.  The MGA Entities further object to the request to

18  the extent that it seeks documents protected from disclosure by applicable federal

19  and state tax return privileges.  The MGA Entities further object to this request to

20  the extent that it seeks documents that contain trade secrets, confidential,

21  commercially sensitive and/or other proprietary or competitive information that is

22  subject to the MGA Entities' or any other person's constitutional, statutory or

23  common law right of privacy or protection.  The MGA Entities further object that

24  this request calls for the production of documents that are not relevant to a claim or

25  defense in the pending litigation or reasonably calculated to lead to the discovery of

26  admissible evidence.  The MGA Entities further object to this request as being

27  overly broad, burdensome and harassing to a non–party to the extent that it seeks to

28  force Bank of America to produce documents or information available from parties

1   to the litigation.  The MGA Entities further object to this request on the grounds that

2   it is overbroad as to subject matter and time; in particular, the MGA Entities object

3   to the definitions of "YOU," "ACCOUNTS," and "ISAAC LARIAN" on the

4   grounds that they are overbroad, vague and ambiguous.  The MGA Entities further

5   object on the grounds that this request is vague, ambiguous and overbroad,

6   particularly as to the meaning of "for the benefit of and "concerning."

7   **BANK OF AMERICA REQUEST NO. 4:**

8           All DOCUMENTS showing or relating to any ACCOUNTS held by

9   ISAAC LARIAN or any ACCOUNTS on which ISAAC LARIAN has signatory

10  authority at any other financial institution.

11  **RESPONSE TO BANK OF AMERICA REQUEST NO. 4:**

12          The MGA Entities incorporate by reference their General Objections as

13  though fully set forth herein.  The MGA Entities further object to the extent that this

14  request seeks information that is protected from disclosure under the attorney–client

15  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

16  Entities further object to this request to the extent it seeks documents protected by

17  the accountant–client privilege.  The MGA Entities further object to the request to

18  the extent that it seeks documents protected from disclosure by applicable federal

19  and state tax return privileges.  The MGA Entities further object to this request to

20  the extent that it seeks documents that contain trade secrets, confidential,

21  commercially sensitive and/or other proprietary or competitive information that is

22  subject to the MGA Entities' or any other person's constitutional, statutory or

23  common law right of privacy or protection.  The MGA Entities further object that

24  this request calls for the production of documents that are not relevant to a claim or

25  defense in the pending litigation or reasonably calculated to lead to the discovery of

26  admissible evidence.  The MGA Entities further object to this request as being

27  overly broad, burdensome and harassing to a non–party to the extent that it seeks to

28  force Bank of America to produce documents or information available from parties

-4-

1    to the litigation.  The MGA Entities further object to this request on the grounds that

2    it is overbroad as to subject matter and time; in particular, the MGA Entities object

3    to the definitions of "ACCOUNTS," and "ISAAC LARIAN" on the grounds that

4    they are overbroad, vague and ambiguous.  The MGA Entities further object on the

5    grounds that this request is vague, ambiguous and overbroad, particularly as to the

6    meaning of "financial institution."

7            **B.       MGA's Statement of Position**

8            Mattel's subpoena to Bank of America suffers from the same fatal

9    defects as Mattel's subpoenas to Magi's bank Wells Fargo and Mr. Lariat's tax

10   accountant Moss Adams.  As detailed in the MGA Defendants' pending Motion to

11   Quash, the Wells Fargo and Moss Adams subpoenas must be quashed because they

12   are overly broad and seek documents that are irrelevant or are unreasonably

13   duplicative or cumulative of other discovery already obtained by Mattel.  (DI.  No.

14   1318 at 13–21.) The MGA Defendants incorporate by reference herein the

15   arguments set forth in their pending Motion to Quash, which apply with equal force

16   to Mattel's subpoena to Bank of America.

17           As with its requests to Wells Fargo and Moss Adams, Mattel has made

18   no attempt to tailor its document requests to Bank of America to any specific set of

19   relevant, non–duplicative, non–cumulative information.  Rather, once again, Mattel

20   has deliberately drafted its requests to be as expansive as possible.  Mattel's

21   subpoena to Bank of America literally demands everything–"All DOCUMENTS

22   REFERRING OR RELATING TO ISAAC LARIAN from January 1, 1999 to the

23   present, inclusive." (Miller Decl., Ex.  1 at Request No.  1.) Indeed, to make sure

24   there is no doubt how broad Mattel intends its subpoena to be, Mattel has

25   specifically demanded nine years' worth of Mr. Larian's "statements, monthly

26   statements, annual statements, daily transaction history reports, monthly transaction

27   history reports, deposit reports, deposit slips, canceled checks, [and] signature

28   cards." (Md. at Request No. 2.)

1    As shown in the MGA Defendants' pending Motion to Quash, such
2    requests are abusively drawn and harassing. (D.I. No. 1318 at 13–19.)  This is
3    particularly true in view of Mr. Larian's recent production of approximately 13,000
4    pages of documents showing his net worth, his income from multiple sources, as
5    well as information regarding his banks and bank accounts.  (Miller Decl., ¶ 10.)
6    Given the many thousands of pages of financial documents that Mattel has received
7    regarding MGA and Mr. Larian, Mattel's requests to their financial institutions for
8    every financial record available is excessive and improper.

9    In addition to seeking overly broad discovery of financial information
10   regarding Mr. Larian, Mattel's subpoena to Bank of America effectively seeks all
11   such information regarding all of Mr. Larian's relatives.  Specifically, Mattel has
12   broadly defined "ISAAC LARIAN" to include Mr. Larian and "all of his ... relatives
13   (whether by blood or marriage)." (Miller Decl., Ex. 1 at 1.)  Thus, Mattel has
14   demanded that Bank of America produce every document from 1999 to the present
15   that it possesses relating to Mr. Larian, his wife, his children, and every other family
16   member, in–law or other relative that Mr. Larian has.

17   Mattel sought the same overly broad categories of financial documents
18   relating to Mr. Larian's relatives from Moss Adams and other non–parties.  As
19   detailed in the MGA Defendants' pending Motion to Quash, such requests are
20   improper and intended only to harass Mr. Larian and his family. (D.I. No. 1318 at
21   19–21.)  Indeed, the Discovery Master recently rejected a motion to compel by
22   Mattel with respect to similar requests for financial information from Mr. Larian's
23   brother, Farhad Larian, finding that "there is little need for the breadth of financial
24   information sought by Mattel" and that "the scope of these three requests unduly
25   intrude into Farhad Larian's private affairs." (D.I. No. 1699 at 12.) The Discovery
26   Master's concerns about the requests to Farhad Larian, who was a former MGA
27   shareholder and executive, apply with greater force here since Mattel's requests to
28

1  Bank of America seek financial documents for all of Mr. Larian's relatives,

2  regardless of their connection to MGA or the allegations in this action.

3  　　　Because Mattel's requests to Bank of America are overly broad and

4  abusively drawn, Mattel's subpoena must be quashed.

5  　　**C.**　　**Mattel's Position in Response.**

6  　　　As the party moving to quash Mattel's subpoena, MGA and Mr. Larian

7  (collectively, "MGA") bear the initial burden of persuasion to demonstrate that

8  Mattel's document requests are improper.  See Green v. Baca, 226 F.R.D. 624, 653

9  (C.D. Cal. 2005).  The burden on the party moving to quash a subpoena is a "heavy

10  one."  Heat and Control, Inc. v. Hester Industries, Inc., 785 F.2d 1017, 1024–25

11  (Fed. Cir. 1986) (noting that "the factors required to be balanced by the trial court in

12  determining the propriety of a subpoena are the relevance of the discovery sought,

13  the requesting party's need, and the potential hardship to the party subject to the

14  subpoena.").  Here, MGA has failed to meet its burden.

15

16  　　**1.**　　**The Documents Sought Are Relevant to The Claims And Defenses At Issue**

17  　　　MGA asserts in conclusory terms that the documents sought from Mr.

18  Larian's bank—the Bank of America—are "irrelevant" to the claims and defenses at

19  issue.  As purported support for that assertion, MGA merely refers the Court (and

20  incorporates by reference) to the arguments made in its pending motion to quash

21  Mattel's subpoenas to MGA's bank, Wells Fargo, and to Mr. Larian's tax

22  accountant, Moss Adams.[1]  As shown in Mattel's opposition to that motion, those

23  arguments are without merit.[2]

24

25

26  　　[1]  See MGA Defendants' Separate Statement in Support of Motion to Quash Subpoena to Bank of America or, in the Alternative for Protective Order ("MGA's

27  Separate Statement re Bank of America") at 5:15–17; see also MGA's Separate Statement in Support of Motion to Quash Subpoenas or, in the Alternative, Motion

28  　　(footnote continued)

1     To begin with, MGA mischaracterizes Mattel's stated need for the

2 documents, artificially limiting it to two issues:  (1) Mattel's commercial bribery

3 claim; and (2) to refute Larian's statement he did not receive a bonus in 2003.  The

4 documents sought from Bank of America are relevant to many more issues in

5 dispute, including Mattel's disgorgement and punitive damages claims, as well as to

6 ascertain MGA and Larian's net worth, and the value of MGA's intellectual

7 property and goodwill.

8         **(a)    The Documents Are Relevant to Disgorgement and
              Constructive Trust Remedies, as Well as Punitive**
9         **Damages**

10     One remedy Mattel seeks is disgorgement of all amounts wrongfully

11 obtained.  The disgorgement remedy also provides for the imposition of constructive

12 trusts to recover the ill–gotten gains of MGA and Isaac Larian that have been

13 transferred to other parties.[3]  For purposes of establishing disgorgement, Mattel

14 must take into account money transferred from MGA and Isaac Larian, regardless of

15 the manner in which it was transferred.  Mattel is entitled to discovery that shows all

16 assets siphoned from MGA or Isaac Larian for which there was no compensation

17 during the period of the alleged wrongful conduct.

18     It is undisputed that disgorgement is a remedy for Mattel's claims

19 against MGA and Larian, including copyright infringement and trade secret

20 misappropriation.  17 U.S.C. § 504(b) and E. Bassett Co. v. Revlon, Inc., 435 F.2d

21 _____

22 for Protective Order, filed December 21, 2007 (Docket # 1318) ("MGA Separate
   Statement re Wells Fargo & Moss Adams"), at 29:13–17.

23
   [2]   See Mattel's Consolidated Separate Statement in Response to MGA's

24 Statement in Support of Motion to Quash Subpoenas or, in the Alternative, for
   Protective Order, filed January 18, 2008 (Mattel's Consolidated Separate

25 Statement) at 32–38.

26 [3]   Exh. B [Second Amended Answer and Counterclaims] to the Declaration of

27 Melissa Grant ("Grant Dec.").  All exhibits are attached to the Grant Dec. unless
   otherwise stated.

28

656 (2d Cir. 1970) (copyright infringement); 4 Callmann, <u>Unfair Competition and Monopolies</u> § 14.45 (4th ed.) and <u>Clark v. Bunker</u>, 453 F.2d 1006, 1011 (9th Cir. 1972) (trades secret misappropriation).  The scope of the disgorgement remedy is set forth in two recent California Supreme Court decisions.  <u>See</u> <u>Kraus v. Trinity Management Servs., Inc.</u>, 23 Cal. 4th 116 (2000); <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134 (2003).  The court indicated that:

> "disgorgement" is a broader remedy than restitution. . . . [A]n order for disgorgement "may compel a defendant to surrender *all* money obtained through an unfair business practice even though not all is to be restored to the persons from whom it was obtained or those claiming under those persons.  It has also been used to refer to surrender of *all* profits earned as a result of an unfair business practice regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice."

<u>Korea Supply</u>, 29 Cal. 4th at 1145 (quoting <u>Kraus</u>, 23 Cal. 4th at 127) (emphasis added).  Moreover, an important part of disgorgement is the imposition of a constructive trust to recover ill–gotten gains that have been transferred to others by a defendant.  A constructive trust is intended to prevent unjust enrichment, with equity compelling the restoration to another of property to which the holder thereof is not justly entitled.  <u>Taylor v. Polackwich</u>, 145 Cal. App. 3d 1014, 1022 (1983); <u>Cal. Civ. Code</u> §§ 2223, 2224.  <u>See also</u> <u>Weiss v. Marchus</u>, 51 Cal. App. 3d 590, 600 (1975) (constructive trust may be imposed in case of fraud, mishandling, or almost any case of wrongful acquisition or detention of property to which another is entitled).  When personal property is in dispute, the legislature has allowed plaintiffs to invoke the remedy of constructive trust.  <u>Cal Civ. Code</u> §§ 2223, 2224.  To create a constructive or involuntary trust only three conditions are necessary: existence of a res, <u>i.e.</u> property or some interest in property, plaintiff's right to that res and defendant's gain of the res by fraud, accident, mistake, undue influence, violation of the trust or other wrongful act. <u>Kraus v. Willow Park Public Golf Course</u>, 140 Cal. Rptr. 744, 73 Cal. App. 3d 354 (1977); <u>see</u> <u>Cramer v. Biddison</u>, 65 Cal. Rptr. 624,

257 Cal. App. 2d 720 (1968).  See Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1067 (1998) (constructive trust); Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445, 454–55 (1997) (equitable lien is proper if unjust enrichment and detrimental reliance are implicated).

Mattel needs the documents sought by the subpoenas to prove the amount the defendants must disgorge.  Housing Rights Center v. Sterling, 2005 WL 3320739, *3 (C.D. Cal. 2005) (finding financial information relevant to disgorgement of profits claim).  Money that properly belonged to Mattel was transferred from MGA or Isaac Larian to an entity controlled by them.  Mattel should be able to understand how that money was used because MGA and Isaac Larian have no right to whatever additional gains were realized with Mattel's money.  See id.  Indeed, the right to those additional gains vests solely in Mattel.  Consequently, banking records from Bank of America are directly relevant.

Furthermore, as the Discovery Master held, as part of its punitive damages remedy, Mattel is entitled to documents reflecting MGA and Larian's net worth.  Southern California Housing Rights Center v. Krug, 2006 WL 4122148, *4 (C.D. Cal. 2006) ("When a punitive damages claim has been asserted, a majority of federal courts permit pretrial discovery of financial information about defendants without requiring the plaintiff to establish a prima facie case on the issue of punitive damages.").  Whether or not assets or money were transferred during the period of wrongdoing is relevant to punitive damages, and Mattel is therefore entitled to documents reflecting any such transfer.

**(b)**   **Mattel is Entitled to Documents Showing or Related to MGA's and Larian's Net Worth**

Documents relevant to MGA and Isaac Larian's net worth, including the value of MGA's goodwill and intellectual property, are necessary for Mattel's experts to determine the damages that accrued to Mattel as a result of MGA's infringement of Mattel's copyrights, and for punitive damages and to defend against MGA's as yet unspecified damages.  Both the Discovery Master and Judge Larson have previously ruled that Mattel is entitled to evidence related to MGA's and Larian's net worth:  "That net worth is generally the subject of expert testimony at trial—a proposition disputed by neither Mattel nor the Court—does not render it an improper subject for a Rule 30(b)(6).  Therefore, the Discovery Master's ruling on this issue is not contrary to law."[4]  See, e.g., Hilao v. Estate of Marcos, 103 F.3d 767, 781–82 & n. 7 (9th Cir. 1996) (approved a jury's discretion to consider financial condition as one relevant factor in awarding punitive damages); Southern California Housing Rights Center v. Krug, 2006 WL 4122148, *4 (C.D. Cal. 2006) ("When a punitive damages claim has been asserted, a majority of federal courts permit pretrial discovery of financial information about defendants without requiring the plaintiff to establish a prima facie case on the issue of punitive damages.").  Here, Larian has failed to produce documents sufficient to determine his net worth, notwithstanding the Discovery Master's Order to do so.[5]

**(c)**   **The Documents Sought Are Relevant to Mattel's Commercial Bribery Claims and Evidence of Bias**

As MGA recognizes, the banking and accounting records sought by Mattel are also relevant because they bear directly on Mattel's commercial bribery claim.  Contrary to MGA's assertion, their relevance goes beyond simply payments to Carter Byrant.  These documents may also lead to evidence of bias and influence

---

[4]   Exh. L at 5 [July 2, 2007 Order]; Exh H, at 15 [December 31, 2007 Order].

1   on potential witnesses.  Such concerns are not theoretical, as evidence demonstrates

2   that MGA was paying Mr. Bryant while it knew he was a Mattel employee.  Mattel

3   is entitled to seek documents that would uncover additional information about MGA

4   and Larian's attempts to bribe Mr. Bryant *or other Mattel employees or vendors*.  As

5   discussed above, contrary to MGA and Larian's argument that the bribery issue is

6   limited to Mr. Bryant, Mattel is entitled to seek information related to their bribery

7   or attempted bribery of other personnel.  At her deposition on December 28, 2007,

8   Veronica Marlow, a third–party witness who long worked directly with Bryant and

9   MGA, testified that she knew of at least three Mattel employees who *for years*

10  worked on Bratz *while they were employed by Mattel*.[6]  This was a shocking

11  revelation.  Neither MGA nor Bryant had disclosed this information, despite

12  repeated Court Orders and despite the fact that at least one of these individuals was

13  a co–worker of Bryant's at Mattel.  To the contrary, both Bryant and MGA gave flat

14  denials under oath that there was any other Mattel employees knowingly involved.[7]

15          Furthermore, payments by or on behalf of MGA, Isaac Larian, or any

16  other defendant to any Mattel employee or witness goes to bias.  Evidence of such

17  bias is relevant and discoverable, especially when it relates to key witnesses.  See

18  United States v. Abel, 469 U.S. 45, 50–51 (1984); see also Wright & Miller, Federal

19  Practice & Procedure: Federal Rules of Evidence § 6095 (bias is a "particularly

20  favored basis for attacking credibility," and "circumstantial evidence of bias" may

21  include evidence of the "payment of bribes or fees").

---

5   Grant Dec. ¶12.

6   Exh. N at 288:8–289:21, 306:8–25; 307:8–308:1; 363:15–21[Deposition Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007].

7   Exh. O at 286:25–287:5 [Dep. Tr. of Carter Bryant, Vol. 2 ("Bryant Tr.")]; Exh. M at 301:2–17 [Dep. Tr. of Lisa Tonnu, Vol. 2 ("Tonnu Tr.)]; Exh. P at 64–70 [MGA's Supp. Responses to Mattel's Revised Third Set of Interrogatories].

-12-

The banking records Mattel requested from financial institutions are relevant to tracking MGA's and Larian's payments to third-parties and witnesses. Bank of America was and is Isaac Larian's bank.[8]  As such, it is an invaluable source of information regarding payments made by Larian, and the documents sought by the subpoena—documents relating to Isaac Larian since 1999, including annual statements, monthly statements, transaction histories, cancelled checks, signature cards, and documents showing which accounts Larian maintains with Bank of America—are highly relevant.

### 2.   MGA Has Not Shown That The Documents Have Been Produced Or Are Otherwise Duplicative

#### (a)   That Documents "May" Be Available From Another Source Is Not Sufficient

MGA and Larian argue that the subpoena should be quashed because Mattel requested similar documents from the parties, and MGA and Larian are in possession of some responsive documents.  These arguments are insufficient grounds to quash the subpoenas.

Even if the document requests served on Bank of America were identical to the requests served on MGA and Larian, there has been no showing— nor is one conceivable—that MGA and Larian have all of the same documents as are in the possession, custody, or control of Bank of America, or any other third–party.  (For example, there is no reason to believe that Larian would have all of the banking records maintained by Bank of America.  Banks are notoriously thorough in their record keeping, and would have a much more detailed paper trail concerning activity in Larian's account than would Larian.)  Without assurance that MGA and Larian have all of the same documents as Bank of America, this objection is meritless.  In State Farm Mutual Auto Ins. Co. v. Accurate Medical, P.C., the district

---

[8]   Exh. I [Larian's Art Attacks deposition testimony]; Grant Dec. ¶14

court rejected a similar argument.  2007 WL 2993840 (E.D.N.Y. Oct. 10, 2007) (denying motion to quash).  There, the plaintiff sought documents regarding third–party financial relationships with the defendant.  In response to the defendant's argument that such documents were available from itself, the court found that it critical that "it is unlikely that the moving defendants would, in fact, possess all the documents sought by plaintiff in the subpoenas." Id. at *1.  Significantly, nowhere has MGA undertaken to make that showing.

Because documents may be available from other sources is not grounds to refuse production.[9]  "[A] person may not avoid a subpoena by saying that the evidence sought from him is obtainable from another." Covey Oil Co. v. Continental Oil Co., 340 F.2d 993, 998 (10th Cir. 1965) (overruled on other grounds); State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840, at *1 (E.D.N.Y. 2007) (same); In re Bergeson, 112 F.R.D. 692, 695 (D. Mont. 1986) (conclusory assertions that documents sought are available from others more economically "does not constitute a showing of unreasonableness or oppressiveness."); see also Plant Genetic Systems, N.V. v. Northrup King Co., Inc., 6 F. Supp. 2d 859, 861–862 (E.D. Mo. 1998) (third party subpoena proper where information sought pertained to a central issue in the underlying claim, it was not burdensome in light of plaintiff's diligent efforts to obtain the information from defendant, and the nonparty had signed protective order prohibiting disclosed information from being seen by plaintiffs counsel or nonparty's competitors).

As held by the State Farm court, "nothing in the Federal Rules of Civil Procedure requires a litigant to rely solely on discovery obtained from an adversary instead of utilizing subpoenas." Id. at *1.

---

[9]  See MGA's Separate Statement re Bank of America Subpoena, at 6; see also MGA's Separate Statement re Wells Fargo & Moss Adams Subpoenas, at 31–32.

-14-

Finally, as discussed below, even if MGA and Larian had these documents, they have not produced them.

### (b)    Neither Larian Nor MGA Have Produced the Documents Sought from Bank of America

MGA argues that the subpoena should be quashed because the information sought is available from and/or was purportedly produced by the parties.  But MGA neglects to mention that Larian failed to produce any documents showing money transfers between him and any MGA entity or any other defendant—notwithstanding the Court's Order to do so.[10]   The prior inconsistencies in what MGA claims to have produced and what it actually did produce is epitomized by its assertion in its Separate Statement that Larian recently produced "13,000 pages of documents showing his net worth, his income from multiple sources, as well as information regarding his banks and bank accounts,"[11] and the statement in Larian's counsel's declaration that "in mid–January Mr. Larian produced to Mattel nearly 50,000 pages" of such documents.[12]  Because MGA document productions do not distinguish "Larian" documents from MGA documents, Mattel has not been able to determine if any of the thousands of of pages MGA defendants have produced in the past three weeks are in fact "Larian" documents.[13]  To date, Mattel has been able to identify only a fraction of the documents produced as even arguably Larian "financial" records.[14]  And none of them include (a) monthly statements of his personal Bank of America account or

---

[10]    Grant Dec., ¶12 & Exh. M [December 31, 2007 Order].
[11]    MGA's Separate Statement re Bank of America Subpoena, at 6:3–6.
[12]    See Declaration of Timothy A. Miller in support of MGA Defendants' Motion to Quash Subpoena to Bank of America or, in the Alternative, for Protective Order, at ¶ 10.
[13]    Grant Dec., ¶11.
[14]    Id., ¶.

accounts, (b) Bank of America cancelled checks or wire transfer receipts reflecting transfers of value to or from Larian and any other defendant or Mattel employee, or (c) countless other documents sought by Mattel's subpoena to Bank of America.[15]

Even the description of documents Larian claims to have produced is notable for its lack of specificity (or bates-numbers).  Indeed, conspicuously missing from its description—and from Larian's production to date—are financial records from 1999 to the present that the Discovery Master has ordered him to produce, including:[16]

• Documents sufficient to determine Isaac Larian's net worth since 1999.

• Larian's personal banking records.

• Documents related to payments to third-parties or defendants other than MGA by Larian, or the Larian trusts (such as to Bryant and other Mattel employees and vendors).

• Documents related to the Larian trusts, including any documents showing Isaac Larian's interest in, payments received, or transfers to those trusts.

In short, Larian cannot refuse to produce relevant and discoverable documents for months, then object when Mattel seeks such documents from third parties.  As the Phase 1 discovery cut–off approached, Larian left Mattel no choice but to seek documents essential to its claims and defenses from third parties, including the Bank of America.

---

[15]  Id., ¶.   The only documents that Larian appears to have produced related to his personal Bank of America account(s)—as opposed to an account of an MGA entity—are those relating to payments made he made to his brother Farhad Larian. Id.

[16]  Id., ¶12.

1

           **(c)**      **Mattel is Entitled to the Requested Documents Because**

2

                     **of Legitimate Concerns of Spoliation and Document**
                     **Tampering**

3           Mattel cannot rely on MGA and Larian to actually produce all

4 responsive documents in their possession, custody and control, or that they will

5 produce it in their original condition.  As discussed above, Veronica Marlow, a

6 third–party witness who long worked directly with Bryant and MGA, testified that

7 she knew of at least three Mattel employees who *for years* worked on Bratz *while*

8 *they were employed by Mattel*.[17]  Neither MGA nor Bryant had disclosed this

9 information, despite repeated Court Orders and despite the fact that at least one of

10 these individuals was a co–worker of Bryant's at Mattel.  To the contrary, both

11 Bryant and MGA gave flat denials under oath that there was any other Mattel

12 employees knowingly involved.[18]  Yet, by defendants' reasoning here, the Court and

13 Mattel should have been denied Ms. Marlow's plainly relevant evidence because it

14 purportedly duplicated discovery requested of defendants.  In fact, defendants made

15 that very argument to Judge Larson in resisting producing Ms. Marlow for

16 deposition in the first place, to no avail.

17           In the past, MGA has produced requested documents only *after* a third–

18 party's production exposed MGA's previous failures to produce.  What documents

19 MGA has produced has been the result of a protracted discovery process in which

20 MGA has demonstrated a pattern of failing to produce relevant, critical, and

21 incriminating, documents until faced with compulsion by the Court or after a third

22 party has already produced them.  For example, in September 2006, a third–party

23 witness, Steven Linker, produced Bratz design drawings and Bratz product

24

25       [17]   Exh. N at 288:8–289:21, 306:8–25; 307:8–308:1; 363:15–21[Deposition

26 Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007].

27

28

1  development documents.[19]  Linker's production included a multitude of Bratz

2  materials he had received from or exchanged with MGA and Bryant before Bryant

3  left Mattel.[20]  Neither MGA nor Bryant had produced many of them, however.

4  Notably, before Linker's testimony, MGA had produced an email relating to Bratz

5  development that Linker's design partner, Liz Hogan, had sent to MGA on

6  October 23, 200—a date which was conveniently *after* Bryant left Mattel.  MGA,

7  however, had not produced the earlier emails—those pre–dating Bryant's last day of

8  employment at Mattel—that Hogan had exchanged with MGA on that very same

9  subject.  Mattel obtained those only after Linker produced them pursuant to

10 subpoena in September 2006.[21]  Thus, it has often been the case in this litigation that

11 MGA has produced relevant and responsive documents only after a third–party has

12 already done so.

13           Furthermore, Mattel must guard against the possibility of further

14 spoliation of evidence and/or document tampering.  Unfortunately, these concerns

15 are not merely speculative or theoretical.  It has already occurred.  For example,

16 former Mattel and present MGA employee Mr. Bryant was ordered—after initial

17 delay and refusal—to produce a computer for inspection in this matter.  Mattel

18 learned that a software program called "Evidence Eliminator" had been installed and

19 run on that hard drive.[22]  In addition, there has been credible evidence adduced in

20 this action that MGA has tampered with documents by altering their creation dates,

21 as indicated by fax headers (which were deleted).  The Court responded to the

22

23 

---

24 [18] Exh. O at 286:25–287:5 [Dep. Tr. of Carter Bryant, Vol. 2 ("Bryant Tr.")];
   Exh. M at 301:2–17 [Dep. Tr. of Lisa Tonnu, Vol. 2 ("Tonnu Tr.)]; Exh. X at 64–70

25 [MGA's Supp. Responses to Mattel's Revised Third Set of Interrogatories].

26 [19] Grant Dec. ¶25
   [20] Id.

27 [21] Id.
   [22] Exh. Q, at 285:15–287:6 [12/28/07 Deposition Transcript of Richard Irmen].

28

MATTEL'S SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT
IN SUPPORT OF MOTION TO QUASH BANK OF AMERICA SUBPOENA

1  concern of spoliation, and specifically the alteration of the creation date of the

2  documents described above, in an August 9, 2006 order.[23]  Although it did not find

3  the evidence rose to the level of requiring the appointment of a Court appointed

4  expert witness at the time.  It held, "There are serious questions concerning the

5  handling of these critical documents" that caused the Court "much concern about

6  whether the truth seeking functions of the adversarial system have been

7  fundamentally compromised in this case." Id. at 11:10–13.  The Court also stressed

8  its "concern" over MGA's "handling of documents in its possession."[24]  Clearly,

9  therefore, Mattel is within its rights to obtain documents from third–parties even if

10  also in the possession of MGA and Larian.

11       Given the unavailability of this information from both MGA, Larian,

12  and other sources, MGA's efforts to thwart Mattel's discovery requests seeking this

13  information thus far, and the very real concern over spoliation and tampering, Mattel

14  should not be denied this discovery from third parties.

15            **3.    MGA Has Not Shown Undue Burden**

16       Bank of America has made no burden objection.  It stands ready to

17  produce.  But, MGA and Larian apparently claim that the requests are so

18  burdensome to justify quashing the subpoenas.  A party claiming that production of

19  requested documents is unduly burdensome bears the burden of proving up their

20  objection.  Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C.

21  Cir. 1984) (reversing district court's decision quashing subpoena).  The party cannot

22  rest on conclusory assertions.  Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966)

23  (reversing the quashing of a subpoena because of lack of specific evidence of

24  burden).  "The party must provide specific and compelling proof that the burden is

25

26  _____

27  [23]  Exh. K, at 9:4–18:14 [Court's August 9, 2006 Order].
    [24]  Id. at 17:23–26.

28

-19-

1  undue." JZ Buckingham Investments, LLC v. United States, 78 Fed. Cl. 15, 25

2  (Fed. Cl. Ct. 2007) (denying motion to quash).

3          Here, MGA and Isaac Larian offer no evidence—such as a declaration

4  or testimony—regarding the time, cost, or burden involved in responding to Mattel's

5  Bank of America subpoena.  Nor could they.  "The burden of showing that a

6  subpoena is unreasonable and oppressive *is upon the party to whom it is directed*."

7  Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966) (emphasis added).   Bank of

8  America has not asserted that subpoena is unduly burdensome.  To the contrary,

9  Bank of America simply advised Mattel of its intention to comply with the subpoena

10  without objection.[25]

11          **4.      The Subpoenas Are Not Overbroad**

12          MGA and Larian's assertion that the Mattel's requests are abusively

13  drawn or unduly overbroad is also meritless given that Mattel's document requests

14  are directed to financial institutions.  Financial institutions generate and retain

15  precisely the types of documents responsive to Mattel's requests.  Therefore,

16  MGA's objections of overbreadth and harassment are baseless.

17          Defendants mistakenly rely on Ocean Atlantic Woodland Corp. v. DRH

18  Cambridge Homes, Inc., 292 F. Supp. 2d 923 (N.D. Ill. 2003), to argue that broad

19  financial discovery on nonparties is necessarily unduly burdensome.  The Ocean

20  Atlantic court, however, did not hold that such discovery is always unwarranted;

21  rather, it held that such discovery is permissable provided it is tied to the claims and

22  defenses at issue.  Here, unlike in Ocean Atlantic, the Court has expressly held that

23  Larian's financial records—including his personal banking records—are relevant to

24  Mattel's damages claim.[26]

25

26  _____

27  [25]  Grant Dec. ¶6 and Exh. F [B of A letter]

28  [26]  Exh. H at 15–16. [December 31, 2007 Order]

MATTEL'S SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT
IN SUPPORT OF MOTION TO QUASH BANK OF AMERICA SUBPOENA

1   Finally, MGA's claim, based on the Discovery Master's January 28,

2   2008 Order, that the Bank of America subpoena seeks overly broad financial

3   discovery regarding each of Larian's relatives is unavailing.  In the January 28, 2008

4   Order, the Discovery Master denied Mattel's motion to compel "unfettered"

5   financial discovery from Isaac Larian's brother, Farhad Larian.[27]  In so ruling, the

6   Court stated that such broad discovery from a non-party was not warranted because

7   it was not relevant to the claims and defenses at issue, but only to the non-party's

8   credibility and bias as a witness.[28]  In contrast, as discussed above, the documents

9   sought by Mattel's Bank of America subpoena pertain Isaac Larian—a party to this

10   action—and are directly relevant to claims and defenses at issue.

11   Further, the subpoena seeks only banking records from a financial

12   institution—not broad categories of financial documents from each of Larian's

13   relatives as MGA suggests.[29]   Thus, MGA's argument that the requests are

14   "intended only to harass Mr. Larian and his family" is at best disingenuous.[30]

15   Finally, MGA's objection to subpoena on the grounds that it calls for

16   information concerning Larian's children or other relatives.  As explained above,

17   Mattel is entitled to information concerning Larian's net worth.  Payments that

18   Larian may have made to his children, relatives, employees or acquaintances during

19   the time period reflected in the subpoenas are relevant to his net worth, and efforts

20   he may have made to conceal his true net worth.  Moreover, transfers of value or

21   payments to others during the relevant time may also be relevant to Mattel's

22   remedies, including disgorgement, constructive trust, and punitive damages.

---

[27]   Exh. S at 12 [January 28, 2008 Order].
[28]   Id.
[29]   MGA Separate Statement re Bank of America Subpoena, at 6-7.
[30]   Motion at 6:9.

MATTEL'S SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT
IN SUPPORT OF MOTION TO QUASH BANK OF AMERICA SUBPOENA

1    DATED:  February 7, 2008       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

2

3                                     By /s/ _____

4                                        Jon D. Corey
                                       Attorneys for Mattel, Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28