CALDWELL LESLIE & PROCTOR, PC
MICHAEL J. PROCTOR, SBN 148235
Email: proctor@caldwell-leslie.com
LINDA M. BURROW, SBN 194668
Email: burrow@caldwell-leslie.com
1000 Wilshire Blvd., Suite 600
Los Angeles, California 90017-2463
Telephone (213) 629-9040
Facsimile (213) 629-9022

Attorneys for Third Party Witness
ANNE WANG

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiffs, | Consolidated with Case Nos. CV 04-9059 & CV 05-2727 |
| v. | |
| MATTEL, Inc., a Delaware corporation, | **THIRD PARTY WITNESS ANNE WANG'S OPPOSITION TO MATTEL, INC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS; DECLARATION OF LINDA M. BURROW, EXHIBITS** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | **Date:       TBD**<br>**Time:       TBD**<br>**Location:   TBD** |

CALDWELL
LESLIE &
PROCTOR

## I. INTRODUCTION

As the Local Rules make clear, a motion to compel is intended only as a last resort, after all attempts to compromise have failed. *See* C.D. Local R. 37-1. Defendant Mattel, Inc. ("Mattel") nevertheless brought this motion while—to Third-Party Witness Anne Wang's understanding—the parties were still meeting and confer were still ongoing. More egregiously, Mattel misrepresents the status of those negotiations. For example, Ms. Wang provided information to Mattel that she had never represented MGA or Isaac Larian, MGA's Chief Executive Officer, nor had she represented any party other than Mr. Bryant in a transaction adverse to MGA or Mr. Larian. Nevertheless, MGA argues in its motion that Ms. Wang has "refused to confirm" whether she has documents relating to communications with MGA or Mr. Larian other than those related to her representation of Mr. Bryant. Mattel's motion should be denied based upon its failure properly to meet and confer alone.

Moreover, many of the issues Mattel raises in its motion were addressed in Ms. Wang's deposition, which was completed *before* the motion was filed. Ms. Wang testified that she had never represented MGA or Mattel and had never even met Mr. Larian. Wang also testified as to the limited duration of her representation of Mr. Bryant and the tasks she performed on his behalf. Ms. Wang also authenticated her billing records, which she previously had produced, and which show that she billed a total of 7.1 hours in representing Mr. Bryant.

Since Mattel filed its motion, the parties have met and conferred (as they would have done had Mattel complied with its meet and confer obligation) and, in an effort to compromise, Ms. Wang has agreed to produce a number of documents that had been withheld as privileged. There is now only one remaining document at issue – Ms. Wang's September 2000 retainer agreement (the "Retainer Agreement") with Mr. Bryant, which contains confidential attorney-client communications subject to the attorney-client privilege. Mattel has supplied no basis upon which the

1  Retainer Agreement could be relevant – particularly in light of Ms. Wang's
2  deposition testimony – nor is there any basis for invading the privilege that protects
3  the confidential communications reflected in that Agreement. Mattel's motion
4  should be denied.

## II.   BACKGROUND

### A.   *Mattel Serves Ms. Wang With An Overbroad Document Subpoena*

Third Party Witness Anne Wang, who is currently a partner with Christie,
Parker & Hale, LLP, was, while a partner at her prior firm, Pretty & Schroeder, Mr.
Bryant's counsel during his negotiations with MGA in September 2000. On
October 26, 2007, Mattel, Inc. ("Mattel") served Ms. Wang with a document
subpoena (the "Subpoena"). *See* Declaration of B. Dylan Proctor in Support of
Mattel, Inc.'s Motion to Compel Production of Documents by Anne Wang ("Proctor
Decl."), Exh. 1. The Subpoena contained 28 different categories of documents,
many of which were stated so broadly that they arguably could have required Ms.
Wang to produce hundreds of files concerning clients and matters having nothing to
do with this litigation. *See id.*

The Subpoena originally asked for documents to be produced on November
12, 2007 – two weeks after the Subpoena was served. *Id.* Pursuant to an agreement
between Ms. Wang's counsel and counsel for Mattel, Michael Zeller of Quinn
Emanuel Urquhart Oliver & Hedges LLP ("Quinn Emanuel"), Ms. Wang served
written objections to the subpoena on November 27, 2007 and produced documents
on December 4, 2007. *See* Proctor Decl, Exhs. 2, 3, 4.

### B.   *Mattel Fails To Complete The Meet And Confer Process*

Following a "meet and confer" letter from Mr. Zeller's partner at Quinn
Emanuel, B. Dylan Proctor, counsel for Mattel and Ms. Wang spoke on December
18, 2007. *See* Declaration of Linda M. Burrow ("Burrow Decl."), ¶ 2. During that
conversation, Ms. Wang's counsel informed Proctor that the Subpoena was grossly
overbroad and that a diligent search had been conducted for responsive documents.

CALDWELL
LESLIE &
PROCTOR

*Id.* Ms. Wang's counsel agreed to confirm whether Ms. Wang had ever represented – or represented another client adverse to – MGA or Larian, and thus whether Ms. Wang might have in her possession documents responsive to Request No. 4 in Mattel's subpoena. *Id.* Although Mattel claims that Ms. Wang refused to confirm whether she had such documents, on December 26, 2007, Ms. Wang's counsel sent Mr. Proctor a letter informing him that Ms. Wang "has not at any time represented MGA or Larian and does not recall ever representing another client in a transaction adverse to MGA or Larian." Proctor Decl., Exh. 11.[1] Neither Proctor nor anyone else representing Mattel never responded to this letter. Indeed, Mattel's counsel never contacted Ms. Wang's counsel again concerning the document production. *Id.* Instead, Mattel simply filed this motion on January 28, 2007 – more than a month after the last meet and confer conversation – without prior notice that any motion to compel was to be filed and without any further attempt at meeting and conferring. Burrow Decl., ¶ 4.

Mattel's motion was particularly surprising in light of the fact that counsel for Ms. Wang and Mattel had been in contact concerning Ms. Wang's deposition. On January 11, 2008, Christopher Price – another Quinn Emanuel attorney – attempted to contact Ms. Wang directly concerning the scheduling of her deposition and the service of her deposition subpoena. Burrow Decl., ¶ 5. Ms. Wang's counsel then contacted Mr. Price and Mr. Proctor to object to Mr. Price's inappropriate attempt to contact a represented witness. *Id.*, Exh. A. Counsel for Mattel and Ms. Wang had several more contacts over the next several days in attempting to schedule Ms. Wang's deposition. *Id.* No one representing Mattel ever informed Ms. Wang's counsel that a motion to compel would be forthcoming. *Id.*

---

[1] Curiously, Mattel attached this letter to Mr. Proctor's declaration in support of this motion, although the motion itself ignores both its existence and its content.

CALDWELL LESLIE & PROCTOR

### C.     Mattel Subpoenas Ms. Wang For Deposition

In her January 28, 2008 deposition, Ms. Wang testified that she represented Mr. Bryant for a limited time and only in connection with his original negotiations with MGA. *Id.*, Exh. B. Ms. Wang also authenticated her billing records, which showed that Ms. Wang spent a *total* of 7.1 in representing Mr. Bryant.[2] *Id.* Shon Morgan, the Quinn Emanuel partner who took Ms. Wang's deposition, did not ask her about any of the documents that are the subject to Mattel's motion. *Id.*, ¶ 6. Nor did Mr. Morgan ask Ms. Wang anything about the documents listed on her privilege log, even though she expressly mentioned the log as a document that had refreshed her recollection in preparing for her deposition. *Id.*, Exh. B. Instead, Mattel simply filed this motion after Ms. Wang's deposition had concluded. *Id.*, ¶ 4

### D.     Ms. Wang Attempts To Compromise After Receiving Mattel's Motion

Although Ms Wang believed that all of her objections were well-taken, in an effort to reach a compromise with Mattel, Ms. Wang agreed to produce various drafts of Mr. Bryant's September 2000 agreement with MGA. Burrow Decl., ¶ 7. Ms. Wang also clarified in a letter dated December 26, 2007 that, except for her representation of Mr. Bryant, she had never represented or been adverse to MGA or Mr. Larian – thus mooting Mattel's request for additional documents reflecting communications with MGA or Mr. Larian. *See* Proctor Decl., Exh. 11. Finally, counsel for Ms. Wang reiterated that one of the draft agreements listed on the privilege log contained handwritten notes made by Ms. Wang in June 2004 in

---

[2] Mattel states, without explanation, that these records were "heavily redacted." As Ms. Wang's counsel explained to Proctor – and as Ms. Wang testified in her deposition – these redactions were made to protect confidential information concerning clients *other* than Mr. Bryant. *See* Burrow Decl., ¶ 2, Exh. B.

1    response to a request from Mr. Bryant's counsel after this litigation was filed.

2    Burrow Decl., ¶ 7.  Based upon these representations and compromises, Mattel

3    agreed to withdraw its motion except with respect to the Retainer Agreement.  *Id.*, ¶

4    7, Exhs. C, D.

5    **III.**    **THIS COURT SHOULD DENY MATTEL, INC'S MOTION TO**

6         **COMPEL**

7       As described above, now that the meet and confer process has in fact been

8    completed there is now only one document at issue in this motion – Ms. Wang's

9    September 2000 retention agreement with Mr. Bryant.  Because Mattel has failed to

10    comply with its meet and confer obligations with respect to any of the documents

11    sought by this motion, and because Mattel has failed to demonstrate any basis upon

12    which the privilege should be invaded with respect to this document, Mattel's

13    motion should be denied.

14       ***A.***     ***Mattel Did Not Comply With Its Meet and Confer Obligations***

15       Central District Local Rule 37-1 requires that, prior to filing a discovery

16    motion, the parties must confer in a *good faith effort* to…eliminate as many of the

17    disputes as possible."  C.D. Local R. 37-1; *Cf. Excess Ins. Co., Ltd. v. Rochdale Ins.*

18    *Co.*, 05 Civ. 10174, 2007 WL 2900217, at *1 (S.D.N.Y. Oct. 4, 2007) ("The

19    purpose of the meet and confer requirement is to resolve discovery matters without

20    the court's intervention to the greatest extent possible.  Only those matters that

21    remain unresolved after serious attempts to reach agreement should be the subject of

22    a motion to compel.").  As described above, the parties began their meet and confer

23    on December 18, 2007, and Ms. Wang's counsel provided information to Mr.

24    Proctor on December 26, 2007.  Burrow Decl., ¶¶ 2, 3.  Mr. Proctor did not contact

25    Ms. Wang's counsel again concerning Ms. Wang's document production.  Instead,

26

27

28
CALDWELL
LESLIE &
PROCTOR

1  Mattel simply filed this motion.[3]  More egregiously, Mattel misrepresented the

2  status of the meet and confer itself by, for example, arguing that Ms. Wang refuses

3  to produce communications between herself and MGA or Larian – communications

4  which Ms. Wang's counsel had informed Mattel in writing did not exist.  *See*

5  Proctor Decl., Exh. 11.  Had it taken the time to complete the meet and confer

6  process, as required by Rule 37-1, Mattel could have substantially narrowed, if not

7  eliminated altogether, the number of document requests in dispute and, thus, greatly

8  reduced the burden on Ms. Wang, a nonparty to this litigation, and the Court, of

9  addressing Mattel's sweeping discovery demands.  Mattel's failure to do so is

10  grounds, by itself, to deny Mattel's motion. *See, e g, Cable & Computer Tech, Inc.*

11  *v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 649-650 (C.D. Cal. 1997) (sanctioning

12  party for failing to adequately meet and confer); *Walt Disney Co. v. DeFabiis*, 168

13  F.R.D. 281, 285 (C.D. Cal. 1996) (same).

14      **B.**    ***Mattel Is Not Entitled To Discover Mr. Bryant's September 2000***

15          ***Retention Agreement With Ms. Wang***

16        Through the post-filing meet and confer process, Mattel has agreed to

17  withdraw its motion with respect to communications between Ms. Wang and MGA

18  and/or Isaac Larian, which Mattel now recognizes do not exist.  *See* Burrow Decl., ¶

19  7, Exh. C.  Moreover, Ms. Wang has agreed to produce all drafts of Mr. Bryant's

20  2000 agreement with MGA – except the draft which contains Ms. Wang's

21  handwritten comments.  Those comments were added by Ms. Wang after this

22  lawsuit was filed at the request of Mr. Bryant's counsel, and are thus protected by

23

24

25      [3] Mattel's delay in filing this motion constitutes an additional ground upon

26  which this Court could deny Mattel's request for relief. *See* 8A Wright, et al.,
  *Federal Practice and Procedure: Civil 2d § 2285* (2007) (noting that where "the

27  moving party has unduly delayed, the court may conclude that the motion [to

28  compel] is untimely").

1  the attorney-client privilege and the attorney work product doctrine. *See* Burrow

2  Decl., ¶ 7; Exh. D. The only remaining document, therefore, is the September 2000

3  Retainer Agreement.

### 1.     The Retainer Agreement Is Not Relevant

5  Mattel has asserted no basis upon which Ms. Wang's more than seven-year-

6  old Retainer Agreement with Mr. Bryant is in any way relevant to this litigation,

7  especially in light of the testimony that Ms. Wang already has provided regarding

8  the nature and duration of her representation of Mr. Bryant. To the contrary,

9  throughout the meet and confer process, Mattel has argued that this agreement

10  should be produced for the sole reason that "retainer agreements have been

11  produced in this case." Burrow Decl., ¶ 8. While Ms. Wang is not a party to these

12  proceedings, documents provided by Mattel's counsel to support its position

13  indicate that the agreements that have been produced concerned fee agreements

14  pertaining to the instant litigation, such as the agreement between MGA and Littler

15  Mendelson (Mr. Bryant's former counsel) regarding the payment of his fees. *See*

16  *id.*, Exh. 8. Mattel has not identified, and Ms. Wang is unaware of, any retainer

17  agreements not directly related to this litigation that have nonetheless been

18  produced.

### 2.     The Retainer Agreement Is Privileged

20  In any event, production of the agreement in question would violate the

21  attorney client privilege. While "client identity and the nature of the fee

22  arrangement between attorney and client are not protected from disclosure by the

23  attorney-client privilege," *United States v. Blackman*, 72 F.3d 1418, 1424 (9th Cir.

24  1995), a court will not order production of a retainer agreement if such production

25  would "compromise confidential communications between attorney and client." *Id.*

26  Consistent with Ninth Circuit law, Ms. Wang has already produced all of her billing

27  records relating to Mr. Bryant, *see* Proctor Decl., Exh. 4, and has testified that Mr.

28  Bryant paid her fees. *See* Burrow Decl., Exh. B. Ms. Wang also testified that her

CALDWELL
LESLIE &
PROCTOR

representation of Mr. Bryant was limited to the negotiation over his September 2000 agreement with MGA and that the representation was limited to a few weeks. Burrow Decl., Exh. B.

The only thing that Ms. Wang has not produced is her Retainer Agreement with Mr. Bryant, which documents, among other things, her privileged discussions with Mr. Bryant as to the advice he hoped she would render and the tasks he intended that she perform. Burrow Decl., ¶ 8. Because production of this Agreement would reveal confidential communications between Ms. Wang and Mr. Bryant, that Agreement is subject to the attorney-client privilege and need not be produced.

## IV.    CONCLUSION

For all the foregoing reasons, Third-Party Witness Anne Wang respectfully requests that this Court deny Mattel's motion to compel.

DATED:  February 11, 2008          Respectfully submitted,

CALDWELL LESLIE & PROCTOR, PC
MICHAEL J. PROCTOR
LINDA M. BURROW


By _____
       LINDA M. BURROW
Attorneys for Third Party Witness
ANNE WANG

CALDWELL
LESLIE &
PROCTOR

# BURROW
# DECLARATION

## DECLARATION OF LINDA M. BURROW

1.      I am a shareholder in the law firm Caldwell Leslie & Proctor, PC, counsel for Third-Party Witness Anne Wang.  I am licensed to practice law in the State of California and am a member of the bar of this Court.  I make this declaration in support of Ms. Wang's Opposition to Mattel, Inc.'s Motion to Compel Documents.  I have personal knowledge of the facts contained within this declaration.  If called to testify, I could and would testify competently thereto.

2.      On December 18, 2007, I spoke to B. Dylan Proctor, a partner at Quinn Emanuel Urquart Oliver & Hedges LLP ("Quinn Emanuel") concerning issues he had raised with respect to Ms. Wang's document production.  In that call, I informed him, among other things, that the billing records Ms. Wang produced were redacted to protect confidential information concerning clients *other* than Mr. Bryant and that all of Mr. Bryant's information had been left unredacted.  I also informed Mr. Proctor that the Subpoena was grossly overbroad and that a diligent search had been conducted for responsive documents.  I also agreed to consult with Ms. Wang with respect to whether she had ever represented, or represented another client adverse to, MGA or Isaac Larian.

3.      On December 26, 2007, I sent a letter to Mr. Proctor informing him that Ms. Wang had never represented MGA or Mr. Larian or represented another client in a transaction adverse to MGA or Mr. Larian.  That letter was attached to Mr. Proctor's declaration as Exhibit 11, although it is not referenced in Mattel's Motion to Compel.

4.      Following my December 26, 2007 letter, neither Mr. Proctor nor any other attorney representing Mattel ever contacted me concerning Ms. Wang's document production.  Instead, I first learned that Mattel intended to file a motion to compel when I received the motion, which was delivered to my office sometime after hours on January 28, 2008.

CALDWELL
LESLIE &
PROCTOR

-9-

5.     On January 11, 2008, I learned from Ms. Wang that Christopher Price, an attorney who is of counsel to the Quinn Emanuel firm, attempted to contact Ms. Wang directly concerning the scheduling of her deposition and service of a deposition subpoena. Attached hereto as Exhibit A is a true and correct copy of my letter to Mssrs. Price and Proctor concerning this contact. I spoke with Mr. Price several more times over intervening days in an effort to schedule Ms. Wang's deposition. Mr. Price never raised the document production and never indicated that a motion to compel would be forthcoming.

6.     Ms. Wang was deposed by Shon Morgan, a Quinn Emanuel partner, in Quinn Emanuel's Los Angeles offices on January 28, 2008. Mr. Morgan did not ask Ms. Wang anything about the documents that are the subject of this motion or the documents listed in her privilege log, even though she expressly mentioned the log as a document that had refreshed her recollection in preparing for her deposition. Attached hereto as Exhibit B are true and correct copies of relevant excerpts from the rough transcript of Ms. Wang's deposition.

7.     After receiving the Motion to Compel, I contacted Mr. Proctor in an effort to resolve some of the issues with respect to Ms. Wang's document production. In an effort to reach a compromise, Ms. Wang agreed to produce various drafts of Mr. Bryant's September 2000 agreement with MGA. Ms. Wang also agreed to clarify that she did not have in her possession, custody or control any documents concerning communications with MGA or Isaac Larian – other than those relating specifically to Carter Bryant. Finally, I reiterated that one of the draft agreements listed on the privilege log contained handwritten notes made by Ms. Wang in June 2004 in response to a request from Mr. Bryant's counsel in this. Based upon these representations and compromises, Mattel agreed to withdraw its motion except with respect to the Retainer Agreement. Attached hereto as Exhibits C and D are true and correct copies of my February 7, 2008 and February 10, 2008 letters to Mr. Proctor reflecting these compromises.

CALDWELL
LESLIE &
PROCTOR

-10-

8.     The only remaining document at issue in this Motion is Ms. Wang's
September 2000 retainer agreement with Mr. Bryant.  I have reviewed this
document and determined that it contains confidential communications between
Mr. Bryant and Ms. Wang which are subject to the attorney-client privilege.
Although I discussed this document with Mr. Proctor on at least two occasions, he
has not articulated any basis for the relevance of this document to this case.
Instead, Mr. Proctor told me that "retainer agreements have been produced in this
case" and thus Ms. Wong's Retainer Agreement must also be produced.  I am
aware of this Court's order holding that the fee agreement between Mr. Bryant's
prior counsel, Littler Mendelson, and MGA regarding the payment of Mr. Bryant's
fees must be produced.  Mr. Proctor did not, however, identify any agreements,
such as the Retainer Agreement, that were not directly related to the payment of
fees in this litigation that have nonetheless been produced in discovery.

I declare under the penalty of perjury under the laws of the United States of
America that the foregoing is true and correct.

Executed on February 11, 2008, at Los Angeles, California.


LINDA M. BURROW

CALDWELL
LESLIE &
PROCTOR

# EXHIBIT A

# Caldwell Leslie

Caldwell Leslie & Proctor, PC

1000 Wilshire Boulevard, Suite 600  Los Angeles, CA  90017-2463   Tel 213.629.9040   Fax 213.629.9022   www.caldwell-leslie.com

<u>**VIA EMAIL (PDF) &**</u>
<u>**FIRST-CLASS MAIL**</u>

**LINDA M. BURROW**
burrow@caldwell-leslie.com

January 14, 2008

B. Dylan Proctor, Esq.
Christopher E. Price, Esq.
Quinn Emaunel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street
10th Floor
Los Angeles, CA  90017

Re:     *Bryant v. Mattel, Inc.*

Dear Counsel:

I understand from my client, Anne Wang, that Mr. Price left her a message last week concerning service of an order for her deposition. As your firm is well-aware, we represent Ms. Wang in connection with this matter.

I presume that your attempt to contact Ms. Wang directly was an oversight. Nevertheless, please ensure in the future that all communications with Ms. Wang are directed to me.

Very truly yours,

Linda M. Burrow

cc:     Michael J. Proctor, Esq.

EXHIBIT ___A___

# EXHIBIT B

# DEPOSITION

# EXCERPTS

# FILED UNDER SEAL

EXHIBIT B

# EXHIBIT C

# Caldwell Leslie

Caldwell Leslie & Proctor, PC

1000 Wilshire Boulevard, Suite 600  Los Angeles, CA  90017-2463   Tel 213.629.9040   Fax 213.629.9022   www.caldwell-leslie.com

VIA EMAIL (PDF) &                                    **LINDA M. BURROW**
FIRST-CLASS MAIL                                     burrow@caldwell-leslie.com

February 7, 2008

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street
10th Floor
Los Angeles, CA  90017

Re:     *Bryant v. Mattel, Inc.*

Dear Dylan:

Further to recent telephone conversations, I have enclosed documents bearing Bates
labels WANG 00008 through WANG 00043. These documents, which my client,
Anne Wang, had previously withheld from production on privilege grounds, are
being produced in an effort to reach a compromise with respect to your January 28,
2008 motion to compel. These documents were listed as entries 4, 8, 9 and 10 on
Ms. Wang's privilege log. Ms. Wang's agreement to produce these documents is not,
and should not be construed as, waiver of any privilege over any communication that
may refer or relate to these documents. In exchange for Ms. Wang's agreement to
produce these documents, you have agreed to withdraw the portion of your motion
to compel that seeks their production.

In addition, as we discussed, this letter is to confirm that Ms. Wang does not have in
her possession, custody or control any documents relating or referring to any
communications with MGA or Isaac Larian except as those communications refer or
relate to Mr. Bryant. Accordingly, Ms. Wang does not have any additional documents
responsive to your Document Request No. 4. As we agreed, the confirmation that
Ms. Wang does not have these documents in her possession renders moot the
portion of your motion that seeks their production.

After careful consideration, I do not believe that Ms. Wang's retention agreement
with Mr. Bryant is discoverable. Accordingly, I will be filing an opposition to your
motion to compel with respect to this document only. As you and I agreed, that
opposition is due on Tuesday, February 12, 2008 and your reply will be due a week
later.

EXHIBIT __C__



B. Dylan Proctor, Esq.
February 7, 2008
Page 2

Please let me know immediately if the above does not comport with your understanding.

Thank you for your consideration in this matter.

Very truly yours,

Linda M. Burrow

Enclosures

cc:     Michael J. Proctor, Esq. (w/o enclosures)

# EXHIBIT D

# Caldwell Leslie

Caldwell Leslie & Proctor, PC
1000 Wilshire Boulevard, Suite 600  Los Angeles, CA  90017-2463   Tel 213.629.9040   Fax 213.629.9022   www.caldwell-leslie.com

<u>**VIA EMAIL (PDF) &**</u>
<u>**FIRST-CLASS MAIL**</u>

**LINDA M. BURROW**
burrow@caldwell-leslie.com

February 10, 2008

B. Dylan Proctor, Esq.
Quinn Emaunel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street
10th Floor
Los Angeles, CA  90017

Re:    *Bryant v. Mattel, Inc.*

Dear Dylan:

I realized that my February 7, 2008 letter did not reflect our agreement with respect to the second document listed on Ms. Wang's privilege log, which is the draft MGA agreement containing Ms. Wang's privileged handwritten notes that were made at the request of Mr. Bryant's counsel in June 2004, after this litigation had been filed. These notes are subject to the attorney-client privilege and the attorney work product doctrine. You therefore agreed not to pursue your motion to compel with respect to this document. As you know, Ms. Wang has already produced the remaining draft agreements listed on our privilege log.

As we agreed – and as I correctly stated in my February 7, 2008 letter – Ms. Wang will, on January 11, 2008, be filing an opposition to your motion to compel with respect to the September 2000 retainer agreement only.

Please contact me immediately if the above does not comport with your understanding.

Very truly yours,

Linda M. Burrow

cc:    Michael J. Proctor, Esq. (w/o enclosures)

EXHIBIT____D____

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 1000 Wilshire Boulevard, Suite 600, Los Angeles, California 90017-2463.

On February 11, 2008, I served the foregoing document(s) described as: **THIRD PARTY WITNESS ANNE WANG'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS; DECLARATION OF LINDA M. BURROW, EXHIBITS** on all interested parties in this action.

### SEE ATTACHED SERVICE LIST

[X]   By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ]   **BY MAIL**   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]   **BY OVERNIGHT COURIER** I caused each envelope with postage prepaid to be sent by Overnite Express.

[ ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth on this date.

[ ]   **BY PERSONAL SERVICE** I delivered such envelope by hand to the offices of the addressee.

[X]   **BY ELECTRONIC MAIL** I personally served in ".PDF" format, the document(s) described above, with attachments, to the individuals stated on the attached service list to their known email addresses

Executed on February 11, 2008, at Los Angeles, California.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

MELISSA HERNANDEZ
Type or Print Name

Signature

CALDWELL
LESLIE
& PROCTOR

-1-

1

**SERVICE LIST**

2

| | |
|---|---|
| 3 John B. Quinn<br>Michael T. Zeller<br>Jon D. Corey<br>Timothy L. Alger<br>QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>***Attorneys for Plaintiff and Cross-Defendant Matterl, Inc.*** | Thomas J. Nolan<br>SKADDEN ARPS SLATE MEAGHER & FLOM, LLP<br>300 S. Grand Avenue, Suite 3400<br>Los Angeles, CA 90071<br>***Attorneys for MGA Entertainment, Inc.*** |
| John W. Keker<br>Michael H. Page<br>Christa M. Anderson<br>KEKER & VAN NEST, LLP<br>710 Sansome Street<br>San Francisco, CA 94111<br>***Attorneys for Carter Bryant*** | Mark E. Overland<br>David E. Scheper<br>Alexander H. Cote<br>OVERLAND BORENSTEIN SCHEPER & KIM, LLP<br>300 S. Grand Avenue, Suite 2750<br>Los Angeles, CA 90071-3144<br>***Attorneys for Carlos Gustavo Machado*** |

CALDWELL
LESLIE
& PROCTOR