1 | THOMAS J. NOLAN (Bar No. 66992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 | 300 South Grand Avenue
Los Angeles, California  90071-3144
3 | Telephone:  (213) 687-5000
Facsimile:  (213) 687-5600
4 | E-mail:      tnolan@skadden.com

5 | RAOUL D. KENNEDY (Bar No. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 | Four Embarcadero Center, 38th Floor
San Francisco, California  94111-5974
7 | Telephone:  (415) 984-6400
Facsimile:  (415) 984-2698
8 | E-mail:      rkennedy@skadden.com

9 | Attorneys for MGA Entertainment, Inc.,
MGA Entertainment (HK) Limited,
10 | MGAE De Mexico, S.R.L. De C.V., and ISAAC LARIAN

11 | **UNITED STATES DISTRICT COURT**

12 | **CENTRAL DISTRICT OF CALIFORNIA**

13 | **EASTERN DIVISION**

14 | CARTER BRYANT, an individual,      ) CASE NO. CV 04-9049 SGL (RNBx)

15 |                          Plaintiff,     ) Consolidated with Case No. 04-9059
                                         ) and Case No. 05-2727
16 |          v.                             )
                                         ) **DISCOVERY MATTER**
17 | MATTEL, INC., a Delaware          )
corporation,                            ) **[To be heard by Discovery Master**
18 |                                        ) **Hon. Edward A. Infante (Ret.)]**
                                         )
19 |                          Defendant.    ) **MGA'S MEMORANDUM OF**
                                         ) **POINTS AND AUTHORITIES IN**
20 | _____     ) **OPPOSITION TO MATTEL'S**
                                         ) **MOTION TO COMPEL MGA TO**
21 | Consolidated with MATTEL, INC. v. ) **PRODUCE COMMUNICATIONS**
BRYANT and MGA                      ) **REGARDING THIS ACTION**
22 | ENTERTAINMENT, INC. v.           )
MATTEL, INC.                          ) **[Declarations of (1) Amy S. Park**
23 |                                        ) **and (2) Andrew C. Temkin filed**
                                         ) **concurrently herewith]**
24 |
                                          Date:   TBD
25 |                                       Time:   TBD
                                          Place:  TBD
26 |

27 |

28 |

1

# **TABLE OF CONTENTS**

2

**PAGE**

3

TABLE OF AUTHORITIES ............................................................................. ii

4

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

5

I.   PRELIMINARY STATEMENT ................................................................. 1

6

II.   STATEMENT OF FACTS .......................................................................... 3

7

    A.   Nearly Three Years Ago, Mattel Served Request No. 48 and
        MGA Timely Objected to the Request and Refused to Produce

8

        Documents. ......................................................................................... 3

9

    B.   Mattel Made No Attempt to Seek Production of Documents in
        Response to Request No. 48 for Nearly Three Years Until Two-

10

        and-a-Half Weeks Before the Discovery Cut-Off. ............................ 4

11

III.   ARGUMENT .............................................................................................. 6

12

    A.   The Discovery Master Should Reject Request No 48 Because It is
        Overly Broad and Unduly Burdensome. ........................................... 6

13

14

        1.   Even with Mattel's Proposed Modifications, Request No.
            48 is Still Overly Broad and Unduly Burdensome. .............. 7

15

        2.   Mattel's Demand for Non-Privileged Communications
            Involving MGA's Past and Present Trial Counsel Is

16

            Particularly Egregious and Should Be Rejected. ................... 12

17

        3.   The Discovery Master has Rejected Similar Requests as
            Overly Broad and Unduly Burdensome. ............................... 14

18

19

    B.   The Discovery Master Should Reject Request No. 48 Because it
        is Cumulative and Duplicative of the Mattel's Other Document

20

        Requests and Documents Mattel Has Already Received. .................. 16

21

    C.   *If* the Discovery Master Allows Some Discovery Based on
        Request No. 48, Cost-Shifting is Appropriate. ................................. 18

22

IV.   CONCLUSION ........................................................................................ 20

23

24

25

26

27

28

MGA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO
COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Arnold v. Janssen Pharmaceutica, Inc.*, No. 01 C 8138, 2003 U.S. Dist. LEXIS 16380 (N.D. Ill. Sept. 10, 2003) ............................................................. 13

*Funai Electric Co. v. Orion Electric Co.*, Nos. 02 Civ. 2605, 01 Civ. 3501, 2002 U.S. Dist. LEXIS 14466 (S.D.N.Y. Aug. 6, 2002) ................................... 13

*Harnden v. Key*, No. CV F 02 6529 REC LJO P, 2006 U.S. Dist. LEXIS 94388 (E.D. Cal. Dec. 15, 2006) .......................................................................... 10

*Lectrolarm Custom System v. Pelco Sales, Inc.*, 212 F.R.D. 567 (E.D. Cal. 2002) .......................................................................................................... 17, 18

*M. McGee Design Studio v. Brinson*, No. 94 C 1644, 1994 U.S. Dist. LEXIS 9789 (N.D. Ill. July 14, 1994) ........................................................................... 13

*Mattel, Inc. v. Walking Mountain Products*, 353 F.3d 792 (9th Cir. 2003) ............ 12

*Michelle M. v. Dunsmuir Joint Union School District*, No. Civ. S-04-2411, 2006 U.S. Dist. LEXIS 14547 (E.D. Cal. May 15, 2006) .............................. 1

*Miller v. Trans Union, LLC*, No. 06 C 2883, 2007 U.S. Dist. LEXIS 59730 (D. Ill. 2007) ................................................................................................... 17

*Pinnacle Pizza Co. v. Little Caesar Enterprises*, No. CIV 04-4170-KES, 2005 U.S. Dist. LEXIS 41062 (D.S.D. Nov. 2, 2005) ...................................... 15, 22

*Ridge Chrysler Jeep, L.L.C. v. Daimler Chrysler Services North America, L.L.C.*, No. 03 C 760, 2004 U.S. Dist. LEXIS 26861 (N.D. Ill. Dec. 29, 2004) ................................................................................................................. 9

*Ryan v. National Union Fire Insurance Co.*, No. 3:03-CV-00644, 2006 U.S. Dist. LEXIS 7366 (D. Conn. 2006) ................................................................... 17

*Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995) ...................................... 10

*Twigg v. Pilgrim's Pride Corp.*, No. 3:05-CV-40, 2007 U.S. Dist. LEXIS 14669 (D.W. Va. Feb. 28, 2007) ...................................................................... 15

*In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331 (N.D. Ill. 2005) .............. 10

*In re Sulfuric Acid Antitrust Litigation*, 230 F.R.D. 527 (N.D. Ill. 2005) .......... 9, 10

*In re Urethane Antitrust Litigation*, No. 04-MD-1616-JWL-DJW, 2008 U.S. Dist. LEXIS 1733 (D. Kan. Jan. 8, 2008) .................................................... 15

*Visa International Serv. Associate v. JSL Corp.*, No. 2:01-cv-00294-LRH-LRL, 2006 U.S. Dist. LEXIS 77451 (D. Nev. Oct. 20, 2006) ........................ 17

*West v. Miller*, No. 05 C 4977, 2006 U.S. Dist. LEXIS 56243 (N.D. Ill. Aug. 11, 2006), *aff'd*, 2007 U.S. Dist. LEXIS 11360 (N.D. Ill. Feb. 13, 2007)........... 8

## STATUTES

Fed. R. Civ. P. 26(b)(2)(C)(iii) ................................................................. 17

Fed. R. Civ. P. 37(a)(5)(B)....................................................................... 23

## MEMORANDUM OF POINTS AND AUTHORITIES

Counter-defendants MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V., and Isaac Larian (collectively, the "MGA Defendants") file this memorandum in opposition to Mattel's Motion to Compel MGA to Produce Communications Regarding this Action ("Motion to Compel").

## I.   PRELIMINARY STATEMENT

In March 2005, Mattel served document Request No. 48 that is now the subject of its Motion to Compel, broadly requesting that MGA produce "[a]ll non-privileged COMMUNICATIONS between YOU and any PERSON that REFER OR RELATE TO this action."[1]  In April 2005, MGA timely objected on numerous grounds, including irrelevance, overbreadth and undue burden, and unequivocally stated that "MGA will not produce documents in response to this request."[2]  Mattel's request was improper three years ago and it remains improper today.  Mattel's Motion to Compel fails to show otherwise.

Request No. 48 is patently overbroad and it is readily apparent that Mattel "made no attempt to narrow the request or identify specific responsive documents" when it drafted the request. *Michelle M. v. Dunsmuir Joint Union Sch. Dist.*, No. Civ. S-04-2411, 2006 U.S. Dist. LEXIS 14547, at *10 (E.D. Cal. Mar. 15, 2006). Recognizing the request's overbreadth, Mattel now proposes to limit the request to communications regarding this action that involve either (1) at least one MGA employee who holds or held the position of manager or higher, (2) any MGA "agent" including MGA's current and former trial counsel, or (3) any former Mattel employee who later worked for MGA.

---

[1]  Declaration of B. Dylan Proctor in Support of Mattel's Motion to Compel ("Proctor Decl."), Ex. 1 at 16: 18-20 (Request No. 48).

[2]  Declaration of Amy S. Park in Support of MGA's Opposition to Mattel's Motion to Compel ("Park Decl."), Ex. D at 44:22-23.

1    Even as modified, Request No. 48 remains overly broad and unduly
2    burdensome because Mattel's proposed "limitations" fail to narrow the request's
3    scope in any meaningful way.  Request No. 48 still demands documents regarding a
4    very broad subject matter—communications "that REFER OR RELATE TO this
5    action."  Indeed, the request has not been tailored to address any specific relevant
6    issue in this litigation and remains nothing more than a generalized catch-all request
7    for an untold number of communications that might conceivably be related in any
8    way to this case.  In addition, Mattel's proposed modifications do little to reduce the
9    burden imposed by the request because Mattel's categories exclude only a narrow
10   subset of communications had between lower-level employees or between those
11   employees and third parties, while still demanding all communications had by the
12   more-than-200 employees who now serve or once served at the manager level and
13   above, regardless of whom that manager spoke with.

14   Moreover, Mattel's purported limitations do not eliminate the most egregious
15   aspect of Request No. 48—Mattel's demand for all non-privileged communications
16   involving MGA's past and present trial counsel in this *ongoing* litigation.  Mattel's
17   assertion that such communications might reveal impeachment evidence does not
18   establish any compelling need for the documents.  Nor does it justify invading the
19   litigation files of MGA's attorneys and forcing them spend countless hours
20   reviewing documents – nearly all of which would presumably "refer" or "relate" to
21   this action and most of which would be privileged –  to try to cull out the relatively
22   small set of non-privileged communications that may be responsive to Request No.
23   48.  The sheer burden of that undertaking outweighs any marginal benefit to Mattel.

24   Mattel asserts that Request No. 48 seeks documents relevant to bias and its
25   RICO claims.  But that assertion fails to justify Mattel's sweeping demand.
26   Regardless of whether *some* documents responsive to Request No. 48 might arguably
27   be relevant to bias and to Mattel's RICO claims, the request, as drafted and as
28   modified, is too broad, sweeping in substantial amounts of irrelevant information

1 (including information relating to Phase 2, which has been stayed). Mattel cannot

2 use a shotgun approach to discovery in the hopes that some relevant information

3 might be produced. Mattel is obligated to tailor discovery requests to its specific

4 needs. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir.

5 2003) (quashing subpoena issued by Mattel and Quinn Emanuel where they made

6 "'[n]o attempt … to try to tailor the information request to the immediate needs of

7 the case'") (first alteration in original) (quotations and citations omitted). Mattel has

8 failed to comply with its discovery obligations.

9       Request No. 48 is also improper because it (i) seeks documents that are

10 duplicative and cumulative of documents that MGA has already produced in

11 response to Mattel's 2700+ other requests for production, or (ii) is similar to other

12 sweeping requests that the Discovery Master has rejected as improperly overbroad.

13      Over the past four years, Mattel has received more than 4.2 million pages of

14 documents in response to more than 2,700 document requests. Now, with the

15 discovery period over, MGA should not be forced to spend its valuable trial

16 preparation time engaged in a fishing expedition for documents that are largely

17 irrelevant, are duplicative or cumulative of documents that have already been

18 produced, or where the marginal relevance outweighs the significant burden imposed

19 on MGA. Accordingly, Mattel's Motion to Compel should be denied.

20 **II.   STATEMENT OF FACTS**

21      **A.   Nearly Three Years Ago, Mattel Served Request No. 48 and MGA
           Timely Objected to the Request and Refused to Produce Documents.**
22

23      On March 14, 2005, Mattel served MGA with Mattel Inc.'s First Set of

24 Requests for Production of Documents and Tangible Things to MGA Entertainment

25 Inc. ("First Set of Requests"), which contained 100 requests.[3] Request No. 48 from

26 that set—the only request at issue in the Motion to Compel—requests:

27 _____

28      [3] *See* Proctor Decl., Ex. 1.

All non-privileged COMMUNICATIONS between YOU and any PERSON that REFER OR RELATE TO this action.[4]

The First Set of Requests broadly defined "YOU" to mean "MGA Entertainment, Inc. and any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control."[5]  It also defined "REFER OR RELATE TO" expansively to mean "constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner."[6]

On April 13, 2005, MGA timely responded to Mattel's First Set of Requests.[7] MGA objected to Request No. 48 for on numerous grounds, including irrelevance, overbreadth and undue burden.[8]  MGA unequivocally stated that "MGA will not produce documents in response to this request."[9]

**B.   Mattel Made No Attempt to Seek Production of Documents in Response to Request No. 48 for Nearly Three Years Until Two-and-a-Half Weeks Before the Discovery Cut-Off.**

Since April 2005 when MGA notified Mattel that it would not produce documents in response to Request No. 48, the MGA Defendants have produced more than 4.2 million pages of documents in response to more than 2,700 other individual requests for production propounded by Mattel.[10]

---

[4] Proctor Decl., Ex. 1 at 16: 18-20.

[5] Proctor Decl., Ex. 1 at 2.

[6] Proctor Decl., Ex. 1 at 3.

[7] *See* Park Decl., Ex. D.

[8] Park Decl., Ex. D at 44:9-15.

[9] Park Decl., Ex. D at 44:22-23.

[10] Park Decl. ¶ 7.

1    Despite having ample opportunities since April 2005 to raise any issue

2  regarding MGA's response to Request No. 48, Mattel did nothing with respect to the

3  request until January 10, 2008—nearly three years later.[11]  On that day, Mattel

4  requested to meet and confer with MGA on various requests, including Request No.

5  48.[12]  Between January 18, 2008, and February 4, 2008, the parties conferred

6  regarding several requests, including Request No. 48.[13]

7    During the meet-and-confer sessions, MGA reiterated its previously asserted

8  objections to Request No. 48.[14]  MGA also stated that those objections, which were

9  apt three years ago when MGA served its objections to the request, applied with

10  greater force now because the parties were on the eve of the Phase 1 fact discovery

11  cut-off and in response to other requests, MGA had already produced more than four

12  million pages of documents, many of which are also responsive to Request No. 48.[15]

13    Although Mattel asserts that it "narrowed the Request to substantially limit"

14  the scope of requested documents, the record shows otherwise.  In fact, Mattel

15  offered to exclude certain types of lower-level employee communications from the

16  scope of Request No. 48, but would not agree to any other meaningful limitation.[16]

17  For example, Mattel still demanded that MGA produce all communications

18  concerning this action that involve any MGA employee that now holds or once held

19  a position at the manager level and above – a request that implicates more than 200

20  MGA employees.

21    Even more egregiously, Mattel refused to exclude communications involving

22  MGA's past or present trial counsel in this case, even though MGA made clear that

23

---

24  [11] Park Decl., Ex. G.

25  [12] Park Decl., Ex. G.

26  [13] Park Decl. ¶ 9 & Exs. H, I; Proctor Decl.¶¶ 5, 6 & Ex. 4.
    [14] Park Decl. ¶ 12.

27  [15] Park Decl. ¶ 12.

28  [16] Park Decl. ¶ 13.

MGA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION

1   the request for such documents was improper, overly broad and unduly burdensome,

2   in particular because it would require MGA to examine virtually ever

3   communication had by its current and former counsel in this matter since one would

4   expect that nearly every communication by those firms would "refer" or "relate" to

5   this action.[17]  MGA further explained that the fact that Mattel is not seeking

6   privileged communications does not alleviate the burden because MGA would still

7   have to review each communication to determine whether it is privileged or contains

8   only some privileged material that presumably would have to be redacted.[18]

9        MGA made clear that Mattel's demand to search for and produce attorney

10  communications in respect of this ongoing litigation was wholly improper, and that

11  Mattel's demand for all non-privileged communications by management-level

12  employees was likewise an improper fishing expedition.  In the spirit of compromise,

13  however, as to the request for management-level communications, MGA stated that

14  if Mattel insisted in proceeding with such a fishing expedition, MGA would agree to

15  search for and produce responsive communications *if* Mattel would agree to pay the

16  costs.[19]

17        The parties did not reach any agreement regarding Request No. 48, and Mattel

18  filed its Motion to Compel a few hours later.

19  **III.**   **<u>ARGUMENT</u>**

20       **A.**   **<u>The Discovery Master Should Reject Request No 48 Because It is Overly Broad and Unduly Burdensome</u>.**

21

22        Request No. 48 is an overly broad and unduly burdensome catch-all request

23  designed to capture virtually *any* communication concerning this case.  Such

24  requests are improper and courts generally decline to enforce them.  *See, e.g., Arnold*

25  *v. Janssen Pharmaceutica, Inc.*, No. 01 C 8138, 2003 U.S. Dist. LEXIS 16380, at *1

26          [17] Park Decl. ¶ 17.

27          [18] *Id.*

28          [19] Park Decl. ¶ 15.

1  (N.D. Ill. Sept. 10, 2003) (denying a motion to compel where a request for

2  production was so broad it essentially asked for any possible relevant document

3  which plaintiff failed to request in any other request); *M. McGee Design Studio v.*

4  *Brinson*, No. 94 C 1644 1994 U.S. Dist. LEXIS 9789 (N.D. Ill. July 14, 1994)

5  (Federal Rules encourage parties to present their general need for information in

6  discrete, focused requests, and seek to prevent broad, catch-all document requests);

7  *Funai Elec. Co. v. Orion Elec. Co.*, Nos. 02 Civ. 2605, 01 Civ. 3501, 2002 U.S. Dist.

8  LEXIS 14466, at *12 (S.D.N.Y. Aug. 6, 2002) (denying a motion to compel

9  production on a request seeking all documents that refer to or constitute

10  communications between Funai and Orion, including between counsel, and between

11  Funai and any third-party "pertaining to Orion or any Orion product" as overbroad

12  and "tantamount to asking for 'discovery on issues in the complaint.'" (citations

13  omitted).[20]

14       Mattel effectively admits that Request No. 48 as drafted is overly broad

15  because it does not seek production of all documents responsive to the request.

16  Indeed, Mattel acknowledges that Request No. 48 is broad enough to cover "random,

17  low level employees' uninformed discussions about this action"—which are

18  undeniably irrelevant.[21]  Thus, there is no question that Request No. 48 as drafted is

19  overly broad and improper on its face.  Moreover, Mattel's proposed "limitations" do

20  nothing to correct the overbreadth or undue burden imposed by Request No. 48.

### 1.   Even with Mattel's Proposed Modifications, Request No. 48 is Still Overly Broad and Unduly Burdensome.

---

[20] Mattel incorrectly cites *Funai Elec.* as "overruling overbreadth objection to plaintiff's requests for production calling for 'all communications' between defendant and any third party pertaining to plaintiff or plaintiff's products." (Mot. to Compel at 6:9-12.)  As shown in the text above, that case stands for *the exact opposite proposition*—namely, that such a request is overbroad.

[21] Mot. to Compel at 12:11-13.

1    Recognizing that Request No. 48 is overly broad and unduly burdensome,

2  Mattel's Motion to Compel now proposes to seek only the following documents in

3  response to Request No. 48:

4    (1) communications that involve at least one MGA employee who holds or

5  held a position of manager or higher;

6    (2) communications that involve MGA's agents and/or attorneys acting on

7  MGA's behalf, including MGA's past and present trial counsel; and

8    (3) communications that involve a former Mattel employee who

9  communicated about this action while employed by MGA, regardless of title.[22]

10    Mattel's proposed modifications, however, exclude only a very narrow set of

11  communications—*i.e.*, communications involving MGA employees who have never

12  worked for Mattel or have never held the position of manager or higher at MGA.

13  Although Mattel declares this modification to be "significant," as demonstrated

14  below, Mattel's proposed modification fails to meaningfully narrow the scope of

15  Request No. 48 or reduce the undue burden that would be imposed on MGA if it

16  were required to collect and produce responsive documents.

17    Even as modified, Request No. 48 still requires the production of

18  communications concerning a very broad subject matter—communications "that

19  REFER OR RELATE TO this action."  As such, Request No. 48 is still overly broad

20  and unduly burdensome because it is essentially remains a generalized catch-all

21  request for communications that might be related in any conceivably way to this case.

22  Numerous courts have rejected such requests as overly broad and unduly

23  burdensome.  *See In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL-DJW, 2008

24  U.S. Dist. LEXIS 1733, at *21 (D. Kan. Jan. 8, 2008) ("[T]his Court has held on

25  numerous occasions that a discovery request is overly broad and unduly burdensome

26  on its face if it uses an omnibus term such as 'relating to,' 'pertaining to,' or

27  _____

28    [22] Mot. to Compel at 5:3-8.

-8-

1 'concerning' to modify a general category or broad range of documents or

2 information.); *Twigg v. Pilgrim's Pride Corp.*, No. 3:05-CV-40, 2007 U.S. Dist.

3 LEXIS 14669, at *26-30 (D. W. Va. Feb. 28, 2007) (request for "all other related

4 documents" found facially overbroad and unduly burdensome); *Pinnacle Pizza Co. v.*

5 *Little Caesar Enters., Inc.*, No. CIV 04-4170-KES, 2005 U.S. Dist. LEXIS 41062

6 (D.S.D. Nov. 2, 2005) (denying motion to compel production responsive to request

7 because marginal benefit was outweighed by undue burden created by omnibus

8 phrase in request).

9      The overbreadth of Mattel's modified version of Request No. 48 is readily

10 apparent when the scope of the request is compared to the issues that Mattel claims

11 the requested documents are relevant to.  As the moving party, Mattel bears the

12 burden of showing that Request No. 48 seeks relevant documents.  *See Soto v. City*

13 *of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).  Mattel advances two arguments

14 as to why Request No. 48 seeks relevant documents.  First, Mattel argues that the

15 request seeks information relevant to potential bias of witnesses because

16 communications might involve discussions of a witness's prospective testimony or

17 might show that MGA agreed to pay a witness's fees.[23]  Second, Mattel argues that

18 Request No. 48 seeks information relevant to its RICO counterclaims because

19 communications might evidence commission of alleged predicate acts.[24]  Neither

20 assertion justifies the expansive scope of Request No. 48.

21      For example, Mattel contends that the requested documents may reveal

22 communications showing that MGA has agreed to pay fees for witnesses.  Request

23 No. 48 is hardly an efficient or effective means to obtain such information because

24 the request does not identify any particular witnesses, nor is it tailored to seek only

25 those communications that relate to offers or agreements by MGA to pay fees.

26

27    [23] Mot. to Compel at 6:16-7:9.

28    [24] Mot. to Compel at 7:20-9:23, 10:22-11:21.

1   Similarly, Mattel's assertion that Mr. Larian might have discussed prospective

2   testimony with his brother Farhad Larian or other witnesses does not explain why

3   Mattel needs communications involving hundreds of other MGA employees, agents,

4   or attorneys.[25]

5        Mattel's relevance argument regarding its RICO claims is equally unavailing.

6   Mattel's RICO claim is a Phase 2 issue.[26]  The Court has ordered that "[a]ll

7   discovery related to Phase 2 . . . is STAYED until further order of the Court."[27]  Thus,

8   Mattel cannot rely on its RICO claims to justify its demand for any communications

9   at this time.[28]

10       Because Request No. 48, as drafted or as modified, is not tailored to seek the

11  information that Mattel claims it needs, the request is over broad and should be

12  rejected.  *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir.

13  2003) (quashing subpoena issued by Mattel and Quinn Emanuel where they made

14  "'[n]o attempt … to try to tailor the information request to the immediate needs of

15  the case'") (first alteration in original) (quotations and citations omitted).

16       Mattel's proposed modification also does not alleviate Request No. 48's

17  overbreadth or undue burden with regard to the number of individuals encompassed

18  by the request.  For example, Mattel claims to exclude communications involving

19  _____

20       [25] Mot. to Compel at 6:19-23.

21       [26] Park Decl., Ex. B (Mattel's Modification of Defendants' Proposal, listing RICO counterclaims as Phase 2 issues) and Ex. C at 2 (July 2, 2007 Minute Order of J. Larson adopting Mattel's Modification of Defendants' Proposal).

22       [27] Park Decl., Ex. A at 3.

23       [28] Mattel also cannot rely on its RICO claims to demonstrate the relevance of Request No. 48 because Request No. 48 is not targeted at communications relating to

24  any particular allegations underlying Mattel's RICO claim or involving any of the specific individuals alleged to have participated in the alleged criminal enterprise.

25  For example, in its counterclaim, Mattel concedes that numerous former Mattel employees who went to work for MGA have nothing to do with Mattel's RICO

26  claims.  (Mattel's Counterclaim at ¶ 77 ("Mattel believes that some of those former Mattel employees may be observing their obligations not to misappropriate, disclose

27  or use Mattel's confidential and proprietary information.").)  Request No. 48, however, seeks communications involving any former Mattel employee, regardless

28  of whether that employee is believed to have done anything wrong.

1  lower-level employees, but, as shown above, Mattel's exclusion only applies to a

2  narrowly defined subset of lower-level employee communications.  Additionally,

3  although Mattel claims that it does not seek any irrelevant or uninformed discussions

4  about the case, Mattel assumes without any basis that the persons who fall within its

5  proposed categories are all informed about the case and have based any discussions

6  about the case on such information.

7         In addition, the sheer number of MGA employees who would fall within the

8  scope of the modified Request No. 48 proposed by Mattel renders that request

9  improper.  Mattel's first category (*i.e.,* MGA employees who hold or held a position

10 of manager or higher) encompasses 204 employees, and the third category (*i.e.,*

11 former Mattel employees who have worked for MGA) covers additional employees

12 that may exceed 70 or more.[29]  Requiring MGA to review the hard-copy and email

13 files of so many employees in the hopes of finding communications that Mattel does

14 not already have and that might arguably be relevant is excessive and unduly

15 burdensome, particularly at this late stage.

16        Although various unknowns make it impossible to estimate at this time the

17 actual financial burden having to produce the documents sought by Mattel would

18 impose on MGA, it is clear that MGA would incur potentially hundreds of thousands

19 of dollars in additional costs and would waste valuable trial preparation time.

20 Adding name restrictions into MGA's electronic database for the current and former

21 MGA managers and former Mattel employees alone would cost at least $6,750-

22 $8,750.[30]  MGA would also incur at least an additional $2,700-$2,800 for every 300-

23 500 documents that must be reviewed.  Conservatively assuming that each of the

24 approximately 274 employees implicated by Request No. 48 has only 100 documents

25

26

27 [29] Park Decl. ¶¶ 16, 18; Declaration of Andrew C. Temkin in Support of MGA's Opposition to Mattel's Motion to Compel ("Temkin Decl."), ¶ 3.

28 [30] Temkin Decl. ¶ 5.

1  to review, it would cost $147,960-$246,000 to review the documents.[31]  Given that

2  the volume of documents to be reviewed for responsiveness would likely exceed 100

3  documents per employee, the actual cost would likely be much higher.  Of course,

4  these estimates do not take into account the countless documents that – as explained

5  below – would have to be searched if MGA were required to examine all of the

6  communications involving its trial counsel.

7          **2.   Mattel's Demand for Non-Privileged Communications**
           **Involving MGA's Past and Present Trial Counsel Is**
8          **Particularly Egregious and Should Be Rejected.**

9          The overbreadth and undue burden imposed by Request No. 48 is especially

10  pronounced with respect to Mattel's demand for communications that involve

11  MGA's agents and/or *attorneys* acting on MGA's behalf.  Rule 26(b)(2)(C)(iii)

12  authorizes the Court to limit discovery where the burden or expense of the proposed

13  discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2)(C)(iii); *Visa Int'l*

14  *Serv. Assoc. v. JSL Corp.*, No. 2:01-cv-00294-LRH-LRL, 2006 U.S. Dist. LEXIS

15  77451 (D. Nev. 2006); *Miller v. Trans Union, LLC*, No. 06 C 2883, 2007 U.S. Dist.

16  LEXIS 59730 (D. Ill. 2007).  In cases involving requests for production of attorney

17  communications, care should be taken since "[t]here is a much stronger likelihood

18  that communications between counsel and client after the commencement of an

19  action will be entangled with privileged information relating to that action."  *Ryan v.*

20  *Nat'l Union Fire Ins. Co.*, No. 3:03-CV-00644, 2006 U.S. Dist. LEXIS 7366, *29 (D.

21  Conn. Feb. 28, 2006).  Indeed, this entanglement is one of the very things that

22  contributes to the difficulty of sorting out what should be produced and what should

23  be withheld. Because of the difficulty of sorting our privileged documents from the

24  non-privileged documents, courts often find that the burden outweighs any minimal

25  benefit that might flow from discovery of the documents.

26

27  _____

28  [31] Temkin Decl. ¶ 4, 6 (assuming the lower rate).

1    Mattel should not be permitted to obtain communications from MGA's current

2  or prior counsel that relate or refer to this *ongoing* litigation.  Mattel's assertion that it

3  only seeks non-privileged documents is largely meaningless because MGA would

4  still be required to scrutinize carefully every single document for privilege given that

5  most of the files in the possession of MGA's trial counsel would be privileged.

6  When considering the sheer volume of paper that this case has already generated

7  over nearly four years and the fact that the overwhelming majority of those

8  documents relate or refer to this action, the task of reviewing and potentially

9  redacting communications involving trial counsel is more than merely unduly

10  burdensome—it borders on *impossibility*.[32]

11    In a similar case, *Lectrolarm Custom Sys. v. Pelco Sales, Inc.*, the court held

12  that the plaintiff's broad discovery request (similar to Mattel's request here) was

13  impermissibly designed to discover the thoughts, opinions and strategy of the

14  defendant and not to obtain factual information about the matters at issue:

15       All documents that set forth, ***refer or relate to
       communications***, meetings, contacts or other dealings
16       between Pelco, directly or ***through its attorneys*** or other
       parties and Fireman's Fund Insurance Company concerning
17       this lawsuit, Lectrolarm, the '088 patent, SPECTOR mark
       and/or the SPECTRA mark.
18

19  212 F.R.D. 567, 569 (E.D. Cal. 2002) (emphasis added).  This, of course was not

20  tolerated by the court, which denied the plaintiff's motion to compel. *Id.* at 571.

21  Mattel's tactics here likewise should not be countenanced.

22

23

---

24    [32] Because Request No. 48 is limited to non-privileged communications, Mattel
presumably does not seek a privilege log with respect to any withheld documents.
25  However, to the extent Mattel does seek a privilege log, Mattel's request would
impose an even greater undue burden in view of the many thousands of privileged
26  communications involving MGA's trial counsel that have occurred since this
litigation commenced. *See Aiken v. Rimkus Consulting Group, Inc.*, 2007 WL
27  1101210 (S.D. Miss. April 4, 2007) ("[T]he Court finds that the litigation file of
Defendant's counsel of record in this case is not discoverable and need not be
28  included in a privilege log.")

1   As discussed above, MGA would incur a substantial cost in trying to identify,

2   review and produce documents responsive to Request No. 48.  Moreover, the costs

3   relating to collecting, reviewing and potentially redacting attorney files would easily

4   dwarf the estimates relating to MGA employee communications, in view of the

5   volume of paper that this case has generated so far, the fact that almost every

6   attorney communication would refer or relate to this action, and the fact that each

7   such communication would require special scrutiny to avoid waiving any privilege.[33]

8   In addition, because MGA has had three separate firms represent it in connection

9   with this litigation, the number of attorneys whose files would have to be reviewed is

10  considerable.

11  Under the circumstances, Mattel has failed to demonstrate a compelling need

12  for all non-privileged communications involving MGA's attorneys relating to this

13  action and MGA should not be required to incur the substantial expense to search

14  through its attorneys' files for such documents.

### 3.   The Discovery Master has Rejected Similar Requests as Overly Broad and Unduly Burdensome.

17  The Discovery Master has already considered *and rejected* requests similar to

18  Request No. 48 for their overbreadth and undue burden.  For example, the Discovery

19  Master rejected a similarly overbroad request for documents and communications

20  relating to this action from Mattel, Inc.'s First Set of Requests for Documents and

21  Things to Isaac Larian, which sought:

22  REQUEST FOR PRODUCTION NO. 196:

23      All DOCUMENTS RELATING TO any statements made by
        YOU to any stock analyst, investment analyst, investment bank,
24      institutional lender, or venture capital fund RELATING TO this
        ACTION.[34]

---

27  [33] Park Decl. ¶ 17.

28  [34] Proctor Decl., Ex. 7 at 49:6-9.

-14-

MGA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION

1  In rejecting this request along with a group of other requests that included requests

2  for all communications between Mr. Larian and the press regarding Carter Bryant or

3  Mattel since 1999,[35] the Discovery Master held that "[a]lthough several of the

4  requests encompass potentially relevant documents, the requests are *overbroad* and

5  encompass documents that have *little to no relevance* to the claims and defenses in

6  the case.  *Not one of the requests is limited to relevant subject matters . . . ."*[36]

7  Significantly, Request No. 196 to Mr. Larian is almost completely subsumed within

8  Request No. 48 at issue here, and thus much narrower than the request at issue here.

9  Nevertheless the Discovery Master rejected Request No. 196 as overbroad and

10  should reach the same conclusion with respect to the much broader Request No. 48.

11       Another similarly broad request that the Discovery Master has already

12  considered *and rejected* is Request No. 42 from Mattel, Inc.'s First Set of Requests

13  for Documents and Things Re Claims of Unfair Competition to MGA Entertainment,

14  Inc., which sought:

15       REQUEST FOR PRODUCTION NO. 42:

16       All COMMUNICATIONS between YOU and any individual
     while the individual was employed by Mattel.[37]

17

18  In rejecting this request, the Discovery Master reasoned that "[a]lthough the request

19  may encompass relevant documents, it is overbroad insofar as it requires production

20  of all communications regardless of subject matter."[38]  Notably, the Discovery Master

21  later allowed a request to Isaac Larian for communications between Mr. Larian and

22  Mattel employees because the Court the request was "limited to communications

23  between Larian (***and not MGA or persons acting on his behalf***) and individuals

24

25

     _____

26  [35] Proctor Decl., Ex. 7 at 48:17-27 (Request Nos. 192 & 194).

     [36] Park Decl., Ex. J at 13:20-26 (emphasis added).

27  [37] Proctor Decl., Ex. 6 at 22:17-19.

28  [38] Park Decl., Ex. K at 12:19-22.

-15-

1 employed at Mattel."[39]   Applying the same reasoning, the Discovery Master should

2 reject Mattel's Request No. 48 because it is not reasonably limited in subject matter and

3 is not restricted to any reasonable set of specifically identified individuals.

**B.    The Discovery Master Should Reject Request No. 48 Because it is Cumulative and Duplicative of the Mattel's Other Document Requests and Documents Mattel Has Already Received.**

6        Mattel's Request No. 48 has significant overlap with numerous requests for

7 which the MGA Defendants have already produced responsive documents.  Where,

8 as here, the value of further discovery is outweighed by the burden on the producing

9 party because that party has already produced the substantive information sought by

10 the propounding party, it is proper to deny a motion to compel.  *See Pinnacle Pizza*

11 *Co. v. Little Caesar Enters., Inc.*, No. CIV 04-4170-KES, 2005 U.S. Dist. LEXIS

12 41062 (D.S.D. Nov. 2, 2005).

13        In this case, MGA has already produced more than 4.2 million pages of

14 documents in response to over 2700 document requests, many of which call for

15 documents that are also responsive to Request No. 48.  Accordingly, the Discovery

16 Master should reject Request No. 48 as unreasonably cumulative and duplicative.

17 To illustrate the point, below is a table containing just some of the requests that

18 overlap with Request No. 48 and in response to which the MGA Defendants have

19 produced documents:

| Mattel, Inc.'s First Set of Requests for Documents and Things re Claims of Unfair Competition to MGA Entertainment, Inc. | |
|---|---|
| 44 | All COMMUNICATIONS between YOU and any PERSON RELATING TO the claims made in YOUR COMPLAINT or the facts that YOU contend support such claims. |
| 7 | All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, and ownership of the CONTESTED MGA PRODUCTS. |
| 8 | All DOCUMENTS RELATING TO COMMUNICATIONS with any |

---

[39] Park Decl., Ex. J at 14:21-23 (emphasis added).

| | | |
|---|---|---|
| | | PERSON regarding the invention, creation, origin, conception, authorship, and ownership of all product packaging that provides a basis for any claim by YOU against MATTEL. |
| | 9 | All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of products and packaging that YOU contend provide a basis for any claim against MATTEL, whether or not such claim is made in the COMPLAINT. |
| | 12 | All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of all products and packaging that YOU contend MATTEL copied or infringed. |
| **Mattel, Inc.'s First Set of Requests for Production of Documents and Tangible Things to MGA Entertainment Inc.** | | |
| | 31 | All COMMUNICATIONS between YOU and BRYANT that REFER OR RELATE TO Mattel, Inc. or any officer, director, employee or representative of Mattel, Inc. |
| | 49 | ALL DOCUMENTS that REFER OR RELATE TO any indemnification that BRYANT has sought, proposed, requested or obtained in connection with this action |
| | 50 | ALL DOCUMENTS that REFER OR RELATE TO any indemnification that YOU have sought, proposed, requested or obtained in connection with this action |
| **Mattel, Inc.'s First Set of Requests for Documents and Things to Isaac Larian** | | |
| | 118 | All transcripts and video and/or audio recordings of statements made by any PERSON under oath, including without limitation all deposition transcripts, trial transcripts and arbitration transcripts, RELATING TO BRATZ (other than those taken in this ACTION when MATTEL's counsel was in attendance), including all such transcripts and video and/or audio recordings of statements by or on behalf of YOU. |
| | 147 | All DOCUMENTS RELATING TO any indemnification that BRYANT has sought, proposed, requested or obtained in connection with this ACTION. |
| | 153 | To the extent not covered by other Requests, all DOCUMENTS RELATING TO any indemnification that any PERSON has sought, proposed, requested or obtained in connection with this ACTION. |
| | 193 | All COMMUNICATIONS between YOU and any member of the press |

-17-

| | RELATING TO this ACTION. |
|---|---|
| **Mattel, Inc.'s Subpoena to Farhad Larian** | |
| 25 | All DOCUMENTS RELATING TO this ACTION, including all COMMUNICATIONS relating thereto. |

Indeed, some of these requests go directly to the issues for which Mattel claims documents responsive to Request No. 48 are relevant.  For example, Mattel contends that Request No. 48 seeks communications that may show MGA's agreement to pay fees for a witness.  However, as shown above, Mattel already served at least four other requests that specifically address indemnification of others.  Additionally, Mattel contends that it seeks communications between Mr. Larian and his brother Farhad Larian regarding this action.  However, Mattel already sought and obtained documents from Farhad Larian covering the exact same subject.[40]

Because Request No. 48, as drafted and as modified, is unreasonably cumulative and duplicative of other discovery obtained by Mattel, Mattel's Motion to Compel should be denied.

### C.  *If* the Discovery Master Allows Some Discovery Based on Request No. 48, Cost-Shifting is Appropriate.

*If* the Discovery Master does decide to grant Mattel's Motion to Compel in any respect (which the Discovery Master should not), Mattel should bear the cost associated with the collection, review and production of such documents given the overbreadth, minimal relevance, and undue burden presented by Request No. 48, as well as the fact that Mattel delayed bringing the Motion for nearly three years.

As shown above, responding to Request No. 48 would be extremely burdensome and costly to MGA.  That burden and cost is unwarranted because the request seeks far more discovery than what Mattel claims is relevant.  In addition, because of Mattel's substantial delay in bringing this motion, searching for and

---

[40] Park Decl., Ex. L at 9 (Request No. 25).

1  producing responsive documents would require MGA to divert resources from trial
2  preparation.

3       MGA timely objected to Mattel's First Set of Requests in April 2005 and
4  stated unequivocally that "MGA will not produce documents in response to this
5  request [Request No. 48]."[41]  Mattel, however, waited until shortly before the close
6  of discovery to challenge MGA's objections to and refusal to produce documents in
7  response to Request No. 48.  Mattel has offered no explanation for its long delay.
8  Under similar circumstances, courts have denied as untimely motions to compel that
9  the movant delayed filing until near the end of discovery.  *See, e.g., West v. Miller*,
10  No. 05 C 4977, 2006 U.S. Dist. LEXIS 56243, at 16-17 (N.D. Ill. Aug. 11, 2006)
11  (denying as untimely motion to compel filed 11 days before discovery deadline
12  based on finding of waiver because of movant's undue delay), *aff'd*, 2007 U.S. Dist.
13  LEXIS 11360 (N.D. Ill. Feb. 13, 2007); *In re Sulfuric Acid Antitrust Litig.*, 230
14  F.R.D. 527, 534 (N.D. Ill. 2005) (finding motion to compel deposition testimony to
15  be unduly late where movants "had many, many months to assess" issue on which
16  they were moving); *Ridge Chrysler Jeep, L.L.C. v. Daimler Chrysler Servs. N. Am.,*
17  *L.L.C.*, No. 03 C 760, 2004 U.S. Dist. LEXIS 26861, at *13 (N.D. Ill. Dec. 29, 2004)
18  (finding motion to compel four days before discovery cutoff untimely after 13
19  months of inaction).

20       Here, the timing of Mattel's belated motion is significant because the parties
21  are in the process of preparing for Phase 1 trial, which is set to begin in May.  Indeed,
22  the Court recognized the importance of having the parties focus their attention on
23  Phase 1 trial preparation by staying all Phase 2 discovery until after the Phase 1 trial.
24  MGA should not be forced to divert its attention away from trial preparation and
25  waste precious time and money responding to Mattel's overly broad and unduly
26
27  _____
28  [41] Park Decl., Ex. D at 44:22-23.

1  burdensome document request.  If, however, any discovery is ordered, Mattel, not

2  MGA, should bear all costs.

3  **IV.**    **CONCLUSION**

4         For the foregoing reasons, the Discovery Master should deny Mattel's Motion

5  to Compel.

6

7  DATED:  February 11, 2008         SKADDEN, ARPS, SLATE, MEAGHER &
                                     FLOM, LLP
8

9
                                     By: /s/      Raoul D. Kennedy                   .
10                                        RAOUL D. KENNEDY

11                                   Attorneys for Counter-Defendants
                                     MGA Entertainment, Inc.,
12                                   MGA Entertainment (HK) Limited,
                                     MGAE De Mexico, S.R.L. De C.V.,
13                                   and ISAAC LARIAN

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO
COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION