THOMAS J. NOLAN (Bar No. 066992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
E-mail: tnolan@skadden.com

RAOUL D. KENNEDY (Bar No. 40892) (ATTORNEY TO BE NOTICED)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, CA 94111-5974
Telephone: (415) 984-6400
Facsimile: (415) 984-2698
Email: rkennedy@skadden.com

Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC.,
ISAAC LARIAN, MGA
ENTERTAINMENT (HK) LIMITED,
and MGAE de MEXICO S.R.L. de C.V.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation<br><br>Defendant.<br><br>Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**DISCOVERY MATTER**<br><br>[To be heard by Discovery Master Hon. Edward A. Infante (Ret.)]<br><br>**DECLARATION OF AMY S. PARK IN SUPPORT OF MGA'S OPPOSITION TO MATTEL'S MOTION TO COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION**<br><br>Date: TBA<br>Time: TBA<br>Place: TBA |

I, Amy S. Park, hereby declare as follows:

I am an attorney licensed to practice law in the State of California and am a partner at the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, attorneys of record for MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. in the above-captioned matter. I submit this Declaration in Support of MGA's Opposition to Mattel, Inc.'s Motion To Compel MGA To Produce Communications Regarding This Action. Unless otherwise stated, I have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

1.  Attached as Exhibit A is a true and correct copy of this Court's February 4, 2008 Minute Order.

2.  Attached as Exhibit B is a true and correct copy of Mattel's Modification of Defendants' Proposal for trial phasing, which was adopted by the Court's July 2, 2007 Minute Order.

3.  Attached as Exhibit C is a true and correct copy of this Court's July 2, 2007 Minute Order.

4.  Attached as Exhibit D is a true and correct copy of MGA Entertainment, Inc.'s Responses to Mattel, Inc.'s First Set of Requests for Production of Documents and Tangible Things served on April 13, 2005.

5.  Attached as Exhibit E is a true and correct copy of Mattel, Inc.'s Notice of Motion and Motion to Compel Production of Documents and Interrogatory Answers by MGA Entertainment, Inc.; and Memorandum of Points and Authorities dated February 2, 2007.

6.  Attached as Exhibit F is a true and correct copy of the Discovery Master's Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA dated May 15, 2007.

7.  Since litigation commenced in this case nearly four years ago, Mattel has served the MGA Defendants with more than 2,700 individual document

1

DECL. OF AMY S. PARK I.S.O. OF MGA'S OPP. TO MATTEL'S MOTION TO COMPEL PRODUCTION OF COMMUNICATIONS REGARDING THIS ACTION

requests. In response, the MGA Defendants have produced more than 4.2 million pages of responsive documents.

8. Attached as Exhibit G is a true and correct copy of a letter from Dylan Proctor, counsel for Mattel, to my partner Timothy Miller, counsel for MGA dated January 10, 2008.

9. On occasions from January 18 through February 4, 2008, I met and conferred with Dylan Proctor, counsel for Mattel, regarding Request No. 48 of Mattel's First Set of Requests For Production to MGA, and MGA's response thereto.

10. Attached as Exhibit H is a true and correct copy of a letter from me to Dylan Proctor dated January 18, 2008, summarizing our meet-and-confer session of that day.

11. Attached as Exhibit I is a true and correct copy of a letter from Dylan Proctor to me dated January 18, 2008, regarding our meet-and-confer session of that day.

12. During our meet and confer discussions, I told Mr. Proctor that, as drafted, Request 48 is: (i) overbroad because it seeks a host of potentially irrelevant documents, and (ii) vague and ambiguous because it is unclear whether Mattel is seeking all communications that MGA had internally, all communications that MGA had with third parties, or something else. I also told Mr. Proctor that Request 48 was improperly overbroad and objectionable three years ago when MGA served its objection to the request, and that Request 48 was even more improper on the eve of the Phase 1 fact discovery cut-off, particularly because in the three years since MGA objected to Request 48, MGA had produced more than four million pages of documents in response to other requests, and that many of those documents were also responsive to Request 48.

13. Mr. Proctor stated that Mattel would be willing to narrow Request 48 to call for the following documents: (i) all non-privileged communications between *current* MGA employees at the manager level and above that refer or relate

2

to this action; (ii) all non-privileged communications between third parties and a *current* MGA manager-level employee or above that refer or relate to this action; and (iii) all non-privileged communications that refer or relate to this action, which involve any of MGA's agents and attorneys, including in particular O'Melveny & Myers and the Christensen Glaser firm.

14. When we spoke again, I told Mr. Proctor that his proposed narrowing of Request 48 did little, if anything, to cure the overbreadth of the request or alleviate the burden created by the overbreadth. I explained again that in the past three years MGA had produced documents that were responsive to Request 48. I identified for Mr. Proctor a non-exhaustive list of other document requests that called for documents that were also responsive to Request 48 and in response to which MGA had produced documents. These included: (i) Request Nos. 44, 7, 8, 9, 11 and 12 of Mattel, Inc.'s First Set of Requests for Documents and Things re Claims of Unfair Competition to MGA Entertainment, Inc.; (ii) Request Nos. 31, 49 and 50 of Mattel, Inc.'s First Set of Requests for Production of Documents and Tangible Things to MGA Entertainment Inc.; and (iii) Request Nos. 118, 147 and 153 of Mattel, Inc.'s First Set of Requests for Documents and Things to Isaac Larian. I explained that, to the extent additional documents exist, they are, at best, marginally relevant and, in any event, the burden of producing them – especially at this late point in the litigation – outweighs any relevance.

15. With respect to Mattel's proposal regarding communications involving current MGA employees at the manager level and above, I explained to Mr. Proctor that searching for the requested documents would require MGA to examine every communication involving those employees (approximately 150 people) that potentially refer or relate to this case to determine whether the documents contain or reflect privileged information. I explained that documents sent from managers to third parties could – like internal communications – also contain privileged information or attorney work product. I explained, therefore, that although Mattel

3

was not seeking privileged communications, MGA would still have to scrupulously review every document and redact documents that were only privileged in part. Accordingly, I told Mr. Proctor that Mattel's proposed narrowing was too little, too late. I nonetheless stated that if Mattel insisted on engaging in such an eleventh-hour fishing expedition, MGA would search for and produce responsive documents if Mattel would agree to pay the costs. Based on Mattel's proposed narrowing – *i.e.*, communications between *current* manager-level-employees or-above and communications between such employees and third parties – I estimated that the costs of review and production could range from about $20,000 to $45,000. I told Mr. Proctor, however, that this was simply an estimate and that we could not know the costs without conducting the searches and performing the review. Mr. Proctor agreed to consider my proposed cost-shifting.

16. Mattel's Motion to Compel now states that Mattel proposed to narrow Request 48 to seek communications involving MGA employees "who hold[] *or held* a position of manager or higher." (Motion at 4 (emphasis added).) This is different from the proposal that Mr. Proctor actually made during our meet-and-confer discussions, wherein he stated that Mattel was seeking: (i) communications *between current* manager-level employees and above (not from *current and former* managers to *anyone* else within MGA); and (ii) communications between third parties and *current* manager-level employees and above (not communications between third parties and *current and former* manager-level employees and above). I am informed by MGA personnel that Mattel's newly expanded proposal would increase the number of employees whose communications are sought from approximately 150 (current managers or higher) to 204 (current and former managers or higher). This expansion would also increase the number of documents to be reviewed, and thus the cost of reviewing and producing any responsive documents.

17. With respect to Mattel's request for communications involving MGA's agents and attorneys, including O'Melveny & Myers and Christensen Glaser

4

1  (and which presumably would also include Skadden, Arps), I told Mr. Proctor that his proposal was a non-starter. I explained that, while I had not reviewed all of O'Melveny's, Christensen's or Skadden's documents, I would expect that the overwhelming majority of them "refer or relate" to this action, and therefore the universe of documents to be reviewed would presumably be immense. I also explained that although Mattel is not seeking privileged communications, MGA would still have to examine every communication involving these law firms to determine whether they are privileged, contain protected work product and should be redacted to provide only non-privileged or non-protected information. I told Mr. Proctor that this was not only a burden, but also that this was an improper request to make of counsel in an ongoing litigation.

18. Mr. Proctor and I spoke in the early afternoon of February 4, a couple hours before the deadline for Mattel to file its motion to compel with respect to Request 48. In that conversation, Mr. Proctor stated for the first time that, in addition to the categories of documents described in paragraph 13 above, Mattel was also seeking all non-privileged communications referring or relating to this action that involve any former Mattel employee while employed by MGA, regardless of his or her position. Mr. Proctor asked me what MGA's position was with respect to such a request. I told Mr. Proctor that I would have to consult with my client, and that I would consider what burden (including additional costs) this might impose and whether the client might be willing to search for and produce responsive documents if Mattel were willing to bear the costs. In that same conversation, I reiterated the points noted in paragraphs 14, 15 and 17 above. I have been provided with a list of former Mattel employees who have worked for MGA, and based thereon I believe that Mattel's newly expanded request for communications involving these people would increase the number of employees whose communications are sought by at least approximately 70 or more.

5

DECL. OF AMY S. PARK I.S.O. OF MGA'S OPP. TO MATTEL'S MOTION TO COMPEL
PRODUCTION OF COMMUNICATIONS REGARDING THIS ACTION

19. Attached as Exhibit J is a true and correct copy of the Discovery Master's Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents By Isaac Larian; Denying Request for Sanctions, dated December 31, 2007.

20. Attached as Exhibit K is a true and correct copy of the Discovery Master's Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents By MGA; Denying Request for Sanctions, dated August 13, 2007.

21. Attached as Exhibit L is a true and correct copy of a Notice of Subpoena Issued to Farhad Larian on August 31, 2007, and served by Mattel on Farhad Larian.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 11th day of February, 2008, at Palo Alto, California.

_____
Amy S. Park