# EXHIBIT F

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                          EASTERN DIVISION

10

11 CARTER BRYANT, an individual,            CASE NO. C 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
12             Plaintiff,

13      v.                                  Consolidated with
                                            Case No. CV 04-09059
14 MATTEL, INC., a Delaware corporation,    Case No. CV 05-2727

15             Defendant.                   **ORDER GRANTING MATTEL'S
                                            MOTION TO COMPEL PRODUCTION
16                                          OF DOCUMENTS AND
                                            INTERROGATORY RESPONSES BY
17 CONSOLIDATED WITH                        MGA**
   MATTEL, INC. v. BRYANT and
18 MGA ENTERTAINMENT, INC. v. MATTEL,
   INC.
19

20                            I.  INTRODUCTION

21      On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

22 of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February

23 20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

24 reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under

25 submission pending the parties' submission of a proposed protective order, which was received

26

27

28
   Bryant v. Mattel, Inc.,                                                              1
   CV-04-09049 SGL (RNBx)

1   on April 23, 2007. Having considered the motion papers and comments of counsel at the hearing,

2   Mattel's motion to compel is granted.

3   ## II. BACKGROUND

4   A. Requests for Documents

5   In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6   became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7   categories of documents, to be produced in ten days. MGA filed a motion to quash, which the

8   court granted because of the short amount of time provided for compliance with the subpoena.

9   The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10  some of Mattel's requests. In particular, the parties agreed to limit production to the "first

11  generation" Bratz dolls. On August 12, 2004, MGA produced documents.

12  In 2005, the parties stipulated to supplementing their document productions on May 16,

13  2005. Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14  In September of 2006, MGA made a supplemental production of documents. On February

15  5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16  with legibility problems. On February 20, 2007, MGA produced an additional 224 pages of

17  documents to replace earlier produced documents with legibility problems.

18  Mattel now moves to compel MGA to produce documents responsive to its requests. As a

19  preliminary matter, Mattel contends that MGA's production is deficient because it contains

20  redactions and cut-off text. Further, Mattel contends that MGA's production is incomplete with

21  respect to essentially five categories of documents. First, Mattel contends that MGA is

22  withholding documents relating to the origins of Bratz and Bryant's work for MGA. Mattel

23  believes that MGA's production is incomplete based upon its review of documents that have been

24  produced by third party Steven Linker. According to Mattel, Linker's documents from October

25  of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26  previously represented. Mattel also contends that MGA's responses to the document requests

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

Exhibit _F_, P. _137_

1  contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2  responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3  show when certain dates relating to Bratz occurred.  Mattel contends that these "carve outs

4  purport to allow MGA to cherry-pick what it will and will not produce to Mattel."  Mattel's

5  Separate Statement at 17:11-13.  Mattel also contends that the carve-outs fail to provide notice of

6  what is or is not being withheld.  Mattel also contends that MGA's objections based upon its

7  confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8  protective order in place.  In addition, Mattel contends that MGA's objection to producing

9  documents relating to activities or conduct in foreign countries is wholly improper because those

10 documents may contain information relevant to Mattel's claims.

11     Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12 such documents relate to the "first generation" Bratz dolls.  Mattel argues that whether the work

13 ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14 discovery purposes.  Mattel contends that the works created by Bryant during his Mattel

15 employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16 a Bratz doll released at a particular time.[1]

17     Mattel next contends that MGA is improperly withholding documents about designs

18 Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19 be derivative of work he did when employed by Mattel.  Mattel contends that it is entitled to

20 explore whether such works and the profits from Bratz dolls other than the "first generation"

21 Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22 and damages.  Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23 improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24 information as well as MGA's unfair competition claims.

25

26     [1] Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion to compel Bryant to produce documents.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SOL (RNBx)

3

1    Mattel also asserts that MGA is improperly withholding documents relating to products,

2    services and matters other than those relating to "dolls." According to Mattel, it has evidence that

3    Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4    Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the

5    Inventions Agreement.

6    Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7    payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant

8    because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9    (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10    damages; and (3) payments may show when and what trade secret information Bryant and other

11    defendants allegedly misappropriated from Mattel.

12    Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel

13    contends that all agreements between Bryant and MGA are relevant, not just the original

14    September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all

15    documents relating to MGA and Bryant's alleged joint defense agreement because such

16    information would be relevant to demonstrate bias and lack of credibility.

17    Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18    statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such

19    information may reveal relevant information about the date of creation of Bryant's Bratz

20    drawings.

21    In response, MGA denies withholding responsive documents and asserts that it has

22    produced volumes of documents responsive to Mattel's requests. In particular, MGA represents

23    that it has produced all responsive and relevant documents that it was able to locate in response to

24    request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even

25    before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26    motion. In particular, MGA represents that it is diligently working to produce documents related

27

28

Exhibit _F_ , P. _139_

1   to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2   49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed

3   Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4   have been released on the market.  In addition, MGA represents that it has agreed to produce

5   documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More

6   specifically, MGA represents that it agreed to review and produce documents provided to it by

7   Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8   Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.

9   Therefore, MGA views the motion as unnecessary.

10      MGA next contends that Mattel's motion should be denied for the following additional

11   reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for

12   unreleased products.  MGA asserts that its product design documents for its unreleased toy

13   concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that

14   designs and drawings for products currently under development, over six years after Bryant first

15   created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that

16   documents relating to unreleased products are ordered produced, MGA requests a protective order

17   under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18   than the current protective order provides.  In the alternative, MGA requests that any order

19   compelling production of documents relating to unreleased products should essentially be stayed

20   until after MGA's products are publicly released.

21      Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22   attorneys' fees because the information is privileged.  Furthermore, MGA contends that the

23   information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

1  in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2  Opposition at 24:9-12.[2]

3      Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4  and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5  refused to produce similar types of documents.  More significantly, MGA contends that Mattel's

6  requests for non-public witness statements are "a blatant attempt to avoid the discovery

7  limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8  imposed by this Court."  MGA's Opposition at 25:6-7.  MGA explains its position as follows.

9  MGA is involved in litigation against a number of counterfeiters and infringers in Asia.  In 2003,

10 Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11 attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12 abandoned its claims based upon "Toon Teens" in this court.  Thereafter, those defendants took

13 the position that MGA did not own, and therefore could not enforce, the rights to Bratz.  MGA

14 was thus forced to litigate the issue of ownership.  MGA contends that "[i]n effect, by prompting

15 foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16 a situation in which MGA has been forced to give testimony and provide evidence related to

17 issues in this case that Mattel now seeks to obtain wholesale."  MGA's Opposition at 25:5-24.

18      Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19 dispute between MGA's chief executive officer and his brother because such documents are in no

20 way relevant to this lawsuit.  MGA explains that the brothers were involved in an arbitration

21 proceeding relating to MGA's CEO's purchase of his brother's interest in MGA.  Moreover,

22 MGA contends that the brothers were bound by a protective order prohibiting the use of any

23 documents or testimony for any purpose other than the arbitration.

24

25  _____

26      [2]  Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the
   request.

27

28                                                                                                          6

   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

1       Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2  files because they contain confidential information and are not relevant to the lawsuit.  Sixth,

3  MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4  in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd.  Lastly,

5  MGA objects to producing documents relating to any testing performed to determine the date that

6  Bratz documents were created.  MGA contends that such discovery is premature and should not

7  proceed until experts are designated.

8       B.  Interrogatories

9       On April 28, 2005, Mattel served its Second Set of Interrogatories.  On May 20, 2005,

10  however, the district court stayed the action.  On May 17, 2006, the district court lifted the stay.

11  On May 30, 2006, MGA responded to the interrogatories.

12       Mattel contends that MGA's responses to the interrogatories were untimely.  Further,

13  Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14  because they lack substantive information and consist almost entirely of objections.  MGA

15  responds that the motion is moot because it is prepared to provide supplemental responses to its

16  interrogatories.  MGA does not otherwise assert any additional grounds for opposing Mattel's

17  motion to compel responses to interrogatories.

18       III. DISCUSSION

19       A.  Rule 26 of the Federal Rules of Civil Procedure

20       Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22  party."  Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

23  discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Id.

24  Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28      Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

      7

1   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2   expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3   the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4   the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5   26(b)(2).

6       B.   Document Requests

7           1.   Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8               34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9       The requests above seek discoverable information regarding the origins of Bratz and

10   Bryant's work for MGA. MGA represents that it has produced all responsive documents in

11   response to request nos. 6, 26, 27, 32, 33, 34, 35, 55, and 69 (MGA's Opposition at 13:4-5), and is

12   "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13   and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14   14:1-4 and note 39). MGA does, however, object to producing design documents for unreleased

15   products and documents from MGA Hong Kong.

16       As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17   its production to "relevant and responsive non-objectionable documents" or documents

18   "sufficient" to show when events relating to Bratz occurred. These restrictions suggest that MGA

19   might be excluding documents that are responsive to the request based upon its unilateral

20   determination of what is "relevant" or "sufficient." Mattel shall provide the responses to

21   document requests ordered herein without these restrictions.

22                   Design Documents for Unreleased Products

23       MGA's design documents for unreleased products are relevant to Mattel's claims and

24   defenses and must be produced. See Order Modifying Protective Order. On April 23, 2007, the

25   parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26   design documents for unreleased products that constitute trade secret information. See Stipulation

27

28

Exhibit __F__ , P. __143__

1   to Modify Protective Order; And Proposed Order Thereon ("stipulation"). The parties' stipulation

2   has been approved and entered as an order of the court. MGA is ordered to produce design

3   documents for unreleased products that are responsive to Mattel's document requests in

4   accordance with the terms of the stipulation and order.

5                                Documents from MGA Hong Kong

6          Documents relating to activities or conduct in foreign countries are relevant and

7   discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8   Bratz. Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9   provides reciprocal discovery from its subsidiaries.

10         Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein. MGA is ordered to produce

12  documents from MGA Hong Kong.

13         Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15         2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16             61, 63, 66, 67, 70, 88, 90, 91

17         Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls. MGA represents, however, that it has agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21         As stated previously, design documents for yet unreleased products are relevant and

22  discoverable. See Order Modifying Protective Order. Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25         //

26         //

27

28
    Bryant v. Mattel, Inc.,                                                                              9
    CV-04-09049 SGL (RNBx)

3. <u>MGA's Payments to Bryant (Nos.43, 45)</u>

MGA represents that it has already agreed to produce documents related to Bratz, without limiting its production to "first generation" Bratz.  MGA's motion at 13:7-14:3.  Nevertheless, Mattel is entitled to an order compelling production of such documents by a date certain.  Mattel's motion is granted with respect to request nos. 43 and 45.

4. <u>MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)</u>

MGA represents that it has already agreed to produce non-privileged documents responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not relevant (MGA's motion at 13:7-14:3).  These requests seek documents relating to fee or indemnity agreements between MGA and Bryant .

Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility.  Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50.  Any responsive documents withheld on the basis of a privilege must be properly identified in a privilege log.

5. <u>Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40, 41,</u>

In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits, and other sworn written statements from cases that refer or relate to Bratz or Angel.  Mattel anticipates that these documents could provide evidence relating to the conception date for Bratz.

Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception date for Bratz.  MGA admits in its opposition brief that this issue was litigated in its suits against alleged counterfeiters and infringers.[3]  The issue also appears to have been raised in the arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian.  In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

---

[3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

1  that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2  documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3  protective order that prohibits the use of any documents or testimony for any purpose other than

4  the arbitration.  MGA, however, has not provided any evidence of the protective order.

5  Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6          6. Documents Regarding Date-Testing (Request No. 92)

7          Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8  from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9  testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto."  MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12          The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports.  The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15          C. Interrogatories

16          Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served.  The district court lifted the stay on May 17, 2006.

22

23

24

25          [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's
26  personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore
   should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

11

1    Neither party has cited to any caselaw governing the calculation of the 30-day period

2  when there is an intervening stay in discovery.  In the absence of any caselaw, MGA's responses

3  will be treated as timely in order to preserve any valid objections MGA may have asserted.

4    Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5  conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6  tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7  before December 31, 2001, including a description of each person's role and the start and end

8  dates of each person's involvement.  In response, MGA asserted numerous objections, but did

9  provide the names of five individuals.

10    The interrogatory clearly seeks information relevant to the claims at issue.  MGA's

11  objections are without merit.  The interrogatory is not vague, ambiguous, compound or overbroad.

12  Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13  for confidential, proprietary or commercially sensitive information, or seeks information

14  protected by the attorney-client privilege.  Furthermore, MGA's response is incomplete insofar as

15  it fails to provide the description of each person's role and the start and end dates of each person's

16  involvement.  Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17  5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18    Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19  embodiment of Angel.  MGA is ordered to provide a complete response to Interrogatory No. 6 for

20  the reasons previously discussed in connection with Interrogatory No. 5.

21    Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22  December 31, 2001.  In response, MGA asserted numerous objections and did not provide any

23  substantive information.

24    MGA's objections are without merit.  The interrogatory clearly seeks information relevant

25  to establishing when Bryant first conceived Bratz.  The interrogatory is not vague, ambiguous,

26  compound or overbroad.  Nor has MGA carried its burden of establishing that the interrogatory is

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

1  unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2  seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3  provide a complete response to Interrogatory No. 7.

4       Interrogatory No.8 asks MGA to identify each and every embodiment of Angel.  MGA is

5  ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6  discussed in connection with Interrogatory No. 7.

7       Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8  or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9  or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10  substantive information.

11       The interrogatory seeks information relevant to establishing when Bryant first conceived

12  Bratz.  Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13  ordered to provide a complete response to Interrogatory No. 9.

14       Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15  was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16  which each such instance occurred, the location of each show or exhibit, and the identity of

17  persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18  objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19  about January 2001 and New York Toy Fair, New York, in or about February 2001.

20       Once again, MGA's boiler-plate objections are unsubstantiated.  The information is

21  potentially relevant to establish when Bryant conceived Bratz.  Further, the response is

22  incomplete insofar as it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23  to provide a complete response to Interrogatory No. 10.

24       Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25  including without limitation each office, home and cell phone number, in the name of, for the

26  benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28

1  January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2  limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous

3  boiler-plate objections.

4      Once again, MGA has failed to substantiate any of its objections with supporting

5  declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to

6  provide a full response to Interrogatory No. 11.

7                              IV. CONCLUSION

8      For the reasons set forth above, Mattel's motion to compel production of documents is

9  granted.  MGA shall produce all non-privileged documents that are responsive to the requests

10  identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except

11  for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's

12  motion to compel interrogatory answers is also granted.  MGA shall produce documents and

13  provide responses to interrogatories consistent with this Order, and produce a privilege log in

14  compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for

15  sanctions is denied.

16      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17  Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21  Dated: May 15, 2007

22                              HON. EDWARD A. INFANTE (Ret.)
                                Discovery Master

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

# EXHIBIT G

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

January 10, 2008

**VIA FACSIMILE AND U.S. MAIL**

Timothy Miller, Esq.
Skadden Arps, Slate, Meagher and Flom LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111

Re:     **Mattel v. Bryant**

Dear Tim:

I write pursuant to Paragraph 5 of the Order for the Appointment of a Discovery Master to request a meet and confer regarding the responses of MGA Entertainment, Inc. to Mattel's First Set of Request for Production dated March 14, 2005.

Based on the language of MGA's responses, MGA appears to be withholding non-privileged, discoverable documents responsive to Request for Production Nos. 28-31, 44, 47, 48, 65, 68, 71-87, 89 and 95. As you know, Mattel moved to compel responses to some requests in the 2005 Requests earlier this year, and MGA was ordered to provide responsive documents in the Court's May 15, 2007 Order. However, Mattel did not move on any of the requests at issue here.

Regarding Request Nos. 48, 65 and 89, MGA's responses appear to indicate that it will not produce any responsive documents. Regarding the balance of the requests listed above, MGA's responses are improperly limited. MGA's responses indicate that MGA is producing "all relevant and responsive non-objectionable" documents, as opposed to all responsive documents. These restrictions are improper.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

Exhibit _6_, P. _150_

Mattel has no desire to obtain duplicates of documents MGA has already produced, and indeed Mattel believes that most or all documents responsive to the requests listed above should already have been produced pursuant to the Court's Orders regarding other requests. However, Mattel is entitled to obtain all responsive documents regarding the request listed above. Accordingly, please be prepared to explain whether MGA is withholding responsive documents and, if so, on what basis it is doing so. If the parties cannot informally resolve their differences, Mattel contemplates filing a motion to compel production of all documents responsive to these requests.

I look forward to hearing from you regarding your availability for a meet and confer within the next five days.

Very truly yours,

B. Dylan Proctor
07209/2349482.1

Exhibit G , P. 151

# EXHIBIT H

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE

PALO ALTO, CALIFORNIA 94301

TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

DIRECT DIAL
650.470.4511
DIRECT FAX
888.329.6334
EMAIL ADDRESS
APARK@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 18, 2008

**By Email and U.S. Mail**

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA  90017

RE:    *Carter Bryant v. Mattel, Inc.* (and consolidated cases)
       Case No. CV 04-9049 SGL (RNBx) (consolidated with
       <u>Cases Nos. CV 04-09059 and CV 05-02727)</u>

Dear Dylan:

        I am writing with respect to our meet-and-confer this afternoon regarding MGA's responses and objections to Mattel's First Set of Requests for Production to MGA.

        You asked whether MGA is withholding documents responsive to Request Nos. 28-31, 44, 47, 68, 71-87 and 95 based on its objections to those requests. I reminded you that my firm was not in the case at the time the responses were served or the production was made.  I told you, however, that I have been assured by prior counsel that responsive documents were not withheld based on MGA's objections (other than objections based on attorney-client privilege or the work product doctrine).

        Regarding MGA's response to Request No. 65 ("DOCUMENTS sufficient to identify when YOU first contacted any manufacturer, or any contemplated, proposed or potential manufacturer, for the first manufacture of ANGEL"), I told you that I understand from prior counsel that MGA previously declined to produce documents because Prayer Angels was not at issue at the time, but that MGA had nonetheless produced non-privileged responsive documents because the documents are subsumed within other requests.  I stated that MGA was conducting a renewed search to confirm that all responsive documents had been produced and that MGA would produce additional non-privileged, responsive documents, if any, that it locates following a reasonably diligent search.

B. Dylan Proctor, Esq.
January 18, 2008
Page 2

       Regarding MGA's response to Request No. 89 ("All telephone records for MGA Entertainment Inc. for the time period from January 1, 1998 through January 1, 2001"), I told you that the request is overbroad.  I explained that in his order dated December 31, 2007, at page 12, Judge Infante rejected Mattel's motion to compel the production of documents in response to a nearly identical request that was served on Isaac Larian (specifically Request No. 178), finding that the request was overbroad and sought a host of irrelevant information, and that Mattel had made no attempt to tailor the request to claims or defenses in this action.  I explained that in that same order, Judge Infante granted Mattel's motion to compel documents from that same time period that related only to Bratz or Angel (Request No. 170) and that, to the extent, Mr. Larian has those documents in his possession, custody or control, he is producing them.  Therefore, Mattel is already getting those records.  You stated that you would consider my position and we agreed to discuss the matter further on January 22 at 7 p.m.

       Regarding MGA's response to Request No. 48 ("All non-privileged communications between YOU and any PERSON that REFER or RELATE to this action"), I told you that the request is overbroad and is also vague and ambiguous in that it is unclear whether Mattel is seeking all communications between MGA and third parties as well as all communications between and among anyone within MGA.  You agreed that the scope of the request is open to interpretation and agreed to clarify Mattel's request at our continued discussion on January 22.  I suggested that you review Mattel's responses to any similar request to see how Mattel had responded and I agreed to do the same.  In the meantime, I told you that MGA has produced documents responsive to this request because those documents are subsumed within other requests for which documents were already produced.

       I look forward to speaking with you on January 22.

                Sincerely,

                Amy S. Park

Exhibit H , P. 153

# EXHIBIT I

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

January 18, 2008

### VIA FACSIMILE AND U.S. MAIL

Amy S. Park, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301

Re:   Mattel, Inc. v. Bryant

Dear Amy:

I write further to our meet and confer of earlier today regarding MGA's responses to Mattel's
First Set of Requests for Production dated March 14, 2005.

MGA represented that it is not withholding any non-privileged documents responsive to Request
for Production Nos. 28-31, 44, 47, 68, 71-87, and 95, and that any privileged documents have
been listed on a privilege log.

Regarding Request No. 65, MGA explained that all responsive documents should have already
been produced in response to other requests. However, MGA stated that it was conducting a
search to confirm that all responsive documents have been produced.

As to request No. 89, MGA asserted that this request is overbroad. Request No. 89 seeks all
telephone records for MGA for the time period from January 1, 1998 through January 1, 2001.
MGA contended that in light of Judge Infante's Order regarding a similar request that Mattel
propounded to Isaac Larian, the scope of Request No. 89 should be limited to telephone records
that relate to Bratz or Angel. See Order Regarding Mattel's Motion to Compel Production of
Documents by Isaac Larian, dated December 31, 2007, at 12. MGA also represented that Larian
would today be producing all documents relating to MGA's telephone communications between
January 1, 1998 through January 1, 2001 regarding Angel and Bratz, pursuant to this Order.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7100 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

07209/2350867.1

Exhibit ___, P. ___

01/18/2008  22:09    2134890088                    B QUINN                    PAGE  03/03

MGA also asserted that Request No. 48 is overbroad. Request No. 48 seeks non-privileged communications between MGA and any person that refer or relate to this action. Mattel explained that the request is not overbroad because it is limited to communications that refer or relate to this action. MGA requested that Mattel clarify if Request No. 48 includes communications between MGA and other internal MGA employees, or if it only includes communications between MGA and third parties. We agreed to further discuss this matter on Tuesday, January 22, 2007. I look forward to speaking with you then.

Very truly yours,

B. Dylan Proctor

Exhibit __I__, P. __155__

# EXHIBIT J

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California  94111
   Telephone:     (415) 774-2611
4  Facsimile:     (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

12 |                                          | CASE NO. CV 04-09049 SGL (RNBx)
   | CARTER BRYANT, an individual,            | JAMS Reference No. 1100049530
13 |                                          |
   |              Plaintiff,                  |
14 |                                          | Consolidated with
   |         v.                               | Case No. CV 04-09059
15 |                                          | Case No. CV 05-2727
   | MATTEL, INC., a Delaware corporation,    |
16 |                                          | **ORDER GRANTING IN PART AND**
   |              Defendant.                   | **DENYING IN PART MATTEL'S**
17 |                                          | **MOTION TO COMPEL PRODUCTION**
   |                                          | **OF DOCUMENTS BY ISAAC LARIAN;**
18 |                                          | **DENYING REQUEST FOR**
   |                                          | **SANCTIONS**
19 |                                          |
20 | CONSOLIDATED WITH                        |
   | MATTEL, INC. v. BRYANT and               |
21 | MGA ENTERTAINMENT, INC. v. MATTEL,       |
   | INC.                                     |
22 |                                          |

23

24                            I. INTRODUCTION

25      On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production

26 of Documents by Isaac Larian and for Award of Monetary Sanctions."  Specifically, Mattel seeks

27 an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First

28 Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

Bryant v. Mattel, Inc.,                                                                         1
CV-04-09049 SGL (RNBx)

15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199, 207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents withheld based on any claimed privilege. Mattel also seeks an award of sanctions against Larian in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing this motion. Larian submitted an opposition on December 5, 2007.[1] Mattel submitted a reply on December 10, 2007. The matter was heard on December 14, 2007. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

On June 13, 2007, Mattel propounded its First Set of Requests for Production of Documents and Things to Larian, the CEO and majority owner of MGA. On August 6, 2007, Larian filed his initial responses and objections. The parties met and conferred, and on September 25, 2007, Larian served supplemental responses and objections.

Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the 276 Requests. The parties met and conferred further, and Larian ultimately agreed to provide further responses to 55 of the disputed 87 Requests. Specifically, Larian agreed to supplement his responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that have not previously been produced." MGA's Opposition at pp. 1-2.

The remaining 32 Requests at issue can be grouped into ten categories: (1) personal financial data; (2) communications with Mattel employees; (3) statements to the media; (4) telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's arbitration; and (10) MGA Hong Kong and MGA Mexico.

//

---

[1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim statement of Mattel's position. The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve Mattel's motion on the merits.

## II. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

### The 55 Requests Resolved During Meet and Confer Session

During the meet and confer session held after the instant motion was filed, Larian agreed to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55 requests are no longer in dispute.

Nevertheless, a court order compelling production is warranted for two reasons. First, Larian has not yet produced documents responsive to the 55 requests or provided a date by which

1   he will do so.  Second, Larian's agreement to produce responsive documents is apparently limited

2   to documents from his so-called "personal files."  See Opposition at 2:2-3.

3          Mattel's counsel "never agreed that Larian could limit his response to the above requests

4   to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his

5   response to documents in Larian's 'personal files.'"  Supp. Decl. of Scott B. Kidman.

6   Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34,

7   Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding

8   parties' "possession, custody or control."  The limitation is also unworkable because, as Mattel

9   points out, it "would create a situation by which responsive and highly relevant documents might

10  never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and

11  Larian, on the other hand, deems [a] document not to be part of his 'personal files.'"  Reply at p.6.

12  Market Research for Products Not at Issue:  Request Nos. 79-81

13         In Request No. 79, Mattel seeks all documents relating to any focus groups relating to

14  Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports.  In

15  his supplemental response, Larian agrees to produce the following documents, subject to his

16  general objections:

17         Larian will produce all documents within his possession, custody, or control that
           relate to focus groups for "MGA contested products" and "Mattel contested
18         products," as those terms are defined in Mattel's First Requests for Production
           regarding Claims of Unfair Competition, if any, and that have not already been
19         produced, that he discovers in the course of his reasonable search and diligent
           inquiry, and to which no privilege or other protection applies, including without
20         limitation, the attorney-client privilege or attorney's work product doctrine.

21
22  Mattel's Consolidated Separate Statement at pp. 20-21.

23         In Request No. 80, Mattel seeks all documents relating to any services or work performed

24  by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all

25  videotapes, summaries, notes and reports associated therewith.  In his supplemental response,

26  Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to

27  the request and to which no privilege or other protection applies.

28
    Bryant v. Mattel, Inc.,                                                                    4
    CV-04-09049 SGL (RNBx)

Exhibit _J_, P. _159_

In Request No. 81, Mattel seeks all documents relating to Alaska Momma. In his supplemental response, Larian agrees to produce all documents relating or referring to Bratz, Angel or Bryant that are responsive to the request and to which no privilege or other protection applies.

Mattel contends that the requests are as narrowly tailored as possible to capture relevant information. More specifically, Mattel contends that Request No. 79 seeks documents that bear directly on the timing of the development of Bratz, as well as MGA's unfair competition claims and Mattel's defense thereto. Mattel contends that the requested documents may demonstrate that MGA is guilty of copying Mattel's Barbie and My Scene products.

Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome. As an example, Larian points to Request No. 80, which requests all documents relating to any services or work performed by L.A. Focus, regardless of whether that work has any relation to the claims and defenses in the action or any of the products at issue. Larian similarly contends that Request Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or defense in this case.

Mattel's motion to compel Larian to produce all documents responsive to Request No. 79 is granted. The request is reasonably limited in subject matter to Bratz and Angel. The requested documents are relevant to several issues in the case, including the origin, conception and creation of Bratz. The requested documents are also relevant to the unfair competition claims. Larian's supplemental response to Request No. 79 is unduly restrictive. Among other things, the definitions of "contested MGA products" encompass only those products that provide a basis for any claim by MGA against Mattel, and not claims by Mattel against MGA.

Mattel's motion to compel Larian to produce all documents responsive to Request Nos. 80-81 is denied. These requests, as drafted, are clearly overbroad because they have no reasonable limitations on subject matter or time. In particular, the requests are directed to L.A. Focus and Alaska Momma without regard to whether the services or work the companies provided has any relation to any product at issue.

Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to

documents related to the products at issue:  Bratz and Angel.  In Mattel's view, Larian's supplemental response is too narrow and "may result in the exclusion of highly relevant documents because the project, concept or design that is the subject of the focus group is deemed not to relate to something then known as Bratz or Angel."  However, Larian acknowledges that these types of hypothetical documents would still fall within the narrower scope of production proposed in his supplemental response.

Mattel also contends that it is entitled to all of the requested documents called for by Request No. 80 because they are relevant to credibility and bias, particularly if the documents show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A. Focus used.  It is, however, not apparent how deviations from standard procedures would impact credibility or bias.

As to Request No. 81, Mattel contends that the documents showing the relationship between Larian or MGA and Alaska Momma are relevant, even if they do not themselves specifically relate to Bratz, Angel or Bryant.  Mattel contends that communications from Larian or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's and Bryant's stories about how and when they came to be introduced.  Mattel also contends that documents showing other dealings between Larian or MGA and Alaska Momma are relevant to the issues of bias and credibility.  Mattel's supposition about the types of documents that might exist does not justify the type of far-reaching request it has propounded.  Request No. 81 is also not limited by either subject matter or time.

Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in accordance with his supplemental responses.


Bryant's Attorney and Niece:  Request Nos. 113-115

In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne Wang, a lawyer who represented Bryant in his contract negotiations with MGA.  In Request No. 114, Mattel seeks all documents, including without limitation all communications, between

Exhibit J , P. 161

Larian or MGA and Anne Wang.  In Request No. 115, Mattel seeks documents relating to Brooke Gilbert, Bryant's niece.  In his supplemental responses, Larian agrees to produce documents relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or other protection applies.  Thus, the only issue is whether Larian should be required to produce responsive documents that do not relate to Bratz, Angel or Bryant.

Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin and conception of Bratz and the timing thereof.  Mattel also contends that the documents may disclose relevant information regarding Mattel's claims for breach of contract and inducing breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's contractual obligations with Mattel.  Mattel also contends that Larian has failed to carry his burden of demonstrating that the requests are overly burdensome.

Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114 are inadequate because the limitations on scope may eliminate otherwise relevant documents that do not specifically refer to Bratz, Angel or Bryant.  For example, Mattel contends that communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or Bryant may be relevant to the issues of credibility and bias.

Mattel contends that Request No. 115 seeks documents that are relevant to determine whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software that had been installed and run on the hard drive.  Bryant claims to have given his computer to his niece.  Mattel also contends that the requested documents are relevant to the issues of credibility and bias.  Further, Mattel contends that Larian's supplemental response to Request No. 115 is inadequate, because evidence of any communication between Larian and his niece, regardless of subject matter, is significant.

Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome because they lack any subject matter or time constraints.  Further, Larian contends that the requests constitute an improper fishing expedition and necessarily sweep in documents that are not relevant to any claim or defense.

//

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

1    Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied. The

2  requests are overbroad because they are not focused on relevant subject matter and are untethered

3  to any claim or defense. Although Mattel asserts that responsive documents unrelated to Bratz,

4  Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility

5  is too remote to justify the breadth of Mattel's requests.

6    Larian's supplemental responses are sufficient to provide Mattel with relevant and

7  responsive documents. Larian shall produce documents responsive to Request Nos. 113-115 in

8  accordance with his supplemental responses.

9  <u>The Larian Brothers' "Arbitrations and Suits": Request Nos. 123-125</u>

10    In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and

11  suits between Larian and his brother, Farhad Larian. In Request No. 124, Mattel seeks all

12  documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad

13  Larian against Larian, including without limitation all declarations, affidavits, transcripts, video

14  and/or audio recordings and sworn testimony given by any person in such suit or arbitration

15  proceedings. In Request No. 125, Mattel seeks all documents relating to any and all settlements,

16  resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad

17  Larian. In his supplemental responses, Larian agrees to produce all documents referring or

18  relating to Bratz that are responsive to the requests and to which no privilege or other protection

19  applies.

20    Mattel contends that the court has already ruled that the arbitration proceedings between

21  Larian and his brother are relevant because they involve, among other matters, the conception and

22  creation date for Bratz. Mattel contends that Larian's supplemental responses improperly limit

23  the requests to the exclusion of potentially relevant documents. For example, Mattel contends

24  that documents that relate to the business, activities and plans of MGA in early 2000 are relevant

25  to the timing of the development of Bratz, whether or not they specifically refer to Bratz.

26  Mattel also contends that the requested documents are relevant to the value of the Bratz brand and

27  the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

1   example, profits from the sale and licensing of Bratz and other information that would impeach

2   Larian's testimony that he has not made any profits from Bratz.  Further, Mattel contends that the

3   requested documents may lead to evidence of the assessments or valuations of the net worth or

4   value of MGA or Larian, regardless of any reference to Bratz specifically.  Mattel also contends

5   that settlement documents may contain information that bears on the merit of Farhad Larian's

6   claims and the value of Bratz.  Mattel also claims that the requested documents are relevant to

7   motive, intent, bias and credibility.

8           Larian contends the instant requests are overbroad and unduly burdensome.  Further,

9   Larian contends that the relationship of the requested documents to any of the claims or defenses

10  in the present action is questionable, and the existence of such documents is conjectural.

11  Moreover, Larian contends that many of the categories of documents of interest to Mattel are

12  already the subject of other requests.  Larian also contends that Request Nos. 123-125 impose an

13  undue burden because of the protective orders in place that strictly limit the use of any documents

14  from an arbitration and suit between Larian and his brother.  Larian represents that he is currently

15  working with Mattel and his brother in an attempt to achieve suitable modifications to the orders

16  that are agreeable to all parties.

17          Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is

18  denied.  The requests are clearly overbroad in calling for all documents from the arbitrations and

19  suits between Larian and his brother, without any subject matter limitations.  Furthermore, these

20  requests are unduly burdensome to the extent they require production of documents that do not

21  refer or relate to Bratz.  Such documents have marginal relevance, at best, to the claims and

22  defenses in the case.

23          Larian's supplemental responses to Request Nos. 123 -125 are sufficient.  Larian's

24  agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will

25  enable Mattel to obtain documents relevant to the claims and defenses in the case, including many

26  of the categories of documents of interest to Mattel.  For example, under Larian's proposed

27  limitation, documents that relate to the business, activities and plans of MGA in 2000 that also

28  refer or relate to Bratz must be produced.  Documents relating to the value of the Bratz brand are

1   also within the scope of Larian's proposed limitation and would have to be produced.  Documents

2   relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be

3   produced.  Further, Larian's proposed limitation does not necessarily foreclose discovery

4   regarding the appraisal of MGA prepared by Mr. Dutcher.  In particular, documents relating to

5   MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue

6   projections must be produced if such documents refer or relate to Bratz.  Accordingly, Larian

7   shall produce documents responsive to Request Nos. 123-125 in accordance with his

8   supplemental responses.

9

10  Telephone Records:  Request Nos. 178-181

11          In Request No. 178, Mattel seeks all documents relating to, including without limitation

12  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

    from January 1, 1998 through January 1, 2001.  Larian objects to this request.

13          In Request No. 179, Mattel seeks all documents relating to, including without limitation

14  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

15  from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel.  In his supplemental

16  responses, Larian agrees to produce documents responsive to Request No. 179.  In response to

17  this motion, however, Larian contends that he should be permitted to produce documents

18  responsive to Request No. 179 in redacted form as discussed more fully below.

19          In Request No. 180, Mattel seeks all documents relating to, including without limitation

20  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

21  from April 1, 2004 through June 1, 2004.  Larian objects to this request.

22          In Request No. 181, Mattel seeks all documents relating to, including without limitation

23  phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf

24  at any time.  In his supplemental response, Larian agrees to produce all documents pertaining to

25  communications made prior to January 1, 2001 that are responsive to the request and to which no

26  privilege or other protection applies.

27  //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

1    Mattel contends that Request No. 178 seeks documents relevant to show Larian's

2   communications with Bryant and other Mattel employees while such employees may still have

3   been employed by Mattel and before Larian claims to have known about Bratz. Similarly, Mattel

4   contends that Request No. 180 seeks documents relevant to Mattel's allegation that MGA, and

5   Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them

6   to steal Mattel trade secrets.

7    Further, Mattel contends that the requested documents regarding telephone records are

8   relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show

9   communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent

10   they show communications with current and former Mattel employees, including Machado,

11   Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements

12   Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses. With respect to

13   burden, Mattel contends that it would be more burdensome to attempt to produce the requested

14   records in redacted form, and further, that the protective order in place is sufficient to protect

    Larian's privacy concerns.

15    Larian contends that the requests regarding telephone records are overbroad, completely

16   unbounded as to subject matter, and necessarily sweep in private information that is completely

17   irrelevant to any of the claims or defenses in the case. Larian also points out that the court

18   previously considered similar requests served on Bryant and allowed production of redacted

19   copies of telephone records as long as Bryant provided a signed verification that none of his

20   redactions related to Bratz, MGA or any other project he worked on for MGA. Specifically,

21   Bryant was permitted to produce redacted phone records as long as he provided a "signed

22   verification that none of the telephone records that were redacted relate or refer in any way to

23   MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA."

24   Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production

25   of Documents by Bryant). Larian contends that he should be permitted to redact responsive

26   documents consistent with the court's prior order. During the meet and confer, Larian offered to

27   provide redacted records and a signed verification that none of the redacted information was

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

Exhibit __J__, P. __166__

1  relevant to the case, but Mattel did not respond to the offer.

2       Mattel's motion to compel documents responsive to Request Nos. 178 (all documents

3  relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied. The

4  request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in

5  private information that is completely irrelevant to the case. Larian should not be subjected to

6  such an intrusion into his private and business affairs when Mattel has made no attempt to tailor

7  the request to the communications, claims, and defenses identified above.

8       In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records

9  for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters

10  (Bratz and/or Angel). Accordingly, Larian shall abide by his agreement to comply with Request

11  No. 179, as stated in his supplemental response. Larian's proposal to produce responsive

12  documents in redacted form is appropriate to address his privacy concerns. More specifically,

13  Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian

14  provides a signed verification that none of the redacted material refers or relates in any way to

15  MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA,

16  or that are otherwise relevant to the case.

17       Mattel's motion to compel documents responsive to Request No. 180 (documents relating

18  to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted. Request No. 180

19  is reasonably tailored to a two month period during which MGA and Larian allegedly recruited

20  employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets. See

21  Mattel's Second Amended Answer and Counterclaims, ¶¶37-54. Larian may produce documents

22  responsive to Request No. 180 in redacted form as specified above with respect to Request No.

23  179.

24       Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian)

25  is overbroad as written because it has no time limits. In his supplemental response, Larian agrees

26  to produce communications prior to January 1, 2001 that are responsive to the request. Larian's

27  proposed limitation is a reasonable compromise that will provide Mattel with relevant documents

28  without imposing an undue burden. Accordingly, Larian shall produce documents responsive to

1    Request No. 181 consistent with his supplemental response, and may produce such documents in

2    redacted form as specified above with respect to Request No. 179.

3

4    Statements to the Media:  Request Nos. 190-192, 194-197 and 199

5        In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian

6    and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action.

7    Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes

8    to the issues in the lawsuit.  More specifically, Mattel contends that the request are relevant to

9    Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases

10   regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie

11   products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products.

12   Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may

13   also contain admissions regarding the origin and conception of Bratz and statements relevant to

     damages.

14       Larian contends that the requests are overbroad and unduly burdensome, particularly

15   because several of the requests seek publicly available information.  Further, Larian points out

16   that the court has already considered and rejected as overbroad a nearly identical request served

17   on MGA that called for all documents relating to any communications by MGA with any news

18   organization regarding the contested MGA products or the contested Mattel products.  Larian

19   contends that the same reasoning applies to the instant requests.

20       Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and

21   199 is denied.  Although several of the requests encompass potentially relevant documents, the

22   requests are overbroad and encompass documents that have little to no relevance to the claims and

23   defenses in the case.  Not one of the requests is limited to relevant subject matters, such as Bratz's

24   sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's

25   Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz,

26   or damages.

27   //

28

Bryant v. Mattel, Ino.,
CV-04-09049 SGL (RNBx)

13

1    Furthermore, many of these overbroad requests seek publicly available information that is

2    readily accessible to Mattel for which Larian should not be burdened.  To the extent the requested

3    documents and information are not publicly available, such documents and information are

4    marginally, if at all, relevant because they are not likely to have caused Mattel compensable harm.

5    In either case, the burden and expense of searching for and producing responsive documents are

6    unjustified.

7

8    Communications With Mattel Employees:  Request No. 198

9    In Request No. 198, Mattel seeks all communications between Larian and any individual

10   while the individual was employed by Mattel.  Mattel contends that this request is directly

11   relevant to Mattel's claims of trade secret theft, and that the relevancy outweighs any purported

12   burden of production.

     Larian contends that the request is overbroad and unduly burdensome because it is

13   unrestricted as to time and subject matter.  Larian also points out that the court has previously

14   found a similar request overbroad.  Larian further contends that employees in the toy industry are

15   likely to maintain contacts with other toy manufacturers, and that a large corporation such as

16   Mattel is likely to have a high number of employees communicating with MGA or its officers,

17   which makes the request more unduly burdensome and unreasonable than it appears on its face.

18   Unlike other requests regarding communications, Request No. 198 is reasonably tailored

19   to the specific and numerous allegations in the case regarding alleged trade secret theft.  Although

20   the request is not limited by subject matter, it is limited in other respects to seek relevant

21   documents without imposing an undue burden.  The request is limited to communications

22   between Larian (and not MGA or persons acting on his behalf) and individuals employed at

23   Mattel.  The request is also limited to only those communications that took place while the

24   individuals were employed at Mattel.

25   Nevertheless, an additional temporal limit is appropriate to tailor the request to Mattel's

26   allegations of trade secret theft.  The alleged trade secret theft began with Bryant's conduct in

27   1999 and continued to 2005.  Accordingly, Larian shall produce documents responsive to Request

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

1    No. 198 that are limited to the time frame 1999 to 2005.

2

3    <u>Personal Financial Data:  Request Nos. 207-209 and 269</u>

4         In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks

5    or financial institutions and other banking relationships since January 1, 1999.  In Request No.

6    208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such

7    income for each year from 1999 to the present.  In Request No. 209, Mattel seeks Larian's federal

8    and state tax returns for each year from 1999 to the present.  In Request No. 269, Mattel seeks

9    documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from

10   1999 to the present.

11        Mattel contends that Request No. 207 seeks information reasonably calculated to lead to

12   information showing the timing of payments to Bryant and others, which in turn is relevant to the

13   timing of the development of Bratz and issues of credibility.  Mattel contends that Request Nos.

14   208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial

15   condition, which in turn is relevant to damages.  Further, Mattel contends that it is entitled to

16   information regarding the sources of Larian's income to determine whether they are attributable

17   to the alleged misconduct and thus subject to disgorgement.

18        Larian contends that the requested personal financial information is not relevant to the

19   claims or defenses at issue.  More specifically, Larian contends that neither the names of his

20   banks nor his gross income have any bearing upon either compensatory or punitive damages or

21   Mattel's claim for disgorgement of profits.  Larian further contends that there is no support for

22   Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.

23        Larian also contends that all three of the requests overlap substantially with requests

24   Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or

25   burden posed by these requests to him.  Further, Larian contends that the court has previously

26   found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered

27   no reason why the same result should not apply here.

28        Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted.  The

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

Exhibit __J__ , P. _170_

1    requests are reasonably calculated to lead to the discovery of admissible evidence relevant to

2    several issues in the case.  For example, the requested information is likely to lead to information

3    regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of

4    the creation of Bratz.  The requested information is also likely to show Larian's income and net

5    worth, which are relevant to damages.  Further, Larian has failed to establish that the requests are

6    unduly burdensome.  Although Mattel has sought and obtained broad discovery of financial

7    information from MGA, Mattel is also entitled to seek financial information directly from Larian.

8        Mattel's motion is denied as to Request No. 209, provided that Larian complies with

9    Request Nos. 207, 208 and 269.  In light of the discovery of financial information ordered herein

10   and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax

11   returns.

12   Storage Devices:  Request Nos. 222 and 224

13       In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating

14   to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive,

15   delete or modify digital information relating to Bratz, Angel, or Bryant.  Mattel contends that a

16   request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in

17   electronic form.  Mattel also contends that Rule 34 permits a party to obtain and test computer

18   hard drives and other storage devices.

19       Larian contends that the requests are overbroad, unduly burdensome, duplicative, and

20   ignore his privilege and privacy interests.  Larian also objects to an inspection of his actual hard

21   drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which

22   states that the amendment of Rule 34 relating to "electronically stored information is not meant to

23   create a routine right of direct access to a party's electronic information system."  See

24   Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes.  Larian contends that there is no justification for

25   an inspection of his electronic devices because there is no allegation that he improperly deleted

26   documents.

27       Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.

28

Exhibit __J__, P.__171__

With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to authorize the routine production of a party's electronic devices. Mattel attempts to justify Request No. 222 by pointing to various instances of alleged destruction of evidence. See Mattel's Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer laptops; "wiping" information from the hard drives of Larian's computer laptops every six months; redacting "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and destructive testing of Bryant's original Bratz drawings). However, Mattel fails to explain how these alleged instances of evidence destruction justify Request No. 222, other than to assert that it has a right to inspect Larian's storage devices to ensure that relevant information has not been deleted or permanently destroyed. Mattel's stated purpose suggests instead that Mattel is launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal Rules of Civil Procedure. See e.g. Rivera v. NIBCO, Inc., supra. Furthermore, Mattel's stated purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222. Among other things, Request No. 222 encompasses every storage device that Larian has used to copy digital information relating to Bratz. Mattel does not need every CD and DVD containing copies of Bratz-related video and audio content, but that is what the request seeks.

Request No. 222 is also duplicative because it requests information that is sought in numerous other requests served on Larian as well as MGA. Mattel has served hundreds of requests for documents and communications relating to Bratz, Angel, and Bryant. To comply with the requests, Larian was required to search for documents in both hard-copy and electronic form. Under the circumstances, it is unnecessary for Larian to also produce the requested storage devices.

Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims and defenses in the case, and therefore do not justify the burden of production on Larian.

Bryant's Storage Devices: Request Nos. 225, 227 and 228

In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

1   receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2       Larian contends that the requests are improperly directed to him because he does not have

3   personal possession of Bryant's hard drive or storage devices, or other information about those

4   devices. Mattel's Consolidated Separate Statement at p. 206. Larian also contends that the

5   requests are overbroad and unduly burdensome for the reasons discussed above in connection

6   with Request Nos. 222 and 224.

7       Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8   denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9

10   <u>MGA Hong Kong and MGA Mexico:  Request Nos. 272 and 273</u>

11       In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA

12   Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA

13   Mexico"), both of which are named defendants. In his supplemental responses, Larian agrees to

14   produce documents sufficient to show the ownership of these entities.

15       Mattel contends that the requests seek information relevant to refute MGA Mexico's

16   personal jurisdiction defense, and which bear on whether the acts of Larian and others are

17   attributable to the entities. Mattel also contends that Larian's (or MGA's ) ownership interest in

18   these companies is relevant to net worth. Mattel contends that Larian's supplemental response is

19   inadequate because it would allow Larian to withhold contradictory information and conceal the

20   true ownership of the business entities. Furthermore, Mattel contends that it is entitled to know

21   the ownership of these entities at times when different allegedly wrongful acts took place and to

22   determine if the ownership structure changed as a means of concealing assets or concealing the

23   payments of commercial bribes.

24       Larian contends that these requests should not be made to him, but to the entities

25   themselves or to MGA. Further, Larian contends that the requests are duplicative of a request

26   Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

27   served on MGA. Moreover, Larian contends that the requests are overbroad and unduly

28   burdensome, and that at most, he should only have to produce a list of owners.

1    Mattel contends that Larian cannot avoid his duty to respond to these requests simply by

2   saying that the information is obtainable from another source.  Further, Mattel contends that

3   Larian has failed to establish that the requests are unduly burdensome.

4    Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied

5   pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable

6   from another source that is more convenient, less burdensome, or less expensive, namely MGA

7   Mexico and MGA Hong Kong.  The requests are also overbroad and unduly burdensome.

IV. CONCLUSION

8    For the reasons set forth above, it is hereby ordered as follows:

9        1.    At meet and confer sessions held after the filing of this motion, Larian agreed to

10  produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-

11  146, 213, 221 and 223.  Accordingly, Larian shall produce, without limitation, all non-privileged

12  documents that are responsive to these Requests.

13       2.    With respect to the remaining requests that are at issue in this motion, Larian shall:

14            A.    produce, without limitation, all non-privileged documents that are

15       responsive to Request Nos.  79, 180, 198 (for the time period 1999-2005), 207, 208 and

16       269; and

17            B.    produce, in accordance with his supplemental responses, non-privileged

18       documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and

19       209.

20            C.    Larian may produce documents responsive to Request Nos. 179, 180 and

21       181 in redacted form as provided herein.

22            D.    Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199,

23  209, 222, 224, 225, 227, 228, 272 and 273.

24       3.    Larian shall produce all non-privileged documents that are required by this Order

25  that are in his possession, custody or control and that have not already been produced no later

26  than January 11, 2008.

27       4.    Larian shall produce a privilege log no later than January 15, 2008.

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

Exhibit _J_, P. _174_

5.     Mattel's request for sanctions is denied.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

Dated: December 31, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

20

Exhibit __J__, P. _175_

# EXHIBIT K

1    Hon. Edward A. Infante (Ret.)
    JAMS
2    Two Embarcadero Center
    Suite 1500
3    San Francisco, California 94111
    Telephone:    (415) 774-2611
4    Facsimile:     (415) 982-5287

5

6                    UNITED STATES DISTRICT COURT

7                 CENTRAL DISTRICT OF CALIFORNIA

8                     EASTERN DIVISION

9

10                                       CASE NO. C 04-09049 SGL (RNBx)

11 CARTER BRYANT, an individual,        JAMS Reference No.1100049530

12           Plaintiff,

13       v.                         Consolidated with
                                   Case No. CV 04-09059

14 MATTEL, INC., a Delaware corporation,    Case No. CV 05-2727

15           Defendant.            **ORDER GRANTING IN PART AND**

16                                  **DENYING IN PART MATTEL'S**
                                 **MOTION TO COMPEL PRODUCTION**

17                                  **OF DOCUMENTS BY MGA;**
                                 **DENYING REQUEST FOR**

18 CONSOLIDATED WITH                 **MONETARY SANCTIONS**
    MATTEL, INC. v. BRYANT and

19 MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.

20

21                               I. INTRODUCTION

22         On June 26, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production of

23 Documents by MGA Entertainment, Inc. ("MGA") and for Award of Monetary Sanctions. Mattel

24 seeks an order compelling MGA "to produce documents responsive to Mattel's First Set of

25 Requests for Documents and Things Re Unfair Competition Claims, including, without limitation,

26 Request Nos. 1, 3-10, 12-13, 16-18, 19-20, 26-27, 29-30, 32-40, 42-43, 45, 48-52, 54-56, 58-60,

27

28

Exhibit _K_, P. _176_

1  65-119, 137-140, 157-161, 164 and 166," and for sanctions in the amount of $4,500, which

2  represents a portion of the costs incurred by Mattel in bringing this motion.  Mattel's Motion at

3  p.1.  On July 3, 2007, MGA submitted its opposition brief, and on July 9, 2007, Mattel submitted

4  a reply brief.  The matter was heard via telephonic conference on August 13, 2007.  Having

5  considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel

6  is granted in part and denied in part, and the request for sanctions is denied.

7                                         II. BACKGROUND

8          This consolidated action includes MGA's claims for unfair competition against Mattel.

9  Among other things, MGA alleges that Mattel has engaged in "serial copycatting" of MGA

10  products, packaging and advertising, including Bratz dolls and other Bratz products, Bratz

11  packaging and Bratz television commercials.  MGA also alleges that Mattel engaged in improper

12  conduct in dealing with retailers, licensees, employees and industry organizations.

13          After MGA filed its claims against Mattel, Mattel sought and was granted leave to file

14  several counterclaims against MGA, including claims for copyright infringement, violation of

15  RICO, conspiracy to violate RICO, misappropriation of trade secrets and unfair competition.

16  Among other things, Mattel alleges that MGA has induced Mattel employees to steal Mattel's

17  trade secrets, confidential information and other property and take it with them to their new

18  employment with MGA.  Mattel also alleges that Bryant conceived, created and developed Bratz

19  designs while he was employed by Mattel as a designer, that he concealed his Bratz work from

20  Mattel, and that he sold Bratz to MGA while he was a Mattel employee.  Mattel alleges that it is

21  the rightful owner of the Bratz designs and that MGA is engaging in copyright infringement of

22  the Bratz designs.

23          On December 18, 2006, Mattel propounded its First Set of Requests for Production of

24  Documents and Things re Claims for Unfair Competition to MGA (the "Requests for

25  Production").  The Requests for Production consist of 166 requests seeking information that

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

1  Mattel contends is relevant primarily to MGA's claims for unfair competition and Mattel's

2  defenses thereto.

3      In the meantime, MGA served its initial disclosures related to its unfair competition

4  claims. Mattel immediately filed a motion to compel MGA to provide complete initial

5  disclosures in compliance with Rule 26, Fed.R.Civ.P. Although the initial disclosures were

6  wholly inadequate, the Discovery Master denied the motion to compel, reasoning that it would be

7  more efficient and orderly for the parties to proceed with Mattel's pending Requests for

8  Production.

9      MGA served its responses to Mattel's Requests for Production on January 17, 2007.

10  MGA objected and refused to produce documents responsive to approximately two-thirds of

11  Mattel's requests. As to the remaining requests, MGA agreed to produce "relevant and non-

12  objectionable documents," subject to its General and Specific Objections.

13      Thereafter the parties met and conferred in person and exchanged a few letters. On

14  February 9, 2007, counsel for MGA advised Mattel by letter that MGA, subject to its General and

15  Specific objections, agreed to produce all "relevant and non-objectionable documents" responsive

16  to Request Nos. 1-4, 11, 13-15, 18, 21-26, 28-29, 31-36, 44-51, 53, 61-64, 118, 120-137, 141-156,

17  162-163, 165 and 166. Kidman Decl., Ex. 14. As to Request Nos. 9, 10 and 12, MGA also

18  agreed to produce "documents sufficient to show the timing of, and relevant facts regarding"

19  certain specified products. Id. Counsel for MGA sent another letter on February 16, 2007,

20  advising Mattel that MGA would produce documents responsive to Request Nos. 29 and 30.

21  Bradley Decl., Ex. 1. On May 21, 2007, MGA advised Mattel by letter that it agreed, in essence,

22  to withdraw its restriction to "relevant and non-objectionable documents" in its responses to the

23  Requests For Production. Bradley Decl., Ex. 3. On May 31, 2007, MGA served supplemental

24  responses to Mattel's Requests for Production, which no longer included the phrase "relevant and

25  non-objectionable." Kidman Decl., Exs. 11 and 16.

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

1    In its opening brief, Mattel contends that MGA has improperly refused to produce

2  documents relating to:  the creation, origin, timing and ownership of the contested MGA products

3  and packaging, including the contested Bratz products and packaging (Request Nos. 5, 6-8, 16,

4  17, 19, 20, 38, 39, 48); MGA's alleged theft of Mattel's trade secrets and confidential information

5  by, among other things, targeting and recruiting current and former Mattel employees (Request

6  Nos. 42, 59, 60, 65-117, 138-140, 160, 161 and 164); damages (Request Nos. 27, 30 and 157-

7  159); facts MGA contends support its unfair competition claims (Request Nos. 45, 119 and 166).

8  Mattel contends that MGA has no legitimate basis for refusing to produce these categories of

9  documents because they are directly relevant to the claims and defenses in the case.  Mattel also

10 contends that MGA has improperly restricted the scope of its document production in response to

11 Request Nos. 1, 3, 4, 13, 18, 29, 49, 52 and 137.

12    MGA contends that Mattel's motion should be denied in its entirety for three reasons.

13 First, Mattel is seeking documents MGA already agreed to produce as a result of the meet and

14 confer process.  Second, Mattel is seeking documents that may be precluded by other motions

15 pending before the district court.  Third, Mattel is seeking documents that constitute an

16 unreasonable and overbroad fishing expedition.

17    As to the first point, MGA contends that it has already agreed to produce documents

18 responsive to Request Nos. 9, 10, 12, 26, 29, 30, 32-36, 45, 48-51, 118, 137, and 166.  Moreover,

19 MGA represents that it has produced more than 110,000 pages of documents, including

20 documents relating to the origin, infringement, design and tooling of Bratz and has also provided

21 Mattel with access to Bratz molds and sculpts.  MGA also represents that it is continuing to

22 search for and produce documents responsive to Mattel's requests on a rolling basis.

23    MGA also asserts that it "has revisited certain of Mattel's requests, and so as to avoid

24 further burdening the Court, MGA agrees to produce non-privileged documents in its possession,

25 custody or control, subject to its previously stated General and Specific Objections, that are

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

1 | responsive to the following sixteen requests: 5-8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and

2 | 157-159." MGA's Opposition at p. 3.

3 |      MGA also represents that it is prepared to produce documents responsive to Mattel's

4 | Request Nos. 65-117 and 119 (which seek documents concerning MGA-Mexico and its

5 | employees, and other topics relevant to Mattel's counterclaims) now that Judge Larson issued an

6 | order denying MGA's motion to dismiss Mattel's trade secret claims.[1]  MGA's Opposition at pp.

7 | 2 and 6.

8 |      As to the second point, MGA contends that Mattel's motion to compel is premature with

9 | respect to Request Nos. 1, 3, 4, 13 and 18.  MGA explains that these requests seek, among other

10 | things, information pertaining to undisclosed and/or unreleased MGA products.  The Discovery

11 | Master issued an order compelling MGA to produce such documents in response to other Mattel

12 | discovery requests.  MGA appealed the Discovery Master's ruling, which was heard by Judge

13 | Larson on July 2, 2007.  MGA contends that it should not be required to produce documents

14 | responsive to Request Nos. 1, 3, 4, 13 and 18 until Judge Larson issues a ruling.

15 |      For the remaining requests, however, MGA stands by its objections.  More specifically,

16 | MGA contends that Request Nos. 42, 54, 58-60, 138-140, 160, 161 and 164 are grossly overbroad

17 | and unduly burdensome.

18 |      In its reply brief, Mattel contends that MGA's belated offers to produce responsive

19 | documents do not obviate the need for an order compelling production for several reasons.  First,

20 | Mattel contends that in many instances, MGA's purported agreements to produce responsive

21 | documents are subject to major qualifications.  For example, in response to Request Nos. 9, 10

22 | and 12, MGA's meet and confer letter indicates that MGA has limited its production of

23 | documents to only "documents sufficient to show the timing of, and relevant facts regarding"

24 | certain products.  Kidman Decl., Ex. 14.  Second, Mattel points out that, in some instances, the

25 |

26 | _____

27 |     [1]  Judge Larson issued the order on June 27, 2007, a day after Mattel submitted its opening brief.

28 |

representations in MGA's meet and confer letters conflict with MGA's subsequent May 31, 2007 supplemental responses. For example, even though MGA stated earlier in its two meet and confer letters that it would produce documents responsive to Request Nos. 9, 10, 12, 26, 30, 32-36, 45, 48, 50, 51, 118 and 166, MGA's May 31, 2007 supplemental responses indicate that MGA objects and refuses to produce documents responsive to these requests. Third, Mattel contends that MGA has acknowledged its responsibility to produce documents responsive to Request Nos. 65-117 and 119 in view of Judge Larson's June 27, 2007 order denying MGA's motion to dismiss Mattel's counterclaims, and yet, MGA has failed to do so. Fourth, Mattel points out that MGA's opposition brief is internally inconsistent with respect to Request Nos. 55 and 56, stating both that MGA agrees to produce documents responsive to the requests, and that MGA objects to the requests as overbroad and burdensome. See MGA's Opposition at pp. 3 and 8.

Mattel also contends that Request Nos. 1, 3, 4, 13 and 18 are no longer premature because on July 5, 2007, two days after MGA submitted its opposition brief, Judge Larson issued an order upholding the Discovery Master's ruling with respect to undisclosed and/or unreleased MGA products. Accordingly, Mattel requests an order compelling production of documents all documents responsive to Request Nos. 1, 3, 4, 13 and 18 without any limitations, and overruling any objections thereto.

With respect to the remaining requests to which MGA continues to object, Mattel reasserts that the requests seek documents relevant to Mattel's trade secret counterclaims. Mattel also contends that MGA has failed to establish that complying with the requests would impose an undue burden.

### III. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

1  2004) ("District courts need not condone the use of discovery to engage in 'fishing

2  expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

3  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

4  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

5  the phrase "subject matter involved in the pending action," were intended to prevent discovery

6  that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

7  litigate the issues presented by the pleadings but to develop new claims or defenses.).

8       Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

9  extent of use of the discovery methods if the court determines that "(i) the discovery sought is

10  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

11  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

12  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

13  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

14  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

15  the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

16  26(b)(2).

17  **Request Nos. 1, 3, 4, 13 and 18**

18       Request No. 1 seeks "[a] sample of each of the CONTESTED MGA PRODUCTS,

19  together with each such product's packaging, instructions, promotional materials and other

20  associated packaging materials." Request No. 3 seeks "[a] complete copy of each advertisement

21  or promotional statement prepared, produced, printed, broadcast, made available to anyone in any

22  manner via the Internet, or otherwise used or disseminated in any way in connection with the

23  CONTESTED MGA PRODUCTS." Request No. 4 seeks "[a] complete copy of each

24  COMMUNICATION, advertisement, promotional statement that provides a basis for any claim

25  by [MGA] against MATTEL." Request No. 13 seeks "[a]ll DOCUMENTS RELATING TO any

26  revision of any CONTESTED MGA PRODUCTS, including but not limited to any proposed

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

1   alternatives, modifications or changes (whether or not implemented) to such CONTESTED MGA

2   PRODUCTS." Request No. 18 seeks "[a]ll DOCUMENTS RELATING TO the marketing,

3   advertising, promotion, licensing, offering for sale or sale of the CONTESTED MGA

4   PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans,

5   sales forecasts, strategies, surveys and analyses and including but not limited to all catalogs,

6   advertisements, brochures, displays and Internet publications."

7          During the meet and confer process, MGA agreed to produce documents responsive to

8   Request Nos. 1, 3, 4, 13 and 18. Kidman Decl., Ex. 14. In its subsequent supplemental

9   responses, however, MGA responded that it would produce responsive documents "visible to the

10  consuming public at the point of purchase," "made available to the public," or "presented to the

11  consuming public." MGA's Supp. Response, Kidman Decl., Ex. 8 and 16.

12         Mattel contends that the requested documents and items are relevant to MGA's claim of

13  "serial copying," whether or not they are seen by the consuming public. Mattel also contends that

14  the documents it seeks are relevant to any claim by MGA of "post sale confusion." Furthermore,

15  Mattel argues that MGA's restrictions on discovery are unreasonable in light of MGA's own

16  claimed trade dress, which MGA alleges extends to the entirety of MGA's marketing techniques

17  and product appearance. Mattel also contends that Request No. 13 seeks documents that are

18  directly relevant to MGA's claim that Mattel systematically modified its products to increase their

19  similarity to MGA's products over time.

20         In its opposition brief, MGA does not attempt to refute any of Mattel's relevancy

21  arguments above, relying instead on its argument that these requests are premature until Judge

22  Larson issues a ruling. Judge Larson, however, issued an order on July 5, 2007. Accordingly, the

23  requests are no longer premature. The subject requests are relevant and not unduly burdensome.

24  MGA is ordered to produce all non-privileged documents that are responsive to Request Nos. 1,

25  3, 4, 13 and 18.

26  //

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                8

1  <u>Request Nos. 5-8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159</u>

2         In its opposition brief, MGA agrees to produce documents responsive to Request Nos. "5-

3  8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159." MGA's Opposition at p. 3. Later in its

4  opposition brief, however, MGA contends that Request Nos. 55 and 56 are overbroad and

5  burdensome. <u>See</u> MGA's Opposition at pp. 3 and 8. Request No. 55 seeks production of "[a]ll

6  periodicals, whether they be magazines, newspapers, newsletters, or any other type of periodical,

7  that mention the CONTESTED MGA PRODUCTS that have been published since January 1,

8  1999." Request No. 56 seeks "[a]ll television or radio broadcasts or cablecasts that mention the

9  CONTESTED MGA PRODUCTS that have been disseminated since January 1, 1999." MGA

10  contends that these requests encompass, among other things, every single advertisement MGA

11  ever ran in connection with BRATZ or any of the other products at issue.

12         Mattel contends that Request Nos. 55 and 56 are designed to obtain documents that may

13  contain admissions relevant to various issues in the case, including admissions regarding the

14  origin and timing of the products at issue; the performance of the contested products or MGA as a

15  whole, which may undercut MGA's claims for damages; and statements that might reveal that

16  MGA had access to confidential Mattel information.

17         Although Request Nos. 55 and 56 encompass potentially relevant documents, they are

18  overbroad. They require MGA to produce every single advertisement MGA ever ran in

19  connection with all of the products at issue. The requests are not limited in any respect to the

20  subjects of interest to Mattel, i.e., the origin and timing of the products at issue. Furthermore,

21  Mattel has utilized other document requests and depositions to obtain the type of evidence it now

22  seeks.

23         Accordingly, Mattel's motion is granted as to Request Nos. 5-8, 16-17, 19-20, 27, 37-40,

24  43, 52, and 157-159 to ensure a deadline for production, and denied as to Request Nos. 55 and 56

25  pursuant to Rule 26(b)(2), Fed.R.Civ.P.

26  //

27

28

**Request Nos. 9, 10, 12**

        Request Nos. 9, 10 and 12 call for "[a]ll DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale and ownership of products and packaging" "that YOU contend provide a basis for any claim against MATTEL, whether or not such claim is in the COMPLAINT" (No. 9); "that YOU contend MATTEL copied or infringed" (No. 10); and related "COMMUNICATIONS" (No. 12).  During the meet and confer process, MGA agreed to produce "documents sufficient to show the timing of, and relevant facts" regarding the following products on the following topics:

- "First generation 'Bratz'" line, including packaging – invention, creation, origin, conception, authorship, design, development, sale and ownership;
- "Bratz" "Wintertime Wonderland" line, including packaging – invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Sportz" Cloe, including packaging – invention, creation, origin, conception, authorship and first sale;
- "Bratz" "Sun-Kissed Summer" line, including packaging and playset -- invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Formal Funk" line –invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Runway Disco," including packaging – invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Funky Fashion Makeover Head," including packaging – invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Petz," including packaging – invention, creation, origin, conception, authorship, and first sale;

1  • "4-Ever Best Friends," including packaging – invention, creation, origin, conception,

2  authorship, and first sale;

3  • "Mommy's Little Patient" – invention, creation, origin, conception, authorship, and first

4  sale;

5  • "AlienRacers," including logo – invention, creation, origin, conception, authorship, and

6  first sale; and

7  • "Bratz" "Diamondz" line – invention, creation, origin, conception, authorship, and first

8  sale.

9  Kidman Decl., Ex. 14.  In response to Request No. 9, MGA also agreed to produce documents

10  containing development, production and sales information for the product(s) affected by the hair

11  shortage allegedly caused by Mattel and "sufficient to show the timing of and relevant facts

12  regarding the shortage and its effect on MGA." Id.  Thereafter, MGA asserted objections to these

13  requests in its May 31, 2007 supplemental responses.  In opposition to Mattel's motion, however,

14  MGA restated that it would produce documents responsive to these requests consistent with its

15  prior meet and confer letter.  MGA's Opposition at p. 5.

16       Mattel contends that MGA's agreement to produce documents is insufficient because

17  MGA has limited its production to documents "sufficient to show."  MGA's opposition brief fails

18  to address Mattel's argument.  Instead, MGA merely asserts that it agreed to produce documents

19  responsive to Request Nos. 9, 10 and 12 during the meet and confer process, and therefore

20  Mattel's motion should be denied as moot.

21       Request Nos. 9, 10 and 12 clearly seek relevant information, and MGA has failed to

22  justify why its production should be limited to documents "sufficient to show."  Therefore,

23  Mattel's motion is granted as to Request Nos. 9, 10 and 12.

24  <u>Request Nos. 26, 29, 30, 32,-36, 45, 48-51, 118, 137 and 166</u>

25       In its two meet and confer letters MGA agreed to produce, subject to its General and

26  Specific Objections, documents responsive to Request Nos. 26, 29, 30, 32-36, 45, 48-51, 118, 137

27

28  Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

Exhibit ___, P. _186_

1   and 166. Kidman Decl., Ex. 14. Mattel points out, however, that MGA's May 31, 2007

2   supplemental responses are inconsistent insofar as the responses indicate that MGA continues to

3   object to some of the requests or otherwise agrees to produce only a limited portion of documents

4   responsive to other requests. Mattel's Reply Brief at p. 7. Nevertheless, in its opposition brief,

5   MGA reaffirms its earlier agreement to produce all responsive documents, and states that it

6   considers Mattel's motion to be moot. See MGA's Opposition at pp. 5-6. Mattel's motion is

7   granted as to this category of requests.

8   **Request Nos. 65-117 and 119**

9         In its opposition brief, MGA agrees to produce documents responsive to Mattel's Request

10   Nos. 65-117 and 119 now that Judge Larson issued an order denying MGA's motion to dismiss

11   Mattel's trade secret claims. MGA's Opposition at pp. 2 and 6. Mattel's motion is granted as to

12   these requests.

13   **Request Nos. 42, 54, 58-60, 138-140, 160-161 and 164**

14         MGA contends that Request Nos. 42, 54, 58-60, 138-140, 160-161 and 164 are overbroad

15   and unduly burdensome. Mattel insists that they are not. More specifically, Mattel contends that

16   the requests seek documents regarding MGA's alleged theft of Mattel's trade secrets, and in

17   particular, the theft of trade secrets through targeting and hiring current and former Mattel

18   employees.

19         Request No. 42 seeks "[a]ll COMMUNICATIONS between [MGA] and any individual

20   while the individual was employed by MATTEL." Although the request may encompass relevant

21   documents, it is overbroad insofar as it requires production of all communications, regardless of

22   subject matter. Furthermore, the request is objectionable to the extent it seeks documents that are

23   equally available to Mattel. Therefore, Mattel's motion is denied as to Request No. 42 pursuant

24   to Rule 26(b)(2), Fed.R.Civ.P.

25         Request No. 54 seeks "[a]ll DOCUMENTS RELATING TO any COMMUNICATION by

26   [MGA] with any news organization regarding the CONTESTED MGA PRODUCTS or the

27

28

Exhibit _15_ , P. _187_

1   CONTESTED MATTEL PRODUCTS." Once again, the request encompasses potentially

2   relevant documents, however it is overbroad, seeking all documents relating to any

3   communications by MGA with any news organization. Furthermore, the request seeks documents

4   that are of relatively minimal relevance to the claims and defenses in the case. Therefore,

5   Mattel's motion is denied as to Request No. 54 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

6           Request Nos. 58 seeks "[a]ll DOCUMENTS RELATING TO publicity by [MGA] or

7   about the CONTESTED MGA PRODUCTS since January 1, 1999, including but not limited to

8   advertising, media releases, and public relations material." This request is also overbroad in that

9   it seeks all documents relating to publicity by MGA about its products at issue in the litigation.

10  Mattel's motion is therefore denied as to Request No. 58 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

11          Request No. 59, asks for "[a]ll DOCUMENTS RELATING TO any effort by [MGA] to

12  recruit employees or contractors since January 1, 1999, including but not limited to advertising,

13  media releases, brochures, articles, catalogs, handbooks, and public relations material." The

14  request is overbroad insofar as it requires production of all documents relating to MGA's

15  recruiting, including for instance, recruiting from competitors other than Mattel. Mattel's motion

16  is therefore denied as to Request No. 59 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

17          Request No. 60 seeks "[a]ll DOCUMENTS RELATING TO the hiring, engagement, or

18  retention by [MGA] of any former or current MATTEL employee or contractor since January 1,

19  1999, including but not limited to all employment agreements and agreements RELATING TO

20  confidentiality or the invention, authorship, or ownership of any concept or product." Request

21  No. 138 seeks "[a]ll COMMUNICATIONS between [MGA] and any PERSON RELATING TO

22  the departure from MATTEL of any current or former MATTEL employee or contractor."

23  Request No. 139 seeks "[a]ll COMMUNICATIONS between [MGA] and any PERSON

24  RELATING TO the obligations to MATTEL, including the duty of confidentiality, of any current

25  or former MATTEL employee or contractor. Request No. 140 seeks "[a]ll

26  COMMUNICATIONS between [MGA] and any current or former MATTEL employee or

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                                                          13

1  contractor RELATING TO the ownership of any idea, concept, design, or product. Unlike the

2  previous requests, Request Nos. 60, 138, 139 and 140 are reasonably tailored to seek documents

3  central to Mattel's allegation that MGA stole its trade secrets through targeting and hiring current

4  and former Mattel employees. MGA has not carried its burden of establishing that it would be

5  unduly burdensome to comply with these requests. Accordingly, Mattel's motion is granted as to

6  Request Nos. 60, 138, 139 and 140.

7      Request No. 160 seeks "[a]ll DOCUMENTS received from MATTEL (whether directly

8  or indirectly) by [MGA] at any time since January 1, 1999." Request No. 161 seeks "[a]ll

9  DOCUMENTS that [MGA has] reason to believe were created by or originated from MATTEL,

10  other than MATTEL products that [MGA] purchased at retail." Request No. 164 seeks "[a]ll

11  DOCUMENTS RELATING TO any COMMUNICATIONS with, or inquiry or investigation by,

12  any government entity RELATING TO the CONTESTED MGA PRODUCTS or the

13  CONTESTED MATTEL PRODUCTS." These three requests are also reasonably tailored to seek

14  documents that could support Mattel's allegations of trade secret theft. MGA has failed to

15  establish that it would be unduly burdensome to comply with these requests. Mattel's motion is

16  granted as to Request Nos. 160, 161 and 164.

17                      IV. CONCLUSION

18      For the reasons set forth above, Mattel's motion is granted as to Request Nos. 1, 3-10, 12,

19  13, 16-20, 26, 27, 29, 30, 32-40, 43, 45, 48-52, 60, 65-117, 118, 119, 137-140, 157-161, 164 and

20  166, and denied as to Request Nos. 42, 54-56, 58, 59. MGA shall produce, without limitation, all

21  non-privileged responsive documents in accordance with this Order no later than August 30,

22  2007. Mattel's request for sanctions is denied.

23      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

24  Master, Mattel shall file this Order with the Clerk of Court forthwith.

25  Dated: August 13, 2007

                                    HON. EDWARD A. INFANTE (Ret.)
26                                  Discovery Master

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                        14

# EXHIBIT L

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 90378)
2  (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
    Timothy L. Alger (Bar No. 160303)
5  (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9          UNITED STATES DISTRICT COURT

10         CENTRAL DISTRICT OF CALIFORNIA

11             EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>      Plaintiff,<br><br>    v.<br><br>MATTEL, INC., a Delaware<br>Corporation,<br><br>      Defendant,<br><br>AND CONSOLIDATED CASES | CASE NO. CV 04-09049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-9059 and CV 05-2727<br><br>NOTICE OF SUBPOENA ISSUED TO FARHAD LARIAN<br><br>Discovery Cut-Off: January 14, 2008<br>Pre-Trial Conference:  April 7, 2008<br>Trial Date:  April 29, 2008<br><br>Hon. Stephen G. Larson |

7209/2210761.1

NOTICE OF SUBPOENA ISSUED TO FARHAD LARIAN

Exhibit _L_ , P. _190_

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2   PLEASE TAKE NOTICE that, pursuant to Rules 30 and 45 of the Federal

3   Rules of Civil Procedure, Mattel, Inc., has issued a subpoena, attached as Exhibit 1,

4   for the deposition and production of specified documents to the following witness:

5   1)   Farhad Larian, 160 Delfern Drive, Los Angeles, CA 90077.

6

7   DATED:  September 4, 2007        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

8

9                                   By _Mike T. Z_____
10                                      Michael T. Zeller
                                        Attorneys for Mattel, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-
NOTICE OF SUBPOENA ISSUED TO FARHAD LARIAN

Exhibit L, P. 191

**EXHIBIT 1**

**&** A088 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

<u>CENTRAL</u>   DISTRICT OF <u>CALIFORNIA</u>

MATTEL, INC., a Delaware Corporation

V.

CARTER BRYANT, an Individual; and DOES 1 through 10, inclusive

## SUBPOENA IN A CIVIL CASE

Case Number:[1]  CV 04-9049-SGL

Consolidated with cases CV 04-9059 and CV 05-2727

TO:  Farhad Larian
     160 Delfern Drive
     Los Angeles, CA  90077

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.   **Testimony will be recorded stenographically and by videographer.**

| PLACE OF DEPOSITION Quinn Emanuel Urquhart Oliver & Hedges, LLP 865 S. Figueroa St., 10th Floor, Los Angeles, CA  90017 | DATE AND TIME October 1, 2007 9:00 a.m. |
|---|---|

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE Quinn Emanuel Urquhart Oliver & Hedges, LLP 865 S. Figueroa Street, 10th Floor Los Angeles, CA  90017              (213) 443-3000 | DATE AND TIME September 18, 2007 9:00 a.m. |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) *Michael T. Zeller* Attorney for Plaintiff, Mattel, Inc. | DATE August 31, 2007 |
|---|---|
| ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER Michael T. Zeller, Quinn Emanuel Urquhart Oliver & Hedges, LLP 865 S. Figueroa Street, 10th Floor, Los Angeles, CA  90017              (213) 443-3000 | |

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

Exhibit <u>L</u>, P. <u>193</u>

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|

**SERVED**

| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
|---|---|---|

| SERVED BY (PRINT NAME) | | TITLE |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing, or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

Exhibit __L__ , P. __194__

## ATTACHMENT A

### Documents To Be Produced

1.   **DEFINITIONS.**

      a.   "YOU" or "YOUR" means Farhad Larian, and all of YOUR current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

      b.   "MORAD ZARABI" means Morad Zarabi, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to YOUR authority or subject to his control.

      c.   "ISAAC LARIAN" means Isaac Larian, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

      d.   "BRYANT" means Carter Bryant, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

      e.   "ERNEST DUTCHER" means Ernest Dutcher, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

      f.   "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold

- 1 -

Exhibit L , P. 195

or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Requests herein.

g.     "ANGEL" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Angel" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Angel" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. Without limiting the generality of the foregoing, the term "ANGEL" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Requests herein.

h.     "PRAYER ANGELS" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Prayer Angels" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Prayer Angels" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. Without limiting the generality of the foregoing, the term "PRAYER ANGELS" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Requests herein.

i.     "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

Exhibit _L_, P. _176_

diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, concepts, ideas, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part. the phrase "product, doll or DESIGN or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.

j.   "MGA" means MGA Entertainment Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

k.   "MATTEL" means Mattel, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

l.   "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

m.   "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u> and <u>Rule</u> 1001 of the <u>Federal Rules of Evidence</u>, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, COMMUNICATIONS, facsimiles, electronic mail, records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or

Exhibit ___, P. ___

other versions of the DOCUMENT, including without limitation all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

      n.    "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

      o.    "RELATING TO" means referencing, referring to, constituting, evidencing, pertaining to, mentioning, supporting, contradicting, negating, bearing on, touching on, containing, embodying, reflecting, identifying, stating, dealing with, concerning, commenting on, summarizing, responding to, relating to, describing or discussing in any way.

      p.    "FAMILY MEMBER" means any PERSON who at any time is, was or has been a spouse or child of another PERSON.

      r.    "IDENTIFY" or "IDENTITY" means the following: (i) With reference to an account with a bank or financial institution, means the name and address of the bank or financial institution, the account number(s) for or otherwise associated with such account, the date on which such account was opened and, if applicable, closed, and the name of each holder, including without limitation each beneficial holder, of each such account. (ii) With reference to a telephone subscription account, means the name and address of the carrier, the telephone number(s) for or otherwise associated with such account, the date on which such account was opened and, if applicable, closed, and the name of each holder of each such account. (iii) With reference to an email account, means the name and address of the service provider of such account, the email address(es) for or otherwise associated with such account, the date on which such account was opened and, if applicable, closed, and the name of each holder of each such account.

      s.    "ACTION" means this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly Mattel, Inc. v. Bryant, first filed in Los Angeles County Superior Court; Bryant v. Mattel, Inc.; and MGA Entertainment, Inc. v. Mattel, Inc.; and all counterclaims, cross-claims and defenses therein.

Exhibit _L_, P. _198_

t.   The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and vice versa, whenever such construction results in a broader disclosure of DOCUMENTS or information.

2.   **INSTRUCTIONS.**

a.   YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

b.   If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such DOCUMENTS identify each DOCUMENT and provide the following information:

(1)   The privilege or protection that you claim precludes disclosure;

(2)   The subject matter of the DOCUMENT (without revealing the content as to which the privilege or protection is claimed);

(3)   The date, author(s), addressee(s); and

(4)   Any additional facts on which YOU would base YOUR claim of privilege or protection.

c.   YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

d.   YOU are required to identify the source of all DOCUMENTS produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

e.   Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

Exhibit __L__, P. __199__

3.    **DOCUMENTS TO BE PRODUCED.**

(1)    All DOCUMENTS, including all COMMUNICATIONS, RELATING TO any and all lawsuits and arbitration proceedings between YOU and ISAAC LARIAN, including without limitation all video and/or sound recordings, transcripts, exhibits, memoranda, witness statements, declarations, affidavits and sworn testimony given by any PERSON in connection with such arbitration proceedings.

(2)    All DOCUMENTS, including without limitation any and all pleadings, briefs, decisions, orders, correspondence and other COMMUNICATIONS, created, reviewed, transmitted or received by YOU in connection with any lawsuit or arbitration proceedings, including without limitation any pre-arbitration and post-arbitration proceedings, or any other dispute between YOU and ISAAC LARIAN.

(3)    All DOCUMENTS, including all COMMUNICATIONS, RELATING TO any contract or agreement, or any proposed, offered or requested contract or agreement, between YOU and/or any of YOUR FAMILY MEMBER, on the one hand, and ISAAC LARIAN, any FAMILY MEMBER of ISAAC LARIAN and/or MGA, on the other hand, at any time since January 1, 1999, including without limitation any and all actual, proposed, offered or requested amendments or modifications thereto, and including without limitation: (a) the Agreement for Sale of Stock, entered into on or around December 4, 2000, between YOU and ISAAC LARIAN, (b) the Agreement to Arbitrate and Selection of Arbitrator, entered into on or about September 28, 2000, between YOU and ISAAC LARIAN, (c) any and all employment and consulting agreements, (d) any and all settlements, resolutions or compromises of any kind, and (e) any and all fee or indemnification agreements.

(4)    All DOCUMENTS, including all COMMUNICATIONS, RELATING TO Los Angeles Superior Court Case No. BC301371 brought by YOU against ISAAC LARIAN and/or any related proceedings, including any appeal thereof, and including without limitation all video and/or sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness statements, declarations, affidavits and sworn testimony given by any PERSON in connection with such suit and/or related proceedings and/or any appeal related to such lawsuit.

(5)    All DOCUMENTS RELATING TO BRYANT, including without limitation his agreement with MGA dated "as of" September 18, 2000, his work on BRATZ and his employment by MATTEL.

Exhibit  L  , P. 200

(6)     All DOCUMENTS RELATING TO BRATZ that discuss, concern or reference the time period prior to January 1, 2002, regardless of when such DOCUMENT was generated, created or transmitted.

(7)     All DOCUMENTS RELATING TO the creation, conception, development, design or origins of BRATZ, including without limitation all statements by ISAAC LARIAN, BRYANT or any other PERSON relating thereto at any time.

(8)     All COMMUNICATIONS to or from YOU RELATING TO BRATZ, including without limitation to or from ISAAC LARIAN, MORAD ZARABI, MGA, BRYANT, Veronica Marlow, Mercedeh Ward, Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy) and/or Anna Rhee, and including without limitation all diaries, notes, calendars, logs, phone records, letters and other DOCUMENTS relating thereto.

(9)     All planners, including without limitation any Franklin planner, used by YOU, ISAAC LARIAN or any other PERSON at MGA RELATING TO the time period between January 1, 1998 and December 31, 2002, inclusive.

(10)    All DOCUMENTS RELATING TO the timing of any meetings between YOU and anyone at MGA regarding BRATZ, including but not limited to any planners, calendars, or other meeting records.

(11)    All DOCUMENTS that REFER OR RELATE to any ownership rights or interest in BRATZ.

(12)    All DOCUMENTS, including all COMMUNICATIONS, RELATING TO any actual, proposed, contemplated, considered or potential copyright, patent or any other application or registration RELATING TO BRATZ.

(13)    All DOCUMENTS RELATING TO ANGEL.

(14)    All DOCUMENTS RELATING TO PRAYER ANGELS.

(15)    All DOCUMENTS RELATING TO Elise Cloonan or any of her FAMILY MEMBERS, including without all COMMUNICATIONS to or from her RELATING TO BRYANT, MATTEL, BRATZ, ISAAC LARIAN and/or MGA, and

Exhibit _L_, P. _201_

including without limitation all diaries, notes, calendars, logs, phone records, letters and other DOCUMENTS RELATING TO such COMMUNICATIONS.

(16)   All DOCUMENTS RELATING TO Los Angeles Superior Court Case No. BC329501 filed by YOU against ISAAC LARIAN, MORAD ZARABI and Kambiz Zarabi, and/or any related proceedings and/or any appeal of such lawsuit, including without limitation all video and/or sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness statements, declarations, affidavits and sworn testimony given by any PERSON in connection with such suit and/or related proceedings and/or any appeal related to such lawsuit.

(17)   ALL DOCUMENTS, including all COMMUNICATIONS, RELATING TO any financial appraisal of MGA and/or BRATZ, including without limitation any appraisal or appraisals performed by ERNEST DUTCHER and any instructions given to ERNEST DUTCHER regarding such appraisal or appraisals.

(18)   All DOCUMENTS RELATING TO any financial or other information considered, relied upon or used in any manner to conduct any valuation or appraisal of MGA and/or BRATZ, including without limitation for the time period from 1999 to 2001.

(19)   All DOCUMENTS RELATING TO the value of MGA and/or BRATZ at any time since January 1, 1999.

(20)   All DOCUMENTS, including all COMMUNICATIONS, RELATING TO allegations that ISAAC LARIAN concealed from YOU and/or MORAD ZARABI facts relating to BRATZ and/or BRYANT.

(21)   All DOCUMENTS, including all COMMUNICATIONS, RELATING TO the meeting on or around January 26, 2003 between YOU, MORAD ZARABI, ISAAC LARIAN, and Mike Shenasafar, including without limitation all video and/or sound recordings and notes relating thereto.

(22)   DOCUMENTS sufficient to identify any and all appraisers, accountants and consultants who participated or were involved in any lawsuit or arbitration, including pre-arbitration proceedings, or any other dispute between YOU and ISAAC LARIAN RELATING TO MGA or BRATZ.

Exhibit  L , P.  202

(23)   All DOCUMENTS RELATING TO any and all payments of money or transfers of anything of value that ISAAC LARIAN, his FAMILY MEMBERS and/or MGA have made, have offered or have proposed, promised or agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS at any time from January 1, 1999 through the present.

(24)   All DOCUMENTS RELATING TO any and all payments of money or transfers of anything of value that any PERSON has made, has offered or has proposed, promised or agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS and that was related in any way to BRATZ, BRYANT, MGA or this ACTION at any time from January 1, 1999 through the present.

(25)   All DOCUMENTS RELATING TO this ACTION, including all COMMUNICATIONS relating thereto.

(26)   All COMMUNICATIONS between YOU and MATTEL since January 1, 1999, and all DOCUMENTS relating thereto.

(27)   All DOCUMENTS that YOU showed MATTEL at any time since January 1, 1999, including all such DOCUMENTS that YOU showed MATTEL in connection with this ACTION, including without limitation each of the following:

      (a)   The MGA email dated November 16, 2000 that summarizes "last week's meeting" with K-Mart and references BRATZ.

      (b)   YOUR email to ISAAC LARIAN dated November 22, 2000 mentioning prices for a "Bratz Fashion Pack."

      (c)   The November 22, 2000 chart describing changes to the Bratz Doll Assortment and Bratz Holiday doll.

      (d)   YOUR August 19, 2005 email to Scott Bachrach (at scottbac@aol.com) inquiring about the first contact between Mr. Bachrach and MGA concerning BRATZ, as well associated COMMUNICATIONS.

      (e)   YOUR August 22, 2005 email to Colleen O'Higgins asking about BRYANT and BRATZ, as well as associated COMMUNICATIONS.

Exhibit _L_, P. _203_

(f)     The COMMUNICATIONS with Bin Ton, Michael Lingg and
Jennifer Maurus regarding BRATZ, including without limitation those relating to
actual and/or draft declaration(s) by the foregoing regarding BRATZ.

(g)     The December 21, 2000 email from ISAAC LARIAN to Paul
Warner, with copies to Dennis Medici and YOU, that mentions TRU purchases for
products including BRATZ.

(h)     YOUR August 1, 2005 email to Victoria O'Connor regarding
BRATZ licensees, as well as associated COMMUNICATIONS.

(i)     YOUR August 1, 2005 email chain with employees at dng.com
asking about BRATZ, as well as associated COMMUNICATIONS.

(j)     The August 7, 2005 email from Mark Fragel responding to
questions regarding BRATZ materials shown to Paulette Prim in November 2000.

(k)     YOUR May 24, 2000 email to ISAAC LARIAN that states ISAAC
LARIAN had instructed YOU to withhold original documents that had been located in
connection with the Fireman's Fund case and "to tell him [an MGA attorney] we could
not find the originals."

(l)     The document entitled "Analysis of Design, Packaging & Mock-
Up Expense for 6 Months Ending 6/30/99 and 6/30/00" attached to the August 11,
2000 email from Dennis Medici to ISAAC LARIAN and YOU.

(m)     The August 14, 2000 ISAAC LARIAN email to Medici, Warner
and YOU that references cost tracking software used by MATTEL that ISAAC
LARIAN says he learned about from interviewing MATTEL employees.

(n)     The emails between ISAAC LARIAN and Jahangir Makabi
requesting that Mr. Makabi sign an affidavit that he lost his original stock certificates
despite Mr. Makabi's protestation that he never had any such certificates, as well as
associated COMMUNICATIONS.

(o)     The January 31, 2001 email from ISAAC LARIAN to All in
Marketing and Product Development, Medici and Didi Brown asserting that he
(ISAAC LARIAN) had been purportedly diagnosed with "Alzheimer's" and denying

Exhibit __L__, P. _304_

in substance that he ever said anything that cannot be confirmed by a writing.

      (p)   The November 15, 2000 Paula Treantafelles email to YOU that says MGA will be selling a BRATZ backpack and states that a design for it is attached.

      (28)   All DOCUMENTS that MATTEL provided to YOU or for YOUR review since January 1, 1999.

      (29)   All DOCUMENTS RELATING TO the payment, offering or promising of money or anything of value by ISAAC LARIAN, MGA and/or YOU to any PERSON who was at the time employed by or worked for MATTEL.

      (30)   DOCUMENTS sufficient to show each title and position that YOU have or have ever held with MGA and the nature and extent of any ownership interest of any kind that YOU have or have ever had in MGA, including without limitation DOCUMENTS showing the start and, if applicable, end dates with respect to each such title, position or ownership interest.

      (31)   All DOCUMENTS, since January 1, 1999, RELATING TO YOUR, ISAAC LARIAN's and/or MGA's receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any MATTEL line list or other DOCUMENT prepared by MATTEL identifying MATTEL products in the planning, design or development phase.

      (32)   All DOCUMENTS, since January 1, 1999, RELATING TO YOUR, ISAAC LARIAN's and/or MGA's receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that was not publicly available at the time of YOUR, ISAAC LARIAN's and/or MGA's receipt of such DOCUMENT.

      (33)   All DOCUMENTS RELATING TO the hiring, engagement, or retention by YOU, ISAAC LARIAN and/or MGA of any current or former MATTEL employee or contractor since January 1, 1999, including but not limited to all employment agreements and agreements RELATING TO confidentiality or the invention, authorship, or ownership of any concept or product.

07209/1934291.1

Exhibit __L__, P. __205__

(34) All DOCUMENTS RELATING TO any effort by YOU, ISAAC LARIAN and/or MGA to recruit employees or contractors who have been or are employed by or who have worked for MATTEL since January 1, 1999.

(35) All DOCUMENTS, since January 1, 1999, RELATING TO YOUR, ISAAC LARIAN's and/or MGA's knowledge of any MATTEL product prior to the time that such product had been announced or disclosed by MATTEL to retailers or the public.

(36) All DOCUMENTS, since January 1, 1999, RELATING TO YOUR, ISAAC LARIAN's and/or MGA's knowledge of any DESIGN created by, on behalf of, or at the behest of MATTEL, or created by any PERSON employed by or under contract with MATTEL at the time of the DESIGN's creation, that was not manufactured for sale or placed into the retail market.

(37) All DOCUMENTS, since January 1, 1999, RELATING TO YOUR, ISAAC LARIAN's and/or MGA's knowledge of MATTEL's employment or inventions agreements.

(38) YOUR computer hard drives RELATING TO the time period from January 1, 1999 through December 31, 2002, inclusive.

(39) All DOCUMENTS RELATING TO any instruction by YOU, ISAAC LARIAN or MGA to destroy or withhold any DOCUMENT since January 1, 1998, including without limitation in connection with any lawsuit.

(40) All DOCUMENTS, including all COMMUNICATIONS, RELATING TO the preservation, retention or destruction of any DOCUMENT or DOCUMENTS that are sought by or the subject of Request Nos. 1 through 39, inclusive.

(41) DOCUMENTS sufficient to IDENTIFY since January 1, 1999 through the present (a) each account with any bank or financial institution that YOU have or have had, or that YOU have or have had any legal or beneficial interest in; (b) each telephone subscription service account that YOU have or have had, or that YOU use or have used; and (c) each email account that YOU have or have had, or that YOU use or have used.

Exhibit ___, P. ___