Larry McFarland (Bar No. 129668)
Christian Dowell (Bar No. 241973)
KEATS, McFARLAND & WILSON LLP
9720 Wilshire Blvd.
Penthouse Suite
Beverly Hills, CA 90212
Telephone:   (310) 248-3830
Facsimile:    (310) 860-0363
Email:   lmcfarland@kmwlaw.com
           cdowell@kmwlaw.com

Attorneys for Lucy Arant,
Sarah Halpern, and Peter Marlow

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>MATTEL, INC., a Delaware corporation;<br><br>                    Defendant.<br><br>AND RELATED ACTIONS. | Case No.: CV 04 – 09049 SGL (RNBx)<br>Consolidated with Case Nos.<br>CV 04-9059 and CV 05-2727<br><u>Hon. Stephen G. Larson</u><br><br>**RESPONSE TO ORDER TO SHOW CAUSE OF LARRY MCFARLAND, LUCY ARANT, SARAH HALPERN, AND PETER MARLOW**<br><br>Date:    02/25/08<br>Time:    10:00 A.M.<br>Place:   Courtroom One |

# TABLE OF CONTENTS

I.    ARGUMENT.......................................................................................1

      A.    Response to Order To Show Cause Why Mr. McFarland
            Should Not Be Ordered to Appear For Deposition..................................1

            1.    Mattel Failed To Establish Good Cause Under
                  Fed. R. Civ. P. 26 To Depose Mr. McFarland...............................1

            2.    Deposing Mr. McFarland Is Improper Under The
                  Well-Established Shelton Rule .........................................4

            3.    Mattel Has Not Effected Service On Mr. McFarland....................7

      B.    Response To Order To Show Cause Why Ms. Arant,
            Ms. Halpern, And Mr. Marlow Should Not Be Ordered
            To Appear For Deposition. ....................................................10

II.   CONCLUSION ...................................................................................12

# TABLE OF AUTHORITIES

**Cases**

Dibel v. Jenny Craig, Inc., No. 06cv2533 BEN(AJB),

    2007 WL 2220987 (S.D. Cal. Aug. 1, 2007)................................................5

FMC Techs., Inc. v. Edwards, 2007 WL 836709

    (W.D. Wash. Mar. 15, 2007) ........................................................................5

Lloyd Lifestyle Ltd. v. Soaring Helmet Corp., No. C06-0349C,

    2006 WL 753243 at *2 (W.D. Wash. Mar. 23, 2006)..............................4, 5

Mass. Mutual Life Ins. Co. v. Cerf, 177 F.R.D. 472 (N.D. Cal. 1998).......................4, 5

Nocal, Inc. v. Sabercat Ventures, Inc., No. C 04-0240 PJH(JL),

    2004 WL 3174427 at *4 (N.D. Cal. Nov. 15, 2004) ...................................5

Reeder v. Knapik, No. 07-CV-362-L(LSP), 2007 WL 1521100,

    *1 (S.D. Cal. May 22, 2007).........................................................................9

S.F. Bay Area Rapid Transit Dist. v. Spencer, No. C 04-04632 SI,

    2006 WL 2734284, *1 (N.D. Cal. Sept. 25, 2006)....................................10

Securitron Magnalock Corp. v. Schnabolk, No. 89 CIV 6731(NRB),

    2000 WL 307393, *1 (S.D.N.Y. Mar. 23, 2000).......................................10

Tokuda v. Huang, 882 F. Supp. 154, 156 (D. Guam 1995) ..........................................9

**Other Authorities**

7-3 Moore's Federal Practice § 33.102.........................................................................3

**Rules**

4A Fed. Prac. & Proc. Civ. 3d § 1097 .......................................................................10

62B Am. Jur. 2d Process § 217 ..................................................................................10

Fed. R. Civ. P. 26........................................................................................................6

Fed. R. Civ. P. 33........................................................................................................6

Fed. R. Civ. P. 33(b)(3) ...............................................................................................3

Fed. R. Civ. P. 45(b)(1) .............................................................................................10

RESPONSE TO ORDER TO SHOW CAUSE

Non-parties Lucy Arant, Sarah Halpern, and Peter Marlow and Larry McFarland hereby respectfully submit this response (the "Response") to Judge Larson's Order to Show Cause dated February 4, 2008, Why Mr. McFarland and His Clients Should Not be Ordered to Appear for Deposition ("Order to Show Cause").

# I.    ARGUMENT

## A.    Response to Order To Show Cause Why Mr. McFarland Should Not Be Ordered to Appear For Deposition.

### 1.    Mattel Failed To Establish Good Cause Under Fed. R. Civ. P. 26 To Depose Mr. McFarland.

Mr. McFarland should not be deposed for the simple reason that Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel") provided false information in Mattel's Motion For Leave To Take Additional Discovery and Objections To Discovery Master Order of September 28, 2007 (the "Deposition Motion")[1], filed on November 19, 2007, with respect to Mr. McFarland's work on Bratz.  In an effort to satisfy its burden under Rule 26(b)(2) to establish good cause to be allowed to take additional depositions, Quinn Emanuel stated that Mr. McFarland had "unique personal knowledge of the Bratz claims as well as about other claims in the case," and as support for this statement cited the following, "Larry McFarland – wrote MGA copyright registrations that stated that Bratz dolls were created during 2000 and that, after this suit was filed, MGA claimed were incorrect."[2]  This is not true.

The public record is clear.  With respect to Bratz, Mr. McFarland signed the following six copyright applications: Bratz Group Drawing, Reg. No. VA 1-218-489; Cloe Drawing, Reg. No. VA-1-218-490; Jade Drawing, Reg. No. VA 1-218-487; Sasha Drawing, Reg. No. VA 1-218-488; Yasmin Drawing, Reg. No. VA 1-218-491; and Bratz Purse Style Guide, Reg. No. VA 1-233-273.[3]  Not one of these registrations states

---

[1]  Declaration of Larry McFarland ("McFarland Decl."), Exhibit ("Exh.") 1.
[2]  Id. at 17-18.
[3]  McFarland Decl., Exh. 2.

1  that the "Bratz dolls were created during 2000."[4]  Moreover, with respect to the six

2  copyright applications that Mr. McFarland did sign, there is no discoverable

3  information with respect to any of these applications because the only communications

4  Mr. McFarland had with respect to these applications were with his clients and

5  personnel at his firm.[5]

6      Moreover, other than Quinn Emanuel's inaccurate allegation regarding

7  Mr. McFarland in the Deposition Motion, Mr. McFarland has been unable to locate any

8  Rule 26 disclosures or interrogatory responses where Mattel identified Mr. McFarland

9  as a witness, including the following:

10      1.  Mattel, Inc.'s Initial Disclosures Pursuant To Rule 26, dated June 28, 2004;[6]

11      2.  Mattel, Inc.'s Objections And Responses To MGA's First Set Of

12          Interrogatories, dated March 7, 2005;[7]

13      3.  Mattel, Inc.'s Supplemental Initial Disclosures Pursuant To Rule 26,

14          dated May 16, 2005;[8]

15      4.  Mattel, Inc.'s Consolidated (1) Initial Disclosures Relating To MGA's Unfair

16          Competition Claims, And (2) Second Supplemental Initial Disclosures Relating

17          To Mattel's Claims Against Bryant And MGA, dated January 5, 2007 ("January

18          5, 2007 Disclosures");[9]

19      5.  Mattel's Supplemental Responses to MGA's First Set of Interrogatories

20          to Mattel, Inc., dated December 7, 2007 ("Supplemental Interrogatory

21          Responses").[10]

22      Particularly inexplicable is the fact that Quinn Emanuel did not identify

23  Mr. McFarland as a witness in its Supplemental Interrogatory Responses which Quinn

24  Emanuel served over two weeks after they filed the Deposition Motion.  In the

---

[4] See Id.
[5] McFarland Decl., ¶ 4.
[6] McFarland Decl., Exh 3.
[7] McFarland Decl., Exh 4.
[8] McFarland Decl., Exh 5.
[9] McFarland Decl., Exh 6.
[10] McFarland Decl., Exh 7.

RESPONSE TO ORDER TO SHOW CAUSE

Supplemental Interrogatory Responses, Interrogatory No. 1 stated as follows: "State all facts, with particularity, and IDENTIFY all DOCUMENTS that support YOUR contention, if YOU so contend, that YOU have suffered harm as a result of any act or omission of MGA."[11]   In response, Mattel sets forth approximately 63 pages of contentions and lists of documents and depositions.[12]   Included in Mattel's response is the contention: "The Bratz dolls which had been created during the time of Bryant's employment by Mattel…."[13]   This contention addresses the same alleged fact, that the Bratz dolls were completed in 2000, that Mattel alleged that Mr. McFarland wrote in the copyright applications – he "wrote MGA copyright registrations that stated the Bratz dolls were created during 2000…."[14]   However, in response to Interrogatory No. 2, which states "For each fact stated in response to Interrogatory No. 1, IDENTIFY all PERSONS with knowledge of each fact,"[15] Mattel listed approximately 189 individuals and entities as persons with knowledge of the facts set forth in response to Interrogatory No. 1,[16] but did not include Mr. McFarland even though Mattel included numerous attorneys and law firms, such as O'Melveny & Myers, Littler Mendelson, Christensen Glaser, Kaye Scholer, David Rosenbaum, among others.[17]   If Mattel believed when it served its Supplemental Interrogatory Responses on December 7, 2007, that Mr. McFarland had knowledge about the timing of the completion of the Bratz work, Mattel was obligated to identify Mr. McFarland in its Supplemental Interrogatory Responses.  See Fed. R. Civ. P. 33(b)(3); 7-3 Moore's Federal Practice § 33.102 ("A party answering interrogatories has an affirmative duty to furnish any and all information available to the party.").

Continuing its pattern of inexplicable conduct, Quinn Emanuel never disclosed to this Court that Mattel had not identified Mr. McFarland as a witness in any of its Rule

---

[11] Id. at 125.
[12] Id. at 126-189.
[13] Id. at 131.
[14] See McFarland Decl., Exh. 1 at 18.
[15] McFarland Decl., Exh. 7 at 189.
[16] Id. at 191-219.
[17] Id.

RESPONSE TO ORDER TO SHOW CAUSE

26 disclosures or interrogatory responses, including in its Replies to MGA's and Mr. Bryant's Oppositions to the Deposition Motion which Mattel filed on December 31, 2007.[18]  In fact, at no time between the serving of its Supplemental Interrogatory Responses on December 7, 2007, and the hearing held before this Court on January 7, 2008, did Quinn Emanuel inform this Court of the truth with respect to Mr. McFarland, even though they knew that the Court would be relying on the false statement set forth in the Deposition Motion regarding Mr. McFarland.

Absent Mattel's false statement with respect to Mr. McFarland, there are no facts to support a finding of good cause under Rule 26 for Mattel to depose Mr. McFarland.

## 2.    Deposing Mr. McFarland Is Improper Under The Well-Established Shelton Rule

In addition to the fact that Mattel failed to establish good cause to depose Mr. McFarland, Mattel's attempt to depose Mr. McFarland is improper under the prevailing rule sharply limiting depositions of opposing litigation counsel, set forth in Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1987).  As the Shelton court explained, "[t]he harassing practice of deposing opposing counsel (unless that counsel's testimony is crucial and unique) appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process."  Id. at 1330.  Ninth Circuit district courts have "uniformly followed" Shelton, the leading case on this issue.  Lloyd Lifestyle Ltd. v. Soaring Helmet Corp., No. C06-0349C, 2006 WL 753243 at *2 (W.D. Wash. Mar. 23, 2006).

Under Shelton, deposing an opponent's current or former litigation counsel is proper only in extremely limited circumstances, although not absolutely prohibited. See Mass. Mutual Life Ins. Co. v. Cerf, 177 F.R.D. 472 (N.D. Cal. 1998) (Infante, J.) (granting protective order preventing deposition of Cerf's former counsel in the litigation at issue, applying Shelton); FMC Techs., Inc. v. Edwards, 2007 WL 836709

[18] McFarland Decl., Exh. 8.

RESPONSE TO ORDER TO SHOW CAUSE

(W.D. Wash. Mar. 15, 2007) (granting motion to quash deposition subpoena to opponent's former counsel in a related case). Because depositions of opposing counsel are disfavored, the party seeking such a deposition must show that (1) no other means exist to obtain the information, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of the case. Shelton, 805 F.2d at 1327. If the party seeking to depose opposing litigation counsel cannot prove all three of these elements, courts will quash the subpoena or enter a protective order prohibiting the deposition. See, e.g., Dibel v. Jenny Craig, Inc., No. 06cv2533 BEN(AJB), 2007 WL 2220987 (S.D. Cal. Aug. 1, 2007) (quashing subpoena seeking deposition of defendant's attorney); Lloyd Lifestyle Ltd., 2006 WL 753043 at *3 (same); Nocal, Inc. v. Sabercat Ventures, Inc., No. C 04-0240 PJH(JL), 2004 WL 3174427 at *4 (N.D. Cal. Nov. 15, 2004) (quashing subpoena and granting protective order; Mass. Mut. Life Ins. Co., 177 F.R.D. at 487-82 (granting protective order).

Mattel has failed to present any facts to satisfy the three-part test set forth in Shelton. Mattel has sources for all properly discoverable information other than Mr. McFarland. For example, with respect to the six copyright applications that Mr. McFarland did sign, [19] Mattel has served numerous Rule 30(b)(6) deposition topics addressing the development of the Bratz dolls and the copyrights filed with respect to

---

[19] Mattel also states in its Deposition Motion that Mr. McFarland may have knowledge with respect to Phase 2 discovery and cites as support an e-mail which they characterize as "discussing involvement with Bratz licensing." McFarland Decl., Exh. 1 at 20 n.41. As an initial matter, Mattel is merely speculating as to what projects Mr. McFarland worked on for MGA, and Mr. McFarland is unwilling to confirm or deny such speculation here. Moreover, any questions with respect to Mr. McFarland's work for MGA would necessarily intrude upon privileged matters and is improper under the well-established Shelton rule. Finally, to the extent that Mattel believes "licensing matters" are relevant to this litigation, it has sources other than Mr. McFarland and has in fact already served several Rule 30(b)(6) deposition topics on this issue. For example, Mattel's Fourth Notice of Deposition of MGA Entertainment, Inc., dated January 9, 2008, topics 11, 14 and 16; and Mattel's Second Notice of Deposition of MGA Entertainment, Inc., dated February 1, 2008, topic 15, are all Rule 30(b)(6) deposition topics which cover any such "licensing matters" which Mattel believes may be relevant. McFarland Decl., Exh. 9.

RESPONSE TO ORDER TO SHOW CAUSE

1    the Bratz property.[20]

2          Moreover, the <u>Shelton</u> court stated:

3          Finally, the practice of deposing opposing counsel detracts from the

4          quality of client representation. Counsel should be free to devote his or

5          her time and efforts to preparing the client's case without fear of being

6          interrogated by his or her opponent. Moreover, the "chilling effect" that

7          such practice will have on the truthful communications from the client

8          to the attorney is obvious.

9    <u>Shelton</u>, 805 F.2d at 1327.  Unfortunately, given the facts of this case it is hard to

10   conclude that Quinn Emanuel had any purpose other than to distract Mr. McFarland

11   from representing his clients.  First, Quinn Emanuel misstated the facts in its Deposition

12   Motion.  Second, Quinn Emanuel did not identify Mr. McFarland as a witness in any

13   Rule 26 disclosures or in its response to any interrogatories served either before or after

14   the Discovery Motion, even though it was required to do so under Fed. R. Civ. P. 26

15   and Fed. R. Civ. P. 33 if it believed that Mr. McFarland was a witness with

16   knowledge.[21]  Third, Quinn Emanuel failed to disclose to this Court that it had not listed

17   Mr. McFarland as a witness in any of its disclosures including the Supplemental

18   Interrogatory Responses served after the Deposition Motion.  Fourth, Quinn Emanuel

19   was fully aware that Mr. McFarland was busily engaged in representing Ms. Leahy, Ms.

20   Marlow, Ms. Halpern and Ms. Cloonan, and Quinn Emanuel knows full well that

21   Mr. McFarland's firm employs approximately 15 lawyers and therefore does not have

22   the tremendous resources to make available to represent their clients as does Quinn

23   Emanuel, "a 375+ lawyer business litigation firm – the largest in the United States

24

25   _____

26   [20] The following Rule 30(b)(6) deposition topics address the development of the Bratz dolls and the copyrights filed with respect to the Bratz property: Mattel's Notice of Deposition of MGA Entertainment, Inc., dated February 16, 2005, topic 2; Mattel's Notice of Deposition of MGA Entertainment (HK) Limited, dated June 4, 2007, topic 19; Mattel's Fourth Notice of Deposition of MGA Entertainment, Inc., dated January 9, 2008, topics 7-10 and 13; Mattel's Second Notice of Deposition of MGA Entertainment, Inc., dated February 1, 2008, topics 1-8, 13, 14 and 33.  <u>See</u> McFarland Decl., Exh. 9.
[21] <u>See</u> McFarland Decl., Exhs. 3-7.

RESPONSE TO ORDER TO SHOW CAUSE

1  devoted solely to business litigation."[22]  Fifth, at the same time that Quinn Emanuel is

2  making misrepresentations to the court to satisfy Mattel's burden of establishing good

3  cause to take Mr. McFarland's deposition, they are meeting-and-conferring with

4  Mr. McFarland regarding numerous discovery motions and have now bombarded

5  Mr. McFarland with the following motions: (1) Mattel's Motion to Compel Additional

6  Deposition Testimony and Production of Documents By Veronica Marlow, dated

7  January 28, 2008; (2) Mattel's Motion to Compel Additional Deposition Testimony and

8  Production of Documents Margaret Hatch-Leahy And To Overrule Instructions Not To

9  Answer; And For Sanctions, dated January 28, 2008; (3) Mattel's Ex Parte Application

10  To (i) Compel Production of Electronic Media From Third-Parties Elise Cloonan,

11  Margaret Hatch-Leahy and Veronica Marlow Or (ii) In the Alternative, Modify The

12  Scheduling Order, filed January 23, 2008; (4) Mattel's Motion for Leave to Obtain

13  Discovery after the Discovery Cut-Off in Response to Subpoenas Served on Doll Bag,

14  Inc., Veronica Marlow, Inc., Marlow Techo-Logic, Inc., People's Bank of the Ozarks

15  and Washington Mutual Bank, dated January 28, 2008; and (5) Mattel's Motion to

16  Compel Production of Fee Agreements and Privilege Logs from Leahy, Cloonan,

17  Halpern, and Marlow and for Sanctions, dated January 28, 2008.  Unfortunately, Quinn

18  Emanuel's actions seem to have been designed to disrupt the adversary litigation

19  process and to unreasonably burden and harass Mr. McFarland and his clients.  Under

20  the well-established Shelton rule, Mr. McFarland should not be deposed.

21        **3.    Mattel Has Not Effected Service On Mr. McFarland.**

22  With respect to the service of a subpoena on Mr. McFarland, Mr. McFarland was aware

23  since at least the time that Mattel filed its Deposition Motion on November 17, 2007,

24  that Quinn Emanuel wanted to depose him.  Nevertheless, Mr. McFarland went about

25  his business representing his clients, including defending all-day, marathon depositions

26  of Ms. Leahy, Ms. Cloonan and Ms. Marlow at Quinn Emanuel's offices on December

27  12th, 14th and 28th, respectively.  In addition, since Quinn Emanuel has repeatedly

28

---

[22] See www.quinnemanuel.com.

RESPONSE TO ORDER TO SHOW CAUSE

asserted that they have several of their 24 depositions remaining without considering the additional depositions that it requested in its Deposition Motion, if Quinn Emanuel wanted to serve a subpoena on Mr. McFarland, it could have easily done so at any of these three depositions.[23]  In fact, Quinn Emanuel did serve Mr. McFarland and/or his clients with trial subpoenas at the depositions of Ms. Leahy and Ms. Cloonan.[24]  In addition, between November 17, 2007, and the discovery cut-off date of January 28, 2008, attorneys for Quinn Emanuel were in Mr. McFarland's offices to conduct document review and Mr. McFarland met with the attorney from Quinn Emanuel during at least one of these visits.[25]  Mr. McFarland also personally attended a hearing before this Court on January 7, 2008, along with counsel from Quinn Emanuel.[26]

With respect to Quinn Emanuel's statements regarding their efforts to serve Mr. McFarland after January 7, 2008, the statements in their Ex Parte Application (1) To Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment, Inc., And MGAE De Mexico And (2) For Leave To Take Depositions In February 2008; Or, In The Alternative, For An Order Shortening Time To Hear A Motion Seeking The Foregoing Relief ("Ex Parte Application"), are not accurate.[27]  Quinn Emanuel states that "Mattel requested that Larry McFarland accept service on behalf of himself and his client," and that "Mattel recently asked Mr. McFarland when it could arrange service at a time convenient to him.  He has not

---

[23] Mattel stated in its Deposition Motion that it had only taken 18 depositions, see McFarland Decl., Exh. 1 at 10, and Mr. Quinn stated at the February 4, 2008, hearing that "I think to the contrary, your honor, we said we hadn't used up all of the slots.  We just anticipated we needed to get the ceiling raised, knowing what needed to be done." McFarland Decl., Exh. 10 at 346 [p. 30:7-10].

[24] McFarland Decl., Exh. 11.

[25] McFarland Decl., ¶ 15.

[26] McFarland Decl., Exh. 12.

[27] Mattel states that it gave Mr. McFarland notice of the Ex Parte Application on Sunday, January 27, 2008, at 11:10 p.m.  Notice of Ex Parte Application at 4.  While it is true that Mattel stated in a January 27, 2008 letter that "[a]mong the depositions, Mattel seeks leave to take on or before February 29, 2008, are the following three categories: … 2) Witnesses subject to the January 7 Order who, despite Mattel's diligent efforts, have not yet been served," nowhere in this letter did Mattel inform Mr. McFarland that it would be claiming that he and his clients had behaved improperly or that they had avoided service.  See Declaration of Christopher E. Price in support of Ex Parte Application ("Price Decl."), Exh. S.

---

RESPONSE TO ORDER TO SHOW CAUSE

1  responded."[28]  The truth is that Mattel did not ask Mr. McFarland to accept service of a

2  subpoena on himself until Mr. Price sent an e-mail to Mr. McFarland at 8:24 p.m. on

3  Sunday, January 27, 2008, which was one day before discovery cut-off.[29]  In addition,

4  Mr. Quinn's statement at the hearing held on February 4, 2008, as follows also does not

5  appear to be accurate: "We did notice all of the depositions that we got leave to take

6  pursuant to the Court's January 7th order."[30]  Mr. McFarland did not receive a notice of

7  deposition for his deposition or for the depositions of Ms. Arant, Ms. Halpern or

8  Mr. Marlow.[31]

9          Regarding Mattel's allegation that it attempted to serve Mr. McFarland four

10  times,[32] during the time period that Mattel claims to have tried to serve Mr. McFarland,

11  he was in and out of his office.  Mr. McFarland had no obligation to alter his usual

12  routine or otherwise go out of his way to make himself available to receive service.

13  See, e.g., Reeder v. Knapik, No. 07-CV-362-L(LSP), 2007 WL 1521100, *1 (S.D. Cal.

14  May 22, 2007) ("Failure to agree to meet with plaintiff or her process server to be

15  served is not an evasion of service."); Tokuda v. Huang, 882 F. Supp. 154, 156 (D.

16  Guam 1995) (reversing award of punitive damages based on alleged conduct of hiding

17  to avoid service and noting that the party "had no duty to run down to the office of the

18  plaintiff's attorney to accept service of summons.").  There are no facts whatsoever to

19  support Mattel's assertion that Mr. McFarland evaded service.

20

21  _____

22  [28] Ex Parte Application at 7.
    [29] Price Decl., Exh. E.  Prior to that time, on Thursday, January 10, 2008, Mr. Price

23  asked if Mr. McFarland was willing to "accept service of depositions subpoenas for
    Lucy Arant and Sarah Halpern."  McFarland Decl., Exh. 13.  Three business days later,

24  in an e-mail dated January 15, 2008 at 11:45 a.m., Mr. McFarland stated as follows:
    "This serves to confirm that I am not authorized by Ms. Arant or Ms. Halpern to accept

25  service of the subpoena."  Id.
    [30] McFarland Decl., Exh. 10 at 341 [p. 12:3-5].

26  [31] McFarland Decl., ¶ 22.
    [32] Counsel objects to the statement in the Declaration of Miguel Leyva that "I was

27  informed by the receptionist that Mr. McFarland would be out of the office for an
    undetermined period.  The receptionist informed me that Mr. McFarland was not

28  present at the office when I made further attempts on January 16, 2008, at 11:30 a.m.,
    and January 22, 2008, at 12:30 p.m."  See Declaration of Miguel Leyva in support of
    Ex Parte Application ("Leyva Decl.") at ¶ 3.  These statements are inadmissible hearsay
    and should be stricken from the Leyva Decl.

RESPONSE TO ORDER TO SHOW CAUSE

In sum, there is simply no good cause for Mr. McFarland's deposition, which would violate the <u>Shelton</u> rule, intrude upon privileged matters and cause unreasonable burden and harassment.

**B.** **Response To Order To Show Cause Why Ms. Arant,**
**Ms. Halpern, And Mr. Marlow Should Not Be Ordered**
**To Appear For Deposition.**

With respect to Ms. Arant, Ms. Halpern[33] and Mr. Marlow, these witnesses should not be deposed because they were not personally served with a Rule 45 subpoena.[34] <u>S.F. Bay Area Rapid Transit Dist. v. Spencer</u>, No. C 04-04632 SI, 2006 WL 2734284, *1 (N.D. Cal. Sept. 25, 2006) ("The Court agrees with the City and majority of courts that have understood 'delivering' to require personal service of the subpoena."). As set forth above, in response to Mattel's request dated January 10, 2008, with respect to whether Mr. McFarland was authorized to accept service of subpoenas on behalf of Ms. Arant and Ms. Halpern, three business days later, on January 15, 2008, Mr. McFarland informed counsel for Mattel that he was not authorized to do so.[35] The law does not require counsel to accept service of subpoenas on behalf of clients, <u>See</u>, <u>e.g.</u>, Fed. R. Civ. P. 45(b)(1); 4A Fed. Prac. & Proc. Civ. 3d § 1097; 62B Am. Jur. 2d Process § 217; <u>Securitron Magnalock Corp. v. Schnabolk</u>, No. 89 CIV 6731(NRB), 2000 WL 307393, *1 (S.D.N.Y. Mar. 23, 2000) ("[I]t cannot be

---

[33] Mattel seems to infer that they had a problem obtaining Ms. Halpern's address for the purpose of serving her – "Sarah Halpern was identified as a witness by MGA, but MGA failed to provide her address and phone number. Instead, MGA stated that she could be contacted through her attorney, Larry McFarland." Ex Parte Application at 7 n.25. The truth is that not only did Mattel have Ms. Halpern's home address, they disclosed it in their January 5, 2007 Disclosures. <u>See</u> McFarland Decl., Exh. 6 at 108.
[34] Counsel further objects to the statements in the Leyva Declaration that "the receptionist told me that Ms. Arant would not be in the office all day," Leyva Decl., at ¶ 13, the Declaration of Rayn Jerez in support of Ex Parte Application ("Jerez Decl.") that "[w]hen I knocked, a female answered and said that Ms. Arant had moved a month ago," Jerez Decl., at ¶3, the Declaration of Kenneth Wright in support of Ex Parte Application ("Wright Decl.") that "[t]he man would not give me his name, but confirmed that he lived in the house next door to the Residence. He told me that he had not seen Mr. Marlow or anyone at the Residence in a few days," Wright Decl., ¶3, and that "Mr. Halpern answered and said his wife is hardly ever home. He repeated the same statement when I called again on January 18." <u>Id</u>. These statements are inadmissible hearsay and should be stricken from the respective declarations.
[35] <u>See</u> McFarland Decl., Exh. 13.

1    forgotten that counsel was not obligated to accept service of the subpoenas in the first

2    instance."), as counsel for Mattel is obviously aware, given its own pattern of refusing

3    service of subpoenas.  See, e.g., Declaration of Raul Torres (describing Quinn

4    Emanuel's refusal to accept service of a notice of subpoena at its offices on Jan. 16,

5    2008 and *threatening to bar the messenger from the building*);[36] January 7, 2008,

6    Transcript of Hearing re Motions (Michael Zeller explaining refusal to accept service of

7    subpoenas for its own employees, unless they are "current directors and officers" of

8    Mattel).[37]

9          With respect to Mr. Marlow, counsel for Mattel did not ask Mr. McFarland if he

10   would accept service of the subpoena for Mr. Marlow until *Sunday*, January 27, 2008,

11   at 11:12 a.m.[38]  In a letter dated the same day, Christian Dowell responded for

12   Mr. McFarland stating that, "No one from your firm ever asked me whether I would

13   accept service of a subpoena for Mr. Marlow.  With respect to your request that I agree

14   to accept service of a subpoena on Mr. Marlow, I am not authorized to do so.  With

15   respect to your request that I stipulate to an extension of discovery cut-off with respect

16   to Mr. Marlow, I am unwilling to do this.  You have known about Peter Marlow since

17   2004 and yet you decided to wait until a few days before discovery cut-off to try and

18   depose him.  That was Mattel's choice."[39]  In addition, with respect to Mr. Marlow, if

19   Quinn Emanuel wanted to serve him with a deposition subpoena they could have done

20   so at the deposition of Ms. Marlow held on December 28, 2007 – just as they served

21   trial subpoenas for both Ms. Cloonan and Ms. Leahy at their respective depositions.

22   Indeed, Mr. Marlow attended Ms. Marlow's deposition and was in Quinn Emanuel's

23   offices for over 11 hours on that day.[40]  Moreover, as set forth above, Quinn Emanuel

24

25   [36] McFarland Decl., Exh. 14.
     [37] McFarland Decl., Exh. 12 at 378-379 [pp. 57:24-25, 58:1-6] ("The other people, a
26   number of them, except for three, are low-level employees who are not subject to Rule
     30.  Now, what we have said in terms of our representations to accept service is very
27   specific.  It is Mattel's current directors and officers.  It does not extend to people who
     are former.  We have said, certainly, if there are former people that they want to ask us
28   about--").
     [38] McFarland Decl., Exh. 15.
     [39] McFarland Decl., Exh. 16.
     [40] McFarland Decl., Exh. 17.

RESPONSE TO ORDER TO SHOW CAUSE

1   has consistently taken the position, which Mr. Quinn repeated at the February 4, 2008,

2   hearing, that Mattel has not used all of its 24 allotted depositions, so there was no

3   impediment to Mattel serving Mr. Marlow on December 28, 2007.

4        In its January 7 order, the Court recognized that subpoenas needed to be served

5   on deponents other than the current officers of Mattel.  The evidence establishes that

6   Mr. Marlow, Ms. Arant and Ms. Halpern properly decided not to authorize their

7   counsel to accept service of a subpoena on their behalf, and Mattel failed to personally

8   serve the subpoenas on these three witnesses.  In addition, Ms. Arant, Ms. Halpern and

9   Mr. Marlow note that they are not the only witnesses that Mattel failed to serve, yet

10  they are the only witnesses who have been ordered to show cause.  Mattel also claims

11  to have tried, but failed, to serve Ms. Salemnia, Mr. Abundis, Ms. Ward, Ms. Witschell

12  and Mr. Weiss.[41]

13  **II.   CONCLUSION**

14       For the foregoing reasons, Mr. McFarland, Ms. Arant, Ms. Halpern and

15  Mr. Marlow have shown good cause why they should not be deposed.

17  Dated:  February 11, 2008         KEATS MCFARLAND & WILSON LLP

19                                    /s/_____
20                                    Larry W. McFarland, Esq.
                                      Attorneys for Lucy Arant, Sarah Halpern,
21                                    and Peter Marlow

[41] Ex Parte Application at 8.

RESPONSE TO ORDER TO SHOW CAUSE