**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# EXHIBIT 8

**EXHIBIT TO:**     **DECLARATION OF LARRY MCFARLAND IN SUPPORT OF RESPONSE TO ORDER TO SHOW CAUSE OF LARRY MCFARLAND, LUCY ARANT, SARAH HALPERN, AND PETER MARLOW**

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | Hon. Stephen G. Larson |
| MATTEL, INC., a Delaware corporation, | REPLY MEMORANDUM OF MATTEL, INC. IN RESPONSE TO OPPOSITION OF CARTER BRYANT TO MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY AND OBJECTIONS TO DISCOVERY MASTER ORDER OF SEPTEMBER 28, 2007 |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |
| | Hearing Date: January 7, 2007<br>Time:          10:00 a.m.<br>Courtroom:     1 |
| | **Phase 1:**<br>Discovery Cut-off:       January 28, 2008<br>Pre-trial Conference:   May 5, 2008<br>Trial Date:              May 27, 2008 |

07975/2338322.1

MATTEL'S REPLY TO BRYANT OPPOSITION TO MOTION FOR ADDITIONAL DISCOVERY

Exhibit 8
Page ___240___

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................ 1

ARGUMENT ........................................................................................ 4

I.   BRYANT'S ATTACKS ON MATTEL DO NOT JUSTIFY DENYING MATTEL A FAIR AMOUNT OF TIME TO DEPOSE HIM ....................... 4

II.  MATTEL IS ENTITLED TO RELIEF ................................................. 10

CONCLUSION ..................................................................................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07975/2338322.107975/2
38321.1

-i-

Exhibit 8
Page ___241

# TABLE OF AUTHORITIES

**Page**

## Cases

*Collins v. International Dairy Queen,*
189 F.R.D. 496 (M.D. Ga. 1999)................................................. 9

*Communications Center, Inc. v. Hewitt,*
2005 WL. 3277983 (E.D. Cal. 2005) ......................................... 7

*Dixon v. Certainteed Corp.,*
164 F.R.D. 685 (D. Kan. 1996) .................................................. 6

*Keck v. Union Bank of Switzerland,*
1997 WL. 411931 (S.D.N.Y. 1997) ........................................... 5

*Keithley v. Homestore.com, Inc.,*
2006 WL. 1646119 (N.D. Cal. 2006) ......................................... 9

*Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.,*
2003 WL. 22433095 (N.D. Ill. 2003) .......................................... 7

*Ritchie v. U.S.,*
2004 WL. 1161171 (N.D. Cal. 2004) ......................................... 6

*Robins v. Scholastic Book Fairs,*
928 F. Supp. 1027 (D. Or. 1996) ................................................ 6

*Tillery v. Darby-Rogers Co.,*
2006 WL. 2735162 (M.D. Fla. 2006) ......................................... 9

## Statutes

Fed. R. Civ. P. 26(b) & 33 ......................................................... 5

Fed. R. Civ. P. 30(a)(2)(A) or 33(a) ....................................... 5, 6

Fed. R. Civ. P. 72(a) ................................................................ 11

MATTEL'S REPLY TO BRYANT OPPOSITION TO MOTION FOR ADDITIONAL DISCOVERY

Exhibit 8
Page _____

## Preliminary Statement

1

2      Once the rhetoric is pierced, it becomes apparent that Bryant has not disputed

3  any of the key facts that are the basis for Mattel's motion.  As the Court is aware,

4  Bryant first promised but then declined to sit for deposition at all in this case, and it

5  took two Court Orders before he complied.  Once he did sit, Bryant's and MGA's

6  counsel repeatedly obstructed a fair examination, including by giving lengthy,

7  suggestive speeches and even taking Bryant out of the room with questions pending.

8  For that misconduct, Judge Infante found that Bryant's counsel had improperly

9  "coached" Bryant, overruled dozens of improper instructions not to answer and ordered

10  Bryant to sit for another two hours of deposition.

11      Mattel also sought additional time to depose Bryant on the multitude of new

12  claims, defenses and evidence that had been asserted or disclosed for the first time *after*

13  Bryant was deposed.  Consistent with his refusals to provide any discovery until

14  ordered, Bryant again declined to appear at all and argued that Mattel was entitled to *no*

15  time whatsoever to depose him on new matters.  Mattel thus filed a second motion.

16  Despite correctly finding that Bryant is the "most knowledgeable witness with respect

17  to virtually all of the factual issues" in this case,[1] including on the new claims and

18  defenses raised after his deposition, Judge Infante granted Mattel only seven additional

19  hours to depose Bryant (thus giving Mattel a total time of nine additional hours).

20      In opposing Mattel's present motion, Bryant does not claim that nine hours of

21  additional deposition time is sufficient to cover MGA's sweeping unfair competition

22  claims of which defendants themselves say Bryant has unique knowledge -- which is

23  only a subset of the new claims introduced into this case by MGA's complaint.  He does

24  not contest that, among other things, MGA's claims purport to assert infringement of

25

26  _____

[1]  Hearing Transcript ("9/27/07 Hearing Tr."), dated September 27, 2007, at

27  24:24-25:2, Declaration of B. Dylan Proctor, dated November 19, 2007 and previously filed with the Court ("Proctor Dec."), Ex 85.

28

07975/2338322.1

-1-

Exhibit 8
Page ___243___

1   the *entirety* of the Bratz line, consisting of some 200 products. He does not dispute that

2   defendants previously represented to the Court that he is one of only two people who

3   has knowledge about the origins of most of these Bratz products. And he does not and

4   cannot contest that MGA had not even asserted those claims -- for which MGA seeks

5   "billions" of dollars against Mattel -- at the time of his deposition (and that Mattel

6   therefore *could not possibly* have questioned him about them). In fact, many of the

7   products MGA has purported to put at issue did not even exist as of the time of Bryant's

8   deposition in 2004.

9          This does not even address the other matters for which Mattel submits Mattel is

10   entitled to fair examination time. For example, as the evidence shows (and Bryant does

11   not address), Bryant withheld Bratz design drawings that bear September 1999 dates on

12   them until after his deposition. This was, of course, a time period when he was

13   employed by Mattel, and these surely were among the documents Bryant was obligated

14   to produce long ago but withheld until recently. He and MGA also withheld sworn

15   statements made by Bryant himself about the timing, origins and development of Bratz

16   that were wholly at odds with their assertions in this case. In fact, both Bryant and

17   MGA withheld until after his deposition (and only once they were repeatedly

18   compelled) the vast bulk of their documents on Mattel's claims and MGA's claims. At

19   the time of that deposition, they had produced literally a few thousand pages of

20   documents. Now, once ordered, they have produced literally millions of pages of

21   documents. Mattel has never had an opportunity to question Bryant about any of this

22   withheld evidence.

23          Mattel should not have to choose between discovery on its own claims and

24   discovery on defendants' ever expanding claims and new defenses that have been

25   asserted only since Bryant's deposition. Unfortunately, providing Mattel only nine

26   additional hours has precisely that effect. As the Court knows, Bryant and the other

27   defendants in this case have sought to radically expand this action yet further through

28   unclean hands defenses that are, standing alone, the equivalent of separate litigations in

07975/2338322.1

-2-

1  terms of their breadth.[2] In resisting Mattel's motion to strike his own belatedly asserted

2  defenses, Bryant argued that Mattel could obtain discovery into them.[3]   Bryant

3  simultaneously argued in another brief that one reason he alone among the parties

4  should be exempt from providing an evidence preservation declaration is that Mattel

5  can question him at deposition.[4]   Mattel simply cannot cover everything it needs to

6  cover in nine hours.

7          Bryant cannot (1) refuse to provide information through other means on the

8  ostensible ground that he can be asked about it at deposition while (2) also refusing to

9  make himself available for a realistic amount of time for deposition. He is, as all agree

10  (and the Discovery Master found), the "key witness" and "most knowledgeable witness

11  with respect to virtually all of the factual issues" in this case,[5] including on the

12  multitude of issues newly raised by MGA and Bryant themselves since his deposition.

13  An additional nine hours is not enough to cover:

14          •      MGA's claims that Mattel allegedly engaged in "serial copycatting" of
                  Bratz dolls, Bratz "pets" and other Bratz products, Bratz television
15                commercials and Bratz packaging;

16          •      MGA's other claims of alleged unfair competition by Mattel;

17

18     [2]   Among other things, these defenses put at issue matters across the world, from

19  MGA's claimed acquisition of Zapf Creation AG in Germany to contractual
    relations between MGA and Smoby Group in France. See MGA's Amended

20  Answer and Affirmative Defenses, dated September 19, 2007, at 20, attached as

21  Exhibit 19 to the Declaration of Michael T. Zeller In Support Of Mattel's Motions to
    Be Heard On January 7, 2008 ("12/31/07 Zeller Dec."), dated December 31, 2007

22  and filed concurrently herewith.

23     [3]   See Bryant's Opp. to Mattel's Motion to Strike Carter Bryant's Affirmative
    Defenses (Nos. 1, 2, 3 and 5), dated December 3, 2007, at 8-9, 12/31/07 Zeller Dec.,

24  Exh. 20.

25     [4]   See Bryant's Opp. to Mattel's Motion to Enforce the Court's Order of August
    27, 2007 and Compel Carter Bryant and Carlos Gustavo Machado Gomez to

26  Provide Preservation Affidavits, dated December 24, 2007, at 4 n. 2., 12/31/07

27  Zeller Dec., Exh. 21.
       [5]   9/27/07 Hearing Tr. at 24:24-25:2, Proctor Dec., Ex 85.

28

07975/2338322.1

-3-
MATTEL'S REPLY TO BRYANT OPPOSITION TO MOTION FOR ADDITIONAL DISCOVERY

Exhibit 8
Page   245

1    •    Bryant's participation in the design and development of the many
2         dozens of Bratz products MGA put at issue by filing its unfair
         competition complaint;

3    •    What copies and derivative works Bryant has made over a period of
4         many years of the works Mattel claims its owns and Bryant infringed;

5    •    Bryant's knowledge of any copies other defendants made of the works
         Mattel claims its owns; and

6    •    Bryant's role in the alleged RICO enterprise, his knowledge of other
7         participants' roles, and his and others' hundreds of acts of mail fraud
         and wire fraud.

8    The Court should grant Mattel additional time.[6]

9                          **Argument**

10   I.    **BRYANT'S ATTACKS ON MATTEL DO NOT JUSTIFY DENYING**

11         **MATTEL A FAIR AMOUNT OF TIME TO DEPOSE HIM**

12         Rather than dispute Mattel's showing or the factual findings in Judge Infante's

13   Order confirming the broad scope of his knowledge (and indeed his unique knowledge),

14   Bryant principally engages in generalized, rhetorical attacks on Mattel.

15         Apart from being unfounded, these charges are irrelevant to the issue of whether

16   Mattel should have more time with Mr. Bryant. The propriety of discovery on core

17   matters does not turn on whether Bryant deems Mattel a deserving litigant. To the

18   contrary, the Federal Rules make clear that additional discovery "*shall be granted*" to

19   ───────────────────────────────
     [6]    Bryant chastises Mattel for supposedly moving against Bryant on deposition
20   issues for a "third time." It is difficult to understand why Bryant posits this as
     evidence of Mattel's alleged abuse, as opposed to Bryant's flouting of Court Orders
21   and his obvious discovery obligations. In fact, Mattel has had to move
     (successfully) against Bryant time and again in connection with his deposition
22   because he refuses to do anything without Court Orders: once to compel him to sit
23   for deposition because he had flatly refused to appear after promising that he would;
     another time (also successfully) to enforce the first Order because Bryant refused to
24   comply with it; an additional time to overrule dozens of improper instructions given
     at the deposition, in addition to other misconduct by Bryant and his counsel (which
25   motion too was granted); and then again to obtain a deposition on new claims, new
26   defenses and new evidence because Bryant again flatly refused to appear at all for
     any time on those issues as well.
27

28

07975/2338322.1

Exhibit 8
Page ___ 246

1  the extent consistent with the principles set forth in Rule 26(b)(2).  Fed. R. Civ. P.

2  30(a)(2)(A) & 33(a) (emphasis added).  Those principles weigh decisively in favor of

3  additional deposition time of Carter Bryant.

4      Nowhere does Bryant dispute that the additional discovery Mattel seeks is not

5  duplicative of prior discovery, that Mattel has not had an adequate opportunity to take

6  discovery on these matters, and that the substantial benefits of discovery on these

7  central issues outweigh any burden.  None of the factors set forth in the Rules looks to

8  the type of charges Bryant makes here, and Bryant makes no argument and cites no

9  authority otherwise.

10      Bryant's "blame Mattel" arguments also overlook the cost and unnecessary

11  burden that his refusals to sit for the reasonable completion of his deposition threaten to

12  impose upon the Court.  The time limits were never intended to "prevent needed

13  discovery." Notes of the Advisory Committee (1993) to Fed. R. Civ. P. 26(b) & 33. It

14  does not advance the cause of justice or judicial efficiency to allow a party -- and

15  central witness -- such as Bryant to avoid being fully questioned.  To the contrary,

16  limiting Mattel to only nine hours -- which is not even arguably sufficient to cover

17  MGA's own sweeping claims, let alone the multitude of other facts about which Bryant

18  properly needs to be questioned -- would inevitably undermine trial management and

19  foster improper surprise.  It similarly risks that issues the Court can, and should, weed

20  out on summary judgment will instead be unnecessarily aired at trial.

21      It is well established that a party can be compelled to testify regarding new

22  evidence that comes to light following his initial deposition.[7]  Bryant nevertheless

23

24  _____

[7] "[A] second deposition is often permitted, where new information comes to

25  light triggering questions that the discovering party would not have thought to ask at
   the first deposition." Keck v. Union Bank of Switzerland, 1997 WL 411931, at *1

26  (S.D.N.Y. 1997) (permitting plaintiff to reopen depositions of two witnesses

   because "the request to reopen the questioning is based on new information"); see

27  also Ritchie v. U.S., 2004 WL 1161171, at *3 (N.D. Cal. 2004) ("when further

28  (footnote continued)

Exhibit 8

Page ___247___

1  suggests that Mattel should be denied time to which it is entitled because Mattel

2  supposedly made a tactical choice to depose him early on.  Not only is such a

3  consideration found nowhere in the Federal Rules, but this has it backwards: the tactics

4  were Bryant's, not Mattel's. He does not dispute that Mattel sought his (and MGA's)

5  documents before the deposition, and they suppressed them. He does not dispute that

6  Bryant and his counsel had affirmatively *denied* that key evidence relating to the

7  creation and origins of Bratz even existed.

8      The saga of Bryant's computer drives is a case in point. Mattel raised the issue of

9  Bryant's hard drives even before his deposition.[8] In response, Bryant's counsel told

10 Mattel, and then represented to Judge Block and Judge Infante in succession, that they

11 had reviewed the hard drive of Bryant's October 2000 Desktop computer but located no

12 "relevant" or "responsive" documents.[9] They also claimed that Bryant had no computer

13 hard drive other than the Desktop, specifically claiming that Bryant no longer had a

14 laptop computer that he had used starting during the relevant 2001 time period.

15

16

17

18 evidence linking [witness to the project in dispute] subsequently came to light this

19 court permitted plaintiff to depose [the witness] a second time"); Robins v.
   Scholastic Book Fairs, 928 F. Supp. 1027, 1036 (D. Or. 1996) (finding "that the

20 second set of depositions of these individuals was necessary because they had to be

21 questioned about additional documents that Defendant produced after the first set of
   depositions"); Dixon v. Certainteed Corp., 164 F.R.D. 685, 692 (D. Kan. 1996)

22 (production of document containing statement by witness after first deposition

23 warranted second deposition).
   [8]  See Declaration of Michael T. Zeller In Support of Motion of Plaintiff Mattel,

24 Inc. For Additional Time And/Or To Reopen the Deposition of Carter Bryant For

25 All Purposes ("Zeller Dec."), dated August 1, 2007, ¶ 14, Exh. 10, Notice of
   Lodging, filed November 19, 2007, Exh. 5.

26 [9]  Zeller Dec. ¶ 15, Exhs. 11-12. Indeed, Bryant's counsel swore to Judge Block

27 that they had "tirelessly searched for and inspected [Bryant's] hard drives for
   relevant information," but found none. Zeller Dec. ¶ 15, Exh. 11.

28

-6-

Exhibit 8
Page _____ 248

1       The Court subsequently ordered Bryant to produce the hard drives of his

2   computers for forensic imaging.[10]  After that, Bryant told Mattel that he could not

3   locate the Desktop drive.[11]  It was only after Mattel moved for sanctions that Bryant

4   "found" it.[12]  Bryant also revealed for the first time -- in 2007 -- that his representations

5   about not having the laptop were wrong and that he even had it imaged in July *2004*,

6   months before his November 2004 deposition and months before he represented to

7   Judge Block and later Judge Infante that he had possession of only his Desktop.

8       Examination of the images of Bryant's belatedly disclosed hard drives revealed

9   that they had a program called "Evidence Eliminator" installed and used on them.[13]

10   According to advertisements, the "Evidence Eliminator" software is designed to ensure

11   that "the data destroyed" by its operation "is gone forever."[14]   Courts have also

12   recognized this and imposed terminating sanctions based on its use.   See

13   Communications Center, Inc. v. Hewitt, 2005 WL 3277983, at *2-3 (E.D. Cal. 2005)

14   (finding defendant's use of "Evidence Eliminator" software warranted default judgment

15   for plaintiff: "the data destroyed is "gone forever" . . . no sanction short of default is

16   available to return the parties to the position in which they would have been but for the

17   deliberate [use of Evidence Eliminator software] by defendant."); Kucala Enterprises,

18   Ltd. v. Auto Wax Co., Inc., 2003 WL 22433095, at *3 (N.D. Ill. 2003) (party's

19   possession of "Evidence Eliminator" software and fact that documents that one would

20   reasonably expect to be found were not produced or discovered supports a finding that

21   documents were purposefully destroyed).

22       As another example, Mattel requested that Bryant make his original drawings

23   and other documents available for inspection and photographing at least as early as

24

25   [10]   Zeller Dec. Exh. 3.
26   [11]   Zeller Dec. ¶ 16, Exh. 13.
     [12]   Zeller Dec. ¶ 16, Exh. 14.
27   [13]   Zeller Dec. ¶ 17.
     [14]   Zeller Dec. Exh. 15.
28

07975/2338322.1

-7-
MATTEL'S REPLY TO BRYANT OPPOSITION TO MOTION FOR ADDITIONAL DISCOVERY

Exhibit 8
Page ___ 249

1  October 25, 2004.[15] Although Bryant's counsel stated that the originals would be made

2  available at Bryant's deposition, he provided only a few original drawings at that time.[16]

3  Even after the deposition and multiple additional requests from Mattel, Bryant still did

4  not turn over a single additional original Bratz drawing or sketch.[17] On February 14,

5  2007, the Discovery Master ordered Bryant to make all original documents and three-

6  dimensional items requested by Mattel available for inspection and photographing no

7  later than February 28, 2007.[18] On February 27 and 28, 2007, Bryant allowed Mattel to

8  inspect some, but not all, of the remaining originals.[19] Only after repeated requests by

9  Mattel that he comply with the Order, and only after Mattel had to threaten motion

10  _____

11  [15]  Zeller Dec. ¶ 9, Exh. 7.
    [16]  Zeller Dec. ¶ 10, Exh. 8; see also Bryant Depo. at 617:17-21, Supplemental
12  Declaration of B. Dylan Proctor in Support of Motion of Plaintiff Mattel, Inc. for
13  Additional Time and/or to Reopen the Deposition of Carter Bryant for All Purposes
    and to Overrule Additional Instructions not to Answer at the Deposition ("Supp.
14  Proctor Dec."), dated August 23, 2007, Exh. 14 (Mattel noting at the deposition
    itself that "we won't be able to complete this deposition until, among other things,
15  we have a chance to examine the witness with respect to all the originals."), Notice
16  of Lodging, filed November 19, 2007, Exh. 8.
    [17]  Declaration of Shane McKenzie in Support of Mattel's Motion to Enforce
17  Stipulation and Compel Bryant to Make Original Documents Available, dated
18  January 22, 2007 ("McKenzie Dec."), ¶¶ 2-4 & Exh. 1, Notice of Lodging, filed
    November 19, 2007, Exh. 2; Zeller Dec. ¶ 11. Mattel first filed a motion to compel
19  Bryant to produce his originals for inspection and photographing on February 18,
20  2005. Zeller Dec. ¶ 11. The case was stayed before the motion was heard. After
    the stay was lifted, Bryant stipulated on the record before Judge Block, on June 20,
21  2006, that he would produce for inspection and photographing originals requested
22  by Mattel on 15 days' notice. McKenzie Dec. ¶ 8, Zeller Dec. ¶ 11. Mattel then
    repeatedly requested in writing that certain originals be made available by Bryant,
23  but Bryant still refused -- in the face of his own stipulation -- to make all the
24  requested originals available for inspection and photographing. McKenzie Dec.
    Exh. 3, Zeller Dec. ¶ 12. Mattel thus filed a Motion To Enforce Stipulation And
25  Compel Bryant To Make Original Documents Available on January 23, 2007, which
26  Judge Infante subsequently granted in its entirety.
    [18]  Zeller Dec. ¶ 12, Exh. 9.
27  [19]  Id ¶ 13.

28

-8-

Exhibit 8
Page ___250___

1  practice to enforce the Order, Bryant finally allowed the inspection of yet more
2  previously withheld originals on May 31, June 20 and June 21, 2007.[20]  Given that
3  Mattel had asked for, and Bryant had even promised production of, these originals prior
4  to or at the time of his deposition, it was Bryant and not Mattel who made the tactical
5  decisions here.

6       Bryant's argument that Mattel's alleged tactical choice to depose him previously
7  disentitles it to a fair examination cannot withstand scrutiny for another reason.  As he
8  ignores, Mattel *could not* have questioned him about MGA's claims, which were first
9  asserted in 2005, or on many of Mattel's counterclaims, which were first asserted in
10 2006, or on his newly expanded affirmative defenses, which were first asserted in 2007.
11 Those indisputably were raised only *after* his deposition.  Mattel scarcely can be
12 deemed to have engaged in some tactical decision as to matters that were not even
13 raised or at issue at the time (and with respect to MGA products that had not even been
14 released yet).  Whatever argument one might have about the deposition time limits set
15 forth in the Federal Rules, they are not designed to punish a party such as Mattel by
16 preventing it from taking discovery on later asserted claims and defenses.[21]

17

18

---

19  [20]  Id.
    [21]  To the contrary, it is well established that witnesses may be deposed further
20  on new claims filed after their initial depositions were taken.  See, e.g., Keithley v.
21  Homestore.com, Inc., 2006 WL 1646119, at *1 (N.D. Cal. 2006) (rejecting
    argument that witness should not have to be deposed again, "in light of the . . .
22  additional claims that have been added since his [] deposition more than two years
23  ago."); Tillery v. Darby-Rogers Co., 2006 WL 2735162, at *5 (M.D. Fla. 2006)
    ("The Court will allow Defendants to re-depose Plaintiffs regarding the new
24  claims"); Collins v. International Dairy Queen, 189 F.R.D. 496, 498 (M.D. Ga.
25  1999) (granting defendants' request to reopen depositions of several witnesses based
    on new claims in amended complaint: "Because of the time that has elapsed, the
26  addition of new claims, and the evident knowledge of the witnesses in particular
27  areas, re-examination of the two witnesses is likely to provide additional
    information not obtainable at the first depositions.").

28



Exhibit 8
Page 251

## II.   **MATTEL IS ENTITLED TO RELIEF**

Bryant accuses Mattel of ignoring the standards that typically apply to objections to a discovery Order and latches onto Mattel's point that Judge Infante's factual findings were correct as being an alleged concession that the Order was not clearly erroneous. Bryant misses Mattel's actual point. As Judge Infante observed and Bryant does not contest here: "Bryant is *the* central figure in this litigation and arguably the most important witness *for virtually every claim in the case. No other witness in the case has his depth and breadth of relevant information.*"[22] MGA's interrogatory responses also state that the <u>entire</u> Bratz line is the subject of MGA's claims (first asserted after Bryant's deposition), and an MGA witness has declared that there are more than 200 Bratz products.[23] Bryant, however, is not merely just at the heart of numerous products MGA has put at issue since Bryant was deposed. He is one of only *two* people who are.[24]

Contrary to Bryant's argument, Mattel's motion specifically posited that the Order was "clearly erroneous" because, in light of these findings, seven hours of time is indisputably insufficient time to cover even the multitude of new, sweeping claims and defenses that have been interjected into this suit since Bryant's deposition (for which MGA professes that it is seeking "billions" of dollars against Mattel). Motion, at 1:23-24. Because he ignores Mattel's actual contention, Bryant literally makes no argument in opposition and does not even attempt to explain how the conclusion that Mattel only

---

[22]   Proctor Dec., Ex. 43, at 5:15-17 (emphasis added).

[23]   <u>See</u> Proctor Dec., Ex. 58, at ¶ 2; MGA Sup. Resp. Unfair Comp. No. 2, Proctor Dec., Ex. 26.

[24]   MGA's Vice President of Product Design and Development, Paula Garcia, previously declared in this case that she and Carter Bryant are "the *only* people who know what the concept is and who see the early product drawings" with respect to many Bratz products.  Declaration of Paula Garcia in Support of MGA's Opposition to Mattel's Motion to Compel, dated February 9, 2007, ¶ 6 (emphasis in original), Proctor Dec., Ex. 59.

Exhibit 8
Page _____ 252

1   needs another seven hours to question him on all such matters is anything other than
2   clearly erroneous.

3        Bryant also fails to refute Mattel's alternative argument. While Mattel does not
4   disagree that discovery Orders typically should be reviewed under the standards of
5   Federal Rule of Civil Procedure 72(a), the issue here is comparable to a prior situation
6   where this Court treated a discovery ruling otherwise. As Mattel demonstrated, and
7   Bryant ignores, the Court previously did not require a Rule 72(a) showing when it
8   decided to extend by many weeks MGA's deadlines to produce documents that Judge
9   Infante had compelled MGA to produce, which is analogous. The Court allowed that
10  extension and ordered a new deadline even though Judge Infante had affirmatively
11  *rejected* MGA's request for additional time to comply and MGA had not argued that the
12  deadline imposed was clearly erroneous. Undoubtedly, the Court considered such
13  matters within its case management province. As Mattel also pointed out this Court
14  ultimately has the right to ensure that the parties receive fair discovery suited to a case
15  of this magnitude and complexity, and to ensure that trial is conducted without undue
16  surprise, prejudice and wasted time. The Court should therefore, in the alternative,
17  exercise its discretion to grant Mattel sufficient time to depose Bryant on all the new
18  claims, new defenses and new evidence in this case.[25]

19
20
21
22
23
24   [25]   Bryant says nothing about these points, but confines his sole argument on this
25   issue to a footnote (Opp. at 4 n. 3) where he argues that the Court should *reduce* his
     additional deposition time for some unspecified length. Necessary implicit in his
26   contention is a recognition that this Court is the final arbiter of such matters.
     Bryant, however, offers no reason whatsoever as to how the applicable legal
27   principles could warrant less than nine hours. His request should be rejected.
28

Exhibit 8
Page 253

1

**Conclusion**

2    Mattel respectfully requests that the Court grant Mattel's motion and allow

3  additional time up to a total of 21 additional hours to question Bryant.

4

5

6  DATED:  December 31, 2007          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
7

8                                     By /s/ John B. Quinn
9                                        John B. Quinn
                                         Attorneys for Mattel, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/2338322.1

-12-
MATTEL'S REPLY TO BRYANT OPPOSITION TO MOTION FOR ADDITIONAL DISCOVERY

Exhibit 8
Page  254

Case 2:04-cv-09049-SGL-RNB   Document 1424   Filed 12/31/2007   Page 1 of 15
Case 2:04-cv-09049-DOC-RNB   Document 2042-5   Filed 02/11/08   Page 17 of 31   Page ID
#:31447

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5      (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
7   Facsimile: (213) 443-3100

8   Attorneys for Mattel, Inc.

9                    UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11                        EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13              Plaintiff, | Consolidated with |
| 14        vs. | Case No. CV 04-09059 Case No. CV 05-02727 |
| 15  MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| 16              Defendant. | REPLY MEMORANDUM OF MATTEL, INC. TO MGA RESPONSE TO MOTION FOR LEAVE TO TAKE |
| 17 | ADDITIONAL DISCOVERY AND OBJECTIONS TO DISCOVERY |
| 18  AND CONSOLIDATED ACTIONS | MASTER ORDER OF SEPTEMBER 28, 2007 |
| 19 | |
| 20 | Hearing Date: January 7, 2007 Time:         10:00 a.m. |
| 21 | Courtroom:   1 |
| 22 | **Phase 1:** Discovery Cut-off:    January 28, 2008 |
| 23 | Pre-trial Conference:  May 5, 2008 Trial Date:         May 27, 2008 |

24

25

26

27                                      Exhibit 8
                                        Page ___255___
28

07209/2337866.4

—————————————————————————————————————
MATTEL'S REPLY RE MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................1

ARGUMENT ...............................................................................................2

I.    MATTEL SHOULD BE ALLOWED ADDITIONAL DEPOSITIONS..........2

    A.    Mattel Is Entitled To Additional Party Depositions................................2

        1.    The Relevant Standards Justify Granting Mattel's Motion...........2

        2.    MGA's "Diligence" Contentions Are Wrong.............................3

        3.    The Depositions Sought Are Not Duplicative, And Mattel Has Made A Sufficiently Particularized Showing........................5

    B.    MGA's Third-Party Deposition Arguments Are Groundless.................6

    C.    MGA's Other Arguments Do Not Justify Denial Of This Motion..........8

        1.    The Depositions Mattel Has Taken Were Proper. .......................8

        2.    MGA's Disputes About Its Discovery Are Unavailing. ...............9

        3.    MGA's Disruption Arguments Are Unsubstantiated. ..................9

II.   MATTEL SHOULD BE ALLOWED FURTHER INTERROGATORIES ................................................................................10

CONCLUSION ..........................................................................................12

Exhibit 8
Page ___256___

Case 2:04-cv-09049-SGL-RNB    Document 1424    Filed 12/31/2007    Page 3 of 15
Case 2:04-cv-09049-DOC-RNB    Document 2042-5    Filed 02/11/08    Page 19 of 31    Page ID
#:31449

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Bendt v. G.D. Searle & Co.,*
  1990 WL. 299926 (D. Minn. 1990) ...........................................................6

*In re Bergeson,*
  112 F.R.D. 692 (D. Mont. 1986) ............................................................7

*Ierardi v. Lorillard, Inc.,*
  1991 WL. 158911 (E.D. Pa. 1991) ........................................................6

*Jackson v. Laureate, Inc.,*
  186 F.R.D. 605 (E.D. Cal. 1999) ...........................................................3

*Marker v. Union Fidelity Life Ins. Co.,*
  125 F.R.D. 121 (M.D.N.C. 1989) ..........................................................6

*State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.,*
  2007 WL. 2993840 (E.D.N.Y. 2007) .....................................................7

## **Statutes**

Fed. R. Civ. P. 26(b) & 33 ........................................................................2

Fed. R. Civ. P. 26(b)(2) .........................................................................3, 9

Fed. R. Civ. P. 30(a)(2)(A) ....................................................................3, 9

Fed. R. Civ. P. 33(a) ........................................................................3, 9, 11

## **Preliminary Statement**

In endeavoring to avoid disclosure, defendants accuse Mattel of squandering discovery and assert that additional discovery would pose an undue burden. They contend that named defendants such as MGAE de Mexico and Gustavo Machado, who have unique knowledge of MGA's trade secret thefts, should not be deposed at all, apparently unfazed by the disruptions that such a trial-by-surprise approach would create. The facts, and defendants' own conduct, belie their rhetoric. While they complain about the scope of Mattel's discovery (which must be directed to five different defendants on a host of issues and which the MGA defendants exaggerate by counting identical discovery requests to each defendant multiple times), defendants omit that they have propounded just as much, and in some instances more, discovery than Mattel.

Defendants also overlook that much of the "burden" they decry is of MGA's making. MGA seeks "billions" of dollars against Mattel on its own claims and accuse some 400 Mattel products of infringing some 200 MGA products. This does not even include the litany of other supposed conduct that MGA's pleadings put at issue. MGA cannot fairly complain about any burden resulting from its own decision to interject such sweeping matters into this litigation.

MGA argues that the additional depositions sought are duplicative of other discovery and seeks to foreclose third-party depositions on burden grounds. A key deposition from just this past Friday demonstrates the crucial importance of additional third-party discovery in this case. Veronica Marlow, a third-party witness who long worked directly with Bryant and MGA, testified that she knew of at least three Mattel employees who *for years* worked on Bratz *while they were employed by Mattel*. This was a shocking revelation. Neither MGA nor Bryant had disclosed this information, despite repeated Court Orders and despite the fact that at least one of these individuals was a co-worker of Bryant's at Mattel. To the contrary, both Bryant and MGA gave flat denials under oath that there was any other Mattel employees knowingly involved.

Exhibit 8
Page 258

07209/2337866.4

-1-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Case 2:04-cv-09049-SGL-RNB  Document 1424  Filed 12/31/2007  Page 5 of 15
Case 2:04-cv-09049-DOC-RNB  Document 2042-3  Filed 02/11/08  Page 21 of 31  Page ID
#:31451

1  Defendants argue that Mattel delayed in bringing this motion. The three-week
2  "delay" they cite, however, was the result of MGA's requested stay and then Mattel's
3  courtesy of attempting to work out the matter with new counsel. Defendants also fail to
4  mention that, after this motion was filed, MGA itself brought a motion before Judge
5  Infante seeking leave to proceed on forty-seven <u>Rule</u> 30(b)(6) topics that MGA says
6  relate to Phase 1. Thus, defendants' own conduct contradict their tardiness and undue
7  burden arguments here. In any event, the scheduling difficulties they claim granting
8  Mattel's motion will cause are illusory because the bulk of the additional discovery
9  Mattel seeks is for Phase 2.

10  The purpose of discovery and trial is get to the truth. Defendants' persistent
11  efforts to thwart it should be rejected, and Mattel's motion should be granted.

12  **Argument**

13  **I.  MATTEL SHOULD BE ALLOWED ADDITIONAL DEPOSITIONS**

14  **A.  Mattel Is Entitled To Additional Party Depositions.**

15  **1.  The Relevant Standards Justify Granting Mattel's Motion.**

16  According to the MGA defendants, because Mattel has had to use a fair amount
17  of its allotted deposition discovery on Phase 1 matters, Mattel should be denied the
18  ability to take the depositions of even: (1) named defendant MGA de Mexico; (2)
19  named defendant Gustavo Machado; (3) a single one of the nine individuals who were
20  personally involved in the thefts of Mattel trade secrets as specifically set forth in
21  Mattel's pleadings and interrogatory answers; and (4) named defendant MGA
22  Entertainment on either MGA's own claims or the trade secret claims.

23  As the <u>Rules</u> make clear, however, discovery limits are not intended to "prevent
24  needed discovery," and courts have "broad[] discretion" to allow additional discovery
25  "based on the complexity of [the] cases" at hand. Notes of the Advisory Comm. (1993)
26  to <u>Fed. R. Civ. P.</u> 26(b) & 33. The purpose of the limits are not to force Mattel to pick
27  and choose among its claims or to forego defending against some or all MGA claims.
28  Nor are the discovery limits to be treated as so much bean counting.

Case 2:04-cv-09049-SGL-RNB Document 1424 Filed 12/31/2007 Page 6 of 15
Case 2:04-cv-09049-SGL-RNB Document 2042-34 Filed 02/11/08 Page 22 of 31 Page ID
#:31452

1    MGA largely disregards the governing principles set forth in <u>Rule</u> 26(b)(2). <u>Fed.</u>

2  <u>R. Civ. P.</u> 30(a)(2)(A) & 33(a) (leave for additional discovery "shall be granted" to the

3  extent consistent with principles set forth in <u>Rule</u> 26(b)(2)). Thus, nowhere does MGA

4  contend, let alone demonstrate, that the requested party depositions are "unreasonably

5  cumulative or duplicative" or can be obtained from some other "more convenient, less

6  burdensome, or less expensive" source or that Mattel "has [had] ample opportunity

7  obtain the information sought" here. Nor does MGA contest with specifics that "the

8  burden or expense of the proposed discovery outweighs its likely benefit, taking into

9  account the needs of the case, the amount in controversy, the party's resources, and the

10  importance of the proposed discovery in resolving the issues." After all, MGA itself

11  says "billions" of dollars are at stake, MGA is a multi-billion dollar business, and taking

12  party depositions cannot reasonably be considered anything other than important.

13          **2.   <u>MGA's "Diligence" Contentions Are Wrong.</u>**

14    The arguments the MGA defendants do make are erroneous. They urge that a

15  more stringent <u>Rule</u> 16(b) standard should apply before Mattel is allowed discovery and

16  argue that Mattel's motion should be denied because Mattel was supposedly "not

17  diligent" in bringing it. Opp. at 7:1-10:19. That is not the law. The authorities MGA

18  cites for this proposition do not apply <u>Rule</u> 16(b) to discovery limits. As MGA's own

19  quotes confirm, these cases address modifications scheduling deadlines.[1] Here, Mattel

20  does not seek to alter any deadline (and there are no Phase 2 deadlines in any event).

21    MGA's contention that Mattel did not bring this motion soon enough is factually

22  incorrect. MGA argues: "[E]ven after Mattel's counsel told the Court at the October 31,

23  2007 conference that it would be filing shortly a motion for additional discovery,

24  Mattel inexplicably waited another three weeks before filing its motion." Opp. 10:7-10.

---

25    [1]  Opp. at 7:7-16 (quoting <u>Jackson v. Laureate, Inc.</u>, 186 F.R.D. 605, 608 (E.D.

26  Cal. 1999) (party "must also diligently attempt to adhere to that ***schedule***" and show

27  "noncompliance with a Rule 16 ***deadline*** occurred or will occur, notwithstanding [a

party's] diligent efforts to  to comply" (emphases added)).

28

1   Three weeks scarcely shows lack of diligence, especially on Phase 2 matters.  MGA

2   also omits what happened during those three weeks: At MGA's request, the case was

3   stayed until mid-November and all opposition briefing was suspended until November

4   26.  MGA's attempt to use the stay to deny Mattel discovery here is precisely the type

5   of prejudice that MGA had assured the Court the stay would not cause.[2]  MGA further

6   fails to mention that during the so-called "delay" Mattel also properly sought to work

7   out this motion with new counsel.   The first time MGA's counsel said they were

8   prepared to discuss it was at a November 21 meet and confer.  When no agreement was

9   forthcoming at that time, Mattel immediately brought its motion.

10          In further asserting that Mattel's motion is too late, MGA portrays almost all the

11  discovery Mattel requests as Phase 1.  Thus, MGA claims, Mattel seeks to depose "37

12  additional Phase 1 witnesses and 13 additional Phase 2 witnesses".  Opp. at 12:4-5.[3]

13  MGA does not explain how it calculated these numbers.  Apparently it is counting

14  anyone who is not a trade secret witness (there are 13 of those) as necessarily Phase 1.

15  That is mistaken, however.  Most of the witnesses have knowledge that is exclusively

16  or substantially Phase 2.  For example, as explained in Mattel's motion, thirteen of the

17  witnesses have knowledge of the trade secret thefts.  Am. Motion, at 13:3-16.  Most of

18  the rest have knowledge of Mattel's RICO claims, such as MGA's evidence tampering,

19  or else worked on Bratz or other relevant products for years and thus have knowledge

20  of MGA's claims and Mattel's Phase 2 claims.  E.g., Am. Motion, at 12:1-8, 14:14-20.[4]

21

22

23     [2]  Tr. of the October 15, 2007 Status Conference at 12:3-5, Zeller Dec., Exh. 22.
       [3]  MGA greatly exaggerates the number of depositions Mattel seeks, claiming

24  that "Mattel essentially seeks to depose almost every non-employee or witness who
    has been identified as potentially having some knowledge of relevant information in

25  this case".  Opp. 10:22-24.  Given that the parties have collectively identified

26  hundreds of potential witnesses, Mattel clearly is not seeking anything so expansive.

27     [4]  MGA makes the puzzling claim that because topics in Mattel's Rule 30(b)(6)
    notices "specifically relate to Bratz," they must be solely for Phase 1.  Opp. at

28  (footnote continued)

1    Defendants' own conduct contradicts their arguments that Mattel's additional
2    discovery request is too late, as well as their various claims that they have been
3    "judicious" in pursuing discovery while Mattel is engaging in scorched earth tactics.
4    Defendants have propounded as much -- and in some instance more -- discovery than
5    Mattel.  Defendants have served in excess of 1,200 requests for production, 1,200
6    requests for admissions, more than 50 interrogatories, 146 <u>Rule</u> 30(b)(6) topics and at
7    least 64 subpoenas.[5]  Moreover, in only the past few days, and after Mattel filed this
8    motion, MGA itself brought a motion seeking leave from Judge Infante for <u>Rule</u>
9    30(b)(6) testimony on 47 sweeping Topics that MGA claims relate to Phase 1.

10              **3.    <u>The Depositions Sought Are Not Duplicative, And Mattel</u>**
11                     **<u>Has Made A Sufficiently Particularized Showing.</u>**

12             MGA argues that Mattel has failed to make a "particularized" showing of the
13    need for these depositions. Not so.  For example, as Mattel demonstrated on its motion
14    and as set forth in considerable detail in its counterclaims, several former Mattel
15    employees who Mattel wishes to depose were directly involved in stealing a wide array
16    of trade secrets from Mattel.  This includes MGA executives such as Ron Brawer.
17    MGA offers no rebuttal to Mattel's evidence or its counterclaim allegations which detail
18    that he and the other witnesses have discoverable, non-duplicative knowledge.[6]

19             Because it cannot show there is unreasonable duplication among depositions,
20    MGA argues that Mattel's <u>Rule</u> 30(b)(6) notices "include topics directed at the factual
21    bases of Defendants' affirmative defenses" and thus are "duplicative" of Mattel's
22    contention interrogatory directed at defendants multitude of affirmative defenses. Opp.
23    at 12:19-23.  As an initial matter, MGA does not argue that any other of the proposed

24    _____
25    12:17-19. Since Bratz is at issue in Phase 2 in multiple respects -- as MGA's own
      complaint shows on its face -- this is a *non sequitur*.
26       [5]  Zeller Dec., ¶ 14.
27       [6]  The few witnesses who MGA does mount such a challenge to are discussed
      below in Section I.B.
28

Case 2:04-cv-09049-SGL-RNB    Document 1424    Filed 12/31/2007    Page 9 of 15
Case 2:04-cv-09049-DOC-RNB    Document 2042-5    Filed 02/11/08    Page 25 of 31    Page ID
#:31455

1 | Rule 30(b)(6) Topics -- the vast majority of them -- are duplicative of other discovery.

2 | Further, courts reject the proposition that interrogatories are an adequate substitute for

3 | depositions.[7]  MGA cites no authority to support its position otherwise.[8]

4 | **B.**    **MGA's Third-Party Deposition Arguments Are Groundless.**

5 | MGA asserts that third-party depositions would "prejudice" and "burden" the

6 | third parties and are "unnecessary" because information can be obtained from MGA.

7 | MGA's contentions do not withstand scrutiny.

8 | First, party discovery is no excuse for refusing third-party discovery.[9]  This is

9 | especially true where, as here, the record has shown that third-party discovery is

10 | essential to get at the truth.  At a deposition just this past Friday, a third-party witness

11 | and former MGA vendor, Veronica Marlow, revealed that *no fewer than three Mattel*

12 |

13 |

14 |

---

15 | [7]  Ierardi v. Lorillard, Inc., 1991 WL 158911 at *2 (E.D. Pa. 1991) (answers to
16 | interrogatories "are an inadequate substitute" for deposition testimony pursuant to
   | Rule 30(b)(6)); Bendt v. G.D. Searle & Co., 1990 WL 299926 at *1 (D. Minn. 1990)
17 | ("Interrogatories are not substitutes for depositions, and are not per se more efficient
   | or economical."); Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126
18 | (M.D.N.C. 1989) (same).

19 | [8]  Because it lacks legal support, MGA claims Mattel had argued elsewhere that
   | Rule 30(b)(6) depositions "are far inferior" to contention interrogatories, but tears
20 | Mattel's statement wholly out of context.  Mattel in fact was pointing out the
   | obvious: contention interrogatories are superior to obtaining full disclosure of a
21 | party's *contentions*, which are not the proper subject of a Rule 30(b)(6) topic.
22 | Mattel did not say (and never has said) that interrogatories are superior in general to
   | deposition testimony, let alone that they are substitutes for the type of factual
23 | examination and development that can be obtained only by deposition.

24 | [9]  State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840,
25 | at *1 (E.D.N.Y. 2007) ("a person may not avoid a subpoena by saying that the
   | evidence sought from him is obtainable from another"); In re Bergeson, 112 F.R.D.
26 | 692, 695 (D. Mont. 1986) (assertions that documents sought are available from
27 | others more economically "does not constitute a showing of unreasonableness or
   | oppressiveness.").

28 |

Case 2:04-cv-09049-SGL-RNB Document 1424 Filed 12/31/2007 Page 10 of 15
Case 2:04-cv-09049-DOC-RNB Document 2042-5 Filed 02/11/08 Page 26 of 31 Page ID
#:31456

1 *employees worked on Bratz while employed by Mattel.*[10]  At least two of these
2 individuals worked on Bratz while employed by Mattel *for years.*[11]  Defendants
3 nevertheless failed to disclose them -- and gave false, blanket denials under oath -- in
4 response to specific discovery questions seeking identification of Mattel employees
5 who worked on Bratz or for MGA.[12]

6        Second, not only do instances such as the Marlow testimony refute defendants'
7 claims that third-party discovery is unnecessary, but the examples MGA offers in
8 support miss the mark.[13]  MGA represents that Wachovia and Moss Adams "have no
9 meaningful, non-duplicative information" because MGA has provided a Rule 30(b)(6)
10 witness to testify on Bratz revenues and MGA's net worth. In reality, and despite Judge
11 Infante's Orders compelling such testimony, MGA's designee testified: "Q. How much
12 revenue has MGA earned from the Bratz brand? A. I'm not sure."[14] "Q. Do you know
13 how much profit MGA has generated from the Bratz brand? A. No."[15] As for MGA's
14 net worth, MGA's designee testified only that MGA does not calculate its net worth.[16]
15 Accepting MGA's demand that third-party discovery be prohibited effectively would

16

17      [10]  See Rough Deposition Transcript of Veronica Marlow ("Marlow Tr."), dated
18 December 28, 2007, at 300:11-301:4, 356:12-18, Hauler Dec., Exh. 2.
        [11]  Id. at 282:16-284:6, 301:12-302:4.
19      [12]  See e.g., Dep. Tr. of Carter Bryant, Vol. 2 ("Bryant Tr."), at 286:25-287:5,
20 Hauler Dec., Exh. 3; Dep. Tr. of Lisa Tonnu, Vol. 2 ("Tonnu Tr.), at 301:2-17,
21 Hauler Dec., Exh. 4; MGA's Supp. Responses to Mattel's Revised Third Set of
   Interrogatories at 64-70, Hauler Dec., Exh. 5.
22      [13]  While wrongly taking Mattel to task for allegedly raising the same issues
23 before this Court and Judge Infante as discussed below, MGA apparently has picked
   these examples because they relate to pending motions before Judge Infante, in the
24 evident hopes that the Court will give them support in their efforts to stonewall this
25 discovery.
        [14]  9/24/2007 Tonnu Tr., 457:9-11, attached to the Hauler Dec., Exh. 4.
26      [15]  9/24/2007 Tonnu Tr., 457:25 - 458:2, attached to the Hauler Dec., Exh. 4; see
27 also 417:13 - 419:23, attached to the Hauler Dec., Exh. 4.
        [16]  9/24/07 Tonnu Tr., 333:3-7, attached to the Hauler Dec., Exh. 4.

28

1  allow MGA to withhold the facts altogether, including on matters Mattel needs to
2  develop its claims and defend against MGA's.[17]

3      **C.  MGA's Other Arguments Do Not Justify Denial Of This Motion.**

4          **1.  The Depositions Mattel Has Taken Were Proper.**

5      MGA urges that Mattel be denied any other depositions because Mattel
6  supposedly took four depositions MGA unilaterally deems tangential or somehow
7  vaguely duplicative. Opp. at 9:1-15. MGA's arguments are erroneous.

8      •   The two reporter depositions sought to confirm, in the face of MGA's
9      denials, specific statements Larian had made before this suit was filed about the
10     origins of Bratz that were contrary to testimony he and other MGA personnel
11     have given in this case. The testimony developed is classic impeachment
12     evidence by prior inconsistent statement. Mattel's examinations were less than
13     an hour. Given that MGA examined one of the reporters far longer than Mattel
14     did, MGA itself presumably did not consider the deposition tangential.

15     •   Mattel also took a brief deposition of Brooke Gilbert, Bryant's niece who
16     resides out of state, to exclude any contention by Bryant that his niece had
17     installed or used the "Evidence Eliminator" program found on his belatedly
18     produced hard drives. MGA's contention that Mattel had "already deposed
19     Bryant about the computer" is incorrect. Mattel's reply to Bryant's opposition
20     sets forth in detail the false representations that Bryant's counsel made to the
21     Court and Mattel to avoid turning over his drives before the deposition and thus
22     avoid questioning on his drives and his use of Evidence Eliminator.

23     •   MGA does not deny that Dave Malicrida was a percipient witness and
24     proper deponent. Nor could it, since his name was on early Bratz emails at
25

26  [17]  MGA's reliance on information from Isaac Larian is especially groundless.
27  He has failed to produce even a single page of documents in this litigation. Zeller
    Dec., Exh. 11.
28

1    MGA. MGA cites no authority for its novel proposition that merely because an

2    individual witness has some knowledge covered by Rule 30(b)(6) topics that the

3    deposition is somehow inappropriate or unnecessary.

4        Not only is MGA wrong about the few depositions it mentions, but MGA cannot

5    even muster an argument that any of the other depositions Mattel has taken were

6    inappropriate.

7            **2.    MGA's Disputes About Its Discovery Are Unavailing.**

8        Equally erroneous is MGA's lengthy, and wholly collateral, claim that Mattel's

9    ostensibly "improper manipulation" of *MGA's* deposition count in pending discovery

10   disputes justifies denying Mattel any additional discovery. Opp. at 15:24-17:3, 21:27-

11   23-3.  Despite their length, these arguments are unsupported by a single authority

12   holding that such alleged considerations could warrant the denial of a request for

13   additional discovery.  This is not surprising, because they are not supported by any of

14   the principles set forth in Rule 26(b)(2) (or, for that matter, the Rule 16(b) standard

15   MGA itself wrongly advances).[18] MGA's contentions are also refuted by the record.

16   To ascertain who has been engaging in improper stonewalling, the Court need look no

17   further than the 20 discovery Orders against MGA and its co-defendants as well as the

18   three Orders that have found MGA to be in deliberate violation of Court Orders.

19           **3.    MGA's Disruption Arguments Are Unsubstantiated.**

20       MGA asserts that "even granting Mattel only additional Phase 2 witnesses"

21   would "interrupt" their Phase 1 preparation. Opp. at 15:8-18. MGA, however, offers

22   no evidence in support.  This is undoubtedly because it cannot.  Common experience

23   _____

24   [18]   Despite MGA's contention that it is improper to raise with this Court matters
     pending before Judge Infante, MGA appears to include these arguments as well in
25   the hopes of obtaining a preemptive ruling on these subjects.  While Mattel will not
     belabor the errors in MGA's contentions since they are irrelevant here and will be
26   fully aired before Judge Infante, MGA repeatedly mischaracterizes Mattel's
     discovery positions.  MGA also neglects to mention that the position it now attacks
27   was, in fact, MGA's own position previously.

28

1  certainly suggests that Skadden and the half-dozen other firms representing MGA could

2  marshal sufficient resources to handle discovery. The alleged burden or disruption

3  flowing from MGA's assertion of claims which seek "billions" of dollars in recovery

4  against Mattel cannot justify refusing Mattel full and fair discovery into those claims.

5  **II.    MATTEL SHOULD BE ALLOWED FURTHER INTERROGATORIES**

6      Two categories of interrogatories are involved here: first, Mattel's proposed

7  additional interrogatories that it seeks leave to serve; and second, interrogatories which

8  Mattel has already served on defendants. As a review of the interrogatories makes

9  clear, they all go to core issues relating to the dozens of claims in three operative

10  complaints in effect in this case.

11      Because there is little it can say about the interrogatories themselves, MGA

12  largely recycles its "diligence" standard argument under Rule 16(b), faulting Mattel for

13  purportedly proposing a limit to interrogatories that it could not meet and for not

14  moving for more interrogatories earlier. Those arguments thus fail for the same reasons

15  addressed above. Moreover, they clearly fail here because -- as MGA does not dispute

16  -- Mattel would be entitled to serve more interrogatories than it has served (or now

17  seeks to serve) to date under the Federal Rules without modification, since in the

18  normal course Mattel could serve 25 interrogatories against each of the six defendants

19  in each of the consolidated cases before the Court, without seeking leave. Fed. R. Civ.

20  P. 33(a). Mattel has studiously guarded against serving unnecessary interrogatories.

21  But in this case, where Mattel is up against half a dozen defendants and is defending

22  against vast, overbroad claims brought by a major competitor, it simply cannot obtain

23  the information it needs within the 50 interrogatory limit.

24      Although it does not deny their relevance, MGA suggests that some Mattel

25  interrogatories may not be "necessary." However, even the handful of examples MGA

26  points to shows otherwise. MGA only identifies *two* which are purportedly

27  "duplicative" because Mattel served an interrogatory seeking information that overlaps

28  with *documents* Mattel also sought. MGA cites no rule that suggests that it is somehow

Case 2:04-cv-09049-SGL-RNB Document 1424 Filed 12/31/2007 Page 14 of 15
Case 2:04-cv-09049-DOC-RNB Document 2642-5 Filed 02/11/08 Page 30 of 31 Page ID
#:31460

1  improper both to request documents and information in an interrogatory response. And
2  indeed, not only are such requests commonplace, but the two types of requests serve
3  wholly different purposes. For example, MGA faults Mattel for seeking information
4  about its Bratz sales, profits and costs in the form of an interrogatory. Opp. at 18.
5  MGA ignores that, even if it wishes to simply point to documents to respond under
6  Rule 33(d), (1) it is required to *specifically* identify the documents that contain the
7  relevant information that would otherwise be set forth in its interrogatory response,
8  which a request for production cannot require, and (2) MGA is thereafter *limited to* the
9  documents to which it points in its interrogatory response when it comes to things like
10 pointing to allocable costs. That MGA highlights this as one of the few interrogatories
11 Mattel purportedly "wasted" is telling.

12      MGA also avers that some of Mattel's leave interrogatories are overbroad. Here
13 as well, the specific example MGA identifies refutes its argument. Citing Interrogatory
14 No. 56, MGA complains that it should not have to identify *the Mattel documents MGA*
15 *has stolen* because, in essence, it would have to search its records to find them -- to see
16 if the documents in its files are in fact documents which were taken from Mattel. Opp.
17 at 20-21. Such an undertaking does not "far outweigh[] any probative value of the
18 information sought," given that the documents are essential evidence to both liability
19 and damages for Mattel's trade secret claims.

20      Finally, MGA misapprehends Mattel's leave request as to the interrogatories
21 Mattel has already served. Mattel is not asking this Court to "order counter-defendants
22 to respond" to Mattel's interrogatories or to overrule any of their myriad boilerplate
23 objections. Opp. at 23. Those issues are pending before Judge Infante. Conversely,
24 Mattel has not asked Judge Infante for relief from the 50 interrogatory limit. That is
25 what Mattel seeks from the Court, to the extent it is needed. This division is for good
26 reason. This Court directed that all requests for leave from the discovery limits be
27 addressed to it. Mattel is doing so.

28

1          <u>**Conclusion**</u>

2          Mattel respectfully requests that its motion for leave be granted in its entirety.

3    DATED: December 31, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

4

5                                      By_____
6                                        John Quinn
                                         Attorneys for Mattel, Inc.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28