1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **Carter Bryant v. Mattel Inc.**

Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 10**

**EXHIBIT TO:**   **DECLARATION OF LARRY MCFARLAND IN SUPPORT OF RESPONSE TO ORDER TO SHOW CAUSE OF LARRY MCFARLAND, LUCY ARANT, SARAH HALPERN, AND PETER MARLOW**

Page 1

1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3                          EASTERN DIVISION

4                              - - -

5          HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                              - - -

7    CARTER BRYANT, ET. AL.,          )
                                      )
8                       PLAINTIFFS,   )
                                      )
9              VS.                    )   NO. ED CV 04-09049
                                      )   (LEAD LOW NUMBER)
10   MATTEL, INC., ET. AL.,           )
                                      )
11                      DEFENDANTS.   )   EX-PARTE APPLICATIONS
     _____)   RE:  DISCOVERY
12   AND CONSOLIDATED ACTIONS,        )
                                      )
13                                    )

14

15             REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                     RIVERSIDE, CALIFORNIA

17                   MONDAY, FEBRUARY 4, 2008

18                         10:15 A.M.

19

20

21

22

23                 THERESA A. LANZA, RPR, CSR
                FEDERAL OFFICIAL COURT REPORTER
24              3470 12TH STREET, RM. 134
                RIVERSIDE, CALIFORNIA  92501
25                    951-274-0844
                  CSR11457@SBCGLOBAL.NET

Page 2

```
1   APPEARANCES:
2   ON BEHALF OF CARTER BRYANT:
3         KEKER & VAN NEST
          BY:  MICHAEL PAGE
4         710 SANSOME STREET
          SAN FRANCISCO, CALIFORNIA  94111-1704
5         415-391-5400
6
    ON BEHALF OF MATTEL:
7
          QUINN EMANUEL
8         BY:  JOHN QUINN
          BY:  JON COREY
9         865 S. FIGUEROA STREET,
          10TH FLOOR
10        LOS ANGELES, CALIFORNIA  90017
          213-624-7707
11
12  ON BEHALF OF MGA ENTERTAINMENT:
13        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
          BY:  THOMAS J. NOLAN
14        BY:  CARL ALAN ROTH
          BY:  ROBERT JAMES HERRINGTON
15        300 SOUTH GRAND AVENUE
          LOS ANGELES, CALIFORNIA  90071-3144
16        213-687-5000
17
    ON BEHALF OF GUSTAVO MACHADO:
18
          OVERLAND BORENSTEIN SCHEPER & KIM LLP
19        BY:  ALEXANDER H. COTE
          300 SOUTH GRAND AVENUE
20        SUITE 2750
          LOS ANGELES, CALIFORNIA  90071
21        213-613-4660
22
    ON BEHALF OF CLOONAN, MARLOW & LEAHY:
23
          KEATS MCFARLAND & WILSON LLP
24        BY:  LARRY W. MCFARLAND
          9720 WILSHIRE BOULEVARD
25        BEVERLY HILLS, CA  90212
          310-777-3750
```

Page 3

```
1   APPEARANCES CONTINUED:
2
    ON BEHALF OF NON-PARTY CHRISTENSEN GLASER:
3
          CHRISTENSEN, GLASER, FINK, JACOBS,
4           WEIL & SHAPIRO, LLP
          BY:  SCOTT E. GIZER
5         10250 CONSTELLATION BOULEVARD
          LOS ANGELES, CA  90067
6         310-553-3000
7
    ON BEHALF OF THIRD PARTIES ANA CABRERA & BEATRIZ MORALES:
8
          ALLRED, MAROKO & GOLDBERG
9         BY:  RAMIT MIZRAHI
          6300 WILSHIRE BOULEVARD,
10        SUITE 1500
          LOS ANGELES, CA  90048
11        323-653-6530
12
    ON BEHALF OF THIRD PARTY WITNESS GENTLE GIANT STUDIOS:
13
          BAUTE & TIDUS LLP
14        BY:  HENRY H. GONZALEZ
          777 S. FIGUEROA STREET,
15        SUITE 4900
          LOS ANGELES, CA  90017
16        213-630-5000
17
    ON BEHALF OF WACHOVIA:
18
          DAVIS POLK & WARDWELL
19        BY:  NEAL A. POTISCHMAN
          1600 EL CAMINO REAL
20        MENLO PARK, CA  94025
          650-752-2000
21
22  ON BEHALF OF KAMI GILMOR:
23        BUCHALTER NEMER
          BY:  JOHN PATRICK PETRULLO
24        1000 WILSHIRE BOULEVARD,
          SUITE 1500
25        LOS ANGELES, CA  90017-2457
          213-891-0700
```

Page 4

```
1                    I N D E X
2                                        PAGE
3   HEARING............................    5
```

Page 5

```
1   RIVERSIDE, CALIFORNIA; MONDAY, FEBRUARY 4, 2008; 10:15 A.M.
2                        -OOO-
3         THE CLERK:  CALLING CALENDAR ITEM NUMBER FIVE, IN THE
4   MATTER OF CARTER BRYANT VERSUS MATTEL, INC., AND ALSO RELATED
5   CONSOLIDATED ACTIONS, CASE NUMBER CV 04-9059.
6         MAY WE HAVE COUNSEL PLEASE STATE YOUR APPEARANCES.
7         MR. QUINN:  GOOD MORNING, YOUR HONOR.
8         JOHN QUINN, JON COREY FOR MATTEL.
9         THE COURT:  MR. QUINN, MR. COREY, GOOD MORNING.
10        MR. NOLAN:  GOOD MORNING, YOUR HONOR.
11        TOM NOLAN, CARL ROTH, AND ROB HERRINGTON ON BEHALF OF
12  THE MGA DEFENDANTS.
13        THE COURT:  GOOD MORNING, COUNSEL.
14        MR. COTE:  GOOD MORNING, YOUR HONOR.
15        ALEXANDER COTE ON BEHALF OF CARLOS GUSTAVO MACHADO.
16        THE COURT:  COUNSEL.
17        MR. MCFARLAND:  LARRY MCFARLAND ON BEHALF OF
18  NONPARTIES MS. CLOONAN, MS. LEAHY, AND MS. MARLOW.
19        THE COURT:  MR. MCFARLAND, GOOD MORNING.
20        MR. GIZER:  GOOD MORNING, YOUR HONOR.
21        SCOTT GIZER FROM CHRISTENSEN & GLASER ON BEHALF OF
22  NON-PARTY CHRISTENSEN & GLASER.
23        THE COURT:  GOOD MORNING.
24        MR. PAGE:  GOOD MORNING, YOUR HONOR.
25        MICHAEL PAGE ON BEHALF OF CARTER BRYANT.
```

FEBRUARY 4, 2008          ED CV 04-9059-SGL

Exhibit 10
Page ___ 339

Page 6

1  THE COURT: MR. PAGE.
2  MS. MIZRAHI: GOOD MORNING, YOUR HONOR.
3  RAMIT MIZRAHI ON BEHALF OF NONPARTIES ANA CABRERA AND
4  BEATRIZ MORALES.
5  THE COURT: GOOD MORNING.
6  MR. GONZALEZ: GOOD MORNING, YOUR HONOR.
7  HENRY GONZALEZ ON BEHALF OF NONPARTY GENTLE GIANT
8  STUDIOS.
9  THE COURT: GOOD MORNING.
10 MR. POTISCHMAN: GOOD MORNING, YOUR HONOR.
11 NEIL POTISCHMAN FROM DAVIS, POLK & WARDWELL ON BEHALF
12 OF NONPARTY WACHOVIA CORPORATION.
13 THE COURT: COUNSEL.
14 MR. PETRULLO: AND GOOD MORNING, YOUR HONOR.
15 JOHN PETRULLO FROM BUCHALTER & NEMER APPEARING FOR A
16 NONPARTY WITNESS, MS. GILMORE.
17 THE COURT: GOOD MORNING.
18 GOOD MORNING TO YOU ALL.
19 WE'RE ON CALENDAR THIS MORNING ON THE COURT'S OWN
20 ORDER TO SET THE VARIOUS EX-PARTE APPLICATIONS THAT THE COURT
21 RECEIVED FOR A HEARING.
22 THE COURT HAS RECEIVED AND REVIEWED -- ACTUALLY,
23 THERE'S SIX EX-PARTE APPLICATIONS. ONE OF THE EX-PARTE
24 APPLICATIONS HAS A SUPPLEMENT, SO I GUESS WE CAN COUNT THAT AS
25 SEVEN. I'LL TRY TO GET THROUGH THESE AS BEST I CAN THIS

Page 7

1  MORNING.
2  I HAVE RECEIVED THE PARTIES' PAPERS. THERE WAS A
3  REPLY WHICH CAME IN AT APPROXIMATELY 9:36 THIS MORNING; AND I
4  MENTION THIS ONLY AS KIND OF A CAVEAT TO ALL PARTIES IN THIS
5  CASE AS WE GO FORWARD HERE. THERE WAS A REPLY SUBMITTED BY
6  MATTEL IN SUPPORT OF THEIR EX-PARTE TO COMPEL VARIOUS
7  DEPOSITIONS.
8  I KNOW THAT IT WAS ELECTRONICALLY-FILED AT 2:24 ON
9  FRIDAY, BUT THE COURTESY COPY CAME IN THIS MORNING AT 9:36. I
10 CAN'T REVIEW A DOCUMENT, OBVIOUSLY, 25 MINUTES BEFORE A
11 HEARING, PARTICULARLY WHEN I WAS ALREADY ON THE BENCH AT 9:30,
12 ON THE SCHEDULING CONFERENCES.
13 SO IT'S JUST A CAVEAT TO EVERYBODY IN THIS CASE, THAT
14 TO THE EXTENT THAT YOU WANT ME TO READ SOMETHING BEFORE A
15 HEARING, THAT COURTESY COPY IS ALMOST AS IMPORTANT, IF NOT MORE
16 IMPORTANT, THAN THE ELECTRONIC FILING, BECAUSE THAT'S WHAT I
17 USE; THAT'S WHAT I TOOK HOME THIS WEEKEND, WERE ALL OF THE
18 COURTESY COPIES. SO IF YOU WANT TO FILE SOMETHING ON FRIDAY
19 BEFORE A HEARING, THAT'S FINE. BUT YOU'RE GOING TO HAVE TO
20 MAKE THAT EFFORT. I KNOW IT'S AN ADDED EXPENSE AND IT'S NOT
21 REQUIRED TO FILE IT -- IT'S TECHNICALLY FILED, BUT IT DOESN'T
22 DO MUCH GOOD IF YOU WANT THE COURT TO ACTUALLY READ IT.
23 SO I HAVE NOT READ THAT REPLY, BUT I HAVE READ
24 EVERYTHING ELSE THAT HAS BEEN SUBMITTED.
25 AND I SAY THAT NOT TO ADMONISH, BUT JUST SIMPLY TO

Page 8

1  PUT EVERYONE ON THE SAME PLAYING FIELD, THAT IN THE FUTURE --
2  BECAUSE I'M SURE, AS WE GET CLOSER TO HEARING DATES AND TRIAL
3  DATES, THAT THERE'S GOING TO BE A LOT OF THINGS FILED AND
4  YOU'RE GOING TO WANT TO GET A LOT OF STUFF BEFORE THE COURT.
5  IF YOU WANT ME TO READ IT, I NEED THAT COURTESY COPY. THAT'S
6  WHAT'S CRITICAL.
7  WE HAVE A REINFORCED COURTESY BOX NOW FOR THAT
8  PURPOSE.
9  MR. NOLAN: IS IT LARGER?
10 THE COURT: IT'S LARGER AND IT'S WOOD, NOT PLASTIC.
11 I'D LIKE TO BEGIN, BECAUSE I THINK THIS MAY HELP
12 RESOLVE A NUMBER OF THESE APPLICATIONS, WITH MR. MACHADO'S
13 EX-PARTE APPLICATION, MR. MACHADO-GOMEZ'S EX-PARTE APPLICATION,
14 FOR A CLARIFICATION OF THE COURT'S JANUARY 7, 2008 ORDER.
15 AND THE CONCERN THAT MR. MACHADO-GOMEZ EXPRESSED
16 THROUGH HIS EX-PARTE APPLICATION WAS JUST BASICALLY A
17 CLARIFICATION THAT THE COURT MEANT WHAT IT SAID BACK ON
18 OCTOBER 31ST, THAT PHASE TWO CASE MANAGEMENT DATES HAD BEEN
19 VACATED AND THAT THE DATES THAT I IMPOSED WERE FOR PHASE ONE,
20 INCLUDING THE DISCOVERY CUTOFF, WHICH HAS NOW COME AND GONE.
21 AND WHAT HAS COME AND GONE IS THE DISCOVERY CUTOFF FOR PHASE
22 ONE, NOT FOR PHASE TWO.
23 I INDICATED AT THAT TIME THAT I WAS DENYING MGA'S
24 REQUEST TO DELAY OR OTHERWISE BIFURCATE DISCOVERY REGARDING
25 PHASE TWO ISSUES, AND I THINK THE REASONING FOR THAT -- AND I

Page 9

1  TRIED TO ARTICULATE THIS IN MY JANUARY ORDER -- WAS THAT I DID
2  NOT WANT TO HAVE DISCOVERY BOGGED DOWN BY DISPUTES OVER WHETHER
3  OR NOT A PARTICULAR WITNESS'S OR DEPONENT'S TESTIMONY WAS PHASE
4  ONE DISCOVERY OR PHASE TWO DISCOVERY. SO I THOUGHT IT MADE
5  SENSE, TO THE EXTENT THAT YOU WERE DOING A PHASE ONE
6  DEPOSITION, IF THAT WITNESS HAD INFORMATION RELATED TO PHASE
7  TWO, THAT YOU GATHER THAT AT THE SAME TIME.
8  THAT IS NOT TO SUGGEST THAT SOMEHOW ALL PHASE TWO
9  DISCOVERY WAS TO BE COMPLETED BY JANUARY 28TH. SO IN MY ORDER
10 THAT I WILL ISSUE TODAY, I WILL BASICALLY, I SUPPOSE, GRANT
11 MR. MACHADO-GOMEZ'S EX-PARTE APPLICATION, TO CLARIFY THE ORDER
12 THAT THE COURT NEVER INTENDED FOR PHASE TWO DISCOVERY TO BE
13 COMPLETED BY JANUARY 28TH.
14 IN REFLECTING ON THIS, THOUGH, AND REFLECTING ON
15 WHERE WE ARE IN THE DISCOVERY -- AND, I SUPPOSE, TO KIND OF
16 GIVE YOU A PREVIEW AS TO WHERE I'M GOING WITH SOME OF THESE
17 OTHER APPLICATIONS -- THERE'S NO QUESTION THAT THE COURT WANTS
18 TO MAKE SURE ALL OF THE DISCOVERY THAT IT HAS ORDERED TO BE
19 CONDUCTED FOR PHASE ONE BE CONDUCTED AND COMPLETED. AND I
20 CERTAINLY INTEND TO GIVE LEAVE TO BOTH PARTIES TO COMPLETE
21 WHATEVER DISCOVERY WAS ORDERED BEFORE THE DISCOVERY CUTOFF DATE
22 WITH REGARD TO PHASE ONE.
23 IT'S ALSO CLEAR TO ME, AT THIS TIME, IT MIGHT MAKE A
24 LOT OF SENSE TO STAY OR STOP PHASE TWO DISCOVERY UNTIL THE
25 PHASE ONE TRIAL IS COMPLETED. HAVING READ THROUGH A NUMBER OF

FEBRUARY 4, 2008                    ED CV 04-9059-SGL

Exhibit 10
Page _____ 340

Page 10

1 THE BRIEFS OPPOSING THE VARIOUS EX-PARTE APPLICATIONS, I KNOW
2 THAT BOTH SIDES, OR ALL SIDES -- THERE'S NOT REALLY JUST TWO
3 SIDES HERE -- BUT ALL SIDES HAVE BEEN WORKING AT A FEVERISH
4 PACE, AND I APPRECIATE THE EFFORTS OF EVERYONE. BUT I THINK
5 THAT WE HAVE TO BE REALISTIC AS WELL, AND I THINK THAT A FOCUS
6 ON -- WE'RE IN THE MONTH OF FEBRUARY NOW -- ON WRAPPING UP
7 PHASE ONE DISCOVERY SHOULD BE OUR PRIORITY.
8        I WOULD STILL WANT TO KEEP IN PLACE MY ADMONITION OR
9 DIRECTION THAT TO THE EXTENT THAT A PHASE TWO WITNESS IS BEING
10 DEPOSED AND HAS PHASE TWO INFORMATION, THAT THAT ALL BE TAKEN
11 AT THE SAME DEPOSITION. I'M NOT CONTEMPLATING TRYING TO CREATE
12 MORE DEPOSITIONS DOWN THE ROAD BY SAYING THIS.
13       AND I THINK MATTEL CLEARLY IDENTIFIES A NUMBER OF
14 THESE WITNESSES AS CLEARLY PHASE TWO WITNESSES -- I JUST DON'T
15 THINK THAT'S A WISE IDEA, OR PRUDENT, FOR US TO BE HAVING THOSE
16 DEPOSITIONS GOING FORWARD IN FEBRUARY. AND THERE'S A GOOD
17 NUMBER OF WITNESSES THAT HAVE BEEN IDENTIFIED BY MATTEL IN
18 THEIR PAPERS AS BEING PHASE TWO WITNESSES.
19       MY TENTATIVE THOUGHT THIS MORNING, OR OVER THIS
20 WEEKEND, IS THAT THOSE WITNESSES AND THOSE DEPOSITIONS BE PUT
21 OFF UNTIL WE'RE DONE WITH THIS PHASE ONE TRIAL, SO THAT WE CAN
22 FOCUS ALL OF THE RESOURCES -- AND ADMITTEDLY, THERE'S A LOT OF
23 RESOURCES -- BUT FOCUS THE RESOURCES ON FINISHING UP PHASE ONE
24 DISCOVERY.
25       SO THOSE ARE MY TENTATIVE THOUGHTS, I SUPPOSE, WITH

Page 11

1 RESPECT TO MR. MACHADO-GOMEZ'S APPLICATION. I WILL WANT TO
2 HEAR BRIEFLY FROM BOTH SIDES, IF THERE ARE ANY THOUGHTS OR
3 REACTIONS.
4        I'M TRYING TO THINK OF ALL OF THE UNINTENDED
5 CONSEQUENCES OF MAKING THIS MOVE, AND PRECISELY BECAUSE THEY'RE
6 UNINTENDED, I'M SURE I CAN'T CONTEMPLATE THEM; SO I HAVE TO
7 RELY ON COUNSEL TO ALERT ME TO ANY PROBLEMS IN GOING DOWN THIS
8 ROAD AT THIS POINT.
9        I DO RECOGNIZE, OF COURSE, THERE'S A DANGER OF A
10 DISPUTE OVER WHAT'S A PHASE ONE WITNESS AND WHAT'S A PHASE TWO
11 WITNESS. YOU'VE GOT TO BELIEVE, THAT YOU'RE AT A POINT
12 IN THIS CASE WHERE YOU CAN IDENTIFY BETWEEN THE TWO. IF IT'S
13 MIXED, THEN IT GOES FORWARD. BUT IF IT'S JUST CLEARLY A PHASE
14 TWO WITNESS, I JUST CAN'T THINK OF A COMPELLING NEED TO BUSY UP
15 OUR TIME AT THIS POINT WITH THOSE WITNESSES.
16       NO ONE IS FORFEITING ANY RIGHT TO TAKE THOSE
17 DEPOSITIONS. YOU ALL NEED TO BE HAVING PLENTY OF LEAVE TO DO
18 WHATEVER DISCOVERY IS NECESSARY IN PHASE TWO, ONCE WE GET
19 THROUGH OUR PHASE ONE TRIAL, WHICH IS SCHEDULED TO BEGIN IN
20 MAY; BUT I JUST WANT US TO BE REALISTIC AS WE GO FORWARD.
21       SO I'LL HEAR WHOMEVER WISHES TO GO FIRST ON THIS.
22 MR. QUINN?
23       MR. QUINN: GOOD MORNING, YOUR HONOR.
24       THERE'S TWO EX-PARTES THAT THE COURT HAS THAT DEAL
25 WITH DEPOSITIONS, AND I THINK I CAN ADDRESS BOTH OF THOSE

Page 12

1 TOGETHER. AND I THINK THERE ARE, OBVIOUSLY, SOME ISSUES THAT
2 THE PARTIES HAVE. THE GOOD NEWS IS THAT IN THE WEEK ENDING
3 JANUARY 28TH, THE PARTIES TOOK AND DEFENDED 27 DEPOSITIONS. WE
4 DID NOTICE ALL OF THE DEPOSITIONS THAT WE GOT LEAVE TO TAKE
5 PURSUANT TO THE COURT'S JANUARY 7TH ORDER.
6        THE ORDER INDICATED -- FRANKLY, IT WASN'T ENTIRELY
7 CLEAR TO THE LAWYERS WHAT THE COURT'S INTENTIONS WERE ABOUT THE
8 CUTOFF DATE, TO THE EXTENT THEY CAN BE COMPLETED BY
9 JANUARY 28TH UNLESS THERE'S A STIPULATION. THAT SORT OF LED TO
10 SOME MISUNDERSTANDINGS OR DISAGREEMENTS BETWEEN THE LAWYERS,
11 WHICH I THINK I CAN SUMMARIZE FOR THE COURT.
12       THE DISAGREEMENTS SORT OF FALL INTO A TOTAL OF SEVEN
13 CATEGORIES. FIRST, THERE ARE PERSONS, PARTIES, THIRD-PARTY
14 DEPONENTS, WHO ARE IDENTIFIED IN THE JANUARY 7TH ORDER WHO WE
15 NOTICED AND WE SUBPOENAED; AND THEY ASKED, FOR REASONS OF THEIR
16 OWN, THAT THE DEPOSITIONS BE TAKEN AFTER JANUARY 28TH; THAT
17 THEY BE TAKEN IN FEBRUARY.
18       SO THERE'S AN ISSUE OF, DO WE HAVE PERMISSION TO DO
19 THAT?
20       IT'S REALLY FOR THE CONVENIENCE OF THE THIRD PARTIES.
21 THEY WERE DULY NOTICED AND SERVED WITH SUBPOENAS. WE THOUGHT
22 IT WAS APPROPRIATE TO GO AHEAD AND DO THOSE IN FEBRUARY. BUT
23 AT THIS POINT, WE DON'T REALLY HAVE A STIPULATION FROM THE
24 OTHER SIDE THAT IT'S OKAY TO DO THAT.
25       SO THAT'S ONE SORT OF CATEGORY.

Page 13

1        ANOTHER CATEGORY ARE PEOPLE -- AND THERE ARE FOUR OF
2 THESE -- WHO TURN OUT TO BE OUT OF THE COUNTRY, ONE IN CANADA
3 AND THE OTHER THREE IN HONG KONG, WHERE WE ARE PROCEEDING BY
4 LETTERS ROGATORY. AND THAT TAKES A LITTLE LEAD TIME. AND IT
5 WAS NOT POSSIBLE, FOR THAT REASON, TO GET THOSE DONE BY
6 JANUARY 28TH.
7        SO THERE'S AN ISSUE OF, IS IT OKAY TO CONTINUE DOWN
8 THAT PATH AND COMPLETE THOSE, EVEN THOUGH IT WOULD BE DONE
9 AFTER JANUARY 28TH?
10       THE COURT: WITH RESPECT TO THOSE THREE OUT OF THE
11 COUNTRY, IN YOUR VIEW, WOULD YOU DESCRIBE THOSE AS PHASE ONE OR
12 TWO OR MIXED?
13       MR. QUINN: THE ONE IN CANADA, I WOULD SAY, IS PHASE
14 TWO; THE THREE IN HONG KONG ARE PHASE ONE, YOUR HONOR.
15       THE COURT: VERY WELL.
16       MR. QUINN: THE THIRD CATEGORY ARE PEOPLE, FOLKS, WHO
17 ARE COVERED BY THE JANUARY 7TH ORDER BY NAME. WE NOTICED THEM
18 AND WE'VE BEEN TRYING TO SERVE THEM WITH SUBPOENAS AND HAVE NOT
19 BEEN SUCCESSFUL. WE'VE DETAILED OUR EFFORTS ON THAT IN THE
20 PAPERS. WE JUST NEED A LITTLE MORE TIME TO SERVE THOSE PEOPLE.
21       THESE INCLUDE, BY THE WAY, AN ATTORNEY,
22 UNFORTUNATELY, MR. MCFARLAND, WHO WE THINK HAS BEEN AVOIDING
23 SERVICE. WE'VE TRIED TO SERVE HIM. WE'VE LEFT MESSAGES. WE
24 FINALLY SENT HIM AN E-MAIL SAYING, 'WE HAVE A SUBPOENA FOR YOU,
25 SIR. COULD YOU PLEASE CALL US AND LET US KNOW WHEN IT WOULD BE

FEBRUARY 4, 2008          ED CV 04-9059-SGL

Exhibit 10
Page _____ 341

Page 14

1  CONVENIENT TO ACCEPT THAT.' WE KNOW HE OPENED THAT E-MAIL
2  MESSAGE, BUT HE HAS NOT RESPONDED. AND HIS CLIENTS AS WELL.
3  SOMEHOW WE HAVE NOT BEEN ABLE TO TRACK DOWN -- WE HAVE NOT BEEN
4  ABLE TO SERVE HALPERN, ARANT, AND PETER MARLOW, WHO HE
5  REPRESENTS; SO THERE'S A CATEGORY THERE.
6       THE LIST OF THESE PEOPLE WHO WE CLEARLY COVERED BY
7  THE JANUARY 7TH ORDER BY NAME, WE NOTICED THEM, WE'VE HAD
8  SUBPOENAS OUT AND HAVE NOT BEEN ABLE TO SERVE THEM; THAT'S
9  MCFARLAND, WARD, HALPERN, ARANT, MARLOW, SALEMNIA, ABUNDIS, AND
10  WITSCHELL.
11      THEN THERE ARE TWO INDIVIDUALS WHO, THERE'S A DISPUTE
12  ABOUT WHETHER THEY'RE COVERED BY THE JANUARY 7TH ORDER. THEY
13  ARE REFERRED TO BY NAME IN THE PAPER. THIS IS GRONICH, DAPHNE
14  GRONICH; AND JOE TIONGCO.
15      WHAT WE NEED THE COURT'S HELP ON IS A CONSTRUCTION OF
16  THE ORDER. THE COURT'S ORDER AT ONE POINT SAYS THAT MATTEL HAS
17  MADE A SHOWING, BECAUSE OF THE DOCUMENT RETENTION ISSUES, THAT
18  THESE DEPOSITIONS SHOULD BE TAKEN. AND THE COURT GRANTED THE
19  MOTION -- THERE'S A POINT IN THE ORDER WHERE THE COURT SAYS THE
20  MOTION IS GRANTED EXCEPT FOR ADDITIONAL TIME WITH
21  CARTER BRYANT.
22      WE UNDERSTOOD THAT SINCE GRONICH AND TIONGCO ARE THE
23  ONLY PEOPLE WHO HAVE ANYTHING TO DO WITH DOCUMENT COLLECTION
24  AND RETENTION, THAT WE HAD LEAVE TO TAKE THEIR DEPOSITIONS.
25      IT'S MGA'S VIEW THAT SINCE THE COURT'S ORDER REFERRED

Page 15

1  TO, AT ONE POINT, TWO PAGES IN OUR MOTIONS WHERE THERE WERE
2  LISTS OF NAMES, AND THOSE TWO NAMES WEREN'T THERE, THAT THE
3  COURT DID NOT MEAN TO INCLUDE THEM.
4       SO I THINK I'VE HIGHLIGHTED THE ISSUE THERE.
5       FROM OUR STANDPOINT, THE COURT ELSEWHERE SAID,
6  "MOTION GRANTED, EXCEPT BRYANT." THE COURT ALSO SAID BECAUSE
7  OF DOCUMENT RETENTION AND COLLECTION ISSUES, AND THEY'RE THE
8  ONLY ONES THAT KNOW ABOUT THAT.
9       THE COURT: I UNDERSTAND YOUR POSITION, COUNSEL.
10      MR. QUINN: ALL RIGHT.
11      THEN THERE ARE TWO FOLKS WHO ARE IN MEXICO, VARGAS
12  AND TRUEBA, AND I BELIEVE THEY WOULD BE PHASE TWO. AND THE
13  QUESTION THERE FOR THE COURT'S DECISION -- MAYBE IF THIS IS
14  GOING TO BE PUT OFF, MAYBE THE COURT DOESN'T HAVE TO DECIDE
15  RIGHT NOW -- IS WHETHER THEY ARE MANAGING AGENTS. BECAUSE IF
16  THEY ARE MANAGING AGENTS, THEY COULD BE COMPELLED TO APPEAR
17  SIMPLY BY NOTICE. IF THEY'RE NOT MANAGING AGENTS, THEN WE HAVE
18  TO PROCEED UNDER MORE FORMAL PROCEDURES. THAT ISSUE OF WHAT A
19  MANAGING AGENT IS AND WHAT THE EVIDENCE IS ON THAT HAS BEEN
20  BRIEFED FOR THE COURT, AND WE THINK THE COURT CAN DECIDE THAT.
21      I WOULD JUST NOTE THAT IN THE INITIAL DISCLOSURES, WE
22  WERE TOLD THAT THESE WERE PEOPLE WHO CAN BE CONTACTED THROUGH
23  MGA'S COUNSEL. WE CONTACTED THEM AND SAID, 'OKAY, WE'D LIKE TO
24  TAKE THEIR DEPOSITIONS.' WE WERE TOLD WE COULDN'T. WE ASKED
25  FOR THEIR ADDRESSES. WE WERE TOLD WE COULDN'T HAVE THEM. SO

Page 16

1  WE KIND OF RAN INTO A WALL THERE.
2       THE FINAL CATEGORY IS THE 30(B)(6) NOTIONS OF MGA TO
3  MEXICO AND MGA. THOSE NOTICES WERE ATTACHED TO OUR
4  APPLICATION, AND THE COURT GRANTED PERMISSION FOR US TO TAKE
5  THOSE DEPOSITIONS. THE COURT FOUND GOOD CAUSE TO TAKE THE
6  DEPOSITIONS. NO OBJECTIONS WERE MADE TO THE TOPICS, THE
7  30(B)(6) TOPICS DESCRIBED IN THE NOTICES; SO IT'S OUR VIEW THAT
8  THE COURT AUTHORIZED TO GO AHEAD AND TAKE THOSE DEPOSITIONS.
9  MGA HAS STARTED A PROCEEDING BEFORE JUDGE INFANTE TO QUESTION
10  THE DEPOSITION TOPICS AND OBJECT TO THEM SORT OF AFTER THE
11  FACT.
12      SO THE ISSUE THERE IS, WAS IT TOO LATE FOR THEM TO
13  OBJECT? BY FINDING GOOD CAUSE TO TAKE THOSE DEPOSITIONS ON
14  JANUARY 7TH, DID THE COURT INTEND THAT WE COULD GO AHEAD AND
15  TAKE THEM ON THOSE TOPICS? OR SHOULD THERE BE THIS ANCILLARY
16  PROCEEDING BEFORE JUDGE INFANTE?
17      THE COURT: ARE THOSE PHASE TWO OR PHASE ONE, FROM
18  YOUR PERSPECTIVE?
19      MR. QUINN: I BELIEVE THE MGA TO MEXICO IS PHASE TWO;
20  THE 30(B)(6) TO MGA IS PARTLY PHASE ONE AND PARTLY PHASE TWO.
21      THE COURT: ALL RIGHT.
22      NOW, THESE WERE SIX CATEGORIES. YOU INDICATED SEVEN
23  AREAS OF DISPUTE.
24      IS THERE ANOTHER?
25      MR. QUINN: THE SEVENTH IS SORT OF -- YOU'LL SEE IN

Page 17

1  THE PAPERS -- A QUESTION MIGHT RAISE IN YOUR MIND, YOUR HONOR,
2  WHETHER LAWYERS CAN COUNT AS TO HOW MANY DEPOSITIONS HAVE BEEN
3  TAKEN. THE ORIGINAL SCHEDULING ORDER SAID 24 DEPOSITIONS. AND
4  IT'S MGA'S VIEW THAT WE USED UP OUR 24. WE THINK THEY GET TO
5  THAT BY SAYING THAT THE JANUARY 7TH ORDER CUT OFF AND
6  ELIMINATED ANY UNUSED ONES THAT WE HAD AT THE TIME; SO ANY
7  UNUSED ONES, WE DON'T GET TO USE NOW.
8       THE COURT: I UNDERSTAND.
9       MR. QUINN: WE THINK WE HAVE TAKEN 18 DEPOSITIONS.
10  THEY SAY WE'VE TAKEN VASTLY MORE THAN -- YOU KNOW, WE USED
11  THOSE UP.
12      THE COURT: THERE'S NO QUESTION LAWYERS CAN COUNT.
13  THE PROBLEM IS THAT LAWYERS HAVE MANY DIFFERENT WAYS OF
14  COUNTING.
15      MR. QUINN: RIGHT.
16      I HAVE THE LIST OF THE ONES WE'VE TAKEN, YOUR HONOR.
17  TO GET OVER THE 24, THEY COUNT DEPOSITIONS WE HAVEN'T TAKEN, OR
18  ONE THAT'S BEING TAKEN AS WE SPEAK NOW, MR. LARIAN'S BROTHER,
19  FARAD LARIAN. BUT HE WAS ALSO SPECIFICALLY LISTED IN THE
20  JANUARY 7TH ORDER. AND THEY ALSO COUNT THE DEPOSITION OF
21  GUSTAVO MACHADO, WHO'S A PARTY TO THIS CASE, WHO WE'VE BEEN
22  TRYING TO DEPOSE SINCE LAST JUNE. THIS IS A PARTY, AND WE
23  STILL HAVEN'T TAKEN THAT DEPOSITION.
24      THE COURT: I'M GOING TO STOP YOU FOR A SECOND,
25  MR. QUINN, BECAUSE I WANT TO GET TO ALL OF THE EX PARTES ON THE

FEBRUARY 4, 2008                    ED CV 04-9059-SGL

Exhibit 10
Page 342

Page 18

1  DEPOSITIONS WHICH YOU'VE JUST ADDRESSED HERE, BUT I FIRST
2  WANTED SOMEONE TO RESPOND FROM MATTEL TO THE COURT'S -- I'M
3  STILL ON MACHADO-GOMEZ'S EX-PARTE APPLICATION.
4        DO YOU HAVE A POSITION WITH RESPECT TO THE COURT'S
5  SUGGESTION THAT WE DELAY THE PHASE TWO DEPONENTS, OR
6  DEPOSITIONS, UNTIL AFTER THE PHASE ONE TRIAL, KEEPING IN MIND,
7  YOU ARE NOT -- THE COURT WILL ENSURE THAT YOU ARE NOT
8  COMPROMISING ANY OF THE LEAVE THAT'S BEEN AFFORDED TO YOU TO
9  TAKE ANY OF THESE DEPOSITIONS. IT'S JUST SIMPLY A MATTER OF
10 TIMING.
11       MR. QUINN: I UNDERSTAND.
12       PRINCIPALLY, YOUR HONOR, I THINK THAT'S SOMETHING
13 THAT WE CAN SUPPORT.
14       THE COURT: DO YOU THINK THAT YOU COULD IDENTIFY,
15 WITHOUT TOO MUCH DISPUTATION, DEPOSITIONS THAT ARE PHASE TWO?
16       THAT'S WHY I WAS ASKING YOU BEFORE -- YOU SEEM TO BE
17 ABLE TO.
18       MR. QUINN: WE WOULD CERTAINLY, YOUR HONOR, ENDEAVOR
19 TO DO THAT. HOPE BLOOMS ETERNAL, AND I WOULD HOPE THAT WE
20 COULD DO THAT.
21       JUST TWO ISSUES. ONE IS, ON SOME OF THESE, THERE
22 REALLY IS SOME LEAD TIME. WE NEED TO TAKE A DEPOSITION IN
23 ORDER TO FIND OUT WHO THE THIRD PARTIES ARE; WHAT YOUR PHONE
24 NUMBER WAS, WHERE YOUR BANKING WAS; THAT ALL TAKES SOME TIME,
25 TO SERVE THOSE THIRD-PARTY SUBPOENAS.

Page 19

1        WE HAVE GOT THIRD PARTIES, YOU KNOW, BANKS, THAT
2  APPEARED THIS MORNING, BECAUSE WE FINALLY GOT SOME INFORMATION
3  SO WE COULD SERVE THE SUBPOENA ON A BANK; THAT CAN TAKE SOME
4  LEAD TIME.
5        THE COURT: I UNDERSTAND.
6        MR. QUINN: THERE MAY BE SOME THAT WE WOULD SAY,
7  'YOUR HONOR, WE REALLY NEED THAT;' SOMEBODY WHO'S TECHNICALLY
8  PHASE TWO, WE REALLY NEED TO START THAT PROCESS EARLIER.
9        THAT'S ONE EXCEPTION.
10       THE OTHER EXCEPTION --
11       THE COURT: LET ME STOP YOU THERE, COUNSEL, BECAUSE I
12 REALLY WANT TO MAKE SURE I'VE ADDRESSED AS MANY OF THESE
13 PROBLEMS AS I CAN. I DON'T REALLY SEE --
14       EARLY, AS OPPOSED TO WHAT? WE DON'T EVEN HAVE A
15 TRIAL SET FOR PHASE TWO YET, SO WE DON'T KNOW HOW MUCH TIME OR
16 HOW LITTLE TIME WE'RE GOING TO HAVE ONCE THE PHASE ONE TRIAL IS
17 OVER.
18       MR. QUINN: RIGHT.
19       THE COURT: IF YOU'RE SAYING THAT IT TAKES YOU THREE
20 MONTHS TO SECURE THE INFORMATION THAT YOU NEED, WE CAN PROBABLY
21 ACCOMMODATE THAT IN OUR PHASE TWO TRIAL.
22       MR. QUINN: WELL, I RAISED IT BECAUSE I DON'T KNOW
23 THE COURT'S THINKING. WE DON'T HAVE A TRIAL DATE. IT'S JUST A
24 CAUTION THAT GOES OFF.
25       THE OTHER IS MR. MACHADO, WHO WE'VE BEEN TRYING TO

Page 20

1  DEPOSE. HE'S PHASE TWO. HE'S A PARTY TO THIS CASE. WE'VE
2  BEEN TRYING TO DEPOSE HIM SINCE JUNE. WE HAD SEVERAL DAYS.
3  HIS LAWYER, AFTER GIVING US DATES, CANCELLING, GIVING US DATES,
4  CANCELLING, GAVE US A DATE IN JANUARY; AND MGA CANCELLED IT.
5  WE FINALLY GOT A DATE.
6        HE NOW SAYS HE WILL APPEAR ON FEBRUARY 27TH. AND
7  GIVEN THE LONG ROAD THAT WE'VE HAD TO GO TO GET TO THIS POINT,
8  THAT'S ONE THAT WE REALLY WOULD LIKE TO DO.
9        THE COURT: WELL, CERTAINLY, MR. MACHADO-GOMEZ IS
10 GOING TO SIT FOR HIS DEPOSITION. IF HE HAS TO SIT FOR IT IN
11 THIS COURTROOM, HE'S GOING TO SIT FOR HIS DEPOSITION IN THIS
12 CASE. THAT'S NOT A QUESTION. THE QUESTION IS TIMING.
13       IS THERE ANY REASON WHY HE HAS TO SIT FOR HIS
14 DEPOSITION BEFORE THE PHASE ONE TRIAL?
15       MR. QUINN: NO.
16       THE COURT: OKAY.
17       I UNDERSTAND THE PROBLEM. IF YOU CONTINUE TO HAVE
18 THOSE PROBLEMS, WE CAN ADDRESS THAT, BUT I WANT TO --
19       DOES ANYONE ELSE WISH TO ADDRESS THE COURT ON ITS
20 RESOLUTION TO THIS FIRST EX-PARTE APPLICATION AND THE PROPOSAL
21 TO PLACE PHASE TWO DEPOSITIONS, BASICALLY A STAY ON THAT, AT
22 THIS POINT, FOR EXCLUSIVE PHASE TWO DEPOSITIONS?
23       I REALLY HOPE THERE'S NOT GOING TO BE ANY
24 MISUNDERSTANDING OR NEED FOR CLARIFICATION AS TO WHAT I MEAN BY
25 THAT. I'M TALKING ABOUT WITNESSES LIKE MR. MACHADO-GOMEZ, WHO,

Page 21

1  FROM MY UNDERSTANDING OF WHAT HE HAS TO SAY AND WHAT HE
2  CONTRIBUTES TO THIS, IS REALLY A PHASE TWO WITNESS.
3        MR. NOLAN: YOUR HONOR, ON BEHALF OF MGA AND
4  ISAAC LARIAN, WE DO NOT DISPUTE THAT APPROACH. THAT IS
5  ACTUALLY HOW WE INTERPRETED THE COURT'S ORDER WHEN IT WAS
6  ISSUED ON JANUARY 7TH. SOME OF THE DIFFICULTY THAT WE'VE HAD
7  IN THIS CASE HAS BEEN TRYING TO GET ALL SIDES TO AGREE TO IT.
8        I'M NOT GOING TO GO INTO THE OTHER ISSUES RIGHT NOW.
9  I AGREE WITH RESPECT TO MR. MACHADO. BUT I DO WANT TO SAY
10 SOMETHING ABOUT ONE THING.
11       TO THE EXTENT THAT WE WERE CALLED OUT FOR CANCELLING
12 MR. MACHADO'S DEPOSITION, I THINK THE PAPERS MADE IT QUITE
13 CLEAR THAT JACK DICANIO, WHO WAS ASSIGNED TO HANDLE THE MATTER,
14 WAS HANDLING A SENTENCING. WE COMMUNICATED THAT TO COUNSEL.
15 AND FOR ANY SIDE IN THIS CASE TO TAKE ISSUE WITH CANCELLING
16 DEPOSITIONS UNILATERALLY, THEY SHOULD BE REMINDED ABOUT THE OLD
17 ADAGE, 'PEOPLE WHO LIVE IN GLASS HOUSES SHOULDN'T THROW ROCKS,'
18 BECAUSE I COULD GO ON AND ON ABOUT THE NUMBER OF CANCELLATIONS
19 AND THE --
20       THE COURT: THERE'S NO NEED TO DO THAT, COUNSEL. I
21 APPRECIATE THE SENTIMENT.
22       IS THERE ANYONE ELSE WHO WISHES TO BE HEARD ON THIS
23 ASPECT THAT I'M SUGGESTING RIGHT NOW?
24       MR. COTE: WE TOTALLY AGREE WITH YOUR HONOR'S
25 SUGGESTION. I THINK THAT'S THE RIGHT WAY TO SPLIT IT UP.

6 (Pages 18 to 21)

Exhibit 10
Page ___343___

Page 22

1 THE COURT: IS THERE ANYBODY WHO DISAGREES WITH MY
2 SUGGESTION?
3 OKAY. WELL, THAT'S GOOD.
4 THAT WILL BE THE FIRST ELEMENT OF TRYING TO RESOLVE
5 THESE VARIOUS MATTERS.
6 THE SECOND EX PARTE THAT I WOULD LIKE TO ADDRESS IS
7 THE EX PARTE BROUGHT BY MATTEL FOR A STAY OF THE DISCOVERY
8 MASTER'S JANUARY 11, 2008 ORDER GRANTING MGA'S AND BRYANT'S
9 MOTION TO COMPEL, REGARDING ALLEGED BANDYING OF 30(B)(6)
10 WITNESSES, PENDING REVIEW OF OBJECTIONS.
11 I RECEIVED THE EX PARTE FOR THE STAY. I RECEIVED THE
12 OPPOSITION TO THE STAY. THE COURT GRANTED A TEMPORARY STAY
13 THROUGH TODAY'S HEARING. I ALSO HAVE THE UNDERLYING MOTION
14 WHICH SETS FORTH MATTEL'S OBJECTIONS. I DON'T HAVE AN
15 OPPOSITION, ALTHOUGH I CERTAINLY HAVE AN INDICATION THAT AN
16 OPPOSITION WILL BE FORTHCOMING.
17 RIGHT NOW THE NOTICE DATE IS FOR MARCH 3RD.
18 THE FIRST QUESTION IS, IS THIS SOMETHING WHICH NEEDS
19 TO BE ADDRESSED NOW, OR CAN THIS WAIT?
20 MR. NOLAN?
21 MR. NOLAN: YES, YOUR HONOR.
22 WE BELIEVE THAT IT HAS TO BE ADDRESSED IMMEDIATELY.
23 THIS HAS BEEN A MATTER THAT HAS BEEN BEFORE
24 JUDGE INFANTE SINCE BEFORE WE GOT INVOLVED IN THE CASE. THE
25 MATTER WAS BRIEFED AND PREPARED TO BE ARGUED IN FRONT OF

Page 23

1 JUDGE INFANTE IN OCTOBER, BUT BECAUSE THE PARTIES WERE TALKING
2 AND WE THOUGHT WE COULD RESOLVE IT -- WE WERE NEW ON THE BLOCK
3 AT THE TIME -- HOPE WAS GREAT AT THE TIME, IN TERMS OF WORKING
4 OUT ANYTHING IN THIS CASE; SO THE MATTER WAS PUSHED OFF.
5 JUDGE INFANTE DEALT WITH IT, RULED ON IT, ORDERED IT,
6 CAME UP WITH THE REMARKABLE FINDING THAT MATTEL HAS TO PRODUCE
7 A WITNESS MOST KNOWLEDGEABLE ON A PARTICULAR SUBJECT.
8 THEY GO TO CORE ISSUES IN PHASE ONE.
9 MATTEL, NOT ACCEPTING THAT ORDER, NOW COMES BEFORE
10 YOU ON THE NINTH DAY AND FILES WHAT WE BELIEVE IS GOING TO BE A
11 FRIVOLOUS APPEAL FROM JUDGE INFANTE. GIVEN THE STANDARD OF
12 REVIEW THE COURT HAS IMPOSED ALREADY IN THIS CASE AND GIVEN THE
13 AMOUNT OF BRIEFING AND ATTENTION THAT JUDGE INFANTE HAS ALREADY
14 ADDRESSED TO IT, WHAT I WOULD REQUEST, YOUR HONOR, IS THIS:
15 THAT THE COURT LOOK AT THIS AS QUICKLY AS POSSIBLE. WE WILL
16 GET OUR OPPOSITION IN --
17 THE COURT: THAT WAS GOING TO BE MY NEXT QUESTION,
18 COUNSEL.
19 WHEN CAN YOU HAVE YOUR OPPOSITION ON FILE?
20 MR. NOLAN: TODAY IS MONDAY. WE'LL FILE IT ON
21 WEDNESDAY, IF WE COULD.
22 THE COURT: ALL RIGHT.
23 MR. NOLAN: I'D SAY TOMORROW, YOUR HONOR, BECAUSE I
24 THINK THE PAPER'S ALREADY DONE. I JUST WANT TO MAKE CERTAIN
25 THAT I'M NOT OVERCOMMITTING TO IT. BUT I WOULD SAY WE WOULD

Page 24

1 FILE IT ON WEDNESDAY OF THIS WEEK.
2 THE COURT: ALL RIGHT.
3 SO YOU WOULD BE ABLE TO FILE FEBRUARY 6TH.
4 HOW MUCH TIME WOULD YOU NEED FOR A REPLY, MR. QUINN
5 AND MR. COREY?
6 MR. QUINN: COULD WE HAVE UNTIL MONDAY, THE 11TH?
7 FRIDAY?
8 THE COURT: THE 18TH IS A HOLIDAY. THE COURT'S IN A
9 LONG TRIAL RIGHT NOW THAT'S GOING TO TAKE TUESDAY THROUGH
10 FRIDAY OF THIS WEEK, TUESDAY AND WEDNESDAY OF NEXT WEEK. I'M
11 SITTING BY DESIGNATION ON THE NINTH CIRCUIT THE 14TH AND 15TH;
12 AND THEN WE START ANOTHER CASE ON THE 19TH. I REALLY HAVE TO
13 DO THESE HEARINGS ON MONDAYS, WHICH MEANS WE HAVE THE 4TH,
14 11TH, AND THE 25TH.
15 I WAS HOPING THAT MAYBE WE COULD HEAR THIS ON THE
16 11TH.
17 MR. QUINN: WE'LL DO THE REPLY ON THE 8TH,
18 YOUR HONOR, IF THAT WORKS.
19 THE COURT: THAT'S GREAT.
20 AND YOU'LL MAKE SURE THAT I GET THAT COURTESY COPY ON
21 THE 8TH, IF YOU WANT ME TO READ IT.
22 MR. QUINN: YES, YOUR HONOR. WE WOULD APPRECIATE IT.
23 THE COURT: SO FEBRUARY 6TH WILL BE THE OPPOSITION;
24 FEBRUARY 8TH WILL BE THE REPLY; AND THEN WE'LL HAVE THE HEARING
25 ON THIS MOTION ON FEBRUARY 11TH. AND I WILL GRANT A STAY

Page 25

1 THROUGH FEBRUARY 11TH.
2 SO THAT EX-PARTE APPLICATION IS GRANTED TO THE EXTENT
3 THAT IT'S SEEKING A STAY THROUGH THE HEARING; I'M JUST
4 ADVANCING THE HEARING DATE FOR MARCH 3RD, WHICH WAS THE NOTICE
5 DATE, TO FEBRUARY 11TH.
6 LET ME NEXT DEAL WITH THE DEPOSITIONS. THERE'S
7 REALLY, DEPENDING ON HOW WE COUNT, THREE EX-PARTE APPLICATIONS
8 HERE. THERE'S THE ORIGINAL EX-PARTE APPLICATION TO COMPEL THE
9 APPEARANCE OF ANA CABRERA, BEATRIZ MORALES, AND MARIE SALAZAR;
10 AND THEN A SUPPLEMENT TO AN EX-PARTE APPLICATION TO INCLUDE TO
11 THAT LIST MEL WOODS.
12 AND THEN THERE IS THE EX-PARTE APPLICATION TO COMPEL
13 THE DEPOSITIONS OF DAPHNE GRONICH, JOE TIONGCO, MARIANA TRUEBA,
14 PABLO VARGAS, MGA INTERTAINMENT, MGA E DE MEXICO; AND THEN, AS
15 I'VE WRITTEN IN SHORTHAND, A BUNCH OF OTHER DEPOSITIONS AS
16 WELL; LEAVE TO TAKE THE DEPOSITIONS IN FEBRUARY OF 2008 OF
17 NUMEROUS OTHER DEPONENTS.
18 THESE ARE BASICALLY THE DEPOSITIONS THAT MR. QUINN --
19 AND THE ARGUMENTS AND THE PROBLEMS HAVE BEEN BROKEN DOWN INTO
20 KIND OF THE SEVEN CATEGORIES THAT MR. QUINN JUST SPOKE TO.
21 MY INITIAL THOUGHT ON THIS, HAVING GONE THROUGH ALL
22 OF THIS, IS THAT WE SHOULD, HOPEFULLY, FIRST OF ALL, ONLY BE
23 TAKING DEPOSITIONS NOW THAT RELATE TO PHASE ONE. AND TO THE
24 EXTENT THAT ANY OF THESE DEPOSITIONS RELATE TO PHASE TWO,
25 NO ONE'S RIGHTS HAVE BEEN COMPROMISED, NO LEAVE IS BEING

FEBRUARY 4, 2008        ED CV 04-9059-SGL        Exhibit 10
Page ___344___

Page 26

1  WITHDRAWN, BUT THEY'RE SIMPLY GOING TO BE HANDLED AFTER THE
2  PHASE ONE TRIAL.
3       SECONDLY, TO THE EXTENT THAT MOTIONS TO QUASH OR
4  CHALLENGES TO THE SERVICE HAVE BEEN BROUGHT BEFORE
5  JUDGE INFANTE, JUDGE INFANTE HAS TO RULE ON THOSE.
6       MATTEL BROUGHT AN EX-PARTE APPLICATION FOR A
7  CLARIFICATION REGARDING THE DISCOVERY MASTER ORDER, AND THEY
8  ASKED THE COURT TO MAKE A VERY FIRM STATEMENT THAT ALL
9  DISCOVERY MATTERS, THE FIRST IMPRESSION, GO TO THE DISCOVERY
10 MASTER; AND I GRANTED THAT APPLICATION.
11      I COULD NOT HAVE USED, I DON'T THINK, CLEARER
12 LANGUAGE THAT DISCOVERY DISPUTES IN THE FIRST INSTANCE NEED TO
13 GO TO THE DISCOVERY MASTER AND NOT COME TO THIS COURT BY WAY OF
14 EX-PARTE APPLICATION.
15      SO WHAT'S GOOD FOR ONE SIDE IS GOOD FOR THE OTHER,
16 AND I THINK THAT THOSE MOTIONS TO QUASH -- LEAVE WAS AFFORDED
17 TO TAKE THE DEPOSITIONS, BUT THAT DOESN'T EVISCERATE THE NEED
18 TO PROPERLY SERVE AND PROPERLY NOTICE THOSE DEPOSITIONS.
19 THAT'S WHAT'S BEING CHALLENGED.
20      I'M NOT PASSING ANY JUDGMENT AS TO WHETHER OR NOT ONE
21 SIDE IS RIGHT OR THE OTHER SIDE IS WRONG. BUT I THINK IF I GET
22 INTO THE BUSINESS OF DECIDING SOME OF THESE AND TAKING SOME OF
23 THEM BACK FROM JUDGE INFANTE, IT JUST CREATES A MESS, QUITE
24 FRANKLY. AND I KNOW THERE'S A TREMENDOUS BURDEN ON
25 JUDGE INFANTE. JUDGE INFANTE IS RECEIVING, I THINK, ADEQUATE

Page 27

1  COMPENSATION FOR THE BURDEN THAT'S BEING PLACED ON HIM, AND I
2  THINK HE'S DOING A FABULOUS JOB OF MANAGING THIS. I WILL CALL
3  HIM THIS AFTERNOON AND LET HIM KNOW THAT ANY MATTER RELATED TO
4  PHASE TWO DOES NOT NEED TO BE RESOLVED RIGHT NOW. TO THE
5  EXTENT THAT THERE HAVE BEEN CHALLENGES MADE TO PHASE TWO
6  DEPONENTS, YOU CAN PUT THAT OFF. THAT'S NOT TO SAY THAT HE'S
7  NOT GOING TO HAVE TO CROSS THAT BRIDGE AT SOME TIME; HE
8  CERTAINLY WILL; BUT I THINK THAT WILL FREE UP THE TIME TO
9  ADDRESS THOSE MATTERS THAT RELATE TO PHASE ONE.
10      AND THEN TO THE EXTENT THAT MATTEL OR MGA OR
11 CARTER BRYANT OR ANYBODY ELSE DISAGREES WITH THE DECISION MADE
12 BY JUDGE INFANTE, THEN THAT CAN BE BROUGHT BEFORE THIS COURT,
13 AND I WOULD CERTAINLY DO ALL THAT I CAN TO HEAR THAT ON AN
14 EXPEDITED BASIS.
15      WHAT I DON'T THINK IS PROPER FOR THIS COURT TO DO IS
16 TO START ISSUING DISCOVERY ORDERS THAT MAY OR MAY NOT CONFLICT
17 WITH EARLIER POSITIONS THAT JUDGE INFANTE HAS TAKEN. I THINK
18 THAT JUST MAKES A MESS OF THE WHOLE THING.
19      SO THAT'S KIND OF THE TWO-PRONGED APPROACH THAT I
20 THOUGHT WE WOULD TAKE THROUGH THIS TO HOPEFULLY KEEP THIS
21 GOING.
22      AS FAR AS, HOWEVER, THE DEPOSITIONS THAT I'VE GIVEN
23 LEAVE TO TAKE THAT ARE PHASE ONE DEPOSITIONS, I GUESS A THIRD
24 ASPECT OF THE ORDER WOULD BE THAT, YES, PLAINTIFF DOES HAVE
25 LEAVE TO TAKE THOSE, EVEN IF THAT MEANS TAKING THEM IN

Page 28

1  FEBRUARY. THE DISCOVERY CUTOFF DATE HAS COME AND GONE. NO NEW
2  DISCOVERY REQUESTS ARE MADE. BUT TO THE EXTENT THAT ADDITIONAL
3  DISCOVERY NEEDS TO BE TAKEN RELATED TO PHASE ONE THAT ONE OR
4  EITHER OF THE SIDES HAS RECEIVED LEAVE TO TAKE, THAT'S GOING TO
5  HAVE TO BE DONE IN FEBRUARY. AND WE NEED TO GET IT DONE SO
6  THAT WE DON'T COMPROMISE OUR SCHEDULE HERE.
7       THE EXPERT REPORTS ARE GOING TO BE DUE IN FEBRUARY
8  AND MARCH. WE HAVE FILINGS OF MOTIONS IN LIMINE ON MAY 5TH.
9  BUT MOST IMPORTANTLY, WE HAVE A DISPOSITIVE MOTION CUTOFF DATE
10 ON MARCH 31ST. I SAW A PREVIEW OF COMING ATTRACTIONS IN
11 MR. NOLAN'S BRIEF, AND SEVERAL OTHER PLACES, SO I KNOW THAT
12 THERE ARE MOTIONS IN THE WORKS AND I KNOW THAT WE NEED TO START
13 FOCUSING ON THOSE, BUT WE DO HAVE TO GET THROUGH THIS DISCOVERY
14 FOR WHICH PARTIES HAVE BEEN AFFORDED LEAVE; SO IT'S GOING TO BE
15 BUSY A MONTH.
16      THOSE ARE KIND OF THE THREE GENERAL PARAMETERS THAT I
17 WANT TO USE TO RESOLVE THESE MOTIONS, AND I'D LIKE TO ENTERTAIN
18 THOUGHTS FROM WHOEVER AT THIS POINT CONCERNING THOSE.
19      MR. QUINN: I'M NOT GOING TO ARGUE. I'M JUST GOING
20 TO MAKE OBSERVATIONS.
21      MR. NOLAN: YOUR HONOR, I WAS GOING TO ARGUE, SO
22 MAYBE --
23      THE COURT: I'LL LET MR. QUINN GO FIRST. IT IS HIS
24 APPLICATION.
25      YOU'LL HAVE THE LAST WORD, MR. NOLAN.

Page 29

1  MR. QUINN: I UNDERSTAND WHAT THE COURT HAS SAID, AND
2  WE'LL BE TAKING THESE UP WITH JUDGE INFANTE.
3       THE ONLY REASON WE WERE HERE WAS, THERE'S A COUPLE OF
4  THESE ISSUES THAT RELATE TO THE CONSTRUCTION OF THIS COURT'S
5  ORDER AND WHAT THE COURT MEANT.
6       ONE, THE GRONICH, THE OTHER INDIVIDUAL, THE DOCUMENT
7  RETENTION --
8       THE COURT: MR. GRONICH OR MR. TIONGCO?
9       MR. QUINN: TIONGCO.
10      I THINK IT WOULD BE HELPFUL TO THE PARTIES AND
11 JUDGE INFANTE IF THE COURT COULD SHARE WITH US ITS VIEWS ON
12 WHAT IT MEANT THERE, AS TO WHETHER THOSE WERE INCLUDED IN THE
13 JANUARY 7TH ORDER.
14      AND THEN JUST FROM A STANDPOINT OF CONSTRUCTION OF
15 THE COURT'S ORDER, WHETHER OR NOT THE COURT INTENDED, BY
16 GRANTING THAT APPLICATION FOR ADDITIONAL DISCOVERY, TO RULE
17 THAT ANY UNUSED DEPOSITION SLOTS UNDER THE ORIGINAL SCHEDULING
18 ORDER THAT HADN'T BEEN USED ARE LOST.
19      I THINK IF THE COURT CAN GIVE US AND JUDGE INFANTE
20 GUIDANCE ON THOSE TWO ISSUES, WE CAN TAKE IT FROM THERE WITH
21 JUDGE INFANTE.
22      THE COURT: WELL, LET ME ASK YOU THIS, MR. QUINN; AND
23 THIS MAY REVEAL MORE THAN I PROBABLY WANTED TO REVEAL RIGHT
24 NOW: WHEN YOU BROUGHT THAT EX-PARTE APPLICATION FOR LEAVE TO
25 TAKE THE ADDITIONAL DEPOSITIONS, WAS NOT THE PREMISE THERE THAT

FEBRUARY 4, 2008          ED CV 04-9059-SGL

Exhibit 10
Page ___345___

Page 30

1  YOU NEEDED TO TAKE ADDITIONAL DEPOSITIONS? THAT YOU HAD
2  ESSENTIALLY USED UP YOUR DEPOSITIONS AND YOU NEEDED MORE
3  DEPOSITIONS?
4       MR. QUINN:  NO.  THERE WERE DEPOSITIONS SCHEDULED.
5  WE HAD A DISCOVERY CUTOFF APPROACHING.  WE HAD A LONG LIST OF
6  PEOPLE THAT WE WANTED TO DEPOSE; WE KNEW WE WERE GOING TO BE
7  GOING OVER THE LIMIT; BUT WE, AT NO POINT -- I THINK TO THE
8  CONTRARY, YOUR HONOR, WE SAID WE HADN'T USED UP ALL OF THE
9  SLOTS.  WE JUST ANTICIPATED WE NEEDED TO GET THE CEILING
10 RAISED, KNOWING WHAT NEEDED TO BE DONE.
11      THE COURT:  FROM 24 TO 64?
12      ALL RIGHT.  VERY WELL.
13      MR. NOLAN?
14      MR. NOLAN:  THANK YOU, YOUR HONOR.
15      I THINK WITH THE COURT'S CLARIFICATION, AND, IN
16 PARTICULAR, THE CLARITY WITH RESPECT TO IF SOMETHING IS PENDING
17 IN FRONT OF JUDGE INFANTE, IT WAS NOT THE INTENT OF THIS COURT
18 TO CIRCUMVENT ALL OF THE HARD WORK THAT JUDGE INFANTE HAS DONE.
19      AND I WANT TO START WITH THAT POLICY, IF YOU WOULD,
20 AND GO TO THE ADDITIONAL DEPOSITIONS THAT WERE, WE BELIEVE, NOT
21 ORDERED BY THE JANUARY 7TH ORDER, WITH RESPECT TO DOCUMENT
22 PRESERVATION AND COLLECTION.  AND THAT'S THE GRONICH AND
23 BURKEVICH DEPOSITIONS.
24      AND THE REASON WHY, YOUR HONOR, WE DO NOT BELIEVE
25 THAT THEY WERE COVERED IN THE FIRST INSTANCE BY YOUR ORDER IS

Page 31

1  THAT IN OUR PAPERS, AS YOU WELL NOW KNOW, THIS MATTER WAS
2  BROUGHT BEFORE JUDGE INFANTE; FULLY REVIEWED BY HIM; DETERMINED
3  THAT WITH RESPECT TO ALL BUT ONE TOPIC, TOPIC 39, WE HAD
4  PRODUCED WITNESSES THAT WERE MOST KNOWLEDGEABLE AND HAD GIVEN
5  VERY THOROUGH TESTIMONY.
6       AND WITH RESPECT TO TOPIC NUMBER 39, WHICH WAS THE
7  COLLECTION TOPIC, THAT WAS THE DEPOSITION THAT HE ORDERED US TO
8  COMPLY WITH; AND WE PRODUCED MR. KHARE FOR TWO ADDITIONAL DAYS
9  ON THAT VERY SUBJECT.
10      NOW, MATTEL, NOT SATISFIED WITH JUDGE INFANTE'S
11 RULING, DOESN'T APPEAL THAT; NOW TAKES YOUR ORDER, WHERE YOU DO
12 NOT IDENTIFY OR CALL OUT GRONICH AND TRAVONAVICH {SIC}, AND
13 SAYS, 'BUT YOU REFERRED TO A TOPIC'.  AND WE RESPECTFULLY
14 SUBMIT, YOUR HONOR, AS CAREFUL AS I KNOW YOU ARE IN YOUR
15 ORDERS, THAT THAT IS STRETCHING IT, IN LIGHT OF WHAT WE'VE --
16 THE RECORD THAT WE'VE ALREADY SHOWN BEFORE JUDGE INFANTE.
17 BECAUSE MATTEL HAD NOT DEMONSTRATED TO YOU THAT THERE WAS ANY
18 INADEQUATE SHOWING OR TESTIMONY ON THE SUBJECT BY US.  IN FACT,
19 WE STEPPED UP AND WE PRODUCED ALL OF THE WITNESSES, AND
20 JUDGE INFANTE HAS BLESSED IT, EXCEPT FOR KHARE; AND WE'VE NOW
21 PRODUCED IT.
22      THERE ARE DECLARATIONS IN THIS CASE WITH RESPECT TO
23 THE PRESERVATION, COLLECTION, AND DOCUMENTATION OF THESE
24 DOCUMENTS.  I DON'T BELIEVE THAT IT'S APPROPRIATE TO ORDER THE
25 ADDITIONAL DEPOSITIONS OF GRONICH AND TRAVONAVICH {SIC}.

Page 32

1       I'M ALWAYS GOING TO MISPRONOUNCE THAT NAME.  I
2  APOLOGIZE.
3       THE COURT:  TIONGCO.
4       MR. NOLAN:  THEY'RE NOT COVERED BY THE ORDER.  AND
5  THIS SUBJECT HAS BEEN COMPLETELY ADDRESSED BY JUDGE INFANTE.
6       THE COURT:  PUTTING THAT ASIDE, WHAT IS YOUR GENERAL
7  APPROACH?
8       MR. NOLAN:  WITH RESPECT TO ANOTHER CATEGORY, AND
9  THAT IS -- YOU KNOW, WHAT IS ALSO CLEAR, I BELIEVE, AND WHAT WE
10 NEED TO LEAVE WITH TODAY -- IS THAT THE JANUARY 28TH DISCOVERY
11 CUTOFF APPLIED TO PHASE ONE --
12      THE COURT:  IT DID.
13      MR. NOLAN:  -- AND THAT WHETHER OR NOT MATTEL, FOR
14 ITS OWN CHOOSING IN THIS CASE, DECIDED FOR INTERNAL PURPOSES TO
15 DELAY PROVIDING PROPER NOTICE BEFORE THE EXPIRATION OF THE
16 DISCOVERY CUTOFF DATE, KNOWING FULL WELL WHAT THE DISCOVERY
17 CUTOFF DATE WAS, THEY SHOULD NOT BE ALLOTTED ADDITIONAL TIME
18 NOW TO TAKE THOSE DEPOSITIONS.  AND THOSE ARE MOTIONS THAT ARE
19 PENDING BEFORE JUDGE INFANTE.  AND WHEN YOU SAID MOTIONS THAT
20 ARE PENDING IN FRONT OF JUDGE INFANTE, DEALING WITH THE SERVICE
21 AND THOSE KINDS OF ISSUES, I'M ASSUMING -- AND I'M REALLY DOING
22 THIS MORE FOR THE RECORD, BECAUSE WE HAVE THIS HABIT OF NOT
23 AGREEING AFTER WE LEAVE HERE AS TO WHAT ACTUALLY OCCURRED --
24 THAT THOSE MATTERS ARE NOW BEFORE JUDGE INFANTE, AND THAT IF
25 JUDGE INFANTE, WHO HAS ESTABLISHED A RULE IN THIS CASE THAT TEN

Page 33

1  DAYS' NOTICE FOR DEPOSITIONS WAS REASONABLE UNDER THE
2  APPLICABLE RULES THAT WE WERE OPERATING UNDER, RULES THAT WERE
3  IMPOSED ON US BY MATTEL THROUGHOUT THIS GAME, THIS CASE, HAS
4  NOT CHANGED AS A RESULT OF TODAY'S ORDER.
5       THE COURT:  I'M NOT GOING TO GIVE EITHER SIDE ANY
6  SOLACE AT THIS POINT.  I DO NOT WANT TO SHORT-CIRCUIT
7  JUDGE INFANTE'S RULINGS.  AND I'M ALSO NOT GOING TO, IN ANY
8  WAY, RESTRICT EITHER SIDE FROM APPEALING JUDGE INFANTE'S
9  RULINGS TO THIS COURT.  SO I'M NOT GOING TO OPINE AT THIS POINT
10 AS TO WHETHER OR NOT I THINK THE TEN-DAY NOTICE IS REASONABLE
11 OR NOT REASONABLE, IS APPLICABLE OR SHOULD NOT BE APPLICABLE.
12 ALL I'M SAYING AT THIS POINT IS -- AND PRECISELY TO AVOID
13 GETTING INVOLVED IN TRYING TO SHORT-CIRCUIT JUDGE INFANTE'S
14 WORK, I'M JUST GOING TO PERMIT THAT TO PROCEED.
15      JANUARY 28TH WAS THE CUTOFF FOR PHASE ONE DISCOVERY.
16 ON JANUARY 7TH, WHEN I GAVE LEAVE FOR THOSE ADDITIONAL
17 DEPOSITIONS, APPROXIMATELY 40 ADDITIONAL DEPOSITIONS, I
18 CERTAINLY -- AND I THINK I MADE THIS PRETTY CLEAR IN THE
19 ORDER -- ENVISIONED THOSE TO BE DONE IN THE MONTH OF JANUARY.
20      I DID INDICATE, CERTAINLY IF THE PARTIES WANTED TO
21 STIPULATE, THAT THEY COULD CONTINUE THIS UNTIL FEBRUARY.  AND
22 CERTAINLY FOR ANYTHING THAT WAS PROPERLY NOTICED OR PROPERLY
23 SERVED DURING THE MONTH OF JANUARY, BEFORE THE CUTOFF, AT LEAST
24 FROM THIS COURT'S PERSPECTIVE AT THIS POINT IN TIME, THAT MAY
25 HAVE TO PROCEED INTO FEBRUARY.

FEBRUARY 4, 2008          ED CV 04-9059-SGL

Exhibit 10
Page ___346___

Page 34

1    I UNDERSTAND THERE'S CHALLENGES TO THOSE SERVICES,
2  THERE'S CHALLENGES TO THOSE NOTICES; THAT NEEDS TO BE BROUGHT
3  TO JUDGE INFANTE; AND THEN, IF NECESSARY, APPEALED TO THIS
4  COURT.  BUT AT THE END OF THE DAY, THE ONLY LIMITATION I'M
5  PUTTING ON WHAT'S BEING CONSIDERED BY JUDGE INFANTE AND WHAT
6  WILL BE CONSIDERED BY THIS COURT OVER THE COURSE OF THE NEXT
7  TWO MONTHS IS THAT WE'RE JUST GOING TO LOOK AT PHASE ONE
8  ISSUES.
9    MR. NOLAN:  RIGHT.
10   AND I APOLOGIZE, YOUR HONOR.  I WASN'T TRYING TO BE
11 CLEVER AND GET -- BUT YOUR COMMENTS DO INVITE THIS FOLLOW-UP:
12   WHAT I AM SAYING IS THAT THE MOTIONS THAT ARE BEFORE
13 JUDGE INFANTE, WITH RESPECT TO WHETHER OR NOT TWO-DAY NOTICE IS
14 APPROPRIATE IN JANUARY, IS AN ISSUE TO BE DECIDED BY
15 JUDGE INFANTE.  WE RESERVE THE RIGHT TO TAKE AN APPEAL TO
16 YOUR HONOR, DEPENDING ON WHO WINS OR LOSES THAT ISSUE.  THAT'S
17 ALL I WAS TRYING TO SAY.
18   THE COURT:  THAT'S FINE.
19   MR. NOLAN:  SO I UNDERSTOOD THAT CATEGORY APPLIES TO
20 THOSE PEOPLE.
21   THE COURT:  AND I'M SURE JUDGE INFANTE WILL CONSIDER
22 THAT IN LIGHT OF THE TOTALITY OF THE CIRCUMSTANCES AND HE WILL
23 ISSUE WHATEVER ORDER HE BELIEVES IS APPROPRIATE; AND THE LOSING
24 SIDE CAN APPEAL TO THIS COURT.
25   MR. NOLAN:  BY THE WAY, ON ONE PIECE OF NEWS, WE WERE

Page 35

1  ABLE TO, IN CERTAIN INSTANCES, STIPULATE WITH RESPECT TO
2  DEPOSITIONS.  IN FACT, THE DEPOSITION OF FRED LARIAN IS GOING
3  ON TODAY; AND WE'VE AGREED THAT IT WOULD STILL APPLY TO PHASE
4  ONE.
5    SO THERE WERE INSTANCES WHERE WE BELIEVED IT WAS
6  APPROPRIATE AND NOBODY WAS TRYING TO SHOVE PHASE TWO INTO PHASE
7  ONE.  WE'VE WORKED THOSE DIFFERENCES OUT.
8    I WANT TO TURN NOW TO WHAT I WOULD DESCRIBE AS THE
9  CATEGORY OF THREE: MS. MORALES, MS. CABRERA; AND THE LAST ONE
10 IS SALAZAR.
11   THE COURT:  AND MEL WOODS.
12   MR. NOLAN:  AND MEL WOODS IS IN THIS CATEGORY.
13   THE COURT:  RIGHT.
14   MR. NOLAN:  NOW, THERE IS NO DISPUTE THAT EACH ONE OF
15 THESE PEOPLE WERE KNOWN TO MATTEL, CERTAINLY BY THEIR OWN
16 ADMISSION, AS OF DECEMBER 28TH.  THEY WERE KNOWN AT THE TIME OF
17 THE JANUARY 7TH HEARING.  MATTEL DOES NOT CHOOSE AT THAT TIME
18 TO INCLUDE THEM IN THE LIST, DOES NOT REQUEST AND DOES NOT
19 ACCELERATE THE REQUEST, IF THEY DECIDED TO TAKE THESE
20 DEPOSITIONS.
21   AS WE LAY OUT IN THE PAPER, IN A PRETTY SORRY AND, WE
22 THINK, VERY SAD SET OF CIRCUMSTANCES, TRAGIC, TO BE HONEST WITH
23 YOU, YOUR HONOR, NOW --
24   THE COURT:  ADMITTEDLY, I HAVEN'T READ THE REPLY TO
25 THAT, BUT AS YOU LAY IT OUT, IT WAS UNUSUAL, IF NOTHING ELSE.

Page 36

1    MR. NOLAN:  YOUR HONOR, THERE'S A LOT OF TRAGEDIES IN
2  THIS CASE.  I WILL GO A LONG WAY THINKING THAT HISPANIC WOMEN,
3  RAISING CHILDREN -- ONE OF WHICH IS IN MEDICAL SCHOOL -- HER
4  HUSBAND, A MENTAL PATIENT -- IS FIRED BECAUSE SHE SEWED AN A
5  CONCRETE FLOOR, NOT KNOWING WHAT SHE WAS SEWING UNTIL SOME
6  POINT IN TIME DOWN THE ROAD, NOW HAS TO LOSE HER JOB.
7    BUT SETTING THAT ASIDE -- AND ALSO BEING QUESTIONED
8  BY MR. DE ANDA, WHO HE HIMSELF HAS ADMITTED THAT HE MOONLIGHTS
9  AS AN EXPERT WITNESS ON THE SIDE.  IT'S A TRAGIC IRONY IN THIS
10 CASE.
11   BUT THE POINT HERE IS, YOUR HONOR, MATTEL
12 UNILATERALLY WORKED THE CLOCK THE WAY THEY CHOSE TO DO SO.
13 THEY INTERVIEWED THESE WOMEN -- I'M NOW TALKING ABOUT CABRERA
14 AND MORALES -- WITHOUT COUNSEL; BROUGHT THEM IN; SUBJECTED THEM
15 TO, IN CABRERA'S INSTANCE, A VERY LENGTHY INTERVIEW, THAT WE'VE
16 NOW BEEN PROVIDED THE AUDIOTAPE OF.  THEY CONDUCTED A SEARCH OF
17 HER HOUSE, WITH A WOMAN WHO CAN BARELY SPEAK ENGLISH ASKING
18 THAT THE INTERVIEW BE CONDUCTED IN SPANISH.  THEY REFUSE IT.
19 BUT THIS IS ALL ON THEIR OWN TIME.  THEY MAKE A CHOICE.
20   THEN, YOUR HONOR, AFTER THEY'VE COMPLETELY
21 INTERVIEWED THESE PEOPLE, FIRED THEM AND DEALT WITH WHATEVER
22 THEY WANT, THEY THEN, ON THE 22ND OR 23RD, TRY TO GO OUT AND
23 SERVE THE DEPONENTS.  THE DEPONENT GETS COUNSEL.  COUNSEL IS
24 PRESENT IN THE COURTROOM TODAY.  THAT COUNSEL SAYS, 'WE'RE NOT
25 GOING TO SIT FOR A DEPOSITION' -- WORDS TO THE EFFECT, 'WE'RE

Page 37

1  NOT GOING TO SIT FOR A DEPOSITION ON ONE OR TWO DAY'S NOTICE.
2  THAT'S NOT REASONABLE.  AND, MORE IMPORTANTLY, YOU'VE GOT TO
3  GIVE DOCUMENTS,' AND STUFF LIKE THAT.
4    SO MATTEL JUST RAN OUT THE CLOCK, YOUR HONOR.  IF
5  THAT WAS PHASE ONE, THEY KNEW IT.  THEY UNILATERALLY DECIDED
6  NOT TO INCLUDE IT IN THE LIST THAT THEY SUBMITTED TO YOUR
7  HONOR.  THEY WAITED UNTIL TWO OR THREE DAYS BEFORE THE END OF
8  THE DEPOSITION.  THAT'S PENDING IN FRONT OF JUDGE INFANTE.
9    THE COURT:  AND YOUR PRIMARY ARGUMENT THERE,
10 THOUGH -- I READ ALL OF THE INFORMATION YOU PROVIDED ABOUT THE
11 CIRCUMSTANCES OF THE INTERROGATION, OR THE INTERVIEW OR THE
12 WHATEVER IT WAS.  BUT YOUR ARGUMENT GOES BACK TO THIS NUMBER
13 COUNTING THING, WHETHER OR NOT THEY HAD THE ADDITIONAL SIX THAT
14 THEY CLAIMED.  AND IF THEY DID, THEN THEY NOTICED THEM BEFORE
15 THE CUTOFF.  IF THEY DON'T, THEN THEY DIDN'T.
16   MR. NOLAN:  THAT'S ONE ARGUMENT.
17   AND THEN THE SECOND ARGUMENT -- AND WE THINK THE
18 COUNT IS VERY SIMPLE.  THEY HAD 22 DEPOSITIONS IN THE BAG.
19 THEY HAD TWO MORE THAT WERE SET AT THE TIME WE CAME BEFORE YOU
20 ON JANUARY 7TH.  WE MADE THESE ARGUMENTS CONSISTENTLY, AND I AM
21 STRUCK BY THE FACT THAT WE HAD TO COME IN HERE WHEN THEY STILL
22 HAD DEPOSITIONS ON THE TABLE, APPARENTLY BY THEIR COUNT, AND
23 SAY, 'OH, NOW WE NEED ADDITIONAL DISCOVERY.'  I THINK THEY'RE
24 TRYING TO REINTERPRET WHAT THEIR POSITIONS WERE ORIGINALLY.
25   NEVERTHELESS, THEY WERE OUT OF DEPOSITIONS EXCEPT FOR

10 (Pages 34 to 37)

Page 38

1  WHAT YOU ORDERED ON THE JANUARY 7TH DATE.
2      THAT'S OUR FIRST ARGUMENT.
3      THE SECOND ARGUMENT, HOWEVER, YOUR HONOR, IS THAT
4  EVEN IF THEY'RE RIGHT AND THEY HAD THE OPTION OF TAKING
5  ADDITIONAL DEPOSITIONS, THEY WELL KNEW OF THESE INDIVIDUALS AND
6  THEY COULD HAVE PROVIDED PROPER NOTICE.
7      THE COURT:  THIS GETS BACK TO JUDGE INFANTE'S
8  POSITION OF THE TEN DAYS.
9      MR. NOLAN:  YES.
10     THE COURT:  AND, AGAIN, THAT'S NOT -- NO.  I
11 UNDERSTAND THAT THAT'S --
12     MR. NOLAN:  THAT'S THE OTHER POINT.
13     THE COURT:  YOU SAID YOU WERE ADDRESSING A THIRD
14 AREA.
15     THE ONE I'D LIKE YOU TO ADDRESS -- AND I'LL PROBABLY
16 NEED TO HEAR MORE FROM MR. QUINN OR MR. COREY ON THIS -- IS
17 THOSE THAT WERE NOT SERVED WITH SUBPOENAS AND ARE NOT THE TYPE
18 OF DEPONENT THAT CAN BE -- THERE'S A CATEGORY THAT APPEARS TO
19 HAVE BEEN EXPIRED.
20     MR. NOLAN:  RIGHT.  LET ME ADDRESS THAT.
21     YOU KNOW, THERE ARE CONSEQUENCES.
22     I THINK I CAN QUOTE THIS, BECAUSE IT WAS MR. ZELLER
23 WHO SAID, AND IF MR. QUINN SAYS THIS IS NOT HIS REACTION -- WE
24 BOTH HAVE THE SAME REACTION TO YOUR ORDER.  BOTH OF US VIEWED
25 THE ORDER AND TOLD OUR RESPECTIVE COLLEAGUES, THIS IS AN EDICT

Page 39

1  OF MUTUAL SELF-DESTRUCTION, ASSURED SELF-DESTRUCTION, IN TERMS
2  OF THE AMOUNT OF EFFORT THAT WAS REQUIRED BY ALL OF US.
3      WE SAW THAT -- WE THOUGHT WHAT YOU WERE SAYING IS,
4  'YOU KNOW, IF YOU, MGA, IF YOU ARE REALLY TELLING ME YOU NEED
5  TO TAKE TEN DEPOSITIONS, THEN STEP UP AND DO WHAT IS REQUIRED
6  TO TAKE THOSE DEPOSITIONS.  GOD BLESS YOU IF YOU CAN DO IT.  IF
7  YOU CAN'T, SO BE IT.'  BUT I UNDERSTOOD THAT, IN A SENSE, YOU
8  WERE REALLY CALLING MY BLUFF IN THE SENSE OF WHETHER OR NOT I
9  NEEDED THOSE TEN.  WE NEEDED THOSE TEN.
10     WE PLAYED WITH THE UNDERSTANDING THAT JULY 28TH DATE
11 WAS GOING TO HOLD.
12     THE COURT:  JANUARY 28TH.
13     MR. NOLAN:  I'M SORRY.  JANUARY 28TH.
14     MATTEL, ON THE OTHER HAND, YOUR HONOR, NOW WANTS -- I
15 THINK THEY INTERPRETED IT THE SAME AWAY, BUT THEY DID NOT USE
16 REASONABLE MEANS TO GO OUT AND ENSURE THAT THEY COULD NOTICE UP
17 AND TAKE THE DEPOSITIONS.
18     NOW THEY WANT ADDITIONAL TIME TO DO THAT.
19     I DON'T THINK THAT'S FAIR, YOUR HONOR.  FIRST OF ALL,
20 I DON'T THINK IT'S FAIR.  I THINK YOUR ORDER WAS QUITE CLEAR ON
21 IT.
22     THE COURT:  COUNSEL, I DON'T DISAGREE WITH YOU ON
23 THAT, SO PERHAPS I SHOULD BE HEARING FROM MR. QUINN ON THIS.
24     MR. NOLAN:  BUT I'M GOING TO RAISE ONE THING THAT I
25 THINK HE'S GOING TO ANTICIPATE.  AND THAT IS -- AND IT'S JUST

Page 40

1  AN OBSERVATION; IT'S NOT PART OF MY ARGUMENT.
2      THE COURT:  ALL RIGHT.  VERY WELL.
3      MR. NOLAN:  HE MIGHT SAY, 'GEE, YOU KNOW, IN THE
4  BEGINNING OF THE LITIGATION, THE O'MELVENY FIRM SAID, "IF YOU
5  WANT TO CONTACT CERTAIN PEOPLE"' -- NOW, THIS IS NOT ALL OF THE
6  CATEGORY -- '"CALL US FIRST".'
7      YOUR HONOR, THAT IS A RED HERRING IN THIS CASE,
8  BECAUSE WHETHER OR NOT O'MELVENY AND MEYERS SAID THAT, YOU ONLY
9  HAVE TO GO TO THE JANUARY 7TH HEARING, WHEN WE WERE FACED WITH
10 SOMETHING SIMILAR, AND THAT IS -- YOU RECALL AT THE VERY END,
11 THERE WAS A DISCUSSION ABOUT THE ACCEPTANCE OF SUBPOENAS, AND
12 YOU SAID, 'I DON'T HAVE THAT IN FRONT OF ME.'
13     WELL, YOUR HONOR, IT WAS TRUE, IT WAS NOT IN FRONT OF
14 YOU.  AND ALTHOUGH WE COULD NOT TALK TO THEIR PEOPLE, BECAUSE
15 THEY WERE REPRESENTED BY QUINN EMANUEL, QUINN EMANUEL WOULD NOT
16 ACCEPT SERVICE.  WE HAD TO GO OUT, LOCATE THE PEOPLE, RETAIN
17 SERVICE PROCESSORS, AND GET THEM SERVED.
18     THERE WAS NO GAME-PLAYING HERE.  ALL WE WERE DOING AT
19 ALL TIMES WAS APPLYING THE RULES OF ENGAGEMENT THE WAY THEY
20 WERE BEING APPLIED AGAINST US; AND I IMPLORE YOU, YOUR HONOR,
21 TO DO THE SAME.
22     THE COURT:  COUNSEL, I GUESS THE ONLY THING THAT I DO
23 TAKE EXCEPTION TO -- WHEN STIPULATIONS ARE ENTERED INTO BETWEEN
24 PARTIES, THEY'RE ENTERED INTO BETWEEN THE PARTIES; THROUGH
25 THEIR ATTORNEYS, BUT IT'S BETWEEN THE PARTIES.  SO TO THE

Page 41

1  EXTENT THAT YOUR CLIENT ENTERED INTO AN AGREEMENT THROUGH
2  O'MELVENY & MYERS, THAT APPLIES TO YOUR PARTY.  AND THE FACT
3  THAT THEY HAVE REPLACED O'MELVENY & MYERS WITH SKADDEN ARPS,
4  YOURSELF, THAT DOESN'T EVISCERATE THE AGREEMENT.
5      I'M NOT SAYING WHETHER THIS IS GOOD OR NOT.  THIS IS
6  A GENERAL PRINCIPAL.  I DON'T KNOW HOW IT APPLIES.  BUT THIS IS
7  THE TYPE OF THING THAT IF THERE'S A DISPUTE OVER WHETHER OR NOT
8  A DEPOSITION WAS PROPERLY NOTICED OR PROPERLY SERVED, PURSUANT
9  TO AN AGREEMENT OR OTHERWISE, AGAIN, THAT GOES TO
10 JUDGE INFANTE.
11     MR. NOLAN:  IN PRINCIPAL, YOUR HONOR, I AGREE WITH
12 YOU, AND I DON'T BELIEVE THERE'S BEEN AN INSTANCE WHERE WE HAVE
13 STEPPED BACK FROM ANYTHING THAT O'MELVENY COMMITTED TO.
14     ALL I'M SAYING IS THAT IN REGARDS TO -- AND MAYBE I
15 SHOULDN'T HAVE MADE THIS OBSERVATION; IT'S NOT GOING TO MAKE
16 THIS ARGUMENT -- BUT ALL MY POINT IS, YOUR HONOR, IS THAT THAT
17 WAS NOT AN AGREEMENT OR A STIPULATION TO ACCEPT SERVICE OF A
18 DEPOSITION ON THREE MONTH'S NOTICE OR TWO DAY'S NOTICE.
19     AND THE SAME RULE HAS BEEN APPLIED BY MATTEL TO US,
20 AS EVIDENCED BY THE LAST TIME WE WERE BEFORE YOU.
21     I PROBABLY HAVE LEFT OUT SOME OF THE CATEGORIES OF
22 INDIVIDUALS, BUT I THINK THAT GIVEN THE OVERVIEW THAT THE COURT
23 HAS PROVIDED TO US, I THINK WE HAVE A GOOD UNDERSTANDING AS TO
24 WHAT'S LEFT; AND WE'LL COOPERATE.
25     THE COURT:  I THINK IT ADDRESSES -- EXCEPT FOR THIS

FEBRUARY 4, 2008                    ED CV 04-9059-SGL

Exhibit 10
Page ___348___

Page 42

1  CATEGORY NUMBER THREE, THE NOT-SERVED -- THOSE POTENTIAL
2  DEPONENTS WHO HAVE NOT BEEN SERVED WITH A SUBPOENA. IT
3  ADDRESSES THE THIRD-PARTY DEPONENTS; IT ADDRESSES THE
4  OUT-OF-COUNTRY.
5       MR. NOLAN:  THERE'S ONE THAT I DID NOT ADDRESS, YOUR
6  HONOR; AND I APOLOGIZE. EVERYTHING SEEMS, AT THIS LEVEL, TO BE
7  VERY CLEAR. WHEN YOU DROP DOWN, LIKE, TWO FEET, YOU'LL SEE
8  WHAT THE TROUBLE IS.
9       THERE WAS AN ISSUE THAT MR. QUINN ASKED CLARIFICATION
10 ON, AND THAT HAD TO DO WITH -- YOU ORDERED THESE 30(B)(6)
11 WITNESSES, SO, MY GOSH, THEY SHOULD SIT FOR THEM, AND THEN HE
12 CONCEDED THAT MGA, MEXICO IS REALLY PHASE TWO ISSUES, BUT
13 THERE'S OUTSTANDING -- YOU ORDERED A 30(B)(6) DEPOSITION
14 AGAINST MGA.
15      YOUR HONOR, THERE WERE 161 CATEGORIES SET FORTH IN
16 THAT 30(B)(6).  WE DID NOT BELIEVE, BECAUSE THAT WAS NOT THE
17 OPPORTUNITY OF THE JANUARY 7TH HEARING, TO GO THROUGH WHAT
18 TYPICALLY WOULD OCCUR AND SAY 161 CATEGORIES ON THE LAST MONTH
19 OF TRIAL SEEMS A LITTLE BIT LARGE.
20      THAT MATTER IS PENDING BEFORE JUDGE INFANTE IN TERMS
21 OF WHERE WE OBJECTED, BECAUSE THEY'VE EITHER BEEN DUPLICATIVE;
22 THEY'RE NOT THE RIGHT TOPICS FOR 30(B)(6) AS APPLIED TO THE
23 RULES IN THIS CASE. THAT MATTER IS PENDING BEFORE
24 JUDGE INFANTE.
25      AND I WANT TO BE ABSOLUTELY CLEAR, WITHOUT PREVIEWING

Page 43

1  THE OUTCOME OF IT, THAT IT'S UNDERSTOOD, AS WE WALK OUT OF
2  HERE, THAT THAT MOTION IS IN FRONT OF JUDGE INFANTE. HE CAN
3  RULE ON IT HOWEVER HE MAY WISH. WE MAY COME BACK TO YOU. BUT
4  THAT WE'RE NOT WALKING OUT OF HERE COMMITTED AND ORDERED TO SIT
5  FOR A 30(B)(6) ON 161 TOPICS. THAT'S THE POINT.
6       AND MY ONLY LAST COMMENT, YOUR HONOR, WAS WITH
7  RESPECT TO THIS --
8       THE COURT:  COUNSEL, LET ME STOP YOU RIGHT THERE.
9       I DID ORDER THE 30(B)(6) DEPOSITION TO GO FORWARD.
10 THERE WAS NO CHALLENGE AT THE TIME TO THE TOPICS. I UNDERSTAND
11 YOU NOW HAVE A CHALLENGE BEFORE JUDGE INFANTE; AND HE'LL
12 RESOLVE THAT. THAT'S WHERE WE'RE AT.
13      MR. NOLAN:  RIGHT. EXACTLY, YOUR HONOR, BECAUSE THE
14 HEARING THAT WE HAD ON MOTIONS JUST TO EXTEND WAS NOT -- WE DID
15 NOT -- AND NOBODY DISCUSSED IT AT THE TIME, NOR WAS IT FRAMED
16 THAT WAY. TO NOW START ATTACKING THE VARIOUS SUBTOPICS --
17      THE COURT:  FAIR ENOUGH. THAT'S BEFORE JUDGE INFANTE
18 RIGHT NOW, AND I'M NOT GOING TO OPINE ON THAT.
19      MR. NOLAN:  YOUR HONOR, THE LAST CATEGORY THAT I WANT
20 TO MAKE CERTAIN I'VE MADE MY POINT CLEAR ON; AND THAT IS THAT
21 CATEGORY THAT WAS ORDERED BUT NOT SERVED WITHIN THE PROPER
22 TIME, FOR WHATEVER REASON.
23      THE COURT:  RIGHT.
24      MR. NOLAN:  SINCE WE ALL WATCHED THE GAME YESTERDAY,
25 HERE'S THE ANALOGY THAT I WOULD USE:

Page 44

1  I BET YOU THAT TOM BRADY AND THE PATRIOTS WOULD HAVE
2  LOVED TO HAVE HAD ONE MORE SHOT. BUT, YOU KNOW, THE RULES WERE
3  THAT THE TIME ENDED IN THE FOURTH QUARTER.
4       YOU SET A VERY CLEAR RULING ON JANUARY 28TH; IF THESE
5  PEOPLE WERE NOT SERVED -- AND WE COOPERATED. WE SAID WHENEVER
6  -- AND IF YOU CAN SERVE THEM, WE'LL MAKE OURSELVES AVAILABLE.
7  WE HAD 12 TRACKS OF DEPOSITIONS ON THE 28TH, YOUR HONOR. FOR
8  WHATEVER REASON, MATTEL CHOSE NOT TO TRY TO GET THOSE PEOPLE
9  SERVED QUICKER. WE THINK IT'S BECAUSE THEY DECIDED THAT MAYBE,
10 IN THE GRAND SCHEME OF THINGS, IT WASN'T RELEVANT.
11      SO I SUBMIT ON THAT, YOUR HONOR.
12      THE COURT:  THANK YOU, COUNSEL.
13      MR. QUINN?
14      MR. QUINN:  YOUR HONOR, WE SET FORTH IN OUR PAPERS
15 THE EFFORTS THAT WE MADE TO SERVE THOSE PEOPLE. THE COURT WILL
16 EITHER FIND THOSE ADEQUATE AND THAT WE SHOULD GET A CHANCE TO
17 TRY FURTHER, OR THE COURT WON'T. BUT IT WASN'T LIKE WE SAT
18 ON -- THOSE PEOPLE WERE LISTED IN THE ORDER, AND WE DID TRY,
19 AND WE PUT BEFORE THE COURT --
20      THE COURT:  I RECOGNIZE THAT YOU TRIED. I DID READ
21 THOSE. BY RULING THAT THE JANUARY 28TH CUTOFF DATE IS A CUTOFF
22 DATE, I'M NOT SUGGESTING THAT YOU DIDN'T TRY.
23      MR. QUINN:  RIGHT.
24      THE COURT:  IT IS WHAT IT IS.
25      I SUSPECT, AS WE GO FORWARD IN THE NEXT MONTH AND A

Page 45

1  HALF, I'M SURE THERE'S ALL KINDS OF ADDITIONAL DISCOVERY THAT A
2  NUMBER OF PARTIES WOULD LIKE TO BE ABLE TO TAKE. IT'S GOING TO
3  BE THE WAY IT IS IN THIS CASE. GIVEN ITS NATURE, GIVEN THE
4  BREADTH OF IT, WE COULD PROBABLY DO DISCOVERY FOR YEARS AND
5  STILL WANT MORE.
6       MR. QUINN:  ALL GOOD THINGS HAVE TO COME TO AN END.
7  WE UNDERSTAND THAT, YOUR HONOR.
8       THE COURT:  AND EVEN NOT SO GOOD THINGS.
9       MR. QUINN:  EVEN NOT SO GOOD THINGS.
10      BUT THESE ARE INDIVIDUALS WHERE -- YOU KNOW, WE MADE
11 A SHOWING, THE COURT SAID, 'OKAY, THERE'S GOOD CAUSE.'
12      THE COURT:  I DID. AND I GAVE YOU A DEADLINE,
13 THOUGH; THAT DEADLINE HAS COME AND GONE.
14      MR. QUINN:  IN THE CASE OF MR. MCFARLAND, YOUR HONOR,
15 WE HAVE A LAWYER WHO -- YOU KNOW, I WAS ALWAYS BROUGHT UP THAT
16 LAWYERS SHOULD NOT EVADE SERVICE, AND IF SOMEBODY CONTACTS YOU
17 AND SAYS, 'I HAVE A' -- WE SENT THE MAN AN E-MAIL, AND HE
18 OPENED IT. I THINK A LAWYER IS IN A DIFFERENT CATEGORY. AND
19 HE'S GOT THREE CLIENTS WHO SOMEHOW WE COULDN'T TRACK DOWN
20 EITHER. I DON'T KNOW, MAYBE THAT SHOULD BE TREATED
21 DIFFERENTLY.
22      THE COURT:  I UNDERSTAND YOUR FRUSTRATION, COUNSEL.
23      MR. QUINN:  YOUR HONOR, JUST TO RESPOND TO
24 MR. NOLAN'S COMMENTS ABOUT HOW WE WOULDN'T ACCEPT SERVICE AND
25 APPLY THE SAME RULE. REMEMBER THAT MOMENT AT THE END OF THE

12 (Pages 42 to 45)

Exhibit 10
Page _____ 349

Page 46

1 LAST HEARING?
2     WE SAID WE COULDN'T ACCEPT SERVICE BECAUSE WE HADN'T
3 SPOKEN TO THE INDIVIDUALS.  WE ENDED UP ACCEPTING EIGHT OUT OF
4 THE TEN.  THE TWO WE DIDN'T ACCEPT FOR, WE COULDN'T FIND.  SO
5 ANY SUGGESTION THAT WE DIDN'T COOPERATE, THAT'S -- WE'RE
6 ACCUSED -- THE POT CALLING THE KETTLE BLACK SIMPLY ISN'T
7 ACCURATE HERE.
8     WOODS, CABRERA, MORALES, SALAZAR.
9     THE COURT:  YES.
10    MR. QUINN:  NOW WE HAVE TO GO BACK TO DECEMBER, WHEN
11 THE COURT ORDERED VICTORIA MARLOW TO SIT FOR DEPOSITION.  AND
12 VICTORIA MARLOW'S COUNSEL WANTED IT TO BE IN JANUARY.  THERE'S
13 A DISCUSSION, 'WE NEED TO DO IT SOONER BECAUSE WE DON'T KNOW
14 WHAT WE'RE GOING TO FIND OUT IN VICTORIA MARLOW'S DEPOSITION.'
15    THE COURT:  AND I UNDERSTAND WHAT YOU FOUND OUT.
16    MR. QUINN:  IN THE MEANTIME, WE HAD ALREADY FILED,
17 HAD ON CALENDAR, THE MOTION FOR ADDITIONAL DISCOVERY, AND WHEN
18 I WAS BEFORE THE COURT ON JANUARY 7TH, I SAID, YOUR HONOR, WE
19 TOOK MARLOW'S DEPOSITION AFTER THIS MOTION WAS FILED, AND WE
20 LEARNED ABOUT WOODS, CABRERA, MORALES, AND SALAZAR; SO THAT'S
21 WHY THEY ARE NOT IDENTIFIED IN OUR PAPERS.
22    BUT I RELATED THAT TO THE COURT.  AND I SAID, 'THESE
23 ARE PEOPLE THAT, OBVIOUSLY, WE NEED TO DEPOSE.  THIS IS PRETTY
24 AMAZING THAT THERE ARE THREE OTHER MATTEL EMPLOYEES WHO HAVE
25 BEEN WORKING ON BRATZ.'

Page 47

1     AT THE END OF THE DAY, THOUGH, YOUR HONOR, I THINK
2 THAT DOES COME DOWN TO A QUESTION OF COUNTING.  IF WE DIDN'T
3 HAVE THE NUMBER OF UNUSED DEPOSITIONS UNDER THE ORIGINAL
4 SCHEDULING ORDER, I WOULD BE ASKING THE COURT -- BECAUSE I
5 THINK THERE IS GOOD CAUSE -- TO TAKE THOSE DEPOSITIONS, BECAUSE
6 THEY ARE SO CENTRAL TO THE CASE.
7     THE COURT:  YOU WOULD HAVE ASKED THE COURT.
8     MR. QUINN:  I WOULD HAVE ASKED THE COURT.
9     THE COURT:  I DO WANT TO GIVE YOU AN OPPORTUNITY TO
10 RESPOND.  I HAVEN'T READ THE REPLY, AND MAYBE THE RESPONSE IS
11 IN THERE; BUT THERE HAVE BEEN SOME PRETTY SERIOUS ALLEGATIONS
12 MADE CONCERNING THE MANNER OR QUESTIONING THESE WITNESSES.  I'D
13 LIKE TO GIVE YOU A CHANCE TO RESPOND TO THAT.
14    MR. QUINN:  WELL, I WASN'T INVOLVED IN DOING THE
15 REPLY TO THAT.  THE COURT HAS THE REPLY FOR THE COURT.  WE HAVE
16 A VERY DIFFERENT PERSPECTIVE ON WHAT HAPPENED THERE.
17    THE COURT:  COULD SOMEONE SPEAK TO THAT FROM MATTEL
18 WHO'S PRESENT?
19    MR. COREY:  I ACTUALLY CAN'T.
20    MR. QUINN:  HE CAN'T.
21    BUT, YOUR HONOR, THESE ARE INDIVIDUAL -- SUPPOSE THEY
22 HAD NOT BEEN TERMINATED, YOUR HONOR.  SUPPOSE THEY HAD NOT BEEN
23 TERMINATED.  MGA WOULD BE TELLING US, 'YOU TOLERATE
24 MOONLIGHTING; NOT JUST ANY MOONLIGHTING; WE TOLERATED PEOPLE
25 WORKING ON BRATZ.'

Page 48

1     THINK ABOUT IT FOR A MOMENT.
2     THEY'RE SAYING IT WAS OKAY FOR CARTER BRYANT --
3     THE COURT:  I DON'T THINK ANYONE FAULTS THE
4 TERMINATION ITSELF; IT'S MORE THE MANNER IN WHICH IT ALL CAME
5 ABOUT.
6     MR. QUINN:  I CAN'T GET INTO THE -- I CAN'T DISCUSS
7 THE DETAILS OF THAT, YOUR HONOR.  I CAN'T RESPOND TO THOSE
8 SPECIFIC ALLEGATIONS, BECAUSE I'M JUST NOT FAMILIAR WITH THEM.
9     THERE IS A REPLY ON THAT ISSUE.
10    WE CAN, ON MONDAY, WHEN WE'RE GOING TO BE BACK, IF
11 THE COURT WISHES TO HEAR ABOUT THAT.
12    THE COURT:  YOU MIGHT WANT TO HAVE A RESPONSE
13 PREPARED.  I'LL TAKE A LOOK AT THE PAPERS ON THAT.
14    MR. QUINN:  ALL RIGHT.
15    THE COURT:  OTHERWISE, IT'S CLEAR WHERE I'M GOING
16 WITH THIS, TO YOU?
17    MR. QUINN:  NOT ENTIRELY.
18    THE COURT:  ALL RIGHT.  WHICH PART OF IT IS NOT
19 CLEAR?
20    MR. QUINN:  THE COUNTING ISSUE, YOUR HONOR.  I THINK
21 WE DO NEED SOME GUIDANCE ABOUT WHETHER -- IF WE TOOK A
22 DEPOSITION --
23    THE COURT:  THAT COUNTS AS ONE.
24    MR. QUINN:  IF WE TAKE A DEPOSITION THAT WE GOT LEAVE
25 TO TAKE THAT WAS ON THE LIST AS A RESULT OF THE JANUARY 7TH

Page 49

1 ORDER, DOES THAT COUNT AGAINST THE ORIGINAL 24?
2     WE'VE BEEN TOLD THAT IF WE TAKE A DEPOSITION THAT WAS
3 ON THAT LIST, THAT COUNTS AGAINST THE ORIGINAL 24.
4     THE COURT:  THE COURT GRANTED YOU LEAVE TO TAKE
5 ADDITIONAL DEPOSITIONS.
6     MR. QUINN:  BUT I'M ASSUMING THAT MEANS THEY WERE IN
7 ADDITION TO THE 24.
8     THE COURT:  I TRUST JUDGE INFANTE WILL BE ABLE TO
9 TAKE THE COURT'S ORDER, GRANTING YOU LEAVE TO TAKE ADDITIONAL
10 DEPOSITIONS, AND THEN DETERMINE HOW MANY OTHER DEPOSITIONS YOU
11 HAVE TAKEN, ADD THEM UP, AND SEE IF YOU HAVE ANY ADDITIONAL
12 ONES, SO AS TO AFFORD YOU THE ABILITY TO HAVE NOTICED THE
13 DEPOSITIONS OF THESE FOUR INDIVIDUALS: MS. CABRERA,
14 MS. MORALES, MS. SALAZAR, AND MR. WOOD.
15    MR. QUINN:  IS IT OUT OF LINE, YOUR HONOR, FOR ME TO
16 ASK WHETHER THE COURT IS SAYING THAT THOSE ARE ADDITIONAL TO
17 THE 24?  THAT'S A VERY BASIC ISSUE THAT WE'VE HAD DISAGREEMENT
18 ON.
19    THE COURT:  THE ORDER GAVE YOU LEAVE TO TAKE
20 ADDITIONAL DEPOSITIONS.
21    I DON'T KNOW WHAT ELSE IT WOULD BE OTHER THAN
22 ADDITIONAL TO THE 24.
23    MR. QUINN:  ALL RIGHT.
24    THE COURT:  DO YOU DISAGREE WITH THAT, MR. NOLAN?
25    I MEAN, I UNDERSTAND YOU DISAGREE WITH HOW THEY

13 (Pages 46 to 49)

Page 50

1  COUNTED, BUT YOU'RE NOT SUGGESTING THAT THE DEPOSITIONS I
2  AFFORDED ON JANUARY 7TH WERE NOT ANYTHING OTHER THAN BEING IN
3  ADDITION TO THE 24 THAT EACH SIDE HAD?
4      MR. NOLAN:  WE MADE THAT POINT IN THE PAPERS, BECAUSE
5  CANDIDLY, YOUR HONOR, IT WASN'T CLEAR.  IT'S AN ARGUMENT
6  THAT WE'VE MADE BECAUSE, WHY DID THEY COME HERE AND ASK FOR
7  ADDITIONAL DISCOVERY IF THEY WERE GOING TO STILL HAVE SOME IN
8  THEIR POCKET THAT THEY WEREN'T GOING TO DISCLOSE TO ANYBODY?
9      BUT OUR PRIMARY ARGUMENT WAS ALWAYS THAT THE REASON
10 WHY WE WERE THERE WAS THAT THEY WERE OUT OF DEPOSITIONS.  THEY
11 HAD 22 THEY HAD ALREADY TAKEN; TWO WERE NOTICED.  AND THEN YOU
12 GAVE THEM AN ADDITIONAL -- SOMEWHERE BETWEEN 40 AND 50
13 DEPOSITIONS.
14     BUT BY ALL ACCOUNTS, ONE THING THAT'S FOR CERTAIN,
15 THESE THREE INDIVIDUALS, ALTHOUGH KNOWN TO MATTEL, WERE NOT
16 INCLUDED AT ANY TIME AND WERE NOT NOTICED.  THEY WERE ARGUED
17 BEFORE YOUR HONOR ON THE 7TH, BUT THEY'RE NOT INCLUDED.
18     THE COURT:  I WILL SAY THIS, TO MAYBE JUST
19 SHORT-CIRCUIT SOME CONFUSION, BECAUSE IT IS CLEAR TO THE COURT.
20     THE TOTAL NUMBER OF DEPOSITIONS WAS 40; CORRECT?
21     MR. QUINN:  24 A SIDE.
22     OH, I'M SORRY.  IN THE JANUARY 7TH ORDER?
23     THE COURT:  YES.
24     MR. QUINN:  IT WAS 40 SOMETHING.  I DON'T KNOW THE
25 NUMBER, YOUR HONOR.

Page 51

1      MR. NOLAN:  I BELIEVE IT WAS 40, PLUS TEN ON OUR
2  PART; ALL IN ALL, IT WAS 50.
3      THE COURT:  AND YOU HAD PREVIOUSLY BEEN EACH AFFORDED
4  24.
5      THERE IS NO QUESTION, TO THE COURT'S THINKING -- AND
6  I WILL MAKE THIS CLEAR TODAY -- THAT THE 40 I AWARDED TO MATTEL
7  AND THE TEN ADDITIONAL ONES I AWARDED TO MGA WERE IN ADDITION
8  TO THE 24 THAT THEY RECEIVED.
9      NOW, I WILL LEAVE IT TO JUDGE INFANTE TO COUNT UP THE
10 NUMBER OF DEPOSITIONS THAT HAD BEEN TAKEN PRIOR TO YOUR
11 NOTICING THESE FOUR ADDITIONAL ONES.
12     IF THAT NUMBER COMES UP TO BE 20 OR LESS, THEN
13 THEY'RE IN.  IF THAT NUMBER COMES UP TO BE 24 OR MORE, THEN
14 THEY'RE OUT.  AND I'M NOT AT THIS POINT CONSIDERING ARGUMENTS
15 FOR GOOD CAUSE, TO INCLUDE OR NOT INCLUDE.  SIMILARLY, I'M NOT
16 GOING TO COUNTENANCE ARGUMENTS TO SAY THAT THEY SHOULDN'T BE
17 BECAUSE THEY KNEW ABOUT THESE PEOPLE BEFORE.  WE HAVE A
18 DEADLINE.  AS YOU SAY, THE CLOCK EXPIRED.  THEY WERE EITHER
19 PART OF THE NUMBER THAT THEY COULD TAKE OR THEY WEREN'T.
20     I ASSUME THAT YOU CAN SIT DOWN AND YOU CAN IDENTIFY
21 FOR JUDGE INFANTE EXACTLY THE NUMBER OF DEPOSITIONS,
22 PARTICULARLY NOW, THAT YOU'VE TAKEN.  AND THAT'S WHY, AS FAR AS
23 MR. GRONICH AND MR. TIONGCO ARE CONCERNED --
24     WOULD THAT MAKE IT 42, MR. QUINN?
25     MR. QUINN:  YOUR HONOR, I WASN'T SURE 40 WAS THE

Page 52

1  NUMBER.
2      THOSE TWO INDIVIDUALS WERE REFERENCED IN THOSE
3  PAPERS.
4      THE COURT:  I DON'T WANT YOU TO LEAVE TODAY -- WE
5  SHOULD BE ABLE TO ANSWER THIS QUESTION.  THERE'S ENOUGH LAWYERS
6  AND THERE'S ENOUGH STUFF IN THIS ROOM THAT WE SHOULD BE ABLE TO
7  ANSWER THIS QUESTION PLAINLY TO THE COURT.
8      HOW MANY DEPOSITIONS DID I AUTHORIZE EXPRESSLY ON
9  JANUARY 7TH?  IF WE NEED TO TAKE A BRIEF RECESS TO COME UP WITH
10 THAT, LET'S DO THAT.
11     MR. NOLAN:  YOU REFERENCED SPECIFIC PAGES, AND ON
12 THOSE PAGES, PEOPLE WERE LISTED.  OUR POSITION IS THAT THEY
13 WEREN'T LISTED ON THOSE PAGES.
14     WE CAN DO THAT AT A BREAK AND COME BACK AND MAYBE
15 SUBMIT IT TO MR. HOLMES OR WHATEVER.
16     YOUR HONOR, ONLY BECAUSE I KNOW THIS TRANSCRIPT IS
17 GOING TO BE DISSECTED BY BOTH COUNSEL, I JUST WANT TO COME BACK
18 TO WHEN YOU SAID RECENTLY THAT WITH RESPECT TO CABRERA AND
19 MORALES AND SALAZAR, THAT IF THEY WERE WITHIN THE NUMBER,
20 THEY'RE IN.
21     THE COURT:  THEY'RE IN, SUBJECT TO ANY ARGUMENT THAT
22 YOU'RE MAKING BEFORE JUDGE INFANTE THAT THEY WERE NOT PROPERLY
23 NOTICED, SERVED, OR WHATEVER IT MIGHT BE.
24     MR. NOLAN:  AND I APOLOGIZE FOR BEING REDUNDANT.  I'M
25 TRYING TO AVOID --

Page 53

1      THE COURT:  YOU UNDERSTOOD WHAT I'M SAYING,
2  MR. QUINN?
3      MR. QUINN:  YES, I DO, YOUR HONOR.
4      THE COURT:  I'M NOT OVERRULING ANY DECISION THAT
5  JUDGE INFANTE HASN'T MADE YET.  I'M SIMPLY SAYING THEY'RE IN IN
6  THE SENSE THAT, ASSUMING THAT YOU PROPERLY NOTICED OR SERVED
7  THEM, YOU CAN TAKE THEIR DEPOSITION.  BUT THAT'S BEING
8  CHALLENGED, AND THAT'S BEING CHALLENGED BEFORE JUDGE INFANTE;
9  AND I WILL AWAIT HIS DECISION.
10     MR. QUINN:  OKAY.
11     YOUR HONOR, I HAVE THIS FEELING THAT IT MIGHT BE
12 HELPFUL IF I WENT -- AND I HATE TO DO THIS, AND I HOPE IT'S NOT
13 TRYING THE COURT'S PATIENCE -- IF I WENT BACK THROUGH THOSE
14 CATEGORIES, JUST TO MAKE SURE THAT -- AS I MENTIONED IN THE
15 BEGINNING, JUST TO MAKE SURE THAT WE HAVE AN UNDERSTANDING AS
16 WE LEAVE HERE.
17     THE COURT:  RIGHT.  AND THEN WE'RE GOING TO TAKE A
18 BRIEF RECESS.  I'M GOING TO TAKE UP ANOTHER MATTER THAT'S
19 PATIENTLY WAITING IN THE BACK WINGS HERE, WHILE YOU COME UP
20 WITH IT.  I WANT TO HAVE SPELLED OUT HERE CLEARLY WHAT IT WAS
21 THAT I ORDERED ON JANUARY 7TH, WHAT THE NUMBER WAS, BECAUSE I
22 DO THINK YOU ARE ENTITLED TO THAT.
23     MR. QUINN:  ALL RIGHT.
24     THE COURT:  BUT GOING THROUGH THOSE CATEGORIES, THE
25 FIRST CATEGORY WAS THE THIRD-PARTY DEPONENTS FROM JANUARY 7TH;

FEBRUARY 4, 2008          ED CV 04-9059-SGL

Exhibit 10

Page _____ 351

Page 54

1  AND THEY REQUESTED THAT THEY BE TAKEN POST JANUARY 28TH.
2      MR. QUINN:  RIGHT.
3      THE COURT:  I DON'T SEE ANY PROBLEM WITH THAT,
4  SUBJECT TO ANY CHALLENGE BEING MADE BY THEIR ATTORNEYS BEFORE
5  JUDGE INFANTE.
6      MR. QUINN:  RIGHT.
7      THE COURT:  THE OUT-OF-COUNTRY DEPONENTS:  WELL, THE
8  ONE FROM CANADA IS PHASE TWO; SO THAT'S BEEN PLACED OFF.  THE
9  THREE FROM HONG KONG, IS THAT BEING CHALLENGED?
10      MR. QUINN:  THERE'S NOTHING BEFORE JUDGE INFANTE ON
11  THAT RIGHT NOW.
12      THE COURT:  AND YOU'VE SERVED THEM?
13      MR. QUINN:  NO.  THAT'S GOING TO REQUIRE LETTERS
14  ROGATORY PROCESS.
15      THE COURT:  HAVE YOU STARTED THAT PROCESS?  DID YOU
16  START THAT PROCESS BEFORE JANUARY 28TH?
17      MR. QUINN:  NO, WE DID NOT.
18      THE COURT:  WELL, YOU SHOULD HAVE STARTED THAT
19  PROCESS BEFORE JANUARY 28TH; THAT WAS THE CUTOFF FOR PHASE ONE
20  DISCOVERY.
21      THE THIRD CATEGORY, NOT SERVED WITH SUBPOENAS:  IN
22  ADDITION, THE QUESTION IS WHETHER OR NOT THEY WERE SERVED OR
23  NOTICED BEFORE JANUARY 28TH.
24      MR. QUINN:  THOSE, WE NOTICED THE DEPOSITIONS; WE
25  HAVE NOT SUCCEEDED IN SERVING THE WITNESSES WITH THE SUBPOENAS.

Page 55

1      THE COURT:  THE QUESTION OF WHETHER OR NOT THE NOTICE
2  WAS PERFECTED, THAT'S AN ISSUE THAT GOES BEFORE JUDGE INFANTE.
3      MR. QUINN:  RIGHT.
4      THE COURT:  ALL I'M DECIDING TODAY IS -- I'M
5  REINFORCING THE COURT'S PRIOR ORDER THAT JANUARY 28TH WAS THE
6  CUTOFF.  I GAVE YOU, ON JANUARY 7TH, LEAVE TO TAKE.  YOU KNOW
7  WHAT THAT MEANS.  YOU KNOW HOW LONG YOU HAD.  WE ALL UNDERSTOOD
8  AT THAT TIME THAT IT WAS GOING TO BE A CRAZY MONTH.  AND I'M
9  AFFORDING YOU LEAVE NOW, I SUPPOSE, TO TAKE ANYTHING THAT WAS
10  PROPERLY NOTICED AND SERVED INTO FEBRUARY THAT RELATES TO PHASE
11  ONE.  BUT THE CUTOFF WAS JANUARY 28TH.
12      MR. QUINN:  WHAT I HEAR THE COURT SAYING IS, IF WE
13  DID NOT SUCCEED IN SERVING THEM BEFORE THE 28TH --
14      THE COURT:  EITHER BY NOT SERVING THEM OR BY HAVING
15  JUDGE INFANTE RULING THAT THE SERVICE WAS IMPROPER, THEN YOU'RE
16  OUT.
17      MR. QUINN:  I UNDERSTAND, YOUR HONOR.
18      THE COURT:  AS FAR AS THE FOURTH CATEGORY, WHETHER
19  MR. GRONICH AND TIONGCO WERE INCLUDED IN MY ORDER, THAT'S WHAT
20  I WANT TO LOOK AT IN A FEW MINUTES HERE.
21      THE TWO IN MEXICO ARE PHASE TWO; SO THAT'S IRRELEVANT
22  FOR OUR CURRENT PURPOSES.
23      THE 30(B)(6), YOU SAID THE MGA DE MEXICO WAS PHASE
24  TWO; SO THAT'S OFF.
25      THE MGA IS BEFORE JUDGE INFANTE.  HE WILL DECIDE

Page 56

1  THAT, BUT YOU AT LEAST -- THAT WAS PART OF A PREVIOUS ORDER.
2      AND THE NUMBER OF DEPOSITIONS IS GOING TO BE
3  CONSIDERED BY JUDGE INFANTE, ALTHOUGH I'M GOING TO PROVIDE SOME
4  GUIDANCE HERE WHEN I TAKE A LOOK AT THESE ORDERS.  AND THE
5  ORDERS THAT I WANT TO SEE ARE THE JANUARY 7TH ORDER, WITH THE
6  CROSS-REFERENCE TO THE PAGES; THAT'S BASICALLY WHAT I NEED TO
7  SEE.
8      I KNOW THAT'S HERE SOMEPLACE.
9      MR. QUINN:  I THINK WE HAVE A COPY, YOUR HONOR.
10      MR. NOLAN:  WE HAVE IT, TOO, YOUR HONOR.
11      THE COURT:  PROVIDE THAT TO MR. HOLMES.
12      MR. NOLAN:  YOUR HONOR, I'M LOOKING AT THE
13  JANUARY 7TH ORDER, TOP OF PAGE 3.  I CAN HAND THIS UP.
14      I'LL JUST READ THE SENTENCE:  "SPECIFICALLY, THE
15  COURT GRANTS MATTEL'S REQUEST TO TAKE THE INDIVIDUAL
16  DEPOSITIONS RELATING TO THE BRATZ CLAIMS SET FORTH IN THE
17  MOVING PAPERS AT 9 THROUGH 11, AND RELATING TO THE TRADE SECRET
18  AND RICO CLAIMS SET FORTH IN THE MOVING PAPERS AT 13."
19      THE COURT:  SO THAT WAS THE PHASE ONE AND PHASE TWO
20  REFERENCES.
21      MR. NOLAN:  THEN, YOUR HONOR, I'VE GIVEN TO MR. QUINN
22  RIGHT NOW A COPY OF HIS MOTION, PAGES 9 THROUGH 11, AND
23  PAGE 13; AND I ASSUME THAT MR. QUINN WILL CONFIRM THAT NEITHER
24  OF THOSE TWO WITNESSES ARE IDENTIFIED ON THOSE THREE PAGES.
25      MR. QUINN:  THAT IS CORRECT, YOUR HONOR.  I THINK I

Page 57

1  SAID THAT WHEN I FIRST STOOD UP TODAY.
2      THE COURT:  RIGHT.
3      MR. QUINN:  BUT ELSEWHERE, THE COURT SAID THAT
4  BECAUSE OF THE ISSUES THAT HAVE BEEN RAISED ABOUT DOCUMENT
5  RETENTION AND COLLECTION, MATTEL HAS SHOWN GOOD CAUSE.
6      THESE INDIVIDUALS THAT WE'RE TALKING ABOUT ARE THE
7  ONLY WITNESSES WHO HAVE ANY KNOWLEDGE OF THAT.  GRONICH IS THE
8  ONE WHO SIGNED THE CERTIFICATION ABOUT DOCUMENT RETENTION
9  EFFORTS.
10      AND THEN ELSEWHERE, THE COURT'S ORDER SAYS MATTEL'S
11  MOTION IS GRANTED, EXCEPT FOR THE REQUEST TO TAKE THE
12  DEPOSITION OF MR. BRYANT; SO THAT'S HOW WE UNDERSTOOD IT, THAT
13  THE COURT INTENDED THAT WE GET TO TAKE THOSE DEPOSITIONS AS
14  WELL.
15      THOSE TWO NAMES WERE CALLED OUT IN OUR MOVING PAPERS;
16  AND THERE'S A WHOLE SECTION B OF THAT MEMORANDUM THAT DISCUSSED
17  THIS ISSUE, ABOUT THE NEED TO TAKE ADDITIONAL DEPOSITIONS
18  BECAUSE THE INTEGRITY OF MGA AND BRYANT'S PRESERVATIONS OF
19  DOCUMENTS IS AT ISSUE.  AT PAGE 14, WE CALLED OUT THOSE NAMES.
20      THE COURT:  HAVE YOU NOTICED THOSE TWO DEPOSITIONS?
21      MR. QUINN:  YES.  AND WE HAVE SUBPOENAED THE
22  INDIVIDUALS.
23      THE COURT:  SO THE QUESTION IS ONLY WHETHER OR NOT
24  THEY WERE INCLUDED IN THE ORDER GRANTING LEAVE OR NOT.
25      MR. QUINN:  YES, YOUR HONOR.

15 (Pages 54 to 57)

Page 58

1    MR. NOLAN: OF COURSE, JANUARY 8TH IS
2    JUDGE INFANTE -- WE HAD ALREADY -- AND MATTEL KNEW THIS AT THE
3    TIME WE WERE ARGUING IT BEFORE YOU -- THE MATTER HAD BEEN FULLY
4    BRIEFED AND SUBMITTED, ARGUED AND SUBMITTED, IN FRONT OF
5    JUDGE INFANTE. HE RULED ON JANUARY 8TH THAT ALL OF THE
6    TESTIMONY THAT WE PROVIDED WAS ADEQUATE, EXCEPT FOR THE LIMITED
7    SUBJECT THAT I TALKED ABOUT. AND WE'VE ALREADY PROVIDED
8    SAM KHARI FOR TWO DAYS.
9        THE COURT: I WANT TO TAKE A LITTLE LONGER LOOK AT
10   THIS. I'LL GET YOU AN ANSWER TODAY IN THE MINUTE ORDER THAT
11   GOES OUT THIS AFTERNOON. I'LL ADDRESS THOSE TWO.
12       OTHERWISE, I THINK WHAT I'VE SET DOWN OR WHAT I WILL
13   SET DOWN IN THE MINUTE ORDER WILL COVER THESE.
14       COUNSEL?
15       MS. MIZRAHI: RAMIT MIZRAHI FOR ANA CABRERA AND
16   BEATRIZ MORALES.
17       I WANTED TO, FIRST OF ALL, JUST POINT OUT THAT WE'RE
18   NOT TAKING A POSITION IN THE CASE, AND WE ARE SEEKING GUIDANCE
19   FROM THE COURT WITH RESPECT TO THE DEPOSITIONS.
20       THE COURT: VERY WELL.
21       MS. MIZRAHI: WE WOULD REQUEST A FEW DAYS TO PREPARE
22   FOR THE DEPOSITIONS, SINCE WE'VE JUST BEEN PREPARED, AND THAT
23   THERE BE A SPANISH TRANSLATOR FOR THE WOMEN THERE.
24       TWO POINTS --
25       THE COURT: LET ME STOP YOU FOR A SECOND, COUNSEL.

Page 59

1        IS THERE ANYTHING ABOUT WHAT I'VE ORDERED HERE THAT
2    IS NOT CLEAR TO YOU IN TERMS OF WHERE WE'RE GOING WITH THOSE?
3        MS. MIZRAHI: I TAKE IT WE'RE PENDING JUDGE INFANTE'S
4    RULING.
5        THE COURT: EXACTLY. IN TERMS OF WHETHER OR NOT THEY
6    ARE INCLUDED IN THE NUMBER.
7        THEN AS FAR AS REASONABLE NOTICE -- YOU'RE ASKING FOR
8    A SPANISH TRANSLATOR TO BE PRESENT?
9        MS. MIZRAHI: YES.
10       THE COURT: MR. QUINN, GIVEN THE HISTORY IN THIS, IS
11   THERE ANY OBJECTION TO HAVING A SPANISH TRANSLATOR?
12       MR. QUINN: I WOULDN'T THINK SO, YOUR HONOR.
13       THE COURT: SEEMS TO MAKE SENSE. IF THAT'S THE
14   PRIMARY LANGUAGE, THAT WOULD BE APPROPRIATE.
15       OKAY. SO THERE'S AN AGREEMENT THERE BY THE COUNSEL
16   TAKING THE DEPOSITION.
17       MS. MIZRAHI: GREAT.
18       TWO OTHER THINGS: THE FIRST IS, WE WOULD LIKE MATTEL
19   TO PROVIDE US WITH THE INTERVIEW TAPES TAKEN OF THE WOMEN. I'M
20   NOT SURE IF THAT'S SOMETHING THAT THE JUDGE CAN ORDER OR SHOULD
21   ORDER.
22       THE COURT: MR. QUINN, WHAT ARE YOUR THOUGHTS ON
23   THAT?
24       MR. QUINN: WE CAN ASK HIM TO DO THAT, YOUR HONOR.
25       MS. MIZRAHI: PERFECT.

Page 60

1        AND THE THIRD THING IS THAT I BELIEVE THAT MATTEL IS
2    IN POSSESSION OF A BOX FROM MS. CABRERA, TAKEN DURING THE
3    INTERVIEW PROCESS. I THINK THERE'S BEEN SOME EXCHANGE BETWEEN
4    MY ASSOCIATE, MARIA DIAZ, AND COUNSEL; AND I THINK MATTEL IS
5    REFUSING TO RETURN THE BOX TO HER.
6        THE COURT: COUNSEL?
7        MR. QUINN: FOR ALL I KNOW, IT'S MATTEL'S PROPERTY,
8    YOUR HONOR. I'M SORRY. I JUST CAN'T ADDRESS THAT.
9        I DON'T KNOW WHAT IT IS.
10       THE COURT: COUNSEL, THIS WOULD BE AN APPROPRIATE --
11   YOU'RE ASKING FOR THE RETURN -- I'M TRYING TO THINK WHO THIS
12   WOULD BE AN APPROPRIATE MOTION BEFORE. IT'S NOT FAIR TO HAVE
13   MR. QUINN JUST RESPOND OFF THE CUFF TO SOMETHING LIKE THIS.
14       BRING THIS MATTER BEFORE THIS COURT. I'M INTERESTED
15   IN WHAT HAPPENED HERE. SO WHY DON'T YOU MEET AND CONFER WITH
16   MR. QUINN; SEE IF YOU CAN'T WORK OUT THE RETURN OF THE TAPES,
17   RETURN OF ANYTHING WHICH IS YOUR CLIENT'S PROPERTY THAT WAS
18   TAKEN FROM HER, OR ALLEGEDLY TAKEN FROM HER. SEE IF YOU CAN'T
19   WORK IT OUT. AND IF YOU CAN'T, BRING A MOTION TO THIS COURT.
20       MS. MIZRAHI: SURE. THANK YOU.
21       THE COURT: AND THAT MOTION WOULD HAVE TO BE RESOLVED
22   BEFORE THE DEPOSITION WENT FORWARD.
23       MS. MIZRAHI: AND BEFORE THE BOX IS OPENED, I'M
24   ASSUMING AS WELL.
25       THE COURT: I'M SORRY?

Page 61

1        MS. MIZRAHI: I'M UNDER THE IMPRESSION THAT MATTEL
2    WAS SEEKING TO OPEN THE BOX PRIOR TO THE DEPOSITION. I'M
3    REALLY NOT CERTAIN.
4        THE COURT: MR. QUINN, DO YOU KNOW ANYTHING ABOUT
5    THAT?
6        MR. QUINN: I DON'T, YOUR HONOR.
7        THE COURT: YOU NEED TO MEET AND CONFER.
8        MR. NOLAN: WE'VE BEEN PROVIDED A VIDEO OF MATTEL
9    OPENING THE BOX, MR. DE ANDA OPENING THE BOX.
10       NOW, I KNOW THERE'S REPRESENTATIONS THAT THEY'RE
11   GOING TO RETURN THE SEALED BOX TO MS. CABRERA. BUT WE HAVE A
12   VIDEO -- WE CAN SHOW IT AT THE HEARING -- OF MR. DE ANDA GOING
13   THROUGH THE BOX OF BELONGINGS THAT WERE SEIZED FROM
14   MS. CABRERA'S HOUSE. I'LL MAKE CERTAIN YOU HAVE A COPY OF
15   THAT, BUT I THINK MATTEL SHOULD PROVIDE THAT TO YOU.
16       MS. MIZRAHI: SURE.
17       I GUESS IT RENDERS THAT POINT MOOT ABOUT --
18       THE COURT: COUNSEL, DON'T TALK TO OPPOSING COUNSEL.
19   YOU'RE ADDRESSING THE COURT RIGHT NOW. YOU HAVE ALL OF THE
20   TIME IN THE WORLD TO ADDRESS CO-COUNSEL.
21       MS. MIZRAHI: SURE. THANK YOU.
22       THE COURT: COUNSEL, WHAT I WANT YOU TO DO IS MEET
23   AND CONFER WITH MR. QUINN. I WILL INDICATE, CERTAINLY, THAT --
24   OR I WILL DIRECT THAT THE DEPOSITION DOES NOT FORWARD, ASSUMING
25   THAT IT IS GOING FORWARD, DEPENDING ON JUDGE INFANTE'S RULING,

FEBRUARY 4, 2008          ED CV 04-9059-SGL

Exhibit 10
Page ____ 353

Page 62

1 UNTIL YOU HAVE MET AND CONFERRED AND ANY MOTION HAS BEEN HEARD
2 BY THIS COURT CONCERNING THE ITEMS THAT WERE OR WERE NOT TAKEN
3 FROM YOUR CLIENT.
4        MS. MIZRAHI:  THANK YOU.
5        THE COURT:  ANYBODY ELSE?
6        MR. POTISCHMAN:  YOUR HONOR, NEIL POTISCHMAN ON
7 BEHALF OF WACHOVIA CORPORATION. I'LL TRY TO BE EXCEEDINGLY
8 BRIEF.
9        I JUST WANT TO CLARIFY ONE POINT. YOUR HONOR ENTERED
10 AN ORDER ON JANUARY 31ST, AS YOU KNOW, WITH RESPECT TO A
11 SUBPOENA PRACTICE DIRECTED AT WACHOVIA. SOME OF THOSE MATTERS
12 ARE BEFORE JUDGE INFANTE. YOUR HONOR DIRECTED A BRIEFING
13 SCHEDULE, IN ESSENCE, WITH RESPECT TO POSSIBLE FOLLOW-ON MOTION
14 PRACTICE AFTER JUDGE INFANTE RULES.
15        I THINK IT'S POSSIBLE, IF THERE IS A DEPOSITION OF
16 WACHOVIA, THAT BASED ON THAT SCHEDULE AND BASED ON MY CLIENT'S
17 SCHEDULE, THAT DEPOSITION MIGHT NOT HAPPEN UNTIL MARCH; BUT I
18 WANTED TO CLARIFY, WHILE WE'RE HERE, IF YOUR HONOR INSISTED IT
19 BE DONE BY FEBRUARY, THEN WE'LL CONFER WITH THE PARTIES AND
20 WE'LL TRY TO MAKE SURE THAT --
21        THE COURT:  I'D REALLY LIKE TO GET THIS DISCOVERY
22 WRAPPED UP IN FEBRUARY. I'M NOT ORDERING THAT IT BE DONE SO,
23 BUT I'M GIVING LEAVE FOR THE DISCOVERY TO CONTINUE INTO
24 FEBRUARY.
25        IN MARCH, WE'RE GETTING AWFUL CLOSE TO THE

Page 63

1 DISPOSITIVE MOTION HEARING CUTOFF DATE; AND THAT'S MY CONCERN
2 THERE.
3        TRY TO WORK THIS OUT WITH COUNSEL, DEPENDING ON HOW
4 JUDGE INFANTE RULES. WHAT I WILL SIMPLY DO IS MAKE MYSELF
5 AVAILABLE ON THE 11TH AND THE 25TH. WE DON'T HAVE A HEARING
6 DATE ON THE 18TH BECAUSE OF THE PRESIDENT'S HOLIDAY. AND THEN,
7 I SUPPOSE, AT THE VERY LATEST, MARCH 3RD, TO TAKE UP ANY
8 MOTIONS THAT STEM FROM RULINGS BY JUDGE INFANTE. I'M GOING TO
9 GIVE HIM A CALL THIS AFTERNOON AND EXPLAIN TO HIM WHAT, IN MY
10 VIEW, HE NEEDS TO BE FOCUSING ON AND HOW TIME IS OF THE
11 ESSENCE. I THINK WE CAN WORK THIS OUT, COUNSEL.
12        MR. POTISCHMAN:  VERY WELL, YOUR HONOR.
13        ONE POINT I SHOULD CLARIFY: IT'S POSSIBLE, IF THERE
14 IS MOTION PRACTICE WITH RESPECT TO THE SUBPOENA, IT WOULDN'T BE
15 IN THIS COURT. IT WOULD BE IN THE COURT FROM WHICH THE
16 SUBPOENA IS ISSUED, WHICH WOULD BE THE EASTERN DISTRICT OF
17 PENNSYLVANIA OR THE NORTHERN DISTRICT OF CALIFORNIA. THAT'S
18 ONE REASON WHY IT MAY BE OUTSIDE OF OUR CONTROL.
19        THE COURT:  OF COURSE.
20        MR. POTISCHMAN:  THANK YOU, YOUR HONOR.
21        THE COURT:  VERY GOOD.
22        THANK YOU, COUNSEL.
23        MR. GIZER:  GOOD MORNING AGAIN, YOUR HONOR.
24        SCOTT GIZER FROM CHRISTENSEN & GLASER.
25        THE COURT:  GOOD MORNING, COUNSEL.

Page 64

1        MR. GIZER:  I HAD ONE POINT OF CLARIFICATION.
2        IN YOUR ORDER, YOU AUTHORIZED A SPECIFIC TOPIC AS TO
3 CHRISTENSEN & GLASER REGARDING A COMMUNICATION POSSIBLY BETWEEN
4 A PARTY AND OUR FIRM. IN OUR SUBPOENA, THERE WERE 13 OTHER
5 TOPICS BESIDES THAT ONE, AND WE WOULD LIKE CLARIFICATION THAT
6 THIS COURT ONLY GRANTED LEAVE AS TO THAT ONE SPECIFIC TOPIC,
7 NOT AS TO THE 13 OTHER TOPICS THAT WENT ALONG IN THE SUBPOENA.
8        THE COURT:  MR. QUINN?
9        MR. QUINN:  THAT'S NOT MY UNDERSTANDING, YOUR HONOR,
10 THAT THE ORDER ONLY REFERENCED ONE TOPIC AS BEING APPROPRIATE.
11        THE COURT:  COULD YOU REFER ME TO WHAT --
12        MR. GIZER:  IT'S ON PAGE 10. IT SAYS, "CHRISTENSEN &
13 GLASER, LLP, FIRM TO WHICH VICTORIA O'CONNOR FAXED THE
14 MGA-BRYANT AGREEMENT THAT ISAAC LARIAN HAD ORDERED HER TO
15 ALTER." THAT WAS TOPIC 13 IN THE SUBPOENA TO US. THERE WAS 14
16 TOTAL TOPICS. THAT WAS JUST ONE SPECIFIC ONE.
17        THE COURT:  IF THAT'S WHAT THE ORDER WAS, COUNSEL,
18 THAT'S WHAT THE ORDER WAS.
19        MR. QUINN:  YOUR HONOR, THERE'S NOTHING IN THE ORDER
20 THAT LIMITS THE DEPOSITION TO THAT SUBJECT. WE HAD IDENTIFIED
21 A NUMBER OF TOPICS, AND THE COURT SAID, IN THE CONTEXT OF,
22 'THIS DEPOSITION CAN GO FORWARD, IDENTIFYING THE FIRM.'
23 THERE'S NOTHING IN THERE THAT SAID THAT WE COULDN'T EXAMINE
24 THEM ON THE OTHER TOPICS.
25        THE COURT:  I'LL TAKE A LOOK AT THAT AS WELL. ALONG

Page 65

1 WITH THE MR. GRONICH AND MR. TIONGCO, I'LL ALSO TAKE A LOOK AT
2 THE CHRISTENSEN & GLASER PART OF THE ORDER. I CAN'T SAY FOR
3 CERTAIN RIGHT NOW WHAT IT WAS THAT I INTENDED OR DIDN'T INTEND,
4 WITHOUT LOOKING AT THE PAPER AND THE ORDER.
5        THANK YOU, COUNSEL.
6        MR. GIZER:  THANK YOU, YOUR HONOR.
7        THE COURT:  DOES ANYBODY ELSE NEED TO ADDRESS
8 ANYTHING WITH RESPECT TO THE DEPOSITIONS, THESE TWO EX-PARTE
9 APPLICATIONS?
10        I STILL HAVE TWO MORE TO GET TO.
11        MR. PAGE:  MICHAEL PAGE, YOUR HONOR, FOR
12 CARTER BRYANT.
13        YOUR HONOR MENTIONED BEING AVAILABLE FOR HEARINGS ON
14 THE 11TH AND THE 25TH TO DEAL WITH ISSUES COMING OUT OF
15 JUDGE INFANTE RULINGS.
16        DOES THAT MEAN THAT THEY CAN BE BROUGHT TO YOU ON A
17 SHORTENED OR AN EX-PARTE BASIS? AND HOW SHOULD WE DO THAT?
18        THE COURT:  IT MAKES SENSE TO DO SO.
19        AS THE COURT HAS ORDERED HERE, WE HAVE AN OPPOSITION
20 DUE ON WEDNESDAY. WE HAVE THE REPLY DUE A FEW DAYS LATER. YOU
21 CAN MORE OR LESS USE THAT AS A MODEL. I DON'T WANT TO LAY OUT
22 A SCHEDULING PLAN FOR MOTIONS THAT HAVEN'T EVEN BEEN BROUGHT
23 YET. I'M HOPING THAT YOU SEE THE WISDOM IN JUDGE INFANTE'S
24 RULING AND HAVE NOTHING TO DISPUTE. BUT ASSUMING THAT YOU
25 MIGHT HAVE SOMETHING TO DISPUTE, TRY TO WORK OUT A SCHEDULE

17 (Pages 62 to 65)

Page 66

1  AMONGST YOURSELVES.
2      I'M CERTAINLY GOING TO AGREE TO ANY STIPULATION THAT
3  YOU REACH, AS LONG AS YOU GIVE ME ONE FULL WEEKEND TO GET READY
4  FOR THE MONDAY HEARING; THAT'S ALL I'M ASKING FOR.
5      MR. PAGE: THANK YOU, YOUR HONOR.
6      THE COURT: THE NEXT EX PARTE IS MATTEL'S EX PARTE TO
7  ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLE ITEMS.
8  THESE RELATE TO THESE 12 MOLDS THAT ARE OVER IN CHINA.
9      SO, MR. NOLAN, LET ME BEGIN WITH YOU.
10     I AM A LITTLE -- THERE'S THIS REPEATED REPRESENTATION
11 THAT NO ONE DELIBERATELY DID ANYTHING, AND I GUESS I'M NOT
12 CONCERNED ABOUT WHAT PEOPLE DELIBERATELY DID OR DIDN'T DO; I'M
13 MORE CONCERNED ABOUT WHY THESE THINGS WERE NOT IDENTIFIED
14 SOONER. AND I GUESS I DON'T HAVE A REAL CLEAR ANSWER TO THAT.
15     MR. NOLAN: YOUR HONOR, ALL I CAN SAY --
16     THE COURT: -- GIVEN -- LET ME SAY THIS -- GIVEN THE
17 REPRESENTATIONS THAT WERE MADE ABOUT THE DILIGENCE UPON WHICH
18 SEARCHES WERE DONE PURSUANT TO DOCUMENT REQUESTS.
19     THERE'S NO DISPUTE THAT THESE ARE COVERED BY THE
20 DOCUMENT REQUESTS. JUDGE INFANTE HAS FOUND SUCH, ESSENTIALLY;
21 AND I -- READING THE DOCUMENT REQUESTS, I THINK MATTEL IS RIGHT
22 ON THAT THESE ARE CERTAINLY WITHIN THE AMBIT OF SEVERAL OF THE
23 DOCUMENT REQUESTS; SO THERE'S NO QUESTION THAT THEY NEED TO BE
24 PRODUCED. THEY'VE BEEN ASKED FOR.
25     I'M SOMEWHAT CONCERNED AS TO WHY THEY WERE JUST

Page 67

1  FOUND.
2      MR. NOLAN: YOUR HONOR, I THINK IT'S PRETTY CLEAR.
3      BOTH SIDES HAVE BEEN ENGAGED IN ROLLING PRODUCTIONS
4  AS THEY HAVE FOUND NEW MATERIAL. AND WE CERTAINLY, COMING INTO
5  THIS, HAVE DONE THAT, YOUR HONOR; AND I THINK THE RECORD IS
6  CLEAR THAT WE HAVE PRODUCED -- I THINK IT'S SOMEWHERE AROUND
7  800 TO 900 INTANGIBLE OBJECTS AS WE'VE LOCATED THEM
8  DOMESTICALLY. WE THEN CAME UP AND IDENTIFIED, IN -- I BELIEVE
9  IT WAS EARLY DECEMBER, THE LOCATION IN CHINA AND IN HONG KONG,
10 THESE ADDITIONAL ITEMS. ALL IN GOOD FAITH, YOUR HONOR.
11     WE'RE TRYING TO DO WHAT WE CAN.
12     MATTEL PRODUCED 73 PERCENT OF THEIR DOCUMENTS IN
13 JANUARY, IN OUR PRODUCTION, YOUR HONOR.
14     THE COURT: I UNDERSTAND THAT ARGUMENT THAT YOU MADE.
15     MR. NOLAN: ALL I'M SAYING IS, YOUR HONOR, WITH
16 RESPECT TO THIS, WE IMMEDIATELY NOTIFIED THEM WHEN THEY WERE
17 IDENTIFIED AS MOLDS RELATED TO BRATZ. THERE'S A LOT OF MOLDS
18 OUT THERE, YOUR HONOR, AND SCULPTS AND PRODUCTS AND STUFF LIKE
19 THAT. IT IS SIMPLY THAT, YOUR HONOR; WE IDENTIFIED IT, WE
20 FOUND IT, WE IMMEDIATELY TURNED IT OVER.
21     I CAN'T ADDRESS WHAT O'MELVENY --
22     THE COURT: I'M NOT ASKING YOU TO.
23     MR. NOLAN: NO, NO, NO. BUT WHAT I MEANT BY THAT IS
24 THAT I CAN REPRESENT TO THE COURT THAT I HAVE SEEN NOTHING
25 WHICH WOULD SUGGEST, 'OH, DON'T PRODUCE THAT.' THAT'S NOT THE

Page 68

1  ISSUE HERE.
2      THE COURT: I'LL TELL YOU THE ONE THING, THE ONLY
3  THING THAT SEEMS TO SUGGEST THAT, ARE THESE LETTERS AND
4  CORRESPONDENCE WHICH SUGGESTS AN INTERPRETATION OF THE REQUEST
5  AS NOT CALLING FOR THAT.
6      MR. NOLAN: ON THE MOLDS?
7      THE COURT: YES.
8      HOW CAN YOU BE SUGGESTING THAT ON THE ONE HAND,
9  YOU'RE IN GOOD FAITH, LOOKING FOR THESE, BUT ON THE OTHER HAND,
10 COUNSEL IS SAYING, 'NO, THIS IS NOT COVERED'?
11     MR. NOLAN: WELL, IF I MIGHT ADDRESS THAT REAL
12 QUICKLY, YOUR HONOR.
13     DESPITE THAT CORRESPONDENCE, AT THE SAME TIME, WE ARE
14 ALSO TELLING THEM ABOUT IT AND ALSO PROVIDING DIGITAL
15 PHOTOGRAPHS OF IT SO THEY CAN START PROCESSING IT IMMEDIATELY.
16     YOUR HONOR, ALL I CAN SAY IS THAT IN THIS CASE, MORE
17 THAN ANY CASE I'VE EVER SEEN, EVERY POSSIBLE ARGUMENT IS
18 RESERVED; AND IF WE'RE GUILTY OF THAT, I OWN UP TO IT; I'M
19 RESPONSIBLE AS THE LEAD LAWYER ON THIS CASE. BUT IT WAS NOT
20 INTENDED AT ALL TO EVER SAY, 'YOU CAN'T HAVE ACCESS TO THIS
21 MATERIAL.'
22     NOW, I COULD MAKE AN INTERESTING ARGUMENT THAT ON ONE
23 PRODUCTION, THEY DID ASK FOR MOLDS SPECIFICALLY. ON THE ONE
24 THAT WE WERE RESPONDING TO, THAT DIDN'T RELATE TO THESE, IT
25 DIDN'T RELATE TO THAT LOCATION, BUT --

Page 69

1      THE COURT: I DON'T FIND THAT A CONVINCING ARGUMENT.
2      MR. NOLAN: BUT WE'RE NOT ADVANCING THAT ARGUMENT.
3      THE COURT: FAIR ENOUGH.
4      MR. NOLAN: AND WE DIDN'T ARGUE THAT.
5      YOUR HONOR, WHAT I'M ADVANCING IS OUR POSITION, IS
6  THAT WE DID A DILIGENT SEARCH. WE WENT AND WE LOCATED THIS.
7  WE IMMEDIATELY NOTIFIED MATTEL. WE PROVIDED THEM DATES FOR
8  THEM TO LOOK AT THIS STUFF.
9      WE CAN'T GET IT OUT OF CHINA.
10     THE COURT: WHAT ABOUT THAT? I KNOW THERE'S THIS
11 UNDERTAKING. WHAT EFFORTS HAVE BEEN MADE TO GET RELIEF FROM
12 THAT AND GET THEM OVER HERE?
13     MR. NOLAN: REAL QUICKLY, YOUR HONOR -- AND I WAS
14 HANDLING THIS, SO I CAN SPEAK TO THIS FIRST HAND -- I WAS
15 ADVISED AS TO THE LOCATION OF THIS MATERIAL IN HONG KONG. I
16 WAS TOLD THAT THEY WERE SUBJECT TO AN UNDERTAKING BECAUSE
17 THERE'S LITIGATION GOING ON. IT'S LIKE REMOVING EVIDENCE FROM
18 THE COURTROOM.
19     WE THEN IMMEDIATELY CALLED MATTEL, ADVISED THEM OF
20 THE SITUATION, AND TOLD THEM, 'LISTEN, WE HAVE TWO CHOICES.
21 ONE IS THAT WE CAN MAKE IT AVAILABLE IN HONG KONG. THAT'S NOT
22 AN ISSUE. BY THE WAY, WE NOTE THAT YOU HAVE AN OFFICE RIGHT
23 ACROSS FROM OUR OFFICES IN HONG KONG' -- THIS IS MATTEL AND MGA
24 -- 'SO THAT SHOULDN'T BE AN ISSUE. BUT WE'LL GO THE EXTRA
25 MILE, AND WE WILL TALK TO COUNSEL IN HONG KONG TO TRY TO GET A

FEBRUARY 4, 2008          ED CV 04-9059-SGL

Exhibit 10
Page ____355____

Page 70

1  RELIEF FROM THE COURT.'
2       WE DID THAT. SKADDEN IMMEDIATELY CALLED THE LAWYER
3  OVER IN HONG KONG, INSTRUCTED HIM TO GO TO COURT AND SEEK A
4  RELIEF SO THAT WE COULD MAKE THEM AVAILABLE.
5       THE COURT: WHAT'S THE STATUS OF THAT?
6       MR. NOLAN: THE FIRST COURT DENIED THE REQUEST AND
7  SAID -- AND I MAY BE WRONG ON THIS, YOUR HONOR -- IT WOULD BE
8  AKIN TO ALMOST LIKE ONE MAGISTRATE HAVING CRIMINAL DUTY AND
9  MAKING A RULING AND THEN GETTING A NEW MAGISTRATE AND THAT
10 MAGISTRATE SAYS, 'YOU KNOW, THE OTHER MAGISTRATE REVIEWED THE
11 BAIL CONDITIONS' -- THIS IS MY INTERPRETATION OF IT. SO THE
12 FIRST JUDGE SAID, 'SOMEBODY ELSE RULES ON IT. YOU HAVE TO GO
13 TO THE OTHER PERSON.'
14      WE WENT TO THE OTHER PERSON, AND THAT MATTER IS STILL
15 PENDING BEFORE THE COURT. SO WE'VE MADE EVERY EFFORT, ALL OF
16 THE TIME, SAYING TO MATTEL, 'YOU HAVE OFFICES IN CHINA, AND YOU
17 HAVE OFFICES IN HONG KONG. THESE THINGS ARE AVAILABLE. HERE
18 ARE THE DATES THAT THEY'RE AVAILABLE.' AND WE GAVE THEM DATES,
19 YOUR HONOR; WE GAVE THEM DATES IN ADVANCE.
20      AND I'LL REPRESENT TO THE COURT THAT WE CANNOT TAKE
21 THE MOLDS OUT OF CHINA, BECAUSE OF THE SIZE -- I MEAN, EVEN
22 THOSE THERE ARE SMALL DOLLS, THESE MOLDS ARE ENORMOUS; SO IT
23 MADE SENSE TO US TO JUST SIMPLY SAY, 'THIS ISN'T A BURDEN.
24 YOU'RE GOING TO HAVE A CAMERA TAKE PICTURES OF THIS' -- AND
25 THAT'S ALL THEY'RE GOING TO DO, IS TAKE THE DIGITAL PHOTOGRAPHS

Page 71

1  OF THEM AND BRING THEM OVER HERE -- 'YOU'VE GOT STAFF OVER IN
2  CHINA AND IN HONG KONG.
3       THE COURT: THIS ISN'T LIKE A KODAK CAMERA. THIS
4  SOUNDS LIKE A PRETTY INTENSIVE, THREE-DIMENSIONAL
5  PHOTOGRAPHY --
6       MR. NOLAN: YOUR HONOR, THAT'S THEIR OWN CHOOSING.
7  YOU KNOW, WE'RE MAKING THEM AVAILABLE IN THE LOCATION WHERE
8  THEY ARE KEPT --
9       THE COURT: WHAT ABOUT THE EXPENSES SHIFTING ON THIS
10 BECAUSE OF THE INABILITY OF MGA TO GET THOSE OVER HERE?
11      MR. NOLAN: I'M NOT AWARE OF ANY SITUATION WHERE
12 BECAUSE OF COURT RESTRICTIONS IN A JURISDICTION, WHERE WE'RE
13 BEING BOUND BY THOSE RULINGS, THAT WE SHOULD HAVE TO BEAR THE
14 BURDEN OF COSTS, WHERE THE PARTY HAS OFFICES AND A PRESENCE IN
15 BOTH HONG KONG AND IN CHINA.
16      I MEAN, YOUR HONOR, LET'S FACE IT, BOTH OF OUR
17 CLIENTS HAVE MANUFACTURING PLANTS LOCATED IN CHINA AND HONG
18 KONG. THIS ISN'T A BURDEN TO THEM. WE'RE NOT GETTING ANY
19 BENEFIT FROM THIS.
20      I WOULD REPRESENT TO YOU, YOUR HONOR, I THINK THAT
21 WE'VE ACTED IN COMPLETE GOOD FAITH IN THIS RESPECT. IN TERMS
22 OF COST-SHIFTING, THE COST THAT WE'VE BORNE IN RESPONSE TO SOME
23 OF THE DISCOVERY IN THIS CASE IS JUST ASTRONOMICAL. AND ONE OF
24 THE MOTIONS THAT YOU'RE GOING TO HEAR ABOUT SOON, YOUR HONOR,
25 IS THAT THERE'S A MOTION IN FRONT OF JUDGE INFANTE, THAT WE

Page 72

1  JUST LEARNED ABOUT ON THURSDAY IN THE OPPOSITION -- IF YOU'RE
2  TALKING ABOUT COST-SHIFTING -- WHERE -- AND I THINK IN ONE OF
3  OUR PAPERS HERE, WE SAID THAT WE'VE PAID -- EXCLUSIVE
4  ATTORNEY'S FEE, WE'VE PAID $4 MILLION TO MAKE PRODUCTION HERE.
5  WE LEARNED ON THURSDAY THAT DESPITE JUDGE INFANTE'S ORDERS IN
6  THIS CASE, MATTEL HAS NOT REVIEWED LIVE E-MAILS OR BACKUP TAPE
7  E-MAILS IN DOING THEIR PRODUCTION REQUESTS, BECAUSE ON THEIR
8  OWN, THEY DETERMINED THAT IT WAS TOO EXPENSIVE.
9       SO I'M JUST SAYING, YOUR HONOR, I RESPECTFULLY DO NOT
10 BELIEVE THAT IT IS APPROPRIATE FOR COST-SHIFTING HERE,
11 ESPECIALLY WHEN WE HAVE PROVIDED THEM SO MUCH DISCOVERY HERE,
12 IN TERMS OF OBJECTS, MOLDS -- THEY ALREADY HAVE OTHER MOLDS
13 THAT WERE USED, YOUR HONOR. THEY COULD EASILY GO, WALK ACROSS
14 THE STREET, DO WHATEVER CAMERA PHOTOGRAPHS THEY NEED. WE'VE
15 ALREADY PROVIDED DIGITAL PHOTOGRAPHS TO THEM.
16      THE COURT: OKAY, COUNSEL. I THINK I UNDERSTAND YOUR
17 POSITION.
18      LET ME HEAR FROM MR. COREY ON THIS.
19      AND, MR. COREY, MAYBE I SHOULD SAY THIS: I AGREE
20 THAT YOU NEED TO HAVE ACCESS TO THESE, AND I'M PREPARED TO GIVE
21 YOU LEAVE THROUGH THE MONTH OF FEBRUARY, UNTIL MARCH 1ST, TO
22 HAVE ACCESS TO THESE, TO TAKE THE THREE-DIMENSIONAL
23 PHOTOGRAPHS.
24      MY QUESTION IS -- WHAT I'M DECIDING HERE IS BASICALLY
25 ON THE COST-SHIFTING ISSUE.

Page 73

1       MR. COREY: WITH RESPECT TO THE COST-SHIFTING ON THIS
2  PARTICULAR ISSUE, I DO THINK IT'S APPROPRIATE, AND IT'S
3  APPROPRIATE FOR THE REASON THAT THE COURT IDENTIFIED; THAT IF
4  THERE HAD BEEN SOME SHOWING OF DILIGENCE, THEN WE COULD HAVE
5  DEALT WITH THE UNDERTAKING SOONER. IT COULD HAVE BEEN PRODUCED
6  IN THE UNITED STATES.
7       I THINK THE FACT THAT THEY'RE JUST GETTING AROUND TO
8  IDENTIFYING THE UNDERTAKING NOW, SAYING THAT THEY'RE
9  TRYING TO DEAL WITH IT IN THIS VERY COMPRESSED PERIOD OF TIME,
10 IN LIGHT OF THE FACT THAT JUDGE INFANTE HAD ORDERED THAT THESE
11 THINGS SHOULD HAVE BEEN PRODUCED OR MADE AVAILABLE TO US MONTHS
12 AGO --
13      THE COURT: CAN I REALLY MAKE THAT FINDING, THOUGH,
14 BECAUSE I REALLY DON'T KNOW ENOUGH ABOUT THAT COURT PROCEEDING
15 OVER IN HONG KONG TO SAY WHETHER THIS CHALLENGE TO THE
16 UNDERTAKING OR REQUEST FOR RELIEF FROM THE UNDERTAKING WOULD
17 HAVE BEEN MADE IN OCTOBER, AS OPPOSED TO JANUARY, THAT THAT
18 REALLY WOULD HAVE HAD ANY DIFFERENT RESULT.
19      MR. COREY: I THINK THE ABSENCE OF EVIDENCE ON THIS
20 IS SIGNIFICANT, BUT I DON'T THINK THAT SHOULD BEAR AGAINST
21 MATTEL. THE ONUS IS ON THEM TO SAY, 'THIS IS THE NATURE OF THE
22 UNDERTAKING, THIS IS THE NATURE OF THE PROCEEDING.' THEY
23 HAVEN'T EVEN IDENTIFIED THE PROCEEDING FOR US.
24      THIS ISN'T AN OBJECTION OR ANYTHING THAT THEY HAD
25 RAISED IN FRONT OF JUDGE INFANTE, WHEN THESE REQUESTS WERE IN

19 (Pages 70 to 73)

Exhibit 10
Page ____ 356

Page 74

1  FRONT OF HIM. SO I DON'T THINK THAT BURDEN, PARTICULARLY IN
2  LIGHT OF THE ABSENCE OF EVIDENCE, AN ARTICULATION OF WHAT
3  EXACTLY THE NATURE OF THIS UNDERTAKING IS. WHAT PRODUCTS OR
4  WHAT ITEMS THIS APPLIES TO SHOULD BE BORNE BY MATTEL.
5       THE COURT: IS THERE ANYTHING ELSE YOU WANT TO SAY,
6  COUNSEL?
7       MR. COREY: YES. VERY BRIEFLY.
8       WHAT WE'RE REALLY CONCERNED ABOUT HERE IS BEING
9  PREJUDICED WITH RESPECT TO WHAT OUR EXPERTS CAN LOOK AT; AND
10  THAT'S THE REASON THAT THIS IS BEFORE THIS COURT AND NOT BEFORE
11  JUDGE INFANTE.
12       WE WOULD LIKE SOME RELIEF, OR AT LEAST THE ABILITY TO
13  SUPPLEMENT OUR INITIAL EXPERT REPORTS WITH INFORMATION THAT WE
14  MAY OBTAIN FROM THESE SCANS.
15       AND THE NEXT POINT IS, WE APPRECIATE THE OPPORTUNITY
16  TO DO IT BY THE END OF FEBRUARY. WE WILL TRY TO DO THAT. THE
17  CHINESE NEW YEAR, HOWEVER, RUNS BETWEEN, I BELIEVE,
18  FEBRUARY 2ND AND FEBRUARY 16TH, WHEN NOTHING CAN REALLY HAPPEN.
19  MY UNDERSTANDING IS THAT IT TAKES ABOUT TEN DAYS TO GET THROUGH
20  CUSTOMS WITH THIS TYPE OF SCANNING EQUIPMENT.
21       WHAT WOULD MAKE IT EXCEEDINGLY --
22       THE COURT: THEY DON'T HAVE THAT OVER THERE? HONG
23  KONG IS PRETTY ADVANCED.
24       MR. QUINN: IT'S THE CONSULTANT'S SCANNING EQUIPMENT.
25  I CAN'T SPEAK INTELLIGENTLY TO EXACTLY WHAT IT IS. IT'S HIS

Page 75

1  EQUIPMENT. IT'S SET UP THE WAY HE LIKES IT. IF HE USES
2  SOMEBODY ELSE'S SCANNING EQUIPMENT, I GUARANTEE YOU, HE WOULD
3  BE CROSS-EXAMINED ON THE FACT THAT HE DIDN'T USE HIS OWN
4  EQUIPMENT. THAT'S REALLY WHAT IT COMES DOWN TO.
5       THE COURT: I SEE.
6       MR. COREY: WE WILL TRY TO GET IT ACCOMPLISHED IN
7  MARCH. WHAT WOULD BE EXCEEDINGLY HELPFUL IS IF ALL OF THE
8  MATERIALS CAN BE MADE AVAILABLE IN A SINGLE LOCATION. I
9  UNDERSTAND THAT (UNINTELLIGIBLE) IS ABOUT 20 MILES FROM HONG
10  KONG. IF ALL OF THOSE MATERIALS COULD BE MADE AVAILABLE IN THE
11  SAME LOCATION, THAT WOULD PREVENT THE CONSULTANT FROM HAVING TO
12  TAKE HIS SCANNING EQUIPMENT THROUGH CUSTOMS TWICE.
13       THE COURT: RIGHT. YOU JUST WANT TO GO INTO THE
14  ADMINISTRATIVE ZONE OF HONG KONG AND NOT HAVE TO GO INTO THE
15  PRC ITSELF.
16       MR. COREY: RIGHT. ABSOLUTELY.
17       THE COURT: I'M NOT SUGGESTING THAT HONG KONG IS NOT
18  PART OF THE PRC.
19       MR. COREY: ALL I'M SAYING IS, IF WE CAN GO THROUGH
20  CUSTOMS ONCE, THAT WOULD BE MUCH EASIER.
21       THE COURT: VERY WELL.
22       COUNSEL, WHAT ABOUT THE IDEA OF BRINGING IT TOGETHER
23  IN HONG KONG? IS THAT SOMETHING THAT CAN HAPPEN?
24       MR. NOLAN: YOUR HONOR, WE WOULD TRY TO ACCOMMODATE,
25  FOR THE CONVENIENCE OF THE PARTY, PUTTING THEM ALL IN ONE

Page 76

1  LOCATION. HOWEVER, I CANNOT TALK TO THE CUSTOMS PROCEDURES. I
2  DON'T KNOW HOW EASY IT IS TO GET THE MOLDS TO HONG KONG OR GET
3  THE PRODUCT THAT'S IN HONG KONG OVER TO CHINA. I THINK THAT
4  THERE ARE ISSUES.
5       AND I RESPECTFULLY SUBMIT, YOUR HONOR, THAT IF THIS
6  IS JUST A -- AND I'M NOT SAYING "JUST" A CONSULTANT -- BUT IF
7  THIS IS BECAUSE THEY'RE USING A PARTICULAR CONSULTANT WHO LIKES
8  A PARTICULAR CAMERA, A, I DON'T THINK THERE'S A REASON FOR THE
9  COST-SHIFTING TO ME, AS A RESULT BECAUSE THEY HAVE A PREFERENCE
10  TO USE ONE CAMERA VERSUS --
11       THE COURT: IT'S NOT A PREFERENCE. HE'S CONCERNED
12  ABOUT YOUR OBJECTION TO THE EXPERT RELYING ON SOMEBODY ELSE'S
13  THREE-DIMENSIONAL PHOTOGRAPHS. THEY'RE WILLING TO STIPULATE TO
14  WHATEVER THESE PHOTOGRAPHS ARE AND NOT RAISE ANY OBJECTION.
15       MR. NOLAN: YOUR HONOR, WE PROVIDED THEM DIGITAL
16  PHOTOGRAPHS. THEY ASKED US TO TAKE THE DIGITAL PHOTOGRAPHS.
17  YOUR HONOR, IF THEY WANT TO COME TO US AND SHOW US PHOTOGRAPHS
18  OF THESE OBJECTS AND LET US BE THERE WHEN THEY TAKE THE
19  PHOTOGRAPHS, WE'VE GOT -- WE'RE GOING TO WIN THIS CASE IN A
20  DIFFERENT WAY THAN WORRYING ABOUT WHETHER OR NOT THE CAMERA WAS
21  AN INSTAMATIC OR A VIDEO CAMERA.
22       THE COURT: ALL RIGHT.
23       MR. NOLAN: BUT I DO WANT TO MAKE ONE LAST POINT ON
24  THIS, SO THE RECORD IS CLEAR, YOUR HONOR.
25       WE IDENTIFIED, IN DECEMBER, IN FACT DECEMBER 7TH,

Page 77

1  THAT THERE WAS AN UNDERTAKING THAT WE HAD TO DEAL WITH; AND IT
2  WAS MATTEL THAT ASKED US FOR THE RIGHT TO INSPECT IN HONG KONG.
3  AND WE IMMEDIATELY SAID YES.
4       AT THE SAME TIME, WE DID THIS DOUBLE-TRACKING.
5       IT WASN'T UNTIL DECEMBER 26TH, FOR WHATEVER REASON --
6  WHY IT TOOK 22 DAYS, I DON'T KNOW -- FOR THEM TO ADVISE US THAT
7  THEY WERE GOING TO HAVE TROUBLE GETTING A CAMERA THROUGH
8  CUSTOMS. IT WAS GOING TO TAKE SEVEN DAYS TO GET THROUGH
9  CUSTOMS.
10       ALL I'M SAYING IS, YOUR HONOR, I'M JUST ADDRESSING
11  THIS COST-SHIFTING ISSUE.
12       THE COURT: VERY WELL.
13       MR. COREY: EXTRAORDINARILY BRIEFLY.
14       JUST SO THERE'S NO CONFUSION, WE'RE NOT TALKING
15  ABOUT, LIKE, A CAMERA THAT YOU CAN GO BUY AT A STORE. I MEAN,
16  THE EQUIPMENT COSTS ABOUT A QUARTER OF A MILLION DOLLARS; AND
17  THAT'S BEFORE IT'S CALIBRATED. THE DEGREE OF PRECISION HERE IS
18  VERY SIGNIFICANT. I'M NOT TALKING ABOUT SOMETHING SOMEBODY CAN
19  RUN DOWN TO BEST BUY AND BUY. IT'S NOT A TRIVIAL UNDERTAKING.
20       THE COURT: BUT IF THERE IS SOMEBODY WITH THAT KIND
21  OF EQUIPMENT AND THAT KIND OF EXPERTISE TO DO IT OVER IN HONG
22  KONG ALREADY, AND COUNSEL IS WILLING TO STIPULATE THAT WHATEVER
23  PICTURE THEY TAKE CAN BE USED BY THE EXPERT FOR HIS PURPOSES,
24  AND THERE'S NOT GOING TO BE ANY AUTHENTICATION OR FOUNDATION OR
25  CHALLENGE BASED ON THE PHOTOGRAPH ITSELF, THEN THAT WOULD SAVE

20 (Pages 74 to 77)

Exhibit 10

Page _____ 357

Page 78

1 A LOT OF MONEY AND A LOT OF TIME AND EFFORT FOR EVERYBODY;
2 CORRECT?
3     MR. COREY: IT THEORETICALLY WOULD. BUT IN LIGHT OF
4 THE CHINESE NEW YEAR, THAT'S NOT A PROCESS WE WOULD EVEN BE
5 ABLE TO START UNTIL THE SECOND HALF OF THIS MONTH.
6     THE COURT: ALL RIGHT.
7     WELL, ASSUMING THE COURT GAVE YOU SUFFICIENT TIME TO
8 OBTAIN THIS...
9     MR. COREY: THAT'S REALLY THE BASIS FOR OUR MOTION,
10 IS WE DON'T WANT TO BE PREJUDICED BY HAVING THIS STUFF GIVEN TO
11 US --
12     THE COURT: YOU'RE NOT GOING TO BE PREJUDICED.
13     MR. NOLAN: BY THE WAY, WE DON'T OPPOSE THE
14 SUPPLEMENTATION OF THE EXPERT REPORTS. IN FACT, I THINK SINCE
15 THE WAY THE TIMING IS GOING TO BE WITH JUDGE INFANTE'S RULINGS
16 COMING OUT ON EITHER THE 11TH OR THE 13TH, I THINK BOTH SIDES
17 ARE GOING TO HAVE TO BE SUPPLEMENTING THEIR EXPERT REPORTS THAT
18 ARE DUE ON THE 11TH. IT'S JUST GOING TO BE VIRTUALLY
19 IMPOSSIBLE. SO WE HAVE NO OBJECTION, YOUR HONOR, AS THIS PLAYS
20 OUT, IF THEY HAVE TO SUPPLE ONE OF THEIR EXPERTS.
21     MR. COREY: WE'VE IDENTIFIED SOME THINGS THAT HAVE
22 BEEN IN OUR REPLY ON PAGES 1 AND 2 THAT HAVE BEEN IDENTIFIED IN
23 THE DOCUMENT PRODUCTION, THAT ARE TANGIBLE ITEMS, THAT HAVE NOT
24 BEEN PROVIDED.
25     I'D ENCOURAGE THE COURT TO LOOK AT THAT.

Page 79

1     THE COURT: I AM GOING TO GRANT THE EX-PARTE
2 APPLICATION IN PART. I AM GOING TO GRANT LEAVE TO MATTEL TO
3 TAKE THESE PHOTOGRAPHS AND OBTAIN THIS INFORMATION AND TO
4 REVIEW THE MOLDS.
5     I'M DISINCLINED AT THIS POINT TO MAKE THE
6 COST-SHIFTING. I WILL GIVE LEAVE TO SUPPLEMENT EXPERT REPORTS,
7 THOUGH, DEPENDING ON THE TIMING AND WHEN THIS INFORMATION AND
8 THESE THINGS ARE MADE AVAILABLE. BUT I DO WANT COUNSEL TO MEET
9 AND CONFER.
10     AND THE COURT'S DENIAL OF THE COST-SHIFTING IS MADE
11 WITHOUT PREJUDICE. IF EITHER SIDE IS UNREASONABLE IN TERMS OF
12 HOW THEY GO ABOUT MAKING THESE MOLDS AVAILABLE, THE COURT MIGHT
13 RECONSIDER IT DOWN THE ROAD. BUT LET'S TRY TO GET THESE MOLDS
14 TOGETHER IN HONG KONG, IF WE CAN. IF WE CAN'T, WE CAN'T. AND
15 I'M NOT GOING TO ORDER YOU TO DO SOMETHING YOU CAN'T DO.
16     LET'S TRY TO FIND SOMEBODY OVER THERE ON THE GROUND
17 THAT CAN TAKE IT AND WORK OUT A STIPULATION IN TERMS OF ANY
18 OBJECTIONS TO THAT BEING RELIED UPON BY THE EXPERT. AND IF
19 ANYONE IS UNREASONABLE IN TRYING TO COME UP WITH SOME
20 COST-SAVING MEASURES, THEN THE COURT MIGHT RECONSIDER IMPOSING
21 COSTS. BUT ASSUMING THAT EVERYONE IS WORKING IN GOOD FAITH,
22 I'M GOING TO DECLINE TO DO THAT.
23     THE LAST EX-PARTE APPLICATION IS CONCERNING THE
24 COMPELLING OF PRODUCTION OF ELECTRONIC MEDIA FROM THIRD
25 PARTIES, OR, IN THE ALTERNATIVE, MODIFYING THE SCHEDULING

Page 80

1 ORDER.
2     MY SENSE ON THIS EX-PARTE APPLICATION IS THAT THIS IS
3 SOMETHING WHICH IS PROPERLY BEFORE JUDGE INFANTE. IT'S NOT
4 CLEAR TO ME WHY THIS SHOULD NOT BE, AS OTHER DISPUTES OVER
5 PROVIDING THE ELECTRONIC MEDIA -- WHY IT IS NOT BEFORE
6 JUDGE INFANTE.
7     SO I'D LIKE TO HEAR FROM THE PLAINTIFF, FROM MATTEL,
8 ON THIS.
9     IN FACT, MR. NOLAN ACTUALLY MAKES THE ACCUSATION THAT
10 YOU'RE DOING A BIT OF FORUM SHOPPING IN THIS; THAT YOU GOT AN
11 ADVERSE RULING ON THIS BEFORE JUDGE INFANTE ON AN UNRELATED
12 WITNESS AND THAT'S WHY YOU'RE BEFORE THE COURT HERE ON THIS.
13     IS JUST NOT CLEAR TO ME, MR. COREY, WHY THIS IS
14 BEFORE THIS COURT AND NOT BEFORE JUDGE INFANTE.
15     MR. COREY: THE REASON THIS APPLICATION IS BEFORE
16 THIS COURT IS THE SAME AS THE OTHER APPLICATION. ONLY YOUR
17 HONOR HAS THE ABILITY TO ENSURE THAT WE CAN EITHER GET RELIEF
18 FROM THE EXPERT CUTOFF -- FROM THE FILING OF THE EXPERT CUTOFF
19 DATE, BUT BY RELYING ON INFORMATION THAT IS THE SUBJECT OF THIS
20 EX-PARTE APPLICATION THAT WE WILL UNDOUBTEDLY RECEIVE AFTER THE
21 CLOSE OF DISCOVERY.
22     THE COURT: AND THAT'S FAIR ENOUGH. AND I WILL
23 CERTAINLY GIVE ANY PARTY LEAVE TO COME BACK TO THE COURT AFTER
24 A RULING BY JUDGE INFANTE THAT APPARENTLY HAS AN EFFECT OR IS
25 MAKING THE SCHEDULING ORDER UNMANAGEABLE OR NEEDS RELIEF TO

Page 81

1 FILE A SUPPLEMENTAL EXPERT REPORT, OR WHATEVER IT MIGHT BE.
2 BUT IN THE FIRST INSTANCE, I THINK THIS ISSUE SHOULD BE DECIDED
3 BY JUDGE INFANTE. I DON'T WANT TO HAVE ME DECIDING SOME OF
4 THESE ISSUES AND JUDGE INFANTE DECIDING OTHER ONES.
5     MR. COREY: WE'LL PUT THIS IN FRONT OF JUDGE INFANTE,
6 YOUR HONOR.
7     THE COURT: VERY WELL.
8     SO THIS EX-PARTE APPLICATION IS DENIED.
9     I THINK THAT TAKES CARE OF ALL OF IT. I'M GOING TO
10 ISSUE AN ORDER THIS AFTERNOON WHICH WILL SPELL THIS OUT AS
11 CLEARLY AS I CAN. IF THERE ARE ANY QUESTIONS ABOUT IT, COME
12 BACK EARLY AS OPPOSED TO LATER.
13     AND MR. QUINN...
14     MR. QUINN: YOUR HONOR, JUST ONE THING THAT HAD
15 OCCURRED TO ME ABOUT PUTTING PHASE TWO DEPOSITIONS OFF. THERE
16 IS ONE IN LONDON THIS WEEK. OUR LAWYER IS ALREADY ON AN
17 AIRPLANE TO GET OVER THERE; THAT'S MR. BRAUR.
18     I DON'T KNOW IF THAT'S GOING TO BE A PROBLEM.
19     MR. NOLAN: NO ISSUE. WE'LL AGREE.
20     MR. DICANIO, WHO'S OVER IN LONDON, WILL KILL ME IF HE
21 COMES HOME WITHOUT HAVING BEEN DEPOSED. WE MADE HIM AVAILABLE
22 ONE DAY IN LONDON AND --
23     THE COURT: SOUNDS GOOD.
24     MR. QUINN: THEN, YOUR HONOR, WE'RE THINKING AHEAD TO
25 SUMMARY JUDGMENT MOTIONS. I KNOW WE ALL ARE LOOKING AT THIS

FEBRUARY 4, 2008      ED CV 04-9059-SGL

Exhibit 10
Page 358

Page 82

1  CASE AND THINKING ABOUT WAYS IT MIGHT BE CUT DOWN AND SHAPED
2  FOR TRIAL.
3       WE'RE AWARE OF YOUR HONOR'S RULE IN THIS COURTROOM
4  THAT THERE BE ONLY ONE MOTION.
5       THE COURT:  YES.
6       MR. QUINN:  IT SEEMS TO US THAT -- AS WE LOOK AT IT,
7  WE SEE SEVERAL ISSUES, SEVERAL SIGNIFICANT ISSUES, WHICH MIGHT
8  APPROPRIATELY BE DEALT WITH BY SUMMARY JUDGMENT MOTION.
9       THE COURT:  WHEN I SAY ONLY ONE MOTION, I'M NOT
10 SUGGESTING THAT YOU HAVE TO PICK ONLY ONE ISSUE.  YOU CAN
11 CERTAINLY BRING AS MANY ISSUES IN THAT MOTION AS YOU NEED TO
12 BRING.  I JUST DON'T WANT TO HAVE SUMMARY JUDGMENT MOTIONS ON
13 MULTIPLE DAYS.  THAT'S REALLY NOT EVEN IN PLAY IN THIS CASE.  I
14 DON'T WANT A MOTION FOR SUMMARY JUDGMENT BROUGHT HALFWAY
15 THROUGH DISCOVERY AND THEN ANOTHER ONE BROUGHT LATER.  I JUST
16 WANT TO DEAL WITH ALL OF THE ISSUES THAT COULD BE RAISED ON A
17 MOTION FOR SUMMARY JUDGMENT AT ONCE.
18      MR. QUINN:  THE REASON I RAISE THE ISSUE, YOUR HONOR,
19 IS BECAUSE, PRESUMABLY, THE PAGE LIMIT WOULD APPLY.  IN A CASE
20 LIKE THIS, WE MIGHT NEED --
21      THE COURT:  I ASSUME YOU KNOW HOW TO GO ABOUT ASKING
22 FOR A WAIVER OF THE PAGE LIMIT.
23      MR. QUINN:  THANK YOU, YOUR HONOR.
24      THE COURT:  ALTHOUGH THAT'S REALLY TEMPTING NOT TO
25 DO IT.

Page 83

1       MR. NOLAN:  YOUR HONOR, WE WOULD ASK, JUST LIKE
2  NANCY REAGAN, 'JUST SAY NO.'  SOMETIMES THAT WILL WORK.
3       YOUR HONOR, CAN I HAVE ONE CLARIFICATION WITH RESPECT
4  TO SCHEDULING?
5       WHEN IS MATTEL TO FILE A RESPONSE WITH RESPECT TO THE
6  MANNER AND THE CONDUCT OF THE INTERVIEWS OF MS. CABRERA AND
7  MORALES?  IS IT FRIDAY?  AND IS THERE A HEARING ON MONDAY ABOUT
8  THAT?
9       THE COURT:  THAT'S CORRECT.  THERE'S AN OPPOSITION ON
10 WEDNESDAY; MATTEL'S REPLY IS FRIDAY; AND THE HEARING IS ON
11 MONDAY.
12      MR. NOLAN:  THAT WAS ON THE BANDYING.
13      THE COURT:  OH, I'M SORRY.
14      MR. NOLAN:  ON CABRERA AND MORALES, I THOUGHT THAT
15 YOU HAD SUGGESTED THAT YOU WANTED TO HANDLE THAT.
16      THESE ARE THE TWO HISPANIC WOMEN.
17      THE COURT:  RIGHT.  THAT'S ONLY IF -- THERE'S GOING
18 TO BE A MEET-AND-CONFER, AND I HOPE THEY'RE GOING TO WORK THIS
19 ALL OUT BETWEEN THEM.  ONLY IF THERE'S A MOTION.  AND THEN
20 SHE'S INVITED TO BRING THAT MOTION ON THE 11TH OR THE 25TH,
21 WHATEVER IT IS, AND I'LL LET YOU WORK OUT A SCHEDULING ORDER,
22 AS LONG AS I HAVE THE BRIEFS THE FRIDAY BEFORE THE MONDAY
23 HEARING.  I SET THAT FOR THE 11TH, BECAUSE I TRUST COUNSEL CAN
24 WORK THAT OUT.
25      MR. NOLAN:  BECAUSE I HAD UNDERSTOOD THAT MR. COREY

Page 84

1  AND MR. QUINN WERE ASKED TO FILE A RESPONSE OR A REPLY TO THE
2  COURT WITH RESPECT TO THE CIRCUMSTANCES.
3       THE COURT:  I THINK THEY INDICATED THAT THEY ALREADY
4  HAVE FILED A REPLY AND THAT THERE'S INFORMATION CONCERNING THAT
5  ON THIS.
6       MR. NOLAN:  I APOLOGIZE FOR NOT UNDERSTANDING.
7       THE COURT:  AM I RIGHT, MR. QUINN?
8       MR. QUINN:  THAT WAS MY UNDERSTANDING.
9       THE COURT:  THEY JUST DIDN'T KNOW ANYTHING ABOUT THE
10 REPLY; THAT WAS SOMEBODY ELSE WHO WROTE THAT; SO THEY DON'T
11 WANT TO TALK TO ME ABOUT IT RIGHT NOW.
12      THANK YOU.  GOOD AFTERNOON.
13
14
15
16
17
18             CERTIFICATE
19
20 I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
   STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
21 THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
   ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22 CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
   THE UNITED STATES.
23
24 _____     _____
   THERESA A. LANZA, CSR, RPR              DATE
25 FEDERAL OFFICIAL COURT REPORTER

22 (Pages 82 to 84)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 11**

**EXHIBIT TO:**   **DECLARATION OF LARRY MCFARLAND IN SUPPORT OF RESPONSE TO ORDER TO SHOW CAUSE OF LARRY MCFARLAND, LUCY ARANT, SARAH HALPERN, AND PETER MARLOW**

AO88  (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

CENTRAL     DISTRICT OF CALIFORNIA

CARTER BRYANT, an Individual,

## SUBPOENA IN A CIVIL CASE

V.

MATTEL, INC., a Delaware Corporation,

Case Number:[1] CV 04-9049 SGL (RNBx)
Consolidated with cases CV 04-9059 and CV 05-2727

TO:  Anaelise Cloonan-Sandham, c/o Keats McFarland & Wilson LLP
     9720 Wilshire Blvd., Penthouse Suite
     Beverly Hills, CA 90212

[X]  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| United States District Court<br>Eastern Division, Riverside<br>3470 Twelfth Street<br>Riverside, CA 92501 | Courtroom No. 1 |
| | DATE AND TIME<br>May 27, 2008<br>9:00 a.m. |

[ ]  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

[ ]  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

[ ]  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Mattel, Inc. | December 14, 2007 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Diane Hutnyan, Esq., Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017 (213) 443-3112

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

Exhibit 11
Page    360

AO88  (Rev.  12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be from which the subpoena issued. An adequa when a subpoena purports to require a nonpa not within the limits provided in clause (ii) of s

Exhibit 11

Page _____ 361

AO88  (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

CENTRAL      DISTRICT OF   CALIFORNIA

CARTER BRYANT, an Individual,

V.

MATTEL, INC., a Delaware Corporation,

## SUBPOENA IN A CIVIL CASE

Case Number:[1]  CV 04-9049 SGL (RNBx)
Consolidated with cases CV 04-9059
and CV 05-2727

TO:  Margaret Leahy, c/o Keats McFarland & Wilson LLP
     9720 Wilshire Blvd., Penthouse Suite
     Beverly Hills, CA 90212

[X]  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
     testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| United States District Court<br>Eastern Division, Riverside<br>3470 Twelfth Street<br>Riverside, CA 92501 | Courtroom No. 1 |
| | DATE AND TIME<br>May 27, 2008<br>9:00 a.m. |

[ ]  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in
     the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

[ ]  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
     place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

[ ]  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Mattel, Inc. | December 12, 2007 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
B. Dylan Proctor, Esq., Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017 (213) 443-3112

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

Exhibit 11
Page _____ 362

AO88  (Rev.  12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
|      |       |

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|
|                        |                   |

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|
|                        |       |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|------|---------------------|
|      |                     |

| | ADDRESS OF SERVER |
|-|-------------------|
| |                   |

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

e) CONTEMPT. Failure of any person _____ _____ excuse to obey a subpoena served upon that person may _____ _____ from which the subpoena issued. An ade_____ _____ when a subpoena purports to require a no ____ _____ not within the limits provided by clause (ii) or _____

Exhibit 11

Page _____363_____

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Carter Bryant v. Mattel Inc.
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 12**

**EXHIBIT TO:**   **DECLARATION OF LARRY MCFARLAND IN SUPPORT OF RESPONSE TO ORDER TO SHOW CAUSE OF LARRY MCFARLAND, LUCY ARANT, SARAH HALPERN, AND PETER MARLOW**

Page 1

```
 1                UNITED STATES DISTRICT COURT
 2               CENTRAL DISTRICT OF CALIFORNIA
 3                    EASTERN DIVISION
 4                       - - -
 5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING
 6                       - - -
 7   CARTER BRYANT, ET. AL.,          )
                                      )
 8                    PLAINTIFFS,     )
                                      )
 9              VS.                   )   NO. ED CV 04-09049
                                      )   (LEAD LOW NUMBER)
10   MATTEL, INC., ET. AL.,           )
                                      )
11                    DEFENDANTS.     )   MOTIONS
     _____)
12   AND CONSOLIDATED ACTIONS,        )
                                      )
13
14
15          REPORTER'S TRANSCRIPT OF PROCEEDINGS
16                 RIVERSIDE, CALIFORNIA
17               MONDAY, JANUARY 7, 2008
18                    10:11 A.M.
19
20
21
22
23            THERESA A. LANZA, RPR, CSR
            FEDERAL OFFICIAL COURT REPORTER
24            3470 12TH STREET, RM. 134
            RIVERSIDE, CALIFORNIA  92501
25                 951-274-0844
              CSR11457@SBCGLOBAL.NET
```

Page 2

```
1   APPEARANCES:
2   ON BEHALF OF CARTER BRYANT:
3        KEKER & VAN NEST
             BY:  CHRISTA M. ANDERSON
4        710 SANSOME STREET
             SAN FRANCISCO, CALIFORNIA  94111-1704
5        415-391-5400
6
     ON BEHALF OF MATTEL:
7
             QUINN EMANUEL
8            BY:  JOHN QUINN
             BY:  MICHAEL T. ZELLER
9        865 S. FIGUEROA STREET,
             10TH FLOOR
10       LOS ANGELES, CALIFORNIA  90017
             213-624-7707
11
12   ON BEHALF OF MGA ENTERTAINMENT:
13       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
             BY:  THOMAS J. NOLAN
14           BY:  CARL ALAN ROTH
             BY:  AMY S. PARK
15       300 SOUTH GRAND AVENUE
             LOS ANGELES, CALIFORNIA  90071-3144
16       213-687-5000
17
     ON BEHALF OF GUSTAVO MACHADO:
18
             OVERLAND BORENSTEIN COTE & KIM LLP
19           BY:  MARK E. OVERLAND
             300 SOUTH GRAND AVENUE
20           SUITE 2750
             LOS ANGELES, CALIFORNIA  90071
21           213-613-4660
22
23
24   ///
25   ///
```

Page 4

```
1                    I N D E X
2                                PAGE
3    MOTIONS.....................................    5
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
1   APPEARANCES (CONTD):
2
3   ON BEHALF OF NON-PARTY KAYE SCHOLER:
4        KAYE SCHOLER LLP
             BY:  BRYANT S. DELGADILLO
5        1999 AVENUE OF THE STARS
             SUITE 1600
6        LOS ANGELES, CALIFORNIA  90067-6048
             310-788-1341
7
8   ON BEHALF OF NON-PARTY STERN & GOLDBERG:
9        STERN & GOLDBERG:
             BY:  KIEN C. TIET
10       6345 BALBOA BOULEVARD,
             SUITE 200
11       ENCINO, CALIFORNIA  91316
             818-758-3940
12
13   ON BEHALF OF NON-PARTY FARHAD LARIAN:
14       CHRISTENSEN, GLASER, FINK,
             JACOBS, WEIL & SHAPIRO, LLP
15           BY:  ALISA MORGENTHALER LEVER
             10250 CONSTELLATION BOULEVARD
16       LOS ANGELES, CALIFORNIA  90067
             310-553-3000
17
18   ON BEHALF OF DEFENDANTS CLOONAN, MARLOW,
     HALPERN, LEAHY, AND ARONT:
19
             KEATS MCFARLAND & WILSON, LLP
20           BY:  LARRY W. MCFARLAND
             9720 WILSHIRE BOULEVARD
21       BEVERLY HILLS, CALIFORNIA  90212
             310-777-3750
22
23
24
25
```

Page 5

```
1    RIVERSIDE, CALIFORNIA; MONDAY, JANUARY 7, 2008; 10:11 A.M.
2              -OOO-
3        THE CLERK:  CALLING CALENDAR ITEM NUMBER FOUR,
4    CARTER BRYANT, PLAINTIFF, VERSUS MATTEL, CASE NUMBER CV-04-9059
5    AND THE CONSOLIDATED DOCKET NUMBERS CV-04-9049 AND 05-2727.
6        MAY WE HAVE COUNSEL PLEASE STATE YOUR APPEARANCES FOR
7    THE RECORD.
8        MR. NOLAN:  TOM NOLAN, CARL ROTH, AND AMY PARK ON
9    BEHALF OF MGA.
10       MS. ANDERSON:  CHRISTA ANDERSON ON BEHALF OF
11   CARTER BRYANT.
12       MR. OVERLAND:  MARK OVERLAND ON BEHALF OF
13   MR. MACHADO.
14       MR. MCFARLAND:  LARRY MCFARLAND ON BEHALF OF
15   MS. CLOONAN, MS. LEAHY, MS. MARLOW, MS. ARONT, AND MS. HALPERN.
16       MS. MORGENTHALER:  ALISA MORGENTHALER, OF CHRISTENSEN
17   GLASER, ON BEHALF OF NONPARTY FARHAD LARIAN.
18       MR. TIET:  KIEN TIET ON BEHALF OF NONPARTY STERN
19   & GOLDBERG.
20       MR. DELGADILLO:  BRYANT DELGADILLO ON BEHALF OF
21   NONPARTY KAYE SCHOLER, LLP.
22       MR. QUINN:  JOHN QUINN AND MIKE ZELLER ON BEHALF OF
23   MATTEL.
24       THE COURT:  THE COURT HAS SEVERAL MATTERS BEFORE IT
25   ON THIS MATTER.  I HAVE THE MOST RECENTLY FILED MGA'S AND
```

2 (Pages 2 to 5)

JANUARY 7, 2008          BRYANT VS. MATTEL

Exhibit 12
Page _____ 365

Page 6

1  CARTER BRYANT'S EX-PARTE APPLICATION TO COMPEL NOTICE
2  DEPOSITIONS; THAT WAS SET BY THE PARTIES, AT LEAST BY THE
3  MOVING PARTY, FOR HEARING FOR THIS MORNING. I DID RECEIVE THE
4  OPPOSITION, AND I HAVE THAT. I THEN HAVE THREE MOTIONS BROUGHT
5  BY MATTEL; THE MOTION REGARDING THE SEPTEMBER 28, 2000 [SIC]
6  DISCOVERY MASTER'S ORDER; THE SECOND MOTION IS A MOTION
7  REGARDING THE AUGUST 27, 2007 COURT ORDER; AND THEN FINALLY, WE
8  HAVE THE MOTION BROUGHT BY MATTEL, BASICALLY THE CLARIFICATION
9  ORDER, OR REQUEST FOR A CLARIFICATION ORDER, IN TERMS OF WHAT
10  THE DISCOVERY MASTER HEARS AND DOESN'T HEAR REGARDING THE THIRD
11  PARTIES.
12      I HAVE DOWN HERE IN MY NOTES THAT 'JUDGE INFANTE
13  HEARS ALL DISCOVERY MOTIONS.'
14      IN ANY EVENT, THAT'S WHAT'S BEFORE ME AT PRESENT.
15      FIRST OF ALL, IS THERE ANYTHING ELSE THAT IS BEFORE
16  THIS COURT THAT I'M NOT AWARE OF?
17  MR. QUINN:  NOT THAT WE KNOW OF, YOUR HONOR.
18  MR. NOLAN:  NOT THAT WE'RE AWARE OF.
19  THE COURT:  VERY WELL.
20      SO THOSE ARE THE FOUR MATTERS THAT I WANT TO TAKE UP.
21      LET ME TAKE UP THE MOTIONS FIRST, AND THEN I'LL TAKE
22  CARE OF THE EX-PARTE, JUST TO DEAL WITH THEM IN THE
23  CHRONOLOGICAL ORDER THAT I'VE RECEIVED OR REVIEWED THEM.
24      THE FIRST MOTION THAT I'LL TAKE UP -- IT'S DOCKET
25  ENTRY NUMBER 1134; IT'S THE MOTION REGARDING THE SEPTEMBER 28,

Page 7

1  2007 DISCOVERY MASTER ORDER. I BASICALLY DIVIDED THIS INTO TWO
2  PARTS. WHAT I'M GOING TO DO IS GIVE YOU MY TENTATIVE THOUGHTS
3  ON IT, AND THEN I'LL CERTAINLY ENTERTAIN WHATEVER ORAL ARGUMENT
4  COUNSEL WISHES TO MAKE AFTER I'VE GIVEN MY THOUGHTS.
5      THE FIRST PART OF THIS ORDER THAT I'VE CONSIDERED IS
6  THE REQUEST TO EXTEND OR PROVIDE ADDITIONAL TIME FOR MATTEL TO
7  DEPOSE CARTER BRYANT. THE COURT IS MINDFUL OF THE STANDARD OF
8  REVIEW OF THE DISCOVERY MASTER'S ORDERS, AND IN LIGHT OF THE
9  STANDARD OF REVIEW, THE COURT IS DISINCLINED TO EXTEND THIS
10  TIME ANY FURTHER.
11      THAT IS NOT TO SAY THAT IF I WAS OPERATING WITH A
12  CLEAN SLATE THAT I WOULD NOT BE PERSUADED BY MATTEL'S ARGUMENT
13  THAT THE AMOUNT OF TIME TO DEPOSE CARTER BRYANT SHOULD NOT HAVE
14  BEEN LONGER TO BEGIN WITH, BUT THE STANDARD HERE IS WHETHER OR
15  NOT THE LEGAL FINDINGS BY THE DISCOVERY MASTER, BY
16  JUDGE INFANTE, WERE CLEARLY ERRONEOUS OR WHETHER THERE WAS ANY
17  CLEAR FACTUAL ERRORS.
18      THERE'S NO DISPUTE, I DON'T THINK, IN TERMS OF ANY
19  FACTUAL FINDINGS THAT THE DISCOVERY MASTER MADE, AND THERE'S
20  NOTHING CLEARLY ERRONEOUS ABOUT HIS LEGAL CONCLUSION; SO IN THE
21  ABSENCE OF THAT, MY TENTATIVE IS NOT TO DISTURB THAT FINDING.
22      WITH RESPECT TO THE OTHER DISCOVERY REQUESTS, I GUESS
23  I'M MORE INCLINED TO GRANT SOME LEAVE TO MATTEL TO OBTAIN SOME
24  ADDITIONAL DISCOVERY. I FEEL THAT A COMBINATION OF EITHER THE
25  STAYS THAT WE IMPLEMENTED IN THE LATTER PART OF LAST YEAR,

Page 8

1  COUPLED WITH DELAYS -- AND I'M NOT TRYING TO SUGGEST THAT
2  ANYONE DID ANYTHING WRONG HERE; I'M SIMPLY SUGGESTING THAT
3  THERE APPEAR TO HAVE BEEN DELAYS IN THE PRODUCTION OF SOME
4  DISCOVERY AND THE TIMING OF THE DISCLOSURES, AND THE TIMING OF
5  THE PROVIDING OF THE DISCOVERY -- THAT MAY, IN FACT, WARRANT
6  THE LEAVE THAT MATTEL IS SEEKING WITH RESPECT TO THAT
7  ADDITIONAL DISCOVERY.
8      AFTER WADING THROUGH THE MATERIALS SUBMITTED TO THE
9  COURT, THAT'S MY INITIAL SENSE OF THIS FIRST MOTION.
10      SO LET ME HEAR FROM WHOMEVER WOULD LIKE TO SPEAK AT
11  THIS POINT.
12  MR. QUINN, IT'S YOUR MOTION. YOU MAY PROCEED FIRST.
13  MR. QUINN:  THANK YOU, YOUR HONOR.
14      IF I COULD, PERHAPS, YOUR HONOR, BEGIN WITH THE
15  REQUEST FOR ADDITIONAL DISCOVERY OTHER THAN THE ADDITIONAL TIME
16  FOR THE BRYANT DEPOSITION WHERE THE COURT HAS INDICATED SOME
17  WILLINGNESS TO GIVE FAVORABLE CONSIDERATION TO THAT REQUEST.
18      WHEN YOU START ANY CIVIL LITIGATION, INCLUDING WHAT
19  WAS OBVIOUSLY FROM THE BEGINNING A BUSINESS LITIGATION CASE
20  WHICH WAS HOTLY CONTESTED, WHERE SUBSTANTIAL AMOUNTS WERE AT
21  ISSUE, IT'S UNDERSTANDABLE THAT STILL ONE WOULD TRY TO SET
22  LIMITS ON WHAT THE SCOPE OF DISCOVERY WOULD BE FROM THE OUTSET.
23  IT'S IN THE PARTIES' INTEREST, AND IT'S OBVIOUSLY IN THE
24  COURT'S INTEREST, AND I THINK UNDER THE FEDERAL RULES, THE
25  COURT OBVIOUSLY HAS A DUTY TO TRY TO DO THAT. AND THE COURT

Page 9

1  INITIALLY DID THAT AND SET A LIMIT OF 24 DEPOSITIONS PER SIDE.
2      AT THE TIME, WE RAISED AN ISSUE THAT WE DIDN'T THINK
3  THAT WAS GOING TO BE ENOUGH, BUT, WELL ENOUGH, THE COURT SAID,
4  LET'S SEE WHAT YOU CAN DO; I DON'T WANT TO SAY THOSE ARE SOFT
5  NUMBERS, BUT LET'S SEE WHAT CAN BE DONE.
6      IF WE STAND BACK AND LOOK AT WHAT THIS CASE IS NOW
7  AND WHAT IT'S BECOME, THERE ARE THREE SORT OF MAJOR PARTS TO
8  IT. THE FIRST PART, THE PHASE ONE, WHAT HAS NOW BEEN SET UP
9  FOR THE PHASE ONE TRIAL, RELATES TO THE ORIGIN OF BRATZ AND
10  CLAIMS FOR DAMAGES OR RESTITUTION OR DISGORGEMENT ARISING OUT
11  OF THAT, WHICH, IT'S ALLEGED, RUN IN THE BILLIONS OF DOLLARS.
12  THAT'S SORT OF THE FIRST THIRD.
13      THE SECOND THIRD, WE HAVE MGA'S COUNTERCLAIM, WHICH
14  REALLY ADDRESSES A WHOLE HOST OF DIFFERENT KINDS OF ISSUES IN
15  CONDUCT, ADVERTISING, COMMUNICATIONS WITH LICENSING BODIES,
16  WHICH PUTS IN ISSUE, BY MGA'S ACCOUNT, SOME 200 DIFFERENT
17  PRODUCTS AND CLAIMS WHICH MGA SAYS AMOUNT TO BILLIONS OF
18  DOLLARS WORTH OF CLAIMS; SO THAT'S SORT OF THE SECOND THIRD.
19      THE FINAL THIRD IS THE CLAIM THAT -- WHEN WE --
20  MATTEL AMENDED ITS COUNTERCLAIM BASED ON EVENTS THAT HAD
21  HAPPENED OR HAD COME TO LIGHT SINCE THE CASE WAS ORIGINALLY
22  FILED, THE TRADE THEFT CLAIMS, THE TRADE THEFT CLAIMS RELATING
23  TO EVENTS IN MEXICO, WHERE, IN FACT, THERE HAD BEEN ARRESTS AND
24  CRIMINAL PROCEEDINGS SIMILARLY IN CANADA, AND WE ALLEGED
25  SIMILAR CONDUCT IN THE UNITED STATES, WHICH RAISED A WHOLE HOST

3 (Pages 6 to 9)

JANUARY 7, 2008        BRYANT VS. MATTEL

Exhibit 12
Page _____ 366

Page 10

1  OF OTHER ISSUES, MOST OF WHICH ARE, PERHAPS, UNRELATED TO BRATZ
2  ITSELF BUT ARE TRADE SECRET THEFT ISSUES.
3        EACH OF THOSE THREE PARTS OF THIS CASE, YOUR HONOR,
4  THEMSELVES, ARE VERY, VERY SUBSTANTIAL CASES WHERE VERY, VERY
5  SUBSTANTIAL AMOUNTS OF MONEY ARE ALLEGED TO BE AT ISSUE; SO WE
6  STARTED OUT WITH SORT OF A HORSEBACK ASSUMPTION:  LET'S SEE IF
7  WE CAN GET IT DONE IN 24 DEPOSITIONS A SIDE.
8        IN THIS CASE, WHAT THAT BOILS DOWN TO, THEN, IS, FOR
9  EACH OF THOSE THREE MAJOR PARTS OF THIS CASE, THAT'S EIGHT
10 DEPOSITIONS PER CASE.  AND I SUBMIT, YOUR HONOR, THAT
11 CONSCIENTIOUS LAWYERS, TRYING TO DO A GOOD JOB AND USING THE
12 TOOLS AVAILABLE UNDER MODERN FEDERAL DISCOVERY, SIMPLY COULD
13 NOT ADEQUATELY PREPARE ANY OF THOSE CASES WITH SIMPLY EIGHT
14 DEPOSITIONS.
15       IF THE COURT SAID, REALLY, I'M NOT INCLINED TO BUDGE
16 FROM THAT, WE'D HAVE A VERY, VERY DIFFERENT KIND OF TRIAL, I
17 SUGGEST, THAN WHAT WE USUALLY HAVE IN FEDERAL COURT TODAY.  IT
18 REALLY WOULD BE WITHOUT THE BENEFIT OF THE FULL EXPLORATION OF
19 THE ISSUES UNDER MODERN DISCOVERY RULES; SO I THINK IT'S PRETTY
20 CLEAR THAT THERE DOES NEED TO BE SOME RELIEF FROM THOSE LIMITS.
21       AND WHEN WE LOOK AT MGA'S EX-PARTE APPLICATION, I
22 THINK WE'RE GOING TO SEE -- ALTHOUGH IT DOES RAISE SOME
23 SLIGHTLY DIFFERENT ISSUES, I THINK MGA IS ALSO FEELING THE
24 PRESSURE HERE OF TRYING TO GET DONE EVERYTHING THAT THEY
25 BELIEVE NEEDS TO BE DONE IN ORDER TO PROPERLY PREPARE THIS

Page 11

1  CASE.
2        THE COURT:  BUT DISCUSS FOR A MOMENT, IF YOU WOULD,
3  THE IMPACT YOU SEE THIS HAVING ON THE COURT'S CALENDAR IN THIS
4  MATTER IN TERMS OF SCHEDULING OF THE TRIAL.  BECAUSE WE WENT
5  DOWN THIS ROAD A LITTLE BIT AT THE END OF LAST YEAR, AND IT WAS
6  REALLY APPARENT THAT IF I BUDGE FROM THE TRIAL DATES, I OPEN UP
7  A PANDORA'S BOX IN TERMS OF SCHEDULING ISSUES.  I MEAN, A
8  NUMBER OF PEOPLE ARE INVOLVED IN THIS THING.  THE IDEA OF
9  TRYING TO COME BACK TOGETHER ON A DATE THAT WORKS IS GOING TO
10 BE HARD.
11       MR. QUINN:  RIGHT.  AND WE ARE NOT ASKING THE COURT
12 TO CHANGE ANY OF THE SCHEDULE IN ANY RESPECT.
13       THE COURT:  BUT I DON'T WANT TO BE UNREALISTIC
14 EITHER.  I MEAN, IF I DO WHAT YOU'RE ASKING IN TERMS OF
15 DISCOVERY AND IF I DO WHAT THE DEFENSE IS ASKING IN TERMS OF
16 THEIR EX-PARTE APPLICATION, I HAVE REAL CONCERNS ABOUT THE
17 CONSEQUENCES THAT WILL HAVE FOR THE DISCOVERY CUTOFF DATE WHICH
18 IS LATER THIS MONTH.
19       MR. QUINN:  LAWYERS WOULD BE WORKING VERY HARD.  MOST
20 OF THE DEPOSITIONS THAT WE'VE IDENTIFIED, THAT WE'RE ASKING
21 FOR, YOUR HONOR, RELATE TO PHASE TWO; SO THAT DISCOVERY CUTOFF
22 DATE RELATES ONLY TO PHASE ONE.  FEET TO THE FIRE, GUN TO THE
23 HEAD, IT'S CONCEIVABLE THERE WOULD BE DOUBLE -- TRIPLE-TRACK
24 DEPOSITIONS.
25       BUT IF WE NEED TO STICK WITH THE CURRENT DATES -- AND

Page 12

1  WE'RE MINDFUL OF WHAT THE COURT HAS SAID BEFORE ABOUT DATES,
2  ALTHOUGH I WILL POINT OUT THAT WHEN WE HAD THE STAY, WE DID
3  LOSE A WEEK.  THE COURT STAYED MATTERS FOR -- I THINK IT WAS A
4  HARD STAY OF TWO WEEKS AND A SOFT STAY OF A WEEK, WHATEVER IT
5  WAS; AND THEN THE COURT WENT BACK AND SLIPPED THE DISCOVERY
6  DEADLINE TWO WEEKS, AND WE LOST ONE WEEK THERE.  SO MAYBE THE
7  FACT THAT I'M EVEN BRINGING THAT UP SUGGESTS THAT THERE'S
8  SOMETHING TO WHAT THE COURT SAYS.
9        AND I DON'T MEAN TO SUGGEST THAT IT WOULDN'T BE A
10 DAUNTING SCHEDULE, BUT MY EXPERIENCE IS, LAWYERS, WHEN GIVEN
11 DEADLINES -- AND THERE'S A CERTAIN AMOUNT OF WORK THAT NEEDS TO
12 BE DONE, YOU WORK TOWARD THOSE DEADLINES, AND TO BE SURE, WE'D
13 HAVE TO WORK VERY HARD, BUT I THINK IT COULD BE DONE.
14       MOST OF THE DEPOSITIONS RELATE TO PHASE TWO MATTERS.
15 SEVERAL OF THEM, YOUR HONOR, ARE PURELY HOUSEKEEPING ISSUES.
16 FOR EXAMPLE, CARTER BRYANT SAYS HIS INSPIRATION FOR THE BRATZ
17 DOLLS WAS HE WALKED BY KICKAPOO HIGH SCHOOL IN A SMALL TOWN IN
18 MISSOURI ONE DAY, ON THE WAY HOME FROM WORK, OR DROVE BY IT,
19 AND HE SAW THE KIDS AND THEY HAD THIS SORT OF ETHNIC KIND OF
20 BRATTY ATTIRE AND BEHAVIOR THAT HE SAYS WAS THE INSPIRATION FOR
21 HIS DOLL.
22       WELL, WE'VE GOTTEN THE YEARBOOK FROM KICKAPOO HIGH
23 SCHOOL THAT YEAR, SO WE CAN SEE HOW THE KIDS DRESS, WE CAN SEE
24 WHAT THEY LOOK LIKE, AND WE CAN SEE HOW URBAN THEY WERE.  SO WE
25 ASKED MGA, WILL YOU STIPULATE THAT THIS IS AN AUTHENTIC COPY OF

Page 13

1  THE YEARBOOK?  WE MADE THIS REQUEST A MONTH AGO.  WE HAVEN'T
2  HEARD AN ANSWER ON THAT.  MAYBE THEY ULTIMATELY WILL; MAYBE
3  THEY WON'T.  BUT ONE DEPOSITION ON OUR LIST IS THE DEPOSITION
4  OF A DOCUMENT CUSTODIAN OF KICKAPOO HIGH SCHOOL, THE SOLE
5  PURPOSE OF WHICH, YOUR HONOR, IS TO ESTABLISH THAT THIS IS AN
6  AUTHENTIC COPY OF THE YEARBOOK.
7        AND I DON'T WANT TO SUGGEST THAT THIS KIND OF THING
8  ONLY GOES ONE WAY, YOUR HONOR.  THIS IS A CASE WHERE EVERY
9  FACT, IT SEEMS, IS DISPUTED.  THEY CHIDE US IN THEIR PAPERS FOR
10 TAKING THE DEPOSITIONS OF REPORTERS WHO QUOTE MR. LARIAN, THE
11 FOUNDER AND CEO OF MGA, GIVING AN ACCOUNT OF THE ORIGIN OF THE
12 BRATZ DOLL WHERE HE SAYS, 'I HAD A CONTEST, AN IDEA CONTEST,
13 AMONG MY EMPLOYEES, AND THIS WAS THE WINNING SUBMISSION.'
14       WE TOOK MR. LARIAN'S DEPOSITION AND SAID, 'IS THAT
15 TRUE?  COULDN'T GET A STRAIGHT ANSWER.  ASKED FOR A
16 STIPULATION.  COULDN'T GET A STRAIGHT ANSWER.  SO WE TOOK THE
17 DEPOSITION OF THE REPORTER.  THE SOLE PURPOSE OF THAT
18 DEPOSITION WAS, 'IS THIS WHAT MR. LARIAN TOLD YOU?' WE HAD TO
19 DO THAT, OBVIOUSLY, IF WE'RE GOING TO HAVE THE EVIDENCE AT
20 TRIAL.  AND ACTUALLY, THEY THEN CROSS-EXAMINED THE REPORTER FOR
21 MUCH LONGER -- I MEAN, I THINK OUR EXAMINATION WAS A HALF HOUR.
22 THEY THEN CROSS-EXAMINED THE REPORTER FOR MUCH LONGER.
23       SIMILARLY, THERE WAS ANOTHER REPORTER -- THERE'S BEEN
24 VARIOUS ACCOUNTS IN THE PRESS WHERE MR. LARIAN HAS BEEN QUOTED
25 ABOUT THE ORIGIN OF BRATZ -- THERE WAS A SIMILAR DEPOSITION

4 (Pages 10 to 13)

JANUARY 7, 2008          BRYANT VS. MATTEL

Exhibit 12
Page _____ 367

Page 14

1 WITH ANOTHER REPORTER. THE COURT WILL SEE ON THIS LIST TWO
2 OTHER REPORTERS WHO WE'D LIKE TO DEPOSE.
3     THERE AREN'T REPORTER SHIELD PROBLEMS. IT'S JUST,
4 'MADAM REPORTER, IS THIS WHAT MR. LARIAN TOLD YOU,' OR 'IS THIS
5 WHAT THE MGA REPRESENTATIVE TOLD YOU.'
6     THE COURT: WHY DON'T YOU ADDRESS THE ISSUE THAT I'M
7 DISINCLINED TO GRANT, AND THAT'S THE CARTER BRYANT DEPOSITION.
8     MR. QUINN: OKAY.
9     A FOOTNOTE, YOUR HONOR, ON THE INTERROGATORIES --
10    THE COURT: YES.
11    MR. QUINN: -- WE'RE LIMITED TO 50. THESE RELATE TO
12 CONTENTION INTERROGATORIES SERVED LAST MARCH; SO IT'S GARDEN
13 VARIETY, STATE ALL FACTS, IDENTIFY ALL WITNESSES.
14    THE COURT: I'M AWARE OF THAT.
15    MR. QUINN: NOW, MR. BRYANT, AGAIN, HE'S
16 IDENTIFIED -- IF WE GO BACK TO THE TRI-PART DIVISION OF THE
17 CASE --
18    THE COURT: AGAIN, DON'T FOCUS ON THE NEED, BECAUSE
19 I'M PROBABLY WITH YOU ON THE NEED TO DO SO.
20    MR. QUINN: YOUR HONOR, WITH RESPECT TO
21 JUDGE INFANTE, I THINK HIS RULING THAT NINE ADDITIONAL HOURS
22 ARE ADEQUATE TO PROPERLY EXPLORE MR. BRYANT'S KNOWLEDGE WITH
23 RESPECT TO THE OTHER TWO-THIRDS OF THE CASE IS SIMPLY -- I
24 BELIEVE THAT IS ERRONEOUS, YOUR HONOR.
25    THE COURT: AS A MATTER OF LAW?

Page 15

1     MR. QUINN: I WOULD SAY SO.
2     THE COURT: HOW?
3     MR. QUINN: THERE ARE SOME -- I MEAN, WHAT ARE THE
4 FACTS THAT WE KNOW?
5     THERE ARE SOME 200 PRODUCTS, BRATZ PRODUCTS, AT
6 ISSUE, MGA SAYS. THEY SAY THAT HE'S ONE OF TWO PEOPLE WHO HAS
7 UNIQUE KNOWLEDGE AS TO ALL OF THOSE PRODUCTS. JUST ON THE FACE
8 OF IT, YOUR HONOR, NO REASONABLE LAWYER, I SUBMIT, COULD
9 REASONABLY CONCLUDE THAT THAT'S ADEQUATE TIME IN WHICH TO
10 EXAMINE HIM ON THAT SCOPE OF MATERIAL.
11    THE COURT: I UNDERSTAND YOU DISAGREE THAT THAT'S NOT
12 ENOUGH TIME.
13    MR. QUINN: RIGHT.
14    THE COURT: BUT AS A MATTER OF LAW, WHEN
15 JUDGE INFANTE LOOKED AT THIS, HE HEARD, PRESUMABLY, ALL OF
16 THESE ARGUMENTS, AND HE CONCLUDED THAT IT WAS.
17    I DON'T KNOW HOW I, AS A REVIEWING COURT, AT LEAST
18 WITH RESPECT TO THIS ISSUE, CAN SAY THAT AS A MATTER OF LAW,
19 THAT THAT WAS AN INCORRECT OR LEGALLY UNSOUND FINDING.
20    MR. QUINN: IT WOULD BE MY UNDERSTANDING, YOUR HONOR,
21 THAT AT SOME POINT, IF A --
22    THE COURT: CERTAINLY, AT SOME POINT.
23    MR. QUINN: I WOULD REFER THE COURT BACK TO THE
24 HEARING WE HAD LAST SUMMER WHERE JUDGE INFANTE HAD ENTERED AN
25 ORDER, BEFORE THE SKADDEN ARPS FIRM WAS INVOLVED AND THE

Page 16

1 O'MELVENY FIRM WAS INVOLVED, REQUIRING MGA TO PRODUCE DOCUMENTS
2 BY A CERTAIN DATE. I THINK IT WAS THE END OF JUNE OR THE FIRST
3 OF JULY, AND THEY WERE IN HERE SEEKING RELIEF FROM THAT, SAYING
4 THAT 'WE CAN'T DO IT.'
5     AT THAT TIME, THIS COURT LOOKED AT THAT AND SAID,
6 'WELL, I THINK SOME ADDITIONAL TIME IS APPROPRIATE,' AND I
7 BELIEVE GAVE THEM AN ADDITIONAL TWO WEEKS OR 30 DAYS. I
8 FRANKLY DON'T RECALL WHAT IT WAS. WE DIDN'T TRIP OVER THE
9 ISSUE ABOUT WHETHER THE THEN-DEADLINE OF JUNE 30TH OR JULY 1ST
10 WAS A CLEARLY ERRONEOUS DEADLINE OR NOT. IT SEEMED LIKE THE
11 APPROPRIATE THING TO DO TO THE COURT, AND THE COURT GRANTED
12 SOME ADDITIONAL TIME.
13    I MEAN, I THINK THIS IS AT LEAST A COMPELLING CASE,
14 GIVEN THE CENTRALITY OF THIS WITNESS TO ALL OF THOSE ISSUES ON
15 THE OTHER TWO-THIRDS OF THE CASE, YOUR HONOR.
16    I GUESS THAT'S THE BEST I CAN RESPOND ON THAT.
17    THE COURT: VERY WELL. THANK YOU, MR. QUINN.
18    MR. NOLAN.
19    MR. NOLAN: YOUR HONOR, WOULD YOU PREFER TO HEAR FROM
20 CARTER BRYANT COUNSEL WITH RESPECT TO THAT FIRST ISSUE?
21    THE COURT: I WILL LEAVE THAT UP TO YOU.
22    MR. NOLAN: WHY DON'T WE DO THAT, AND THEN I'LL
23 ADDRESS THE SECOND PART.
24    THE COURT: VERY WELL.
25    MS. ANDERSON: THANK YOU, YOUR HONOR. JUST BRIEFLY.

Page 17

1     WE FULLY AGREE WITH THE COURT. AND THE REASON THAT
2 MATTEL'S OPENING MOTION, IN WHICH IT SOUGHT ADDITIONAL TIME
3 WITH MR. BRYANT, DIDN'T ADDRESS THE GOVERNING STANDARD THAT'S
4 BEFORE YOUR HONOR IN TERMS OF REVIEWING JUDGE INFANTE'S RULINGS
5 IS BECAUSE THEY COULDN'T.
6     THE COURT: ADDRESS THIS LAST POINT THAT MR. QUINN
7 MAKES, THAT THIS KIND OF ALMOST INTERNAL CONSISTENCY IF THE
8 COURT DID GRANT A FEW EXTRA WEEKS BACK LAST SUMMER. I
9 CERTAINLY DON'T HAVE THAT BEFORE ME RIGHT NOW. BUT I'M
10 STRUGGLING TO COME UP WITH A LEGAL JUSTIFICATION FOR DOING SO
11 IN LIGHT OF THIS STANDARD.
12    MS. ANDERSON: YOUR HONOR, FIRST OF ALL, I DON'T HAVE
13 ANY PAPERS BEFORE ME ABOUT WHATEVER THIS PRIOR RULING WAS, AND
14 I THINK, EVEN IF THE COURT DID GO SOMEHOW BEYOND ITS AMBIT IN A
15 PRIOR RULING, WHICH I DO NOT KNOW EVER HAPPENED, THAT DOESN'T
16 JUSTIFY THEN COMPOUNDING THE PROBLEM AND DOING IT HERE.
17    THE COURT: TWO WRONGS DON'T MAKE A RIGHT.
18    MS. ANDERSON: INDEED.
19    AND I SUBMIT, YOUR HONOR, I KNOW THAT MATTEL HAS
20 PLENTY OF ARGUMENTS WHY THEY BELIEVE MR. BRYANT SHOULD SIT FOR
21 THREE ADDITIONAL DAYS OF DEPOSITION AFTER HAVING ALREADY SAT
22 FOR THREE. BUT I SUBMIT, THE FINDINGS THAT JUDGE INFANTE MADE,
23 INCLUDING THE FACTUAL FINDING ABOUT HIS ASSESSMENT OF WHAT THEY
24 WERE GOING TO DELVE INTO IN THIS DEPO, THIS IS ALL RELEVANT
25 STUFF THEY'VE HAD AMPLE OPPORTUNITY TO COVER. NINE HOURS IS A

JANUARY 7, 2008        BRYANT VS. MATTEL

Exhibit 12
Page _____ 368

Page 18

1 LONG TIME THAT THEY WILL HAVE WITH MY CLIENT, YOUR HONOR.
2     THE COURT: THANK YOU, COUNSEL.
3     MS. ANDERSON: THANK YOU.
4     THE COURT: MR. NOLAN?
5     MR. NOLAN: THANK YOU.
6     YOUR HONOR, I WOULD BE REMISS IF I DID NOT START OUT
7 BY SAYING THAT LAST EVENING, ONE OF THE LAST THINGS I READ IN
8 PREPARING FOR THE HEARING THIS MORNING WAS THE OCTOBER 31ST
9 TRANSCRIPT. WHEN I WAS HERE, I WAS JUST KIND OF NEW TO THE
10 CASE AND SAYING WE NEEDED JUST A BRIEF STAY UNTIL JANUARY 15TH
11 FOR THE DEPOSITIONS. AND MR. QUINN PROPERLY POINTED OUT THAT
12 WE'RE A BIG FIRM; ALL FIRMS KIND OF PARACHUTE IN; BASICALLY,
13 SUCK IT UP AND GET READY.
14     I HAVE TO TELL YOU, YOUR HONOR, THAT WE HAVE DONE
15 THAT, AND THE NOTION THAT THERE'S BEEN ANY DELAY, I THINK, IS
16 JUST BELIED BY THE ACTUAL FACTS. IF I COULD JUST TELL YOU A
17 LITTLE BIT ABOUT WHAT WE'VE BEEN DOING TO GET THIS CASE READY,
18 AND THEN COME UP WITH A PROPOSAL FOR YOU WITH RESPECT TO THE
19 DISCOVERY REQUEST.
20     FROM THE BEGINNING OF TIME IN THIS CASE -- AND QUINN
21 HAS BEEN THERE FOREVER -- THERE'S BEEN 4,600 REQUESTS FOR
22 ADMISSIONS; 2,865 REQUESTS FOR PRODUCTION; 131 30(B)(6) TOPICS;
23 50-PLUS THIRD-PARTY SUBPOENAS; 63 INTERROGATORIES. WE'VE
24 PRODUCED, MGA HAS PRODUCED, YOUR HONOR, ABOUT 3.8 MILLION.
25     INTERESTINGLY, QUINN EMANUEL, WHO'S BEEN IN THIS CASE

Page 19

1 FOR FOUR YEARS, JUST RECENTLY, ON JANUARY 2ND AND JANUARY 4TH,
2 DOUBLED THEIR PRODUCTION, DROPPED ON US ABOUT A HALF MILLION
3 PAGES OF DOCUMENTS, WITHOUT ANY EXPLANATION AS TO WHY THESE
4 DOCUMENTS WERE NOT PRODUCED. WE'RE STILL GOING THROUGH THEM.
5     SINCE WE'VE COME INTO THE CASE, SINCE SKADDEN CAME
6 INTO THE CASE AND MR. QUINN DID NOT WANT TO GIVE THE RELIEF
7 THAT WE REQUESTED, WE WENT TO THE MAT, AS DID MGA, AT ENORMOUS
8 EXPENSE. WE BROUGHT IN ALMOST 50 LAWYERS TO DEAL WITH
9 OUTSTANDING ISSUES. WE'VE ANSWERED 2,584 REQUESTS FOR
10 ADMISSIONS; WE'VE ANSWERED 101 INTERROGATORIES; WE'VE PRODUCED
11 1.6 MILLION PAGES IN DOCUMENTS. WE HAD TO FILE 17 OPPOSITION
12 BRIEFS TO MATTEL.
13     IF THERE'S ANY NOTION HERE, YOUR HONOR, THAT WE
14 DISAGREE WITH POSITIONS IN DISCOVERY, WITH ALL DUE RESPECT,
15 MATTEL HAS WRITTEN THE BOOK ON THIS.
16     THE COURT: THAT'S WHY, MR. NOLAN, I WAS VERY CAREFUL
17 IN MY INITIAL REMARKS THAT I AM NOT SUGGESTING ANY FAULT
18 WHATSOEVER IN YOUR PRODUCTION PATTERN SINCE COMING INTO THE
19 CASE. I'VE READ WHAT YOU'VE PRODUCED, AND I HAVE A SENSE THAT
20 YOU AND YOUR FIRM HAVE WORKED AS HARD AS HUMANLY POSSIBLE TO DO
21 WHAT YOU CAN.
22     I GUESS MY TENTATIVE STEMS MORE FROM WHAT I PERCEIVE
23 AS THE GOOD CAUSE SHOWN FOR SOME ADDITIONAL DISCOVERY IN LIGHT
24 OF WHAT IS BEING PRODUCED, AND THE DELAY IN THE SENSE THAT IT'S
25 BEING PRODUCED NOW AS OPPOSED TO EARLIER. AND I'M NOT

Page 20

1 SUGGESTING THAT IT NECESSARILY SHOULD HAVE BEEN PRODUCED
2 EARLIER OR THAT YOU COULD HAVE PRODUCED IT EARLIER. IT'S JUST
3 A SIMPLE FACT THAT THERE ARE MATERIAL THINGS COMING TO LIGHT
4 NOW THAT SEEM TO THE COURT TO PERHAPS JUSTIFY SOME ADDITIONAL
5 DISCOVERY; SOME ADDITIONAL DEPOSITIONS, SOME ADDITIONAL
6 INTERROGATORIES, ET CETERA.
7     SO YOU DON'T NEED TO CONVINCE THE COURT, BECAUSE YOU
8 HAVE ALREADY CONVINCED THE COURT THAT YOU'VE BEEN WORKING
9 EXTRAORDINARILY HARD AND YOU'VE BEEN DOING ALL THAT YOU CAN.
10 THE DISCOVERY IN THIS CASE IS ON A SCALE THAT I PERSONALLY HAVE
11 NEVER SEEN IN MY CAREER; SO THAT'S ESTABLISHED.
12     MR. NOLAN: OKAY. THANK YOU VERY MUCH, YOUR HONOR.
13 I JUST NEEDED TO SAY THAT FOR THE PEOPLE WHO HAVE
14 BEEN WORKING AROUND THE CLOCK. I PROMISED THEM I WOULD PUT
15 THAT PITCH IN.
16     THE COURT: OKAY. FAIR ENOUGH.
17     MR. NOLAN: HERE'S THE POINT, THOUGH, YOUR HONOR. IF
18 YOU READ THEIR PAPERS CAREFULLY, I WOULD RESPECTFULLY DISAGREE.
19 I DON'T BELIEVE THAT THEY HAVE MADE A GOOD FAITH SHOWING THAT
20 ADDITIONAL DISCOVERY IS WARRANTED OR THAT THEY'RE SURPRISED BY
21 THIS OR THAT THEY WERE PREJUDICED IN ANY WAY BY ANY STAY OR
22 SOFT STAY OR CONTINUANCE FOR A BRIEF PERIOD OF TIME.
23     I THINK THE FACTS ARE QUITE CLEAR AND QUITE DRAMATIC,
24 AND THAT IS, AT A TIME -- TO TAKE YOU BACK TO A TIME WHEN WE
25 WERE NOT HERE; SO THE WORLD WAS AHEAD OF YOU ALL WHEN YOU SET

Page 21

1 THE SCHEDULES. MATTEL CAME IN ON THEIR DISCLOSURES IN JANUARY
2 OF 2007 AND IDENTIFIED SOME 155 FACTUAL WITNESSES, 70 OF WHICH
3 THEY WANTED TO TAKE A PARTICULAR INTEREST IN. THEY PROPOSED AT
4 THAT TIME, WITH FULL KNOWLEDGE OF ALL OF THE ISSUES IN THIS
5 CASE, AND HAVING BOTH DISCLOSURES IN FRONT OF THEM, A TOTAL OF
6 50 DEPOSITIONS.
7     NOW, I READ THE TRANSCRIPT, YOUR HONOR, AND WITH ALL
8 DUE RESPECT, I DON'T THINK YOU AND YOUR CLERK -- BECAUSE THE
9 TRANSCRIPT REFLECTS THAT YOU CONSULTED WITH YOUR CLERK WITH
10 RESPECT TO THIS, AND YOU CAME OUT WITH A NUMBER OF 24. YOU
11 NEVER SAID THAT WAS JUST A HORSEBACK KIND OF ANALYSIS. YOU
12 SAID THAT THEIR NUMBERS WERE DISCONCERTING TO YOU. AND I
13 BELIEVE THE REASON WHY YOU SAID THAT IS BECAUSE, YOUR HONOR,
14 THAT ALTHOUGH THIS IS A LARGE CASE, THIS ISN'T THE LARGEST CASE
15 AROUND.
16     I MEAN, MY GOSH, THIS CASE AND THE POSITIONS THAT ARE
17 NOW BEING TAKEN BY MATTEL, WHERE THEY NEED 50 MORE ON TOP OF
18 THE 22 DEPOSITIONS THAT THEY'VE TAKEN, WHICH, WHEN YOU THINK
19 ABOUT IT, JUDGE, IS 22 MORE THAN THEY ASKED YOU FOR AT THE TIME
20 OF THE DISCLOSURE, WITHOUT A LOT OF NEW INFORMATION AVAILABLE.
21 I THINK, OF THE 50 WITNESSES THAT THEY'RE ASKING PERMISSION TO
22 TAKE, ONLY SIX NAMES ARE NEW. YOU DO THE MATH. THE OTHERS
23 WERE ALL IN THE DISCLOSURES.
24     THE COURT: WHAT ABOUT THOSE SIX NEW WITNESSES?
25     MR. NOLAN: IF THOSE SIX NEW ADDITIONAL WITNESSES,

6 (Pages 18 to 21)

JANUARY 7, 2008        BRYANT VS. MATTEL

Exhibit 12
Page _____369_____

Page 22

1 YOUR HONOR, RELATE TO PHASE ONE, I'M WILLING TO WORK SOMETHING
2 OUT WITH THEM IN THAT REGARD. I'M NOT TRYING TO CUT THEM OFF
3 AT THE KNEES AND SAY, 'LISTEN, TOUGH LUCK, YOU BLEW 24.' HE'S
4 TALKING ABOUT HE HAD TO TAKE THE DEPOSITION OF A REPORTER TO
5 JUSTIFY SOMETHING. I WASN'T INVOLVED IN THAT. I GUESS THE
6 SOFT ISSUE HE DIDN'T WANT TO GO TO IS, WHY DID THEY TAKE
7 CARTER BRYANT'S NIECE TO TALK ABOUT THE COMPUTER THAT WAS GIVEN
8 TO HER AS A GIFT? BUT THAT'S ALL IN THE BACK.
9      WHAT I'M INTERESTED IN, YOUR HONOR, IS TRYING THIS
10 CASE ON A SCHEDULE THAT YOU TOLD US TO GET READY FOR.
11      THE COURT: I AM AS WELL.
12      MR. NOLAN: MAY I JUST MAKE A -- BECAUSE I THINK,
13 FRANKLY, THINKING ABOUT ALL OF THIS LAST NIGHT, I HAVE A
14 PROPOSAL THAT, I THINK, ALLOWS THIS TO MAKES SENSE.
15      THE COURT: LET ME HEAR IT.
16      MR. NOLAN: AND THIS IS NOT BEHIND CURTAIN ONE OR
17 CURTAIN TWO OR CURTAIN THREE.
18      HERE'S WHAT I THINK MAKES ABSOLUTE SENSE, HAVING DONE
19 THIS A LITTLE BIT MYSELF IN BIG CASES BEFORE:
20      MOST OF WHAT THEY'RE ASKING FOR IS PHASE TWO STUFF.
21 RIGHT NOW, IN FRONT OF US, WE'RE STARING AT A HARD CUTOFF OF
22 JANUARY 28TH. AND WE'LL LIVE WITH IT, JUDGE. WE CAN LIVE WITH
23 IT, IF WE GET COOPERATION FROM MATTEL. AND I'LL DEAL WITH THE
24 EX-PARTE APPLICATIONS IN JUST A MINUTE, BUT HERE'S MY PROPOSAL,
25 YOUR HONOR:

Page 23

1      THAT THE PARTIES FOCUS ON PHASE ONE DISCOVERY. IF
2 JOHN QUINN OR MIKE ZELLER COMES TO ME AND SAYS, 'WE NEED THREE
3 MORE WITNESSES FOR DEPOSITION FOR PHASE ONE ISSUES,' I'M FINE.
4 WE MADE THAT PROPOSAL. BUT IT'S ALWAYS 50 OR NOTHING.
5      LET'S FOCUS AND NARROW THE ISSUES TO BRING THIS CASE
6 HOME FOR YOU, YOUR HONOR, ON THE SCHEDULE THAT YOU HAVE SET AND
7 EVERYBODY HAS BEEN LIVING UP TO.
8      LET'S TALK ABOUT TODAY SAYING TO THE PARTIES,
9 'COMPLETE DEPOSITIONS BY JANUARY 28TH. IF YOU HAVE, HOWEVER,
10 SCHEDULING ISSUES' -- BECAUSE ONE, FOR INSTANCE, MATT
11 (UNINTELLIGIBLE) IS OUT OF TOWN. THEY WANT ISAAC LARIAN ONCE
12 MORE, BUT ISAAC HAS TO GO TO THE HONG KONG TOY FAIR IN NEW
13 YORK; SO THERE'S A SCHEDULING ISSUE WITH RESPECT TO HIM THAT WE
14 MIGHT NOT BE ABLE TO GET HIM IN BEFORE JANUARY 28TH. LET'S
15 WORK TOGETHER TO IDENTIFY --
16      THE COURT: SLOW DOWN.
17      MR. NOLAN: THERE CAN BE A LITTLE BIT OF WIGGLE ROOM
18 ON THE 28TH, BUT WE TRY TO GET EVERYTHING IN BY THE 28TH.
19 WE'LL DOUBLE TRACK; WE'LL TRIPLE TRACK. I MEAN, EVERYBODY HAS
20 TOO MANY LAWYERS ON THIS CASE. WE CAN DO THAT.
21      THE COURT: SO ARE YOU SAYING THAT YOU WOULD BE
22 WILLING TO WAIVE ANY OBJECTIONS OR YOU'D STIPULATE TO AN
23 INCREASE IN THE NUMBER OF DEPOSITIONS?
24      MR. NOLAN: FOR A VERY LIMITED NUMBER.
25      THE COURT: FOR PHASE ONE.

Page 24

1      MR. NOLAN: IF THEY'RE RELATED TO PHASE ONE.
2      WHY SHOULD WE, RIGHT NOW, JUDGE, WITH JUDGE INFANTE
3 BURIED, WITH YOUR HONOR -- I MEAN, THE ELECTRONIC FILING
4 SYSTEM -- I'M AFRAID WE'RE GOING TO BURN THE SYSTEM WITH THE
5 NUMBER OF DOCUMENTS THAT ARE BEING FILED IN THIS CASE.
6      THE COURT: SOMEONE BROKE THE PLASTIC COURTESY BOX
7 THAT WE HAD IN THE BACK.
8      MR. NOLAN: THAT WAS QUINN EMANUEL.
9      THE COURT: YOU'RE SURE IT WAS?
10      MR. NOLAN: I'M POSITIVE; THEY FILED MORE PAPERS THAN
11 ANYBODY ELSE.
12      THE COURT: SOMEBODY BROKE IT.
13      MR. NOLAN: BUT TO BE SERIOUS, YOUR HONOR -- LET'S
14 COME BACK TO MY OTHER PROPOSAL THAT WE FOCUS ON PHASE ONE.
15      THERE ARE HEARINGS THAT ARE CURRENTLY SCHEDULED FOR
16 JUDGE INFANTE ON FEBRUARY 8TH. THEY'RE ALL, EXCEPT FOR ONE,
17 COMPLETELY BRIEFED. THEY'RE ALL READY TO GO. JUDGE INFANTE
18 HAS BEEN DOING THE LORD'S WORK. IT IS UNBELIEVABLE THE AMOUNT
19 OF WORK THAT HE HAS BEEN DOING IN THIS CASE, ON TOP OF ALL OF
20 HIS OTHER CLIENTS THAT HE HAS COMMITTED. AND EVEN KNOWING THAT
21 WE HAVE JANUARY 28TH COMING UP, HE CAN'T HEAR SOME VERY
22 SIGNIFICANT MOTIONS UNTIL FEBRUARY 8TH.
23      THE EXPERT REPORTS IN THIS CASE ARE DUE
24 FEBRUARY 11TH. MANY OF THE ISSUES ON THE FEBRUARY 8TH CALENDAR
25 ARE ISSUES THAT DIRECTLY RELATE TO GETTING DOCUMENTS NECESSARY

Page 25

1 FOR OUR EXPERT PREPARATION.
2      HERE'S THE WORST PART OF MY PROPOSAL: I'M WONDERING
3 WHETHER OR NOT, WITH RESPECT TO THE MATTERS THAT HAVE BEEN
4 BRIEFED AND ARE READY TO GO -- AND THERE'S ONE THAT THEIR
5 OPPOSITION IS DUE A LITTLE BIT LATER THIS WEEK, AND I WAS GOING
6 TO TWEAK THAT A LITTLE BIT -- I WAS WONDERING WHETHER OR NOT
7 THOSE MATTERS -- AND THERE'S MAYBE FOUR MATTERS -- POSSIBLY
8 COULD BE HEARD BY MAGISTRATE BLOCK AS EARLY AS NEXT WEEK.
9 THEY'RE ALL BRIEFED.
10      ALL OF THE PARTIES COULD GIVE TO THE MAGISTRATE, OR
11 WHICHEVER MAGISTRATE THE COURT MIGHT ASK -- WE COULD GET ALL OF
12 THE BRIEFS TO THEM BY THE CLOSE OF BUSINESS TOMORROW. WE COULD
13 DO IT BY THE END OF TODAY; THEY'VE ALL BEEN PREPARED. I THINK
14 YOU HAVE ALL OF THEM THAT HAVE BEEN FILED IN FRONT OF
15 JUDGE INFANTE. BUT WE COULD PACKAGE THEM ALL TOGETHER, HAVE
16 THOSE MATTERS HEARD NEXT WEEK BY A MAGISTRATE, GET THE RULINGS.
17 IF THE DISCOVERY IS ORDERED, PARTIES MOVE QUICKLY TO GET THE
18 DISCOVERY READY AND GET GOING.
19      THE COURT: THE CONCERN THAT I WOULD HAVE IS -- YOU
20 KNOW, JUDGE INFANTE HAS DEVELOPED, I'M SURE, A CERTAIN DEGREE
21 OF INSTITUTIONAL MEMORY ASSOCIATED WITH THIS CASE, AND TO
22 SADDLE JUDGE BLOCK OR ANY OTHER JUDGE IN THIS COURT WITH THOSE
23 TYPES OF MOTIONS OUT OF NOWHERE, WITH NO BACKGROUND, I THINK
24 THAT WOULD PROBABLY BE A PRETTY ONEROUS IMPOSITION.
25      MR. NOLAN: JUDGE BLOCK WAS INVOLVED IN THIS CASE

JANUARY 7, 2008          BRYANT VS. MATTEL

Exhibit 12
Page _____ 370

Page 26

1 EARLY ON, YOUR HONOR. HE DID RULE ON SEVERAL MATTERS. I CAN'T
2 GIVE YOU THE FULL COUNT.
3     I CAN SAY THAT MANY OF THESE ARE STRAIGHT-UP MOTIONS
4 THAT PRESENT ISSUES OF FACT THAT ARE NOT NECESSARILY TIED TO
5 HAVING PARTICIPATED IN THE FIRST THREE QUARTERS OF THE GAME.
6 IT'S NOT THAT WE'RE BRINGING IN SOMEBODY FROM A NEW TEAM.
7     I THINK THAT IT'S POSSIBLE.
8     OTHERWISE, YOUR HONOR, WE'RE LOOKING AT A SCHEDULE IN
9 FRONT OF JUDGE INFANTE ON FEBRUARY 8TH FOR HEARINGS THAT,
10 DESPITE HIS BEST EFFORTS, HE COULDN'T HANDLE ON JANUARY 3RD.
11 HE'S GOT A TELEPHONIC CONFERENCE TOMORROW ON SOME THIRD-PARTY
12 ISSUES; JANUARY 10TH, HE HAS THAT HEARING.
13     BUT IN ORDER FOR THIS IDEA TO WORK, YOUR HONOR -- I
14 DON'T KNOW WHETHER OR NOT YOU REALLY NEED THE HISTORY.
15     THE GOOD NEWS ABOUT THE LAWYERS IN THIS CASE, THEY
16 REPEAT EVERYTHING IN THE PAPERS; SO FRANKLY, SOMEONE PICKING
17 UP -- I THINK IT'S POSSIBLE, YOUR HONOR.
18     THERE'S ONE OTHER ISSUE THAT WOULD HAVE TO BE
19 CHANGED, AND THAT IS THAT THERE'S AN OPPOSITION THAT MATTEL HAS
20 TO FILE ON THE 11TH. THEY HAD ASKED FOR -- I THINK THEY GOT
21 SOMETHING, LIKE, A 20-DAY EXTENSION OF TIME TO FILE IT BECAUSE
22 OF THE HOLIDAYS. IF THEY FILED IT ON THURSDAY RATHER THAN
23 FRIDAY, I COULD COMMIT TO FILING OUR PAPERS ON SUNDAY EVENING
24 SO THAT THOSE COULD ALL BE HEARD NEXT WEEK IN FRONT OF THE
25 MAGISTRATE.

Page 27

1     THEN I WOULD SAY, YOUR HONOR, THAT WE COULD HAVE OUR
2 HEARING ON JANUARY 17TH, WHICH WOULD BE THE HEARING ON THESE
3 OUTSTANDING MOTIONS THAT RELATE TO PHASE ONE ISSUES. WE COULD
4 GET THE RULING. IF IT'S GRANTED, WE TAKE THE DISCOVERY RIGHT
5 AWAY, AND WE HAVE THAT DISCOVERY AVAILABLE FOR THE EXPERTS ON
6 FEBRUARY 11TH.
7     NOW, IF JOHN OR MIKE COME TO ME AND SAY WE NEED THREE
8 MORE DEPOSITIONS, I'M WILLING TO WORK THAT OUT, YOUR HONOR.
9 I'M NOT HOLDING IT TO 22 OR 24. I WANT TO SET ASIDE THIS
10 NONSENSE ABOUT HOW WE COUNT DEPOSITIONS. WE THINK THAT WHEN
11 WE GET TO THE EX-PARTE ARGUMENT, I'LL TELL YOU THAT THAT IS A
12 LITTLE BIT LATE IN THE GAME. WE THINK IT'S A LITTLE BIT
13 DISINGENUOUS AT THIS POINT IN TIME. BUT IT CANNOT BE, YOUR
14 HONOR, IT CANNOT BE, THAT WHEN YOU THINK OF THE HARD SCHEDULE
15 THAT YOU PUT IN, WHAT YOU ASKED MGA AND US TO STEP UP TO
16 PROPERLY, NOTHING WRONG WITH THAT. WE DID IT. WE DID IT. TO
17 NOW SOFTEN IT BECAUSE OF ALLEGED PRODUCTION ISSUES, WHERE,
18 FRANKLY, YOUR HONOR, MOST OF THE PRODUCTION HAD ALREADY TAKEN
19 PLACE BEFORE THAT DISCOVERY.
20     THE PROPOSAL THAT I HAVE COME UP WITH, YOUR HONOR,
21 ALLOWS US TO GET PHASE ONE DONE. IT DOES REQUIRE PHASE TWO TO
22 BE PUT ON THE BACK BURNER.
23     WHEN I SUGGESTED THAT EARLIER, IT WAS A DIFFERENT
24 TIME AND A DIFFERENT PLACE. YOUR CONCERN, RIGHTFULLY SO, WAS,
25 'GEE, WE'RE GOING TO HAVE MORE BATTLES, NOLAN, BECAUSE WHO CAN

Page 28

1 TELL WHETHER OR NOT IT'S PHASE ONE OR PHASE TWO?'
2     THAT ISSUE IS REMOVED BECAUSE OF THE HARD DISCOVERY
3 STAY ON JANUARY 28TH. IF WE FOCUS ALL ON PHASE ONE --
4     THE COURT: LET ME HEAR MR. QUINN'S RESPONSE TO YOUR
5 PROPOSAL. AND I DON'T MEAN TO MOVE YOU ALONG HERE, BUT WE HAVE
6 TO MOVE YOU ALONG.
7     MR. QUINN, WHAT'S YOUR THOUGHT ON --
8     MR. QUINN: YOUR HONOR, BECAUSE I'M NOT INTIMATELY
9 FAMILIAR WITH THE MATTERS THAT ARE TEED UP BEFORE JUDGE INFANTE
10 ON THAT PORTION AND THE IDEA THAT BE DEFERRED TO MAGISTRATE
11 BLOCK, I'D LIKE TO DEFER THAT TO MR. ZELLER.
12     BUT BEFORE I DO THAT, IF I COULD RESPOND TO THE
13 PROPOSAL.
14     THE COURT: PLEASE.
15     MR. QUINN: WHAT I'M HEARING IS THAT MR. NOLAN IS
16 PREPARED, IF WE REALLY NEED IT, TO GIVE US THREE MORE
17 DEPOSITIONS ON PHASE ONE TOPICS.
18     THE COURT: I DON'T THINK HE'S LOCKED INTO THREE. I
19 THINK HE WAS USING THREE AS AN EXAMPLE. BUT I THINK WHAT HE'S
20 RELUCTANT TO DO IS GIVE YOU A BLANK CHECK.
21     WHAT I'M HEARING IS THAT IF YOU CAN IDENTIFY THOSE
22 PARTICULAR DEPOSITIONS OR THAT PARTICULAR DISCOVERY THAT YOU
23 NEED TO COMPLETE THE PHASE ONE DISCOVERY -- AND I DO ACCEPT THE
24 NOTION THAT WE'RE AT A DIFFERENT POINT NOW THAN WE WERE SEVERAL
25 MONTHS AGO IN TERMS OF BEING ABLE TO IDENTIFY WHAT IS PHASE ONE

Page 29

1 AND PHASE TWO. I MEAN, WE SHOULD BE NEARING THE END. YOU
2 SHOULD HAVE A PRETTY CLEAR SENSE OF WHAT YOU NEED TO TRY YOUR
3 CASE AND WHAT THEY NEED TO TRY THEIR CASE.
4     MR. QUINN: RIGHT.
5     THE COURT: I THINK WE SHOULD BE AT A POINT WHERE
6 PEOPLE OF THE CALIBER THAT ARE GATHERED HERE SHOULD BE ABLE TO
7 SAY, 'THIS IS WHAT WE NEED TO PIN DOWN BEFORE WE CAN GO TO
8 TRIAL.' AND YOU NEED SOME MORE; THEY NEED SOME MORE; LET'S GET
9 THAT DONE.
10     THAT SUGGESTION IS SOMETHING THAT RESONATES WITH THE
11 COURT QUITE WELL. IT REQUIRES THE LEVEL OF MATURITY THAT IS
12 NOT ALWAYS PRESENT IN LITIGATION, BUT I TRUST IS PRESENT IN
13 THIS COURTROOM.
14     MR. QUINN: YOUR HONOR, I THINK THERE IS SOME WISDOM
15 THERE. THE DEVIL IS IN THE DETAILS.
16     THE COURT: AS ALWAYS.
17     MR. QUINN: LET ME SAY THAT JUST, FOR EXAMPLE, THE
18 WEEK BEFORE LAST, WE TOOK -- AND THIS IS SOMETHING THAT
19 HAPPENED SINCE THIS MOTION WAS FILED -- WE TOOK THE DEPOSITION
20 OF A PERSON NAMED VERONICA MARLOW, WHO IS THEIR VENDOR FOR
21 FASHION DESIGN FOR BRATZ, AND LEARNED IN THE COURSE OF THAT
22 DEPOSITION THAT THREE MATTEL EMPLOYEES OTHER THAN CARTER BRYANT
23 HAVE BEEN WORKING ON BRATZ FOR YEARS. THAT WAS THE TESTIMONY.
24 THIS WAS NEWS TO US.
25     MOREOVER, SHE TESTIFIED THAT SHE HAD A CONVERSATION

8 (Pages 26 to 29)

JANUARY 7, 2008     BRYANT VS. MATTE'

Exhibit 12

Page __371__

## Page 30

1  WITH AN MGA EXECUTIVE ABOUT THIS, WHERE SHE REFUSED TO ANSWER
2  POINTED QUESTIONS ABOUT WHETHER THERE WAS SOMEBODY ELSE AT
3  MATTEL WORKING ON THIS.
4      I SUBMIT, YOUR HONOR, THAT IS BLOCKBUSTER TESTIMONY,
5  IN OUR VIEW.  WE THOUGHT THIS WAS JUST CARTER BRYANT; SO
6  THERE'S THREE EMPLOYEES, TWO OF WHICH ARE FORMER EMPLOYEES NOW,
7  AND THIS EXECUTIVE, MEL WOODS -- HIS NAME ISN'T EVEN IN THIS
8  LIST THAT WE'VE SUBMITTED -- THAT I THINK WE NEED TO TAKE THEIR
9  DEPOSITIONS.
10     NOW, MR. NOLAN BANDIED ABOUT THE NUMBER OF 50.  THE
11  NUMBER ISN'T 50.  WE'VE LISTED THE DEPOSITIONS IN OUR PROPOSED
12  FORM OF ORDER THAT WE SUBMITTED TO THE COURT.  I DO THINK WE
13  COULD SIT DOWN AND SAY THIS GROUP -- AND MOST OF THEM ARE -- IS
14  TRULY JUST PHASE TWO.  THERE'S GOING TO BE A SIGNIFICANT
15  CATEGORY THAT ARE BOTH PHASE ONE AND PHASE TWO, AND THEN THERE
16  WILL BE SOME SMALLER NUMBER WHICH ARE PHASE ONE ALONE.
17     THE COURT:  THIS IS HELPFUL IN TERMS OF THE COURT
18  FASHIONING AN ORDER FOR THIS MOTION.
19     MR. QUINN:  IN TERMS OF MR. BRYANT, YOUR HONOR, AND
20  WHAT HAPPENED LAST FALL -- AND COUNSEL FOR MR. BRYANT SAID SHE
21  DIDN'T HAVE ANYTHING BEFORE HER ABOUT THE ORDER THAT THE COURT
22  ENTERED.  WE RAISED THIS IN OUR MOVING PAPERS.  WE CALLED THE
23  COURT'S ATTENTION -- REMEMBER WHEN THEY WERE HERE BEFORE,
24  ASKING TO CUT SOME SLACK FROM THE MAGISTRATE'S ORDER.  IN THE
25  MOVING ORDERS, PAGE 24, WE DISCUSSED THAT, AND AGAIN IN OUR

## Page 31

1  REPLY PAPERS ON PAGE 11; SO I SUBMIT, WE DID TEE UP THAT ISSUE.
2  THIS IS AT LEAST AS COMPELLING A SITUATION TO TAKE ANOTHER LOOK
3  AT WHAT JUDGE INFANTE RULED.
4      WITH RESPECT TO THE NIECE, THE NIECE HAD HIS
5  COMPUTER.  WE WENT THROUGH A RUNAROUND TO GET HIS COMPUTER.  WE
6  FOUND THIS 'EVIDENCE ELIMINATOR' -- THAT'S THE NAME OF A
7  PROGRAM; IT'S NOT A GREAT NAME -- ON THE COMPUTER, AND JUST TO
8  GET ASSURANCE THAT SOMEBODY WASN'T GOING TO SAY -- NOW, TELL ME
9  I'M BEING TOO DEVIOUS AND OVER THINKING THIS HERE -- THAT
10  SOMEBODY MIGHT SAY THE NIECE PUT 'EVIDENCE ELIMINATOR' ON THE
11  COMPUTER.  WE TOOK HER DEPOSITION FOR ONE HOUR AND 15 MINUTES;
12  THAT WAS IT.
13     SO IF THE PROPOSITION IS THAT --
14     THE COURT:  A LONG TIME TO ASK A QUESTION.
15     MR. QUINN:  YEAH.
16     THE COURT:  ALL RIGHT.
17     MR. QUINN:  IF THE PROPOSITION IS THAT MR. NOLAN AND
18  I SHOULD SIT DOWN AND FIGURE OUT WHICH ARE TRULY PHASE ONE AND
19  WHICH ARE SORT OF A MIX AND WHICH ARE PHASE TWO AND WE CAN
20  FORGET ABOUT FOR NOW, I'M SURE WE CAN DO THAT.  BUT, AGAIN, I
21  UNDERSCORE THE IDEA, IT'S NOT GOING TO BE THREE, AND IT'S NOT
22  GOING TO BE TEN; IT'S GOING TO BE MORE THAN THAT THAT WE NEED
23  FOR PHASE ONE.
24     THE COURT:  I'LL TRY TO PROVIDE AS MUCH GUIDANCE AS I
25  CAN IN THE COURT'S ORDER.

## Page 32

1      MR. ZELLER:  I'D JUST LIKE TO ADD, YOUR HONOR -- AND
2  I'M NOT TRYING TO FAULT MR. NOLAN -- I WAS THE ONE WHO
3  DISCUSSED WITH HIS COLLEAGUES THE VERY PROPOSAL THAT HE'S
4  MAKING HERE NOW, IN WHICH I ASKED WHETHER OR NOT THERE WERE AT
5  LEAST SOME PEOPLE ON OUR LIST, WHICH WE GAVE TO THEM IN ADVANCE
6  OF ALL OF THIS, THAT THEY WOULD AGREE TO.  WE GOT AN ANSWER OF,
7  NO, THAT THEY WOULDN'T AGREE TO ANY OF THEM.
8      THE COURT:  WELL, HOPEFULLY, THE COURT'S ORDER WILL
9  PROPEL AND MR. NOLAN'S STATEMENTS TODAY WILL RESOLVE THAT.
10  I'M GOING TO MAKE YOUR JOB A LITTLE EASIER HERE,
11  BECAUSE THE COURT DOESN'T TAKE THE SUGGESTION WELL IN TERMS OF
12  SENDING THIS TO A MAGISTRATE JUDGE AT THIS POINT.  I JUST DON'T
13  THINK THAT WOULD WORK FOR A NUMBER OF REASONS, SOME THAT HAVE
14  NOTHING TO DO WITH -- THAT ARE INTERNAL TO THE COURT'S
15  OPERATIONS.
16     MR. ZELLER:  YOU'RE REFERRING TO THE REFERENCE OF
17  SOME OF THOSE MOTIONS TO JUDGE BLOCK?
18     THE COURT:  OR TO SOME OTHER MAGISTRATE JUDGE, YES.
19     MR. ZELLER:  AND NOT TO BELABOR THE POINT, I BELIEVE
20  THE COURT HAS REACHED A DETERMINATION ON THAT, BUT SOME OF
21  THOSE MOTIONS THAT ARE UP IN FRONT OF JUDGE INFANTE ACTUALLY
22  HEAVILY INVOLVE HIS PRIOR RULINGS AS WELL; SO THAT WOULD BE
23  PARTICULAR INEFFICIENCY, I THINK, ON TRYING TO MOVE THOSE OVER
24  TO JUDGE BLOCK.  THEY ARE NOT DISCRETE ISSUES, AS HAS BEEN
25  SUGGESTED.

## Page 33

1      THE COURT:  VERY WELL.
2  I'M GOING TO MOVE ON TO THE MOTION REGARDING THE
3  AUGUST 27, 2007 ORDER.
4  THIS RELATES :TO WHETHER OR NOT ALL PARTIES ARE
5  REQUIRED TO SUBMIT THE AFFIDAVIT SUGGESTING OR SETTING FORTH
6  SPECIFICALLY THEIR EVIDENCE RETENTION AND OTHER PRACTICES
7  RELATED TO DOCUMENT RETENTION IN THIS CASE.
8  THE COURT REMEMBERS THE HEARING WELL, AND WHILE IT IS
9  TRUE THAT IN THE COURSE OF DISCUSSING THE MOTION FOR
10  TERMINATING SANCTIONS WHICH WAS BROUGHT BY MGA THAT THE COURT
11  REFERRED DURING THE HEARING TO MATTEL AND TO MGA, I DON'T THINK
12  THE COURT COULD HAVE BEEN MORE EXPLICIT IN ITS ORDER THAT THE
13  ORDER APPLIED TO ALL PARTIES.
14  I DON'T KNOW WHAT LANGUAGE I COULD HAVE USED TO BE
15  CLEARER IN TERMS OF THE SCOPE OF THE ORDER; THAT'S MY TENTATIVE
16  THOUGHTS.  I'LL CERTAINLY GIVE ANYONE WHO WANTS TO ADDRESS IT
17  AN OPPORTUNITY TO DO SO, BUT MY SENSE IS THAT THIS APPLIES TO
18  EVERYBODY.  AND I GUESS I NEED TO HEAR SPECIFICALLY FROM
19  COUNSEL FOR MACHADO GOMEZ, BECAUSE I ALSO TEND TO AGREE THAT
20  THE DECLARATION SUBMITTED BY HIM -- WHICH IT'S NOT CLEAR TO THE
21  COURT WAS EVER FILED, ALTHOUGH I'VE NOW SEEN IT AS IT'S BEEN
22  SUBMITTED IN PAPERS -- IS ANYTHING BUT ADEQUATE TO COMPLY WITH
23  THE COURT'S ORDER REGARDING THE NEED FOR A FILED AFFIDAVIT.
24  COUNSEL?
25     MS. ANDERSON:  THANK YOU, YOUR HONOR.  THIS IS

9 (Pages 30 to 33)

JANUARY 7, 2008        BRYANT VS. MATTEL

Exhibit 12
Page _____ 372

Page 34

1  CHRISTA ANDERSON FOR CARTER BRYANT.
2      YOUR HONOR, I CERTAINLY CONSIDER MYSELF AND MY FIRM
3  TO BE VERY RESPONSIBLE LAWYERS, AND WE DID NOT UNDERSTAND
4  YOUR HONOR'S ORDER TO REALLY MEAN ALL PARTIES BECAUSE WE READ
5  THE LANGUAGE OF THE ORDER AS INCORPORATING AS ORDERED BY THE
6  COURT DURING THE HEARING.
7      WE DID READ YOUR HONOR'S WORDS VERY CAREFULLY TO TRY
8  TO ASCERTAIN WHETHER WE DID OR DID NOT HAVE TO DO IT.  WE
9  APOLOGIZE IF WE MISREAD THIS ORDER, YOUR HONOR.
10      THE COURT:  THERE'S NO NEED TO APOLOGIZE, BUT PART OF
11  WHAT I REMEMBER OF THE HEARING IS THAT THE ATTORNEY THAT YOU
12  HAD REPRESENTING CARTER BRYANT HAD TO LEAVE FOR A SPEAKING
13  ENGAGEMENT IN THE MIDDLE OF THE HEARING.  I'VE HAD ATTORNEYS
14  NOT SHOW UP FOR HEARINGS, BUT IT LITERALLY WAS THE FIRST TIME
15  THAT I'VE BEEN ON THE BENCH THAT I'VE ACTUALLY HAD AN ATTORNEY
16  WALK OUT IN THE MIDDLE OF A HEARING.
17      SO FOR CARTER BRYANT NOW TO BE SUGGESTING THAT THEY
18  DID NOT UNDERSTAND THE COURT'S ORDER OR DIDN'T HAVE AN
19  OPPORTUNITY TO CHALLENGE THE COURT'S ORDER, IT WOULD BE A GOOD
20  THING NEXT TIME FOR HIM TO STAY FOR THE WHOLE HEARING.
21      MS. ANDERSON:  ABSOLUTELY, YOUR HONOR.
22      JUST TO DEFEND OUR POSITION A BIT, IF YOUR HONOR
23  WOULD TOLERATE IT FOR ONE MOMENT, BECAUSE WE WERE NOT THERE,
24  WHEN WE SAW THAT YOUR HONOR HAD INCORPORATED REFERENCE TO --
25      THE COURT:  AGAIN, YOU LEFT.  YOU WERE THERE AT THE

Page 35

1  BEGINNING OF THE HEARING, AND YOU LEFT.
2      MS. ANDERSON:  INDEED.
3      WE GOT THE TRANSCRIPT, AND WE EXAMINED IT, AND WE HAD
4  CONCLUDED THAT BECAUSE THE AFFIDAVIT SEEMED TO BE INTENDED TO
5  ADDRESS WHO WAS INSTRUCTED TO PRESERVE DOCUMENTS AND WHICH
6  CATEGORIES OF DOCUMENTS THEY WERE INSTRUCTED TO PRESERVE, AND
7  BECAUSE THE COURT HAD SAID, AS WE UNDERSTAND THE HEARING, IT
8  REQUIRED TWO SINGULAR AFFIDAVITS, ONE FROM MGA, ONE FROM
9  MATTEL; TO US, THAT SUGGESTED THAT THIS WHOLE AFFIDAVIT
10  PROCEDURE DIDN'T SEEM TO BE DIRECTED AT OUR CLIENT.
11      AGAIN, WE DO APOLOGIZE.
12      THE COURT:  IT'S CLEAR NOW.
13      MS. ANDERSON:  YES.  WE WILL TAKE CARE OF THAT,
14  YOUR HONOR.
15      THE COURT:  VERY GOOD.
16      MS. ANDERSON:  ALSO, YOUR HONOR, THERE IS A REQUEST
17  IN HERE.  IT SEEMS TO BE TYPICAL FOR THESE MOTIONS FILED BY
18  MATTEL FOR SANCTIONS.  WE WOULD REQUEST THAT OUR CLIENT NOT BE
19  SANCTIONED, GIVEN THE AMBIGUITY OF THIS SITUATION.
20      THE COURT:  IF IT WAS AMBIGUOUS TO YOU, WHY DIDN'T
21  YOU SEEK CLARIFICATION IN THE INTERVENING MONTHS?
22      MS. ANDERSON:  I SUBMIT, YOUR HONOR, THAT MATTEL
23  EQUALLY SHOULD HAVE SOUGHT CLARIFICATION, BECAUSE WHEN WE READ
24  THE ORDER -- AND WE POINTED THIS OUT TO MATTEL'S COUNSEL -- IT
25  SEEMED TO INCORPORATE BY REFERENCE THE GUIDANCE THE COURT HAD

Page 36

1  GIVEN DURING THE HEARING ABOUT WHO WAS SUPPOSED TO DO IT AND
2  WHAT WAS SUPPOSED TO BE IN IT.
3      WE WERE NOT TRYING TO BE DIFFICULT.
4      YOUR HONOR, FRANKLY, IN THIS LITIGATION, WHICH IS
5  SCORCHED EARTH LITIGATION IF I'VE EVER SEEN IT, WE'VE SPENT, MY
6  CLIENT AND MYSELF AND MY FIRM, A LOT OF TIME DEFENDING
7  OURSELVES AGAINST WHAT WE VIEW TO BE INCESSANT ACTIVITIES BY
8  MATTEL TO SORT OF MAKE WORK, FILE BRIEFS, DO THINGS FOR
9  SITUATIONS WHERE WE DO NOT BELIEVE IT IS APPROPRIATE, AND WE
10  THINK IT IS HARASSING.  AND THIS APPEARED TO US TO BE YET
11  ANOTHER SITUATION WHERE WE WERE BEING DRIVEN TO DO THE SAME
12  THING OVER AND OVER AGAIN.
13      THAT IS SORT OF THE CONTEXT OF THE SITUATION WE'VE
14  BEEN DEALING WITH, YOUR HONOR.
15      THE COURT:  THANK YOU, COUNSEL.
16      MR. OVERLAND, DO YOU WISH TO SPEAK ON BEHALF OF
17  MR. MACHADO GOMEZ?
18      MR. OVERLAND:  YES, YOUR HONOR.
19      DOES THE COURT WISH ME TO JUST ADDRESS THE CONTENTS
20  OF THE DECLARATION?
21      THE COURT:  YOU MAY ADDRESS THE COURT'S TENTATIVE ON
22  THIS, AND THAT'S TO MAKE IT CLEAR TO THE PARTIES THAT ALL
23  PARTIES NEED TO SUBMIT THE AFFIDAVIT.  BUT PARTICULARLY WITH
24  RESPECT TO THE DECLARATION THAT HAS BEEN SUBMITTED ON BEHALF OF
25  YOUR CLIENT, I DON'T THINK IT FULLY CAPTURES WHAT THE COURT HAS

Page 37

1  SET FORTH IN THE ORDER.  AND PERHAPS THAT MIGHT BE BECAUSE YOU
2  DIDN'T HAVE THE SENSE, AS CARTER BRYANT DIDN'T HAVE THE SENSE,
3  THAT IT FULLY APPLIED.
4      I HOPE, AFTER TODAY'S ORDER, I'LL MAKE IT AS CRYSTAL
5  CLEAR AS POSSIBLE THAT IT DOES APPLY TO ALL PARTIES AND THAT AN
6  ACTUAL AFFIDAVIT NEEDS TO BE FILED WITH THE COURT, SETTING
7  FORTH EVERYTHING AS REQUESTED IN THE ORDER.
8      MR. OVERLAND:  AS I UNDERSTAND THE ORDER, IT WAS THAT
9  ALL PARTIES SET FORTH, IN AFFIDAVIT FORM, THEIR PRESERVATION
10  EFFORTS AND POLICIES.
11      THE COURT:  ALL YOUR CLIENT STATED IN THE DECLARATION
12  IS THAT HE HAS NOT KNOWINGLY DESTROYED ANY EVIDENCE.
13      THAT'S NOT A DESCRIPTION IN DETAIL OF THE RETENTION
14  POLICIES.
15      MR. OVERLAND:  WELL, HE DOESN'T HAVE A POLICY.  HE'S
16  AN INDIVIDUAL.  IT'S LIKE YOU ASKING ME WHAT MY RETENTION
17  POLICY IS.
18      THE COURT:  I SUSPECT YOU, LIKE I, PROBABLY HAVE
19  PERSONAL FILES AND WE KEEP THINGS OR WE DON'T KEEP THINGS OR WE
20  THROW THINGS OUT AFTER SO MANY YEARS.  WE ALL HAVE OUR OWN
21  POLICIES.  I UNDERSTAND THEY'RE NOT POLICIES IN THE CORPORATE
22  SENSE, BUT WE ALL HAVE OUR CUSTOMS, PRACTICES, HOWEVER YOU WANT
23  TO PHRASE IT.
24      HE'S A SOPHISTICATED BUSINESSMAN, LIKE THE OTHER
25  PARTIES IN THIS CASE, AND I SUSPECT HE HAS SOME -- I WANT TO

10 (Pages 34 to 37)

JANUARY 7, 2008        BRYANT VS. MATTEL

Exhibit 12
Page _____ 373



| Page 38 |
|---|
| 1  KNOW WHAT HE DOES WITH HIS DOCUMENTS.  AND TO SIMPLY SAY THAT |
| 2  HE HASN'T KNOWINGLY DESTROYED IS REALLY NOT SUFFICIENT. |
| 3       MR. OVERLAND:  I UNDERSTAND.  AND WE'D BE WILLING TO |
| 4  SUBMIT A DIFFERENT DECLARATION. |
| 5       IF THE COURT COULD BE CLEAR ON EXACTLY WHAT IT IS |
| 6  THAT MR. MACHADO SHOULD SAY.  IN OTHER WORDS, DOES HE HAVE TO |
| 7  SAY, 'FROM X DAY, HERE'S WHAT I DID WITH RESPECT TO DOCUMENTS,' |
| 8  OR 'THIS IS MY NORMAL HABIT OR CUSTOM?' |
| 9       THE COURT:  I'LL TRY TO BE CLEAR IN THE ORDER THAT I |
| 10  ISSUE TODAY. |
| 11       MR. OVERLAND:  OKAY.  VERY WELL. |
| 12       THE COURT:  THE LAST MOTION BEFORE THE COURT IS THE |
| 13  MOTION CONCERNING DISCOVERY BEFORE JUDGE INFANTE. |
| 14       AGAIN, THE ORDER SEEMS QUITE CLEAR.  IT RESTS ON |
| 15  FEDERAL RULES OF CIVIL PROCEDURE 53.  OF COURSE, THERE'S |
| 16  MULTIPLE PROVISIONS IN RULE 53 WHICH PERMIT THE APPOINTMENT OF |
| 17  A DISCOVERY MASTER.  ONE PROVISION IS PURSUANT TO A STIPULATION |
| 18  OF THE PARTIES, BUT THE THIRD PROVISION IS PURSUANT TO THE |
| 19  COURT'S ORDER THAT THIS IS AN APPROPRIATE CASE FOR THE |
| 20  APPOINTMENT OF A DISCOVERY MASTER. |
| 21       I'M CERTAINLY SYMPATHETIC TO THE ARGUMENT BEING MADE |
| 22  THAT IT'S AN EXCEPTIONAL AND RARE PROCEDURE FOR THE COURT TO |
| 23  INVOKE.  BUT I THINK JUST THIS RECORD ALONE, MR. NOLAN'S |
| 24  RECITATION OF THE DISCOVERY PRODUCED IN THIS CASE, CLEARLY |
| 25  SUGGESTS THAT THIS IS A PRETTY UNIQUE CASE.  AND THIS IS A CASE |

| Page 40 |
|---|
| 1  OF THE COURT.  WITH THE DISCOVERY MASTER, YOU CAN CERTAINLY -- |
| 2       MR. OVERLAND:  NO.  WE DO HAVE AN OPPORTUNITY TO BE |
| 3  HEARD ON THE APPOINTMENT. |
| 4       IF THE COURT -- UNLESS IT'S BY CONSENT -- |
| 5       THE COURT:  CITE ME TO A CASE, ONE CASE, COUNSEL, |
| 6  THAT SAYS THAT. |
| 7       MR. OVERLAND:  LOOK AT THE LANGUAGE OF 53(B)(1). |
| 8       THE COURT:  THAT'S NOT HOW -- I DON'T BELIEVE I |
| 9  APPOINTED HIM PURSUANT TO. |
| 10       LET ME TAKE A LOOK HERE. |
| 11       53(B)(1) TALKS ABOUT 'THE COURT MUST GIVE THE PARTIES |
| 12  NOTICE AND AN OPPORTUNITY TO BE HEARD.' |
| 13       MR. OVERLAND:  THAT'S RIGHT. |
| 14       THE COURT:  YOU'RE NOT A PARTY. |
| 15       MR. OVERLAND:  WELL, IF THE PARTIES ARE ENTITLED TO |
| 16  NOTICE, THEN CERTAINLY -- |
| 17       I AM A PARTY.  MR. MACHADO IS A PARTY. |
| 18       THE COURT:  VERY WELL. |
| 19       AND YOU DID NOT RECEIVE NOTICE? |
| 20       MR. OVERLAND:  NEVER RECEIVED NOTICE OF THAT. |
| 21       THE COURT:  YOU CAME IN THE CASE AFTERWARDS. |
| 22       MR. OVERLAND:  CORRECT. |
| 23       AND MR. MACHADO, THEREFORE, STANDS IN A DIFFERENT |
| 24  POSITION, BECAUSE AS A PARTY, HE'S ENTITLED TO NOTICE BEFORE |
| 25  THE APPOINTMENT OF A SPECIAL MASTER. |

| Page 39 |
|---|
| 1  WHICH, AFTER CONSULTATION WITH JUDGE BLOCK, THE COURT MADE THE |
| 2  DECISION, FOR THE FIRST TIME IN MY CAREER AS A JUDICIAL OFFICER |
| 3  THAT, YEAH, THIS IS A CASE THAT A DISCOVERY MASTER NEEDS TO BE |
| 4  APPOINTED. |
| 5       ALL DISCOVERY WAS REFERRED TO THE DISCOVERY MASTER. |
| 6       I DON'T KNOW WHAT REALLY NEEDS TO BE CLARIFIED OR |
| 7  WHAT THE CONFUSION ON THAT IS. |
| 8       I DON'T SEE THE DUE PROCESS ARGUMENT THAT'S BEING |
| 9  MADE OR URGED BY THE DEFENSE IN THIS CASE.  CERTAINLY, ANY |
| 10  DECISION BY THE DISCOVERY MASTER IS REVIEWABLE BY THIS COURT. |
| 11  THE RULE ITSELF AND THE COMMENTARY MADE CLEAR, I THINK, THAT |
| 12  THIRD PARTIES, EVEN NONCONSENTING THIRD PARTIES, ARE SUBJECT TO |
| 13  THE PROVISIONS, EVEN TO THE CONTEMPT PROVISIONS. |
| 14       SO I GUESS I DON'T REALLY SEE MUCH OF AN ISSUE ON |
| 15  THIS MOTION, BUT I'LL HEAR FROM ANYBODY WHO WISHES TO SPEAK |
| 16  FURTHER. |
| 17       MR. OVERLAND:  WITH RESPECT TO MR. MACHADO, I THINK |
| 18  THE BASIC PROBLEM WE HAVE IS THAT THE ORDER WAS MADE PURSUANT |
| 19  TO RULE 53, AND RULE 53 REQUIRES PRIOR NOTICE. |
| 20       WE NEVER RECEIVED PRIOR NOTICE. |
| 21       IF YOU LOOK AT 53(B)(1), THAT REQUIRES PRIOR NOTICE |
| 22  TO THE PARTY, AN OPPORTUNITY TO BE HEARD, AN OPPORTUNITY TO |
| 23  OBJECT. |
| 24       THE COURT:  YOU HAVE AN OPPORTUNITY TO BE HEARD, NOT |
| 25  ON THE APPOINTMENT OF THE DISCOVERY MASTER, BUT ON THE RULINGS |

| Page 41 |
|---|
| 1       THE COURT:  ANY CASE AT ALL? |
| 2       MR. OVERLAND:  I THINK WE CITED IN OUR PAPERS, YOUR |
| 3  HONOR. |
| 4       THE COURT:  YOU CITE 53 ON PAGE 3 OF YOUR OPPOSITION, |
| 5  COUNSEL, AND YOU CITE TO 53(B)(1), BUT YOU DIDN'T CITE A CASE. |
| 6       MR. OVERLAND:  MAYBE IT'S SELF-EVIDENT.  MAYBE THERE |
| 7  IS NO CASE BECAUSE IT'S SELF-EVIDENT. |
| 8       THE COURT:  CLEARLY, THE RULE ENVISIONS NONPARTIES |
| 9  BEING SUBJECT TO CONTEMPT PROCEEDINGS FOR NOT FOLLOWING THE |
| 10  ORDERS OF THE DISCOVERY MASTER, AND A NONPARTY WOULD NEVER HAVE |
| 11  ANY NOTICE, SO IF A NONPARTY HAD NO NOTICE AND YET THEY'RE |
| 12  SUBJECT TO THE RULE, WHY WOULD NOT A SUBSEQUENTLY-SERVED PARTY |
| 13  BE SUBJECT TO THE RULE?  THAT DOESN'T MAKE ANY SENSE. |
| 14       MR. OVERLAND:  WELL, IT DOESN'T MAKE SENSE BECAUSE |
| 15  PARTIES ARE TREATED DIFFERENTLY.  PARTIES ARE ENTITLED TO |
| 16  NOTICE, ACCORDING TO THE RULE. |
| 17       THE COURT:  WHEN YOU COME INTO AN EXISTING CASE WITH |
| 18  A DISCOVERY MASTER ALREADY PROPERLY APPOINTED, YOU COULD |
| 19  CERTAINLY, I CAN SEE, HAVE GROUNDS TO OBJECT TO THE DISCOVERY |
| 20  MASTER.  AND YOU'VE NEVER DONE THAT SINCE BEING BROUGHT INTO |
| 21  THIS CASE. |
| 22       MR. OVERLAND:  WE ARE DOING IT. |
| 23       THE COURT:  YOU'RE DOING IT NOW.  I UNDERSTAND THAT. |
| 24       MR. OVERLAND:  WE ARE DOING IT, THE FIRST OPPORTUNITY |
| 25  WHEN A MOTION WAS BROUGHT WITH RESPECT TO DISCOVERY IN FRONT OF |

11 (Pages 38 to 41)

JANUARY 7, 2008        BRYANT VS. MATTEL

Exhibit 12
Page _____ 374

Page 42

1 THE MASTER.
2      THE COURT:  ALL RIGHT.  I'LL RECONSIDER MY POSITION
3 IN LIGHT OF THAT ARGUMENT, COUNSEL.
4      MR. OVERLAND:  THE OTHER THING, YOUR HONOR, IS WITH
5 RESPECT TO MR. MACHADO -- AND I UNDERSTAND THE PROBLEM WITH
6 RESPECT TO THE DISCOVERY ISSUES BETWEEN MATTEL AND MGA, BUT
7 WITH RESPECT TO MR. MACHADO, THERE'S GOING TO BE A DISCRETE
8 DISCOVERY DISPUTE, AND THAT INVOLVES THE FIFTH AMENDMENT CLAIM
9 WITH RESPECT TO SPECIFIC QUESTIONS.
10      WHAT CONCERNS ME IS WHAT I HEARD BEFORE FROM THIS
11 COURT THAT THERE'S A STANDARD OF DEFERENCE TO THE RULING OF THE
12 MASTER.
13      THE COURT:  IT'S THE STANDARD THAT'S SET FORTH IN THE
14 ORDER GOVERNING THE DISCOVERY MASTER.
15      MR. OVERLAND:  I UNDERSTAND.  AND WHAT CONCERNS ME IS
16 THAT THESE RULINGS WITH RESPECT TO MR. MACHADO'S FIFTH
17 AMENDMENT PRIVILEGE ARE GOING TO BIND THE COURT.  THEY ARE VERY
18 IMPORTANT ISSUES WITH RESPECT TO MR. MACHADO.
19      THE COURT:  THEY ARE.  I UNDERSTAND THAT.
20      THANK YOU, COUNSEL.
21      ANYONE ELSE WISH TO BE HEARD ON THIS?
22      AND YOU ARE REPRESENTING THE NONPARTIES?
23      MR. MCFARLAND:  SOME OF THEM.
24      LARRY MCFARLAND ON BEHALF OF MS. CLOONAN, MS. LEAHY,
25 MS. MARLOW, MS. HALPERN, AND MS. ROCK.

Page 43

1      YOUR HONOR, ONE OF THE THINGS I WOULD LIKE TO ADDRESS
2 IS, MY UNDERSTANDING, THERE IS A DEARTH OF CASE LAW, I WILL
3 ACKNOWLEDGE.  WE'VE CITED CASE; THEY'VE CITED CASES.  I DON'T
4 THINK ANY OF THEM ARE ALL THAT ILLUMINATING, REALLY.  THEY JUST
5 KIND OF SAY IT.
6      THE COURT:  RIGHT.
7      MR. MCFARLAND:  WE UNDERSTOOD WHEN WE READ THAT IT
8 WAS DONE UNDER SECTION A, WHICH WAS, OF COURSE, BY STIPULATION.
9 SECTION C, OF COURSE, HAS A FINDING THAT IT CANNOT BE
10 EFFECTIVELY AND TIMELY ADDRESSED BY AN AVAILABLE DISTRICT COURT
11 JUDGE OR MAGISTRATE JUDGE OF THE DISTRICT.  AND CERTAINLY, AS
12 TO MGA AND MATTEL, NO ONE WOULD DISPUTE THAT THERE'S A LOT
13 GOING ON AND A LOT OF ACTIVITY, AND NO ONE IS TALKING ABOUT
14 THAT, THAT ALL OF THOSE MASSIVE, HARD-FOUGHT BATTLES ARE BEING
15 HANDLED BY JUDGE INFANTE.
16      TO MY KNOWLEDGE, THUS FAR, JUDGE INFANTE HASN'T
17 ISSUED ANY BINDING RULINGS WITH RESPECT TO THIRD PARTIES.  IT'S
18 ALL KIND OF COMING UP LATE IN THE GAME.
19      I DON'T KNOW EVERYTHING THAT'S DONE, BUT THAT'S MY
20 UNDERSTANDING.
21      NOW, CERTAINLY, HE'S NOT ISSUED ANY WITH RESPECT TO
22 MY CLIENTS, NOR ARE ANY MOTIONS PENDING IN FRONT OF JUDGE
23 INFANTE WITH RESPECT TO MY CLIENTS.  SO WHAT I'D LIKE TO
24 ADDRESS WITH SOME OF MY TIME IS THIS ISSUE OF UNIFORMITY, WHICH
25 SEEMS TO BE, I THINK, THE MOST POWERFUL ARGUMENT THEY HAVE,

Page 44

1 THAT THERE NEEDS TO BE SOME HISTORY AND SOME HISTORICAL
2 KNOWLEDGE.
3      AND WHAT I WOULD ARGUE, YOUR HONOR, IS THAT CONGRESS
4 ADDRESSED THAT ISSUE WHEN THEY SET UP THE SYSTEM OF HOW YOU
5 ISSUE A RULE 45 SUBPOENA.  PRESUMABLY, IF CONGRESS HAD WANTED
6 EVERY RULE 45 SUBPOENA TO ISSUE OUT OF THIS COURT, REGARDLESS
7 OF WHERE THE DEPONENT RESIDED, IF THE DEPONENT RESIDED IN TEXAS
8 OR MAINE OR MINNESOTA, CONSISTENT WITH DUE PROCESS, PRESUMABLY,
9 CONGRESS COULD HAVE DONE THAT.  BUT CONGRESS DIDN'T.  AND WE
10 HAVE A SYSTEM IN THIS COUNTRY WHERE IF YOU WANT TO ISSUE A RULE
11 45 SUBPOENA FOR A PERSON RESIDING IN TEXAS, IT HAS TO BE ISSUED
12 BY THE DISTRICT COURT IN TEXAS.
13      SO IN THAT CASE, I DON'T THINK I UNDERSTAND, OR MAYBE
14 I'M WRONG, IF YOU BELIEVE THAT THIS ORDER WOULD REQUIRE THE
15 DISTRICT COURT MAGISTRATE OR JUDGE IN TEXAS TO BE DIVESTED OF
16 JURISDICTION AND FOR THIS MATTER TO BE HEARD IN FRONT OF
17 JUDGE INFANTE IN SAN FRANCISCO.
18      IF THAT'S NOT THE CASE --
19      THE COURT:  THAT ISSUE IS REALLY NOT BEFORE THE COURT
20 RIGHT NOW.
21      MR. MCFARLAND:  WELL, I THINK IT IS BEFORE THE COURT,
22 BECAUSE THE ONLY REASON THAT THERE'S THIS UNIFORMITY ISSUE IS
23 BECAUSE MY CLIENT HAPPENS TO RESIDE IN LOS ANGELES.  I DON'T
24 THINK THAT'S A DISTINCTION WITHOUT A DIFFERENCE.  IF UNIFORMITY
25 IS A GOVERNMENT PRINCIPLE, THEN I THINK IT WOULD HAVE TO APPLY

Page 45

1 TO ALL RULE 45 SUBPOENAS.  AND IT CANNOT APPLY.
2      THE COURT:  BUT THE COURT WOULD CERTAINLY RECONSIDER
3 THE EFFECT OR THE BREADTH OR REACH OF ITS ORDER IF IT WAS
4 OPERATING TO DIVEST A DISTRICT JUDGE ON A RULE 45 CHALLENGE IN
5 TEXAS, FOR EXAMPLE.  THAT'S NOT BEFORE THE COURT RIGHT NOW.
6      MR. MCFARLAND:  THE OTHER THING, TOO, IS, I THINK IT
7 ALSO SHOWS HOW THIS IS NOT REALLY BEING ENFORCED BY EVEN MATTEL
8 IS THAT WHEN YOU GET A RULE 45 SUBPOENA, THERE IS LANGUAGE ON
9 IT THAT TELLS YOU WHAT TO DO AS THE RECIPIENT.  AGAIN, YOU GO
10 INTO COURT -- YOU KNOW, YOU HAVE THESE RIGHTS UNDER RULE 45;
11 IT'S ALL THERE ON PAGE 2 OF THE STANDARD FORM.
12      THIS ORDER, TO THE EXTENT IT DIVESTS THE THIRD-PARTY
13 DEPONENT OF THOSE RIGHTS -- NO NOTICE WAS EVER GIVEN TO ANY
14 THIRD-PARTY DEPONENT, TO MY KNOWLEDGE, THAT RATHER THAN FOLLOW
15 THE FEDERAL RULES, WHETHER THAT BE WHERE YOU FILE YOUR PAPERS,
16 THE TIMING, ALL OF THOSE OTHER ISSUES, YOU INSTEAD NEED TO
17 FOLLOW THIS ORDER.
18      THE COURT:  LIKE I SAY, THAT'S NOT AN ISSUE THAT --
19 IF THAT ISSUE WERE TO COME UP, COUNSEL, I CAN SEE THAT BEING
20 SOMETHING WHICH THE COURT WOULD NEED TO ADDRESS.
21      MR. MCFARLAND:  AND THE LAST THING, THEN, YOUR HONOR,
22 IS THAT I DO THINK, ESPECIALLY WITH TWO OF MY CLIENTS,
23 MS. MARLOW AND MS. LEAHY, SUBPOENAS HAD ALREADY BEEN SERVED AND
24 OBJECTIONS HAD ALREADY BEEN SERVED, ACTUALLY BEFORE THE FIRST
25 STAY PERIOD BACK IN 2005; SO MATTEL WAS WELL AWARE IN THAT LATE

12 (Pages 42 to 45)

JANUARY 7, 2008      BRYANT VS. MATTEL

*Exhibit 12*
Page _____ 375

Page 46

1  2006 TIME FRAME, WHEN THIS STIPULATION AND ORDER WAS PRESENTED
2  TO THE COURT, THAT THERE WERE DISPUTES, VIS-À-VIS AT LEAST
3  THOSE TWO OF MY WITNESSES, AND YET NO NOTICE WAS GIVEN TO THEM,
4  NO OPPORTUNITY TO BE HEARD AT THAT TIME.  AND IF THEY HAD BEEN
5  HEARD AT THAT TIME, THIS UNIFORMITY KNOWLEDGE THAT NOW EXISTS A
6  YEAR LATER WOULDN'T BE USED.  IN OTHER WORDS, THEY COULD HAVE
7  SPOKEN UP AT THAT TIME AND SAID THAT THEY FELT THAT IT WAS
8  IMPORTANT TO HAVE ACCESS TO A FEDERAL JUDGE.
9      THE COURT:  SPEAKING OF DEPOSITIONS, I ASSUME THOSE
10 DEPOSITIONS THAT WE LAST DISCUSSED WENT FORWARD IN DECEMBER?
11     MR. MCFARLAND:  I'M PROUD TO SAY, YOUR HONOR, THAT
12 ALL THREE OF MY WITNESSES APPEARED ON THE DATES THAT I
13 REPRESENTED TO THIS COURT THAT THEY WOULD BE THERE.
14     THE COURT:  EXCELLENT.  I'M VERY PLEASED TO HEAR
15 THAT, COUNSEL.  THANK YOU VERY MUCH.
16     YOU MAY, COUNSEL.
17     MR. DELGADILLO:  BRYANT DELGADILLO FOR NONPARTY
18 KAYE SCHOLER.
19     TWO QUICK POINTS.
20     THE FIRST, AS YOU MENTIONED, THE RULES OR TIMING HAD
21 NOT BEEN RAISED.  A POINT OF CLARIFICATION, IT HAS, AT LEAST
22 WITH RESPECT TO KAYE SCHOLER.  WE RESPONDED TO THE OPPOSITION
23 TO THEIR MOTION PURSUANT TO THE FEDERAL RULES ON THE ORDER THAT
24 THEY PROVIDED AS A FIVE-DAY NOTICE PERIOD, FIVE-DAY RESPONSE
25 PERIOD.  WE DIDN'T BELIEVE WE WERE BOUND BY THAT ORDER, AS WE

Page 47

1  ARGUED HERE.  WE RESPONDED IN ACCORDANCE WITH THE FEDERAL RULES
2  OF CIVIL PROCEDURE.  AND MATTEL'S COUNSEL HAS NOW TAKEN THE
3  POSITION BEFORE THIS COURT, AS WELL AS BEFORE JUDGE INFANTE,
4  THAT OUR OPPOSITION IS TIME-BARRED AND SHOULD BE STRICKEN.  SO
5  IT HAS BEEN RAISED.  WE'VE TAKEN THAT POSITION, THAT WE
6  COMPLIED WITH THE FEDERAL RULES, WHICH UNDER THE SUBPOENA, THE
7  RULE 45 SUBPOENA, AS COUNSEL POINTED OUT, THERE WAS NO NOTICE
8  GIVEN UNDER THE SUBPOENA THAT WE RECEIVED THAT THE OBJECTION
9  PERIOD, ANY RESPONSE TO A MOTION TO COMPEL, WAS OTHERWISE
10 CHANGED.
11     THEY DID PROVIDE US WITH THE DISCOVERY ORDER IN THE
12 COURSE OF OUR MEET AND CONFERS, WHEN IT BECAME CLEAR THERE WAS
13 GOING TO BE SOME OBJECTIONS TO THE SUBPOENA AND THAT WE WOULD
14 HAVE TO WORK OUT.  AND MOTION PRACTICE ULTIMATELY RESULTED.
15 THEY DID PROVIDE US WITH THE DISCOVERY ORDER, BUT NOT IN
16 CONNECTION WITH THE ACTUAL SUBPOENA THAT OUR FIRM RECEIVED.
17     ANOTHER POINT IS, JUST TO CLARIFY AS WELL, THE
18 DISCOVERY ORDER SAYS THAT THE PARTIES ARE RESPONSIBLE FOR
19 PAYING FOR THE DISCOVERY REFEREE.  I JUST WANT TO MAKE CLEAR
20 THAT NONPARTIES ARE NOT GOING TO BE REQUIRED TO PAY.
21     THE COURT:  THAT IS CORRECT.
22     MR. DELGADILLO:  THANK YOU, YOUR HONOR.
23     THE COURT:  THAT IS CORRECT.
24     MR. TIET:  KIEN TIET FOR NONPARTY STERN & GOLDBERG.
25     WE'RE IN THE SAME BOAT WITH KAYE & SCHOLER, AND WE'LL

Page 48

1  JUST JOIN IN THEIR ARGUMENT.
2      THE COURT:  VERY WELL.  THANK YOU.
3      ANYBODY ELSE?
4      MS. MORGENTHALER:  ALISA MORGENTHALER FOR NONPARTY
5  FARHAD LARIAN.
6      AS MR. NOLAN MENTIONED, THERE HAVE BEEN OVER 50
7  THIRD-PARTY SUBPOENAS IN THIS CASE.  YET, THIS IS THE VERY
8  FIRST TIME THAT JUDGE INFANTE IS BEING ASKED TO CONSIDER A
9  THIRD-PARTY SUBPOENA OR DISCOVERY MATTER THAT WOULD BIND A
10 THIRD PARTY THAT DID NOT CONSENT TO THE DISCOVERY REFERENCE; SO
11 I DON'T THINK SOME OF THE EFFICIENCY ISSUES THAT HAVE BEEN
12 DISCUSSED AND THE COURT'S CONCERN WITH INSTITUTIONAL MEMORY
13 APPLY HERE.
14     I THINK THAT THESE ARE ISSUES THAT CAN BE EFFECTIVELY
15 ADDRESSED BY A MAGISTRATE JUDGE, SUCH THAT THE BALANCE WEIGHS
16 IN FAVOR OF CONSIDERING THE DUE PROCESS CONCERNS TO THE
17 NONPARTIES VERSUS THE EFFICIENCY ARGUMENT TO THE PARTIES.
18     THE COURT:  LET ME ASK YOU THE SAME QUESTION.
19     ARE YOU AWARE OF ANY AUTHORITY WHICH PREVENTS THE
20 ASSIGNMENT OF THE THIRD PARTY TO THE DISCOVERY MASTER UNDER
21 53(C).
22     MS. MORGENTHALER:  I'M NOT AWARE OF ANY CASE THAT
23 SAYS THAT SPECIFICALLY.  I'M ALSO NOT AWARE OF ANY CASE MATTEL
24 CITED ON WHERE A NONPARTY HAS BEEN BOUND BY DISCOVERY REFERENCE
25 THAT WAS DONE PURSUANT TO THE STIPULATION OF THE PARTIES, WHICH

Page 49

1  IS THE CASE HERE.
2      THE COURT:  VERY WELL.
3      MS. MORGENTHALER:  I THINK ONE OF THE OTHER COUNSEL
4  MENTIONED THAT THE CASES JUST HAVE NOT BEEN PARTICULARLY CLEAR
5  ON THIS POINT.
6      ALSO, JUST ONE FINAL POINT, I THINK THE PREJUDICE TO
7  THE NONPARTIES THAT IS TAKING PLACE HERE IS ILLUSTRATED BY THE
8  FACT THAT SOME OF THE EVIDENCE THAT MATTEL IS RELYING ON IN
9  SUPPORT OF THIS MOTION, THE DECLARATION OF BRIDGET HAULER, THE
10 THIRD PARTIES HAVE NEVER SEEN, BECAUSE THAT DECLARATION IS
11 FILED UNDER SEAL; IT'S DESIGNATED AEO UNDER THEIR PROTECTIVE
12 ORDER.  SO SINCE WE'RE NOT ATTORNEYS IN THE CASE, WE CAN'T SEE
13 IT.  I'VE NEVER SEEN IT.  WE CAN'T GET IT OFF PACER.
14     AND OTHER PARTICULAR LOGISTICAL PROBLEMS, WE NEVER
15 RECEIVED HARD COPIES OF THE REPLIES WE HAD TO GET, BECAUSE
16 INITIALLY, THE THIRD PARTIES WERE NOT ON PACER AND --
17     THE COURT:  THAT'S A PROBLEM WITH THE PROTECTIVE
18 ORDER, THOUGH.  THAT'S NOT A PROBLEM WITH THE DISCOVERY MASTER
19 PROCEDURE.
20     MS. MORGENTHALER:  RIGHT.  BUT I'VE SEEN SOME OF THE
21 EVIDENCE THAT THEY'RE RELYING ON HERE.
22     THE COURT:  I AGREE, THAT SOUNDS LIKE A PROBLEM AND
23 THAT NEEDS TO BE ADDRESSED, BUT THAT'S NOT BEFORE THE COURT
24 RIGHT NOW.  AND PERHAPS IT SHOULD BE.  I INVITE THE THIRD
25 PARTIES TO TAKE THAT UP AS APPROPRIATE, AND I WOULD TRUST THAT

13 (Pages 46 to 49)

JANUARY 7, 2008      BRYANT VS. MATTEL



Exhibit 12
Page _____ 376

Page 50

1  MATTEL WOULD BE ABLE TO ADDRESS THAT ISSUE IN A MEET AND
2  CONFER. BUT THAT'S CERTAINLY SOMETHING THAT NEEDS TO BE
3  ADDRESSED. EVERYONE WHO HAS BEEN AFFECTED BY AN UNDER-SEAL
4  DOCUMENT IN LITIGATION -- NOT TO ISSUE AN ADVISORY OPINION, BUT
5  I'LL GIVE YOU THE ADVICE THAT THEY SHOULD SEE IT; THAT SEEMS
6  PRETTY SELF-EVIDENT.
7      I CERTAINLY AGREE WITH YOU, COUNSEL.
8      MS. MORGENTHALER: THANK YOU, YOUR HONOR.
9      THE COURT: THANK YOU.
10     MR. NOLAN, DO YOU HAVE ANYTHING ON THIS?
11     MR. NOLAN: THE ONLY THING IS, I WANTED TO MAKE SURE
12  I COME BACK TO THE EX-PARTE APPLICATION THAT WE HAVE.
13     THE COURT: I HAVEN'T FORGOTTEN ABOUT IT.
14     MR. NOLAN: OKAY. THEN I'LL WAIT.
15     THE COURT: LET'S GIVE MATTEL A CHANCE TO RESPOND TO
16  THIS THIRD AND FINAL MOTION THAT'S BEEN BROUGHT.
17     COUNSEL, REALLY, MY TENTATIVE IS IN YOUR FAVOR, BUT I
18  WOULD LIKE YOU TO ADDRESS THAT RULE 45 ISSUE THAT'S BEEN RAISED
19  BY MR. OVERLAND AND SOME OF THE OTHER COUNSEL.
20     MR. ZELLER: I THINK, NUMBER ONE, THAT IT IS NOT
21  BEFORE THE COURT AT THIS JUNCTURE. IF PEOPLE HAVE
22  PARTICULAR COMPLAINTS --
23     THE COURT: IT IS AND IT ISN'T, THOUGH, BECAUSE IT'S
24  BEFORE -- AND I UNDERSTAND THAT IT'S NOW BEFORE JUDGE INFANTE,
25  AND THE ORDER IS BEING USED BY YOU AS A RESPONSE BEFORE

Page 51

1  JUDGE INFANTE, AND WE'RE GETTING PRETTY CLOSE TO THE END OF
2  DISCOVERY HERE. SO IF THIS IS A PROBLEM -- IT APPARENTLY
3  APPEARS TO BE SOMETHING THAT WE DIDN'T FULLY ADDRESS OR THINK
4  THROUGH, PERHAPS, WHEN WE WERE DOING THE DISCOVERY MASTER
5  MOTIONS.
6      MR. ZELLER: SURE.
7      ON THAT NOTE, I'LL BE HAPPY TO ADDRESS IT AS TO THE
8  SUBSTANCE.
9      THE COURT: PLEASE.
10     MR. ZELLER: NUMBER ONE, THE MOTION THAT WE HAVE
11  BROUGHT ONLY ASKED FOR CONFIRMATION OF THE DISCOVERY MASTER'S
12  AUTHORITY AS TO THIRD PARTIES WHO ARE WITHIN THE PERSONAL
13  JURISDICTION OF THE COURT. THAT IS CONSISTENT WITH RULE 45.
14  THAT IS ALL THAT WE'VE ASKED THE COURT TO DO. NONE OF THE
15  PARTIES HERE TODAY DISPUTE IN ANY WAY THAT THEY ARE CALIFORNIA
16  RESIDENTS WHO ARE SUBJECT TO THAT AUTHORITY.
17     THE COURT: FAIR ENOUGH.
18     AS FAR AS THAT'S CONCERNED, I THINK I'M WITH YOU,
19  ALTHOUGH I DO WANT TO LOOK AT THIS ONE ISSUE RAISED BY
20  MR. OVERLAND. BUT ADDRESS THIS RULE 45 PROBLEM.
21     MR. ZELLER: I THINK THAT IT MAY NOT BE -- THERE'S A
22  UNITARY ANSWER TO THE SECOND PART OF THE RULE 45 ISSUE THAT WAS
23  RAISED. LET ME START OFF WITH THE PARTIES WHO ARE INVOLVED
24  HERE.
25     WHO ARE WE TALKING ABOUT?

Page 52

1      NUMBER ONE, KAYE SCHOLER, WHO ARE ISAAC LARIAN'S
2  ATTORNEYS. THERE IS NO QUESTION THAT THEY HAVE HAD NOTICE.
3  WHEN WE ENGAGED THEM, AS KAYE SCHOLER ADMITS, WE PROVIDED THEM
4  WITH A COPY OF THE DISCOVERY MASTER ORDER, AND WE ADVISED THEM
5  AS TO, CERTAINLY, WHAT OUR VIEWPOINT WAS, AS TO WHO WAS GOING
6  TO BE DECIDING THESE DISPUTES.
7      I DON'T SEE THAT AS BEING ANY DIFFERENT THAN,
8  NECESSARILY, TELLING SOMEONE WHO IS NOT A PARTY IN THE CASE, UP
9  UNTIL THAT POINT, 'WELL, HERE'S THE NAME OF THE JUDGE WHO IS
10  HANDLING IT.'
11     THE COURT: SO IS IT YOUR POSITION THAT WITH RESPECT
12  TO EACH OF THESE THIRD PARTIES, YOU HAVE PROVIDED NOTICE?
13     MR. ZELLER: THAT'S CORRECT.
14     THE COURT: THEN I'LL LET THE DISCOVERY MASTER TAKE
15  THAT UP, AND I'LL REVIEW THAT IF NECESSARY.
16     MR. ZELLER: WE DON'T NECESSARILY DISAGREE,
17  YOUR HONOR, THAT OBVIOUSLY, IN A PARTICULAR CASE, PERHAPS THERE
18  WOULD BE SOME ISSUE, PRESUMABLY, THE PARTIES WILL DO EVERYTHING
19  THEY CAN TO RESOLVE IT. CERTAINLY, WE WOULD GIVE PEOPLE
20  NOTICE.
21     BUT ALL THEY WERE COMPLAINING ABOUT, YOU WILL NOTICE,
22  WAS THAT THE FACE OF THE SUBPOENA DOESN'T MENTION
23  JUDGE INFANTE. I'M NOT REALLY SURE THAT THAT'S A MEANINGFUL
24  CONSIDERATION AT THIS JUNCTURE.
25     IT CERTAINLY WOULD NOT HAVE ANY MEANING TO A PARTY

Page 53

1  WHO IS OUTSIDE THE COURT'S PERSONAL JURISDICTION, BECAUSE I
2  DON'T THINK WE NECESSARILY DISAGREE THAT IF IT'S AN
3  OUT-OF-STATE PARTY, THEN THAT SUBPOENA IS GOING TO HAVE TO BE
4  DEALT WITH BY A DISTRICT COURT WHO HAS PERSONAL JURISDICTION IN
5  ACCORDANCE WITH THE NORMAL RULES.
6      THE COURT: RIGHT.
7      MR. ZELLER: I MEAN, ALL WE'RE TALKING ABOUT HERE ARE
8  PARTIES, NONPARTIES, WHO ARE CLEARLY WITHIN THE JURISDICTION OF
9  THE COURT; SO WE'RE NOT PUSHING THE ENVELOPE ON THAT BY ANY
10  STRETCH OF THE IMAGINATION, YOUR HONOR.
11     THE COURT: VERY WELL.
12     WHILE YOU'RE AT THE LECTERN, LET'S SHIFT GEARS TO THE
13  EX-PARTE APPLICATION THAT'S BEEN BROUGHT BY MGA AND
14  CARTER BRYANT.
15     MR. QUINN: I'D BE HAPPY TO ADDRESS IT, YOUR HONOR.
16     THE COURT: ALL RIGHT. SOMEBODY.
17     BECAUSE I TEND TO AGREE WITH MGA AND CARTER BRYANT ON
18  THIS ONE. I DON'T THINK, BASED ON MY READING OF THE LAW -- AND
19  I KNOW THERE'S NOTHING CLEARLY ON POINT, AND YOU BOTH CITE TO A
20  VARIETY OF CASES IN THE COMMENTARY AND IN THE RULE ITSELF, BUT
21  MY SENSE IS THAT THE 30(B)(6) DEPOSITIONS DO NOT COUNT TOWARDS
22  THE NUMBER OF ALLOTTED DEPOSITIONS. I THINK THAT'S PROBABLY
23  THE SAFEST WAY TO INTERPRET THE STATUTE, THE RULE, AND THE
24  CASES THAT HAVE ATTEMPTED TO GRAPPLE WITH THAT RULE.
25     I UNDERSTAND THAT THEY, FROM YOUR PERSPECTIVE, WENT

14 (Pages 50 to 53)

JANUARY 7, 2008          BRYANT VS. MATTEL

Exhibit 12
Page _____ 377

Page 54

1   AFIELD OF THE 30(B)(6) TOPICS, BUT THAT'S PERMITTED.  AND IN
2   TERMS OF THE ACTUAL COUNTING, I DON'T THINK THAT IT DOES US ANY
3   GOOD HERE AT THIS POINT TO TRY TO FIGURE OUT HOW FAR AFIELD
4   THEY WENT AND WHETHER THAT COUNTS.
5         MY TENTATIVE WOULD BE TO ONLY COUNT THOSE AS 30(B)(6)
6   DEPOSITIONS -- THOSE WOULD ALL COUNT TOWARDS ONE OF THE MATTEL.
7         MR. QUINN:  I UNDERSTAND, YOUR HONOR.
8         MY FIRST RESPONSE IS, WE'RE DEALING WITH THIS ON AN
9   EX-PARTE BASIS.
10        THE COURT:  I UNDERSTAND THE CONCERN HERE.
11        MR. QUINN:  LET'S SET THAT ASIDE.
12        THE COURT:  IF WE WEREN'T THREE WEEKS AWAY FROM THIS,
13  I'D PROBABLY TELL YOU ALL TO GO TO THE DISCOVERY MASTER.
14        MR. QUINN:  INDEED.  AND THAT WAS GOING TO BE MY
15  SECOND POINT, YOUR HONOR.  I THINK THIS IS AN INFANTE ISSUE.
16        THE COURT:  IT PROBABLY IS, COUNSEL.
17        MR. QUINN:  SO THIRD, I AGREE WITH THE GENERAL
18  PRINCIPAL THAT THAT'S JUST A 30(B)(6) DEPOSITION.  BUT IF YOU
19  TAKE A 30(B)(6) DEPOSITION AND YOU ESSENTIALLY ABANDON -- I'LL
20  GIVE YOU A HYPOTHETICAL NOW -- YOU ABANDON THE TOPIC, YOU
21  ADDRESS THE TOPIC AND THEN YOU GO FAR OFF THE RESERVATIONS, AND
22  YOU'RE REALLY DEPOSING THAT WITNESS AS AN INDIVIDUAL FACT
23  WITNESS, THEN IT'S CONVERTED INTO AN INDIVIDUAL DEPOSITION.
24        THE COURT:  AND I GUESS I UNDERSTAND THAT.
25        MR. QUINN:  THERE'S CASE LAW THAT SAYS THAT.

Page 55

1         THE COURT:  I UNDERSTAND THAT ARGUMENT.  BUT YOU
2   CHOOSE WHO YOU BRING AS YOUR 30(B)(6) WITNESSES, AND THEY
3   DON'T.  I JUST THINK IT GOES DOWN A DIFFICULT ROAD.
4         I'M NOT SAYING THIS IS A PERFECT DECISION ON THIS.  I
5   THINK WE NEED TO COME UP WITH A GROUND RULE, AND I THINK THE
6   GROUND RULE I'M LEANING TOWARDS IS, LET'S NOT COUNT THE
7   30(B)(6) WITNESSES TOWARDS THE DEPOSITION TOTAL.
8         MR. QUINN:  I WOULD POINT OUT, YOUR HONOR, THAT IT
9   CREATES A POTENTIAL LOOPHOLE THAT TRUCKS CAN DRIVE THROUGH.
10        THE COURT:  I UNDERSTAND IT DOES.  AND THE ONLY THING
11  THAT STOPS THE LOOPHOLE IS THAT YOU GET TO CONTROL THAT; YOU
12  GET TO CONTROL YOUR 30(B)(6) DEPOSITIONS WITNESSES TO A CERTAIN
13  EXTENT AND THEY GET TO CONTROL THEIRS.
14        MR. QUINN:  THE PROBLEM IS, WE DON'T GET TO CONTROL
15  WHAT THEY ASK.
16        THE COURT:  NO.
17        MR. QUINN:  ONCE THE PERSON IS IN THE CHAIR, THEY CAN
18  BE ASKED THINGS OUTSIDE THE SCOPE.
19        THE COURT:  SO PICK WHO YOU PUT IN THE CHAIR
20  CAREFULLY.
21        MR. QUINN:  THE RULE GIVES US, REALLY, SOME
22  REQUIREMENTS THERE.  WE'RE SUPPOSED TO PUT SOMEBODY WHO'S MOST
23  KNOWLEDGEABLE AND NOT TRY TO BE DEFENSIVE AND GIVE THEM
24  SOMEBODY WHO WOULDN'T NECESSARILY HAVE THE BEST KNOWLEDGE ON
25  THE DESIGNATED SUBJECT BUT DOESN'T KNOW ANYTHING ELSE.

Page 56

1         THE COURT:  AND THAT LEADS TO THE OPENNESS AND THE
2   TRANSPARENCY OF THE WHOLE PROCESS.
3         MR. QUINN:  THERE YOU GO.
4         THE COURT:  SO THE EX-PARTE APPLICATION IS GRANTED,
5   UNLESS MR. NOLAN WANTS TO CONVINCE ME OTHERWISE.
6         MR. NOLAN:  NO.  I LIKE WINNING.
7         I THINK IT'S ALSO NICE BECAUSE IT DOESN'T MAKE ME
8   HAVE TO SAY THAT, GEE, IT'S CURIOUS THAT WHEN WE WERE BACK HERE
9   ON OCTOBER 15TH --
10        THE COURT:  I UNDERSTAND.  THAT CERTAINLY COLORS THE
11  COURT'S RULING ON THIS AS WELL.
12        MR. QUINN:  BUT, YOUR HONOR, JUST SO WE'RE ALL CLEAR
13  WHAT THE RESULTS OF THE EX-PARTE IS.
14        THE COURT:  I'LL TRY TO WRITE A REAL CLEAR ORDER THIS
15  TIME.
16        MR. QUINN:  THERE'S TEN INDIVIDUALS -- IN ADDITION TO
17  THE 30(B)(6) SUBJECTS, THERE ARE TEN INDIVIDUALS NOW THAT
18  THEY'RE ASKING US TO PRODUCE BY THE 28TH OF JANUARY.
19        THE COURT:  AS YOU SAID EARLIER, MR. QUINN, YOU HAVE
20  A LOT OF WORK TO DO.
21        MR. QUINN:  THANK YOU, YOUR HONOR.
22        THE COURT:  THANK YOU, COUNSEL.
23        GOOD DAY.
24        MR. QUINN:  YOUR HONOR, I ASSUME THEY STILL HAVE TO
25  BE SERVED WITH SUBPOENAS IF THEY'RE NONPARTIES.

Page 57

1         THE COURT:  I THINK THAT'S PART OF THE RULES.
2         MR. NOLAN:  OKAY.  YOUR HONOR, THESE LAST-MINUTE
3   'HAIL MARY' PASSES CAUSE A LOT OF CONFUSION.  I'VE JUST GOT TO
4   ADDRESS THIS.
5         UP UNTIL NOW, MATTEL HAS ALWAYS INDICATED -- FIRST OF
6   ALL, THEY NEVER OBJECTED TO THE FACT THAT WE DIDN'T ISSUE
7   SUBPOENAS.  BUT WE'LL ISSUE SUBPOENAS.
8         BUT MATTEL HAS TO BE AUTHORIZED TO ACCEPT SUBPOENAS,
9   BECAUSE THEY HAVE OBJECTED IN THE PAST WHEN I'VE TRIED TO SERVE
10  SUBPOENAS OR SOMEBODY HAS SERVED SUBPOENAS ON THEM.
11        WILL THEY ACCEPT SUBPOENAS FOR THESE EMPLOYEES?
12        THE COURT:  MR. QUINN, WILL YOU ACCEPT SUBPOENAS FOR
13  YOUR MATTEL EMPLOYEES?
14        MR. QUINN:  NOT EX-EMPLOYEES.  MOST OF THESE ARE
15  EX-EMPLOYEES.
16        AND I'VE GOT TO DEFER TO MR. ZELLER ABOUT THE
17  COMMITMENTS THAT WE'VE MADE BEFORE, WHICH WE STAND BY.
18        MR. ZELLER:  WE ABSOLUTELY STAND BY IT.  BUT THAT IS
19  NOT A CORRECT STATEMENT OF WHAT'S GOING ON HERE.
20        NUMBER ONE, TWO OF THE PEOPLE WHO ARE IDENTIFIED
21  HERE, MILT ZABLOW AND ROB SIMONEAU, ARE EX-EMPLOYEES.  THEY ARE
22  NOT EVEN CURRENT MATTEL EMPLOYEES.  THEY'VE NEVER BEEN SERVED
23  WITH A SUBPOENA.  WE'VE NEVER BEEN ASKED TO ACCEPT SERVICE OF
24  SUBPOENA FOR THEM.  SO THEY ARE EX-EMPLOYEES.  THE OTHER
25  PEOPLE, A NUMBER OF THEM, EXCEPT FOR THREE, ARE LOW-LEVEL

15 (Pages 54 to 57)

JANUARY 7, 2008          BRYANT VS. MATTEL

Exhibit 12
Page _____ 378

Page 58

1   EMPLOYEES WHO ARE NOT SUBJECT TO RULE 30.
2        NOW, WHAT WE HAVE SAID IN TERMS OF OUR
3   REPRESENTATIONS TO ACCEPT SERVICE IS VERY SPECIFIC.  IT IS
4   MATTEL'S CURRENT DIRECTORS AND OFFICERS.  IT DOES NOT EXTEND TO
5   PEOPLE WHO ARE FORMER.  WE HAVE SAID, CERTAINLY, IF THERE ARE
6   FORMER PEOPLE THAT THEY WANT TO ASK US ABOUT --
7        THE COURT:  I'M GOING TO STOP YOU HERE FOR A SECOND.
8        THIS IS BEYOND THE SCOPE OF THE EX-PARTE APPLICATION.
9        ALL I'M DOING IS, I'M GRANTING THE EX-PARTE
10  APPLICATION IN TERMS OF THE COUNTING OF THE WITNESSES.  I'M NOT
11  GOING TO WADE INTO -- I NEED TO RETRACT MY STATEMENT IN TERMS
12  OF WHAT -- I'M NOT OFFERING ANY RULING RIGHT NOW WITH RESPECT
13  TO THE SERVICE OF SUBPOENAS.
14       MR. NOLAN:  FINE, YOUR HONOR.
15       COULD YOU JUST ORDER MATTEL TO ADVISE US BY CLOSE OF
16  BUSINESS TODAY OF THE TEN WHO THEY REPRESENT AND WHO THEY
17  DON'T.  I THINK THAT'S REASONABLE, ISN'T IT?
18       MR. QUINN:  THAT'S NO PROBLEM.
19       THE COURT:  VERY GOOD.  THAT'S NOT A PROBLEM.
20       THANK YOU, COUNSEL.
21
22
23
24  / / /
25  / / /

Page 59

1        CERTIFICATE
2
3   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
4   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
    ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
5   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.
6
7   _____        _____
    THERESA A. LANZA, CSR, RPR          DATE
8   FEDERAL OFFICIAL COURT REPORTER
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

16 (Pages 58 to 59)

JANUARY 7, 2008        BRYANT VS. MATTEL

Exhibit 12
Page _____ 379

**A**

ABANDON 54:19,20
ABLE 23:14 28:25 29:6 50:1
ABSENCE 7:21
ABSOLUTE 22:18
ABSOLUTELY 34:21 57:18
ACCEPT 28:23 57:8 57:11,12,23 58:3
ACCESS 46:8
ACCOUNT 9:16 13:11
ACCOUNTS 13:24
ACKNOWLEDGE 43:3
ACTIONS 1:12
ACTIVITIES 36:7
ACTIVITY 43:13
ACTUAL 18:16 37:6 47:16 54:2
ADD 32:1
ADDITION 56:16
ADDITIONAL 7:6,24 8:7,15,15 14:21 16:6 16:7,12 17:2,21 19:23 20:4,5,5,20 21:25
ADDRESS 14:6 16:23 17:3,6 33:16 35:5 36:19,21 43:1,24 45:20 50:1,18 51:3,7 51:20 53:15 54:21 57:4
ADDRESSED 43:10 44:4 48:15 49:23 50:3
ADDRESSES 9:14
ADEQUATE 14:22 15:9 33:22
ADEQUATELY 10:13
ADMISSIONS 18:22 19:10
ADMITS 52:3
ADVANCE 32:5
ADVERTISING 9:15
ADVICE 50:5
ADVISE 58:15
ADVISED 52:4
ADVISORY 50:4
AEO 49:11
AFFIDAVIT 33:5,23 35:4,9 36:23 37:6,9
AFFIDAVITS 35:8
AFIELD 54:1,3
AFRAID 24:4
AGO 13:1 28:25
AGREE 17:1 32:6,7 33:19 49:22 50:7 53:17 54:17
AHEAD 20:25
AL 1:7,10
ALAN 2:14

ALISA 3:15 5:16 48:4
ALLEGED 9:11,24 10:5 27:17
ALLOTTED 53:22
ALLOWS 22:14 27:21
AMBIGUITY 35:19
AMBIGUOUS 35:20
AMBIT 17:14
AMENDED 9:20
AMENDMENT 42:8 42:17
AMOUNT 7:13 9:17 12:11 24:18
AMOUNTS 8:20 10:5
AMPLE 17:25
AMY 2:14 5:8
ANALYSIS 21:11
ANDERSON 2:3 5:10 5:10 16:25 17:12,18 18:3 33:25 34:1,21 35:2,13,16,22
ANGELES 2:10,15,20 3:6,16 44:23
ANSWER 13:2,15,16 30:1 32:6 51:22
ANSWERED 19:9,10
ANYBODY 24:11 39:15 48:3
APOLOGIZE 34:9,10 35:11
APPARENT 11:6
APPARENTLY 51:2
APPEAR 8:3
APPEARANCES 2:1 3:1 5:6
APPEARED 36:10 46:12
APPEARS 51:3
APPLICATION 6:1 10:21 11:16 50:12 53:13 56:4 58:8,10
APPLICATIONS 22:24
APPLIED 33:13 37:3
APPLIES 33:17
APPLY 37:5 44:25 45:1 48:13
APPOINTED 39:4 40:9 41:18
APPOINTMENT 38:16,20 39:25 40:3 40:25
APPROPRIATE 16:6 16:11 36:9 38:19 49:25
ARGUE 44:3
ARGUED 47:1
ARGUMENT 7:3,12 27:11 38:21 39:8 42:3 43:25 48:1,17 55:1

ARGUMENTS 15:16 17:20
ARISING 9:10
ARONT 3:18 5:15
ARPS 2:13 15:25
ARRESTS 9:23
ASCERTAIN 34:8
ASIDE 27:9 54:11
ASKED 12:25 13:15 21:19 26:20 27:15 32:4 48:8 51:11,14 55:18 57:23
ASKING 11:11,14,15 11:20 21:21 22:20 30:24 37:16 56:18
ASSESSMENT 17:23
ASSIGNMENT 48:20
ASSOCIATED 25:21
ASSUME 46:9 56:24
ASSUMPTION 10:6
ASSURANCE 31:8
ATTEMPTED 53:24
ATTENTION 30:23
ATTIRE 12:20
ATTORNEY 34:11,15
ATTORNEYS 34:13 49:12 52:2
AUGUST 6:7 33:3
AUTHENTIC 12:25 13:6
AUTHORITY 48:19 51:12,16
AUTHORIZED 57:8
AVAILABLE 10:12 21:20 27:5 43:10
AVENUE 2:15,19 3:5
AWARE 6:16,18 14:14 45:25 48:19,22,23
A.M 1:18 5:1

**B**

BACK 9:6 11:9 12:5 14:16 15:23 17:8 20:24 22:8 24:7,14 27:22 45:25 50:12 56:8
BACKGROUND 25:23
BALANCE 48:15
BALBOA 3:10
BANDIED 30:10
BASED 9:20 53:18
BASIC 39:18
BASICALLY 6:8 7:1 18:12
BASIS 54:9
BATTLES 27:25 43:14
BEGINNING 8:19 18:20 35:1
BEHALF 2:2,6,12,17

3:3,8,13,18 5:9,10,12 5:14,17,18,20,22 36:16,24 42:24
BEHAVIOR 12:20
BELABOR 32:19
BELIED 18:16
BELIEVE 10:25 14:24 16:7 17:20 20:19 21:13 32:19 36:9 40:8 44:14 46:25
BENCH 34:15
BENEFIT 10:18
BEST 16:16 26:10 55:24
BEVERLY 3:21
BEYOND 17:14 58:8
BIG 18:12 22:19
BILLIONS 9:11,17
BIND 42:17 48:9
BINDING 43:17
BIT 11:5 18:17 22:19 23:17 25:5,6 27:12,12 34:22
BLANK 28:20
BLEW 22:3
BLOCK 25:8,22,25 28:11 32:17,18 39:2
BLOCKBUSTER 30:4
BOAT 47:25
BODIES 9:15
BOILS 10:8
BOOK 19:15
BORENSTEIN 2:18
BOULEVARD 3:10,15 3:20
BOUND 46:25 48:24
BOX 11:7 24:6
BRATTY 12:20
BRATZ 9:9 10:1 12:16 13:12,25 15:5 29:21 29:23
BREADTH 45:3
BRIDGET 49:9
BRIEF 18:10 20:22
BRIEFED 24:17 25:4,9
BRIEFLY 16:25
BRIEFS 19:12 25:12 36:8
BRING 23:5 55:2
BRINGING 12:7 26:6
BROKE 24:6,12
BROUGHT 6:4,8 19:8 33:10 41:20,25 50:16 51:11 53:13
BRYANT 1:7 2:2 3:4 5:4,11,20 7:7,13 8:16 12:16 14:7,15 16:20 17:3,20 29:22 30:5,19 30:20 34:1,12,17 37:2 46:17 53:14,17

BRYANT'S 6:1 14:22 22:7
BUDGE 10:15 11:6
BURIED 24:3
BURN 24:4
BURNER 27:22
BUSINESS 8:19 25:12 58:16
BUSINESSMAN 37:24

**C**

C 3:9 43:9
CALENDAR 5:3 11:3 24:24
CALIBER 29:6
CALIFORNIA 1:2,16 1:24 2:4,10,15,20 3:6 3:11,16,21 5:1 51:15
CALLED 30:22
CALLING 5:3
CANADA 9:24
CAPTURES 36:25
CARE 6:22 35:13
CAREER 20:11 39:2
CAREFUL 19:16
CAREFULLY 20:18 34:7 55:20
CARL 2:14 5:8
CARTER 1:7 2:2 5:4 5:11 6:1 7:7,13 12:16 14:7 16:20 22:7 29:22 30:5 34:1,12,17 37:2 53:14,17
CASE 5:4 8:19 9:6,21 10:3,8,9,10 11:1 13:8 14:17,23 16:13,15 18:10,17,20,25 19:5,6 19:19 20:10 21:5,14 21:14,16 22:10 23:5 23:20 24:5,19,23 25:21,25 26:15 29:3,3 33:7 37:25 38:19,24 38:25,25 39:3,9 40:5 40:5,21 41:1,5,7,17 41:21 43:2,3 44:13,18 48:7,22,23 49:1,12 52:8,17 54:25
CASES 10:4,13 22:19 43:3 49:4 53:20,24
CATEGORIES 35:6
CATEGORY 30:15
CAUSE 19:23 57:3
CENTRAL 1:2
CENTRALITY 16:14
CEO 13:11
CERTAIN 12:11 16:2 25:20 55:12
CERTAINLY 7:3 15:22 17:9 33:16 34:2 38:21 39:9 40:1,16

Exhibit 12
Page _____ 380

41:19 43:11,21 45:2
50:2,7 52:5,19,25
56:10 58:5
**CERTIFICATE** 59:1
**CERTIFY** 59:3
**CETERA** 20:6
**CHAIR** 55:17,19
**CHALLENGE** 34:19
45:4
**CHANCE** 50:15
**CHANGE** 11:12
**CHANGED** 26:19
47:10
**CHECK** 28:20
**CHIDE** 13:9
**CHOOSE** 55:2
**CHRISTA** 2:3 5:10
34:1
**CHRISTENSEN** 3:14
5:16
**CHRONOLOGICAL**
6:23
**CITE** 40:5 41:4,5,5
53:19
**CITED** 41:2 43:3,3
48:24
**CIVIL** 8:18 38:15 47:2
**CLAIM** 9:19 42:8
**CLAIMS** 9:10,17,18,22
9:22
**CLARIFICATION** 6:8
6:9 35:21,23 46:21
**CLARIFIED** 39:6
**CLARIFY** 47:17
**CLEAN** 7:12
**CLEAR** 7:17 10:20
20:23 29:2 33:20
35:12 36:22 37:5 38:5
38:9,14 39:11 47:12
47:19 49:4 56:12,14
**CLEARER** 33:15
**CLEARLY** 7:16,20
16:10 38:24 41:8 53:8
53:19
**CLERK** 5:3 21:8,9
**CLIENT** 18:1 35:10,18
36:6,25 37:11 44:23
**CLIENTS** 24:20 43:22
43:23 45:22
**CLOCK** 20:14
**CLOONAN** 3:18 5:15
42:24
**CLOSE** 25:12 51:1
58:15
**CODE** 59:3
**COLLEAGUES** 32:3
**COLORS** 56:10
**COMBINATION** 7:24
**COME** 9:21 11:9 17:10
18:18 19:5 24:14 27:7

27:20 41:17 45:19
50:12 55:5
**COMES** 23:2
**COMING** 19:18 20:3
24:21 43:18
**COMMENTARY**
39:11 53:20
**COMMIT** 26:23
**COMMITMENTS**
57:17
**COMMITTED** 24:20
**COMMUNICATIONS**
9:15
**COMPEL** 6:1 47:9
**COMPELLING** 16:13
31:2
**COMPLAINING**
52:21
**COMPLAINTS** 50:22
**COMPLETE** 23:9
28:23
**COMPLETELY** 24:17
**COMPLIED** 47:6
**COMPLY** 33:22
**COMPOUNDING**
17:16
**COMPUTER** 22:7
31:5,5,7,11
**CONCEIVABLE**
11:23
**CONCERN** 25:19
27:24 48:12 54:10
**CONCERNED** 51:18
**CONCERNING** 38:13
**CONCERNS** 11:16
42:10,15 48:16
**CONCLUDE** 15:9
**CONCLUDED** 15:16
35:4
**CONCLUSION** 7:20
**CONDUCT** 9:15,25
**CONFER** 50:2
**CONFERENCE** 26:11
59:5
**CONFERS** 47:12
**CONFIRMATION**
51:11
**CONFORMANCE**
59:5
**CONFUSION** 39:7
57:3
**CONGRESS** 44:3,5,9,9
**CONNECTION** 47:16
**CONSCIENTIOUS**
10:11
**CONSENT** 40:4 48:10
**CONSEQUENCES**
11:17
**CONSIDER** 34:2 48:8
**CONSIDERATION**

8:17 52:24
**CONSIDERED** 7:5
**CONSIDERING** 48:16
**CONSISTENCY** 17:7
**CONSISTENT** 44:8
51:13
**CONSOLIDATED**
1:12 5:5
**CONSTELLATION**
3:15
**CONSULTATION**
39:1
**CONSULTED** 21:9
**CONTEMPT** 39:13
41:9
**CONTENTION** 14:12
**CONTENTS** 19:1
**CONTEST** 13:12,12
**CONTESTED** 8:20
**CONTEXT** 36:13
**CONTINUANCE**
20:22
**CONTROL** 55:11,12
55:13,14
**CONT'D** 3:1
**CONVERSATION**
29:25
**CONVERTED** 54:23
**CONVINCE** 20:7 56:5
**CONVINCED** 20:8
**COOPERATION**
22:23
**COPIES** 49:15
**COPY** 12:25 13:6 52:4
**CORPORATE** 37:21
**CORRECT** 40:22
47:21,23 52:13 57:19
59:3
**COTE** 2:18
**COUNSEL** 5:6 7:4
16:20 18:2 30:20
33:19,24 35:24 36:15
40:5 41:5 42:3,20
45:19 46:15,16 47:2,7
49:3 50:7,17,19 54:16
56:22 58:20
**COUNT** 26:2 27:10
53:21 54:5,6 55:6
**COUNTERCLAIM**
9:13,20
**COUNTING** 54:2
58:10
**COUNTRY** 44:10
**COUNTS** 54:4
**COUPLED** 8:1
**COURSE** 29:21 33:9
38:15 43:8,9 47:12
**COURT** 1:1,23 5:24,24
6:7,16,19 7:7,9 8:9,16
8:25,25 9:3 10:15,17

11:2,11,13 12:1,3,5,8
14:1,6,10,14,18,25
15:2,11,14,17,22,23
16:5,11,11,17,21,24
17:1,6,8,14,17 18:2,4
19:16 20:4,7,8,16
21:24 22:11,15 23:16
23:21,25 24:6,9,12
25:11,19,22 28:4,14
28:18 29:5,11,16
30:12,17,17,21 31:14
31:16,24 32:8,11,18
32:20 33:1,8,10,12,21
34:6,10,25 35:7,12,15
35:20,25 36:15,19,21
36:25 37:6,11,18 38:5
38:9,12,12,22 39:1,10
39:24 40:1,4,5,8,11
40:14,18,21 41:1,4,8
41:17,23 42:2,11,13
42:17,19 43:6,10 44:6
44:12,15,19,19,21
45:2,2,5,10,18,20
46:2,9,13,14 47:3,21
47:23 48:2,18 49:2,17
49:22,23 50:9,13,15
50:21,23 51:9,13,14
51:17 52:11,14 53:4,6
53:9,11,16 54:10,12
54:16,24 55:1,10,16
55:19 56:1,4,10,14,19
56:22 57:1,12 58:7,19
59:8
**COURTESY** 24:6
**COURTROOM** 29:13
**COURTS** 48:12
**COURT'S** 8:24 11:3
30:23 31:25 32:8,14
33:23 34:18,19 36:21
38:19 53:1 56:11
**COVER** 17:25
**CREATES** 55:9
**CRIMINAL** 9:24
**CROSS-EXAMINED**
13:20,22
**CRYSTAL** 37:4
**CSR** 1:23 59:7
**CSR11457@SBCGL...**
1:25
**CURIOUS** 56:8
**CURRENT** 11:25
57:22 58:4
**CURRENTLY** 24:15
**CURTAIN** 22:16,17,17
**CUSTODIAN** 13:4
**CUSTOM** 38:8
**CUSTOMS** 37:22
**CUT** 22:2 30:24
**CUTOFF** 11:17,21
22:21

**CV** 1:9
**CV-04-9049** 5:5
**CV-04-9059** 5:4

**D**

**D** 4:1
**DAMAGES** 9:10
**DATE** 11:9,17,22 16:2
59:7
**DATES** 11:6,25 12:1
46:12
**DAUNTING** 12:10
**DAY** 12:18 38:7 56:23
**DAYS** 16:7 17:21
**DEADLINE** 12:6 16:10
**DEADLINES** 12:11,12
**DEAL** 6:22 19:8 22:23
**DEALING** 36:14 54:8
**DEALT** 53:4
**DEARTH** 43:2
**DECEMBER** 46:10
**DECIDING** 52:6
**DECISION** 39:2,10
55:4
**DECLARATION**
33:20 36:20,24 37:11
38:4 49:9,10
**DEFEND** 34:22
**DEFENDANTS** 1:11
3:18
**DEFENDING** 36:6
**DEFENSE** 11:15 39:9
**DEFENSIVE** 55:23
**DEFER** 28:11 57:16
**DEFERENCE** 42:11
**DEFERRED** 28:10
**DEGREE** 25:20
**DELAY** 18:15 19:24
**DELAYS** 8:1,3
**DELGADILLO** 3:4
5:20,20 46:17,17
47:22
**DELVE** 17:24
**DEPO** 17:24
**DEPONENT** 44:7,7
45:13,14
**DEPOSE** 7:7,13 14:2
**DEPOSING** 54:22
**DEPOSITION** 8:16
13:3,3,14,17,18,25
14:7 17:21 22:4 23:3
29:19,22 31:11 54:18
54:19,23 55:7
**DEPOSITIONS** 6:9:1
10:7,10,14 11:20,24
12:14 13:10 18:11
20:5 21:6,18 23:9,23
27:8,10 28:17,22 30:9
30:11 46:9,10 53:21
53:22 54:6 55:12

Exhibit 12
Page _____ 381

**DESCRIPTION** 37:13
**DESIGN** 29:21
**DESIGNATED** 49:11
  55:25
**DESPITE** 26:10
**DESTROYED** 37:12
  38:2
**DETAIL** 37:13
**DETAILS** 29:15
**DETERMINATION**
  32:20
**DEVELOPED** 25:20
**DEVIL** 29:15
**DEVIOUS** 31:9
**DIFFERENCE** 44:24
**DIFFERENT** 9:14,16
  10:16,23 27:23,24
  28:24 38:4 40:23 52:7
**DIFFERENTLY** 41:15
**DIFFICULT** 36:3 55:3
**DIRECTED** 35:10
**DIRECTLY** 24:25
**DIRECTORS** 58:4
**DISAGREE** 15:11
  19:14 20:18 52:16
  53:2
**DISCLOSURE** 21:20
**DISCLOSURES** 8:4
  21:1,5,23
**DISCONCERTING**
  21:12
**DISCOVERY** 6:6,10
  6:13 7:1,8,15,19,22
  7:24 8:4,5,7,15,22
  10:12,19 11:15,17,21
  12:5 18:19 19:14,23
  20:5,10,20 23:1 25:17
  25:18 27:4,5,19 28:2
  28:22,23 38:13,17,20
  38:24 39:3,5,5,10,25
  40:1 41:10,18,19,25
  42:6,8,14 47:11,15,18
  47:19 48:9,10,20,24
  49:18 51:2,4,11 52:4
  52:14 54:13
**DISCRETE** 32:24 42:7
**DISCUSS** 11:2
**DISCUSSED** 30:25
  32:3 46:10 48:12
**DISCUSSING** 33:9
**DISGORGEMENT**
  9:10
**DISINCLINED** 7:9
  14:7
**DISINGENUOUS**
  27:13
**DISPUTE** 7:18 42:8
  43:12 51:15
**DISPUTED** 13:9
**DISPUTES** 46:2 52:6

**DISTINCTION** 44:24
**DISTRICT** 1:1,2 43:10
  43:11 44:12,15 45:4
  53:4
**DISTURB** 7:21
**DIVEST** 45:4
**DIVESTED** 44:15
**DIVESTS** 45:12
**DIVIDED** 7:1
**DIVISION** 1:3 14:16
**DOCKET** 5:5 6:24
**DOCUMENT** 13:4
  33:7 50:4
**DOCUMENTS** 16:1
  19:3,4,11 24:5,25
  35:5,6 38:1,7
**DOING** 17:10,16 18:17
  20:9 24:18,19 41:22
  41:23,24 51:4 58:9
**DOLL** 12:21 13:12
**DOLLARS** 9:11,18
**DOLLS** 12:17
**DOUBLE** 11:23 23:19
**DOUBLED** 19:2
**DRAMATIC** 20:23
**DRESS** 12:23
**DRIVE** 55:9
**DRIVEN** 36:11
**DROPPED** 19:2
**DROVE** 12:18
**DUE** 19:14 21:8 24:23
  25:5 39:8 44:8 48:16
**DUTY** 8:25

_____

**E**

**E** 2:19 4:1
**EARLIER** 19:25 20:2,2
  27:23 56:19
**EARLY** 25:8 26:1
**EARTH** 36:5
**EASIER** 32:10
**EASTERN** 1:3
**ED** 1:9
**EFFECT** 45:3
**EFFECTIVELY** 43:10
  48:14
**EFFICIENCY** 48:11
  48:17
**EFFORTS** 26:10 37:10
**EIGHT** 10:9,13
**EITHER** 7:24 11:14
**ELECTRONIC** 24:3
**ELIMINATOR** 31:6
  31:10
**EMANUEL** 2:7 18:25
  24:8
**EMPLOYEES** 13:13
  29:22 30:6,6 57:11,13
  57:22 58:1
**ENCINO** 3:11

**ENFORCED** 45:7
**ENGAGED** 52:3
**ENGAGEMENT** 34:13
**ENORMOUS** 19:7
**ENTERED** 15:24
  30:22
**ENTERTAIN** 7:3
**ENTERTAINMENT**
  2:12
**ENTITLED** 40:15,24
  41:15 59:4
**ENTRY** 6:25
**ENVELOPE** 53:9
**ENVISIONS** 41:8
**EQUALLY** 35:23
**ERRONEOUS** 7:16,20
  14:24 16:10
**ERRORS** 7:17
**ESPECIALLY** 45:22
**ESSENTIALLY** 54:19
**ESTABLISH** 13:5
**ESTABLISHED** 20:11
**ET** 1:7,10 20:6
**ETHNIC** 12:19
**EVENING** 18:7 26:23
**EVENT** 6:14
**EVENTS** 9:20,23
**EVERYBODY** 23:7,19
  33:18
**EVIDENCE** 13:19 31:6
  31:10 33:6 37:12 49:8
  49:21
**EXACTLY** 38:5
**EXAMINATION**
  13:21
**EXAMINE** 15:10
**EXAMINED** 35:3
**EXAMPLE** 12:16
  28:19 29:17 45:5
**EXCELLENT** 46:14
**EXCEPTIONAL** 38:22
**EXECUTIVE** 30:1,7
**EXISTING** 41:17
**EXISTS** 46:5
**EXPENSE** 19:8
**EXPERIENCE** 12:10
**EXPERT** 24:23 25:1
**EXPERTS** 27:5
**EXPLANATION** 19:3
**EXPLICIT** 33:12
**EXPLORATION**
  10:18
**EXPLORE** 14:22
**EXTEND** 7:6,9 58:4
**EXTENSION** 26:21
**EXTENT** 45:12 55:13
**EXTRA** 17:8
**EXTRAORDINARI...**
  20:9
**EX-EMPLOYEES**

57:14,15,21,24
**EX-PARTE** 6:1,22
  10:21 11:16 22:24
  27:11 50:12 53:13
  54:9 56:4,13 58:8,9

_____

**F**

**FACE** 15:7 52:22
**FACT** 8:5 9:23 12:7
  13:9 20:3 26:4 49:8
  54:22 57:6
**FACTS** 14:13 15:4
  18:16 20:23
**FACTUAL** 7:17,19
  17:23 21:2
**FAIR** 20:16 23:12
  51:17
**FAITH** 20:19
**FALL** 30:20
**FAMILIAR** 28:9
**FAR** 43:16 51:18 54:3
  54:21
**FARHAD** 3:13 5:17
  48:5
**FASHION** 29:21
**FASHIONING** 30:18
**FAULT** 19:17 32:2
**FAVOR** 48:16 50:17
**FAVORABLE** 8:17
**FEBRUARY** 24:16,22
  24:24,24 26:9 27:6
  28:24 38:15 45:15
  46:8,23 47:1,6 59:8
**FEEL** 7:24
**FEELING** 10:23
**FEET** 11:22
**FELT** 46:7
**FIFTH** 42:8,16
**FIGUEROA** 2:9
**FIGURE** 31:18 54:3
**FILE** 19:11 26:20,21
  36:8 45:15
**FILED** 5:25 9:22 24:5
  24:10 25:14 26:22
  29:19 32:21,23 35:17
  37:6 49:11
**FILES** 37:19
**FILING** 24:3 26:23
**FINAL** 9:19 49:6 50:16
**FINALLY** 6:7
**FINDING** 7:21 15:19
  17:23 43:9
**FINDINGS** 7:15,19
  17:22
**FINE** 23:3 58:14
**FINK** 3:14
**FIRE** 11:22
**FIRM** 15:25 16:1 18:12
  19:20 34:2 36:6 47:16

**FIRMS** 18:12
**FIRST** 6:15,21,24 7:5
  8:9,12 9:8,12 16:2,20
  17:12 26:5 34:14 39:2
  41:24 45:24 46:20
  48:8 54:8 57:5
**FIVE-DAY** 46:24,24
**FLOM** 2:13
**FLOOR** 2:9
**FOCUS** 14:18 23:1,5
  24:14 28:3
**FOLLOW** 45:14,17
**FOLLOWING** 41:9
**FOOTNOTE** 14:9
**FOREGOING** 59:3
**FOREVER** 18:21
**FORGET** 31:20
**FORGOTTEN** 50:13
**FORM** 30:12 37:9
  45:11
**FORMAT** 59:4
**FORMER** 30:6 58:5,6
**FORTH** 33:5 37:1,7,9
  42:13
**FORWARD** 46:10
**FOUND** 31:6
**FOUNDER** 13:11
**FOUR** 5:3 6:20 19:1
  25:7
**FRAME** 46:1
**FRANCISCO** 2:4
  44:17
**FRANKLY** 16:8 22:13
  26:16 27:18 36:4
**FRIDAY** 26:23
**FRONT** 21:5 22:21
  25:14 26:9,24 32:21
  41:25 43:22 44:16
**FULL** 10:18 21:4 26:2
**FULLY** 17:1 36:25
  37:3 51:3
**FURTHER** 7:10 39:16

_____

**G**

**G** 1:5
**GAME** 26:5 27:12
  43:18
**GARDEN** 14:12
**GATHERED** 29:6
**GEARS** 53:12
**GEE** 27:25 56:8
**GENERAL** 54:17
**GETTING** 24:25 51:1
**GIFT** 22:8
**GIVE** 7:2 8:17 19:6
  25:10 26:2 28:16,20
  33:16 40:11 50:5,15
  52:19 54:20 55:23
**GIVEN** 7:4 12:10
  16:14 22:7 35:19 36:1

Exhibit 12

Page ___388___

**GIVES** 55:21
**GIVING** 13:11
**GLASER** 3:14 5:17
**GO** 14:16 17:14 22:6
  23:12 24:17 25:4 29:7
  45:9 54:13,21 56:3
**GOES** 13:8 55:3
**GOING** 7:2 9:3 10:22
  11:9 13:19 17:24 19:4
  24:4 25:5,18 27:25
  30:14 31:8,21,22,22
  32:10 33:2 42:7,17
  43:13 47:13,20 52:5
  53:3 54:14 57:19 58:7
  58:11
**GOLDBERG** 3:8,9
  5:19 47:24
**GOMEZ** 33:19 36:17
**GOOD** 10:11 19:23
  20:19 26:15 34:19
  35:15 54:3 56:23
  58:19
**GOSH** 21:16
**GOTTEN** 12:22
**GOVERNING** 17:3
  42:14
**GOVERNMENT**
  44:25
**GRAND** 2:15,19
**GRANT** 7:23 14:7 17:8
**GRANTED** 16:11 27:4
  56:4
**GRANTING** 58:9
**GRAPPLE** 53:24
**GREAT** 31:7
**GROUND** 55:5,6
**GROUNDS** 41:19
**GROUP** 30:13
**GUESS** 7:22 16:16
  19:22 22:5 33:18
  39:14 54:24
**GUIDANCE** 31:24
  35:25
**GUN** 11:22
**GUSTAVO** 2:17

**H**

**HABIT** 38:8
**HAIL** 57:3
**HALF** 13:21 19:2
**HALPERN** 3:18 5:15
  42:25
**HANDLE** 26:10
**HANDLED** 43:15
**HANDLING** 52:10
**HAPPENED** 9:21
  17:15 29:19 30:20
**HAPPENS** 44:23
**HAPPY** 51:7 53:15

45:13 46:3 47:8
**HARASSING** 36:10
**HARD** 11:10,19 12:4
  12:13 19:20 20:9
  22:21 27:14 28:2
  49:15
**HARD-FOUGHT**
  43:14
**HAULER** 49:9
**HEAD** 11:23
**HEAR** 6:10 8:10 16:19
  22:15 24:21 28:4
  33:18 39:15 46:14
**HEARD** 13:2 15:15
  25:8,16 26:24 39:22
  39:24 40:3,12 42:10
  42:21 44:16 46:4,5
**HEARING** 6:3 15:24
  18:8 26:12 27:2,2
  28:15,21 33:8,11 34:6
  34:11,13,16,20 35:1,7
  36:1
**HEARINGS** 24:15
  26:9 34:14
**HEARS** 6:10,13
**HEAVILY** 32:22
**HELD** 59:4
**HELPFUL** 30:17
**HIGH** 12:17,22 13:4
**HILLS** 3:21
**HISTORICAL** 44:1
**HISTORY** 26:14 44:1
**HOLDING** 27:9
**HOLIDAYS** 26:22
**HOME** 12:18 23:6
**HONG** 23:12
**HONOR** 6:17 8:13,14
  10:3,10 11:21 12:15
  13:5,8 14:9,20,24
  15:8,20 16:15,19,25
  17:4,12,19 18:1,6,14
  18:24 19:13 20:12,17
  21:7,13 22:1,9,25
  23:6 24:3,13 26:1,8
  26:13,17 27:1,8,14,18
  27:20 28:8 29:14 30:4
  30:19 32:1 33:25 34:2
  34:9,21,22,24 35:14
  35:16,22 36:4,14,18
  41:3 42:4 43:1 44:3
  45:21 46:11 47:22
  50:8 52:17 53:10,15
  54:7,15 55:8 56:12,21
  56:24 57:2 58:14
**HONORABLE** 1:5
**HONOR'S** 34:4,7
**HOPE** 37:4
**HOPEFULLY** 32:8
**HORSEBACK** 10:6
  21:11
**HOST** 9:14,25

**HOTLY** 8:20
**HOUR** 13:21 31:11
**HOURS** 14:21 17:25
**HOUSEKEEPING**
  12:15
**HUMANLY** 19:20
**HYPOTHETICAL**
  54:20

**I**

**IDEA** 11:8 13:12 26:13
  28:10 31:21
**IDENTIFIED** 11:20
  14:16 21:2 57:20
**IDENTIFY** 14:13
  23:15 28:21,25
**ILLUMINATING** 43:4
**ILLUSTRATED** 49:7
**IMAGINATION** 53:10
**IMPACT** 11:3
**IMPLEMENTED** 7:25
**IMPORTANT** 42:18
  46:8
**IMPOSITION** 25:24
**INCESSANT** 36:7
**INCLINED** 7:23 10:15
**INCLUDING** 8:18
  17:23
**INCORPORATE**
  35:25
**INCORPORATED**
  34:24
**INCORPORATING**
  34:5
**INCORRECT** 15:19
**INCREASE** 23:23
**INDICATED** 8:16 57:5
**INDIVIDUAL** 37:16
  54:22,23
**INDIVIDUALS** 56:16
  56:17
**INEFFICIENCY** 32:23
**INFANTE** 6:12 7:16
  14:21 15:15,24 17:22
  24:2,16,17 25:15,20
  26:9 28:9 31:3 32:21
  38:13 43:15,16,23
  44:17 47:3 48:8 50:24
  51:1 52:23 54:15
**INFANTE'S** 17:4
**INFORMATION**
  21:20
**INITIAL** 8:9 19:17
**INITIALLY** 9:1 49:16
**INSPIRATION** 12:16
  12:20
**INSTANCE** 23:10
**INSTITUTIONAL**
  25:21 48:12
**INSTRUCTED** 35:5,6

**INTENDED** 35:4
**INTEREST** 8:23,24
  21:3
**INTERESTED** 22:9
**INTERESTINGLY**
  18:25
**INTERNAL** 17:7 32:14
**INTERPRET** 53:23
**INTERROGATORI...**
  14:9,12 18:23 19:10
  20:6
**INTERVENING** 35:21
**INTIMATELY** 28:8
**INVITE** 49:24
**INVOKE** 38:23
**INVOLVE** 32:22
**INVOLVED** 11:8
  15:25 16:1 22:5 25:25
  51:23
**INVOLVES** 42:8
**ISAAC** 23:11,12 52:1
**ISSUE** 8:21 9:2,16 10:5
  14:6 15:6,18 16:9,20
  22:6 23:13 26:18 28:2
  31:1 38:10 39:14
  43:24 44:4,5,6,10,19
  44:22 45:18,19 50:1,4
  50:18 51:19,22 52:18
  54:15 57:6,7
**ISSUED** 43:17,21
  44:11
**ISSUES** 9:14 10:1,2,19
  10:23 11:7 12:15
  16:14 19:9 21:4 23:3
  23:5,10 24:24,25 26:4
  26:12 27:3,17 32:24
  42:6,18 45:16 48:11
  48:14
**ITEM** 5:3

**J**

**J** 2:13
**JACOBS** 3:14
**JANUARY** 1:17 5:1
  18:10 19:1,1 21:1
  22:22 23:9,14 24:21
  26:10,12 27:2 28:3
  56:18
**JOB** 10:11 32:10
**JOHN** 2:8 5:22 23:2
  27:7
**JOIN** 48:1
**JUDGE** 1:5 6:12 7:16
  14:21 15:15,24 17:4
  17:22 21:19 22:22
  24:2,2,16,17 25:15,20
  25:22,22,25 26:9 28:9
  31:3 32:12,17,18,21
  32:24 38:13 39:1
  43:11,11,15,16,22

44:15,17 45:4 46:8
  47:3 48:8,15 50:24
  51:1 52:9,23
**JUDICIAL** 39:2 59:5
**JULY** 16:3,9
**JUNCTURE** 50:21
  52:24
**JUNE** 16:2,9
**JURISDICTION** 44:16
  51:13 53:1,4,8
**JUSTIFICATION**
  17:10
**JUSTIFY** 17:16 20:4
  22:5

**K**

**KAYE** 3:3,4 5:21 46:18
  46:22 47:25 52:1,3
**KEATS** 3:19
**KEEP** 37:19,19
**KEKER** 2:3
**KICKAPOO** 12:17,22
  13:4
**KIDS** 12:19,23
**KIEN** 3:9 5:18 47:24
**KIM** 2:18
**KIND** 10:16 12:19 13:7
  17:7 18:9,12 21:11
  43:5,18
**KINDS** 9:14
**KNEES** 22:3
**KNOW** 6:17 15:4,17
  17:15,19 25:20 26:14
  33:14 38:1 39:6 43:19
  45:10 53:19 55:25
**KNOWING** 24:20
**KNOWINGLY** 37:12
  38:2
**KNOWLEDGE** 14:22
  15:7 21:4 43:16 44:2
  45:14 46:5 55:24
**KNOWLEDGEABLE**
  55:23
**KONG** 23:12

**L**

**LANGUAGE** 33:14
  34:5 40:7 45:8
**LANZA** 1:23 59:7
**LARGE** 21:14
**LARGEST** 21:14
**LARIAN** 3:13 5:17
  13:10,18,24 14:4
  23:11 48:5
**LARIAN'S** 13:14 52:1
**LARRY** 3:20 5:14
  42:24
**LARSON** 1:5
**LAST-MINUTE** 57:2
**LATE** 27:12 43:18

Exhibit 12
Page 383

45:25
**LAW** 14:25 15:14,18 43:2 53:18 54:25
**LAWYER** 15:8
**LAWYERS** 10:11 11:19 12:10 19:8 23:20 26:15 34:3
**LEAD** 1:9
**LEADS** 56:1
**LEAHY** 3:18 5:15 42:24 45:23
**LEANING** 55:6
**LEARNED** 29:21
**LEAVE** 7:23 8:6 16:21 34:12
**LECTERN** 53:12
**LEFT** 34:25 35:1
**LEGAL** 7:15,20 17:10
**LEGALLY** 15:19
**LET'S** 9:4,5 10:6 23:5 23:8,14 24:13 29:8 50:15 53:12 54:11 55:6
**LEVEL** 29:11
**LEVER** 3:15
**LICENSING** 9:15
**LIGHT** 7:8 9:21 17:11 19:23 20:3 42:3
**LIMIT** 9:1
**LIMITED** 14:11 23:24
**LIMITS** 8:22 10:20
**LIST** 13:3 14:1 30:8 32:5
**LISTED** 30:11
**LISTEN** 22:3
**LITERALLY** 34:14
**LITIGATION** 8:18,19 29:12 36:4,5 50:4
**LITTLE** 11:5 18:17 22:19 23:17 25:5,6 27:12,12 32:10
**LIVE** 22:22,22
**LIVING** 23:7
**LLP** 2:13,18 3:4,14,19 5:21
**LOCKED** 28:18
**LOGISTICAL** 49:14
**LONG** 18:1 31:14
**LONGER** 7:14 13:21 13:22
**LOOK** 9:6 10:21 12:24 31:2 39:21 40:7,10 51:19
**LOOKED** 15:15 16:5
**LOOKING** 26:8
**LOOPHOLE** 55:9,11
**LORD'S** 24:18
**LOS** 2:10,15,20 3:6,16 44:23
**LOSE** 12:3

**LOST** 12:6
**LOT** 21:20 36:6 43:12 43:13 56:20 57:3
**LOW** 1:9
**LOW-LEVEL** 57:25
**LUCK** 22:3

_____ **M** _____

**M** 2:3
**MACHADO** 2:17 5:13 33:19 36:17 38:6 39:17 40:17,23 42:5,7 42:18
**MACHADO'S** 42:16
**MADAM** 14:4
**MAGISTRATE** 25:8 25:10,11,16 26:25 28:10 32:12,18 43:11 44:15 48:15
**MAGISTRATE'S** 30:24
**MAINE** 44:8
**MAJOR** 9:7 10:9
**MAKING** 32:4
**MARCH** 14:12
**MARK** 2:19 5:12
**MARLOW** 3:18 5:15 29:20 42:25 45:23
**MARY** 57:3
**MASSIVE** 43:14
**MASTER** 6:10 7:1,15 7:19 38:17,20 39:3,5 39:10,25 40:1,25 41:10,18,20 42:1,12 42:14 48:20 49:18 51:4 52:4,14 54:13
**MASTER'S** 6:6 7:8 51:11
**MAT** 19:7
**MATERIAL** 15:10 20:3
**MATERIALS** 8:8
**MATH** 21:22
**MATT** 23:10
**MATTEL** 1:10 2:6 5:4 5:23 6:5,8 7:6,23 8:6 9:20 17:19 19:12,15 21:1,17 22:23 26:19 29:22 30:3 33:11 35:9 35:18,22 36:8 42:6 43:12 45:7,25 48:23 49:8 50:1,15 54:6 57:5,8,13,22 58:15
**MATTEL'S** 7:12 17:2 35:24 47:2 58:4
**MATTER** 5:25 11:4 14:25 15:14,18 44:16 48:9 59:4
**MATTERS** 5:24 6:20 12:3,14 25:3,7,7,16

26:1 28:9
**MATURITY** 29:11
**MCFARLAND** 3:19 3:20 5:14,14 42:23,24 43:7 44:21 45:6,21 46:11
**MEAGHER** 2:13
**MEAN** 11:7,14 12:9 13:21 15:3 16:13 21:16 23:19 24:3 28:5 29:1 34:4 53:7
**MEANING** 52:25
**MEANINGFUL** 52:23
**MEET** 47:12 50:1
**MEL** 30:7
**MEMORY** 25:21 48:12
**MENTION** 52:22
**MENTIONED** 46:20 48:6 49:4
**MEXICO** 9:23
**MGA** 2:12 5:9 9:17 10:23 12:25 13:11 14:5 15:6 16:1 18:24 19:7 27:15 30:1 33:10 33:11 35:8 42:6 43:12 53:13,17
**MGA'S** 5:25 9:13,16 10:21
**MICHAEL** 2:8
**MIDDLE** 34:13,16
**MIKE** 5:22 23:2 27:7
**MILLION** 18:24 19:2 19:11
**MILT** 57:21
**MINDFUL** 7:7 12:1
**MINNESOTA** 44:8
**MINUTE** 22:24
**MINUTES** 31:11
**MISREAD** 34:9
**MISSOURI** 12:18
**MIX** 31:19
**MODERN** 10:12,19
**MOMENT** 11:2 34:23
**MONDAY** 1:17 5:1
**MONEY** 10:5
**MONTH** 11:18 13:1
**MONTHS** 28:25 35:21
**MORGENTHALER** 3:15 5:16,16 48:4,4 48:22 49:3,20 50:8
**MORNING** 6:3 18:8
**MOTION** 6:5,6,6,8,24 6:25 8:9,12 17:2 29:19 30:18 33:2,9 38:12,13 39:15 41:25 46:23 47:9,14 49:9 50:16 51:10
**MOTIONS** 1:11 4:3 6:4,13,21 24:22 25:23

26:3 27:3 32:17,21 35:17 43:22 51:5
**MOVE** 25:17 28:5,6 32:23 33:2
**MOVING** 6:3 30:22,25
**MULTIPLE** 38:16

_____ **N** _____

**N** 4:1
**NAME** 30:7 31:6,7 52:9
**NAMED** 29:20
**NAMES** 21:22
**NARROW** 23:5
**NEARING** 29:1
**NECESSARILY** 20:1 26:4 52:8,16 53:2 55:24
**NECESSARY** 24:25 52:15
**NEED** 10:20 11:25 14:18,19 20:7 21:17 23:2 26:14 27:7 28:16 28:23 29:2,3,7,8,8 30:8 31:22 33:18,23 34:10 36:23 45:16,20 55:5 58:11
**NEEDED** 18:10 20:13
**NEEDS** 10:25 12:11 37:6 39:3,6 44:1 49:23 50:2
**NEST** 2:3
**NEVER** 20:11 21:11 39:20 40:20 41:10,20 49:10,13,14 57:6,22 57:23
**NEW** 18:9 21:20,22,24 21:25 23:12 26:6
**NEWS** 26:15 29:24
**NICE** 56:7
**NIECE** 22:7 31:4,4,10
**NIGHT** 22:13
**NINE** 14:21 17:25
**NOLAN** 2:13 5:8,8 6:18 16:18,19,22 18:4 18:5 19:16 20:12,17 21:25 22:12,16 23:17 23:24 24:1,8,10,13 25:25 27:25 28:15 30:10 31:17 32:2 48:6 50:10,11,14 56:5,6 57:2 58:14
**NOLAN'S** 32:9 38:23
**NONCONSENTING** 39:12
**NONPARTIES** 41:8 42:22 47:20 48:17 49:7 53:8 56:25
**NONPARTY** 5:17,18 5:21 41:10,11 46:17

47:24 48:4,24
**NONSENSE** 27:10
**NON-PARTY** 3:3,8,13
**NORMAL** 38:8 53:5
**NOTE** 51:7
**NOTES** 6:12
**NOTICE** 6:1 39:19,20 39:21 40:12,16,19,20 40:24 41:11,11,16 45:13 46:3,24 47:7 52:2,12,20,21
**NOTION** 18:15 19:13 28:24
**NUMBER** 1:9 5:3,4 6:25 11:8 21:10 23:23 23:24 24:5 30:10,11 30:16 32:13 50:20 51:10 52:1 53:22 57:20,25
**NUMBERS** 5:5 9:5 21:12

_____ **O** _____

**OBJECT** 39:23 41:19
**OBJECTED** 57:6,9
**OBJECTION** 47:8
**OBJECTIONS** 23:22 45:24 47:13
**OBTAIN** 7:23
**OBVIOUSLY** 8:19,23 8:25 13:19 52:17
**OCTOBER** 18:8 56:9
**OFFERING** 58:12
**OFFICER** 39:2
**OFFICERS** 58:4
**OFFICIAL** 1:23 59:8
**OKAY** 14:8 20:12,16 38:11 50:14 57:2
**ONCE** 23:11 55:17
**ONEROUS** 25:24
**OOO** 5:2
**OPEN** 11:6
**OPENING** 17:2
**OPENNESS** 56:1
**OPERATING** 7:11 45:4
**OPERATIONS** 32:15
**OPINION** 50:4
**OPPORTUNITY** 17:25 33:17 34:19 39:22,22,24 40:2,12 41:24 46:4
**OPPOSED** 19:25
**OPPOSITION** 6:4 19:11 25:5 26:19 41:4 46:22 47:4
**ORAL** 7:3
**ORDER** 6:6,7,9,9,23 7:1,5 10:25 15:25 26:13 30:12,18,21,24

Exhibit 12
Page _____ 384

31:25 32:8 33:3,12,13
33:15,23 34:4,5,9,18
34:19 35:24 37:1,4,7
37:8 38:9,14,19 39:18
42:14 44:14 45:3,12
45:17 46:1,23,25
47:11,15,18 49:12,18
50:25 52:4 56:14
58:15
**ORDERED** 25:17 34:5
**ORDERS** 7:8 30:25
41:10
**ORIGIN** 9:9 13:11,25
**ORIGINALLY** 9:21
**OUTSET** 8:22
**OUTSIDE** 53:1 55:18
**OUTSTANDING** 19:9
27:3
**OUT-OF-STATE** 53:3
**OVERLAND** 2:18,19
5:12,12 36:16,18 37:8
37:15 38:3,11 39:17
40:2,7,13,15,20,22
41:2,6,14,22,24 42:4
42:15 50:19 51:20
**O'MELVENY** 16:1

**P**

**PACER** 49:13,16
**PACKAGE** 25:15
**PAGE** 4:2 30:25 31:1
41:4 45:11 59:4
**PAGES** 19:3,11
**PANDORA'S** 11:7
**PAPERS** 13:9 17:13
20:18 24:10 26:16,23
30:22 31:1 33:22 41:2
45:15
**PARACHUTE** 18:12
**PARK** 2:14 5:8
**PART** 7:5,25 9:8 16:23
25:2 34:10 51:22 57:1
**PARTICIPATED** 26:5
**PARTICULAR** 21:3
28:22,22 32:23 49:14
50:22 52:17
**PARTICULARLY**
36:23 49:4
**PARTIES** 6:2,11 8:23
23:1,8 25:10,17 33:4
33:13 34:4 36:22,23
37:5,9,25 38:18 39:12
39:12 40:11,15 41:15
41:15 43:17 47:18
48:17,25 49:10,16,25
51:12,15,23 52:12,18
53:8
**PARTS** 7:2 9:7 10:3,9
**PARTY** 6:3 39:22
40:14,17,17,24 41:12

48:10,20 52:8,25 53:3
**PASSES** 57:3
**PATTERN** 19:18
**PAY** 47:20
**PAYING** 47:19
**PENDING** 43:22
**PEOPLE** 11:8 15:6
20:13 29:6 32:5 50:21
52:19 57:20,25 58:5,6
**PERCEIVE** 19:22
**PERFECT** 55:4
**PERIOD** 20:22 45:25
46:24,25 47:9
**PERMISSION** 21:21
**PERMIT** 38:16
**PERMITTED** 54:1
**PERSON** 29:20 44:11
55:17
**PERSONAL** 37:19
51:12 53:1,4
**PERSONALLY** 20:10
**PERSPECTIVE** 53:25
**PERSUADED** 7:12
**PHASE** 9:8,9 11:21,22
12:14 22:1,20 23:1,3
23:25 24:1,14 27:3,21
27:21 28:1,1,3,17,23
28:25 29:1 30:14,15
30:15,16 31:18,19,23
**PHRASE** 37:23
**PICK** 55:19
**PICKING** 26:16
**PIN** 29:7
**PITCH** 20:15
**PLACE** 27:19,24 49:7
**PLAINTIFF** 5:4
**PLAINTIFFS** 1:8
**PLASTIC** 24:6
**PLEASE** 5:6 28:14
51:9
**PLEASED** 46:14
**PLENTY** 17:20
**POINT** 8:11 12:2 15:21
15:22 17:6 20:17
27:13 28:24 29:5
32:12,19 46:21 47:17
49:5,6 52:9 53:19
54:3,15 55:8
**POINTED** 18:11 30:2
35:24 47:7
**POINTS** 46:19
**POLICIES** 37:10,14,21
37:21
**POLICY** 37:15,17
**PORTION** 28:10
**POSITION** 34:22
40:24 42:2 47:3,5
52:11
**POSITIONS** 19:14
21:16

**POSITIVE** 24:10
**POSSIBLE** 19:20 26:7
26:17 37:5
**POSSIBLY** 25:7
**POTENTIAL** 55:9
**POWERFUL** 43:25
**PRACTICE** 47:14
**PRACTICES** 33:6
37:22
**PREFER** 16:19
**PREJUDICE** 49:6
**PREJUDICED** 20:21
**PREPARATION** 25:1
**PREPARE** 10:13,25
**PREPARED** 25:13
28:16
**PREPARING** 18:8
**PRESENT** 6:14 26:4
29:12,12
**PRESENTED** 46:1
**PRESERVATION**
37:9
**PRESERVE** 35:5,6
**PRESIDING** 1:5
**PRESS** 13:24
**PRESSURE** 10:24
**PRESUMABLY** 15:15
44:5,8 52:18
**PRETTY** 10:19 25:24
29:2 38:25 50:6 51:1
**PREVENTS** 48:19
**PRINCIPAL** 54:18
**PRINCIPLE** 44:25
**PRIOR** 17:13,15 32:22
39:19,20,21
**PRIVILEGE** 42:17
**PROBABLY** 14:19
25:24 37:18 53:22
54:13,16
**PROBLEM** 17:16
39:18 42:5 49:17,18
49:22 51:2,20 55:14
58:18,19
**PROBLEMS** 14:3
49:14
**PROCEDURE** 35:10
38:15,22 47:2 49:19
**PROCEED** 8:12
**PROCEEDINGS** 1:15
9:24 41:9 59:4
**PROCESS** 39:8 44:8
48:16 56:2
**PRODUCE** 16:1 56:18
**PRODUCED** 18:24,24
19:4,10,19,24,25 20:1
20:2 38:24
**PRODUCTION** 8:3
18:22 19:2,18 27:17
27:18
**PRODUCTS** 9:17 15:5

15:5,7
**PROGRAM** 31:7
**PROMISED** 20:14
**PROPEL** 32:9
**PROPERLY** 10:25
14:22 18:11 27:16
41:18
**PROPOSAL** 18:18
22:14,24 23:4 24:14
25:2 27:20 28:5,13
32:3
**PROPOSED** 21:3
30:11
**PROPOSITION** 31:13
31:17
**PROTECTIVE** 49:11
49:17
**PROUD** 46:11
**PROVIDE** 7:6 31:24
47:11,15
**PROVIDED** 46:24
52:3,12
**PROVIDING** 8:5
**PROVISION** 38:17,18
**PROVISIONS** 38:16
39:13,13
**PURELY** 12:15
**PURPOSE** 13:5,17
**PURSUANT** 38:17,18
39:18 40:9 46:23
48:25 59:3
**PUSHING** 53:9
**PUT** 20:14 27:15,22
31:10 55:19,22
**PUTS** 9:16

**Q**

**QUARTERS** 26:5
**QUESTION** 31:14
48:18 52:2
**QUESTIONS** 30:2
42:9
**QUICK** 46:19
**QUICKLY** 25:17
**QUINN** 2:7,8 5:22,22
6:17 8:12,13 11:11,19
14:8,11,15,20 15:1,3
15:13,20,23 16:17
17:6 18:11,20,25 19:6
23:2 24:8 28:7,8,15
29:4,14,17 30:19
31:15,17 53:15 54:7
54:11,14,17,25 55:8
55:14,17,21 56:3,12
56:16,19,21,24 57:12
57:14 58:18
**QUINN'S** 28:4
**QUITE** 20:23,23 29:11
38:14
**QUOTE** 13:10

**QUOTED** 13:24

**R**

**RAISE** 10:22
**RAISED** 9:2,25 30:22
46:21 47:5 50:18
51:19,23
**RARE** 38:22
**REACH** 45:3
**REACHED** 32:20
**READ** 18:7 19:19
20:18 21:7 34:4,7
35:23 43:7
**READING** 53:18
**READY** 18:13,17
22:10 24:17 25:4,18
**REAL** 11:16 56:14
**REALLY** 9:14 10:15
10:18 11:6 26:14
28:16 34:4 38:2 39:6
39:14 43:4 44:19 45:7
50:17 52:23 54:22
55:21
**REASON** 17:1 21:13
44:22
**REASONABLE** 15:8
58:17
**REASONABLY** 15:9
**REASONS** 32:13
**RECALL** 16:8
**RECEIVE** 6:3 40:19
**RECEIVED** 6:23 39:20
40:20 47:8,16 49:15
**RECIPIENT** 45:9
**RECITATION** 38:24
**RECONSIDER** 42:2
45:2
**RECORD** 5:7 38:23
**RECORDED** 59:4
**REFER** 15:23
**REFEREE** 47:19
**REFERENCE** 32:16
34:24 35:25 48:10,24
**REFERRED** 33:11
39:5
**REFERRING** 32:16
**REFLECTS** 21:9
**REFUSED** 30:1
**REGARD** 22:5
**REGARDING** 6:5,7,10
6:25 33:2,23
**REGARDLESS** 44:6
**REGULATIONS** 59:5
**REHASHING** 17:24
**RELATE** 11:21 12:14
14:11 22:1 24:25 27:3
**RELATED** 24:1 33:7
**RELATES** 9:9 11:22
33:4
**RELATING** 9:22

Exhibit 12
Page ____385____

RELIEF 10:20 16:3 19:6
RELUCTANT 28:20
RELYING 49:8,21
REMARKS 19:17
REMEMBER 30:23 34:11
REMEMBERS 33:8
REMISS 18:6
REMOVED 28:2
REPEAT 26:16
REPLIES 49:15
REPLY 31:1
REPORTER 1:23 13:17,20,22,23 14:1,3 14:4 22:4 59:8
REPORTERS 13:10 14:2
REPORTER'S 1:15
REPORTS 24:23
REPRESENT 58:16
REPRESENTATIONS 58:3
REPRESENTATIVE 14:5
REPRESENTED 46:13
REPRESENTING 34:12 42:22
REQUEST 6:9 7:6 8:15 8:17 13:1 18:19 35:16 35:18
REQUESTED 19:7 37:7
REQUESTS 7:22 18:21,22 19:9
REQUIRE 27:21 44:14
REQUIRED 33:5 35:8 47:20
REQUIREMENTS 55:22
REQUIRES 29:11 39:19,21
REQUIRING 16:1
RESERVATIONS 54:21
RESIDE 44:23
RESIDED 44:7,7
RESIDENTS 51:16
RESIDING 44:11
RESOLVE 32:9 52:19
RESONATES 29:10
RESPECT 7:22 8:6 11:12 14:20,23 15:18 16:20 18:18 19:14 21:8,10 23:13 25:3 31:4 36:24 38:7 39:17 41:25 42:5,6,7,9,16 42:18 43:17,21,23 46:22 52:11 58:12

RESPECTFULLY 20:18
RESPOND 16:16 28:12 50:15
RESPONDED 46:22 47:1
RESPONSE 28:4 46:24 47:9 50:25 54:8
RESPONSIBLE 34:3 47:18
RESTITUTION 9:10
RESTS 58:14
RESULTED 47:14
RESULTS 56:13
RETENTION 33:6,7 37:13,16
RETRACT 58:11
REVIEW 7:8,9 52:15
REVIEWABLE 39:10
REVIEWED 6:23
REVIEWING 15:17 17:4
RIGHT 11:11 15:13 17:9,17 22:21 24:2 27:4 29:4 31:16 40:13 42:2 43:6 44:20 45:5 49:20,24 53:6,16 58:12
RIGHTFULLY 27:24
RIGHTS 45:10,13
RIVERSIDE 1:16,24 5:1
RM 1:24
ROAD 11:5 55:3
ROB 57:21
ROCK 42:25
ROOM 23:17
ROTH 2:14 5:8
RPR 1:23 59:7
RULE 26:1 38:16 39:11,19,19 41:8,12 41:13,16 44:5,6,10 45:1,4,8,10 47:7 50:18 51:13,20,22 53:20,23,24 55:5,6,21 58:1
RULED 31:3
RULES 8:24 10:19 38:15 45:15 46:20,23 47:1,6 53:5 57:1
RULING 14:21 17:13 17:15 27:4 42:11 56:11 58:12
RULINGS 17:4 25:16 32:22 39:25 42:16 43:17
RUN 9:11
RUNAROUND 31:5

——— S ———

S 2:9,14 3:4
SADDLE 55:22
SAFEST 53:23
SAN 2:4 44:17
SANCTIONED 35:19
SANCTIONS 33:10 35:18
SANSOME 2:4
SAT 17:21
SAW 12:19 34:24
SAYING 16:3 18:7,10 23:8,21 55:4
SAYS 9:17 12:8,16,20 13:12 15:6 23:2 40:6 47:18 48:23 54:25
SCALE 20:10
SCHEDULE 11:12 12:10 22:10 23:6 26:8 27:14
SCHEDULED 24:15
SCHEDULES 21:1
SCHEDULING 11:4,7 23:10,13
SCHOLER 3:3,4 5:21 46:18,22 47:25 52:1,3
SCHOOL 12:17,23 13:4
SCOPE 8:22 15:10 33:15 55:18 58:8
SCORCHED 36:5
SEAL 49:11
SECOND 6:6 9:13,18 16:23 51:22 54:15 58:7
SECRET 10:2
SECTION 43:8,9 59:3
SEE 9:4,5 10:6,22 11:3 12:23,23,24 14:1 39:8 39:14 41:19 45:19 49:12 50:5 52:7
SEEK 35:21
SEEKING 8:6 16:3
SEEN 20:11 33:21 36:5 49:10,13,20
SELF-EVIDENT 41:6 41:7 50:6
SENDING 32:12
SENSE 8:9 19:19,24 22:14,18 29:2 33:17 37:2,2,22 41:13,14 53:21
SEPTEMBER 6:5,25
SERIOUS 24:13
SERVE 57:9
SERVED 14:12 45:23 45:24 56:25 57:10,22
SERVICE 57:23 58:3 58:13
SET 6:2 8:21 9:1,8 20:25 23:6 27:9 37:1

37:9 42:13 44:4 54:11
SETTING 33:5 37:6
SHAPIRO 3:14
SHIELD 14:3
SHIFT 53:12
SHOW 34:14
SHOWING 20:19
SHOWN 19:23
SHOWS 45:7
SIC 6:5
SIDE 9:1 10:7
SIGNIFICANT 24:22 30:14
SIMILAR 9:25 13:25
SIMILARLY 9:24 13:23
SIMONEAU 57:21
SIMPLE 20:3
SIMPLY 8:2 10:12,13 14:23 38:1
SINGULAR 35:8
SIT 17:20 30:13 31:18
SITUATION 31:2 35:19 36:11,13
SITUATIONS 36:9
SIX 21:22,24,25
SKADDEN 2:13 15:25 19:5
SLACK 30:24
SLATE 2:13 7:12
SLIGHTLY 10:23
SLIPPED 12:5
SLOW 23:16
SMALL 12:17
SMALLER 30:16
SOFT 9:4 12:4 20:22 22:6
SOFTEN 27:17
SOLE 13:4,17
SOMEBODY 24:12 26:6 30:2 31:8,10 53:16 55:22,24 57:10
SOPHISTICATED 37:24
SORT 9:7,12,18 10:6 12:19 31:19 36:8,13
SOUGHT 17:2 35:23
SOUNDS 49:22
SOUTH 2:15,19
SPEAK 8:10 36:16 39:15
SPEAKING 34:12 46:9
SPECIAL 40:25
SPECIFIC 42:9 58:3
SPECIFICALLY 33:6 33:18 48:23
SPENT 36:5
SPOKEN 46:7
STAND 9:6 57:17,18
STANDARD 7:7,9,14

17:3,11 42:11,13 45:11
STANDS 40:23
STARING 22:21
STARS 3:5
START 8:18 18:6 51:23
STARTED 10:6
STATE 5:6 14:13
STATED 37:11
STATEMENT 57:19 58:11
STATEMENTS 32:9
STATES 1:1 9:25 59:3 59:5
STATUTE 53:23
STAY 12:2,4,4 18:10 20:21,22 28:3 34:20 45:25
STAYED 12:3
STAYS 7:25
STEMS 19:22
STENOGRAPHICA... 59:4
STEP 27:15
STEPHEN 1:5
STERN 3:8,9 5:18 47:24
STICK 11:25
STIPULATE 12:25 23:22
STIPULATION 13:16 38:17 43:8 46:1 48:25
STOP 58:7
STOPS 55:11
STRAIGHT 13:15,16
STRAIGHT-UP 26:3
STREET 1:24 2:4,9
STRETCH 53:10
STRICKEN 47:4
STRUGGLING 17:10
STUFF 17:25 22:20
SUBJECT 39:12 41:9 41:12,13 51:16 55:25 58:1
SUBJECTS 56:17
SUBMISSION 13:13
SUBMIT 10:10 15:8 17:19,22 30:4 31:1 33:5 35:22 36:23 38:4
SUBMITTED 8:8 30:8 30:12 33:20,22 36:24
SUBPOENA 44:5,6,11 45:8 47:6,7,8,13,16 48:9 52:22 53:3 57:23 57:24
SUBPOENAS 18:23 45:1,23 48:7 56:25 57:7,7,8,10,10,11,12 58:13

Exhibit 12
Page _____ 386

**SUBSEQUENTLY-S...** 41:12
**SUBSTANCE** 51:8
**SUBSTANTIAL** 8:20 10:4,5
**SUCK** 18:13
**SUFFICIENT** 38:2
**SUGGEST** 8:1 10:17 12:9 13:7
**SUGGESTED** 27:23 32:25 35:9
**SUGGESTING** 8:2 19:17 20:1 33:5 34:17
**SUGGESTION** 29:10 32:11
**SUGGESTS** 12:7 38:25
**SUITE** 2:20 3:5,10
**SUMMER** 15:24 17:8
**SUNDAY** 26:23
**SUPPORT** 49:9
**SUPPOSED** 36:1,2 55:22
**SURE** 12:12 24:9 25:20 31:20 50:11 51:6 52:23
**SURPRISED** 20:20
**SUSPECT** 37:18,25
**SYMPATHETIC** 38:21
**SYSTEM** 24:4,4 44:4 44:10

**T**

**T** 2:8
**TAKE** 6:20,21,21,24 20:24 21:3,22 22:4,6 27:4 30:8 31:2 32:11 35:13 40:10 49:25 52:14 54:19
**TAKEN** 21:17,18 27:18 47:2,5
**TALK** 22:7 23:8
**TALKING** 22:4 43:13 51:25 53:7
**TALKS** 40:11
**TEAM** 26:6
**TEE** 31:1
**TEED** 28:9
**TELEPHONIC** 26:11
**TELL** 18:14,16 27:11 28:1 31:8 54:13
**TELLING** 52:8
**TELLS** 49:9
**TEN** 31:22 56:16,17 58:16
**TEND** 33:19 53:17
**TENTATIVE** 7:2,21 19:22 33:15 36:21 50:17 54:5
**TERMINATING**

33:10
**TERMS** 6:9 7:18 11:4 11:7,14,15 17:4 28:25 30:17,19 32:11 33:15 54:2 58:2,10,11
**TESTIFIED** 29:25
**TESTIMONY** 29:23 30:4
**TEXAS** 44:7,11,12,15 45:5
**THANK** 8:13 16:17,25 18:2,3,5 20:12 33:25 36:15 42:20 46:15 47:22 48:2 50:8,9 56:21,22 58:20
**THEFT** 9:22,22 10:2
**THEIRS** 55:13
**THEN-DEADLINE** 16:9
**THERESA** 1:23 59:7
**THING** 11:8 13:7 16:11 34:20 36:12 42:4 45:6,21 50:11 55:10
**THINGS** 18:7 20:3 36:8 37:19,19,20 43:1 55:18
**THINK** 7:18 8:24 9:2 10:19,22,23 12:3,13 13:21 14:21 16:2,6,13 17:14 18:15 20:23 21:8,18,21 22:12,14 22:18 25:13,23 26:7 26:17,20 27:10,12,14 28:18,19,19 29:5,14 30:8,12 32:13,23 33:11 36:10,25 38:23 39:11,17 41:2 43:4,25 44:13,21,24,25 45:6 45:22 48:11,14 49:3,6 50:20 51:3,18,21 53:2 53:18,22 54:2,15 55:3 55:5,5 56:7 57:1 58:17
**THINKING** 22:13 31:9
**THIRD** 6:10 9:12,13,18 9:19 38:18 39:12,12 43:17 48:10,20 49:10 49:16,24 50:16 51:12 52:12 54:17
**THIRD-PARTY** 18:23 26:11 45:12,14 48:7,9
**THOMAS** 2:13
**THOUGHT** 28:7 30:5
**THOUGHTS** 7:2,4 33:16
**THREE** 6:4 9:7 10:3,9 17:21,22 22:17 23:2 26:5 27:7 28:16,18,19 29:22 30:6 31:21

46:12 54:12 57:25
**THROW** 37:20
**THURSDAY** 26:22
**TIED** 26:4
**TIET** 3:9 5:18,18 47:24 47:24
**TIME** 7:6,10,13 8:15 9:2 15:9,12 16:5,6,12 17:2 18:1,20 20:22,24 20:24 21:4,19 26:21 27:13,24 31:14 34:14 34:20 36:6 39:2 43:24 46:1,4,5,7 48:8 56:15
**TIMELY** 43:10
**TIME-BARRED** 47:4
**TIMING** 8:4,4 45:16 46:20
**TITLE** 59:3
**TODAY** 10:17 23:8 25:13 32:9 38:10 51:15 58:16
**TODAY'S** 37:4
**TOLD** 13:18 14:4,5 22:10
**TOLERATE** 34:23
**TOM** 5:8
**TOMORROW** 25:12 26:11
**TOOLS** 10:12
**TOP** 21:17 24:19
**TOPIC** 54:20,21
**TOPICS** 18:22 28:17 54:1
**TOTAL** 21:5 55:7
**TOUGH** 22:3
**TOWN** 12:17 23:11
**TOY** 23:12
**TRACK** 23:19,19
**TRADE** 9:22,22 10:2
**TRANSCRIPT** 1:15 18:9 21:7,9 35:3 59:3 59:4
**TRANSPARENCY** 56:2
**TREATED** 41:15
**TRIAL** 9:9 10:16 11:4 11:6 13:20 29:8
**TRIED** 57:9
**TRIP** 16:8
**TRIPLE** 23:19
**TRIPLE-TRACK** 11:23
**TRI-PART** 14:16
**TRUCKS** 55:9
**TRUE** 13:15 33:9 59:3
**TRULY** 30:14 31:18
**TRUST** 29:12 49:25
**TRY** 8:21,25 23:18 29:2,3 31:24 34:7 38:9 54:3 55:23 56:14

**TRYING** 8:1 10:11,24 11:9 22:2,9 32:2,23 36:3
**TWEAK** 25:6
**TWO** 7:1 11:21 12:4,6 12:14 14:1 15:6 16:7 17:17 22:17,20 27:21 28:1 29:1 30:6,14,15 31:19 35:8 45:22 46:3 46:19 57:20
**TWO-THIRDS** 14:23 16:15
**TYPES** 25:23
**TYPICAL** 35:17

**U**

**ULTIMATELY** 13:2 47:14
**UNBELIEVABLE** 24:18
**UNDERSCORE** 31:21
**UNDERSTAND** 15:11 34:3,18 37:8,21 38:3 41:23 42:5,15,19 44:13 50:24 53:25 54:7,10,24 55:1,10 56:10
**UNDERSTANDABLE** 8:21
**UNDERSTANDING** 15:20 43:2,20
**UNDERSTOOD** 43:7
**UNDER-SEAL** 50:3
**UNIFORMITY** 43:24 44:22,24 46:5
**UNINTELLIGIBLE** 23:11
**UNIQUE** 15:7 38:25
**UNITARY** 51:22
**UNITED** 1:1 9:25 59:3 59:5
**UNREALISTIC** 11:13
**UNRELATED** 10:1
**UNSOUND** 15:19
**URBAN** 12:24
**URGED** 39:9
**USUALLY** 10:17

**V**

**VAN** 2:3
**VARIETY** 14:13 53:20
**VARIOUS** 13:24
**VENDOR** 29:20
**VERONICA** 29:20
**VERSUS** 5:4 48:17
**VIEW** 30:5 36:7
**VIEWPOINT** 52:5
**VIS-À-VIS** 46:2
**VS** 1:9

**W**

**W** 3:20
**WADE** 58:11
**WADING** 8:8
**WAIT** 50:14
**WAIVE** 23:22
**WALK** 34:16
**WALKED** 12:17
**WANT** 6:20 9:4 11:13 13:7 19:6 22:6 23:11 27:9 37:22,25 44:10 47:19 51:19 58:6
**WANTED** 21:3 44:5 50:11
**WANTS** 33:16 56:5
**WARRANT** 8:5
**WARRANTED** 20:20
**WASN'T** 22:5 31:8 51:15 53:23
**WAY** 12:18 13:8 20:21 51:15 53:25
**WEEK** 12:3,4,6 25:5,8 25:16 26:24 29:18
**WEEKS** 12:4,6 16:7 17:8 54:12
**WEIGHS** 48:15
**WEIL** 3:14
**WENT** 11:4 12:5 19:7 31:5 46:10 53:25 54:4
**WEREN'T** 54:12
**WE'LL** 22:22 23:19,19 47:25 57:7
**WE'RE** 6:18 10:22 11:20 12:1 13:19 14:11 18:12 19:4 22:21 24:4 26:6,8 27:25 28:24 47:25 49:12 51:1 53:7,9 54:8 55:22 56:12
**WE'VE** 11:20 12:22 18:17,23 19:5,9,10,10 30:8,11 36:5,13 43:3 47:5 51:14 57:17,23
**WHATSOEVER** 19:18
**WHICHEVER** 25:11
**WIGGLE** 23:17
**WILLING** 22:1 23:22 27:8 38:3
**WILLINGNESS** 8:17
**WILSHIRE** 3:20
**WILSON** 3:19
**WINNING** 13:13 56:6
**WISDOM** 29:14
**WISH** 36:16,19 42:21
**WISHES** 7:4 39:15
**WITNESS** 16:14 54:22 54:23
**WITNESSES** 14:13 21:2,21,24,25 23:3 46:3,12 55:2,7,12 58:10

Exhibit 12
Page _____ 387

Page 9

| | | |
|---|---|---|
| **WONDERING** 25:2,6 | **15** 31:11 | 21:21 23:4 30:10,11 48:6 |
| **WOODS** 30:7 | **15TH** 18:10 56:9 | **50-PLUS** 18:23 |
| **WORDS** 34:7 38:6 46:6 | **155** 21:2 | **53** 38:15,16 39:19,19 41:4 |
| **WORK** 12:11,12,13,18 22:1 23:15 24:18,19 26:13 27:8 32:13 36:8 47:14 56:20 | **1600** 3:5 | **53(B)(1)** 39:21 40:7,11 41:5 |
| | **17** 19:11 | **53(C)** 48:21 |
| | **17TH** 27:2 | |
| | **1999** 3:5 | |
| **WORKED** 19:20 | | |
| **WORKING** 11:19 20:8 20:14 29:23 30:3 | **2** | **6** |
| **WORKS** 11:9 | **2** 45:11 | **63** 18:23 |
| **WORLD** 20:25 | **2ND** 19:1 | **6345** 3:10 |
| **WORST** 25:2 | **2,584** 19:9 | |
| **WORTH** 9:18 | **2,865** 18:22 | **7** |
| **WOULDN'T** 12:9 32:7 46:6 55:24 | **20-DAY** 26:21 | **7** 1:17 5:1 |
| | **200** 3:10 9:16 15:5 | **70** 21:2 |
| **WRITE** 56:14 | **2000** 6:5 | **710** 2:4 |
| **WRITTEN** 19:15 | **2005** 45:25 | **753** 59:3 |
| **WRONG** 8:2 27:16 44:14 | **2006** 46:1 | |
| | **2007** 6:7 7:1 21:2 33:3 | **8** |
| **WRONGS** 17:17 | **2008** 1:17 5:1 | **8TH** 24:16,22,24 26:9 |
| | **213-613-4660** 2:21 | **818-758-3940** 3:11 |
| **X** | **213-624-7707** 2:10 | **865** 2:9 |
| **X** 4:1 38:7 | **213-687-5000** 2:16 | |
| | **22** 21:18,19 27:9 | **9** |
| **Y** | **24** 9:1 10:7 21:10 22:3 27:9 30:25 | **90017** 2:10 |
| **YEAH** 31:15 39:3 | **27** 6:7 33:3 | **90067** 3:16 |
| **YEAR** 7:25 11:5 12:23 46:6 | **2750** 2:20 | **90067-6048** 3:6 |
| | **28** 6:5,25 59:3 | **90071** 2:20 |
| **YEARBOOK** 12:22 13:1,6 | **28TH** 22:22 23:9,14,18 23:18 24:21 28:3 56:18 | **90071-3144** 2:15 |
| | | **90212** 3:21 |
| **YEARS** 19:1 29:23 37:20 | | **91316** 3:11 |
| **YORK** 23:13 | **3** | **92501** 1:24 |
| | **3** 41:4 | **94111-1704** 2:4 |
| **Z** | **3RD** 26:10 | **951-274-0844** 1:25 |
| **ZABLOW** 57:21 | **3.8** 18:24 | **9720** 3:20 |
| **ZELLER** 2:8 5:22 23:2 28:11 32:1,16,19 50:20 51:6,10,21 52:13,16 53:7 57:16 57:18 | **30** 16:7 58:1 | |
| | **30TH** 16:9 | |
| | **30(B)(6)** 18:22 53:21 54:1,5,18,19 55:2,7 55:12 56:17 | |
| | **300** 2:15,19 | |
| **0** | **31ST** 18:8 | |
| **04-09049** 1:9 | **310-553-3000** 3:16 | |
| **05-2727** 5:5 | **310-777-3750** 3:21 | |
| | **310-788-1341** 3:6 | |
| **1** | **3470** 1:24 | |
| **1ST** 16:9 | **4** | |
| **1.6** 19:11 | **4TH** 19:1 | |
| **10TH** 2:9 26:12 | **4,600** 18:21 | |
| **10:11** 1:18 5:1 | **415-391-5400** 2:5 | |
| **101** 19:10 | **45** 44:5,6,11 45:1,4,8,10 47:7 50:18 51:13,20 51:22 | |
| **10250** 3:15 | | |
| **11** 31:1 | | |
| **11TH** 24:24 26:20 27:6 | **5** | |
| **1134** 6:25 | **5** 4:3 | |
| **12TH** 1:24 | **50** 14:11 19:8 21:6,17 | |
| **131** 18:22 | | |
| **134** 1:24 | | |

Exhibit 12
Page 388

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Carter Bryant v. Mattel Inc.
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 13**

**EXHIBIT TO:**   **DECLARATION OF LARRY MCFARLAND IN SUPPORT OF RESPONSE TO ORDER TO SHOW CAUSE OF LARRY MCFARLAND, LUCY ARANT, SARAH HALPERN, AND PETER MARLOW**

## Larry W. McFarland

**From:** Larry W. McFarland
**Sent:** Tuesday, January 15, 2008 11:45 AM
**To:** 'Christopher Price'
**Cc:** 'Jon Corey'; Christian C. Dowell
**Subject:** RE: Bryant v. Mattel Case

Christopher,

This serves to confirm that I am not authorized by Ms. Arant or Ms. Halpern to accept service of the subpoena.

Sincerely,

Larry W. McFarland
KEATS, McFARLAND & WILSON, LLP
9720 Wilshire Boulevard
Penthouse Suite
Beverly Hills, California 90212
Direct: (310) 777-3750
Telephone: (310) 248-3830
Facsimile: (310) 860-0363

=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=
THIS MESSAGE IS INTENDED ONLY FOR THE
USE OF THE INDIVIDUAL OR ENTITY TO
WHICH IT IS ADDRESSED AND MAY CONTAIN
INFORMATION THAT IS PRIVILEGED, CONFI-
DENTIAL, AND EXEMPT FROM DISCLOSURE
UNDER APPLICABLE LAW.

If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, forwarding, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or telephone, and delete the original message immediately. For more information, please visit http://www.kmwlaw.com . Thank you.

=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=

**From:** Christopher Price [mailto:chrisprice@quinnemanuel.com]
**Sent:** Monday, January 14, 2008 11:09 AM
**To:** Larry W. McFarland
**Cc:** Jon Corey
**Subject:** RE: Bryant v. Mattel Case

Have you heard from your clients yet?

Thanks

Christopher E. Price
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor

Exhibit 13
Page _____ 389

Los Angeles, CA 90017
Direct: (213) 443-3238
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  chrisprice@quinnemanuel.com
Web:  www.quinnemanuel.com

---

**From:** Larry W. McFarland [mailto:LMcfarland@kmwlaw.com]
**Sent:** Thursday, January 10, 2008 6:57 PM
**To:** Christopher Price
**Cc:** Jon Corey
**Subject:** Re: Bryant v. Mattel Case

I will contact my clients and let you know

----- Original Message -----
From: Christopher Price <chrisprice@quinnemanuel.com>
To: Larry W. McFarland
Cc: Jon Corey <joncorey@quinnemanuel.com>
Sent: Thu Jan 10 16:42:12 2008
Subject: Bryant v. Mattel Case

Mr. McFarland,

I left a message with your office but wanted to follow up with an email.

In light of the order granting additional depositions, will you accept service of deposition subpoenas for Lucy Arant and Sarah Halpern?

If you want to call me, my direct dial is 213-443-3238.


Christopher E. Price
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3238
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  chrisprice@quinnemanuel.com <blocked::mailto:g@quinnemanuel.com>
Web:  www.quinnemanuel.com <blocked::http://www.quinnemanuel.com/>


The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

Exhibit 13
Page ___390___

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# EXHIBIT 14

**EXHIBIT TO:**   **DECLARATION OF LARRY MCFARLAND IN SUPPORT OF RESPONSE TO ORDER TO SHOW CAUSE OF LARRY MCFARLAND, LUCY ARANT, SARAH HALPERN, AND PETER MARLOW**

DECLERATION OF RAUL TORRES

I, Raul Torres, on my oath declare:

The facts stated by me in this declaration are known to be true, based upon my own personal knowledge and if called upon to do so I could and would testify competently as to each such fact.

I Raul Torres am the dispatch manager at Time Machine Network, Inc. located at 1533 Wilshire Blvd., Los Angeles, CA 90017.

On Wednesday, January 16, 2008 at approximately 4:00 pm, we received a call from Dexter at Skadden, Arps, Slate, Meagher & Flom, LLP., located at 300 S. Grand Ave. #3400., Los Angeles, CA 90071 to pick-up an envelope and deliver to Quinn Emanuel Urquhart Oliver & Hedges, LLP., located at 865 S. Figueroa St. 10th Flr. Los Angeles, CA 90017, to the attention of Mr. John Quinn.

The envelope was picked-up promptly from Skadden, Arps, Slate, Meagher & Flom, LLP. at approximately 4:05pm, by Time Machine's driver # 47 Jorge Garcia.

At approximately 4:20 pm., Jorge arrived at Quinn Emanuel Urquhart Oliver & Hedges, LLP., to deliver the said envelope at which time receptionists took the envelope from the driver, opened it, handed it back and said to him "I don't want it, take it back and leave my office".

At approximately 4:25 pm., Jorge Garcia called dispatch and informed Dll Patel, the downtown dispatcher, that the receptionist refused to accept the envelope. Dll instructed the driver to stand by for further instructions. Dll immediately contacted Skadden, Arps, Slate, Meagher & Flom, LLP and spoke to Cecilia, who instructed us to leave the envelope at Quinn Emanuel Urquhart Oliver & Hedges, LLP., without a signature at the front desk.

At approximately 4:35 pm., Jorge went back to Quinn Emanuel Urquhart Oliver & Hedges, LLP. to deliver the package as instructed. Upon arrival at Quinn Emanuel Urquhart Oliver & Hedges, LLP., this time the receptionist threatened to have Time Machine banned from the building if he left the package at her desk.

At which time Jorge called dispatch once again and informed me of the situation. I instructed Jorge to stand by until further instructions Skadden, Arps, Slate, Meagher & Flom, LLP., and received further instructions. At approximately 4:45 I called Michael in office services, at which time he transferred me to Ms. Alissa Turnipseed. At approximately 5:08 pm., Ms. Turnipseed informed Time Machine to return the package back to Skadden, Arps, Slate, Meagher & Flom, LLP. based on the threat that Time Machine would be banned from the building.

As instructed by Ms. Turnipseed the envelope was returned to office services at Skadden, Arps, Slate, Meagher & Flom, LLP., on January 17, 2008 and was signed for Vanik at 9:26 am in office services.

I declare under penalty of perjury under the laws of the States of California that the foregoing is true and correct and that this declaration is executed on January 17, 2008, at Los Angeles, California.

Raul Torres

Exhibit 14
Page ____391