# EXHIBIT 27

**CONFORMED COPY**

FILED

2007 JUN 20  PM 1: 12

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
RIVERSIDE

BY _____

1 | Hon. Edward A. Infante (Ret.)
2 | JAMS
  | Two Embarcadero Center
  | Suite 1500
3 | San Francisco, California 94111
  | Telephone:    (415) 774-2611
4 | Facsimile:    (415) 982-5287

5

6

7

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No.1100049530 |
| Plaintiff, | |
| v. | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727 |
| MATTEL, INC., a Delaware corporation, | |
| Defendant. | **ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF JANUARY 25, 2007, TO COMPEL PRODUCTION OF DOCUMENTS BY CARTER BRYANT AND FOR SANCTIONS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I. INTRODUCTION

On May 15, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Enforce the Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for

EXHIBIT 27 PAGE 210

6/19/07

Sanctions." On May 18, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on May 23, 2007, Mattel submitted a reply brief. Mattel essentially seeks an order compelling Bryant to produce copies of a document identified on Bryant's privilege log that has been withheld on the basis of the attorney-client privilege.[1] Having considered all the papers submitted by the parties, Mattel's motion to produce the two documents withheld under a claim of privilege is granted and the request for sanctions is denied.

## II. BACKGROUND

In early January of 2007, Mattel filed a motion to compel Bryant to produce, among other things, his fee agreement with MGA in response to Request Nos. 2, 13, and 48. Bryant argued that such agreements are irrelevant and privileged. The Discovery Master held that the documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Accordingly, the Discovery Master ordered Bryant to produce, among other things, all non-privileged documents responsive to Request Nos. 2, 13, and 48, and to produce a privilege log in compliance with Rule 26(b)(5), Fed.R.Civ.P. See Discovery Master's Order Granting Mattel's Motion to Compel Production of Documents, dated January 25, 2007 (the "January 25, 2007 Order").

On March 16, 2007, Bryant served a privilege log that listed as items Nos. 9 and 10 copies of a fee agreement between MGA and the law firm of Littler Mendelson, P.C. ("Littler"). Littler is counsel of record for Bryant in this action. Notably, however, the privilege log indicates that the author of the fee agreement is "Robert F. Millman, Esq. (attorney with Littler Mendelson, P.C., counsel for MGA Entertainment, Inc., and acting in his capacity as counsel for MGA Entertainment, Inc.)." Proctor Decl., Ex. 5. The recipient is identified as "Daphne Gronich, Esq.

---

[1] The parties were able to resolve a portion of the motion during the briefing process. In addition to the fee agreements, Mattel originally sought production of a communication between MGA's patent counsel to Mr. Bryant regarding a patent for interchangeable doll footgear and feet. A day before the opposition brief was due, Bryant offered to produce the communication if Mattel agreed that doing so would not constitute a waiver of privilege as to any other document or testimony. Mattel accepted Bryant's offer. See Bryant's Opposition at 1 and Mattel's Reply at 1. Mattel continues to assert, however, that Bryant's conduct warrants sanctions because Bryant should have offered to produce the communication during the meet and confer process.

1   (general counsel for MGA Entertainment, Inc.)." Id.  Privilege Log Entry Nos. 9 and 10 are both

2   described as an "addendum to retainer agreement between Littler Mendelson, P.C. and MGA

3   Entertainment, Inc." Id.  The only difference in the description is that Privilege Log Entry No. 9

4   is "executed," whereas No. 10 is a "draft." Id.  In his opposition brief, Bryant represents that

5   items No. 9 and No. 10 are "the same document, save that one copy has two signatures and the

6   other only one." Id.  Bryant is not a party to the fee agreement.  MGA, however, has apparently

7   asserted the attorney-client privilege as to item Nos. 9 and 10 and Bryant is withholding the

8   document pursuant to their joint defense agreement.  Bryant's Opposition at 3.

9       Mattel contends that the fee agreement identified as items No. 9 and 10 should be

10  produced pursuant to the January 25, 2007 Order.  Mattel contends that although Bryant was not a

11  party to that agreement, the agreement between MGA and Littler is nevertheless an agreement for

12  MGA to pay Bryant's legal fees and is relevant to show Bryant's bias and lack of credibility.

13  Mattel further contends that the agreement between MGA and Littler is not privileged under

14  Ninth Circuit law.  See e.g. United States v. Blackman, 72 F.3d 1418, 1424 (9th Cir. 1995) ("[a]s a

15  general rule, client identity and the nature of the fee arrangement between attorney and client are

16  not protected from disclosure by the attorney-client privilege."); Clarke v. American Commerce

17  Natl. Bank, 974 F.2d 127, 129 (9th Cir. 1992) ("Our decisions have recognized that the identity of

18  the client, the amount of the fee, the identification of payment by case file name, and the general

19  purpose of the work performed are usually not protected from disclosure by the attorney-client

20  privilege.").

21      Bryant contends that the documents at issue are in his possession solely because they were

22  provided to his counsel under a joint defense agreement.  He contends that this joint defense

23  agreement prevents him from waiving the attorney-client privilege asserted by MGA.  He further

24  asserts that if Mattel wants to challenge the privilege asserted, Mattel should seek the document

25  directly from MGA.

                                    III. DISCUSSION

26      For reasons already set forth in the January 25, 2007 Order, the documents at issue are

27  relevant to the claims and defenses in the case.  Pursuant to the terms of the January 25, 2007

28

1   Order, Bryant was required to either produce the documents or identify them on a privilege log.

2   As the party withholding the documents, Bryant was required to substantiate the claim of

3   privilege under Federal Rule of Civil Procedure 26(b)(5). He has failed to do so. Bryant has not

4   made any attempt to submit affidavits or other admissible evidence to establish that, for instance,

5   the withheld documents contain confidential attorney-client communications made for the

6   purpose of giving legal advice. Nor has he made any challenge to the caselaw cited by Mattel

7   holding that, in general, fee agreements are not privileged under Ninth Circuit law. That Bryant

8   and MGA are parties to a joint defense agreement does not excuse Bryant from substantiating the

9   underlying claim of attorney-client privilege. See Griffin v. Davis, 161 F.R.D. 687, 691 (C.D.

10  Cal. 1995).

11      Moreover, MGA, which participated in the meet and confer on this motion and was served

12  with the motion[2], has not made any attempt to substantiate its claim of the attorney-client

13  privilege other than the unsupported assertions in Bryant's privilege log. Therefore, the claim of

14  privilege is overruled as to privilege log items Nos. 9 and 10 and the documents are ordered

15  produced.

### IV. CONCLUSION

16      For the reasons set forth above, Bryant is ordered to produce privilege log items Nos. 9

17  and 10 forthwith. Mattel's motion for sanctions is denied.

18      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

19  Master, Bryant shall file this Order with the Clerk of Court forthwith.

20

21  Dated:  June 19, 2007

22                              /s/Edward A. Infante
                               _____
23                             HON. EDWARD A. INFANTE (Ret.)
                               Discovery Master
24

25

26  _____

27  [2] See Mattel's Reply at 1.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)        EXHIBIT 27 PAGE 213                    4

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on June 19, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF JANUARY 25, 2007, TO COMPEL PRODUCTION OF DOCUMENTS BY CARTER BRYANT AND FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on June 19, 2007, at San Francisco, California.

*Sandra Chan*

Sandra Chan

EXHIBIT 27 PAGE 214

CALENDARS   RECEIVED

JUN 2 5 2007

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:   (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7                   UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                         EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No.1100049530
12              Plaintiff,

13        v.                               Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15              Defendant.                 ORDER GRANTING IN PART AND
                                           DENYING IN PART MATTEL'S
16                                         MOTION TO ENFORCE THE
                                           COURT'S ORDER OF JANUARY 25,
17                                         2007, TO COMPEL PRODUCTION OF
                                           DOCUMENTS BY CARTER BRYANT
18                                         AND FOR SANCTIONS

19  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
20  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
21

22

23

24                          I. INTRODUCTION

25        On May 15, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Enforce the Court's

26  Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                               1

    EXHIBIT 27 PAGE 215

1    Sanctions." On May 18, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on

2    May 23, 2007, Mattel submitted a reply brief.  Mattel essentially seeks an order compelling

3    Bryant to produce copies of a document identified on Bryant's privilege log that has been

4    withheld on the basis of the attorney-client privilege.[1]  Having considered all the papers submitted

5    by the parties, Mattel's motion to produce the two documents withheld under a claim of privilege

6    is granted and the request for sanctions is denied.

II. BACKGROUND

7

8        In early January of 2007, Mattel filed a motion to compel Bryant to produce, among other

9    things, his fee agreement with MGA in response to Request Nos. 2, 13, and 48.  Bryant argued

10   that such agreements are irrelevant and privileged.  The Discovery Master held that the

11   documents relating to fee or indemnity agreements between MGA and Bryant are relevant to

12   demonstrate bias and lack of credibility.  Accordingly, the Discovery Master ordered Bryant to

13   produce, among other things, all non-privileged documents responsive to Request Nos. 2, 13, and

14   48, and to produce a privilege log in compliance with Rule 26(b)(5), Fed.R.Civ.P.  See Discovery

15   Master's Order Granting Mattel's Motion to Compel Production of Documents, dated January 25,

16   2007 (the "January 25, 2007 Order").

         On March 16, 2007, Bryant served a privilege log that listed as items Nos. 9 and 10 copies

17   of a fee agreement between MGA and the law firm of Littler Mendelson, P.C. ("Littler").  Littler

18   is counsel of record for Bryant in this action.  Notably, however, the privilege log indicates that

19   the author of the fee agreement is "Robert F. Millman, Esq. (attorney with Littler Mendelson,

20   P.C., counsel for MGA Entertainment, Inc., and acting in his capacity as counsel for MGA

21   Entertainment, Inc.)."  Proctor Decl., Ex. 5.  The recipient is identified as "Daphne Gronich, Esq.

22

23       [1] The parties were able to resolve a portion of the motion during the briefing process.  In addition to the fee
24   agreements, Mattel originally sought production of a communication between MGA's patent counsel to Mr. Bryant
     regarding a patent for interchangeable doll footgear and feet.  A day before the opposition brief was due, Bryant
25   offered to produce the communication if Mattel agreed that doing so would not constitute a waiver of privilege as to
     any other document or testimony.  Mattel accepted Bryant's offer.  See Bryant's Opposition at 1 and Mattel's Reply
26   at 1.  Mattel continues to assert, however, that Bryant's conduct warrants sanctions because Bryant should have
     offered to produce the communication during the meet and confer process.

27

28   Bryant v. Mattel, Inc.,                                                                                    2
     CV-04-09049 SGL (RNBx)          EXHIBIT 87 PAGE 216

1   (general counsel for MGA Entertainment, Inc.)."  Id.  Privilege Log Entry Nos. 9 and 10 are both

2   described as an "addendum to retainer agreement between Littler Mendelson, P.C. and MGA

3   Entertainment, Inc."  Id.  The only difference in the description is that Privilege Log Entry No. 9

4   is "executed," whereas No. 10 is a "draft."  Id.  In his opposition brief, Bryant represents that

5   items No. 9 and No. 10 are "the same document, save that one copy has two signatures and the

6   other only one."  Id.  Bryant is not a party to the fee agreement.  MGA, however, has apparently

7   asserted the attorney-client privilege as to item Nos. 9 and 10 and Bryant is withholding the

8   document pursuant to their joint defense agreement.  Bryant's Opposition at 3.

9         Mattel contends that the fee agreement identified as items No. 9 and 10 should be

10  produced pursuant to the January 25, 2007 Order.  Mattel contends that although Bryant was not a

11  party to that agreement, the agreement between MGA and Littler is nevertheless an agreement for

12  MGA to pay Bryant's legal fees and is relevant to show Bryant's bias and lack of credibility.

13  Mattel further contends that the agreement between MGA and Littler is not privileged under

14  Ninth Circuit law.  See e.g. United States v. Blackman, 72 F.3d 1418, 1424 (9th Cir. 1995) ("[a]s a

15  general rule, client identity and the nature of the fee arrangement between attorney and client are

16  not protected from disclosure by the attorney-client privilege."); Clarke v. American Commerce

17  Natl. Bank, 974 F.2d 127, 129 (9th Cir. 1992) ("Our decisions have recognized that the identity of

18  the client, the amount of the fee, the identification of payment by case file name, and the general

19  purpose of the work performed are usually not protected from disclosure by the attorney-client

20  privilege.").

21        Bryant contends that the documents at issue are in his possession solely because they were

22  provided to his counsel under a joint defense agreement.  He contends that this joint defense

23  agreement prevents him from waiving the attorney-client privilege asserted by MGA.  He further

24  asserts that if Mattel wants to challenge the privilege asserted, Mattel should seek the document

25  directly from MGA.

26                              III. DISCUSSION

27        For reasons already set forth in the January 25, 2007 Order, the documents at issue are

28  relevant to the claims and defenses in the case.  Pursuant to the terms of the January 25, 2007

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                        3

EXHIBIT 27 PAGE 217

1   Order, Bryant was required to either produce the documents or identify them on a privilege log.

2   As the party withholding the documents, Bryant was required to substantiate the claim of

3   privilege under Federal Rule of Civil Procedure 26(b)(5). He has failed to do so. Bryant has not

4   made any attempt to submit affidavits or other admissible evidence to establish that, for instance,

5   the withheld documents contain confidential attorney-client communications made for the

6   purpose of giving legal advice. Nor has he made any challenge to the caselaw cited by Mattel

7   holding that, in general, fee agreements are not privileged under Ninth Circuit law. That Bryant

8   and MGA are parties to a joint defense agreement does not excuse Bryant from substantiating the

9   underlying claim of attorney-client privilege. See Griffin v. Davis, 161 F.R.D. 687, 691 (C.D.

10  Cal. 1995).

11       Moreover, MGA, which participated in the meet and confer on this motion and was served

12  with the motion[2], has not made any attempt to substantiate its claim of the attorney-client

13  privilege other than the unsupported assertions in Bryant's privilege log. Therefore, the claim of

14  privilege is overruled as to privilege log items Nos. 9 and 10 and the documents are ordered

     produce.

                                    IV. CONCLUSION

15       For the reasons set forth above, Bryant is ordered to produce privilege log items Nos. 9

16  and 10 forthwith. Mattel's motion for sanctions is denied.

17       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

18  Master, Bryant shall file this Order with the Clerk of Court forthwith.

19

20

21  Dated:  June 19, 2007

22                              /s/Edward A. Infante

23                              HON. EDWARD A. INFANTE (Ret.)
                                Discovery Master

24

25

26  _____
     [2] See Mattel's Reply at 1.
27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              4

EXHIBIT 27 PAGE 218

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on June 19, 2007,

I served the attached ORDER GRANTING IN PART AND DENYING IN PART

MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF JANUARY 25, 2007,

TO COMPEL PRODUCTION OF DOCUMENTS BY CARTER BRYANT AND FOR

SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that

the above is true and correct.

Executed on June 19, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 27 PAGE 219

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On June 20, 2007, I served the following document(s):

**ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF JANUARY 25, 2007, TO COMPEL PRODUCTION OF DOCUMENTS BY CARTER BRYANT AND FOR SANCTIONS**

by regular **UNITED STATES MAIL** by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for collection and processing of correspondence for mailing. According to that practice, items are deposited with the United States Postal Service at San Francisco, California on that same day with postage thereon fully prepaid. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after the date of deposit for mailing stated in this affidavit.

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel:    213/443-3000
Fax:    213/443-3100
Quinn: johnquinn@quinnemanuel.com
Zeller: michaelzeller@quinnemanuel.com

Diana M. Torres
O'Melveny & Myers, LLP
400 S. Hope Street
Los Angeles, CA 90071
Tel:    213/430-6000
Fax:    213/430-6407
Email: dtorres@omm.com

Patricia L. Glaser
Christensen Glaser Fink Jacobs Weil & Shapiro
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Tel:    310/553-3000
Fax:    310/556-2920
Email: pglaser@chrisglase.com

Executed on June 20, 2007, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

EXHIBIT 27 PAGE 220

Julie Selby

JULIE A. SELBY

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

# EXHIBIT 28

Case 2:04-cv-09049-DOC-RNB   Document 5213   Filed 02/12/08   Page 14 of 30   Page ID #:31778

CONFORMED COPY



1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6                    UNITED STATES DISTRICT COURT

7                   CENTRAL DISTRICT OF CALIFORNIA

8                          EASTERN DIVISION

9

10

11   CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
12              Plaintiff,

13        v.                                Consolidated with
                                            Case No. CV 04-09059
14   MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15              Defendant.                  ORDER GRANTING MATTEL'S
                                            MOTION FOR AN EXTENSION OF
16                                          TIME TO DEPOSE PAULA GARCIA
                                            IN HER INDIVIDUAL CAPACITY
17                                          AND AS A 30(b)(6) DESIGNEE;
                                            DENYING REQUEST FOR
18   CONSOLIDATED WITH                      SANCTIONS
     MATTEL, INC. v. BRYANT and
19   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
20

21

22                        I. INTRODUCTION

23        On June 15, 2007, Mattel, Inc. ("Mattel") submitted its "Motion To Enforce The Court's

24   Order To Compel, And For Sanctions."  Specifically, Mattel moves (1) to enforce the Discovery

25   Master's May 16, 2007 Order Granting Mattel's Motion to Compel MGA to Produce Witnesses

26   for Deposition Pursuant to Rule 30(b)(6) by compelling MGA Entertainment, Inc. ("MGA") to

27   produce Paula Garcia for further deposition testimony, or in the alternative, by granting leave for

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT 28 PAGE 221                                                            1

1   additional time to depose Ms. Garcia on the topics set forth in Mattel's Rule 30(b)(6) notices[1];

2   (2) to compel Ms. Garcia to answer the questions MGA's counsel instructed her not to answer

3   during her deposition; and (3) for sanctions against MGA in the amount of $5,315. MGA

4   submitted an opposition on June 25, 2007; and Mattel submitted a reply on June 29, 2007. The

5   motion was heard on August 13. Having considered the motion papers and the comments of

6   counsel, Mattel's motion for additional time to depose Ms. Garcia is granted, and the request for

7   sanctions is denied.

## II. BACKGROUND

8
9        In February of 2005 Mattel served a notice of deposition of MGA pursuant to Rule

10  30(b)(6), Fed.R.Civ.P. (the "First Notice"). The parties met and conferred, and by May of 2005

11  MGA named Ms. Garcia as one of the witnesses who would testify on six of the eight topics in

12  the First Notice. Ms. Garcia has been MGA's product manager for Bratz since the product's

13  inception at MGA, and is, in Mattel's view, one of the most important witnesses in its case.

14       The action was stayed from mid-May of 2005 to mid-May of 2006. Thereafter, Mattel

15  renewed its attempts to schedule a 30(b)(6) deposition. In a telephonic conference with the

16  Discovery Master, MGA represented that it would provide Mattel with dates for the deposition.

17  In January of 2007, Mattel was able to depose one of MGA's designees on the First Notice, but

18  not Ms. Garcia due to her unavailability. For the next couple of months, Mattel continued its

19  efforts to schedule Ms. Garcia's deposition without success.

20       In the interim, in February of 2007, Mattel served its Second Notice of Deposition of

21  MGA pursuant to Rule 30(b)(6), Fed.R.Civ.P. (the "Second Notice"). The parties met and

22  conferred, and MGA identified designees for some but not all of the forty-six topics in the

23  Second Notice.

24       After a couple of months had passed without any witnesses being produced for deposition

25  pursuant to the First and Second Notices, Mattel brought a motion to compel. On May 16, 2007,

26

27  _____
    [1] Mattel does not specify in its motion papers how much additional time it seeks.

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

    EXHIBIT 28 PAGE 222

    2

1   the Discovery Master granted Mattel's motion to compel and ordered MGA to, *inter alia*: (1)

2   produce Ms. Garcia for deposition on or before June 15, 2007, in her individual capacity and as a

3   designee on Topics 1-3 and 6-8 of Mattel's First Notice; and (2) make its designees available for

4   deposition for all Topics except Nos. 25 and 26 in Mattel's Second Notice on or before June 30,

5   2007 (the "Order").[2]   This is the Order that is the subject of Mattel's motion.

6         After the Court's Order, MGA confirmed Ms. Garcia's designation on the following

7   Topics in Mattel's Second Notice: Topic Nos. 1-8, 9 (to the extent not covered by previously

8   designated testimony), 10, 12, 13 (with respect to manufacturers only), 16 (to the extent not

9   covered by designated portions of Isaac Larian's and Carter Bryant's depositions), 17, 29, 30, 35,

10  and 36. MGA offered to produce Ms. Garcia for her deposition on May 24 and 25, 2007, or else

11  not until the end of June. Mattel accepted the May 24 and 25 dates. The parties agreed that the

12  this deposition would cover Bryant-related issues, and that they would make separate

13  arrangements to depose Ms. Garcia on the unfair competition, trade secrets and RICO issues in

14  the MGA v. Mattel and Mattel v. MGA suits. Zeller Decl., Ex. 10; *see also* MGA's Opposition

15  at p.6, n. 19.

16        Two days before Ms. Garcia's deposition, MGA produced approximately 7,600 pages of

17  documents. MGA's counsel, Diana Torres, advised Mattel that MGA was willing to defer her

18  deposition in light of the document production. Ms. Torres also informed Mattel that by

19  proceeding with the deposition as scheduled, Mattel was "choosing to do so at the risk that later

20  discovery (including the [7,600 pages of documents] may be relevant to her deposition and will

21  not be entitled to call her back for that reason."[3]   Zeller Decl., Ex. 10.  Mattel's counsel

22

23        [2]   During the hearing, the undersigned stated that he did not think the seven-hour limitation on depositions
     applied to Rule 30(b)(6) depositions, but also commented that it did not make sense to be focusing on such a
24   "theoretical" issue, as Ms. Garcia had not yet been deposed. Zeller Decl., Ex. 8. Mattel's assertion that the
     Discovery Master "ruled" on this issue is erroneous.

25
          [3]   As stated previously, the parties have an agreement, however, that MGA will make Ms. Garcia available
26   for a separate deposition on the unfair competition, trade secrets and RICO issues in the MGA v. Mattel and Mattel
     v. MGA cases. Zeller Decl., Ex. 10; *see also* MGA's Opposition at p.6, n. 19.

27

28

EXHIBIT _28_ PAGE _223_

3

1   responded by accusing MGA of delaying its document production for tactical reasons. Mattel's

2   counsel also advised MGA that it was proceeding with Ms. Garcia's deposition as scheduled,

3   and furthermore, that it did not believe it was "waiving" its rights to obtain further discovery

4   regarding the 7,000 pages of documents.

5       Mattel began the deposition of Ms. Garcia in her individual and corporate capacity on

6   Thursday, May 24, 2007. The next day, MGA's counsel offered to delay the deposition from

7   Friday, May 25, 2007, to Tuesday, May 29, 2007, in light of the recent document production.

8   Mattel's counsel rejected the offer because Mattel did not want to delay Ms. Garcia's deposition

9   any further and because Mattel was prepared to question Ms. Garcia about other documents

10  already produced in the case.

11      Mattel deposed Ms. Garcia for a total of 14 hours and 18 minutes. Mattel asked MGA to

12  produce Ms. Garcia for at least one more day of deposition, however, MGA refused unless

13  Mattel agreed not to "revisit" topics that had already been covered. Mattel's Motion at p.3.

14  MGA also indicated that even if it were to produce Ms. Garcia for further questioning, it would

15  probably not agree to produce her for an additional full day.

16      Mattel seeks additional time to depose Ms. Garcia. Mattel contends that 14 hours and 18

17  minutes was not enough time to cover the 24 topics on which Ms. Garcia was designated, much

18  less to cover Ms. Garcia's personal knowledge of facts central to Mattel's claims against Bryant.

19  According to Mattel, the Discovery Master has ruled that the 7-hour rule does not apply to Rule

20  30(b)(6) depositions, and that MGA's refusal to produce Ms. Garcia for further questioning

21  violates the Order.

22      Even if the 7-hour rule applies, Mattel contends that there is good cause to extend the

23  deposition of Ms. Garcia for a number of reasons. First, Mattel contends that the deposition

24  progressed slowly because Ms. Garcia regularly asked for questions to be repeated or rephrased

25  and often took long pauses before answering. Mattel also contends that there were lengthy

26  breaks, after which Ms. Garcia returned with clarifications of her prior testimony that required

27

28

EXHIBIT 88 PAGE 224

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

1    further questioning.  Mattel also contends that Ms. Garcia was not prepared to answer questions

2    regarding personnel involved in the early phases of the Bratz project.

3        Second, Mattel contends that MGA's counsel improperly instructed Ms. Garcia not to

4    answer questions regarding facts she ostensibly learned from counsel.  Third, Mattel contends

5    that MGA's counsel improperly instructed Ms. Garcia not to answer questions about MGA

6    Mexico.  Mattel admits that the parties had an agreement to limit the scope of Ms. Garcia's

7    deposition to Bryant-related issues; however, Mattel believes that this agreement did not bar

8    questions about MGA Mexico's contacts with the United States in light of MGA's then-pending

9    motion to dismiss MGA Mexico for lack of personal jurisdiction.[4]

10       Fourth, Mattel contends that it should be permitted to resume the deposition of Ms.

11   Garcia because just two days prior to the deposition, MGA produced approximately 7,600 pages

12   of documents, the bulk of which have Ms. Garcia's name on them and relate to the 2000 and

13   2001 time period.  Mattel contends that MGA had no legitimate basis for withholding the

14   documents.  Mattel also contends that the production was incomplete insofar as it did not include

15   documents that the Discovery Master ordered MGA to produce.  Lastly, Mattel contends that it

16   should be given more time to depose Ms. Garcia because MGA has demanded more deposition

17   time for witnesses on topics that are far less central to this litigation.

18       MGA opposes the motion on numerous grounds.  As a preliminary matter, MGA accuses

19   Mattel of using 30(b)(6) depositions as a means to circumvent the district court's order limiting

20   the number of depositions to be taken by each side.  At present, the parties are limited to 24

21   depositions per side for the entire consolidated action, including both individual and 30(b)(6)

22   depositions.  In MGA's view, Mattel is using 30(b)(6) depositions with excessive numbers of

23   topics to avoid noticing witnesses to testify in their individual capacity.  MGA further contends

24   that Rule 30(b)(6) depositions are indeed limited to one seven-hour day, and furthermore, that

25

26   _____

         [4] The district court has since denied MGA's motion to dismiss MGA Mexico.

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                    EXHIBIT 28 PAGE 225                              5

1   the district court must have intended the limit to apply when he restricted each side to 24

2   depositions.

3        Next MGA contends that Ms. Garcia was deposed on time and in compliance with the

4   Order. According to MGA, Ms. Garcia testified at length about the early development of Bratz,

5   the persons involved in that development process, as well as the other topics for which she had

6   been designated. MGA acknowledges that Ms. Garcia could not recall the names of some of the

7   individuals involved in Bratz; however, MGA believes Mattel could have remedied the situation

8   by simply showing Ms. Garcia documents to refresh her recollection rather than treating the

9   deposition as a memory test.

10       MGA denies engaging in any delay tactics or other forms of obstruction during the

11  deposition. According to MGA, Ms. Garcia requested to have questions rephrased when she did

12  not understand the question. MGA also contends that pauses are appropriate to allow counsel to

13  interject any necessary objections. Furthermore, MGA contends that it properly instructed Ms.

14  Garcia not to answer only when necessary to preserve the attorney-client privilege. MGA also

15  defends its instructions not to answer questions about MGA Mexico because those questions

16  exceeded the agreed upon scope of the deposition. The parties agreed that Ms. Garcia would be

17  made available for one deposition regarding Bryant-related matters and a separate deposition

18  regarding Mattel's counterclaims. MGA considers questions regarding MGA Mexico as

19  irrelevant to Bryant-related matters, and relevant only to Mattel's counterclaims.

20       In MGA's view, Mattel, not MGA is to blame for not completing Ms. Garcia's

21  deposition. MGA asserts that Mattel wasted time by questioning Ms. Garcia on topics not

22  relevant to the litigation, including her addresses for the past year, whether she had any

23  roommates during that time and who they were, and her cell phone bills.

24       MGA also contends that Mattel caused the document production delay by insisting that

25  MGA produce all color documents in a different electronic format than previously requested.

26  Furthermore, MGA contends that it made multiple offers to postpone the deposition to allow

27

28

EXHIBIT 28 PAGE 226

1  Mattel additional time to review the document production.   MGA contends that Mattel chose to

2  move forward with the deposition, and therefore Mattel "has no basis for asserting that MGA's

3  document production was an attempt to prevent Mattel from deposing Ms. Garcia on the topics

4  for which she was designated nor that it had any impact on Mattel's ability to do so." MGA's

5  Opposition, p.6.

6  　　　　Lastly, MGA contends Mattel filed the instant motion without meeting and conferring in

7  good faith.  MGA points out that during the meet and confer process, it agreed to produce Ms.

8  Garcia for additional time without the need to resort to motion practice.  More specifically, MGA

9  is prepared to make Ms. Garcia available for an additional four hours, provided that any further

10  questioning "does not revisit already questioned areas of inquiry." MGA's Opposition at p.3.

11  III. STANDARDS

12  　　　　Rule 30(d) of the Federal Rules of Civil Procedure provides the following with respect to

13  the schedule and duration of depositions:

14  　　　(1) Any objection during a deposition must be stated concisely and in a non-
argumentative and non-suggestive manner.  A person may instruct a deponent

15  not to answer only when necessary to preserve a privilege, to enforce a limitation
directed by the court, or to present a motion under Rule (d)(4).

16

17  　　　(2) Unless otherwise authorized by the court or stipulated by the parties, a
deposition is limited to one day of seven hours.  The court must allow additional

18  time consistent with Rule 26(b)(2) if needed for a fair examination of the
deponent or if the deponent or another person, or other circumstance, impedes or
delays the examination.

19

20  　　　(3) If the court finds that any impediment, delay, or other conduct has
frustrated the fair examination of the deponent, it may impose upon the persons

21  responsible an appropriate sanction, including the reasonable costs and attorney's
fees incurred by any parties as a result thereof.

22

23  The Advisory Committee Notes for Rule 30(d)(2) provide the following guidelines for

24  compliance:

25  　　　Paragraph (2) imposes a presumptive durational limitation of one day of seven
hours for any deposition.  The Committee has been informed that the overlong

26  depositions can result in undue costs and delays in some circumstances.  This
limitation contemplates that there will be reasonable breaks during the day for

27  lunch and other reasons, and that the only time to be counted is the time occupied

28

by the actual deposition.  For purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition.  The presumptive duration may be extended, or otherwise altered, by agreement.  Absent agreement, a court order is needed.  The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order.

Parties considering extending the time for deposition -- and courts asked to order an extension -- might consider a variety of factors.  For example, if the witness needs an interpreter, that may prolong the examination.  If the examination would cover events occurring over a long period of time, that may justify allowing additional time. . . .

It is expected that in most instances the parties and the witness will make reasonable accommodations to avoid the need for resort to the court.  The limitation is phrased in terms of a single day on the assumption that ordinarily a single day would be preferable to a deposition extending over multiple days; if alternative arrangements would better suit the parties, they may agree to them.  It is also assumed that there will be reasonable breaks during the day.  Preoccupation with timing is to be avoided.

The rule directs the court to allow additional time where consistent with Rule 26(b)(2) if needed for a fair examination of the deponent.  In addition, if the deponent or another person impedes or delays the examination, the court must authorize extra time.  The amendment makes clear that additional time should also be allowed where the examination is impeded by an "other circumstance," which might include a power outage, a health emergency, or other event.

* * *

Paragraph (3) includes sanctions provisions formerly included in paragraph (2).  It authorizes the court to impose an appropriate sanction on any person responsible for an impediment that frustrated the fair examination of the deponent.  This could include the deponent, any party, or any other person involved in the deposition.  If the impediment or delay results from an "other circumstance" under paragraph (2), ordinarily no sanction would be appropriate.

See Advisory Committee Notes on the 2000 Amendments to Fed.R.Civ.P. 30(d).

## IV. DISCUSSION

### A.  There Is Good Cause For An Extension Of Time To Depose Ms. Garcia

As a preliminary matter, MGA is in compliance with the Order insofar as it has produced Ms. Garcia for deposition in her individual and corporate capacity by the June 30th deadline.[5]  Therefore, Mattel's motion, although styled as motion to compel compliance with

---

[5]  Mattel, however, has filed a separate motion to compel compliance with other portions of the Order.

1  the Order, is treated herein as motion for additional time to complete the deposition of Ms.

2  Garcia pursuant to Rule 30(d)(2), Fed.R.Civ.P.

3          Applying the standards above, Mattel has demonstrated the requisite good cause to

4  warrant an extension of the "presumptive" 7-hour time limit for depositions. Ms. Garcia is,

5  without question, one of the most important witnesses in this case. She has been the product

6  manager for Bratz since the product's inception at MGA. Therefore, she has considerable

7  knowledge regarding the timing and origins of Bratz, Bryant's involvement with MGA, and the

8  development of Bratz. Ms. Garcia was the first person at MGA with whom Bryant spoke. Ms.

9  Garcia was present when Bryant first presented the idea of Bratz to Mr. Larian. Ms. Garcia also

10  met with Bryant and Margaret Leahy to discuss doll sculpting at a time when Bryant was still

11  employed at Mattel. In addition, another witness, Steve Linker, testified that Ms. Garcia

12  contacted him in September of 2000 to create packaging for Bratz and gave him art boards and

13  illustrations in October of 2000. Ms. Garcia was also involved in naming the Bratz characters.

14          Furthermore, MGA has designated Ms. Garcia on numerous topics. MGA designated

15  Ms. Garcia to testify regarding Topics 1-3 and 6-8 of the First Notice, which are set forth below.

16          Topic 1: The identity of each person involved in the MGA Projects, and the
           nature and time period(s) of each such person's involvement therein.
17

18          Topic 2: The conception, design and development of the MGA Projects,
           including without limitation the chronology thereof.

19          Topic 3: The identity of, and the design, development and first sale of, any
           products resulting from the MGA Projects.
20

21          Topic 6: The identity of documents and tangible items that relate to the MGA
           Projects.

22          Topic 7: The identity, source and current location of each head that was
           provided by, for, on behalf of MGA or any of its representatives to Anna Rhee
23         for painting prior to October 21, 2000.

24          Topic 8: The identity of each person involved in the conception, design,
           development, production, sculpting, rotocasting, molding, modeling or
25         prototyping of each head that was provided by, for or on behalf of MGA or any
           of its representatives to Anna Rhee for painting prior to October 21, 2000.

26  //

27

28

EXHIBIT 28 PAGE 229

9

1   Zeller Decl., Ex. 1.  MGA also designated Ms. Garcia to testify regarding the following

2   topics in the Second Notice:

3        Topic 1:  The origin, conception, creation, design, sculpting, development,
         engineering, rotocasting, modeling and prototyping of BRATZ and BRATZ
4        DESIGNS CREATED prior to June 30, 2001 (regardless of when or whether
         such was released in any form to the public), including without limitation the
5        timing thereof, the IDENTITY of each PERSON with knowledge thereof, the
         IDENTITY of each PERSON involved therein, and the nature, extent and time
6        period(s) of each such PERSON's involvement.

7        Topic 2:  The circumstances under which BRATZ or any BRATZ DESIGN first
         came to YOUR attention, including without limitation the timing, method and
8        manner thereof and the IDENTITY of each PERSON with knowledge thereof.

9        Topic 3:  The identity of each doll, product, work or item produced, developed,
         manufactured, licensed, sold or offered for sale by or for YOU or on YOUR
10       behalf that was BASED ON any BRATZ DESIGN which BRYANT CREATED.

11       Topic 4:  To the extent not covered by Topic 3, each EMBODIMENT of any
         doll, doll accessory or toy that BRYANT CREATED prior to June 30, 2001.
12
         Topic 5:  The work, activities and/or services that BRYANT performed for or
13       with YOU or on YOUR behalf prior to June 30, 2001.

14       Topic 6:  The origin, conception and creation of DESIGNS that BRYANT
         CREATED prior to June 30, 2001 and in which YOU claim to have, or have ever
15       claimed to have, any right, title or interest (whether in whole or in part).

16       Topic 7:  The identity of, and the design, development, sculpting, development,
         engineering, rotocasting, modeling, prototyping and first sale of, any doll,
17       product, work or item that has been produced, developed, manufactured,
         licensed, sold or offered for sale by, for or on behalf of YOU and that was
18       BASED ON any DESIGN referenced in Topic 6.

19       Topic 8:  Each EMBODIMENT of BRATZ that was CREATED prior to June
         30, 2001 or that was at any time BASED ON any BRATZ DESIGN which was
20       CREATED prior to June 30, 2001.

21       Topic 9:  The DRAWINGS, including without limitation the authorship,
         creation, dissemination and use thereof and the source, meaning, authenticity and
22       timing of any dates thereof.

23       Topic 10:  The IDENTITY of each vendor or third party who performed or
         contributed, or who was considered, solicited, requested, proposed or
24       contemplated by YOU or BRYANT to perform or contribute, any activities,
         work or services in connection with BRATZ or BRATZ DESIGNS prior to June
25       30, 2001, YOUR COMMUNICATIONS therewith, and the nature, extent and
         timing of such activities, work or services.
26
         Topic 12:  The actual, proposed, requested or contemplated manufacture,
27       fabrication or tooling (including the production of molds) of BRATZ, including

28

1    without limitation the timing thereof and the IDENTITY of each manufacturer
2    and potential manufacturer used, proposed or considered.

     Topic 13:  COMMUNICATIONS prior to June 30, 2001 between YOU and any
3    manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or
     potential manufacturer, distributor, wholesaler or retailer, that REFER OR
4    RELATE TO BRATZ or any BRATZ DESIGN.

5    Topic 16:  COMMUNICATIONS BETWEEN YOU AND BRYANT prior to
     January 1, 2001, including without limitation the content, means and timing of
6    such COMMUNICATIONS, the IDENTITY of the PERSONS who were parties
     thereto and the DOCUMENTS that REFER OR RELATE TO such
7    COMMUNICATIONS.

8    Topic 17:  COMMUNICATIONS that BRYANT made for YOU or on YOUR
     behalf with any PERSON other than YOU that REFER OR RELATE TO
9    BRATZ prior to June 30, 2001.

10   Topic 29:  COMMUNICATIONS made by, for or on behalf of YOU, whether
     directly or indirectly, with Anna Rhee, including without limitation since
11   February 2005(but not including any such COMMUNICATIONS with her legal
     counsel).
12
     Topic 30:  COMMUNICATIONS between YOU and Veronica Marlow,
13   Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy),
     Sarah Halpern, Steve Linker, Liz Hogan and/or Jesse Ramirez that REFER OR
14   RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including
     without limitation all DOCUMENTS that REFER OR RELATE TO such
15   COMMUNICATIONS.

16   Topic 35:  COMMUNICATIONS between YOU and Universal Commerce
     Corp., Ltd, prior to June 30, 2001.
17
     Topic 36:  The source, meaning and authenticity of SL00013-14, including
18   without limitation the timing of its creation and the handwriting thereon.

19
     Zellet Decl., Ex. 3.  The specific topics identified above for which Ms. Garcia has been
20
     designated are relevant and proper.  It is unrealistic to require Mattel to cover the number and
21
     breadth of topics for which Ms. Garcia has been designated to testify in a matter of fourteen
22
     hours.
23
          In addition, just two days prior to the scheduled deposition, MGA produced
24
     approximately 7,600 pages of documents.  Mattel has reviewed these documents and
25
     determined that Ms. Garcia's name appears on the bulk of the documents.  Mattel also
26
     determined that a significant portion of the documents pertain to a key period (2000 or the first
27

28

1   half of 2001) and that some deal with the early development of Bratz while Carter Bryant was

2   still with Mattel. Regardless of where the fault lies for the belated document production, Mattel

3   is entitled to a fair examination of the deponent regarding these 7,600 pages of documents.[6]

4         Mattel is also entitled to additional time to depose Ms. Garcia because MGA improperly

5   instructed her not to answer questions regarding MGA Mexico. See Zeller Decl., Ex. 9 at

6   439:10-442:6 and 445:14-18. Although the parties had an agreement to limit the scope of Ms.

7   Garcia's deposition to Bryant-related issues, that agreement was never presented to the court for

8   approval and therefore does not have the force and effect of a court order. In the absence of a

9   court order, an instruction not to answer is improper unless necessary to preserve a privilege.

10  See Fed.R.Civ.P. 30(d)(1).

11        In summary, the four factors above provide ample good cause to justify additional time

12  to depose Ms. Garcia.

13  B. Instructions Not To Answer Deposition Questions

14        Mattel next contends that counsel improperly asserted the attorney-client privilege as to

15  certain deposition questions. In opposition, MGA contends that counsel properly instructed Ms.

16  Garcia not to answer to avoid revealing the substance of protected attorney-client

17  communications.

18        The attorney-client privilege protects an attorney's communication of legal advice to his

19  client, as well as the client's communication of information to the attorney "to enable him to give

20  sound and informed advice." Upjohn Co. v. United States, 449 U.S. 383, 390 (1981). The

21  protection extends only to communications; however, it does not extend to the facts underlying

22  privileged communications. Id. at 395-96. The Ninth Circuit has described the elements of the

23  attorney-client privilege as follows: "(1) When legal advice of any kind is sought (2) from a

24

25

26       [6] Furthermore, during the hearing, Mattel indicated that MGA produced more than 100,000 documents after Ms. Garcia's deposition. This production of documents provides additional justification for resuming Ms. Garcia's deposition.

27

28

EXHIBIT 28 PAGE 232

1   professional legal adviser in his or her capacity as such, (3) the communications relating to that

2   purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently

3   protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be

4   waived." United States v. Martin, 278 F.3d 988, 999 (9th Cir.2002).  The party asserting the

5   privilege has the burden of establishing that the privilege applies.  In re Grand Jury Investigation,

6   974 F.2d 1068, 1070 (9th Cir. 1992).

7        In the first excerpt at issue, counsel, Ms. Torres, interjected an objection and instruction

8   not to answer:

9        Q:  How is it that you learned Carter Bryant was employed by Mattel as of the
          time that he had this meeting with you and others that you reference as occurring
10        on September 1, 2000?

11        Ms. Torres:  I object and instruct the witness not to answer if her answer involves
          communications with counsel.
12
          The Witness:  Then I can't answer the question.
13

14   Garcia Depo. at 273:6-14, Zeller Decl., Ex. 9.  This objection is sustained because a response

15   would have necessarily revealed the substance of a protected attorney-client communication.

16        In the next excerpt at issue, Mattel posed another question regarding Mr. Bryant's

17   employment with Mattel:

18        Q:  What facts are you aware of from any source as to whether or not Mr. Bryant
          was still working for Mattel as of September 1, 2000?
19
          Ms. Torres:  I am going to caution the witness not to disclose attorney-client
20        communications.  If you can answer that otherwise, go ahead.

21        The Witness:  Then I can't

22        (Instruction not to answer.)

23        Mr. Page:  I pose an objection as to form.

24        The Witness:  I can't answer the question.

25        Mr. Zeller:  Because of the instruction?

26        The Witness:  Yes.

27   //

28

1   Garcia Depo. at 273:20-275:2, Zeller Decl., Ex. 9.  The objection is sustained because of the

2   way the question is phrased.  If the question had been posed differently, without reference to the

3   source of information and called for disclosure of facts only, the objection would have been

4   improper.

5       In the following excerpt, Ms. Garcia was asked how she learned of the arbitration

6   between Isaac and Fred Larian:

7       Q:  At some point, did you come to learn that there was an arbitration or
        litigation between Isaac Larian and Fred Larian?

8

9       A:  Yes.

10      Q:  How did you learn that?

11      (Ms. Torres):  Objection, I'm going to instruct the witness not to answer if she
        learned from counsel.

12      The Witness:  I believe it was – I believe it was through his – Isaac's assistant.

13      Mr. Zeller:  Was it – I'm blanking on her name.  Was it still Dede Brown?  Was
        it still Dede Brown at that time?

14

15      A:  I don't think so, but I'm not sure.

16  Garcia Depo. at 349:7-21; Zeller Decl., Ex. 9.  Ms. Garcia answered the question posed to her

17  and therefore the objection is moot.

18      In the next section, Ms. Garcia also gave a response to the question posed:

19      Q:  So is it fair to say that you don't have any knowledge or information as to
        when it is that Mr. Bryant first created Bratz in any form?

20      Ms. Torres:  Objection, vague, calls for a legal conclusion.

21      The Witness:  Outside of privileged and confidential?

22      Ms. Torres:  I will instruct you not to answer to the extent you have knowledge
        that comes solely from counsel.

23

24      The Witness:  No.

25  Garcia Depo. at 291:12-22, Zeller Decl., Ex. 9.  Because Ms. Garcia gave a response, the

26  objection is moot.

27

28

1    In the following excerpts, Mattel sought to question Ms. Garcia about what caused her to

2    change her testimony after returning from a break in the deposition:

3    A:  I don't mean to interrupt.  I want to state something before we got started.
     With some more thought during our break, I just wanted to state for the record

4    that I am very sure that Margaret Leahy received the armature engineering
     drawings that I mentioned in my earlier testimony.  I originally mentioned I

5    wasn't sure, but I'm very sure she received that sketch.

6    Q:  What's your basis for now being very sure of that?

7    A:  Taking a few minutes with fresh air and thinking through my memory more
     clearly.  My memory is more sharp and more clear.

8
     Q:  Between the time that you gave your prior answers about that particular
9    drawing and now, you obviously had discussions with MGA's counsel, is that
     correct?
10
11   A:  Yes.

12   Q:  Did you discuss with them that particular drawing?

13   Ms. Torres:  I instruct the witness not to answer on the grounds of attorney-client
     privilege.

14   (Instruction not to answer.)

15   The Witness:  I can't answer that question.

16   (By Mr. Zeller )
     Q:  Did you look at the armature drawing that you're referring to?
17
18   A:  During the break?

     Q:  Yes.
19
20   A:  No.

21   Q:  It's fair to say what you learned about that drawing was told to you by MGA's
     lawyers during the break?
22
     Ms. Torres:  Objection, misstates the witness' testimony and calls for attorney-
23   client privilege communications.  If you can answer without revealing attorney-
     client privileged communications, go ahead.
24
     The Witness:  I can't answer the question.
25
     (By Mr. Zeller)
26   Q:  Based upon the instruction that your counsel is giving you?

27   A:  Yes.

28

1   Garcia Depo. at 617:16-619:2.  The objections are overruled.  The questions did not require Ms.

2   Garcia to reveal the content of an attorney-client communication.  Rather, the questions posed

3   called for disclosure of underlying facts to which Mattel is entitled.

4                             **IV. CONCLUSION**

5       For the reasons set forth above, additional time to depose Paula Garcia in her individual

6   capacity and as a Rule 30(b)(6) designee is necessary for a fair examination pursuant to Rule

7   30(d)(2) and Rule 26(b)(2), Fed.R.Civ.P.  MGA shall make Ms. Garcia available for deposition

8   for an additional fourteen hours.[7]  Upon resumption of her deposition, Ms. Garcia shall provide

9   answers to the two questions where counsel's objections have been overruled.  The deposition

10   shall be held at a mutually agreeable date and time, and shall be completed no later than

11   September 28, 2007.  The motion for sanctions is denied.

12       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

13   Master, Mattel shall file this Order with the Clerk of Court forthwith.

14

15   Dated: August /4 , 2007

16                     HON. EDWARD A. INFANTE (Ret.)

                        Discovery Master

17

18

19

20

21

22

23

24

25       [7] During oral argument, MGA implied it may de-designate Ms. Garcia as to some topics.  Without determining whether such a practice is proper or improper, if MGA does de-designate Ms. Garcia as to some topics,

26   it will have no bearing on the finding that fourteen hours are necessary for a full and fair examination of Ms. Garcia in her individual and corporate capacities.

27

28

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 14, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION FOR AN EXTENSION OF TIME TO DEPOSE PAULA GARCIA IN HER INDIVIDUAL CAPACITY AS A 30(b)(6) DESIGNEE; DENYING REQUEST FOR MONETARY SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | crna@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | ltrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 14, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 28 PAGE 237