1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 6**

**EXHIBIT TO:**   DECLARATION OF CHRISTIAN DOWELL IN SUPPORT OF OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF FEE AGREEMENTS AND PRIVILEGE LOGS FROM LEAHY, CLOONAN, HALPERN, AND MARLOW, AND FOR SANCTIONS

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

December 18, 2007

VIA FACSIMILE, U.S. MAIL and E-MAIL

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

      Re:    Mattel v. Bryant

Dear Dylan:

      I am writing to follow-up on my letter dated December 11, 2007, and in response to your letter dated December 6, 2007.

      With respect to Ms. Leahy's planner, as you know, at Ms. Leahy's deposition we produced the entire day planner in un-redacted form. This issue is now resolved.

      Regarding the Bates numbered photocopies of the three-dimensional objects that our clients produced, as you know, on December 11, 2007, we delivered these documents to you. With respect to the use of photographs at the depositions of my clients, as I had suspected, Mr. Zeller did indeed show my clients copies of photographs (and introduced as exhibits documents that had no Bates numbers) at their depositions that you refused to produce to me in advance. My understanding is that even if these documents are considered "work product," the work product doctrine protects the confidentiality of documents up until the time that you decide to use them in the case, at which time you must produce them. Obviously, you decided to use the photographs at my client's depositions prior to the time of their depositions. Your refusal to produce these photographs ahead of the depositions in the face of my continuing requests is improper. Moreover, your decision to waive work-product protection as to a portion of the photographs during the depositions means that you have chosen to waive any such work-product protection you could have possibly claimed in those photographs. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 512-13 (S.D. Cal. 2003) ("A party cannot reasonably expect to preserve confidentiality of work product while simultaneously disclosing substantive components of that document."). Therefore, we are again requesting that you provide us with copies of all the

Exhibit   b
Page No. 77

B. Dylan Procter, Esq.
December 18, 2007
Page 2

photographs and videotapes that you have taken of the three-dimensional objects that we produced.

Regarding the fee agreements, I am at a loss to understand how you can contend that "Mattel's objections to other subpoenas and Mattel's responses to other parties' requests for production are irrelevant here." The point is simple. Mattel is taking the position with respect to my clients that Judge Infante's orders require the production of retainer letters, while at the same time, Mattel has continued to object to the production of retainer letters after the entry of Judge Infante's order. Your silence with respect to my request in my December 3, 2007 letter, that "[i]f you have produced the retainer letter for Mr. Liden or any third party, please provide me with a copy of that document," says everything. You have not provided me with any such retainer letters and, therefore, I can only assume that you have continued to refuse to produce them. Finally, as you also know, we have an ongoing disagreement regarding whether discovery disputes with respect to our clients should be heard by Judge Infante or Magistrate Judge Block. As we have repeatedly stated, it is our position that these disputes should be heard by Magistrate Judge Block. Mattel has now filed a motion on this issue with a hearing date of January 7, 2007. As soon as Judge Larson rules on Mattel's motion, we will know who is right. However, I would note that there is no dispute that Judge Infante has jurisdiction over discovery disputes between Mattel and MGA. Mattel's continuing objection to the production of retainer letters is, therefore, all the more incomprehensible in light of what you characterize as clear rulings from Judge Infante that all retainer letters must be produced. Finally, as you know, I allowed both Ms. Leahy and Ms. Cloonan to answer questions regarding whether they had spoken to attorneys and who is paying their legal fees. We therefore have acted consistently with Judge Larson's orders with respect to Mr. Bryant as set forth in Judge Larson's Order Re Motions heard on June 11, 2007, pp. 33-34 ("[Q]uestions such as the one addressed by objection No. 38, asking whether Bryant talked to counsel for MGA during a break from his deposition, are not subject to objection based on the attorney-client privilege.... [F]ee-payment arrangements are relevant to credibility and bias, and if asked in discovery, Bryant must disclose who is paying his legal fees.").

With respect to your allegation that our clients are "withholding documents" from key time periods in this case, after the depositions of Ms. Leahy and Ms. Cloonan, you now know that this statement is not accurate. Regarding your request for a date-restricted privilege log of communications between me and my clients, I am still at a loss to understand the basis for this request. Moreover, since we obviously do not agree with your demand that our clients produce their retainer letters, this issue will more than likely need to be resolved after it is determined who is to hear discovery disputes with respect to our clients – Judge Infante or Magistrate Judge Block. In the meantime, please let me know if Mattel has produced a similar privilege log and I can then consider your request.

Finally, regarding the personal Wells Fargo bank records of Ms. Marlow, we continue to insist that you return all copies and originals of the Wells Fargo bank records, confirm that your firm has not reviewed or made any use of these documents, and provide me with the date that your firm received these documents. Although you claim that you gave copies of these bank

Exhibit ____
Page No. 78

B. Dylan Procter, Esq.
December 18, 2007
Page 3

records to "all parties months ago," it is undisputed that you did not provide copies to me until November 30, 2007, and then only after I had sent several letters notifying you that I had not received the documents from Wells Fargo. As to your statement regarding "unringing the bell," it is very simple – the most that can be done at this point is to comply with my requests set forth above. Also, your statement that the Wells Fargo bank records are not privileged is inaccurate. Without limitation, the bank records include federal tax information which is private and confidential, and is recognized as protected matter by both the Ninth Circuit and this Court. *See Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); *S. Cal. Hous. Rights Ctr. v. Krug*, No. CV06-1420SJOJCX, 2006 WL 4122148, at *3 (C.D. Cal. Sept. 5, 2006).

I reiterate my demand that you return all copies and originals of the Wells Fargo bank records, confirm that your firm has not reviewed or made any use of these documents, and provide me with the date that your firm reviewed these documents. As you know, we have been meeting and conferring with respect to this issue for some time. Please consider this notice that if you do not agree to these demands, we will file a motion with the Court seeking this relief.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/eg

cc:  Thomas J. Nolan
     Michael Page

Exhibit ___
Page No. 79

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

January 11, 2008

## VIA FACSIMILE AND U.S. MAIL

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:     Mattel v. Bryant

Dear Larry:

I write further to our meet and confer of earlier today.

You have confirmed that you will not make any of your clients available for further deposition testimony absent a Court Order.

You have also confirmed that you will not make any computers or disks available, to Mattel or independent experts, for any purpose. You rejected all the proposals made by my partner Chris Tayback on Wednesday.

You rejected my request that your clients provide a narrowed privilege log as set forth in my letter of January 10, 2008, and prior letters.

You stated that you would make your clients' fee agreements available if Mattel agrees to also make its agreements with third parties available. As I have repeatedly explained, Mattel is discussing this matter with MGA's counsel concurrently. You have no legitimate interest in those discussions. Your attempt to render your compliance with your obligations contingent on matters which do not affect your clients is improper.

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560 | Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

Exhibit 6
Page No. 80

Regarding the Wells Fargo documents, you rejected my request that you simply identify the allegedly sensitive documents so that we can address those amicably.  As I explained, we believe that our legal position has merit, and that you are not entitled to have these documents "returned" to you.  However, we are considering this matter further and will get back to you with our final position.

Last, the following are the items we wish to add to the protocol for both (1) newly issued subpoenas which include your address as the place of production and (2) previously issued subpoenas for which we agreed that, as a preliminary matter, you would review responsive documents and produce pursuant to a protocol.  As you know, in our view you were obligated to provide this information long ago.  However, we are supplementing the protocol such that it will also include all documents referring or relating to:

- Isabel Ana Cabrera
- Beatriz Morales
- Maria Elena Salazar
- Payments made to, or work or services performed by, any other Mattel employee
- Payments made by, or any services performed for, any competitors of Mattel, including any company involved in the sale of dolls or toys, while your clients were employed by Mattel
- The dates on which any entities with which your clients are affiliated were established, including but not limited to payments to the Franchise Tax Board or other tax entities.

Please let me know whether you will agree to produce all documents regarding the foregoing from the records we have subpoenaed.

I look forward to your prompt response.

Very truly yours,

B. Dylan Proctor

07209/2351046.1

2

Exhibit 6
Page No. 81

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL
(310) 777-3750
WRITER'S EMAIL
lmcfarland@kmwlaw.com

January 27, 2008

VIA FACSIMILE
U.S. MAIL and E-MAIL

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

      Re:    Mattel v. Bryant

Dear Dylan:

      I am writing with regard to your letter of January 23, 2008, regarding the issue of fee agreements and privilege logs. You asked if I wished to voluntarily produce my clients' fee agreements without the need for motion practice and whether I will produce a log of withheld documents as well.

      I would like to direct your attention to my letter to you dated January 16, 2008, and reiterate my position with regard to retainer letters. As I stated in my letter of December 18, 2008, reiterated in our meet and confer on January 11, 2008, and again restated in my last letter on this issue of January 16, 2008, if Mattel agrees that the orders entered by Judge Infante require Mattel to produce all retainer letters relating to non-parties and if in fact Mattel produces such retainer letters, I will also agree to produce the retainer letters for my third party clients. I await your response to this question. I am still unclear as to what Mattel's interpretation of Judge Infante's order with respect to retainer letters for non-parties is.

      With regard to the production of any privilege logs, I also reiterate my position as stated in my letter of January 16, 2008, that the purpose of a privilege log is to make the receiving party aware of any documents that the producing party is withholding based upon privilege. You are aware that I am withholding the retainer letters, and the purpose of the privilege log is therefore

Exhibit 6
Page No. 82

B. Dylan Procter, Esq.
January 27, 2008
Page 2

satisfied.  Any demand that I produce a privilege log for the purpose of identifying the retainer letters is unduly burdensome on my clients as I have explained to you on numerous occasions.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/ccd

cc:  Thomas J. Nolan
     Michael Page

**Exhibit** 6
**Page No. 83**

1
2
3
4
5
6
7
8

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 7**

9
10
11
12

**EXHIBIT TO:**  DECLARATION OF CHRISTIAN DOWELL IN SUPPORT OF OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF FEE AGREEMENTS AND PRIVILEGE LOGS FROM LEAHY, CLOONAN, HALPERN, AND MARLOW, AND FOR SANCTIONS

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

November 21, 2007

WRITER'S DIRECT DIAL

(310) 777-3750

WRITER'S EMAIL

lmcfarland@kmwlaw.com

VIA FACSIMILE, VIA HAND DELIVERY

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

　　　　Re:　　Mattel v. Bryant

Dear Dylan:

　　　　I am writing in response to your letter dated November 15, 2007.

　　　　With respect to the document control numbers listed on the first two pages of your letter, I can confirm that this is a complete list of all the documents produced to date by Ms. Leahy, Ms. Marlow, Ms. Cloonan and Ms. Halpern that were assigned document control numbers.[1][2] The reason that I am making this distinction is that, as you know, Ms. Leahy and Ms. Marlow have produced sculpts and other three-dimensional objects that your firm has photographed and/or videotaped. In order to avoid any confusion, I propose that we make photocopies of each of these produced sculpts and three-dimensional objects and assign each photocopy a bates number. Please let me know if you agree with this proposal. Also, with respect to the photographs taken and the videotapes made by your firm of these sculpts and three-dimensional objects, I previously asked Ms. Wines for copies of these photographs and videotapes. She refused to provide me with copies and told me that it was your firm's position that the photographs and videotapes are work product and that your firm does not intend to use them at any of the depositions or at trial. Please confirm that Ms. Wines' statement is correct and that you will not be using any of these photographs or videotapes at the depositions of any of my clients or at trial.

　　　　With respect to your question involving whether the production of documents is complete, I can confirm that Ms. Halpern has produced all responsive documents in her possession, custody and control. With respect to Ms. Marlow, we are delivering to you with this

---

[1] For documents KMW-M 00667 through KMW-M 03040, your notation of the production date as August 29, 2007 does not reflect that an attorney from your office inspected the documents on August 24, 2007.
[2] For documents ACFR000364 through ACFR000390 and SHFR000225 through SHFR000364, your notation of the receipt date as October 29, 2007 does not reflect my letter dated October 26, 2007 to Mr. Zeller and Data Chasers, releasing the documents.

Exhibit 7
Page No. 84

B. Dylan Procter, Esq.
November 21, 2007
Page 2

letter document control numbers KMW-M 006695 through KMW-M 007643. In addition, we received some three-dimensional objects from Ms. Marlow for your review. Please let me know when someone from your office is available to inspect them. Regarding Ms. Leahy, she has located some additional three-dimensional objects which are available for your review. Please let me know when someone from your office is available to review these items. With respect to Ms. Cloonan, we noticed that your computer expert did not pick up a computer disk with Ms. Cloonan's computer. I suggest that we provide this disk to Data Chasers pursuant to the terms of our agreement as set forth in the letter from Ms. Wines dated September 13, 2007. In addition, in order to speed things up, we will agree to review anything found by Data Chasers within five court days of receipt from Data Chasers rather than the ten court days set forth in Ms. Wine's letter. Please let me know if this is acceptable. With the production of these last remaining items, I believe that the production from Ms. Marlow, Ms. Leahy, Ms. Halpern and Ms. Cloonan is complete.

Regarding the withholding of documents based on privilege grounds, it is our position that the fee agreements between our clients and their attorneys, as well as all correspondence between our clients and their attorneys, are privileged.

Regarding your statements with respect to redactions, your assertion that our clients have improperly redacted documents is incorrect. In addition, you continue to cite the previously redacted pages from Ms. Leahy's day planner, even though, as you know, additional pages from that day planner were produced pursuant to our agreement with Ms. Wines. (See my letter to you dated November 14, 2007.) I am not aware of any order from Judge Infante that precludes third parties from redacting irrelevant information. If there are any such orders, please provide copies to me. In addition, as I have previously stated, it is our position that any discovery disputes with our third party clients will be heard by Magistrate Judge Block. However, in an effort to try to avoid unnecessary motion practice, we are re-reviewing all of the documents that were redacted, and if there are any errors, we will provide corrected documents to you.

With respect to your request regarding whether Ms. Leahy, Ms. Marlow, Ms. Halpern or Ms. Cloonan have fee agreements with MGA, written or otherwise, without admitting that any such documents exist, it is our position that the request seeks the production of privileged information. Under the attorney-client privilege, confidential communications made by a client to an attorney to obtain legal services are protected from disclosure. California statutory authority provides that "[a] written fee contract shall be deemed to be a confidential communication within the meaning of [Cal. Bus. & Prof. Code § 6068(e)] and of [Cal. Evid. Code § 952]." Section 6068(e)(1) affirms that "[i]t is the duty of an attorney to ... maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." Therefore, the requested fee agreements are confidential communications protected under the attorney-client privilege. If you have any authority to the contrary, please let me know. Finally, in response to your assertions in the November 15, 2007 letter, I am not aware of Judge Infante ruling on this issue with respect to any third party. If I am mistaken, please inform me of any such ruling.

Exhibit ____ 7
Page No. 85

B. Dylan Procter, Esq.
November 21, 2007
Page 3


Regarding bank accounts used by Ms. Marlow in connection with her work with MGA,
as I stated in my letters to Ms. Wines dated July 23, 2007 and September 21, 2007, we have not
received any documents from Wells Fargo in response to your subpoena. In addition, we have
not yet received any documents from Bank of America. As soon as we receive these documents,
we will comply with the review procedure as set forth in the letter from Ms. Wines dated
September 13, 2007, and the letter from you dated November 2, 2007. Finally, with respect to
your question whether Ms. Marlow has used any additional bank accounts in connection with her
work for MGA, I will provide you this information on the condition that you agree to comply
with the protocol set forth in the letter from Ms. Wines dated September 13, 2007, and the letter
from you dated November 2, 2007. Please let me know if you agree to this protocol.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP


LWM/jlt

cc: Thomas J. Nolan
    Michael Page

Enclosures (KMW-M 006695 through KMW-M 007643)

Exhibit ⁊
Page No. 86

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

December 18, 2007

VIA FACSIMILE, U.S. MAIL and E-MAIL

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   Mattel v. Bryant

Dear Dylan:

I am writing to follow-up on my letter dated December 11, 2007, and in response to your letter dated December 6, 2007.

With respect to Ms. Leahy's planner, as you know, at Ms. Leahy's deposition we produced the entire day planner in un-redacted form. This issue is now resolved.

Regarding the Bates numbered photocopies of the three-dimensional objects that our clients produced, as you know, on December 11, 2007, we delivered these documents to you. With respect to the use of photographs at the depositions of my clients, as I had suspected, Mr. Zeller did indeed show my clients copies of photographs (and introduced as exhibits documents that had no Bates numbers) at their depositions that you refused to produce to me in advance. My understanding is that even if these documents are considered "work product," the work product doctrine protects the confidentiality of documents up until the time that you decide to use them in the case, at which time you must produce them. Obviously, you decided to use the photographs at my client's depositions prior to the time of their depositions. Your refusal to produce these photographs ahead of the depositions in the face of my continuing requests is improper. Moreover, your decision to waive work-product protection as to a portion of the photographs during the depositions means that you have chosen to waive any such work-product protection you could have possibly claimed in those photographs. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 512-13 (S.D. Cal. 2003) ("A party cannot reasonably expect to preserve confidentiality of work product while simultaneously disclosing substantive components of that document."). Therefore, we are again requesting that you provide us with copies of all the

Exhibit 7
Page No. 87

B. Dylan Procter, Esq.
December 18, 2007
Page 2

photographs and videotapes that you have taken of the three-dimensional objects that we produced.

Regarding the fee agreements, I am at a loss to understand how you can contend that "Mattel's objections to other subpoenas and Mattel's responses to other parties' requests for production are irrelevant here." The point is simple. Mattel is taking the position with respect to my clients that Judge Infante's orders require the production of retainer letters, while at the same time, Mattel has continued to object to the production of retainer letters after the entry of Judge Infante's order. Your silence with respect to my request in my December 3, 2007 letter, that "[i]f you have produced the retainer letter for Mr. Liden or any third party, please provide me with a copy of that document," says everything. You have not provided me with any such retainer letters and, therefore, I can only assume that you have continued to refuse to produce them. Finally, as you also know, we have an ongoing disagreement regarding whether discovery disputes with respect to our clients should be heard by Judge Infante or Magistrate Judge Block. As we have repeatedly stated, it is our position that these disputes should be heard by Magistrate Judge Block. Mattel has now filed a motion on this issue with a hearing date of January 7, 2007. As soon as Judge Larson rules on Mattel's motion, we will know who is right. However, I would note that there is no dispute that Judge Infante has jurisdiction over discovery disputes between Mattel and MGA. Mattel's continuing objection to the production of retainer letters is, therefore, all the more incomprehensible in light of what you characterize as clear rulings from Judge Infante that all retainer letters must be produced. Finally, as you know, I allowed both Ms. Leahy and Ms. Cloonan to answer questions regarding whether they had spoken to attorneys and who is paying their legal fees. We therefore have acted consistently with Judge Larson's orders with respect to Mr. Bryant as set forth in Judge Larson's Order Re Motions heard on June 11, 2007, pp. 33-34 ("[Q]uestions such as the one addressed by objection No. 38, asking whether Bryant talked to counsel for MGA during a break from his deposition, are not subject to objection based on the attorney-client privilege…. [F]ee-payment arrangements are relevant to credibility and bias, and if asked in discovery, Bryant must disclose who is paying his legal fees.").

With respect to your allegation that our clients are "withholding documents" from key time periods in this case, after the depositions of Ms. Leahy and Ms. Cloonan, you now know that this statement is not accurate. Regarding your request for a date-restricted privilege log of communications between me and my clients, I am still at a loss to understand the basis for this request. Moreover, since we obviously do not agree with your demand that our clients produce their retainer letters, this issue will more than likely need to be resolved after it is determined who is to hear discovery disputes with respect to our clients – Judge Infante or Magistrate Judge Block. In the meantime, please let me know if Mattel has produced a similar privilege log and I can then consider your request.

Finally, regarding the personal Wells Fargo bank records of Ms. Marlow, we continue to insist that you return all copies and originals of the Wells Fargo bank records, confirm that your firm has not reviewed or made any use of these documents, and provide me with the date that your firm received these documents. Although you claim that you gave copies of these bank



Exhibit 7
Page No. 88

B. Dylan Procter, Esq.
December 18, 2007
Page 3

records to "all parties months ago," it is undisputed that you did not provide copies to me until November 30, 2007, and then only after I had sent several letters notifying you that I had not received the documents from Wells Fargo. As to your statement regarding "unringing the bell," it is very simple – the most that can be done at this point is to comply with my requests set forth above. Also, your statement that the Wells Fargo bank records are not privileged is inaccurate. Without limitation, the bank records include federal tax information which is private and confidential, and is recognized as protected matter by both the Ninth Circuit and this Court. *See Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); *S. Cal. Hous. Rights Ctr. v. Krug*, No. CV06-1420SJOJCX, 2006 WL 4122148, at *3 (C.D. Cal. Sept. 5, 2006).

I reiterate my demand that you return all copies and originals of the Wells Fargo bank records, confirm that your firm has not reviewed or made any use of these documents, and provide me with the date that your firm reviewed these documents. As you know, we have been meeting and conferring with respect to this issue for some time. Please consider this notice that if you do not agree to these demands, we will file a motion with the Court seeking this relief.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/eg

cc: Thomas J. Nolan
    Michael Page

Exhibit 7
Page No. 89

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750

WRITER'S EMAIL

lmcfarland@kmwlaw.com

January 27, 2008

VIA FACSIMILE
U.S. MAIL and E-MAIL

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

> Re:   Mattel v. Bryant

Dear Dylan:

I am writing with regard to your letter of January 23, 2008, regarding the issue of fee agreements and privilege logs. You asked if I wished to voluntarily produce my clients' fee agreements without the need for motion practice and whether I will produce a log of withheld documents as well.

I would like to direct your attention to my letter to you dated January 16, 2008, and reiterate my position with regard to retainer letters. As I stated in my letter of December 18, 2008, reiterated in our meet and confer on January 11, 2008, and again restated in my last letter on this issue of January 16, 2008, if Mattel agrees that the orders entered by Judge Infante require Mattel to produce all retainer letters relating to non-parties and if in fact Mattel produces such retainer letters, I will also agree to produce the retainer letters for my third party clients. I await your response to this question. I am still unclear as to what Mattel's interpretation of Judge Infante's order with respect to retainer letters for non-parties is.

With regard to the production of any privilege logs, I also reiterate my position as stated in my letter of January 16, 2008, that the purpose of a privilege log is to make the receiving party aware of any documents that the producing party is withholding based upon privilege. You are aware that I am withholding the retainer letters, and the purpose of the privilege log is therefore

Exhibit 7
Page No. 90

B. Dylan Procter, Esq.
January 27, 2008
Page 2


satisfied.  Any demand that I produce a privilege log for the purpose of identifying the retainer
letters is unduly burdensome on my clients as I have explained to you on numerous occasions.


Very truly yours,


Larry W. McFarland
Keats McFarland & Wilson LLP


LWM/ccd

cc:  Thomas J. Nolan
     Michael Page


Exhibit _____ 7
Page No. 91

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750

WRITER'S EMAIL

lmcfarland@kmwlaw.com

January 16, 2008

<u>VIA FACSIMILE and E-MAIL</u>

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

       Re:    <u>Mattel v. Bryant</u>

Dear Dylan:

      I am writing with regard to several outstanding issues discussed during our meetings of counsel held on January 9 and January 11, 2008, and with respect to the correspondence noted below.

### **Lucy Arant**

      Responding to your letter dated January 10, 2008, in which you asked me to confirm that Ms. Arant is not withholding any non-logged documents, as we discussed during our meeting of counsel on January 9, 2007, I provided you with amended responses and objections to Mattel's document request that day. I also provided you with an amended privilege log.

      With regard to documents responsive to Request No. 28 of Mattel's subpoena for the production of documents, I can confirm that our position is set out in the response to the same in Arant's amended objections and responses dated January 8, 2008. I reiterate that the filed intent-to-use trademark applications and any related statements of use fully satisfy Mattel's request that Arant produce:

      DOCUMENTS sufficient to show each instance in which YOU have filed or caused to be filed an intent-to-use application for a name, mark, designation or source identifier, or any contemplated, proposed, considered, putative or formative name, mark, designation or

Exhibit   7
Page No. 92

B. Dylan Procter, Esq.
January 16, 2008
Page 2

source identifier, that had been used or was in use prior to the time such application was filed or caused to be filed.

In addition, these documents are as readily available to Mattel as they are to Arant, including without limitation by accessing the public records hosted on the Trademark Office web site at www.uspto.gov.  Moreover, as you know, Ms. Arant filed a revised declaration which did not contain the statement regarding filing intent-to-use applications which you refer to in your Request No. 28.

Additionally, we do not believe that any privileged documents have been withheld, other than as set forth on the privilege log.  However, we are reviewing the documents again to confirm that everything is included in the privilege log.  If we locate any additional relevant documents that are being withheld for privilege, we will provide you with an amended privilege log by Friday, January 18, 2008.

**Photographs and Videos Used During Depositions**

I write in response to your last letter of January 11, 2008.  As I set forth fully in my letter of December 18, 2008, you have waived the work product protection with respect to the photographs and videotapes of the three-dimensional objects which we produced for inspection, by using some of these photographs at Ms. Leahy's deposition.  In furtherance of my follow-up letters of January 2, 2008, and January 11, 2008, I again request that these documents be produced in their entirety.  It is clear under the relevant authority that your use of the photographs during a deposition has resulted in a waiver of the work product protection which you have claimed in those items.  *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503 512-13 (S.D. Cal. 2003).  In my letter of January 11, 2008, I presented further legal authority in support of my position.  You have failed to provide any relevant legal authority contrary to this position.  Indeed, the citations in your January 11, 2008, letter do not support your conclusion that the photographs constitute opinion work product rather than factual work product, but instead simply reiterate the general rule that opinion work product is treated differently than fact work product with respect to waiver.  This may be true, but it is not relevant here because the photos and video do not constitute opinion work product.  *See Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 n.4 (8th Cir. 1998) ("Ordinary work product includes such items as photographs and raw information.").

However, I see that you have agreed in your letter dated January 11, 2008, to provide us copies of all of the photographs and videos taken of the three-dimensional items if I agree to do the same.  I would point your attention to my letter of December 18, 2007, in which I clearly stated that we had provided you with copies of all of our photos on December 11, 2007.  I also reminded you of this during our telephonic meeting of counsel on January 9, 2008.

Exhibit   7
Page No. 93

B. Dylan Procter, Esq.
January 16, 2008
Page 3

Unfortunately, you have made MGA's agreement a condition of Mattel's agreement to produce these photographs and videotapes. That is an issue that you need to raise with MGA's attorneys. I request that you reconsider your position and agree to provide us with all of the photographs and videos that you have taken of the three-dimensional objects produced by my clients and remind you again that my clients have already done the same.

### Computers

With regard to your request that I agree to a new protocol as set forth in Mr. Tayback's email dated January 9, 2008, for the review of the computers, hard disk drives, and zip disk (the "Computers") belonging to Ms. Leahy and Ms. Cloonan, as you know, these Computers have already been reviewed pursuant to the protocol that your partner, Susan Wines, and I agreed to several months ago. Moreover, all of the documents located by the expert's search pursuant to the agreed to protocol have already been produced and both Ms. Leahy and Ms. Cloonan have already been deposed. We are, therefore, not willing at this late date to agree to a new protocol.

As you know, Ms. Wines and I spent a considerable amount of time meeting and conferring with respect to a protocol for the review of the Computers. The result of these discussions was the protocol set forth in Ms. Wines' letter dated September 13, 2007. Both Mattel and I agreed to be bound by this protocol. In addition, as I have repeatedly stated, one of the most important issues for me was that this protocol be agreed to and all documents located pursuant to the protocol be produced prior to the depositions of my witnesses. As you know, this was accomplished. Now that the depositions of Ms. Leahy and Ms. Cloonan have been taken, you are attempting to re-review the Computers pursuant to a new protocol. This is not acceptable and you have presented no basis to justify your attempt to change the protocol. In the email dated January 9, 2008, from Mr. Tayback, he stated that "the testimony of the witnesses makes clear that there are graphical (and perhaps other) files on the Cloonan and Leahy hard drives that are relevant, responsive, non-privileged documents but which were either not produced by you or not identified by the prior search protocol." However, the fact that there could be graphical files on the Computers is not new information. As you know, Mr. Bryant testified during his deposition that he and/or Ms. Cloonan may have utilized the computer belonging to Ms. Cloonan to create graphics for Bratz. Unfortunately, it appears as though this effort to alter the protocol previously agreed upon is simply part of a larger strategy to never commit to an agreement and/or conclude a deposition.

With regard to the computers belonging to Ms. Marlow, as I stated during our conference on January 9, 2008, in response to the subpoena, we produced all relevant and responsive documents in Ms. Marlow's possession, custody or control, which included emails residing on her computers. Accordingly, Ms. Marlow has fully complied with her discovery obligations. It is both unreasonable and beyond the scope of Mattel's discovery rights to require Ms. Marlow to

Exhibit ____
Page No. 94

B. Dylan Procter, Esq.
January 16, 2008
Page 4

produce her actual computer hard drives to Mattel. Ms. Marlow has fully complied with her discovery obligations by searching her hard drives and producing all relevant documents in response to Mattel's requests. As you know, when a party is obligated to produce electronically-stored documents in response to discovery requests, it is the responding party's obligation to conduct the search and review its own documents. *See Peskoff v. Faber*, 240 F.R.D. 26, 31 (D.D.C. 2007) ("[T]he producing party has the obligation to search available electronic systems for the information demanded."), *quoting McPeek v. Ashcroft*, 202 F.R.D. 31, 32 (D.D.C. 2001)). The mere fact that a requesting party is skeptical that a responding party has produced copies of all relevant and non-privileged documents does not warrant compelling production of the responding party's computer hard drives. *McCurdy Group, LLC v. Am. Biomedical Group, Inc.*, 9 Fed. Appx. 822, 831 (10th Cir. 2001). *See also Ameriwood Indus., Inc. v. Liberman*, No. 4-06CV524-DJS, 2006 WL 3825291, at *4 (E.D. Mo. Dec. 27, 2006) ("[A] party may not inspect the physical hard drives of a computer merely because the party wants to search for additional documents responsive to the party's document requests."). Ms. Marlow is not required to go above and beyond the requirements placed on a party and produce her computer hard drives to Mattel.

Finally, your claim that you just now learned during her deposition that Ms. Marlow occasionally used computers is inaccurate. You have known for quite some time that Ms. Marlow sent and received email because we produced such relevant emails well prior to her deposition and I believe that MGA has also produced emails which were sent to Ms. Marlow. With respect to your allegation that I had "previously represented to Mattel that Ms. Marlow does not have any hard drives which she used for work relating to Bratz," I am unaware of making any such representation. Because you insist that I have, please advise as to when and where I made the alleged representation.

## Bank Records

I write further in response to your latest letter on this subject dated January 11, 2008. With regard to the Wells Fargo documents belonging to Ms. Marlow that were produced directly to you in violation of our agreed upon protocol, you stated in your letter dated January 10, 2008, that you would consider my request that you purge yourself of those documents and return them to me so that they may be reviewed pursuant to the protocol. In your letter of January 11, 2008, you proposed supplementing the review protocol for all bank records produced and to be produced by adding documents referring to the following:

(1)   Isabel Ana Cabrera

(2)   Beatriz Morales

(3)   Maria Elena Salazar

(4)   Payments made to, or work or services performed by, any other Mattel employee



Exhibit 7
Page No. 95

B. Dylan Procter, Esq.
January 16, 2008
Page 5

     (5)      Payments made by, or any services performed for, any competitors of Mattel, including any company involved in the sale of dolls or toys, while your clients were employed at Mattel

     (6)      The dates on which any entities with which your clients are affiliated were established, including but not limited to payments to the Franchise Tax Board or other tax entities.

With regard to items (1), (2), (3), and (6), I agree to amend the protocol for review of the bank records. However, item (4) is too vague and should be qualified to read "while such person was an employee of Mattel." Item (5) is also too vague and should be amended to read that competitors of Mattel are defined as any company involved in the sale of dolls or toys, not simply "including any company involved in the sale of dolls or toys," as you have drafted it. If you are amenable to these changes, please advise us accordingly.

**Retainer Letters**

With regard to your request that I produce any retainer letters signed by my clients, you have taken the position that various orders entered by Judge Infante with respect to Mr. Bryant are controlling as to my non-party clients. As you know, I was not involved with the motions ruled on by Judge Infante, but your firm obviously was. As I pointed out in my letter dated December 18, 2007:

> Regarding the fee agreements, I am at a loss to understand how you can contend that "Mattel's objections to other subpoenas and Mattel's responses to other parties' requests for production are irrelevant here." The point is simple. Mattel is taking the position with respect to my clients that Judge Infante's orders require the production of retainer letters, while at the same time, Mattel has continued to object to the production of retainer letters after the entry of Judge Infante's order. Your silence with respect to my request in my December 3, 2007 letter, that "[i]f you have produced the retainer letter for Mr. Liden or any third party, please provide me with a copy of that document," says everything. You have not provided me with any such retainer letters and, therefore, I can only assume that you have continued to refuse to produce them.

As I told you during our meet and confer on Friday, January 11, 2008, if Mattel agrees that the orders entered by Judge Infante require Mattel to produce all retainer letters relating to non-parties and if in fact Mattel produces such retainer letters, I will also agree to produce the retainer letters for my third party clients. With respect to your statement during our call on January 11, 2008, that the two situations were like "apples and oranges," I request that you reconsider your

Exhibit   7
Page No. 96

B. Dylan Procter, Esq.
January 16, 2008
Page 6

position. The issue is simple – what is Mattel's interpretation of Judge Infante's order with respect to retainer letters for non-parties.

As far as whether I will be providing a privilege log as you propose in your letter of January 10, 2008, I reiterate my previous statement that the purpose of a privilege log is to make the receiving party aware of any documents that the producing party is withholding based upon privilege. Rule 26 lays out the purpose of providing a privilege log as being to "expressly make the claim" of privilege and to "describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." F.R.C.P. 26(b)(5). In this case, the purpose of the privilege log has been fully satisfied – I have told you that I am not producing the retainer letters between my clients and their attorneys. (Nor am I producing the correspondence between my clients and their attorneys.) You are aware of the claim of privilege and what is not being produced. I can also confirm that these retainer letters were not copied or addressed to other parties or third parties.

### Additional Deposition Dates

With respect to your request that my clients be made available for additional deposition dates, as I have repeatedly stated, this request is unreasonable. I have made my clients available for the full seven hours (and beyond in some instances) as required by the federal rules and believe that demanding additional time of these non-party witnesses is not warranted. In particular, I write in response to the issues raised in the letter from Mr. Zeller dated January 4, 2008, and his mischaracterization of why he believes he did not have enough time to question Ms. Marlow. As a preliminary matter, with regard to Mr. Zeller's belief that he did not have time to question Ms. Marlow regarding other Mattel employees she has worked with, documents identifying the other Mattel employees Ms. Marlow worked with were produced well prior to the deposition and Mr. Zeller had plenty of time to review these documents prior to the deposition and did in fact question her extensively about these individuals during the deposition.

In addition, the assertions by Mr. Zeller in the third and fourth paragraphs of his letter that Mattel lacked sufficient time to depose Ms. Marlow regarding Mr. Bryant's drawings and the Prayer Angels project are simply untrue. All of these topics were covered in great detail during the deposition. With regard to the several pages of additional documents produced on the day before the deposition, I have difficulty understanding how those might have adversely affected Mr. Zeller's ability to question Ms. Marlow regarding them. Mr. Zeller stated at the deposition that all these documents except one had been previously produced by MGA or Bryant. With respect to the one new document, Mr. Zeller had seven hours to question Ms. Marlow regarding this document, but he chose not to do so.

Exhibit ____
Page No. 97

B. Dylan Procter, Esq.
January 16, 2008
Page 7

Finally, with regard to the specific instructions Mr. Zeller has taken issue with, he claims
that at Marlow Depo. Tr 174:4 – 177:3, my objections were "suggestive" and "obstructionist." I
reject this assertion, and believe that my objections and those of counsel for Bryant and MGA
were well within the federal rules.  Furthermore, I will point out again that his line of questioning
was an attempt to put words in Ms. Marlow's mouth to support your purported legal conclusion
that the drawings at issue were "substantially similar" to the final Bratz product, when in fact Ms.
Marlow repeatedly disagreed with your conclusion, stating that:

Q:      Are they – are they more different or are they more similar?

A:      They're more different.

Not satisfied with Ms. Marlow's answer, Mr. Zeller repeatedly asked the same question over and
over in different formats in a failed attempt to get Ms. Marlow to answer the question to his
pleasing.  If Mr. Zeller had instead asked direct questions and not wasted time forcing Ms.
Marlow to repeat herself multiple times, he would have had more than enough time available to
him to ask all of the questions that he believes he needed to.

Mr. Zeller also complains about Ms. Marlow's testimony at 87:8 – 13, as follows:

Q:      Did you have some legal questions in your mind at that time prior to the time that
        you talked to Mr. Contopolous?

This question was part of an improper line of questioning regarding Ms. Marlow's
communications with her attorney, Mr. Contopolous.  Prior to this question, Ms. Marlow had
testified that she was seeking legal representation from Mr. Contopolous regarding this litigation.
See *United States v. Chen,* 99 F.3d 1495, 1501 (9th Cir.1996) ("A client is entitled to hire a
lawyer, and have his secrets kept, for legal advice regarding the client's business affairs.").

In addition, Ms. Marlow fully answered Mr. Zeller's questions with respect to what
questions were in her mind prior to the time that she spoke to Mr. Contopolous as follows:

Mr. McFarland:        Why don't we read it back.

(The record was read by the court reporter as follows:

"Q:      Did you have some questions in your mind at that time prior to the time that you
        talked to Mr. Contopolous?")

Exhibit ___
Page No. 98

B. Dylan Procter, Esq.
January 16, 2008
Page 8

Mr. McFarland:        Objection, she's asked and answered your questions or mine regarding this litigation.  She talked to Mr. Contopolous.

By Mr. Zeller:

Q:      You can go ahead and answer.

A:      I don't have anything to say about that.

Q:      You're refusing to answer the question?

Mr. McFarland:        No, she's already answered your question.

By Mr. Zeller:

Q:      What was it specifically about – tell me everything it was about the litigation between Carter Bryant and Mattel that you had on your mind prior to the time that you spoke with Mr. Contopolous?

Mr. McFarland:        She's asked and answered the question.

Did you have anything else in your mind other than what you've said?

The Witness:        No.

By Mr. Zeller:

Q:      So it was just that there was litigation and nothing else?

A:      Yes.

Q:      There was nothing in particular?

Mr. McFarland:        She's --

The Witness:  No.

Mr. McFarland:        -- answered the question.  You have answered the question.

The Witness:  I answered the question.

By Mr. Zeller:

Q:      There was nothing in particular; right?

A:      Right.


**<u>Marital Privilege Instructions</u>**


With respect to the marital privilege issue, I am both surprised and confused by your continued attempts to limit the marital privilege to criminal cases.  As explained in my January 2, 2008, letter to you:

Federal common law recognizes two distinct forms of marital privilege.  The first is the privilege against adverse spousal testimony, which invests in the testifying witness the

Exhibit  7
Page No. 99

B. Dylan Procter, Esq.
January 16, 2008
Page 9

> privilege of not being compelled to testify against one's spouse. <u>Trammel v. United States</u>, 445 U.S. 40 (1980). The second is the confidential marital communications privilege, which provides that "[c]ommunications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged," and which may be asserted by either spouse to bar the testimony of the other regarding marital communications made in confidence. <u>Wolfe v. United States</u>, 291 U.S. 7, 14 (1934)....

As I further provided, courts have held that the confidential marital communications privilege "may be asserted by either spouse in both civil and criminal proceedings, while the testimonial privilege ... is recognized only in criminal proceedings." <u>281 Syosset Woodbury</u>, 862 F. Supp. 847, 852 (E.D.N.Y. 1994); <u>see also Englemann v. Nat'l Broad. Co., Inc.</u>, No. 94 Civ, 5616(MBM)(AJP), 1995 WL 214500, at *2 *(S.D.N.Y. Apr. 10, 1995) ("The second of the two federal marital privileges, the spousal confidential communications privilege ... applies in both criminal and civil cases.").

Nevertheless, you continue to allege that I "have not offered any authority supporting the proposition that the marital privilege applies in civil cases." To the contrary, I believe that is exactly what I did and that it is you that have failed to offer any authority supporting the proposition that confidential marital communications, the one form of the privilege that is relevant here, applies only in criminal cases. Instead, you merely re-assert your claim that marital privilege does not apply here and cite to cases which address only the first form of marital privilege, the privilege against adverse spousal testimony. Specifically, your most recent reference to <u>Ryan v. Commissioner of Internal Revenue</u>, 568 F.2d 531, 542 (7th Cir. 1977) demonstrates my point exactly. In your January 11, 2008, letter, you cite <u>Ryan</u> to argue that marital privilege is "only applicable in criminal cases." However, like <u>281 Syosset Woodbury</u>, <u>Ryan</u> actually supports my position that only the privilege against adverse spousal testimony is limited to criminal cases. In <u>Ryan</u>, the Seventh Circuit affirmed the Tax Court's rejection of "the Ryans' claim of marital privilege because the privilege against *adverse spousal testimony* is only applicable in criminal proceedings." <u>Id</u>. at 537(emphasis added), 542 ("The Tax Court held that the privilege against *adverse spousal testimony* was only available in criminal cases and therefore was not applicable in civil tax proceedings.") (emphasis added).

Moreover, your claim that the three Supreme Court and Ninth Circuit cases cited in my January 2, 2008, letter "each addressed marital privilege within the context of criminal matters, not civil litigation," is misleading. Indeed, while these cases involved criminal proceedings, two of the three addressed the privilege against adverse spousal testimony. Although the third, <u>Wolfe v. United States</u>, 291 U.S. 7, 14 (1934), addressed the confidential marital communications privilege, the Court actually acknowledged that the two forms of marital privilege are in fact distinct. <u>Id</u>. ("Hence it is that the privilege with respect to communications extends to the testimony of husband or wife even though the different privilege, excluding the testimony of one against the other, is not involved."). Thus, you have once again failed to show that the confidential marital communications privilege is limited to criminal cases.

Exhibit 7
Page No. 100

B. Dylan Procter, Esq.
January 16, 2008
Page 10

My responses to the testimony set forth in your letter of January 11, 2008, are set forth below:

Ms. Cloonan's testimony at 38:6-17:

Q:      Other than Mr. McFarland here, have you discussed the lawsuit with anybody?
A.:     Not much more than to tell people that I was involved in it; my father, my stepmother, my family, my husband.

This question was answered by Ms. Cloonan, regardless of any instruction.

Ms. Cloonan's testimony at 06:23 – 108:9; see 108:2:

Q:      What did you and he discuss on that subject?
A:      I don't recall.

This question was also answered by Ms. Cloonan, regardless of any instruction.

Ms. Cloonan's testimony at 108:11 – 14:

Q:      Have you discussed this lawsuit with your husband?
A:      I'm not going to answer that.
Q:      You can't tell me one way or the other?
A:      Do I have to?  If I have to, I will.

Mr. McFarland:  Well, first of all, it's asked and answered.  She's already told you she mentioned to her husband and other people.

As I stated on the record, I reiterate that this question was answered previously in the deposition as set forth above, regardless of any instruction.

Ms. Cloonan's testimony at 109: 1 – 8; see 109:15 – 18:

Q:      Prior to Christmas of last year, did you discuss this lawsuit with your husband, Mr. Sandham, your current husband?

Exhibit ____
Page No. 101

B. Dylan Procter, Esq.
January 16, 2008
Page 11

> A:   I don't know.

Even assuming that the confidential marriage communications privilege does not apply to domestic partners who subsequently marry, you have failed to meet your burden to establish that this conversation occurred prior to marriage and that it, therefore, may not be protected by the marriage privilege. "When encountering a privilege objection at deposition, examining counsel should insist on making a record that will permit meaningful judicial evaluation of the privilege claim." 7 *Moore's Federal Practice* § 30.43[2] (Matthew Bender 3d ed.). Ms. Cloonan answered that she did not know whether this conversation occurred before or after she was married to her husband. It was Mr. Zeller's responsibility to make the showing that the instruction was improper, and he failed to do so.

### Attorney-Client Privilege Instructions

In your letter dated January 11, 2008, you also claim that Ms. Cloonan was improperly instructed regarding facts disclosed during her conversations with counsel. I am unaware of any ruling by Judge Infante so limiting the attorney client communication privilege. Please provide me with the order you are referring to.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/ccd

cc:  Thomas J. Nolan
     Michael Page

Exhibit 7
Page No. 102