# EXHIBIT 1

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3112**

WRITER'S INTERNET ADDRESS
**dylanproctor@quinnemanuel.com**

February 11, 2008

<u>VIA FACSIMILE AND U.S. MAIL</u>

Timothy A. Miller, Esq.                  Matthew M. Werdegar, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP   Keker & Van Nest, LLP
Four Embarcadero Center                  710 Sansome Street
San Francisco, CA 94111-4144             San Francisco, CA 94111-1704

Alexander H. Cote, Esq.
Overland Borenstein Scheper & Kim LLP
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071

Re:     <u>Mattel v. Bryant et al.</u>

Dear Counsel:

I write pursuant to Local Rule 7-19 to provide notice of Mattel's intention to apply before Judge Infante on an *ex parte* basis to strike as untimely Carter Bryant's Motion to Compel Responses to Discovery Requests, filed on February 8, 2008, and for a stay of the time for filing Mattel's opposition thereto pending review of Mattel's *ex parte* application.  Mattel is applying on the ground that Bryant's motion was improperly filed after the discovery cut-off.

We plan to file the application tomorrow, February 12, 2008.

Please let me know at your earliest convenience whether your clients oppose the application, or whether you have any questions.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

07209/2386769.1

I look forward to hearing from you.

Best regards,

*B. Dylan Proctor /sн*

B. Dylan Proctor

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

**DATE:**   February 11, 2008

**NUMBER OF PAGES, INCLUDING COVER: 3**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Matthew M. Werdegar, Esq.<br>Keker & Van Nest, LLP | (415) 391-5400 | (415) 397-7188 |
| Timothy A. Miller, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP | (415) 984-6400 | (415) 984-2698 |
| Alexander H. Cote, Esq.<br>Overland Borenstein Scheper & Kim LLP | (213) 613-4655 | (213) 613-4656 |

**FROM:**   B. Dylan Proctor, Esq.

**RE:**   *Mattel v. Bryant et al.*

**MESSAGE:**



| CLIENT # | 07209 | ROUTE/<br>RETURN TO: | **Tiffany Garcia** | ☒ CONFIRM FAX |
|---|---|---|---|---|
| | | | | ☒ INCLUDE CONF. REPORT |
| OPERATOR: | | | CONFIRMED?  ☐ NO  ☒ YES: _____ | |

The information contained in this facsimile is confidential and may also contain privileged attorney–client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

TRANSMISSION VERIFICATION REPORT

```
                                    TIME : 02/11/2008 23:32
                                    NAME : JOHN B QUINN
                                    FAX  : 2134890088
                                    TEL  : 2134433201
                                    SER.# : BROE5J272067
```

```
        DATE,TIME                  02/11  23:31
        FAX NO./NAME               14153977188
        DURATION                   00:00:51
        PAGE(S)                    03
        RESULT                     OK
        MODE                       STANDARD
                                   ECM
```

TRANSMISSION VERIFICATION REPORT

```
                                           TIME  : 02/11/2008 23:34
                                           NAME  : JOHN B QUINN
                                           FAX   : 2134890088
                                           TEL   : 2134433201
                                           SER.# : BROE5J272067
```

```
        DATE,TIME                  02/11  23:34
        FAX NO./NAME               14159842698
        DURATION                   00:00:41
        PAGE(S)                    03
        RESULT                     OK
        MODE                       STANDARD
                                   ECM
```

TRANSMISSION VERIFICATION REPORT

```
                              TIME : 02/11/2008 23:36
                              NAME : JOHN B QUINN
                              FAX  : 2134890088
                              TEL  : 2134433201
                              SER.# : BROE5J272067
```

```
DATE,TIME              02/11  23:36
FAX NO./NAME           6134656
DURATION               00:00:27
PAGE(S)                03
RESULT                 OK
MODE                   STANDARD
                       ECM
```

# EXHIBIT 2

Mattel v. Bryant et al.                                                          Page 1 of 1

Case 2:04-cv-09049-DOC-RNB    Document 2080-3    Filed 02/12/08    Page 9 of 141    Page ID
#:32137

**Stephen Hauss**

| | |
|---|---|
| **From:** | Dylan Proctor |
| **Sent:** | Tuesday, February 12, 2008 11:57 AM |
| **To:** | MGA / Bryant Team; Susan R. Estrich |
| **Subject:** | FW: Mattel v. Bryant et al. |

**From:** Matthew Werdegar [mailto:MWerdegar@kvn.com]
**Sent:** Tuesday, February 12, 2008 11:54 AM
**To:** Dylan Proctor
**Cc:** Miller, Timothy; moverland@obsklaw.com
**Subject:** Mattel v. Bryant et al.

Dear Dylan:

I am in receipt of your letter dated February 11, 2008, which we received via facsimile at approximately 11:31 p.m. last night. We oppose Mattel's proposed ex parte application. Additionally, we believe your use of the ex parte process to raise your claim that Carter Bryant's Motion to Compel Responses to Discovery Requests is untimely is entirely inappropriate. As Judge Larson repeatedly has made clear, "ex parte applications are solely for extraordinary relief." See, e.g., Standing Order dated April 14, 2006 (Document 33), at 6 (citing Mission Power Engineering CO. v. Continental Caus. Co., 883 F. Supp. 488 (CD Cal. 1995)). There is no reason why Mattel cannot raise this argument in its opposition to the motion. Bryant reserves all of his rights, including the right to seek sanctions, with respect to Mattel's continued abuse of the ex parte process.

Regards,

Matthew M. Werdegar

710 Sansome Street
San Francisco, CA 94111-1704
tel: (415) 391-5400
fax: (415) 397-7188
www.kvn.com

Mattel v. Bryant et al.                                                Page 1 of 1

Case 2:04-cv-09049-DOC-RNB    Document 2080-3    Filed 02/12/08    Page 10 of 141    Page ID #:32138

## Stephen Hauss

| | |
|---|---|
| **From:** | Dylan Proctor |
| **Sent:** | Tuesday, February 12, 2008 12:21 PM |
| **To:** | Susan R. Estrich; Stephen Hauss; Michael T Zeller; Heidi Frahm |
| **Subject:** | FW: Mattel v. Bryant et al. |

**From:** Dylan Proctor
**Sent:** Tuesday, February 12, 2008 12:20 PM
**To:** 'Matthew Werdegar'
**Cc:** 'Miller, Timothy'; 'moverland@obsklaw.com'; Michael T Zeller; Jon Corey
**Subject:** RE: Mattel v. Bryant et al.

Matthew,

We do not believe we should be required to substantively respond to an untimely motion, especially one that is as broad as Bryant's. However, to address your concerns below, we propose that the parties stipulate that (1) Mattel will file a preliminary opposition addressing the timeliness issue, and (2) our time to substantively respond on other grounds will be deferred until the Discovery Master rules on the timeliness issue in the normal course. Please let us know if that is agreeable.


B. Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3112
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  dylanproctor@quinnemanuel.com
Web:  www.quinnemanuel.com


The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

# EXHIBIT 3

**From:** Matthew Werdegar [mailto:MWerdegar@kvn.com]
**Sent:** Tuesday, February 12, 2008 3:16 PM
**To:** Dylan Proctor
**Cc:** Miller, Timothy; moverland@obsklaw.com; Michael T Zeller; Jon Corey
**Subject:** RE: Mattel v. Bryant et al.

Dylan,

Your proposal is unacceptable. Mr. Bryant's motion is straightforward, and we do not believe it will be exceptionally burdensome for Mattel to respond to it. Your proposal simply drags this issue out, further prejudicing Carter Bryant. The appropriate course of action is for Mattel to file its opposition to the motion on the usual schedule. You can make your timeliness argument in your opposition if you wish, although we believe that that argument, like Mattel's other objections to responding to Mr. Bryant's discovery requests, is without merit under the circumstances. Also, I note that you have never provided any authority for your contention that Mr. Bryant's motion is untimely.

2/12/2008

# EXHIBIT 4

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA - Eastern Division
<u>CIVIL MINUTES - GENERAL</u>

Case No.   CV 04-09059 SGL(RNBx)                                    Date:   February 12, 2007
Title:      MATTEL, INC. -v- CARTER BRYANT, DOES 1-10, INCLUSIVE
           **Consolidated Action**
           CV 05-02727 SGL(RNBx)   MGA ENTERTAINMENT v. MATTEL, INC.,
========================================================================
PRESIDING: HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                               Theresa Lanza
Courtroom Deputy Clerk                   Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

John B. Quinn and Michael Zeller for     Diana M. Torres for MGA
Mattel                                   Keith A. Jacoby for Carter Bryant

PROCEEDINGS:      SCHEDULING CONFERENCE PURSUANT TO FRCP 16(b)

        The Court convened a scheduling conference pursuant to FRCP 16(b).   Court and counsel discussed case management and thereafter the court set the following schedule: <u>See</u> attachment "Schedule of Trial and Pretrial Dates."

        Counsel stipulated pursuant to Local Rule 16-14, to settlement procedure #3, to a retired judicial officer or other private or non-profit dispute resolution body for mediation type settlement proceedings. The Court approves the request and refers this case to an outside Mediator to act as the Settlement Officer.  Counsel are directed to contact such outside Mediator to schedule a settlement conference as soon as the parties believe such a conference would be fruitful. The cut-off to complete the mandatory settlement procedures under Local Rule 16-14, is December 3, 2007, in Case No. CV 04-09059-SGL (RNBx) <u>Mattel, Inc. v. Carter Bryant</u>, and the cut-off to complete the mandatory settlement procedures under Local rule 16-14, is April 21, 2008, in Case No. CV 05-02727 SGL (RNBx) <u>MGA Entertainment v. Mattel, Inc.</u>

        The Court further ordered that in both Case No. CV 04-09049-SGL (RNBx), <u>Mattel, Inc. v. Carter Bryant</u>, and Case No. CV 05-02727 SGL (RNBx), <u>MGA Entertainment v. Mattel, Inc.</u>:

1.      Non-Expert Depositions are limited to a total of 24 for each side for both cases.
2.      Expert Depositions are limited to a total of 20 for each side for both cases.
3.      Interrogatories are limited to 50 for each side for both cases.

        IT IS SO ORDERED.

MINUTES FORM 90                          FEB 2 2 20          Initials of Deputy Clerk: jh
CIVIL – GEN                 Page 1                           00/30

2-12-07

## SCHEDULE OF TRIAL AND PRETRIAL DATES

**CASE NAME:**   CARTER BRYANT -v- MATTEL, INC., CASE NO: CV 04-09059-SGL(RNBx)

(Consolidated Case No: CV 05-2727-SGL(RNBx), MGA Entertainment, Inc.
v. Mattel, Inc., et al.)

| Matter | Time | Court Order |
|---|---|---|
| Jury Trial Date | 9:30 am | 02/12/08 |
| Estimated Length of Trial | | |
| [Hearing on Motions in Limine; Hearing on Disputed Jury Instructions | 10:00 am | 02/04/08 |
| Final Pretrial Conference, LR 16-7 Motions in Limine to be filed | 11:00 am | 01/14/08 |
| Lodge Pretrial Conference Order, LR 16-6 to 16-6.2; File Contentions of Fact and Law, LR16-2.8; Exhibit & Witness Lists, LR 16-4 to 16-5; File Status Report regarding Settlement; File Rule 26(e)(1) Supplementation File Agreed Upon Set of Jury Instructions and Verdict Forms LR 49-1 to 49-2, 51-1 to 51-5.1; File Joint Statement regarding Disputed Instructions, Verdicts, etc. | | 12/31/07 |
| Last date to conduct Settlement Conference | | 12/03/07 |
| Last date for hearing motions, LR 7.2, et seq. | 10:00 am | 11/19/07 |
| Discovery cut-off | | 10/22/07 |
| Last date to Amend Pleadings or Add Parties | | Closed |

### ADDITIONAL MATTERS TO BE DETERMINED AT SCHEDULING CONFERENCE

LR 16-14.4 Settlement Selection:
to be discussed

☐ 1. CT/USMJ                    ☑ 3. Outside ADR

☐ 2. Attorney Settlement Panel                    ☐

DOE Dismissal:                    Complaint Filed:  04/13/05                    SET DATE

Dismissal Date:                    to be discussed

# EXHIBIT 5

RECEIVED

JUL 1 6 2007

1   DALE M. CENDALI (admitted *pro hac vice*)
    DIANA M. TORRES (S.B. #162284)
2   JAMES P. JENAL (S.B. #180190)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, CA 90071-2899
4   Telephone: (213) 430-6000
    Facsimile: (213) 430-6407
5
6   Attorneys for MGA Entertainment, Inc., MGA
    Entertainment (HK) Ltd., Isaac Larian and MGAE
7   de México, S.R.L. de C.V.

8   MICHAEL H. PAGE (S.B. #154913)
    KEKER & VAN NEST LLP
9   710 Sansome Street
    San Francisco, CA 94111
10  Telephone: (415) 391-5400
    Facsimile: (415) 397-7188

11  Attorneys for Carter Bryant

12  JOHN B. QUINN (S.B. #090378)
    MICHAEL T. ZELLER (S.B. #196417)
13  QUINN EMANUEL URQUHART OLIVER &
    HEDGES, LLP
14  865 South Figueroa Street - 10th Floor
    Los Angeles, California 90017-2543
15  Telephone: (213) 443-3000
    Facsimile: (213) 443-3100
16
17  Attorneys for Mattel, Inc.

18              UNITED STATES DISTRICT COURT

19            CENTRAL DISTRICT OF CALIFORNIA

20                    EASTERN DIVISION

21

22  CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
                                          (consolidated with CV 04-9059 & 05-
23                    Plaintiff,          2727)

24       v.                               STIPULATION TO CONTINUE
                                          PHASE ONE TRIAL DATE AND
25  MATTEL, INC., a Delaware              SCHEDULE; AND
    Corporation,
26                                        [PROPOSED] ORDER
                      Defendant.
27
    AND CONSOLIDATED CASES
28

501164 v2

c 7 | 40 | c 7

1      WHEREAS, the Court has entered an Order dated July 2, 2007,

2  bringing a number of claims previously set for trial in Phase Two of this action into

3  Phase One;

4      WHEREAS, in light of this Order and the amount of discovery the

5  parties must take to prepare for the Phase One trial, the parties believe that

6  adjustments to the presently scheduled trial and pre-trial dates are appropriate;

7      WHEREAS, the Court previously ordered the following trial and pre-

8  trial dates for the Phase One trial:

9         Initial expert reports due – August 27, 2007;

10        Rebuttal expert report due – September 17, 2007;

11        Fact and expert discovery cut-off – October 22, 2007;

12        Dispositive motions hearing – November 19, 2007;

13        Last date for settlement conference – December 3, 2007;

14        Pretrial documents due – December 31, 2007;

15        Pretrial conference – January 14, 2008;

16        Motion in limine hearing – February 4, 2008;

17        Trial – February 12, 2008;

18     WHEREAS, the parties now seek to continue these dates to allow

19  adequate time for discovery and trial preparation; and

20      WHEREAS, the parties would prefer a July 1, 2008 Phase One trial

21  date but have also negotiated a pretrial schedule with an April trial date based on

22  the Court's statement that the Court is unlikely to entertain a continuance of the

23  Phase One trial past April 2008;

24

25

26

27

28

1      NOW, THEREFORE, MGA Entertainment, Inc., MGA Entertainment

2   (HK) Ltd., MGAE de México, S.R.L. de C.V., Isaac Larian, Carter Bryant and

3   Mattel, by and through their respective counsel of record, and subject to this

4   Court's approval, hereby stipulate and agree that for the Phase One trial one of the

5   following two alternative schedules shall apply:

6

7      **If trial commences in April 2008:**

8         1.    Initial expert reports shall be due January 21, 2008;

9         2.    Rebuttal expert reports shall be due February 22, 2008;

10        3.    Expert discovery cut-off shall be March 21, 2008;

11        4.    Fact discovery cut-off shall be January 14, 2008;

12        5.    Last date for settlement conference shall be March 3, 2008;

13        6.    Last date to hear dispositive motions shall be March 17, 2008;

14        7.    Pretrial documents filing deadline shall be March 17, 2008;

15        8.    Pretrial conference shall be April 7, 2008;

16        9.    Motions in limine hearing shall be April 21, 2008; and

17       10.    Trial shall commence on April 29, 2008.

18

19   **OR**

20

21      **If trial commences in July 2008:**

22        1.    Initial expert reports shall be due January 28, 2008;

23        2.    Rebuttal expert reports shall be due March 7, 2008;

24        3.    Expert discovery cut-off shall be April 11, 2008;

25        4.    Fact discovery cut-off shall be January 21, 2008;

26        5.    Last date for settlement conference shall be May 5, 2008;

27        6.    Last date to hear dispositive motions shall be May 12, 2008;

28        7.    Pretrial documents filing deadline shall be May 19, 2008;

1    8.    Pretrial conference shall be June 2, 2008;

2    9.    Motions in limine hearing shall be June 23, 2008; and

3    10.   Trial shall commence on July 1, 2008.[1]

4

5         IT IS SO STIPULATED.

6    Dated:    July _13_, 2007       O'MELVENY & MYERS LLP

7

8                                    By: _Dale Cendali_  /AML/
9                                         Dale Cendali
                                         Attorneys for MGA Entertainment, Inc.,
10                                        MGA Entertainment (HK) Ltd., MGAE
                                         de México, S.R.L. de C.V. and Isaac
11                                        Larian

12   Dated:    July _13_, 2007       KEKER & VAN NEST LLP

13

14                                   By: _Michael H. Page_  /AML/
                                         Michael H. Page
15                                       Attorneys for Carter Bryant

16   Dated:    July _13_, 2007       QUINN EMANUEL URQUHART
                                     OLIVER & HEDGES, LLP
17

18                                   By: _Michael T. Zeller_  /AML/
19                                       Michael T. Zeller
                                         Attorneys for Mattel, Inc.

20

21

22

23

24

25

26

27   [1] As was discussed at the July 2, 2007 hearing, the parties wish to advise the Court
     that John Keker, lead trial counsel for defendant Carter Bryant, is currently
28   scheduled to commence trial in another matter on June 23, 2008.

                                                 STIPULATION TO CONTINUE PHASE ONE
     07209/2161546.2              - 4 -          TRIAL DATES CV 04-09049 SGL (RNBX)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# [PROPOSED] ORDER

The foregoing stipulation to continue the dates for the Phase One trial is GRANTED as follows:

1.   Initial expert reports shall be due January 21, 2008;

2.   Rebuttal expert reports shall be due February 22, 2008;

3.   Expert discovery cut-off shall be March 21, 2008;

4.   Fact discovery cut-off shall be January 14, 2008;

5.   Last date for settlement conference shall be March 3, 2008;

6.   Last date to hear dispositive motions shall be March 17, 2008;

7.   Pretrial documents filing deadline shall be March 17, 2008;

8.   Pretrial conference shall be April 7, 2008;

9.   Motions in limine hearing shall be April 21, 2008; and

10.  Trial shall commence on April 29, 2008.

## OR

1.   Initial expert reports shall be due January 28, 2008;

2.   Rebuttal expert reports shall be due March 7, 2008;

3.   Expert discovery cut-off shall be April 11, 2008;

4.   Fact discovery cut-off shall be January 21, 2008;

5.   Last date for settlement conference shall be May 5, 2008;

6.   Last date to hear dispositive motions shall be May 12, 2008;

7.   Pretrial documents filing deadline shall be May 19, 2008;

8.   Pretrial conference shall be June 2, 2008;

9.   Motions in limine hearing shall be June 23, 2008; and

07209/2161546.2

- 5 -

STIPULATION TO CONTINUE PHASE ONE
TRIAL DATES CV 04-09049 SGL (RNBX)

1

2       10.   Trial shall commence on July 1, 2008.

3

4       IT IS SO ORDERED.

5

6   Dated: _____     _____

7                                                Hon. Stephen G. Larson
                                               United States District Court Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2161546.2            - 6 -          STIPULATION TO CONTINUE PHASE ONE

**PROOF OF SERVICE**

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, Nineteenth Floor, Los Angeles, California 90067.

     On July 13, 2007, I served the foregoing document(s) described as:

STIPULATION TO CONTINUE PHASE ONE TRIAL DATE AND SCHEDULE; AND [PROPOSED] ORDER

on the interested parties to this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

| | |
|---|---|
| John W. Keker, Esq. | John B. Quinn, Esq. |
| Michael H. Page, Esq. | Michael T. Zeller, Esq. |
| Christa M. Anderson, Esq. | Jon D. Corey, Esq. |
| KEKER & VAN NEST LLP | Duane R. Lyons, Esq. |
| 710 Sansome Street | QUINN EMANUEL URQUHARD |
| San Francisco, CA 94111 |   OLIVER & HEDGES, LLP |
| Fax No.: (415) 397-7188 | 865 S. Figueroa St., 10th Floor |
| | Los Angeles, CA 90017 |
| | Fax No.: (213) 443-3100 |

☒  (BY MAIL)   I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service.  This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California.  Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐  (BY OVERNIGHT DELIVERY SERVICE)  I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows.  I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

☐  (BY PERSONAL SERVICE)   I caused such envelope to be delivered by hand to the offices of the above named addressee(s).

☒  (BY FACSIMILE)   I caused such documents to be delivered via facsimile to the offices of the addressee(s) at the facsimile numbers listed above.

     Executed this 13th day of July, 2007, at Los Angeles, California.

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Erika M. Barbour

# EXHIBIT 6

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES – GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                    Date: July 13, 2007

Title:    CARTER BRYANT -v- MATTEL, INC.
===========================================================================
PRESENT: HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                          None Present
        Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:    ATTORNEYS PRESENT FOR DEFENDANTS:

None present                         None present

PROCEEDINGS:    ORDER CONTINUING PREVIOUSLY SCHEDULED DATES FOR PHASE
                ONE

        The Court having received and reviewed the parties' Stipulation to Continue Phase One
Trial Date and Schedule, hereby **ORDERS** that the trial date and schedule for Phase One is
continued to the following:

| | | |
|---|---|---|
| Jury Trial Date | 9:30 am | April 29, 2008 |
| Hearing on Motions in Limine; Hearing on Disputed Jury Instructions | 10:00 am | April 21, 2008 |
| Final Pretrial Conference, Motions in Limine to be filed | 11:00 am | April 7, 2008 |
| Lodge Pretrial Conference Order, File Contentions of Fact and Law, Exhibit & Witness Lists, File Status Report regarding Settlement, File Rule 26(e)(1) Supplementation, File Agreed Upon Set of Jury Instructions and | | March 24, 2008 |

MINUTES FORM 90
CIVIL – GEN                              1

                                         Initials of Deputy Clerk  Jh

7-13-07

CV 04-09049 SGL(RNBx)
CARTER BRYANT v MATTEL, INC.
MINUTE ORDER of July 13, 2007

    Verdict Forms,
    File Joint Statement regarding Disputed
    Instructions, Verdicts, etc.,

| | | |
|---|---|---|
| Last date to conduct Settlement Conference | | March 3, 2008 |
| Last date for hearing motions | 10:00 am | March 10, 2008 |
| Expert Discovery cut-off | | March 7, 2008 |
| Initial expert reports due | | January 21, 2008 |
| Rebuttal expert reports due | | February 27, 2008 |
| Fact Discovery cut-off | | January 14, 2008 |

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk

# EXHIBIT 7

# PRIORITY SEND

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
### CIVIL MINUTES -- GENERAL

| | |
|---|---|
| Case No.  CV 04-09049 SGL(RNBx) | Date: October 31, 2007 |
| Title:    CARTER BRYANT -v- MATTEL, INC.<br>          AND CONSOLIDATED ACTIONS | |

==========================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

| Jim Holmes | Theresa Lanza |
|---|---|
| Courtroom Deputy Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR CARTER BRYANT: | ATTORNEYS PRESENT FOR MATTEL: |
|---|---|
| Christa Martine Anderson<br>Matthew M. Werdegar | John Quinn<br>Jon D. Corey<br>Michael T. Zeller |
| ATTORNEYS PRESENT FOR MGA: | ATTORNEY PRESENT FOR CARLOS GUSTAVO MACHADO GOMEZ: |
| Thomas J. Nolan<br>Carl A. Roth | Alexander H. Cote |

PROCEEDINGS:    **ORDER REGARDING STATUS CONFERENCE**

The Court held a status conference to consider the current schedule set for Phase 1 of the consolidated cases as well as the issue of the selection of a settlement officer for both Phase 1 and Phase 2 of the consolidated cases.

For reasons discussed on the record, the Court enters a two-week STAY in these actions, beginning November 1, 2007, and continuing through November 14, 2007. During that time, the parties shall serve no discovery requests (including subpoenas) on parties or third parties. The obligation to respond to any outstanding discovery requests is likewise suspended for that time frame. No depositions shall be conducted during this time. The matters to be heard before Judge Infante, the discovery master herein, are to be rescheduled to a date determined by Judge Infante,

| MINUTES FORM 90 | Initials of Deputy Clerk __jh_____ |
|---|---|
| CIVIL -- GEN | Time: 00/20 |

1

provided, however, that such date is no earlier than November 26, 2007, and that no opposition or reply papers may be required to be filed during the pendency of the stay.

The Court CONTINUES the November 19, 2007, hearing on the Motion For Leave to Serve A Supplemental Interrogatory to December 3, 2007, at 10:00 a.m.

The current schedule regarding Phase 1 of the trial in these consolidated actions is modified as follows:

| | |
|---|---|
| Fact discovery cutoff: | 01/28/08 |
| Initial Expert Reports: | 02/11/08 |
| Rebuttal Expert Reports: | 03/17/08 |
| Last date for settlement conference: | VACATED (see below for Court's directive regarding mandatory settlement procedures) |
| Expert discovery cutoff: | 03/31/08 |
| Dispositive Motions hearing cutoff: | 03/31/08 @ 10:00 a.m. |
| Pretrial conference order and associated trial documents including proposed jury instructions: | 04/21/08 |
| Filing of Motions in Limine: | 05/05/08 |
| Pretrial conference: | 05/05/08 @ 11:00 a.m. |
| Hearing on Motions in Limine and Jury Instructions: | 05/19/08 @ 11:00 a.m. |
| Trial: | 05/27/08 @ 9:00 a.m. |

The schedule for Phase 2, previously set by the Court by Order filed February 22, 2007, in the case captioned MGA Entertainment, Inc. v. Mattel, Inc., et al., CV 05-02727, is VACATED. The Court will consider the scheduling of Phase 2 at a later date. However, the Court DENIES MGA's request to delay or otherwise bifurcate discovery regarding Phase 2 issues.

At the status conference, the parties acknowledged on the record their mutual agreement to the selection of Ambassador Pierre-Richard Prosper as the settlement officer for these

consolidated cases, and the Court hereby APPOINTS him in that capacity.  Counsel are directed to contact Ambassador Prosper to schedule a settlement conference on or before December 1, 2007. The settlement conference is to be directed towards resolution of both phases of this litigation. Counsel are ORDERED to carefully and diligently follow Ambassador Prosper's directions concerning preparation for and conduct at any settlement conferences.  The parties will be jointly responsible for paying the Ambassador's reasonable and customary rate for services rendered.  A failure to comply with this order, or a failure to provide reasonable compensation to the Settlement Officer upon completion of the mediation, may result in the imposition of appropriate sanctions. Ambassador Prosper is directed to provide a status report to the Court following the conclusion of the settlement efforts.

IT IS SO ORDERED.

c:     Judge Infante
       Ambassador Prosper

# EXHIBIT 8

Case 2:04-cv-09049-DOC-RNB   Document 2080-3   Filed 02/12/08   Page 32 of 141   Page ID
#:32160
Case 2:04-cv-09049-SGL-RNB   Document 1700   Filed 01/28/2008   Page 1 of 4

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100

7
   Attorneys for Mattel, Inc.
8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                        EASTERN DIVISION

12 | CARTER BRYANT, an individual,      | Case No. CV 04-09049 SGL (RNBx)
13 |              Plaintiff,             |
14 |        vs.                         | Consolidated with
   |                                    | Case No. CV 04-09059
15 | MATTEL, INC., a Delaware            | Case No. CV 05-02727
   | corporation,                       |
16 |                                    | Hon. Stephen G. Larson
   |              Defendant.             |
17 |                                    | STIPULATION RE: THE
   |                                    | DEPOSITION OF RON BRAWER;
18 |                                    |
   | AND CONSOLIDATED CASES             | [[Proposed] Order filed concurrently
19 |                                    | herewith]
   |                                    |
20 |                                    | **Phase 1:**
   |                                    | Discovery Cut-off:    January 28,
21 |                                    | 2008
   |                                    | Pre-trial Conference: May 5, 2008
22 |                                    | Trial Date:           May 27, 2008

23

24

25

26

27

28

07209/2368554.2

STIPULATION RE: DEPOSITION                                    RAWER

1

## STIPULATION

2        WHEREAS, by Order dated January 7, 2008, the Court granted Mattel,

3  Inc.'s Motion for Additional Discovery, including with respect to Ron Brawer; and

4        WHEREAS, Mattel noticed the deposition of Ron Brawer on January

5  10, 2008 for January 24, 2008.

6        NOW, THEREFORE, Mr. Brawer and the parties agree as follows,

7  subject to the Court's approval:

8        1.    Ron Brawer shall appear for deposition on February 5, 2008,

9  beginning at 9:30 a.m. at 40 Front Street, Canary Wharf, London, England.

10  ///

11  ///

12

13  ///

14  ///

15  ///

16

17  ///

18  ///

19  ///

20

21  ///

22  ///

23  ///

24

25  ///

26

27

28

07209/2368554.2

-2-

STIPULATION RE: DEPOSITION OF RON BRAWER

1       2.    A motion to compel pursuant to F.R.C.P. Rule 37(a)(2)(B) or pursuant

2 to F.R.C.P. Rules 30(a)(1) and 45 with respect to Mr. Brawer's deposition will be

3

4 considered timely even if brought after the Phase 1 discovery cut-off date and

5 notwithstanding the Court's Order of January 7, 2008.

6

7              IT IS SO STIPULATED.

8

9 DATED:  January __, 2008      SKADDEN, ARPS, SLATE, MEAGHER &

10                             FLOM, LLP

11

12                      By _Jack DiCanio /tmb_

13                       Jack P. DiCanio

                         Attorneys for Ron Brawer

14

15 DATED:  January 25, 2008     QUINN EMANUEL URQUHART OLIVER &

16                             HEDGES, LLP

17

18                      By _Dominic Surprenant_

19                       Dominic Surprenant

                         Attorneys for Mattel, Inc.

20 DATED:  January __, 2008      SKADDEN, ARPS, SLATE, MEAGHER &

21                             FLOM, LLP

22

23                      By _Thomas Nolan /ks_

24                       Thomas Nolan

                         Attorneys for MGA Entertainment, Inc.,

25                          MGAE de Mexico, S.R.L. de C.V., MGA

26                          Entertainment (HK) Limited, and Isaac

27                          Larian

28

07209/2368554.2

-3-

DATED: January ___, 2008          KEKER & VAN NEST, LLP


                                  By _Michael Page / dts_
                                     Michael Page
                                     Attorneys for Carter Bryant

DATED: January 28 2008            OVERLAND BORENSTEIN SCHEPER &
                                  KIM LLP


                                  By _Mark E. Ou___
                                     Mark E. Overland
                                     Attorneys for Carlos Gustavo Machado
                                     Gomez

07209/2368554.2

-4-

STIPULATION RE: DEPOSITION OF RON BRAWER

# EXHIBIT 9

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8
   Attorneys for Plaintiff and Cross-Defendant Mattel, Inc.
9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                  EASTERN DIVISION

13  CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)

14              Plaintiff,
                                         Consolidated with
15       vs.                             Case No. CV 04-09059
                                         Case No. CV 05-02727
16  MATTEL, INC., a Delaware
    corporation,                          Hon. Stephen G. Larson
17
                Defendant.               STIPULATION RE: THE
18                                       DEPOSITION OF FARHAD
                                         LARIAN;
19
    AND CONSOLIDATED CASES               [[Proposed] Order filed concurrently
20                                       herewith]

21                                       Phase 1:
22                                       Discovery Cut-off:    January 28,
                                         2008
23                                       Pre-trial Conference: May 5, 2008
                                         Trial Date:          May 27, 2008
24
                                         Phase 2:
25                                       Discovery Cut-off:    N/A
                                         Pre-trial Conference: N/A
26                                       Trial Date:          N/A

27

28

07209/2364500.2

                          STIPULATION RE: DEPOSITION OF F. LARIAN

## STIPULATION

1          WHEREAS, Mattel noticed the deposition of Farhad Larian on

September 4, 2007 for October 1, 2007;

         WHEREAS, Mr. Larian originally represented that he was available in

November 2007;

         WHEREAS, the Court imposed two discovery stays in October and

November 2007 at MGA's request;

         WHEREAS, in discussions after the last stay was lifted, the first date

when Mr. Larian and the parties are available is February 4, 2008, which is after the

Phase 1 discovery cut-off; and

         WHEREAS, the parties are willing to accommodate Mr. Larian's and

each other's schedule, provided that the parties are not prejudiced by Mr. Larian's

appearance after the January 28, 2008 Phase 1 discovery cut-off date and provided

that no party objects to the use of Mr. Larian's testimony on the ground that it was

taken after the Phase 1 discovery cut-off date.

         NOW, THEREFORE, Mr. Larian and the parties agree as follows,

subject to the Court's approval:

         1.       Mattel will take the deposition of Farhad Larian on February 4,

2008, beginning at 9:30 a.m. at the offices of Quinn Emanuel Urquhart Oliver &

Hedges, LLP, 865 S. Figueroa St., Los Angeles, California 90017.

         2.       Mr. Larian's deposition testimony may be used as provided by

F.R.C.P. Rule 32 in Phase 1, notwithstanding the Phase 1 discovery cut-off date.

         3.       A motion to compel pursuant to F.R.C.P. Rule 37(a)(2)(B) or

pursuant to F.R.C.P. Rules 30(a)(1) and 45 with respect to Mr. Larian's deposition

will be considered timely even if brought after the Phase 1 discovery cut-off date.

Case 2:04-cv-09049-DOC-RNB   Document 2080-3   Filed 02/12/08   Page 39 of 141   Page ID
#:32187
Case 2:04-cv-09049-SGL-RNB   Document 1614   Filed 01/24/2008   Page 3 of 6

1    IT IS SO STIPULATED.

2

3    DATED: January 23 2008        CHRISTENSEN, GLASER, FINK, JACOBS,

4                                  WEIL & SHAPIRO, LLP

5

6                                  By _Alisa Morgenthaler Lever Lever_

7                                     Alisa Morgenthaler-Lever, Esq.
                                      Attorneys for Farhad Larian

8

9    DATED: January ___, 2008      QUINN EMANUEL URQUHART OLIVER &

10                                 HEDGES, LLP

11

12                                 By_____

13                                    Jon D. Corey
                                      Attorneys for Mattel, Inc.

14

15   DATED: January ___, 2008      KEKER & VAN NEST, LLP

16

17

18                                 By_____

19                                    Michael Page
                                      Attorneys for Carter Bryant

20

21   DATED: January ___, 2008      SKADDEN, ARPS, SLATE, MEAGHER &

22                                 FLOM, LLP

23                                 By_____

24                                    Thomas Nolan

25                                    Attorneys for MGA Entertainment, Inc.,
                                      MGAE de Mexico, S.R.L. de C.V., MGA

26                                    Entertainment (HK) Limited, and Isaac

27                                    Larian

28

07209/2364500.2
                                              -3-
                                   STIPULATION RE: DEPOSITION OF FARHAD LARIAN

Case 2:04-cv-09049-DOC-RNB   Document 2080-3   Filed 02/12/08   Page 40 of 141   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 1634   Filed 01/24/2008   Page 4 of 6
#:52164

1    IT IS SO STIPULATED.

2

3    DATED: January __, 2008        CHRISTENSEN, GLASER, FINK, JACOBS,
                                     WEIL & SHAPIRO, LLP
4

5

6                                   By_____
                                         Alisa Morgenthaler-Lever, Esq.
7                                        Attorneys for Farhad Larian

8

9    DATED: January 23, 2008        QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
10

11

12                                  By_____
                                         Jon D. Corey
13                                       Attorneys for Mattel, Inc.

14

15
     DATED: January __, 2008        KEKER & VAN NEST, LLP
16

17

18                                  By_____
                                         Michael Page
19                                       Attorneys for Carter Bryant

20
     DATED: January __, 2008        SKADDEN, ARPS, SLATE, MEAGHER &
21                                   FLOM, LLP

22

23                                  By_____
                                         Thomas Nolan
24                                       Attorneys for MGA Entertainment, Inc.,
                                         MGAE de Mexico, S.R.L. de C.V., MGA
25                                       Entertainment (HK) Limited, and Isaac
                                         Larian
26

27

28

Case 2:04-cv-09049-DOC-RNB  Document 2080-3  Filed 02/12/08  Page 41 of 141  Page ID
#:32189
Case 2:04-cv-09049-SGL-RNB  Document 1634  Filed 01/24/2008  Page 5 of 6

1    IT IS SO STIPULATED.

2

3   DATED: January __, 2008          CHRISTENSEN, GLASER, FINK, JACOBS,
                                     WEIL & SHAPIRO, LLP
4

5
                                     By_____
6                                       Alisa Morgenthaler-Lever, Esq.
7                                       Attorneys for Farhad Larian

8

9   DATED: January __, 2008          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
10

11
                                     By_____
12                                      Jon D. Corey
13                                      Attorneys for Mattel, Inc.

14

15  DATED: January 23, 2008          KEKER & VAN NEST, LLP
16

17
                                     By_____
18                                      Michael Page
19                                      Attorneys for Carter Bryant

20
    DATED: January __, 2008          SKADDEN, ARPS, SLATE, MEAGHER &
21                                   FLOM, LLP

22

23
                                     By_____
24                                      Thomas Nolan
                                        Attorneys for MGA Entertainment, Inc.,
25                                      MGAE de Mexico, S.R.L. de C.V., MGA
26                                      Entertainment (HK) Limited, and Isaac
                                        Larian
27

28

07209/2364500.2
                                     -3-
                                     STIPULATION RE: DEPOSITION OF FARHAD LARIAN

1    IT IS SO STIPULATED.

2

3    DATED: January __, 2008        CHRISTENSEN, GLASER, FINK, JACOBS,
4                                   WEIL & SHAPIRO, LLP

5

6                                   By _____
7                                      Alisa Morgenthaler-Lever, Esq.
                                       Attorneys for Farhad Larian
8

9    DATED: January __, 2008        QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
10

11

12                                  By _____
                                       Jon D. Corey
13                                     Attorneys for Mattel, Inc.

14

15   DATED: January __, 2008        KEKER & VAN NEST, LLP

16

17

18                                  By _____
                                       Michael Page
19                                     Attorneys for Carter Bryant

20   DATED: January 23 2008         SKADDEN, ARPS, SLATE, MEAGHER &
21                                  FLOM, LLP

22

23                                  By _Tom Nolan /for_____
24                                     Thomas Nolan
                                       Attorneys for MGA Entertainment, Inc.,
25                                     MGAE de Mexico, S.R.L. de C.V., MGA
                                       Entertainment (HK) Limited, and Isaac
26                                     Larian

27

28

07209/2364500.2                        -3-
                                       STIPULATION RE: DEPOSITION OF FARHAD LARIAN

# EXHIBIT 10

KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                          Plaintiff,<br><br>     v.<br><br>MATTEL, INC. a Delaware<br>Corporation,<br><br>                          Defendant.<br><br>CONSOLIDATED WITH MATTEL,<br>INC., v. BRYANT and MGA<br>ENTERTAINMENT, INC. v.<br>MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx)<br>(consolidated with CV 04-9059 & 05-2727<br><br>**STIPULATION REGARDING<br>EXTENSION OF TIME TO<br>RESPOND AND OBJECT TO<br>REQUESTS FOR ADMISSION**<br><br>**[Proposed Order filed concurrently]**<br><br>Dept:     Courtroom 1<br>Judge:    Hon. Stephen G. Larson<br><br>Date Comp. Filed: April 13, 2005<br><br>Discovery Cut-Off: Jan. 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

1

410089.01

410118.01

1    WHEREAS, Mattel, Inc. ("Mattel") served the following sets of Requests

2  for Admission ("RFAs"):  (i) Mattel's Second Set of Requests for Admission

3  Propounded to All Defendants ("Second Set to All Defendants"); (ii) Mattel's

4  Third Set of Requests for Admission Propounded to All Defendants ("Third Set to

5  All Defendants"); (iii) Mattel's Fourth Set of Requests for Admission Propounded

6  to All Defendants ("Fourth Set to All Defendants"); and (iv) Mattel's First Set of

7  Requests for Admission Propounded to MGA Entertainment, Inc., Carter Bryant,

8  MGA Entertainment (HK) Limited, and Isaac Larian; and

9    WHEREAS, Carter Bryant's responses to the above-referenced RFAs are

10  currently due as follows:  (i) responses to Second Set to All Defendants are

11  currently due January 25, 2008; (ii) responses to Third Set to All Defendants are

12  currently due January 25, 2008; (iii) responses to Fourth Set to All Defendants are

13  currently due January 28, 2008; and (iv) responses to Mattel's First Set of Requests

14  for Admission Propounded to MGA Entertainment, Inc., Carter Bryant, MGA

15  Entertainment (HK) Limited, and Isaac Larian are currently due January 28, 2008;

16  and

17    WHEREAS, the Phase I fact discovery cut-off is January 28, 2008; and

18    WHEREAS, the MGA Defendants and Isaac Larian have requested, and

19  Mattel has agreed, to extend such Defendants' time to respond to the above-

20  referenced RFAs, under a separate stipulation; and

21    WHEREAS, Bryant has requested, and Mattel is agreeable to, an extension

22  of time to and including February 4, 2008 for Bryant to serve his responses and

23  objections to the First Set to All Defendants, the Second Set to All Defendants, the

24  Third Set to All Defendants and Mattel's First Set of Requests for Admission

25  Propounded to MGA Entertainment, Inc., and

26    WHEREAS, Bryant agrees that this extension of time should not prejudice

27  Mattel's ability to make a motion directed to the sufficiency of his responses to

28

1    these discovery requests, should the need arise, and, thus, has agreed to extend any
2    deadline for Mattel to make a motion directed to the sufficiency of those responses
3    by 10 calendar days.

4        THEREFORE, the undersigned parties, through their undersigned counsel,
5    stipulate and agree as follows:

6        1.    The time for Bryant to serve his responses and objections to the
7    following Requests for Admission is extended to and including February 4, 2008:

8            (a)    Mattel's Second Set of Requests for Admission Propounded to
9    All Defendants;

10           (b)    Mattel's Third Set of Requests for Admission Propounded to
11   All Defendants;

12           (c)    Mattel's Fourth Set of Requests for Admission Propounded to
13   All Defendants; and

14           (d)    Mattel's First Set of Requests for Admission Propounded to
15   MGA Entertainment, Inc., Carter Bryant, MGA Entertainment (HK) Limited, and
16   Isaac Larian.

17       2.    Any limitation on the time for Mattel to file a motion directed to the
18   sufficiency of Bryant's responses to the Requests for Admission identified in
19   paragraph 1 will be extended by 10 calendar days.

20       IT IS SO STIPULATED.

21

22   DATED:  January 25, 2008          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
23

24
                                       By  /s/ Michael Zeller
25                                         Concurrence Obtained General Order 45
26                                         X.B.
                                           Michael Zeller
27                                         Attorneys for Mattel, Inc.

28

3

Case 2:04-cv-09049-DOC-RNB   Document 2080-3   Filed 02/12/08   Page 47 of 141   Page ID
#:52175
Case 2:04-cv-09049-SGL-RNB   Document 1653   Filed 01/25/2008   Page 4 of 4

1  DATED:  January 25, 2008      KEKER & VAN NEST, LLP

2

3                            By  /s/ *Christa M. Anderson*

4                              Christa M. Anderson

5                              Attorneys for Carter Bryant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION REGARDING EXTENSION OF TIME TO RESPOND AND OBJECT TO REQUESTS FOR
ADMISSION
CASE NO. CV 04-09049 S

410089.01

410118.01

# EXHIBIT 11

Case 2:04-cv-09049-DOC-RNB  Document 2080-3  Filed 02/12/08  Page 49 of 141  Page ID
#:52179
Case 2:04-cv-09049-SGL-RNB  Document 1696  Filed 01/28/2008  Page 1 of 3

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2 |   johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3 |   (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4 |   (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5 |   (timalger@quinnemanuel.com)
      Juan Pablo Albán (Bar No. 218144)
6 |   juanpabloalban@quinnemanuel.com
      865 South Figueroa Street, 10th Floor
7 | Los Angeles, California 90017-2543
      Telephone: (213) 443-3000
8 | Facsimile: (213) 443-3100

9 | Attorneys for Plaintiff and Cross-
      Defendant Mattel, Inc.

10 |

11 |              UNITED STATES DISTRICT COURT

12 |             CENTRAL DISTRICT OF CALIFORNIA

13 |                   EASTERN DIVISION

14 | CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

15 |            Plaintiff,                   Consolidated with Case No. 04-9059
                                            and Case No. 05-2727
16 |       vs.
                                            Hon. Stephen G. Larson
17 | MATTEL, INC., a Delaware
     corporation,
18 |                                        STIPULATION REGARDING
                Defendant.                  EXTENSION OF TIME TO MOVE TO
19 |                                        COMPEL RESPONSES TO MATTEL,
                                            INC.'S FIFTH SET OF REQUESTS
20 | AND CONSOLIDATED ACTIONS               FOR ADMISSION TO CARTER
                                            BRYANT
21 |
                                            Phase 1:
22 |                                        Discovery Cut-Off: January 28, 2008
                                            Pre-Trial Conference: May 5, 2008
23 |                                        Trial Date: May 27, 2008

24 |

25 |

26 |

27 |

28 |

07209/2369009.11                    STIPULATION

1    WHEREAS, Mattel, Inc. ("Mattel") served its Fifth Set of Requests for
2  Admission to Carter Bryant ("Bryant") on June 8, 2007; and
3    WHEREAS, Mattel contends that Bryant's Second Supplemental and
4  Amended Responses to Request Nos. 42 - 45 are inadequate;
5    WHEREAS, Bryant has stipulated to serve amended and/or
6  supplemental responses to Request Nos. 42 - 45 by February 4, 2008;
7    WHEREAS, the Phase I fact discovery cut-off is January 28, 2008; and
8    WHEREAS, the parties have agreed that Mattel shall have the right to
9  make a motion directed to the sufficiency of Bryant's responses to Request Nos. 42 -
10  45 should the need arise.
11    THEREFORE, Bryant and Mattel, through their undersigned counsel,
12  stipulate and agree as follows:
13    1.    Bryant will serve amended and/or supplemental responses to
14  Request Nos. 42 - 45 by February 4, 2008; and
15    2.    Mattel shall have the right to file a motion directed to the
16  sufficiency of Carter Bryant's responses to Request Nos. 42 - 45 of Mattel's Fifth Set
17  of Requests for Admission within 10 days after service of Bryant's supplemental
18  and/or amended responses.
19
20    IT IS SO STIPULATED.
21  DATED: January 27, 2008    KEKER AND VAN NEST
22
23    By John Trinidad /s/
24    John Trinidad
    Attorneys for CARTER BRYANT
25
26
27
28

07209/2369009.1

-2-
STIPULATION

Case 2:04-cv-09049-DOC-RNB   Document 2080-3   Filed 02/12/08   Page 51 of 141   Page ID
#:32179
Case 2:04-cv-09049-SGL-RNB   Document 1696   Filed 01/28/2008   Page 3 of 3

1  DATED:  January 27, 2008          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
2

3                                     By  B. Dylan Proctor/
4                                        B. Dylan Proctor
                                         Attorneys for Plaintiff and Cross-Defendant
5                                        Mattel, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 12

1  THOMAS J. NOLAN (Bar No. 66992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:  (213) 687-5600
4  E-mail:     tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No. 40892)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  Four Embarcadero Center, 38th Floor
   San Francisco, California 94111-5974
7  Telephone:  (415) 984-6400
   Facsimile:  (415) 984-2698
8  E-mail:     rkennedy@skadden.com

9  Attorneys for MGA Entertainment, Inc.,
   MGA Entertainment (HK) Limited,
10 MGAE De Mexico, S.R.L. De C.V., and ISAAC LARIAN

11            UNITED STATES DISTRICT COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13                  EASTERN DIVISION

14 | CARTER BRYANT, an individual,  ) CASE NO. CV 04-9049 SGL (RNBx)
                                    )
15 |          Plaintiff,            ) Consolidated with Case No. 04-9059
                                    ) and Case No. 05-2727
16 |    v.                          )
                                    ) **DISCOVERY MATTER**
17 | MATTEL, INC., a Delaware       )
     corporation,                   ) [To be heard by Discovery Master
18 |                                ) Hon. Edward A. Infante (Ret.)]
                                    )
19 |          Defendant.            ) **MGA'S MEMORANDUM OF**
                                    ) **POINTS AND AUTHORITIES IN**
20 |_____ ) **OPPOSITION TO MATTEL'S**
                                    ) **MOTION TO COMPEL**
21 | Consolidated with MATTEL, INC. v. ) **PRODUCTION OF DOCUMENTS**
     BRYANT and MGA                 ) **BY MGA IN RESPONSE TO**
22 | ENTERTAINMENT, INC. v.         ) **MATTEL'S FIFTH SET OF**
     MATTEL, INC.                   ) **REQUESTS FOR DOCUMENTS**
23 |                                ) **AND THINGS TO MGA**
                                    )
24 |                                ) [Declaration of Philip W. Marsh
                                    ) filed concurrently herewith]
25 |
                                      Date:  TBD
26 |                                   Time:  TBD
                                      Place: TBD
27 |

28 |

_____

MGA'S OPPOSITION TO MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA IN
RESPONSE TO MATTEL'S FIFTH SET OF REQUESTS FOR DOCUMENTS AND THINGS TO MGA

Case 2:04-cv-09049-DOC-RNB   Document 2080-3   Filed 02/12/08   Page 54 of 141   Page ID
#:52192
Case 2:04-cv-09049-SGL-RNB   Document 1993   Filed 02/07/2008   Page 2 of 18

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES ........................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

I.     PRELIMINARY STATEMENT ................................................. 1

II.    STATEMENT OF FACTS ....................................................... 3

    A.    MGA Responded to Mattel's Fifth Set of Document Requests in a Timely Manner with Specific Objections Tailored to the Shortcomings of Each Request. ........................................ 3

    B.    In Violation of the Discovery Master Order, the Federal Discovery Rules and the Local Rules, Mattel Filed the Present Motion on the Last Day of Discovery Without Initiating a Timely Meet and Confer. ................................................ 4

III.   ARGUMENT ..................................................................... 5

    A.    The Discovery Master Should Deny Mattel's Motion Because Mattel Failed to Comply with the Discovery Master Order, the Federal Rules of Civil Procedure and the Local Rules. .................... 5

    B.    The Discovery Master Should Deny Mattel's Motion Because Mattel Has Failed to Show It Is Entitled to the Requested Discovery and Mattel's Requests are Overly Broad and Seek Irrelevant and Cumulative Matter. ........................................ 7

        1.    Mattel's Generalized, Blanket Assertions Do Not Justify an Order to Compel. ........................................ 7

        2.    MGA's Objections are Correct—Mattel's Requests Are Overbroad and Unduly Burdensome and Seek Documents that Are Irrelevant or Are Duplicative or Cumulative of Other Discovery. ........................................ 10

            (a)    Mattel's Requests Seek Documents that Are Not Relevant to the Claims and Defenses in the Case. ........ 10

            (b)    Mattel's Requests are Overbroad and Unduly Burdensome. ........................................ 11

            (c)    Mattel's Requests are Duplicative or Cumulative. ......... 12

    C.    Mattel Should Be Sanctioned for Bringing Its Frivolous Motion. ..... 14

IV.   CONCLUSION ..................................................................... 14

MGA'S OPPOSITION TO MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA IN RESPONSE TO MATTEL'S FIFTH SET OF REQUESTS FOR DOCUMENTS AND THINGS TO MGA

Case 2:04-cv-09049-DOC-RNB   Document 2080-3   Filed 02/12/08   Page 55 of 141   Page ID
#:52193
Case 2:04-cv-09049-SGL-RNB   Document 1993   Filed 02/07/2008   Page 3 of 18

1
2

# TABLE OF AUTHORITIES

PAGE(S)

3  ## CASES

4  *Glass v. Beer,*
5  2007 U.S. Dist. LEXIS 25920 (E.D. Cal. 2007) .......................................... 6

6  *Harnden v. Key,*
   2006 U.S. Dist. LEXIS 94388 (E.D. Cal. 2006) .......................................... 7

7  *Hoelvel v. First Select Corp.,*
8  214 F.R.D. 634 (D. Colo. 2003)................................................................. 6

9  *In re Intuit Privacy Litig.,*
   138 F. Supp. 2d 1272 (C.D. Cal. 2001)..................................................... 8

10 *In re Sulfuric Acid Antitrust Litig.,*
11 231 F.R.D. 331 (N.D. Ill. 2005)................................................................. 7

12 *Naviant Mktg. Solutions, Inc. v. Larry Tucker, Inc.,*
   339 F.3d 180 (3d Cir. 2003)...................................................................... 6

13 *Oakes v. Halvorsen Marine Ltd.,*
14 179 F.R.D. 281 (C.D. Cal. 1998) .............................................................. 7

15 *Pacific Coast Fed'n of Fishermen's Ass'n v. U.S. Bureau of Reclamation,*
   138 F. Supp. 2d 1228 (N.D. Cal. 2001) .................................................... 8

16 *Pulsecard, Inc. v. Discover Card Servs., Inc.,*
17 168 F.R.D. 295 (D. Kan. 1996).................................................................. 6

18 *Robinson v. Potter,*
   453 F.3d 990 (8th Cir. 2006)..................................................................... 5

19 *Rose v. Beverly Health & Rehab. Servs., Inc.,*
20 2006 U.S. Dist. LEXIS 91740 (E.D. Cal. 2006)........................................ 8

21 *Saca v. J.P. Molyneux Studio Ltd.,*
   2008 U.S. Dist. LEXIS 3857 (E.D. Cal. 2008). ..................................... 12

22 *Soto v. City of Concord,*
   162 F.R.D. 603 (N.D. Cal. 1995)............................................................... 6

23
24
25
26
27
28

MGA'S OPPOSITION TO MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA IN
RESPONSE TO MATTEL'S FIFTH SET OF REQUESTS FOR DOCUMENTS AND THINGS TO MGA

Case 2:04-cv-09049-DOC-RNB    Document 2080-3    Filed 02/12/08    Page 56 of 141    Page ID
#:32194
Case 2:04-cv-09049-SGL-RNB    Document 1993    Filed 02/07/2008    Page 4 of 18

1 | **STATUTES**

2 | Fed. R. Civ. P. 37(a)(1) .................................................................................. 5

3 | Fed.R.Civ.P. 26(b)(2)(C ................................................................................ 7

4 | Fed.R.Civ.P. 37(a)(5)(B) .............................................................................. 14

5 | **RULES**

6 | L.R. 37-1 ......................................................................................................... 5

7 | Local Rule 7-3 ................................................................................................ 5

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA'S OPPOSITION TO MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA IN
RESPONSE TO MATTEL'S FIFTH SET OF REQUESTS FOR DOCUMENTS AND THINGS TO MGA

## MEMORANDUM OF POINTS AND AUTHORITIES

Counter-defendants MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V., and Isaac Larian (collectively, the "MGA Defendants") file this memorandum in opposition to Mattel's Motion to Compel Production of Documents by MGA in Response to Mattel's Fifth Set of Requests for Documents and Things to MGA ("Motion to Compel").

## I.   PRELIMINARY STATEMENT

Of the fourteen discovery motions filed by Mattel on the last day of Phase 1 discovery, the present Motion to Compel is one of the most frivolous. Mattel had MGA's objections and responses to Mattel's Fifth Set of Requests for Documents and Things ("the Requests") since December 27, 2007. Nevertheless, Mattel waited more than a month until the afternoon of the last day of Phase 1 discovery—a day on which twelve depositions were being conducted—to send MGA a three-sentence email demanding to meet and confer immediately regarding MGA's responses to the Requests. Just a few hours later, Mattel filed its Motion to Compel.

Mattel's eleventh-hour filing blatantly violates the Stipulation and Order for Appointment of a Discovery Master ("Discovery Master Order"), which expressly requires at least a five-day meet and confer period before any discovery motion is filed. Mattel did not allow MGA even a single day to consider Mattel's request to meet and confer, much less the five days mandated in the Discovery Master Order. Nor did Mattel's cursory email come anywhere close to level of specificity required under the Discovery Master Order.[1] Notably, although Mattel states in its "Statement of Rule 37-1 Compliance" that it "attempted" to meet and confer with MGA, Mattel cannot certify that it conferred *in good faith*, as required by both Federal Rule of Civil Procedure 37 and Local Rule 37-1. In view of Mattel's clear

---

[1]   Declaration of Philip W. Marsh ("Marsh Decl."), Ex. C at ¶ 5 (requiring a party to "identify each dispute, state the relief sought, and identify the authority supporting the requested relief in a meet and confer letter").

Case 2:04-cv-09049-DOC-RNB    Document 2080-3    Filed 02/12/08    Page 58 of 141    Page ID
Case 2:04-cv-09049-SGL-RNB    Document 1993    Filed 02/07/2008    Page 6 of 18
#:32298

1   violation of the Court's rules and orders in bringing the present motion, Mattel's

2   Motion to Compel should be denied.

3       The Discovery Master should also deny the Motion to Compel because, as set

4   forth in MGA's objections and responses and further explained below, Mattel's

5   document requests are, among other things, overly broad and seek documents that

6   are irrelevant or are duplicative or cumulative of other discovery.  Mattel fails to

7   show otherwise.

8       Rather than separately address the merits of each Request and MGA's

9   objections thereto, Mattel makes sweeping, generic assertions that MGA's objections

10  are all "boilerplate" and Mattel's requests all seek "highly relevant" information.

11  Such generalized arguments fail to address the specific objections that MGA has

12  asserted against the vast majority of Mattel's requests and are insufficient to

13  demonstrate that Mattel is entitled to the requested discovery.

14      Moreover, Mattel's assertions are wrong.  Mattel's broad assertions that the

15  requested documents are relevant to issues of damages, joint and several liability,

16  and enforcement of a potential judgment are unfounded and based on nothing more

17  than conjecture and gross misinterpretations of the evidence.  In addition, far from

18  being mere "boilerplate," MGA's objections to the Requests provide a detailed

19  description of why each of Mattel's document requests is improper.[2]  That MGA

20  asserted the same types of objections to most or all of the Requests does not mean

21  that MGA's objections are "boilerplate;" rather it indicates that Mattel made little to

22  no effort to properly tailor the vast majority of its document requests.

23      In fact, Mattel appears to have made every effort to draft its documents

24  requests to be as broad as possible, sweeping in matter that is either plainly irrelevant

25  or is duplicative or cumulative of discovery already sought and obtained by Mattel.

26  For example, many of Mattel's requests seek financial or corporate governance

27  _____
    [2]    Marsh Decl., Ex. A.

28

1   documents for the period *before* 1999 even though such documents would not be

2   relevant to damages, joint and several liability, or enforcement of any judgment.[3]

3   Tellingly, Mattel does not argue anywhere in its Motion to Compel that pre-1999

4   documents are relevant or discoverable.

5        Accordingly, the Discovery Master should deny Mattel's Motion to Compel in

6   its entirety.  In addition, because Mattel has flouted the Court's rules and orders, as

7   well as the Federal Rules of Civil Procedure, in bringing its motion, and because

8   Mattel's motion is also frivolous for, among other things, failing to specifically

9   address each of the Requests and MGA's objections, Mattel should be sanctioned

10  $3,500, which represents a portion of the expenses that MGA has incurred in

11  opposing the present motion.

12  ## II.   STATEMENT OF FACTS

13       **A.**   **MGA Responded to Mattel's Fifth Set of Document Requests in a**

          **Timely Manner with Specific Objections Tailored to the**

14            **Shortcomings of Each Request.**

15       During the course of this nearly four-year-old litigation, MGA has worked

16  diligently to meet its discovery obligations, producing more than 4.2 million pages of

17  documents in response to more than 2,700 individual requests for production

18  propounded by Mattel on the MGA Defendants.[4]  On November 27, 2007, Mattel

19  served its Fifth Set of Requests for Documents and Things to MGA.[5]  These

20  Requests comprise 47 broad requests for various financial and corporate governance

21  documents.  On December 27, 2007, MGA served timely objections and responses to

22  the Requests.[6]  In its objections and responses, MGA objected to each of the

23  Requests with specific objections tailored to the shortcomings of each request.

24  _____

25  [3]   *See, e.g.,* Declaration of Tamara Jih, dated January 28, 2008 ("Jih Decl."), Ex. 1
    at Request Nos. 1-7.

26  [4]   Marsh Decl. ¶ 1.

27  [5]   Jih Decl., Ex. 1.

[6]   Marsh Decl., Ex. A.

28

Case 2:04-cv-09049-DOC-RNB   Document 2080-3   Filed 02/12/08   Page 60 of 141   Page ID
#:21999
Case 2:04-cv-09049-SGL-RNB   Document 1993   Filed 02/07/2008   Page 8 of 18

**B.   In Violation of the Discovery Master Order, the Federal Discovery Rules and the Local Rules, Mattel Filed the Present Motion on the Last Day of Discovery Without Initiating a Timely Meet and Confer.**

Despite knowing that the Phase 1 discovery cut-off date—January 28, 2008—was fast approaching, Mattel delayed and did nothing in response to MGA's objections and responses to the Requests for more than a month.  Then, literally in the eleventh hour, on the afternoon of January 28, 2008, Mattel sent a three-sentence email to MGA's counsel demanding that MGA immediately meet and confer regarding MGA's objections to the Requests.[7]  As Mattel well knew, most of MGA's attorneys (including the attorney responsible for MGA's responses to the Requests) were occupied with the twelve depositions occurring that day—most of which were noticed by Mattel.[8]  In addition to the improper timing of Mattel's meet and confer demand, Mattel's brief email made no attempt to comply with the Discovery Master Order, the Federal Rules of Civil Procedure or the Local Rules, and, indeed, provided no notice of the specific issues that Mattel sought to address.[9]

MGA's counsel responded that it could not meet and confer in light of the timing of Mattel's demand and notified Mattel of its clear violation of the Discovery Master Order.[10]

Despite its failure to comply with the Discovery Master Order and the governing rules, and despite MGA's warnings regarding those deficiencies, Mattel proceeded to file its Motion to Compel *within just a few hours of its improper and untimely meet and confer demand.*[11]

---

[7]   *Id.*, Ex. B.
[8]   *Id.* ¶ 5
[9]   *Id.*, Ex. B.
[10]  *Id.*
[11]  Rather than giving MGA the required five days to meet and confer, Mattel filed its motion within about five hours of its request to meet and confer. *Compare id.*, Exs. B and D *with id.*, Ex. C at 4:13-15; *see also id.* ¶¶ 4, 6, 7.

MGA'S OPPOSITION TO MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA IN
RESPONSE TO MATTEL'S FIFTH SET OF REQUESTS FOR DOCUMENTS AND THINGS TO MGA

Case 2:04-cv-09049-DOC-RNB   Document 2080-3   Filed 02/12/08   Page 61 of 141   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 1993   Filed 02/07/2008   Page 9 of 18
#:21493

1  III.  **ARGUMENT**

2  A.  **The Discovery Master Should Deny Mattel's Motion Because
Mattel Failed to Comply with the Discovery Master Order, the
Federal Rules of Civil Procedure and the Local Rules.**

4    Mattel failed to meet and confer in good faith with MGA, as it was required to

5  do.  The Discovery Master Order in this case prohibits a party from filing a

6  discovery motion until at least five court days after that party has requested to meet

7  and confer in good faith regarding the subject of the motion.[12]  Rule 37 of the

8  Federal Rules of Civil Procedure also requires that when a party moves to compel

9  disclosure or discovery from another party, "[t]he motion *must* include a certification

10  that the movant has in good faith conferred or attempted to confer" with the other

11  party.  Fed. R. Civ. P. 37(a)(2)(A) (emphasis added).  Likewise, Local Rule 37-1

12  requires that "[p]rior to filing *any* motion relating to discovery . . . counsel for the

13  parties *shall confer in a good faith effort* to eliminate the necessity for hearing the

14  motion or to eliminate as many of the disputes as possible."  L.R. 37-1 (emphasis

15  added).  *See also* L.R. 7-3.

16    There is no question that Mattel violated the Discovery Master Order, the

17  Federal Rules of Civil Procedure and the Local Rules.  Mattel was served MGA's

18  objections on December 27, 2007, and therefore had ample time in which to initiate a

19  timely meet and confer with MGA regarding the Requests.  Mattel did not do so.

20  Indeed, instead of initiating a meet and confer at least five *days* before the discovery

21  cut-off, as required by the Discovery Master Order, Mattel waited until five-and-a-

22  half *hours* before close of business on the discovery cut-off date to demand an

23  immediate meet and confer.  The timing of Mattel's demand is particularly egregious

24  because that same day, most of the parties' attorneys (including the MGA attorney

25  responsible for preparing the objections to the Requests) were conducting and

26  defending twelve depositions, the overwhelming majority of which had been noticed

27  _____

28  [12]   Marsh Decl., Ex. C at ¶ 5.

-5-

Case 2:04-cv-09049-DOC-RNB   Document 2080-3   Filed 02/12/08   Page 62 of 141   Page ID
#:32199)
Case 2:04-cv-09049-SGL-RNB   Document 1993   Filed 02/07/2008   Page 10 of 18

1   by Mattel.[13]  Tellingly, Mattel offers no explanation for why it did not initiate a meet

2   and confer earlier.

3        Mattel's so-called "attempt" to meet and confer falls far short of the good faith

4   efforts required of Mattel.  In similar situations, federal courts have held that a

5   motion to compel should be denied because the party did not make an effort to

6   resolve the issue informally before asking for the court's assistance.  *See, e.g.,*

7   *Robinson v. Potter*, 453 F.3d 990, 995 (8th Cir. 2006) (affirming a district court's

8   refusal to compel production where no attempt was made to resolve the issue

9   informally before filing a motion to compel) (citing *Naviant Mktg. Solutions, Inc. v.*

10  *Larry Tucker, Inc.*, 339 F.3d 180, 186 (3d Cir. 2003)).  Indeed, in a strikingly similar

11  situation, a district court found that the movant had not satisfied a local rule that

12  required parties to meet and confer prior to filing motions where the movant had sent

13  the other party a single email that demanded compliance and did not suggest any

14  negotiation or compromise.  *See Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 636

15  (D. Colo. 2003) (citing *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295,

16  302 (D. Kan. 1996)).

17       Here, Mattel's meet and confer "attempt" consisted entirely of a single email

18  sent a few hours before filing its motion to compel, in which Mattel demanded

19  compliance with the Requests without any suggestion of negotiation or

20  compromise.[14]  Mattel's conduct is particularly egregious because it had MGA's

21  objections and responses to the Requests for more than a month, but chose not to

22  respond until the last possible moment.

23       The Discovery Master should deny Mattel's precipitously filed Motion to

24  Compel based on Mattel's clear violation of the Discovery Master Order, the Federal

25  Rules of Civil Procedure and the Local Rules.

26  _____

27  [13]  *Id.* ¶ 5.

28  [14]  Marsh Decl., Ex. B.

**B.**   **The Discovery Master Should Deny Mattel's Motion Because Mattel Has Failed to Show It Is Entitled to the Requested Discovery and Mattel's Requests are Overly Broad and Seek Irrelevant and Cumulative Matter.**

In addition to Mattel's violation of the Discovery Master Order and governing rules, Mattel's Motion to Compel suffers from serious substantive deficiencies, which also mandate denial of Mattel's motion.  Mattel is required to identify *for each disputed response* why the information sought is relevant and why defendant's substantial and specific objections are not justified.  *See Glass v. R. Beer*, 01:04-cv-05466-OWW-SMS PC, 2007 U.S. Dist. LEXIS 25920, at *20-28 (E.D. Cal. Mar. 22, 2007) ; *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) ("The party seeking to compel discovery bears the burden of showing that his request satisfies the relevance requirement of Rule 26.)."  Mattel also must show "actual and substantial" prejudice from the denial of discovery.  *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 339 (N.D. Ill. 2005); *Harnden v. Key*, CV F02-6529 REC LJOP, 2006 U.S. Dist. LEXIS 94388, at *5-6 (E.D. Cal. Dec. 15, 2006) (moving party on a motion to compel bears the burden of demonstrating "actual and substantial prejudice" from the denial of discovery).  In addition, a court must limit the frequency and extent of discovery requests if it finds that the requests are unreasonably duplicative or cumulative of other discovery, that the requesting party has had ample opportunity to obtain the information through discovery, or that the requests are unduly burdensome.  *See* Fed.R.Civ.P. 26(b)(2)(C).

As demonstrated below, Mattel has failed to show that it is entitled to the requested discovery or that the Requests are properly tailored.

**1.**   **Mattel's Generalized, Blanket Assertions Do Not Justify an Order to Compel.**

Mattel's Motion to Compel fails to address properly the substance of the Requests or MGA's objections thereto.  Instead, Mattel makes generalized, blanket assertions that all of MGA's objections are "boilerplate" and all of Mattel's requests

-7-

1 | seek "highly relevant" information. Indeed, of the 47 Requests, Mattel's motion
2 | addresses only a handful of them. (Mot. at 3-5, footnotes 7-9, 15.)
3 |     Mattel's generic assertions are insufficient to satisfy Mattel's burden of
4 | showing why the requested documents are relevant, that Mattel will suffer actual and
5 | substantial prejudice without them, and why MGA's objections are not justified.
6 | Although Mattel argues that, as a general matter, financial and corporate governance
7 | documents are relevant to issues of damages, joint and several liability and
8 | enforcement of judgments, Mattel fails to link any of its generalized relevance
9 | arguments to the specific Requests at issue here. For example, Mattel offers no
10 | explanation as to how copies of MGA's early corporate governance documents[15] or
11 | all shareholder and board of directors meeting minutes since MGA's inception[16] are
12 | relevant to determining whether Mr. Larian and MGA would be held jointly and
13 | severally liable in this case.
14 |     Mattel's generalized arguments about MGA's objections similarly fail because,
15 | for the most part, Mattel has not addressed MGA's objections in the context of the
16 | actual requests. Viewing an objection based on overbreadth, undue burden or some
17 | other ground in isolation—divorced from the particular request that the objection is
18 | directed to—is a fruitless exercise because it does not help answer the critical
19 | issue—whether a *particular* objection to a *particular* discovery request is proper.
20 |     Even when Mattel appears to address an objection in the context of a particular
21 | request, Mattel does so only in passing, without considering the actual language of
22 | the request. For example, Mattel baldly asserts that "it can hardly be the case that it
23 | would be 'overly broad and unduly burdensome' for MGA to produce its Articles of
24 | Incorporation, its By-Laws, and other corporate governance documents."[17] The
25 | "other corporate governance documents" that Mattel refers to include numerous

---

26 | [15]   *See, e.g.,* Jih Decl., Ex. 1 at 6 (Request Nos. 1-3).
27 | [16]   *See, e.g.,* Jih Decl., Ex. 1 at 7 (Request Nos. 9 & 11).
28 | [17]   Mot. at 3 (citing Request Nos. 1-11).

-8-

1  financial documents from before 1999, all of MGA's tax returns since its

2  incorporation, and the minutes from every shareholder and board of directors

3  meeting that ever took place.[18]  Contrary to Mattel's assertion, it certainly *is* the case

4  that it would be unduly burdensome and inappropriate for MGA to produce all of

5  these largely irrelevant documents.  The same is true for MGA's Articles of

6  Incorporation and By-Laws.  Those documents may relate generally to MGA, but

7  they otherwise have no relevance to any claim or defense in this action.  *See*

8  Discovery Master's May 22, 2007 Order at 21:5-7 (finding that requests seeking

9  documents "merely mention[ing] MGA and Bratz but that otherwise have no

10  relevance to the claims and defenses in the suit" are impermissibly overbroad).

11      In short, Mattel has failed to meet its burden of showing that the broad

12  discovery it seeks is relevant, that Mattel will suffer actual and substantial prejudice

13  if it is denied that discovery, and that MGA's objections are not justified.  Having

14  failed in its moving papers to make any specific argument or factual showing

15  regarding MGA's responses and objections to the Requests, it would also be

16  improper for Mattel to attempt to do so for the first time in its reply.[19]  Accordingly,

17  the Discovery Master should deny Mattel's Motion to Compel.

18

19

20

21
_____

[18]    Jih Decl., Ex. 1 at 6-7 (Request Nos. 4-11).

22  [19]    *See In re Intuit Privacy Litig.*, 138 F. Supp. 2d 1272, 1275 n.3 (C.D. Cal. 2001)

23  ("[T]his court does not consider arguments raised anew for the first time in a reply
    brief as to do so would unfairly deny the non-moving party an opportunity to

24  respond").  "It is well established in this circuit that courts typically do not consider
    arguments raised for the first time in a reply brief, as doing so may unfairly deprive

25  [the other party] of its opportunity to make a meaningful response."  *Rose v. Beverly
    Health & Rehab. Servs., Inc.*, CV F06-0067 AWI DLB, 2006 U.S. Dist. LEXIS

26  91740, at *22 (E.D. Cal. Dec. 7, 2006)  (citing *Pacific Coast Fed'n of Fishermen's
    Ass'n v. U.S. Bureau of Reclamation*, 138 F. Supp. 2d 1228, 1248 n.17 (N.D. Cal.

27  2001).  *See also Sophanthavong v. Palmateer*, 365 F.3d 726, 737 (9th Cir. 2004)
    (declining to reach argument that appellant failed to raise in the opening brief and

28  raised for the first time in the reply brief).

2.    **MGA's Objections are Correct—Mattel's Requests Are Overbroad and Unduly Burdensome and Seek Documents that Are Irrelevant or Are Duplicative or Cumulative of Other Discovery.**

Recognizing its failure to meet its burden of showing relevance, prejudice and the purported impropriety of MGA's objections, Mattel attempts to shift the burden to MGA. Mattel asserts that MGA, as the party objecting to discovery, has the burden of "clarifying, explaining, and supporting" its objections and the burden of showing the that the discovery should not be allowed.[20] Mattel is wrong. As shown above, it is Mattel that bears – but has failed to meet – the burden of demonstrating its entitlement to the requested discovery.

Even if MGA bore the burden that Mattel suggests (which it does not), MGA has met that burden. MGA provided specific objections tailored to each of Mattel's Requests,[21] which Mattel has failed to properly and fully address, much less rebut. Moreover, as set forth in MGA's objections and more fully explained below, Mattel is not entitled to the discovery it seeks because the Requests seek irrelevant information, are overly broad and unduly burdensome, and seek documents that are duplicative or cumulative of other discovery.[22]

(a)    **Mattel's Requests Seek Documents that Are Not Relevant to the Claims and Defenses in the Case.**

Mattel asserts that the financial and corporate governance documents it has requested are relevant to issues of damages, joint and several liability, and enforcement of a potential judgment.[23] But many of the documents requested have no bearing on these issues. Numerous requests seek corporate governance and financial

---

[20]    Mot. at 3.

[21]    *See* Marsh Decl., Ex. A.

[22]    MGA has identified additional flaws with each of Mattel's Requests that can be found in MGA's objections and responses. *See* Marsh Decl., Ex. A.

[23]    Mot. at 4-6.

MGA'S OPPOSITION TO MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA IN
RESPONSE TO MATTEL'S FIFTH SET OF REQUESTS FOR DOCUMENTS AND THINGS TO MGA

Case 2:04-cv-09049-DOC-RNB   Document 2080-3   Filed 02/12/08   Page 67 of 141   Page ID
#:82193
Case 2:04-cv-09049-SGL-RNB   Document 1993   Filed 02/07/2008   Page 15 of 18

1   documents from before 1999.[24]  Mattel has provided no explanation as to how such

2   documents are relevant to the issues identified in the Motion to Compel.  Indeed, the

3   documents are wholly *irrelevant* to any claim or defense in this action because no

4   claim or defense encompasses any alleged acts by MGA before 1999.  In addition,

5   the Discovery Master has previously found that requests before 1999 are

6   overreaching.  By accepting 1999 as a lower limit, Mattel has tacitly admitted that

7   1999 is the proper cut-off for documents it seeks.[25]

8        Mattel also asserts that it is entitled to all of the requested financial documents

9   because "there is reason to believe" that Mr. Larian "has begun to siphon away

10  MGA's assets."[26]  Significantly, the only explanation that Mattel offers for its absurd

11  speculation is that Mr. Larian's compensation from 1997 to 2000—*i.e.*, *before* MGA

12  released Bratz—stayed about the same, but that his compensation increased between

13  2001 and 2007—*i.e.*, *after* MGA's successful release of Bratz.  The only logical and

14  reasonable interpretation of the evidence of Mr. Larian's increased compensation is

15  that, as is often case with businesses, Mr. Larian's compensation increased as the

16  company's revenue base increased.  Without more, Mattel's unsupported speculation

17  does not justify its sweeping and intrusive demands.

18        (b)   **Mattel's Requests are Overbroad and Unduly
             Burdensome.**

19

20        Most of Mattel's document requests are also overly broad and unduly

21  burdensome.  In addition to being overly broad because they seek irrelevant matter

22  (discussed above) and because they seek duplicative or cumulative matter (discussed

23

---

24  [24]  *See, e.g.*, Request Nos. 4-7, Jih Decl., Ex. 1 at 6:13-26.

25  [25]  *See, e.g.*, Discovery Master's December 31, 2007 Order at 14:8-15:1 regarding
    Request No. 198.  Mattel has subsequently challenged the higher end of the 1999-
26  2005 time limit placed on the request but did not challenge the lower 1999 limit in its
    recent Motion for Reconsideration of the Discovery Master's December 31, 2007
27  Order filed on January 16, 2008.

28  [26]  Mot. at 5.

Case 2:04-cv-09049-DOC-RNB   Document 2080-3   Filed 02/12/08   Page 68 of 141   Page ID
#:31993
Case 2:04-cv-09049-SGL-RNB   Document 1993   Filed 02/07/2008   Page 16 of 18

1   below), many of the Requests are overly broad because Mattel has defined terms

2   expansively.  For instance, Request No. 1 seeks "YOUR Articles of Incorporation

3   and any amendments thereto."  Mattel, however, broadly defined "YOUR" to

4   include "all current or former subsidiaries, divisions, AFFILIATES [defined as "all

5   corporations, proprietorships, d/b/a's, partnerships, joint ventures and business

6   entities of any kind that, directly or indirectly, in whole or in part, own or control, are

7   under common ownership or control with, or are owned or controlled by a PERSON,

8   party or entity, including without limitation each parent, subsidiary and joint venture

9   of such PERSON, party or entity"], predecessors-in-interest and successors-in-

10  interest."[27]   Thus, as expressly defined by Mattel, Request No. 1 seeks not only

11  MGA's "Articles of Incorporation and any amendments thereto," but also all such

12  documents for a laundry list of other entities.  Requiring MGA to produce all of

13  these documents, many of which would be undeniably irrelevant, is unnecessary and

14  unduly burdensome.

15       It is apparent that Mattel made little to no effort to draft its requests to target

16  only relevant categories of documents.  Indeed, given how expansively Mattel

17  defined its terms, Mattel appears to have purposefully drafted its document requests

18  to be as broad as possible.  Because Mattel's requests are overly broad and not

19  properly tailored to seek only relevant, non-duplicative and non-cumulative

20  information, Mattel's Motion to Compel should be denied.  *See Saca v. J.P.*

21  *Molyneux Studio Ltd.*, 2008 U.S. Dist. LEXIS 3857, at *8-9 (E.D. Cal. 2008)

22  (requiring party to narrow its document request so that it is "more narrowly tailored

23  to the time period and the subject matter at issue . . .").

24       (c)   **Mattel's Requests are Duplicative or Cumulative.**

25       As set forth in MGA's objections to the Requests, the overwhelming majority

26  of Mattel's document requests seek materials that are duplicative or cumulative of

27

28  [27]   Jih Decl., Ex. 1 at 2.

-12-

Case 2:04-cv-09049-DOC-RNB   Document 2080-3   Filed 02/12/08   Page 69 of 141   Page ID
#:32137
Case 2:04-cv-09049-SGL-RNB   Document 1993   Filed 02/07/2008   Page 17 of 18

1   other discovery.  For example, many of the Requests demand financial documents

2   relating to Mr. Larian.  Mattel, however, already propounded hundreds of document

3   requests on Mr. Larian seeking the same or similar information.[28]  Moreover, MGA

4   has produced tens of thousands of pages of financial documents and Mr. Larian

5   recently produced more than 50,000 pages of documents, including documents

6   showing Mr. Larian's net worth, gross income and its sources, and pertinent banking

7   information.[29]

8        Mattel's Requests also seek certain quarterly and annual financial statements,

9   as well as general ledgers (Request Nos. 4-6).  However, MGA already produced

10  audited and unaudited quarterly and annual profit and loss statements, audited and

11  unaudited quarterly and annual statements, annual reports, general ledgers, and

12  various other MGA financial reports, in response to other document requests.[30]

13       Mattel's requests for documents relating to corporate governance also are

14  duplicative or cumulative of discovery already obtained by Mattel.  In fact, Mattel

15  effectively concedes as much by citing in its Motion corporate governance evidence

16  relating to Mr. Larian's position in the company.[31]

17       That Mattel's requests are duplicative or cumulative of other discovery is

18  hardly surprising given that Mattel served more than 2,700 document requests in this

19  case.  Indeed, although Mattel complains about MGA's other objections in its

20  Motion to Compel, Mattel does not contest MGA's objections that the Requests are

21  duplicative and cumulative of other discovery.  Given that MGA and Mr Larian have

22  already made a very substantial production of documents in this case, including

23

24  [28]   Marsh Decl., Ex. A at 26-45 (objecting to Request Nos. 12-22 because, *inter
    alia*, the requests were duplicative or cumulative of prior requests, including Request
25  Nos. 229-265 of Mattel's First Set of Requests for Production to Mr. Larian); Ex. E
    (attaching Mattel's First Set of Requests for Production to Isaac Larian).
26  [29]   Marsh Decl. ¶ 1.
27  [30]   *Id.*
    [31]   Mot. at 4-5.
28

-13-

1   many documents responsive to the Requests at issue here, requiring MGA to produce

2   additional documents responsive to the Requests would be unreasonably duplicative

3   and cumulative.

4       **C.**    <u>**Mattel Should Be Sanctioned for Bringing This Motion.**</u>

5       As shown above, Mattel's Motion to Compel is unnecessary and frivolous.

6   Moreover, Mattel flagrantly violated the Discovery Master Order, as well as the

7   Federal Rules and Local Rules, by failing to make the required good faith effort to

8   meet and confer before filing this Motion.  MGA should not have to bear the burden

9   of opposing Mattel's meritless motion.  Accordingly, for at least these reasons, the

10  Discovery Master should not only deny Mattel's motion, but should also order

11  Mattel to pay MGA $3,500 in sanctions for bringing this improper motion.  *See*

12  Fed.R.Civ.P. 37(a)(5)(B) (providing that if a motion is denied, the moving party or

13  its attorney may be ordered to pay the party opposing the motion).  Such amount

14  represents a portion of the expenses that MGA incurred in preparing this

15  opposition.[32]

16  **IV.**    <u>**CONCLUSION**</u>

17      For the foregoing reasons, the Discovery Master should deny Mattel's Motion

18  to Compel and award sanctions to MGA in the amount of $3,500.

19

20  DATED:  February 7, 2008    SKADDEN, ARPS, SLATE, MEAGHER &
        FLOM, LLP

21

22      By: _____

23      RAOUL D. KENNEDY

24      Attorneys for Counter-Defendants
        MGA Entertainment, Inc.,

25      MGA Entertainment (HK) Limited,
        MGAE De Mexico, S.R.L. De C.V.,

26      and ISAAC LARIAN

27  _____
    [32]  Marsh Decl. ¶ 7.

28

-14-

MGA'S OPPOSITION TO MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA IN
RESPONSE TO MATTEL'S FIFTH SET OF REQUESTS FOR DOCUMENTS AND THINGS TO MGA

# EXHIBIT 13



THOMAS J. NOLAN (Bar No. 066992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA  90071-3144
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600
E-mail:    tnolan@skadden.com

KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY  10036
Telephone:   (212) 735-3000
Facsimile:   (212) 735-2000
E-mail:    kplevan@skadden.com

Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC.,
ISAAC LARIAN, MGA
ENTERTAINMENT (HK) LIMITED,
and MGAE de MEXICO S.R.L. de
C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation<br><br>Defendant.<br><br><br>Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**MGA DEFENDANTS' OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION TO ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLE ITEMS; AND FOR MODIFICATION OF SCHEDULING ORDER**<br><br>Honorable Stephen G. Larson<br><br><br><br>Date:  TBA<br>Time:  TBA<br>Place:  TBA |

1  Counter-defendants MGA Entertainment, Inc., Isaac Larian, MGA
2  Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively,
3  the "MGA Defendants") hereby submit this opposition to Mattel, Inc.'s *Ex Parte*
4  Application to Enforce Court Orders Compelling Production of Tangible Items and
5  for Modification of Scheduling Order.

6  **I.    PRELIMINARY STATEMENT.**

7          In any litigation—no matter how big or complex—there comes a time when
8  discovery must end and the parties and the court must devote their attention to
9  preparing for a trial on the merits.  In this case, that time is January 28, 2008.  Yet,
10 despite the Court's steadfast commitment to this date, Mattel has repeatedly and
11 unsuccessfully tried to prolong discovery beyond the cut-off date.

12         Mattel's *ex parte* application regarding tangible items—Mattel's third *ex parte*
13 application this week and its fifth in the past two months—is yet another desperate
14 attempt to extend its scorched earth discovery practices and prevent the MGA
15 Defendants from being able to focus their attention on trial preparation.
16 Notwithstanding Mattel's lengthy and largely inaccurate description of the parties'
17 dispute, Mattel raises three issues to be decided by the Court:

18      1.   Has MGA acted improperly in continuing to search for and
             promptly produce for inspection tangible items in response to
19           Mattel's requests?

20      2.   Should MGA bear the cost of Mattel's requested inspection of
             tangible items in Hong Kong and Shenzhen, China, where MGA
21           has already made substantial efforts to accommodate Mattel and
             Mattel has shown no interest in actually inspecting the items?
22
23      3.   Should Mattel be allowed to argue for six more weeks of
             discovery based on the timing of MGA's production of some
             tangible items when Mattel waited until the last four weeks of
24           discovery to produce more than 70 percent of its total document
             production in this case?
25
        The answer to all of these questions is: "No."
26
        *First*, MGA has done nothing wrong by continuing to search for tangible items
27
   that may be responsive to Mattel's requests and produce those items for inspection
28

1   promptly after they have been found.  Such conduct is required as part of the parties'

2   continuing obligation to supplement discovery responses, including their productions

3   of documents and things.  *See* Fed.R.Civ.P. 26(e).  To date, MGA has produced

4   approximately 800 items for Mattel's inspection, with the overwhelming majority of

5   items being produced for inspection months ago.  (Declaration of Amy Park ("Park

6   Decl."), ¶ 1.)  That MGA has found and produced a small portion of the items in

7   recent weeks does not render MGA in violation of its discovery obligations or any

8   discovery order in this case.  MGA has acted diligently in searching for items and,

9   contrary to Mattel's assertions, has not deliberately excluded any particular type of

10  tangible items from its searches.  (Declaration of Samir Khare ("Khare Decl."), ¶ 3.)

11      *Second*, there is no basis to shift the cost of Mattel's requested inspection of

12  items in Hong Kong and Shenzhen from Mattel to MGA.  MGA promptly notified

13  Mattel of these items and made every effort to facilitate Mattel's inspection of the

14  items in Hong Kong and Shenzhen.  Indeed, it has been Mattel's dilatory conduct

15  that has prevented Mattel from inspecting the items in Hong Kong and Shenzhen in a

16  timely manner.  Although MGA offered and held open numerous dates throughout

17  January for the inspections, Mattel made no attempt to inspect the items and instead

18  chose to sit by for weeks, letting each date pass until it could file its *ex parte*

19  application on the eve of discovery cut-off.

20      *Third*, Mattel's argument that it should get six more weeks of discovery

21  because MGA recently produced some additional tangible items is without merit.  If

22  a party could extend discovery merely by arguing that a small amount of additional

23  information or documents was provided towards the end of discovery, no case would

24  ever move past discovery.  Moreover, Mattel is in no position to be arguing for

25  additional discovery based on the timing of production since Mattel did not begin

26  producing the vast majority of its documents—more than 70 percent—until the

27  beginning of this month—four weeks before the discovery cut-off.

28

MGA DEFENDANTS' OPP. TO MATTEL'S *EX PARTE* APP. RE TANGIBLE ITEMS

1   Mattel has had ample time to take discovery and has obtained mountains of

2   information in the process. It is time for the parties to focus on preparing for trial.

3   Accordingly, Mattel's *ex parte* application should be denied.

4   **II.   STATEMENT OF FACTS.**

5       **A.   The Parties' Productions.**

6         To date, MGA has produced approximately 3.8 million pages of documents

7   and approximately 800 tangible items in response to Mattel's thousands of requests

8   for production. (Park Decl., ¶ 1.) MGA completed most of its document production

9   more than two months ago and produced for inspection most of its tangible items by

10   October 2007. (*Id.*) In mid-December 2007, MGA produced more than 100

11   additional tangible items for inspection. (*Id.*)

12         Contrary to Mattel's assertion, the tangible items that MGA produced for

13   inspection prior to December 21, 2007, included numerous items relating to the

14   origin, creation, design, development or manufacture of Bratz. (*Id.*) As of October

15   2007, Mattel had inspected more than a dozen doll heads, several doll bodies, a doll

16   head sculpture, a doll body sculpture, as well as hundreds of Bratz dolls, dolls

17   designs, doll accessories, and other MGA products. (*Id.*)

18         In the last several weeks, MGA has also found and promptly produced for

19   inspection some additional tangible items, consisting of displays, a Bratz girls cut-

20   out, mounted Bratz sketches/prints, accessories and packaging options. (Hutnyan

21   Decl., Exs. 22 & 25.) Additionally, as is discussed below, in early January 2008,

22   MGA found 12 Bratz molds created in February 2001 in MGA's facility in Shenzhen,

23   China and immediately made the molds available for inspection by Mattel. (Hutnyan

24   Decl., Ex. 5 at 2.)

25         In connection with its production of tangible items in this case, MGA has

26   continually and diligently searched for items that may be responsive to Mattel's

27   requests for production. (Khare Decl., ¶ 2 & 3.) As part of its search process, MGA

28   has not deliberately excluded or directed anyone to exclude molds or other specific

1  types of tangible items. (*Id.*) In addition, Mattel is wrong in its suggestion that

2  MGA hid or directed anyone to hide items relating to the creation or early

3  development of Bratz so as to avoid the production of those items in this litigation.

4  MGA took no such action. (*Id.*) Rather, MGA has promptly made available for

5  inspection by Mattel those items that MGA has found that are responsive to Mattel's

6  requests. (*Id.*; Park Decl., ¶ 2.)

7      In contrast to MGA's substantial production months before close of fact

8  discovery, Mattel chose to wait until the final four weeks of discovery to produce the

9  vast majority of its documents. (Park Decl., ¶ 3.) As of December 2007, Mattel had

10  produced only about 257,000 pages of documents—less than 10 percent of MGA's

11  production by that time. (*Id.*) Suddenly, in January 2008, Mattel began producing

12  hundreds of thousands of pages of documents on MGA. (*Id.*) Between January 2,

13  2008 and January 24, 2008, Mattel produced more than 635,000 pages of documents,

14  which accounts for more than 70 percent of Mattel's total production. (*Id.*) Notably,

15  although Mattel chides MGA for stating that it is still conducting a reasonable, good

16  faith search for documents and tangible items, Mattel has been making the same

17  representation with respect to its production: "Mattel continues to conduct a

18  reasonable, good faith search for documents, and intends to produce relevant, non-

19  privileged documents as they are located." (Park Decl., Ex. 1.)

20      **B.   Tangible Items in Hong Kong and Shenzhen.**

21      In early December 2007, counsel for Mattel and MGA began discussing the

22  issue of Mattel's inspection of 16 tangible items in Hong Kong. (Park Decl., Ex. 2.)

23  As MGA's counsel informed Mattel's counsel, these items, which consisted of Bratz

24  doll heads, body parts, shoes and deco heads, were the subject of an undertaking

25  given to the court in Hong Kong that prevented their shipment to the United States.

26  (*Id.*) MGA was in the process of seeking approval from the Hong Kong court to

27  modify the undertaking to permit shipment of the items to the United States and is

28  still awaiting the court's final ruling on that application. (Park Decl., Exs. 2 & 3.) In

1 the meantime, Mattel's counsel inquired as to whether Mattel could inspect those

2 items in Hong Kong. (Park Decl., Ex. 2.) MGA's counsel subsequently informed

3 Mattel's counsel that Mattel could inspect the items in Hong Kong and offered

4 Mattel four different days to inspect them—January 5, 8, 9 and 10. (Hutnyan Decl.,

5 Exs. 11 & 12.)

6      On January 7, 2008, Mattel's counsel notified MGA's counsel that it could not

7 inspect the items on the offered dates, but could do the inspection "any day next

8 week (January 14-18)." (Park Decl., Ex. 4 at 6.) On January 9, Mattel's counsel

9 confirmed their availability to inspect the items in Hong Kong any day between

10 January 14 and January 18. (Hutnyan Decl., Ex. 4.) On January 10, MGA's counsel

11 offered the items for inspection on January 17, 18 and 19. (Hutnyan Decl., Ex. 5.)

12      That same day, MGA's counsel also informed Mattel's counsel that MGA had

13 recently found 12 Bratz molds in its facility in Shenzhen, China, which is

14 approximately 20 miles north of Hong Kong. (Id.) MGA's counsel notified Mattel's

15 counsel that shipment of the molds to the United States would take considerable time

16 due to customs issues, but that MGA would make the molds available in Shenzhen

17 on or around the same dates as the Hong Kong inspections. (Id.) MGA's counsel

18 provided the following dates for inspection of the molds: January 15, 16, 17, 21, 23

19 and 24. (Park Decl., Ex. 5 at 3.)

20      Mattel's counsel requested that MGA hold open January 17, 18 and 19 for

21 inspection (Hutnyan Decl., Ex. 19), but made no attempt to inspect any of the items

22 in Hong Kong or Shenzhen on any of those dates. (Park Decl., ¶ 11.) On January 15,

23 2008, MGA's counsel offered January 23, 24 and 25 for inspection of the items in

24 Hong Kong in addition to the previously offered dates. (Park Decl., Ex. 3.) Mattel's

25 counsel did not accept any of the dates provided, but sent an email to MGA's

26 counsel on January 22, 2008, demanding all available dates between January 25 and

27 February 15 for inspection. (Park Decl., Ex. 6.) Although most of these dates were

28 after the close of discovery, MGA's counsel nevertheless offered January 29, and

Case 2:04-cv-09049-DOC-RNB   Document 2080-3   Filed 02/12/08   Page 78 of 141   Page ID
#:82656
Case 2:04-cv-09049-SGL-RNB   Document 856   Filed 01/25/2008   Page 7 of 11

1  February 1, 2, 4, 5 and 6 for the Hong Kong inspection, and January 31, February 1

2  and February 4 for the Shenzhen inspection. (Park Decl., Ex. 7.)  Despite their

3  demands, Mattel has not accepted any of the dates offered. (Park Decl., ¶11.)

4  **III.   MATTEL'S *EX PARTE* APPLICATION IS WITHOUT MERIT AND SHOULD BE DENIED.**

5  **A.   MGA Has Not Violated any Discovery Obligation or Order.**

6       Contrary to Mattel's assertions, MGA has complied with the Discovery

7  Master's May 2007 or August 2007 orders, and the parties' June 2006 stipulation.

8  MGA has produced for inspection approximately 800 tangible items, most of which

9  were inspected by Matter in October 2007. (Park Decl., ¶ 1.)  These items include

10  all of the items that MGA has found thus far that are responsive to the requests that

11  were the subject of the Discovery Master's orders. (Hutnyan Decl., Exs. 5, 11, 12 &

12  22.)  In addition, when Mattel has requested to inspect, photograph and scan these

13  tangible items, MGA has promptly responded and cooperated. (Park Decl., Ex. 4.)

14       Mattel's assertion that MGA is somehow violating its discovery obligations by

15  continuing to search for and produce additional tangible items is untenable and

16  contrary to the Federal Rules of Civil Procedure.  Rule 26(e) expressly requires that

17  "[a] party who has ... responded to ... [a] request for production ... must supplement

18  or correct its disclosure or response: ... in a timely manner if the party learns that in

19  some material respect the disclosure or response is incomplete or incorrect."

20  Fed.R.Civ.P. 26(e)(1).  Thus, each litigant has a continuing obligation to supplement

21  its production of documents and things.  Indeed, Mattel has relied on that obligation

22  to justify its last-minute productions of hundreds of thousands of pages of documents

23  that should have been produced many months ago. (Park Decl., Ex. 1.)

24       Consistent with its ongoing obligation, MGA has continued to search its

25  facilities for and promptly produce for inspection any additional items responsive to

26  Mattel's requests. (Khare Decl., ¶ 3.)  Mattel speculates that because MGA did not

27  previously produce such items that MGA must have been hiding them.  The Court

28

1  should not waste its time on such blatant conjecture.  Indeed, applying the same

2  reasoning, MGA could argue that Mattel was improperly concealed more than

3  635,000 pages of documents because Mattel waited until the last four weeks of

4  discovery to produce them.  Mattel's arguments are not productive and do nothing to

5  help move the parties and the Court beyond the discovery phase and toward a trial on

6  the merits.

7         Mattel's reliance on a dispute between the parties' counsel as to whether

8  molds are encompassed in document requests that do not expressly call for the

9  production of molds is a red herring.  MGA's counsel has never stated that molds,

10  closures, face paint masks or the other items recited in Mattel's application were

11  deliberately withheld from production or that MGA destroyed them during the

12  course of this litigation.  Moreover, in conducting its searches for tangible items,

13  MGA has not deliberately excluded molds or other types of tangible items.  (Khare

14  Decl., ¶ 3.)

15         Nor has MGA excluded tangible items relating to the origin, creation, design,

16  development or manufacture of Bratz.  In fact, in October 2007, MGA produced for

17  Mattel's inspection more than a dozen Bratz heads, several Bratz bodies, a Bratz

18  head sculpture and a Bratz body sculpture.  (Park Decl., ¶ 1.)  As discussed above,

19  MGA has also made available doll heads, deco heads, body parts and molds in Hong

20  Kong and Shenzhen on numerous dates throughout January and now into February.

21  That Mattel chose not to inspect those items on any of those dates despite

22  representing that it was available and ready to do so does not evidence any

23  impropriety on MGA's part.  Indeed, it plainly demonstrates MGA's diligence in

24  meeting its discovery obligations.  In addition, Mattel has obtained ample items and

25  documents, as well as testimony from numerous witnesses, regarding the creation

26  and early development of Bratz.  These include thousands of pages of documents

27  chronicling the development and manufacturing process, including correspondence

28  and photographic images of the dolls in various stages of development sent between

1   the MGA employees in the United States and Hong Kong; correspondence, invoices

2   and purchase orders with third-party vendors that worked on the development of the

3   Bratz doll, including Margaret Leahy (sculpted the Bratz doll), Jesse Ramirez of

4   South Bay Molds (cast molds for the dolls), and Veronica Marlow (fashion design);

5   and more than a hundred tangible items produced by Ms. Leahy and Ms. Marlow

6   that relate to the development of the Bratz dolls.  (Park Decl., ¶ 12.)

7        Mattel has failed to show that MGA violated its discovery obligations relating

8   to the production of tangible items.  Accordingly, its application must be denied.

9   **B.   The Cost for Inspecting Items that Mattel Requested Should
         Remain with Mattel.**

10       Mattel's assertion that MGA should pay the costs for Mattel's inspection of

11  items in Hong Kong and Shenzhen is based on the false premise that MGA

12  concealed these items from Mattel until the end of discovery.  The items in Hong

13  Kong and Shenzhen were promptly identified to Mattel after MGA discovered them

14  during its search for items that may be responsive to Mattel's requests.  (Park Decl.,

15  Ex. 2; Hutnyan Decl., Ex. 5.)  No concealment was involved.

16       Moreover, MGA has made every reasonable effort to facilitate Mattel's

17  inspection of these items in Hong Kong and Shenzhen.  At Mattel's request, MGA

18  made the items in Hong Kong available on eleven days throughout January and also

19  offered five days in February.  In addition, MGA made the items in Shenzhen

20  available for inspection on seven days throughout January and two days in February.

21  MGA offered both the Hong Kong and Shenzhen inspections on dates that Mattel's

22  counsel specifically identified as dates on which Mattel was available and ready to

23  conduct the inspections.  (Park Decl., Ex. 4 at 6; Hutnyan Decl., Ex. 4.)  In a further

24  effort to accommodate Mattel, MGA has tried to effect the shipment of the Hong

25  Kong items to the United States by petitioning a Hong Kong court to modify the

26  undertaking that is preventing their shipment to the United States.  (Park Decl., Ex.

27  3.)

28

MGA DEFENDANTS' OPP. TO MATTEL'S *EX PARTE* APP. RE TANGIBLE ITEMS

Case 2:04-cv-09049-DOC-RNB   Document 2080-3   Filed 02/12/08   Page 81 of 141   Page ID
#:36529
Case 2:04-cv-09049-SGL-RNB   Document 1654   Filed 01/25/2008   Page 10 of 11

1    If anyone is to blame for Mattel's failure to inspect the items in Hong Kong

2 and Shenzhen in a timely manner, it is Mattel. Despite representing to MGA that it

3 was available and ready to inspect the items, Mattel made no effort to travel to Hong

4 Kong and Shenzhen. Instead, Mattel chose to sit by for weeks, allowing each date

5 offered by MGA to pass without conducting any inspection or even committing to

6 any inspection date. If Mattel was truly interested in inspecting the items, rather than

7 merely using the issue as an argument for extending discovery, Mattel would have

8 conducted the inspection by now.

9    In view of MGA's efforts to accommodate Mattel and Mattel's own dilatory

10 behavior, Mattel should not be allowed to shift the costs for inspection.

11   **C.    The Court Should Not Alter the Scheduling Order or Give Mattel
         Additional Time to Conduct Discovery.**

12   Mattel contends that it is entitled to six more weeks of discovery because

13 MGA should have produced the recently found tangible items earlier. That is not a

14 sufficient basis to extend discovery in a case that has been in discovery for more

15 than three years. Indeed, if any party has grounds to argue for an extension of

16 discovery, it is MGA.

17   The tangible items at issue represent a small fraction of the approximately

18 800 tangible items that MGA has produced for inspection in this case. In contrast,

19 Mattel's production of documents in the final month of discovery accounts for more

20 than 70 percent of Mattel's total production. (Park Decl., ¶ 3.) Of the

21 approximately 895,000 pages of documents that Mattel has produced in this case,

22 more than 635,000 pages were produced between January 2, 2008 and January 24,

23 2008. (*Id.*) There is no legitimate reason why Mattel waited until four weeks

24 before the close of discovery to begin producing the vast majority of its documents

25 in this case. In view of the foregoing, Mattel cannot be heard to complain about the

26 timing of MGA's production of some tangible items.

27

28

1    Mattel's demand for additional discovery time is also belied by the fact that

2  Mattel made no attempt to inspect the items in Hong Kong or Shenzhen on any of

3  the numerous dates throughout January that MGA offered.  If Mattel wanted to

4  inspect MGA's additional tangible items "without further delay" as it contends,

5  Mattel would have inspected the items in Hong Kong and Shenzhen weeks ago.

6  That Mattel sat for weeks without moving forward with the inspections and then

7  filed an *ex parte* application seeking six more weeks of discovery plainly shows that

8  Mattel is not interested in completing discovery as quickly as possible; rather,

9  Mattel is merely trying to concoct a reason to prolong discovery and avoid reaching

10  the merits of this case.

11    Because Mattel cannot present any legitimate basis for extending discovery,

12  the Court should deny Mattel's request.

13  **IV.    CONCLUSION**

14    For the foregoing reasons, the MGA Defendants respectfully request that the

15  Court deny Mattel's *ex parte* application regarding the production of tangible items

16  and modification of the Court's Scheduling Order.

17  DATED:  January 25, 2008

18                     SKADDEN, ARPS, SLATE, MEAGHER &
                       FLOM, LLP

19

20

21                     By:  /s/ Thomas J. Nolan
                            Thomas J. Nolan

22                     Attorneys for Counter-Defendants, MGA
                       ENTERTAINMENT, INC., ISAAC
23                     LARIAN, MGA ENTERTAINMENT (HK)
                       LIMITED, and MGAE de MEXICO S.R.L.
24                     de C.V.

25

26

27

28

- 10 -
MGA DEFENDANTS' OPP. TO MATTEL'S *EX PARTE* APP. RE TANGIBLE ITEMS

# EXHIBIT 14

KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727<br><br>**CARTER BRYANT'S FIRST SET OF REQUESTS FOR ADMISSION TO MATTEL, INC.** |

12-26

CARTER BRYANT'S FIRST SET OF REQUESTS FOR ADMISSION TO MATTEL, INC.
CASE NO. CV 04-09049 SGL (RNBx)

408207.03

1   Pursuant to Federal Rule of Civil Procedure 36, Plaintiff CARTER

2   BRYANT requests that Defendant Mattel, Inc. respond in writing to the Requests

3   for Admission set forth below within thirty (30) days of service.

4   ## DEFINITIONS

5       1.      "MATTEL" or "YOU" means and refers to plaintiff and counter-

6   defendant Mattel, Inc., its current employees, officers, directors, agents,

7   representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-

8   in-interest and successors-in-interest, and any other PERSON acting on its behalf,

9   pursuant to its authority or subject to its control.

10      2.      "BRYANT" or "CARTER BRYANT" means and refers to Carter

11  Bryant and his agents, representatives, attorneys, experts or any other PERSON

12  acting on his behalf, pursuant to his authority or subject to his control.

13      3.      "BRATZ" means and refers to each image, character, logo, doll,

14  fashion doll, plush toy, styling head, toy, accessory, product, packaging, theme, or

15  other thing or matter that is or has ever been manufactured, marketed or sold by

16  MGA, or others under license, as part of a line of goods or merchandise commonly

17  known as "Bratz", or sold and marketed under the "Bratz" trademark or trade

18  dress.

19      4.      "FLANKER PRODUCT" or "FLANKER PRODUCTS" means

20  brands, dolls, products, or product lines that MATTEL believed would compete

21  with its Barbie line of products in the marketplace or that customers might buy

22  instead of buying one of MATTEL's Barbie line of products, and includes, but is

23  not limited to, products, dolls, or brands that MATTEL referred or refers to as

24  "flanker doll" or "flanker brand" in documents bearing bates numbers M0014259,

25  M0014264, and M0067258-277.

26      5.      "INVENTION AGREEMENT" means any form of Mattel

27  employment agreement concerning, *inter alia*, (i) ownership of inventions, and / or

28  (ii) trade secrets, and/or (iii) conflicts of interests, whether known by the title

**1**

408207.03

1   "Employee Confidential Information and Inventions Agreement" or any other title,

2   including without limitation documents in the form of the agreement entitled

3   "Employee Confidential Information and Inventions Agreement" produced by

4   MATTEL in this litigation as document M0001596.

5        6.      The words "and" and "or" shall be construed in the conjunctive or

6   disjunctive, whichever makes the request more inclusive.

7        7.      The use of the singular form of any word includes the plural and vice

8   versa.

9        8.      The terms "any" and "all" are interchangeable.

10

11                              **INSTRUCTIONS**

12       1.      Unless otherwise stated, the time period for each request herein is

13   January 1, 1995 to the present.

14       2.      Each response shall be preceded by the Request for Admission to

15   which it responds and shall be answered separately and fully in writing under oath,

16   unless it is objected to, in which event the reason(s) for the objection shall be

17   stated in lieu of that portion of the answer to which the objection applies.

18       3.      All responses to the Requests for Admission shall be signed by the

19   person making them and all objections signed by the attorney making them under

20   the standards set forth in Federal Rule of Civil Procedure 11.  No part of the

21   Request for Admission shall be left unanswered merely because an objection has

22   been interposed to another part of that Request.

23       4.      If MATTEL withholds information responsive, in whole or in part, to

24   any Request for Admission on any basis, please identify:  (a) any privilege or

25   immunity from discovery asserted; (b) all documents or things which contain or

26   refer to the information; (c) all individuals having knowledge of the information;

27   (d) the subject matter and general nature of the information; and (e) all facts which

28   are alleged to support the assertion of privilege or immunity.

408207.03

5..   The obligation to provide the information sought by these discovery requests, or parts thereof, is continuing within the requirements of Federal Rule of Civil Procedure 26(e).

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that CARTER BRYANT was never an officer of MATTEL during his time as a MATTEL employee.

**REQUEST FOR ADMISSION NO. 2:**

Admit that CARTER BRYANT was never a director of MATTEL during his time as a MATTEL employee.

**REQUEST FOR ADMISSION NO. 3:**

Admit that CARTER BRYANT never held a management position during his time as a MATTEL employee.

**REQUEST FOR ADMISSION NO. 4:**

Admit that no MATTEL employees reported directly to CARTER BRYANT during his time as a MATTEL employee.

**REQUEST FOR ADMISSION NO. 5:**

Admit that CARTER BRYANT did not have authority to enter into a contract on MATTEL's behalf during his time as a MATTEL employee.

**REQUEST FOR ADMISSION NO. 6:**

Admit that CARTER BRYANT did not have the authority to enter into any legally binding obligation on MATTEL's behalf during his time as a MATTEL employee.

**REQUEST FOR ADMISSION NO. 7:**

Admit that CARTER BRYANT did not have authority to set any MATTEL corporate policies during his time as a MATTEL employee.

.3

408207.03

1  **REQUEST FOR ADMISSION NO. 8:**

2      Admit that CARTER BRYANT did not have authority to modify any

3  MATTEL corporate policies during his time as a MATTEL employee.

4  **REQUEST FOR ADMISSION NO. 9:**

5      Admit that CARTER BRYANT did not have authority to determine which

6  products MATTEL would choose to develop during his time as a MATTEL

7  employee.

8  **REQUEST FOR ADMISSION NO. 10:**

9      Admit that CARTER BRYANT did not have authority to approve any

10  MATTEL business plans during his time as a MATTEL employee.

11  **REQUEST FOR ADMISSION NO. 11:**

12      Admit that CARTER BRYANT did not have authority to modify any

13  MATTEL business plans during his time as a MATTEL employee.

14  **REQUEST FOR ADMISSION NO. 12:**

15      Admit that CARTER BRYANT did not have authority to hire any MATTEL

16  employees during his time as a MATTEL employee.

17  **REQUEST FOR ADMISSION NO. 13:**

18      Admit that CARTER BRYANT did not have authority to terminate any

19  MATTEL employees during his time as a MATTEL employee.

20  **REQUEST FOR ADMISSION NO. 14:**

21      Admit that, other than CARTER BRYANT, MATTEL has never sued any of

22  its employees or former employees for breach of any INVENTION

23  AGREEMENT.

24  **REQUEST FOR ADMISSION NO. 15:**

25      Admit that, other than CARTER BRYANT, MATTEL has sued one or more

26  of its employees or former employees for breach of any INVENTION

27  AGREEMENT.

28

CARTER BRYANT'S FIRST SET OF REQUESTS FOR ADMISSION TO MATTEL, INC.
CASE NO. CV 04-09049 SGL (RNBx)

**REQUEST FOR ADMISSION NO. 16:**

Admit that, other than CARTER BRYANT, MATTEL has never threatened to sue any of its employees or former employees for breach of any INVENTION AGREEMENT.

**REQUEST FOR ADMISSION NO. 17:**

Admit that, other than CARTER BRYANT, MATTEL has threatened to sue one or more of its employees or former employees for breach of any INVENTION AGREEMENT

**REQUEST FOR ADMISSION NO. 18:**

Admit that YOU do not contend that CARTER BRYANT misappropriated any MATTEL trade secrets.

**REQUEST FOR ADMISSION NO. 19:**

Admit that YOU contend that CARTER BRYANT misappropriated MATTEL trade secrets.

**REQUEST FOR ADMISSION NO. 20:**

Admit that YOU do not contend that CARTER BRYANT "wrongfully converted Mattel's property by removing Trade Secret Materials [as that term is used in MATTEL's Second Amended Answer and Counterclaims] in electronic and paper form from Mattel's offices."

**REQUEST FOR ADMISSION NO. 21:**

Admit that YOU contend that CARTER BRYANT "wrongfully converted Mattel's property by removing Trade Secret Materials [as that term is used in MATTEL's Second Amended Answer and Counterclaims] in electronic and paper form from Mattel's offices."

**REQUEST FOR ADMISSION NO. 22:**

Admit that YOU contend that the identity of third-party doll hair suppliers used by MATTEL is a MATTEL trade secret.

1  **REQUEST FOR ADMISSION NO. 23:**

2     Admit that YOU do not contend that the identity of third-party doll hair

3  suppliers used by MATTEL is a MATTEL trade secret.

4  **REQUEST FOR ADMISSION NO. 24:**

5     Admit that YOU contend that the identity of the third-party vendors used by

6  MATTEL is a MATTEL trade secret.

7  **REQUEST FOR ADMISSION NO. 25:**

8     Admit that YOU do not contend that the identity of third-party vendors used

9  by MATTEL is a MATTEL trade secret.

10  **REQUEST FOR ADMISSION NO. 26:**

11     Admit that MATTEL employees, excluding CARTER BRYANT, have

12  performed work for entities other than MATTEL while employed by MATTEL.

13  **REQUEST FOR ADMISSION NO. 27:**

14     Admit that MATTEL employees, excluding CARTER BRYANT, have

15  performed work for entities other than MATTEL while employed by MATTEL

16  without obtaining MATTEL's approval to perform such work.

17  **REQUEST FOR ADMISSION NO. 28:**

18     Admit that no MATTEL employee, excluding CARTER BRYANT, has

19  performed work for entities other than MATTEL while employed by MATTEL.

20  **REQUEST FOR ADMISSION NO. 29:**

21     Admit that no MATTEL employee, excluding CARTER BRYANT, has

22  performed work for entities other than MATTEL while employed by MATTEL

23  without obtaining MATTEL's approval to perform such work.

24  **REQUEST FOR ADMISSION NO. 30:**

25     Admit that MATTEL employees, excluding CARTER BRYANT, have

26  performed work for a MATTEL competitor while employed by MATTEL.

27  **REQUEST FOR ADMISSION NO. 31:**

28     Admit that MATTEL employees, excluding CARTER BRYANT, have

1  performed work for a MATTEL competitor while employed by MATTEL without

2  obtaining MATTEL's approval to perform such work.

3  **REQUEST FOR ADMISSION NO. 32:**

4      Admit that no MATTEL employee, excluding CARTER BRYANT, has

5  performed work for a MATTEL competitor while employed by MATTEL.

6  **REQUEST FOR ADMISSION NO. 33:**

7      Admit that no MATTEL employee, excluding CARTER BRYANT, has

8  performed work for a MATTEL competitor while employed by MATTEL without

9  obtaining MATTEL's approval to perform such work.

10  **REQUEST FOR ADMISSION NO. 34:**

11      Admit that MATTEL employees, excluding CARTER BRYANT, have been

12  paid by entities other than MATTEL while employed by MATTEL.

13  **REQUEST FOR ADMISSION NO. 35:**

14      Admit that MATTEL employees, excluding CARTER BRYANT, have been

15  paid by entities other than MATTEL while employed by MATTEL and have not

16  disclosed such payments to MATTEL.

17  **REQUEST FOR ADMISSION NO. 36:**

18      Admit that no MATTEL employee, excluding CARTER BRYANT, has

19  been paid by entities other than MATTEL while employed by MATTEL.

20  **REQUEST FOR ADMISSION NO. 37:**

21      Admit that no MATTEL employee, excluding CARTER BRYANT, has

22  been paid by entities other than MATTEL while employed by MATTEL without

23  disclosing such payments to MATTEL.

24  **REQUEST FOR ADMISSION NO. 38:**

25      Admit that MATTEL employees, excluding CARTER BRYANT, have been

26  paid by a MATTEL competitor while employed by MATTEL.

27  **REQUEST FOR ADMISSION NO. 39:**

28      Admit that MATTEL employees, excluding CARTER BRYANT, have been

1  paid by a MATTEL competitor while employed by MATTEL and have not

2  disclosed such payments to MATTEL.

3  **REQUEST FOR ADMISSION NO. 40:**

4      Admit that no MATTEL employee, excluding CARTER BRYANT, has

5  been paid by a MATTEL competitor while employed by MATTEL.

6  **REQUEST FOR ADMISSION NO. 41:**

7      Admit that no MATTEL employee, excluding CARTER BRYANT, has

8  been paid by a MATTEL competitor while employed by MATTEL without

9  disclosing such payments to MATTEL.

10  **REQUEST FOR ADMISSION NO. 42:**

11      Admit that the INVENTION AGREEMENT does not prohibit MATTEL

12  employees from leaving MATTEL to work for a competitor of MATTEL.

13  **REQUEST FOR ADMISSION NO. 43:**

14      Admit that MATTEL employees are not prohibited from leaving MATTEL

15  to work for a competitor of MATTEL.

16  **REQUEST FOR ADMISSION NO. 44:**

17      Admit that MATTEL employees, other than CARTER BRYANT, have left

18  MATTEL to work for a competitor of MATTEL.

19  **REQUEST FOR ADMISSION NO. 45:**

20      Admit that the INVENTION AGREEMENT does not prohibit MATTEL

21  employees from leaving MATTEL to start their own businesses.

22  **REQUEST FOR ADMISSION NO. 46:**

23      Admit that the INVENTION AGREEMENT does not prohibit MATTEL

24  employees from leaving MATTEL to start their own toy businesses.

25  **REQUEST FOR ADMISSION NO. 47:**

26      Admit that MATTEL employees, other than CARTER BRYANT, have left

27  MATTEL to start their own businesses.

28

8

**REQUEST FOR ADMISSION NO. 48:**

Admit that MATTEL employees, other than CARTER BRYANT, have left MATTEL to start their own toy businesses.

**REQUEST FOR ADMISSION NO. 49:**

Admit that CARTER BRYANT's employment with MATTEL was at will.

**REQUEST FOR ADMISSION NO. 50:**

Admit that MATTEL employees are not required to give notice prior to terminating their employment with MATTEL.

**REQUEST FOR ADMISSION NO. 51:**

Admit that CARTER BRYANT was not required to give notice prior to terminating his employment with MATTEL in October 2000.

**REQUEST FOR ADMISSION NO. 52:**

Admit that YOUR Eleventh Counterclaim for Conversion against CARTER BRYANT is based solely on CARTER BRYANT's alleged conversion of tangible property or resources that you contend belong to Mattel.

**REQUEST FOR ADMISSION NO. 53:**

Admit that YOUR Eleventh Counterclaim for Conversion against CARTER BRYANT is not based solely on CARTER BRYANT's alleged conversion of tangible property or resources that YOU contend belong to MATTEL.

**REQUEST FOR ADMISSION NO. 54:**

Admit that YOUR Eleventh Counterclaim for Conversion against CARTER BRYANT is based solely on CARTER BRYANT's alleged conversion of intellectual property that YOU contend belongs to MATTEL.

**REQUEST FOR ADMISSION NO. 55:**

Admit that YOUR Eleventh Counterclaim for Conversion against CARTER BRYANT is based solely on CARTER BRYANT's alleged conversion of the idea for a line of fashion dolls which he named Bratz.

408207.03

1 **REQUEST FOR ADMISSION NO. 56:**

2       Admit that YOUR Eleventh Counterclaim for Conversion against CARTER

3 BRYANT is not based solely on CARTER BRYANT's alleged conversion of the

4 idea for a line of fashion dolls which he named Bratz.

5 **REQUEST FOR ADMISSION NO. 57:**

6       Admit that MATTEL employees who perform doll hair rooting as part of the

7 employment duties for MATTEL are not prohibited from performing doll hair

8 rooting for PERSONS other than MATTEL while employed by MATTEL.

9 **REQUEST FOR ADMISSION NO. 58:**

10       Admit that MATTEL employees who perform doll hair rooting as part of the

11 employment duties for MATTEL are prohibited from performing doll hair rooting

12 for PERSONS other than MATTEL while employed by MATTEL.

13 **REQUEST FOR ADMISSION NO. 59:**

14       Admit that MATTEL employees who perform doll face painting as part of

15 the employment duties for MATTEL are not prohibited from performing doll face

16 painting for PERSONS other than MATTEL while employed by MATTEL.

17 **REQUEST FOR ADMISSION NO. 60:**

18       Admit that MATTEL employees who perform doll face painting as part of

19 the employment duties for MATTEL are prohibited from performing doll face

20 painting for PERSONS other than MATTEL while employed by MATTEL.

21 **REQUEST FOR ADMISSION NO. 61:**

22       Admit that MATTEL employees who perform sculpting as part of the

23 employment duties for MATTEL are not prohibited from sculpting for PERSONS

24 other than MATTEL while employed by MATTEL.

25 **REQUEST FOR ADMISSION NO. 62:**

26       Admit that MATTEL employees who perform sculpting as part of the

27 employment duties for MATTEL are prohibited from sculpting for PERSONS

28 other than MATTEL while employed by MATTEL.

CARTER BRYANT'S FIRST SET OF REQUESTS FOR ADMISSION TO MATTEL, INC.
CASE NO. CV 04-09049 SGL (RNBx)

**REQUEST FOR ADMISSION NO. 63:**

Admit that MATTEL doll designers are not prohibited from providing design services to PERSONS other than MATTEL while employed by MATTEL.

**REQUEST FOR ADMISSION NO. 64:**

Admit that MATTEL doll designers are prohibited from providing design services to PERSONS other than MATTEL while employed by MATTEL.

**REQUEST FOR ADMISSION NO. 65:**

Admit that MATTEL employees are not prohibited from using MATTEL property or resources for non-MATTEL projects while employed MATTEL.

**REQUEST FOR ADMISSION NO. 66:**

Admit that MATTEL employees are prohibited from using any MATTEL property or resources for non-MATTEL projects while employed by MATTEL.

**REQUEST FOR ADMISSION NO. 67:**

Admit that if CARTER BRYANT had disclosed his idea for a line of fashion dolls which he named Bratz to MATTEL prior to October 20, 2000, MATTEL would have taken steps to commercially exploit the idea.

**REQUEST FOR ADMISSION NO. 68:**

Admit that if CARTER BRYANT had disclosed his idea for a line of fashion dolls which he named Bratz to MATTEL prior to October 20, 2000, MATTEL would not have taken steps to commercially exploit the idea.

**REQUEST FOR ADMISSION NO. 69:**

Admit that YOU contend that if CARTER BRYANT had disclosed his idea for a line of fashion dolls which he named Bratz to MATTEL prior to October 20, 2000, MATTEL would have taken steps to commercially exploit the idea.

**REQUEST FOR ADMISSION NO. 70:**

Admit that YOU do not contend that if CARTER BRYANT had disclosed his idea for a line of fashion dolls which he named Bratz to MATTEL prior to October 20, 2000, MATTEL would have taken steps to commercially exploit the

11

1  idea.

2  **REQUEST FOR ADMISSION NO. 71:**

3      Admit that MATTEL did not decide to develop its MyScene Barbie line of

4  products until after MATTEL learned of BRATZ.

5  **REQUEST FOR ADMISSION NO. 72:**

6      Admit that MATTEL decided to develop its MyScene Barbie line of

7  products before MATTEL learned of BRATZ.

8  **REQUEST FOR ADMISSION NO. 73:**

9      Admit that MATTEL did not decide to market its MyScene Barbie line of

10  products until after MATTEL learned of BRATZ.

11  **REQUEST FOR ADMISSION NO. 74:**

12      Admit that MATTEL decided to market its MyScene Barbie line of products

13  before MATTEL learned of BRATZ.

14  **REQUEST FOR ADMISSION NO. 75:**

15      Admit that MATTEL decided to develop its MyScene Barbie line of

16  products, in whole or in part, because of the commercial success of BRATZ.

17  **REQUEST FOR ADMISSION NO. 76:**

18      Admit that MATTEL did not decide to develop its MyScene Barbie line of

19  products, in whole or in part, because of the commercial success of BRATZ.

20  **REQUEST FOR ADMISSION NO. 77:**

21      Admit that MATTEL decided to market its MyScene Barbie line of

22  products, in whole or in part, because of the commercial success of BRATZ.

23  **REQUEST FOR ADMISSION NO. 78:**

24      Admit that MATTEL did not decide to market its MyScene Barbie line of

25  products, in whole or in part, because of the commercial success of BRATZ.

26  **REQUEST FOR ADMISSION NO. 79:**

27      Admit that MATTEL did not decide to develop its Flavas line of products

28  until after MATTEL learned of BRATZ.

1  **REQUEST FOR ADMISSION NO. 80:**

2     Admit that MATTEL decided to develop its Flavas line of products before

3  MATTEL learned of BRATZ.

4  **REQUEST FOR ADMISSION NO. 81:**

5     Admit that MATTEL did not decide to market its Flavas line of products

6  until after MATTEL learned of BRATZ

7  **REQUEST FOR ADMISSION NO. 82:**

8     Admit that MATTEL decided to market its Flavas line of products before

9  MATTEL learned of BRATZ.

10  **REQUEST FOR ADMISSION NO. 83:**

11     Admit that MATTEL decided to develop its Flavas line of products, in

12  whole or in part, because of the commercial success of BRATZ.

13  **REQUEST FOR ADMISSION NO. 84:**

14     Admit that MATTEL did not decide to develop its Flavas line of products, in

15  whole or in part, because of the commercial success of BRATZ.

16  **REQUEST FOR ADMISSION NO. 85:**

17     Admit that MATTEL decided to market its Flavas line of products, in whole

18  or in part, because of the commercial success of BRATZ.

19  **REQUEST FOR ADMISSION NO. 86:**

20     Admit that MATTEL did not decide to market its Flavas line of products, in

21  whole or in part, because of the commercial success of BRATZ.

22  **REQUEST FOR ADMISSION NO. 87:**

23     Admit that, in 2000, MATTEL had a business policy or practice of not

24  marketing more than one line of FLANKER PRODUCTS at any one time.

25  **REQUEST FOR ADMISSION NO. 88:**

26     Admit that, in 2000, MATTEL did not have a business policy or practice of

27  not marketing more than one line of FLANKER PRODUCTS at any one time.

28

**REQUEST FOR ADMISSION NO. 89:**

Admit that, in 2001, MATTEL had a business policy or practice of not marketing more than one line of FLANKER PRODUCTS at any one time.

**REQUEST FOR ADMISSION NO. 90:**

Admit that, in 2001, MATTEL did not have any business policy or practice of not marketing more than one line of FLANKER PRODUCTS at any one time.

**REQUEST FOR ADMISSION NO. 91:**

Admit that, in 1999, MATTEL had a business policy or practice of not marketing more than one line of FLANKER PRODUCTS at any one time.

**REQUEST FOR ADMISSION NO. 92:**

Admit that, in 1999, MATTEL did not have any business policy or practice of not marketing more than one line of FLANKER PRODUCTS at any one time.

**REQUEST FOR ADMISSION NO. 93:**

Admit that MATTEL decided not to develop the doll concept known as Toon Teens, in whole or in part, for the reasons set forth in the document produced by MATTEL in this litigation as M0014264-14272, which document has also been marked as Exhibit 286.

**REQUEST FOR ADMISSION NO. 94:**

Admit that MATTEL decided not to develop the doll concept known as Toon Teens, in whole or in part, because of the large size of the dolls' head, legs, and feet compared to the body.

**REQUEST FOR ADMISSION NO. 95:**

Admit that the "Conflict of Interest Questionnaire" produced in by MATTEL in this litigation as document M0001621 does not request the disclosure of any ideas, designs or inventions that CARTER BRYANT may have developed while not employed by MATTEL.

**REQUEST FOR ADMISSION NO. 96:**

Admit that the "Conflict of Interest Questionnaire" produced in by

408207.03

1   MATTEL in this litigation as document M0001621 does not require the disclosure

2   of any ideas, designs or inventions that CARTER BRYANT may have developed

3   while not employed by MATTEL.

4   **REQUEST FOR ADMISSION NO. 97:**

5        Admit that YOU do not contend that the "Conflict of Interest Questionnaire"

6   produced in by MATTEL in this litigation as document M0001621 requests the

7   disclosure of any ideas, designs or inventions that CARTER BRYANT may have

8   developed while not employed by MATTEL.

9   **REQUEST FOR ADMISSION NO. 98:**

10       Admit that YOU contend that the "Conflict of Interest Questionnaire"

11  produced in by MATTEL in this litigation as document M0001621 requests the

12  disclosure of any ideas, designs or inventions that CARTER BRYANT may have

13  developed while not employed by MATTEL.

14  **REQUEST FOR ADMISSION NO. 99:**

15       Admit that YOU do not contend that the "Conflict of Interest Questionnaire"

16  produced in by MATTEL in this litigation as document M0001621 requires the

17  disclosure of any ideas, designs or inventions that CARTER BRYANT may have

18  developed while not employed by MATTEL.

19  **REQUEST FOR ADMISSION NO. 100:**

20       Admit that YOU contend that the "Conflict of Interest Questionnaire"

21  produced in by MATTEL in this litigation as document M0001621 requires the

22  disclosure of any ideas, designs or inventions that CARTER BRYANT may have

23  developed while not employed by MATTEL.

24  **REQUEST FOR ADMISSION NO. 101:**

25       Admit that CARTER BRYANT was not requested by MATTEL to disclose

26  any ideas, designs, or inventions that he may have developed while not employed

27  by MATTEL at the time that BRYANT resumed his employment with MATTEL

28  in January 1999.

**REQUEST FOR ADMISSION NO. 102:**

Admit that CARTER BRYANT was not required by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL at the time that BRYANT resumed his employment with MATTEL in January 1999.

**REQUEST FOR ADMISSION NO. 103:**

Admit that CARTER BRYANT was never requested by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL.

**REQUEST FOR ADMISSION NO. 104:**

Admit that CARTER BRYANT was never required by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL.

**REQUEST FOR ADMISSION NO. 105:**

Admit that YOU do not contend that CARTER BRYANT was requested by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL at the time that BRYANT resumed his employment with MATTEL in January 1999.

**REQUEST FOR ADMISSION NO. 106:**

Admit that YOU contend that CARTER BRYANT was requested by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL at the time that BRYANT resumed his employment with MATTEL in January 1999.

**REQUEST FOR ADMISSION NO. 107:**

Admit that YOU do not contend that CARTER BRYANT was required by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL at the time that BRYANT resumed his employment with MATTEL in January 1999.

16

408207.03

**REQUEST FOR ADMISSION NO. 108:**

Admit that YOU contend that CARTER BRYANT was required by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL at the time that BRYANT resumed his employment with MATTEL in January 1999.

**REQUEST FOR ADMISSION NO. 109:**

Admit that YOU do not contend that CARTER BRYANT was ever requested by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL.

**REQUEST FOR ADMISSION NO. 110:**

Admit that YOU contend that CARTER BRYANT was requested by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL.

**REQUEST FOR ADMISSION NO. 111:**

Admit that YOU do not contend that CARTER BRYANT was ever required by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL.

**REQUEST FOR ADMISSION NO. 112:**

Admit that YOU contend that CARTER BRYANT was required by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL.

Dated:  December 26, 2007                    KEKER & VAN NEST, LLP


By: _____
    Matthew M. Werdegar
    Attorneys for Plaintiff
    CARTER BRYANT

408207.03

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On December 26, 2007, I served the following document(s):

**CARTER BRYANT'S FIRST SET OF REQUESTS FOR ADMISSION TO MATTEL, INC.**

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery.

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel:  213/443-3000
Fax:  213/443-3100
Email:  johnquinn@quinnemanuel.com
Email:  michaelzeller@quinnemanuel.com

Thomas J. Nolan
Skadden Arps Slate Meagher & Flom
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel: . 213/687-5000
Fax:  213/687-5600
Email:  tnolan@skadden.com

Alexander H. Cote
Overland Borenstein Scheper & Kim LLP
300 S. Grand Avenue, Suite 2750
Los Angeles, California 90071
Tel:  213/613-4660
Fax:  213/613-4656
Email :  acote@obsklaw.com

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

1    Executed on December 26, 2007, at San Francisco, California.

2        I declare under penalty of perjury under the laws of the State of California

3    that the above is true and correct.

4                                              JOLIE A. SELBY

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

396359.01

# EXHIBIT 15

KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727<br><br>**CARTER BRYANT'S SECOND SET OF REQUESTS FOR ADMISSION TO MATTEL, INC.** |

12-86

408244.02

1   Pursuant to Federal Rule of Civil Procedure 36, Plaintiff CARTER

2   BRYANT requests that Defendant Mattel, Inc. respond in writing to the Requests

3   for Admission set forth below within thirty (30) days of service.

**DEFINITIONS**

4

5   1.   "MATTEL" or "YOU" means and refers to plaintiff and counter-

6   defendant Mattel, Inc., its current employees, officers, directors, agents,

7   representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-

8   in-interest and successors-in-interest, and any other PERSON acting on its behalf,

9   pursuant to its authority or subject to its control.

10   2.   "BRYANT" or "CARTER BRYANT" means and refers to Carter

11   Bryant and his agents, representatives, attorneys, experts or any other PERSON

12   acting on his behalf, pursuant to his authority or subject to his control.

13   3.   "BRATZ" means and refers to each image, character, logo, doll,

14   fashion doll, plush toy, styling head, toy, accessory, product, packaging, theme, or

15   other thing or matter that is or has ever been manufactured, marketed or sold by

16   MGA, or others under license, as part of a line of goods or merchandise commonly

17   known as "Bratz", or sold and marketed under the "Bratz" trademark or trade

18   dress.

19   4.   "DESIGN" means and refers to any and all representations, whether

20   two-dimensional or three-dimensional, and whether in tangible, digital, electronic,

21   or other form, including but not limited to all works, designs, artwork, sketches,

22   drawings, illustrations, representations, depictions, blueprints, schematics,

23   diagrams, images, sculptures, prototypes, models, samples, or rotocasts.

24   5.   "INCORPORATED" means contained, represented, embodied,

25   expressed, fixed or reflected in any manner, whether in whole or in part.

26   6.   "INVENTION AGREEMENT" means the agreement entitled

27   "Employee Confidential Information and Inventions Agreement" produced by

28   MATTEL in this litigation as document M0001596.

1

7.     The words "and" and "or" shall be construed in the conjunctive or disjunctive, whichever makes the request more inclusive.

8.     The use of the singular form of any word includes the plural and vice versa.

9.     The terms "any" and "all" are interchangeable.

## INSTRUCTIONS

1.     Unless otherwise stated, the time period for each request herein is January 1, 1995 to the present.

2.     Each response shall be preceded by the Request for Admission to which it responds and shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reason(s) for the objection shall be stated in lieu of that portion of the answer to which the objection applies.

3.     All responses to the Requests for Admission shall be signed by the person making them and all objections signed by the attorney making them under the standards set forth in Federal Rule of Civil Procedure 11.  No part of the Request for Admission shall be left unanswered merely because an objection has been interposed to another part of that Request.

4.     If MATTEL withholds information responsive, in whole or in part, to any Request for Admission on any basis, please identify:  (a) any privilege or immunity from discovery asserted; (b) all documents or things which contain or refer to the information; (c) all individuals having knowledge of the information; (d) the subject matter and general nature of the information; and (e) all facts which are alleged to support the assertion of privilege or immunity.

The obligation to provide the information sought by these discovery requests, or parts thereof, is continuing within the requirements of Federal Rule of Civil Procedure 26(e).

## REQUESTS FOR ADMISSION

2

408244.02

**REQUEST FOR ADMISSION NO. 113:**

Admit that CARTER BRYANT conceived of the idea for BRATZ prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 114:**

Admit that YOU do not contend that CARTER BRYANT conceived of the idea for BRATZ after January 3, 1999.

**REQUEST FOR ADMISSION NO. 115:**

Admit that if CARTER BRYANT conceived of his idea for BRATZ before January 3, 1999 and if CARTER BRYANT's idea was not reduced to practice until after October 21, 2000, then CARTER BRYANT did not breach Section 2[a] of the INVENTION AGREEMENT.

**REQUEST FOR ADMISSION NO. 116:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 175 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 117:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 175 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 118:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 176 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 119:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 176 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 120:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 177 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 121:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 177 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 122:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 178 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 123:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 178 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 124:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 179 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 125:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 179 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 126:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 180 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 127:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 180 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 128:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 181 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 129:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 181 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 130:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 182 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 131:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 182 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 132:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 183 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 133:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 183 after January 3, 1999.

1  **REQUEST FOR ADMISSION NO. 134:**

2      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

3  the document bearing the Bates no. BRYANT 186 prior to January 3, 1999 but

4  after April 1998.

5  **REQUEST FOR ADMISSION NO. 135:**

6      Admit that YOU do not contend that CARTER BRYANT created the

7  DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 186

8  after January 3, 1999.

9  **REQUEST FOR ADMISSION NO. 136:**

10      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

11  the document bearing the Bates no. BRYANT 189 prior to January 3, 1999 but

12  after April 1998.

13  **REQUEST FOR ADMISSION NO. 137:**

14      Admit that YOU do not contend that CARTER BRYANT created the

15  DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 189

16  after January 3, 1999.

17  **REQUEST FOR ADMISSION NO. 138:**

18      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

19  the document bearing the Bates no. BRYANT 190 prior to January 3, 1999 but

20  after April 1998.

21  **REQUEST FOR ADMISSION NO. 139:**

22      Admit that YOU do not contend that CARTER BRYANT created the

23  DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 190

24  after January 3, 1999.

25  **REQUEST FOR ADMISSION NO. 140:**

26      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

27  the document bearing the Bates no. BRYANT 192 prior to January 3, 1999 but

28  after April 1998.

**REQUEST FOR ADMISSION NO. 141:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 192 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 142:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 193 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 143:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 193 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 144:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 194 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 145:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 194 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 146:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 195 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 147:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 195 after January 3, 1999.

7

408244.02

**REQUEST FOR ADMISSION NO. 148:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 196 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 149:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 196 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 150:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 197 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 151:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 197 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 152:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 198 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 153:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 198 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 154:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 199 prior to January 3, 1999 but after April 1998.

1   **REQUEST FOR ADMISSION NO. 155:**

2       Admit that YOU do not contend that CARTER BRYANT created the

3   DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 199

4   after January 3, 1999.

5   **REQUEST FOR ADMISSION NO. 156:**

6       Admit that CARTER BRYANT created the DESIGN INCORPORATED in

7   the document bearing the Bates no. BRYANT 200 prior to January 3, 1999 but

8   after April 1998.

9   **REQUEST FOR ADMISSION NO. 157:**

10      Admit that YOU do not contend that CARTER BRYANT created the

11  DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 200

12  after January 3, 1999.

13  **REQUEST FOR ADMISSION NO. 158:**

14      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

15  the document bearing the Bates no. BRYANT 201 prior to January 3, 1999 but

16  after April 1998.

17  **REQUEST FOR ADMISSION NO. 159:**

18      Admit that YOU do not contend that CARTER BRYANT created the

19  DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 201

20  after January 3, 1999.

21  **REQUEST FOR ADMISSION NO. 160:**

22      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

23  the document bearing the Bates no. BRYANT 202 prior to January 3, 1999 but

24  after April 1998.

25  **REQUEST FOR ADMISSION NO. 161:**

26      Admit that YOU do not contend that CARTER BRYANT created the

27  DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 202

28  after January 3, 1999.

**REQUEST FOR ADMISSION NO. 162:**

1    Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 203 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 163:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 203 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 164:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 204 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 165:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 204 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 166:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 205 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 167:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 205 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 168:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 206 prior to January 3, 1999 but after April 1998.

10

1  **REQUEST FOR ADMISSION NO. 169:**

2      Admit that YOU do not contend that CARTER BRYANT created the

3  DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 206

4  after January 3, 1999.

5  **REQUEST FOR ADMISSION NO. 170:**

6      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

7  the document bearing the Bates no. BRYANT 207 prior to January 3, 1999 but

8  after April 1998.

9  **REQUEST FOR ADMISSION NO. 171:**

10      Admit that YOU do not contend that CARTER BRYANT created the

11  DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 207

12  after January 3, 1999.

13  **REQUEST FOR ADMISSION NO. 172:**

14      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

15  the document bearing the Bates no. BRYANT 208 prior to January 3, 1999 but

16  after April 1998.

17  **REQUEST FOR ADMISSION NO. 173:**

18      Admit that YOU do not contend that CARTER BRYANT created the

19  DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 208

20  after January 3, 1999.

21  **REQUEST FOR ADMISSION NO. 174:**

22      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

23  the document bearing the Bates no. BRYANT 209 prior to January 3, 1999 but

24  after April 1998.

25  **REQUEST FOR ADMISSION NO. 175:**

26      Admit that YOU do not contend that CARTER BRYANT created the

27  DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 209

28  after January 3, 1999.

408244.02

1 **REQUEST FOR ADMISSION NO. 176:**

2    Admit that CARTER BRYANT created the DESIGN INCORPORATED in

3 the document bearing the Bates no. BRYANT 210 prior to January 3, 1999 but

4 after April 1998.

5 **REQUEST FOR ADMISSION NO. 177:**

6    Admit that YOU do not contend that CARTER BRYANT created the

7 DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 210

8 after January 3, 1999.

9 **REQUEST FOR ADMISSION NO. 178:**

10    Admit that CARTER BRYANT created the DESIGN INCORPORATED in

11 the document bearing the Bates no. BRYANT 211 prior to January 3, 1999 but

12 after April 1998.

13 **REQUEST FOR ADMISSION NO. 179:**

14    Admit that YOU do not contend that CARTER BRYANT created the

15 DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 211

16 after January 3, 1999.

17 **REQUEST FOR ADMISSION NO. 180:**

18    Admit that CARTER BRYANT created the DESIGN INCORPORATED in

19 the document bearing the Bates no. BRYANT 212 prior to January 3, 1999 but

20 after April 1998.

21 **REQUEST FOR ADMISSION NO. 181:**

22    Admit that YOU do not contend that CARTER BRYANT created the

23 DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 212

24 after January 3, 1999.

25 **REQUEST FOR ADMISSION NO. 182:**

26    Admit that CARTER BRYANT created the DESIGN INCORPORATED in

27 the document bearing the Bates no. BRYANT 213 prior to January 3, 1999 but

28 after April 1998.

**REQUEST FOR ADMISSION NO. 183:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 213 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 184:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 214 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 185:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 214 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 186:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 215 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 187:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 215 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 188:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 216 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 189:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 216 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 190:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 217 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 191:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 217 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 192:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 218 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 193:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 218 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 194:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 219 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 195:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 219 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 196:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 220 prior to January 3, 1999 but after April 1998.

14

**REQUEST FOR ADMISSION NO. 197:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 220 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 198:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 277 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 199:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 277 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 200:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 300 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 201:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 300 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 202:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 301 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 203:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 301 after January 3, 1999.

15

**REQUEST FOR ADMISSION NO. 204:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 302 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 205:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 302 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 206:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 303 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 207:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 303 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 208:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 1003 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 209:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 1003 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 210:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 1243 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 211:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 1243 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 212:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 1977 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 213:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 1977 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 214:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 1993 prior to January 3, 1999 but after April 1998.

**REQUEST FOR ADMISSION NO. 215:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 1993 after January 3, 1999.

**REQUEST FOR ADMISSION NO. 216:**

Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document produced as Exhibit 1 to Carter Bryant's deposition.

**REQUEST FOR ADMISSION NO. 217:**

Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document produced as Exhibit 1 to Carter Bryant's deposition.

408244.02

1    **REQUEST FOR ADMISSION NO. 218:**

2         Admit that CARTER BRYANT created the DESIGN INCORPORATED in

3    the document produced as Exhibit 2 to Carter Bryant's deposition.

4    **REQUEST FOR ADMISSION NO. 219:**

5         Admit that YOU do not contend that CARTER BRYANT created the

6    DESIGN INCORPORATED in the document produced as Exhibit 2 to Carter

7    Bryant's deposition.

8    **REQUEST FOR ADMISSION NO. 220:**

9         Admit that CARTER BRYANT created the DESIGN INCORPORATED in

10   the document produced as Exhibit 3 to Carter Bryant's deposition.

11   **REQUEST FOR ADMISSION NO. 221:**

12        Admit that YOU do not contend that CARTER BRYANT created the

13   DESIGN INCORPORATED in the document produced as Exhibit 3 to Carter

14   Bryant's deposition.

15   **REQUEST FOR ADMISSION NO. 222:**

16        Admit that CARTER BRYANT created the DESIGN INCORPORATED in

17   the document bearing the Bates no. BRYANT 278 prior to January 3, 1999 but

18   after April 1998.

19   **REQUEST FOR ADMISSION NO. 223:**

20        Admit that YOU do not contend that CARTER BRYANT created the

21   DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 278

22   after January 3, 1999.

23   **REQUEST FOR ADMISSION NO. 224:**

24        Admit that CARTER BRYANT created the DESIGN INCORPORATED in

25   the document produced as Exhibit 704 to Janet Bryant's Deposition prior to

26   January 3, 1999 but after April 1998.

27   **REQUEST FOR ADMISSION NO. 225:**

28        Admit that YOU do not contend that CARTER BRYANT created the

18

1  DESIGN INCORPORATED in the document produced as Exhibit 704 to Janet

2  Bryant's deposition after January 3, 1999.

3  **REQUEST FOR ADMISSION NO. 226:**

4      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

5  the document produced as Exhibit 706 to Janet Bryant's Deposition prior to

6  January 3, 1999 but after April 1998.

7  **REQUEST FOR ADMISSION NO. 227:**

8      Admit that YOU do not contend that CARTER BRYANT created the

9  DESIGN INCORPORATED in the document produced as Exhibit 706 to Janet

10  Bryant's deposition after January 3, 1999.

11  **REQUEST FOR ADMISSION NO. 228:**

12      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

13  the document produced as Exhibit 707 to Janet Bryant's Deposition prior to

14  January 3, 1999 but after April 1998.

15  **REQUEST FOR ADMISSION NO. 229:**

16      Admit that YOU do not contend that CARTER BRYANT created the

17  DESIGN INCORPORATED in the document produced as Exhibit 707 to Janet

18  Bryant's deposition after January 3, 1999.

19  **REQUEST FOR ADMISSION NO. 230:**

20      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

21  the document produced as Exhibit 708 to Janet Bryant's Deposition prior to

22  January 3, 1999 but after April 1998.

23  **REQUEST FOR ADMISSION NO. 231:**

24      Admit that YOU do not contend that CARTER BRYANT created the

25  DESIGN INCORPORATED in the document produced as Exhibit 708 to Janet

26  Bryant's deposition after January 3, 1999.

27  **REQUEST FOR ADMISSION NO. 232:**

28      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

19

406244.02

1    the document produced as Exhibit 709 to Janet Bryant's Deposition prior to

2    January 3, 1999 but after April 1998.

3    **REQUEST FOR ADMISSION NO. 233:**

4      Admit that YOU do not contend that CARTER BRYANT created the

5    DESIGN INCORPORATED in the document produced as Exhibit 709 to Janet

6    Bryant's deposition after January 3, 1999.

7    **REQUEST FOR ADMISSION NO. 234:**

8      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

9    the document produced as Exhibit 710 to Janet Bryant's Deposition prior to

10    January 3, 1999 but after April 1998.

11    **REQUEST FOR ADMISSION NO. 235:**

12      Admit that YOU do not contend that CARTER BRYANT created the

13    DESIGN INCORPORATED in the document produced as Exhibit 710 to Janet

14    Bryant's deposition after January 3, 1999.

15    **REQUEST FOR ADMISSION NO. 236:**

16      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

17    the document produced as Exhibit 711 to Janet Bryant's Deposition prior to

18    January 3, 1999 but after April 1998.

19    **REQUEST FOR ADMISSION NO. 237:**

20      Admit that YOU do not contend that CARTER BRYANT created the

21    DESIGN INCORPORATED in the document produced as Exhibit 711 to Janet

22    Bryant's deposition after January 3, 1999.

23    **REQUEST FOR ADMISSION NO. 238:**

24      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

25    the document produced as Exhibit 712 to Janet Bryant's Deposition prior to

26    January 3, 1999 but after April 1998.

27    **REQUEST FOR ADMISSION NO. 239:**

28      Admit that YOU do not contend that CARTER BRYANT created the

406244.02

1   DESIGN INCORPORATED in the document produced as Exhibit 712 to Janet

2   Bryant's deposition after January 3, 1999.

3   **REQUEST FOR ADMISSION NO. 240:**

4        Admit that CARTER BRYANT created the DESIGN INCORPORATED in

5   the document produced as Exhibit 713 to Janet Bryant's Deposition prior to

6   January 3, 1999 but after April 1998.

7   **REQUEST FOR ADMISSION NO. 241:**

8        Admit that YOU do not contend that CARTER BRYANT created the

9   DESIGN INCORPORATED in the document produced as Exhibit 713 to Janet

10  Bryant's deposition after January 3, 1999.

11  **REQUEST FOR ADMISSION NO. 242:**

12       Admit that CARTER BRYANT created the DESIGN INCORPORATED in

13  the document produced as Exhibit 733 to Janet Bryant's Deposition prior to

14  January 3, 1999 but after April 1998.

15  **REQUEST FOR ADMISSION NO. 243:**

16       Admit that YOU do not contend that CARTER BRYANT created the

17  DESIGN INCORPORATED in the document produced as Exhibit 733 to Janet

18  Bryant's deposition after January 3, 1999.

19  **REQUEST FOR ADMISSION NO. 244:**

20       Admit that CARTER BRYANT created the DESIGN INCORPORATED in

21  the document produced as Exhibit 734 to Janet Bryant's Deposition prior to

22  January 3, 1999 but after April 1998.

23  **REQUEST FOR ADMISSION NO. 245:**

24       Admit that YOU do not contend that CARTER BRYANT created the

25  DESIGN INCORPORATED in the document produced as Exhibit 734 to Janet

26  Bryant's deposition after January 3, 1999.

27  **REQUEST FOR ADMISSION NO. 246:**

28       Admit that CARTER BRYANT created the DESIGN INCORPORATED in

21

1   the document produced as Exhibit 735 to Janet Bryant's Deposition prior to

2   January 3, 1999 but after April 1998.

3   **REQUEST FOR ADMISSION NO. 247:**

4       Admit that YOU do not contend that CARTER BRYANT created the

5   DESIGN INCORPORATED in the document produced as Exhibit 735 to Janet

6   Bryant's deposition after January 3, 1999.

7   **REQUEST FOR ADMISSION NO. 248:**

8       Admit that CARTER BRYANT created the DESIGN INCORPORATED in

9   the document produced as Exhibit 736 to Janet Bryant's Deposition prior to

10  January 3, 1999 but after April 1998.

11  **REQUEST FOR ADMISSION NO. 249:**

12      Admit that YOU do not contend that CARTER BRYANT created the

13  DESIGN INCORPORATED in the document produced as Exhibit 736 to Janet

14  Bryant's deposition after January 3, 1999.

15  **REQUEST FOR ADMISSION NO. 250:**

16      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

17  the document produced as Exhibit 737 to Janet Bryant's Deposition prior to

18  January 3, 1999 but after April 1998.

19  **REQUEST FOR ADMISSION NO. 251:**

20      Admit that YOU do not contend that CARTER BRYANT created the

21  DESIGN INCORPORATED in the document produced as Exhibit 737 to Janet

22  Bryant's deposition after January 3, 1999.

23  **REQUEST FOR ADMISSION NO. 252:**

24      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

25  the document produced as Exhibit 738 to Janet Bryant's Deposition prior to

26  January 3, 1999 but after April 1998.

27  **REQUEST FOR ADMISSION NO. 253:**

28      Admit that YOU do not contend that CARTER BRYANT created the

1   DESIGN INCORPORATED in the document produced as Exhibit 738 to Janet

2   Bryant's deposition after January 3, 1999.

3   **REQUEST FOR ADMISSION NO. 254:**

4       Admit that CARTER BRYANT created the DESIGN INCORPORATED in

5   the document produced as Exhibit 739 to Janet Bryant's Deposition prior to

6   January 3, 1999 but after April 1998.

7   **REQUEST FOR ADMISSION NO. 255:**

8       Admit that YOU do not contend that CARTER BRYANT created the

9   DESIGN INCORPORATED in the document produced as Exhibit 739 to Janet

10  Bryant's deposition after January 3, 1999.

11  **REQUEST FOR ADMISSION NO. 256:**

12      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

13  the document produced as Exhibit 740 to Janet Bryant's Deposition prior to

14  January 3, 1999 but after April 1998.

15  **REQUEST FOR ADMISSION NO. 257:**

16      Admit that YOU do not contend that CARTER BRYANT created the

17  DESIGN INCORPORATED in the document produced as Exhibit 740 to Janet

18  Bryant's deposition after January 3, 1999.

19  **REQUEST FOR ADMISSION NO. 258:**

20      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

21  the document produced as Exhibit 741 to Janet Bryant's Deposition prior to

22  January 3, 1999 but after April 1998.

23  **REQUEST FOR ADMISSION NO. 259:**

24      Admit that YOU do not contend that CARTER BRYANT created the

25  DESIGN INCORPORATED in the document produced as Exhibit 741 to Janet

26  Bryant's deposition after January 3, 1999.

27  **REQUEST FOR ADMISSION NO. 260:**

28      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

23

1   the document produced as Exhibit 743 to Janet Bryant's Deposition prior to
2   January 3, 1999 but after April 1998.
3   **REQUEST FOR ADMISSION NO. 261:**
4       Admit that YOU do not contend that CARTER BRYANT created the
5   DESIGN INCORPORATED in the document produced as Exhibit 743 to Janet
6   Bryant's deposition after January 3, 1999.
7   **REQUEST FOR ADMISSION NO. 262:**
8       Admit that CARTER BRYANT created the DESIGN INCORPORATED in
9   the document produced as Exhibit 747 to Janet Bryant's Deposition prior to
10  January 3, 1999 but after April 1998.
11  **REQUEST FOR ADMISSION NO. 263:**
12      Admit that YOU do not contend that CARTER BRYANT created the
13  DESIGN INCORPORATED in the document produced as Exhibit 747 to Janet
14  Bryant's deposition after January 3, 1999.
15  **REQUEST FOR ADMISSION NO. 264:**
16      Admit that CARTER BRYANT created the DESIGN INCORPORATED in
17  the document produced as Exhibit 748 to Janet Bryant's Deposition prior to
18  January 3, 1999 but after April 1998.
19  **REQUEST FOR ADMISSION NO. 265:**
20      Admit that YOU do not contend that CARTER BRYANT created the
21  DESIGN INCORPORATED in the document produced as Exhibit 748 to Janet
22  Bryant's deposition after January 3, 1999.
23  **REQUEST FOR ADMISSION NO. 266:**
24      Admit that CARTER BRYANT created the DESIGN INCORPORATED in
25  the document produced as Exhibit 749 to Janet Bryant's Deposition prior to
26  January 3, 1999 but after April 1998.
27  **REQUEST FOR ADMISSION NO. 267:**
28      Admit that YOU do not contend that CARTER BRYANT created the

24

1  DESIGN INCORPORATED in the document produced as Exhibit 749 to Janet

2  Bryant's deposition after January 3, 1999.

3  **REQUEST FOR ADMISSION NO. 268:**

4      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

5  the document produced as Exhibit 751 to Janet Bryant's Deposition prior to

6  January 3, 1999 but after April 1998.

7  **REQUEST FOR ADMISSION NO. 269:**

8      Admit that YOU do not contend that CARTER BRYANT created the

9  DESIGN INCORPORATED in the document produced as Exhibit 751 to Janet

10  Bryant's deposition after January 3, 1999.

11  **REQUEST FOR ADMISSION NO. 270:**

12      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

13  the document produced as Exhibit 752 to Janet Bryant's Deposition prior to

14  January 3, 1999 but after April 1998.

15  **REQUEST FOR ADMISSION NO. 271:**

16      Admit that YOU do not contend that CARTER BRYANT created the

17  DESIGN INCORPORATED in the document produced as Exhibit 752 to Janet

18  Bryant's deposition after January 3, 1999.

19  **REQUEST FOR ADMISSION NO. 272:**

20      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

21  the document produced as Exhibit 753 to Janet Bryant's Deposition prior to

22  January 3, 1999 but after April 1998.

23  **REQUEST FOR ADMISSION NO. 273:**

24      Admit that YOU do not contend that CARTER BRYANT created the

25  DESIGN INCORPORATED in the document produced as Exhibit 753 to Janet

26  Bryant's deposition after January 3, 1999.

27  **REQUEST FOR ADMISSION NO. 274:**

28      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

1   the document produced as Exhibit 754 to Janet Bryant's Deposition prior to
2   January 3, 1999 but after April 1998.

3   **REQUEST FOR ADMISSION NO. 275:**

4       Admit that YOU do not contend that CARTER BRYANT created the
5   DESIGN INCORPORATED in the document produced as Exhibit 754 to Janet
6   Bryant's deposition after January 3, 1999.

7   **REQUEST FOR ADMISSION NO. 276:**

8       Admit that CARTER BRYANT created the DESIGN INCORPORATED in
9   the document produced as Exhibit 755 to Janet Bryant's Deposition prior to
10  January 3, 1999 but after April 1998.

11  **REQUEST FOR ADMISSION NO. 277:**

12      Admit that YOU do not contend that CARTER BRYANT created the
13  DESIGN INCORPORATED in the document produced as Exhibit 755 to Janet
14  Bryant's deposition after January 3, 1999.

15  **REQUEST FOR ADMISSION NO. 278:**

16      Admit that CARTER BRYANT created the DESIGN INCORPORATED in
17  the document produced as Exhibit 756 to Janet Bryant's Deposition prior to
18  January 3, 1999 but after April 1998.

19  **REQUEST FOR ADMISSION NO. 279:**

20      Admit that YOU do not contend that CARTER BRYANT created the
21  DESIGN INCORPORATED in the document produced as Exhibit 756 to Janet
22  Bryant's deposition after January 3, 1999.

23  **REQUEST FOR ADMISSION NO. 280:**

24      Admit that CARTER BRYANT created the DESIGN INCORPORATED in
25  the document produced as Exhibit 757 to Janet Bryant's Deposition prior to
26  January 3, 1999 but after April 1998.

27  **REQUEST FOR ADMISSION NO. 281:**

28      Admit that YOU do not contend that CARTER BRYANT created the

1   DESIGN INCORPORATED in the document produced as Exhibit 757 to Janet

2   Bryant's deposition after January 3, 1999.

3   **REQUEST FOR ADMISSION NO. 282:**

4        Admit that CARTER BRYANT created the DESIGN INCORPORATED in

5   the document produced as Exhibit 758 to Janet Bryant's Deposition prior to

6   January 3, 1999 but after April 1998.

7   **REQUEST FOR ADMISSION NO. 283:**

8        Admit that YOU do not contend that CARTER BRYANT created the

9   DESIGN INCORPORATED in the document produced as Exhibit 758 to Janet

10  Bryant's deposition after January 3, 1999.

11  **REQUEST FOR ADMISSION NO. 284:**

12       Admit that CARTER BRYANT created the DESIGN INCORPORATED in

13  the document produced as Exhibit 759 to Janet Bryant's Deposition prior to

14  January 3, 1999 but after April 1998.

15  **REQUEST FOR ADMISSION NO. 285:**

16       Admit that YOU do not contend that CARTER BRYANT created the

17  DESIGN INCORPORATED in the document produced as Exhibit 759 to Janet

18  Bryant's deposition after January 3, 1999.

19  **REQUEST FOR ADMISSION NO. 286:**

20       Admit that CARTER BRYANT created the DESIGN INCORPORATED in

21  the document produced as Exhibit 760 to Janet Bryant's Deposition prior to

22  January 3, 1999 but after April 1998.

23  **REQUEST FOR ADMISSION NO. 287:**

24       Admit that YOU do not contend that CARTER BRYANT created the

25  DESIGN INCORPORATED in the document produced as Exhibit 760 to Janet

26  Bryant's deposition after January 3, 1999.

27  **REQUEST FOR ADMISSION NO. 288:**

28       Admit that CARTER BRYANT created the DESIGN INCORPORATED in

CARTER BRYANT'S SECOND SET OF REQUESTS FOR ADMISSION TO MATTEL, INC
CASE NO. CV 04-09049 SGL (RNBx)

1   the document produced as Exhibit 763 to Janet Bryant's Deposition prior to

2   January 3, 1999 but after April 1998.

3   **REQUEST FOR ADMISSION NO. 289:**

4       Admit that YOU do not contend that CARTER BRYANT created the

5   DESIGN INCORPORATED in the document produced as Exhibit 763 to Janet

6   Bryant's deposition after January 3, 1999.

7   **REQUEST FOR ADMISSION NO. 290:**

8       Admit that CARTER BRYANT created the DESIGN INCORPORATED in

9   the document produced as Exhibit 764 to Janet Bryant's Deposition prior to

10  January 3, 1999 but after April 1998.

11  **REQUEST FOR ADMISSION NO. 291:**

12      Admit that YOU do not contend that CARTER BRYANT created the

13  DESIGN INCORPORATED in the document produced as Exhibit 764 to Janet

14  Bryant's deposition after January 3, 1999.

15  **REQUEST FOR ADMISSION NO. 292:**

16      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

17  the document produced as Exhibit 765 to Janet Bryant's Deposition prior to

18  January 3, 1999 but after April 1998.

19  **REQUEST FOR ADMISSION NO. 293:**

20      Admit that YOU do not contend that CARTER BRYANT created the

21  DESIGN INCORPORATED in the document produced as Exhibit 765 to Janet

22  Bryant's deposition after January 3, 1999.

23  **REQUEST FOR ADMISSION NO. 294:**

24      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

25  the document produced as Exhibit 766 to Janet Bryant's Deposition prior to

26  January 3, 1999 but after April 1998.

27  **REQUEST FOR ADMISSION NO. 295:**

28      Admit that YOU do not contend that CARTER BRYANT created the

1    DESIGN INCORPORATED in the document produced as Exhibit 766 to Janet

2    Bryant's deposition after January 3, 1999.

3    **REQUEST FOR ADMISSION NO. 296:**

4    　　Admit that CARTER BRYANT created the DESIGN INCORPORATED in

5    the document produced as Exhibit 774 to Janet Bryant's Deposition prior to

6    January 3, 1999 but after April 1998.

7    **REQUEST FOR ADMISSION NO. 297:**

8    　　Admit that YOU do not contend that CARTER BRYANT created the

9    DESIGN INCORPORATED in the document produced as Exhibit 774 to Janet

10   Bryant's deposition after January 3, 1999.

11   **REQUEST FOR ADMISSION NO. 298:**

12   　　Admit that CARTER BRYANT created the DESIGN INCORPORATED in

13   the document produced as Exhibit 775 to Janet Bryant's Deposition prior to

14   January 3, 1999 but after April 1998.

15   **REQUEST FOR ADMISSION NO. 299:**

16   　　Admit that YOU do not contend that CARTER BRYANT created the

17   DESIGN INCORPORATED in the document produced as Exhibit 775 to Janet

18   Bryant's deposition after January 3, 1999.

19   **REQUEST FOR ADMISSION NO. 300:**

20   　　Admit that CARTER BRYANT created the DESIGN INCORPORATED in

21   the document produced as Exhibit 776 to Janet Bryant's Deposition prior to

22   January 3, 1999 but after April 1998.

23   **REQUEST FOR ADMISSION NO. 301:**

24   　　Admit that YOU do not contend that CARTER BRYANT created the

25   DESIGN INCORPORATED in the document produced as Exhibit 776 to Janet

26   Bryant's deposition after January 3, 1999.

27   **REQUEST FOR ADMISSION NO. 302:**

28   　　Admit that CARTER BRYANT created the DESIGN INCORPORATED in

1   the document produced as Exhibit 777 to Janet Bryant's Deposition prior to

2   January 3, 1999 but after April 1998.

3   **REQUEST FOR ADMISSION NO. 303:**

4       Admit that YOU do not contend that CARTER BRYANT created the

5   DESIGN INCORPORATED in the document produced as Exhibit 777 to Janet

6   Bryant's deposition after January 3, 1999.

7   **REQUEST FOR ADMISSION NO. 304:**

8       Admit that CARTER BRYANT created the DESIGN INCORPORATED in

9   the document produced as Exhibit 778 to Janet Bryant's Deposition prior to

10   January 3, 1999 but after April 1998.

11   **REQUEST FOR ADMISSION NO. 305:**

12       Admit that YOU do not contend that CARTER BRYANT created the

13   DESIGN INCORPORATED in the document produced as Exhibit 778 to Janet

14   Bryant's deposition after January 3, 1999.

15   **REQUEST FOR ADMISSION NO. 306:**

16       Admit that CARTER BRYANT created the DESIGN INCORPORATED in

17   the document produced as Exhibit 779 to Janet Bryant's Deposition prior to

18   January 3, 1999 but after April 1998.

19   **REQUEST FOR ADMISSION NO. 307:**

20       Admit that YOU do not contend that CARTER BRYANT created the

21   DESIGN INCORPORATED in the document produced as Exhibit 779 to Janet

22   Bryant's deposition after January 3, 1999.

23   **REQUEST FOR ADMISSION NO. 308:**

24       Admit that CARTER BRYANT created the DESIGN INCORPORATED in

25   the document produced as Exhibit 781 to Janet Bryant's Deposition prior to

26   January 3, 1999 but after April 1998.

27   **REQUEST FOR ADMISSION NO. 309:**

28       Admit that YOU do not contend that CARTER BRYANT created the

1    DESIGN INCORPORATED in the document produced as Exhibit 781 to Janet

2    Bryant's deposition after January 3, 1999.

3    **REQUEST FOR ADMISSION NO. 310:**

4        Admit that CARTER BRYANT created the DESIGN INCORPORATED in

5    the document produced as Exhibit 786 to Janet Bryant's Deposition prior to

6    January 3, 1999 but after April 1998.

7    **REQUEST FOR ADMISSION NO. 311:**

8        Admit that YOU do not contend that CARTER BRYANT created the

9    DESIGN INCORPORATED in the document produced as Exhibit 786 to Janet

10   Bryant's deposition after January 3, 1999.

11   **REQUEST FOR ADMISSION NO. 312:**

12       Admit that CARTER BRYANT created the DESIGN INCORPORATED in

13   the document produced as Exhibit 791 to Janet Bryant's Deposition prior to

14   January 3, 1999 but after April 1998.

15   **REQUEST FOR ADMISSION NO. 313:**

16       Admit that YOU do not contend that CARTER BRYANT created the

17   DESIGN INCORPORATED in the document produced as Exhibit 791 to Janet

18   Bryant's deposition after January 3, 1999.

19   **REQUEST FOR ADMISSION NO. 314:**

20       Admit that CARTER BRYANT created the DESIGN INCORPORATED in

21   the document produced as Exhibit 792 to Janet Bryant's Deposition prior to

22   January 3, 1999 but after April 1998.

23   **REQUEST FOR ADMISSION NO. 315:**

24       Admit that YOU do not contend that CARTER BRYANT created the

25   DESIGN INCORPORATED in the document produced as Exhibit 792 to Janet

26   Bryant's deposition after January 3, 1999.

27   **REQUEST FOR ADMISSION NO. 316:**

28       Admit that CARTER BRYANT created the DESIGN INCORPORATED in

31

408244.02

1  the document produced as Exhibit 793 to Janet Bryant's Deposition prior to

2  January 3, 1999 but after April 1998.

3  **REQUEST FOR ADMISSION NO. 317:**

4      Admit that YOU do not contend that CARTER BRYANT created the

5  DESIGN INCORPORATED in the document produced as Exhibit 793 to Janet

6  Bryant's deposition after January 3, 1999.

7  **REQUEST FOR ADMISSION NO. 318:**

8      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

9  the document produced as Exhibit 794 to Janet Bryant's Deposition prior to

10  January 3, 1999 but after April 1998.

11  **REQUEST FOR ADMISSION NO. 319:**

12      Admit that YOU do not contend that CARTER BRYANT created the

13  DESIGN INCORPORATED in the document produced as Exhibit 794 to Janet

14  Bryant's deposition after January 3, 1999.

15  **REQUEST FOR ADMISSION NO. 320:**

16      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

17  the document produced as Exhibit 795 to Janet Bryant's Deposition prior to

18  January 3, 1999 but after April 1998.

19  **REQUEST FOR ADMISSION NO. 321:**

20      Admit that YOU do not contend that CARTER BRYANT created the

21  DESIGN INCORPORATED in the document produced as Exhibit 795 to Janet

22  Bryant's deposition after January 3, 1999.

23  **REQUEST FOR ADMISSION NO. 322:**

24      Admit that CARTER BRYANT created the DESIGN INCORPORATED in

25  the document bearing the Bates no. BRYANT 341 prior to January 3, 1999 but

26  after April 1998.

27  **REQUEST FOR ADMISSION NO. 323:**

28      Admit that YOU do not contend that CARTER BRYANT created the

1    DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 341

2    after January 3, 1999.

3    **REQUEST FOR ADMISSION NO. 324:**

4          Admit that CARTER BRYANT created the DESIGN INCORPORATED in

5    the document bearing the Bates no. BRYANT 972 prior to January 3, 1999 but

6    after April 1998.

7    **REQUEST FOR ADMISSION NO. 325:**

8          Admit that YOU do not contend that CARTER BRYANT created the

9    DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 972

10   after January 3, 1999.

11   **REQUEST FOR ADMISSION NO. 326:**

12         Admit that CARTER BRYANT created the DESIGN INCORPORATED in

13   the document bearing the Bates no. BRYANT 1014 prior to January 3, 1999 but

14   after April 1998.

15   **REQUEST FOR ADMISSION NO. 327:**

16         Admit that YOU do not contend that CARTER BRYANT created the

17   DESIGN INCORPORATED in the document bearing the Bates no. BRYANT

18   1014 after January 3, 1999.

19   **REQUEST FOR ADMISSION NO. 328:**

20         Admit that CARTER BRYANT created the DESIGN INCORPORATED in

21   the document bearing the Bates no. BRYANT 1116 prior to January 3, 1999 but

22   after April 1998.

23   **REQUEST FOR ADMISSION NO. 329:**

24         Admit that YOU do not contend that CARTER BRYANT created the

25   DESIGN INCORPORATED in the document bearing the Bates no. BRYANT

26   1116 after January 3, 1999.

27   **REQUEST FOR ADMISSION NO. 330:**

28         Admit that CARTER BRYANT created the DESIGN INCORPORATED in

33

1   the document bearing the Bates no. BRYANT 1117 prior to January 3, 1999 but

2   after April 1998.

3   **REQUEST FOR ADMISSION NO. 331:**

4       Admit that YOU do not contend that CARTER BRYANT created the

5   DESIGN INCORPORATED in the document bearing the Bates no. BRYANT

6   1117 after January 3, 1999.

7   **REQUEST FOR ADMISSION NO. 332:**

8       Admit that CARTER BRYANT created the DESIGN INCORPORATED in

9   the document bearing the Bates no. BRYANT 1118 prior to January 3, 1999 but

10   after April 1998.

11   **REQUEST FOR ADMISSION NO. 333:**

12       Admit that YOU do not contend that CARTER BRYANT created the

13   DESIGN INCORPORATED in the document bearing the Bates no. BRYANT

14   1118 after January 3, 1999.

15

16   Dated:  December 26, 2007                     KEKER & VAN NEST, LLP

17

18

19                                           By: _____
                                                 MATTHEW WERDEGAR
20                                               Attorneys for Plaintiff
                                                 CARTER BRYANT

21

22

23

24

25

26

27

28

408244.02

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On December 26, 2007, I served the following document(s):

### CARTER BRYANT'S SECOND SET OF REQUESTS FOR ADMISSION TO MATTEL, INC.

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery.

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel: 213/443-3000
Fax: 213/443-3100
Email: johnquinn@quinnemanuel.com
Email: michaelzeller@quinnemanuel.com

Alexander H. Cote
Overland Borenstein Scheper & Kim LLP
300 S. Grand Avenue, Suite 2750
Los Angeles, California 90071
Tel: 213/613-4660
Fax: 213/613-4656
Email: acote@obsklaw.com

Thomas J. Nolan
Skadden Arps Slate Meagher & Flom
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel: 213/687-5000
Fax: 213/687-5600
Email: tnolan@skadden.com

1      Executed on December 26, 2007, at San Francisco, California.

2      I declare under penalty of perjury under the laws of the State of California

3 that the above is true and correct.

4                              JULIE A. SELBY

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)