# EXHIBIT 16

1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  jkeker@kvn.com
   MICHAEL H. PAGE - #154913
3  mpage@kvn.com
   CHRISTA M. ANDERSON - #184325
4  canderson@kvn.com
   MATTHEW M. WERDEGAR - #200470
5  mwerdegar@kvn.com
   JOHN E. TRINIDAD - #250468
6  jtrinidad@kvn.com
   AUDREY WALTON-HADLOCK- #250574
7  awaltonhadlock@kvn.com
   710 Sansome Street
8  San Francisco, CA 94111-1704
   Telephone: (415) 391-5400
9  Facsimile: (415) 397-7188

10 Attorneys for Plaintiff
   CARTER BRYANT

11

12              UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14                   EASTERN DIVISION

15

16  CARTER BRYANT, an individual,      Case No. CV 04-09049 SGL (RNBx)
                                       (consolidated with CV 04-9059 & 05-
17                 Plaintiff,          2727

18      v.                             CARTER BRYANT'S SECOND SET
                                       OF INTERROGATORIES TO
19  MATTEL, INC. a Delaware            MATTEL, INC.
    Corporation,
20
21                 Defendant.

22
    CONSOLIDATED WITH MATTEL,
23  INC., v. BRYANT and MGA
    ENTERTAINMENT, INC. v.
24  MATTEL, INC.

25

26

27

28

12-26

PROPOUNDING PARTY:        CARTER BRYANT

RESPONDING PARTY:         MATTEL, INC.

SET NUMBER:               TWO

Pursuant to Federal Rule of Civil Procedure 33, CARTER BRYANT requests that MATTEL, INC. respond to the following interrogatories separately, fully and under oath within thirty days of service.

## DEFINITIONS

1.    "MATTEL" or "YOU" means and refers to Mattel, Inc., its current employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.    "BRATZ" refers to any product that has ever been sold or marketed under the name or term "Bratz."

3.    "DOCUMENT" or "DOCUMENTS" is defined broadly to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes all originals (or, if originals are not available, identical copies thereof), all non-identical copies of a DOCUMENT, all drafts of final DOCUMENTS, all other written, printed, or recorded matter of any kind, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in your actual or constructive possession, custody or control, regardless of the medium on which they are produced, reproduced, or stored, and any electronic mail, recording or writing, as these terms are defined in Federal Rule of Evidence 1001.  Any DOCUMENT bearing marks, including without limitation, initials, stamped initials, comments, or

1

1   notations not a part of the original text or photographic reproduction thereof, is a

2   separate DOCUMENT.

3         4.   "IDENTIFY" or "IDENTIFYING" means the following:  (a) with

4   reference to PERSONS, means to state such PERSON's full name, any known

5   business title, current or last known residential address, current or last known

6   business address, and current or last known telephone number, and current or last

7   known relationship to MATTEL; (b) with reference to DOCUMENT or

8   DOCUMENTS, means to describe each DOCUMENT by Bates number if the

9   DOCUMENT has a bate number, and if not, then to provide a complete description

10  of the DOCUMENT including the date of creation, identity of author, identity of

11  current custodian, the document's present physical location, the location of where

12  the document is stored electronically, and a description of the DOCUMENT's

13  subject matter and content; (c) with reference to "MATTEL property or resources",

14  means to provide a complete description of the property or the resource, including

15  but not limited, its monetary value or estimated monetary value.

16        5.   "PERSON" or "PERSONS" means and refers to all natural persons,

17  partnerships, joint ventures and any kind of business, legal or public entity or

18  organization, as well as its, its or her agents, representatives, employees, officers

19  and directors and any one else acting on its, its or her behalf, pursuant to its, its or

20  her authority or subject or its, its or her control.

21        6.   "REFER OR RELATE TO" should be construed in the broadest

22  possible sense to mean concern, consist of, refer to, relate to, pertain to, involved

23  with, describe, discuss, constitute, evidence, contain, reflect, mention, cite,

24  summarize, embody, analyze or bear any logical or factual connection with the

25  subject matter discussed.

26                          **INSTRUCTIONS**

27        1.   If MATTEL elects to answer any interrogatory pursuant to Federal

28  Rule of Civil Procedure 33(d), BRYANT requests that MATTEL identify the

1   particular documents relating to the subject matter of the specific interrogatory,
2   and separately for each document, the date the document bears, the title of the
3   document, if any, the identity of the authors of the document, the identity of each
4   addressee or recipient of the document, the type and subject matter of the
5   document and the present location or custodian of the document.

6          2.     If MATTEL cannot answer an interrogatory in full, MATTEL is
7   hereby directed to answer it to the fullest extent possible, specify the reasons for its
8   inability to answer the remainder, and state whatever information or knowledge
9   MATTEL has concerning the unanswered portion.

10

11                            **INTERROGATORIES**

12

13  **INTERROGATORY NO. 20:**

14         To the extent that YOU contend that BRYANT used or employed any
15  MATTEL property or resources in connection with the design, development, sale
16  or licensing of any BRATZ products, IDENTIFY each such MATTEL property or
17  resource and state all facts that support your contention, including but not limited
18  to IDENTIFYING all PERSONS with knowledge of such facts and all
19  DOCUMENTS which REFER OR RELATE TO such facts.

20

21  Dated:  December 26, 2007              KEKER & VAN NEST, LLP

22

23

24                                 By: _____
                                        Matthew M. Werdegar
25                                      Attorneys for Plaintiff
                                        CARTER BRYANT

26

27

28

                                      3

1                             PROOF OF SERVICE

2         I am employed in the City and County of San Francisco, State of California

3 in the office of a member of the bar of this court at whose direction the following

service was made. I am over the age of eighteen years and not a party to the within

4 action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San

5 Francisco, California 94111.

6 On December 26, 2007, I served the following document(s):

7      **CARTER BRYANT'S SECOND SET OF INTERROGATORIES**

8                    **TO MATTEL, INC.**

9

10 by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope

addressed as shown below. I am readily familiar with the practice of Keker & Van

11 Nest, LLP for correspondence for delivery by FedEx Corporation. According to

that practice, items are retrieved daily by a FedEx Corporation employee for

12 overnight delivery.

13

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and

14 correct copy scanned into an electronic file in Adobe "pdf" format. The

transmission was reported as complete and without error.

15

16

17 John B. Quinn                          Thomas J. Nolan

Michael T. Zeller                    Skadden Arps Slate Meagher & Flom

18 Quinn Emanuel Urquhart Oliver &      300 South Grand Avenue, Suite 3400

Hedges, LLP                        Los Angeles, CA 90071-3144

19 865 South Figueroa Street, 10th Floor    Tel:  213/687-5000

20 Los Angeles, CA 90017-2543          Fax:  213/687-5600

Tel:  213/443-3000                 Email:  tnolan@skadden.com

21 Fax:  213/443-3100

22 Email:  johnquinn@quinnemanuel.com

23 Email:  michaelzeller@quinnemanuel.com

24 Alexander H. Cote

25 Overland Borenstein Scheper & Kim LLP

26 300 S. Grand Avenue, Suite 2750

Los Angeles, California 90071

27 Tel:  213/613-4660

Fax:  213/613-4656

28 Email :  acote@obsklaw.com

1    Executed on December 26, 2007, at San Francisco, California.

2    I declare under penalty of perjury under the laws of the State of California

3  that the above is true and correct.

4                                                _____
                                                JULIE A. SELBY
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

396359.01

# EXHIBIT 17

KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                Plaintiff,<br><br>v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>                Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727<br><br>**CARTER BRYANT'S FOURTH SET OF REQUESTS FOR PRODUCTION TO MATTEL, INC.** |

408208.03

PROPOUNDING PARTY:        PLAINTIFF CARTER BRYANT

RESPONDING PARTY:         MATTEL, INC.

SET NUMBER:               FOUR

     Pursuant to Federal Rule of Civil Procedure 34, Plaintiff Carter Bryant ("Bryant") requests that Defendant Mattel, inc. ("Mattel") produce for inspection and copying the documents and other tangible things described below.  The documents shall be produced for inspection and copying at the offices of Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111, or at such other location as the parties may mutually agree, within thirty days of service of these requests.

## DEFINITIONS

1.    "MATTEL" or "YOU" means and refers to plaintiff and counter-defendant Mattel, Inc., its current employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.    "BRYANT" means and refers to Carter Bryant and his agents, representatives, attorneys, experts or any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.    "BRATZ" means and refers to each image, character, logo, doll, fashion doll, plush toy, styling head, toy, accessory, product, packaging, theme, or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license, as part of a line of goods or merchandise commonly known as "Bratz", or sold and marketed under the "Bratz" trademark or trade dress.

1

1    4.    "ART ATTACKS" means and refers to Art Attacks Ink, LLC and

2  any of its past or present officers, directors, employees, parents, subsidiaries,

3  divisions, affiliates, predecessor-in-interest, and joint venture partners, and any

4  other acting on Art Attacks Ink, LLC's behalf, pursuant to its authority or subject

5  to its control, including but not limited to, JoAnne Mauck and Byron Mauck.

6    5.    "CORRESPONDENCE" means every manner or method of

7  disclosure or transfer or exchange of information, whether oral or by document,

8  and whether face-to-face, by telephone, mail, personal delivery, electronic mail,

9  FTP, facsimile or otherwise.

10    6.    "DOCUMENT" is defined broadly to be synonymous in meaning and

11  equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a),

12  and includes all originals (or, if originals are not available, identical copies

13  thereof), all non-identical copies of a DOCUMENT, all drafts of final

14  DOCUMENTS, all other written, printed, or recorded matter of any kind, and all

15  other data compilations from which information can be obtained and translated if

16  necessary, that are or have been in your actual or constructive possession, custody

17  or control, regardless of the medium on which they are produced, reproduced, or

18  stored, and any electronic mail, recording or writing, as these terms are defined in

19  Federal Rule of Evidence 1001. Any DOCUMENT bearing marks, including

20  without limitation, initials, stamped initials, comments, or notations not a part of

21  the original text or photographic reproduction thereof, is a separate DOCUMENT.

22    7.    "EMPLOYEE HANDBOOK" or "EMPLOYEE POLICIES &

23  BENEFITS HANDBOOK" means any form of MATTEL publication that is

24  distributed to employees which describe the company's personnel policies and / or

25  employee privileges and obligations, and includes, but is not limited to, the

26  "Employee Handbook" referred to in document bearing bates number M0098021

27  and / or the "Employee Policies & Benefits Handbook" referred to in document

28  bearing bates number M0098289.

406206.03

8.    "IDENTIFY" as it relates to litigation means to state (1) the name of the plaintiff, defendant, and all other parties involved in the case; (2) the name of counsel for plaintiff, defendant, and all other parties involved in the litigation; (3) the date the complaint was filed; (4) the court in which the complaint was filed; (5) the case number; and (5) the date of any settlement or final resolution of the litigation.

9.    "INVENTION AGREEMENT" means any form of Mattel employment agreement concerning, *inter alia*, (i) ownership of inventions, and / or (ii) trade secrets, and/or (iii) conflicts of interest, whether known by the title "Employee Confidential Information and Inventions Agreement" or any other title, including without limitation documents in the form of the agreement entitled "Employee Confidential Information and Inventions Agreement" produced by MATTEL in this litigation as M0001596.

10.    "GUNTHER-WAHL" means the litigation known as *Gunther-Wahl Productions v. Mattel, Inc.*, Case No. BC195819 filed on or about August 12, 1998 in the Superior Court of the State of California, County of Los Angeles, and subsequent appeals.

11.    "FLANKER PRODUCT" or "FLANKER PRODUCTS" means brands, dolls, products, or product lines that MATTEL believed would compete with its Barbie line of products in the marketplace or that customers might buy instead of buying one of MATTEL's Barbie line of products, and includes, but is not limited to, products, dolls, or brands that MATTEL referred or refers to as "flanker doll" or "flanker brand" in documents bearing bates numbers M0014259, M0014264, and M0067258-277.

12.    "PERSON" or "PERSONS" means and refers to all natural persons, partnerships, joint ventures and any kind of business, legal or public entity or organization, as well as its, its or her agents, representatives, employees, officers

1 and directors and any one else acting on its, its or her behalf, pursuant to its, its or

2 her authority or subject or its, its or her control.

3     13.   "REFERRING OR RELATING TO" should be construed in the

4 broadest possible sense to mean concerning, consisting of, referring to, relating to,

5 pertaining to, involved with, describing, discussing, constituting, evidencing,

6 containing, reflecting, mentioning, pertaining to, citing, summarizing, embodying,

7 analyzing or bearing any logical or factual connection with the subject matter

8 discussed.

9     14.   The words "and" and "or" shall be construed in the conjunctive or

10 disjunctive, whichever makes the request more inclusive.

11     15.   The use of the singular form of any word includes the plural and vice

12 versa.

13     16.   The terms "any" and "all" are interchangeable.

14             **INSTRUCTIONS**

15     1.   Unless otherwise stated, the time period for each request herein is

16 January 1, 1995 to April 27, 2004.

17     2.   MATTEL is required to produce all DOCUMENTS in the manner,

18 form and position in which they are kept in the ordinary course of business, as

19 required by Federal Rule of Civil Procedure Rule 34(b), including, where

20 applicable, any index tabs, file dividers, designations or information as to the

21 location of DOCUMENTS.

22     3.   If MATTEL cannot respond to a document request fully, after a

23 diligent attempt to attain the requested information, MATTEL must answer the

24 document request to the extent possible, specify the portion of the document

25 request MATTEL is unable to answer, and provide whatever information

26 MATTEL has regarding the unanswered portion.

27

28

4.   In the event that any DOCUMENT called for by the requests has been destroyed, lost, discarded or is otherwise no longer in MATTEL'S possession, custody or control, MATTEL shall identify such DOCUMENT as completely as possible, and shall specify the date of disposal of the DOCUMENT, the manner of disposal, the reason for disposal, the person authorizing the disposal; and the person disposing of the DOCUMENT.

5.   In the event any information is withheld on a claim of attorney-client privilege or work product doctrine, MATTEL shall provide a privilege log which includes at least the following information: the nature of the information contained in the withheld DOCUMENT, the date of the DOCUMENT, its source, and subject matter, and to whom that information was disclosed, such as would enable the privilege claim to be adjudicated, and any authority which MATTEL asserts supports any claim of privilege.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All DOCUMENTS REFERRING OR RELATING TO any litigation involving MATTEL in which the interpretation of any term of any INVENTION AGREEMENT was at issue.

### REQUEST FOR PRODUCTION NO. 2:

DOCUMENTS sufficient to IDENTIFY any litigation in which MATTEL accused any PERSON of breaching any INVENTION AGREEMENT.

### REQUEST FOR PRODUCTION NO. 3:

All DOCUMENTS, including but not limited to all transcripts and all CORRESPONDENCE between MATTEL and BRYANT, REFERRING OR RELATING TO BRYANT's participation or potential participation as a witness in any litigation to which MATTEL was a party.

408208.03

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS REFERRING OR RELATING to any MATTEL employee performing work for PERSONS other than MATTEL while still employed by MATTEL.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS REFERRING OR RELATING to any MATTEL rules, policies, or practices regarding MATTEL employees performing work for PERSONS other than MATTEL (including but not limited to freelancing work for vendors) while still employed by MATTEL.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS REFERRING OR RELATING to any MATTEL rules, policies or practices prohibiting MATTEL employees from performing work for PERSONS other than MATTEL (including but not limited to freelancing work for vendors) while still employed by MATTEL.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS REFERRING OR RELATING to any MATTEL rules, policies or practices governing the use of MATTEL property or resources by MATTEL employees.

**REQUEST FOR PRODUCTION NO. 8:**

To the extent not already produced, all DOCUMENTS, including but not limited to time records, employee files, written work assignments, job descriptions, and performance evaluations, REFERRING OR RELATING TO BRYANT's employment at MATTEL.  (This request is not limited by the time period limitation set forth in the instructions).

**REQUEST FOR PRODUCTION NO. 9:**

To the extent not already produced, all DOCUMENTS constituting any EMPLOYEE HANDBOOK, EMPLOYEE POLICIES & BENEFITS HANDBOOK or other employee policy manuals for 1998-2001.

6

408208.03

1   **REQUEST FOR PRODUCTION NO. 10:**

2       DOCUMENTS sufficient to show the date on which MATTEL hired outside

3   counsel to represent MATTEL with respect to any litigation or potential litigation

4   concerning BRYANT or BRATZ. (This request is not limited by the time period

5   limitation set forth in the instructions).

6   **REQUEST FOR PRODUCTION NO. 11:**

7       All DOCUMENTS REFERRING OR RELATING TO the August 5, 2002

8   anonymous letter regarding BRYANT and BRATZ produced by MATTEL in this

9   litigation as document M0013841.  (This request is not limited by the time period

10  limitation set forth in the instructions).

11  **REQUEST FOR PRODUCTION NO. 12:**

12      All DOCUMENTS REFERRING OR RELATING TO the deposition

13  testimony of CARTER BRYANT in GUNTHER-WAHL, including but not limited

14  to deposition transcripts, deposition exhibits, pleadings, orders, and

15  correspondence between MATTEL and BRYANT.  (This request is not limited by

16  the time period limitation set forth in the instructions).

17  **REQUEST FOR PRODUCTION NO. 13:**

18      All DOCUMENTS, including but not limited to all CORRESPONDENCE

19  between MATTEL or its outside counsel and any attorney, agent, officer,

20  employee or other representative of ART ATTACKS or any other PERSON,

21  REFERRING OR RELATING TO ART ATTACKS and its lawsuit concerning

22  BRATZ. (This request is not limited by the time period limitation set forth in the

23  instructions).

24  **REQUEST FOR PRODUCTION NO. 14:**

25      To the extent not already produced, all DOCUMENTS REFERRING OR

26  RELATING TO BRYANT.  (The relevant time period for this request is on or

27  before April 27, 2004 ).

28

408205.03        CARTER BRYANT'S FOURTH SET OF REQUESTS FOR PRODUCTION TO MATTEL, INC
                          CASE NO. CV 04-09049 SGL (RNBx)

1   **REQUEST FOR PRODUCTION NO. 15:**

2          To the extent not already produced, all DOCUMENTS REFERRING OR

3   RELATING TO BRATZ. (The relevant time period for this request is on or before

4   April 27, 2004 ).

5   **REQUEST FOR PRODUCTION NO. 16:**

6          To the extent not already produced, all DOCUMENTS reflecting

7   REFERRING OR RELATING to any past or present MATTEL policies, plans, or

8   practices regarding MATTEL's development or marketing of FLANKER

9   PRODUCTS.

10  **REQUEST FOR PRODUCTION NO. 17:**

11         To the extent not already produced, DOCUMENTS sufficient to show when

12  MATTEL first decided to develop its MyScene Barbie line of products

13  **REQUEST FOR PRODUCTION NO. 18:**

14         To the extent not already produced, DOCUMENTS sufficient to show when

15  MATTEL first decided to market its MyScene Barbie line of products.

16  **REQUEST FOR PRODUCTION NO. 19:**

17         To the extent not already produced, DOCUMENTS sufficient to show when

18  MATTEL first decided to develop its Flavas line of products.

19  **REQUEST FOR PRODUCTION NO. 20:**

20         To the extent not already produced, DOCUMENTS sufficient to show when

21  MATTEL first decided to market its Flavas line of products.

22  **REQUEST FOR PRODUCTION NO. 21:**

23         All DOCUMENTS constituting or REFERRING OR RELATING TO any

24  fee agreement between MATTEL and any witnesses in this case.

25  **REQUEST FOR PRODUCTION NO. 22:**

26         All DOCUMENTS that support your contention, if you so contend in

27  response to Request for Admission Number 19 to Carter Bryant's First Set of

28  Requests for Admission to Mattel, Inc., that BRYANT misappropriated any

408206.03

1  MATTEL trade secrets.

2  **REQUEST FOR PRODUCTION NO. 23:**

3      All DOCUMENTS that support your contention, if you so contend in

4  response to Request for Admission Number 21 to Carter Bryant's First Set of

5  Requests for Admission to Mattel, Inc., that BRYANT "wrongfully converted

6  Mattel's property by removing Trade Secret Materials [as that term is used in

7  MATTEL's Second Amended Answer and Counterclaims] in electronic and paper

8  form from Mattel's offices."

9  **REQUEST FOR PRODUCTION NO. 24:**

10      All DOCUMENTS that support your contention, if you so contend in

11  response to Request for Admission Number 22 to Carter Bryant's First Set of

12  Requests for Admission to Mattel, Inc., that the identity of third-party doll hair

13  suppliers used by MATTEL is a MATTEL trade secret.

14  **REQUEST FOR PRODUCTION NO. 25:**

15      All DOCUMENTS that support your contention, if you so contend in

16  response to Request for Admission Number 24 to Carter Bryant's First Set of

17  Requests for Admission to Mattel, Inc., that the identity of third-party vendors used

18  by MATTEL is a MATTEL trade secret.

19  **REQUEST FOR PRODUCTION NO. 26:**

20      All DOCUMENTS that support your contention, if you so contend in

21  response to Request for Admission Number 69 to Carter Bryant's First Set of

22  Requests for Admission to Mattel, Inc., that if CARTER BRYANT had disclosed

23  his idea for a line of fashion dolls which he named Bratz to MATTEL prior to

24  October 20, 2000, MATTEL would have taken steps to commercially exploit the

25  idea.

26  **REQUEST FOR PRODUCTION NO. 27:**

27      All DOCUMENTS that support your contention, if you so contend in

28  response to Request for Admission Number 98 to Carter Bryant's First Set of

1  Requests for Admission to Mattel, Inc., that the "Conflict of Interest
2  Questionnaire" produced by MATTEL in this litigation as document M0001621
3  requests the disclosure of any ideas, designs or inventions that CARTER
4  BRYANT may have developed while not employed by MATTEL.
5  **REQUEST FOR PRODUCTION NO. 28:**
6       All DOCUMENTS that support your contention, if you so contend in
7  response to Request for Admission Number 100 to Carter Bryant's First Set of
8  Requests for Admission to Mattel, Inc., that the "Conflict of Interest
9  Questionnaire" produced by MATTEL in this litigation as document M0001621
10 requires the disclosure of any ideas, designs or inventions that CARTER BRYANT
11 may have developed while not employed by MATTEL.
12 **REQUEST FOR PRODUCTION NO. 29:**
13      All DOCUMENTS that support your contention, if you so contend in
14 response to Request for Admission Number 106 to Carter Bryant's First Set of
15 Requests for Admission to Mattel, Inc., that CARTER BRYANT was requested by
16 MATTEL to disclose any ideas, designs, or inventions that he may have developed
17 while not employed by MATTEL at the time that BRYANT resumed his
18 employment with MATTEL in January 1999.
19 **REQUEST FOR PRODUCTION NO. 30:**
20      All DOCUMENTS that support your contention, if you so contend in
21 response to Request for Admission Number 108 to Carter Bryant's First Set of
22 Requests for Admission to Mattel, Inc., that CARTER BRYANT was required by
23 MATTEL to disclose any ideas, designs, or inventions that he may have developed
24 while not employed by MATTEL at the time that BRYANT resumed his
25 employment with MATTEL in January 1999.
26 **REQUEST FOR PRODUCTION NO. 31:**
27      All DOCUMENTS that support your contention, if you so contend in
28 response to Request for Admission Number 110 to Carter Bryant's First Set of

408208.03

1  Requests for Admission to Mattel, Inc., that CARTER BRYANT was requested by

2  MATTEL to disclose any ideas, designs, or inventions that he may have developed

3  while not employed by MATTEL.

4  **REQUEST FOR PRODUCTION NO. 32:**

5      All DOCUMENTS that support your contention, if you so contend in

6  response to Request for Admission Number 112 to Carter Bryant's First Set of

7  Requests for Admission to Mattel, Inc., that CARTER BRYANT was required by

8  MATTEL to disclose any ideas, designs, or inventions that he may have developed

9  while not employed by MATTEL.

10  **REQUEST FOR PRODUCTION NO. 33:**

11      All DOCUMENTS REFERRING OR RELATING TO the document

12  produced MATTEL M0079765 through M0079771, entitled "The Bratz Brief,"

13  including but not limited to all DOCUMENTS REFERRING OR RELATING TO

14  the purpose, creation, and usage of that document; all drafts of said document; all

15  CORRESPONDENCE REFERRING OR RELATING TO that document or its

16  drafts; and all supporting material used in drafting said document.

17  **REQUEST FOR PRODUCTION NO. 34:**

18      All DOCUMENTS REFERRING OR RELATING TO MATTEL's decision

19  not to pursue the development of the doll concept known as Toon Teens.

20  **REQUEST FOR PRODUCTION NO. 35:**

21      All DOCUMENTS REFERRING OR RELATING TO any MATTEL

22  employee Code of Conduct, including but not limited to the Code of Conduct

23  referred to on page 15 of the document entitled "Employee Handbook" produced

24  by MATTEL as document M0256715-0256768.

25  **REQUEST FOR PRODUCTION NO. 36:**

26      All DOCUMENTS REFERRING OR RELATING TO any MATTEL

27  conflict of interest policy, including but not limited to the "policies concerning

28  Conflicts of interest" referred to in the document entitled "Conflict of Interest

408208.03

1   Questionnaire" produced by MATTEL as document M0001621.

2

3   Dated:  December 26, 2007           KEKER & VAN NEST, LLP

4

5

6                          By: _____

                             Matthew M. Werdegar

7                             Attorneys for Plaintiff

                             CARTER BRYANT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

408208.03            CARTER BRYANT'S FOURTH SET OF REQUESTS FOR PRODUCTION TO MATTEL, INC

                           CASE NO. CV 04-09049 SGL (RNBx)

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On December 26, 2007, I served the following document(s):

**CARTER BRYANT'S FOURTH SET OF REQUESTS FOR PRODUCTION TO MATTEL, INC.**

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery.

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel:  213/443-3000
Fax:  213/443-3100
Email:  johnquinn@quinnemanuel.com
Email:  michaelzeller@quinnemanuel.com

Alexander H. Cote
Overland Borenstein Scheper & Kim LLP
300 S. Grand Avenue, Suite 2750
Los Angeles, California 90071
Tel:  213/613-4660
Fax:  213/613-4656
Email :   acote@obsklaw.com

Thomas J. Nolan
Skadden Arps Slate Meagher & Flom
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel:  213/687-5000
Fax:  213/687-5600
Email:  tnolan@skadden.com

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

1    Executed on December 26, 2007, at San Francisco, California.

2       I declare under penalty of perjury under the laws of the State of California

3    that the above is true and correct.

4                                    _Julie Selby_

                                    JULIE A. SELBY

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 18

:

**From:** Matthew Werdegar [mailto:MWerdegar@kvn.com]
**Sent:** Wednesday, February 06, 2008 6:12 PM
**To:** Dylan Proctor
**Cc:** Herrington, Robert J
**Subject:** Mattel v. Bryant et al.

Dear Dylan:

I am writing to confirm our telephonic conference of counsel today regarding Mattel's refusal to respond substantively to Bryant's First and Second Sets of Requests for Admission, Second Set of Interrogatories, and Fourth Set of Requests for Production.

You confirmed that the sole basis for Mattel's objection that the requests were not properly served on Mattel is that the requests were served by email and Federal Express, and not by U.S. Mail or hand. I asked you whether Mattel had actually received the requests, and you confirmed that Mattel had received the requests for admission and the interrogatories, but you were not sure about the requests for production. Please confirm whether or not Mattel received the requests for production on our about December 27, 2008.

I also asked you whether Mattel was contending that it was prejudiced in any way by the fact that Bryant had served these requests by email and Federal Express. You were unable to articulate any prejudice during our conversation and stated that "you would have to think about it." Please let me know if, upon further thought, Mattel contends that it was prejudiced, and if so, precisely how.

We also discussed Bryant's Interrogatory No. 20. You confirmed that Mattel had agreed to respond to this interrogatory as one of seven to which it would agree to respond between those served by Bryant and MGA. You stated that Mattel would provide this response, which would be substantive, possibly by February 18th, but by February 22nd at the latest, provided that Bryant would not argue that Mattel had waived its service objections to Bryant's other discovery requests by agreeing to respond this interrogatory. I hereby confirm that Bryant will not assert that Mattel's has waived its service objection as to Bryant's other discovery requests based on Mattel's agreement to respond to Bryant's interrogatory.

Additionally, I asked you whether Mattel would stipulate to extend the deadline for Bryant to bring a motion to compel regarding Mattel's response to Bryant's Interrogatory No. 20, if one proves necessary, to a date reasonably after the response is served, as Bryant agreed to in connection with obtaining an extension of time to respond to Mattel's most recent requests for admission. You said that you would consider this, and that I should provide you with a proposed stipulation. Pursuant to your request, a draft stipulation is attached.

Next, we discussed Bryant's requests for admission. I explained that Bryant was willing to offer Mattel a reasonable extension of time to respond to these requests, and to work with Mattel to limit the burden Mattel claims responding to some of them will impose (during our conferences in January, you stated that you believed Request Nos. 26–41 were unduly burdensome). You said you would consider whether Mattel would agree to respond to these requests under any circumstances. You promised to get back to me tomorrow with Mattel's position.

Finally, you stated that it was Mattel's position that any motion to compel relating to Phase I discovery filed after January 28, 2008 would be untimely, unless there was a stipulation to extend the time to bring a motion or the

motion to pertained to a deposition that had not yet occurred.

I look forward to speaking further with you tomorrow regarding these issues. I am generally available all day. Please also be prepared to discuss Mattel's objections, other than on the basis of service, to Bryant's discovery requests. As I stated during our call, we believe all of Mattel's other objections are boilerplate and without merit. Also, please note that unless we are able to resolve these issues by the close of business Friday, February 7, 2008, Bryant will be bringing a motion to compel.

# EXHIBIT 19

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

February 7, 2008

<u>VIA FACSIMILE AND U.S. MAIL</u>

Matthew Werdegar, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

Re:     <u>Mattel, Inc. v. Bryant, et al.</u>

Dear Matthew:

I write further to our telephonic conference of yesterday, and in response to the several emails you have sent me since then.

As I explained during the conference, Bryant's First and Second Sets of Requests for Admission, Second Set of Interrogatories, and Fourth Set of Requests for Production were not properly served on Mattel. The Ninth Circuit held in <u>Magnuson v. Video Yesteryear</u>, 85 F.3d 1424, 1429-31 (9th Cir. 1996), that service is invalid unless carried out in a manner specifically allowed by Federal Rule of Civil Procedure 5. Federal Express and electronic mail -- the only means of delivery Bryant used -- are not permitted means of service under Rule 5. <u>See</u> <u>Magnuson</u> at 1431 ("Federal Express does not satisfy the requirements of Rule 5(b)."); FRCP(E) (service "by electronic means" allowed only *if the person consented in writing*). Moreover, Mattel has previously rejected defendants' requests that Mattel permit service by email, and defendants have never before even requested that Mattel agree to service by Federal Express.

The Ninth Circuit held in <u>Magnuson</u> that improper service will only be excused if there is both (1) actual service and (2) "exceptional good cause" for non-compliance with Rule 5. <u>Magnuson</u> at 1431. Whether the party served was prejudiced or not by the improper service is irrelevant. In

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

07975/2381127.1

fact, no prejudice was found in Magnuson, and the Ninth Circuit still held that service by fax and Federal Express was inadequate and would not be excused. In any case, Mattel indeed was prejudiced by Bryant's defective service, including because it led to internal docketing confusion regarding the Requests for Production you have now called to our attention.

Bryant has not presented *any* evidence that there was "exceptional good cause" for his improper service. Nor has Mattel ever accepted service of discovery requests by Bryant via Federal Express or email in the past. Therefore, service was invalid, and Mattel will not respond further to the discovery requests at issue herein. I have reviewed the authority you cited, Salley v. Bd. of Governors, Univ. of N. Carolina, 136 F.R.D. 417 (M.D. N.C. 1991), and do not believe it supports your position in this matter. Like Magnuson, the Salley case held that there must be a finding of "exceptional good cause" for improper service to be excused. The Salley court found that there was "exceptional good cause" for improper service of discovery requests on defendants in that case because they had accepted improper service of discovery requests on prior occasions without objection. Id. at 420-21. This is not the case with Bryant.

Moreover, the fact is that defendants themselves have mandated strict adherence to service rules in this case, including most recently when Mattel attempted to serve subpoenas after Judge Larson granted it leave to conduct additional depositions. Accordingly, it should come as no surprise, and is consistent with the parties' practice in this case, that Mattel is also requiring proper service of discovery with which it purportedly is served.

As I explained to you, the only exception to the foregoing is Interrogatory No. 20, to which Mattel will respond, pursuant to Bryant's and MGA's request and as Mattel has agreed, since you have expressly acknowledged that doing so will not constitute (and you will not argue constitutes) a waiver of Mattel's service objections as to other discovery.

On a separate matter, your characterization of what I said about the timeliness of motions to compel filed after the January 28, 2008 cutoff is inaccurate. As I made clear, which motions can or cannot be filed after the cutoff has to be assessed on a case by case basis in our view. Some motions, such as motions to enforce prior Orders or motions encompassed by a stipulation that permits it, clearly can be filed after the cutoff. Others, such as the motions Bryant apparently now contemplates filing, cannot be.

Please do not hesitate to contact me if you have further questions.

Very truly yours,

B. Dylan Proctor

# EXHIBIT 20

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

February 8, 2008

**VIA FACSIMILE AND U.S. MAIL**

Matthew M. Werdegar, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, California 94111

Re:   Mattel v. Bryant

Dear Matt:

I write in response to your email of earlier today.  There is no gamesmanship in Mattel's position. Judge Larson has recently reiterated that the Phase 1 discovery deadline was indeed a firm deadline and has now expired.  For the past several weeks, defendants have attempted to use the cutoff for tactical advantage, even going so far as to refuse to accept service for senior employees and having related parties, including a lawyer being paid by MGA, actually evade service (causing Judge Larson to issue an Order to Show Cause) -- all to attempt to frustrate Mattel's ability to obtain ordered discovery prior to the cutoff.  Bryant simply had no reason to think that anything less than proper service of discovery would be accepted in this case. Notably, you acknowledged during our call that Bryant's discovery was not properly served pursuant to the Rules, and that Mattel had never previously accepted discovery that was not properly served.

Nor has Mattel taken any inconsistent positions regarding the timeliness of motions (and, as I said before, you very clearly did mischaracterize what I said during our call).  You claim that Mattel "keeps shifting its position" and that you "have now heard at least four different spins on Mattel's position" on this issue.  Please identify the purported "spins" to which you refer.  I am not aware of any inconsistent positions taken by Mattel.  Instead, as Judge Infante recognized at a prior hearing, it has consistently been Mattel's position that motions to compel on underlying

07209/2382451.1

Phase 1 written discovery requests had to be filed by the cutoff, absent a stipulation extending the deadline.  Even defendants have acknowledged as much -- that is why the parties, including Bryant, entered into numerous stipulations to extend the filing deadline just prior to the cutoff. No stipulation covers the Bryant discovery at issue here.  Nor has Bryant offered any authority for his apparent position.

Last, please be advised that Mattel is not prepared to sign the stipulation you have proposed at this time.

If you have additional questions, please do not hesitate to contact me.

Very truly yours,



B. Dylan Proctor

BDP:lak

# EXHIBIT 21

1   KEKER & VAN NEST, LLP
    JOHN W. KEKER - #49092
2   jkeker@kvn.com
    MICHAEL H. PAGE - #154913
3   mpage@kvn.com
    CHRISTA M. ANDERSON - #184325
4   canderson@kvn.com
    MATTHEW M. WERDEGAR - #200470
5   mwerdegar@kvn.com
    JOHN E. TRINIDAD - #250468
6   jtrinidad@kvn.com
    AUDREY WALTON-HADLOCK- #250574
7   awaltonhadlock@kvn.com
    710 Sansome Street
8   San Francisco, CA  94111-1704
    Telephone:  (415) 391-5400
9   Facsimile:  (415) 397-7188

10  Attorneys for Plaintiff
    CARTER BRYANT
11

12

13                  UNITED STATES DISTRICT COURT

14                 CENTRAL DISTRICT OF CALIFORNIA

15                       EASTERN DIVISION

16

17  CARTER BRYANT, an individual,          Case No. CV 04-09049 SGL (RNBx)
                                           (consolidated with CV 04-9059 & 05-
18                         Plaintiff,      2727

19       v.                                **DISCOVERY MATTER**

20  MATTEL, INC. a Delaware                [To Be Heard by Discovery Master
    Corporation,                           Hon. Edward Infante (Ret.)]
21
                          Defendant.       **CARTER BRYANT'S NOTICE OF
22                                         MOTION AND MOTION TO
                                           COMPEL RESPONSES TO
23  CONSOLIDATED WITH MATTEL,              DISCOVERY REQUESTS;
    INC., v. BRYANT and MGA                MEMORANDUM OF POINTS AND
24  ENTERTAINMENT, INC. v.                 AUTHORITIES IN SUPPORT
    MATTEL, INC.                           THEREOF**

25                                         Date:      T.B.D.
                                           Time:      T.B.D.
26
                                           Judge:   Hon. Stephen G. Larson
27                                         Date Comp. Filed:  April 13, 2005
                                           Discovery Cut-Off: Jan. 28, 2008
28                                         Trial Date: May 27, 2008

410555.03

**TABLE OF CONTENTS**

Page

I.    PRELIMINARY STATEMENT ....................................................................................1

II.   BACKGROUND ........................................................................................................2

III.  ARGUMENT..............................................................................................................7

      A.    Mattel's refusal to respond to Bryant's discovery requests on grounds that
            they were improperly served should be overruled and Mattel should be
            ordered to provide complete, substantive responses.........................................7

      B.    Mattel's other, boilerplate objections lack any merit and also should be
            overruled. ..........................................................................................................10

            1.    Mattel's baseless objections to Bryant's Second Set of Interrogatories
                  (No. 20). ...................................................................................................10

            2.    Mattel's baseless objections to Bryant's First Set of Requests for
                  Admission .................................................................................................12

                  a.    Requests regarding Bryant's alleged status as a fiduciary (Nos.
                        1-13)....................................................................................................12

                  b.    Requests regarding moonlighting by other Mattel employees
                        and Mattel's (non)enforcement of the form employment
                        agreements it is asserting against Bryant (Nos. 13-17, 26-42,
                        and 57-66). ..........................................................................................13

                  c.    Requests regarding Mattel's trade secret and conversion
                        allegations (Nos. 18-25 and 52-56).....................................................15

                  d.    Requests regarding Mattel's contentions as to the meaning and
                        scope of its form employment agreements (Nos. 42-51 and 95-
                        112). .....................................................................................................16

                  e.    Requests regarding Mattel's causation and damages
                        contentions (Request Nos. 67-94).......................................................17

            3.    Bryant's Second Set of Requests for Admission. .......................................17

            4.    Bryant's Fourth Set of Request for Production...........................................18

IV.   CONCLUSION...........................................................................................................21

410555.03

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**                                                                        Page

3   *Cable & Computer Tech.*, 175 F.R.D. at 650 ................................................13

4   *Cf. Salley*, 136 F.R.D. at 421 ..........................................................................8, 9

5   *G. & P. Amusement Co. v. Regent Theater Co.*, 9 F.R.D. 721 ......................7

6   *In re Grand Jury Subpoenas*, 803 F.2d 493 ................................................20

7   *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403 ......................................11

8   *Hoffman Const. Co. of Oregon v. Active Erectors and Installers, Inc.*, 969 F.2d 796 ....................2

9   *Lucero v. Valdez 240*, F.R.D. 591 ....................................................................11

10   *Magnuson v. Video Yesteryear*, 85 F.3d 1424 ..........................................2, 7

11   *Pulsecard, Inc. v. Discover Card Services, Inc.*, 168 F.R.D. 295 ..............12

12   *Richmark Corp. v. Timber Falling  Consultants*, 959 F.2d 1468 ............18

13   *U.S. Cellular Investment Co. of Los Angeles, Inc. v. GTE MobilNet, Inc.*, 281 F.3d 929 .............14

14   *United Coal Cos. v. Powell Construction Co.*, 839 F.2d 958 ....................13

15

**STATE CASES**

16   *Collins v. Home Sav. & Loan Association*, 205 Cal.App.2d 86 ................14

17   *Slovensky v. Friedman*, 142 Cal.App.4th 1518..........................................13

18

19

20

21

22

23

24

25

26

27

28

ii

410555.03

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, at a telephonic conference before Discovery Master Hon. Edward Infante (Ret.) that will occur at a time to be determined by Judge Infante, Carter Bryant will, and hereby does, move the Court:

(1) for an order overruling Mattel, Inc.'s (Mattel) objections to Bryant's Second Set of Interrogatories (No. 20) and requiring Mattel to respond to that request fully and completely

(2) for an order overruling Mattel's objections to Bryant's First Set of Requests for Admission and requiring Mattel to respond to those requests fully and completely;

(3) for an order overruling Mattel's objections to Bryant's Second Set of Requests for Admission and requiring Mattel to respond to those requests fully and completely; and

(4) for an order overruling Mattel, Inc.'s (Mattel) objections to Bryant's Fourth Set of Requests for Production Nos. 10, and 21-32 and requiring Mattel to respond to those requests fully and completely.

This motion is made pursuant to Federal Rules of Civil Procedure 26, 33, 34, 36, and 37 on the grounds that Mattel's asserted bases for refusing to respond substantively to any of these requests are without merit and are designed and intended to thwart critical discovery regarding Mattel's claims and Bryant's defenses in this case and to prevent the ultimate resolution of this litigation on the merits.

The parties met and conferred regarding this Motion on February 6, 2008, and thereafter, as required by Local Rule 37-1, but were unable to resolve this dispute.

///

410555.03

1   This Motion is based on this Notice of Motion and Motion, the

2   accompanying Memorandum of Points and Authorities, the Declaration of

3   Matthew M. Werdegar filed concurrently herewith, the record and files of this

4   Court, and all other matters of which the Court may take judicial notice.

5

6                                          Respectfully submitted,

7   Dated:  February 8, 2008              KEKER & VAN NEST, LLP

8

9

10                              By: _____
                                      MATTHEW M. WERDEGAR
11                                    Attorneys for Plaintiff
                                      CARTER BRYANT
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

410555.03

BRYANT'S MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS
CASE NO. CV 04-09049 SGL (RNBx)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

In an egregious example of "gottcha" litigation that seeks to elevate technicalities over truth-seeking, Mattel has refused substantively to respond to any of the requests in Carter Bryant's First and Second Sets of Requests for Admission and Bryant's Fourth Set of Requests for Production on grounds that these requests were never properly served on Mattel, and has put unreasonable restrictions on its agreement to respond to Bryant's Second Set of Interrogatories.  Bryant served these requests on Mattel via Federal Express and electronic mail on December 26, 2008, thirty-three days before the close of Phase I discovery, and there is no dispute that Mattel actually received all of them.  Mattel served objections to Bryant's First and Second Sets of Requests for Admission and Second Set of Interrogatories on the date responses were due, thus confirming that Mattel received them.  Moreover, Mattel met and conferred with Bryant at length throughout January regarding the scope of these requests and the alleged burden of responding to them.  At no point during the parties' conferences of counsel did Mattel ever assert that the requests were not properly served.  Mattel also has confirmed receipt of Bryant's Fourth Set of Requests for Production, which were sent in the same email message and Federal Express package as Bryant's other requests.

Mattel does not contend that it was prejudiced in any way by Bryant's service of his requests for admission and Second Set of Interrogatories by Federal Express and email, and the only purported prejudice that Mattel has been able to dig up regarding Bryant's requests for production is some unspecified "internal docketing confusion."  Instead, Mattel rests its claim not to have to respond to these requests solely on Bryant's failure to comply with the letter of Federal Rule of Civil Procedure 5(b).  Mattel claims that because of Bryant's harmless procedural error, Mattel is under no obligation to respond.  Mattel is wrong.  Under

1  controlling Ninth Circuit case law, a failure to comply with the letter of Rule 5(b)

2  is excusable if the receiving party had actual notice of the discovery requests and

3  there is good cause excusing the serving party's failure to serve by U.S. Mail or

4  hand.  *See Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1430-31 (9th Cir. 1996).

5       Here, Mattel had actual notice of all of the discovery requests by December

6  27th, at the latest.  Bryant's failure to comply with the letter of Rule 5(b) has caused

7  no prejudice to Mattel.  And Mattel has waived its right to object on the grounds of

8  service by repeatedly accepting service of documents from Bryant by Federal

9  Express and email, without objection or complaint, and by meeting and conferring

10  at length with Bryant about these requests—and even stating that it would respond

11  to some of them—without ever asserting any objection as to the sufficiency of

12  service.

13       Bryant will be profoundly prejudiced if Mattel is permitted to avoid

14  responding to these discovery requests.  The requests all go to core issues relating

15  Mattel's claims against Bryant and Bryant's affirmative defenses to those claim.

16  Allowing Mattel to avoid providing complete substantive responses to these

17  requests would thwart the ultimate goal of the discovery rules, which is to "to

18  resolve disputes on the merits"  *Hoffman Const. Co. of Oregon v. Active Erectors*

19  *and Installers, Inc.*, 969 F.2d 796, 801 (9th Cir. 1992).

20       Mattel also has asserted a series of boilerplate objections to Bryant's

21  requests.  These objections, like its objection based on improper service, are

22  intended only to block legitimate, important discovery, are without merit, and

23  should be overruled in their entirety.

24                    **II.    BACKGROUND**

25       On December 26, 2007, Bryant served a final round of Phase I discovery

26  requests.  These requests included Bryant's First and Second Sets of Requests for

27  Admission, Bryant's Second Set of Interrogatories (No. 20), and Bryant's Fourth

28  Set of Requests for Production.  *See* Declaration of Matthew M. Werdegar In

1   Supp. of Mot. to Compel ("Werdegar Decl.") ¶ 2; Exs. A-D.[1]  Unlike Mattel,

2   which has been burying each of the parties in this case with literally thousands of

3   discovery requests, these sets of discovery were the first served by Bryant in more

4   than three years and were designed and intended to obtain final discovery on

5   critical Phase I issues. *Id.* ¶ 2.  Issues addressed in these requests include Mattel's

6   contentions as to which, if any, Bryant drawings were prepared during Bryant's

7   employment at Mattel, Mattel's contentions regarding the meaning, scope, and

8   enforcement of its standard form Employee Confidential Information and

9   Inventions Agreement and Conflict of Interest Questionnaire, which are central to

10  Mattel's affirmative claims against Bryant, the bases for Mattel's claims that

11  Bryant was a fiduciary of Mattel, and Mattel's contentions regarding exactly what,

12  if any, Mattel property or resources Mattel contents Bryant unlawfully

13  misappropriated and converted.  *See* Section II, B, *infra.*

14       Bryant served these requests by both Federal Express and electronic mail.

15  *See* Werdegar Decl., ¶ 7; Ex. A (Proof of Service), Ex. B (Proof of Service), Ex. C

16  (Proof of Service); Ex. D (Proof of Service).  As a result, Mattel had actual notice

17  of all of these requests on or before December 27, 2008, and in any event sooner

18  than if Bryant had served them by mail.  Bryant's utilization of Federal Express

19  and email to serve his discovery requests was far from unprecedented.  Bryant had

20  previously served numerous discovery responses on Mattel via Federal Express

21  and email.  *See id.*, ¶ 7; Exs. E-J (Proofs of Service for various Bryant discovery

22  responses).  Mattel never complained to Bryant that this manner of service was

23  improper, unacceptable, or in any way prejudicial, although Mattel did seek to

24  meet and confer regarding many of these responses and filed motions relating to

25  some, if not all, of them.  *Id.*, ¶ 14.  Additionally, all of the parties stipulated, in

26

27  [1] Bryant's Second Set of Interrogatories is attached as Exhibit A, Bryant's First Set
    of Requests for Admission is attached as Exhibit B, Bryant's Second Set of

28  Requests for Admission is attached as Exhibit C, and Bryant's Fourth Set of
    Requests for Production is attached as Exhibit D to the Werdegar Declaration.

3

1  connection with the appointment of the Discovery Master in this case, to accept

2  service of discovery-related pleadings via electronic mail,[2] and Bryant has

3  consistently served his discovery pleadings via electronic mail without complaint

4  by Mattel or any indication from Mattel that this form of service was unreliable or

5  ineffective, or resulted in any internal confusion in Mattel's counsel's office.

6  Werdegar Decl., ¶ 15.

7       On December 31, 2007, shortly after Bryant served his final round of Phase I

8  discovery requests, counsel for Mattel contacted Bryant to meet and confer

9  regarding Bryant's requests for admission.  Werdegar Decl., ¶ 16; Ex. K (Dec. 31,

10  2007 Proctor let.).  Mattel's asserted basis for seeking a conference of counsel had

11  nothing to do with the form of service.  Mattel simply claimed that the requests

12  were unduly burdensome. *See id.* ¶ 16; Ex. K.  Indeed, counsel for Mattel's letter

13  stated that Mattel intended to seek a protective order providing that it need not

14  respond to the requests, indicating to Bryant that Mattel would otherwise respond.

15  *Id.* Ex. K.  Subsequently, on January 3, 2008, counsel for Mattel contacted Bryant

16  to discuss his Second Set of Interrogatories. *Id.* ¶ 17; Ex. L (Jan. 3, 2007 Proctor

17  let.).  Again, Mattel's request for a conference did not mention any issue relating to

18  the service of this set of discovery. *See id.* ¶ 17; Ex. L.

19       Bryant, together with counsel for MGA, thereafter engaged in several

20  telephonic conferences with Mattel regarding Bryant's requests for admission and

21  Interrogatory No. 20, as well as other requests served by MGA.  Werdegar Decl., ¶

22  18.  These conferences, which occurred during the first half of January 2008, were

23  also memorialized in written correspondence between the parties. *Id.* Ex. M.  At

24  no point during any of these conferences did Mattel ever assert that Bryant had

25  failed to properly serve his discovery requests. *Id.* ¶ 18.  To the contrary, *Mattel*

26  *agreed to respond to Bryant's Interrogatory No. 20*, as part of a negotiated

27  _____

28  [2] Stip. For Appointment of A Discovery Master; And Order, Document 107, at 5, ¶ 5 ("Service of any document by fax or electronic mail prior to 6:00 p.m. shall

4

410555.03

1   resolution of Mattel's objection that Bryant and MGA had exceeded their limit of

2   fifty interrogatories. *Id.* ¶ 19; Ex. M.  Mattel also made clear that its burden

3   objections to Bryant's and MGA's requests for admission did not extend to all of

4   Bryant's requests, but only a limited subset, and that Mattel anticipated responding

5   to at least some of the requests for admission. *Id.* ¶ 20.

6        On January 28, 2008, following these conferences of counsel, Mattel served

7   its responses to Bryant's First and Second Sets of Requests for Admission and

8   Second Set of Interrogatories.  Werdegar Decl., Exs. N-P.[3]  In its responses, Mattel

9   objects that the requests were not properly served and, therefore, that it has no

10  obligation to respond.  *See, e.g., id.* Ex. N, at 2; Ex. O, at 2; Ex. P, at 2.  Mattel did

11  not provide a substantive response to any of the requests.  *See id.* Exs. N-P.  These

12  responses, which Bryant received on January 30, 2008,[4] were the first indication

13  provided by Mattel that it believed there was a problem with service and that it was

14  not going to respond on that basis.  *Id.* ¶ 21.  On February 6, 2008, Mattel belatedly

15  provided responses to Bryant's Fourth Set of Requests for Production.  *Id.* Ex. Q.

16  These responses also consisted solely of objections.  *See id.*

17       As soon as Bryant received Mattel's (non)responses to his discovery

18  requests, he contacted Mattel to request a conference of counsel regarding Mattel's

19  Rule 5(b) and other objections.  Werdegar Decl., ¶ 26; Ex. R.  Mattel never

20  responded to Bryant's initial request for a conference.  *Id.* ¶ 27.  Only after Bryant

21  reiterated his request did Mattel finally agreed to meet and confer on February 6,

22  2008.  *Id.* ¶¶ 27-28; Ex. S.  During that conference of counsel, Mattel confirmed

23  that it had in fact received Bryant's First and Second Sets of Requests for

24  Admission and Second Set of Interrogatories and that Bryant's service of these

25  _____

    constitute service on that day.").

26  [3] Mattel's Response to Bryant's Second Set of Interrogatories is attached as

27  Exhibit N, Mattel's responses to Bryant's First Set of Requests for Admission are
    attached as Exhibit O, and Mattel's responses to Bryant's Second Set of Requests

28  for Admission are attached as Exhibit P.

1  requests by Federal Express and email was the sole basis for Mattel's objection

2  that the requests were improperly served.  *Id.* ¶ 29; Ex. T.  Mattel also

3  subsequently confirmed that it had received Bryant's Fourth Set of Requests for

4  Production, which had been sent to Mattel in the same email and Federal Express

5  package as Bryant's Second Set of Interrogatories and First Set of Requests for

6  Admission.  *Id.* ¶ 33; Ex. U (Feb. 7, 2008 Proctor let.); Ex. V (email transmitting

7  discovery requests).  Counsel for Bryant inquired whether Mattel was contending

8  that it had been prejudiced in any substantive way by Bryant's service of these

9  requests by Federal Express and email.  Counsel for Mattel was unable to articulate

10  any prejudice, stating instead that "he would have to think about it."  *Id.* ¶ 29; Ex.

11  T (Feb. 6, 2008 Werdegar email).  Subsequently, Mattel claimed—*with respect to*

12  *Bryant's Fourth Set of Requests for Production only*—that Bryant's service by

13  email and Federal Express had somehow led to unspecified "internal docketing

14  confusion."  *Id.* Ex. U.

15       During the parties' conference of counsel, Mattel reaffirmed its previous

16  agreement, dating from late January 2008, to provide a substantive response to

17  Bryant's Second Set of Interrogatories (No. 20), provided that Bryant would not

18  argue that Mattel had waived its service objection as to Bryant's other discovery

19  requests by responding to this interrogatory.[5]  Werdegar Decl. ¶ 30; Exs. T & U.

20  Mattel represented that it would provide this response by February 22, 2008.  *Id.* ¶

21  30.  However, Mattel stated that its response would likely be limited by objections,

22  and Mattel refused to agree that Bryant could file a motion directed at the

23  sufficiency of Mattel's response, if one proved necessary, after Mattel ultimately

24  provided it, stating instead that any such motion would be untimely.  Werdegar

25  Decl. ¶ 36; Ex. X.  As to Bryant's other discovery requests, Mattel flatly refused to

26  agree to respond under any conditions, despite the fact that Bryant offered to grant

27

28

---

[4] Werdegar Decl. ¶ 21.

[5] Bryant agreed to this condition.  *See* Werdegar Decl. ¶ 30; Ex. T.

1  Mattel an extension to respond to the requests, and reiterate his earlier offer to limit

2  the scope of those requests for admission that Mattel previously had claimed were

3  unduly burdensome. *Id.* ¶ 31; Exs. T, U, & W (Feb. 8, 2008 Werdegar email).

### III.   ARGUMENT

**A.   Mattel's refusal to respond to Bryant's discovery requests on grounds that they were improperly served should be overruled and Mattel should be ordered to provide complete, substantive responses.**

Bryant acknowledges that he did not strictly comply with Federal Rule of

Civil Procedure 5(b) in serving his First and Second Sets of Requests for

Admission, Second Set of Interrogatories, and Fourth Set of Requests for

Production on Mattel. Bryant served the requests by Federal Express and email,

but not by U.S. Mail or personal service. But that failure, in light of Mattel's prior

acceptance of service in this manner and absent any resulting prejudice whatsoever

to Mattel, should not result in the suppression of evidence critical to Bryant's

defense in this case. Such a result would be unjust and contrary to the fundamental

goals of the Federal Rules.

"The Rules of discovery were not meant to be hindered by technicalities that

would allow the suppression of evidence which meets the requirements of Rule

26(b)." *G. & P. Amusement Co. v. Regent Theater Co.*, 9 F.R.D. 721, 724 (N.D.

Ohio 1949); *see also E.E.O.C. v. U.S. Bakery*, No. Civ. 03-64-HA, 2004 WL

1307915, at *2 (D. Or. Feb. 4, 2004) (holding same). With respect to Rule 5(b) in

particular, the Ninth Circuit has held that a failure to strictly comply with the rule

is excusable if there is (1) actual notice and (2) a showing of exceptional good

cause for failing to comply with the rule. *See Magnuson*, 85 F.3d at 1430-31

(adopting test set forth in *Salley v. Bd. of Governors, Univ. of N. Carolina*, 136

F.R.D. 417-420 (M.D.N.C. 1991)). Courts applying this test have held that

"exceptional good cause" is satisfied when the party challenging the sufficiency of

service has indicated—either by word or by deed—that it would accept service by

a means other than U.S. Mail or personal service.

1    In *Salley*, the court found there to be sufficient good cause where the

2    defendants, who were challenging the sufficiency of service by facsimile, had

3    "implicitly consent[ed] to service by fax transmission prior to the time that the

4    plaintiff faxed her discovery requests" by accepting service in this manner on

5    previous occasions. *See* 136 F.R.D. at 420-21. Similarly, in *Switzer v. Sullivan*,

6    No. 95 C 3793, 1996 WL 52911 (N.D. Ill Feb. 5, 1996), the court found the

7    plaintiff's noncompliance with Rule 5(b) was excused where the defendant had

8    previously agreed to service by facsimile and failed to raise any objection to that

9    form of service promptly upon receiving the plaintiff's faxed discovery requests.

10   *Id.* at *3. Notably, the *Switzer* court also found that the defendant had waived all

11   other objections by failing to timely serve responses to the discovery at issue. *Id.*

12       The present situation is no different. *See Hernandez v. Gates*, No. CV00-

13   07163GAF, 2004 WL 291225, at *1 (C.D. Cal. Feb. 5, 2004) ("What constitutes

14   compliance with Rule 5 has been addressed on a case-by-case basis in decisions

15   that demonstrate that context plays an important role in determining whether

16   adequate service has been effected in a given case."). *First,* there is no dispute that

17   Mattel received actual notice of Bryant's First and Second Sets of Requests for

18   Admission and Second Set of Interrogatories on or before December 27, 2008—32

19   days before the close of Phase I discovery. And there is no evidence the Mattel did

20   not also receive Bryant's Fourth Set of Requests for Production, which were sent

21   into the same email and same Federal Express packages at the same time. *Second,*

22   Mattel has waived any objection it may have had to service of these requests by

23   Federal Express and email by repeatedly accepting service from Bryant by these

24   means in the past, and by failing to timely object to this form of service and,

25   instead, agreeing during the parties' conferences of counsel to respond to respond

26   to at least some of Bryant's requests.

27       Bryant has on numerous prior occasions served his responses to discovery

28   via Federal Express and email. For example, Bryant served his responses to

8

410555.03

1   Mattel's Fourth and Fifth Sets of Requests for Admission and Revised Third,

2   Amended Fourth, Fifth and Sixth Sets of Interrogatories via Federal Express and

3   email, and not U.S. Mail or by hand.  Werdegar Decl., ¶ 7; Exs. E-J.  Mattel never

4   complained about the sufficiency of the service of any of these documents.  *Id.* ¶

5   14.  Indeed, although Mattel sought to meet and confer with Bryant regarding

6   many of these responses, and filed motions to compel relating to some of them,

7   Mattel never raised the issue of service by Federal Express and email in any

8   conference of counsel or in any of its motions.  *Id.*  By repeatedly failing to do so,

9   Mattel implicitly agreed to accept service by these means.  *Cf. Salley*, 136 F.R.D.

10   at 421 (defendant implicitly agreed to service by facsimile where defendant

11   accepted service by facsimile on prior occasions without objection).  Mattel is thus

12   estopped from arguing that Bryant's failure to strictly comply with Rule 5(b)

13   alleviates it of any obligation to respond to his discovery requests.  *See id.*

14          Moreover, Mattel and Bryant met and conferred at length regarding Bryant's

15   discovery requests in early January, weeks before the Phase I discovery cut-off.

16   Yet during these conferences, Mattel never raised the issue of service.  Werdegar

17   Decl., ¶¶ 16-20; Exs. K & L.  To the contrary, *Mattel ultimately agreed that it*

18   *would respond to Bryant's Interrogatory No. 20.  See id.*, ¶ 19; Ex. M.  Mattel also

19   indicated that its concerns regarding Bryant's requests for admission were limited

20   only to a small subset and that it likely would respond to the others.  *See id.* ¶ 20.

21   Thus, over a period of weeks, Mattel led Bryant to believe that it was going to

22   respond Bryant's requests.  The first Bryant learned of Mattel's objection to the

23   form of service was when Mattel served its responses.  *Id.* ¶ 21; *cf. Switzer*, 1996

24   WL 52911, at *3 (finding that defendant was estopped from objecting on the basis

25   of service given, *inter alia,* that defendant never "attempted to consult with

26   [plaintiff's] attorney concerning the defect in service he now complains of").

27          Of course, had Mattel promptly notified Bryant that, notwithstanding

28   Mattel's repeated acceptance of service from Bryant by Federal Express and email,

1   it was no longer willing to accept service in this form, Bryant could have reserved

2   the discovery requests by personal service.  Service by hand would have been

3   timely on December 27, 2008, when Mattel received the requests by Federal

4   Express, and the next day, December 28, 2008.  But Mattel instead chose to keep

5   its procedural objection secret, so that it could assert it at the last minute in a bid to

6   prevent Bryant from obtaining critical discovery regarding Mattel's claims.

7       In sum, given that Mattel has not—and cannot—articulate any prejudice

8   that it has suffered no prejudice as a result of Bryant's service by Federal Express

9   and email, the Court should not countenance Mattel's "gottcha" tactics.  Mattel had

10  actual notice of all of Bryant's discovery requests at most a day after he served

11  them and, as discussed above, there is ample good cause to excuse Bryant's failure

12  strictly to comply with Rule 5(b).  Permitting Mattel to avoid responding to these

13  requests on the basis of a procedural technicality would severely hamper Bryant's

14  defense and would be unjust.

15  **B.    Mattel's other, boilerplate objections lack any merit and also should be overruled.**

16

17      In addition to objecting on the basis of service, Mattel asserts a series of

18  boilerplate objections to Bryant's requests.  None of these objections have merit,

19  and they should be overruled.

20      **1.    Mattel's baseless objections to Bryant's Second Set of Interrogatories (No. 20).**

21

22      Bryant's Second Set of Interrogatories consists of a single interrogatory, No.

23  20.  This interrogatory asks Mattel to identify each Mattel property or resource that

24  Mattel contends Bryant used in connection with the design, development, sale or

25  licensing of any Bratz products.  Mattel objects that this interrogatory is overbroad

26  and unduly burdensome because it calls for "all facts" supporting Mattel's

27  contentions.  Mattel also objects that it does not have enough information to

28  answer.  Mattel has represented that it will respond substantively to this

10

1   interrogatory by February 22, 2008. If its response is full and complete, this

2   portion of Bryant's motion may be moot. But as things currently stand, Mattel has

3   refused to agree that Bryant can file a motion regarding the sufficiency of Mattel's

4   response after Mattel serves it, claiming that such a motion would be untimely.

5   Werdegar Decl. Ex. X. Consequently, Bryant has no choice but to seek an order

6   overruling Mattel's baseless objections at this time.

7         Mattel has consistently argued in this case that a party is obliged to respond

8   to an interrogatory calling for "all facts" supporting a contention with exactly that,

9   all facts. Indeed, this argument forms a centerpiece of Mattel's pending Motion to

10  Compel Responses to Interrogatories By Bryant. *See* Mot. to Compel Responses

11  To Interrog. By Bryant, dated Dec. 13, 2007, at 11-15 (arguing that "all facts"

12  contention interrogatories "are commonly used to elucidate facts regarding a

13  party's contentions, and numerous courts have held them proper"). Bryant

14  believes that the appropriate response to an "all facts" contention interrogatory is

15  to provide the "material" or "principle" facts supporting the responding party's

16  contentions. *See, e.g., Lucero v. Valdez 240*, F.R.D. 591, *594 (D. N.M. 2007)

17  ("Interrogatories may ask for the material or principal facts that support a party's

18  contentions[.]"); *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, *405 (D. Kan.

19  1998) ("Interrogatories may, however, properly ask for the 'principal or material'

20  facts which support an allegation or defense."). Provided that the rules apply

21  equally to all the parties, Bryant would be satisfied with such a response from

22  Mattel. But whichever way the Court comes out on this issue, the Court's

23  determination must apply equally to Mattel, and Mattel must answer Bryant's

24  Interrogatory No. 20 consistent with that interpretation.

25        Mattel's second objection, that it lacks sufficient information to respond

26  because of Bryant's alleged failure to provide the necessary discovery, is equally

27  without merit. Mattel has accused Bryant of misappropriating Mattel property and

28  resources, and it has accused him of conversion, breach of fiduciary duty, and civil

1    RICO violations on that basis. *See, e.g.,* Mattel's Amended Answer and

2    Counterclaims, at 33 (¶ 26), 53-59, 64-65, 69-70. Mattel must have a factual

3    foundation for these claims, otherwise it would be in violation of Rule 11. Bryant

4    is entitled to that factual foundation, including all facts that Mattel has adduced to

5    date through discovery. Of course, if additional facts later come to light, Mattel

6    can amend its response to add those facts. But Bryant is unquestionably entitled to

7    know the current factual bases, if any, for these very serious allegations.

8        **2.**    **Mattel's baseless objections to Bryant's First Set of Requests for Admission**

9    

10           **a.**    **Requests regarding Bryant's alleged status as a fiduciary (Nos. 1-13).**

11       Bryant's Requests for Admission Nos. 1-13 all ask Mattel to admit or deny

12   that Bryant, while an employee of Mattel, had certain duties or authority. For

13   example, Request No. 1 asks Mattel to "Admit that CARTER BRYANT was never

14   an officer of MATTEL during his time as a MATTEL employee" and Request No.

15   2 asks Mattel to "Admit that CARTER BRYANT was never a director of

16   MATTEL during his time as a MATTEL employee." Mattel has objected that

17   each of these requests, and others in this series, are vague and ambiguous and are

18   irrelevant. These objections are specious. These requests are straightforward and

19   clear. And if there truly were some ambiguity, Mattel could include its own

20   interpretation of the terms it contends are vague in answering the requests. *See*

21   *Pulsecard, Inc. v. Discover Card Services, Inc.*, 168 F.R.D. 295, 310 (D. Kan.

22   1996) ("Respondents should exercise reason and common sense to attribute

23   ordinary definitions to terms and phrases utilized in interrogatories. To clarify

24   their answers, respondents may include any necessary, reasonable definition of

25   such terms or phrases.").

26       These requests also are extremely relevant. As already discussed, Mattel is

27   accusing Bryant of, among other things, breach of fiduciary duty. An essential

28   element of this claim is that Bryant was in fact a fiduciary of Mattel. *See*

12

410555.03

1 | *Slovensky v. Friedman*, 142 Cal. App. 4th 1518, 1534 (2006). Bryant is entitled to

2 | discovery pertaining to the factual bases, if any, for Mattel's allegation that Bryant

3 | was a fiduciary, despite being an ordinary, non-managerial employee. Requiring

4 | Mattel to respond to these requests will serve the central purpose of requests for

5 | admission, which is "to narrow issues for trial to those which are genuinely

6 | contested." *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 967 (3d Cir.

7 | 1988).

8 |           **b.**      **Requests regarding moonlighting by other Mattel**

9 |                   **employees and Mattel's (non)enforcement of the form employment agreements it is asserting against Bryant (Nos.**

10 |                   **13-17, 26-42, and 57-66).**

11 |        Bryant's Requests for Admission Nos. 13-17 ask Mattel to admit or deny

12 | that it has sued or threatened to sue Mattel employees, other than Bryant, for

13 | breach of the standard form employment contracts that it claims Bryant breached.

14 | Bryant's Request for Admission Nos. 26-42 ask Mattel to admit or deny that other

15 | Mattel employees have done work on the side for other company's, including other

16 | toy company's (as the Court is aware, Mattel's claims are based in large part on

17 | Bryant's alleged work for MGA while employed at Mattel). Bryant's Request

18 | Nos. 57-66 ask Mattel to admit or deny that it prohibits certain conduct by

19 | employees. Mattel has objected to these requests as irrelevant and/or overbroad

20 | and unduly burdensome.

21 |        These requests are plainly relevant and well-within the scope of permissible

22 | discover under Federal Rule of Civil Procedure 26(b). Whether and to what extent

23 | Mattel has enforced the form employment contracts it is asserting against Bryant,

24 | and whether Mattel was aware of and tolerated moonlighting by other employees,

25 | is directly relevant to Mattel's claims for breach of contract, breach of fiduciary

26 | duty, and breach of the duty of loyalty, as well as Bryant's affirmative defenses of

27 | waiver and consent. *See Cable & Computer Tech.*, 175 F.R.D. at 650 (Rule 26(b)

28 | is liberally interpreted to permit wide-ranging discovery of all information

1 reasonably calculated to lead to the discovery of admissible evidence[.]").   It also
2 relevant to how Mattel's form employment agreements should be construed by the
3 Court.  This very issue is presently before the Court pursuant to MGA's and
4 Bryant's Joint Motion to Overrule Mattel's Relevance Objection and to Compel
5 Discovery Relevant to Mattel's Employment Agreements ("Joint Motion"), which,
6 in the interests of brevity, is incorporated herein by reference.  As fully explained
7 in that motion, extrinsic evidence of the parties' conduct bears directly on their
8 intent.  Joint Motion at 5-6.  Accordingly, the construction that the parties give a
9 contract "before any controversy has arisen as to its meaning, is entitled to great
10 weight and will, when reasonable, be adopted and enforced by the Court," *U.S.*
11 *Cellular Investment Co. of Los Angeles, Inc. v. GTE MobilNet, Inc.*, 281 F.3d 929,
12 937 (9th Cir. 2002), and "the practical construction placed on the contract by the
13 parties is more convincing than a construction which has been reached in an
14 attempt to escape liability in the circumstances."  *Collins v. Home Sav. & Loan*
15 *Ass'n*, 205 Cal. App. 2d 86, 100 (1962).

16         As for Mattel's burden objection, Bryant disagrees that these requests are
17 unduly burdensome, given the scope and importance of this litigation, and the
18 burden that Mattel has consistently argued that it is entitled to impose on Bryant
19 and MGA in responding to discovery.  *See, e.g.*, Mattel's [Corrected] Reply In
20 Supp. of Mot. to Compel Responses To Interrog. By Bryant, dated Dec. 27, 2008,
21 at 12 ("[T]his is no ordinary litigation involving narrow issues and limited amounts
22 in controversy.  This is a high-stakes, multi-party litigation involving many years
23 of conduct, numerous inventions, sophisticated litigants and millions of dollars.").
24 Nonetheless, Bryant offered during the parties' conferences of counsel in January
25 2008, long before Mattel served its objections, to limit the scope of the search that
26 Mattel would have to perform to respond to these requests to employees at Mattel's
27 El Segundo, California Design Center and to the files of its Human Resources
28 Department, its Legal Department, and its Global Security Department.  Werdegar

Decl. ¶¶ 20, 31.  Mattel repeatedly stated that Bryant's proposal (which MGA also made with respect to certain of its requests for admission) was "intriguing" and represented a "substantial narrowing" of the requests.  *Id.* ¶ 20.  In light of Bryant's proposed limitation, Mattel cannot credibly argue that these requests are unduly burdensome.

> **c.   Requests regarding Mattel's trade secret and conversion allegations (Nos. 18-25 and 52-56).**

Mattel does not include Bryant in its theft of trade secrets cause of action. But, as noted above, Mattel nonetheless repeatedly alleges that Bryant misappropriated Mattel property, including trade secrets, and accuses Bryant of conversion, breach of fiduciary duty, and civil RICO violations on that basis. Bryant's Requests Nos. 18-25 and 52-56 all ask Mattel to admit or deny whether it is making certain trade secret and conversion-related contentions against Bryant. For example, Request No. 18 asks Mattel to "Admit that YOU do not contend that CARTER BRYANT misappropriated any MATTEL trade secrets" and Request No. 20 asks Mattel to "Admit that YOU do not contend that CARTER BRYANT 'wrongfully converted Mattel's property by removing Trade Secret Material [as that term is used in MATTEL's Second Amended Answer and Counterclaims] in electronic and paper form from Mattel's offices."  Mattel objects that these requests are vague and ambiguous and call for the disclosure of privileged information.  Again, both objections are entirely without merit.

There is nothing vague about a request asking Mattel if it contends in this litigation that Bryant stole Mattel's trade secrets (Request Nos. 18-19).  Similarly, Request Nos. 20 and 21 simply ask whether a particular quoted allegation in Mattel's counterclaims is asserted against Bryant.  If these requests are vague, it is because Mattel's counterclaims are vague, which is precisely why this series of requests is so necessary and important.  These requests also cannot possibly call for privilege information.  They are all seeking to clarify Mattel's contentions.  As

1  this Court has held in connection with requests for admission propounded by

2  Mattel, "[t]he fact that [the responding party] may need to consult with counsel to

3  respond to the requests does not make the response privileged."  Order Granting

4  Mattel's Mot. to Compel Bryant to Answer Requests for Admission, dated Aug.

5  20, 2007, at 6-7.  Mattel must abide by the same rules.

6           **d.    Requests regarding Mattel's contentions as to the meaning
7                   and scope of its form employment agreements (Nos. 42-51
                    and 95-112).**

8           Requests for Admission Nos. 42-51 ask Mattel to admit or deny whether

9  certain conduct, such as leaving Mattel to work for a competitor (Request No. 42)

10  or leaving Mattel to start a new toy company (Request Nos. 45-46), is prohibited

11  by Mattel's standard form employment agreements and employment policies, and

12  whether Mattel employees, other than Bryant, have in fact engaged in such conduct

13  (*e.g.,* Request Nos. 44 and 47).  Mattel objects that these requests seek irrelevant

14  information and are vague, ambiguous, and compound.  Requests for Admission

15  Nos. 95-112 ask Mattel to admit whether it requests or requires its employees to

16  disclose any ideas, designs or inventions created by the employee while not

17  employed by Mattel.  Mattel objects that these requests "seek[] information that is

18  vague and ambiguous, and compound."

19         Mattel's objections, which are entirely unsubstantiated, lack merit for the

20  same reasons as Mattel's other objections.  These requests all seek information

21  relating to Mattel's interpretation and enforcement of the form employment

22  agreements it claims Bryant has breached.  As discussed above and in the Joint

23  Motion, such information is directly relevant to Mattel's claims for breach of

24  contract, breach of fiduciary duty, and breach of the duty of loyalty, as well as

25  Bryant's affirmative defenses of waiver and consent.  And Mattel has not

26  specifically identified anything about these requests that renders them vague or

27  ambiguous or otherwise unanswerable.   Mattel should be ordered to respond to

28  these requests without objection or equivocation.

16

e.   **Requests regarding Mattel's causation and damages contentions (Request Nos. 67-94)**

Bryant's Request Nos. 67-94 ask Mattel to admit or deny whether it would in fact have exploited Bryant's Bratz ideas had it known of them, and whether Mattel had business policies and practices in place during the relevant time period that would have caused Mattel not to exploit Bryant's ideas. Once again, Mattel has objected to these requests as vague and ambiguous and as seeking irrelevant information. And once again, Mattel's objections are without merit.

A key premise of Mattel's claims against Bryant and MGA is that if Bryant had disclosed his ideas for Bratz to Mattel, as Mattel claims he should have, Mattel would have exploited those ideas and reaped the profits that MGA instead has reaped from the sale of Bratz dolls and accessories. *See, e.g.,* Mattel's Amended Answer and Counterclaims, at 32-37 (section entitled "MGA Steals a New Line of Fashion Dolls from Mattel"). Bryant believes that this premise is entirely unfounded, and that Mattel would never have developed and marketed Bratz. These requests are all designed to flesh out exactly what Mattel's contentions are with respect to this critical aspect of its case. For example, Request No. 68 asks Mattel to admit that if Bryant had disclosed his ideas for Bratz to Mattel prior to October 20, 2000, Mattel would not have taken steps to commercially exploit the idea, while Request No. 70 asks Mattel to admit that it is not contending that it would have done so. These, and the other requests in this series, are clear, relevant, and should be answered by Mattel.

3.   **Bryant's Second Set of Requests for Admission.**

With three exceptions, all of the Requests for Admission in Bryant's Second Set ask Mattel either to admit that certain Bryant original Bratz drawings were created prior to January 3, 1999 but after April 1998 or that Mattel does not contend that certain drawings were created after January 4, 1999. For example, Request No. 116 asks:

17

1   Admit that CARTER BRYANT created the DESIGN
    INCORPORATED in the document bearing the Bates no. BRYANT
2   175 prior to January 3, 1999 but after April 1998.

3   Similarly, Request No. 117 asks:

4       Admit that YOU do not contend that CARTER BRYANT created the
        DESIGN INCORPORATED in the document bearing the Bates no.
5       BRYANT 175 after January 3, 1999.

6   All of the rest of the requests, except for three (Nos. 113-115) that ask about

7   Bryant's Bratz idea more generally, follow this exact same format, but ask about

8   other original Bryant drawings.

9       Mattel objects that these requests are vague and ambiguous.  However, there

10  is nothing vague about these requests.  And again, if Mattel truly believed they

11  were vague, Mattel could provide its own definition of any ambiguous term.

12  Mattel also objects that "it may not have sufficient information to frame a complete

13  responses[.]"  But the fact Mattel "may" lack sufficient information is not a basis

14  for refusing to respond.  Indeed, Mattel's use of the word "may" suggests that this

15  objection is unsubstantiated.  Yet even if Mattel did in fact lack "sufficient

16  information"—and there is no basis for believing it does—that still would not be a

17  basis for refusing to respond.  Rule 36(a)(4) is quite clear: "if a matter is not

18  admitted, the answer must specifically deny it *or state in detail why the answering*

19  *party cannot truthfully admit or deny it.*"  (emphasis added).  Consequently, at a

20  minimum, Mattel must explain in detail why it cannot truthfully admit or deny

21  these requests.

22      **4.    Bryant's Fourth Set of Request for Production.**

23      Mattel's objections to Bryant' Fourth Set of Requests for Production are

24  similarly boilerplate and without merit.  They are also untimely, having been

25  served forty-two days after Bryant's served these requests.  Consequently, if the

26  Court concludes that these were adequately served on Mattel, the Court should find

27  that Mattel has waived all objections to these requests and should order Mattel to

28  respond to them fully and completely.  *See Richmark Corp. v. Timber Falling*

18

410555.03

1    *Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a
2    failure to object to discovery requests within the time required constitutes a waiver
3    of any objection."); *Switzer*, 1996 WL 52911, at *3 (deeming admitted requests for
4    admission served by facsimile to which defendant had belatedly responded).
5    However, even if the Court considers Mattel's objections, it should overrule them
6    in their entirety.

7            Although Bryant could move to compel responses to all of the requests for
8    production included in his Fourth Set, as the documents sought by each request are
9    relevant and discoverable, Bryant is limiting the present motion just to those
10   requests for which a response is critically important. Those requests are numbers
11   10, 21, and 22-32.

12           Request No. 10 asks for documents "sufficient to show the date on which
13   MATTEL hired outside counsel to represent MATTEL with respect to any
14   litigation or potential litigation concerning BRYANT or BRATZ." Mattel objects
15   that this request seeks information that is not relevant. But, obviously, the date
16   when Mattel engaged counsel to begin preparing a lawsuit against Bryant or
17   related to Bratz is directly relevant to Bryant's statute of limitations and laches
18   defenses. Mattel also objects that this request is duplicative of other requests. Yet
19   Mattel has not to date produced the requested documents in response to any
20   request. Third, Mattel objects that this issue has been presented to the Discovery
21   Master for decision and that Mattel will not produce any additional documents
22   until there is a decision by the Discovery Master. Mattel does not identify what
23   motion that is pending before the Court requests production of these documents,
24   but if there is one Bryant will obviously respect the Court's decision. Finally,
25   Mattel objects that this request is vague and that it may call for privileged
26   information. The request is not vague. The definitions provided by Bryant for the
27   terms "BRYANT" and "BRATZ" are similar to definitions used by Mattel for
28   these same terms. Finally, the date when Mattel retained counsel, by itself, is not

1   privileged.

2         Request No. 21 seeks any fee agreements that Mattel has entered into with

3   any witnesses in this case.  Mattel objects that the term "fee agreement" is vague

4   and ambiguous, but Mattel surely knows what Bryant is seeking.  He is seeking the

5   same information that Mattel relentlessly has sought from him and from MGA,

6   information showing which witnesses legal fees Mattel is paying.  This

7   information is relevant to show bias on the part of those witnesses and is not

8   privileged or otherwise immune from discovery.  *See In re Grand Jury Subpoenas*,

9   803 F.2d 493, 499 (9th Cir.1986)  (holding that attorney-client privilege does not

10  protect the identity of "benefactor" paying the legal fees of another.).

11        Finally, Request Nos. 22-32 all seek the documents, if any, supporting

12  Mattel's certain of Mattel's contentions.  Specifically, these requests seek the

13  documents supporting Mattel's contentions in response to certain of Bryant's First

14  Set of Requests for Admission.  For example, Request No. 22 asks for:

15        All DOCUMENTS that support your contention, if you so contend in
      response to Request for Admission Number 19 to Carter Bryant's
16    First Set of Requests for Admission to Mattel, Inc., that BRYANT
      misappropriated any MATTEL trade secrets.
17

18  The rest of the requests in this series follow this exact same format, but inquire

19  about documents supporting other contentions.  In response to these requests,

20  Mattel asserts just about every objection it can think of.  Mattel argues that these

21  requests seek irrelevant information, are duplicative, overbroad, oppressive, unduly

22  burdensome, vague, ambiguous, "complex", unintelligible, call for a legal

23  conclusion, call for privileged information, and call for confidential, proprietary or

24  trade secret information.  Mattel does not substantiate any of these objections, and

25  it cannot.

26        Request Nos 22-32 all seek production of the documents that Mattel believes

27  support its contentions in this case.  Using request No. 22 again as an example, if

28  Mattel does not contend that Bryant misappropriated trade secrets, or is not going

1    to rely on any documents to attempt to prove that contention, then it can say so and

2    it need not produce any documents.  But if Mattel is going to attempt to prove

3    misappropriation by Bryant at trial, and based on Mattel's pleadings it appears that

4    it will, then Bryant is entitled to know what documents Mattel is going to rely on.

5    To quote one of Mattel's own briefs before this Court:  "[Bryant] should not be

6    required to wait until trial to find out exactly what information [Mattel] has failed

7    to produce in response to [Bryant's] roper discovery requests—to find out just how

8    [Mattel is] planning to sandbag [Bryant] at trial."   Mattel's [Corrected] Reply In

9    Supp. of Mot. to Compel Responses to Interrog. By Bryant, at 2. Bryant is entitled

10   to know exactly what evidence, if any, Mattel believes shows that Bryant

11   committed the serious acts Mattel accuses him of.  The requests seek exactly such

12   information.

### IV.   CONCLUSION

14          For all the foregoing reasons, the Court should issue an order overruling

15   Mattel's objections and requiring Mattel to respond fully and completely to

16   Bryant's First and Second Sets of Requests for Admission, Second Set of

17   Interrogatories (No. 20), and Fourth Set of Requests for Production.

Respectfully admitted,

20   Dated:  February 8, 2008                KEKER & VAN NEST, LLP

By: _____
MATTHEW M. WERDEGAR
Attorneys for Plaintiff
CARTER BRYANT

410555.03

BRYANT'S MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS
CASE NO. CV 04-09049 SGL (RNBx)

# EXHIBIT 22

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

December 31, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>

Michael H. Page, Esq.                    Thomas J. Nolan, Esq.
Keker & Van Nest, LLP                    Skadden, Arps, Slate, Meagher & Flom LLP
710 Sansome Street                       300 South Grand Avenue, Suite 3400
San Francisco, CA 94111                  Los Angeles, CA 90071

Re:    <u>Mattel, Inc. v. Bryant, et al.</u>

Dear Counsel:

We are in receipt of your latest sets of Requests for Admission – MGA's Third Set of Requests
for Admission and Bryant's First Set of Requests for Admission.  Pursuant to the Order for the
Appointment of a Discovery Master, we write to request a meet and confer regarding a motion
for a protective order Mattel contemplates filing regarding these Sets of Requests.

These Sets contain approximately 650 requests that relate to activities of Mattel employees other
than Carter Bryant.  In Mattel's view, these requests are grossly improper because they
potentially could require Mattel to review virtually all of its computer systems and files to
determine whether, for instance, any of its many thousands of current and former employees
have performed work for third parties while employed by Mattel.  The requests do not appear to
seek information that is relevant or likely to lead to discovery of admissible evidence.  Moreover,
even if there were some relevance to this information, the extraordinary burdens the Sets present
outweigh any marginal benefits or relevance of the information.

Please let us know when you are available to meet and confer regarding these issues.  If we
cannot come to a resolution, Mattel intends to move for a protective order providing that it need
not respond to these Sets of Requests.

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

I look forward to hearing from you.

Very truly yours,

*Dylan Proctor (by Heidi Zahm)*

B. Dylan Proctor

Cc: Mark E. Overland, Esq.
    David C. Scheper, Esq.
    Alexander H. Cote, Esq.

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**    January 1, 2008        **NUMBER OF PAGES, INCLUDING COVER:** 3

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Michael H. Page, Esq. Keker & Van Nest, LLP | | 415-397-7188 |

**FROM:**    Heidi Frahm

**RE:**    Mattel, Inc. v. Bryant, et al.

**MESSAGE:**

Please see attached letter.

---

079752233873.2

| CLIENT # | 07289 | ROUTE/ RETURN TO: | Heidi Frahm (4th) | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | CONFIRMED? | ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

# EXHIBIT 23

01/03/2008 22:58 FAX  12134433100          QEUOH-LAD                              ☑002/003

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

January 3, 2008

<u>VIA FACSIMILE AND U.S. MAIL</u>

Michael H. Page, Esq.                    Thomas J. Nolan, Esq.
Keker & Van Nest, LLP                    Skadden, Arps, Slate, Meagher & Flom LLP
710 Sansome Street                       300 South Grand Avenue, Suite 3400
San Francisco, CA 94111                  Los Angeles, CA 90071

Re:    Mattel, Inc. v. Bryant, et al.

Dear Counsel:

We are in receipt of your latest sets of Interrogatories to Mattel -- MGA's Second Set of Interrogatories to Mattel, Inc. and Carter Bryant's Second Set of Interrogatories to Mattel, Inc. Pursuant to the Order for the Appointment of a Discovery Master, we write to request a meet and confer regarding these discovery requests.

As you are aware, both sides in this case are limited to a total of fifty interrogatories. *See* Minute Order of February 27, 2007. Additionally, discrete, unrelated issues addressed within an interrogatory count as their own, separate interrogatories. *Order Granting Joint Motion for Protective Order Regarding Mattel's Interrogatories; Denying Mattel's Motion to Compel Interrogatory Responses*, dated September 5, 2007. MGA and Carter Bryant have exceeded the limits on the number of interrogatories they may serve.

To date, Mr. Bryant has served at least twenty numbered interrogatories, and MGA has served at least thirty-one. However, many of the interrogatories are compound and therefore actually constitute multiple interrogatories. For example, MGA's Interrogatory number 28 reads: "Describe in detail the complete factual basis for YOUR COUNTERCLAIMS, including, without limitation all facts, DOCUMENTS, and witnesses that REFER OR RELATE TO YOUR

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07975/2339545.1

COUNTERCLAIMS."  Because Mattel has brought a number of counterclaims, this discovery request actually constitutes a number of interrogatories.  Thus, although Defendants have not sought leave of Court to exceed the 50 interrogatory limit, they clearly have.  MGA's Second Set of Interrogatories to Mattel, Inc. and Carter Bryant's Second Set of Interrogatories to Mattel, Inc. are therefore improper.

Please let us know when you are available to meet and confer regarding these issues.  If we cannot come to a resolution, Mattel intends to move for a protective order providing that it need not respond to some or all of these Interrogatories.

I look forward to hearing from you.

Very truly yours,

*Dylan Proctor (by Heidi Fisher)*

B. Dylan Proctor

# EXHIBIT 24

GL578/2387778.1

Hearing: [Larson] 2/4/2008 11:01:00 AM

1              UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                EASTERN DIVISION

4                   - - -

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                   - - -

7  CARTER BRYANT, ET. AL.,     )
                     )

8        PLAINTIFFS, )
                     )

9    VS.          ) NO. ED CV 04-09049
                ) (LEAD LOW NUMBER)

10  MATTEL, INC., ET. AL.,     )
                   )

11        DEFENDANTS. ) EX-PARTE APPLICATIONS
   _____) RE: DISCOVERY

12  AND CONSOLIDATED ACTIONS,    )
                   )

13

14

15      REPORTER'S TRANSCRIPT OF PROCEEDINGS

16          RIVERSIDE, CALIFORNIA

17        MONDAY, FEBRUARY 4, 2008

18           10:15 A.M.

19

20

21

22

23       THERESA A. LANZA, RPR, CSR
     FEDERAL OFFICIAL COURT REPORTER

24      3470 12TH STREET, RM. 134
    RIVERSIDE, CALIFORNIA 92501

25        951-274-0844
     CSR11457@SBCGLOBAL.NET

Hearing:  [Larson]  2/4/2008  11:01:00 AM

```
 1   APPEARANCES:
 2   ON BEHALF OF CARTER BRYANT:
 3              KEKER & VAN NEST
                BY:  MICHAEL PAGE
 4              710 SANSOME STREET
                SAN FRANCISCO, CALIFORNIA  94111-1704
 5              415-391-5400
 6
     ON BEHALF OF MATTEL:
 7
                QUINN EMANUEL
 8              BY:  JOHN QUINN
                BY:  JON COREY
 9              865 S. FIGUEROA STREET,
                10TH FLOOR
10              LOS ANGELES, CALIFORNIA  90017
                213-624-7707
11
12   ON BEHALF OF MGA ENTERTAINMENT:
13              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                BY:  THOMAS J. NOLAN
14              BY:  CARL ALAN ROTH
                BY:  ROBERT JAMES HERRINGTON
15              300 SOUTH GRAND AVENUE
                LOS ANGELES, CALIFORNIA  90071-3144
16              213-687-5000
17
     ON BEHALF OF GUSTAVO MACHADO:
18
                OVERLAND BORENSTEIN SCHEPER & KIM LLP
19              BY:  ALEXANDER H. COTE
                300 SOUTH GRAND AVENUE
20              SUITE 2750
                LOS ANGELES, CALIFORNIA  90071
21              213-613-4660
22
     ON BEHALF OF CLOONAN, MARLOW & LEAHY:
23
                KEATS MCFARLAND & WILSON LLP
24              BY:  LARRY W. MCFARLAND
                9720 WILSHIRE BOULEVARD
25              BEVERLY HILLS, CA  90212
                310-777-3750
```

Mattel v. MGA II                    Unsigned                          Page 2

1   APPEARANCES CONTINUED:
2
    ON BEHALF OF NON-PARTY CHRISTENSEN GLASER:
3
            CHRISTENSEN, GLASER, FINK, JACOBS,
4            WEIL & SHAPIRO, LLP
            BY: SCOTT E. GIZER
5           10250 CONSTELLATION BOULEVARD
            LOS ANGELES, CA  90067
6           310-553-3000
7
    ON BEHALF OF THIRD PARTIES ANA CABRERA & BEATRIZ MORALES:
8                                        '
            ALLRED, MAROKO & GOLDBERG
9           BY: RAMIT MIZRAHI
            6300 WILSHIRE BOULEVARD,
10          SUITE 1500
            LOS ANGELES, CA  90048
11          323-653-6530
12
    ON BEHALF OF THIRD PARTY WITNESS GENTLE GIANT STUDIOS:
13
            BAUTE & TIDUS LLP
14          BY: HENRY H. GONZALEZ
            777 S. FIGUEROA STREET,
15          SUITE 4900
            LOS ANGELES, CA  90017
16          213-630-5000
17
    ON BEHALF OF WACHOVIA:
18
            DAVIS POLK & WARDWELL
19          BY: NEAL A. POTISCHMAN
            1600 EL CAMINO REAL
20          MENLO PARK, CA  94025
            650-752-2000
21
22  ON BEHALF OF KAMI GILMOR:
23          BUCHALTER NEMER
            BY: JOHN PATRICK PETRULLO
24          1000 WILSHIRE BOULEVARD,
            SUITE 1500
25          LOS ANGELES, CA  90017-2457
            213-891-0700

Hearing: [Larson] 2/4/2008 11:01:00 AM

1           I N D E X

2                          PAGE

3    HEARING.......................................... 5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Mattel v. MGA II                    Unsigned                    Page 4

1   AND THEY REQUESTED THAT THEY BE TAKEN POST JANUARY 28TH.

2        MR. QUINN:  RIGHT.

3        THE COURT:  I DON'T SEE ANY PROBLEM WITH THAT,

4   SUBJECT TO ANY CHALLENGE BEING MADE BY THEIR ATTORNEYS BEFORE

5   JUDGE INFANTE.

6        MR. QUINN:  RIGHT.

7        THE COURT:  THE OUT-OF-COUNTRY DEPONENTS:  WELL, THE

8   ONE FROM CANADA IS PHASE TWO; SO THAT'S BEEN PLACED OFF.  THE

9   THREE FROM HONG KONG, IS THAT BEING CHALLENGED?

10       MR. QUINN:  THERE'S NOTHING BEFORE JUDGE INFANTE ON

11   THAT RIGHT NOW.

12       THE COURT:  AND YOU'VE SERVED THEM?

13       MR. QUINN:  NO.  THAT'S GOING TO REQUIRE LETTERS

14   ROGATORY PROCESS.

15       THE COURT:  HAVE YOU STARTED THAT PROCESS?  DID YOU

16   START THAT PROCESS BEFORE JANUARY 28TH?

17       MR. QUINN:  NO, WE DID NOT.

18       THE COURT:  WELL, YOU SHOULD HAVE STARTED THAT

19   PROCESS BEFORE JANUARY 28TH; THAT WAS THE CUTOFF FOR PHASE ONE

20   DISCOVERY.

21       THE THIRD CATEGORY, NOT SERVED WITH SUBPOENAS:  IN

22   ADDITION, THE QUESTION IS WHETHER OR NOT THEY WERE SERVED OR

23   NOTICED BEFORE JANUARY 28TH.

24       MR. QUINN:  THOSE, WE NOTICED THE DEPOSITIONS; WE

25   HAVE NOT SUCCEEDED IN SERVING THE WITNESSES WITH THE SUBPOENAS.

1       THE COURT:  THE QUESTION OF WHETHER OR NOT THE NOTICE

2   WAS PERFECTED, THAT'S AN ISSUE THAT GOES BEFORE JUDGE INFANTE.

3       MR. QUINN:  RIGHT.

4       THE COURT:  ALL I'M DECIDING TODAY IS -- I'M

5   REINFORCING THE COURT'S PRIOR ORDER THAT JANUARY 28TH WAS THE

6   CUTOFF.  I GAVE YOU, ON JANUARY 7TH, LEAVE TO TAKE.  YOU KNOW

7   WHAT THAT MEANS.  YOU KNOW HOW LONG YOU HAD.  WE ALL UNDERSTOOD

8   AT THAT TIME THAT IT WAS GOING TO BE A CRAZY MONTH.  AND I'M

9   AFFORDING YOU LEAVE NOW, I SUPPOSE, TO TAKE ANYTHING THAT WAS

10  PROPERLY NOTICED AND SERVED INTO FEBRUARY THAT RELATES TO PHASE

11  ONE.  BUT THE CUTOFF WAS JANUARY 28TH.

12      MR. QUINN:  WHAT I HEAR THE COURT SAYING IS, IF WE

13  DID NOT SUCCEED IN SERVING THEM BEFORE THE 28TH --

14      THE COURT:  EITHER BY NOT SERVING THEM OR BY HAVING

15  JUDGE INFANTE RULING THAT THE SERVICE WAS IMPROPER, THEN YOU'RE

16  OUT.

17      MR. QUINN:  I UNDERSTAND, YOUR HONOR.

18      THE COURT:  AS FAR AS THE FOURTH CATEGORY, WHETHER

19  MR. GRONICH AND TIONGCO WERE INCLUDED IN MY ORDER, THAT'S WHAT

20  I WANT TO LOOK AT IN A FEW MINUTES HERE.

21      THE TWO IN MEXICO ARE PHASE TWO; SO THAT'S IRRELEVANT

22  FOR OUR CURRENT PURPOSES.

23      THE 30(B)(6), YOU SAID THE MGA DE MEXICO WAS PHASE

24  TWO; SO THAT'S OFF.

25      THE MGA IS BEFORE JUDGE INFANTE.  HE WILL DECIDE

Mattel v. MGA II                    Unsigned                       Page 55

1    THAT, BUT YOU AT LEAST -- THAT WAS PART OF A PREVIOUS ORDER.

2          AND THE NUMBER OF DEPOSITIONS IS GOING TO BE

3    CONSIDERED BY JUDGE INFANTE, ALTHOUGH I'M GOING TO PROVIDE SOME

4    GUIDANCE HERE WHEN I TAKE A LOOK AT THESE ORDERS.  AND THE

5    ORDERS THAT I WANT TO SEE ARE THE JANUARY 7TH ORDER, WITH THE

6    CROSS-REFERENCE TO THE PAGES; THAT'S BASICALLY WHAT I NEED TO

7    SEE.

8          I KNOW THAT'S HERE SOMEPLACE.

9          MR. QUINN:  I THINK WE HAVE A COPY, YOUR HONOR.

10         MR. NOLAN:  WE HAVE IT, TOO, YOUR HONOR.

11         THE COURT:  PROVIDE THAT TO MR. HOLMES.

12         MR. NOLAN:  YOUR HONOR, I'M LOOKING AT THE

13   JANUARY 7TH ORDER, TOP OF PAGE 3.  I CAN HAND THIS UP.

14         I'LL JUST READ THE SENTENCE:  "SPECIFICALLY, THE

15   COURT GRANTS MATTEL'S REQUEST TO TAKE THE INDIVIDUAL

16   DEPOSITIONS RELATING TO THE BRATZ CLAIMS SET FORTH IN THE

17   MOVING PAPERS AT 9 THROUGH 11, AND RELATING TO THE TRADE SECRET

18   AND RICO CLAIMS SET FORTH IN THE MOVING PAPERS AT 13."

19         THE COURT:  SO THAT WAS THE PHASE ONE AND PHASE TWO

20   REFERENCES.

21         MR. NOLAN:  THEN, YOUR HONOR, I'VE GIVEN TO MR. QUINN

22   RIGHT NOW A COPY OF HIS MOTION, PAGES 9 THROUGH 11, AND

23   PAGE 13; AND I ASSUME THAT MR. QUINN WILL CONFIRM THAT NEITHER

24   OF THOSE TWO WITNESSES ARE IDENTIFIED ON THOSE THREE PAGES.

25         MR. QUINN:  THAT IS CORRECT, YOUR HONOR.  I THINK I