Larry McFarland (Bar No. 129668)
Christian Dowell (Bar No. 241973)
KEATS, McFARLAND & WILSON LLP
9720 Wilshire Blvd.
Penthouse Suite
Beverly Hills, CA 90212
Telephone:   (310) 248-3830
Facsimile:    (310) 860-0363
Email:   lmcfarland@kmwlaw.com
            cdowell@kmwlaw.com

Attorneys for Margaret Hatch-Leahy

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>         v.<br><br>MATTEL, INC., a Delaware corporation;<br><br>                    Defendant.<br><br>―――――――――――――――<br><br>AND RELATED ACTIONS. | Case No.: CV 04 – 09049 SGL (RNBx)<br>Consolidated with Case Nos.<br>CV 04-9059 and CV 05-2727<br><br><u>Hon. Edward Infante</u><br><br>NON-PARTY MARGARET HATCH-LEAHY'S OPPOSITION TO MATTEL'S MOTION TO COMPEL ADDITIONAL DEPOSITION TESTIMONY AND PRODUCTION OF DOCUMENTS<br><br>Hearing Date:    N/A<br>Time:                 N/A<br>Place:                N/A |

1    Non-party Margaret Hatch-Leahy hereby respectfully submits this Opposition

2    ("Opposition") to Mattel's Motion to Compel Additional Deposition Testimony and

3    Production of Documents ("Motion to Compel").

4    **I.    INTRODUCTION**

5    Mattel's effort to force Ms. Leahy to return for additional deposition questioning

6    is merely the latest of Mattel's effort to abuse its right to pre-trial discovery.  When this

7    Motion to Compel was made, it was one part of Mattel's massive paper assault, aimed

8    at delaying the discovery cut-off and ultimately trial herein – an effort squarely

9    rejected by Judge Larson at the hearing on Monday, February 4, 2008.  With respect to

10   Ms. Leahy specifically, the motion is another step in furtherance of Mattel's thinly-

11   disguised effort to harass doll industry artists during discovery, to deliver the message

12   throughout the industry that skilled artisans work for competitors at their personal

13   peril, and that the full weight of Mattel's corporate power will be used to intimidate

14   them and disrupt their personal lives.[1]

15   Ms. Leahy is a sculptor – she works full-time to earn a living, and has not been

16   employed by MGA for several years.  One seven-hour session, the period of time

17   permitted by the Federal Rules, is, and was, more than adequate time for her

18   deposition.[2]  And, Mattel has already served her with a trial subpoena.  Enough is

19   enough.  None of the trivial and unsubstantiated complaints raised by Mattel in this

20   Motion to Compel justify another day and all of the attendant disruption and

21

22

_____

23   [1] A glaring example is the treatment of two now-discharged Mattel employees, Ana

24   Cabrera and Beatrice Morales, commented on by Judge Larson at the February 4

     hearing.  <u>See</u> Declaration of Christian Dowell in support of Opposition ("Dowell

25   Decl."), Exh. 1. at 16 [p. 47] ("But there have been some pretty serious allegations

26   made concerning the manner of questioning these witnesses.  I'd like to give you [Mr.

     Quinn] a chance to respond to that.").

27   [2] She has already had her bank accounts subpoenaed, and her personal computers

28   subjected to forensic examination.  Dowell Decl., Exhs 2, 3.

1    inconvenience that necessitates, especially in light of Mattel's mismanagement of its

2    allotted seven hours.

3         As the record shows, Mattel's counsel wasted significant time with improperly-

4    phrased and redundant questions.  Mattel now complains that it did not have enough

5    time to depose non-party witness Leahy even though Mattel questioned her for more

6    than the full amount of time set forth in Fed. R. Civ. P. 30(d)(2), and refused to allow

7    counsel for MGA or Mr. Bryant to have any of that time even though both counsel

8    requested early on in the deposition that they be allowed to question Ms. Leahy.[3]  The

9    simple truth is to the extent that Mattel's counsel believes he did not have the

10   opportunity to question Ms. Leahy on all of the topics that he would like, he has no one

11   to blame but himself.  Mattel's counsel is the person that chose to spend approximately

12   three hours questioning Ms. Leahy about her Mattel employment history, which is

13   obviously information within Mattel's possession.[4]  In fact, Mattel's counsel went so

14   far as to question Ms. Leahy about the circumstances surrounding the adoption of her

15   child – clearly not a matter relevant to this litigation.[5]  It is also Mattel's counsel who

16   is incapable of simply asking a question, getting and answer and then moving on.

17   Enormous amounts of time were wasted by Mattel's counsel's continual habit of

18   rephrasing the witnesses' answer and then asking the same question again.[6]

19   Unfortunately, this kind of wasted opportunity is not limited to Ms. Leahy's

20   deposition.

21        In addition, Mattel's effort to further depose Ms. Leahy after discovery cut-off is

22   unreasonably cumulative and duplicative and Mattel has had ample opportunity to

23

24   _____

     [3] Dowell Decl., Exh. 4 at 36 [p.11:2-15].

25   [4] See., e.g., id. at 47 [p.56:1-5].  In fact, Mattel's counsel did not begin questioning Ms.

26   Leahy with respect to Bratz until approximately page 98 of 311 of the deposition
     transcript.  See id. at 58 [p. 98].

27   [5] Id. at 40 [p. 27:5-21].

28   [6] Id. at 36 [pp. 11:20-13:8].

OPPOSITION TO MOTION

obtain all of the information that it seeks.  Mattel served numerous requests for admissions on MGA and Mr. Bryant regarding the creation history of Bratz.[7]  Mattel also took numerous Rule 30(b)(6) depositions of MGA on the topics that it claims it needs to question Ms. Leahy further about.[8]  Ms. Leahy's production of over 600 pages of documents,[9] her testimony for over seven hours at the deposition[10] and as a witness at trial are sufficient.

Finally, to the extent that Mattel believes that there are questions that it still needs to ask Ms. Leahy, it can do so at trial.  At the end of her deposition, Mattel served Ms. Leahy with a trial subpoena.  Ms. Leahy lives within the subpoena power of this Court and will be a witness at trial.  Mattel will, therefore, not be prejudiced if it is not allowed additional deposition time with Ms. Leahy.  The only person that would be prejudiced if such time were ordered would be Ms. Leahy, a non-party witness who does not work for MGA.

The bottom line is that Mattel's counsel decided what he wanted to cover in the deposition and what he did not.  Mattel's counsel now complains that there are areas that he was not able to cover.  Depositions, like life, are all about making choices and then living with the consequences of those decisions.

## II.   STATEMENT OF FACTS

Unfortunately, in its failed effort to establish good cause to depose Ms. Leahy for more than the statutorily allowed seven hours, Mattel has chosen to misrepresent the record.

---

[7] Mattel served at least 745 requests for admissions on MGA and on Mr. Bryant regarding the creation history of Bratz.

[8] Dowell Decl., Exh. 5.

[9] Dowell Decl., Exh. 19.

[10] Ms. Leahy's deposition spanned from 10:15 a.m. to 8:00 p.m., including 1½ hours for lunch and several short breaks.  See Dowell Decl., Exh. 4.

Mattel's first misrepresentation is with respect to Ms. Leahy's planner. The simple truth is Ms. Leahy produced copies of her day planner with redactions and counsel for Ms. Leahy and Ms. Wines, counsel for Mattel, met-and-conferred with respect to Mattel's contention that the planner was improperly redacted. The result of that meet-and-confer was that Ms. Leahy agreed to allow an attorney from Mattel to review the entire un-redacted day planner and to request the production of any portions of the day planner that Mattel believed was relevant to this case. A Mattel attorney conducted the in-person review of the planner and requested the production of certain additional portions of the planner. Every single portion[11] of the day planner that counsel for Mattel requested be produced was in fact produced. This issue was, therefore, resolved.[12] However, Ms. Wines left Quinn Emanuel and several weeks later,[13] a different attorney at Quinn Emanuel decided not to be bound by the resolution reached by Ms. Wines and instead demanded that the entire planner be produced.[14] Counsel for Ms. Leahy explained that there was already been a meet-and-confer regarding this issue and that Mattel had already agreed that this issue had been resolved. In addition, counsel for Ms. Leahy also explained that the planner further contained information with respect to work that Ms. Leahy had done for competitors to Mattel, that this work was subject to confidentiality agreements and that some of this work was for projects that had not been released to the public. Counsel for Ms. Leahy was clear that he would not be producing the un-redacted day planner and that this dispute had been fully resolved.[15] Mattel chose not to bring a motion to compel. Prior to Ms. Leahy's deposition, Mattel served Ms. Leahy with a subpoena demanding that

---

[11] Save for one page, which counsel for Ms. Leahy explained was nothing more than notes regarding the balancing of Ms. Leahy's checkbook. Mattel agreed and did not further request the production of this page. Dowell Decl., Exh. 6.

[12] Dowell Decl., Exh. 7 at 183-84 [pp. 17:15-25, 18:1-12].

[13] Dowell Decl., Exh. 8.

[14] Dowell Decl., Exh. 9.

[15] Dowell Decl., Exh. 10.

OPPOSITION TO MOTION

she bring numerous three-dimensional objects to her deposition.  In her written responses, Ms. Leahy agreed to bring all of the requested objects to the deposition, but clearly stated that she would bring the original planner with Post-its covering the portions that had been redacted and this is what she did.[16]  A little over half way into the deposition, Ms. Leahy agreed that Mattel could copy the entire planner, which counsel for Mattel did.[17]  Mattel, therefore, had several hours to ask Ms. Leahy anything it wanted to about the planner.  Conspicuously absent from Mattel's motion is any allegation that there are any redacted portions of the planner that they did not question Ms. Leahy about during the deposition that they believe they needed to.  The only thing that they point to is a reference to Mr. Soto, but it is undisputed that Ms. Leahy's conversations with Mr. Soto were exhaustively covered in the depositions.  In sum, Ms. Leahy's planner does not justify a further deposition of Ms. Leahy because pursuant to a meet-and-confer, all relevant portions of the planner were produced well before the depositions and Mattel has failed to justify the need for Ms. Leahy to testify about any of the redacted portions of the planner that were produced to Mattel during the deposition.

Mattel's misstatements continue as follows: Ms. Leahy canceled her deposition "as the promised date approached,"[18] "when the agreed time-range approached, Leahy failed to appear,"[19] and "[o]nly after Mattel was forced to move ex parte to compel her deposition did Mr. McFarland represent to the Court that Ms. Leahy would actually appear for deposition on December 12, 2007."[20]  The truth is that Ms. Leahy <u>never</u> failed to appear for her deposition, she never cancelled her deposition and it is

---

[16] Dowell Decl., Exh. 11.

[17] See Dowell Decl., Exh. 4 at 77 [p.175].

[18] Motion to Compel at 7.

[19] <u>Id</u>.

[20] <u>Id</u>. at 8.

undisputed that she appeared for her deposition on the date that counsel for Ms. Leahy stated that she would appear.[21]

Mattel's statement that Ms. Leahy produced "175 pages of documents consisting of unidentified photographs of doll casts, molds and sculpts of a variety of products, including Bratz and Prayer Angels,"[22] is incomplete and misleading.  As part of Ms. Leahy's document production, she produced numerous three-dimensional objects. Mattel reviewed all of these items and photographed them.  Counsel for Ms. Leahy requested copies of these photographs but Mattel refused to produce them.[23]  Because the original three-dimensional objects did not have Bates control numbers, counsel for Ms. Leahy was concerned that the deposition might be confusing and wanted to help make sure the record was clear.  Therefore, counsel for Ms. Leahy volunteered to take photographs at their own expense of all of the three-dimensional objects that had already been produced and to apply Bates numbers to each of those photographs. Counsel for Ms. Leahy suggested this approach to counsel for Mattel and he agreed.[24]

---

[21] It is a matter of public record that Ms. Leahy as well as two other non-party witnesses, Elise Cloonan and Veronica Marlow, not only agreed to appear for their depositions before the filing of Mattel's Ex Parte Application to (1) Compel Depositions of Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow or (2) in the Alternative, Modify the Scheduling Order ("Ex Parte Application re Deposition Dates"), but in fact provided Mattel with the following deposition dates: December 12, 2007 for Ms. Leahy, December 14, 2007 for Ms. Cloonan and January 9, 2008 for Ms. Marlow.  Dowell Decl., Exh. 12.  Not satisfied with these dates, Mattel filed its Ex Parte Application re Deposition Dates, requesting the depositions of the Non-Party Witnesses be taken on or before December 7, 2007.  Dowell Decl., Exh. 13.  At the hearing, Mattel's counsel essentially backed away from its request that the deposition dates be moved up for Ms. Leahy and Ms. Marlow.  The Court accepted counsel's representation that Ms. Leahy would appear for her deposition on December 12, 2007, and as counsel informed the Court at the hearing held on January 7, 2008, Ms. Leahy as well as the other two non-party witnesses did in fact appear for their depositions on the agreed to dates.  Dowell Decl., Exh. 14.

[22] Motion to Compel at 15.

[23] Dowell Decl., Exh. 15.

[24] Dowell Decl., Exh. 16.

OPPOSITION TO MOTION

These photographs are the "unidentified photographs" that Mattel refers to in its Motion to Compel.  Moreover, in a further effort to make the deposition as efficient as possible, counsel for Ms. Leahy went well beyond what was required to respond to the subpoena served by Mattel and organized and brought to the deposition separate redwells each of which contained a three-dimensional object and the corresponding photograph of the object that had a Bates number.[25]  In fact, these photographs with Bates numbers were used by Mattel at Ms. Leahy's deposition and were introduced as exhibits.[26]

Mattel's misrepresentations with respect to the facts continue with false claims that Ms. Leahy's counsel instructed her not to answer the following questions: "Have you spoken with anyone at Mattel about any lawsuit or litigation with MGA or Carter Bryant?" and "Have you ever told anyone else any other reason you left Mattel?"  With respect to the first question, because Ms. Leahy's husband is an employee of Mattel, Ms. Leahy's counsel instructed not to disclose conversations with her husband.  The actual testimony is as follows:

> Mattel's counsel:  "Have you ever spoken with anyone at Mattel about any lawsuit or litigation with MGA or Carter Bryant?" and "Have you ever told anyone else any other reason you left Mattel?"
>
> Ms. Leahy's counsel:  "Objection. I'll just instruct the witness not to talk about your conversations with your husband."
>
> The Witness:  "No."
>
> Mattel's counsel:  "Have you excluding anything from your answer based on the instruction?"
>
> Ms. Leahy's counsel:  "Would you repeat the question?"

---

[25] Dowell Decl., ¶ 17.
[26] Id.

Mattel's counsel:  "Are you excluding anything from your answer that you haven't spoken with anyone at Mattel about any litigation with or lawsuit with M.G.A. or Carter Bryant based on the instruction that [Ms. Leahy's counsel] gave you?"

The Witness:  "Other than my husband?"

Mattel's counsel:  "Right."

The Witness:  "No, I have not."

Regarding the second quote, the actual testimony is as follows:

Mattel's counsel:  "Other than the explanation that you just gave me, have you ever told anyone else any other reason why you left Mattel?"

Ms. Leahy's counsel:  "I'm just objecting and caution the witness never to talk about conversations with counsel or conversations with your husband, which are privileged."

The Witness:  "Can you ask the question again?"

Mattel's counsel:  "Sure.  You mentioned that the reason that you left Mattel was to be home with the daughter you just adopted at that time and for no other reason.  So my question is, did you ever say or put down in writing that you communicated to someone else any other reason why you left Mattel?"

The Witness:  "No.  It was a tough decision.  I hated to leave, but my daughter was more important."

Mattel's distortion of the record continues throughout its Motion.  For example, Mattel complains that "counsel for MGA constantly interrupted Mattel's questioning of Ms. Leahy by demanding that in-house counsel for MGA be brought into the deposition and requesting that questions be re-read for him or demanding that in-house counsel for Mattel be removed from the deposition."[27]  This conveniently overlooks

---

[27] Motion to Compel at 16.

the fact that the Protective Order herein allows any parties to exclude an adversary's in-house counsel from "Attorney's Eyes Only" ("AEO") portions of a deposition.

Mattel's counsel, moreover, seems to have forgotten that it insisted that MGA's in-house counsel leave the room on several occasions.[28] Mattel could not have reasonably expected that adherence to the Protective Order would be one-sided only, or that MGA's in-house counsel not be invited back when the AEO questioning was completed. Moreover, as the party in control of the questioning, Mattel's counsel could have easily grouped together questions regarding AEO topics, rather than going back and forth, and thereby have minimized even these trivial delays.

Mattel's argument that Ms. Leahy's, MGA's, and Mr. Bryant's counsel hindered the deposition by taking frequent breaks is similarly meritless. Aside from the obvious fact that break time does not count against the seven-hour allotment, Mattel's purported concern over breaks is belied by the fact that counsel for Mattel did not offer to provide lunch or break rooms, thus ensuring that any breaks taken would be longer and more inefficient than necessary.[29]

As for Mattel's grievance that Ms. Leahy's counsel raised improper objections, and that Ms. Leahy (the deponent) asked for questions to be repeated or rephrased,[30] the record demonstrates that the instances cited by Mattel were in response to improper or confusing questions.[31]

---

[28] See, e.g., Dowell Decl., Exh. 4 at 36 [p. 10] (explaining that in-house counsel for MGA was being asked to leave pursuant to the Protective Order), 58 [p. 98] and 79 [p. 184].

[29] At a number of depositions at Skadden, taken by MGA, both break rooms and lunch were provided.

[30] Motion to Compel at 16.

[31] See, e.g., Dowell Decl., Exh. 4 at 59 [pp. 102-04] (asking Ms. Leahy about her understanding, while at Mattel, as to how long it took to sculpt a fashion doll, after she had testified that she had never sculpted a fashion doll body), 64 [pp. 124-25] (misstating Ms. Leahy's testimony in the form of a statement rather than a question), 67 [pp. 136-37] (misstating Leahy's testimony and confusingly using the term "later"

1    In other instances, where Mattel characterizes Ms. Leahy's counsel's objections

2    as improper,[32] the record demonstrates that it was the questions themselves that were

3    improper and justified an objection.[33]

4    Mattel's counsel's use of the phrase "substantially similar" is particularly

5    troubling.  Obviously, said counsel knew that that is a legal term of art taken from

6    copyright law.  Counsel nevertheless proceeded ahead with the "trick" questions—

7    including a last-ditch effort at 8:00 p.m., after the long day of deposition, hoping for a

8    response that could be used as a "sound-bite" to try to mislead he jury.  Certainly, in

9    light of carefully-planned questions such as these, Ms. Leahy's counsel had no choice

10    but to "protect the record," with appropriate objections.

11    That Mattel levels its baseless accusations against not only Ms. Leahy's

12    counsel, but against MGA's and Mr. Bryant's counsel as well, is also revealing.

13    Counsel for MGA and Mr. Bryant said practically nothing during the entire

14    direct examination, even though counsel for Mattel refused to yield any of the

15

16

17    interchangeably to refer to the names "Grrlz" and "Bratz"), 99 [p. 264] (trying to get

18    Ms. Leahy to authenticate a document without directly asking her to do so), 100-01

19    [pp. 269-70] (using the vague term "aesthetic appearance" in connection with both the

19    face and the head of a sculpt), 103 [pp. 279-80] (misstating Ms. Leahy's testimony and

20    misconstruing the term "casting") and 108 [pp. 300-01] (pointing to an unmarked

21    exhibit and asking Ms. Leahy to identify it as something that was used in dolls sold at

21    retail, a subject about which Ms. Leahy had no knowledge).

22    [32] See, e.g., Motion to Compel at 17-38.

23    [33] See, e.g., Dowell Decl., Exh. 4 at 72 [p. 157] (asking Leahy for a narrative in

23    response to "What happened next?"), 102 [p. 275] (asking Leahy to opine on

24    "substantially same" or "substantially different," invoking a copyright term of art and

24    calling for an expert opinion that Leahy is not competent to provide), 106 [p. 292]

25    (again, asking Leahy to opine on "substantially similar," with the same defects), 11:20-

26    13:8 (asking variations of the same question four times), 50-52 [pp. 67-74] (asking

26    variations of the same question no fewer than twelve times), 101-02 [pp. 272-74]

27    (asking variations of the same question four times) and 109-10 [pp. 304-07] (asking

28    variations of the same question five times).

OPPOSITION TO MOTION

full seven hours to MGA's or Mr. Bryant's counsel.[34]  Whereas it would have been well within their rights to make independent objections throughout the deposition, counsel for MGA and Mr. Bryant specifically stipulated to join the objections made by counsel for Ms. Leahy in order to save time, as a courtesy to Mattel.[35]

## III.   ARGUMENT

### A.   Mattel Has Not Satisfied The Requisite Standard For Additional Deposition Testimony.

Unless otherwise ordered by the Court or stipulated by the parties, "a deposition is limited to one day of seven hours."  Fed. R. Civ. P. 30(d)(2).  To depose any person for more than seven hours the party seeking a court order must "show good cause to justify such an order."  Cardenas v. Prudential Ins. Co. of Am., 2003 WL 21302960, at *2 (D. Minn. 2003) (citing Fed. R. Civ. P. 30(d) advisory committee notes).  In analyzing good cause with respect to

> [W]hether a deposition should be longer than seven hours, the court should begin with the presumption that the seven-hour limit was carefully chosen and that extensions of that limit should be the exception of the rule.  Automatic extensions eviscerate the rule.  Moreover, the seven-hour limit encourages efficiency; it has been said that a writer's best friends are a deadline and a page limitation.  The same may be said of lawyers conducting depositions.

Roberson v. Bair, 242 F.R.D. 130, 139 (D.D.C. 2007).  In addition to good cause, Mattel must also show that the extra time is "needed for a fair examination of the deponent."  Fed. R. Civ. P. 30(d)(2).  This requires Mattel to satisfy the standards set forth in Rule 26(b)(2), which directs the court to deny leave for additional deposition if

---

[34] See id. at 106 [p. 291].
[35] See id. at 36 [p. 11].

OPPOSITION TO MOTION

"(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking the discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C); see Fed. R. Civ. P. 26(b)(1) ("All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).").[36]

### 1.   Mattel Has Not Shown Good Cause To Justify An Order For Additional Deposition Testimony.

Mattel argues that it has established good cause to depose Ms. Leahy for an additional nine hours because she is a "key percipient witness" and because Mattel's counsel did not have sufficient time to ask all of the questions he would like.  The simple fact is that counsel for Mattel questioned Ms. Leahy with respect to all of the "facts" set forth on pages 11-14 of Mattel's Motion to Compel under the heading "Ms. Leahy Is A Key Percipient Witness."[37]  Therefore, these "facts" cannot satisfy Mattel's burden of establishing good cause to be allowed to depose Ms. Leahy for nine more hours.  Mattel further claims that there are topics that it was unable to question Ms.

---

[36] See also In re Sealed Case (Medical Records), 381 F.3d 1205, 1215 (D.C. Cir. 2004) (citing the Advisory Committee's notes to Rule 26 and finding that "the last sentence of Rule 26(b)(1) was added in 2000 'to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery'").

[37] Dowell Decl., Exh. 4 at 100 [p. 269:12-16], 102 [p. 275:2-10] (Ms. Leahy helped to create the appearance of Bratz), 71 [pp. 151-52] (origins of Bratz), 65 [p. 129:9-25] (Bryant's involvement with MGA), 86 [p. 211:10-16] (type of work Bryant engaged in while at MGA), 73-74 [pp. 161:5-164:20], 100-01 [pp. 269-70] (identification of Ms. Leahy as sculptor of Bratz), 41 [p. 30] et seq., 45 [p. 49] et seq., 74 [p. 165] et seq. (different doll projects Ms. Leahy worked on at Mattel) and 107 [pp. 295-96] (subject of Bratz dolls at the Hong Kong Fair).

OPPOSITION TO MOTION

Leahy about including Ms. Leahy's "use of Mattel resources on Bratz, payments Leahy received from MGA, her work on Prayer Angels, and her work on later 'generations' of Bratz dolls that form the basis of MGA's own claims," because it was not afforded sufficient time for the deposition.  As an initial matter, Mattel's counsel did question Ms. Leahy thoroughly with respect to whether she used any Mattel resources with respect to Bratz[38] and about her work on Prayer Angels.[39]  With respect to the payments Ms. Leahy received from MGA[40] and Ms. Leahy's work on "later 'generations' of Bratz dolls," to the extent that Mattel's counsel was unable to question Ms. Leahy regarding these topics, the fault lies with Mattel's counsel's poor choices and his abusive discovery style.  Documents showing all such payments were produced well prior to Ms. Leahy's deposition and total only approximately 200 pages.[41]  With a de minimis increase in efficiency of the deposition, Mattel's counsel could have questioned Ms. Leahy about this small number of documents.  In addition, Ms. Leahy is willing to stipulate to the authenticity of all of these referenced documents.  With respect to the tangible items, Mattel's counsel decided to not even start questioning Ms. Leahy about these items until near the very end of the deposition.[42]  With respect to the authenticity of the items that Ms. Leahy brought to the deposition, Ms. Leahy is willing to stipulate to the authenticity of all such items.

As the <u>Roberson</u> court stated, the seven hour limit encourages efficiency.  Unjustifiably, Mattel's counsel was anything but efficient.  He chose to spend over three hours questioning Ms. Leahy about her prior Mattel employment history.  He also continually asked Ms. Leahy the same question over and over again.[43]  These were his

---

[38] <u>See</u> <u>id</u>. at 80-81 [pp. 189-90].

[39] <u>See</u> <u>id</u>. at 74 [p. 165] et seq.

[40] He did question her about payments in general.

[41] Dowell Decl., Exh. 18.

[42] <u>See</u> Dowell Decl., Exh. 4 at 285.

[43] <u>See</u> <u>id</u>. at 36 [pp. 11:20-13:8] (asking variations of the same question four times), 50-52 [pp. 67-74] (asking variations of the same question no fewer than twelve times),

1  choices, but they are not without consequences.  There is no doubt that Mattel's

2  counsel could have asked Ms. Leahy about all of the topics in Mattel's Motion to

3  Compel and the tangible items if he had not wasted over three hours on her Mattel

4  employment history, let alone the time he wasted with his constant badgering of the

5  witness.

6        **2.    Mattel Has Not Satisfied The Standards Set**

7            **Forth In Fed. R. Civ. P. 26(b)(2).**

8        In addition to good cause, Mattel must also show that the additional deposition

9  time is warranted under Rule 26(b)(2)(C).  Such extraordinary relief will be denied

10  unless Mattel can satisfy the three prongs of subsection (C).  As your Honor has

11  recognized, "[t]hese restrictions are particularly important to consider where the

12  discovery requests are directed at a non-party.  See Moon v. SCP Pool Corp., 232

13  F.R.D. 633, 638 (C.D. Cal. 2005) (citing Dart Indus. Co., Inc. v. Westwood Chem. Co.,

14  Inc., 649 F.2d 649 (9th Cir. 1980) (discovery should be 'more limited to protect third

15  parties from harassment, inconvenience, or disclosure of confidential information.')."[44]

16  The Ninth Circuit has also held that "when a nonparty is the target of discovery," these

17  necessary restrictions must be imposed to protect them "from harassment,

18  inconvenience, or disclosure of confidential documents."  Dart Indus., 649 F.2d at

19  649.[45]  Other courts, including the First Circuit has adopted this standard as well:

20

21  101-02 [pp. 272-74] (asking variations of the same question four times) and 109-10
   [pp. 304-07] (asking variations of the same question five times).

22  [44] Dowell Decl., Exh. 17 at 267 [p. 11].

23  [45] Taking this one step further, the court also observed that "the more appropriate

24  nomenclature is 'nonparty' discovery, not 'third-party' discovery, as the word nonparty
   serves as a constant reminder of the reasons for the limitations that characterize 'third-

25  party' discovery."  Id. at 649 (citation omitted); see Gonzales v. Google, Inc., 234

26  F.R.D. 674, 680 (N.D. Cal. 2006) ("Underlying the protections of Rule 45 is the
   recognition that the word 'non-party' serves as a constant reminder of the reasons for

27  the limitations that characterize 'third-party' discovery.") (citing Dart Indus.); Del

28  Campo v. Kennedy, 236 F.R.D. 454, 458 (N.D. Cal. 2006) (same).

1    It is also noteworthy that the respondents are strangers to the …

2    litigation; insofar as the record reflects, they have no dog in that fight.

3    Although discovery is by definition invasive, parties to a law suit must

4    accept its travails as a natural concomitant of modern civil litigation.

5    Non-parties have a different set of expectations.  Accordingly, concern

6    for the unwanted burden thrust upon non-parties is a factor entitled to

7    special weight in evaluating the balance of competing needs.

8   Cusumano v. Microsoft Corp., 762 F.3d 708, 717 (1st Cir. 1998) (citations omitted). [46]

9   "The rule is thus well established that nonparties to litigation enjoy greater protection

10  from discovery than normal parties."  Laxalt, 116 F.R.D. at 458.

11         Under the first prong of Rule 26(b)(2)(C), Mattel must show that the discovery

12  sought was not unreasonably cumulative and duplicative, and that it cannot be obtained

13  from some other source that is more convenient, less burdensome and less expensive.

14  See Fed. R. Civ. P. 26(b)(2)(C)(i). [47]   Given the voluminous requests that Mattel has

---

[46] See Bausch & Lomb, Inc. v. Coopervision, Inc., 2006 WL 901687, at *2 (N.D. Ga. 2006) (company's "status as a non-party further supports the need to protect its confidential information"); Tetratec Corp. v. E.I. DuPont De Nemours & Co., Inc., 1992 WL 202169, at *1 (E.D. Pa. 1992) ("When ruling on discovery motions, courts have held that non-parties are entitled to greater protections than parties."); Bio-Vita, Ltd. v. Biopure Corp., 138 F.R.D. 13, 17 (D. Mass. 1991) ("The case law provides nonparties … significant protection from … intrusive discovery."); Laxalt v. McClatchy, 116 F.R.D. 455, 457 (D. Nev. 1986) ("[T]he extremely broad interpretation given Rule 26(b) in the regard to party discovery … [is construed] more narrowly when it is applied to non-parties."); Collins & Aikman Corp. v. J.P. Stevens & Co., 51 F.R.D. 219, 221 (D.S.C. 1971) (non-parties are "entitled to considerable protection from the court to prevent needless compromise and injury to it"); see also Rule 45(c)(1) ("A party or an attorney … shall take reasonable steps to avoid imposing undue burden or expense" on a non-party."); Mattel, Inc. v. Walking Mountain Prods., Inc., 353 F.3d 792, 814 (9th Cir. 2003) (recognizing "the intended protections" of Rule 45.

[47] The following Rule 30(b)(6) deposition topics address the development of the Bratz dolls: Mattel's Notice of Deposition of MGA Entertainment, Inc., dated February 16, 2005, topic 2; Mattel's Notice of Deposition of MGA Entertainment (HK) Limited,

---

OPPOSITION TO MOTION

made with regards to these topics, and considering that Ms. Leahy is not a party to this action, any additional deposition questioning is cumulative and duplicative.

The second prong of Rule 26(b)(2)(C)  requires Mattel to demonstrate that it has lacked ample opportunity to obtain the information it seeks by discovery in the action. See Fed. R. Civ. P. 26(b)(2)(C)(ii).  Mattel fails on this prong as well.  Ms. Leahy's relationship to Mr. Bryant and to Bratz was disclosed in 2004, she has fully complied with all of her discovery obligations and she was available for over seven hours of deposition questioning.  Thus, the term "ample" severely understates Mattel's opportunity to obtain the information it now seeks, especially in light of Ms. Leahy's non-party status.

Finally, Mattel's motion must be denied if the burden or expense of the proposed discovery on Ms. Leahy outweighs the likely benefit to Mattel.  See Fed. R. Civ. P. 26(b)(2)(C)(iii).  "[I]n addressing the burdens of proposed depositions, it is permissible for a court to consider the fact that the targets of the proposed discovery are nonparties….  Under the authorities, this factor is significant in determining whether compliance with a discovery demand is an undue burden."  Jones v. McMahon, 2007 WL 2027910, at *16 (N.D.N.Y. 2007) (citations omitted).[48]  Under this analysis, it has

---

dated June 4, 2007, topic 19; Mattel's Fourth Notice of Deposition of MGA Entertainment, Inc., dated January 9, 2008, topics 7-10; Mattel's Second Notice of Deposition of MGA Entertainment, Inc., dated February 1, 2008, topics 1-8, 11, 13 and 14.  Dowell Decl., Exh. 5.

[48] See also Katz v. Batvia Marine & Sporting Supplies, 984 F.2d 422, 424 (Fed. Cir. 1993) ("Although Rule 26(b) applies equally to discovery of nonparties, the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances."); Dow Chem. Co. v. Allen, 672 F.2d 1262, 1277 (7th Cir. 1982) ("[A] a court may properly give account to the third-party status of those from whom production is sought in determining whether compliance would constitute an undue burden."); S.E.C. v. Seahawk Deep Ocean Tech., Inc., 166 F.R.D. 268, 269 (D. Conn. 1996) ("The court may consider a movant's status when weighing the burdens imposed…."); Solarex Corp. v. Arco Solar, Inc., 121 F.R.D. 163, 179 (E.D.N.Y. 1988) ("Of significance … in balancing the competing hardships, is the Society's status as a

OPPOSITION TO MOTION

been held that "[t]he most obvious burden is borne by the non-party witness, and we are instructed to be particularly sensitive to any prejudice to non-litigants drawn against their will into the legal disputes of others." Jack Frost Lab., Inc. v. Physicians & Nurses Mfg. Corp., 1994 WL 9690, at *2 (S.D.N.Y. 1994).

In this case, the burden of requiring Ms. Leahy to sit for nine additional hours of deposition far outweighs any likely benefit to Mattel. Ms. Leahy, who is not an employee of MGA, would be required to take off work (probably two days), which would be in addition to the time she already took off for her deposition and the time she will have to take off for the trial. In contrast, the likely benefit to Mattel of this additional discovery is de minimis, if not non-existent. As set forth above, Mattel has conducted scorched earth litigation with respect to the creation history of Bratz. They have also asked and had the opportunity to ask Ms. Leahy everything that she knows about all of the subjects relevant to this case. Moreover, because Mattel has already served Ms. Leahy with a trial subpoena and because she lives within this Court's jurisdiction, she will be a witness at trial. Mattel will not be prejudiced if Ms. Leahy is not ordered to be deposed for an additional nine hours because if Mattel's counsel believes that there are additional questions that he needs to ask Ms. Leahy, he can ask her at trial. See, e.g., Richie v. U.S., 451 F.3d 1019, 1026 (9th Cir. 2006) (observing district court's conclusion that plaintiff "would not, ultimately, be prejudiced by [defendant]'s misconduct because at trial, plaintiff's counsel will have the opportunity to ask … follow-up questions…."). Moreover, the Court must realize that "[a]t some point in time, the discovery phase of a case must end and the case must proceed to trial." Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos, 1994 WL 167952, at *2 (S.D.N.Y. 1994). The discovery cut-off has passed—there needs to be

---

nonparty to this litigation. Under the authorities, this factor is significant in determining whether compliance with a discovery demand would constitute an undue burden.").

OPPOSITION TO MOTION

an end to fact discovery so that the parties and non-parties can move on with trial preparation and expert discovery.  Mattel's Motion to Compel should be denied because the burden on Ms. Leahy outweighs any benefit to Mattel.

Because Mattel cannot justify an extension of Ms. Leahy's deposition, the Court should deny its Motion to Compel.

**B.    Ms. Leahy's Counsel's Instructions Not to Answer Were Proper and Have Not Precluded Mattel From Obtaining Relevant Information**

Mattel's Motion to Overrule Instructions Not to Answer should be denied because Mattel is asking the court to compel Ms. Leahy to provide information that she was properly instructed during the deposition not to provide, and that in any event Mattel has already obtained elsewhere in the deposition and can do so again with a simple representation from Leahy's counsel.

To begin with, the instructions at issue in Mattel's Motion[49] are appropriate on their face.  In one instance, Mattel's counsel specifically asked Ms. Leahy whether her lawyer told her to preserve documents pertaining to the lawsuit.[50]  That this question called for the substance of an attorney-client communication cannot be disputed.  It was therefore entirely proper for Ms. Leahy's counsel to instruct her not to answer. See McKay v. C.I.R., 886 F.2d 1237, 1238 (9th Cir. 1989) ("The privilege forbids testimony that 'would in any way convey the substance of confidential professional communications between [a client] and his attorney.'") (citing In re Osterhoudt, 722 F.2d 591, 594 (9th Cir. 1983) (per curiam).  Indeed, a failure to so instruct may well have resulted in a possible waiver of the attorney-client privilege, see 3 Weinstein's Federal Evidence § 503.43, and no doubt Mattel would have so contended.  With regard to Mattel's counsel's follow-up question regarding whether Ms. Leahy had an

---

[49] Motion to Compel at 40-42.
[50] Motion to Compel at 41; See Dowell Decl., Exh. 4 at 97 [p. 255].

OPPOSITION TO MOTION

understanding of her obligation to preserve documents, she was only instructed not to answer to the extent that her answer would reveal the substance of an attorney-client communication.[51]   Again, this was a proper instruction, the absence of which might have been construed as a waiver.[52]

Here again, Mattel has raised a trivial issue.  As the record shows, Ms. Leahy produced a significant volume of highly relevant documents, including sculpts, molds, and even a comprehensive personal diary, and Mattel's Counsel questioned her extensively about a number of these items.[53]  If Mattel had any concern that Ms. Leahy had not produced specific documents or items, Mattel's counsel could have asked Ms. Leahy relevant follow-up questions.  He did not.  Furthermore, if Mattel were truly concerned about whether Leahy fulfilled her obligation to preserve and produce documents, it could have asked for a representation from Leahy's counsel to that effect.  It did not.

//

//

//

---

[51] See Motion to Compel at 41-42; Dowell Decl., Exh. 4 at 97 [pp. 255-56].

[52] Mattel's reliance on the previous Order Granting in Part Bryant's Motion to Overrule Instructions Not to Answer During the Deposition of Alan Kaye ("May 4 Kaye Order") is misplaced, because this issue is not the facts underlying the privileged communications, but rather Mr. Zeller's questions asked about what Ms. Leahy's counsel said to her – "Did Mr. McFarland or Mr. Contopolous or any other lawyer tell you that you should be preserving documents, or information that pertains to the lawsuit?"  Motion to Compel at 41.  This type of question goes to the heart of the attorney-client communications privilege.

[53] Dowell Decl., Exh. 4 at 75 [p. 168], 100 [pp. 266-67], 103-04 [pp. 281-83] and 105 [pp. 288-89].

**IV.    CONCLUSION**

For the foregoing reasons, non-party Leahy respectfully requests that the Court deny Mattel's Motion to Compel.

Dated:  February 12, 2008                    KEATS MCFARLAND & WILSON LLP


                                             /s/
                                             Christian Dowell, Esq.
                                             Attorneys for Non-Party Margaret Hatch-Leahy

OPPOSITION TO MOTION

# TABLE OF CONTENTS

<u>Page</u>

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF FACTS ..................................................................... 3

III.  ARGUMENT ....................................................................................... 11

   A.   Mattel Has Not Satisfied The Requisite Standard For Additional
        Deposition Testimony. ................................................................. 11

        1.   Mattel Has Not Shown Good Cause To Justify An Order For
             Additional Deposition Testimony. ..................................... 12

        2.   Mattel Has Not Satisfied The Standards Set Forth In Fed. R.
             Civ. P. 26(b)(2). ............................................................... 14

   B.   Ms. Leahy's Counsel's Instructions Not to Answer Were Proper
        and Have Not Precluded Mattel From Obtaining Relevant
        Information ................................................................................. 18

IV.   CONCLUSION ................................................................................... 20

1

## TABLE OF AUTHORITIES

Page (s)

## Cases

Bausch & Lomb, Inc. v. Coopervision, Inc., 2006 WL 901687 (N.D. Ga. 2006).........16

Bio-Vita, Ltd. v. Biopure Corp., 138 F.R.D. 13 (D. Mass. 1991) .................................16

Cardenas v. Prudential Ins. Co. of Am., 2003 WL 21302960 (D. Minn. 2003) ...........11

Collins & Aikman Corp. v. J.P. Stevens & Co., 51 F.R.D. 219 (D.S.C. 1971) ...........16

Cusumano v. Microsoft Corp., 762 F.3d 708 (1st Cir. 1998)........................................15

Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc., 649 F.2d 649 (9th Cir. 1980) 14, 15

Del Campo v. Kennedy, 236 F.R.D. 454 (N.D. Cal. 2006)...........................................15

Dow Chem. Co. v. Allen, 672 F.2d 1262 (7th Cir. 1982) .............................................18

Gonzales v. Google, Inc., 234 F.R.D. 674 (N.D. Cal. 2006)........................................15

In re Osterhoudt, 722 F.2d 591 (9th Cir. 1983) ...........................................................20

In re Sealed Case (Medical Records), 381 F.3d 1205 (D.C. Cir. 2004).......................12

Jack Frost Lab., Inc. v. Physicians & Nurses Mfg. Corp., 1994 WL 9690 (S.D.N.Y. 1994) .......................................................................................................................18

Jones v. McMahon, 2007 WL 2027910 (N.D.N.Y. 2007) ...........................................17

Katz v. Batvia Marine & Sporting Supplies, 984 F.2d 422 (Fed. Cir. 1993)...............18

Laxalt v. McClatchy, 116 F.R.D. 455 (D. Nev. 1986) .................................................16

Mattel, Inc. v. Walking Mountain Prods., Inc., 353 F.3d 792 (9th Cir. 2003).............16

McKay v. C.I.R., 886 F.2d 1237 (9th Cir. 1989)...........................................................20

Moon v. SCP Pool Corp., 232 F.R.D. 633, 638 (C.D. Cal. 2005)...............................14

Richie v. U.S., 451 F.3d 1019 (9th Cir. 2006)..............................................................19

Roberson v. Bair, 242 F.R.D. 130 (D.D.C. 2007) .......................................................11

S.E.C. v. Seahawk Deep Ocean Tech., Inc., 166 F.R.D. 268 (D. Conn. 1996)............18

Solarex Corp. v. Arco Solar, Inc., 121 F.R.D. 163 (E.D.N.Y. 1988)..........................18

Tetratec Corp. v. E.I. DuPont De Nemours & Co., Inc.,

    1992 WL 202169 (E.D. Pa. 1992) ...................................................................... 16

Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos, 1994 WL 167952

    (S.D.N.Y. 1994) ............................................................................................... 19

**Other Authorities**

Weinstein's Federal Evidence § 503.43 ...................................................................... 18

**Rules**

Fed. R. Civ. P. 26 .................................................................................. 12, 14, 16, 17, 18

Fed. R. Civ. P. 30 ........................................................................................ 2, 3, 11, 12, 17

Rule 45 ........................................................................................................................ 15, 16

OPPOSITION TO MOTION