1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 1**

**EXHIBIT TO**:   DECLARATION OF CHRISTIAN DOWELL IN SUPPORT OF NON-PARTY MARGARET HATCH-LEAHY'S  OPPOSITION TO MATTEL'S MOTION TO COMPEL ADDITIONAL DEPOSITION TESTIMONY AND PRODUCTION OF DOCUMENTS

1     UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA

3      EASTERN DIVISION

4       - - -

5   HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6       - - -

7 CARTER BRYANT, ET. AL.,    )
              )

8       PLAINTIFFS, )
              )

9     VS.      ) NO. ED CV 04-09049
              ) (LEAD LOW NUMBER)

10 MATTEL, INC., ET. AL.,   )
              )

11      DEFENDANTS. ) EX-PARTE APPLICATIONS
              ) RE: DISCOVERY

12 AND CONSOLIDATED ACTIONS,  )
              )

13

14

15    REPORTER'S TRANSCRIPT OF PROCEEDINGS

16     RIVERSIDE, CALIFORNIA

17    MONDAY, FEBRUARY 4, 2008

18      10:15 A.M.

19

20

21

22

23    THERESA A. LANZA, RPR, CSR
    FEDERAL OFFICIAL COURT REPORTER

24    3470 12TH STREET, RM. 134
    RIVERSIDE, CALIFORNIA  92501

25     951-274-0844
    CSR11457@SBCGLOBAL.NET

Page 2

```
1   APPEARANCES:
2   ON BEHALF OF CARTER BRYANT:
3        KEKER & VAN NEST
         BY:  MICHAEL PAGE
4        710 SANSOME STREET
         SAN FRANCISCO, CALIFORNIA 94111-1704
5        415-391-5400
6
    ON BEHALF OF MATTEL:
7
         QUINN EMANUEL
8        BY:  JOHN QUINN
         BY:  JON COREY
9        865 S. FIGUEROA STREET,
         10TH FLOOR
10       LOS ANGELES, CALIFORNIA  90017
         213-624-7707
11
12  ON BEHALF OF MGA ENTERTAINMENT:
13       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
         BY:  THOMAS J. NOLAN
14       BY:  CARL ALAN ROTH
         BY:  ROBERT JAMES HERRINGTON
15       300 SOUTH GRAND AVENUE
         LOS ANGELES, CALIFORNIA  90071-3144
16       213-687-5000
17
    ON BEHALF OF GUSTAVO MACHADO:
18
         OVERLAND BORENSTEIN SCHEPER & KIM LLP
19       BY:  ALEXANDER H. COTE
         300 SOUTH GRAND AVENUE
20       SUITE 2750
         LOS ANGELES, CALIFORNIA  90071
21       213-613-4660
22
    ON BEHALF OF CLOONAN, MARLOW & LEAHY:
23
         KEATS MCFARLAND & WILSON LLP
24       BY:  LARRY W. MCFARLAND
         9720 WILSHIRE BOULEVARD
25       BEVERLY HILLS, CA  90212
         310-777-3750
```

Page 3

```
1   APPEARANCES CONTINUED:
2
    ON BEHALF OF NON-PARTY CHRISTENSEN GLASER:
3
         CHRISTENSEN, GLASER, FINK, JACOBS,
4          WEIL & SHAPIRO, LLP
         BY:  SCOTT E. GIZER
5        10250 CONSTELLATION BOULEVARD
         LOS ANGELES, CA  90067
6        310-553-3000
7
    ON BEHALF OF THIRD PARTIES ANA CABRERA & BEATRIZ MORALES:
8
         ALLRED, MAROKO & GOLDBERG
9        BY:  RAMIT MIZRAHI
         6300 WILSHIRE BOULEVARD,
10       SUITE 1500
         LOS ANGELES, CA  90048
11       323-653-6530
12
    ON BEHALF OF THIRD PARTY WITNESS GENTLE GIANT STUDIOS:
13
         BAUTE & TIDUS LLP
14       BY:  HENRY H. GONZALEZ
         777 S. FIGUEROA STREET,
15       SUITE 4900
         LOS ANGELES, CA  90017
16       213-630-5000
17
    ON BEHALF OF WACHOVIA:
18
         DAVIS POLK & WARDWELL
19       BY:  NEAL A. POTISCHMAN
         1600 EL CAMINO REAL
20       MENLO PARK, CA  94025
         650-752-2000
21
22  ON BEHALF OF KAMI GILMOR:
23       BUCHALTER NEMER
         BY:  JOHN PATRICK PETRULLO
24       1000 WILSHIRE BOULEVARD,
         SUITE 1500
25       LOS ANGELES, CA  90017-2457
         213-891-0700
```

Page 4

```
1                    I N D E X
2                                          PAGE
3   HEARING..........................   5
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
1    RIVERSIDE, CALIFORNIA; MONDAY, FEBRUARY 4, 2008; 10:15 A.M.
2                        -OOO-
3         THE CLERK:  CALLING CALENDAR ITEM NUMBER FIVE, IN THE
4    MATTER OF CARTER BRYANT VERSUS MATTEL, INC., AND ALSO RELATED
5    CONSOLIDATED ACTIONS, CASE NUMBER CV 04-9059.
6         MAY WE HAVE COUNSEL PLEASE STATE YOUR APPEARANCES.
7         MR. QUINN:  GOOD MORNING, YOUR HONOR.
8         JOHN QUINN, JON COREY FOR MATTEL.
9         THE COURT:  MR. QUINN, MR. COREY, GOOD MORNING.
10        MR. NOLAN:  GOOD MORNING, YOUR HONOR.
11        TOM NOLAN, CARL ROTH, AND ROB HERRINGTON ON BEHALF OF
12   THE MGA DEFENDANTS.
13        THE COURT:  GOOD MORNING, COUNSEL.
14        MR. COTE:  GOOD MORNING, YOUR HONOR.
15        ALEXANDER COTE ON BEHALF OF CARLOS GUSTAVO MACHADO.
16        THE COURT:  COUNSEL.
17        MR. MCFARLAND:  LARRY MCFARLAND ON BEHALF OF
18   NONPARTIES MS. CLOONAN, MS. LEAHY, AND MS. MARLOW.
19        THE COURT:  MR. MCFARLAND, GOOD MORNING.
20        MR. GIZER:  GOOD MORNING, YOUR HONOR.
21        SCOTT GIZER FROM CHRISTENSEN & GLASER ON BEHALF OF
22   NON-PARTY CHRISTENSEN & GLASER.
23        THE COURT:  GOOD MORNING.
24        MR. PAGE:  GOOD MORNING, YOUR HONOR.
25        MICHAEL PAGE ON BEHALF OF CARTER BRYANT.
```

FEBRUARY 4, 2008          ED CV 04-9059-SGL          EXHIBIT ___

PAGE ___ 5

Page 6

| | |
|---|---|
| 1 | THE COURT: MR. PAGE. |
| 2 | MS. MIZRAHI: GOOD MORNING, YOUR HONOR. |
| 3 | RAMIT MIZRAHI ON BEHALF OF NONPARTIES ANA CABRERA AND |
| 4 | BEATRIZ MORALES. |
| 5 | THE COURT: GOOD MORNING. |
| 6 | MR. GONZALEZ: GOOD MORNING, YOUR HONOR. |
| 7 | HENRY GONZALEZ ON BEHALF OF NONPARTY GENTLE GIANT |
| 8 | STUDIOS. |
| 9 | THE COURT: GOOD MORNING. |
| 10 | MR. POTISCHMAN: GOOD MORNING, YOUR HONOR. |
| 11 | NEIL POTISCHMAN FROM DAVIS, POLK & WARDWELL ON BEHALF |
| 12 | OF NONPARTY WACHOVIA CORPORATION. |
| 13 | THE COURT: COUNSEL. |
| 14 | MR. PETRULLO: AND GOOD MORNING, YOUR HONOR. |
| 15 | JOHN PETRULLO FROM BUCHALTER & NEMER APPEARING FOR A |
| 16 | NONPARTY WITNESS, MS. GILMORE. |
| 17 | THE COURT: GOOD MORNING. |
| 18 | GOOD MORNING TO YOU ALL. |
| 19 | WE'RE ON CALENDAR THIS MORNING ON THE COURT'S OWN |
| 20 | ORDER TO SET THE VARIOUS EX-PARTE APPLICATIONS THAT THE COURT |
| 21 | RECEIVED FOR A HEARING. |
| 22 | THE COURT HAS RECEIVED AND REVIEWED -- ACTUALLY, |
| 23 | THERE'S SIX EX-PARTE APPLICATIONS. ONE OF THE EX-PARTE |
| 24 | APPLICATIONS HAS A SUPPLEMENT, SO I GUESS WE CAN COUNT THAT AS |
| 25 | SEVEN. I'LL TRY TO GET THROUGH THESE AS BEST I CAN THIS |

Page 7

| | |
|---|---|
| 1 | MORNING. |
| 2 | I HAVE RECEIVED THE PARTIES' PAPERS. THERE WAS A |
| 3 | REPLY WHICH CAME IN AT APPROXIMATELY 9:36 THIS MORNING; AND I |
| 4 | MENTION THIS ONLY AS KIND OF A CAVEAT TO ALL PARTIES IN THIS |
| 5 | CASE AS WE GO FORWARD HERE. THIS WAS A REPLY SUBMITTED BY |
| 6 | MATTEL IN SUPPORT OF THEIR EX-PARTE TO COMPEL VARIOUS |
| 7 | DEPOSITIONS. |
| 8 | I KNOW THAT IT WAS ELECTRONICALLY-FILED AT 2:24 ON |
| 9 | FRIDAY, BUT THE COURTESY COPY CAME IN THIS MORNING AT 9:36. I |
| 10 | CAN'T REVIEW A DOCUMENT, OBVIOUSLY, 25 MINUTES BEFORE A |
| 11 | HEARING, PARTICULARLY WHEN I WAS ALREADY ON THE BENCH AT 9:30, |
| 12 | ON THE SCHEDULING CONFERENCES. |
| 13 | SO IT'S JUST A CAVEAT TO EVERYBODY IN THIS CASE, THAT |
| 14 | TO THE EXTENT THAT YOU WANT ME TO READ SOMETHING BEFORE A |
| 15 | HEARING, THAT COURTESY COPY IS ALMOST AS IMPORTANT, IF NOT MORE |
| 16 | IMPORTANT, THAN THE ELECTRONIC FILING, BECAUSE THAT'S WHAT I |
| 17 | USE; THAT'S WHAT I TOOK HOME THIS WEEKEND, WERE ALL OF THE |
| 18 | COURTESY COPIES. SO IF YOU WANT TO FILE SOMETHING ON FRIDAY |
| 19 | BEFORE A HEARING, THAT'S FINE. BUT YOU'RE GOING TO HAVE TO |
| 20 | MAKE THAT EFFORT. I KNOW IT'S AN ADDED EXPENSE AND IT'S NOT |
| 21 | REQUIRED TO FILE IT -- IT'S TECHNICALLY FILED, BUT IT DOESN'T |
| 22 | DO MUCH GOOD IF YOU WANT THE COURT TO ACTUALLY READ IT. |
| 23 | SO I HAVE NOT READ THAT REPLY, BUT I HAVE READ |
| 24 | EVERYTHING ELSE THAT HAS BEEN SUBMITTED. |
| 25 | AND I SAY THAT NOT TO ADMONISH, BUT JUST SIMPLY TO |

Page 8

| | |
|---|---|
| 1 | PUT EVERYONE ON THE SAME PLAYING FIELD, THAT IN THE FUTURE -- |
| 2 | BECAUSE I'M SURE, AS WE GET CLOSER TO HEARING DATES AND TRIAL |
| 3 | DATES, THAT THERE'S GOING TO BE A LOT OF THINGS FILED AND |
| 4 | YOU'RE GOING TO WANT TO GET A LOT OF STUFF BEFORE THE COURT. |
| 5 | IF YOU WANT ME TO READ IT, I NEED THAT COURTESY COPY. THAT'S |
| 6 | WHAT'S CRITICAL. |
| 7 | WE HAVE A REINFORCED COURTESY BOX NOW FOR THAT |
| 8 | PURPOSE. |
| 9 | MR. NOLAN: IS IT LARGER? |
| 10 | THE COURT: IT'S LARGER AND IT'S WOOD, NOT PLASTIC. |
| 11 | I'D LIKE TO BEGIN, BECAUSE I THINK THIS MAY HELP |
| 12 | RESOLVE A NUMBER OF THESE APPLICATIONS, WITH MR. MACHADO'S |
| 13 | EX-PARTE APPLICATION, MR. MACHADO-GOMEZ'S EX-PARTE APPLICATION, |
| 14 | FOR A CLARIFICATION OF THE COURT'S JANUARY 7, 2008 ORDER. |
| 15 | AND THE CONCERN THAT MR. MACHADO-GOMEZ EXPRESSED |
| 16 | THROUGH HIS EX-PARTE APPLICATION WAS JUST BASICALLY A |
| 17 | CLARIFICATION THAT THE COURT MEANT WHAT IT SAID BACK ON |
| 18 | OCTOBER 31ST, THAT PHASE TWO CASE MANAGEMENT DATES HAD BEEN |
| 19 | VACATED AND THAT THE DATES THAT I IMPOSED WERE FOR PHASE ONE, |
| 20 | INCLUDING THE DISCOVERY CUTOFF, WHICH HAS NOW COME AND GONE. |
| 21 | AND WHAT HAS COME AND GONE IS THE DISCOVERY CUTOFF FOR PHASE |
| 22 | ONE, NOT FOR PHASE TWO. |
| 23 | I INDICATED AT THAT TIME THAT I WAS DENYING MGA'S |
| 24 | REQUEST TO DELAY OR OTHERWISE BIFURCATE DISCOVERY REGARDING |
| 25 | PHASE TWO ISSUES, AND I THINK THE REASONING FOR THAT -- AND I |

Page 9

| | |
|---|---|
| 1 | TRIED TO ARTICULATE THIS IN MY JANUARY ORDER -- WAS THAT I DID |
| 2 | NOT WANT TO HAVE DISCOVERY BOGGED DOWN BY DISPUTES OVER WHETHER |
| 3 | OR NOT A PARTICULAR WITNESS'S OR DEPONENT'S TESTIMONY WAS PHASE |
| 4 | ONE DISCOVERY OR PHASE TWO DISCOVERY. SO I THOUGHT IT MADE |
| 5 | SENSE, TO THE EXTENT THAT YOU WERE DOING A PHASE ONE |
| 6 | DEPOSITION, IF THAT WITNESS HAD INFORMATION RELATED TO PHASE |
| 7 | TWO, THAT YOU GATHER THAT AT THE SAME TIME. |
| 8 | THAT IS NOT TO SUGGEST THAT SOMEHOW ALL PHASE TWO |
| 9 | DISCOVERY WAS TO BE COMPLETED BY JANUARY 28TH. SO IN MY ORDER |
| 10 | THAT I WILL ISSUE TODAY, I WILL BASICALLY, I SUPPOSE, GRANT |
| 11 | MR. MACHADO-GOMEZ'S EX-PARTE APPLICATION, TO CLARIFY THE ORDER |
| 12 | THAT THE COURT NEVER INTENDED FOR PHASE TWO DISCOVERY TO BE |
| 13 | COMPLETED BY JANUARY 28TH. |
| 14 | IN REFLECTING ON THIS, THOUGH, AND REFLECTING ON |
| 15 | WHERE WE ARE IN THE DISCOVERY -- AND, I SUPPOSE, TO KIND OF |
| 16 | GIVE YOU A PREVIEW AS TO WHERE I'M GOING WITH SOME OF THESE |
| 17 | OTHER APPLICATIONS -- THERE'S NO QUESTION THAT THE COURT WANTS |
| 18 | TO MAKE SURE ALL OF THE DISCOVERY THAT IT HAS ORDERED TO BE |
| 19 | CONDUCTED FOR PHASE ONE BE CONDUCTED AND COMPLETED. AND I |
| 20 | CERTAINLY INTEND TO GIVE LEAVE TO BOTH PARTIES TO COMPLETE |
| 21 | WHATEVER DISCOVERY WAS ORDERED BEFORE THE DISCOVERY CUTOFF DATE |
| 22 | WITH REGARD TO PHASE ONE. |
| 23 | IT'S ALSO CLEAR TO ME, AT THIS TIME, IT MIGHT MAKE A |
| 24 | LOT OF SENSE TO STAY OR STOP PHASE TWO DISCOVERY UNTIL THE |
| 25 | PHASE ONE TRIAL IS COMPLETED. HAVING READ THROUGH A NUMBER OF |

FEBRUARY 4, 2008                    ED CV 04-9059-SGL

EXHIBIT_____1_____
PAGE_____6_____

Page 10

1 THE BRIEFS OPPOSING THE VARIOUS EX-PARTE APPLICATIONS, I KNOW
2 THAT BOTH SIDES, OR ALL SIDES -- THERE'S NOT REALLY JUST TWO
3 SIDES HERE -- BUT ALL SIDES HAVE BEEN WORKING AT A FEVERISH
4 PACE, AND I APPRECIATE THE EFFORTS OF EVERYONE.  BUT I THINK
5 THAT WE HAVE TO BE REALISTIC AS WELL, AND I THINK THAT A FOCUS
6 ON -- WE'RE IN THE MONTH OF FEBRUARY NOW -- ON WRAPPING UP
7 PHASE ONE DISCOVERY SHOULD BE OUR PRIORITY.
8       I WOULD STILL WANT TO KEEP IN PLACE MY ADMONITION OR
9 DIRECTION THAT TO THE EXTENT THAT A PHASE ONE WITNESS IS BEING
10 DEPOSED AND HAS PHASE TWO INFORMATION, THAT THAT ALL BE TAKEN
11 AT THE SAME DEPOSITION.  I'M NOT CONTEMPLATING TRYING TO CREATE
12 MORE DEPOSITIONS DOWN THE ROAD BY SAYING THIS.
13       AND I THINK MATTEL CLEARLY IDENTIFIES A NUMBER OF
14 THESE WITNESSES AS CLEARLY PHASE TWO WITNESSES -- I JUST DON'T
15 THINK THAT'S A WISE IDEA, OR PRUDENT, FOR US TO BE HAVING THOSE
16 DEPOSITIONS GOING FORWARD IN FEBRUARY.  AND THERE'S A GOOD
17 NUMBER OF WITNESSES THAT HAVE BEEN IDENTIFIED BY MATTEL IN
18 THEIR PAPERS AS BEING PHASE TWO WITNESSES.
19       MY TENTATIVE THOUGHT THIS MORNING, OR OVER THIS
20 WEEKEND, IS THAT THOSE WITNESSES AND THOSE DEPOSITIONS BE PUT
21 OFF UNTIL WE'RE DONE WITH THIS PHASE ONE TRIAL, SO THAT WE CAN
22 FOCUS ALL OF THE RESOURCES -- AND ADMITTEDLY, THERE'S A LOT OF
23 RESOURCES -- BUT FOCUS THE RESOURCES ON FINISHING UP PHASE ONE
24 DISCOVERY.
25       SO THOSE ARE MY TENTATIVE THOUGHTS, I SUPPOSE, WITH

Page 12

1 TOGETHER.  AND I THINK THERE ARE, OBVIOUSLY, SOME ISSUES THAT
2 THE PARTIES HAVE.  THE GOOD NEWS IS THAT IN THE WEEK ENDING
3 JANUARY 28TH, THE PARTIES TOOK AND DEFENDED 27 DEPOSITIONS.  WE
4 DID NOTICE ALL OF THE DEPOSITIONS THAT WE GOT LEAVE TO TAKE
5 PURSUANT TO THE COURT'S JANUARY 7TH ORDER.
6       THE ORDER INDICATED -- FRANKLY, IT WASN'T ENTIRELY
7 CLEAR TO THE LAWYERS WHAT THE COURT'S INTENTIONS WERE ABOUT THE
8 CUTOFF DATE, TO THE EXTENT THEY CAN BE COMPLETED BY
9 JANUARY 28TH UNLESS THERE'S A STIPULATION, THAT SORT OF LED TO
10 SOME MISUNDERSTANDINGS OR DISAGREEMENTS BETWEEN THE LAWYERS,
11 WHICH I THINK I CAN SUMMARIZE FOR THE COURT.
12       THE DISAGREEMENTS SORT OF FALL INTO A TOTAL OF SEVEN
13 CATEGORIES.  FIRST, THERE ARE PERSONS, PARTIES, THIRD-PARTY
14 DEPONENTS, WHO ARE IDENTIFIED IN THE JANUARY 7TH ORDER WHO WE
15 NOTICED AND WE SUBPOENAED; AND THEY ASKED, FOR REASONS OF THEIR
16 OWN, THAT THE DEPOSITIONS BE TAKEN AFTER JANUARY 28TH; THAT
17 THEY BE TAKEN IN FEBRUARY.
18       SO THERE'S AN ISSUE OF, DO WE HAVE PERMISSION TO DO
19 THAT?
20       IT'S REALLY FOR THE CONVENIENCE OF THE THIRD PARTIES.
21 THEY WERE DULY NOTICED AND SERVED WITH SUBPOENAS.  WE THOUGHT
22 IT WAS APPROPRIATE TO GO AHEAD AND DO THOSE IN FEBRUARY.  BUT
23 AT THIS POINT, WE DON'T REALLY HAVE A STIPULATION FROM THE
24 OTHER SIDE THAT IT'S OKAY TO DO THAT.
25       SO THAT'S ONE SORT OF CATEGORY.

Page 11

1 RESPECT TO MR. MACHADO-GOMEZ'S APPLICATION.  I WILL WANT TO
2 HEAR BRIEFLY FROM BOTH SIDES, IF THERE ARE ANY THOUGHTS OR
3 REACTIONS.
4       I'M TRYING TO THINK OF ALL OF THE UNINTENDED
5 CONSEQUENCES OF MAKING THIS MOVE, AND PRECISELY BECAUSE THEY'RE
6 UNINTENDED, I'M SURE I CAN'T CONTEMPLATE THEM; SO I HAVE TO
7 RELY ON COUNSEL TO ALERT ME TO ANY PROBLEMS IN GOING DOWN THIS
8 ROAD AT THIS POINT.
9       I DO RECOGNIZE, OF COURSE, THERE'S A DANGER OF A
10 DISPUTE OVER WHAT'S A PHASE ONE WITNESS AND WHAT'S A PHASE TWO
11 WITNESS.  I'VE GOT TO BELIEVE, THOUGH, THAT YOU'RE AT A POINT
12 IN THIS CASE WHERE YOU CAN IDENTIFY BETWEEN THE TWO.  IF IT'S
13 MIXED, THEN IT GOES FORWARD.  BUT IF IT'S JUST CLEARLY A PHASE
14 TWO WITNESS, I JUST CAN'T THINK OF A COMPELLING NEED TO BUSY UP
15 OUR TIME AT THIS POINT WITH THOSE WITNESSES.
16       NO ONE IS FORFEITING ANY RIGHT TO TAKE THOSE
17 DEPOSITIONS.  YOU ALL NEED TO BE HAVING PLENTY OF LEAVE TO DO
18 WHATEVER DISCOVERY IS NECESSARY IN PHASE TWO, ONCE WE GET
19 THROUGH OUR PHASE ONE TRIAL, WHICH IS SCHEDULED TO BEGIN IN
20 MAY; BUT I JUST WANT US TO BE REALISTIC AS WE GO FORWARD.
21       SO I'LL HEAR WHOMEVER WISHES TO GO FIRST ON THIS.
22       MR. QUINN?
23       MR. QUINN:  GOOD MORNING, YOUR HONOR.
24       THERE'S TWO EX-PARTES THAT THE COURT HAS THAT DEAL
25 WITH DEPOSITIONS, AND I THINK I CAN ADDRESS BOTH OF THOSE

Page 13

1 ANOTHER CATEGORY ARE PEOPLE -- AND THERE ARE FOUR OF
2 THESE -- WHO TURN OUT TO BE OUT OF THE COUNTRY, ONE IN CANADA
3 AND THE OTHER THREE IN HONG KONG, WHERE WE ARE PROCEEDING BY
4 LETTERS ROGATORY.  AND THAT TAKES A LITTLE LEAD TIME.  AND IT
5 WAS NOT POSSIBLE, FOR THAT REASON, TO GET THOSE DONE BY
6 JANUARY 28TH.
7       SO THERE'S AN ISSUE OF, IS IT OKAY TO CONTINUE DOWN
8 THAT PATH AND COMPLETE THOSE, EVEN THOUGH IT WOULD BE DONE
9 AFTER JANUARY 28TH?
10       THE COURT:  WITH RESPECT TO THOSE THREE OUT OF THE
11 COUNTRY, IN YOUR VIEW, WOULD YOU DESCRIBE THOSE AS PHASE ONE OR
12 TWO OR MIXED?
13       MR. QUINN:  THE ONE IN CANADA, I WOULD SAY, IS PHASE
14 TWO; THE THREE IN HONG KONG ARE PHASE ONE, YOUR HONOR.
15       THE COURT:  VERY WELL.
16       MR. QUINN:  THE THIRD CATEGORY ARE PEOPLE, FOLKS, WHO
17 ARE COVERED BY THE JANUARY 7TH ORDER BY NAME.  WE NOTICED THEM
18 AND WE'VE BEEN TRYING TO SERVE THEM WITH SUBPOENAS AND HAVE NOT
19 BEEN SUCCESSFUL.  WE'VE DETAILED OUR EFFORTS ON THAT IN THE
20 PAPERS.  WE JUST NEED A LITTLE MORE TIME TO SERVE THOSE PEOPLE.
21       THESE INCLUDE, BY THE WAY, AN ATTORNEY,
22 UNFORTUNATELY, MR. MCFARLAND, WHO WE THINK HAS BEEN AVOIDING
23 SERVICE.  WE'VE TRIED TO SERVE HIM.  WE'VE LEFT MESSAGES.  WE
24 FINALLY SENT HIM AN E-MAIL SAYING, 'WE HAVE A SUBPOENA FOR YOU,
25 SIR.  COULD YOU PLEASE CALL US AND LET US KNOW WHEN IT WOULD BE

FEBRUARY 4, 2008          ED CV 04-9059-SGL

EXHIBIT _____ 1
PAGE _____ 7

Page 14

1  CONVENIENT TO ACCEPT THAT.' WE KNOW HE OPENED THAT E-MAIL
2  MESSAGE, BUT HE HAS NOT RESPONDED. AND HIS CLIENTS AS WELL.
3  SOMEHOW WE HAVE NOT BEEN ABLE TO TRACK DOWN -- WE HAVE NOT BEEN
4  ABLE TO SERVE HALPERN, ARANT, AND PETER MARLOW, WHO HE
5  REPRESENTS; SO THERE'S A CATEGORY THERE.
6          THE LIST OF THESE PEOPLE WHO WE CLEARLY COVERED BY
7  THE JANUARY 7TH ORDER BY NAME, WE NOTICED THEM, WE'VE HAD
8  SUBPOENAS OUT AND HAVE NOT BEEN ABLE TO SERVE THEM; THAT'S
9  MCFARLAND, WARD, HALPERN, ARANT, MARLOW, SALEMNIA, ABUNDIS, AND
10 WITSCHELL.
11         THEN THERE ARE TWO INDIVIDUALS WHO, THERE'S A DISPUTE
12 ABOUT WHETHER THEY'RE COVERED BY THE JANUARY 7TH ORDER. THEY
13 ARE REFERRED TO BY NAME IN THE PAPER. THIS IS GRONICH, DAPHNE
14 GRONICH; AND JOE TIONGCO.
15         WHAT WE NEED THE COURT'S HELP ON IS A CONSTRUCTION OF
16 THE ORDER. THE COURT'S ORDER AT ONE POINT SAYS THAT MATTEL HAS
17 MADE A SHOWING, BECAUSE OF THE DOCUMENT RETENTION ISSUES, THAT
18 THESE DEPOSITIONS SHOULD BE TAKEN. AND THE COURT GRANTED THE
19 MOTION -- THERE'S A POINT IN THE ORDER WHERE THE COURT SAYS THE
20 MOTION IS GRANTED EXCEPT FOR ADDITIONAL TIME WITH
21 CARTER BRYANT.
22         WE UNDERSTOOD THAT SINCE GRONICH AND TIONGCO ARE THE
23 ONLY PEOPLE WHO HAVE ANYTHING TO DO WITH DOCUMENT COLLECTION
24 AND RETENTION, THAT WE HAD LEAVE TO TAKE THEIR DEPOSITIONS.
25         IT'S MGA'S VIEW THAT SINCE THE COURT'S ORDER REFERRED

Page 16

1  WE KIND OF RAN INTO A WALL THERE.
2          THE FINAL CATEGORY IS THE 30(B)(6) NOTIONS OF MGA TO
3  MEXICO AND MGA. THOSE NOTICES WERE ATTACHED TO OUR
4  APPLICATION, AND THE COURT GRANTED PERMISSION FOR US TO TAKE
5  THOSE DEPOSITIONS. THE COURT FOUND GOOD CAUSE TO TAKE THE
6  DEPOSITIONS. NO OBJECTIONS WERE MADE TO THE TOPICS, THE
7  30(B)(6) TOPICS DESCRIBED IN THE NOTICES; SO IT'S OUR VIEW THAT
8  THE COURT AUTHORIZED TO GO AHEAD AND TAKE THOSE DEPOSITIONS.
9  MGA HAS STARTED A PROCEEDING BEFORE JUDGE INFANTE TO QUESTION
10 THE DEPOSITION TOPICS AND OBJECT TO THEM SORT OF AFTER THE
11 FACT.
12         SO THE ISSUE THERE IS, WAS IT TOO LATE FOR THEM TO
13 OBJECT? BY FINDING GOOD CAUSE TO TAKE THOSE DEPOSITIONS ON
14 JANUARY 7TH, DID THE COURT INTEND THAT WE COULD GO AHEAD AND
15 TAKE THEM ON THOSE TOPICS? OR SHOULD THERE BE THIS ANCILLARY
16 PROCEEDING BEFORE JUDGE INFANTE?
17         THE COURT: ARE THOSE PHASE TWO OR PHASE ONE, FROM
18 YOUR PERSPECTIVE?
19         MR. QUINN: I BELIEVE THE MGA TO MEXICO IS PHASE TWO;
20 THE 30(B)(6) TO MGA IS PARTLY PHASE ONE AND PARTLY PHASE TWO.
21         THE COURT: ALL RIGHT.
22         NOW, THESE WERE SIX CATEGORIES. YOU INDICATED SEVEN
23 AREAS OF DISPUTE.
24         IS THERE ANOTHER?
25         MR. QUINN: THE SEVENTH IS SORT OF -- YOU'LL SEE IN

Page 15

1  TO, AT ONE POINT, TWO PAGES IN OUR MOTIONS WHERE THERE WERE
2  LISTS OF NAMES, AND THOSE TWO NAMES WEREN'T THERE, THAT THE
3  COURT DID NOT MEAN TO INCLUDE THEM.
4          SO I THINK I'VE HIGHLIGHTED THE ISSUE THERE.
5          FROM OUR STANDPOINT, THE COURT ELSEWHERE SAID,
6  "MOTION GRANTED, EXCEPT BRYANT." THE COURT ALSO SAID BECAUSE
7  OF DOCUMENT RETENTION AND COLLECTION ISSUES, AND THEY'RE THE
8  ONLY ONES THAT KNOW ABOUT THAT.
9          THE COURT: I UNDERSTAND YOUR POSITION, COUNSEL.
10         MR. QUINN: ALL RIGHT.
11         THEN THERE ARE TWO FOLKS WHO ARE IN MEXICO, VARGAS
12 AND TRUEBA, AND I BELIEVE THEY WOULD BE PHASE TWO. AND THE
13 QUESTION THERE FOR THE COURT'S DECISION -- MAYBE IF THIS IS
14 GOING TO BE PUT OFF, MAYBE THE COURT DOESN'T HAVE TO DECIDE
15 RIGHT NOW -- IS WHETHER THEY ARE MANAGING AGENTS. BECAUSE IF
16 THEY ARE MANAGING AGENTS, THEY COULD BE COMPELLED TO APPEAR
17 SIMPLY BY NOTICE. IF THEY'RE NOT MANAGING AGENTS, THEN WE HAVE
18 TO PROCEED UNDER MORE FORMAL PROCEDURES. THAT ISSUE OF WHAT A
19 MANAGING AGENT IS AND WHAT THE EVIDENCE IS ON THAT HAS BEEN
20 BRIEFED FOR THE COURT, AND WE THINK THE COURT CAN DECIDE THAT.
21         I WOULD JUST NOTE THAT IN THE INITIAL DISCLOSURES, WE
22 WERE TOLD THAT THESE WERE PEOPLE WHO CAN BE CONTACTED THROUGH
23 MGA'S COUNSEL. WE CONTACTED THEM AND SAID, 'OKAY, WE'D LIKE TO
24 TAKE THEIR DEPOSITIONS.' WE WERE TOLD WE COULDN'T. WE ASKED
25 FOR THEIR ADDRESSES. WE WERE TOLD WE COULDN'T HAVE THEM. SO

Page 17

1  THE PAPERS -- A QUESTION MIGHT RAISE IN YOUR MIND, YOUR HONOR,
2  WHETHER LAWYERS CAN COUNT AS TO HOW MANY DEPOSITIONS HAVE BEEN
3  TAKEN. THE ORIGINAL SCHEDULING ORDER SAID 24 DEPOSITIONS. AND
4  IT'S MGA'S VIEW THAT WE USED UP OUR 24. WE THINK THEY GET TO
5  THAT BY SAYING THAT THE JANUARY 7TH ORDER CUT OFF AND
6  ELIMINATED ANY UNUSED ONES THAT WE HAD AT THE TIME; SO ANY
7  UNUSED ONES, WE DON'T GET TO USE NOW.
8          THE COURT: I UNDERSTAND.
9          MR. QUINN: WE THINK WE HAVE TAKEN 18 DEPOSITIONS.
10 THEY SAY WE'VE TAKEN VASTLY MORE THAN -- YOU KNOW, WE USED
11 THOSE UP.
12         THE COURT: THERE'S NO QUESTION LAWYERS CAN COUNT.
13 THE PROBLEM IS THAT LAWYERS HAVE MANY DIFFERENT WAYS OF
14 COUNTING.
15         MR. QUINN: RIGHT.
16         I HAVE THE LIST OF THE ONES WE'VE TAKEN, YOUR HONOR.
17 TO GET OVER THE 24, THEY COUNT DEPOSITIONS WE HAVEN'T TAKEN, OR
18 ONE THAT'S BEING TAKEN AS WE SPEAK NOW, MR. LARIAN'S BROTHER,
19 FARAD LARIAN. BUT HE WAS ALSO SPECIFICALLY LISTED IN THE
20 JANUARY 7TH ORDER. AND THEY ALSO COUNT THE DEPOSITION OF
21 GUSTAVO MACHADO, WHO'S A PARTY TO THIS CASE, WHO WE'VE BEEN
22 TRYING TO DEPOSE SINCE LAST JUNE. THIS IS A PARTY, AND WE
23 STILL HAVEN'T TAKEN THAT DEPOSITION.
24         THE COURT: I'M GOING TO STOP YOU FOR A SECOND,
25 MR. QUINN, BECAUSE I WANT TO GET TO ALL OF THE EX PARTES ON THE

5 (Pages 14 to 17)

Page 18

1  DEPOSITIONS WHICH YOU'VE JUST ADDRESSED HERE, BUT I FIRST
2  WANTED SOMEONE TO RESPOND FROM MATTEL TO THE COURT'S — I'M
3  STILL ON MACHADO-GOMEZ'S EX-PARTE APPLICATION.
4       DO YOU HAVE A POSITION WITH RESPECT TO THE COURT'S
5  SUGGESTION THAT WE DELAY THE PHASE TWO DEPONENTS, OR
6  DEPOSITIONS, UNTIL AFTER THE PHASE ONE TRIAL, KEEPING IN MIND,
7  YOU ARE NOT — THE COURT WILL ENSURE THAT YOU ARE NOT
8  COMPROMISING ANY OF THE LEAVE THAT'S BEEN AFFORDED TO YOU TO
9  TAKE ANY OF THESE DEPOSITIONS. IT'S JUST SIMPLY A MATTER OF
10  TIMING.
11       MR. QUINN: I UNDERSTAND.
12       PRINCIPALLY, YOUR HONOR, I THINK THAT'S SOMETHING
13  THAT WE CAN SUPPORT.
14       THE COURT: DO YOU THINK THAT YOU COULD IDENTIFY,
15  WITHOUT TOO MUCH DISPUTATION, DEPOSITIONS THAT ARE PHASE TWO?
16       THAT'S WHY I WAS ASKING YOU BEFORE — YOU SEEM TO BE
17  ABLE TO.
18       MR. QUINN: WE WOULD CERTAINLY, YOUR HONOR, ENDEAVOR
19  TO DO THAT. HOPE BLOOMS ETERNAL, AND I WOULD HOPE THAT WE
20  COULD DO THAT.
21       JUST TWO ISSUES. ONE IS, ON SOME OF THESE, THERE
22  REALLY IS SOME LEAD TIME. WE NEED TO TAKE A DEPOSITION IN
23  ORDER TO FIND OUT WHO THE THIRD PARTIES ARE; WHAT YOUR PHONE
24  NUMBER WAS, WHERE YOUR BANKING WAS; THAT ALL TAKES SOME TIME,
25  TO SERVE THOSE THIRD-PARTY SUBPOENAS.

Page 19

1       WE HAVE GOT THIRD PARTIES, YOU KNOW, BANKS, THAT
2  APPEARED THIS MORNING, BECAUSE WE FINALLY GOT SOME INFORMATION
3  SO WE COULD SERVE THE SUBPOENA ON A BANK; THAT CAN TAKE SOME
4  LEAD TIME.
5       THE COURT: I UNDERSTAND.
6       MR. QUINN: THERE MAY BE SOME THAT WE WOULD SAY,
7  'YOUR HONOR, WE REALLY NEED THAT;' SOMEBODY WHO'S TECHNICALLY
8  PHASE TWO, WE REALLY NEED TO START THAT PROCESS EARLIER.
9       THAT'S ONE EXCEPTION.
10       THE OTHER EXCEPTION —
11       THE COURT: LET ME STOP YOU THERE, COUNSEL, BECAUSE I
12  REALLY WANT TO MAKE SURE I'VE ADDRESSED AS MANY OF THESE
13  PROBLEMS AS I CAN. I DON'T REALLY SEE —
14       EARLY, AS OPPOSED TO WHAT? WE DON'T EVEN HAVE A
15  TRIAL SET FOR PHASE TWO YET, SO WE DON'T KNOW HOW MUCH TIME OR
16  HOW LITTLE TIME WE'RE GOING TO HAVE ONCE THE PHASE ONE TRIAL IS
17  OVER.
18       MR. QUINN: RIGHT.
19       THE COURT: IF YOU'RE SAYING THAT IT TAKES YOU THREE
20  MONTHS TO SECURE THE INFORMATION THAT YOU NEED, WE CAN PROBABLY
21  ACCOMMODATE THAT IN OUR PHASE TWO TRIAL.
22       MR. QUINN: WELL, I RAISED IT BECAUSE I DON'T KNOW
23  THE COURT'S THINKING. WE DON'T HAVE A TRIAL DATE. IT'S JUST A
24  CAUTION THAT GOES OFF.
25       THE OTHER IS MR. MACHADO, WHO WE'VE BEEN TRYING TO

Page 20

1  DEPOSE. HE'S PHASE TWO. HE'S A PARTY TO THIS CASE. WE'VE
2  BEEN TRYING TO DEPOSE HIM SINCE JUNE. WE HAD SEVERAL DAYS.
3  HIS LAWYER, AFTER GIVING US DATES, CANCELLING, GIVING US DATES,
4  CANCELLING, GAVE US A DATE IN JANUARY; AND MGA CANCELLED IT.
5  WE FINALLY GOT A DATE.
6       HE NOW SAYS HE WILL APPEAR ON FEBRUARY 27TH. AND
7  GIVEN THE LONG ROAD THAT WE'VE HAD TO GO TO GET TO THIS POINT,
8  THAT'S ONE THAT WE REALLY WOULD LIKE TO DO.
9       THE COURT: WELL, CERTAINLY, MR. MACHADO-GOMEZ IS
10  GOING TO SIT FOR HIS DEPOSITION. IF HE HAS TO SIT FOR IT IN
11  THIS COURTROOM, HE'S GOING TO SIT FOR HIS DEPOSITION IN THIS
12  CASE. THAT'S NOT A QUESTION. THE QUESTION IS TIMING.
13       IS THERE ANY REASON WHY HE HAS TO SIT FOR HIS
14  DEPOSITION BEFORE THE PHASE ONE TRIAL?
15       MR. QUINN: NO.
16       THE COURT: OKAY.
17       I UNDERSTAND THE PROBLEM. IF YOU CONTINUE TO HAVE
18  THOSE PROBLEMS, WE CAN ADDRESS THAT, BUT I WANT TO —
19       DOES ANYONE ELSE WISH TO ADDRESS THE COURT ON ITS
20  RESOLUTION TO THIS FIRST EX-PARTE APPLICATION AND THE PROPOSAL
21  TO PLACE PHASE TWO DEPOSITIONS, BASICALLY A STAY ON THAT, AT
22  THIS POINT, FOR EXCLUSIVE PHASE TWO DEPOSITIONS?
23       I REALLY HOPE THERE'S NOT GOING TO BE ANY
24  MISUNDERSTANDING OR NEED FOR CLARIFICATION AS TO WHAT I MEAN BY
25  THAT. I'M TALKING ABOUT WITNESSES LIKE MR. MACHADO-GOMEZ, WHO,

Page 21

1  FROM MY UNDERSTANDING OF WHAT HE HAS TO SAY AND WHAT HE
2  CONTRIBUTES TO THIS, IS REALLY A PHASE TWO WITNESS.
3       MR. NOLAN: YOUR HONOR, ON BEHALF OF MGA AND
4  ISAAC LARIAN, WE DO NOT DISPUTE THAT APPROACH. THAT IS
5  ACTUALLY HOW WE INTERPRETED THE COURT'S ORDER WHEN IT WAS
6  ISSUED ON JANUARY 7TH. SOME OF THE DIFFICULTY THAT WE'VE HAD
7  IN THIS CASE HAS BEEN TRYING TO GET ALL SIDES TO AGREE TO IT.
8       I'M NOT GOING TO GO INTO THE OTHER ISSUES RIGHT NOW.
9  I AGREE WITH RESPECT TO MR. MACHADO. BUT I DO WANT TO SAY
10  SOMETHING ABOUT ONE THING.
11       TO THE EXTENT THAT WE WERE CALLED OUT FOR CANCELLING
12  MR. MACHADO'S DEPOSITION, I THINK THE PAPERS MADE IT QUITE
13  CLEAR THAT JACK DICANIO, WHO WAS ASSIGNED TO HANDLE THE MATTER,
14  WAS HANDLING A SENTENCING. WE COMMUNICATED THAT TO COUNSEL.
15  AND FOR ANY SIDE IN THIS CASE TO TAKE ISSUE WITH CANCELLING
16  DEPOSITIONS UNILATERALLY, THEY SHOULD BE REMINDED ABOUT THE OLD
17  ADAGE, 'PEOPLE WHO LIVE IN GLASS HOUSES SHOULDN'T THROW ROCKS,'
18  BECAUSE I COULD GO ON AND ON ABOUT THE NUMBER OF CANCELLATIONS
19  AND THE —
20       THE COURT: THERE'S NO NEED TO DO THAT, COUNSEL. I
21  APPRECIATE THE SENTIMENT.
22       IS THERE ANYONE ELSE WHO WISHES TO BE HEARD ON THIS
23  ASPECT THAT I'M SUGGESTING RIGHT NOW?
24       MR. COTE: WE TOTALLY AGREE WITH YOUR HONOR'S
25  SUGGESTION. I THINK THAT'S THE RIGHT WAY TO SPLIT IT UP.

FEBRUARY 4, 2008        ED CV 04-9059-SGL   EXHIBIT ____1____
                                            PAGE ____2____

1    THE COURT: IS THERE ANYBODY WHO DISAGREES WITH MY
2  SUGGESTION?
3    OKAY. WELL, THAT'S GOOD.
4    THAT WILL BE THE FIRST ELEMENT OF TRYING TO RESOLVE
5  THESE VARIOUS MATTERS.
6    THE SECOND EX PARTE THAT I WOULD LIKE TO ADDRESS IS
7  THE EX PARTE BROUGHT BY MATTEL FOR A STAY OF THE DISCOVERY
8  MASTER'S JANUARY 11, 2008 ORDER GRANTING MGA'S AND BRYANT'S
9  MOTION TO COMPEL, REGARDING ALLEGED BANDYING OF 30(B)(6)
10  WITNESSES, PENDING REVIEW OF OBJECTIONS.
11    I RECEIVED THE EX PARTE FOR THE STAY. I RECEIVED THE
12  OPPOSITION TO THE STAY. THE COURT GRANTED A TEMPORARY STAY
13  THROUGH TODAY'S HEARING. I ALSO HAVE THE UNDERLYING MOTION
14  WHICH SETS FORTH MATTEL'S OBJECTIONS. I DON'T HAVE AN
15  OPPOSITION, ALTHOUGH I CERTAINLY HAVE AN INDICATION THAT AN
16  OPPOSITION WILL BE FORTHCOMING.
17    RIGHT NOW THE NOTICE DATE IS FOR MARCH 3RD.
18    THE FIRST QUESTION IS, IS THIS SOMETHING WHICH NEEDS
19  TO BE ADDRESSED NOW, OR CAN THIS WAIT?
20    MR. NOLAN?
21    MR. NOLAN: YES, YOUR HONOR.
22    WE BELIEVE THAT IT HAS TO BE ADDRESSED IMMEDIATELY.
23    THIS HAS BEEN A MATTER THAT HAS BEEN BEFORE
24  JUDGE INFANTE SINCE BEFORE WE GOT INVOLVED IN THE CASE. THE
25  MATTER WAS BRIEFED AND PREPARED TO BE ARGUED IN FRONT OF

1  JUDGE INFANTE IN OCTOBER, BUT BECAUSE THE PARTIES WERE TALKING
2  AND WE THOUGHT WE COULD RESOLVE IT -- WE WERE NEW ON THE BLOCK
3  AT THE TIME -- HOPE WAS GREAT AT THE TIME, IN TERMS OF WORKING
4  OUT ANYTHING IN THIS CASE; SO THE MATTER WAS PUSHED OFF.
5    JUDGE INFANTE DEALT WITH IT, RULED ON IT, ORDERED IT,
6  CAME UP WITH THE REMARKABLE FINDING THAT MATTEL HAS TO PRODUCE
7  A WITNESS MOST KNOWLEDGEABLE ON A PARTICULAR SUBJECT.
8    THEY GO TO CORE ISSUES IN PHASE ONE.
9    MATTEL, NOT ACCEPTING THAT ORDER, NOW COMES BEFORE
10  YOU ON THE NINTH DAY AND FILES WHAT WE BELIEVE IS GOING TO BE A
11  FRIVOLOUS APPEAL FROM JUDGE INFANTE. GIVEN THE STANDARD OF
12  REVIEW THE COURT HAS IMPOSED ALREADY IN THIS CASE AND GIVEN THE
13  AMOUNT OF BRIEFING AND ATTENTION THAT JUDGE INFANTE HAS ALREADY
14  ADDRESSED TO IT, WHAT I WOULD REQUEST, YOUR HONOR, IS THIS:
15  THAT THE COURT LOOK AT THIS AS QUICKLY AS POSSIBLE. WE WILL
16  GET OUR OPPOSITION IN --
17    THE COURT: THAT WAS GOING TO BE MY NEXT QUESTION,
18  COUNSEL.
19    WHEN CAN YOU HAVE YOUR OPPOSITION ON FILE?
20    MR. NOLAN: TODAY IS MONDAY. WE'LL FILE IT ON
21  WEDNESDAY, IF WE COULD.
22    THE COURT: ALL RIGHT.
23    MR. NOLAN: I'D SAY TOMORROW, YOUR HONOR, BECAUSE I
24  THINK THE PAPER'S ALREADY DONE. I JUST WANT TO MAKE CERTAIN
25  THAT I'M NOT OVERCOMMITTING TO IT. BUT I WOULD SAY WE WOULD

1  FILE IT ON WEDNESDAY OF THIS WEEK.
2    THE COURT: ALL RIGHT.
3    SO YOU WOULD BE ABLE TO FILE FEBRUARY 6TH.
4    HOW MUCH TIME WOULD YOU NEED FOR A REPLY, MR. QUINN
5  AND MR. COREY?
6    MR. QUINN: COULD WE HAVE UNTIL MONDAY, THE 11TH?
7  FRIDAY?
8    THE COURT: THE 18TH IS A HOLIDAY. THE COURT'S IN A
9  LONG TRIAL RIGHT NOW THAT'S GOING TO TAKE TUESDAY THROUGH
10  FRIDAY OF THIS WEEK, TUESDAY AND WEDNESDAY OF NEXT WEEK. I'M
11  SITTING BY DESIGNATION ON THE NINTH CIRCUIT THE 14TH AND 15TH;
12  AND THEN WE START ANOTHER CASE ON THE 19TH. I REALLY HAVE TO
13  DO THESE HEARINGS ON MONDAYS, WHICH MEANS WE HAVE THE 4TH,
14  11TH, AND THE 25TH.
15    I WAS HOPING THAT MAYBE WE COULD HEAR THIS ON THE
16  11TH.
17    MR. QUINN: WE'LL DO THE REPLY ON THE 8TH,
18  YOUR HONOR, IF THAT WORKS.
19    THE COURT: THAT'S GREAT.
20    AND YOU'LL MAKE SURE THAT I GET THAT COURTESY COPY ON
21  THE 8TH, IF YOU WANT ME TO READ IT.
22    MR. QUINN: YES, YOUR HONOR. WE WOULD APPRECIATE IT.
23    THE COURT: SO FEBRUARY 6TH WILL BE THE OPPOSITION;
24  FEBRUARY 8TH WILL BE THE REPLY; AND THEN WE'LL HAVE THE HEARING
25  ON THIS MOTION ON FEBRUARY 11TH. AND I WILL GRANT A STAY

1  THROUGH FEBRUARY 11TH.
2    SO THAT EX-PARTE APPLICATION IS GRANTED TO THE EXTENT
3  THAT IT'S SEEKING A STAY THROUGH THE HEARING; I'M JUST
4  ADVANCING THE HEARING DATE FOR MARCH 3RD, WHICH WAS THE NOTICE
5  DATE, TO FEBRUARY 11TH.
6    LET ME NEXT DEAL WITH THE DEPOSITIONS. THERE'S
7  REALLY, DEPENDING ON HOW WE COUNT, THREE EX-PARTE APPLICATIONS
8  HERE. THERE'S THE ORIGINAL EX-PARTE APPLICATION TO COMPEL THE
9  APPEARANCE OF ANA CABRERA, BEATRIZ MORALES, AND MARIE SALAZAR;
10  AND THEN A SUPPLEMENT TO AN EX-PARTE APPLICATION TO INCLUDE TO
11  THAT LIST MEL WOODS.
12    AND THEN THERE IS THE EX-PARTE APPLICATION TO COMPEL
13  THE DEPOSITIONS OF DAPHNE GRONICH, JOE TIONGCO, MARIANA TRUEBA,
14  PABLO VARGAS, MGA INTERTAINMENT, MGA E DE MEXICO; AND THEN, AS
15  I'VE WRITTEN IN SHORTHAND, A BUNCH OF OTHER DEPOSITIONS AS
16  WELL; LEAVE TO TAKE THE DEPOSITIONS IN FEBRUARY OF 2008 OF
17  NUMEROUS OTHER DEPONENTS.
18    THESE ARE BASICALLY THE DEPOSITIONS THAT MR. QUINN --
19  AND THE ARGUMENTS AND THE PROBLEMS HAVE BEEN BROKEN DOWN INTO
20  KIND OF THE SEVEN CATEGORIES THAT MR. QUINN JUST SPOKE TO.
21    MY INITIAL THOUGHT ON THIS, HAVING GONE THROUGH ALL
22  OF THIS, IS THAT WE SHOULD, HOPEFULLY, FIRST OF ALL, ONLY BE
23  TAKING DEPOSITIONS NOW THAT RELATE TO PHASE ONE. AND TO THE
24  EXTENT THAT ANY OF THESE DEPOSITIONS RELATE TO PHASE TWO,
25  NO ONE'S RIGHTS HAVE BEEN COMPROMISED, NO LEAVE IS BEING

Page 26

1  WITHDRAWN, BUT THEY'RE SIMPLY GOING TO BE HANDLED AFTER THE
2  PHASE ONE TRIAL.
3      SECONDLY, TO THE EXTENT THAT MOTIONS TO QUASH OR
4  CHALLENGES TO THE SERVICE HAVE BEEN BROUGHT BEFORE
5  JUDGE INFANTE HAS TO RULE ON THOSE.
6      MATTEL BROUGHT AN EX-PARTE APPLICATION FOR A
7  CLARIFICATION REGARDING THE DISCOVERY MASTER ORDER, AND THEY
8  ASKED THE COURT TO MAKE A VERY FIRM STATEMENT THAT ALL
9  DISCOVERY MATTERS, THE FIRST IMPRESSION, GO TO THE DISCOVERY
10 MASTER; AND I GRANTED THAT APPLICATION.
11     I COULD NOT HAVE USED, I DON'T THINK, CLEARER
12 LANGUAGE THAT DISCOVERY DISPUTES IN THE FIRST INSTANCE NEED TO
13 GO TO THE DISCOVERY MASTER AND NOT COME TO THIS COURT BY WAY OF
14 EX-PARTE APPLICATION.
15     SO WHAT'S GOOD FOR ONE SIDE IS GOOD FOR THE OTHER,
16 AND I THINK THAT THOSE MOTIONS TO QUASH -- LEAVE WAS AFFORDED
17 TO TAKE THE DEPOSITIONS, BUT THAT DOESN'T EVISCERATE THE NEED
18 TO PROPERLY SERVE AND PROPERLY NOTICE THOSE DEPOSITIONS.
19 THAT'S WHAT'S BEING CHALLENGED.
20     I'M NOT PASSING ANY JUDGMENT AS TO WHETHER OR NOT ONE
21 SIDE IS RIGHT OR THE OTHER SIDE IS WRONG.  BUT I THINK IF I GET
22 INTO THE BUSINESS OF DECIDING SOME OF THESE AND TAKING SOME OF
23 THEM BACK FROM JUDGE INFANTE, IT JUST CREATES A MESS, QUITE
24 FRANKLY.  AND I KNOW THERE'S A TREMENDOUS BURDEN ON
25 JUDGE INFANTE.  JUDGE INFANTE IS RECEIVING, I THINK, ADEQUATE

Page 27

1  COMPENSATION FOR THE BURDEN THAT'S BEING PLACED ON HIM, AND I
2  THINK HE'S DOING A FABULOUS JOB OF MANAGING THIS.  I WILL CALL
3  HIM THIS AFTERNOON AND LET HIM KNOW THAT ANY MATTER RELATED TO
4  PHASE TWO DOES NOT NEED TO BE RESOLVED RIGHT NOW.  TO THE
5  EXTENT THAT THERE HAVE BEEN CHALLENGES MADE TO PHASE TWO
6  DEPONENTS, YOU CAN PUT THAT OFF.  THAT'S NOT TO SAY THAT HE'S
7  NOT GOING TO HAVE TO CROSS THAT BRIDGE AT SOME TIME; HE
8  CERTAINLY WILL; BUT I THINK THAT WILL FREE UP THE TIME TO
9  ADDRESS THOSE MATTERS THAT RELATE TO PHASE ONE.
10     AND THEN TO THE EXTENT THAT MATTEL OR MGA OR
11 CARTER BRYANT OR ANYBODY ELSE DISAGREES WITH THE DECISION MADE
12 BY JUDGE INFANTE, THEN THAT CAN BE BROUGHT BEFORE THIS COURT,
13 AND I WOULD CERTAINLY DO ALL THAT I CAN TO HEAR THAT ON AN
14 EXPEDITED BASIS.
15     WHAT I DON'T THINK IS PROPER FOR THIS COURT TO DO IS
16 TO START ISSUING DISCOVERY ORDERS THAT MAY OR MAY NOT CONFLICT
17 WITH EARLIER POSITIONS THAT JUDGE INFANTE HAS TAKEN.  I THINK
18 THAT JUST MAKES A MESS OF THE WHOLE THING.
19     SO THAT'S KIND OF THE TWO-PRONGED APPROACH THAT I
20 THOUGHT WE WOULD TAKE THROUGH THIS TO HOPEFULLY KEEP THIS
21 GOING.
22     AS FAR AS, HOWEVER, THE DEPOSITIONS THAT I'VE GIVEN
23 LEAVE TO TAKE THAT ARE PHASE ONE DEPOSITIONS, I GUESS A THIRD
24 ASPECT OF THE ORDER WOULD BE THAT, YES, PLAINTIFF DOES HAVE
25 LEAVE TO TAKE THOSE, EVEN IF THAT MEANS TAKING THEM IN

Page 28

1  FEBRUARY.  THE DISCOVERY CUTOFF DATE HAS COME AND GONE.  NO NEW
2  DISCOVERY REQUESTS ARE MADE.  BUT TO THE EXTENT THAT ADDITIONAL
3  DISCOVERY NEEDS TO BE TAKEN RELATED TO PHASE ONE THAT ONE OR
4  EITHER OF THE SIDES HAS RECEIVED LEAVE TO TAKE, THAT'S GOING TO
5  HAVE TO BE DONE IN FEBRUARY.  AND WE NEED TO GET IT DONE SO
6  THAT WE DON'T COMPROMISE OUR SCHEDULE HERE.
7      THE EXPERT REPORTS ARE GOING TO BE DUE IN FEBRUARY
8  AND MARCH.  WE HAVE FILINGS OF MOTIONS IN LIMINE ON MAY 5TH.
9  BUT MOST IMPORTANTLY, WE HAVE A DISPOSITIVE MOTION CUTOFF DATE
10 ON MARCH 31ST.  I SAW A PREVIEW OF COMING ATTRACTIONS IN
11 MR. NOLAN'S BRIEF, AND SEVERAL OTHER PLACES, SO I KNOW THAT
12 THERE ARE MOTIONS IN THE WORKS AND I KNOW THAT WE NEED TO START
13 FOCUSING ON THOSE, BUT WE DO HAVE TO GET THROUGH THIS DISCOVERY
14 FOR WHICH PARTIES HAVE BEEN AFFORDED LEAVE; SO IT'S GOING TO BE
15 BUSY A MONTH.
16     THOSE ARE KIND OF THE THREE GENERAL PARAMETERS THAT I
17 WANT TO USE TO RESOLVE THESE MOTIONS, AND I'D LIKE TO ENTERTAIN
18 THOUGHTS FROM WHOEVER AT THIS POINT CONCERNING THOSE.
19     MR. QUINN:  I'M NOT GOING TO ARGUE.  I'M JUST GOING
20 TO MAKE OBSERVATIONS.
21     MR. NOLAN:  YOUR HONOR, I WAS GOING TO ARGUE, SO
22 MAYBE --
23     THE COURT:  I'LL LET MR. QUINN GO FIRST.  IT IS HIS
24 APPLICATION.
25     YOU'LL HAVE THE LAST WORD, MR. NOLAN.

Page 29

1  MR. QUINN:  I UNDERSTAND WHAT THE COURT HAS SAID, AND
2  WE'LL BE TAKING THESE UP WITH JUDGE INFANTE.
3      THE ONLY REASON WE WERE HERE WAS, THERE'S A COUPLE OF
4  THESE ISSUES THAT RELATE TO THE CONSTRUCTION OF THIS COURT'S
5  ORDER AND WHAT THE COURT MEANT.
6      ONE, THE GRONICH, THE OTHER INDIVIDUAL, THE DOCUMENT
7  RETENTION --
8      THE COURT:  MR. GRONICH OR MR. TIONGCO?
9      MR. QUINN:  TIONGCO.
10     I THINK IT WOULD BE HELPFUL TO THE PARTIES AND
11 JUDGE INFANTE IF THE COURT COULD SHARE WITH US ITS VIEWS ON
12 WHAT IT MEANT THERE, AS TO WHETHER THOSE WERE INCLUDED IN THE
13 JANUARY 7TH ORDER.
14     AND THEN JUST FROM A STANDPOINT OF CONSTRUCTION OF
15 THE COURT'S ORDER, WHETHER OR NOT THE COURT INTENDED, BY
16 GRANTING THAT APPLICATION FOR ADDITIONAL DISCOVERY, TO RULE
17 THAT ANY UNUSED DEPOSITION SLOTS UNDER THE ORIGINAL SCHEDULING
18 ORDER THAT HADN'T BEEN USED ARE LOST.
19     I THINK IF THE COURT CAN GIVE US AND JUDGE INFANTE
20 GUIDANCE ON THOSE TWO ISSUES, WE CAN TAKE IT FROM THERE WITH
21 JUDGE INFANTE.
22     THE COURT:  WELL, LET ME ASK YOU THIS, MR. QUINN; AND
23 THIS MAY REVEAL MORE THAN I PROBABLY WANTED TO REVEAL RIGHT
24 NOW:  WHEN YOU BROUGHT THAT EX-PARTE APPLICATION FOR LEAVE TO
25 TAKE THE ADDITIONAL DEPOSITIONS, WAS NOT THE PREMISE THERE THAT

EXHIBIT ____1____

PAGE ____11____

1  YOU NEEDED TO TAKE ADDITIONAL DEPOSITIONS? THAT YOU HAD
2  ESSENTIALLY USED UP YOUR DEPOSITIONS AND YOU NEEDED MORE
3  DEPOSITIONS?
4       MR. QUINN: NO. THERE WERE DEPOSITIONS SCHEDULED.
5  WE HAD A DISCOVERY CUTOFF APPROACHING. WE HAD A LONG LIST OF
6  PEOPLE THAT WE WANTED TO DEPOSE; WE KNEW WE WERE GOING TO BE
7  GOING OVER THE LIMIT; BUT WE, AT NO POINT -- I THINK TO THE
8  CONTRARY, YOUR HONOR, WE SAID WE HADN'T USED UP ALL OF THE
9  SLOTS. WE JUST ANTICIPATED WE NEEDED TO GET THE CEILING
10  RAISED, KNOWING WHAT NEEDED TO BE DONE.
11       THE COURT: FROM 24 TO 64?
12       ALL RIGHT. VERY WELL.
13       MR. NOLAN?
14       MR. NOLAN: THANK YOU, YOUR HONOR.
15       I THINK WITH THE COURT'S CLARIFICATION, AND, IN
16  PARTICULAR, THE CLARITY WITH RESPECT TO IF SOMETHING IS PENDING
17  IN FRONT OF JUDGE INFANTE, IT WAS NOT THE INTENT OF THIS COURT
18  TO CIRCUMVENT ALL OF THE HARD WORK THAT JUDGE INFANTE HAS DONE.
19       AND I WANT TO START WITH THAT POLICY, IF YOU WOULD,
20  AND GO TO THE ADDITIONAL DEPOSITIONS THAT WERE, WE BELIEVE, NOT
21  ORDERED BY THE JANUARY 7TH ORDER, WITH RESPECT TO DOCUMENT
22  PRESERVATION AND COLLECTION. AND THAT'S THE GRONICH AND
23  BURKEVICH DEPOSITIONS.
24       AND THE REASON WHY, YOUR HONOR, WE DO NOT BELIEVE
25  THAT THEY WERE COVERED IN THE FIRST INSTANCE BY YOUR ORDER IS

1  I'M ALWAYS GOING TO MISPRONOUNCE THAT NAME. I
2  APOLOGIZE.
3       THE COURT: TIONGCO.
4       MR. NOLAN: THEY'RE NOT COVERED BY THE ORDER. AND
5  THIS SUBJECT HAS BEEN COMPLETELY ADDRESSED BY JUDGE INFANTE.
6       THE COURT: PUTTING THAT ASIDE, WHAT IS YOUR GENERAL
7  APPROACH?
8       MR. NOLAN: WITH RESPECT TO ANOTHER CATEGORY, AND
9  THAT IS -- YOU KNOW, WHAT IS ALSO CLEAR, I BELIEVE, AND WHAT WE
10  NEED TO LEAVE WITH TODAY -- IS THAT THE JANUARY 28TH DISCOVERY
11  CUTOFF APPLIED TO PHASE ONE --
12       THE COURT: IT DID.
13       MR. NOLAN: -- AND THAT WHETHER OR NOT MATTEL, FOR
14  ITS OWN CHOOSING IN THIS CASE, DECIDED FOR INTERNAL PURPOSES TO
15  DELAY PROVIDING PROPER NOTICE BEFORE THE EXPIRATION OF THE
16  DISCOVERY CUTOFF DATE, KNOWING FULL WELL WHAT THE DISCOVERY
17  CUTOFF DATE WAS, THEY SHOULD NOT BE ALLOTTED ADDITIONAL TIME
18  NOW TO TAKE THOSE DEPOSITIONS. AND THOSE ARE MOTIONS THAT ARE
19  PENDING BEFORE JUDGE INFANTE. AND WHEN YOU SAID MOTIONS THAT
20  ARE PENDING IN FRONT OF JUDGE INFANTE, DEALING WITH THE SERVICE
21  AND THOSE KINDS OF ISSUES, I'M ASSUMING -- AND I'M REALLY DOING
22  THIS MORE FOR THE RECORD, BECAUSE WE HAVE THIS HABIT OF NOT
23  AGREEING AFTER WE LEAVE HERE AS TO WHAT ACTUALLY OCCURRED --
24  THAT THOSE MATTERS ARE NOW BEFORE JUDGE INFANTE, AND THAT IF
25  JUDGE INFANTE, WHO HAS ESTABLISHED A RULE IN THIS CASE THAT TEN

1  THAT IN OUR PAPERS, AS YOU WELL NOW KNOW, THIS MATTER WAS
2  BROUGHT BEFORE JUDGE INFANTE; FULLY REVIEWED BY HIM; DETERMINED
3  THAT WITH RESPECT TO ALL BUT ONE TOPIC, TOPIC 39, WE HAD
4  PRODUCED WITNESSES THAT WERE MOST KNOWLEDGEABLE AND HAD GIVEN
5  VERY THOROUGH TESTIMONY.
6       AND WITH RESPECT TO TOPIC NUMBER 39, WHICH WAS THE
7  COLLECTION TOPIC, THAT WAS THE DEPOSITION THAT HE ORDERED US TO
8  COMPLY WITH; AND WE PRODUCED MR. KHARE FOR TWO ADDITIONAL DAYS
9  ON THAT VERY SUBJECT.
10       NOW, MATTEL, NOT SATISFIED WITH JUDGE INFANTE'S
11  RULING, DOESN'T APPEAL THAT; NOW TAKES YOUR ORDER, WHERE YOU DO
12  NOT IDENTIFY OR CALL OUT GRONICH AND TRAVONAVICH {SIC}, AND
13  SAYS, 'BUT YOU REFERRED TO A TOPIC'. AND WE RESPECTFULLY
14  SUBMIT, YOUR HONOR, AS CAREFUL AS I KNOW YOU ARE IN YOUR
15  ORDERS, THAT THAT IS STRETCHING IT, IN LIGHT OF WHAT WE'VE --
16  THE RECORD THAT WE'VE ALREADY SHOWN BEFORE JUDGE INFANTE.
17  BECAUSE MATTEL HAD NOT DEMONSTRATED TO YOU THAT THERE WAS ANY
18  INADEQUATE SHOWING OR TESTIMONY ON THE SUBJECT BY US. IN FACT,
19  WE STEPPED UP AND WE PRODUCED ALL OF THE WITNESSES, AND
20  JUDGE INFANTE HAS BLESSED IT, EXCEPT FOR KHARE; AND WE'VE NOW
21  PRODUCED IT.
22       THERE ARE DECLARATIONS IN THIS CASE WITH RESPECT TO
23  THE PRESERVATION, COLLECTION, AND DOCUMENTATION OF THESE
24  DOCUMENTS. I DON'T BELIEVE THAT IT'S APPROPRIATE TO ORDER THE
25  ADDITIONAL DEPOSITIONS OF GRONICH AND TRAVONAVICH {SIC}.

1  DAYS' NOTICE FOR DEPOSITIONS WAS REASONABLE UNDER THE
2  APPLICABLE RULES THAT WE WERE OPERATING UNDER, RULES THAT WERE
3  IMPOSED ON US BY MATTEL THROUGHOUT THIS GAME, THIS CASE, HAS
4  NOT CHANGED AS A RESULT OF TODAY'S ORDER.
5       THE COURT: I'M NOT GOING TO GIVE EITHER SIDE ANY
6  SOLACE AT THIS POINT. I DO NOT WANT TO SHORT-CIRCUIT
7  JUDGE INFANTE'S RULINGS. AND I'M ALSO NOT GOING TO, IN ANY
8  WAY, RESTRICT EITHER SIDE FROM APPEALING JUDGE INFANTE'S
9  RULINGS TO THIS COURT. SO I'M NOT GOING TO OPINE AT THIS POINT
10  AS TO WHETHER OR NOT I THINK THE TEN-DAY NOTICE IS REASONABLE
11  OR NOT REASONABLE, IS APPLICABLE OR SHOULD NOT BE APPLICABLE.
12  ALL I'M SAYING AT THIS POINT IS -- AND PRECISELY TO AVOID
13  GETTING INVOLVED IN TRYING TO SHORT-CIRCUIT JUDGE INFANTE'S
14  WORK, I'M JUST GOING TO PERMIT THAT TO PROCEED.
15       JANUARY 28TH WAS THE CUTOFF FOR PHASE ONE DISCOVERY.
16  ON JANUARY 7TH, WHEN I GAVE LEAVE FOR THOSE ADDITIONAL
17  DEPOSITIONS, APPROXIMATELY 40 ADDITIONAL DEPOSITIONS, I
18  CERTAINLY -- AND I THINK I MADE THIS PRETTY CLEAR IN THE
19  ORDER -- ENVISIONED THOSE TO BE DONE IN THE MONTH OF JANUARY.
20       I DID INDICATE, CERTAINLY IF THE PARTIES WANTED TO
21  STIPULATE, THAT THEY COULD CONTINUE THIS UNTIL FEBRUARY. AND
22  CERTAINLY FOR ANYTHING THAT WAS PROPERLY NOTICED OR PROPERLY
23  SERVED DURING THE MONTH OF JANUARY, BEFORE THE CUTOFF, AT LEAST
24  FROM THIS COURT'S PERSPECTIVE AT THIS POINT IN TIME, THAT MAY
25  HAVE TO PROCEED INTO FEBRUARY.

1   I UNDERSTAND THERE'S CHALLENGES TO THOSE SERVICES,
2   THERE'S CHALLENGES TO THOSE NOTICES; THAT NEEDS TO BE BROUGHT
3   TO JUDGE INFANTE; AND THEN, IF NECESSARY, APPEALED TO THIS
4   COURT.  BUT AT THE END OF THE DAY, THE ONLY LIMITATION I'M
5   PUTTING ON WHAT'S BEING CONSIDERED BY JUDGE INFANTE AND WHAT
6   WILL BE CONSIDERED BY THIS COURT OVER THE COURSE OF THE NEXT
7   TWO MONTHS IS THAT WE'RE JUST GOING TO LOOK AT PHASE ONE
8   ISSUES.
9        MR. NOLAN:  RIGHT.
10       AND I APOLOGIZE, YOUR HONOR.  I WASN'T TRYING TO BE
11  CLEVER AND GET -- BUT YOUR COMMENTS DO INVITE THIS FOLLOW-UP:
12       WHAT I AM SAYING IS THAT THE MOTIONS THAT ARE BEFORE
13  JUDGE INFANTE, WITH RESPECT TO WHETHER OR NOT TWO-DAY NOTICE IS
14  APPROPRIATE IN JANUARY, IS AN ISSUE TO BE DECIDED BY
15  JUDGE INFANTE.  WE RESERVE THE RIGHT TO TAKE AN APPEAL TO
16  YOUR HONOR, DEPENDING ON WHO WINS OR LOSES THAT ISSUE.  THAT'S
17  ALL I WAS TRYING TO SAY.
18       THE COURT:  THAT'S FINE.
19       MR. NOLAN:  SO I UNDERSTOOD THAT CATEGORY APPLIES TO
20  THOSE PEOPLE.
21       THE COURT:  AND I'M SURE JUDGE INFANTE WILL CONSIDER
22  THAT IN LIGHT OF THE TOTALITY OF THE CIRCUMSTANCES AND HE WILL
23  ISSUE WHATEVER ORDER HE BELIEVES IS APPROPRIATE; AND THE LOSING
24  SIDE CAN APPEAL TO THIS COURT.
25       MR. NOLAN:  BY THE WAY, ON ONE PIECE OF NEWS, WE WERE

1   ABLE TO, IN CERTAIN INSTANCES, STIPULATE WITH RESPECT TO
2   DEPOSITIONS.  IN FACT, THE DEPOSITION OF FRED LARIAN IS GOING
3   ON TODAY; AND WE'VE AGREED THAT IT WOULD STILL APPLY TO PHASE
4   ONE.
5        SO THERE WERE INSTANCES WHERE WE BELIEVED IT WAS
6   APPROPRIATE AND NOBODY WAS TRYING TO SHOVE PHASE TWO INTO PHASE
7   ONE.  WE'VE WORKED THOSE DIFFERENCES OUT.
8        I WANT TO TURN NOW TO WHAT I WOULD DESCRIBE AS THE
9   CATEGORY OF THREE:  MS. MORALES; MS. CABRERA; AND THE LAST ONE
10  IS SALAZAR.
11       THE COURT:  AND MEL WOODS.
12       MR. NOLAN:  AND MEL WOODS IS IN THIS CATEGORY.
13       THE COURT:  RIGHT.
14       MR. NOLAN:  NOW, THERE IS NO DISPUTE THAT EACH ONE OF
15  THESE PEOPLE WERE KNOWN TO MATTEL, CERTAINLY BY THEIR OWN
16  ADMISSION, AS OF DECEMBER 28TH, THEY WERE KNOWN AT THE TIME OF
17  THE JANUARY 7TH HEARING.  MATTEL DOES NOT CHOOSE AT THAT TIME
18  TO INCLUDE THEM IN THE LIST, DOES NOT REQUEST AND DOES NOT
19  ACCELERATE THE REQUEST, IF THEY DECIDED TO TAKE THESE
20  DEPOSITIONS.
21       AS WE LAY OUT IN THE PAPER, IN A PRETTY SORRY AND, WE
22  THINK, VERY SAD SET OF CIRCUMSTANCES, TRAGIC, TO BE HONEST WITH
23  YOU, YOUR HONOR, NOW --
24       THE COURT:  ADMITTEDLY, I HAVEN'T READ THE REPLY TO
25  THAT, BUT AS YOU LAY IT OUT, IT WAS UNUSUAL, IF NOTHING ELSE.

1        MR. NOLAN:  YOUR HONOR, THERE'S A LOT OF TRAGEDIES IN
2   THIS CASE.  I WILL GO A LONG WAY THINKING THAT HISPANIC WOMEN,
3   RAISING CHILDREN -- ONE OF WHICH IS IN MEDICAL SCHOOL -- HER
4   HUSBAND, A MENTAL PATIENT -- IS FIRED BECAUSE SHE SEWED AN A
5   CONCRETE FLOOR, NOT KNOWING WHAT SHE WAS SEWING UNTIL SOME
6   POINT IN TIME DOWN THE ROAD, NOW HAS TO LOSE HER JOB.
7        BUT SETTING THAT ASIDE -- AND ALSO BEING QUESTIONED
8   BY MR. DE ANDA, WHO HE HIMSELF HAS ADMITTED THAT HE MOONLIGHTS
9   AS AN EXPERT WITNESS ON THE SIDE.  IT'S A TRAGIC IRONY IN THIS
10  CASE.
11       BUT THE POINT HERE IS, YOUR HONOR, MATTEL
12  UNILATERALLY WORKED THE CLOCK THE WAY THEY CHOSE TO DO SO.
13  THEY INTERVIEWED THESE WOMEN -- I'M NOW TALKING ABOUT CABRERA
14  AND MORALES -- WITHOUT COUNSEL; BROUGHT THEM IN; SUBJECTED THEM
15  TO, IN CABRERA'S INSTANCE, A VERY LENGTHY INTERVIEW, THAT WE'VE
16  NOW BEEN PROVIDED THE AUDIOTAPE OF.  THEY CONDUCTED A SEARCH OF
17  HER HOUSE, WITH A WOMAN WHO CAN BARELY SPEAK ENGLISH ASKING
18  THAT THE INTERVIEW BE CONDUCTED IN SPANISH.  THEY REFUSE IT.
19  BUT THIS IS ALL ON THEIR OWN TIME.  THEY MAKE A CHOICE.
20       THEN, YOUR HONOR, AFTER THEY'VE COMPLETELY
21  INTERVIEWED THESE PEOPLE, FIRED THEM AND DEALT WITH WHATEVER
22  THEY WANT, THEY THEN, ON THE 22ND OR 23RD, TRY TO GO OUT AND
23  SERVE THE DEPONENTS.  THE DEPONENT GETS COUNSEL.  COUNSEL IS
24  PRESENT IN THE COURTROOM TODAY.  THAT COUNSEL SAYS, 'WE'RE NOT
25  GOING TO SIT FOR A DEPOSITION' -- WORDS TO THE EFFECT, 'WE'RE

1   NOT GOING TO SIT FOR A DEPOSITION ON ONE OR TWO DAY'S NOTICE.
2   THAT'S NOT REASONABLE.  AND, MORE IMPORTANTLY, YOU'VE GOT TO
3   GIVE DOCUMENTS,' AND STUFF LIKE THAT.
4        SO MATTEL JUST RAN OUT THE CLOCK, YOUR HONOR.  IF
5   THAT WAS PHASE ONE, THEY KNEW IT.  THEY UNILATERALLY DECIDED
6   NOT TO INCLUDE IT IN THE LIST THAT THEY SUBMITTED TO YOUR
7   HONOR.  THEY WAITED UNTIL TWO OR THREE DAYS BEFORE THE END OF
8   THE DEPOSITION.  THAT'S PENDING IN FRONT OF JUDGE INFANTE.
9        THE COURT:  AND YOUR PRIMARY ARGUMENT THERE,
10  THOUGH -- I READ ALL OF THE INFORMATION YOU PROVIDED ABOUT THE
11  CIRCUMSTANCES OF THE INTERROGATION, OR THE INTERVIEW OR
12  WHATEVER IT WAS.  BUT YOUR ARGUMENT GOES BACK TO THIS NUMBER
13  COUNTING THING, WHETHER OR NOT THEY HAD THE ADDITIONAL SIX THAT
14  THEY CLAIMED.  AND IF THEY DID, THEN THEY NOTICED THEM BEFORE
15  THE CUTOFF.  IF THEY DON'T, THEN THEY DIDN'T.
16       MR. NOLAN:  THAT'S ONE ARGUMENT.
17       AND THEN THE SECOND ARGUMENT -- AND WE THINK THE
18  COUNT IS VERY SIMPLE.  THEY HAD 22 DEPOSITIONS IN THE BAG.
19  THEY HAD TWO MORE THAT WERE SET AT THE TIME WE CAME BEFORE YOU
20  ON JANUARY 7TH.  WE MADE THESE ARGUMENTS CONSISTENTLY, AND I AM
21  STRUCK BY THE FACT THAT WE HAD TO COME IN HERE WHEN THEY STILL
22  HAD DEPOSITIONS ON THE TABLE, APPARENTLY BY THEIR COUNT, AND
23  SAY, 'OH, NOW WE NEED ADDITIONAL DISCOVERY.'  I THINK THEY'RE
24  TRYING TO REINTERPRET WHAT THEIR POSITIONS WERE ORIGINALLY.
25       NEVERTHELESS, THEY WERE OUT OF DEPOSITIONS EXCEPT FOR

FEBRUARY 4, 2008          ED CV 04-9059-SGL          EXHIBIT ____1____

PAGE ____3____

1 WHAT YOU ORDERED ON THE JANUARY 7TH DATE.
2 THAT'S OUR FIRST ARGUMENT.
3 THE SECOND ARGUMENT, HOWEVER, YOUR HONOR, IS THAT
4 EVEN IF THEY'RE RIGHT AND THEY HAD THE OPTION OF TAKING
5 ADDITIONAL DEPOSITIONS, THEY WELL KNEW OF THESE INDIVIDUALS AND
6 THEY COULD HAVE PROVIDED PROPER NOTICE.
7 THE COURT: THIS GETS BACK TO JUDGE INFANTE'S
8 POSITION OF THE TEN DAYS.
9 MR. NOLAN: YES.
10 THE COURT: AND, AGAIN, THAT'S NOT -- NO. I
11 UNDERSTAND THAT THAT'S --
12 MR. NOLAN: THAT'S THE OTHER POINT.
13 THE COURT: YOU SAID YOU WERE ADDRESSING A THIRD
14 AREA.
15 THE ONE I'D LIKE YOU TO ADDRESS -- AND I'LL PROBABLY
16 NEED TO HEAR MORE FROM MR. QUINN OR MR. COREY ON THIS -- IS
17 THOSE THAT WERE NOT SERVED WITH SUBPOENAS AND ARE NOT THE TYPE
18 OF DEPONENT THAT CAN BE -- THERE'S A CATEGORY THAT APPEARS TO
19 HAVE BEEN EXPIRED.
20 MR. NOLAN: RIGHT. LET ME ADDRESS THAT.
21 YOU KNOW, THERE ARE CONSEQUENCES.
22 I THINK I CAN QUOTE THIS, BECAUSE IT WAS MR. ZELLER
23 WHO SAID, AND IF MR. QUINN SAYS THIS IS NOT HIS REACTION -- WE
24 BOTH HAVE THE SAME REACTION TO YOUR ORDER. BOTH OF US VIEWED
25 THE ORDER AND TOLD OUR RESPECTIVE COLLEAGUES, THIS IS AN EDICT

1 AN OBSERVATION; IT'S NOT PART OF MY ARGUMENT.
2 THE COURT: ALL RIGHT. VERY WELL.
3 MR. NOLAN: HE MIGHT SAY, 'GEE, YOU KNOW, IN THE
4 BEGINNING OF THE LITIGATION, THE O'MELVENY FIRM SAID, "IF YOU
5 WANT TO CONTACT CERTAIN PEOPLE" -- NOW, THIS IS NOT ALL OF THE
6 CATEGORY -- "CALL US FIRST".'
7 YOUR HONOR, THAT IS A RED HERRING IN THIS CASE,
8 BECAUSE WHETHER OR NOT O'MELVENY AND MEYERS SAID THAT, YOU ONLY
9 HAVE TO GO TO THE JANUARY 7TH HEARING, WHEN WE WERE FACED WITH
10 SOMETHING SIMILAR, AND THAT IS -- YOU RECALL AT THE VERY END,
11 THERE WAS A DISCUSSION ABOUT THE ACCEPTANCE OF SUBPOENAS, AND
12 YOU SAID, 'I DON'T HAVE THAT IN FRONT OF ME.'
13 WELL, YOUR HONOR, IT WAS TRUE, IT WAS NOT IN FRONT OF
14 YOU. AND ALTHOUGH WE COULD NOT TALK TO THEIR PEOPLE, BECAUSE
15 THEY WERE REPRESENTED BY QUINN EMANUEL, QUINN EMANUEL WOULD NOT
16 ACCEPT SERVICE. WE HAD TO GO OUT, LOCATE THE PEOPLE, RETAIN
17 SERVICE PROCESSORS, AND GET THEM SERVED.
18 THERE WAS NO GAME-PLAYING HERE. ALL WE WERE DOING AT
19 ALL TIMES WAS APPLYING THE RULES OF ENGAGEMENT THE WAY THEY
20 WERE BEING APPLIED AGAINST US; AND I IMPLORE YOU, YOUR HONOR,
21 TO DO THE SAME.
22 THE COURT: COUNSEL, I GUESS THE ONLY THING THAT I DO
23 TAKE EXCEPTION TO -- WHEN STIPULATIONS ARE ENTERED INTO BETWEEN
24 PARTIES, THEY'RE ENTERED INTO BETWEEN THE PARTIES; THROUGH
25 THEIR ATTORNEYS, BUT IT'S BETWEEN THE PARTIES. SO TO THE

1 OF MUTUAL SELF-DESTRUCTION, ASSURED SELF-DESTRUCTION, IN TERMS
2 OF THE AMOUNT OF EFFORT THAT WAS REQUIRED BY ALL OF US.
3 WE SAW THAT -- WE THOUGHT WHAT YOU WERE SAYING IS,
4 'YOU KNOW, IF YOU, MGA, IF YOU ARE REALLY TELLING ME YOU NEED
5 TO TAKE TEN DEPOSITIONS, THEN STEP UP AND DO WHAT IS REQUIRED
6 TO TAKE THOSE DEPOSITIONS. GOD BLESS YOU IF YOU CAN DO IT. IF
7 YOU CAN'T, SO BE IT.' BUT I UNDERSTOOD THAT, IN A SENSE, YOU
8 WERE REALLY CALLING MY BLUFF IN THE SENSE OF WHETHER OR NOT I
9 NEEDED THOSE TEN. WE NEEDED THOSE TEN.
10 WE PLAYED WITH THE UNDERSTANDING THAT JULY 28TH DATE
11 WAS GOING TO HOLD.
12 THE COURT: JANUARY 28TH.
13 MR. NOLAN: I'M SORRY. JANUARY 28TH.
14 MATTEL, ON THE OTHER HAND, YOUR HONOR, NOW WANTS -- I
15 THINK THEY INTERPRETED IT THE SAME AWAY, BUT THEY DID NOT USE
16 REASONABLE MEANS TO GO OUT AND ENSURE THAT THEY COULD NOTICE UP
17 AND TAKE THE DEPOSITIONS.
18 NOW THEY WANT ADDITIONAL TIME TO DO THAT.
19 I DON'T THINK THAT'S FAIR, YOUR HONOR. FIRST OF ALL,
20 I DON'T THINK IT'S FAIR. I THINK YOUR ORDER WAS QUITE CLEAR ON
21 IT.
22 THE COURT: COUNSEL, I DON'T DISAGREE WITH YOU ON
23 THAT, SO PERHAPS I SHOULD BE HEARING FROM MR. QUINN ON THIS.
24 MR. NOLAN: BUT I'M GOING TO RAISE ONE THING THAT I
25 THINK HE'S GOING TO ANTICIPATE. AND THAT IS -- AND IT'S JUST

1 EXTENT THAT YOUR CLIENT ENTERED INTO AN AGREEMENT THROUGH
2 O'MELVENY & MYERS, THAT APPLIES TO YOUR PARTY. AND THE FACT
3 THAT THEY HAVE REPLACED O'MELVENY & MYERS WITH SKADDEN ARPS,
4 YOURSELF, THAT DOESN'T EVISCERATE THE AGREEMENT.
5 I'M NOT SAYING WHETHER THIS IS GOOD OR NOT. THIS IS
6 A GENERAL PRINCIPAL. I DON'T KNOW HOW IT APPLIES. BUT THIS IS
7 THE TYPE OF THING THAT IF THERE'S A DISPUTE OVER WHETHER OR NOT
8 A DEPOSITION WAS PROPERLY NOTICED OR PROPERLY SERVED, PURSUANT
9 TO AN AGREEMENT OR OTHERWISE, AGAIN, THAT GOES TO
10 JUDGE INFANTE.
11 MR. NOLAN: IN PRINCIPAL, YOUR HONOR, I AGREE WITH
12 YOU, AND I DON'T BELIEVE THERE'S BEEN AN INSTANCE WHERE WE HAVE
13 STEPPED BACK FROM ANYTHING THAT O'MELVENY COMMITTED TO.
14 ALL I'M SAYING IS THAT IN REGARDS TO -- AND MAYBE I
15 SHOULDN'T HAVE MADE THIS OBSERVATION; IT'S NOT GOING TO MAKE
16 THIS ARGUMENT -- BUT ALL MY POINT IS, YOUR HONOR, IS THAT THAT
17 WAS NOT AN AGREEMENT OR A STIPULATION TO ACCEPT SERVICE OF A
18 DEPOSITION ON THREE MONTH'S NOTICE OR TWO DAY'S NOTICE.
19 AND THE SAME RULE HAS BEEN APPLIED BY MATTEL TO US,
20 AS EVIDENCED BY THE LAST TIME WE WERE BEFORE YOU.
21 I PROBABLY HAVE LEFT OUT SOME OF THE CATEGORIES OF
22 INDIVIDUALS, BUT I THINK THAT GIVEN THE OVERVIEW THAT THE COURT
23 HAS PROVIDED TO US, I THINK WE HAVE A GOOD UNDERSTANDING AS TO
24 WHAT'S LEFT; AND WE'LL COOPERATE.
25 THE COURT: I THINK IT ADDRESSES -- EXCEPT FOR THIS

Page 42

1  CATEGORY NUMBER THREE, THE NOT-SERVED -- THOSE POTENTIAL
2  DEPONENTS WHO HAVE NOT BEEN SERVED WITH A SUBPOENA. IT
3  ADDRESSES THE THIRD-PARTY DEPONENTS; IT ADDRESSES THE
4  OUT-OF-COUNTRY.
5     MR. NOLAN: THERE'S ONE THAT I DID NOT ADDRESS, YOUR
6  HONOR; AND I APOLOGIZE. EVERYTHING SEEMS, AT THIS LEVEL, TO BE
7  VERY CLEAR. WHEN YOU DROP DOWN, LIKE, TWO FEET, YOU'LL SEE
8  WHAT THE TROUBLE IS.
9     THERE WAS AN ISSUE THAT MR. QUINN ASKED CLARIFICATION
10 ON, AND THAT HAD TO DO WITH -- YOU ORDERED THESE 30(B)(6)
11 WITNESSES, SO, MY GOSH, THEY SHOULD SIT FOR THEM, AND THEN HE
12 CONCEDED THAT MGA, MEXICO IS REALLY PHASE TWO ISSUES, BUT
13 THERE'S OUTSTANDING -- YOU ORDERED A 30(B)(6) DEPOSITION
14 AGAINST MGA.
15    YOUR HONOR, THERE WERE 161 CATEGORIES SET FORTH IN
16 THAT 30(B)(6). WE DID NOT BELIEVE, BECAUSE THAT WAS NOT THE
17 OPPORTUNITY OF THE JANUARY 7TH HEARING, TO GO THROUGH WHAT
18 TYPICALLY WOULD OCCUR AND SAY 161 CATEGORIES ON THE LAST MONTH
19 OF TRIAL SEEMS A LITTLE BIT LARGE.
20    THAT MATTER IS PENDING BEFORE JUDGE INFANTE IN TERMS
21 OF WHERE WE OBJECTED, BECAUSE THEY'VE EITHER BEEN DUPLICATIVE;
22 THEY'RE NOT THE RIGHT TOPICS FOR 30(B)(6) AS APPLIED TO THE
23 RULES IN THIS CASE. THAT MATTER IS PENDING BEFORE
24 JUDGE INFANTE.
25    AND I WANT TO BE ABSOLUTELY CLEAR, WITHOUT PREVIEWING

Page 43

1  THE OUTCOME OF IT, THAT IT'S UNDERSTOOD, AS WE WALK OUT OF
2  HERE, THAT THAT MOTION IS IN FRONT OF JUDGE INFANTE. HE CAN
3  RULE ON IT HOWEVER HE MAY WISH. WE MAY COME BACK TO YOU. BUT
4  THAT WE'RE NOT WALKING OUT OF HERE COMMITTED AND ORDERED TO SIT
5  FOR A 30(B)(6) ON 161 TOPICS. THAT'S THE POINT.
6     AND MY ONLY LAST COMMENT, YOUR HONOR, WAS WITH
7  RESPECT TO THIS --
8     THE COURT: COUNSEL, LET ME STOP YOU RIGHT THERE.
9     I DID ORDER THE 30(B)(6) DEPOSITION TO GO FORWARD.
10 THERE WAS NO CHALLENGE AT THE TIME TO THE TOPICS. I UNDERSTAND
11 YOU NOW HAVE A CHALLENGE BEFORE JUDGE INFANTE; AND HE'LL
12 RESOLVE THAT. THAT'S WHERE WE'RE AT.
13    MR. NOLAN: RIGHT. EXACTLY, YOUR HONOR, BECAUSE THE
14 HEARING THAT WE HAD ON MOTIONS JUST TO EXTEND WAS NOT -- WE DID
15 NOT -- AND NOBODY DISCUSSED IT AT THE TIME, NOR WAS IT FRAMED
16 THAT WAY. TO NOW START ATTACKING THE VARIOUS SUBTOPICS --
17    THE COURT: FAIR ENOUGH. THAT'S BEFORE JUDGE INFANTE
18 RIGHT NOW, AND I'M NOT GOING TO OPINE ON THAT.
19    MR. NOLAN: YOUR HONOR, THE LAST CATEGORY THAT I WANT
20 TO MAKE CERTAIN I'VE MADE MY POINT CLEAR ON; AND THAT IS THAT
21 CATEGORY THAT WAS ORDERED BUT NOT SERVED WITHIN THE PROPER
22 TIME, FOR WHATEVER REASON.
23    THE COURT: RIGHT.
24    MR. NOLAN: SINCE WE ALL WATCHED THE GAME YESTERDAY,
25 HERE'S THE ANALOGY THAT I WOULD USE:

Page 44

1  I BET YOU THAT TOM BRADY AND THE PATRIOTS WOULD HAVE
2  LOVED TO HAVE HAD ONE MORE SHOT. BUT, YOU KNOW, THE RULES WERE
3  THAT THE TIME ENDED IN THE FOURTH QUARTER.
4     YOU SET A VERY CLEAR RULING ON JANUARY 28TH; IF THESE
5  PEOPLE WERE NOT SERVED -- AND WE COOPERATED. WE SAID WHENEVER
6  -- AND IF YOU CAN SERVE THEM, WE'LL MAKE OURSELVES AVAILABLE.
7  WE HAD 12 TRACKS OF DEPOSITIONS ON THE 28TH, YOUR HONOR. FOR
8  WHATEVER REASON, MATTEL CHOSE NOT TO TRY TO GET THOSE PEOPLE
9  SERVED QUICKER. WE THINK IT'S BECAUSE THEY DECIDED THAT MAYBE,
10 IN THE GRAND SCHEME OF THINGS, IT WASN'T RELEVANT.
11    SO I SUBMIT ON THAT, YOUR HONOR.
12    THE COURT: THANK YOU, COUNSEL.
13    MR. QUINN?
14    MR. QUINN: YOUR HONOR, WE SET FORTH IN OUR PAPERS
15 THE EFFORTS THAT WE MADE TO SERVE THOSE PEOPLE. THE COURT WILL
16 EITHER FIND THOSE ADEQUATE AND THAT WE SHOULD GET A CHANCE TO
17 TRY FURTHER, OR THE COURT WON'T. BUT IT WASN'T LIKE WE SAT
18 ON -- THOSE PEOPLE WERE LISTED IN THE ORDER, AND WE DID TRY,
19 AND WE PUT BEFORE THE COURT --
20    THE COURT: I RECOGNIZE THAT YOU TRIED. I DID READ
21 THOSE. BY RULING THAT THE JANUARY 28TH CUTOFF DATE IS A CUTOFF
22 DATE, I'M NOT SUGGESTING THAT YOU DIDN'T TRY.
23    MR. QUINN: RIGHT.
24    THE COURT: IT IS WHAT IT IS.
25    I SUSPECT, AS WE GO FORWARD IN THE NEXT MONTH AND A

Page 45

1  HALF, I'M SURE THERE'S ALL KINDS OF ADDITIONAL DISCOVERY THAT A
2  NUMBER OF PARTIES WOULD LIKE TO BE ABLE TO TAKE. IT'S GOING TO
3  BE THE WAY IT IS IN THIS CASE. GIVEN ITS NATURE, GIVEN THE
4  BREADTH OF IT, WE COULD PROBABLY DO DISCOVERY FOR YEARS AND
5  STILL WANT MORE.
6     MR. QUINN: ALL GOOD THINGS HAVE TO COME TO AN END.
7  WE UNDERSTAND THAT, YOUR HONOR.
8     THE COURT: AND EVEN NOT SO GOOD THINGS.
9     MR. QUINN: EVEN NOT SO GOOD THINGS.
10    BUT THESE ARE INDIVIDUALS WHERE -- YOU KNOW, WE MADE
11 A SHOWING, THE COURT SAID, 'OKAY, THERE'S GOOD CAUSE.'
12    THE COURT: I DID. AND I GAVE YOU A DEADLINE,
13 THOUGH; THAT DEADLINE HAS COME AND GONE.
14    MR. QUINN: IN THE CASE OF MR. MCFARLAND, YOUR HONOR,
15 WE HAVE A LAWYER WHO -- YOU KNOW, I WAS ALWAYS BROUGHT UP THAT
16 LAWYERS SHOULD NOT EVADE SERVICE, AND IF SOMEBODY CONTACTS YOU
17 AND SAYS, 'I HAVE A' -- WE SENT THE MAN AN E-MAIL, AND HE
18 OPENED IT. I THINK A LAWYER IS IN A DIFFERENT CATEGORY. AND
19 HE'S GOT THREE CLIENTS WHO SOMEHOW WE COULDN'T TRACK DOWN
20 EITHER. I DON'T KNOW, MAYBE THAT SHOULD BE TREATED
21 DIFFERENTLY.
22    THE COURT: I UNDERSTAND YOUR FRUSTRATION, COUNSEL.
23    MR. QUINN: YOUR HONOR, JUST TO RESPOND TO
24 MR. NOLAN'S COMMENTS ABOUT HOW WE WOULDN'T ACCEPT SERVICE AND
25 APPLY THE SAME RULE. REMEMBER THAT MOMENT AT THE END OF THE

12 (Pages 42 to 45)

EXHIBIT_____
PAGE_____5_____

Page 46

1  LAST HEARING?
2      WE SAID WE COULDN'T ACCEPT SERVICE BECAUSE WE HADN'T
3  SPOKEN TO THE INDIVIDUALS.  WE ENDED UP ACCEPTING EIGHT OUT OF
4  THE TEN.  THE TWO WE DIDN'T ACCEPT FOR, WE COULDN'T FIND.  SO
5  ANY SUGGESTION THAT WE DIDN'T COOPERATE, THAT'S -- WE'RE
6  ACCUSED -- THE POT CALLING THE KETTLE BLACK SIMPLY ISN'T
7  ACCURATE HERE.
8      WOODS, CABRERA, MORALES, SALAZAR.
9      THE COURT:  YES.
10     MR. QUINN:  NOW WE HAVE TO GO BACK TO DECEMBER, WHEN
11  THE COURT ORDERED VICTORIA MARLOW TO SIT FOR DEPOSITION.  AND
12  VICTORIA MARLOW'S COUNSEL WANTED IT TO BE IN JANUARY.  THERE'S
13  A DISCUSSION, 'WE NEED TO DO IT SOONER BECAUSE WE DON'T KNOW
14  WHAT WE'RE GOING TO FIND OUT IN VICTORIA MARLOW'S DEPOSITION.'
15     THE COURT:  AND I UNDERSTAND WHAT YOU FOUND OUT.
16     MR. QUINN:  IN THE MEANTIME, WE HAD ALREADY FILED,
17  HAD ON CALENDAR, THE MOTION FOR ADDITIONAL DISCOVERY, AND WHEN
18  I WAS BEFORE THE COURT ON JANUARY 7TH, I SAID, YOUR HONOR, WE
19  TOOK MARLOW'S DEPOSITION AFTER THIS MOTION WAS FILED, AND WE
20  LEARNED ABOUT WOODS, CABRERA, MORALES, AND SALAZAR; SO THAT'S
21  WHY THEY ARE NOT IDENTIFIED IN OUR PAPERS.
22     BUT I RELATED THAT TO THE COURT.  AND I SAID, 'THESE
23  ARE PEOPLE THAT, OBVIOUSLY, WE NEED TO DEPOSE.  THIS IS PRETTY
24  AMAZING THAT THERE ARE THREE OTHER MATTEL EMPLOYEES WHO HAVE
25  BEEN WORKING ON BRATZ.'

Page 47

1      AT THE END OF THE DAY, THOUGH, YOUR HONOR, I THINK
2  THAT DOES COME DOWN TO A QUESTION OF COUNTING.  IF WE DIDN'T
3  HAVE THE NUMBER OF UNUSED DEPOSITIONS UNDER THE ORIGINAL
4  SCHEDULING ORDER, I WOULD BE ASKING THE COURT -- BECAUSE I
5  THINK THERE IS GOOD CAUSE -- TO TAKE THOSE DEPOSITIONS, BECAUSE
6  THEY ARE SO CENTRAL TO THE CASE.
7      THE COURT:  YOU WOULD HAVE ASKED THE COURT.
8      MR. QUINN:  I WOULD HAVE ASKED THE COURT.
9      THE COURT:  I DO WANT TO GIVE YOU AN OPPORTUNITY TO
10  RESPOND.  I HAVEN'T READ THE REPLY, AND MAYBE THE RESPONSE IS
11  IN THERE; BUT THERE HAVE BEEN SOME PRETTY SERIOUS ALLEGATIONS
12  MADE CONCERNING THE MANNER OF QUESTIONING THESE WITNESSES.  I'D
13  LIKE TO GIVE YOU A CHANCE TO RESPOND TO THAT.
14     MR. QUINN:  WELL, I WASN'T INVOLVED IN DOING THE
15  REPLY TO THAT.  THE COURT HAS THE REPLY FOR THE COURT.  WE HAVE
16  A VERY DIFFERENT PERSPECTIVE ON WHAT HAPPENED THERE.
17     THE COURT:  COULD SOMEONE SPEAK TO THAT FROM MATTEL
18  WHO'S PRESENT?
19     MR. COREY:  I ACTUALLY CAN'T.
20     MR. QUINN:  HE CAN'T.
21     BUT, YOUR HONOR, THESE ARE INDIVIDUAL -- SUPPOSE THEY
22  HAD NOT BEEN TERMINATED, YOUR HONOR.  SUPPOSE THEY HAD NOT BEEN
23  TERMINATED.  MGA WOULD BE TELLING US, 'YOU TOLERATE
24  MOONLIGHTING; NOT JUST ANY MOONLIGHTING; WE TOLERATED PEOPLE
25  WORKING ON BRATZ.'

Page 48

1      THINK ABOUT IT FOR A MOMENT.
2      THEY'RE SAYING IT WAS OKAY FOR CARTER BRYANT --
3      THE COURT:  I DON'T THINK ANYONE FAULTS THE
4  TERMINATION ITSELF; IT'S MORE THE MANNER IN WHICH IT ALL CAME
5  ABOUT.
6      MR. QUINN:  I CAN'T GET INTO THE -- I CAN'T DISCUSS
7  THE DETAILS OF THAT, YOUR HONOR.  I CAN'T RESPOND TO THOSE
8  SPECIFIC ALLEGATIONS, BECAUSE I'M JUST NOT FAMILIAR WITH THEM.
9      THERE IS A REPLY ON THAT ISSUE.
10     WE CAN, ON MONDAY, WHEN WE'RE GOING TO BE BACK, IF
11  THE COURT WISHES TO HEAR ABOUT THAT.
12     THE COURT:  YOU MIGHT WANT TO HAVE A RESPONSE
13  PREPARED.  I'LL TAKE A LOOK AT THE PAPERS ON THAT.
14     MR. QUINN:  ALL RIGHT.
15     THE COURT:  OTHERWISE, IT'S CLEAR WHERE I'M GOING
16  WITH THIS, TO YOU?
17     MR. QUINN:  NOT ENTIRELY.
18     THE COURT:  ALL RIGHT.  WHICH PART OF IT IS NOT
19  CLEAR?
20     MR. QUINN:  THE COUNTING ISSUE, YOUR HONOR.  I THINK
21  WE DO NEED SOME GUIDANCE ABOUT WHETHER -- IF WE TOOK A
22  DEPOSITION --
23     THE COURT:  THAT COUNTS AS ONE.
24     MR. QUINN:  IF WE TAKE A DEPOSITION THAT WE GOT LEAVE
25  TO TAKE THAT WAS ON THE LIST AS A RESULT OF THE JANUARY 7TH

Page 49

1  ORDER, DOES THAT COUNT AGAINST THE ORIGINAL 24?
2      WE'VE BEEN TOLD THAT IF WE TAKE A DEPOSITION THAT WAS
3  ON THAT LIST, THAT COUNTS AGAINST THE ORIGINAL 24.
4      THE COURT:  THE COURT GRANTED YOU LEAVE TO TAKE
5  ADDITIONAL DEPOSITIONS.
6      MR. QUINN:  BUT I'M ASSUMING THAT MEANS THEY WERE IN
7  ADDITION TO THE 24.
8      THE COURT:  I TRUST JUDGE INFANTE WILL BE ABLE TO
9  TAKE THE COURT'S ORDER, GRANTING YOU LEAVE TO TAKE ADDITIONAL
10  DEPOSITIONS, AND THEN DETERMINE HOW MANY OTHER DEPOSITIONS YOU
11  HAVE TAKEN, ADD THEM UP, AND SEE IF YOU HAVE ANY ADDITIONAL
12  ONES, SO AS TO AFFORD YOU THE ABILITY TO HAVE NOTICED THE
13  DEPOSITIONS OF THESE FOUR INDIVIDUALS:  MS. CABRERA,
14  MS. MORALES, MS. SALAZAR, AND MR. WOOD.
15     MR. QUINN:  IS IT OUT OF LINE, YOUR HONOR, FOR ME TO
16  ASK WHETHER THE COURT IS SAYING THAT THOSE ARE ADDITIONAL TO
17  THE 24?  THAT'S A VERY BASIC ISSUE THAT WE'VE HAD DISAGREEMENT
18  ON.
19     THE COURT:  THE ORDER GAVE YOU LEAVE TO TAKE
20  ADDITIONAL DEPOSITIONS.
21     I DON'T KNOW WHAT ELSE IT WOULD BE OTHER THAN
22  ADDITIONAL TO THE 24.
23     MR. QUINN:  ALL RIGHT.
24     THE COURT:  DO YOU DISAGREE WITH THAT, MR. NOLAN?
25     I MEAN, I UNDERSTAND YOU DISAGREE WITH HOW THEY

13 (Pages 46 to 49)

EXHIBIT____1____
PAGE____16____

Page 50

1 COUNTED, BUT YOU'RE NOT SUGGESTING THAT THE DEPOSITIONS I
2 AFFORDED ON JANUARY 7TH WERE NOT ANYTHING OTHER THAN BEING IN
3 ADDITION TO THE 24 THAT EACH SIDE HAD?
4     MR. NOLAN:  WE MADE THAT POINT IN THE PAPERS, BECAUSE
5 CANDIDLY, YOUR HONOR, IT WASN'T CLEAR.  IT'S AN ARGUMENT
6 THAT WE'VE MADE BECAUSE, WHY DID THEY COME HERE AND ASK FOR
7 ADDITIONAL DISCOVERY IF THEY WERE GOING TO STILL HAVE SOME IN
8 THEIR POCKET THAT THEY WEREN'T GOING TO DISCLOSE TO ANYBODY?
9     BUT OUR PRIMARY ARGUMENT WAS ALWAYS THAT THE REASON
10 WHY WE WERE THERE WAS THAT THEY WERE OUT OF DEPOSITIONS.  THEY
11 HAD 22 THEY HAD ALREADY TAKEN; TWO WERE NOTICED.  AND THEN YOU
12 GAVE THEM AN ADDITIONAL -- SOMEWHERE BETWEEN 40 AND 50
13 DEPOSITIONS.
14     BUT BY ALL ACCOUNTS, ONE THING THAT'S FOR CERTAIN,
15 THESE THREE INDIVIDUALS, ALTHOUGH KNOWN TO MATTEL, WERE NOT
16 INCLUDED AT ANY TIME AND WERE NOT NOTICED.  THEY WERE ARGUED
17 BEFORE YOUR HONOR ON THE 7TH, BUT THEY'RE NOT INCLUDED.
18     THE COURT:  I WILL SAY THIS, TO MAYBE JUST
19 SHORT-CIRCUIT SOME CONFUSION, BECAUSE IT IS CLEAR TO THE COURT.
20     THE TOTAL NUMBER OF DEPOSITIONS WAS 40; CORRECT?
21     MR. QUINN:  24 A SIDE.
22     OH, I'M SORRY.  IN THE JANUARY 7TH ORDER?
23     THE COURT:  YES.
24     MR. QUINN:  IT WAS 40 SOMETHING.  I DON'T KNOW THE
25 NUMBER, YOUR HONOR.

Page 51

1     MR. NOLAN:  I BELIEVE IT WAS 40, PLUS TEN ON OUR
2 PART; ALL IN ALL, IT WAS 50.
3     THE COURT:  AND YOU HAD PREVIOUSLY BEEN EACH AFFORDED
4 24.
5     THERE IS NO QUESTION, TO THE COURT'S THINKING -- AND
6 I WILL MAKE THIS CLEAR TODAY -- THAT THE 40 I AWARDED TO MATTEL
7 AND THE TEN ADDITIONAL ONES I AWARDED TO MGA WERE IN ADDITION
8 TO THE 24 THAT THEY RECEIVED.
9     NOW, I WILL LEAVE IT TO JUDGE INFANTE TO COUNT UP THE
10 NUMBER OF DEPOSITIONS THAT HAD BEEN TAKEN PRIOR TO YOUR
11 NOTICING THESE FOUR ADDITIONAL ONES.
12     IF THAT NUMBER COMES UP TO BE 20 OR LESS, THEN
13 THEY'RE IN.  IF THAT NUMBER COMES UP TO BE 24 OR MORE, THEN
14 THEY'RE OUT.  AND I'M NOT AT THIS POINT CONSIDERING ARGUMENTS
15 FOR GOOD CAUSE, TO INCLUDE OR NOT INCLUDE.  SIMILARLY, I'M NOT
16 GOING TO COUNTENANCE ARGUMENTS TO SAY THAT THEY SHOULDN'T BE
17 BECAUSE THEY KNEW ABOUT THESE PEOPLE BEFORE.  WE HAVE A
18 DEADLINE.  AS YOU SAY, THE CLOCK EXPIRED.  THEY WERE EITHER
19 PART OF THE NUMBER THAT THEY COULD TAKE OR THEY WEREN'T.
20     I ASSUME THAT YOU CAN SIT DOWN AND YOU CAN IDENTIFY
21 FOR JUDGE INFANTE EXACTLY THE NUMBER OF DEPOSITIONS,
22 PARTICULARLY NOW, THAT YOU'VE TAKEN.  AND THAT'S WHY, AS FAR AS
23 MR. GRONICH AND MR. TIONGCO ARE CONCERNED --
24     WOULD THAT MAKE IT 42, MR. QUINN?
25     MR. QUINN:  YOUR HONOR, I WASN'T SURE 40 WAS THE

Page 52

1 NUMBER.
2     THOSE TWO INDIVIDUALS WERE REFERENCED IN THOSE
3 PAPERS.
4     THE COURT:  I DON'T WANT YOU TO LEAVE TODAY -- WE
5 SHOULD BE ABLE TO ANSWER THIS QUESTION.  THERE'S ENOUGH LAWYERS
6 AND THERE'S ENOUGH STUFF IN THIS ROOM THAT WE SHOULD BE ABLE TO
7 ANSWER THIS QUESTION PLAINLY TO THE COURT.
8     HOW MANY DEPOSITIONS DID I AUTHORIZE EXPRESSLY ON
9 JANUARY 7TH?  IF WE NEED TO TAKE A BRIEF RECESS TO COME UP WITH
10 THAT, LET'S DO THAT.
11     MR. NOLAN:  YOU REFERENCED SPECIFIC PAGES, AND ON
12 THOSE PAGES, PEOPLE WERE LISTED.  OUR POSITION IS THAT THEY
13 WEREN'T LISTED ON THOSE PAGES.
14     WE CAN DO THAT AT A BREAK AND COME BACK AND MAYBE
15 SUBMIT IT TO MR. HOLMES OR WHATEVER.
16     YOUR HONOR, ONLY BECAUSE I KNOW THIS TRANSCRIPT IS
17 GOING TO BE DISSECTED BY BOTH COUNSEL, I JUST WANT TO COME BACK
18 TO WHEN YOU SAID RECENTLY THAT WITH RESPECT TO CABRERA AND
19 MORALES AND SALAZAR, THAT IF THEY WERE WITHIN THE NUMBER,
20 THEY'RE IN.
21     THE COURT:  THEY'RE IN, SUBJECT TO ANY ARGUMENT THAT
22 YOU'RE MAKING BEFORE JUDGE INFANTE THAT THEY WERE NOT PROPERLY
23 NOTICED, SERVED, OR WHATEVER IT MIGHT BE.
24     MR. NOLAN:  AND I APOLOGIZE FOR BEING REDUNDANT.  I'M
25 TRYING TO AVOID --

Page 53

1     THE COURT:  YOU UNDERSTOOD WHAT I'M SAYING,
2 MR. QUINN?
3     MR. QUINN:  YES, I DO, YOUR HONOR.
4     THE COURT:  I'M NOT OVERRULING ANY DECISION THAT
5 JUDGE INFANTE HASN'T MADE YET.  I'M SIMPLY SAYING THEY'RE IN IN
6 THE SENSE THAT, ASSUMING THAT YOU PROPERLY NOTICED OR SERVED
7 THEM, YOU CAN TAKE THEIR DEPOSITION.  BUT THAT'S BEING
8 CHALLENGED, AND THAT'S BEING CHALLENGED BEFORE JUDGE INFANTE;
9 AND I WILL AWAIT HIS DECISION.
10     MR. QUINN:  OKAY.
11     YOUR HONOR, I HAVE THIS FEELING THAT IT MIGHT BE
12 HELPFUL IF I WENT -- AND I HATE TO DO THIS, AND I HOPE IT'S NOT
13 TRYING THE COURT'S PATIENCE -- IF I WENT BACK THROUGH THOSE
14 CATEGORIES, JUST TO MAKE SURE THAT -- AS I MENTIONED IN THE
15 BEGINNING, JUST TO MAKE SURE THAT WE HAVE AN UNDERSTANDING AS
16 WE LEAVE HERE.
17     THE COURT:  RIGHT.  AND THEN WE'RE GOING TO TAKE A
18 BRIEF RECESS.  I'M GOING TO TAKE UP ANOTHER MATTER THAT'S
19 PATIENTLY WAITING IN THE BACK WINGS HERE, WHILE YOU COME UP
20 WITH IT.  I WANT TO HAVE SPELLED OUT HERE CLEARLY WHAT IT WAS
21 THAT I ORDERED ON JANUARY 7TH, WHAT THE NUMBER WAS, BECAUSE I
22 DO THINK YOU ARE ENTITLED TO THAT.
23     MR. QUINN:  ALL RIGHT.
24     THE COURT:  BUT GOING THROUGH THOSE CATEGORIES, THE
25 FIRST CATEGORY WAS THE THIRD-PARTY DEPONENTS FROM JANUARY 7TH;

Page 54

1   AND THEY REQUESTED THAT THEY BE TAKEN POST JANUARY 28TH.

2       MR. QUINN: RIGHT.

3       THE COURT: I DON'T SEE ANY PROBLEM WITH THAT,

4   SUBJECT TO ANY CHALLENGE BEING MADE BY THEIR ATTORNEYS BEFORE

5   JUDGE INFANTE.

6       MR. QUINN: RIGHT.

7       THE COURT: THE OUT-OF-COUNTRY DEPONENTS: WELL, THE

8   ONE FROM CANADA IS PHASE TWO; SO THAT'S BEEN PLACED OFF. THE

9   THREE FROM HONG KONG, IS THAT BEING CHALLENGED?

10      MR. QUINN: THERE'S NOTHING BEFORE JUDGE INFANTE ON

11  THAT RIGHT NOW.

12      THE COURT: AND YOU'VE SERVED THEM?

13      MR. QUINN: NO. THAT'S GOING TO REQUIRE LETTERS

14  ROGATORY PROCESS.

15      THE COURT: HAVE YOU STARTED THAT PROCESS? DID YOU

16  START THAT PROCESS BEFORE JANUARY 28TH?

17      MR. QUINN: NO, WE DID NOT.

18      THE COURT: WELL, YOU SHOULD HAVE STARTED THAT

19  PROCESS BEFORE JANUARY 28TH; THAT WAS THE CUTOFF FOR PHASE ONE

20  DISCOVERY.

21      THE THIRD CATEGORY, NOT SERVED WITH SUBPOENAS: IN

22  ADDITION, THE QUESTION IS WHETHER OR NOT THEY WERE SERVED OR

23  NOTICED BEFORE JANUARY 28TH.

24      MR. QUINN: THOSE, WE NOTICED THE DEPOSITIONS; WE

25  HAVE NOT SUCCEEDED IN SERVING THE WITNESSES WITH THE SUBPOENAS.

Page 55

1       THE COURT: THE QUESTION OF WHETHER OR NOT THE NOTICE

2   WAS PERFECTED, THAT'S AN ISSUE THAT GOES BEFORE JUDGE INFANTE.

3       MR. QUINN: RIGHT.

4       THE COURT: ALL I'M DECIDING TODAY IS — I'M

5   REINFORCING THE COURT'S PRIOR ORDER THAT JANUARY 28TH WAS THE

6   CUTOFF. I GAVE YOU, ON JANUARY 7TH, LEAVE TO TAKE. YOU KNOW

7   WHAT THAT MEANS. YOU KNOW HOW LONG YOU HAD. WE ALL UNDERSTOOD

8   AT THAT TIME THAT IT WAS GOING TO BE A CRAZY MONTH. AND I'M

9   AFFORDING YOU LEAVE NOW, I SUPPOSE, TO TAKE ANYTHING THAT WAS

10  PROPERLY NOTICED AND SERVED INTO FEBRUARY THAT RELATES TO PHASE

11  ONE. THE CUTOFF WAS JANUARY 28TH.

12      MR. QUINN: WHAT I HEAR THE COURT SAYING IS, IF WE

13  DID NOT SUCCEED IN SERVING THEM BEFORE THE 28TH --

14      THE COURT: EITHER BY NOT SERVING THEM OR BY HAVING

15  JUDGE INFANTE RULING THAT THE SERVICE WAS IMPROPER, THEN YOU'RE

16  OUT.

17      MR. QUINN: I UNDERSTAND, YOUR HONOR.

18      THE COURT: AS FAR AS THE FOURTH CATEGORY, WHETHER

19  MR. GRONICH AND TIONGCO WERE INCLUDED IN MY ORDER, THAT'S WHAT

20  I WANT TO LOOK AT IN A FEW MINUTES HERE.

21      THE TWO IN MEXICO ARE PHASE TWO; SO THAT'S IRRELEVANT

22  FOR OUR CURRENT PURPOSES.

23      THE 30(B)(6), YOU SAID THE MGA DE MEXICO WAS PHASE

24  TWO; SO THAT'S OFF.

25      THE MGA IS BEFORE JUDGE INFANTE. HE WILL DECIDE

Page 56

1   THAT, BUT YOU AT LEAST — THAT WAS PART OF A PREVIOUS ORDER.

2       AND THE NUMBER OF DEPOSITIONS IS GOING TO BE

3   CONSIDERED BY JUDGE INFANTE, ALTHOUGH I'M GOING TO PROVIDE SOME

4   GUIDANCE HERE WHEN I TAKE A LOOK AT THESE ORDERS. AND THE

5   ORDERS THAT I WANT TO SEE ARE THE JANUARY 7TH ORDER, WITH THE

6   CROSS-REFERENCE TO THE PAGES; THAT'S BASICALLY WHAT I NEED TO

7   SEE.

8       I KNOW THAT'S HERE SOMEPLACE.

9       MR. QUINN: I THINK WE HAVE A COPY, YOUR HONOR.

10      MR. NOLAN: WE HAVE IT, TOO, YOUR HONOR.

11      THE COURT: PROVIDE THAT TO MR. HOLMES.

12      MR. NOLAN: YOUR HONOR, I'M LOOKING AT THE

13  JANUARY 7TH ORDER, TOP OF PAGE 3. I CAN HAND THIS UP.

14      I'LL JUST READ THE SENTENCE: "SPECIFICALLY, THE

15  COURT GRANTS MATTEL'S REQUEST TO TAKE THE INDIVIDUAL

16  DEPOSITIONS RELATING TO THE BRATZ CLAIMS SET FORTH IN THE

17  MOVING PAPERS AT 9 THROUGH 11, AND RELATING TO THE TRADE SECRET

18  AND RICO CLAIMS SET FORTH IN THE MOVING PAPERS AT 13."

19      THE COURT: SO THAT WAS THE PHASE ONE AND PHASE TWO

20  REFERENCES.

21      MR. NOLAN: THEN, YOUR HONOR, I'VE GIVEN TO MR. QUINN

22  RIGHT NOW A COPY OF HIS MOTION, PAGES 9 THROUGH 11, AND

23  PAGE 13; AND I ASSUME THAT MR. QUINN WILL CONFIRM THAT NEITHER

24  OF THOSE TWO WITNESSES ARE IDENTIFIED ON THOSE THREE PAGES.

25      MR. QUINN: THAT IS CORRECT, YOUR HONOR. I THINK I

Page 57

1   SAID THAT WHEN I FIRST STOOD UP TODAY.

2       THE COURT: RIGHT.

3       MR. QUINN: BUT ELSEWHERE, THE COURT SAID THAT

4   BECAUSE OF THE ISSUES THAT HAVE BEEN RAISED ABOUT DOCUMENT

5   RETENTION AND COLLECTION, MATTEL HAS SHOWN GOOD CAUSE.

6       THESE INDIVIDUALS THAT WE'RE TALKING ABOUT ARE THE

7   ONLY WITNESSES WHO HAVE ANY KNOWLEDGE OF THAT. GRONICH IS THE

8   ONE WHO SIGNED THE CERTIFICATION ABOUT DOCUMENT RETENTION

9   EFFORTS.

10      AND THEN ELSEWHERE, THE COURT'S ORDER SAYS MATTEL'S

11  MOTION IS GRANTED, EXCEPT FOR THE REQUEST TO TAKE THE

12  DEPOSITION OF MR. BRYANT; SO THAT'S HOW WE UNDERSTOOD IT, THAT

13  THE COURT INTENDED THAT WE GET TO TAKE THOSE DEPOSITIONS AS

14  WELL.

15      THOSE TWO NAMES WERE CALLED OUT IN OUR MOVING PAPERS;

16  AND THERE'S A WHOLE SECTION B OF THAT MEMORANDUM THAT DISCUSSED

17  THIS ISSUE, ABOUT THE NEED TO TAKE ADDITIONAL DEPOSITIONS

18  BECAUSE THE INTEGRITY OF MGA AND BRYANT'S PRESERVATIONS OF

19  DOCUMENTS IS AT ISSUE. AT PAGE 14, WE CALLED OUT THOSE NAMES.

20      THE COURT: HAVE YOU NOTICED THOSE TWO DEPOSITIONS?

21      MR. QUINN: YES. AND WE HAVE SUBPOENAED THE

22  INDIVIDUALS.

23      THE COURT: SO THE QUESTION IS ONLY WHETHER OR NOT

24  THEY WERE INCLUDED IN THE ORDER GRANTING LEAVE OR NOT.

25      MR. QUINN: YES, YOUR HONOR.

15 (Pages 54 to 57)

EXHIBIT _____1_____
PAGE _____8_____

Page 58

1  MR. NOLAN: OF COURSE, JANUARY 8TH IS
2  JUDGE INFANTE — WE HAD ALREADY — AND MATTEL KNEW THIS AT THE
3  TIME WE WERE ARGUING IT BEFORE YOU — THE MATTER HAD BEEN FULLY
4  BRIEFED AND SUBMITTED, ARGUED AND SUBMITTED, IN FRONT OF
5  JUDGE INFANTE. HE RULED ON JANUARY 8TH THAT ALL OF THE
6  TESTIMONY THAT WE PROVIDED WAS ADEQUATE, EXCEPT FOR THE LIMITED
7  SUBJECT THAT I TALKED ABOUT. AND WE'VE ALREADY PROVIDED
8  SAM KHARI FOR TWO DAYS.
9       THE COURT: I WANT TO TAKE A LITTLE LONGER LOOK AT
10  THIS. I'LL GET YOU AN ANSWER TODAY IN THE MINUTE ORDER THAT
11  GOES OUT THIS AFTERNOON. I'LL ADDRESS THOSE TWO.
12       OTHERWISE, I THINK WHAT I'VE SET DOWN ON WHAT I WILL
13  SET DOWN IN THE MINUTE ORDER WILL COVER THESE.
14       COUNSEL?
15       MS. MIZRAHI: RAMIT MIZRAHI FOR ANA CABRERA AND
16  BEATRIZ MORALES.
17       I WANTED TO, FIRST OF ALL, JUST POINT OUT THAT WE'RE
18  NOT TAKING A POSITION IN THE CASE, AND WE ARE SEEKING GUIDANCE
19  FROM THE COURT WITH RESPECT TO THE DEPOSITIONS.
20       THE COURT: VERY WELL.
21       MS. MIZRAHI: WE WOULD REQUEST A FEW DAYS TO PREPARE
22  FOR THE DEPOSITIONS, SINCE WE'VE JUST BEEN PREPARED, AND THAT
23  THERE BE A SPANISH TRANSLATOR FOR THE WOMEN THERE.
24       TWO POINTS --
25       THE COURT: LET ME STOP YOU FOR A SECOND, COUNSEL.

Page 59

1  IS THERE ANYTHING ABOUT WHAT I'VE ORDERED HERE THAT
2  IS NOT CLEAR TO YOU IN TERMS OF WHERE WE'RE GOING WITH THOSE?
3       MS. MIZRAHI: I TAKE IT WE'RE PENDING JUDGE INFANTE'S
4  RULING.
5       THE COURT: EXACTLY. IN TERMS OF WHETHER OR NOT THEY
6  ARE INCLUDED IN THE NUMBER.
7       THEN AS FAR AS REASONABLE NOTICE -- YOU'RE ASKING FOR
8  A SPANISH TRANSLATOR TO BE PRESENT?
9       MS. MIZRAHI: YES.
10       THE COURT: MR. QUINN, GIVEN THE HISTORY IN THIS, IS
11  THERE ANY OBJECTION TO HAVING A SPANISH TRANSLATOR?
12       MR. QUINN: I WOULDN'T THINK SO, YOUR HONOR.
13       THE COURT: SEEMS TO MAKE SENSE. IF THAT'S THE
14  PRIMARY LANGUAGE, THAT WOULD BE APPROPRIATE.
15       OKAY. SO THERE'S AN AGREEMENT THERE BY THE COUNSEL
16  TAKING THE DEPOSITION.
17       MS. MIZRAHI: GREAT.
18       TWO OTHER THINGS: THE FIRST IS, WE WOULD LIKE MATTEL
19  TO PROVIDE US WITH THE INTERVIEW TAPES TAKEN OF THE WOMEN. I'M
20  NOT SURE IF THAT'S SOMETHING THAT THE JUDGE CAN ORDER OR SHOULD
21  ORDER.
22       THE COURT: MR. QUINN, WHAT ARE YOUR THOUGHTS ON
23  THAT?
24       MR. QUINN: WE CAN ASK HIM TO DO THAT, YOUR HONOR.
25       MS. MIZRAHI: PERFECT.

Page 60

1       AND THE THIRD THING IS THAT I BELIEVE THAT MATTEL IS
2  IN POSSESSION OF A BOX FROM MS. CABRERA, TAKEN DURING THE
3  INTERVIEW PROCESS. I THINK THERE'S BEEN SOME EXCHANGE BETWEEN
4  MY ASSOCIATE, MARIA DIAZ, AND COUNSEL; AND I THINK MATTEL IS
5  REFUSING TO RETURN THE BOX TO HER.
6       THE COURT: COUNSEL?
7       MR. QUINN: FOR ALL I KNOW, IT'S MATTEL'S PROPERTY,
8  YOUR HONOR. I'M SORRY. I JUST CAN'T ADDRESS THAT.
9       I DON'T KNOW WHAT IT IS.
10       THE COURT: COUNSEL, THIS WOULD BE AN APPROPRIATE --
11  YOU'RE ASKING FOR THE RETURN — I'M TRYING TO THINK WHO THIS
12  WOULD BE AN APPROPRIATE MOTION BEFORE. IT'S NOT FAIR TO HAVE
13  MR. QUINN JUST RESPOND OFF THE CUFF TO SOMETHING LIKE THIS.
14       BRING THIS MATTER BEFORE THIS COURT. I'M INTERESTED
15  IN WHAT HAPPENED HERE. SO WHY DON'T YOU MEET AND CONFER WITH
16  MR. QUINN; SEE IF YOU CAN'T WORK OUT THE RETURN OF THE TAPES,
17  RETURN OF ANYTHING WHICH IS YOUR CLIENT'S PROPERTY THAT WAS
18  TAKEN FROM HER, OR ALLEGEDLY TAKEN FROM HER. SEE IF YOU CAN'T
19  WORK IT OUT. AND IF YOU CAN'T, BRING A MOTION TO THIS COURT.
20       MS. MIZRAHI: SURE. THANK YOU.
21       THE COURT: AND THAT MOTION WOULD HAVE TO BE RESOLVED
22  BEFORE THE DEPOSITION WENT FORWARD.
23       MS. MIZRAHI: AND BEFORE THE BOX IS OPENED, I'M
24  ASSUMING AS WELL.
25       THE COURT: I'M SORRY?

Page 61

1       MS. MIZRAHI: I'M UNDER THE IMPRESSION THAT MATTEL
2  WAS SEEKING TO OPEN THE BOX PRIOR TO THE DEPOSITION. I'M
3  REALLY NOT CERTAIN.
4       THE COURT: MR. QUINN, DO YOU KNOW ANYTHING ABOUT
5  THAT?
6       MR. QUINN: I DON'T, YOUR HONOR.
7       THE COURT: YOU NEED TO MEET AND CONFER.
8       MR. NOLAN: WE'VE BEEN PROVIDED A VIDEO OF MATTEL
9  OPENING THE BOX, MR. DE ANDA OPENING THE BOX.
10       NOW, I KNOW THERE'S REPRESENTATIONS THAT THEY'RE
11  GOING TO RETURN THE SEALED BOX TO MS. CABRERA. BUT WE HAVE A
12  VIDEO -- WE CAN SHOW IT AT THE HEARING -- OF MR. DE ANDA GOING
13  THROUGH THE BOX OF BELONGINGS THAT WERE SEIZED FROM
14  MS. CABRERA'S HOUSE. I'LL MAKE CERTAIN YOU HAVE A COPY OF
15  THAT, BUT I THINK MATTEL SHOULD PROVIDE THAT TO YOU.
16       MS. MIZRAHI: SURE.
17       I GUESS IT RENDERS THAT POINT MOOT ABOUT --
18       THE COURT: COUNSEL, DON'T TALK TO OPPOSING COUNSEL.
19  YOU'RE ADDRESSING THE COURT RIGHT NOW. YOU HAVE ALL OF THE
20  TIME IN THE WORLD TO ADDRESS CO-COUNSEL.
21       MS. MIZRAHI: SURE. THANK YOU.
22       THE COURT: COUNSEL, WHAT I WANT YOU TO DO IS MEET
23  AND CONFER WITH MR. QUINN. I WILL INDICATE, CERTAINLY, THAT --
24  OR I WILL DIRECT THAT THE DEPOSITION DOES NOT FORWARD, ASSUMING
25  THAT IT IS GOING FORWARD, DEPENDING ON JUDGE INFANTE'S RULING,

FEBRUARY 4, 2008        ED CV 04-9059-SGL

EXHIBIT _____ 1

PAGE _____ 2

Page 62

1  UNTIL YOU HAVE MET AND CONFERRED AND ANY MOTION HAS BEEN HEARD
2  BY THIS COURT CONCERNING THE ITEMS THAT WERE OR WERE NOT TAKEN
3  FROM YOUR CLIENT.
4       MS. MIZRAHI:  THANK YOU.
5       THE COURT:  ANYBODY ELSE?
6       MR. POTISCHMAN:  YOUR HONOR, NEIL POTISCHMAN ON
7  BEHALF OF WACHOVIA CORPORATION.  I'LL TRY TO BE EXCEEDINGLY
8  BRIEF.
9       I JUST WANT TO CLARIFY ONE POINT.  YOUR HONOR ENTERED
10  AN ORDER ON JANUARY 31ST, AS YOU KNOW, WITH RESPECT TO A
11  SUBPOENA PRACTICE DIRECTED AT WACHOVIA.  SOME OF THOSE MATTERS
12  ARE BEFORE JUDGE INFANTE.  YOUR HONOR DIRECTED A BRIEFING
13  SCHEDULE, IN ESSENCE, WITH RESPECT TO POSSIBLE FOLLOW-ON MOTION
14  PRACTICE AFTER JUDGE INFANTE RULES.
15       I THINK IT'S POSSIBLE, IF THERE IS A DEPOSITION OF
16  WACHOVIA, THAT BASED ON THAT SCHEDULE AND BASED ON MY CLIENT'S
17  SCHEDULE, THAT DEPOSITION MIGHT NOT HAPPEN UNTIL MARCH; BUT I
18  WANTED TO CLARIFY, WHILE WE'RE HERE, IF YOUR HONOR INSISTED IT
19  BE DONE BY FEBRUARY, THEN WE'LL CONFER WITH THE PARTIES AND
20  WE'LL TRY TO MAKE SURE THAT --
21       THE COURT:  I'D REALLY LIKE TO GET THIS DISCOVERY
22  WRAPPED UP IN FEBRUARY.  I'M NOT ORDERING THAT IT BE DONE SO,
23  BUT I'M GIVING LEAVE FOR THE DISCOVERY TO CONTINUE INTO
24  FEBRUARY.
25       IN MARCH, WE'RE GETTING AWFUL CLOSE TO THE

Page 63

1  DISPOSITIVE MOTION HEARING CUTOFF DATE; AND THAT'S MY CONCERN
2  THERE.
3       TRY TO WORK THIS OUT WITH COUNSEL, DEPENDING ON HOW
4  JUDGE INFANTE RULES.  WHAT I WILL SIMPLY DO IS MAKE MYSELF
5  AVAILABLE ON THE 11TH AND THE 25TH.  WE DON'T HAVE A HEARING
6  DATE ON THE 18TH BECAUSE OF THE PRESIDENT'S HOLIDAY.  AND THEN,
7  I SUPPOSE, AT THE VERY LATEST, MARCH 3RD, TO TAKE UP ANY
8  MOTIONS THAT STEM FROM RULINGS BY JUDGE INFANTE.  I'M GOING TO
9  GIVE HIM A CALL THIS AFTERNOON AND EXPLAIN TO HIM WHAT, IN MY
10  VIEW, HE NEEDS TO BE FOCUSING ON AND HOW TIME IS OF THE
11  ESSENCE.  I THINK WE CAN WORK THIS OUT, COUNSEL.
12       MR. POTISCHMAN:  VERY WELL, YOUR HONOR.
13       ONE POINT I SHOULD CLARIFY:  IT'S POSSIBLE, IF THERE
14  IS MOTION PRACTICE WITH RESPECT TO THE SUBPOENA, IT WOULDN'T BE
15  IN THIS COURT.  IT WOULD BE IN THE COURT FROM WHICH THE
16  SUBPOENA IS ISSUED, WHICH WOULD BE THE EASTERN DISTRICT OF
17  PENNSYLVANIA OR THE NORTHERN DISTRICT OF CALIFORNIA.  THAT'S
18  ONE REASON WHY IT MAY BE OUTSIDE OF OUR CONTROL.
19       THE COURT:  OF COURSE.
20       MR. POTISCHMAN:  THANK YOU, YOUR HONOR.
21       THE COURT:  VERY GOOD.
22       THANK YOU, COUNSEL.
23       MR. GIZER:  GOOD MORNING AGAIN, YOUR HONOR.
24       SCOTT GIZER FROM CHRISTENSEN & GLASER.
25       THE COURT:  GOOD MORNING, COUNSEL.

Page 64

1       MR. GIZER:  I HAD ONE POINT OF CLARIFICATION.
2       IN YOUR ORDER, YOU AUTHORIZED A SPECIFIC TOPIC AS TO
3  CHRISTENSEN & GLASER REGARDING A COMMUNICATION POSSIBLY BETWEEN
4  A PARTY AND OUR FIRM.  IN OUR SUBPOENA, THERE WERE 13 OTHER
5  TOPICS BESIDES THAT ONE, AND WE WOULD LIKE CLARIFICATION THAT
6  THIS COURT ONLY GRANTED LEAVE AS TO THAT ONE SPECIFIC TOPIC,
7  NOT AS TO THE 13 OTHER TOPICS THAT WENT ALONG IN THE SUBPOENA.
8       THE COURT:  MR. QUINN?
9       MR. QUINN:  THAT'S NOT MY UNDERSTANDING, YOUR HONOR,
10  THAT THE ORDER ONLY REFERENCED ONE TOPIC AS BEING APPROPRIATE.
11       THE COURT:  COULD YOU REFER ME TO WHAT --
12       MR. GIZER:  IT'S ON PAGE 10.  IT SAYS, "CHRISTENSEN &
13  GLASER, LLP, FIRM TO WHICH VICTORIA O'CONNOR FAXED THE
14  MGA-BRYANT AGREEMENT THAT ISAAC LARIAN HAD ORDERED HER TO
15  ALTER."  THAT WAS TOPIC 13 IN THE SUBPOENA TO US.  THERE WAS 14
16  TOTAL TOPICS.  THAT WAS JUST ONE SPECIFIC ONE.
17       THE COURT:  IF THAT'S WHAT THE ORDER WAS, COUNSEL,
18  THAT'S WHAT THE ORDER WAS.
19       MR. QUINN:  YOUR HONOR, THERE'S NOTHING IN THE ORDER
20  THAT LIMITS THE DEPOSITION TO THAT SUBJECT.  WE HAD IDENTIFIED
21  A NUMBER OF TOPICS, AND THE COURT SAID, IN THE CONTEXT OF,
22  'THIS DEPOSITION CAN GO FORWARD, IDENTIFYING THE FIRM.'
23  THERE'S NOTHING IN THERE THAT SAID THAT WE COULDN'T EXAMINE
24  THEM ON THE OTHER TOPICS.
25       THE COURT:  I'LL TAKE A LOOK AT THAT AS WELL.  ALONG

Page 65

1  WITH THE MR. GRONICH AND MR. TIONGCO, I'LL ALSO TAKE A LOOK AT
2  THE CHRISTENSEN & GLASER PART OF THE ORDER.  I CAN'T SAY FOR
3  CERTAIN RIGHT NOW WHAT IT WAS THAT I INTENDED OR DIDN'T INTEND,
4  WITHOUT LOOKING AT THE PAPER AND THE ORDER.
5       THANK YOU, COUNSEL.
6       MR. GIZER:  THANK YOU, YOUR HONOR.
7       THE COURT:  DOES ANYBODY ELSE NEED TO ADDRESS
8  ANYTHING WITH RESPECT TO THE DEPOSITIONS, THESE TWO EX-PARTE
9  APPLICATIONS?
10       I STILL HAVE TWO MORE TO GET TO.
11       MR. PAGE:  MICHAEL PAGE, YOUR HONOR, FOR
12  CARTER BRYANT.
13       YOUR HONOR MENTIONED BEING AVAILABLE FOR HEARINGS ON
14  THE 11TH AND THE 25TH TO DEAL WITH ISSUES COMING OUT OF
15  JUDGE INFANTE RULINGS.
16       DOES THAT MEAN THAT THEY CAN BE BROUGHT TO YOU ON A
17  SHORTENED OR AN EX-PARTE BASIS?  AND HOW SHOULD WE DO THAT?
18       THE COURT:  IT MAKES SENSE TO DO SO.
19       AS THE COURT HAS ORDERED HERE, WE HAVE AN OPPOSITION
20  DUE ON WEDNESDAY.  WE HAVE THE REPLY DUE A FEW DAYS LATER.  YOU
21  CAN MORE OR LESS USE THAT AS A MODEL.  I DON'T WANT TO LAY OUT
22  A SCHEDULING PLAN FOR MOTIONS THAT HAVEN'T EVEN BEEN BROUGHT
23  YET.  I'M HOPING THAT YOU SEE THE WISDOM IN JUDGE INFANTE'S
24  RULING AND HAVE NOTHING TO DISPUTE.  BUT ASSUMING THAT YOU
25  MIGHT HAVE SOMETHING TO DISPUTE, TRY TO WORK OUT A SCHEDULE

17 (Pages 62 to 65)

EXHIBIT   1
PAGE   20

Page 66

1  AMONGST YOURSELVES.

2      I'M CERTAINLY GOING TO AGREE TO ANY STIPULATION THAT

3  YOU REACH, AS LONG AS YOU GIVE ME ONE FULL WEEKEND TO GET READY

4  FOR THE MONDAY HEARING; THAT'S ALL I'M ASKING FOR.

5      MR. PAGE: THANK YOU, YOUR HONOR.

6      THE COURT: THE NEXT EX PARTE IS MATTEL'S EX PARTE TO

7  ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLE ITEMS.

8  THESE RELATE TO THESE 12 MOLDS THAT ARE OVER IN CHINA.

9      SO, MR. NOLAN, LET ME BEGIN WITH YOU.

10      I AM A LITTLE -- THERE'S THIS REPEATED REPRESENTATION

11  THAT NO ONE DELIBERATELY DID ANYTHING, AND I GUESS I'M NOT

12  CONCERNED ABOUT WHAT PEOPLE DELIBERATELY DID OR DIDN'T DO; I'M

13  MORE CONCERNED ABOUT WHY THESE THINGS WERE NOT IDENTIFIED

14  SOONER.  AND I GUESS I DON'T HAVE A REAL CLEAR ANSWER TO THAT.

15      MR. NOLAN: YOUR HONOR, ALL I CAN SAY --

16      THE COURT: -- GIVEN -- LET ME SAY THIS -- GIVEN THE

17  REPRESENTATIONS THAT WERE MADE ABOUT THE DILIGENCE UPON WHICH

18  SEARCHES WERE DONE PURSUANT TO DOCUMENT REQUESTS.

19      THERE'S NO DISPUTE THAT THESE ARE COVERED BY THE

20  DOCUMENT REQUESTS.  JUDGE INFANTE HAS FOUND SUCH, ESSENTIALLY;

21  AND I -- READING THE DOCUMENT REQUESTS, I THINK MATTEL IS RIGHT

22  ON THAT THESE ARE CERTAINLY WITHIN THE AMBIT OF SEVERAL OF THE

23  DOCUMENT REQUESTS; SO THERE'S NO QUESTION THAT THEY NEED TO BE

24  PRODUCED.  THEY'VE BEEN ASKED FOR.

25      I'M SOMEWHAT CONCERNED AS TO WHY THEY WERE JUST


Page 68

1  ISSUE HERE.

2      THE COURT: I'LL TELL YOU THE ONE THING, THE ONLY

3  THING THAT SEEMS TO SUGGEST THAT, ARE THESE LETTERS AND

4  CORRESPONDENCE WHICH SUGGESTS AN INTERPRETATION OF THE REQUEST

5  AS NOT CALLING FOR THAT.

6      MR. NOLAN: ON THE MOLDS?

7      THE COURT: YES.

8      HOW CAN YOU BE SUGGESTING THAT ON THE ONE HAND,

9  YOU'RE IN GOOD FAITH, LOOKING FOR THESE, BUT ON THE OTHER HAND,

10  COUNSEL IS SAYING, 'NO, THIS IS NOT COVERED'?

11      MR. NOLAN: WELL, IF I MIGHT ADDRESS THAT REAL

12  QUICKLY, YOUR HONOR.

13      DESPITE THAT CORRESPONDENCE, AT THE SAME TIME, WE ARE

14  ALSO TELLING THEM ABOUT IT AND ALSO PROVIDING DIGITAL

15  PHOTOGRAPHS OF IT SO THEY CAN START PROCESSING IT IMMEDIATELY.

16      YOUR HONOR, ALL I CAN SAY IS THAT IN THIS CASE, MORE

17  THAN ANY CASE I'VE EVER SEEN, EVERY POSSIBLE ARGUMENT IS

18  RESERVED; AND IF WE'RE GUILTY OF THAT, I OWN UP TO IT; I'M

19  RESPONSIBLE AS THE LEAD LAWYER ON THIS CASE.  BUT IT WAS NOT

20  INTENDED AT ALL TO EVER SAY, 'YOU CAN'T HAVE ACCESS TO THIS

21  MATERIAL.'

22      NOW, I COULD MAKE AN INTERESTING ARGUMENT THAT ON ONE

23  PRODUCTION, THEY DID ASK FOR MOLDS SPECIFICALLY.  ON THE ONE

24  THAT WE WERE RESPONDING TO, THAT DIDN'T RELATE TO THESE, IT

25  DIDN'T RELATE TO THAT LOCATION, BUT --


Page 67

1  FOUND.

2      MR. NOLAN: YOUR HONOR, I THINK IT'S PRETTY CLEAR.

3      BOTH SIDES HAVE BEEN ENGAGED IN ROLLING PRODUCTIONS

4  AS THEY HAVE FOUND NEW MATERIAL.  AND WE CERTAINLY, COMING INTO

5  THIS, WE HAVE DONE THAT, YOUR HONOR; AND I THINK THE RECORD IS

6  CLEAR THAT WE HAVE PRODUCED -- I THINK IT'S SOMEWHERE AROUND

7  800 TO 900 INTANGIBLE OBJECTS AS WE'VE LOCATED THEM

8  DOMESTICALLY.  WE THEN CAME UP AND IDENTIFIED, IN -- I BELIEVE

9  IT WAS EARLY DECEMBER, THE LOCATION IN CHINA AND IN HONG KONG,

10  THESE ADDITIONAL ITEMS.  ALL IN GOOD FAITH, YOUR HONOR.

11      WE'RE TRYING TO DO WHAT WE CAN.

12      MATTEL PRODUCED 73 PERCENT OF THEIR DOCUMENTS IN

13  JANUARY, IN OUR PRODUCTION, YOUR HONOR.

14      THE COURT: I UNDERSTAND THAT ARGUMENT THAT YOU MADE.

15      MR. NOLAN: ALL I'M SAYING IS, YOUR HONOR, WITH

16  RESPECT TO THIS, WE IMMEDIATELY NOTIFIED THEM WHEN THEY WERE

17  IDENTIFIED AS MOLDS RELATED TO BRATZ.  THERE'S A LOT OF MOLDS

18  OUT THERE, YOUR HONOR, AND SCULPTS AND PRODUCTS AND STUFF LIKE

19  THAT.  IT IS SIMPLY THAT, YOUR HONOR; WE IDENTIFIED IT, WE

20  FOUND IT, WE IMMEDIATELY TURNED IT OVER.

21      I CAN'T ADDRESS WHAT O'MELVENY --

22      THE COURT: I'M NOT ASKING YOU TO.

23      MR. NOLAN: NO, NO, NO.  BUT WHAT I MEANT BY THAT IS

24  THAT I CAN REPRESENT TO THE COURT THAT I HAVE SEEN NOTHING

25  WHICH WOULD SUGGEST, 'OH, DON'T PRODUCE THAT.'  THAT'S NOT THE


Page 69

1      THE COURT: I DON'T FIND THAT A CONVINCING ARGUMENT.

2      MR. NOLAN: BUT WE'RE NOT ADVANCING THAT ARGUMENT.

3      THE COURT: FAIR ENOUGH.

4      MR. NOLAN: AND WE DIDN'T ARGUE THAT.

5      YOUR HONOR, WHAT I'M ADVANCING IS OUR POSITION, IS

6  THAT WE DID A DILIGENT SEARCH.  WE WENT AND WE LOCATED THIS.

7  WE IMMEDIATELY NOTIFIED MATTEL.  WE PROVIDED THEM DATES FOR

8  THEM TO LOOK AT THIS STUFF.

9      WE CAN'T GET IT OUT OF CHINA.

10      THE COURT: WHAT ABOUT THAT?  I KNOW THERE'S THIS

11  UNDERTAKING.  WHAT EFFORTS HAVE BEEN MADE TO GET RELIEF FROM

12  THAT AND GET THEM OVER HERE?

13      MR. NOLAN: REAL QUICKLY, YOUR HONOR -- AND I WAS

14  HANDLING THIS, SO I CAN SPEAK TO THIS FIRST HAND -- I WAS

15  ADVISED AS TO THE LOCATION OF THIS MATERIAL IN HONG KONG.  I

16  WAS TOLD THAT THEY WERE SUBJECT TO AN UNDERTAKING BECAUSE

17  THERE'S LITIGATION GOING ON.  IT'S LIKE REMOVING EVIDENCE FROM

18  THE COURTROOM.

19      WE THEN IMMEDIATELY CALLED MATTEL, ADVISED THEM OF

20  THE SITUATION, AND TOLD THEM, 'LISTEN, WE HAVE TWO CHOICES.

21  ONE IS THAT WE CAN MAKE IT AVAILABLE IN HONG KONG.  THAT'S NOT

22  AN ISSUE.  BY THE WAY, WE NOTE THAT YOU HAVE AN OFFICE RIGHT

23  ACROSS FROM OUR OFFICES IN HONG KONG' -- THIS IS MATTEL AND MGA

24  -- 'SO THAT SHOULDN'T BE AN ISSUE.  BUT WE'LL GO THE EXTRA

25  MILE, AND WE WILL TALK TO COUNSEL IN HONG KONG TO TRY TO GET A

FEBRUARY 4, 2008          ED CV 04-9059-SGL   EXHIBIT ____

PAGE ___21___

1   RELIEF FROM THE COURT.'
2       WE DID THAT. SKADDEN IMMEDIATELY CALLED THE LAWYER
3   OVER IN HONG KONG, INSTRUCTED HIM TO GO TO COURT AND SEEK A
4   RELIEF SO THAT WE COULD MAKE THEM AVAILABLE.
5       THE COURT: WHAT'S THE STATUS OF THAT?
6       MR. NOLAN: THE FIRST COURT DENIED THE REQUEST AND
7   SAID — AND I MAY BE WRONG ON THIS, YOUR HONOR — IT WOULD BE
8   AKIN TO ALMOST LIKE ONE MAGISTRATE HAVING CRIMINAL DUTY AND
9   MAKING A RULING AND THEN GETTING A NEW MAGISTRATE AND THAT
10  MAGISTRATE SAYS, 'YOU KNOW, THE OTHER MAGISTRATE REVIEWED THE
11  BAIL CONDITIONS' — THIS IS MY INTERPRETATION OF IT. SO THE
12  FIRST JUDGE SAID, 'SOMEBODY ELSE RULES ON IT. YOU HAVE TO GO
13  TO THE OTHER PERSON.'
14      WE WENT TO THE OTHER PERSON, AND THAT MATTER IS STILL
15  PENDING BEFORE THE COURT. SO WE'VE MADE EVERY EFFORT, ALL OF
16  THE TIME, SAYING TO MATTEL, 'YOU HAVE OFFICES IN CHINA, AND YOU
17  HAVE OFFICES IN HONG KONG. THESE THINGS ARE AVAILABLE. HERE
18  ARE THE DATES THAT THEY'RE AVAILABLE.' AND WE GAVE THEM DATES,
19  YOUR HONOR; WE GAVE THEM DATES IN ADVANCE.
20      AND I'LL REPRESENT TO THE COURT THAT WE CANNOT TAKE
21  THE MOLDS OUT OF CHINA, BECAUSE OF THE SIZE — I MEAN, EVEN
22  THOSE THESE ARE SMALL DOLLS, THESE MOLDS ARE ENORMOUS; SO IT
23  MADE SENSE TO US TO JUST SIMPLY SAY, 'THIS ISN'T A BURDEN.
24  YOU'RE GOING TO HAVE A CAMERA TAKE PICTURES OF THIS' — AND
25  THAT'S ALL THEY'RE GOING TO DO, IS TAKE THE DIGITAL PHOTOGRAPHS

Page 71

1   OF THEM AND BRING THEM OVER HERE — 'YOU'VE GOT STAFF OVER IN
2   CHINA AND IN HONG KONG.
3       THE COURT: THIS ISN'T LIKE A KODAK CAMERA. THIS
4   SOUNDS LIKE A PRETTY INTENSIVE, THREE-DIMENSIONAL
5   PHOTOGRAPHY —
6       MR. NOLAN: YOUR HONOR, THAT'S THEIR OWN CHOOSING.
7   YOU KNOW, WE'RE MAKING THEM AVAILABLE IN THE LOCATION WHERE
8   THEY ARE KEPT —
9       THE COURT: WHAT ABOUT THE EXPENSES SHIFTING ON THIS
10  BECAUSE OF THE INABILITY OF MGA TO GET THOSE OVER HERE?
11      MR. NOLAN: I'M NOT AWARE OF ANY SITUATION WHERE
12  BECAUSE OF COURT RESTRICTIONS IN A JURISDICTION, WHERE WE'RE
13  BEING BOUND BY THOSE RULINGS, THAT WE SHOULD HAVE TO BEAR THE
14  BURDEN OF COSTS, WHERE THE PARTY HAS OFFICES AND A PRESENCE IN
15  BOTH HONG KONG AND IN CHINA.
16      I MEAN, YOUR HONOR, LET'S FACE IT, BOTH OF OUR
17  CLIENTS HAVE MANUFACTURING PLANTS LOCATED IN CHINA AND HONG
18  KONG. THIS IS NOT A BURDEN TO THEM. WE'RE NOT GETTING ANY
19  BENEFIT FROM THIS.
20      I WOULD REPRESENT TO YOU, YOUR HONOR, I THINK THAT
21  WE'VE ACTED IN COMPLETE GOOD FAITH IN THIS RESPECT. IN TERMS
22  OF COST-SHIFTING, THE COST THAT WE'VE BORNE IN RESPONSE TO SOME
23  OF THE DISCOVERY IN THIS CASE IS JUST ASTRONOMICAL. AND ONE OF
24  THE MOTIONS THAT YOU'RE GOING TO HEAR ABOUT SOON, YOUR HONOR,
25  IS THAT THERE'S A MOTION IN FRONT OF JUDGE INFANTE, THAT WE

Page 72

1   JUST LEARNED ABOUT ON THURSDAY IN THE OPPOSITION — IF YOU'RE
2   TALKING ABOUT COST-SHIFTING — WHERE — AND I THINK IN ONE OF
3   OUR PAPERS HERE, WE SAID THAT WE'VE PAID — EXCLUSIVE
4   ATTORNEY'S FEE, WE'VE PAID $4 MILLION TO MAKE PRODUCTION HERE.
5   WE LEARNED ON THURSDAY THAT DESPITE JUDGE INFANTE'S ORDERS IN
6   THIS CASE, MATTEL HAS NOT REVIEWED LIVE E-MAILS OR BACKUP TAPE
7   E-MAILS IN DOING THEIR PRODUCTION REQUESTS, BECAUSE ON THEIR
8   OWN, THEY DETERMINED THAT IT WAS TOO EXPENSIVE.
9       SO I'M JUST SAYING, YOUR HONOR, I RESPECTFULLY DO NOT
10  BELIEVE THAT IT IS APPROPRIATE FOR COST-SHIFTING HERE,
11  ESPECIALLY WHEN WE HAVE PROVIDED THEM SO MUCH DISCOVERY HERE,
12  IN TERMS OF OBJECTS, MOLDS — THEY ALREADY HAVE OTHER MOLDS
13  THAT WERE USED, YOUR HONOR. THEY COULD EASILY GO, WALK ACROSS
14  THE STREET, DO WHATEVER CAMERA PHOTOGRAPHS THEY NEED. WE'VE
15  ALREADY PROVIDED DIGITAL PHOTOGRAPHS TO THEM.
16      THE COURT: OKAY, COUNSEL. I THINK I UNDERSTAND YOUR
17  POSITION.
18      LET ME HEAR FROM MR. COREY ON THIS.
19      AND, MR. COREY, MAYBE I SHOULD SAY THIS: I AGREE
20  THAT YOU NEED TO HAVE ACCESS TO THESE, AND I'M PREPARED TO GIVE
21  YOU LEAVE THROUGH THE MONTH OF FEBRUARY, UNTIL MARCH 1ST, TO
22  HAVE ACCESS TO THESE, TO TAKE THE THREE-DIMENSIONAL
23  PHOTOGRAPHS.
24      MY QUESTION IS — WHAT I'M DECIDING HERE IS BASICALLY
25  ON THE COST-SHIFTING ISSUE.

Page 73

1   MR. COREY: WITH RESPECT TO THE COST-SHIFTING ON THIS
2   PARTICULAR ISSUE, I DO THINK IT'S APPROPRIATE, AND IT'S
3   APPROPRIATE FOR THE REASON THAT THE COURT IDENTIFIED; THAT IF
4   THERE HAD BEEN SOME SHOWING OF DILIGENCE, THEN WE COULD HAVE
5   DEALT WITH THE UNDERTAKING SOONER. IT COULD HAVE BEEN PRODUCED
6   IN THE UNITED STATES.
7       I THINK THE FACT THAT THEY'RE JUST GETTING AROUND TO
8   IDENTIFYING THE UNDERTAKING FOR US NOW, SAYING THAT THEY'RE
9   TRYING TO DEAL WITH IT IN THIS VERY COMPRESSED PERIOD OF TIME,
10  IN LIGHT OF THE FACT THAT JUDGE INFANTE HAD ORDERED THAT THESE
11  THINGS SHOULD HAVE BEEN PRODUCED OR MADE AVAILABLE TO US MONTHS
12  AGO —
13      THE COURT: CAN I REALLY MAKE THAT FINDING, THOUGH,
14  BECAUSE I REALLY DON'T KNOW ENOUGH ABOUT THAT COURT PROCEEDING
15  OVER IN HONG KONG TO SAY WHETHER THIS CHALLENGE TO THE
16  UNDERTAKING OR REQUEST FOR RELIEF FROM THE UNDERTAKING WOULD
17  HAVE BEEN MADE IN OCTOBER, AS OPPOSED TO JANUARY, THAT THAT
18  REALLY WOULD HAVE HAD ANY DIFFERENT RESULT.
19      MR. COREY: I THINK THE ABSENCE OF EVIDENCE ON THIS
20  IS SIGNIFICANT, BUT I DON'T THINK THAT SHOULD BEAR AGAINST
21  MATTEL. THE ONUS IS ON THEM TO SAY, 'THIS IS THE NATURE OF THE
22  UNDERTAKING, THIS IS THE NATURE OF THE PROCEEDING.' THEY
23  HAVEN'T EVEN IDENTIFIED THE PROCEEDING FOR US.
24      THIS ISN'T AN OBJECTION OR ANYTHING THAT THEY HAD
25  RAISED IN FRONT OF JUDGE INFANTE, WHEN THESE REQUESTS WERE IN

FEBRUARY 4, 2008                    ED CV 04-9059-SGL      EXHIBIT ____
                                                           PAGE  22

Page 74

1 FRONT OF HIM. SO I DON'T THINK THAT BURDEN, PARTICULARLY IN
2 LIGHT OF THE ABSENCE OF EVIDENCE, AN ARTICULATION OF WHAT
3 EXACTLY THE NATURE OF THIS UNDERTAKING IS. WHAT PRODUCTS OR
4 WHAT ITEMS THIS APPLIES TO SHOULD BE BORNE BY MATTEL.
5      THE COURT: IS THERE ANYTHING ELSE YOU WANT TO SAY,
6 COUNSEL?
7      MR. COREY: YES. VERY BRIEFLY.
8      WHAT WE'RE REALLY CONCERNED ABOUT HERE IS BEING
9 PREJUDICED WITH RESPECT TO WHAT OUR EXPERTS CAN LOOK AT; AND
10 THAT'S THE REASON THAT THIS IS BEFORE THIS COURT AND NOT BEFORE
11 JUDGE INFANTE.
12     WE WOULD LIKE SOME RELIEF, OR AT LEAST THE ABILITY TO
13 SUPPLEMENT OUR INITIAL EXPERT REPORTS WITH INFORMATION THAT WE
14 MAY OBTAIN FROM THESE SCANS.
15     AND THE NEXT POINT IS, WE APPRECIATE THE OPPORTUNITY
16 TO DO IT BY THE END OF FEBRUARY. WE WILL TRY TO DO THAT. THE
17 CHINESE NEW YEAR, HOWEVER, RUNS BETWEEN, I BELIEVE,
18 FEBRUARY 2ND AND FEBRUARY 16TH, WHEN NOTHING CAN REALLY HAPPEN.
19 MY UNDERSTANDING IS THAT IT TAKES ABOUT TEN DAYS TO GET THROUGH
20 CUSTOMS WITH THIS TYPE OF SCANNING EQUIPMENT.
21     WHAT WOULD MAKE IT EXCEEDINGLY --
22     THE COURT: THEY DON'T HAVE THAT OVER THERE? HONG
23 KONG IS PRETTY ADVANCED.
24     MR. QUINN: IT'S THE CONSULTANT'S SCANNING EQUIPMENT.
25 I CAN'T SPEAK INTELLIGENTLY TO EXACTLY WHAT IT IS. IT'S HIS

Page 75

1 EQUIPMENT. IT'S SET UP THE WAY HE LIKES IT. IF HE USES
2 SOMEBODY ELSE'S SCANNING EQUIPMENT, I GUARANTEE YOU, HE WOULD
3 BE CROSS-EXAMINED ON THE FACT THAT HE DIDN'T USE HIS OWN
4 EQUIPMENT. THAT'S REALLY WHAT IT COMES DOWN TO.
5      THE COURT: I SEE.
6      MR. COREY: WE WILL TRY TO GET IT ACCOMPLISHED IN
7 MARCH. WHAT WOULD BE EXCEEDINGLY HELPFUL IS IF ALL OF THE
8 MATERIALS CAN BE MADE AVAILABLE IN A SINGLE LOCATION. I
9 UNDERSTAND THAT (UNINTELLIGIBLE) IS ABOUT 20 MILES FROM HONG
10 KONG. IF ALL OF THOSE MATERIALS COULD BE MADE AVAILABLE IN THE
11 SAME LOCATION, THAT WOULD PREVENT THE CONSULTANT FROM HAVING TO
12 TAKE HIS SCANNING EQUIPMENT THROUGH CUSTOMS TWICE.
13     THE COURT: RIGHT. YOU JUST WANT TO GO INTO THE
14 ADMINISTRATIVE ZONE OF HONG KONG AND NOT HAVE TO GO INTO THE
15 PRC ITSELF.
16     MR. COREY: RIGHT. ABSOLUTELY.
17     THE COURT: I'M NOT SUGGESTING THAT HONG KONG IS NOT
18 PART OF THE PRC.
19     MR. COREY: ALL I'M SAYING IS, IF WE CAN GO THROUGH
20 CUSTOMS ONCE, THAT WOULD BE MUCH EASIER.
21     THE COURT: VERY WELL.
22     COUNSEL, WHAT ABOUT THE IDEA OF BRINGING IT TOGETHER
23 IN HONG KONG? IS THAT SOMETHING THAT CAN HAPPEN?
24     MR. NOLAN: YOUR HONOR, WE WOULD TRY TO ACCOMMODATE,
25 FOR THE CONVENIENCE OF THE PARTY, PUTTING THEM ALL IN ONE

Page 76

1 LOCATION. HOWEVER, I CANNOT TALK TO THE CUSTOMS PROCEDURES. I
2 DON'T KNOW HOW EASY IT IS TO GET THE MOLDS TO HONG KONG OR GET
3 THE PRODUCT THAT'S IN HONG KONG OVER TO CHINA. I THINK THAT
4 THERE ARE ISSUES.
5      AND I RESPECTFULLY SUBMIT, YOUR HONOR, THAT IF THIS
6 IS JUST A -- AND I'M NOT SAYING "JUST" A CONSULTANT -- BUT IF
7 THIS IS BECAUSE THEY'RE USING A PARTICULAR CONSULTANT WHO LIKES
8 A PARTICULAR CAMERA, A, I DON'T THINK THERE'S A REASON FOR THE
9 COST-SHIFTING TO ME, AS A RESULT BECAUSE THEY HAVE A PREFERENCE
10 TO USE ONE CAMERA VERSUS --
11     THE COURT: IT'S NOT A PREFERENCE. HE'S CONCERNED
12 ABOUT YOUR OBJECTION TO THE EXPERT RELYING ON SOMEBODY ELSE'S
13 THREE-DIMENSIONAL PHOTOGRAPHS. THEY'RE WILLING TO STIPULATE TO
14 WHATEVER THESE PHOTOGRAPHS ARE AND NOT RAISE ANY OBJECTION.
15     MR. NOLAN: YOUR HONOR, WE PROVIDED THEM DIGITAL
16 PHOTOGRAPHS. THEY ASKED US TO TAKE THE DIGITAL PHOTOGRAPHS.
17 YOUR HONOR, IF THEY WANT TO COME TO US AND SHOW US PHOTOGRAPHS
18 OF THESE OBJECTS AND LET US BE THERE WHEN THEY TAKE THE
19 PHOTOGRAPHS, WE'VE GOT -- WE'RE GOING TO WIN THIS CASE IN A
20 DIFFERENT WAY THAN WORRYING ABOUT WHETHER OR NOT THE CAMERA WAS
21 AN INSTAMATIC OR A VIDEO CAMERA.
22     THE COURT: ALL RIGHT.
23     MR. NOLAN: BUT I DO WANT TO MAKE ONE LAST POINT ON
24 THIS, SO THE RECORD IS CLEAR, YOUR HONOR.
25     WE IDENTIFIED, IN DECEMBER, IN FACT DECEMBER 7TH,

Page 77

1 THAT THERE WAS AN UNDERTAKING THAT WE HAD TO DEAL WITH; AND IT
2 WAS MATTEL THAT ASKED US FOR THE RIGHT TO INSPECT IN HONG KONG.
3 AND WE IMMEDIATELY SAID YES.
4      AT THE SAME TIME, WE DID THIS DOUBLE-TRACKING.
5      IT WASN'T UNTIL DECEMBER 26TH, FOR WHATEVER REASON --
6 WHY IT TOOK 22 DAYS, I DON'T KNOW -- FOR THEM TO ADVISE US THAT
7 THEY WERE GOING TO HAVE TROUBLE GETTING A CAMERA THROUGH
8 CUSTOMS. IT WAS GOING TO TAKE SEVEN DAYS TO GET THROUGH
9 CUSTOMS.
10     ALL I'M SAYING IS, YOUR HONOR, I'M JUST ADDRESSING
11 THIS COST-SHIFTING ISSUE.
12     THE COURT: VERY WELL.
13     MR. COREY: EXTRAORDINARILY BRIEFLY.
14     JUST SO THERE'S NO CONFUSION, WE'RE NOT TALKING
15 ABOUT, LIKE, A CAMERA THAT YOU CAN GO BUY AT A STORE. I MEAN,
16 THE EQUIPMENT COSTS ABOUT A QUARTER OF A MILLION DOLLARS; AND
17 THAT'S BEFORE IT'S CALIBRATED. THE DEGREE OF PRECISION HERE IS
18 VERY SIGNIFICANT. I'M NOT TALKING ABOUT SOMETHING SOMEBODY CAN
19 RUN DOWN TO BEST BUY AND BUY. IT'S NOT A TRIVIAL UNDERTAKING.
20     THE COURT: BUT IF THERE IS SOMEBODY WITH THAT KIND
21 OF EQUIPMENT AND THAT KIND OF EXPERTISE TO DO IT OVER IN HONG
22 KONG ALREADY, AND COUNSEL IS WILLING TO STIPULATE THAT WHATEVER
23 PICTURE THEY TAKE CAN BE USED BY THE EXPERT FOR HIS PURPOSES,
24 AND THERE'S NOT GOING TO BE ANY AUTHENTICATION OR FOUNDATION OR
25 CHALLENGE BASED ON THE PHOTOGRAPH ITSELF, THEN THAT WOULD SAVE

20 (Pages 74 to 77)

Page 78

1  A LOT OF MONEY AND A LOT OF TIME AND EFFORT FOR EVERYBODY;
2  CORRECT?
3      MR. COREY: IT THEORETICALLY WOULD. BUT IN LIGHT OF
4  THE CHINESE NEW YEAR, THAT'S NOT A PROCESS WE WOULD EVEN BE
5  ABLE TO START UNTIL THE SECOND HALF OF THIS MONTH.
6      THE COURT: ALL RIGHT.
7      WELL, ASSUMING THE COURT GAVE YOU SUFFICIENT TIME TO
8  OBTAIN THIS...
9      MR. COREY: THAT'S REALLY THE BASIS FOR OUR MOTION,
10  IS WE DON'T WANT TO BE PREJUDICED BY HAVING THIS STUFF GIVEN TO
11  US —
12      THE COURT: YOU'RE NOT GOING TO BE PREJUDICED.
13      MR. NOLAN: BY THE WAY, WE DON'T OPPOSE THE
14  SUPPLEMENTATION OF THE EXPERT REPORTS. IN FACT, I THINK SINCE
15  THE WAY THE TIMING IS GOING TO BE WITH JUDGE INFANTE'S RULINGS
16  COMING OUT ON EITHER THE 11TH OR THE 13TH, I THINK BOTH SIDES
17  ARE GOING TO HAVE TO BE SUPPLEMENTING THEIR EXPERT REPORTS THAT
18  ARE DUE ON THE 11TH. IT'S JUST GOING TO BE VIRTUALLY
19  IMPOSSIBLE. SO WE HAVE NO OBJECTION, YOUR HONOR, AS THIS PLAYS
20  OUT, IF THEY HAVE TO SUPPLE ONE OF THEIR EXPERTS.
21      MR. COREY: WE'VE IDENTIFIED SOME THINGS THAT HAVE
22  BEEN IN OUR REPLY ON PAGES 1 AND 2 THAT HAVE BEEN IDENTIFIED IN
23  THE DOCUMENT PRODUCTION, THAT ARE TANGIBLE ITEMS, THAT HAVE NOT
24  BEEN PROVIDED.
25      I'D ENCOURAGE THE COURT TO LOOK AT THAT.

Page 79

1      THE COURT: I AM GOING TO GRANT THE EX-PARTE
2  APPLICATION IN PART. I AM GOING TO GRANT LEAVE TO MATTEL TO
3  TAKE THESE PHOTOGRAPHS AND OBTAIN THIS INFORMATION AND TO
4  REVIEW THE MOLDS.
5      I'M DISINCLINED AT THIS POINT TO MAKE THE
6  COST-SHIFTING. I WILL GIVE LEAVE TO SUPPLEMENT EXPERT REPORTS,
7  THOUGH, DEPENDING ON THE TIMING AND WHEN THIS INFORMATION AND
8  THESE THINGS ARE MADE AVAILABLE. BUT I DO WANT COUNSEL TO MEET
9  AND CONFER.
10      AND THE COURT'S DENIAL OF THE COST-SHIFTING IS MADE
11  WITHOUT PREJUDICE. IF EITHER SIDE IS UNREASONABLE IN TERMS OF
12  HOW THEY GO ABOUT MAKING THESE MOLDS AVAILABLE, THE COURT MIGHT
13  RECONSIDER IT DOWN THE ROAD. BUT LET'S TRY TO GET THESE MOLDS
14  TOGETHER IN HONG KONG, IF WE CAN. IF WE CAN'T, WE CAN'T. AND
15  I'M NOT GOING TO ORDER YOU TO DO SOMETHING YOU CAN'T DO.
16      LET'S TRY TO FIND SOMEBODY OVER THERE ON THE GROUND
17  THAT CAN TAKE IT AND WORK OUT A STIPULATION IN TERMS OF ANY
18  OBJECTIONS TO THAT BEING RELIED UPON BY THE EXPERT. AND IF
19  ANYONE IS UNREASONABLE IN TRYING TO COME UP WITH SOME
20  COST-SAVING MEASURES, THEN THE COURT MIGHT RECONSIDER IMPOSING
21  COSTS. BUT ASSUMING THAT EVERYONE IS WORKING IN GOOD FAITH,
22  I'M GOING TO DECLINE TO DO THAT.
23      THE LAST EX-PARTE APPLICATION IS CONCERNING THE
24  COMPELLING OF PRODUCTION OF ELECTRONIC MEDIA FROM THIRD
25  PARTIES, OR, IN THE ALTERNATIVE, MODIFYING THE SCHEDULING

Page 80

1  ORDER.
2      MY SENSE ON THIS EX-PARTE APPLICATION IS THAT THIS IS
3  SOMETHING WHICH IS PROPERLY BEFORE JUDGE INFANTE. IT'S NOT
4  CLEAR TO ME WHY THIS SHOULD NOT BE, AS OTHER DISPUTES OVER
5  PROVIDING THE ELECTRONIC MEDIA — WHY IT IS NOT BEFORE
6  JUDGE INFANTE.
7      SO I'D LIKE TO HEAR FROM THE PLAINTIFF, FROM MATTEL,
8  ON THIS.
9      IN FACT, MR. NOLAN ACTUALLY MAKES THE ACCUSATION THAT
10  YOU'RE DOING A BIT OF FORUM SHOPPING IN THIS; THAT YOU GOT AN
11  ADVERSE RULING ON THIS BEFORE JUDGE INFANTE ON AN UNRELATED
12  WITNESS AND THAT'S WHY YOU'RE BEFORE THE COURT HERE ON THIS.
13      IS JUST NOT CLEAR TO ME, MR. COREY, WHY THIS IS
14  BEFORE THIS COURT AND NOT BEFORE JUDGE INFANTE.
15      MR. COREY: THE REASON THIS APPLICATION IS BEFORE
16  THIS COURT IS THE SAME AS THE OTHER APPLICATION. ONLY YOUR
17  HONOR HAS THE ABILITY TO ENSURE THAT WE CAN EITHER GET RELIEF
18  FROM THE EXPERT CUTOFF -- FROM THE FILING OF THE EXPERT CUTOFF
19  DATE, NOT BY RELYING ON INFORMATION THAT IS THE SUBJECT OF THIS
20  EX-PARTE APPLICATION THAT WE WILL UNDOUBTEDLY RECEIVE AFTER THE
21  CLOSE OF DISCOVERY.
22      THE COURT: AND THAT'S FAIR ENOUGH. AND I WILL
23  CERTAINLY GIVE ANY PARTY LEAVE TO COME BACK TO THE COURT AFTER
24  A RULING BY JUDGE INFANTE THAT APPARENTLY HAS AN EFFECT OR IS
25  MAKING THE SCHEDULING ORDER UNMANAGEABLE OR NEEDS RELIEF TO

Page 81

1  FILE A SUPPLEMENTAL EXPERT REPORT, OR WHATEVER IT MIGHT BE.
2  BUT IN THE FIRST INSTANCE, I THINK THIS ISSUE SHOULD BE DECIDED
3  BY JUDGE INFANTE. I DON'T WANT TO HAVE ME DECIDING SOME OF
4  THESE ISSUES AND JUDGE INFANTE DECIDING OTHER ONES.
5      MR. COREY: WE'LL PUT THIS IN FRONT OF JUDGE INFANTE,
6  YOUR HONOR.
7      THE COURT: VERY WELL.
8      SO THIS EX-PARTE APPLICATION IS DENIED.
9      I THINK THAT TAKES CARE OF ALL OF IT. I'M GOING TO
10  ISSUE AN ORDER THIS AFTERNOON WHICH WILL SPELL THIS OUT AS
11  CLEARLY AS I CAN. IF THERE ARE ANY QUESTIONS ABOUT IT, COME
12  BACK EARLY AS OPPOSED TO LATER.
13      AND MR. QUINN...
14      MR. QUINN: YOUR HONOR, JUST ONE THING THAT HAD
15  OCCURRED TO ME ABOUT PUTTING PHASE TWO DEPOSITIONS OFF. THERE
16  IS ONE IN LONDON THIS WEEK. OUR LAWYER IS ALREADY ON AN
17  AIRPLANE TO GET OVER THERE; THAT'S MR. BRAUR.
18      I DON'T KNOW IF THAT'S GOING TO BE A PROBLEM.
19      MR. NOLAN: NO ISSUE. WE'LL AGREE.
20      MR. DICANIO, WHO'S OVER IN LONDON, WILL KILL ME IF HE
21  COMES HOME WITHOUT HAVING BEEN DEPOSED. WE MADE HIM AVAILABLE
22  ONE DAY IN LONDON AND --
23      THE COURT: SOUNDS GOOD.
24      MR. QUINN: THEN, YOUR HONOR, WE'RE THINKING AHEAD TO
25  SUMMARY JUDGMENT MOTIONS. I KNOW WE ALL ARE LOOKING AT THIS

FEBRUARY 4, 2008        ED CV 04-9059-SGL EXHIBIT ___

PAGE ___ 24

Page 82

1  CASE AND THINKING ABOUT WAYS IT MIGHT BE CUT DOWN AND SHAPED
2  FOR TRIAL.
3        WE'RE AWARE OF YOUR HONOR'S RULE IN THIS COURTROOM
4  THAT THERE BE ONLY ONE MOTION.
5        THE COURT: YES.
6        MR. QUINN: IT SEEMS TO US THAT -- AS WE LOOK AT IT,
7  WE SEE SEVERAL ISSUES, SEVERAL SIGNIFICANT ISSUES, WHICH MIGHT
8  APPROPRIATELY BE DEALT WITH BY SUMMARY JUDGMENT MOTION.
9        THE COURT: WHEN I SAY ONLY ONE MOTION, I'M NOT
10 SUGGESTING THAT YOU HAVE TO PICK ONLY ONE ISSUE. YOU CAN
11 CERTAINLY BRING AS MANY ISSUES IN THAT MOTION AS YOU NEED TO
12 BRING. I JUST DON'T WANT TO HAVE SUMMARY JUDGMENT MOTIONS ON
13 MULTIPLE DAYS. THAT'S REALLY NOT EVEN IN PLAY IN THIS CASE. I
14 DON'T WANT A MOTION FOR SUMMARY JUDGMENT BROUGHT HALFWAY
15 THROUGH DISCOVERY AND THEN ANOTHER ONE BROUGHT LATER. I JUST
16 WANT TO DEAL WITH ALL OF THE ISSUES THAT COULD BE RAISED ON A
17 MOTION FOR SUMMARY JUDGMENT AT ONCE.
18       MR. QUINN: THE REASON I RAISE THE ISSUE, YOUR HONOR,
19 IS BECAUSE, PRESUMABLY, THE PAGE LIMIT WOULD APPLY. IN A CASE
20 LIKE THIS, WE MIGHT NEED --
21       THE COURT: I ASSUME YOU KNOW HOW TO GO ABOUT ASKING
22 FOR A WAIVER OF THE PAGE LIMIT.
23       MR. QUINN: THANK YOU, YOUR HONOR.
24       THE COURT: ALTHOUGH THAT'S REALLY TEMPTING NOT TO
25 DO IT.

Page 83

1        MR. NOLAN: YOUR HONOR, WE WOULD ASK, JUST LIKE
2  NANCY REAGAN, 'JUST SAY NO.' SOMETIMES THAT WILL WORK.
3        YOUR HONOR, CAN I HAVE ONE CLARIFICATION WITH RESPECT
4  TO SCHEDULING?
5        WHEN IS MATTEL TO FILE A RESPONSE WITH RESPECT TO THE
6  MANNER AND THE CONDUCT OF THE INTERVIEWS OF MS. CABRERA AND
7  MORALES? IS IT FRIDAY? AND IS THERE A HEARING ON MONDAY ABOUT
8  THAT?
9        THE COURT: THAT'S CORRECT. THERE'S AN OPPOSITION ON
10 WEDNESDAY; MATTEL'S REPLY IS FRIDAY; AND THE HEARING IS ON
11 MONDAY.
12       MR. NOLAN: THAT WAS ON THE BANDYING.
13       THE COURT: OH, I'M SORRY.
14       MR. NOLAN: ON CABRERA AND MORALES, I THOUGHT THAT
15 YOU HAD SUGGESTED THAT YOU WANTED TO HANDLE THAT.
16       THESE ARE THE TWO HISPANIC WOMEN.
17       THE COURT: RIGHT. THAT'S ONLY IF -- THERE'S GOING
18 TO BE A MEET-AND-CONFER, AND I HOPE THEY'RE GOING TO WORK THIS
19 ALL OUT BETWEEN THEM. ONLY IF THERE'S A MOTION. AND THEN
20 SHE'S INVITED TO BRING THAT MOTION ON THE 11TH OR THE 25TH,
21 WHATEVER IT IS, AND I'LL LET YOU WORK OUT A SCHEDULING ORDER,
22 AS LONG AS I HAVE THE BRIEFS THE FRIDAY BEFORE THE MONDAY
23 HEARING. I SET THAT FOR THE 11TH, BECAUSE I TRUST COUNSEL CAN
24 WORK THAT OUT.
25       MR. NOLAN: BECAUSE I HAD UNDERSTOOD THAT MR. COREY

Page 84

1  AND MR. QUINN WERE ASKED TO FILE A RESPONSE OR A REPLY TO THE
2  COURT WITH RESPECT TO THE CIRCUMSTANCES.
3        THE COURT: I THINK THEY INDICATED THAT THEY ALREADY
4  HAVE FILED A REPLY AND THAT THERE'S INFORMATION CONCERNING THAT
5  ON THIS.
6        MR. NOLAN: I APOLOGIZE FOR NOT UNDERSTANDING.
7        THE COURT: AM I RIGHT, MR. QUINN?
8        MR. QUINN: THAT WAS MY UNDERSTANDING.
9        THE COURT: THEY JUST DIDN'T KNOW ANYTHING ABOUT THE
10 REPLY; THAT WAS SOMEBODY ELSE WHO WROTE THAT; SO THEY DON'T
11 WANT TO TALK TO ME ABOUT IT RIGHT NOW.
12       THANK YOU. GOOD AFTERNOON.
13
14
15
16
17
18                       CERTIFICATE
19
20 I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
   STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
21 THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
   ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22 CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
   THE UNITED STATES.
23
24 _____    ,    _____
   THERESA A. LANZA, CSR, RPR              DATE
25 FEDERAL OFFICIAL COURT REPORTER

22 (Pages 82 to 84)