**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
<u>Hon. Stephen G. Larson</u>

# <u>EXHIBIT 7</u>

**EXHIBIT TO:** DECLARATION OF CHRISTIAN DOWELL IN SUPPORT OF NON-PARTY MARGARET HATCH-LEAHY'S OPPOSITION TO MATTEL'S MOTION TO COMPEL ADDITIONAL DEPOSITION TESTIMONY AND PRODUCTION OF DOCUMENTS

Page 1

1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                    EASTERN DIVISION

4                        - - -

5       HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                        - - -

7   CARTER BRYANT, ET. AL.,           )
                                      )
8                    PLAINTIFFS,      )
                                      )
9            VS.                      )  NO. ED CV 04-09049
                                      )  (LEAD LOW NUMBER)
10  MATTEL, INC., ET. AL.,            )
                                      )
11                   DEFENDANTS.      )  HEARING ON
    _____    )  EX PARTE APPLICATION
12  AND CONSOLIDATED ACTIONS,         )
                                      )
13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                RIVERSIDE, CALIFORNIA

17             TUESDAY, NOVEMBER 20, 2007

18                    10:11 A.M.

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
           FEDERAL OFFICIAL COURT REPORTER
24           3470 12TH STREET, RM. 134
           RIVERSIDE, CALIFORNIA  92501
25                 951-274-0844

CSR11457@SBCGLOBAL.NET           EXHIBIT   7
                                 PAGE   172

**Page 2**

APPEARANCES:
ON BEHALF OF CARTER BRYANT:
    KEKER & VAN NEST
    BY: JOHN W. KEKER
    BY: CHRISTA ANDERSON
    710 SANSOME STREET
    SAN FRANCISCO, CALIFORNIA 94111-1704
    415-391-5400

ON BEHALF OF MATTEL:
    QUINN EMANUEL
    BY: JOHN S. QUINN
    BY: MICHAEL T. ZELLER
    865 S. FIGUEROA STREET,
    10TH FLOOR
    LOS ANGELES, CALIFORNIA 90017
    213-624-7707

ON BEHALF OF MGA ENTERTAINMENT:
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    BY: THOMAS J. NOLAN
    BY: CARL ALLAN ROTH
    300 SOUTH GRAND AVENUE
    LOS ANGELES, CALIFORNIA 90071-3144
    213-687-5000

ON BEHALF OF GUSTAVO MACHADO:
    OVERLAND BORENSTEIN SCHEPER & KIM
    BY: DAVID C. SCHEPER
    300 SOUTH GRAND AVENUE
    SUITE 2750
    LOS ANGELES, CALIFORNIA 90071
    213-613-4660

ON BEHALF OF DEFENDANTS LEAHY, MARLOW, AND CLOONAN:
    KEATS MCFARLAND & WILSON LLP
    BY: LARRY W. MCFARLAND
    9720 WILSHIRE BOULEVARD
    BEVERLY HILLS, CA 90212

**Page 3**

I N D E X

                      PAGE

HEARING .......................... 5

**Page 4**

1  RIVERSIDE, CALIFORNIA; MONDAY, NOVEMBER 20, 2007; 10:11 A.M.
2                 -OOO-
3     THE CLERK: CALLING CALENDAR ITEM ONE, ED CV 04-9049,
4  CARTER BRYANT VERSUS MATTEL INC. AND CONSOLIDATED CASES.
5     MAY WE HAVE COUNSEL PLEASE COME FORWARD AND STATE
6  YOUR APPEARANCES FOR THE RECORD.
7     MR. QUINN: JOHN QUINN, MIKE ZELLER, FOR MATTEL.
8     MR. NOLAN: TOM NOLAN, CARL ROTH, FOR THE MGA
9  DEFENDANTS AND ISAAC LARIAN.
10    MR. MCFARLAND: LARRY MCFARLAND ON BEHALF OF
11 MS. LEAHY, MS. MARLOW, AND MS. CLOONAN.
12    MR. KEKER: JOHN KEKER FOR MR. BRYANT.
13    MR. SCHEPER: DAVID SCHEPER FOR MR. MACHADO.
14    THE COURT: GOOD MORNING, COUNSEL.
15    WE'RE ON CALENDAR FOR A COUPLE OF MATTERS THIS
16 MORNING. LET ME ADDRESS FIRST THE EX-PARTE APPLICATION, WHICH
17 BROUGHT US TOGETHER TO BEGIN WITH, FILED BY MATTEL.
18    MR. MCFARLAND, I HAVE A COUPLE OF QUESTIONS FOR YOU,
19 IF YOU COULD APPROACH THE LECTERN.
20    I LOOKED IN VAIN, IN YOUR DECLARATION AS WELL AS
21 THROUGHOUT YOUR PAPERS, TO FIND OUT EXACTLY WHEN IT WAS OR WHEN
22 IT IS THAT MS. MARLOW IS LEAVING ON THIS TRIP. YOU MAKE
23 REFERENCE REPEATEDLY TO LATE NOVEMBER, BUT WE ALL PROBABLY HAVE
24 DIFFERENT DEFINITIONS OF WHAT LATE NOVEMBER IS. I COULDN'T
25 FIND ANYWHERE WHERE YOU DEFINE THAT LATE NOVEMBER DATE.

**Page 5**

1     MR. MCFARLAND: I BELIEVE IT'S NOVEMBER 26TH, YOUR
2  HONOR.
3     THE COURT: OKAY; SO IT'S A WEEK FROM YESTERDAY; SO
4  THIS COMING MONDAY.
5     MR. MCFARLAND: YES.
6     THE COURT: THANK YOU; THAT HELPS.
7     MR. QUINN, I UNDERSTAND THAT YOU'RE FRUSTRATED WITH
8  THE CONTINUANCES AND THE CONCERNS THAT YOU HAVE. AND
9  CERTAINLY, AT LEAST BASED ON WHAT YOU HAVE REPRESENTED TO THE
10 COURT, I UNDERSTAND THE IMPORTANCE OF THESE WITNESSES. BUT AT
11 LEAST WITH RESPECT TO TWO OF THEM, IT APPEARS THAT THEY ARE
12 WILLING TO BE MADE AVAILABLE WITHIN A WEEK OF THE DATE THAT YOU
13 ARE REQUESTING; THAT DOESN'T STRIKE THE COURT AS THAT
14 UNREASONABLE, AND IT SEEMS, ASSUMING THAT THEY WOULD BE
15 AVAILABLE ON THOSE DATES, AND I HAVE NO REASON NOT TO ACCEPT
16 COUNSEL'S REPRESENTATION, THAT YOU WOULD HAVE SUFFICIENT TIME
17 THEN BEFORE THE DISCOVERY CUTOFF TO DO ANY FOLLOW-UP DISCOVERY,
18 AT LEAST WITH RESPECT TO THOSE TWO WITNESSES.
19    MR. QUINN: I THINK THAT'S RIGHT, YOUR HONOR.
20    THE ISSUE ISN'T SO MUCH WITH THOSE DATES; IT'S A
21 LITTLE LATER THAN WE WOULD LIKE, OBVIOUSLY.
22    THE COURT: I UNDERSTAND THAT.
23    MR. QUINN: WITHOUT GOING INTO CHAPTER AND VERSE,
24 THERE'S A HISTORY HERE, AND WHAT REALLY CONCERNS US ABOUT THOSE
25 TWO IS THAT WE CAN'T GET A STIPULATION THAT THEY WILL APPEAR.

Page 6

1  THE COURT: I'VE BECOME APPRISED OF THE HISTORY. I
2  DON'T THINK THERE'S TOO MANY CHAPTERS OR VERSES THAT WERE LEFT
3  OUT.
4      MR. QUINN: I THINK AS TO THOSE TWO, IF WE HAD SOME
5  ASSURANCES THAT THE DEPOSITIONS WOULD, IN FACT, GO FORWARD ON
6  THOSE DAYS, I THINK THAT WOULD END THE DISCUSSION AS TO THOSE
7  TWO.
8      THE COURT: NOW, WHERE ARE YOUR DISCUSSIONS WITH
9  MR. MCFARLAND CONCERNING THE THIRD WITNESS, MS. MARLOW?
10     MR. QUINN: WELL, THE DATE THAT HAS BEEN OFFERED IS
11 JANUARY 7TH.
12     THE COURT: THAT'S STILL WELL IN ADVANCE OF THE
13 DISCOVERY CUTOFF.
14     MR. QUINN: WELL, IT'S A COUPLE OF WEEKS IN ADVANCE
15 OF THE DISCOVERY CUTOFF.
16     THE COURT: RIGHT.
17     MR. QUINN: THIS IS A WITNESS WHO REALLY IS CENTRAL;
18 SHE'S THE ONE WHO INTRODUCED, BROUGHT BRYANT AND MGA TOGETHER;
19 SHE APPARENTLY HAS RECEIVED MILLIONS OF DOLLARS AS A FINDER'S
20 FEE FOR HER INVOLVEMENT IN THIS; SHE'S A KEY PERSON. IF WE ARE
21 NOT ABLE TO GET HER TESTIMONY UNTIL THAT DAY, AS A PRACTICAL
22 MATTER, WITHOUT COMING IN, EMERGENCIES, ORDERS TO SHORTEN TIME,
23 OR GETTING EXTENSIONS OF THE DISCOVER CUTOFF TO FOLLOW UP, WE
24 SIMPLY DON'T HAVE ANY TIME TO FOLLOW UP ON ANY NEW INFORMATION
25 THAT SHE MAY PROVIDE US.

Page 7

1  IN THE OPPOSITION THEY CHALLENGED US TO IDENTIFY WHAT
2  FOLLOW UP WE MIGHT NEED. OBVIOUSLY WE DON'T KNOW WHAT THAT IS.
3  WE DO KNOW THAT SHE APPEARS TO HAVE PLAYED A CENTRAL ROLE IN
4  THE EVENTS THAT BROUGHT US ALL TOGETHER IN THIS LAWSUIT; SO
5  THAT DATE IS JUST TOO LATE. IT'S TOO CLOSE TO THE DISCOVERY
6  CUTOFF.
7      AND IF SHE'S LEAVING, WE'D BE PREPARED TO TAKE HER
8  DEPOSITION THIS WEEK OR IMMEDIATELY AFTER SHE RETURNS FROM
9  BRAZIL, BUT WE SUBMIT THAT DATE IS TOO LATE, PARTICULARLY GIVEN
10 THE HISTORY.
11     THE COURT: ALL RIGHT. LET ME GO BACK TO
12 MR. MCFARLAND, THEN.
13     GIVEN THIS HISTORY THAT MR. QUINN REFERS TO, I
14 UNDERSTAND HIS CONCERN ABOUT WAITING UNTIL JANUARY 7TH, WITHOUT
15 HAVING SOME ASSURANCE THAT HE'S GOING TO BE ABLE TO GET ANY
16 FOLLOW-UP DISCOVERY THAT HE THINKS HE MAY NEED. AND I'M ALSO
17 CONVINCED, FROM READING THE PAPERS -- I UNDERSTAND THE TYPE OF
18 FOLLOW-UP DISCOVERY THAT HE MAY NEED. WE CAN'T PREDICT THESE
19 THINGS.
20     WHAT WOULD YOUR PREFERENCE BE IN TERMS OF HAVING YOUR
21 CLIENT BE DEPOSED THIS WEEK, WHICH IS CERTAINLY A POSSIBILITY
22 IF SHE DOES NOT LEAVE UNTIL MONDAY. WE COULD HAVE HER DEPOSED
23 -- SHE RETURNS ON WHAT DATE?
24     MR. MCFARLAND: SHE RETURNS ON THE 17TH.
25     THE COURT: THAT'S GETTING CLOSE TO THE HOLIDAYS, BUT

Page 8

1  WE COULD IT THE WEEK OF THE 17TH. OR, WE COULD DO IT
2  JANUARY 7TH, BUT THEN I'D BE INCLINED TO GIVE MR. QUINN AND
3  MATTEL LEAVE TO EXPAND THE DISCOVERY CUTOFF WITH RESPECT TO
4  THAT WITNESS.
5      I'M RELUCTANT TO DO THAT BECAUSE I THINK THAT GOES
6  DOWN A ROAD THAT MAY CAUSE -- I DON'T LIKE THAT OPTION, BUT
7  THAT'S WHAT I THINK WOULD BE THE ONLY FAIR THING TO DO, GIVEN
8  THAT -- ONE OF THE THINGS THAT MR. NOLAN REQUESTED, THIS SOFT
9  STAY AND THEN THE HARD STAY; I WANTED TO GIVE MR. NOLAN THE
10 BENEFIT OF THAT, BUT I DIDN'T WANT THAT TO PREJUDICE MATTEL.
11 AND I THINK THIS MAY BE AN AREA WHERE IT COMES CLOSE TO DOING
12 SO. NOT INTENTIONALLY. AND I DON'T BUY INTO ANY CONSPIRACY
13 THEORIES HERE THAT HAVE BEEN SUGGESTED IN THE PAPERS, BUT JUST
14 IN TERMS OF HAVING THAT EFFECT.
15     MR. MCFARLAND: WELL, I THINK THAT --
16     MR. KEKER: COULD I INTERRUPT TO ADD A FACT THAT I
17 THINK YOU NEED TO KNOW IN THINKING ABOUT THIS, BECAUSE THIS
18 BUSINESS ABOUT --
19     THE COURT: WELL, IF YOU CAN YIELD TO MR. KEKER, I
20 SUPPOSE WE CAN HEAR FROM MR. KEKER.
21     MR. MCFARLAND: OF COURSE.
22     MR. KEKER: IT REALLY IS MORE INFORMATIONAL.
23     I DON'T KNOW THAT MUCH ABOUT IT, BUT -- IT MAY BE A
24 FREUDIAN SLIP -- THEY KEEP MENTIONING JANUARY 7TH; THE
25 DEPOSITION WAS SUPPOSED TO BE JANUARY 9TH. BUT LAST NIGHT THEY

Page 9

1  NOTICED A MOTION BEFORE YOU FOR JANUARY 7TH IN WHICH MATTEL
2  SAYS THAT THEY NEED, BY OUR COUNT, 49 ADDITIONAL DEPOSITIONS;
3  INCLUDED IN THAT NUMBER ARE OPEN-ENDED 30(B)(6) DEPOSITIONS OF
4  THIRD PARTIES AND SEVERAL ATTORNEYS; THEY NEED MORE 30(B)(6)
5  TIME WITH MGA AND MGA MEXICO, INCLUDING MORE THAN 100 SUB-
6  TOPICS; THEY ARE SEEKING 19 NEW INTERROGATORIES -- THEY HAVE
7  RUN OUT OF THEIR LIMIT -- WITH, AS I UNDERSTAND IT, MANY, MANY
8  SUB-PARTS.
9      THEY HAVE NINE MORE HOURS WITH CARTER BRYANT, BUT NOW
10 THEY WANT ANOTHER 12 BEFORE THEY HAVE TAKEN THE NINE; SO THEY
11 WANT 21 MORE HOURS WITH CARTER BRYANT. AND THIS IS A MOTION
12 THEY FILED LAST NIGHT, AND NOW THEY ARE HERE TALKING ABOUT
13 EXTENDING THE DISCOVERY CUTOFF DATE.
14     WE BELIEVE THAT THEIR DESIRE IS UNSEEMLY.
15     EITHER YOU POSTPONE THE TRIAL AND EXTEND THE
16 DISCOVERY CUTOFF DATE OR YOU KEEP THE DISCOVERY CUTOFF DATE AND
17 YOU GO TO TRIAL.
18     SO WITHOUT ARGUING, I JUST THOUGHT YOU NEEDED TO KNOW
19 THAT THEY FILED THAT MOTION.
20     THE COURT: I APPRECIATE THAT INFORMATION.
21     MR. NOLAN, WOULD YOU LIKE TO ADD TO THAT?
22     I APOLOGIZE, MR. MCFARLAND.
23     MR. NOLAN: FIRST OF ALL, I APPRECIATE THE COMMENT
24 ABOUT NO CONSPIRACY. THERE IS ABSOLUTELY NONE. WE DIDN'T EVEN
25 COORDINATE THE DATES, AND MR. MCFARLAND DOESN'T REPRESENT MGA.

EXHIBIT 7
PAGE 181

Page 10

1    I DO THINK IT'S A LITTLE BIT IRONIC THAT WE'RE BACK
2    TWO WEEKS AFTER OUR LONG-FOUGHT DISCUSSION WITH RESPECT TO THE
3    LENGTH OF THE HARD STAY NOW TO FIND OUT THAT WHAT THEY WANT IS
4    A UNILATERAL EXTENSION OF 60 DAYS FOR THE DISCOVERY CUTOFF
5    DATE, WHERE, IN A SITUATION WHERE I THOUGHT I HAD A STRONGER
6    ARGUMENT, FRANKLY, MR. QUINN TOOK ME TO TASK AND SAID THAT WE
7    SHOULD GET THE WORK DONE.
8        HERE'S THE REAL PRECISE POINT I WANT TO MAKE AS TO
9    THIS JANUARY 7TH TRIAL DATE. YOUR HONOR, THERE IS AN EMPLOYEE
10   OF MATTEL THAT WE HAVE WISHED TO TAKE, AND, IN FACT, THE NAME
11   IS IVY ROSS, SENIOR VICE PRESIDENT OF PRODUCT AND VISUAL DESIGN
12   OF MATTEL, A VERY IMPORTANT WITNESS, ORIGINALLY SCHEDULED FOR
13   NOVEMBER 22ND. OUT OF THE CLEAR BLUE, BECAUSE OF A SCHEDULING
14   ISSUE FOR MS. ROSS, WE WERE TOLD THAT THE DEPOSITION WOULD BE
15   TAKEN OFF CALENDAR AND WE WOULD BE ABLE TO TAKE THE DEPOSITION
16   ON JANUARY 17TH.
17       SO I GUESS WHAT MR. KEKER AND I ARE SAYING AND
18   MR. MCFARLAND IS SAYING IS THAT WHEN YOU READ THROUGH ALL OF
19   THESE PAPERS, FRANKLY, IT DOES SEEM AS THOUGH QUINN EMANUEL
20   LIKES TO HAVE IT UNILATERALLY APPLY TO THEM THAT THEY CAN GET
21   MORE TIME BECAUSE THEY ARE GOING TO BE PREJUDICED. BUT ALL OF
22   US ARE DEALING WITH SIMILAR ISSUES AND APPEAR TO HAVE EVEN
23   GREATER ISSUES COMING, WITH AN ADDITIONAL 49 DEPOSITIONS THAT
24   WE'LL PROBABLY OPPOSE. THERE WERE SET LIMITS BY THE COURT BACK
25   IN THE FEBRUARY HEARING; I'VE READ THE TRANSCRIPT; THERE WAS A

Page 11

1    CONCERN EXPRESSED BY THE COURT ABOUT EXTENSIONS AND GOING WAY
2    BEYOND THAT NUMBER. BUT I REALLY HAVE TO CALL INTO QUESTION
3    THIS JANUARY 9TH PREJUDICIAL ISSUE FOR QUINN EMANUEL WHEN THEY
4    THEMSELVES CAN'T MAKE THE WITNESS AVAILABLE TO US UNTIL
5    JANUARY 17TH.
6        THE COURT: I APPRECIATE YOUR COMMENTS, MR. NOLAN,
7    AND ORDINARILY I THINK I WOULD AGREE.
8        THE REASON WHY THE COURT IS, I SUPPOSE, TAKING A
9    GREATER INTEREST WITH THIS PARTICULAR ISSUE IS BECAUSE I THINK
10   IT WAS THE COURT'S STAY THAT AFFECTED THIS DEPOSITION. I DON'T
11   HAVE THE HISTORY OF THE DEPONENT THAT YOU MAKE REFERENCE TO
12   BEFORE ME. I DO HAVE THE HISTORY OF THESE THREE DEPONENTS, AND
13   I THINK I HAVE A FAIRLY CLEAR UNDERSTANDING OF THE ROLE IN
14   THIS, AND I REALLY WANTED TO AVOID -- ALL I'M TRYING TO AVOID
15   NOW IS TO LESSEN OR MITIGATE ANY CONSEQUENCES, ANY ADVERSE
16   CONSEQUENCES, FROM GIVING YOU THE BENEFIT OF THOSE TWO STAYS
17   THAT I INSTITUTED. THAT'S ALL I'M TRYING TO ACCOMPLISH HERE.
18       I CERTAINLY DON'T WANT TO BECOME ENMESHED IN
19   MICROMANAGING DISCOVERY DATES. I UNDERSTAND THAT'S A PART OF
20   THE CIVIL PRACTICE, TO CANCEL AND RESCHEDULE. I JUST WANT TO
21   COME UP WITH SOME REASONABLE DATES HERE. I CERTAINLY DON'T
22   WANT TO GO DOWN THE ROAD -- AND COMMENTS BY MR. KEKER CERTAINLY
23   UNDERSCORE MY RELUCTANCE TO ALTER OUR DISCOVERY CUTOFF DATE. I
24   WANT TO CONTINUE TO OPERATE IN THE DELUSION THAT WE'RE ACTUALLY
25   WINDING DOWN DISCOVERY AND NOT HEATING UP DISCOVERY; THAT'S THE

Page 12

1    COURT'S PERSPECTIVE, AND I'D LIKE TO KEEP IT AS LONG AS I CAN.
2        HAVING SAID THAT, IT SOUNDS LIKE THE BETTER COURSE,
3    MR. MCFARLAND, AND BACK TO YOU -- AND I'LL CERTAINLY HEAR
4    WHATEVER YOU MINT WANT TO SAY IN LIGHT OF WHAT MR. NOLAN AND
5    MR. KEKER SAID -- BUT IT SOUNDS LIKE WE PROBABLY SHOULD HAVE
6    THIS DEPOSITION GO EITHER RIGHT BEFORE OR RIGHT AFTER SHE GETS
7    BACK FROM HER TRIP TO BRAZIL. I DON'T WANT TO MESS UP HER
8    BRAZIL TRIP. BUT AT THE SAME TIME, SHE PLAYS A PRETTY
9    IMPORTANT ROLE IN THIS, IT SOUNDS LIKE, AND SHE'S GOT SOME
10   IMPORTANT THINGS TO SAY AND SHE NEEDS TO SAY THEM, AND WE NEED
11   TO GET THIS WRAPPED UP IN CASE THERE'S SOME FOLLOWUP.
12       MR. MCFARLAND: MAY I BE HEARD?
13       THE COURT: YOU MAY.
14       MR. MCFARLAND: I THINK IT'S IMPORTANT TO GO BACK TO
15   WHAT THE STANDARD IS. AND UNDER THE MISSION POWER CASE THE
16   STANDARD IS THAT THE MOVING PARTY MUST SHOW THAT IT USED THE
17   ENTIRE DISCOVERY PERIOD EFFICIENTLY AND COULD NOT HAVE, WITHOUT
18   DUE DILIGENCE, SOUGHT TO OBTAIN THE DISCOVERY EARLIER IN THE
19   DISCOVERY PERIOD.
20       I DON'T THINK IT'S CONTESTED THAT THEY HAVE KNOWN
21   ABOUT MS. MARLOW FROM VERY, VERY EARLY ON IN THIS CASE. THEY
22   COULD HAVE TAKEN HER DEPOSITION BEFORE THIS MATTER WENT UP TO
23   THE NINTH CIRCUIT. THEY CHOSE NOT TO DO THAT.
24       THEY COULD HAVE NOT TAKEN SUCH AN UNREASONABLE
25   POSITION WITH RESPECT TO THE DOCUMENTS THAT SHE'S BEEN REQUIRED

Page 13

1    TO PRODUCE; AND LET'S TALK ABOUT THAT FOR A MINUTE.
2        THEY SERVED A SUBPOENA ON MS. MARLOW THAT ON THE FACE
3    OF IT DOES NOT CALL FOR DOCUMENTS REGARDING TO BRATZ AFTER
4    1-1-01. IN MEETING AND CONFERRING -- AND THAT WAS ALWAYS OUR
5    ORIGINAL POSITION BACK IN THE OLD DAYS OF THE CASE -- WHAT'S AT
6    ISSUE HERE IS THE CREATION OF BRATZ; WHAT WAS DONE; WHEN WAS IT
7    DONE; WHO DID IT; ALL THOSE THINGS, THAT'S AT ISSUE. BRATZ HAS
8    CONTINUED TO GO ON OVER YEARS; HAS HAD DIFFERENT FASHIONS AND
9    DIFFERENT PACKAGING, DIFFERENT OUTFITS.
10       WITH RESPECT TO CARTER BRYANT, JUDGE INFANTE RULED
11   THAT CARTER BRYANT NEEDED TO PRODUCE DOCUMENTS WITH RESPECT TO
12   LATER VERSIONS OF BRATZ. MS. WISE TELLS ME ABOUT THIS AT OUR
13   MEET AND CONFER PROCESS. AND INSTEAD OF MAKING THEM GO THROUGH
14   A WHOLE MOTION PRACTICE -- AND EVEN THOUGH THIS IS A RULE 45
15   SUBPOENA, WHICH OBVIOUSLY THE BALANCING OF INTERESTS IS
16   DIFFERENT WITH RESPECT TO A RULE 45 SUBPOENA ON A THIRD PARTY
17   AND A DOCUMENT REQUEST ON A PARTY -- INSTEAD OF DOING THAT, I
18   SAID, FINE, WE'LL WORK WITH YOU AND HAVE MS. MARLOW GO BACK,
19   WHO HAD CONTINUING INVOLVEMENT WITH LATER VERSIONS, AND PRODUCE
20   ALL OF THESE DOCUMENTS; WHICH, AGAIN, TODAY, I THINK THEY ARE
21   COMPLETELY IRRELEVANT TO THE LITIGATION, BUT IT'S VERY TIME
22   CONSUMING; SO WE UNDERTOOK TO DO THAT.
23       WE ALSO HAD TO GO THROUGH, AS YOU KNOW, THIS WHOLE
24   LONG PROCESS WITH OTHER WITNESSES ON THOSE COMPUTER ISSUES,
25   SAYING WE HAD A RIGHT TO OBTAIN THEIR HARD DRIVES; NOT WITH

EXHIBIT 7   PAGE 82   4 (Pages 10 to 13)

Page 14

1  MS. MARLOW BUT WITH OTHERS; SO WE ATE UP A LOT OF TIME ON THAT.
2      SO WE WENT THROUGH THIS PROCESS; AND AT THE END OF
3  THE DAY, WE GAVE DATES AND, YES, THEY WERE CONTINUED BECAUSE OF
4  THE STAY. SO I THINK WE HAVE A BIT OF A FALSE ALARM HERE ABOUT
5  MS. MARLOW, WHO THEY HAVE KNOWN ABOUT SINCE 2004 AND NOW WE
6  HAVE ALL THIS DRAMA SURROUNDING MS. MARLOW.
7      IF THEY REALLY THOUGHT THEY NEEDED HER RIGHT OFF THE
8  BAT, THEY SHOULD HAVE TAKEN HER BACK IN 2004 OR 2005; THAT WAS
9  THEIR CHOICE; THEY DIDN'T DO THAT.
10     THE OTHER THING, JUST FROM A PRACTICAL STANDPOINT,
11 ABOUT CALENDARING, I HAVE COMMITMENTS ON THE 18TH WITH OTHER
12 CLIENTS. I MEAN, IT'S IMPORTANT THAT I BE INVOLVED IN THIS,
13 AND I DO HAVE OTHER CLIENT COMMITMENTS WITH YAHOO ON THAT
14 DAY -- I LEAVE THE 19TH FOR MY PARENTS' 50TH WEDDING
15 ANNIVERSARY; I'LL BE BACK AROUND THE 26TH. MS. MARLOW THEN HAS
16 HER FAMILY; SHE HAS A LARGE FAMILY; SHE HAS FIVE CHILDREN, A
17 GRANDCHILD; SHE'S MADE HERSELF AVAILABLE BEFORE. SHE HAS
18 FAMILY IN TOWN THAT WEEK AND THE WEEK AFTER CHRISTMAS, AND THEN
19 WE PUT HER UP ON THE 9TH, WHICH IS THE WEDNESDAY AFTER HER
20 FAMILY LEAVES.
21     I UNDERSTAND THEY WANT IT; WE HAVEN'T DISAGREED THAT
22 THEY WANT HER DEPOSITION. WE'VE WORKED WITH THEM TO MOVE THIS
23 PROCESS FORWARD. BUT THEY ARE NOT WITHOUT BLAME AND THEY ARE
24 NOT WITHOUT HAVING MADE DECISIONS THAT HAVE PUT THEM IN THIS
25 POSITION.

Page 15

1      THE COURT: WITH RESPECT TO THE OTHER TWO,
2  MS. CLOONAN AND MS. LEAHY --
3      MR. MCFARLAND: YES.
4      THE COURT: -- THE DECEMBER 12TH AND DECEMBER 14TH
5  DATES, CAN YOU REPRESENT TO THE COURT THAT THOSE DEPOSITIONS
6  WILL GO FORWARD ON THOSE DATES, BARRING, OF COURSE, SOME
7  CONTINGENCY THAT NONE OF US AS HUMANS CAN PREDICT?
8      MR. MCFARLAND: YES, YOUR HONOR.
9      THE COURT: ALL RIGHT.
10     I'LL GIVE MR. QUINN OR MR. ZELLER AN OPPORTUNITY TO
11 RESPOND TO THE FALSE ALARM, AS IT'S BEING CALLED HERE.
12     MR. QUINN: WELL, AS THE COURT KNOWS FROM THE PAPERS,
13 WE HAVE ATTEMPTED TO DEPOSE MS. MARLOW SINCE JUNE; THE COURT
14 HAS THE CORRESPONDENCE ON THAT. THE POSITION OF MS. MARLOW'S
15 COUNSEL WAS THAT ALL DOCUMENT ISSUES HAD TO BE RESOLVED BEFORE
16 SHE WOULD APPEAR, ALTHOUGH VARIOUS DATES WERE OFFERED OR
17 PROMISED OR GIVEN AT DIFFERENT TIMES.
18     IF YOU THINK ABOUT IT, IF YOU TAKE THE POSITION THAT
19 MY WITNESS IS NOT GOING TO APPEAR UNTIL ALL DOCUMENT ISSUES ARE
20 RESOLVED, THAT CREATES, IF ONE IS INCLINED TO DO IT, A TERRIFIC
21 WEAPON IN TERMS OF THE POSITIONS ONE TAKES WITH RESPECT TO
22 DOCUMENTS IN ORDER TO PUT OFF THE DEPOSITION, IF ONE THING MUST
23 GO BEFORE THE OTHER.
24     JUST FOR EXAMPLE, WE FINALLY GOT MS. LEAHY'S PLANNER,
25 HER CALENDAR, WHICH WAS, AS COUNSEL REPRESENTS, REDACTED IN THE

Page 16

1  ENTIRE MONTH OF JUNE 2000, A KEY MONTH; THAT WAS ENTIRELY
2  REDACTED. WE OBJECTED TO THAT. HE SAID 'WELL, COME OVER AND
3  TAKE A LOOK AT IT AND SEE IF THERE'S ANYTHING THERE UNDER THOSE
4  REDACTIONS THAT'S SIGNIFICANT.' WE DID; WE FOUND SOME
5  SIGNIFICANT THINGS; WE SAID 'WE NEED TO SEE THE ORIGINAL
6  DOCUMENT WITHOUT THE REDACTIONS.' THEY SAID 'OKAY, WE'LL
7  PRODUCE IT TO YOU.' THEN, THEY PRODUCE IT TO US WITH THE
8  REDACTIONS STILL IN PLACE.
9      I MEAN, THIS IS THE PROCESS THAT WE HAVE GONE
10 THROUGH. I REALLY DON'T THINK ANYBODY CAN SERIOUSLY CONTEND
11 THAT WE HAVE NOT DILIGENTLY TRIED TO TAKE THIS WOMAN'S
12 DEPOSITION. SHE'S A KEY PLAYER; WE WOULD HAVE NO REASON FOR
13 PUTTING IT OFF. I MEAN, WE'RE HERE ON AN EX-PARTE APPLICATION
14 BECAUSE IT'S IMPORTANT; WE WANT TO GET IT DONE; WE EXPECT THERE
15 MAY BE SOME FOLLOW UP.
16     I SUBMIT, IF SHE CANNOT APPEAR THE WEEK OF THE 17TH
17 OR THE WEEK OF THE 24TH, THEN SHE SHOULD APPEAR THIS WEEK.
18     I MEAN, THIS IS A DEPOSITION THAT, IF THE DATES
19 HADN'T BEEN PULLED, BUT FOR THIS STAY, IT WOULD HAVE BEEN
20 TAKEN. WE HAVE NO GUARANTEE THE DATES WOULDN'T HAVE BEEN
21 PULLED, AS THEY HAVE BEEN PULLED IN THE PAST. BUT THIS IS ONE
22 THAT, IF THE DATES HAD STAYED IN PLACE, WOULD HAVE BEEN TAKEN
23 BY NOW.
24     WE'RE GOING TO BE PREJUDICED IF WE HAVE TO WAIT TO A
25 DATE THAT'S WITHIN TWO WEEKS PLUS A COUPLE OF DAYS OF THE

Page 17

1  CUTOFF WHERE THERE'S NO OPPORTUNITY TO DO ANY FOLLOWUP, AND
2  EVERYBODY I THINK, ASSURED US THERE WASN'T GOING TO BE ANY
3  PREJUDICE.
4      IF HER SCHEDULE, AFTER SHE GETS BACK FROM BRAZIL AND
5  COUNSEL'S SCHEDULE, REALLY IS AS BOOKED WALL TO WALL AS HAS
6  BEEN REPRESENTED, THEN THAT DEPOSITION, I SUBMIT, SHOULD GO
7  FORWARD THIS WEEK. IT'S UP TO THEM. WE'LL DO IT THEN OR THIS
8  WEEK.
9      MR. MCFARLAND: I HAVE TO SAY SOMETHING. I'M SORRY,
10 I JUST CAN'T LET THAT GO UNANSWERED.
11     I'VE NEVER DEALT WITH MR. QUINN ON ANY OF THESE
12 MATTERS, SO I'M SURE HE'S JUST MISINFORMED. BUT LET ME JUST
13 TELL YOU THE TRUTH AS TO WHAT OCCURRED WITH RESPECT TO THE
14 PLANNER.
15     THE PLANNER WAS PRODUCED BY PRIOR COUNSEL IN A
16 REDACTED FORM. WHY? BECAUSE MS. LEAHY WAS AN INDEPENDENT
17 CONTRACTOR; MS. LEAHY WORKED FOR MGA AND WORKED FOR OTHER
18 THIRD-PARTY TOY COMPANIES, COMPETITORS OF MATTEL AND MGA. SHE
19 HAS CONFIDENTIALITY AGREEMENTS WITH THOSE OTHER TOY COMPANIES.
20 AND, IN FACT, MY UNDERSTANDING IS THAT SOME OF THE TOYS SHE
21 WORKED ON THAT ARE NOTED IN HER PLANNER NEVER EVEN CAME TO
22 MARKET; MAYBE THEY WILL SOME DAY, WE DON'T KNOW, BUT THEY ARE
23 CONSIDERED CONFIDENTIAL. THAT PLANNER WAS REDACTED.
24     I RECEIVED A MEET AND CONFER LETTER FROM SUSAN WINES
25 WHO WAS A PARTNER AT QUINN WHO IS NO LONGER AT THE FIRM,

EXHIBIT 7   PAGE 183   5 (Pages 14 to 17)

Page 18

1 COMPLAINING THAT SHE THOUGHT SOME ADDITIONAL THINGS SHOULD BE
2 PRODUCED; SO AGAIN, IN AN EFFORT TO TRY TO MOVE THIS PROCESS
3 FORWARD AND IN EVERY EFFORT TO TRY TO BE COOPERATIVE, I SAID
4 'SEND AN ATTORNEY OVER AND LOOK AT THE UNREDACTED PLANNER.'
5     NOW, I PERSONALLY SAT THERE WITH JENNIFER LEWIS, AN
6 ATTORNEY FROM QUINN EMANUEL, WITH THE UNREDACTED, ORIGINAL
7 PLANNER; NO COPIES, NOTHING; THE ORIGINAL PLANNER. I
8 PERSONALLY SAT IN THE ROOM WITH MS. LEWIS WHO LOOKED AT EVERY
9 SINGLE PAGE WITH NO RESTRICTIONS. SHE THEN TOLD US WHAT PAGES
10 SHE THOUGHT SHOULD BE ADDITIONALLY PRODUCED, AND WE PRODUCED
11 THEM. THAT WHOLE MATTER WAS RESOLVED, IN MY VIEW, WITH
12 MS. WINES WHO WAS IN CHARGE OF IT AT THAT TIME.
13     SO I JUST CAN'T LET GO UNANSWERED THESE KINDS OF
14 STATEMENTS THAT ARE JUST NOT ACCURATE.
15     THE COURT: I APPRECIATE THAT, COUNSEL.
16     GETTING BACK TO WHAT WE HAVE HERE, THOUGH, -- DON'T
17 GO ANYWHERE, MR. MCFARLAND -- YOU GET BACK FROM YOUR PARENTS'
18 ANNIVERSARY WHEN?
19     MR. MCFARLAND: I GET BACK FROM THAT ON SATURDAY, THE
20 22ND. I'M GOING OUT OF TOWN; MY BIRTHDAY IS DECEMBER 23RD AND
21 WE'RE GOING TO BE OUT OF TOWN FROM THE 23RD THROUGH THE 26TH.
22     THE COURT: OKAY.
23     MR. MCFARLAND: IT WAS A YEAR AFTER THEIR
24 ANNIVERSARY.
25     (LAUGHTER.)

Page 19

1     MR. MCFARLAND: IT ALWAYS SOUNDS A LITTLE CLOSE, YOUR
2 HONOR.
3     MR. QUINN: HE MIGHT NOT BE THE FIRST BORN.
4     THE COURT: THERE'S A LOT OF THINGS I HEAR IN THIS
5 COURT; BELIEVE ME, THAT WOULD NOT BE THE MOST SCANDALOUS.
6     IN ANY EVENT, I APPRECIATE YOU VOUCHING FOR YOUR
7 PARENTS.
8     MR. MCFARLAND: I ALWAYS TRY TO; THEY ARE GOOD
9 PEOPLE.
10     THE COURT: I'M SURE THEY WOULD DO THE SAME FOR YOU.
11     I WANT TO GIVE MR. QUINN AN OPPORTUNITY TO DO THIS
12 FOLLOWUP DISCOVERY. I DON'T WANT TO BUST THE DISCOVERY CUTOFF
13 DATE. IF WE DID THAT DEPOSITION WHEN YOU GOT BACK FROM YOUR
14 BIRTHDAY CELEBRATION AT THE END OF DECEMBER, THE 27TH, THE
15 28TH, THAT WOULD GIVE MATTEL THE FULL MONTH OF JANUARY THEN TO
16 FOLLOW UP.
17     ARE YOU AVAILABLE EITHER OF THOSE TWO DATES?
18     PLEASE UNDERSTAND THAT THE ALTERNATIVE MAY BE THIS
19 WEEK; SO THINK HARD BEFORE YOU ANSWER.
20     MR. MCFARLAND: I CAN MAKE MYSELF AVAILABLE AFTER
21 CHRISTMAS. THE WITNESS IS GOING TO BE -- I DON'T KNOW WHAT I'M
22 GOING TO DO. IT'S CHRISTMAS; SHE HAS HER ENTIRE FAMILY HERE.
23     THE COURT: I DO UNDERSTAND THAT, AND I AM RELUCTANT
24 TO DO THIS, BUT THE ALTERNATIVE IS FOR HER TO DO IT THIS WEEK.
25     MR. MCFARLAND: 'THIS WEEK' MEANING TOMORROW, OR

Page 20

1 THANKSGIVING DAY?
2     THE COURT: I SUSPECT MR. QUINN AND MR. ZELLER WOULD
3 MAKE THEMSELVES AVAILABLE TOMORROW.
4     MR. MCFARLAND: WELL, I'M NOT AVAILABLE TOMORROW.
5     THE COURT: WELL, YOU JUST RAISED TOMORROW.
6 THIS WEEK OR THE 27TH OR THE 28TH.
7     MR. MCFARLAND: I MEAN, IF YOU'RE ORDERING HER TO, I
8 ASSUME SHE'LL COMPLY WITH THE ORDER.
9     I THINK WE'RE GETTING, AGAIN, AHEAD OF OURSELVES WHEN
10 YOU THINK ABOUT A RULE 45 SUBPOENA ON A THIRD-PARTY WITNESS. I
11 MEAN, WHO BEARS THE BURDEN AND WHO HAS THE UNCLEAN HANDS HERE
12 AND WHO'S CAUSED US TO BE IN THIS POSITION? I DON'T THINK IT'S
13 MS. MARLOW. I CERTAINLY DON'T THINK IT'S ME. I THINK IT'S THE
14 DECISIONS AND THE PROCESSES THAT QUINN EMANUEL HAS GONE
15 THROUGH, AND NOW THEY ARE CREATING A SENSE OF DRAMA AND A SENSE
16 OF CRISIS.
17     THE COURT: COUNSEL, I'D RATHER NOT HAVE TO MAKE
18 FINDINGS IN THIS. IF YOU WANT ME TO MAKE FINDINGS, I'LL BE
19 HAPPY TO DO SO; I'M CERTAINLY ABLE TO DO SO; I'VE CERTAINLY
20 READ ENOUGH INFORMATION TO DO SO.
21     I'D RATHER YOU SELECT ONE OF THE TWO OPTIONS I'VE
22 PRESENTED FOR YOU AND LET US CALL IT A DAY.
23     MR. MCFARLAND: I WOULD PICK FRIDAY THE 28TH.
24     NOW, CAN I SPEAK TO HER ABOUT IT, OR IS THAT NOT
25 SOMETHING YOU WOULD LET ME DO?

Page 21

1     I DO THINK SHE'S IN TOWN. I'M TRYING TO BE HONEST
2 HERE. I'M PRETTY FAMILIAR WITH HER SCHEDULE. I'M FAIRLY SURE
3 THEY ARE CELEBRATING CHRISTMAS IN TOWN BECAUSE HER FAMILY IS
4 COMING HERE. THEY ARE VERY RELIGIOUS. SO I THINK THAT'S FINE.
5 BUT HONESTLY, I DIDN'T CLEAR THE TWO DAYS AFTER CHRISTMAS AT
6 ALL.
7     I COULD TRY TO CALL HER.
8     THE COURT: VERY GOOD.
9     WE COULD DO IT THIS FRIDAY AS WELL.
10     MR. MCFARLAND: WOULD YOU LIKE ME TO STEP OUT AND SEE
11 IF I CAN REACH HER?
12     THE COURT: WHY DON'T YOU PICK ONE OF THOSE TWO
13 DATES; THIS FRIDAY OR FRIDAY THE 20TH. IT SOUNDS LIKE THOSE
14 ARE THE ONLY TWO DAYS THERE; NEITHER OF THEM ARE HOLIDAYS;
15 NEITHER OF THEM ARE RELIGIOUS OBSERVANCES; THEY PROVIDE
16 SUFFICIENT TIME TO GET THE DISCOVERY DONE WITHOUT CHANGING THE
17 DISCOVERY CUTOFF; AND IT RESOLVES THIS ISSUE. AND I'LL ACCEPT
18 YOUR REPRESENTATION AND WILL NOT NEED TO ORDER YOU TO DO
19 ANYTHING.
20     MR. MCFARLAND: OKAY.
21     THE COURT: THERE'S A FEW OTHER MATTERS THAT I WANT
22 TO TAKE UP NOT RELATED TO THIS MATTER. WHAT WE'LL DO IS AT THE
23 END OF THIS HEARING, YOU CAN MAKE THAT PHONE CALL. IF THERE'S
24 NO PROBLEM WITH IT, I DON'T NEED TO HEAR BACK FROM YOU. IF
25 THERE IS, WE'LL RECONVENE.

EXHIBIT 7
PAGE 184
6 (Pages 18 to 21)

Page 22

1  MR. MCFARLAND: DECEMBER 28TH.
2  THE COURT: DECEMBER 28TH, OR, LIKE I SAY,
3  NOVEMBER 23RD IS AVAILABLE AS WELL; LET'S DO IT ON ONE OF THOSE
4  TWO DATES, AND THAT WAY WE CAN MOVE FORWARD ON THIS ISSUE.
5      GIVEN THESE REPRESENTATIONS, THERE'S NO NEED FOR THE
6  COURT TO GRANT THE EX-PARTE APPLICATION; WE'LL SIMPLY RENDER IT
7  MOOT BY THE REPRESENTATIONS MADE BY COUNSEL.
8      THERE ARE A COUPLE OF ISSUES THAT I WANT TO TAKE UP.
9      ONE CONCERN THAT I HAVE IN THIS CASE -- ALL FEDERAL
10 CASES ARE IMPORTANT, SOME TEND TO BE A LITTLE BIT MORE
11 SIGNIFICANT THAN OTHERS. THE COURT VIEWS THIS AS A SIGNIFICANT
12 CASE AND WANTS TO TREAT IT AS SUCH, AND IT'S IMPORTANT THAT
13 COUNSEL DOES THE SAME THING; SO I WANT TO HAVE A CLEAR
14 IDENTIFICATION OF WHO IS THE LEAD COUNSEL FOR THE RESPECTIVE
15 PARTIES. AND I SAY THIS FOR PURPOSES OF MAKING APPEARANCES AT
16 HEARINGS; CERTAINLY AT THE TRIAL; APPEARANCES BEFORE THE
17 SETTLEMENT OFFICER. I WANT TO MAKE SURE WE HAVE A CLEAR
18 UNDERSTANDING.
19     I TOOK A LOOK AT THE DOCKET SHEET AND IT LISTS
20 EVERYBODY AS LEAD COUNSEL, EVERY ATTORNEY OF RECORD IN THIS
21 CASE IS LISTED IN THE DOCKET SHEET AS LEAD COUNSEL, AND I'M
22 GOING TO CLEAN THAT UP; SO I WANTED TO HAVE LEAD COUNSEL HERE
23 TODAY SO I COULD GET A CLEAR UNDERSTAND OF WHO IT IS THAT'S
24 LEAD COUNSEL. I'M GOING TO SIMPLY ASK FOR EACH PARTY TO MAKE A
25 REPRESENTATION AS TO WHO IS THE LEAD COUNSEL FOR THAT PARTY.

Page 23

1  WHY DON'T WE BEGIN WITH THE PLAINTIFF, MATTEL.
2      MR. QUINN: FOR MATTEL, IT'S ME, YOUR HONOR,
3  JOHN QUINN.
4      THE COURT: AND FOR MGA?
5      MR. NOLAN: FOR THE MGA DEFENDANTS AND ISAAC LARIAN,
6  IT'S TOM NOLAN FROM SKADDEN ARPS.
7      THE COURT: FOR CARTER BRYANT?
8      MR. KEKER: FOR MR. BRYANT -- I THINK THIS MAY BE
9  DIRECTED TO ME -- I AM LEAD COUNSEL; JOHN KEKER IS LEAD
10 COUNSEL; I AM TRIAL COUNSEL; I AM TRYING THE CASE. WHEN THE
11 PRETRIAL CONFERENCE COMES AND THE TRIAL RESPONSIBILITIES, THOSE
12 ARE MY RESPONSIBILITIES. CONDUCT OF THE CASE FOR MR. BRYANT IS
13 MY RESPONSIBILITY.
14     BUT THAT DOES NOT MEAN THAT I AM PLANNING TO OR CAN
15 BE AT EVERY EVENT OR COURT HEARING. AND WHAT WE HAVE DONE --
16 AND IT'S BECAUSE OF COSTS, IT'S BECAUSE OF, FRANKLY, DIFFERENT
17 SKILLS -- YOU DON'T WANT ME AT A MEDIATION, I THINK. I MEAN,
18 MY SKILLS ARE MORE TRIAL SKILLS AND NOT MEDIATION SKILLS. MY
19 PARTNER CHRISTA ANDERSON -- AND I HAVE TALKED TO
20 AMBASSADOR PROSPER ABOUT THIS -- MY PARTNER CHRISTA ANDERSON IS
21 GOING TO HANDLE MEDIATION MATTERS. MY PARTNER CHRISTA ANDERSON
22 WILL BE MAKING A NUMBER OF APPEARANCES WHEN WE COME DOWN HERE
23 LIKE THIS.
24     BUT I WOULD HOPE, YOUR HONOR, THAT YOU'D RECOGNIZE
25 THAT IN A CASE LIKE THIS WHERE THERE'S A LOT OF APPEARANCES,

Page 24

1  THERE'S GOT TO BE SOME KIND OF EFFICIENT USE OF RESOURCES
2  WITHIN THE OFFICE, AND PLANNING, AND THAT A NUMBER OF US HAVE
3  OTHER CASES; AND I DON'T WANT TO BE THE ONE -- I'VE ALREADY,
4  BECAUSE OF MY TRIAL SCHEDULE, CAUSED SOME INTERFERENCE WITH
5  SCHEDULING, AND WE TRIED TO AVOID THAT TOO.
6      AND THEN THERE'S THE MATTER OF COSTS. FRANKLY, I'M
7  MORE EXPENSIVE THAN SOME OF MY PARTNERS. MR. BRYANT IS PAYING
8  SOME OF THESE FEES; SO THAT'S SOMETHING THAT I BELIEVE, AS A
9  TRIAL LAWYER AND AS A PERSON WHO'S BEEN DOING THIS FOR A LONG
10 TIME, THAT REALLY NEEDS TO BE LEFT UP TO THE LAWYERS.
11     IF FOR ANY REASON AT ANY TIME, YOU FIND PEOPLE FROM
12 OUR OFFICE REPRESENTING CARTER BRYANT ARE NOT DOING A JOB THAT
13 YOU THINK MR. BRYANT DESERVES AND ANY LITIGANT IN THE FEDERAL
14 COURT DESERVES AND IS NOT TREATING THIS COURT TO THE RIGHT LAW
15 AND THE RIGHT ARGUMENTS AND ISN'T BEHAVING COMPETENTLY, BOY,
16 I'D LIKE TO HEAR ABOUT IT AND WE'LL TAKE CARE OF IT. BUT I
17 DON'T THINK THAT'S GOING TO BE A PROBLEM AND I DON'T THINK IT
18 HAS BEEN A PROBLEM.
19     BUT IF YOU'RE EXPECTING ME TO DO EVERYTHING IN THIS
20 CASE OR ALL OF THE COURT APPEARANCES OR ALL OF THE MEDIATION,
21 I'M NOT PLANNING TO AND I CAN'T.
22     THE COURT: NO, I'M NOT EXPECTING, COUNSEL, AND I
23 HAVEN'T RAISED THIS WITH AN ISSUE WITH RESPECT TO ANY OF THE
24 HEARINGS. IN FACT, THERE HAVE BEEN SOME HEARINGS WHERE
25 CARTER BRYANT HAS NOT EVEN BEEN REPRESENTED THE ENTIRE HEARING;

Page 25

1  COUNSEL HAD TO LEAVE IN THE MIDDLE OF THE HEARING, IF I RECALL
2  CORRECTLY, AND I DON'T HAVE A PROBLEM WITH THAT. WHO YOU SEND
3  TO ARGUE FOR DIFFERENT MOTIONS, THAT'S CERTAINLY A TACTICAL
4  DECISION THAT I WOULD DEFER TO COUNSEL. THE PRETRIAL
5  CONFERENCE, OF COURSE, I WILL INSIST ON LEAD COUNSEL BEING
6  PRESENT. THE TRIAL, OF COURSE, IS A DIFFERENT ISSUE.
7      I DO HAVE CONCERNS ABOUT SETTLEMENT AND MEDIATION.
8      AGAIN, I UNDERSTAND AND I RECOGNIZE THAT DIFFERENT
9  ATTORNEYS HAVE DIFFERENT SKILLS, AND I CERTAINLY RESPECT YOUR
10 OPINION TO DEFER TO YOUR PARTNER ON THAT.
11     WHAT I DON'T WANT TO HAVE HAPPEN IS A SITUATION WHERE
12 YOUR ABSENCE IS EVER USED AS AN EXCUSE FOR NOT MOVING FORWARD
13 ON SOMETHING --
14     MR. KEKER: IT NEVER WILL BE, YOUR HONOR.
15     THE COURT: -- EVEN IF THAT SOMETHING IS RESOLVING
16 THE CASE, AND THAT'S THE CONCERN I HAVE.
17     I'VE DONE ENOUGH SETTLEMENT CONFERENCES MYSELF AS A
18 MAGISTRATE JUDGE TO -- WELL, LET'S JUST SAY THAT AFTER FIVE
19 YEARS OF DOING THAT, I CAME TO THE CONCLUSION THAT I COULDN'T
20 THINK OF A CASE WHERE IT WAS NOT IMPORTANT TO HAVE LEAD COUNSEL
21 PRESENT FOR THE SETTLEMENT CONFERENCE; IF NOT FOR THE FINAL
22 AUTHORITY, JUST AS THE PERSON WHO COULD BEST ARTICULATE THE
23 CLIENT'S POSITION.
24     MR. KEKER: I APPRECIATE THAT, AND I'M NOT SURPRISED
25 THAT YOU HAVE COME TO BELIEVE THAT. THERE'S A COUPLE OF THINGS

EXHIBIT 7
PAGE 185
7 (Pages 22 to 25)

Page 26

1  ABOUT THIS CASE, FIRST, IF I COULD SPEAK PRACTICALLY.
2      THE COURT: PLEASE.
3      MR. KEKER: IF THIS CASE GETS SETTLED, IT'S BECAUSE
4  MGA -- THE TWO BIG KAHUNAS HERE -- MGA AND MATTEL FIND SOME WAY
5  TO MAKE PEACE. CARTER BRYANT IS A PIMPLE ON THIS PROBLEM; I
6  WON'T SAY ON WHICH PART OF THIS PROBLEM; BUT HE IS NOT GOING TO
7  BE THE DRIVER -- I'M NOT SAYING HE'S NOT GOING TO HAVE TO
8  PARTICIPATE OR SOMETHING IN THE SETTLEMENT, BUT HE'S NOT THE
9  DRIVER OF THE SETTLEMENT; IT WILL BE THE TWO BIG CORPORATIONS.
10 THAT'S ONE THING.
11     THE SECOND THING IS THAT, IN MY EXPERIENCE, MOST OF
12 THE IMPORTANT WORK IN EXPLAINING TO THE CLIENT ABOUT WHAT'S
13 GOING ON AND WHAT THEIR ROLE IN THE SETTLEMENT IS OFTEN HAPPENS
14 BEFORE YOU EVEN GET TO THE MEDIATION PROCESS.
15     BUT THE THIRD THING IS THAT THE PERSON AT THE
16 MEDIATION PROCESS THAT YOU WANT IS THE PERSON WHO'S BOTH MOST
17 FLEXIBLE, OPEN MINDED, AND WHO DOESN'T EASILY GET THEIR BACK
18 UP.
19     THE COURT: AND THAT'S NOT YOU.
20     MR. KEKER: AND I CAN GIVE YOU A LIST OF MEDIATORS
21 WHO WILL SAY 'THANK GOODNESS HE'S NOT HERE AT THIS MEDIATION.'
22 AND I CAN ASSURE YOU THAT MS. ANDERSON, AS A VERY SENIOR
23 EXPERIENCED LAWYER AND HAS DONE THIS A LOT FOR BIG COMPANIES
24 LIKE INTEL AND INDIVIDUALS AND SO ON, WILL NEVER BE IN A
25 POSITION TO SAY 'WAIT A MINUTE, I'VE GOT TO CALL KEKER,'

Page 27

1  BECAUSE THAT'S NOT THE WAY WE OPERATE. AND SHE'LL BE THE
2  PERSON THERE WITH MR. BRYANT, AND IF THEY HAVE TO MAKE
3  DECISIONS ABOUT PARTICIPATING IN THE SETTLEMENT, THEY WILL BE
4  FULLY EMPOWERED AND READY AND ABLE TO DO THAT.
5      THE COURT: I WILL TAKE YOUR THOUGHTS UNDER
6  CONSIDERATION AND AS PART OF THE MINUTE ORDER FOR TODAY, I'LL
7  ISSUE A DIRECTIVE ON THAT. BUT I'LL THINK ABOUT WHAT YOU SAID,
8  MR. KEKER. I APPRECIATE THAT.
9      MR. KEKER: AND I GUESS THE OTHER THING THAT I JUST
10 WANT TO SAY IS THAT SCHEDULING WITH MS. ANDERSON IS A LOT
11 EASIER THAN SCHEDULING WITH ME, AND THAT'S ANOTHER PROBLEM THAT
12 I HOPE THE COURT WILL TAKE INTO CONSIDERATION.
13     THE COURT: WHAT'S THAT? I'M SORRY?
14     MR. KEKER: I'VE GOT MORE THINGS IN DIFFERENT PARTS
15 OF THE COUNTRY MORE OFTEN. MS. ANDERSON WILL BE CONCENTRATING
16 ON THIS CASE AND A COUPLE OF OTHER CASES. I'LL BE, BETWEEN NOW
17 AND THIS TRIAL, CONCENTRATING ON MORE THINGS, WORKING ON MORE
18 THINGS, THAN SHE WILL.
19     THE COURT: THE COURT WOULD EXPECT THAT YOU HAVE
20 CALENDERED THE PRETRIAL CONFERENCE AND THE TRIAL --
21     MR. KEKER: NEEDLESS TO SAY.
22     THE COURT: -- AND THAT YOU WON'T BE IN ANY OTHER
23 PARTS OF THE COUNTRY DURING THOSE OCCASIONS.
24     MR. KEKER: THAT'S WHAT I DO.
25     THE COURT: AND THE HEARINGS, I'M NOT TALKING ABOUT

Page 28

1  THE HEARINGS. I'M NOT NECESSARILY SOLD ON THE SETTLEMENT
2  CONFERENCE, BUT I'LL THINK ABOUT THAT AND I WILL LET YOU KNOW
3  THE COURT'S VIEW OF THAT.
4      MR. KEKER: SURE.
5      MR. QUINN: YOUR HONOR, WHATEVER THE RULES ARE ON
6  THAT, I JUST THINK THEY OUGHT TO BE -- I'M NOT A GIFTED
7  SETTLEMENT PERSON EITHER. I COULD ALSO PROVIDE A LIST OF
8  MEDIATORS WHO WOULD SAY IT'S NOT AMONG MY TALENTS, AND MOST OF
9  MY CASES ARE OUTSIDE OF THE STATE OF CALIFORNIA TOO; SO
10 WHATEVER THE RULES ARE, I JUST THINK THEY OUGHT TO APPLY THE
11 SAME TO EVERYBODY.
12     THE COURT: I APPRECIATE YOUR THOUGHTS ON THAT, AND
13 I'LL TAKE THOSE INTO CONSIDERATION AS WELL AND I'LL GIVE YOU
14 SOME GUIDANCE ON THAT, BUT I REALLY DO WANT -- READING REAMS OF
15 LETTERS AND CORRESPONDENCE BACK AND FORTH, I UNDERSTAND THAT
16 THIS IS A HOTLY CONTESTED CASE. I JUST REALLY WANT A GOOD
17 FAITH EFFORT MADE TO TRY TO RESOLVE THIS, AT LEAST ONE SERIOUS
18 EFFORT MADE, AND I APPRECIATE THAT AMBASSADOR PROSPER HAS
19 AGREED TO HELP WITH THIS AND I AM JUST HOPING WE CAN PUT
20 SOMETHING TOGETHER.
21     IF WE CAN'T, WE CAN'T. THIS MAY BE THE TYPE OF CASE
22 THAT JUST NEEDS A TRIAL, AND IF THAT'S IT, I'LL LOOK FORWARD TO
23 THE TRIAL. I CONSIDER IT A PRIVILEGE TO HAVE THIS COLLECTION
24 OF ATTORNEYS IN THIS COURTROOM.
25     THE OTHER ISSUE THAT I NEED TO BRING UP, AND THAT IS

Page 29

1  EX-PARTE COMMUNICATIONS WITH THE COURT.
2      MR. MCFARLAND: MAY I STEP OUT NOW TO MAKE THAT PHONE
3  CALL?
4      THE COURT: NO. ACTUALLY, I WANT YOU TO HEAR THIS AS
5  WELL, COUNSEL, AND THEN I'LL GIVE YOU A RECESS.
6      MR. MCFARLAND: THANK YOU.
7      THE COURT: ALL COUNSEL SHOULD FEEL COMFORTABLE
8  CALLING MR. HOLMES TO GET INFORMATION FROM THE DOCKET,
9  PRACTICES, WHATEVER IT MIGHT BE. BUT NOBODY SHOULD BE CALLING
10 MR. HOLMES TO TRY TO MOVE HEARINGS, HAVE PEOPLE EXCUSED FROM
11 HEARINGS.
12     YOU ALL KNOW, PROBABLY BETTER THAN I, THE PROCEDURES
13 THAT ARE SUPPOSED TO BE USED TO CHANGE THINGS. YOU'RE ALL
14 CAPABLE OF DRAFTING STIPULATIONS AND PROPOSED ORDERS, EX-PARTE
15 APPLICATIONS AND PROPOSED ORDERS. DON'T BE USING MR. HOLMES
16 AND HIS RESPONSIVENESS TO RETURN PHONE CALLS AS A MEANS OF
17 TRYING TO SHORT-CIRCUIT THAT PROCESS AND GET THINGS DONE.
18 THAT'S ALL I'M GOING TO SAY, AND I TRUST YOU'LL ALL TAKE THAT
19 TO HEART.
20     IS THERE ANYTHING FURTHER FROM COUNSEL AT THIS POINT
21 IN TIME THAT NEEDS TO BE TAKEN UP?
22     MR. QUINN: NOT THAT I'M AWARE OF, YOUR HONOR.
23     THE COURT: MR. NOLAN?
24     MR. NOLAN: I'M NOT THAT DIFFICULT AT MEDIATIONS, BUT
25 I HAVE NOTHING FURTHER TO ADD.

EXHIBIT 7
PAGE 186
8 (Pages 26 to 29)

Page 30

1  THE COURT: VERY WELL.
2  MR. MCFARLAND, WHY DON'T YOU GO AHEAD AND MAKE THAT
3  PHONE CALL NOW.
4  THE COURT: MR. SCHEPER?
5  MR. SCHEPER: I WAS JUST THINKING WHETHER I'M EQUALLY
6  UNGIFTED IN ALL MATTERS OF LITIGATION PROCEEDINGS, BUT BEYOND
7  THAT OBSERVATION, I HAVE NOTHING TO ADD.
8  THE COURT: ANYBODY ELSE?
9  VERY WELL.
10  I'M GOING TO ASK COUNSEL JUST TO WAIT AROUND; LET'S
11  MAKE SURE WE CAN GET THIS DEPOSITION SCHEDULED, AND THEN WE'LL
12  BE DONE.
13  I WISH EVERYONE A HAPPY THANKSGIVING.
14  THE CLERK: COURT STANDS IN RECESS.
15  (WHEREUPON A BRIEF RECESS WAS HELD.)
16  (WHEREUPON PROCEEDINGS WERE CONCLUDED.)
17
18              CERTIFICATE
19
20  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
21  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
    ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.
23
24  _____     _____
    THERESA A. LANZA, CSR, RPR      DATE
25  FEDERAL OFFICIAL COURT REPORTER

EXHIBIT 7
PAGE 187

9 (Page 30)