1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 15**

**EXHIBIT TO:**    DECLARATION OF CHRISTIAN DOWELL IN SUPPORT OF NON-PARTY MARGARET HATCH-LEAHY'S  OPPOSITION TO MATTEL'S MOTION TO COMPEL ADDITIONAL DEPOSITION TESTIMONY AND PRODUCTION OF DOCUMENTS

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

November 21, 2007

VIA FACSIMILE, VIA HAND DELIVERY

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

            Re:    Mattel v. Bryant

Dear Dylan:

            I am writing in response to your letter dated November 15, 2007.

            With respect to the document control numbers listed on the first two pages of your letter, I can confirm that this is a complete list of all the documents produced to date by Ms. Leahy, Ms. Marlow, Ms. Cloonan and Ms. Halpern that were assigned document control numbers.[1][2] The reason that I am making this distinction is that, as you know, Ms. Leahy and Ms. Marlow have produced sculpts and other three-dimensional objects that your firm has photographed and/or videotaped. In order to avoid any confusion, I propose that we make photocopies of each of these produced sculpts and three-dimensional objects and assign each photocopy a bates number. Please let me know if you agree with this proposal. Also, with respect to the photographs taken and the videotapes made by your firm of these sculpts and three-dimensional objects, I previously asked Ms. Wines for copies of these photographs and videotapes. She refused to provide me with copies and told me that it was your firm's position that the photographs and videotapes are work product and that your firm does not intend to use them at any of the depositions or at trial. Please confirm that Ms. Wines' statement is correct and that you will not be using any of these photographs or videotapes at the depositions of any of my clients or at trial.

            With respect to your question involving whether the production of documents is complete, I can confirm that Ms. Halpern has produced all responsive documents in her possession, custody and control. With respect to Ms. Marlow, we are delivering to you with this

---

[1] For documents KMW-M 00667 through KMW-M 03040, your notation of the production date as August 29, 2007 does not reflect that an attorney from your office inspected the documents on August 24, 2007.
[2] For documents ACFR000364 through ACFR000390 and SHFR000225 through SHFR000364, your notation of the receipt date as October 29, 2007 does not reflect my letter dated October 26, 2007 to Mr. Zeller and Data Chasers, releasing the documents.

EXHIBIT ___15___
PAGE ___213___

B. Dylan Procter, Esq.
November 21, 2007
Page 2

letter document control numbers KMW-M 006695 through KMW-M 007643. In addition, we received some three-dimensional objects from Ms. Marlow for your review. Please let me know when someone from your office is available to inspect them. Regarding Ms. Leahy, she has located some additional three-dimensional objects which are available for your review. Please let me know when someone from your office is available to review these items. With respect to Ms. Cloonan, we noticed that your computer expert did not pick up a computer disk with Ms. Cloonan's computer. I suggest that we provide this disk to Data Chasers pursuant to the terms of our agreement as set forth in the letter from Ms. Wines dated September 13, 2007. In addition, in order to speed things up, we will agree to review anything found by Data Chasers within five court days of receipt from Data Chasers rather than the ten court days set forth in Ms. Wine's letter. Please let me know if this is acceptable. With the production of these last remaining items, I believe that the production from Ms. Marlow, Ms. Leahy, Ms. Halpern and Ms. Cloonan is complete.

Regarding the withholding of documents based on privilege grounds, it is our position that the fee agreements between our clients and their attorneys, as well as all correspondence between our clients and their attorneys, are privileged.

Regarding your statements with respect to redactions, your assertion that our clients have improperly redacted documents is incorrect. In addition, you continue to cite the previously redacted pages from Ms. Leahy's day planner, even though, as you know, additional pages from that day planner were produced pursuant to our agreement with Ms. Wines. (See my letter to you dated November 14, 2007.) I am not aware of any order from Judge Infante that precludes third parties from redacting irrelevant information. If there are any such orders, please provide copies to me. In addition, as I have previously stated, it is our position that any discovery disputes with our third party clients will be heard by Magistrate Judge Block. However, in an effort to try to avoid unnecessary motion practice, we are re-reviewing all of the documents that were redacted, and if there are any errors, we will provide corrected documents to you.

With respect to your request regarding whether Ms. Leahy, Ms. Marlow, Ms. Halpern or Ms. Cloonan have fee agreements with MGA, written or otherwise, without admitting that any such documents exist, it is our position that the request seeks the production of privileged information. Under the attorney-client privilege, confidential communications made by a client to an attorney to obtain legal services are protected from disclosure. California statutory authority provides that "[a] written fee contract shall be deemed to be a confidential communication within the meaning of [Cal. Bus. & Prof. Code § 6068(e)] and of [Cal. Evid. Code § 952]." Section 6068(e)(1) affirms that "[i]t is the duty of an attorney to … maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." Therefore, the requested fee agreements are confidential communications protected under the attorney-client privilege. If you have any authority to the contrary, please let me know. Finally, in response to your assertions in the November 15, 2007 letter, I am not aware of Judge Infante ruling on this issue with respect to any third party. If I am mistaken, please inform me of any such ruling.

EXHIBIT ___15___
PAGE ___220___

B. Dylan Procter, Esq.
November 21, 2007
Page 3


Regarding bank accounts used by Ms. Marlow in connection with her work with MGA, as I stated in my letters to Ms. Wines dated July 23, 2007 and September 21, 2007, we have not received any documents from Wells Fargo in response to your subpoena. In addition, we have not yet received any documents from Bank of America. As soon as we receive these documents, we will comply with the review procedure as set forth in the letter from Ms. Wines dated September 13, 2007, and the letter from you dated November 2, 2007. Finally, with respect to your question whether Ms. Marlow has used any additional bank accounts in connection with her work for MGA, I will provide you this information on the condition that you agree to comply with the protocol set forth in the letter from Ms. Wines dated September 13, 2007, and the letter from you dated November 2, 2007. Please let me know if you agree to this protocol.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP


LWM/jlt

cc:  Thomas J. Nolan
     Michael Page

Enclosures (KMW-M 006695 through KMW-M 007643)

EXHIBIT  15
PAGE  221

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

December 18, 2007

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

VIA FACSIMILE, U.S. MAIL and E-MAIL

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

     Re:    Mattel v. Bryant

Dear Dylan:

I am writing to follow-up on my letter dated December 11, 2007, and in response to your letter dated December 6, 2007.

With respect to Ms. Leahy's planner, as you know, at Ms. Leahy's deposition we produced the entire day planner in un-redacted form. This issue is now resolved.

Regarding the Bates numbered photocopies of the three-dimensional objects that our clients produced, as you know, on December 11, 2007, we delivered these documents to you. With respect to the use of photographs at the depositions of my clients, as I had suspected, Mr. Zeller did indeed show my clients copies of photographs (and introduced as exhibits documents that had no Bates numbers) at their depositions that you refused to produce to me in advance. My understanding is that even if these documents are considered "work product," the work product doctrine protects the confidentiality of documents up until the time that you decide to use them in the case, at which time you must produce them. Obviously, you decided to use the photographs at my client's depositions prior to the time of their depositions. Your refusal to produce these photographs ahead of the depositions in the face of my continuing requests is improper. Moreover, your decision to waive work-product protection as to a portion of the photographs during the depositions means that you have chosen to waive any such work-product protection you could have possibly claimed in those photographs. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 512-13 (S.D. Cal. 2003) ("A party cannot reasonably expect to preserve confidentiality of work product while simultaneously disclosing substantive components of that document."). Therefore, we are again requesting that you provide us with copies of all the

EXHIBIT 15
PAGE 222

B. Dylan Procter, Esq.
December 18, 2007
Page 2

photographs and videotapes that you have taken of the three-dimensional objects that we produced.

Regarding the fee agreements, I am at a loss to understand how you can contend that "Mattel's objections to other subpoenas and Mattel's responses to other parties' requests for production are irrelevant here." The point is simple. Mattel is taking the position with respect to my clients that Judge Infante's orders require the production of retainer letters, while at the same time, Mattel has continued to object to the production of retainer letters after the entry of Judge Infante's order. Your silence with respect to my request in my December 3, 2007 letter, that "[i]f you have produced the retainer letter for Mr. Liden or any third party, please provide me with a copy of that document," says everything. You have not provided me with any such retainer letters and, therefore, I can only assume that you have continued to refuse to produce them. Finally, as you also know, we have an ongoing disagreement regarding whether discovery disputes with respect to our clients should be heard by Judge Infante or Magistrate Judge Block. As we have repeatedly stated, it is our position that these disputes should be heard by Magistrate Judge Block. Mattel has now filed a motion on this issue with a hearing date of January 7, 2007. As soon as Judge Larson rules on Mattel's motion, we will know who is right. However, I would note that there is no dispute that Judge Infante has jurisdiction over discovery disputes between Mattel and MGA. Mattel's continuing objection to the production of retainer letters is, therefore, all the more incomprehensible in light of what you characterize as clear rulings from Judge Infante that all retainer letters must be produced. Finally, as you know, I allowed both Ms. Leahy and Ms. Cloonan to answer questions regarding whether they had spoken to attorneys and who is paying their legal fees. We therefore have acted consistently with Judge Larson's orders with respect to Mr. Bryant as set forth in Judge Larson's Order Re Motions heard on June 11, 2007, pp. 33-34 ("[Q]uestions such as the one addressed by objection No. 38, asking whether Bryant talked to counsel for MGA during a break from his deposition, are not subject to objection based on the attorney-client privilege.... [F]ee-payment arrangements are relevant to credibility and bias, and if asked in discovery, Bryant must disclose who is paying his legal fees.").

With respect to your allegation that our clients are "withholding documents" from key time periods in this case, after the depositions of Ms. Leahy and Ms. Cloonan, you now know that this statement is not accurate. Regarding your request for a date-restricted privilege log of communications between me and my clients, I am still at a loss to understand the basis for this request. Moreover, since we obviously do not agree with your demand that our clients produce their retainer letters, this issue will more than likely need to be resolved after it is determined who is to hear discovery disputes with respect to our clients – Judge Infante or Magistrate Judge Block. In the meantime, please let me know if Mattel has produced a similar privilege log and I can then consider your request.

Finally, regarding the personal Wells Fargo bank records of Ms. Marlow, we continue to insist that you return all copies and originals of the Wells Fargo bank records, confirm that your firm has not reviewed or made any use of these documents, and provide me with the date that your firm received these documents. Although you claim that you gave copies of these bank


EXHIBIT    15
PAGE    223

B. Dylan Procter, Esq.
December 18, 2007
Page 3

records to "all parties months ago," it is undisputed that you did not provide copies to me until November 30, 2007, and then only after I had sent several letters notifying you that I had not received the documents from Wells Fargo. As to your statement regarding "unringing the bell," it is very simple – the most that can be done at this point is to comply with my requests set forth above. Also, your statement that the Wells Fargo bank records are not privileged is inaccurate. Without limitation, the bank records include federal tax information which is private and confidential, and is recognized as protected matter by both the Ninth Circuit and this Court. *See Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); *S. Cal. Hous. Rights Ctr. v. Krug*, No. CV06-1420SJOJCX, 2006 WL 4122148, at *3 (C.D. Cal. Sept. 5, 2006).

I reiterate my demand that you return all copies and originals of the Wells Fargo bank records, confirm that your firm has not reviewed or made any use of these documents, and provide me with the date that your firm reviewed these documents. As you know, we have been meeting and conferring with respect to this issue for some time. Please consider this notice that if you do not agree to these demands, we will file a motion with the Court seeking this relief.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/eg

cc:  Thomas J. Nolan
     Michael Page

EXHIBIT ___ 15

PAGE ___ 224

**quinn emanuel** trial lawyers I los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 I TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

December 21, 2007

**VIA FACSIMILE AND U.S. MAIL**

Larry McFarland, Esq.
Keats McFarland & Wilson LLP
9720 Wilshire Boulevard, Penthouse Suite
Beverly Hills, California 90212

Re:    Mattel, Inc. v. Bryant et al.

Dear Larry:

I write in response to your letter dated December 18, 2007.

First, you have again asked Mattel to produce its work product -- photographs and videotapes it has taken of the three-dimensional objects your clients made available for inspection. You have never provided any authority suggesting that these photographs and videotapes are not, as Mattel claims, protected work product. If you have such authority, please let me know. In any case, I continue to fail to understand why your third-party clients would have any legitimate interest in obtaining such photographs and videotapes. I invited you to explain this before, and you have never done so. I again invite you to do so.

Regarding the written agreements for the payment of your clients' fees and your clients' refusal to log any of their withheld documents on a privilege log, we appear to be at an impasse. Accordingly, we intend to bring this matter of the Court. If you wish to reconsider, please let me know.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK I 51 Madison Avenue, 22nd Floor, New York, New York 10010 I TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO I 50 California Street, 22nd Floor, San Francisco, California 94111 I TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY I 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 I TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO I 4445 Eastgate Mall, Suite 200, San Diego, California 92121 I TEL 858-812-3107 FAX 858-812-3336

07209/2334801 1

EXHIBIT   15
PAGE   225

Last, regarding the Wells Fargo bank records of Ms. Marlow which were produced to Mattel and all parties months ago, we continue to disagree with your assertions that they should be returned to you even though they are discoverable. As we stated previously, none of the information in these documents appears to Mattel to be privileged. However, you suggest in your letter that the bank records do include some privileged information. I would appreciate receiving further information from you about which documents and which information you contend is privileged, and would be happy to discuss that matter further with you to see if we can resolve any differences amicably. I will be out of the office starting tomorrow, Saturday December 22nd, through Wednesday, December 26, 2007, but back in the office on Thursday, December 27, 2007 if you wish to discuss this matter further, which I would invite.

I look forward to hearing from you.

Very truly yours,

B. Dylan Proctor

BDP:lak

EXHIBIT 15
PAGE 226

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   December 21, 2007        **NUMBER OF PAGES, INCLUDING COVER: 3**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Larry McFarland<br>Keats, McFarland & Wilson | 310-248-3830 | 310-860-0363 |

**FROM:**   Dylan Proctor, Esq.

**RE:**   Mattel, Inc. v. Bryant

**MESSAGE:**

07209/2315439.2

CLIENT #   7209   ROUTE/<br>RETURN TO:   **Tiffany Garcia**        ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT

OPERATOR:   _Wilfe_        CONFIRMED?   ☐ NO   ☐ YES: _____

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

EXHIBIT   15
PAGE   227

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com
January 2, 2008

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

<u>VIA FACSIMILE, U.S. MAIL and E-MAIL</u>

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

      Re:    <u>Mattel v. Bryant</u>

Dear Dylan:

      I am writing in response to your letter dated December 21, 2007, which responds to my letter dated December 18, 2007.

      With respect to the photographs and videotapes that your firm has taken of the three-dimensional objects produced by my clients, my clients' interest in these photographs and videotapes is simple. As established at the deposition of Ms. Leahy, you have questioned my clients about these photographs and will presumably question my clients at trial with respect to the additional photographs as well as the videotapes. You further state that "[y]ou have never provided any authority suggesting that these photographs and videotapes are not, as Mattel claims, protected work product. If you have any authority, please let me know." I would point you to my December 18th letter where I stated as follows:

> Moreover, your decision to waive work-product protection as to a portion of the photographs during the depositions means that you have chosen to waive any such work-product protection you could have possibly claimed in those photographs. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 512-13 (S.D. Cal. 2003) ("A party cannot reasonably expect to preserve confidentiality of work product while simultaneously disclosing substantive components of that document."). Therefore, we are again requesting that you provide us with copies of all the photographs and videotapes that you have taken of the three-dimensional objects that we produced.

      If you have any authority to the contrary, please provide it to me. Otherwise, I expect that you will provide me with copies of all of the photographs and videotapes that you have taken of the items produced by my clients. If you refuse, we will have no choice but to file a motion.

EXHIBIT 15
PAGE 228

B. Dylan Procter, Esq.
January 2, 2008
Page 2

      Regarding the fee agreements, you have not responded to the following, also from my
December 18th letter:

>       Regarding the fee agreements, I am at a loss to understand how you
> can contend that "Mattel's objections to other subpoenas and Mattel's
> responses to other parties' requests for production are irrelevant here."
> The point is simple. Mattel is taking the position with respect to my
> clients that Judge Infante's orders require the production of retainer
> letters, while at the same time, Mattel has continued to object to the
> production of retainer letters after the entry of Judge Infante's order.
> Your silence with respect to my request in my December 3, 2007 letter,
> that "[i]f you have produced the retainer letter for Mr. Liden or any third
> party, please provide me with a copy of that document," says everything.
> You have not provided me with any such retainer letters and, therefore, I
> can only assume that you have continued to refuse to produce them.

      I would appreciate a response.

      Finally, with respect to the Wells Fargo documents, you continue to state that they "were
produced to Mattel and all parties months ago" when you know that you did not provide the
documents to me until November 30, 2007. It is also undisputed that the Wells Fargo documents
include tax records which are private and confidential based on the authorities set forth in my
December 18th letter. The issue here is simple. As set forth in my December 18th letter, I am
requesting that you return all copies and originals of the bank records to me, confirm that your
firm has not reviewed or made any use of these documents, and provide me with the date that
your firm received these bank records. We will then review the Wells Fargo documents pursuant
to the protocol that we have both agreed to and produce to you all of the documents required by
the protocol. I assume from all of your correspondence that you are refusing to do this, so we
will have to bring a motion. Please let me know if I am wrong.

      Finally, this is to put you on notice one more time that we have still not received the
Marlow's bank records from Bank of America that you subpoenaed. I sincerely hope that you
have not received these as well. Please let me know. I also have not received copies of any
subpoenas to the institutions identified in my letter dated December 11, 2007. Please let me
know if any such subpoenas have been served, and if so, please provide me copies.

                      Very truly yours,

                      Larry W. McFarland
                      Keats McFarland & Wilson LLP

LWM/jlt
cc:  Thomas J. Nolan
      Michael Page

EXHIBIT 15
PAGE 229

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213 443-3000 FAX 213 443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3113

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

January 10, 2008

<u>VIA FACSIMILE AND U.S. MAIL</u>

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:   <u>Mattel v. Bryant</u>

Dear Larry:

I write further to our January 9, 2008 meeting of counsel.

First, with respect to agreements relating to the payment of your clients' fees, as I explained on our call and in prior letters, your clients' obligations to produce fee agreements revealing their biases are quite clear under prior Court Orders.  You stated that you will consider this further and get back to me.

Second, with respect to your clients' failures to provide privilege logs, in an effort to avoid burdening you and your clients to greatest extent possible, and as we have advised before, we are willing to accept privilege logs from Ms. Marlow, Ms. Cloonan, Ms. Leahy and Ms. Halpern that do not include or log communications that (1) are exclusively between Marlow, Cloonan, Leahy or Halpern, on the one hand, and yourself or other attorneys at your firm, on the other hand, (2) were sent on or after January 1, 2006, (3) were not copied or addressed to other parties or third parties and (4) do not relate to fee or indemnification matters.  All other documents should be logged.  You stated that you also wished to consider this matter further.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2343672.1

EXHIBIT ___15___
PAGE ___230___

Third, with respect to the photographs and videos that we have taken of the products produced by your clients, we are not obligated to provide you with copies of these materials. As I explained, these are opinion work product. Additionally, the work product of all photographs is not waived by the waiver of the privilege as to one photograph. You stated that you will consider this and get back to me. As of today, as you know, you have never provided any authority that suggests that these photographs are not protected work product, which I have invited.

Fourth, as I explained during our call, Ms. Marlow's records from Wells Fargo bank which were inadvertently produced directly to us contain relevant information, including but not limited to records of substantial payments from Carter Bryant and MGA and payments made by Marlow to individuals she just disclosed for the first time two weeks ago as Mattel employees who have been working on Bratz, including Beatrice Morales and Ana Cabrera. These are clearly non-privileged and discoverable. Some of these payments were made out to "cash," and there are other records of checks made to "cash" which may relate to Mattel employees who worked on Bratz. Moreover, these documents have been produced and were circulated to all parties months ago. As we have explained, a motion to quash a subpoena becomes moot once the documents have been produced.

Although you expressed concerns that some of these documents may include sensitive information, such as checks made out to the Franchise Tax Board, you have not alleged that the documents contain any information that is privileged. Nevertheless, I proposed that you identify any irrelevant sensitive information, which we can examine and potentially address by redaction or some other appropriate method. You agreed to consider this proposal.

You proposed that the documents be given back to you for your review, that the prior protocol be amended to include any new names identified by Mattel, such as Beatrice Morales and Ana Cabrera, and that you will then give back all relevant documents pursuant to the protocol. I agreed to consider that proposal.

Fifth, regarding the Supplemental Responses of Lucy Arant, you confirmed that she has not withheld any non-logged documents, other than documents responsive to Request No. 28. You confirmed that Ms. Arant will not voluntarily produce such documents. Please let me know if you reconsider.

Sixth, in regards to our request for additional deposition time with your clients, you confirmed that they will not be made available.

2

EXHIBIT 15
PAGE 231

I look forward to speaking with your further on the matters we agreed to consider on Friday, January 11, 2008 at 5:00 p.m.

Very truly yours,

B. Dylan Proctor

B. Dylan Proctor

07209/2348622.1

07209/2348622.1

3

EXHIBIT 15
PAGE 232

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, ..... floor
San Francisco, CA. ....
(415) 875-....
Facsimile: (415) ....-....00

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-....
Facsimile: (650) ....-....00

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   January 10, 2008

**NUMBER OF PAGES, INCLUDING COVER:** 4

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Larry McFarland, Esq.<br>Keats McFarland & Wilson LLP | 310-248-3830 | 310-860-0363 |

**FROM:**   B. Dylan Proctor, Esq.

**RE:**   *Mattel v. Bryant, et al.*

**MESSAGE:**

---

07209/2285534.1

| CLIENT # | 7209 | ROUTE/<br>RETURN TO: | Tiffany Garcia/3rd Floor | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED?   ☐ NO   ☐ YES: _____ | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT 15

PAGE 233

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

www.kmwlaw.com
January 11, 2008

VIA FACSIMILE, U.S. MAIL and E-MAIL

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:    Mattel v. Bryant

Dear Dylan:

I am writing in response to your letter dated January 10, 2008 and in furtherance of my letters to you dated January 2, 2008 and December 18, 2007.

As you know, I have presented legal authority demonstrating that your use of the photographs and videotapes of the three-dimensional objects that we produced to you during the deposition of Ms. Leahy has resulted in a waiver of any work-product protection claimed in those items. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 512-13 (S.D. Cal. 2003) ("A party cannot reasonably expect to preserve confidentiality of work product while simultaneously disclosing substantive components of that document.").”

In contrast, you have not provided any authority which supports your decision to withhold copies of these photographs and videotapes from us. Instead, you insist that you "are not obligated to provide [us] with copies of these materials," claiming that they are "opinion work product." However, they are actually "fact" work product and must be given to us. As you know, opinion work product is "any material reflecting the attorney's mental impressions, opinions, conclusions, judgments or legal theories." *Holmgren v. State Farm Mut. Auto Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992); *Upjohn v. United States*, 449 U.S. 383, 399 (1981); *Hickman v. Taylor*, 329 U.S. 495, 510 (1946); *see also* Fed. R. Civ. P. 26(b)(3). Courts have held that with regards to opinion work product, "mental impressions" does not include photographs. *See Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 n.4 (8th Cir. 1998) ("Ordinary work product includes such items as photographs and raw information."); *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997).

EXHIBIT 15
PAGE 234

B. Dylan Procter, Esq.
January 11, 2008
Page 2

Therefore, once again I expect that you will provide me with copies of all of the photographs and videotapes that you have taken of the items produced by my clients.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/eg

cc:  Thomas J. Nolan
     Michael Page

EXHIBIT 15
PAGE 235

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

January 11, 2008

<u>**Via Facsimile and U.S. Mail**</u>

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:   <u>Mattel v. Bryant</u>

Dear Larry:

I write in response to your letter of January 11, 2008.

As I explained during our January 9, 2008 meet and confer, the photographs and videos that we have taken of the products produced by your clients are opinion work product. The photographs do not constitute fact work product as you suggest. Mattel's decisions regarding matters such as what parts of the products to take close-up photographs of and what angles to take the photographs and video from reflect counsel's mental impressions and are opinion work product. They constitute "material reflecting the attorney's mental impressions, opinions, conclusions, judgments or legal theories," which is the standard for defining something as opinion work product. <u>Holmgreen v. State Farm Mut. Auto Ins. Co.</u>, 976 F.2d 573, 577 (9th Cir. 1992). As your own authority acknowledges, "opinion work product receives 'almost absolute protection'." <u>Kintera, Inc. v. Convio, Inc.</u>, 219 F.R.D. 503, 507 (S.D. Cal. 2003). And in any case, the work product of all the photographs and video taken is not waived by the waiver of the privilege as to a single photograph.

However, in the interest of reaching an agreement, we will consider your request if you agree to provide us with all of your photographs and videos of the products, and if MGA and the other

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-813-7000 FAX 858-813-7100

EXHIBIT  15

PAGE  236

parties also agree to provide us with all of their photographs and videos which they have disclosed only portions of. Indeed, MGA has engaged in the exact conduct you allege constituted waiver here -- it has used photographs of products, such as Toon Teens, at deposition without providing Mattel with copies of other such photographs. Mattel is not going to be the only party that discloses this work product.

I look forward to your response.

Very truly yours,

*B. Dylan Proctor /sic*

B. Dylan Proctor

07209/2350833.1

cc:     Thoman J. Nolan, Esq.
        Michael Page, Esq.

2

EXHIBIT ___ 15
PAGE ___ 237

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

January 16, 2008

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

VIA FACSIMILE and E-MAIL

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   Mattel v. Bryant

Dear Dylan:

I am writing with regard to several outstanding issues discussed during our meetings of counsel held on January 9 and January 11, 2008, and with respect to the correspondence noted below.

**Lucy Arant**

Responding to your letter dated January 10, 2008, in which you asked me to confirm that Ms. Arant is not withholding any non-logged documents, as we discussed during our meeting of counsel on January 9, 2007, I provided you with amended responses and objections to Mattel's document request that day. I also provided you with an amended privilege log.

With regard to documents responsive to Request No. 28 of Mattel's subpoena for the production of documents, I can confirm that our position is set out in the response to the same in Arant's amended objections and responses dated January 8, 2008. I reiterate that the filed intent-to-use trademark applications and any related statements of use fully satisfy Mattel's request that Arant produce:

DOCUMENTS sufficient to show each instance in which YOU have filed or caused to be filed an intent-to-use application for a name, mark, designation or source identifier, or any contemplated, proposed, considered, putative or formative name, mark, designation or

EXHIBIT ___15___
PAGE ___238___

B. Dylan Procter, Esq.
January 16, 2008
Page 2

source identifier, that had been used or was in use prior to the time such application was filed or caused to be filed.

In addition, these documents are as readily available to Mattel as they are to Arant, including without limitation by accessing the public records hosted on the Trademark Office web site at www.uspto.gov. Moreover, as you know, Ms. Arant filed a revised declaration which did not contain the statement regarding filing intent-to-use applications which you refer to in your Request No. 28.

Additionally, we do not believe that any privileged documents have been withheld, other than as set forth on the privilege log. However, we are reviewing the documents again to confirm that everything is included in the privilege log. If we locate any additional relevant documents that are being withheld for privilege, we will provide you with an amended privilege log by Friday, January 18, 2008.

### Photographs and Videos Used During Depositions

I write in response to your last letter of January 11, 2008. As I set forth fully in my letter of December 18, 2008, you have waived the work product protection with respect to the photographs and videotapes of the three-dimensional objects which we produced for inspection, by using some of these photographs at Ms. Leahy's deposition. In furtherance of my follow-up letters of January 2, 2008, and January 11, 2008, I again request that these documents be produced in their entirety. It is clear under the relevant authority that your use of the photographs during a deposition has resulted in a waiver of the work product protection which you have claimed in those items. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503 512-13 (S.D. Cal. 2003). In my letter of January 11, 2008, I presented further legal authority in support of my position. You have failed to provide any relevant legal authority contrary to this position. Indeed, the citations in your January 11, 2008, letter do not support your conclusion that the photographs constitute opinion work product rather than factual work product, but instead simply reiterate the general rule that opinion work product is treated differently than fact work product with respect to waiver. This may be true, but it is not relevant here because the photos and video do not constitute opinion work product. *See Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 n.4 (8th Cir. 1998) ("Ordinary work product includes such items as photographs and raw information.").

However, I see that you have agreed in your letter dated January 11, 2008, to provide us copies of all of the photographs and videos taken of the three-dimensional items if I agree to do the same. I would point your attention to my letter of December 18, 2007, in which I clearly stated that we had provided you with copies of all of our photos on December 11, 2007. I also reminded you of this during our telephonic meeting of counsel on January 9, 2008.

EXHIBIT ___ 15
PAGE ___ 239

B. Dylan Procter, Esq.
January 16, 2008
Page 3

Unfortunately, you have made MGA's agreement a condition of Mattel's agreement to produce these photographs and videotapes. That is an issue that you need to raise with MGA's attorneys. I request that you reconsider your position and agree to provide us with all of the photographs and videos that you have taken of the three-dimensional objects produced by my clients and remind you again that my clients have already done the same.

### Computers

With regard to your request that I agree to a new protocol as set forth in Mr. Tayback's email dated January 9, 2008, for the review of the computers, hard disk drives, and zip disk (the "Computers") belonging to Ms. Leahy and Ms. Cloonan, as you know, these Computers have already been reviewed pursuant to the protocol that your partner, Susan Wines, and I agreed to several months ago. Moreover, all of the documents located by the expert's search pursuant to the agreed to protocol have already been produced and both Ms. Leahy and Ms. Cloonan have already been deposed. We are, therefore, not willing at this late date to agree to a new protocol.

As you know, Ms. Wines and I spent a considerable amount of time meeting and conferring with respect to a protocol for the review of the Computers. The result of these discussions was the protocol set forth in Ms. Wines' letter dated September 13, 2007. Both Mattel and I agreed to be bound by this protocol. In addition, as I have repeatedly stated, one of the most important issues for me was that this protocol be agreed to and all documents located pursuant to the protocol be produced prior to the depositions of my witnesses. As you know, this was accomplished. Now that the depositions of Ms. Leahy and Ms. Cloonan have been taken, you are attempting to re-review the Computers pursuant to a new protocol. This is not acceptable and you have presented no basis to justify your attempt to change the protocol. In the email dated January 9, 2008, from Mr. Tayback, he stated that "the testimony of the witnesses makes clear that there are graphical (and perhaps other) files on the Cloonan and Leahy hard drives that are relevant, responsive, non-privileged documents but which were either not produced by you or not identified by the prior search protocol." However, the fact that there could be graphical files on the Computers is not new information. As you know, Mr. Bryant testified during his deposition that he and/or Ms. Cloonan may have utilized the computer belonging to Ms. Cloonan to create graphics for Bratz. Unfortunately, it appears as though this effort to alter the protocol previously agreed upon is simply part of a larger strategy to never commit to an agreement and/or conclude a deposition.

With regard to the computers belonging to Ms. Marlow, as I stated during our conference on January 9, 2008, in response to the subpoena, we produced all relevant and responsive documents in Ms. Marlow's possession, custody or control, which included emails residing on her computers. Accordingly, Ms. Marlow has fully complied with her discovery obligations. It is both unreasonable and beyond the scope of Mattel's discovery rights to require Ms. Marlow to

EXHIBIT   15
PAGE   240

B. Dylan Procter, Esq.
January 16, 2008
Page 4

produce her actual computer hard drives to Mattel. Ms. Marlow has fully complied with her discovery obligations by searching her hard drives and producing all relevant documents in response to Mattel's requests. As you know, when a party is obligated to produce electronically-stored documents in response to discovery requests, it is the responding party's obligation to conduct the search and review its own documents. *See Peskoff v. Faber*, 240 F.R.D. 26, 31 (D.D.C. 2007) ("[T]he producing party has the obligation to search available electronic systems for the information demanded."), *quoting McPeek v. Ashcroft*, 202 F.R.D. 31, 32 (D.D.C. 2001)). The mere fact that a requesting party is skeptical that a responding party has produced copies of all relevant and non-privileged documents does not warrant compelling production of the responding party's computer hard drives. *McCurdy Group, LLC v. Am. Biomedical Group, Inc.*, 9 Fed. Appx. 822, 831 (10th Cir. 2001). *See also Ameriwood Indus., Inc. v. Liberman*, No. 4-06CV524-DJS, 2006 WL 3825291, at *4 (E.D. Mo. Dec. 27, 2006) ("[A] party may not inspect the physical hard drives of a computer merely because the party wants to search for additional documents responsive to the party's document requests."). Ms. Marlow is not required to go above and beyond the requirements placed on a party and produce her computer hard drives to Mattel.

Finally, your claim that you just now learned during her deposition that Ms. Marlow occasionally used computers is inaccurate. You have known for quite some time that Ms. Marlow sent and received email because we produced such relevant emails well prior to her deposition and I believe that MGA has also produced emails which were sent to Ms. Marlow. With respect to your allegation that I had "previously represented to Mattel that Ms. Marlow does not have any hard drives which she used for work relating to Bratz," I am unaware of making any such representation. Because you insist that I have, please advise as to when and where I made the alleged representation.

### Bank Records

I write further in response to your latest letter on this subject dated January 11, 2008. With regard to the Wells Fargo documents belonging to Ms. Marlow that were produced directly to you in violation of our agreed upon protocol, you stated in your letter dated January 10, 2008, that you would consider my request that you purge yourself of those documents and return them to me so that they may be reviewed pursuant to the protocol. In your letter of January 11, 2008, you proposed supplementing the review protocol for all bank records produced and to be produced by adding documents referring to the following:

(1)   Isabel Ana Cabrera

(2)   Beatriz Morales

(3)   Maria Elena Salazar

(4)   Payments made to, or work or services performed by, any other Mattel employee

EXHIBIT   15
PAGE   241

B. Dylan Procter, Esq.
January 16, 2008
Page 5

    (5)    Payments made by, or any services performed for, any competitors of Mattel, including any company involved in the sale of dolls or toys, while your clients were employed at Mattel

    (6)    The dates on which any entities with which your clients are affiliated were established, including but not limited to payments to the Franchise Tax Board or other tax entities.

With regard to items (1), (2), (3), and (6), I agree to amend the protocol for review of the bank records. However, item (4) is too vague and should be qualified to read "while such person was an employee of Mattel." Item (5) is also too vague and should be amended to read that competitors of Mattel are defined as any company involved in the sale of dolls or toys, not simply "including any company involved in the sale of dolls or toys," as you have drafted it. If you are amenable to these changes, please advise us accordingly.

**Retainer Letters**

With regard to your request that I produce any retainer letters signed by my clients, you have taken the position that various orders entered by Judge Infante with respect to Mr. Bryant are controlling as to my non-party clients. As you know, I was not involved with the motions ruled on by Judge Infante, but your firm obviously was. As I pointed out in my letter dated December 18, 2007:

Regarding the fee agreements, I am at a loss to understand how you can contend that "Mattel's objections to other subpoenas and Mattel's responses to other parties' requests for production are irrelevant here." The point is simple. Mattel is taking the position with respect to my clients that Judge Infante's orders require the production of retainer letters, while at the same time, Mattel has continued to object to the production of retainer letters after the entry of Judge Infante's order. Your silence with respect to my request in my December 3, 2007 letter, that "[i]f you have produced the retainer letter for Mr. Liden or any third party, please provide me with a copy of that document," says everything. You have not provided me with any such retainer letters and, therefore, I can only assume that you have continued to refuse to produce them.

As I told you during our meet and confer on Friday, January 11, 2008, if Mattel agrees that the orders entered by Judge Infante require Mattel to produce all retainer letters relating to non-parties and if in fact Mattel produces such retainer letters, I will also agree to produce the retainer letters for my third party clients. With respect to your statement during our call on January 11, 2008, that the two situations were like "apples and oranges," I request that you reconsider your

EXHIBIT 15
PAGE 242

B. Dylan Procter, Esq.
January 16, 2008
Page 6

position. The issue is simple – what is Mattel's interpretation of Judge Infante's order with respect to retainer letters for non-parties.

As far as whether I will be providing a privilege log as you propose in your letter of January 10, 2008, I reiterate my previous statement that the purpose of a privilege log is to make the receiving party aware of any documents that the producing party is withholding based upon privilege. Rule 26 lays out the purpose of providing a privilege log as being to "expressly make the claim" of privilege and to "describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." F.R.C.P. 26(b)(5). In this case, the purpose of the privilege log has been fully satisfied – I have told you that I am not producing the retainer letters between my clients and their attorneys. (Nor am I producing the correspondence between my clients and their attorneys.) You are aware of the claim of privilege and what is not being produced. I can also confirm that these retainer letters were not copied or addressed to other parties or third parties.

### Additional Deposition Dates

With respect to your request that my clients be made available for additional deposition dates, as I have repeatedly stated, this request is unreasonable. I have made my clients available for the full seven hours (and beyond in some instances) as required by the federal rules and believe that demanding additional time of these non-party witnesses is not warranted. In particular, I write in response to the issues raised in the letter from Mr. Zeller dated January 4, 2008, and his mischaracterization of why he believes he did not have enough time to question Ms. Marlow. As a preliminary matter, with regard to Mr. Zeller's belief that he did not have time to question Ms. Marlow regarding other Mattel employees she has worked with, documents identifying the other Mattel employees Ms. Marlow worked with were produced well prior to the deposition and Mr. Zeller had plenty of time to review these documents prior to the deposition and did in fact question her extensively about these individuals during the deposition.

In addition, the assertions by Mr. Zeller in the third and fourth paragraphs of his letter that Mattel lacked sufficient time to depose Ms. Marlow regarding Mr. Bryant's drawings and the Prayer Angels project are simply untrue. All of these topics were covered in great detail during the deposition.  With regard to the several pages of additional documents produced on the day before the deposition, I have difficulty understanding how those might have adversely affected Mr. Zeller's ability to question Ms. Marlow regarding them. Mr. Zeller stated at the deposition that all these documents except one had been previously produced by MGA or Bryant. With respect to the one new document, Mr. Zeller had seven hours to question Ms. Marlow regarding this document, but he chose not to do so.

EXHIBIT  15
PAGE  243

B. Dylan Procter, Esq.
January 16, 2008
Page 7

Finally, with regard to the specific instructions Mr. Zeller has taken issue with, he claims that at Marlow Depo. Tr 174:4 – 177:3, my objections were "suggestive" and "obstructionist." I reject this assertion, and believe that my objections and those of counsel for Bryant and MGA were well within the federal rules. Furthermore, I will point out again that his line of questioning was an attempt to put words in Ms. Marlow's mouth to support your purported legal conclusion that the drawings at issue were "substantially similar" to the final Bratz product, when in fact Ms. Marlow repeatedly disagreed with your conclusion, stating that:

Q:     Are they – are they more different or are they more similar?

A:     They're more different.

Not satisfied with Ms. Marlow's answer, Mr. Zeller repeatedly asked the same question over and over in different formats in a failed attempt to get Ms. Marlow to answer the question to his pleasing.  If Mr. Zeller had instead asked direct questions and not wasted time forcing Ms. Marlow to repeat herself multiple times, he would have had more than enough time available to him to ask all of the questions that he believes he needed to.

Mr. Zeller also complains about Ms. Marlow's testimony at 87:8 – 13, as follows:

Q:     Did you have some legal questions in your mind at that time prior to the time that you talked to Mr. Contopolous?

This question was part of an improper line of questioning regarding Ms. Marlow's communications with her attorney, Mr. Contopolous.  Prior to this question, Ms. Marlow had testified that she was seeking legal representation from Mr. Contopolous regarding this litigation. See *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir.1996) ("A client is entitled to hire a lawyer, and have his secrets kept, for legal advice regarding the client's business affairs.").

In addition, Ms. Marlow fully answered Mr. Zeller's questions with respect to what questions were in her mind prior to the time that she spoke to Mr. Contopolous as follows:

Mr. McFarland:        Why don't we read it back.

(The record was read by the court reporter as follows:

"Q:     Did you have some questions in your mind at that time prior to the time that you talked to Mr. Contopolous?")

EXHIBIT  15
PAGE  244

B. Dylan Procter, Esq.
January 16, 2008
Page 8

Mr. McFarland:         Objection, she's asked and answered your questions or mine regarding this litigation.  She talked to Mr. Contopolous.

By Mr. Zeller:

Q:     You can go ahead and answer.

A:     I don't have anything to say about that.

Q:     You're refusing to answer the question?

Mr. McFarland:         No, she's already answered your question.

By Mr. Zeller:

Q:     What was it specifically about – tell me everything it was about the litigation between Carter Bryant and Mattel that you had on your mind prior to the time that you spoke with Mr. Contopolous?

Mr. McFarland:         She's asked and answered the question.

Did you have anything else in your mind other than what you've said?

The Witness:         No.

By Mr. Zeller:

Q:     So it was just that there was litigation and nothing else?

A:     Yes.

Q:     There was nothing in particular?

Mr. McFarland:     She's --

The Witness:  No.

Mr. McFarland:         -- answered the question.  You have answered the question.

The Witness:  I answered the question.

By Mr. Zeller:

Q:     There was nothing in particular; right?

A:     Right.


## Marital Privilege Instructions

With respect to the marital privilege issue, I am both surprised and confused by your continued attempts to limit the marital privilege to criminal cases.  As explained in my January 2, 2008, letter to you:

Federal common law recognizes two distinct forms of marital privilege.  The first is the privilege against adverse spousal testimony, which invests in the testifying witness the

EXHIBIT 15
PAGE 245

B. Dylan Procter, Esq.
January 16, 2008
Page 9

> privilege of not being compelled to testify against one's spouse. <u>Trammel v. United States</u>, 445 U.S. 40 (1980). The second is the confidential marital communications privilege, which provides that "[c]ommunications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged," and which may be asserted by either spouse to bar the testimony of the other regarding marital communications made in confidence. <u>Wolfe v. United States</u>, 291 U.S. 7, 14 (1934)....

As I further provided, courts have held that the confidential marital communications privilege "may be asserted by either spouse in both civil and criminal proceedings, while the testimonial privilege ... is recognized only in criminal proceedings." <u>281 Syosset Woodbury</u>, 862 F. Supp. 847, 852 (E.D.N.Y. 1994); <u>see also Englemann v. Nat'l Broad. Co., Inc.</u>, No. 94 Civ, 5616(MBM)(AJP), 1995 WL 214500, at *2 *(S.D.N.Y. Apr. 10, 1995) ("The second of the two federal marital privileges, the spousal confidential communications privilege ... applies in both criminal and civil cases.").

Nevertheless, you continue to allege that I "have not offered any authority supporting the proposition that the marital privilege applies in civil cases." To the contrary, I believe that is exactly what I did and that it is you that have failed to offer any authority supporting the proposition that confidential marital communications, the one form of the privilege that is relevant here, applies only in criminal cases. Instead, you merely re-assert your claim that marital privilege does not apply here and cite to cases which address only the first form of marital privilege, the privilege against adverse spousal testimony. Specifically, your most recent reference to <u>Ryan v. Commissioner of Internal Revenue</u>, 568 F.2d 531, 542 (7th Cir. 1977) demonstrates my point exactly. In your January 11, 2008, letter, you cite <u>Ryan</u> to argue that marital privilege is "only applicable in criminal cases." However, like <u>281 Syosset Woodbury</u>, <u>Ryan</u> actually supports my position that only the privilege against adverse spousal testimony is limited to criminal cases. In <u>Ryan</u>, the Seventh Circuit affirmed the Tax Court's rejection of "the Ryans' claim of marital privilege because the privilege against *adverse spousal testimony* is only applicable in criminal proceedings." <u>Id.</u> at 537(emphasis added), 542 ("The Tax Court held that the privilege against *adverse spousal testimony* was only available in criminal cases and therefore was not applicable in civil tax proceedings.") (emphasis added).

Moreover, your claim that the three Supreme Court and Ninth Circuit cases cited in my January 2, 2008, letter "each addressed marital privilege within the context of criminal matters, not civil litigation," is misleading. Indeed, while these cases involved criminal proceedings, two of the three addressed the privilege against adverse spousal testimony. Although the third, <u>Wolfe v. United States</u>, 291 U.S. 7, 14 (1934), addressed the confidential marital communications privilege, the Court actually acknowledged that the two forms of marital privilege are in fact distinct. <u>Id.</u> ("Hence it is that the privilege with respect to communications extends to the testimony of husband or wife even though the different privilege, excluding the testimony of one against the other, is not involved."). Thus, you have once again failed to show that the confidential marital communications privilege is limited to criminal cases.

EXHIBIT 15
PAGE 246

B. Dylan Procter, Esq.
January 16, 2008
Page 10


My responses to the testimony set forth in your letter of January 11, 2008, are set forth below:

Ms. Cloonan's testimony at 38:6-17:

Q:    Other than Mr. McFarland here, have you discussed the lawsuit with anybody?
A.:   Not much more than to tell people that I was involved in it; my father, my
      stepmother, my family, my husband.

This question was answered by Ms. Cloonan, regardless of any instruction.

Ms. Cloonan's testimony at 06:23 – 108:9; see 108:2:

Q:    What did you and he discuss on that subject?
A:    I don't recall.

This question was also answered by Ms. Cloonan, regardless of any instruction.

Ms. Cloonan's testimony at 108:11 – 14:

Q:    Have you discussed this lawsuit with your husband?
A:    I'm not going to answer that.
Q:    You can't tell me one way or the other?
A:    Do I have to? If I have to, I will.

Mr. McFarland: Well, first of all, it's asked and answered. She's already told you she
      mentioned to her husband and other people.

As I stated on the record, I reiterate that this question was answered previously in the deposition
as set forth above, regardless of any instruction.

Ms. Cloonan's testimony at 109: 1 – 8; see 109:15 – 18:

Q:    Prior to Christmas of last year, did you discuss this lawsuit with your husband, Mr.
      Sandham, your current husband?

EXHIBIT  15
PAGE  247

B. Dylan Procter, Esq.
January 16, 2008
Page 11

    A:    I don't know.

Even assuming that the confidential marriage communications privilege does not apply to domestic partners who subsequently marry, you have failed to meet your burden to establish that this conversation occurred prior to marriage and that it, therefore, may not be protected by the marriage privilege. "When encountering a privilege objection at deposition, examining counsel should insist on making a record that will permit meaningful judicial evaluation of the privilege claim." 7 *Moore's Federal Practice* § 30.43[2] (Matthew Bender 3d ed.). Ms. Cloonan answered that she did not know whether this conversation occurred before or after she was married to her husband. It was Mr. Zeller's responsibility to make the showing that the instruction was improper, and he failed to do so.

### Attorney-Client Privilege Instructions

In your letter dated January 11, 2008, you also claim that Ms. Cloonan was improperly instructed regarding facts disclosed during her conversations with counsel. I am unaware of any ruling by Judge Infante so limiting the attorney client communication privilege. Please provide me with the order you are referring to.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/ccd

cc: Thomas J. Nolan
    Michael Page

EXHIBIT ___ 15
PAGE ___ 248