**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# EXHIBIT 16

**EXHIBIT TO:** DECLARATION OF CHRISTIAN DOWELL IN SUPPORT OF NON-PARTY MARGARET HATCH-LEAHY'S OPPOSITION TO MATTEL'S MOTION TO COMPEL ADDITIONAL DEPOSITION TESTIMONY AND PRODUCTION OF DOCUMENTS

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830  
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD  
PENTHOUSE SUITE  
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

December 3, 2007

WRITER'S DIRECT DIAL  
(310) 777-3750

WRITER'S EMAIL  
lmcfarland@kmwlaw.com

VIA FACSIMILE AND U.S. MAIL

B. Dylan Proctor, Esq.  
Quinn Emanuel Urquhart Oliver & Hedges LLP  
865 South Figueroa Street, 10th Floor  
Los Angeles, California 90017

Re:   Mattel v. Bryant

Dear Dylan:

I am writing in response to your letter dated November 28, 2007.

First, we will make photocopies of the three-dimensional objects that have been produced to you and will assign each photo a Bates number. With respect to my question regarding the photographs and video taken by your firm of the sculpts and three-dimensional objects that we have produced, you ignored my question with respect to whether you intend to use these videotapes or photographs at the depositions of any of my clients. I would appreciate the courtesy of an answer.

Second, this letter serves to confirm that an associate from your office, along with two assistants, visited our offices today to photograph and videotape the remaining three-dimensional items produced by Ms. Marlow and Ms. Leahy. We expect that they will return tomorrow to complete their review of the items.

Third, with respect to the computer disk belonging to Ms. Cloonan, we spoke with Mr. Albee on Friday. Mr. Albee emailed me the search results on Friday and we will review and respond within the five-day time frame as agreed.

Fourth, you state that "Judge Infante has already found fee agreements to be relevant to bias and credibility, and non-privileged."[1] Our review of the orders attached to your letter reveals that these orders apply to Mr. Bryant and MGA, who are, of course, both parties to this litigation. We are not aware of any orders entered by Judge Infante with respect to the production of retainer agreements by third parties. Moreover, your reliance on Judge Infante's orders is undercut by the

---

[1] As we have repeatedly stated, it is our position that all discovery disputes with respect to our witnesses must be heard by Magistrate Judge Block.

EXHIBIT 16  
PAGE 249

B. Dylan Procter, Esq.
December 3, 2007
Page 2

positions taken by your firm. It is my understanding that after Judge Infante's order dated January 25, 2007, your firm objected to the production of third-party retainer letters as privileged and that you have stood by these objections and not produced these agreements. In the Objections of Mattel, Inc. and Timothy James Lider to MGA Entertainment Inc.'s Subpoena for Production of Documents, dated March 29, 2007, you stated as follows:

> Request NO. 9:
>
> All DOCUMENTS constituting, mentioning, referring or relating to any agreement or contract between YOU and MATTEL, including MATTEL's inside and outside counsel.
>
> RESPONSE TO REQUEST NO. 9:
>
> Mattel and Lider object to Request No. 9 on the grounds that it is overbroad and unduly burdensome, including in that it seeks all documents on this subject, regardless of whether such documents relate to products or matters at issue in this case. Mattel and Lider further object to the Request on the grounds that it seeks documents that are not relevant to this action or likely to lead to the discovery of admissible evidence. Mattel and Lider further object to this Request on the grounds that is seeks confidential, proprietary and trade secret information that has no bearing on the claims or defenses in this case. Mattel and Lider further object to this Request on the grounds that it seeks documents that are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and the non-designated expert consultant privilege.
>
> Without waiving, and subject to, the foregoing objections and/or privileges, Lider responds as follows: Lider will produce responsive documents in his possession, custody or control, if any, relating to the chain of custody of electronic data relating to MGA's and the other counter-defendants' thefts of Mattel's trade secrets, to the extent not protected by the attorney-client privilege, the work product doctrine and/or the non-designated expert consultant privilege.

If you have produced the retainer letter for Mr. Lider or any other third-party, please provide me with a copy of that document.

Further, it is my understanding that as recently as September 4, 2007, which is well after the dates of all of the orders from Judge Infante that you rely on in your letter, Mattel has continued to take the position that retainer letters are privileged. I am at a loss to understand how you can contend that "Judge Infante has already found fee agreements to be relevant to bias and credibility, and non-privileged," while at the same time objecting as follows:

EXHIBIT 16
PAGE 250

B. Dylan Procter, Esq.
December 3, 2007
Page 3

Request 530:

All DOCUMENTS, including but not limited to agreements, draft agreements and correspondence, REFERRING OR RELATING TO the payment or offer of payment of attorneys fees by MATTEL to any PERSON in connection this ACTION.

Response:

In addition to the general objections stated above which are incorporated herein by reference, Mattel objects to this Request on the grounds that it is overbroad, unduly burdensome and unintelligible, including in that it seeks all documents on this subject without limitation as to time, and regardless of whether such documents relate to products or matters at issue in this case. Mattel further objects to the Request on the grounds that it seeks documents that are not relevant to this action or likely to lead to the discovery of admissible evidence. Mattel further objects to this Request on the grounds that it calls for the disclosure of information subject to the attorney-client privilege, joint defense privilege, the attorney work-product doctrine and other applicable privileges.

Subject to and without waiving the foregoing objections, Mattel responds as follows: Mattel will produce such responsive, non-privileged documents that are in Mattel's possession, custody, or control, if any, that Mattel has been able to locate after a diligent search and reasonable inquiry, to the extent not previously produced.

Request 531:

DOCUMENTS sufficient to show YOUR fee arrangement with YOUR counsel Quinn Emanuel Urquhart Oliver & Hedges LLP for services in connection with this ACTION, including, but not limited to, a copy of the fee agreement or retainer agreement between YOU and Quinn Emanuel Urquhart Oliver & Hedges LLP.

Response:

In addition to the general objections stated above which are incorporated herein by reference, Mattel objects to this Request on the grounds that it is overbroad, unduly burdensome and unintelligible, including in that it seeks all documents on this subject without limitation as to time, and regardless of whether such documents relate to products or matters at issue in this case. Mattel further objects to the Request on the grounds that it seeks documents that are not relevant to this action or likely to lead to the discovery of admissible evidence. Mattel further objects to this Request on the grounds that it calls for the disclosure of information subject to the attorney-client privilege, the attorney work-product doctrine and other applicable privileges.

EXHIBIT 16
PAGE 251

B. Dylan Procter, Esq.
December 3, 2007
Page 4

      You also state in your letter that, "[a]s the Court has held, the Business and Professions Code's privilege provisions do not apply in this federal question case, which is governed by federal privilege law." I do not see this holding in the orders attached to your letter. If I have missed it, I would appreciate it if you would direct me to this holding. Finally, with respect to your statements regarding a privilege log, as I stated in my letter dated November 21, 2007, it is our position that the fee agreements between our clients and their attorneys, as well as all correspondence between our clients and their attorneys, are privileged. In all of my years of practice, I have never provided a privilege log listing all of the correspondence between me and my clients where my clients are not parties to the litigation. If you believe that I am required to do this, please direct me to the relevant authority. In addition, please confirm whether your firm has produced such a privilege log identifying all communications to and from Mattel.

      Fifth, we continue to disagree with your contention that you are "entitled to unredacted copies of all documents that have been produced by your clients." In support of your argument you again cite to orders by Judge Infante that address specific discovery disputes between the parties to this action. Not only are all discovery disputes by their nature fact specific, in the case of disputes with a third party witness, nonparty status may be considered in evaluating the burden of complying with a production subpoena under Rule 45. *See Richards of Rockford, Inc. v. Pac. Gas & Elec. Co.*, 71 F.R.D. 388, 390 (N.D. Cal. 1976) (status of nonparty considered in deciding motion to compel testimony and production of documents); *see also Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty status may be considered by the court in weighing the burdens"). Therefore, the orders that you rely on are not controlling as to my clients. In addition, I do not appreciate your threat that if we do not do what you want, you will burden our third-party witnesses with an additional day of deposition. As you know, I have long taken the position that I will not allow the depositions of these witnesses to go beyond one day of seven hours. With respect to the redactions, the matters that we redacted from the documents were not relevant to this litigation and I am unaware of any requirement that we produce irrelevant information. For example, certain email chains contained both relevant and irrelevant information, and we properly redacted the irrelevant information. However, in an effort to avoid burdening the Court with unnecessary motion practice, we will produce to you unredacted copies of all of the documents that we have produced other than Ms. Leahy's planner. Our position with respect to Ms. Leahy's planner is set forth in my letter dated November 14, 2007 and remains unchanged.

      Lastly, with respect to the bank records of Ms. Marlow, on Thursday, November 29, 2007, at approximately 5:00 p.m. you notified me for the first time that your firm was in possession of all of Ms. Marlow's bank records from Wells Fargo. As you know, this is a violation of the agreement reached with your partner Susan Wines. That agreement required that all bank records be produced to me for my review and I would produce all of the documents that related to agreed upon persons and entities. That agreement was reached after I notified Ms. Wines that I intended to file an ex parte application to quash a similar subpoena served on Mattel Federal Credit Union with respect to the bank records for Ms. Cloonan and Ms. Marlow. As you know, Ms. Wines confirmed our agreement in a letter dated June 14, 2007. In addition, in letters dated



EXHIBIT 16
PAGE 252

B. Dylan Procter, Esq.
December 3, 2007
Page 5

July 23, 2007, September 21, 2007, and November 21, 2007, I notified your firm that I had not yet received the bank records from Wells Fargo. When you told me on Thursday that you were in possession of all of Ms. Marlow's bank records from Wells Fargo, I asked you to agree to return all copies and originals of the Wells Fargo bank records, to confirm that your firm had not reviewed or made any use of these documents and to provide me with the date that your firm received these documents. You told me that you would consider my request. On Friday, I received a copy of the Wells Fargo documents with a cover letter from you that stated as follows:

> Further to our conversation of today, enclosed herewith you will find the Wells Fargo documents relating to your client, Veronica Marlow, as produced by Mattel to the other parties in this action. As I explained, Wells Fargo sent these documents directly to us without any prompting by us, notwithstanding our prior understanding that the documents would be produced to you, and in the normal course of handling they were produced to all parties on October 2, 2007.

Although you did not answer my question with respect to when your firm received these documents, I note that the Wells Fargo declaration provided with the documents is dated August 27, 2007, which is well after both the date of the agreement entered into by Ms. Wines and my letter dated July 23, 2007, informing you that I had not yet received the banking records. Without waiver of our position that your firm has violated Ms. Marlow's privacy rights and has breached the agreement entered into with Ms. Wines, I reiterate my request that you return all copies and originals of the Wells Fargo bank records, confirm that your firm has not reviewed or made any use of these documents, and provide me with the date that your firm received these documents.

With respect to your request regarding additional bank accounts used by Ms. Marlow in connection with her work with MGA, in light of your firm's violation of our agreement and, as I mentioned to you on Thursday, I believe that Ms. Marlow needs additional protection in order to proceed. What I suggested during our telephone conversation is that you identify the place of production as our offices in all of the subpoenas served on these additional financial institutions. If you agree to this condition, I will provide you with the additional information.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

cc: Thomas J. Nolan
    Michael Page

EXHIBIT 16
PAGE 253

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-...

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS:
dylanproctor@quinnemanuel.com

December 6, 2007

VIA FACSIMILE AND U.S. MAIL

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:  Mattel v. Bryant, et al.

Dear Larry:

I write in response to your letter of December 3, 2007.

First, thank you for agreeing to provide unredacted copies of all documents produced by Ms. Marlow, Ms. Leahy and Ms. Cloonan in this action, other than Ms. Leahy's planner. Although I have not yet had an opportunity to examine its contents, I received today a letter from you enclosing unredacted documents. We will let you know if there are any further issues regarding these documents (other than, of course, our ongoing disagreement with Ms. Leahy's refusal to produce unredacted copies of her planner).

Second, please let us know when we can expect to receive the Bates numbered photocopies of the three-dimensional objects that have been produced by your clients. Regarding your request that we inform you whether we intend to show photographs or videotapes of these objects to your clients at deposition, please understand that we are not required to inform you in advance what documents and exhibits we intend to show your clients at deposition. However, as you know Mattel has subpoenaed the original objects produced by Ms. Leahy for production at the deposition.

**quinn emanuel urquhart oliver & hedges, llp**

07209/2314479.1

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6...
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | ...

EX ___16___
PG ___254___

Third, we continue to disagree with your assertions that your clients' fee agreements with MGA need not be produced for reasons we have explained previously. We appear to have inadvertently failed to include the Order holding that federal privilege law applies in this case with our prior letter. See Order Re Motions Heard On June 11, 2007, dated June 27, 2007, at 33-34. Therefore, a copy of this order is attached for your reference, pursuant to your request. As you will see, the Court has clearly held that the Business and Professions Code's privilege provisions which you cited in your November 21, 2007 letter do not apply in this federal question case, which is governed by federal privilege law. Your misguided assertions about Mattel's objections to other subpoenas and Mattel's responses to other parties' requests for production are irrelevant here. Your clients' obligations to produce fee agreements revealing their biases are quite clear under prior Court Orders. If you will not produce them, we will move to compel their production.

Fourth, your assertion that your clients need not log or provide any description of documents they are withholding on privilege claims is erroneous. Third parties are required to produce privilege logs under the Federal Rules. See Federal Rule of Civil Procedure 45(d)(2) ("When information subject to a subpoena is withheld on a claim that it is privileged . . ., the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim"). The "universally accepted" means of claiming that requested documents are privileged is the production of a document-by-document privilege log. See Gail v. New England Gas Co., Inc., 243 F.R.D. 28, 33 (D. R.I. 2007) (discussing requirement in the context of Rule 45); Martinez v. City of Fresno, 2006 WL 3762050, at *6 (E.D. Cal. 2006) (over-generalized descriptions that fail to adequately identify specific documents are insufficient in a privilege log) Here, you have offered literally no description of the purportedly privileged documents you are withholding. That is clearly improper.

Your remark that you have never before logged "all of the correspondence between me and my clients where my clients are not parties to the litigation" is a red herring. The point is, your clients have not produced a privilege log for *any* of their withheld documents, including any documents they are withholding from key time periods in the case. Nevertheless, in an effort to avoid burdening you and your clients to greatest extent possible, we are willing to accept privilege logs from Ms. Marlow, Ms. Cloonan, Ms. Leahy and Ms. Halpern that do not include or log communications that are exclusively between Marlow, Cloonan, Leahy or Halpern and yourself or other attorneys at your firm sent on or after January 1, 2006, that were not copied or addressed to other parties or third parties and that do not relate to fee or indemnification matters All other documents should be logged. We will assume you are not willing to do so, but please let us know if you will reconsider and will produce the overdue privilege logs as soon as possible.

Fifth, pursuant to your request for this information, our records indicate that we received Ms. Marlow's Wells Fargo bank records from Wells Fargo on September 6, 2007. Contrary to your assertions, however, and as I explained on our call, we did not violate the agreement between yourself and Ms. Wines in any way. In fact, to the contrary, Ms. Wines sent a letter to Wells

07209/2314479 1

2

EXH 16
PG 255

Fargo on June 14, 2007 specifically requesting that Wells Fargo produce Ms. Marlow's documents directly to your office. You were copied on this letter. Thus, as you know, Wells Fargo's production of these documents to our offices was simply a mistake on the part of Wells Fargo, and nothing more.

Regarding your request that we somehow unring the bell and return the Wells Fargo bank records to you, your letter identifies no basis for your position. As you have seen, the document are non-privileged and discoverable, and they were circulated to all parties months ago. If you have any basis for requesting the return of these non-privileged documents or authorities supporting that request, please let us know. However, the parties' prior agreement that you would pre-screen these documents appears moot at this stage of the proceedings with respect to those documents. Please let us know if you wish to discuss this matter further.

In any case, pursuant to your request, we will agree to identify your office as the place of production on future subpoenas for Ms. Marlow's records that we serve on the additional financial institutions you have agreed to identify. Please provide us with the information concerning additional bank accounts used by Ms. Marlow as soon as possible.

I look forward to hearing from you.

Very truly yours,

B. Dylan Proctor

Enclosures

EXHIBIT 16
PAGE 256