1  THOMAS J. NOLAN (Bar No. 066992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone:   (213) 687-5000
   Facsimile:   (213) 687-5600
4  Email:    tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No.  40892)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Embarcadero Center, 38th Floor
   San Francisco, CA  94111-5974
7  Telephone:   (415) 984-6400
   Facsimile:   (415) 984-2698
8  Email:     rkennedy@skadden.com

9  Attorneys for MGA Entertainment, Inc.,
   MGA Entertainment (HK) Limited,
10 MGAE De Mexico, S.R.L. DE C.V., and
   Isaac Larian

11

12              UNITED STATES DISTRICT COURT

13            CENTRAL DISTRICT OF CALIFORNIA

14                  EASTERN DIVISION

15  CARTER BRYANT, an individual          )  CASE NO. CV 04-9049 SGL (RNBx)
                                          )
16              Plaintiff,                )  Consolidated with Case No. 04-9059
                                          )  and Case No. 05-2727
17       v.                               )
                                          )  **DISCOVERY MATTER**
18  MATTEL, INC., a Delaware              )
    corporation                          )  **[To be heard by Discovery Master**
19                                        )  **Hon. Edward A. Infante (Ret.)]**
                Defendant.                )
20                                        )  **DECLARATION OF TIMOTHY**
   ─────────────────────────────────     )  **A. MILLER IN SUPPORT OF**
21  Consolidated with MATTEL, INC. v.     )  **MGA ENTERTAINMENT, INC.'S**
    BRYANT and MGA                        )  **OPPOSITION TO MATTEL,**
22  ENTERTAINMENT, INC. v.                )  **INC.'S MOTION TO COMPEL A**
    MATTEL, INC.                          )  **COMPLETE RESPONSE TO**
23                                        )  **MATTEL'S SUPPLEMENTAL**
   ─────────────────────────────────     )  **INTERROGATORY RE TEST**
24                                           **PROJECTS**

25
                                             Hearing Date:  TBD
26                                           Time:          TBD
                                             Place:         TBD
27
   **ORIGINAL**
28

─────────────────────────────────────────────────────────────────
   DECL. OF TIMOTHY MILLER ISO MGA'S OPP. TO MATTEL'S MOTION TO COMPEL

I, Timothy A. Miller, declare as follows:

1.  I am an attorney duly licensed to practice law in the State of California and am a member of the law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), counsel of record for MGA Entertainment Inc. ("MGA"), MGA Entertainment (HK) Limited ("MGA HK"), MGAE De Mexico, S.R.L. De C.V. ("MGA Mexico") and Isaac Larian in this action.  Except where otherwise noted, I have personal knowledge of the facts set forth below and could competently testify thereto.

2.  Attached hereto as Exhibit A is a true and correct copy of excerpts from the November 4, 2004 transcript of the Deposition of Carter Bryant.

3.  Attached hereto as Exhibit B is a true and correct copy of Mattel, Inc.'s Notice of Motion and Motion to Compel MGA to Produce Witnesses Pursuant to Mattel's Third Notice of Deposition Under Rule 30(b)(6) and for Sanctions, filed July 19, 2007.

4.  Attached hereto as Exhibit C is a true and correct copy of the Court's Minute Order Regarding Status Conference dated October 15, 2007

5.  Attached hereto as Exhibit D is a true and correct copy of B. Dylan Proctor's letter to me dated January 10, 2008.

6.  Attached hereto as Exhibit E is a true and correct copy of excerpts from the May 25, 2007 transcript of the Deposition of Paula Garcia.

7.  Attached hereto as Exhibit F is a true and correct copy of excerpts from the October 10, 2007 transcript of the Deposition of Paula Garcia.

8.  Attached hereto as Exhibit G is a true and correct copy of Mattel, Inc's Reply in Support of Motion to Compel MGA to Produce Witnesses Pursuant to Mattel's Third Notice of Deposition Under Rule 30(b)(6) and for Sanctions, filed August 6, 2007.

9.  Attached hereto as Exhibit H is a true and correct copy of excerpts from the November 8, 2004, transcript of the Deposition of Carter Bryant.

1

1        10.    Attached hereto as <u>Exhibit I</u> is a true and correct copy of Plaintiff Mattel,

2  Inc.'s Objections and Supplemental Responses to Defendant's First Set of

3  Interrogatories, filed May 16, 2005.

4        11.    Attached hereto as <u>Exhibit J</u> is a true and correct copy of excerpts from

5  the November 5, 2004 transcript of the Deposition of Carter Bryant.

6        I declare under penalty of perjury under the laws of the United States of

7  America that the foregoing is true and correct.  Executed this 7th day of February,

8  2008, in San Francisco, California.

9

10

                                     Timothy A. Miller

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECL. OF TIMOTHY MILLER ISO MGA'S OPP. TO MATTEL'S MOTION TO COMPEL

203867-San Francisco Server 1A - MSW

0001

<div align="center">

CONFIDENTIAL

</div>

1
2
3
4

<div align="center">

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

</div>

5
6

| | | |
|---|---|---|
| MATTEL, INC., a Delaware corporation | ) | CASE NO. |
| Corporation | ) | CV 04-9059 DDP (AJWx) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CARTER BRYANT, an individual, and | ) | |
| DOES 1 through 10, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

7

8

9

10

11

12
_____

| | |
|---|---|
| CARTER BRYANT, on behalf of himself, | ) |
| all present and former employees of | ) |
| Mattel, Inc., and the general public, | ) |
| | ) |
| Cross-Complainant, | ) |
| | ) |
| vs. | ) |
| | ) |
| MATTEL, INC., a Delaware corporation, | ) |
| | ) |
| Cross-Defendant. | ) |

13

14

15

16

17

18
19

<div align="center">

VOLUME I
THE VIDEOTAPED DEPOSITION OF CARTER BRYANT,

</div>

20
produced, sworn, and examined on Thursday, November 4, 2004,
21
at 9:13 a.m. of that day, pursuant to Notice to Take
Deposition at the University Plaza, Executive Boardroom,
22
333 South John Q. Hammons Parkway, in the City of Springfield,
County of Greene, State of Missouri, before Sherrie L. Hunt,
23
Certified Court Reporter, and Notary Public, in a certain
cause now pending in the United States District Court for the
24
Central District of California, wherein the parties are as
above set forth; taken on behalf of the Plaintiff Mattel,
25
Inc.
26
27

<div align="center">

COURT REPORTERS OF THE MIDWEST, INC.
P.O. Box 4282

</div>

28

<div align="center">

Springfield, MO 65808 (417) 889-2079

</div>

29
30

EXHIBIT _A_
PAGE _3_

1        Reporter, would you please swear in the witness.

2                    CARTER BRYANT,

3        being first duly sworn to testify the truth, the whole

4        truth, and nothing but the truth, testified as follows:

5                    VIDEOGRAPHER:  We're now on the record.  The

6        time is 9:14 a.m.

7                    MR. QUINN:  Thank you.

8                    DIRECT EXAMINATION

9        BY MR. QUINN:

10       Q   Good morning, Mr. Bryant.

11       A   Good morning.

12                   MR. WICKHAM:  John, just by way of

13       clarification so that we have an understanding that Mr.

14       Bryant is appearing today pursuant to Judge Alarcon's

15       ordered that ordered that his deposition proceed today on

16       November 4 and tomorrow on November 5; however, the action

17       has recently been removed to the U.S. District Court for

18       the Central District of California, and as a consequence,

19       the deposition is proceeding pursuant to the Federal Rules

20       of Civil Procedure, including its limitations on

21       discovery.

22           That said, even though the Federal rules do have a

23       seven-hour limitation on depositions, we have agreed that

24       Mr. Bryant will be here today and tomorrow and that we do

25       intend that he will be here until the deposition is

EXHIBIT  _A_
PAGE  _4_

Bryant, Carter - Vol. 1 (Confidential) [draft] 11/4/2004 9:13:00 AM

1   completed.  It was noticed to continue from day to day

2   until completed, and so if we're not completed by -- on

3   Friday, then we're prepared to proceed on Saturday,

4   Sunday, what have you, to ensure that the deposition does

5   get completed during this session.

6       MR. QUINN:  I'm not sure whether we agree

7   with any of that, but let's proceed with the deposition.

8   Q   (By Mr. Quinn)  Good morning, Mr. Bryant.

9   A   Good morning.

10  Q   When did you first hear of MGA?

11  A   I first heard of MGA through a friend of mine, Veronica

12     Marlow, and I think that was back in 2000.

13  Q   Can you recall approximately what time in 2000?

14  A   I think -- I think it was perhaps around July.

15  Q   Is there some reason why the month of July sticks out in

16     your mind?

17  A   I just remember it was sometime in the mid to late summer.

18  Q   And how did you know Veronica Marlow?

19  A   She was a good friend of mine who I had known from Mattel.

20  Q   And what was her affiliation with MGA at the time?

21  A   She was doing freelance work for MGA.

22  Q   Do you know what kind of work she was doing?

23  A   She was designing dolls, and other than that, I'm not

24     sure.

25  Q   Do I understand correctly that she was not an MGA employee

EXHIBIT  A
PAGE  5

1    at the time?

2    A   That's right.

3    Q   And do you know what kind of doll she was designing for

4        MGA at the time?

5    A   I don't.

6            MR. WICKHAM:  One other thing, John, because

7    I don't want to interrupt with -- unnecessarily, I'd like

8    to have a continuing direction that the entire deposition

9    will proceed pursuant to the protective order that at a

10   minimum the deposition proceed with designations of

11   confidentiality, and as matters that go to attorney's eyes

12   only arise, then we will designate those things and we'll

13   have to properly deal with those things in terms of the

14   attendance of the company's representative, but I do want

15   to have the entire deposition just designated as

16   confidential so that I don't have to keep on objecting and

17   interposing to say that it's -- you know, this is

18   confidential and that's not.

19           MR. QUINN:  Does this mean -- I'm just not

20   familiar with the protective order in place.  Does that

21   mean that anything would have to be filed under seal if

22   any part of the deposition is filed with the Court?

23           MR. ZELLER:  (Nods head.)

24           MR. QUINN:  I'm being sold, yes, it does.

25   And  -- I mean, ordinarily I just -- I think that's

EXHIBIT   A
PAGE      6

1   Q  Do you recall anything else that you said at this meeting

2       that you haven't already told me about?

3   A  Not at this time I don't.

4   Q  Was there any discussion about the terms on which MGA

5       might pursue this project?

6   A  I believe there was.  Again, I would be kind of

7       paraphrasing, but I believe that Isaac said if we -- if we

8       were to do this project, I would like to you to be

9       involved, help develop it with our team.  That's about all

10      I remember.

11  Q  Was there any discussion about financial terms?

12  A  No, not at that time.

13  Q  All right.  And did you make any response to him when he

14      indicated that he would like you to be involved in the

15      development of the project?

16  A  I told him that I would be glad to help, that I thought it

17      would be -- since it was my original idea, it would be

18      good to be involved, but I was of the understanding that I

19      would be working with the team, that I would be taking my

20      direction from MGA.

21  Q  Was there any discussion of any projects that you might

22      work on for MGA other than Bratz?

23          MR. WICKHAM:  This is at the September 1

24      meeting?

25          MR. QUINN:  Yes, sir.

EXHIBIT _A_
PAGE _7_

1    A   No.

2    Q   (By Mr. Quinn)  At any time prior to the last day of your

3        employment at Mattel did you have any discussion with MGA

4        about any projects you might work on with them other than

5        Bratz?

6    A   I did sort of a tryout kind of a project for them.  It was

7        an angel project.  It was actually not my project.  It was

8        Veronica's project, and I did some face designs for them,

9        just some drawings, and I don't know if they used any of

10       them or not, but it was my -- excuse me, my understanding

11       that this was kind of a test to see how well I would do,

12       you know, with working with the team, working with

13       direction.

14   Q   And this work that you did on face designs for the angel

15       project, that's work that you did before your last day of

16       employment at Mattel?

17   A   Yes.

18   Q   All right.  When you entered into your agreement with MGA,

19       was it your understanding at that point that you were

20       being engaged to work with them on the Bratz project?

21   A   Yes.

22   Q   There was -- at that point was there any other project

23       which you understood you were being engaged to work on?

24   A   No.

25   Q   The work that you were going to do with MGA as

EXHIBIT  4
PAGE    8

1    contemplated by you at that time was just Bratz?

2    A   That's right.

3                MR. QUINN:  Okay.  We need to change tape.

4                VIDEOGRAPHER:  Off the record.  The time's

5        2:45.

6                (Break in proceedings.)

7                VIDEOGRAPHER:  Back on the record.  Time is

8        2:53.

9    Q   (By Mr. Quinn)  Mr. Bryant, at any time during your

10       discussions with MGA leading up to the agreement that you

11       entered into with MGA, did you contemplate that you would

12       be working with MGA on anything other than the Bratz

13       project?

14   A   No, not at that time.

15   Q   And basically this was -- as far as you were concerned,

16       these discussions all related to the potential

17       exploitation of the Bratz idea?

18   A   Yes.

19   Q   Did you contemplate that if MGA -- if you were able to

20       reach an agreement with MGA that, you know, this would

21       require all your time?

22                MR. WICKHAM:  Objection --

23                MS. CENDALI:  Objection.

24                MR. WICKHAM:  -- vague -- vague as to time,

25       foundation, calls for speculation.

EXHIBIT  4
PAGE  9

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
6   Facsimile: (213) 443-3100

7   Attorneys for Mattel, Inc.

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                       EASTERN DIVISION

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

12          Plaintiff,                    Consolidated with
                                          Case No. CV 04-09059
13          vs.                           Case No. CV 05-02727

14  MATTEL, INC., a Delaware              **DISCOVERY MATTER**
15  corporation,
                                          **[To Be Heard By Discovery Master**
16          Defendant.                    **Hon. Edward Infante (Ret.) Pursuant**
                                          **To The Court's Order of December 6,**
17  _____         **2006]**

18  AND CONSOLIDATED ACTIONS             MATTEL, INC.'S NOTICE OF
19                                        MOTION AND MOTION TO
                                          COMPEL MGA TO PRODUCE
20                                        WITNESSES PURSUANT TO
                                          MATTEL'S THIRD NOTICE OF
                                          DEPOSITION UNDER RULE 30(B)(6)
21                                        AND FOR SANCTIONS

22                                        [Declarations of Michael T. Zeller and
23                                        Tamar Buchakjian filed concurrently
                                          herewith]

24                                        Hearing Date:    TBA
25                                        Time:            TBA
                                          Place:           Telephonic

26                                        Discovery Cut-off: January 14, 2008
27                                        Pre-trial Conference: April 7, 2008
                                          Trial Date: April 29, 2008

28

17209/2164784.7

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

EXHIBIT   B
PAGE   10

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that, at a telephonic conference before

3  Discovery Master Hon. Edward Infante (Ret.), that will occur at a time to be set by

4  Judge Infante, Mattel, Inc. will, and hereby does, move the Court, pursuant to

5  Federal Rules of Civil Procedure 30(b)(6) and 37, for an order compelling MGA

6  Entertainment Inc. ("MGA") to designate and produce witnesses to testify on Topics

7  1-3, 6-8, 9, and 11-13 in Mattel's Third Notice of Deposition of MGA Entertainment

8  Inc. (the "Third Notice").

9          This Motion is made on the grounds that MGA refuses to identify or

10  produce any witness to testify on Topics 1-3, 6-8, 9, and 11-13 of the Third Notice.

11          This Motion is based on this Notice of Motion and Motion, the

12  accompanying Memorandum of Points and Authorities and Declarations of Michael

13  T. Zeller and Tamar Buchakjian filed concurrently herewith, the records and files of

14  this Court, and all other matters of which the Court may take judicial notice.

15

16          **Statement of Rule 37-1 Compliance**

17          The parties met and conferred regarding the Third Notice on July 5,

18  2007.

19

20  DATED: July 19, 2007          QUINN EMANUEL URQUHART OLIVER &
                                  HEDGES, LLP
21

22                                By _____
23                                Michael T. Zeller
                                  Attorneys for Plaintiff and Cross-Defendant
24                                Mattel, Inc.

25

26

27

28

07209/2164784.7

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

EXHIBIT ___6___
PAGE ___11___

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

Preliminary Statement ............................................................................... 1

Statement of Facts..................................................................................... 3

    A.    The Discovery Master Rejects MGA's Stonewalling On Mattel's First Rule 30(b)(6) Notice.................................................................. 3

    B.    The Discovery Master And Then Judge Larson Reject MGA's Stonewalling On Mattel's Second Rule 30(b)(6) Notice. ...................... 5

    C.    MGA Stonewalls On Mattel's Third 30(b)(6) Notice With Objections That Have Already Been Rejected. ....................................... 8

Argument    12

I.    the court should compel MGA To Produce witnesses for each of the topics at issue.................................................................................... 12

    A.    The Storage Devices MGA Employees Used For Digital Information Related to Bratz or Angel (Topic Nos. 1-3). .................... 12

    B.    MGA's Prior Statements To The Press Related To Bratz...................... 18

    C.    Persons Who Performed "Test Projects" For MGA. ............................ 19

    D.    MGA's Payments To Isaac Larian, Farhad Larian and Zarabi. ............ 23

II.    the court should SANCTION MGA FOR ITS unsupported refusal to PRODUCe witnesses................................................................................. 26

Conclusion    28

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

EXHIBIT    B
PAGE    12

# TABLE OF AUTHORITIES

**Page**

## Cases

Beach v. City of Olathe, Kans.,
   203 F.R.D. 489 (D. Kan. 2001)..................................................21

*Bills v. Kennecott Corp.*,
   108 F.R.D. 459 (D.C. Utah 1985) ............................................17

Braley v. Campbell,
   832 F.2d 1504 (10th Cir. 1987)...............................................26

Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc.,
   175 F.R.D. 646 (C.D. Cal. 1997) .............................................24

Dunn v. Midwestern Indem.,
   88 F.R.D. 191 (D.C. Ohio 1980) .............................................17

G.D. v. Monarch Plastic Surgery, P.A.,
   239 F.R.D. 641 (D. Kan. 2007)...............................................17

Hyde & Drath v. Baker,
   24 F.3d 1162 (9th Cir. 1994)....................................................25

Oakes v. Halvorsen Marine Ltd.,
   179 F.R.D. 281 (C.D.Cal. 1998) .......................................24, 25

Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.,
   267 F.3d 340 (3d Cir. 2001) ....................................................18

RTC v. Dabney,
   73 F.3d 262 (10th Cir. 1995) ...................................................26

Tracinda Corp. v. DaimlerChrysler AG,
   362 F. Supp. 2d 487 (D. Del. 2005) .......................................18

U.S. Equal Employment Opportunity Comm'n v. Ian Schrager Hotels, Inc.,
   2000 WL 307470 (C.D. Cal. 2000)..........................................25

United States v. Abel,
   469 U.S. 45 (1984) ...................................................................24

## Statutes

F.R.C.P. 26(b)(1) ...........................................................................17

Fed. R. Civ. P. 30(B)(6)....................................................................3

Rule 30(B)(6) .......................................................1, 2, 3, 5, 7, 10, 18, 22

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

09460/2172397.1

EXHIBIT   b
PAGE   13

1  <u>Fed. R. Civ. P.</u> 37(a)(4) ........................................................................... 25

2  <u>Rule</u> 37(a)(4) ......................................................................................... 25

3  Second, 28 U.S.C. section 1927 ............................................................... 25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

09460/2172397.1

-iii-

EXHIBIT ___b___
PAGE ___14___

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

MGA continues with its failures and refusals to produce plainly relevant -- even critical -- witnesses for deposition unless ordered by the Court to do so. Regrettably, the Court is already familiar with MGA's obstructionist tactics with respect to Mattel's First and Second <u>Rule</u> 30(b)(6) Notices on MGA.   After months of MGA's gamesmanship, including last-minute cancellations of promised depositions followed by outright refusals to produce witnesses, the Discovery Master rejected every one of MGA's objections with respect to those Notices and ordered MGA to designate and produce witnesses by the end of June.  It then filed a meritless appeal with Judge Larson, who rejected MGA's appeal in its entirety on July 2, 2007.  That was not sufficient for MGA to comply with the Discovery Master's Order, so Mattel has been forced to seek enforcement of that Order, which motion is currently pending before the Discovery Master.

Unfortunately, MGA is at it again with respect to Mattel's Third <u>Rule</u> 30(b)(6) Notice.  MGA refuses to produce witnesses for six out of ten Topics based on the same groundless objections that the Discovery Master and/or Judge Larson have already rejected.  First, MGA objects to three Topics regarding prior inconsistent statements that MGA made to the press regarding the origins of Bratz. MGA contends the only proper forum for those Topics is an individual deposition of MGA's CEO.  But the Discovery Master rejected an identical argument with respect to prior inconsistent sworn statements by MGA representatives.  So did Judge Larson.  Indeed, under MGA's logic, no statement of any high corporate officer, no matter the context in which the officer said it, could ever be attributed to a corporation or subject to deposition testimony on behalf of the corporation.  And, MGA's current position is not even consistent with the <u>Rule</u> 30(b)(6) testimony that

EXHIBIT __β__
PAGE __15__

1   it sought -- and obtained -- from Mattel regarding alleged statements made to the

2   *Wall Street Journal.*

3          Second, MGA claims that three other Topics regarding MGA's

4   payments to a party-witness -- Isaac Larian -- and two witnesses -- Farhad Larian

5   and Morad Zarabi -- are irrelevant.  Once again, the Discovery Master already

6   rejected the same objections MGA raised with respect to discovery about (a) MGA's

7   payments to Carter Bryant and (b) the arbitration between Isaac Larian and Farhad

8   Larian, which Morad Zarabi arbitrated.  Two different Orders overruling MGA's

9   similar objections apparently are insufficient to deter MGA's stonewalling on these

10  plainly relevant Topics.

11         MGA's objections on the remaining Topics are equally without merit.

12  Three Topics ask for a testimony about electronic storage devices, including most

13  importantly MGA computer hard-drives, that specified MGA employees or vendors

14  have used with respect to data related to the "Bratz" or "Angel" projects that are

15  squarely at issue.  MGA incorrectly claims these Topics were already covered in

16  prior <u>Rule</u> 30(b)(6) Topics for which MGA designated Kenneth Lockhart to testify

17  and that Mattel there is entitled to no further discovery.  In fact, the Topics from the

18  prior Notice were different, since they related to MGA's storage and document

19  retention policies and did not ask at all about storage devices that particular MGA

20  employees used for these critical projects.  Furthermore, when Lockhart was asked

21  questions about particular hard drives used by particular MGA employees, he had

22  no or virtually no information and certainly did not provide the testimony sought by

23  the current three Topics.

24         Finally, one Topic asks for a designation regarding "test projects"

25  which MGA asked persons to perform from 1995 to the present.  MGA claims it

26  does not understand the phrase "test projects," even though Defendants use that term

27  to describe one of their own supposed defenses in the case and indeed MGA itself

28  used the phrase during a recent deposition of a Mattel <u>Rule</u> 30(b)(6) witness.  MGA

07209/2164784.7

-2-

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

EXHIBIT ___B___
PAGE ___16___

1    also objects to the 1995 time frame as over-broad even though MGA itself sought

2    witnesses for <u>Rule</u> 30(b)(6) topics regarding Mattel's practices dating back to 1995.

3    The Discovery Master expressly ruled the topics were proper without restricting the

4    time frame.

5           Mattel respectfully requests that the Discovery Master compel MGA to

6    produce witnesses on Topics 1-3, 6-8, 9 and 11-13 of Mattel's Third <u>Rule</u> 30(b)(6)

7    Notice to MGA and to sanction MGA to deter MGA from forcing the parties and the

8    Court to address issues already litigated at length and ruled upon.

9

10                            **<u>Statement of Facts</u>**

11

12   A.   **<u>The Discovery Master Rejects MGA's Stonewalling On Mattel's</u>**

13        **<u>First Rule 30(b)(6) Notice.</u>**

14          Mattel first served a <u>Rule</u> 30(b)(6) Notice of MGA (the "First Notice")

15   on February 16, 2005.[1]  It took MGA until May 16, 2005 to designate two

16   witnesses.[2]  The Court stayed discovery four days later[3] and lifted the stay almost

17   one year after that, on May 17, 2006.[4]  Afterwards, Mattel repeatedly requested that

18   MGA provide dates for its designees' depositions.[5]  MGA at first ignored the

19   requests and then refused to provide dates unless Mattel produced additional

20   witnesses to testify on topics in a separate <u>Rule</u> 30(b)(6) notice that Bryant (not

21   [1]   First Notice of Deposition of MGA Entertainment, Inc. Pursuant to <u>Fed. R.</u>

22   <u>Civ. P.</u> 30(b)(6), attached as Exh. 1 to the Declaration of Michael T. Zeller, filed
     concurrently ("Zeller Dec.").

23   [2]   Ambrosini letter to Zeller dated May 16, 2005, Zeller Dec. Exh. 2.

24   [3]   Court's Order Staying Discovery dated May 20, 2005, Zeller Dec., Exh. 3.
     [4]   Court's Order Lifting Discovery Stay dated May 17, 2006, Zeller Dec., Exh. 4.

25   [5]   Letters from Jon Corey to MGA counsel dated December 11, 13, & 26, 2007,

26   Zeller Dec., Exh. 5.

27

28

EXHIBIT  _B_
PAGE  _17_

1   MGA) propounded.[6]  During a conference on December 19, 2006 with the
2   Discovery Master, MGA at last represented to Mattel and to the Discovery Master
3   that MGA would provide Mattel with deposition dates for its designees.[7]

4         That promise went unfulfilled.  First, during the deposition of its
5   designee for two of eight Topics in the First Notice, MGA instructed the designee
6   (Kerri Brode) not to answer questions about relevant documents, no matter if Brode
7   herself was a recipient of the documents.[8]  Mattel had to adjourn the deposition to
8   obtain a ruling from the Discovery Master after MGA's counsel refused to withdraw
9   the instructions.[9]  MGA never supported its instructions with any legal authority,[10]
10  but still refused to remove them "without an order of the Court."[11]  Only after Mattel
11  filed a motion to compel did MGA agree to withdraw its improper instructions.[12]  It
12  then produced a different designee (Charnayne Brooks) to continue the deposition
13  on March 2, 2007, more than two years after Mattel served the First Notice.

14        Second, for more than *five* months after its promise to the Discovery
15  Master, MGA stalled in producing its designee for six out of eight Topics in the
16  First Notice, Paula Garcia.  MGA at first claimed that she was unavailable until
17  March 19 and 20.[13]  MGA then unilaterally cancelled the March dates without
18  explanation.[14]  Mattel accepted April 12, 2007 as a substitute date for her deposition

19  _____
20  [6]  E-mail message from Jenal to Corey dated December 5, 2006, Zeller Dec., Exh. 6.
21  [7]  Zeller Dec., ¶ 8.
22  [8]  Dep. Tr. of Kerri Brode, Zeller Dec., Exh. 7 at 55:4-57:9, 58:2-12.
23  [9]  Id. at 61:14-62:8.
    [10]  Meyer letter to Zeller dated January 23, 2007, Zeller Dec., Exh. 8.
24  [11]  Zeller Dec., ¶ 11, Exh. 9.
    [12]  Stipulated Order Regarding MGA's 30(b)(6) Witness (the "Stipulation")
25  dated February 21, 2007, Zeller Dec. ¶ 12, Exh. 10.
    [13]  Jenal letter to Corey dated January 5, 2007, Zeller Dec., Exh. 11.
26  [14]  Zeller letter to Y. Garcia dated April 3, 2007, Zeller Dec., Exh. 13.
27
28

-4-
MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

EXHIBIT ___
PAGE ___

1  in the hopes of avoiding motion practice,[15] but MGA then turned around and began

2  suggesting that it would no longer designate Ms. Garcia on the First Notice and that

3  she would be produced in her individual capacity.[16] Then, as the substitute date

4  approached, MGA again unilaterally cancelled the deposition.[17] Mattel thus was

5  forced to file a motion to compel, which the Discovery Master granted on May 16,

6  2007.[18]

7          But this still did not end MGA's game playing.  It waited until two days

8  before Ms. Garcia's deposition to produce some 7,500 pages documents that, in the

9  main, related to her work on the Bratz or Angel projects, including indisputably

10 relevant documents that MGA should have produced months (if not years) earlier

11 but had withheld without any justification.[19] And, when MGA did finally produce

12 Ms. Garcia for deposition on May 24 and 25, 2007, MGA refused to allow it to be

13 completed and instructed her not to answer clearly relevant questions, which is the

14 subject of a pending motion before the Discovery Master.[20]

15

16 **B.    The Discovery Master And Then Judge Larson Reject MGA's**

17 **Stonewalling On Mattel's Second Rule 30(b)(6) Notice.**

18          Mattel served a Second Notice of Deposition of MGA on February 1,

19 2007 (the "Second Notice").[21] In response, MGA served objections on February 14,

20 2007, in which it refused to designate witnesses for twenty Topics and unjustifiably

---

21 [15] Zeller letter to Torres dated March 9, 2007, Zeller Dec., Exh. 14.
22 [16] Zeller letter to Garcia dated April 3, 2007, Zeller Dec., Exh. 13.
   [17] Torres letter to Zeller dated April 5, 2007, Zeller Dec., Exh. 15.
23 [18] Order Granting Mattel Inc.'s Motion to Compel MGA To Produce Witnesses
24 For Deposition Pursuant To Rule 30(b)(6), dated May 16, 2007, Zeller Dec., Exh. 20.
25 [19] Zeller Dec., ¶ 37.
26 [20] Id., ¶ 36.
   [21] Mattel's Second Notice of Deposition of MGA dated February 1, 2007, Zeller
27 Dec. Exh. 16.

28

07209/2164784.7

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

EXHIBIT
PAGE

narrowed others.[22]  Through meet and confer, the parties reached apparent agreement regarding the scope of many of the topics in the Second Notice, and MGA represented that it would provide designee dates and names by March 23, 2007.[23]  The parties were unable to reach agreement on thirteen Topics.[24]

Even as to the Topics on which there was evident agreement, however, and even as to those Topics MGA had stated in its response that it would produce witnesses to testify on, the March 23, 2007 date came and went without any designation by MGA.[25]  After more follow-up by Mattel,[26] MGA sent a letter on April 13, 2007 that for the first time identified MGA designees for any of the Topics in the Second Notice.[27]  Even then, MGA offered no proposed dates for the depositions of three of the four designees.[28]  Nor did MGA provide any designees for twelve Topics, including some on which the parties had supposedly agreed, and gave only more promises that they would be forthcoming.[29]  Indeed, as to these additional Topics, MGA did not commit to actually designate anyone, but instead said that they would let Mattel know "*whether* we will be designating anyone on [the] topics ...".[30]

After MGA had unilaterally and repeatedly cancelled Paula Garcia's deposition in her individual capacity and her capacity as designee on the First

---

[22]  MGA 's Objections to Mattel's Second Notice of Deposition of MGA Entertainment, Inc. dated February 14, 2007, Zeller Dec., Exh. 17.
[23]  Zeller Dec., ¶ 20.
[24]  Id.
[25]  Zeller letter to Garcia dated April 3, 2007, Zeller Dec., Exh. 13.
[26]  Id.
[27]  Torres letter to Zeller dated April 13, 2007, Zeller Dec., Exh. 18.  Although MGA's letter is oddly phrased to suggest that the identification of designees for Topics in the Second Notice had occurred earlier, it had not.
[28]  Zeller letter to Torres dated April 13, 2007, Zeller Dec., Exh. 19.
[29]  Torres letter to Zeller dated April 13, 2007, Zeller Dec., Exh. 18.
[30]  Id.

-6-

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

EXHIBIT  6
PAGE  20

1   Notice as described above, and after MGA refused to designate witnesses pursuant
2   to the Second Notice, Mattel moved to compel.  After briefing and argument, the
3   Discovery Master (1) ordered MGA to produce Garcia for deposition on or before
4   June 15, 2007, (2) ordered MGA to produce designees and dates for each of the
5   Topics at issue in the Second Notice, and (3) overruled all of MGA's objections and
6   limitations to the First and Second Notices.[31]

7           The Discovery Master's order did not convince MGA that it needed to
8   comply with the First and Second Notices.  Instead, MGA filed an appeal to the
9   District Judge arguing that the order was "clearly erroneous."[32]  MGA argued,
10  among other things, that Mattel could not ask MGA to produce a corporate witness
11  to testify about prior sworn statements of other company employees, and that Mattel
12  instead must depose the relevant witnesses as individuals.[33]  On July 2, 2006, Judge
13  Larson denied MGA's appeal in its entirety.[34]  The Court specifically ruled that
14  MGA's argument that prior sworn statements of MGA employees were not proper
15  subjects of a Rule 30(b)(6) notice was without merit.[35]

16          Yet, even after these rulings against it by Judge Larson and the
17  Discovery Master, MGA still fails and refuses to comply with its Rule 30(b)(6)
18  obligations.  Mattel had to file yet another motion to enforce the Discovery Master's
19  order, which also is currently pending before the Discovery Master.[36]

20
21  [31]   May 16, 2007 Order Granting Mattel Inc.'s Motion to Compel MGA To
    Produce Witnesses For Deposition Pursuant To Rule 30(b)(6), Zeller Dec., Exh. 20.
22  [32]   MGA's Memorandum of Points and Authorities In Support Of Motion
    Objecting To Portions Of The Discovery Master's May 16, 2007 Order, Zeller Dec.,
23  Exh. 21.
24  [33]   Id. at 2:13-19.
    [34]   July 2, 2007 Minute Order, Zeller Dec., Exh. 22, at 4-5.
25  [35]   Id. at 5.
26  [36]   Zeller Dec., ¶ 36.
27
28

-7-

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

EXHIBIT   b
PAGE    21

**C.**   **MGA Stonewalls On Mattel's Third 30(b)(6) Notice With Objections That Have Already Been Rejected.**

On June 5, 2007, Mattel served a Third Notice of Deposition of MGA (the "Third Notice") asking to designate witnesses for sixteen topics.[37]  MGA served objections to the Third Notice on June 29, 2007.[38]  The parties met and conferred on MGA's objections on July 5, 2007.[39]  MGA refused to provide any designees to testify about (i) the three Topics about hard drives and electronic storage devices that certain MGA employees or contractors used for digital information related to Bratz or Angel (Topics 1-3), (ii) three Topics about prior inconsistent statements MGA made to the press (Topics 6-8), (iii) one Topic about persons that performed "test projects" for MGA since January 1, 1995 (Topic 9), and (iv) three Topics about payments of money MGA made to Isaac Larian, who is a party-witness to this case, or to Farhad Larian and Morad Zarabi, who are fact witnesses in this litigation (Topics 11-13).[40]

The *verbatim* language of the Topics from the Third Notice at issue follows, along with a summary of MGA's objections to the Topics:

***Hard Drives and Other Storage Devices.***

1.   The IDENTITY, current or last known location, and disposition of each STORAGE DEVICE that each of the following PERSONS has used to create, generate, prepare, draft, send and/or receive any DOCUMENT or DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL at any time since January 1, 1999, including without limitation the date of acquisition and

---

[37]  Mattel's Third Notice of Deposition of MGA Pursuant to Federal Rule of Civil Procedure 30(b)(6), Zeller Dec., Exh. 23.

[38]  MGA's Objections to Mattel's Third Notice of Deposition of MGA, Zeller Dec. Exh. 24.

[39]  Zeller Dec., ¶ 28.

[40]  Id., Zeller Letter to Jenal dated July 6, 2007, Zeller Dec., Exh. 25.

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

EXHIBIT _b_
PAGE _22_

1  the date of disposition of each such STORAGE DEVICE:  Isaac Larian, Farhad

2  Larian, Paula Garcia, BRYANT, Kami Gillmour, Veronica Marlow, Mercedeh

3  Ward, Margaret Hatch-Leahy, Jennifer Maurus, Judy Rich, Ninette Pembleton,

4  Kerri Brode, Victoria O'Connor, Aileen Storer, Charles O'Connor, Helene Bartels,

5  Colleen O'Higgins, Vivian Matt, Maureen Mullen, Rachel Harris, Barbara Malcolm,

6  David Dees, Ben Ton, Dave Malacrida.

7        2.    The IDENTITY, current or last known location, and disposition

8  of each backup, copy or image of the STORAGE DEVICES referenced in Topic 1

9  of this Notice, including without limitation the date of creation and the date of

10  disposition of each such backup or copy.

11        3.    YOUR search for and production of DOCUMENTS and

12  DIGITAL INFORMATION from the STORAGE DEVICES referenced in Topic 1

13  of this Notice.

14        Among other boilerplate objections, MGA objected to these three

15  Topics on the grounds that they are purportedly duplicative of prior deposition

16  testimony of Kenneth Lockhart.[41]  Lockhart was MGA's <u>Rule</u> 30(b)(6) designee for

17  certain Topics in Mattel's Second Notice related to MGA's storage and retention

18  policies in electronic database systems, including e-mail.[42]  During the meet and

19  confer, MGA refused to designate a witness for these Topics because, according to

20  MGA, Mattel had the obligation to ask about these topics when they examined

21  Lockhart and thus had no right to further discovery.[43]

22  ***<u>Prior Inconsistent Statements to the Press.</u>***

23        6.    YOUR statements to Christopher Palmeri in connection with the

24  Business Week article entitled "To Really Be A Player, Mattel Needs Hotter Toys,"

25  _____

[41]    MGA's Objections to the Third Notice, Zeller Dec., Exh. 24 at 5-7.

26  [42]    Lockhart Depo. Tr., Zeller Dec., Exh. 26 at 34:12-25.  <u>See also</u> Mattel's

27  Second 30(b)(6) Notice to MGA, at 11-12 (Topics 38-46), Zeller Dec., Exh. 16.

28

-9-

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

EXHIBIT __B__
PAGE __23__

1  published on or about July 28, 2003, including without limitation in connection with

2  the statement that Isaac Larian "got the idea for Bratz after seeing his own kids run

3  around in navel-bearing tops and hip-huggers."

4          7.     YOUR statements to Denise I. O'Neal in connection with the

5  Chicago Sun-Times article entitled "Bratz Packers Are What's Cool in Doll World,"

6  published on or about  March 5, 2004, including without limitation in connection

7  with the statements that MGA's "creative team decided the name should be catchy

8  and not have more than six letters.  Keeping with today's trend of making names

9  more 'cool' by changing the spelling, MGA executives decided to replace the 's' with

10  a 'z.'"

11          8.     YOUR statements to Jeff Weiss in connection with the San

12  Fernando Valley Business Journal article entitled "Immigrant's Creative Company

13  Shakes Up Toy Industry," published on or about March 29, 2004, including without

14  limitation in connection with the statement that "[i]t was Jason's idea for Bratz."[44]

15          Among other boilerplate objections, MGA objected to each of these

16  Topics on the ground that they are an improper subject of a <u>Rule</u> 30(b)(6) Notice

17  because the statements were made by MGA's CEO and "MGA" thus did not make

18  the statements as a corporate actor.[45]  During meet and confer, MGA asserted that it

19  would not designate a witness on these Topics because Mattel can obtain this

20  information only through a personal deposition of Isaac Larian.[46]

21  ***"Test Projects" for MGA.***

22          9.     The IDENTITY of each PERSON who YOU had perform, or

23  who YOU requested, asked or solicited to perform, any "test project" in advance of

24  or in consideration of employment by YOU since January 1, 1995, including

---

[43]  Zeller Letter to Jenal dated July 6, 2007, Zeller Dec., Exh. 25.

[44]  The "Jason" referenced is Isaac Larian's son, Jason Larian.

[45]  MGA's Objections to Third Notice, Zeller Dec., Exh. 24 at 9-11.

28

EXHIBIT  ß
PAGE  24

1 without limitation the IDENTITY of each such PERSON who was a MATTEL

2 employee at the time.

3       Among other boilerplate objections, MGA objected to this Topics on

4 the grounds that "as worded, it is vague and ambiguous, particularly with respect to

5 the term 'test project.'"[47]  During meet and confer, despite Mattel's explanation that

6 Bryant and MGA themselves had been asserting that Bryant's work for MGA during

7 his Mattel employment was a "test project" akin to a "job interview," MGA refused

8 to designate a witness for this Topic primarily for the "vagueness" reason.  MGA

9 also took the position that 1995 to the present was too broad of a time frame.[48]

10 ***Payments MGA Made To Isaac Larian, Farhad Larian and Morad Zarabi.***

11       11.   Payments of money or any other item of value that YOU have

12 made to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac Larian

13 since January 1, 1999, including without limitation (a) the amounts of such payment

14 and the equivalent dollar value of each of item of value, (b) the dates of such

15 payment, (c) the IDENTITY of each recipient of such payment, (d) the IDENTITY

16 of each bank or financial institution account to which such payment was made and

17 (e) the reasons for each such payment.

18       12.   Payments of money or any other item of value that YOU have

19 made to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad

20 Larian since January 1, 1999, including without limitation (a) the amounts of each

21 such payment and the equivalent dollar value of each of item of value, (b) the timing

22 of each such payment, (c) the IDENTITY of each recipient of each such payment,

23 (d) the IDENTITY of each bank or financial institution account to which such

24 payment was made and (e) the reasons for each such payment.

---

25   [46]   Zeller Letter to Jenal dated July 6, 2007, Zeller Dec., Exh. 25.

26   [47]   MGA's Objections to Third Notice, Zeller Dec., Exh. 24 at 12.

27   [48]   Zeller Letter to Jenal dated July 6, 2007, Zeller Dec., Exh. 25.

28

-11-

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

EXHIBIT ___β___
PAGE ___25___

13.     Payments of money or any other item of value that YOU have made to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad Zarabi since January 1, 1999, including without limitation (a) the amounts of each such payment and the equivalent dollar value of each of item of value, (b) the timing of each such payment, (c) the IDENTITY of each recipient of each such payment, (d) the IDENTITY of each bank or financial institution account to which such payment was made and (e) the reasons for each such payment.

Among other boilerplate objections, MGA objected to these three Topics on the grounds that they are not relevant to any claim or defense in this litigation.[49]  During meet and confer, MGA stated this was the primary reason it would not designate witnesses on these topics.[50]

### Argument

## I.     THE COURT SHOULD COMPEL MGA TO PRODUCE WITNESSES FOR EACH OF THE TOPICS AT ISSUE.

### A.     The Storage Devices MGA Employees Used For Digital Information Related to Bratz or Angel (Topic Nos. 1-3).

Topic No. 1 seeks information regarding the location and disposition of computer hard drives or other storage devices that contain or contained documents related to the Bratz or Angel projects used by specified MGA employees or contractors.  MGA objected to this Topic on the grounds that "the testimony sought is unreasonably cumulative and duplicative of information already provided to Mattel by MGA and/or Defendant Carter Bryant, specifically with respect to the

---

[49]  MGA's Objections to Mattel's Third Notice at 12-16, Zeller Dec., Exh. 24.
[50]  Zeller Letter to Jenal dated July 6, 2007, Zeller Dec., Exh. 25.

EXHIBIT   _B_
PAGE   _26_

1 | deposition of Ken Lockhart, Vice President and Chief Information Office for MGA,

2 | which took place on June 14-15, 2007."[51]  Topic No. 2 in the Third Notice seeks the

3 | identification and last known location of any backup, copy or image of the hard

4 | drives or storage devices identified in Topic No. 1.  Topic No. 3 addresses MGA's

5 | search for and production of documents and digital information from the hard drives

6 | and storage devices referenced in Topic 1.  Again, MGA claims that these two Topic

7 | are cumulative and duplicative of Lockhart's testimony.

8 |      The objection is meritless and should be stricken.  First, the Topics at

9 | issue in the Third Notice are substantively different from the ones in the Second

10 | Notice.  Specifically, for the Second Notice, MGA designated Lockhart to testify

11 | about (i) MGA's retention, destruction and data back-up *policies*, (ii) MGA's digital

12 | information *systems* and application *software*, (iii) employees' electronic messaging

13 | *systems* and (iv) MGA's *policies* regarding the use of transportable media.[52]  By

14 | contrast, Topics 1, 2 and 3 in the Third Notice ask about particular electronic storage

15 | devices, such as computer hard drives and including identifying information about

16 | the devices, which specific MGA employees used for information related to the

17 | Bratz and Angel projects.  The Topics are different on their face.

18 |      Second, in any event, Mr. Lockhart indeed was asked about the

19 | location and disposition of particular hard drives and storage devices, but he was

20 | unable to provide any substantive testimony regarding Topic Nos. 1-3 of the Third

21 | Notice.  To be sure, Lockhart testified about the location and disposition of MGA

22 | employees' hard drives and storage devices *in general* -- i.e., about MGA's policies

23 | regarding certain kinds of electronic media.  As to matters concerning Topic No. 1,

24 | however, and contrary to MGA's claim that Lockhart "already provided" the

---

[51]  MGA's Objections To Third Notice, Zeller Dec., Exh. 24 at 5:20-23.
[52]  Lockhart Depo. Tr. at 34:12-25, Zeller Dec., Exh. 26; Mattel's Second 30(b)(6) Notice to MGA, Zeller Dec., Exh. 16 (Topics 38-46).

07209/2164784.7

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

EXHIBIT A
PAGE 27

1   information sought by Topic No. 1, he was unable to identify the locations of prior

2   hard drives used by the persons identified in Topic 1 or meaningfully discuss the

3   disposition of any of those hard drives:

4         Q.   Do you know who Fred Larian is?

5         A.   Yes, I do.

6         Q.   Does he have a -- an MGA-issued computer?

7         A.   Not at this time.

8         Q.   Has he in the past?

9         A.   Yes.

10        Q.   Do you know whether the -- either the Hard drive or

11   information off of the hard drive of Mr. Larian has been preserved?

12        A   I don't know.

13        Q.   Do you know where any hard drives used by Mr. Larian would

14   be located?

15        A.   No.

16        . . .

17   By Mr. Corey:

18        Q.   Do you know where any hard drives used by Ms. Paula Garcia

19   would be located, or are located?

20        A.   Yes.

21        Q.   Where?

22        A.   In her office.

23        Q.   Other than that?

24        A.   No.

25        Q.   I mean other than the hard drive that she's currently using in the

26   computer that's been issued to her.

27        A.   No.

28

07209/2164784.7

-14-

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

EXHIBIT ___6___
PAGE ___28___

1     Q.  And I believe I asked you whether Carter Bryant had been

2 issued a computer by MGA, and you didn't know the -- you didn't

3 know.

4     A.  That's correct.

5     Q.  Do you know what steps, if any, have been taken to preserve

6 either the hard drive or the information on the hard drive of Kami

7 Gillmour?

8     A.  I do not.

9     Q.  Do you know the location of any hard drive used by Kami

10 Gillmour?

11    A.  I do not.

12    Q.  Do you know whether any information -- excuse me.  Do you

13 know what steps have been taken to preserve information on any hard

14 drive used or the hard drive used -- hard drives used by Veronica

15 Marlow?

16    A.  Not outside of our normal process, I do not.

17    Q.  Do you know where any hard drive used at any time by

18 Veronica Marlow would be located?

19    A.  No, I do not.

20    Q.  Do you know what steps have been taken to preserve

21 information on any hard drive where the hard drives used by Mercedeh

22 Ward?

23    A.  Not outside of our normal practice.

24    Q.  Do you know the location of all hard drives -- any hard drive

25 used by Mercedeh Ward?

26    A.  No.

27

28

07209/2164784 7

-15-

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

EXHIBIT _B_
PAGE _29_

1    Q.    Same questions with respect to Margaret Hatch-Lahey.

2    A.    No.[53]

3          Lockhart's testimony was similarly meaningless when asked for

4    information sought by Topic Nos. 2 and 3 of the Third Notice.  As the testimony

5    cited above shows, he was unprepared to testify about search for and production of

6    documents and digital information from the hard drives and storage devices

7    referenced in Topic 1.  Indeed, he was unable to identify even whether a forensic

8    image of any hard drive had been made, much less identify where such an image

9    would be or when it was made:

10         Q.    And do you know whether a forensic image has been made of

11         any of the hard drives used by any of those people that I identified?

12    A.    No.

13    Q.    Including Mr. Larian?

14    Mr. Jenal:  Fred?

15    Mr. Corey:  Mr. Isaac Larian.

16    The Deponent:  No.[54]

17    The Topics are hardly duplicative or cumulative of Lockhart's testimony that he had

18    no knowledge of the location of backups or images of the requested hard drives.

19          MGA also cannot claim that information about hard drives and storage

20    devices the identified MGA employees or contractors used to store digital

21    information about the Bratz or Angel projects is not relevant.  Comments to the

22    2000 Amendments to Rule 26 expressly state such information is discoverable:

23    ───────────────────────────

24    [53]   Lockhart Depo. Tr., Zeller Dec., Exh. 26 at 327:4-329:19.  Lockhart went on
      to testify that he also did not know the location of any hard drives used by Jennifer
25    Maurus, Judy Rich, Ninette Pembleton, Kerri Brode, Victoria O'connor, Aileen
      Storer, Charles O'connor, Helene Bartels, Colleen O'higgins, Vivian Matt, Maureen
26    Mullen, Rachel Harris, Barbara Malcolm, David Dees, Ben Ton or Dave Malacrida.
27    Id. at 329:20-331:1.

28

EXHIBIT _β_
PAGE _30_

1  "Information about filing systems of a party could be discoverable if likely to yield

2  or lead to the discovery of admissible information."  Adv. Comm. Notes to 2000

3  Amendments to F.R.C.P. 26(b)(1).  See also G.D. v. Monarch Plastic Surgery, P.A.

4  239 F.R.D. 641, 645-646 (D. Kan. 2007) (allowing inspection of computers for

5  relevant information).  In fact, long before the 2000 Amendments to Rule 26, federal

6  courts had recognized that not just electronically-stored data, but also information

7  about the systems in which the data is stored, is discoverable information.  See, e.g.,

8  Bills v. Kennecott Corp., 108 F.R.D. 459, 461 (D.C. Utah 1985) ("any material

9  relating to the record holder's computer hardware, the programming techniques

10 employed in connection with the relevant data, the principles governing the structure

11 of the stored data, and the operation of the data processing system" subject to

12 discovery); Dunn v. Midwestern Indem., 88 F.R.D. 191, 195 (D.C. Ohio 1980)

13 (computer systems, programs and tapes were relevant and subject to discovery

14 where claimants sought relevant information that should be in the computers, or

15 information that should not be there but was).

16         Finally, any contention that Topic Nos. 1, 2 and 3 are unduly

17 burdensome is without merit.  They ask for specific information related to electronic

18 information about Bratz or Angel received, sent or generated by key players.

19 Furthermore, MGA already has been ordered to produce, but has not produced, an

20 IT person to testify about electronic information.  After MGA backtracked on

21 designating Lockhart for one Topic in the Second Notice (No. 40, retention policies

22 for digital information regarding Mattel), MGA stated that Lockhart or another

23 witness could testify about that Topic on another day, but not that day.[55]

---

[54]  Id. at 331:2-9.

[55]  Id. at 35:20-21.

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

07209/2164784.7

EXHIBIT ß
PAGE 31

### B.    <u>MGA's Prior Statements To The Press Related To Bratz.</u>

        MGA next contends that Topics 6, 7 and 8 are not proper for a 30(b)(6) deposition because Mattel can "only" ask Isaac Larian about these in his individual capacity. This is nothing short of bad faith. As shown above, first the Discovery Master and then Judge Larson rejected an identical argument with respect to prior sworn statements by MGA employees. In his order rejecting MGA's argument for the second time, Judge Larson emphasized the language of <u>Rule</u> 30(b)(6) stating that corporate witnesses are required to give testimony on matters *known or reasonably available* to the organization.[56]

        With respect to the present issue, there is no difference between prior inconsistent sworn statements and prior inconsistent statements related to MGA's moving target on who invented Bratz and when. Mattel's Topics identify three specific articles with such prior statements. MGA cannot make the straight-face argument that it has no information about public statements its Chief Executive Officer made in the course of his work for the company.[57] Indeed, under MGA's logic, a party could never attribute any statements of high corporate officers to a corporate party. This is, of course, an absurd proposition. <u>See</u>, <u>e.g</u>, <u>Tracinda Corp. v. DaimlerChrysler AG</u>, 362 F. Supp. 2d 487, 504 (D. Del. 2005) (prior out of court statements made by Chrysler's chief executive officer qualified as admissions of the corporation); <u>Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.</u>, 267 F. 3d 340, 358-359 (3d Cir. 2001) ("courts impute fraud of an officer to a

---

[56]   July 2, 2007 Minute Order, Zeller Dec., Exh. 22 at 4.

[57]   MGA claims that "MGA" did not make these statements as a corporate actor. Zeller Dec., Exh. 24 at 9-12. Of course "MGA" did not make the statements. Corporations themselves cannot speak, so its agents speak on their behalf. Given the titles of the articles at issue -- "To Really Be A Player, Mattel Needs Hotter Toys," "Bratz Packers Are What's Cool in Doll World," and "Immigrant's Creative Company Shakes Up Toy Industry" -- it is simply not credible that Larian spoke to the journalists on his personal behalf rather than as an agent of MGA.

1   corporation when officer commits fraud (1) in the course of his employment and (2)

2   for the benefit of the corporation.").

3           Finally, and underscoring the particularly frivolous nature of MGA's

4   objections to these Topics as "unsuitable" for a <u>Rule</u> 30(b)(6) deposition, *MGA* itself

5   sought, and has already obtained, <u>Rule</u> 30(b)(6) testimony from *Mattel* about

6   statements made to the press.  Topic No. 41 of Bryant's Notice to Mattel -- which

7   MGA has purported to rely on and even moved to compel on -- requested Mattel

8   testimony on "[a]ll statements of Mattel or ex-Mattel employees in the July 2003

9   *Wall Street Journal* article".[58]  If, as MGA has claimed, statements by Mattel's

10  employees and even persons who were not then-current Mattel employees to the

11  press are a fair subject of <u>Rule</u> 30(b)(6) examination, MGA scarcely can evade

12  discovery on its own prior statements to the press relating to even more fundamental

13  Bratz issues in this case.

14

15  **C.     <u>Persons Who Performed "Test Projects" For MGA.</u>**

16          Next, MGA claims that the term "test project" in Topic 9 is vague and

17  ambiguous, so they cannot answer it.  The most remarkable part about MGA's

18  excuse is that Carter Bryant and MGA, not Mattel, have long been using "test

19  project" to defend Bryant's working for MGA while he was still a Mattel employee.

20  Bryant himself introduced the concept at his deposition:

21      Q   (By Mr. Quinn)  At any time prior to the last day of your

22          employment at Mattel did you have any discussion with MGA

23          about any projects you might work on with them other than

24          Bratz?

25      A   I did sort of a *tryout kind of a project for them*.  It was

26          an angel project.  It was actually not my project.  It was

27  _____

[58]   Zeller Dec., Exh. 29 at 9:19-20.

28

-19-

EXHIBIT ____β____
PAGE ____33____

1    Veronica's project, and I did some face designs for them,

2    just some drawings, and I don't know if they used any of

3    them or not, but it was my -- excuse me, *my understanding*

4    *that this was kind of a test* to see how well I would do,

5    you know, with working with the team, working with

6    direction.[59]

7  Bryant later referred to the same "test project" concept when discussing his

8  employment with Mattel:

9    Q   How were things left at the conclusion of the second

10       meeting?  Was it -- did you have a job offer at that

11       point?  Did they say they would get back to you or

12       something else?

13   A   I think again they wanted me to come and meet with another

14       lady.  They wanted me to go do the *test assignment* and

15       then they wanted me to come back for an interview with

16       another woman.

17   Q   Tell me about the test assignment.  What was that?

18   A   They *wanted me to do a project* in which I would come up

19       with sort of a -- I forget what the project was called but

20       they wanted me to come up with some sort of superhero kind

21       of a look . . . .[60]

22

[59]   Bryant Depo. Tr., Zeller Dec., Exh. 27 at 178:3-18 (emphasis added).  Bryant

23   also used the similar term "trial project" to refer to the same concept--doing test

24   work prior to being considered for formal employment--in his Complaint for

     Declaratory Relief filed against Mattel on November 2, 2004.  Zeller Dec., Exh. 34

25   at 5, ¶ 25.

26   [60]   Id. at 515:19-516:7 (emphasis added).

27

28

1            MGA too has freely adopted the phrase "test project," including most

2 recently while deposing a Mattel 30(b)(6) witness just last month, in questioning

3 that had nothing to do with that witness's areas of designation:

4          Q.  Do you have any information about Mr. Bryant allegedly working

5          on a *test project* separate and apart from the work that he was doing for

6          Mattel during the time of his employment from Mattel?

7          MR. ZELLER:  The question is vague.

8          THE WITNESS:  When you say "do you have any information," can

9          you clarify what you mean by that?

10          BY MS. ANDERSON:

11          Q.  Do you know of any facts that relate to that?  Let me restate it so

12          it's clear.  Do you have any knowledge about Mr. Bryant allegedly

13          working on a *test project* separate and apart from the work that he did

14          for Mattel during the time of his employment with Mattel?

15          MR. ZELLER:  The question is still vague.

16          THE WITNESS:  Other than what -- the fact that the complaint was

17          brought up, that's all the knowledge that I have.[61]

18 MGA apparently did not think "test project" was so vague as to prevent questioning

19 that used the exact same phrase when it comes to Mattel's witnesses.  Obviously,

20 MGA understands exactly what the phrase means in the Third Notice.

21            Even if (contrary to fact) MGA had a legitimate ground to object to the

22 phrase as "vague," it is not a proper basis for refusing to designate and produce a

23 witness.  "Vague and ambiguous" objections should not be sustained if the

24 ambiguity could have been resolved through the meet and confer process.  <u>Beach v.</u>

25 <u>City of Olathe, Kans.</u>, 203 F.R.D. 489, 497 (D. Kan. 2001).  Mattel explained at the

---

26      [61]   Sandy Yonemoto Depo. Tr., Zeller Dec., Exh. 28 at 76:2-19 (emphasis

27 added).

28

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

EXHIBIT   β
PAGE   35

1   meet and confer not only that the term was that of Bryant and MGA's making, but

2   that Mattel was using it in the same way Bryant had explained it at his deposition --

3   namely, having an employment prospect create artwork as part of the job interview

4   process.  For its part, MGA did not attempt to resolve the supposed ambiguity

5   during meet and confer and instead insisted on stonewalling.  And, of course, their

6   designee could also ask for clarification of any terms used in questioning during

7   deposition as appropriate.

8            MGA further contends that the "1995 to the present" time frame of

9   Topic No. 9 is too broad.  Yet, MGA has given no basis for its assertion (which it

10  bears the burden of proof on) and has not proposed any alternative time period for

11  the Topic.  In addition, the purpose for the Topic is to obtain information that will

12  refute MGA and Bryant's assertions that Bryant's working for MGA while employed

13  by Mattel was no different than a supposedly standard industry practice of having

14  candidates for creative positions make artwork as part of the job interview.  The

15  Topic is thus not only plainly relevant, but the requested time period is congruent

16  with the time period that Bryant has been in the toy industry starting in 1995.  It thus

17  covers a sufficient period to avoid arguments by MGA and Bryant that this

18  purported practice was common and indeed to show in all likelihood that it does not

19  even exist.

20           Finally, on this issue, too, MGA's own discovery demands refute its

21  arguments here.  In December 2004, Bryant served Mattel with a Rule 30(b)(6)

22  notice that included two topics on Bryant's work for third parties while he worked

23  for Mattel "from 1995 to the present," and one topic about Mattel contracts with

24  employees "since January 1, 1995."[62]  MGA, since that time, has insisted that it has

25  "adopted" Bryant's Notice as its own and, in fact, has moved to compel on it.  In

26  _____

27  [62]  Notice of Deposition of Mattel, Inc., Zeller Dec., Exh. 29  at 4, 10 (Topics 6, 7, 50).

28

07209/2164784.7

-22-

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

EXHIBIT    _B_
PAGE    _36_

connection with a motion to compel brought by MGA and Bryant, the Discovery

Master ordered Mattel to designate witnesses for these topics covering the 1995 to

present time period without narrowing the relevant time period.[63]  Defendants' topics

relate to the same subject as Topic 9 here -- work Bryant did for the benefit of a

third party while working for Mattel.  MGA cannot take one position to obtain

discovery from Mattel, only to then take the exact opposite position to stonewall

Mattel's discovery.

### D.   MGA's Payments To Isaac Larian, Farhad Larian and Zarabi.

MGA refuses to designate a witness for Topics 11-13 because it

contends that payments MGA made to Isaac Larian, Farhad Larian and Morad

Zarabi are irrelevant.  Isaac Larian is, of course, a party in this litigation.  Farhad

Larian is Isaac's brother, and Morad Zarabi is the uncle of Isaac Larian and Farhad

Larian.  Zarabi was the arbitrator in a dispute between the Larian brothers, in which

Farhad claimed that Isaac concealed from him that MGA was developing Bratz by

early 2000.  That issue is, obviously, directly relevant to the issues in this case,

which at its core involve the timing of Bratz's creation, design and development.

MGA's refusals to provide testimony on these Topics fly in the face of the

Discovery Master's prior Orders on issues that the parties have already briefed and

argued at length.

The Discovery Master previously ruled that the Bratz-related

arbitration between the Larian brothers is relevant in this litigation, and he ordered

MGA to produce documents from the arbitration.[64]  Given the arbitration's

---

[63]   January 30, 2007 Order Granting In Part Carter Bryant and MGA
Entertainment, Inc.'s Motion to Compel The Production Of Documents And
30(b)(6) Depositions, Zeller Dec., Exh. 30.

[64]   May 15, 2007 Order Granting Mattel's Motion to Compel Production of
Documents and Interrogatory Responses By MGA, at 10-11, Zeller Dec., Exh. 31.

-23-

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

EXHIBIT _____ B

PAGE _____ 37

1  relevance, all three persons at issue here are witnesses in this litigation.  Of course,

2  payments from a party (MGA) to witnesses is admissible information, as it goes to

3  bias.  See United States v. Abel, 469 U.S. 45, 50-51 (1984); Wright & Miller,

4  Federal Practice & Procedure: Federal Rules of Evidence § 6095 (bias is a

5  "particularly favored basis for attacking credibility," and "circumstantial evidence of

6  bias" may include evidence of the "payment of bribes or fees").  Because evidence

7  tending to show bias or lack of credibility is admissible, it also is discoverable.

8  Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D.Cal. 1998) (Rule 26

9  permits discovery of information which may simply relate to the credibility of a

10  witness or other evidence in the case); Cable & Computer Technology, Inc. v.

11  Lockheed Saunders, Inc., 175 F.R.D. 646, 650 (C.D. Cal. 1997) (same).

12          With respect to Isaac Larian as a defendant, the Topics are also relevant

13  to his liability and to damages.  Again, the Discovery Master has already rejected

14  MGA's similar "relevance" objections regarding MGA's payments to Bryant.  The

15  Discovery Master ordered production of documents relating to such payments,

16  including royalty statements.  He stated that such payments are relevant to Mattel's

17  claims of breach of contract, breach of fiduciary duty, breach of duty of loyalty,

18  unjust enrichment, conversion, copyright infringement and trade secret

19  misappropriation.[65]  With respect to copyright infringement, the Discovery Master

20  noted that the Copyright Act entitles plaintiff to recover profits from infringement as

21  well as actual damages.[66]  With respect to trade secrets, the Discovery Master stated

22  that "[p]ayments could show when and what trade secret information Bryant *and*

23  *other defendants* allegedly misappropriated from Mattel."[67]  MGA's payments to

24  Larian (whether he calls them royalties or otherwise) are no different than payments

25

26  [65]  January 25, 2007 Order Granting Mattel's Motion To Compel Production of Documents, at 13-14, Zeller Dec., Exh. 32.

27  [66]  Id. at 14 (citing 17 U.S.C. 504(b)).

28

1   to Bryant here.  Mattel's claims against Larian include copyright infringement, trade

2   secret misappropriation, intentional interference with contract, aiding and abetting

3   Bryant's breach of fiduciary duty and duty of loyalty, and conversion.[68]

4           MGA's payments to Larian are also relevant and discoverable to

5   Mattel's prayer for punitive damages against him.  See, e.g., U.S. Equal

6   Employment Opportunity Comm'n v. Ian Schrager Hotels, Inc., 2000 WL 307470,

7   *4 (C.D. Cal. 2000) (information about a party's net worth "is relevant under Rule

8   26(b) to plaintiff's claims for damages and punitive damages.");  Oakes, 179 F.R.D.

9   at 286 (C.D. Cal. 1998) ("The discovery of financial information relevant to a

10  punitive damages claim is permissible under the Federal Rules of Civil Procedure,

11  whether or not such evidence would be admissible at trial.");  Britton v. Car Toys,

12  Inc., 2007 WL 1395290, at *3 (D. Colo. 2007) ("Evidence regarding a defendant's

13  earnings and assets may be relevant in proving punitive damages.").

14          Finally, MGA's payments to Larian are relevant impeachment

15  evidence.  For example, at the recent trial of another case, *Art Attacks v. MGA*, that

16  also involved Bratz, Mr. Larian claimed under oath that he made far less money than

17  one would expect for the majority owner of a purportedly multi-billion dollar

18  company since, Larian claimed, it was mostly ploughed back into the company.[69]

19  While this alone shows that Mattel's concern that Larian will try to avoid a

20  significant punitive damages award by pleading that he makes relatively little

21  money is far from hypothetical, MGA's payments to him also would tend to show

22  that Larian made misrepresentations about his financial condition under oath.  Such

---

[67]   Id. at 14 (emphasis added).
[68]   Mattel's Second Amended Answer In Case No. 05-2727 And Counterclaims, Zeller Dec., Exh. 33 at 53, 62, 66, 69, 71, 72.
[69]   Declaration of Tamar Buchakjian, dated July 19, 2007 and filed concurrently herewith, ¶ 3.

07209/2164784.7

-25-

1  evidence is unquestionably relevant and MGA should be ordered to provide a

2  witness to testify about it.

3

4  **II.   THE COURT SHOULD SANCTION MGA FOR ITS UNSUPPORTED**

5  **REFUSAL TO PRODUCE WITNESSES.**

6          There are at least two separate bases justifying sanctions on MGA here.

7  First, Rule 37(a)(4) of the Federal Rules of Civil Procedure states that a party forced

8  to bring a motion to compel is entitled to the "reasonable expenses incurred in

9  making the motion, including attorney's fees, unless the court finds that the motion

10  was filed without the movant's first making a good faith effort to obtain the

11  disclosure or discovery without court action, or that the opposing party's

12  nondisclosure, response or objection was substantially justified, or that other

13  circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(4).  The

14  burden of establishing substantial justification is on the party being sanctioned.

15  Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994).  Second, 28 U.S.C.

16  section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in

17  any case unreasonably and vexatiously may be required by the court to satisfy

18  personally the excess costs, expenses, and attorneys' fees reasonably incurred

19  because of such conduct."  Sanctions under this section are appropriate "for conduct

20  that, viewed objectively, manifests either intentional or reckless disregard of the

21  attorney's duties to the court." RTC v. Dabney, 73 F.3d 262, 265 (10th Cir. 1995),

22  citing Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987).

23          MGA's objections to Mattel's Topics in the Third Notice lack

24  reasonable justification.  On the Topics relating to (i) MGA's prior inconsistent

25  statements to the press relating to Bratz, (ii) MGA's payments to witnesses and

26  parties in this litigation and (iii) the 1995 time frame for issues relating to Bryant's

27  services for MGA while he was a Mattel employee, the Discovery Master and/or

28  Judge Larson already squarely rejected identical objections on similar discovery

07209/2164784.7

-26-

1  disputes.  Indeed, as shown above, some of the Topics MGA stonewalls on are

2  comparable to <u>Rule</u> 30(b)(6) sought and obtained from Mattel.  On the "test project"

3  Topic, it defies reason for a defendant to object to the phrase as vague even though

4  the defendant itself as recently as May 2007 used the phrase during one of its

5  30(b)(6) depositions of Mattel.  MGA's bad faith is also evidence from its refusal to

6  seek clarification of the term during meet and confer in order to resolve the issue.

7  Finally, with respect to storage devices, the Topics in the Third Notice are not only

8  different on their face from the ones MGA claims are the same in the Second

9  Notice, but Mattel attempted to ask Lockhart about the Topics in the Third Notice --

10  he was unable to provide information about them.

11          Mattel also respectfully submits that this request for sanctions should

12  be considered in the context of the disputes over the First Notice and Second Notice,

13  which have now spanned more than two years.  Clearly, the fact that Orders fom

14  both the Discovery Master and Judge Larson have rejected MGA's meritless

15  objections to Mattel's 30(b)(6) Notices and other discovery requests is not sufficient

16  deterrence to MGA's stonewalling on discovery by re-hashing the same objections.

17  As MGA made clear when it refused to withdraw the obviously-improper

18  instructions not to answer during a prior 30(b)(6) deposition, it has no intention of

19  voluntarily withdrawing meritless discovery obstructions "without an Order of the

20  Court."  Apparently, as the Discovery Master and the parties found out later, not

21  even a Court Order is sufficient.  In fact, in some instances, not even two Court

22  Orders.  Mattel therefore respectfully requests the Discovery Master order MGA to

23  reimburse Mattel for a portion of the fees it incurred in having to bring this motion,

24  in the amount of $5,135.00.[70]

---

[70]  Zeller Dec., ¶ 40.

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

EXHIBIT _D_
PAGE _41_

07209/2164784.7

1

2                                **Conclusion**

3          For the foregoing reasons, the Court should compel MGA to produce

4    witnesses to testify on Mattel's Third Notice, Topics 1-3, 6-8, 9 and 11-13, and

5    overrule all of MGA's objections and limitations.  Further, MGA should be

6    sanctioned for its needless delay and failure to produce witnesses without Court

7    intervention, despite prior rulings rejecting MGA's identical objections.

8

9    DATED:  July 13, 2007              QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
10

11                                      By  _Mima T. Z—_____
12                                          Michael T. Zeller
                                            Attorneys for Plaintiff and Cross-Defendant
13                                          Mattel, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

                            **EXHIBIT** β
                            **PAGE** 42

1    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5    Los Angeles, California 90017-2543
     Telephone:    (213) 443-3000
6    Facsimile:    (213) 443-3100

7    Attorneys for Mattel, Inc.

8

9                 UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

| | |
|---|---|
| 12   CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13          Plaintiff, | Consolidated with |
| 14     vs. | Case No. CV 04-9059<br>Case No. CV 05-2727 |
| 15   MATTEL, INC., a Delaware corporation, | **PROOF OF SERVICE** |
| 16       Defendant. | |
| 17 | |
|    AND CONSOLIDATED ACTIONS. | |
| 18 | |

19

20

21

22

23

24

25

26

27

28

**EXHIBIT**   B
**PAGE**   43

PROOF OF SERVICE

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026.

On July 19, 2007, I served true copies of the following documents described as

1. **MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO MATTEL'S THIRD NOTICE OF DEPOSITION UNDER RULE 30(B)(6) AND FOR SANCTIONS**

2. **DECLARATION OF MICHAEL T. ZELLER IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO MATTEL'S THIRD NOTICE OF DEPOSITION UNDER RULE 30(B)(6) AND FOR SANCTIONS**

3. **DECLARATION OF TAMAR BUCHAKJIAN IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO MATTEL'S THIRD NOTICE OF DEPOSITION UNDER RULE 30(B)(6) AND FOR SANCTIONS**

on the parties in this action as follows:

| | |
|---|---|
| Diana M. Torres, Esq.<br>O'Melveny & Myers<br>400 So. Hope Street<br>Los Angeles, CA 90071<br>Telephone: 213.430.6000<br>Facsimile: 213.430.6407 | **Attorneys for *MGA Entertainment*** |

[√] [PERSONAL] by personally delivering the document listed above to the person(s) at the address(es) set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made

Executed on July 19, 2007, at Los Angeles, California.

[signature]

Now Messenger DAVID QUINTANA

07209/2170979.1

EXHIBIT B
PAGE 44

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On July 19, 2007, I served true copies of the following document(s) described as

1.   **MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO MATTEL'S THIRD NOTICE OF DEPOSITION UNDER RULE 30(B)(6) AND FOR SANCTIONS**

2.   **DECLARATION OF MICHAEL T. ZELLER IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO MATTEL'S THIRD NOTICE OF DEPOSITION UNDER RULE 30(B)(6) AND FOR SANCTIONS**

3.   **DECLARATION OF TAMAR BUCHAKJIAN IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO MATTEL'S THIRD NOTICE OF DEPOSITION UNDER RULE 30(B)(6) AND FOR SANCTIONS**

on the parties in this action as follows:

Michael H. Page, Esq.                    **Attorneys for** *Carter Bryant*
Christa M. Anderson, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
Telephone: 415.391.5400
Fascimile:  415-397-7188

**BY FEDEX:** I deposited such document(s) in a box or other facility regularly maintained by FedEx, or delivered such document(s) to a courier or driver authorized by FedEx to receive documents, in sealed envelope(s) or package(s) designated by FedEx with delivery fees paid or provided for, addressed to the person(s) being served.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 19, 2007, at Los Angeles, California.

_____
Lorraine Robles

07209/2172402.1

**EXHIBIT** *0*
**PAGE** *45*