Case 2:04-cv-09049-DOC-RNB   Document 2119-2   Filed 02/12/08   Page 2 of 52   Page ID
#:92035
Case 2:04-cv-09049-SGL-RNB   Document 1089   Filed 10/15/2007   Page 1 of 6

# PRIORITY SEND

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Date: October 15, 2007

Case No.    CV 04-09049 SGL(RNBx)
Title:      CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS

=============================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

| Jim Holmes | Theresa Lanza |
|---|---|
| Courtroom Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR CARTER BRYANT:

Matthew M. Werdegar

ATTORNEYS PRESENT FOR MATTEL:

Jon D. Corey
B. Dylan Proctor
Michael T. Geller

ATTORNEYS PRESENT FOR MGA:

Scott H. Dunham
Marc Feinstein
Aman Khan
Thomas J. Nolan
Carl A. Roth

PROCEEDINGS:   **ORDER REGARDING STATUS CONFERENCE**

The Court held a status conference. The Court informed counsel that it had reviewed MGA's transition plan and had approved the proposed substitution of counsel.

As discussed, the Court enters what the parties have termed a "soft stay" until October 31, 2007. Specifically, all proceedings and discovery are STAYED during that time, including the October 23, 2007, discovery matter before Judge Infante; however, the parties shall continue to produce paper discovery and they may continue to serve discovery requests.

Pursuant to this stay, the Court continues the Motion to Strike Carlos Gustavo Machado

MINUTES FORM 90
CIVIL -- GEN



Initials of Deputy Clerk __jh__

00/30

EXHIBIT __C__
PAGE __46__

Gomez's Affirmative Defenses, set on this Court's calendar for October 22, 2007, to November 5, 2007, at 10:00 a.m. in Courtroom #1 of the above-referenced Court.

The Court sets a further status conference, on October 31, 2007, at 1:00 p.m., in Courtroom #1 of the above-referenced Court. Lead trial counsel and/or attorneys of record who can make commitments on behalf of lead trial counsel shall be present. The parties shall be prepared to address any issues related to the transition plan, whether the stay imposed by the Court should remain in place (and if so, for how long), and the selection of a settlement officer.

The parties are encouraged to assess whether the services of Ambassador Pierre-Richard Prosper as a settlement officer would be helpful to a resolution of the consolidated actions as discussed on the record. The Court will inquire as to whether any parties have any objection to Ambassador Prosper serving as the settlement officer herein, and will thereafter set a time frame for conducting settlement proceedings. For the parties' convenience, the resume of Ambassador Prosper is attached.

IT IS SO ORDERED.

c:     Judge Infante

MINUTES FORM 90
CIVIL -- GEN                                          2                    Initials of Deputy Clerk __jh_____

EXHIBIT ___C___
PAGE ___47___

### AMBASSADOR PIERRE-RICHARD PROSPER
PO Box 581103 Salt Lake City, UT 84158
prprosper@gmail.com

---

## EXPERIENCE

**COUNSEL**                                                                    1/07 – Present
*ARENT FOX*
*Government Relations/International Trade- Los Angeles/Washington D.C*
- Advises executives of Fortune 500 companies and assists clients in navigating and trouble-shooting complex political and regulatory landscapes of foreign markets.
- Opens foreign markets to clients, determines feasibility of trade relationships. and minimizes business and legal risk associated with entering new markets.
- Advises clients with their business ventures in the United States and with the federal government.

**U.S. AMBASSADOR-AT-LARGE**                                                    7/01 - 10/05
*U.S. DEPARTMENT OF STATE, Office of War Crimes Issues/Office of the Secretary of State*
- Formulated U.S. policy responses to atrocities, conflicts, and the War on Terror throughout the world: managed and coordinated the U.S. interagency and U.S. embassies on policy.
- Reported directly to U.S. Secretaries of State Powell and Rice; advised the President of the United States, Attorney General, Secretary of Defense, National Security Advisor. Chairman of the Joint Chiefs of Staff, Director of Central Intelligence, White House Counsel, and other senior U.S. officials.
- Was a chief negotiator in the post-September 11. 2001 War on Terror.
- Conducted diplomatic negotiations and consultations with heads of state, ministers, and senior government officials from over 60 different countries; engaged foreign parliaments and multilateral and international organizations.
- As the President's Special Envoy, traveled to approximately 40 countries throughout Africa, Asia, Europe, the Middle East. and South Asia.
- Frequently visited conflict zones in an effort to secure peace, stability and build the rule of law.
- Made regular international and domestic media appearances (print and broadcast media).

**SPECIAL COUNSEL AND POLICY ADVISER**                                          2/99-7/2001
*U.S. DEPARTMENT OF STATE, Office of War Crimes Issues/Office of the Secretary of State*
*(Detailed from the Department of Justice)*
- Developed policy and assisted in formulating the U.S. government response to serious violations of international humanitarian law committed in areas of conflict throughout the world.
- Traveled to affected areas in Europe, Africa and Asia to promote initiatives and build coalitions; engaged in negotiations in support of U.S. government positions.

**SPECIAL ASSISTANT TO THE ASSISTANT ATTORNEY GENERAL**                          1/99-2/99
*U.S. DEPARTMENT OF JUSTICE. Office of the Assistant Attorney General, Criminal Division*
- Assisted in the development of international justice initiatives.

EXHIBIT   C
PAGE   48

Case 2:04-cv-09049-DOC-RNB   Document 2119-2   Filed 02/12/08   Page 5 of 52   Page ID
#:32638
Case 2:04-cv-09049-SGL-RNB   Document 1089   Filed 10/15/2007   Page 4 of 6

Pierre-Richard Prosper
Page Two

TRIAL ATTORNEY/WAR CRIMES PROSECUTOR                                         5/96-10/98
*UNITED NATIONS, International Criminal Tribunal for Rwanda*
*Office of the Prosecutor*, Kigali, Rwanda / Arusha, Tanzania / The Hague, Netherlands
- As lead prosecutor, successfully prosecuted the world's first case of genocide; prosecuted crimes
  against humanity and war crimes committed in the territory of Rwanda in 1994.
- Traveled and supervised investigations throughout Africa, Europe, and North America.

SPECIAL LEGAL CONSULTANT                                                     4/95-5/95
*U S. GOVERNMENT MISSION IN RWANDA*, Kigali, Rwanda
- Assessed the post-war Rwandan justice system and Assisted in developing an action plan.
- Consulted and coordinated with Rwandan, United Nations, and donor country representatives.

ASSISTANT UNITED STATES ATTORNEY                                            8/94 - 5/96
*U S  DEPARTMENT OF JUSTICE/UNITED STATES ATTORNEY'S OFFICE,*
Narcotics Section, Central District of California
- Prosecuted and supervised investigations of major international and national narcotics cartels and
  offenders for complex narcotics conspiracy, distribution offenses, and money laundering schemes.

DEPUTY DISTRICT ATTORNEY                                                   12/89 - 7/94
*LOS ANGELES COUNTY DISTRICT ATTORNEY'S OFFICE*, Los Angeles, California
Bureau of Special Operations, *Hardcore Gang Division,*                      3/93-7/94
- Prosecuted gang-related homicides, special circumstance murder, murder, and manslaughter cases.

Bureau of Branch and Area Operations                                      12/89 - 2/93
*Compton Branch Office, Inglewood Area Office*
- Tried felony and misdemeanor jury trials involving murder, rape, kidnapping, theft, assault with a
  deadly weapon, narcotics, welfare fraud, and other offenses.

## OTHER

AMBASSADOR-IN-RESIDENCE – *Adjunct Professor*                               1/07-Present
*UNIVERSITY OF UTAH S.J. QUINNEY COLLEGE OF LAW*, Salt Lake City, UT

EXPERT                                                                     2/07-Present
*COMMITTEE ON THE ELIMINATION OF RACIAL DISCRIMINATION*, Geneva, Switzerland
- Monitor and report on the implementation of the Convention on the Elimination of All Forms of
  Racial Discrimination by State parties.

HEAD OF DELEGATION                                                        11/06 & 4/07
*INTERNATIONAL REPUBLICAN INSTITUTE ELECTION OBSERVATION MISSION TO NIGERIA*
- Led a team of 59 international observers in monitoring and issue findings on the 2007 Nigerian
  presidential and National Assembly elections.
- Met and consulted with candidates, political leaders, voters, and international observer missions.

CANDIDATE                                                                 10/05 – 03/06
*ATTORNEY GENERAL, State of California*
Ran a statewide exploratory campaign meeting with voters and business and political leaders.

EXHIBIT   C
PAGE   49

Pierre-Richard Prosper
Page Three

## AFFLILATIONS

Boston College Board of Trustees                                                1/04-present

## LANGUAGES

Fluent in French, proficient in Italian and Spanish.

## BAR

California Bar 1989; U.S. District, Central District of California 1989; U.S. Ninth Circuit Court
of Appeals 1994.

## EDUCATION

PEPPERDINE UNIVERSITY SCHOOL OF LAW, Malibu, California
Juris Doctor, May 1989
Honors and Activities:  Deans Honor List: Moot Court Board; President, Black Law Student Association

BOSTON COLLEGE, Chestnut Hill, Massachusetts
Bachelor of Arts, May 1985, College of Arts and Science
Major:  Romance Languages
Activities:  Varsity Lacrosse Team

EXHIBIT __C__
PAGE __50__

# NOTICE PARTY SERVICE LIST

Case No.   **CV 04-09049 SGL(RNBx)**   Case Title   Carter Bryant v. Mattel, Inc.

Title of Document   **Minute Order Issued October 15, 2007**

| | |
|---|---|
| Atty Sttlmnt Officer Panel Coordinator | US Attorneys Office - Civil Division -L.A. |
| BAP (Bankruptcy Appellate Panel) | US Attorneys Office - Civil Division - S.A. |
| Beck, Michael J (Clerk, MDL Panel) | US Attorneys Office - Criminal Division -L.A. |
| BOP (Bureau of Prisons) | US Attorneys Office - Criminal Division -S.A. |
| CA St Pub Defender (Calif. State PD) | US Bankruptcy Court |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | US Marshal Service - Los Angeles (USMLA) |
| Case Asgmt Admin (Case Assignment Administrator) | US Marshal Service - Riverside (USMED) |
| Catterson, Cathy (9ᵗʰ Circuit Court of Appeal) | US Marshal Service -Santa Ana (USMSA) |
| Chief Deputy Admin | US Probation Office (USPO) |
| Chief Deputy Ops | US Trustee's Office |
| Clerk of Court | Warden, San Quentin State Prison, CA |

| | |
|---|---|
| Death Penalty H/C (Law Clerks) | ✓   *ADD NEW NOTICE PARTY* (if sending by fax, mailing address must also be provided) |
| Dep In Chg E Div | |
| Dep In Chg So  Div | Name: Hon. Edward A. Infante (Ret.) |
| Federal Public Defender | Firm: |
| Fiscal Section | Address (include suite or floor): Two Embarcadero |
| Intake Section, Criminal LA | Center, Suite 1500, San Francisco, CA 94111 |
| Intake Section, Criminal SA | |
| Intake Supervisor, Civil | *E-mail: |
| PIA Clerk - Los Angeles (PIALA) | *Fax No.: |
| PIA Clerk - Riverside (PIAED) | * For CIVIL cases only |
| PIA Clerk - Santa Ana (PIASA) | *JUDGE / MAGISTRATE JUDGE* (list below): |
| PSA - Los Angeles (PSALA) | |
| PSA - Riverside (PSAED) | |
| PSA - Santa Ana (PSASA) | |
| Schnack, Randall (CJA Supervising Attorney) | |
| Statistics Clerk | Initials of Deputy Clerk _jh_ |

EXHIBIT ___C__
PAGE __51__

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

January 10, 2008

<u>VIA FACSIMILE AND U.S. MAIL</u>

Timothy Miller, Esq.
Skadden Arps, Slate, Meagher and Flom LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111

Re:   <u>Mattel v. Bryant</u>

Dear Tim:

I write to request a meet and confer pursuant to Section 5 of the Stipulation for Appointment of a Discovery Master and the Local Rules regarding MGA's objections and responses to Mattel's Supplemental Set of Interrogatories, which we received on November 19, 2007.

In its September 25, 2007 Order Granting in Part and Denying In Part Mattel's Motion to Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6), the Court granted Mattel leave to serve an interrogatory in lieu of taking a deposition on Topic No. 9. <u>See</u> September 25, 2007 Order at 12. MGA has not properly responded to Mattel's interrogatory, and its objections lack merit.

First, MGA objects on a variety of boilerplate grounds. These boilerplate objections all lack merit. MGA objects to the Interrogatory to the extent that it "seeks information that is not subject to the disclosure under any applicable privilege, doctrine or immunity, including without limitation the . . . the right of privacy." Federal law does not recognize a right to privacy that entitles a party to withhold relevant information. <u>See Humphreys v. Regents of Univ. of Cal.</u>, 2006 WL 335275, *1 (N.D. Cal. 2006) (under <u>Federal Rule of Evidence</u> 501, "federal law determines the evidentiary privileges that apply," and "there is no federal analog to the California privacy rights that [defendant] seeks to invoke"). "[C]ourts have frequently found that a party's need for information may outweigh whatever privacy rights, if any, another party may have." <u>Oakes v. Halvorsen Marine Ltd.</u>, 179 F.R.D. 281, 284 (C.D. Cal. 1998); <u>see Reyes v. Red Gold, Inc.</u> 2006 WL 2729412, at *3 (S.D. Tex. 2006).

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

EXHIBIT  <u>D</u>
PAGE  <u>52</u>

MGA next objects to the Interrogatory "in that it seeks information not relevant to the claims or defenses of any party to this action and not reasonably calculated to lead to the discovery of admissible evidence." However, as the Court explicitly held, the information sought by Mattel is clearly relevant. See Order at 10 ("Topic 9 seeks information relevant to one of MGA and Bryant's defenses.").

MGA's objection that this Interrogatory "appears to be directed at other parties to the litigation and not to MGA" is also wrong. Mattel is not aware of any basis for this objection, nor does MGA identify any. The interrogatory, on its face, is directed to MGA. All of MGA's other objections are similarly lacking in merit.

Second, MGA has answered a different interrogatory than that propounded by MGA. According to MGA, it need simply deny that it solicited Bryant to perform a TEST PROJECT to satisfy its obligations. However, the Court has already recognized that this topic seeks information that is relevant to a defense not only of MGA, but also of *Bryant* -- based on his deposition testimony that he performed a "tryout" or "test" project for MGA, and was not actually working for MGA when he worked for Mattel. Whether *MGA* now contends that Bryant performed a test project or not, Mattel is entitled to a complete answer to rebut Bryant's defense. Nor did the Court limit the interrogatory in the manner suggested by MGA.

Please advise whether MGA will provide a complete answer to Mattel's supplemental interrogatory without any improper limitations. Otherwise, Mattel anticipates filing a motion to enforce the Court's September 25, 2007 Order, to overrule MGA's objections and to compel a complete response, and may seek sanctions.

I look forward to hearing from you regarding your availability for a conference of counsel within the next five days.

Very truly yours,

B. Dylan Proctor

EXHIBIT  D
PAGE  53

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

**DATE:** January 10, 2008

**NUMBER OF PAGES, INCLUDING COVER: 3**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Timothy Miller, Esq.<br>Skadden Arps, et al | 415.984.6400 | 415.984.2698 |

**FROM:** B. Dylan Proctor
(213) 443-3112
dylanproctor@quinnemanuel.com

**RE:** Mattel v. Bryant

**MESSAGE:**

| CLIENT # | 07209 | ROUTE/<br>RETURN TO: | Laura Kinsey | ☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | Priscilla | | CONFIRMED? | ☐ NO ☐ YES: |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL

**EXHIBIT** 0
**PAGE** 54

(213) 443-3000 AS SOON AS POSSIBLE.

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE CENTRAL DISTRICT OF CALIFORNIA

3     MATTEL, INC., a Delaware Corporation,

4              Plaintiff,

5          vs.          NO. CV 04-9059 NM (RJBx)

6     CARTER BRYANT, an individual, and

      DOES 1 through 10, Inclusive.

7

             Defendants.

8     _____

      CARTER BRYANT, on behalf of himself,

9     all present and former employees of

      Mattel, Inc., and the general public.

10

             Cross-Complaint.

11

             vs.

12

      MATTEL, INC.,

13    a Delaware corporation.

14           Cross-Defendant.

      _____

15

16       CONFIDENTIAL - ATTORNEYS' EYES ONLY

17       DEPOSITION OF PAULA GARCIA

18          Friday, May 25, 2007

19          Los Angeles, California

20             VOLUME 2

21    Reported by:

      DAVID OCANAS

22    CSR No. 12567

23    JOB NO. 66420

24

25

MGA v. Mattel-OMM Depo Transcripts

EXHIBIT _E_
PAGE _55_

Page 300

1    Veronica Marlow, was the conversation you described

2    previously that you had with her in the lobby of

3    MGA?

4        A   Yes.

5        Q   Is it true that prior to that conversation

6    in the lobby there at MGA that Veronica Marlow had

7    never raised with you the prospect of MGA looking

8    at or considering Bryant's Bratz concepts or

9    artwork?

10       MS. TORRES:  Objection, vague, compound.

11       THE WITNESS:  Yes.

12   BY MR. ZELLER:

13       Q   And she had never mentioned Carter Bryant

14   to you before then; is that true?

15       A   True.

16       Q   Yesterday you had mentioned that you

17   received an e-mail from Carter Bryant with the

18   Prayer Angels attachment.

19       Do you recall that?

20       A   Yes.

21       Q   You mentioned that was prior to the

22   September 1st, 2000 meeting.

23       Do you remember that?

24       A   Yes.

25       Q   Did you have any contact with Carter

---

MGA v. Mattel-OMM Depo Transcripts        EXHIBIT  F        Page  317
                                          PAGE  56

1    Bryant in any way between the time of that first

2    e-mail that you received from him with the Prayer

3    Angels attachments and the September 1st, 2000

4    meeting?

5        A   No.

6        Q   So the next thing that happened in terms

7    of your contact with Carter Bryant after you

8    received the e-mail with the Prayer Angels

9    attachments was the September 1st, 2000 meeting

10   itself?

11       A   Correct.

12       Q   What was your understanding as to why

13   Carter Bryant was sending you the Prayer Angels

14   attachments, the attachments to that e-mail?

15       MS. TORRES:  Objection, asked and

16   answered.

17       THE WITNESS:  Carter Bryant -- let me

18   start over.

19       Veronica Marlow who was much involved in

20   the Prayer Angels concept and design with me,

21   realized that I had not arrived at I-designs for

22   Prayer Angels that I was content with.  And she had

23   recommended Carter be given a shot.

24   BY MR. ZELLER:

25       Q   It was your understanding it was work for

MGA v. Mattel-OMM Depo Transcripts                                Page 318



EXHIBIT  E
PAGE  57

1   that particular project; is that true?

2     A  Yes.

3     Q  It was to help move the ball forward on

4   the project and maybe come up with something that

5   would make the product better?

6     MS. TORRES:  Objection, vague.

7     THE WITNESS:  Make the product as I

8   expected it.

9   BY MR. ZELLER:

10     Q  More in line with your expectations?

11     A  Yes.

12     Q  Do you have, beyond what you have told me,

13   any other understanding as to why Carter Bryant was

14   sending you those Prayer Angels attachments?

15     MS. TORRES:  Objection, vague.

16     THE WITNESS:  No.

17   BY MR. ZELLER:

18     Q  What's your understanding as to how Carter

19   Bryant knew to send those -- that attachment to you

20   in particular?

21     A  I don't know for sure.

22     But I expect that Veronica Marlow told

23   him.

24     Q  Because I presume that prior to that time

25   you had never sent Carter Bryant an e-mail; is that

EXHIBIT _E_
PAGE _58_

1    correct?

2        A   That's correct.

3        Q   What was the -- did he send that e-mail

4    from a Mattel e-mail address?

5        A   I'd like to state to be clear that I'm not

6    sure now as I sit here in thinking whether that I

7    received those drawings in an e-mail, or if it was

8    actually possibly a fax.

9            I'm not sure.

10       Q   You do remember at some point receiving

11   these I-Drawings you had mentioned from Carter

12   Bryant that related to Prayer Angels?

13       A   Yes.

14       Q   You're just not sure if it was a fax to

15   you or an e-mail to you?

16       A   That's correct.

17       Q   So do you have an understanding, then, as

18   to how -- regardless of how he transmitted it,

19   Mr. Bryant understood or knew that he should send

20   it to you in particular?

21           MS. TORRES:  Objection, asked and

22   answered.

23           THE WITNESS:  Yes.

24   BY MR. ZELLER:

25       Q   If you could please tell me what that

Garcia, Paula - Vol. 2 (Confidential - AEO)  5/25/2007  9:56:00 AM

1    understanding is?

2       A   Again, I expect that a conversation took

3    place between Veronica and Carter where -- I don't

4    know for sure.

5          I can only expect that Veronica suggested

6    that he send them directly to me.

7       Q   Just to make sure this part of it is

8    clear, regardless of whether those Prayer Angels

9    materials that Mr. Bryant sent you were sent by

10   e-mail or by fax, that was the very first contact

11   you ever had with Carter Bryant directly of any

12   kind; is that correct?

13         MS. TORRES:  Objection, vague, asked and

14   answered.

15         THE WITNESS:  Yes.

16         MR. ZELLER:  Let's please mark as Exhibit

17   393 a two-page document bearing Bates numbers

18   Bryant 173, 174 consisting of some drawings.

19            (Deposition Exhibit 393,

20            Drawings, was marked.)

21   BY MR. ZELLER:

22      Q   Directing your attention to what we have

23   marked Exhibit 393, have you ever seen these

24   before?

25      A   Yes.

1      Q   What do you recognize them as?

2      A   I recognize them to be the drawings

3   submissions that Carter completed for the mentioned

4   project.

5      Q   In connection with Prayer Angels?

6      A   Yes.

7      Q   Were these materials in whole or in part

8   the drawings that were attached to that e-mail or

9   were part of that fax that you were talking about

10   Carter Bryant sending to you?

11      A   Yes, to the best of my memory.

12      Q   Is your memory that it was both of these

13   pages and all of the material that's depicted on

14   Exhibit 393, or was it something less?

15      MS. TORRES:  Objection, vague.

16      THE WITNESS:  I'm not sure if the hair

17   sketch drawing was included.  I don't remember it.

18      But it's possible that it was also

19   included.

20   BY MR. ZELLER:

21      Q   You are confident that the first page of

22   Exhibit 393 are the Prayer Angels drawings that

23   Carter Bryant sent to you; is that correct?

24      A   Yes.

25      MS. TORRES:  Objection, misstates the

MGA v. Mattel-OMM Depo Transcripts

EXHIBIT   _E_
PAGE   _61_

1           UNITED STATES DISTRICT COURT

2         CENTRAL DISTRICT OF CALIFORNIA

3             EASTERN DIVISION

4

5    CARTER BRYANT, AN INDIVIDUAL,)
                           ) CASE NO.
6         PLAINTIFF,   ) CV 04-9049 SGL (RNBX)
                           )
7    VS.            )
                           )
8    MATTEL, INC., A DELAWARE   )
     CORPORATION,          )
9                   )
          DEFENDANT.   )
10                  )
     _____)
11                  )
     AND CONSOLIDATED ACTIONS.   )
12   _____)

13

14

15

16       CONFIDENTIAL - ATTORNEYS' EYES ONLY

17

             VOLUME IV

18

19

20     VIDEOTAPED DEPOSITION OF PAULA GARCIA,

21   TAKEN ON BEHALF OF THE DEFENDANT, AT

22   865 SOUTH FIGUEROA STREET, TENTH FLOOR,

23   LOS ANGELES, CALIFORNIA, COMMENCING AT

24   10:22 A.M., WEDNESDAY, OCTOBER 10, 2007,

25   BEFORE J'ANA SIEGERS, CSR NUMBER 10845.

EXHIBIT  5
PAGE  62

1    CARTER BRYANT WITH A CREATIVE CHALLENGE, AS YOU'VE

2    REFERRED TO IT?

3         MS. TORRES:  OBJECTION.  VAGUE.

4         MR. ZELLER:  I'LL REPHRASE IT.

5    Q.  AT ANY TIME DURING THE YEAR 2000, DID YOU

6    PROVIDE CARTER BRYANT A CREATIVE CHALLENGE IN THE

7    SENSE OF ASKING HIM TO DO WORK ON A PROJECT OR

8    PROVIDE DESIGNS IN ORDER TO SEE WHAT HE COULD DO?

9    A.  NO.

10   Q.  AT ANY TIME HAVE YOU DONE THAT WITH CARTER

11   BRYANT?

12        MS. TORRES:  SAME OBJECTION.  VAGUE.

13        THE DEPONENT:  EVER?

14   BY MR. ZELLER:

15   Q.  RIGHT, EVER.

16   A.  YES.

17   Q.  AND WHEN DID YOU DO THAT?

18        MS. TORRES:  OBJECTION.  VAGUE.

19        THE DEPONENT:  I -- I DO IT FREQUENTLY.

20        MS. TORRES:  I THINK YOU'RE

21   MISUNDERSTANDING.

22        MR. ZELLER:  I MUST BE.

23        THE DEPONENT:  I'M SORRY.

24   BY MR. ZELLER:

25   Q.  LET'S BACK UP A STEP -- A SECOND.



EXHIBIT ___F___
PAGE 1-2

Case 2:04-cv-09049-DOC-RNB   Document 2119-2   Filed 02/12/08   Page 23 of 52   Page ID #:32696

Garcia, Paula - Vol. 4 (Confidential - AEO)  10/10/2007  10:22:00 AM

1       WE WERE TALKING ABOUT, AS PART OF

2    INTERVIEWING, AS TO WHETHER OR NOT --

3       A.  OH.

4       Q.  -- YOU EVER HAD DESIGNERS CREATE SOME

5    DESIGN WORK ON A PROJECT.  AT ONE POINT YOU REFERRED

6    TO THAT AS A CREATIVE CHALLENGE.

7       DO YOU REMEMBER THAT?

8       A.  YES.

9       Q.  SO I WAS USING IT IN THAT SENSE.

10       A.  OKAY.

11       Q.  SO LET ME -- LET ME BACK UP AND MAKE SURE

12    THAT I'M ON THE SAME PAGE.

13       AT ANY TIME DURING THE YEAR 2000, DID YOU

14    EVER ASK CARTER BRYANT TO DESIGN ANYTHING OR WORK ON

15    ANY PROJECT IN ORDER TO TEST HIS ABILITIES TO SEE

16    WHETHER OR NOT YOU OR OTHERS AT MGA WANTED TO WORK

17    WITH HIM?

18       A.  NO.

19       Q.  HAVE YOU EVER DONE THAT?

20       A.  NO.

21       Q.  HAVE YOU EVER DONE THAT -- OR EXCUSE ME.

22       ARE YOU AWARE OF ANYONE AT MGA EVER DOING

23    THAT WITH RESPECT TO CARTER BRYANT?

24       A.  NO.

25       Q.  WERE YOU INVOLVED IN THE INTERVIEWING

EXHIBIT __f__
PAGE 64

1    PROCESS FOR MERCEDEH WARD BACK IN 2000?

2       A.  NO.

3       Q.  DID YOU TALK TO HER BEFORE SHE WAS HIRED?

4          MS. TORRES:  OBJECTION.  VAGUE.

5          THE DEPONENT:  I DON'T BELIEVE SO, NO.

6    BY MR. ZELLER:

7       Q.  I DO APOLOGIZE IF I ASKED THIS BEFORE

8    BECAUSE MAYBE I'M GETTING CONFUSED.

9          WAS MERCEDEH WARD SOMEONE YOU KNEW PRIOR

10   TO THE TIME THAT SHE WAS HIRED BY MGA IN 2000 THE

11   FIRST TIME AROUND?

12      A.  NO.

13      Q.  DO YOU HAVE ANY KNOWLEDGE OR INFORMATION

14   AS TO HOW MGA CAME TO HIRE MERCEDEH WARD THAT FIRST

15   TIME AROUND IN 2000?

16         MS. TORRES:  I THINK THIS WAS ASKED AND

17   ANSWERED.

18         MR. ZELLER:  I KNOW THIS ONE WAS NOT.

19         MS. TORRES:  OKAY.  MAYBE ANOTHER

20   DEPOSITION.

21         GO AHEAD.  OBVIOUSLY, YOU CAN ANSWER

22   ANYWAY.

23         THE DEPONENT:  NO.

24   BY MR. ZELLER:

25      Q.  FOR THE RECORD, I'M GOING TO SHOW YOU A

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 090378)
     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                         EASTERN DIVISION

12  CARTER BRYANT, an individual,         CASE NO. CV 04-9049 SGL (RNBx)

13              Plaintiff,                 Consolidated with
                                           Case No. CV 04-09059
14        vs.                              Case No. CV 05-02727

15  MATTEL, INC., a Delaware              **DISCOVERY MATTER**
    corporation,
16                                        **[To Be Heard By Discovery Master**
              Defendant.                  **Hon. Edward Infante (Ret.) Pursuant**
17                                        **To The Court's Order of December 6,**
    _____       **2006]**
18
    AND CONSOLIDATED ACTIONS              MATTEL, INC.'S REPLY IN
19                                        SUPPORT OF MOTION TO COMPEL
                                          MGA TO PRODUCE WITNESSES
20                                        PURSUANT TO MATTEL'S THIRD
                                          NOTICE OF DEPOSITION UNDER
21                                        RULE 30(B)(6) AND FOR
                                          SANCTIONS
22
                                          [Supplemental Declaration of Michael
23                                        T. Zeller filed concurrently herewith]

24                                        Hearing Date:    TBA
                                          Time:            TBA
25                                        Place:           Telephonic

26                                        Discovery Cut-off: January 14, 2008
                                          Pre-trial Conference: April 7, 2008
27                                        Trial Date: April 29, 2008

28

07209/2185225.1

MATTEL'S REPLY I/S/O MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION

EXHIBIT  G
PAGE  66

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................... 3

I.     LEAVE OF COURT IS NOT REQUIRED TO OBTAIN
       DEPOSITIONS PURSUANT TO MATTEL'S THIRD 30(B)(6)
       NOTICE ........................................................................................................ 3

II.    MGA SHOULD BE COMPELLED TO PRODUCE A WITNESS ON
       PRIOR STATEMENTS TO THE PRESS RELATED TO BRATZ .............. 5

III.   MGA SHOULD BE COMPELLED TO PRODUCE A WITNESS ON
       STORAGE DEVICES MGA EMPLOYEES USED FOR DIGITAL
       INFORMATION RELATED TO BRATZ OR ANGEL ................................ 6

IV.    MGA SHOULD BE COMPELLED TO PRODUCE A WITNESS ON
       PERSONS WHO PERFORMED "TEST PROJECTS" FOR MGA ............... 9

V.     MGA SHOULD BE COMPELLED TO PRODUCE A WITNESS ON
       MGA'S PAYMENTS TO ISAAC LARIAN, FARHAD LARIAN AND
       MORAD ZARABI ...................................................................................... 11

CONCLUSION ...................................................................................................... 16

07209/2185225.1

MATTEL'S REPLY I/S/O MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION

EXHIBIT  6
PAGE  67

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

### **Cases**

4
Adams v. Murakami,
   54 Cal. 3d 105 (1991)...................................................................................... 15
5

Ameristar Jet Charter, Inc. v. Signal Composites, Inc.,
6
   244 F.3d 189 (1st Cir. 2001) ........................................................................ 4, 5

7
Beach v. City of Olathe, Kans.,
   203 F.R.D. 489 (D. Kan. 2001) ...................................................................... 10
8

Bendt v. G.D. Searle & Co.,
9
   1990 WL 299926 (D. Minn. 1990) ................................................................... 9

10
Caruso v. Coleman Co.,
   157 F.R.D. 344 (E.D. Pa. 1994) ..................................................................... 14
11

Chenoweth v. Schaaf,
12
   98 F.R.D. 587 (W.D. Pa. 1983) ..................................................................... 14

13
Ierardi v. Lorillard, Inc.,
   1991 WL 158911 (E.D. Pa. 1991) .................................................................... 9
14

15
Jack Frost Laboratories, Inc. v. Physicians & Nurses Mfg. Corp.,
   1994 WL 9690 (S.D.N.Y. 1994) ...................................................................... 4

16
Marker v. Union Fidelity Life Ins. Co.,
   125 F.R.D. 121 (M.D.N.C. 1989) .................................................................... 8
17

Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water Resources Authority,
18
   93 F.R.D. 62 (D.P.R. 1981) ............................................................................. 8

19
Morgan v. Woessner,
   997 F.2d 1244 (9th Cir. 1993) ........................................................................ 15
20

21
Oakes v. Halvorsen Marine Ltd.,
   179 F.R.D. 281 (C.D. Cal. 1998) .................................................................... 13

22
Quality Aero Tech., Inc. v. Telemetrie Elektronik,
   212 F.R.D. 313 (E.D.N.C. 2002)...................................................................... 4
23

24
Sanders v. Circle K Corp.,
   137 F.R.D. 292, Zeller Dec., Exh. 22 ............................................................... 6

25
United States v. Abel,
   469 U.S. 45 (1984) ......................................................................................... 13
26

27
Zamora v. D'Arrigo Brother Co. of Cal.,
   2006 WL 3227870 (N.D. Cal. 2006)................................................................. 5

28

07209/2185225.1

-ii-

**EXHIBIT** _6_
**PAGE** _68_

1

## **Statutes**

2 <u>Federal Rules of Civil Procedure</u>

3      <u>Rule</u> 26(b)(1) ................................................................................................. 7

4      <u>Rule</u> 26 ........................................................................................................ 13

5      <u>Rule</u> 26(a)(5) ................................................................................................. 8

6      <u>Rule</u> 26(d) ..................................................................................................... 8

7      <u>Rule</u> 30(a)(2)(B) ....................................................................................... 3, 4

8      <u>Rule</u> 30(b)(6) ................................................................... 3, 4, 5, 6, 8, 9, 14, 15

9      <u>Rule</u> 32(d)(1) ................................................................................................. 3

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S REPLY I/S/O MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION

EXHIBIT ___G___
PAGE ___69___

## **Preliminary Statement**

MGA's opposition underscores the extent of game-playing it is willing to engage in to avoid its discovery obligations.  First, MGA claims -- for the first time -- that the "one deposition: provision of Rule 30(a)(2)(B) allows it to evade producing any corporate designees in response to the Topics in Mattel's Third Notice of Deposition of MGA Entertainment, Inc. ("Third Notice") that are the subject of this Motion.  MGA did not raise this objection in its written responses to the Third Notice or at the parties' meet and confer, thus waiving the objection.  In fact, MGA agreed to produce witnesses on certain other Topics in the Third Notice, showing that even MGA recognizes that Rule 30(a)(2)(B) does not apply and that leave is not required.  MGA also never raised the objection in response to Mattel's Second Notice of Deposition, which both the Discovery Master and Judge Larson compelled MGA to produce witnesses in response to without leave of Court.  MGA has waived the right to raise the objection now.  It lacks merit in any case and is contrary to the language and purpose of Rule 30(b)(6).

Second, in refusing to produce a witness on prior statements to the press about the origins of Bratz, MGA repeats the same arguments that the Discovery Master and Judge Larson previously rejected.  In compelling MGA to produce a Rule 30(b)(6) witness on prior sworn statements related to Bratz, both the Discovery Master and Judge Larson overruled MGA's objection.  Yet, that is what MGA again attempts to rehash in arguing that Mattel can only depose the individuals who made the prior statements to the press at issue rather than an MGA Rule 30(b)(6) witness.  The analysis is the same now as it was then, and Mattel is entitled to a corporate witness from MGA about these statements.

Third, MGA refuses to produce a witness on the location of its employees' storage devices for digital information.  Under the Federal Rules, Mattel is clearly entitled to such information.  MGA claims that Mattel should be required

-1-

EXHIBIT ___G___
PAGE ___70___

1   to obtain this information from an interrogatory rather than a deposition.  The law is

2   settled that interrogatories are not a substitute for deposition testimony.  Moreover,

3   Mattel indeed did propound an interrogatory on a related issue -- the identity of

4   MGA's storage devices for electronic information regarding Bratz -- and,

5   predictably, MGA has flatly refused to answer it.  MGA is not interested in

6   providing Mattel information through the supposedly "appropriate discovery tool."

7   It simply seeks to hide the facts altogether.

8           Next, MGA refuses to produce a witness to identify persons who MGA

9   asked to perform "test projects" by playing word games to claim that it is Mattel and

10  not Bryant who first referenced the term.  MGA suggests that Bryant's testimony

11  that he performed a "kind of a project," "kind of a test" and "a test assignment"

12  demonstrates that Bryant did not refer to a "test project" because the words "test"

13  and "project" were not in close enough proximity in his testimony for MGA's taste.

14  This is nonsensical.  MGA knows exactly what information Mattel seeks.  It is in

15  fact supposed defense MGA and Bryant have raised to excuse Bryant's work with

16  MGA while he was employed by Mattel as supposedly being part of an industry-

17  standard interview process.  MGA should produce a witness.

18          Last, MGA refuses to produce a witness on payments made by MGA to

19  MGA's CEO Isaac Larian, his brother and former MGA executive Farhad Larian,

20  and Morad Zarabi.  The law is clear that payments by a party to a witness are

21  relevant to establish bias and are discoverable, and all three of these individuals are

22  witnesses.  In fact, evidence of payments to Farhad Larian would be directly

23  relevant to a matter at issue now.  In recent weeks, MGA has threatened to move to

24  disqualify Quinn Emanuel Urquhart Oliver & Hedges for allegedly improperly

25  meeting with Farhad Larian.  Evidence of MGA's payments to Farhad Larian would

26  be highly relevant to this issue.  Moreover, Isaac Larian is a party to this action

27  against whom Mattel seeks punitive damages.

28

-2-

EXHIBIT    6
PAGE    7

**Argument**

I.   **LEAVE OF COURT IS NOT REQUIRED TO OBTAIN DEPOSITIONS PURSUANT TO MATTEL'S THIRD 30(B)(6) NOTICE**

MGA argues that Rule 30(a)(2)(B) requires a party to seek leave of Court before a further 30(b)(6) deposition of a party may be noticed. MGA, however, (1) never raised that objection in its written response to the Third Notice; (2) did not claim during the parties' meet and confer that it was refusing to produce witnesses in response to the Third Notice on that ground; and (3) agreed to produce witnesses in response to six of the 16 Topics in the Third Notice.[1] MGA has waived any objection that leave of Court is required. See Fed. R. Civ. P. 32(d)(1) ("All errors and irregularities in the notice for taking deposition are waived unless written objection is promptly served upon the party giving the notice").

Moreover, MGA tellingly made no such argument in response to Mattel's Second Notice of Deposition of MGA ("Second Notice"), despite raising numerous other objections and improperly refusing to produce designees on nearly all forty-six topics.[2] The Discovery Master ultimately compelled MGA to produce witnesses in response to the Second Notice, and Judge Larson subsequently rejected MGA's appeal in its entirety.[3] MGA's claim now that leave is required whenever additional topics of information are sought from a corporate party is merely an afterthought, and one that even MGA recognizes is groundless.

---

[1] Supplemental Declaration of Michael T. Zeller ("Supp. Zeller Dec."), ¶ 2; MGA's Objections to Mattel's Third Notice of Deposition of MGA, dated June 29, 2007 attached as Exhibit 24 to the Declaration of Michael T. Zeller ("Zeller Dec."); Letter from Zeller to Jenal, dated July 6, 2007, Zeller Dec., Exh. 25.
[2] MGA's Objections to Mattel's Second Notice of Deposition of MGA, dated February 14, 2007, Zeller Dec. Exh. 17.
[3] Order of the Discovery Master Granting Mattel, Inc.'s Motion to Compel MGA to Produce Witnesses for Deposition Pursuant to Rule 30(b)(6), dated May 16, 2007, Zeller Dec., Exh. 20; Minute Order of the Hon. Stephen G. Larson, dated July 2, 2007, Zeller Dec., Exh. 22.

EXHIBIT __G__
PAGE __72__

1     In addition to being waived, MGA's argument that <u>Rule</u> 30(a)(2)(B)

2   should apply to <u>Rule</u> 30(b)(6) depositions is contrary to <u>Rule</u> 30(b)(6).  It ignores

3   the significant differences between the deposition of an individual and the

4   deposition of a corporation.  The court in <u>Quality Aero Tech., Inc. v. Telemetrie</u>

5   <u>Elektronik</u>, 212 F.R.D. 313, 319 (E.D.N.C. 2002), highlighted those differences in

6   holding that <u>Rule</u> 30(a)(2)(B)'s requirement to obtain leave of Court prior to

7   deposing a person for a second time does *not* apply to 30(b)(6) depositions.  The

8   Court cited the Advisory Committee Notes to the 1993 amendments to the Rules,

9   noting that "for purposes of calculating the number of depositions in a case, a

10  30(b)(6) deposition is separately counted as a single deposition, regardless of the

11  number of witnesses designated.  Further, there is no aspect of the Rules which

12  either restricts a party to a single 30(b)(6) deposition or restricts the allotted time for

13  taking a 30(b)(6) deposition."  <u>Id.</u>[4]

14     MGA's construction of the <u>Rules</u> here elevates form over substance in

15  another way.  There is no limit to the number of topics a 30(b)(6) notice may

16  contain, and a 30(b)(6) deposition counts as a single deposition regardless of the

17  number of witnesses designated.  Therefore, there is no question that, had Mattel

18  included all topics in its Third Notice in its first 30(b)(6) notice, leave of Court

19  would not be required, even according to MGA.  To require leave of Court merely

20  because the topics appeared in more than one notice would be improperly

21  formalistic, something the discovery rules seek to avoid.  <u>See</u> <u>Jack Frost</u>

22  <u>Laboratories, Inc. v. Physicians & Nurses Mfg. Corp.</u>, 1994 WL 9690, at *3 n.4

23  (S.D.N.Y. 1994) (elevating form over substance is contrary to policy of discovery

24  rules).

25  _____

26  [4]   The <u>Quality Aero Tech.</u> court directly addressed <u>Ameristar Jet Charter, Inc. v.</u> <u>Signal Composites, Inc.</u>, 244 F.3d 189 (1st Cir. 2001), on which MGA relies, finding the Court of Appeal's opinion in that case was a function of the deferential

27  standard of review of the District Court's decision "rather than an interpretation of the rule."  <u>Quality Aero Tech.</u>, 212 F.R.D. at 319.  The court concluded by stating

28  (footnote continued)

07209/2185225.1

MATTEL'S REPLY I/S/O MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION

EXHIBIT  G
PAGE  73

1      Finally, even if (contrary to law) leave were required, the Discovery

2   Master should treat Mattel's motion as a request for leave.  See Zamora v. D'Arrigo

3   Brother Co. of Cal., 2006 WL 3227870 (N.D. Cal. 2006) (treating motion to compel

4   second deposition as request for leave).  Leave should be granted here, if needed,

5   because Mattel's notice seeks clearly relevant, discoverable information, as

6   discussed below.

7

8   **II.    MGA SHOULD BE COMPELLED TO PRODUCE A WITNESS ON**

9        **PRIOR STATEMENTS TO THE PRESS RELATED TO BRATZ**

10      MGA argues that Mattel cannot depose MGA regarding prior

11   statements to the press related to Bratz because Mattel has already deposed Isaac

12   Larian in his individual capacity.  The Discovery Master should reject that

13   argument, as the Discovery Master and Judge Larson have before.  MGA does not

14   deny that the statements to the press at issue here were made by MGA personnel

15   acting in their corporate capacities.  It also does not deny the statements are relevant.

16   Given that, and the fact that MGA itself has sought and obtained Mattel testimony

17   on prior statements to the press, there is simply no reason to deny Mattel a corporate

18   witness on these statements.

19      When MGA resisted Mattel's prior sworn statements Rule 30(b)(6)

20   topic, it argued, as it does now, that Mattel should be required to depose each

21   individual who made a prior statement.  The Discovery Master and Judge Larson

22   both rejected that argument.[5]  As Judge Larson stated, "The purpose behind Rule

23   _____

24   that it "declines to read [Ameristar] for the proposition that leave of court is
     necessary every time a second 30(b)(6) deposition is sought."  Id.

25   [5]    Order of the Discovery Master Granting Mattel, Inc.'s Motion to Compel
     MGA to Produce Witnesses for Deposition Pursuant to Rule 30(b)(6), dated May

26   16, 2007, Zeller Dec., Exh. 20; Minute Order of the Hon. Stephen G. Larson, dated
     July 2, 2007, Zeller Dec., Exh. 22.

27

28

07209/2185225.1

**EXHIBIT   G
PAGE   74**

1  30(b)(6) is to create testimony that will bind the corporation."[6]  MGA's assertion

2  that Mattel has already deposed Mr. Larian about prior statements to the press thus

3  misses the point.  Mattel is not seeking to depose Mr. Larian on the subject.  It is

4  seeking to depose MGA to obtain the corporation's knowledge and to bind the

5  corporation, including to avoid being sandbagged by MGA at trial.  MGA may

6  designate any individual with knowledge of the prior statements as its corporate

7  witness; whether that is Mr. Larian or someone else.  But, whoever it is, Mattel is

8  entitled to a 30(b)(6) witness on these prior statements, and MGA should be

9  compelled to produce a designee(s) on these Topics.

10

11  **III.   MGA SHOULD BE COMPELLED TO PRODUCE A WITNESS ON**

12  **STORAGE DEVICES MGA EMPLOYEES USED FOR DIGITAL**

13  **INFORMATION RELATED TO BRATZ OR ANGEL**

14              Topic No. 1 seeks information regarding the location and disposition of

15  computer hard drives or other storage devices that contain or contained documents

16  related to the Bratz or Angel products used by specified MGA employees or

17  contractors.  Topic Nos. 2 and 3 seek additional information related to the hard

18  drives or storage devices identified in Topic No. 1.[7]  MGA refuses to produce a

19  witness on these Topics, claiming that requiring it "to gather information about

20  where the documents another [sic] other information is stored, when [Mattel] has

21  already demanded and received the documents stored in those computers, is

22  pointless."[8]  MGA's argument is flatly contrary to the <u>Rules</u> and misses the point.

23  _____

24  [6]   Minute Order of the Hon. Stephen G. Larson, dated July 2, 2007, p. 4 (quoting <u>Sanders v. Circle K Corp.</u>, 137 F.R.D. 292, 294 (D. Ariz. 1991)), Zeller Dec., Exh. 22.

25  [7]   Topic No. 2 seeks the identification and location of any backup, copy or image of the hard drives or storage devices identified in Topic No. 1.  Topic No. 3 seeks

26  information regarding MGA's search for and production of documents and digital information from the hard drives and storage devices referenced in Topic No. 1.

27  [8]   MGA's Opposition to Mattel's Motion to Compel MGA to Produce Witnesses Pursuant to Mattel's Third Notice of Deposition Under Rule 30(b)(6) ("MGA's

28  Opposition"), p. 8.

-6-
MATTEL'S REPLY I/S/O MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION

EXHIBIT ___G___
PAGE ___75___

1    Under the express terms of the <u>Federal Rules</u>, Mattel is entitled to
2 information about the existence, nature, custody and location of any documents it
3 seeks in discovery: "Parties may obtain discovery regarding any matter, not
4 privileged, that is relevant to the claim or defense of any party, including *the*
5 *existence*, description, *nature, custody*, condition, and *location of any* books,
6 *documents, or other tangible things. . . .*" <u>Fed. R. Civ. P.</u> 26(b)(1) (emphasis
7 added). The existence, nature, custody and location of documents is not "pointless"
8 simply because MGA claims they have already been produced. Rather, these factual
9 matters -- which are explicitly deemed discoverable under the <u>Rules</u> -- are relevant
10 so that Mattel can, among other things, assess MGA's production, including whether
11 any documents requested by Mattel or compelled by the Court were destroyed, not
12 collected or otherwise made unavailable to Mattel.

13    This is especially important in this case. As the Court knows, MGA
14 has repeatedly obstructed discovery, and the Court itself has expressed serious
15 concerns about MGA's apparent spoliation of evidence.[9] Bryant too long withheld
16 critical evidence from Mattel. As an example, the Court ordered Bryant to produce
17 the hard drive of his computer.[10] When Bryant finally produced it (months after the
18 Court-ordered deadline), examination of the image of Bryant's hard drive revealed
19 that it had a program called "Evidence Eliminator" installed on it.[11] This is so even
20 though Bryant's counsel, in opposing Mattel's motions to compel Bryant's hard
21 drive, represented to Judge Block and to the Discovery Master that defendants had
22

---

23 [9]    Order Denying Appointment of Expert Witness, dated August 11, 2006, p. 11
("That there are serious questions concerning the handling of these critical
24 documents certainly causes the Court much concern about whether the truth seeking
functions of the adversarial system have been fundamentally compromised in this
25 case."), Supp. Zeller Dec., Exh. 1.
    [10]    January 25, 2007 Order of the Discovery Master Granting Mattel's Motion to
26 Compel Production of Documents, Zeller Dec., Exh. 32.
    [11]    Declaration of Michael T. Zeller in Support of Motion of Plaintiff Mattel, Inc.
27 for Additional Time and/or to Reopen the Deposition of Carter Bryant for all
Purposes and to Overrule Additional Instructions not to Answer at the Deposition,
28 dated August 1, 2007, ¶ 17 attached as Exhibit 1 to the Notice of Lodging submitted
herewith ("Notice of Lodging").

-7-
MATTEL'S REPLY I/S/O MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION

EXHIBIT    G
PAGE    76

1  reviewed the hard drive of Bryant's computer, but located no "relevant" or

2  "responsive" documents.[12]

3          MGA further argues that the computer storage information Mattel seeks

4  is more properly obtained through the use of interrogatories. But MGA has no

5  intention of responding to any interrogatories on the subject either. In fact, MGA

6  has wholly refused to answer an interrogatory that sought the identification of hard

7  drives and storage devices that contained information about Bratz.[13]

8          Even more importantly, MGA's attempt to relegate Mattel to a method of

9  discovery that would block cross-examination is legally frivolous. The Rules make

10 clear that the various methods of discovery provided therein are cumulative, as opposed

11 to alternative or mutually exclusive. Rule 26(d) provides that "methods of discovery

12 may be used in any sequence," and Rule 26(a)(5) states that a party "may obtain

13 discovery by one or more" of the available methods specified in the efficient discovery

14 of facts. Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water Resources Authority, 93

15 F.R.D. 62, 65 (D.P.R. 1981) (citing Advisory Committee Note to Rule 30(b)(6)).

16 Courts also have repeatedly rejected the argument that interrogatories are an adequate

17 substitute for deposition testimony. "Nothing in the Federal Rules of Civil Procedure

18 gives a party the right to not respond or inadequately respond to a Rule 30(b)(6)

19 deposition notice...and elect to supply the answers in a written response to an

20 interrogatory. An attempt to so limit a Rule 30(b)(6) deposition is not warranted.

21 Because of its nature, the deposition process provides a means to obtain more complete

22 information and is, therefore, favored." Marker v. Union Fidelity Life Ins. Co., 125

23 _____

24 [12]  Declaration of Michael T. Zeller in Support of Motion of Plaintiff Mattel, Inc. for Additional Time and/or to Reopen the Deposition of Carter Bryant for all Purposes and to Overrule Additional Instructions not to Answer at the Deposition,

25 dated August 1, 2007, ¶ 15, Notice of Lodging, Exh. 1.

26 [13]  MGA's Objections and Responses to Mattel's Third Set of Interrogatories, dated July 9, 2007 ("Interrogatory No. 25: IDENTIFY each and every STORAGE

27 DEVICE that YOU have used for any purpose which contains or contained DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or

28 ANGEL prior to January 1, 2002"), Supp. Zeller Dec., Exh. 2.

07209/2185225.1

MATTEL'S REPLY I/S/O MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION

EXHIBIT    G
PAGE    77

1   F.R.D. 121, 126 (M.D.N.C. 1989).  See also Ierardi v. Lorillard, Inc., 1991 WL 158911,

2   at *2 (E.D. Pa. 1991) (answers to interrogatories "are an inadequate substitute" for

3   deposition testimony pursuant to Rule 30(b)(6)); Bendt v. G.D. Searle & Co., 1990 WL

4   299926, at *1 (D. Minn. 1990) ("Interrogatories are not substitutes for depositions, and

5   are not per se more efficient or economical.").

6          Finally, MGA's claim that Kenneth Lockhart already testified about

7   these Topics is simply incorrect.  Mr. Lockhart's testimony on the point, quoted at

8   length in Mattel's Motion, makes clear that he had no knowledge regarding the

9   locations of the hard drives used by the individuals identified in Topic No. 1 and he

10  could not meaningfully discuss the disposition of those hard drives.[14]  Similarly, he

11  was unprepared to testify regarding the location of backup, copy or images of those

12  hard drives (as requested in Topic No. 2) or MGA's efforts to search for and produce

13  documents and digital information from the hard drives (as requested in Topic No.

14  3).[15]  Mattel is entitled to a Rule 30(b)(6) witness on Topic Nos. 1-3.

15

16  IV.    **MGA SHOULD BE COMPELLED TO PRODUCE A WITNESS ON**

17         **PERSONS WHO PERFORMED "TEST PROJECTS" FOR MGA**

18          MGA refuses to produce a witness in response to Topic 9, arguing that

19  Mattel's request for the identification of persons who have done "test projects" for

20  MGA is vague, irrelevant and overbroad.  MGA's objections lack merit.

21          MGA quibbles that Mattel, not MGA or Bryant, first referred to the

22  term "test projects."  MGA acknowledges, however, that Bryant testified that he did

23  work for MGA while he was a Mattel employee as a supposed "tryout kind of a

24  project," "kind of a test" and "a test assignment."[16]  That is what Mattel is referring

25  ─────────────

26  [14]  Mattel's Notice of Motion and Motion to Compel MGA to Produce Witnesses
    Pursuant to Mattel's Third Notice of Deposition Under Rule 30(b)(6), pp. 13-16.

27  [15]  Id.

    [16]  MGA's Opposition, pp. 9-10.

28

EXHIBIT   G
PAGE   78

1   to here, as MGA knows.[17]  In any case, even if MGA did have a legitimate ground

2   to object to the phrase as "vague," it is not a proper basis for refusing to designate

3   and produce a witness, particularly given that Mattel informed MGA during the

4   meet and confer that this was what was meant by "test project."  <u>See</u> <u>Beach v. City</u>

5   <u>of Olathe, Kans.</u>, 203 F.R.D. 489, 497 (D. Kan. 2001) (vague and ambiguous

6   objections should not be sustained if the ambiguity could be resolved through meet

7   and confer).

8          MGA's argument that Topic 9 is irrelevant and overbroad similarly

9   lacks merit.  MGA and Bryant have raised the issue in their own defense, claiming

10  that Bryant's work for MGA while employed by Mattel was no different than a

11  supposedly standard industry practice of having candidates for creative positions

12  make artwork as part of the job interview.  Whether *MGA* engaged in this

13  supposedly standard industry practice during the period starting in 1995 that Bryant

14  has been in the industry is plainly relevant.  Mattel also is entitled to know whether

15  MGA was engaged in the claimed industry practice both before and after it claims it

16  utilized the practice in "interviewing" (and paying) Bryant.  Moreover, Bryant has

17  made discovery demands -- demands that MGA has adopted as its own -- regarding

18  Mattel's employment contracts "from 1995 to the present," and the Court agreed that

19  Mattel was required to produce a witness knowledgeable on that time period.[18]  The

20  result should be the same here.

---

21  [17]  In connection with MGA's use of the phrase, MGA asserts that MGA's
22  counsel was quoting from Mattel's interrogatory responses when questioning a
    Mattel witness about "test projects" and accuses Mattel of misleading the Court.
23  MGA is the one that attempts to mislead the Court.  The Mattel interrogatory
    response at issue refers to *what Bryant characterized* as a 'test project' to aid and
24  assist MGA." (MGA's Opposition, p. 10).  Mattel certainly did not come up with the
    novel idea that Bryant's work for MGA while employed by Mattel was just some
25  innocuous test project, and MGA's effort to suggest otherwise is nonsensical.
26  [18]  Notice of Deposition of Mattel, Inc., pp. 4-10 (Topics 6, 7, 50), Zeller Dec.,
    Exh. 29; January 30, 2007 Order Granting in Part Carter Bryant and MGA
27  Entertainment, Inc.'s Motion to Compel the Production of Documents and 30(b)(6)
    Depositions, Zeller Dec., Exh. 30.

28

07209/2185225.1

-10-

1    Finally, MGA again makes the disingenuous argument that Mattel

2  should seek this information through an interrogatory request to Bryant.  Not only

3  are interrogatories not a proper substitute for deposition testimony, as shown above,

4  but Mattel also is entitled to *MGA's* corporate testimony, as also shown above.  This

5  is especially so since Bryant is likely to claim that he has no idea what MGA's

6  practices on this subject have been and indeed Bryant stated in his testimony that he

7  had never even heard of MGA prior to July 2000.[19]  And, for good measure, Bryant

8  has joined in MGA's motion seeking to prohibit Mattel from propounding further

9  interrogatories, thus again confirming that MGA's touting of "alternative" discovery

10  methods is really an argument that MGA should not have to provide plainly relevant

11  discovery at all.

12

13  **V.    <u>MGA SHOULD BE COMPELLED TO PRODUCE A WITNESS ON</u>**

14  **<u>MGA'S PAYMENTS TO ISAAC LARIAN, FARHAD LARIAN AND</u>**

15  **<u>MORAD ZARABI</u>**

16    MGA argues that payments made by MGA to Isaac Larian, Farhad

17  (Fred) Larian and Morad Zarabi are not relevant because they "have nothing to do

18  with this lawsuit."  That is false and was previously rejected by the Discovery

19  Master.

20    Mr. Zarabi arbitrated a dispute between Isaac Larian and Farhad Larian

21  that involved the timing of the creation of Bratz.[20]  Farhad Larian filed a complaint

22  in Superior Court regarding his dispute with Isaac Larian and the parties' arbitration

23  before Mr. Zarabi.[21]  The complaint details Farhad Larian's claim that Isaac Larian

24  concealed from him MGA's development with Carter Bryant of Bratz dolls and

---

[19]  Bryant Deposition Transcript, at 5:10 - 5:17, Supp. Zeller Dec., Exh. 3.

[20]  Verified Complaint filed in Superior Court of the State of California on August 25, 2003 (Case No. BC301371) ("Larian Compaint"), ¶¶ 20-25, Supp. Zeller Dec., Exh. 4.

[21]  Larian Complaint, Supp. Zeller Dec., Exh. 4.

07209/2185225.1

-11-

MATTEL'S REPLY I/S/O MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION

EXHIBIT ___G___
PAGE ___80___

1  alleged that Bryant began working with MGA during a time Bryant was employed

2  by Mattel and indeed months before MGA and Bryant have claimed they were first

3  introduced to one another in August 2000:[22]

4         13.   Plaintiff [Farhad Larian] is informed an believes

5  that in or about late 1999 and early 2000, Isaac became aware of

6  a potential new product line that had tremendous potential for

7  the Company [MGA].  The new product line involved the

8  "Bratz" dolls and related products. . . .

9      . . .

10         15.   In or about early 2000, Isaac called a meeting to

11  discuss the new Bratz product line with selected individuals in

12  the Company.  Plaintiff is informed and believes that those

13  present at the meeting spoke enthusiastically of the tremendous

14  opportunity the Bratz line presented for the Company as, *inter*

15  *alia*, it captured a vacant market niche.  Fred was not present for

16  this meeting.  Upon information and belief, Isaac took steps to

17  conceal the results of the meeting from Fred.

18         16.   Also in or about February 2000, Isaac tried to

19  dissuade Fred from attending the New York Toy Fair, even

20  though Fred had routinely and regularly attended such toy fairs

21  in the past. . . .  Plaintiff was expelled from meetings he tried to

22  attend and was excluded from any discussions Isaac may have

23  had relating to the Bratz line of products at the fair.

24         17.   In early March 2000, while continuing to conceal

25  from Fred the Company's plans for the Bratz line, Isaac offered

26

27  [22] Bryant Deposition Transcript, at 9:25 - 10:12, Supp. Zeller Dec., Exh. 3.

28

07209/2185225.1

EXHIBIT  G
PAGE  81

1    to purchase all of Plaintiff's 45 percent interest in the Company

2    for $9 million. . . .[23]

3         The Larian brothers' arbitration involved issues of the timing of the

4    creation and development of Bratz. That is at the heart of the claims in this case, as

5    the Discovery Master has recognized.[24]  Indeed, the Discovery Master has already

6    ruled that the Bratz-related arbitration between the Larian brothers in particular is

7    relevant in this litigation.[25]  And, even beyond this, the issues relating to MGA's and

8    Isaac Larian's concealment of Bratz are relevant to a host of other matters in this

9    case, including to defendants' own statute of limitations defense and to impeachment

10   of defendants' claims as to when they first began working together and when Bratz

11   was developed.  MGA's assertion that Farhad Larian and Mr. Zarabi are "not

12   witnesses in this action" is absurd -- they clearly are.  And Isaac Larian is not only a

13   witness, he is a party.

14         As the Court has ruled, evidence of payments from a party to a witness

15   is discoverable information that goes to bias.[26]  See also United States v. Abel, 469

16   U.S. 45, 50-51 (1984); Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D.

17   Cal. 1998) (Rule 26 permits discovery of information which may simply relate to

18   the credibility of a witness or other evidence in a case).  For that reason alone MGA

19   should be compelled to produce a designee on payments made by MGA to the

20   Larian brothers and Mr. Zarabi.[27]

21   _____

22   [23]  Larian Complaint, ¶¶ 13, 15, Supp. Zeller Dec., Exh. 4.
     [24]  Order Granting Mattel's Motion to Enforce Stipulation to Make Original
23   Documents Available, p. 2, Supp. Zeller Dec., Exh. 5.
     [25]  May 15, 2007 Order Granting Mattel's Motion to Compel Production of
24   Documents and Interrogatory Responses by MGA, pp. 10-11, Zeller Dec., Exh. 31.
     [26]  May 15, 2007 Order of the Discovery Master Granting Mattel's Motion to
25   Compel Production of Documents and Interrogatory Responses by MGA, p. 10,
     Zeller Dec., Exh. 31.
26   [27]  MGA's argument that Mattel is not entitled to the detailed financial records of
     non-party witnesses is a red herring.  That is not what Mattel seeks.  Mattel merely
27   seeks payments made by MGA -- a party in this action -- to Farhad Larian and Mr.
     Zarabi, not their entire financial records.

28

07209/2185225.1

-13-

EXHIBIT  G
PAGE  82

1    Payments made by MGA to Isaac Larian are also relevant to Mattel's

2  claim for punitive damages against Mr. Larian and as impeachment evidence against

3  him.  As Mattel notes in its Motion, payments MGA has made to Mr. Larian are

4  relevant to Mattel's prayer for punitive damages against him.  MGA's claim that

5  Mattel must first make a threshold showing before being permitted to proceed with

6  discovery regarding Mr. Larian's financial condition flies in the face of the Orders of

7  the Discovery Master and Judge Larson in this case.  Both the Discovery Master and

8  Judge Larson already have ordered MGA to produce a witness on MGA's own "net

9  worth."[28]  Payments made to Mr. Larian are relevant and discoverable for the same

10  reason -- Mattel seeks punitive damages against Mr. Larian.  Having litigated and

11  lost its prior refusals to produce punitive damages evidence, MGA should not be

12  heard to rely on its latest excuse for refusing to produce other evidence going to this

13  same, clearly relevant subject.

14    MGA relies on Chenoweth v. Schaaf, 98 F.R.D. 587, 590 (W.D. Pa.

15  1983), in support of its claim that Mattel must first make a threshold showing before

16  obtaining discovery regarding punitive damages.  That case has been roundly

17  criticized, including by courts in its own Circuit.  See Caruso v. Coleman Co., 157

18  F.R.D. 344, 348-49 (E.D. Pa. 1994) (rejecting the holding in Chenoweth and noting

19  that no court within the Third Circuit had followed the Chenoweth decision and

20  courts in other Circuits had criticized the holding).  "The law is well settled that

21  information regarding damages is as discoverable as information which pertains to

22  liability."  Id. at 348 (citations omitted).

23    Mattel's need for information related to Mr. Larian's finances is

24  particularly great here.  Under California law, Mattel is required to introduce

25  evidence of Larian's financial condition to obtain an award of punitive damages

26  _____

27  [28]   Order of the Discovery Master Granting Mattel, Inc.'s Motion to Compel
   MGA to Produce Witnesses for Deposition Pursuant to Rule 30(b)(6), dated May
   16, 2007, Zeller Dec., Exh. 20; Minute Order of the Hon. Stephen G. Larson, dated

28  July 2, 2007, Zeller Dec., Exh. 22.

EXHIBIT    G
PAGE    83

1    against him.  Morgan v. Woessner, 997 F.2d 1244, 1259 (9th Cir. 1993) (citing

2    Adams v. Murakami, 54 Cal. 3d 105 (1991)).  Payment made by MGA to Mr.

3    Larian are relevant to his financial condition.

4           MGA makes no effort in its opposition to address the fact that

5    testimony regarding payments made to Isaac Larian are independently relevant and

6    discoverable for the purposes of impeachment.  Mr. Larian testified in *Art Attacks v.*

7    *MGA* (a case that also involved Bratz) that he made far less money than one would

8    expect for the majority owner of a purportedly multi-billion dollar company.  Mattel

9    is entitled to information regarding MGA's payments to Mr. Larian to show that he

10   made misrepresentations under oath about his financial condition.

11          Finally, with respect to payments to Isaac Larian, MGA repeats its

12   argument that because Mr. Larian was deposed in his individual capacity and asked

13   questions regarding payments he received from MGA, Mattel is somehow barred

14   from asking MGA about such payments.  This fails for the same reasons discussed

15   above and indeed for the reasons already found by the Discovery Master and Judge

16   Larson.  Mattel is entitled to *MGA's* corporate testimony and, in any event, Mr.

17   Larian, if deposed as an individual, can conveniently deny knowledge of payments

18   made by MGA to deprive Mattel of evidence it needs to obtain punitive damages.

19   An MGA corporate witness, in stark contrast, would be required to testify as to the

20   knowledge in the corporation's possession or reasonably available to it.  The

21   deposition of Mr. Larian in his personal capacity is no substitute for an MGA Rule

22   30(b)(6) witness.

23

24

25

26

27

28

07209/2185225.1

EXHIBIT __G__
PAGE __84__

## Conclusion

For the foregoing reasons, the Court should compel MGA to produce witnesses to testify on Mattel's Third Notice, Topics 1-3, 6-8, 9 and 11-13, and overrule all of MGA's objections and limitations.  Further, MGA should be sanctioned.


DATED:  August 6, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By _Michael T. Zeller /ass_
Michael T. Zeller
Attorneys for Plaintiff and Cross-Defendant
Mattel, Inc.

07209/2185225.1

MATTEL'S REPLY I/S/O MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION

EXHIBIT 6
PAGE 85

0497

<pre>
1                        CONFIDENTIAL
2
3
4              IN THE UNITED STATES DISTRICT COURT
               FOR THE CENTRAL DISTRICT OF CALIFORNIA
5
6
      MATTEL, INC., a Delaware corporation, )  CASE NO.
7                             )  CV 04-9059 DDP (AJWx)
               Plaintiff,     )
8                             )
           vs.                )
9                             )
      CARTER BRYANT, an individual, and    )
10    DOES 1 through 10, inclusive,        )
                              )
11             Defendants.    )
      _____
12    CARTER BRYANT, on behalf of himself,  )
      all present and former employees of  )
13    Mattel, Inc., and the general public, )
                              )
14             Cross-Complainant,   )
                              )
15         vs.                )
                              )
16    MATTEL, INC., a Delaware corporation, )
                              )
17             Cross-Defendant.   )
18
19                    VOLUME III
          THE VIDEOTAPED DEPOSITION OF CARTER BRYANT,
20    produced, sworn, and examined on Monday, November 8, 2004,
      at 10:27 a.m. of that day, pursuant to Notice to Take
21    Deposition at the University Plaza, Executive Boardroom,
      333 South John Q. Hammons Parkway, in the City of Springfield,
22    County of Greene, State of Missouri, before Sherrie L. Hunt,
      Certified Court Reporter, and Notary Public, in a certain
23    cause now pending in the United States District Court for the
      Central District of California, wherein the parties are as
24    above set forth; taken on behalf of the Plaintiff Mattel,
      Inc.
25          COURT REPORTERS OF THE MIDWEST, INC.
                     P.O. Box 4282
26          Springfield, MO 65808 (417) 889-2079
27
28
</pre>

EXHIBIT _H_
PAGE _86_

1    Q   Do you recall anything else that was said in this meeting?

2    A   I think I asked about the job, if it was full-time or

3        part-time.

4    Q   What did they tell you?

5    A   They said it would be full-time work.

6    Q   So they were talking to you about a very specific job in

7        this meeting that they potentially had in mind for you?

8    A   Yes.

9    Q   And that was -- was it identified to you at that point as

10       being a job working for Cassidy?

11   A   I don't recall.

12   Q   As best you can recall, how was this job described to you

13       in this meeting?

14   A   I don't remember it being described in any other way other

15       than it was a full-time job.

16   Q   All right.  But designing things for Barbie?

17   A   Yes.

18   Q   Okay.  I want to make sure I've given you a chance to tell

19       me everything that you can recall that was said in this

20       meeting, and what I've got so far is that Cynthia was

21       complimentary about your portfolio; is that right?

22   A   Yes.

23   Q   And they gave you a tryout project?

24   A   Yes.

25   Q   They told you it would be full-time employment?

EXHIBIT ____

PAGE ____

1   A   Right.

2   Q   And there was some discussion that this was a job

3        designing things for Barbie?

4   A   Yes.

5   Q   Do you recall anything else that was said in this second

6        meeting?

7   A   Not right off the bat.  Not right now.

8   Q   Okay.  Obviously I wouldn't think you have any notes or

9        records of any of these meetings leading up to your

10       employment at Mattel?

11   A   No.

12   Q   Did they give you -- in this meeting did they give you any

13       documents or paperwork about Mattel or employment at

14       Mattel?

15   A   Not that I can recall.

16   Q   And you hadn't received any -- in the interim since your

17       last meeting nobody had mailed anything to you?

18   A   Not that I remember.

19   Q   How were things left at the conclusion of the second

20       meeting?  Was it -- did you have a job offer at that

21       point?  Did they say they would get back to you or

22       something else?

23   A   I think again they wanted me to come and meet with another

24       lady.  They wanted me to go do the test assignment and

25       then they wanted me to come back for an interview with

EXHIBIT
PAGE

Bryant, Carter - Vol. 3 (Confidential) 11/8/2004 10:27:00 AM

1     another woman.

2   Q  Tell me about the test assignment.  What was that?

3   A  They wanted me to do a project in which I would come up

4      with sort of a -- I forget what the project was called but

5      they wanted me to come up with some sort of superhero kind

6      of a look based on comic-book-type art for -- both for

7      Barbie and Ken.

8   Q  So Barbie and Ken as superheroes?

9   A  Something to that effect.

10  Q  What -- was it your understanding that this was just a

11     test where they wanted to see what you could do and they

12     didn't have any actual intention of developing such a

13     concept or it was your understanding that they actually

14     intended to develop something?

15        MR. WICKHAM:  Objection, compound, vague,

16     and calls for speculation.

17  A  I don't -- at the time I didn't know what -- what their

18     intention was for -- for this project.

19  Q  (By Mr. Quinn)  Did you later learn whether or not Mattel

20     intended actually to pursue such a project?

21  A  I think I did.  I think that I learned that they were, in

22     fact, interested in doing a project based on that.

23  Q  Do you know whether they ever did, Mattel ever did such a

24     superhero-type Barbie and Ken?

25  A  Not to my knowledge.

EXHIBIT _H_
PAGE _89_

Bryant, Carter - Vol. 3 (Confidential)    11/8/2004    10:27:00 AM

1    Q   Did they give you any materials to use as a -- I assume

2        they didn't ask you to do drawings or designs right there

3        in the meeting.

4    A   No.

5    Q   I mean, their assumption was that you would then go home

6        or wherever and develop something for them to look at?

7    A   That's right.

8    Q   And did they give you any materials to use as a guide or

9        anything to make sure that you came up with something that

10       was along the lines of what they were looking for?

11   A   I think they may have.  I think Cassidy possibly gave me a

12       notebook of some reference material, inspiration pieces.

13       I don't -- I don't remember exactly what was in it, but I

14       do think she gave me something.

15   Q   And did you end up doing something to submit?

16   A   Yes.

17   Q   Did you get paid for that assignment?

18   A   Yes.

19   Q   Do you recall how much you were paid?

20   A   I don't remember.  I think it was about $800.

21   Q   Were you paid before you started work at Mattel or did you

22       get paid that after?

23   A   No.  I simply kept a record of the hours that it took me

24       for the project and then I was paid later.

25   Q   Later after you started work?

MGA v. Mattel-OMM Depo Transcripts          Unsigned                    Page  517

EXHIBIT  H
PAGE  90