KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                              Plaintiff,<br><br>       v.<br><br>MATTEL, INC. a Delaware<br>Corporation,<br><br>                              Defendant.<br><br>CONSOLIDATED WITH MATTEL,<br>INC., v. BRYANT and MGA<br>ENTERTAINMENT, INC. v.<br>MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx)<br>(consolidated with CV 04-9059 & 05-2727<br><br>**DISCOVERY MOTION**<br>[To be heard by Discovery Master Hon.<br>Edward Infante (Ret.)]<br><br>**REPLY IN SUPPORT OF CARTER<br>BRYANT'S MOTION TO QUASH<br>MATTEL INC.'S SUBPOENA<br>ISSUED TO PEOPLES BANK OF<br>THE OZARKS OR IN THE<br>ALTERNATIVE, FOR<br>PROTECTIVE ORDER**<br>[Second Supplemental Declaration of<br>John Trinidad filed concurrently]<br><br>Date:      TBA<br>Time:      TBA<br>Place:     TBA<br>Date Comp. Filed:  April 13, 2005<br>Discovery Cut-Off:  Jan. 28, 2008<br>Pre-Trial Conference:  May 5, 2008<br>Trial Date:  May 27, 2008 |

REPLY IN SUPPORT OF CARTER BRYANT'S MOTION TO QUASH MATTEL INC.'S
SUBPOENA ISSUED TO PEOPLES BANK OF THE OZARKS OR IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER
CASE NO. CV 04-09049 SGL (RNBx)

411286.01

# TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ...................................................................................1

II.  FACTUAL BACKGROUND ......................................................................................2

    A.   Mattel delayed in providing notice and aggressively sought compliance with the subpoena before Bryant would have a chance to object.................................................................................................2

III. ARGUMENT..............................................................................................................4

    A.   Mattel's egregious delay in providing notice and repeated violations of Rule 45 support a finding of prejudice and quashing of the Peoples Bank subpoena.................................................4

        1.   Courts consider period of delay in providing notice, any pattern of noncompliance with the Federal Rules, and other objectionable characteristics of a subpoena in determining prejudice. ..................................................4

        2.   Mattel's egregious delay in providing notice and Mattel's behavior in encouraging the Bank to produce documents before Bryant had an opportunity to properly object support a finding of prejudice. ...........................5

        3.   Mattel's repeated violation of Rule 45 in subpoenas seeking defendants' financial information provides further support for a finding of prejudice. ...................................7

        4.   Mattel's requests are overly broad and largely duplicative of other discovery, making the subpoena objectionable, and providing additional support for a finding of prejudice..........................................................7

        5.   Mattel's other arguments and claims do not excuse their violation of Rule 45. .................................................9

    B.   Mattel's subpoena to Peoples Bank seeks financial information that is irrelevant, unreasonably duplicative or cumulative of other discovery.................................................10

        1.   Mattel's claims that the documents requested from Peoples Bank are "relevant" is simply a post hoc rationalization for their overbroad requests............................10

        2.   Mattel's claim that the subpoena is valid because it requests documents to prove Damages, Disgorgement, and Commercial Bribery do not cure the overbroad nature of the requests. ..................................................10

i

411286.01

C.     Mattel's allegations regarding spoliation and document tampering are unfounded, inaccurate, and misleading..........................13

IV.     CONCLUSION ........................................................................................14

ii

411286.01

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Biocore Medical Technologies, Inc. v. Khosrowshahi,*
   181 F.R.D. 660 ..................................................................................5, 6

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec,*
   476 F. Supp. 2d 913 (N.D. Ill. 2007) ...........................................4

*Mattel, Inc. v. Walking Mountain Products,*
   353 F.3d 792 (9th Cir. 2003)....................................................2, 3

*Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.,*
   262 F. Supp. 2d 923 (N.D. Ill. 2003) ...........................................8

## STATE CASES

*Blaser v. Mt. Carmel Regional Medical Ctr., Inc.,*
   2007 WL. 852641 (D. Kan. 2007) ..............................................5, 6

*Doe v. U.S.,*
   2007 WL. 1521550 (D.C. Pa. 2007) ..............................................6

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal. 4th 1134 (2003)..............................................................11

*Tubor v. Clift,*
   2007 WL. 214260 (W.D. Wash. 2007) ..........................................6

*Zinter Handling, Inc. v. General Electric Co.,*
   2006 WL. 3359317 (N.D.N.Y. 2006) ............................................6

## DOCKETED CASES

*Fieldturf International, Inc., v. Triexe Management Group, Inc.,*
   No. 03 C 3512, 2004 WL. 866494 (N.D. Ill. Apr. 16, 2004)...............11

411286.01

# FEDERAL STATUTES

Fed. R. Civ. P. 45 ..................................................................................... 1

iv

411286.01

# I.   PRELIMINARY STATEMENT

Mattel concedes that it violated Fed. R. Civ. P. 45, and the following facts are undisputed:

> (1) Mattel did not provide Bryant with prior notice of the Peoples Bank subpoena.

> (2) Due to Mattel's delay, Bryant had *less than one business day* to object to the subpoena before the date of compliance.

> (3) Mattel had previously failed to provide the parties with prior notice in serving third party subpoenas seeking the defendants' financial information, including subpoenas to Foothill Business Services and Bank of America.

*See* Grant Decl. Ex. C; Bryant's Supp. Mem. of Points and Authorities ("Supp. MPA") at 2-3.  Moreover, it is now clear that Mattel persistently and doggedly encouraged the bank to produce Bryant's personal financial information on the morning of January 28, before Bryant could have reasonably been expected to object.  Grant Decl. ¶¶ 5, 7, Exs. D, F.  Mattel offers no excuse or explanation for its actions, leaving only one logical conclusion:  Mattel deliberately tried to limit Bryant's ability to object to the subpoena, and worked feverishly to obtain the Bryant's personal bank records before Bryant could lodge his objections.

In an attempt to distract the Court from this flagrant violation of the Federal Rules, Mattel hurls inaccurate, unfounded, and scurrilous allegations of "spoliation and evidence tampering."  Opp. at 2.  Yet, none of the arguments raised by Mattel cure the overly broad and unduly burdensome nature of the subpoena requests, nor do they excuse Mattel's continued practice of ignoring the Federal Rules.

Finally, Mattel makes the quintessential strawman argument in claiming that the subpoena must be valid because it seeks "relevant" information as to damages and disgorgement.  Even if Bryant were to concede, which he does not, that some subset of the documents requested by Mattel are "relevant," that does not in and of itself render the Peoples Bank subpoena valid.  First, as already discussed, the subpoena is invalid due to Mattel's flagrant violation of Rule 45.  Second, the

1

411286.01

1    subpoena is still invalid for being overly broad and unreasonably duplicative.

2    Moreover, the subpoena is invalid because Mattel has failed to limit those requests

3    to exclude irrelevant information.  Thus, the subpoena amounts to nothing more

4    than further evidence of Mattel's scorched earth discovery practices.  *See Mattel,*

5    *Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir. 2003) (quashing

6    subpoena issued by Mattel and Quinn Emanuel for making "'[n]o attempt . . . to try

7    to tailor the information request to the immediate needs of the case.'") (quotations

8    and citations omitted).

9         Mattel's subpoena issued to Peoples Bank of the Ozarks should, therefore,

10   be quashed.

11

12                        **II.    FACTUAL BACKGROUND**

13   **A.    Mattel delayed in providing notice and aggressively sought compliance**
        **with the subpoena before Bryant would have a chance to object.**
14
        While the factual background to this motion is well documented in Bryant's
15
     opening brief and Supplemental Memorandum of Points and Authorities (filed
16
     January 30, 2008), Mattel's opposition brief and supporting documentation provide
17
     additional facts relevant to demonstrating Mattel's violation of the Federal Rules,
18
     and Bryant's showing of prejudice.
19
        Mattel served Peoples Bank with the subpoena on January 18, 2008,
20
     demanding that compliance be completed by 9:00AM on Monday, January 28,
21
     2008.  Grant Decl. Ex. C.[1]  Mattel finally served Bryant with notice of the
22
     subpoena on Friday, January 25, a fact which Mattel does not dispute.
23
        Over the course of the next few days, Mattel engaged in a furious attempt to
24
     secure Bryant's bank records from Peoples Bank *before* Bryant would have a
25

26   [1] Despite Mattel's claim that the subpoena was served on January 21, 2008 (*See* Opp. at 3), the
     proof of service on the subpoena clearly shows that Peoples Bank was served on January 18.
27   Either way, Mattel has conceded a violation of the prior notice requirements of Rule 45.

28
                                            2

411286.01

chance to object.  On Friday, January 25, Mattel had substantive conversations with Peoples Bank, in which the Bank stated that "bank personnel [had] worked long & hard to provide the documents that you requested," but that it needed additional time to collect documents due to a "mechanical failure."  Grant Decl. Ex. D.  That same evening, at 9:22PM, only a few hours after first giving notice of the subpoena, Mattel requested that the parties stipulate to an extension of time (past the discovery cut-off date) for compliance with the subpoena, and set a Sunday 3:00PM deadline to respond.  Mattel omitted any reference to its conversations with the Bank in this correspondence.  *Id.*, Ex. E.  Later that night, at 11:12PM, counsel for Mattel sent an email to Peoples Bank, requesting "that the bank send [Mattel] on Monday, January 28, the responsive documents it ha[d] already collected."  *Id.* Ex. F.

Mattel's feverish attempts to secure the documents before Bryant could move to quash continued over the weekend of January 26 and 27.  Peoples Bank advised Mattel that the bank president had been informed of Mattel's request to pick-up materials on Monday morning, and that Mattel would know prior to the start of business Pacific Standard time if the requested same day production was possible.  Grant Decl. ¶9, Ex. I, J.

Sure enough, before the start of business on January 28, ***less than one business day after providing notice to Bryant,*** Mattel and Peoples Bank agreed to arrange same day production of the documents.  *Id.*, ¶ 10, Ex. J.  Before Mattel could cart away those documents, however, counsel for Bryant sent letters to both Mattel and Peoples Bank, making clear his objections and his intention to file a motion to quash.  Supp. Trinidad Decl., Exs. H, I.  The letter to Peoples Bank stated:

> [We] presently intend to file a motion to quash [Mattel's] subpoena. Pending the resolution of the motion, we write to inform you that People's Bank [sic] of the Ozarks does not have Mr. Bryant or Mr. Irmen's permission to produce the materials requested in the subpoena

3

411286.01

and we seek to confirm that People's Bank [sic], absent that permission, will not produce any responsive documents unless and until there is a final order requiring such a production.  (emphasis in original).[2]

Thereafter, the bank informed Mattel that they would not be producing documents absent an agreement of the parties or a court order, and Bryant filed his Motion to Quash.  Grant Decl. Ex. J.  Only by working over the weekend and notifying the Bank and Mattel of its objections prior to the start of business on Monday morning was Bryant able to prevent the improper production of his private bank records.

**III.    ARGUMENT**

**A.    Mattel's egregious delay in providing notice and repeated violations of Rule 45 support a finding of prejudice and quashing of the Peoples Bank subpoena.**

**1.    Courts consider period of delay in providing notice, any pattern of noncompliance with the Federal Rules, and other objectionable characteristics of a subpoena in determining prejudice.**

District Courts have discretion in determining the penalties for discovery violations, including  violations of Rule 45(b).  *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 476 F. Supp. 2d 913, 928 (N.D. Ill. 2007).  In granting a motion to quash based on a  Rule 45 violation, courts focus on prejudice to the aggrieved party.  *Id.*  Prejudice is determined by considering multiple factors, including the period of delay in providing notice, any pattern of noncompliance with rules of procedure, and whether the subpoena is otherwise objectionable.[3]  *Id.* at 928-29 (case cited by Mattel (Opp. at 15)).  Mattel's actions, as described in more detail below, satisfy all these factors.

---

[2] Mattel's claim that Bryant threatened the bank are false.  Opp. at 4.  Bryant has produced the full letter sent to Peoples Bank as Exhibit H to the Supplemental Declaration of John Trinidad (filed on January 30, 2008).

[3] Another factor considered in determining prejudice is the serving party's conduct if documents were obtained after untimely notice.  *Judson Atkinson*, 476 F. Supp. 2d at 929.

4

411286.01

### 2. Mattel's egregious delay in providing notice and Mattel's behavior in encouraging the Bank to produce documents before Bryant had an opportunity to properly object support a finding of prejudice.

Mattel concedes that they waited until the day before the subpoenas compliance date to provide Bryant with notice – a full week after they had served the subpoena on Peoples Bank. Yet Mattel unabashedly categorize this naked violation of the Federal Rules as a simple "procedural defect" and – in a two paragraph section buried in their 16-page brief – argues that Bryant has not demonstrated the requisite amount of prejudice in order to quash the subpoena. Opp at 15. Nonsense. By waiting one week to notify Bryant of the subpoena, Mattel severely hindered Bryant's ability to object to the subpoena in a timely fashion and prevented any opportunity for the parties to meet and confer in order to reach a resolution.

Mattel's argument boils down to nothing more than "heads I win, tails you lose." If Bryant's counsel decides to work over the weekend to file a motion to quash before the time of compliance, then he is barred from showing the requisite prejudice to quash the subpoena. Alternatively, Bryant can wait until after his Peoples Bank has complied with the subpoena, and move to quash only after Mattel has gotten their hands on his personal financial information. Under Mattel's flawed logic, as long as Bryant had one minute to object prior to compliance with the subpoena, and he so objected, Mattel's Rule 45 violation should go unpunished. This is simply absurd and contrary to law. *See Blaser v. Mt. Carmel Regional Med. Ctr., Inc.*, 2007 WL 852641, *1-2 (D. Kan. 2007) ("[C]ourts in this district have held that mailing notice one day prior to the date of compliance would also violate Rule 45(b)(1) as this action would prohibit opposing counsel from responding.") citing *Biocore Medical Technologies, Inc. v. Khosrowshahi*, 181 F.R.D. 660, 667-68 (D. Kan. 1998) (rejecting defendant's

411286.01

1   interpretation of Rule 45 which "would allow a party to mail notice to opposing

2   counsel one day prior to the date of compliance....") (both cases cited by Mattel at

3   Opp. 15).

4          None of the cases cited by Mattel support their theory that their Rule 45

5   violation is the sort of "procedural defect" that the Court should overlook.[4]  Quite

6   contrary – Mattel's actions here deserve serious scrutiny.  Mattel provides no

7   explanation for their delay in serving notice.  Nor does Mattel explain its feverish

8   attempts to secure the Peoples Bank subpoena before the start of the business day

9   on Monday, January 28, or why it failed to mention their communications with

10  Peoples Bank in their January 25 communication with Bryant's counsel.  *See* Grant

11  Decl. Exs. D, E, I, J.  Perhaps Mattel thought they would catch Bryant off guard

12  by, on one hand, reaching an agreement with Bryant regarding the production of

13  financial documents in response to the Foothills subpoena while, at the same time,

14  surreptitiously serving the Peoples Bank subpoena.

15         Regardless of Mattel's motive, the period of delay in this case provides

16  strong support for a finding of prejudice.  In all the cases cited by Mattel in which

17  the Court refused to quash a  subpoena in light of a Rule 45 violation, notice was

18  provided **10-16 days prior to the date of compliance**.[5]  Mattel's flagrant violation

19  of the Federal Rules, sandbagging of opposing counsel, and surreptitious attempts

20

21  [4] Mattel cites *Tubor v. Clift*, 2007 WL 214260, at 6 (W.D. Wash. 2007) to support its claim that a
    procedural defect is insufficient to quash a subpoena.  That case had *nothing* to do with a delay
22  in providing notice, but rather had to do with the method of service.  In that case, defendant
    argued that, by merely e-mailing notice of the subpoena, plaintiff had violated Rule 5(b) and,
23  thereby, failed to meet the requirements of Rule 45.  Nor does the case *Doe v. U.S.*,  2007 WL
    1521550 (D.C. Pa. 2007) have any application to the motion at hand.  In that case, the court ruled
24  that the party challenging the third party subpoena had no standing to seek to quash the subpoena
    in question.  *Id.* at *4.  Mattel has not challenged Bryant's standing to move to quash the Peoples
25  Bank subpoena.

    [5] *Blaser*, 2007 WL 852641 *1, *2 (D.Kan. 2007) (notice of subpoena 16 days before date of
26  compliance, and copy of subpoena provided 11 days before compliance date);   *Zinter Handling,
    Inc. v. General Electric Co.*, 2006 WL 3359317 *2 (N.D.N.Y. 2006); (notice given 13 days
27  before compliance date); *Biocore*, 181 F.R.D. at 667-68 (D. Kan. 1998) (notice given 10 days
    before compliance date).
28

REPLY IN SUPPORT OF CARTER BRYANT'S MOTION TO QUASH MATTEL INC.'S
SUBPOENA ISSUED TO PEOPLES BANK OF THE OZARKS OR IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER
CASE NO. CV 04-09049 SGL (RNBx)

411286.01

1  to obtain Bryant's financial information is precisely the type of behavior that Rule

2  45's notice requirements was designed to prevent.

3      **3.    Mattel's repeated violation of Rule 45 in subpoenas seeking defendants' financial information provides further support for a finding of prejudice.**

4

5      In addition, Mattel's repeated violation of the Rule 45 notice requirement is

6  well documented and undisputed.  Bryant has previously pointed out Mattel's

7  numerous improper attempts to gain the personal financial information of

8  defendants in this case.  *See* Supp. MPA at 3.  For example, Mattel failed to

9  provide Bryant with any notice of the December 11 subpoena to Foothill, and also

10  failed to provide prior notice of the amended subpoena to Foothill.   Furthermore,

11  Mattel issued a subpoena to Bank of America seeking financial information, and

12  that subpoena is now the subject of MGA Entertainment's motion to quash.  Supp.

13  Trinidad Decl., Ex. K.  In that motion, MGA claims that Mattel delayed a full

14  week to provide the parties with notice of the Bank of America subpoena, and

15  served notice only one day before the specified date of compliance.  *Id*.  Mattel

16  does not contest any of these facts.  Thus, there is sufficient grounds for finding of

17  prejudice based on Mattel's repeated violation of the Federal Rules.

18      **4.    Mattel's requests are overly broad and largely duplicative of other discovery, making the subpoena objectionable, and providing additional support for a finding of prejudice.**

19

20      Bryant has provided a significant amount of financial information relevant to

21  the claims and issues in this litigation.  Yet, Mattel claims that they had no choice

22  but to subpoena Peoples Bank because Bryant had previously refused to produce

23  financial records.  Opp at. 16.  Mattel ignores the wealth of financial information

24  produced by Bryant.  For example, Bryant has produced all available royalty

25  statements showing payments he received form MGA in unredacted form.[6]  Second

26

27  ───────────────────────────────
   [6] Most of these royalty statements were produced in March 2007, in response to the Court's
28  January 25, 2007 Order.  *See* Second Supp. Trinidad Decl., Ex. B.  Mattel's statement that
   "Bryant has failed to produce his financial records for more than a year notwithstanding the

411286.01

Supp. Trinidad Decl., at Ex. A.  Bryant has supplemented this production, and Mattel has in their possession royalty statements from 2001 through 2007. *Id*.  In addition, Bryant produced more financial documents on January 18 and 23, 2008 in response to the agreement struck regarding the Foothills subpoena.[7]  *Id*., at Exs. C, D.  These productions included:

- Statements of Carter Bryant's Net Worth;
- Carter Bryant's 1099-Misc Income forms showing payments form MGA Entertainment from 2000-2006;
- Income statements from Carter Bryant Enterprises;
- Documents showing payments to Keats McFarland;
- 1099-Misc forms showing payments form Carter Bryant Enterprises to Veronica Marlow; and
- Other financial reports showing payments to Veronica Marlow.

Mattel, therefore, has more than enough information to show any payments of money or consideration made to him by MGA, thus satisfying Requests for Production 28, 29, 32.  See Opp. at 10-11.  Any additional financial information that Peoples Bank could provide in response to the subpoena would be either irrelevant or duplicative of material previously produced.  Furthermore, the production of documents responsive to such overly broad request as "ALL DOCUMENTS REFERRING OR RELATING TO CARTER BRYANT" would likely sweep in a multitude of irrelevant documents.  Grant Decl. Ex. C at Request 2.[8]

There was absolutely no reason for Mattel to sneak around behind Bryant's

---

Court's January 25, 2007 Order" is, therefore, false. *See* Opp. at 10.

[7] Counsel to Mattel, in what may best be described as a lapse of memory, entirely ignores Bryant's January 18 production. Grant Decl. ¶ 16.  Mattel's claim that "the Foothill production consisted of only 10 documents" is also false. Opp. at 6.

[8] Courts have generally found such requests to be over broad.  *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, 262 F. Supp. 2d 923 (N.D. Ill. 2003).

8

411286.01

back in order to gain access his personal bank records. Mattel already had all the relevant financial information it needs. Moreover, Bryant has shown his willingness to meet and confer with Mattel and has produced documents that are relevant, as evidenced by the agreement struck in response to the Foothills subpoena.[9] *See* Mot. at 2-4. By short circuiting Bryant's time to respond to the Peoples Bank subpoena, Mattel cut short any possibility of negotiating further production.

### 5.   Mattel's other arguments and claims do not excuse their violation of Rule 45.

Mattel also claims that Bryant failed to provide prior notice for certain subpoenas issued to third parties. Op. at 6, 14; Grant Decl. ¶17. Mattel, however, does not claim that these subpoenas sought Mattel's confidential financial information or that it had standing to object to these third party subpoenas, as is the case with the Peoples Bank subpoena. In addition, Bryant notified Mattel of the subpoenas to Anna Rhee, Pacific Bell Telephone Company, and Ogilvy & Mather Worldwide at least 10 days before the compliance date. Supp. Trinidad Decl., Ex. E. The subpoenas cited by Mattel are, thus, immaterial to the motion at hand.

*****

The Court should quash the Peoples Bank subpoena in light of the prejudice evidenced by the extraordinary delay in providing notice, Mattel's repeated violation of Rule 45, and the over broad and duplicative nature of the subpoena requests.

---

[9] Mattel's claim that "the Foothill production consisted of only 10 documents" is false. Opp. at 6.

REPLY IN SUPPORT OF CARTER BRYANT'S MOTION TO QUASH MATTEL INC.'S SUBPOENA ISSUED TO PEOPLES BANK OF THE OZARKS OR IN THE ALTERNATIVE, FOR PROTECTIVE ORDER
CASE NO. CV 04-09049 SGL (RNBx)

411286.01

**B.   Mattel's subpoena to Peoples Bank seeks financial information that is irrelevant, unreasonably duplicative or cumulative of other discovery.**

    **1.   Mattel's claims that the documents requested from Peoples Bank are "relevant" is simply a post hoc rationalization for their overbroad requests.**

On January 28, Mattel filed a Motion for Leave to Obtain Discovery related to the Peoples Bank subpoena, in which it claims that the subpoena seeks documents relevant to "the amount and dates of payments made by MGA and/or Isaac Larian to Bryant." Supp. Trinidad Decl., Ex. A at 5. As described earlier, however, Mattel already has in its possession royalty statements and 1099-Misc Income forms showing payments to Bryant, thus showing that the subpoena requests are duplicative and cumulative of other discovery.

Now faced with this motion to quash, Mattel invents additional arguments in an attempt justify their overly broad and duplicative requests. The Peoples Bank subpoena calls for the production *all* of Bryant's bank records, not just payments from MGA or Larian, including but not limited to all "statements, monthly statements, annual statements, daily transaction history reports, monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature cards and COMMUNICATIONS REFERRING OR RELATING TO [his]ACCOUNTS." Grant Decl. Ex. C at Request 4. To justify these overly broad requests, Mattel now claims that such requests are relevant to damages, disgorgement, and commercial bribery. As explained below, Mattel's relevance arguments are nothing more than a post hoc rationalization for the overly broad Peoples Bank subpoena.

    **2.   Mattel's claim that the subpoena is valid because it requests documents to prove Damages, Disgorgement, and Commercial Bribery do not cure the overbroad nature of the requests.**

Mattel makes a sweeping claim that the subpoena's request for Bryant's financial documents are justified because they are "relevant" to claims or defenses in this case. Opp. at 7-9. Yet, even if some subset of relevant documents were to

10

1  be produced in response to the subpoena requests, that in and of itself does not cure

2  the overly broad and duplicative nature of the request. For example, Mattel claims

3  that it now needs "ALL DOCUMENTS REFERRING OR RELATING TO

4  CARTER BRYANT from January 1, 1999 to the present."  Grant Decl., Ex. C.

5  Surely, counsel to Mattel is skilled enough to draft a request that is more tailored to

6  establishing an individual's net worth, and need not rely on the blunt demand for

7  "all of them."  But instead of narrowly tailoring their requests to any legitimate,

8  relevant documents as to Bryant's net worth, Mattel has decided to go after every

9  single bank record pertaining to Carter Bryant.  Such requests are clearly over

10  broad.

11       Moreover, Mattel's claims of relevance are legally untenable.  Mattel claims

12  they need virtually every bank record pertaining to Carter Bryant or Carter Bryant

13  Enterprises since 1999 in order to establish net worth.  Yet, courts have concluded

14  that the pertinent issue for punitive damages is current net worth, not historical net

15  worth. *See Fieldturf International, Inc., v. Triexe Management Group, Inc.*, No. 03

16  C 3512, 2004 WL 866494, at *3 (N.D. Ill. Apr. 16, 2004).  And as previously

17  discussed, Mattel already has sufficient information to calculate Bryant's net

18  worth. *See* Second Supp. Trinidad Decl., Exs. A, C, D.

19       Mattel's claim that the subpoena requests are relevant to its disgorgement

20  theory are based on a misreading of the law.  Mattel argues that it is entitled to all

21  documents showing "*any* gain realized from Bryant's use of funds that rightfully

22  belong to Mattel."  Opp. at 8-9 (emphasis added).  However, the law is clear that

23  disgorgement is limited to profits *directly* gained from the alleged wrongful acts.

24  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1145 (2003)

25  (disgorgement defined as "all money obtained through an unfair business practice"

26  or "all profits earned as a result of an unfair business practice (internal quotations

27  and citation omitted).  To that end, Bryant has already produced sufficient

28

1  documents to show Bryant's gains from his MGA income. *See, e.g.,* Second Supp.

2  Trinidad Decl., Ex. C (BRYANT2 008052).  In addition, in the context of

3  copyright infringement and trade secret misappropriation, disgorgement is limited,

4  and does not include punitive damages. *See Bucklew v. Hawkins, Ash, Baptie &*

5  *Co.,* 329 F.3d 923, 931 (7th Cir. 2003) ("[T]here is no basis in the law for requiring

6  the inringer to give up more than his gain when it exceeds the copyright owners'

7  loss.  Such a requirement would add a punitive as distinct from a restitutionary

8  element to copyright damages...."). Under a disgorgement theory, then, Mattel is

9  entitled only to the profits that Bryant directly earned from Bratz, and what

10  happened to those profits is irrelevant.  Again, Mattel has detailed documents

11  listing payments received by Bryant from MGA.  Second Supp. Trinidad Decl., Ex.

12  A (Royalty Statements), B (1099-Misc. Income Forms).

13       If indeed Mattel believed that all of Bryant's personal banking records were

14  required to prove damages or disgorgement, it should have first served a Request

15  from Production to Bryant asking for these types of documents.  Instead, Mattel's

16  requests for production regarding financial documents were limited to *payments to*

17  Bryant.  Second Supp. Trinidad Decl., Ex. F (Requests 28-35, 44-45, 48).  By now

18  claiming they need every single document that shows how Bryant used his money,

19  Mattel puts forth a weak, *post hoc* justification for their overly broad and irrelevant

20  subpoena requests.

21       Finally, Mattel claims that the subpoena requests documents relevant to

22  commercial bribery and bias claims.  But as already discussed, Bryant has

23  provided detailed information of payments he has made to Veronica Marlow and

24  other individuals. *See* Second Supp. Trinidad Decl., Ex. B, C.  Nor are Mattel's

25  requests directed to documents showing payments to particular individuals during

26  particular time periods.  Instead, Mattel has asked for a much broader category of

27  financial documents, "including, but not limited to statements, monthly statements,

28

REPLY IN SUPPORT OF CARTER BRYANT'S MOTION TO QUASH MATTEL INC.'S
SUBPOENA ISSUED TO PEOPLES BANK OF THE OZARKS OR IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER
CASE NO. CV 04-09049 SGL (RNBx)

411286.01

1   annual statements, daily transaction history reports, monthly transaction history

2   reports, deposit reports, deposit slips, canceled checks, signature cards, can

3   COMMUNICATIONS REFERRING OR RELATING TO" accounts held for or

4   by Carter Bryant or Carter Bryant Enterprises.  Grant Decl., Ex. C (Request 4).

5   Mattel has not met its obligation to tailor the request to the specified needs of the

6   case.

7   **C.     Mattel's allegations regarding spoliation and document tampering are**
        **unfounded, inaccurate, and misleading.**

8

9           Without any justification Mattel makes baseless allegations against Bryant in

10  an attempt to distract the court from the issue at hand:  Mattel's flagrant violation

11  of Rule 45.  Mattel's claims are not only without merit, but are entirely irrelevant to

12  the motion at hand.  Bryant, however, can not let these allegations go unanswered.

13          Mattel brazenly attempts to malign Bryant's credibility and to intimate a

14  conspiracy to cover up the work of Maria Elena Salazar, Ana Isabel Cabrera, and

15  Beatriz Morales, individuals who Mattel claims worked on Bratz while still

16  employed by Mattel.  Opp. at 2.  Contrary to Mattel's unfounded suggestion,

17  Bryant did not deliberately withhold information about Ms. Salazar, Ms. Morales,

18  and Ms. Cabrera.   Mattel has questioned Bryant about these individuals, and

19  Bryant testified that he has no personal knowledge that any of these three

20  individuals worked on Bratz while also employed at Mattel.  Second Supp.

21  Trinidad Decl., Ex. G (Bryant Depo. Tr. at 831:11-833:2).  Bryant's testimony is

22  supported by Veronica Marlow, who made clear that she never told anyone at

23  MGA about these individuals.  *Id.*, Ex. H (Marlow Depo. Tr. at 314:4-9; 296:11-

24  17).  Moreover, Bryant's lack of knowledge on that subject is unsurprising given

25  Marlow's general unwillingness to provide information about who was working

26  for her.  *Id.* (Marlow Depo. Tr. at 109:18-111:6).  Despite over 15 hours of

27  deposition testimony from Mr. Bryant and Ms. Marlow, and its lengthy

28  interrogation of Ms. Cabrera and Ms. Morales, Mattel has not uncovered a single

13

411286.01

1  fact that indicates that Mr. Bryant deliberately withheld information about the
2  seamstresses who worked for Veronica Marlow.[10]  Mattel's allegations are
3  unfounded, and are simply a ploy to deflect attention away from its over reaching
4  attempts to surreptitiously obtain Carter Bryant's financial information.  At the end
5  of the day, such baseless claims provide no support for Mattel's attempt to
6  rehabilitate the Peoples Banks subpoena.  By repeatedly ignoring Rule 45's notice
7  requirements, deliberately limiting Bryant's time to object to the subpoena, and
8  eagerly encouraging the Bank to produce before giving Bryant sufficient time to
9  object,  Mattel violated the letter and spirit of the Federal Rules.

## IV.   CONCLUSION

11         For the foregoing reasons, and for the reasons specified in Bryant's Motion
12  and Supplemental Memorandum of Points and Authorities, Bryant respectfully
13  requests that the Discovery Master QUASH Mattel's subpoena to Peoples Bank of
14  the Ozarks, or, in the alternative, issue a protective order substantially narrowing
15  the scope of the subpoena requests.

17  Dated:  February 13, 2008                    KEKER & VAN NEST, LLP

20                                    By: /s/ John Trinidad
                                      JOHN TRINIDAD
21                                    Attorneys for Plaintiff
                                      CARTER BRYANT

---

26  [10] Mattel also raises the specter of a program called "Evidence Eliminator" which was installed
27  on two of Bryant's computers.  Bryant has fully responded to Mattel's claims in his opposition to
    Mattel's Motion for an Order Enforcing Court's January 25, 2007 Order Compelling Bryant to
28  Produce Computer Hard Drives and for Sanctions.  Second Supp. Trinidad Decl., Ex. I.

                                      14
REPLY IN SUPPORT OF CARTER BRYANT'S MOTION TO QUASH MATTEL INC.'S
SUBPOENA ISSUED TO PEOPLES BANK OF THE OZARKS OR IN THE ALTERNATIVE,
                         FOR PROTECTIVE ORDER
                    CASE NO. CV 04-09049 SGL (RNBx)

411286.01

## PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On February 13, 2008, I served the following document(s):

**REPLY IN SUPPORT OF CARTER BRYANT'S MOTION TO QUASH MATTEL, INC.'S SUBPOENA ISSUED TO PEOPLE'S BANK OF THE OZARKS OR IN THE ALTERNATIVE, FOR PROTECTIVE ORDER**

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery;

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

Hon. Edward A. Infante
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Tel:   415/774-2649
Fax:   415/982-5287
Email:   schan@jamsadr.com

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel:   213/443-3000
Fax:   213/443-3100
Email:
        johnquinn@quinnemanuel.com
Email:
        michaelzeller@quinnemanuel.com

1

| | |
|---|---|
| Thomas J. Nolan | Alexander H. Cote |
| Skadden Arps Slate Meagher & Flom | Overland Borenstein Scheper & Kim LLP |
| 300 South Grand Avenue, Suite 3400 | 300 S. Grand Avenue, Suite 2750 |
| Los Angeles, CA 90071-3144 | Los Angeles, California 90071 |
| Tel:   213/687-5000 | Tel:   213/613-4660 |
| Fax:  213/687-5600 | Fax:   213/613-4656 |
| Email: tnolan@skadden.com | Email :   acote@obsklaw.com |

Executed on February 13, 2008, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California that the above is true and correct.


_____
JULIE SELBY

411286.01