1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 90378)
2 | (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5 | Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6 | Facsimile:  (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| | Consolidated with |
| | Case Nos. CV 04-09059 & CV 05-2727 |
| Plaintiff, | |
| | **DISCOVERY MATTER** |
| vs. | |
| | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]** |
| MATTEL, INC., a Delaware corporation, | SUPPLEMENTAL DECLARATION OF B. DYLAN PROCTOR IN SUPPORT OF MATTEL, INC.'S *EX PARTE* APPLICATION (1) TO STRIKE CARTER BRYANT'S MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS, AND (2) TO STAY TIME FOR FILING ANY OPPOSITION THERETO PENDING REVIEW |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |
| | Hearing Date:  TBA |
| | Time:          TBA |
| | Place:         TBA |
| | **Phase 1** |
| | Discovery Cut-Off: January 28, 2008 |
| | Pre-Trial Conference: May 5, 2008 |
| | Trial Date:  May 27, 2008 |

1    ## SUPPLEMENTAL DECLARATION OF B. DYLAN PROCTOR

2    I, B. Dylan Proctor, declare as follows:

3    1.    I am a member of the bar of the State of California and a partner of
4    Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc.
5    ("Mattel") I make this supplemental declaration in support of Mattel's *Ex Parte*
6    Application (1) to Strike Carter Bryant's Motion to Compel Responses to Discovery
7    Requests, and (2) to Stay Time for Filing Any Opposition Thereto Pending Review.
8    I make this declaration of personal, firsthand knowledge, and if called and sworn as
9    a witness, I could and would testify competently thereto.

10    2.    On January 24, 2008, I met and conferred with John Trinidad, counsel
11    for Carter Bryant, regarding Mr. Bryant's responses to Mattel's Fifth Set of Requests
12    for Admission, following a deposition at which we were both present. At that
13    conference, Mr. Trinidad requested additional time to serve promised supplemental
14    responses to Request Nos. 42-45 in that set of requests. I informed Mr. Trinidad
15    that if Bryant's supplemental responses could not be served until after the Court's
16    Phase One discovery cut-off, the parties would need to enter into a stipulation
17    allowing Mattel to bring a motion to compel, if need be, after that date, because the
18    cut-off was the deadline for such motions. Attached as Exhibit 1 is a true and
19    correct copy of a series of e-mails I thereafter exchanged with Mr. Trinidad
20    regarding Bryant's supplemental responses to Mattel's Requests for Admissions Nos.
21    42-45 and the need for a stipulation to permit a motion to compel after the cut-off.

22    3.    Attached as Exhibit 2 is a true and correct copy of a letter I sent to
23    Michael Page and Thomas Nolan, dated February 5, 2008.

24    4.    Attached as Exhibit 3 is a true and correct copy of a letter that Jason D.
25    Russell, counsel for MGA, sent to me, dated February 11, 2008.

26    5.    Attached as Exhibit 4 is a true and correct copy of MGA's
27    Memorandum of Points and Authorities in Opposition to Mattel's Motion to Compel
28    MGA to Produce Communications Regarding this Action, dated February 11, 2008.

07209/2389363.1

1    6.    Attached as Exhibit 5 is a true and correct copy of a letter I sent to

2  Matthew Werdegar, counsel for Carter Bryant, on February 7, 2008.

3    7.    On February 13, 2008, Mattel granted Carter Bryant an eight day

4  extension to file his opposition to Mattel's Motion to Compel MGA Entertainment,

5  Inc., MGA Entertainment (HK) Limited, Isaac Larian, and Carter Bryant to Respond

6  to Mattel's First Set of Requests for Admission Propounded to MGA Entertainment,

7  Inc.; Carter Bryant; MGA Entertainment (HK) Limited; and Isaac Larian.  A true

8  and correct copy of the Stipulation and [Proposed] Order Regarding Extension of

9  Time to File Opposition to Mattel, Inc.'s Motion to Compel Carter Bryant to

10  Respond to Mattel's First Set of Requests for Admission to Certain Defendants is

11  attached as Exhibit 6.

12    8.    Attached as Exhibit 7 is a true and correct copy of a letter that I

13  received from Jose Allen, counsel for MGA, dated February 13, 2008.

15    I declare under penalty of perjury under the laws of the United States of

16  America that the foregoing is true and correct.

17    Executed on February 14, 2008, at Los Angeles, California.

B. Dylan Proctor

# EXHIBIT 1

1

**From:** John E. Trinidad [mailto:JTrinidad@kvn.com]
**Sent:** Sunday, January 27, 2008 5:34 PM
**To:** Tamara Jih; Dylan Proctor
**Cc:** Michael T Zeller; Jon Corey
**Subject:** RE: RFAs

Thank you, Tamara. You have my permission to sign on my behalf.

I hope you'll be able to enjoy what remains of the weekend.

Cheers,
-John

---

**From:** Tamara Jih [mailto:tamarajih@quinnemanuel.com]
**Sent:** Sunday, January 27, 2008 4:53 PM
**To:** John E. Trinidad; Dylan Proctor
**Cc:** Michael T Zeller; Jon Corey
**Subject:** RE: RFAs

John,

Please see the attached stipulation for your review and signature.

Thanks,
Tammy

---

**From:** John E. Trinidad [mailto:JTrinidad@kvn.com]
**Sent:** Sunday, January 27, 2008 3:38 PM
**To:** Dylan Proctor
**Cc:** Tamara Jih; Michael T Zeller; Jon Corey
**Subject:** RE: RFAs

Thanks.

---

**From:** Dylan Proctor [mailto:dylanproctor@quinnemanuel.com]
**Sent:** Sunday, January 27, 2008 3:37 PM
**To:** John E. Trinidad
**Cc:** Tamara Jih; Michael T Zeller; Jon Corey
**Subject:** Re: RFAs

That's fine. We will send a stip. Thanks.

Dylan Proctor

EXHIBIT __1__
PAGE __3__

2/14/2008

Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 3rd Floor
Los Angeles, CA  90017

Direct:  (213) 443-3112
Main Phone:  (213) 443-3000
Main Fax:  (213) 443-3100

E-mail:  dylanproctor@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s)
named above.  This message may be an attorney-client communication and/or work product and as such is privileged and
confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended
recipient, you are hereby notified that you have received this document in error and that any review, dissemination,
distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify
us immediately by e-mail, and delete the original message.

----- Original Message -----
From: John E. Trinidad <JTrinidad@kvn.com>
To: Dylan Proctor
Cc: Tamara Jih; Michael T Zeller; Jon Corey
Sent: Sun Jan 27 14:35:54 2008
Subject: RE: RFAs

Dylan:

Reviewign email traffic from the past couple of days, and wanted to see if we are in agreement that the supplemental
responses to RFAs 42-45 can be submitted by 2/4/08.  Please let me know, and I'd be happy to review a stip to that effect.

-John

_____

From: Dylan Proctor [mailto:dylanproctor@quinnemanuel.com]
Sent: Thursday, January 24, 2008 9:38 PM
To: John E. Trinidad
Cc: Tamara Jih; Michael T Zeller; Jon Corey
Subject: RFAs

John, per our brief discussion today please get back to me as soon as you can as to when Bryant can supplement his responses
to RFAs 42-45.  I can have a stip. prepared per our discussion if need be.  Thanks,

B. Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3112
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: dylanproctor@quinnemanuel.com <blocked::mailto:udylanproctor@quinnemanuel.com>
Web: www.quinnemanuel.com <blocked::http://www.quinnemanuel.com/>

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s)
named above.  This message may be an attorney-client communication and/or work product and as such is privileged and
confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended
recipient, you are hereby notified that you have received this document in error and that any review, dissemination,
distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify

2/14/2008



EXHIBIT 1
PAGE 4

us immediately by e-mail, and delete the original message.

EXHIBIT __1__

PAGE __5__

**From:** John E. Trinidad [mailto:JTrinidad@kvn.com]
**Sent:** Friday, January 25, 2008 8:10 AM
**To:** Dylan Proctor
**Cc:** Tamara Jih; Michael T Zeller; Jon Corey
**Subject:** Re: RFAs

We'll have them to you by 2/4/08.


----- Original Message -----
From: Dylan Proctor <dylanproctor@quinnemanuel.com>
To: John E. Trinidad
Cc: Tamara Jih <tamarajih@quinnemanuel.com>; Michael T Zeller <michaelzeller@quinnemanuel.com>; Jon Corey <joncorey@quinnemanuel.com>
Sent: Thu Jan 24 21:37:44 2008
Subject: RFAs

John, per our brief discussion today please get back to me as soon as you can as to when Bryant can supplement his responses to RFAs 42-45. I can have a stip. prepared per our discussion if need be. Thanks,

B. Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3112
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: dylanproctor@quinnemanuel.com <blocked::mailto:udylanproctor@quinnemanuel.com>
Web: www.quinnemanuel.com <blocked::http://www.quinnemanuel.com/>

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT  1
PAGE  6

# EXHIBIT 2

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3112**

WRITER'S INTERNET ADDRESS
**dylanproctor@quinnemanuel.com**

February 5, 2008

**VIA EMAIL AND U.S. MAIL**

Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

Thomas J. Nolan, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Re:    Mattel, Inc. v. Bryant, et al.

Dear Counsel:

Pursuant to Local Rule 7-3, we write to request a conference of counsel regarding Mattel's anticipated Phase 1 motion for summary judgment.  Mattel anticipates that the motion will raise the following issues:

**The Inventions Agreement Is Enforceable, and Encompasses All Doll Ideas and Designs That Bryant Conceived or Created While Employed By Mattel**

Mattel will seek to dispose of any remaining challenges to the enforceability or interpretation of the Inventions Agreement ("Agreement").  Defendants' characterization of the Agreement as a "contract of adhesion" proves nothing, and the Court has previously ruled it is enforceable.  *See, e.g., Perdue v. Crocker National Bank*, 38 Cal. 3d 913, 925 (1985).  Similarly, defendants' contention that the Inventions Agreement does not encompass copyright subject matter and/or ideas is without merit and simply misreads the Agreement.  Under the Agreement, Mattel owns all doll ideas and/or designs conceived or created by Bryant while in Mattel's employ.

**Defendants' Affirmative Defenses of Estoppel, Waiver, Consent and Acquiescence Fail**

Mattel will seek a ruling that Defendants' other defenses to the enforceability of the Agreement also fail.  The defense that Mattel waived (or is estopped, or consented, or acquiesced or has unclean hands) by allegedly not prosecuting misconduct similar to Bryant's fails both as a matter

EXHIBIT __2__

PAGE __1__

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

of law and on the facts. Under the Copyright Act and in common law, a failure to prosecute rights against a third party is not probative of intent to waive rights against a defendant. *See, e.g., Paramount Pictures Corp. v. Carol Publishing Group,* 11 F. Supp. 2d 329, 337 (S.D.N.Y. 1998) ("Extending the doctrine of estoppel so that a defendant may rely on a plaintiff's conduct toward another party is both unsupported by law and pernicious as a matter of policy."); *Emerson Electric Co. v. Rogers,* 418 F.3d 841, 844-845 (8th Cir. 2005).

Moreover, these defenses are not supported by the evidence. To establish its affirmative defenses, defendants bear the burden of proving that Mattel intentionally relinquished known rights after full knowledge of all the facts. Because no reasonable trier of fact could find that Mattel intentionally relinquished its rights to the Bratz franchise after full knowledge of defendants' misconduct, Mattel is entitled to summary judgment on these defenses.

**Bryant Is Liable for Breach of Fiduciary Duty and The Duty of Loyalty, and Breach of Contract, and MGA Is Liable for Aiding and Abetting These Breaches**

Mattel will seek a finding of liability for Mattel's claims and counterclaims for breach of contract, breach of fiduciary duty, and breach of the duty of loyalty against Bryant and a finding of liability against MGA Entertainment, Inc. and Isaac Larian for Mattel's claims for aiding and abetting breaches of duty of loyalty and breach of fiduciary duty. Under California law every employee owes a duty of undivided loyalty to his employer, and may not take any action that is adverse to his employer. *See, e.g., Stokes v. Dole Nut Co.,* 41 Cal. App. 4th 285, 295 (1995). "Where a person is employed to design improvements to the product of his employer, or to design new products for his employer, and he does so, he may not use the results of such work for his own benefit and particularly not to the detriment of his employer." *Daniel Orifice Fitting Co. v. Whalen,* 198 Cal. App. 2d 791, 797 (1962). Bryant also owed Mattel a fiduciary duty because the Agreement imposes on him a position of trust, and because Mattel granted Bryant access to highly confidential information, among other reasons. *See, e.g., Stevens v. Marco,* 147 Cal.App. 2d 357 (1956) (fiduciary relationship existed because one party confidentially entrusted another with "a new and valuable idea"); *Michelson v. Hamada,* 29 Cal. App. 4th 1566, 1581 (1994) ("Confidential and fiduciary relations are, in law, synonymous, and may be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another.")

Discovery has uncovered extensive evidence of Bryant's disloyalty. Bryant worked for MGA (and was paid by MGA) while employed by Mattel. Bryant secretly entered into a contract with MGA that required him to provide design services to MGA on a "top priority" basis while employed by Mattel. Bryant worked on a line of dolls while employed by Mattel and did not disclose that work to Mattel. These are clear breaches of Bryant's duties to Mattel.

MGA and Isaac Larian knew that Bryant was a Mattel employee when they first met with him. They also knew or should have known that Bryant had pre-existing obligations to Mattel, including a duty to assign to Mattel all designs created while employed there. This and other evidence amply support a finding of aiding and abetting liability.



EXHIBIT __2__

PAGE __8__

**Defendants' Affirmative Defenses of Unclean Hands Fail As To Phase 1 Claims and Counterclaims**

Defendants' unclean defense fails as to all Phase 1 claims and counterclaims because the alleged improper conduct that forms the basis for the MGA defendants' unclean hands defense has nothing to do with the claims in Phase 1. Further, the alleged defense is unsupported by evidence.

**Defendants' Statute of Limitations and Laches Affirmative Defenses Fail**

The Court has rejected defendants' statute of limitations and laches defenses in the past. Mattel will seek a ruling rejecting these defenses. The shortest pertinent statute of limitations is two years. *See, e.g.,* Cal. Code of Civ. Proc. § 339(1). Because Mattel filed suit less than two years after its claims accrued and its Phase 1 counterclaims relate back, its claims are timely.

The defense of laches also fails. "Laches is not available as a defense to an action at law." *Abbott v. City of Los Angeles,* 50 Cal. 2d 438, 462 (1958). Moreover, defendants have not been prejudiced by any alleged delay. Even after Mattel brought suit, they proceeded with developing and producing the infringing Bratz dolls. *See, e.g., Russell v. Price,* 612 F.2d 1123, 1126 (9th Cir. 1979) ("Defendants at no time changed their film distribution activities in reliance on [Plaintiff's] conduct. Defendants cite no case in which a false sense of security alone has been enough to bar an otherwise proper claim."); *Roulo v. Russ Berrie & Co., Inc.,* 886 F.2d 931, 942 (7th Cir. 1989) (no detrimental reliance where the defendant commenced marketing of infringing works prior to learning of the plaintiff's claim). Mattel did not unreasonably delay filing suit.

**Defendants' *Bona Fide* Purchaser, Good Faith and 17 U.S.C. § 205(d) Affirmative Defenses Fail**

Defendants assert that Section 205(d) of the Copyright Act bars Mattel's claim for copyright infringement, and also assert a variety of other "good faith" defenses. These defenses lack merit. MGA has admitted that it did not record its purported assignment from Bryant, rendering any claim to priority under Section 205 invalid. Moreover, the facts show that MGA has not acted in good faith, and, without more, good faith is not a defense to Mattel's copyright infringement claim.

**Mattel Owns Drawings Bryant Created While Employed by Mattel**

Mattel also intends to seek a finding that specific drawings which Bryant indisputably created while employed by Mattel are owned by Mattel under the Inventions Agreement.

* * *

3



In addition to these substantive issues, we also wish to invite a discussion the length of the motion papers, and the appropriate briefing schedule. We look forward to discussing these matters with you. Please let us know your availability.

Very truly yours,

B. Dylan Proctor
07209/2378698.3

EXHIBIT 2

PAGE 10

# EXHIBIT 3

RECEIVED

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP      FEB 1 3 2008

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

DIRECT DIAL
(213) 687-5328
EMAIL ADDRESS
JRUSSELL@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
NEWARK
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

February 11, 2008

## VIA FACSIMILE & U.S. MAIL

B. Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

                    RE:     *Mattel, Inc. v. Bryant*

Dear Dylan:

        We received your letter of February 5, 2008 requesting a conference of counsel regarding Mattel's Phase 1 motion for summary judgment. I have spoken with Mr. Bryant's counsel and MGA and Mr. Bryant likewise request a conference of counsel to discuss MGA's and Mr. Bryant's Phase 1 summary judgment motions, which will raise many of the issues raised in Mattel's letter. In light of pending discovery and expert reports, neither MGA nor Mr. Bryant are prepared yet to provide a summary of issues in any detail. However, we will be in a position to meet and confer on these issues by the end of the week and propose that counsel set the conference for Friday, February 15, 2007, at a time and place that are mutually convenient to all counsel. At that same meeting, we would like to discuss the briefing schedule and whether any party or parties believe that they will need additional pages on the briefs. Please let us know your availability for Friday.

                    Sincerely,

                    Jason D. Russell

                              EXHIBIT __3__
                              PAGE __11__

# EXHIBIT 4

**RECEIVED**

FEB 1 2 2008

1  THOMAS J. NOLAN (Bar No. 66992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone: (213) 687-5000
   Facsimile: (213) 687-5600
4  E-mail: tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No. 40892)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  Four Embarcadero Center, 38th Floor
   San Francisco, California 94111-5974
7  Telephone: (415) 984-6400
   Facsimile: (415) 984-2698
8  E-mail: rkennedy@skadden.com

9  Attorneys for MGA Entertainment, Inc.,
   MGA Entertainment (HK) Limited,
10 MGAE De Mexico, S.R.L. De C.V., and ISAAC LARIAN

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                   EASTERN DIVISION

14  CARTER BRYANT, an individual,        ) CASE NO. CV 04-9049 SGL (RNBx)
                                          )
15              Plaintiff,                ) Consolidated with Case No. 04-9059
                                          ) and Case No. 05-2727
16       v.                               )
                                          ) **DISCOVERY MATTER**
17  MATTEL, INC., a Delaware             )
    corporation,                          ) **[To be heard by Discovery Master**
18                                        ) **Hon. Edward A. Infante (Ret.)]**
                                          )
19              Defendant.                ) **MGA'S MEMORANDUM OF**
                                          ) **POINTS AND AUTHORITIES IN**
20  _____       ) **OPPOSITION TO MATTEL'S**
                                          ) **MOTION TO COMPEL MGA TO**
21  Consolidated with MATTEL, INC. v.    ) **PRODUCE COMMUNICATIONS**
    BRYANT and MGA                        ) **REGARDING THIS ACTION**
22  ENTERTAINMENT, INC. v.               )
    MATTEL, INC.                          ) **[Declarations of (1) Amy S. Park**
23                                        ) **and (2) Andrew C. Temkin filed**
                                          ) **concurrently herewith]**
24
25                                         Date:  TBD
                                           Time:  TBD
26                                         Place: TBD

27                                         EXHIBIT __4__

28                                         PAGE __12__

                         2-11-08

MGA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO
COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.   PRELIMINARY STATEMENT .................................................................... 1

II.   STATEMENT OF FACTS ........................................................................ 3

    A.   Nearly Three Years Ago, Mattel Served Request No. 48 and MGA Timely Objected to the Request and Refused to Produce Documents. .......................................................................... 3

    B.   Mattel Made No Attempt to Seek Production of Documents in Response to Request No. 48 for Nearly Three Years Until Two-and-a-Half Weeks Before the Discovery Cut-Off. ............................... 4

III.  ARGUMENT ...................................................................................... 6

    A.   The Discovery Master Should Reject Request No 48 Because It is Overly Broad and Unduly Burdensome. .............................................. 6

        1.   Even with Mattel's Proposed Modifications, Request No. 48 is Still Overly Broad and Unduly Burdensome. ................... 7

        2.   Mattel's Demand for Non-Privileged Communications Involving MGA's Past and Present Trial Counsel Is Particularly Egregious and Should Be Rejected. ...................... 12

        3.   The Discovery Master has Rejected Similar Requests as Overly Broad and Unduly Burdensome. .................................. 14

    B.   The Discovery Master Should Reject Request No. 48 Because it is Cumulative and Duplicative of the Mattel's Other Document Requests and Documents Mattel Has Already Received. .................. 16

    C.   *If* the Discovery Master Allows Some Discovery Based on Request No. 48, Cost-Shifting is Appropriate. .................................... 18

IV.  CONCLUSION .................................................................................... 20

EXHIBIT _4_

PAGE _13_

-i-

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Arnold v. Janssen Pharmaceutica, Inc.*, No. 01 C 8138, 2003 U.S. Dist.
LEXIS 16380 (N.D. Ill. Sept. 10, 2003) .............................................................. 13

*Funai Electric Co. v. Orion Electric Co.*, Nos. 02 Civ. 2605, 01 Civ. 3501,
2002 U.S. Dist. LEXIS 14466 (S.D.N.Y. Aug. 6, 2002) ..................................... 13

*Harnden v. Key*, No. CV F 02 6529 REC LJO P, 2006 U.S. Dist. LEXIS
94388 (E.D. Cal. Dec. 15, 2006) .......................................................................... 10

*Lectrolarm Custom System v. Pelco Sales, Inc.*, 212 F.R.D. 567 (E.D. Cal.
2002) ................................................................................................................ 17, 18

*M. McGee Design Studio v. Brinson*, No. 94 C 1644, 1994 U.S. Dist. LEXIS
9789 (N.D. Ill. July 14, 1994) .............................................................................. 13

*Mattel, Inc. v. Walking Mountain Products*, 353 F.3d 792 (9th Cir. 2003) ............ 12

*Michelle M. v. Dunsmuir Joint Union School District*, No. Civ. S-04-2411,
2006 U.S. Dist. LEXIS 14547 (E.D. Cal. May 15, 2006) ...................................... 1

*Miller v. Trans Union, LLC*, No. 06 C 2883, 2007 U.S. Dist. LEXIS 59730 (D.
Ill. 2007) ............................................................................................................... 17

*Pinnacle Pizza Co. v. Little Caesar Enterprises*, No. CIV 04-4170-KES, 2005
U.S. Dist. LEXIS 41062 (D.S.D. Nov. 2, 2005) ............................................. 15, 22

*Ridge Chrysler Jeep, L.L.C. v. Daimler Chrysler Services North America,
L.L.C.*, No. 03 C 760, 2004 U.S. Dist. LEXIS 26861 (N.D. Ill. Dec. 29,
2004) ....................................................................................................................... 9

*Ryan v. National Union Fire Insurance Co.*, No. 3:03-CV-00644, 2006 U.S.
Dist. LEXIS 7366 (D. Conn. 2006) ...................................................................... 17

*Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995) .................................... 10

*Twigg v. Pilgrim's Pride Corp.*, No. 3:05-CV-40, 2007 U.S. Dist. LEXIS
14669 (D.W. Va. Feb. 28, 2007) .......................................................................... 15

*In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331 (N.D. Ill. 2005) .............. 10

*In re Sulfuric Acid Antitrust Litigation*, 230 F.R.D. 527 (N.D. Ill. 2005) .......... 9, 10

*In re Urethane Antitrust Litigation*, No. 04-MD-1616-JWL-DJW, 2008 U.S.
Dist. LEXIS 1733 (D. Kan. Jan. 8, 2008) ............................................................ 15

*Visa International Serv. Associate v. JSL Corp.*, No. 2:01-cv-00294-LRH-
LRL, 2006 U.S. Dist. LEXIS 77451 (D. Nev. Oct. 20, 2006) ............................. 17

EXHIBIT __4__

PAGE __14__

-ii-

*West v. Miller*, No. 05 C 4977, 2006 U.S. Dist. LEXIS 56243 (N.D. Ill. Aug. 11, 2006), *aff'd*, 2007 U.S. Dist. LEXIS 11360 (N.D. Ill. Feb. 13, 2007)........... 8

## STATUTES

Fed. R. Civ. P. 26(b)(2)(C)(iii) ................................................................. 17

Fed. R. Civ. P. 37(a)(5)(B)...................................................................... 23

EXHIBIT __4__

PAGE __15__

-iii-

## MEMORANDUM OF POINTS AND AUTHORITIES

Counter-defendants MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V., and Isaac Larian (collectively, the "MGA Defendants") file this memorandum in opposition to Mattel's Motion to Compel MGA to Produce Communications Regarding this Action ("Motion to Compel").

## I.   PRELIMINARY STATEMENT

In March 2005, Mattel served document Request No. 48 that is now the subject of its Motion to Compel, broadly requesting that MGA produce "[a]ll non-privileged COMMUNICATIONS between YOU and any PERSON that REFER OR RELATE TO this action."[1]  In April 2005, MGA timely objected on numerous grounds, including irrelevance, overbreadth and undue burden, and unequivocally stated that "MGA will not produce documents in response to this request."[2]  Mattel's request was improper three years ago and it remains improper today.  Mattel's Motion to Compel fails to show otherwise.

Request No. 48 is patently overbroad and it is readily apparent that Mattel "made no attempt to narrow the request or identify specific responsive documents" when it drafted the request.  *Michelle M. v. Dunsmuir Joint Union Sch. Dist.*, No. Civ. S-04-2411, 2006 U.S. Dist. LEXIS 14547, at *10 (E.D. Cal. Mar. 15, 2006). Recognizing the request's overbreadth, Mattel now proposes to limit the request to communications regarding this action that involve either (1) at least one MGA employee who holds or held the position of manager or higher, (2) any MGA "agent" including MGA's current and former trial counsel, or (3) any former Mattel employee who later worked for MGA.

---

[1]  Declaration of B. Dylan Proctor in Support of Mattel's Motion to Compel ("Proctor Decl."), Ex. 1 at 16: 18-20 (Request No. 48).

[2]  Declaration of Amy S. Park in Support of MGA's Opposition to Mattel's Motion to Compel ("Park Decl."), Ex. D at 44:22-23.   EXHIBIT **4**

PAGE **16**

MGA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION

1    Even as modified, Request No. 48 remains overly broad and unduly
2  burdensome because Mattel's proposed "limitations" fail to narrow the request's
3  scope in any meaningful way. Request No. 48 still demands documents regarding a
4  very broad subject matter—communications "that REFER OR RELATE TO this
5  action." Indeed, the request has not been tailored to address any specific relevant
6  issue in this litigation and remains nothing more than a generalized catch-all request
7  for an untold number of communications that might conceivably be related in any
8  way to this case. In addition, Mattel's proposed modifications do little to reduce the
9  burden imposed by the request because Mattel's categories exclude only a narrow
10  subset of communications had between lower-level employees or between those
11  employees and third parties, while still demanding all communications had by the
12  more-than-200 employees who now serve or once served at the manager level and
13  above, regardless of whom that manager spoke with.

14    Moreover, Mattel's purported limitations do not eliminate the most egregious
15  aspect of Request No. 48—Mattel's demand for all non-privileged communications
16  involving MGA's past and present trial counsel in this *ongoing* litigation. Mattel's
17  assertion that such communications might reveal impeachment evidence does not
18  establish any compelling need for the documents. Nor does it justify invading the
19  litigation files of MGA's attorneys and forcing them spend countless hours
20  reviewing documents – nearly all of which would presumably "refer" or "relate" to
21  this action and most of which would be privileged – to try to cull out the relatively
22  small set of non-privileged communications that may be responsive to Request No.
23  48. The sheer burden of that undertaking outweighs any marginal benefit to Mattel.

24    Mattel asserts that Request No. 48 seeks documents relevant to bias and its
25  RICO claims. But that assertion fails to justify Mattel's sweeping demand.
26  Regardless of whether *some* documents responsive to Request No. 48 might arguably
27  be relevant to bias and to Mattel's RICO claims, the request, as drafted and as
28  modified, is too broad, sweeping in substantial amounts of irrelevant information

Exhibit 

-2-

PAGE 

MGA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO
COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION

1 (including information relating to Phase 2, which has been stayed).  Mattel cannot
2 use a shotgun approach to discovery in the hopes that some relevant information
3 might be produced.  Mattel is obligated to tailor discovery requests to its specific
4 needs. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir.
5 2003) (quashing subpoena issued by Mattel and Quinn Emanuel where they made
6 "'[n]o attempt … to try to tailor the information request to the immediate needs of
7 the case'") (first alteration in original) (quotations and citations omitted).  Mattel has
8 failed to comply with its discovery obligations.

9      Request No. 48 is also improper because it (i) seeks documents that are
10 duplicative and cumulative of documents that MGA has already produced in
11 response to Mattel's 2700+ other requests for production, or (ii) is similar to other
12 sweeping requests that the Discovery Master has rejected as improperly overbroad.

13      Over the past four years, Mattel has received more than 4.2 million pages of
14 documents in response to more than 2,700 document requests.  Now, with the
15 discovery period over, MGA should not be forced to spend its valuable trial
16 preparation time engaged in a fishing expedition for documents that are largely
17 irrelevant, are duplicative or cumulative of documents that have already been
18 produced, or where the marginal relevance outweighs the significant burden imposed
19 on MGA.  Accordingly, Mattel's Motion to Compel should be denied.

20 **II.    STATEMENT OF FACTS**

21      **A.    Nearly Three Years Ago, Mattel Served Request No. 48 and MGA
22           Timely Objected to the Request and Refused to Produce Documents.**

23      On March 14, 2005, Mattel served MGA with Mattel Inc.'s First Set of
24 Requests for Production of Documents and Tangible Things to MGA Entertainment
25 Inc. ("First Set of Requests"), which contained 100 requests.[3]  Request No. 48 from
26 that set—the only request at issue in the Motion to Compel—requests:

27 _____
28 [3] *See* Proctor Decl., Ex. 1.

EXHIBIT __4__

PAGE __18__

-3-

All non-privileged COMMUNICATIONS between YOU and any PERSON that REFER OR RELATE TO this action.[4]

The First Set of Requests broadly defined "YOU" to mean "MGA Entertainment, Inc. and any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control."[5]  It also defined "REFER OR RELATE TO" expansively to mean "constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner."[6]

On April 13, 2005, MGA timely responded to Mattel's First Set of Requests.[7] MGA objected to Request No. 48 for on numerous grounds, including irrelevance, overbreadth and undue burden.[8]  MGA unequivocally stated that "MGA will not produce documents in response to this request."[9]

**B.    Mattel Made No Attempt to Seek Production of Documents in Response to Request No. 48 for Nearly Three Years Until Two-and-a-Half Weeks Before the Discovery Cut-Off.**

Since April 2005 when MGA notified Mattel that it would not produce documents in response to Request No. 48, the MGA Defendants have produced more than 4.2 million pages of documents in response to more than 2,700 other individual requests for production propounded by Mattel.[10]

---

[4] Proctor Decl., Ex. 1 at 16: 18-20.
[5] Proctor Decl., Ex. 1 at 2.
[6] Proctor Decl., Ex. 1 at 3.
[7] *See* Park Decl., Ex. D.
[8] Park Decl., Ex. D at 44:9-15.
[9] Park Decl., Ex. D at 44:22-23.
[10] Park Decl. ¶ 7.

EXHIBIT __4__

PAGE __19__

-4-

1    Despite having ample opportunities since April 2005 to raise any issue
2  regarding MGA's response to Request No. 48, Mattel did nothing with respect to the
3  request until January 10, 2008—nearly three years later.[11]  On that day, Mattel
4  requested to meet and confer with MGA on various requests, including Request No.
5  48.[12]  Between January 18, 2008, and February 4, 2008, the parties conferred
6  regarding several requests, including Request No. 48.[13]

7    During the meet-and-confer sessions, MGA reiterated its previously asserted
8  objections to Request No. 48.[14]  MGA also stated that those objections, which were
9  apt three years ago when MGA served its objections to the request, applied with
10  greater force now because the parties were on the eve of the Phase 1 fact discovery
11  cut-off and in response to other requests, MGA had already produced more than four
12  million pages of documents, many of which are also responsive to Request No. 48.[15]

13    Although Mattel asserts that it "narrowed the Request to substantially limit"
14  the scope of requested documents, the record shows otherwise.  In fact, Mattel
15  offered to exclude certain types of lower-level employee communications from the
16  scope of Request No. 48, but would not agree to any other meaningful limitation.[16]
17  For example, Mattel still demanded that MGA produce all communications
18  concerning this action that involve any MGA employee that now holds or once held
19  a position at the manager level and above – a request that implicates more than 200
20  MGA employees.

21    Even more egregiously, Mattel refused to exclude communications involving
22  MGA's past or present trial counsel in this case, even though MGA made clear that

23

24    [11] Park Decl., Ex. G.
25    [12] Park Decl., Ex. G.
26    [13] Park Decl. ¶ 9 & Exs. H, I; Proctor Decl. ¶¶ 5, 6 & Ex. 4.
      [14] Park Decl. ¶ 12.
27    [15] Park Decl. ¶ 12.
28    [16] Park Decl. ¶ 13.

EXHIBIT __4__

PAGE __20__

1  the request for such documents was improper, overly broad and unduly burdensome,

2  in particular because it would require MGA to examine virtually ever

3  communication had by its current and former counsel in this matter since one would

4  expect that nearly every communication by those firms would "refer" or "relate" to

5  this action.[17]  MGA further explained that the fact that Mattel is not seeking

6  privileged communications does not alleviate the burden because MGA would still

7  have to review each communication to determine whether it is privileged or contains

8  only some privileged material that presumably would have to be redacted.[18]

9        MGA made clear that Mattel's demand to search for and produce attorney

10  communications in respect of this ongoing litigation was wholly improper, and that

11  Mattel's demand for all non-privileged communications by management-level

12  employees was likewise an improper fishing expedition.  In the spirit of compromise,

13  however, as to the request for management-level communications, MGA stated that

14  if Mattel insisted in proceeding with such a fishing expedition, MGA would agree to

15  search for and produce responsive communications *if* Mattel would agree to pay the

16  costs.[19]

17        The parties did not reach any agreement regarding Request No. 48, and Mattel

18  filed its Motion to Compel a few hours later.

19  **III.  ARGUMENT**

20        **A.    The Discovery Master Should Reject Request No 48 Because It is**
             **Overly Broad and Unduly Burdensome.**
21

22        Request No. 48 is an overly broad and unduly burdensome catch-all request

23  designed to capture virtually *any* communication concerning this case.  Such

24  requests are improper and courts generally decline to enforce them.  *See, e.g., Arnold*

25  *v. Janssen Pharmaceutica, Inc.*, No. 01 C 8138, 2003 U.S. Dist. LEXIS 16380, at *1

---

26  [17] Park Decl. ¶ 17.

27  [18] *Id.*

28  [19] Park Decl. ¶ 15.

EXHIBIT __4__

PAGE __21__

-6-

1  (N.D. Ill. Sept. 10, 2003) (denying a motion to compel where a request for
2  production was so broad it essentially asked for any possible relevant document
3  which plaintiff failed to request in any other request); *M. McGee Design Studio v.*
4  *Brinson*, No. 94 C 1644 1994 U.S. Dist. LEXIS 9789 (N.D. Ill. July 14, 1994)
5  (Federal Rules encourage parties to present their general need for information in
6  discrete, focused requests, and seek to prevent broad, catch-all document requests);
7  *Funai Elec. Co. v. Orion Elec. Co.*, Nos. 02 Civ. 2605, 01 Civ. 3501, 2002 U.S. Dist.
8  LEXIS 14466, at *12 (S.D.N.Y. Aug. 6, 2002) (denying a motion to compel
9  production on a request seeking all documents that refer to or constitute
10 communications between Funai and Orion, including between counsel, and between
11 Funai and any third-party "pertaining to Orion or any Orion product" as overbroad
12 and "tantamount to asking for 'discovery on issues in the complaint.'" (citations
13 omitted).[20]

14      Mattel effectively admits that Request No. 48 as drafted is overly broad
15 because it does not seek production of all documents responsive to the request.
16 Indeed, Mattel acknowledges that Request No. 48 is broad enough to cover "random,
17 low level employees' uninformed discussions about this action"—which are
18 undeniably irrelevant.[21] Thus, there is no question that Request No. 48 as drafted is
19 overly broad and improper on its face.  Moreover, Mattel's proposed "limitations" do
20 nothing to correct the overbreadth or undue burden imposed by Request No. 48.

21          **1.      Even with Mattel's Proposed Modifications, Request No. 48 is
              Still Overly Broad and Unduly Burdensome.**
22

23

24

---

25      [20] Mattel incorrectly cites *Funai Elec.* as "overruling overbreadth objection to
    plaintiff's requests for production calling for 'all communications' between defendant
26  and any third party pertaining to plaintiff or plaintiff's products." (Mot. to Compel at
    6:9-12.)  As shown in the text above, that case stands for *the exact opposite
27  proposition*—namely, that such a request is overbroad.

        [21] Mot. to Compel at 12:11-13.

EXHIBIT _4_

PAGE _22_

MGA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO
COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION

1        Recognizing that Request No. 48 is overly broad and unduly burdensome,

2  Mattel's Motion to Compel now proposes to seek only the following documents in

3  response to Request No. 48:

4        (1) communications that involve at least one MGA employee who holds or

5  held a position of manager or higher;

6        (2) communications that involve MGA's agents and/or attorneys acting on

7  MGA's behalf, including MGA's past and present trial counsel; and

8        (3) communications that involve a former Mattel employee who

9  communicated about this action while employed by MGA, regardless of title.[22]

10        Mattel's proposed modifications, however, exclude only a very narrow set of

11  communications—*i.e.*, communications involving MGA employees who have never

12  worked for Mattel or have never held the position of manager or higher at MGA.

13  Although Mattel declares this modification to be "significant," as demonstrated

14  below, Mattel's proposed modification fails to meaningfully narrow the scope of

15  Request No. 48 or reduce the undue burden that would be imposed on MGA if it

16  were required to collect and produce responsive documents.

17        Even as modified, Request No. 48 still requires the production of

18  communications concerning a very broad subject matter—communications "that

19  REFER OR RELATE TO this action." As such, Request No. 48 is still overly broad

20  and unduly burdensome because it is essentially remains a generalized catch-all

21  request for communications that might be related in any conceivably way to this case.

22  Numerous courts have rejected such requests as overly broad and unduly

23  burdensome. *See In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL-DJW, 2008

24  U.S. Dist. LEXIS 1733, at *21 (D. Kan. Jan. 8, 2008) ("[T]his Court has held on

25  numerous occasions that a discovery request is overly broad and unduly burdensome

26  on its face if it uses an omnibus term such as 'relating to,' 'pertaining to,' or

27

28  [22] Mot. to Compel at 5:3-8.

EXHIBIT 4

PAGE 23

-8-

1   'concerning' to modify a general category or broad range of documents or
2   information.); *Twigg v. Pilgrim's Pride Corp.*, No. 3:05-CV-40, 2007 U.S. Dist.
3   LEXIS 14669, at *26-30 (D. W. Va. Feb. 28, 2007) (request for "all other related
4   documents" found facially overbroad and unduly burdensome); *Pinnacle Pizza Co. v.*
5   *Little Caesar Enters., Inc.*, No. CIV 04-4170-KES, 2005 U.S. Dist. LEXIS 41062
6   (D.S.D. Nov. 2, 2005) (denying motion to compel production responsive to request
7   because marginal benefit was outweighed by undue burden created by omnibus
8   phrase in request).

9       The overbreadth of Mattel's modified version of Request No. 48 is readily
10  apparent when the scope of the request is compared to the issues that Mattel claims
11  the requested documents are relevant to.  As the moving party, Mattel bears the
12  burden of showing that Request No. 48 seeks relevant documents. *See Soto v. City*
13  *of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).  Mattel advances two arguments
14  as to why Request No. 48 seeks relevant documents.  First, Mattel argues that the
15  request seeks information relevant to potential bias of witnesses because
16  communications might involve discussions of a witness's prospective testimony or
17  might show that MGA agreed to pay a witness's fees.[23]  Second, Mattel argues that
18  Request No. 48 seeks information relevant to its RICO counterclaims because
19  communications might evidence commission of alleged predicate acts.[24]  Neither
20  assertion justifies the expansive scope of Request No. 48.

21      For example, Mattel contends that the requested documents may reveal
22  communications showing that MGA has agreed to pay fees for witnesses.  Request
23  No. 48 is hardly an efficient or effective means to obtain such information because
24  the request does not identify any particular witnesses, nor is it tailored to seek only
25  those communications that relate to offers or agreements by MGA to pay fees.

26

27    [23] Mot. to Compel at 6:16-7:9.
28    [24] Mot. to Compel at 7:20-9:23, 10:22-11:21.

EXHIBIT **4**

PAGE **24**

-9-

1 │ Similarly, Mattel's assertion that Mr. Larian might have discussed prospective

2 │ testimony with his brother Farhad Larian or other witnesses does not explain why

3 │ Mattel needs communications involving hundreds of other MGA employees, agents,

4 │ or attorneys.[25]

5 │      Mattel's relevance argument regarding its RICO claims is equally unavailing.

6 │ Mattel's RICO claim is a Phase 2 issue.[26]  The Court has ordered that "[a]ll

7 │ discovery related to Phase 2 . . . is STAYED until further order of the Court."[27]  Thus,

8 │ Mattel cannot rely on its RICO claims to justify its demand for any communications

9 │ at this time.[28]

10 │      Because Request No. 48, as drafted or as modified, is not tailored to seek the

11 │ information that Mattel claims it needs, the request is over broad and should be

12 │ rejected. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir.

13 │ 2003) (quashing subpoena issued by Mattel and Quinn Emanuel where they made

14 │ "'[n]o attempt ... to try to tailor the information request to the immediate needs of

15 │ the case'") (first alteration in original) (quotations and citations omitted).

16 │      Mattel's proposed modification also does not alleviate Request No. 48's

17 │ overbreadth or undue burden with regard to the number of individuals encompassed

18 │ by the request.  For example, Mattel claims to exclude communications involving

19 │ _____

20 │ [25] Mot. to Compel at 6:19-23.

21 │ [26] Park Decl., Ex. B (Mattel's Modification of Defendants' Proposal, listing RICO
counterclaims as Phase 2 issues) and Ex. C at 2 (July 2, 2007 Minute Order of J.
Larson adopting Mattel's Modification of Defendants' Proposal).

22 │ [27] Park Decl., Ex. A at 3.

23 │ [28] Mattel also cannot rely on its RICO claims to demonstrate the relevance of
Request No. 48 because Request No. 48 is not targeted at communications relating to
24 │ any particular allegations underlying Mattel's RICO claim or involving any of the
specific individuals alleged to have participated in the alleged criminal enterprise.
25 │ For example, in its counterclaim, Mattel concedes that numerous former Mattel
employees who went to work for MGA have nothing to do with Mattel's RICO
26 │ claims. (Mattel's Counterclaim at ¶ 77 ("Mattel believes that some of those former
Mattel employees may be observing their obligations not to misappropriate, disclose
27 │ or use Mattel's confidential and proprietary information.").)  Request No. 48,
however, seeks communications involving any former Mattel employee, regardless
28 │ of whether that employee is believed to have done anything wrong. EXHIBIT 4

PAGE 25

-10-

1  lower-level employees, but, as shown above, Mattel's exclusion only applies to a
2  narrowly defined subset of lower-level employee communications. Additionally,
3  although Mattel claims that it does not seek any irrelevant or uninformed discussions
4  about the case, Mattel assumes without any basis that the persons who fall within its
5  proposed categories are all informed about the case and have based any discussions
6  about the case on such information.

7      In addition, the sheer number of MGA employees who would fall within the
8  scope of the modified Request No. 48 proposed by Mattel renders that request
9  improper. Mattel's first category (*i.e.,* MGA employees who hold or held a position
10  of manager or higher) encompasses 204 employees, and the third category (*i.e.,*
11  former Mattel employees who have worked for MGA) covers additional employees
12  that may exceed 70 or more.[29] Requiring MGA to review the hard-copy and email
13  files of so many employees in the hopes of finding communications that Mattel does
14  not already have and that might arguably be relevant is excessive and unduly
15  burdensome, particularly at this late stage.

16     Although various unknowns make it impossible to estimate at this time the
17  actual financial burden having to produce the documents sought by Mattel would
18  impose on MGA, it is clear that MGA would incur potentially hundreds of thousands
19  of dollars in additional costs and would waste valuable trial preparation time.
20  Adding name restrictions into MGA's electronic database for the current and former
21  MGA managers and former Mattel employees alone would cost at least $6,750-
22  $8,750.[30] MGA would also incur at least an additional $2,700-$2,800 for every 300-
23  500 documents that must be reviewed. Conservatively assuming that each of the
24  approximately 274 employees implicated by Request No. 48 has only 100 documents
25
26
27  [29] Park Decl. ¶¶ 16, 18; Declaration of Andrew C. Temkin in Support of MGA's
Opposition to Mattel's Motion to Compel ("Temkin Decl."), ¶ 3.
28  [30] Temkin Decl. ¶ 5.

EXHIBIT __4__

PAGE __26__

-11-

1  to review, it would cost $147,960-$246,000 to review the documents.[31]  Given that
2  the volume of documents to be reviewed for responsiveness would likely exceed 100
3  documents per employee, the actual cost would likely be much higher.  Of course,
4  these estimates do not take into account the countless documents that – as explained
5  below – would have to be searched if MGA were required to examine all of the
6  communications involving its trial counsel.

        **2.**    **Mattel's Demand for Non-Privileged Communications
Involving MGA's Past and Present Trial Counsel Is
Particularly Egregious and Should Be Rejected.**

9        The overbreadth and undue burden imposed by Request No. 48 is especially
10  pronounced with respect to Mattel's demand for communications that involve
11  MGA's agents and/or *attorneys* acting on MGA's behalf.  Rule 26(b)(2)(C)(iii)
12  authorizes the Court to limit discovery where the burden or expense of the proposed
13  discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C)(iii); *Visa Int'l*
14  *Serv. Assoc. v. JSL Corp.*, No. 2:01-cv-00294-LRH-LRL, 2006 U.S. Dist. LEXIS
15  77451 (D. Nev. 2006); *Miller v. Trans Union, LLC*, No. 06 C 2883, 2007 U.S. Dist.
16  LEXIS 59730 (D. Ill. 2007).  In cases involving requests for production of attorney
17  communications, care should be taken since "[t]here is a much stronger likelihood
18  that communications between counsel and client after the commencement of an
19  action will be entangled with privileged information relating to that action." *Ryan v.*
20  *Nat'l Union Fire Ins. Co.*, No. 3:03-CV-00644, 2006 U.S. Dist. LEXIS 7366, *29 (D.
21  Conn. Feb. 28, 2006).  Indeed, this entanglement is one of the very things that
22  contributes to the difficulty of sorting out what should be produced and what should
23  be withheld. Because of the difficulty of sorting our privileged documents from the
24  non-privileged documents, courts often find that the burden outweighs any minimal
25  benefit that might flow from discovery of the documents.

26

27

28  [31] Temkin Decl. ¶ 4, 6 (assuming the lower rate).

EXHIBIT __4__

PAGE __27__

-12-

1    Mattel should not be permitted to obtain communications from MGA's current

2  or prior counsel that relate or refer to this *ongoing* litigation.  Mattel's assertion that it

3  only seeks non-privileged documents is largely meaningless because MGA would

4  still be required to scrutinize carefully every single document for privilege given that

5  most of the files in the possession of MGA's trial counsel would be privileged.

6  When considering the sheer volume of paper that this case has already generated

7  over nearly four years and the fact that the overwhelming majority of those

8  documents relate or refer to this action, the task of reviewing and potentially

9  redacting communications involving trial counsel is more than merely unduly

10  burdensome—it borders on *impossibility*.[32]

11    In a similar case, *Lectrolarm Custom Sys. v. Pelco Sales, Inc.*, the court held

12  that the plaintiff's broad discovery request (similar to Mattel's request here) was

13  impermissibly designed to discover the thoughts, opinions and strategy of the

14  defendant and not to obtain factual information about the matters at issue:

15    All documents that set forth, ***refer or relate to
    communications***, meetings, contacts or other dealings
16    between Pelco, directly or ***through its attorneys*** or other
    parties and Fireman's Fund Insurance Company concerning
17    this lawsuit, Lectrolarm, the '088 patent, SPECTOR mark
    and/or the SPECTRA mark.
18

19  212 F.R.D. 567, 569 (E.D. Cal. 2002) (emphasis added).  This, of course was not

20  tolerated by the court, which denied the plaintiff's motion to compel.  *Id.* at 571.

21  Mattel's tactics here likewise should not be countenanced.

22

23

24    [32] Because Request No. 48 is limited to non-privileged communications, Mattel
    presumably does not seek a privilege log with respect to any withheld documents.
25    However, to the extent Mattel does seek a privilege log, Mattel's request would
    impose an even greater undue burden in view of the many thousands of privileged
26    communications involving MGA's trial counsel that have occurred since this
    litigation commenced.  *See Aiken v. Rimkus Consulting Group, Inc.*, 2007 WL
27    1101210 (S.D. Miss. April 4, 2007) ("[T]he Court finds that the litigation file of
    Defendant's counsel of record in this case is not discoverable and need not be
28    included in a privilege log.")                    EXHIBIT __4__

MGA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO
COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION

1    As discussed above, MGA would incur a substantial cost in trying to identify,

2  review and produce documents responsive to Request No. 48.  Moreover, the costs

3  relating to collecting, reviewing and potentially redacting attorney files would easily

4  dwarf the estimates relating to MGA employee communications, in view of the

5  volume of paper that this case has generated so far, the fact that almost every

6  attorney communication would refer or relate to this action, and the fact that each

7  such communication would require special scrutiny to avoid waiving any privilege.[33]

8  In addition, because MGA has had three separate firms represent it in connection

9  with this litigation, the number of attorneys whose files would have to be reviewed is

10  considerable.

11    Under the circumstances, Mattel has failed to demonstrate a compelling need

12  for all non-privileged communications involving MGA's attorneys relating to this

13  action and MGA should not be required to incur the substantial expense to search

14  through its attorneys' files for such documents.

15         **3.    The Discovery Master has Rejected Similar Requests as
            Overly Broad and Unduly Burdensome.**

16

17    The Discovery Master has already considered *and rejected* requests similar to

18  Request No. 48 for their overbreadth and undue burden.  For example, the Discovery

19  Master rejected a similarly overbroad request for documents and communications

20  relating to this action from Mattel, Inc.'s First Set of Requests for Documents and

21  Things to Isaac Larian, which sought:

22    REQUEST FOR PRODUCTION NO. 196:

23         All DOCUMENTS RELATING TO any statements made by
           YOU to any stock analyst, investment analyst, investment bank,
24         institutional lender, or venture capital fund RELATING TO this
           ACTION.[34]
25

26

27  _____
    [33] Park Decl. ¶ 17.

28  [34] Proctor Decl., Ex. 7 at 49:6-9.

                              EXHIBIT 4

                        -14-    PAGE 29

1   In rejecting this request along with a group of other requests that included requests

2   for all communications between Mr. Larian and the press regarding Carter Bryant or

3   Mattel since 1999,[35] the Discovery Master held that "[a]lthough several of the

4   requests encompass potentially relevant documents, the requests are *overbroad* and

5   encompass documents that have *little to no relevance* to the claims and defenses in

6   the case. *Not one of the requests is limited to relevant subject matters* . . . ."[36]

7   Significantly, Request No. 196 to Mr. Larian is almost completely subsumed within

8   Request No. 48 at issue here, and thus much narrower than the request at issue here.

9   Nevertheless the Discovery Master rejected Request No. 196 as overbroad and

10  should reach the same conclusion with respect to the much broader Request No. 48.

11         Another similarly broad request that the Discovery Master has already

12  considered *and rejected* is Request No. 42 from Mattel, Inc.'s First Set of Requests

13  for Documents and Things Re Claims of Unfair Competition to MGA Entertainment,

14  Inc., which sought:

15         REQUEST FOR PRODUCTION NO. 42:

16              All COMMUNICATIONS between YOU and any individual
17         while the individual was employed by Mattel.[37]

18  In rejecting this request, the Discovery Master reasoned that "[a]lthough the request

19  may encompass relevant documents, it is overbroad insofar as it requires production

20  of all communications regardless of subject matter."[38]  Notably, the Discovery Master

21  later allowed a request to Isaac Larian for communications between Mr. Larian and

22  Mattel employees because the Court the request was "limited to communications

23  between Larian (*and not MGA or persons acting on his behalf*) and individuals

24

25  _____

26  [35] Proctor Decl., Ex. 7 at 48:17-27 (Request Nos. 192 & 194).

    [36] Park Decl., Ex. J at 13:20-26 (emphasis added).

27  [37] Proctor Decl., Ex. 6 at 22:17-19.

28  [38] Park Decl., Ex. K at 12:19-22.

                                        EXHIBIT 4

                                        PAGE 30

1 | employed at Mattel."[39]  Applying the same reasoning, the Discovery Master should
2 | reject Mattel's Request No. 48 because it is not reasonably limited in subject matter and
3 | is not restricted to any reasonable set of specifically identified individuals.

4 | **B.    The Discovery Master Should Reject Request No. 48 Because it is Cumulative and Duplicative of the Mattel's Other Document Requests and Documents Mattel Has Already Received.**

5 |

6 | Mattel's Request No. 48 has significant overlap with numerous requests for
7 | which the MGA Defendants have already produced responsive documents.  Where,
8 | as here, the value of further discovery is outweighed by the burden on the producing
9 | party because that party has already produced the substantive information sought by
10 | the propounding party, it is proper to deny a motion to compel.  *See Pinnacle Pizza*
11 | *Co. v. Little Caesar Enters., Inc.*, No. CIV 04-4170-KES, 2005 U.S. Dist. LEXIS
12 | 41062 (D.S.D. Nov. 2, 2005).

13 | In this case, MGA has already produced more than 4.2 million pages of
14 | documents in response to over 2700 document requests, many of which call for
15 | documents that are also responsive to Request No. 48.  Accordingly, the Discovery
16 | Master should reject Request No. 48 as unreasonably cumulative and duplicative.
17 | To illustrate the point, below is a table containing just some of the requests that
18 | overlap with Request No. 48 and in response to which the MGA Defendants have
19 | produced documents:

20 |

| Mattel, Inc.'s First Set of Requests for Documents and Things re Claims of Unfair Competition to MGA Entertainment, Inc. | |
|---|---|
| 44 | All COMMUNICATIONS between YOU and any PERSON RELATING TO the claims made in YOUR COMPLAINT or the facts that YOU contend support such claims. |
| 7 | All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, and ownership of the CONTESTED MGA PRODUCTS. |
| 8 | All DOCUMENTS RELATING TO COMMUNICATIONS with any |

---

[39] Park Decl., Ex. J at 14:21-23 (emphasis added).

EXHIBIT **4**

PAGE **31**

MGA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION

| | | |
|---|---|---|
| | | PERSON regarding the invention, creation, origin, conception, authorship, and ownership of all product packaging that provides a basis for any claim by YOU against MATTEL. |
| | 9 | All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of products and packaging that YOU contend provide a basis for any claim against MATTEL, whether or not such claim is made in the COMPLAINT. |
| | 12 | All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of all products and packaging that YOU contend MATTEL copied or infringed. |
| **Mattel, Inc.'s First Set of Requests for Production of Documents and Tangible Things to MGA Entertainment Inc.** | | |
| | 31 | All COMMUNICATIONS between YOU and BRYANT that REFER OR RELATE TO Mattel, Inc. or any officer, director, employee or representative of Mattel, Inc. |
| | 49 | ALL DOCUMENTS that REFER OR RELATE TO any indemnification that BRYANT has sought, proposed, requested or obtained in connection with this action |
| | 50 | ALL DOCUMENTS that REFER OR RELATE TO any indemnification that YOU have sought, proposed, requested or obtained in connection with this action |
| **Mattel, Inc.'s First Set of Requests for Documents and Things to Isaac Larian** | | |
| | 118 | All transcripts and video and/or audio recordings of statements made by any PERSON under oath, including without limitation all deposition transcripts, trial transcripts and arbitration transcripts, RELATING TO BRATZ (other than those taken in this ACTION when MATTEL's counsel was in attendance), including all such transcripts and video and/or audio recordings of statements by or on behalf of YOU. |
| | 147 | All DOCUMENTS RELATING TO any indemnification that BRYANT has sought, proposed, requested or obtained in connection with this ACTION. |
| | 153 | To the extent not covered by other Requests, all DOCUMENTS RELATING TO any indemnification that any PERSON has sought, proposed, requested or obtained in connection with this ACTION. |
| | 193 | All COMMUNICATIONS between YOU and any member of the press |

EXHIBIT _4_
PAGE _32_

| RELATING TO this ACTION. | |
|---|---|
| **Mattel, Inc.'s Subpoena to Farhad Larian** | |
| 25 | All DOCUMENTS RELATING TO this ACTION, including all COMMUNICATIONS relating thereto. |

Indeed, some of these requests go directly to the issues for which Mattel claims documents responsive to Request No. 48 are relevant. For example, Mattel contends that Request No. 48 seeks communications that may show MGA's agreement to pay fees for a witness. However, as shown above, Mattel already served at least four other requests that specifically address indemnification of others. Additionally, Mattel contends that it seeks communications between Mr. Larian and his brother Farhad Larian regarding this action. However, Mattel already sought and obtained documents from Farhad Larian covering the exact same subject.[40]

Because Request No. 48, as drafted and as modified, is unreasonably cumulative and duplicative of other discovery obtained by Mattel, Mattel's Motion to Compel should be denied.

### C.   *If* the Discovery Master Allows Some Discovery Based on Request No. 48, Cost-Shifting is Appropriate.

*If* the Discovery Master does decide to grant Mattel's Motion to Compel in any respect (which the Discovery Master should not), Mattel should bear the cost associated with the collection, review and production of such documents given the overbreadth, minimal relevance, and undue burden presented by Request No. 48, as well as the fact that Mattel delayed bringing the Motion for nearly three years.

As shown above, responding to Request No. 48 would be extremely burdensome and costly to MGA. That burden and cost is unwarranted because the request seeks far more discovery than what Mattel claims is relevant. In addition, because of Mattel's substantial delay in bringing this motion, searching for and

---

[40] Park Decl., Ex. L at 9 (Request No. 25).

EXHIBIT 4

PAGE 33

-18-

1 producing responsive documents would require MGA to divert resources from trial
2 preparation.

3       MGA timely objected to Mattel's First Set of Requests in April 2005 and
4 stated unequivocally that "MGA will not produce documents in response to this
5 request [Request No. 48]."[41] Mattel, however, waited until shortly before the close
6 of discovery to challenge MGA's objections to and refusal to produce documents in
7 response to Request No. 48. Mattel has offered no explanation for its long delay.
8 Under similar circumstances, courts have denied as untimely motions to compel that
9 the movant delayed filing until near the end of discovery. *See, e.g., West v. Miller*,
10 No. 05 C 4977, 2006 U.S. Dist. LEXIS 56243, at 16-17 (N.D. Ill. Aug. 11, 2006)
11 (denying as untimely motion to compel filed 11 days before discovery deadline
12 based on finding of waiver because of movant's undue delay), *aff'd*, 2007 U.S. Dist.
13 LEXIS 11360 (N.D. Ill. Feb. 13, 2007); *In re Sulfuric Acid Antitrust Litig.*, 230
14 F.R.D. 527, 534 (N.D. Ill. 2005) (finding motion to compel deposition testimony to
15 be unduly late where movants "had many, many months to assess" issue on which
16 they were moving); *Ridge Chrysler Jeep, L.L.C. v. Daimler Chrysler Servs. N. Am.,*
17 *L.L.C.*, No. 03 C 760, 2004 U.S. Dist. LEXIS 26861, at *13 (N.D. Ill. Dec. 29, 2004)
18 (finding motion to compel four days before discovery cutoff untimely after 13
19 months of inaction).

20       Here, the timing of Mattel's belated motion is significant because the parties
21 are in the process of preparing for Phase 1 trial, which is set to begin in May. Indeed,
22 the Court recognized the importance of having the parties focus their attention on
23 Phase 1 trial preparation by staying all Phase 2 discovery until after the Phase 1 trial.
24 MGA should not be forced to divert its attention away from trial preparation and
25 waste precious time and money responding to Mattel's overly broad and unduly

26

27 _____

28   [41] Park Decl., Ex. D at 44:22-23.

EXHIBIT **4**

PAGE **34**

-19-

1  burdensome document request.  If, however, any discovery is ordered, Mattel, not
2  MGA, should bear all costs.

3  **IV.    CONCLUSION**

4       For the foregoing reasons, the Discovery Master should deny Mattel's Motion
5  to Compel.

6

7  DATED:  February 11, 2008          SKADDEN, ARPS, SLATE, MEAGHER &
                                      FLOM, LLP
8

9
                                      By: /s/        Raoul D. Kennedy            .
10                                              RAOUL D. KENNEDY

11                                     Attorneys for Counter-Defendants
                                       MGA Entertainment, Inc.,
12                                     MGA Entertainment (HK) Limited,
                                       MGAE De Mexico, S.R.L. De C.V.,
13                                     and ISAAC LARIAN

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 4

PAGE 35

-20-

# EXHIBIT 5

## quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

February 7, 2008

VIA FACSIMILE AND U.S. MAIL

Matthew Werdegar, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

Re:    Mattel, Inc. v. Bryant, et al.

Dear Matthew:

I write further to our telephonic conference of yesterday, and in response to the several emails you have sent me since then.

As I explained during the conference, Bryant's First and Second Sets of Requests for Admission, Second Set of Interrogatories, and Fourth Set of Requests for Production were not properly served on Mattel. The Ninth Circuit held in Magnuson v. Video Yesteryear, 85 F.3d 1424, 1429-31 (9th Cir. 1996), that service is invalid unless carried out in a manner specifically allowed by Federal Rule of Civil Procedure 5. Federal Express and electronic mail — the only means of delivery Bryant used — are not permitted means of service under Rule 5. See Magnuson at 1431 ("Federal Express does not satisfy the requirements of Rule 5(b)."); FRCP(E) (service "by electronic means" allowed only "if the person consented in writing"). Moreover, Mattel has previously rejected defendants' requests that Mattel permit service by email, and defendants have never before even requested that Mattel agree to service by Federal Express.

The Ninth Circuit held in Magnuson that improper service will only be excused if there is both (1) actual service and (2) "exceptional good cause" for non-compliance with Rule 5. Magnuson at 1431. Whether the party served was prejudiced or not by the improper service is irrelevant. In

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
07975/2381171 SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

EXHIBIT 5

PAGE 36

fact, no prejudice was found in <u>Magnuson</u>, and the Ninth Circuit still held that service by fax and Federal Express was inadequate and would not be excused. In any case, Mattel indeed was prejudiced by Bryant's defective service, including because it led to internal docketing confusion regarding the Requests for Production you have now called to our attention.

Bryant has not presented *any* evidence that there was "exceptional good cause" for his improper service. Nor has Mattel ever accepted service of discovery requests by Bryant via Federal Express or email in the past. Therefore, service was invalid, and Mattel will not respond further to the discovery requests at issue herein. I have reviewed the authority you cited, <u>Salley v. Bd. of Governors, Univ. of N. Carolina</u>, 136 F.R.D. 417 (M.D. N.C. 1991), and do not believe it supports your position in this matter. Like <u>Magnuson</u>, the <u>Salley</u> case held that there must be a finding of "exceptional good cause" for improper service to be excused. The <u>Salley</u> court found that there was "exceptional good cause" for improper service of discovery requests on defendants in that case because they had accepted improper service of discovery requests on prior occasions without objection. <u>Id.</u> at 420-21. This is not the case with Bryant.

Moreover, the fact is that defendants themselves have mandated strict adherence to service rules in this case, including most recently when Mattel attempted to serve subpoenas after Judge Larson granted it leave to conduct additional depositions. Accordingly, it should come as no surprise, and is consistent with the parties' practice in this case, that Mattel is also requiring proper service of discovery with which it purportedly is served.

As I explained to you, the only exception to the foregoing is Interrogatory No. 20, to which Mattel will respond, pursuant to Bryant's and MGA's request and as Mattel has agreed, since you have expressly acknowledged that doing so will not constitute (and you will not argue constitutes) a waiver of Mattel's service objections as to other discovery.

On a separate matter, your characterization of what I said about the timeliness of motions to compel filed after the January 28, 2008 cutoff is inaccurate. As I made clear, which motions can or cannot be filed after the cutoff has to be assessed on a case by case basis in our view. Some motions, such as motions to enforce prior Orders or motions encompassed by a stipulation that permits it, clearly can be filed after the cutoff. Others, such as the motions Bryant apparently now contemplates filing, cannot be.

Please do not hesitate to contact me if you have further questions.

Very truly yours,

B. Dylan Proctor

07975/2381127.1                                    2

EXHIBIT ___5___

PAGE __37__

# EXHIBIT 6

1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  jkeker@kvn.com
   MICHAEL H. PAGE - #154913
3  mpage@kvn.com
   CHRISTA M. ANDERSON - #184325
4  canderson@kvn.com
   MATTHEW M. WERDEGAR - #200470
5  mwerdegar@kvn.com
   710 Sansome Street
6  San Francisco, CA 94111-1704
   Telephone: (415) 391-5400
7  Facsimile: (415) 397-7188

8  Attorneys for Plaintiff
   CARTER BRYANT
9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

13

14
   CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
15                                       (consolidated with CV 04-9059 & 05-
                 Plaintiff,              2727
16
       v.                                **DISCOVERY MATTER**
17
   MATTEL, INC. a Delaware              [To be hard by Discovery Mater Hon.
18 Corporation,                         Edward A. Infante (Ret.)]

19                 Defendant.           **STIPULATION AND [PROPOSED]
                                        ORDER REGARDING
20                                      EXTENSION OF TIME TO FILE
   CONSOLIDATED WITH MATTEL,            OPPOSITION TO MATTEL INC.'S
21 INC., v. BRYANT and MGA              MOTION TO COMPEL CARTER
   ENTERTAINMENT, INC. v.               BRYANT TO RESPOND TO
22 MATTEL, INC.                         MATTEL, INC.'S FIRST SET OF
                                        REQUESTS FOR ADMISSION TO
23                                      CERTAIN DEFENDANTS; AND
                                        [PROPOSED] ORDER**
24

25                                      Judge:    Hon. Stephen G. Larson
                                        Date Comp. Filed: April 13, 2005
26                                      Discovery Cut-Off: Jan. 28, 2008
                                        Pre-Trial Conference: May 5, 2008
27                                      Trial Date: May 27, 2008

28                                      EXHIBIT ___6___
                                                 38

_____
   STIPULATION AND [PROPOSED] ORDER REGARDING EXTENSION OF TIME TO FILE OPPOSITION
        TO MATTEL'S MOTION TO COMPEL; AND [PROPOSED] ORDER
                    CASE NO. CV 04-09049 SGL (RNBx)

411319.01

1  WHEREAS, Mattel, Inc. ("Mattel") served its First Set of Requests for

2  Admission Propounded to MGA Entertainment, Inc., Carter Bryant, MGA

3  Entertainment (HK) Limited, and Isaac Larian (the "Requests for Admission") on

4  December 27, 2007; and

5  WHEREAS, Carter Bryant's responses to the Requests for Admission were

6  due, pursuant to stipulation, on February 4, 2007;

7  WHEREAS, Carter Bryant served his responses to the Requests for

8  Admission on February 4, 2007;

9  WHEREAS, Mattel moved to compel responses to the Requests for

10  Admission on February 7, 2008 ("Mattel's Motion to Compel");

11  WHEREAS, Mattel and Bryant met and conferred regarding Bryant's

12  responses to the Requests for Admission on February 8, 2008;

13  WHEREAS, Bryant has stated his intention to submit supplemental and/or

14  amended responses to certain responses to the Requests for Admission; and

15  WHEREAS, Bryant and Mattel agree to meet and confer regarding any

16  supplemental and/or amended responses to the Requests for Admission served by

17  Bryant prior to the time Bryant serves his opposition to Mattel's Motion to

18  Compel;

19  THEREFORE, the undersigned parties, through their undersigned counsel,

20  stipulate and agree as follows:

21  1.  Bryant will have to and including February 15, 2008 to serve his

22     amended or supplemental responses to Mattel's First Set of Requests

23     for Admission Propounded to MGA Entertainment, Inc., Carter

24     Bryant, MGA Entertainment (HK) Limited, and Isaac Larian;

25  2.  The time for Bryant to serve his opposition to Mattel's Motion to

26     Compel is extended to and including February 22, 2008;

27  3.  The time for Mattel to serve its reply in support of Mattel's Motion to

28     Compel is extended to and including February 27, 2008

1

EXHIBIT 6

PAGE 39

411319.01

1    IT IS SO STIPULATED.

2    DATED: February 14, 2008        QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
3

4
                                     By _____
5                                       B. Dylan Proctor
6                                       Attorneys for Mattel, Inc.

7
     DATED: February 14, 2008        KEKER & VAN NEST, LLP
8

9
                                     By _____
10
11                                      Matthew M. Werdegar
                                        Attorneys for Carter Bryant
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
                                         EXHIBIT 6
27
                                         PAGE 40
28

                                         2

411319.01

1

## [PROPOSED] ORDER

2

Pursuant to the foregoing stipulation of the parties, IT IS SO ORDERED.

3

4    DATED: February __, 2008

5

6

7                                        _____
                                         Hon. Edward Infante (Ret.)
8                                        Discovery Master

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                            EXHIBIT _6_

28                                            PAGE _41_

3

STIPULATION AND [PROPOSED] ORDER REGARDING EXTENSION OF TIME TO FILE OPPOSITION
TO MATTEL'S MOTION TO COMPEL; AND [PROPOSED] ORDER
CASE NO. CV 04-09049 SGL (RNBx)

411319.01

# EXHIBIT 7

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR EMBARCADERO CENTER

SUITE 3800

SAN FRANCISCO, CALIFORNIA 94111-4144

TEL: (415) 984-6400
FAX: (415) 984-2698
www.skadden.com

DIRECT DIAL
(415) 984-6442
EMAIL ADDRESS
JRALLEN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
——
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
——
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

February 13, 2008

Via Facsimile and Electronic Mail

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

> RE: *Carter Bryant v. Mattel, Inc.* Case No. CV 04-9049 SGL (RNBx)
> (Consolidated With Case Nos. CV 04-09059 and CV 05-02727)

Dear Dylan:

I write in response to your February 6, 2008 letter requesting to meet and confer regarding documents listed on the privilege logs produced by MGA and Isaac Larian on January 25, 28 and 30, 2008. As you state in the final paragraph of your letter, we take your request to meet and confer as a prelude to filing a motion to compel regarding the issues raised in your letter.

We understand that Mattel has taken the position (including in a filing made yesterday evening with the Discovery Master) that the Court established January 28, 2008 as a firm cut-off for the filing of Phase 1 discovery motions. Thus, any Phase 1 motions filed after January 28, 2008 are untimely and improper, including any motions related to the issues in your February 6 letter. Accordingly, your request to meet and confer in anticipation of filing such a motion would appear to be pointless.

Furthermore, after reviewing the privilege log entries you list in your letter, we note that many of the entries appear to have no bearing on any Phase 1 issues. As you are aware, all Phase 2 discovery has been stayed until further order from the Court. Thus, any meet and confer with respect to entries related to Phase 2 issues is premature. Please explain the relevance of the entries in question to Phase 1 issues.

EXHIBIT __1__

PAGE __42__

B. Dylan Proctor, Esq.
February 13, 2008
Page 2


        Next, you raise various issues regarding certain documents in the three privilege logs identified in your letter.  We disagree with your contention that wholesale categories of documents are per se not privileged.  We also disagree with your contention that because certain documents were disclosed to third parties they are no longer privileged.

        Finally, we disagree with your contention that many entries are "vague" or otherwise deficient.  We believe the descriptions are adequate for purposes of the privilege logs and are consistent with the descriptions Mattel has used in its own logs.

                                    Very truly yours,



                                    José R. Allen


EXHIBIT __7__
PAGE __43__