QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727<br><br>REPLY MEMORANDUM IN SUPPORT OF MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S DECEMBER 31, 2007 ORDER REGARDING HARD DRIVES<br><br>Hearing Date: February 25, 2008<br>Time: 10:00 a.m.<br>Place: Courtroom 1<br><br>**Phase 1**<br>Discovery Cut-off: January 28, 2008<br>Pre-trial Conference: April 21, 2008<br>Trial Date: May 27, 2008 |

**Preliminary Statement**

The Opposition fails to address the key basis for this motion. The December 31, 2007 Order states that Mattel's motion seeks to discover information that "has not been deleted" to "ensure" its preservation.[1]  As shown in the moving papers, and not disputed in the Opposition, this is 180 degrees incorrect.  Mattel's motion seeks evidence of what *has* been deleted.  Discovery relating to spoliation is unquestionably likely to lead to the discovery of admissible evidence.  This Court has already so ruled: In its January 7, 2008 Order, this Court "conclude[d] that Mattel has shown good cause to grant additional discovery given . . . the concerns regarding retention and spoliation of evidence."[2]

What the Discovery Master evidently overlooked amidst the flurry of discovery motions was that, to support its RICO claim and gain evidentiary inferences at trial, Mattel must inspect the hard drives of computers used by Isaac Larian and Carter Bryant for evidence of what is no longer present.  Mattel's discovery requests are, therefore, the antithesis of a "fishing expedition":  they are intended to demonstrate that the fish are gone.  And for this same reason, the Discovery Master's conclusion that Mattel's Requests sought duplicative discovery was clearly erroneous.  MGA's production of hard copy documents shows nothing about what materials *were* deleted.

MGA would distinguish the cases Mattel cited on the basis that they involved "the wide-spread intentional destruction of documents," were "based on

---

[1]  Discovery Master's Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for Sanctions, dated December 31, 2007 ("December 31, 2007 Order"), at 17, attached as Exhibit 24 to the Declaration of Scott B. Kidman in Support of Mattel, Inc.'s Motion Objecting to Portions of Discovery Master's December 31, 2007 Order Regarding Hard Drives, dated January 16, 2008 ("Kidman Dec.").
[2]  January 7, 2008 Order at 2, attached as Exhibit 1 to the concurrently filed Declaration of David W. Quinto ("Quinto Dec.").

clear evidence of the intentional destruction of over 12,000 files *just a few hours before* opposing party's computer specialist was scheduled to perform a court-ordered inspection on the hard drive," or followed an outright admission that a party "delet[ed] relevant information while litigation was ongoing." (Opp. at 15.) Of course, this ignores that Mattel scarcely need conclusively prove the merits of its claims at this stage. What Mattel is seeking and entitled to here is discovery—discovery that goes to explicit allegations made in its counterclaims. MGA's argument is also circular, because Mattel cannot conclusively prove what was deleted without discovery of the hard drives.

There are substantial grounds here for Mattel to seek discovery as to spoliation. MGA's own testimony establishes that Mr. Larian has annually erased the hard drives of his computers. Mr. Bryant used the "Evidence Eliminator" program on a personal computer not only well after this suit was filed, but indeed two days before and then again on *the same day* as his counsel imaged it, in the process deleting 9,400 files and folders.[3]

Because Mattel is seeking evidence of spoliation, it is also irrelevant how many documents MGA produced in response to *other* discovery requests and whether information now present on the hard drives may have been produced in response to other requests. Mattel is looking for evidence of deletion, which not even MGA claims has been produced.

It is also irrelevant whether the discovery requests at issue *could* be read broadly. It is clear that both sides understood that what was being requested was not the hard drives of every computer used by anyone at MGA, but only those used by the two principal defendants in this case—who have engaged in instances of wiping computers clean, altering fax headers, and evidence elimination. After all,

---

[3] Forensic Analysis Report 1 of Mark J. Menz, dated February 10, 2008, Quinto Dec., Exh. 2.

MGA admits that "[d]uring that [meet and confer] conference [Mattel attorney] Mr. Kidman indicated that Mattel felt entitled to Mr. Larian's hard drives. . . . "[4]

MGA's illogical argument that the requested discovery is at once entirely cumulative of discovery MGA has produced in response to other requests and, at the same time, a subterfuge to discover new evidence to support new claims, is easily answered.  The appointment of a <u>Rule</u> 706 expert, as Mattel has proposed, would allow the inspection of the hard drives to proceed without the purported risk that any information not produced by the MGA defendants would be exposed.  As MGA tacitly acknowledges, the appointment of a neutral expert is justified when evidence of spoliation is present.

## **Argument**

### I. **THE DISCOVERY MASTER'S RULING IS CLEARLY ERRONEOUS**

MGA acknowledges, as it must, that the Discovery Master's December 31, 2007 Order may be set aside if it is clearly erroneous or contrary to law.  It is clearly that.  MGA points out that Mattel raised the same arguments before the Discovery Master as it raises now and that the Discovery Master "considered" those arguments.  As reflected in the December 31, 2007 Order, however, the Discovery Master misconstrued Mattel's motion.  He believed that Mattel sought to "ensure that relevant information *has not* been deleted or permanently destroyed."[5]  (Emphasis added.)  Believing that Mattel sought discovery of documents *still in existence*, the Discovery Master found that they

---

[4] Declaration of Philip W. Marsh in Support of MGA Defendants' Opposition to Mattel, Inc.'s Motion Objecting to Portions of Discovery Master's December 31, 2007 Order Regarding Hard Drives dated January 31, 2008 ("Marsh Decl."), ¶ 9.

[5] December 31, 2007 Order at 17, Kidman Dec., Exh. 24.

would be "duplicative" of those already obtained pursuant to other requests and would constitute "a fishing expedition in pursuit of new claims."[6]

In fact, Mattel's request to inspect the hard drives is not to ensure that information "has not been deleted," and has nothing to do with the potential discovery of new information to support the assertion of a new claim. The opposite is the case. Mattel is seeking to discover evidence of spoliation by an analysis of what is *not* on the drives, when the information was deleted, and how. Such evidence is clearly relevant to Mattel's existing claims. Spoliation is an element of Mattel's RICO claim and would also support an evidentiary inference of intent and guilty knowledge on defendants' part.

This Court also recognized that spoliation is pertinent to existing issues in this case. Due to the critical nature that evidence of spoliation will have at trial, this Court on January 7, 2008, compelled MGA to produce two additional witnesses to testify concerning MGA's efforts to preserve evidence. In doing so, this Court considered whether (i) the discovery Mattel sought was "unreasonably cumulative or duplicative"; (ii) it could be "obtained from a more convenient, less burdensome, or less expensive source"; and (iii) the "burden or the expense of the requested discovery outweigh[ed] its likely benefit, taking into account the factors of the parties' resources, the importance of the issues at stake, and the importance of the requested discovery in resolving these issues." After considering those factors, this Court held that:

> Considering the standard the Court concludes that Mattel has shown good cause to grant additional discovery given the complexity of this case, the number of parties, recent developments related to the substitution of counsel, *the concerns regarding retention and spoliation of evidence*,

---

[6] Id.

1         and the delay in receiving paper discovery caused by

2         numerous discovery disputes in a Court-imposed stay

3         requested by MGA upon substitution of counsel.[7]

4         (Emphasis added.)

5       Because Mattel is looking for evidence of what is *no longer* present on the hard drives, the Discovery Master's December 31, 2007 Order otherwise is, therefore, clearly erroneous.

## II.   MGA CANNOT DENY THAT ACTS OF SPOLIATION OCCURRED

MGA's response to Mattel's showing that there has been a concerted pattern of spoliation is to merely quarrel that, to date, the evidence does not *conclusively* prove the full extent of spoliation. Thus, MGA does not deny that Mr. Bryant installed and used a program entitled "Evidence Eliminator" on his own computers. Instead, it argues that (i) the program is "unfortunately named," (ii) Mr. Bryant might not even have known how to use the program he installed, and (iii) Mr. Bryant could not have committed spoliation as a matter of law because he installed and used the program before Mattel filed suit.

This is factually and legally baseless. Far from being merely "unfortunately named," courts have recognized the purpose of "Evidence Eliminator" is in fact to destroy evidence. Kucala Enterprises, Ltd. v. Auto Wax Co., No. 02-C-1403, 2003 WL 21230605 (N.D. Ill. 2003) ("Any reasonable person can deduce, if not from the name of the product itself, then by reading the website, that Evidence Eliminator is a product used to circumvent discovery."); In re Krause, 367 B.R. 740, 771 (Bankr. D. Kan. 2007) (citing Kucala). Further, as reflected in the Expert Report of Mark J. Menz, the image of a hard drive that Mr. Bryant's counsel eventually produced reflected that the "Evidence Eliminator" program was

---

[7] January 7, 2008 Order at 2, Quinto Dec., Exh. 1.

run on July 12 and 14, 2004.[8] Those dates were not only well after the litigation commenced in April 2004, but were two days before, *and the day of,* the imaging of Mr. Bryant's hard drive by his counsel. The image produced to Mattel reflected that the "Evidence Eliminator" program deleted over 9,400 files and folders after this suit was filed.[9]

      MGA also does not dispute that Mr. Larian instructed an employee to "white out" the header line of a fax from Mr. Bryant because the header reflected that Mr. Bryant had sent the fax from Mattel. MGA argues instead that the erasure could have occurred before the litigation was commenced and that he could not therefore have reasonably anticipated litigation. That argument is unavailing because here the evidence shows that Mr. Larian gave the instructions in order to conceal that Bryant had signed his agreement with Mattel while still a Mattel employee and that he had sent it from Mattel's Design Center.

      Finally, MGA does not dispute Mr. Larian has switched computers at least once a year and wiped the information from the hard drive of each one as he gave it up. According to MGA, his acts are not "spoliation," but are merely compliance with "protocols." MGA, however, again puts the merits cart before the discovery horse. The timing and scope of the destruction is unquestionably relevant to spoliation issues for purposes of discovery. Whether or not those acts constitute unlawful spoliation—and whether MGA can muster a legitimate explanation for wiping information from the hard drives—is a matter for another day. Furthermore, as the Court is aware, MGA and its witnesses have touted in the past that MGA saved "everything," including especially its electronic records since the 2000 time

---

[8] Forensic Analysis Report 1 of Mark J. Menz, dated February 10, 2008, Quinto Dec., Exh. 2.
[9] Id.

period.[10] Evidence of wiping Larian's hard drives, and when those acts occurred, is thus plainly relevant impeachment.

### III. MGA'S ATTEMPTS TO DISTINGUISH THE SPOLIATION CASES ARE UNAVAILING

Based on rose-tinted view of the actions of Messrs. Larian and Bryant, MGA argues that the spoliation cases cited by Mattel can be distinguished. Thus, MGA would distinguish Leon v. IDX Systems Corp., 464 F.2d 951 (9th Cir. 2006), on the basis that one of the parties "expressly admitted deleting relevant information while litigation was ongoing." MGA does not, however, explain how its "protocol" of annually wiping a hard drive clean during the pendency of a litigation is materially different.

Similarly, MGA would distinguish Rambus, Inc. v. Infineon Techs. AG, 222 F.R.D. 280, 28 (E.D. Va. 2004), on the basis it involved "egregious activities found to constitute spoliation of evidence" such as "the wide-spread intentional destruction of documents." Again, MGA does not explain how this differs materially from annually wiping clean every one of Mr. Larian's computers and using the "Evidence Eliminator" program to eliminate thousands of files and folders from one of Mr. Bryant's computers, including after this litigation started.

Finally, MGA would distinguish Kucala Enterprises, Ltd. v. Auto Wax Co., No. 02-C-1403, 2003 WL 21230605 (N.D. Ill. 2003), on the basis that there was "clear evidence of the intentional destruction of over 12,000 files *just a few hours before* the opposing party's computer specialist was scheduled to perform a court-ordered inspection on the hard drive." (Emphasis supplied by MGA.) Here,

---

[10] See, e.g., Deposition of Lisa Tonnu, dated July 19, 2007, at 200:9-12, 200:20-24, Quinto Dec., Exh. 3; Deposition of Kenneth Lockhart, dated July 14, 2007, at 92:13-93:12, Quinto Dec., Exh. 4; Hearing dated August 27, 2007, at 117:19-118:14, Quinto Dec., Exh. 5.

the evidence is that months after this case was filed, Mr. Bryant twice ran the "Evidence Eliminator" program on a personal computer, once two days before and then again *the day of* its imaging by his attorneys, with the result that 9,400 files and folders were deleted. MGA's contention that there "are no remotely similar allegations here" thus fails. The only difference is in the number of files deleted.

### IV. MGA DOES NOT DISPUTE THAT THERE WOULD BE LITTLE BURDEN IN PRODUCING THE HARD DRIVES FOR INSPECTION

MGA's lengthy argument that Mattel's discovery requests *could* be read broadly ignores the obvious: Mattel is not urging a broad interpretation but has clearly communicated that its request is limited to the hard drives of computers used by Messrs. Bryant and Larian. Indeed, the Declaration of Philip Marsh submitted by MGA in support of its opposition to Mattel's motion reflects just that. Mr. Marsh declares that he met and conferred with Scott Kidman, counsel for Mattel, concerning the discovery requests at issue: "During that conference Mr. Kidman indicated that Mattel felt entitled to Mr. Larian's hard drives. . . . "[11] As reflected in Mr. Marsh's January 11, 2008 letter to Mr. Kidman, MGA was not concerned by the purported overbreadth of the discovery request. Instead, its position was simple: "We doubt that Mattel can make the requisite showing that the Discovery Master's Order is contrary to law."[12]

---

[11] Marsh Decl., ¶ 9.
[12] Marsh Dec., Exhibit F.

## V. IF THE COURT DENIES MATTEL ACCESS TO THE HARD DRIVES, IT SHOULD APPOINT A NEUTRAL EXPERT WITNESS TO EXAMINE THEM INSTEAD

If the Court does not permit Mattel itself to analyze the hard drives, a neutral expert should be appointed to do so instead. Otherwise, Mattel will be denied direct evidence relating to an element of its counterclaims, and Mattel and this Court will never know the extent to which evidence has been destroyed. MGA does not dispute these facts.

MGA's sole basis for stating that a neutral expert should not be appointed is that "Mattel has presented no evidence of spoliation." (Opp. at 16.) This is plainly incorrect for the reasons cited above.

In his "Statement" regarding Mattel's motion, Carter Bryant objects that a neutral expert should not be appointed because it is an "overly broad remedy for a narrow motion directed at an individual defendant, Isaac Larian." (Statement, filed February 11, 2008, at 1.) The Requests at issue seek not only Mr. Larian's hard drives, but also hard drives from MGA computers used by Mr. Bryant. Moreover, it is not clear why a neutral expert is an overly broad remedy, simply because the expert is appointed by the Court. If anything, such a neutral expert would provide Messrs. Larian and Bryant with greater protection: The appointment of a neutral expert would protect Mr. Bryant's and Mr. Larian's ostensible privacy interests since Mattel would not be given direct access to the hard drives, but would still allow Mattel to prove its counterclaims and allow the Court to determine whether relevant evidence has been destroyed. For all these reasons, Mattel's motion should be granted.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that its motion be granted in its entirety.

DATED: February 15, 2008        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                                By /s/ David W. Quinto
                                   David W. Quinto
                                   Attorneys for Mattel, Inc.