QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with Case Nos. CV 04-09059 and CV 05-02727<br><br>**DISCOVERY MATTER**<br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]**<br>[PUBLICLY REDACTED] MATTEL, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL MGA TO PRODUCE COMMUNICATIONS REGARDING THIS ACTION<br>[Supplemental Declaration of B. Dylan Proctor filed concurrently herewith]<br><br>Hearing Date: T.B.D.<br>Time: T.B.D.<br>Place: T.B.D.<br><br>**Phase 1:**<br>Discovery Cut-off: January 28, 2008<br>Pre-trial Conference: April 21, 2008<br>Trial Date: May 27, 2008 |

07209/2388383.3

MATTEL'S REPLY ISO MOT. TO COMPEL MGA TO PROD. COMMUNICATIONS REGARDING THIS ACTION

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................. 3

I. MATTEL SEEKS COMMUNICATIONS RELATING TO THIS ACTION, NOT A CATCH-ALL FOR DOCUMENTS RELATING TO ANY CLAIM OR DEFENSE ............................................................................. 3

II. MGA'S COMMUNICATIONS RELATING TO THIS ACTION ARE HIGHLY RELEVANT ............................................................................. 3

III. MGA HAS NOT PRODUCED THE COMMUNICATIONS THAT MATTEL SEEKS ............................................................................................ 6

IV. MATTEL'S REQUEST IS NOT UNDULY BURDENSOME ........................ 7

CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

**Page**

### Cases

*Aiken v. Rimkus Consulting Group, Inc.*,
   2007 WL 1101210 (S.D. Miss. Apr. 4, 2007) ................................................... 10

*Alexander v. Fed. Bureau of Investigation*,
   194 F.R.D. 299 (D.D.C. 2000) ............................................................................ 7

*Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*,
   233 F.R.D. 209 (D.D.C. 2006) ............................................................................ 5

*Bernstein v. Travelers Ins. Co.*,
   447 F. Supp. 2d 1100 (N.D. Cal. 2006) ....................................................... 3, 4, 9

*Doe v. Dist. of Columbia*,
   231 F.R.D. 27 (D.D.C. 2005) ............................................................................ 10

*Morgenstern v. Int'l Alliance of Theatrical Stage Employees*,
   2006 WL 2385233 (N.D. Cal. Aug. 17, 2006) .................................................. 11

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) .......................................................................................... 10

*Steinbach v. Credigy Receivables, Inc.*,
   2006 WL 1007272 (E.D. Ky. Apr. 14, 2006) ................................................... 10

## Preliminary Statement

MGA exaggerates both the categories of documents that Mattel seeks in this motion and the efforts it would have to undertake to produce those documents. Contrary to MGA's assertions, Mattel seeks only categories of directly relevant documents involving a discrete number of individuals.

First, Mattel does not seek, as MGA suggests, all documents relating to the claims or defenses in this action. This is not a so-called "catch-all" discovery request. Mattel seeks only MGA communications that relate to this <u>action</u>, not all its various claims and defenses. The difference is material. Communications relating to this action--such as communications relating to testimony in, or knowledge or information about, this action; or relating to gathering and collecting documents in this action; or destroying or altering evidence; or payments relating to this action--are finite and readily identified. Mattel's request is well-defined in subject matter.

Nor is the request overbroad in terms of the universe of individuals at issue. The first category listed in Mattel's motion includes communications involving senior MGA employees. Non-privileged communications about this case involving the individuals who run MGA are discoverable. MGA states that there are 200 such individuals, and Mattel believes it should be permitted access to the communications at issue made by all of them. However, at the least the request should be granted as to MGA's highest personnel--the far more limited group of individuals with titles of Director or higher.

The second category, as narrowed, seeks communications involving MGA's agents and third-party witnesses. MGA states its outside counsel would have to search all its files for such documents, but that is not so. Mattel only seeks communications between MGA's outside attorneys and third parties--things like their communications with witnesses. Such communications are particularly ripe for discovery. For example, one witness, Jacqueline Prince, testified at deposition

1 | that she exchanged emails with MGA's attorneys about custody of her notary book,
2 | which the evidence shows has been forged. Mattel requested those emails more
3 | than three years ago during Ms. Prince's deposition, but MGA still has not produced
4 | them. To satisfy this request, MGA's attorneys need only search documents likely
5 | to contain non-privileged communications with third parties, such as
6 | correspondence clips, not all their files. MGA cannot hide their crucial
7 | communications with testifying witnesses by saying the burden of producing them is
8 | too great.

The third category consists of communications between and among Mattel's former employees who have joined MGA. The Discovery Master has already ordered MGA to produce communications of <u>all</u> its employees relating to the departure of former Mattel employees because they are clearly relevant to Mattel's theft of trade secrets claims. The same is true as to those former employees' communications about this action, including communications regarding their potential liability to Mattel.

Mattel has endeavored to narrow its request substantially to ease any claimed burden on MGA. In attempting to nevertheless substantiate its burden claims, MGA sets up straw men, arguing for instance that Skadden should not have to search all its files to respond. Mattel never suggested it should. Compliance with Mattel's actual request, as narrowed, is not unduly burdensome. Since there is also no genuine dispute that the documents at issue are relevant and have not been produced, Mattel's motion should be granted.

## Argument

### I. MATTEL SEEKS COMMUNICATIONS RELATING TO THIS ACTION, NOT A CATCH-ALL FOR DOCUMENTS RELATING TO ANY CLAIM OR DEFENSE

Mattel's request is not a "generalized catch-all request."[1] Rather, Mattel has identified specific categories of relevant individuals--senior MGA employees responsible for "running" the company, outside attorneys and former Mattel employees--and seeks communications involving these individuals that relate to <u>this action</u>, as opposed to claims or defenses generically. Communications that relate to a witness's testimony, a witness's knowledge or information relevant to this action, document collection, document destruction or spoliation of evidence relating to this action, payments or requests for payments relating to this action and the like are all clearly discoverable. There are numerous ways in which Mattel will be able "to use [these communications] . . . either as evidence or to help find evidence." <u>Bernstein v. Travelers Ins. Co.</u>, 447 F. Supp. 2d 1100, 1105 (N.D. Cal. 2006). At a minimum these categories are fertile ground for discovering whether defendants have collected and produced all relevant evidence; whether witnesses have suppressed, modified or coordinated their testimony; whether witnesses are providing truthful testimony; whether witnesses have destroyed or concealed evidence, as Farhad Larian, for example, recently admitted; and MGA's knowledge of the same.

### II. MGA'S COMMUNICATIONS RELATING TO THIS ACTION ARE HIGHLY RELEVANT

On their face, the communications at issue now are highly relevant, but that is especially so in this case as to MGA.

---

[1] Opp. at 8.

1   MGA objects to producing outside counsel's communications with third
2   parties. However, Mattel is entitled to discover communications that will bear on
3   the testimony of third-party witnesses, whether these non-privileged
4   communications involve counsel or an MGA employee. For example, Jacqueline
5   Prince, a Mattel notary who notarized some of Bryant's drawings at issue in this case
6   in August 1999, while Bryant was employed by Mattel, testified at deposition that
7   **[REDACTED PURSUANT TO PROTECTIVE ORDER]**.[2] At Ms. Cendali's
8   request, **[REDACTED PURSUANT TO PROTECTIVE ORDER]**.[3] The notary
9   journal currently contains a notation that purportedly states that Bryant's drawings
10  were made in Missouri in 1998.[4] However, forensic examination has shown that
11  "the notation 'From 1998 Missouri' was written . . . at a later time compared to the
12  rest of the 8/26/99 entry written on pages 11 and 12" of Ms. Prince's notary journal.[5]
13  Thus, the evidence shows that the notation, "From 1998 Missouri," is a forgery.

This is powerful evidence, and Mattel is entitled to further discovery into it, both as part of its formal spoliation claims and to preserve the integrity of the proceedings. To that end, Ms. Prince's emails with MGA's former counsel--and the state of the notary pages she emailed at that time, in 2004--are highly relevant. Counsel for Mattel immediately requested those emails during Ms. Prince's deposition,[6] more than three years ago, but Mattel still has not received them today.[7]

---

[2] Deposition Transcript of Jacqueline Prince, dated Dec. 21, 2004 ("Prince Depo. Tr.") at 188:1-189:23, attached as Exhibit 2 to the concurrently-filed Supplemental Declaration of B. Dylan Proctor, dated February 14, 2008 ("Supp. Proctor Dec.").

[3] Id.

[4] Report of Valery N. Aginsky, dated Feb. 8, 2008, at 1, Supp. Proctor Dec., Exh. 3.

[5] Id. at 8.

[6] Prince Depo. Tr. at 189:13-14, Supp. Proctor Dec., Exh. 2.

1  They will show the content of Ms. Prince's journal pages in 2004, possibly before
2  they were forged. Responsive documents in the possession of MGA's agents,
3  including its attorneys, are relevant and discoverable. See, e.g., Am. Soc'y for
4  Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus, 233
5  F.R.D. 209, 212, 215 (D.D.C. 2006).

    To take another example, the evidence shows that **[REDACTED PURSUANT TO PROTECTIVE ORDER]**.[8] **[REDACTED PURSUANT TO PROTECTIVE ORDER]**.[9] The timing of Bryant's destruction of evidence is particularly significant. Bryant's attorneys **[REDACTED PURSUANT TO PROTECTIVE ORDER]**.[10] Here as well, if there were non-privileged communications involving any senior MGA employee or counsel regarding the imaging process, or the decision to run the program just before Bryant's attorneys created an image of his computer, they obviously are discoverable.

    As yet another example, third-party Farhad Larian recently testified that **[REDACTED PURSUANT TO PROTECTIVE ORDER]**.[11] Mattel is clearly entitled to discover any non-privileged communications relating to this destruction of evidence, or his testimony more generally. No doubt MGA will deny it knew of this spoliation; the communications that Mattel now seeks could prove otherwise.

    As a final example, Mattel recently learned from Veronica Marlow, a former MGA vendor, that **[REDACTED PURSUANT TO PROTECTIVE**

---

[7] Supp. Proctor Dec. ¶ 3.
[8] Report of Mark Menz, dated Feb. 10, 2008, at 1, Supp. Proctor Dec., Exh. 4.
[9] Id.
[10] Id.
[11] Deposition Transcript of Farhad Larian, dated February 4, 2008 ("Larian Depo. Tr.") at 92:20-25, Supp. Proctor Dec., Exh. 5.

ORDER].[12] Marlow **[REDACTED PURSUANT TO PROTECTIVE ORDER]**.[13] Cabrera's and Morales's attorneys are now in communication with MGA's attorneys,[14] and they may be coordinating efforts. Mattel is entitled to discover any non-privileged communications between and among them, including those involving counsel.

The above are but a few concrete examples of the types of MGA communications that Mattel seeks, and is entitled to, discover. They are more than "communications that might conceivably be related in any way to this case."[15] They are crucial. MGA's communications regarding this action are discoverable.

## III. MGA HAS NOT PRODUCED THE COMMUNICATIONS THAT MATTEL SEEKS

It is beyond dispute that MGA has not produced the communications that Mattel seeks in this motion. Indeed, during conferences of counsel, MGA stated that it had produced communications responsive to other requests, but acknowledged that did not include much of what Mattel seeks here.[16]

MGA now purports to identify "duplicative" and "cumulative" requests for which "the MGA Defendants have already produced responsive documents."[17] However, even a cursory review of the table MGA includes in its opposition shows

---

[12] Deposition Transcript of Veronica Marlow, dated December 27, 2007 ("Marlow Depo. Tr.") at 306:14-308:1, 363:15-365:17, Supp. Proctor Dec., Exh. 1.

[13] Transcript of interview of Ana Cabrera, dated Jan. 2, 2008, at 118:3-25, Supp. Proctor Dec., Exh. 7; Transcript of interview of Beatriz Morales, dated Jan. 14, 2008, at 115:2-20, Supp. Proctor Dec., Exh. 8.

[14] Letter from Maria Diaz to Michael Zeller, dated Jan. 22, 2008, Supp. Proctor Dec., Exh. 9 (copying counsel for defendants).

[15] Opp. at 2.

[16] Declaration of B. Dylan Proctor, dated February 4, 2008 ("Proctor Dec.") ¶ 6.

[17] Opp. at 16-18.

the request now at issue is far from cumulative or moot---nearly all responsive documents would not be produced in response to those other topics. Moreover, producing a subset of relevant documents--which is all MGA claims to have done-- does not relieve MGA of its obligation to produce other relevant documents. Finally, "[b]y simply objecting to [Mattel's] request without specifically referring to any documents already produced or describing the relevant search[es] already performed, [MGA] has not met [its] burden of demonstrating that this request is in fact 'unreasonably cumulative or duplicative.'" Alexander v. Fed. Bureau of Investigation, 194 F.R.D. 299, 302 (D.D.C. 2000).[18]

## IV. MATTEL'S REQUEST IS NOT UNDULY BURDENSOME

MGA insists that Mattel's request is overbroad and unduly burdensome, even as narrowed.[19] In light of the obvious relevance of the documents MGA refuses to produce, it is not.

First, MGA remarkably argues that the Request is overbroad because it seeks documents that "refer" or "relate" to a topic.[20] That is specious. The Discovery Master has consistently upheld requests--like the one at issue here--that seek documents that "refer" or "relate to" a topic.[21] Indeed, MGA itself has been

---

[18] MGA also boasts that it has produced "more than 4.2 million pages of documents." Opp. at 16. This ignores that the vast majority of those pages-- millions of pages--consist of lengthy charts. It also is hardly controlling. MGA's production of some other documents does not contravene the indisputable fact that it has not produced the communications Mattel seeks here.

[19] Opp. at 7-12.

[20] Id. at 8-9.

[21] See, e.g., Order of Discovery Master dated May 15, 2007 (compelling MGA to produce documents in response to approximately 40 requests including "refer" and/or "relate to" language), attached as Exhibit F to the Declaration of Amy S. Park in Support of MGA's Opposition to Mattel's Motion to Compel, dated February 11, 2008 ("Park Dec."); Order of Discovery Master dated December 31, 2007 (footnote continued)

requesting documents "mentioning, referring or relating" to a topic (or "REFERRING OR RELATING TO" a topic) for over three years now. For example, MGA's First Set of Requests for the Production of Documents and Things, served on January 31, 2005, included numerous requests seeking documents "mentioning, referring or relating" to a particular topic.[22] MGA's Second, Third, Fourth, Fifth, Sixth and Eighth Set of Set of Requests for the Production of Documents and Things also include hundreds of requests seeking documents that refer or relate to a topic. Indeed, MGA defines "REFERRING OR RELATING TO" to "be construed in the broadest possible sense to mean concerning, consisting of, referring to, relating to, describing discussing, constituting, evidencing, containing, reflecting, mentioning, pertaining to, citing, summarizing, analyzing or bearing any logical or factual connection with the matter discussed."[23] This definition is broader than Mattel's.[24]

Second, MGA contends that its counsel should not have to perform the "impossible" task of reviewing all litigation files regarding this case for responsive documents.[25] That is a red herring. The second category of communications requested by Mattel includes only communications <u>between</u> MGA's attorneys and

---

(compelling Larian to produce documents in response to 5 requests including "refer" and/or "relate to" language), Park Dec., Exh. J.

[22] MGA's First Set of Requests for the Production of Documents and Things, dated Jan. 31, 2005, Supp. Proctor Dec., Exh. 10

[23] MGA's Eighth Set of Requests for the Production of Documents and Things in Case No. 05-2727, dated Dec. 28, 2007, at 6, Supp. Proctor Dec., Exh. 6

[24] Mattel's definition of "REFER OR RELATE TO" is: "constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner." Opp. at 4.

[25] Id. at 13.

1  agents and third parties, not between MGA's attorneys and MGA employees. For
2  example, Mattel seeks MGA's attorneys' communications with Ms. Prince regarding
3  key documents that have been forged. A reasonable search for such third party
4  communications would not encompass all litigation files. To the contrary, most
5  lawyers maintain correspondence files.

6  Nor, in Mattel's view, are the first and third categories overbroad.
7  Mattel simply seeks relevant communications about this action made by senior and
8  former Mattel employees--those likely to have discoverable knowledge regarding
9  this action, which could be revealed in their communications about it. These
10 communications are fertile ground to discover evidence that Mattel will be able "to
11 use . . . either as evidence or to help find evidence." Bernstein, 447 F. Supp. 2d at
12 1105. Indeed, recognizing this, MGA agreed to produce communications involving
13 its managers and above during conferences of counsel, yet required that Mattel
14 pay.[26] Though Mattel should not have to do so, the fact of MGA's agreement is
15 itself telling.[27]

16 Mattel urges the Court to adopt the proposed limitations set forth in
17 Mattel's motion. MGA has failed to meet its burden of showing why discovery
18 should not be permitted. See Doe v. Dist. of Columbia, 231 F.R.D. 27, 30 (D.D.C.
19 2005) ("Once a party has established relevance, if the other party wishes to object to
20 discovery, the objecting party bears the burden of showing why discovery should

---

[26] Proctor Dec., ¶ 8.

[27] Moreover, the Discovery Master already has compelled MGA to produce "[a]ll COMMUNICATIONS between [MGA] and any person RELATING TO the departure from MATTEL of any current or former MATTEL employee or contractor." See Discovery Master's Order, dated Aug. 13, 2007, at 13-14, Proctor Dec., Exh.11. Mattel's current request seeks a more narrow category of additional relevant communications--those between and among the former Mattel employees who left for MGA about this action.

1  not be allowed.").[28] Nor has it meaningfully distinguished Mattel's cited authorities,
2  which hold requests such as Mattel's to be appropriate. See, e.g., Steinbach v.
3  Credigy Receivables, Inc., 2006 WL 1007272, at *9 (E.D. Ky. Apr. 14, 2006)
4  (overruling defendants' objections to requests for production for all "internal
5  communications with respect to Plaintiff, . . . [the] lawsuit, or the claims in [the]
6  [Amended] Complaint"); Aiken v. Rimkus Consulting Group, Inc., 2007 WL
7  1101210, at *1-2 (S.D. Miss. Apr. 4, 2007) (permitting plaintiff to discover all
8  "communications" and "correspondence" relating to its claim against defendant). In
9  the event some further limitation is deemed necessary, Mattel respectfully suggests
10 that the Court narrow category one--communications involving senior MGA
11 employees about this case--to those holding a title of Director or higher, which is a
12 far more limited group.
13        Finally, cost shifting is not appropriate. The "presumption is that the
14 responding party must bear the expense of complying with discovery requests."
15 Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978). To date, the
16 Discovery Master has not ordered cost-shifting for any party's compliance with a
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///

---

[28] The Discovery Master's denial of Mattel's motion to compel documents responsive to Request. No. 196 to Larian (Opp. at 14-15) appears to have been premised on Mattel seeking "all documents" in that request and the materially different claimed relevance. In contrast, the current request seeks only narrow and specific categories of communications regarding this action.

single ordinary request for production, of many hundreds on each side. MGA does not explain why this request is extraordinary or should be treated any differently. Mattel seeks clearly relevant communications that will either constitute evidence or will assist in finding evidence, and it has endeavored to narrow the request to ease any claimed burden to MGA. Cost-shifting would be unwarranted under these circumstances. Morgenstern v. Int'l Alliance of Theatrical Stage Employees, 2006 WL 2385233, at *5 (N.D. Cal. Aug. 17, 2006) ("Cost-shifting should only be *considered* when discovery imposes an "undue burden or expense" that outweighs the likely benefit of the discovery.") (emphasis added).[29]

### Conclusion

For the foregoing reasons, the Discovery Master should grant Mattel's motion.

DATED: February 14, 2008          Respectfully submitted,

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ B. Dylan Proctor
   B. Dylan Proctor
   Attorneys for Mattel, Inc.

---

[29] MGA's other contentions border on the frivolous. The documents sought now clearly relate to Phase 1, which has not been stayed. See Civil Minutes-General, Honorable Stephen G. Larson, Feb. 4, 2008, Supp. Proctor Dec., Exh. 11. Moreover, the parties stipulated that if this motion were filed on or before February 4, 2008, which it was, it would be "deemed timely filed." Proctor Dec., Exh. 13.