# EXHIBIT 1

# THIS EXHIBIT IS FILED UNDER SEAL

# PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 2

# THIS EXHIBIT IS FILED UNDER SEAL

# PURSUANT TO PROTECTIVE ORDER

# Exhibit 3

www.rileywelch.com

# RILEY WELCH AGINSKY
# &
## FORENSIC DOCUMENT EXAMINATIONS, Inc.

P.O. Box 80225, Lansing, Michigan 48908-0225
Telephone (517) 394-1512  Fax (517) 882-2767

Thomas P. Riley, BS
Forensic Document Examiner*, **

Valery N. Aginsky, Ph.D., Ink Chemist
Gregoire P. Michaud, BA, Latent Print Examiner
Felix Adatsi, Ph.D., Toxicologist

Todd W. Welch, BA
Forensic Document Examiner*

February 8, 2008

Diane Cafferata Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3666

      Re:    Bryant v. Mattel

Dear Ms. Hutnyan:

I have examined the following document:

**A-1:**    Official Journal of Notarial Acts comprising handwritten entries dated from 1/15/96
(pages 1 and 2) to 9/14/99 (pages 11 and 12).[1]

## EXAMINATION TASK

I was asked to determine whether the 8/26/99 notation "From 1998 Missouri" was written
contemporaneously with the rest of the entry dated 8/26/99 on pages 11 and 12 of document **A-1**
or whether it was written at a later date.

## QUALIFICATIONS

I am a forensic chemist of 27 years' experience.  I am currently employed, as a Forensic Chemist
specializing in the field of ink analysis and document dating, with Riley, Welch & Aginsky
Forensic Document Examinations, Inc. (formerly known as Riley, Welch & Associates Forensic
Document Examinations, Inc.)  I received my Ph.D. in Analytical Chemistry in 1980.  Prior to
joining Riley, Welch & Associates I worked as a senior research chemist with the Forensic

---

[1] Also, I have reviewed the following documents:  the August 30, 2007 Order of Judge Infante;  8 boxes of
original Carter Bryant production documents described in Judge Infante's August 30, 2007 Order;  bates
numbered photocopies, video and photographs of these documents;  the transcripts of Carter Bryant's
depositions taken on 11/4/2004 (Vol. 1), 11/5/2004 (Vol. 2), 11/8/2004 (Vol. 3);  the transcripts of
Jacqueline Prince's deposition taken on 12/21/2004.

*Diplomate of the American Board of Forensic Document Examiners, Inc.
**American Society of Questioned Document Examiners

EXHIBIT _____ 3 _____

PAGE _____ 12 _____



Science Center, Ministry of the Interior, Russia. I am experienced in a wide range of examination techniques, but my particular specialty is the analysis and dating of ink on documents by Thin-Layer Chromatography and Gas Chromatography-Mass Spectrometry. I am the author of more than 20 peer-reviewed articles on ink analysis and dating, including chapters in three books and two encyclopedias.

A copy of my curriculum vitae showing further details of my professional history and a list of my professional publications is attached hereto as Exhibit "VNA-1."

In the past five years I have been deposed in my capacity as an expert fifteen times and have testified at trial and hearings as an expert on thirteen occasions, a list of which is attached hereto as Exhibit "VNA-2." I am being compensated for my work in this case according to my hourly rate, which is outlined in the fee schedule attached hereto as Exhibit "VNA-3."

## REPORT OF LABORATORY EXAMINATION

The addition of extra writing can greatly change the meaning of the wording or the value of a document. Therefore, forensic document examinations are often conducted in order to determine whether two pieces of written text originated from the same pen.

As it is usually preferable not to damage the document, the process of forensic ink comparison always begins with the physical examination of the inks using techniques designed to obtain as much information as possible from the ink (and the document as a whole) by visual examination and other nondestructive means, such as microscopic and infrared absorption examinations.[2] If any of the nondestructive techniques shows that the inks being compared are different, then no additional tests, including more sophisticated chemical tests, are required to prove that the two pieces of the written text did not originate from the same pen.

If the nondestructive techniques cannot discriminate between the inks being compared, then chemical methods are to be used. A few samples of each ink are taken from the paper for their chemical analysis. Chemical methods are more effective for discriminating between inks of the same color than the physical (nondestructive) methods. It is widely accepted in the field of forensic writing ink analysis that a combination of two chemical methods, thin-layer chromatography (TLC) and gas chromatography-mass spectrometry (GC-MS), allows the examiner to retrieve maximum information about the composition of writing ink.

Writing inks are made of colorants (dyes, pigments) and a carrier (vehicle). Oil- and water-based ballpoint ink vehicles consist of two main ingredients – solvents that are used to dissolve or disperse the colorants, and the resins that are used to thicken the inks. TLC analyzes ink colorants (ink colored components) and GC-MS analyzes ink vehicle components (volatile solvents, resins and other noncolored ink components, such as modifiers, lubricants, thickeners, antiseptics, surfactants, by-products, etc.) That is, each of these two chemical methods, TLC and

---

[2] ASTM Standard Guide E1422-05, "Standard Guide for Test Methods for Forensic Writing Ink Comparison." Published January 2006. Originally approved in 1991. Last previous edition approved in 2001 as E 1422 – 01.

EXHIBIT _____3_____

PAGE _____13_____



GC-MS, can provide only some partial information about the composition of writing ink. In simple terms, TLC can analyze one half of the ink composition (1/2 of the "chemical fingerprint" of an ink), and GC-MS can analyze the other half of the ink composition (the other 1/2 of the "chemical fingerprint" of the ink). Thus, these two methods perfectly complement each other.[3]

The physical and chemical examinations including visual, microscopic, and infrared absorption examinations, TLC, and GC-MS were conducted in the following succession.

## PHYSICAL (NONDESTRUCTIVE OPTICAL) EXAMINATIONS

VISUAL EXAMINATION

As mentioned above, the insertion of a modifying clause or sentence may change the meaning of a document. Visual examination is an accepted method in the field of forensic document examination that is used to detect insertions (interlineations or additions). To determine that an insertion or addition has been made usually involves a study of the document as a whole.

Two most common indications of the insertion of a handwritten sentence are as follows[4]:

1. The inserted sentence and the balance of the document are written with different inks.

2. Some sentence is either (*A*) inserted between the lines of the initial text (if no sufficient space was available within the initial text) or (*B*) inserted/added immediately after the last line of the initial text (if no sufficient space is available immediately after the last line of the initial text, then the spacing/distance between the inserted sentence and the last line of the text is usually smaller than the spacing between the lines of this text).

All the pages of document A-1 that contained handwritten entries were examined visually (pages 1 through 12; entries dated 1/15/96 through 9/14/99; see Attachment 3). Among these pages, the only place that showed the insertion of material to the initial text was where the notation "From 1998 Missouri" was added to the entry dated 8/26/99 on page 11.[5] The 4 lines of the text "Original sketches of doll idea – characters 6-total = Names are: Zoe, Lupe, Hallidae, Jade, 2 males." appear evenly spaced and, without the presence of the 5th line (the notation "From 1998 Missouri"), they appear to fill up the entire cell of the table on page 11. Thus, a person wishing to add further information to this 4-line entry would have to squeeze the new wording in between the last line of the entry and the printed horizontal line of the cell of the table in a way that would prevent the same even spacing as was in the original entry. Because no sufficient space was available immediately after the last line of the initial 4-line entry, there is almost no spacing

---

[3] Aginsky, V.N. "Using TLC and GC-MS to Determine whether Inks Came from the Same Manufacturing Batch," *Journal of the American Society of Questioned Document Examiners*, Vol. 9, No. 1, 2006, pp. 19-27.

[4] Scientific Examination of Questioned Documents / Edited by J.S. Kelly and B.S. Lindblom. – 2nd edition, CRC Press, Taylor & Francis, 2006, pp. 319-335.

[5] There might be other notations on pages 1 through 12 that could have been inserted, but the overall appearance of the other entries on pages 1 through 12 did not suggest later insertion.

EXHIBIT ___3___

PAGE ___14___



between the inserted 5th line (the notation "From 1998 Missouri") and the last line of the initial 4-line entry.

## MICROSCOPY

The eye is in itself a powerful scientific instrument capable of discovering much information from an examination of ink on paper. With the aid of glass lenses for magnifying and focusing or a microscope (that uses visual light for illumination), the appearance of a line written on paper gives the document examiner valuable information that may allow discrimination between inks or may individualize the writing instrument through its performance characteristics.

In this examination, 4X and 10X magnifying glasses and a microscope with magnification up to 140X were used. I noted that the width of the ink lines in the notation "From 1998 Missouri" was slightly larger than the width of the ink lines in the rest of the 8/26/99 entry.

The microscopic study did not detect any significant differences between the inks or writing instruments used to produce the notation "From 1998 Missouri" and the surrounding entries written by the Notary Public on pages 11 and 12 of document A-1. This indicates that these inks are either of the same composition (formulation) or of different compositions that cannot be distinguished by the microscopic examination.

## INFRARED ABSORPTION

Inks of the same color (indistinguishable to the naked eye) may differently absorb/reflect invisible radiation beyond the red portion of the visible spectrum. This may allow discrimination between similar (in color) but not identical (in composition) inks. The infrared absorption examination did not detect any differences between the inks used to produce the notation "From 1998 Missouri" and the surrounding entries written by the Notary Public on pages 11 and 12 of document A-1. This indicates that these inks are either of the same composition (formulation) or of different compositions that cannot be distinguished by the infrared absorption examination method.

## CHEMICAL EXAMINATIONS

### SAMPLING

The sampling procedure involved removing portions of the written lines from the entries to be examined. This was accomplished with a hypodermic needle sized hole punch, which removes hole punches of less than 1 mm in diameter. (The bored out ink samples are removed with a plunger). The ink-on-paper samples were taken from 17 areas on pages 11 and 12 of document A-1. The paper blank samples were taken from two areas of paper (on page 11) that did not contain ink. These 17 sets of ink samples and 2 sets of paper blank samples were then analyzed by TLC and GC-MS (as described below). Prior to their analysis by TLC and GC-MS, the samples were kept in my laboratory at normal environmental conditions.[6]

---

[6] Normal room/office humidity and temperature: 72 degrees Fahrenheit plus/minus up to approximately 15 degrees Fahrenheit (i.e. 22°C +/- *ca.* 8°C).

EXHIBIT ___3___

PAGE ___15___



**RILEY WELCH AGINSKY**
Forensic Document Examinations, Inc.

Black and white copies of pages 11 and 12 from which I took ink samples are attached to this report as Attachments 1 and 2, respectively. On these two attachments, each of the above 17 areas is circled and numbered. The questioned notation "From 1998 Missouri" is numbered as entry "8" (see Attachment 1).

CHROMATOGRAPHY

Chromatography is used to separate mixtures of substances into their components. Chromatography was discovered in 1901 when Michael S. Tswett separated pigments from chlorophyll using self-made chromatographic columns packed with various adsorbents. This fundamental discovery marked a milestone in the development of chromatographic separation techniques that led to Nobel prizes in chemistry. Today, chromatography has become the main analytical method in the pharmaceutical industry, food analysis, petrochemical analysis (crude oil, gasoline, kerosene, etc.), biochemical research, environmental analysis (e.g., pesticides in drinking water), clinical analysis (e.g., therapeutic drug monitoring, metabolism disorders), toxicology, forensic and doping analysis, and in many other areas. Thin-layer chromatography (TLC) and gas chromatography-mass spectrometry (GC-MS) are 2 chromatographic methods that are most widely used in analytical and forensic science laboratories all over the world.

Both methods, TLC and GC-MS, were used in this examination.

THIN-LAYER CHROMATOGRAPHY (TLC)

A TLC plate is a sheet of glass or plastic that is coated with a thin layer of a solid adsorbent (usually silica). A sample of the substance to be analyzed is dissolved in an appropriate solvent, and a small amount of the obtained solution is spotted near the bottom of the TLC plate. The TLC plate is then placed in a shallow pool of a solvent in a developing chamber so that only the very bottom of the plate is in the liquid. This liquid, or the eluent, is the mobile phase, and it slowly rises up the TLC plate by capillary action. The components of the sample become separated from one another because of their different degrees of attachment to the coating material (stationary phase) on the plate. The solvent is then allowed to evaporate, and the separated components of the mixture are visualized. If the separated components are colored, visualization is straightforward. If the colorant of ink is a mixture of different dyes, then these dyes are separated on the TLC plate into spots of different colors. Thus, TLC is a very effective method for discriminating between similarly colored inks (if the colorants of the inks consist of different ink dye components that can be separated on the TLC plate).

In this examination, the TLC analysis of the ink samples was conducted as follows. A subset consisting of 3 samples of ink (microplugs) was isolated from each of the above 17 sets of ink samples. Each subset of microplugs was placed into a small glass vial. To each of the vials 2-3 microliters of dimethylformamide were added. The ink was extracted for 30 minutes. The ink extract (visually colorless) was transferred by a capillary pipette to the TLC plate. This transfer process continued until the entire extract had been transferred to the TLC plate (for each sample to be tested). The TLC plate was allowed to air dry and was then placed in a vertical orientation into a developing tank. The tank was a glass enclosure with a removable lid and contained a few milliliters of solution (ethyl acetate – isopropanol – water – acetic acid = 30:15:10:1). After 10 minutes of development the TLC plate was removed from the tank and viewed in both UV (254

EXHIBIT _____3_____

PAGE _____16_____



and 365 nm) and white light with the unaided eye. Often similarities and differences in colored (dyes) and non-colored components present and relative proportions of the components are noted resulting in conclusions about the number of different ink formulations within the ink samples examined. In this examination, the TLC analysis of the ink samples showed that none of them contained any extractable ink components that could be seen in the form of separated colored spots on the TLC plate. It indicates that the colorant of the ink(s) within the ink samples examined is either carbon black or another insoluble black pigment. Thus, the TLC analysis did not detect any differences between the inks used to produce the notation "From 1998 Missouri" and the surrounding entries written by the Notary Public on pages 11 and 12 of document A-1. This indicates that these inks are either of the same composition (formulation) or of different compositions that cannot be distinguished by TLC.

## GAS CHROMATOGRAPHY-MASS SPECTROMETRY (GC-MS)

GC-MS is a widely accepted analytical method of determining the qualitative composition of multi-component systems. It is routinely used in analytical and forensic science laboratories all over the world.[7] In the field of forensic document examination, GC-MS is used for discriminating between similarly colored inks that have been made using different ink vehicle components (solvents, resins, modifiers, lubricants, thickeners, antiseptics, surfactants, by-products, etc.)

The procedure of the GC-MS analysis involves vaporizing a sample and sweeping it through a column with a moving stream of gas termed the mobile phase or the carrier gas. Compressed gas cylinders commonly supply the gases. The sample is introduced into the injection port. The most common type of analysis involves the injection of approximately 1 microliter of a liquid sample into a heated injection port, which is interfaced to the capillary column where the actual separation takes place. The capillary column's inner walls are coated with a viscous liquid material (it is called the stationary phase). This inner coating will interact with different molecules to different extents. Those components of the mixture, which weakly interact with the stationary phase, pass more quickly through the column than those compounds, which have strong interactions with the stationary phase. For this reason, different components of the mixture exit the column at different times. As each component of the mixture comes off the column, it is detected by the MS detector. The detector sends a signal to the attached computer, which displays each signal as a peak on a chart. The array of peaks (one peak for each component) is called a chromatogram. A chromatogram obtained for a certain material can be considered as a "chemical fingerprint" of the vehicle components of this material. When GC-MS is used for comparing, say, 10 entries written with similarly colored inks, the chromatograms are recorded for each of the 10 inks, and then these "chemical fingerprints" are compared to determine the number of different ink formulations used to produce the entries.

In this examination, the GC-MS analysis of the ink samples was conducted as follows. A subset consisting of 3 to 5 microplugs was isolated from each of the above 17 sets of ink samples. Each subset of microplugs was placed into a small glass vial. (3 microplugs of the paper blanks were placed into another vial). To each of the vials 2 microliters of chloroform were added. The ink

---

[7] For example, GC-MS is used for separating accelerants in fire residue from suspected arson fires and for the analysis of drugs.

EXHIBIT __3__

PAGE __17__


**R**ILEY **W**ELCH **A**GINSKY
&
FORENSIC DOCUMENT EXAMINERS, Inc.

Ms. Diane Hutnyan                              February 8, 2008                              Page 7 of 8

was extracted for 30 minutes. The extracts were analyzed using an Agilent 6850 gas chromatograph interfaced with an Agilent 5973N mass selective detector and equipped with a split/splitless injection system.

The GC-MS conditions and parameters were as follows:

Column: HP-5MS, 30 m x 0.25 mm ID x 0.25-micrometer film thickness (cross-linked 5%-phenyl-95%-dimethylpolysiloxane)
Carrier: helium (column flow 1 mL/min)
Oven program: isothermal for 1 min at 35°C, program 15°C/min to 230°C and hold for 7 minutes
Injection: 1 microliter, splitless, T=250°C
Purge on time: 1 minute
GC-MS transfer line: 280°C

The GC-MS analysis revealed the presence of 2 different inks of black color within the ink samples examined: the ink (*ink 1*) used to produce the notation "From 1998 Missouri" on page 11 of document A-1 and the ink (*ink 2*) used to produce the other examined entries on pages 11 and 12 of document A-1.

The difference between *ink 1* and *ink 2* revealed by the GC-MS test is that *ink 1* contains a vehicle component (alkyl derivative of cyclohexanol) that is absent in *ink 2*. This result of the GC-MS analysis shows that *ink 1* and *ink 2* are of different compositions.

## SUMMARY OF EXAMINATION RESULTS

I.      The black inks of two different compositions were found among the examined entries appearing on pages 11 and 12 of document A-1:

- *Ink 1:* the ink used to produce the notation "From 1998 Missouri" on page 11 of document A-1 (entry 8; see Attachment 1).

- *Ink 2:* the ink used to produce the remainder of the writing made by the Notary Public on pages 11 and 12 of document A-1 (entries 1 through 7 and 9 through 17; see Attachments 1 and 2).

II.     As considered above, in section Visual Examination, the location of the notation "From 1998 Missouri" on page 11 of document A-1 clearly shows that this notation is squeezed in between the last line of the 8/26/99 entry "Original sketches of doll idea – characters 6-total = Names are: Zoe, Lupe, Hallidae, Jade, 2 males." and the printed horizontal line below it.

EXHIBIT ___3___

PAGE ___18___



Ms. Diane Hutnyan                  February 8, 2008                  Page 8 of 8

## CONCLUSION

Based on the results of this examination and my professional experience, it is my opinion that the notation "From 1998 Missouri" was written on page 11 of document **A-1** at a later time compared to the rest of the 8/26/99 entry written on pages 11 and 12 of document **A-1**.

It is also my opinion that the most probable sequence of the writing of the entries on pages 11 and 12 of document **A-1** was as follows:

1. The entry dated 8/26/99

2. The entry dated 9/14/99

3. The second entry dated 9/14/99

4. The notation "From 1998 Missouri"

## DISPOSITION OF EVIDENCE

The evidence was returned to Mr. Daniel J. Warren, Esq. (Sutherland Asbill & Brennan, LLP, 999 Peachtree Street, Suite 2300, Atlanta, GA 30309) on January 31, 2008 via Federal Express, tracking number 8635 6224 9130.

Very truly yours,

RILEY, WELCH & AGINSKY
FORENSIC DOCUMENT EXAMINATIONS, INC.

Valery N. Aginsky, Ph.D.
Forensic Chemist

Attachments:

Attachment 1 – Reduced copy of page 11 of document **A-1**
Attachment 2 – Reduced copy of page 12 of document **A-1**
Attachment 3 – Reduced copies of the cover page and pages 1 through 12 of document **A-1**
Exhibit "VNA-1" – Curriculum Vitae (incl. List of publications)
Exhibit "VNA-2" – Court Cases and Depositions
Exhibit "VNA-3" – RWAFDE Schedule of Fees

EXHIBIT ___3___

PAGE ___19___

# EXHIBIT 4

# THIS EXHIBIT IS FILED UNDER SEAL

# PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 5

# THIS EXHIBIT IS FILED UNDER SEAL

# PURSUANT TO PROTECTIVE ORDER

# Exhibit 6

CALENDARED
RECEIVED

DEC 2 8 2007

1  THOMAS J. NOLAN (Bar No. 066992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, CA  90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:  (213) 687-5600
4  E-mail:     tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No. 40892)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  Four Embarcadero Center, Suite 3800
   San Francisco, CA  94111
7  Telephone:  (415) 984-6400
   Facsimile:  (415) 984-2698
8  E-mail:     rkennedy@skadden.com

9  Attorneys for Counter-Defendants,
   MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
10 (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                    EASTERN DIVISION

14 CARTER BRYANT, an individual        )  CASE NO. CV 04-9049 SGL (RNBx)
                                       )
15              Plaintiff,             )  Consolidated with Case No. 04-9059
                                       )  and Case No. 05-2727
16      v.                             )
                                       )  **MGA'S EIGHTH SET OF**
17 MATTEL, INC., a Delaware            )  **REQUESTS FOR THE**
   corporation                         )  **PRODUCTION OF**
18                                     )  **DOCUMENTS AND THINGS**
                Defendant.             )  **IN CASE NO. 05-2727**
19                                     )
                                       )
20                                     )  Honorable Stephen G. Larson
                                       )  Courtroom 1
21 _____ )
   Consolidated with MATTEL, INC. v.   )
22 BRYANT and MGA                      )
   ENTERTAINMENT, INC. v.              )
23 MATTEL, INC.                        )
                                       )
24 _____

25 **PROPOUNDING PARTY:**    **MGA ENTERTAINMENT, INC.**

26 **RESPONDING PARTY:**     **MATTEL, INC.**

27 **SET NUMBER:**           **EIGHT**

28 **NOs.:**                 **770-797**

EXHIBIT  6

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiff MGA Entertainment, Inc. ("MGA") requests that defendant Mattel, Inc. ("Mattel") produce all DOCUMENTS and tangible things described, in accordance with the Definitions and Instructions set forth below, at 9:00 a.m. on January 28, 2007, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 300 South Grand Avenue, Los Angeles, California 90071.

**DEFINITIONS**

As used in these Requests:

1.      "ACTION" shall mean this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly Mattel v. Bryant, Inc., first filed in Los Angeles County Superior Court; Bryant v. Mattel, Inc.; and MGA Entertainment, Inc. v. Mattel, Inc.; and all counterclaims, cross-claims and defenses therein.

2.      "ADVERTISING" means and refers to notice that is broadcast or published by MGA or any person, agent or representative acting on its behalf to the general public or any specific market segments for the purpose of attracting customers or supporters and includes material placed on the internet, at trade shows or at a point of sale.

3.      "ALLEGED COPYRIGHTED WORKS" means the copyrighted works alleged in paragraph 83 of MATTEL'S Second Amended Answer in Case No. 05-2727 and Counterclaim in THIS ACTION.

4.      "BARBIE" means and refers to each image, character, logo, doll, toy, styling head, plush toy, play set, accessory, product, packaging or any other thing that is or has ever been manufactured, marketed or sold by YOU, or others under licensed by YOU, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name "Barbie."

1    5.     "BRATZ" means and refers to each image, character, logo, doll,

2  fashion doll, plush toy, styling head, toy, accessory, product, packaging, theme, or

3  other thing or matter that is or has ever been manufactured, marketed or sold by

4  MGA, or others under license, as part of a line of goods or merchandise commonly

5  known as, or sold and marketed under the "Bratz" trademark or trade dress.

6    6.     "BRYANT" means Carter Bryant individually.

7    7.     "COLLECTIBLES GROUP" means "Barbie Collectibles" as

8  understood by Lisa S. Freed in her deposition of May 3, 2007, referenced at 128:18-

9  25.

10   8.     "COMMUNICATION[S]" means any transmission of information from

11  one person or entity to another, including, without limitation, by personal meeting,

12  conversation, letter, telephone, facsimile or electronic mail.  Each request that

13  encompasses information relating in any way to communications to, from or within a

14  business or corporate entity is hereby designated to mean, and should be construed to

15  include, all communications by and between representatives, employees, agents or

16  servants of the business or corporate entity.

17   9.     "CONFLICT OF INTEREST QUESTIONNAIRE" shall mean any form

18  of employment agreement concerning, *inter alia*, relations, if any, between Mattel's

19  employees, suppliers, and/or competition, whether known by the title "Conflict of

20  Interest Questionnaire" or any other title, including without limitation the form of

21  Conflict of Interest Questionnaire entitled "Conflict of Interest Questionnaire"

22  executed by BRYANT on or about January 4, 1999.

23   10.    "COUNTERCLAIMS" or "COUNTERCLAIM" means Mattel, Inc.'s

24  Second Amended Answer and Counterclaims for: 1. Copyright Infringement; 2.

25  Violation of the Racketeer Influenced and Corrupt Organizations Act; 3. Conspiracy

26  to Violate the Racketeer Influenced and Corrupt Organizations Act; 4.

27  Misappropriation of Trade Secrets; 5. Breach of Contract; 6. Intentional Interference

28

MGA'S EIGHTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS    NO. CV 05-2727 SGL (RNBx)

EXHIBIT ____6____  2

PAGE __66__

1  with Contract; 7. Breach of Fiduciary Duty; 8. Aiding and Abetting Breach of

2  Fiduciary Duty; 9. Breach of Duty of Loyalty; 10. Aiding and Abetting Breach of

3  Duty of Loyalty; 11. Conversion; 12. Unfair Competition; and 13. Declaratory Relief

4  filed July 12, 2007, in MGA v. Mattel, Inc., CV 05-02727, including any amendment

5  or supplement thereto.

6      11.    "DOCUMENT[S]" incorporates the full meaning of Federal Rule of

7  Civil Procedure 34, and shall be construed in the broadest sense to mean any and all

8  writings, tangible things and property, of any kind, that are now or that have been in

9  YOUR actual or constructive possession, custody or control, including, but not

10  limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed,

11  punched, copied, recorded, transcribed, graphic or photographic matter of any kind

12  or nature, in, through, or from which information may be embodied, translated,

13  conveyed or stored, whether an original, a draft or copy, however produced or

14  reproduced, whether sent or received or neither, including, but not limited to, notes,

15  memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports,

16  inter- and intra-office COMMUNICATIONS, work papers, work sheets, work

17  records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets,

18  estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders,

19  telephone records, telegrams, telexes, literature, invoices, contracts, purchase orders,

20  estimates, recordings, transcriptions of recordings, records, books, pamphlets,

21  periodicals, publications, papers, tapes, DVDs, video CDs, video, audio and digital

22  recordings, television commercials, story boards, website or other spot

23  advertisements, movies, movie trailers, prototypes, products, diaries, calendars,

24  charts, drawings, sketches, messages, photographs and data contained in or

25  accessible through any electronic data processing system, including, but not limited

26  to, computer databases, data sheets, data processing cards, computer files and tapes,

27  computer disks, CD-ROMs, computer metadata, microfilm, microfiche, electronic

28

EXHIBIT _____**6**_____  3

PAGE _____**67**_____

1 | mail, website and web pages and transcriptions thereof and all other

2 | memorializations of any conversations, meetings and conference, by telephone or

3 | otherwise.  The term DOCUMENT also means every copy of a DOCUMENT, where

4 | such copy is not an identical duplicate of the original, whether because of deletions,

5 | underlinings, showing of blind copies, initialing, signatures, receipt stamps,

6 | comments, notations, differences in stationery or any other difference or

7 | modification of any kind.

8 |     12.    "EMPLOYEE INVENTIONS AGREEMENT" shall mean any form of

9 | Mattel employment agreement concerning, *inter alia*, (i) ownership of inventions, (ii)

10 | trade secrets and/or (iii) conflicts, whether known by the title "Employee

11 | Confidential Information and Inventions Agreement" or any other title, including

12 | without limitation the form of Employee Inventions Agreement entitled "Employee

13 | Confidential Information and Inventions Agreement" executed by BRYANT on or

14 | about January 4, 1999.

15 |     13.    "LARIAN" means MGA's Chief Executive Officer Isaac Larian.

16 |     14.    "MATTEL," "YOU," or "YOUR" means the party Mattel, Inc. and any

17 | of its past or present officers, directors, employees, parents, subsidiaries, divisions,

18 | affiliates, predecessors-in-interest, and joint venture partners.

19 |     15.    "MATTEL'S INITIAL DISCLOSURES" means Mattel, Inc.'s

20 | Consolidated (1) Initial Disclosures Relating to MGA's Unfair Competition Claims,

21 | and (2) Second Supplemental Initial Disclosures Relating to Mattel's Claims Against

22 | Bryant and MGA, dated January 5, 2007 and any supplemental or amendment

23 | thereto.

24 |     16.    "MATTEL LITIGATION" shall mean the action now pending in the

25 | U.S. District Court for the Central District of California (Eastern District),

26 | consolidated under Case No. 04-9049 SGL (RNBx) before the Hon. Stephen Larson

27 | and formerly <u>Mattel v. Bryant, Inc.</u>, first filed in Los Angeles County Superior Court;

28 |

1  Bryant v. Mattel, Inc.; and MGA Entertainment, Inc. v. Mattel, Inc.; and all

2  counterclaims, cross-claims and defenses therein.

3      17.   "MGA" means MGA Entertainment, Inc. and any of its past or present

4  officers, directors, employees, parents, subsidiaries, divisions, affiliates,

5  predecessors-in-interest, and joint venture partners.

6      18.   "MGA LAWSUIT" means any lawsuit, litigation, arbitration or other

7  legal proceeding to which MGA is or was a party, excluding this ACTION.

8      19.   "MY SCENE" means and refers to each image, character, logo, doll,

9  fashion doll, toy, styling head, plush toy, play set, accessory, product, packaging or

10  any other thing that is or has ever been manufactured, marketed or sold by YOU, or

11  others under licensed by YOU, as part of a line of goods or merchandise commonly

12  known as, or sold and marketed under the name "My Scene."

13      20.   "MY SCENE DOLL" means any fashion doll that is or has ever been

14  distributed, marketed, sold or offered for sale under the name "My Scene" or as part

15  of the "My Scene" line, including separate themes.

16      21.   "MY SCENE LICENSE" means any license that REFERS OR

17  RELATES TO any MY SCENE PRODUCT.

18      22.   "MY SCENE PRODUCT" means any product, whether two-

19  dimensional or three-dimensional, and whether in tangible, digital, electronic or

20  other form: (i) that is or has ever been distributed, marketed or sold under the name

21  "My Scene" or as part of the "My Scene" line; (ii) that depicts, incorporates,

22  embodies, consists of or REFERS OR RELATES TO MY SCENE; and/or (iii) that

23  is or has ever been distributed, marketed or sold in any packaging that includes the

24  name "My Scene" or depicts, incorporates, embodies, consists of or REFERS OR

25  RELATES TO MY SCENE.

26      23.   "PERSON[S]" means any or all entities, including but not limited to,

27  any or all individuals, single proprietorships, associations, companies, firms,

28

MGA'S EIGHTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS   NO. CV 05-2727 SGL (RNBx)

**EXHIBIT** _6_  5

**PAGE** _69_

1  partnerships, joint ventures, corporations, employees or former employees, or any
2  other business, governmental, or labor entity, and any divisions, departments, or
3  other units thereof.

4      24.    "REFERRING OR RELATING TO" should be construed in the
5  broadest possible sense to mean concerning, consisting of, referring to, relating to,
6  describing, discussing, constituting, evidencing, containing, reflecting, mentioning,
7  pertaining to, citing, summarizing, analyzing or bearing any logical or factual
8  connection with the matter discussed.

9      25.    "RELEVANT TIME PERIOD" means the period from January 1, 1998
10 through the present.

11     26.    "SKU #" means Stock Keeping Unit number.

12     27.    "S:\MATTEL" means MATTEL's file server(s) on which electronic
13 files are kept, including, but not limited to, pathways such as
14 file://S:\Mattel\Larian\Larian%202000-2002.htm.

15     28.    "THIS ACTION" refers to the MATTEL LITIGATION, including
16 *Mattel, Inc. v. Bryant*, Case No. CV 04-9059 SGL (RNBx), filed on April 27, 2004
17 and all cases consolidated or coordinated therewith.

18     29.    The singular form includes the plural, and vice versa.

19     30.    The terms "any" and "all" are interchangeable.

20     31.    The terms "and" and "or" shall be construed disjunctively and
21 conjunctively, and each shall include the other whenever such dual construction will
22 serve to bring within the scope of any Request, DOCUMENTS that would otherwise
23 not be within its scope.

24                              **INSTRUCTIONS**

25     1.     YOU are instructed to produce all non-privileged DOCUMENTS in
26 YOUR possession, custody or control. A DOCUMENT is in YOUR "possession,
27 custody, or control" if it is in YOUR physical possession, or if, as a practical matter,

28

1  YOU have the ability, upon request, to obtain possession of the DOCUMENT or a
2  copy thereof from another person or entity who has physical possession of the
3  DOCUMENT.

4       2.     YOU are instructed to produce all non-privileged DOCUMENTS
5  responsive to these Requests to the extent YOU have not previously produced them
6  to MGA.

7       3.     If any DOCUMENT or category of DOCUMENTS is not produced in
8  full, please state with particularity the reason or reasons it is not being produced in
9  full.

10       4.     Each DOCUMENT is to be produced as it is kept in the usual course of
11  business, including all file folders, binders, notebooks, and other devices by which
12  such DOCUMENTS may be organized, separated, or identified.

13       5.     Each DOCUMENT maintained or stored electronically in native,
14  electronic format is to be produced with all relevant metadata intact and in an
15  appropriate and useable electronic manner.

16       6.     Unless otherwise noted, these Requests seek DOCUMENTS from
17  January 1, 1995, to the present.

18       7.     These Requests impose a continuing obligation subsequent to your
19  initial production to the full extent provided for in Rule 26(e) of the Federal Rules of
20  Civil Procedure.

21
22
23
24
25
26
27
28

MGA'S EIGHTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS    NO. CV 05-2727 SGL (RNBx)

EXHIBIT __6__   7

PAGE __71__

1

2 ## REQUESTS FOR PRODUCTION

3 **REQUEST NO. 770**

4

5     All EMPLOYEE INVENTIONS AGREEMENTS signed by any person

identified in MATTEL'S INITIAL DISCLOSURES or MATTEL'S response(s) to

6

any interrogatory served in THIS ACTION.

7

8

9 **REQUEST NO. 771**

10

11     All CONFLICT OF INTEREST QUESTIONNAIRES signed by any person

12 identified in MATTEL'S INITIAL DISCLOSURES or MATTEL'S response(s) to

13 any interrogatory served in THIS ACTION.

14

15

16 **REQUEST NO. 772**

17

18     All DOCUMENTS REFERRING OR RELATING TO any instance in which

any provision of an EMPLOYEE INVENTIONS AGREEMENT was breached or

19

alleged to be breached by any person identified in MATTEL'S INITIAL

20

DISCLOSURES or MATTEL'S response(s) to any interrogatory served in THIS

21

ACTION.

22

23

24 **REQUEST NO. 773**

25

26     All DOCUMENTS REFERRING OR RELATING TO any instance in which

27 any provision of a CONFLICT OF INTEREST QUESTIONNAIRE was breached or

28

MGA'S EIGHTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS   NO. CV 05-2727 SGL (RNBx)

EXHIBIT ___**6**___ 8

PAGE ___**72**___

1  alleged to be breached by any person identified in MATTEL'S INITIAL

2  DISCLOSURES or MATTEL'S response(s) to any interrogatory served in THIS

3  ACTION.

4

5

6  **REQUEST NO. 774**

7      The complete MATTEL personnel file for each PERSON identified in

8  MATTEL'S INITIAL DISCLOSURES or MATTEL'S response(s) to any

9  interrogatory served in THIS ACTION.

10

11

12

13  **REQUEST NO. 775**

14      All dolls, models, molds, casts, samples, packaging, ADVERTISING,

15  photographs, CDs, DVDs, tapes, or other tangible items or things that comprise or

16  relate to a BRATZ product or accessory.

17

18

19  **REQUEST NO. 776**

20      All DOCUMENTS REFERRING OR RELATING to any purchase or

21  acquisition by MATTEL of a BRATZ product or accessory, including but not limited

22  to, all invoices, receipts, and purchase orders.

23

24

25

26

27

28

MGA'S EIGHTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS    NO. CV 05-2727 SGL (RNBx)

9

EXHIBIT __6__

PAGE __73__

**REQUEST NO. 777**

All DOCUMENTS REFERRING OR RELATING TO MATTEL'S solicitation of and/or request for a presentation, proposal, bid and/or pitch relating to the advertising, marketing, and/or branding of MATTEL'S MY SCENE brand from Young & Rubicam Brands.

**REQUEST NO. 778**

All DOCUMENTS REFERRING OR RELATING TO MATTEL'S solicitation of and/or request for a presentation, proposal, bid and/or pitch relating to the advertising, marketing, and/or branding of MATTEL'S MY SCENE brand from any branding, advertising, or marketing agency.

**REQUEST NO. 779**

All DOCUMENTS REFERRING OR RELATING TO a presentation, proposal, bid and/or pitch made by Young & Rubicam Brands to MATTEL in the fall of 2003 in connection with MATTEL'S review and/or selection of an advertising agency for Mattel's MY SCENE brand.

**REQUEST NO. 780**

All DOCUMENTS REFERRING OR RELATING TO a presentation, proposal, bid and/or pitch made by any branding, advertising, or marketing agency to

EXHIBIT _6_  10

PAGE _74_

1  MATTEL in connection with MATTEL'S review and/or selection of an advertising

2  agency for Mattel's MY SCENE brand.

3

4

5  **REQUEST NO. 781**

6

7   All litigation documents filed and/or served by any of the parties in <u>Mattel, Inc.</u>

<u>v. Woolbro (Distributors) Ltd, Simba-Toys (Hong Kong) Ltd, Simba Toys GMBH &</u>

8

<u>Co KG</u>, HC 03 CO 2684 (High Court of Justice, Chancery Division), including but

9

not limited to pleadings, motions, briefs, discovery responses, disclosures, and expert

10

reports.

11

12

13

14  **REQUEST NO. 782**

15   MATTEL'S trial presentation materials (including any and all demonstrative

16  exhibits) in <u>Mattel, Inc. v. Woolbro (Distributors) Ltd, Simba-Toys (Hong Kong) Ltd,</u>

17  <u>Simba Toys GMBH & Co KG</u>, HC 03 CO 2684 (High Court of Justice, Chancery

18  Division), including but not limited to Mattel, Inc.'s trial exhibits or presentations

19  relating to similarities and/or differences between the various dolls at issue in said

20  litigation.

21

22

23  **REQUEST NO. 783**

24

25   Documents identified as Exhibits 31, 32, 33, and 34 in the "Index to Bundle 6

Claimant's Disclosure" (M0097406- M0097408) in <u>Mattel, Inc. v. Woolbro</u>

26

27

28

1 | (Distributors) Ltd. Simba-Toys (Hong Kong) Ltd. Simba Toys GMBH & Co KG,

2 | HC 03 CO 2684 (High Court of Justice, Chancery Division).

3

4

5 | **REQUEST NO. 784**

6

7 |    All transcripts for each day and/or portion of a day of trial and/or analogous

8 | proceeding before the court in Mattel, Inc. v. Woolbro (Distributors) Ltd. Simba-

9 | Toys (Hong Kong) Ltd. Simba Toys GMBH & Co KG, HC 03 CO 2684 (High Court

10 | of Justice, Chancery Division).

11

12

13 | **REQUEST NO. 785**

14 |    One sample, including packaging, of each of the following dolls sold in

15 | MATTEL'S MY SCENE line for each of the years 2001-2007:  Barbie, Madison,

16 | Kennedy, Chelsea, Nolee, Kenzie, and Delancey.

17

18

19 | **REQUEST NO. 786**

20 |    All DOCUMENTS REFERRING OR RELATING TO the Young and

21 | Rubicam Brand Asset Valuator, or any other valuation of the BARBIE, MY SCENE

22 | or BRATZ brand.

23

24

25

26

27

28

## REQUEST NO. 787

All DOCUMENTS REFERRING OR RELATING to any survey, focus group, consumer research or other market research (whether conducted by MATTEL or any third party) concerning MY SCENE, BRATZ, or BARBIE, including but not limited to the focus groups discussed on page 114 of the deposition of Kumi Croom and the consumer research conducted by Mattel Worldwide Consumer Research group (or any third party) discussed beginning on page 132 of the deposition of Kumi Croom.

## REQUEST NO. 788

All ad test reports (or other similar reports evaluating the efficacy of advertising) regarding any MY SCENE or BRATZ product, including but not limited to the ad test reports referenced on pages 118-129 of the deposition of Kumi Croom.

## REQUEST NO. 789

All DOCUMENTS REFERRING OR RELATING TO any investigation or surveillance of MGA, BRATZ, Carter Bryant, any member of Carter Bryant's family, Isaac Larian, any member of Isaac Larian's family, Jeanne Galvano, or Richard Irmen, including but not limited to all investigative files, reports and summaries.

**REQUEST NO. 790**

All DOCUMENTS REFERRING OR RELATING TO any interpretation by Mattel, or position taken by MATTEL regarding the meaning, of the EMPLOYEE INVENTIONS AGREEMENT.

**REQUEST NO. 791**

All DOCUMENTS REFERRING OR RELATING TO any interpretation by Mattel, or position taken by MATTEL regarding the meaning, of the CONFLICT OF INTEREST QUESTIONNAIRE.

**REQUEST NO. 792**

All DOCUMENTS REFERRING OR RELATING TO any trademark search or trademark clearance concerning products ultimately offered for sale under the MY SCENE brand, including but not limited to any trademark search for "Bryant" or "Carter" or "Carter Bryant."

**REQUEST NO. 793**

All DOCUMENTS REFERRING OR RELATING TO any patent, trademark, or copyright application or registration concerning products ultimately offered for sale under the MY SCENE brand.

**REQUEST NO. 794**

All DOCUMENTS REFERRING OR RELATING TO any patent, trademark or copyright application or registration concerning any BRATZ product, including but not limited to the ALLEGED COPYRIGHTED WORKS.

**REQUEST NO. 795**

Copies of the deposit materials for the ALLEGED COPYRIGHTED WORKS.

**REQUEST NO. 796**

All DOCUMENTS REFERRING OR RELATING TO any ADVERTISING for any of MGA's BRATZ line of dolls or accessories that YOU contend infringe MATTEL's copyrights.

**REQUEST NO. 797**

All DOCUMENTS REFERRING OR RELATING TO any alleged misrepresentations by MGA or Isaac Larian or any alleged disparagement of YOUR company, goods, products or services as alleged in paragraphs 79 through 81 of YOUR COUNTERCLAIMS.

DATED:      December 28, 2007

                              SKADDEN, ARPS, SLATE, MEAGHER &
                              FLOM, LLP


                              _____
                              Robert J. Herrington

                              Attorneys for Counter-Defendants, MGA
                              ENTERTAINMENT, INC., ISAAC LARIAN,
                              MGA ENTERTAINMENT (HK) LIMITED,
                              AND MGAE de MEXICO S.R.L. de C.V.

EXHIBIT __6__  16

PAGE __80__

# EXHIBIT 7

# THIS EXHIBIT IS FILED UNDER SEAL

# PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 8

# THIS EXHIBIT IS FILED UNDER SEAL

# PURSUANT TO PROTECTIVE ORDER

# Exhibit 9

*Law Offices*

## ALLRED, MAROKO & GOLDBERG
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS

6300 WILSHIRE BOULEVARD
SUITE 1500
LOS ANGELES, CALIFORNIA 90048
(323) 653-6530
FAX (323) 653-1660
www.amglaw.com

NATHAN GOLDBERG*
MICHAEL MAROKO*
GLORIA R. ALLRED*
JOHN S. WEST
DOLORES Y. LEAL
R. TOMÁS OLMOS
RENEE MOCHKATEL
MARGERY N. SOMERS
MARÍA G. DÍAZ

*A PROFESSIONAL CORPORATION

E-MAIL:
mdiaz@amglaw.com

January 22, 2008
*VIA U.S. MAIL & FACSIMILE*

Michael T. Zeller, Esq.
QUINN EMANUEL URQUHART OLIVER & HEDGES
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

### RE: Ana Cabrera

Dear Mr. Zeller:

Please be advised that we are in the process of being retained by Ms. Ana Isabel Cabrera and Beatrice Morales regarding the above entitled matter. We understand that you have in your possession a sealed box containing potentially private and personal items belonging to Ms. Cabrera.

The purpose of this letter is to request that you refrain from opening the box and that you immediately return the sealed box to our office. Please be advised that if you fail to comply with our request and in fact conduct an unauthorized search of the box, we will consider such actions to be an invasion of Ms. Cabrera's right to privacy and will seek all necessary legal action.

Finally, if there are any specific items that you believe are relevant to this litigation and that Ms. Cabrera possesses, we request that you seek these items through the appropriate discovery channels and communicate directly with our Firm as her legal representatives.

Your attention to this important matter is appreciated.

Very truly yours,

ALLRED, MAROKO & GOLDBERG

María G. Díaz
MARÍA G. DÍAZ

MGD:jg

EXHIBIT ___9___

PAGE ___91___

01/22/2008  17:19   132365?    0          LAW OFFICES OF              PAGE  03/03

Michael T. Zeller, Esq.
January 22, 2008
Page 2


cc: Ana Cabrera
    Thomas J. Nolan
    John Keker, Michael H. Page and Christina M. Anderson
    Michael E. Overland, David E. Scheper and Alexander H. Cote

EXHIBIT ____9____

PAGE ___92___

The attached fax was received from 13236531660 on 1/22/2008 at 4:21:38 PM

JobID: 079944

EXHIBIT __9__

PAGE __93__

# ALLRED, MAROKO & GOLDBERG
### 6300 WILSHIRE BLVD., SUITE 1500
### LOS ANGELES, CALIFORNIA  90048-5217
### Phone (323) 653-6530

## TELECOPIER TRANSMITTAL

**PLEASE DELIVER TO:**

    **NAME:**   Michael Zeller, Esq.

    **COMPANY:**  Quinn Emanuel Urquhart Oliver & Hedges

    **TELECOPY PHONE NUMBER:** 213/443-3100
                                     Phone: 213/443-3000

**DESCRIPTION:**   Re: *Mattel v. Bryant, Documents Relating to Ana Cabrera*

**MESSAGE FROM:**   María G. Díaz, Esq.

    **DATE:** January 22, 2008          **TIME:** 4:20 pm

    **TELECOPY PHONE NUMBER:**  (323) 653-4712

    **NUMBER OF PAGES including this cover sheet:**  3

        _____  Original will not follow
        __x__  Original will follow by:
        _____  Hard copy will follow by:

  _x__ Regular Mail          ___ Overnight Courier          ___ Hand Delivery

*THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.*

**COMMENTS:**


Please call Jocelyn at (323) 653-6530 if you do not receive all pages or if message is not legible.

EXHIBIT ___9___

PAGE ___94___

# Exhibit 10

JAN 3 1 2005

1  DIANA M. TORRES (S.B. #162284)
   PAULA E. AMBROSINI (S.B. # 193126)
2  ALICIA C. MEYER (S.B. #230189)
   O'MELVENY & MYERS, LLP
3  400 South Hope Street
   Los Angeles, California 90071-2899
4  Telephone: (213) 430-6000
   Facsimile: (213) 430-6407
5
   Attorneys for Defendant-in-Intervention,
6  MGA Entertainment, Inc.

7

8              UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10

11 | MATTEL, INC., a Delaware          | Case No.  CV04-9059 NM (RNBx)
     Corporation,                       |
12 |                                    | **MGA'S FIRST SET OF REQUESTS
                   Plaintiff,           | FOR THE PRODUCTION OF
13 |                                    | DOCUMENTS AND THINGS**
         v.                             |
14 | CARTER BRYANT, an individual,      | Date Filed:        April 27, 2004
     and MGA ENTERTAINMENT,            |
15 | INC., a California Corporation     | Discovery cut-off:  None
16 |             Defendant and          |
                Defendant-in-           |
17 |             Intervention.          |

18

19  PROPOUNDING PARTY:      MGA ENTERTAINMENT, INC.

20  RESPONDING PARTY:       MATTEL, INC.

21  SET NO.                 ONE

22

23

24

25

26

27

28

EXHIBIT ___10___

PAGE ___95___

MGA'S FIRST SET OF DOCUMENT REQUESTS

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, defendant-in-

3

intervention MGA Entertainment, Inc. ("MGA") requests that plaintiff Mattel, Inc.

4

("Mattel") produce all DOCUMENTS and tangible things described, in accordance

5

with the Definitions and Instructions set forth below, at 10:00 a.m. on March 2, 2005,

6

at the offices of O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles,

7

California 90071.

8

9

**INSTRUCTIONS**

10

1.     YOU are instructed to produce all non-privileged DOCUMENTS in

11

YOUR possession, custody or control.  A document is in YOUR "possession, custody,

12

or control" if it is in YOUR physical possession, or if, as a practical matter, YOU have

13

the ability, upon request, to obtain possession of the DOCUMENT or a copy thereof

14

from another person or entity who has physical possession of the DOCUMENT.

15

2.     If any DOCUMENT or category of DOCUMENTS is not produced in

16

full, please state with particularity the reason or reasons it is not being produced in

17

full, and describe, to the best of YOUR knowledge, information and belief, and with

18

as much particularity as possible, the DOCUMENT or portions of the DOCUMENT

19

that are not being produced.

20

3.     Each DOCUMENT is to be produced as it is kept in the usual course of

21

business, including all file folders, binders, notebooks, and other devices by which

22

such DOCUMENTS may be organized or separated.

23

4.     If YOU withhold any DOCUMENT, or portion of a DOCUMENT, on

24

grounds that it is protected from discovery by the attorney-client privilege, work

25

product doctrine, or other privilege, please set forth for each DOCUMENT or portion

26

of a DOCUMENT withheld:

27

28

EXHIBIT ___*10*___

PAGE ___*96*___

MGA'S FIRST SET OF DOCUMENT REQUESTS

1          (a)    The place, approximate date, and manner of recording, creating or
2                 otherwise preparing the DOCUMENT;
3          (b)    The names and organization position, if any, of each author,
4                 sender, and recipient of the DOCUMENT;
5          (c)    A general description of the subject matter of the DOCUMENT;
6          (d)    The basis of any claim of privilege; and
7          (e)    If work-product is asserted, the proceeding for which the
8                 DOCUMENT was created.
9      5.   For any DOCUMENT or category of DOCUMENTS that was, but no
10   longer is, in YOUR possession, custody or control, please describe each such
11   DOCUMENT as completely as possible and provide the following information:
12         (a)    The reason the DOCUMENT is no longer in YOUR possession,
13                custody or control;
14         (b)    The person or entity, if any, who has possession, custody or control
15                or, if unknown, so state;
16         (c)    If the DOCUMENT was destroyed or otherwise disposed of, state
17                (i) the manner of disposal (*i.e.* destruction, loss, discarding or other
18                means of disposal); (ii) the date of disposal; (iii) the reason for
19                disposal; (iv) the person authorizing disposal; (v) the person
20                disposing of the DOCUMENT; and (vi) the name and address of
21                the most recent custodian of the DOCUMENT
22     6.   These Requests impose a continuing obligation subsequent to your initial
23   production to the full extent provided for in Rule 26(e) of the Federal Rules of Civil
24   Procedure.
25
26
27
28

EXHIBIT ___10___
                              2        MGA'S FIRST SET OF DOCUMENT REQUESTS
PAGE ___97___

## DEFINITIONS

As used in these Requests:

1.     "BRATZ" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license, as part of a line of goods or merchandise commonly known as, or sold and marketed under the "Bratz" trademark or trade dress including but not limited to the "BRATZ CONCEPT," "FIRST BRATZ DOLLS," "BRATZ DOLLS," "BRATZ PACK", "LIL' BRATZ," "BRATZ PETZ," "BRATZ BABYZ," and "BRATZ BOYZ.

2.     "BRATZ CONCEPT" means and refers to each "BRATZ"-related image, drawing, picture, sculpt, mold, prototype and any other form of artwork predating the FIRST BRATZ DOLLS, examples of which have been the subject of Mr. Bryant's testimony and produced by Mr. Bryant bearing Bates serial numbers Bryant 00175-177; 00179-00182; 00189-00190; 00192-00196; 00198-00216; 00218; 00341; 00972; 01014; and 01116-01118.

3.     "FIRST BRATZ DOLLS" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license, as part of a line of goods or merchandise commonly known as, or sold and marketed under the "Bratz" trademark or trade dress and consisting of the following:  "Bratz Cloe", SKU 248521; "Bratz Cloe", SKU 248538; "Bratz Jade", SKU 248545; "Bratz Sasha, SKU 248552; "Bratz Yasmin", SKU 248569; "Bratz Pajama Power Fashion", SKU 248576; "Bratz Study Hall Fashion", SKU 248583; and "Bratz Dynamite Dance Fashion", SKU 248682.

4.     "BRATZ DOLLS" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license, as part of a line of

EXHIBIT ___10___

PAGE ___98___

3

MGA'S FIRST SET OF DOCUMENT REQUESTS

1 goods or merchandise commonly known as, or sold and marketed under the "Bratz"

2 trademark or trade dress excluding the "FIRST BRATZ DOLLS", "LIL' BRATZ,"

3 "BRATZ PETZ," and "BRATZ BABYZ" and including, without limitation, the

4 styling head commonly known as or sold and marketed as the "Bratz Funky Fashion

5 Make Over" styling head, and specifically including, without limitation, the images,

6 characters, dolls, playsets and other products and toys called or referred to as, or

7 named or marketed in association with the names "Cloe", "Jade", "Sasha", "Yasmin",

8 "Meygan", "Dana", "Fianna", "Nevra", "Cameron", "Dylan", "Eitan", "Koby",

9 "Cade", "Ailani", "Nazalia", "Talia", "Zada", "Mikko", "Colin", "Deavon", "Lakin",

10 "Flaunt It," "Beach Party", "Micro Bratz", "Xpress It", "Bratz Boyz", "Funk 'n'

11 Glow", "Funky Fashion Makeover", "Holiday Bratz – Sweetheart", "Holiday Bratz –

12 Spring Fling", "Holiday Bratz – Independence Dance", "Slumber Party", "Strut It",

13 "Spring Break", "Formal Funk", "Bratz Boyz Formal Funk", "Wintertime

14 Wonderland", "Style It!", "Funky Fashion Makeover", "Funk Out!", "Sun-Kissed

15 Summer", "Girls Nite Out!", "Wild Life Safari", and any other released, or yet to be

16 released, BRATZ named character or product theme.

17     5.    "BRATZ PACK" means and refers to any collection, compilation or

18 grouping of two or more images, characters or dolls that are or have ever been

19 manufactured, marketed or sold by MGA, or others under license, as part of a line of

20 goods or merchandise commonly known as, or sold and marketed under the "Bratz"

21 trademark or trade dress including, without limitation, the collection, compilation or

22 grouping of four female images, characters or dolls individually named, called or

23 referred to as "Bratz Cloe", "Bratz Jade", "Bratz Sasha", and "Bratz Yasmin" and any

24 other similar collection, compilation or grouping of two or more images, characters or

25 dolls, male or female, and specifically including, without limitation, the images,

26 characters and dolls called or referred to as, or named or marketed in association with

27 the names "Cloe", "Jade", "Sasha", "Yasmin", "Meygan", "Dana", "Fianna",

28

EXHIBIT ___10___

PAGE ___99___

MGA'S FIRST SET OF DOCUMENT REQUESTS

1   "Nevra", "Cameron", "Dylan", "Eitan", "Koby", "Cade", "Ailani", "Nazalia",

2   "Talia", "Zada", "Mikko", "Colin", "Deavon", "Lakin", and any other released, or yet

3   to be released, BRATZ character.

4        6.     "LIL' BRATZ" means and refers to each image, character, logo, doll,

5   toy, accessory, product, packaging or other thing or matter that is or has ever been

6   manufactured, marketed or sold by MGA, or others under license, as part of a line of

7   goods or merchandise commonly known as, or sold and marketed under the "Bratz"

8   trademark or trade dress and commonly labeled, called, referred to, named or

9   identified as "LIL' BRATZ", and specifically including, without limitation, the

10  images, characters, dolls, playsets and other products and toys called or referred to as,

11  or named or marketed in association with the names "Cloe", "Yasmin", "Sasha",

12  "Jade", "Ailani", "Nazalia", "Talia", "Zada", "Lil' Boyz", "Cameron", "Dylan",

13  "Eitan", "Koby", "Mikko", "Colin", "Deavon", "Lakin", "Lil' Bratz Slumber Party",

14  "Lil' Bratz Tote", "Lil' Bratz Spring Break", "Lil Bratz Dancefloor Funk", "Lil' Boyz

15  Dancefloor Funk", and any other released, or yet to be released, LIL' BRATZ

16  character or product theme.

17       7.     "BRATZ PETZ" means and refers to each image, character, logo, doll,

18  toy, accessory, product, packaging or other thing or matter that is or has ever been

19  manufactured, marketed or sold by MGA, or others under license, as part of a line of

20  goods or merchandise commonly known as, or sold and marketed under the "Bratz"

21  trademark or trade dress and commonly labeled, called, referred to, named or

22  identified as "BRATZ PETZ", and specifically including, without limitation, the

23  images, characters and toys called or referred to as, or named or marketed in

24  association with the names, "Bratz Catz", "Brigitte", "Jolie", "Kendall", "Daphne",

25  "Bratz Petz Tokyo Catz", "Kyoto", "Cho", "Nami", "Yukiko", "Bratz Petz Foxz",

26  "Carly", "Reilly", "Shayna", "Bree", "Bratz Petz Dogz", "Shae", "Kali", "Pilar",

27

28

EXHIBIT    *10*

PAGE    *100*

             5                   MGA'S FIRST SET OF DOCUMENT REQUESTS

1   "Abby", and any other released, or yet to be released, BRATZ PETZ character or

2   product theme.

3        8.    "BRATZ BABYZ" means and refers to each image, character, logo, doll,

4   toy, accessory, product, packaging or other thing or matter that is or has ever been

5   manufactured, marketed or sold by MGA, or others under license, as part of a line of

6   goods or merchandise commonly known as, or sold and marketed under the "Bratz"

7   trademark or trade dress and commonly labeled, called, referred to, named or

8   identified as "BRATZ BABYZ", and specifically including, without limitation, the

9   images, characters and dolls called or referred to as, or named or marketed in

10   association with the names, "Cloe", "Sasha", "Jade," "Yasmin", and any other

11   released, or yet to be released, BRATZ BABYZ character or product theme.

12        9.    "BRATZ BOYZ" means and refers to each male image, character, logo,

13   doll, toy, accessory, product, packaging or other thing or matter that is or has ever

14   been manufactured, marketed or sold by MGA, or others under license, as part of a

15   line of goods or merchandise commonly known as, or sold and marketed under the

16   "Bratz" trademark or trade dress and commonly labeled, called, referred to, named or

17   identified as "BRATZ BOYZ", and specifically including, without limitation, the

18   images characters, dolls, playsets and other products and toys called or referred to as,

19   or named or marketed in association with the names "Cameron", "Dylan", "Eitan",

20   "Koby", "Cade", "Mikko", "Colin", "Deavon", "Lakin", "Bratz Boyz Formal Funk",

21   "Boyz Funk Out!", "Boyz Sun-Kissed Summer", and any other released, or yet to be

22   released BRATZ BOYZ character or product theme.

23        10.    "BRATZ INTELLECTUAL PROPERTY" means all intellectual and

24   industrial property rights in and to BRATZ including, without limitation, all

25   copyrights, patents, trademarks, industrial designs, trade secrets, contract and

26   licensing rights, design rights, moral rights and trade dress rights, in any country of

27   the world.

28

EXHIBIT ___10___

PAGE ___101___

6

MGA'S FIRST SET OF DOCUMENT REQUESTS

11.    "BRYANT" means defendant Carter Bryant.

12.    "COMMUNICATION[S]" means any transmission of information from one person or entity to another, including, without limitation, by personal meeting, conversation, letter, telephone, facsimile or electronic mail.  Each request that encompasses information relating in any way to communications to, from or within a business or corporate entity is hereby designated to mean, and should be construed to include, all communications by and between representatives, employees, agents or servants of the business or corporate entity.

13.    "COMPLAINT" means and refers to the Complaint filed by Mattel Inc. in this matter on April 27, 2004 and now designated as Case No. CV 04-9059 NM (RNBx) in the United States District Court for the Central District of California.

14.    "DOCUMENT[S]" incorporates the full meaning of Federal Rule of Civil Procedure 24, and shall be construed in the broadest sense to mean any and all writings, tangible things and property, of any kind, that are now or that have been in YOUR actual or constructive possession, custody or control, including, but not limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed, punched, copied, recorded, transcribed, graphic or photographic matter of any kind or nature, in, through, or from which information may be embodied, translated, conveyed or stored, whether an original, a draft or copy, however produced or reproduced, whether sent or received or neither, including, but not limited to, notes, memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports, inter- and intra-office COMMUNICATIONS, work papers, work sheets, work records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets, estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders, telephone records, telegrams, telexes, literature, invoices, contracts, purchase orders, estimates, recordings, transcriptions of recordings, records, books, pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs, video, audio and digital

EXHIBIT ___10___

PAGE ___102___

7

MGA'S FIRST SET OF DOCUMENT REQUESTS

1   recordings, television commercials, story boards, website or other spot

2   advertisements, movies, movie trailers, prototypes, products, diaries, calendars,

3   charts, drawings, sketches, messages, photographs and data contained in or

4   accessible through any electronic data processing system, including, but not limited

5   to, computer databases, data sheets, data processing cards, computer files and tapes,

6   computer disks, CD-ROMs, computer meta-data, microfilm, microfiche, electronic

7   mail, website and web pages and transcriptions thereof and all other

8   memorializations of any conversations, meetings and conference, by telephone or

9   otherwise.  The term DOCUMENT also means every copy of a DOCUMENT, where

10   such copy is not an identical duplicate of the original, whether because of deletions,

11   underlinings, showing of blind copies, initialing, signatures, receipt stamps,

12   comments, notations, differences in stationery or any other difference or

13   modification of any kind.

14        15.   "MARKET RESEARCH" means any type of research, study, survey or

15   analysis of consumers or potential consumers of a product or potential product

16   including, without limitation, focus groups, consumer surveys, market analyses,

17   behavioral analyses and consumer research.

18        16.   "MATTEL," "PLAINTIFF," "YOU" or "YOUR" means plaintiff

19   MATTEL, Inc. and any of its past or present officers, directors, agents, employees,

20   representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates,

21   predecessors-in-interest and successors-in-interest, entities and persons acting in joint

22   venture or partnership relationships with YOU and any others acting on YOUR

23   behalf, pursuant to YOUR authority or subject to YOUR control.

24        17.   "MGA" means MGA Entertainment, Inc. and any of its past or present

25   officers, directors, agents, employees, representatives, consultants, attorneys, parents,

26   subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest,

27   entities and persons acting in joint venture or partnership relationships with MGA

EXHIBIT ___10___

PAGE ___103___

8

1   and any others acting on MGA's behalf, pursuant to its authority or subject to its

2   control.

3       18.   "MGA PRODUCTS" means any and all products offered for sale by

4   MGA Entertainment, Inc., other than BRATZ, including, without limitation, "4-Ever

5   Best Friends" and "Alien Racers".

6       19.   The singular form includes the plural, and vice versa.

7       20.   The terms "any" and "all" are interchangeable.

8       21.   The terms "and" and "or" shall be construed disjunctively and

9   conjunctively, and each shall include the other whenever such dual construction will

10  serve to bring within the scope of any Request, DOCUMENTS that would otherwise

11  not be within its scope.

12      22.   As used herein, the terms "relating to" and "referring to" should each be

13  construed in the broadest possible sense to mean concerning, consisting of, referring

14  to, describing, discussing, constituting, evidencing, containing, reflecting,

15  mentioning, pertaining to, citing, summarizing, analyzing or bearing any logical or

16  factual connection with the matter discussed.

17  ### REQUESTS FOR PRODUCTION

18

19  **REQUEST NO. 1.:**

20      All DOCUMENTS mentioning, referring or relating to BRATZ

21  INTELLECTUAL PROPERTY.

22  **REQUEST NO. 2.:**

23

24      All DOCUMENTS mentioning, referring or relating to the BRATZ CONCEPT.

25  **REQUEST NO. 3.:**

26      All DOCUMENTS mentioning, referring or relating to the FIRST BRATZ

27  DOLLS.

28

EXHIBIT _____10_____

              9

PAGE _____104_____

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 4.:**

All DOCUMENTS mentioning, referring or relating to the conception, creation, design, development or reduction to practice of the FIRST BRATZ DOLLS.

**REQUEST NO. 5.:**

All DOCUMENTS mentioning, referring or relating to BRATZ DOLLS, if YOU seek in this case to enjoin the sale of BRATZ DOLLS, or seek, as any part of YOUR recovery or damages in this case, any right or interest in, revenues or profits from, or lost profits or other damages caused by BRATZ DOLLS.

**REQUEST NO. 6.:**

All DOCUMENTS mentioning, referring or relating to the conception, creation, design, development or reduction to practice of BRATZ DOLLS, if YOU seek in this case to enjoin the sale of BRATZ DOLLS, or seek, as any part of YOUR recovery or damages in this case, any right or interest in, revenues or profits from, or lost profits or other damages caused by BRATZ DOLLS.

**REQUEST NO. 7.:**

All DOCUMENTS mentioning, referring or relating to the BRATZ PACK, if YOU seek in this case to enjoin the sale of the BRATZ PACK, or seek, as any part of YOUR recovery or damages in this case, any right or interest in, revenues or profits from, or lost profits or other damages caused by the BRATZ PACK.

**REQUEST NO. 8.:**

All DOCUMENTS mentioning, referring or relating to the conception, creation, design, development or reduction to practice of the BRATZ PACK, if YOU seek in this case to enjoin the sale of the BRATZ PACK, or seek, as any part of YOUR recovery or damages in this case, any right or interest in, revenues or profits from, or lost profits or other damages caused by the BRATZ PACK.

EXHIBIT _____ 10

PAGE _____ 105

10

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 9.:**

All DOCUMENTS mentioning, referring or relating to LIL' BRATZ, if YOU seek in this case to enjoin the sale of LIL' BRATZ, or seek, as any part of YOUR recovery or damages in this case, any right or interest in, revenues or profits from, or lost profits or other damages caused by LIL' BRATZ.

**REQUEST NO. 10.:**

All DOCUMENTS mentioning, referring or relating to the conception, creation, design, development or reduction to practice of LIL' BRATZ, if YOU seek in this case to enjoin the sale of LIL' BRATZ, or seek, as any part of YOUR recovery or damages in this case, any right or interest in, revenues or profits from, or lost profits or other damages caused by LIL' BRATZ.

**REQUEST NO. 11.:**

All DOCUMENTS mentioning, referring or relating to BRATZ PETZ, if YOU seek in this case to enjoin the sale of BRATZ PETZ, or seek, as any part of YOUR recovery or damages in this case, any right or interest in, revenues or profits from, or lost profits or other damages caused by BRATZ PETZ.

**REQUEST NO. 12.:**

All DOCUMENTS mentioning, referring or relating to the conception, creation, design, development or reduction to practice of BRATZ PETZ, if YOU seek in this case to enjoin the sale of BRATZ PETZ, or seek, as any part of YOUR recovery or damages in this case, any right or interest in, revenues or profits from, or lost profits or other damages caused by BRATZ PETZ.

**REQUEST NO. 13.:**

All DOCUMENTS mentioning, referring or relating to BRATZ BABYZ, if YOU seek in this case to enjoin the sale of BRATZ BABYZ, or seek, as any part of

EXHIBIT ___10___

PAGE ___106___

11

MGA'S FIRST SET OF DOCUMENT REQUESTS

1   YOUR recovery or damages in this case, any right or interest in, revenues or profits

2   from, or lost profits or other damages caused by BRATZ BABYZ.

3   **REQUEST NO. 14.:**

4
5       All DOCUMENTS mentioning, referring or relating to the conception, creation,

6   design, development or reduction to practice of the BRATZ BABYZ, if YOU seek in

7   this case to enjoin the sale of BRATZ BABYZ, or seek, as any part of YOUR

8   recovery or damages in this case, any right or interest in, revenues or profits from, or

9   lost profits or other damages caused by BRATZ BABYZ.

10  **REQUEST NO. 15.:**

11      All DOCUMENTS mentioning, referring or relating to BRATZ BOYZ, if YOU

12  seek in this case to enjoin the sale of BRATZ BOYZ, or seek, as any part of YOUR

13  recovery or damages in this case, any right or interest in, revenues or profits from, or

14  lost profits or other damages caused by BRATZ BOYZ.

15  **REQUEST NO. 16.:**

16
17      All DOCUMENTS mentioning, referring or relating to the conception, creation,

18  design, development or reduction to practice of BRATZ BOYZ, if YOU seek in this

19  case to enjoin the sale of BRATZ BOYZ, or seek, as any part of YOUR recovery or

20  damages in this case, any right or interest in, revenues or profits from, or lost profits

21  or other damages caused by BRATZ BOYZ.

22  **REQUEST NO. 17.:**

23      All DOCUMENTS referring or relating to BRATZ INTELLECTUAL

24  PROPERTY that YOU have given or shown to any person working on or involved in

25  product conception, creation, design or development at or for MATTEL.

26
27
28

EXHIBIT ___10___

PAGE ___107___

12

**REQUEST NO. 18.:**

All DOCUMENTS referring or relating to the BRATZ CONCEPT that YOU have given or shown to any person working on or involved in product conception, creation, design or development at or for MATTEL.

**REQUEST NO. 19.:**

All DOCUMENTS referring or relating to the FIRST BRATZ DOLLS that YOU have given or shown to any person working on or involved in product conception, creation, design or development at or for MATTEL.

**REQUEST NO. 20.:**

All DOCUMENTS referring or relating to the BRATZ PACK that YOU have given or shown to any person working on or involved in product conception, creation, design or development at or for MATTEL, if YOU seek in this case to enjoin the sale of the BRATZ PACK, or seek, as any part of YOUR recovery or damages in this case, any right or interest in, revenues or profits from, or lost profits or other damages caused by the BRATZ PACK.

**REQUEST NO. 21.:**

All DOCUMENTS referring or relating to BRATZ DOLLS that YOU have given or shown to any person working on or involved in product conception, creation, design or development at or for MATTEL, if YOU seek in this case to enjoin the sale of BRATZ DOLLS, or seek, as any part of YOUR recovery or damages in this case, any right or interest in, revenues or profits from, or lost profits or other damages caused by BRATZ DOLLS.

**REQUEST NO. 22.:**

All DOCUMENTS referring or relating to LIL' BRATZ that YOU have given or shown to any person working on or involved in product conception, creation,

EXHIBIT ___10___

PAGE ___108___

13

MGA'S FIRST SET OF DOCUMENT REQUESTS

1   design or development at or for MATTEL, if YOU seek in this case to enjoin the sale

2   of LIL' BRATZ, or seek, as any part of YOUR recovery or damages in this case, any

3   right or interest in, revenues or profits from, or lost profits or other damages caused by

4   LIL' BRATZ.

5   **REQUEST NO. 23.:**

6
7   All DOCUMENTS referring or relating to BRATZ PETZ that YOU have given

    or shown to any person working on or involved in product conception, creation,
8
9   design or development at or for MATTEL, if YOU seek in this case to enjoin the sale

10  of BRATZ PETZ, or seek, as any part of YOUR recovery or damages in this case, any

11  right or interest in, revenues or profits from, or lost profits or other damages caused by

    BRATZ PETZ.
12
13  **REQUEST NO. 24.:**

14  All DOCUMENTS referring or relating to BRATZ BABYZ that YOU have

15  given or shown to any person working on or involved in product conception, creation,

16  design or development at or for MATTEL, if YOU seek in this case to enjoin the sale

17  of BRATZ BABYZ, or seek, as any part of YOUR recovery or damages in this case,

18  any right or interest in, revenues or profits from, or lost profits or other damages

19  caused by BRATZ BABYZ.

20  **REQUEST NO. 25.:**

21
22  All DOCUMENTS referring or relating to BRATZ BOYZ that YOU have given

    or shown to any person working on or involved in product conception, creation,
23
24  design or development at or for MATTEL, if YOU seek in this case to enjoin the sale

25  of BRATZ BOYZ, or seek, as any part of YOUR recovery or damages in this case,

26  any right or interest in, revenues or profits from, or lost profits or other damages

    caused by BRATZ BOYZ.
27
28

EXHIBIT ___*10*___

PAGE ___*109*___

14

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 26.:**

All DOCUMENTS referring or relating to BRATZ INTELLECTUAL PROPERTY that YOU have given or shown to any person working on or involved in the conception, creation, design or development of any fashion doll, other than "Barbie".

**REQUEST NO. 27.:**

All DOCUMENTS referring or relating to the BRATZ CONCEPT that YOU have given or shown to any person working on or involved in the conception, creation, design or development of any fashion doll, other than "Barbie".

**REQUEST NO. 28.:**

All DOCUMENTS referring or relating to the FIRST BRATZ DOLLS that YOU have given or shown to any person working on or involved in the conception, creation, design or development of any fashion doll, other than "Barbie".

**REQUEST NO. 29.:**

All DOCUMENTS referring or relating to the BRATZ PACK that YOU have given or shown to any person working on or involved in the conception, creation, design or development of any fashion doll, other than "Barbie," if YOU seek in this case to enjoin the sale of the BRATZ PACK, or seek, as any part of YOUR recovery or damages in this case, any right or interest in, revenues or profits from, or lost profits or other damages caused by the BRATZ PACK.

**REQUEST NO. 30.:**

All DOCUMENTS referring or relating to BRATZ DOLLS that YOU have given or shown to any person working on or involved in the conception, creation, design or development of any fashion doll, other than "Barbie," if YOU seek in this case to enjoin the sale of BRATZ DOLLS, or seek, as any part of YOUR recovery or

EXHIBIT _____ *10*

PAGE _____ *110*

15

MGA'S FIRST SET OF DOCUMENT REQUESTS

1    damages in this case, any right or interest in, revenues or profits from, or lost profits

2    or other damages caused by BRATZ DOLLS.

3    **REQUEST NO. 31.:**

4
5         All DOCUMENTS referring or relating to LIL' BRATZ that YOU have given

6    or shown to any person working on or involved in the conception, creation, design or

7    development of any fashion doll, other than "Barbie," if YOU seek in this case to

8    enjoin the sale of LIL' BRATZ, or seek, as any part of YOUR recovery or damages in

9    this case, any right or interest in, revenues or profits from, or lost profits or other

10   damages caused by LIL' BRATZ.

11   **REQUEST NO. 32.:**

12        All DOCUMENTS referring or relating to BRATZ PETZ that YOU have given

13   or shown to any person working on or involved in the conception, creation, design or

14   development of any plush toy, if YOU seek in this case to enjoin the sale of BRATZ

15   PETZ, or seek, as any part of YOUR recovery or damages in this case, any right or

16   interest in, revenues or profits from, or lost profits or other damages caused by

17   BRATZ PETZ.

18   **REQUEST NO. 33.:**

19
20        All DOCUMENTS referring or relating to BRATZ BABYZ that YOU have

21   given or shown to any person working on or involved in product conception, creation,

22   design or development of any fashion doll, if YOU seek in this case to enjoin the sale

23   of BRATZ BABYZ, or seek, as any part of YOUR recovery or damages in this case,

24   any right or interest in, revenues or profits from, or lost profits or other damages

25   caused by BRATZ BABYZ.

26   **REQUEST NO. 34.:**

27        All DOCUMENTS referring or relating to BRATZ BOYZ that YOU have given

28   or shown to any person working on or involved in product conception, creation,

EXHIBIT ___10___

PAGE ___111___

16

MGA'S FIRST SET OF DOCUMENT REQUESTS

1    design or development of any fashion doll, other than "Barbie," if YOU seek in this

2    case to enjoin the sale of BRATZ BOYZ, or seek, as any part of YOUR recovery or

3    damages in this case, any right or interest in, revenues or profits from, or lost profits

4    or other damages caused by BRATZ BOYZ.

5    **REQUEST NO. 35.:**

6

7         All DOCUMENTS mentioning, referring or relating to the conception, creation,

8    design or development of BRATZ INTELLECTUAL PROPERTY that YOU have

9    given or shown to any third party.

10    **REQUEST NO. 36.:**

11         All DOCUMENTS mentioning, referring or relating to the conception, creation,

12    design or development of the BRATZ CONCEPT that YOU have given or shown to

13    any third party.

14    **REQUEST NO. 37.:**

15

16         All DOCUMENTS mentioning, referring or relating to the conception, creation,

17    design or development of the FIRST BRATZ DOLLS that YOU have given or shown

18    to any third party.

19    **REQUEST NO. 38.:**

20         All DOCUMENTS mentioning, referring or relating to the conception, creation,

21    design or development of BRATZ DOLLS that YOU have given or shown to any

22    third party, if YOU seek in this case to enjoin the sale of BRATZ DOLLS, or seek, as

23    any part of YOUR recovery or damages in this case, any right or interest in, revenues

24    or profits from, or lost profits or other damages caused by BRATZ DOLLS.

25    **REQUEST NO. 39.:**

26

27         All DOCUMENTS mentioning, referring or relating to the conception, creation,

28    design or development of the BRATZ PACK that YOU have given or shown to any

EXHIBIT ____10____

PAGE ____112____

17

1  third party, if YOU seek in this case to enjoin the sale of the BRATZ PACK, or seek,

2  as any part of YOUR recovery or damages in this case, any right or interest in,

3  revenues or profits from, or lost profits or other damages caused by the BRATZ

4  PACK.

5  **REQUEST NO. 40.:**

6
7       All DOCUMENTS mentioning, referring or relating to the conception, creation,

8  design or development of LIL' BRATZ that YOU have given or shown to any third

9  party, if YOU seek in this case to enjoin the sale of LIL' BRATZ, or seek, as any part

10  of YOUR recovery or damages in this case, any right or interest in, revenues or profits

11  from, or lost profits or other damages caused by LIL' BRATZ.

12  **REQUEST NO. 41.:**

13       All DOCUMENTS mentioning, referring or relating to the conception, creation,

14  design or development of BRATZ PETZ that YOU have given or shown to any third

15  party, if YOU seek in this case to enjoin the sale of BRATZ PETZ, or seek, as any

16  part of YOUR recovery or damages in this case, any right or interest in, revenues or

17  profits from, or lost profits or other damages caused by BRATZ PETZ.

18  **REQUEST NO. 42.:**

19
20       All DOCUMENTS mentioning, referring or relating to the conception, creation,

21  design or development of BRATZ BABYZ that YOU have given or shown to any

22  third party, if YOU seek in this case to enjoin the sale of BRATZ BABYZ, or seek, as

23  any part of YOUR recovery or damages in this case, any right or interest in, revenues

24  or profits from, or lost profits or other damages caused by BRATZ BABYZ.

25  **REQUEST NO. 43.:**

26       All DOCUMENTS mentioning, referring or relating to the conception, creation,

27  design or development of BRATZ BOYZ that YOU have given or shown to any third

28  party, if YOU seek in this case to enjoin the sale of BRATZ BOYZ, or seek, as any

EXHIBIT _____ *10*

PAGE _____ *113*

18

MGA'S FIRST SET OF DOCUMENT REQUESTS

1   part of YOUR recovery or damages in this case, any right or interest in, revenues or

2   profits from, or lost profits or other damages caused by BRATZ BOYZ.

3   **REQUEST NO. 44.:**

4

5       All DOCUMENTS discussing or mentioning Isaac Larian, authored between

    June 2000 and October 2001.

6

7   **REQUEST NO. 45.:**

8       All DOCUMENTS discussing or mentioning Paula Treantafellas, authored

9   between June 2000 and October 2001.

10   **REQUEST NO. 46.:**

11

12      All DOCUMENTS discussing or mentioning Mercedah Ward, authored

    between June 2000 and October 2001.

13

14  **REQUEST NO. 47.:**

15      All DOCUMENTS discussing or mentioning BRATZ, authored between June

16  2000 and October 2001.

17  **REQUEST NO. 48.:**

18

19      All DOCUMENTS discussing or mentioning BRATZ INTELLECTUAL

    PROPERTY.

20

21  **REQUEST NO. 49.:**

22      All DOCUMENTS discussing, mentioning, referring or relating to any

23  MATTEL desire, plan, idea, decision, goal, or objective to interfere with, injure, harm

24  or negatively impact Isaac Larian in any way, including, without limitation, his

25  reputation, income, revenue, business interests and relationships, which were

26  communicated to the public, retailers, the press, consumers, advertisers, media buyer

27  representatives, cable or broadcast television executives, the NPD Group, the Toy

28  Industry Association, any United States governmental unit or agency, any toy industry

EXHIBIT ____10____   19

PAGE ___114___                    MGA'S FIRST SET OF DOCUMENT REQUESTS

1  organization whether foreign, domestic or international, any manufacturing or

2  children's safety compliance or watchdog organization, and any organization,

3  company, agency, entity or person involved in commercial or product safety

4  evaluation, ratings or awards,

5  **REQUEST NO. 50.:**

6
7        All DOCUMENTS discussing, mentioning, referring or relating to any

8  MATTEL desire, plan, idea, decision, goal, or objective to interfere with, injure, harm

9  or negatively impact MGA in any way, including, without limitation, its reputation,

10  income, revenue, business interests and relationships, which were communicated to

11  the public, retailers, the press, consumers, advertisers, media buyer representatives,

12  cable or broadcast television executives, the NPD Group, the Toy Industry

13  Association, any United States governmental unit or agency, any toy industry

14  organization whether foreign, domestic or international, any manufacturing or

15  children's safety compliance or watchdog organization, and any organization,

16  company, agency, entity or person involved in commercial or product safety

17  evaluation, ratings or awards,

18  **REQUEST NO. 51.:**

19        All DOCUMENTS discussing, mentioning, referring or relating to any

20  MATTEL desire, plan, idea, decision, goal, or objective to interfere with, injure, harm

21  or negatively impact the commercial success of BRATZ in any way, including,

22  without limitation, the reputation, sales, popularity, price and availability of BRATZ,

23  which were communicated to the public, retailers, the press, consumers, advertisers,

24  media buyer representatives, cable or broadcast television executives, the NPD Group,

25  the Toy Industry Association, any United States governmental unit or agency, any toy

26  industry organization whether foreign, domestic or international, any manufacturing

27  or children's safety compliance or watchdog organization, and any organization,

28

EXHIBIT ___10___

PAGE ___115___

20                MGA'S FIRST SET OF DOCUMENT REQUESTS

1   company, agency, entity or person involved in commercial or product safety

2   evaluation, ratings or awards.

3   **REQUEST NO. 52.:**

4

5       All DOCUMENTS discussing, mentioning, referring or relating to any

6   MATTEL desire, plan, idea, decision, goal, or objective to interfere with, injure, harm

7   or negatively impact the commercial success of the FIRST BRATZ DOLLS in any

8   way, including, without limitation, the reputation, sales, popularity, price and

9   availability of the FIRST BRATZ DOLLS which were communicated to the public,

10  retailers, the press, consumers, advertisers, media buyer representatives, cable or

11  broadcast television executives, the NPD Group, the Toy Industry Association, any

12  United States governmental unit or agency, any toy industry organization whether

13  foreign, domestic or international, any manufacturing or children's safety compliance

14  or watchdog organization, and any organization, company, agency, entity or person

15  involved in commercial or product safety evaluation, ratings or awards.

16  **REQUEST NO. 53.:**

17      All DOCUMENTS discussing, mentioning, referring or relating to any

18  MATTEL desire, plan, idea, decision, goal, or objective to interfere with, injure, harm

19  or negatively impact the commercial success of BRATZ DOLLS in any way,

20  including, without limitation, the reputation, sales, popularity, price and availability of

21  BRATZ DOLLS which were communicated to the public, retailers, the press,

22  consumers, advertisers, media buyer representatives, cable or broadcast television

23  executives, the NPD Group, the Toy Industry Association, any United States

24  governmental unit or agency, any toy industry organization whether foreign, domestic

25  or international, any manufacturing or children's safety compliance or watchdog

26  organization, and any organization, company, agency, entity or person involved in

27  commercial or product safety evaluation, ratings or awards.

28

EXHIBIT ___10___

PAGE ___116___

21

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 54.:**

All DOCUMENTS discussing, mentioning, referring or relating to any MATTEL desire, plan, idea, decision, goal, or objective to interfere with, injure, harm or negatively impact the commercial success of the BRATZ PACK in any way, including, without limitation, the reputation, sales, popularity, price and availability of the BRATZ PACK, which were communicated to the public, retailers, the press, consumers, advertisers, media buyer representatives, cable or broadcast television executives, the NPD Group, the Toy Industry Association, any United States governmental unit or agency, any toy industry organization whether foreign, domestic or international, any manufacturing or children's safety compliance or watchdog organization, and any organization, company, agency, entity or person involved in commercial or product safety evaluation, ratings or awards.

**REQUEST NO. 55.:**

All DOCUMENTS discussing, mentioning, referring or relating to any MATTEL desire, plan, idea, decision, goal, or objective to injure, interfere with, harm or negatively impact the commercial success of LIL' BRATZ in any way, including, without limitation, the reputation, sales, popularity, price and availability of LIL' BRATZ, which were communicated to the public, retailers, the press, consumers, advertisers, media buyer representatives, cable or broadcast television executives, the NPD Group, the Toy Industry Association, any United States governmental unit or agency, any toy industry organization whether foreign, domestic or international, any manufacturing or children's safety compliance or watchdog organization, and any organization, company, agency, entity or person involved in commercial or product safety evaluation, ratings or awards.

EXHIBIT _10_

PAGE _117_

22

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 56.:**

All DOCUMENTS discussing, mentioning, referring or relating to any MATTEL desire, plan, idea, decision, goal, or objective to interfere with, injure, harm or negatively impact the commercial success of BRATZ PETZ in any way, including, without limitation, the reputation, sales, popularity, price and availability of BRATZ PETZ, which were communicated to the public, retailers, the press, consumers, advertisers, media buyer representatives, cable or broadcast television executives, the NPD Group, the Toy Industry Association, any United States governmental unit or agency, any toy industry organization whether foreign, domestic or international, any manufacturing or children's safety compliance or watchdog organization, and any organization, company, agency, entity or person involved in commercial or product safety evaluation, ratings or awards.

**REQUEST NO. 57.:**

All DOCUMENTS discussing, mentioning, referring or relating to any MATTEL desire, plan, idea, decision, goal, or objective to interfere with, injure, harm or negatively impact the commercial success of BRATZ BABYZ in any way, including, without limitation, the reputation, sales, popularity, price and availability of BRATZ BABYZ, which were communicated to the public, retailers, the press, consumers, advertisers, media buyer representatives, cable or broadcast television executives, the NPD Group, the Toy Industry Association, any United States governmental unit or agency, any toy industry organization whether foreign, domestic or international, any manufacturing or children's safety compliance or watchdog organization, and any organization, company, agency, entity or person involved in commercial or product safety evaluation, ratings or awards.

**REQUEST NO. 58.:**

All DOCUMENTS discussing, mentioning, referring or relating to any

EXHIBIT _____10_____

PAGE _____118_____

23

1    MATTEL desire, plan, idea, decision, goal, or objective to interfere with, injure, harm

2    or negatively impact the commercial success of BRATZ BOYZ in any way, including,

3    without limitation, the reputation, sales, popularity, price and availability of BRATZ

4    BOYZ, which were communicated to the public, retailers, the press, consumers,

5    advertisers, media buyer representatives, cable or broadcast television executives, the

6    NPD Group, the Toy Industry Association, any United States governmental unit or

7    agency, any toy industry organization whether foreign, domestic or international, any

8    manufacturing or children's safety compliance or watchdog organization, and any

9    organization, company, agency, entity or person involved in commercial or product

10   safety evaluation, ratings or awards.

11   **REQUEST NO. 59.:**

12

13       All DOCUMENTS discussing, mentioning, referring or relating to any

14   MATTEL desire, plan, idea, decision, goal, or objective to interfere with, injure, harm

15   or negatively impact the commercial success of any MGA PRODUCT in any way,

16   including, without limitation, any such product's reputation, sales, popularity, price

17   and availability, which were communicated to the public, retailers, the press,

18   consumers, advertisers, media buyer representatives, cable or broadcast television

19   executives, the NPD Group, the Toy Industry Association, any United States

20   governmental unit or agency, any toy industry organization whether foreign, domestic

21   or international, any manufacturing or children's safety compliance or watchdog

22   organization, and any organization, company, agency, entity or person involved in

23   commercial or product safety evaluation, ratings or awards.

24   **REQUEST NO. 60.:**

25       All COMMUNICATIONS from Mr. Eckert, Mr. Bousquette, Sujata Luther,

26   Richard Dixon, Tim Kiplin, Adrienne Fontanella, Neil Freedman or Jerry Cleary to

27   the public, retailers, the press, consumers, advertisers, media buyer representatives,

28   cable or broadcast television executives, the NPD Group, the Toy Industry

EXHIBIT _____10_____

PAGE _____119_____

24          MGA'S FIRST SET OF DOCUMENT REQUESTS

1   Association, any United States governmental unit or agency, any toy industry

2   organization whether foreign, domestic or international, any manufacturing or

3   children's safety compliance or watchdog organization, and any organization,

4   company, agency, entity or person involved in commercial or product safety

5   evaluation, ratings or awards.

6   **REQUEST NO. 61.:**

7

8       All COMMUNICATIONS from Mr. Eckert, Mr. Bousquette , Sujata Luther,

9   Richard Dixon, Tim Kiplin, Adrienne Fontanella, Neil Freedman or Jerry Cleary to

10  the public, retailers, the press, consumers, advertisers, media buyer representatives,

11  cable or broadcast television executives, the NPD Group, the Toy Industry

12  Association, any United States governmental unit or agency, any toy industry

13  organization whether foreign, domestic or international, any manufacturing or

14  children's safety compliance or watchdog organization, and any organization,

15  company, agency, entity or person involved in commercial or product safety

16  evaluation, ratings or awards mentioning, referring or relating to the BRATZ

17  CONCEPT.

18  **REQUEST NO. 62.:**

19      All COMMUNICATIONS from Mr. Eckert, Mr. Bousquette, Sujata Luther,

20  Richard Dixon, Tim Kiplin, Adrienne Fontanella, Neil Freedman or Jerry Cleary to

21  the public, retailers, the press, consumers, advertisers, media buyer representatives,

22  cable or broadcast television executives, the NPD Group, the Toy Industry

23  Association, any United States governmental unit or agency, any toy industry

24  organization whether foreign, domestic or international, any manufacturing or

25  children's safety compliance or watchdog organization, and any organization,

26  company, agency, entity or person involved in commercial or product safety

27  evaluation, ratings or awards mentioning, referring or relating to the FIRST BRATZ

28  DOLLS.

EXHIBIT _____ 10

PAGE _____ 120

25

MGA'S FIRST SET OF DOCUMENT REQUESTS

1  **REQUEST NO. 63.:**

2      All COMMUNICATIONS from Mr. Eckert, Mr. Bousquette, Sujata Luther,

3  Richard Dixon, Tim Kiplin, Adrienne Fontanella, Neil Freedman or Jerry Cleary to

4  the public, retailers, the press, consumers, advertisers, media buyer representatives,

5  cable or broadcast television executives, the NPD Group, the Toy Industry

6  Association, any United States governmental unit or agency, any toy industry

7  organization whether foreign, domestic or international, any manufacturing or

8  children's safety compliance or watchdog organization, and any organization,

9  company, agency, entity or person involved in commercial or product safety

10  evaluation, ratings or awards mentioning, referring or relating to BRATZ DOLLS.

11  **REQUEST NO. 64.:**

12

13      All COMMUNICATIONS from Mr. Eckert, Mr. Bousquette, Sujata Luther,

14  Richard Dixon, Tim Kiplin, Adrienne Fontanella, Neil Freedman or Jerry Cleary to

15  the public, retailers, the press, consumers, advertisers, media buyer representatives,

16  cable or broadcast television executives, the NPD Group, the Toy Industry

17  Association, any United States governmental unit or agency, any toy industry

18  organization whether foreign, domestic or international, any manufacturing or

19  children's safety compliance or watchdog organization, and any organization,

20  company, agency, entity or person involved in commercial or product safety

21  evaluation, ratings or awards mentioning, referring or relating to the BRATZ PACK.

22  **REQUEST NO. 65.:**

23      All COMMUNICATIONS from Mr. Eckert, Mr. Bousquette, Sujata Luther,

24  Richard Dixon, Tim Kiplin, Adrienne Fontanella, Neil Freedman or Jerry Cleary to

25  the public, retailers, the press, consumers, advertisers, media buyer representatives,

26  cable or broadcast television executives, the NPD Group, the Toy Industry

27  Association, any United States governmental unit or agency, any toy industry

28

EXHIBIT ____10____

26

PAGE ____121____

MGA'S FIRST SET OF DOCUMENT REQUESTS

1   organization whether foreign, domestic or international, any manufacturing or

2   children's safety compliance or watchdog organization, and any organization,

3   company, agency, entity or person involved in commercial or product safety

4   evaluation, ratings or awards mentioning, referring or relating to LIL' BRATZ.

5   **REQUEST NO. 66.:**

6   

7   All COMMUNICATIONS from Mr. Eckert, Mr. Bousquette, Sujata Luther,

8   Richard Dixon, Tim Kiplin, Adrienne Fontanella, Neil Freedman or Jerry Cleary to

9   the public, retailers, the press, consumers, advertisers, media buyer representatives,

10   cable or broadcast television executives, the NPD Group, the Toy Industry

11   Association, any United States governmental unit or agency, any toy industry

12   organization whether foreign, domestic or international, any manufacturing or

13   children's safety compliance or watchdog organization, and any organization,

14   company, agency, entity or person involved in commercial or product safety

15   evaluation, ratings or awards mentioning, referring or relating to BRATZ PETZ.

16   **REQUEST NO. 67.:**

17   All COMMUNICATIONS from Mr. Eckert, Mr. Bousquette, Sujata Luther,

18   Richard Dixon, Tim Kiplin, Adrienne Fontanella, Neil Freedman or jerry Cleary to the

19   public, retailers, the press, consumers, advertisers, media buyer representatives, cable

20   or broadcast television executives, the NPD Group, the Toy Industry Association, any

21   United States governmental unit or agency, any toy industry organization whether

22   foreign, domestic or international, any manufacturing or children's safety compliance

23   or watchdog organization, and any organization, company, agency, entity or person

24   involved in commercial or product safety evaluation, ratings or awards mentioning,

25   referring or relating to BRATZ BABYZ.

26   

27   

28   

EXHIBIT ___10___

PAGE ___122___

27

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 68.:**

All COMMUNICATIONS from Mr. Eckert, Mr. Bousquette, Sujata Luther, Richard Dixon, Tim Kiplin, Adrienne Fontanella, Neil Freedman or Jerry Cleary to the public, retailers, the press, consumers, advertisers, media buyer representatives, cable or broadcast television executives, the NPD Group, the Toy Industry Association, any United States governmental unit or agency, any toy industry organization whether foreign, domestic or international, any manufacturing or children's safety compliance or watchdog organization, and any organization, company, agency, entity or person involved in commercial or product safety evaluation, ratings or awards mentioning, referring or relating to BRATZ BOYZ.

**REQUEST NO. 69.:**

All DOCUMENTS discussing, mentioning, referring or relating to any MATTEL desire, plan, idea, decision, goal, or objective to copy, imitate, replicate, emulate, duplicate or mimic BRATZ.

**REQUEST NO. 70.:**

All DOCUMENTS discussing, mentioning, referring or relating to any MATTEL desire, plan, idea, decision, goal, or objective to copy, imitate, replicate, emulate, duplicate or mimic any MGA PRODUCT with which BRYANT had any involvement.

**REQUEST NO. 71.:**

All DOCUMENTS mentioning, discussing, referring or relating to any BRATZ ITEM, which is dated or was authored or created before the date that the BRATZ ITEM was first offered for sale in retail stores to the general public.

EXHIBIT __10__

PAGE __123__

28

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 72.:**

All DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to the similarities or differences between the BRATZ CONCEPT on the one hand and any idea, concept, creation, design, work, or intellectual property owned by YOU on the other, which YOU contend served, or may have served, as the idea, inspiration, source or origin for the BRATZ CONCEPT.

**REQUEST NO. 73.:**

All DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to the similarities or differences between the FIRST BRATZ DOLLS on the one hand and any idea, concept, creation, design, work, or intellectual property owned by YOU on the other, which YOU contend served, or may have served, as the idea, inspiration, source or origin for the FIRST BRATZ DOLLS.

**REQUEST NO. 74.:**

All DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to the similarities or differences between BRATZ DOLLS on the one hand and any idea, concept, creation, design, work, or intellectual property owned by YOU on the other, which YOU contend served, or may have served, as the idea, inspiration, source or origin for BRATZ DOLLS.

**REQUEST NO. 75.:**

All DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to the similarities or differences between the BRATZ PACK on the one hand and any idea, concept, creation, design, work, or intellectual property owned by YOU on the other, which YOU contend served, or may have served, as the idea, inspiration, source or origin for the BRATZ PACK.

EXHIBIT ___10___

PAGE ___124___

29                    MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 76.:**

All DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to the similarities or differences between LIL' BRATZ on the one hand and any idea, concept, creation, design, work, or intellectual property owned by YOU on the other, which YOU contend served, or may have served, as the idea, inspiration, source or origin for LIL' BRATZ.

**REQUEST NO. 77.:**

All DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to the similarities or differences between BRATZ PETZ on the one hand and any idea, concept, creation, design, work, or intellectual property owned by YOU on the other, which YOU contend served, or may have served, as the idea, inspiration, source or origin for BRATZ PETZ.

**REQUEST NO. 78.:**

All DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to the similarities or differences between BRATZ BABYZ on the one hand and any idea, concept, creation, design, work, or intellectual property owned by YOU on the other, which YOU contend served, or may have served, as the idea, inspiration, source or origin for BRATZ BABYZ.

**REQUEST NO. 79.:**

All DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to the similarities or differences between BRATZ BOYZ on the one hand and any idea, concept, creation, design, work, or intellectual property owned by YOU on the other, which YOU contend served, or may have served, as the idea, inspiration, source or origin for BRATZ BOYZ.

EXHIBIT ___10___

PAGE ___125___

30                    MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 80.:**

All DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to the similarities or differences between any MGA PRODUCT on the one hand and any idea, concept, creation, design, work, or intellectual property owned by YOU on the other, which YOU contend served, or may have served, as the idea, inspiration, source or origin for any MGA PRODUCT.

**REQUEST NO. 81.:**

All DOCUMENTS quantifying, calculating, estimating, referring to, or relating to the damage or harm YOU have purportedly suffered as a result of BRYANT's alleged conduct including, without limitation, all DOCUMENTS evidencing the cause, nature, extent, and amount or value of any unjust enrichment, lost revenues, lost profits, lost sales, price erosion, lost or converted property, consequential and incidental damage, information or intellectual property provided to any competitor, benefit obtained by any competitor, lost opportunity, lost advantage, lost benefit, and any other form of alleged harm.

**REQUEST NO. 82.:**

All DOCUMENTS mentioning, referring or relating to the conception, creation, design, development or reduction to practice of "Toon Teens" and any related or derivative works, including, without limitation, DOCUMENTS commissioning, assigning, contracting for, or otherwise requesting work on or assistance with the conception, creation, design, development or reduction to practice of said work(s).

**REQUEST NO. 83.:**

All DOCUMENTS constituting contracts, licenses, assignments or conveyances involving, referring or relating to "Toon Teens" and any derivative works.

EXHIBIT ___10___

PAGE ___126___

31                    MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 84.:**

All COMMUNICATIONS exchanged between YOU on the one hand and the U.S. Patent and Trademark Office or U.S. Copyright Office on the other referring or relating to "Toon Teens" and any related or derivative works including, without limitation, applications, registrations, amendments, office actions and correspondence and all DOCUMENTS mentioning, referring or relating to such COMMUNICATIONS.

**REQUEST NO. 85.:**

All DOCUMENTS constituting, mentioning, referring to, or relating to any decision to apply for, register for, file, amend, withdraw, or abandon any trademark, service mark, trade dress, or copyright application or registration for "Toon Teens" and any derivative works.

**REQUEST NO. 86.:**

All DOCUMENTS constituting, modeling, showing, demonstrating, depicting, or describing "Toon Teens" and any derivative works including, without limitation, photographs, visual reproductions, drawings, sketches, models, molds, prototypes and any type of three dimensional image, including all original molds, models and prototypes.

**REQUEST NO. 87.:**

All DOCUMENTS that name or are otherwise sufficient to identify the individuals who worked on or were involved in any way with the conception, creation, design and development of the "Toon Teens" idea, concept or products and any related or derivative works.

**REQUEST NO. 88.:**

All DOCUMENTS that name or are otherwise sufficient to identify the

EXHIBIT ___10___

PAGE ___127___

32                     MGA'S FIRST SET OF DOCUMENT REQUESTS

1   individuals who worked on or were involved in any way in the plans for creating,

2   designing, developing and marketing "Toon Teens," including individuals who

3   worked on or were involved in any way in (1) deciding to create, design, develop or

4   market "Toon Teens" and (2) deciding to stop or abandon the design, development or

5   marketing of "Toon Teens".

6   **REQUEST NO. 89.:**

7
8        All DOCUMENTS mentioning, discussing, referring or relating to all of the

9   facts and circumstances leading up to, surrounding or any way connected with the

10  development, marketing and abandonment of "Toon Teens" including, without

11  limitation, the reasons for and factors influencing the creation, design, development

12  and marketing of "Toon Teens," and the reasons for and factors influencing the

13  cessation or abandonment of the design, development or marketing of "Toon Teens".

14  **REQUEST NO. 90.:**

15       All DOCUMENTS evidencing that BRYANT had access to "Toon Teens," at

16  any stage of creation, concept, design or development.

17  **REQUEST NO. 91.:**

18
19       All DOCUMENTS referring or relating to BRATZ INTELLECTUAL

20  PROPERTY that YOU have given or shown to any person who worked on or was

21  involved in the conception, creation, design or development of "Toon Teens".

22  **REQUEST NO. 92.:**

23       All DOCUMENTS referring or relating to the BRATZ CONCEPT that YOU

24  have given or shown to any person who worked on or was involved in the conception,

25  creation, design or development of "Toon Teens".

26
27
28

EXHIBIT _10_

33

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 93.:**

All DOCUMENTS referring or relating to the FIRST BRATZ DOLLS that YOU have given or shown to any person who worked on or was involved in the conception, creation, design or development of "Toon Teens".

**REQUEST NO. 94.:**

All DOCUMENTS referring or relating to the BRATZ PACK that YOU have given or shown to any person who worked on or was involved in the conception, creation, design or development of "Toon Teens".

**REQUEST NO. 95.:**

All DOCUMENTS referring or relating to the BRATZ BOYZ that YOU have given or shown to any person who worked on or was involved in the conception, creation, design or development of "Toon Teens".

**REQUEST NO. 96.:**

All DOCUMENTS used or referred to in creating and designing "Toon Teens," including, without limitation, all DOCUMENTS that served as artistic inspiration for any aspect, feature or element of "Toon Teens".

**REQUEST NO. 97.:**

All DOCUMENTS, including MARKET RESEARCH, referring or relating to, or influencing MATTEL's decision to create, design, develop or abandon "Toon Teens," including, without limitation, the reasons for and factors influencing its decision.

**REQUEST NO. 98.:**

All DOCUMENTS expressing, mentioning, discussing, referring or relating to any actual, alleged or perceived connection between BRYANT, BRATZ, BRATZ INTELLECTUAL PROPERTY or MGA on the one hand, and "Toon Teens" on the

EXHIBIT _____ 10

PAGE _____ 129

34

MGA'S FIRST SET OF DOCUMENT REQUESTS

1  other, including any actual, alleged or perceived similarities between BRATZ,

2  BRATZ INTELLECTUAL PROPERTY or any MGA PRODUCT and "Toon Teens"

3  and any actual, alleged or perceived, copying, conversion, theft of ideas and theft of

4  trade secrets by BRYANT.

5  **REQUEST NO. 99.:**

6

7  All DOCUMENTS expressing, mentioning, discussing, referring or relating to

8  any actual, alleged or perceived connection between BRYANT, BRATZ, BRATZ

9  INTELLECTUAL PROPERTY or MGA on the one hand, and "Toon Teens" on the

10  other, including any actual, alleged or perceived similarities between BRATZ,

11  BRATZ INTELLECTUAL PROPERTY or any MGA PRODUCT and "Toon Teens"

12  and any actual, alleged or perceived, copying, conversion, theft of ideas and theft of

13  trade secrets by MGA.

14  **REQUEST NO. 100.:**

15  All DOCUMENTS evidencing, detailing, discussing, describing, depicting,

16  mentioning, referring to, or relating to the similarities or differences between the

17  BRATZ CONCEPT on the one hand and "Toon Teens" on the other.

18  **REQUEST NO. 101.:**

19

20  All DOCUMENTS evidencing, detailing, discussing, describing, depicting,

21  mentioning, referring to, or relating to the similarities or differences between the

22  FIRST BRATZ DOLLS on the one hand and "Toon Teens" on the other.

23  **REQUEST NO. 102.:**

24  All DOCUMENTS evidencing, detailing, discussing, describing, depicting,

25  mentioning, referring to, or relating to the similarities or differences between BRATZ

26  DOLLS on the one hand and "Toon Teens" on the other, if YOU seek in this case to

27  enjoin the sale of BRATZ DOLLS, or seek, as any part of YOUR recovery or

28

EXHIBIT ___10___

PAGE ___130___

35

MGA'S FIRST SET OF DOCUMENT REQUESTS

1   damages in this case, any right or interest in, revenues or profits from, or lost profits

2   or other damages caused by BRATZ DOLLS.

3   **REQUEST NO. 103.:**

4

5       All DOCUMENTS evidencing, detailing, discussing, describing, depicting,

6   mentioning, referring to, or relating to the similarities or differences between the

7   BRATZ PACK on the one hand and "Toon Teens" on the other, if YOU seek in this

8   case to enjoin the sale of the BRATZ PACK, or seek, as any part of YOUR recovery

9   or damages in this case, any right or interest in, revenues or profits from, or lost

10  profits or other damages caused by the BRATZ PACK.

11  **REQUEST NO. 104.:**

12      All DOCUMENTS evidencing, detailing, discussing, describing, depicting,

13  mentioning, referring to, or relating to the similarities or differences between LIL'

14  BRATZ on the one hand and "Toon Teens" on the other, if YOU seek in this case to

15  enjoin the sale of LIL' BRATZ, or seek, as any part of YOUR recovery or damages in

16  this case, any right or interest in, revenues or profits from, or lost profits or other

17  damages caused by LIL' BRATZ.

18  **REQUEST NO. 105.:**

19

20      All DOCUMENTS evidencing, detailing, discussing, describing, depicting,

21  mentioning, referring to, or relating to the similarities or differences between BRATZ

22  PETZ on the one hand and "Toon Teens" on the other, if YOU seek in this case to

23  enjoin the sale of BRATZ PETZ, or seek, as any part of YOUR recovery or damages

24  in this case, any right or interest in, revenues or profits from, or lost profits or other

25  damages caused by BRATZ PETZ.

26  **REQUEST NO. 106.:**

27      All DOCUMENTS evidencing, detailing, discussing, describing, depicting,

28  mentioning, referring to, or relating to the similarities or differences between BRATZ

EXHIBIT ___10___

PAGE ___131___

36

MGA'S FIRST SET OF DOCUMENT REQUESTS

1   BABYZ on the one hand and "Toon Teens" on the other, if YOU seek in this case to

2   enjoin the sale of BRATZ BABYZ, or seek, as any part of YOUR recovery or

3   damages in this case, any right or interest in, revenues or profits from, or lost profits

4   or other damages caused by BRATZ BABYZ.

5   **REQUEST NO. 107.:**

6

7   All DOCUMENTS evidencing, detailing, discussing, describing, depicting,

    mentioning, referring to, or relating to the similarities or differences between BRATZ

8   BOYZ on the one hand and "Toon Teens" on the other, if YOU seek in this case to

9   enjoin the sale of BRATZ BOYZ, or seek, as any part of YOUR recovery or damages

10  in this case, any right or interest in, revenues or profits from, or lost profits or other

11  damages caused by BRATZ BOYZ.

12

13  **REQUEST NO. 108.:**

14  If YOU contend that BRATZ has impacted or affected YOUR design,

15  development, marketing, sales, profits or revenue from "Toon Teens," or anything

16  developed or derived from "Toon Teens," as part of YOUR damages in this case, all

17  DOCUMENTS, evidencing, demonstrating, discussing, mentioning, referring, relating

18  to or calculating that impact or affect.

19  **REQUEST NO. 109.:**

20

21  If YOU contend that BRATZ has impacted or affected YOUR sales, profits or

22  revenue from, or development of, "Toon Teens" or any product developed or derived

    from "Toon Teens" as part of YOUR damages in this case, all DOCUMENTS

23  evidencing, demonstrating, discussing, mentioning, referring to or relating to such

24  product's creation, design, development, sales and marketing and all MARKET

25  RESEARCH and all sales and market analyses referring or relating to any such

26  product.

27

28

EXHIBIT ___10___    37

PAGE ___132___

**REQUEST NO. 110.:**

All DOCUMENTS evidencing, referring to or relating to whether and how "Toon Teens" was ever used or utilized in any way by BRYANT or MGA in the creation, design, derivation or development of any doll, toy or product of any nature or form that was ever marketed or sold including, without limitation, BRATZ.

**REQUEST NO. 111.:**

All DOCUMENTS evidencing, referring to or relating to whether and how "Toon Teens" was ever used or utilized in any way by YOU in the creation, design, derivation or development of any doll, toy or product of any nature or form that was ever marketed or sold including, without limitation, "My Scene".

**REQUEST NO. 112.:**

All DOCUMENTS evidencing, referring or relating to whether BRATZ or BRATZ INTELLECTUAL PROPERTY was ever used or utilized in any way by YOU in the creation, design or development of any doll, toy or product of any nature or form that was ever marketed or sold including, without limitation, "My Scene."

**REQUEST NO. 113.:**

All DOCUMENTS that name or are otherwise sufficient to identify the individuals who worked on or were involved in any way with the conception, creation, design and development of the "My Scene" idea, concept or products.

**REQUEST NO. 114.:**

All DOCUMENTS referring or relating to BRATZ or BRATZ INTELLECTUAL PROPERTY that YOU have given or shown to any person working on or involved in the conception, creation, design or development of "My Scene."

EXHIBIT ___10___   38        MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE ___133___

**REQUEST NO. 115.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from "My Scene" as part of YOUR damages in this case, all DOCUMENTS, evidencing, demonstrating, discussing, mentioning, referring, relating to or calculating that impact or affect.

**REQUEST NO. 116.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from "My Scene" as part of YOUR damages in this case, all DOCUMENTS evidencing, demonstrating, discussing, mentioning, referring or relating to "My Scene," including, without limitation, its creation, design, development, sales and marketing and all MARKET RESEARCH and all sales and market analyses referring or relating to "My Scene".

**REQUEST NO. 117.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from "My Scene" as part of YOUR damages in this case, all DOCUMENTS, including MARKET RESEARCH, referring or relating to, or influencing MATTEL's decision to create, design or develop "My Scene," including, without limitation, the reasons for and factors influencing its decision.

**REQUEST NO. 118.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from "My Scene" as part of YOUR damages in this case, all NPD DOCUMENTS relied on for press statements and quarterly reports regarding "My Scene".

EXHIBIT _____10_____

_____39_____

PAGE _____134_____

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 119.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from "My Scene" as part of YOUR damages in this case, all DOCUMENTS used or referred to in creating and designing "My Scene," including, without limitation, all DOCUMENTS that served as artistic inspiration for any aspect, feature or element of any "My Scene" product.

**REQUEST NO. 120.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from "My Scene" as part of YOUR damages in this case, all DOCUMENTS, including MARKET RESEARCH, referring or relating to, or influencing MATTEL's decision to create, design or develop "My Scene," including, without limitation, the reasons for and factors influencing its decision.

**REQUEST NO. 121.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from "My Scene" as part of YOUR damages in this case, all DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to the similarities or differences between BRATZ on the one hand and "My Scene" on the other.

**REQUEST NO. 122.:**

DOCUMENTS that name or are otherwise sufficient to identify the individuals who worked on or were involved in any way with the conception, creation, design and development of the "My Scene" styling head idea, concept or products.

**REQUEST NO. 123.:**

All DOCUMENTS referring or relating to BRATZ or BRATZ INTELLECTUAL PROPERTY that YOU have given or shown to any person

EXHIBIT _____10_____

_____40_____

PAGE _____135_____

MGA'S FIRST SET OF DOCUMENT REQUESTS

1    working on or involved in the conception, creation, design or development of the "My

2    Scene" styling head.

3    **REQUEST NO. 124.:**

4

5        If YOU contend that BRATZ has impacted or affected YOUR sales, profits or

6    revenue from the "My Scene" styling head as part of YOUR damages in this case, all

7    DOCUMENTS, evidencing, demonstrating, discussing, mentioning, referring, relating

8    to or calculating that impact or affect.

9    **REQUEST NO. 125.:**

10       If YOU contend that BRATZ has impacted or affected YOUR sales, profits or

11   revenue from the "My Scene" styling head as part of YOUR damages in this case, all

12   DOCUMENTS evidencing, demonstrating, discussing, mentioning, referring or

13   relating to the "My Scene" styling head including, without limitation, its creation,

14   design, development, sales and marketing and all MARKET RESEARCH and all

15   sales and market analyses referring or relating to the "My Scene" styling head.

16   **REQUEST NO. 126.:**

17

18       If YOU contend that BRATZ has impacted or affected YOUR sales, profits or

19   revenue from the "My Scene" styling head as part of YOUR damages in this case, all

20   DOCUMENTS, including MARKET RESEARCH, referring or relating to, or

21   influencing MATTEL's decision to create, design or develop the "My Scene" styling

22   head including, without limitation, the reasons for and factors influencing its decision.

23   **REQUEST NO. 127.:**

24       If YOU contend that BRATZ has impacted or affected YOUR sales, profits or

25   revenue from the "My Scene" styling head as part of YOUR damages in this case, all

26   NPD DOCUMENTS relied on for press statements and quarterly report relating to the

27   "My Scene" styling head.

28

EXHIBIT _____ 10

PAGE _____ 136

41                    MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 128.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from the "My Scene" styling head as part of YOUR damages in this case, all DOCUMENTS used or referred to in creating and designing the "My Scene" styling head including, without limitation, all DOCUMENTS that served as artistic inspiration for any aspect, feature or element of the "My Scene" styling head.

**REQUEST NO. 129.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from the "My Scene" styling head as part of YOUR damages in this case, all DOCUMENTS, including MARKET RESEARCH, referring or relating to, or influencing MATTEL's decision to create, design, develop or abandon the "My Scene" styling head including, without limitation, the reasons for and factors influencing its decision.

**REQUEST NO. 130.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from the "My Scene" styling head as part of YOUR damages in this case, all DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to the similarities or differences between BRATZ on the one hand and the "My Scene" styling head on the other.

**REQUEST NO. 131.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from, or development of, "Diva Starz" as part of YOUR damages in this case, all DOCUMENTS that name or are otherwise sufficient to identify the individuals who worked on or were involved in any way with the conception, creation, design, development, sales and marketing of the "Diva Starz" idea, concept or products.

EXHIBIT ___10___

PAGE ___137___

42                     MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 132.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from, or development of, "Diva Starz" as part of YOUR damages in this case, all DOCUMENTS, evidencing, demonstrating, discussing, mentioning, referring, relating to or calculating that impact or affect.

**REQUEST NO. 133.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from, or development of, "Diva Starz" as part of YOUR damages in this case, all DOCUMENTS evidencing, demonstrating, discussing, mentioning, referring or relating to "Diva Starz," including, without limitation, its creation, design, development, sales and marketing and all MARKET RESEARCH and all sales and market analyses referring or relating to "Diva Starz".

**REQUEST NO. 134.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from, or development of, "Diva Starz" as part of YOUR damages in this case, all DOCUMENTS, including MARKET RESEARCH, referring or relating to, or influencing MATTEL's decision to create, design or develop "Diva Starz," including, without limitation, the reasons for and factors influencing its decision.

**REQUEST NO. 135.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from, or development of, "Diva Starz" as part of YOUR damages in this case, all NPD DOCUMENTS relied on for press statements and quarterly report relating to "Diva Starz".

EXHIBIT ___10___

43

PAGE ___138___

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 136.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from "Diva Starz" as part of YOUR damages in this case, all DOCUMENTS used or referred to in creating and designing "Diva Starz" including, without limitation, all DOCUMENTS that served as artistic inspiration for any aspect, feature or element of "Diva Starz".

**REQUEST NO. 137.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from "Diva Starz" as part of YOUR damages in this case, all DOCUMENTS, including MARKET RESEARCH, referring or relating to, or influencing MATTEL's decision to create, design, develop or abandon the "Diva Starz" including, without limitation, the reasons for and factors influencing its decision.

**REQUEST NO. 138.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from "Diva Starz" as part of YOUR damages in this case, all DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to the similarities or differences between BRATZ on the one hand and "Diva Starz" on the other.

**REQUEST NO. 139.:**

If you contend that BRATZ or BRATZ INTELLECTUAL PROPERTY was copied from, derived from or infringes "Diva Starz," all DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to the similarities or differences between BRATZ and BRATZ INTELLECTUAL PROPERTY on the one hand and "Diva Starz" on the other.

EXHIBIT ___10___

44

PAGE ___139___

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 140.:**

All DOCUMENTS that name or are otherwise sufficient to identify the individuals who worked on or were involved in any way with the conception, creation, design and development of the "Flavas" idea, concept or products.

**REQUEST NO. 141.:**

All DOCUMENTS referring or relating to BRATZ or BRATZ INTELLECTUAL PROPERTY that YOU have given or shown to any person working on or involved in the conception, creation, design or development of "Flavas".

**REQUEST NO. 142.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from "Flavas" as part of YOUR damages in this case, all DOCUMENTS, evidencing, demonstrating, discussing, mentioning, referring, relating to or calculating that impact or affect.

**REQUEST NO. 143.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from "Flavas" as part of YOUR damages in this case, all DOCUMENTS evidencing, demonstrating, discussing, mentioning, referring or relating to "Flavas" including, without limitation, its creation, design, development, sales and marketing and all MARKET RESEARCH and all sales and market analyses referring or relating to "Flavas".

**REQUEST NO. 144.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from "Flavas" as part of YOUR damages in this case, all DOCUMENTS, including MARKET RESEARCH, referring or relating to, or influencing MATTEL's

EXHIBIT _____ 10 _____
45

PAGE _____ 140 _____

MGA'S FIRST SET OF DOCUMENT REQUESTS

1   decision to create, design or develop "Flavas" including, without limitation, the

2   reasons for and factors influencing its decision.

3   **REQUEST NO. 145.:**

4

5        If YOU contend that BRATZ has impacted or affected YOUR sales, profits or

6   revenue from "Flavas" as part of YOUR damages in this case, all NPD

7   DOCUMENTS relied on for press statements and quarterly report relating to "Flavas".

8   **REQUEST NO. 146.:**

9        If YOU contend that BRATZ has impacted or affected YOUR sales, profits or

10   revenue from "Flavas" as part of YOUR damages in this case, all DOCUMENTS used

11   or referred to in creating and designing "Flavas" including, without limitation, all

12   DOCUMENTS that served as artistic inspiration for any aspect, feature or element of

13   "Flavas".

14   **REQUEST NO. 147.:**

15

16        If YOU contend that BRATZ has impacted or affected YOUR sales, profits or

17   revenue from "Flavas" as part of YOUR damages in this case, all DOCUMENTS,

18   including MARKET RESEARCH, referring or relating to, or influencing MATTEL's

19   decision to create, design, develop or abandon the "Flavas" including, without

20   limitation, the reasons for and factors influencing its decision.

21   **REQUEST NO. 148.:**

22        If YOU contend that BRATZ has impacted or affected YOUR sales, profits or

23   revenue from "Flavas" as part of YOUR damages in this case, all DOCUMENTS

24   evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or

25   relating to the similarities or differences between BRATZ on the one hand and

26   "Flavas" on the other.

27

28

EXHIBIT ___10___

PAGE ___141___

46          MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 149.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from "Barbie" as part of YOUR damages in this case, all DOCUMENTS that name or are otherwise sufficient to identify the individuals who worked on or were involved in any way with the sales and marketing of "Barbie" since the introduction of BRATZ.

**REQUEST NO. 150.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from "Barbie" as part of YOUR damages in this case, all DOCUMENTS, evidencing, demonstrating, discussing, mentioning, referring, relating to or calculating that impact or affect.

**REQUEST NO. 151.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from "Barbie" as part of YOUR damages in this case, all DOCUMENTS evidencing, demonstrating, discussing, mentioning, referring or relating to "Barbie" sales trends and marketing including, without limitation, all MARKET RESEARCH and all sales and market analyses referring or relating to "Barbie".

**REQUEST NO. 152.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from any "Barbie" doll or toy as part of YOUR damages in this case, all DOCUMENTS evidencing, demonstrating, discussing, mentioning, referring or relating to such "Barbie" doll or toy including, without limitation, its creation, design, development, sales and marketing and all MARKET RESEARCH and all sales and market analyses referring or relating to such toy.

EXHIBIT _10_

PAGE _142_

47

**REQUEST NO. 153.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from any "Barbie" doll or toy as part of YOUR damages in this case, all DOCUMENTS, including MARKET RESEARCH, referring or relating to, or influencing MATTEL's decision to create, design, develop or modify such "Barbie" doll or toy including, without limitation, the reasons for and factors influencing its decision.

**REQUEST NO. 154.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from any "Barbie" doll or toy as part of YOUR damages in this case, all DOCUMENTS used or referred to in creating and designing such doll or toy including, without limitation, all DOCUMENTS that served as artistic inspiration for any aspect, feature or element of such doll or toy.

**REQUEST NO. 155.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from any "Barbie" doll or toy as part of YOUR damages in this case, all DOCUMENTS, including MARKET RESEARCH, referring or relating to, or influencing MATTEL's decision to create, design, develop or abandon such doll or toy including, without limitation, the reasons for and factors influencing its decision.

**REQUEST NO. 156.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from any "Barbie" doll or toy as part of YOUR damages in this case, all DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to the similarities or differences between BRATZ on the one hand and such doll or toy on the other.

EXHIBIT _10_

PAGE _143_

48

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 157.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from "Barbie" as part of YOUR damages in this case, all DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to the similarities or differences between BRATZ on the one hand and "Barbie" on the other.

**REQUEST NO. 158.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from any doll or toy, including any fashion doll other than "Barbie," as part of YOUR damages in this case, all DOCUMENTS that name or are otherwise sufficient to identify the individuals who worked on or were involved in any way with the conception, creation, design, development, sales and marketing of any such doll or toy.

**REQUEST NO. 159.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from any doll or toy, including any fashion doll other than "Barbie," as part of YOUR damages in this case, all DOCUMENTS, evidencing, demonstrating, discussing, mentioning, referring, relating to or calculating that impact or affect.

**REQUEST NO. 160.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from any doll or toy, including any fashion doll other than "Barbie," as part of YOUR damages in this case, all DOCUMENTS evidencing, demonstrating, discussing, mentioning, referring or relating to such doll or toy including, without limitation, its creation, design, development, sales and marketing and all MARKET RESEARCH and all sales and market analyses referring or relating to such toy.

EXHIBIT _____10_____

PAGE _____144_____

49

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 161.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from any doll or toy, including any fashion doll other than "Barbie," as part of YOUR damages in this case, all DOCUMENTS, including MARKET RESEARCH, referring or relating to, or influencing MATTEL's decision to create, design, develop or modify such doll or toy including, without limitation, the reasons for and factors influencing its decision.

**REQUEST NO. 162.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from any doll or toy, including any fashion doll other than "Barbie," as part of YOUR damages in this case, all DOCUMENTS used or referred to in creating and designing such doll or toy including, without limitation, all DOCUMENTS that served as artistic inspiration for any aspect, feature or element of such doll or toy.

**REQUEST NO. 163.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from any doll or toy, including any fashion doll other than "Barbie" as part of YOUR damages in this case, all DOCUMENTS, including MARKET RESEARCH, referring or relating to, or influencing MATTEL's decision to create, design, develop or abandon such doll or toy including, without limitation, the reasons for and factors influencing its decision.

**REQUEST NO. 164.:**

If YOU contend that BRATZ has impacted or affected YOUR sales, profits or revenue from any doll or toy, including any fashion doll other than "Barbie" as part of YOUR damages in this case, all DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to the similarities or differences between BRATZ on the one hand and such doll or toy on the other.

EXHIBIT _10_

PAGE _145_

50

**REQUEST NO. 165.:**

If you contend that BRATZ or BRATZ INTELLECTUAL PROPERTY was copied from, derived from or infringes any intellectual property owned by MATTEL, all DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to the similarities or differences between BRATZ and BRATZ INTELLECTUAL PROPERTY on the one hand and such intellectual property on the other.

**REQUEST NO. 166.:**

If you contend that BRATZ or BRATZ INTELLECTUAL PROPERTY was copied from, derived from or infringes any idea, concept, design or product owned by MATTEL, all DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to such product and the similarities or differences between BRATZ and BRATZ INTELLECTUAL PROPERTY on the one hand and such product on the other.

**REQUEST NO. 167.:**

All DOCUMENTS evidencing, detailing, discussing, describing, depicting, mentioning, referring to, or relating to the similarities or differences between BRATZ and BRATZ INTELLECTUAL PROPERTY on the one hand and "Funky Tweenz" on the other.

**REQUEST NO. 168.:**

DOCUMENTS that name or are otherwise sufficient to identify the individuals who worked on or were involved in any way with the conception, creation, design and development of any fashion doll at or for MATTEL, other than "Barbie," since 1995.

**REQUEST NO. 169.:**

DOCUMENTS that name or are otherwise sufficient to identify the individuals

EXHIBIT __*10*__

PAGE __*146*__

51

MGA'S FIRST SET OF DOCUMENT REQUESTS

1  who worked on or were involved in any way with the marketing of any fashion doll at

2  or for MATTEL, other than "Barbie," since 1995.

3  **REQUEST NO. 170.:**

4

5     All DOCUMENTS discussing, mentioning, relating or referring to MATTEL's

6  target market and marketing strategy for its lines of fashion doll before "BRATZ"

7  became commercially available in the summer of 2001, going back to 1995, and

8  MATTEL's target market and marketing strategy for its lines of fashion dolls after

9  "BRATZ" became commercially available in the summer of 2001 to the present.

10  **REQUEST NO. 171.:**

11     All DOCUMENTS discussing, mentioning, relating or referring to any decision

12  or resolution of MATTEL's Board of Directors relating to MATTEL's target market

13  and marketing strategy for its lines of fashion doll before "BRATZ" became

14  commercially available in the summer of 2001, going back to 1995, and MATTEL's

15  target market and marketing strategy for its lines of fashion dolls after "BRATZ"

16  became commercially available in the summer of 2001 to the present.

17  **REQUEST NO. 172.:**

18

19     All DOCUMENTS discussing, mentioning, relating or referring to any decision

20  or resolution of MATTEL's Board of Directors relating to litigation against

21  BRYANT.

22  **REQUEST NO. 173.:**

23     All DOCUMENTS discussing, mentioning, relating or referring to any decision

24  or resolution of MATTEL's Board of Directors relating to litigation against MGA.

25

26

27

28

EXHIBIT __10__

52

PAGE __147__

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 174.:**

All DOCUMENTS discussing, mentioning, relating or referring to any decision or resolution of MATTEL's Board of Directors relating to litigation involving BRATZ.

**REQUEST NO. 175.:**

All DOCUMENTS constituting, discussing, mentioning, relating or referring to MARKET RESEARCH relating to "BRATZ".

**REQUEST NO. 176.:**

All DOCUMENTS sent to or received from the NPD Group discussing, mentioning, relating or referring to "BRATZ", Isaac Larian, MGA or any MGA past or present employee including, without limitation, Victoria O'Connor and Paula Treantafellas.

**REQUEST NO. 177.:**

All DOCUMENTS sent to or received from CARU discussing, mentioning, relating or referring to "BRATZ", Isaac Larian or MGA.

**REQUEST NO. 178.:**

All DOCUMENTS sent to or received from TIA discussing, mentioning, relating or referring to "BRATZ", Isaac Larian or MGA.

**REQUEST NO. 179.:**

All DOCUMENTS sent to or received from Warner Brothers discussing, mentioning, relating or referring to "BRATZ", Isaac Larian, MGA or any MGA past or present employee including, without limitation, Victoria O'Connor and Paula Treantafellas.

EXHIBIT __10__

PAGE __148__

53

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 180.:**

All DOCUMENTS mentioning, referring or relating to BRYANT including, but not limited to, BRYANT's personnel file and all DOCUMENTS on MATTEL's Zeus computer system that mention BRYANT.

**REQUEST NO. 181.:**

All DOCUMENTS constituting, evidencing, referring to or reflecting BRYANT's work at MATTEL, including the projects he worked on.

**REQUEST NO. 182.:**

All DOCUMENTS evidencing the days and hours BRYANT worked for MATTEL, including all time entries and data on MATTEL's "P2" computer system, and all records reflecting the days and hours BRYANT was on vacation or leave of absence.

**REQUEST NO. 183.:**

All DOCUMENTS constituting, consisting of, comprising or reflecting records of all phone calls BRYANT placed and received and all facsimiles BRYANT sent and received during his employment at MATTEL, including, specifically, without limitation, all phone logs, phone records and facsimile transmittals and facsimile records evidencing all phone calls and facsimiles BRYANT placed or received in September and October 2000.

**REQUEST NO. 184.:**

All DOCUMENTS evidencing, showing, demonstrating, depicting, describing, constituting, mentioning, referring to, or relating to any good sold, marketed, or distributed by MGA, or any image, slogan, logo, brand, trademark, trade dress, service mark or other matter used by MGA, which YOU believe is the same as or similar to any idea, concept, creation, design or other work or property owned by YOU.

EXHIBIT ___10___

PAGE ___149___

54

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 185.:**

All DOCUMENTS constituting, mentioning, referring to, or relating to YOUR discovery of, and any efforts made by YOU to discover, the source, author, designer, creator, and owner of any good sold marketed, or distributed by MGA, or any image, slogan, logo, brand, trademark, trade dress, service mark or other matter, which YOU believe is the same as or similar to any idea, concept, creation, design or other work or property owned by YOU, including that date of any such discovery and discovery efforts.

**REQUEST NO. 186.:**

All DOCUMENTS evidencing, mentioning, referring to, or relating to BRYANT's involvement with, work on, or connection to the conception, design, creation or development of BRATZ or BRATZ INTELLECTUAL PROPERTY.

**REQUEST NO. 187.:**

All DOCUMENTS evidencing, mentioning, referring to, or relating to BRYANT's involvement with, contract with, and work with or for MGA.

**REQUEST NO. 188.:**

All DOCUMENTS mentioning, referring to, or relating to YOUR decision to sue BRYANT including, without limitation, COMMUNICATIONS mentioning, discussing, describing, referring to, or relating to the reasons and factors that influenced the decision, the timing of the decision, and the date and manner in which YOU made the decision.

**REQUEST NO. 189.:**

All DOCUMENTS mentioning, referring to, or relating to any consideration given by MATTEL to acquiring MGA.

EXHIBIT 10

PAGE 150

55

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 190.:**

All DOCUMENTS mentioning, referring to, or relating to any decision not to sue BRYANT including, without limitation, COMMUNICATIONS mentioning, discussing, describing, referring to, or relating to the reasons and factors that influenced the decision, the timing of the decision, and the date and manner in which YOU made the decision.

**REQUEST NO. 191.:**

All DOCUMENTS evidencing, mentioning, referring to, or relating to the date and manner in which YOU first learned of BRYANT's involvement with, work on, and connection to the conception, design, creation or development of BRATZ or BRATZ INTELLECTUAL PROPERTY.

**REQUEST NO. 192.:**

All DOCUMENTS evidencing, mentioning, referring to, or relating to the date and manner in which YOU first learned of BRYANT's involvement with, contract with, and work with or for MGA.

**REQUEST NO. 193.:**

All DOCUMENTS evidencing, supporting, documenting or relating to the reasons why YOU did not file a lawsuit against BRYANT sooner than the date of YOUR original complaint including, without limitation, DOCUMENTS evidencing or reflecting YOUR efforts to investigate BRYANT's involvement with, contract with, and work with or for MGA.

**REQUEST NO. 194.:**

All DOCUMENTS evidencing, supporting, documenting or relating to the reasons why YOU did not file a lawsuit against BRYANT sooner than the date of YOUR original complaint including, without limitation, DOCUMENTS evidencing or

EXHIBIT __10__

PAGE __151__

56

MGA'S FIRST SET OF DOCUMENT REQUESTS

1  reflecting YOUR efforts to investigate the nature and scope of BRYANT's

2  involvement with, work on, or connection to the conception, design, creation or

3  development of BRATZ.

4  **REQUEST NO. 195.:**

5
6       All DOCUMENTS evidencing, supporting, documenting or relating to the

7  reasons why YOU did not file a lawsuit against BRYANT sooner than the date of

8  YOUR original complaint including, without limitation, all non-privileged

9  DOCUMENTS evidencing or reflecting YOUR efforts to investigate the nature and

10  scope of BRYANT's involvement with, work on, or connection to the conception,

11  design, creation or development of BRATZ INTELLECTUAL PROPERTY.

12  **REQUEST NO. 196.:**

13       All DOCUMENTS mentioning, referring to, or relating to this lawsuit including,

14  without limitation, COMMUNICATIONS with third parties and the press about this

15  lawsuit or that mention, refer to, or relate to this lawsuit.

16  **REQUEST NO. 197.:**

17
18       All COMMUNICATIONS between YOU and MGA.

19  **REQUEST NO. 198.:**

20       All COMMUNICATIONS between YOU and Isaac Larian.

21  **REQUEST NO. 199.:**

22
23       All COMMUNICATIONS between YOU and BRYANT.

24  **REQUEST NO. 200.:**

25       All COMMUNICATIONS between YOU and any third party mentioning,

26  referring or relating to BRYANT.

27

28

EXHIBIT __10__

PAGE __152__

~~57~~

**REQUEST NO. 201.:**

All COMMUNICATIONS between YOU and any third party mentioning, referring or relating to BRATZ INTELLECTUAL PROPERTY.

**REQUEST NO. 202.:**

All COMMUNICATIONS between YOU and any third party mentioning, referring or relating to the BRATZ CONCEPT.

**REQUEST NO. 203.:**

All COMMUNICATIONS between YOU and any third party mentioning, referring or relating to the FIRST BRATZ DOLLS.

**REQUEST NO. 204.:**

All COMMUNICATIONS between YOU and any third party mentioning, referring or relating to BRATZ DOLLS, if YOU seek in this case to enjoin the sale of BRATZ DOLLS, or seek, as any part of YOUR recovery or damages in this case, any right or interest in, revenues or profits from, or lost profits or other damages caused by BRATZ DOLLS.

**REQUEST NO. 205.:**

All COMMUNICATIONS between YOU and any third party mentioning, referring or relating to the BRATZ PACK, if YOU seek in this case to enjoin the sale of the BRATZ PACK, or seek, as any part of YOUR recovery or damages in this case, any right or interest in, revenues or profits from, or lost profits or other damages caused by the BRATZ PACK.

**REQUEST NO. 206.:**

All COMMUNICATIONS between YOU and any third party mentioning, referring or relating to LIL' BRATZ, if YOU seek in this case to enjoin the sale of LIL' BRATZ, or seek, as any part of YOUR recovery or damages in this case, any

EXHIBIT ___10___
-58-                    MGA'S FIRST SET OF DOCUMENT REQUESTS
PAGE ___153___

1  right or interest in, revenues or profits from, or lost profits or other damages caused by

2  LIL' BRATZ.

3  **REQUEST NO. 207.:**

4

5      All COMMUNICATIONS between YOU and any third party mentioning,

6  referring or relating to BRATZ PETZ, if YOU seek in this case to enjoin the sale of

7  BRATZ PETZ, or seek, as any part of YOUR recovery or damages in this case, any

8  right or interest in, revenues or profits from, or lost profits or other damages caused by

9  BRATZ PETZ.

10  **REQUEST NO. 208.:**

11      All COMMUNICATIONS between YOU and any third party mentioning,

12  referring or relating to BRATZ BABYZ, if YOU seek in this case to enjoin the sale of

13  BRATZ BABYZ, or seek, as any part of YOUR recovery or damages in this case, any

14  right or interest in, revenues or profits from, or lost profits or other damages caused by

15  BRATZ BABYZ.

16  **REQUEST NO. 209.:**

17      All COMMUNICATIONS between YOU and any third party mentioning,

18  referring or relating to BRATZ BOYZ, if YOU seek in this case to enjoin the sale of

19  BRATZ BOYZ, or seek, as any part of YOUR recovery or damages in this case, any

20

21  right or interest in, revenues or profits from, or lost profits or other damages caused by

22  BRATZ BOYZ.

23  **REQUEST NO. 210.:**

24      All COMMUNICATIONS between YOU and any third party mentioning,

25  referring or relating to "Funky Tweenz".

26

27

28

EXHIBIT __10__     59     MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE __154__

**REQUEST NO. 211.:**

All DOCUMENTS, including pleadings, deposition transcripts, declarations and other matter generated in the course of any non-MATTEL lawsuit, litigation, arbitration or other legal proceeding to which MGA is or was a party.

**REQUEST NO. 212.:**

All COMMUNICATIONS mentioning, referring to, or relating to any non-MATTEL lawsuit, litigation, arbitration or other legal proceeding to which MGA is or was a party.

**REQUEST NO. 213.:**

All COMMUNICATIONS between YOU, including YOUR inside and outside counsel, on the one hand and Danny K. H. Yu, Paul K. C. Chan or any person at, employed by, working for or under the direction of the law firms of Danny K. H. Yu & Co. and Simon C. W. Yung & Co. on the other, referring or relating to MGA, BRYANT, this lawsuit, BRATZ, BRATZ INTELLECTUAL PROPERTY, "Funky Tweenz," "Toon Teens," or any non-MATTEL lawsuit, litigation, arbitration or other legal proceeding o which MGA is or was a party.

**REQUEST NO. 214.:**

All COMMUNICATIONS between YOU, including YOUR inside and outside counsel, on the one hand and Toys & Trends (Hong Kong) Limited, Cityworld Limited, or Jurg Willi Kesselring on the other, or any person acting on their behalf or at their direction, referring or relating to MGA, BRYANT, this lawsuit, BRATZ, BRATZ INTELLECTUAL PROPERTY, "Funky Tweenz," "Toon Teens," or any non-MATTEL lawsuit, litigation, arbitration or other legal proceeding to which MGA is or was a party.

EXHIBIT ___10___     60     MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE __155__

**REQUEST NO. 215.:**

All COMMUNICATIONS between YOU, including YOUR inside and outside counsel, on the one hand and any person or entity adverse to MGA, including any person at, employed by, working for or under the direction of the law firms representing clients adverse to MGA, referring or relating to MGA, BRYANT, this lawsuit, BRATZ, BRATZ INTELLECTUAL PROPERTY, or any non-MATTEL lawsuit, litigation, arbitration or other legal proceeding to which MGA is or was a party.

**REQUEST NO. 216.:**

All COMMUNICATIONS between YOU, including YOUR inside and outside counsel, on the one hand and any principal of any entities or persons adverse to MGA on the other, or any person acting on their behalf or at their direction, referring or relating to MGA, BRYANT, this lawsuit, BRATZ, BRATZ INTELLECTUAL PROPERTY, or any non-MATTEL lawsuit, litigation, arbitration or other legal proceeding to which MGA is or was a party.

**REQUEST NO. 217.:**

All COMMUNICATIONS between YOU, including YOUR inside and outside counsel, on the one hand and any third-party on the other, referring or relating to this lawsuit, or any non-MATTEL lawsuit, litigation, arbitration or other legal proceeding to which MGA is or was a party.

**REQUEST NO. 218.:**

All COMMUNICATIONS sent to or received from any party to any non-MATTEL lawsuit, litigation, arbitration or other legal proceeding to which MGA is or was party, or any agent or representative of such party, including such party's attorney.

EXHIBIT ___10___         61         MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE ___156___

**REQUEST NO. 219.:**

All COMMUNICATIONS, and all DOCUMENTS mentioning, referring to, or relating to any COMMUNICATION, between YOU on the one hand, and any person consulted or interviewed regarding any fact or issue relating to this lawsuit, including, without limitation, any experts, investigators, or witnesses.

**REQUEST NO. 220.:**

All DOCUMENTS and COMMUNICATIONS received by YOU from any source expressing, suggesting or implying that BRYANT copied or used any idea, design or intellectual property owned by MATTEL in connection with the conception, design or development of BRATZ or BRATZ INTELLECTUAL PROPERTY.

**REQUEST NO. 221.:**

All DOCUMENTS and COMMUNICATIONS received by YOU from any source expressing, suggesting or implying that MGA copied or used any idea, design or intellectual property owned by MATTEL in connection with the conception, design or development of BRATZ or BRATZ INTELLECTUAL PROPERTY.

**REQUEST NO. 222.:**

All COMMUNICATIONS, and all DOCUMENTS mentioning, describing, discussing, referring or relating to any investigation performed by YOU in response to any COMMUNICATION YOU may have received from any source expressing, suggesting or implying that BRYANT copied or used any idea, design or intellectual property owned by MATTEL in connection with the conception, design or development of BRATZ or BRATZ INTELLECTUAL PROPERTY.

**REQUEST NO. 223.:**

All COMMUNICATIONS, and all DOCUMENTS mentioning, describing, discussing, referring or relating to any investigation performed by YOU in response to

EXHIBIT ___10___  62  MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE ___157___

1 | any COMMUNICATION YOU may have received from any source expressing,
2 | suggesting or implying that MGA copied or used any idea, design or intellectual
3 | property owned by MATTEL in connection with the conception, design or
4 | development of BRATZ or BRATZ INTELLECTUAL PROPERTY.

5 | **REQUEST NO. 224.:**

6
7 | All COMMUNICATIONS and all DOCUMENTS constituting, mentioning,
8 | describing discussing, referring or relating to all COMMUNICATIONS with Anna
9 | Rhee that refer or relate to the BRATZ CONCEPT, the FIRST BRATZ DOLLS or
10 | BRYANT's work for MGA.

11 | **REQUEST NO. 225.:**

12 | All COMMUNICATIONS and all DOCUMENTS constituting, mentioning,
13 | describing discussing, referring or relating to all COMMUNICATIONS with Anna
14 | Rhee that refer or relate to this litigation, the facts and circumstances giving rise to
15 | this litigation, or BRYANT's alleged misconduct.

16 | **REQUEST NO. 226.:**

17
18 | All COMMUNICATIONS and all DOCUMENTS constituting, mentioning,
19 | describing discussing, referring or relating to all COMMUNICATIONS with
20 | Margaret Leahy  that refer or relate to the BRATZ CONCEPT, the FIRST BRATZ
21 | DOLLS or BRYANT's work for MGA.

22 | **REQUEST NO. 227.:**

23 | All COMMUNICATIONS, and all DOCUMENTS constituting, mentioning,
24 | describing discussing, referring or relating to all COMMUNICATIONS with
25 | Margaret Leahy that refer or relate to this litigation, the facts and circumstances giving
26 | rise to this litigation, or BRYANT's alleged misconduct.

27
28

EXHIBIT ___10___ 63   MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE __158__.

**REQUEST NO. 228.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Margaret Leahy's husband that refer or relate to the BRATZ CONCEPT, the FIRST BRATZ DOLLS or BRYANT's work for MGA.

**REQUEST NO. 229.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Margaret Leahy's husband that refer or relate to this litigation, the facts and circumstances giving rise to this litigation, or BRYANT's alleged misconduct.

**REQUEST NO. 230.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Victoria O'Connor that refer or relate to the BRATZ CONCEPT, the FIRST BRATZ DOLLS or BRYANT's work for MGA.

**REQUEST NO. 231.:**

All COMMUNICATIONS, and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Victoria O'Connor that refer or relate to this litigation, the facts and circumstances giving rise to this litigation, or BRYANT's alleged misconduct.

**REQUEST NO. 232.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Ramona Prince that refer or relate to the BRATZ CONCEPT, the FIRST BRATZ DOLLS or BRYANT's work for MGA.

EXHIBIT _10_ ————— 64   MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE _159_

**REQUEST NO. 233.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Ramona Prince that refer or relate to this litigation, the facts and circumstances giving rise to this litigation, or BRYANT's alleged misconduct.

**REQUEST NO. 234.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Lilly Martinez that refer or relate to the BRATZ CONCEPT, the FIRST BRATZ DOLLS or BRYANT's work for MGA.

**REQUEST NO. 235.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Lilly Martinez that refer or relate to this litigation, the facts and circumstances giving rise to this litigation, or BRYANT's alleged misconduct.

**REQUEST NO. 236.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Ron Longsdorff that refer or relate to the BRATZ CONCEPT, the FIRST BRATZ DOLLS or BRYANT's work for MGA.

**REQUEST NO. 237.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Ron Longsdorff that refer or relate to this litigation, the facts and circumstances giving rise to this litigation, or BRYANT's alleged misconduct.

EXHIBIT _____ 10 _____ 65

PAGE _____ 160

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 238.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Matt Bousquette that refer or relate to the BRATZ CONCEPT, the FIRST BRATZ DOLLS or BRYANT's work for MGA.

**REQUEST NO. 239.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Matt Bousquette that refer or relate to this litigation, the facts and circumstances giving rise to this litigation, or BRYANT's alleged misconduct.

**REQUEST NO. 240.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Adrienne Fontanella that refer or relate to the BRATZ CONCEPT, the FIRST BRATZ DOLLS or BRYANT's work for MGA.

**REQUEST NO. 241.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Adrienne Fontanella that refer or relate to this litigation, the facts and circumstances giving rise to this litigation, or BRYANT's alleged misconduct.

**REQUEST NO. 242.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Tim Kilpin that refer or relate to the BRATZ CONCEPT, the FIRST BRATZ DOLLS or BRYANT's work for MGA.

EXHIBIT _10_     66     MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE _161_

**REQUEST NO. 243.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Tim Kilpin that refer or relate to this litigation, the facts and circumstances giving rise to this litigation, or BRYANT's alleged misconduct.

**REQUEST NO. 244.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Sujata Luther that refer or relate to the BRATZ CONCEPT, the FIRST BRATZ DOLLS or BRYANT's work for MGA.

**REQUEST NO. 245.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Sujata Luther that refer or relate to this litigation, the facts and circumstances giving rise to this litigation, or BRYANT's alleged misconduct.

**REQUEST NO. 246.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Alan Kaye that refer or relate to the BRATZ CONCEPT, the FIRST BRATZ DOLLS or BRYANT's work for MGA.

**REQUEST NO. 247.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Alan Kaye that refer or relate to this litigation, the facts and circumstances giving rise to this litigation, or BRYANT's alleged misconduct.

EXHIBIT _____ 10 _____ 67          MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE _____ 162 _____

**REQUEST NO. 248.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Veronica Marlowe that refer or relate to the BRATZ CONCEPT, the FIRST BRATZ DOLLS or BRYANT's work for MGA.

**REQUEST NO. 249.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with Veronica Marlowe that refer or relate to this litigation, the facts and circumstances giving rise to this litigation, or BRYANT's alleged misconduct.

**REQUEST NO. 250.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with any current or former MATTEL employee or contractor  that refer or relate to the BRATZ CONCEPT, the FIRST BRATZ DOLLS or BRYANT's work for MGA.

**REQUEST NO. 251.:**

All COMMUNICATIONS and all DOCUMENTS constituting, mentioning, describing discussing, referring or relating to all COMMUNICATIONS with any current or former MATTEL employee or contractor that refer or relate to this litigation, the facts and circumstances giving rise to this litigation, or BRYANT's alleged misconduct.

**REQUEST NO. 252.:**

All DOCUMENTS and COMMUNICATIONS constituting, discussing, mentioning, describing, referring or relating to the August 5, 2002 anonymous letter

EXHIBIT ___10___ _____-68          MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE ___163___

1    sent to Robert Eckert produced in this litigation by MATTEL bearing Bates serial

2    number M 13841.

3    **REQUEST NO. 253.:**

4
5        All DOCUMENTS and COMMUNICATIONS constituting, discussing,

6    mentioning, describing, referring or relating to any investigation of or follow-up

7    regarding the August 5, 2002 anonymous letter sent to Robert Eckert produced in this

8    litigation by MATTEL bearing Bates serial number M 13841.

9    **REQUEST NO. 254.:**

10        All DOCUMENTS, such as organizational charts, describing, depicting, or

11   relating to the corporate structure, chain-of-command, and reporting structure of

12   MATTEL since 1997, and DOCUMENTS sufficient to IDENTIFY its past and

13   present officers and directors since 1997.

14   **REQUEST NO. 255.:**

15        All DOCUMENTS, such as organizational charts, describing, depicting, or

16   relating to BRYANT's place in the corporate structure, chain-of-command, and

17   reporting structure of MATTEL since 1997.

18
19   **REQUEST NO. 256.:**

20        DOCUMENTS sufficient to show BRYANT's immediate supervisors and all

21   co-workers in BRYANT's department during the periods of BRYANT's employment

22   with MATTEL.

23   **REQUEST NO. 257.:**

24
25        All DOCUMENTS including, without limitation, YOUR corporate resolutions,

26   and minutes of all meetings of YOUR directors or shareholders in which this lawsuit,

27   BRATZ INTELLECTUAL PROPERTY, the BRATZ CONCEPT, or BRYANT was

28   discussed.

EXHIBIT ___10___

PAGE ___164___

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 258.:**

All DOCUMENTS relating to Bryant's employment including, without limitation, DOCUMENTS reflecting the period and conditions of the employment, the terms of the employment, and his job duties and responsibilities.

**REQUEST NO. 259.:**

All DOCUMENTS that evidence, describe, mention, refer or relate to the similarity of any art work created by any MATTEL employee, including but not limited to BRYANT, prior to October 20, 2000, to BRATZ.

**REQUEST NO. 260.:**

All DOCUMENTS created after January 4, 1999 that evidence, relate or refer to any activities of BRYANT other than his work for MATTEL.

**REQUEST NO. 261.:**

All DOCUMENTS created after January 4, 1999 that evidence, relate or refer to any activities of any current or former MATTEL employee performed in connection with the conception, creation, design or development of BRATZ or BRATZ INTELLECTUAL PROPERTY.

**REQUEST NO. 262.:**

All DOCUMENTS created after January 4, 1999 that evidence, relate or refer to any activities of any current or former MATTEL employee performed, while such person was employed by MATTEL, in connection with the conception, creation, design or development of any intellectual property done for or at the request of any company, entity or person other than MATTEL.

**REQUEST NO. 263.:**

All DOCUMENTS created after January 4, 1999 that evidence, relate or refer to any activities of any current or former MATTEL employee performed, while such

EXHIBIT 10

PAGE 165

70

MGA'S FIRST SET OF DOCUMENT REQUESTS

1   person was employed by MATTEL, in connection with the conception, creation,

2   design or development of any doll or toy done for or at the request of any company,

3   entity or person other than MATTEL.

4   **REQUEST NO. 264.:**

5
6       All DOCUMENTS that constitute, describe, mention, refer or relate to

7   MATTEL's policy regarding part-time employment at MATTEL.

8   **REQUEST NO. 265.:**

9       All DOCUMENTS that constitute, describe, mention, refer or relate to

10   MATTEL's policy regarding temporary employment at MATTEL.

11   **REQUEST NO. 266.:**

12
13       All DOCUMENTS that constitute, describe, mention, refer or relate to

14   MATTEL's policy regarding part-time employment at MATTEL including, without

15   limitation, all DOCUMENTS, including agreements and contracts, that describe,

16   discuss, govern, control, regulate or limit how and to what extent a person employed

17   part-time at MATTEL is allowed, or not allowed, to work for him or herself or other

18   companies or entities, including MGA, while employed by MATTEL.

19   **REQUEST NO. 267.:**

20       All DOCUMENTS that constitute, describe, mention, refer or relate to

21   MATTEL's policy regarding temporary employment at MATTEL including, without

22   limitation, all DOCUMENTS, including agreements and contracts, that describe,

23   discuss, govern, control, regulate or limit how and to what extent a person employed

24   part-time at MATTEL is allowed, or not allowed, to work for him or herself or other

25   companies or entities, including MGA, while employed by MATTEL.

26

27

28

EXHIBIT __10__     71     MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE __166__

**REQUEST NO. 268.:**

All hard drives and back-up data, no matter how stored, for all computers used by BRYANT while employed by MATTEL, to the extent such drives and back-up data contain data made or accessed by, sent to or received by BRYANT.

**REQUEST NO. 269.:**

All DOCUMENTS that constitute, evidence, describe, depict, refer or relate to any art work or other work product done by YOU that YOU contend BRYANT utilized or used in connection with his creation of anything for MGA, including, without limitation, BRATZ or BRATZ INTELLECTUAL PROPERTY.

**REQUEST NO. 270.:**

All DOCUMENTS and COMMUNICATIONS in YOUR possession that were exchanged between BRYANT and Anne Wang.

**REQUEST NO. 271.:**

All DOCUMENTS and COMMUNICATIONS in YOUR possession that were exchanged between BRYANT and MGA.

**REQUEST NO. 272.:**

All non-privileged DOCUMENTS and COMMUNICATIONS mentioning, discussing, referring or relating to the "product licensing" and "Licensor Approval Form" that is described at entries numbers 8, 9, 10 and 11 on Mattel's privilege log including, without limitation, the Licensor Approval Form.

**REQUEST NO. 273.:**

All non-privileged DOCUMENTS and COMMUNICATIONS constituting, mentioning, discussing, referring or relating to the "packaging" described at entries numbers 20 and 21 on Mattel's privilege log.

EXHIBIT ___10___   72   MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE ___167___

**REQUEST NO. 274.:**

All DOCUMENTS referring or relating to the creation, design, development, actual sale, proposed sale, actual marketing, proposed marketing, patent, trademark, trade dress, copyright or other intellectual property rights in, to or of the feet, shoes or skates of the "Barbie" on roller skates or roller-blades that is disclosed in the documents that MATTEL produced in this action.

**REQUEST NO. 275.:**

All DOCUMENTS evidencing whether and how BRYANT had access to, knew of, saw, or worked on the creation, design or development of the feet, shoes or skates of the "Barbie" on roller skates or roller blades that is disclosed in the documents that MATTEL produced in this action.

**REQUEST NO. 276.:**

All DOCUMENTS evidencing whether the "Barbie" on roller skates or roller blades that is disclosed in the documents that MATTEL produced in this action was ever marketed or sold.

**REQUEST NO. 277.:**

All DOCUMENTS mentioning, discussing, referring or relating to the July 18, 2003 Wall Street Journal article in which MATTEL employees and ex-employees are said to be quoted or paraphrased.

**REQUEST NO. 278.:**

All DOCUMENTS naming or otherwise identifying the persons interviewed for the July 18, 2003 Wall Street Journal article in which MATTEL employees and ex-employees are said to be quoted or paraphrased.

EXHIBIT _____10_____   73

PAGE _____168_____

MGA'S FIRST SET OF DOCUMENT REQUESTS

**REQUEST NO. 279.:**

All DOCUMENTS received from any third-party in response to any subpoena in this case including, without limitation, Empire Bank, the Mattel Federal Credit Union, Alaska Momma, LA Focus and any SBC entity.

**REQUEST NO. 280.:**

All DOCUMENTS supporting, refuting, or evidencing the allegation in paragraph 9 of the COMPLAINT that BRYANT "was employed by Mattel from September 1995 through April 1998, and then again from January 1999 through October 2000, as a product designer at Mattel's design center in El Segundo, California."

**REQUEST NO. 281.:**

All DOCUMENTS, from 1997 to the present, constituting, mentioning, discussing, describing, referring or relating to MATTEL's form "Employee Confidential Information and Inventions Agreement" mentioned in paragraph 10 of the COMPLAINT, its terms and conditions, the interpretation of its terms and conditions, and the enforcement of its terms and conditions, including, without limitation, all draft and final versions and iterations of the Agreement, all DOCUMENTS referring or relating to any discussions or negotiations between MATTEL and anyone regarding the terms or conditions of any version of the Agreement, and all DOCUMENTS evidencing, mentioning, discussing, describing, referring or relating to any instance in which MATTEL has taken any action whatsoever to enforce any term of any version of the Agreement against anyone, including by litigation, arbitration, formal or informal notice, or any other form of action.

EXHIBIT __10__    74    MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE __169__

**REQUEST NO. 282.:**

All DOCUMENTS, from 1997 to the present, constituting, mentioning, discussing, describing, referring or relating to any negotiations between MATTEL and any employee or prospective employee regarding or concerning any term of MATTEL's form "Employee Confidential Information and Inventions Agreement."

**REQUEST NO. 283.:**

All DOCUMENTS supporting, refuting, or evidencing the allegation in paragraph 10 of the COMPLAINT that Bryant executed an Employee Confidential Information and Inventions Agreement "upon starting his second term of employment by Mattel, and as a condition of and in consideration for his employment."

**REQUEST NO. 284.:**

All DOCUMENTS, from 1997 to the present, constituting, mentioning, discussing, describing, referring or relating to MATTEL's form "Conflict of Interest Questionnaire" mentioned in paragraph 11 of the COMPLAINT, its terms and the interpretation of its terms, and the enforcement of its terms and conditions, including, without limitation, all draft and final versions and iterations of the Questionnaire, all DOCUMENTS referring or relating to any discussions or negotiations between MATTEL and anyone regarding the terms of any version of the Questionnaire, and all DOCUMENTS evidencing, mentioning, discussing, describing, referring or relating to any instance in which MATTEL has taken any action whatsoever against anyone based on any term of or disclosure provided by way of the Questionnaire, including by litigation, arbitration, formal or informal notice, or any other form of action.

**REQUEST NO. 285.:**

All DOCUMENTS, from 1997 to the present, constituting, mentioning, discussing, describing, referring or relating to any negotiations between MATTEL and

EXHIBIT ___10___   75   MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE ___170___

1   any employee or prospective employee regarding or concerning any term of

2   MATTEL's form "Conflict of Interest Questionnaire."

3   **REQUEST NO. 286.:**

4
5         All DOCUMENTS supporting, refuting, or evidencing the allegation in

6   paragraph 12 of the COMPLAINT that "[i]n late November 2003, Mattel learned that

7   Bryant had secretly aided, assisted and worked for a Mattel competitor."

8   **REQUEST NO. 287.:**

9         All DOCUMENTS supporting, refuting, or evidencing the allegation in

10  paragraph 12 of the COMPLAINT that "while Bryant was employed by Mattel,

11  Bryant and the other defendants converted, misappropriated and misused Mattel

12  property and resources," and the allegation that the "property and resources" were

13  "converted, misappropriate and misused" for "the benefit of, and to aid and assist,

14  Bryant personally and Mattel's competitor."

15  **REQUEST NO. 288.:**

16
17        All DOCUMENTS supporting, refuting, or evidencing the allegation in

18  paragraph 13 of the COMPLAINT that "Bryant" made "affirmative

19  misrepresentations to Mattel management upon his departure from Mattel, including,

20  without limitation, all DOCUMENTS constituting, mentioning, discussing,

21  describing, referring or relating to the alleged misrepresentations and all

22  DOCUMENTS evidencing what the alleged misrepresentations were, when they were

23  made and to whom they were made.

24  **REQUEST NO. 289.:**

25        All DOCUMENTS constituting, evidencing, referring or relating to any exit

26  interview in which BRYANT participated.

27

28

EXHIBIT ___10___   76   _____ MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE ___171___

**REQUEST NO. 290.:**

All DOCUMENTS supporting, refuting, or evidencing the allegation in paragraph 13 of the COMPLAINT that "Mattel had no reason to suspect that Bryant had worked for the competitor while still employed by Mattel until late November 2003."

**REQUEST NO. 291.:**

All DOCUMENTS evidencing how, when and under what circumstances Mattel received "through an unrelated legal action, a copy of Bryant's agreement with the competitor," as alleged in paragraph 13 of the COMPLAINT.

**REQUEST NO. 292.:**

All DOCUMENTS mentioning, referring or relating to the "unrelated legal action" described in paragraph 13 of the COMPLAINT.

**REQUEST NO. 293.:**

All DOCUMENTS that YOU received "through" the "unrelated legal action" described in paragraph 13 of the COMPLAINT including, without limitation, the "copy of Bryant's agreement with the competitor."

**REQUEST NO. 294.:**

All DOCUMENTS, including, without limitation, all contracts, agreements and drafts, that YOU or YOUR attorneys have exchanged with, between or among any person or entity that is a party to the "unrelated legal action" described in paragraph 13 of the COMPLAINT, or their counsel.

**REQUEST NO. 295.:**

All DOCUMENTS supporting, refuting, or evidencing the allegation in paragraph 14 of the COMPLAINT that "Bryant breached his contracts with Mattel and violated his duty of loyalty and fiduciary duties to Mattel," and the allegation that

EXHIBIT __10__   77   MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE __172__

1   "other defendants have unlawfully aided and abetted his violation of such duties," and

2   the allegation that "each of the defendants has been unjustly enriched and engaged in

3   acts of conversion."

4   **REQUEST NO. 296.:**

5

6       All DOCUMENTS supporting, refuting, or evidencing the allegation in

7   paragraph 17 of the COMPLAINT that the "Employment Agreement and the Conflict

8   Questionnaire are valid, enforceable contracts.".

9   **REQUEST NO. 297.:**

10      All DOCUMENTS supporting, refuting, or evidencing the allegation in

11  paragraph 17 of the COMPLAINT that "Mattel has performed each and every term

12  and condition of the Employment Agreement and Conflict Questionnaire required to

13  be performed by Mattel."

14  **REQUEST NO. 298.:**

15

16      All DOCUMENTS supporting, refuting, or evidencing the allegation in

17  paragraph 19 of the COMPLAINT that "Mattel has suffered and will in the future

18  continue to suffer damages."

19  **REQUEST NO. 299.:**

20      All DOCUMENTS estimating, calculating, determining or evidencing the

21  "amounts paid by the competitor to Bryant during his Mattel employment" as alleged

22  in paragraph 19 of the COMPLAINT.

23  **REQUEST NO. 300.:**

24

25      All DOCUMENTS estimating, calculating, determining or evidencing the

26  "amounts paid by the competitor to Bryant as result of the work he performed for the

27  competitor during his Mattel employment" as alleged in paragraph 19 of the

28  COMPLAINT.

EXHIBIT _10_      78      MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE _173_

**REQUEST NO. 301.:**

All DOCUMENTS estimating, calculating, determining or evidencing the "value of information and intellectual property owned by Mattel which Bryant provided to the competitor" as alleged in paragraph 19 of the COMPLAINT.

**REQUEST NO. 302.:**

All DOCUMENTS constituting, evidencing, describing, showing or depicting the "intellectual property owned by Mattel," alleged in paragraph 19 of the COMPLAINT.

**REQUEST NO. 303.:**

All patents, copyright registrations, and trademark registrations covering or relating to the "intellectual property owned by Mattel," alleged in paragraph 19 of the COMPLAINT, and any other indicia of ownership, authorship and inventorship including, without limitation, any assignments or licenses for or to the alleged property.

**REQUEST NO. 304.:**

All DOCUMENTS estimating, calculating, determining or evidencing the "value of the benefits the competitor obtained from Bryant during the time he was employed by Mattel" as alleged in paragraph 19 of the COMPLAINT.

**REQUEST NO. 305.:**

All DOCUMENTS estimating, calculating, determining or evidencing the "value of the benefits the competitor obtained from Bryant as a result of the work he performed for the competitor during his Mattel employment" as alleged in paragraph 19 of the COMPLAINT.

EXHIBIT _10_   _79_   MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE _174_

**REQUEST NO. 306.:**

All DOCUMENTS supporting, refuting, or evidencing the allegation in paragraph 20 of the COMPLAINT that "Bryant's conduct" has caused "irreparable injury to Mattel."

**REQUEST NO. 307.:**

All DOCUMENTS describing, discussing, mentioning, referring or relating to the nature, extent and substance of the "irreparable injury" alleged in paragraph 20 of the COMPLAINT.

**REQUEST NO. 308.:**

All DOCUMENTS supporting, refuting, or evidencing the allegation in paragraph 22 of the COMPLAINT that "Bryant held a position of trust and confidence with Mattel."

**REQUEST NO. 309.:**

All DOCUMENTS evidencing that persons that are or were employed by MATTEL in the same or similar capacity as BRYANT hold or held positions of trust and confidence with MATTEL.

**REQUEST NO. 310.:**

All DOCUMENTS supporting, refuting, or evidencing the allegation in paragraph 22 of the COMPLAINT that "Bryant had access to" "Mattel's proprietary and confidential information."

**REQUEST NO. 311.:**

All DOCUMENTS evidencing that persons that are or were employed by MATTEL in the same or similar capacity as BRYANT had or have access to MATTEL's proprietary and confidential information.

EXHIBIT __10__    80    MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE __175__

**REQUEST NO. 312.:**

All DOCUMENTS supporting, refuting, or evidencing the allegation in paragraph 229 of the COMPLAINT that "Bryant. . . was entrusted with Mattel's proprietary and confidential information."

**REQUEST NO. 313.:**

All DOCUMENTS evidencing that persons that are or were employed by MATTEL in the same or similar capacity as BRYANT were or are entrusted with MATTEL's proprietary and confidential information.

**REQUEST NO. 314.:**

All DOCUMENTS supporting, refuting, or evidencing the allegation in paragraph 22 of the COMPLAINT that Bryant "supervised the work of others.

**REQUEST NO. 315.:**

All DOCUMENTS evidencing that persons that are or were employed by MATTEL in the same or similar capacity as BRYANT supervised or supervise the work of others.

**REQUEST NO. 316.:**

All DOCUMENTS supporting, refuting, or evidencing the allegation in paragraph 22 of the COMPLAINT that Bryant "exercised discretion" in "many of his job assignments and duties."

**REQUEST NO. 317.:**

All DOCUMENTS evidencing that persons that are or were employed by MATTEL in the same or similar capacity as BRYANT exercised or exercise discretion in their job assignments and duties.

EXHIBIT ___10___   81 ___   MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE ___176___

**REQUEST NO. 318.:**

All DOCUMENTS describing, discussing, mentioning, referring or relating to the nature and scope of Bryant's "job assignments and duties" as alleged in paragraph 22 of the COMPLAINT.

**REQUEST NO. 319.:**

All DOCUMENTS supporting, refuting, or evidencing the allegation in paragraph 22 of the COMPLAINT that Bryant "worked independently in many of his job assignments and duties."

**REQUEST NO. 320.:**

All DOCUMENTS evidencing that persons that are or were employed by MATTEL in the same or similar capacity as BRYANT worked or work independently in their job assignments and duties.

**REQUEST NO. 321.:**

All DOCUMENTS supporting, refuting, or evidencing the allegation in paragraph 22 of the COMPLAINT that Bryant "represented Mattel in its dealings with third parties."

**REQUEST NO. 322.:**

All DOCUMENTS evidencing all instances in which BRYANT represented MATTEL in any dealing with any third party.

**REQUEST NO. 323.:**

All DOCUMENTS evidencing that persons that are or were employed by MATTEL in the same or similar capacity as BRYANT represented or represent MATTEL in its dealings with third parties.

EXHIBIT _10_   82   MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE _177_

**REQUEST NO. 324.:**

All DOCUMENTS supporting, refuting, or evidencing the allegation in paragraph 22 of the COMPLAINT that Bryant "in the course and scope of his employment with Mattel, was an agent of Mattel," including, without limitation, all DOCUMENTS evidencing, describing, discussing, mentioning, referring or relating to the nature and scope of the alleged agency.

**REQUEST NO. 325.:**

All DOCUMENTS supporting, refuting, or evidencing the allegation in paragraph 25 of the COMPLAINT that "Mattel has incurred damages" as a "direct and proximate result of defendants' wrongful conduct."

**REQUEST NO. 326.:**

All DOCUMENTS supporting, refuting, or evidencing the allegation in paragraph 26 of the COMPLAINT that "[d]efendants acted with malice, fraud and oppression."

**REQUEST NO. 327.:**

All DOCUMENTS supporting, refuting, or evidencing the allegation in paragraph 36 of the COMPLAINT that "[d]efendants. . . used and diverted Mattel property, resources and opportunities for the benefit of, and to aid and assist, themselves."

**REQUEST NO. 328.:**

All DOCUMENTS constituting, identifying, evidencing, describing, showing or depicting the "used and diverted Mattel property" mentioned in paragraph 36 of the COMPLAINT.

EXHIBIT  10      83        MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE  178

**REQUEST NO. 329.:**

All DOCUMENTS constituting, identifying, evidencing, describing, showing or depicting the "used and diverted Mattel . . . resources" mentioned in paragraph 36 of the COMPLAINT.

**REQUEST NO. 330.:**

All DOCUMENTS identifying, evidencing or describing the "used and diverted . . . opportunities" mentioned in paragraph 36 of the COMPLAINT.

**REQUEST NO. 331.:**

All DOCUMENTS estimating, calculating, determining or evidencing the amount by which "Defendants have been unjustly enriched" as alleged in paragraph 36 of the COMPLAINT.

**REQUEST NO. 332.:**

All DOCUMENTS constituting, identifying, evidencing, describing, showing, depicting, discussing, mentioning, referring and relating to the "ideas, concepts, rights designs, proprietary information, and other intellectual property and intangible property created by Bryant" alleged to be the "property of Mattel" in paragraph 41 of the COMPLAINT.

Dated: January 31, 2004

DIANA M. TORRES
PAULA E. AMBROSINI
ALICIA C. MEYER
O'MELVENY & MYERS LLP

Paula E. Ambrosini,
Attorneys for MGA Entertainment, Inc.

EXHIBIT _10_      84      MGA'S FIRST SET OF DOCUMENT REQUESTS

PAGE _178_

## PROOF OF SERVICE

I, Suzanne I. Jimenez, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On January 31, 2005, I served the within document:

### MGA'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒    by putting a true and correct copy thereof, together with an unsigned copy of this declaration, in a sealed envelope designated by the carrier, with delivery fees paid or provided for, for delivery the same business day to the person(s) listed above. I am readily familiar with this firm's practice for collection and processing of overnight courier correspondence. In the ordinary course of business, such correspondence collected from me would be processed on the same day, with fees thereon fully prepaid.

Michael T. Zeller           **VIA HAND-DELIVERY**
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Tel: (213) 443-3000
Fax: (213) 443-3100

Keith Jacoby           **VIA REGULAR MAIL**
Littler Mendelson
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
Tel: (310) 553-0308
Fax: (310) 553-5583

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on January 31, 2005, at Los Angeles, California.

_Suzanne I. Jimenez_
Suzanne I. Jimenez

EXHIBIT _10_

PAGE _180_

# Exhibit 11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                    Date: February 4, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS
=================================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                           Theresa Lanza
        Courtroom Deputy Clerk               Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

Michael Page                             John Quinn
                                         Jon D. Corey

                                      ATTORNEY PRESENT FOR CARLOS
ATTORNEYS PRESENT FOR MGA:            GUSTAVO MACHADO GOMEZ:

Thomas J. Nolan
Carl A. Roth
Robert J. Harrington

ATTORNEYS PRESENT FOR THIRD-
PARTY WITNESSES

Larry W. McFarland
Scott Gizer
Ramit Mizrahi
Henry H. Gonzalez
Neal A. Potischman
John Patrick Petrullo


Alexander H. Cote


MINUTES FORM 90                      Initials of Deputy Clerk __jh
CIVIL -- GEN                         Time: 1/45

                          1

                                     EXHIBIT _____//_____

                                     PAGE _____/8/_____

PROCEEDINGS:

HEARING ON EX PARTE APPLICATIONS:

**1722 EX PARTE APPLICATION to Compel Deposition of Ana Cabrera, Beatriz Morales, and Maria Salazar and Mel Woods**

**1724 EX PARTE APPLICATION to Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment, Inc.**

**1538 EX PARTE APPLICATION for Relief from 01-07-2008 Order re Motion Hearing**

**1583 EX PARTE APPLICATION to Compel Production of Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow**

**1624 EX PARTE APPLICATION to Enforce Court's Orders Compelling Production of Tangible Items**

**1628 EX PARTE APPLICATION to Stay pending Review of Discovery Master's January 11, 2008 Order Granting MGA's and Bryant's Motion to Compel**

**ORDER TO SHOW CAUSE DIRECTED TO COUNSEL LARRY McFARLAND**

Having considered the documents submitted in support of and opposition to the applications set forth above, and having heard oral argument, the Court issues its rulings on these matters as stated on the record and as follows:

**EX PARTE APPLICATIONS REGARDING DEPOSITIONS
(DOCKET #1722 AND #1724) AND ORDER TO SHOW CAUSE**

These applications are DENIED IN PART, subject to the following rulings:

(1)   The Court's January 7, 2008, Order was intended to grant certain specified relief from the numerical limitations on discovery requests; it was not meant to make definitive rulings on burdensomeness, relevance, privilege, or service of discovery requests.

(2)   The Phase 1 discovery deadline has expired. Any Phase 1 discovery not properly served on or before this deadline may not now be pursued. Based on the representation of counsel that process for the letters rogatory on the Hong Kong witnesses has not been initiated, these witnesses may not be deposed on Phase 1 issues. Notwithstanding this ruling, however, the Court is concerned with the allegations by Mattel in its ex parte application regarding certain actions of Larry

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT _____11_____

PAGE _____182_____

McFarland, who represents certain third-party witnesses.  Mattel submits that Mr. McFarland has been deliberately evading service of a notice of deposition on him and his clients – serious allegations when made by an officer of the Court against another officer of the Court.  Accordingly, Mr. McFarland is **ORDERED TO SHOW CAUSE** why he and his clients should not be ordered to appear for deposition.  A written response to this OSC must be filed no later than February 11, 2008.  Other parties may file written replies no later than February 19, 2008.  The Court will hear the matter at 10:00 a.m., February 25, 2008, in Courtroom One of the above-referenced Court.

(3)  Phase 1 depositions that have been scheduled past the discovery deadline for the convenience of the witnesses or pursuant to the stipulation of the parties and/or witnesses may proceed as scheduled.

(4)  All discovery related to Phase 2, other than certain individual depositions that may be related to both Phase 1 and Phase 2, is STAYED until further order of the Court.

(5)  As previously ordered and reaffirmed by this Court, all discovery matters shall be presented in the first instance to the Discovery Master.  The fact that the Discovery Master's ruling might impact upon the Court's scheduling order does not relieve the parties of following this procedure.  For instance, motions to compel, motions to quash, or motions challenging service as to existing discovery requests shall be brought before the Discovery Master.  So, too, must objections based on burdensomeness, relevancy, or privilege.  In general, and on the matters touched upon herein, the Court expresses no opinion as to these issues, and instead leaves those issues to the Discovery Master to decide in the first instance.

(6)  To the extent that certain challenged depositions are within the scope of the Court's January 7, 2008, Order, and are related to Phase 1 (or to the extent that a given deposition (other than a Rule 30(b)(6) deposition) is related to both Phase 1 and Phase 2), said deposition may proceed subject to the challenges set forth in the previous paragraph.  To the extent that the depositions are related to Phase 2, they are STAYED, as set forth above, notwithstanding the January 7, 2008, Order.

(7)  The parties' arguments require the Court to resolve an internal inconsistency in the Court's January 7, 2008, Order.  The Court's Order was meant to grant all parts of Mattel's Motion for Leave to Take Additional Discovery (docket #1134) except the relief sought as to the deposition of Carter Bryant.  The Court amends its 01.07.08 Order as follows:

> Delete: <Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) and relating to the trade secret and RICO

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT ____11____

PAGE ____183____

claims (set forth in the moving papers at 13).>

Replace with: <Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11), relating to the trade secret and RICO claims (set forth in the moving papers at 13), and relating to document preservation (set forth in the moving papers at 14 (Joe Tiongco and Daphne Gronich)).>

(8)   The Court's January 7, 2008, Order granted leave to take additional discovery over and above the previously allocated 24 depositions per side. Nevertheless, as to all other depositions, how to "count" the previously allocated depositions is left to the discretion of the Discovery Master.

(9)   At the hearing, counsel for Christensen, Glaser requested that the Court clarify that its January 7, 2008, ruling granted leave to depose it on only one issue. That is not the case, and the request is DENIED. Mattel has been granted relief from the numerical limitations that previously restricted its ability to depose those individuals and entities addressed by the Court's January 7, 2008, Order, including its ability to depose Christensen, Glaser. Unless otherwise restricted by the Discovery Master upon proper presentation of the issue to him, Mattel may depose Christensen, Glaser on any relevant, non-privileged matter.

### MACHADO GOMEZ'S EX PARTE APPLICATION RE JANUARY 7, 2008, ORDER (DOCKET # 1504)

This application is GRANTED. As noted above, Phase 2 discovery is STAYED until further order of the Court. The Court will address Phase 2 discovery, motions, pretrial, and trial dates after the conclusion of Phase 1 of the trial.

### MATTEL'S EX PARTE APPLICATION RE MOTION TO COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD PARTIES (DOCKET #1538)

This application is DENIED. This matter must be addressed in the first instance by the Discovery Master.

### MATTEL'S EX PARTE APPLICATION TO ENFORCE COURT'S ORDERS COMPELLING PRODUCTION OF TANGIBLE ITEMS (#1624)

This application is GRANTED IN PART. Counsel for MGA shall employ its best efforts to arrange for shipment of those tangible things located in the Peoples' Republic of China ("PRC") to Hong Kong Special Administrative Region ("Hong Kong") for examination in conjunction with those tangible things already located in Hong Kong. Otherwise, counsel for MGA shall cooperate in the

EXHIBIT ___11_____

PAGE ___184____

arrangements for inspection in both Hong Kong and the PRC.  Mattel's request for costs is denied without prejudice.

Counsel are encouraged to meet and confer with the intent of reaching a stipulation regarding the supplementation of expert reports.  Absent such stipulation, at the appropriate time, the Court will entertain an ex parte application from any party regarding this issue.

## MATTEL'S EX PARTE APPLICATION TO STAY PENDING REVIEW OF DISCOVERY MASTER'S JANUARY 11, 2008 ORDER (DOCKET # 1628)

This application is GRANTED IN PART.  The Court sets the motion for hearing on February 11, 2008.  Opposition shall be filed no later than February 6, 2008; any reply shall be filed no later than February 8, 2008.  The Discovery Master's January 11, 2008, Order is stayed until the issuance of the Court's minute order regarding the February 11, 2008, hearing.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

5

Initials of Deputy Clerk ___jh_____
Time: 1/45

EXHIBIT _____ *11*

PAGE _____ *185*

Case 2:04-cv-09049-SGL-RNB     Document 1931     Filed 02/04/2008     Page 6 of 7

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)     **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order of February 4, 2008

| |
|---|
| Atty Sttlmnt Officer Panel Coordinator |
| BAP (Bankruptcy Appellate Panel) |
| Beck, Michael J (Clerk, MDL Panel) |
| BOP (Bureau of Prisons) |
| CA St Pub Defender (Calif. State PD) |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| Case Asgmt Admin (Case Assignment Administrator) |
| Catterson, Cathy (9th Circuit Court of Appeal) |
| Chief Deputy Admin |
| Chief Deputy Ops |
| Clerk of Court |
| Death Penalty H/C (Law Clerks) |
| Dep In Chg E Div |
| Dep In Chg So Div |
| Federal Public Defender |
| Fiscal Section |
| Intake Section, Criminal LA |
| Intake Section, Criminal SA |
| Intake Supervisor, Civil |
| PIA Clerk - Los Angeles (PIALA) |
| PIA Clerk - Riverside (PIAED) |
| PIA Clerk - Santa Ana (PIASA) |
| PSA - Los Angeles (PSALA) |
| PSA - Riverside (PSAED) |
| PSA - Santa Ana (PSASA) |
| Schnack, Randall (CJA Supervising Attorney) |
| Statistics Clerk |

| |
|---|
| US Attorneys Office - Civil Division -L.A. |
| US Attorneys Office - Civil Division - S.A. |
| US Attorneys Office - Criminal Division -L.A. |
| US Attorneys Office - Criminal Division -S.A. |
| US Bankruptcy Court |
| US Marshal Service - Los Angeles (USMLA) |
| US Marshal Service - Riverside (USMED) |
| US Marshal Service -Santa Ana (USMSA) |
| US Probation Office (USPO) |
| US Trustee's Office |
| Warden, San Quentin State Prison, CA |

✓ ***ADD NEW NOTICE PARTY***
*(if sending by fax, mailing address must also be provided)*

Name: Ambassador Pierre-Richard Prosper

Firm:

Address *(include suite or floor)*: P.O. Box 581103

Salt Lake City, UT  84158

*E-mail:  Prosper.Pierre@Arentfox.com

*Fax No.:

\* For CIVIL cases only

***JUDGE / MAGISTRATE JUDGE (list below):***

Initials of Deputy Clerk  jh

EXHIBIT _____ 11

PAGE _____ 186

# NOTICE PARTY SERVICE LIST

Case No.  CV 04-09049 SGL(RNBx)    Case Title  Carter Bryant v. Mattel, Inc.

Title of Document    Minute Order of February 4, 2008

| | |
|---|---|
| Atty Sttlmnt Officer Panel Coordinator | US Attorneys Office - Civil Division -L.A. |
| BAP (Bankruptcy Appellate Panel) | US Attorneys Office - Civil Division - S.A. |
| Beck, Michael J (Clerk, MDL Panel) | US Attorneys Office - Criminal Division -L.A. |
| BOP (Bureau of Prisons) | US Attorneys Office - Criminal Division -S.A. |
| CA St Pub Defender (Calif. State PD) | US Bankruptcy Court |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | US Marshal Service - Los Angeles (USMLA) |
| Case Asgmt Admin (Case Assignment Administrator) | US Marshal Service - Riverside (USMED) |
| Catterson, Cathy (9th Circuit Court of Appeal) | US Marshal Service -Santa Ana (USMSA) |
| Chief Deputy Admin | US Probation Office (USPO) |
| Chief Deputy Ops | US Trustee's Office |
| Clerk of Court | Warden, San Quentin State Prison, CA |

| | |
|---|---|
| Death Penalty H/C (Law Clerks) | ✓ **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided) |
| Dep In Chg E Div | |
| Dep In Chg So Div | Name: Hon. Edward A. Infante (Ret.) |
| Federal Public Defender | Firm: |
| Fiscal Section | Address (include suite or floor):  Two Embarcadero |
| Intake Section, Criminal LA | Center, Suite 1500, San Francisco, CA  94111 |
| Intake Section, Criminal SA | |
| Intake Supervisor, Civil | *E-mail: |
| PIA Clerk - Los Angeles (PIALA) | *Fax No.: |
| PIA Clerk - Riverside (PIAED) | * For CIVIL cases only |
| PIA Clerk - Santa Ana (PIASA) | *JUDGE / MAGISTRATE JUDGE (list below):* |
| PSA - Los Angeles (PSALA) | |
| PSA - Riverside (PSAED) | |
| PSA - Santa Ana (PSASA) | |
| Schnack, Randall (CJA Supervising Attorney) | |
| Statistics Clerk | Initials of Deputy Clerk  jh |

G-75  (03/07)                    NOTICE PARTY SERVICE LIST

EXHIBIT _____ 11

PAGE _____ 187