QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
JOHN B. QUINN (State Bar No. 090378)
MICHAEL T. ZELLER (State Bar No. 196417)
JON D. COREY (State Bar No. 185066)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000; Facsimile: (213) 443-3100

STROOCK & STROOCK & LAVAN LLP
BARRY B. LANGBERG (State Bar No. 048158)
MICHAEL J. NIBORSKI (State Bar No. 192111)
2029 Century Park East, Suite 1600
Los Angeles, California 90067-3086
(lacalendar@stroock.com)
Telephone: (310) 556-5800; Facsimile: (310) 556-5959

Attorneys for MATTEL, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | Case No. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>DISCOVERY MATTER<br><br>[To Be Heard by Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of Dec. 6, 2006]<br><br>MATTEL, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL THE DEPOSITION OF CHRISTOPHER PALMERI |
| AND CONSOLIDATED ACTIONS | Date: TBA<br>Time: TBA<br>Place: TBA |

07209/2391541.1

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. PRELIMINARY STATEMENT ..... 1

II. ARGUMENT ..... 2

A. The Journalist's Privilege Is Not Implicated Here Because Mattel Only Seeks To Confirm The Authenticity Of Published Information ..... 2

B. Even If The Court Were To Find That The Federal Privilege Applies, It Should Yield Here ..... 5

1. Mr. Palmeri Is the Only Available Source to Authenticate Larian's Statement ..... 6

2. Larian's Statement Is Not Cumulative ..... 7

3. Larian's Statement Is Clearly Relevant to Mattel's Claims and MGA's Defenses ..... 8

4. That Larian's Statements Were Not Made In Confidence Weighs In Favor Of Disclosure ..... 9

C. California's State Constitutional Shield Law Does Not Apply ..... 9

1. The State Shield Law Does Not Apply Here Because Federal and State Claims Are At Issue ..... 10

2. The State Shield Law Does Not Apply Here Because the Matters About Which Mr. Palmeri Must Testify Were Published ..... 12

III. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page**

## Cases

Agster v. Maricopa County, 422 F.3d 836 (9th Cir. 2005) .......... 9, 11

Baker v. Los Angeles Herald Examiner, 42 Cal. 3d 254 (1986) .......... 4

Brinston v. Dunn, 919 F. Supp. 240 (S.D. Miss. 1996) .......... 2

Carushka, Inc. v. Premiere Products, Inc., 1989 WL. 253565 (C.D. Cal. 1989) .......... 11

Crowe v. County of San Diego, 242 F. Supp. 2d 740 (S.D. Cal. 2003) .......... 11

Dillon v. City and County of San Francisco, 748 F. Supp. 722 (N.D. Cal. 1990) .......... 10

In re Howard, 136 Cal. App. 2d 816 (Cal. App. 1955) .......... 12

Los Angeles Mem. Coliseum Comm'n v. Nat'l Football League, 89 F.R.D. 489 (C.D. Cal. 1981) .......... 11

McCarty v. Bankers Ins., 195 F.R.D. 39 (N.D. Fla. 1998) .......... 3

Norse v. Henry Holt & Co., 991 F.2d 563 (9th Cir. 1993) .......... 4

Shaklee Corp. v. Gunnell, 110 F.R.D. 190 (N.D. Cal. 1986) .......... 10

Shoen v. Shoen, 5 F.3d 1289 (9th Cir. 1993) .......... 2, 5, 9

Shoen v. Shoen, 48 F.3d 412 (9th Cir. 1995) .......... 2, 6

Sipple v. Foundation for National Progress, 71 Cal. App. 4th 226 (1999) .......... 5

In re Stratosphere Corp. Securities Litig., 183 F.R.D. 684 (D. Nev. 1999) .......... 11

Sullivan v. Warner Bros. Theaters, 42 Cal. App. 2d 660 (Cal. App. 1941) .......... 4

**Statutes**

Cal. Code of Civ. Proc. § 1881(6) .................... 12

Fed. R. Evid. 501 .................... 11

Florida Stat. § 90.5015(4) .................... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. PRELIMINARY STATEMENT

Christopher Palmeri's opposition rests on a false premise – that the source of a statement in his BusinessWeek article is "not published." Any reasonable reading makes clear that the statement that Isaac Larian "got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers" was made by Larian. There is no mystery here. The "unknown" information that ostensibly provides the basis for Mr. Palmeri's opposition is a fictional construct designed solely to keep Mr. Palmeri from taking a half-hour out of his day to confirm the accuracy of an article in a national news magazine read by hundreds of thousands of people.

Mr. Palmeri's argument that Larian is an unknown source of this published statement, and Mr. Palmeri should not have to confirm it under oath, requires the type of parsing and hyper-technical reading of a publication that courts have consistently rejected. Application of the privilege here is also unsupported by the public policies on which the journalist's privilege is based.

Put simply, the statement Mattel seeks to authenticate – and its source – is "published," and the reporter's privilege does not apply. Mr. Palmeri should be compelled to appear for deposition.

Moreover, even were the Court to find that the qualified reporter's privilege is implicated here, Mattel is entitled to the limited deposition testimony it seeks. First, Mr. Palmeri is the only available source to authenticate Larian's statement. Contrary to Mr. Palmeri's claims, Mattel has questioned Larian regarding the origins of Bratz and Larian's statements to reporters, and Larian has directly contradicted the statement in Mr. Palmeri's article.

Second, Mr. Palmeri's testimony would not be cumulative. Mr. Palmeri argues that Mattel has already obtained testimony regarding Larian's conflicting stories about the origins of Bratz. But Mattel has not obtained any testimony regarding

Larian's statement to Mr. Palmeri – which differs dramatically from Larian's comments to other reporters – and Mattel has not obtained any testimony regarding the particular story about the creation of Bratz that is in Mr. Palmeri's article. Larian's varying and contradictory claims about Bratz are not cumulative.

Third, the testimony Mattel seeks goes to the heart of the claims and defenses in this action. Mattel has alleged that MGA deliberately and intentionally concealed facts sufficient for Mattel to suspect or to know that it was the true owner of Bratz. Larian's statement to Mr. Palmeri that Larian came up with the idea for Bratz is critical evidence of Larian's effort to hide Bryant's invention of Bratz during his employment by Mattel. Such a statement by Larian shows guilty knowledge of the theft of Bratz from Mattel. It also goes directly to MGA's statute of limitations and laches defenses to Mattel's copyright and other claims – regarding which the Discovery Master has permitted broad discovery by MGA and Bryant.

Last, Mr. Palmeri argues that California's shield law protects him from testifying. That is incorrect. Ninth Circuit law is clear that where, as here, federal and state law claims are at issue, the court must apply federal privilege law. Even if it is applied, the federal journalist's privilege is qualified, and it must yield in these particular circumstances.

## II.  ARGUMENT

### A. The Journalist's Privilege Is Not Implicated Here Because Mattel Only Seeks To Confirm The Authenticity Of Published Information

In Shoen v. Shoen, 5 F.3d 1289 (9th Cir. 1993) ("Shoen I"), and Shoen v. Shoen, 48 F.3d 412 (9th Cir. 1995) ("Shoen II"), the Ninth Circuit held that the reporter's privilege applies to the discovery of a journalist's unpublished research materials. The Ninth Circuit did not address whether the privilege limits a court's power to compel a reporter to testify about published information. Subsequent courts, however, have held that it does not. See Brinston v. Dunn, 919 F. Supp. 240,

244 (S.D. Miss. 1996) (holding that it was proper to compel the deposition of journalist to authenticate published statements, but not regarding unpublished information).[1] Here, Larian's statement that "he got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers" was published in BusinessWeek. Thus, the reporter's privilege does not apply. The Court should compel Palmeri's deposition on the limited issue of authenticating the article, its contents, and Larian's statements to Mr. Palmeri.

Palmeri seeks to avoid testifying altogether by arguing that the fact that Larian made the statement was "unpublished." That argument is contrary to law and common sense.

The plain language of Mr. Palmeri's article and the context of the words used make clear that Larian told Mr. Palmeri that he (Larian) "got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers." BusinessWeek intended to convey that the statement came directly from Larian. Thus, either Larian actually made the statement, as communicated to readers by BusinessWeek, or the statement was fabricated. There is no middle ground.

The relevant paragraph states:

> Mattel won't live or die on every new toy it develops. But it can't just rely on Barbies, either. "Like they say in business school – no risk, no reward," says Isaac Larian, CEO of privately held MGA. He should know: He got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers.[2]

---

[1] The only published case Mr. Palmeri cites in support of his assertion that the reporter's privilege applies even to published information is readily distinguished. That case involved application of both federal privilege, and Florida's reporter's privilege law, which expressly states that "a professional journalist does not waive the privilege by publishing or broadcasting information." McCarty v. Bankers Ins., 195 F.R.D. 39, 45 (N.D. Fla. 1998) (citing Florida Stat. § 90.5015(4)).

[2] Declaration of Michael J. Niborski, dated January 20, 2008 ("Niborski Dec."), ¶ 2, Ex. 1 (Article).

Mr. Palmeri urges the Discovery Master to parse the paragraph and examine the last sentence in a vacuum, arguing that "the information could have come from any number of sources."[3] That hyper-technical analysis is contrary to a reasonable reading. Courts are most frequently asked to interpret published statements in the context of defamation actions. There, the law is clear that a publication "may not be divided into segments and each portion treated as a separate unit." Baker v. Los Angeles Herald Examiner, 42 Cal. 3d 254, 261 (1986). A statement must be interpreted "from the standpoint of the average reader, judging the statement not in isolation, but within the context in which it is made." Norse v. Henry Holt & Co., 991 F.2d 563, 567 (9th Cir. 1993) (citations omitted).

Here, an average reader would plainly understand the statement that Larian "got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers" was made by Larian. The statement is preceded by a direct quote from Larian. Moreover, there is no explanation in the Opposition as to how Mr. Palmeri could have learned from anyone other than Larian that Larian "got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers." The article itself offers no indication that Mr. Palmeri learned about the inspiration for Bratz from someone other than Larian. Indeed, Mr. Palmeri does not deny that Larian made the statement.[4]

Under Mr. Palmeri's logic, to be "published" the statement would need to be in direct quotes, and be proceeded or followed with the words "Larian said." If that were the law, the application of the reporter's privilege would depend on the stylistic decisions of a reporter rather than a plain reading of the article. A court should not "give the language used the . . . critical analysis of a mind trained in legal technicalities." Sullivan v. Warner Bros. Theaters, 42 Cal. App. 2d 660, 662 (Cal.

---

[3] Palmeri's Opposition, at p. 21.

[4] If Mr. Palmeri submitted a declaration to that effect, this entire dispute would be concluded.

App. 1941); see also Sipple v. Foundation for National Progress, 71 Cal. App. 4th 226, 240-42 (1999) (rejecting parsing of magazine article to determine whether particular published statements were made in court and therefore fell within the litigation privilege).

The plain language, in context, used by Mr. Palmeri conveys to reasonable readers that Larian told Mr. Palmeri that he (Larian) "got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers." After conveying to this message to his readers, Mr. Palmeri cannot now hide behind the journalist's privilege and assert that the source is unpublished.

By asking Mr. Palmeri to confirm Larian's statements, Mattel is not seeking unpublished information, and the journalist's privilege is not implicated.

Moreover, the public policies behind the reporter's privilege are not served by application of the privilege here. The "privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public." Shoen I, 5 F.3d at 1292. Here, Mr. Palmeri has not articulated any reason that a limited deposition to authenticate Larian's statement would somehow chill the "newsgathering process" or inhibit "the free flow of information to the public." Simply confirming the obvious will not hamper Mr. Palmeri's ability to gather information for BusinessWeek.

Accordingly, Mr. Palmeri should be ordered to appear for deposition.

**B. Even If The Court Were To Find That The Federal Privilege Applies, It Should Yield Here**

Even if the Court were to find (contrary to law) that the reporter's privilege does apply, Mr. Palmeri should still be compelled to appear for the limited deposition Mattel seeks. As Mattel noted in its motion, and Mr. Palmeri does not dispute, Shoen II sets forth the following three-part test for discovery of a journalist's research materials notwithstanding the valid assertion of the journalist's privilege.

The material sought must be: "(1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case." Shoen II, 48 F.3d at 416. Here, Mattel's request to depose Mr. Palmeri meets all three prongs of the test.

**1. Mr. Palmeri Is the Only Available Source to Authenticate Larian's Statement**

Mr. Palmeri is the only available source to authenticate Larian's statement. Mr. Palmeri argues that Mattel has not exhausted alternative sources because Mattel has not deposed Larian on the subject. In actuality, Larian has denied the statement in Mr. Palmeri's article. As discussed in Mattel's motion, Mr. Palmeri would provide testimony for which Larian would not be an alternate source, given Larian's interest in the outcome and Mr. Palmeri's position as an objective third party. And, Mr. Palmeri certainly does not identify any alternative sources.

Mattel deposed Larian at length about his claims regarding the origins of Bratz. Larian testified that Bryant conceived of Bratz and brought the concept to MGA in September 2000.[5] That testimony is directly contrary to the statement published in Mr. Palmeri's article. Moreover, Mattel specifically questioned Larian on statements he had made to reporters regarding the origins of Bratz. Larian responded by stating, "a lot of these reporters -- I've seen some of these articles which put things in there which was not my quote."[6] It is clear that Larian either will not or cannot verify the statements he made to Mr. Palmeri, or any other reporter. Moreover, Larian has refused to appear for further deposition without a court order. Only Mr. Palmeri can verify Larian's communications with him and provide the objective testimony that Mattel needs regarding Larian's statements in July 2003.

---

5 Niborski Dec., Ex. 14 (Larian Depo. Tr. at 55:23-78:10, 96:22-102:23).

6 Niborski Dec., Ex. 14 (Larian Depo. Tr. at 62:24 - 63:1).

**2. Larian's Statement Is Not Cumulative**

Mr. Palmeri argues that he should not be compelled to testify because it would be just cumulative impeachment evidence. Mr. Palmeri notes that Mattel has obtained testimony from other witnesses on Larian's "conflicting public accounts of the origins of the Bratz dolls."[7] Mr. Palmeri conveniently ignores the reasons Mattel seeks his testimony, which were addressed in Mattel's motion.

Larian's statement to Mr. Palmeri is critical – and unique – evidence that MGA, Larian and Bryant engaged in a scheme to conceal the fact that Bryant created Bratz while he was employed by Mattel. Larian participated in that scheme by, among other things, publicly claiming to BusinessWeek in July 2003 that Larian "got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers." Mattel cannot obtain admissible evidence of Larian's particular assertion to BusinessWeek from any source other than Mr. Palmeri. The other reporters who have testified in this litigation confirmed other public statements Larian made, in which he has stated different stories about the origins of Bratz – such as Larian's claim to the Wall Street Journal that Bryant submitted the idea for Bratz in a fashion doll contest in late 1999.[8]

Mr. Palmeri does not deny that no one else has testified about Larian's claim that Bratz was inspired by seeing "his own kids run around in navel-baring tops and hip-huggers." Mr. Palmeri also fails to identify any other similar published statement by Larian or alternative source for the same story about Larian's inspiration. Mr. Palmeri's requested testimony is not cumulative.

---

7 Palmeri's Opposition, at p. 10.

8 Niborski Dec. Ex. 8 (Tkacik Depo. Tr. at 8:13-10:14).

**3. Larian's Statement Is Clearly Relevant to Mattel's Claims and MGA's Defenses**

Mr. Palmeri claims that Mattel's "real purpose" in seeking authentication of Larian's remarks is for impeachment.[9] That is simply incorrect. Larian's remarks are important evidence showing that MGA was actively engaged in concealing Bryant's involvement in the creation of Bratz while Bryant was working for Mattel. Bryant and MGA's concealment of Bryant's involvement goes to the heart of Mattel's allegations that "Bryant and MGA deliberately and intentionally concealed facts sufficient for Mattel to suspect or to know that it was the true owner of Bratz," including by "concealing Bryant's role in Bratz by falsely claiming that Larian and others were the creators of Bratz."[10] That concealment is central to Mattel's defense to MGA's statute of limitations and laches affirmative defenses. Mattel has alleged that "[b]ecause of Bryant's and MGA's acts of concealment and Bryant's misrepresentations to Mattel, Mattel had no reason to suspect that Bryant had worked with MGA, or assisted MGA, while he [was] still employed by Mattel until approximately November 24, 2003."[11]

Mr. Palmeri's claim that the very existence of the article is sufficient evidence in support of Mattel's claim that it did not discover Bryant's involvement in Bratz until November 2003 is wrong. Mattel's claim is not simply that it first discovered Bryant's role in the creation of Bratz in November 2003, but that MGA "deliberately and intentionally concealed facts sufficient for Mattel" to learn the truth of Bryant's involvement.[12] To demonstrate MGA's intent, Mattel must obtain admissible

---

[9] Palmeri's Opposition, at p. 9.

[10] Niborski Dec., Ex. 15 (Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, ¶ 35).

[11] Id. at ¶ 36.

[12] The Court has permitted broad discovery into the circumstances under which Mattel learned about Bryant's involvement in Bratz. The contents of the BusinessWeek article, dated July 28, 2003, is particularly important because Larian's statements call into question MGA's assertion in this litigation that the Wall Street Journal article of July 18, 2003 (published at approximately the same time as the

evidence (*i.e.,* not hearsay) that Larian did in fact make the statements Mr. Palmeri included in his article. Mattel cannot simply introduce the BusinessWeek article at trial to establish the truth of its contents, and Mr. Palmeri does not seriously argue that he can.

**4. That Larian's Statements Were Not Made In Confidence Weighs In Favor Of Disclosure**

The Ninth Circuit has made clear that "the absence of confidentiality may be considered in the balance of competing interests as a factor that diminishes the journalist's, and the public's, interest in non-disclosure." Shoen I, 5 F.3d at 1295. Here, Larian's statements to Mr. Palmeri were not made with an assurance of confidentiality. That weighs in favor of requiring Mr. Palmeri to appear for deposition for the limited purpose of authenticating those statements.

Mr. Palmeri does not dispute the absence of confidentiality. Instead, Mr. Palmeri argues that confidentiality is not an element of the three-prong test set forth in Shoen. Mattel never claimed that it was. There can be no dispute that the lack of confidentiality lessens any interest the public might have in relieving Mr. Palmeri of his obligation to testify. Mr. Palmeri cites no authority to the contrary.

**C. California's State Constitutional Shield Law Does Not Apply**

Mr. Palmeri argues that California's shield law provides him with absolute immunity from testifying. Not so. California's shield law does not apply in this action because Mattel has asserted both federal and state law claims. Moreover, California's shield law only applies to unpublished information. The information Mattel intends to ask Mr. Palmeri about was published.

---

BusinessWeek article) established Mattel's knowledge of its claims. In reality, Larian was telling the press and public a variety of conflicting stories throughout 2003.

**1. The State Shield Law Does Not Apply Here Because Federal and State Claims Are At Issue**

The law is clear that "[w]here there are federal question claims and pendent state law claims present, the federal law of privilege law applies." Agster v. Maricopa County, 422 F.3d 836, 839 (9th Cir. 2005). Here, Mattel has asserted both federal and state law claims.[13] Thus, federal privilege law governs and California's shield law is inapplicable. See, e.g., Dillon v. City and County of San Francisco, 748 F. Supp. 722, 724-45 (N.D. Cal. 1990) (rejecting application of California's shield law).

In an effort to get around this clear rule, Mr. Palmeri argues that California's shield law should apply because the information sought applies only to Mattel's state law claims of "breach of contract, breach of fiduciary duty, and breach of duty of loyalty."[14] That is wrong. Mattel has alleged that "Bryant and MGA deliberately and intentionally concealed facts sufficient for Mattel to suspect or to know that it was the true owner of Bratz," including "concealing Bryant's role in Bratz by falsely claiming that Larian and others were the creators of Bratz."[15] Mattel has alleged that "[b]ecause of Bryant's and MGA's acts of concealment and Bryant's misrepresentations to Mattel, Mattel had no reason to suspect that Bryant had worked with MGA, or assisted MGA, while he [was] still employed by Mattel until approximately November 24, 2003."[16] These allegations are critical to Mattel's copyright claims because they demonstrate that the claims are not time barred. Isaac Larian's statement that he "got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers" is evidence of MGA's intentional concealment

---

[13] Niborski Dec., Ex. 15 (Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007).

[14] Palmeri's Opposition, at p. 14.

[15] Niborksi Dec., Ex. 15 (Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, ¶ 35).

[16] Id. at ¶ 36.

of Bryant's role as the true creator of Bratz and is thus directly relevant to Mattel's federal copyright claims. As Mr. Palmeri notes, it is only "[w]here a subpoena seeks evidence affecting only the state-law claims in a federal-court action, [that] the state law of privilege applies."[17] Because Larian's statement is relevant to Mattel's copyright claim, California's shield law does not apply.

Mr. Palmeri's argument that California's shield law should apply notwithstanding the fact that the testimony sought is relevant to Mattel's federal law claims is without merit. In support of his position, Mr. Palmeri cites three district court cases that purport to hold that state law privileges are to be applied where both federal and state law claims are at issue.[18] Those cases, however, are contrary to subsequent Ninth Circuit law. In each of the cases Mr. Palmeri cites, the court interpreted Fed. R. Evid. 501 as requiring both federal and state privilege law to apply where both federal and state law claims were at issue. In 2005, the Ninth Circuit rejected that interpretation, holding that, pursuant to Fed. R. Evid. 501, "[w]here there are federal question claims and pendent state law claims present, the federal law of privilege law applies." Agster, 422 F.3d at 839.[19]

---

[17] Palmeri's Opposition, at p. 13 (citing Shaklee Corp. v. Gunnell, 110 F.R.D. 190, 192 (N.D. Cal. 1986) (emphasis added)).

[18] Palmeri's Opposition, at pp. 14-15 (citing Los Angeles Mem. Coliseum Comm'n v. Nat'l Football League, 89 F.R.D. 489 (C.D. Cal. 1981); Carushka, Inc. v. Premiere Products, Inc., 1989 WL 253565 (C.D. Cal. 1989); and In re Stratosphere Corp. Securities Litig., 183 F.R.D. 684 (D. Nev. 1999).

[19] Mr. Palmeri's effort to distinguish Agster in a footnote fails. Mr. Palmeri claims that Agster is not controlling because it involved privilege in relation to a hospital's peer review rather than the reporter's privilege. But Fed. R. Evid. 501 applies to all privileges and Agster sets forth the Ninth Circuit's interpretation of that provision. Mr. Palmeri provides no basis to claim that the analysis should be different for the reporter's privilege. Indeed, in Crowe v. County of San Diego, 242 F. Supp. 2d 740, 749-750 (S.D. Cal. 2003), the court held that where both state and federal claims are at issue, the federal reporter's privilege, not the California shield law, applies.

**2. The State Shield Law Does Not Apply Here Because the Matters About Which Mr. Palmeri Must Testify Were Published**

California's shield law does not apply for an additional, independent reason -- the shield law protects only "unpublished information." Here, as described in Section II.A above, the statement Mattel seeks authenticated was published. Mr. Palmeri claims that courts have interpreted "unpublished information" so broadly as to include the identity of an individual who is directly quoted in a news article. But the only case Mr. Palmeri cites for that proposition did not analyze the definition of "unpublished information" under California's shield law at all, and Mr. Palmeri's citation to In re Howard, 136 Cal. App. 2d 816 (1955), is an attempt to mislead the Court.

In re Howard involved former Cal. Code of Civ. Proc. § 1881(6), which has since been repealed. That statute provided that journalists could not be held in contempt for refusing to disclose sources to a court. It was not until 1974, after the shield law was transferred to the Evidence Code, that the Legislature added "unpublished information" to the shield law, and In re Howard had no occasion to address whether the nonconfidential source of a published statement is "unpublished information." In re Howard therefore provides no support for Mr. Palmeri's position.

## III. CONCLUSION

Mattel respectfully requests that the Court order Mr. Palmeri to appear for his deposition.

Dated: February 15, 2008

STROOCK & STROOCK & LAVAN LLP
BARRY B. LANGBERG
MICHAEL J. NIBORSKI

By: /s/ Michael J. Niborski
Michael J. Niborski

Attorneys for MATTEL, INC.

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action, My business address is Apex Attorney Services, 1055 West Seventh Street, Suite 250, Los Angeles, CA 90017.

On February 15, 2008, I served true copies of the following document(s) described as **MATTEL, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL THE DEPOSITION OF CHRISTOPHER PALMERI** on the parties in this action as follows:

Thomas J. Nolan, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 So. Grand Ave.
Suite 3400
Los Angeles CA 90071

Mark E. Overland, Esq.
David C. Scheper, Esq.
Alexander H. Cote, Esq.
Overland, Borenstein, Scheper & & Kim, LLP
300 S. Grand Avenue, Suite 2750
Los Angeles, CA 90071

Alonzo Wickers IV, Esq.
Davis Wright Tremaine LLP
865 So. Figueroa St.,
Suite 2400
Los Angeles, CA 90017

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 15, 2008, at Los Angeles, California.

KYLE GLEASON

**PROOF OF SERVICE**

I am a contractor for Apex Attorney Services, 1055 West Seventh Street, Suite 250, Los Angeles, CA 90017. I am over the age of eighteen years and not a party to the within action.

On February 15, 2008, I served true copies of the following document(s) described as **MATTEL, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL THE DEPOSITION OF CHRISTOPHER PALMERI** on the parties in this action as follows:

John W. Keker, Esq.
Michael H. Page, Esq.
Christa M. Anderson, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 15, 2008, at San Francisco, California.

Toshinori Kawase

07209/2190147.1