1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

11

12  | CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
    | | JAMS Reference No. 1100049530 |

13          Plaintiff,

14      v.                              Consolidated with
                                        Case No. CV 04-09059
15                                      Case No. CV 05-2727
    MATTEL, INC., a Delaware corporation,
16                                      **ORDER GRANTING IN PART AND**
            Defendant.                  **DENYING IN PART MATTEL'S**
17                                      **MOTION TO COMPEL RESPONSES**
                                        **TO INTERROGATORY NOS. 27-44**
18                                      **AND 46-50 BY THE MGA PARTIES**

19
    CONSOLIDATED WITH
20  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v. MATTEL,
21  INC.

22                   I. INTRODUCTION

23          On December 20, 2007, Mattel, Inc. ("Mattel") submitted a Motion to Compel Responses

24  to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties. MGA Entertainment, Inc., MGA

25  Entertainment (HK) Limited, MGAE De Mexico, S.R.L. De C.V., and Isaac Larian (collectively

26  referred to as "MGA parties") submitted an opposition on December 31, 2007. Mattel submitted

27  a reply on January 7, 2008. On February 8, 2008, the MGA parties submitted their second

28

1  supplemental responses and third supplemental responses to the interrogatories at issue. The

2  matter was heard on February 11, 2008.

## II. BACKGROUND

4      Mattel served its Revised Third Set of Interrogatories on the MGA parties on September

5  21, 2007, asking each of them the same fifteen questions (Nos. 27-41). Mattel served its Fourth

6  Set of Interrogatories on the MGA parties on October 12, 2007, propounding four additional

7  interrogatories (Nos. 42-45). Mattel served an Amended Fourth Set on October 23, 2007,

8  removing No. 45, but retaining Nos. 42-44. Mattel served its Fifth Set of Interrogatories on

9  October 19, 2007, which consisted of two additional questions (Nos. 46-47). On October 23,

10  2007, Mattel served its Sixth Set of Interrogatories, which consisted of Interrogatory No. 45 to

11  replace the previously withdrawn interrogatory. On October 25, 2007, Mattel served its Seventh

12  Set of Interrogatories, which consisted of Nos. 48-50.

13      In November of 2007, the MGA parties served responses and objections to Mattel's

14  interrogatories, and in some instances supplemental responses. For the most part, the answers of

15  each of the MGA parties are substantially similar. However, in several instances where MGA

16  Entertainment, Inc. provides a response, either MGA Entertainment (HK), MGAE de Mexico

17  S.R.L. de C.V. and/or Larian do not, asserting that the interrogatory "appears directed at another

18  party."

19      The parties met and conferred on December 10 and 12, 2007 regarding the supplemental

20  responses. The MGA parties offered to provide supplemental responses by January 7, 2008.

21  Mattel contends, however, that the scope of the MGA parties' proposed supplemental responses

22  was inadequate. Therefore, Mattel filed the instant motion on December 20, 2007.[1]

23      Mattel contends that the interrogatories at issue seek information relevant to central issues

24  in the case, such as: MGA's contentions regarding which Bratz inventions were created before,

---

26      [1] One of the issues raised in the motions papers –whether the interrogatories exceed the 50 interrogatory

27  per side limit -- has been rendered moot by Judge Larson's Order Granting in Part and Denying in Part Mattel's
Motion for Leave to Take Additional Discovery, dated January 7, 2008.

28

1    during and after Carter Bryant's ("Bryant") employment with Mattel; the identity of electronic

2    storage devices MGA used prior to 2002 for digital information related to Bratz; the identity of

3    the sources of information from which MGA has collected documents in this litigation which

4    relate to Bratz and the time period prior to February 28, 2001; the facts allegedly supporting

5    MGA's contention that the Bratz dolls are not based on designs Bryant created while employed

6    by Mattel; MGA's contentions regarding Mattel's claims against MGA, Bryant and others,

7    including how Bryant's Inventions Agreement with Mattel and his assignment of rights to Bratz

8    inventions to MGA and services with or for MGA while employed by Mattel affect who owns the

9    rights to Bratz inventions, and the alleged basis for MGA's claims that it purportedly acted with

10   innocent intent; the identity of MGA's bank or financial accounts; the identity of former Mattel

11   employees that have been employed by MGA; non-privileged facts concerning the dispute

12   leading to the withdrawal of MGA's prior counsel that relate to MGA's handling of discovery in

13   this case; the facts supporting MGA's claims against Mattel, including MGA's contentions that

14   Mattel has copied, infringed or diluted MGA's trade dress; and the relevant dates regarding the

15   products MGA asserts MGA has copied or infringed. Mattel's Motion at pp. 2-3.

16        Mattel contends that although it has received responses to all of the interrogatories except

17   Nos. 39, 46 and 47, all of the responses are deficient. As an initial matter, Mattel contends that

18   the MGA parties' "boilerplate" objections – that the interrogatories are vague and ambiguous,

19   overbroad, unduly burdensome and oppressive, seek information not in the possession, custody or

20   control of MGA, seek information protected by the attorney-client privilege, work product or joint

21   defense privileges, and call for a legal conclusion – are without merit. Mattel contends that the

22   MGA parties fail to specify how the questions are overbroad, unduly burdensome or oppressive.

23   Mattel also contends that its interrogatories do not require the disclosure of privileged information

24   or work product, but rather require the MGA parties to state their contentions about facts or the

25   application of law to facts.

26        Mattel further contends that some of the MGA parties' responses are deficient in that they

27   merely lay out the "basic facts" (instead of "all facts") on which they intend to rely, without any

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

1   details. Mattel contends that its contention interrogatories, including the purportedly "negative"

2   interrogatories asking for every fact which supports the denial of a statement or allegation, are

3   commonly used and well accepted to elucidate facts regarding a party's contentions, absent a

4   showing of undue burden. Indeed, Mattel points to decisions by the district judge which it

5   contends supports its use of the contention interrogatories at issue. Mattel also points out that it

6   provided the MGA parties with the details supporting its contentions in a one hundred-ten page

7   supplemental interrogatory response, and contends that the MGA parties ought to provide

8   comparable details to Mattel.

9          Mattel also contends that the MGA parties have unilaterally limited many of their

10  responses by disregarding Mattel's definitions of terms and phrases used in the interrogatories.

11  Further, Mattel contends that the MGA parties have failed to identify with specificity documents

12  they intend to rely upon, as requested by some of the interrogatories.

13         Mattel acknowledges that fully responding to the interrogatories will require some effort.

14  However, Mattel contends that the interrogatories are not unduly burdensome in this high stakes

15  litigation. Mattel contends that its need to discover MGA's key contentions outweighs any effort

16  the MGA parties will be required to undertake to disclose the requested information.

17  Accordingly, Mattel seeks an order overruling all of the MGA parties' objections and compelling

18  the MGA parties to provide complete responses to Interrogatory Nos. 27-44 and 46-50.

19         The MGA parties contend that their current responses comply with Rule 33 of the Federal

20  Rules of Civil Procedure and that Mattel is not entitled to any additional information for a number

21  of reasons. The MGA parties raise four main arguments in opposition to Mattel's motion. First,

22  the MGA parties contend that Mattel is not entitled to information about MGA's substitution of

23  counsel because such information is protected by the attorney-client privilege or the work product

24  doctrine. Second, the MGA parties contend that Mattel is not entitled to the sweeping financial

25  data that has been requested. Third, the MGA parties contend that Mattel's contention

26  interrogatories contain misleading and unfair definitions and are unduly burdensome in that they

27  require a recitation of all facts supporting the MGA parties' contentions. Fourth, the MGA parties

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

1   contend that Rule 33 does not require a response to a contention interrogatory to set forth more

2   than the principal factual and legal bases for the response.

3   III. STANDARDS

4        Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

5   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

6   party." Fed.R.Civ.P. 26(b)(1).  Fishing expeditions to discover new claims, however, are not

7   permitted.  See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

8   2004) ("District courts need not condone the use of discovery to engage in 'fishing

9   expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

10  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

11  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

12  the phrase "subject matter involved in the pending action," were intended to prevent discovery

13  that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

14  litigate the issues presented by the pleadings but to develop new claims or defenses.).

15       Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

16  extent of use of the discovery methods if the court determines that (i) the discovery sought is

17  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

18  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

19  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

20  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

21  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

22  the litigation, and the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P.

23  26(b)(2)(C).

24       Rule 33 of the Federal Rules of Civil Procedure allows a party to propound

25  interrogatories, for which the responding party is required to furnish such information as is

26  available to the party after conducting a reasonable inquiry.  "Each interrogatory must, to the

27  extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

1  33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity."

2  Fed.R.Civ.P. 33(b)(4).

3                              IV. DISCUSSION

4  A. Interrogatories About the Identity of Bratz Inventions (Nos. 27, 28 and 29)

5          Interrogatory Nos. 27-29 request information relating to Bratz inventions created during

6  three different time periods, namely before, during and after Bryant's employment with Mattel:

7          **Interrogatory No. 27**: IDENTIFY each and every BRATZ INVENTION YOU
           contend was CREATED, in whole or in part, prior to January 4, 1999, and for
8          each BRATZ INVENTION so identified state all FACTS that support YOUR
           contention that such BRATZ INVENTION (or aspects or portions thereof) was
9          CREATED prior to January 4, 1999, and IDENTIFY all PERSONS with
10         knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO
           such facts.

11
           **Interrogatory No. 28**: IDENTIFY each and every BRATZ INVENTION YOU
12         contend was CREATED, in whole or in part, after October 19, 2000 and before
           June 1, 2001, and for each BRATZ INVENTION so identified state all FACTS
13         that support YOUR contention that such BRATZ INVENTION (or aspects or
14         portions thereof) was CREATED after October 19, 2000 and before June 1, 2001,
           and IDENTIFY all PERSONS with knowledge of such facts and all
15         DOCUMENTS which REFER OR RELATE TO such facts.

16
           **Interrogatory No. 29**: IDENTIFY each and every BRATZ INVENTION that
17         was CREATED, in whole or in part, after January 3, 1999 and before October 21,
           2000, and for each BRATZ INVENTION so identified state all FACTS that
18         REFER OR RELATE TO the timing of the creating of such BRATZ
19         INVENTION and IDENTIFY all PERSONS with knowledge of such facts and all
           DOCUMENTS which REFER OR RELATE TO such facts.
20

21  Mattel contends that these interrogatories seek information that is plainly relevant and

22  discoverable, and that the MGA parties do not contend otherwise.  Mattel further contends that

23  the partial response given using the MGA parties' definition, not Mattel's definition, of BRATZ

24  INVENTION is inadequate.  Mattel also contends that the MGA parties have failed to carry their

25  burden of showing that the interrogatories are burdensome or oppressive, particularly given the

26  importance of the information sought.  Mattel emphasizes that the information sought will prove

27  liability as to a number of its claims.  Moreover, Mattel contends that knowing which inventions

28

1  MGA claims were created before and just after Bryant's second period of employment at Mattel

2  is essential so that Mattel can avoid unfair surprise at trial and impeach the defendants'

3  chronology of Bratz design and development.

4       The MGA parties contend that Mattel is using misleading and unfair definitions to create

5  jury confusion. In particular, the MGA parties object to Mattel's definition of "BRATZ

6  INVENTION," which they contend contains separate component parts ("representation, idea,

7  concept, work, process, procedure, plan, improvement, DESIGN or other development"), and

8  Mattel's definition of "DESIGN," which they contend adds at least another 21 elements ("all

9  works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints,

10  schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

11  practice, developments, inventions and/or improvements"). The MGA parties contend that

12  including all of these concepts in the definition "improperly conflates distinct issues of patent law,

13  copyright protection, trade secret law and the common law protecting original ideas, many of

14  which have no place in the ordinary usage of the term 'invention.'" MGA Parties' Opposition at

15  2:11-13. The MGA parties emphasize that these distinctions are important because Mattel lays

16  claim to Bratz under a January 4, 1999 "Employee Confidential Information and Inventions

17  Agreement." Further, the MGA parties accuse Mattel of using the contention interrogatories to

18  elicit a misleading "sound bite" it can read to the jury to argue that the MGA parties concede that

19  Bryant "invented" Bratz while employed by Mattel. The MGA parties contend that they have

20  provided adequate responses to the interrogatories using the common and ordinary meaning of the

21  term "invention," and should not be required to provide anything further.

22       Next, the MGA parties contend that they have given Mattel the principal factual and legal

23  bases for their contentions, and Rule 33 does not require them to provide anything further. The

24  MGA parties contend that requiring a narrative response setting forth all evidence in support of

25  their contentions would render the interrogatories unduly burdensome and "inherently improper."

26  See e.g. Clean Earth Remediation & Constr. Servs. v. Am. Int'l Group, 245 F.R.D. 137, 141 (S.D.

27  N.Y. 2007) ("[A] number of cases have held that interrogatories seeking identification of all facts

28

1 supporting a particular allegation are *inherently improper*.").

2      Mattel's motion to compel further responses to Interrogatory Nos. 27-29 is denied because

3 the interrogatories are overbroad and unduly burdensome.  The definition of "Bratz Invention" is

4 extremely broad, encompassing numerous intellectual property concepts.  Mattel has not shown

5 how each and every concept embedded in its multi-faceted definition of "Bratz Invention" is

6 relevant to interpreting the term "invention" for purposes of enforcing the "Employee

7 Confidential Information and Inventions Agreement," signed by Bryant.  The breadth and undue

8 burden of Interrogatory Nos. 27-29 are also compounded by the fact that Mattel is employing an

9 extremely broad definition of "Bratz Invention" in a contention interrogatory seeking all facts

10 supporting the MGA parties' contentions, the identities of all persons knowledgeable, and all

11 supporting documents.  Not all contention interrogatories requiring a recitation of all facts,

12 documents and witness are objectionable.  See e.g. Tatum v. Schwartz, 2007 WL 2220977 at *1

13 (E.D. Cal. Aug. 2, 2007) (noting that contention interrogatories can impose undue burdens, but

14 that "courts have otherwise approved of them when they are limited to discrete, narrow factual

15 events"); Roberts v. Heim, 130 F.R.D. 424, 427 (N.D. Cal. 1989) (recognizing a broad spectrum

16 of contention interrogatories, and noting that it is not possible to announce a hard and fast rule as

17 to the exact amount of detail a party has to supply in response to a contention interrogatory).  In

18 the instant case, however, Mattel's contention interrogatories would force the MGA parties to

19 review the nearly 4 million pages of documents produced in this action and more than 50 days of

20 deposition testimony in search of information relating to "any representation, idea, concept, work,

21 process, procedure, plan, improvement, design or other development" that refers or relates to

22 Bratz, including "all works, designs, artwork, sketches, drawings, illustrations, representations,

23 depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,

24 rotocasts, reductions to practice, developments, inventions and/or improvements" that refer or

25 relate to Bratz.  It is not the MGA parties' responsibility to re-write the interrogatories in a

26 manner that will yield Mattel the most amount of information to support Mattel's claims and

27 defenses.  On balance, the burden of responding further to Interrogatory Nos. 27-29, as written,

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

1    outweighs the likely benefit of the interrogatories, taking into account the needs of the case, the

2    amount in controversy, the parties' resources, the importance of the issues at stake in the

3    litigation, and the importance of the proposed discovery in resolving the issues.

4         In any event, the MGA parties' responses are adequate under the circumstances.  Faced

5    with overbroad and unduly burdensome interrogatories, the MGA parties provide facts supporting

6    the contentions identified in the interrogatories, identify persons with knowledge of those facts,

7    and identify the principal documents or categories of documents that support each contention.

8    See e.g. Moses v. Halstead, 236 F.R.D. 667, 674 (D. Kan. 2006).  For example, in response to

9    Interrogatory No. 27, the MGA parties set forth their contention that the concept for a new line of

10   fashion dolls envisioned by Bryant in August and/or September of 1998 could not have been

11   patented as a utility patent because fashion dolls were in the public domain for the purposes of

12   utility patent protection.  However, the MGA parties contend that Bryant's idea of a line of

13   fashion dolls he called Bratz was sufficiently novel and original to be protected under California

14   law as a confidential novel idea under Desny v. Wilder, 46 Cal.2d 715 (1956) and its progeny.

15        The MGA parties' supplemental responses to Interrogatory No. 27 also include the MGA

16   parties' contention that Bryant's pre-1999 drawings were never reduced to practice; that design

17   patents are not available for drawings or two-dimensional flat art of the sort that Bryant sketched

18   in 1998; that Bryant was not a sculptor and any effort to translate his pre-1999 two-dimensional

19   flat art into a three-dimensional form for use as a fashion doll sculpt would have produced shapes

20   that were different from the actual shape of the final three-dimensional Bratz sculpt used in

21   manufacturing the first generation of Bratz dolls released on the market by MGA in or about June

22   2001; that the final physical shape of the first generation of Bratz dolls released on the market by

23   MGA in or about June 2001 was conceived by Margaret Leahy; and that Bryant's drawings used

24   standard fashion model poses, and thus were not novel or original.  Further, the MGA parties'

25   supplemental responses to Interrogatory No. 27 include the MGA parties' contention that the

26   drawings Bryant completed in August and September of 1998 contained original expression

27   covered by copyright, but that subsequent modifications and versions of the drawings made by

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

1    Bryant in 1999 and 2000 did not contain original expression. The MGA parties also identify

2    numerous individuals having knowledge of the facts supporting their contentions, and identify

3    documents that are relevant to the MGA parties' contentions.

4    B. Interrogatory About the Identity of Former Mattel Employees Hired by MGA (No. 41)

5           Interrogatory No. 41 asks the MGA parties to "IDENTIFY" all former Mattel employees

6    "who are now or have been employed" by MGA since January 1, 1999.  More specifically,

7    Interrogatory No. 41 asks the MGA parties to:

8           IDENTIFY all PERSONS who at any time have been employed by or under
       contract with MATTEL who are now or have been employed by or under contract
9       with YOU since January 1, 1999, and, for each such PERSON, state his or her
       name, date of hire or effective date of contract, the date on which YOU first had
10      contact with such PERSON regarding potential employment or contracting, the
       date(s) on which such PERSON was interviewed for possible employment or
11      contracting, each title (if any) such PERSON has held while employed by or
       under contract with YOU, and the date of termination (if applicable).
12
   In their supplemental response, the MGA parties assert numerous objections, but also provide a
13
   list of well over a hundred individuals with their position title and employment dates.
14
           Mattel contends that the MGA parties' response is incomplete because it does not contain
15
   the date of first contact regarding potential employment or contracting, as well as the interview
16
   date for potential employment or contracting.
17
           The MGA parties contend that during the meet and confer process, they agreed to
18
   investigate whether the additional requested information was reasonably available.  The MGA
19
   parties represent that they are in the process of looking for the requested information, and that
20
   they will supplement their response if the information is reasonably available without undue
21
   burden.
22
           Mattel's motion to compel a further response to Interrogatory No. 41 is granted in part.
23
   The requested information is clearly relevant to Mattel's claims, and the MGA parties do not
24
   contend otherwise.  In particular, the date of first contact, interview date, start date and end date
25
   for Bryant's employment are highly relevant, but are conspicuously absent from the MGA
26
   parties' response.  The MGA parties shall provide the missing information for Bryant.  In
27

28

1  addition, the MGA parties shall provide the interview dates for each of the individuals identified

2  in their supplemental responses.  The interview dates are potentially relevant to Mattel's claim

3  that the MGA parties induced former Mattel employees to abscond with Mattel's trade secrets.

4  However, the MGA parties are not required to provide the date of first contact for each individual

5  because the burden of producing such information outweighs its likely benefit, taking into

6  account the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

7  C. Interrogatories re Allegedly Copied or Infringed Products (Nos. 43-44)

8        Interrogatory Nos. 43 and 44 request dates on which each "concept, design, product,

9  product packaging or other matter that YOU contend Mattel copied or infringed" was (1)

10  "conceived" and (2) "first fixed in any tangible medium of expression," and the identity of

11  persons with knowledge and documents that refer or relate to the foregoing.  In the responses, the

12  MGA parties state numerous objections, but also refer Mattel to MGA's response to Interrogatory

13  No. 3 of Mattel's First Set of Interrogatories re Claims of Unfair Competition.  The MGA parties

14  also respond that, in general, at MGA, product development is completed 7-8 months before the

15  first invoice date, although that time period could be reduced in certain situations to 5-6 months.

16        Mattel contends that the information it seeks is relevant to its defense against MGA's

17  claims that Mattel copied or infringed MGA's products.  One of Mattel's defenses is that "Mattel

18  was the one who came up with relevant matters first -- before MGA -- and that MGA was the one

19  who copied or stole from Mattel."  Mattel's Motion at p.23.  Mattel contends that the MGA

20  parties' responses to Interrogatory Nos. 43 and 44 are inadequate because the referenced

21  Interrogatory No. 3 requested different information, namely the dates on which the products were

22  first "disclosed to any PERSON not employed by MGA" and first "made available for sale."

23        In response to the instant motion to compel, the MGA parties represent that they are

24  assessing whether they can provide more specific information without undue hardship, and will

25  supplement their responses if such information is available.  MGA's Opposition at p.29.

26        Mattel's motion to compel further responses to Interrogatory Nos. 43 and 44 is granted.

27  The requested information is relevant to Mattel's defense against the MGA parties' claims that

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

1  their products have been copied or infringed by certain Mattel products.  Although the MGA

2  parties served supplemental responses after filing their opposition brief, the supplemental

3  responses do not include the requested information.  The MGA parties have failed to establish

4  that the interrogatories are unduly burdensome.

5  D. Interrogatories About the Trade Dress MGA Claims Mattel Products Infringe (Nos. 48-50)

6       Interrogatory Nos. 48-50 are directed to the MGA parties' trade dress claims:

7       **Interrogatory No. 48:**  Separately IDENTIFY each trade dress that YOU
        contend MATTEL has copied, infringed or diluted or that is otherwise the
8       subject of YOUR claims, defenses or allegations in THIS ACTION.

9       **Interrogatory No. 49:**  For each trade dress identified in response to
        Interrogatory No. 48, separately and fully IDENTIFY each and every MATTEL
10      product, packaging or other matter that YOU contend copies, infringes or dilutes
        such trade dress, including without limitation by describing fully and separately,
11      for each such MATTEL product, packaging or other matter, each and every
        element of the claimed trade dress that YOU contend MATTEL has copied,
12      infringed or diluted.

13      **Interrogatory No. 50:**  For each trade dress identified in response to
        Interrogatory No. 48, separately and completely IDENTIFY all facts that support
14      YOUR contention that such trade dress is protectible, all DOCUMENTS that
        REFER OR RELATE to the foregoing and all PERSONS with knowledge of the
15      foregoing.

16      Mattel contends that these interrogatories seek core contentions underlying the MGA

17  parties' trade dress infringement claims and that the partial responses provided are inadequate

18  because they set forth only the "basic facts" without identifying a single product that MGA

19  alleges was infringed or any other details.  Mattel also contends that the responses are improper

20  insofar as the MGA parties state that their responses "may be incomplete" as the subject matter of

21  this interrogatory will be the source of expert testimony and an expert may identify additional

22  facts that support MGA's contentions.  Mattel contends that such a limitation would allow MGA

23  to sandbag Mattel by introducing new products into the litigation after fact discovery has closed.

24      As a preliminary matter, the MGA parties contend that Interrogatory Nos. 48-50 are

25  directed to a Phase 2 issue, and therefore, they reserve their right to supplement the responses in

26  Phase 2.  Nevertheless, the MGA parties contend that their responses provide Mattel with the

27  principal facts supporting their contentions in compliance with Rule 33.

28

1        Mattel's motion to compel further responses to Interrogatory Nos. 48-50 is denied. The

2   MGA parties are in substantial compliance with Rule 33, having identified numerous elements of

3   trade dress they contend Mattel has infringed. More specifically, the MGA parties' responses

4   identify Mattel's "My Scene" fashion dolls and pet dolls as the Mattel products that infringe their

5   trade dress. The MGA parties also set forth the principal facts supporting their contention that

6   their trade dress is protectible under the applicable trade dress legal principles, including that the

7   trade dress is aesthetic and non-functional, inherently distinctive, and has acquired secondary

8   meaning. That the interrogatory responses include a reservation of rights to supplement during

9   expert discovery does not render the responses inherently improper or inadequate. Mattel does

10   not contest that the identification of the elements and products subject to trade dress infringement

11   will be a subject of expert testimony.

12   E. Interrogatory About the Identity of MGA's Bank Accounts (No. 39)

13        Interrogatory No. 39 asks MGA to "IDENTIFY each and every bank or financial

14   institution account that REFERS OR RELATES TO YOU, including accounts in YOUR name or

15   for YOUR benefit, since January 1, 1999." The MGA parties objected to this interrogatory as

16   seeking information "not relevant to the claims or defenses of any party to the action and not

17   reasonably calculated to lead to the discovery of admissible evidence.

18        Mattel contends that the information sought is discoverable because it may lead to direct

19   evidence of liability regarding Mattel's allegations of commercial bribery against MGA and

20   Larian. More specifically, Mattel contends that the timing and amounts of payments made to

21   Bryant and to other then-Mattel employees from MGA's bank accounts would establish

22   commercial bribery and other tortious conduct. Mattel also contends that the timing of such

23   payments would also be indicative of the timing of Bryant's first involvement with MGA.

24   Further, Mattel contends that the requested information is relevant to establish net worth for

25   purposes of calculating punitive damages. Mattel also contends that the MGA parties' objection

26   based upon Rule 69(a), Fed.R.Civ.P., is without merit because the requested information is

27   independently relevant to many issues in the liability phase of trial, and is not just directed at

28

1    seeking discovery in aid of a judgment or execution.

2    The MGA parties contend that Mattel is not entitled to the sweeping financial data sought

3    in Interrogatory No. 39. The MGA parties are particularly concerned that Mattel will use the

4    information it obtains pursuant to Interrogatory No. 39 to launch abusive third-party discovery for

5    even more private financial information. Further, the MGA parties contend that Mattel has

6    already received substantial financial information from MGA Entertainment, Inc. directly, and

7    has not shown how that information is insufficient. More specifically, the MGA parties point out

8    that Mattel already has audited and unaudited quarterly and annual profit and loss statements;

9    audited and unaudited quarterly and annual statements; annual reports; various MGA financial

10   reports; various financial documents relating to Veronica Marlow; documents showing royalty

11   payments to Bryant; documents showing MGA's sales, returns and costs of good sold for each

12   month, by SKU, since 2001; documents showing MGA's promotional advertising and media

13   expenditures, including MGA's internal allocation of those expenditures by brand and/or product;

14   documents showing MGA's amortization and depreciation of certain capital assets and

15   expenditures; documents showing MGA's monthly general ledger entries aggregated by account,

16   including income and expense accounts, reserves and liabilities; and documents sufficient to

17   explain MGA's various accounts as presently and historically maintained in MGA's books and

18   records, as well as various nomenclature assigned to items, products, brands, sub-brands, and

19   profit centers. MGA's Opposition at pp. 10-11. Further, the MGA parties contend that MGA's

20   witness, Lisa Tonnu, has testified regarding payments to Mr. Bryant.

21   Mattel's motion to compel a further response to Interrogatory No. 39 is denied on the

22   grounds that the financial information sought is cumulative of other discovery already sought and

23   obtained by Mattel, as outlined above by the MGA parties. Mattel has also sought and obtained

24   documents sufficient to identify each of Mr. Larian's bank accounts or financial institutions and

25   other banking relationships since January 1, 1999. See Order Granting in Part and Denying in

26   Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for

27   Sanctions (Document Request No. 207). Further, as Mattel acknowledges, Mattel has sought and

28

1   obtained deposition testimony regarding payments to Mr. Larian, including the account to which

2   such payments were made. See Order Granting in Part and Denying in Part Mattel's Motion to

3   Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6).

4   In light of the financial information discovery Mattel has already obtained, Interrogatory No. 39 is

5   unjustified, taking into consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

6   F. Contention Interrogatories (Nos. 30-38 and 42)

7        Mattel served several contention interrogatories on several additional topics. The

8   remaining contention interrogatories at issue are set forth below.

9        **Interrogatory No. 30**: State all facts that support YOUR contention, if YOU so
10       contend, that, assuming BRYANT assigned rights in any BRATZ INVENTION
     to MATTEL pursuant to the INVENTIONS AGREEMENT, MGA is entitled to
11       priority over and/or has superior rights to MATTEL as to such BRATZ
     INVENTION, and IDENTIFY all PERSONS with knowledge of such facts and
12       all DOCUMENTS that REFER OR RELATE TO such facts.

13       **Interrogatory No. 31**: State all facts that support YOUR contention, if YOU so
     contend, that the INVENTIONS AGREEMENT is not valid and enforceable, and
14       IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
     that REFER OR RELATE TO such facts.

15       **Interrogatory No. 32**: State all facts that support YOUR contention, if YOU so
16       contend, that MATTEL is not or would not be entitled to injunctive relief as
     requested in its COMPLAINT and/or COUNTERCLAIMS if it is not ultimately
17       determined that MATTEL owns one or more BRATZ INVENTIONS, and
     IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
     that REFER OR RELATE TO such facts.

18       **Interrogatory No. 33**: State all facts that support YOUR contention, if YOU so
19       contend, that MATTEL is not entitled to an award of punitive or exemplary
     damages against YOU, and IDENTIFY all PERSONS with knowledge of such
20       facts and all DOCUMENTS that REFER OR RELATE TO such facts.

21       **Interrogatory No. 34**: State all facts that support YOUR contention, if YOU so
     contend, that YOU did not intentionally interfere with the INVENTIONS
22       AGREEMENT when BRYANT purported to TRANSFER and MGA purported
     to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge
23       of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

24       **Interrogatory No. 35**: State all facts that support YOUR contention, if YOU so
25       contend, that YOU did not aid or abet any breach of fiduciary duty or duty of
     loyalty owed by BRYANT to MATTEL when BRYANT performed work or
     services with or for MGA while BRYANT was employed by MATTEL, and
26       IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
     that REFER OR RELATE TO such facts.

27
28       **Interrogatory No. 36**: State all facts that support YOUR contention, if YOU so

contend, that YOU acted with an innocent state of mind or reasonably believed that MATTEL did not own any rights in any BRATZ INVENTION when Bryant purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 37:** State all facts that support YOUR contention, if YOU so contend, that BRYANT did not breach the INVENTIONS AGREEMENT when BRYANT purported to TRANSFER right to BRATZ to MGA, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 38:** State all facts that support YOUR contention, if YOU so contend, that BRYANT did not breach BRYANT's duty of loyalty or fiduciary duties to MATTEL when BRYANT performed work or services with or for MGA while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 42:** State all facts that support YOUR contention, if YOU so contend, that any BRATZ DOLLS are not BASED ON BRATZ DESIGNS created by BRYANT on or before October 19, 2000, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

Mattel contends that each of these interrogatories seeks facts relating to key issues in this case, including MGA's contentions, if any, regarding the priority of Mattel's rights in Bratz vis-à-vis MGA; how Bryant's Inventions Agreement with Mattel, Bryant's assignment of rights to Bratz inventions to MGA, and Bryant's services with or for MGA while employed by Mattel affect who owns the rights to Bratz inventions; Mattel's alleged entitlement to punitive damages and other relief; MGA's purported innocent state of mind; MGA's alleged intentional interference with the Inventions Agreement; MGA's alleged aiding and abetting of Bryant's breach of fiduciary duty and duty of loyalty to Mattel; why the Bratz dolls purportedly are not based on designs Bryant created during his Mattel employment; and why the trade dress MGA contends Mattel infringed is protectible.  Mattel contends that the MGA parties cannot show burden sufficient to outweigh Mattel's need for the information sought.

In addition to the objections discussed in connection with Interrogatory Nos. 27-29, the MGA parties contend that they have given sufficient responses to Interrogatory Nos. 30 and 42.

1   As for Interrogatory Nos. 31-38, the MGA parties contend that the interrogatories improperly

2   assume that Mattel owns Bryant's original idea for Bratz and ask the MGA parties to explain why

3   they should not be punished for developing Bryant's ideas.  Nevertheless, the MGA parties

4   represent that they responded to the interrogatories in good faith by providing the principal facts

5   supporting their contentions, and therefore are in compliance with Rule 33.

6        Mattel's motion to compel a further response to Interrogatory No. 30 is denied.  Like

7   Interrogatory Nos. 27-29, the definition of "Bratz Invention" in No. 30, combined with the

8   request for all facts, the identity of all persons and all supporting documents, render the

9   interrogatory overbroad and unduly burdensome.  In any event, the MGA parties have provided a

10  reasonably sufficient response.  The MGA parties' supplemental response includes their

11  contention that the "Inventions Agreement" did not apply to design patent rights.  Further, the

12  MGA parties contend that (a) the pre-October 21, 2000 drawings of characters that Bryant named

13  Bratz were never reduced to practice; (b) under 35 U.S.C. §171, design patents are available for

14  three-dimensional objections, not drawings or two-dimensional flat art of the sort that Bryant

15  sketched in 1998; (c) Bryant was not a sculptor, and any direct translation of his pre-October 21,

16  2000 two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt would

17  have produced shapes that were different from the actual shape of the final three-dimensional

18  Bratz sculpt used in manufacturing the first generation of Bratz dolls released on the market by

19  MGA in or about June 2001; (d) the final physical shape of the first generation of Bratz dolls,

20  released on the market by MGA in or about June 2001 was "conceived of" and "reduced to

21  practice" by Margaret Leahy, working on behalf of MGA, after October 20, 2000 and before June

22  1, 2001, along with other MGA agents and employees; (e) Bryant's drawings used standard

23  fashion model poses, and thus were not novel or original; and (f) the "dummy" brought by Bryant

24  to his meeting with MGA on September 1, 2000, was merely an assemblage of random pre-

25  existing doll parts that was never intended to, and did not, provide an accurate representation of

26  what became the Bratz sculpt.  Based on the foregoing, the MGA parties contend that, assuming

27  arguendo that both Bryant assigned his 1998 drawings to Mattel and that such drawings were the

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

1  conception of what could have been developed into a tangible item that would have qualified for

2  protection under a design patent, such conception would not have covered the shape of the final

3  Bratz sculpt utilized in the first generation of Bratz dolls released to market in or about June 2001,

4  nor any subsequent three-dimensional Bratz shape.  The MGA parties' supplemental responses to

5  Interrogatory No. 30 also address copyright protection and trademark protection, and identify

6  persons with knowledge and documents relevant to the MGA parties' contentions.

7       Mattel's motion to compel further responses to Interrogatory Nos. 31-37 and 42 is denied.

8  The MGA parties are in substantial compliance with Rule 33, having set forth sufficient facts,

9  identified persons with knowledge, and identified documents to support their contentions.  To

10  require any further information would be unduly burdensome, taking into consideration all of the

11  factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

12       Mattel's motion to compel a further response to Interrogatory No. 38 is granted, however,

13  because the supplemental response does not identify supporting documents.

14  G. Interrogatories About MGA's Searches for Documents (40 and 47)

15       Mattel has propounded two interrogatories to the MGA parties about their searches for

16  documents and storage devices containing evidence of early work on Bratz:

17       **Interrogatory No. 40**:  IDENTIFY each and every STORAGE DEVICE that
   YOU have used for any purpose which contains or contained DIGITAL

18       INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL prior
   to January 1, 2002.

·19

20       **Interrogatory No. 47**:  IDENTIFY each and every SOURCE OF
   INFORMATION from which YOU have COLLECTED DOCUMENTS in THIS
   ACTION that REFER OR RELATE TO BRATZ and that also REFER OR

21       RELATE TO the time period prior to February 28, 2001 (regardless of when such
   DOCUMENT was, in whole or part, created, drafted, generated, sent, received or

22       transmitted).

23  In response to Interrogatory No. 40, the MGA parties described the computer systems that existed

24  worldwide at MGA prior to January 1, 2002.  The MGA parties did not provide any substantive

25  response to No. 47.

26       Mattel contends that the interrogatories are designed to test MGA's productions in this

27  litigation and obtain additional responsive documents and information.  Further, Mattel contends

28

1   that there is legal precedent allowing access to a party's information storage systems where the

2   party is shown to have improperly withheld relevant documents or information. Mattel contends

3   that Interrogatory No. 40 seeks legitimate discovery regarding the identification of MGA's

4   storage devices because Mattel may have a right to access such storage devices. In particular,

5   Mattel contends that it is entitled to, but the MGA parties have failed to provide, an identification

6   of specific storage devices, the individuals who have used them, the persons who currently

7   possess them, and the dates on which they were destroyed or copied, if any. Mattel contends that

8   the information requested in Interrogatory No. 40 is necessary to determine whether MGA has

9   withheld responsive documents and to enable Mattel to obtain such documents.

10          Similarly, Mattel contends that Interrogatory No. 47 seeks relevant information regarding

11   the sources of information – i.e. the media – from which the MGA parties have collected

12   documents relating to Bratz and the period prior to February 28, 2001. Mattel contends that the

13   information it seeks will enable it to determine what sources the MGA parties have examined and

14   have not examined to produce documents in the case.

15          During the meet and confer process, the MGA parties proposed that the parties exchange

16   "source logs" regarding the entirety of their productions in lieu of MGA's responses to Nos. 40

17   and 47. The "source logs" would provide each document's Bates number, the identity of the

18   individual associated with or who maintained the document and the location where the document

19   was found. Mattel contends that the "source log" proposal is unnecessary because Mattel is only

20   seeking information about key early Bratz documents, not every document produced in the case.

21   Mattel also contends that the "source log" proposal is unacceptable because the "source log,"

22   would not reveal sources that contain early Bratz documents that MGA has not produced

23   documents from, or where MGA looked for documents, as well as where MGA failed to look.

24          The MGA parties contend that the interrogatories assume, without any factual support,

25   that the MGA parties are aware of the existence of Bratz documents on their computer systems

26   that relate to the time period prior to January 1, 2002, and have not produced those documents.

27   The MGA parties contend that Mattel's speculation is not a basis to compel further responses to

28

1  Interrogatory Nos. 40 and 47.  The MGA parties emphasize that they have already produced more

2  than 3.7 million pages of documents, whereas Mattel has only produced a few hundred thousand

3  pages of documents.  Furthermore, the MGA parties contend that these interrogatories are

4  cumulative of deposition testimony Mattel has previously sought and obtained regarding the

5  collection of documents produced in this action.  The MGA parties also represent that they have

6  agreed to provide additional testimony on this topic.

7  Mattel's motion to compel further responses to Interrogatory Nos. 40 and 47 is granted.

8  The interrogatories seek relevant information about the identity of each storage device that

9  contains or contained information referring or relating to Bratz prior to January 1, 2002, and other

10  sources of information from which the MGA parties collected documents in this action that refer

11  or relate to Bratz and the time period prior to February 28, 2001.  The "source log" information is

12  not a reasonable substitute for the information requested in the interrogatories because it would

13  not necessarily identify all storage devices used by the MGA parties during the relevant period.

14  The interrogatories are narrowly tailored to a key subject, namely early Bratz documents and

15  other information.  The MGA parties have failed to establish that the interrogatories are unduly

16  burdensome.  Nor are the interrogatories cumulative of other discovery propounded by Mattel.

17  Interrogatory Nos. 40 and 47 have the potential of imparting more detailed information than a

18  witness might be able to recall in the course of a deposition.  Furthermore, the information sought

19  in Interrogatory Nos. 40 and 47 will enable Mattel to question MGA's witnesses more effectively.

20  H. Interrogatory Regarding MGA's Substitution of Counsel (No. 46)

21  Interrogatory No. 46 seeks facts regarding MGA's substitution of counsel as follows:

22  **Interrogatory No. 46:**  Without disclosing the content of communications which are protected by the attorney-client privilege, state fully and in detail all facts

23  which REFER OR RELATE TO any dispute regarding THIS ACTION between, on the one hand, MGA, LARIAN, BRYANT and/or MACHADO and, on the

24  other hand, O'MELVENY and/or CHRISTENSEN, including but not limited to any and all disputes which were or have been asserted as a basis for, or which

25  underlie, contributed to or were a factor in, the withdrawal, termination and/or substitution of O'MELVENY and/or CHRISTENSEN as counsel of record in this

26  ACTION, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

27

28

1   Mattel contends that the interrogatory is limited to facts, and does not require the disclosure of

2   information protected by either the attorney-client privilege or the work product doctrine.

3   Further, Mattel contends that the requested facts are relevant and discoverable.  Mattel reasons

4   that O'Melveny cited to California Rule of Professional Conduct 3-700(c) as the basis for its

5   motion to withdraw, and that Rule 3-700(c) sets forth several grounds for withdrawal that could

6   be relevant to the case.  For example, Mattel contends that O'Melveny may have withdrawn

7   because MGA sought to provide false testimony, or was seeking "to pursue an illegal course of

8   conduct" or "insist[ed] that counsel pursue a course of conduct that is illegal or prohibited under

9   the State Bar Act."  Mattel's Motion at p. 38.

10          The MGA parties contend that Interrogatory No. 46 is predicated upon an imagined

11   "dispute" with former counsel, and moreover, that the information sought is protected by the

12   work product doctrine and/or attorney-client privilege.  The MGA parties reason that even if

13   Mattel is correct that there was some sort of dispute, either (1) the dispute does not relate to the

14   claims and defenses in this action, and therefore the requested information is irrelevant and

15   outside the proper scope of discovery, or (2) the dispute does relate to the claims or defenses in

16   this action, such that revelation of the substance of the dispute would necessarily reveal the

17   thought processes of trial counsel and the communication of those thought processes to the MGA

18   parties.

19          Mattel's motion to compel is denied as to Request No. 46.  The interrogatory is not

20   tethered to any particular claim or defense.  Nor is the interrogatory directed at uncovering the

21   factual events giving rise to any claim or defense.  Instead, the interrogatory assumes that there

22   was a "dispute" with former counsel involving false testimony, illegal conduct, or attorney

23   misconduct; that this "dispute" led to the withdrawal, termination and/or substitution of counsel;

24   and that this "dispute" potentially relates to a claim or defense in this suit.  There is no evidence,

25   however, to substantiate such a series of assumptions.  Although the publicly available

26   information suggests that there was a breakdown of the attorney-client relationship, this evidence,

27   without more, is insufficient to justify Interrogatory No. 46 because the burden or expense of the

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

21

1  proposed discovery outweighs its likely benefit under Rule 26(b)(2)(C), Fed.R.Civ.P.

2  Furthermore, the interrogatory is grossly overbroad in seeking information about "any and all

3  disputes" with former counsel, regardless of whether such disputes relate to a claim or defense in

4  the case.

5      The interrogatory is also objectionable because it intrudes upon MGA's relationship with

6  former counsel, and thus necessarily intrudes upon the protections afforded by the attorney-client

7  privilege and work product doctrine.  Mattel's rank speculation that there were attorney-client

8  discussions of wrongdoing is insufficient to vitiate the attorney-client privilege.  See e.g. In re

9  Napster, Inc. Copyright Litig., 479 F.3d 1078, 1090 (9th Cir. 2007).  Nor have the MGA parties

10  waived the attorney-client privilege.  Although the MGA parties discussed the reasons for their

11  substitution of counsel with the press, there has been no showing that the information they

12  disclosed revealed the substance of an attorney-client privileged communication.

### V. CONCLUSION

14      For the reasons set forth above, it is hereby ordered as follows:

15      1.  Mattel's motion to compel is granted as to Interrogatory Nos. 38, 40, 41 (as narrowed),

16  43-44 and 47.  The MGA parties shall serve supplemental responses to said interrogatories no

17  later than February 26, 2008.

18      2.  Mattel's motion to compel is denied as to Interrogatory Nos. 27-37, 39, 42, 46 and 48-

19  50.

20  Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

21  Mattel shall file this Order with the Clerk of Court forthwith.

23  Dated: February 15, 2008

24                     HON. EDWARD A. INFANTE (Ret.)
                           Discovery Master

### PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on February 15, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL RESPONSES TO INTERROGATORY NOS. 27-44 AND 46-50 BY THE MGA PARTIES in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on February 15, 2008, at San Francisco, California.

Sandra Chan