1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5      (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California  90017-2543
    Telephone:   (213) 443-3000
7   Facsimile:   (213) 443-3100

8   Attorneys for Mattel, Inc.

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

12  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

13            Plaintiff,                 Consolidated with
                                         Case No. CV 04-09059
14       vs.                             Case No. CV 05-02727

15  MATTEL, INC., a Delaware             **DISCOVERY MATTER**
    corporation,
16                                       **[To Be Heard by Discovery Master
            Defendant.                   Hon. Edward Infante (Ret.) Pursuant to
17                                       The Court's Order of December 6, 2006]**

18  AND CONSOLIDATED ACTIONS             MATTEL, INC.'S REPLY
                                         MEMORANDUM OF POINTS AND
19                                       AUTHORITIES IN SUPPORT OF
                                         MOTION TO COMPEL PRODUCTION
20                                       OF DOCUMENTS BY MGA IN
                                         RESPONSE TO MATTEL'S FIFTH SET
21                                       OF REQUESTS FOR DOCUMENTS AND
                                         THINGS
22
23                                       Date:   TBD
                                         Time:   TBD
24                                       Place:  TBD

25                                       **Phase I**
                                         Discovery Cut-off:      January 28, 2008
26                                       Pre-trial Conference:   May 5, 2008
                                         Trial Date:             May 27, 2008
27

28                    **[PUBLIC REDACTED]**

07209/2387110.5

MATTEL'S REPLY ISO MOTION TO COMPEL FIFTH SET OF RFPS

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT.................................................................................................... 2

I.   MATTEL IS PREJUDICED BY MGA'S REFUSAL TO PRODUCE ANY CORPORATE GOVERNANCE DOCUMENTS.................................. 2

II.  JOINT AND SEVERAL LIABILITY MAKES EACH REQUEST FOR PRODUCTION AT ISSUE RELEVANT AND DISCOVERABLE. ................................................................................ 3

    A.   The Financial Relationship Between MGA and Isaac Larian Is Relevant and Discoverable. ................................................... 4

    B.   Information Concerning MGA's Ownership and Governance Is Relevant and Discoverable. .................................................. 7

III. MGA HAS NOT MET ITS BURDEN TO PROVE THAT ITS OBJECTIONS WERE MERITORIOUS. .................................................. 8

IV.  MGA SHOULD IDENTIFY THE RESPONSIVE DOCUMENTS IT CLAIMS TO HAVE PRODUCED........................................................ 10

V.   THE DISCOVERY MASTER ORDERED THE PARTIES TO MEET AND CONFER ON ALL PENDING MOTIONS. ..................................... 11

CONCLUSION............................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

## Cases

A. Farber & Partners, Inc. v. Garber,
  234 F.R.D. 186 (C.D. Cal. 2006) .................................................................. 8, 9

Glass v. R. Beer,
  No. 01:04-cv-05466-OWW-SMS PC, 2007 U.S. Dist. LEXIS 25920
  (E.D. Cal. Mar. 22, 2007) .................................................................. 10

McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,
  894 F.2d 1482 (5th Cir. 1990) .................................................................. 9

Oakes v. Halvorsen Marine Ltd.,
  179 F.R.D. 281 (C.D. Cal. 1998) .................................................................. 8

Paulsen v. Case Corp.,
  168 F.R.D. 285 (C.D. Cal. 1996) .................................................................. 8

Pepsi-Cola Metropolitan Bottling Co., v. Checkers, Inc.,
  754 F.2d 10 (1st Cir. 1985) .................................................................. 3, 4, 7

S.E.C. v. First Pacific Bancorp
  142 F.3d 1186 (9th Cir. 1998) .................................................................. 3

Soto v. City of Concord,
  162 F.R.D. 603 (N.D. Cal. 1995) .................................................................. 10

Surfvivor Media, Inc. v. Survivor Products,
  46 F.3d 625 (9th Cir. 2005) .................................................................. 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

The theme of MGA's defense is writ large in its opposition: resist all discovery on any basis. MGA thus objects to producing even its articles of incorporation and by-laws on the basis that doing so would be "unduly burdensome" and because, in its view, the requested documents are "largely irrelevant."

MGA ignores that the ownership and governance structure of MGA, as well as extraordinary payments to owners and directors, is relevant to proving Isaac Larian's influence over and control of MGA's corporate decisions. The failure to abide by corporate rules is a well-established reason to pierce the corporate veil. Mattel's need for such discovery is acute because the evidence suggests that Isaac Larian is depleting MGA's assets to the point that MGA may not have sufficient value on its own to satisfy a judgment in favor of Mattel. Evidence showing

**REDACTED**

y, raises that specter.

Information concerning Isaac Larian's financial interrelationship with MGA—including the extent to which he not only controls MGA but also intermingles his personal finances with those of MGA—is also critical evidence that Mattel needs to prove joint and several liability. MGA does not dispute that evidence of joint and several liability is relevant in this action.

Although MGA has attempted to drown Mattel with more than two million pages of documents in the last three months (after obstructing discovery for years and incurring multiple discovery sanctions), MGA still has not produced some of the most obviously relevant financial documents. For example, MGA has not produced its year 2000 general ledger, which would show MGA's expenditures on

1

1   Bratz that year and the timing of such expenditures.  The Discovery Master should

2   not reward MGA's persistent obstruction on financial and damages discovery.

3           MGA's principal defense to Mattel's motion--that notwithstanding

4   Mattel's request to meet and confer, the parties did not do so--is moot.  On

5   February 11, this Court ordered counsel for the parties to conduct an "in-person

6   meet and confer with respect to all pending motions" and, after doing so "in depth,"

7   to "report back . . . by letter."  Thus, MGA will not only have had an opportunity to

8   meet and confer before the motion is heard, but will actually have done so.

9           That MGA even raises its failure to meet and confer as a defense is

10  telling.  When the shoe was on the other foot, Mattel's conduct was quite different.

11  MGA attorney Marcus Mumford requested to meet and confer concerning Mattel

12  documents referring to MGA on or before January 28, 2008.  Mattel attorney

13  Timothy Alger proposed a time to do so, but Mr. Mumford was unavailable.  MGA

14  filed its motion anyway.  Nonetheless, Mattel conducted a post-filing meet and

15  confer on January 31.

16

17                                       **Argument**

18

19  I.      **MATTEL IS PREJUDICED BY MGA'S REFUSAL TO PRODUCE**

20          **ANY CORPORATE GOVERNANCE DOCUMENTS.**

21          MGA has buried Mattel with 2,786,642 pages of documents since

22  October 2007, including over 490,000 pages in 2008 alone.[1]  The sheer volume of

23  MGA's eleventh-hour document productions prevented Mattel from reviewing all of

24  MGA's latest and long-delayed productions with enough time to meet and confer

25  five days or more before the January 28, 2008 fact discovery cut-off for Phase I of

26  this action.  Mattel's document review efforts have now revealed that MGA still has

27  _____

28     [1]   Declaration of Juan Pablo Albán filed concurrently ("Albán Dec.") ¶ 2.

1   not produced such obviously relevant documents as its 2000 general ledger.[2]  As

2   explained in Mattel's motion and in more detail below, the information Mattel seeks

3   is critical to issues of damages and joint and several liability.

4

5   **II.  JOINT AND SEVERAL LIABILITY MAKES EACH REQUEST FOR**

6   **PRODUCTION AT ISSUE RELEVANT AND DISCOVERABLE.**

7           MGA does not dispute that facts going to joint and several liability and

8   fraudulent conveyance are relevant.  MGA instead makes the conclusory argument

9   that the discovery Mattel seeks does not go to those issues.[3]  Not so.

10           In S.E.C. v. First Pacific Bancorp, the Ninth Circuit affirmed a finding

11   of joint liability between an individual and a corporate defendant based upon the

12   individual's "close relationship" with corporate codefendants.  142 F.3d 1186,

13   1191-92 (9th Cir. 1998).  A "close relationship" was found because the individual

14   (i) played the principal role in a fraudulent diversion of funds; (ii) was the chairman

15   of the board, CEO and majority shareholder; (iii) received a personal financial

16   benefit from the fraudulent diversion of funds; and (iv) was "milking the asset" at

17   issue by paying himself hundreds of thousands of dollars in salaries, commissions,

18   and consulting, management and legal fees, payments which constituted excessive

19   compensation amounting to two or three times what a CEO of a comparable, well-

20   managed institution would receive.  Id.  Similarly, in Pepsi-Cola Metropolitan

21   Bottling Co., v. Checkers, Inc., 754 F.2d 10, 14-17 (1st Cir. 1985), the Court found

22   evidence of (i) individuals' use of corporate funds for personal transactions; (ii) the

23   failure to observe corporate formalities; (iii) the siphoning of funds; and (iv) the

24   failure to maintain adequate records relevant in upholding joint and several liability

25

26

27   [2]   Id. ¶ 3.

28   [3]   Opp. at 8:3-13.

3

MATTEL'S REPLY ISO MOTION TO COMPEL 5TH SET OF RFPS

1    between individual and corporate defendants.  As shown below, those factors are

2    present here.

3

4    **A.     The Financial Relationship Between MGA and Isaac Larian Is**

5    **Relevant and Discoverable.**

6            First Pacific Bancorp and Pepsi-Cola demonstrate the relevance of

7    Mattel's Fifth Set of Document Requests.  Mattel seeks documents showing

8    payments from MGA to Isaac Larian and the intermingling of the corporation's and

9    Mr. Larian's finances.[4]

10

**REDACTED**

11           . For example, in December 2000 Mr. Larian purchased his

12   brother Farhad's 45 percent interest in MGA for $8.775 million,[5] pursuant to an

13   agreement that Farhad later claimed was fraudulent because Mr. Larian concealed

14   the conception and development of Bratz in 2000 to keep the value of the company

15   artificially low.[6]  Although the agreement required that *Larian* make high interest

16   and principal payments on an amortized basis over a period of four years,[7]

17   }

18

19

**REDACTED**

20                                                                                              [9]

21

22   _____

23   [4]  Jih Dec. in Support of Mot., Exh. 1 (Mattel's Fifth Set of Requests for
     Production), Request Nos. 4-7, 12-22.

24   [5]  Albán Dec., Exh. 1 at FL 6494 (Dec. 4, 2000 Stock Purchase Agr. attached to
     Verified Complaint in Larian v. Larian, Los Angeles Sup. Ct. Case no. BC301371).

25   [6]  Id. at FL 6468-71, ¶¶ 13-23.

26   [7]  Id. at FL 6506-07 (Amortization Sched. attached to Larian v. Larian
     Complaint).

27   [8]  Id., Exh. 2 at MGA 3787372 – 75, rows 8-20 (MGA Account Records).

28   [9]  Compare id., Exh. 1 at FL 6506-07 with id., Exh. 2 at MGA 3787373.

1   A separate consulting agreement between MGA and Farhad Larian called for

2   payments of $7,500 per month.[10]

3        It is not true then, as Mr. Larian has declared under oath, that "all the

4   money" MGA earns is reinvested in the company.[11]

5   **REDACTED**        Mattel is

6   entitled to discover the full extent of this interrelationship between the corporation

7   and its CEO and majority shareholder.  That MGA or third parties have produced

8   *some* information on this issue does not excuse MGA from providing *all* relevant

9   evidence that will strengthen the case for joint and several liability.  Further, the

10   relevant time period for this information dates to the formation of the corporation.

11   Documents prior to 2000 would confirm either that Mr. Larian's financial

12   relationship with MGA has always been intertwined, or that such practices started

13   only after Bratz.

14        The evidence also reflects evidence that Mr. Larian has improperly

15   siphoned MGA's assets since this litigation commenced.  To defuse the issue, MGA

16   states that "[t]he only logical and reasonable interpretation of the evidence of

17   Mr. Larian's increased compensation is that, as is often the case with businesses,

18   Mr. Larian's compensation increased as the company's revenue base increased."[12]

19

20   **REDACTED**

21

22

23   ───────────────────────

24   [10]   Id., Exh. 1 at FL 6515 - 6516. (Consulting Agr. attached to <u>Larian v. Larian</u> Complaint).

25   [11]   Mot. at 6.

26   [12]   Opp. at 11:13-16.

27   [13]   After the Stock Sale Agreement between Isaac and Farhad Larian, it appears that Isaac Larian became a 90% shareholder of MGA Entertainment, Inc.  <u>See</u> Albán

28   Dec., Exh. 1 at FL 6467, ¶¶ 8-9 (<u>Larian v. Larian</u> Complaint).

1

2

3

4

5

6

7

8

9

10

11

12

**REDACTED**

13

14

15

16

17

18

19

20

---

21   [14]   Albán Dec., Exh. 3 at MGA 0863863; 0868711 (MGA's 2001-2006 Audited

22   Financial Statements).

23   [15]   Id. at MGA 0863865; 0868713.

[16]   Id. at MGA 0863863; MGA 0863878.

24   [17]   Id. at MGA 0863880.

[18]   Id. at MGA 0868697.

25   [19]   Id. at MGA 0868699.

26   [20]   Id., Exh. 4 (Isaac Larian's Total Income per Tax Returns, 1999-2006).

Notably, Mattel has no idea whether the information on this sheet is correct because

27   Larian refuses to produce his tax returns.

28   [21]   Id.

1  documents it has produced only begin to uncover the extent of Mr. Larian's and

2  MGA's financial interrelationship.  Mattel should discover the full universe of

3  evidence to prove its case on damages and joint and several liability.

4

5  **B.     Information Concerning MGA's Ownership and Governance Is**

6  **Relevant and Discoverable.**

7  Mattel's requests seeking information concerning MGA's corporate

8  governance also go to joint and several liability.[22]  In <u>Pepsi Cola</u>, the First Circuit

9  cited a failure to observe corporate formalities and inadequate record keeping as

10  justifying a finding of joint and several liability.  754 F.2d at 16.  If MGA's

11  governing documents prohibit the type of transactions Isaac Larian engaged in, such

12  as using the corporate till to pay a personal debt to his brother, the evidence

13  supporting joint and several liability will be even stronger.  That the governance

14  documents were created before 1999 is irrelevant to whether Isaac Larian has

15  complied with them.

16  Finally, Mattel's Requests seeking information covering the ownership

17  and board of director structure of MGA, as well as extraordinary payments to

18  shareholders and board members, also go to joint and several liability.[23]  Mattel

19  needs such documents not only to prove the extent to which Mr. Larian deviated

20  from corporate purpose and formalities, but also to show his undue pecuniary

21  influence over the other owners and directors.  Once again, the limited information

22  Mattel received from Farhad Larian points to the importance of the board minutes

23  and rationale for corporate decisions to prove Isaac Larian's "close relationship"

24  with MGA.

25

26

27  [22]  Jih Dec, Exh. 1 at Request Nos. 1-3, 8-11 and 23.

28  [23]  <u>Id</u>. at Request Nos. 23-47.

1

2

3

4

5

6

7

8

9

10

11

12

# REDACTED

13 **III.  MGA HAS NOT MET ITS BURDEN TO PROVE THAT ITS**

14 **OBJECTIONS WERE MERITORIOUS.**

15        Once Mattel establishes the relevance and discoverability of the

16 documents it seeks, the burden shifts to MGA to prove the merits of its objections.

17 Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D. Cal. 1998); A. Farber &

18 Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006).

19        "As an initial matter, general or boilerplate objections such as 'overly

20 burdensome and harassing' are improper—especially when a party fails to submit

21 any evidentiary declaration supporting such objections." A. Farber, 234 F.R.D. at

22 188, citing Paulsen v. Case Corp., 168 F.R.D. 285, 289 (C.D. Cal. 1996).  As the

23 Fifth Circuit has explained, objections that document requests are overly broad,

24 burdensome, oppressive, and irrelevant are insufficient to meet the objecting party's

25

26

27

28

---

[24]  Albán Dec., Exh. 5 at 2-3 (Apr. 6, 2004 Ltr. from Howarth to Feldman).

[25]  Id., Exh. 6 at 1 (Jul. 5, 2007 Ltr. from Glaser to Quinn).

[26]  Id., Exh. 7 at 3.

8

1   burden to explain why the challenged discovery requests are objectionable. *See*

2   McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th

3   Cir. 1990). Similarly, boilerplate relevancy objections, without setting forth any

4   explanation or argument why the requested documents are not relevant, are

5   improper. *See* Surfvivor Media, Inc. v. Survivor Products, 46 F.3d 625, 635 (9th

6   Cir. 2005). Thus, "bald, boilerplate assertion[s] that [a] plaintiff's document

7   requests are overly burdensome and harassing merely because they seek information

8   'relating to' is without merit." A. Farber, 234 F.R.D. at 188.

9         Here, MGA's burden objections are clearly improper. MGA offers no

10  evidentiary declaration to support its burden claims.[27] It claims that it made

11  "specific objections tailored to the shortcomings of its request,"[28] but cutting and

12  pasting the same boilerplate objections to request after request does not constitute

13  specificity. To show the purported "burden" of Mattel's requests, MGA focuses on

14  the request that it produce its Articles of Incorporation. MGA argues that because

15  Mattel's request defined "MGA" broadly, responding to the request would require

16  that MGA produce the articles of incorporation of "a laundry list of other entities."[29]

17  However, MGA offers no evidence of the number of entities whose articles of

18  incorporation would have to be produced. More importantly, MGA does not explain

19  why it cannot produce the articles of incorporation of the parties to the litigation.

20  MGA's insistence that it is "too burdensome" to produce even MGA

21  Entertainment, Inc.'s, MGA Entertainment (HK) Limited's, and MGAE de Mexico

22  S.R.L. de C.V.'s Articles of Incorporation is indicative of the gamesmanship that it

23  will engage in to avoid producing relevant documents as long as it possibly can.

24

25

26                        

27  [27]  Opp. at 12.
    [28]  Opp. at 3:23-24.

28  [29]  Id.

1    Finally, MGA improperly cites Northern and Eastern District cases to

2 suggest that it is Mattel's burden to disprove the merit of MGA's boilerplate

3 objections.  To the contrary, the cases say only that Mattel has to show relevance,

4 which it has done.  <u>Glass v. R. Beer</u>, No. 01:04-cv-05466-OWW-SMS PC,

5 2007 U.S. Dist. LEXIS 25920, at *20-28 (E.D. Cal. Mar. 22, 2007); <u>Soto v. City of</u>

6 <u>Concord</u>, 162 F.R.D. 603, 610 (N.D. Cal. 1995).  The burden rule MGA tries to

7 create makes no sense.  For example, only the party withholding discovery can

8 know the extent of the effort involved in complying with a particular document

9 request.

10    The prejudice to Mattel of allowing all of MGA's boilerplate and

11 unsubstantiated objections to stand is evident in the evidence Mattel offers in its

12 Motion and this Reply.  If Mattel cannot prove its case for joint and several liability

13 and MGA in the end does not have sufficient assets left to cover the damages it

14 proves, Mattel's prejudice from MGA's discovery obstruction could be the inability

15 to collect a judgment for hundreds of millions of dollars.

16

17 **IV.    MGA SHOULD IDENTIFY THE RESPONSIVE DOCUMENTS IT**

18 **         CLAIMS TO HAVE PRODUCED.**

19    MGA attempts to justify its refusal to produce any documents in

20 response to Mattel's Fifth Set of Requests for Production on the basis that it has

21 already produced similar documents.[30]  But MGA never suggests that it has

22 produced *all* documents responsive to Mattel's Fifth Set of Requests nor that any of

23 its document searches have specifically encompassed those Requests.  To the

24 contrary, the deficiency of MGA's production is manifest.  For example, MGA

25 represents that it produced general ledgers to Mattel after 1999, but it notably has

26

27

   _____

28    [30]  Opp. at 12-14.

1 | *not* produced its year 2000 general ledger[31]—arguably the most critical year in this

2 | litigation. Ledgers from prior years are also relevant to damages, as they would

3 | show the full extent of Isaac Larian's personal use of MGA's accounts.

4 | Even though MGA has now engaged in a boxcar production, burying

5 | Mattel with 2,786,642 pages of documents since October 2007, including over

6 | 490,000 pages in 2008 alone,[32] critical documents have been withheld. For

7 | example, in addition to the 2000 general ledger, neither MGA nor Larian have

8 | produced Mr. Larian's checking or money market account statements, cancelled

9 | checks from Mr. Larian's personal accounts, or MGA check registries for 2000 and

10 | 2001, or any check registries from after March 2003.[33] To the extent MGA claims

11 | to have already produced these and other responsive documents, the Discovery

12 | Master should compel MGA to identify the Bates numbers for such documents.

13 |

14 | **V.**     **THE DISCOVERY MASTER ORDERED THE PARTIES TO MEET**

15 |         **AND CONFER ON ALL PENDING MOTIONS.**

16 | MGA's Opposition focuses primarily on one technical reason to deny

17 | Mattel's motion—that the parties did not meet and confer after Mattel sent an e-mail

18 | message requesting the conference. MGA's argument is moot. On February 8,

19 | 2008, the Discovery Master ordered the parties to conduct an in-person meet and

20 | confer with respect to all pending motions.[34] The Discovery Master noted that "a lot

21 | of these motions got filed on the very last day of discovery in January" and "[t]here

22 | are a number of things that are moving targets because, as we saw this morning,

23 | Judge Larson has stayed the discovery as to Phase II. . . . "[35] Pursuant to this Order,

24 |

---

25 | [31]   Albán Dec. ¶ 3.

26 | [32]   Id. ¶ 2.

    [33]   Id. ¶ 3.

27 | [34]   Id., Exh. 7 at 56:3-7 (Tr. of February 11, 2008 Hearing).

28 | [35]   Id. at 56:8-12.

11

MATTEL'S REPLY ISO MOTION TO COMPEL 5TH SET OF RFPS

1   MGA and Mattel will have had a full meet and confer on this motion before the

2   Discovery Master hears it.

3           That MGA even raises its failure to meet and confer as a defense is

4   indicative of the lack of substance in its Opposition.  On January 28, 2008, before

5   the parties were able to meet and confer, MGA moved to compel Mattel to search

6   for and produce documents with the term "NHB" in them.[36]  Mattel offered to and

7   did conduct a post-filing conference on January 31, 2008.[37]

8

9                                    **Conclusion**

10          For the foregoing reasons and as set forth in Mattel's Motion, Mattel

11  respectfully requests that the Discovery Master grant Mattel's motion to compel

12  production of documents responsive to its Fifth Set of Requests for Production in its

13  entirety.

14

15  DATED:  February 15, 2008           QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
16

17                                      By _Jon P. Corey/jpc_
18                                         Jon D. Corey
                                           Attorneys for Mattel, Inc.
19

20

21

22

23

24

25

26  _____

27  [36]   Albán Dec., Exh. 8 (Jan. 25, 2008 – Jan. 30, 2008 email exchange between
        T. Alger and M. Mumford).
28  [37]   Id.

07209/2387110.5

                                        12