QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

**DISCOVERY MATTER**

**[To Be Heard by Discovery Master Hon. Edward Infante (Ret.) Pursuant to the Court's Order of December 6, 2006]**

MATTEL, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS BY MGA ENTERTAINMENT, INC. AND FOR AWARD OF MONETARY SANCTIONS

Date: TBA
Time: TBA
Place: TBA

**Phase 1**
Discovery Cut-off: January 28, 2008
Pre-Trial Conference: May 5, 2008
Trial Date: May 27, 2008

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. THE COURT SHOULD COMPEL MGA TO PRODUCE DOCUMENTS AND THINGS RESPONSIVE TO MATTEL'S THIRD SET OF REQUESTS FOR DOCUMENT AND THINGS .......... 2

A. Documents and Things Related to Other Bratz-Related Lawsuits and Other Dolls or Products That Allegedly Infringe Bratz .......... 2

B. Documents Relating to the Use of the Term "Jade" .......... 5

C. Documents and Things Related to Sandra Bilotto, the Sculptor of "Prayer Angels" .......... 6

D. MGA's Communications With and Payments to Paula Garcia .......... 7

E. Documents Relating to the Development of Scooter Samantha .......... 8

F. Documents Related to Scot Reyes and the Development of Space Babes .......... 9

G. Personnel and Vendor Files .......... 11

II. MGA SHOULD BE SANCTIONED .......... 12

CONCLUSION .......... 13

**Preliminary Statement**

MGA bases its Opposition on a mischaracterization of its responses to Mattel's Third Set of Requests for Documents and Things to MGA. MGA contends that Mattel's motion is not justified because "MGA has already produced tens of thousands of pages of documents responsive to the Third Set . . . and agreed to search for and produced additional responsive documents." (Opposition ("Opp.") at 1.) MGA ignores that it objected and refused to produce any documents at all in response to seventy-four of Mattel's eighty-eight requests. MGA's convenient assertions that it "has already produced" responsive documents are essentially meaningless. Tellingly, MGA never offered to amend its responses to these seventy-four requests to indicate that it would produce, or has produced, responsive documents. Furthermore, MGA's supplemental responses, with limited agreements to produce documents in response to the remaining fourteen requests, exclude entire categories of relevant responsive documents.

As set forth in detail in Mattel's motion, the Third Requests are reasonably tailored to seek documents and things directly relevant to key issues in this case, including the conception and development of Bratz and "Prayer Angels," MGA's purported rights in Bratz, and MGA's pattern of targeting Mattel designers and employees and inducing them to steal Mattel's trade secrets and divulge them to MGA. These are issues raised specifically by *both* Mattel and MGA's pleadings in this litigation, and indeed discovery on them has become even more crucially relevant in light of MGA's recently served expert reports. Mattel is not attempting to engage in a "fishing expedition."

Recognizing that the information sought in the Third Requests is obviously relevant, MGA also attempts to avoid producing responsive documents to the extent they purportedly relate to Phase 2 issues (as expansively interpreted by MGA). On February 4, 2008, after Mattel filed this motion, the Court stayed purely

Phase 2 discovery. MGA should have produced responsive documents months ago when it "responded" to the Third Requests. MGA should not now be permitted to avoid producing relevant documents that purportedly relate to Phase 2 issues (as it inconsistently defines them) – when the majority of the Third Requests seek information that is indisputably relevant to Phase 1 issues, including the conception, creation and development of Bratz and, again, are raised squarely by MGA's own Phase 1 expert reports.

The Discovery Master should overrule MGA's objections and should compel MGA to produce all documents and things responsive to Mattel's Third Requests at this time.

## Argument

### I. THE COURT SHOULD COMPEL MGA TO PRODUCE DOCUMENTS AND THINGS RESPONSIVE TO MATTEL'S THIRD SET OF REQUESTS FOR DOCUMENT AND THINGS.

#### A. Documents and Things Related to Other Bratz-Related Lawsuits and Other Dolls or Products That Allegedly Infringe Bratz

Request Nos. 1 through 30 seek documents and things related to: (1) other Bratz-related lawsuits to which MGA is or was a party ("Bratz Lawsuits"), (2) MGA's descriptions of its purported intellectual property rights in Bratz, and (3) claims by MGA that other dolls or products infringe Bratz.

Such documents are relevant on myriad issues that MGA itself has interjected into this case. MGA has contended that (1) Bryant's Bratz drawings are not original and otherwise unprotectible by copyright; and (2) the Bratz dolls at issue in this lawsuit are *not* based on or substantially similar to Bryant's Bratz

drawings.[1] In fact, these assertions have been made repeatedly in MGA's recent expert reports.[2] The apparent reason for MGA's arguments on this score is to assert at trial that even if Mattel owns the Bratz doll design drawings, the dolls do not infringe upon those drawings.

Based even on what Mattel has obtained so far from other Bratz Lawsuits to date, MGA has a track record of saying the opposite. Thus, for example, in one prior infringement suit that MGA brought, it asserted that the Bryant drawings were indeed protectible, that the Bratz dolls were based on the drawings and that a third party's dolls were substantially similar to those drawings.[3] All of this is in direct contradiction to MGA's recent positions in this case, and the Court and the jury are entitled to compare other dolls that MGA has previously claimed are substantially similar to Bratz in deciding whether the Bratz drawings are substantially similar to the Bratz dolls. Mattel is plainly entitled to know what other instances MGA has made such inconsistent statements and representations to Courts.

MGA focuses almost exclusively on issues related to the Bratz Lawsuits in arguing that it should not be compelled to produce documents responsive to Request Nos. 1 through 30. For example, MGA claims that the Bratz

---

[1] See, e.g., MGA Entertainment, Inc.'s Supplemental Responses to Mattel, Inc.'s Amended Fourth Set of Interrogatories, dated November 30, 2007 (Kidman Dec. Ex. 10), at 7, 9-12 (MGA's Supplemental Response to Interrogatory No. 42).

[2] See, e.g., Expert Report of Peter S. Menell, dated February 11, 2008 ("Menell Report") (Exhibit 4 to the February 15, 2008 Declaration of Jon D. Corey ("Corey Dec.")); Expert Report of Mary Bergstein, dated February 11, 2008 (Corey Dec. Ex. 5); Expert Report of Debora Middleton, dated February 11, 2008 (Corey Dec. Ex. 6); Expert Report of Paul K. Meyer, dated February 11, 2008 (Corey Dec. Ex. 7), at 16.

[3] See Carter Bryant drawings from Cityworld litigation (Corey Dec. Ex. 10).

Lawsuits identified in Mattel's Third Requests are "unrelated to this litigation." Opp. at 7. But MGA's vague protests of relatedness are beside the point. MGA previously admitted that issues relating to the origins of Bratz have been previously litigated in third-party lawsuits.[4] And, even apart from its admission, MGA does not dispute that its prior statements in other Bratz-related lawsuits constitute judicial admissions, or that MGA may be collaterally or equitably estopped from making contentions in this lawsuit contrary to those admissions. Indeed, MGA itself has insisted that Mattel produce its litigation documents relating to MY SCENE.[5] Nor can it be reasonably disputed that MGA's statements in other litigation are directly relevant to rebutting and impeaching MGA's experts' claims on these issues in this case. The documents should be produced.

MGA argues it should not be compelled to produce documents in response to Request Nos. 1 through 30 because it already "produced thousands of documents pertaining to its rights to Bratz and its prior Bratz-related litigations." Opp. at 9-10. That MGA now claims to have produced some unidentified responsive documents stands in stark contrast to the repeated refusals to produce in its Opposition and its responses to these Requests. Indeed, MGA never agreed to produce any documents in its responses to these requests, and certainly did not respond that it had already produced all, or even some, responsive documents. To the extent MGA has already produced responsive documents, it need not re-produce

---

[4] See MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to Compel Production of Documents and Interrogatory Answers, dated February 20, 2007 (Kidman Dec. Ex. 8), at 25.

[5] See MGA's Sixth Set of Requests for the Production of Documents and Things in Case No. 05-2727, dated November 16, 2007 (Kidman Dec. Ex. 6), at 10-11 (Request Nos. 568, 569); MGA's Eighth Set of Requests for the Production of Documents and Things in Case No. 05-2727, dated December 28, 2007 (Corey Dec. Ex. 11), at 11-12 (Request Nos. 781-784).

them. MGA also should not be permitted to avoid being compelled by simply asserting in opposition to Mattel's motion that some responsive documents have been produced. It should ordered to produce any further responsive documents or represent in its actual responses that it has already done so.

Finally, MGA claims that it would be an "extreme burden" for MGA to review documents from the Bratz Lawsuits "for responsiveness and privilege." Opp. at 10. Because it necessarily suggests that MGA has not even searched for documents on alleged burden grounds, this statement is inconsistent with its suggestions elsewhere that it already has produced the documents sought. In any event, MGA's argument is meritless. The Requests at issue seek categories of documents from the Bratz Lawsuits that obviously would <u>not</u> need to be reviewed for privilege such as pleadings, transcripts and expert reports. These are all documents that are readily available to MGA or its counsel and not even arguably privileged. Furthermore, MGA does not establish that the number of suits involving Bratz are so numerous or the files associated with them are so voluminous that reviewing and producing them would be unduly burdensome, especially in light of their direct relevance to the factual claims and positions MGA now asserts in this case.

As set forth in Mattel's motion, Request Nos. 1 through 30 seek documents and things that are directly relevant to this lawsuit, and MGA should be compelled to produce responsive documents and things.

**B. <u>Documents Relating to the Use of the Term "Jade"</u>**

Request No. 31 seeks documents related to the use or contemplated use of the term "Jade" in connection with MGA dolls or products. MGA acknowledges that such documents are potentially relevant to the origins and development of Bratz

(one of the original Bratz dolls was named "Jade"), but improperly attempts to limit its production to documents "created prior to January 1, 2001." See Mattel, Inc.'s Consolidated Separate Statement in Support of Motion to Compel Production of Documents by MGA Entertainment, Inc. ("Cons. Sep. Smt."), at 65. (emphasis added). This limitation permits MGA to withhold relevant documents created after January 1, 2001 even if they specifically reference the use of the term "Jade" prior to January 1, 2001. Moreover, a January 1, 2001 cut-off excludes too many potentially relevant documents. The Bratz dolls did not go to market until June 2001. Thus, post-January 1, 2001 documents are relevant to issues related to the development of Bratz. Mattel's proposed limitation of Request No. 31 is reasonable – MGA should be compelled to produce documents that refer or relate to the use or considered use of the term "Jade" prior to December 31, 2001.

**C. Documents and Things Related to Sandra Bilotto, the Sculptor of "Prayer Angels"**

Request Nos. 32 through 41 seek documents and things relating to Sandra Bilotto, the sculptor of "Prayer Angels." MGA contends that it should not be compelled to produce additional documents because "MGA already searched for and produced resulting documents responsive to these requests for the period prior to January 1, 2001 . . . ." Opp. at 12. Once again, this assertion is belied by MGA's responses to these requests. In reality, MGA agreed to produce a limited universe of documents in response to only four of the ten requests related to Ms. Bilotto. MGA never agreed to produce any documents at all in response to the remaining requests (Request Nos. 32-34, 36, 38, 40). And as to the four requests for which MGA supplemented its responses, MGA limited any production of documents to documents relating to Ms. Bilotto's work on "Prayer Angels" only.

MGA's limitation is not warranted and would exclude highly relevant documents and things relating to, for example, 2000 and 2001 work related to Bratz or "Angel." As set forth in Mattel's motion to compel, these requests are already sufficiently limited to one individual (Ms. Bilotto) and in many instances, to a specific time period (prior to January 1, 2001). MGA itself placed Ms. Bilotto and Prayer Angels at issue in this lawsuit when it claimed that Anna Rhee (who testified that she worked on Bratz under the code name "Angel" while Bryant was still employed by Mattel) was really working on Prayer Angels, and not Bratz. Nana Ashong, a former MGA employee, recently testified that "Angel" was also a specific reference or code referring to the "Cloe" character when Bratz was under development.[6] Responsive documents are obviously relevant to this issue. MGA cannot avoid producing responsive documents based on its contention that Ms. Rhee never really worked on Bratz during the June-October 2000 time frame. Ms. Rhee testified that she did, and, if anything, the fact that this is in dispute underscores the importance of further discovery on this point.

### D. MGA's Communications With and Payments to Paula Garcia

Request Nos. 42 (as limited by Mattel during the meet and confer), 76 and 77 seek certain communications between Isaac Larian and Paula Garcia and documents regarding MGA's payments to Ms. Garcia. Responsive documents are obviously relevant – Ms. Garcia was MGA's Bratz project manager and is a key witness in this lawsuit. MGA claims it should not be compelled to produce

---

[6] See Confidential Transcript of Deposition of Nana Ashong (January 28, 2008) (Exhibit 3 to the February 15, 2008 Declaration of Jon D. Corey ("Corey Dec.")), at 210:7-211:8, 212:22-214:18.

responsive documents because it "has produced . . . more than 40,000 pages of documents relating to Ms. Garcia" and "already produced documents sufficient to show what payments MGA has made to Ms. Garcia." Opp. at 14-15. Once again, however, MGA's responses to the requests at issue do not support these assertions. MGA did not agree to produce any documents responsive to these requests, nor did it respond that all responsive documents, or documents "sufficient to show" payments, have already been produced. Accordingly, MGA should be compelled to produce all documents responsive to Request Nos. 42, 76 and 77.

It also bears noting that MGA's own discovery has repeatedly sought all manner of information about witness's finances. At depositions, for example, MGA has asked Mattel witnesses how much they make (or made) at Mattel[7] and even their retirement plans.[8] And, in the case of Anna Rhee, MGA sought records of payments made by any party to her.[9] MGA likewise should be ordered to fully disclose what it has paid to one of the central witnesses in this case.

**E. Documents Relating to the Development of Scooter Samantha**

Request Nos. 43 through 55 seek documents and things related to MGA's Scooter Samantha products. Mattel alleges that MGA took internal Mattel information from Mattel's Scooter Shannen project to create and develop Scooter

[7] See Transcript of Deposition of Liliana Martinez, taken May 20, 2005 (Corey Dec. Ex. 12), at 17:23-18:5; Confidential Transcript of Deposition of Adrienne Fontanella, taken January 16, 2008 (Corey Dec. Ex. 13), at 48:17-49:16.

[8] See Confidential Transcript of Deposition of Hoi Hoffman-Briggs, taken January 21, 2008 (Corey Dec. Ex. 14), at 101:12-20.

[9] See Bryant's Subpoena in a Civil Case to Anna Rhee, dated February 25, 2005 (Corey Dec. Ex. 15) (Request Nos. 5, 6).

Samantha.[10] MGA argues in its Opposition that these requests "should not be considered at this time" because they relate to Phase 2 issues. Opp. at 16. MGA does not rely on any of its objections to these Requests in opposition to Mattel's motion. Accordingly, those objections should be overruled, and MGA should be compelled to produce documents responsive to Request Nos. 43 through 55.

Nor is it correct that these issues relate to just Phase 2 discovery. As the Court has ruled, mixed Phase 1 and Phase 2 discovery is not stayed.[11] The discovery about Scooter Samantha's conception, design and development *in 2000* is sought for purposes of challenging MGA's product development timeline regarding Bratz -- which, in stark contrast to the approximately year-long process it took for other products such as Scooter Samantha, MGA claims lasted only a matter of a few weeks before Bratz was shown at Hong Kong Toy Fair. The Scooter Samantha documents are also sought to impeach Paula Garcia's testimony about her involvement in MGA's product conception, design and development *during 2000*. That is the time period directly at issue in Phase 1 and is clearly relevant to Phase 1 trial.

**F. Documents Related to Scot Reyes and the Development of Space Babes**

Request Nos. 56 through 75 seek documents and things related to Space Babes and Scot Reyes, a former Mattel employee. Space Babes is yet another

---

[10] See Mattel's Supplemental Responses to MGA's First Set of Special Interrogatories, dated December 7, 2007 (Kidman Dec. Ex. 14), at 44 (Mattel's Supplemental Response to Special Interrogatory No. 1).

[11] February 4, 2008 Order at 3 (Temkin Dec. Ex. 4).

example of MGA's theft of Mattel's trade secrets and confidential information. MGA argues that these requests "should not be considered at this time" because they relate to Phase 2 issues. Opp. at 18. Because MGA does not rely on any of its objections to these Requests in opposition to Mattel's motion, those objections should be overruled, and MGA compelled to produce documents responsive to Request Nos. 56 through 75.

MGA should also be compelled to produce these documents now. While they relate in part to Phase 2, they relate to issues that MGA itself claims relate to Phase 1 and therefore are not subject to the stay. For example, Scot Reyes was a Mattel employee at various times, and the documents MGA has produced suggest that there may have been overlap between his involvement with MGA on the Space Babes project and his Mattel employment. Obviously, evidence of an additional Mattel employee working for MGA while still with Mattel would be relevant to a host of issues, including to MGA's intent and knowledge in connection with Bryant and others who MGA had perform service and paid while they were Mattel employees. As another example, MGA's own expert reports attempt to portray the success of MGA's Bratz line not to Bryant's designs, but instead to MGA's "innovation."[12] But what MGA characterizations as "innovation" was, in fact, its theft of massive amounts of Mattel trade secrets over a several year period.[13] And, theft is itself relevant not only to refuting MGA's own allegedly Phase 1 arguments, but also shows that the thefts were not the result of inadvertence or an isolated mistake, but intentional.

---

[12] See Menell Report (Corey Dec. Ex. 4); Expert Reporter of Robert Tonner, dated February 11, 2008 (Corey Dec. Ex. 9).

[13] See Mattel, Inc.'s Second Amended Answer and Counterclaims (Corey Dec. Ex. 16).

**G. Personnel and Vendor Files**

Notably, MGA previously agreed to produce without restriction – and the Discovery Master previously ordered MGA to produce without restriction – personnel and vendor files for individuals involved in the development of Bratz.[14] MGA acknowledges that the individual personnel and vendor files Mattel seeks in Request Nos. 78 through 86 are relevant. It nevertheless improperly attempts to limit its production to only those documents "that refer or relate to work or services provided . . . on Bratz prior to January 1, 2001." See, e.g., Cons. Sep. Stmt. at 154.

This limitation is far too narrow and indeed is one of the same arbitrary, under-inclusive date restrictions the Discovery Master has already rejected. For example, the January 1, 2001 cut-off excludes potentially relevant documents regarding the development of Bratz in 2001. (As discussed above, the first wave of Bratz dolls did not go to market until June 2001.) And the limitation to documents relating to work on Bratz only excludes highly relevant documents and things relating to Prayer Angels and "Angel." Request Nos. 78 through 86 are already sufficiently limited to specific named individuals that Mattel and MGA[15] have identified as having relevant information and involvement.

[14] See MGA Entertainment Inc.'s Responses to Mattel, Inc.'s First Set of Requests for Production of Documents and Tangible Things, dated April 13, 2005 (Kidman Dec. Ex. 15), at 71-78; May 15, 2007 Discovery Master's Order (Kidman Dec. Ex. 9), at 9, 11 n.4.

[15] See MGA Entertainment, Inc.'s Fourth Supplemental Response to Interrogatory No. 1 of Mattel, Inc.'s First Set of Interrogatories re Claims of Unfair Competition, dated July 31, 2007 (Corey Dec. Ex. 1), at 7, 10, 12-13; MGA's Third Supplemental Responses to Mattel's Second Set of Interrogatories, dated August 21, 2007 (Corey Dec. Ex. 2), at 4-6.

Moreover, with respect to Request Nos. 87 and 88 (files for former Mattel employees), MGA argues only that these requests are "premature" because they relate to Phase 2 issues. Opp. at 18. MGA does not rely on any of its objections in opposition to this motion. Accordingly, those objections should be overruled, and MGA should be compelled to produce documents responsive to Request Nos. 87 and 88. Nor is there any basis for MGA's argument that such information Phase 2 and thus may be withheld until after Phase 1 trial. The entirety of the Bratz line is directly at issue in Phase 1, including in MGA's own expert reports,[16] and MGA should not be allowed to withhold directly relevant evidence any longer and disadvantage Mattel at Phase 1 trial.

## II. MGA SHOULD BE SANCTIONED.

MGA has not demonstrated that it was "substantially justified" in refusing to produce any documents in response to seventy-four of Mattel's eighty-eight requests. Fed. R. Civ. P. 37(a)(4). If anything, MGA's Opposition confirms that it is playing games – claiming in opposition to Mattel's motion that it has produced "tens of thousands of pages of documents responsive to the Third Set" but refusing to actually amend its responses to the Third Requests to state that all responsive documents have already been produced (because they obviously have not). Under these circumstances, Mattel is entitled to recover the "reasonable expenses incurred in making the motion, including attorney's fees." Id. Mattel seeks sanctions against MGA in the amount of $4,500.00 only, which is a fraction of the expense incurred in compelling the production of relevant responsive documents.

---

[16] See Expert Report of Dr. Erich Joachimsthaler, dated February 11, 2008 (Corey Dec. Ex. 8).

## Conclusion

For the foregoing reasons, Mattel's motion to compel should be granted in its entirety and monetary sanctions should be awarded against MGA in the amount of $4,500.00.

DATED: February 15, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Jon D. Corey
Jon D. Corey
Attorneys for Mattel, Inc.