1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    michaelzeller@quinnemanuel.com
     Jon D. Corey (Bar No. 185066)
4    joncorey@quinnemanuel.com
     865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
     Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

12            Plaintiff,                    Consolidated with
                                            Case No. CV 04-09059
13        vs.                               Case No. CV 05-02727

14  MATTEL, INC., a Delaware               **DISCOVERY MATTER**
    corporation,
15                                          **[To Be Heard By Discovery Master
            Defendant.                      Hon. Edward Infante (Ret.)]**
16
17  AND CONSOLIDATED                        REPLY MEMORANDUM IN RESPONSE
    ACTIONS                                 TO ORDER TO SHOW CAUSE
18                                          DIRECTED TO LARRY MCFARLAND,
                                            LUCY ARANT, SARAH HALPERN, AND
                                            PETER MARLOW
19
                                            Date:   February 25, 2008
20                                          Time:   10:00 a.m.
                                            Place:  Courtroom 1
21
                                            **Phase 1**
22                                          Discovery Cut-Off:      January 28, 2008
                                            Pre-Trial Conference:   May 5, 2008
23                                          Trial Date:             May 27, 2008

24                                          [Declarations of Christopher E. Price,
                                            Kenneth Wright, Miguel Leyva, and Rudy
25                                          Flores, filed concurrently]

26

27

28

                                            REPLY TO RESPONSE TO OSC

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 3

I.     MCFARLAND EVADED SERVICE .............................................................. 3

II.    MCFARLAND'S CLIENTS HAVE ALSO EVADED SERVICE ................. 5

III.   MCFARLAND AND HIS CLIENTS POSSESS UNIQUE INFORMATION HIGHLY RELEVANT TO THIS ACTION ........................ 7

    A.   McFarland and His Clients Have Waived Any Objections to the Court's Order Granting Leave to Take Additional Discovery ............... 7

    B.   McFarland Possesses Unique Information Concerning the Timing of the Creation and Development of Bratz ................................ 8

    C.   There Is No Legal Bar to Deposing McFarland .................................... 10

    D.   McFarland Does Not Deny that the Court Properly Granted Mattel Leave to Depose Arant, Halpern, and Marlow ......................... 11

CONCLUSION ......................................................................................................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

## Cases

*Holmes v. Superior Court,*
145 Cal. App. 3d 934, 193 Cal. Rptr. 2d 790 (1983) ............................................... 4

*Reeder v. Knapik,*
No. 07-CV-362, 2007 WL. 1521100 (S.D. Cal. May 22, 2007) ............................ 4

*Shelton v. American Motors Corp.,*
805 F.2d 1323 (8th Cir. 1986) .............................................................................. 10

*Tokuda v. Huang,*
882 F. Supp. 154 (D. Guam 1995) .......................................................................... 4

1

**Preliminary Statement**

2        The issue is whether attorney Larry McFarland and his three clients

3    (one of whom is also an attorney) evaded service of subpoenas.  Nowhere in the

4    Response does McFarland or his clients deny they were present when Mattel's

5    process servers tried 45 times to serve them--at their homes and offices, by day and

6    by night.

7        To the contrary, McFarland candidly admits he knew Mattel was

8    attempting to serve him.  But he contends he had no obligation to "alter his usual

9    routine" even though, as he says, he was "in and out" of his office.[1]  It is the "in" of

10    the "in and out" that makes his conduct reprehensible.  McFarland does not dispute

11    that he received the email from Mattel saying that it was having difficulty serving

12    him and requesting that he provide a convenient time and place to serve him.  He

13    likewise does not dispute that he made no response to that query.

14        McFarland's gamesmanship is aptly illustrated by his use of half-truths.

15    He points out that he was not served while defending three depositions in this case.

16    He omits to mention that Mattel's motion for leave to take additional depositions,

17    which included McFarland by name, had not been granted at the time of those

18    depositions.

19        Evading service is not limited to fleeing when a process server

20    approaches.  To evade is to avoid by cleverness.  Here, (1) McFarland knew Mattel

21    was attempting to serve him; (2) he knew (as an attorney who has appeared of

22    record and has participated in these proceedings) that the discovery cut off was

23    approaching; (3) he does not deny that he was present when Mattel made seven

24    attempts to serve him; (4) it is undisputed his receptionist gave vague and evasive

25    answers as to where he was and when he could be expected; and (5) he chose not to

26

27    ───────────────────

        [1]   Response at 9:11-12.

28

07209/2392301.2

REPLY TO RESPONSE TO OSC

1  make any response when asked by other counsel of record when it would be
2  convenient to serve him.  That adds up to evasion.

3          Likewise McFarland's clients Lucy Arant, Sarah Halpern and Peter
4  Marlow do not deny they knew process servers were trying to serve them.  Nor do
5  they deny they were present when service was attempted.  There is no plausible
6  explanation for Arant, Halpern and Marlow managing to avoid 38 service attempts
7  other than that they were coached to be unavailable until the cutoff passed.
8  McFarland is the same attorney who was retained (undoubtedly by MGA) to
9  represent three other, ostensibly independent, third party witnesses who, when asked
10  at deposition who was paying their attorney's (i.e., McFarland's) fees, all made the
11  remarkable response that they "didn't know."  Undoubtedly they had been coached
12  to say just that -- just as Arant, Halpern and Marlow were told to make themselves
13  scarce.

14          It is no defense to argue that the Court should not have granted Mattel
15  leave to depose McFarland in the first instance.  There are legitimate means for
16  challenging subpoenas -- evasion is not one of them.  McFarland could have sought
17  reconsideration of the Court's January 7, 2008 Order or could have sought a
18  protective order, but chose to do neither.

19          In any event, McFarland and his clients do not dispute that they have
20  unique, highly relevant information regarding the timing of the creation and
21  development of Bratz.  Halpern actively worked on the development of Bratz, and
22  Marlow has unique knowledge of unlawful payments to Mattel employees to work
23  on Bratz while employed by Mattel that were discovered for the first time on
24  December 28, 2007.  McFarland's facile assertion that all he knows is privileged
25  cannot be true.  He filed early Bratz copyright applications that MGA now claims
26  inaccurately stated Bratz was first published in February 2001.  Arant filed early
27  Bratz copyright registrations on behalf of MGA that MGA now claims inaccurately
28  stated Bratz as created in 2000 and first published in February 2001.  Not only is

07209/2392301.2

-2-

1  McFarland's argument thus incorrect, but if anything it appears to confirm that he
2  and his clients deliberately evaded service based on a belief that they should not be
3  deposed.

4        The Court should order McFarland, Arant, Halpern, and Marlow to sit
5  for depositions and cover the costs and fees incurred in the attempts to serve them.

6

7  **Argument**

8

9  **I.  MCFARLAND EVADED SERVICE**

10       McFarland knew since at least November 17, 2007 that Mattel sought
11 to take his and his clients' depositions and since January 9, 2008 that the Court had
12 granted leave to do so.  He is an attorney of record in this action.  He has been
13 retained to represent at least six third parties.  Mattel asked him by e-mail message
14 on January 10, 2008, whether he would accept subpoenas on behalf of his clients.
15 He did not respond until January 15, when he advised that he would not do so.[2]
16 Thereafter Mattel made 7 attempts to serve him.  He does not deny that he was
17 present when the process servers attempted service at his office and home.  Instead,
18 he coyly states only that he had "no obligation to alter his usual routine or
19 otherwise . . . make himself available to receive service."

20       The undisputed evidence, however, is that Mattel attempted service at
21 McFarland's office and his home; weekdays and weekends; morning, afternoon, and
22 evening.[3]  He admits he was "in and out of the office."  But his receptionist told a
23 different story, informing the process server that McFarland would be out of the

24

25

26     [2]  Declaration of Christopher E. Price dated February 19, 2008 ("Price Dec."), ¶
   2 and Exhibit A thereto.  All exhibits are attached to the Price Dec. unless otherwise
27 noted.

28     [3]  Declaration of Miguel Leyva dated February 15, 2008, ¶¶ 2-4.

07209/2392301.2

-3-

1   office for an "undetermined period of time."[4]  Neither McFarland or his receptionist

2   have signed a declaration denying that McFarland was present during the period

3   when service was attempted.  For good reason:  McFarland was in his office during

4   this period, preparing and sending lengthy correspondence to Mattel's counsel

5   regarding this action.[5]

6         McFarland also concedes that Mattel advised him, in writing, that it had

7   been having difficulty effecting service and point blank asked him when and where

8   he could conveniently be served.  Although he read the message, he made no

9   response.  In his response he finally gives one:  the e-mail was close to the cut off.

10   That fact evidences McFarland's motive to evade service.[6]

11         McFarland's reliance on Reeder v. Knapik, No. 07-CV-362, 2007 WL

12   1521100 (S.D. Cal. May 22, 2007), and Tokuda v. Huang, 882 F. Supp. 154 (D.

13   Guam 1995), to excuse his evasion is misplaced.  In Reeder, the trial court stated

14   that the defendant (not an attorney) was not required to provide a plaintiff with co-

15   defendants' addresses or agree to meet to accept service of process.  Evasion of

16   service was not at issue.  2007 WL 1521100, at *1.  In Tokuda, the trial court made

17   no determination whether the defendant had evaded service.  It left the question

18   open, holding only that the failure to accept service was not a proper basis for a

19   punitive damages award.  Id. at 156.  The failure to arrange a convenient time for

20   service is not unlawful, but evading a subpoena, and advising others to do so, is.

21   See Holmes v. Superior Court, 145 Cal. App. 3d 934, 941-42, 193 Cal. Rptr. 2d 790,

22   794-96 (1983).

23

24   [4]  Id.  McFarland objects to his receptionist's statements as hearsay, which it is

25   not because it is obviously not offered for the truth of the matter asserted.

      [5]  Price Dec., ¶ 3; Exhs. B, C, and D.

26   [6]  Notably, the e-mail recounts McFarland's receptionist' statements that he was

27   out of the office for an "indeterminate amount of time."  Yet he never said otherwise

      until filing his Response.

28

1    To evade, by definition, is to avoid by cleverness.  Some evade by
2  running away; but attorneys evade by hunkering down behind receptionists and
3  defiantly claiming they will not "alter their routine," as if it were believable that an
4  attorney never leaves his office or never accepted deliveries.  The undisputed
5  evidence supports the conclusion that he evaded service.

6    Finally, McFarland argues that Mattel could have served him with a
7  subpoena when he attended the depositions of other clients in this matter.  All those
8  depositions, however, occurred before the Court granted Mattel's motion for leave to
9  take additional discovery, which specifically requested leave to take McFarland's
10  deposition.

11

12  **II.    MCFARLAND'S CLIENTS HAVE ALSO EVADED SERVICE**

13    McFarland also does not deny that his clients evaded service.  They,
14  too, have failed to declare that they were not present the 38 times (collectively)
15  when process servers visited their homes and offices.  Instead, McFarland argues
16  only that his clients had no duty to authorize him to accept service on their behalf.
17  That misses the point, although notably McFarland knew time was of the essence
18  and yet waited five days before informing Mattel that he was not authorized to
19  accept service, thus reducing the time Mattel had to effect service.[7]  The facts
20  concerning their remarkable unavailability are set forth below.

21    • <u>Lucy Arant</u>.  Mattel attempted to serve Arant -- also a lawyer -- <u>13</u>
22  times.  Mattel attempted to serve Arant at her home and her office, weekdays and
23  weekends, morning, afternoon, and evening.  At her office, her receptionist claimed
24  she was not present.[8]  There is no dispute that the process servers visited the correct

25  _____

26    [7]  Price Dec., ¶ 2.

27    [8]  As with his own receptionist' statements to the process server, her statements
28  are not hearsay because they are not offered for the truth of the matter asserted.

1  residence address.  Nevertheless, no one ever answered her door.  The process
2  server even waited at her residence, to no avail.[9]

3      • <u>Sarah Halpern</u>.  Mattel also attempted to serve Halpern <u>13</u> times.
4  Mattel attempted to serve her at her home, weekdays and weekends, morning,
5  afternoon, and evening.  During some of the attempts, two cars were parked at
6  Halpern's residence, but no one answered the door.  The process server also called
7  Halpern's home telephone number in an attempt to arrange service.  Both times
8  Halpern's husband answered and claimed that she was "hardly ever home."[10]

9      • <u>Peter Marlow</u>.  Mattel attempted to serve Marlow <u>12</u> times at his
10  residence; weekdays and weekends; morning, afternoon, and evening.  On at least 9
11  occasions, there were 3 cars present at the residence and the lights were on but no
12  one answered the door.  The process servers waited on two separate occasions for
13  him to show, totaling more than eight hours, to no avail.[11]  McFarland argues that
14  Mattel missed opportunities to serve Marlow, but each alleged opportunity occurred
15  <u>before</u> the Court granted Mattel leave to depose him.

16      McFarland apparently believes he can excuse evasion by the argument
17  that his clients "are not the only witnesses that Mattel failed to serve, yet are the
18  only witnesses who have been ordered to show cause" (Response, 12:9-12).  He
19  ignores, however, that he and his clients have proven uniquely difficult to serve.
20  Mattel successfully served notices or subpoenas on over 30 of the witnesses
21  identified in its Motion for Leave to Take Additional Discovery.  Of the five
22  non-McFarland witnesses that Mattel was unable to serve, Mattel lacked current
23  contact information for two of them, a third agreed to sit for deposition, and another
24
25 _____

[9]   Declaration of Miguel Leyva, ¶¶ 5-9.
[10]   Declaration of Kenneth Wright dated January 25, 2008, ¶¶ 2-6; Declaration of
Rudy Flores dated January 25, 2008, ¶¶ 2-5.
[11]   <u>Id</u>.

07209/2392301.2

-6-

1   is reportedly out of the country.[12]  The fifth unserved witness may be evading
2   service but even if so that means that four of the five persons evading service are
3   McFarland and his clients.  This is not a coincidence.

4        Significantly, this is not the first time that McFarland and his clients
5   have frustrated discovery.  At their depositions, three of McFarland's clients offered
6   the incredible testimony that they had "no idea" or "not the slightest clue" who was
7   paying Mr. McFarland's fees to represent them.[13]  Obviously they were coached to
8   provide that answer.  It is a fair inference that Arant, Halpern and Marlow were also
9   coached to evade service.

10       Mattel only asks that the Court order respondents to sit for deposition
11  and that McFarland, Arant, Halpern, and Marlow reimburse Mattel for the costs
12  incurred in attempting service.

13

14  **III.   MCFARLAND AND HIS CLIENTS POSSESS UNIQUE**
15         **INFORMATION HIGHLY RELEVANT TO THIS ACTION**

16       Although no defense to this OSC, Mattel makes the following response
17  to McFarland's claim that there is no basis to depose him.

18       **A.   McFarland and His Clients Have Waived Any Objections to the**
19            **Court's Order Granting Leave to Take Additional Discovery**

20       McFarland in effect asks the Court to reconsider its January 7, 2008
21  Order.  He did not bother, however, to seek a protective order or move for
22  reconsideration even though he was "aware since at least the time that Mattel filed

23  _____

24       [12]   Price Dec., ¶ 5.
25       [13]   Exh. H, at 251:2-9 [Deposition Transcript of Margaret Leahy]; Exh. F, at
     113:18-114:6 [Deposition Transcript of Elise Cloonan]; Exh. E, at 80:17-81:17
26   [Deposition Transcript of Veronica Marlow].  However, MGA itself has testified
27  that it is paying the fees for Ms. Leahy and Ms. Marlow, among others.  Exh. P, at
     1182:3-6 and 1183:23-1184:3 [Deposition Transcript of Lisa Tonnu].
28

1  its Deposition Motion on November 17, 2007, that Quinn Emanuel wanted to
2  depose him."[14]  Instead, he waited to see how the Court would rule on January 7,
3  then evaded service.  Only when his and his client's evasion attempts were brought
4  to the Court's attention did he challenge the propriety of his deposition.

5  **B.** **McFarland Possesses Unique Information Concerning the Timing**
6  **of the Creation and Development of Bratz**

7  McFarland has information highly relevant to this action.  In fact he
8  may be the only witness on certain issues.  As an attorney retained by MGA, he
9  signed early copyright registrations related to Bratz.  In the registrations, he claimed
10  that the "First Publication" of Bratz was February 12, 2001.[15]  Lucy Arant, another
11  MGA attorney, signed early copyright registrations related to Bratz, stating that the
12  first Bratz dolls were created in 2000 and that the "First Publication of Bratz was
13  February 12, 2001.[16]  After this lawsuit began -- and after the timing of the
14  development of Bratz became the "heart" of the case[17] -- the MGA defendants
15  claimed for the first time that their representations to the U.S. Copyright Office were
16  mistaken.[18]  Rather than being created in 2000 -- while Bratz's inventor, Carter
17  Bryant, was still a Mattel employee -- the MGA defendants now claim that Bratz

18
19  _____
20  [14]  Response at 7:22-24.
21  [15]  Exh. I [MGA Copyright Registrations, dated December 2003].
   [16]  Exh. J [MGA Copyright Registrations, dated July 2001].
22  [17]  As the Court has recognized, the key to this case is the timing of the
23  development of Brat ("At its heart, this case asks the question:  Who owns the rights
   to the Bratz dolls?").  Exh. M, at 11:1-2 [Court's August 9, 2006 Order Denying
24  Appointment of Expert Witnesses].
25  [18]  Exh. L [Supplemental Copyright Registrations]; Exh. G, at 251:8-256:24;
   260:14-262:4; 268:19-272:13; 276:10-278:14; 281:16-282:4; 283:6-25; 284:23-
26  285:21; 298:24-299:14; 328:18-331:21; 346:25-349:7; 349:25-357:18; 365:20-
27  368:10; 370:18-371:16; 372:15-373:9; 673:19-678:6; 684:8-689:21; 694:17-695:10
   [Deposition Transcript of Samir Khare ("Khare Tr.")].
28

07209/2392301.2                                   -8-
                                                   REPLY TO RESPONSE TO OSC

1 was created in 2001.[19]  And rather than being first published in February 12, 2001 --
2 leaving little time for a creation date in 2001 -- the MGA defendants now claim that
3 Bratz was published by "May 21, 2001."[20]

4         When MGA's <u>Rule</u> 30(b)(6) designee concerning the Bratz copyright
5 registrations was questioned concerning the belated change of the Bratz creation and
6 first publication dates, he testified that *he did not know* what information the dates in
7 the registration applications were based on because they were prepared by "outside
8 counsel," including McFarland.[21]  During his second deposition MGA's designee
9 *again* claimed that MGA did not know why outside counsel stated that Bratz was
10 created in 2000 and first published in February 12, 2001.[22]

11         Finally, McFarland argues that Mattel gave "false" information to
12 obtain leave to take his deposition.  He points out that he sought six registrations and
13 those registrations do not state "Bratz dolls were created in 2000."  Again,
14 McFarland is using half truths.  His registrations state that Bratz drawings were

15
16

17    [19]  <u>Id.</u>, at 251:8-256:24; 260:14-262:4; 268:19-272:13; 276:10-278:14; 281:16-
18 282:4; 283:6-25; 284:23-285:21; 298:24-299:14; Exh. L [MGA Supplemental
19 Copyright Registrations].
   [20]  <u>Id.</u>, at 328:18-331:21; 346:25-357:18; 365:20-368:10; 370:18-371:16;
20 372:15-373:9; 375:20-380:8 [Khare Tr.]; Exhs. K and L [MGA Supplemental
21 Copyright Registrations].
   [21]  <u>Id.</u>, at 253:16-23; 254:9-256:24; 271:2-272:13; 276:10-278:14; 281:16-282:4;
22 283:6-25; 328:18-330:7; 331:18-21; 365:20-368:10; 370:18-371:16; 372:15-373:9;
23 673:19-674:25; 684:8-686:10; 694:17-695:10 [Khare Tr.].
   [22]  McFarland's argument that he was not listed in earlier initial disclosures as a
24 witness is irrelevant.  Mattel identified him as an important witness in its Motion for
25 Leave to Take Additional Discovery.  Additionally, the MGA defendants' designee
on Bratz copyright registrations testified in December 2007 that outside counsel was
26 the *only* ones who could explain why they gave inaccurate information to the
27 Copyright Office about the timing of Bratz's first publication.  <u>Id</u>. His testimony,
therefore, has taken on even greater importance.
28

1  created in 1998 and that the Bratz doll was first published in February 2001.[23]
2  Logically, to be able to publish a completed doll in February 2001 necessarily
3  means creation in 2000. But more importantly, there is no dispute that MGA is now
4  disavowing dates in McFarland's registrations and MGA points to him to explain.
5  McFarland was and is an important witness.

6  ### C. There Is No Legal Bar to Deposing McFarland

7  McFarland's reliance on Shelton v. American Motors Corp., 805
8  F.2d 1323 (8th Cir. 1986), to argue that he cannot be deposed because he is an
9  attorney is misplaced. Shelton acknowledged a policy against deposing "trial
10  counsel" to protect them from interference with their trial preparation work. Id. at
11  1327-28. McFarland is not trial counsel. And, although he has in the past
12  represented MGA in connection with Bratz copyright representations, he does not
13  represent MGA in this case.[24] Now he is paid by MGA to represent numerous
14  ostensibly independent witnesses in this matter, including Lucy Arant, Sarah
15  Halpern, and Peter Marlow. As discussed, MGA has already identified McFarland
16  as the only person who can answer questions as to the basis for his allegedly
17  erroneous representations to the Copyright Office that Bratz was first published in
18  February 2001. Because he is not trial counsel and possesses highly relevant
19  information that goes to the heart of the case, Shelton does not preclude McFarland's
20  deposition.

21  Further, the Court has previously considered whether MGA's prior
22  counsel could be deposed. It granted Mattel leave to take the depositions of more
23  than seven attorneys. The Court found that Mattel had proven good cause to take
24  depositions precisely because the attorneys had information concerning their past
25  representation of parties to this action. Most recently, the Court denied a request by

26

27  [23] Exh. I.
28  [24] Exh. O, 9:23-25 [Nov. 20, 2007 Hearing Transcript].

07209/2392301.2

-10-

1  Christensen Glaser to limit the scope of its deposition to topics specifically
2  identified in the Motion for Leave to Take Additional Discovery.  The Court found
3  that no such limitation was warranted despite Christensen Glaser's role as counsel
4  for the MGA defendants, holding that "unless otherwise restricted by the Discovery
5  Master upon proper presentation of the issue to him, Mattel may depose
6  Christensen, Glaser on any relevant, non-privileged matter."[25]

7    **D.    McFarland Does Not Deny that the Court Properly Granted Mattel**
8         **Leave to Depose Arant, Halpern, and Marlow**

9           Finally, McFarland and his clients do not deny that Mattel's basis for
10  seeking the depositions of Arant, Halpern, and Marlow, was proper.  Each has
11  information relevant to the timing of the creation of Bratz.  Halpern and Marlow
12  were actively involved in the early development of Bratz.  Their depositions also
13  would go to the heart of this action.[26]  Indeed, on December 28, 2007, when
14  Veronica Marlow first revealed that three more Mattel employees were paid to work
15  on Bratz while Mattel employees, Ms. Marlow specifically stated that certain
16  information about those payments were known not by her, but by Peter Marlow.[27]
17  As discussed above, Arant submitted copyright registrations on behalf of MGA that
18  stated that Bratz was created in 2000 and first published in February 2001.  Now
19  MGA claims that Bratz was created in 2001 and not published until May 2001.
20
21
22
23
_____
24   [25]  Exh. N [Feb. 4, 2008 Order].
25   [26]  Exh. 1, to the Declaration of Larry McFarland [Mattel's Motion for Leave to Take Additional Discovery].
26   [27]  Exh. E, at 96:22-97:8; 204:10-23; 288:8-289:21; 306:8-25; 307:8-308:1;
27  321:13-322:2; 322:19-323:8; 324:5-325:4; 363:15-21; 365:12-367:3; 368:25-370:18 [Marlow Tr.].
28

1 | Moreover, MGA claims it does not know how Arant came up with the information
2 | in the registrations.[28]  Thus, Arant is also a key witness to this action.

3

4 | **Conclusion**

5 | For the foregoing reasons, the Court should order Larry McFarland,
6 | Lucy Arant, Sarah Halpern, and Peter Marlow to appear for depositions.  It should
7 | also order McFarland to pay the costs of the attempted service on him and his
8 | clients.

9

10 | DATED:  February 19, 2008          QUINN EMANUEL URQUHART OLIVER &
11 |                                    HEDGES, LLP

12 |                                    By/s Jon D. Corey
13 |                                       Jon D. Corey
                                          Attorneys for Mattel, Inc.

14
15
16
17
18
19
20
21
22
23
24
25
26

27 | [28]  Exh. G, at 328:18-330:7; 331:18-21; 365:20-368:10; 370:18-371:16; 372:15-
373:9; 673:19-674:25; 684:8-686:10; 694:17-695:10 [Khare Tr.].
28

07209/2392301.2