1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
 | John B. Quinn (Bar No. 090378)
2 | johnquinn@quinnemanuel.com
 | Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
 | Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
 | Timothy L. Alger (Bar No. 160303)
5 | (timalger@quinnemanuel.com)
 | 865 South Figueroa Street, 10th Floor
6 | Los Angeles, California 90017-2543
 | Telephone: (213) 443-3000
7 | Facsimile: (213) 443-3100

8 | Attorneys for Mattel, Inc.

9

10 | UNITED STATES DISTRICT COURT

11 | CENTRAL DISTRICT OF CALIFORNIA

12 | EASTERN DIVISION

13 | CARTER BRYANT, an individual,

| | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| Defendant. | DECLARATION OF CHRISTOPHER E. PRICE IN SUPPORT OF MATTEL, INC.'S REPLY TO RESPONSE TO OSC |
| AND CONSOLIDATED ACTIONS | Hearing Date: February 25, 2008 Time: 10:00 a.m. Courtroom: 1 |
| | **Phase 1:** Discovery Cut-off: January 28, 2008 Pre-trial Conference: May 5, 2008 Trial Date: May 27, 2008 |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07209/2392577.1

DECLARATION OF CHRISTOPHER E. PRICE

## DECLARATION OF CHRISTOPHER E. PRICE

I, Christopher E. Price, declare as follows:

1.     I am a member of the bar of the State of California and am Of Counsel with Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.     On January 10, 2008, I called Larry McFarland to discuss his deposition as well as those of his clients, Lucy Arant and Sarah Halpern. I was told he was not available. I left him a voice mail message asking whether he would accept service of deposition subpoenas on behalf of Ms. Arant and Ms. Halpern. That same day, I sent Mr. McFarland an e-mail message repeating my request that he confirm that he would accept service of subpoenas on behalf of his clients, Ms. Arant and Ms. Halpern. On January 15, 2008, after I had left another voice mail message with Mr. McFarland repeating my request and sent another e-mail message, Mr. McFarland responded by e-mail that he was "not authorized by Ms. Arant or Ms. Halpern to accept service of the subpoena." True and correct copies of the above e-mail messages are attached as Exhibit A.

3.     According to the declaration of the process server who has been attempting service on Larry McFarland, his receptionist has repeatedly stated that Mr. McFarland is out of the office for an indeterminate amount of time. During this time, however, my office has received letters from Mr. McFarland on January 16, 2008, January 23, 2008, and January 27, 2008. True and correct copies of his letters are attached as Exhibits B, C, and D.

4.     On January 27, 2008, I sent Larry McFarland an e-mail requesting that he provide a convenient time for the service of his subpoena in this matter. A true and correct copy of the e-mail is attached as Exhibit Q. To date, Mr. McFarland has not responded to my e-mail.

1        5.    Of the five non-McFarland witnesses mentioned in McFarland's

2 Response that Mattel was unable to serve, Mattel lacked current contact information

3 for two of them, a third agreed to sit for deposition, and another is reportedly out of

4 the country.

5        6.    Attached as Exhibit E is a true and correct copy of the relevant

6 excerpts of the Deposition Transcript of Veronica Marlow.

7        7.    Attached as Exhibit F is a true and correct of the relevant

8 excerpts of the Deposition Transcript of Elise Cloonan.

9        8.    Attached as Exhibit G is a true and correct copy of the relevant

10 excerpts of the Deposition Transcript of Samir Khare.

11       9.    Attached as Exhibit H is a true and correct copy of the relevant

12 excerpts of the Deposition Transcript of Margaret Leahy.

13       10.    Attached as Exhibit I are true and correct copies of MGA

14 Copyright Registrations, dated December 2003, that were authenticated at

15 deposition in this action.

16       11.    Attached as Exhibit J are true and correct copies of MGA

17 Copyright Registrations, dated July 2001, that were authenticated at deposition in

18 this action.

19       12.    Attached as Exhibit K are true and correct copies of MGA

20 Supplemental Copyright Registrations that were authenticated at deposition in this

21 action.

22       13.    Attached as Exhibit L are true and correct copies of additional

23 MGA Supplemental Copyright Registrations that were authenticated at deposition in

24 this action.

25       14.    Attached as Exhibit M is a true and correct copy of the Court's

26 August 9, 2006 Order Denying Appointment of Expert Witnesses.

27       15.    Attached as Exhibit N is a true and correct copy of the Court's

28 February 4, 2008 Order.

1        16.    Attached as Exhibit O is a true and correct copy of the relevant

2 excerpts of the Reporter's Transcript of Proceedings for a November 20, 2007

3 hearing before the Court.

4        17.    Attached as Exhibit P is a true and correct copy of the relevant

5 excerpts from the Deposition Transcript of Lisa Tonnu, Vol. 5, dated January 24,

6 2008.

7

8        I declare under penalty of perjury under the laws of the United States of

9 America that the foregoing is true and correct.

10        Executed on February 19, 2008, at Los Angeles, California.

11

12                           Christopher E. Price

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A

## ·Christopher Price

**From:**    Larry W. McFarland [LMcfarland@kmwlaw.com]

**Sent:**    Tuesday, January 15, 2008 11:45 AM

**To:**    Christopher Price

**Cc:**    Jon Corey; Christian C. Dowell

**Subject:** RE: Bryant v. Mattel Case

Christopher,

This serves to confirm that I am not authorized by Ms. Arant or Ms. Halpern to accept service of the subpoena.

Sincerely,

Larry W. McFarland
KEATS, McFARLAND & WILSON, LLP
9720 Wilshire Boulevard
Penthouse Suite
Beverly Hills, California 90212
Direct: (310) 777-3750
Telephone: (310) 248-3830
Facsimile: (310) 860-0363

=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=
THIS MESSAGE IS INTENDED ONLY FOR THE
USE OF THE INDIVIDUAL OR ENTITY TO
WHICH IT IS ADDRESSED AND MAY CONTAIN
INFORMATION THAT IS PRIVILEGED, CONFI-
DENTIAL, AND EXEMPT FROM DISCLOSURE
UNDER APPLICABLE LAW.

If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the
message to the intended recipient, you are hereby notified that any dissemination, distribution, forwarding, or
copying of this communication is strictly prohibited. If you have received this communication in error, please notify
the sender immediately by e-mail or telephone, and delete the original message immediately. For more
information, please visit http://www.kmwlaw.com . Thank you.

=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=

**From:** Christopher Price [mailto:chrisprice@quinnemanuel.com]
**Sent:** Monday, January 14, 2008 11:09 AM
**To:** Larry W. McFarland
**Cc:** Jon Corey
**Subject:** RE: Bryant v. Mattel Case

Have you heard from your clients yet?

Thanks

Christopher E. Price
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor

Exhibit A
Page 4

Los Angeles, CA 90017
Direct: (213) 443-3238
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: chrisprice@quinnemanuel.com
Web: www.quinnemanuel.com

---

**From:** Larry W. McFarland [mailto:LMcfarland@kmwlaw.com]
**Sent:** Thursday, January 10, 2008 6:57 PM
**To:** Christopher Price
**Cc:** Jon Corey
**Subject:** Re: Bryant v. Mattel Case

I will contact my clients and let you know

----- Original Message -----
From: Christopher Price <chrisprice@quinnemanuel.com>
To: Larry W. McFarland
Cc: Jon Corey <joncorey@quinnemanuel.com>
Sent: Thu Jan 10 16:42:12 2008
Subject: Bryant v. Mattel Case

Mr. McFarland,

I left a message with your office but wanted to follow up with an email.

In light of the order granting additional depositions, will you accept service of deposition subpoenas for Lucy Arant and Sarah Halpern?

If you want to call me, my direct dial is 213-443-3238.

Christopher E. Price
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3238
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: chrisprice@quinnemanuel.com <blocked::mailto:g@quinnemanuel.com>
Web: www.quinnemanuel.com <blocked::http://www.quinnemanuel.com/>

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

Exhibit A
Page 5

Exhibit B

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

January 16, 2008

VIA FACSIMILE and E-MAIL

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:    Mattel v. Bryant

Dear Dylan:

I am writing with regard to several outstanding issues discussed during our meetings of
counsel held on January 9 and January 11, 2008, and with respect to the correspondence noted
below.

### Lucy Arant

Responding to your letter dated January 10, 2008, in which you asked me to confirm that
Ms. Arant is not withholding any non-logged documents, as we discussed during our meeting of
counsel on January 9, 2007, I provided you with amended responses and objections to Mattel's
document request that day. I also provided you with an amended privilege log.

With regard to documents responsive to Request No. 28 of Mattel's subpoena for the
production of documents, I can confirm that our position is set out in the response to the same in
Arant's amended objections and responses dated January 8, 2008. I reiterate that the filed intent-
to-use trademark applications and any related statements of use fully satisfy Mattel's request that
Arant produce:

DOCUMENTS sufficient to show each instance in which YOU have filed or caused to be
filed an intent-to-use application for a name, mark, designation or source identifier, or any
contemplated, proposed, considered, putative or formative name, mark, designation or

B. Dylan Procter, Esq.
January 16, 2008
Page 2

>    source identifier, that had been used or was in use prior to the time such application was
>    filed or caused to be filed.

In addition, these documents are as readily available to Mattel as they are to Arant, including
without limitation by accessing the public records hosted on the Trademark Office web site at
www.uspto.gov. Moreover, as you know, Ms. Arant filed a revised declaration which did not
contain the statement regarding filing intent-to-use applications which you refer to in your
Request No. 28.

Additionally, we do not believe that any privileged documents have been withheld, other
than as set forth on the privilege log. However, we are reviewing the documents again to confirm
that everything is included in the privilege log. If we locate any additional relevant documents
that are being withheld for privilege, we will provide you with an amended privilege log by
Friday, January 18, 2008.

### Photographs and Videos Used During Depositions

I write in response to your last letter of January 11, 2008. As I set forth fully in my letter
of December 18, 2008, you have waived the work product protection with respect to the
photographs and videotapes of the three-dimensional objects which we produced for inspection,
by using some of these photographs at Ms. Leahy's deposition. In furtherance of my follow-up
letters of January 2, 2008, and January 11, 2008, I again request that these documents be
produced in their entirety. It is clear under the relevant authority that your use of the photographs
during a deposition has resulted in a waiver of the work product protection which you have
claimed in those items. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503 512-13 (S.D. Cal.
2003). In my letter of January 11, 2008, I presented further legal authority in support of my
position. You have failed to provide any relevant legal authority contrary to this position.
Indeed, the citations in your January 11, 2008, letter do not support your conclusion that the
photographs constitute opinion work product rather than factual work product, but instead simply
reiterate the general rule that opinion work product is treated differently than fact work product
with respect to waiver. This may be true, but it is not relevant here because the photos and video
do not constitute opinion work product. *See Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 n.4
(8th Cir. 1998) ("Ordinary work product includes such items as photographs and raw
information.").

However, I see that you have agreed in your letter dated January 11, 2008, to provide us
copies of all of the photographs and videos taken of the three-dimensional items if I agree to do
the same. I would point your attention to my letter of December 18, 2007, in which I clearly
stated that we had provided you with copies of all of our photos on December 11, 2007. I also
reminded you of this during our telephonic meeting of counsel on January 9, 2008.

B. Dylan Procter, Esq.
January 16, 2008
Page 3

Unfortunately, you have made MGA's agreement a condition of Mattel's agreement to produce
these photographs and videotapes. That is an issue that you need to raise with MGA's attorneys.
I request that you reconsider your position and agree to provide us with all of the photographs
and videos that you have taken of the three-dimensional objects produced by my clients and
remind you again that my clients have already done the same.

### Computers

With regard to your request that I agree to a new protocol as set forth in Mr. Tayback's
email dated January 9, 2008, for the review of the computers, hard disk drives, and zip disk (the
"Computers") belonging to Ms. Leahy and Ms. Cloonan, as you know, these Computers have
already been reviewed pursuant to the protocol that your partner, Susan Wines, and I agreed to
several months ago. Moreover, all of the documents located by the expert's search pursuant to
the agreed to protocol have already been produced and both Ms. Leahy and Ms. Cloonan have
already been deposed. We are, therefore, not willing at this late date to agree to a new protocol.

As you know, Ms. Wines and I spent a considerable amount of time meeting and
conferring with respect to a protocol for the review of the Computers. The result of these
discussions was the protocol set forth in Ms. Wines' letter dated September 13, 2007. Both
Mattel and I agreed to be bound by this protocol. In addition, as I have repeatedly stated, one of
the most important issues for me was that this protocol be agreed to and all documents located
pursuant to the protocol be produced prior to the depositions of my witnesses. As you know, this
was accomplished. Now that the depositions of Ms. Leahy and Ms. Cloonan have been taken,
you are attempting to re-review the Computers pursuant to a new protocol. This is not acceptable
and you have presented no basis to justify your attempt to change the protocol. In the email
dated January 9, 2008, from Mr. Tayback, he stated that "the testimony of the witnesses makes
clear that there are graphical (and perhaps other) files on the Cloonan and Leahy hard drives that
are relevant, responsive, non-privileged documents but which were either not produced by you or
not identified by the prior search protocol." However, the fact that there could be graphical files
on the Computers is not new information. As you know, Mr. Bryant testified during his
deposition that he and/or Ms. Cloonan may have utilized the computer belonging to Ms. Cloonan
to create graphics for Bratz. Unfortunately, it appears as though this effort to alter the protocol
previously agreed upon is simply part of a larger strategy to never commit to an agreement and/or
conclude a deposition.

With regard to the computers belonging to Ms. Marlow, as I stated during our conference
on January 9, 2008, in response to the subpoena, we produced all relevant and responsive
documents in Ms. Marlow's possession, custody or control, which included emails residing on
her computers. Accordingly, Ms. Marlow has fully complied with her discovery obligations. It is
both unreasonable and beyond the scope of Mattel's discovery rights to require Ms. Marlow to

B. Dylan Procter, Esq.
January 16, 2008
Page 4

produce her actual computer hard drives to Mattel. Ms. Marlow has fully complied with her
discovery obligations by searching her hard drives and producing all relevant documents in
response to Mattel's requests. As you know, when a party is obligated to produce electronically-
stored documents in response to discovery requests, it is the responding party's obligation to
conduct the search and review its own documents. *See Peskoff v. Faber*, 240 F.R.D. 26, 31
(D.D.C. 2007) ("[T]he producing party has the obligation to search available electronic systems
for the information demanded."), *quoting McPeek v. Ashcroft*, 202 F.R.D. 31, 32 (D.D.C. 2001)).
The mere fact that a requesting party is skeptical that a responding party has produced copies of
all relevant and non-privileged documents does not warrant compelling production of the
responding party's computer hard drives. *McCurdy Group, LLC v. Am. Biomedical Group, Inc.*, 9
Fed. Appx. 822, 831 (10th Cir. 2001). *See also Ameriwood Indus., Inc. v. Liberman*, No. 4-
06CV524-DJS, 2006 WL 3825291, at *4 (E.D. Mo. Dec. 27, 2006) ("[A] party may not inspect
the physical hard drives of a computer merely because the party wants to search for additional
documents responsive to the party's document requests."). Ms. Marlow is not required to go
above and beyond the requirements placed on a party and produce her computer hard drives to
Mattel.

Finally, your claim that you just now learned during her deposition that Ms. Marlow
occasionally used computers is inaccurate. You have known for quite some time that Ms.
Marlow sent and received email because we produced such relevant emails well prior to her
deposition and I believe that MGA has also produced emails which were sent to Ms. Marlow.
With respect to your allegation that I had "previously represented to Mattel that Ms. Marlow does
not have any hard drives which she used for work relating to Bratz," I am unaware of making any
such representation. Because you insist that I have, please advise as to when and where I made
the alleged representation.

## Bank Records

I write further in response to your latest letter on this subject dated January 11, 2008.
With regard to the Wells Fargo documents belonging to Ms. Marlow that were produced directly
to you in violation of our agreed upon protocol, you stated in your letter dated January 10, 2008,
that you would consider my request that you purge yourself of those documents and return them
to me so that they may be reviewed pursuant to the protocol. In your letter of January 11, 2008,
you proposed supplementing the review protocol for all bank records produced and to be
produced by adding documents referring to the following:

    (1)    Isabel Ana Cabrera

    (2)    Beatriz Morales

    (3)    Maria Elena Salazar

    (4)    Payments made to, or work or services performed by, any other Mattel employee

B. Dylan Procter, Esq.
January 16, 2008
Page 5

      (5)    Payments made by, or any services performed for, any competitors of Mattel, including any company involved in the sale of dolls or toys, while your clients were employed at Mattel

      (6)    The dates on which any entities with which your clients are affiliated were established, including but not limited to payments to the Franchise Tax Board or other tax entities.

With regard to items (1), (2), (3), and (6), I agree to amend the protocol for review of the bank records. However, item (4) is too vague and should be qualified to read "while such person was an employee of Mattel." Item (5) is also too vague and should be amended to read that competitors of Mattel are defined as any company involved in the sale of dolls or toys, not simply "including any company involved in the sale of dolls or toys," as you have drafted it. If you are amenable to these changes, please advise us accordingly.

### Retainer Letters

With regard to your request that I produce any retainer letters signed by my clients, you have taken the position that various orders entered by Judge Infante with respect to Mr. Bryant are controlling as to my non-party clients. As you know, I was not involved with the motions ruled on by Judge Infante, but your firm obviously was. As I pointed out in my letter dated December 18, 2007:

> Regarding the fee agreements, I am at a loss to understand how you can contend that "Mattel's objections to other subpoenas and Mattel's responses to other parties' requests for production are irrelevant here." The point is simple. Mattel is taking the position with respect to my clients that Judge Infante's orders require the production of retainer letters, while at the same time, Mattel has continued to object to the production of retainer letters after the entry of Judge Infante's order. Your silence with respect to my request in my December 3, 2007 letter, that "[i]f you have produced the retainer letter for Mr. Liden or any third party, please provide me with a copy of that document," says everything. You have not provided me with any such retainer letters and, therefore, I can only assume that you have continued to refuse to produce them.

As I told you during our meet and confer on Friday, January 11, 2008, if Mattel agrees that the orders entered by Judge Infante require Mattel to produce all retainer letters relating to non-parties and if in fact Mattel produces such retainer letters, I will also agree to produce the retainer letters for my third party clients. With respect to your statement during our call on January 11, 2008, that the two situations were like "apples and oranges," I request that you reconsider your

B. Dylan Procter, Esq.
January 16, 2008
Page 6

position. The issue is simple – what is Mattel's interpretation of Judge Infante's order with respect to retainer letters for non-parties.

As far as whether I will be providing a privilege log as you propose in your letter of January 10, 2008, I reiterate my previous statement that the purpose of a privilege log is to make the receiving party aware of any documents that the producing party is withholding based upon privilege. Rule 26 lays out the purpose of providing a privilege log as being to "expressly make the claim" of privilege and to "describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." F.R.C.P. 26(b)(5). In this case, the purpose of the privilege log has been fully satisfied – I have told you that I am not producing the retainer letters between my clients and their attorneys. (Nor am I producing the correspondence between my clients and their attorneys.) You are aware of the claim of privilege and what is not being produced. I can also confirm that these retainer letters were not copied or addressed to other parties or third parties.

### Additional Deposition Dates

With respect to your request that my clients be made available for additional deposition dates, as I have repeatedly stated, this request is unreasonable. I have made my clients available for the full seven hours (and beyond in some instances) as required by the federal rules and believe that demanding additional time of these non-party witnesses is not warranted. In particular, I write in response to the issues raised in the letter from Mr. Zeller dated January 4, 2008, and his mischaracterization of why he believes he did not have enough time to question Ms. Marlow. As a preliminary matter, with regard to Mr. Zeller's belief that he did not have time to question Ms. Marlow regarding other Mattel employees she has worked with, documents identifying the other Mattel employees Ms. Marlow worked with were produced well prior to the deposition and Mr. Zeller had plenty of time to review these documents prior to the deposition and did in fact question her extensively about these individuals during the deposition.

In addition, the assertions by Mr. Zeller in the third and fourth paragraphs of his letter that Mattel lacked sufficient time to depose Ms. Marlow regarding Mr. Bryant's drawings and the Prayer Angels project are simply untrue. All of these topics were covered in great detail during the deposition. With regard to the several pages of additional documents produced on the day before the deposition, I have difficulty understanding how those might have adversely affected Mr. Zeller's ability to question Ms. Marlow regarding them. Mr. Zeller stated at the deposition that all these documents except one had been previously produced by MGA or Bryant. With respect to the one new document, Mr. Zeller had seven hours to question Ms. Marlow regarding this document, but he chose not to do so.

B. Dylan Procter, Esq.
January 16, 2008
Page 7

Finally, with regard to the specific instructions Mr. Zeller has taken issue with, he claims that at Marlow Depo. Tr 174:4 – 177:3, my objections were "suggestive" and "obstructionist." I reject this assertion, and believe that my objections and those of counsel for Bryant and MGA were well within the federal rules. Furthermore, I will point out again that his line of questioning was an attempt to put words in Ms. Marlow's mouth to support your purported legal conclusion that the drawings at issue were "substantially similar" to the final Bratz product, when in fact Ms. Marlow repeatedly disagreed with your conclusion, stating that:

    Q:    Are they – are they more different or are they more similar?

    A:    They're more different.

Not satisfied with Ms. Marlow's answer, Mr. Zeller repeatedly asked the same question over and over in different formats in a failed attempt to get Ms. Marlow to answer the question to his pleasing. If Mr. Zeller had instead asked direct questions and not wasted time forcing Ms. Marlow to repeat herself multiple times, he would have had more than enough time available to him to ask all of the questions that he believes he needed to.

    Mr. Zeller also complains about Ms. Marlow's testimony at 87:8 – 13, as follows:

    Q:    Did you have some legal questions in your mind at that time prior to the time that you talked to Mr. Contopolous?

This question was part of an improper line of questioning regarding Ms. Marlow's communications with her attorney, Mr. Contopolous. Prior to this question, Ms. Marlow had testified that she was seeking legal representation from Mr. Contopolous regarding this litigation. See *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir.1996) ("A client is entitled to hire a lawyer, and have his secrets kept, for legal advice regarding the client's business affairs.").

    In addition, Ms. Marlow fully answered Mr. Zeller's questions with respect to what questions were in her mind prior to the time that she spoke to Mr. Contopolous as follows:

    Mr. McFarland:    Why don't we read it back.

    (The record was read by the court reporter as follows:

    "Q:    Did you have some questions in your mind at that time prior to the time that you talked to Mr. Contopolous?")

B. Dylan Procter, Esq.
January 16, 2008
Page 8


Mr. McFarland:       Objection, she's asked and answered your questions or mine
                     regarding this litigation. She talked to Mr. Contopolous.

By Mr. Zeller:

Q:   You can go ahead and answer.

A:   I don't have anything to say about that.

Q:   You're refusing to answer the question?

Mr. McFarland:       No, she's already answered your question.

By Mr. Zeller:

Q:   What was it specifically about – tell me everything it was about the litigation
     between Carter Bryant and Mattel that you had on your mind prior to the time that
     you spoke with Mr. Contopolous?

Mr. McFarland:       She's asked and answered the question.

Did you have anything else in your mind other than what you've said?

The Witness:         No.

By Mr. Zeller:

Q:   So it was just that there was litigation and nothing else?

A:   Yes.

Q:   There was nothing in particular?

Mr. McFarland:   .   She's --

The Witness:  No.

Mr. McFarland:       -- answered the question. You have answered the question.

The Witness:  I answered the question.

By Mr. Zeller:

Q:   There was nothing in particular; right?

A:   Right.


## Marital Privilege Instructions


    With respect to the marital privilege issue, I am both surprised and confused by your
continued attempts to limit the marital privilege to criminal cases. As explained in my January 2,
2008, letter to you:

    Federal common law recognizes two distinct forms of marital privilege. The first is the
    privilege against adverse spousal testimony, which invests in the testifying witness the

B. Dylan Procter, Esq.
January 16, 2008
Page 9

> privilege of not being compelled to testify against one's spouse. Trammel v. United States, 445 U.S. 40 (1980). The second is the confidential marital communications privilege, which provides that "[c]ommunications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged," and which may be asserted by either spouse to bar the testimony of the other regarding marital communications made in confidence. Wolfe v. United States, 291 U.S. 7, 14 (1934)....

As I further provided, courts have held that the confidential marital communications privilege "may be asserted by either spouse in both civil and criminal proceedings, while the testimonial privilege ... is recognized only in criminal proceedings." 281 Syosset Woodbury, 862 F. Supp. 847, 852 (E.D.N.Y. 1994); see also Englemann v. Nat'l Broad. Co., Inc., No. 94 Civ, 5616(MBM)(AJP), 1995 WL 214500, at *2 *(S.D.N.Y. Apr. 10, 1995) ("The second of the two federal marital privileges, the spousal confidential communications privilege ... applies in both criminal and civil cases.").

Nevertheless, you continue to allege that I "have not offered any authority supporting the proposition that the marital privilege applies in civil cases." To the contrary, I believe that is exactly what I did and that it is you that have failed to offer any authority supporting the proposition that confidential marital communications, the one form of the privilege that is relevant here, applies only in criminal cases. Instead, you merely re-assert your claim that marital privilege does not apply here and cite to cases which address only the first form of marital privilege, the privilege against adverse spousal testimony. Specifically, your most recent reference to Ryan v. Commissioner of Internal Revenue, 568 F.2d 531, 542 (7th Cir. 1977) demonstrates my point exactly. In your January 11, 2008, letter, you cite Ryan to argue that marital privilege is "only applicable in criminal cases." However, like 281 Syosset Woodbury, Ryan actually supports my position that only the privilege against adverse spousal testimony is limited to criminal cases. In Ryan, the Seventh Circuit affirmed the Tax Court's rejection of "the Ryans' claim of marital privilege because the privilege against *adverse spousal testimony* is only applicable in criminal proceedings." Id. at 537(emphasis added), 542 ("The Tax Court held that the privilege against *adverse spousal testimony* was only available in criminal cases and therefore was not applicable in civil tax proceedings.") (emphasis added).

Moreover, your claim that the three Supreme Court and Ninth Circuit cases cited in my January 2, 2008, letter "each addressed marital privilege within the context of criminal matters, not civil litigation," is misleading. Indeed, while these cases involved criminal proceedings, two of the three addressed the privilege against adverse spousal testimony. Although the third, Wolfe v. United States, 291 U.S. 7, 14 (1934), addressed the confidential marital communications privilege, the Court actually acknowledged that the two forms of marital privilege are in fact distinct. Id. ("Hence it is that the privilege with respect to communications extends to the testimony of husband or wife even though the different privilege, excluding the testimony of one against the other, is not involved."). Thus, you have once again failed to show that the confidential marital communications privilege is limited to criminal cases.

B. Dylan Procter, Esq.
January 16, 2008
Page 10


My responses to the testimony set forth in your letter of January 11, 2008, are set forth below:

Ms. Cloonan's testimony at 38:6-17:

    Q:    Other than Mr. McFarland here, have you discussed the lawsuit with anybody?

    A.:    Not much more than to tell people that I was involved in it; my father, my stepmother, my family, my husband.


This question was answered by Ms. Cloonan, regardless of any instruction.


Ms. Cloonan's testimony at 06:23 – 108:9; see 108:2:


    Q:    What did you and he discuss on that subject?

    A:    I don't recall.


This question was also answered by Ms. Cloonan, regardless of any instruction.


Ms. Cloonan's testimony at 108:11 – 14:


    Q:    Have you discussed this lawsuit with your husband?

    A:    I'm not going to answer that.

    Q:    You can't tell me one way or the other?

    A:    Do I have to? If I have to, I will.

    Mr. McFarland: Well, first of all, it's asked and answered. She's already told you she mentioned to her husband and other people.


As I stated on the record, I reiterate that this question was answered previously in the deposition as set forth above, regardless of any instruction.


Ms. Cloonan's testimony at 109: 1 – 8; see 109:15 – 18:


    Q:    Prior to Christmas of last year, did you discuss this lawsuit with your husband, Mr. Sandham, your current husband?

B. Dylan Procter, Esq.
January 16, 2008
Page 11

       A:    I don't know.

Even assuming that the confidential marriage communications privilege does not apply to domestic partners who subsequently marry, you have failed to meet your burden to establish that this conversation occurred prior to marriage and that it, therefore, may not be protected by the marriage privilege. "When encountering a privilege objection at deposition, examining counsel should insist on making a record that will permit meaningful judicial evaluation of the privilege claim." 7 *Moore's Federal Practice* § 30.43[2] (Matthew Bender 3d ed.). Ms. Cloonan answered that she did not know whether this conversation occurred before or after she was married to her husband. It was Mr. Zeller's responsibility to make the showing that the instruction was improper, and he failed to do so.

### Attorney-Client Privilege Instructions

In your letter dated January 11, 2008, you also claim that Ms. Cloonan was improperly instructed regarding facts disclosed during her conversations with counsel. I am unaware of any ruling by Judge Infante so limiting the attorney client communication privilege. Please provide me with the order you are referring to.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/ccd

cc: Thomas J. Nolan
     Michael Page

Case 2:04-cv-09049-DOC-RNB  Document 2284-3  Filed 02/19/08  Page 20 of 133  Page ID
#:34475
Re: Bryant v. Mattel Case
Case 2:04-cv-09049-SGL-RNB  Document 1724-10  Filed 01/28/2008  Page 21 of 72  Page 1 of 1

## Christopher Price

**From:** Larry W. McFarland [LMcfarland@kmwlaw.com]

**Sent:** Thursday, January 10, 2008 6:57 PM

**To:** Christopher Price

**Cc:** Jon Corey

**Subject:** Re: Bryant v. Mattel Case

I will contact my clients and let you know

----- Original Message -----
From: Christopher Price <chrisprice@quinnemanuel.com>
To: Larry W. McFarland
Cc: Jon Corey <joncorey@quinnemanuel.com>
Sent: Thu Jan 10 16:42:12 2008
Subject: Bryant v. Mattel Case

Mr. McFarland,

I left a message with your office but wanted to follow up with an email.

In light of the order granting additional depositions, will you accept service of deposition subpoenas for Lucy Arant and Sarah Halpern?

If you want to call me, my direct dial is 213-443-3238.


Christopher E. Price
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3238
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: chrisprice@quinnemanuel.com <blocked::mailto:g@quinnemanuel.com>
Web: www.quinnemanuel.com <blocked::http://www.quinnemanuel.com/>


The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

Exhibit C

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

January 23, 2008

WRITER'S DIRECT DIAL
(310) 777-3750
WRITER'S EMAIL
lmcfarland@kmwlaw.com

<u>VIA FACSIMILE</u>
<u>U.S. MAIL and E-MAIL</u>

Diane C. Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

      Re:    <u>Mattel v. Bryant</u>

Dear Diane,

      First, I am confused by your continuing reference in both your letter dated January 14, 2008, and your email dated January 18, 2008, that I have agreed to accept service on behalf of Ms. Marlow and Ms. Leahy of the subpoenas for the further review of the three-dimensional objects attached to your letter dated January 14, 2008 (the "Subpoenas"). As you know, no one at your firm ever asked me if I would accept service of the Subpoenas; therefore, I do not understand why you think it is appropriate to send me confirming letters and confirming emails. However, as you know, I have worked hard throughout this case to try and move the discovery process forward, and as part of my continuing effort to work together cooperatively, I will agree to accept service of these two particular Subpoenas. This agreement is without waiver of my position as communicated to your firm earlier that I am not authorized to accept service of subpoenas for third parties that I represent, including without limitation Ms. Arrant and Ms. Halpern.

      Please find attached our responses and objections to these two Subpoenas. As you will see in our responses, there are no additional three-dimensional objects that fall within the requests set forth in these new Subpoenas beyond those that have already been produced for your inspection in October and December of last year. Notwithstanding the fact that you have already reviewed all of these three-dimensional objects, and notwithstanding the fact that pursuant to your earlier subpoenas we brought all of these three-dimensional objects to the respective depositions of Ms. Marlow and Ms. Leahy, we are willing to again make these objects available

Exhibit C
Page 18

Page 2

for your review in our offices at a time that is convenient for you and us. We are available Friday morning, January 25, 2008, beginning at 10 a.m.

I look forward to hearing from you.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/ccd

cc: Thomas J. Nolan
    Michael Page

Exhibit C
Page 19

Exhibit D

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

January 27, 2008

<u>VIA FACSIMILE</u>
<u>U.S. MAIL and E-MAIL</u>

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:     <u>Mattel v. Bryant</u>

Dear Dylan:

I am writing with regard to your letter of January 23, 2008, regarding the issue of fee agreements and privilege logs. You asked if I wished to voluntarily produce my clients' fee agreements without the need for motion practice and whether I will produce a log of withheld documents as well.

I would like to direct your attention to my letter to you dated January 16, 2008, and reiterate my position with regard to retainer letters. As I stated in my letter of December 18, 2008, reiterated in our meet and confer on January 11, 2008, and again restated in my last letter on this issue of January 16, 2008, if Mattel agrees that the orders entered by Judge Infante require Mattel to produce all retainer letters relating to non-parties and if in fact Mattel produces such retainer letters, I will also agree to produce the retainer letters for my third party clients. I await your response to this question. I am still unclear as to what Mattel's interpretation of Judge Infante's order with respect to retainer letters for non-parties is.

With regard to the production of any privilege logs, I also reiterate my position as stated in my letter of January 16, 2008, that the purpose of a privilege log is to make the receiving party aware of any documents that the producing party is withholding based upon privilege. You are aware that I am withholding the retainer letters, and the purpose of the privilege log is therefore

B. Dylan Procter, Esq.
January 27, 2008
Page 2

satisfied. Any demand that I produce a privilege log for the purpose of identifying the retainer letters is unduly burdensome on my clients as I have explained to you on numerous occasions.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/ccd

cc:  Thomas J. Nolan
      Michael Page

EXHIBIT E REMOVED

PURSUANT TO PROTECTIVE ORDER

EXHIBIT F REMOVED

PURSUANT TO PROTECTIVE ORDER

# EXHIBIT G REMOVED
# PURSUANT TO PROTECTIVE ORDER

EXHIBIT H REMOVED

PURSUANT TO PROTECTIVE ORDER

Exhibit I



*LIBRARY OF CONGRESS*

*Copyright Office*

*of the United States*

*WASHINGTON, D.C.*

**THIS IS TO CERTIFY** that the attached additional certificate is a claim of copyright for the work entitled **JADE DRAWING** registered under number **VA 1-218-487**.

**THIS IS TO CERTIFY ALSO** that the attached photocopies are a true representation of the work entitled **JADE DRAWING** deposited in the Copyright Office on December 22, 2003 registered under number **VA 1-218-487**.

**IN WITNESS WHEREOF**, the seal of this Office is affixed hereto on May 17, 2004.

Marybeth Peters
Register of Copyrights

By:   Tracie M. Coleman
Head
Certifications and Documents
Section
Information and Reference
Division

Use of this material is governed by the U. S. copyright law 17 U.S.C. 101 et seq.



Δ·π EXHIBIT 505
Deponent ARMSTRONG
Date 7/8/07 Rptr. ACC
WWW.DEPOBOOK.COM

**M 0110179**

Exhibit I
Page 209

**Additional Certificate (17 U.S.C. 706)**
Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

**VA 1-218-487**

EFFECTIVE DATE OF REGISTRATION

**DEC 2 2 2003**
Month        Day        Year

---

**DO NOT WRITE ABOVE THIS LINE  IF YOU NEED MORE SPACE  USE A SEPARATE CONTINUATION SHEET**

## 1

**Title of This Work ▼**

JADE Drawing

**NATURE OF THIS WORK ▼** See instructions

color drawing

**Previous or Alternative Titles ▼**

**Publication as a Contribution** If this work was published as a contribution to a periodical serial or collection give information about the collective work in which the contribution appeared  Title of Collective Work ▼

If published in a periodical or serial give  Volume ▼        Number ▼        Issue Date ▼        On Pages ▼

## 2

**NAME OF AUTHOR ▼**

a  Carter Bryant

**DATES OF BIRTH AND DEATH**
Year Born ▼        Year Died ▼

**NOTE**

Under the law the author of a work made for hire is generally the employer not the employee (see instructions) For any part of this work that was made for hire check Yes in the space provided give the employer (or other person for whom the work was prepared) as Author of that part and leave the space for dates of birth and death blank

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

**Author s Nationality or Domicile**
Name of Country
OR { Citizen of   U.S.A.
{ Domiciled in _____

**Was This Author s Contribution to the Work**
Anonymous?       ☐ Yes  ☑ No
Pseudonymous?   ☐ Yes  ☑ No
If the answer to either of these questions is Yes  see detailed instructions

**Nature of Authorship** Check appropriate box(es) **See Instructions**
☐ 3 Dimensional sculpture      ☐ Map              ☐ Technical drawing
☑ 2 Dimensional artwork         ☐ Photograph     ☐ Text
☐ Reproduction of work of art   ☐ Jewelry design  ☐ Architectural work

b  **Name of Author ▼**

**Dates of Birth and Death**
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**Author s Nationality or Domicile**
Name of Country
OR { Citizen of _____
{ Domiciled in _____

**Was This Author s Contribution to the Work**
Anonymous?       ☐ Yes  ☐ No
Pseudonymous?   ☐ Yes  ☐ No
If the answer to either of these questions is Yes  see detailed instructions

**Nature of Authorship** Check appropriate box(es) **See Instructions**
☐ 3 Dimensional sculpture      ☐ Map              ☐ Technical drawing
☐ 2 Dimensional artwork         ☐ Photograph     ☐ Text
☐ Reproduction of work of art   ☐ Jewelry design  ☐ Architectural work

## 3

a  **Year in Which Creation of This Work Was Completed**
1998
This information must be given  Year in all cases

b  **Date and Nation of First Publication of This Particular Work**
Complete this information ONLY if this work has been published
Month February    Day 12    Year 2001
U.S.A.          Nation

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2 ▼

MGA Entertainment Inc  16730 Schoenborn Street
North Hills  CA  91343 6122

**APPLICATION RECEIVED**
DEC 22 2003
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
DEC 22 2003
FUNDS RECEIVED

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2  give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

Assignment

---

**MORE ON BACK ▶**   Complete all applicable spaces (numbers 5-9) on the reverse side of this page
See detailed instructions       Sign the form at line 8

**DO NOT WRITE HERE**
Page 1 of ___ pages

Exhibit I
Page 210

M 0110180

EXAMINED BY

CHECKED BY

☐ CORRESPONDENCE
   Yes

FORM VA

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes  ☑ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a ☐ This is the first published edition of a work previously registered in unpublished form.

b ☐ This is the first application submitted by this author as copyright claimant.

c ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼                **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

b **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**

a

See instructions
before completing
this space.

b

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
**Name** ▼                                                                          **Account Number** ▼

**7**

a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

Larry W. McFarland   Keats McFarland & Wilson LLP
9720 Wilshire Boulevard, Penthouse Suite
Beverly Hills, California 90212

b

Area code and daytime telephone number  ( 310 ) 248 3830                        Fax number  ( 310 ) 860 0363

Email  lmcfarland@kmwlaw.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of  MGA Entertainment, Inc.
   Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**8**

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Larry W. McFarland                                              Date  December 16, 2003

Handwritten signature (X) ▼

X _____

**Certificate will be mailed in window envelope to this address**

**Name** ▼
Larry W. McFarland   Keats McFarland & Wilson LLP

**Number/Street/Apt** ▼
9720 Wilshire Boulevard, Penthouse Suite

**City/State/ZIP** ▼
Beverly Hills, California 90212

**YOU MUST:**
Complete all necessary spaces
Sign your application in space 8

**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1 Application form
2 Nonrefundable filing fee in check or money order payable to Register of Copyrights
3 Deposit material

**MAIL TO:**
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

**9**

17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev. June 2002—20,000  Web Rev. June 2002  ⊕ Printed on recycled paper                        U.S. Government Printing Office: 2000-461-113/20,031

**Exhibit I**
**Page 211**

M 0110181

VA 1-218-487



M 0110182

Exhibit I
Page 212



Exhibit I
Page 213

M 0110183



LIBRARY OF CONGRESS

*Copyright Office*
*of the United States*
WASHINGTON, D.C.

**THIS IS TO CERTIFY** that the attached additional certificate is a claim of copyright for the work entitled **SASHA DRAWING** registered under number **VA 1-218-488**.

**THIS IS TO CERTIFY ALSO** that the attached photocopies are a true representation of the work entitled **SASHA DRAWING** deposited in the Copyright Office on December 22, 2003 registered under number **VA 1-218-488**.

**IN WITNESS WHEREOF**, the seal of this Office is affixed hereto on May 17, 2004.

Marybeth Peters
Register of Copyrights

By:    Tracie M. Coleman
       Head
       Certifications and Documents
       Section
       Information and Reference
       Division

Use of this material is governed by the U. S. copyright law 17 U.S.C. 101 et seq.



M 0110184

Exhibit I
Page 214

**Additional Certificate (17 U.S.C. 706)**
Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17 United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

**VA 1-218-488**

EFFECTIVE DATE OF REGISTRATION

**DEC 22 2003**
Month       Day       Year

---

DO NOT WRITE ABOVE THIS LINE  IF YOU NEED MORE SPACE  USE A SEPARATE CONTINUATION SHEET

**1** Title of This Work ▼

SASHA Drawing

NATURE OF THIS WORK ▼ See instructions

color drawing

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared  Title of Collective Work ▼

If published in a periodical or serial give  Volume ▼   Number ▼   Issue Date ▼   On Pages ▼

**2** NAME OF AUTHOR ▼

**a** Carter Bryant

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

Author's Nationality or Domicile
Name of Country
OR ☐ Citizen of ___ U.S.A. ___
☐ Domiciled in ___

Was This Author's Contribution to the Work
Anonymous?   ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**
Under the law, the author of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was made for hire check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

Nature of Authorship  Check appropriate box(es)  See instructions
☐ 3 Dimensional sculpture   ☐ Map   ☐ Technical drawing
☑ 2 Dimensional artwork   ☐ Photograph   ☐ Text
☐ Reproduction of work of art   ☐ Jewelry design   ☐ Architectural work

**b** Name of Author ▼

Dates of Birth and Death
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR ☐ Citizen of ___
☐ Domiciled in ___

Was This Author's Contribution to the Work
Anonymous?   ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship  Check appropriate box(es)  See instructions
☐ 3 Dimensional sculpture   ☐ Map   ☐ Technical drawing
☐ 2 Dimensional artwork   ☐ Photograph   ☐ Text
☐ Reproduction of work of art   ☐ Jewelry design   ☐ Architectural work

**3**
**a** Year in Which Creation of This Work Was Completed
1998
This information must be given in all cases.
Year in all cases.

**b** Date and Nation of First Publication of This Particular Work
Complete this information  Month February  Day 12  Year 2001
ONLY if this work has been published.
U.S.A.
Nation

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼

MGA Entertainment Inc  16730 Schoenborn Street
North Hills  CA  91343 6122

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2 give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

Assignment

APPLICATION RECEIVED
DEC 22 2003
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
DEC 22 2003
FUNDS RECEIVED

---

MORE ON BACK ▶  Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
See detailed instructions.   Sign the form at line 8

DO NOT WRITE HERE
Page 1 of ___ pages

M 0110185

Exhibit I
Page 215

VA 1-218-488



Exhibit I
Page 216

M 0110186



M 0110187

Exhibit I
Page 217



LIBRARY OF CONGRESS

*Copyright Office*
*of the United States*

WASHINGTON, D.C.

THIS IS TO CERTIFY that the attached additional certificate is a claim of copyright for the work entitled CLOE DRAWING registered under number VA 1-218-490.

THIS IS TO CERTIFY ALSO    that   the attached photocopies are a true representation of the work entitled CLOE DRAWING deposited in the Copyright Office on December 22, 2003 registered under number VA 1-218-490.

IN WITNESS WHEREOF, the seal of this Office is affixed hereto on May 17, 2004.

Marybeth Peters
Register of Copyrights

By:   Tracie M. Coleman
Head
Certifications and Documents Section
Information and Reference Division

Use of this material is governed by the U. S. copyright law 17 U.S.C. 101 et seq.



Exhibit I
Page 218

M 0110193

**Additional Certificate (17 U.S.C. 706)**

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

VA 1-218-490



EFFECTIVE DATE OF REGISTRATION

**DEC 2 2 2003**

Month          Day          Year

---

DO NOT WRITE ABOVE THIS LINE  IF YOU NEED MORE SPACE  USE A SEPARATE CONTINUATION SHEET

**1**

Title of This Work ▼

CLOE Drawing

NATURE OF THIS WORK ▼ See instructions

color drawing

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared  Title of Collective Work ▼

If published in a periodical or serial give  Volume ▼     Number ▼          Issue Date ▼          On Pages ▼

**2**

NAME OF AUTHOR ▼

**a** Carter Bryant

DATES OF BIRTH AND DEATH
Year Born ▼     Year Died ▼

**NOTE**

Under the law the author of a work made for hire is generally the employer not the employee (see instructions) For any part of this work that was made for hire check Yes in the space provided give the employer (or other person for whom the work was prepared) as Author of that part and leave the space for dates of birth and death blank

Was this contribution to the work a work made for hire *
☐ Yes
☑ No

Author s Nationality or Domicile
Name of Country
OR { Citizen of ___ U.S.A.
     Domiciled in ___

Was This Author s Contribution to the Work
Anonymous?     ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No

If the answer to either of these questions is "Yes" see detailed instructions

Nature of Authorship Check appropriate box(es) See Instructions
☐ 3 Dimensional sculpture        ☐ Map                ☐ Technical drawing
☑ 2 Dimensional artwork          ☐ Photograph         ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design     ☐ Architectural work

**b** Name of Author ▼

Dates of Birth and Death
Year Born ▼     Year Died ▼

Was this contribution to the work a
work made for hire *
☐ Yes
☐ No

Author s Nationality or Domicile
Name of Country
OR { Citizen of ___
     Domiciled in ___

Was This Author s Contribution to the Work
Anonymous?     ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No

If the answer to either of these questions is "Yes" see detailed instructions

Nature of Authorship Check appropriate box(es) See Instructions
☐ 3 Dimensional sculpture        ☐ Map                ☐ Technical drawing
☐ 2 Dimensional artwork          ☐ Photograph         ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design     ☐ Architectural work

**3**

**a** Year in Which Creation of This Work Was Completed
1998
This information must be given
Year in all cases

**b** Date and Nation of First Publication of This Particular Work
Complete this information Month February  Day 12  Year 2001
ONLY if this work has been published  U.S.A.                 Nation

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼

MGA Entertainment Inc  16730 Schoenborn Street
North Hills CA  91343 6122

APPLICATION RECEIVED
DEC 22 2003
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
DEC 22 2003
FUNDS RECEIVED

See instructions before completing this space

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2  give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

Assignment

---

MORE ON BACK ▶  Complete all applicable spaces (numbers 5-8) on the reverse side of this page
See detailed instructions     Sign the form at line 8

DO NOT WRITE HERE
Page 1 of ___ pages

Exhibit I
Page 219

M 0110194

EXAMINED BY

CHECKED BY

☐ CORRESPONDENCE
Yes

FORM VA

FOR COPYRIGHT OFFICE USE ONLY

**DO NOT WRITE ABOVE THIS LINE  IF YOU NEED MORE SPACE  USE A SEPARATE CONTINUATION SHEET**

**PREVIOUS REGISTRATION** Has registration for this work or for an earlier version of this work already been made in the Copyright Office?

☐ Yes  ☑ No  If your answer is "Yes" why is another registration being sought? (Check appropriate box) ▼

a ☐ This is the first published edition of a work previously registered in unpublished form

b ☐ This is the first application submitted by this author as copyright claimant

c ☐ This is a changed version of the work as shown by space 6 on this application

If your answer is "Yes" give  Previous Registration Number ▼          Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work  complete only 6b for a compilation

a Preexisting Material Identify any preexisting work or works that this work is based on or incorporates ▼

b Material Added to This Work Give a brief general statement of the material that has been added to this work and in which copyright is claimed ▼

**6**

a
b

See instructions before completing this space

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office give name and number of Account
Name ▼          Account Number ▼

**7**

a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent  Name/Address/Apt/City/State/ZIP ▼

Larry W McFarland   Keats McFarland & Wilson LLP
9720 Wilshire Boulevard  Penthouse Suite
Beverly Hills  California  90212

b

Area code and daytime telephone number   ( 310 ) 248 3830          Fax number   ( 310 ) 860 0363

Email   lmcfarland@kmwlaw com

**CERTIFICATION*** I the undersigned  hereby certify that I am the

check only one ▶

☐ author
☐ other copyright claimant
☐ owner of exclusive rights
☑ authorized agent of   MGA Entertainment  Inc
Name of author or other copyright claimant  or owner of exclusive rights A

**8**

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge

Typed or printed name and date ▼ If this application gives a date of publication in space 3  do not sign and submit it before that date

Larry W  McFarland          Date   December 16  2003

Handwritten signature (X) ▼

X

Certificate will be mailed in window envelope to this address

Name ▼
Larry W  McFarland   Keats McFarland & Wilson LLP

Number/Street/Apt ▼
9720 Wilshire Boulevard  Penthouse Suite

City/State/ZIP ▼
Beverly Hills  California  90212

**9**

YOU MUST
Complete all necessary spaces
Sign your application in space 8

SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE
1 Application form
2 Nonrefundable filing fee in check or money order payable to Register of Copyrights
3 Deposit material

MAIL TO
Library of Congress
Copyright Office
101 Independence Avenue  S E
Washington  D C  20559-6000

17 U S C § 506(e)  Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409  or in any written statement filed in connection with the application  shall be fined not more than $2 500

Rev June 2002—20 000   Web Rev June 2002   ♻ Printed on recycled paper

U S Government Printing Office  2000 461 113/20 021

**Exhibit I
Page 220**

M 0110195

VA 1-218-490



M 0110196

Exhibit I
Page 221



Exhibit I
Page 222

M 0110197



LIBRARY OF CONGRESS

*Copyright Office*
*of the United States*

WASHINGTON, D.C.

**THIS IS TO CERTIFY** that the attached additional certificate is a claim of copyright for the work entitled **YASMIN DRAWING** registered under number **VA 1-218-491.**

**THIS IS TO CERTIFY ALSO** that the attached photocopies are a true representation of the work entitled **YASMIN DRAWING** deposited in the Copyright Office on December 22, 2003 registered under number **VA 1-218-491.**

**IN WITNESS WHEREOF**, the seal of this Office is affixed hereto on May 17, 2004.

Marybeth Peters
Register of Copyrights

By:   Tracie M. Coleman
Head
Certifications and Documents
Section
Information and Reference
Division

Use of this material is governed by the U. S. copyright law 17 U.S.C. 101 et seq.

EXHIBIT 511
Deponent ARMSTRONG
Date 7/18/07 Rptr. ACC
WWW.DEPOBOOK.COM

M 0110198

Exhibit I
Page 223

Additional Certificate (17 U.S.C. 706)
## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

**VA 1-218-491**

EFFECTIVE DATE OF REGISTRATION

**DEC 2 2 2003**
Month          Day          Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE USE A SEPARATE CONTINUATION SHEET**

**1**

Title of This Work ▼

YASMIN Drawing

NATURE OF THIS WORK ▼ See instructions

color drawing

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give  Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

**2**
**a**

NAME OF AUTHOR ▼

Carter Bryant

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

**NOTE**

Under the law the author of a work made for hire is generally the employer not the employee (see instructions). For any part of this work that was made for hire check Yes in the space provided give the employer (or other person for whom the work was prepared) as Author of that part and leave the space for dates of birth and death blank.

Was this contribution to the work a work made for hire?
☐ Yes
☑ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of USA
Domiciled in

Was This Author's Contribution to the Work
Anonymous?    ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No
If the answer to either of these questions is "Yes," see detailed instructions

Nature of Authorship Check appropriate box(es). See Instructions
☐ 3 Dimensional sculpture
☑ 2 Dimensional artwork
☐ Reproduction of work of art
☐ Map
☐ Photograph
☐ Jewelry design
☐ Technical drawing
☐ Text
☐ Architectural work

**b**

Name of Author ▼

Dates of Birth and Death
Year Born ▼    Year Died ▼

Was this contribution to the work a work made for hire?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of
Domiciled in

Was This Author's Contribution to the Work
Anonymous?    ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions

Nature of Authorship Check appropriate box(es). See Instructions
☐ 3 Dimensional sculpture
☐ 2 Dimensional artwork
☐ Reproduction of work of art
☐ Map
☐ Photograph
☐ Jewelry design
☐ Technical drawing
☐ Text
☐ Architectural work

**3**
**a**

Year in Which Creation of This Work Was Completed
1998
This information must be given
Year in all cases

**b**
Date and Nation of First Publication of This Particular Work
Complete this information ONLY if this work has been published.
Month February   Day 12   Year 2001
Nation U.S.A.

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼

MGA Entertainment Inc   16730 Schoenborn Street
North Hills CA 91343 6122

See instructions before completing this space

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2 give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

Assignment

APPLICATION RECEIVED
DEC 2 2 2003
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
DEC 2 2 2003
FUNDS RECEIVED

DO NOT WRITE HERE

**MORE ON BACK ▶**   Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
See detailed instructions.   Sign the form at line 8

DO NOT WRITE HERE
Page 1 of ___ pages

M 0110199

Exhibit I
Page 224

| EXAMINED BY | | FORM VA |
|---|---|---|
| CHECKED BY | | |
| □ CORRESPONDENCE Yes | | FOR COPYRIGHT OFFICE USE ONLY |

DO NOT WRITE ABOVE THIS LINE  IF YOU NEED MORE SPACE  USE A SEPARATE CONTINUATION SHEET

**PREVIOUS REGISTRATION** Has registration for this work  or for an earlier version of this work  already been made in the Copyright Office?

□ Yes  □ No  If your answer is  Yes   why is another registration being sought? (Check appropriate box ) ▼

a  □ This is the first published edition of a work previously registered in unpublished form

b  □ This is the first application submitted by this author as copyright claimant

c  □ This is a changed version of the work  as shown by space 6 on this application

If your answer is  Yes   give  Previous Registration Number ▼                      Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work  complete only 6b for a compilation

a  Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates ▼

**a**  **6**

See instructions before completing this space

b  Material Added to This Work  Give a brief  general  statement of the material that has been added to this work and in which copyright is claimed ▼

**b**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office  give name and number of Account

Name ▼                                                                 Account Number ▼

**a**  **7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent Name/Address/Apt/City/State/ZIP ▼

Larry W  McFarland  Keats  McFarland & Wilson LLP
9720 Wilshire Boulevard  Penthouse Suite
Beverly Hills  California  90212

**b**

Area code and daytime telephone number    ( 310 ) 248 3830                    Fax number        ( 310 ) 860 0363

Email  lmcfarland@kmwlaw com

**CERTIFICATION*** I  the undersigned  hereby certify that I am the

check only one ▶

□ author
□ other copyright claimant
□ owner of exclusive right(s)
☑ authorized agent of  MGA Entertainment  Inc

Name of author or other copyright claimant  or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3  do not sign and submit it before that date

Larry W  McFarland                                                      Date  December 16  2003

Handwritten signature (X) ▼

X

| Certificate will be mailed in window envelope to this address | Name ▼ Larry W  McFarland  Keats  McFarland & Wilson LLP | **9** |
|---|---|---|
| | Number/Street/Apt ▼ 9720 Wilshire Boulevard  Penthouse Suite | |
| | City/State/ZIP ▼ Beverly Hills  California  90212 | |

17 U S C § 506(e)  Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409  or in any written statement filed in connection with the application  shall be fined not more than $2,500

Rev June 2002—20,000   Web Rev June 2002   ♻ Printed on recycled paper                    U S Government Printing Office 2000-461 113/20 021

M 0110200

Exhibit I
Page 225

VA 1−218−491



M 0110201

Exhibit I
Page 226



M 0110202

Exhibit I
Page 227



LIBRARY OF CONGRESS

*Copyright Office*
*of the United States*

WASHINGTON, D.C.

**THIS IS TO CERTIFY** that the attached additional certificate is a claim of copyright for the work entitled **BRATZ GROUP DRAWING** registered under number **VA 1-218-489.**

**THIS IS TO CERTIFY ALSO** that the attached photocopies are a true representation of the work entitled **BRATZ GROUP DRAWING** deposited in the Copyright Office on December 22, 2003 registered under number **VA 1-218-489.**

**IN WITNESS WHEREOF**, the seal of this Office is affixed hereto on May 17, 2004.

Marybeth Peters
Register of Copyrights

By:   Tracie M. Coleman
Head
Certifications and Documents
Section
Information and Reference
Division

Use of this material is governed by the U. S. copyright law 17 U.S.C. 101 et seq.



M 0110188

Exhibit I
Page 228

**Additional Certificate (17 U.S.C. 706)**
Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM VA**
For a Work of the Visual Arts

VA 1-218-489

EFFECTIVE DATE OF REGISTRATION

DEC 2 2 2003
Month        Day        Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

**1**

Title of This Work ▼

BRATZ Group Drawing

NATURE OF THIS WORK ▼ See instructions

color drawing

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give  Volume ▼        Number ▼        Issue Date ▼        On Pages ▼

---

**2**
**a**

NAME OF AUTHOR ▼

Carter Bryant

DATES OF BIRTH AND DEATH
Year Born ▼        Year Died ▼

**NOTE**

Under the law, the author of a work made for hire is generally the employer, not the employee (see instructions). For any part of this work that was made for hire, check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of ___ USA
{ Domiciled in ___

Was This Author's Contribution to the Work
Anonymous?        ☐ Yes  ☑ No
Pseudonymous?      ☐ Yes  ☑ No

If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate box(es) See Instructions
☐ 3-Dimensional sculpture        ☐ Map                ☐ Technical drawing
☑ 2-Dimensional artwork          ☐ Photograph          ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design      ☐ Architectural work

**b**

Name of Author ▼

Dates of Birth and Death
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of ___
{ Domiciled in ___

Was This Author's Contribution to the Work
Anonymous?        ☐ Yes  ☐ No
Pseudonymous?      ☐ Yes  ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate box(es) See Instructions
☐ 3-Dimensional sculpture        ☐ Map                ☐ Technical drawing
☐ 2-Dimensional artwork          ☐ Photograph          ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design      ☐ Architectural work

---

**3**
**a**

Year in Which Creation of This Work Was Completed
1998
This information must be given Year in all cases.

**b**

Date and Nation of First Publication of This Particular Work
Complete this information ONLY if this work has been published.
Month February  Day 12  Year 2001
U.S.A.
Nation

---

**4**

See instructions before completing this space.

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

MGA Entertainment Inc  16730 Schoenborn Street
North Hills CA 91343 6122

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

Assignment

APPLICATION RECEIVED
DEC 2 2 2003
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
DEC 2 2 2003
FUNDS RECEIVED

---

**MORE ON BACK ▶**  Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
See detailed instructions.        Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

Exhibit I
Page 229

M 0110189

EXAMINED BY

CHECKED BY

☐ CORRESPONDENCE
☐ Yes

FORM VA

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE  IF YOU NEED MORE SPACE  USE A SEPARATE CONTINUATION SHEET**

PREVIOUS REGISTRATION Has registration for this work  or for an earlier version of this work  already been made in the Copyright Office?

☐ Yes  ☑ No  If your answer is  Yes   why is another registration being sought  (Check appropriate box )▼

a ☐ This is the first published edition of a work previously registered in unpublished form

b ☐ This is the first application submitted by this author as copyright claimant

c ☐ This is a changed version of the work  as shown by space 6 on this application

If your answer is  Yes   give  Previous Registration Number ▼          Year of Registration ▼

**5**

DERIVATIVE WORK OR COMPILATION  Complete both space 6a and 6b for a derivative work  complete only 6b for a compilation

a Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates ▼

b Material Added to This Work  Give a brief  general statement of the material that has been added to this work and in which copyright is claimed ▼

**6**

a  See instructions before completing this space

b

DEPOSIT ACCOUNT  If the registration fee is to be charged to a Deposit Account established in the Copyright Office  give name and number of Account
Name ▼          Account Number ▼

**7**

a

CORRESPONDENCE  Give name and address to which correspondence about this application should be sent  Name/Address/Apt/City/State/ZIP ▼

Larry W  McFarland   Keats  McFarland & Wilson  LLP
9720 Wilshire Boulevard  Penthouse Suite
Beverly Hills  California  90212

b

Area code and daytime telephone number      ( 310 ) 248 3830          Fax number      ( 310 ) 860 0363

Email  lmcfarland@kmwlaw com

CERTIFICATION  I  the undersigned  hereby certify that I am the

check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of  MGA Entertainment  Inc
Name of author or other copyright claimant  or owner of exclusive right(s)  ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3  do not sign and submit it before that date

Larry W  McFarland          Date  December 16 2003

Handwritten signature (X) ▼

X _____

Certificate
will be
mailed in
window
envelope
to this
address

Name ▼
Larry W  McFarland   Keats  McFarland & Wilson  LLP

Number/Street/Apt ▼
9720 Wilshire Boulevard  Penthouse Suite

City/State/ZIP ▼
Beverly Hills  California  90212

**9**

YOU MUST
Complete all necessary spaces
Sign your application in space 8
SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE
1 Application form
2 Nonrefundable filing fee in check or money
order payable to Register of Copyrights
3 Deposit material
MAIL TO
Library of Congress
Copyright Office
101 Independence Avenue  S E
Washington  D C  20559-6000

17 U S C § 506(e)  Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409  or in any written statement filed in connection with the application  shall be fined not more than $2 500

Rev  June 2002—20 000   Web Rev  June 2002   ☺ Printed on recycled paper                    U S  Government Printing Office  2000 461 113/20 021

Exhibit I
Page 230

M 0110190

VA 1-218-489



Exhibit I
Page 231

M 0110191



Exhibit I
Page 232

M 0110192

Exhibit J



LIBRARY OF CONGRESS

*Copyright Office*
*of the United States*

WASHINGTON D.C.

THIS IS TO CERTIFY that the attached additional certificate is a claim of copyright for the work entitled JADE DOLL CONFIGURATION, ACCESSORIES AND PACKAGING registered under number VA 1-090-287.

THIS IS TO CERTIFY ALSO   that   the attached photocopies are a true representation of the work entitled JADE DOLL CONFIGURATION, ACCESSORIES AND PACKAGING deposited in the Copyright Office on July 18, 2001 registered under number VA 1-090-287.

IN WITNESS WHEREOF, the seal of this Office is affixed hereto on May 17, 2004.

Marybeth Peters
Register of Copyrights

By.   Tracie M. Coleman
Head
Certifications and Documents
Section
Information and Reference
Division

Use of this material is governed by the U. S. copyright law 17 U.S.C. 101 et seq.

Δ π EXHIBIT 557
Deponent Armstrong
Date 3/1/07 Rptr. AC
WWW.DEPOBOOK.COM

M 0110155

# Additional Certificate (17 U.S.C. 706)
## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM VA**
**For a Work of the Visual Arts**
UNITED STATES COPYRIGHT OFFICE

VA 1–090–287

EFFECTIVE DATE OF REGISTRATION

JUN 1 8 2001

Month        Day        Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**TITLE OF THIS WORK ▼**                     **NATURE OF THIS WORK ▼** See instructions

Jade Doll Configuration, Accessories and Packaging

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.   **Title of Collective Work ▼**

If published in a periodical or serial give   **Volume ▼**     **Number ▼**          **Issue Date ▼**        **On Pages ▼**

---

**NAME OF AUTHOR ▼**                                                    **DATES OF BIRTH AND DEATH**
ABC International Traders, Inc. d/b/a                                 Year Born ▼        Year Died ▼
MGA Entertainment

**NOTE**

| Was this contribution to the work a "work made for hire"? | Author's Nationality or Domicile Name of Country | Was This Author's Contribution to the Work |
|---|---|---|
| ☒ Yes | OR { Citizen of ▶ | Anonymous?  ☐ Yes  ☒ No   If the answer to either of these questions is "Yes," see detailed instructions. |
| ☐ No | Domiciled in ▶ U.S.A. | Pseudonymous?  ☐ Yes  ☒ No |

**NATURE OF AUTHORSHIP** Check appropriate boxes. **See Instructions**
☒ 3-Dimensional sculpture      ☐ Map              ☐ Technical drawing
☐ 2-Dimensional artwork        ☐ Photograph       ☐ Text
☐ Reproduction of work of art  ☐ Jewelry design   ☐ Architectural work

**NAME OF AUTHOR ▼**                                                    **DATES OF BIRTH AND DEATH**
                                                                       Year Born ▼        Year Died ▼

| Was this contribution to the work a "work made for hire"? | Author's Nationality or Domicile Name of Country | Was This Author's Contribution to the Work |
|---|---|---|
| ☐ Yes | OR { Citizen of ▶ | Anonymous?  ☐ Yes  ☐ No   If the answer to either of these questions is "Yes," see detailed instructions. |
| ☐ No | Domiciled in ▶ | Pseudonymous?  ☐ Yes  ☐ No |

**NATURE OF AUTHORSHIP** Check appropriate boxes. **See Instructions**
☐ 3-Dimensional sculpture      ☐ Map              ☐ Technical drawing
☐ 2-Dimensional artwork        ☐ Photograph       ☐ Text
☐ Reproduction of work of art  ☐ Jewelry design   ☐ Architectural work

---

| Year in Which Creation of This Work Was Completed | Date and Nature of First Publication of This Particular Work |
|---|---|
| 2000 ◄ Year   This information must be given in all cases. | Complete this information ONLY if this work has been published.  Day ▶ February   Day ▶ 12   Year ▶ 2001   Nation ◀ United States of America |

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2 ▼
ABC International Traders, Inc. d/b/a
MGA Entertainment
16730 Schoenborn Street, North Hills, CA 91343

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
ONE DEPOSIT RECEIVED
JUL 18 2001
TWO DEPOSITS RECEIVED
FUNDS RECEIVED

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.   • See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

M 0110156

EXAMINED BY _____   FORM VA

CHECKED BY _____

☐ CORRESPONDENCE
☐ Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼        Year of Registration ▼

DERIVATIVE WORK OR COMPILATION Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

DEPOSIT ACCOUNT If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼        Account Number ▼

CORRESPONDENCE Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/ZIP ▼
Lucy B. Arant c/o Russ, August, Kabat & Kent
12424 Wilshire Boulevard, Suite 1200
Los Angeles, California  90025

Area code and daytime telephone number ► (310) 826-7474, ext. 278        Fax number ► (310) 826-4415
Email ► larant@raklaw.com

CERTIFICATION* I, the undersigned, hereby certify that I am the
check only one ►
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of ___ ABC International Traders, Inc.
Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Lucy B. Arant        Date ► 7/18/01

Handwritten signature (X) ▼
X _Lucy B Arant_

Certificate will be mailed in window envelope to this address:
Name ▼
Lucy B. Arant c/o Russ, August, Kabat & Kent
Number/Street/Apt ▼
12424 Wilshire Boulevard, Suite 1200
City/State/ZIP ▼
Los Angeles, California  90025

**YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 8

**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

As of July 1, 1999, the filing fee for Form VA is $30.

**MAIL TO:**
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

9

*17 U.S.C § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.
June 1999—100,000    ♻ PRINTED ON RECYCLED PAPER        ☆U.S. GOVERNMENT PRINTING OFFICE: 1999-454-879/74

M 0110157







555-4

M 0110158







M 0110159



LIBRARY OF CONGRESS

*Copyright Office*
*of the United States*

WASHINGTON, D.C.

**THIS IS TO CERTIFY** that the attached additional certificate is a claim of copyright for the work entitled **SASHA DOLL CONFIGURATION, ACCESSORIES AND PACKAGING** registered under number **VA 1-090-288.**

**THIS IS TO CERTIFY ALSO** that the attached photocopy is a true representation of the work entitled **SASHA DOLL CONFIGURATION, ACCESSORIES AND PACKAGING** deposited in the Copyright Office on July 18, 2001 registered under number **VA 1-090-288.**

**IN WITNESS WHEREOF**, the seal of this Office is affixed hereto on May 17, 2004

Marybeth Peters
Register of Copyrights

By: Tracie M. Coleman
Head
Certifications and Documents
Section
Information and Reference
Division

Use of this material is governed by the U. S. copyright law 17 U.S.C. 101 et seq.

Δ π EXHIBIT 559
Deponent Ap.n str.n x
Date 8/1/07  Rptr. AC
WWW.DEPOBOOK.COM

M 0110160

**Additional Certificate (17 U.S.C. 706)**
Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, United States Code,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

---

**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

**VA 1-090-288**

EFFECTIVE DATE OF REGISTRATION

**JUN 18 2001**

| Month | Day | Year |

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**TITLE OF THIS WORK ▼**          **NATURE OF THIS WORK ▼** See instructions

Sasha Doll Configuration, Accessories and Packaging

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.   **Title of Collective Work ▼**

If published in a periodical or serial give **Volume ▼**   **Number ▼**   **Issue Date ▼**   **On Pages ▼**

---

**NAME OF AUTHOR ▼**
ABC International Traders, Inc. d/b/a
MGA Entertainment

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ▶
Domiciled in ▶ U.S.A.

**Was This Author's Contribution to the Work**
Anonymous?   ☐ Yes  ☒ No
Pseudonymous?  ☐ Yes  ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Check appropriate box(es)  **See instructions**
☒ 3-Dimensional sculpture        ☐ Map              ☐ Technical drawing
☐ 2-Dimensional artwork          ☐ Photograph       ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design   ☐ Architectural work

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

---

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**Was This Author's Contribution to the Work**
Anonymous?   ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Check appropriate box(es)  **See instructions**
☐ 3-Dimensional sculpture        ☐ Map              ☐ Technical drawing
☐ 2-Dimensional artwork          ☐ Photograph       ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design   ☐ Architectural work

---

**Year in Which Creation of This Work Was Completed**
2000
This information must be given in all cases.

b **Date and Nation of First Publication of This Particular Work**
Complete this information ONLY if this work has been published.
Month ▶ February   Day ▶ 12   Year ▶ 2001
United States of America   ◀ Nation

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2 ▼
ABC International Traders, Inc. d/b/a
MGA Entertainment
16730 Schoenborn Street, North Hills, CA  91343

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

See instructions before completing this space.

**APPLICATION RECEIVED**

**ONE DEPOSIT RECEIVED**

**TWO DEPOSITS RECEIVED**

**FUNDS RECEIVED**

DO NOT WRITE HERE
OFFICE USE ONLY

---

**MORE ON BACK ▶**  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• See detailed instructions        • Sign the form at line 8

DO NOT WRITE HERE
Page 1 of 2 pages

M 0110161

EXAMINED BY ✓

CHECKED BY

☐ CORRESPONDENCE
☐ Yes

FORM VA

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes  ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼          Year of Registration ▼

DERIVATIVE WORK OR COMPILATION Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

See instructions
before completing
this space

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

DEPOSIT ACCOUNT If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                         Account Number ▼

CORRESPONDENCE Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼
Lucy B. Arant c/o Russ, August, Kabat & Kent
12424 Wilshire Boulevard, Suite 1200
Los Angeles, California 90025

Area code and daytime telephone number ▶ ( 310 ) 826-7474, ext. 270        Fax number ▶ ( 310 ) 826-4415
Email ▶  larant@raklaw.com

CERTIFICATION* I, the undersigned, hereby certify that I am the

check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of   ABC International Traders, Inc.
                        Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Lucy B. Arant                                              Date ▶ 7/16/01

Handwritten signature (X) ▼
X  Lucy B Arant

Certificate
will be
mailed in
window
envelope
to this
address:

Name ▼
Lucy B. Arant c/o Russ, August, Kabat & Kent
Number/Street/Apt ▼
12424 Wilshire Boulevard, Suite 1200
City/State/ZIP ▼
Los Angeles, California 90025

YOU MUST
• Complete all necessary spaces
• Sign your application in space 8
SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material
MAIL TO:
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.
June 1999—100,000          🖶 PRINTED ON RECYCLED PAPER                        ☆U.S. GOVERNMENT PRINTING OFFICE: 1999-454 879/71

M 0110162

559-3





M 0110163
559-4







M 0110164



LIBRARY OF CONGRESS

*Copyright Office*
*of the United States*

WASHINGTON, D.C.

THIS IS TO CERTIFY that the attached additional certificate is a claim of copyright for the work entitled **CLOE DOLL CONFIGURATION, ACCESSORIES AND PACKAGING** registered under number VA **1-090-289**.

THIS IS TO CERTIFY ALSO that the attached photocopies are a true representation of the work entitled **CLOE DOLL CONFIGURATION, ACCESSORIES AND PACKAGING** deposited in the Copyright Office on July 18, 2001 registered under number VA **1-090-289**.

IN WITNESS WHEREOF, the seal of this Office is affixed hereto on May 17, 2004

Marybeth Peters
Register of Copyrights

By:  Tracie M. Coleman
Head
Certifications and Documents
Section
Information and Reference
Division

Use of this material is governed by the U. S. copyright law 17 U.S.C. 101 et seq.



**Additional Certificate (17 U.S.C. 706)**
Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM VA** ☒
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

**VA 1-090-289**

EFFECTIVE DATE OF REGISTRATION

JUN 1 8 2001
Month      Day      Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**TITLE OF THIS WORK ▼**                   **NATURE OF THIS WORK ▼** See instructions

Cloe Doll Configuration, Accessories and Packaging

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.   **Title of Collective Work ▼**

If published in a periodical or serial give   **Volume ▼**   **Number ▼**   **Issue Date ▼**   **On Pages ▼**

---

**NAME OF AUTHOR ▼**
ABC International Traders, Inc. d/b/a
MGA Entertainment

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ▶_____
Domiciled in ▶ U.S.A.

**Was This Author's Contribution to the Work**
Anonymous?   ☐ Yes  ☒ No
Pseudonymous?  ☐ Yes  ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Check appropriate box(es). **See Instructions**
☒ 3-Dimensional sculpture   ☐ Map   ☐ Technical drawing
☐ 2-Dimensional artwork   ☐ Photograph   ☐ Text
☐ Reproduction of work of art   ☐ Jewelry design   ☐ Architectural work

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ▶_____
Domiciled in ▶_____

**Was This Author's Contribution to the Work**
Anonymous?   ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Check appropriate box(es). **See Instructions**
☐ 3-Dimensional sculpture   ☐ Map   ☐ Technical drawing
☐ 2-Dimensional artwork   ☐ Photograph   ☐ Text
☐ Reproduction of work of art   ☐ Jewelry design   ☐ Architectural work

---

**Year In Which Creation of This Work Was Completed**
2000
◄ Year   This information must be given ONLY if this work in all cases. has been published.

**Date and Nation of First Publication of This Particular Work**
Complete this information   Month ▶ February   Day ▶ 12   Year ▶ 2001
United States of America   ◄ Nation

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
ABC International Traders, Inc. d/b/a
MGA Entertainment
16730 Schoenborn Street, North Hills, CA  91343

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
JUL 1 8 2001
ONE DEPOSIT RECEIVED
JUL 1 8 2001
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

---

**MORE ON BACK ▶**  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page   **DO NOT WRITE HERE**
• See detailed instructions   • Sign the form at line 8   Page 1 of ____ pages

M 0110166
561-2

EXAMINED BY

CHECKED BY

☐ CORRESPONDENCE
Yes

FORM VA

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: **Previous Registration Number** ▼    **Year of Registration** ▼

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

See instructions
before completing
this space

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
**Name** ▼                                                   **Account Number** ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/ZIP ▼
Lucy B. Arant c/o Russ, August, Kabat & Kent
12424 Wilshire Boulevard, Suite 1200
Los Angeles, California  90025

Area code and daytime telephone number ▶ : 310 826-7474, ext. 270        Fax number ▶ 310 , 826-4415

Email ▶  larant@raklaw.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of ___ABC International Traders, Inc___
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Lucy B. Arant                                                     Date▶ 7-16-01

**Handwritten signature (X)** ▼

X _Lucy B Arant_

Certificate
will be
mailed in
window
envelope
to this
address:

**Name** ▼
Lucy B. Arant c/o Russ, August, Kabat & Kent
**Number/Street/Apt** ▼
12424 Wilshire Boulevard, Suite 1200
**City/State/ZIP** ▼
Los Angeles, California  90025

**9**

**YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 8
**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material
**MAIL TO:**
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

♻ PRINTED ON RECYCLED PAPER                    ☆U.S. GOVERNMENT PRINTING OFFICE: 1999-454-879/71

M 0110167

561-3

Case 2:04-cv-09049-DOC-RNB   Document 2284-3   Filed 02/19/08   Page 70 of 133   Page ID #:34525





M 0110168







M 0110169
561-5



121610594

# FORM VA

For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

VA 1-090-290

**EFFECTIVE DATE OF REGISTRATION**

## JUN 1 8 2001

Month    Day    Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**TITLE OF THIS WORK ▼**                         **NATURE OF THIS WORK ▼** See instructions

Yasmin Doll Configuration, Accessories and Packaging

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.     **Title of Collective Work ▼**

If published in a periodical or serial give: **Volume ▼**    **Number ▼**    **Issue Date ▼**    **On Pages ▼**

---

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**NAME OF AUTHOR ▼**

ABC International Traders, Inc. d/b/a
MGA Entertainment

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ▶
     Domiciled in ▶ U. S. A.

**Was This Author's Contribution to the Work**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Check appropriate box(es). **See instructions**
☒ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ▶
     Domiciled in ▶

**Was This Author's Contribution to the Work**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Check appropriate box(es). **See instructions**
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

---

**Year in Which Creation of This Work Was Completed**
a 2000    This information must be given ◄Year in all cases.

**Date and Nation of First Publication of This Particular Work**
b Complete this information ONLY if this work has been published.    Month February   Day 12   Year 2001
United States of America ◄ Nation

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

ABC International Traders, Inc. d/b/a
MGA Entertainment
16730 Schoenborn Street, North Hills, CA 91343

**APPLICATION RECEIVED**
JUL 18 2001
**ONE DEPOSIT RECEIVED**
JUL 18 2001
**TWO DEPOSITS RECEIVED**

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

**FUNDS RECEIVED**

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.    • See detailed instructions.    • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of 2 pages

Δ π EXHIBIT 563
Deponent Armstrong
Date 3/1/03 Rptr. AC
WWW.DEPOBOOK.COM

M 0110639

EXAMINED BY _____

CHECKED BY

☐ CORRESPONDENCE
   Yes

FORM VA

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes  ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼            Year of Registration ▼

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
a. Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates. ▼

See instructions
before completing
this space.

b. Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                               Account Number ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/ZIP ▼
Lucy B. Arant c/o Russ, August, Kabat & Kent
12424 Wilshire Boulevard, Suite 1200
Los Angeles, California  90025

Area code and daytime telephone number ▶ 310  826-7474, ext. 270 .        Fax number ▶ 310 , 826-4415
Email ▶  larent@raklaw.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of ___ ABC International Traders, Inc.
                        Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Lucy B. Arant                                                          Date ▶ 7/16/01

Handwritten signature (X) ▼
X _Lucy B Arant_

Certificate
will be
mailed in
window
envelope
to this
address:

Name ▼
Lucy B. Arant c/o Russ, August, Kabat & Kent
Number/Street/Apt ▼
12424 Wilshire Boulevard, Suite 1200
City/State/ZIP ▼
Los Angeles, California  90025

• Complete all necessary spaces
• Sign your application in space 8

SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money
   order payable to Register of Copyrights
3. Deposit material

MAIL TO:
Library of Congress
Copyright Office
101 Independence Ave, S.E.
Washington, D.C. 20559-6000

**9**

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

June 1999—100,000        ☺ PRINTED ON RECYCLED PAPER        ★U.S. GOVERNMENT PRINTING OFFICE: 1999-454-879/31

M 0110640

563-2



VA 1-090-290

M 0110641

56 3  3







M 0110642

Exhibit K



ıect to change
opyright Office
write the Copy-
X00

**Form CA**
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

VA 1–301–529

| TX | TXU | PA | PAU | VA | VAU | SR | SRU | RE |

EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

March 28 2005

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**A**

Title of Work ▼
  Jade Drawing

Registration Number of the Basic Registration ▼
  VA 1-218-487

Year of Basic Registration ▼
  2003

Name(s) of Author(s) ▼
  Carter Bryant

Name(s) of Copyright Claimant(s) ▼
  MGA Entertainment, Inc

**B**

Location and Nature of Incorrect Information in Basic Registration ▼
Line Number _____ 3b _____     Line Heading or Description  Date of Publication

Incorrect Information as It Appears in Basic Registration ▼
  February 12, 2001

Corrected Information ▼
  at least as early as May 21, 2001

Explanation of Correction ▼

**C**

Location and Nature of Information in Basic Registration to be Amplified ▼
Line Number _____     Line Heading or Description _____
Amplified Information and Explanation of Information ▼



Δ)π EXHIBIT 5X0
Deponent ARMSTRONG
Date 7/18/07 Rptr. ACC
WWW.DEPOBOOK.COM

MORE ON BACK ▶ • Complete all applicable spaces (D-G) on the reverse side of this page.
• See detailed instructions.   • Sign the form at Space F.

DO NOT WRITE HERE
Page 1 of __2__ pages

**Exhibit K**
**Page 252**

FORM CA RECEIVED

**MAR 28 2005**

FUNDS RECEIVED DATE

FORM CA

EXAMINED BY

CORRESPONDENCE ☒

REFERENCE TO THIS REGISTRATION ADDED TO
BASIC REGISTRATION ☒ YES ☐ NO

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE  IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

Continuation of ☐ Part B or ☐ Part C

**D**

Correspondence  Give name and address to which correspondence about this application should be sent

Carol A. Witschel
White & Case LLP
1155 Avenue of the Americas
New York, New York  10036
Phone ( 212 ) 819-8200 ___  Fax ( 212 ) 354-8113 ___  Email cwitschel@whitecase.com

Deposit Account  If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account

Name ___

Account Number ___ A 5 ..13 ___

Certification*  I, the undersigned, hereby certify that I am the (Check only one)

☐ author          ☐ owner of exclusive right(s)     MCA Entertainment Inc.
☐ other copyright claimant  ☒ duly authorized agent of ___
                                    Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge

Typed or printed name ▼  Carol A. Witschel                    Date ▼  March 24, 2005

Handwritten signature (X) ▼

Certificate
will be
mailed in
window
envelope
to this
address

Name ▼  Carol A. Witschel – White & Case LLP

Number/Street/Apt ▼  1155 Avenue of the Americas

City/State/ZIP ▼  New York, New York  10036

17 U.S.C. § 506(e)  Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500

Rev July 2003—20,000  Web Rev July 2002  Printed on recycled paper

U.S. Government Printing Office: 2003-494-422/60 009

Exhibit K
Page 253

Copyright Office fees are subject to change
yright Office
as the Copy-
)



**Form CA**
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**VA 1–301–538**



| TX | TXU | PA | PAU | VA | VAU | SR | SRU | RE |

EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

_March  28  2005_
Month   Day   Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**A**

Title of Work ▼
Sasha Drawing

Registration Number of the Basic Registration ▼
VA 1-218-488

Year of Basic Registration ▼
2003

Name(s) of Author(s) ▼
Carter Bryant

Name(s) of Copyright Claimant(s) ▼
MGA Entertainment, Inc

**B**

Location and Nature of Incorrect Information in Basic Registration ▼

Line Number _____3b_____   Line Heading or Description  Date of Publication

Incorrect Information as It Appears in Basic Registration ▼

February 12, 2001

Corrected Information ▼

at least as early as May 21, 2001

Explanation of Correction ▼

**C**

Location and Nature of Information in Basic Registration to be Amplified ▼

Line Number _____   Line Heading or Description _____

Amplified Information and Explanation of Information ▼

MATTEL EXHIBIT 508
Deponent ARMSTRONG
Date 7/18/07 Rptr ACC
WWW.DEPOBOOK.COM

MORE ON BACK ▶    • Complete all applicable spaces (D-H) on the reverse side of this page
• See detailed instructions    • Sign the form at Space F

DO NOT WRITE HERE
Page 1 of ___2___ pages

FORM CA RECEIVED

**MAR 28 2005**

FUNDS RECEIVED DATE

FORM CA

EXAMINED BY

CORRESPONDENCE

REFERENCE TO THIS REGISTRATION ADDED TO
BASIC REGISTRATION ☑YES ☐NO

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.
Continuation of ☐ Part B or ☐ Part C

**D**

Correspondence: Give name and address to which correspondence about this application should be sent
Carol A. Witschel
White & Case LLP
1155 Avenue of the Americas
New York, New York   10036
Phone (212) 819-8200         Fax (212) 354-8113         Email cwitschel@whitecase.com

Deposit Account. If the registration fee is to be charged to a Deposit Account established in the Copyright Office give name and number of Account
Name _____

Account Number _____

Certification* I, the undersigned, hereby certify that I am the (Check only one)
☐ author          ☐ owner of exclusive right(s)
☐ other copyright claimant   ☑ duly authorized agent of  **NGA Entertainment Inc.**
                              Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name ▼ Carol A. Witschel                    Date ▼ March 24, 2005

Handwritten signature (X) ▼  *Carol A. Witschel*

Certificate
will be
mailed in
window
envelope
to this
address

Name ▼  Carol A. Witschel — White & Case LLP

Number/Street/Apt ▼  1155 Avenue of the Americas

City/State/ZIP ▼  New York, New York   10036

17 U.S.C § 506(e) Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500

Rev July 2002—34,000   Web Rev July 2002   Printed on recycled paper          U.S. Government Printing Office 2003  461-468/60 069



**C** ... to change
**F** ight Office
**W** e the Copy-
**n**

**Form CA**
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

**VA 1−301−531**

| TX | TXU | PA | PAU | VA | VAU | SR | SRU | RE |

EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

*March 28 2005*
Month   Day   Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

**A**

Title of Work ▼

Cloe Drawing

| Registration Number of the Basic Registration ▼ | Year of Basic Registration ▼ |
|---|---|
| VA 1-218-490 | 2003 |

| Name(s) of Author(s) ▼ | Name(s) of Copyright Claimant(s) ▼ |
|---|---|
| Carter Bryant | MGA Entertainment, Inc |

**B**

Location and Nature of Incorrect Information in Basic Registration ▼

Line Number ___3b___   Line Heading or Description  Date of Publication

Incorrect Information as It Appears in Basic Registration ▼

February 12, 2001

Corrected Information ▼

at least as early as May 21, 2001

Explanation of Correction ▼

**C**

Location and Nature of Information in Basic Registration to be Amplified ▼

Line Number _____   Line Heading or Description _____

Amplified Information and Explanation of Information ▼

△ π EXHIBIT *510*
Deponent *ARMSTRONG*
Date *7/8/07* Rptr. *ACC*
WWW.DEPOBOOK.COM

MORE ON BACK ▶   • Complete all applicable spaces (D-G) on the reverse side of this page   DO NOT WRITE HERE
• See detailed instructions.   • Sign the form at Space F   Page 1 of ___ pages

Exhibit K
Page 256

FORM CA RECEIVED

**MAR 28 2005**

FUNDS RECEIVED DATE

FORM CA

EXAMINED BY

CORRESPONDENCE☑

REFERENCE TO THIS REGISTRATION ADDED TO
BASIC REGISTRATION ☑ YES ☐ NO

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

Continuation of ☐ Part B or ☐ Part C

**D**

Correspondence: Give name and address to which correspondence about this application should be sent

Carol A. Witschel
White & Case LLP
1155 Avenue of the Americas
New York, New York 10036
Phone ( 212) 819-8200      Fax ( 212) 354-8113      Email cwitschel@whitecase.com

Deposit Account: If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account

Name

Account Number

Certification* I, the undersigned, hereby certify that I am the (Check only one)
☐ author          ☐ owner of exclusive right(s)
☐ other copyright claimant   ☑ duly authorized agent of   MGA Entertainment Inc.
                              Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name ▼ Carol A. Witschel          Date ▼ March 24, 2005

Handwritten signature (X) ▼ *Carol A. Witschel*

Certificate
will be
mailed in
window
envelope
to this
address

Name ▼ Carol A. Witschel - White & Case LLP

Number/Street/Apt ▼ 1155 Avenue of the Americas

City/State/ZIP ▼ New York, New York 10036

17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev. July 2003—20,000   Web Rev. July 2003   Printed on recycled paper                                    U.S. Government Printing Office: 2003-494 423/60 046

Copyright Office fees are subject to change.
F                                  right Office
Y    1439-40912                    e the Copy-
r

**C** Form CA
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

**VA 1-301-532**

| TX | TXU | PA | PAU | VA | VAU | SR | SRU | RE |

EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

March 28 2005

Month    Day    Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**A**
Title of Work ▼
      Yasmin Drawing

Registration Number of the Basic Registration ▼
VA 1-218-491

Year of Basic Registration ▼
2003

Name(s) of Author(s) ▼
Carter Bryant

Name(s) of Copyright Claimant(s) ▼
MGA Entertainment, Inc

**B**
Location and Nature of Incorrect Information in Basic Registration ▼

Line Number ___3b___    Line Heading or Description  Date of Publication

Incorrect Information as It Appears in Basic Registration ▼

February 12, 2001

Corrected Information ▼

at least as early as May 21, 2001

Explanation of Correction ▼

**C**
Location and Nature of Information in Basic Registration to be Amplified ▼

Line Number _____    Line Heading or Description _____

Amplified Information and Explanation of Information ▼

MORE ON BACK ▶   —Complete all applicable spaces (D-G) on the reverse side of this page
                 —See detailed instructions   —Sign the form at Space F

DO NOT WRITE HERE
Page 1 of ___2___ pages



Ⓓ π EXHIBIT 512
Deponent ARMSTRONG
Date 1/18/07 Rptr. ACC
www.DEPOBOOK.com

Exhibit K
Page 258

| | FORM CA RECEIVED | FORM CA |
|---|---|---|
| | MAR 28 2005 | |
| | FUNDS RECEIVED DATE | |

| EXAMINED BY  *wm* | FOR COPYRIGHT OFFICE USE ONLY |
|---|---|
| CORRESPONDENCE ☒ | |

REFERENCE TO THIS REGISTRATION ADDED TO BASIC REGISTRATION  ☒ YES ☐ NO

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

Continuation of: ☐ Part B or ☐ Part C

**D**

Correspondence: Give name and address to which correspondence about this application should be sent

Carol A. Witschel
White & Case LLP
1155 Avenue of the Americas
New York, New York  10036
Phone ( 212 )  819-8200          Fax ( 212 )  354-8113          Email cvitschel@whitecase.com

Deposit Account: If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account

Name

Account Number

Certification* I, the undersigned, hereby certify that I am the (Check only one)

☐ author          ☐ owner of exclusive right(s)
☐ other copyright claimant   ☒ duly authorized agent of  MGA Entertainment Inc.
                              Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge

Typed or printed name ▼  Carol A. Witschel          Date ▼  March 24, 2005

Handwritten signature (X) ▼  *Carol A. Witschel*

| Certificate will be mailed in window envelope to this address | Name ▼  Carol A. Witschel - White & Case LLP |
|---|---|
| | Number/Street/Apt ▼  1155 Avenue of the Americas |
| | City/State/ZIP ▼  New York, New York  10036 |

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.*

Rev. July 2003—89,000   Web Rev. July 2003   Printed on recycled paper          U.S. Government Printing Office: 2003-491-629/60,029

Copyright Office fees are subject to change.

~~1439.10945~~

Copyright Office ... the Copy-



**Form CA**
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

REG ...........

**VA 1-301-528**

| TX | TXU | PA | PAU | VA | VAU | SR | SRU | RE |

EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

March 28 2005

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

**A**

Title of Work ▼
**BRATZ Group Drawing**

Registration Number of the Basic Registration ▼
VA 1-218-489.

Year of Basic Registration ▼
2003

Name(s) of Author(s) ▼
Carter Bryant

Name(s) of Copyright Claimant(s) ▼
MGA Entertainment, Inc.

---

**B**

Location and Nature of Incorrect Information in Basic Registration ▼

Line Number ___3b___ Line Heading or Description Date of Publication

Incorrect Information as It Appears in Basic Registration ▼

February 12, 2001

Corrected Information ▼

at least as early as May 21, 2001

Explanation of Correction ▼

---

**C**

Location and Nature of Information in Basic Registration to be Amplified ▼

Line Number _____ Line Heading or Description _____

Amplified Information and Explanation of Information ▼

---

MORE ON BACK ▶ • Complete all applicable spaces (D-G) on the reverse side of this page   DO NOT WRITE HERE
• See detailed instructions • Sign the form at Space F   Page 1 of 2 pages



FORM CA RECEIVED

**MAR 28 2005**

FUNDS RECEIVED DATE

FORM CA

EXAMINED BY

CORRESPONDENCE ☒

REFERENCE TO THIS REGISTRATION ADDED TO
BASIC REGISTRATION ☒YES ☐ NO

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

Continuation of ☐ Part B or ☐ Part C

Correspondence Give name and address to which correspondence about this application should be sent

Carol A. Witschel
White & Case LLP
1155 Avenue of the Americas
New York, New York 10036
Phone (212) 819-8200      Fax (212) 354-8113      Email cwitschel@whitecase.com

Deposit Account If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name _____

Account Number _____

Certification* I, the undersigned, hereby certify that I am the (Check only one)
☐ author   ☐ owner of exclusive right(s)
☐ other copyright claimant   ☒ duly authorized agent of   MGA Entertainment Inc.
                                   Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name ▼   Carol A. Witschel                    Date ▼   March 24, 2005

Handwritten signature (X) ▼   Carol A. Witschel

Certificate will be mailed in window envelope to this address

Name ▼   Carol A. Witschel - White & Case LLP

Number/Street/Apt ▼   1155 Avenue of the Americas

City/State/ZIP ▼   New York, New York 10036

*17 U.S.C. §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: July 2002—20,000   Web Rev July 2002   Printed on recycled paper

U.S. Government Printing Office: 2000-461-423/40 020

Exhibit K
Page 261

Exhibit L

Copyright Office fees are subject to change
For current fees, check the Copyright Office
website at www copyright gov, write the Copy-
right Office, or call (202) 707-3000

*143 940   854*



**Form CA**
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

VA 1—301—533

TX | TXU | PA | PAU | VA | VAU | SR | SRU | RE
EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION
*March 28  2005*
Month   Day   Year

DO NOT WRITE ABOVE THIS LINE  IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

**A**

Title of Work ▼
Jade Doll Configuration, Accessories and Packaging

| Registration Number of the Basic Registration ▼ | Year of Basic Registration ▼ |
|---|---|
| VA 1-090-287 | 2001 |

| Name(s) of Author(s) ▼ | Name(s) of Copyright Claimant(s) ▼ |
|---|---|
| ABC International Traders, Inc  d/b/a MGA Entertainment, Inc | + ABC International Traders, Inc. d/b/a MGA Entertainment |

**B**

Location and Nature of Incorrect Information in Basic Registration ▼

Line Number _____2a_____   Line Heading or Description Nature of Authorship

Incorrect Information as It Appears in Basic Registration ▼

Only "3-dimensional sculpture" box checked

Corrected Information ▼

Additional box "2-dimensional artwork" should be checked

Explanation of Correction ▼

**C**

Location and Nature of Information in Basic Registration to be Amplified ▼

Line Number _____5_____   Line Heading or Description Previous Registration

Amplified Information and Explanation of Information ▼

"No" box - checked, 5c box - unchecked
"Yes" box should be checked, 5c box should be checked

This basic registration VA 1-090-287 for the Jade Doll Configuration, Accessories and Packaging, should cite to registration VA 1-218-487 (December 22, 2003) for the Jade Drawing, which was registered after this basic registration but prior to the filing of this Form CA, and should include the following additional information

Line 6a - Derivative Work
            Jade Drawing (VA 1-218-487)

Line 6b - Material Added
            3-dimensional doll, sculpt, artwork and packaging

MORE ON BACK ▶   • Complete all applicable spaces (D-G) on the reverse side of this page      NO NOT WRITE HERE
                 • See detailed instructions     Sign the form at Space F                      Page 1 of ____ pages



Δ π EXHIBIT 558
Deponent Armstrong
Date 8/1/07  Rptr. AC
WWW.DEPOBOOK.COM

Exhibit L
Page 262

✳ Added from C.O. records.

| | |
|---|---|
| FORM CA RECEIVED | 4/25/05 |
| FUNDS RECEIVED DATE | 3/28/05 |
| EXAMINED BY | hm |
| CORRESPONDENCE ☒ | |
| REFERENCE TO THIS REGISTRATION ADDED TO BASIC REGISTRATION ☒ YES ☐ NO | |

FORM CA

FOR COPYRIGHT OFFICE USE ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

Continuation of ☒ Part B or ☐ Part C

**D**

Line 3a - Year of Completion
    Incorrect information  2000
    Corrected information  2001

Line 3b - Year of Publication
    Incorrect information  February 12, 2001
    Corrected information  At least as early as May 21, 2001

Correspondence Give name and address to which correspondence about this application should be sent

Carol A. Witschel
White & Case LLP
1155 Avenue of the Americas
New York, New York  10036
Phone ▶ 212  819-8200      Fax 212  354-8113      Email  cwitschel@whitecase.com

**E**

Deposit Account If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account

Name _____

Account Number _____

Certification* I, the undersigned, hereby certify that I am the (Check only one)
☐ author      ☐ owner of exclusive right(s)
☐ other copyright claimant   ☒ duly authorized agent of   MGA Entertainment Inc.
                              Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name ▶ Carol A. Witschel           Date ▶ 4/22/05

**F**

Handwritten signature (X) ▶ *Carol A Witschel*

| | |
|---|---|
| Certificate will be mailed in window envelope to this address | Name ▼ Carol A. Witschel - White & Case LLP |
| | Number/Street/Apt ▼ 1155 Avenue of the Americas |
| | City/State/Zip ▼ New York, New York  10036 |

**G**

17 U.S.C. § 506(e) Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500

Rev. July 2003—30,000   Web Rev. July 2002   Printed on recycled paper          U.S. Government Printing Office 2000-461-113/20009

Exhibit L
Page 263



Copyright Office fees are subject to change
For current fees, check the Copyright Office
website at *www.copyright.gov*, write the Copy-
right Office, or call (202) 707-3000.



**Form CA**
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**VA 1-301-534**

TX | TXU | PA | PAU | VA | VAU | SR | SRU | RE

EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

*March 28 2005*

Month   Day   Year

143 940 887

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET



**A**

Title of Work ▼
Sasha Doll Configuration, Accessories and Packaging

| Registration Number of the Basic Registration ▼ | Year of Basic Registration ▼ |
|---|---|
| VA 1-090-288 | 2001 |

Name(s) of Author(s) ▼
ABC International Traders, Inc d/b/a MGA Entertainment, Inc

Name(s) of Copyright Claimant(s) ▼
ABC International Traders, Inc.d/b/a MGA Entertainment

**B**

Location and Nature of Incorrect Information in Basic Registration ▼
Line Number ____ 2a ____ Line Heading or Description Nature of Authorship

Incorrect Information as It Appears in Basic Registration ▼
Only "3-dimensional sculpture" box checked

Corrected Information ▼
Additional box "2-dimensional artwork" should be checked

Explanation of Correction ▼

**C**

Location and Nature of Information in Basic Registration to be Amplified ▼
Line Number ____ 5 ____ Line Heading or Description Previous Registration

Amplified Information and Explanation of Information ▼

"No" box - checked, 5c box - unchecked
"Yes" box should be checked, 5c box should be checked

This basic registration VA 1-090-288 for the Sasha Doll Configuration, Accessories and Packaging, should cite to registration VA 1-218-488 (December 22, 2003) for the Sasha Drawing, which was registered after this basic registration but prior to the filing of this Form CA, and should include the following additional information

Line 6a - Derivative Work
        Sasha Drawing (VA 1-218-488)

Line 6b - Material Added
        3-dimensional doll, sculpt, artwork and packaging

MORE ON BACK ▶   • Complete all applicable spaces (D-G) on the reverse side of this page
                 • See detailed instructions    • Sign the form at Space F

DO NOT WRITE HERE
Page 1 of __2__ pages

Exhibit L
Page 264

\* Added from C.O. records.

| FORM CA RECEIVED | FORM CA |
|---|---|
| 4/25/05 | |
| FUNDS RECEIVED DATE | |
| 3/28/05 | |
| EXAMINED BY ___ | FOR COPYRIGHT OFFICE USE ONLY |
| CORRESPONDENCE ☒ | |
| REFERENCE TO THIS REGISTRATION ADDED TO BASIC REGISTRATION ☒ YES ☐ NO | |

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

Continuation of ☒ Part B or ☐ Part C

**D**

Line 3a – Year of Completion
    Incorrect information  2000
    Corrected information  2001

Line 3b – Year of Publication
    Incorrect information  February 12, 2001
    Corrected information  At least as early as May 21, 2001

**E**

Correspondence Give name and address to which correspondence about this application should be sent
Carol A. Witschel
White & Case LLP
1155 Avenue of the Americas
New York, New York  10036
Phone ( 212 819-8200        Fax ( 212 354-8113        Email cwitschel@whitecase.com

Deposit Account If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account

Name

Account Number

Certification* I, the undersigned, hereby certify that I am the (Check only one)

**F**

☐ author          ☐ owner of exclusive right(s)
☐ other copyright claimant    ☒ duly authorized agent of    MGA Entertainment Inc.
    Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name ▼  Carol A. Witschel          Date ▼  4/22/05

Handwritten signature (X) ▼  Carl A Witschel

| Certificate will be mailed in window envelope to this address | Name ▼ Carol A. Witschel – White & Case LLP | **G** |
|---|---|---|
| | Number/Street/Apt ▼ 1155 Avenue of the Americas | |
| | City/State/ZIP ▼ New York, New York  10036 | |

17 U.S.C. §506(e) Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev July 2002—20,000   Web Rev July 2002   Printed on recycled paper          U.S. Government Printing Office: 2002-461-453/49 609

Exhibit L
Page 265

Copyright Office fees are subject to change
For current fees, check the Copyright Office
website at www.copyright.gov, write the Copy-
right Office, or call (202) 707-3000

**Form CA**
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**VA 1-301-535**

| VA | TAU | PA | PAU | VA | VAU | SR | SRU | RE |

EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

*March 28 2005*
Month    Day    Year

*143 940 843*

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**A**

Title of Work ▼
Cloe Doll Configuration, Accessories and Packaging

| Registration Number of the Basic Registration ▼ | Year of Basic Registration ▼ |
|---|---|
| VA 1-090-289 | 2001 |

| Name(s) of Author(s) ▼ | Name(s) of Copyright Claimant(s) ▼ |
|---|---|
| ABC International Traders, Inc d/b/a MGA Entertainment, Inc | * ABC International Traders, Inc. d/b/a MGA Entertainment |

**B**

Location and Nature of Incorrect Information in Basic Registration ▼

Line Number ___2a___   Line Heading or Description Nature of Authorship

Incorrect Information as it Appears in Basic Registration ▼

Only "3-dimensional sculpture" box checked

Corrected Information ▼

Additional box "2-dimensional artwork" should be checked

Explanation of Correction ▼

**C**

Location and Nature of Information in Basic Registration to be Amplified ▼

Line Number ___5___   Line Heading or Description Previous Registration

Amplified Information and Explanation of Information ▼

"No" box - checked, 5c box - unchecked
"Yes" box should be checked, 5c box should be checked

This basic registration VA 1-090-289 for the Cloe Doll Configuration, Accessories and Packaging, should cite to registration VA 1-218-490 (December 22, 2003) for the Cloe Drawing, which was registered after this basic registration but prior to the filing of this Form CA, and should include the following additional information

Line 6a – Derivative Work
Cloe Drawing (VA 1-218-490)

Line 6b – Material Added
3-dimensional doll, sculpt, artwork and packaging

MORE ON BACK ▶   Complete all applicable spaces (D-H) on the reverse side of this page
• See detailed instructions   • Sign the form at Space F

DO NOT WRITE HERE
Page 1 of ___ pages



Δ π EXHIBIT 562
Deponent Armstrong
Date 8/1/07 Rptr. AC
WWW.DEPOBOOK.COM

Exhibit L
Page 266

✻ Added from C.O. records.

| | FORM CA |
|---|---|
| FORM CA RECEIVED | 4/25/05 |
| FUNDS RECEIVED DATE | 3/28/05 |
| EXAMINED BY | Wm |
| CORRESPONDENCE ☒ | FOR COPYRIGHT OFFICE USE ONLY |
| REFERENCE TO THIS REGISTRATION ADDED TO BASIC REGISTRATION ☒YES ☐NO | |

DO NOT WRITE ABOVE THIS LINE  IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

Continuation of ☐ Part B or ☐ Part C

**D**

Line 3a – Year of Completion
    Incorrect information  2000
    Corrected information  2001

Line 3b – Year of Publication
    Incorrect information   February 12, 2001
    Corrected information   At least as early as May 21, 2001

**E**

Correspondence Give name and address to which correspondence about this application should be sent
Carol A. Witschel
White & Case LLP
1155 Avenue of the Americas
New York, New York  10036
Phone(212) 819-8200        Fax( 212 354-8113        Email cwitschel@whitecase.com

Deposit Account If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account
Name _____

Account Number _____

Certification* I, the undersigned, hereby certify that I am the (Check only one)
    ☐ author        ☐ owner of exclusive right(s) MGA Entertainment Inc.
    ☐ other copyright claimant  ☒ duly authorized agent of _____
                                 Name of author or other copyright claimant, or owner of exclusive right(s) ▲
    of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge

**F**

Typed or printed name ▼          Date ▼ 4/22/05
        Carol A. Witschel

Handwritten signature (X) ▼
        Carol A Witschel

| Certificate will be mailed in window envelope to this address | Name ▼ Carol A. Witschel – White & Case LLP | **G** |
|---|---|---|
| | Number/Street/Apt ▼ 1155 Avenue of the Americas | |
| | City/State/ZIP ▼ New York, New York  10036 | |

17 USC § 506(e) Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500

Rev July 2005—40,000   Web Rev July 2005   Printed on recycled paper    ☆U.S. Government Printing Office 2005-301-423/60,069

Exhibit L
Page 267

Copyright Office fees are subject to change
For current fees, check the Copyright Office
website at www.copyright.gov, write the Copy-
right Office, or call (202) 707-3000.



Form CA
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

VA 1-301-536

TX | TXU | PA | PAU | VA | VAU | SR | SRU | RE
EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

March 28 2005
Month    Day    Year

*143  940  865*

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

**A**

Title of Work ▼
Yasmin Doll Configuration, Accessories and Packaging

| Registration Number of the Basic Registration ▼ | Year of Basic Registration ▼ |
|---|---|
| VA 1-090-290 | 2001 |

| Name(s) of Author(s) ▼ | Name(s) of Copyright Claimant(s) ▼ |
|---|---|
| ABC International Traders, Inc. d/b/a MGA Entertainment, Inc | * ABC International Traders, Inc. d/b/a MGA Entertainment |

**B**

Location and Nature of Incorrect Information in Basic Registration ▼

Line Number ____ 2a ____  Line Heading or Description __Nature of Authorship__

Incorrect Information as It Appears in Basic Registration ▼

Only "3-dimensional sculpture" box checked

Corrected Information ▼

Additional box "2-dimensional artwork" should be checked

Explanation of Correction ▼

**C**

Location and Nature of Information in Basic Registration to be Amplified ▼

Line Number ____ 5 ____  Line Heading or Description __Previous Registration__

Amplified Information and Explanation of Information ▼

"No" box - checked, 5c box - unchecked
"Yes" box should be checked, 5c box should be checked

This basic registration VA 1-090-290 for the Yasmin Doll Configuration, Accessories and Packaging, should cite to registration VA 1-218-491 (December 22, 2003) for the Yasmin Drawing, which was registered after this basic registration but prior to the filing of this Form CA, and should include the following additional information

Line 6a - Derivative Work
      Yasmin Drawing (VA 1-218-491)

Line 6b - Material Added
      3-dimensional doll, sculpt, artwork and packaging

---

MORE ON BACK ▶  • Complete all applicable spaces (D-G) on the reverse side of this page
               • See detailed instructions   • Sign the form at Space F
DO NOT WRITE HERE
Page 1 of 2 pages

Δ π EXHIBIT 564
Deponent Armstrong
Date 8/1/07 Rptr. AC
WWW.DEPOBOOK.COM

Exhibit L
Page 268

\* Added from C.O. records.

| | FORM CA |
|---|---|
| FORM CA RECEIVED 4/25/05 | |
| FUNDS RECEIVED DATE 3/28/05 | |
| EXAMINED BY *Wen* | FOR COPYRIGHT OFFICE USE ONLY |
| CORRESPONDENCE ☑ NO | |
| REFERENCE TO THIS REGISTRATION ADDED TO BASIC REGISTRATION ☑ YES ☐ NO | |

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

Continuation of ☑ Part B or ☐ Part C **D**

Line 3a - Year of Completion
      Incorrect information   2000
      Corrected information   2001

Line 3b - Year of Publication
      Incorrect information   February 12, 2001
      Corrected information   At least as early as May 21, 2001

Correspondence Give name and address to which correspondence about this application should be sent **E**
Carol A. Witschel
White & Case LLP
1155 Avenue of the Americas
New York, New York   10036
Phone ( 212) 819-8200     Fax (212) 354-8113     Email cwitschel@whitecase.com

Deposit Account If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account
Name _____
Account Number _____

Certification* I, the undersigned, hereby certify that I am the (Check only one) **F**
☐ author     ☐ owner of exclusive right(s)
☐ other copyright claimant  ☑ duly authorized agent of  MGA Entertainment Inc.
        Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge

Typed or printed name ▼ Carol A. Witschel     Date ▼ 4/22/05

Handwritten signature (X) ▼ *Carol A. Witschel*

| Certificate will be mailed in window envelope to this address | Name ▼ Carol A. Witschel - White & Case LLP | **G** |
|---|---|---|
| | Number/Street/Apt ▼ 1155 Avenue of the Americas | |
| | City/State/Zip ▼ New York, New York   10036 | |

17 U S C § 506(e) Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2 500

Rev July 2000—80 000  Web Rev July 2000  Printed on recycled paper     U S Government Printing Office 2000-461-423/00 000

Exhibit L
Page 269

Exhibit M

RightFAX                    8/  /2006 3:02    PAGE 002/019   Fax Server

Priority

Send

Enter

Closed

JS-5/JS-6

JS-2/JS-3

Scan Only

FILED - EASTERN DIVISION
CLERK, U.S. DISTRICT COURT

**AUG 1 0 2006**

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, | ) |
| Plaintiff, | ) CASE NO.  CV 04-9049 SGL (RNBx) |
| | ) (Consolidated with cases CV-04-9059 and |
| v. | ) CV-05-2727) |
| MATTEL, INC., | ) ORDER DENYING MOTION FOR |
| | ) APPOINTMENT OF EXPERT |
| Defendant, | ) WITNESSES |
| and related actions. | ) |

Presently before the Court is Mattel, Inc.'s ("Mattel") motion for the appointment of expert witnesses pursuant to Federal Rule of Evidence 706, Carter Bryant and MGA Entertainment, Inc.'s ("MGA") opposition and response thereto, and Mattel's reply.  For the reasons set forth below, the Court **DENIES** the motion for the appointment of expert witnesses.

Federal Rule of Evidence 706(a) provides

> The court may . . . on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations.  The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witness of its own selection.  An expert witness shall not be appointed by the court unless the witness consents to act.

DOCKETED ON CM

**AUG 1 1 2006**

BY                    044

73

1
2
3

> A witness so appointed shall be informed of the witness'
> duties by the court in writing, a copy of which shall be filed
> with the clerk, or at a conference in which the parties shall
> have opportunity to participate.

4

The appointment of an expert by a federal court is a rare occurrence. Much of

5
this stems from a concept "[d]eeply ingrained" in the common law "that it is the

6
responsibility of the parties to produce the evidence while the court looks on to assure

7
that the rules are followed." 4 JOSEPH M. MCLAUGHLIN, WEINSTEIN'S FEDERAL EVIDENCE

8
§ 706.02[1], at 706-6 (2nd ed. 2006). The reluctance of courts to intrude into the

9
evidence-gathering function normally assigned to counsel is borne out of "the fear of

10
ex parte communications between the court and its expert," as well as the

11
unseemliness of "[c]ollecting a share of the expense [for the work performed by the

12
court appointed expert] from a party who has been damaged by the expert's report."

13
Id. at 706-6, 706-7. As a result of these institutional concerns, "experts are usually

14
appointed only in exceptional cases that present unwieldy, complex, or technical

15
issues" or where "there is a need for an impartial, independent assessment of a

16
disputed issue." Id. § 706.02[3], at 706-8 706-9.

17
Here, Mattel seeks for the court to appoint experts in the fields of questioned

18
document examination, ink chemistry analysis, and paper chemistry analysis in order

19
to "analyze and date (1) the originals of 'BRATZ' design drawings, (2) the faxed-

20
version of the BRATZ-related contract between . . . Carter Bryant and MGA

21
Entertainment, Inc., (3) MGA's internal documents relating to work performed by Anna

22
Rhee on Bryant-related projects in the year 2000, and (4) a facsimile of BRATZ

23
drawings bearing a fax header date of April 10, 2000," as well as "(5) any other

24
documents that cannot be sampled or tested without destroying the sample tested or

25
analyzed." (Mattel's Mot. Appt. Expert, Preface at 2). The reason proffered for such

26
an appointment is two-fold: First, a generalized concern that, because the documents

27
sought to be examined are "highly relevant" to the litigation, having a neutral expert

28
perform the testing on the same may obviate a battle of the experts that would make

2

Exhibit M
Page 271

1   the jury's function of sorting out the truth much more arduous; and second, concerns,
2   deduced during discovery, about the possible spoliation of key documents in the case
3   by MGA/Bryant and their counsel.

4   A.      AVERTING A BATTLE OF THE EXPERTS

5           Mattel's argument that the Court should appoint an expert because otherwise
6   each side will perform "separate, partisan destructive analyses of separate samples of
7   the documents" with "wide divergence" of opinion "virtually assured" is not well-
8   founded. (Mattel's Mot. Appt. Expert at 18, 20). Explicit in Mattel's argument is that
9   this feared divergence in each side's retained expert's opinions has yet to materialize.
10  This is not surprising as it appears that discovery in this case is in its nascent stage,
11  owed largely to the fact that the Court had earlier stayed the case while Mattel
12  appealed the denial of its motion to remand the case to state court.  Mattel's argument
13  instead is that the Court should appoint an expert now to avoid the possibility that
14  there may be such wide divergence in each side's privately retained expert in the
15  future.  Needless to say from the jabs each party took at the credibility and even
16  trustworthiness of the other side's retained expert during the oral argument on this
17  motion (one going so far as to label the competing ink chemistry experts as being the
18  modern day equivalent of one's Hatfield to the other's McCoy), such a possibility may
19  be more easier to imagine occurring here than in ordinary cases.  Nevertheless, such
20  divergence, even if likely, is still that – a possibility, not an inevitability.

21          In those cases where an expert has been appointed by a court on account of
22  the excessive partisanship in the expert opinions retained by counsel, the rationale for
23  the appointment was based on the fact that the feared wide divergence in opinion had
24  already materialized.  See Students of California Sch. for the Blind v. Honig, 736 F.2d
25  538, 548 (9th Cir. 1984)("the judge could not decide the merits of the students' seismic
26  safety claims on the basis of evidence presented at trial, so he reopened the case and
27  appointed a neutral expert to evaluate the adequacy of seismic testing at the Fremont
28  site"), vacated on other grounds, 471 U.S. 148 (1985); Eastern Air Lines, Inc. v.

3

Exhibit M
Page 272

1    McDonnell Douglas Corp., 532 F.2d 957 (5th Cir. 1976); 4 WEINSTEIN § 706App.100 at

2    706App.-5 (noting that legal commentators' "imprecations against the parties' 'battle of

3    experts'", not the potential for such a battle, "led to the drafting of the Uniform Expert

4    Testimony Act in 1937," the precursor to Federal Rule of Evidence 706).

5        In no instance uncovered by the Court's research (or by Mattel's citation to

6    authority) has a court appointed an expert because of a fear, even one that is well-

7    founded, that such wide divergence in privately-retained expert testimony may

8    materialize in the future. Were the Court to adopt Mattel's analysis, appointment of

9    experts by courts would expand exponentially, limited only by a court's assessment of

10   how partisan the experts in a given case may become in the future. Such a

11   proliferation has not occurred precisely because courts generally require that the

12   divergent "horse" be placed before the expert witness "cart." See FED. R. EVID. 706

13   advisory committee's note ("actual appointment is a relatively infrequent occurrence").

14   Unless and until this feared divergence in opinion becomes reality, the Court finds that

15   the potential (which itself cannot be quantified at this point) for its occurrence does not

16   warrant the Court's intrusion into the adversarial process through the appointment of

17   an expert at this stage.

18   B.    SPOILATION OF EVIDENCE

19       The question is much closer with respect to Mattel's other reason for the Court

20   to appoint an expert in this case: Concern that opposing counsel or their clients may

21   have destroyed or altered key documents in the case. Mattel's basis for such concern

22   is predicated on three facts uncovered during discovery.

23       1.    Evidence of spoilation

24       Before being deposed Bryant was asked to bring all his original BRATZ design

25   drawings. When he arrived at his deposition, however, Bryant only had in his

26   possession a few of the originals. (Decl. Michael T. Zeller ¶ 13). Among these some

27   "contained holes where plugs apparently had already been removed. Bryant

28   acknowledged . . . that his drawings had no holes in them when he gave them to his

4

Exhibit M
Page 273

1    lawyers." (Mattel's Mot. Appt. Expert at 2; see also Decl. Michael T. Zeller ¶ 14).

2    Specifically, at Bryant's deposition the following exchange took place between Bryant

3    and counsel for Mattel:

4         Q.    (By Mr. Quinn) I wanted to ask you about one of
                these original drawings that were produced today.

5                . . . .

6               -- what we're talking about here.  This is -- the Post-it
                says that's Bryant -- that's the original of Bryant

7               192, Bates number 192, which has the heads on it,
                and this is one of the originals that your counsel was

8               kind enough to have shipped here today for us to
                look at.

9         A.    Yes

10        Q.    And we were just looking at these this afternoon and
                we notice[d] that there's a bunch of holes on the

11              page, including in the signature, as if somebody
                were taking ink samples.

12
          A.    Uh-huh.
13
          Q.    Do you see that?
14
          A.    Yes.
15
          Q.    Do you know anything about why those holes were
16              made or how or when?

17        A.    I have no idea what those are.

18        Q.    I mean, when you had -- when you had possession
                of this document did it have those holes in it?

19
          A.    Not that I remember.
20
          Q.    You certainly never had anything to do with that?
21
          A.    No.  I don't know anything about those holes.
22
          Q.    And, similarly, if you wouldn't mind holding this up to
23              the camera, this is the original of Bryant 210 and it's
                also -- if you take a look at it, I think you'll see it has

24              some of those holes in it, although not as many as
                the last one we looked at.  Again, you don't know

25              anything about how or why those holes got put on
                there?

26
          A.    I don't.
27

28   (Decl. Michael T. Zeller, Ex. 7 at 161-163).

1        Mattel has submitted the declaration of a questioned document analysis expert,
2  Lloyd Cunningham, who has opined that the holes described in the document
3  mentioned above are consistent with those that would be generated by taking
4  microplug samples to perform analysis of the ink found on a document. (Decl. Lloyd
5  Cunningham ¶ 5). Bryant and MGA eventually conceded (although at first refusing to
6  do so under the veil of work-product privilege) that they tested some of the original
7  BRATZ drawings by an expert they retained in the field of forensic chemistry, Erich J.
8  Speckin. (Response to Order to Show Cause ("Response") at 1-2).

9        Mr. Speckin states that in June, 2004, he performed a series of tests "on
10  various 'Bratz' documents" at the request of MGA's counsel.[1] (Decl. Erich J. Speckin
11  ¶ 8). Those tests included examining the documents in question under an infrared
12  light as well as performing sidelight testing, which involves "visually inspecting a
13  document by holding a side light up to the document at an oblique angel . . . to
14  determine preliminarily whether the document contains impressions, or markings
15  impressed upon the document by drawing and writing done on a sheet of paper laid
16  on top of the document being tested." (Decl. Erich J. Speckin ¶¶ 9, 10). Mr. Speckin
17  also performed an electrostatic detection apparatus to see if there was indented
18  impressions on the documents. (Decl. Erich J. Speckin ¶ 11). Finally, Mr. Speckin
19  "performed ink identifications tests" on the documents. (Decl. Erich Speckin ¶¶ 12-
20  13). Such testing involved Mr. Speckin removing "very small microplug samples from
21  the document at issue and testing the microplug." (Decl. Erich Speckin ¶13).
22  Nowhere is it averred by MGA, Bryant, or Mr. Speckin which or how many of the
23  original BRATZ drawings were subjected to this microplug sampling procedure, nor is
24  it averred from what parts of the documents that were tested was the microplug taken.
25  Instead, Mr. Speckin simply notes that in taking the microplugs he "le[ft] more than
26

27        [1] At the time the testing was done by Mr. Speckin, Bryant had already been
28  sued by Mattel for violating the terms of the invention agreement he signed when he
worked for them from 1999 to 2000. (Response at 1).

6

1   sufficient material for another expert to test the exact same <u>documents</u>," but admits

2   that "another expert cannot test the very same microplug that I tested . . . ." (Decl.

3   Erich J. Speckin ¶14).

4         Another episode brought to light during discovery causing Mattel concern

5   relates to MGA's handling of the original Bryant/MGA contract before the inception of

6   the instant litigation.  At the deposition of a former MGA executive, Victoria O'Connor,

7   testimony was elicited that O'Connor, "on explicit instructions of MGA's [CEO] Isaac

8   Lariam, . . . [made] redact[ions from] the fax header . . . on the BRATZ contract

9   between Bryant and MGA for the year 2000 to conceal the fact that Bryant sent the

10  contract from Mattel's Design Center while he was still employed at Mattel." (Mattel's

11  Mot. Appt. Expert at 3).  O'Connor's deposition appears to indicate that such alteration

12  occurred before the present litigation began (indeed, perhaps even before MGA

13  marketed the BRATZ doll).

14        Q.    . . . Was there ever anything that you were asked to
               do that you -- made you feel kind of uncomfortable?
15
          A.    Yes.
16                           . . . .

17        Q.    And what was that?

18        A.    When the original contract was executed by Carter
               Bryant, it was sent to me <u>via</u> fax, and on the top of
19             the fax listed the phone number from where it was
               faxed, which said "Barbie Collectibles," and at one
20             point my boss, Isaac Larian, asked me to white that
               out and send it to a lawyer, Patty Glaser.
21

22  (Decl. Michael T. Zeller, Ex. 19 at 306).  Upon further examination, however,

23  O'Connor stated that she did not participate in or have knowledge of any other

24  instances in which any other agreement between Bryant and MGA was directed to be

25  altered:

26        Q.    Were you ever asked to change the date on any
               agreements between Mr. Bryant and MGA?
27
          A.    No.
28

                                    7

1      Q.   Are you aware of anybody being asked to change
            the date on any of those agreements?
2
       A.   No.
3
       Q.   I mean, do you have any reason to believe that any
4           agreement that was entered into between Mr. Bryant
            and MGA had a date altered or changed?
5
       A.   No.
6
       Q.   You never heard that from – from any source?
7
       A.   No.
8

9   (Decl. Paula E. Ambrosini, Ex. 3).

10      Finally, Mattel speculates that a drawing of some BRATZ doll accessories

11  faxed on April 10, 2000, had the fax header altered, much in the same manner

12  described in O'Connor's testimony vis-à-vis the MGA/Bryant faxed contract, as the

13  fields on the fax header for the sender's name and the sender's telephone number are

14  missing. (Decl. Michael T. Zeller ¶ 23 & Ex. 24).[2]  As explained by Mattel, "Because

15

16      [2] Mattel speculates that the time sheets produced by MGA for one of its
17  employees, Anna Rhee (who did doll face painting work for the BRATZ mock-up), from
    "mid-to-late 2000" were altered or recently created by MGA to show that Rhee worked
18  on projects called "Angel" and "Prayer Angel," when in fact she was working at the time
    painting faces for BRATZ dolls at the direction of Bryant. (Mattel's Mot. Appt. Expert at
19  3). The basis for this speculation is based on the fact that the initial disclosure by MGA
    of Rhee's time sheets comprised only 8 pages. (Decl. Michael T. Zeller ¶ 20). Then,
20  on January 7, 2005, Rhee produced 20 separate invoices of her work at MGA during
    mid-to-late 2000, indicating that Rhee performed work for MGA prior to Bryant's
21  departure from Mattel, most notably on June 12, 2000. (Decl. Michael T. Zeller ¶ 21).
22  Within a couple of weeks after Rhee's production of invoices to Mattel, MGA
    supplemented its earlier production of Rhee's time sheets showing that during the mid-
23  to-late 2000 period Rhee was working on a MGA project known as "Angel" or "Prayer
24  Angels" and was not involved in any BRATZ-related work until after Bryant's departure
    from Mattel. (Decl. Michael T. Zeller ¶ 22). Mattel's surmise that the supplemental time
25  sheets were altered is allegedly bolstered by the fact that Rhee testified during her
    deposition that the only work she performed in mid-to-late 2000 was on BRATZ and
26  that the supplemental time sheets reference to the "Angel" and "Prayer Angel" was
    nothing but a cover or code word for BRATZ-related work. This argument is hard to
27  accept. First, even the invoices Rhee turned over to Mattel contain the phrase "Angel"
28  for the mid-2000 project she worked on. (Decl. Michael T. Zeller, Ex. 22 at 356-60,
    362). It is not until December, 2000, that any of the invoices submitted by Rhee show

8

1  facsimile machines normally insert senders' names and numbers as a matter of

2  course, and indeed is required by law [to do so], it appears likely that the document

3  was altered to conceal the sender's information. See 47 U.S.C. § 227(d)(1)(B)."

4  (Mattel's Mot. Appt. Expert at 10). The premise underlying Mattel's concern on this

5  topic is not unreasonable. The law requires such information to be found on any

6  document, like the one in question, that has been faxed. Additionally, the testimony

7  elicited from Ms. O'Connor that MGA altered the fax header for other documents

8  related to BRATZ from the same time period leads to an obvious inference that other

9  documents where spaces on other fax headers are absent suffered a similar fate.

10      2.    Analysis

11          a.    Microplug Ink Testing

12          Bryant and MGA begin by downplaying the significance of the spoilation issue

13  in this case. With respect to the holes on some of the original BRATZ design

14  drawings produced at Bryant's deposition, they note that, even with these holes,

15  nothing prevents Mattel from performing its own testing on the remaining portions of

16  the drawings on the document. "Indeed, the very fact that Mattel is asking for court-

17  appointed experts to perform ink and paper testing only underscores the fact that

18  nothing has been 'destroyed.'" (Joint Opp. at 2). Mr. Speckin makes similar assertions

19  in his declaration, stating that the fact that the same microplug cannot be tested "is

20  entirely irrelevant because there is more than enough ink on each of the documents I

21  tested to allow numerous microplug samples to be extracted and tested by different

22  experts." (Decl. Erich J. Speckin ¶ 14 (emphasis added); see also Response at 5-6

23  ("While another expert cannot test the very same microplug that Mr. Speckin tested,

24

25

26  her doing work on the BRATZ doll, well after Bryant had left Mattel. (Decl. Michael T. Zeller, Ex. 21 at 367, 370, 373). To accept Mattel's argument, not only would MGA
27  have had to alter the invoices it produced in the supplemental production, but the documents produced by Rhee would also have to be similarly altered. An alternative
28  and just as plausible explanation is that Rhee is simply mistaken as to when she began performing work on the BRATZ project.

9

1  that fact is entirely irrelevant because, unlike in a situation where the entire object is

2  destroyed during the testing, there is more than enough ink on each of the <u>documents</u>

3  Mr. Speckin tested to allow numerous microplug samples to be extracted and tested"

4  (emphasis added))). This argument is not persuasive. This is not a case where

5  everyone concedes that the documents in question were created at one point in time,

6  but dispute what that date may have been. In such a circumstance all the ink

7  markings on the documents are comparable to one another as it is conceded that all

8  the marks came from one point in time.

9        Here, however, it is Mattel's theory that Bryant made drawings in 1998 and then

10  periodically touched up or made refinements/additions to those drawings, adding more

11  marks in 1999 and 2000 during the time he was employed by Mattel.   An ink mark

12  from one part of the document is not necessarily comparable to another set of ink

13  markings found elsewhere on the document. One ink mark on a drawing could have

14  been made in 1998, for example, while another ink mark found on the same drawing

15  could have been put there sometime later. In taking microplug samples from one of

16  these ink markings without the ability of the other side to test <u>the same mark</u> would

17  forever foreclose a potential avenue of crucial evidence in this case. It is on that point

18  that taking microplug samples of the marks on these drawings is akin to the spoilation.

19  Therefore the fact that another expert could test other parts of the document does not

20  mean that key relevant evidence found on that document has not been destroyed. As

21  MGA and Bryant make clear spoilation of evidence occurs through the "destruction or

22  significant alteration of evidence, or the failure to preserve property for another's use

23  as evidence in pending or reasonably foreseeable litigation." <u>West v. Goodyear Tire &</u>

24  <u>Rubber Co.</u>, 167 F.3d 776, 779 (2nd Cir. 1999).[3]

25        At this point, it should not be lost that the documents in question are not

26

27  _____
        [3] The Court does not mean to suggest that Mattel's theory is correct.  Instead,
        the Court simply notes this theory as refuting MGA and Bryant's argument that only the

28  <u>complete</u> destruction of a document would amount to spoilation under the particular
        circumstances in this case.

1  peripheral to the case. At its heart, this case asks the question: Who owns the rights
2  to the Bratz dolls? Bryant asserts that he came up with the idea for the Bratz dolls
3  while on a break from his employment at Mattel in 1998, and that he sold his idea to
4  MGA when he went to work for them in October, 2000. Mattel claims, among other
5  things, that Bryant "developed" or "continued to develop" his idea for Bratz dolls while
6  he was working for them from January, 1999, to October, 2000, and that pursuant to
7  an inventions agreement he signed with the Mattel when he went to work for them,
8  that idea now belongs to Mattel. As this clash of factual contentions makes clear, the
9  dating of the original BRATZ drawings and the markings contained thereon is a
10  fundamental, perhaps despositive, issue to this case. That there are serious
11  questions concerning the handling of these critical documents certainly causes the
12  Court much concern about whether the truth seeking functions of the adversarial
13  system have been fundamentally compromised in this case. As Mattel rightly notes,
14  "The adversarial process is not an end in itself; its value is in its ability to promote a
15  search for truth." (Mattel's Reply at 9).

16      Bryant and MGA concede that the sections that were holed out contained
17  markings, be they handwritten dates or other words or letters, that may be crucial to
18  the case. Indeed, one of the drawings – Bryant 192 – had a portion of the signature
19  line sampled. What is left unclear is whether, for those portions of the document
20  where ink or signatures were sampled, enough of the same part of the document in
21  question (meaning the same mark) remains to be sampled by Mattel. For instance, is
22  there enough of the signature line from Bryant 192 left to sample, or has too much of it
23  already been sampled? In that sense, MGA's and Bryant's argument that nothing has
24  been destroyed by the microplug testing procedure because other parts of the
25  document still exist is misplaced. Indeed, MGA and Bryant later admit that the
26  circumstances allowing for "multiple experts [to] remove multiple microplugs and test
27  the exact same paper and ink" is dependent upon there being the same exact paper
28  and ink there to test. (Joint Opp. at 15 ("[a]s long as there is paper and ink to test")).

11

1   The continued existence of the "exact same pen stroke" is the very issue that is now

2   left open because of the holes in some of Bryant's original BRATZ design drawings.

3   Is there anything left of that exact same pen stroke that was sampled by Mr. Speckin

4   remaining on the original drawing for Mattel to test? None of these questions have

5   been addressed by MGA, Bryant, or Mr. Speckin in their papers. Instead, they simply

6   make the observation that there remain other ink markings on the same drawings for

7   Mattel to test, a reason which, as explained above, is wholly insufficient to assure the

8   Court that Mattel has not been prejudiced by MGA's actions.

9        Given the absence of any representation by them on this point, the Court

10  pressed MGA's counsel about the same at oral argument:

11              THE COURT:  And part of your argument is that
                while a small portion of the small portion of the page may
12              be gone, as you in your most recent papers concede is
                gone, there are other portions of the page that can be
13              tested. The concern I have, I guess – and maybe you can
                clear this up for me – I've seen some of the drawings and I
14              have a pretty good mental image of what the drawings look
                like. But there is also writing on these drawings,
15              signatures, copyright registration indications; some are
                large, some are small. As I gather from the plaintiff, from
16              Mattel, the concern is that these different drawings or
                writings were done at different times. And I guess I can
17              understand why when those drawings or writings were
                done could be significant from an evidentiary standpoint.
18              So the concern is not so much there's another part of the
                paper that can be tested; it's whether or not the particular
19              marking in question has been so damages as to not permit
                a full further testing on that particular marking. Does my
20              question make sense?

21              MS. CENDALI: Yes, it does, your Honor. And I
                anticipated that. Significant, we thought, in their papers
22              was that . . . they cited to the fact that Mr. Bryant admitted
                in his deposition that there were holes in some of the
23              documents that he didn't know how they got there
                originally. As an example, if you look at part of Zeller,
24              Exhibit 17, Bates number Bryant 201, that's an example of
                one of the documents that's been tested.
25
                THE COURT: One second so I have that in front of
26              me. Okay.

27              MS. CENDALI: There are many many others that were
                submitted that were also submitted to this type of ink
28              testing, but this is just an example of one of them. And if

                                    12

1       you look at the document, you would never know --
        granted, this is smaller, so the actual drawing is even larger
2       than this, so there's even more ink on the larger drawing
        than there would be available on this reproduction size.
3
                But if you look at it -- and I'll represent to you that we
4       didn't test the face; the face is absent before and after the
        testing -- but if you look at it, you couldn't even see that
5       there were any pin pricks to it. If you look very, very
        carefully at the signature at the bottom, you can maybe see
6       where it says "Ramona Prints, 8-26-99"; that maybe there
        was like a little tiny hole in one of the little slash marks; that
7       was a teeny little pin prick hole that showed the testing .
        There's ample amount of ink to do the testing on all of
8       these documents. This is the normal course of procedure
        that was done.
9

10      When asked by the Court whether it accepted MGA's representation that there

11   was "ample amount of ink" left on the same marks that the microplugs were taken

12   from for further microplug testing, Mattel, in seeming contradiction to its position in its

13   papers, said it did: "I agree with Ms. Cendali. We do not maintain any portion of the

14   ink on a signature or an image has been so obliterated that you couldn't take a plug

15   now on any of it; that's not our point." (Emphasis added).

16      In light of this concession by Mattel, the Court finds that no colorable claim of

17   spoilation has been established at this time vis-à-vis Mr. Speckin's testing of the

18   documents to warrant the appointment of an expert by the Court to investigate the

19   same. See Sedrati v. Allstate Life Ins. Co., 185 F.R.D. 388, 393 (M.D. Ga.

20   1998)(sanction warranted where because "defendant's expert has conducted

21   destructive tests on the original documents," plaintiff's expert "cannot duplicate the

22   conditions of the original documents"). If there was any evidence indicating that MGA,

23   Bryant, or their counsel had engaged in acts that could compromise Mattel's ability to

24   discover crucial information in this case, the Court would be sympathetic to the

25   appointment of an expert to investigate the same. Here, no such evidence exists.

26   The tests done by Mr. Speckin have not left the marks that were micro-sampled or the

27   documents that were handled so compromised that Mattel cannot perform the exact

28   same tests on those exact same marks as performed by Mr. Speckin.

13

Exhibit M
Page 282

1    Indeed, the only basis for spoilation that Mattel has left to argue – that the
2    passage of time has left the ability to perform any meaningful ink testing at this time
3    problematic – is an argument that has nothing to do with MGA's conduct, but much
4    more with Mattel's own dereliction. As the Court understands it, the process of dating
5    when ink was placed on a document has only a limited window of time in which it can
6    be accomplished because, eventually, the ink dries (be it in 2 years or 3 to 4 years),
7    leaving nothing capable of being sampled after that point to test (save to acknowledge
8    that the ink in question was put on the paper some time more than 3 to 4 years ago).
9    Mattel essentially argues that the impossibility of testing ink after a certain period
10   mandates that, if the other side is going to test ink while "fresh" ink remains on the
11   document, that party has an obligation to inform the other side so that they can do the
12   same before the ink "dries out"; failure to do so renders the test performed something
13   that cannot be replicated.[4] By Mattel's own admission, they knew there had been
14   testing done on the BRATZ original drawings as far back as November, 2004, during
15   Bryant's deposition testimony when they saw some of the original BRATZ drawings
16   (drawings that had been tested by Mr. Speckin five months earlier). Rather than
17   immediately seeking the production of those documents and having its own expert
18   perform similar tests on them, Mattel sat idly by, waiting until June of this year to do
19   anything, either by way of court-pleadings or formal requests made to MGA and
20   Braynt, related to having ink tests performed on the documents. Nowhere has Mattel

21   _____

22   [4] The basic factual assumption in Mattel's argument may indeed be faulty – that
23   when MGA tested the ink there was enough "fresh" ink to test. Mr. Speckin states that
     "[i]nk takes approximately 3 to 4 years to dry on paper. Thus, by testing the ink to
24   determine if it is dry, it can be determined whether the document was created within the
     last [3 to] 4 years, or whether the ink, and thus the drawing, is more than [3 to] 4 years
25   old." (Decl. Erich J. Speckin ¶ 13). Given that Mr. Speckin performed his ink dating
     test in June, 2004, at best he could determine whether the ink had been put on the
26   paper on or after June, 2000. Beyond that time frame his test could not tell when the
     now-dried ink was marked on the document. Given that the relevant period in question
27   in this case is from August, 1998, to October, 2000, Mr. Speckin's test results would
28   appear to be only marginally relevant in adducing proof as to when the BRATZ
     drawings were made.

14

Exhibit M
Page 283

1 │ explained how MGA or Bryant had anything to do with it not having the ability to
2 │ perform such testing until now.  Mattel's allusion to the fact that a stay on discovery
3 │ was put in place by this Court in 2005 is misguided.  If Mattel thought that it was losing
4 │ valuable time on account of the stay, it could have at any time filed with this Court an
5 │ emergency request for relief from the stay to have such tests performed.  All it needed
6 │ to do was inform the Court that it had only a short period of time to perform the test on
7 │ account of the fact that ink dries; something which it never did in this case.

8 │      Mattel's citation to the case <u>Edwardes v. Southampton Hospital Associates</u>,
9 │ 278 N.Y.S.2d 283 (1967) is equally unhelpful to their argument.  In that case, the court
10 │ was presented with an application to prevent the testing of a intramedullary pin for
11 │ discovery and testing.  <u>Id</u>. at 284.  The court held that, "[s]ince the pin is crucial to the
12 │ action it is not too difficult to appreciate that any change, however slight, assumes an
13 │ importance magnified proportionately. And undoubtedly tests which would destroy or
14 │ alter most or all of a particular article ought not be permitted in the first instance
15 │ without providing adequate safeguards to protect all concerned." <u>Id</u>. at 286.  Here,
16 │ such an argument cannot be made because, for the reasons cited above, Mattel has
17 │ conceded that even in performing the tests of the original BRATZ drawings Mr.
18 │ Speckin left enough ink of the same pen stroke for its own experts to test.  In short,
19 │ there has been no alteration, however slight, made to the documents insofar as
20 │ Mattel's ability to replicate the exact same test is concerned.  The only change that
21 │ has occurred is in Mattel's ability to retrieve any relevant information from such a test
22 │ <u>on account of the passage of time that has elapsed</u>.  The test Mr. Speckin performed
23 │ is not responsible for this negative occurrence.  MGA is similarly not responsible for
24 │ the passage of time or Mattel's inability to retrieve useful information from the testing
25 │ process.  On that point, Mattel should look itself in the mirror for any finding of fault or
26 │ blame.

27 │      Moreover, aside from the potential for "destroying" key portions of the original
28 │ documents, it is alleged that MGA and Bryant's actions carry other means of

15

1   prejudicing Mattel's ability to pursue lines of potential evidence in this case.  The

2   expert declaration submitted by Mattel notes another possible spoliation of the original

3   drawings even if there remained enough of the pertinent portion of the document in

4   question to sample: The sampling process itself may have contaminated the

5   document in question by obliterating potential crucial clues that were on the document

6   or otherwise the sampling process led to the introduction of foreign materials onto the

7   documents themselves which may complicate any future analysis.  As explained by

8   Mattel's expert:

9          [P]erforming many such types of testing, even if described
           as "non-destructive," on a particular original document
10         carries the risk that potential evidence on it, including
           indentations in the paper fiber, might be contaminated or
11         destroyed in the process.  Furthermore, the order of the
           types of testing to be performed on a given document
12         might have an impact on developing potential evidence
           during subsequent examinations. . . .
13
                . . . . [With respect to the original BRATZ drawings
14         containing holes in them,] it is possible that the destructive
           testing performed on the document may have caused
15         some form of contamination and/or alteration, which carries
           the further prospect that subsequent examinations by
16         experts may not enable them to develop potential evidence
           or the same evidence that the other [earlier] expert
17         developed.

18  (Decl. Lloyd Cunningham ¶¶ 4-5).

19         MGA has rebutted this risk of contamination argument by proffering Mr.

20  Speckin's declaration, the expert who actually performed the tests in question.  Mr.

21  Speckin states that he "exercised the utmost care in handling the documents [he]

22  tested," that a number of the tests he performed on the documents "has absolutely no

23  effect on the tested document whatsoever," and that with respect to those tests that

24  could effect the document he followed established procedures in carrying out the test

25  in question.  (Decl. Erich J. Speckin ¶¶ 8, 9, 10, 11, 12, 13).  Nowhere has Mattel

26  proffered any evidence rebutting or calling into question Mr. Speckin's

27  representations.  The Court therefore finds that, based on the evidence that is

28  currently before it, Mattel has not established a colorable claim of spoliation by way of

16

Exhibit M
Page 285

1  contamination in the tests MGA performed on the documents in question.

2          b.    Alteration of Fax Headers

3          Insofar as O'Connor's deposition testimony relating to the white out of the fax

4  header on the October, 2000, contract between Bryant and MGA, this too is

5  downplayed by MGA and Bryant as being irrelevant because "there is no dispute that

6  Mr. Bryant faxed his signed contract from a fax machine at Mattel and, indeed, Mr.

7  Bryant readily admitted that fact at his deposition, which took place before Ms.

8  O'Connor's deposition." (Joint Opp. at 8 (emphasis in original)). This argument seeks

9  to compare apples to oranges. While it may be true that now there is no dispute by

10 MGA and Bryant that he faxed his portion of the contract to MGA from his office at

11 Mattel, at the time O'Connor did the white out of the fax header such a lack of dispute

12 was not apparent. It is from that perspective in time – the prologue to the litigation –

13 that O'Connor's deposition testimony is to be judged. And from that perspective her

14 testimony calls into question MGA's handling of relevant documents in its possession.

15        When the contract was first executed there is no indication that MGA and/or

16 Bryant would admit to the fact that Bryant negotiated his contract with MGA while he

17 was still working at Mattel; rather, at that point, that issue appeared to be an open one.

18 Indeed, the fact that MGA's CEO would direct O'Connor to tamper with the contract's

19 fax header clearly indicates that they would not admit to the fact. If MGA mistreated

20 this document where an open issue existed, it is not unreasonable to infer that it may

21 have been just as cavalier with its obligations to maintain the other documents in their

22 possession – say, for instance, the original BRATZ drawings – where similar open

23 issues remained. This concern with MGA's handling of documents in its possession at

24 the prologue to this litigation is reinforced by MGA and Bryant's blasé mention in a

25 footnote to their opposition that the original to this contract, the one which they

26 describe as being irrelevant, "has not been found." (Joint Opp. at 15 n.6). Indeed, it

27 has been suggested that MGA and Bryant or their counsel have made representations

28 that they are not sure of the exact whereabouts of a number of the original BRATZ

Exhibit M
Page 286

17

1    drawings. (Decl. Shane McKenzie ¶ 3 ("Mr. Bryant's counsel[, at the December 22 to

2    23, 2004, inspection of the originals by counsel for Mattel,] claimed not to have the

3    majority of the originals of BRATZ drawings and sketches, and further claimed not to

4    know where those originals were located")).

5         All that being said, the Court does not find that the alteration of the fax header

6    on the original Bryant/MGA contract warrants the appointment of an expert at this

7    time. Ms. O'Connor testified that, other than this one instance, she is aware of no

8    other documents that were purposefully altered by MGA. While the evidence related

9    to the missing fax header on the April, 2000, BRATZ accessories fax may indicate that

10   more than one document had been tampered with by MGA personnel, the Court has

11   nothing at this time to basis that conclusion on other than speculation and conjecture.

12   Without any tangible, concrete proof that MGA's mishandling of documents was more

13   widespread, the Court is left with what appears simply as an isolated instance of

14   tampering.

15        Accordingly, the motion for appointment of expert witnesses is **DENIED.**

16        IT IS SO ORDERED.

17

18   DATE:  _8 - 9 - 06_ .

19

20                                    STEPHEN G. LARSON

21                                    UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

**Exhibit M**
**Page 287**                    18

Exhibit N

Case 2:04-cv-09049-DOC-RNB   Document 2284-3   Filed 02/19/08   Page 116 of 133   Page ID
#:34571
Case 2:04-cv-09049-SGL-RNB   Document 1931   Filed 02/04/2008   Page 1 of 7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                     Date: February 4, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS
====================================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes                              Theresa Lanza
           Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR CARTER              ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

Michael Page                             John Quinn
                                         Jon D. Corey

                                         ATTORNEY PRESENT FOR CARLOS
ATTORNEYS PRESENT FOR MGA:               GUSTAVO MACHADO GOMEZ:

Thomas J. Nolan
Carl A. Roth
Robert J. Harrington

ATTORNEYS PRESENT FOR THIRD-
PARTY WITNESSES

Larry W. McFarland
Scott Gizer
Ramit Mizrahi
Henry H. Gonzalez
Neal A. Potischman
John Patrick Petrullo


Alexander H. Cote


MINUTES FORM 90                                    Initials of Deputy Clerk __jh
CIVIL -- GEN                      1                 Time: 1/45

PROCEEDINGS:

HEARING ON EX PARTE APPLICATIONS:

**1722 EX PARTE APPLICATION to Compel Deposition of Ana Cabrera, Beatriz Morales, and Maria Salazar and Mel Woods**

**1724 EX PARTE APPLICATION to Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment, Inc.**

**1538 EX PARTE APPLICATION for Relief from 01-07-2008 Order re Motion Hearing**

**1583 EX PARTE APPLICATION to Compel Production of Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow**

**1624 EX PARTE APPLICATION to Enforce Court's Orders Compelling Production of Tangible Items**

**1628 EX PARTE APPLICATION to Stay pending Review of Discovery Master's January 11, 2008 Order Granting MGA's and Bryant's Motion to Compel**

**ORDER TO SHOW CAUSE DIRECTED TO COUNSEL LARRY McFARLAND**

Having considered the documents submitted in support of and opposition to the applications set forth above, and having heard oral argument, the Court issues its rulings on these matters as stated on the record and as follows:

### EX PARTE APPLICATIONS REGARDING DEPOSITIONS (DOCKET #1722 AND #1724) AND ORDER TO SHOW CAUSE

These applications are DENIED IN PART, subject to the following rulings:

(1)   The Court's January 7, 2008, Order was intended to grant certain specified relief from the numerical limitations on discovery requests; it was not meant to make definitive rulings on burdensomeness, relevance, privilege, or service of discovery requests.

(2)   The Phase 1 discovery deadline has expired. Any Phase 1 discovery not properly served on or before this deadline may not now be pursued. Based on the representation of counsel that process for the letters rogatory on the Hong Kong witnesses has not been initiated, these witnesses may not be deposed on Phase 1 issues. Notwithstanding this ruling, however, the Court is concerned with the allegations by Mattel in its ex parte application regarding certain actions of Larry

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk __jh_____
Time: 1/45

Case 2:04-cv-09049-DOC-RNB   Document 2284-3   Filed 02/19/08   Page 118 of 133   Page ID
#:34573
Case 2:04-cv-09049-SGL-RNB   Document 1931   Filed 02/04/2008   Page 3 of 7

McFarland, who represents certain third-party witnesses. Mattel submits that Mr.
McFarland has been deliberately evading service of a notice of deposition on him
and his clients -- serious allegations when made by an officer of the Court against
another officer of the Court. Accordingly, Mr. McFarland is **ORDERED TO SHOW
CAUSE** why he and his clients should not be ordered to appear for deposition. A
written response to this OSC must be filed no later than February 11, 2008. Other
parties may file written replies no later than February 19, 2008. The Court will hear
the matter at 10:00 a.m., February 25, 2008, in Courtroom One of the above-
referenced Court.

(3)     Phase 1 depositions that have been scheduled past the discovery deadline for the
        convenience of the witnesses or pursuant to the stipulation of the parties and/or
        witnesses may proceed as scheduled.

(4)     All discovery related to Phase 2, other than certain individual depositions that may be
        related to both Phase 1 and Phase 2, is STAYED until further order of the Court.

(5)     As previously ordered and reaffirmed by this Court, all discovery matters shall be
        presented in the first instance to the Discovery Master. The fact that the Discovery
        Master's ruling might impact upon the Court's scheduling order does not relieve the
        parties of following this procedure. For instance, motions to compel, motions to
        quash, or motions challenging service as to existing discovery requests shall be
        brought before the Discovery Master. So, too, must objections based on
        burdensomeness, relevancy, or privilege. In general, and on the matters touched
        upon herein, the Court expresses no opinion as to these issues, and instead leaves
        those issues to the Discovery Master to decide in the first instance.

(6)     To the extent that certain challenged depositions are within the scope of the Court's
        January 7, 2008, Order, and are related to Phase 1 (or to the extent that a given
        deposition (other than a Rule 30(b)(6) deposition) is related to both Phase 1 and
        Phase 2), said deposition may proceed subject to the challenges set forth in the
        previous paragraph. To the extent that the depositions are related to Phase 2, they
        are STAYED, as set forth above, notwithstanding the January 7, 2008, Order.

(7)     The parties' arguments require the Court to resolve an internal inconsistency in the
        Court's January 7, 2008, Order. The Court's Order was meant to grant all parts of
        Mattel's Motion for Leave to Take Additional Discovery (docket #1134) except the
        relief sought as to the deposition of Carter Bryant. The Court amends its 01.07.08
        Order as follows:

                Delete: <Specifically, the Court grants Mattel's request to take the
                individual depositions relating to the Bratz claims (set forth in the
                moving papers at 9-11) and relating to the trade secret and RICO

MINUTES FORM 90                                          Initials of Deputy Clerk __jh_____
CIVIL -- GEN                        3                    Time: 1/45

claims (set forth in the moving papers at 13).>

Replace with: <Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11), relating to the trade secret and RICO claims (set forth in the moving papers at 13), and relating to document preservation (set forth in the moving papers at 14 (Joe Tiongco and Daphne Gronich)).>

(8)  The Court's January 7, 2008, Order granted leave to take additional discovery over and above the previously allocated 24 depositions per side. Nevertheless, as to all other depositions, how to "count" the previously allocated depositions is left to the discretion of the Discovery Master.

(9)  At the hearing, counsel for Christensen, Glaser requested that the Court clarify that its January 7, 2008, ruling granted leave to depose it on only one issue. That is not the case, and the request is DENIED. Mattel has been granted relief from the numerical limitations that previously restricted its ability to depose those individuals and entities addressed by the Court's January 7, 2008, Order, including its ability to depose Christensen, Glaser. Unless otherwise restricted by the Discovery Master upon proper presentation of the issue to him, Mattel may depose Christensen, Glaser on any relevant, non-privileged matter.

## MACHADO GOMEZ'S EX PARTE APPLICATION RE
## JANUARY 7, 2008, ORDER (DOCKET # 1504)

This application is GRANTED. As noted above, Phase 2 discovery is STAYED until further order of the Court. The Court will address Phase 2 discovery, motions, pretrial, and trial dates after the conclusion of Phase 1 of the trial.

## MATTEL'S EX PARTE APPLICATION RE MOTION TO COMPEL PRODUCTION OF
## ELECTRONIC MEDIA FROM THIRD PARTIES (DOCKET #1538)

This application is DENIED. This matter must be addressed in the first instance by the Discovery Master.

## MATTEL'S EX PARTE APPLICATION TO ENFORCE COURT'S ORDERS
## COMPELLING PRODUCTION OF TANGIBLE ITEMS (#1624)

This application is GRANTED IN PART. Counsel for MGA shall employ its best efforts to arrange for shipment of those tangible things located in the Peoples' Republic of China ("PRC") to Hong Kong Special Administrative Region ("Hong Kong") for examination in conjunction with those tangible things already located in Hong Kong. Otherwise, counsel for MGA shall cooperate in the

MINUTES FORM 90
CIVIL -- GEN                                  4

Initials of Deputy Clerk __jh_____
Time: 1/45

arrangements for inspection in both Hong Kong and the PRC. Mattel's request for costs is denied without prejudice.

Counsel are encouraged to meet and confer with the intent of reaching a stipulation regarding the supplementation of expert reports. Absent such stipulation, at the appropriate time, the Court will entertain an ex parte application from any party regarding this issue.

### MATTEL'S EX PARTE APPLICATION TO STAY PENDING REVIEW OF DISCOVERY MASTER'S JANUARY 11, 2008 ORDER (DOCKET # 1628)

This application is GRANTED IN PART. The Court sets the motion for hearing on February 11, 2008. Opposition shall be filed no later than February 6, 2008; any reply shall be filed no later than February 8, 2008. The Discovery Master's January 11, 2008, Order is stayed until the issuance of the Court's minute order regarding the February 11, 2008, hearing.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN                                   5

Initials of Deputy Clerk __jh_____
Time: 1/45

Exhibit N
Page 292

Exhibit O

1

1            UNITED STATES DISTRICT COURT

2           CENTRAL DISTRICT OF CALIFORNIA

3                  EASTERN DIVISION

4                     - - -

5      HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                     - - -

7    CARTER BRYANT, ET. AL.,          )
                                      )
8                    PLAINTIFFS,      )
                                      )
9          VS.                        )   NO. ED CV 04-09049
                                      )   (LEAD LOW NUMBER)
10   MATTEL, INC., ET. AL.,           )
                                      )
11                   DEFENDANTS.      )   HEARING ON
     _____)   EX PARTE APPLICATION
                                      )
12   AND CONSOLIDATED ACTIONS,        )
     _____)

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16               RIVERSIDE, CALIFORNIA

17            TUESDAY, NOVEMBER 20, 2007

18                  10:11 A.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
             FEDERAL OFFICIAL COURT REPORTER
24             3470 12TH STREET, RM. 134
             RIVERSIDE, CALIFORNIA  92501
25                 951-274-0844
               CSR11457@SBCGLOBAL.NET

CERTIFIED COPY

```
 1   APPEARANCES:

 2   ON BEHALF OF CARTER BRYANT:

 3                        KEKER & VAN NEST
                         BY:   JOHN W. KEKER
 4                        BY:   CHRISTA ANDERSON
                         710 SANSOME STREET
 5                        SAN FRANCISCO, CALIFORNIA  94111-1704
                         415-391-5400
 6

 7   ON BEHALF OF MATTEL:

 8                        QUINN EMANUEL
                         BY:   JOHN S. QUINN
 9                        BY:   MICHAEL T. ZELLER
                         865 S. FIGUEROA STREET,
10                        10TH FLOOR
                         LOS ANGELES, CALIFORNIA  90017
11                        213-624-7707

12

13   ON BEHALF OF MGA ENTERTAINMENT:

14                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                         BY:   THOMAS J. NOLAN
                         BY:   CARL ALLAN ROTH
15                        300 SOUTH GRAND AVENUE
                         LOS ANGELES, CALIFORNIA  90071-3144
16                        213-687-5000

17

18   ON BEHALF OF GUSTAVO MACHADO:

19                        OVERLAND BORENSTEIN SCHEPER & KIM
                         BY:   DAVID C. SCHEPER
                         300 SOUTH GRAND AVENUE
20                        SUITE 2750
                         LOS ANGELES, CALIFORNIA  90071
21                        213-613-4660

22

23   ON BEHALF OF DEFENDANTS LEAHY, MARLOW, AND CLOONAN:

24                        KEATS MCFARLAND & WILSON LLP
                         BY:   LARRY W. MCFARLAND
25                        9720 WILSHIRE BOULEVARD
                         BEVERLY HILLS, CA 90212
                         310-777-3750
```

```
 1                        I N D E X

 2                                              PAGE

 3     HEARING  .....................................    5

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1      RIVERSIDE, CALIFORNIA; MONDAY, NOVEMBER 20, 2007; 10:11 A.M.

 2                            -OOO-

 3            THE CLERK:   CALLING CALENDAR ITEM ONE, ED CV 04-9049,

 4      CARTER BRYANT VERSUS MATTEL INC. AND CONSOLIDATED CASES.

 5            MAY WE HAVE COUNSEL PLEASE COME FORWARD AND STATE

 6      YOUR APPEARANCES FOR THE RECORD.

 7            MR. QUINN:   JOHN QUINN, MIKE ZELLER, FOR MATTEL.

 8            MR. NOLAN:   TOM NOLAN, CARL ROTH, FOR THE MGA

 9      DEFENDANTS AND ISAAC LARIAN.

10            MR. MCFARLAND:   LARRY MCFARLAND ON BEHALF OF          10:12

11      MS. LEAHY, MS. MARLOW, AND MS. CLOONAN.

12            MR. KEKER:   JOHN KEKER FOR MR. BRYANT.

13            MR. SCHEPER:   DAVID SCHEPER FOR MR. MACHADO.

14            THE COURT:   GOOD MORNING, COUNSEL.

15            WE'RE ON CALENDAR FOR A COUPLE OF MATTERS THIS         10:12

16      MORNING.   LET ME ADDRESS FIRST THE EX-PARTE APPLICATION, WHICH

17      BROUGHT US TOGETHER TO BEGIN WITH, FILED BY MATTEL.

18            MR. MCFARLAND, I HAVE A COUPLE OF QUESTIONS FOR YOU,

19      IF YOU COULD APPROACH THE LECTERN.

20            I LOOKED IN VAIN, IN YOUR DECLARATION AS WELL AS       10:12

21      THROUGHOUT YOUR PAPERS, TO FIND OUT EXACTLY WHEN IT WAS OR WHEN

22      IT IS THAT MS. MARLOW IS LEAVING ON THIS TRIP.   YOU MAKE

23      REFERENCE REPEATEDLY TO LATE NOVEMBER, BUT WE ALL PROBABLY HAVE

24      DIFFERENT DEFINITIONS OF WHAT LATE NOVEMBER IS.   I COULDN'T

25      FIND ANYWHERE WHERE YOU DEFINE THAT LATE NOVEMBER DATE.       10:13
```

```
 1    WE COULD IT THE WEEK OF THE 17TH.  OR, WE COULD DO IT
 2    JANUARY 7TH, BUT THEN I'D BE INCLINED TO GIVE MR. QUINN AND
 3    MATTEL LEAVE TO EXPAND THE DISCOVERY CUTOFF WITH RESPECT TO
 4    THAT WITNESS.
 5         I'M RELUCTANT TO DO THAT BECAUSE I THINK THAT GOES          10:17
 6    DOWN A ROAD THAT MAY CAUSE -- I DON'T LIKE THAT OPTION, BUT
 7    THAT'S WHAT I THINK WOULD BE THE ONLY FAIR THING TO DO, GIVEN
 8    THAT -- ONE OF THE THINGS THAT MR. NOLAN REQUESTED, THIS SOFT
 9    STAY AND THEN THE HARD STAY; I WANTED TO GIVE MR. NOLAN THE
10    BENEFIT OF THAT, BUT I DIDN'T WANT THAT TO PREJUDICE MATTEL.    10:17
11    AND I THINK THIS MAY BE AN AREA WHERE IT COMES CLOSE TO DOING
12    SO.  NOT INTENTIONALLY.  AND I DON'T BUY INTO ANY CONSPIRACY
13    THEORIES HERE THAT HAVE BEEN SUGGESTED IN THE PAPERS, BUT JUST
14    IN TERMS OF HAVING THAT EFFECT.
15         MR. MCFARLAND:  WELL, I THINK THAT --                      10:18
16         MR. KEKER:  COULD I INTERRUPT TO ADD A FACT THAT I
17    THINK YOU NEED TO KNOW IN THINKING ABOUT THIS, BECAUSE THIS
18    BUSINESS ABOUT --
19         THE COURT:  WELL, IF YOU CAN YIELD TO MR. KEKER, I
20    SUPPOSE WE CAN HEAR FROM MR. KEKER.
21         MR. MCFARLAND:  OF COURSE.
22         MR. KEKER:  IT REALLY IS MORE INFORMATIONAL.
23         I DON'T KNOW THAT MUCH ABOUT IT, BUT -- IT MAY BE A
24    FREUDIAN SLIP -- THEY KEEP MENTIONING JANUARY 7TH; THE
25    DEPOSITION WAS SUPPOSED TO BE JANUARY 9TH.  BUT LAST NIGHT THEY  10:18
```

1   NOTICED A MOTION BEFORE YOU FOR JANUARY 7TH IN WHICH MATTEL

2   SAYS THAT THEY NEED, BY OUR COUNT, 49 ADDITIONAL DEPOSITIONS;

3   INCLUDED IN THAT NUMBER ARE OPEN-ENDED 30(B)(6) DEPOSITIONS OF

4   THIRD PARTIES AND SEVERAL ATTORNEYS; THEY NEED MORE 30(B)(6)

5   TIME WITH MGA AND MGA MEXICO, INCLUDING MORE THAN 100 SUB-          10:18

6   TOPICS; THEY ARE SEEKING 19 NEW INTERROGATORIES -- THEY HAVE

7   RUN OUT OF THEIR LIMIT -- WITH, AS I UNDERSTAND IT, MANY, MANY

8   SUB-PARTS.

9           THEY HAVE NINE MORE HOURS WITH CARTER BRYANT, BUT NOW

10  THEY WANT ANOTHER 12 BEFORE THEY HAVE TAKEN THE NINE; SO THEY      10:19

11  WANT 21 MORE HOURS WITH CARTER BRYANT. AND THIS IS A MOTION

12  THEY FILED LAST NIGHT, AND NOW THEY ARE HERE TALKING ABOUT

13  EXTENDING THE DISCOVERY CUTOFF DATE.

14          WE BELIEVE THAT THEIR DESIRE IS UNSEEMLY.

15          EITHER YOU POSTPONE THE TRIAL AND EXTEND THE             10:19

16  DISCOVERY CUTOFF DATE OR YOU KEEP THE DISCOVERY CUTOFF DATE AND

17  YOU GO TO TRIAL.

18          SO WITHOUT ARGUING, I JUST THOUGHT YOU NEEDED TO KNOW

19  THAT THEY FILED THAT MOTION.

20          THE COURT: I APPRECIATE THAT INFORMATION.              10:19

21          MR. NOLAN, WOULD YOU LIKE TO ADD TO THAT?

22          I APOLOGIZE, MR. MCFARLAND.

23          MR. NOLAN: FIRST OF ALL, I APPRECIATE THE COMMENT

24  ABOUT NO CONSPIRACY. THERE IS ABSOLUTELY NONE. WE DIDN'T EVEN

25  COORDINATE THE DATES, AND MR. MCFARLAND DOESN'T REPRESENT MGA.    10:19

1    I DO THINK IT'S A LITTLE BIT IRONIC THAT WE'RE BACK

2   TWO WEEKS AFTER OUR LONG-FOUGHT DISCUSSION WITH RESPECT TO THE

3   LENGTH OF THE HARD STAY NOW TO FIND OUT THAT WHAT THEY WANT IS

4   A UNILATERAL EXTENSION OF 60 DAYS FOR THE DISCOVERY CUTOFF

5   DATE, WHERE, IN A SITUATION WHERE I THOUGHT I HAD A STRONGER          10:20

6   ARGUMENT, FRANKLY, MR. QUINN TOOK ME TO TASK AND SAID THAT WE

7   SHOULD GET THE WORK DONE.

8    HERE'S THE REAL PRECISE POINT I WANT TO MAKE AS TO

9   THIS JANUARY 7TH TRIAL DATE.  YOUR HONOR, THERE IS AN EMPLOYEE

10  OF MATTEL THAT WE HAVE WISHED TO TAKE, AND, IN FACT, THE NAME        10:20

11  IS IVY ROSS, SENIOR VICE PRESIDENT OF PRODUCT AND VISUAL DESIGN

12  OF MATTEL, A VERY IMPORTANT WITNESS, ORIGINALLY SCHEDULED FOR

13  NOVEMBER 22ND.  OUT OF THE CLEAR BLUE, BECAUSE OF A SCHEDULING

14  ISSUE FOR MS. ROSS, WE WERE TOLD THAT THE DEPOSITION WOULD BE

15  TAKEN OFF CALENDAR AND WE WOULD BE ABLE TO TAKE THE DEPOSITION        10:20

16  ON JANUARY 17TH.

17    SO I GUESS WHAT MR. KEKER AND I ARE SAYING AND

18  MR. MCFARLAND IS SAYING IS THAT WHEN YOU READ THROUGH ALL OF

19  THESE PAPERS, FRANKLY, IT DOES SEEM AS THOUGH QUINN EMANUEL

20  LIKES TO HAVE IT UNILATERALLY APPLY TO THEM THAT THEY CAN GET        10:21

21  MORE TIME BECAUSE THEY ARE GOING TO BE PREJUDICED.  BUT ALL OF

22  US ARE DEALING WITH SIMILAR ISSUES AND APPEAR TO HAVE EVEN

23  GREATER ISSUES COMING, WITH AN ADDITIONAL 49 DEPOSITIONS THAT

24  WE'LL PROBABLY OPPOSE.  THERE WERE SET LIMITS BY THE COURT BACK

25  IN THE FEBRUARY HEARING; I'VE READ THE TRANSCRIPT; THERE WAS A       10:21

NOVEMBER 20, 2007                    **Exhibit O**              EX PARTE APPLICATION
                                     **Page 299**

1   EX-PARTE COMMUNICATIONS WITH THE COURT.

2          MR. MCFARLAND:  MAY I STEP OUT NOW TO MAKE THAT PHONE

3   CALL?

4          THE COURT:  NO.  ACTUALLY, I WANT YOU TO HEAR THIS AS

5   WELL, COUNSEL, AND THEN I'LL GIVE YOU A RECESS.                    10:45

6          MR. MCFARLAND:  THANK YOU.

7          THE COURT:  ALL COUNSEL SHOULD FEEL COMFORTABLE

8   CALLING MR. HOLMES TO GET INFORMATION FROM THE DOCKET,

9   PRACTICES, WHATEVER IT MIGHT BE.  BUT NOBODY SHOULD BE CALLING

10  MR. HOLMES TO TRY TO MOVE HEARINGS, HAVE PEOPLE EXCUSED FROM      10:45

11  HEARINGS.

12         YOU ALL KNOW, PROBABLY BETTER THAN I, THE PROCEDURES

13  THAT ARE SUPPOSED TO BE USED TO CHANGE THINGS.  YOU'RE ALL

14  CAPABLE OF DRAFTING STIPULATIONS AND PROPOSED ORDERS, EX-PARTE

15  APPLICATIONS AND PROPOSED ORDERS.  DON'T BE USING MR. HOLMES      10:46

16  AND HIS RESPONSIVENESS TO RETURN PHONE CALLS AS A MEANS OF

17  TRYING TO SHORT-CIRCUIT THAT PROCESS AND GET THINGS DONE.

18  THAT'S ALL I'M GOING TO SAY, AND I TRUST YOU'LL ALL TAKE THAT

19  TO HEART.

20         IS THERE ANYTHING FURTHER FROM COUNSEL AT THIS POINT       10:46

21  IN TIME THAT NEEDS TO BE TAKEN UP?

22         MR. QUINN:  NOT THAT I'M AWARE OF, YOUR HONOR.

23         THE COURT:  MR. NOLAN?

24         MR. NOLAN:  I'M NOT THAT DIFFICULT AT MEDIATIONS, BUT

25  I HAVE NOTHING FURTHER TO ADD.                                    10:46

1          **THE COURT:** VERY WELL.

2          MR. MCFARLAND, WHY DON'T YOU GO AHEAD AND MAKE THAT

3    PHONE CALL NOW.

4          **THE COURT:** MR. SCHEPER?

5          **MR. SCHEPER:** I WAS JUST THINKING WHETHER I'M EQUALLY    10:46

6    UNGIFTED IN ALL MATTERS OF LITIGATION PROCEEDINGS, BUT BEYOND

7    THAT OBSERVATION, I HAVE NOTHING TO ADD.

8          **THE COURT:** ANYBODY ELSE?

9          VERY WELL.

10          I'M GOING TO ASK COUNSEL JUST TO WAIT AROUND; LET'S    10:46

11   MAKE SURE WE CAN GET THIS DEPOSITION SCHEDULED, AND THEN WE'LL

12   BE DONE.

13          I WISH EVERYONE A HAPPY THANKSGIVING.

14          **THE CLERK:** COURT STANDS IN RECESS.

15          (WHEREUPON A BRIEF RECESS WAS HELD.)

16          (WHEREUPON PROCEEDINGS WERE CONCLUDED.)

17

18                          CERTIFICATE

19

20   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
21   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.
23

24   _____          12-3-07
     THERESA A. LANZA, CSR, RPR                _____
25   FEDERAL OFFICIAL COURT REPORTER              DATE

EXHIBIT P REMOVED

PURSUANT TO PROTECTIVE ORDER

Exhibit Q

## Christopher Price

**From:** Christopher Price

**Sent:** Sunday, January 27, 2008 8:24 PM

**To:** Larry W. McFarland

**Cc:** Jon Corey

**Subject:** Service of Deposition Subpoena

My office has been attempting to serve you with a deposition subpoena for over a week now. Your reception has each time reported that you were out of the office for an indeterminate amount of time. Could you please advise as to when a convenient time would be to arrange service?

Thanks

Christopher E. Price
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3238
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: chrisprice@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

Exhibit Q
Page 310