QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                Plaintiff,<br><br>        vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]**<br><br>[PUBLIC REDACTED] DECLARATION OF TAMARA JIH IN SUPPORT OF MOTION OF MATTEL, INC. FOR ORDER COMPELLING PRODUCTION OF WITHHELD MGA: (1) TRADEMARK SEARCH RESULTS, (2) DATE OF FIRST USE INFORMATION, AND (3) FACTUAL DATA COMMUNICATED FOR THE PURPOSE OF FILING TRADEMARK OR OTHER INTELLECTUAL PROPERTY APPLICATIONS<br><br>Date: TBD<br>Time: TBD<br>Place: TBD<br><br>Phase 1:<br>Discovery Cut-off: January 28, 2008<br>Pre-trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

## DECLARATION OF TAMARA JIH

I, Tamara Jih, declare as follows:

1.      I am a member of the bar of the State of California and an associate of Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel").  I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.      Attached hereto as Exhibit 1 is a true and correct copy of relevant excerpts from the Deposition of Samir Khare, dated August 20, 2007.

3.      Attached hereto as Exhibit 2 is a true and correct copy of relevant excerpts from the January 3, 2008 hearing before Judge Infante.

4.      Attached hereto as Exhibit 3 is a true and correct copy of the Order Granting Mattel's Motion to Compel MGA to Produce Documents Bearing Bates Nos. MGA 0800973-0800974 and MGA 0829296-0829305, dated December 17, 2007

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 15, 2008 at Los Angeles, California.

/s/ Tamara Jih
Tamara Jih

07209/2389715.1

JIH DECLARATION ISO MOTION TO COMPEL

EXHIBIT 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an
individual,

          Plaintiff,

     · vs.                           No. CV 04-9049 SGL
                                     (RNBx)
MATTEL, INC., a Delaware
corporation,

          Defendants.

**CERTIFIED
COPY**

Consolidated with MATTEL, INC. v.
BRYANT and MGA ENTERTAINMENT, INC.
v. MATTEL, INC.

HEARING BEFORE THE HONORABLE EDWARD A. INFANTE

San Francisco, California

Thursday, January 3, 2008

Reported by:
DANA M. FREED
CSR No. 10602

JOB No. 79867

EXHIBIT____1____

PAGE____3____

1           JUDGE INFANTE:  I give you one last word,

2    Mr. Proctor.

3           MR. PROCTOR:  One last word is all I have.

4           Even -- even the best of MGA's authorities

5    for MGA, every case they've cited that I have seen

6    makes very clear that the technical information itself

7    is discoverable.  The McCook Metals case is one such

8    case that they rely on.  It makes clear that technical

9    drawings such as this are discoverable.

10          Even the Advanced Cardiovascular case, which

11   is a case MGA relies on very heavily, makes clear

12   repeatedly that technical information is discoverable.

13   And what we're looking at here is simply drawings,

14   simple technical information.  The mere fact that it

15   was attached to a fax, I do not think renders it

16   privileged.  That's my last word.

17          JUDGE INFANTE:  I appreciate your arguments.

18          Any time there's a privilege question for

19   decision, we should always go back to fundamentals and

20   examine each and every element of the attorney/client

21   privilege and I've attempted to do that.  I must also

22   indicate to you that I think the more persuasive line

23   of authority, with respect to technical information as

24   to whether or not it is legal in nature or not, is the

25   Knogo, K-n-o-g-o, out of the Court of Claims line of

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855          EXHIBIT

d

1    authority, which many other decisions have cited

2    including my own prior decisions.

3           In view of all of that, and if you will

4    forgive me for not writing a scholarly opinion, your

5    motion is denied.  I find the drawings, namely the

6    Bates numbers I guess it's 0825681 and 82, to be

7    privileged by the attorney/client privilege.  I do

8    reject work-product immunity here, because I find that

9    there was no anticipation of litigation.  You win half

10   the argument, Mr. Proctor, but it does you no good.

11          Mr. Kennedy, you can prepare the order.  The

12   order does not need to contain all the recitals.

13          MR. KENNEDY:  Yes, Your Honor.

14          JUDGE INFANTE:  The record is available,

15   should anyone wish to seek review.

16          Motion to Compel Deposition of Littler

17   Mendelson and the Cross Motion to Quash Mattel's

18   Deposition Subpoena to Littler Mendelson.  These

19   motions were each filed on December 13th.  The

20   opposition to each of these cross motions came in on

21   December 19th.  And the replies to each of these

22   motions was filed on Christmas Eve.

23          I'll let Mattel go first.

24          MR. ALGER:  Thank you, Your Honor.  Tim Alger

25   for Mattel.  The issue has been briefed in both

54

 1    directions, so I won't burden the Court with a lot of

 2    time on this.  But the fact of the matter is that we

 3    have a situation here where there's been conflicting

 4    statements made by counsel for Bryant over the last

 5    three to four years regarding the location and

 6    existence of hard drives and images for hard drives

 7    of Mr. Bryant.

 8           And the bottom line of this is that data from

 9    the key 2000 to 2002 period is missing.  And Mattel

10    has no explanation as to why it is missing.

11           And Mattel here is seeking percipient witness

12    testimony about the handling of the computer hard drives.

13    The contention by defendants raising a hobgoblin that

14    we're trying to get into attorney/client privilege and

15    work doctrine is a red herring.

16           Essentially, what we're looking for is a

17    custodian of records-type deposition to find out the

18    facts related to when the -- when the and how the

19    counsel for Bryant collected Bryant's computer hard

20    drives, what they did with them, whether they remained

21    in Bryant's counsel's possession over the last three

22    or four years or whether they were returned to

23    Mr. Bryant, or whether they ever were in the hands of

24    Littler Mendelson prior to this, earlier this year.

25           Whether they went back to Mr. Bryant, whether

1          I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4    before me at the time and place herein set forth; that

5    any witnesses in the foregoing proceedings, prior to

6    testifying, were duly sworn; that a record of the

7    proceedings was made by me using machine shorthand

8    which was thereafter transcribed under my direction;

9    that the foregoing transcript is a true record of the

10   testimony given.

11         Further, that if the foregoing pertains to

12   the original transcript of a deposition in a Federal

13   Case, before completion of the proceedings, review of

14   the transcript [  ] was [  ] was not requested.

15         I further certify I am neither financially

16   interested in the action nor a relative or employee

17   of any attorney or party to this action.

18         IN WITNESS WHEREOF, I have this date

19   subscribed my name.

20

21   Dated:    JAN - 4 2008

22

23                    DANA M. FREED

24                    CSR No. 10602

25

EXHIBIT ____1____

PAGE ____7____

EXHIBIT 2

# CONFIDENTIAL - FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

EXHIBIT 3

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12  | CARTER BRYANT, an individual, | CASE NO. C 04-09049 SGL (RNBx) |
13  |                               | JAMS Reference No. 1100049450  |
                Plaintiff,
14                                    Consolidated with
              v.                      Case No. CV 04-09059
15                                    Case No. CV 05-2727
    MATTEL, INC., a Delaware corporation,
16                                    **ORDER GRANTING MATTEL'S**
              Defendant.              **MOTION TO COMPEL MGA TO**
17                                    **PRODUCE DOCUMENTS BEARING**
                                      **BATES NOS. MGA 0800973-0800974**
18                                    **AND MGA 0829296-0829305**

19
    CONSOLIDATED WITH
20  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v. MATTEL,
21  INC.

22

23

24                      I. INTRODUCTION

25        Mattel, Inc. ("Mattel") submitted a "Motion to Compel Withheld MGA Documents That

26  Prove MGA Was Developing Bratz as Early as June 2000." Specifically, Mattel seeks an order

27  compelling MGA to produce documents bearing Bates Nos. MGA 0800973-0800974 and MGA

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                    EXHIBIT _____3_____
                                    PAGE _____14_____

                    12-17

0829296 – 0829305, which Mattel characterizes as "smoking gun" documents that prove MGA

was developing Bratz as early as June 2000. MGA contends that the disputed documents were

inadvertently produced and are protected by the attorney-client privilege. At MGA's request,

Mattel destroyed the disputed documents. Mattel, however, disputes MGA's claims of privilege

and presently seeks an order compelling production of the disputed documents. MGA submitted

an opposition together with a supporting declaration, and lodged the disputed documents for an *in*

*camera* review. Mattel submitted a reply. The matter was heard on December 14, 2007.

## II. BACKGROUND

Mattel's claims in this case include allegations that "Carter Bryant [hereinafter "Bryant"]

conceived, created and developed Bratz designs while he was employed by Mattel as a doll

designer." Mattel alleges that "using Mattel resources and while employed by Mattel, Bryant

took steps to assist MGA to produce dolls," and that he "concealed his Bratz work from Mattel

and wrongfully sold Bratz to MGA while he was a Mattel employee." Mattel's Second Amended

Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, ¶¶2, 26, attached as Ex. 3

to Proctor Decl. Mattel alleges that "as a result of the efforts of Bryant and other Mattel

employees working on Bratz (which was done without Mattel's knowledge), the Bratz dolls had

been designed and were far along in development during the time that Bryant was employed by

Mattel and prior to the time that Bryant left Mattel on October 20, 2000." Id. at Counterclaims,

¶36. Mattel claims ownership of Bratz works created by Bryant while he was employed by

Mattel, asserts that Bryant breached his duties of loyalty and fiduciary duties to Mattel, and

claims that MGA aided and abetted Bryant. Defendants dispute these allegations.

The timing of Bryant's creation and development of Bratz is a central issue in the case,

and thus has been the focus of a substantial amount of discovery. Bryant testified at his

deposition that he first pitched the Bratz concept to MGA when he met Paula Garcia in August of

2000. According to the deposition testimony of Bryant and MGA's Isaac Larian ("Larian"),

Bryant met Larian for the first time in September 2000. Larian testified that at the time of the

September meeting, Bryant had names for each Bratz doll character. Larian also testified,

however, that one of the Bratz dolls, "Yasmin," was subsequently named after his daughter

1    Jasmine.

2         Another witness, Anna Rhee, testified that Bryant asked her to paint Bratz doll heads in
3    June 2000. Bryant, however, testified that he did not ask Ms. Rhee to paint faces for Bratz dolls
4    until November 2000.

5         In the course of discovery, MGA produced documents bearing Bates Nos. MGA 0800973-
6    0800974 and MGA 0829296-0829305 to Mattel. On August 7, 2007, however, MGA sent Mattel
7    a letter asserting that the documents are protected by the attorney-client privilege and were
8    inadvertently produced. Accordingly, Mattel destroyed its copies of the disputed documents and
9    so confirmed to MGA.

10        The first document in question, marked as MGA 0800973-0800974, is an internal
11   document sheet (the "Docket Sheet") from Russ, August, Kabat & Kent, trademark prosecution
     counsel for MGA, regarding MGA's trademark application for "Bratz." The Docket Sheet
12   includes such information as the name of the mark, the country, the name of the registrant, the
13   application number, the application date (December 11, 2000), the registration number, the
14   registration date (December 2, 2003), the term, the date the renewal is due (December 2, 2013),
15   and the type of goods/services the mark is used for ("Dolls"). Mattel is particularly interested in
16   the notation "Dates of Use:  6-15-2000," which appears in a box entitled "Remarks" on the
17   second page of the Docket Sheet.

18        The second document in question, marked as MGA 0829296-0829305, is a facsimile
19   dated December 7, 2000 (the "Fax") from Lucy B. Arant, trademark counsel at Russ, August,
20   Kabat & Kent to Paula Garcia (then known as Paula Traentafellas) at MGA. The first page of the
21   Fax includes a written message from Ms. Arant to Ms. Garcia stating that the Fax attaches four
22   trademark applications for Isaac Larian's review and signature. The message also includes the
23   following remarks by Ms. Arant to Ms. Garcia:  "You indicated that all four of the applications
24   have a date of first use of June 15, 2000. Please confirm that this is correct." The remainder of
25   the Fax consists of the "intent to use" trademark applications for "Jade," "Yasmin," "Sasha," and
26   "Bratz." These "intent to use" trademark applications do not include any information regarding
27   "dates of use."

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                              3

     EXHIBIT _____ 3 _____

     PAGE _____ 16 _____

1    Mr. Larian executed MGA's trademark applications for "Jade," "Yasmin," "Sasha," and
2  "Bratz" on the day the Fax was sent, December 7, 2000, and the applications were filed with the
3  Patent and Trademark Office ("PTO"). MGA subsequently filed a statement of use for each of
4  the four marks that specified dates in May of 2001 for the "date of first use" and a "date of first
5  use in commerce," which are significantly different from the June 15, 2000 date noted in the
6  Docket Sheet and the Fax.

7    Mattel contends that the disputed documents, and in particular the June 15, 2000 date
8  noted therein, are relevant to its claim that Bryant secretly worked with MGA on Bratz while he
9  was employed by Mattel. Bryant was employed at Mattel from January 4, 1999 until October 20,
10 2000. Mattel also contends that the disputed documents are relevant to challenge the credibility
11 of defendants' key witnesses, and to substantiate the testimony of Ms. Rhee.

12    Furthermore, Mattel contends that neither of the disputed documents are protected by the
13 attorney-client privilege. Mattel contends that the Docket Sheet is not a communication, much
14 less a communication from MGA to counsel for the purpose of obtaining legal advice. Rather, in
15 Mattel's view, the Docket Sheet is an internal law firm document that contains basic facts that are
   not privileged.

16    Mattel also contends that even if the Docket Sheet were a privileged communication, the
17 information contained within it, including the date of first use information, is not privileged
18 because MGA did not communicate the information for the purpose of keeping it confidential.
19 Rather, Mattel contends that MGA communicated the date of first use and other information listed
20 on the Docket Sheet to its trademark attorneys so that they could use the information to register
21 MGA's marks with the PTO. Indeed, Mattel points out that after MGA submitted its "intent to
22 use" trademark applications, MGA submitted a "statement of use" for each of its marks to the
23 PTO that specified a "date of first use," although the specified "date of first use" was not June 15,
24 2000.

25    Moreover, Mattel contends that applicants for trademarks must disclose to the PTO a date
26 of first use of the mark. Mattel explains that an applicant may initially apply to register a
27 trademark by filing an application for use of a trademark or by filing an application for bona fide

28

EXHIBIT ___3___

PAGE ___17___

1   intention to use a trademark (see 15 U.S.C. §1051(a) and (b)), but in either case the applicant

2   must eventually disclose a "date of first use" of the mark. A use-based application must include

3   the date of first use of the mark at the outset. See 15 U.S.C. §1051(a)(1). In contrast, an "intent

4   to use" applicant must, within six month of the PTO's issuance of notice of allowance, file a

5   "statement that verifies the mark is in use in commerce, the date of first use in commerce, the

6   goods and services in connection with the mark are used in commerce, and the manner in which

7   the mark is being used." Eastman V. Kodak Co. v. Bell & Howell Document Management

8   Products Co., 994 F.2d 1569, 1570 (C.A. Fed. 1993). Mattel reasons that because MGA was

9   required to submit information about the date of first use to the PTO in order for MGA to obtain a

10  trademark registration, MGA could not have provided the information to trademark counsel with

    any reasonable expectation or intention that such information would remain confidential.

11          Mattel contends that the Fax is not privileged because it is a communication from counsel

12  to MGA, not vice versa, and that the attachments are non-privileged trademark applications.

13  Mattel also contends that the Fax is not privileged because it does not reveal any confidential

14  communication for the purpose of rendering legal advice. Rather, Mattel reiterates that MGA was

15  required to submit information about the date of first use to the PTO in order for MGA to obtain a

16  trademark registration, and therefore MGA could not have expected or intended that such

17  information remain confidential.

18          MGA contends that the declaration of MGA employee Paula Garcia demonstrates that the

19  communications by MGA to its counsel regarding date of first use for the Bratz doll marks were

20  intended to be confidential attorney-client communications for the purpose of obtaining legal

21  advice for trademark applications. Accordingly, MGA contends that the references to the date of

22  first use in the Docket Sheet and the Fax are protected because the references reflect a client

23  confidence transmitted as part of a privileged communication.

24          MGA contends that Ms. Arant's role was not as a "mere conduit of data" or transcriber.

25  See e.g., Knogo Corp. v. United States, 213 U.S.P.Q. 936, 940, 1980 WL 39083 (Ct. Cl. Trial

26  Div. 1980) (rejecting the characterization of patent attorneys as mere "conduits" to the PTO).

27  Instead, MGA describes her role as providing what information should be included in the

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ____3____

PAGE ____18____

5

1  trademark applications and how it should be sent out. MGA contends that Ms. Arant requested

2  "dates of first use" information from Ms. Garcia in connection with advising MGA regarding

3  "intent to use" trademark applications. MGA's Opposition, pp. 5-6. According to MGA, "dates

4  of first use" information has significance to "intent to use" applications for two reasons: first, an

5  "intent to use" application is only appropriate for marks not already in use; and second, an

6  applicant has six months from the "date of first use" to use the mark before it is abandoned.

7  MGA emphasizes, however, that "dates of first use" are not among the facts disclosed to the PTO

8  as part of an "intent to use" application. MGA reasons, therefore, that it is incorrect for Mattel to

9  assume that Ms. Garcia intended her communications regarding date of first use to be made

10  public.

11       MGA also contends that Mattel erroneously relies on MGA's later filings of the

12  "statement of use" documents to argue that Ms. Garcia conveyed "dates of first use" to Ms. Arant

13  with the intent that those dates would be publicly disclosed. MGA contends that Mattel has no

14  evidentiary support for such a conclusion, and that indeed, Mattel's submissions show that

15  different attorneys from two different law firms prepared the "statement of use" filings for MGA

16  and specified different "dates of first use" for each mark than the June 15, 2000 date that Ms.

17  Garcia allegedly communicated to Ms. Arant.

18       MGA contends further that "[e]ven as to information that made its way into the 'intent to

19  use applications,' the documents generated in the preparation and drafting of applications that

20  reflect attorney-client discourse are shielded by the attorney-client privilege." MGA's Opposition

21  at p.7. Borrowing the reasoning in <u>McCook Metals L.L.C. v. Alcoa Inc.</u>, 192 F.R.D. 242, 252

22  (N.D. Ill. 2000), MGA asserts that drafts "necessarily reflect the communications between a client

23  and his attorney as the attorney attempts to put forth the invention in the best light possible to

24  protect a client's legal right." MGA also contends that attorney-client protection extends to

25  factual information provided to counsel for the purpose of providing legal advice. <u>See e.g. In re</u>

26  <u>Spalding Sports Worldwide, Inc.</u>, 203 F.3d 800 (Fed. Cir. 2000) (invention record submitted to

27  legal counsel for the purpose of obtaining legal advice was privileged); <u>TeKnowledge Corp. v.</u>

28  <u>Akamai Techs., Inc.</u>, 2004 U.S. Dist. LEXIS 19109, at *6 (N.D. Cal. Aug. 10, 2004) ("technical

1  information communicated to a patent attorney does not warrant different treatment than any

2  other information communicated to an attorney in the process of obtaining legal services.").

3      As for Mattel's argument that the documents in question are "smoking gun" evidence,

4  MGA responds that the Bratz launch occurred in June 2001, at which time the marks were first

5  used. MGA asserts that "[a]ny contrary information contained in the documents in question was

6  an error that should have no bearing on whether the information is privileged." MGA's

7  Opposition, p.2. Ms. Garcia explains in her declaration that the June 15, 2000 date was

8  erroneous. MGA also contends that there could have been no "date of first use" of Bratz in June

9  2000 within the meaning of trademark law. MGA reasons that the Lanham Act requires that "first

10  use" be "actual use in commerce," or "bona fide use [] in the ordinary course of trade," (Fila

11  Sport S.p.A. v. Diadora America, Inc., 141 F.R.D. 75, 78 (D. Ill. 1991), and that Bratz was not

    being used in commerce in June 2000.

12                              III. DISCUSSION

13      The essential elements of the attorney-client privilege are: "(1) When legal advice of any

14  kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the

15  communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the

16  client's instance, permanently protected (7) from disclosure by the client or by the legal adviser

17  (8) unless the protection be waived." United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002).

18  The burden is on the party asserting the privilege to establish all the elements of the privilege.

19  United States v. Munoz, 233 F.3d 1117, 1128 (9th Cir. 2000). "Because the attorney-client

20  privilege has the effect of withholding relevant information from the factfinder, it is applied only

21  when necessary to achieve its limited purpose of encouraging full and frank disclosure by the

22  client to his or her attorney." Clark v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir.

23  1992).

24          MGA has Failed to Establish that the Docket Sheet is Privileged

25      MGA argues that the attorney-client privilege extends to the Docket Sheet because it was

26  a "paper [] prepared by an attorney or at an attorney's request for the purpose of advising the

27  client, [which was] based on and would tend to reveal the client's confidential communications."

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                              7

EXHIBIT ____3____

PAGE ____20____

1  MGA's Opposition at p.9 (citing In re Fischel, 557 F. 2d 209,211 (9th Cir. 1977)).  MGA's

2  argument, however, is unsupported by evidence.

3       The declaration of Paula Garcia fails to specifically address the Docket Sheet.  Instead,

4  Ms. Garcia generalizes as follows:

5            Prior to the launch of Bratz, I communicated with outside lawyers for

6       MGA in connection with protecting MGA's trademarks for the "Bratz" line of

7       products it hoped to launch in June 2001.  These communications were for the

8       purpose of obtaining legal advice from MGA's trademark counsel, including

9       communications in or about December 2000 with Lucy Arant of Russ, August,

     Kabat & Kent LLP.  In general, I intended and expected my communications with

10       counsel in connection with MGA's trademark filings to be confidential, including

11       communications regarding the anticipated date of MGA's first use of the "Bratz"

12       marks.

13  Garcia Decl. In Support of MGA's Opposition, ¶3.

14       Nowhere in the evidentiary record submitted by MGA does MGA explain why or how the

15  Docket Sheet was created or maintained.  MGA does not explain who created the Docket Sheet or

16  provide the source of the information contained therein.  MGA has not established the requisite

17  elements of the attorney-client privilege for this specific document.  See e.g. Automated

18  Technologies, Inc. v. Knapp Logistics & Automation, Inc., 382 F.Supp.2d 1372, 1375 (N.D. Ga.

19  2005) (party invoking privilege has the burden of proving "that the particular communications

20  were confidential"); Kodish v. Oakbrook Terrace Fire Protection Dist., 235 F.R.D. 447, 453

21  ("The party seeking to assert the privilege must show that the particular communication was part

22  of a request for advice or part of the advice, and that the communication was intended to be and

23  was kept confidential.").  MGA has failed to carry its burden of establishing that the Docket Sheet

24  is protected by the attorney-client privilege.

               <u>MGA has Failed to Establish That the Fax is Privileged</u>

25       An in camera review of the Fax confirms that the document constitutes a communication

26  between MGA and counsel regarding MGA's trademark applications.  That the Fax constitutes a

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                    8

EXHIBIT ___3___

PAGE ___21___

1  communication between MGA and counsel, however, is insufficient without more to establish

2  that the Fax is privileged.  MGA must also establish that the Fax is a confidential communication

3  for the purpose of rendering legal advice.  See e.g. Automated Technologies, Inc. v. Knapp

4  Logistics & Automation, Inc., supra; Kodish v. Oakbrook Terrace Fire Protection Dist., supra.

5  MGA has failed to do so.  Ms. Garcia's declaration does not even mention the Fax, much less

6  specify that the information contained therein was intended to be confidential for the purpose of

7  rendering legal advice.  Instead, Ms. Garcia speaks in generalities about communications

8  regarding MGA's trademark applications.  In fact, the Fax does not contain any legal opinions or

9  advice.  The only attorney-client communication reflected in the Fax is the statement regarding

10  the "date of first use."

11       MGA could not have had a reasonable expectation that the June 15, 2000 "date of first

12  use" stated in the Fax would be kept confidential.  As Mattel points out, in order to obtain a full

13  trademark registration, an applicant must disclose the "dates of first use" to the PTO.  This is true

14  regardless of whether the applicant initially files an "intent to use" application or a use-based

15  application.  See 15 U.S.C. §1051(a)(2) (use-based application must include the date of first use

16  of the mark); Eastman V. Kodak Co. v. Bell & Howell Document Management Products Co., 994

17  F.2d at 1570 (an "intent to use" applicant must file a "statement that verifies . . . the date of first

    use in commerce).

18       MGA relies on Ms. Garcia's declaration that she generally expected her communications

19  with trademark counsel to be confidential.  However, a client's subjective belief as to whether a

20  communication is privileged must be reasonable in order for the attorney-client privilege to

21  attach.  Speaker ex rel. Speaker v. County of San Bernadino, 82 F.Supp.2d 1105, 1112-1113

22  (C.D. Cal. 2000) (client's subjective belief "should be reasonable in order to lay claim to the

23  protections of the privilege"); Griffith v. Davis, 161 F.R.D. 687, 696 (C.D. Cal. 1995) (attorney-

24  client privilege not applicable to information communicated to attorney where client knew

25  information would be used in his employer's administrative investigation).  Although a client's

26  subjective belief of confidentiality is necessary for the attorney-client privilege to attach, it is not

27  sufficient.  See In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 923 (8th Cir. 1997)

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT _____3_____

PAGE _____22_____

1  ("[W]e know of no authority . . . holding that a client's beliefs, subjective or objective, about the
2  law of privilege can transform an otherwise unprivileged conversation into a privileged one.").

3       Nevertheless, MGA attempts to identify confidential reasons why Ms. Garcia might have
4  communicated "date of first use" information to Ms. Arant. According to MGA, the only reason
5  Ms. Arant solicited "date of first use" information from Ms. Garcia was (i) to determine whether
6  an "intent to use" application would be proper and (ii) to determine when MGA should file its
7  applications. MGA asserts that "these legal considerations led Ms. Arant to request 'dates of first
8  use' from Ms. Garcia." MGA's Opposition at p.6. However, there is no evidence of record to
9  substantiate MGA's contentions.

10       MGA's failure to provide evidence to substantiate its claim that the Fax reveals the
11  substance of a confidential communication is fatal to its claim of privilege. Because a mark's
12  date of first use is factual information that must be conveyed to the PTO to secure a trademark
13  application, communication of this information is not privileged. Weil Ceramics & Glass, Inc. v.
14  Work, 110 F.R.D. 5000, 504 (E.D. N.Y. 1986) ("The party claiming the privilege must clearly
15  show that a document renders legal advice and does not, for example, merely contain facts later
16  disclosed in a patent or trademark application"); see also United States v. White, 950 F.2d 426,
17  430 (7th Cir. 1991) ("when information is disclosed for the purpose of assembly into a bankruptcy
18  petition and supporting schedules, there is no intent for the information to be held in confidence
   because the information is to be disclosed on documents publicly filed").

19       MGA contends, however, that the June 15, 2000 date was not actually disclosed to the
20  PTO and points out that Mattel's own submissions show that different attorneys from two
21  different law firms prepared the "statement of use" filings for MGA and specified different "dates
22  of first use" for each mark than the June 15, 2000 date that Ms. Garcia allegedly communicated to
23  Ms. Arant. That the June 15, 2000 date was not actually disclosed is irrelevant. What is relevant
24  is whether Ms. Garcia actually and reasonably intended and expected the "dates of first use"
25  information she provided to Ms. Arant to remain confidential when she made the communication,
26  not whether the information was actually conveyed to the public. See In re Grand Jury
27  Proceedings, 727 F.2d 1352, 1358 (4th Cir. 1984) (information given to attorney to prepare

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

10

EXHIBIT _____3_____

PAGE _____23_____

1   prospectus was not protected by attorney-client privilege, even though no prospectus was ever

2   actually issued); United States v. Lawless, 709 F.2d 485, 487 (7th Cir. 1983) ("[I]f the client

3   transmitted the information so that it might be used on the tax return, such a transmission destroys

4   any expectation of confidentiality.").

5       Lastly, MGA's reliance on McCook, supra, and other related caselaw[1] is misplaced.  In

6   McCook, the court held that draft patent applications were privileged because they "contain[ed]

7   the legal opinion and advice of the attorney regarding the wording of technical specifications,

8   claims, and prior art, and whether an item is included, all of which are necessary to secure a legal

9   claim for the client." McCook, 192 F.R.D. at 252-253.  In contrast, the Fax at issue in this case

10   reflects no such attorney opinions or advice.  Indeed, the only attorney-client communication

11   reflected in the Fax is the statement regarding the "date of first use."  The cases cited by MGA are

12   inapplicable to communications conveying date of first use information in the trademark context

13   because, as discussed previously, a trademark attorney does not have discretion regarding whether

    to disclose the "date of first use" information to the PTO.[2]

14                                    IV. CONCLUSION

15       For the reasons set forth above, Mattel's motion to compel MGA to produce documents

16   bearing Bates Nos. MGA 0800973-0800974 and MGA 0829296-0829305 is granted.  MGA shall

17   produce said documents on or before December 28, 2007.

18       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

19   Master, Mattel shall file this Order with the Clerk of Court forthwith.

20

21   Dated: December 17, 2007

22                                    HON. EDWARD A. INFANTE (Ret.)
                                      Discovery Master

23

24   _____

25   [1] See Rohm v. Haas Co. v. Brotech Corp., 815 F.Supp. 793, 797 (D. Del. 1993); Hyuk Suh v. Choon Sik Yang, 1997 U.S. Dist. LEXIS
     20077 (N.D. Cal. No. 18, 1977); Conner Peripherals, Inc. v. Western Digital Corp., 1993 U.S. Dist. LEXIS 20149 (N.D. Cal. June 8, 1993);
     TeKnowledge Corp. v. Akamai Techs. Inc., 2004 U.S. Dist. LEXIS 19109 (N.D. Cal. Aug. 10, 2004).

26   [2] Mattel argues in the alternative that even if the disputed documents were privileged, MGA has waived the privilege. Because MGA

27   has failed to establish the requisite elements of the attorney-client privilege as to the disputed documents, it is unnecessary to address Mattel's
     waiver argument herein.

28   Bryant v. Mattel, Inc.,                                                                    11
     CV-04-09049 SGL (RNBx)

                                      EXHIBIT _____3_____

                                      PAGE _____24_____

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on December 17, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL MGA TO PRODUCE DOCUMENTS BEARING BATES NOS. MGA 0800973-0800974 AND MGA 0829296-0829305 in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on December 17, 2007, at San Francisco, California.

*Sandra Chan*

Sandra Chan

EXHIBIT ___3___

PAGE ___25___

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc
(RNBx), AO279, DISCOVERY, RELATED-G

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**Notice of Electronic Filing**

The following transaction was entered by Proctor, Brett on 12/19/2007 at 11:31 AM PST and filed on
12/19/2007
**Case Name:**         Carter Bryant v. Mattel Inc
**Case Number:**       2:04-cv-9049
**Filer:**             Mattel Inc
**Document Number:** 1291

**Docket Text:**
Order Granting Mattel's Motion to Compel MGA to Produce Documents Bearing Bates Nos. MGA
0800973-0800974 and MGA 0829296-0829305 filed by Defendant Mattel Inc re: MOTION to Compel
[892] (Proctor, Brett)

**2:04-cv-9049 Notice has been electronically mailed to:**

Timothy L Alger    timalger@quinnemanuel.com

Christa M Anderson   canderson@kvn.com

Jon D Corey    joncorey@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Raoul D Kennedy    rkennedy@skadden.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com

Mark E Overland    moverland@obsklaw.com

Michael H Page    mhp@kvn.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

EXHIBIT _____ 3
PAGE _____ 26

John Elliot Trinidad    jtrinidad@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock    awaltonhadlock@kvn.com

Matthew M Werdegar    mwerdegar@kvn.com

Michael T Zeller    michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Michelle M Campana
Skadden Arps Slate Meagher & Flom LLP
4 Times Square
New York, NY 10036-6522

John W Keker
Keker & Van Nest
710 Sansome St
San Francisco, CA 94111-1704

Kenneth A Plevan
Skadden Arps Slate Meagher & Flom
4 Times Sq
New York, NY 10036-6522

John B Quinn
Quinn Emanuel Urquhart Oliver & Hedges
865 S Figueroa St, 10th Fl
Los Angeles, CA 90017-2543

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\laurakinsey\Desktop\Order.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/19/2007] [FileNumber=5098514-0
] [2d14cdc29c7ddc71c30064ca049d39386c600cb2ac7d044f37070402830168fc55d
dd322ca288a4b7fd94efe0aa4409654cd10545477e534424c90b3cff25950]]

EXHIBIT ____3____

PAGE ____27____

## Laura Kinsey

| | |
|---|---|
| **From:** | Dylan Proctor |
| **Sent:** | Monday, December 17, 2007 1:42 PM |
| **To:** | MGA / Bryant Team; Laura Kinsey |
| **Subject:** | FW: Bryant, Carter vs. Mattel, Inc.; Order Granting Mattel's Motion to Compel MGA to Produce Documents Bearing Bates Nos. MGA 0800973-0800974 and MGA 0829296-0829305 |

**Attachments:** Order Granting Mattel's Motion to Compel - 121707.pdf

fyi and file. laura, pls file with court

B. Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3112
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail:  dylanproctor@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the
recipient(s) named above.  This message may be an attorney-client communication and/or work product and as
such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible
for delivering it to the intended recipient, you are hereby notified that you have received this document in error
and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have
received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Chan Sandra [mailto:SChan@JAMSADR.com]
**Sent:** Monday, December 17, 2007 12:26 PM
**To:** John Quinn; Michael T Zeller; Jon Corey; Duane Lyons; Timothy Alger; Dominic Surprenant; Dylan Proctor;
Shane McKenzie; Bridget Hauler; Tamar Buchakjian; Juan Pablo Alban; jkeker@KVN.com; mhp@kvn.com;
cma@kvn.com; jtrinidad@kvn.com; tnolan@skadden.com; rkennedy@skadden.com; apark@skadden.com;
hposner@skadden.com; croth@skadden.com; cholden@mgae.com; tmiller@skadden.com; mwerdegar@kvn.com
**Subject:** Bryant, Carter vs. Mattel, Inc.; Order Granting Mattel's Motion to Compel MGA to Produce Documents
Bearing Bates Nos. MGA 0800973-0800974 and MGA 0829296-0829305

Dear Counsel:

Attached please find the Discovery Master's Order Granting Mattel's Motion to Compel MGA to Produce
Documents Bearing Bates Nos. MGA 0800973-0800974 and MGA 0829296-0829305 and a proof of service.
Please kindly file it with the Court.

Best Regards,
Sandra Chan
JAMS ·
Two Embarcadero Center, Suite 1500
San Francisco, CA  94111
Tel:  415-982-5267

EXHIBIT ___3___

PAGE ___28___

Direct Dial: **415-774-2611**
Fax: **415-982-5287**
email: schan@jamsadr.com

EXHIBIT ___3___

PAGE ___29___

12/17/2007