QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order of December 6, 2006]**<br><br>[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ANNE WANG<br><br>Date:  TBD<br>Time:  TBD<br>Place: TBD<br><br>Phase 1:<br>Discovery Cut-off: January 28, 2008<br>Pre-trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

07209/2392317.4

REPLY IN SUPPORT OF MOTION TO COMPEL

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

After needlessly forcing Mattel to resort to motion practice, Anne Wang agreed to produce nearly every document Mattel sought to compel in its Motion -- despite steadfastly refusing to do so during the meet and confer process. Based on her production of those documents and her counsel's representation that no other responsive documents are being withheld (except as listed in her privilege log), the only issue remaining is whether her Retention Agreement with Carter Bryant should be produced. It should be.

Wang's Retention Agreement with Bryant may contain information that bears directly on Bryant's and MGA's liability in this litigation. Wang testified that her representation of Bryant commenced in the September/October 2000 time period. The date of the Agreement itself (as reflected by the date of execution, in a footer, or on a fax line) could clarify or rebut this, and show when Bryant began negotiating his agreement with MGA. The Retention Agreement could also contain other highly probative information, such as a statement that Bryant was a Mattel employee at the time of the Agreement, a fax header indicating that Bryant faxed the Agreement on a Mattel fax machine, or the general nature of the work performed by Wang for Bryant. All of this information bears on the timing and scope of Bryant's disloyal activities and, because MGA claims to have relied in good faith on Wang's representations to it, MGA's knowledge of wrongdoing. Wang's Retention Agreement with Bryant is clearly relevant.

Nor is the agreement privileged. In fact, Wang herself does not dispute that the Retention Agreement contains non-privileged information, such as the identity of the client, the nature of the fee arrangement and the date it was executed. Instead, she withholds the Agreement based on her assertion that it also reflects the advice Bryant hoped she would render. The law is clear, however, that the general

nature of the work she was asked to perform is not privileged. It is also clear that documents that contain both privileged and non-privileged information (assuming the agreement contains some privileged information) should be produced in redacted form, rather than withheld entirely.

This Motion now relates to a single document, which is both relevant and substantially non-privileged. The Court should compel Wang to produce her Retention Agreement with Bryant in redacted form and list the redactions on a privilege log, such that all non-privileged information therein is disclosed to Mattel.

## Argument

### I. THE COURT SHOULD COMPEL WANG TO PRODUCE HER BRYANT RETENTION AGREEMENT

#### A. Wang's Retention Agreement with Bryant Is Relevant

Mattel claims in this case that, while employed by Mattel, Bryant took steps to assist MGA to produce Bratz, "concealed his Bratz work from Mattel and wrongfully sold Bratz to MGA while he was a Mattel employee."[1] Based on these allegations and others, Mattel claims ownership of Bratz based on the works Bryant created while employed by Mattel, asserts that Bryant breached his duties of loyalty and fiduciary duties to Mattel, and claims that MGA aided and abetted Bryant in that regard.

Wang's Retention Agreement with Bryant may contain information that is directly relevant to Bryant's and MGA's liability for these claims. First, the date of the agreement itself could be highly probative. As Wang points out, she testified

---

[1] Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007 ("Second Amended Answer and Counterclaims") at Counterclaims ¶¶ 2, 26, attached as Exhibit 1 to the Supplemental Declaration of B. Dylan Proctor dated February 19, 2008 ("Supp. Proctor Dec.") and filed concurrently herewith.

-2-

REPLY IN SUPPORT OF MOTION TO COMPEL

that her representation of Bryant was limited to the September/October 2000 time period. (Opposition at 8). Mattel is entitled to access to documents that could potentially impeach that claim. The Agreement could contain a fax header or other date information which would indicate when the Retention Agreement was signed or transmitted, and thereby inform when Bryant began negotiating his agreement with MGA.

      Moreover, the Agreement could be probative in a myriad of other ways, depending on what it says. For example, the Retention Agreement could recite that Bryant was a Mattel employee or had an Inventions Agreement with Mattel. This would be highly relevant to MGA's good faith defense, which is predicated on Wang's alleged representations to David Rosenbaum, MGA's lawyer, that Bryant owned the rights to Bratz (MGA denies knowing Bryant had signed an Inventions Agreement with Mattel).[2] To take another example, a fax header could also show if Bryant faxed the Retention Agreement on a Mattel fax machine, which would further show Bryant's use of Mattel's resources to pursue his disloyal activities. As the Court will recall, Victoria O'Connor, a former MGA executive, testified that ███████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[2] Deposition of David Rosenbaum, dated January 25, 2008 ("Rosenbaum Depo.") at 75:12-80:7, Supp. Proctor Dec., Exh. 2.
[3] Deposition of Victoria O'Connor, dated December 6, 2004 ("O'Connor Depo.") at 18:13-18, Supp. Proctor Dec., Exh. 3.
[4] Id.

The Retention Agreement could also show the general nature of the work performed by Wang for Bryant, potentially rebutting Bryant's testimony in this regard. As discussed further below, the general nature of the work Bryant asked Wang to perform is not privileged. Clarke v. American Commerce Natl. Bank, 974 F.2d 127, 129 (9th Cir. 1992) ("Our decisions have recognized that the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege ."). Yet it is obviously relevant.

The Retention Agreement also likely includes information regarding the terms of Bryant's fee arrangement with Wang. The fact that the Retention Agreement was executed prior to the commencement of this litigation does not make this information any less relevant. Wang indisputably represented Bryant in the key time period of September and October 2000 and advised him regarding his Bratz agreement with MGA. The identity of who was paying Bryant's legal fees in 2000 and the terms of any such payment agreement are discoverable. Obviously, if contrary to the evidence adduced to date,[5] MGA paid Wang's fees in 2000, that would be highly relevant to a number of issues, including its good faith defense which assumes good faith reliance on Wang's representations in an arms length transaction.

It is impossible to fully identify all the ways in which the agreement could be relevant without seeing it. But it is clear that information likely contained in the Retention Agreement could establish the timing of Bryant's disloyal activities and MGA's knowledge of its wrongdoing, among other things. Under the liberal standards of the Federal Rules, the Retention Agreement is unquestionably relevant

---

[5] Opposition at 7, citing Deposition of Anne Wang, dated January 28, 2008, attached as Exhibit B to the Declaration of Linda Burrow, dated February 11, 2008.

and discoverable. See Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party"); U.S. ex rel. Schwartz v. TRW, Inc., 211 F.R.D. 388, 392 (C.D. Cal. 2002) ("Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at trial."); Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc., 175 F.R.D. 646, 650 (C.D. Cal. 1997) ("Moreover, the 'information is 'relevant' if it relates to the claim or defense of the party seeking discovery or any other party").

### B. Wang's Retention Agreement with Bryant Is Not Privileged

Nearly all of the information in Wang's Retention Agreement with Bryant is non-privileged, including the identity of the client, the amount of the fee, the fee arrangement, the date of the agreement, any general terms, and the general purpose of the work performed, among other things. Therefore, it should be ordered produced.

Indeed, Wang never disputes that the Retention Agreement contains non-privileged information and is not privileged in its entirety. She concedes that, at the least, "client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege." United States v. Blackman, 72 F.3d 1418, 1424 (9th Cir. 1995). Although Wang contends that the Retention Agreement also reflects the privileged advice Bryant hoped she would render and the tasks he intended that she perform (Opposition at 8), this would not justify withholding the document in its entirety even if true. The law is clear that documents that contain both privileged and non-privileged information should be produced in redacted form, rather than withheld entirely. See, e.g., Linder v. National Security Agency, 94 F.3d 693, 698 (D.C. Cir. 1996) ("redaction may often be a proper and feasible technique in cases involving privileged documents"); Jesco Constr. Corp. v. Nationsbank Corp., No. 98-1657, 2000 WL 739297, at *3

1  (E.D. La. June 7, 2000) (ordering any privileged portions "should be blacked-out, however no pages are to be withheld in their entirety"); Leach v. Quality Health Servs., 162 F.R.D. 499, 502 (E.D. Pa. 1995) ("the Law Firm should produce its actual billing records, but should redact any privileged information appearing therein"); Reich v. Local 1, American Postal Workers Union, AFL-CIO, No. 93 C 5167, 1994 WL 33971, *3 (N.D. Ill. Feb. 4, 1994) ("to the extent that documents can be redacted to omit potentially compromising information, the Secretary is directed to produce these documents").

Moreover, under controlling law, the general nature of the work an attorney performs is not privileged. Clarke, 974 F.2d at 129 ("Our decisions have recognized that the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege.") (citing In re Grand Jury Witness (Salas and Waxman), 695 F.2d 359, 361-362 (9th Cir. 1982). Thus, statements regarding the general nature of the work Bryant intended Wang to perform are not privileged. See id. This is all that most retention agreements include when stating the type of work an attorney is retained to perform. To the extent Wang's Retention Agreement with Bryant contains unusual detail regarding the work Wang was to perform for Bryant, Wang may produce the Agreement in redacted form and list any redactions on a privilege log.

C.  **Mattel Properly Met and Conferred with Wang in Accordance with Local Rule 37-1**

Local Rule 37-1 requires that prior to filing a discovery motion, the parties confer in a "good faith effort to . . . eliminate as many of the disputes as possible." Local Rule 37-1. Mattel did just that on December 18, 2007, when the

1 parties met and conferred regarding Wang's deficient responses to Mattel's
2 subpoena.[6] During the conference, Mattel raised all the issues raised by this Motion,
3 including whether Wang would produce the entries on her privilege log described as
4 draft agreements between MGA and Bryant.[7] Wang firmly refused to produce any
5 of these documents.[8] Mattel also questioned whether Wang would produce these
6 documents even in redacted form, and her counsel firmly refused that request as
7 well.[9] Mattel questioned whether Wang was withholding responsive documents that
8 were not logged.[10] Wang did not have a response at that time to this question but
9 agreed to get back to Mattel.[11]

10         On December 26, 2007 Wang responded to Mattel by letter, stating that
11 she had not represented MGA or Larian at any time and did not recall representing
12 another client in transaction adverse to MGA or Larian.[12] She did not, however,
13 provide any assurance that she was not withholding responsive, non-privileged
14 documents or offer to reconsider any of her untenable positions -- until Mattel filed
15 this Motion.[13] Wang's assertion that Mattel failed to "take the time to complete the
16 meet and confer process" is simply false. (Opposition at 6). Mattel properly raised
17 each of the issues in its Motion with Wang at the December 18 meet and confer. It

---

[6] Declaration of B. Dylan Proctor in Support of Mattel, Inc.'s Motion to Compel Production of Documents by Anne Wang, dated January 28, 2008 ("Proctor Dec."), at ¶ 7.
[7] Letter from Dylan Proctor to Linda Burrow, dated December 19, 2007, Proctor Dec., Exh. 6.
[8] Id.
[9] Id.
[10] Id.
[11] Id.
[12] Letter from Linda Burrow to Dylan Proctor, dated December 26, 2007, Proctor Dec., Exh. 11.
[13] Supp. Proctor Dec., ¶ 2.

is Wang who refused to produce any of the withheld documents until *after* Mattel filed its Motion.

Only after Mattel filed its Motion did Wang agree to produce most of the documents at issue in Mattel's Motion.[14] Wang represented that one of the withheld draft agreements between MGA and Bryant contains handwritten notes that she made and then transmitted in June 2004 in response to a request from Bryant's counsel, Larry McFarland, after the commencement of litigation.[15] Wang also stated that it was not possible to produce a redacted version of the draft because there were too many notes on the document, and assured Mattel that the underlying draft had already been produced to Mattel.[16] Based on these representations, Mattel withdrew its Motion as to that draft agreement, Privilege Log Entry No. 2.

Wang further represented that she has not withheld any responsive documents that are not listed on her privilege log.[17] Wang admits that MGA/Bryant are paying her counsel's legal fees, but represented that there is no agreement and are no written communications regarding the same.[18] Based on Wang's representations that she has not withheld any responsive documents except as logged, Mattel agreed to withdraw the portion of its Motion seeking production of all withheld documents as well, see Motion at 8-10.

All of this could have been resolved pre-filing. It was not resolved only because of Wang's recalcitrance, not because Mattel did not attempt to meet and confer in good faith. In any event, Wang admits that at this time, the "meet and confer process has in fact been completed," and she continues to refuse to produce

---

[14] Id.
[15] Supp. Proctor Dec., ¶ 3.
[16] Id.
[17] Supp. Proctor Dec., ¶ 4.
[18] Id.

her Retention Agreement with Bryant. (Opposition at 5). Thus, Wang's assertion that Mattel originally failed to properly meet and confer is irrelevant to the Retention Agreement now at issue.

## Conclusion

For the foregoing reasons, the Court should compel Wang to immediately produce her Retention Agreement with Bryant in its entirety or in redacted form, with any redactions listed on a privilege log, such that all non-privileged information therein, including the general nature of the work she was requested to perform, is disclosed to Mattel.

DATED: February 19, 2008      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ B. Dylan Proctor
B. Dylan Proctor
Attorneys for Plaintiff
Mattel, Inc.