QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>  Plaintiff,<br><br>  vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>  Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]**<br><br>MATTEL, INC.'S NOTICE OF CHANGE OF HEARING ON APPLICATION TO ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLE ITEMS<br><br>Hearing Date: TBA<br>Time:   TBA<br>Place:   TBA<br><br>**Phase 1**<br>Discovery Cut-Off: January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008<br><br>[Notice of Lodging filed concurrently herewith] |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that the hearing on Mattel, Inc.'s [previously *Ex Parte*] Application To Enforce Court Orders Compelling Production Of Tangible Items, previously noticed for hearing on February 4, 2008 at 10:15 a.m. in the courtroom of the Honorable Stephen G. Larson in the above-entitled Court, has been changed to a telephone conference before the Discovery Master Hon. Edward Infante (Ret.), on a date and time to be determined by Judge Infante.

Plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court for an order (1) enforcing the May 15, 2007 Order Granting Mattel's Motion To Compel Production of Documents And Interrogatory Responses By MGA ("May 2007 Order"), the August 13, 2007 Order Granting In Part And Denying In Part Mattel's Motion To Compel Production Of Documents by MGA; Denying Request For Monetary Sanctions ("August 2007 Order"), and the June 20, 2006 on-the-record stipulation before the Honorable Robert N. Block, Magistrate Judge, in which MGA agreed to provide responsive tangible items for inspection within fifteen days of a request; and (2) compelling Defendant MGA to make available for immediate inspection, imaging and 3D scanning all tangible items responsive to Request Nos. 7-13, 26-27, 32-36, 46, 51, 53, 55, 96-100 of Mattel, Inc.'s First Set of Requests For Production Of Documents And Tangible Things To MGA Entertainment, Inc. ("First Set") and to Request Nos. 5, 6, 9-10, 13, 16-17, 49, 52, and 166 of Mattel, Inc.'s First Set of Requests For Documents And Things Re Claims Of Unfair Competition To MGA Entertainment, Inc. ("First UC Set")[1].

Mattel previously sought identical relief, in addition to relief from the expert witness cut-off date dictated by Judge Larson's Scheduling Order, in an *ex*

---

[1] Request Nos. 7-13, 26-27, 32-36, 46, 51, 53, 55, 96-100 of the First Set and Request Nos. 5, 6, 9-10, 13, 16-17, 49, 52, and 166 of the First UC Set are collectively referred to herein as "the Compelled Requests."

*parte* application. On February 4, 2008, the Court issued an order that resolved the question of relief from the expert witness cut-off date and also resolved, for the time being, the dispute about certain items being produced for inspection and scanning in Hong Kong and Shenzhen, China.[2] Pursuant to the direction of the Court at the February 4, 2008 hearing and in the Court's February 4, 2008 Minute Order, Mattel provides notice that its Application, which seeks the balance of Mattel's original relief sought (as explained below) will be heard by the Discovery Master.

The parties have thus fully briefed the remaining issue presented by Mattel's Application—the production of all tangible items pertinent to the design, development and manufacture of Bratz and Prayer Angel that MGA has withheld from production. As Mattel recently found out, MGA deliberately and secretly interpreted the scope of Mattel's previously compelled requests to exclude such items as:

- clay sculpts for each doll developed;
- mold(s) taken of the clay, perhaps of rubber, perhaps in multiple versions;
- closures and documentation and tooling related to the design of the closures;
- resin or fastcast sculpts from the mold of the clay;
- metal molds relating to all the body parts, including the head;
- vinyl super master of the head;
- multiple masters of the head;
- paint master;
- face paint masks;
- molds for all plastic accessories coming with the dolls;
- printing plates for packaging;

---

[2] February 4, 2008 Order, attached hereto as Exhibit A.

-2-

- documentation including schematics, engineering drawings and communications with the manufacturer about machining, tolerances, dimensions, or assembly of the dolls;
- anything purportedly dating from before or after February 2001; and
- anything relating to the mock-up development tooling and documentation that was transferred from MGA vendor Wah Sing to MGA vendor Early Light at MGA's direction on or around December 8, 2000, such as the "roto head skin-master" that was referenced in an email produced by MGA bates-numbered MGA 0065414-15.

Although Judge Larson did not rule on the issue of the items that had never been produced, he did specifically note at the hearing that "[t]here's this repeated representation that no one deliberately did anything, and I guess I'm not concerned about what people deliberately did or didn't do; I'm more concerned about why these things were not identified sooner. And I guess I don't have a real clear answer on that . . . given -- let me say this -- given the representations that were made about the diligence upon which searches were done pursuant to document requests. *There's no dispute that these [items] are covered by the document requests. Judge Infante has found such, essentially; and I -- reading the document requests, I think Mattel is right on that these are certainly within the ambit of several of the document requests; so there's no question that they need to be produced. They've been asked for.*"[3]

During the meet-and-confer process that took place before the original *ex parte* application was filed, MGA begrudgingly identified a few doll heads and bodies, and 8 manufacturing molds that had never been produced in the case. To this day, however, MGA refuses either to produce the rest of the tangible items or to

---

[3] Hearing Transcript, dated February 4, 2008, at 66:10-24 (lodged concurrently herewith) (emphasis added).

state that it has produced the rest of the tangible items responsive to the requests, instead taking the position that tangible items are not responsive to the requests and stating that it has made a substantial production of all "responsive" items, whatever MGA means by that. MGA's delay in producing these items has already prejudiced Mattel by preventing it from taking related discovery before the January 28, 2008 fact discovery cut-off, and by preventing Mattel's experts from being able to finish their analyses and prepare their initial reports by February 11, 2008.

Mattel's original *ex parte* application was filed on January 25, 2008. MGA filed an opposition brief on January 25, 2008. Mattel's reply brief was filed on January 28, 2008. Mattel concurrently lodges this briefing and all supporting documents with the Discovery Master.

Mattel does not anticipate there will be any need for further briefing on the issues raised in this Motion.

### Statement of Rule 37-1 Compliance

Counsel met and conferred regarding this motion on numerous occasions between January 3, 2008 and February 15, 2008.

DATED: February 19, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Diane Hutnyan
Diane C. Hutnyan
Attorneys for Mattel, Inc.