**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 7**

**EXHIBIT TO:**    **DECLARATION OF LARRY W. MCFARLAND IN SUPPORT OF SUR-REPLY IN RESPONSE TO ORDER TO SHOW CAUSE OF LARRY MCFARLAND, LUCY ARANT, SARAH HALPERN, AND PETER MARLOW**

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order of December 6, 2006]**<br><br>MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY, AND TO OVERRULE INSTRUCTIONS NOT TO ANSWER; AND FOR SANCTIONS<br><br>Date:   TBA<br>Time:   TBA<br>Place:  Telephonic<br><br>Phase I<br>Discovery cutoff:      January 28, 2008<br>Pre-Trial Conference:  May 5, 2008<br>Trial Date:            May 27, 2008 |

EXHIBIT ___7___

PAGE ___108___

209/2369096.2

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

1  TO THIRD PARTY MARGARET HATCH-LEAHY AND ALL PARTIES AND

2  THEIR ATTORNEYS OF RECORD:

3         PLEASE TAKE NOTICE that, at a telephonic conference before

4  Discovery Master Hon. Edward Infante (Ret.) that will occur on a date and at a time

5  to be set by Judge Infante, Mattel, Inc. will, and hereby does, move the Court,

6  pursuant to <u>Federal Rules of Civil Procedure</u> 26, 30 and 37:

7            (1)  to compel Margaret Hatch-Leahy to sit for additional deposition

8  time;

9            (2)  to compel Ms. Leahy to answer the questions MGA's counsel

10  improperly instructed Ms. Leahy not to answer during her deposition; and

11            (3)  to sanction Ms. Leahy, MGA, and Carter Bryant and their counsel

12  in the amount of $4,000, to partially reimburse Mattel for its fees and costs in

13  having to bring this motion.

14         This Motion is made on the grounds that counsel for Ms. Leahy will

15  not allow Mattel to finish deposing Ms. Leahy.   In addition, MGA tactically

16  withheld documents relevant to Ms. Leahy's deposition that Mattel was unable to

17  question Ms. Leahy about.  This Motion is also made on the grounds that counsel

18  for Ms. Leahy did not have a proper basis for instructing Ms. Leahy not to answer

19  questions and otherwise obstructed the deposition of Ms. Leahy by engaging in

20  abusive discovery tactics, including suggestive objections and narrative speeches.

21         This Motion is based on this Notice of Motion and Motion, the

22  accompanying Memorandum of Points and Authorities, the Declarations of Tamar

23  Buchakjian and Jennifer Lewis filed concurrently herewith, the records and files of

24  this Court, and all other matters of which the Court may take judicial notice.

25

26

27

28

EXHIBIT____7____

PAGE____109____

-2-

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

1

## Statement of Rule 37-1 Compliance

2       The parties met and conferred regarding Mattel's Deposition of

3 Margaret Hatch-Leahy on December 18, 2007 and times thereafter.

4

5 DATED:  January 28, 2008       QUINN EMANUEL URQUHART OLIVER &
      HEDGES, LLP

6

7       By

8       Timothy L. Alger
      Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _7_

PAGE _110_

7209/2369096.2

-3-

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS .............................................................................. 3

ARGUMENT .............................................................................................. 11

I.   THE DISCOVERY MASTER SHOULD COMPEL THE PRODUCTION OF MS. LEAHY FOR ADDITIONAL DEPOSITION TIME BEFORE THE JANUARY 28, 2008 DISCOVERY CUTOFF ........... 11

    A.   Defendants Have Not Given Mattel Sufficient Time to Depose Ms. Leahy .................................................................................... 11

        1.   Ms. Leahy Is A Key Percipient Witness ...................................... 11

    B.   Counsel Hindered Mattel's Deposition Of Ms. Leahy By Engaging In Delay Tactics And Other Forms Of Obstructionism ....... 15

        1.   Counsel Strategically Withheld Relevant Documents Without Justification ................................................................... 15

        2.   MGA's Counsel Created Numerous Delays During the Deposition ................................................................................ 16

II.   THE COURT SHOULD COMPEL MS. LEAHY TO PROVIDE ANSWERS TO QUESTIONS COUNSEL IMPROPERLY INSTRUCTED HER NOT TO ANSWER ................................................ 40

III.   THE DISCOVERY MASTER SHOULD IMPOSE SANCTIONS ............... 44

CONCLUSION ........................................................................................... 45

EXHIBIT ____

PAGE ____

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

AMCO Ins. Co. v. Madera Quality Nut LLC,
  2006 WL 931437 (E.D. Cal. 2006) ................................................................ 43

Braley v. Campbell,
  832 F.2d 1504 (10th Cir. 1987) .................................................................... 45

Clarke v. American Commerce Nat'l Bank,
  974 F.2d 127 (9th Cir. 1992) ........................................................................ 40

Damaj v. Farmers Insurance Co.,
  164 F.R.D. 559 (N.D. Okl. 1995) .................................................................. 38

Garcia v. City of El Centro,
  214 F.R.D. 587 (S.D. Cal. 2003) .................................................................. 43

Grimes v. City and County of San Francisco,
  951 F.2d 236 (9th Cir. 1991) ........................................................................ 44

Hall v. Cliffton Precision, A Division of Litton Systems, Inc.,
  150 F.R.D. 525 (E.D. Pa. 1993) ................................................................... 38

Johnson v. Wayne Manor Apartments,
  152 F.R.D. 56 (E.D. Pa. 1993) ..................................................................... 38

McKay v. C.I.R.,
  886 F.2d 1237 (9th Cir. 1989) ...................................................................... 40

Nutmeg Ins. Co. v. Atwell, Vogel & Sterling A Div. of Equifax Services, Inc.,
  120 F.R.D. 504 (W.D. La. 1988) ................................................................... 43

Resolution Trust Corp. v. Dabney,
  73 F.3d 262 (10th Cir. 1995) ................................................................. 43, 45

U.S. v. Munoz,
  233 F.3d 1117 (9th Cir. 2000) ...................................................................... 44

United States v. Westinghouse Electric Corp.,
  648 F.2d 642 (9th Cir. 1981) ........................................................................ 44

EXHIBIT ___7___

PAGE ___112___

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

7209/2369096.2

## **Statutes**

28 U.S.C. § 1927.................................................................................................. 45

<u>Federal Rules of Civil Procedure</u>

   <u>Rule</u> 26(a) ................................................................................................. 11

   <u>Rule</u> 26(a)(1) .......................................................................................... 13

   <u>Rule</u> 30(b)(6) .......................................................................................... 43

   <u>Rule</u> 30(d)(1) .......................................................................................... 38

   <u>Rule</u> 37(a)(4) .......................................................................................... 44

   <u>Rule</u> 37-1 .................................................................................................. 3

## **Other Authorities**

8 Wright & Miller, <u>Fed. Practice and Procedure</u> § 2023 (1970)................................ 43

EXHIBIT___7___

PAGE___113___

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Margaret Hatch-Leahy is a witness of critical importance. According to MGA, she was the first sculptor of Bratz, having started work on sculpting the Bratz dolls while Carter Bryant was employed by Mattel, in September 2000. Nevertheless, her counsel, who also is counsel for MGA, refuses to allow Mattel to finish deposing Ms. Leahy. Ms. Leahy has unique knowledge about matters that go to the heart of this case, including the origins of Bratz, Carter Bryant's work for MGA while employed by Mattel and the use of Mattel resources for Bratz. She is indisputedly one of the most knowledgeable witnesses regarding the development of Bratz. Mattel should be granted additional time to depose her.

Mattel has deposed Ms. Leahy for a total of 7 hours and 5 minutes. Given her extensive personal knowledge of facts central to this case, 7 hours was not enough time for Mattel to finish its examination. Defendants admit that Ms. Leahy created the first Bratz sculpt at a time when Bryant was still employed by Mattel. According to Paula Garcia, MGA's Bratz project manager since the project's inception, Ms. Leahy was the sole sculptor on the Bratz in the key time period of 2000. During the deposition, Mattel was able to question Leahy about some of her relevant knowledge. However, Mattel was not able to question or fully question her about, among other things the extensive tangibles Leahy possesses which consist of early Bratz sculpts, molds and casts created, Ms. Leahy's use of Mattel resources on Bratz, payments she received from MGA, Leahy's work on Prayer Angels and on her work on numerous subsequent generation Bratz dolls that form the basis of both Mattel's and MGA's claims.

Although Mattel subpoenaed her documents in 2005, Leahy's counsel waited until the day before Ms. Leahy's deposition to produce approximately 175 pages of documents consisting of unidentified photographs of doll casts, molds and sculpts -- with the knowledge that Mattel would not be able to fully analyze the

1   documents, casts, molds and sculpts in time for Ms. Leahy's scheduled deposition.
2   Moreover, for months Ms. Leahy refused to produce her calendar in its unredacted
3   form.  Only some 6 hours _after_ Ms. Leahy's deposition commenced did counsel
4   concede that Ms. Leahy's original planner must be produced.  Due to this delay,
5   Mattel did not have enough time to review the unredacted calendar's contents or
6   question Ms. Leahy about it.  The belatedly produced documents contain new
7   information on the topics about which Mattel is entitled to question Ms. Leahy --
8   namely the timing and development of Bratz.  Mattel is entitled to resume Ms.
9   Leahy's deposition to question her on the documents counsel delayed in producing
10   without justification.

11          Additionally, Leahy's, MGA's and Bryant's counsel hindered Ms.
12   Leahy's deposition by taking frequent breaks, improperly coaching Ms. Leahy and
13   even walking out of the deposition mid-question.   Moreover, counsel for MGA
14   repeatedly interrupted the questioning through tactics such as demanding that
15   questions be re-read for in-house counsel of MGA, Craig Holden, or demanding that
16   in-house counsel for Mattel, Michael Moore, be shuffled in and out of the
17   deposition.  Also, counsel obstructed the deposition by improperly instructing Ms.
18   Leahy not to answer proper questions.

19          The Discovery Master should compel Ms. Leahy to appear for the
20   completion of her deposition promptly.  The Court should also compel Ms. Leahy to
21   provide full and complete answers to the questions that she was improperly
22   instructed not to answer when her deposition is resumed.

23
24
25
26
27
28

EXHIBIT ___7___
PAGE ___115___

-2-

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

1

## **Statement of Facts**

2     **Margaret Hatch-Leahy's Work for Mattel, and On Bratz.** Leahy was a

3 Mattel employee until approximately September 5, 2000.[1] At Mattel, she was

4 employed as a sculptor.[2] While Bryant was still employed by Mattel, (and while

5 Leahy apparently was as well) Bryant solicited Leahy to sculpt the Bratz dolls and

6 introduced her to MGA.[3] Leahy created the first Bratz sculpt while Bryant was

7 employed by Mattel.[4] According to MGA's Bratz project manager since the

8 project's inception, Paula Garcia, Leahy was the sculptor on Bratz in the key time

9 period of 2000.[5] Indeed, according to Leahy, she -- and not Bryant -- was the

10 creator of the "appearance" of Bratz.[6] She also worked on Bratz samples exhibited

11 at the Hong Kong Toy Fair in January 2001 and the New York Toy Fair in February

12 2001.[7]

13     **Mattel Subpoenas Leahy for the Production of Documents.** On March

14 14, 2005, Mattel served a subpoena on Leahy requesting the production of

15 documents.[8] The subpoena requested twelve categories of documents and tangible

16

---

17   [1]  Margaret Leahy's MGA Application For Employment ("Leahy Employment

18 Application"), dated February 14, 2005, Declaration of Tamar Buchakjian, dated

19 January 28, 2008 and filed concurrently herewith, ("Buchakjian Dec."), Exh. 1, at 16:17-19.

20   [2]  Id. at 14:13-21.

21   [3]  Deposition Tr. of Carter Bryant ("Bryant Depo."), Vol. I, dated November 4, 2004 at 68:22-71:13, Buchakjian Dec. Exh. 2.

22   [4]  Leahy Depo. at 161:5-162:2, Buchakjian Dec. Exh. 5.

23   [5]  Deposition Tr. of Paula Garcia ("Garcia Depo."), Vol. I, dated May 24, 2007 at 255:1-17, Buchakjian Dec. Exh. 3; Garcia Depo., Vol. II, dated May 25, 2007 at

24 629:6-18, Buchakjian Dec. Exh. 4.

25   [6]  Leahy Depo at 275:2-10, Buchakjian Dec., Exh. 5.

26   [7]  Garcia Depo., Vol. II, dated May 25, 2007 at 481:20-482:1; 489:5-11, Buchakjian Dec. Exh. 4.

27   [8]  Mattel, Inc.'s Subpoena to Margaret Hatch-Leahy, dated March 14, 2005

28 ("Leahy Subpoena"), Buchakjian Dec., Exh. 6.

EXHIBIT ___7___

PAGE __116__

-3-

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

1   items regarding the conception, creation, design and development of Bratz, all of

2   which directly relate to Mattel's claims.[9]

3       <u>Leahy's Initial Production Is Heavily Redacted</u>.  In response to Mattel's

4   subpoena, Leahy produced 76 pages of heavily redacted documents on May 17,

5   2005.  The first twelve pages of this production consisted of redacted pages from

6   Leahy's day planner.[10]  On June 1, 2007, after the year long stay in this case was

7   lifted, Mattel requested that Leahy make her original planner available for review

8   since the pages produced from it were so heavily redacted as to be unintelligible.[11]

9   Leahy agreed to make her planner available for inspection by Mattel's counsel.[12]

10       <u>Mattel's Inspection Of Leahy's Planner Reveals That Leahy Redacted</u>

11   <u>Critically Relevant And Responsive Evidence</u>.  On July 6, 2007, counsel for Mattel

12   inspected Leahy's planner.[13]  This inspection revealed that Leahy and her counsel

13   had previously failed to produce clearly relevant pages and entries from her

14   planner.[14]  For example, a page containing an entry dated June 16, 2000 referencing

15   "Angel" was not produced at all, even though the subpoena clearly requested all

16   documents "referring or relating to Angel."[15]  As the Court may recall, "Angel," or

17   "Prayer Angels," is the name Anna Rhee, another early Bratz vendor, testified was

18   _____

19   [9]  <u>Id.</u>

20   [10]  <u>See</u> SABW-L 00001 - SABW-L 00012, Buchakjian Dec., Exh. 7.

21   [11]  Letter from Susan Wines to Larry McFarland, dated June 1, 2007, Buchakjian Dec., Exh 8.

22   [12]  Letter from Larry McFarland to Susan Wines, dated June 22, 2007,

23   Buchakjian Dec., Exh 9; Letter from Susan Wines to Larry McFarland, dated June 25, 2007, Buchakjian Dec., Exh. 10; Letter from Larry McFarland to Susan Wines,

24   dated June 28, 2007, Buchakjian Dec., Exh 11.

25   [13]  Declaration of Jennifer Lewis, dated November 21, 2007 and filed concurrently herewith ("Lewis Dec."), ¶ 2.

26   [14]  Lewis Dec., ¶ 2.

27   [15]  <u>See</u> KMW-L 00077.01, Buchakjian Dec., Exh. 12; SABW-L 00001 - SABW-L 00012, Buchakjian Dec., Exh. 7; Leahy Subpoena, Buchakjian Dec., Exh. 6.

28

EXHIBIT____7____

07209/2369096.2

1   the "code name" for Bratz she was told to use when she painted Bratz doll heads in

2   June 2000.[16] Leahy also redacted a reference to a phone number and an extension

3   for Carter Bryant from an entry made prior to September 29, 2000 -- when Carter

4   Bryant was still employed by Mattel -- even though the subpoena clearly called for

5   all documents referring or relating to Carter Bryant prior to January 1, 2001.[17]

6   Leahy also redacted references in her planner to Anna Rhee, Carter Bryant and

7   Mercedeh Ward, an MGA employee, despite the fact that documents referring or

8   relating to communications between Carter Bryant, Anna Rhee and/or MGA were

9   specifically requested in the subpoena.[18] She did all of this without advising Mattel

10   she was withholding such information. To the contrary, at a meet and confer on

11   May 2, 2005, counsel for Leahy agreed that she would produce documents dated

12   prior to January 1, 2001 responsive to Mattel's request for documents referring or

13   relating to Angel, Carter Bryant and Anna Rhee.[19]

14      <u>The Parties' Meet And Confer Regarding Ms. Leahy's Planner.</u>  After

15   Mattel's counsel inspected Leahy's planner, Leahy made a supplemental production

16   of her planner to Mattel.[20] However, even in that supplemental production, the vast

17   majority of the planner was still redacted.[21] The produced pages consisted of a

18   subset of the planner's pages from the relevant time period, and the pages that were

19   produced were still heavily redacted, making it impossible to fully analyze the

20   _____

21    [16]  Deposition Tr. of Anna Rhee , dated February 3, 2005 at 120:24-122:8;
22   141:11-145:17, Buchakjian Dec., Exh. 13.
 [17]  <u>See</u> KMW-L 00078.01, Buchakjian Dec., Exh. 12; SABW-L 0001,
23   Buchakjian Dec., Exh. 7; Leahy Subpoena, Buchakjian Dec., Exh. 6.
 [18]  <u>See</u> KMW-L 00083.01, 00089.01 and 00090.01, Buchakjian Dec., Exh. 15;
24   SABW-L 0001 - SABW-L 00012, Buchakjian Dec., Exh. 7; Leahy Subpoena,
25   Buchakjian Dec., Exh. 6.
 [19]  Meet and Confer Tr., dated May 2, 2005, at 7:13-8:14, Buchakjian Dec., Exh.
26   16.
 [20]  <u>See</u> KMW-L 00077.01-000105.01, Buchakjian Dec., Exh. 12.
27

28

7209/2369096.2

EXHIBIT ___7___

PAGE __118__

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

1  planner or present it to the jury in the future.[22]  Mattel thus again asked Leahy to

2  produce a complete copy of the planner and make it available for photographing

3  and, if necessary, expert examination.[23]  Leahy refused.[24]

4          On November 15, 2007, after the expiration of the stay sought by MGA

5  as a result of substitution of counsel, Mattel again requested that Leahy produce

6  unredacted copies of all of the documents she had produced.[25]  Leahy responded on

7  November 21, 2007 and again refused to produce unredacted copies of her day

8  planner and the other redacted documents she had produced.[26]  On November 28,

9  2007, Mattel explained again why it is entitled to unredacted copies of all the

10 documents Leahy had produced including because Leahy did not assert that the

11 redactions were made on the basis of privilege, and redactions on any other basis are

12 improper given the protective order in place in this case.[27]  Mattel also served a

13 subpoena on Leahy requesting that she produce her original planner, among other

14 original documents, at her deposition on December 12, 2007.[28]

15

16

17  [21]  Id.

18  [22]  Id.

19  [23]  Letter from Proctor to McFarland, dated November 7, 2007, Buchakjian Dec.,
    Exh. 17; Letter from Proctor to McFarland, dated November 9, 2007, Buchakjian
20  Dec., Exh. 18.

21  [24]  Letter from McFarland to Proctor, dated November 14, 2007, Buchakjian
    Dec., Exh. 19; Letter from Larry McFarland to Dylan Proctor, dated November 21,
22  2007, Buchakjian Dec., Exh. 21

23  [25]  Letter from Dylan Proctor to Larry McFarland, dated November 15, 2007,
    Buchakjian Dec., Exh. 20.

24  [26]  Buchakjian Dec., Exh. 21.

25  [27]  Letter from Dylan Proctor to Larry McFarland, dated November 28, 2007,
    Buchakjian Dec., Exh. 22.

26  [28]  Mattel, Inc.'s Subpoena to Margaret Leahy, dated November 28, 2007,
27  Buchakjian Dec., Exh. 23; see also Notice of Subpoena Issued to Margaret Leahy,
    dated November 28, 2007, Buchakjian Dec., Exh. 24.

28

EXHIBIT____7____

PAGE____119____

1    **Leahy Agrees to Produce All Of The Documents She Previously**

2    **Redacted In Un-redacted Form, Except For Her Planner**.  On December 3, 2007,

3    Leahy agreed to produce unredacted copies of all of the documents that she had

4    previously produced, other than her planner.[29]  Leahy produced unredacted copies of

5    all of the documents on December 6, 2007, but did not produce an unredacted copy

6    of her planner at that time.[30]

7    **Leahy's Deposition**.  Ms. Leahy, who is represented by MGA's counsel,

8    Larry McFarland, followed defendants' now-familiar playbook to obstruct

9    discovery, including by first delaying her deposition with promises to appear (while

10   simultaneously claiming unavailability for lengthy periods) and then canceling as

11   the promised dates approached.  Indeed, as the Court is aware, every one of

12   defendants' key witnesses have followed this pattern and ultimately refused to sit for

13   deposition until ordered to do so, sometimes multiple times.[31]

14   Mattel actively sought to schedule Ms. Leahy's deposition since early

15   June — for over six months.[32]  Mattel offered to take the deposition at any time in

16   July, but her counsel claimed that she was unavailable until September.[33]  When the

17   agreed time-range approached, Leahy failed to appear.  After still more delays, and

18

19

20   _____

21   [29]   Letter from Larry McFarland to Dylan Proctor, dated December 3, 2007, Buchakjian Dec., Exh. 25.

22   [30]   Letter from Larry McFarland to Dylan Proctor, dated December 5, 2007, Buchakjian Dec., Exh. 26.

23   [31]   This has included named defendants Carter Bryant, Isaac Larian and MGA as

24   well as Paula Garcia, MGA's Bratz project manager from the start.  Bryant and

25   Larian would not appear until they were *twice* ordered by the Court and, in the case of Larian, until sanctions were imposed.

26   [32]   Letter from Susan Wines to Larry McFarland, dated June 7, 2007, Buchakjian

27   Dec., Exh. 27.

     [33]   Buchakjian Dec., ¶ 30.

28

J7209/2369096.2

EXHIBIT ___7___

PAGE ___120___

-7-

1   shortly before MGA applied for a stay because of MGA's substitution of counsel,

2   Leahy proposed, and Mattel confirmed, dates in late October for Ms. Leahy.[34]

3          While seeking a stay of this case, MGA assured the Court that "MGA

4   certainly did not entertain the substitution of counsel for any purpose of delay or to

5   cause prejudice to anybody."[35]   Contrary to that promise however, Ms. Leahy

6   cancelled her scheduled deposition — blaming it on the stay.[36]   Mattel was then

7   forced to ask repeatedly for replacement dates and, even then, Ms. Leahy flatly

8   refused to appear for another two months.[37]   And, equally troubling, Ms. Leahy

9   refused to commit in any binding way to actually appear even on those belated

10   dates.[38]   Only after Mattel was forced to move ex parte to compel her deposition did

11   Mr. McFarland represent to the Court that Ms. Leahy would actually appear for

12   deposition on December 12, 2007.[39]

13          On December 11, 2007, the day before Ms. Leahy's deposition, Ms.

14   Leahy produced some 175 pages of documents consisting of unidentified

15

16   [34]  Letter from Larry McFarland to Susan Wines, dated September 28, 2007,

17   Buchakjian Dec., Exh. 29; Letter from Michael Zeller to Larry McFarland, dated
     October 1, 2007, Buchakjian Dec., Exh. 30.

18   [35]  Transcript of the October 15, 2007 Status Conference, at 12:3-5, Buchakjian

19   Dec. Exh. 31.
     [36]  Letter from Larry McFarland to Michael Zeller and Dylan Proctor, dated

20   October 16, 2007, Buchakjian Dec., Exh. 32.

21   [37]  Letter from Michael Zeller to Larry McFarland, dated October 16, 2007,
     Buchakjian Dec., Exh. 33; Letter from Michael Zeller to Larry McFarland, dated

22   October 24, 2007, Buchakjian Dec., Exh. 34; Letter from Dylan Proctor to Larry

23   McFarland dated November 2, 2007, Buchakjian Dec., Exh. 35; Letter from Larry
     McFarland to Dylan Proctor, dated November 12, 2007, Buchakjian Dec., Exh. 36.

24   [38]  Letter from Dylan Proctor to Larry McFarland, dated November 15, 2007,

25   Buchakjian Dec., Exh. 37.
     [39]  Transcript of Proceedings regarding Mattel's *Ex Parte* Application to (1)

26   Compel Depositions of Elise Cloonan, Margaret Hatch-Leahy, and Veronica

27   Marlow, or in the Alternative, Modify the Scheduling Order, dated November 20,
     2007, Buchakjian Dec. Exh. 38, at 15:1-8.

28

EXHIBIT ___7___
PAGE ___121___

17209/2369096.2

-8-

1 | photographs of doll casts, molds and sculpts of a variety of products, including

2 | Bratz and Prayer Angels.[40]

3 |         Mattel began the deposition of Ms. Leahy on December 12, 2007,

4 | nearly 45 minutes after the scheduled time because of defendants' delays.

5 | Throughout the deposition, counsel for Ms. Leahy, MGA and Bryant created

6 | numerous delays.  Counsel hindered Ms. Leahy's deposition by taking frequent

7 | breaks, improperly coaching Ms. Leahy, and walking out of the deposition in mid-

8 | question.[41]  Counsel for MGA repeatedly interrupted the questioning by demanding

9 | that in-house counsel of MGA, Craig Holden, be brought into the deposition and

10 | requesting that questions be re-read for Mr. Holden.[42]  Similarly, counsel for MGA

11 | purposefully interrupted questioning by demanding that in-house counsel for Mattel,

12 | Michael Moore, be shuffled in and out of the deposition.[43]  The deposition also was

13 | slow-going because Ms. Leahy regularly asked for questions to be repeated or

14 | rephrased, often on cue from her counsel.[44]

15 |         Additionally, counsel obstructed the deposition by improperly

16 | instructing Ms. Leahy not to answer questions that did not seek privileged

17 | information.[45]  These questions included, for example, "Have you spoken with

18 | anyone at Mattel about any lawsuit or litigation with MGA or Carter Bryant?" and

19 | "Have you ever told anyone else any other reason you left Mattel?"[46]

20 | ————————————

21 |   [40]  Buchakjian Dec., ¶ 41; Letter from Larry McFarland to Dylan Proctor, dated

22 | December 11, 2007, Buchakjian Dec., Exh. 39.
  [41]  <u>See</u> <u>infra</u> notes 83-109, Buchakjian Dec. Exh. 5.

23 |   [42]  Leahy Depo at 69:11-70:9; 97:21-98:8; 107:11-108:9; 191:13-17, Buchakjian

24 | Dec., Exh. 5.
  [43]  Leahy Depo at 69:11-23; 97:14-98:16; 120:14-20; 136:19-23, Buchakjian

25 | Dec., Exh. 5.

26 |   [44]  <u>See</u> <u>infra</u> notes 83-109, Buchakjian Dec. Exh. 5.
  [45]  Leahy Depo at 242:12-243:9, 255:14-256:10, 256:11-21, Buchakjian Dec., Exh.

27 | 5.
  [46]  Leahy Depo at 16:25-17:6; 93:4-8, Buchakjian Dec., Exh. 5.

28 |

EXHIBIT __7__

PAGE  122

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

1    Even though for months counsel for Leahy refused to produce Ms.

2 Leahy's original calendar in its unredacted form, 4 hours into Ms. Leahy's deposition

3 counsel conceded that Ms. Leahy's original planner must be produced.  Counsel for

4 Leahy only did so after two lengthy narratives on the record, thereby further

5 hindering Ms. Leahy's deposition and wasting time.[47]   Due to this delay, Mattel did

6 not have enough time to obtain color copies of the unredacted calendar in time to

7 review its contents and to question Ms. Leahy about them.  The belatedly produced

8 documents contain new information on the topics about which Mattel is entitled to

9 question Ms. Leahy.  For example, Leahy redacted Mattel-related material, such as

10 entries pertaining to a Mattel employee (Chris Sesto) in the model shop whom she

11 had conversations with during a time which she was working on Bratz and

12 apparently for the purpose of seeking assistance on Bratz.[48]  Further, Ms. Leahy

13 redacted information which bears on the dating of her entries in the planner.[49]  This

14 information pertains directly to the timing and development of Bratz, and

15 defendant's use of Mattel resources for Bratz.

16    <u>The Parties' Meet And Confer Regarding Ms. Leahy's Continued</u>

17 <u>Deposition</u>.  On December 18, 2007, Mattel requested that MGA schedule

18 additional dates to continue Ms. Leahy's deposition and that Ms. Leahy provide full

19 and complete answers to the questions she was instructed not to answer when her

20 deposition resumed.[50]  During the parties' meet and confer on January 9, 2008, and

21 thereafter, however, counsel represented that he would not agree to additional

22

23

---

24    [47]  Leahy Depo. at 168:4-169:16, Buchakjian Dec. Exh. 5.

25    [48]  Leahy Depo. at 67:15-68:7, Buchakjian Dec. Exh. 5.

26    [49]  Margaret Hatch Leahy's unredacted calendar, Buchakjian Dec. Exh. 40, at 1137-4 - 1137-14.

27    [50]  Letter from Dylan Proctor to Larry McFarland, dated December 18, 2007, Buchakjian Dec., Exh. 41.

28

EXHIBIT   7
PAGE   123

1  testimony.[51]  The parties were also unable to reach agreement regarding counsel's

2  improper instructions not to answer certain questions during Ms. Leahy's

3  deposition.[52]

4

5  **Argument**

6  **I.   THE DISCOVERY MASTER SHOULD COMPEL THE**

7  **PRODUCTION OF MS. LEAHY FOR ADDITIONAL DEPOSITION**

8  **TIME BEFORE THE JANUARY 28, 2008 DISCOVERY CUTOFF**

9  **A.   Defendants Have Not Given Mattel Sufficient Time to Depose Ms.**

10  **Leahy**

11  Ms. Leahy is a key witness.  Not only has she been identified by MGA

12  as "possess[ing] information relevant to the conception, creation, design and

13  development of "Bratz,"[53] she also is the person who created the appearance of the

14  Bratz head.[54]  To date, defendants have only allowed Mattel to depose Ms. Leahy

15  for a total of approximately 7 hours and 5 minutes.[55]  This is simply not enough time

16  for Mattel to cover her extensive personal knowledge regarding Bratz.

17  **1.   Ms. Leahy Is A Key Percipient Witness**

18  Ms. Leahy is one of the most important witnesses in the Bryant case.

19  Her importance is evidenced by her own testimony -- she claims that she (and not

20  Bryant) is the creator of the appearance of Bratz.[56]  Ms. Leahy has extensive

21  personal knowledge regarding topics that are integral to this litigation, including the

22

23  [51]  Buchakjian Dec. ¶ 43.

24  [52]  Id.

25  [53]  MGA's Rule 26(a) Disclosures, dated January 6, 2005 ¶¶ 4-6, Buchakjian Dec. Exh. 42.

26  [54]  Leahy Depo. at 275:2-10, Buchakjian Dec., Exh. 5.

27  [55]  Leahy Depo at 311:22-312:1, Buchakjian Dec., Exh. 5.

[56]  Leahy Depo at 275:2-10, Buchakjian Dec., Exh. 5.

28

EXHIBIT ___7___

PAGE __124__

1  timing and origins of Bratz, Bryant's involvement with MGA, Bryant's work for
2  MGA while employed by Mattel, the development of Bratz, and the use of Mattel
3  resources for Bratz.[57]  Ms. Leahy has been identified by MGA and others as the
4  sculptor of Bratz since the product's inception at MGA.[58]

5      Leahy was a Mattel employee until September 2000.[59]  While Bryant
6  was still employed by Mattel, Bryant solicited Leahy to sculpt Bratz dolls and
7  introduced her to MGA.[60]  Ms. Leahy attended numerous meetings with Bryant and
8  Garcia to discuss Bratz doll sculptures during a time that Bryant was still employed
9  at Mattel.[61]  Leahy created the first Bratz sculpt and, according to Paula Garcia, was
10  the sole sculptor on Bratz in the key time period of 2000.[62]  Ms. Leahy's testimony
11  confirmed that the first Bratz sculpt was completed by September 29, 2000 — while
12  Bryant was a Mattel employee.[63]  Leahy also worked on Bratz samples exhibited at
13  the Hong Kong Toy Fair in January 2001 and the New York Toy Fair in February
14  2001.[64]

15      The extent of Ms. Leahy's knowledge is demonstrated by the critical
16  facts which she revealed for the first time in this case at deposition.  For example,

17  _____

18  [57]  See Buchakjian Dec. Exh. 42; see e.g., Leahy Depo. at, Buchakjian Dec. Exh.
19  5, 161:5-162:2, 185:11-190:7.
    [58]  See e.g. Deposition of Isaac Larian, dated July 18, 2006 ("Larian Depo.") at
20  112:5 -113:25, Buchakjian Dec., Exh. 43.
    [59]  Margaret Leahy's MGA Application For Employment ("Leahy Employment
21  Application"), dated February 14, 2005, Buchakjian Dec., Exh. 1.
22  [60]  Deposition Tr. of Carter Bryant ("Bryant Depo."), Vol. I, dated November 4,
    2004 at 68:22-71:13, Buchakjian Dec. Exh. 2.
23  [61]  Bryant Depo. at 78:11-81:8, Buchakjian Dec., Exh. 2.
24  [62]  Deposition Tr. of Paula Garcia ("Garcia Depo."), Vol. I, dated May 24, 2007
25  at 255:1-17, Buchakjian Dec. Exh. 3; Garcia Depo., Vol. II, dated May 25, 2007 at
    629:6-18, Buchakjian Dec. Exh. 4.
26  [63]  Leahy Depo. at 161:5-162:24, Buchakjian Dec., Exh. 5.
27  [64]  Garcia Depo., Vol. II, dated May 25, 2007 at 481:20-482:1; 489:5-11,
    Buchakjian Dec. Exh. 4.
28

EXHIBIT ___7___

PAGE ___125___

7209/2369096.2

1   Ms. Leahy revealed for the first time that a company called Gentle Giant, a vendor
2   that Ms. Leahy met through her Mattel employment, created the first Bratz mold and
3   did a silicone rubber mold of the first Bratz sculpt in September 2000.[65]
4   Additionally, Gentle Giant did digital scans of the Bratz head after they did the first
5   sculpt.[66]  Those scans have not been produced in this case, nor has MGA or any
6   other party ever identified Gentle Giant as a party which may have discoverable
7   information relevant to this case.[67]  In addition, Ms. Leahy admitted for the first time
8   at her deposition last month that she worked for Mattel competitors while working
9   for Mattel, in knowing violation of her employment agreements.[68]

10          Leahy's testimony also revealed that she worked on DIVA STARZ and
11   the Mini DIVA STARZ while employed by Mattel.[69]  Documents and designs for
12   Mattel's DIVA STARZ project in late 1999 and in 2000 that pre-date the release of
13   Bratz show that DIVA STARZ dolls share certain common elements with Bratz
14   dolls.  For example, names internally considered at Mattel in late 1999 and through
15   2000 for the DIVA STARZ project -- including "Brats" -- tend to show that Bryant
16   designed Bratz while at Mattel.[70]  Ms. Leahy's exposure to aspects of the DIVA

17   _____

18   [65]  Leahy Depo. at 161:5-17, 191:2-25, 224:21-24, Buchakjian Dec., Exh. 5.
19   [66]  Leahy Depo. at 191:21-192:6; 197:3-10, Buchakjian Dec., Exh. 5.
     [67]  Gentle Giant is not identified on MGA's Supplemental Disclosures Under
20   Rule 26(a)(1), dated September 21, 2007.  Nor is it disclosed on MGA's or Bryant's
21   interrogatories.  See e.g., MGA's Third Supplemental Responses to Mattel's Second
     Set of Interrogatories, dated August 21, 2007, Buchakjian Dec. Exh. 50 at 3-6;
22   Carter Bryant's Supplemental Responses to Mattel, Inc.'s Revised Third Set of
23   Interrogatories, dated December 17, 2007, Buchakjian Dec. Exh. 28 at 12-22.
     [68]  Leahy Depo. at 180:1-181:18, Buchakjian Dec. Exh. 5.
24   [69]  Leahy Depo. at 48:10-24, Buchakjian Dec. Exh. 5.
25   [70]  Names that were internally considered at Mattel during that time period
     included "Brats" and variations thereon, "Brat Pack," "Boyz" and "Petz."  Ms.
26   Garcia acknowledged that "Brats" spelled with an "s" was subsequently considered
27   as a name for the "Bratz" dolls.  Deposition of Paula Garcia, dated October 10, 2007
     ("Garcia Depo.), Buchakjian Dec. Exh. 48, at 1080:22-1081:9.
28
                                                  EXHIBIT___7___
                                                  PAGE___126___

7209/2369096.2

1 | STARZ projects while she was a Mattel employee, coupled with the fact that Leahy
2 | worked on the Bratz sculpt while she and Bryant were Mattel employees, tends to
3 | establish that Bryant created Bratz works and conceived of the name "Bratz" while
4 | employed by Mattel and not in 1998 as Bryant has claimed. Given the extent of
5 | Leahy's knowledge regarding the timing and development of Bratz and the use of
6 | Mattel resources for Bratz, and defense counsel's obstructionism discussed below,
7 | Mattel did not have enough time to elicit details regarding these clearly relevant
8 | topics.

9 | There are also several plainly relevant topics about which Mattel has
10 | not been able to question Leahy at all because of the refusal to afford sufficient time
11 | for deposition. These include: Leahy's use of Mattel resources on Bratz, payments
12 | Leahy has received from MGA, her work on Prayer Angels, and her work on later
13 | "generations" of Bratz dolls that form the basis of MGA's own claims. Further there
14 | remain extensive tangible items Ms Leahy possesses and which Mattel was not able
15 | to question her on.[71] Eliciting sufficient testimony from Ms. Leahy on these
16 | tangible items requires additional time. Indeed, Mattel did not even have enough
17 | time to mark and authenticate all of these tangible items and their corresponding
18 | photographs as exhibits during Ms. Leahy's deposition, much less depose her on all
19 | the items and their photographs.

20 | Ms. Leahy is one of the most important percipient witnesses in this
21 | litigation. Given her extensive personal knowledge on the origins of Bratz and the
22 | information that came forth only during her deposition, Mattel is entitled to more
23 | time to complete Ms. Leahy's deposition.

24
25
26

27 | [71] Letter from Larry McFarland to Dylan Proctor, dated December 11, 2007,
28 | Buchakjian Dec. Exh. 39.

EXHIBIT ____7____
PAGE ____127____

7209/2369096.2

-14-

**B.   Counsel Hindered Mattel's Deposition Of Ms. Leahy By Engaging In Delay Tactics And Other Forms Of Obstructionism**

**1.   Counsel Strategically Withheld Relevant Documents Without Justification**

On December 11, 2007, the day before Ms. Leahy's deposition, Ms. Leahy produced some 175 pages of documents consisting of unidentified photographs of doll casts, molds and sculpts of a variety of products, including Bratz and Prayer Angels.[72]

Furthermore, counsel for Leahy refused to produce Leahy's unredacted calendar until more than halfway through her deposition. This is so even though she agreed to produce unredacted copies of all other previously-redacted documents she had produced and despite the fact that Mattel had been asking for an unredacted copy of Ms. Leahy's planner since at least November 7, 2007.[73] Due to this delay, Mattel did not have enough time to obtain color copies of the unredacted calendar in time to review its contents or question Ms. Leahy about them. The belatedly produced calendar contains new information about which Mattel is entitled to question Ms. Leahy. For example, Leahy redacted Mattel-related material, such as entries pertaining to a Mattel employee (Chris Sesto) in the model shop whom she had conversations with during a time which she was working on Bratz.[74] Further,

---

[72]   Buchakjian Dec., ¶ 41; Letter from Larry McFarland to Dylan Proctor, dated December 11, 2007, Buchakjian Dec., Exh. 39.
[73]   Leahy Depo at 168:4-169:16, Buchakjian Dec., Exh. 5; Letter from Larry McFarland to Dylan Proctor, dated December 5, 2007, Buchakjian Dec., Exh. 26; Letter from Dylan Proctor to Larry McFarland, dated November 7, 2007, Buchakjian Dec., Exh. 17.
[74]   Leahy Depo. at 67:15-68:7, Buchakjian Dec. Exh. 5.

EXHIBIT ___7___
PAGE __128__

1  Ms. Leahy redacted information which bears on the dating of her entries in the
2  planner.[75]

3        As a result of counsel's tactical decision to delay the production of
4  relevant documents, Mattel was not able to complete Ms. Leahy's deposition on the
5  photographs of tangible items Ms. Leahy provided the night before her deposition,
6  and the calendar which was provided halfway through the deposition.  Mattel is
7  entitled to continue Ms. Leahy's deposition to question her on these documents.

8        **2.    MGA's Counsel Created Numerous Delays During the**
9              **Deposition**

10        Counsel obstructed the deposition in numerous ways, thereby wasting
11  time.  For example, counsel for MGA constantly interrupted Mattel's questioning of
12  Leahy by demanding that in-house counsel for MGA be brought into the deposition
13  and requesting that questions be re-read for him[76] or demanding that in-house
14  counsel for Mattel be removed from the deposition.[77]

15        Further impeding deposition, Ms. Leahy routinely followed counsel's
16  lead by asking for even simple questions to be rephrased whenever counsel
17  objected, thus requiring additional questioning on matters on which Mattel had
18  already questioned her.[78]  Ms. Leahy and her counsel also frequently asked for
19  questions to be read back, wasting time.[79]

20

21  ───────────────

22  [75]  See e.g., Margaret Hatch Leahy's unredacted calendar, Buchakjian Dec. Exh.
23  40 at 1137-4 - 1137-14.
    [76]  Leahy Depo at 69:11-70:9; 80:10-15; 97:21-98:8; 101:14-102:4; 107:11-
24  108:9; 120:18-20; 125:7-9; 191:13-17, Buchakjian Dec., Exh. 5.
25  [77]  Leahy Depo at 69:11-23; 97:14-98:17; 120:14-20; 136:19-23, Buchakjian
    Dec., Exh. 5.
26  [78]  Leahy Depo at 39:10-17, 48:25-49:5, 275:15-276:13; 279:4-280:9;301:9-24;
27  304:15-305:8, Buchakjian Dec., Exh. 5. at 67:15-72:11.
    [79]  See infra notes 83-109, Buchakjian Dec. Exh. 5
28

EXHIBIT ___7___
PAGE ___129___

1    Leahy's, MGA's and Bryant's counsel also hindered Ms. Leahy's
2 deposition by taking frequent breaks, improperly coaching Ms. Leahy and even
3 walking out of the deposition mid-question.[80]   For example, Ms. Leahy and her
4 counsel requested and took repeated breaks during the deposition, not including the
5 lunch break.[81]  They also walked out numerous times while a question was
6 pending.[82]    Moreover, throughout the deposition, Leahy's counsel repeatedly
7 engaged in speaking, suggestive objections — sometimes even interrupting the
8 witnesses answer mid-stream.   Leahy then repeated her counsel's suggestions
9 virtually verbatim.  The following examples are illustrative of counsel's improper
10 coaching and delay tactics.

11

12    Q  WELL, YOU RECOGNIZE THESE AS ESTIMATES THAT
13    GENTLE GIANT [A BRATZ VENDOR] SENT TO YOU; RIGHT?
14       MR. MC FARLAND: OBJECTION.  MISSTATES HER
15    TESTIMONY.  ARE YOU ASKING IF SHE INDEPENDENTLY
16    RECALLS, IF THIS REFRESHES HER RECOLLECTION, OR ARE
17    YOU ASKING IF SHE CAN READ?
18    BY MR. ZELLER:
19       Q  YOU CAN GO AHEAD AND ANSWER THE QUESTION.
20       A  WELL, I DON'T KNOW HOW TO ANSWER IT.  I JUST
21    NEED YOU TO BE A LITTLE MORE SPECIFIC ABOUT IF I
22    REMEMBER, ACTUALLY, GIVING THESE TO THEM OR IF I'M
23    JUST READING THEM AND SEE THAT IT SAYS ESTIMATES?

24 _____

25  [80]  See infra notes 81, & 83-109, Buchakjian Dec. Exh. 5.
26  [81]  Leahy Depo at 55:13; 119:22; 145:23; 169:21; 204:4; 241:9; 263:12; 290:6,
    Buchakjian Dec., Exh. 5.
27

28                                      EXHIBIT___7___

                                        PAGE   130

1  Leahy Depo. at 34:23-35:9.[83]

2

3         Q   AND WHAT TECHNICAL ADVICE DID YOU ASK

4         MR. [CHRIS] SESTO [OF MATTEL] FOR?

5         A   I CAN'T REMEMBER SPECIFICALLY, BUT IT WOULD

6         BE --

7         MR. MC FARLAND:  I JUST CAUTION THE WITNESS

8         NOT TO GUESS.

9         THE WITNESS:  OKAY.  THEN I CAN'T TELL YOU

10        SPECIFICALLY.

11  Leahy Depo. at  67:25-66:7.[84]

12

13        BY MR. ZELLER:

14        Q   YOU CAN'T EXCLUDE THE POSSIBILITY THAT YOU

15        ASKED MR. SESTO FOR TECHNICAL ADVICE IN

16        CONNECTION WITH M.G.A. PROJECTS; IS THAT TRUE?

17        MR. MC FARLAND:  OBJECTION.  I OBJECT TO THE

18        QUESTION.  YOU'RE ASKING THE WITNESS TO SPECULATE.

19        SHE'S ANSWERED YOU ABOUT FIVE TIMES.  SHE DOESN'T

20        RECALL, AND NOW, YOU'RE ASKING HER TO EXCLUDE THE

21        POSSIBILITY, THEREFORE, GUESS.

22        BY MR. ZELLER:

23        Q   YOU CAN GO AHEAD AND ANSWER.

24  _____

25        [82] See e.g., Leahy Depo. at 119:4-120:4, Buchakjian Dec. Exh. 5; See also infra
26  notes 83-109, Buchakjian Dec. Exh. 5.
27        [83] Buchakjian Dec. Exh. 5.
          [84] Buchakjian Dec. Exh. 5.
28

EXHIBIT   7
PAGE    131

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

07209/2369096.2

1   A  CAN YOU ASK AGAIN?

2   Q  SURE.  YOU CAN'T EXCLUDE THE POSSIBILITY THAT

3   THE TECHNICAL ADVICE YOU ASKED MR. SESTO FOR WAS

4   IN CONNECTION WITH AN M.G.A. PROJECT; IS THAT TRUE?

5   MR. MC FARLAND:  I OBJECT TO THE FORM OF THE

6   QUESTION AS ASKING THE WITNESS TO GUESS.  SHE'S

7   TESTIFIED SHE DOESN'T RECALL.

8   THE WITNESS:  I CAN'T EVEN BE SURE THAT I

9   ASKED HIM FOR TECHNICAL ADVICE.  I'M ASSUMING

10   THAT'S WHAT I ASKED HIM FOR.

11   MR. MC FARLAND:  YOU'VE ANSWERED THE QUESTION.

12   Leahy Depo. at 71:15-72:11.[85]

13

14   Q  YES.  YOU HAD MENTIONED THAT THERE WERE

15   INSTANCES IN WHICH YOU HAD CONTACT WITH MR. SESTO

16   AFTER YOU LEFT MATTEL IN WHICH YOU ASKED HIM FOR

17   TECHNICAL ADVICE.  MY QUESTION IS, WERE ANY OF

18   THOSE INSTANCES RELATING TO TECHNICAL ADVICE THAT

19   YOU WERE ASKING MR. SESTO FOR FOR ANY M.G.A.

20   PROJECT?

21   MR. MC FARLAND:  I REPEAT MY OBJECTION.  ASKED

22   AND ANSWERED.

23   THE WITNESS:  I CAN'T REMEMBER.

24   BY MR. ZELLER:

25   Q  DO YOU RECALL WHO THOSE PROJECTS WERE FOR?

26

27   [85]  Buchakjian Dec. Exh. 5.

28

37209/2369096.2

EXHIBIT  7

PAGE  132

-19-

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

1     MR. MC FARLAND: OBJECTION. ASKED AND ANSWERED.

2     BY MR. ZELLER:

3     Q  ANY OF THEM?

4     MR. MC FARLAND: OBJECTION. ASKED AND ANSWERED.

5     THE WITNESS: I CAN'T REMEMBER.

6     BY MR. ZELLER:

7     Q  SO IT MIGHT HAVE BEEN FOR M.G.A.? IT MIGHT HAVE

8     NOT HAVE BEEN? YOU CAN'T BE SURE?

9     MR. MC FARLAND: OBJECTION. MISCHARACTERIZES HER

10    TESTIMONY. SHE NEVER SAID IT MIGHT HAVE BEEN FOR

11    M.G.A. SHE SAID SHE DOESN'T REMEMBER.

12    THE WITNESS: I CAN'T REMEMBER. I HAD AN INFANT AT

13    THE TIME, SO I WAS GOING ON NOT A LOT OF SLEEP, SO A

14    LOT OF IT MIGHT HAVE BEEN JUST TOUCHING BASE AND

15    SAYING HELLO.

16    Leahy Depo. at 70:12-71:14.[86]

17

18    Q  IS THAT WHERE, IN FACT, YOU SAT WHEN YOU WERE

19    AT MATTEL?

20    MR. MC FARLAND: OBJECTION. VAGUE AND

21    AMBIGUOUS AS TO TIME. SHE'S ALREADY TESTIFIED THAT,

22    AT SOME POINT, SHE MOVED.

23    MR. ZELLER: SURE. YOU CAN CONTINUE TO TESTIFY FOR

24    HER, COUNSEL, WHICH IS IMPROPER, BUT I'M ASKING AT

25    ANY TIME.

26

27    [86] Buchakjian Dec. Exh. 5.

28

EXHIBIT __1__

PAGE __133__

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

1    MR. MC FARLAND:  OBJECTION.  YOUR QUESTION WAS

2    VAGUE AND AMBIGUOUS AS TO TIME.

3    MR. ZELLER:  WELL, THEN THAT'S YOUR OBJECTION,

4    COUNSEL, NOT YOUR SUGGEST[IVE] SPEAKING OBJECTION.

5    MR. MC FARLAND:  IT'S NOT A SPEAKING OBJECTION.  I'M

6    TRYING TO EXPLAIN TO YOU WHY YOUR QUESTION IS

7    VAGUE.

8    MR. ZELLER:  I DON'T NEED AN EXPLANATION,

9    COUNSEL.  YOU ARE TO OBJECT IN ACCORDANCE WITH THE

10   DISCOVERY MASTER'S ORDER AND THE FEDERAL RULES.

11   Q   SO I'M DIRECTING YOUR ATTENTION AFTER THAT

12   INTERRUPTION -- DIRECTING YOUR ATTENTION TO WHERE

13   IT SAYS, "HATCH M," ON EXHIBIT 824.  IS THAT A PLACE

14   WHERE YOU SAT WHEN YOU WERE WORKING AT MATTEL?

15   MR. MC FARLAND:  SAME OBJECTION.

16   THE WITNESS:  YES.

17   Leahy Depo. at 82:15-83:13.[87]

18

19   Q   BACK DURING THE TIME PERIOD WHEN YOU WERE

20   WORKING AT MATTEL, DID YOU HAVE ANY KNOWLEDGE

21   OR UNDERSTANDING AS A SCULPTOR ABOUT HOW LONG IT

22   TOOK TO SCULPT A FASHION DOLL BODY WHEN YOU WERE

23   AT MATTEL?

24   MR. MC FARLAND:  OBJECTION.  LACKS FOUNDATION.

25   MS. ANDERSON:  QUESTION IS, ALSO, VAGUE AND

26

27   [87]  Buchakjian Dec. Exh. 5.

28

EXHIBIT  7

PAGE  134

07209/2369096.2

-21-

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

1    OVERBROAD.

2    THE WITNESS:  CAN YOU REASK THE QUESTION?

3    MR. ZELLER:  IF WE CAN REPEAT IT.

4    (RECORD READ.)

5 Leahy Depo. at 103:19-104:3.[88]

6

7    Q   YOU MENTIONED THAT YOU AND IVY ROSS DID

8    DISCUSS THE -- OR DISCUSSED SODA POP.  WHAT DID YOU

9    AND IVY ROSS DISCUSS ON THAT SUBJECT?

10    MR. MC FARLAND:  IT'S A M.G.A. PROJECT; RIGHT?

11    . . . .

12    MR. MC FARLAND:  CAN WE GO OFF FOR A SECOND?

13    THE VIDEOGRAPHER:  GOING OFF THE RECORD AT 2:23 P.M.

14    (RECESS.)

15    THE VIDEOGRAPHER:  GOING BACK ON THE RECORD AT

16    2:30 P.M.

17    BY MR. ZELLER:

18    Q   THERE WAS A QUESTION PENDING WHEN YOU AND

19    YOUR COUNSEL LEFT.  DO YOU HAVE AN ANSWER FOR IT?

20    A   I DON'T REMEMBER THE QUESTION.

21 Leahy Depo. at 119:4-120:4.[89]

22

23    Q   SO YOU'RE DISPUTING THAT THIS WAS AN INVOICE

24    THAT WAS SENT TO YOU IN OR ABOUT DECEMBER OF 1999;

25    IS THAT TRUE?

26  _____

27    [88]  Buchakjian Dec. Exh. 5.

28

EXHIBIT ___7___

PAGE ___135___

J7209/2369096.2

-22-

1    MR. MC FARLAND: OBJECTION. MISSTATES HER

2    TESTIMONY.

3    THE WITNESS: CAN YOU REPEAT THE QUESTION?

4  Leahy Depo. at 125:5-10.[90]

5

6    Q  WHO IS IT WHO TOLD YOU AT THAT LATER TIME THAT

7    THE [BRATZ] PROJECT WAS CALLED GRRLZ?

8    MR. PLEVAN: AT THIS POINT, I THINK WE HAVE TO

9    DESIGNATE THIS ATTORNEYS' EYES ONLY ON BEHALF OF

10    BRATZ AND ASK MATTEL'S COUNSEL TO LEAVE.

11    MR. MC FARLAND: I THINK YOU MISSTATED YOUR

12    QUESTION. DO YOU WANT TO READ IT BACK?

13    (RECORD READ.)

14    THE WITNESS: CALLED GRRLZ?

15    MR. MC FARLAND: AT A LATER TIME?

16    MR. ZELLER: RIGHT.

17    MS. ANDERSON: MISCHARACTERIZES TESTIMONY.

18    MR. MC FARLAND: VAGUE. INCOMPREHENSIBLE, AND

19    MISCHARACTERIZES HER TESTIMONY.

20    THE WITNESS: CAN YOU START OVER?

21  Leahy Depo. at 136:19-137:8.[91]

22

23    Q  DIRECTING YOUR ATTENTION TO EXHIBIT 1128, DID

24    YOU USE EXHIBIT 1128 IN ANY WAY FOR THE DIRECTION OF

25  _____

26  [89]  Buchakjian Dec. Exh. 5.

27  [90]  Buchakjian Dec. Exh. 5.
    [91]  Buchakjian Dec. Exh. 5.

28

EXHIBIT  7

PAGE  136

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

1      THE BRATZ SCULPTURE?

2      MR. MC FARLAND:  OBJECTION.  VAGUE AND

3      AMBIGUOUS AS TO THE MEANING OF THE TERM

4      "DIRECTION OF BRATZ SCULPTURE" AND, ALSO, THE USE

5      OF THE WORDS "BRATZ

6      SCULPTURE."  MISSTATES HER TESTIMONY.

7      THE WITNESS:  CAN YOU REASK THE QUESTION?

8      MR. ZELLER:  CAN YOU READ IT BACK, PLEASE?

9      (RECORD READ.)

10   Leahy Depo. at 156:12-21.[92]

11

12      Q   FOCUSING ON THE -- WELL, LET'S GO BACK TO THAT

13      INITIAL MEETING YOU HAD WITH CARTER BRYANT, WHICH

14      HE PROVIDED YOU WITH THE DRAWINGS AND THE STEVE

15      MADDEN AD. THEN I TAKE IT, AT SOME POINT, HE LEFT

16      YOUR HOUSE AFTER THAT MEETING; RIGHT?  WHAT

17      HAPPENED NEXT?

18      MR. MC FARLAND:  MAKE SURE YOU ANSWER YES OR NO.

19      (RECORD READ.)

20      THE WITNESS:  RIGHT.

21   Leahy Depo. at 157:7-15.[93]

22

23      Q   DID YOU EVER DISCLOSE TO ANYONE SENIOR VICE

24      PRESIDENT LEVEL OR ABOVE THERE AT MATTEL THAT

25      YOU WERE DOING THIS WORK?

26   ───────────────────

27   [92]   Buchakjian Dec. Exh. 5.

28

EXHIBIT ___7___

PAGE ___137___

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

1    MR. MC FARLAND:  OBJECT TO THE CHARACTERIZATION OF
2    THE LEVEL AND THE LACK OF FOUNDATION AS TO WHAT
3    MR. HEBDEN'S TITLE WAS, WHO WAS HER SUPERVISOR.
4    THE WITNESS:  CAN YOU ASK THAT QUESTION AGAIN?
5    MR. ZELLER:  IF WE CAN READ IT BACK.
6    (RECORD READ.)
7    Leahy Depo. at 187:11-20.[94]
8
9    Q   DID YOU HAVE THAT SCULPTURE IN YOUR POSSESSION
10   STILL?
11    A   DID I WHEN HAVE IT?
12   Q   AS OF THE TIME YOU WERE COLLECTING MATERIALS
13   FOR THE LAWSUIT.
14    A   YES.
15   Q   PRESUMABLY, IT WAS AMONG YOUR MATERIALS.
16   WHAT DOES IT LOOK LIKE?
17   MR. MC FARLAND:  WOULD YOU READ THE QUESTION
18   BACK?  MARGARET, LET'S LISTEN TO THE QUESTION
19   CAREFULLY.
20   (RECORD READ.)
21   MR. MC FARLAND:  I THINK WE SHOULD LOOK AT THE
22   OBJECTS.
23   MR. ZELLER:  I'M SORRY.
24   MR. MC FARLAND:  I THINK WE SHOULD LOOK AT THE
25   OBJECTS.  LET'S TAKE A BREAK AND GET THE OBJECTS.
26   ──────────────
27   [93]  Buchakjian Dec. Exh. 5.
28

EXHIBIT  7
PAGE  138

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

07209/2369096.2

1    THE VIDEOGRAPHER:  GOING OFF THE RECORD AT

2    4:58 P.M.

3    (RECESS.)

4    THE VIDEOGRAPHER:  GOING BACK ON THE RECORD AT

5    5:19 P.M.

6    BY MR. ZELLER:

7    Q  I UNDERSTAND THAT YOU RECALLED A COUPLE OF

8    ADDITIONAL THINGS OR WANTED TO AMPLIFY SOME OF

9    YOUR PRIOR TESTIMONY?

10   A  YES.  I REMEMBER WHAT I NEEDED TO CALL CHRIS

11   SESTO [OF MATTEL] ABOUT.  I NEEDED TO START MAKING

12   MY OWN SILICONE RUBBER MOLDS JUST FOR SPEED SAKE,

13   AND TO MAKE THOSE PROPERLY, YOU NEED A VACUUM

14   PUMP TO TAKE THE AIR BUBBLES OUT OF THE SILICONE

15   BECAUSE IT IS VERY THICK.  SO I CALLED CHRIS TO FIND

16   OUT WHERE I COULD GET ONE.

17   Q  AND THIS WAS DURING A TIME WHEN CHRIS SESTO

18   WAS AT MATTEL, AND YOU HAD LEFT?

19   A  YES.

20   Q  IS THERE ANYTHING ELSE THAT YOU HAD TO ADD TO

21   YOUR PRIOR TESTIMONY?

22   A  NOT ABOUT CHRIS SESTO BUT ABOUT TALKING ABOUT

23   THE CASE.  I'VE -- I WAS AT A BAR WITH ROXANNA

24   POWELL, AND THIS IS IN THE SUMMER OF '01 AND, SHE

25

26

27   [94]  Buchakjian Dec. Exh. 5.

28

EXHIBIT ___7___

PAGE ___139___

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

1    ASKED ME ABOUT CARTER AND PAULA'S INVOLVEMENT IN

2    THE BRATZ.

3  Leahy Depo. at 203:12-205:2.[95]

4

5    Q  DO YOU HAVE ANY KNOWLEDGE OR INFORMATION AS

6    TO WHEN IT IS THAT CARTER BRYANT CREATED ANY

7    DRAWINGS THAT WERE INITIAL CONCEPT DRAWINGS FOR

8    THE BRATZ DOLLS?

9    MR. MC FARLAND: OBJECTION. VAGUE AND

10   AMBIGUOUS AS TO THE TERM "INITIAL CONCEPT

11   DRAWINGS."

12   THE WITNESS: I DON'T KNOW WHEN OR WHERE THE

13   DRAWINGS CAME FROM. AS A VENDOR --

14   MR. MC FARLAND: YOU'VE ANSWERED THE QUESTION.

15   THE WITNESS: YEAH. I DON'T KNOW.

16  Leahy Depo. at 210:12-20.[96]

17

18   Q  DIRECTING YOUR ATTENTION TO EXHIBIT 1136, DO

19   YOU RECOGNIZE THOSE PHOTOGRAPHS AS DEPICTING THE

20   HEAD, THE BODY AND THE ARMS THAT ARE IN FRONT OF

21   YOU?

22   MR. MC FARLAND: OBJECTION. LACKS FOUNDATION.

23   AGAIN, I HAVE TO OBJECT TO THE QUESTION. ARE YOU

24   ASKING THE WITNESS IF THAT IS THE PICTURE OF THE

25   SAME SCULPT SHE'S HOLDING IN HER HAND?

26

27   [95] Buchakjian Dec. Exh. 5.

28

EXHIBIT _7_

PAGE _140_

07209/2369096.2

-27-

1     MR. ZELLER:  I'M ASKING IF EXHIBIT 1136

2     CONTAINS ACCURATE DEPICTIONS OF THE THREE-

3     DIMENSIONAL OBJECT THAT SHE HAS IN FRONT OF HER,

4     NAMELY, THE HEAD, THE BODY AND THE TWO ARMS.

5     MR. MC FARLAND:  OBJECTION.  LACKS FOUNDATION.

6     SHE WASN'T THERE WHEN THE PICTURES WERE TAKEN.

7     THE WITNESS:  THIS IS A PICTURE OF ANOTHER

8     CAST THAT CAME OUT OF THE SAME MOLD.

9     Leahy Depo. at 219-220:6.[97]

10

11     Q   AND SO THE RECORD IS CLEAR, THIS IS A FULL COPY OF

12     THE SAME BOOK THAT WE HAD EXCERPTS OF WHICH

13     THAT WE HAD MARKED AS EXHIBITS 1132 AND EXHIBITS

14     1133?

15     MR. MC FARLAND:  OBJECTION.  LACKS FOUNDATION.

16     I THINK THE WITNESS SHOULD SIT DOWN AND COMPARE

17     THE ORIGINAL TO THIS.  IF YOU'RE ASKING HER TO TESTIFY

18     THAT EVERY SINGLE PAGE HAS BEEN COPIED, THAT'S

19     DIFFERENT.  YOU'RE ASKING DOES THIS APPEAR TO BE A

20     FULL VERSION.  THAT'S A DIFFERENT QUESTION.

21     MR. ZELLER:  I'M ASKING HER TO AUTHENTICATE A

22     DOCUMENT, SO WHATEVER SHE NEEDS TO DO IT, SHE

23     SHOULD DO.

24     THE WITNESS:  CAN YOU ASK THE QUESTION AGAIN?

25     Leahy Depo. at 264:20-265:7.[98]

26     _____

27     [96]   Buchakjian Dec. Exh. 5.

28

EXHIBIT ___7___

PAGE __141__

J7209/2369096.2

-28-

1

2    Q  FOCUSING ON THE FACE THAT YOU SCULPTED FOR

3    BRATZ, IS IT IT YOUR TESTIMONY THAT YOU ALONE WERE

4    THE PERSON WHO CAME UP THE AESTHETIC APPEARANCE

5    OF THAT HEAD?

6    MR. MC FARLAND:  OBJECTION TO VAGUE AND

7    AMBIGUOUS AS TO THE TERM "AESTHETIC APPEARANCE."

8    MS. ANDERSON:  LACKS FOUNDATION.

9    THE WITNESS:  CAN BE YOU BE MORE SPECIFIC?

10 Leahy Depo. at 269:23-270:5.[99]

11

12    Q  SO YOUR BELIEF AND UNDERSTANDING AND

13    TESTIMONY IS THAT CARTER BRYANT'S DRAWINGS DID

14    NOT CONTRIBUTE TO THE APPEARANCE OF THE BRATZ

15    HEAD THAT YOU SCULPTED; IS THAT TRUE?

16    MR. MC FARLAND:  OBJECTION.  ASKED AND ANSWERED.

17    SHE SAID THEY'RE NIGHT AND DAY.

18    THE WITNESS:  HE GAVE ME THE INITIAL

19    INSPIRATION, AND I TOOK IT FROM THERE.  THEY'RE TWO

20    VERY DIFFERENT THINGS.

21    MR. ZELLER:  MY QUESTION IS A VERY SPECIFIC ONE.  CAN

22    YOU, PLEASE, READ IT BACK?

23    (RECORD READ.)

24    MR. MC FARLAND:  SHE'S ANSWERED YOUR QUESTION.

25

26  [97] Buchakjian Dec. Exh. 5.

27  [98] Buchakjian Dec. Exh. 5.
     [99] Buchakjian Dec. Exh. 5.

28

EXHIBIT __7__

PAGE __142__

1    OBJECTION.

2    THE WITNESS:  IT'S THE SAME ANSWER.  THEY'RE NIGHT

3    AND DAY.

4  Leahy Depo. at 272:23-273:13.[100]

5

6    Q   AND IN YOUR VIEW, IS THE HEAD THAT YOU HAVE

7    THIS CASTING OF THAT'S IN FRONT OF YOU

8    SUBSTANTIALLY THE SAME OR SUBSTANTIALLY

9    DIFFERENT AS COMPARED TO THE HEAD SCULPTURE THAT

10    YOU INITIALLY SHOWED TO CARTER BRYANT ON

11    SEPTEMBER 29TH, 2000?

12    MR. MC FARLAND:  OBJECT TO THE USE OF THE WORD

13    "SUBSTANTIALLY."

14    MS. ANDERSON:  OBJECTION.  FOUNDATION.  CALLS

15    FOR EXPERT OPINION TESTIMONY TO SOME EXTENT AS

16    WELL.

17    THE WITNESS:  CAN YOU REPHRASE THE QUESTION?

18  Leahy Depo. at 275:15-24.[101]

19

20    Q   YOU CAN'T TELL WHETHER IT'S A WAX VERSUS A

21    CASTING?

22    A   VERSUS RESIN?

23    Q   RIGHT.

24    A   CORRECT.

25    Q   IT COULD BE ANY OF THOSE THREE THINGS?  YOU'RE

26

27  [100]  Buchakjian Dec. Exh. 5.

28

EXHIBIT __7__

PAGE __143__

1  NOT SURE?

2  MR. MC FARLAND:  OBJECTION.  VAGUE AND AMBIGUOUS.

3  MISSTATES HER TESTIMONY.  WHAT THREE THINGS?

4  MR. ZELLER:  WAX, RESIN, CASTING.

5  MR. MC FARLAND:  OBJECTION TO THE USE OF THE

6  WORD "CASTING."  I'M CONFUSED.

7  THE WITNESS:  A CASTING IS WHATEVER YOU POUR INTO

8  THE MOLD -- WHATEVER COMES OUT OF THE CASTING NO

9  MATTER WHAT IT'S MADE OUT OF IT.

10  MR. MC FARLAND:  THE QUESTION IS VAGUE AND

11  AMBIGUOUS AND INCOMPREHENSIBLE.

12  THE WITNESS:  CAN YOU REPHRASE IT?

13  Leahy Depo. at 279:16-280:9.[102]

14

15  Q  IS THAT HEAD THAT'S SCULPTED THAT'S DEPICTED

16  HERE THE SAME IN APPEARANCE AS THE HEAD THAT WE

17  HAVE A CASTING OF?

18  MS. ANDERSON:  OBJECTION.  LACKS FOUNDATION.

19  MR. MC FARLAND:  OBJECTION.  VAGUE AND AMBIGUOUS

20  AS TO "THE HEAD THAT WE HAVE A COPY OF.  AS

21  YOU KNOW, WE BROUGHT LOTS OF EXEMPLARS TODAY.

22  MR. ZELLER:  THE ONE RIGHT IN FRONT OF HER,

23  COUNSEL.

24  THE WITNESS:  SO IS THIS HEAD THE SAME HEAD AS THIS

25  HEAD?

26  _____

27  [101]  Buchakjian Dec. Exh. 5.

28

EXHIBIT _____7_____

PAGE _____144_____

7209/2369096.2

-31-

1    BY MR. ZELLER:

2    Q  I'M ASKING IS THE HEAD THAT YOU HAVE IN YOUR

3    HAND -- THE CASTING, WHICH WE HAVE PHOTOGRAPHS OF

4    AS EXHIBIT 1135 -- IS THAT, IN ITS APPEARANCE, THE SAME

5    HEAD AS DEPICTED ON THE LAST PAGE OF EXHIBIT 537, OR

6    IS IT A DIFFERENT MODIFIED HEAD?

7    MR. MC FARLAND:  OBJECTION.  VAGUE AND AMBIGUOUS

8    TO THE USE OF THE "IN ITS APPEARANCE."

9    THE WITNESS:  THESE PICTURES ARE REALLY HARD

10   TO SEE.

11   Leahy Depo. at 280:17-281:12.[103]

12

13   Q  AT SOME POINT, DID YOU PROVIDE TO M.G.A. AN

14   ORIGINAL SCULPTURE?

15   MR. MC FARLAND:  OBJECTION.  VAGUE AND

16   AMBIGUOUS AS TO THE WORD "ORIGINAL SCULPTURE."  GO

17   AHEAD.

18   THE WITNESS:  WHAT DO YOU MEAN BY "PROVIDE"?

19   Leahy Depo. at 282:12-17.[104]

20

21   BY MR. ZELLER:

22   Q  DO YOU BELIEVE THAT THE STEVE MADDEN ADS IN

23   THEIR APPEARANCE ARE SUBSTANTIALLY SIMILAR TO THE

24   BRATZ SCULPTURES THAT YOU CREATED?

25   _____

26   [102]  Buchakjian Dec. Exh. 5.

27   [103]  Buchakjian Dec. Exh. 5.

28   [104]  Buchakjian Dec. Exh. 5.

EXHIBIT  7
PAGE  145

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

07209/2369096.2

1    MR. MC FARLAND:  OBJECTION.  VAGUE AND AMBIGUOUS.

2    ALSO, CALLS FOR A LEGAL CONCLUSION.  AS YOU KNOW,

3    "SUBSTANTIALLY SIMILAR" IS A TERM OF ART UNDER THE

4    COPYRIGHT ACT, AND THIS WITNESS IS NOT QUALIFIED TO

5    ANSWER THAT QUESTION AS TO THE PROVENCE OF AN

6    EXPERT.

7    THE WITNESS:  CAN YOU ASK IT AGAIN?

8    Leahy Depo. at 292:13-22.[105]

9

10    Q   YOU HAVE A VINYL HEAD IN FRONT OF YOU; RIGHT?

11    A   IT'S A VINYL HEAD.

12    Q   DO YOU RECOGNIZE THAT AS A VINYL BRATZ HEAD?

13    A   YES.

14    Q   DO YOU RECOGNIZE THAT AS A VINYL BRATZ HEAD

15    THAT WAS USED ON THE BRATZ DOLLS AS THEY WERE

16    SOLD COMMERCIALLY?

17    MR. MC FARLAND:  OBJECTION.  CALLS FOR

18    SPECULATION.  THERE'S NO FOUNDATION WITH RESPECT

19    TO WHAT THIS IS.

20    THE WITNESS:  CAN YOU ASK THE QUESTION AGAIN

21    OR REPHRASE IT?  I DON'T QUITE UNDERSTAND THE

22    QUESTION.

23    Leahy Depo. at 300:5-16.[106]

24

25    Q   DO YOU RECOGNIZE THE HEAD THAT YOU HAVE THERE

26    _____

27    [105]   Buchakjian Dec. Exh. 5.

28

EXHIBIT    7

PAGE    146

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

07209/2369096.2

1   IN YOUR HEAD AS BEING A VINYL HEAD THAT WAS USED

2   ON THE PRODUCTION BRATZ DOLLS?

3   A   IT LOOKS LIKE A PRODUCTION HEAD.

4   Q   YOU DON'T HAVE ANY REASON TO DOUBT THAT; DO

5   YOU?

6   MR. MC FARLAND:  OBJECTION.  ASKED AND ANSWERED.

7   SHE SAID IT LOOKS LIKE ONE.  YOU HAVE YOUR

8   ANSWER.

9   THE WITNESS:  IT LOOKS LIKE A BRATZ HEAD.

10   BY MR. ZELLER:

11   Q   IS THE HEAD THAT YOU HAVE THERE -- THE

12   PRODUCTION ONE -- SUBSTANTIALLY SIMILAR IN ITS

13   OVERALL APPEARANCE?

14   MS. ANDERSON:  CALLS FOR A LEGAL CONCLUSION.

15   LACKS FOUNDATION.  VAGUE.

16   MR. PLEVAN:  DID WE HAVE THE END OF THE QUESTION,

17   MIKE?

18   MR. ZELLER:  NO, BECAUSE I WAS INTERRUPTED.

19   MR. PLEVAN:  AND THE LIGHTS WENT OFF.

20   BY MR. ZELLER:

21   Q   I'VE NOT ASKED THE QUESTION YET.  I WAS IN THE

22   PROCESS OF ATTEMPTING TO ASK ONE WHEN I WAS

23   INTERRUPTED.  DIRECTING YOUR ATTENTION TO THE

24   PRODUCTION HEAD THAT YOU HAVE HEAD IN YOUR HAND.

25   MR. MC FARLAND:  OBJECTION TO THE

26

27   [106]   Buchakjian Dec. Exh. 5.

28

EXHIBIT ___7___

PAGE ___147___

-34-

r7209/2369096.2

1    CHARACTERIZATION IT WAS A PRODUCTION HEAD, BUT GO

2    AHEAD.

3    BY MR. ZELLER:

4    Q  IS THE PRODUCTION BRATZ HEAD THAT YOU HAVE

5    THERE IN YOUR HAND SUBSTANTIALLY SIMILAR IN ITS

6    APPEARANCE TO THE BRATZ HEAD THAT YOU INITIALLY

7    SCULPTED AND SHOWED TO CARTER BRYANT ON OR

8    ABOUT SEPTEMBER 29TH, 2000?

9    MR. MC FARLAND: OBJECTION TO THE USE OF THE

10   WORD "PRODUCTION HEAD." THERE'S NO FOUNDATION.

11   OBJECTION TO THE USE OF THE WORD "SUBSTANTIALLY

12   SIMILAR." CALLS FOR A LEGAL CONCLUSION. EXPERT

13   TESTIMONY. THIS WITNESS IS NOT AN EXPERT.

14   THE WITNESS: ARE YOU TALKING ABOUT THIS HEAD?

15   BY MR. ZELLER:

16   Q  I'M TALKING ABOUT THE HEAD THAT YOU FIRST

17   SHOWED TO CARTER BRYANT ON OR ABOUT SEPTEMBER

18   29TH, 2000.

19   MS. ANDERSON: SAME OBJECTIONS.

20   MR. MC FARLAND: SAME OBJECTIONS.

21   THE WITNESS: IS IT SUBSTANTIALLY DIFFERENT THAN

22   THIS?

23   Leahy Depo. at 301:21-303:18.[107]

24

25   Q  DO YOU RECOGNIZE THE GRAY CASTING THAT YOU

26

27   [107] Buchakjian Dec. Exh. 5.

28

07209/2369096.2

-35-

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

EXHIBIT    7

PAGE    148

1   HAVE THERE IN YOUR HAND AS BEING IN APPEARANCE A

2   BRATZ HEAD?

3   MR. MC FARLAND: OBJECTION. ASKED AND

4   ANSWERED. THEY'RE COMPLETELY DIFFERENT.

5   THE WITNESS: IT'S THE FIRST VERSION I DID.

6   IT WASN'T BRATZ YET.

7   BY MR. ZELLER:

8   Q  I'M NOT TALKING ABOUT WHAT IT WAS CALLED. I'M

9   ASKING ABOUT APPEARANCE. DO YOU BELIEVE -- DO YOU

10   BELIEVE THAT THE APPEARANCE OF THE HEAD THAT YOU

11   HAVE THERE -- THE GRAY CASTING -- IN TERMS OF ITS

12   FACIAL FEATURES IS COMPLETELY DIFFERENT IN

13   APPEARANCE TO THE PRODUCTION HEAD THAT YOU HAVE

14   THERE IN YOUR HAND?

15   MR. MC FARLAND: OBJECTION. ASKED AND ANSWERED

16   FIVE TIMES.

17   MR. PLEVAN: I OBJECT TO THE TOTAL

18   MISCHARACTERIZATION OF THE WITNESS'S TESTIMONY.

19   MR. MC FARLAND: HOW MANY MORE TIMES CAN SHE

20   SAY THEY'RE COMPLETELY DIFFERENT?

21   MR. ZELLER: COUNSEL, YOU CONTINUE TO

22   INTERRUPT, SO WE DON'T HAVE A CLEAR RECORD OF

23   WHAT HER TESTIMONY IS.

24   MR. MC FARLAND: WHY DON'T YOU READ BACK SOME

25   OF THE EARLIER QUESTIONS WHERE HE'S ASKED THIS

26   QUESTION BEFORE, AND SHE'S ANSWERED? IT'S CRYSTAL

27   CLEAR IN THE RECORD.

28   BY MR. ZELLER:

EXHIBIT  7

PAGE  149

-36-

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

)7209/2369096.2

1         Q  DO YOU HAVE THE QUESTION IN MIND, OR DO YOU

2    NEED IT AGAIN?

3         A  WHICH QUESTION ARE YOU ASKING?  ASK IT ONE

4    MORE TIME.

5    Leahy Depo. at 307:4-308:10.[108]

6

7         Q  SO THE RECORD IS CLEAR ON THAT, IF YOU COULD,

8    PLEASE, HOLD UP THE MORE FLESH-COLORED VINYL

9    HEAD.  I'M GOING TO SHOW YOU ANOTHER DOLL HEAD,

10   WHICH FOR THE RECORD IS A VINYL HEAD.

11   MR. MC FARLAND:  I'VE NEVER BEEN IN A DEPOSITION

12   WHERE OPPOSING COUNSEL ATTEMPTS TO

13   AUTHENTICATE DOCUMENTS AND SCULPTS AND PUTS

14   THEM IN THE RECORD AND THEN ASKS QUESTIONS ABOUT

15   THEM.  WHAT IS THIS?

16   MR. PLEVAN:  WHERE DO WE STAND ON THE TIME?

17   MR. ZELLER:  OBVIOUSLY, YOU THINK YOU'RE RUNNING

18   OUT THE CLOCK, BUT, COUNSEL, THAT'S JUST

19   ABSURD.  DO YOU DISPUTE, MR. MC FARLAND, THAT'S A

20   VINYL HEAD?  WHAT DO YOU THINK IT IS?  WHY DON'T

21   YOU TELL ME HOW ELSE IT SHOULD BE IDENTIFIED FOR

22   THE RECORD?

23   MR. MC FARLAND:  WHAT I WOULD DO, IF I WERE

24

25

26

27   [108]  Buchakjian Dec. Exh. 5.

28

EXHIBIT ___7___

PAGE ___150___

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

1           YOU, I WOULD HAVE PRODUCED IT.  I WOULD HAVE A

2           DOCUMENT CONTROL NUMBER, AND I WOULD HAVE HAD

3           IT AUTHENTICATED.

4           MR. ZELLER:  THAT'S YOUR OBJECTION; RIGHT?

5           MR. MC FARLAND:  THAT WOULD BE MY OBJECTION.

6           MS. ANDERSON:  BEFORE YOU ASK THE QUESTION,

7           MR. ZELLER, WE'RE ASKING THE VIDEOGRAPHER.

8           THE VIDEOGRAPHER:  WE'RE AT 7:02.

9           MR. MC FARLAND:  OBJECTION.  WE'RE DONE.

10  Leahy Depo. at 309:4-310:2.[109]

11

12          The Federal Rules of Civil Procedure require that "[a]ny objection

13  during a deposition must be stated concisely and in a non-argumentative and non-

14  suggestive manner."  Fed. R. Civ. P. 30(d)(1).  It was improper for Leahy's counsel

15  to use speaking objections to coach the deponent, including through his interruptions

16  of Leahy's answers mid-sentence to attempt to suggest the right answer or warn her

17  of a potentially harmful answer.  Hall v. Cliffton Precision, A Division of Litton

18  Systems, Inc., 150 F.R.D. 525, 530 (E.D. Pa. 1993); Damaj v. Farmers Insurance

19  Co., 164 F.R.D. 559, 560 (N.D. Okl. 1995) (frequent and suggestive objections by

20  opposing counsel can, and often do, completely frustrate a deposition's purpose).

21          Further, it was improper for Leahy's counsel to take her out of the

22  deposition with a question pending.  As the court observed in  Johnson v. Wayne

23  Manor Apartments, 152 F.R.D. 56, 59 (E.D. Pa. 1993),

24       When . . . witness' attorney unilaterally adjourns a
         deposition to confer regarding the witnesses' testimony,

25       the deposing party is denied the opportunity to obtain the
         witness' knowledge or opinion, but "instead what [the

26

27  [109]  Buchakjian Dec. Exh. 5.

28

        EXHIBIT ___7___

        PAGE ___151___

1  deposing] counsel has effectively 'discovered' is the
2  opinion and concomitant testimony of the [witness']
   attorney."

3      Despite the fact that Leahy has direct, relevant and critical information
4  to which Mattel is entitled, as seen above, Leahy's counsel deliberately halted her
5  deposition whenever her testimony appeared to be potentially damaging.  Rather
6  than allow Mattel to discovery such information, Leahy's counsel interrupted the
7  deposition through coaching, lengthy speaking objections and verbal histrionics.
8  Through lengthy speaking objections, interruptions of Leahy in the middle of her
9  answers, taking Leahy out of the room in the middle of deposition, and unilaterally
10 terminating the deposition, Leahy's counsel prevented a fair examination and
11 unreasonably delayed the deposition.  MGA's and Bryant's counsel engaged in
12 similar, improper conduct that wasted considerable time.

13     Additionally, counsel for Leahy, MGA and Bryant interrupted the
14 deposition by engaging in improper colloquy and walking out of the deposition with
15 the witness in mid-question.[110]  For example, Mr. McFarland made a lengthy
16 colloquy regarding his version of Mattel's attempts to obtain Ms. Leahy's unredacted
17 calendar.[111]  Mr. McFarland also made a speech regarding his decision to make
18 Leahy's planner available, even though all he needed to say was that the calendar
19 would be produced.[112]  Leahy's counsel's interruptions in the middle of Leahy's
20 answers and his litany of narrative, suggestive objections directly contradict the
21 requirement of brief objections and uninterrupted answers necessary for depositions
22 to serve their fact-finding purpose.  In short, consistent with their overall strategy to

23

24

_____

25 [110]  Leahy Depo. at 10:6-11:13; 32:18-34:14, 74:20-76:7; 123:16-124:19; 168:6-
   169:19; 170:1-11, 175:18-176:9; 214:19-219:3; 261:17-263:6, 263:8-14, 264:20-
26 265:7; 299:23-301:4, 309:4-23, Buchakjian Dec., Exh. 5.
27 [111]  Leahy Depo at 168:4-169:16, Buchakjian Dec., Exh. 5.
   [112]  Leahy Depo. at 168:4-169:16, Buchakjian Dec., Exh. 5.

28

EXHIBIT ___7___

PAGE ___152___

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

07209/2369096.2

1  obstruct and delay discovery, counsel prevented a fair examination of Leahy,

2  causing unreasonable delay and abusing the discovery process.

3          Mattel is entitled to additional deposition time to further examine Ms.

4  Leahy for these reasons as well.

5

6  **II.     THE COURT SHOULD COMPEL MS. LEAHY TO PROVIDE**

7  **ANSWERS TO QUESTIONS COUNSEL IMPROPERLY**

8  **INSTRUCTED HER NOT TO ANSWER**

9          The attorney-client privilege protects from discovery only the

10  substance of "confidential communications" between a client and his attorney.

11  Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992);

12  McKay v. C.I.R., 886 F.2d 1237, 1238 (9th Cir. 1989).  Leahy's counsel instructed

13  her not to answer questions that did not call for the substance of attorney-client

14  communications.  Instead, they merely called for disclosure of facts and information

15  known to Leahy.  These questions did not require anything more than a simple "yes"

16  or "no" answer.  The following excerpts are illustrative:

17          Q   AND WERE YOU REPRESENTED AT THAT TIME?

18          A   YES.

19          Q   BY WHO?

20          A   BY STEVEN CONTOPOLIS (PHONETIC).

21          Q   WAS HE A LAWYER THAT YOU FOUND OR THAT M.G.A.

22          FOUND?

23          MR. MC FARLAND:  OBJECTION.  INVADES THE ATTORNEY-

24          CLIENT COMMUNICATION PRIVILEGE.

25          MR. ZELLER:  EITHER YOU'RE INSTRUCTING HER OR

26          NOT ON THAT QUESTION.

27          MR. MC FARLAND:  I INSTRUCT HER NOT TO ANSWER.

28          (INSTRUCTION NOT TO ANSWER.)

EXHIBIT ___7___

53

1  Leahy Depo. at 242:12-243:9.[113]

2

3            Q   DID MR. CONTOPOLIS OR MR. MC FARLAND OR ANY

4      OTHER LAWYER TELL YOU THAT YOU SHOULD BE

5      PRESERVING DOCUMENTS OR INFORMATION THAT

6      PERTAIN TO THE LAWSUIT?

7              MR. MC FARLAND:  OBJECTION.  INSTRUCT NOT TO

8      ANSWER.  I'M SHOCKED YOU WOULD ASK HER ABOUT A

9      CONVERSATION BETWEEN ME AND MR. CONTOPOLIS AND

10     HER.  I INSTRUCT NOT TO ANSWER.

11     (INSTRUCTION NOT TO ANSWER.)

12             THE WITNESS:  I CAN'T ANSWER.

13     BY MR. ZELLER:

14           Q   DID YOU UNDERSTAND THAT YOU SHOULD BE

15     PRESERVING DOCUMENTS OR INFORMATION ABOUT THE

16     LAWSUIT BACK IN THE MAY OR JUNE 2004 TIME PERIOD?

17             MR. MC FARLAND:  OBJECTION.  INSTRUCT YOU NOT

18     TO ANSWER.  TO THE EXTENT YOUR INFORMATION IS WITH

19     COMMUNICATIONS WITH ME AND YOU OR MR.

20     CONTOPOLIS AND YOU, I INSTRUCT YOU NOT TO ANSWER.

21             (INSTRUCTION NOT TO ANSWER.)

22             THE WITNESS:  I CAN'T ANSWER.

23     BY MR. ZELLER:

24         Q   BECAUSE OF THE INSTRUCTION?

25         A   CORRECT.

25  Leahy Depo. at 255:14-256:10.[114]

26

27     [113]   Buchakjian Dec. Exh. 5.

28

EXHIBIT ___7___

PAGE ___154___

-41-

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

J7209/2369096.2

1

2        Q   AS YOU SIT HERE NOW, DO YOU UNDERSTAND THAT

3   YOU HAVE AN OBLIGATION TO PRESERVE DOCUMENTS OR

    INFORMATION THAT PERTAIN TO THE LAWSUIT?

4        MR. MC FARLAND:  SAME OBJECTION.  IF ANY

5   UNDERSTANDING YOU HAVE IS FROM A CONVERSATION

6   WITH ME OR MR. CONTOPOLIS, YOU ARE NOT GOING TO

7   TALK ABOUT IT.

8        (INSTRUCTION NOT TO ANSWER.)

9        THE WITNESS:  I CAN'T ANSWER.

10   BY MR. ZELLER:

11        Q   BECAUSE OF THE INSTRUCTION?

       A   CORRECT.

12 Leahy Depo. at 256:11-21.[115]

13

14     The Discovery Master has already ruled on motions that both Bryant

15 and Mattel brought that a witness' own understanding of facts, events and

16 information known to a witness are discoverable.[116]  That is because the mere fact

17

18

19   [114]  Buchakjian Dec. Exh. 5.

  [115]  Buchakjian Dec. Exh. 5.

20   [116]  On March 28, 2007, Bryant moved to overrule instructions not to disclose

21 facts or understandings learned from communications with counsel, given at the deposition of Alan Kaye.  The Discovery Master granted Bryant's motion to compel

22 in substantial part and overruled Mattel's instructions not to disclose facts or

23 understandings learned from communications with counsel, holding that such facts and understandings are not privileged.  See Bryant's Separate Statement in Support

24 of the Kaye Motion, Instruction Nos. 15, 17, Buchakjian Dec. Exh. 44; May 4, 2007

25 Order Granting in Part Bryant's Motion to Overrule Instructions Not to Answer During the Deposition of Alan Kaye ("May 4 Kaye Order"), Buchakjian Dec. Exh.

26 45, ¶ 1 & Attachment A; Declaration of B. Dylan Proctor dated August 1, 2007

27 ("08/01/07 Proctor Dec.") ¶ 22, Exhs. 22, 25, Buchakjian Dec. Exh. 46.  Bryant's counsel argued in his pleadings regarding the Kaye deposition that "Mattels' counsel

28     (footnote continued)

EXHIBIT

-42-

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH LEAHY

1  that a witness reveals facts to a lawyer or learns facts from a lawyer does not make

2  the facts themselves privileged.  "[I]t is only the communications that are subject to

3  attorney-client privilege, and not the foundational facts concerning the

4  communication, or the underlying, independent facts."  AMCO Ins. Co. v. Madera

5  Quality Nut LLC, 2006 WL 931437, at *18 (E.D. Cal. 2006); see also Resolution

6  Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995) ("Because the work

7  product doctrine is intended only to guard against divulging the attorney's strategies

8  and legal impressions, it does not protect facts concerning the creation of work

9  product or facts contained within work product"); Garcia v. City of El Centro, 214

10  F.R.D. 587, 591 (S.D. Cal. 2003) (same); Nutmeg Ins. Co. v. Atwell, Vogel &

11  Sterling A Div. of Equifax Services, Inc., 120 F.R.D. 504, 509 (W.D. La. 1988)

12  ("The courts have consistently held that the work-product concept furnishes no

13  shield against discovery, by interrogatories or by deposition, *of the facts* that the

14  adverse party's lawyer has learned, or the persons from whom he has learned such

15  facts. . .") (citing 8 Wright & Miller, Fed. Practice and Procedure § 2023 (1970)

16  (emphasis in the original)).

17

18

---

19  repeatedly relied upon improper privilege instructions to shield the underlying *facts*

20  from discovery, even where no attorney-client communications were involved. . .

21  the mere fact that a witness reveals facts to a lawyer or learns facts from a lawyer
   does not make such facts privileged."  See, e.g., Kaye Motion at 17:10-16 (emphasis

22  in the original), Buchakjian Dec. Exh. 44; 08/01/07 Proctor Dec. Exh. 21,

23  Buchakjian Dec. Exh. 46.  The Discovery Master agreed with Bryant's arguments,
   overruling Mattel's counsel's instructions not to disclose information learned from

24  counsel.  See May 4 Kaye Order, Buchakjian Dec. Exh. 44; 08/01/07 Proctor Dec.

25  Exh. 25, Buchakjian Dec. Exh. 46; see also Order Granting Mattel's Motion for an
   Extension of Time to Depose Paula Garcia in Her Individual Capacity and as a

26  30(b)(6) Designee, dated August 14, 2007, Buchakjian Dec. Exh. 47, at 12:20-22

27  (holding that the attorney-client privilege protection "does not extend to the facts
   underlying privileged communications.").

28

EXHIBIT  7
PAGE  156

J7209/2369096.2

-43-

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

1         Questions about whether or not the witness was ever told by anyone

2 that she needed to preserve documents that relate to the litigation or whether she

3 understands that she has an obligation to preserve documents relating to the

4 litigation also do not invade the attorney-client privilege and are not protected by the

5 work-product doctrine.  Nor do questions seeking information as to whether Mr.

6 Contopolis was an attorney that MGA or Leahy found.  Such facts are not

7 privileged.  Leahy bears the burden of supporting her privilege assertions.  <u>U.S. v.</u>

8 <u>Munoz</u>, 233 F.3d 1117, 1128 (9th Cir. 2000).  Because she cannot do so, the

9 improper instructions set forth should be overruled.

10 **III.   THE DISCOVERY MASTER SHOULD IMPOSE SANCTIONS**

11         Sanctions are justified because Ms. Leahy, MGA, Carter Bryant and

12 their counsel have engaged in a pattern of obstructionism:  Counsel first delayed

13 producing Ms. Leahy for months, and then only produced her after Mattel was

14 forced to move <u>ex parte</u>.  Counsel then delayed producing Ms. Leahy's unredacted

15 calendar until the day of her deposition.  Moreover, when Mattel was finally able to

16 depose Ms. Leahy, counsel obstructed the deposition in numerous ways, including

17 through lengthy speaking objections and colloquy, as discussed above, thereby

18 wasting time.  Leahy's, MGA's and Bryant's counsel also hindered Ms. Leahy's

19 deposition by taking frequent breaks, improperly coaching Ms. Leahy and even

20 walking out of the deposition mid-question.  Counsel has impeded Mattel's ability to

21 obtain Ms. Leahy's full and complete testimony on matters that are clearly relevant.

22         The Court has broad authority to sanction counsel for his conduct.  <u>Fed.</u>

23 <u>R. Civ. P.</u> 37(a)(4).  <u>See also</u> <u>United States v. Westinghouse Electric Corp.</u>, 648 F.2d

24 642, 651 (9th Cir. 1981) ("The choice of discovery sanctions is left to the discretion

25 of the district court.");  <u>accord</u> <u>Grimes v. City and County of San Francisco</u>, 951 F.2d

26 236, 240-241 (9th Cir. 1991) (courts "may, within reason, use as many and as varied

27 sanctions as are necessary to hold the scales of justice even.").

28

EXHIBIT  7

PAGE  157

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY

17209/2369096.2

1      Independently, sanctions may be imposed under 28 U.S.C. § 1927,

2  which provides that "[a]ny attorney . . . who so multiplies the proceedings in any

3  case unreasonably and vexatiously may be required by the court to satisfy personally

4  the excess costs, expenses, and attorneys' fees reasonably incurred because of such

5  conduct."   Sanctions under this section are appropriate "for conduct that, viewed

6  objectively, manifests either intentional or reckless disregard of the attorney's duties

7  to the court." <u>RTC v. Dabney</u>, 73 F.3d 262, 265 (10th Cir. 1995) (citing <u>Braley v.</u>

8  <u>Campbell</u>, 832 F.2d 1504, 1512 (10th Cir. 1987)).

9      Under these standards, the Court should impose monetary sanctions on

10  Ms. Leahy, MGA, Carter Bryant, and their counsel in the reasonable sum of $4,000,

11  as partial compensation for the attorneys' fees and costs incurred by Mattel relating

12  as a result of discovery abuse and the need to file this motion.

13               **Conclusion**

14      For the foregoing reasons, the Court should allow Mattel an additional

15  nine hours of deposition time with Ms. Leahy on or before February 28, 2008.  The

16  Court should also compel Ms. Leahy to answer those questions counsel improperly

17  instructed her not to answer when her deposition resumes.

18

19  DATED:  January 28, 2008      QUINN EMANUEL URQUHART OLIVER &
                              HEDGES, LLP

20

21                      By

22                          Timothy L. Alger
                          Attorneys for Mattel, Inc.

23

24

25

26

27

28

EXHIBIT ___7___

PAGE ___158___

MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF MARGARET HATCH-LEAHY