1  Larry McFarland (Bar No. 129668)
   Christian Dowell (Bar No. 241973)
2  KEATS, McFARLAND & WILSON LLP
   9720 Wilshire Blvd.
3  Penthouse Suite
   Beverly Hills, CA 90212
4  Telephone:   (310) 248-3830
   Facsimile:    (310) 860-0363
5  Email:   lmcfarland@kmwlaw.com
            cdowell@kmwlaw.com
6
7  Attorneys for Lucy Arant,
   Sarah Halpern, and Peter Marlow
8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

12

13  CARTER BRYANT, an individual,    Case No.: CV 04 – 09049 SGL (RNBx)
                                     Consolidated with Case Nos.
14                 Plaintiff,        CV 04-9059 and CV 05-2727
                                     Hon. Stephen G. Larson
15       v.

16  MATTEL, INC., a Delaware         **SUR-REPLY IN RESPONSE TO**
    corporation;                     **ORDER TO SHOW CAUSE OF LARRY**
17                                   **MCFARLAND, LUCY ARANT, SARAH**
                                     **HALPERN AND PETER MARLOW**
18                 Defendant.

19
    _____
20  AND RELATED ACTIONS.            Hearing Date:   February 25, 2008
                                     Time:   10:00 a.m.
21                                   Place:   Courtroom 1

22

23

24                    **[PUBLIC REDACTED]**

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   ARGUMENT.......................................................................................................5

      A.    Mattel Failed to Establish Good Cause Under Fed. R. Civ. P. 26
            to Depose Mr. McFarland. ........................................................................5

      B.    Deposing Mr. McFarland is Improper Under the
            Well-Established <u>Shelton</u> Rule. ...............................................................6

      C.    Mattel Has Not Effected Service on Mr. McFarland.............................11

      D.    Mattel Has Not Effected Service on Ms. Halpern,
            Mr. Marlow or Ms. Arant........................................................................13

III.  CONCLUSION ................................................................................................16

SUR-REPLY IN RESPONSE TO ORDER TO SHOW
CAUSE OF LARRY MCFARLAND, LUCY ARANT,
SARAH HALPERN, AND PETER MARLOW

# TABLE OF AUTHORITIES

**Cases**

Holmes v. Superior Court, 145 Cal. App. 3d 934 (1983)..............................................11

Mass. Mutual Life Insurance v. Cerf., 177 F.R.D. 472 (N.D. Cal. 1998).....................7

N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83 (M.D.N.C. 1987).....7

Nocal, Inc. v. Sabercat Ventures, Inc., 2004 WL 3174427 (N.D. Cal. 2004)..........8, 9

Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1987)..................6, 7, 8

United States v. Kovel, 296 F.2d 918 (2d Cir. 1961) ...................................................10

von Bulow by Auersperg v. von Bulow, 811 F.2d 136 (2d Cir. 1987) ........................10

West Peninsular Title Co. v. Palm Beach County, 132 F.R.D. 301 (S.D. Fla. 1990)…8

**Other Authorities**

7-3 Moore's Federal Practice § 33.102...........................................................................5

**Rules**

Fed. R. Civ. P. 26.............................................................................................................5

Fed. R. Civ. P. 33(b)(3) ...................................................................................................5

I.     **INTRODUCTION**

As former President Reagan used to say, "Well, there [they go] again."  In its opposition, Mattel continues its pattern of hurling falsehoods at Mr. McFarland.  Mattel now claims that it tried to serve Mr. McFarland on three separate occasions at his home.  The problem with this statement is that it is untrue.  In its Ex Parte Application, filed January 28, 2008, Mattel chose not to include the alleged attempts on January 25, 26 and 27, 2008, to serve Mr. McFarland at his home.[1]  However, notwithstanding this fact, Mattel states in its Reply Memorandum in Response to Order to Show Cause Directed to Larry McFarland, Lucy Arant, Sarah Halpern and Peter Marlow ("Reply") that "he does not deny that he was present when Mattel made seven attempts to serve him."[2]  Well, you cannot deny what you have not been accused of, but now that the false allegation has been made, it can be denied.  With respect to the alleged attempts to serve Mr. McFarland at home, the Declaration of Miguel Leyva ("Leyva Dec.") filed with the Reply is untrue.[3]  First, Mr. McFarland resides at 1991 Outpost Circle, not "1991 Outpost."[4]  Second, it is not possible for Mr. Leyva to have knocked on Mr. McFarland's door on January 25, 26 and 27, because Mr. McFarland's door is not accessible.  His home is surrounded by a high wall and the pedestrian gate is routinely locked, and there is no doubt that it was locked during all of the times that Mr. Leyva states that he attempted to serve

---

[1]  Declaration of Larry W. McFarland ("McFarland Dec."), Exhibit ("Exh.") 1 at 9.  Counsel renews its request as set forth in footnotes 32 and 34 of the Response to strike the inadmissible hearsay statements in the referenced declarations, and requests a ruling on this motion.

[2]  Reply at p. 1.

[3]  McFarland Dec., Exh. 2 at 23.

[4]  Id.; Outpost Drive is the major street in Mr. McFarland's neighborhood.  Outpost Circle is a small street with approximately 11 houses.

1    Mr. McFarland.  In addition, Mr. McFarland did not hear a knock on his door at any

2    of the times that Mr. Leyva claims that he knocked.[5]

3           Second, skipping over for the moment that Mattel has seamlessly abandoned

4    its earlier false allegations regarding statements that Mr. McFarland allegedly made

5    with respect to Bratz copyright applications, Mattel now alleges that "MGA has

6    already identified McFarland as the only person who can answer questions as to the

7    basis for his allegedly erroneous representations to the Copyright Office, that Bratz

8    was first published in February 2001."[6]  As support for this statement, Mattel cites

9    the deposition testimony of Samir Khare, MGA's 30(b)(6) designee on various topics

10   regarding copyright registrations.[7]  Mattel states that "MGA defendants' designee on

11   Bratz copyright registrations testified in December (sic)[8] 2007 that outside counsel

12   was the only one who could explain why they gave inaccurate information to the

13   Copyright Office about the timing of Bratz' first publication."[9]  Mr. McFarland was

14   unable to locate this statement anywhere in the pages cited by Mattel.  What did

15   happen is that when Mr. Khare was asked why the February 12, 2001, date was used

16   on various copyright applications, counsel for MGA on several occasions instructed

17   Mr. Khare not to reveal privileged information,[10] and Mr. Khare stated that he did not

18   know why this date was used.[11]  However, Mr. Khare further testified as follows:

19

20

21   _____

22   [5]  McFarland Dec., ¶ 3.

23   [6]  Reply at 10.
     [7]  Reply at 9, fns. 21, 22.

24   [8]  Most of the testimony that Mattel cites to is from Mr. Khares' deposition dated
     August 20, 2007.  Mr. Khare was also deposed on January 23, 2008, and January 25,

25   2008.  See Declaration of Christopher Price in support of Reply ("Price Dec."), Exh.
     G.

26   [9]  Reply at 9, fn. 22.

27   [10]  Price Dec., Exh. G at 109.

28   [11]  Id.



When asked who at MGA supervised Mr. McFarland when he was working on the 2003 Copyright Applications,[13] Mr. Khare testified that he did not know.[14] What is clear, however, is that Mattel knows that it was Mr. Kamarck, MGA's former

---

[12] Price Dec., Exh. G at 88–89.
[13] Defined as Bratz Group Drawing, Reg. No. VA 1-218-489; Cloe Drawing, Reg. No. VA-1-218-490; Jade Drawing, Reg. No. VA 1-218-487; Sasha Drawing, Reg. No. VA 1-218-488; and Yasmin Drawing, Reg. No. VA 1-218-491.
[14] Price Dec., Exh. G at 172.

general counsel, who Mattel deposed on January 28, 2008, who supervised Mr. McFarland with respect to the 2003 Copyright Applications.[15]  Mr. Kamarck testified at his deposition that he was employed at MGA through February 2004 and that "copyright would have been something that I would have overseen and worked with outside counsel on.  So that would have been more – would have been more under my direct supervision."[16]  Notwithstanding Mr. Kamarck's unequivocal statement that he supervised outside counsel on copyright matters, and notwithstanding the undisputed fact that the 2003 Copyright Applications were filed during the time that Mr. Kamarck was employed at MGA, Mattel chose <u>not</u> to question Mr. Kamarck about the 2003 Copyright Applications.[17]  One has to wonder why a partner at Quinn Emanuel decided not to question Mr. Kamarck about the 2003 Copyright Applications that they now characterize as a matter of "great[ ] importance."[18]  This decision on the part of Quinn Emanuel is particularly curious given that the deposition of Mr. Kamarck was proceeding on the very day that Quinn Emanuel was filing its Ex Parte Application seeking to depose Mr. McFarland after the discovery cut-off.  Unfortunately, the only logical explanation for this behavior is that Quinn Emanuel knew that the justification that Mattel had provided to depose Mr. McFarland in Mattel's Deposition Motion was wrong, and they were trying to set up a fallback pretext to depose Mr. McFarland – that he is "the only person who can answer questions as to the basis for his allegedly erroneous representations to the Copyright Office that Bratz was first published in February 2001."[19]

---

[15]  McFarland Dec., Exh. 3 at 29, 31.
[16]  <u>Id</u>.
[17]  <u>See</u> McFarland Dec., Exh. 3.
[18]  Reply at 9.
[19]  Reply at 10.

SUR-REPLY IN RESPONSE TO OSC

1    Unfortunately, it seems as though Quinn Emanuel has abused the discovery

2    process by targeting Mr. McFarland in an effort to distract Mr. McFarland from

3    representing his clients.  This Court should not allow this abuse to continue.

4    **II.    ARGUMENT**

5    **A.    Mattel Failed to Establish Good Cause Under Fed. R. Civ. P. 26**

6    **to Depose Mr. McFarland.**

7    This Court issued an order to show cause as to why Mr. McFarland, and his

8    clients, should not be deposed.  As set forth in the Response to the Order to Show

9    Cause ("Response"), Mr. McFarland should not be deposed because he should never

10   have been included in this Court's Order in the first place and would not have been

11   included if Quinn Emanuel had not made false statements regarding Mr. McFarland.

12   In response to the truth as set forth in the Response, the best that Mattel can muster is

13   that "McFarland's argument that he was not listed in earlier initial disclosures as a

14   witness is irrelevant.  Mattel identified him as an important witness in its Motion for

15   Leave to Take Additional Discovery."[20]  Mattel makes no effort to explain why it

16   failed to include Mr. McFarland in its Supplemental Interrogatory Responses, which

17   were served over two weeks after Mattel's Deposition Motion was filed, even though

18   it was required to do so.  See Fed. R. Civ. P. 33(b)(3); 7-3 Moore's Federal Practice

19   § 33.102 ("A party answering interrogatories has an affirmative duty to furnish any

20   and all information available to the party.").  Mattel also makes no effort to explain

21   how it came to be that it made this false allegation or when Quinn Emanuel learned of

22   its falsity.  Instead, Mattel simply ignores its past false statements and attempts to set

23   forth a new justification to depose Mr. McFarland that was not put before this Court

24   when it ruled on Mattel's Deposition Motion, which is that Mr. McFarland is the

25   "only person" who can answer questions with respect to the February 12, 2001,

26

27   _____

28   [20]  Reply at 9, fn. 22.

1   publication date.[21]

2      As set forth above, Mr. Khare never made this statement and Mattel chose not

3   to question Mr. Kamarck, MGA's former general counsel, about the 2003 Copyright

4   Applications, including the publication date, even though Mr. Kamarck testified that

5   he oversaw outside counsel on copyright matters during the time that the 2003

6   Copyright Applications were drafted and filed.  Having decided not to question

7   Mr. Kamarck about this issue, Mattel cannot establish that "no other means exist to

8   obtain the information."  Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th

9   Cir. 1987).

10      **B.     Deposing Mr. McFarland is Improper Under the Well-**

11           **Established Shelton Rule.**

12      Mattel's attempt to distinguish Shelton on the grounds that Mr. McFarland is

13   not trial counsel in this case for MGA is misplaced.  In its Reply, Mattel states that

14   "Mr. McFarland is not trial counsel,"[22] while in almost every other motion that it files

15   involving Mr. McFarland's clients, it never misses the opportunity to characterize Mr.

16   McFarland as MGA's counsel.  For example, Mattel has made the following

17   statements with respect to Mr. McFarland's representation of his clients: Ms. Leahy,

18   Ms. Marlow and Ms. Cloonan are "represented by MGA's counsel";[23] "represented by

19   counsel retained by MGA";[24] "Marlow, who is also represented by MGA's

20   counsel…;"[25] "[n]evertheless [Ms. Leahy's] counsel, who also is counsel for

21

22   _____

23   [21]  Tellingly, given that Mattel claims that Mr. Khare made this statement (which he
    did not) during his deposition on August 20, 2007, it is all the more inexplicable that

24   Mattel did not list Mr. McFarland as a witness in its Supplemental Interrogatory
    Responses.  According to Mattel, Mr. McFarland is not merely a witness, but

25   purportedly the only witness as to a very important issue.

26   [22]  Reply at 10.

    [23]  McFarland Dec., Exh. 4 at 63.

27   [24]  McFarland Dec., Exh. 5 at 79.

28   [25]  McFarland Dec., Exh. 6 at 96.

1    MGA…;"[26] "Margaret Hatch-Leahy, Veronica Marlow, Elise Cloonan and Sarah

2    Halpern are all important third party witnesses who … are represented by Larry

3    McFarland, MGA's counsel;"[27] and "Mattel requested confirmation from Larry

4    McFarland, an MGA lawyer who represents these witnesses…."[28]  It is, therefore,

5    undisputed that Mr. McFarland is counsel for MGA.  In a factually analogous case,

6    N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83 (M.D.N.C. 1987),

7    defendants tried to depose plaintiff's patent attorney, Mr. Green, who had filed a

8    declaration and an amendment with the PTO in support of plaintiff's patent.

9    "Defendant wants to depose Mr. Green to explore why plaintiff and he allegedly

10   changed their position when they first said the original claims were valid but later

11   submitted limiting amendments….  Finally, defendant points out that plaintiff has

12   waived any attorney-client privilege in the Green opinion since it was published in the

13   Patent Office and also plaintiff's president referred to it in his deposition."  N.F.A.

14   Corp., 117 FR.D. at 84.  The court rejected these arguments stating that "Rule

15   26(b)(3), Fed.R.Civ.P., provides near absolute protection of an attorney's mental

16   impressions or opinion work product.  Duplan Corp. v. Moulinage et Retorderie de

17   Chavanoz, 509 F.2d 730 (4th Cir. 1974), cert. denied, 420 U.S. 997, 95 S.Ct. 1938, 43

18   L.Ed.2d 680 (1975)."  Id. at 85.  The court applied the three-part test set forth in

19   Shelton and found that "defendant fails to show that the inquiries will not likely

20   invade either work product or attorney-client privileges."  Id. at 86.  The court

21   therefore "Ordered that defendant is forbidden from deposing Mr. Green without

22   further Order of the Court."  Id.; see also Mass. Mut. Life Ins. v. Cerf., 177 F.R.D.

23   472, 418 (N.D. Cal. 1998) ("Mass. Mutual has failed to show that Mr. Tropel

24   possesses any relevant non-privileged information that cannot be acquired from other

25   sources."); West Peninsular Title Co. v. Palm Beach County, 132 F.R.D. 301, 302-03

---

26   McFarland Dec., Exh. 7 at 114.
27   McFarland Dec., Exh. 8 at 165.

SUR-REPLY IN RESPONSE TO OSC

1  (S.D. Fla. 1990) ("The party seeking a deposition must demonstrate that the

2  deposition is the only practical means available of obtaining the information.  Id.

3  Other methods, such as written interrogatories, should be employed.  Id.; In re Arthur

4  Treacher's, 92 F.R.D. at 439….  The party seeking an attorney's deposition must also

5  show that the information sought will not pursue any attorney-client privilege.  N.F.A.

6  Corp., 117 F.R.D. at 85.").  Therefore, in order to depose Mr. McFarland, Mattel must

7  show that (1) no other means exists to obtain the information, (2) the information

8  sought is relevant and non-privileged, and (3) the information is crucial to the

9  preparation of the case.  Shelton, 805 F.2d at 1327.  Regarding the first prong, as set

10  forth above, for unknown reasons, Quinn Emanuel chose not to question Mr. Kamarck

11  about the 2003 Copyright Applications, including the publication dates.  Subject to

12  any claims of privilege, Mr. Kamarck was admittedly a source of all such information.

13  With respect to the second prong, Quinn Emanuel has no response to Mr. McFarland's

14  sworn statement that the only conversations he had with respect to the 2003 Copyright

15  Applications were privileged, other than to make the conclusory assertion that

16  "McFarland's false assertion that all he knows is privileged cannot be true."[29]  It is

17  Mattel's burden to establish that the information sought is not privileged and it has

18  failed to satisfy this burden.  With respect to the third prong, Mattel "has not

19  demonstrated that any other non-privileged information is crucial to the case."  Nocal,

20  2004 WL 3174427, at *3.  In sum, although Mattel is required to satisfy all three

---

[28]  Id. at 166.

[29]  As this Court found in Nocal, "[t]he subpoena seeks to invade the attorney-client and work product privileges because it seeks direct communications between Beard and AD."  Nocal, 2004 WL 3174427, at *4.

---

SUR-REPLY IN RESPONSE TO OSC

1    prongs of the <u>Shelton</u> test, it has failed to satisfy even one of the prongs.

2        Unfortunately, it appears that Quinn Emanuel has an antipathy against

3    Mr. McFarland and is pursuing his deposition for the purpose of harassment and to

4    distract him from defending his clients.  <u>See</u> <u>Nocal, Inc. v. Sabercat Ventures, Inc.</u>,

5    2004 WL 3174427, at *1 (N.D. Cal. 2004) ("Beard argues that growing antipathy in

6    his personal relationship with Schloam motivated Schloam to serve the subpoenas

7    with the purpose of harassment.").  In this case, Quinn Emanuel has consistently made

8    false statements regarding Mr. McFarland and his clients with respect to the

9    Deposition Motion, the Reply and in other pleadings.  The following are some

10   examples:

11           1.    Quinn Emanuel stated in its Deposition Motion that

12       Mr. McFarland "wrote copyright registrations that stated that Bratz dolls

13       were created during 2000 and that, after this set was filed, MGA claimed

14       were incorrect."  In its Reply, by its omission, Mattel now admits that

15       this statement was untrue;

16           2.    Quinn Emanuel stated in its Reply that "[Mr. McFarland] does not

17       deny that he was present when Mattel made seven attempts to serve

18       him."[30]  Quinn Emanuel knows full well that they did not include any

19       allegation in the Ex Parte Application that Mattel had attempted to serve

20       Mr. McFarland at his home.  Therefore, Mr. McFarland obviously could

21       not have denied this allegation at that time;

22           3.    Quinn Emanuel stated in its Reply that its process server attempted

23       to serve Mr. McFarland three times at home by knocking on his front

24       door.[31]  This is not true.[32]

25           4.    Quinn Emanuel stated in its Reply that "MGA has already

26   _____

27   [30]  Reply at 1.
28   [31]  Reply at 3; <u>see</u> McFarland Dec., Exh. 2 at 23.

SUR-REPLY IN RESPONSE TO OSC

1    identified Mr. McFarland as the only person who can answer questions as

2    to the basis for his allegedly erroneous representations to the Copyright

3    Office that Bratz was first published in February 2001."[33]  This is not

4    true.  Not only did Mr. Khare never make this statement, but Quinn

5    Emanuel decided not to question MGA's former general counsel, who

6    testified that he supervised copyright matters during the time that the

7    2003 Copyright Applications that Mr. McFarland signed were prepared;

8         5.    Quinn Emanuel stated that "[c]ounsel for these witnesses flatly

9    refuses to produce relevant electronic data.  He refused to … (4) allow

10   any inspection of Cloonan's hard drive that would shed light on whether,

11   as Bryant testified, it was used to create his alleged "Bratz" pitch."[34]

12   This is not true.[35]

13        6.    Quinn Emanuel stated that "Veronica Marlow, Margaret-Hatch

14   Leahy and Elise Cloonan first refused to appear for deposition; only after

15   Mattel brought a motion to compel did they agree to appear."[36]

16   This is not true.[37]

17

18

19   [32]  See McFarland Dec., ¶ 3.

     [33]  Reply at 10.

20   [34]  McFarland Dec., Exh. 5 at 80.

     [35]  McFarland Dec., Exh. 9.

21   [36]  McFarland Dec., Exh. 5 at 79.

22   [37]  It is a matter of public record that all three of these non-party witnesses not only

23   agreed to appear for their depositions before Mattel filed its Ex Parte Application to

     compel their deposition dates, but in fact provided Mattel with the following

24   deposition dates: December 12, 2007 for Ms. Leahy, December 14, 2007 for Ms.

     Cloonan, and December 28, 2007 for Ms. Marlow.  McFarland Decl., Exh. 13.  Not

25   satisfied with these dates, Mattel filed its Ex Parte Application to compel their

26   deposition dates, requesting that the deposition dates of these non-party witnesses be

     taken on or before December 7, 2007.  McFarland Dec., Exh. 4.  At the hearing,

27   Mattel's counsel essentially backed away from its request that the deposition dates be

     moved up for Ms. Leahy and Ms. Marlow.  The Court accepted counsel's

28

- 10 -                                      SUR-REPLY IN RESPONSE TO OSC

1    This pattern of inaccurate statements combined with Mattel's failure to satisfy

2  the requirements of the <u>Shelton</u> rule establish that Mr. McFarland should not be

3  deposed.

4    **C.    Mattel Has Not Effected Service on Mr. McFarland.**

5    As set forth above, it is not true that Mattel "made <u>7</u> attempts to serve him."[38]

6  Mattel never attempted to serve Mr. McFarland at his home.[39]  With respect to the

7  alleged attempts to serve Mr. McFarland at his office, Mattel's process server admits

8  that on one of the four occasions, the office was closed.[40]  This leaves at most three

9  alleged attempts to serve Mr. McFarland.[41]  These three efforts do not provide any

10  basis to conclude that Mr. McFarland evaded service or behaved improperly.  With

11  respect to Mattel's allegation that "Mr. McFarland was in his office during this

12  period," Mattel cites to three letters dated January 16, 2008, January 23, 2008, and

13  January 27, 2008, to support this claim.[42]  However, only one of these letters, the one

14  dated January 16, 2008, was dated the same day that Mattel allegedly attempted to

15  serve Mr. McFarland.  Mattel cites to no letter dated on January 15, 2008, or January

16  22, 2008, the other two days that Mattel alleges that it attempted to serve

17  Mr. McFarland.[43]  Regarding Mr. McFarland's conversations with employees in his

18

19  [footnote continued] representation that the witnesses would appear on the agreed-to

20  dates, and as counsel informed the Court at the hearing held January 7, 2008, all three

21  non-party witnesses did in fact appear for their depositions on the agreed-to dates.
   McFarland Dec., Exh. 14.

22  [38]  Reply at 3.

23  [39]  McFarland Dec., ¶ 3.
   [40]  McFarland Dec., Exh. 1 at 9; McFarland Dec., Exh. 2 at 23.

24  [41]  It should be noted that all three of these alleged attempts are around lunchtime –

25  January 15, 2008, at 12:30 p.m., January 16, 2008, at 11:30 a.m., and January 22,
   2008, at 12:30 p.m.  McFarland Dec., Exh. 1 at 9; McFarland Dec., Exh. 2 at 23.

26  [42]  Price Dec., Exhs. B, C and D.

27  [43]  McFarland Dec., Exh. 1 at 9; McFarland Dec., Exh. 2 at 23; Mr. McFarland also
   notes that the letter cited by Mattel, dated January 23, 2008, is signed for

28  Mr. McFarland by Christian Dowell.

office, such communications are protected from disclosure by the attorney-client communication privilege.  von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 146 (2d Cir. 1987).  As the Second Circuit stated in von Bulow, "[w]e have recognized that an attorney's effectiveness depends upon his ability to rely on assistance of various aides, be they 'secretaries, file clerks, telephone operators, messengers, clerks not yet admitted to the bar and aides of other sorts.'  United States v. Kovel, 296 F.2d 918, 921 (2d Cir. 1961).  '[T]he privilege must include all the persons who act on the attorneys' agents.' 8 Wigmore, Evidence § 2301 (McNaughton rev. 1961) (quoted in United States v. Kovel, supra, 296 F.2d at 921)."  Id.  Any statements by Mr. McFarland regarding his communications with persons in his office risks waiver of the work product and attorney-client communication privileges, and would open the door to an entirely new area of abusive discovery by Quinn Emanuel.

With respect to Mattel's argument that Mr. McFarland could have challenged the subpoena, the truth is that Mr. McFarland fully intended to.  As opposed to what Mr. Quinn stated at the February 4, 2008, hearing, Mattel never noticed Mr. McFarland's deposition.  Given the untrue statement in the Deposition Motion, Mr. McFarland was hopeful that Mattel had figured out their error and would choose to not go forward with Mr. McFarland's deposition.  Unfortunately, it is now obvious that the facts and the truth do not get in Mattel's way.

Mattel's reliance on Holmes v. Superior Court, 145 Cal. App. 3d 934, 941-42 (1983), is misplaced.  That case involved an attorney who knowingly and criminally interfered with the service of a civil trial subpoena on a witness.  There is absolutely no such evidence in this case.  As set forth herein, Quinn Emanuel has had numerous opportunities to serve Mr. McFarland, including at any of his clients' depositions during a time when Mattel, by its own admission, had plenty of depositions remaining.  These facts do not support any inference that Mr. McFarland behaved improperly.  As to Quinn Emanuel's request on Sunday evening, January 27, 2008, that Mr. McFarland arrange a time for service, Mr. McFarland was out of the office on

SUR-REPLY IN RESPONSE TO OSC

1  Monday, January 28, 2008, and Tuesday, January 29, 2008, to celebrate his
2  anniversary.[44]

3         **D.**     **Mattel Has Not Effected Service on Ms. Halpern, Mr. Marlow or**
4                **Ms. Arant.**

5        It is undisputed that Mattel has known of the existence of Ms. Halpern,
6  Mr. Marlow and Ms. Arant as potential witnesses in this case since 2004.  However,
7  even though Mattel stated and Mr. Quinn confirmed at the February 4, 2008, hearing
8  that Mattel had several of its 24 depositions remaining, Mattel chose throughout this
9  litigation not to serve a subpoena on any of these three witnesses, but instead waited
10  until the eve of discovery cut-off to attempt to effect service.[45]  That was their
11  decision.  Now, having failed to effect service, they hurl baseless accusations at these
12  witnesses.  There is simply no evidence that any of these three witnesses evaded
13  service.

14        In addition, as set forth in the Response, Mattel did not serve notices of
15  deposition for any of these three witnesses.  Mattel's silence on this point in its Reply
16  is an admission that Mr. Quinn's statement to this Court at the February 4, 2008,
17  hearing, that "we did notice all of the depositions that we got leave to take pursuant to
18  the Court's January 7th Order," is inaccurate.

19        With respect to Ms. Halpern, while counsel had been meeting and conferring
20  with respect to a deposition date for Ms. Halpern, beginning on approximately
21  November 2, 2007, counsel for Mattel stopped asking for a deposition date for Ms.
22  Halpern and only sought deposition dates for Ms. Cloonan, Ms. Leahy and Ms.

23
24
_____

25  [44]  McFarland Dec., ¶ 11.
26  [45]  Counsel notes that given the inaccurate statements by Mr. Leyva regarding
   attempted service on Mr. McFarland at his house, the declarations regarding attempted
27  service on Ms. Halpern, Mr. Marlow and Ms. Arant should also be viewed with
28  skepticism.

_____

         SUR-REPLY IN RESPONSE TO OSC

1   Marlow.[46]  Given the fact that Mattel had depositions available, one can only conclude

2   that Mattel rightfully decided that Ms. Halpern's involvement with Bratz was so

3   minimal that she did not warrant the effort to depose her.  As established by the

4   documents produced by Ms. Halpern, her only involvement with the Bratz project was

5   with respect to fabric design and her work did not start until approximately late

6   November 2000.[47]

7           With respect to Mr. Marlow, again, Mattel cannot deny that Mr. Marlow

8   personally attended his wife's deposition and that at that time Mattel's position was

9   that it had depositions remaining absent this court's January 7th Order, but chose not

10  to serve Mr. Marlow.  Moreover, Mr. Marlow's attendance at his wife's deposition,

11  which obviously was not required, is evidence that Mr. Marlow was not avoiding

12  service.

13          Regarding Ms. Arant, there is simply no evidence that Ms. Arant did anything

14  improper.  With respect to the alleged attempts at service on Ms. Arant, Mr. Leyva

15  admits that when he went to Ms. Arant's condominium complex on January 17, 18,

16  19, 20, 21 and 22, 2008, the intercom at her condominium complex was not

17  working.[48]  Mr. Leyva further confirms during three more alleged attempts to serve

18  Ms. Arant on January 25, 26 and 27, 2008, that the intercom was obviously not

19  working for any of the residents when he states that he "attempted to contact anyone

20  at the residence by using the security intercom, but no one answered."[49]  Similarly, the

21  alleged attempt to serve Ms. Arant on January 15, 2008, by Mr. Jerez was also a

22  nullity because the intercom was obviously not working.[50]  Continually ringing on an

23

24  _____

25  [46] McFarland Dec., Exh. 10.
    [47] McFarland Dec., Exh. 11.

26  [48] McFarland Dec., Exh. 1 at 11; McFarland Dec., Exh. 2 at 24.  It was obviously not
    working when he also allegedly tried to effect service on January 16, 2008.

27  [49] McFarland Dec., Exh. 2 at 25.

28  [50] McFarland Dec., Exh. 1 at 12.

1   intercom that clearly does not work 11 different times does not constitute a reasonable

2   attempt to effect service.  Under Quinn Emanuel's theory, you could keep "ringing" a

3   broken intercom all day and count up hundreds of failed attempts at service – and then

4   use these hundreds of "failed" service attempts to support an inference that the person

5   was avoiding service.  This is silly.  In addition, neither the further attempt to serve

6   Ms. Arant at her old address nor the alleged "stake-out" for two hours from 7-9 p.m.

7   on January 23, 2008, supports an inference that Ms. Arant avoided service or behaved

8   improperly.[51]  Quinn Emanuel is therefore left with three attempts at service and not

9   the 13 as alleged in the Reply.[52]  These three efforts, one on January 15, 2008, at 4:20

10  p.m., the second on January 17, 2008, at 10:00 a.m., and the third on January 24,

11  2008, at an unknown time, do not provide a basis for any inference that Ms. Arant was

12  evading service.  In addition, it is a matter of public record that Ms. Arant signed

13  certain copyright applications in 2001, and Mattel has presumably known this fact

14  since before this case was filed in 2004.  Throughout this litigation, Mattel chose not

15  to notice her deposition or to serve her with a subpoena even though Mattel had

16  depositions available.  This was their decision.

17      With respect to all three of these witnesses, Mattel decided to wait until the eve

18  of discovery cut-off to try and effect service.  Mattel failed in those efforts in large

19  part because it decided to wait until the last minute.  Mattel also states that it "is a fair

20  inference that Arant, Halpern and Marlow were also coached to evade service" based

21  on the fact that Ms. Marlow, Ms. Leahy and Ms. Cloonan testified that they did not

22  know who was paying their legal fees.[53]  This argument is insulting and outrageous,

23  and is another example of the antipathy that Quinn Emanuel directs at Mr. McFarland.

24  With respect to the testimony of the three witnesses, each of them testified that they

25

26  [51] Id. Similarly, a neighbor allegedly knocking on Ms. Arant's door or January 22, 2008, does not establish that Ms. Arant was avoiding service.

27  [52] Reply at 5.

28  [53] Reply at 7.

SUR-REPLY IN RESPONSE TO OSC

1    were not paying their legal fees, but that they were not sure who was.[54]  There is

2    nothing to show that these witnesses did anything other than tell the truth.  Moreover,

3    Mattel neglects to mention that at least one of the witnesses that it provided counsel

4    for, Steven Linker, testified the same way:

5          Q:    So Mattel referred [Mr. Linker's counsel] to you?

6          A.    Yes.

7          Q:    Is Mattel paying Mr. Berman's bills today?

8          A:    I don't know.[55]

9          For Mattel to take the testimony of these three witnesses, which is the same as

10   the testimony of Mr. Linker, and then to use this testimony to support an inference

11   that Ms. Arant, Ms. Halpern and Mr. Marlow were coached to evade service is

12   inexcusable.

13   **III.    CONCLUSION**

14         For the foregoing reasons, Mr. McFarland, Ms. Arant, Ms. Halpern and

15   Mr. Marlow have shown good cause why they should not be deposed.

16

17   Dated:  February 22, 2008          KEATS McFARLAND & WILSON LLP

18

19                                      /s/ _____

20                                      Larry W. McFarland, Esq.
                                        Attorneys for Non-Party Witnesses
21                                      Lucy Arant, Sarah Halpern and Peter Marlow

22

23

24

25   _____

26   [54]  Price Dec., Exhs. F, G.  In fact, Mr. Zeller went so far as to ask Ms. Leahy and Ms.
     Cloonan to guess with respect to who was paying their fees.  Price Dec., Exh. H at
27   198; Price Dec., Exh. F at 75-76.

28   [55]  McFarland Dec., Exh. 12 at 183.