1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 90378)
2    (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
5  865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

11 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx)
   |                               | Consolidated with
12 |              Plaintiff,       | Case Nos. CV 04-09059 & CV 05-2727
13 |        vs.                    | Hon. Stephen G. Larson
14 | MATTEL, INC., a Delaware      | MATTEL, INC.'S OPPOSITION TO
15 | corporation,                  | MGA DEFENDANTS' *EX PARTE*
   |                               | APPLICATION TO COMPEL THE
16 |              Defendant.       | DEPOSITIONS OF MATTHEW
   |                               | BOUSQUETTE AND TINA PATEL
17 |                               | [Declarations of B. Dylan Proctor and Jon
18 | AND CONSOLIDATED ACTIONS      | D. Corey filed concurrently herewith]
19 |                               | Hearing Date:       TBD
   |                               | Time:               TBD
20 |                               | Place:              Courtroom 1
21 |                               | **Phase 1**
   |                               | Discovery Cut-Off:   January 28, 2008
22 |                               | Pre-Trial Conference: May 5, 2008
   |                               | Trial Date:          May 27, 2008
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ...................................................................... 3

I.  MGA'S *EX PARTE* APPLICATION SHOULD BE DENIED
    BECAUSE IT VIOLATES THE COURT'S ORDER ....................... 7

II. THE DISCOVERY MASTER HAS RULED THAT BOUSQUETTE
    SHOULD NOT SIT FOR DEPOSITION UNTIL MGA'S
    DOCUMENT PRODUCTION IS SUBSTANTIALLY COMPLETE ........... 8

III. BOUSQUETTE AND PATEL ARE NOT PROPERLY PHASE 1
     WITNESSES ....................................................................... 9

    A.  Phase 1 Relates Solely to Ownership of Bratz ....................... 9

    B.  MGA Identified Bousquette and Patel as Exclusively Phase 2
        Witnesses Who Know Nothing of Bryant's Drawings, Bratz or
        Bryant's Employment With Mattel ........................................ 10

    C.  MGA's New Argument That Bousquette and Patel Are Proper
        Phase 1 Witnesses Fails ..................................................... 11

        1.  Matthew Bousquette .................................................. 11

        2.  Tina Patel ............................................................... 13

IV. MGA IS IMPROPERLY SEEKING TO INTERJECT ITS PHASE 2
    CLAIMS INTO PHASE 1 ...................................................... 13

CONCLUSION ................................................................................. 17

1

## **<u>TABLE OF AUTHORITIES</u>**

2                                                                                       **<u>Page</u>**

3

### **<u>Cases</u>**

4

<u>Parsons v. Jefferson-Pilot Corp.</u>,
   141 F.R.D. 408 (M.D.N.C. 1992)..........................................................................12

6

### **<u>Statutes</u>**

7

Rule 26(a)(1)...........................................................................................................10

Rule 30(b)(6) ..................................................................................................3, 4, 5, 7, 17

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### <u>Preliminary Statement</u>

On February 4, 2008, the Court ordered, in no uncertain terms, that "all discovery matters shall be presented in the first instance to the Discovery Master," including "motions to compel."  Flouting that order, MGA asks this Court, not the Discovery Master, to rule on a discovery issue:  whether depositions of third-parties Matthew Bousquette and Tina Patel are Phase 1 or Phase 2.  When Mattel asked the Court to address discovery-related issues, Mattel was sent to the Discovery Master. The standard should be no different for MGA.  Because its *ex parte* application violates the Court's order, it should be denied.

If the Court reaches the merits, and it should not, MGA's application should be denied.  MGA claims that Matt Bousquette and Tina Patel are Phase 1 witnesses.  MGA's supplemental initial disclosures from the fall of last year suggest that Mr. Bousquette and Ms. Patel are exclusively Phase 2 witnesses.   MGA represented that Matt Bousquette had information related to MGA's unfair competition claims against Mattel, including trade dress and interference claims and MGA's now withdrawn unclean hands defense.  Similarly, MGA disclosed that Tina Patel possesses information relating to "Mattel's unfair competition and unclean hands."  After MGA withdrew its unclean hands defense to any Phase 1 claim, MGA has made no suggestion that either Mr. Bousquette or Ms. Patel is a Phase 1 witness.  Having now successfully pleaded for and obtained a stay of Phase 2 discovery, MGA should not be permitted to conjure for the first time lawyer's arguments for why Bousquette and Patel—both of whom post-dated by years Bryant's work on Barbie for Mattel—could have information related to "to issues surrounding Carter Bryant's employment with Mattel, and to those issue impact the ownership of certain original Bratz drawings," as the Court has limited Phase 1.

Contrary to MGA's suggestion, Mattel's disclosures do not say anything different.  Both Mr. Bousquette and Ms. Patel have information related to the claims

and defenses to be tried in Phase 2.  Those facts include Mattel's business practices, and Mattel's intellectual property at issue in Phase 2.  Given that neither Mr. Bousquette nor Ms. Patel had anything to do with either Bryant or Mattel's girls products in 1999 or 2000 and that Bryant concealed from Mattel his work on Bratz, the suggestion that Bousqette's knowledge of "intellectual property" can hardly be a reference to Bratz. And MGA is unable to cite to any Mattel disclosure or discovery response that links Patel to any Phase 1 issues.

Independently, the Court cannot compel Bousquette to appear for deposition because he has not been the served with process.  He does not reside in the district.  Mattel does not control him.  He is a former employee.  He runs his own company and frequently travels out of the country.  He cannot appear on a moment's notice.  Although Quinn Emanuel expects to represent him at his deposition, he has his own counsel, Chris Caldwell from Caldwell Leslie.  His counsel did not permit Quinn Emanuel to accept service of a subpoena on Mr. Bousquette's behalf.[1]

The Court should recognize MGA's tactic.  Since day one MGA has pleaded for a stay of Phase 2 discovery.  Now, having prevented Mattel from taking discovery on MGA's thefts of Mattel trade secrets, *i.e.*, Phase 2, MGA tries to interject strictly Phase 2 issues into Phase 1.  In its recently submitted expert reports (and contrary to the Court's bifurcation order) MGA claims that the parties should litigate in Phase 1 not only who owns Bratz, but why Bratz was successful.  MGA claims that Bratz's success was due to MGA's people, advertising, marketing and innovation, not Bryant's drawings, and that Mattel's claimed damages should accordingly be reduced. Mattel's response to that argument, however, is that that the "advertising, marketing and innovation" that MGA found to valuable were stolen from Mattel.  These are Mattel's Phase 2 claims, as to which MGA admits discovery is not complete.  Those are issues

---

[1]   Concurrently filed Declaration of Timothy L. Alger, ¶ 2.

to be litigated in Phase 2, not Phase 1. On those grounds, also the application must be denied.

To the extent MGA is permitted to present evidence of its claim that the success of Bratz is due to MGA's advertising, marketing and innovation in Phase 1 and allows the depositions to proceed, the Court should lift the stay on Phase 2 discovery to afford Mattel the opportunity to take necessary discovery to defend against MGA's claim that Mattel's damages should be limited because of MGA's claimed "innovations."

The Court should deny Defendants' *ex parte* application.

## **Statement of Facts**

The Court's Decision to Stay Phase 2 Discovery.  On January 28, 2008, Mattel filed an *ex parte* application seeking to obtain the depositions of more than a dozen witnesses that either could not be deposed prior to January 28, 2008 or were the subject of motions to compel.[2]  One of the witnesses Mattel sought to depose in February was defendant Carlos Gustavo Machado Gomez ("Machado").  Machado is a party and key witness regarding Mattel's theft of trade secret claims.  Mattel has been seeking deposition dates from him since June 4, 2007.[3]  However, he has refused to sit for deposition.[4]  Machado agreed to deposition dates on two separate occasions only to unilaterally cancel both times.[5]  Mattel was informed on January 13, 2008, that Machado's deposition scheduled to take place two days later was canceled due to a scheduling conflict for MGA's counsel.  This deposition was

---

[2]   Mattel, Inc.'s *Ex Parte* Application: (1) to Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment, Inc. (Pursuant to Rule 30(b)(6), and MGAE de Mexico (Pursuant to Rule 30(b)(6)) and (2) for Leave to Take Depositions in February 2008, dated January 28, 2008 attached as Exhibit 5 to the concurrently filed Declaration of B. Dylan Proctor ("Proctor Dec.").

[3]   Id., at pp. 9-11.

[4]   Id.

[5]   Id.

1   unilaterally cancelled because of the claimed conflict, notwithstanding the Court's
2   January 7, 2008 Order stating that "all counsel are expected to coordinate their
3   schedules with those of the deponents such that the depositions are held prior to the
4   discovery cut off date of January 28, 2008."[6]

5              In their opposition to Mattel's *ex parte* application, the defendants
6   argued, among other things, that the depositions Mattel sought were related to Phase
7   2 and "should be deferred until after the Phase 1 trial."[7]  Defendants claimed that the
8   burden of completing Phase 2 discovery prior to the completion of the Phase 1 trial
9   would be so great that "MGA or Bryant will not be able to try the case in May."[8]

10             At the hearing, the Court agreed that depositions of witnesses related
11  primarily to Phase 2 should be stayed, identifying Machado as a specific example.[9]
12  The Court stated, however, that it "did not want to have discovery bogged down by
13  disputes over whether or not a particular witness's or deponent's testimony was
14  phase one discovery or phase two discovery."[10]

15             Consistent with the Court's ruling, Mattel, in good faith, identified
16  certain witnesses that it sought to depose that were primarily relevant to Phase 2.
17  Mattel also assured the Court that it would further endeavor to identify "without too
18  much disputation, depositions that are phase two."[11]  Counsel for MGA also noted
19  that the parties had made efforts to work out differences regarding depositions
20  where "it was appropriate and nobody was trying to shove phase two into phase
21  one."[12]  But in contrast with Mattel's good faith identification of witnesses that are

22
23    [6]  Id.; January 7, 2008 Order, Proctor Dec., Exh. 6.
      [7]  MGA's and Carter Bryant's Opposition to Mattel's *Ex Parte* Applications to
24  Compel Additional Depositions, dated January 30, 2008, at p. 4, Declaration of Jon
    D. Corey, dated February 22, 2008 ("Corey Dec."), Exh. 1.
25    [8]  Id., at p. 20.
      [9]  February 4, 2008 Hearing Transcript, at 20:23 - 21:2, Proctor Dec., Exh. 9.
26    [10]  Id., at 9:1 - 9:4.
27    [11]  Id., at 18:14 - 18:20.
      [12]  Id., at 34:25 - 35:7.
28

related to Phase 2, MGA has not identified a single witness that it seeks to depose that is subject to the Phase 2 stay.

On February 4, 2008, the Court ruled that "[a]ll discovery related to Phase 2, other than certain individual depositions that may be related to both Phase 1 and Phase 2, is STAYED until further order of the Court."[13]

<u>Despite the Court's Order, MGA Seeks to Depose Phase 2 Witnesses.</u> On February 11, 2008, Mattel wrote to MGA to confirm that, in light of the Court's order staying Phase 2 discovery, the depositions of Tina Patel, Matthew Bousquette and <u>Rule</u> 30(b)(6) designee Lily Martinez, would not go forward until after the Phase 1 trial because they are Phase 2 witnesses.[14]  MGA responded by claiming, for the first time, that third-parties Patel and Bousquette "are Phase 1 witnesses," but provided no explanation of what Phase 1 they have knowledge of.[15]  Mattel asked MGA to substantiate its conclusory assertion that Patel and Bousquette are Phase 1 witnesses.[16]

MGA claimed that it was entitled to their depositions without showing that are relevant to Phase 1.[17]  MGA then identified a number issues now the subject of its *ex parte* application that it claimed warranted the depositions of Patel and Bousquette in Phase 1.[18]  Mattel responded, advising MGA that the parties

---

[13]   February 4, 2008 Minute Order, at p. 3, Proctor Dec., Exh. 10.

[14]   Letter from Zeller to Page and Nolan, dated February 11, 2008, attached as Exhibit 27 to the Declaration of Robert Herrington in Support of MGA Defendants' *Ex Parte* Application to Compel the Depositions of Matthew Bousquette and Tina Patel ("Herrington Dec.").

[15]   Letter from Nolan to Zeller, dated February 11, 2008, Herrington Dec., Exh. 28.

[16]   Letter from Zeller to Page and Nolan, dated February 12, 2008, Herrington Dec., Exh. 29.

[17]   Letter from Nolan to Zeller, dated February 13, 2008, Herrington Dec., Exh. 1.

[18]   <u>Id.</u>

1   disagreed as to what was in Phase 1 and that Patel and Bousquette have no

2   knowledge of Phase 1 claims or defenses.[19]

3            <u>MGA Seeks to Interject Phase 2 Issues Into Phase 1.</u>  In addition to

4   seeking to depose Phase 2 witnesses despite the Court's Order staying Phase 2

5   depositions, MGA is also seeking to interject Phase 2 issues into Phase 1.  On

6   February 11, 2008, the parties exchanged Phase 1 expert reports.  MGA's reports

7   include many opinions putting at issue Phase 2 matters.  For example, the expert

8   report of Erich Joachimsthaler opines that the success of the BRATZ brand was a

9   result of MGA's "unique combination of people who with experience in the toy

10  industry as well the fashion doll business created the innovations necessary to build

11  and nurture the Bratz brand while also having the discipline of managing the brand

12  consistent with a unified vision of what the Bratz brand aspires to create and stands

13  for."[20]  This opinion puts Phase 2 matters directly at issue Phase 2.  MGA experts so

14  opined in an effort to show that MGA's market innovations, not Bryant's drawings

15  and dolls, led to the success of Bratz, and that Mattel's claimed damages should

16  accordingly be reduced.

17           But having obtained a stay of discovery, MGA now has precluded

18  Mattel from obtaining discovery to refute those claims.  Mattel's Phase 2 case is

19  based, in part, on MGA's theft of trade secrets from Mattel.  As Mattel has alleged in

20  its counterclaims, "MGA's rapid growth was not organic, but rather was based upon

21  its theft of Bratz.  As a result, MGA lacked an appropriate intellectual infrastructure

22  for a company of its size and it became increasingly difficult to manage.  *To deal*

23

24

25

---

26       [19]   Letter from Zeller to Page and Nolan, dated February 14, 2008, Herrington Dec., Exh. 30.

27       [20]   Expert Report of Dr. Erich Joachimsthaler, dated February 11, 2008, at ¶ 150,

28  Corey Dec., Exh. 2.

MATTEL'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO COMPEL DEPOSITIONS

*with these problems . . . time and time again MGA simply stole Mattel's proprietary business methods, practices and information.*"[21]

MGA Has Refused to Produce Discovery Related to Its Theft of Mattel's Trade Secrets.  While MGA seeks to interject Phase 2 issues into Phase 1 it has used the stay of Phase 2 discovery to preclude Mattel from obtaining evidence necessary to refute MGA's claims.  For example, Machado and a number of other witnesses regarding Mattel's trade secret theft claims have refused to appear for deposition.[22]  MGAE de Mexico has also failed to produce a single document in response to Mattel's document requests.[23]  In addition, MGA recently withdrew its unclean hands defense with respect to Phase 1, acknowledging that if it were to go forward with the defense it would owe Mattel "a bunch of discovery" on it.[24]

**Argument**

I.     **MGA'S *EX PARTE* APPLICATION SHOULD BE DENIED BECAUSE IT VIOLATES THE COURT'S ORDER**

On February 4, 2008, the Court instructed that all discovery matters shall be presented to the Discovery Master:

> As previously ordered and reaffirmed by this Court, all discovery
> matters shall be presented in the first instance to the Discovery
> Master.  The fact that the Discovery Master's ruling might impact
> upon the Court's scheduling order does not relieve the parties of

---

[21]   Mattel's Counterclaims, ¶ 20 (emphasis added), Proctor Dec., Exh. 11.

[22]   See Mattel, Inc.'s *Ex Parte* Application: (1) to Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment, Inc. (Pursuant to Rule 30(b)(6), and MGAE de Mexico (Pursuant to Rule 30(b)(6)) and (2) for Leave to Take Depositions in February 2008, dated January 28, 2008, Proctor Dec., Exh. 5.

[23]   Corey Dec., ¶ 6.

[24]   MGA's Notice of Withdrawal of Unclean Hands Affirmative Defense as it Pertains to Phase 1, dated February 15, 2008, Proctor Dec., Exh. 3; Proctor Dec., ¶ 3.

following this procedure.  For instance, motions to compel . . . shall be brought before the Discovery Master.[25]

Despite the Court's direction, MGA has bypassed the Discovery Master and filed this *ex parte* application to compel deposition testimony directly with this Court.  MGA makes no effort to justify its disregard of the Court's requirement that discovery matters first be heard by the Discovery Master.  MGA's application should be denied for this reason alone.

## II.   THE DISCOVERY MASTER HAS RULED THAT BOUSQUETTE SHOULD NOT SIT FOR DEPOSITION UNTIL MGA'S DOCUMENT PRODUCTION IS SUBSTANTIALLY COMPLETE

The Discovery Master has held that Bousquette's deposition "should not take place until [MGA's] document discovery is substantially completed."[26]  On December 10, 2008, MGA's counsel claimed that its production was substantially complete.[27]  However, since then MGA has produced more than 400,000 pages of documents.[28]  And MGA's document production is still not substantially complete.  Mattel has pending numerous motions to compel the production of documents and to enforce the Discovery Master's Orders compelling the production of documents.[29]  Moreover, MGAE de Mexico has yet to produce a single page in response to Mattel's requests.[30]  More significantly, MGA's counsel admitted last week that its production was not complete.  On February 15, 2008, during a meeting of counsel, counsel for MGA conceded that if MGA were to proceed with its unclean hands defense in Phase 1 (which overlaps significantly with MGA's unfair competition

---

[25]   February 4, 2008 Minute Order, at p. 3, Proctor Dec., Exh. 10.
[26]   February 13, 2007 Hearing Transcript, at 34:15 - 34:18, Proctor Dec., Exh. 14.
[27]   Letter from Corey to Mumford, dated December 11, 2007, at p. 2, Proctor Dec., Exh. 4.
[28]   Proctor Dec., ¶ 4.
[29]   Id.

1   claims), then MGA owed Mattel "a bunch of discovery."[31]   MGA's efforts to depose

2   Mr. Bousquette prior to the substantial completion of its document production

3   contravenes the Discovery Master's direction and should be rejected.

4   **III.   BOUSQUETTE AND PATEL ARE NOT PROPERLY PHASE 1**

5   **WITNESSES**

6       **A.   Phase 1 Relates Solely to Ownership of Bratz**

7          The Court clarified what was in Phase 1 and Phase 2 in its July 2, 2007

8   Minute Order.

9          Phase 1(a) should be limited to issues surrounding Carter

10          Bryant's employment with Mattel, and how those issues

11          would impact the ownership of certain original Bratz

12          drawings, while Phase 1(b) would address approximately

13          two-hundred Bratz products that are potentially derivative

14          of the drawings.  This approach has the appeal of limiting

15          Phase 1(a) to discrete issue of the ownership to the

16          original Bratz drawings.  A finding that Bryant owns these

17          drawings in Phase 1(a) has the potential to eliminate the

18          need for Phase 1(b).[32]

19          MGA has made no suggestion that either Bousquette or Patel have

20   knowledge that fall within the scope of the claims to be tried in Phase 1 as the Court

21   has defined them.

22

23

24

25

26

27   [30]   Corey Dec., ¶ 6.

    [31]   Proctor Dec., ¶ 3.

28   [32]   July 2, 2007 Minute Order at p. 2, Proctor Dec., Exh. 7.

**B.**   **MGA Identified Bousquette and Patel as Exclusively Phase 2 Witnesses Who Know Nothing of Bryant's Drawings, Bratz or Bryant's Employment With Mattel**

In its recent supplemental disclosures, MGA identified Bousquette and Patel as witnesses on solely Phase 2 issues in its initial disclosures.  Bousquette was identified by MGA as possessing knowledge regarding:

> Mattel's serial copying of MGA's distinctive trade dress, trademarks, product packaging, themes, ideas, and advertising; Mattel's dilution of MGA's famous marks; Mattel's interference with MGA's advertising efforts; Mattel's threats to and intimidation of retailers, suppliers, licensees, distributors, manufacturers, and former employees and freelancers; Mattel's improper influence of standard-setting and industry organization; Mattel's manipulation of MGA's retail displays and other aspects of Mattel's unclean hands.[33]

MGA identified Ms. Patel as possessing knowledge regarding "Mattel's investigation of MGA and its executives, employees and freelancers, and other aspects of Mattel's unfair competition and unclean hands."[34]  MGA's claim now that Bousquette and Patel are Phase 1 witnesses is particularly disingenuous given MGA's recent supplemental disclosures.

---

[33]   MGA Entertainment, Inc.'s Supplemental Disclosures and MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V., and Larian's Initial Disclosures under Rule 26(a)(1), at p. 2, dated December 21, 2007, Proctor Dec., Exh. 12.

[34]   Id., at p. 13.

C.   **MGA's New Argument That Bousquette and Patel Are Proper Phase 1 Witnesses Fails**

Ignoring the fact that it identified Bousquette and Patel as exclusively Phase 2 witnesses, MGA now argues that they are relevant to Phase 1 as well. MGA's claim fails.

1.   **Matthew Bousquette**

MGA avers that Mattel identified Bousquette in both its initial disclosures and interrogatory responses as having knowledge regarding "Mattel's business operations and the development and ownership of intellectual property at issue."[35] MGA fails to note that Mattel's identification of Bousquette was with respect to Mattel's Phase 2 claims and the intellectual property at issue in Phase 2.  It is true that Mr. Bousquette was the former head of the Barbie Girls Division.  But, he had nothing to do with Mattel's Girls Division while Carter Bryant worked at Mattel.  He became responsible for Barbie brands years after Bryant left Mattel.[36]  While Bryant was a Mattel employee, Bousquette worked exclusively on *Boys* brands (e.g., Hot Wheels), a different division.[37]

MGA also avers that Bousquette has knowledge regarding "the meaning and scope of Mattel's Employee Inventions Agreement -- the core document at issue in this case."[38]  However, MGA acknowledges that Bousquette's only involvement with the Employee Inventions Agreement was presiding over a meeting in March 2004 (five years after Carter Bryant had left Mattel) in which the agreement was revised.[39] Bousquette had no involvement in the Employee Inventions Agreement that was in effect when Bryant signed it, five years earlier.  And, the construction of the only

---

[35]   MGA's Application, at p. 3.
[36]   Eckert Depo. Tr. at 15:8-15, 23:2-24:2, Corey Dec., Exh. 4.
[37]   Id.
[38]   MGA's Application, at p. 1.
[39]   MGA's Application, at p. 3.

MATTEL'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO COMPEL DEPOSITIONS

1  agreements at issue in Phase 1 (the ones Bryant signed) is for the Court, not a witness

2  who may have seen another agreement five years later.

3          MGA also claims that Bousquette has knowledge regarding "the strategic

4  reasons Mattel filed this lawsuit -- namely because Mattel was unable to compete with

5  Bratz in the marketplace."[40]  MGA's allegation in support of its unclean hands defense

6  that Mattel's motive in bringing suit -- i.e., that Mattel is seeking to "undermine MGA's

7  business and to 'kill' Bratz at any cost -- was purportedly improper is irrelevant.[41]  That

8  is the only basis that MGA has ever articulated for why it is relevant, but MGA has

9  now withdrawn that defense to all of Mattel's Phase 1 claims.[42]  As a result, Mattel's

10 alleged motivation is only relevant -- if at all -- to Phase 2.  "It is well established that

11 in ordinary litigation, not involving the clean hands defense, the plaintiff's motive in

12 bringing suit is not relevant to the subject matter of the litigation and is not a matter for

13 discovery."  <u>Parsons v. Jefferson-Pilot Corp.</u>, 141 F.R.D. 408, 414-15 (M.D.N.C. 1992)

14 (discussing at length standard rule that absent unclean hands defense motive in bringing

15 suit is not discoverable and citing several cases in support).

16         MGA also points to statements Bousquette allegedly made to a <u>Wall Street

17 Journal</u> reporter that Mattel brought its Flavas product from design to production in

18 three months.  MGA argues that the statements "directly contradict Mattel's theory of

19 the case," because, it asserts, Mattel claims that it is impossible to bring a doll from

20 design to production in that time.[43]  Not so.  Mattel has never claimed that it would be

21 impossible for any company to bring a product from design to production in three

22 months.  Mattel contends that the claim that *MGA* -- a company that had never done a

---

[40]   MGA's Application, at p. 1.

[41]   Amended Answer and Affirmative Defenses of MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. to Mattel, Inc.'s Second Amended Answer and Counterclaims, at p. 20-21, Proctor Dec., Exh. 13.

[42]   MGA's Notice of Withdrawal of Unclean Hands Affirmative Defense as it Pertains to Phase 1, dated February 15, 2008, Proctor Dec., Exh. 3.

23

24

25

26

27

28

fashion doll before -- could bring Bratz to market in three months is false and not supported by the evidence.  That Mattel -- a company with far greater resources, decades of experience and expertise in the doll industry -- could with extraordinary effort take Flavas from design to production in three months is not relevant to that contention.  Mattel's business practices are not on trial in Phase 1.  In any event, Bousquette's statement does not justify a deposition at this stage.

### 2. Tina Patel

MGA's arguments that Patel has knowledge regarding Phase 1 issues are similarly baseless.  MGA claims that Patel did not even begin work for Mattel until 2003 – years after Bryant had left the company.  MGA's claim that she is somehow an important Phase 1 witness is based entirely on Patel's involvement in a study done in 2003 for Mattel's competitive MY SCENE product.[44]  Mattel's response to Bratz is not at issue in Phase 1.  It is the basis for many of MGA's unfair competition claims that are to be tried in Phase 2.  It is also the basis for MGA's unclean hands defense, which it has withdrawn as to Phase 1.  There is simply no basis for MGA to depose Patel with Phase 2 discovery stayed.

## IV.  MGA IS IMPROPERLY SEEKING TO INTERJECT ITS PHASE 2 CLAIMS INTO PHASE 1

MGA's efforts to depose Bousquette and Patel in Phase 1 are part of its broader effort to interject Phase 2 issues into Phase 1 while simultaneously precluding Mattel from obtaining discovery into those issues.  MGA claims that Mattel's claimed damages should be reduced because the reasons for Bratz's success are not Bryant's drawings, but MGA' superior business practices.  Mattel's response: MGA stole them from Mattel.  These are Phase 2 issues.  Mattel will not have

[43]   MGA's Application, at p. 4.
[44]   Notably, MGA does not seek the deposition of Lily Martinez, who was designated to discuss MY SCENE, thus implicitly conceding that MY SCENE is a Phase 2 issue.

1  discovery because Phase 2 discovery is stayed.  MGA's efforts to "shove phase two

2  into phase one" should be denied.

3  　　　　　MGA is using Phase 1 expert reports to interject Phase 2 issues.  Under

4  the rubric of explaining "why Bratz was successful," MGA's experts seek to put at

5  issue in Phase 1 details regarding Mattel's competitive business practices and

6  MGA's purported unique marketing, advertising and innovation.  The expert report

7  of Dr. Erich Joachimsthaler is illustrative.  Joachimsthaler's report sets forth in detail

8  MGA's claims regarding Mattel's competitive business practices.  Much of

9  Joachimsthaler's report appears to be lifted from MGA's complaint against Mattel.[45]

10  　　　　　MGA's expert reports also seek to put at issue Mattel's MY SCENE

11  product, which forms the basis for much of MGA's Phase 2 claims.  For example,

12  Robert Tonner's expert report devotes a full page to the claim that Mattel's MY

13  SCENE product is a "knock-off" of Bratz.[46]  Tonner claims that Mattel "countered

14  Bratz doing something that competing companies had always done to them; they

15  came out with something very similar to Bratz -- the MY SCENE dolls."[47]  Tonner

16  argues that MY SCENE relied "heavily on the Bratz look."[48]  MY SCENE has no

17  relevance to Phase 1.  It is relevant to MGA's Phase 2 claims that Mattel is liable

18  for, among other things, false designation of origin and dilution, because Mattel has

19  supposedly "produc[ed], [sold] and market[ed] 'My Scene' dolls, including styling

20  heads and doll heads, and 'My Scene' pets that are confusingly similar to MGA's

21  'BRATZ' line."[49]  MGA's efforts to interject the alleged similarity of MY SCENE

22

23  　[45]　Compare Expert Report of Dr. Erich Joachimsthaler, dated February 11,
2008, at ¶¶ 138-142 (discussing Mattel's competitive approach to doll industry in

24  late 1990s and early 2000s), Corey Dec., Exh. 2, with MGA's Complaint in Case
No. 05-02727, dated April 13, 2005, ¶¶ 13-20 (same), Proctor Dec., Exh. 15.

25  　[46]　Expert Report of Robert Tonner, at p. 17, Corey Dec., Exh. 3.

26  　[47]　Id.

27  　[48]　Id.

28  　[49]　MGA's Complaint in Case No. 05-02727, dated April 13, 2005, ¶ 104,
Proctor Dec., Exh. 15.

1   products to Bratz is a transparent effort to put Phase 2 issues before the jury in Phase

2   1.  It should be rejected.

3   **V.      IF MGA IS PERMITTED TO DEPOSE BOUSQUETTE AND PATEL,**

4   **THE COURT SHOULD GRANT MATTEL LEAVE TO**

5   **IMMEDIATELY PROCEED WITH PHASE 2 DISCOVERY**

6           In the event the Court finds that MGA should be able to take the

7   depositions of Patel and Bousquette in Phase 1, Mattel should be granted leave to

8   immediately obtain discovery that MGA is withholding on related issues that MGA

9   claims is Phase 2 discovery.  That discovery is critical for Mattel to respond to

10  MGA's claims that the success of Bratz is due to MGA's efforts apart from the doll

11  itself.

12          Mattel's Phase 2 claims are directly relevant to rebutting MGA's

13  assertion that Phase 1 damages should be reduced because the success of Bratz is a

14  result of MGA's advertising, marketing and innovation strategies.  Mattel has

15  alleged that MGA's "advertising, marketing and innovation strategies" were stolen

16  from Mattel:

17          Critical to Mattel's success is its ability to design and develop

18          new products.  Mattel invests millions of dollars in product

19          design and development and introduces hundreds of new

20          products each year.  Mattel maintains a 180,000 square-foot

21          design center in El Segundo, California, that houses hundreds

22          of designers, sculptors, painters and other artists, who work

23          exclusively to create the products on which Mattel's business

24          depends.

25          Mattel has also invested substantial amounts over many years to

26          develop its business methods and practices, including, without

27          limitation, its marketing and advertising research, plans,

28          methods and processes; its business research and forecasts; its

-15-

1   manufacturing, distribution, and sales methods and processes;

2   and its inventory methods and processes.  These represent a

3   material part of the intellectual infrastructure of Mattel and are

4   highly valuable.[50]

5   MGA intentionally stole "a vast array of trade secrets and other

6   confidential information that comprise Mattel's intellectual infrastructure."[51]  Mattel

7   has further alleged that "MGA's rapid growth was not organic, but rather was based

8   upon its theft of Bratz.  As a result, MGA lacked an appropriate intellectual

9   infrastructure for a company of its size and it became increasingly difficult to

10   manage.  To deal with these problems . . . time and time again MGA simply stole

11   Mattel's proprietary business methods, practices and information."[52]

12   Mattel would be substantially prejudiced if it cannot obtain discovery and

13   present evidence regarding these claims while MGA is permitted to present evidence in

14   Phase 1 that damages should be reduced because the success of Bratz was due to

15   MGA's efforts.  In truth, MGA's "efforts" were mainly fueled by MGA's repeated theft

16   of Mattel's trade secrets.

17   As one example, MGA stole "highly confidential and sensitive marketing

18   and product development information" from Mattel's Mexico subsidiary.[53]  That theft

19   was carried out by three former Mattel employees -- Carlos Gustavo Machado Gomez,

20   Mariana Trueba Almada and Pablo Vargas San Jose -- who MGA then hired to

21   establish and run a Mexican subsidiary for MGA.[54]  MGA has refused to provide

22   discovery regarding information that goes directly to this theft of Mattel trade secrets --

23   the very trade secrets form the basis of much of MGA's strategies regarding advertising,

24   marketing and innovation with respect to Bratz.  For example, despite numerous

25

---

26   [50]  Mattel's Counterclaims, ¶¶ 17-18, Proctor Dec., Exh. 11.

   [51]  Id., ¶ 20.

27   [52]  Id.

   [53]  Id., ¶¶ 37-54.

28

1  promises to   produce Carlos Gustavo Machado Gomez for deposition, MGA has

2  repeatedly unilaterally canceled his deposition and refused to produce him.[55]  Machado

3  is a key witness regarding MGA's theft of Mattel's trade secrets.  Moreover, MGAE de

4  Mexico has refused to produce a single document in response to Mattel's requests,

5  including documents it is relying on for its defenses.[56]   Again, this information is

6  critical for Mattel to defend against MGA's assertion that it was MGA's strategies for

7  advertising, marketing and innovation that was primarily responsible for the success of

8  Bratz.  The evidence will show that MGA's strategies were based on highly confidential

9  trade secrets stolen from Mattel.  Mattel is entitled to discovery on those issues so that

10 it can present evidence in Phase 1 in response to MGA's claims.

## Conclusion

12      For the foregoing reasons, Mattel respectfully requests that the Court

13 deny Defendants' application for *ex parte* relief.

14 DATED: February 22, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

16                                   By   /s/
17                                      Jon D. Corey
                                        Attorneys for Mattel, Inc.

---

[54]  Id.

[55]  Mattel, Inc.'s *Ex Parte* Application: (1) to Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment, Inc. (Pursuant to Rule 30(b)(6), and MGAE de Mexico (Pursuant to Rule 30(b)(6)) and (2) for Leave to Take Depositions in February 2008, dated January 28, 2008, at pp. 9-11, Proctor Dec., Exh. 5.

[56]  Corey Dec., ¶ 6.

-17-

MATTEL'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO COMPEL DEPOSITIONS