1  strategic partnership with a key Mattel retailer, covering all aspects of the business,
2  including both traditional toy sales and retail development of licensed products.

3        61.  In or about late May 2004, Brawer began performing General
4  Manager duties, working with one of Mattel's major retail customer accounts.
5  Thereafter, Brawer began receiving information related not only to the Senior Vice
6  President, Customer Marketing position that he still formally held, but also began
7  receiving detailed information related to his role as General Manager.  Brawer
8  began requesting and analyzing detailed information related to Mattel and its four
9  key retail accounts.

10        62.  On September 15, 2004, Brawer left work at noon for observance
11  of Rosh Hashanah.  As Brawer left, he carried a large cardboard box with binders
12  and other materials.  Several hours after his departure, Brawer instructed his
13  assistant to print Mattel's 2004 Sales Plan for one of Mattel's significant customers
14  and to provide it to him, falsely claiming he needed it for a meeting

15        63.  On September 17, 2004, Brawer returned to Mattel and
16  immediately informed his supervisor that he was leaving Mattel, effective October
17  1, 2004, to work for competitor MGA.

18        64.  On September 20, 2004, Mattel hand-delivered a letter to Brawer
19  reminding him of his continuing obligation to preserve the confidentiality of
20  Mattel's proprietary information and trade secrets not only through October 1,
21  2004, but continuing beyond the termination of his employment.

22        65.  At his exit interview on September 29, 2004, Mattel reminded
23  Brawer that he had ongoing duties of confidentiality to Mattel, even after the
24  termination of his employment.  Brawer was given a copy of his Original
25  Confidentiality Agreement, which he had signed on April 22, 1996, and another
26  copy of the Code of Conduct.  During the exit interview, however, Brawer noted
27  that he had not signed the Code of Conduct, which he intended and Mattel
28  understood to mean that Brawer believed he was not bound by Mattel's policy

-47-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  because he had not signed it.  Brawer was unwilling to complete or sign the form

2  that sought to confirm that Brawer understood his ongoing obligations under the

3  Code of Conduct, which included the obligation to preserve the confidentiality of

4  Mattel's proprietary and trade secret information.

5          66.   On October 1, 2004, Brawer's final day of employment with

6  Mattel, Mattel hand-delivered to Brawer a letter that, among other things, reminded

7  Brawer of his confidentiality obligations to Mattel under the Code of Conduct.

8          67.   Upon joining MGA, Brawer became its Executive Vice-

9  President of Sales and Marketing.  In that role he was responsible for MGA's sales

10  worldwide.  As part of those responsibilities, Brawer had and continues to have

11  responsibility for MGA's accounts with the same retailers that he worked with

12  while at Mattel.

13          68.   Brawer represented during his Mattel exit interview that he had

14  returned all proprietary information to Mattel.  That representation was false.   On

15  information and belief, Brawer removed proprietary and trade secret information

16  from Mattel that he did not return.  Mattel is informed and believes that Brawer did

17  not return to Mattel, for example, the information contained in his contacts file.

18  The contacts file included contact information for Mattel customers, most notably

19  TRU, and extensive contact information for Mattel employees, including titles, e-

20  mail addresses and telephone numbers.

21          69.   Mattel has recently learned that Brawer has been using that

22  contact information on a regular basis, including within recent months.  Since

23  leaving Mattel, Brawer has had contacts with Mattel employees, both by telephone

24  and by electronic mail.  Based on his knowledge of Mattel's operations and the

25  roles of certain Mattel employees, he has targeted certain Mattel employees who

26  have broad access to Mattel proprietary information in an effort to induce and

27  encourage them to join MGA and to steal or otherwise wrongfully misappropriate

28  Mattel confidential information and trade secrets.  Brawer has done so by

2154363.2

1  promising these Mattel employees salaries 25 percent or more higher than they earn

2  at Mattel and stating to them that they should not be concerned by legal action

3  taken by Mattel to protect its trade secrets and its rights because such claims are

4  hard to prove and easy to defeat.

5  **VI.  MGA STEALS MATTEL TRADE SECRETS IN CANADA**

6        70.   In an effort to increase its market share and sales in Canada and

7  elsewhere, MGA stole Mattel trade secrets regarding Mattel's customers, sales,

8  projects, advertising and strategy, not only for Canada, but the United States and

9  the rest of the world.

10        71.   Janine Brisbois was a Director of Sales for the Girls Division in

11  Canada.  Mattel hired her as a National Account Manager in August 1999.  When

12  she was hired as a Mattel employee, Brisbois agreed that she would preserve and

13  would not disclose Mattel's proprietary or confidential information.  For example,

14  Brisbois agreed:

15          You must keep Mattel's Proprietary Information confidential,

16          and you may only use or disclose such information as necessary

17          to perform your job responsibilities in accordance with Mattel

18          policies.  Your obligation to keep Mattel's Proprietary

19          Information confidential will continue even after any termination

20          of your employment with your employer.

21          . . .

22          Mattel takes steps to maintain the secrecy and confidential nature

23          of Mattel's Proprietary Information and, if a competitor

24          discovered Mattel's Proprietary Information, it could

25          significantly damage Mattel and your Employer.

26        72.   While with Mattel, Brisbois had responsibility for Mattel's

27  account with TRU and later had responsibility for Mattel's Wal-Mart account.  In

28  her capacity as Sales Director-Wal-Mart/CTC/Girls Team, Brisbois had access to

1 Mattel confidential and proprietary information regarding Mattel's future product
2 lines, advertising and promotional campaigns and product profitability.

3       73.   On September 26, 2005, Brisbois resigned from Mattel to take a
4 position as Vice President of Sales at MGA.  Mattel is informed and believes that
5 in that position Brisbois has responsibility for MGA's accounts with both TRU and
6 Wal-Mart.  During Brisbois' exit interview she was specifically asked whether she
7 was "taking anything."  Brisbois responded, "No."  Both during and after her exit
8 interview, Brisbois was advised by Mattel of her obligations to preserve Mattel's
9 confidential and proprietary information.

10       74.   Mattel is informed and believes that Brisbois spoke with Isaac
11 Larian, MGA's CEO, on September 22, 2005 at approximately 8:30 p.m., when he
12 called Ms. Brisbois at her home.  Mattel subsequently learned that on the same day
13 that she spoke with Mr. Larian and four days before she resigned, Brisbois copied
14 approximately 45 Mattel documents on to a USB or "thumb" drive with the volume
15 label "BACKPACK."  On information and belief, Brisbois removed the thumb
16 drive from Mattel Canada's office by concealing it in her backpack or gym bag the
17 last time that she left that office.  These documents contained Mattel trade secret
18 and proprietary information, and included:

19     &bull;  a document containing the price, cost, sales plan and quantity of every
20         Mattel product ordered by every Mattel customer in 2005 and 2006;
21     &bull;  the BARBIE television advertising strategy and information concerning
22         sales increases generated by television advertisements;
23     &bull;  competitive analysis of Mattel vis-à-vis its competitors in Canada;
24     &bull;  an analysis of Mattel's girls business sales beginning in 2003 and
25         forecasts through 2006;
26     &bull;  profit and loss reviews for Mattel's products being sold in Wal-Mart,
27         including margins and profit in not only Canada, but in the United
28         States and Mexico; and

2154363.2

-50-

1        • a document containing the product launch dates and related advertising
2          for all Mattel new products between Fall 2005 and Spring 2006.

3        75.   After Mattel discovered that Brisbois had copied these sensitive
4    documents to a thumb drive, Mattel notified Canadian law enforcement authorities.
5    Canadian law enforcement authorities recovered from Brisbois a thumb drive with
6    the volume label "BACKPACK" containing the documents that Brisbois had
7    copied from Mattel's computer system.  Mattel later learned that while she was
8    working as a Vice President of Sales at MGA, Brisbois accessed and modified
9    documents on that thumb drive.

10       76.   After joining MGA, Brisbois repeatedly traveled to MGA's
11   offices in Van Nuys, California and met with Larian and Brawer.  In February,
12   2006, knowing that Mattel trade secrets had been seized from MGA's Mexico City
13   offices and that at least three MGA employees were under criminal investigation,
14   MGA nonetheless issued a press release trumpeting its 2005 performance, with
15   Larian himself concluding, "Our international teams in Mexico and Canada have
16   done a fantastic job."

17   **VII. MGA PERSUADES OTHER EMPLOYEES LEAVING MATTEL TO**
18   **JOIN MGA TO MISAPPROPRIATE MATTEL TRADE SECRETS**
19   **FOR THE BENEFIT OF MGA**

20       77.   In the past few years, MGA has hired directly from Mattel's
21   United States operations at least 25 employees, from Senior Vice-President level to
22   lower level employees.  On information and belief, many of these employees were
23   specifically targeted and recruited by MGA, including by Larian and Brawer, based
24   on the Mattel confidential and proprietary information they could access.  Many of
25   these employees had access to information that Mattel considers to be highly
26   proprietary and confidential.  Mattel believes that some of those former Mattel
27   employees may be observing their obligations not to misappropriate, disclose or
28   use Mattel's confidential and proprietary information.  Mattel is informed and

1    believes, however, that certain additional employees accessed, copied and took

2    from Mattel confidential and proprietary information, including Mattel's strategic

3    plans; business operations, methods and systems; marketing and advertising

4    strategies and plans; future product lines; product profit margins; and customer

5    requirements.  The misappropriated confidential and proprietary information

6    included information that these Mattel employees were not authorized to access.

7    On information and belief, the misappropriated confidential and proprietary

8    information taken from Mattel is being disclosed to and used by MGA for the

9    benefit of MGA and to the detriment of Mattel.

10   **VIII.  LARIAN MAKES MISREPRESENTATIONS TO RETAILERS**

11   **ABOUT MATTEL'S PRODUCTS**

12          78.    Counter-defendants have engaged in other illegal practices in

13   their efforts to compete unfairly with Mattel.  Larian has a practice of sending e-

14   mail messages to a "Bratz News" distribution list that Larian created or that was

15   created for him.  Mattel is informed and believes that the recipients of e-mail

16   messages sent to the "Bratz News" distribution list include members of the media

17   as well as representatives of many of Mattel's most significant customers.

18          79.    On May 12, 2006, Larian sent an e-mail message to the "Bratz

19   News" distribution list that included a reference to Mattel's updated MY SCENE

20   MY BLING BLING product with real gems.  Mattel had not publicly announced

21   this product at the time that Larian sent his May 12, 2006 e-mail.  In fact, Mattel

22   had guarded the identification of this particular product.

23          80.    Shortly thereafter, Larian engaged in a campaign of calling

24   Mattel's most significant customers, including but not limited to Target and TRU,

25   regarding the MY SCENE MY BLING BLING product with real gems.  In an

26   effort to dissuade these retailers from purchasing Mattel's MY SCENE MY BLING

27   BLING product with real gems, Larian knowingly made false factual statements

28   about that product to each retailer.  As of the writing of this Second Amended

2154363.2

-52-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  Answer and Counterclaims, Mattel is aware that Larian represented to each retailer
2  that each was the only retailer to purchase the product and that Mattel would not be
3  supporting the product with television advertising.  At the time that Larian made
4  these statements, he knew them to be false.  As a result of Larian's
5  misrepresentations, at least one retailer cancelled its order for 75,000 units of the
6  MY SCENE MY BLING BLING product with real gems.  Only after Mattel
7  learned of Larian's misrepresentations and was able to correct them was Mattel able
8  to assure the retailer that Larian's representations were false and to persuade the
9  retailer to reinstate the order.

10         81.   Such conduct is not an isolated incident.  MGA and Larian, in an
11  effort to gain an unfair competitive advantage, repeatedly issued false and
12  misleading press releases.  In these press releases, MGA and Larian have
13  misrepresented Bratz's sales, Bratz's market share, Bratz's position vis-à-vis
14  Mattel's BARBIE products, sales of Mattel's BARBIE products, and the market
15  share of Mattel's BARBIE products.

16                          **CLAIMS FOR RELIEF**
17                          **First Counterclaim**
18                          **Copyright Infringement**
19         **(Against MGA, MGA Entertainment (HK) Limited,**
20                 **Larian, Bryant and Does 4 through 10)**
21         82.   Mattel repeats and realleges each and every allegation set forth in
22  paragraphs 1 through 81, above, as though fully set forth at length.
23         83.   Mattel is the owner of copyrights in works that are fixed in
24  tangible media of expression and that are the subject of valid, and subsisting,
25  copyright registrations owned by Mattel.  These include, without limitation, the
26  works that are the subject of Registrations VA 1-378-648, VA 1-378-649, VA 1-
27  378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-
28

2154363.2

1  378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-
2  378-660, VAu 715-270, VAu 715-271 and VAu 715-273.

3       84.    Counter-defendants have reproduced, created derivative works
4  from and otherwise infringed upon the exclusive rights of Mattel in its protected
5  works without Mattel's authorization.  Counter-defendants' acts violate Mattel's
6  exclusive rights under the Copyright Act, including without limitation Mattel's
7  exclusive rights to reproduce its copyrighted works and to create derivative works
8  from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and 501.

9       85.    Counter-defendants' infringement (and substantial contributions
10 to the infringement) of Mattel's copyrighted works is and has been knowingly made
11 without Mattel's consent and for commercial purposes and the direct financial
12 benefit of Counter-defendants.  Counter-defendants, moreover, have deliberately
13 failed to exercise their right and ability to supervise the infringing activities of
14 others within their control to refrain from infringing Mattel's copyrighted works
15 and have failed to do so in order to deliberately further their significant financial
16 interest in the infringement of Mattel's copyrighted works.  Accordingly, Counter-
17 defendants have engaged in direct, contributory and vicarious infringement of
18 Mattel's copyrighted works.

19      86.    By virtue of defendants' infringing acts, Mattel is entitled to
20 recover Mattel's actual damages plus Counter-defendants' profits, Mattel's costs of
21 suit and attorneys' fees, and all other relief permitted under the Copyright Act.

22      87.    Counter-defendants' actions described above have caused and
23 will continue to cause irreparable damage to Mattel, for which Mattel has no
24 remedy at law.  Unless Counter-defendants are restrained by this Court from
25 continuing their infringement of Mattel's copyrights, these injuries will continue to
26 occur in the future.  Mattel is accordingly entitled to injunctive relief restraining
27 Counter-defendants from further infringement.
28

## Second Counterclaim

### Violation of the Racketeer Influenced and Corrupt Organizations Act

### 18 U.S.C. §§ 1962(c) and 1964(c)

### (Against All Counter-defendants)

88.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 87, above, as though fully set forth at length.

89.   Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas and Brisbois were employed by and associated-in-fact with an enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "MGA Criminal Enterprise"). The MGA Criminal Enterprise is made up of the MGA Group (MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, certain of the Doe Counter-defendants and Brawer), the Bryant Group (Bryant and certain of the Doe Counter-defendants), the Mexican Group (Machado, Trueba and Vargas) and the Canadian Group (Brisbois). In addition, beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, were employed by and associated-in-fact with a second enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "Bratz Criminal Enterprise").

90.   MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois, and the Other Former Employees, and each of them, for the purpose of executing and attempting to execute the scheme to improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information, by

means of tortious, fraudulent and criminal conduct, did and do unlawfully, willfully and knowingly conduct and participate, directly and indirectly, in the conduct of the MGA Criminal Enterprise's affairs and, in the case of MGA, MGA Entertainment (HK) Limited, Larian, Bryant, and certain of the Doe Counter-defendants, the Bratz Criminal Enterprise's affairs, through a pattern of racketeering activity.  Their actions include multiple, related acts in violation of: 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1512 (tampering with a witness victim, or informant), 18 U.S.C. § 1952 (interstate and foreign travel to aid racketeering), and 18 U.S.C. § 2319(a) and 17 U.S.C. § 506(a)(1)(A) (criminal copyright infringement).

91.    MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois, and the Other Former Employees, and each of them, shared the common purpose of enabling MGA to obtain confidential, proprietary and otherwise valuable Mattel property through improper means in order to assist MGA in illegally competing with Mattel domestically and throughout the world.

92.    The MGA Criminal Enterprise and Bratz Criminal Enterprise as described herein are and have been at all relevant times continuing enterprises because, among other reasons, each is designed to and did unlawfully acquire the confidential business information and property of Mattel and incorporated this information and property into MGA's ongoing business, marketing strategies and business methods, practices and processes.  The conduct of each enterprise continues through the date of this Second Amended Answer and Counterclaims and is ongoing by virtue of MGA's continuing use of Mattel's information and property, all to the detriment of Mattel.

93.    The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), presents both a history of criminal conduct and a distinct threat of continuing criminal activity.  This activity consists of multiple acts of

2154363.2

1  racketeering by each member of the MGA Criminal Enterprise and Bratz Criminal

2  Enterprise, is interrelated, not isolated and is perpetrated for the same or similar

3  purposes by the same persons.  This activity extends over a substantial period of

4  time, up to and beyond the date of this Second Amended Answer and

5  Counterclaims.  These activities occurred after the effective date of 18 U.S.C.

6  §§ 1961 *et seq.,* and the last such act occurred within 10 years after the commission

7  of a prior act of racketeering activity.  These racketeering activities included

8  repeated acts of:

9         (a)   <u>Mail Fraud</u>:  Counter-defendants MGA, MGA Entertainment

10                (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and

11                Does 4 through 10, aided and abetted by each other and some or

12                all of the remaining members of the MGA Criminal Enterprise,

13                having devised a scheme or artifice to defraud Mattel of its

14                confidential trade secret information and property by conversion,

15                false representations, concealment and breaches of fiduciary duty,

16                did for the purpose of furthering and executing such a scheme or

17                artifice to defraud, deposited or caused to be deposited matters or

18                things to be sent or delivered by the Postal Service, or any private

19                or commercial interstate carrier, or took or received matters or

20                things therefrom, or knowingly caused matters or things to be

21                delivered by mail or such carrier according to the direction

22                thereon, or at the place at which it is directed to be delivered by

23                the person to whom it is addressed, in violation of 18 U.S.C.

24                § 1341 and 18 U.S.C. § 2, as alleged with greater particularity in

25                the foregoing paragraphs and as evidenced by, among other

26                things, the true and correct copies of communications and other

27                evidence included in Exhibit C;

28

2154363.2

(b) <u>Wire Fraud</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, having devised a scheme or artifice to defraud Mattel of its confidential and trade secret information and property by conversion, false representations, concealment and breaches of fiduciary duty, did for the purpose of furthering and executing such a scheme or artifice to defraud, transmit and cause to be transmitted by means of wire communications in interstate or foreign commerce, writing, signs, signals, pictures or sound, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs and as evidenced by, among other things, the true and correct copies of communications and other evidence included in Exhibit C;

(c) <u>Tampering With a Witness, Victim or Informant</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, did corruptly alter, destroy, mutilate, or conceal more than one record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding, including this action, including without limitation by:

    i.     altering Bryant's contract with MGA relating to Bratz to conceal evidence that Bryant faxed the contract from the BARBIE COLLECTIBLES department of Mattel, using a fax

machine owned by Mattel and while Bryant was employed by Mattel;

ii.     altering numerous original Bratz drawings created by Bryant by adding false and misleading date notations of "8/1998" and "© 8/1998" to the drawings even though the drawings were not created in August 1998; and

iii.     destroying electronic and other evidence, including by destroying evidence previously contained on Carter Bryant's and Isaac Larian's computer hard drives.

Such actions are in violation of 18 U.S.C. § 1512 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs;

(d)     Interstate and Foreign Travel in Aid of Racketeering Enterprises: Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, traveled in interstate and foreign commerce, or used the mail or any facility in interstate or foreign commerce, with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of unlawful activity, *i.e.* bribery, in violation of the laws of the State of California, *Cal. Penal Code* § 641.3, all in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs;

(e)     Criminal Copyright Infringement: Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by

1    each other and some or all of the remaining members of the MGA

2    Criminal Enterprise, willfully infringed Mattel's copyrights,

3    including with respect to documents containing Mattel trade

4    secret and confidential information, for purposes of commercial

5    advantage and private financial gain, all in violation of 18 U.S.C.

6    § 2319(a) and 17 U.S.C. § 506(a)(1)(A), as alleged with greater

7    particularity in the foregoing paragraphs.

8        94.   The persons alleged herein to have violated 18 U.S.C. § 1962(c)

9    are separate from, though employed by or associated with, MGA, the MGA Group,

10   the Bryant Group, the Mexican Group and the Canadian Group.

11       95.   MGA had a role in the racketeering activity that was distinct

12   from the undertaking of those acting on its behalf.  MGA also attempted to benefit,

13   and did benefit, from the activity of its employees and agents alleged herein, and

14   thus was not a passive victim of racketeering activity, but an active perpetrator.

15       96.   Mattel has been injured in its business or property as a direct

16   and proximate result of the Counter-defendants' and the other enterprise members'

17   violations of 18 U.S.C. § 1962(c), including injury by reason of the predicate acts

18   constituting the pattern of racketeering activity.

19       97.   As a result of the violations of 18 U.S.C. § 1962(c), by MGA,

20   MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado,

21   Does 4 through 10, Brawer, Trueba, Vargas, Brisbois and the Other Former

22   Employees, Mattel has suffered substantial damages, in an amount to be proved at

23   trial.  Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to recover treble its

24   general and special compensatory damages, plus interest, costs and attorneys, fees,

25   incurred by reason of Counter-defendants' violations of 18 U.S.C. § 1962(c).

26

27

28

2154363.2

**Third Counterclaim**

**Conspiracy To Violate the Racketeer**

**Influenced And Corrupt Organizations Act**

**(18 U.S.C. §§ 1962(d) and 1964(c))**

**(Against All Counter-defendants)**

98.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 97, above, as though fully set forth at length.

99.   Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois and the Other Former Employees willfully, knowingly and unlawfully, did conspire, combine, confederate and agree together to violate 18 U.S.C. § 1962(c).

100.  These conspirators were employed by and associated-in-fact with the MGA Criminal Enterprise engaging in, and the activities of which affect, interstate and foreign commerce.  Specifically, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the MGA Criminal Enterprise's affairs through a pattern of racketeering activity.  In addition, MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the Bratz Criminal Enterprise's affairs through a pattern of racketeering activity.

101.  The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), including acts of mail fraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2; acts of wire fraud in violation of 18 U.S.C. § 1343 and 18

2154363.2

-61-

1    U.S.C. § 2; acts of tampering with witnesses, victims or informants in violation of

2    18 U.S.C. § 1512 and 18 U.S.C. § 2; acts of interstate and foreign travel in aid of

3    racketeering enterprises in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2; and

4    acts of criminal copyright infringement in violation of 18 U.S.C. § 2319(a) and 17

5    U.S.C. § 506(a)(1)(A).

6        102. Counter-defendants and the other members of the MGA Criminal

7    Enterprise schemed to defraud Mattel and steal its property and trade secret

8    information by means of false representation, breaches of fiduciary duty,

9    conversation and concealment, as more fully set forth in the foregoing paragraphs.

10       103. In furtherance of this unlawful conspiracy, and to effect its

11   objectives, Counter-defendants and various co-conspirators committed numerous

12   overt acts, including but not limited to those set forth in the foregoing paragraphs.

13       104. Mattel has been injured in its business or property as a direct and

14   proximate result of the Counter-defendants' and the other enterprise members'

15   violations of 18 U.S.C. § 1962(d), including injury by reason of the predicate acts

16   constituting the pattern of racketeering activity.

17       105. As a result of the conspiracies between and among all Counter-

18   defendants and the other conspirators to violate 18 U.S.C. § 1962(c), Mattel has

19   suffered substantial damages, in an amount to be proved at trial. Pursuant to 18

20   U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special

21   compensatory damages, plus interest, costs and attorneys, fees, incurred by reason

22   of Counter-defendants' violations of 18 U.S.C. § 1962(d).

23                    **Fourth Counterclaim**

24                 **Misappropriation of Trade Secrets**

25       **(Against Counter-defendants MGA, MGA de Mexico,**

26               **Larian, Machado and Does 4 through 10)**

27       106. Mattel repeats and realleges each and every allegation set forth in

28   paragraphs 1 through 105, above, as though fully set forth at length.

2154363.2

-62-

107.   As used herein, "Trade Secret Material" shall mean the documents, materials and information stolen by Machado, Trueba, Vargas, Brisbois, the Other Former Employees, and other persons acting for, on behalf of or at the direction of MGA and/or Larian.   Prior to their theft by Counter-defendants, the Trade Secret Materials gave Mattel a significant competitive advantage over its existing and would-be competitors, including MGA.   This advantage, as to MGA, has now been compromised as a result of Counter-defendants' unlawful activities.

108.   Mattel made reasonable efforts under the circumstances to maintain the confidentiality of the Trade Secret Materials, including by having employees and consultants who may have access the Trade Secret Materials sign confidentiality agreements that oblige them not to disclose the Trade Secret Materials or characteristics of the Trade Secret Materials; by limiting the circulation of said materials within Mattel; by protecting and limiting access to computers with log-in identifications and passwords; by limiting each employee's access to electronic files to those that the particular employee needs to access; by educating employees on the nature of Mattel's information that is confidential and proprietary; and by reminding employees on a regular and periodic basis of their obligation to protect and maintain Mattel's confidential and proprietary information.

109.   Mattel's Trade Secret Materials derive independent economic value from not being generally known to the public or to other persons who can obtain economic benefit from their disclosure.

110.   Counter-defendants have illegally obtained the trade secret materials, as set forth above, and through other means of which Mattel is presently unaware.

111.   Counter-defendants have used and disclosed Mattel's Trade Secret Materials without Mattel's consent and without regard to Mattel's rights, and

-63-

4363.2

1   without compensation, permission, or licenses for the benefit of themselves and

2   others.

3        112.  Counter-defendants' conduct was, is, and remains willful and

4   wanton, and was taken with blatant disregard for Mattel's valid and enforceable

5   rights.

6        113.  Counter-defendants' wrongful conduct has caused and, unless

7   enjoined by this Court, will continue in the future to cause irreparable injury to

8   Mattel.  Mattel has no adequate remedy at law for such wrongs and injuries.  Mattel

9   is therefore entitled to a permanent injunction restraining and enjoining Counter-

10  defendants, and each of them, as well as their agents, servants, and employees, and

11  all persons acting thereunder, in concert with, or on their behalf, from further using

12  in any manner Mattel's trade secrets.

13       114.  In addition, as a proximate result of Counter-defendants'

14  misconduct, Mattel has suffered actual damages, and Counter-defendants have been

15  unjustly enriched.

16       115.  The aforementioned acts of the Counter-defendants were willful

17  and malicious, including in that Counter-defendants misappropriated Mattel's trade

18  secrets with the deliberate intent to injure Mattel's business and improve their own.

19  Mattel is therefore entitled to enhanced damages.  Mattel is also entitled to

20  reasonable attorney's fees.

21                          **Fifth Counterclaim**

22                          **Breach of Contract**

23                          **(Against Bryant)**

24       116.  Mattel repeats and realleges each and every allegation set forth in

25  paragraphs 1 through 115, above, as though fully set forth at length.

26       117.  Pursuant to his Employment Agreement, Bryant agreed that he

27  would not, without Mattel's express written consent, engage in any employment or

28  business other than for Mattel or assist in any manner any business competitive

with the business or future business plans of Mattel during his employment with Mattel.  Pursuant to his Mattel Employment Agreement, Bryant further assigned to Mattel all right, title and interest in "inventions," including without limitation "designs" and other works that he conceived, created or reduced to practice during his employment by Mattel.  In addition, pursuant to the Conflict Questionnaire, Bryant certified that, other than as disclosed, he had not worked for any competitor of Mattel and had not engaged in any business venture or transaction involving a Mattel competitor that could be construed as a conflict of interest.  Bryant further promised that he would notify his supervisor immediately of any change in his situation that would cause him to change any of the foregoing certifications or representations.

118.  The Employment Agreement and the Conflict Questionnaire are valid, enforceable contracts, and Mattel has performed each and every term and condition of the Employment Agreement and Conflict Questionnaire required to be performed by Mattel.

119.  Bryant materially breached the foregoing contracts with Mattel, in that, among other things, he secretly aided, assisted and worked for a Mattel competitor during his employment with Mattel without the express written consent of Mattel.

120.  As a consequence of Bryant's breach, Mattel has suffered and will, in the future, continue to suffer damages in an amount to be proven at trial. Such damages include, without limitation, the amounts paid by the competitor to Bryant during his Mattel employment; the amounts paid by MGA to Bryant during his Mattel employment; the amount that Mattel paid Bryant during the time he wrongfully worked with MGA; the value of information and intellectual property owned by Mattel which Bryant provided to MGA; the value of the benefits that MGA obtained from Bryant during the time he was employed by Mattel; and the

2154363.2

1    value of the benefits that MGA obtained from Bryant as a result of the work he

2    performed for or with MGA during his Mattel employment.

3        121. Bryant's conduct has caused, and unless enjoined will continue to

4    cause, irreparable injury to Mattel that cannot be adequately compensated by

5    money damages and for which Mattel has no adequate remedy at law. Bryant

6    specifically acknowledged in his Employment Agreement that his breach of the

7    Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be

8    entitled to injunctive relief to enforce this Agreement, in addition to damages and

9    other available remedies." Accordingly, Mattel is entitled to orders mandating

10   Bryant's specific performance of his contracts with Mattel and restraining Bryant

11   from further breach.

## Sixth Counterclaim

### Intentional Interference with Contract

### (Against MGA, Larian and Does 4 through 10)

15        122. Mattel repeats and realleges each and every allegation set forth in

16   paragraphs 1 through 121, above, as though fully set forth at length.

17        123. Valid agreements existed between Mattel and Bryant, Brawer,

18   Machado, Trueba, Vargas, Brisbois and the Other Former Employees (collectively,

19   the "Mattel Employees")

20        124. At all times herein mentioned, MGA, Larian and Does 4 through

21   10 knew that the Mattel Employees had a duty under their agreements not to work

22   for or assist any competitor of Mattel, such as MGA. In addition, at all times

23   mentioned herein, MGA, Larian and Does 4 through 10 knew that Bryant had

24   assigned to Mattel, and was obligated to disclose to Mattel all inventions, including

25   designs and other works, created, conceived or reduced to practice during their

26   employment with Mattel.

27

28

2154363.2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

125. Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, induced and encouraged the Mattel Employees to breach their contracts with Mattel.

126. As a direct and proximate result of Counter-defendants' efforts and inducements, the Mattel Employees did breach their contracts with Mattel.

127. As a result of said breaches, Mattel has suffered damages and will imminently suffer further damages, including the loss of its competitive position and lost profits, in an amount to be proven at trial.

128. Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

### Seventh Counterclaim

### Breach of Fiduciary Duty

### (Against Bryant and Machado)

129. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 128, above, as though fully set forth at length.

130. Bryant and Machado held positions of trust and confidence with Mattel. In their positions, Bryant and Machado had access to and were entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of their job assignments and duties. In their positions, Bryant and Machado also represented Mattel in its dealings with third parties and, in actions in the course and scope of their employment with Mattel, were agents of Mattel. They confirmed their relationship of trust with Mattel in respective employee agreements. Bryant and Machado thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests

2154363.2

1  or that would deprive Mattel of any opportunities, profit or advantage which Bryant

2  or Machado might bring to Mattel.

3          131.  Bryant breached his fiduciary duty to Mattel in that, while

4  employed by Mattel, he secretly aided and assisted a competitor of Mattel,

5  including without limitation by entering into an agreement with a Mattel

6  competitor.  As alleged above, Bryant also breached the aforementioned duty by

7  using Mattel property and resources for the benefit of, and to aid and assist, himself

8  personally and MGA.

9          132.  Machado breached his fiduciary duty to Mattel, in that while

10  employed by Mattel, he secretly aided and assisted a competitor of Mattel by,

11  among other things, misappropriating Mattel trade secret and proprietary

12  information and providing said information to officers of MGA.  Machado also

13  breached the aforementioned duty by using Mattel property and resources for the

14  benefit of, and to aid and assist, himself personally and MGA.

15          133.  As a direct and proximate result of Counter-defendants' wrongful

16  conduct, Mattel has incurred damages in an amount to be determined at trial.

17          134.  Counter-defendants acted with malice, fraud and oppression, and

18  in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an

19  award of exemplary damages against Counter-defendants in an amount to be

20  determined at trial.

21          135.  Furthermore, Counter-defendants' conduct has caused, and unless

22  enjoined will continue to cause, irreparable injury to Mattel that cannot be

23  adequately compensated by money damages and for which Mattel has no adequate

24  remedy at law.  Accordingly, Mattel is entitled to an order restraining further

25  breach of Bryant's fiduciary duty to Mattel and/or restraining Counter-defendants

26  from continuing to benefit from such breach.

27

28

-68-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

## Eighth Counterclaim

### Aiding and Abetting Breach of Fiduciary Duty

### (Against MGA, Larian and Does 4 through 10)

136.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 135, above, as though fully set forth at length.

137.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant held a position of trust and confidence at Mattel.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to secretly developing and designing Bratz while employed by Mattel and by secretly assisting Larian and MGA .

138.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) held positions of trust and confidence at Mattel.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to taking confidential trade secret information from Mattel's premises and providing that information to a competitor.

139.  Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, encouraged, aided and abetted and gave substantial assistance to the Mattel Employees to breach their fiduciary duties to Mattel, knowing that their conduct would constitute breaches of their fiduciary duties to Mattel.

140.  As a direct and proximate result of Counter-defendants' efforts, the Mattel Employees did breach their fiduciary duties to Mattel and Mattel has incurred damages in an amount to be proven at trial.  Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

141. In taking the aforesaid actions, MGA, Larian and Does 4 through 10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

### Ninth Counterclaim

### Breach of Duty of Loyalty

### (Against Bryant and Machado)

142. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 141, above, as though fully set forth at length.

143. As employees of Mattel, Bryant and Machado owed a duty of undivided loyalty to Mattel. Pursuant to this duty, Bryant and Machado could not compete with Mattel or assist a competitor of Mattel during their employment with Mattel. Pursuant to this duty, Bryant and Machado were required to always give preference to Mattel's business over their own, similar interests during the course of their employment with Mattel.

144. Bryant and Machado breached their duty of loyalty to Mattel in that, while employed by Mattel, they secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into agreements with a Mattel competitor. As alleged above, they also breached the aforementioned duty by using Mattel property and resources for the benefit of, and to aid and assist, themselves personally and the competitor of Mattel.

145. As a direct and proximate result of Counter-defendants' wrongful conduct, Mattel has incurred damages in an amount to be determined at trial.

146. Counter-defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages against Counter-defendants in an amount to be determined at trial.

!154363.2

-70-

1   147. Furthermore, Counter-defendants' conduct has caused, and unless

2   enjoined will continue to cause, irreparable injury to Mattel that cannot be

3   adequately compensated by money damages and for which Mattel has no adequate

4   remedy at law. Accordingly, Mattel is entitled to an order restraining further

5   breach of Counter-defendants' duty of loyalty to Mattel and/or restraining Counter-

6   defendants from continuing to benefit from such breach.

7   148. In breaching their duty of loyalty to Mattel, Bryant and Machado

8   acted with malice, fraud and oppression, and in conscious disregard of Mattel's

9   rights. Accordingly, Mattel is entitled to recover exemplary damages from

10   Counter-defendants in an amount to be determined at trial.

11   <u>**Tenth Counterclaim**</u>

12   **Aiding and Abetting Breach of Duty of Loyalty**

13   **(Against MGA, Larian and Does 4 through 10)**

14   149. Mattel repeats and realleges each and every allegation set forth in

15   paragraphs 1 through 148, above, as though fully set forth at length.

16   150. MGA, Larian and Does 4 through 10 knew that Bryant, as an

17   employee of Mattel, owed a duty of loyalty to his employer. MGA, Larian and

18   Does 4 through 10 knew that this duty included an obligation on the part of Bryant

19   not to compete with Mattel or assist a competitor of Mattel during the term of his

20   employment with Mattel. MGA, Larian and Does 4 through 10 also knew that

21   Bryant was required to give preference to Mattel's business over his own, similar

22   interests or those of Mattel's competitors. or those of Mattel's competitors during

23   the course of his employment with Mattel.

24   151. MGA, Larian and Does 4 through 10 knew that the Mattel

25   Employees (excluding Bryant) were employed by Mattel, and, as employees of

26   Mattel, that they owed duties of loyalty to Mattel. MGA, Larian and Does 4

27   through 10 knew that these duties included an obligation on the part of the Mattel

28

1  Employees (excluding Bryant) not to compete with Mattel or assist a competitor of
2  Mattel during their Mattel employment.

3       152. Despite such knowledge, Counter-defendants MGA, Larian and
4  Does 4 through 10 intentionally and without justification solicited, encouraged,
5  aided and abetted and gave substantial assistance to the Mattel Employees to
6  breach their duties of loyalty to Mattel, knowing that their conduct would constitute
7  breaches of their duties of loyalty to Mattel.

8       153. As a further consequence of Counter-defendants' efforts, Mattel
9  has suffered injury and is entitled to compensatory damages in an amount to be
10  proven at trial.

11       154. In taking the aforesaid actions, MGA, Larian and Does 4 through
12  10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's
13  rights.  Accordingly, Mattel is entitled to recover exemplary damages from
14  Counter-defendants in an amount to be determined at trial.

15               **Eleventh Counterclaim**
16                  **Conversion**
17           **(Against All Counter-defendants)**

18       155. Mattel repeats and realleges each and every allegation set forth in
19  paragraphs 1 through 154, above, as though fully set forth at length.

20       156. Counter-defendants wrongfully converted Mattel property and
21  resources by appropriating and using them for their own benefit and gain and for
22  the benefit and gain of others, without the permission of Mattel.

23       157. Mattel was entitled to, among other things, the exclusive right
24  and enjoyment in property and tangible materials owned by Mattel, including
25  without limitation such proper and materials that were created by Bryant while he
26  was a Mattel product designer.  Such property was taken by Bryant from Mattel to
27  further his own interests and, in at least some instances, provided by Bryant to
28  Larian and MGA in furtherance of the interests of Bryant, Larian and MGA.

158. In addition, Counter-defendants wrongfully converted Mattel's property by removing the Trade Secret Materials in electronic and paper form from Mattel's offices.  Counter-defendants did so without Mattel's permission and continue to possess them.

159. As a direct and proximate result of Counter-defendants' wrongful conversion of Mattel property, including those relating to Bratz and Mattel's Trade Secret Materials, Mattel has incurred damages.  Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

160.   As a result of Counter-defendants' acts of conversion, Mattel is entitled to damages in an amount sufficient to indemnify Mattel for the loss suffered, which is not measured by the value of the property misappropriated, but includes the lost profits that Mattel suffered as a result of the conversion or, alternatively, the profits generated by the Counter-defendants that would not have been generated but for the conversion.  Only such a measure of damages would fully and fairly compensate Mattel for the injury it suffered due to Counter-defendants' acts of conversion.

161. Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

162. Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining Counter-defendants from further conversion of Mattel property and resources and/or restraining Counter-defendants from continuing to benefit from such conversion.

**Twelfth Counterclaim**

**Unfair Competition**

**(Common Law and *Cal. Bus. & Prof. Code* § 17200)**

**(Against All Counter-defendants)**

163. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 162, above, as though fully set forth at length.

164. Section 17200 of the California Business and Professions Code prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice . . . ."

165. By engaging in the foregoing conduct, Counter-defendants have, individually and in combination, engaged in unlawful, unfair and/or fraudulent acts of unfair competition in violation of both the common law of the state of California and *Cal. Bus. & Prof. Code* § 17200 *et seq.* Such conduct included, without limitation, MGA's commercial bribery of Bryant in violation of *Cal. Penal Code* § 641.3 and misappropriation of trade secrets in violation of 18 U.S.C. § 1832(a). Such conduct also included, without limitation, MGA's and Larian's disparagement of Mattel's products and misrepresentations as alleged above.

166. As a result of the aforementioned conduct, Mattel has suffered damages and will imminently suffer further damages, including but not limited to lost profits in an amount to be proven at trial. No adequate remedy at law exists for the wrongs and injuries Mattel has suffered and will continue to suffer, and Mattel is entitled to an injunction enjoining Counter-defendants' continued wrongful acts. Mattel is also entitled to recover compensatory and exemplary damages pursuant to the doctrine of common law unfair competition and *Cal. Civ. Code* § 3294.

**Thirteenth Counterclaim**

**Declaratory Relief**

**(Against All Counter-defendants)**

167.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 166, above, as though fully set forth at length.

168.  As shown in the foregoing paragraphs above, an actual controversy exists between Mattel and Counter-defendants regarding Counter-defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

169.  Accordingly, Mattel seeks a declaration of the Court that Counter-defendants have no valid or protectable ownership rights or interests in Bratz, and that Mattel is the true owner of the same, and further seeks an accounting and imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and over all revenues and other monies or benefits derived or obtained from MGA's and Bryant's purported ownership, use, sale, distribution and licensing of Bratz.

170.  Mattel seeks a declaration of the Court that any and all agreements between Bryant, on the one hand, and MGA, on the other hand, in which Bryant purports to assign to MGA any right, title or interests in any work that he conceived, created or reduced to practice while a Mattel employee, including but not limited to the Bratz designs, is void and of no effect, including without limitation because Bryant had previously assigned said right, title or interest to Mattel and because Mattel was otherwise the owner of said right, title or interest.

**Prayer for Relief**

WHEREFORE, Mattel respectfully requests judgment:

1.    For a declaration that Counter-defendants have no valid or protectable ownership interests or rights in Bratz designs and works conceived,

2154363.2

1  created or reduced to practice by Bryant during the term of his Mattel employment

2  and/or by any others then-employed by Mattel, as well as in all derivatives

3  prepared therefrom, and that Mattel is the true owner of the foregoing;

4      2.   For a declaration that any agreement between Bryant, on the one

5  hand, and MGA or any person or entity, on the other hand, in which Bryant

6  purported to assign any right, title or interests in any work that he conceived,

7  created or reduced to practice while a Mattel employee, including but not limited to

8  the Bratz designs, is void and of no effect;

9      3.   For an Order enjoining and restraining Counter-defendants, their

10  agents, servants and employees, and all persons in active concert or participation

11  with them, from further wrongful conduct, including without limitation from

12  imitating, copying, distributing, importing, displaying, preparing derivatives from

13  and otherwise infringing Mattel's copyright-protected works;

14     4.   For an Order, pursuant to 17 U.S.C. § 503(a) and other

15  applicable law, impounding all of Counter-defendants' products and materials that

16  infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles

17  by which copies of the works embodied in Mattel's copyrights may be reproduced

18  or otherwise infringed;

19     5.   For an Order mandating that Counter-defendants return to Mattel

20  all tangible items, documents, designs, diagrams, sketches or any other

21  memorialization of inventions created or reduced to practice during Bryant's

22  employment with Mattel as well as all Mattel property converted by Counter-

23  defendants;

24     6.   For an Order mandating specific performance by Bryant to

25  comply with and satisfy Bryant's contractual obligations to Mattel;

26     7.   That Mattel be awarded, and Counter-defendants be ordered to

27  disgorge, all payments, revenues, profits, monies and royalties and any other

28  benefits derived or obtained as a result of the conduct alleged herein, including

-76-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1  without limitation of all revenues and profits attributable to Counter-defendants'

2  infringement of Mattel's copyrights under 17 U.S.C. § 504;

3        8.    For an accounting of all profits, monies and/or royalties from the

4  exercise of ownership, use, distribution, sales and licensing of Bratz;

5        9.    For the imposition of a constructive trust over Bratz, including

6  without limitation registrations and applications for registrations relating thereto

7  made or filed by Counter-defendants and third parties, and all profits, monies,

8  royalties and any other benefits derived or obtained from Counter-defendant's

9  exercise of ownership, use, sale, distribution and licensing of Bratz;

10        10.    That Mattel recover its actual damages and lost profits;

11        11.    That Counter-defendants be ordered to pay exemplary damages

12  in a sum sufficient to punish and to make an example of them, and deter them and

13  others from similar wrongdoing;

14        12.    That Counter-defendants be ordered to pay treble its general and

15  special damages, plus interest, costs and attorney's fees incurred by reason of

16  Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

17        13.    That Counter-defendants be ordered to pay double damages due

18  to their willful and malicious misappropriation of Mattel's trade secrets with

19  deliberate intent to injure Mattel's business and improve its own;

20        14.    That Counter-defendants pay to Mattel the full cost of this action

21  and Mattel's attorneys' and investigators' fees; and

22

23

24

25

26

27

28

2154363.2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1         15.   That Mattel have such other and further relief as the Court may

2    deem just and proper.

3

4    DATED:  July 12, 2007          QUINN EMANUEL URQUHART OLIVER &
                             HEDGES, LLP

5

6                         By _____

7                            John B. Quinn
                             Attorneys for Defendant and Counter-

8                            claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-78-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1

## DEMAND FOR JURY TRIAL

2

3     Mattel, Inc. respectfully requests a jury trial on all issues triable

4  thereby.

5

6  DATED:  July 12, 2007          QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES, LLP
7

8                           By_____
9                              John B. Quinn
                               Attorneys for Defendant and Counter-
10                             claimant Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2154363.2

-79-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT 12**

RECEIVED

SEP 2 1 2007
BRL 2:02 PM

1   PATRICIA GLASER (S.B. #55668)
      CHRISTENSEN, GLASER, FINK,
2   JACOBS, WEIL & SHAPIRO, LLP
      10250 Constellation Boulevard, 19th Floor
3   Los Angeles, CA 90067
      Telephone: (310) 553-3000
4   Facsimile: (310) 557-9815

5   DALE M. CENDALI (admitted *pro hac vice*)
      O'MELVENY & MYERS LLP
6   400 South Hope Street
      Los Angeles, CA 90071-2899
7   Telephone: (213) 430-6000
      Facsimile: (213) 430-6407

8

9   Attorneys for MGA Entertainment, Inc.,
      MGA Entertainment (HK) Limited, MGAE
10   de Mexico S.R.L. de C.V., and Isaac Larian

11

12             **UNITED STATES DISTRICT COURT**
              **CENTRAL DISTRICT OF CALIFORNIA**
13                   **EASTERN DISTRICT**

14   CARTER BRYANT, an individual,   |   Case No. CV 04-09049 SGL (RNBx)
                Plaintiff,   |   (consolidated with CV 04-9059 & 05-2727)
15

16       v.   |   **MGA ENTERTAINMENT, INC.'S**
                        |   **SUPPLEMENTAL DISCLOSURES**
      MATTEL, INC., a Delaware   |   **AND MGA ENTERTAINMENT (HK)**
17   Corporation,   |   **LIMITED, MGAE DE MEXICO**
                Defendant.   |   **S.R.L. DE C.V., AND LARIAN'S**
18                       |   **INITIAL DISCLOSURES UNDER**
                        |   **RULE 26(a)(1)**
19

20   CONSOLIDATED WITH   |   Judge: Hon. Stephen G. Larson
      MATTEL, INC. v. BRYANT and   |
21   MGA ENTERTAINMENT, INC. v.   |   Discovery Cut-Off:   March 3, 2008
      MATTEL, INC.

22

23

24

25

26

27

28
                EXHIBIT ____

1      MGA Entertainment, Inc. ("MGA"), MGA Entertainment (HK) Limited

2  ("MGA Hong Kong"), MGAE de Mexico S.R.L. de C.V. ("MGA Mexico"), and

3  Isaac Larian ("Larian") (collectively the "MGA Parties") hereby submit the

4  following initial disclosures to Mattel, Inc. ("Mattel"), pursuant to Rule 26(a) of the

5  Federal Rules of Civil Procedure.  The MGA Parties make these initial disclosures

6  based upon information reasonably available to them and reserve the right to

7  identify additional documents and witnesses hereafter, and otherwise to provide

8  supplemental disclosures as appropriate or necessary.  To the extent prior initial

9  disclosures have been made by one or more of the MGA Parties, the instant

10  disclosures serve to incorporate and supplement any such prior disclosures.

11  **Witnesses**

12      The MGA Parties' initial disclosure of the identities of potential witnesses is

13  based solely upon such information discovered thus far, as well as the MGA

14  Parties' present analysis of the case, and shall not, in any way, be deemed to be a

15  representation that additional witnesses do not exist.  Accordingly, this disclosure is

16  subject to the MGA Parties' identification of additional individuals with knowledge

17  of facts supporting any of the material allegations, claims or  in the Consolidated

18  Action.  By indicating the general subject matter or information these individuals

19  may possess, the MGA Parties are in no way limiting their right to call any

20  individual listed herein to testify concerning other subjects.

21      Subject to the foregoing, individuals who will likely have discoverable

22  information relevant to the disputed facts alleged in the pleadings and the subject

23  matter of the information are as follows:

24      1.    Arnold Artavia.  MGA believes that Mr. Artavia is a current

25  Mattel employee.  Mr. Artavia was deposed on September 21, 2006 and possesses

26  the information set forth in his deposition testimony.

27      2.    Erika Ashbrook.  MGA believes that Ms. Ashbrook is a current

28  Mattel employee.  Ms. Ashbrook may possess information relevant to Mattel's

EXHIBIT _____   - 1 -   MGA'S SUPP. DISCLOSURES AND MGA HK,
MGA MEXICO, AND LARIAN'S INITIAL
DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

PAGE _____

1   efforts to obtain undisclosed product information from MGA and to Mattel's

2   manipulation of MGA's retail displays.

3          3.        Schuyler Bacon.  Ms. Bacon is responsible for MGA's

4   recruiting activities.  Ms. Bacon may possess knowledge of facts in support of

5   MGA's defenses to Mattel's RICO and trade secret counterclaims.  Ms. Bacon may

6   be contacted through MGA's counsel of record.

7          4.        Manmohan Bhuller.  Mr. Bhuller is a former Mattel employee

8   and may possess knowledge of facts in support of MGA's claims of unfair

9   competition.

10         5.        Kevin Bloomfield.  Mr. Bloomfield is a Games Manager at

11  MGA.  Mr. Bloomfield may possess knowledge of the creation and design of

12  MGA's Alien Racers product line.  Mr. Bloomfield may be contacted through

13  MGA's counsel of record.

14         6.        Matthew Bousquette.  MGA believes that Mr. Bousquette is a

15  former President of Mattel Brands.  Mr. Bousquette may possess knowledge of

16  Mattel's serial copying of MGA's distinctive trade dress, trademarks, product

17  packaging, themes, ideas, and advertising; Mattel's dilution of MGA's famous

18  marks; Mattel's interference with MGA's advertising efforts; Mattel's threats to

19  and intimidation of retailers, suppliers, licensees, distributors, manufacturers, and

20  former employees and freelancers; Mattel's improper influence of standard-setting

21  and industry organization; Mattel's manipulation of MGA's retail displays and

22  other aspects of Mattel's unclean hands.

23         7.        Ron Brawer.  Mr. Brawer is MGA's President of Global Sales

24  and Planning.  Mr. Brawer may possess information relevant to some aspect or

25  aspects of MGA's sales and marketing of its products (including, without

26  limitation, "Bratz" dolls, "Bratz Petz," the "Bratz Funky Fashion Makeover Head,"

27  "4-Ever Best Friends," "Mommy's Little Patient," and "Alien Racers").  Mr.

28  Brawer also has knowledge of facts in support of MGA's defenses to Mattel's

EXHIBIT _____

PAGE _____

- 2 -

MGA'S SUPP. DISCLOSURES AND MGA HK,
MGA MEXICO, AND LARIAN'S INITIAL
DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

1  RICO and trade secret counterclaims, Mattel's unfair competition and Mattel's

2  unclean hands.  Mr. Brawer may be contacted through MGA's counsel of record.

3      8.      Janine Brisbois.  Ms. Brisbois is an employee of MGA Canada.

4  Ms. Brisbois has knowledge of facts in support of MGA's defenses to Mattel's

5  RICO and trade secret counterclaims.  Ms. Brisbois may be contacted through

6  MGA's counsel of record.

7      9.      Kerri Brode.  Ms. Brode was deposed on January 19, 2007 and

8  August 15, 2007 and possesses the information set forth in her deposition

9  testimony.  Ms. Brode may be contacted through MGA's counsel of record.

10     10.     Charnayne Brooks.  Ms. Brooks is an employee of MGA.  Ms.

11 Brooks was deposed on March 2, 2007 and possesses the information set forth in

12 her deposition testimony.  Ms. Brooks may be contacted through MGA's counsel of

13 record.

14     11.     Carter Bryant.  Carter Bryant possesses information relevant to

15 the creation of the original "Bratz" drawings, and, to some extent, of the creation

16 and design by MGA of the first generation of "Bratz" dolls and timing thereof; the

17 nature and scope of his employment at Mattel; the nature and scope of his work for

18 and with MGA; and information relevant to his own defenses in this matter, as well

19 as knowledge of facts in support of MGA's defenses to Mattel's counterclaims.

20 Mr. Bryant may be contacted through his counsel of record.

21     12.     Janet Bryant.  Ms. Bryant may be contacted through Carter

22 Bryant's counsel of record.  Ms. Bryant possesses information concerning, among

23 other things, Mr. Bryant's general skills and talents as a designer and his

24 conception, creation, design and development of various matters when he was not

25 employed by Mattel.

26     13.     Tom Bryant.  Tom Bryant may be contacted through Carter

27 Bryant's counsel of record.  Tom Bryant possesses information concerning, among

28 other things, Mr. Bryant's general skills and talents as a designer and his

1  conception, creation, design and development of various matters when he was not

2  employed by Mattel.

3         14.    Yuval Caspi. Mr. Caspi is MGA's Vice President, Boys Toys.

4  Mr. Caspi may possess knowledge of the creation and design of MGA's Alien

5  Racers product line, logo and advertising, Mattel's copying of same, and Mattel's

6  efforts to tamper with MGA retail displays. Mr. Caspi may be contacted through

7  MGA's counsel of record.

8         15.    Jorge Castilla. Mr. Castilla is an employee of MGA. Mr.

9  Castilla may possess knowledge of facts in support of MGA's defenses to Mattel's

10  RICO and trade secret counterclaims. Mr. Castilla may be contacted through

11  MGA's counsel of record.

12         16.    Elise Cloonan. Ms. Cloonan is a former Mattel employee and

13  may possess information relevant to the timing of the conception and creation of the

14  original "Bratz" artwork by Carter Bryant prior to MGA's acquisition of rights

15  therein. Ms. Cloonan may be contacted through her counsel, Larry McFarland.

16         17.    Dan Cooney. Mr. Cooney is MGA's Vice President of Sales,

17  National Accounts. Mr. Cooney may possess information about consumer

18  confusion between Mattel products. Mr. Cooney may be contacted through MGA's

19  counsel of record.

20         18.    Jamie Cygielman. MGA believes that Ms. Cygielman is a

21  former Mattel employee. Ms. Cygielman may possess information relevant to

22  Mattel's unfair competition and unclean hands.

23         19.    Richard De Anda. MGA believes that Mr. De Anda currently is

24  Mattel's V.P. of Worldwide Security and may possess information relevant to

25  Mattel's investigations of MGA, Bryant, Larian and "Bratz."

26         20.    Thomas Debrowski. MGA believes that Mr. Debrowski is a

27  current Mattel employee. Mr. Debrowski may possess information relevant to

28  Mattel's unfair competition and unclean hands.

EXHIBIT _____    - 4 -    MGA'S SUPP. DISCLOSURES AND MGA HK,
                                          MGA MEXICO, AND LARIAN'S INITIAL
PAGE _____                     DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

1    21.    Sandrine de Raspide.  Ms. de Raspide is the former Licensing

2  Manager at MGA.  Ms. de Raspide has knowledge of facts in support of MGA's

3  unfair competition claims, including without limitation, threats to and intimidation

4  of licensees.  Ms. de Raspide may be contacted through MGA's counsel of record.

5    22.    Leon Djiguerian.  Mr. Djiguerian is a Product Manager at MGA.

6  Mr. Djiguerian may possess information relevant to some aspect or aspects the

7  design and packaging of MGA products, including "Bratz."  Mr. Djiguerian may

8  be contacted through MGA's counsel of record.

9    23.    Ann Driskill.  MGA believes that Ms. Driskill currently is a

10 Mattel employee.  Ms. Driskill was deposed on December 15, 2004 and July 12,

11 2007 and possesses the information set forth in her deposition testimony.

12   24.    Robert Eckert.  MGA believes that Mr. Eckert currently is the

13 CEO of Mattel.  Mr. Eckert may possess knowledge of Mattel's serial copying of

14 MGA's distinctive trade dress, trademarks, product packaging, themes, ideas, and

15 advertising; Mattel's dilution of MGA's famous marks; Mattel's interference with

16 MGA's advertising efforts; Mattel's threats to and intimidation of retailers,

17 suppliers, licensees, distributors, manufacturers, and former employees and

18 freelancers; Mattel's improper influence of standard-setting and industry

19 organization; and/or Mattel's manipulation of MGA's retail displays.

20   25.    Margo Eldridge.  Ms. Eldridge is a freelancer who formerly

21 worked for MGA producing commercials for "Bratz."  MGA believes that Ms.

22 Eldridge currently works as a freelancer for Mattel.  MGA believes that Ms.

23 Eldridge may possess knowledge relevant to some aspect or aspects of Mattel's

24 serial copying of MGA's advertising, Mattel's efforts to interfere with the

25 production of MGA's commercials; Mattel's efforts to improperly influence CARU

26 and Nickelodeon; and Mattel's efforts to disseminate false information to retailers.

27 Ms. Eldridge may also possess information relevant to Mattel's threats to and

28 intimidation of former employees and/or freelancers.

EXHIBIT _____            - 5 -          MGA'S SUPP. DISCLOSURES AND MGA HK,
                                          MGA MEXICO, AND LARIAN'S INITIAL
PAGE _____                              DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

26.     Kevin Farr.  MGA believes that Mr. Farr is Mattel's Chief Financial Officer.  Mr. Farr may possess information relevant to damages.

27.     Adrienne Fontanella.  MGA believes that Ms. Fontanella is the former President of Girls at Mattel.  Ms. Fontanella may possess knowledge of Mattel's serial copying of MGA's distinctive trade dress, trademarks, product packaging, themes, ideas, and advertising; Mattel's dilution of MGA's famous marks; Mattel's interference with MGA's advertising efforts; Mattel's threats to and intimidation of retailers, suppliers, licensees, distributors, manufacturers, and former employees and freelancers; Mattel's improper influence of standard-setting and industry organization; and/or Mattel's manipulation of MGA's retail displays.

28.     Lissa Freed.  MGA believes that Ms. Freed currently is a Mattel employee.  Ms. Freed was deposed on May 3, 2007 and possesses the information set forth in her deposition testimony.

29.     Neil Friedman.  MGA believes that Mr. Friedman is President of Mattel Brands.   Ms. Friedman may possess knowledge of Mattel's serial copying of MGA's distinctive trade dress, trademarks, product packaging, themes, ideas, and advertising; Mattel's dilution of MGA's famous marks; Mattel's interference with MGA's advertising efforts; Mattel's threats to and intimidation of retailers, suppliers, licensees, distributors, manufacturers, and former employees and freelancers; Mattel's improper influence of standard-setting and industry organizations; and/or Mattel's manipulation of MGA's retail displays.

30.     Jeanne Galvano.  Ms. Galvano possesses information relevant to, among other things, the timing of the creation of the original "Bratz" drawings by Carter Bryant and Mr. Bryant's general skills and talents as an artist.

31.     Paula Garcia.  Ms. Garcia is MGA's Vice President of Product Design and Development and has been involved in the design and development of MGA's "Bratz" dolls.  Ms. Garcia was deposed in May, 2007, and possesses the information set forth in her deposition testimony.  Ms. Garcia may be contacted

1  through MGA's counsel of record.

2      32.      Marcy George.  Ms. George is MGA's Domestic Director of

3  Licensing.  Ms. George has knowledge of MGA's licensing of "Bratz" in the

4  United States.  Ms. George may be contacted through MGA's counsel of record.

5      33.      Diane Goveia Gordon.  Ms. Gordon is an employee of MGA

6  Canada.  Ms. Gordon may possess knowledge of facts in support of MGA's

7  defenses to Mattel's RICO and trade secret counterclaims.  Ms. Gordon may be

8  contacted through MGA's counsel of record.

9      34.      Sarah Halpern.  Ms. Halpern is a freelance vendor who worked

10 for MGA on the fashions for certain "Bratz" products, including MGA's first

11 generation of "Bratz" dolls.  Ms. Halpern may possess information relevant to some

12 aspect or aspects of the creation and design by MGA of the first generation of

13 "Bratz" dolls, in particular with respect to some aspect or aspects of the fashion

14 designs.  Ms Halpern may be contacted through her attorney, Larry McFarland,

15 Esq.

16     35.      Rebecca Harris.  Ms. Harris is a current MGA employee. She

17 was deposed in August 2007 and possesses the information set forth in her

18 deposition testimony.  Ms. Harris may be contacted through MGA's counsel of

19 record.

20     36.      Connie Hibbert.  MGA believes that Ms. Hibbert is a current

21 Mattel employee.  Ms. Hibbert may possess information relevant to Mattel's

22 manipulation of MGA's retail displays.

23     37.      Martin Hitch.  Mr. Hitch formerly worked as MGA's V.P. of

24 International Sales.  Mr. Hitch may possess knowledge of sales of "Bratz"

25 including first generation "Bratz."

26     38.      Rob Hudnut.  MGA believes that Mr. Hudnut is a current Mattel

27 employee.  Mr. Hudnut was deposed on July 13, 2007 and August 20, 2008 and

28 possesses the information set forth in his deposition testimony.

EXHIBIT _____          - 7 -          MGA'S SUPP. DISCLOSURES AND MGA HK,
                                        MGA MEXICO, AND LARIAN'S INITIAL
                                        DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

PAGE _____

1    39.    Jim Huntley. Mr. Huntley is a former MGA employee. He may
2    possess knowledge about MGA's marketing of its "Bratz" line of products after the
3    start of his employment at MGA.

4    40.    Richard Irmen. Mr. Irmen is a personal acquaintance of Mr.
5    Bryant and possesses information relevant to, among other things, the timing of the
6    creation of the original "Bratz" drawings by Carter Bryant.

7    41.    Julia Jensen. MGA believes that Ms. Jensen is a current Mattel
8    employee. Ms. Jensen was deposed on June 8, 2007 and possesses the information
9    set forth in her deposition testimony.

10   42.    Fred Kawashima. MGA believes that Mr. Kawashima is a
11   current Mattel employee. Mr. Kawashima was deposed on January 17, 2007 and
12   June 19, 2007 and possesses the information set forth in his deposition testimony.

13   43.    Alan Kaye. MGA believes that Mr. Kaye is Mattel's Senior
14   Vice President of Human Resources. Mr. Kaye was deposed on December 10,
15   2004 and June 21, 2007 and possesses the information set forth in his deposition
16   testimony.

17   44.    Ellen Komatsu. Ms. Komatsu is a Senior Designer at MGA.
18   Ms. Komatsu may possess information relevant to some aspect or aspects of the
19   design of MGA's "Bratz" dolls. Ms. Komatsu may be contacted through MGA's
20   counsel of record.

21   45.    Susana Kuemmerle. Ms. Kuemmerle is an employee of MGA
22   Mexico. Ms. Kuemmerle has knowledge of facts in support of MGA's defenses to
23   Mattel's RICO and trade secret counterclaims. Ms. Kuemmerle may be contacted
24   through MGA's counsel of record.

25   46.    Michael Kukar. Mr. Kukar is an employee of MGA. Mr. Kukar
26   may possess information relevant to the creation of "Bratz" character art. Mr.
27   Kukar may be contacted through MGA's counsel of record.

28   47.    Timothy Kilpin. MGA believes that Mr. Kilpin currently is

EXHIBIT _____          - 8 -

PAGE _____

1  Senior VP Marketing and Design at Mattel. Mr. Kilpin may possess knowledge of

2  the announcement of Mattel's suit against Mr. Bryant, Mattel's serial copying of

3  MGA's distinctive trade dress, trademarks, product packaging, themes, ideas, and

4  advertising; Mattel's dilution of MGA's famous marks; and consumer confusion

5  between Mattel products and MGA products.

6        48.     Isaac Larian. Mr. Larian is MGA's President and Chief

7  Executive officer. Mr. Larian may possess information relevant to material

8  allegations in the Consolidated Action, including MGA's acquisition of rights to the

9  original "Bratz" drawings by Carter Bryant, some aspect or aspects of the creation,

10  design and development of the "Bratz" dolls, Mattel's serial copying of MGA's

11  products (including, without limitation, "Bratz" dolls, "Bratz Petz," the "Bratz

12  Funky Fashion Makeover Head," "4-Ever Best Friends," "Mommy's Little

13  Patient," and "Alien Racers"); Mattel's serial copying of MGA's distinctive trade

14  dress, trademarks, product packaging, themes, ideas, and advertising; Mattel's

15  dilution of MGA's famous marks; Mattel's interference with MGA's advertising

16  efforts; Mattel's threats to and intimidation of retailers, suppliers, licensees,

17  distributors, manufacturers, and former employees and freelancers; Mattel's

18  improper influence of standard-setting and industry organization; Mattel's

19  manipulation of MGA's retail displays; damages suffered by MGA as a result of

20  Mattel's conduct; and facts in support of MGA's defenses to Mattel's

21  counterclaims. Mr. Larian may be contacted through his counsel of record.

22        49.     Margaret (Hatch) Leahy: Ms. Leahy is a former freelancer and

23  employee of MGA. She possesses information relevant to some aspect or aspects

24  of the sculpting of the first generation of "Bratz" dolls, and samples, prototypes and

25  prior iterations thereof. Ms. Leahy also may possess information relevant to some

26  aspect or aspects of the sculpting of the "4-Ever Best Friends" dolls, the "Bratz

27  Winter Wonderland" and "Bratz Formal Funk" themes, "Prayer Angels," and the

28  "Mommy's Little Patient" doll. Ms. Leahy may be contacted through her counsel

EXHIBIT ____       - 9 -       MGA'S SUPP. DISCLOSURES AND MGA HK,
MGA MEXICO, AND LARIAN'S INITIAL
DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

PAGE ____

1   Larry McFarland, Esq.

2           50.        Edmond Lee.  Mr. Lee is the Managing Director of MGA

3   Entertainment (HK) Limited.  Mr. Lee may possess knowledge of some aspect or

4   aspects of the development and manufacture of the "contested" MGA Products

5   (including, without limitation, "Bratz" dolls, "Bratz Petz," the "Bratz Funky

6   Fashion Makeover Head," "4-Ever Best Friends," "Mommy's Little Patient," and

7   "Alien Racers") and "Prayer Angels;" Mattel's serial copying of MGA's products;

8   Mattel's threats to and intimidation of retailers, suppliers, licensees, distributors,

9   manufacturers, and former employees and freelancers; and knowledge of facts in

10  support of MGA's defenses to Mattel's counterclaims.  Mr. Lee may be contacted

11  through MGA's counsel of record.

12          51.        Stephen Lee.  Mr. Lee is the former managing director of MGA

13  HK.  Mr. Lee may possess information relevant to some aspect or aspects of

14  MGA's creation, design and development of MGA's "Bratz" dolls, including the

15  first generation of those dolls.

16          52.        Steve Linker.  Mr. Linker is a former Mattel employee and

17  freelancer.  He was deposed on September 13, 2006 and possesses the information

18  set forth in his deposition testimony.

19          53.        Diana Luna.  Ms. Luna is MGA's Director of International

20  Licensing.  Ms. Luna has knowledge of MGA's licensing of "Bratz"

21  internationally.  Ms. Luna may be contacted through MGA's counsel of record.

22          54.        Kris Lynch.  Ms. Lynch is a former Mattel employee and may

23  possess knowledge of Mattel's "Diva Starz" project and other non-Barbie products.

24          55.        Carlos Gustavo Machado Gomez.  Mr. Machado is an employee

25  of MGA.  Mr. Machado may possess knowledge of facts in support of MGA's

26  defenses to Mattel's RICO and trade secret counterclaims.  Mr. Machado may be

27  contacted through his counsel of record.

28          56.        Dave Malacrida.  Mr. Malacrida is MGA's V.P. of Public

1   Relations.  Mr. Malacrida was deposed in August, 2007, and possesses the

2   information set forth in his deposition testimony.  Mr. Malacrida may be contacted

3   through MGA's counsel of record.

4           57.    Julia Marine.  MGA believes that Ms. Marine is a current Mattel

5   employee.  Ms. Marine was deposed on September 21, 2006, November 8, 2006

6   and June 27, 2007 and possesses the information set forth in her deposition

7   testimony.

8           58.    Veronica Marlowe.  Ms. Marlowe formerly was a freelance

9   designer for MGA.  Ms. Marlowe may possess information relevant to some aspect

10  or aspects of the creation and design of MGA's "Bratz" dolls; and Mattel's threats

11  to and intimidation of former employees and/or freelancers.  Ms. Marlowe may be

12  contacted through her counsel Larry McFarland, Esq.

13          59.    Liliana Martinez.  MGA believes that Ms. Martinez currently is

14  a Mattel employee.  Ms. Martinez was deposed on May 20, 2005 and possesses the

15  information set forth in her deposition as well as information concerning Mattel's

16  creation, design and development of its "My Scene" line of fashion dolls.

17          60.    Mary Carmen Mendez.  MGA believes that Ms. Mendez is a

18  former Mattel employee.  Ms. Mendez may possess knowledge about Mattel's

19  unfair competitive practices.

20          61.    Jill Nordquist.  MGA believes that Ms. Nordquist currently is a

21  Marketing Director at Mattel.  Ms. Nordquist was deposed on July 31, 2007 and

22  possesses the information set forth in her deposition testimony.

23          62.    Victoria O'Connor.  Ms. O'Connor formerly worked as MGA's

24  V.P. of Licensing.  Ms. O'Connor possesses information relevant to some aspect or

25  aspects of the timing of MGA's acquisition of rights in the original "Bratz"

26  drawings by Bryant and the design and licensing by MGA of the first generation of

27  "Bratz" dolls.  Ms. O'Connor also possesses information relevant to MGA's

28  negotiations with Bryant and his attorney for the acquisition of the rights in the

EXHIBIT _____          - 11 -

PAGE _____

MGA'S SUPP. DISCLOSURES AND MGA HK,
MGA MEXICO, AND LARIAN'S INITIAL
DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

1  original "Bratz" drawings.  Ms. O'Connor may also possesses information relevant

2  to some aspect of aspects of MGA's licensing of the "Bratz" concept; Mattel's

3  serial copying of MGA's distinctive trade dress, trademarks, product packaging,

4  themes, ideas, and advertising; and Mattel's threats to and intimidation of licensees.

5        63.     Colleen O'Higgins.  Ms O'Higgins formerly worked as a

6  Product Manager at MGA.  Ms. O'Higgins may possesses information relevant to

7  the timing or creation of "Bratz" and some aspect or aspects of the marketing of

8  "Bratz."

9        64.     Kislap Ongchango.  MGA believes that Mr. Ongchango

10  currently is a Mattel employee.  Mr. Ongchango was deposed on April 24, 2007

11  and possesses the information set forth in his deposition testimony.

12        65.     Rod Palmer.  MGA believes that Mr. Palmer currently is a

13  Mattel employee.  Mr. Palmer was deposed on June 26, 2007 and possesses the

14  information set forth in his deposition testimony.

15        66.     Ann Parducci.  MGA believes that Ms. Parducci is a former

16  Mattel employee.  Ms. Parducci may possess information relevant to Mattel's

17  practices regarding Mattel's creation, design and development of fashion dolls,

18  Mattel's reaction to "Bratz," Bryant's work at Mattel and Mattel's knowledge of

19  Bryant's involvement in the design of the first generation of MGA's "Bratz" dolls.

20        67.     Cassidy Park.  MGA believes that Ms. Park is a current or

21  former Mattel employee.  Ms. Park was deposed on March 2, 2005 and possesses

22  the information set forth in her deposition testimony.

23        68.     Tom Park.  Mr. Park is a former MGA employee.  Mr. Park may

24  possess knowledge of facts in support of MGA's defenses to Mattel's RICO and

25  trade secret counterclaims.

26        69.     Rene Pasko.  MGA believes that Ms. Pasko currently is a Mattel

27  employee.  Ms. Pasko was deposed on June 13, 2007 and possesses the information

28  set forth in her deposition testimony.

EXHIBIT _____          - 12 -

PAGE _____

MGA'S SUPP. DISCLOSURES AND MGA HK,
MGA MEXICO, AND LARIAN'S INITIAL
DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

70.    Tina Patel.  Ms. Patel was a Brand Manager for "Bratz" while employed by MGA and later became a Mattel employee but, to MGA's knowledge, is no longer a Mattel employee.  Ms. Patel may possess information relevant to Mattel's investigation of MGA and its executives, employees and freelancers, and other aspects of Mattel's unfair competition and unclean hands.

71.    Ninette Pembleton.  Ms. Pembleton is MGA's V.P. of Operations.  Ms. Pembleton may possess knowledge of some aspect or aspects of the creation and design of MGA products, including "Mommy's Little Patient" and "Alien Racers"; Mattel's serial copying of MGA's products (including, without limitation, "Bratz" dolls, "Bratz Petz," the "Bratz Funky Fashion Makeover Head," "4-Ever Best Friends," "Mommy's Little Patient," and "Alien Racers"); and Mattel's serial copying of MGA's distinctive trade dress, trademarks, product packaging, themes, ideas, and advertising.  Ms. Pembleton may be contacted through MGA's counsel of record.

72.    Joni Pratt.  MGA believes that Ms. Pratt currently is a Mattel employee.  Ms. Pratt was deposed on June 1, 2007 and possesses the information set forth in her deposition testimony.

73.    Ramona Prince.  Ms. Prince is a notary public and was deposed in 2004.  She possesses information relevant to some aspect or aspects of the timing of Mr. Bryant's creation of the original "Bratz" drawings.  Ms. Prince may be contacted through her counsel of record.

74.    Jesse Ramirez.  Mr. Ramirez is the owner of South Bay Molds and may possess information relevant to the timing of MGA's design of the first generation of "Bratz" dolls, specifically with respect to the creation of molds therefor.

75.    David Rosenbaum.  Mr. Rosenbaum is MGA's former counsel.  He possesses information relevant to the negotiation of the MGA-Bryant contract.

76.    Ivy Ross.  MGA believes that Ms. Ross is a former Mattel

EXHIBIT _____   - 13 -   MGA'S SUPP. DISCLOSURES AND MGA HK, MGA MEXICO, AND LARIAN'S INITIAL DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

PAGE _____

1  employee.  Ms. Ross may possess information relevant to Mattel's employment

2  policies and practices, practices regarding Mattel's creation, design and

3  development of fashion dolls, Bryant's work at Mattel, Mattel's investigation of

4  MGA and its executives, employees and freelancers and other aspects of Mattel's

5  unclean hands.

6        77.      Shirin Salemnia.  Ms. Salemnia is a Research Manager for

7  MGA.  Ms. Salemnia may possess information relevant to the packaging, themes,

8  ideas, advertising and market research related to MGA's products (including,

9  without limitation, "Bratz" dolls, "Bratz Petz," the "Bratz Funky Fashion Makeover

10  Head," "4-Ever Best Friends," "Mommy's Little Patient," and "Alien Racers").

11  Ms. Salemnia may be contacted through MGA's counsel of record.

12        78.      Chuck Scothon.  MGA believes that Mr. Scothon currently is a

13  General Manager and Senior VP of Girls at Mattel Brands.  Mr. Scothon may

14  possess knowledge of Mattel's serial copying of MGA's distinctive trade dress,

15  trademarks, product packaging, themes, ideas, and advertising; Mattel's dilution of

16  MGA's famous marks; Mattel's interference with MGA's advertising efforts;

17  Mattel's threats to and intimidation of retailers, suppliers, licensees, distributors,

18  manufacturers, and former employees and freelancers; Mattel's improper influence

19  of standard-setting and industry organization; and Mattel's manipulation of MGA's

20  retail displays.

21        79.      Shelly Shibata.  Ms. Shibata is MGA's Senior Director of New

22  Dolls and Toys.  Ms. Shibata may possess information relevant to licensing of and

23  style guides for MGA's "Bratz" dolls.  Ms. Shibata may be contacted through

24  MGA's counsel of record.

25        80.      Aileen Storer.  Ms. Storer currently is Creative Director of Bratz

26  & Dolls for MGA.  Ms. Storer may possess information relevant to some aspect or

27  aspects of the creation and design of packaging, logos and branding of MGA

28  products, including  without limitation the first generation of "Bratz" dolls..  Ms.

EXHIBIT ____          - 14 -          MGA'S SUPP. DISCLOSURES AND MGA HK,
                                      MGA MEXICO, AND LARIAN'S INITIAL
PAGE ____                             DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)

1    Storer may be contacted through MGA's counsel of record.

2         81.      Steven Tarmichael.  Mr. Tarmichael is a freelance hair rooter

3    and worked as such for MGA in connection with some of MGA's "Bratz" dolls.

4    Mr. Tarmichael may possess information relevant to some aspect or aspects of the

5    design of "Bratz" dolls, including without limitation the first generation of "Bratz"

6    dolls.

7         82.      Mariana Trueba.  Ms. Trueba is an employee of MGA Mexico.

8    Ms. Trueba may possess knowledge of facts in support of MGA's defenses to

9    Mattel's RICO and trade secret counterclaims.  Ms. Trueba may be contacted

10   through MGA's counsel of record.

11        83.      Pablo Vargas.  Mr. Vargas is an employee of MGA Mexico.

12   Mr. Vargas may possess knowledge of facts in support of MGA's defenses to

13   Mattel's RICO and trade secret counterclaims.  Mr. Vargas may be contacted

14   through MGA's counsel of record.

15        84.      Ann Wang.  Ms. Wang may possess information relevant to the

16   negotiation of the MGA-Bryant contract.

17        85.      Mercedah Ward.  MGA believes that Ms. Ward is a former

18   Mattel employee.  Ms. Ward also is a former MGA employee.  Ms. Ward possesses

19   information relevant to aspects of the creation, design and development of the first

20   generation of MGA's "Bratz" dolls, Mattel's serial copying of MGA's products

21   (including, without limitation, "Bratz" dolls, "Bratz Petz," the "Bratz Funky

22   Fashion Makeover Head," "4-Ever Best Friends," "Mommy's Little Patient," and

23   "Alien Racers"); Mattel's serial copying of MGA's distinctive trade dress,

24   trademarks, product packaging, themes, ideas, and advertising; and Mattel's

25   dilution of MGA's famous marks.

26        86.      Sandy Yonemoto.  MGA believes that Ms. Yonemoto is the

27   Manager of Human Resources Communications at Mattel.  Ms. Yonemoto was

28   deposed on May 30, 2007.  She possesses the information set forth in her deposition

EXHIBIT _____          - 15 -          MGA'S SUPP. DISCLOSURES AND MGA HK,
                                       MGA MEXICO, AND LARIAN'S INITIAL
PAGE _____                             DISCLOSURES UNDER R. 26 (CV 04-09049 SGL)