QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| Defendant. | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]** |
| AND CONSOLIDATED ACTIONS | [PUBLIC REDACTED] MATTEL, INC.'S OPPOSITION TO MGA'S SUPPLEMENTAL AND SECOND MOTION TO QUASH |
| | Hearing Date:   TBA<br>Time:               TBA<br>Court Room:   TBA |
| | [Declarations of Jon D. Corey, Cyrus Naim, Bridget Hauler, and Tamar Buchakjian filed concurrently herewith] |
| | **Phase I**<br>Discovery Cut-off:      January 28, 2008<br>Pre-trial Conference:   May 5, 2008<br>Trial Date:                 May 27, 2008 |

07209/2411279.3

## **Preliminary Statement**

The MGA defendants' supplemental motion to quash was filed for one reason: delay.  It contains no meritorious arguments.  It is an attempted end run around Judge Larson's January 7, 2008 Order granting Mattel's motion for leave to take additional discovery and his February 4, 2008 Order regarding Mattel's *ex parte* applications, nothing more.

First, the MGA defendants argue that although Judge Larson granted Mattel leave to take additional, specific depositions, those depositions should count toward its initial allotment of 24 depositions allocated by the initial scheduling order.  Judge Larson has already rejected this same argument at a February 4 hearing, holding that his "January 7, 2008 order granted leave to take additional discovery *over and above* the previously allocated 24 per side."

Next, the MGA defendants argue that the depositions of Cabrera and Morales should be delayed until Judge Larson rules on the issue of alleged witness tampering.  This issue, however, is not before Judge Larson because the MGA defendants have failed to file a motion, nor does Judge Larson want to hear about it.  Further, the allegations are baseless.  Mattel conducted an internal investigation to explore the breathtaking revelation at the December 28, 2008 deposition of MGA's agent, Veronica Marlow, that three current Mattel employees were working on Bratz products.  The investigation was justified and proper.  If the witnesses have an issue with how they were treated, then they are free to raise it.  Unless it is conceding that it is responsible for and complicit with these three now-former Mattel employees, MGA has no standing to complain on their behalf.  Nor has it made any showing that Mattel's inquiries will affect their testimony in this matter in any way.

The MGA defendants also misrepresent Judge Larson's orders by contending that subpoenas served on Wachovia and Moss Adams should be quashed. These witnesses, however, are included in the Court's January 7 Order granting Mattel leave to take additional depositions.  Any doubt about this question was recently

resolved, on February 4, 2008, when Judge Larson clarified that he "meant to grant all parts" of Mattel's motion for leave ("except the relief sought to the deposition of Carter Bryant").  Further, the deposition topics attached to Wachovia and Moss Adams' subpoenas relate to the grounds articulated in Mattel's motion for leave to take additional depositions.

The MGA defendants also improperly attempt to interfere with Judge Larson's order to show cause by requesting that subpoenas for the depositions of Larry McFarland, Sarah Halpern, Lucy Arant, and Peter Marlow be "quashed."  This issue is currently before Judge Larson.  Because these witnesses intentionally evaded service, Judge Larson issued an Order to Show Cause to McFarland and his clients why they should not be ordered to appear for deposition.

The MGA defendants also attempt to quash seven subpoenas on the grounds of insufficient notice.  This argument also fails because Judge Larson has already granted leave to take these depositions in February, so any complaint about lack of notice is moot (and even so, notice of the original deposition date was reasonable under the circumstances).  Three of the witnesses were the Mattel employees who only recently were discovered to have also worked on Bratz.  They were served with subpoenas as soon as practical following disclosure.

Finally, the MGA defendants' argument that the depositions of Daphne Gronich and Joseph Tiongco should be quashed because they have fulfilled their 30(b)(6) obligations regarding document preservation has already been rejected by Judge Larson.  Moreover, even if MGA has fulfilled its 30(b)(6) obligations, the depositions of Gronich and Tiongco should proceed.  Mattel does not seek to depose them as 30(b)(6) witnesses, but as percipient witnesses identified *by MGA* as having important, first-hand information regarding document preservation and spoliation.

1

2

**Argument**

3   I.   **THE COURT HAS ALREADY DECIDED THAT MATTEL REMAINS**

4   **ENTITLED TO TAKE 24 DEPOSITIONS SEPARATE FROM AND IN**

5   **ADDITION TO THOSE GRANTED ON JANUARY 7, 2008**

6        In its original motion, MGA argued that Mattel was not entitled to 24

7   depositions in addition to those granted on January 7, 2008.  That argument was

8   overruled when Judge Larson ordered that the January 7, 2008 Order would not

9   deprive Mattel of discovery it was already entitled to.  Now, in its second amended

10  motion, MGA simply repeats its same argument, i.e., that depositions that Just

11  Larson allowed Mattel to take in his January 7, 2007 Order count against the 24

12  depositions that Mattel is entitled to in the Scheduling Order.  Judge Larson has

13  squarely rejected that.

14       On November 19, 2007, Mattel filed a Motion for Leave to Take Additional

15  Discovery.  On January 7, 2008, the Court granted Mattel's Motion.[1]  In its motion,

16  MGA claimed that by finding good cause for Mattel to depose specific, identified

17  witnesses, the Court intended to deprive Mattel of the six remaining depositions

18  slots under the original Scheduling Order.  Mattel disagreed and, consistent with

19  Judge Larson's Order, noticed the depositions of Woods, NPD, Salazar, Cabrera and

20  Morales.

21       As the result of MGA's objections to these depositions, Mattel filed an *Ex*

22  *Parte* Application to Compel the Appearance for Deposition of Ana Cabrera,

23  Beatriz Morales, and Maria Salazar and Mel Woods.  In those papers, Mattel

24  showed that it had taken only 18 of its 24 depositions allotted to it.  MGA argued

25

26

27       [1]   January 7, 2008 Minute Order, attached as Exhibit 1 to the concurrently filed
Declaration of Jon D. Corey ("Corey Dec.").

28

-3-

1  that Mattel had taken all the depositions to which it was entitled because Judge

2  Larson did not identify them as witnesses that Mattel could depose in his January 7,

3  2008 Order.

4       Judge Larson confirmed that his Order was not intended to deprive Mattel of

5  any of its 24 depositions and that the additional depositions were "*over and above*"

6  the 24 depositions to which Mattel was already entitled:

7           The Court's January 7, 2008, order granted leave to take

8           additional discovery *over and above* the previously

9           allocated 24 depositions per side.[2]

10      MGA now improperly challenges that Order, arguing yet again that Mattel

11  should be prohibited from taking the remaining depositions.  MGA argues that,

12  although Judge Larson granted Mattel depositions *in addition* to its original

13  allotment of 24, the 24 count must be reduced by depositions taken since the motion

14  was filed, but before the Order was issued.  This simply ignores the plain language

15  of Judge Larson's Order, and his clear statement at the hearing:

16           There is no question, to the Court's thinking -- and I will

17           make this clear today -- that the 40 I awarded to Mattel

18           and the ten additional ones I awarded to MGA *were in*

19           *addition to the 24 that they received.*[3]

20      Accordingly, the only issue remaining -- and which Judge Larson deferred to

21  the Discovery Master -- is one of counting, i.e., how many depositions has Mattel

22  taken separate from the depositions permitted in the January 7, 2008 Order.

23

24  _____

25      [2]  February 4, 2008 Minute Order at 4, Corey Dec., Exh. 2; February 4, 2008
26  Hearing Tr. at 51:5-8 ("There is no question, to the Court's thinking – and I will
    make this clear today -- that the 40 I awarded to Mattel . . . were in addition to the
27  24 that they received."), Corey Dec., Exh. 3.
28      [3]  February 4, 2008 Hearing Tr. at 51:5-8 (emphasis added), Corey Dec., Exh. 3.

1           Now, I will leave it to Judge Infante to count up the

2           number of depositions that had been taken prior to your

3           noticing these four additional ones.  If that number comes

4           up to be 20 or less, then they're in.  If that number comes

5           up to be 24 or more, then they're out.[4]

6     In claiming that Mattel has reached its 24 deposition limit, MGA includes

7 Margaret Leahy, Veronica Marlow, Elise Cloonan and Jeanne Galvano.  <u>But each of</u>

8 <u>those depositions were authorized as additional depositions in the Court's January 7,</u>

9 <u>2008 Order.</u>[5]  For the same reasons MGA's position is completely untenable, and

10 contrary to the Court's February 4, 2008 Order.[6]

11      In sum, Mattel has taken only 18 depositions.  Mattel is permitted to take six

12 further depositions under the Court's February 2007 Scheduling Order.  Mattel has

13 elected to use five of those six to depose Mel Woods, NPD Group Inc., Ana

14 Cabrera, Beatriz Morales and Maria Elena Salazar.[7]  The Motion, therefore, should

15 be denied.

16

17 _____

18   [4]  February 4, 2008 Hearing Tr. at 51:9-14, Corey Dec., Exh. 3.

19   [5]  January 7, 2008 Minute Order, Corey Dec., Exh. 1; Notice of Motion and Motion of Mattel, Inc. for Leave to Take Additional Discovery and Objections to

20 Discovery Master Order of September 28, 2007, dated November 19, 2007 ("Motion for Additional Discovery") at 9-11, 12-13, Corey Dec., Exh. 4.

21   [6]  Mattel has conducted only 18 depositions separate from the depositions specifically ordered as additional depositions pursuant to the Court's January 7,

22 2008 Order.  Those depositions were of: Carter Bryant, Victoria O'Connor,

23 Jacqueline Prince, Isaac Larian, Steve Linker, Paula Garcia, Brooke Gilbert, Kerri Brode, Dave Malacrida, Janet Bryant, Thomas Bryant, Schuler Bacon, Richard

24 Irmen, Sarah Chui, Maureen Tkacik, Denise O'Neal, MGA 30(b)(6) designees

25 (Kerri Brode, Charmayne Brooks, Kenneth Lockhart, Bryan Armstrong, Lisa Tonnu, Rebecca Harris, Samir Khare, Spencer Woodman, Paula Garcia), and an

26 MGA Hong Kong 30(b)(6) designee (Edmond Lee). Corey Dec., ¶ 2.

27   [7]  The NPD Group, Inc. subpoena was not addressed in Mattel's Ex Parte

28 Application.

**II.** **MGA'S REPRESENTATION THAT JUDGE LARSON REQUIRED THAT AN EVIDENTIARY HEARING BE CONDUCTED BEFORE THE DEPOSITIONS OF CABRERA AND MORALES ARE CONDUCTED IS FALSE**

MGA makes serious allegations of witness tampering by Mattel, claiming that its investigation of its own employees—Cabrera and Morales, who acknowledged secretly working on Bratz—was illegal.  MGA's assertions have no bearing on whether the depositions should proceed.  The Discovery Master should be aware that MGA has already repeatedly attacked Mattel for the manner in which it conducted the investigation.  Judge Larson has reviewed those facts, which have been fully briefed.  MGA's representation that Judge Larson required an evidentiary hearing under § 1512 before allowing the depositions of Cabrera and Morales to proceed is false.  The transcript shows as much:

> MR. NOLAN:  Your Honor, one last bit because there was a filing before your Honor, just very quickly.  I notice that Mattel did file a reply.
>
> THE COURT:  They -- this is with respect to the other issue regarding those three -- or the two witnesses?
>
> MR. NOLAN:  Seamstresses, right.
>
> THE COURT:  The seamstresses.  I did read that.  I understand there are two sides to that story.  I don't think the Court needs to resolve that at this point.  If and when that becomes relevant to some other issue, we will take that up, but I've read your position, I've read Mattel's reply to that.  I'm sure you may take exception to some of the things that Mattel stated in that, but there's no need at this point in time to spend time focusing on this issue right now. *Let's go forward.*

1          MR. NOLAN:  Right, your Honor.  The only point

2   that we wanted to make, your Honor, is that *at some point*

3   *in time we may ask for a hearing* because I know you want

4   to hold on to this issue.  I think that was the term you used

5   last time.

6          THE COURT:  Sure.

7          MR. NOLAN:  We do believe that it raises a very

8   serious issue under 1512 of Title 18 about intimidation of

9   witnesses and that a hearing may be required on the

10  matter. We will continue to let this thing develop a little

11  bit, but we are going to reserve that issue and bring it back

12  to you rather than Judge Infante at your request.

13         THE COURT:  So observed, Counsel.  Thank you.[8]

14      In other words, *MGA¸* not Judge Larson, stated that it would bring a motion

15  on the issue, if Judge Larson requested one.  The Court has not done so.  MGA has

16  not filed any such motion.  As set forth below, there is <u>no basis</u> for such a motion.

17  Mattel has already shown Judge Larson that MGA's complaints about the

18  investigation are beset with misstated facts and law.

19

20  **III.**   **<u>MATTEL'S INTERVIEWS OF ITS OWN EMPLOYEES WERE NOT</u>**

21         **<u>ILLEGAL</u>**

22      Seeking to deflect attention from its long-standing failure to disclose the fact

23  that Mattel employees were secretly working on Bratz under false names -- <u>notably</u>

24  <u>all in violation of Court Orders compelling such disclosures</u> -- MGA argues that

25

26  ————————————

27     [8]   February 11, 2008 Hearing Tr. at 16:5-17:6 (emphasis added), Corey Dec.,

28  Exh. 5.

Mattel's interviews of these employees were illegal.[9]  The need for Mattel to conduct the investigation arose when Veronica Marlow testified at her December 28, 2007 deposition that three Mattel employees -- including a long-time employee whom Mattel had trusted and promoted to a supervisory position -- had been secretly working on Bratz for *years*.[10]  MGA's agent, Veronica Marlow, made hidden payments to them and assisted the employees' use of false social security numbers to do so.[11]  Ms. Cabrera and Ms. Morales, who were then still working at Mattel, continued to work on Bratz even after they had learned about this action: litigation involving Bryant's secret work with MGA while employed by Mattel.[12]

Mattel was closed during the end - of - 2007 holidays.  Upon reopening, two Mattel representatives, one from Human Resources and another from Security, interviewed Ms. Cabrera and Ms. Morales.  Ms. Cabrera <u>admitted</u> to having worked on more than *70* Bratz doll products while a Mattel employee; Ms. Morales to working on *50*.[13]  Both admitted knowing this was wrong.[14]  Both admitted that they tried to hide their tracks by receiving cash payments under false names and false

---

[9]  MGA refers to 18 U.S.C. § 1512 without citation to any authority to support its "witness tampering" assertion.  MGA has never cited any authority to Judge Larson that renders this statute applicable here, which on its face applies to criminal, not civil proceedings.  <u>See</u> Victim and Witness Protection Act of 1982, Pub. L. No. 97-291 §2(b), 96 Stat. 1248 (1982) (stating that purpose of law is to protect "crime victims and witnesses in the criminal justice process").  MGA's false claim that Judge Larson required a hearing on this issue further discredits its argument.

[10]  Deposition Transcript of Veronica Marlow, dated December 28, 2007 ("Marlow Depo. Tr.") at 306:14-308:1, 363:15-365:17, Corey Dec., Exh. 6.

[11]  Transcript of the interview of Ana Cabrera, dated January 2, 2008 ("Cabrera Tr."), at 118:3-119:23, Corey Dec., Exh. 7; transcript of the interview of Beatriz Morales, dated January 14, 2008 ("Morales Tr."), at 115:2-20, Corey Dec., Exh. 8.

[12]  Cabrera Tr. at 39:25-40:20, 46:3-22, Corey Dec., Exh. 7.

[13]  Naim Dec., ¶¶ 2-3.

[14]  Cabrera Tr. at 117:10-118:8, Corey Dec., Exh. 7; Morales Tr. at 24:14-25:14, 27:11-17, Corey Dec., Exh. 8.

1   social security numbers.[15]  Ms. Cabrera alone received in excess of $100,000.[16]

2   Mattel had no choice but to terminate their employment.

3        MGA now attacks Mattel's investigation yet again.  First, it repeats its

4   complaint that Mattel's interviews were conducted "without counsel present" and

5   without advising the employees of "any rights they may have had to refuse to

6   answer the company's questions." (Motion at 9.)  MGA cites no authority that

7   employees are so entitled to counsel.  There is no such authority.  An employee is

8   not entitled to "remain silent" simply because an issue arises that could result in

9   their termination.  In the workplace, employees have no Fifth Amendment rights,

10  and no right to counsel, absent government action.  <u>E.g.</u>, <u>TRW v. Superior Court</u>, 25

11  Cal. App. 4th 1834, 1847, 31 Cal. Rptr. 2d 460 (1994) (rejecting application of Fifth

12  Amendment and holding that employee did not have a right to counsel when

13  employer requested interview regarding alleged security violations).

14       Second, and again without supporting legal authority, MGA objects that

15  Mattel conducted the interviews without an interpreter.  Both employees worked for

16  many years at Mattel in El Segundo—in Ms. Cabrera's case for over a decade—

17  without the assistance of an interpreter.  As the audiotapes of the interviews also

18  show, Ms. Cabrera and Ms. Morales also were able to communicate clearly and

19  calmly during the interviews.  Mattel has provided a copy of the audiotape to

20  counsel.

21       Finally, MGA complains that "[o]ver Ms. Cabrera's protest, [Mattel] seized

22  boxes of materials from her garage," and quotes Ms. Cabrera as saying, "I don't

23  want to leave here, but if I have to go, I go." (Motion at 10.)  Yet the transcript

24

25

26  _____

27  [15]  Cabrera Tr. at 46:3-22, 118:3-19:23, Corey Dec., Exh. 7; Morales Tr. at 24:14-25:14, 27:11-17, 115:2-20, Corey Dec., Exh. 8.

28  [16]  Naim Dec., ¶ 4.

1   reveals that, far from stating her unwillingness to gather the documents from her

2   garage, Ms. Cabrera was stating that she did not want to be fired from Mattel:

3   ███████████████████████████

4   ███████████████████████████

5   ███████████████████████████

6   ███████████████████████████

7   ███████████████████████████

8   ███████████████████████████

9   ███████████████████████████

10  ███████████████████████████

11  ███████████████████████████

12  ███████████████████████████

13  ███████████████████████████

14  ███████████████████████████

15  ███████████████████████████

16  ███████████████████████████

17  ████[17]

18  In any event, the parties and Ms. Cabrera's counsel are currently meeting and

19  conferring regarding the evidence contained in those boxes, with the intention that

20  they will be able to resolve their dispute without Court intervention.  There is simply

21  no basis for MGA's attacks on Mattel's internal investigation.

22

23

24

25

26

27  _____

28  [17]   Cabrera Tr. at 72:10-73:2 (emphasis added), Corey Dec., Exh. 7.

IV.   **THERE ARE NO GROUNDS FOR QUASHING THE WACHOVIA AND MOSS ADAMS DEPOSITION SUBPOENAS**

A.   **Judge Larson Unquestionably Granted Mattel Leave to Depose Wachovia and Moss Adams**

The MGA defendants' suggestion that Wachovia and Moss Adams are not subject to the January 7 Order because it refers to "individual depositions" and not Rule 30(b)(6) depositions (Supp. Motion, 11:12-14) misrepresents that Order and ignores the Court's February 4, 2008 Order.  The January 7 Order granted "Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11)."[18]  Wachovia and Moss Adams are included in the Court's designation.[19]  There is no reason to read "individual depositions" to exclude Wachovia and Moss Adams.

Even if the Court's first order on the subject left some ambiguity on the subject -- which it does not -- the Court has clarified the broad scope of its first order.  On February 4, 2008 Order, the Court held that it "meant to grant all parts of Mattel's Motion for Leave to Take Additional Discovery ... except the relief sought as to the deposition of Carter Bryant."[20]  Thus, there is no doubt that the Court found good cause to take the depositions of Wachovia and Moss Adams.

---

[18]   January 7, 2008 Minute Order at 3, Corey Dec., Exh. 1.
[19]   Motion for Additional Discovery at 11, Corey Dec., Exh. 4.
[20]   February 4, 2008 Minute Order at 3-4 (emphasis added), Corey Dec., Exh. 2.

OPPOSITION

**B.** **Judge Larson Knew that Wachovia and Moss Adams Were Corporations Whose Notices Required Topics to Comply with Rule 30**

The MGA defendants' request that the Discovery Master quash the Wachovia and Moss Adams deposition subpoenas is an attempted end run around Judge Larson's January 7, 2008 Order.  Judge Larson granted Mattel leave to depose Wachovia and Moss Adams because Mattel had demonstrated "good cause" to do so.  Specifically, Mattel's requested -- and the Court granted -- leave to take the deposition of Wachovia because it is a "bank identified as being involved in early Bratz financing and knowledgeable about MGA's net worth or value" and to take the deposition of Moss Adams because it is an "accounting firm with knowledge of MGA's profits and distributions thereof to Larian (who owns 90%) of MGA's shares."[21]

Further, the Mattel defendants ignore that the only way to depose a company or corporation is through a 30(b)(6) deposition notice, which requires the inclusion of deposition topics.  In other words, Judge Larson knew full well that Mattel would serve 30(b)(6) deposition topics on Wachovia and Moss Adams when he granted Mattel leave to take their depositions.

It is irrelevant that the Court did not review the 30(b)(6) deposition topics later served, because they relate to the subject matter identified in Mattel's motion.[22] For example, Wachovia Topic No. 1 is, "Any loan agreement or line of credit or other financing arrangement that Wachovia Corporation has entered into with MGA Entertainment, Inc., since January 1, 1999."  Topic No. 2 is, "the information provided to you by MGA Entertainment, Inc. for purposes of entering into any loan agreement or line of credit or other financing, at any time since January 1, 1999."

----

[21]   Motion for Additional Discovery at 11:18-20, Corey Dec., Exh. 4.
[22]   Exhs. 11 and 12 to the Supplemental Declaration of Paul Eckles.

OPPOSITION

Topic No. 3 seeks information related to MGA's "explanation or justification" for the financing provided by Wachovia.  Regarding net worth, Wachovia Topic No. 3 seeks information about "the assets of MGA Entertainment" and No. 4 seeks information about "the value of the assets of MGA Entertainment."  All of these topics relate directly to the two grounds articulated in Mattel's motion for leave to take additional depositions:  the funding of the development of Bratz and MGA's net worth.[23]

The same is true for the Moss Adams deposition topics.  For examples Moss Adams Topic 1 is "Isaac Larian's income from MGA Entertainment, Inc. or other sources between January 1, 2000 and the present."  Topic No. 2 seeks information about "Larian's net worth" since the inception of this action.  Other topics seek information about the Larian trusts, through which Larian owns the majority of MGA's stock.[24]  These topics relate to Mattel's showing of good cause; namely, the value of MGA and distributions it made to Larian. Further, the MGA defendants have failed to file a separate statement, as required, and neither Wachovia or Moss Adams have objected to the notice of depositions or deposition topics.

Finally, the MGA defendants refer to their motion to quash or modify the document subpoenas previously served on Wachovia and Moss Adams.  It does not follow, however, that quashing or modifying those subpoenas entails precluding their depositions altogether, especially in light of the Court's determination that Mattel has good cause to depose them.  In any event, Mattel opposes the MGA defendants motion to quash and has moved to compel production of relevant

---

[23]   Topic No. 5 seeks information about other lenders who provided a line of credit to MGA.  This too is likely to lead to information about the development of Bratz and MGA's net worth.

[24]   Topic Nos. 9, 10, 11, and 12.

OPPOSITION

documents.[25]  As explained in Mattel's briefs, Wachovia has provided at least two loans to MGA, one of which was used to fund the development of Bratz.  These documents are highly relevant to the timing of the development of Bratz, the value of Bratz, the net worth of the MGA defendants, and Mattel's disgorgement remedy.  Similarly, Moss Adams is Isaac Larian's accountant and as such possesses documents relevant to his net worth, payments made to third party witnesses, including current and former Mattel employees, and Mattel's disgorgement remedy.

## V.   THE MGA DEFENDANTS CANNOT QUASH WHAT HAS NOT BEEN SERVED

The MGA defendants seek to "quash" subpoenas served on Cecilia Kwok, Stephen Lee, Mercedeh Ward, Carol Witschell, and Eric Yip, among others, on the grounds that they were not served with subpoenas.  Their argument that the "deposition subpoenas not served ... should be quashed" is nonsensical.  (Suppl. Motion, 12:2-10).  If a subpoena has not been served, it cannot be quashed.  Indeed, such a ruling would be an improper advisory opinion.  To the extent the Court's January 7 Order held that new subpoenas could not be issued for Phase 1 witnesses, it speaks for itself.  Mattel has not attempted to serve any such subpoenas.

The MGA defendants also seek to quash the subpoenas for Jeff Weiss and Daphne Gronich.  Jeff Weiss, however, was properly served before January 29, 2008 and has agreed to appear for deposition in February.[26]  And Daphne Gronich

---

[25]   See Mattel, Inc.'s (1) Opposition to Motion to Quash; and (2) Countermotion to Compel, filed January 18, 2008, and Mattel, Inc.'s Reply in Support of Mattel's Inc.'s Countermotion to Compel, filed February 15, 2008.

[26]   Corey Dec., ¶ 2.  Mr. Weiss has agreed to appear for deposition on February 26, 2008.

1  was properly served.[27]  Accordingly, the Court's Order does not preclude the

2  depositions of Jeff Weiss and Daphne Gronich.  Other witnesses, as discussed

3  below, are subject to an Order to Show Cause and may yet be deposed by order of

4  the Court.

5

6  **VI.    THE MGA DEFENDANTS IMPROPERLY ATTEMPT TO**

7  **INTERFERE WITH THE COURT'S ORDER TO SHOW CAUSE**

8          The MGA defendants seek to "quash" subpoenas for witnesses that are

9  currently the subject of an Order to Show Cause recently issued by the Court.  The

10  MGA defendants conspicuously omit this information from their motion.  Because

11  McFarland and his clients have intentionally evaded service, on February 4, 2008,

12  Judge Larson issued an Order to Show Cause to Larry and his clients -- Sarah

13  Halpern, Lucy Arant, and Peter Marlow should not be ordered to appear for

14  deposition.

15          [T]he Court is concerned with the allegations by Mattel in

16          its ex parte application regarding certain actions of Larry

17          McFarland, who represents certain third-party witnesses.

18          Mattel submits that Mr. McFarland has been deliberately

19          evading service of a notice of deposition on him and his

20          clients -- serious allegations when made by an officer of

21          the Court against another officer of the Court.

22  _____

23     [27]  MGA's argument that Gronich was not served is untrue.  As attested by the

24  proof of service, Ms. Gronich was served personally with a deposition subpoena on

25  January 13, 2008, at 11:50 a.m.  Exh. 16.  The reference MGA makes to attempts to

   serve Ms. Gronich after January 13 refer to attempts to serve her *with another*

26  *subpoena*.  That was done out of an excess of caution when MGA's attorneys denied

   that Ms. Gronich had been served.  In an effort to put that issue to rest, Mattel

27  attempted to serve her again.  Such attempts obviously do not invalidate the service

28  of the original subpoena.

-15-

OPPOSITION

1            Accordingly, Mr. McFarland is ORDERED TO SHOW

2            CAUSE why he and his clients should not be ordered to

3            appear for deposition.

4        By this motion, the MGA defendants improperly ask the Discovery Master to

5    usurp a decision that Judge Larson has before him, namely the propriety of their

6    depositions.

7

8    **VII.   NONE OF THE SUBPOENAS SHOULD BE QUASHED ON THE**

9           **BASIS OF UNTIMELY NOTICE**

10        The MGA defendants' attempt to quash subpoenas served on seven witnesses

11    on the grounds that insufficient notice fails for two reasons. First, Mattel noticed a

12    number of depositions for January 28, 2008, the discovery cut-off date.  Some

13    witnesses asked that their depositions occur in February.  The Court granted Mattel

14    leave to take their depositions in February, mooting any purported inadequate notice

15    issue.  Second, Mattel served subpoenas upon three Mattel employees as soon as

16    practical following confirmation of the revelation that MGA and its vendors had

17    known of and concealed for years, i.e., that three current Mattel employees worked

18    on Bratz.  Again, the inadequate notice complaint is moot because counsel for these

19    witnesses cancelled their depositions.

20

21        **A.    MGA's Arguments Are Moot as to Koch, Gillmour, Myers and**

22           **Harris**

23        In its February 4, 2008 Order, the Court held that depositions that were

24    rescheduled after the discovery cut off pursuant to the witness' request, could

25    proceed:  "Phase 1 depositions that have been rescheduled past the discovery

26    deadline <u>for the convenience of the witnesses</u> or pursuant to the stipulation of the

27

28

parties and/or witnesses may proceed as scheduled."[28]  As discussed below, all four of these witnesses requested rescheduling of their depositions to February for their convenience.  Thus, the MGA defendants' argument that they were provided insufficient notice of the depositions of Andreas Koch, Kari Gillmour, Amy Myers, and Rachel Harris noticed for January 28, 2008, fails because the depositions were rescheduled -- with the MGA defendants' knowledge -- on or before the date of the deposition.

The MGA defendants' motion is also moot because the witnesses have either been deposed or agreed to appear on a date certain.  Koch has been deposed.  Myers is being deposed on the date this Opposition is filed.  Harris has agreed to appear on February 26 and Gillmour has agreed to appear on February 29.  Those depositions will go forward.

The MGA defendants' argument that they had insufficient time to prepare for these depositions falls flat.  By the time the initial deposition dates arrived for Koch, Gilmour, Myers, and Harris, Mattel informed the other parties that the witnesses had requested that their depositions be rescheduled to February.[29]  The depositions did not take place on January 28, 2008.  Thus, the MGA defendants experienced no prejudice due to alleged lack of notice.

The facts regarding Andreas Koch are instructive.  Mr. Koch was served on January 25, 2008.  He requested that his deposition be rescheduled to February.  After the Court's order allowing depositions rescheduled for the convenience of witnesses to proceed, Koch appeared for deposition on February 15, 2008.

Because Mr. Koch and the MGA defendants appeared, any objections to service or notice regarding the original subpoena are waived and moot.  Indeed, the

---

[28]   February 4, 2008 Minute Order at ¶ 3 (emphasis added), Corey Dec., Exh. 2.

1  MGA defendants prevented the witness -- who Skadden Arps does not represent --

2  from testifying about misconduct, including possible illegal activities, on the part of

3  Isaac Larian.[30]  Counsel for the MGA defendants went so far as to suspend the

4  deposition -- over the *witness'* objection -- because the witness allegedly needed

5  counsel, again something the witness denied.[31]  Mattel will need to conclude Mr.

6  Koch's deposition.  Indeed, it appears that the MGA defendants' belated motion to

7  "quash" these subpoenas is yet another attempt to suppress damaging evidence.

8         Although the depositions of Gilmour, Myers, and Harris depositions have not

9  yet occurred, they are similarly situated.  Upon being served with subpoenas, they

10 promptly requested that their depositions be rescheduled to February.  In each case,

11 the MGA defendants failed to even discuss rescheduling.[32]  Nevertheless, the

12 witnesses have agreed to appear for deposition on date's certain.

13        • Kami Gillmour.  On January 25, 2008, counsel for Gillmour left counsel for

14 Mattel requesting that the deposition be rescheduled and offering to provide

15 convenient dates.[33]  Then, on February 11, 2006, counsel for Ms. Gillmour

16 confirmed by e-mail that she would appear for deposition on February 26, 2008.[34]

17        • Amy Myers.  On January 26, 2008, Myers called counsel for Mattel and

18 asked to have her deposition rescheduled and re-located to a hotel in San Pedro,

19

20 _____

21    [29]   These witnesses were covered by the January 7, 2008 Order, which directed

22 the parties to cooperate in scheduling depositions and that depositions could be
   taken in February.

23    [30]   Deposition Transcript of Andreas Koch, dated February 15, 2008, at 111:25-

24 119:23, Corey Dec., Exh. 15.

25    [31]   Id.
      [32]   Corey Dec., ¶ 3.

26    [33]   Corey Dec., ¶ 5.

27    [34]   Declaration of Bridget Hauler, ¶ 3; Email from Bridget Hauler to John
   Petrullo, dated February 29, 2008, Hauler Dec., Exh. A; Amended Notice of

28 Deposition of Kami Gillmour, dated February 11, 2008, Corey Dec., Exh. 9.

1   close to where she lives.[35]  Counsel agreed.  Recently, Myers confirmed she will

2   appear for deposition on Friday, February 22, 2008.[36]  Counsel for the MGA

3   defendant is also planning on attending.

4         • <u>Rachel Harris</u>.  On January 28, 2008, Harris left a voice mail message with

5   counsel for Mattel asking that her deposition be rescheduled.[37]  When counsel

6   returned her call, she requested that her deposition proceed in February.  Recently,

7   Harris confirmed she will appear for deposition on February 26, 2008.[38]

8

9        **B.**   <u>**Service Was Reasonable Under the Circumstances**</u>

10           The MGA defendants also seek to quash the subpoenas served on three

11   other witnesses, Maria Salazar, Ana Cabreras and Beatriz Morales, because they

12   were supposedly given insufficient notice.  They fail to mention, however, that the

13   notice provided was a result at least partly of their own making, and reasonable

14   under the circumstances.  As discussed above, on December 28, 2008, Mattel

15   deposed Veronica Marlow and for the first time learned that three additional Mattel

16   employees had worked on Bratz while employed by Mattel.  The MGA defendants

17   had not disclosed this information to Mattel, despite specific questions seeking this

18   information.  Carter Bryant denied being aware of any other Mattel employee

19   working for MGA while he or she was employed by Mattel.[39]  MGA's <u>Rule</u> 30(b)(6)

20   designee on this topic, Lisa Tonnu, identified no one as having performed work or

21   services for MGA while also employed by Mattel at any time since 1998.[40]  MGA's

22   interrogatory responses entirely failed to name either Ms. Cabrera or Ms. Morales as

23

---

24   [35]   Corey Dec., ¶ 6.
     [36]   Declaration of Tamar Buchakjian, ¶ 2.
25   [37]   Corey Dec., ¶ 7.
26   [38]   Declaration of Bridget Hauler, ¶ 4; Amended Notice of Deposition of Rachel Harris, dated February 12, 2008, Corey Dec., Exh. 10.
27   [39]   Bryant Depo. Tr. at 286:25-287:5, Corey Dec., Exh. 17.

28

1   ever having worked on Bratz and claimed that Ms. Salazar, who subsequently

2   became an MGA employee, did not work on Bratz until more than two years after

3   she left Mattel.[41]

4          Upon receiving this startling information, Mattel immediately

5   commenced an investigation that concluded within two weeks (including a period

6   over the holidays when Mattel is closed).  The week following, Mattel began its

7   attempts to serve Salazar, Cabreras, and Morales.  They were served within days.

8   Notably, the MGA defendants made it even more difficult to serve Salazar.

9   Although MGA's counsel represents Salazar, they refused to acknowledge this fact

10  or accept service on her behalf when asked during a January 13, 2008 phone call,

11  and this delayed service of her subpoena.[42]

12          Under the circumstances, therefore, the notice given was reasonable.

13  The Federal Rules do not set a specific time in which notice must be given.  Rather,

14  it requires only that notice be "reasonable." Fed. R. Civ. P. 30(b)(1); 45(c)(3)(A)(i).

15  What is reasonable depends on the circumstances.  Here, the notice given was

16  reasonable in light of the belated revelation of important facts, the failure of the

17  MGA defendants to show prejudice or an inability to comply, and the MGA

18  defendants' failure to cooperate in scheduling depositions. Pearl v. Keystone

19  Consolidated Industries, 884 F.2d 1047, 1052 (7th Cir. 1989) (six days notice

20  reasonable in light of failure to show inability to appear or attempt to continue the

21  deposition); Hoang v. Trident Seafoods Corp., No. C06-1158, 2007 WL 2138780

22

23  ────────────────

24      [40]   Tonnu Depo. Tr. at 301:2-17, Corey Dec., Exh. 13.

25      [41]   MGA's Supplemental Responses to Mattel's Revised Third Set of
    Interrogatories, dated November 30, 2007, at 64-70, Corey Dec., Exh. 18.

26      [42]   Declaration Of Michael T. Zeller In Support Of Reply In Support Of Mattel,

27  Inc.'s Ex Parte Application To Compel The Appearance For Deposition Of Ana
    Cabrera, Beatriz Morales, Maria Salazar, And Mel Woods, dated February 1, 2008

28  (public redacted; without exhibits), at ¶ 2, Corey Dec., Exh. 19.

                                                                              OPPOSITION

1  (W.D. Wash. July 23, 2007) (five days notice reasonable because discovery cut-off

2  approaching and opposing party failed to seek continuance of deposition).

3

4  ## VIII.  THERE IS NO BASIS TO QUASH THE SUBPOENAS SERVED ON

5  ## DAPHNE GRONICH AND JOE TIONGCO

6

7  ### A.    The MGA Defendants' Argument is Moot

8      The MGA defendants' argument that Mattel's need to depose Gronich and

9  Tiongco was mooted by a <u>Rule</u> 30(b)(6) deposition *before* the Court issued its

10  January 7, 2008 Order (Suppl. Motion, at 15:9-16:2) is an improper attempt to seek

11  reconsideration.  Indeed, their argument that the depositions of Gronich and Tiongco

12  would be duplicative was mooted by the February 4, 2008 Order, which reiterated

13  Mattel's right to take the depositions of Gronich and Tiongco.  At the hearing on

14  Mattel's Ex Parte Application, the MGA defendants made the same arguments to

15  Judge Larson:  that Gronich's and Tiongco's testimony is unnecessary because of the

16  30(b)(6) deposition testimony of Lisa Tonnu and Kenneth Lockhart.[43]  Judge Larson

17  rejected that argument.  He ruled unequivocally that Mattel had leave to depose

18  them because of its showing of good cause about document preservation and

19  spoliation.[44]

20

21  ### B.    Even if MGA Had Fulfilled its 30(b)(6) Obligations, There is No

22  ### Basis to Quash the Gronich and Tiongco Depositions

23      The MGA defendants' argument that their 30(b)(6) depositions foreclose any

24  further discovery into their document retention, preservation, and collection efforts

25  rests on a fundamental misunderstanding.  Mattel does not seek to depose Tiongco

26  _____

27  [43]  February 4, 2008 Hearing Tr. at 30:14-32:5, Corey Dec., Exh. 3.

28  [44]  February 4, 2008 Minute Order at 3, Corey Dec., Exh. 2.

1    and Gronich as 30(b)(6) witnesses.  Rather, the Court found good cause for their

2    depositions as percipient witnesses on the issue of "retention and spoliation of

3    evidence."[45]  It is black-letter law that the taking of Rule 30(b)(6) depositions does

4    not prevent a party from taking the depositions of other relevant witnesses.  As the

5    Rule itself states, "[t]his subdivision (b)(6) does not preclude taking a deposition by

6    other procedure authorized in these rules."  See also Tri-State Hospital Supply

7    Corp. v. United States, 226 F.R.D. 118, 126 (D.D.C.) ("By its very nature, the

8    discovery process entails asking witnesses questions about matters that have been

9    the subject of other discovery.  There are, of course, only a finite number of

10   pertinent events in any lawsuit....").

11        The logical result of the MGA defendants' approach to 30(b)(6) depositions

12   would result in endless gamesmanship and the concealment of relevant evidence.  If

13   a party is able to foreclose any further discovery on a topic by providing a 30(b)(6)

14   witness, it will have every incentive to shelter witnesses who may possess damaging

15   information and put forth someone properly "educated" to give the answers it wants.

16   Percipient witnesses with first hand knowledge of the issues would be sheltered

17   from discovery and there would be no means by which to test a 30(b)(6) witnesses'

18   testimony.  That is not the law nor should it be.

19        The fact that Tiongco and Gronich possess personal, firsthand knowledge on

20   the subject of the 30(b)(6) depositions, and surely many other subjects, render their

21   depositions more, not less, necessary.  The MGA defendants' dismissive

22   characterization of the knowledge possessed by these witnesses (Supp. Motion,

23   16:21), is belied by their own actions and the testimony of the 30(b)(6) witnesses

24   they use as a basis to move to quash.  Gronich and Tiongco have been identified *by*

25

26

27   _____

28   [45] Id.

1  *MGA* as important witnesses concerning its document preservation activities,

2  including by the 30(b)(6) witnesses.[46]

3  <u>Conclusion</u>

4  For the foregoing reasons, the Court should deny the MGA defendants'

5  Supplemental and Second Amended Motion to Quash Deposition and Subpoenas.

6

7  DATED:  February 22, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

8

9

10  By  /s/  Jon D. Corey
      Jon D. Corey
11    Attorneys for Mattel, Inc.

12

13

14

15

16

17

18

19

20  _____

21  [46]   Gronich signed two declarations submitted to the Court detailing the MGA defendants' document retention and preservation efforts.  <u>See</u> Corey Dec., Exhs. 11,

22  12.  The MGA defendants' 30(b)(6) designee on document retention, Lisa Tonnu repeatedly deferred to Gronich's declaration and testified she did not know the

23  "specifics" referenced therein.  Deposition Transcript of Lisa Tonnu, dated

24  September 25, 2007, at 693:22-694:10; 697:5-22; 699:7-706:2; 707:25-710:2; 715:20-723:13, Corey Dec., Exh. 13.

25      Tiongco is the supervisor of the MGA defendants' other 30(b)(6) witness,

26  Kenneth Lockhart.  Lockhart testified that Tiongco had unique knowledge regarding MGA's document retention and preservation efforts.  Deposition Transcript of

27  Kenneth Lockhart, dated June 14 and 15, at 116:2-14, 150:25-151:5, 158:10-15.

28  258:17-259:9, 265:1-11, 266:12-267:5, Corey Dec., Exh. 14.