# EXHIBIT 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                        Date: January 7, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS
=======================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes                          Theresa Lanza
           Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:  **Christa Martine Anderson**     **John B. Quinn and Michael T. Zeller**

ATTORNEYS PRESENT FOR MGA:            ATTORNEY PRESENT FOR CARLOS
**Thomas J. Nolan**                       GUSTAVO MACHADO GOMEZ:
**Carl A. Roth**                          **Mark E. Overland**
**Anna Park**
                                     ATTORNEY PRESENT FOR NON-PARTY
ATTORNEY PRESENT FOR NON-            STERN & GOLDBERG: **Kien C. Tiet**
PARTIES ANA ELISE CLOONAN,
MARGARET HATCH-LEHY, AND             ATTORNEY PRESENT FOR NON-PARTY
VERONICA MARLOW: **Larry W.**             KAYE SCHOLER, LLP: **Bryant S. Delgadillo**
**McFarland**

PROCEEDINGS:   **ORDER GRANTING IN PART AND DENYING IN PART**
               **MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL**
               **DISCOVERY (DOCKET #1134)**

               **ORDER GRANTING MOTION TO ENFORCE THE COURT'S**
               **ORDER OF AUGUST 27, 2007, AND DENYING REQUEST FOR**
               **SANCTIONS  (DOCKET #1143)**

MINUTES FORM 90                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                      1                 Time: 1/30

EXHIBIT ___1___

PAGE ___5___

**ORDER GRANTING MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)**

**ORDER GRANTING CARTER BRYANT AND MGA DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)**

These matters were heard on January 7, 2008. The Court rules as set forth below.

To the extent that this Order decides issues more properly decided by the Discovery Master and/or preempts issues currently pending before the Discovery Master, it does so only to resolve those issues in the most expeditious manner possible. As the Court's order appointing the Discovery Master requires, any and all discovery disputes must be presented to the Discovery Master for his resolution.

**MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY (DOCKET #1134)**

This motion is **GRANTED IN PART**. Leave to take additional depositions and propound additional interrogatories are granted to the extent they are consistent with Fed. R. Civ. P. 26(b)(2). See Fed. R. Civ. P. 30(a)(2)(A) (depositions), 33(a) (interrogatories). Rule 26(b)(2) requires a Court to limit discovery where it is unreasonably cumulative or duplicative; where it can be obtained from a more convenient, less burdensome, or less expensive source; where a party has already had ample opportunity to obtain information from discovery; where the burden or the expense of the requested discovery outweighs its likely benefit, taking into account the factors of the parties' resources, the importance of the issues at stake, and the importance of the requested discovery in resolving these issues. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Considering this standard, the Court concludes that Mattel has shown good cause to grant additional discovery given the complexity of this case, the number of parties, recent developments related to the substitution of counsel, the concerns regarding retention and spoliation of evidence, and the delay in receiving paper

EXHIBIT ____1____

PAGE ____6____

discovery caused by numerous discovery disputes and a Court-imposed stay requested by MGA upon substitution of counsel. Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) and relating to the trade secret and RICO claims (set forth in the moving papers at 13). Mattel may serve the notices of deposition and propound the interrogatories attached to the moving papers as Exs. A - C. Additionally, the parties must answer Mattel's previously propounded interrogatories to which the sole objection raised was that those interrogatories exceeded the allowable number of interrogatories.

The Court has heretofore refrained from bifurcating discovery relating to Phase 1 and Phase 2, believing that such an action is fraught with the potential of unnecessarily compounding discovery disputes in a case already predisposed to such disputes. Nevertheless, in light of the additional discovery permitted by this Order, and to the extent that counsel for the parties who are asserting or defending against claims to be tried in Phase 2 of the trial are in agreement, the Court will consider a stipulation of those parties that designates certain depositions as "Phase 2" depositions that may be conducted during the month of February, if counsel can assure the Court that such depositions can be so conducted without altering the Court's pretrial schedule regarding Phase 1.

Conversely, in light of the standard of review employed regarding the Discovery Master's orders, the Court **DENIES** that portion of Mattel's motion that seeks additional time in which to depose Carter Bryant. The Court cannot say that the Discovery Master's order allowing an additional nine hours to depose Carter Bryant is contrary to law based on the Discovery Master's unchallenged factual findings.

## MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF AUGUST 27, 2007 AND REQUEST FOR SANCTIONS (DOCKET #1143)

This motion is **GRANTED**. The Court's order clearly applied to "all parties." No party sought relief therefrom or clarification of the Court's order.

As prepared in purported compliance with the Court's order, the affidavit of Carlos Gustavo Machado Gomez is inadequate as it lacks facts and relies instead on conclusory language. Machado must file an affidavit that complies with the

MINUTES FORM 90
CIVIL -- GEN                                    3

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT ____/____

PAGE ____7____

Court's order as set forth below.

Carter Bryant has refused to comply with the Court's order and has not filed the required affidavit.

Both these parties must file, on or before January 15, 2008, an affidavit setting forth a factual description of their preservation efforts, policies, customs, and/or practices with respect to potentially discoverable documents related to the present litigation. The failure of these parties to comply with this Order will result in the imposition of contempt sanctions to coerce their compliance.

The Court **DENIES** Mattel's request for costs and sanctions.

## MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)

This motion is **DENIED.** The Court's order referred to the Discovery Master any and all discovery disputes, including those involving third parties.

Although the parties stipulated to the Discovery Master, that stipulation was entered as the Court's order, and as such, all parties are subject to that order unless relieved from it upon proper motion.

The order was entered as a valid Rule 53(a)(1)(C) order, not requiring the consent of any party or nonparty. Machado has not convinced the Court that, as a subsequently added party, he was required to be given the opportunity to object to the order before it could be applied to him. See Fed. R. Civ. P. 53(b)(1) (requiring notice and opportunity to be heard prior to the appointment of a special master). Importantly, Machado could have, but did not, seek relief from this order within a reasonable amount of time after he became a party to this case. Furthermore, the Court does not find any basis to exclude Machado from the reach of the Court's order appointing the Discovery Master pursuant to his present objections.

## DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)

Carter Bryant and the MGA defendants may depose the ten individuals set

MINUTES FORM 90
CIVIL -- GEN                                    4

Initials of Deputy Clerk: jh
Time: 1/30



EXHIBIT _____1_____

PAGE _____8_____

forth in their moving papers.  The testimony of all Rule 30(b)(6) witnesses "count" as only one deposition for purposes of determining the total number of depositions conducted by each side.

Carter Bryant and the MGA defendants are not relieved of the requirement that they serve subpoenas on all these deponents other than the current officers of Mattel (represented to the Court to be Tim Kilpin, Kevin Farr, and Evelyn Viohl).  To the extent that Mattel has made prior written agreements to produce deponents who are under its control, it is expected to do so.

As to all the depositions permitted by this Order, all counsel are expected to coordinate their schedules with those of the deponents such that the depositions are held prior to the discovery cutoff date of January 28, 2008.  However, as set forth above in connection with Mattel's motion to take additional discovery, Phase 2 depositions may be taken in February pursuant to a Court-approved stipulation.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN                                    5

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT _____1_____

PAGE _____9_____

# EXHIBIT 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                Date: February 4, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS
================================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes                          Theresa Lanza
          Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

Michael Page                          John Quinn
                                      Jon D. Corey

                                      ATTORNEY PRESENT FOR CARLOS
ATTORNEYS PRESENT FOR MGA:            GUSTAVO MACHADO GOMEZ:

Thomas J. Nolan
Carl A. Roth
Robert J. Harrington

ATTORNEYS PRESENT FOR THIRD-
PARTY WITNESSES

Larry W. McFarland
Scott Gizer
Ramit Mizrahi
Henry H. Gonzalez
Neal A. Potischman
John Patrick Petrullo


Alexander H. Cote


MINUTES FORM 90                                   Initials of Deputy Clerk __jh
CIVIL -- GEN                          1           Time: 1/45

EXHIBIT ____2____

PAGE ____10____

PROCEEDINGS:

HEARING ON EX PARTE APPLICATIONS:

**1722 EX PARTE APPLICATION to Compel Deposition of Ana Cabrera, Beatriz Morales, and Maria Salazar and Mel Woods**

**1724 EX PARTE APPLICATION to Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment, Inc.**

**1538 EX PARTE APPLICATION for Relief from 01-07-2008 Order re Motion Hearing**

**1583 EX PARTE APPLICATION to Compel Production of Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow**

**1624 EX PARTE APPLICATION to Enforce Court's Orders Compelling Production of Tangible Items**

**1628 EX PARTE APPLICATION to Stay pending Review of Discovery Master's January 11, 2008 Order Granting MGA's and Bryant's Motion to Compel**

**ORDER TO SHOW CAUSE DIRECTED TO COUNSEL LARRY McFARLAND**

Having considered the documents submitted in support of and opposition to the applications set forth above, and having heard oral argument, the Court issues its rulings on these matters as stated on the record and as follows:

### EX PARTE APPLICATIONS REGARDING DEPOSITIONS
### (DOCKET #1722 AND #1724) AND ORDER TO SHOW CAUSE

These applications are DENIED IN PART, subject to the following rulings:

(1)     The Court's January 7, 2008, Order was intended to grant certain specified relief from the numerical limitations on discovery requests; it was not meant to make definitive rulings on burdensomeness, relevance, privilege, or service of discovery requests.

(2)     The Phase 1 discovery deadline has expired. Any Phase 1 discovery not properly served on or before this deadline may not now be pursued. Based on the representation of counsel that process for the letters rogatory on the Hong Kong witnesses has not been initiated, these witnesses may not be deposed on Phase 1 issues. Notwithstanding this ruling, however, the Court is concerned with the allegations by Mattel in its ex parte application regarding certain actions of Larry

MINUTES FORM 90                                           Initials of Deputy Clerk __jh_____
CIVIL – GEN                              2                Time: 1/45

EXHIBIT _____2_____

PAGE _____11_____

McFarland, who represents certain third-party witnesses. Mattel submits that Mr. McFarland has been deliberately evading service of a notice of deposition on him and his clients -- serious allegations when made by an officer of the Court against another officer of the Court. Accordingly, Mr. McFarland is **ORDERED TO SHOW CAUSE** why he and his clients should not be ordered to appear for deposition. A written response to this OSC must be filed no later than February 11, 2008. Other parties may file written replies no later than February 19, 2008. The Court will hear the matter at 10:00 a.m., February 25, 2008, in Courtroom One of the above-referenced Court.

(3)     Phase 1 depositions that have been scheduled past the discovery deadline for the convenience of the witnesses or pursuant to the stipulation of the parties and/or witnesses may proceed as scheduled.

(4)     All discovery related to Phase 2, other than certain individual depositions that may be related to both Phase 1 and Phase 2, is STAYED until further order of the Court.

(5)     As previously ordered and reaffirmed by this Court, all discovery matters shall be presented in the first instance to the Discovery Master. The fact that the Discovery Master's ruling might impact upon the Court's scheduling order does not relieve the parties of following this procedure. For instance, motions to compel, motions to quash, or motions challenging service as to existing discovery requests shall be brought before the Discovery Master. So, too, must objections based on burdensomeness, relevancy, or privilege. In general, and on the matters touched upon herein, the Court expresses no opinion as to these issues, and instead leaves those issues to the Discovery Master to decide in the first instance.

(6)     To the extent that certain challenged depositions are within the scope of the Court's January 7, 2008, Order, and are related to Phase 1 (or to the extent that a given deposition (other than a Rule 30(b)(6) deposition) is related to both Phase 1 and Phase 2), said deposition may proceed subject to the challenges set forth in the previous paragraph. To the extent that the depositions are related to Phase 2, they are STAYED, as set forth above, notwithstanding the January 7, 2008, Order.

(7)     The parties' arguments require the Court to resolve an internal inconsistency in the Court's January 7, 2008, Order. The Court's Order was meant to grant all parts of Mattel's Motion for Leave to Take Additional Discovery (docket #1134) except the relief sought as to the deposition of Carter Bryant. The Court amends its 01.07.08 Order as follows:

Delete: <Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) and relating to the trade secret and RICO

MINUTES FORM 90                                          Initials of Deputy Clerk __jh_____
CIVIL -- GEN                              3              Time: 1/45

EXHIBIT _____2_____

PAGE _____12_____

claims (set forth in the moving papers at 13).>

Replace with: <Specifically, the Court grants Mattel's request to take
the individual depositions relating to the Bratz claims (set forth in the
moving papers at 9-11), relating to the trade secret and RICO claims
(set forth in the moving papers at 13), and relating to document
preservation (set forth in the moving papers at 14 (Joe Tiongco and
Daphne Gronich)).>

(8)   The Court's January 7, 2008, Order granted leave to take additional discovery over
and above the previously allocated 24 depositions per side. Nevertheless, as to all
other depositions, how to "count" the previously allocated depositions is left to the
discretion of the Discovery Master.

(9)   At the hearing, counsel for Christensen, Glaser requested that the Court clarify that
its January 7, 2008, ruling granted leave to depose it on only one issue. That is not
the case, and the request is DENIED. Mattel has been granted relief from the
numerical limitations that previously restricted its ability to depose those individuals
and entities addressed by the Court's January 7, 2008, Order, including its ability to
depose Christensen, Glaser. Unless otherwise restricted by the Discovery Master
upon proper presentation of the issue to him, Mattel may depose Christensen,
Glaser on any relevant, non-privileged matter.

## MACHADO GOMEZ'S EX PARTE APPLICATION RE
## JANUARY 7, 2008, ORDER (DOCKET # 1504)

This application is GRANTED. As noted above, Phase 2 discovery is STAYED until further
order of the Court. The Court will address Phase 2 discovery, motions, pretrial, and trial dates
after the conclusion of Phase 1 of the trial.

## MATTEL'S EX PARTE APPLICATION RE MOTION TO COMPEL PRODUCTION OF
## ELECTRONIC MEDIA FROM THIRD PARTIES (DOCKET #1538)

This application is DENIED. This matter must be addressed in the first instance by the
Discovery Master.

## MATTEL'S EX PARTE APPLICATION TO ENFORCE COURT'S ORDERS
## COMPELLING PRODUCTION OF TANGIBLE ITEMS (#1624)

This application is GRANTED IN PART. Counsel for MGA shall employ its best efforts to
arrange for shipment of those tangible things located in the Peoples' Republic of China ("PRC") to
Hong Kong Special Administrative Region ("Hong Kong") for examination in conjunction with those
tangible things already located in Hong Kong. Otherwise, counsel for MGA shall cooperate in the

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT _____2_____

PAGE ____13_____

arrangements for inspection in both Hong Kong and the PRC. Mattel's request for costs is denied without prejudice.

Counsel are encouraged to meet and confer with the intent of reaching a stipulation regarding the supplementation of expert reports. Absent such stipulation, at the appropriate time, the Court will entertain an ex parte application from any party regarding this issue.

## MATTEL'S EX PARTE APPLICATION TO STAY PENDING REVIEW OF DISCOVERY MASTER'S JANUARY 11, 2008 ORDER (DOCKET # 1628)

This application is GRANTED IN PART. The Court sets the motion for hearing on February 11, 2008. Opposition shall be filed no later than February 6, 2008; any reply shall be filed no later than February 8, 2008. The Discovery Master's January 11, 2008, Order is stayed until the issuance of the Court's minute order regarding the February 11, 2008, hearing.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

5

Initials of Deputy Clerk ___jh_____
Time: 1/45

EXHIBIT ____2_____

PAGE ____14_____

Case 2:04-cv-09049-DOC-RNB   Document 2339-7   Filed 02/25/08   Page 13 of 61   Page ID
#:25793
Case 2:04-cv-09049-SGL-RNB   Document 1031   Filed 02/04/2008   Page 6 of 7

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)   **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**   Minute Order of February 4, 2008

| | |
|---|---|
| Atty Sttlmnt Officer Panel Coordinator | US Attorneys Office - Civil Division -L.A. |
| BAP (Bankruptcy Appellate Panel) | US Attorneys Office - Civil Division - S.A. |
| Beck, Michael J (Clerk, MDL Panel) | US Attorneys Office - Criminal Division -L.A. |
| BOP (Bureau of Prisons) | US Attorneys Office - Criminal Division -S.A. |
| CA St Pub Defender (Calif. State PD) | US Bankruptcy Court |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | US Marshal Service - Los Angeles (USMLA) |
| Case Asgmt Admin (Case Assignment Administrator) | US Marshal Service -  Riverside (USMED) |
| Catterson, Cathy (9th Circuit Court of Appeal) | US Marshal Service -Santa Ana (USMSA) |
| Chief Deputy Admin | US Probation Office (USPO) |
| Chief Deputy Ops | US Trustee's Office |
| Clerk of Court | Warden, San Quentin State Prison, CA |
| Death Penalty H/C (Law Clerks) | |
| Dep In Chg E Div | |
| Dep In Chg So  Div | |
| Federal Public Defender | |
| Fiscal Section | |
| Intake Section, Criminal LA | |
| Intake Section, Criminal SA | |
| Intake Supervisor, Civil | |
| PIA Clerk - Los Angeles (PIALA) | |
| PIA Clerk - Riverside (PIAED) | |
| PIA Clerk - Santa Ana (PIASA) | |
| PSA - Los Angeles (PSALA) | |
| PSA - Riverside (PSAED) | |
| PSA - Santa Ana (PSASA) | |
| Schnack, Randall (CJA Supervising Attorney) | |
| Statistics Clerk | |

✓ **ADD NEW NOTICE PARTY**
(if sending by fax, mailing address must also be provided)

Name: Ambassador Pierre-Richard Prosper

Firm:

Address *(include suite or floor)*:  P.O. Box 581103

Salt Lake City,  UT   84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

**JUDGE / MAGISTRATE JUDGE (list below):**

**Initials of Deputy Clerk** jh

EXHIBIT 2

PAGE      15

Case 2:04-cv-09049-DOC-RNB   Document 2339-7   Filed 02/25/08   Page 14 of 61   Page ID
#:26198
Case 2:04-cv-09049-SGL-RNB   Document 1991   Filed 02/04/2008   Page 7 of 7

# NOTICE PARTY SERVICE LIST

**Case No.**   CV 04-09049 SGL(RNBx)   **Case Title**   Carter Bryant v. Mattel, Inc.

**Title of Document**   Minute Order of February 4, 2008

| |
|---|
| Atty Sttlmnt Officer Panel Coordinator |
| BAP (Bankruptcy Appellate Panel) |
| Beck, Michael J (Clerk, MDL Panel) |
| BOP (Bureau of Prisons) |
| CA St Pub Defender (Calif. State PD) |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| Case Asgmt Admin (Case Assignment Administrator) |
| Catterson, Cathy (9th Circuit Court of Appeal) |
| Chief Deputy Admin |
| Chief Deputy Ops |
| Clerk of Court |
| Death Penalty H/C (Law Clerks) |
| Dep In Chg E Div |
| Dep In Chg So  Div |
| Federal Public Defender |
| Fiscal Section |
| Intake Section, Criminal LA |
| Intake Section, Criminal SA |
| Intake Supervisor, Civil |
| PIA Clerk - Los Angeles (PIALA) |
| PIA Clerk - Riverside (PIAED) |
| PIA Clerk - Santa Ana (PIASA) |
| PSA - Los Angeles (PSALA) |
| PSA - Riverside (PSAED) |
| PSA - Santa Ana (PSASA) |
| Schnack, Randall (CJA Supervising Attorney) |
| Statistics Clerk |

| |
|---|
| US Attorneys Office - Civil Division -L.A. |
| US Attorneys Office - Civil Division - S.A. |
| US Attorneys Office - Criminal Division -L.A. |
| US Attorneys Office - Criminal Division -S.A. |
| US Bankruptcy Court |
| US Marshal Service - Los Angeles (USMLA) |
| US Marshal Service -  Riverside (USMED) |
| US Marshal Service -Santa Ana (USMSA) |
| US Probation Office (USPO) |
| US Trustee's Office |
| Warden, San Quentin State Prison, CA |

✓ **_ADD NEW NOTICE PARTY_**
**(if sending by fax, mailing address must also be provided)**

Name: Hon. Edward A. Infante (Ret.)

Firm:

Address (include suite or floor):  Two Embarcadero

Center, Suite 1500, San Francisco,  CA  94111

*E-mail:

*Fax No.:

* For CIVIL cases only

_JUDGE / MAGISTRATE JUDGE (list below):_

**Initials of Deputy Clerk** jh

G-75  (03/07)                                          NOTICE PARTY SERVICE LIST

EXHIBIT _____

PAGE _____ 16

# EXHIBIT 3

1                 UNITED STATES DISTRICT COURT

2               CENTRAL DISTRICT OF CALIFORNIA

3                      EASTERN DIVISION

4                          - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                          - - -

**CERTIFIED COPY**

7   CARTER BRYANT, ET. AL.,           )
                                      )
8                    PLAINTIFFS,      )
                                      )
9            VS.                      )   NO. ED CV 04-09049
                                      )   (LEAD LOW NUMBER)
10  MATTEL, INC., ET. AL.,            )
                                      )
11                   DEFENDANTS.      )   EX-PARTE APPLICATIONS
                                      )   RE:   DISCOVERY
12  AND CONSOLIDATED ACTIONS,         )
                                      )

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                 RIVERSIDE, CALIFORNIA

17               MONDAY, FEBRUARY 4, 2008

18                     10:15 A.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
            FEDERAL OFFICIAL COURT REPORTER
24             3470 12TH STREET, RM. 134
             RIVERSIDE, CALIFORNIA  92501
25                  951-274-0844
               CSR11457@SBCGLOBAL.NET

EXHIBIT ___3___

1      **MR. QUINN:**  I UNDERSTAND WHAT THE COURT HAS SAID, AND

2   WE'LL BE TAKING THESE UP WITH JUDGE INFANTE.

3          THE ONLY REASON WE WERE HERE WAS, THERE'S A COUPLE OF

4   THESE ISSUES THAT RELATE TO THE CONSTRUCTION OF THIS COURT'S

5   ORDER AND WHAT THE COURT MEANT.                                    10:48

6          ONE, THE GRONICH, THE OTHER INDIVIDUAL, THE DOCUMENT

7   RETENTION --

8          **THE COURT:**  MR. GRONICH OR MR. TIONGCO?

9          **MR. QUINN:**  TIONGCO.

10         I THINK IT WOULD BE HELPFUL TO THE PARTIES AND         10:48

11   JUDGE INFANTE IF THE COURT COULD SHARE WITH US ITS VIEWS ON

12   WHAT IT MEANT THERE, AS TO WHETHER THOSE WERE INCLUDED IN THE

13   JANUARY 7TH ORDER.

14         AND THEN JUST FROM A STANDPOINT OF CONSTRUCTION OF

15   THE COURT'S ORDER, WHETHER OR NOT THE COURT INTENDED, BY        10:48

16   GRANTING THAT APPLICATION FOR ADDITIONAL DISCOVERY, TO RULE

17   THAT ANY UNUSED DEPOSITION SLOTS UNDER THE ORIGINAL SCHEDULING

18   ORDER THAT HADN'T BEEN USED ARE LOST.

19         I THINK IF THE COURT CAN GIVE US AND JUDGE INFANTE

20   GUIDANCE ON THOSE TWO ISSUES, WE CAN TAKE IT FROM THERE WITH    10:49

21   JUDGE INFANTE.

22         **THE COURT:**  WELL, LET ME ASK YOU THIS, MR. QUINN; AND

23   THIS MAY REVEAL MORE THAN I PROBABLY WANTED TO REVEAL RIGHT

24   NOW:  WHEN YOU BROUGHT THAT EX-PARTE APPLICATION FOR LEAVE TO

25   TAKE THE ADDITIONAL DEPOSITIONS, WAS NOT THE PREMISE THERE THAT  10:49

EXHIBIT ___3___

FEBRUARY 4, 2008     PAGE ___18___          ED CV 04-9059-SGL

1   YOU NEEDED TO TAKE ADDITIONAL DEPOSITIONS?  THAT YOU HAD

2   ESSENTIALLY USED UP YOUR DEPOSITIONS AND YOU NEEDED MORE

3   DEPOSITIONS?

4        MR. QUINN:  NO.  THERE WERE DEPOSITIONS SCHEDULED.

5   WE HAD A DISCOVERY CUTOFF APPROACHING.  WE HAD A LONG LIST OF        10:4

6   PEOPLE THAT WE WANTED TO DEPOSE; WE KNEW WE WERE GOING TO BE

7   GOING OVER THE LIMIT; BUT WE, AT NO POINT -- I THINK TO THE

8   CONTRARY, YOUR HONOR, WE SAID WE HADN'T USED UP ALL OF THE

9   SLOTS.  WE JUST ANTICIPATED WE NEEDED TO GET THE CEILING

10  RAISED, KNOWING WHAT NEEDED TO BE DONE.                             10:5

11       THE COURT:  FROM 24 TO 64?

12       ALL RIGHT.  VERY WELL.

13       MR. NOLAN?

14       MR. NOLAN:  THANK YOU, YOUR HONOR.

15       I THINK WITH THE COURT'S CLARIFICATION, AND, IN               10:5

16  PARTICULAR, THE CLARITY WITH RESPECT TO IF SOMETHING IS PENDING

17  IN FRONT OF JUDGE INFANTE, IT WAS NOT THE INTENT OF THIS COURT

18  TO CIRCUMVENT ALL OF THE HARD WORK THAT JUDGE INFANTE HAS DONE.

19       AND I WANT TO START WITH THAT POLICY, IF YOU WOULD,

20  AND GO TO THE ADDITIONAL DEPOSITIONS THAT WERE, WE BELIEVE, NOT    10:5

21  ORDERED BY THE JANUARY 7TH ORDER, WITH RESPECT TO DOCUMENT

22  PRESERVATION AND COLLECTION.  AND THAT'S THE GRONICH AND

23  BURKEVICH DEPOSITIONS.

24       AND THE REASON WHY, YOUR HONOR, WE DO NOT BELIEVE

25  THAT THEY WERE COVERED IN THE FIRST INSTANCE BY YOUR ORDER IS      10:5

EXHIBIT    3

FEBRUARY 4, 2008   PAGE    19          ED CV 04-9059-SGL

1    THAT IN OUR PAPERS, AS YOU WELL NOW KNOW, THIS MATTER WAS

2    BROUGHT BEFORE JUDGE INFANTE; FULLY REVIEWED BY HIM; DETERMINED

3    THAT WITH RESPECT TO ALL BUT ONE TOPIC, TOPIC 39, WE HAD

4    PRODUCED WITNESSES THAT WERE MOST KNOWLEDGEABLE AND HAD GIVEN

5    VERY THOROUGH TESTIMONY.

6         AND WITH RESPECT TO TOPIC NUMBER 39, WHICH WAS THE

7    COLLECTION TOPIC, THAT WAS THE DEPOSITION THAT HE ORDERED US TO

8    COMPLY WITH; AND WE PRODUCED MR. KHARE FOR TWO ADDITIONAL DAYS

9    ON THAT VERY SUBJECT.

10        NOW, MATTEL, NOT SATISFIED WITH JUDGE INFANTE'S

11   RULING, DOESN'T APPEAL THAT; NOW TAKES YOUR ORDER, WHERE YOU DO

12   NOT IDENTIFY OR CALL OUT GRONICH AND TRAVONAVICH {SIC}, AND

13   SAYS, 'BUT YOU REFERRED TO A TOPIC'.  AND WE RESPECTFULLY

14   SUBMIT, YOUR HONOR, AS CAREFUL AS I KNOW YOU ARE IN YOUR

15   ORDERS, THAT THAT IS STRETCHING IT, IN LIGHT OF WHAT WE'VE --

16   THE RECORD THAT WE'VE ALREADY SHOWN BEFORE JUDGE INFANTE.

17   BECAUSE MATTEL HAD NOT DEMONSTRATED TO YOU THAT THERE WAS ANY

18   INADEQUATE SHOWING OR TESTIMONY ON THE SUBJECT BY US.  IN FACT,

19   WE STEPPED UP AND WE PRODUCED ALL OF THE WITNESSES, AND

20   JUDGE INFANTE HAS BLESSED IT, EXCEPT FOR KHARE; AND WE'VE NOW

21   PRODUCED IT.

22        THERE ARE DECLARATIONS IN THIS CASE WITH RESPECT TO

23   THE PRESERVATION, COLLECTION, AND DOCUMENTATION OF THESE

24   DOCUMENTS.  I DON'T BELIEVE THAT IT'S APPROPRIATE TO ORDER THE

25   ADDITIONAL DEPOSITIONS OF GRONICH AND TRAVONAVICH {SIC}.

EXHIBIT  3

FEBRUARY 4, 2008   PAGE  20        ED CV 04-9059-SGL

1    I'M ALWAYS GOING TO MISPRONOUNCE THAT NAME.  I

2  APOLOGIZE.

3         THE COURT:  TIONGCO.

4         MR. NOLAN:  THEY'RE NOT COVERED BY THE ORDER.  AND

5  THIS SUBJECT HAS BEEN COMPLETELY ADDRESSED BY JUDGE INFANTE.     10:53

6         THE COURT:  PUTTING THAT ASIDE, WHAT IS YOUR GENERAL

7  APPROACH?

8         MR. NOLAN:  WITH RESPECT TO ANOTHER CATEGORY, AND

9  THAT IS -- YOU KNOW, WHAT IS ALSO CLEAR, I BELIEVE, AND WHAT WE

10  NEED TO LEAVE WITH TODAY -- IS THAT THE JANUARY 28TH DISCOVERY     10:53

11  CUTOFF APPLIED TO PHASE ONE --

12         THE COURT:  IT DID.

13         MR. NOLAN:  -- AND THAT WHETHER OR NOT MATTEL, FOR

14  ITS OWN CHOOSING IN THIS CASE, DECIDED FOR INTERNAL PURPOSES TO

15  DELAY PROVIDING PROPER NOTICE BEFORE THE EXPIRATION OF THE     10:53

16  DISCOVERY CUTOFF DATE, KNOWING FULL WELL WHAT THE DISCOVERY

17  CUTOFF DATE WAS, THEY SHOULD NOT BE ALLOTTED ADDITIONAL TIME

18  NOW TO TAKE THOSE DEPOSITIONS.  AND THOSE ARE MOTIONS THAT ARE

19  PENDING BEFORE JUDGE INFANTE.  AND WHEN YOU SAID MOTIONS THAT

20  ARE PENDING IN FRONT OF JUDGE INFANTE, DEALING WITH THE SERVICE     10:54

21  AND THOSE KINDS OF ISSUES, I'M ASSUMING -- AND I'M REALLY DOING

22  THIS MORE FOR THE RECORD, BECAUSE WE HAVE THIS HABIT OF NOT

23  AGREEING AFTER WE LEAVE HERE AS TO WHAT ACTUALLY OCCURRED --

24  THAT THOSE MATTERS ARE NOW BEFORE JUDGE INFANTE, AND THAT IF

25  JUDGE INFANTE, WHO HAS ESTABLISHED A RULE IN THIS CASE THAT TEN     10:54

EXHIBIT ___3___

PAGE ___21___

FEBRUARY 4, 2008                          ED CV 04-9059-SGL

1   DAYS' NOTICE FOR DEPOSITIONS WAS REASONABLE UNDER THE

2   APPLICABLE RULES THAT WE WERE OPERATING UNDER, RULES THAT WERE

3   IMPOSED ON US BY MATTEL THROUGHOUT THIS GAME, THIS CASE, HAS

4   NOT CHANGED AS A RESULT OF TODAY'S ORDER.

5           **THE COURT:**  I'M NOT GOING TO GIVE EITHER SIDE ANY            10:54

6   SOLACE AT THIS POINT.  I DO NOT WANT TO SHORT-CIRCUIT

7   JUDGE INFANTE'S RULINGS.  AND I'M ALSO NOT GOING TO, IN ANY

8   WAY, RESTRICT EITHER SIDE FROM APPEALING JUDGE INFANTE'S

9   RULINGS TO THIS COURT.  SO I'M NOT GOING TO OPINE AT THIS POINT

10  AS TO WHETHER OR NOT I THINK THE TEN-DAY NOTICE IS REASONABLE    10:55

11  OR NOT REASONABLE, IS APPLICABLE OR SHOULD NOT BE APPLICABLE.

12  ALL I'M SAYING AT THIS POINT IS -- AND PRECISELY TO AVOID

13  GETTING INVOLVED IN TRYING TO SHORT-CIRCUIT JUDGE INFANTE'S

14  WORK, I'M JUST GOING TO PERMIT THAT TO PROCEED.

15          JANUARY 28TH WAS THE CUTOFF FOR PHASE ONE DISCOVERY.    10:55

16  ON JANUARY 7TH, WHEN I GAVE LEAVE FOR THOSE ADDITIONAL

17  DEPOSITIONS, APPROXIMATELY 40 ADDITIONAL DEPOSITIONS, I

18  CERTAINLY -- AND I THINK I MADE THIS PRETTY CLEAR IN THE

19  ORDER -- ENVISIONED THOSE TO BE DONE IN THE MONTH OF JANUARY.

20          I DID INDICATE, CERTAINLY IF THE PARTIES WANTED TO      10:55

21  STIPULATE, THAT THEY COULD CONTINUE THIS UNTIL FEBRUARY.  AND

22  CERTAINLY FOR ANYTHING THAT WAS PROPERLY NOTICED OR PROPERLY

23  SERVED DURING THE MONTH OF JANUARY, BEFORE THE CUTOFF, AT LEAST

24  FROM THIS COURT'S PERSPECTIVE AT THIS POINT IN TIME, THAT MAY

25  HAVE TO PROCEED INTO FEBRUARY.                                  10:56

EXHIBIT ___3___

FEBRUARY 4, 2008   PAGE ___22___        ED CV 04-9059-SGL

1  ABLE TO, IN CERTAIN INSTANCES, STIPULATE WITH RESPECT TO

2  DEPOSITIONS.  IN FACT, THE DEPOSITION OF FRED LARIAN IS GOING

3  ON TODAY; AND WE'VE AGREED THAT IT WOULD STILL APPLY TO PHASE

4  ONE.

5           SO THERE WERE INSTANCES WHERE WE BELIEVED IT WAS          10:57

6  APPROPRIATE AND NOBODY WAS TRYING TO SHOVE PHASE TWO INTO PHASE

7  ONE.  WE'VE WORKED THOSE DIFFERENCES OUT.

8           I WANT TO TURN NOW TO WHAT I WOULD DESCRIBE AS THE

9  CATEGORY OF THREE:  MS. MORALES, MS. CABRERA; AND THE LAST ONE

10 IS SALAZAR.                                                       10:57

11           **THE COURT:**  AND MEL WOODS.

12           **MR. NOLAN:**  AND MEL WOODS IS IN THIS CATEGORY.

13           **THE COURT:**  RIGHT.

14           **MR. NOLAN:**  NOW, THERE IS NO DISPUTE THAT EACH ONE OF

15 THESE PEOPLE WERE KNOWN TO MATTEL, CERTAINLY BY THEIR OWN          10:57

16 ADMISSION, AS OF DECEMBER 28TH.  THEY WERE KNOWN AT THE TIME OF

17 THE JANUARY 7TH HEARING.  MATTEL DOES NOT CHOOSE AT THAT TIME

18 TO INCLUDE THEM IN THE LIST, DOES NOT REQUEST AND DOES NOT

19 ACCELERATE THE REQUEST, IF THEY DECIDED TO TAKE THESE

20 DEPOSITIONS.                                                      10:58

21           AS WE LAY OUT IN THE PAPER, IN A PRETTY SORRY AND, WE

22 THINK, VERY SAD SET OF CIRCUMSTANCES, TRAGIC, TO BE HONEST WITH

23 YOU, YOUR HONOR, NOW --

24           **THE COURT:**  ADMITTEDLY, I HAVEN'T READ THE REPLY TO

25 THAT, BUT AS YOU LAY IT OUT, IT WAS UNUSUAL, IF NOTHING ELSE.      10:58

EXHIBIT  3

FEBRUARY 4, 2008    PAGE  23        ED CV 04-9059-SGL

1    **MR. NOLAN:**  YOUR HONOR, THERE'S A LOT OF TRAGEDIES IN

2  THIS CASE.  I WILL GO A LONG WAY THINKING THAT HISPANIC WOMEN,

3  RAISING CHILDREN -- ONE OF WHICH IS IN MEDICAL SCHOOL -- HER

4  HUSBAND, A MENTAL PATIENT -- IS FIRED BECAUSE SHE SEWED AN A

5  CONCRETE FLOOR, NOT KNOWING WHAT SHE WAS SEWING UNTIL SOME          10:5

6  POINT IN TIME DOWN THE ROAD, NOW HAS TO LOSE HER JOB.

7           BUT SETTING THAT ASIDE -- AND ALSO BEING QUESTIONED

8  BY MR. DE ANDA, WHO HE HIMSELF HAS ADMITTED THAT HE MOONLIGHTS

9  AS AN EXPERT WITNESS ON THE SIDE.  IT'S A TRAGIC IRONY IN THIS

10  CASE.                                                              10:5

11           BUT THE POINT HERE IS, YOUR HONOR, MATTEL

12  UNILATERALLY WORKED THE CLOCK THE WAY THEY CHOSE TO DO SO.

13  THEY INTERVIEWED THESE WOMEN -- I'M NOW TALKING ABOUT CABRERA

14  AND MORALES -- WITHOUT COUNSEL; BROUGHT THEM IN; SUBJECTED THEM

15  TO, IN CABRERA'S INSTANCE, A VERY LENGTHY INTERVIEW, THAT WE'VE    10:5

16  NOW BEEN PROVIDED THE AUDIOTAPE OF.  THEY CONDUCTED A SEARCH OF

17  HER HOUSE, WITH A WOMAN WHO CAN BARELY SPEAK ENGLISH ASKING

18  THAT THE INTERVIEW BE CONDUCTED IN SPANISH.  THEY REFUSE IT.

19  BUT THIS IS ALL ON THEIR OWN TIME.  THEY MAKE A CHOICE.

20           THEN, YOUR HONOR, AFTER THEY'VE COMPLETELY              11:0

21  INTERVIEWED THESE PEOPLE, FIRED THEM AND DEALT WITH WHATEVER

22  THEY WANT, THEY THEN, ON THE 22ND OR 23RD, TRY TO GO OUT AND

23  SERVE THE DEPONENTS.  THE DEPONENT GETS COUNSEL.  COUNSEL IS

24  PRESENT IN THE COURTROOM TODAY.  THAT COUNSEL SAYS, 'WE'RE NOT

25  GOING TO SIT FOR A DEPOSITION' -- WORDS TO THE EFFECT, 'WE'RE    11:0

EXHIBIT  3

FEBRUARY 4, 2008          PAGE  24          ED CV 04-9059-SGL

1   NOT GOING TO SIT FOR A DEPOSITION ON ONE OR TWO DAY'S NOTICE.

2   THAT'S NOT REASONABLE.  AND, MORE IMPORTANTLY, YOU'VE GOT TO

3   GIVE DOCUMENTS,' AND STUFF LIKE THAT.

4          SO MATTEL JUST RAN OUT THE CLOCK, YOUR HONOR.  IF

5   THAT WAS PHASE ONE, THEY KNEW IT.  THEY UNILATERALLY DECIDED          11:0

6   NOT TO INCLUDE IT IN THE LIST THAT THEY SUBMITTED TO YOUR

7   HONOR.  THEY WAITED UNTIL TWO OR THREE DAYS BEFORE THE END OF

8   THE DEPOSITION.  THAT'S PENDING IN FRONT OF JUDGE INFANTE.

9          **THE COURT:**  AND YOUR PRIMARY ARGUMENT THERE,

10  THOUGH -- I READ ALL OF THE INFORMATION YOU PROVIDED ABOUT THE          11:0

11  CIRCUMSTANCES OF THE INTERROGATION, OR THE INTERVIEW OR

12  WHATEVER IT WAS.  BUT YOUR ARGUMENT GOES BACK TO THIS NUMBER

13  COUNTING THING, WHETHER OR NOT THEY HAD THE ADDITIONAL SIX THAT

14  THEY CLAIMED.  AND IF THEY DID, THEN THEY NOTICED THEM BEFORE

15  THE CUTOFF.  IF THEY DON'T, THEN THEY DIDN'T.          11:0

16         **MR. NOLAN:**  THAT'S ONE ARGUMENT.

17         AND THEN THE SECOND ARGUMENT -- AND WE THINK THE

18  COUNT IS VERY SIMPLE.  THEY HAD 22 DEPOSITIONS IN THE BAG.

19  THEY HAD TWO MORE THAT WERE SET AT THE TIME WE CAME BEFORE YOU

20  ON JANUARY 7TH.  WE MADE THESE ARGUMENTS CONSISTENTLY, AND I AM          11:0

21  STRUCK BY THE FACT THAT WE HAD TO COME IN HERE WHEN THEY STILL

22  HAD DEPOSITIONS ON THE TABLE, APPARENTLY BY THEIR COUNT, AND

23  SAY, 'OH, NOW WE NEED ADDITIONAL DISCOVERY.'  I THINK THEY'RE

24  TRYING TO REINTERPRET WHAT THEIR POSITIONS WERE ORIGINALLY.

25         NEVERTHELESS, THEY WERE OUT OF DEPOSITIONS EXCEPT FOR          11:0

EXHIBIT   3

FEBRUARY 4, 2008   PAGE   25          ED CV 04-9059-SGL

48

```
1          THINK ABOUT IT FOR A MOMENT.

2          THEY'RE SAYING IT WAS OKAY FOR CARTER BRYANT --

3          THE COURT:  I DON'T THINK ANYONE FAULTS THE

4   TERMINATION ITSELF; IT'S MORE THE MANNER IN WHICH IT ALL CAME

5   ABOUT.                                                        11:1

6          MR. QUINN:  I CAN'T GET INTO THE -- I CAN'T DISCUSS

7   THE DETAILS OF THAT, YOUR HONOR.  I CAN'T RESPOND TO THOSE

8   SPECIFIC ALLEGATIONS, BECAUSE I'M JUST NOT FAMILIAR WITH THEM.

9          THERE IS A REPLY ON THAT ISSUE.

10         WE CAN, ON MONDAY, WHEN WE'RE GOING TO BE BACK, IF      11:1

11  THE COURT WISHES TO HEAR ABOUT THAT.

12         THE COURT:  YOU MIGHT WANT TO HAVE A RESPONSE

13  PREPARED.  I'LL TAKE A LOOK AT THE PAPERS ON THAT.

14         MR. QUINN:  ALL RIGHT.

15         THE COURT:  OTHERWISE, IT'S CLEAR WHERE I'M GOING       11:1

16  WITH THIS, TO YOU?

17         MR. QUINN:  NOT ENTIRELY.

18         THE COURT:  ALL RIGHT.  WHICH PART OF IT IS NOT

19  CLEAR?

20         MR. QUINN:  THE COUNTING ISSUE, YOUR HONOR.  I THINK    11:1

21  WE DO NEED SOME GUIDANCE ABOUT WHETHER -- IF WE TOOK A

22  DEPOSITION --

23         THE COURT:  THAT COUNTS AS ONE.

24         MR. QUINN:  IF WE TAKE A DEPOSITION THAT WE GOT LEAVE

25  TO TAKE THAT WAS ON THE LIST AS A RESULT OF THE JANUARY 7TH    11:1
```

EXHIBIT _____3_____

PAGE _____26_____

FEBRUARY 4, 2008                          ED CV 04-9059-SGL

1    ORDER, DOES THAT COUNT AGAINST THE ORIGINAL 24?

2         WE'VE BEEN TOLD THAT IF WE TAKE A DEPOSITION THAT WAS

3    ON THAT LIST, THAT COUNTS AGAINST THE ORIGINAL 24.

4         THE COURT:  THE COURT GRANTED YOU LEAVE TO TAKE

5    ADDITIONAL DEPOSITIONS.                                      11:1

6         MR. QUINN:  BUT I'M ASSUMING THAT MEANS THEY WERE IN

7    ADDITION TO THE 24.

8         THE COURT:  I TRUST JUDGE INFANTE WILL BE ABLE TO

9    TAKE THE COURT'S ORDER, GRANTING YOU LEAVE TO TAKE ADDITIONAL

10   DEPOSITIONS, AND THEN DETERMINE HOW MANY OTHER DEPOSITIONS YOU    11:1

11   HAVE TAKEN, ADD THEM UP, AND SEE IF YOU HAVE ANY ADDITIONAL

12   ONES, SO AS TO AFFORD YOU THE ABILITY TO HAVE NOTICED THE

13   DEPOSITIONS OF THESE FOUR INDIVIDUALS:  MS. CABRERA,

14   MS. MORALES, MS. SALAZAR, AND MR. WOOD.

15        MR. QUINN:  IS IT OUT OF LINE, YOUR HONOR, FOR ME TO    11:1

16   ASK WHETHER THE COURT IS SAYING THAT THOSE ARE ADDITIONAL TO

17   THE 24?  THAT'S A VERY BASIC ISSUE THAT WE'VE HAD DISAGREEMENT

18   ON.

19        THE COURT:  THE ORDER GAVE YOU LEAVE TO TAKE

20   ADDITIONAL DEPOSITIONS.                                      11:1

21        I DON'T KNOW WHAT ELSE IT WOULD BE OTHER THAN

22   ADDITIONAL TO THE 24.

23        MR. QUINN:  ALL RIGHT.

24        THE COURT:  DO YOU DISAGREE WITH THAT, MR. NOLAN?

25        I MEAN, I UNDERSTAND YOU DISAGREE WITH HOW THEY    11:1

EXHIBIT 3

FEBRUARY 4, 2008        PAGE   27        ED CV 04-9059-SGL

1    COUNTED, BUT YOU'RE NOT SUGGESTING THAT THE DEPOSITIONS I

2    AFFORDED ON JANUARY 7TH WERE NOT ANYTHING OTHER THAN BEING IN

3    ADDITION TO THE 24 THAT EACH SIDE HAD?

4         MR. NOLAN:  WE MADE THAT POINT IN THE PAPERS, BECAUSE

5    CANDIDLY, YOUR HONOR, IT WASN'T CLEAR.  IT'S AN ARGUMENT

6    THAT WE'VE MADE BECAUSE, WHY DID THEY COME HERE AND ASK FOR

7    ADDITIONAL DISCOVERY IF THEY WERE GOING TO STILL HAVE SOME IN

8    THEIR POCKET THAT THEY WEREN'T GOING TO DISCLOSE TO ANYBODY?

9         BUT OUR PRIMARY ARGUMENT WAS ALWAYS THAT THE REASON

10   WHY WE WERE THERE WAS THAT THEY WERE OUT OF DEPOSITIONS.  THEY

11   HAD 22 THEY HAD ALREADY TAKEN; TWO WERE NOTICED.  AND THEN YOU

12   GAVE THEM AN ADDITIONAL -- SOMEWHERE BETWEEN 40 AND 50

13   DEPOSITIONS.

14        BUT BY ALL ACCOUNTS, ONE THING THAT'S FOR CERTAIN,

15   THESE THREE INDIVIDUALS, ALTHOUGH KNOWN TO MATTEL, WERE NOT

16   INCLUDED AT ANY TIME AND WERE NOT NOTICED.  THEY WERE ARGUED

17   BEFORE YOUR HONOR ON THE 7TH, BUT THEY'RE NOT INCLUDED.

18        THE COURT:  I WILL SAY THIS, TO MAYBE JUST

19   SHORT-CIRCUIT SOME CONFUSION, BECAUSE IT IS CLEAR TO THE COURT.

20        THE TOTAL NUMBER OF DEPOSITIONS WAS 40; CORRECT?

21        MR. QUINN:  24 A SIDE.

22        OH, I'M SORRY.  IN THE JANUARY 7TH ORDER?

23        THE COURT:  YES.

24        MR. QUINN:  IT WAS 40 SOMETHING.  I DON'T KNOW THE

25   NUMBER, YOUR HONOR.

EXHIBIT        3

PAGE         28

1    **MR. NOLAN:**  I BELIEVE IT WAS 40, PLUS TEN ON OUR

2    PART; ALL IN ALL, IT WAS 50.

3         **THE COURT:**  AND YOU HAD PREVIOUSLY BEEN EACH AFFORDED

4    24.

5         THERE IS NO QUESTION, TO THE COURT'S THINKING -- AND                 11:1

6    I WILL MAKE THIS CLEAR TODAY -- THAT THE 40 I AWARDED TO MATTEL

7    AND THE TEN ADDITIONAL ONES I AWARDED TO MGA WERE IN ADDITION

8    TO THE 24 THAT THEY RECEIVED.

9         NOW, I WILL LEAVE IT TO JUDGE INFANTE TO COUNT UP THE

10   NUMBER OF DEPOSITIONS THAT HAD BEEN TAKEN PRIOR TO YOUR                    11:1

11   NOTICING THESE FOUR ADDITIONAL ONES.

12        IF THAT NUMBER COMES UP TO BE 20 OR LESS, THEN

13   THEY'RE IN.  IF THAT NUMBER COMES UP TO BE 24 OR MORE, THEN

14   THEY'RE OUT.  AND I'M NOT AT THIS POINT CONSIDERING ARGUMENTS

15   FOR GOOD CAUSE, TO INCLUDE OR NOT INCLUDE.  SIMILARLY, I'M NOT            11:1

16   GOING TO COUNTENANCE ARGUMENTS TO SAY THAT THEY SHOULDN'T BE

17   BECAUSE THEY KNEW ABOUT THESE PEOPLE BEFORE.  WE HAVE A

18   DEADLINE.  AS YOU SAY, THE CLOCK EXPIRED.  THEY WERE EITHER

19   PART OF THE NUMBER THAT THEY COULD TAKE OR THEY WEREN'T.

20        I ASSUME THAT YOU CAN SIT DOWN AND YOU CAN IDENTIFY                   11:1

21   FOR JUDGE INFANTE EXACTLY THE NUMBER OF DEPOSITIONS,

22   PARTICULARLY NOW, THAT YOU'VE TAKEN.  AND THAT'S WHY, AS FAR AS

23   MR. GRONICH AND MR. TIONGCO ARE CONCERNED --

24        WOULD THAT MAKE IT 42, MR. QUINN?

25        **MR. QUINN:**  YOUR HONOR, I WASN'T SURE 40 WAS THE                  11:2

EXHIBIT ___3___

FEBRUARY 4, 2008   PAGE ___29___        ED CV 04-9059-SGL

1    NUMBER.

2              THOSE TWO INDIVIDUALS WERE REFERENCED IN THOSE

3    PAPERS.

4              **THE COURT:**  I DON'T WANT YOU TO LEAVE TODAY -- WE

5    SHOULD BE ABLE TO ANSWER THIS QUESTION.  THERE'S ENOUGH LAWYERS

6    AND THERE'S ENOUGH STUFF IN THIS ROOM THAT WE SHOULD BE ABLE TO

7    ANSWER THIS QUESTION PLAINLY TO THE COURT.

8              HOW MANY DEPOSITIONS DID I AUTHORIZE EXPRESSLY ON

9    JANUARY 7TH?  IF WE NEED TO TAKE A BRIEF RECESS TO COME UP WITH

10   THAT, LET'S DO THAT.

11             **MR. NOLAN:**  YOU REFERENCED SPECIFIC PAGES, AND ON

12   THOSE PAGES, PEOPLE WERE LISTED.  OUR POSITION IS THAT THEY

13   WEREN'T LISTED ON THOSE PAGES.

14             WE CAN DO THAT AT A BREAK AND COME BACK AND MAYBE

15   SUBMIT IT TO MR. HOLMES OR WHATEVER.

16             YOUR HONOR, ONLY BECAUSE I KNOW THIS TRANSCRIPT IS

17   GOING TO BE DISSECTED BY BOTH COUNSEL, I JUST WANT TO COME BACK

18   TO WHEN YOU SAID RECENTLY THAT WITH RESPECT TO CABRERA AND

19   MORALES AND SALAZAR, THAT IF THEY WERE WITHIN THE NUMBER,

20   THEY'RE IN.

21             **THE COURT:**  THEY'RE IN, SUBJECT TO ANY ARGUMENT THAT

22   YOU'RE MAKING BEFORE JUDGE INFANTE THAT THEY WERE NOT PROPERLY

23   NOTICED, SERVED, OR WHATEVER IT MIGHT BE.

24             **MR. NOLAN:**  AND I APOLOGIZE FOR BEING REDUNDANT.  I'M

25   TRYING TO AVOID --

EXHIBIT ____3____

FEBRUARY 4, 2008              PAGE ____30____              ED CV 04-9059-SGL

84

1   AND MR. QUINN WERE ASKED TO FILE A RESPONSE OR A REPLY TO THE

2   COURT WITH RESPECT TO THE CIRCUMSTANCES.

3            **THE COURT:**  I THINK THEY INDICATED THAT THEY ALREADY

4   HAVE FILED A REPLY AND THAT THERE'S INFORMATION CONCERNING THAT

5   ON THIS.                                                          12:0

6            **MR. NOLAN:**  I APOLOGIZE FOR NOT UNDERSTANDING.

7            **THE COURT:**  AM I RIGHT, MR. QUINN?

8            **MR. QUINN:**  THAT WAS MY UNDERSTANDING.

9            **THE COURT:**  THEY JUST DIDN'T KNOW ANYTHING ABOUT THE

10  REPLY; THAT WAS SOMEBODY ELSE WHO WROTE THAT; SO THEY DON'T      12:0

11  WANT TO TALK TO ME ABOUT IT RIGHT NOW.

12           THANK YOU.  GOOD AFTERNOON.

13

14

15

16

17

18                          CERTIFICATE

19

20  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
21  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
    ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.

23

24  _Theresa A. Lanza_                     2-13-08
    THERESA A. LANZA, CSR, RPR                DATE
25  FEDERAL OFFICIAL COURT REPORTER

EXHIBIT        3

FEBRUARY 4, 2008    PAGE    31      ED CV 04-9059-SGL

# EXHIBIT 4

CONFORMED

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
6   Los Angeles, California  90017-2543
      Telephone:  (213) 443-3000
7     Facsimile:   (213) 443-3100

8   Attorneys for Mattel, Inc.

9                UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11                     EASTERN DIVISION

12  | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
13  | Plaintiff, | Consolidated with |
14  | vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
15  | MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
16  | Defendant. | NOTICE OF MOTION AND MOTION OF MATTEL, INC. FOR LEAVE TO TAKE ADDITIONAL DISCOVERY AND OBJECTIONS TO DISCOVERY MASTER ORDER OF SEPTEMBER 28, 2007; AND |
17  | | |
18  | AND CONSOLIDATED ACTIONS | |
19  | | MEMORANDUM OF POINTS AND AUTHORITIES |
20  | | |
21  | | [Declaration of B. Dylan Proctor filed concurrently] |
22  | | Hearing Date:  January 7, 2008 |
23  | | Time:              10:00 a.m.<br>Courtroom:     1 |
24  | | **Phase 1:** |
25  | | Discovery Cut-off:      January 28, 2008<br>Pre-trial Conference:   May 5, 2008 |
26  | | Trial Date:                May 27, 2008 |

27

28

EXHIBIT ____4____

PAGE ____32____

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that on January 7, 2008, at 10:00 a.m., or as soon

3   thereafter as the matter may be heard, in the courtroom of Honorable Stephen G.

4   Larson, located at 3470 Twelfth Street, Riverside, California, 92501, Mattel, Inc. will,

5   and hereby does, move the Court, pursuant to <u>Federal Rule of Civil Procedure</u> 26(b)

6   and the Court's February 12, 2007 Scheduling Order, for an order granting Mattel leave

7   to take additional depositions, including <u>Rule</u> 30(b)(6) depositions of defendants MGA

8   Entertainment, Inc., and MGAE de Mexico S.R.L. de C.V., beyond the current limit set

9   by the Court and to serve additional interrogatories on defendants. Pursuant to 28

10  U.S.C. § 636(b)(1), Mattel also seeks an additional 12 hours to depose Carter Bryant, in

11  addition to the seven hours already permitted by Discovery Master Infante.

12        Mattel makes this Motion on the grounds that the breadth and complexity of this

13  case warrant more than the 24 depositions and 50 interrogatories permitted by the

14  Court's Scheduling Order. Mattel further makes this Motion on the grounds that, given

15  Bryant's central role in the hundreds of products that MGA has sued upon in this case,

16  and because both the parties and third-parties have produced many millions of pages of

17  documents since Mr. Bryant's deposition in 2005, seven hours is not enough time to

18  fully depose Mr. Bryant.

19        This Motion is based on this Notice of Motion and Motion, the accompanying

20  Memorandum of Points and Authorities, the Declaration of B. Dylan Proctor filed

21  concurrently herewith, the records and files of this Court, and all other matters of which

22  the Court may take judicial notice.

23

24

25

26

27

28

07209/2299353.1

EXHIBIT _____4_____

PAGE _____33_____

1

## Statement of Local Rule 7-3 Compliance

2      The parties met and conferred pursuant to Local Rule 7-3 on October 3, 2007,

3 and times thereafter, but were not able to resolve this motion.

4

5 DATED: November 19, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6

7                                   By_____

8                                      Jon Corey
                                       Attorneys for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2299353.1

EXHIBIT ___4___

PAGE ___34___

1

# TABLE OF CONTENTS

2
**Page**

3
PRELIMINARY STATEMENT.............................................................................1

4
STATEMENT OF FACTS ..................................................................................3

5
ARGUMENT ......................................................................................................6

6
I.     THE RULES CONTEMPLATE ADDITIONAL DISCOVERY....................6

7
     A.     Each Category of Claims Warrants More Depositions..........................8

8
          1.     The Bratz Claims Require Additional Depositions .....................8

9
          2.     Mattel's Trade Secret and RICO Claims and MGA's Unfair Competition Claims Require Additional Depositions ...............12

10

11
     B.     Mattel Needs Additional Depositions Because the Integrity of MGA's and Bryant's Preservation of Documents Is At Issue..............14

12
     C.     Mattel Seeks Leave to Take 30(b)(6) Depositions On Non-Duplicative Topics....................................................................15

13

14
     D.     Mattel Meets The Requirements for Additional Discovery.................15

15
II.     THE COURT SHOULD GRANT LEAVE WITH RESPECT TO MATTEL'S INTERROGATORIES...........................................................16

16

17
III.    THE COURT SHOULD ALLOW ADDITIONAL TIME FOR THE BRYANT DEPOSITION ............................................................................20

18
CONCLUSION ................................................................................................25

19

20

21

22

23

24

25

26

27

28

-i-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT ____4____

PAGE _____35____

# **TABLE OF AUTHORITIES**

**Page**

### **Cases**

Andamiro v. Konami Amusement of Am.,
  2001 WL 535667 (C.D. Cal. April 26, 2001) ........................................ 8

Bahn v. NME Hosps., Inc.,
  929 F.2d 1404 (9th Cir. 1991) ........................................ 22

Bromgard v. Montana,
  2007 WL 1101179 (D. Mont. April 11, 2007) ........................... 11, 18

Collaboration Prop. v. Polycom, Inc.,
  224 F.R.D. 473 (N.D. Cal. 2004) ........................................ 8

Fresenius Med. Care Hldgs, Inc. v. Roxane Labs., Inc.,
  2007 WL 764302  Proctor Dec., Ex. 43 ................................ 23

Rx USA Wholesale, Inc. v. McKesson Corp.,
  2007 WL 1827335 (E.D.N.Y. June 25, 2007) ..................... 7, 11, 19

Whittingham  v. Amherst Coll.,
  163 F.R.D. 170 (D. Mass. 1995) ........................................ 7

### **Statutes**

Cal. Civ. Code § 3426.1 ................................................................ 20

Fed. R. Civ. P. 26(b) ........................................................... 8, 20

Fed. R. Civ. P. 30(a)(2)(A) ................................................ 7, 20

Fed. R. Civ. P. 33 ............................................................. 7, 8, 20

Local Rule 7-3 ................................................................. 3

Fed. R. Civ. P. 30(b)(6) ..................................... 9, 14, 16, 17

Fed. R. Civ. P. 53(e) .......................................................... 21

J9/2299353.1

-ii-

EXHIBIT ___4___

PAGE ___36___

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

In its Scheduling Order, the Court limited each side to 50 interrogatories and 24 fact depositions.  The Court recognized, however, that the case's complexity could require additional depositions or interrogatories and invited motions for additional discovery, if necessary:  "I don't want to say they are soft limits [on the number of depositions], but they are limits which the Court would certainly understand or would invite counsel to submit a motion to expand if there's reason to.  But I just want to have some parameters placed on this at the outset."  Likewise, with respect to the interrogatory limit, the Court stated:  "[L]et's try and work within the confines of the 50 interrogatories, and if you need more, again, the Court is going to be forthcoming, if there's a need for it."[1]  Mattel respectfully submits that time has come.

Under the Federal Rules, leave to take additional discovery "shall be granted" to the extent consistent with the principles set forth in Rule 26(b)(2).  Fed. R. Civ. P. 30(a)(2)(A) & 33(a).  The additional discovery Mattel seeks is appropriate under that framework.  It is not duplicative of prior discovery, Mattel has not had an adequate opportunity to take discovery on these matters, and the substantial benefits of discovery on these central issues outweigh any burden.  MGA has identified many dozens of witnesses with knowledge of the parties' claims or defenses.  Mattel has sued MGA for inducing several Mattel employees to misappropriate many thousands of pages of documents containing Mattel trade secrets over an extended period of time.   For its part, MGA has accused over 400 Mattel products of infringing the trade dress of more than 200 MGA products.  As MGA has proclaimed, it will be seeking "billions" of dollars from Mattel on its claims alone.  Additional depositions are warranted given the breadth and complexity of the claims and defenses in this case and the stakes involved.

---

[1]   February 12, 2007 Scheduling Conference Tr. at 22:12-15 and 24:5-7, Exhibit 7 to the Declaration of B. Dylan Proctor, dated November 19, 2007 ("Proctor Dec.").

EXHIBIT ___4___

PAGE ___37___

1    To date, Mattel has taken 18 depositions, which leaves Mattel with six
2    remaining.  Mattel has been able to take only one deposition on its counterclaims or
3    defenses to MGA's unfair competition claims, and as of yet, Mattel has been unable to
4    depose any of the individuals actively involved in the theft of Mattel's trade secrets.
5    The specific individuals who Mattel seeks to depose are identified below, along with
6    the justification for each.  In addition, Mattel cannot obtain without the Court's leave
7    the corporate testimony of MGA or MGAE de Mexico on the facts related to either
8    MGA's unfair competition claims or Mattel's counterclaims.  Mattel seeks leave to
9    serve the First Notice of Deposition of MGAE de Mexico, attached as Exhibit A, and
10   an additional Notice of Deposition of MGA, attached as Exhibit B, on those subjects.

11   Mattel also seeks leave to serve defendants with additional interrogatories.
12   Mattel has served interrogatories seeking MGA's contentions with respect to the
13   creation of Bratz and MGA's unfair competition claims.  Mattel's proposed
14   interrogatories, which are attached as Exhibit C, seek information related to Mattel's
15   counterclaims and to MGA's claims against Mattel for alleged unfair competition, as
16   well as certain of defendants' defenses.[2]

17   Finally, Mattel seeks additional time to depose Mr. Bryant.  Although Bryant was
18   deposed in 2004, since that time MGA and Bryant have produced millions of pages of
19   documents that they had long withheld until compelled by the Court, and the scope of
20   the claims in these consolidated cases has increased dramatically.  Only after Bryant's
21   deposition occurred, MGA asserted its broad unfair competition claims against Mattel.
22   Only after Bryant's deposition occurred, Mattel asserted its counterclaims, including its
23   copyright infringement and RICO counterclaims, against Bryant and other defendants.
24   And, despite the fact that Mattel sought documents relating to the origins of Bratz

---

[2]   Because defendants refuse to answer Mattel's previously served interrogatories based on spurious claims that they exceed the 50 limit, Mattel seeks leave as to them to avoid defendants' further quarreling over the counting of interrogatories and thereby obtain obvious information about defendants' own contentions and other critical subjects.

-2-
MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT ____4____

PAGE ____38____

1 | before Bryant's initial deposition, both MGA and Bryant were, unbeknownst to Mattel,
2 | withholding such documents at the time of the deposition -- this was discovered only
3 | after multiple motions to compel brought by Mattel were granted.  Judge Infante
4 | recognized that Bryant is the "most knowledge witness with respect to virtually all of
5 | the factual issues" and claims in these matters.[3]  Judge Infante nevertheless gave Mattel
6 | only seven additional hours for Bryant's deposition (on top of two hours previously
7 | granted due to Bryant's and his counsel's improper conduct during the prior deposition).
8 | That simply is not enough to depose Bryant on MGA's claims, Mattel's counterclaims
9 | and all the newly produced evidence that post-dates the 2004 deposition.  Mattel
10 | therefore requests that this Court grant additional time of another 12 hours for a total of
11 | 21 additional hours to question Bryant.

12 | **Statement of Facts**

13 | _Mattel's Original Complaint_.  Mattel filed its initial Complaint on April 27, 2004,
14 | alleging that Carter Bryant breached his duties to Mattel by working with and assisting
15 | a Mattel competitor, MGA, while he was employed by Mattel.[4]  While at Mattel,
16 | Bryant worked on the "Bratz" project.[5]  On December 7, 2004, MGA filed an answer in
17 | intervention claiming that the action put at issue MGA's rights to Bratz.[6]

18 | _MGA's Complaint_.  MGA filed a complaint against Mattel on April 13, 2005
19 | alleging that Mattel engaged in "serial copycatting" of the Bratz dolls.[7]  Mattel's action
20 | and MGA's action were later consolidated along with a declaratory relief action filed by
21 | Bryant, which was later dismissed.[8]

22 | _Mattel's Counterclaims_.  On November 19, 2006, Mattel moved for leave to
23 | amend its complaint.  The Court granted Mattel's motion, allowing Mattel's new claims

---

[3] 9/27/07 Hearing Tr. at 24:24-25:2, Proctor Dec., Ex 85.
[4] Proctor Dec., Ex. 1.
[5] Id. ¶¶ 12-13.
[6] Proctor Dec., Ex. 2.
[7] Proctor Dec., Ex. 3.
[8] Minute Order Re Consolidation (June 19, 2006), Proctor Dec., Ex. 4.

109/2299353.1

1  to be alleged as counterclaims to MGA's complaint.[9]  Mattel filed its Second Amended

2  Answer and Counterclaims on July 12, 2007.  Mattel's counterclaims against MGA

3  Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L.

4  de C.V. include claims for copyright infringement, violation of RICO, conspiracy to

5  violate RICO, misappropriation of trade secrets, intentional interference with contract,

6  aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of

7  loyalty, conversion and unfair competition.[10]  MGA's current amended answer to

8  Mattel's counterclaims asserts twenty-two affirmative defenses.[11]

9      Scheduling Conference.  At the February 12, 2007, and as reflected in a Minute

10  Order, the Court limited depositions to 24 per side and interrogatories to 50 per side.[12]

11  The Court recognized that the parties might need more depositions or interrogatories:

12          I don't want to say they are soft limits [on the number of
            depositions], but they are limits which the Court would
13          certainly understand or would invite counsel to submit a
            motion to expand if there's reason to. But I just want to have
14          some parameters placed on this at the outset.
15              . . .
16          [L]et's try and work within the confines of the 50
            interrogatories, and if you need more, again, the Court is
17          going to be forthcoming, if there's a need for it.[13]

18

19      Mattel's Interrogatories.  To date, Mattel has propounded 50 interrogatories.[14]  In

20  June 2007, Mattel propounded 19 interrogatories on MGA, MGA Hong Kong, Larian

21

22  [9]  1/11/07 Order Re Mattel's Motion for Leave to Amend, Proctor Dec., Ex. 5.
     [10] See Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims,
23  dated July 12, 2007 ("Mattel's Counterclaims"), Proctor Dec., Ex. 16.
     [11] See MGA's Amended Answer and Affirmative Defenses ("MGA's Amended
24  Answer"), Proctor Dec., Ex. 46.  MGA had filed its original answer on August 13, 2007,
    Proctor Dec., Ex. 17. After meeting and conferring, MGA acknowledged deficiencies in
25  its defenses and served its amended answer on September 19, 2007.
26  [12] 2/12/07 Scheduling Order, at 1, Proctor Dec., Ex. 6.
    [13] 2/12/07 Scheduling Conference Tr., at 22:12-15 and 24:5-7, Proctor Dec., Ex. 7.
27  [14] See Proctor Dec., Exs. 8-12, 15, 64-68.

28

EXHIBIT ____4____

PAGE ____40____

1 and Bryant, seeking information about Bratz development, their affirmative defenses to

2 Mattel's claims, defendants' contentions regarding unfair competition claims and

3 MGA's benefit from Bratz.[15]  Defendants claimed they exceeded the interrogatory limit,

4 and on September 5, 2007, Judge Infante ruled that identical interrogatories served on

5 multiple parties, as well as interrogatories asking defendants to "state all facts"

6 supporting a particular contention, "identify all persons with knowledge of such facts,"

7 and "identify all documents" relevant to such facts, would each count as only one

8 interrogatory.[16]  However, an interrogatory asking a party to state facts supporting

9 different affirmative defenses would count as a different interrogatory per defense.[17]  In

10 accordance with that ruling, on September 21, 2007, Mattel served revised sets of

11 fifteen interrogatories.[18]  Defendants nevertheless still refuse to substantively answer

12 these interrogatories, including because they allegedly exceed the number permitted.[19]

13     <u>Mattel Depositions</u>.  To date, Mattel has taken 18 depositions.  Mattel has had

14 good cause for each of those depositions.  They include:

15     • Carter Bryant – defendant

16     • Victoria O'Connor – former MGA executive with knowledge of MGA's and Larian's spoliation of evidence

17

18     • Jaqueline Prince – witness allegedly supporting Bryant's Bratz creation story

19     • Isaac Larian – defendant

20     • Steve Linker – third party with knowledge of work on Bratz before Bryant left Mattel

21

22     • Paula Garcia – Bratz project manager from the start who worked on Bratz with Bryant before he left Mattel

23     • Brooke Gilbert – Bryant's niece with knowledge of Bryant's computer on which Bryant installed and used "Evidence Eliminator"

24

25 [15]  Proctor Dec., Ex. 13.

26 [16]  9/5/07 Order Re Mattel's Interrogatories, at 5-6, Proctor Dec., Ex. 14.

[17]  <u>See id.</u> at 7.

27 [18]  Proctor Dec., Ex. 45.

[19]  <u>See</u> Proctor Dec., Exs. 73-74.

28

-5-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT ___4___

PAGE ___41___

- Kerri Brode – MGA employee with knowledge of Bryant's work on Bratz while at Mattel
- Dave Malacrida – MGA public relations employee with knowledge regarding early Bratz design and marketing
- Janet Bryant – Bryant's mother and relied upon by Bryant to establish alleged date of Bratz creation
- Thomas Bryant – Bryant's father and relied upon by Bryant to establish alleged date of Bratz creation
- Sarah Chui – worked on Bratz in 2000 for MGA Hong Kong
- Richard Irmen – Bryant's partner and relied upon by Bryant to establish alleged date of Bratz creation
- Maureen Tkacik – *Wall Street Journal* reporter to whom Larian stated, in an interview, that he chose Mr. Bryant's idea for the Bratz over several others after holding "a sort of fashion-doll design contest in late 1999" -- a time during which Bryant was employed by Mattel and months before MGA and Bryant now say they first were introduced
- MGA Entertainment, Inc. – defendant
- MGA Entertainment (HK) Limited – defendant
- Schyler Bacon – MGA employee who recruited Mattel employees who stole trade secrets
- Denise O'Neal – *Chicago Sun Times* reporter to whom Larian made prior inconsistent statements, including that MGA's creative team decided to use the "Brats" name but to change the "s" to a "z"

## Argument

### I.    THE RULES CONTEMPLATE ADDITIONAL DISCOVERY

The <u>Federal Rules</u> require that a party obtain leave before serving interrogatories or taking depositions beyond the limits established by the Court. See <u>Fed. R. Civ. P.</u> 33(a) (interrogatories); <u>id.</u> 30(a)(2)(A) (depositions). The purpose of these limits is to allow the Court to "maintain a 'tighter rein' on the extent of discovery and to minimize the potential cost of [w]ide ranging discovery". <u>Rx USA Wholesale, Inc. v. McKesson Corp.</u>, 2007 WL 1827335, at *2-3 (E.D.N.Y. June 25, 2007) (quoting <u>Whittingham v. Amherst Coll.</u>, 163 F.R.D. 170, 171-72 (D. Mass. 1995)). The limits, however, are not intended to "prevent needed discovery," and courts have "broad[] discretion" to allow

EXHIBIT ___4___

PAGE ___42___

1   additional discovery "based on the complexity" of the case at hand.  Notes of the

2   Advisory Committee (1993) to Fed. R. Civ. P. 26(b) & 33.  Leave to take additional

3   discovery "shall be granted" to the extent consistent with the principles set forth in Rule

4   26(b)(2).  Fed. R. Civ. P. 30(a)(2)(A), & 33(a).  Courts permit additional interrogatories

5   or depositions after considering whether:

6       (1) the discovery sought is unreasonably cumulative or duplicative, or is
        obtainable from some other source that is more convenient, less
7       burdensome, or less expensive; (2) the party seeking discovery has [had]
8       ample opportunity obtain the information sought; or (3) the burden or
        expense of the proposed discovery outweighs its likely benefit, taking into
9       account the needs of the case, the amount in controversy, the party's
10      resources, and the importance of the proposed discovery in resolving the
        issues.
11

12  Andamiro v. Konami Amusement of Am., 2001 WL 535667, at *2 (C.D. Cal. April

13  26, 2001) (depositions); see also Collaboration Prop. v. Polycom, Inc., 224 F.R.D.

14  473, 475 (N.D. Cal. 2004) (interrogatories).

15  **II.    MATTEL SHOULD BE GRANTED ADDITIONAL DEPOSITIONS**

16      Mattel should be permitted to take more than 24 depositions in these

17  consolidated cases.  This action contains three broad categories of significant claims,

18  each of which necessitates additional depositions:  Mattel's Bratz-related claims,

19  MGA's unfair competition claims, and Mattel's trade secret theft and RICO claims.

20  MGA's supplemental initial disclosures identified 86 witnesses with knowledge of

21  MGA's claims and defenses, 62 of whom are not Mattel employees.[20]  Mattel's

22  supplemental disclosures contain nearly double the number of witnesses with

23  knowledge, only 43 of whom are Mattel employees.[21]  Based on the million-and-a-half

24  pages that MGA has recently produced, Mattel is preparing third supplemental

25

26  [20]  See MGA Entertainment, Inc.'s Supplemental Disclosures and MGA Entertainment
    (HK) Limited, MGAE de Mexico S.R.L. de C.V. and Larian's Initial Disclosures Under
27  Rule 26(a)(1), dated September 21, 2007, at 1-16, Proctor Dec., Ex. 18.
    [21]  See Proctor Dec., Ex. 19, at 3-19.
28

EXHIBIT ____ 4

PAGE ____ 43

1  disclosures which will name additional witnesses.  Mattel can rely on Rule 30(b)(6) to
2  obtain some information, but Mattel cannot effectively prosecute or defend these cases
3  with only 24 depositions.

### A.   Each Category of Claims Warrants More Depositions

#### 1.   The Bratz Claims Require Additional Depositions

6       The number of witnesses involved with the creation of Bratz or with knowledge
7  of Bryant's purported story about when he created – and the inconsistent stories that
8  MGA spun in the media – justify additional depositions.  For example, Bryant claims
9  that he created Bratz when he was not a Mattel employee.[22]  He initially identified three
10 people who he claimed could corroborate this story:   Tom and Janet Bryant (his
11 parents) and Richard Irmen (his partner).  Bryant's mother for the first time in this case
12 recently identified a fourth:  her friend, Jeanne Galvano.  Bryant will introduce their
13 testimony to vouch for his story, so Mattel obviously needs and is entitled to depose
14 them. Similarly, Isaac Larian has repeatedly made conflicting, inconsistent statements
15 about Bratz's creation to the press, among others.[23]  Mattel thus far has deposed two of
16 the journalists who wrote those stories – depositions where Mattel's questioning lasted
17 far less than an hour.  Bryant's "alibi" witnesses and the reporters alone use up one-third
18 of Mattel's originally allotted 24 depositions.

19      In addition, at the time of the Scheduling Order, Bryant and MGA had said only
20 a handful of people worked directly on Bratz prior to 2002:  Bryant, Anna Rhee,
21 Mercedeh Ward, Margaret Leahy, Paula Garcia and unidentified people in Hong
22 Kong.[24]  In a recent supplemental interrogatory response, MGA identified 11 more
23 people who worked on the first Bratz dolls, including Sarah Halpern, Veronica Marlow,

24

25 [22] Bryant Dep. Tr. at 140:9-141:8, Proctor Dec., Ex. 20.
[23] Proctor Dec., Ex. 21.
26 [24] See Bryant's Objections and Responses to Second Set of Interrogatories
27 Propounded by Mattel, Inc., at 4, Proctor Dec., Ex. 22; MGA's Response to Mattel's
Second Set of Interrogatories, at 4:17-20, Proctor Dec., Ex. 23.
28

EXHIBIT ___4___

PAGE ___44___

1  Cecilia Kwok, David Dees, Stephen Tarmichael, Edmond Lee, Franki Tsang, Samuel
2  Wong, Stephen Lee, William Ragsdale and Wendy Ragsdale (and Mattel now knows
3  that even this list is incomplete).[25] This list does not include anyone involved in early
4  sales, marketing, product testing or advertising of Bratz.

5       When a deponent possesses unique information, courts generally grant leave for
6  additional depositions because they do not undermine the key purpose of the limits –
7  preventing duplicative discovery. See, e.g., Bromgard v. Montana, 2007 WL 1101179,
8  at *2 (D. Mont. April 11, 2007).  Courts deny additional depositions when deponents
9  are likely to have common, interchangeable information.  And, even in such instances,
10 courts may allow a limited number or sequential depositions to proceed.  See, e.g., Rx
11 USA, 2007 WL 1827335, at *3 (allowing additional deposition testimony on one but
12 not both individuals with generalized information).

13      Here, Mattel seeks depositions of witnesses who each have specific, unique
14 personal knowledge of the Bratz claims as well as about other claims in the case.  All of
15 them are third parties:

16  • Sarah Halpern – worked on the patterns for the first Bratz dolls

17  • Margaret Leahy – sculpted the first Bratz dolls and 4-Ever Best Friends

18  • Veronica Marlow – worked on the first Bratz doll fashions as well on
        products at issue in MGA's claims
19
    • Elise Cloonan – worked with Bryant on his Bratz pitch to MGA while both
20      were employed by Mattel

21  • Jesse Ramirez – worked on molds for Bratz

22  • Jeanne Galvano – alleged witness Bryant's mother recently claimed can
        verify facts relating to Bratz's creation
23
    • Stephen Lee – Managing Director of MGA Hong Kong during development
24      of Bratz and other products at issue

25  ────────────────────────
     [25]  MGA's Third Supplemental Responses to Mattel's Second Set of Interrogatories, at
26  4:1-6:3, Proctor Dec., Ex. 24; see Linker Dep. Tr. at 59:22-64:9, Proctor Dec., Ex. 25
27  (testifying that Paula (Treantafelles) Garcia and Bryant approached him and his partner,
     Liz Hogan, before Bryant left Mattel to work on Bratz).
28

-9-
MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT ___C___

PAGE ___45___

1    • Cecilia Kwok – MGA Hong Kong employee principally involved with first
          Bratz dolls
2
     • Farhad Larian – brother of Isaac Larian, who sued Isaac Larian and alleged,
3          inter alia, that MGA was working on Bratz by early 2000 (months before
           MGA and Bryant claim to have met) when he was a part owner of MGA[26]
4
     • Certain as yet unidentified attorneys who represented parties to disputes
5          between Isaac Larian and Farhad Larian in which the creation of and value of
           Bratz was at issue
6
     • Sandra Bilotto – sculptor who worked on Prayer Angel dolls at issue[27]
7
     • Anne Wang – represented Bryant in negotiations with MGA while he was a
8          Mattel employee that led to the agreement dated "as of September 18, 2000"[28]
9    • David Rosenbaum – represented MGA in negotiations with Bryant's first
           agreement with MGA[29]
10
     • Christensen Glaser LLP – firm to which Victoria O'Connor faxed the
11         MGA/Bryant agreement that Isaac Larian had ordered her to alter[30]
12   • Lucy Arant – lawyer with knowledge of MGA's first use of Bratz
13   • Mitchell Kamarck – former MGA counsel who responsible for patent
           applications, including those in which Isaac Larian had claimed to be the
14         inventor of Bratz features that Bryant has since testified he created[31]
15   • Carol Witschell – lawyer who worked on MGA trademark applications and
           other trademark matters at issue
16
     • Nana Ashong – former MGA employee who stated Bratz was created during
17         Bryant's employment by Mattel[32]
18   • Larry McFarland – wrote MGA copyright registrations that stated the Bratz
           dolls were created during 2000 and that, after this suit was filed, MGA
19         claimed were incorrect
20   • Eric Yip – MGA Hong Kong Sales Administrator in 2000 and 2001, when
           Bratz were created and first shipped to Bandai in Spain[33]
21

22   _____

23   [26] See Larian Dep. Tr. at 159:17-160:14, Proctor Dec. Ex. 54.
     [27] Brode Dep. Tr. at 303:9-316:16, Proctor Dec. Ex. 55; Dep. Exhs. 607, 608, 609,
24   Proctor Dec., Ex. 56.
     [28] See Bryant Tr. at 39:6-42:18, Proctor Dec. Ex. 60.
25   [29] See O'Connor Dep. Tr. at 94:1-95:21, Proctor Dec., Ex. 61.
     [30] See O'Connor Tr. 17:3-19:19, Proctor Dec., Ex 75.
26   [31] See Armstrong Dep. Tr. at 10:7-12, 26:16-23, 244:18-21, Proctor Dec. Ex. 62.
     [32] See Brode Tr. at 87:13-88:11, Proctor Dec., Ex. 55.
27   [33] See Harris Dep. Tr. at 121:16-122:17, Proctor Dec. Ex. 63.

28

-10-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT ___4___

PAGE ___46___

- Gentle Giant Studios – created relevant moldings and casts while Bryant was still employed at Mattel[34]

- Christopher Palmeri – *Business Week* reporter who wrote that Larian purportedly "got the idea for Bratz after seeing his own kids run around in navel-bearing tops and hip-huggers"[35]

- Jeff Weiss – *San Fernando Valley Business Journal* reporter who quoted another inconsistent Larian statement concerning the origin of Bratz[36]

- Kickapoo High School – where Bryant allegedly found inspiration for Bratz and author of documents refuting that claim

- LA Focus – conducted Bratz focus groups, including focus groups that MGA denies occured

- Joyce Ng – independent contractor who moderated Bratz focus groups

- Rachel Harris – former MGA employee who worked on initial Bratz packaging as well as on other packaging which MGA's claims rest on

- Peter Marlow – spouse of Veronica Marlow who negotiated millions of dollars in payments for Bratz from Bryant on her behalf

- Andreas Koch – former MGA manager who has knowledge of Bryant's initial contacts with MGA

- Kami Gillmour – former Mattel and MGA employee who has knowledge regarding Paula Garcia's employment with MGA, confidential information taken from Mattel and MGA's projects at issue

- Mercedeh Ward – engineer on initial Bratz dolls and author of emails reflecting the use of Mattel property in its creation

- Moss Adams – accounting firm with knowledge of MGA's profits and distributions thereof to Larian (who owns 90% of MGA's shares)

- Wachovia Bank – bank identified as being involved in early Bratz financing and knowledgeable about MGA's net worth or value

- Amy Myers – formerly with MGA and has knowledge of Prayer Angels project that MGA has raised as a defense

- Two or three parties MGA sued for infringement of Bratz and whose identities are not yet known to Mattel – they will have knowledge of the dolls and other properties MGA has sued on in the past, which is relevant to refuting MGA's current claims that earlier iterations of Bratz products look nothing like subsequent iteration of Bratz products

---

[34] See Proctor Dec., Ex 72.
[35] Proctor Dec. Ex. 52.
[36] Proctor Dec. Ex. 53.

-11-

EXHIBIT _____4_____

PAGE _____47_____

1    Further, many of these same witnesses are also knowledgeable as to MGA's

2  claims of unfair competition and Mattel's trade secret and RICO claims, as they

3  continued to work with MGA in later years.  For example, MGA has already identified

4  Halpern, Kwok, Leahy, Marlow, Lee, Ward and Yip as individuals involved with the

5  products at issue.[37]  Likewise, Ramirez continued working on molds for subsequent

6  Bratz dolls through at least 2005,[38] while   Kamarck,[39] Witschell,[40] Arant, and

7  McFarland[41] were involved in subsequent Bratz-related intellectual property matters.

8  As such, testimony from these witnesses is essential for both phases of trial.

9         2.    **Mattel's Trade Secret and RICO Claims and MGA's Unfair**

10             **Competition Claims Require Additional Depositions**

11    Mattel has sued MGA for misappropriating Mattel trade secrets and RICO

12  violations by, among other things, stealing thousands of pages of Mattel confidential

13  information in the United States, Canada and Mexico.[42]  Mattel identified Ron Brawer,

14  Janine Brisbois, Gustavo Machado, Mariana Trueba Almada and Pablo Vargas as

15  individuals who misappropriated Mattel trade secrets.  The only person Mattel has been

16  able to depose on its counterclaims is Ms. Bacon, who coordinated MGA's recruiting of

17

18

19

20

---

[37]   See MGA's Fourth Supp. Response to Interrogatory No. 1 of Mattel's First Set of
21  Interrogatories Re Claims of Unfair Competition, at 10-12, 18, 19, Proctor Dec., Ex. 27.
[38]   See, e.g., Proctor Dec., Ex. 69 (showing various Bratz-related work in 2005).
22  [39]   See, e.g., Armstrong Tr. 26:5-23, Proctor Dec., Ex. 62 (discussing involvement in
23  Bratz-related patent applications through 2004).
[40]   See, e.g., Proctor Dec., Ex. 70 (discussing involvement with Bratz registrations).
24  [41]   See, e.g., Proctor Dec., Ex. 71 (discussing involvement with Bratz licensing).
25  [42]   Mattel's Counterclaims ¶¶ 37-54, 70-76, Proctor Dec., Ex 16.

26

27

28

07209/2299353.1

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT    4

PAGE    48

1  Mattel employees.[43]   Accordingly, Mattel seeks leave to take the depositions of the
2  following witnesses on such claims:[44]

3  • Ron Brawer – has knowledge of stolen Mattel trade secrets in the U.S.

4  • Janine Brisbois – former Mattel employee who stole Mattel trade secrets

5  • Gustavo Machado – former Mattel employee who stole Mattel trade secrets

6  • Mariana Trueba – former Mattel employee who stole Mattel trade secrets

7  • Pablo Vargas – former Mattel employee who stole Mattel trade secrets

8  • Ricardo Abundis – has knowledge of stolen Mattel trade secrets in Mexico

9  • Jorge Castilla – believed to have stolen Mattel trade secrets in the U.S.

10 • Nic Contreras – believed to have knowledge of stolen Mattel trade secrets

11 • Dan Cooney – believed to have knowledge of stolen Mattel trade secrets

12 • Susan Kuemmerle – believed to have knowledge regarding stolen Mattel
13    trade secrets in Mexico

14 • Shirin Salemnia – believed to have knowledge of stolen Mattel trade secrets

15 • MGAE de Mexico – defendant to trade secret theft and RICO claims

16 • MGA Entertainment, Inc. – defendant

17    Further, MGA has accused Mattel of trade dress infringement and dilution and
18 unfair competition in connection with more than 440 products.[45]   MGA has identified

19

20    [43]   Bacon Dep. Tr. at 12:12-13, 51:22-52:17, 86:8-12, and 114:19-116:9, Proctor Dec.,
21 Ex. 28.  And even with respect to Ms. Bacon's deposition, MGA attempted to prevent her
   from testifying on the grounds that Mattel had not noticed her deposition individually, but
22 only as a Rule 30(b)(6) designee.  See Proctor Dec., Ex. 29.
      [44]   These are those who Mattel has identified to date.  Mattel anticipates that there may
23 be more who will need to be deposed in connection with MGA's unfair competition claims
24 and Mattel's counterclaims because (a) it continues to review the over one-and-a-half
   million pages of documents that MGA produced in the past month and (b) MGA, to date,
25 has failed to identify how it anticipates defending Mattel's counterclaims or which
   documents or witnesses it will rely upon to do so, including by its ongoing failures to
26 answer Mattel contention interrogatories related to its defenses to Mattel's counterclaims.
      [45]   MGA's Supp. Response to Interrogatory No. 2 Of Mattel, Inc.'s First Set of
27 Interrogatories Re Claims of Unfair Competition, at 5-19, Proctor Dec., Ex. 26.

28

EXHIBIT ___4___

PAGE ___49___

1  117 witnesses with knowledge of the creation or promotion of those products,[46]
2  including many of the persons listed above. Mattel has taken the depositions of only
3  six of those 117 named individuals, and has not yet been able to depose two of them,
4  Bryant or Larian, regarding the unfair competition allegations.

5      **B.    Mattel Needs Additional Depositions Because the Integrity of MGA's**
6            **and Bryant's Preservation of Documents Is At Issue**

7          Mattel also is entitled to inquire about MGA's and Bryant's preservation and
8  production of evidence. For example, as MGA's designee on document preservation
9  testified, MGA had only obtained off-site documents as of the summer of 2007 and had
10 searched none of these documents for responsive documents, even though the Court
11 had ordered MGA to produce them and MGA had previously represented that its
12 production was complete.[47] Further, MGA's designee on MGA's electronic document
13 preservation and collection testified that MGA's only search of such information was a
14 single search of Isaac Larian's e-mails in 2005, nothing more.[48] MGA's designee
15 repeatedly testified that Joe Tiongco, who Mattel seeks to depose, has more
16 knowledge.[49] In the same vein, Mattel seeks to depose Daphne Gronich, who provided
17 the preservation declaration on MGA's behalf.[50] In addition, there are serious issues
18 about Bryant's hard drives, including because of Bryant's prior counsel's conflicting
19 representations about their collection and preservation – and indeed even their
20 existence. Mattel therefore seeks testimony on these subjects.[51] Bryant's belated
21 revelation that he installed and used the "Evidence Eliminator" program on these drives

22
23  [46]  MGA's Fourth Supp. Resp. Unfair Comp. No. 1, at 5-16, Proctor Dec., Ex. 27.
     [47]  9/24/07 Stip. and Order, Proctor Dec., Ex. 30; Tonnu Dep. Tr. at 612:13-612:15,
24  620:14-621:21, Proctor Dec., Ex. 31; 8/13/07 Order, at 14:18-22, Proctor Dec., Ex. 32.
     [48]  See Lockhart Deposition Tr. at 265:1-11, Proctor Dec., Ex. 33.
25   [49]  Id. at 116:2-14, 150:25-151:5, 158:10-15. 258:17-259:9, 265:1-11, 266:12-267:5.
     [50]  See Dec. of Daphne Gronich in Response to Court's Request for Information
26  Regarding Document Preservation, dated September 10, 2007, Proctor Dec., Ex. 34.
     [51]  Notice of Deposition of Littler Mendelson Pursuant to Federal Rule of Procedure
27  30(b)(6), dated September 6, 2007, Proctor Dec., Ex. 35.
28

EXHIBIT ___4___

PAGE ___50___

1  underscores all the more the legitimacy of full and fair discovery into the integrity of
2  his drives.

3     **C.**     **Mattel Seeks Leave to Take 30(b)(6) Depositions On Non-Duplicative**
4              **Topics**

5         MGA objected, and the Discovery Master has ruled, that a corporate party who
6  has been deposed pursuant to a Rule 30(b)(6) notice cannot be deposed pursuant to a
7  subsequent notice absent Court leave.[52] Mattel has not propounded a Rule 30(b)(6)
8  Notice of Deposition on MGA or MGAE de Mexico related to either MGA's unfair
9  competition claims or Mattel's counterclaims.   Mattel's Notices of Deposition—
10 attached as Exhibits A and B—contain topics of testimony which relate to those
11 claims.[53]  Mattel has not previously served any Rule 30(b)(6) Notice on MGAE de
12 Mexico at all, and the topics in the additional Notice to MGA are not duplicative of
13 those in Mattel's prior Notices to MGA.[54] Mattel respectfully submits that it should be
14 granted leave to proceed with those depositions.

15    **D.**     **Mattel Meets The Requirements for Additional Discovery**

16        When a deponent possess unique information, courts will generally allow leave
17 for additional depositions because they do not undermine the key purpose of the

18 _____

19  [52]  9/25/07 Order Re Mattel's Motion to Compel MGA to Produce Witnesses Pursuant
    to Third Notice of Deposition Under 30(b)(6), Proctor Dec., Ex. 36.
20  [53]  See Exhibits A & B.  Mattel's Fourth Notice of Deposition is far less than
    burdensome compared to MGA's recently served Notice of Deposition, which contains
21  more than 80 topics, each of which has many sub-parts. See MGA Entertainment, Inc.'s
    Notice of Deposition of Mattel, dated September 5, 2007, Proctor Dec., Ex. 40.
22  [54]  Mattel's First Notice of Deposition was narrowly tailored to obtain information
23  related to MGA's contentions that Bryant and Anna Rhee had worked on Prayer Angels,
    not Bratz, while Bryant employed by Mattel. Proctor Dec., Ex. 37. Mattel's Second
24  Notice sought information related to Bratz, including Bratz revenues, costs and profits, and
    evidence preservation and collection. Proctor Dec., Ex. 38. Mattel's Third Notice sought
25  follow-up information on matters that had arisen in discovery, including with respect to
26  specific electronic evidence, specific individuals who worked on the first Bratz dolls,
    payments made to witnesses or parties, and statements to reporters related to Bratz's
27  creation and inspiration. Proctor Dec., Ex. 39.
28

                                    -15-
                MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

                    EXHIBIT ____4____

                    PAGE ____51____

1 | limits—preventing duplicative discovery. <u>See, e.g.,</u> <u>Bromgard</u>, 2007 WL 1101179, at
2 | *2 (D. Mont. April 11, 2007).   As explained above, Mattel seeks depositions of
3 | individuals who each have specific, unique knowledge of the underlying events.

4 |      Without additional depositions, Mattel cannot discover the full extent of MGA's
5 | wrongdoing or adequately prepare to defend against MGA's claims.   Mattel seeks a
6 | declaration of ownership of Bratz works that Bryant created during his Mattel
7 | employment and their derivatives – property that MGA and Bryant have claimed are
8 | worth hundreds of millions of dollars and perhaps more.   Mattel has accused MGA of
9 | stealing thousands of pages of Mattel's most valuable trade secrets, including product
10 | lines, and strategic plans.   MGA has accused Mattel of infringing hundreds of MGA
11 | products, alleging "billions" of dollars in damages.   In light of the magnitude of this
12 | case, the burden or additional expense of these depositions pales in comparison to
13 | Mattel's need to fully prepare to try this case.   As set forth above, the depositions that
14 | Mattel seeks by this motion are not collateral, but go to the heart of its claims and
15 | defenses.   <u>See, e.g.,</u> <u>Rx USA</u>, 2007 WL 1827335, at *2-3 (additional depositions
16 | warranted in a dispute between large corporations, given the complexity of the issues
17 | and the parties' resources).

18 | **III.   THE COURT SHOULD GRANT LEAVE WITH RESPECT TO**
19 | **MATTEL'S INTERROGATORIES**

20 |      Two categories of interrogatories are involved here:   first, Mattel's proposed
21 | additional interrogatories that it seeks leave to serve; and, second, interrogatories which
22 | Mattel has already served on defendants.

23 |      **A.   Mattel Should Be Allowed To Propound Additional Interrogatories**
24 |      Mattel seeks leave to propound additional interrogatories related to MGA's unfair
25 | competition claims and Mattel's counterclaims, and MGA's evidence collection and
26 | preservation.   To properly prepare for trial, Mattel seeks leave to serve interrogatories
27 | requiring defendants to identify the facts, documents and witnesses it will use to prove
28 | its claims, defenses and damages.   Mattel's proposed interrogatories thus seek to


EXHIBIT 4
PAGE 52

1  identify which specific Mattel designs or products defendants allege infringe on
2  defendants' designs[55] and trade dress[56] and the facts supporting those legal claims.[57]
3  Additionally, Mattel seeks to determine defendants' position regarding their
4  misappropriation of Mattel documents, including whether defendants contend that no
5  such documents were obtained improperly,[58] that the information contained therein has
6  no value as a trade secret,[59] that the information had been publicly disclosed,[60] that
7  defendants did not use or disclose such information,[61] that any such disclosure neither
8  benefited defendants nor harmed Mattel,[62] and that defendants have a right to possess,
9  use or disclose any such documents in their possession.[63] These are essential elements
10  of the trade secret theft claim. See Cal. Civ. Code § 3426.1. Finally, Mattel seeks
11  information related to MGA's efforts to collect and preserve evidence relevant or
12  potentially relevant to this action.[64]

13       The proposed interrogatories are consistent with the factors set out in Rule 26(b)
14  and should be permitted. They seek disclosure of specific relevant facts regarding
15  topics which have not been the subject of prior interrogatories. The majority of Mattel's
16  prior interrogatories focused on issues related to creation and ownership of Bratz.[65]
17  Only Mattel's set of interrogatories relating to MGA's unfair competition claims could

18

19

20       [55]  See Mattel's Proposed Interrogatory No. 51.
         [56]  See Mattel's Proposed Interrogatory No. 52.
21       [57]  See Mattel's Proposed Interrogatories Nos. 53, 54, 55.
         [58]  See Mattel's Proposed Interrogatory No. 56.
22       [59]  See Mattel's Proposed Interrogatory No. 57.
         [60]  See Mattel's Proposed Interrogatory No. 58.
23       [61]  See Mattel's Proposed Interrogatory No. 59.
         [62]  See Mattel's Proposed Interrogatory No. 60.
24       [63]  See Mattel's Proposed Interrogatory No. 61.
         [64]  See Mattel's Proposed Interrogatories Nos. 63-64.
25       [65]  See First Set to Bryant, Proctor Dec., Ex 8; First Set to MGA, Proctor Dec., Ex. 9;
26  Second Set to Bryant, Proctor Dec., Ex. 11; Second Set to MGA, Proctor Dec., Ex. 10;
27  Third Set Revised, Proctor Dec., Ex. 45.

28

EXHIBIT ___4___

PAGE ___53___

1  conceivably overlap with the proposed interrogatories.[66] However, the interrogatories
2  already propounded focused on issues distinct from the proposed interrogatories—
3  specifically, facts relating to MGA employees involved with certain MGA products,[67]
4  MGA's alleged injuries,[68] MGA's allegations regarding Mattel's conduct with certain
5  third-parties in the industry[69] and MGA's allegations of product confusion.[70] These are
6  not duplicated in the interrogatories which Mattel is proposing.

7       Finally, the benefits of the proposed interrogatories outweigh any added burden,
8  as these type of facts are properly revealed through interrogatories, and the information
9  sought by the interrogatories will advance this litigation and avoid surprise at trial.

10      **B.    The Court Should Grant Leave With Respect To Mattel's**
11            **Outstanding Interrogatories That Defendants Will Not Answer**

12      To date, Mattel has served 50 interrogatories on the defendants.  Yet, by
13  objecting to some of those previously served interrogatories served as being compound,
14  defendants refuse to answer on the purported ground that they exceed the Court's
15  limit.[71]  Although defendants are wrong, the Court should eliminate further delay and
16  quarreling by defendants by simply granting Mattel leave to serve them regardless of
17  how they are counted.

18      Mattel has been seeking answers to these basic interrogatories for over five
19  months now.  To justify their wholesale refusal to answer them, defendants claimed
20  they exceeded the Court's limit on the number of interrogatories.  Mattel moved to
21  compel, defendants moved for a protective order, and in a September 5, 2007 Order
22  Judge Infante provided guidance on the counting of the interrogatories.  Mattel then

23
24  [66] See First Set Re Unfair Comp., Proctor Dec., Ex. 12.
    [67] See id. No. 1.
25  [68] See id. No. 4.
    [69] See id. Nos. 5, 8, 9, and 10.
26  [70] See id. No. 7.
27  [71] See Bryant's Objections to Revised Third Set, Proctor Dec., Ex. 73; Bryant's
    Objections to Amended Fourth Set, Proctor Dec., Ex. 74.
28

EXHIBIT 4

PAGE 54

1  propounded revised interrogatories that were consistent with the Discovery Master's
2  Order.

3       Defendants nevertheless claim, once again, that Mattel exceeds its 50 allotted
4  interrogatories. Not only is this without merit,[72] but it is clear that defendants rehash
5  this objection for no other reason than to obstruct. Bryant refuses to answer any
6  interrogatory past No. 27 because "Mattel has propounded more than 50
7  interrogatories."[73] And, even the minimal answers he gave to others amply confirms
8  that he continues to stonewall on even basic discovery in this case. MGA makes
9  essentially the same objection.[74] Accordingly, through nothing more than creatively

10  
11      [72] The essence of the defendants' objection is that Mattel's revised interrogatories are
12  compound interrogatories because they improperly require them to respond to individual
interrogatories with "different and distinct facts." See Bryant's Objections to Revised
13  Third Set, at 18; Bryant's Objections to Amended Fourth Set, at 4. For example,
defendants frivolously object to having to identify both the name of a product and its
14  corresponding product number. But Judge Infante ruled on this matter, explaining that
interrogatories "'containing subparts directed at eliciting details concerning [a] common
15  theme should be considered a single question,'" while interrogatories on "discrete issues"
should be treated as multiple interrogatories. Order re Mattel's Interrogs., at 5 (quoting 8A
16  Wright & Miller, Federal Practice & Procedure § 2168.1 (2d ed. 1994)); see also id. at 7.
17  The scope of Mattel's revised interrogatories is no different than those which Judge Infante
ruled were permissible, as in both instances the "subparts are related and directed to the
18  underlying details of a specifically identified" subject. See id. Judge Infante specifically
observed that under the Advisory Committee notes, interrogatories which required distinct
19  factual answers relating to the same subject—e.g., the time, place, persons present, and
20  contents of a particular communication—should be treated as a single interrogatory. See
id. Mattel's revised interrogatories are not compound, and defendants' arguments to the
21  contrary are groundless: the fact that an interrogatory answer requires different facts does
22  not convert it into a compound interrogatory on different issues.
    [73] Bryant's Objections to Revised Third Set, at 7. Bryant then makes the same
23  objection to the remaining 23 interrogatories.
    [74] See MGA's Objections to Revised Third Set, at 8, Proctor Dec., Ex. 76; MGA (HK)
24  Ltd.'s Objections to Revised Third Set, at 17, Proctor Dec., Ex. 77; MGAE de Mexico's
Objections to Revised Third Set, at 8, Proctor Dec., Ex. 78; Larian's Objections to Revised
25  Third, at 8, Proctor Dec., Ex. 79; MGA's Objections Amended Fourth Set, at 7, Proctor
26  Dec., Ex. 80; MGA (HK) Ltd.'S Objections to Amended Fourth Set, at 7-8, Proctor Dec.,
Ex. 81; MGAE de Mexico's Objections to Amended Fourth Set, at 8, Proctor Dec., Ex. 82;
27  Larian's Objections to Amended Fourth Set, at 7, Proctor Dec., Ex. 83.
28  

EXHIBIT _____4_____

PAGE _____55_____

1  counting a few interrogatories as a multitude, defendants manufacture grounds to delay

2  yet more and refuse obviously appropriate discovery.  To the extent that defendants

3  have substantive objections to specific interrogatories, these issues may be properly

4  heard before the Discovery Master.  But defendants should not be permitted to serially

5  raise the same objection to a few specific interrogatories in order to delay for yet more

6  months in responding to the bulk of Mattel's interrogatories.  Mattel requests that this

7  Court cut through this issue by granting Mattel leave, to the extent needed, to serve

8  each of the interrogatories that have been served to date regardless of how they are

9  counted.

10  **IV.  THE COURT SHOULD ALLOW ADDITIONAL TIME FOR THE**

11  **BRYANT DEPOSITION**

12         On September 28, 2007, the Discovery Master issued an Order Granting in Part

13  Mattel's Motion for Additional Time to Depose Carter Bryant for All Purposes,

14  granting Mattel seven additional hours to depose Bryant (in addition to 2 hours

15  previously granted based on counsel's dozens of improper instructions not to answer at

16  the Bryant deposition), but denying Mattel the 21 hours that it sought.[75]  Mattel

17  respectfully submits that the facts, as determined by the Discovery Master, justify far

18  more than seven additional hours, and the Court should grant additional time.

19         Mattel does not contest the Discovery Master's factual findings in any way.  To

20  the contrary, the underlying factual findings were plainly correct.  As Judge Infante

21  noted, Mattel's deposition of Bryant in 2004 took place before MGA even brought its

22  unfair competition claims and before Mattel filed its counterclaims, and Mattel had no

23  opportunity to depose Bryant on either.[76]  Thus, as Judge Infante justifiably found:

24         •   The new claims and defenses that were added to the case after Bryant's
             deposition justify additional deposition time. . . . Without question,

25  _____

26  [75]  Order Granting in Part Mattel's Motion for Additional Time to Depose Carter Bryant for All Purposes (Sept. 28, 2007) ("Order re Additional Time"), at 8:7-13, Proctor Dec., Ex. 43.

27  [76]  Id. at 5:2-10.

28

EXHIBIT ____4____

PAGE ____56____

> Bryant is a critical witness regarding MGA's unfair competition claims and Mattel has not had an opportunity to depose him on such claims.[77]

- In addition, Mattel filed a counterclaim against Bryant, MGA, and other defendants in 2007, asserting thirteen different claims . . . . Bryant filed an answer asserting over twenty affirmative defenses. Mattel has not had an opportunity to depose Bryant on any of these claims or defenses.[78]

- Bryant is the central figure in this litigation and arguably the most important witness *for virtually every claim in the case.* No other witness in the case has his depth and breadth of relevant information.[79]

Bryant and MGA cannot dispute any of this.  In interrogatory responses, MGA lists Bryant as a person directly involved with and knowledgeable about the allegedly infringed MGA products that MGA has put at issue.[80]  MGA's responses to Mattel's interrogatories also state that the <u>entire</u> Bratz line is the subject of MGA's claims, and an MGA witness has declared that there are more than 200 Bratz products.[81]  Moreover, Paula Garcia, MGA's Vice President of Product Design and Development, has declared that she and  Bryant are "the *only* people who know what the concept is and who see the early product drawings" with respect to many Bratz products.[82]  That is particularly important because many of both Mattel's *and* MGA's claims will turn on the source and timing of these products at issue.  As the Court knows, Mattel's defenses to MGA's infringement claims rest, in part, on the fact that it was MGA which stole and copied Mattel products through its trade secret thefts.  Testimony on the origins of those MGA products and when they were created is indispensable.

---

[77]  <u>Id.</u> at 5:4-5.
[78]  <u>Id.</u> at 5:6-10.
[79]  <u>Id.</u> at 5:15-17 (emphasis added).
[80]  MGA's Responses to Mattel's First Set of Interrogatories Re Claims of Unfair Competition, dated January 19, 2007, Response No. 1, at 6:9, Proctor Dec., Ex. 57.
[81]  <u>See</u> Declaration of Patricia Perrier in Support of MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz Ownership in Phase One, dated May 25, 2007, at ¶ 2, Proctor Dec., Ex. 58; MGA Sup. Resp. Unfair Comp. No. 2, Proctor Dec., Ex. 26.
[82]  Declaration of Paula Garcia in Support of MGA's Opposition to Mattel's Motion to Compel, dated February 9, 2007, ¶ 6 (emphasis in original), Proctor Dec., Ex. 59.

07209/2299353.1

-21-

EXHIBIT ____4____

PAGE ____57____

1    Bryant is also obviously a crucial witness on Mattel's copyright infringement,

2  RICO and other counterclaims, which raise a host of new issues Bryant has not been

3  deposed on. According to MGA, Mattel's copyright infringement claim against Bryant

4  alone relates to "*hundreds* of products."[83]  Bryant was also personally involved, either

5  as sender or recipient, in approximately 100 of the predicate acts of mail and wire fraud

6  alleged by Mattel.[84]  Mattel is entitled to question Bryant about these and all the other

7  issues presented for the first time by Mattel's counterclaims and Bryant's answer.

8    Moreover, as Judge Infante found, "new evidence justifies additional time to

9  depose Bryant."[85]  Judge Infante noted that Bryant's deposition took place before "98

10  percent of Bryant's and MGA's collective document production took place"[86] – and that

11  did not even reflect the more than a million-and-a-half pages, that MGA has produced

12  in recent weeks.[87]  In truth, *99.9%* of defendants' production in this case has occurred

13  only after Bryant's 2004 deposition.  Thus, Mattel has had no opportunity to examine

14  Bryant on the vast bulk of the evidence, whether relevant to new claims or the original

15  ones.  This includes, for example:

16     •    Bryant's fee agreements with MGA, which reflect that MGA is paying
           Bryant's legal fees at its discretion, and which were withheld by Bryant
17          even in the face of prior court orders;

18     •    Bratz design drawings produced by Bryant for the first time this year,
           only after being ordered, which bear handwritten dates of September
19          19, 1999, at time when Bryant was employed by Mattel;

20     •    Bryant's desktop hard drive, which reveals his use of "Evidence
           Eliminator" software, which was not produced until compelled this
21          year.

22    _____

      [83]  See MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz
23  Ownership in Phase One at 3:12-19.
      [84]  See Mattel's Second Amended Answer & Counterclaims, Exhibit C.
24    [85]  Order re Additional Time at 5:20 (font altered), Proctor Dec., Ex. 43.
      [86]  Id. at 5:24-27, Proctor Dec., Ex. 43.  Notably, Judge Infante calculated the 98
25  percent number based on MGA's production of 157,000 pages of documents as of the close
26  of briefing in late August.  Since that time MGA has produced over a million-and-a-half
    pages of documents.  See Proctor Dec. ¶ 45.
27    [87]  See Proctor Dec. ¶ 45.

28

                                    -22-

EXHIBIT ___4___

PAGE ___58___

1      •    Original Bratz drawings, which Bryant did not make available for
              inspection until this summer, after being ordered to do so,
2               notwithstanding his promise that he would produce such documents at
              the 2004 deposition.

3      •    A fax from Bryant to David Rosenbaum, outside counsel for MGA,
4               dated September 14, 2000, wherein Bryant stated that he could not ask
              Mattel's Human Resources any more questions about his contract with
5               Mattel "without risking suspicion."

6      •    October 10, 2000 e-mails between Isaac Larian, Victoria O'Connor and
              Paula Garcia (formerly Treantafelles), reflecting that Bryant worked on
7               Bratz with MGA "on average about 4 hours a day," starting at least six
              weeks before he left Mattel.

8      •    Invoices showing that Veronica Marlow, a key third party, billed MGA
9               for 169 hours of development services on Bratz that were performed
              before Bryant left Mattel.

10

11 The list of new evidence that was requested by Mattel before Bryant's deposition but

12 first produced by defendants only later literally goes on and on. As Judge Infante

13 ruled, "a witness may be re-deposed with respect to . . . new developments" in a

14 case, including new documents such as these, as well as new claims.[88]

15      Despite his factual findings, Judge Infante ruled that Mattel is only entitled to an

16 additional seven hours of deposition. Previously Judge Infante had gave Mattel two

17 additional hours as a result of the improper instructions and objections by counsel at

18 Bryant's deposition.[89] So, under Judge Infante's ruling, Mattel has been limited to only

19 seven hours to depose Bryant – the "most important witness for virtually every claim in

20 the case"[90] – on MGA's claims, Mattel's counterclaims, the hundreds of MGA and

21 Mattel products now at issue about which Bryant has unique knowledge, and the vast

22 amounts of recently produced new evidence. This is unfair. The ruling that Mattel be

23

24   [88]    Order re Additional Time at 4:20-24 (quoting Fresenius Med. Care Hldgs., Inc. v.
25 Roxane Labs., Inc., 2007 WL 764302 (S.D. Ohio 2007)), Proctor Dec., Ex. 43.
  [89]    Order re Additional Time at 7:24-25, Proctor Dec., Ex. 43; see Order Granting In
26 Part And Denying In Part Mattel's Motion To Overrule Instructions Not To Answer During
27 The Deposition Of Carter Bryant (March 7, 2007), Proctor Dec., Ex. 44.
  [90]    Id. at 5:15-17.

28

-23-
MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT _____4_____

PAGE _____59_____

1   granted only seven additional hours is clearly erroneous given Bryant's singular

2   importance, the magnitude of this case and the tectonic shift of claims.

3      Also, based on <u>Rule 30</u>'s "presumptive one day, seven-hour limitation on

4   depositions," Judge Infante awarded Mattel a total of 7 hours to depose Bryant on all of

5   MGA's claims and all of Mattel's counterclaims.[91]  It is simply impossible to conduct a

6   deposition on those claims – which had not even been filed when Bryant was first

7   deposed – in that amount of time.  Judge Infante apparently awarded Mattel no

8   additional time based on new evidence, even though 99.9% of defendants' production

9   has taken place since the 2004 deposition.  That effectively punishes Mattel for

10  defendants' discovery misconduct.  Mattel requested defendants' documents before the

11  deposition took place; defendants withheld them at their own peril, not at Mattel's.[92]

12  Mattel is entitled to a fair amount of time to depose the key witness in the case on the

13  new claims and evidence he has not been deposed on.  The Court should afford that,

14  and grant Mattel a total of 21 hours for the deposition.[93]

15

16

_____

17  [91]  <u>Id.</u> at 8:10-13.

18  [92]  <u>See, e.g.</u>, <u>Fresenius Medical Care Holdings, Inc. v. Roxane Laboratories, Inc.</u>, 2007 WL 764302, at *2 (S.D. Ohio 2007) (originally cited by Bryant to Judge Infante) (allowing

19  second deposition because defendant failed to produce requested documents prior to first deposition); <u>Robins v. Scholastic Book Fairs</u>, 928 F. Supp. 1027, 1036 (D. Or. 1996) ("the

20  second set of depositions of these individuals was necessary because they had to be questioned about additional documents that Defendant produced after the first set of

21  depositions"); <u>Ritchie v. U.S.</u>, 2004 WL 1161171, at *3 (N.D. Cal. 2004) ("when further

22  evidence linking [witness to the project in dispute] subsequently came to light this court permitted plaintiff to depose [the witness] a second time").

23  [93]  In the alternative, the Court should excercise its discretion to enlarge Mattel's time

24  to depose Bryant.  The Court previously extended MGA's deadlines to produce documents that it was compelled to produce even though Judge Infante had specifically *rejected*

25  MGA's request for additional time to comply and despite MGA's failure to show there was

26  any error in that ruling.  Here, there can be no dispute that the Court has the right to ensure that the parties receive fair discovery, proportionate to the magnitude and complexity of

27  the case, and that trial in this matter is conducted without undue surprises which will cause

28  prejudice and waste the time of the Court and the jury.

07209/2299353.1

-24-
MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT ____4____

PAGE ____60____



1

**Conclusion**

2      For the foregoing reasons, Mattel respectfully requests that the Court grant

3 Mattel's motion for leave.

4 DATED: November 19, 2007      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

5

6

By Jon Corey /s/

7       Jon Corey
      Attorneys for Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2299353.1

-25-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT ___4___

PAGE ___61___