# EXHIBIT 11

RECEIVED

SEP 1 0 2007

1  DALE M. CENDALI (admitted *pro hac vice*)
   dcendali@omm.com
2  DIANA M. TORRES (S.B. #162284)
   dtorres@omm.com
3  JAMES P. JENAL (S.B. # 180190)
   jjenal@omm.com
4  O'MELVENY & MYERS LLP
   400 South Hope Street
5  Los Angeles, CA 90071-2899
   Telephone: (213) 430-6000
6  Facsimile: (213) 430-6407

7  PATRICIA GLASER (S.B. #55668)
   CHRISTENSEN, GLASER, FINK,
8  JACOBS, WEIL & SHAPIRO, LLP
   10250 Constellation Boulevard, 19th Floor
9  Los Angeles, CA 90067
   Telephone: (310) 553-3000
10 Facsimile: (310) 557-9815

11 Attorneys for MGA Entertainment, Inc.

12          UNITED STATES DISTRICT COURT

13          CENTRAL DISTRICT OF CALIFORNIA

14

15 CARTER BRYANT, an individual,          Case No. CV 04-09049 SGL (RNBx)
                                          (consolidated with CV 04-9059 & 05-
16                  Plaintiff,            2727)

17       v.

18 MATTEL, INC., a Delaware              **DECLARATION OF DAPHNE
   Corporation,                          GRONICH IN RESPONSE TO
19                                        COURT'S REQUEST FOR
                    Defendant.           INFORMATION REGARDING
20                                        DOCUMENT PRESERVATION**

21

22                                        Discovery Cut-off: March 3, 2008
                                          Pre-trial Conference: June 2, 2008
23                                        Trial Date: July 1, 2008

24                                        Judge: Hon. Stephen G. Larson

25

26

27

28

LA2:841480.1                                      GRONICH DECL
                                          CV 04-09049 SGL (RNBX)

EXHIBIT ___11___

PAGE ___115___

I, Daphne Gronich, declare and state as follows:

1.    I am General Counsel for MGA Entertainment, Inc. ("MGA") and a resident of the state of California.  All of the facts set forth herein are known to me personally, except for those stated on information and belief and if called as a witness, I could and would testify competently thereto.

**Document Preservation Communications**

2.    I have been MGA's General Counsel since December, 2003, and have had oversight responsibility for MGA's legal response to this litigation since its inception.    Shortly after Mattel sued Carter Bryant in April 2004, even though MGA had not been named as a defendant in that suit, I communicated to MGA employees that Mattel had filed suit against Carter Bryant alleging that he had breached his employment agreement with Mattel.  I advised MGA's employees that MGA might at some point become involved in the litigation, and that it would be prudent for MGA to preserve all documents that might be potentially relevant to the claims at issue in the litigation.  In addition to these initial communications, both I and my colleague, Rich Daniels, one of MGA's other in-house attorneys, repeated that advisement at numerous one-on-one and group meetings (including those held in Isaac Larian's office at MGA's former location on Schoenborn Avenue in North Hills) involving senior executives, creative staff members, sales and administration staff and others including IT personnel. These communications took place throughout the late-Spring and Summer of 2004.

3.    In addition to those communications, the legal department began locating and collecting documents and materials that might be relevant to the lawsuit against Mr. Bryant.  In that regard we were aided by the company's previous efforts to collect certain documents and materials related to the origin and initial development of "Bratz," due to MGA's involvement in prior, unrelated litigation (that did not challenge MGA's ownership of "Bratz").  As a result, we

EXHIBIT ___11___

PAGE ___116___

1    were able to preserve potentially relevant documents and materials from MGA's

2    employees in California and its related company in Hong Kong, including Isaac

3    Larian, Paula Treantafelles (now Garcia), Dave Malacrida, Victoria O'Connor,

4    Becky Harris, Charles O'Connor, Aileen Storer, Mercedeh Ward, Marcy George,

5    Shirin Salemnia, Edmond Lee, Dennis Soai, Stephen Lee, Samuel Wong, Cecilia

6    Kwok and Franki Tsang.

7          4.    In addition to the communications described above, in the weeks

8    following the filing of Mattel's lawsuit against Carter Bryant, both I and Rich

9    Daniels and/or our outside counsel, spoke with and/or confirmed that MGA had the

10    documents of key potential witnesses, including Isaac Larian, Paula Garcia,

11    Victoria O'Connor, Charles O'Connor, Aileen Storer, Mercedeh Ward, Marcy

12    George, Dennis Soai, Shirin Salemnia, and Dave Malacrida.   During those

13    conversations, we again personally directed MGA's potential witnesses to preserve

14    their potentially relevant documents.

15          5.    As a result of those discussions, MGA's potential witnesses

16    were given express direction by myself, Mr. Daniels, or MGA's outside counsel to

17    preserve their relevant paper documents and to assist, as necessary, MGA's IT

18    department in preserving their emails and electronic documents.   We also directed

19    the IT department to segregate and preserve emails from MGA employees who had

20    since left the company, which former employees included some who had also been

21    previously employed by Mattel prior to working for MGA.

22          6.    In the years since the litigation began, I have sent out reminder

23    emails to MGA's employees reminding them of their continuing obligation to

24    preserve documents potentially relevant to this litigation, including reminder emails

25    that I sent to all MGA employees on April 14, 2005, December 5, 2006, and July 5,

26    2007.  In addition, other members of the legal department routinely advise the staff

27    members with whom they work to retain relevant documents.  For example, Sam

28    Khare, an MGA in-house lawyer who works closely with the product design teams,

EXHIBIT _____11_____

PAGE _____117_____

1    routinely reminds people in the design groups to retain documents.

2          7.      After we became aware of Mattel's claims against MGA, on

3 December 5, 2006 I sent an email to all MGA employees reminding them of their

4 ongoing obligations regarding Mattel's suit against Carter Bryant and informing

5 them of the nature of the new claims against MGA, including the allegation of trade

6 secret theft. I reminded MGA's employees of MGA's policy that its employees

7 must not bring with them to MGA the property or confidential or proprietary

8 information of their former employers, and instructed them to preserve all

9 documents and materials relevant to these new claims as well.

10          8.      In addition to that communication, we also began collecting and

11 segregating the documents of all former Mattel employees, including those who

12 were no longer employed by MGA.

13          9.      While MGA is ready and willing to produce its communications

14 for the Court's review, I have been informed by MGA's outside counsel that Mattel

15 has taken the position that "it cannot agree" that MGA's production of those

16 communications would not constitute a waiver of the attorney-client privilege.

17 Attached hereto as **Exhibit 1** is a true and correct copy of a letter from Mattel's

18 counsel, Jon Corey, to MGA's outside counsel, Bill Charron, asserting that

19 position. If the Court wishes to see such communications and agrees with MGA

20 that such production would not constitute a waiver of the attorney-client privilege,

21 MGA will produce its communications within 24 hours of receiving the Court's

22 guidance.

23

24 **Paper Document Preservation**

25          10.      MGA does not now, and never has had a policy to routinely

26 destroy paper documents. In particular, since this litigation began, MGA has

27 expressly retained paper files in the Creative Departments, character art files,

28 vendor files, executive files and others.

EXHIBIT _11_

PAGE _118_

**Email Preservation**

11. Since before 2004, MGA has used Microsoft's Exchange email system and the Outlook email client to provide email support to the company. MGA does not have, and never has had, a policy to auto-delete emails; to the contrary, employees are advised to retain work-related emails. I am informed by our IT staff that employees may, and often do, create email storage files (known as "pst" files) to which they can move emails from their mailbox on the Exchange server. MGA's practice is to preserve those pst files, and it has done so.

12. MGA's process for preserving those emails has become more automated over time as our IT department has grown in its sophistication to meet the needs of the company, particularly as MGA itself has grown and expanded. I am informed that in January of 2000, MGA only had around eighty employees, whereas by January of 2004 that number had grown to 196 and by January of 2007 it was approximately 900 domestically and 670 internationally, including subsidiaries.

13. In 2004, when an employee would leave the company, the IT department copied the pst files from the employee's computer and burned them onto CDs that were then retained by the IT department. I am informed that in September 2005, the system was improved so that instead of having to copy those pst files onto CDs, the IT department was then able to preserve those pst files on a network server.

14. Emails in the departing employee's mailbox on our Exchange server are retained on the Exchange server. The IT department's network administrators change the access permissions on that employee's mailbox so that only the administrators can access it. In that way, those emails are retained and can be accessed when necessary with proper authorization.

15. In the past year, an even more automated process was put in place to preserve and manage email. In January 2007, the IT department began

EXHIBIT ___11___

PAGE ___119___

1   using a system known as "Archive One" which I am informed automatically
2   archives emails older than 90 days once a user's mailbox exceeds a set size
3   threshold. In this way, access to older emails is retained, but the size of the user's
4   mailbox files on our Exchange server is controlled.

5        16.    MGA's Exchange email server is also backed up on a nightly
6   basis as a means of disaster recovery. Historically those backup tapes had been
7   rotated on a 90-day cycle. However, because we have no policy of auto-deleting
8   emails and because we preserve the mailboxes (and pst files) of former employees,
9   unless an employee violates MGA's policies, and the legal department's express
10  and repeated directives to preserve email, no email would be lost by recycling those
11  backup tapes.

12
13  **Other Electronic Document Preservation**

14       17.    Employees are encouraged to store other electronic documents
15  (such as Word documents or Excel spreadsheets) on a shared network file server.
16  Some employees may also save electronic documents in the "My Documents"
17  folder on their computer. As was the case for emails saved to local pst files, going
18  back to 2004, if an employee left the company the contents of the My Documents
19  folder was also copied onto CDs and preserved. Again, when the system evolved in
20  September of 2005, the My Documents folder was preserved onto a network server.
21  Since March of this year, the entire hard drive itself is preserved by the IT
22  department.

23       18.    In addition to those preservation methods when an employee
24  would leave the company, files saved to the shared network file server would be
25  retained indefinitely and protected by nightly backups. I am informed that since
26  this litigation began in April 2004, MGA has not suffered any server failures that
27  resulted in the loss of data.

28       19.    In April of this year, another automated capability was brought

LA2:841480.1                              - 5 -                    GRONICH DECL
                                                                   CV 04-09049 SGL (RNBX)

EXHIBIT __11__
PAGE __120__

1   online.   MGA has now installed an automated process that daily copies the

2   contents of the My Documents folder and any pst files that are saved in the user's

3   "Exchange" folder to a network file server.

4          20.      Within days of learning of Mattel's intent to bring claims

5   against MGA, MGA made, and retains to this day, a complete backup of all of its

6   servers.

7

8   **Preservation of Data from Isaac Larian's Computer**

9          21.      I am informed by our IT department that there are always two

10   laptop computers assigned to Mr. Larian – the computer that he is actively using,

11   and a second, "mirrored" spare computer.  Whenever Mr. Larian docks his

12   computer into the MGA network, any changes that have been made to the files on

13   his computer are automatically "mirrored" or copied to the spare.  In that way, any

14   potential data loss is minimized.

15          22.      I am also informed by our IT department that when Mr. Larian

16   needs to replace his laptop, the IT department starts with the mirrored spare.  If the

17   hard drive on Mr. Larian's old laptop is still operable, they make sure that the files

18   on the mirrored spare contain the most up-to-date information that can be read from

19   the old hard drive.  When all of that data has been copied onto the spare, it is

20   provided to Mr. Larian and a new laptop becomes the mirrored spare.

21          23.      Personal computers at MGA frequently contain a great deal of

22   MGA's confidential and trade secret information – and this is especially true for

23   Mr. Larian's laptop.  I am informed by our IT department that prior to instituting

24   the present policy of retaining computer hard drives, whenever a computer that Mr.

25   Larian had been using was to be retired from his use – whether due to damage or

26   simply the need to provide newer technology – the hard drive was backed up to one

27   of the IT department's archive servers so as to preserve the data that was on the

28   hard drive in a secure location.  Once the data had been safely preserved, the IT

EXHIBIT ____11____

PAGE ____121____

1   department then reformatted the hard drive in such a way that the confidential and

2   trade secret data was no longer present on the hard drive.  Thus, although the hard

3   drive had been "wiped" before being put back into service or disposed of, none of

4   the data had been lost to MGA as it remained preserved on one of the IT

5   department's archive servers.  Today, we would simply retain the hard drive from

6   Mr. Larian.

7

8   **Other Corporate Data Preservation**

9       24.    In 2004, MGA used an enterprise accounting package known as

10  Great Plains.  In January 2006, MGA converted to a newer system known as

11  Axapta and after that time, all new business transactions were processed on the

12  Axapta system.  However, MGA has retained the Great Plains system and I am

13  informed that no data was lost in the conversion.  Accordingly, MGA is able to

14  retrieve transaction data as needed going back to at least 1998.

15

16      I declare under penalty of perjury under the laws of the United States

17  that the foregoing is true and correct.

18      Executed this 10th day of September, 2007, at Van Nuys, California.

19

20                                              Daphne Gronich

21

22

23

24

25

26

27

28

LA2:841480.1                              - 7 -                    GRONICH DECL
                                                              CV 04-09049 SGL (RNBX)

EXHIBIT _____11_____

PAGE _____122_____

Exhibit 1

EXHIBIT ___11___

PAGE ___123___

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

September 7, 2007

**VIA FACSIMILE AND U.S. MAIL**

William Charron, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

Re:    Mattel, Inc. v. Bryant

Dear Bill:

I write to follow up on the conversation that we had earlier today.

First, you reviewed the questions which MGA instructed Ms. Tonnu not to answer regarding Mr. Speckin's testing and handling of documents, and agreed that MGA would not instruct Ms. Tonnu not to answer such questions when she returns for deposition.

Second, you did not agree to produce to Mattel the documents that refreshed Mr. Lockhart's memory for his deposition, but inquired as to whether Mattel would agree that the content of the preservation affidavits requested by the Court would not constitute a waiver of any privilege. Mattel cannot agree to that. You indicated, however, that MGA may nevertheless include those documents with its affidavit. If MGA elects not to do so, or otherwise fails to produce the documents, then Mattel will ask Judge Infante to rule on MGA's assertion of privilege.

Finally, you agreed to provide, on September 17, 2007, initial disclosures for MGAE de Mexico, MGA Hong Kong and Isaac Larian. You also agreed to provide supplemental initial disclosures for MGA on that date.

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

8  EXHIBIT _____11_____

PAGE _____124_____

09/07/2007 16:11 FAX  1213443    0      QEUOH-LAO-2                    ☑003/003

William Charron, Esq.
September 7, 2007

If the foregoing is inconsistent with your recollection of our conversation, please let me know at
your earliest convenience.

Best regards,

Jon D. Corey

JDC:jcl
07209/2214875.1

EXHIBIT ____11____  9

PAGE ____125____

**PROOF OF SERVICE**

I, Karen A. Nakatsu, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On September 10, 2007, I served the within document(s):

**DECLARATION OF DAPHNE GRONICH IN RESPONSE TO COURT'S REQUEST FOR INFORMATION REGARDING DOCUMENT PRESERVATION**

☒    by causing to be personally served the document(s) listed above to the person(s) listed below.

John B. Quinn, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street,
10th Floor
Los Angeles, CA 90017

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Patricia Glaser, Esq.          Michael H. Page, Esq.
Christensen, Glaser, Fink, Jacobs,    Keker & Van Nest LLP
Weil & Shapiro, LLP         710 Sansome Street
10250 Constellation Blvd.,      San Francisco, CA 94111
19th Floor
Los Angeles, CA 90067

James W. Spertus, Esq.
Law Offices of James W. Spertus
12100 Wilshire Blvd., Suite 620
Los Angeles, CA 90025

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on September 10, 2007, at Los Angeles, California.

*Karen A. Nakatsu*
Karen A. Nakatsu

LA2:817525.2

EXHIBIT _11_

PAGE _126_

# EXHIBIT 12

1   THOMAS J. NOLAN (Bar No. 66992)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2   300 South Grand Avenue
    Los Angeles, CA  90071-3144
3   Telephone:  (213) 687-5000
    Facsimile:   (213) 687-5600
4   Email: tnolan@skadden.com

5   RAOUL D. KENNEDY (Bar No. 40892)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6   4 Embarcadero Center, 38th Floor
    San Francisco, CA  94111-5974
7   Telephone:  (415) 984-6400
    Facsimile:   (415) 984-2698
8   Email: rkennedy@skadden.com

9

10  Attorneys for MGA Entertainment, Inc., MGA Entertainment
    (HK) Limited, MGAE de Mexico, S. de R.L. de C.V., and
11  Isaac Larian

12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15

16  CARTER BRYANT, an individual,       )   CASE NO. CV 04-9049 SGL (RNBx)
                                        )
17              Plaintiff,              )   Consolidated with Case No. 04-9059
                                        )   and Case No. 05-2727
18       v.                             )
                                        )   SUPPLEMENTAL
19  MATTEL, INC., a Delaware            )   DECLARATION OF DAPHNE
    corporation,                        )   GRONICH IN RESPONSE TO
20                                      )   COURT'S REQUEST FOR
                                        )   INFORMATION REGARDING
21              Defendant.              )   DOCUMENT PRESERVATION
                                        )
22  Consolidated with                   )
    MATTEL, INC. v. BRYANT and          )   Judge:  Hon. Stephen G. Larson
23  MGA ENTERTAINMENT, INC. v.          )
    MATTEL, INC.                        )
24                                      )

25

26

27

28                          12-05
    ─────────────────────────────────────────────────────────
    SUPPLEMENTAL DECLARATION OF DAPHNE GRONICH IN RESPONSE TO COURT'S REQUEST FOR
                INFORMATION REGARDING DOCUMENT PRESERVATION

                    EXHIBIT     12
                    PAGE     127

1    I, Daphne Gronich, declare and state as follows:

2        1.    This declaration will supplement the September 10, 2007 Declaration of

3    Daphne Gronich in Response to Court's Request for Information Regarding

4    Document Preservation ("the September 10 Declaration") attached hereto as Exhibit

5    A. All of the facts set forth herein are known to me personally, except for those

6    stated on information and belief and, if called as a witness, I could and would testify

7    competently thereto.

8        2.    I was the General Counsel of MGA Entertainment, Inc. ("MGA") and

9    its subsidiaries, including MGA Entertainment (HK) Limited ("MGA HK") and

10    MGAE de Mexico, S. de R.L. de C.V. ("MGA Mexico") from December 2003

11    through early November 2007.  To clarify Paragraph 2 of the September 10

12    Declaration, I had oversight responsibility for the legal response of MGA, MGA HK

13    and MGA Mexico to this litigation since its inception.  To further clarify Paragraph 2

14    of the September 10 Declaration, the reference to communications with MGA

15    employees after Mattel sued Carter Bryant in April 2004, includes employees of

16    MGA, MGA HK and MGA Mexico, as well as Mr. Isaac Larian.

17        3.    To clarify Paragraphs 4 and 5 of the September 10 Declaration, the

18    references to Rich Daniels, outside counsel and/or myself confirming that MGA had

19    the documents of key potential witnesses and directing such witnesses to preserve

20    potentially relevant documents include MGA and MGA HK.  Although employees

21    of MGA Mexico were advised of the filing of the litigation, as a brand new entity

22    with new employees, MGA Mexico would not have had any documents potentially

23    relevant to the allegations set forth in the initial complaint.

24        4.    To clarify Paragraphs 6 and 7 of the September 10 Declaration, the

25    reminder emails that were sent to all employees of MGA on April 14, 2005,

26    December 5, 2006, and July 5, 2007 (reminding employees of their continuing

27    obligation to preserve documents potentially relevant to this litigation, including the

28

SUPPLEMENTAL DECLARATION OF DAPHNE GRONICH IN RESPONSE TO COURT'S REQUEST FOR INFORMATION REGARDING DOCUMENT PRESERVATION



EXHIBIT _12_

PAGE _128_

1  new claims) included as recipients Mr. Larian, MGA HK and MGA Mexico
2  personnel.

3       5.     To clarify Paragraph 8 of the September 10 Declaration, the reference to
4  the collection of documents includes documents at MGA and MGA HK with regard
5  to the initial complaint and, later, MGA Mexico.

6       6.     To clarify Paragraph 10 of the September 10 Declaration, the reference
7  to the policy not to routinely destroy paper documents and the retention of certain
8  files includes MGA, MGA HK and MGA Mexico.

9       7.     To clarify Paragraph 11 of the September 10 Declaration, the reference
10 to the use of Microsoft's Exchange server by MGA includes MGA and MGA HK
11 with respect to the time period before 2004.  I am informed that since its
12 establishment in the spring of 2004, MGA Mexico also uses Microsoft's Exchange
13 email system and the Outlook email client.  To further clarify Paragraph 11 of the
14 September 10 Declaration, the reference to the policies regarding auto-deletion of
15 emails and creation of pst files, applies to MGA, MGA HK, MGA Mexico and Mr.
16 Larian.

17      8.     To clarify Paragraph 12 of the September 10 Declaration, the reference
18 to MGA's automation of the process for preserving emails applies to MGA and
19 MGA Mexico.

20      9.     To clarify Paragraph 13 of the September 10 Declaration, the reference
21 to the procedure whereby the IT department copied departing employees' pst files on
22 to CDs applies to MGA and MGA HK as well as MGA Mexico in 2004.  I am
23 informed that the improvement in the system used to preserve such pst files of
24 departing employees in September 2005 applies to MGA and MGA Mexico.  I am
25 also informed that during this time, MGA HK continued its practice of copying
26 departing employees' hard drives, including pst files, on to CDs or DVDs.

27

28

- 3 -

SUPPLEMENTAL DECLARATION OF DAPHNE GRONICH IN RESPONSE TO COURT'S REQUEST FOR
INFORMATION REGARDING DOCUMENT PRESERVATION

EXHIBIT _____ 12 _____

PAGE _____ 129 _____

1    10.    To clarify Paragraph 14 of the September 10 Declaration, the reference

2 to the change in access permissions applies to MGA and MGA Mexico.  With

3 respect to MGA HK, I am informed that from September 2004 through July 2007,

4 the emails in a departing employee's mailbox were maintained for three months,

5 during which time the mailbox was backed up by MGA HK's disaster recovery

6 system.  I am further informed that since July 2007, in addition to being backed up,

7 departing MGA HK employees' mailboxes have been preserved on the server.

8    11.    To clarify Paragraph 15 of the September 10 Declaration, the reference

9 to "an even more automated process [which] was put in place to preserve and

10 manage email" applies to MGA and MGA Mexico.

11    12.    To clarify Paragraph 16 of the September 10 Declaration, the reference

12 to the nightly back up of the Exchange email server includes MGA, MGA HK and

13 MGA Mexico.  To further clarify, the reference to the 90-day rotation cycle of back-

14 up tapes used for the nightly back-up of the Exchange email server applies to MGA

15 and MGA Mexico.  With respect to MGA HK, I am informed that historically

16 backup tapes used for the nightly back-up of the Exchange email server had been

17 rotated on a 7-day cycle, with the back up tapes for the last day of the month being

18 preserved.  I am informed that since September 2007, all backup tapes used for the

19 nightly back-up of the Exchange email server at MGA HK have been preserved.

20    13.    To clarify Paragraph 17 of the September 10 Declaration, the reference

21 to employees being encouraged to store electronic documents on shared network file

22 servers, saving documents to "My Documents," and the copying onto CDs of

23 documents saved by departing employees on their computer's "My Documents"

24 folder includes MGA, MGA HK and MGA Mexico.  I am informed that the

25 evolution of the system in September of 2005 applies to MGA and MGA Mexico.

26 With respect to MGA HK, I am informed that when an employee leaves MGA HK,

27

28

- 4 -

EXHIBIT ___12___

PAGE ___130___

1  the IT department copies the contents of the My Documents folder onto CDs or

2  DVDs and, more recently, preserves the hard-drive as well.

3      14.    To clarify Paragraph 18 of the September 10 Declaration, the reference

4  to files saved on the shared network file server (drive) includes MGA, MGA HK and

5  MGA Mexico.  I am informed that MGA and MGA Mexico have suffered no server

6  failures since this litigation begin April 2004.  With respect to MGA HK in 2006,

7  MGA HK suffered a server failure, which may have resulted in the loss of some

8  electronically stored data relating to purchasing and shipping information.  I am

9  further informed that paper copies of this information have been maintained.

10     15.    To clarify Paragraph 19 of the September 10 Declaration, the reference

11 to the automated process whereby the contents of the My Documents folders and pst

12 folders saved in users' Exchange folders are copied to a network file server includes

13 MGA and MGA Mexico.

14     16.    To clarify Paragraph 20 of the September 10 Declaration, the reference

15 to the server back ups includes MGA, MGA HK, and MGA Mexico.

16     17.    To clarify Paragraph 21 of the September 10 Declaration,  I am

17 informed that Mr. Larian's My Documents and pst files are regularly backed up by

18 MGA's IT department to the file server, rather than the spare computer.  In addition,

19 when Mr. Larian docks his computer into the MGA network, the email files on his

20 computer are automatically synchronized to the exchange server, rather than the

21 spare computer.

22     18.    To clarify Paragraph 22 of the September 10 Declaration, I am informed

23 that when Mr. Larian needs to replace his computer, the IT department transfers any

24 readable data from the old laptop on to the spare computer before it is provided to

25 Mr. Larian.

26     19.    To clarify Paragraph 23 of the September 10 Declaration, the reference

27 to the personal computers at MGA containing confidential and trade secret

28

- 5 -

SUPPLEMENTAL DECLARATION OF DAPHNE GRONICH IN RESPONSE TO COURT'S REQUEST FOR
INFORMATION REGARDING DOCUMENT PRESERVATION

EXHIBIT ___12___

PAGE ___131___

1  information includes the personal computers of MGA, MGA HK and MGA Mexico,

2  in addition to the computers used by Mr. Larian.

3      20.   To clarify Paragraph 24 of the September 10 Declaration, the references

4  to the use of the Great Plains and Axapta enterprise accounting packages by MGA

5  includes MGA, MGA HK and MGA Mexico.

6      I declare under penalty of perjury under the laws of the United States that the

7  foregoing is true and correct.

8

9      Executed this 4th day of December, 2007, at Van Nuys, California.

10

11

12      Daphne Gronich

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 6 -

SUPPLEMENTAL DECLARATION OF DAPHNE GRONICH IN RESPONSE TO COURT'S REQUEST FOR
INFORMATION REGARDING DOCUMENT PRESERVATION

EXHIBIT _12_

PAGE _132_

# EXHIBIT A

EXHIBIT _____ 12 _____

PAGE _____ 133 _____

FILED

2007 SEP 10 PM 4:00

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE CALIF.

By_____

©COPY

1  DALE M. CENDALI (admitted *pro hac vice*)
   dcendali@omm.com
2  DIANA M. TORRES (S.B. #162284)
   dtorres@omm.com
3  JAMES P. JENAL (S.B. # 180190)
   jjenal@omm.com
4  O'MELVENY & MYERS LLP
   400 South Hope Street
5  Los Angeles, CA 90071-2899
   Telephone:  (213) 430-6000
6  Facsimile:  (213) 430-6407

7  PATRICIA GLASER (S.B. #55668)
   CHRISTENSEN, GLASER, FINK,
8  JACOBS, WEIL & SHAPIRO, LLP
   10250 Constellation Boulevard, 19th Floor
9  Los Angeles, CA 90067
   Telephone:  (310) 553-3000
10 Facsimile:  (310) 557-9815

11 Attorneys for MGA Entertainment, Inc.

12            UNITED STATES DISTRICT COURT

13            CENTRAL DISTRICT OF CALIFORNIA

14

15 CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
                                        (consolidated with CV 04-9059 & 05-
16            Plaintiff,                2727)

17    v.

18 MATTEL, INC., a Delaware            **DECLARATION OF DAPHNE
   Corporation,                        GRONICH IN RESPONSE TO
19                                      COURT'S REQUEST FOR
              Defendant.               INFORMATION REGARDING
20                                      DOCUMENT PRESERVATION**

21                                      Discovery Cut-off:  March 3, 2008
                                        Pre-trial Conference:  June 2, 2008
22                                      Trial Date:  July 1, 2008

23                                      Judge:  Hon. Stephen G. Larson

24

25                                      **BY FAX**
26

27

28

Los Angeles Court Services
COPY SENT TO
CALENDAR DEPT.

LA2:841480.1

7

GRONICH DECL
CV 04-09049 SGL (RNBX)

EXHIBIT ___12___

PAGE ___134___

1    I, Daphne Gronich, declare and state as follows:

2    1.    I am General Counsel for MGA Entertainment, Inc. ("MGA")

3  and a resident of the state of California.  All of the facts set forth herein are known

4  to me personally, except for those stated on information and belief and if called as a

5  witness, I could and would testify competently thereto.

6

**Document Preservation Communications**

7

8    2.    I have been MGA's General Counsel since December, 2003, and

9  have had oversight responsibility for MGA's legal response to this litigation since

10 its inception.   Shortly after Mattel sued Carter Bryant in April 2004, even though

11 MGA had not been named as a defendant in that suit, I communicated to MGA

12 employees that Mattel had filed suit against Carter Bryant alleging that he had

13 breached his employment agreement with Mattel.  I advised MGA's employees that

14 MGA might at some point become involved in the litigation, and that it would be

15 prudent for MGA to preserve all documents that might be potentially relevant to the

16 claims at issue in the litigation.  In addition to these initial communications, both I

17 and my colleague, Rich Daniels, one of MGA's other in-house attorneys, repeated

18 that advisement at numerous one-on-one and group meetings (including those held

19 in Isaac Larian's office at MGA's former location on Schoenborn Avenue in North

20 Hills) involving senior executives, creative staff members, sales and administration

21 staff and others including IT personnel. These communications took place

22 throughout the late-Spring and Summer of 2004.

23    3.    In addition to those communications, the legal department began

24 locating and collecting documents and materials that might be relevant to the

25 lawsuit against Mr. Bryant.  In that regard we were aided by the company's

26 previous efforts to collect certain documents and materials related to the origin and

27 initial development of "Bratz," due to MGA's involvement in prior, unrelated

28 litigation (that did not challenge MGA's ownership of "Bratz").  As a result, we

LA2:841480.1                          - 1 -                     GRONICH DECL
                                                               CV 04-09049 SGL (RNBX)

EXHIBIT _____12_____

PAGE _____135_____

1   were able to preserve potentially relevant documents and materials from MGA's

2   employees in California and its related company in Hong Kong, including Isaac

3   Larian, Paula Treantafelles (now Garcia), Dave Malacrida, Victoria O'Connor,

4   Becky Harris, Charles O'Connor, Aileen Storer, Mercedeh Ward, Marcy George,

5   Shirin Salemnia, Edmond Lee, Dennis Soai, Stephen Lee, Samuel Wong, Cecilia

6   Kwok and Franki Tsang.

7        4.   In addition to the communications described above, in the weeks

8   following the filing of Mattel's lawsuit against Carter Bryant, both I and Rich

9   Daniels and/or our outside counsel, spoke with and/or confirmed that MGA had the

10  documents of key potential witnesses, including Isaac Larian, Paula Garcia,

11  Victoria O'Connor, Charles O'Connor, Aileen Storer, Mercedeh Ward, Marcy

12  George, Dennis Soai, Shirin Salemnia, and Dave Malacrida.   During those

13  conversations, we again personally directed MGA's potential witnesses to preserve

14  their potentially relevant documents.

15       5.   As a result of those discussions, MGA's potential witnesses

16  were given express direction by myself, Mr. Daniels, or MGA's outside counsel to

17  preserve their relevant paper documents and to assist, as necessary, MGA's IT

18  department in preserving their emails and electronic documents.   We also directed

19  the IT department to segregate and preserve emails from MGA employees who had

20  since left the company, which former employees included some who had also been

21  previously employed by Mattel prior to working for MGA.

22       6.   In the years since the litigation began, I have sent out reminder

23  emails to MGA's employees reminding them of their continuing obligation to

24  preserve documents potentially relevant to this litigation, including reminder emails

25  that I sent to all MGA employees on April 14, 2005, December 5, 2006, and July 5,

26  2007.  In addition, other members of the legal department routinely advise the staff

27  members with whom they work to retain relevant documents.  For example, Sam

28  Khare, an MGA in-house lawyer who works closely with the product design teams,

LA2:841480.1                    - 2 -              GRONICH DECL
                                                   CV 04-09049 SGL (RNBX)

9

EXHIBIT __12__

PAGE __136__

1   routinely reminds people in the design groups to retain documents.

2       7.   After we became aware of Mattel's claims against MGA, on

3   December 5, 2006 I sent an email to all MGA employees reminding them of their

4   ongoing obligations regarding Mattel's suit against Carter Bryant and informing

5   them of the nature of the new claims against MGA, including the allegation of trade

6   secret theft. I reminded MGA's employees of MGA's policy that its employees

7   must not bring with them to MGA the property or confidential or proprietary

8   information of their former employers, and instructed them to preserve all

9   documents and materials relevant to these new claims as well.

10      8.   In addition to that communication, we also began collecting and

11  segregating the documents of all former Mattel employees, including those who

12  were no longer employed by MGA.

13      9.   While MGA is ready and willing to produce its communications

14  for the Court's review, I have been informed by MGA's outside counsel that Mattel

15  has taken the position that "it cannot agree" that MGA's production of those

16  communications would not constitute a waiver of the attorney-client privilege.

17  Attached hereto as **Exhibit 1** is a true and correct copy of a letter from Mattel's

18  counsel, Jon Corey, to MGA's outside counsel, Bill Charron, asserting that

19  position. If the Court wishes to see such communications and agrees with MGA

20  that such production would not constitute a waiver of the attorney-client privilege,

21  MGA will produce its communications within 24 hours of receiving the Court's

22  guidance.

23

24  **Paper Document Preservation**

25      10.   MGA does not now, and never has had a policy to routinely

26  destroy paper documents. In particular, since this litigation began, MGA has

27  expressly retained paper files in the Creative Departments, character art files,

28  vendor files, executive files and others.

LAZ:841480.1                          - 3 -                    GRONICH DECL
                                                           CV 04-09049 SGL (RNBX)

EXHIBIT   12
PAGE   137

**Email Preservation**

1    11.    Since before 2004, MGA has used Microsoft's Exchange email

system and the Outlook email client to provide email support to the company.

MGA does not have, and never has had, a policy to auto-delete emails; to the

contrary, employees are advised to retain work-related emails. I am informed by

our IT staff that employees may, and often do, create email storage files (known as

"pst" files) to which they can move emails from their mailbox on the Exchange

server. MGA's practice is to preserve those pst files, and it has done so.

12.    MGA's process for preserving those emails has become more

automated over time as our IT department has grown in its sophistication to meet

the needs of the company, particularly as MGA itself has grown and expanded. I

am informed that in January of 2000, MGA only had around eighty employees,

whereas by January of 2004 that number had grown to 196 and by January of 2007

it was approximately 900 domestically and 670 internationally, including

subsidiaries.

13.    In 2004, when an employee would leave the company, the IT

department copied the pst files from the employee's computer and burned them

onto CDs that were then retained by the IT department. I am informed that in

September 2005, the system was improved so that instead of having to copy those

pst files onto CDs, the IT department was then able to preserve those pst files on a

network server.

14.    Emails in the departing employee's mailbox on our Exchange

server are retained on the Exchange server. The IT department's network

administrators change the access permissions on that employee's mailbox so that

only the administrators can access it. In that way, those emails are retained and can

be accessed when necessary with proper authorization.

15.    In the past year, an even more automated process was put in

place to preserve and manage email. In January 2007, the IT department began

LA2:841480.1                                    - 4 -                          GRONICH DECL
                                                                        CV 04-09049 SGL (RNBX)

**11**

EXHIBIT ___12___
PAGE ___138___

1    using a system known as "Archive One" which I am informed automatically

2    archives emails older than 90 days once a user's mailbox exceeds a set size

3    threshold. In this way, access to older emails is retained, but the size of the user's

4    mailbox files on our Exchange server is controlled.

5        16.    MGA's Exchange email server is also backed up on a nightly

6    basis as a means of disaster recovery. Historically those backup tapes had been

7    rotated on a 90-day cycle. However, because we have no policy of auto-deleting

8    emails and because we preserve the mailboxes (and pst files) of former employees,

9    unless an employee violates MGA's policies, and the legal department's express

10    and repeated directives to preserve email, no email would be lost by recycling those

11    backup tapes.

12

13    **Other Electronic Document Preservation**

14        17.    Employees are encouraged to store other electronic documents

15    (such as Word documents or Excel spreadsheets) on a shared network file server.

16    Some employees may also save electronic documents in the "My Documents"

17    folder on their computer. As was the case for emails saved to local pst files, going

18    back to 2004, if an employee left the company the contents of the My Documents

19    folder was also copied onto CDs and preserved. Again, when the system evolved in

20    September of 2005, the My Documents folder was preserved onto a network server.

21    Since March of this year, the entire hard drive itself is preserved by the IT

22    department.

23        18.    In addition to those preservation methods when an employee

24    would leave the company, files saved to the shared network file server would be

25    retained indefinitely and protected by nightly backups. I am informed that since

26    this litigation began in April 2004, MGA has not suffered any server failures that

27    resulted in the loss of data.

28        19.    In April of this year, another automated capability was brought

EXHIBIT _____ 12

PAGE _____ 139

1   online.  MGA has now installed an automated process that daily copies the

2   contents of the My Documents folder and any pst files that are saved in the user's

3   "Exchange" folder to a network file server.

4         20.      Within days of learning of Mattel's intent to bring claims

5   against MGA, MGA made, and retains to this day, a complete backup of all of its

6   servers.

7

8   **Preservation of Data from Isaac Larian's Computer**

9         21.      I am informed by our IT department that there are always two

10   laptop computers assigned to Mr. Larian – the computer that he is actively using,

11   and a second, "mirrored" spare computer.  Whenever Mr. Larian docks his

12   computer into the MGA network, any changes that have been made to the files on

13   his computer are automatically "mirrored" or copied to the spare.  In that way, any

14   potential data loss is minimized.

15         22.      I am also informed by our IT department that when Mr. Larian

16   needs to replace his laptop, the IT department starts with the mirrored spare.  If the

17   hard drive on Mr. Larian's old laptop is still operable, they make sure that the files

18   on the mirrored spare contain the most up-to-date information that can be read from

19   the old hard drive.  When all of that data has been copied onto the spare, it is

20   provided to Mr. Larian and a new laptop becomes the mirrored spare.

21         23.      Personal computers at MGA frequently contain a great deal of

22   MGA's confidential and trade secret information – and this is especially true for

23   Mr. Larian's laptop.  I am informed by our IT department that prior to instituting

24   the present policy of retaining computer hard drives, whenever a computer that Mr.

25   Larian had been using was to be retired from his use – whether due to damage or

26   simply the need to provide newer technology – the hard drive was backed up to one

27   of the IT department's archive servers so as to preserve the data that was on the

28   hard drive in a secure location.  Once the data had been safely preserved, the IT

LA2:841480.1                          - 6 -                    GRONICH DECL
                                                        CV 04-09049 SGL (RNBX)

**13**

EXHIBIT ___12___

PAGE ___140___

1   department then reformatted the hard drive in such a way that the confidential and

2   trade secret data was no longer present on the hard drive.  Thus, although the hard

3   drive had been "wiped" before being put back into service or disposed of, none of

4   the data had been lost to MGA as it remained preserved on one of the IT

5   department's archive servers.  Today, we would simply retain the hard drive from

6   Mr. Larian.

7

8   **Other Corporate Data Preservation**

9        24.    In 2004, MGA used an enterprise accounting package known as

10  Great Plains.  In January 2006, MGA converted to a newer system known as

11  Axapta and after that time, all new business transactions were processed on the

12  Axapta system.  However, MGA has retained the Great Plains system and I am

13  informed that no data was lost in the conversion.  Accordingly, MGA is able to

14  retrieve transaction data as needed going back to at least 1998.

15

16        I declare under penalty of perjury under the laws of the United States

17  that the foregoing is true and correct.

18        Executed this 10th day of September, 2007, at Van Nuys, California.

19

20                                              Daphne Gronich

21

22

23

24

25

26

27

28

LA2:841480.1                          - 7 -                    GRONICH DECL.
                                                        CV 04-09049 SGL (RNBX)

14

EXHIBIT ___12___

PAGE ___141___

Exhibit 1

EXHIBIT __12__

PAGE __142__

09/07/2007 16:11 FAX  12134433100          QEUOH-LAO-2                           ⊠002/003

### quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

September 7, 2007

VIA FACSIMILE AND U.S. MAIL

William Charron, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

Re:    Mattel, Inc. v. Bryant

Dear Bill:

I write to follow up on the conversation that we had earlier today.

First, you reviewed the questions which MGA instructed Ms. Tonnu not to answer regarding Mr. Speckin's testing and handling of documents, and agreed that MGA would not instruct Ms. Tonnu not to answer such questions when she returns for deposition.

Second, you did not agree to produce to Mattel the documents that refreshed Mr. Lockhart's memory for his deposition, but inquired as to whether Mattel would agree that the content of the preservation affidavits requested by the Court would not constitute a waiver of any privilege. Mattel cannot agree to that.  You indicated, however, that MGA may nevertheless include those documents with its affidavit.  If MGA elects not to do so, or otherwise fails to produce the documents, then Mattel will ask Judge Infante to rule on MGA's assertion of privilege.

Finally, you agreed to provide, on September 17, 2007, initial disclosures for MGAE de Mexico, MGA Hong Kong and Isaac Larian.  You also agreed to provide supplemental initial disclosures for MGA on that date.

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2424
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-5107 FAX 858-812-5336

8

EXHIBIT  12
PAGE  143

09/07/2007 18:11 FAX  12134433100          QEUOB-LAO-2                          ☒003/003

William Charron, Esq.
September 7, 2007

If the foregoing is inconsistent with your recollection of our conversation, please let me know at
your earliest convenience.

Best regards,

*Jon D Corey*

Jon D. Corey

JDC:jcl
07209/2214875.1

9

16

EXHIBIT    12

PAGE    144

SEP-10-2007  16:40        OMM COURT SVCS                    213 430 8136     P.02/02

## PROOF OF SERVICE

1

2          I, Karen A. Nakatsu, declare:

3          I am a resident of the State of California and over the age of eighteen years, and
not a party to the within action; my business address is 400 South Hope Street, Los Angeles,
4   California 90071-2899.  On September 10, 2007, I served the within document(s):

5          **DECLARATION OF DAPHNE GRONICH IN RESPONSE**
           **TO COURT'S REQUEST FOR INFORMATION**
6          **REGARDING DOCUMENT PRESERVATION**

7   [X]    by causing to be personally served the document(s) listed above to the person(s)
           listed below.
8

9          John B. Quinn, Esq.
           Quinn Emanuel Urquhart Oliver & Hedges, LLP
           865 South Figueroa Street,
10         10th Floor
           Los Angeles, CA 90017
11

12  [X]    by placing the document(s) listed above in a sealed envelope with postage thereon
           fully prepaid, in the United States mail at Los Angeles, California addressed as set
13         forth below.  I am readily familiar with the firm's practice of collecting and
           processing correspondence for mailing.  Under that practice it would be deposited
14         with the U.S. Postal Service on that same day with postage thereon fully prepaid in
           the ordinary course of business.  I am aware that on motion of the party served,
15         service is presumed invalid if the postal cancellation date or postage meter date is
           more than one day after date of deposit for mailing in affidavit.
16

17         Patricia Glaser, Esq.                 Michael H. Page, Esq.
           Christensen, Glaser, Fink, Jacobs,    Keker & Van Nest LLP
18         Weil & Shapiro, LLP                   710 Sansome Street
           10250 Constellation Blvd.,            San Francisco, CA 94111
19         19th Floor
           Los Angeles, CA 90067
20

21         James W. Spertus, Esq.
           Law Offices of James W. Spertus
22         12100 Wilshire Blvd., Suite 620
           Los Angeles, CA 90025
23

24         I declare under penalty of perjury under the laws of the United States that the
above is true and correct.

25         Executed on September 10, 2007, at Los Angeles, California.

26

27                                              _Karen A. Nakatsu_
                                                 Karen A. Nakatsu
28

LA2:817525.2

17

TOTAL P.02

EXHIBIT ___12___

PAGE ___145___