QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]**<br><br>RESPONSE IN SUPPORT OF MATTEL, INC.'S NOTICE OF CHANGE OF HEARING ON APPLICATION TO ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLE ITEMS<br><br>Hearing Date: TBA<br>Time: TBA<br>Place: TBA |

MGA's Opposition to Mattel's Notice of Change of Hearing is a meritless attempt by MGA to prevent the Court from reviewing the **undisputed** evidence that MGA excluded from its compelled production highly relevant tangible items relating to the creation, design, development and manufacture of early Bratz.

First, at the February 4 hearing, the Court was clear that discovery issues go first to the Discovery Master. On page 26 of the transcript, Judge Larson stated:

> I could not have used, I don't think, clearer language that discovery disputes in the first instance need to go to the discovery master and not come to this court by way of ex-parte application.[1]

The Court further stated its view that it would be wrong for it to decide some of these discovery issues while leaving others for the Discovery Master:

> I think if I get into the business of deciding some of these and taking some of them back from Judge Infante, it just creates a mess, quite frankly. . . . *What I don't think is proper for this Court to do is to start issuing discovery orders that may or may not conflict with earlier positions that Judge Infante has taken. I think that just makes a mess of the whole thing.*[2]

As the Court's rulings show, MGA's argument that Judge Larson did not specifically indicate that *this* remaining discovery issue in the *Ex Parte* Application To Enforce Court Orders Compelling Production of Tangible Items ("*Ex Parte* on Tangibles") should go before Judge Infante is unavailing. Judge Larson ruled that *all* remaining discovery motions go to the Discovery Master, which necessarily included the remainder of the *Ex Parte*.

---

[1] Hearing Transcript, dated February 4, 2008, at 26:11-14. Mattel has attached hereto as Exhibit A the entire transcript of the February 4, 2008 hearing.
[2] *Id.*, at 26:21-24 and 27:15-18 (emphasis added).

Later in the transcript, Judge Larson specifically asked Mattel about MGA's argument that Mattel was "forum-shopping" in bringing before him an *ex parte* application compelling the production of electronic media from third parties, or, in the alternative, modifying the scheduling order.[3] When Mattel explained that this *ex parte* application, like the *Ex Parte* on Tangibles that remains at issue here, was before him because only Judge Larson can grant relief from the expert discovery cut-off if additional time were needed to deal with discovery materials produced for the first time after the close of discovery,[4] the Court responded:

> And that's fair enough.  And I will certainly give any party leave to come back to the Court after a ruling by Judge Infante that apparently has an effect or is making the scheduling order unmanageable or needs relief to file a supplemental expert report, or whatever it might be.  But in the first instance, I think this issue should be decided by Judge Infante.  I don't want to have me deciding some of these issues and Judge Infante deciding other ones.[5]

When Mattel's counsel then responded that the motion would be put before Judge Infante, the Court said, "Very well.  So this *ex parte* application is denied."[6]

Thus, when the last sentence, quoted by MGA in its Opposition, is placed back into its original context, it is clear that Judge Larson was again simply drawing a distinction between discovery disputes, which should go before Judge Infante, on the one hand; and requests to modify the scheduling order, which should go before him, on the other.  On the *Ex Parte* Application relating to electronic media, he thus resolved the scheduling issue and then denied the discovery dispute so that it could go before Judge Infante.

---

[3] *Id.*, at 79:23-80:14.
[4] *Id.*, at 80:15-21.
[5] *Id.*, at 80:22-81:4.
[6] *Id.*, at 81:5-8.

Judge Larson took the exact same approach with the *Ex Parte* on Tangibles. Contrary to MGA's Opposition,[7] Mattel did not request, and was not granted, relief with respect to the production of the items in China and Hong Kong. As MGA admits, those items were already being made available.[8] In fact, as the first page of the *Ex Parte* Application indicates, Mattel sought four other specific items of relief:

> (1) an order enforcing the May 2007, August 2007 orders and the June 2006 on-the-record stipulation before Judge Block;
>
> (2) an order compelling MGA to make available "all tangible items responsive to Request Nos. 7-13, 26-27, 32-36, 46, 51, 53, 55, 96-100 of Mattel, Inc.'s First Set of Requests For Production Of Documents And Tangible Things To MGA Entertainment, Inc. . . . and to Request Nos. 5, 6, 9-10, 13, 16-17, 49, 52, and 166 of Mattel, Inc.'s First Set of Requests For Documents And Things Re Claims Of Unfair Competition To MGA Entertainment, Inc.";
>
> (3) an order "granting cost-shifting for the inspections in Hong Kong and Shenzhen, China which have become necessary"; and
>
> (4) an order "granting a modification of the scheduling order . . . ."[9]

Completely consistent with the Court's oft-stated view that all discovery disputes should be brought first to Judge Infante, Judge Larson's Order ruled upon the third and fourth issues after directing that all discovery issues be put before Judge Infante:

> As previously ordered and reaffirmed by this Court, all discovery matters shall be presented in the first instance to the Discovery Master. The fact that the Discovery Master's ruling might impact upon the Court's scheduling order does not relieve the parties of following this procedure. For instance, motions

---

[7] Opposition, at 1:8-15.
[8] *Id.,* at 1:15-16.
[9] *Ex Parte* on Tangibles, at 1.

to compel, motions to quash, or motions challenging service as to existing discovery requests shall be brought before the Discovery Master. So, too, must objections based on burdensomeness, relevancy, or privilege. ***<u>In general, and on the matters touched upon herein, the Court expresses no opinion as to these issues, and instead leaves those issues to the Discovery Master to decide in the first instance</u>***.[10]

The Court then turned to the two remaining issues in the *Ex Parte* on Tangibles, announcing that "This application is GRANTED IN PART." With respect to Mattel's request for cost-shifting, the Court ordered the request denied without prejudice after ordering MGA to cooperate in such a way that would minimize costs.[11] With respect to the request for modification of the scheduling order, the Court stated that "Counsel are encouraged to meet and confer with the intent of reaching a stipulation regarding the supplementation of expert reports. Absent such stipulation, at the appropriate time, the Court will entertain an *ex parte* application from any party regarding this issue."[12]

Further, even if it were true that Judge Larson's spontaneous expression of dismay at MGA's failure to produce tangible items was solely directed at the few items MGA had finally now agreed to produce years into the litigation (a interpretation that is not clear from the transcript) it is illogical to suggest, as MGA does, that Judge Larson also believed that MGA's complete, and admitted, failure to produce all the rest of the items being moved upon was somehow acceptable. And

---

[10] February 4, 2008 Order, at 3 (emphasis added).
[11] *Id.,* at 5 ("Counsel for MGA shall employ its best efforts to arrange for shipment of those tangible things located in the Peoples' Republic of China ('PRC') to Hong Kong Special Administrative Region ('Hong Kong') for examination in conjunction with those tangible things already located in Hong Kong. Otherwise, counsel for MGA shall cooperate in those arrangements for inspection in both Hong Kong and the PRC. Mattel's request for costs is denied without prejudice").
[12] *Id.,* at 5.

it is just as illogical to conclude that the Court "gave full and due consideration to all of the arguments . . . concerning the various issues raised by the Application"[13] in light of the Court's very clear statements about discovery disputes going before Judge Infante.

Finally, the statements offered up by MGA on page 3 of the Opposition Brief that all "responsive" documents have been produced are just as misleading to this Court as they have been to Mattel all along.  As Mattel has shown already in its *Ex Parte* Application, and as MGA admitted in the January 7, 2008 letter of Andrew Temkin,[14] MGA excluded responsive items from its searches and from its production by simply denying that they were responsive to Mattel's requests.  MGA has never abandoned this position, even after the Court noted the items' responsiveness, nor has MGA produced a single new item since the February 4 hearing.  For more than a month now, Mattel has asked MGA repeatedly to confirm that it has searched for all the items specifically set forth in Mattel's *Ex Parte* on Tangibles -- which are "responsive" to the requests under anyone's interpretation but MGA's -- and MGA has refused, instead offering up, time and again, the same meaningless statements about searching and producing "responsive" materials without specifying what that means.

MGA has now filed two briefs and three declarations in opposition to Mattel's Ex Parte Application on Tangibles.  But not one of these submissions contains any evidence that MGA has searched for its tangibles relating to the early design, development and manufacture of Bratz.  Nor do any of these submissions contain any evidence that MGA has produced its tangibles relating to the early

---

[13] Opposition, at 3:17-19.
[14] Declaration of Diane C. Hutnyan In Support of Mattel, Inc.'s Ex Parte Application To Enforce Court Orders Compelling Production of Tangible Materials; And For Modification of Scheduling Order, lodged concurrently with Notice of Change of Hearing, Exh. 3; *see also id.,* Exh. 5.

design, development and manufacture of Bratz.  After two rounds of briefing, all the facts in Mattel's application remain undisputed and unchallenged.  Mattel respectfully requests that this Court rule on the papers and order the requested relief without delay.

DATED: February 25, 2008       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                               By /s/ Diane C. Hutnyan
                                  Diane C. Hutnyan
                                  Attorneys for Mattel, Inc.