Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone:  (415) 774-2611
Facsimile:  (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER DENYING MATTEL'S MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

I. INTRODUCTION

On January 22, 2008, Mattel, Inc. ("Mattel") submitted a motion to compel the deposition of Christopher Palmeri ("Palmeri"), a non-party reporter who authored an article for Business Week that refers to Isaac Larian ("Larian"), MGA and Bratz. On January 29, 2008, Palmeri submitted an opposition and on February 15, 2008, Mattel submitted a reply. At issue is whether the testimony Mattel seeks from Palmeri is protected by the federal journalist's privilege.

## II. BACKGROUND

In July 2003, Business Week published an article authored by Palmeri entitled "To Really Be A Player, Mattel Needs Hotter Toys." Of particular interest to Mattel is the portion of the article referring to MGA, Larian and Bratz as follows:

> Mattel won't live or die on every new toy it develops. But it can't just rely on Barbies, either. "Like they say in business school – no risk, no reward," says Isaac Larian, CEO of privately held MGA. He should know: He got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers.

Niborski Decl., Ex. 1 (Article). In Mattel's view, the Article conveys that Larian told Palmeri that the Bratz dolls were Larian's idea and that the source of that idea was Larian's observation of "his own kids run[ning] around in navel-baring tops and hip huggers." Mattel seeks testimony from Palmeri to confirm what Mattel characterizes as Larian's "published" statements about the origins of Bratz.[1]

Mattel contends that the federal journalist's privilege does not apply because Mattel is seeking only "published" information, not "unpublished" information. Moreover, Mattel contends that even if the privilege applies, the privilege is qualified and yields when the litigant's need for the information sought outweighs any public interest in non-disclosure. Mattel contends that there is no public policy rationale for Palmeri's refusal to confirm under oath that Larian made the statements about the origins in Bratz that appear in the Article. In contrast, Mattel contends that it needs Palmeri's testimony to develop what it considers crucial evidence to establish that Carter Bryant ("Bryant") and Larian, among others at MGA, made inconsistent statements concerning the origins of Bratz and engaged in a scheme to conceal the product's true origins. More specifically, Mattel contends that Palmeri's anticipated testimony will provide direct proof that Larian –who has since acknowledged under oath that Bryant brought him the Bratz idea – falsely

---

[1] During the meet and confer process, Mattel offered to limit the time of questioning and to conduct the deposition at a time and place of Palmeri's choosing. Mattel also offered to discuss the prospective line of questioning in advance of the deposition with Palmeri's counsel.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

claimed that he was the creator of Bratz. Mattel contends that Larian's false claim was part of a scheme to conceal the truth about the origins of Bratz from the public and Mattel.

Mattel further contends that the evidence of concealment it seeks will show "guilty knowledge by Larian and MGA that Bryant developed Bratz while an employee of Mattel, in violation of his employment agreement with Mattel, and an awareness by Larian and MGA that Bryant's inventions during his employment at Mattel belong to Mattel." Mattel's Motion at p.3. Mattel contends that the evidence it seeks is also relevant to rebut MGA's statute of limitations defense.

Palmeri raises four main arguments in opposition to Mattel's motion. First, Palmeri contends that Mattel relies on decisions from circuits that are inconsistent with the journalist's privilege recognized by the Ninth Circuit in Shoen v. Shoen, 5 F.3d 1289 (9th Cir. 1993), and Shoen v. Shoen, 48 F.3d 412 (9th Cir. 1995). Second, Palmeri contends that the information Mattel seeks is "unpublished," and therefore the journalist's privilege applies. Palmeri reasons that nothing within the four corners of the Article reveals the source of the information about the origins of Bratz dolls. Even assuming for the sake of argument that the information Mattel seeks is "published," Palmeri contends that the journalist's privilege applies to preclude compelled disclosure of a journalist's professional news gathering efforts and results, whether published or not. Third, Palmeri contends that Mattel has failed to make the requisite showing to overcome the privilege, namely that the information Mattel seeks is "clearly relevant to an important issue in the case," that it is "non-cumulative," and that it is "unavailable despite exhaustion of all reasonable alternative sources." Shoen, 48 F.3d at 416. Fourth, Palmeri contends that Mattel ignores his rights under California's state constitutional shield law.

### III. DISCUSSION

Rooted in the First Amendment, the journalist's privilege protects non-party reporters against being compelled to disclose information that they acquire in the course of their newsgathering. Shoen v. Shoen, 48 F.3d 412 (9th Cir. 1995) ("Shoen II"); Shoen v. Shoen, 5 F.3d 1289, 1293 (9th Cir. 1993) ("Shoen I"). "[T]he journalist's privilege applies to a journalist's

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

1  resource materials even in the absence of the element of confidentiality." Shoen I, 5 F.3d at 1295-196.

2  

3  The journalist's privilege is a qualified one. "[T]he process of deciding whether the privilege is overcome requires that 'the claimed First Amendment privilege and the opposing need for disclosure be judicially weighed in light of the surrounding facts, and a balance struck to determine where lies the paramount interest.'" Shoen I, 5 F.3d at 1292-1293 (quoting Farr v. Pitchess, 522 F.2d 464, 468 (9th Cir. 1975). To overcome the privilege when the information sought is not confidential, a litigant must demonstrate that the requested evidence is: "(1) unavailable despite the exhaustion of all reasonable alternative sources; (2) non-cumulative; and (3) clearly relevant to an important issue in the case." Shoen II, 48 F.3d at 416. This test is intended to "ensure that compelled disclosure is the exception, not the rule." Id.

Because Mattel cannot satisfy any, let alone all, of these three factors, Mattel is not entitled to depose Palmeri.

### 1. The Information Sought is Not Clearly Relevant to an Important Issue

The information sought by Mattel is not clearly relevant to an important issue in the case. Mattel's claims are predicated upon an allegation that Carter Bryant created Bratz while still employed by Mattel. Whether or not Larian made any statements to Palmeri about Larian's children "run[ning] around in navel-baring tops and hip huggers" is not relevant to that central issue.

Nor is the requested information "clearly relevant" to determine when Mattel was put on notice of its claims for purposes of the statute of limitations. As to this issue, the requested information would be superfluous. What is relevant is that the Article was published and that as of the date of its publication, this public account of the dolls' origin did not mention, much less credit Carter Bryant as the creator of the dolls. For purposes of the statute of limitations, the information published within the four corners of the Article is relevant, regardless of who was the source of the information.

Nor can Mattel satisfy the "clearly relevant" standard by claiming that the information it

seeks will demonstrate that Larian "made inconsistent statements concerning the origins of Bratz." The Ninth Circuit's <u>Shoen II</u> decision is on point. There, the plaintiffs argued that the journalist's tapes and notes of an interview with the defendant might provide valuable impeachment material. <u>Shoen</u>, 48 F.3d at 418. The Ninth Circuit concluded that "to the extent the requested materials would demonstrate that [defendant] was less than candid during his deposition, they do not relate to an important issue in the case." <u>Id</u>. Although the requested information is relevant to Larian's credibility, a greater showing is required under <u>Shoen I</u>, <u>supra</u>, to tip the balance of competing interests in favor of compelling disclosure of information protected by the journalist's privilege.

### 2. The Information Mattel Seeks is Cumulative

Mattel contends that the information it seeks from Palmeri is not cumulative because no one else has testified about any communications between Palmeri and Larian. Mattel's focus, however, is unreasonably narrow. The issue is not whether other witnesses have testified specifically about the substance of the communications between Palmeri and Larian, but whether the information Mattel seeks is cumulative.

As discussed previously, Mattel is essentially seeking evidence of Larian's allegedly inconsistent statements regarding the origins of Bratz. In its motion papers, Mattel acknowledges that it obtained testimony from two other reporters (Ms. Tkacik and Ms. O'Neal) who "wrote articles for their respective publications that contain statements attributed to Larian regarding the origins of Bratz which were inconsistent with Larian's, MGA's and Bryant's subsequent claims in this case." Mattel's Motion at p.4. Any testimony that Palmeri might provide on the same subject would be cumulative impeachment evidence.

### 3. Information Sought is Available From Another Source

Finally, the information Mattel seeks from Palmeri is clearly available from another source. In <u>Shoen I</u>, <u>supra</u>, the Ninth Circuit refused to compel disclosure of a non-party reporter's tapes and notes of his communications with the defendant unless and until plaintiffs deposed defendant and specifically questioned him about those communications. The Ninth Circuit

described the defendant as "an obvious alternative source for discovering what he said to [the reporter] in their communications." Shoen I, 5 F.3d at 1296. Even though the plaintiffs served the defendant with interrogatories asking about his communications with the reporter and the defendant responded that he could not recall the specific content of his meetings or conversations with the reporter, the court found that the plaintiffs could not claim to have exhausted alternative sources until they "plumb[ed] the depths" of the defendant's recollection in deposition. Id. at 1297. Like the plaintiffs in Shoen I, Mattel cannot claim to have exhausted alternative sources unless and until Mattel deposes Larian and exhausts Larian's recollection of his communications with Palmeri. Moreover, Larian is not the only alternative source of information that must be exhausted before Mattel can overcome the journalist's privilege. There may be other witnesses with whom Larian may have discussed the origins of Bratz dolls, such as co-workers, publicists or industry analysts. Yet, Mattel does not claim to have questioned or deposed those witnesses about any such statements.

## V. CONCLUSION

Because Mattel has not satisfied any of the three factors set forth in Shoen II, Mattel's motion to compel the deposition of Christopher Palmeri is denied.[2] Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

Dated: February 26, 2008

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

---

[2] Because the federal journalist's privilege is dispositive of the motion, it is unnecessary to address Palmeri's alternative argument under the California shield law.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on February 26, 2008, I served the attached ORDER DENYING MATTEL'S MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI in the within action by email addressed as follows:

| Name | Firm | Email |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Alonzo Wickers IV, Esq. | Davis Wright Tremaine LLP | alonzowickers@dwt.com |
| Robyn Aronson, Esq. | Davis Wright Tremaine LLP | robynaronson@dwt.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on February 26, 2008, at San Francisco, California.

_____
Sandra Chan