QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
(timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727<br><br>**REPLY IN SUPPORT OF MATTEL, INC.'S MOTION FOR LEAVE TO OBTAIN DISCOVERY AFTER THE PHASE 1 DISCOVERY CUT-OFF IN RESPONSE TO A SUBPOENA SERVED ON PEOPLE'S BANK OF THE OZARKS**<br><br>Date: TBA<br>Time: TBA<br>Place: Telephonic<br><br>**Phase 1**<br>Discovery Cut-off: January 28, 2008<br>Pre-trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 4

ARGUMENT .............................................................................................................. 8

I.  MATTEL'S MOTION FOR LEAVE REGARDING ITS SUBPOENA TO PEOPLE'S BANK OF THE OZARKS SHOULD BE GRANTED BECAUSE MATTEL HAS SHOWN GOOD CAUSE ................................. 8

    A.  The Documents Sought Are Relevant to the Claims And Defenses At Issue ............................................................................... 8

        1.  The Documents Are Relevant to Disgorgement and Constructive Trust Remedies, as Well as Punitive Damages ................................................................................ 8

        2.  Mattel is Entitled to Documents Showing or Related to Bryant's Net Worth ..................................................................... 11

        3.  The Documents Sought Are Relevant to Mattel's Commercial Bribery Claims and Evidence of Bias ................. 12

    B.  Since December 2007, Mattel Has Made Diligent, Good Faith Attempts to Gain the Information Requested Since December 2007 ............................................................................................... 12

II.  THE SUBPOENAS ARE NOT OVERBROAD NOR DUPLICATIVE ....... 13

III.  BRYANT WAS NOT PREJUDICED BY LACK OF "PRIOR NOTICE" ....................................................................................................... 14

CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

### Cases

In re Bergeson,
   112 F.R.D. 692 (D. Mont. 1986) ........................................................... 12

Biocare Med. Techs., Inc. v. Khostowshahi,
   181 F.R.D. 660 (D. Kan. 1998) ............................................................ 14

Blaser v. Mt. Carmel Regional Med. Ctr., Inc
   2007 WL 852641, at *2-*3 (D. Kan. 2007) ........................................ 13

Burlesci v. Petersen,
   68 Cal. App. 4th 1062 (1998) ................................................................. 9

Clark v. Bunker,
   453 F.2d 1006 (9th Cir. 1972) ................................................................ 8

Cramer v. Biddison,
   65 Cal. Rptr. 624, 257 Cal. App. 2d 720 (1968) .................................... 9

Doe v. United States
   2007 WL 1521550 (D.C. Pa. 2007) ..................................................... 13

E. Bassett Co. v. Revlon, Inc.,
   435 F.2d 656 (2d Cir. 1970) .................................................................. 8

Farmers Ins. Exchange v. Zerin,
   53 Cal. App. 4th 445 (1997) ................................................................... 9

Housing Rights Center v. Sterling,
   2005 WL 3320739 (C.D. Cal. 2005) ..................................................... 9

Judson v. Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec,
   476 F. Supp. 2d 913 (N.D. Ill. 2007) ............................................. 13, 14

Korea Supply Co. v. Lockheed Martin Corp.,
   29 Cal. 4th 1134 (2003) ......................................................................... 8

Kraus v. Trinity Management Servs., Inc.,
   23 Cal. 4th 116 (2000) ........................................................................... 8

Kraus v. Willow Park Public Golf Course,
   140 Cal. Rptr. 744, 73 Cal. App. 3d 354 (1977) .................................... 9

Plant Genetic Systems, N.V. v. Northrup King Co., Inc.,
   6 F. Supp. 2d 859 (E.D. Mo. 1998) ................................................ 12, 13

Southern California Housing Rights Center v. Krug,
   2006 WL 4122148 (C.D. Cal. 2006) ................................................... 10

State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL. 2993840 (E.D.N.Y. 2007) .................. 12

Taylor v. Polackwich, 145 Cal. App. 3d 1014 (1983) .................. 9

Tubor v. Clift, 2007 WL. 214260 (W.D. Wash. 2007) .................. 13

Weiss v. Marchus, 51 Cal. App. 3d 590 (1975) .................. 9

Zinter Handling, Inc. v. G.E., 2006 WL. 3359317 (N.D.N.Y. 2006) .................. 13

Zivkovic v. Southern Calif. Edison Co., 302 F.3d 1080 (9th Cir. 2002) .................. 7

**Statutes**

17 U.S.C. § 504(b) .................. 8

Cal. Civ. Code § 2223 .................. 9

Cal Civ. Code § 2224 .................. 9

Fed. R. Civ. P. 16 .................. 7

Fed. R. Civ. P. 16(b) .................. 7

**Miscellaneous**

4 Callmann, Unfair Competition and Monopolies § 14.45 (4th ed.) .................. 8

## Preliminary Statement

Bryant's opposition to Mattel's Motion for Leave to obtain discovery regarding its subpoena to the People's Bank of the Ozarks is the latest in a series of steps Bryant has taken improperly to block Mattel's efforts to obtain relevant financial records that Bryant himself has failed to produce—notwithstanding the Discovery Master's January 25, 2007 Order that he do so.

For more than two years, Bryant refused to produce documents showing his Bratz-related income. In January 2005 and again in January 2007, Mattel moved to compel Bryant to produce such documents. By Order dated January 25, 2007, the Discovery Master granted Mattel's motion and ordered Bryant to produce various certain financial records—including his personal banking records—from January 1, 1999 to the present. The records to be produced were to be sufficient to establish any and all payments received by Bryant from MGA defendants and all financial gains and benefits received by Bryant as a result of his alleged wrongful conduct in violation of his duties to Mattel. The Discovery Master found such records relevant to the claims at issue.

By mid-January 2008, however, Bryant had yet to produce those financial records. On January 15, 2008—ten days before the Phase 1 discovery cut-off, Bryant left Mattel no choice but to seek Bryant's banking records by subpoena from the People's Bank of the Ozarks (the "Bank"). The Bank agreed to comply with the subpoena without objection, and was prepared to produce the vast majority of the documents sought by the return date of January 28, 2008. But Bryant intervened and sent what the Bank's counsel called a "threatening letter" demanding that the Bank not produce any responsive documents. The Bank has declined to produce any documents due to Bryant's intervention and threatened Motion to Quash.

1   Bryant contends that production of the documents requested in the
2   subpoena would violate his right to privacy. In his January 25, 2007 Order, the
3   Discovery Master rejected Bryant's privacy argument. The Order declared that any
4   privacy rights Bryant has in the financial records sought are thoroughly protected by
5   the operative protective order.

6   Bryant also makes the conclusory and baseless argument that the
7   requests are overbroad and duplicative. As explained above, the Discovery Master
8   ordered Bryant to produce the financial records sought. With Phase 1 discovery
9   closed, Bryant's history of obstruction, and Mattel's legitimate concerns of
10  spoliation and evidence tampering, Mattel should not be forced to assume Bryant's
11  good-faith production of indisputably relevant and discoverable financial records.

12  The crucial importance of third-party discovery in this case was
13  underscored again in a key deposition taken only four weeks ago. At her deposition
14  on December 28, 2007, Veronica Marlow, a third-party witness who worked directly
15  with Bryant and MGA for a lengthy period of time, testified that she knew of at least
16  three Mattel employees who worked for years on Bratz *while they were employed*
17  *by Mattel*.[1] This was a shocking revelation. Neither MGA nor Bryant had disclosed
18  this information, despite repeated Court Orders compelling discovery by Bryant and
19  despite the fact that at least one of these individuals was a co-worker of Bryant's at
20  Mattel. To the contrary, both Bryant and MGA gave flat denials under oath that

---

[1] Exh. Q at 288:8-289:21, 306:8-25; 307:8-308:1; 363:15-21[Deposition Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007] to the Declaration of Melissa Grant In Support of Mattel's Motion for Leave to Obtain Discovery After the Phase 1 Discovery Cut-off in Response to a Subpoena Served on People's Bank of the Ozarks. ("Grant Dec."). All exhibits are to the Grant Dec.

there were any other Mattel employees knowingly involved.[2] Yet, by MGA's reasoning here, the Court should have denied Mattel access to this evidence relating to which MGA employees worked on Bratz while employed at Mattel. because it purportedly duplicated discovery requested of defendants. In fact, defendants made that very argument to Judge Larson in resisting the production of Ms. Marlow for deposition in the first place, to no avail.

This Court should not countenance any further attempt by Bryant to foreclose Mattel from obtaining indisputably relevant information from any third party—including the People's Bank of the Ozarks. Accordingly, Bryant's Motion should be denied, and production of the documents sought by Mattel from the People's Bank should be compelled.

### Statement of Facts

**Mattel Subpoenaed Documents That Relate to Mattel's Claims and Defenses.** On January 21, 2008, Mattel served a subpoena *duces tecum* on Bryant's personal bank--the Peoples Bank of the Ozarks.[3] The return date for responsive documents was January 28, 2008—the Phase 1 discovery cut-off. The subpoena contained six requests:

(1) All DOCUMENTS REFERRING OR RELATING TO CARTER BRYANT ENTERPRISES from January 1, 1999 to the present, inclusive.

(2) All DOCUMENTS REFERRING OR RELATING TO CARTER BRYANT from January 1, 1999 to the present, inclusive.

---

[2] Exh. R at 286:25-287:5 [Dep. Tr. of Carter Bryant, Vol. 2 ("Bryant Tr.")]; Exh. S at 301:2-17 [Dep. Tr. of Lisa Tonnu, Vol. 2 ("Tonnu Tr.)]; Exh. T at 64-70 [MGA's Supp. Responses to Mattel's Revised Third Set of Interrogatories].

[3] Exh. C.

(3) All DOCUMENTS REFERRING OR RELATING TO the ACCOUNT maintained by YOU numbered 300368180, including but not limited to statements, monthly statements, annual statements, daily transaction history reports, monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature cards, and COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNT, created between January 1, 1999 and the present, inclusive.

(4) All DOCUMENTS REFERRING OR RELATING TO any other ACCOUNT maintained by YOU that is in the name of, for the benefit of or concerns CARTER BRYANT ENTERPRISES or CARTER BRYANT, including but not limited to statements, monthly statements, annual statements, daily transaction history reports, monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature cards, and COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNTS, created between January 1, 1999 and the present, inclusive.

(5) DOCUMENTS sufficient to show the account number of all ACCOUNTS maintained by YOU in the name of, for the benefit of or concerning CARTER BRYANT ENTERPRISES or CARTER BRYANT between January 1, 1999 and the present, inclusive.

(6) All DOCUMENTS showing or relating to any account(s) held by CARTER BRYANT ENTERPRISES or CARTER BRYANT or any account(s) for which CARTER BRYANT ENTERPRISES or CARTER BRYANT has signatory authority at any other financial institution..[4]

On January 25, 2008, the Bank advised Mattel that it would comply with the subpoena without objection, that it had assembled the vast majority of responsive documents, and that it needed an additional 14 day to retrieve a few months of records from microfilm.[5] In light of the Bank's request, Mattel asked

---

[4] Exh. C.

[5] Exh. D.

-4-

Bryant and the MGA defendants to stipulate to the additional time for production requested by the Bank.[6] Bryant flatly refused.[7]

Mattel agreed to the Bank's request and moved for leave to permit the discovery after the Phase 1 discovery cut-off.[8] Mattel requested that the Bank produce the documents it had already assembled on the subpoena return date of January 28, 2008, and the Bank agreed.[9]

Thereafter, Bryant served objections to the subpoena and sent what the Bank's counsel considered to be a "threatening letter" demanding that it not produce any documents to Mattel.[10] As a result, Bryant prevented the Bank from producing **any responsive documents.**[11]

**Foothill Business Services Document Production.** On December 11, 2007, Mattel issued a subpoena to Foothill Business Services ("Foothill"), Bryant's accountants, seeking relevant financial information concerning Bryant and Carter Bryant Enterprises. Mattel amended the subpoena on December 18, 2007 ("the Foothill Subpoena").[12] Bryant's counsel objected to the Foothill Subpoena and advised Mattel that Bryant intended to file a motion to quash or for a protective order if Mattel did not withdraw it.[13] Over the course of the next month, counsel

---

[6] Grant dec. ¶ 6.
[7] Id. at ¶ 8, Exh. H.
[8] Id. at ¶ 6.
[9] Id. at ¶ 9.
[10] Id. at ¶ 10.
[11] Id.
[12] Id. at ¶ 13.
[13] Id. at ¶ 14.

met and conferred by telephone, e-mail message, and letter regarding Bryant's objections to the Foothill Subpoena.[14]

By letter dated January 11, 2008, Bryant's counsel confirmed that Bryant agreed to gather from Foothill and produce to Mattel the following documents:

    a.    All available profit and loss income statements for Carter Bryant Enterprises ("CBE");

    b.    Documents sufficient to show all payments to Bryant from MGA and/or Isaac Larian;

    c.    Documents sufficient to show all payments to Veronica Marlow from Bryant or CBE;

    d.    Documents sufficient to show Bryant's net worth;

    e.    Documents sufficient to identify any witness or witnesses' counsel to whom Bryant has made any payments for fees, costs, or expenses incurred by that witness in connection with the present litigation and the amount paid, if any, to or on behalf of such witness;

    f.    Foothill's document retention policy, if it has one; and

    g.    Documents constituting communications between Bryant and Foothill substantively related to Bratz.[15]

On January 23, 2008—five days before the Phase 1 discovery cut-off—Bryant purported to produce by e-mail "documents in accordance with our stipulation regarding Mattel's subpoena of Foothill Business Services."[16] However, the Foothill production consisted **of only 11 documents:** two CBE income

---

[14] Id.
[15] Id. at ¶ 15.
[16] Id. at ¶ 16.

1  statements from 2003, four CBE quarterly income statements from 2006, four CBE
2  quarterly income statements from 2007, and a ledger of payments to Veronica
3  Marlow in 2006 and 2007 only.[17]

**Bryant Has Not Provided Mattel with "Prior Notice" of Subpoenas Before Serving Them to Third Parties.** Bryant has served at least six subpoenas on third parties in this action. They include subpoenas to Anna Rhee, Verizon California, SBC, Pacific Bell Telephone Co., Steven Linker, and Ogilvy and Mather Worldwide, all of which requested the production of specified documents. Bryant **never** provided Mattel with "prior notice" of those subpoenas before serving them on these parties.

## Argument

### I. MATTEL'S MOTION FOR LEAVE REGARDING ITS SUBPOENA TO PEOPLE'S BANK OF THE OZARKS SHOULD BE GRANTED BECAUSE MATTEL HAS SHOWN GOOD CAUSE

A scheduling order may be amended to obtain relief from the discovery cut-off upon a showing of "good cause." Fed. R. Civ. P. 16(b). The Court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 Advisory Committee's Notes (1983 amendment); see also Zivkovic v. Southern Calif. Edison Co., 302 F.3d 1080, 1087-88 (9th Cir. 2002) (amending the scheduling order is within the discretion of the court).

Good cause exists to grant Mattel leave to obtain documents after the January 28, 2008 Phase I discovery cut-off in response the subpoena *duces tecum* served on People's Bank of the Ozarks.

---

[17] Id.

### A. The Documents Sought Are Relevant to the Claims And Defenses At Issue

Bryant asserts in conclusory terms that the documents sought from the Bank are irrelevant to the claims and defenses at issue. Bryant is incorrect.

#### 1. The Documents Are Relevant to Disgorgement and Constructive Trust Remedies, as Well as Punitive Damages

One remedy Mattel seeks is disgorgement of all amounts wrongfully obtained. The disgorgement remedy also provides for the imposition of constructive trusts to recover the ill-gotten gains of Bryant that have been transferred to other parties.[18] For purposes of establishing disgorgement, Mattel must take into account money transferred from MGA defendants to and from Bryant, regardless of the manner in which it was transferred. Mattel is entitled to discovery that shows all assets received as a result of Bryant's alleged violations of his duties to Mattel.

It is undisputed that disgorgement is a remedy for Mattel's claims against defendants, including copyright infringement and trade secret misappropriation. 17 U.S.C. § 504(b); E. Bassett Co. v. Revlon, Inc., 435 F.2d 656 (2d Cir. 1970) (copyright infringement); 4 Callmann, Unfair Competition and Monopolies § 14.45 (4th ed.); Clark v. Bunker, 453 F.2d 1006, 1011 (9th Cir. 1972) (trades secret misappropriation). The scope of the disgorgement remedy is set forth in two recent California Supreme Court decisions. See Kraus v. Trinity Management Servs., Inc., 23 Cal. 4th 116 (2000); Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134 (2003). That court stated that:

> "disgorgement" is a broader remedy than restitution. . . .
> [A]n order for disgorgement "may compel a defendant to

---

[18] Exh. B [Second Amended Answer and Counterclaims] to the Declaration of Melissa Grant.

> surrender *all* money obtained through an unfair business practice even though not all is to be restored to the persons from whom it was obtained or those claiming under those persons. It has also been used to refer to surrender of *all* profits earned as a result of an unfair business practice regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice."

Korea Supply, 29 Cal. 4th at 1145 (quoting Kraus, 23 Cal. 4th at 127) (emphasis added). Moreover, an important part of disgorgement is the imposition of a constructive trust to recover ill-gotten gains that have been transferred to others by a defendant. A constructive trust is intended to prevent unjust enrichment, with equity compelling the restoration to another of property to which the holder thereof is not justly entitled. Taylor v. Polackwich, 145 Cal. App. 3d 1014, 1022 (1983); Cal. Civ. Code §§ 2223, 2224. See also Weiss v. Marchus, 51 Cal. App. 3d 590, 600 (1975) (constructive trust may be imposed in case of fraud, mishandling, or almost any case of wrongful acquisition or detention of property to which another is entitled). When personal property is in dispute, plaintiffs may invoke the remedy of constructive trust. See Cal Civ. Code §§ 2223, 2224. To create a constructive or involuntary trust, only three conditions are necessary: existence of a res, i.e. property or some interest in property; plaintiff's right to that res; and defendant's gain of the res by fraud, accident, mistake, undue influence, violation of the trust or other wrongful act. Kraus v. Willow Park Public Golf Course, 140 Cal. Rptr. 744, 73 Cal. App. 3d 354 (1977); see Cramer v. Biddison, 65 Cal. Rptr. 624, 257 Cal. App. 2d 720 (1968); Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1067 (1998) (constructive trust); Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445, 454–55 (1997) (equitable lien is proper if unjust enrichment and detrimental reliance are implicated).

Mattel needs the documents sought by the subpoenas to prove the total amount the defendants must disgorge. See Housing Rights Center v. Sterling, 2005 WL 3320739, *3 (C.D. Cal. 2005) (finding financial information relevant to disgorgement of profits claim). Money that properly belonged to Mattel was transferred from MGA defendants to or from Bryant. Mattel should be able to understand how that money was used because Bryant has no right to whatever additional gains were realized with Mattel's money. See id. Indeed, the right to those additional gains vests solely in Mattel.

Thus far, Bryant has produced few if any documents that Mattel has been able to identify from which Mattel may ascertain any gain realized from Bryant's use of funds that rightfully belong to Mattel.[19] Consequently, Bryant's banking records from the Bank People's Bank of the Ozarks are directly relevant.

### 2. Mattel is Entitled to Documents Showing or Related to Bryant's Net Worth

The Discovery Master ruled that as part of the punitive damages remedy, Mattel is entitled to documents reflecting defendants' net worth. Southern California Housing Rights Center v. Krug, 2006 WL 4122148, *4 (C.D. Cal. 2006) ("When a punitive damages claim has been asserted, a majority of federal courts permit pretrial discovery of financial information about defendants without requiring the plaintiff to establish a prima facie case on the issue of punitive damages."). Whether or not assets or money were transferred during the period of wrongdoing is relevant to punitive damages, and Mattel is therefore entitled to documents reflecting any such transfer.

Bryant has agreed that documents relevant to his net worth are necessary for Mattel's experts to determine the damages that accrued to Mattel as a

---

[19] Grant dec. ¶ 16.

result of their infringement of Mattel's copyrights, and for punitive damages and to defend against MGA's as yet unspecified damages. And in his January 25, 2007 Order, the Discovery Master held just that.[20]

Here, Bryant, through his repeated failure and refusal to provide financial records, has warranted Mattel's subpoenas to third parties to obtain the documents that Bryant has not produced.[21]

### 3. The Documents Sought Are Relevant to Mattel's Commercial Bribery Claims and Evidence of Bias

The banking records sought by Mattel are also relevant because they bear directly on Mattel's commercial bribery claim. These documents may also lead to evidence of bias of, an influence on, and influence on, potential witnesses. Such concerns are not theoretical, as evidence demonstrates that Bryant received payments from MGA while he was a Mattel employee. Mattel is entitled to seek documents that would uncover additional information about Bryant's involvement in MGA's attempts to bribe, or Bryant's attempts to improperly pay, *other Mattel employees or vendors.*

### B. Since December 2007, Mattel Has Made Diligent, Good Faith Attempts to Gain the Information Requested

Several months prior to the discovery cut-off, Mattel subpoenaed Bryant's accountants, Foothill Business Services, in an attempt to obtain the information it now seeks from People's Bank. After a month of meet and confers, Bryant agreed to allow Foothill to produce the responsive documents. However, Bryant's production, which occurred shortly before the discovery cut-off, contained

---

[20] Exh. P at 15–16. [January 25, 2007 Order]
[21] Grant dec. ¶ 6.

a measly 11 documents.[22] This woefully deficient production, which violated the parties' stipulation, required Mattel to scramble and subpoena third parties in order to obtain this vital information. Had Bryant complied with the parties' stipulation and produced all responsive documents, the subpoena to People's Bank, and the current motion, would be unnecessary.

## II. THE SUBPOENAS ARE NOT OVERBROAD NOR DUPLICATIVE

Bryant's assertion that the Mattel's requests are abusively drawn or unduly overbroad is also baseless given that Mattel's document requests are directed to a financial institution. Financial institutions generate and retain precisely the types of documents responsive to Mattel's requests. Moreover, the Discovery Master has already expressly held that Bryant's financial records—including banking records—are relevant to Mattel's damages claim.[23]

"[N]othing in the Federal Rules of Civil Procedure requires a litigant to rely solely on discovery obtained from an adversary instead of utilizing subpoenas." State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840, at *1 (E.D.N.Y. 2007); In re Bergeson, 112 F.R.D. 692, 695 (D. Mont. 1986) (conclusory assertions that documents sought are available from others more economically "does not constitute a showing of unreasonableness or oppressiveness."); see also Plant Genetic Systems, N.V. v. Northrup King Co., Inc., 6 F. Supp. 2d 859, 861–862 (E.D. Mo. 1998) (third party subpoena proper where information sought pertained to a central issue in the underlying claim; it was not burdensome in light of plaintiff's diligent efforts to obtain the information from defendant; and the nonparty had signed protective order prohibiting disclosed information from being seen by plaintiffs counsel or nonparty's competitors).

---

[22] Id. at ¶ 6; Exh. O.

[23] Exh. P at 15–16. [January 25, 2007 Order]

Here, Bryant has failed to produce his financial records for more than a year notwithstanding the Discovery Master's January 25, 2007 Order which compelled Bryant to produce financial records. Bryant cannot refuse to produce such relevant and discoverable documents for months, then object when Mattel seeks such documents from third parties. As the Phase 1 discovery cut-off approached, after failing to adhere to the Foothill document stipulation, Bryant left Mattel no choice but to seek documents essential to its claims from third parties, including the Peoples' Bank of the Ozarks.

### III. BRYANT WAS NOT PREJUDICED BY LACK OF "PRIOR NOTICE"

Bryant argues that the subpoena is invalid and must be quashed because Mattel did not provide him with prior notice before serving it on the Bank. Bryant is again incorrect.

As a preliminary matter, Bryant's objection is disingenuous in light of his conduct. Indeed, Bryant has repeatedly subpoenaed parties without providing prior notice to Mattel.[24] He provided no notice, much less prior notice, for six subpoenas he issued that requested the production of documents: Anna Rhee, Verizon California, SBC, Pacific Bell Telephone Co., Steven Linker, and Ogilvy and Mather Worldwide.[25] In addition, he has repeatedly sought to obstruct and thwart Mattel's efforts to obtain indisputably relevant and discoverable documents. After more than two years of refusing to produce financial records that the Court ordered him to produce, Bryant has left Mattel with no reasonable alternative but to obtain such records from third parties before the Phase 1 discovery cut-off. Bryant's baseless Motion to Quash is yet another attempt to thwart Mattel's right to secure documents directly relevant to its claims.

---

[24] Grant Decl. ¶ 17.

[25] Id.

Moreover, Bryant was not prejudiced by any delay in receiving notice, since he had sufficient opportunity to object to the subpoena and move to quash. Absent such harm, there is insufficient grounds to quash the subpoena. "The purpose of such notice is to afford other parties an opportunity to object to the production or inspection, and to serve a demand for additional documents or things." Advisory Committee Note to the 1991 amendments to Rule 45; see also Blaser v. Mt. Carmel Regional Med. Ctr., Inc., slip copy, 2007 WL 852641, at *2-*3 (D. Kan. 2007) (holding that prior notice of subpoena is not necessary as long as opposing party has an opportunity to object); Zinter Handling, Inc. v. G.E., 2006 WL 3359317, at *2 (N.D.N.Y. 2006) (same). Thus, the majority of court's hold that the "procedural defect" of untimely notice is "an insufficient basis by which to quash subpoenas" where the opposing party suffered no prejudice thereby. Tubor v. Clift, 2007 WL 214260, at *6 (W.D. Wash. 2007); see also Zinter, 2006 WL 3359317, at *2; Doe v. United States, slip copy, 2007 WL 1521550 (D.C. Pa. 2007); Judson v. Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 476 F. Supp. 2d 913, 929 (N.D. Ill. 2007) (citing cases).

Here, Bryant not only had an opportunity to, but he did in fact, serve objections to the subpoena, moved to quash, and stopped the production of any responsive documents by the Bank. He thus suffered **no prejudice whatsoever**. In such circumstances, there is no basis on which to quash the subpoena. See, e.g., id.; Biocare Med. Techs., Inc. v. Khostowshahi, 181 F.R.D. 660, 667-68 (D. Kan. 1998) (refusing to quash subpoena for violation of Rule 45's notice requirement where aggrieved party failed to show prejudice from the violation). Indeed, imposing a draconian sanction such as that urged by Bryant where he has not been prejudiced or harmed would be unfair to Mattel, and would deprive Mattel of documents that are essential to its claims and defenses in this case, and thereby prejudice Mattel's ability to prepare for trial.

## Conclusion

For the reasons set forth above, Mattel respectfully requests that its Motion for Leave to obtain discovery regarding its subpoena to the People's Bank of the Ozarks be granted.

DATED: February 28, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By   /S/
Michael T. Zeller
Attorneys for Mattel, Inc.