QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
(timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-09059 and CV 05-02727<br><br>**DISCOVERY MATTER**<br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]**<br><br>[PUBLIC REDACTED] MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL MGA AND CARTER BRYANT TO RETURN PRIVILEGED DOCUMENT AND FOR PROTECTIVE ORDER; AND<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br><br>[Declarations of Timothy L. Alger, Jon D. Corey and Jill Thomas filed concurrently herewith]<br><br>Hearing Date: T.B.D.<br>Time: T.B.D.<br>Place: T.B.D. |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at a conference before Discovery Master Hon. Edward Infante (Ret.) that will occur on a date and at a time to be determined, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court for (i) an order compelling defendants MGA Entertainment, Inc. and Carter Bryant to return a document containing privileged material (Bates stamped M 0074372), and (ii) a protective order striking all deposition testimony regarding the privileged material, requiring the redaction of deposition transcripts and exhibits, and barring MGA and Bryant from using the privileged material in discovery and at trial.

This Motion is made pursuant to Section 13 of the Stipulated Protective Order and Federal Rule of Civil Procedure 26 on the grounds that Mattel inadvertently did not redact a portion of the document which is protected by attorney-client privilege and the attorney work product doctrine; that MGA and Bryant have inexcusably failed to return or destroy all copies of the document containing privileged material; and that MGA and Bryant have improperly elicited deposition testimony from two witnesses regarding the privileged material. The Discovery Master has jurisdiction to hear this motion pursuant to the Stipulation and Order for Appointment of a Discovery Master.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Timothy L. Alger, Jon D. Corey and Jill Thomas filed concurrently herewith, the records and files of this Court, and all other matters of which the Court may take judicial notice.

**Certificate Of Compliance With Local Rule 37-1**

Mattel and MGA met and conferred regarding the privileged material at issue on July 11, 2007, August 7, 2007 and February 21 and 22, 2008, but were unable to reach agreement regarding the issues raised in this motion. Mattel and Bryant met and conferred regarding the privileged material at issue on July 11, 2007 and August 7, 2007.

DATED: February 28, 2008

Respectfully submitted,

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By [signature]
Timothy L. Alger
Attorneys for Mattel, Inc.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1

FACTUAL BACKGROUND ........ 3

ARGUMENT ........ 12

I. THE JULY 22, 2003 ENTRY IS PROTECTED BY BOTH ATTORNEY-CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE ........ 12

A. Attorney-Client Privilege Applies Because Mattel's Agent Prepared The Entry Pursuant to Instructions from Legal Counsel ........ 12

B. Attorney Work Product Protection Applies Because Mattel Prepared the Document After Commencement of Litigation ........ 19

II. MATTEL IS ENTITLED TO THE RETURN AND DESTRUCTION OF ALL COPIES OF THE DOCUMENT ........ 19

A. The Stipulated Protective Order Mandates the Prompt Return of An Inadvertently Produced Privileged Document ........ 19

B. Rule 26 Also Requires Defendants to Promptly Return, Sequester or Destroy a Privileged Document ........ 21

III. DEFENDANTS' USE OF THE DOCUMENT WAS IMPROPER, EVEN IF THEY BELIEVED IT WAS NOT PRIVILEGED ........ 22

IV. THE COURT SHOULD ISSUE A PROTECTIVE ORDER TO REMEDY DEFENDANTS' IMPROPER USE OF THE DOCUMENT ........ 24

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Page**

## Cases


Aramony v. United Way of America, 969 F. Supp. 226 (S.D.N.Y. 1997) .......... 16, 18

Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437 (S.D.N.Y. 1995) .......... 16, 18

Desai v. Am. Int'l Underwriters, 1992 WL. 110731 (S.D.N.Y. May 12, 1992) .......... 15

Employer's Reinsurance Corp. v. Clarendon National Ins. Co., 213 F.R.D. 422 (D. Kan. 2003) .......... 24

First Chicago Int'l v. United Exch. Co., 125 F.R.D. 55 (S.D.N.Y. 1989) .......... 12

Gomez v. Vernon, 255 F.3d 1118 (9th Cir. 2001) .......... 23

Grace Cmty. Church v. Lenox Twp., 2007 WL. 2534179 (E.D. Mich. Aug. 31, 2007) .......... 15

In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.), 357 F.3d 900 (9th Cir. 2004) .......... 19

Lloyds Bank PLC v. Republic of Equador, 1997 WL. 96591 (S.D.N.Y. Mar. 5, 1997) .......... 14

In re M & L Bus. Mach. Co., Inc., 161 B.R. 689 (D. Colo. 1993) .......... 13

Martin v. Valley Nat'l Bank of Arizona, 1992 WL. 196798 (S.D.N.Y. Aug. 6, 1992) .......... 15

Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., 1997 WL. 736726 (S.D.N.Y. Nov. 26, 1997) .......... 14, 16, 20, 24

Rico v. Mitsubishi Motors Corp., 68 Cal. Rptr. 3d 758, 766 (2007) .......... 23

RLI Ins. Co. v. Conseco, Inc., 2006 WL. 4833630 (S.D. Ind. Oct. 4, 2006) .......... 20, 24

State Comp. Ins. Fund v. WPS, Inc., 70 Cal. App. 4th 644 (1999) .......... 23

United States v. Kovel, 296 F.2d 918 (2d Cir. 1961) .......... 12

United States v. Martin, 278 F.3d 988 (9th Cir. 2002) ........ 11

Upjohn Co. v. United States, 449 U.S. 383 (1981) ........ 13

**Statutes**

Fed. R. Civ. P. 26 ........ 21, 22

Fed. R. Civ. P. 26(b)(3) ........ 18

Fed. R. Civ. P. 26(b)(5)(B) ........ 21, 22

## Preliminary Statement

Mattel brings this motion to remedy MGA Entertainment, Inc.'s and Carter Bryant's failure to comply with Section 13 of the Stipulated Protective Order, Federal Rule of Civil Procedure 26 and California law governing an attorney's handling of materials subject to a claim of privilege. Defendants have ignored their obligations to return or destroy a document containing privileged information. Defendants also have used Mattel's privileged information to ambush two witnesses and Mattel's counsel at deposition, without obtaining a court order overruling Mattel's privilege claim. Mattel respectfully requests that the Discovery Master (i) compel Defendants to return or destroy all copies of a partially redacted version of the document Bates stamped M 0074372,[1] and (ii) issue a protective order striking all deposition testimony regarding the privileged material, requiring the redaction of deposition transcripts and exhibits, and barring MGA and Bryant from any further use of the privileged portion of the document in discovery and at trial.

The document at issue is a chronological log of tasks and events maintained by Mattel's security department. Some of these entries reflect communications with Mattel's in-house legal counsel. When Mattel first produced the document in February 2007, it contained a single redaction of an entry on the basis of attorney-client privilege and attorney work product.

Mattel's outside counsel reviewed the document, which was part of a large investigation file, prior to production. Counsel ordered two redactions of the log, but, through inadvertence, only a single redaction was included in the production copy. Mattel produced on the same day in February 2007 more than

[1] A properly redacted copy of the document, Bates stamped M 0074372B, has already been provided to Defendants. See Document Bates Stamped M 0074372B, attached to the Declaration of Timothy L. Alger, dated February 28, 2008 ("Alger Dec."), Exh. 19.

2,600 other pages of documents. Mattel included document M 0074372 and other documents redacted or withheld from production on a supplemental privilege log.

On or about June 12, 2007, Mattel discovered that the second entry, dated "7/22/03," also should have been redacted from M 0074372 on the basis of privilege. To determine whether any additional privileged documents had been produced, Mattel promptly re-reviewed the documents that it had produced in February 2007. Mattel discovered that in addition to M 0074372, 11 other privileged pages had been produced inadvertently. Mattel promptly notified MGA and Bryant of the 12 pages that had been produced inadvertently and asked for their return or destruction.

Bryant "declined" to comply with Mattel's request. Mattel wrote to MGA and Bryant several times between June 2007 and January 2008 to point out that Section 13 of the Stipulated Protective Order *mandates* the return or destruction of inadvertently produced documents, but they have not complied with Section 13.

MGA initially returned a copy of the document and represented that it would certify compliance with Mattel's request once it had searched for and returned or destroyed all copies in its possession. Notwithstanding its clear acknowledgment that Section 13 required the return of all copies in its possession, MGA did not comply with the terms of Section 13 and never provided the certification.

Although Defendants indicated that they would obtain a court ruling on the issues of privilege, they never did, and instead sprung the document on witnesses and counsel at deposition. In December 2007, Defendants questioned Richard de Anda, Mattel's chief investigator, at deposition about the privileged "7/22/03" entry. In January 2008, Defendants also questioned Robert Simoneau, Mr. de Anda's predecessor, at deposition about the "7/22/03" entry.[2]

---

[2] Defendants also included the document in a much larger exhibit at the deposition of Alan Kaye, but did not question the witness about the "7/23/03" entry.

Defendants' questioning of two witnesses regarding material over which Mattel had repeatedly claimed privilege was underhanded and violated Federal Rule of Civil Procedure 26. That rule provides unambiguously, without exception, that when a party receives a document subject to a claim of privilege, it *must* "return, sequester or destroy" the document and it *must not* use it for any purpose other than to resolve the privilege claim with a court. If the receiving party disputes the privilege claim, it is obligated to raise the issue with a court, which the Defendants have not done here.

Both the California Supreme Court and Ninth Circuit have admonished attorneys to proceed with caution when they come into possession of documents subject to a claim of privilege. Attorneys are to either comply with a producing party's request to return a document or resolve the issue with a court -- not unilaterally use the disputed document for tactical advantage.

The Discovery Master should not permit Defendants to benefit from their clear violations of law. Accordingly, Mattel requests that its motion be granted and the document be ordered returned and references to the privileged material stricken from the deposition transcripts and exhibits.

**Factual Background**

Mattel's Production of M 0074372: On February 23, 2007, Mattel produced to MGA and Bryant a document Bates stamped M 0074372 (the "Document").[3] The Document is a chronological record of tasks and events recorded by Richard de Anda, Vice President of Mattel Global Security and Investigations.[4] It includes entries describing (i) tasks that Mr. de Anda performed

---

[3] Alger Dec. ¶ 3. The Document is being submitted to the Discovery Master under separate cover for *in camera* review. See Declaration of Jill Thomas, dated February 22, 2008 ("Thomas Dec.") ¶ 4.

[4] Alger Dec. ¶ 3; Thomas Dec. ¶ 6.

pursuant to instructions from, and (2) communications with, Mattel's legal counsel.[5] The Document was one of 2,637 pages produced by Mattel on February 23, 2007.[6] It included a redaction of one entry on the basis of attorney-client privilege and the attorney work product doctrine.[7] Prior to production, counsel for Mattel reviewed an unredacted version of the Document and ordered two entries to be redacted.[8] However, through inadvertence, only a single redaction was made.[9] Mattel placed the Document on its Supplemental Privilege Log dated February 23, 2007 (the "February 23, 2007 Supplemental Log"), which it served on MGA and Bryant concurrent with the document production.[10] Mattel also placed on its February 23, 2007 Supplemental Log 68 other documents that it redacted or withheld from the February 23rd production or an earlier production.[11]

Attempts by Mattel to "Claw Back" M 0074372: On or about June 12, 2007, Mattel discovered that it had inadvertently not redacted the second entry on the Document, dated "7/22/03."[12] Mr. de Anda created that entry after he spoke to Jill Thomas, Mattel's Assistant General Counsel.[13] To provide legal advice to Mattel, Ms. Thomas, acting solely in her legal capacity, not in a business capacity, instructed Mr. de Anda to obtain certain information about a witness in connection with another lawsuit, Gunther Wahl Productions, Inc. v. Mattel, Inc., Los Angeles

---

[5] Id.
[6] Alger Dec. ¶ 3.
[7] Id. ¶ 4; Thomas Dec. ¶ 4.
[8] Alger Dec. ¶ 4.
[9] Id.
[10] Id. ¶ 5; Mattel's Supplemental Privilege Log dated Feb. 23, 2007 (Entry No. 51), Alger Dec., Exh. 1.
[11] Alger Dec. ¶ 6; Mattel's Supplemental Privilege Log dated Feb. 23, 2007, Alger Dec., Exh. 1.
[12] Alger Dec. ¶ 7.
[13] Thomas Dec. ¶ 7.

Superior Court Case No. BC 269746.[14] Mr. de Anda's "7/22/03" entry memorialized the task that Ms. Thomas gave to him.[15]

The original, unredacted version of the Document was maintained in confidence in Mattel's Global Security and Investigations Department, and was not disclosed to any person other than lawyers representing Mattel until the Document was inadvertently produced in a redacted state in this litigation, as part of a production of many thousands of other documents.[16] Mattel has not intentionally waived, or intended to waive, at any time either its attorney-client privilege or attorney work product protection with respect to the "7/22/03" entry in the Document.[17]

After discovering the inadvertent production of the "7/22/03" entry, Mattel reviewed again the documents it had produced on February 23, 2007, to determine whether any other privileged documents had been produced inadvertently.[18] Mattel discovered the inadvertent production of 11 other privileged pages among the 2,637 pages it produced on February 23, 2007.[19]

---

14 Thomas Dec. ¶ 6.

15 Id. Carter Bryant, to whom the entry relates, is a former Mattel employee. Id. ¶ 7. He was not in the employ of Mattel in July 2003, when Ms. Thomas spoke with Mr. de Anda. Id. Bryant testified in a deposition in the Gunther Wahl litigation on or about September 9, 2003. Id. Mr. de Anda created the "7/22/03" entry after the commencement of the Gunther Wahl litigation. Id. Ms. Thomas had no business reason to request Mr. de Anda to collect the factual information and Mr. de Anda had no business reason to create the "7/22/03" entry. Id.

16 Id. ¶ 8.

17 Id.

18 Alger Dec. ¶ 8.

19 Id. Throughout this litigation, attorneys for Mattel have reviewed millions of pages of documents and Mattel has produced approximately 900,000 pages in discovery thus far. Id. ¶ 9.

On June 20, 2007, Mattel wrote to MGA and Bryant and requested that they return all paper copies and destroy all electronic copies of the 12 pages, including the Document, and certify that they had complied with Mattel's request.[20]

Mattel made its request pursuant to Section 13 of the Stipulated Protective Order in this litigation, which provides:

> If a Party . . . through inadvertence produces or provides discovery that it, he or she *believes is subject to a claim of attorney-client privilege or work product immunity*, the producing Party or nonparty may give written notice to the receiving Party that the document is subject to a claim of attorney-client privilege or work product immunity and request that the document be returned to the producing Party or nonparty. The receiving Party *shall promptly* return to the producing Party . . . the inadvertently disclosed document and *all copies* of such document.[21]

On June 25, 2007, Bryant "declined" Mattel's request.[22] Bryant did agree, however, "not to disseminate [the] document further pending Judge Infante's ruling on its status."[23]

On June 26, 2007, Mattel wrote to Bryant and again requested the return and destruction of all copies of the Document in his possession.[24] Mattel noted that Section 13's use of the word "shall" *requires* the return of documents requested by the producing party and does not give the receiving party discretion to "decline" such a request.[25]

---

[20] Letter from Timothy Alger to Diana Torres and Michael Page, dated June 20, 2007, Alger Dec., Exh. 2.

[21] Stipulated Protective Order; and Order ("Stip. Protective Order") § 13 (emphasis added), Alger Dec., Exh. 3.

[22] Letter from Michael Page to Timothy Alger, dated June 25, 2007, Alger Dec., Exh. 4.

[23] Id.

[24] Letter from Timothy Alger to Michael Page, dated June 26, 2007, Alger Dec., Exh. 5.

[25] Id.

Mattel, Bryant and MGA met and conferred regarding the Document on July 11, 2007.[26] No agreement was reached.[27] Following the conference of counsel, Mattel asked Bryant to return and destroy copies of the Document for a third time, or for legal authority supporting his position.[28] Mattel again pointed out to Bryant that Section 13 required the return of the Document.[29] Bryant never replied to Mattel.[30]

Meanwhile, on July 6, 2007, MGA returned the Document to Mattel but stated that it "will have to confirm at a later date that we have returned or destroyed all paper and electronic copies of [the Document] as we are searching our files to retrieve all copies."[31] MGA did not provide the subsequent confirmation of return or destruction, however.[32]

The Discovery Master's July 2007 Ruling: On July 10, 2007, the Discovery Master sustained Mattel's attorney-client privilege claim for the initial redaction of the Document.[33] The Discovery Master stated that his "review of the documents confirms Mr. de Anda's representation as to all of the privilege log entries, except entry 50 [a document not at issue in this motion]."[34] Mr. de Anda had declared that the redacted or withheld documents, including the Document now at issue, "constituted or recorded confidential communications between" de Anda

---

[26] Alger Dec. ¶ 14; Letter from Timothy Alger to Michael Page, dated July 20, 2007, Alger Dec., Exh. 6.

[27] Id.

[28] Letter from Timothy Alger to Michael Page, dated July 20, 2007, Alger Dec., Exh. 6.

[29] Id.

[30] Alger Dec. ¶ 16.

[31] Letter from David Hurwitz to Timothy Alger, dated July 6, 2007, Alger Dec., Exh. 7.

[32] Alger Dec. ¶ 18.

[33] Discovery Master's Order Re in Camera Review of Global Security Files, dated July 10, 2007, Alger Dec., Exh. 8

[34] Id.

and Mattel's internal or external legal counsel "in which counsel conveyed to [him] legal advice."[35]

Meet and Confer with Defendants in August 2007: At MGA's request, Mattel met and conferred again with MGA and Bryant regarding the Document on August 7, 2007.[36] Defendants asserted that Mattel had waived its privilege claims.[37] Mattel stated that it would oppose any motion to overrule Mattel's privilege claims.[38] Defendants never filed such a motion.[39]

Defendants' Use of the "7/22/03" Privileged Entry: On December 19, 2007, MGA and Bryant deposed Mr. de Anda.[40] On behalf of Defendants, MGA [redacted] , which Mattel had "clawed back."[41] The Document was one page in [redacted] [42] [redacted]

---

[35] Id.

[36] Alger Dec. ¶ 20.

[37] Letter from Marc Feinstein to Timothy Alger, dated Aug. 1, 2007, Alger Dec., Exh. 9.

[38] Alger Dec. ¶ 21.

[39] Id.

[40] Declaration of Jon D. Corey, dated February 28, 2008 ("Corey Dec.") ¶¶ 3-4.

[41] Corey Dec. ¶ 5; Deposition Transcript of Richard de Anda, dated Dec. 19, 2007 ("de Anda Depo. Tr.") at 289:2-11, 304:7-16, 313:10-314:8; Alger Dec., Exh. 11.

[42] Corey Dec. ¶ 4; de Anda Depo. Tr. at 289:2-11; Exhibit 1195, Alger Dec., Exh. 12. (Page M 0074372 has been intentionally omitted from the copy of Exhibit 1195 attached to the Alger Declaration because it includes the privileged "7/22/03" entry. Mattel will submit that page to the Discovery Master under separate cover for *in camera* review. See Alger Dec. ¶ 24.) Defendants also [redacted] Id. ¶ 25; Deposition Transcript of Alan Kaye, dated June 21, 2007 at 394:19-395:21, 424:17-426:15, Alger Dec., Exh. 13. (Page M 0074372 also has been intentionally omitted from the copy of Exhibit 471 attached to the Alger Declaration. Alger Dec. ¶ 26; Alger Dec., Exh. 14.)



[redacted][43] Counsel for MGA [redacted][44]

Jon Corey, counsel for Mattel, did not object to [redacted][45] Mr. Corey was generally aware of Mattel's attempts to "claw back" the Document pursuant to Section 13 of the Stipulated Protective Order, but not the particulars of that request.[46] [redacted] caused Mr. Corey to believe that it was the version that Mattel had agreed should be used by the parties in this case.[47] Nor did Mr. Corey have before him the corrected version of M 0074372 with the "7/22/03" entry redacted.[48]

Ms. Thomas, who also attended Mr. de Anda's deposition, was aware that the Document had been subject of a demand by Mattel for its return following inadvertent production, and that counsel for the parties had discussed further

---

43 de Anda Depo. Tr. at 290:17-291:1, Alger Dec., Exh. 11; Corey Dec. ¶ 5

44 Corey Dec. ¶ 5; de Anda Depo. Tr. at 291:2-7, Alger Dec., Exh. 11;

45 Corey Dec. ¶ 6.

46 Id.

47 Id. On December 17, 2007, MGA wrote to Mattel to request a further redacted version of the document Bates stamped M 0074372. Letter from Marcus Mumford to Jon Corey, dated Dec. 17, 2007, Alger Dec., Exh. 10. The letter was addressed to Mr. Corey, not Mr. Alger, the attorney who is primarily responsible for handling Mattel's privilege claims, and who had handled all discussions with Defendants regarding M 0074372. Alger Dec. ¶ 22. Mr. Corey was preparing Mr. de Anda for his deposition at Mattel's offices in El Segundo, California on both December 17 and 18, 2007. Corey Dec. ¶ 7; de Anda Depo. Tr. at 74:25-76:9, Corey Dec., Exh. 2. As a consequence, neither Mr. Corey nor Mr. Alger saw the December 17 letter prior to the deposition of Mr. de Anda. Corey Dec. ¶ 7; Alger Dec. ¶ 22.

48 Corey Dec. ¶ 6.

redactions to the Document as a possible resolution of the matter.[49] However, Ms. Thomas did not know whether or, if so, how the issue had been concluded, and for that reason she did not speak up during the deposition.[50]

On January 28, 2008, MGA and Bryant deposed Robert Simoneau, who headed Mattel's Global Security and Investigations Department before Mr. de Anda assumed the position.[51] Defendants [redacted][52] John Gordon, representing Mattel, immediately [redacted][53] Counsel for MGA [redacted][54] Counsel for Mattel [redacted][55] Notwithstanding Mattel's objections, Defendants [redacted][56]

<u>Mattel's Further Attempts to "Claw Back" M 0074372</u>: On January 31, 2008, Mattel *again* wrote to MGA and Bryant and demanded that they comply with Section 13 of the Stipulated Protective Order by returning and destroying all copies

---

[49] Thomas Dec. ¶ 9.
[50] <u>Id.</u>
[51] Alger Dec. ¶ 27.
[52] <u>Id.</u>; Deposition Transcript of Robert Simoneau, dated Jan. 28, 2008 ("Simoneau Depo. Tr.") at 100:16-101:21, Alger Dec., Exh. 15.
[53] Simoneau Depo. Tr. at 101:22-102:2.
[54] <u>Id.</u> at 102:3-5.
[55] <u>Id.</u> at 102:6-10; <u>see also id.</u> at 102:11-104:20, 107:1-108:3 (counsel for Mattel [redacted], 108:4-110:10.
[56] <u>Id.</u> at 159:15-160:10.

of the Document.[57] Mattel attached to its letter a revised version of the document Bates stamped M 0074372, which redacted the "7/22/03" entry (the "Revised Document") and informed the parties that "[t]his should be the only version of the document used by the parties in this action."[58] On February 4, 2008, MGA asked Mattel to "reconsider" its January 31st request.[59] On February 20, 2008, Mattel asked MGA to meet and confer regarding the Document.[60]

Mattel and MGA met and conferred on February 21, 2008.[61] Mattel stated that the improperly redacted Document must be returned, and the deposition testimony regarding the "7/22/03" entry be stricken and redacted from the transcripts.[62] MGA proposed to redact the substance of the entry, but not the date.[63] On February 22, 2008, Mattel informed MGA that the entry needed to be redacted in its entirety, including the date, and again sent the Revised Document to Defendants as an email attachment.[64] In the hopes of resolving the matter without a motion, Mattel informed MGA that the "7/22/03" entry related to the Gunther-Wahl litigation.[65] No agreement was reached.[66]

---

57 Letter from Timothy Alger to Michael Page, Thomas Nolan, Robert Herrington and Mark Overland, dated Jan. 31, 2008, Alger Dec., Exh. 16.

58 Id.

59 Letter from Marcus Mumford to Timothy Alger, dated Feb. 4, 2008, Alger Dec., Exh. 17. Bryant never responded to Mattel's January 31st request. Alger Dec. ¶ 33.

60 Email from Timothy Alger to Marcus Mumford, dated Feb. 20, 2008, Alger Dec., Exh. 18.

61 Alger Dec. ¶ 31.

62 Id.

63 Id.

64 Email from Timothy Alger to Marcus Mumford, dated Feb. 22, 2008, Alger Dec., Exh. 19.

65 Alger Dec. ¶ 32.

66 Id.

## Argument

# I. THE JULY 22, 2003 ENTRY IS PROTECTED BY BOTH ATTORNEY-CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE

## A. Attorney-Client Privilege Applies Because Mattel's Agent Prepared The Entry Pursuant to Instructions from Legal Counsel

The Ninth Circuit defines attorney-client privilege to include the following elements: "(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002).

The "7/22/03" entry is protected by attorney-client privilege because all of the above elements are satisfied:

**Mattel Sought Legal Advice:** In July 2003, Mattel was a party to a pending litigation, Gunther Wahl Productions, Inc. v. Mattel, Inc., Los Angeles Superior Court Case No. BC 269746.[67] Mattel sought legal advice from its Law Department regarding that litigation.[68] Defense of any case quite naturally includes the identification and location of witnesses.

**From a Professional Legal Adviser:** Jill Thomas, Assistant General Counsel in Mattel's Law Department, was responsible for providing legal advice to Mattel in the Gunther Wahl litigation.[69] At all times, Ms. Thomas acted on behalf of Mattel solely in her legal capacity, not in her business capacity.[70]

---

[67] Thomas Dec. ¶ 6.
[68] Id.
[69] Id.
[70] Id.

**Communications Were for the Purpose of Providing Legal Advice:** Ms. Thomas was gathering facts to provide professional legal advice to Mattel in the Gunther Wahl litigation.[71] Ms. Thomas instructed Mr. de Anda to obtain certain factual information for her.[72] Mr. de Anda created the "7/22/03" entry on or about the date he spoke to Ms. Thomas.[73] It memorialized the task that Ms. Thomas gave to him,[74] making it protected by the attorney-client privilege. See United States v. Kovel, 296 F.2d 918, 921 (2d Cir. 1961) (documents prepared by an agent of an attorney are protected by the attorney-client privilege); First Chicago Int'l v. United Exch. Co., 125 F.R.D. 55, 57-8 (S.D.N.Y. 1989) (privilege applies to documents created at behest of external and internal legal counsel to "assess [the corporation's] legal options"); In re M & L Bus. Mach. Co., Inc., 161 B.R. 689, 693 (D. Colo. 1993) (privilege applies to memoranda prepared by bank's employees at request of bank's internal counsel to assess bank's potential liability).

Ms. Thomas had no business reason to collect the factual information and Mr. de Anda had no business reason to create the "7/22/03" entry.[75] Communications with an attorney are fundamentally privileged. Upjohn Co. v. United States, 449 U.S. 383, 390 (1981) (explaining attorney-client privilege protects "the giving of information to the lawyer to enable him to give sound and informed advice").

**Communications Were Made in Confidence by the Client:** The unredacted version of the Document was maintained in confidence in Mattel's Global Security and Investigations Department, and was not disclosed to any person other than lawyers representing Mattel, until the Document was inadvertently

---

71 Id.
72 Id.
73 Id.
74 Id.

75 Id. ¶ 7.

produced in a partially redacted state in this litigation as part of a production of many thousands of other documents.[76] Mattel has not intentionally waived, or intended to waive, either its attorney-client privilege or attorney work product protection with respect to the "7/22/03" entry in the Document.[77] Mattel promptly requested the return and destruction of the Document from the parties pursuant to the Protective Order after learning that it had been produced inadvertently during discovery.[78]

**Mattel Continues to Assert the Attorney-Client Privilege:** Mattel has steadfastly asserted attorney-client privilege and attorney work product protection in this litigation over all documents that are so protected.[79] When it discovered that the Document had been inadvertently produced in only a partially redacted state, Mattel promptly asked the parties to return and destroy all copies in their possession.[80]

**Mattel Has Not Waived the Privilege:** Courts generally examine the following factors to assess whether waiver has resulted from inadvertent production: (1) the reasonableness of precautions taken to prevent inadvertent disclosure, (2) the time taken to rectify the error, (3) the scope of the discovery and extent of the disclosure, and (4) overarching issues of fairness. Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., 1997 WL 736726, at *5 (S.D.N.Y. Nov. 26, 1997). Applying these factors, Mattel has not waived attorney-client privilege:

(1) Mattel took reasonable precautions to prevent inadvertent disclosure: "The fact of disclosure does not necessarily mean that the precautions were unreasonable." Id. Here, Mattel took reasonable precautions to prevent disclosure because its outside attorneys reviewed the documents produced on

---

[76] Id. ¶ 8.
[77] Id.
[78] Alger Dec. ¶¶ 7, 8, 10.
[79] Id. ¶ 7.

February 23, 2007, including the Document.[81] Lloyds Bank PLC v. Republic of Equador, 1997 WL 96591, at *3 (S.D.N.Y. Mar. 5, 1997) (explaining precautions were reasonable where attorneys conducted document review). Mattel's counsel ordered two entries to be redacted from the Document, but, through inadvertence, one entry was included in the production copy.[82] Mattel asserted privilege over the entries in its February 23, 2007 Supplemental Privilege Log.[83] The Discovery Master has already sustained Mattel's privilege claim for the single entry redacted in the version of the Document included in the February 2007 production.[84] Mattel did not assert privilege over the "7/22/03" entry only because of an oversight, not knowingly or intentionally.[85]

The unintentional production of a privileged document does not constitute waiver. Martin v. Valley Nat'l Bank of Arizona, 1992 WL 196798, at *3 (S.D.N.Y. Aug. 6, 1992) (no waiver where production is not "lax, careless, inadequate or indifferent to consequences"); Grace Cmty. Church v. Lenox Twp., 2007 WL 2534179, at *3, *5 (E.D. Mich. Aug. 31, 2007) (upholding privilege for inadvertently produced document that was not marked "attorney-client privilege").[86] "As a general matter, such inadvertent production will not waive the [attorney-client] privilege unless the conduct of the producing party or its counsel evinced

---

[80] Id. ¶¶ 7, 8, 10.

[81] Id. ¶¶ 4-6.

[82] Id. ¶ 4.

[83] Id. ¶ 5; Mattel's Supplemental Privilege Log dated Feb. 23, 2007 (Entry No. 51), Alger Dec., Exh. 1.

[84] Discovery Master's Order Re in Camera Review of Global Security Files, dated July 10, 2007, Alger Dec., Exh. 8.

[85] Alger Dec. ¶¶ 4, 7; Thomas Dec. ¶ 8.

[86] The Stipulated Protective Order in this case makes clear that inadvertent production does not operate as a waiver. See Stip. Protective Order § 13, Alger Dec., Exh. 3 (mandating the return of documents on demand, while reserving the other parties' right to challenge a claim of privilege after the return of the documents).

such extreme carelessness as to suggest that it was *not concerned* with the protection of the asserted privilege." Desai v. Am. Int'l Underwriters, 1992 WL 110731, at *1 (S.D.N.Y. May 12, 1992) (emphasis added).

Here, Mattel and its outside counsel were indisputably concerned about protecting privileged materials. Mattel's counsel ordered two entries to be redacted from the Document, but, through inadvertence, one entry was included in the production copy.[87] Mattel placed not only the Document on its February 23, 2007 Supplemental Privilege Log, but also 40 other documents that fell within the scope of production.[88] Mattel has steadfastly asserted attorney-client privilege and attorney work product protection in this litigation over all documents that are so protected.[89] Although Mattel did not immediately discover the inadequate redaction, the totality of these circumstances establishes that the disclosure was an isolated error resulting from inadvertence, not a knowing and intentional relinquishment of Mattel's attorney-client privilege. Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 443 (S.D.N.Y. 1995) ("Waivers must typically be intentional or knowing acts.").

(2) Mattel promptly sought to rectify the error: Although "inordinate delay" may be deemed a waiver of the privilege,[90] the "delay should be measured from the time the producing party learns of the disclosure, not from the time of the disclosure itself." Prescient Partners, L.P., 1997 WL 736726, at *6; see also Aramony v. United Way of America, 969 F. Supp. 226, 237 (S.D.N.Y. 1997) ("The period after the producing party realizes that privileged information has been

---

[87] Alger Dec. ¶¶ 4, 7.

[88] Mattel's Supplemental Privilege Log dated February 23, 2007 included a total of 69 entries. Alger Dec., Exh. 1. Forty-one were "new" entries related to documents redacted or withheld from production on or before February 23, 2007. Alger Dec. ¶ 6.

[89] Id. ¶ 7.

[90] Bank Brussels Lambert, 160 F.R.D. at 445.

disclosed is the relevant period for measuring whether the privilege has been waived."). Here, Mattel asked MGA and Bryant to return the Document a few days after discovering the error.[91] Mattel promptly reviewed again the documents it had produced to determine whether any other documents had been produced inadvertently.[92]

(3) The inadvertently-produced entry is among thousands of pages of discovery: "Courts have routinely found that where a large number of documents are involved, there is more likely to be an inadvertent disclosure rather than a knowing waiver." Prescient Partners, L.P., 1997 WL 736726, at *6 (internal quotations omitted). On June 20, 2007, Mattel requested the return of a total of only 12 pages from among the 2,637 pages it produced on February 23, 2007.[93] This represents less than one-half of one percent of the total number of pages produced on that day. Indeed, the entry at issue here was just two lines of handwritten text. Throughout this litigation, Mattel has used a team of lawyers to review millions of pages of documents and has produced approximately 900,000 pages.[94] See, e.g., id. at *7-8 (finding inadvertence where privileged documents were "less than one percent of the overall document production").

(4) Overarching issues of fairness favor Mattel: Mattel repeatedly has asked MGA and Bryant to return the Document.[95] Section 13 of the Stipulated

---

91 Alger Dec. ¶¶ 7, 8, 10.

92 Id. ¶¶ 8, 10. Thus, Bryant's claim that Mattel waited too long before asserting the privilege (see Letter from Michael Page to Timothy Alger, dated June 25, 2007, Alger Dec., Exh. 4) focuses on the wrong time period.

93 Alger Dec. ¶ 10.

94 Id. ¶ 9.

95 Letter from Timothy Alger to Diana Torres and Michael Page, dated June 20, 2007, Alger Dec., Exh. 2; Letter from Timothy Alger to Michael Page, dated June 26, 2007, Alger Dec., Exh. 5; Letter from Timothy Alger to Michael Page, dated July 20, 2007, Alger Dec., Exh. 6; Letter from Timothy Alger to Michael Page, Thomas Nolan, Robert Herrington and Mark Overland, dated Jan. 31, 2008, Alger Dec., Exh. 16.

Protective Order makes clear that a party is entitled to receive back a document that it "believes is subject to a claim of attorney-client privilege or work product immunity."[96] MGA returned at least one copy of the Document, but clearly did not return and destroy all the copies -- despite its representation that it would.[97] Without informing Mattel or obtaining an order from the Court, MGA retained copies that [redacted] [redacted][98] Defendants did not inform Mattel of their plans to use the Document, despite the fact that they clearly knew that Mattel had asserted privilege over the "7/22/03" entry.[99]

Further, as further discussed below, Defendants' use of the Document at the depositions violated Rule 26 and ignored California courts' admonishments to attorneys regarding the treatment of privileged material.

Finally, "[t]he prejudice factor focuses only on whether the act of restoring immunity to an inadvertently disclosed document would be unfair, not whether the privilege itself deprives parties of pertinent information." Bank Brussels Lambert, 160 F.R.D. at 446. The equities are in Mattel's favor. Mattel accepted MGA's representation that it would comply with Section 13,[100] but, in the end, those representations were false. Further, Defendants did not seek any relief from the Court as to Mattel's privilege claim, although Mattel engaged in meet-and-confers with Defendants preliminary to such a motion, and Mattel remained firm in its privilege claim.[101] Aramony, 969 F. Supp. at 237 ("It would be inappropriate for

---

[96] Stip. Protective Order § 13, Alger Dec., Exh. 3

[97] Alger Dec. ¶¶ 17-18.

[98] de Anda Depo. Tr. at 313:10-314:8, Alger Dec., Exh. 11; Simoneau Depo. Tr. at 100:16-101:21, Alger Dec., Exh. 15.

[99] Alger Dec. ¶¶ 17, 18. Mr. Mumford's letter of December 17, 2007 confirms that MGA's counsel knew that Mattel had "clawed back" the Document. Alger Dec., Exh. 10.

[100] Alger Dec. ¶ 18.

[101] Id. ¶ 21.

(footnote continued)

the client of producing counsel to suffer the waiver of privilege, absent any apparent prejudice to the opposing party, due to an isolated, inadvertent error.").

### B. Attorney Work Product Protection Applies Because Mattel Prepared the Document After Commencement of Litigation

The work product doctrine protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). Materials prepared for legal purposes qualify for protection if they are (1) "prepared in anticipation of litigation or for trial," and (2) prepared "by or for another party or by or for that other party's representative." In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.), 357 F.3d 900, 907 (9th Cir. 2004) (internal quotations omitted).

Here, the July 22, 2003 entry is protected as attorney work product because Mr. de Anda, Mattel's agent, recorded a request by Ms. Thomas, after the commencement of the Gunther Wahl litigation, not for any business reason.[102] Mr. de Anda's "7/22/03" entry memorializes the task that Ms. Thomas gave to him.[103] The entry falls squarely within the work product doctrine and, for the same reasons discussed above, Mattel has not waived attorney work product protection either.

## II. MATTEL IS ENTITLED TO THE RETURN AND DESTRUCTION OF ALL COPIES OF THE DOCUMENT

### A. The Stipulated Protective Order Mandates the Prompt Return of An Inadvertently Produced Privileged Document

Section 13 of the Stipulated Protective Order provides that a producing party is entitled to receive a document back as long as it "believes [that the document] is subject to a claim of attorney-client privilege or work product

---

102 Thomas Dec. ¶¶ 6-7.

103 Id. ¶ 6.

immunity."[104] That language focuses on the *producing* party's subjective *belief* about the applicability of a privilege, not the viewpoint of the receiving party. That is the same language that triggers the subsequent rights and obligations of the parties -- the producing party's right to receive the document back and the receiving party's obligation to return it. Section 13 unambiguously mandates that a "receiving Party *shall promptly* return to the producing Party . . . [an] inadvertently disclosed document and *all copies* of such document."[105] The mandatory language in this sentence refers to an "inadvertently disclosed" document, which references the triggering language in the preceding sentence -- the producing party's belief that a privilege is applicable.

Thus, Defendants' contention that they believe the privilege was waived, and that this allows them to retain and use the Document, defies the clear language and obvious intent of Section 13. Similar to provisions used in many complex litigations, Section 13 "was designed to protect the parties, who [knew they would] face massive discovery obligations, from having to litigate the issue of inadvertence." Prescient Partners, 1997 WL 736726, at *4 (internal quotations omitted). Indeed, the Prescient Partners court explained the consequences of adopting Defendants' interpretation in the context of a "claw back" provision similar to the one in this case:[106]

> If the provision applied only to documents deemed inadvertently produced under governing caselaw [or by the receiving party], then the parties would have to brief the law for the court to determine even whether the provision applied to a particular situation. This would contravene

---

[104] Stip. Protective Order § 13, Alger Dec., Exh. 3.

[105] Id. (emphasis added).

[106] Indeed, Mattel's claim under Section 13 is even stronger than the producing party's in Prescient Partners. There, the "claw back" provision was not triggered by the producing party's subjective belief about the applicability of a privilege. Prescient Partners, 1997 WL 736726, at *3 (stating producing party was entitled to return of document "[i]f . . . a claim of inadvertent production is made") (alteration in original).

> the provision's purpose of protecting the parties from having to litigate the inadvertent production issues.

Id. The court rejected the receiving party's interpretation because the "claw back" provision "would have [had] no effect." Id. Instead, it compelled the receiving party to return documents pursuant to the confidentiality agreement's "prompt return" provision. Id. at *4, *7; see also RLI Ins. Co. v. Conseco, Inc., 2006 WL 4833630, at *1 (S.D. Ind. Oct. 4, 2006) (finding "claw back" provision could be invoked if "a document is produced because the party's privilege review failed to identify it as privileged" and ordering destruction of inadvertently produced document).

So too here. Mattel was, and still is, entitled to the "prompt return" of the Document. As soon as Mattel discovered that it had inadvertently not redacted the "7/22/03" entry, it asked MGA and Bryant to return and destroy *all* copies of the Document in their possession.[107] It clearly had a valid reason to make that request: Mattel "believe[d] [that the Document] [was] subject to a claim of attorney-client privilege [and] work product immunity." Mattel's reasons for asserting the attorney-client privilege over this entry are virtually identical to its reasons for asserting the privilege over the first redaction of the Document, which the Discovery Master sustained.[108] MGA and Bryant have unreasonably and improperly refused to comply with the requirements of Section 13.

**B. Rule 26 Also Requires Defendants to Promptly Return, Sequester or Destroy a Privileged Document**

Federal Rule of Civil Procedure 26 imposes the following affirmative duties on a party who possesses discovery that is the subject of a privilege claim:

---

[107] Letter from Timothy Alger to Diana Torres and Michael Page, dated June 20, 2007, Alger Dec., Exh. 2.

[108] Discovery Master's Order Re in Camera Review of Global Security Files, dated July 10, 2007, Alger Dec., Exh. 8.

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party *must promptly return, sequester, or destroy* the specified information and any copies it has; *must not use or disclose the information* until the claim is resolved; . . . and may promptly *present the information to the court under seal* for a determination of the claim.

Fed. R. Civ. P. 26(b)(5)(B) (emphasis added).

Rule 26(b)(5)(B) is unambiguous and contains no exceptions. Mattel has made multiple requests to Defendants to return and destroy all copies of the Document,[109] but they have refused to comply. As further discussed below, Defendants also violated Rule 26 by using the Document to question witnesses at deposition.

## III. DEFENDANTS' USE OF THE DOCUMENT WAS IMPROPER, EVEN IF THEY BELIEVED IT WAS NOT PRIVILEGED

Rule 26 provides that a receiving party "must not use or disclose the information until the [producing party's] claim is resolved" and "may promptly present the information to the court under seal for a determination of the claim." Fed. R. Civ. P. 26(b)(5)(B); see also Advisory Comm. Notes to 2006 Amendment ("In presenting the [privilege or attorney work-product] question [to a court], the [receiving] party may use the content of the information only to the extent permitted by the applicable law of privilege, protection for trial-preparation material, and professional responsibility.").

---

[109] Letter from Timothy Alger to Diana Torres and Michael Page, dated June 20, 2007, Alger Dec., Exh. 2; Letter from Timothy Alger to Michael Page, dated June 26, 2007, Alger Dec., Exh. 5; Letter from Timothy Alger to Michael Page, dated July 20, 2007, Alger Dec., Exh. 6; Letter from Timothy Alger to Michael Page, Thomas Nolan, Robert Herrington and Mark Overland, dated Jan. 31, 2008, Alger Dec., Exh. 16.

By using the Document to question two deposition witnesses,[110] Defendants violated Rule 26's prohibition against "us[ing]" material asserted to be privileged by Mattel before its "claim" was "resolved." Defendants' apparent disagreement with Mattel about the "7/22/03" entry does not excuse their failure to comply with Rule 26. Further, Rule 26 is clear that Defendants, as the receiving parties, were obligated to raise the issue with the Court, not Mattel. They did not, and instead ambushed Mattel's witnesses and lawyers with a version of the Document that should have been returned or destroyed.

Questioning witnesses about the content of a document over which the producing party has claimed privilege is also improper under California law. The California Supreme recently reaffirmed that an attorney who receives materials subject to a claim of privilege "should refrain from examining the materials any more than is essential to ascertain if the materials are privileged." Rico v. Mitsubishi Motors Corp., 68 Cal. Rptr. 3d 758, 766 (2007) (quoting State Comp. Ins. Fund v. WPS, Inc., 70 Cal. App. 4th 644, 656-57 (1999)).

Similarly, the Ninth Circuit has approvingly cited two American Bar Association Ethical Opinions requiring an attorney to proceed with caution when he possesses materials subject to a claim of privilege. In Formal Opinion 368, the ABA stated that "under circumstances where it is clear that [privileged materials] were not intended for the receiving lawyer, [he] should refrain from examining the materials . . . and abide by the instructions of the lawyer who sent them." See Gomez v. Vernon, 255 F. 3d 1118, 1132 (9th Cir. 2001) (citing ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 368, Inadvertent Disclosure of Confidential Materials (1992)).

In Formal Opinion 382, the ABA ethics committee further declared that a lawyer who possesses "materials of an adverse party that she knows to be

---

[110] de Anda Depo. Tr. at 313:10-314:8, Alger Dec., Exh. 11; Simoneau Depo. (footnote continued)

privileged or confidential should . . . either refrain from reviewing such materials or review them only to the extent required to determine how appropriately to proceed; she should . . . either follow instructions of the adversary's lawyer with respect to the disposition of the materials, or refrain from using the materials until a definitive resolution of the proper disposition of the materials is obtained from a court." Id. (citing ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 382 (1994)).

Thus, even apart from their obligations under Section 13 of the Stipulated Protective Order, Defendants were obligated to obtain a ruling from the Court before using the disputed material. Defendants' unilateral use of the Document, without seeking a resolution from the Court, was clearly improper and done to gain a tactical advantage.

## IV. THE COURT SHOULD ISSUE A PROTECTIVE ORDER TO REMEDY DEFENDANTS' IMPROPER USE OF THE DOCUMENT

MGA and Bryant have failed to comply with Rule 26, Section 13 of the Stipulated Protective Order, and the admonishments of federal and California courts. The Court should therefore issue a protective order that precludes further use of the privileged material. The appropriate remedy in this case is to (i) strike the portions of the deposition testimony of Messrs. de Anda and Simoneau regarding the "7/22/03" entry, (ii) order the deposition transcripts of Messrs. de Anda and Simoneau to be redacted, (iii) order exhibits used during the depositions of Messrs. de Anda, Simoneau and Kaye to be redacted, and (iv) bar MGA and Bryant from obtaining any further discovery regarding the "7/22/03" entry or using it at trial.[111] Without such an order, Defendants would benefit from their improper use of the

---

Tr. at 100:16-101:21, Alger Dec., Exh. 15.

[111] Specifically, the portions of the deposition transcripts that should be redacted are (i) the de Anda transcript at 289:2-11, 304:7-16, 313:10-314:8, Alger Dec., Exh. 11, and (ii) the Simoneau transcript at 159:15-160:10, Alger Dec., Exh. 15. The exhibits that require redaction are No. 471 (Kaye deposition), Alger Dec., Exh. 14; and No. 1195 (de Anda and Simoneau depositions), Alger Dec., Exh. 12.

entry. Prescient Partners, 1997 WL 736726, at *7 (prohibiting receiving parties from using inadvertently produced privileged documents "or references to" the documents "in discovery or trial"); Employer's Reinsurance Corp. v. Clarendon National Ins. Co., 213 F.R.D. 422, 431 (D. Kan. 2003) (granting protective order, ordering return of all copies of attorney work product document and striking attorney work product exhibit from deposition record); RLI Ins. Co. v. Conseco, Inc., 2006 WL 4833630, at *2 (barring, pursuant to "claw back" provision, receiving party from using inadvertently produced document).

**Conclusion**

For the foregoing reasons, Mattel respectfully requests that the Discovery Master grant Mattel's motion to compel and for a protective order.

DATED: February 28, 2008

Respectfully submitted,

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By [signature]
Timothy L. Alger
Attorney for Mattel, Inc.