# EXHIBIT 1

**quinn emanuel**

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

January 19, 2008

**VIA FACSIMILE AND U.S. MAIL**

Amy S. Park, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301

Re:     Mattel, Inc. v. Bryant

Dear Amy:

I write pursuant to our prior requests that MGA confirm that it has now produced privilege logs
for all documents it has withheld on privilege grounds which it has produced to date. To my
knowledge, we have never received such confirmation, leading to the inference that MGA has
not done so.

This is of particular concern to us regarding the documents compelled by the Court in its August
13, 2007 Order. Although MGA has produced documents on a number of different days
pursuant to this Order, the only log it has produced regarding such documents indicates at the top
that it is limited to the "October 17 and October 19, 2007" document productions. As we have
discussed in the past, we infer from this that MGA still has not produced a privilege log for any
documents produced on *other* dates pursuant to the August 13 Order. Please let us know
promptly if this is incorrect.

Also, Isaac Larian was compelled to have already provided to Mattel privilege logs for all of his
withheld documents. Please be prepared to discuss whether that obligation has been satisfied.

In light of our repeated prior requests for assurance that MGA has provided logs for all its
productions, as required by Court orders, and our prior discussions in this regard, Mattel intends
to move to enforce the Courts prior orders, and for sanctions, potentially including waiver

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
07209/2360357.2                 SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

EXHIBIT __1__
PAGE __5__

sanctions, if this matter is not promptly resolved. Please consider this to be a request to meet and confer pursuant to the Discovery Master Order.

I look forward to hearing from you promptly.

Very truly yours,

B. Dylan Proctor

**EXHIBIT** I
**PAGE** 6

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

TOKYO
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   January 19, 2008                    **NUMBER OF PAGES, INCLUDING COVER: 3**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Amy Park | 650.470.4511 | 888.329.6334 |
| Skadden | | |

**FROM:**   Dylan Proctor/Sandy Caruthers

**RE:**   Mattel v. Bryant

**MESSAGE:**

| | ROUTE/ | ☐ CONFIRM FAX |
|---|---|---|
| CLIENT #   7209 | RETURN TO: | ☐ INCLUDE CONF. REPORT |
| OPERATOR: | CONFIRMED?   ☐ NO ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product.
The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or
the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution
or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by
telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

**EXHIBIT** $\underline{\phantom{x}1\phantom{x}}$
**PAGE** $\underline{\phantom{x}7\phantom{x}}$

# EXHIBIT 2

## quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

February 6, 2008

### VIA FACSIMILE & U.S. MAIL

Mr. Jose Allen, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Embarcadero Center, Suite 3800
San Francisco, CA 94111

Re:     Mattel, Inc. v. Bryant, et al.

Dear Jose:

I write regarding the privilege logs which MGA and Isaac Larian recently produced on January 25, 28, and 30, 2008.

There are number of entries on the logs which raise concerns similar to those we have previously raised in our meet and confers regarding MGA's privilege logs. All three logs list certain categories of documents which, from the log descriptions, do not appear to be privileged.

First, there are various entries for "photo[s],"[1] "design/drawing[s],"[2] and "pictoral presentation[s]."[3] Given that these documents are not communications between an attorney and client, the application of the attorney-client privilege does not appear well-founded. While some

---

[1]   See, e.g., January 25, 2008 Privilege Log Nos. 6, 7, 196, 197, 1414, 1421, 1618.

[2]   See, e.g., January 25, 2008 Privilege Log Nos. 2100, 2101, 2102; January 28, 2008 Privilege Log Nos. 47, 48, 82, 86, 87, 88.

[3]   See, e.g., January 25, 2008 Privilege Log Nos. 1874, 1875, 1881, 1882, 1884, 1885.

---

### quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
07209/2377023.1            SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

EXHIBIT __2__
PAGE __8__

of these entries also assert the work-product privilege, the descriptions offer little basis to determine that these documents were prepared in anticipation of litigation.

Second, as on the prior logs, numerous entries appear to be either communications disclosed to or from third parties[4] or documents from the public record, including such categories as press releases,[5] advertisements,[6] webpages,[7] excerpts from periodicals,[8] general company policies,[9] and certificates from the Trademark Office.[10] Additionally, the logs contain a number of documents from various legal proceedings.[11] From the descriptions given, these documents do not appear to be internal drafts, but rather operative legal documents such as subpoenas, complaints, declarations and the like. As I am sure you will agree, the fact that a "notice of judgment" was "possibly sent to an attorney" or otherwise finds its way into the possession of MGA's attorneys does not transform an otherwise non-privileged document into one that it shielded from discovery by the attorney-client privilege.

Third, a number of the entries relate to communications regarding legal fees or invoices , vouchers, and other documents memorializing such payments.[12] For example, entry 116 to the January 28, 2008 log is described as a "check register listing payments to counsel,"[13] and entry 118 from the same log is described as a "[s]ummary of law firm expenses for various litigation."[14] While I appreciate that bills and other documents regarding legal fees may contain both privileged and non-privileged information, the logs suggest that these documents have been withheld in their entirety.

---

[4]  See, e.g., January 30 Privilege Log Nos. 281, 285, 287, 302.

[5]  See, e.g., January 30, 2008 Privilege Log Nos. 152, 153.

[6]  See, e.g., January 30, 2008 Privilege Log Nos. 154, 155, 156, 157.

[7]  See, e.g., January 25, 2008 Privilege Log No. 1646; January 30, 2008 Privilege Log Nos. 158, 290, 291, 301.

[8]  See, e.g., January 30, 2008 Privilege Log No. 252.

[9]  See, e.g., January 30, 2008 Privilege Log Nos. 244, 245, 246, 247.

[10]  See, e.g., January 30, 2008 Privilege Log Nos. 126, 211.

[11]  See, e.g., January 25, 2008 Privilege Log Nos. 102, 297, 782, 783, 784, 1023, 1715, 1718, 1849, 2123, 2126, 2128, 2129, 2130, 2131, 2132, 2133, 2134, 2135, 2136, 2137; January 28, 2008 Privilege Log No. 304, 431.

[12]  See, e.g., January 25, 2008 Privilege Log Nos. 335, 336, 337, 338, 339, 341, 342, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 1066, 1067, 1068, 1069, 1070, 1071, 1072, 1073, 1074, 1075, 1076, 1077, 1078; January 28, 2008 Privilege Log Nos. 116, 117, 118, 150, 151, 190, 192, 193, 314, 315; January 30, 2008 Privilege Log No. 282.

[13]  January 28, 2008 Privilege Log No. 116.

[14]  January 28, 2008 Privilege Log No. 118.

EXHIBIT  2
PAGE  9

Finally, some of the descriptions on the logs are so vague that it is impossible to tell the subject matter of the document or communication, much less determine whether the privilege has been appropriately claimed. Specifically, a number of entries are simply described as "spreadsheet[s]" used "for the purposes of requesting legal advice," but give no indication as the type of information contained within or the attorneys involved.[15] The same deficiency is apparent with regard to the numerous entries described as "chronolog[ies]."[16] Other entries of a similar character which we would like to discuss include entries 1606, 1939, 2147, 2148, and 2046 to the January 25, 2008 log.

I ask that you review these documents and confirm whether MGA still stands on these assertions of privilege, and request a meet and confer pursuant to Section 5 of the Order for the Appointment of a Discovery Master. If we are not able to resolve this matter, Mattel intends to file a motion to enforce and/or to compel production of the withheld documents, and may seek sanctions. I look forward to hearing from you promptly.

Very truly yours,

B.Dylan Proctor /ZDK

B. Dylan Proctor

BDP:ZDK
07209/2377023.1

---

[15]   See, e.g., January 25, 2008 Privilege Log Nos. 578, 579, 580, 581, 600, 601, 602, 603, 604.

[16]   See, e.g., January 28 Privilege Log Nos. 97, 110, 133, 215, 233, 236, 340, 356, 361.

07209/2377023.1                         3

EXHIBIT __2__
PAGE __10__

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

TOKYO
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**    February 6, 2008              **NUMBER OF PAGES, INCLUDING COVER:**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Mr. Jose Allen, Esq. Skadden, Arps, Slate, Meagher & Flom LLP 4 Embarcadero Center, Suite 3800 San Francisco, CA 94111 | (415) 984-6442 | (888)329-1260 |

**FROM:**    B. Dylan Proctor

**RE:**    Mattel, Inc. v. Bryant, et al.

**MESSAGE:**

Please see attached letter.

| CLIENT # | _\_ | ROUTE/ RETURN TO: L. Kinsey | ☐ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
|---|---|---|---|
| OPERATOR: | Priscilla | CONFIRMED?  ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

EXHIBIT  2
PAGE  11

# EXHIBIT 3

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR EMBARCADERO CENTER

SUITE 3800

SAN FRANCISCO, CALIFORNIA 94111-4144

TEL: (415) 984-6400
FAX: (415) 984-2698
www.skadden.com

DIRECT DIAL
(415) 984-6442
EMAIL ADDRESS
JRALLEN@SKADDEN.COM

February 13, 2008

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

Via Facsimile and Electronic Mail

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

      RE:   *Carter Bryant v. Mattel, Inc.* Case No. CV 04-9049 SGL (RNBx)
           (Consolidated With Case Nos. CV 04-09059 and CV 05-02727)

Dear Dylan:

        I write in response to your February 6, 2008 letter requesting to meet and confer regarding documents listed on the privilege logs produced by MGA and Isaac Larian on January 25, 28 and 30, 2008. As you state in the final paragraph of your letter, we take your request to meet and confer as a prelude to filing a motion to compel regarding the issues raised in your letter.

        We understand that Mattel has taken the position (including in a filing made yesterday evening with the Discovery Master) that the Court established January 28, 2008 as a firm cut-off for the filing of Phase 1 discovery motions. Thus, any Phase 1 motions filed after January 28, 2008 are untimely and improper, including any motions related to the issues in your February 6 letter. Accordingly, your request to meet and confer in anticipation of filing such a motion would appear to be pointless.

        Furthermore, after reviewing the privilege log entries you list in your letter, we note that many of the entries appear to have no bearing on any Phase 1 issues. As you are aware, all Phase 2 discovery has been stayed until further order from the Court. Thus, any meet and confer with respect to entries related to Phase 2 issues is premature. Please explain the relevance of the entries in question to Phase 1 issues.

EXHIBIT  3
PAGE  12

B. Dylan Proctor, Esq.
February 13, 2008
Page 2

        Next, you raise various issues regarding certain documents in the three privilege logs identified in your letter. We disagree with your contention that wholesale categories of documents are per se not privileged. We also disagree with your contention that because certain documents were disclosed to third parties they are no longer privileged.

        Finally, we disagree with your contention that many entries are "vague" or otherwise deficient. We believe the descriptions are adequate for purposes of the privilege logs and are consistent with the descriptions Mattel has used in its own logs.

Very truly yours,

José R. Allen

EXHIBIT 3
PAGE 13

# EXHIBIT 4

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-7100

February 26, 2008

## VIA FACSIMILE AND U.S. MAIL

Raoul Kennedy, Esq.                          John Trinidad, Esq.
Skadden Arps Slate Meagher & Flom, LLP       Keker & Van Nest, LLP
Four Embarcadero Center, Suite 3800          710 Sansome Street
San Francisco, California 94111              San Francisco, California 94111

Re:   Mattel v. Bryant

Dear Raoul:

I write regarding the parties' meeting of counsel on February 20 and 21, 2008, at which we discussed many of the pending discovery motions, and to memorialize certain agreements. The following is Mattel's understanding of where things currently stand:

1.   **Mattel's motion to compel (1) deposition of Carlos Gustavo Machado Gomez; and (2) consent to production of electronic mail messages.**

Mattel indicated that, because Mr. Machado's deposition pertains to Phase Two, Mattel is willing to take this motion off the Court's calendar, provided the parties stipulate that Mr. Machado will appear in Los Angeles for his deposition two weeks after the Phase Two stay is lifted. Mattel will contact Mr. Machado's counsel to raise this matter with him as well.

2.   **MGA's motion to compel Mattel to produce documents responsive to MGA's RFPs 526 and 528.**

MGA confirmed that this motion has been withdrawn until Phase Two discovery commences.

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-5107 FAX 858-812-5156

07209/2411239.1

EXHIBIT __4__
PAGE __14__

**3.    Mattel's motion to compel deposition of Littler Mendelson.**

The parties discussed the possibility that Littler Mendelson will submit a declaration in place of
sitting for deposition. Mattel will prepare an initial draft of the declaration, and send it to
counsel for Bryant for review. If no agreement is reached regarding a declaration, Mattel will
make a supplemental submission to Judge Infante and ask for a ruling on its pending motion.

**4.    Mattel's motion to enforce the 5/15/07 order of the Discovery Master re production
of Larian v. Larian documents and for sanctions.**

In light of Isaac Larian's recent production of Larian v. Larian documents, Mattel suggested that
it might be willing to withdraw this motion. As I told you, however, Mattel has a few remaining
questions on this subject. You indicated that I should talk to your colleague, Jose Allen,
regarding these questions.

**5.    MGA, MGA HK, MGA Mexico and Isaac Larian's motion to quash subpoenas or,
in the alternative, for protective order [re Mattel's subpoenas to ConsumerQuest,
Deloitte & Touche, Ernst & Young, the Isaac and Angela Larian Trust, the Isaac
Larian Annuity Trust, Moss Adams, Wachovia, and Wells Fargo] and Mattel's
countermotion to compel production.**

MGA proposed that the parties work together to redraft the document requests in Mattel's
subpoenas, so that the requests are limited to only those documents that Judge Infante has
expressly ruled on, but which MGA has not produced to date. As examples of documents falling
into this category, MGA cited (1) documents sufficient to show Larian's gross income and
sources of income for 2007, as well as (2) documents sufficient to show Larian's net worth from
1999-2004. Mattel indicated that it would consider this approach for the Wells Fargo subpoena,
but indicated that the other subpoenas at issue in this motion have additional issues that need to
be addressed:

> (a) ConsumerQuest: As Mattel explained, this request should not be limited
> solely to Larian's and MGA's financial information. Rather, ConsumerQuest has
> other information — such as information pertaining to focus groups — which Judge
> Infante has ruled relevant to this action and to which Mattel is entitled. Thus,
> while Mattel is willing to work with defendants to remove any exclusively Phase
> Two materials from the ConsumerQuest subpoena, Mattel does not believe the
> subpoena should be otherwise narrowed as it relates to Phase One. You agreed to
> speak to your clients to see whether they are willing to proceed with the
> ConsumerQuest subpoena in its current state, minus the Phase Two materials.

> (b) The Larian Trusts and Moss Adams: MGA represented that it had made an
> attempt to obtain compelled documents from the Trusts and Moss Adams, as both
> possess unique documents. MGA agreed to follow up to determine whether these
> documents were subsequently produced to Mattel. Mattel emphasized that it is
> looking to obtain the Trust formation documents, and any separate Trust financial
> statements, sought in the subpoena as well. As to Moss Adams, Mattel noted that

EXHIBIT   4
PAGE   15

documents from Moss Adams are in Larian's possession, custody and control, and Larian should have reviewed those records for documents that Judge Infante compelled Larian to produce. For example, Moss Adams likely has distribution amounts for Larian for years 2006-2007, which MGA's designee testified had not been produced to her. MGA agreed to identify, by Bates number, the 2006 and 2007 distribution information if it had been produced.

(c) Wachovia: Mattel noted that Wachovia has already identified a set of documents related to the early loan MGA used to fund the first production of Bratz. While MGA disputed Mattel's characterization of this loan, MGA stated that it is agreeable to having Wachovia produce loan documents from years 1999-2001. Mattel responded that it is entitled to not only the loan documents themselves, but also all documents relating to the financing agreement between MGA and Wachovia. In particular, Mattel is seeking the three boxes of documents Wachovia collected pursuant to Farhad Larian's request in a prior proceeding. You agreed to present this issue to your clients and promised to get back to us.

Mattel also stated that it is seeking documents pertaining to any other loan transactions between MGA and Wachovia-- including documents pertaining to the 2006 transactions regarding Little Tykes. As I explained during the meet and confer, this information is relevant to Mattel's Phase One damages claims. Again, you agreed to follow up with your clients on this matter.

(d) Deloitte & Touche and Ernst & Young: Mattel indicated that with respect to these subpoenas, it is seeking information necessary to test the validity of certain printouts that MGA has produced from its accounting system.

Additionally, Mattel seeks financial statements and MGA's general ledger for the year 2000, which Mattel believes may be in Deloitte's possession. MGA responded that there is no MGA general ledger *per se*, but that there are statements showing historical trial balances. MGA represented that it has already produced these trial balances, and indicated that it will attempt to get Mattel the relevant Bates numbers. Mattel is aware of only excerpts.

MGA agreed to get back to Mattel with answers on each of these issues by Monday, February 25, 2008.

6.    **MGA's motion to compel Mattel to produce witnesses pursuant to notice of deposition under Rule 30(b)(6), or in the alternative, for leave to serve such notice.**

MGA acknowledged that Topic Nos. 11, 21-23, 48 and 71-85 in its Rule 30(b)(6) Notice are duplicative of topics in Carter Bryant's Notice of Deposition of Mattel, Inc. Mattel further identified Topic Nos. 9(c), 12-17 and 39 (to the extent it pertains to copying) as duplicative. MGA indicated that, provided it has an opportunity to ask questions on these topics at Bryant's

07209/2411230.1                                          3

EXHIBIT  4
PAGE  16

30(b)(6) deposition, MGA may be willing to withdraw these duplicative topics. The parties
agreed to discuss these topics further following the deposition on Bryant's 30(b)(6) topics.

As to Topic Nos. 9(a) and (b) -- which pertain to MGA's showing of Bratz to focus groups and
retailers in November 2000 [9(a)] and MGA's and Larian's encouragement, aiding and financing
of Bryant to develop Bratz while he was a Mattel employee [9(b)] — Mattel indicated that any
responsive information it may have was obtained through discovery in this case and is thus
designated "Attorney's Eyes Only." As such, Mattel cannot produce a knowledgeable witness on
these topics. MGA responded that it is nonetheless entitled to a have a witness produced so that
it may determine for itself whether Mattel possesses any relevant information outside of what has
been produced in this litigation. In an effort to resolve this issue, Mattel offered to stipulate that
it will not present a witness at trial to testify on this subject. MGA agreed to consider this
proposal.

MGA stated that it will limit Topic No. 18 to information regarding Mattel's policies and
practices in connection with employees who leave Mattel to work for competitors, and that it will
not question Mattel's 30(b)(6) designee regarding specific employees.

For Topic No. 19, regarding Bryant's relationship or contacts with Paula Treantafelles during the
time they were both employed at Mattel, Mattel noted that any information responsive to this
topic would be in the possession of Bryant or Treantafelles — not Mattel. Accordingly, Mattel
will not designate a witness on this topic.

Mattel is also unwilling to designate a witness for Topic No. 20, regarding the floor plan and
seating chart for Mattel's office in El Segundo, California in 1999 and 2000, as MGA has already
received copies of the Mattel design center floor plan and seating chart, and several witnesses
have already testified on this subject. Mattel will consider designating the testimony of those
witnesses.

For Topic No. 26, MGA indicated that it is willing to limit this topic consistent with Judge
Infante's February 11, 2008 Order on Mattel's motion for reconsideration. Specifically, MGA
will limit Topic No. 26 to people employed in the Mattel design center from 1995 to the present.

As to Topic No. 27 -- the circumstances under which Bryant testified in September 2003 in the
lawsuit brought by Gunther Wahl against Mattel -- Mattel informed MGA that it will have to
consider whether there is anyone knowledgeable on this subject.

Mattel explained to MGA that, as stated in Mattel's RFA responses, Mattel is not seeking lost
profits as Phase One damages. As such, Topic Nos. 28 and 29 are not relevant and Mattel will
not produce witnesses on these topics. Nor will Mattel provide a witness on Topic No. 30, as
Mattel is not seeking damages in Phase One for the devaluation of Barbie. MGA agreed to
consult with its damages expert to determine whether it has all of the information it needs as to
these topics and to review Mattel's responses to its requests for admission, and indicated that it
might be willing to withdraw them.

07209/2411230.1                            4

EXHIBIT  4
PAGE  17

Mattel informed MGA that it will not produce witnesses on Topic Nos. 31 or 58, as they are
grossly overbroad.

Further, Mattel will not designate witnesses on Topic Nos. 32 or 60, as they appear to relate
exclusively to Phase Two issues.

MGA recognized that to the extent Topic No. 39 pertains to trade secrets, it is a Phase Two
matter, and thus agreed to withdraw that portion of No. 39 until the Phase Two discovery stay is
lifted.

MGA stated that it is willing to limit Topic Nos. 42 and 47 to information pertaining to Diva
Starz, and will withdraw the balance of these topics until Phase Two discovery commences.

Given its recent withdrawal of its unclean hands defense from the Phase One trial, MGA
indicated that it would hold Topic No. 65 in abeyance until Phase Two.

For Topic No. 69, relating to the relationship between Fred Larian and Mattel, I informed you
that I do not believe Mattel has any responsive information, as communications with Fred Larian
were handled exclusively by Mattel's outside counsel. I agreed to follow up on this, and get back
to you by Monday, February 25, 2008.

As to Topic No. 70, Mattel's communications internally or to third-parties concerning claims or
potential claims against MGA or MGA products, MGA agreed to limit the topic to just
communications with third-parties.

Finally, I agreed to go back through MGA's Rule 30(b)(6) Notice and to review several of the
topics we discussed. I promised to get back to you by Monday, to let you know whether Mattel
is willing to produce witnesses for any of these topics.

7.    **Mattel's motion for reconsideration of portions of Discovery Master's 12/31/07
      Order [to require production of communications between Isaac Larian and Mattel
      employees from 1999 through the present].**

Mattel expressed its view that Judge Infante's December 31, 2007 Order granting Mattel's
Request for Production No. 198 is unduly narrow, in that it is limited to communications
between Isaac Larian and Mattel employees from 1999 to 2005. This date limitation is
inconsistent with the allegations in Mattel's Second Amended Answer and Counterclaims, and in
Mattel's Supplemental Responses to MGA's First Set of Interrogatories. You indicated that you
would get back to us to let us know who we should talk to about this issue.

8.    **MGA's motion to compel Mattel to produce email.**

Mattel indicated that it appears that the electronic materials that MGA is seeking are related
exclusively to Phase Two issues. As Mattel explained, any e-mails in electronic form that it
possesses are either located on an exchange server that only retains files for 90 days, or on back-

07209/2411230 1                                  5

EXHIBIT  4
PAGE  18

up tapes which go back to April 2005. Given this date limitation, it is unclear how any of the
electronic files MGA is requesting can be relevant to Phase One.

Mattel then noted that even assuming there are files relevant to Phase One, MGA's request for e-
mail nonetheless poses a serious practical problem, given the vast number of back-up tapes that
would have to be searched, and the unmanageable number of hits that would undoubtedly be
returned. Further, Mattel has not received from MGA or Bryant any concrete proposal regarding
(1) how the search is to be conducted (such as a reasonable list of keywords), and (2) how the
costs of the search should be shifted to defendants.

Please let me know if you have a proposal for conducting this e-mail search and for shifting of
costs. We look forward to discussing it with you.

In the course of discussing this motion, MGA also raised an issue not set forth in the motion as to
whether Mattel had separately retained electronic documents related to other litigation --
specifically relating to Simba and Diva Starz. Mattel reminded MGA that it has already
produced a substantial amount of documents to defendants regarding Simba and Diva Starz, but
will look into the matter further.

**9.     MGA and MGA Mexico's motion for protective order from Mattel's fourth notice of
         deposition of MGA and notice of deposition of MGA Mexico.**

Mattel noted that the topics directed at MGA Mexico pertain to Phase Two discovery, and will
therefore be put on hold until Phase Two discovery commences. As to the topics relevant to
MGA, Mattel identified the following which pertain, at least in part, to Phase One: Topic Nos.
7-14, 82, 84-87, 89-95, 97, 98 and 102.

MGA disputed that Topic Nos. 7-14, 97 and 98 relate to Phase One, contending that because
they refer to the "contested MGA products" they are, by definition, exclusive to Phase Two.
Mattel responded that these topics are relevant to Phase One to the extent they relate to early
Bratz development, but agreed to go back and reconsider them.

MGA contended that Topic No. 102 is duplicative of the financial information for which Lisa
Tonnu was designated. Mattel responded that documents relevant to this topic were put in front
of Ms. Tonnu at her first deposition, but that she did not have any knowledge or information
regarding them. Thereafter, Ms. Tonnu was ordered to appear for further deposition. At the
request of your colleague, Carl Roth, Mattel provided MGA with copies of the documents that
had previously been presented to Ms. Tonnu. Mr. Roth indicated that he would inform Mattel if
Ms. Tonnu was to be designated on this topic at the further deposition. Mr. Roth never so
indicated. Accordingly, Mattel is now entitled to a witness on this topic.

MGA conceded that Topic Nos. 82, 84-87 and 94 are relevant to Phase One, but argued that they
are duplicative of MGA's interrogatory responses.

EXHIBIT __4__
PAGE __19__

MGA argued that Topic 95 is identical to Topic 34 in Mattel's Second Notice of Deposition Pursuant to Rule 30(b)(6) to MGA, which Judge Infante previously excluded.

As to Topic Nos. 89-93, which all pertain to Fred Larian, MGA has agreed to produce a witness, though was unable to identify who the witness will be or when that witness will be available. MGA did confirm, however, that it will be a single witness.

Finally, the parties recognized that Mattel has not yet filed an opposition to this motion. As you know, when Mattel requested additional time for the opposition, MGA indicated that Mattel can take as much time as it needs, provided that MGA is permitted 10 days thereafter to reply. The parties agreed that Mattel will file an opposition pertaining to the narrow issues of Topics 82, 84-87, 94 and 95, and possibly 7-14, 97 and 98. The parties further agreed to put the remaining issues in this motion off until the Phase Two stay is lifted.

**10.    Mattel's motion to (1) enforce the Court's 8/13/07 Order and to compel; and (2) for award of monetary sanctions.**

The parties agreed that this is a Phase Two motion and thus should be put off until Phase Two. However, Mattel noted that this motion may be withdrawn entirely if MGA can answer the questions raised in Mattel's January 31 and February 4, 2008 letters to your colleague, Andrew Temkin. MGA agreed to look into this issue and get back to Mattel.

**11.    Carter Bryant's Motion to Quash Mattel Inc.'s Subpoena Issued to People's Bank of the Ozarks or in the Alternative, for Protective Order.**

Mattel expressed its view that the notice arguments raised in Bryant's papers are moot, as Bryant has not suffered any prejudice. Bryant disagreed.

In an attempt to resolve this motion without further motion practice, Mattel proposed that the parties apply the same agreement they had reached as to the Foothill subpoena to the subpoena at issue here. Bryant agreed to consider this offer, but contacted Mattel following the meet and confer to reject this offer.

As such, this motion will be submitted to the Discovery Master for consideration.

**12.    Mattel's motion to compel production of documents improperly withheld as privileged by MGA, Isaac Larian and third party David Rosenbaum.**

Mattel noted that it has withdrawn that portion of its motion relating to MGA's waiver of privilege. The parties were unable to discuss the few outstanding issues in this motion, as you indicated that you had not yet had a chance to review Mattel's reply brief. You stated that you would look into this matter and get back to Mattel. We look forward to hearing from you.

EXHIBIT   4
PAGE   20

### 13. Mattel's motion to compel deposition of MGA Hong Kong and for sanctions.

MGA offered to provide a witness for an additional 7 hours of deposition, with such witness to be educated on 20 topics of Mattel's choosing. Pursuant to this proposal, the witness will only be responsible for prepping on the 20 specified topics. MGA indicated, however, that to the extent Mattel asks questions outside of those 20 topics, the witness will be permitted to answer as to his or her personal knowledge. That is, MGA will object to such questions as beyond the scope of the deposition, but will not instruct the witness not to answer.

Mattel will respond to this offer under separate cover.

### 14. Mattel's motion to enforce the Court's 5/15/07 Order, to compel MGA to produce compelled calendars, and for sanctions.

In its reply to this motion, Mattel identified certain calendars and planners which it believed that MGA had failed to produce. MGA informed Mattel that it had in fact produced these materials, and provided the relevant Bates numbers. Thank you for identifying these calendars and planners. We are investigating MGA's claims in this regard.

MGA also confirmed that it has now produced to Mattel all year 2000 calendars and planners in its possession, both electronic and hard copy. MGA explained that many of the year 2000 calendars and planners no longer exist.

Mattel raised two issues with respect to Isaac Larian's calendar. First, Mattel noted that the produced copy of Larian's calendar has text which has been cut-off. MGA responded that the copy with portions cut-off is the only version in its possession. MGA further noted that it only has this calendar in hardcopy -- not the full electronic version. Mattel noted that this is inconsistent with MGA's repeated representations in this case that it preserves *all* electronic documents. MGA was unable to explain why the electronic version of Larian's 2000 calendar purportedly does not exist.

Second, Mattel pointed out that MGA has only produced Larian's calendar from October 1999 through 2000, and has omitted all entries that pre-date October 1999. Mattel also pointed out that MGA has not produced year 1999 calendars for any other individuals either. As we told you at the meet and confer, we have previously discussed with your colleague Mr. Temkin that Mattel's requests, on which MGA was ordered, seek all pre-2001 -- including 1999 -- calendars relating to Bratz. Indeed, it appears that late 1999 Larian calendar pages were produced for this reason. MGA responded that Bratz purportedly did not exist in 1999, and thus that 1999 calendars cannot possibly contain any materials which are responsive to Mattel's requests. However, as Mattel responded, there is no indication that MGA has even searched for 1999 calendars (other than the few months of Larian's calendar it has produced), so it is unclear how MGA could know that there will not be any responsive material in these earlier entries. Moreover, as you know, Mr. Larian's prior statements suggest MGA was involved with Bratz in 1999.

8

EXHIBIT 4
PAGE 21

MGA agreed to look into the issue of whether the pre-October 1999 materials were searched. Mattel indicated that if MGA did in fact search for these materials, and has produced all responsive materials in its possession from both 1999 and 2000, Mattel will consider taking this motion off of the Court's calendar.

**15.    Mattel's motion to compel production of documents by MGA in response to Mattel's fifth set of requests for documents and things to MGA.**

Prior to our meeting on February 21, MGA had not made any response to these requests, and had only objected. However, MGA provided the following information at our conference:

MGA represented that it does not have a general ledger, but stated that it has produced historical trial balances for the period from 1996 to October 2007 -- including the year 2000.

MGA claimed that it has produced documents showing MGA payments to Larian and others, and identified these documents by Bates numbers. MGA further stated that Lisa Tonnu has testified on this subject.

MGA stated that to the extent any documents showing any gifts or loans from MGA to Isaac Larian exist, they are covered by the materials that MGA has already produced and identified in this case.

MGA stated that it is not willing to produce MGA's and Larian's bank records, given that Judge Infante recently rejected an interrogatory which sought similar information. MGA further noted that it has already produced documents identifying the financial institutions where Larian's and MGA's accounts are located.

As to the requests seeking salary and payment information, MGA stated that it has already produced audited financial documents and trial balances which it claims cover these requests. MGA acknowledged that these produced materials are not broken down by person, but indicated that it is not willing to produce any further documents pursuant to these requests.

With respect to Request Nos. 40-47, MGA indicated that it will not produce the requested documents, on the grounds that these requests are purportedly overbroad.

As to Mattel's requests pertaining to corporate governance documents, MGA indicated that there are only two categories for which it is willing to produce any documents. MGA offered to produce the minutes for board of directors and shareholder meetings, insofar as they refer or relate to Carter Bryant or Bratz and are from the period 1999 to May 2001. Mattel responded that to the extent documents exist from the 1999 to 2001 period which refer or relate to Bratz, they should *already* have been produced pursuant to the Court's Order.

MGA agreed to produce all documents responsive to Mattel's Request No. 33 -- which seeks documents sufficient to identify MGA's officers and directors, including all relevant positions and dates, from 1999 to 2007.

EXHIBIT __4__
PAGE __22__

As to the remaining requests in Mattel's Fifth Set, MGA indicated that it will be standing on its objections.

Mattel will consider the information provided by MGA and respond shortly.

### 16.   MGA defendants' motion to quash subpoena to Bank of America or, in the alternative, for protective order.

Mattel indicated that it would consider MGA's proposal that the parties work together to narrow
' Mattel's requests to those documents which Judge Infante has ordered produced, but which MGA
.   has not yet produced to date.

### 17.   Mattel's motion to compel MGA to produce communications regarding this action [re RFP No. 48 in Mattel's first set of RFPs].

MGA offered that if Mattel narrows its request insofar as it relates to MGA employees to a list of approximately 5-10 specifically identified employees, MGA will conduct a search and produce those individuals' communications that refer or relate to this action. The parties have engaged in follow up discussions on this issue since the meet and confer, and Mattel is hopeful we will be able to reach resolution.

MGA reiterated that it will not conduct such a search with respect to outside counsel or agents of MGA in any circumstances. Accordingly, this portion of the motion will need to go forward one way or another.

### 18.   Mattel's motion to compel MGA, MGA Hong Kong, Isaac Larian, and Carter Bryant to respond to Mattel's first set of RFAs propounded to MGA, Carter Bryant, MGA Hong Kong and Isaac Larian.

Bryant has served supplemental responses and met and conferred with Mattel regarding those responses. As Mattel has separately advised, it is willing to withdraw the motion as to Bryant.

As to MGA, Mattel noted that it had just received MGA's supplemental responses to Mattel's First Set of Requests for Admission on the morning of February 21, 2008. While Mattel acknowledged that these supplemental responses are an improvement over MGA's initial responses, it stated that they nonetheless remain deficient. As Mattel explained, these supplemental responses are improper in that, for every request for admission, MGA denies both the positive and negative proposition. Mattel stated that unless MGA further supplements its responses to correct this issue, Mattel is unwilling to withdraw this motion as to MGA. Moreover, MGA has not supplemental some of the RFAs at issue in Mattel's motion at all.

The parties also discussed MGA's failure to timely file a substantive opposition to this motion, or to otherwise seek an extension, as Carter Bryant did. Notwithstanding the untimeliness of MGA's contemplated opposition, the parties agreed that MGA will be permitted to file it if it

07209/2411230.1                                    10

EXHIBIT   4
PAGE   23

does so promptly. MGA confirmed that in light of Mattel's willingness to meet and confer on
MGA's supplemental responses, MGA will not argue in any opposition it chooses to file that
Mattel's motion should be denied because it purportedly failed to meet and confer as to the initial
responses.

**19.    Carter Bryant's motion to compel responses to discovery requests [re ROG No. 20
of second set; first and second sets of RFAs; RFP Nos. 10, 21-32 of fourth set].**

Mattel reiterated its position, as reflected in its *ex parte* application to strike Bryant's motion to
compel, that Bryant's motion – which was filed after the close of Phase One discovery -- was
untimely, and that Mattel should therefore not be required to file any substantive response to it.
The Discovery Master ruled on this issue yesterday.

In order to alleviate the burden on the Discovery Master, Mattel suggested that the parties work
together to find a way to present to Judge Infante Mattel's argument that Bryant's discovery
requests were not properly served (as well as its untimeliness argument) before the Discovery
Master considers Bryant's motion to compel. As Mattel noted, if the Discovery Master were to
rule in Mattel's favor on either the timeliness or service issue, then Bryant's motion is moot.
Conversely, if the Discovery Master were to reject both of Mattel's arguments, then Mattel
would serve supplemental responses to many of Bryant's discovery requests, and the parties
could work to narrow their disputes as to any remaining requests, alleviating the burden on the
Discovery Master (Bryant's motion relates to more than 300 separate discovery requests).
Bryant rejected this proposal.

**20.    Mattel's motion to compel production of documents and things by MGA and for
award of monetary sanctions [re 3rd Set RFPs, including Nos. 1-88].**

For Mattel's Request Nos. 1-30, seeking documents pertaining to other Bratz lawsuits, MGA
complained that it has already produced more than 20,000 pages of documents with respect to
other litigation, including sworn statements in connection with Requests Nos. 37 and 38 of
Mattel's First Set of RFPs, and Requests Nos. 19-20 of Mattel's RFPs regarding unfair
competition. Accordingly, MGA indicated that it is unwilling to produce any further documents.

Mattel responded that the documents MGA produced in response to Nos. 37 and 38 of Mattel's
First Set were limited to sworn statements. Here, Mattel is not limited to just sworn statements,
but rather is entitled to a broader set of responsive materials. In order to ameliorate MGA's
concern that producing further documents would be unduly burdensome, Mattel offered to start
with the following: MGA will identify the relevant counsel, and Mattel will send someone to go
through the non-privileged files. MGA agreed to consider this proposal.

With respect to Mattel's Request No. 31, seeking documents relating to the use of the term
"Jade," MGA offered to provide responsive documents through May 2001. Mattel requested that
MGA provide documents through September 2001. You agreed to present this request to your
clients.

07209/2411230 1                                    11

EXHIBIT __4__
PAGE __24__

As to Request Nos. 32 and 33, which seek documents regarding when Sandra Bilotto first came to MGA's attention and was first hired by MGA, MGA argued that even if these requests are relevant, they pertain to Phase Two.

For Request Nos. 34, 35, 37 and 39, MGA represented that it has already produced all documents and materials responsive to these requests in connection with other discovery requests, and that these productions were not limited by MGA's objections.

MGA contended that Request Nos. 36 and 38 are exclusively Phase Two issues.

For Request No. 40, pertaining to payments made by MGA to Bilotto, MGA offered to produce responsive materials through May 31, 2001. Mattel requested that MGA produce documents through September 2001, and that MGA use not the payment date as the relevant trigger, but rather the date the payment was requested. MGA agreed to consider this.

For Request No. 41, MGA represented that it has produced responsive materials up to January 1, 2001 and proposed to supplement this production with materials that refer or relate to Bryant or Bratz (though not Mattel products) through May 2001. Mattel again asked that the production be through September 2001, which you agreed to present to your clients.

For Request No. 42, communications between Larian and Paula Garcia, MGA indicated that it would be willing to search for and produce communications between Larian and Garcia, which refer or relate to Bryant or Bratz, through May 2001. MGA agreed to consider producing such communications through September 2001. MGA also noted that it may have already produced communications between Larian and Garica that post-date January 2001, in connection with other discovery requests. MGA agreed to confirm this.

As to Request No. 76, payments from MGA to Garcia, MGA represented that it has already produced any materials that pre-date January 1, 2001, but not those that post-date it. MGA agreed to produce such materials, through May 2001. After Mattel requested that MGA produce documents through September 2001, MGA agreed to consider it.

With respect to Mattel's requests seeking documents pertaining to Scooter Samantha and Space Babes, MGA contended that the requests are only relevant to Phase Two. Mattel responded however that the Scooter Samantha requests are relevant to Phase One, in that these requests go to Garcia's credibility.

For Request Nos. 78-86, which seek vendor and personnel files for various MGA employees and vendors, MGA represented that it had searched for and produced responsive materials from vendor files pre-dating January 1, 2001. MGA offered to supplement this production with materials through May 2001, and agreed to consider supplementing through September 2001. MGA also indicated that it would have to double check whether these individuals' personnel files had been searched in addition to their vendor files.

EXHIBIT 4
PAGE 25

Request Nos. 87 and 88 ask for personnel and vendor files for MGA employees or vendors who previously worked for Mattel. MGA contended that these requests are limited to Phase Two. Mattel responded, however, that to the extent MGA identified former Mattel employees in its interrogatory responses who later worked on Bratz, these individuals are plainly relevant to Phase One. Mattel further stated that as to these people, Mattel wants their entire vendor and personnel files. To facilitate this process, Mattel agreed to get back to MGA with a list of people who fall into this category.

### 21.     MGA's motion to overrule Mattel's and Richard De Anda's objections to subpoena and to compel discovery.

With respect to MGA's requests regarding investigations conducted by Mr. De Anda, Mattel has previously represented to MGA that Mr. De Anda does not possess any responsive documents. MGA asked us to confirm that this representation is not limited to Mr. De Anda's personal files, but also includes his company's files. We confirmed that he does not possess responsive investigation materials in either his personal or company's records.

As to the balance of MGA's motion, MGA indicated that it is willing to narrow it to Request Nos. 5, 6 and 11. For Request No. 11, MGA stated that it is seeking any employment agreements between MGA and Mr. De Anda, as well as any documents related to such agreements. I informed you that my colleague Tim Alger would be meeting with Rob Herrington of your firm, to meet and confer regarding a broader discovery request that would encompass Request No. 11. I therefore suggested that the discussion regarding this request be wrapped into Tim's and Rob's discussions.

With respect to Request Nos. 5 and 6, MGA indicated that it is seeking documents sufficient to show (1) how much time Mr. De Anda has been devoting to his business, and (2) what type of work he has been doing in connection with his business. I responded that Mr. De Anda has previously testified that he does not devote much time to his business. Nevertheless, I agreed to follow up with Mr. De Anda to determine whether he maintains time records or possesses any other information responsive to these requests.

MGA stated that in producing materials responsive to Requests Nos. 5 and 6, Mr. De Anda is free to redact any private information pertaining to client identification.

### 22.     MGA and Carter Bryant's joint motion to compel an unredacted version of M0074400, Mattel's Investigative File 02-299 and the further deposition of Richard De Anda.

Mattel informed you that it is unwilling to produce Mr. De Anda for any further deposition, given the fact that MGA wasted the entire morning during his previous deposition. Mattel also informed you that it has submitted both the unredacted version of M0074400 and Mattel's Investigate File 02-299 to Judge Infante *in camera*, for his consideration.

EXHIBIT   4
PAGE   26

### 23. MGA's motion to overrule Mattel's relevance objection and compel discovery relevant to statute of limitations and laches defenses.

With respect to MGA's Requests for Production, Mattel represented that it has not asserted relevance objections to Request Nos. 186-188 and 190. Mattel further noted that although it did assert a relevance objection to Request No. 189, that objection has nothing to do with MGA's statute of limitations or laches defenses. And, while it has raised relevance objections to Request Nos. 191-194, Mattel represented that it has not withheld any documents responsive to these requests on relevance grounds. Mattel offered to supplement its responses to MGA's Requests for Production to reflect this.

Mattel also represented that as to its responses to MGA's interrogatories, Mattel is not withholding responsive information on relevance grounds. MGA nonetheless contended that Mattel has purportedly failed to provide full and complete answers to Interrogatory Nos. 5, 9, 10 and 11. Mattel responded that its interrogatory responses are sufficient under the standard previously advocated by defendants and recently adopted by Judge Infante, which provides that interrogatory responses need only set forth "principal facts." Accordingly, Mattel indicated that it will not provide any further responses to MGA's interrogatories.

Mattel also stated that it will not supplement its answers to MGA's Requests for Admission, as the requests are defective on their face. Specifically, Mattel noted that MGA's requests are improperly compound.

### 24. Mattel's motion to compel the continued deposition of Isaac Larian and to overrule instructions not to answer.

MGA stated that it would be amenable to producing Mr. Larian for a few additional hours of deposition, but that the examination would be limited to Phase Two topics and that the deposition would not take place until Phase Two. Mattel informed you that this proposal is unacceptable, as Mattel is entitled to examine Mr. Larian further on Phase One issues. Accordingly, this motion will have to be resolved by Judge Infante.

### 25. MGA Defendants' motion to quash deposition subpoenas [re non-parties Mel Woods, Daphne Gronich, Joe Tiongco, NPD Group, Inc., Ana Isabel Cabrera, Beatriz Morales, Moss Adams, and Wachovia Corp.; and Maria Elena Salazar].

Mattel expressed its view that the Court's February 4, 2008 Order provides that depositions for which Judge Larson granted leave do not count toward the 24 deposition limit imposed by the Court. MGA disagreed, contending that the Court merely granted Mattel relief from the 24 deposition limit, but left open the question of whether those depositions count toward the limit.

Mattel informed MGA that it intends to proceed with its third-party depositions, notwithstanding MGA's erroneous reading of the Court's Order.

07209/2411290 1                         14

EXHIBIT  4
PAGE  27

Additionally, Mattel stated its position that the February 4 Order granted Mattel leave to take the
depositions of Joe Tiongco and Daphne Gronich regarding document preservation. MGA again
disputed Mattel's reading, arguing that the document preservation issue is likewise an open issue
to be decided by the Discovery Master.

**26.    MGA's and Carter Bryant's joint motion to compel production of improperly
withheld Mattel documents showing Mattel's investigation of MGA and Carter
Bryant prior to November 2003 and to compel production of all "NHB" documents.**

Mattel agreed to submit the two "NHB" documents at issue in this motion to Judge Infante *in
camera* for his consideration. The parties were unable, however, to reach an agreement on
MGA's and Bryant's demand that Mattel conduct a new search for all documents using "NHB."

Defendants reiterated their position that they are entitled to a new search for all "NHB"
documents, but defendants were unable to articulate a basis for such a search, given that Mattel
has represented that it has not withheld any unprivileged document that falls into a category that
Mattel has agreed or been ordered to produce on the basis that it uses "NHB."

Indeed, as Mattel noted, the fact that Mattel inadvertently produced the two "NHB" documents at
issue here, and its production of other, non-privileged "NHB" documents, demonstrates that
Mattel has not withheld unprivileged "NHB" documents.

**27.    Mattel's motion to compel a complete response to Mattel's supplemental
interrogatory re Test Projects.**

The parties were unable to reach any resolution on this matter. Accordingly, the motion will be
submitted to Judge Infante.

**28.    Mattel's motion for order enforcing Court's 1/25/07 Order compelling Bryant to
produce computer hard drives and for sanctions.**

The parties were unable to reach any resolution on this matter as well  Accordingly, the motion
will also be submitted to Judge Infante.

**29.    Mattel's (I) motion to compel documents only portions of which are allegedly
privileged; (II) motion for order compelling production of withheld MGA (1)
trademark search results, (2) date of first use information, and (3) factual data
communicated for the purpose of filing trademark or other intellectual
property applications; and (III) motion compelling production of third party
communications improperly withheld under a claim of "common interest" privilege.**

MGA reiterated its prior positions on these motions and stated that it would not be offering any
compromises. MGA explained that it was still working on re-producing documents on its
August and September logs in redacted form but did not offer further guidance as to when Mattel
can expect to receive such documents. Mattel reiterated that it would not object to these

07209/2411230.1                              15

EXHIBIT   4
PAGE   28

revisions being produced on a "rolling basis." MGA also confirmed that it would not reproduce any documents on its November or later logs in redacted form.

As to the second motion, MGA reiterated its position that because the communications at issue involved attorney-client communications, any factual information, including date of first use information and trademark search results, are shielded from disclosure. Mattel reiterated that it is not seeking any privileged advice, and that the documents containing date of first use information, trademark search results and the like can be produced in redacted form.

As to the third motion, MGA reiterated its position that its relationship with Bandai and other third parties entitles it to assert the common interest doctrine to avoid waiver of the underlying privilege. Mattel reiterated the reasons why it disagrees. Thus, this motion as well will have to be decided.

As to all the motions, MGA indicated that its position is that only the August and September logs are properly at issue. Specifically, although the deficiencies raised in each of Mattel's motions are common across all of MGA's logs, MGA stated that only the August and September logs had been the subject of Mattel's initial meet and confer letter. However, as Mattel stated, the lengthy meet and confer process was not limited to any specific logs, and the deficiencies in the later logs had been properly raised during the meet and confer process. Mattel offered to discuss on an entry-by-entry basis the specific entries from MGA's November and January logs raised in Mattel's pending motions. MGA refused to discuss any of these specific entries as "untimely." MGA also refused to discuss the specific entries raised in Mattel's letter of February 6, 2008 as "untimely." However, MGA did reiterate that its legal positions are the same as to all the logs.

MGA confirmed that, with the exception of the revised August and September logs it has promised to serve, the MGA parties and Larian have served all outstanding privilege logs.

Please let me know if you have any questions regarding the foregoing. I look forward to hearing from you soon.

Respectfully submitted,

Jon D. Corey /SH

Jon D. Corey

cc:    Amy Park, Esq.
       Tim Miller, Esq.
       Paul M. Eckles, Esq.

07209/2411230 1                              16

EXHIBIT  4
PAGE  29

02-26-08   08:18pm   From-SKADDEN ,ARPS PALO ALTO                16504704576                T-362   P.01   F-598

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   February 26, 2008                **NUMBER OF PAGES, INCLUDING COVER:**  17

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Raoul Kennedy, Esq./Skadden Arps Slate Meagher & Flom LLP | 415/984-6400 | 415/984-2698 |
| John Trinidad, Esq./Keker & Van Nest, LLP | 415/391-5400 | 415/397-7188 |
| Amy Park, Esq./Skadden Arps Slate Meagher & Flom LLP | 650/470-4500 | 650/470-4570 |
| Timothy Miller, Esq./Skadden Arps Slate Meagher & Flom LLP | 415/984-6400 | 415/984-2698 |
| Paul M. Eckles, Esq./Skadden Arps Slate Meagher & Flom LLP | 212/735-3000 | 212/735-2000 |

Skadden, Arps Once

**FROM:**   Jon D. Corey

**RE:**   Mattel v. Bryant, et al.                        FEB 2 6 2008

**MESSAGE:**

| CLIENT # | 07209 | ROUTE/ RETURN TO: | Tiffany Garcia | ☑ CONFIRM FAX ☑ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED? | ☐ NO ☐ YES: |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT  4
PAGE  30