1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13      Plaintiff, | Consolidated with<br>Case No. CV 04-09059 |
| 14      vs. | Case No. CV 05-02727 |
| 15  MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| 16      Defendant. | **[To Be Heard by Discovery Master Hon. Edward Infante (Ret.) Pursuant to The Court's Order of December 6, 2006]** |
| 17 | |
| 18  AND CONSOLIDATED ACTIONS | MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION AND PRODUCTION OF DOCUMENTS OF CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP |
| 19 | |
| 20 | |
| 21 | |
| 22 | Date:   TBD<br>Time:   TBD<br>Place:  TBD |
| 23 | |
| 24 | **Phase I**<br>Discovery Cut-off:        January 28, 2008<br>Pre-trial Conference:     May 5, 2008<br>Trial Date:               May 27, 2008 |
| 25 | |
| 26 | |
| 27 | **PUBLIC REDACTED** |
| 28 | |

07209/2417535.5

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

  PLEASE TAKE NOTICE that, at a conference before Discovery Master Hon. Edward Infante (Ret.) on a date and time to be set by Judge Infante, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court pursuant to Federal Rules of Civil Procedure 26, 37 and 45 to compel Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP ("Christensen Glaser") to (i) appear for deposition on Topic Nos. 1,2, 3, 5, 7, 8, 9, 10, 11, 12 and 13 set forth in the subpoena dated January 18, 2008 that Mattel served on Christensen Glaser ("Subpoena") and (ii) to produce all documents responsive to Requests for Production Nos. 1, 2, 3, 4, 5, 6, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21 and 22 set forth in the Subpoena.

  This Motion is made on the grounds that (i) the Court has already twice ordered Christensen Glaser to appear for deposition on all of the topics set forth in the Subpoena, but Christensen Glaser continues to refuse to appear for deposition and (ii) each of the Requests for Production in the Subpoena seeks relevant, non-privileged and discoverable information, including information that the Discovery Master has already found to be relevant in this action, and there is good cause for Christensen Glaser to produce all responsive documents.

  This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Juan Pablo Albán filed concurrently herewith, the records and files of this Court, and all other matters of which the Court may take judicial notice.

## **Statement of Rule 37-1 Compliance**

The parties met and conferred on the issues set forth in this motion on January 24 and February 4, 2008, among other dates, and have not come to a resolution on the matter.

DATED:  February 29, 2008        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By s:/ Jon D. Corey
   Jon D. Corey
   Attorneys for Mattel, Inc.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ....................................................................................................... 2

    A.    Christensen Glaser's Knowledge of Discoverable Information. ............ 2

          1.    Knowledge Of The Bryant-MGA Bratz Contract. ........................ 2

          2.    Knowledge Of Farhad Larian's Spoliation Of Evidence. ............. 3

    B.    The Court's January 7, 2007 Order And Mattel's Subpoena On Christensen Glaser. ........................................................................... 5

    C.    Christensen Glaser's Objections to Mattel's Subpoena. ....................... 6

    D.    The Meet and Confer Process and Christensen Glaser's Refusal To Provide A Date To Appear For Its Compelled Deposition Or To Produce Relevant Documents. ......................................................... 7

ARGUMENT .............................................................................................................. 8

I.    MATTEL'S DEPOSITION TOPICS AND DOCUMENT REQUESTS ARE RELEVANT AND GOOD CAUSE EXISTS FOR DISCOVERY ........ 8

    A.    The Agreement Between Bryant and MGA, And Christensen's Handling Thereof, Is Central Evidence To Mattel's Claims and MGA's Affirmative Defenses. ............................................................ 8

    B.    Requests Seeking Information About Spoliation And Christensen's Disqualification Threat Are Relevant. ............................ 9

    C.    Requests Seeking Information About MGA's Theft Of Trade Secrets Through Mattel Employees Is Relevant. ................................ 10

    D.    MGA's Payments to Witnesses. .......................................................... 11

II.    CHRISTENSEN'S IDENTICAL BOILERPLATE OBJECTIONS ARE UNSUBSTANTIATED AND UNFOUNDED. ............................................. 12

    A.    Ninth Circuit Law Confirms That The Information Mattel Seeks Is Not Privileged. ............................................................................... 12

          1.    Documents or Communications That Christensen Glaser Shared With Bryant or Other Witnesses, Or Their Counsel, Are Not Privileged. ....................................................................... 12

1            2.    Christensen Glaser's Receipt and Knowledge Of The
                   Bryant-MGA Agreement O'Connor Sent It Is Not
2                  Privileged Under Any Circumstances. ....................................... 13

3            3.    Christensen Glaser's Work Product Applies Only To Work
                   Created In Anticipation Of Litigation. ...................................... 14
4
      B.    Christensen Glaser Has Unique Information Regarding The
5           Topics and Requests At Issue. ........................................................... 15

6     C.    Mattel's Requests Are Not Unduly Burdensome, Especially In
            Light Of The Critical Relevance Of The Requests.............................. 16
7
CONCLUSION ................................................................................................. 17

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF AUTHORITIES**

2                                                                                              **Page**

3

## Cases

4

A. Farber & Partners, Inc. v. Garber,
  234 F.R.D. 186 (C.D. Cal. 2006) ........................................................................ 15

5

6  In re Bergeson,
     112 F.R.D. 692 (D. Mont. 1986)......................................................................... 16

7

Bittaker v. Woodford,
  331 F.3d 715 (9th Cir. 2003) ............................................................................... 13

8

9  Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc.,
     175 F.R.D. 646 (C.D. Cal. 1997) ........................................................................ 10

10

11  Chapman & Cole v. Itel Container Int'l. B.V.,
      865 F.2d 676 (5th Cir. 1989) .............................................................................. 15

12  Chevron Corp. v. Pennzoil Corp.,
      974 F.2d 1156 (9th Cir. 1992) ............................................................................ 13

13

14  Covey Oil Co. v. Continental Oil Co.,
      340 F.2d 993 (10th Cir. 1965) ............................................................................ 16

15  Matter of Fischel,
      557 F.2d 209 (9th Cir. 1977) .............................................................................. 14

16

17  Flatow v. The Islamic Republic of Iran,
      202 F.R.D. 35 (D.D.C. 2001)............................................................................... 15

18  Goodman v. U.S.,
      369 F.2d 166 (9th Cir. 1966) .............................................................................. 15

19

20  Northrop Corp. v. McDonnell Douglas Corp.,
      751 F.2d 395 (D.C. Cir. 1984)............................................................................. 15

21  Oakes v. Halvorsen Marine Ltd.,
      179 F.R.D. 281 (C.D. Cal. 1998) ........................................................................ 15

22

23  Plant Genetic Systems, N.V. v. Northrup King Co., Inc.,
      6 F. Supp. 2d 859 (E.D. Mo. 1998)..................................................................... 16

24  Softview Computer Prods. Corp. v. Haworth, Inc.,
      2000 WL 351411 (S.D.N.Y. 2000)...................................................................... 12

25

26  State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.,
      2007 WL 2993840 (E.D.N.Y. 2007)................................................................... 16

27  United States v. Abel,
      469 U.S. 45 (1984) .............................................................................................. 10

28

United States v. Torf,
357 F.3d 900 (9th Cir. 2004) .............................................................. 14

Unocal Corp. v. U.S.,
2005 WL 3736952 (N.D.Cal. 2005).................................................. 12

**Statutes**

Fed. R. Civ. P. 26(b)(3) ...................................................................... 14

**Other Authorities**

8 Wright, Miller, and Marcus,
Federal Practice and Procedure Civil 2d § 2024 .............................. 14

Wright & Miller, Federal Practice & Procedure:
Federal Rules of Evidence § 6095 ..................................................... 10

-iv-

1  ## MEMORANDUM OF POINTS AND AUTHORITIES

2

3  ### Preliminary Statement

4      The Court granted Mattel the right to take the deposition of

5  Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP.  Christensen Glaser

6  attempted to limit the Court's order to only one deposition topic.  The Court  denied

7  that request, allowing Mattel to depose Christensen "on any relevant, non-privileged

8  matter."  Judge Larson signed that Order on February 4, 2008, but to date

9  Christensen has refused to appear for deposition or offer Mattel available dates for

10  the deposition.

11      The deposition topics in Mattel's subpoena all go to central issues in

12  this case, which the Discovery Master has already found to be relevant and

13  discoverable.  For example, Victoria O'Connor testified that

14  }

15  J       **REDACTED**

16

17      Mattel has a right to explore Christensen Glaser's

18  receipt of that Agreement—which MGA and Bryant had already exchanged and is

19  thus not privileged.  i    **REDACTED**    is likewise in and of itself

20  relevant, non-privileged information about which Christensen Glaser apparently has

21  knowledge.  The bulk of the deposition topics ("Topics") and document requests

22  ("Requests") in Mattel's subpoena go to these issues.

23      Mattel's subpoena also seeks information about Farhad Larian.

24  Christensen Glaser started representing Mr. Larian only after Mattel served him with

25  a third party subpoena on August 31, 2007.  During his recent deposition, Mr.

26  Larian

27      **REDACTED**

28

1                                              Furthermore,

2  Christensen Glaser threatened to disqualify Quinn Emanuel from this action based

3  on Mr. Larian's counsel voluntarily allowing Quinn Emanuel to inspect documents

4  relevant to this action, some

5  Information in Christensen Glaser's possession relevant to Bratz, spoliation of

6  evidence, and Mattel's defense to Christensen's Glaser's disqualification threat, is

7  relevant and discoverable.

8         Finally, Mattel seeks information from Christensen Glaser about

9  payments from MGA to Bryant and other witnesses in this action.  The Discovery

10  Master has already found that such information is relevant and discoverable.  The

11  information goes to bias and credibility of the witnesses.

12        Mattel respectfully requests that the Discovery Master compel

13  Christensen Glaser to appear for deposition as to all the Topics set forth in the

14  Subpoena and to produce all non-privileged documents responsive to the Subpoena.

15

16                        **Background**

17

18  **A.**     **Christensen Glaser's Knowledge of Discoverable Information.**

19          **1.**     **Knowledge Of The Bryant-MGA Bratz Contract.**

20        On December 6, 2004, Victoria O'Connor testified as follows:

21

22

23

24               **REDACTED**

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

**REDACTED**

17    2.    <u>Knowledge Of }</u>

18        Christensen Glaser started representing Farhad Larian in this litigation

19 after Mattel served Mr. Larian with a subpoena on August 31, 2007.[4]  Prior to that,

20 and throughout 2005, Christensen Glaser represented MGA and Isaac Larian in this

21 litigation until October 11, 2007.[5]  Farhad Larian testified

22    **REDACTED**

23

24    [1]  Tr. of Victoria O'Connor Depo. dated December 6, 2004, at pp. 18:5-19:4,
25    attached as Exh. 1 to the Declaration of Juan Pablo Albán (Albán Dec.) filed
       concurrently.
26    [2]  *Id.*, Exh. 2 at p. 29:3 -29:7 (Tr. of I. Larian Depo. dated Jul. 18, 2006).
27    [3]  *Id.* at  28:1-29:7.
      [4]  *Id.*, Exh. 3 (Sep. 21, 2007 Ltr. from Lever to Zeller).
28    [5]  *Id.*, Exh. 4 (Order re Substitution of Attorney dated Oct. 12, 2007).s

1

2

3

4

5

# REDACTED

6

7

8

9

10          Daphne Gronich, MGA's general counsel, knew at least as of August

11    19, 2005, that Mr. Larian had in his possession documents relevant to this litigation.

12    On that date, Ms. Gronich wrote to Mr. Larian asking him "to return" to MGA

13    documents he had been gathering regarding the development of Bratz.[11]  Despite

14    this knowledge, however, there is no indication that Ms. Gronich or any counsel for

15    MGA ever instructed Mr. Larian—a paid MGA contractor in 2005, a director and

16    45% owner of MGA throughout 2000, and a key witness in this litigation—to

17    preserve such information.  To the contrary, Ms. Gronich declares that she "and/or

18    [MGA's] outside counsel" directed "key potential witnesses" in this litigation to

19

20    _____

21    [6]  MGA paid Mr. Larian as a consultant until *December 31, 2005*. *See id.*, Exhs.
      5 at FL6515 (Consulting Agr. between MGA and Farhad Larian dated Jan. 1, 2001);

22    6 (Jul. 5, 2007 Ltr from Glaser to Quinn).  Mr. Larian testified to destroying
      evidence relevant to this litigation within a few days after the arbitration against

23    Isaac Larian ended on *November 17, 2005*. *See id.*, Exh. 7 at 56:9-57:5; 65:21-66:8;

24    170:10-174:5.  For context of what Mr. Larian destroyed, *see also id.* at 46-101.
      [7]   *Id.* at 53:17-54:17.

25    [8]   *Id.* at 70:5-71:18.

26    [9]   *Id.* at 170:10-174:5.  Such persons included Jennifer Maurus, Victoria
      O'Connor and Mercedeh Ward.  *Id.*

27    [10]   *Id.* at 173:6-174:2.

28    [11]   *Id.*, Exh. 8 at pp. 1-2 (Feb. 26, 2008 Ltr. from Allen to Albán.).

1 | preserve documents, but her list of key potential witnesses does not include Mr.
2 | Larian.[12]   Ms. Gronich and her outside counsel, presumably Christensen Glaser
3 | and/or O'Melveny & Meyers, apparently ignored Mr. Larian as a key witness (and
4 | as a paid MGA contractor).  MGA's counsel chose to ignore him for document
5 | preservation efforts despite the fact that Mr. Larian at the time had ongoing
6 | litigation and arbitration proceedings against Isaac Larian based on substantially
7 | similar allegations as Mattel's about the concealment of Bratz in 2000.
8 | Some of the information **REDACTED**
c | included information Mr. Larian's attorneys in *Larian v. Larian* had
10 | voluntarily allowed Mattel to inspect a few weeks before the wholesale deletion.
11 | Mr. Larian did not produce many of the documents Mattel inspected, claiming to no
12 | longer have them in his possession.[13]  Christensen Glaser threatened to disqualify
13 | Quinn Emanuel from representing Mattel based on its review of those documents,
14 | citing, among other things, the fact that Mr. Larian was an MGA paid consultant
15 | until December 31, 2005.[14]

16 |

17 | **B.**    **The Court's January 7, 2007 Order And Mattel's Subpoena On**
18 | **Christensen Glaser.**

19 | On January 7, 2008, Judge Larson granted Mattel's request to take the
20 | deposition of Christensen Glaser.[15]  Following that Order, Mattel subpoenaed
21 | Christensen Glaser to appear for deposition and to produce documents on January
22 | 18, 2008.  The majority of the deposition topics and document requests seek

23 |
24 |

25 | [12]  *Id.*, Exh. 9 at ¶ 4 (Sep. 10, 2007 Gronich Dec.).
26 | [13]  *Id.*, Exhs. 10 at pp. 176-178 (Request No. 27) (F. Larian Supp. Resp. to
   | Mattel's Subpoena); 11 (Feb. 22, 2007 Ltr from Lever to Albán).
27 | [14]  *Id.*, Exh. 6 (Jul 5, 2007 Ltr. from Glaser to Quinn).
28 | [15]  *Id.*, Exh. 12 (Jan. 7, 2008 Order of the Court).

1  information about the contract or contracts between MGA and Bryant.[16]  This

2  information includes MGA and/or Isaac Larian's due diligence with respect to those

3  contracts to determine whether or not Bryant owned the rights to Bratz at the time

4  he entered into the Bratz agreement with MGA.  Second, Mattel seeks information

5  relevant to Farhad Larian's or others' spoliation of evidence, and Christensen

6  Glaser's threat to disqualify Quinn Emanuel from representing Mattel based on its

7  review of some of the documents **REDACTED**[17]  Third, Mattel seeks

8  information about its allegations of MGA's theft of Mattel trade secrets by using

9  Mattel employees to steal the secrets.[18]  Finally, Mattel seeks information about

10  payments from MGA or Isaac Larian to witnesses in this action.[19]

11

12  **C.    Christensen Glaser's Objections to Mattel's Subpoena.**

13          Christensen Glaser served only Objections to the Subpoena on January

14  28, 2008.[20]  It did not agree to appear for deposition despite the Court's January 7

15  Order.  The Objections assert identical boiler-plate objections to every one of

16  Mattel's document requests and topics for deposition.[21]

17

18

19

20

21

22

---

23  [16]  *Id.,* Exh. 13 at Topics 1-3, 5, 7 and 11-13; Request Nos. 1-6, 8, and 11-14

24  (Mattel's Subpoena on Christensen Glaser dated January 18, 2008).

25  [17]  *Id.* at Topics 8, 10,  Request Nos. 17, 18, 21, 22.

    [18]  *Id.* at Topic 9; Request No. 19.

26  [19]  *Id.* at Topic 12; Request Nos. 15, 16, 20.

27  [20]  *Id.,* Exh. 14 (Christensen Glaser's Response to Mattel's Subpoena)); *see also* *id.,* Exh. 15 (Jan. 24, 2008 Ltr from Gizer to Price).

28  [21]  *Id.,* Exh. 14.

07209/2417535.5

MATTEL'S MOTION RE CHRISTENSEN GLASER

**D.** **The Meet and Confer Process and Christensen Glaser's Refusal To Provide A Date To Appear For Its Compelled Deposition Or To Produce Relevant Documents.**

On February 4, 2008, the Court clarified its January 7 Order with respect to the deposition of Christensen Glaser:

> At the hearing, counsel for Christensen, Glaser requested that the Court clarify that its January 7, 2008, granted leave to depose it on only one issue. That is not the case, and the request is DENIED . . . Unless otherwise restricted by the Discovery Master upon proper presentation of the issue to him, Mattel may depose Christensen, Glaser *on any relevant, non-privileged matter.*[22]

Christensen Glaser's deposition was expressly discussed during this hearing and Judge Larson ordered it. Since that Order, Christensen Glaser has not requested the Discovery Master to quash Mattel's deposition subpoena on it, nor to limit the topics or document requests therein. At the same time, in defiance of Judge Larson's order, Christensen Glaser refuses to provide Mattel with a date when it is available for deposition. Mattel sent Christensen Glaser a letter.[23] Christensen Glaser has not responded.

---

[22] *Id.*, Exh. 16 (Feb. 4, 2008 Order of the Court) (emphasis added).
[23] *Id.*, Exh. 17 (Feb. 27, 2008 Ltr from Price to Lever).

7

MATTEL'S MOTION RE CHRISTENSEN GLASER

1                                   **Argument**

2

3  I.     **MATTEL'S DEPOSITION TOPICS AND DOCUMENT REQUESTS**

4        **ARE RELEVANT AND GOOD CAUSE EXISTS FOR DISCOVERY.**

5

6       A.     **The Agreement Between Bryant and MGA, And Christensen's**

7             **Handling Thereof, Is Central Evidence To Mattel's Claims and**

8             **MGA's Affirmative Defenses.**

9           Christensen Glaser cannot seriously contend that Mattel's requests

10 regarding the contract or contracts between MGA and Bryant are not relevant.  For

11 example, Mattel's Request for Production No. 1 seeks the following documents:

12       ALL DOCUMENTS generated, created, prepared or transmitted in

13       whole or part prior to April 27, 2004 that REFER OR RELATE to the

14       BRYANT/MGA AGREEMENT, including without limitation such

15       agreement (or version thereof) that Victoria O'Connor of MGA testified

16       she sent YOU in 2000 and including without limitation any iteration,

17       version or draft thereof, and all COMMUNICATIONS with BRYANT

18       relating thereto.[24]

19 As stated above and set forth in more detail in the concurrently filed Separate

20 Statement, the majority of Mattel's Requests and Topics seek information about

21 Christensen Glaser's receipt of the Agreement and related agreements or proposed

22 agreements.

23          The Agreement lies at the center of Mattel's allegations against Bryant

24 and MGA regarding Bratz.  Specifically, Mattel's Counterclaims allege that

25

26

27   [24]  *Id.*, Exh. 13 at Request No. 1; Topic Nos. 1, 13.  Mattel respectfully refers the
Discovery Master to the Separate Statement Filed Concurrently For More Specific

28 Discussion Of Each Separate Request.

1  defendants tampered the Agreement in order to conceal that Mattel was the true

2  owner of Bratz, that a version of the Agreement with the true date of the contract

3  revealed Bryant's violation of his agreements with Mattel, and that defendants'

4  tampering of the Agreement constitutes a predicate act under RICO.[25]  It is not

5  surprising that the Discovery Master has ruled on more than one occasion that

6  documents related to the Agreement are relevant and discoverable.[26]

7  }                          REDACTED

8  .

9  Federal Courts allow negative factual inferences when they find evidence of

10  spoliation.  See, e.g., In re Napster, Inc. Copyright Litigation, 462 F. Supp. 2d 1060

11  (N.D. Cal. 2006).                 REDACTED

12                          Christensen Glaser possesses and knows critical information

13  related to this contradiction.

14  v                          REDACTED                          Ms. Glaser,

15

16  possesses unique information to verify which witnesses is telling the truth.

17

18      **B.**   **Requests Seeking Information About Spoliation And Christensen's**

19            **Disqualification Threat Are Relevant.**

20            As set forth above, spoliation of evidence is at issue in this litigation

21  because it constitutes part of Mattel's copyright and RICO allegations and because a

22  finding of spoliation allows for negative factual inferences.  On August 27, 2008,

23  the Court confirmed the relevance of spoliation by requiring the parties to

24

25  [25]  Id., Exh. 18 at ¶¶ 35, 36, 93(c)(i) (Mattel's Second Amended Counterclaims).

26  [26]  Id., Exhs. 19 at 11-12 (Jan. 25 Order of the Discovery Master); 20 at 10 (May

27  15 Order of the Discovery Master).
    [27]  See Background § A(1).

28  [28]  Albán Dec., Exh. 2 at 29:3-7.

1   affirmatively support their efforts to preserve evidence.[29]  As Ms. Gronich declared,

2   MGA's "outside counsel" (*i.e.*, Christensen Glaser and/or O'Melveny & Meyers)

3   was involved in those efforts.[30]  Since then, it became clear that those efforts

4   somehow excluded Farhad Larian—throughout 2005 a paid MGA consultant; a

5   former 45% owner and director of MGA; a key witness in this case; *and a key*

6   *witness whom MGA knew possessed Bratz-related information.*[31]  **REDACTED**

7

8   fr        .  MGA has nevertheless affirmatively asserted that it has complied with

9   its document preservation obligations.  Mattel has a right to discovery that

10  challenges that claim, including as it applies to Mr. Larian.  Christensen Glaser has

11  specific and unique knowledge              **REDACTED**

12  both because it was MGA's counsel at '

13  because it was involved in MGA's document preservation obligations, and because

14  it later became Mr. Larian's counsel with respect to Mattel's subpoena on him.

15          Furthermore, part of the evidence Mr.     **REDACTED** includes

16  documents that his attorneys had shown to Mattel just a few weeks before.  It is

17  based on that inspection of documents that Christensen Glaser threatened to seek

18  disqualification of Quinn Emanuel as Mattel's counsel.  In addition to the spoliation

19  issue, Mattel has a right to discovery relevant to defend the disqualification claim.

20

21      C.   **Requests Seeking Information About MGA's Theft Of Trade**

22           **Secrets Through Mattel Employees Is Relevant.**

23          Mattel's Counterclaims regarding MGA's trade secret theft center

24  around MGA's communications with persons whom Mattel employed at the time of

25

26  _____

27  [29]  *Id.*, Exh. 21 (Court Order re Spoliation dated Aug. 27, 2007).
    [30]  *Id.*, Exh. 9 ¶ 4 (Gronich Dec.).

28  [31]  *See* Background § A(2).

07209/2417535.5

MATTEL'S MOTION RE CHRISTENSEN GLASER

1 the communications and payments to those persons.[32]   Mattel seeks this information

2 through one narrow Topic asking about communications with Mattel employees and

3 one narrow Request seeking information about payments to persons who at the time

4 worked for Mattel.[33]

5

6      **D.**   <u>**MGA's Payments to Witnesses.**</u>

7           Information is relevant and discoverable if it relates to "the credibility

8 of any witness." <u>Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc.</u>,

9 175 F.R.D. 646, 650 (C.D. Cal. 1997).  Evidence of bias is also relevant and

10 discoverable. <u>United States v. Abel</u>, 469 U.S. 45, 50-51 (1984); see also Wright &

11 Miller, Federal Practice & Procedure:  Federal Rules of Evidence § 6095 (bias is a

12 "particularly favored basis for attacking credibility," and "circumstantial evidence of

13 bias" may include evidence of the "payment of bribes or fees").  The Discovery

14 Master has already ruled that payments from MGA to Farhad Larian, for example,

15 are relevant to this action and discoverable.  Similarly, the Discovery Master has

16 found to be discoverable documents related to MGA's transfers of money or other

17 things of value to other witnesses in this action such as Carter Bryant because they

18 go to his credibility or bias.[34]

---

[32] *Id.*, Exh. 18 ¶¶ 37-81.
[33] *Id.*, Exh. 13 at Request No. 19 and Topic 9.
[34] *Id.*, Exhs. 19, 20.

11

MATTEL'S MOTION RE CHRISTENSEN GLASER

## II.   CHRISTENSEN'S IDENTICAL BOILERPLATE OBJECTIONS ARE UNSUBSTANTIATED AND UNFOUNDED.

### A.   Ninth Circuit Law Confirms That The Information Mattel Seeks Is Not Privileged.

A primary excuse Christensen Glaser asserts for refusing to appear for deposition is that most or all of the information it could provide would be privileged.[35]  Christensen Glaser made this assertion before the Court denied its request to limit its deposition to just one Topic.  The assertion is unfounded as to the specific Topic Christensen Glaser referred to—its receipt of the Agreement from Ms. O'Connor—and it is unfounded as to every other one of Mattel's Topics and Requests for which Mattel seeks relief here.  Judge Larson had rejected the propriety of blanket assertions of privilege, dictating that privilege must be addressed on a question by question basis.  Preliminarily, Mattel's Requests and Topics expressly limit the documents at issue to the time period prior to April 27, 2004, when this action commenced.[36]

#### 1.   Documents or Communications That Christensen Glaser Shared With Bryant or Other Witnesses, Or Their Counsel, Are Not Privileged.

The Topics and Requests for which Mattel seeks relief also encompass information that MGA and Larian or their attorneys, on the one hand, and Bryant or his attorneys, on the other, exchanged.  For example, Request No. 1 expressly seeks versions of the Agreement that MGA and Bryant exchanged as well as Christensen Glaser and/or MGA's communications with Bryant relating to the Agreement.[37]  The same applies to, for example, Topic No. 5, which seeks contracts or agreements

---

[35] *Id.* Exh. 15 (Jan. 24, 2008 Ltr. from Gizer to Price)
[36] *Id.,* Exh. 13.
[37] *Id.,* Request No. 1. *See also* Separate Statement.

12

1   between Mattel and Bryant or other persons—such documents of course cannot

2   plausibly constitute an MGA—Christensen Glaser attorney-client communication.[38]

3           Such information is not privileged because those parties were on

4   opposite sides of contract negotiations.  See, e.g., Unocal Corp. v. U.S., 2005 WL

5   3736952, at *3 (N.D.Cal. 2005) (documents shared with a third party are not

6   protected by the attorney-client privilege); Softview Computer Prods. Corp. v.

7   Haworth, Inc., 2000 WL 351411, at *15 (S.D.N.Y. 2000) ("Drafts of documents

8   prepared by an attorney for transmission to third parties are protected by the

9   attorney-client privilege only where the draft document contains confidential

10  information communicated by the client to the attorney that is maintained in

11  confidence.") (emphasis added).

12          Similarly, documents Farhad Larian showed Mattel that are now in

13  Christensen Glaser's possession cannot fall under any claim of privilege.[39]  The

14  same applies to (i) communications between Christensen Glaser or MGA, on the

15  one hand, and Mattel employees or any other person who at the time was not

16  employed by MGA;[40] (ii) or fee or indemnification agreements that Christensen

17  Glaser shared with such persons with respect to this litigation or otherwise.[41]

18          **2.      Christensen Glaser's Receipt and Knowledge Of The Bryant-**
            **MGA Agreement O'Connor Sent It Is Not Privileged Under**
19          **Any Circumstances.**

20          With respect to Ms. Glaser's receipt of at least one version of the

21  Agreement, even if MGA did not share that particular version with Bryant, the

22  version itself and Christensen Glaser's knowledge thereof is not privileged.  In

**REDACTED**            , Larian waived any right to rely on privilege to stonewall any

25  _____

26  [38]  *Id.*, Topic No. 5.  *See also* Separate Statement.

27  [39]  *Id.*, Request No. 17 and Topic No. 8.
    [40]  *E.g., Id.*, Topic 9.

28  [41]  *E.g., Id.* Topics 19, 20.

1 | further inquiry on this issue from a witness with clear knowledge about it. When a
2 | party raises a claim which in fairness requires disclosure of the protected
3 | communication, the privilege may be implicitly waived." <u>Chevron Corp. v.</u>
4 | <u>Pennzoil Corp.</u>, 974 F.2d 1156, 1162 (9th Cir. 1992) (citation omitted).

8 |
9 |
10 |

# REDACTED

11 |                                                       Christensen Glaser thus appears to
12 | have unique information that can clarify the contradiction in Larian's and
13 | O'Connor's testimony. Attempts to rely on the attorney-client privilege to prevent
14 | such testimony from entering the record are a perfect example of improperly using
15 | the attorney-client privilege as both a shield and a sword. By "assert[ing] claims the
16 | opposing party cannot adequately dispute unless it has access to the privilege
17 | materials," <u>Bittaker v. Woodford</u>, 331 F.3d 715, 719 (9th Cir. 2003), MGA and
18 | Larian waived the privilege on this issue. Because the waived privilege belongs to
19 | MGA and Larian, of course, Christensen cannot assert the privilege either.

20 |         **3.**    **<u>Christensen Glaser's Work Product Applies Only To Work Created In Anticipation Of Litigation.</u>**
21 |
22 |         Finally, information Christensen Glaser created during or after the
23 | contract negotiations with respect to the Agreement, even if it did not share it with
24 | Bryant, may well not be work product. The work product doctrine protects
25 | "documents and tangible things that are ***prepared in anticipation of litigation or for trial*** by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)
26 |

27 |    [42]  *See* Background §.
28 |    [43]  Albán Dec., Ex. 2 (I. Larian Depo Tr.); Background § A(1).

1    (emphasis added).  This requirement—that only documents prepared in anticipation

2    of litigation can be protected work product—is unequivocal, as controlling Ninth

3    Circuit authority makes clear.  Matter of Fischel, 557 F.2d 209, 212 (9th Cir. 1977)

4    (attorney's summaries of client's financial transactions with third parties were not

5    protected work product because such summaries were not prepared in anticipation

6    of litigation); see also United States v. Torf, 357 F.3d 900, 908 (9th Cir. 2004)

7    ("anticipation of litigation" has been defined in the Ninth Circuit as preparation of a

8    document "because of the prospect of litigation'); 8 Wright, Miller, and Marcus,

9    Federal Practice and Procedure Civil 2d § 2024 (citing Fed. R. Civ. P. 26(b)(3)) (to

10   qualify as work product, the materials must be "prepared in anticipation of litigation

11   or for trial").

12

13       **B.      Christensen Glaser Has Unique Information Regarding The Topics**

14              **and Requests At Issue.**

15              Another excuse Christensen uses to refuse to appear for deposition is

16   that Mattel can obtain all of the information it seeks publicly or from the parties.

17   Mattel here does not seek from Christensen Glaser public information or

18   information the parties have already produced.  Christensen Glaser, however,

19   ignores the obvious fact that it has unique information.  As indicated above,

                        **REDACTED**
                                                Christensen Glaser

22   has information that will resolve that apparent conflict to this central issue.

23              **REDACTED**

25              The same applies to information regarding

              and MGA's threat, via Christensen Glaser, to disqualify Quinn Emanuel as

27   Mattel's counsel.  I **REDACTED**          e, but Christensen Glaser has

28   never confirmed that it does not have at least some the documents **REDACTED**

1   This includes the documents Mr. Larian shared with Mattel **REDACTED**

2   .[44]  Likewise, only Christensen Glaser appears to have documents

3   and information showing its bases for the disqualification threat, including its own

4   direction to tape or video record Mattel employees or counsel.[45]  Furthermore, as to

5   this surveillance, Christensen Glaser cannot claim it constitutes protected work

6   product.  *See, e.g.,* Chapman & Cole v. Itel Container Int'l. B.V., 865 F.2d 676, 686

7   (5th Cir. 1989) ("the clandestine taping of a telephone conversation implicitly

8   waives the protection of the work product doctrine...").

9

10   **C.**   **Mattel's Requests Are Not Unduly Burdensome, Especially In**

11   **Light Of The Critical Relevance Of The Requests.**

12   "The burden of showing that a subpoena is unreasonable and

13   oppressive is upon the party to whom it is directed." Goodman v. U.S., 369 F.2d

14   166, 169 (9th Cir. 1966); Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283

15   (C.D. Cal. 1998); A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D.

16   Cal. 2006); Flatow v. The Islamic Republic of Iran, 202 F.R.D. 35, 36 (D.D.C.

17   2001); Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir.

18   1984).  Here, Christensen Glaser does no more than assert identical objections to

19   every single Request and Topic.  Christensen Glaser does not come close to meeting

20   its burden in this respect.

21   Christensen Glaser purports to object to the subpoena as burdensome in

22   part because other parties possess the information.[46]  First, as shown above,

23   Christensen Glaser is the only source of information Mattel can access to ascertain

24   **REDACTED**

25   Furthermore, "a person may not avoid a subpoena by saying that the evidence

26

27   [44] *Id.,* Exh. 13.
    [45] *Id.*

28   [46] *Id.,* Exh. 14.

07209/2417535.5

16

1  sought from him is obtainable from another." <u>State Farm Mut. Auto. Ins. Co. v.</u>

2  <u>Accurate Medical, P.C.</u>, 2007 WL 2993840, at *1 (E.D.N.Y. 2007) (quoting <u>Covey</u>

3  <u>Oil Co. v. Continental Oil Co.</u>, 340 F.2d 993, 998 (10th Cir. 1965)); <u>see also</u> <u>In re</u>

4  <u>Bergeson</u>, 112 F.R.D. 692, 695 (D. Mont. 1986) (conclusory assertions that

5  documents sought are available from others more economically "does not constitute

6  a showing of unreasonableness or oppressiveness."); <u>Plant Genetic Systems, N.V. v.</u>

7  <u>Northrup King Co., Inc.</u>, 6 F. Supp. 2d 859, 861-862 (E.D. Mo. 1998) (third party

8  subpoena proper where information sought pertained to central issue in underlying

9  claim, it was not burdensome in light of plaintiff's diligent efforts to obtain

10  information from defendant, and nonparty signed protective order prohibiting

11  information from being seen by plaintiffs' counsel or nonparty's competitors).

12

13  **<u>Conclusion</u>**

14  For the foregoing reasons, Mattel respectfully requests that the

15  Discovery Master compel Christensen to appear for deposition and to produce

16  documents pursuant to each of the Requests and Topics set forth in Mattel's

17  subpoena.

18

19  DATED: February 29, 2008     QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

20

21                              By s:/Jon D. Corey

22                                 Jon D. Corey
                                   Attorneys for Mattel, Inc.

07209/2417535.5

17