# EXHIBIT 19

CONFORMED COPY

FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA  94111
415-774-2611
415-982-5287 (fax)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I. INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1] Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT ___19___

PAGE ___386___

1-26

REDACTED

EXHIBIT ___**19**___

PAGE ___**387**___

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel

Production of Documents is GRANTED.

## II. BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly

lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made

commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of

Bratz dolls now rival Mattel's Barbie doll.

A. Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed

suit against its former employee Bryant in state court asserting claims for breach of contract,

breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel

employed Bryant as a product designer from September 1995 through April 1998, and from

January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee

Confidential Information and Inventions Agreement which required him not to engage in any

employment or business other than for Mattel, or invest or assist in any manner any business

competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel

all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his

employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that

he had not worked for any of Mattel's competitors in the prior twelve months and had not

engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of

any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for

a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 19

PAGE 388

2

provide product design services on a "top priority" basis.[2] The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA. Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel. In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction). Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA. The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls. In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls. In August of 2004, the district court remanded the action.

B. Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement. Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

---

[2] Bryant has already produced his agreement with MGA. Therefore, the existence of the agreement does not appear to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT ___19___

PAGE ___389___

C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking
federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a
federal question because events occurring since the first removal and remand demonstrated that
Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by
the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and
Mattel were citizens of different states and the amount in controversy exceeded the $75,000
jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of
removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint
in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's
copyrights in a project known as "Toon Teens."

E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition
claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and
other Bratz products, Bratz television commercials, and Bratz packaging.

F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the
district court issued an order denying the motion to remand and certifying the order for
interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of
2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district
court ruling. After the stay was lifted the district court consolidated all three actions for all
purposes. There is no scheduling order currently in place.

### G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

### H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

### I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

EXHIBIT 19
PAGE 391

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to compel. The parties informed the court that they would submit a stipulation and order. See Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel Production of Documents, counsel will be submitting a stipulation and order which will be dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to memorialize the parties' meet and confer session, but were unable to reach final agreement because Bryant insisted upon including the following sentence in the stipulation: "The stipulation resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23. From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel waive its right to all further discovery in connection with its requests. Mattel proposed the following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in this Stipulation shall preclude or limit Mattel from seeking further discovery on any matter, including as to matter on which the parties could not reach complete agreement, or preclude or limit any right of Bryant to object or resist to such discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was unacceptable to Bryant. At the direction of the Discovery Master, the parties met and conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

EXHIBIT 19
PAGE 392

6

1,600 pages of documents to date. Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3] Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

    J.   Mattel's Motion to Compel Production of Documents

    Mattel's motion has three parts. First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents: (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel. Mattel's Motion at 6. Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

    Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations. According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3]   According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear. Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed. Mattel again obtained a court order compelling the deposition and sanctions. To date, only Bryant and Larian have been deposed.

EXHIBIT ___19___

PAGE ___393___



7

his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel. He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004. Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of 2004, he produced the following categories of documents: documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4] There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center. MGA denies the accusation.

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT 19

PAGE 395

requests and that the stipulation controlled to the extent they were inconsistent. Bryant's Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process and asks the Discovery Master to order the disposition of this motion in a manner consistent with the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks the Discovery Master to order Mattel not to revisit any of the requests that were the subject of Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone records and financial information because these records are protected by privacy rights. Lastly, Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit was filed.

### III. DISCUSSION

A. The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

The parties' extensive submissions make it clear that the parties did not resolve the issues raised in the instant motion. The parties met and conferred extensively and in good faith, reaching compromises on virtually all categories of documents in dispute. Despite their efforts, however, the parties were ultimately unable to execute a binding stipulation because they were unable to agree on any provision to govern Mattel's future right to pursue additional discovery from Bryant. It is clear that the parties deemed it necessary to include such a provision in the draft stipulation in order to protect their respective positions. Because the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

1    Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by

2    the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

3          Furthermore, because the parties met and conferred in good faith and because they had a

4    legitimate dispute over language governing Mattel's future right to pursue additional discovery

5    from Bryant, the Discovery Master denies Mattel's request for sanctions.

6

7          B.   Rule 26 of the Federal Rules of Civil Procedure

8          Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

9    discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

10   party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

11

12   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

13   Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

14   unreasonably cumulative or duplicative, or is obtainable from some other source that is more

15   convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

16

17   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

18   expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

19   the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

20   the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

21

22   26(b)(2).

23         C.   Mattel's Requests for Production

24              Request Nos. 2, 13, 48: Documents Relating to Bryant's Agreements with MGA

25         Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related

26

27   agreements. Bryant is withholding responsive documents, including (a) documents relating to his

28   Bratz agreements with MGA other than final signed agreements, including communications

29   exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

EXHIBIT    19

397

1  agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel

2  other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c)

3  documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating

4  to this action.

5
6      The Discovery Master finds that the withheld documents are relevant to Mattel's claims.

7  Among other things, the withheld documents could establish the timing, nature and scope of

8  Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages.  In

9  addition, the withheld documents could be used for impeachment purposes.  Further, documents

10
11  relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate

12  bias and lack of credibility.  Bryant has failed to establish that the requested discovery is barred

13  by Rule 26(b)(2), Fed.R.Civ.P.  Accordingly, Bryant is ordered to produce all non-privileged

14  documents responsive to Request Nos. 2, 13, and 48.

15
16      Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55:  Documents Relating to Bratz's

17      Development and Other Projects that Bryant Worked on for MGA

18      Mattel seeks documents relating to the Bratz project and any other projects Bryant worked

19  on for MGA.  Bryant produced documents relating only to the First Generation Bratz dolls.

20
21  Bryant is prepared to produce additional documents relating to work he performed for MGA prior

22  to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant

23  breached his employee agreement by allegedly performing services for Mattel and MGA at the

24  same time.  Bryant objects to the requests to the extent they seek any additional documents on

25  relevancy and overbreadth grounds.

26
27      The Discovery Master finds that Mattel's requests seek relevant information and are not

28  overbroad.  The lawsuit is much broader than the First Generation Bratz dolls issued in June 30,

29  2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12


EXHIBIT __19__
PAGE **398**

1   employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel

2   also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's

3   confidential and proprietary information, not just information relating to the Bratz dolls released

4   in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz

5   works – works that are allegedly owned by Mattel because they were created while Bryant was

6   

7   employed by Mattel – through his ongoing conduct of reproducing and creating derivative works.

8   Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request

9   Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

10          Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46: Documents Relating to Bryant's

11  

12          Payments from MGA

13          Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges

14  that Mattel is entitled to know how much money Bryant has earned from MGA, and represents

15  that he has produced, in redacted form, all royalty statements he has received related to the First

16  

17  Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are

18  justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product,

19  which information Bryant believes constitutes MGA's trade secret information. Bryant also

20  objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the

21  

22  returns. Bryant's Opposition at 29:21-27.

23          The Discovery Master finds that documents relating to MGA's payments to Bryant,

24  including royalty statements and other payment information, are relevant to several Mattel claims.

25  First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach

26  

27  of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant

28  received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA

29  and others might be traceable to work Bryant performed while employed by Mattel, regardless of



when the payments were actually made. Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement. Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works. Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages. 17 U.S.C. §504(b). The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market. For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation. Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel. Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant. Among other things, the protective order provides protection for confidential trade secret information. It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only." The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

 - Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46. Bryant,

EXHIBIT 19
PAGE 400

however, is not required to produce tax returns, provided that he otherwise fully complies with these requests as ordered.

Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

Mattel seeks production of Bratz-related communications and communications with MGA. More specifically, Mattel seeks production of four categories of documents Bryant has refused to produce: (1) communications between Bryant and MGA or third parties that explicitly relate to designs Bryant created while employed by Mattel; (2) communications between Bryant and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment; and (4) communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant contends that the discovery requests for communications between Bryant and MGA are overbroad. Bryant asserts that there are many former Mattel employees and friends of his who have privacy rights that would be impinged upon if he were to disclose his communications. Bryant also asserts that he has his own confidentiality interest regarding any information that he shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they would require him to reveal the identity of current Mattel employees seeking employment with MGA or Bryant.

The Discovery Master finds that Mattel's requests for all communications between Bryant and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential" private information about current or former employees, contractors or vendors (including employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __19__

PAGE __401__

15

privileged documents responsive to Request Nos. 20, 23, 27, and 28. However, Bryant may

continue to redact his telephone records, and shall provide a signed verification that none of the

telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project

that Bryant worked on, with, for, or on behalf of MGA. Telephone calls that do not relate or refer

in any way to MGA or Bratz are irrelevant.

Request Nos. 49, 51: Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them.

Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

Request No. 9: Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and

registrations and applications for registration. Bryant deems the motion moot with respect to

Request No. 9 because he agrees to produce any patent, copyright and trademark applications,

registrations or other non-privileged documents in his possession, custody or control that

constitute or relate to such applications and registrations obtained or applied in connection with

(1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation

Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA

during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz

limitation is improper. Therefore, Bryant is ordered to produce all non-privileged documents

responsive to Request No. 9.

IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1. Mattel's motion to compel production of documents responsive to its First Set of

Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

16

EXHIBIT   19

402

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2.  Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3.  Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4.  Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5.  Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6.  Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7.  Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT  19
PAGE  403

17

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjakian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjakjian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

EXHIBIT __19__

PAGE __404__

# EXHIBIT 20

CONFORMED COPY
LODGED                      FILED

2007 MAY 16  PM 1: 59    2007 MAY 16  PM 2: 00

1    Hon. Edward A. Infante (Ret.)        CLERK U.S. DISTRICT COURT   CLERK U.S. DISTRICT COURT
     JAMS                                 CENTRAL DIST. OF CALIF.     CENTRAL DIST. OF CALIF.
2    Two Embarcadero Center                      RIVERSIDE                   RIVERSIDE
     Suite 1500
3    San Francisco, California  94111     BY_____       BY_____
     Telephone:   (415) 774-2611
4    Facsimile:   (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                          EASTERN DIVISION

10

11   CARTER BRYANT, an individual,        CASE NO. C 04-09049 SGL (RNBx)
                                          JAMS Reference No. 1100049530
12          Plaintiff,

13          v.                            Consolidated with
                                          Case No. CV 04-09059
14   MATTEL, INC., a Delaware corporation, Case No. CV 05-2727

15          Defendant.                    ORDER GRANTING MATTEL'S
                                          MOTION TO COMPEL PRODUCTION
16                                        OF DOCUMENTS AND
                                          INTERROGATORY RESPONSES BY
17   CONSOLIDATED WITH                    MGA
     MATTEL, INC. v. BRYANT and
18   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
19

20

21                         I.  INTRODUCTION

22          On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

23   of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February

24   20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

25   reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under

26   submission pending the parties' submission of a proposed protective order, which was received

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                              EXHIBIT ____20____

                              PAGE ____465____

1 | on April 23, 2007. Having considered the motion papers and comments of counsel at the hearing,

2 | Mattel's motion to compel is granted.

3 | ## II. BACKGROUND

4 | A. Requests for Documents

5 | In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6 | became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7 | categories of documents, to be produced in ten days. MGA filed a motion to quash, which the

8 | court granted because of the short amount of time provided for compliance with the subpoena.

9 | The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10 | some of Mattel's requests. In particular, the parties agreed to limit production to the "first

11 | generation" Bratz dolls. On August 12, 2004, MGA produced documents.

12 | In 2005, the parties stipulated to supplementing their document productions on May 16,

13 | 2005. Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14 | In September of 2006, MGA made a supplemental production of documents. On February

15 | 5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16 | with legibility problems. On February 20, 2007, MGA produced an additional 224 pages of

17 | documents to replace earlier produced documents with legibility problems.

18 | Mattel now moves to compel MGA to produce documents responsive to its requests. As a

19 | preliminary matter, Mattel contends that MGA's production is deficient because it contains

20 | redactions and cut-off text. Further, Mattel contends that MGA's production is incomplete with

21 | respect to essentially five categories of documents. First, Mattel contends that MGA is

22 | withholding documents relating to the origins of Bratz and Bryant's work for MGA. Mattel

23 | believes that MGA's production is incomplete based upon its review of documents that have been

24 | produced by third party Steven Linker. According to Mattel, Linker's documents from October

25 | of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26 | previously represented. Mattel also contends that MGA's responses to the document requests

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT    20

PAGE    406

1  contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2  responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3  show when certain dates relating to Bratz occurred. Mattel contends that these "carve outs

4  purport to allow MGA to cherry-pick what it will and will not produce to Mattel." Mattel's

5  Separate Statement at 17:11-13. Mattel also contends that the carve-outs fail to provide notice of

6  what is or is not being withheld. Mattel also contends that MGA's objections based upon its

7  confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8  protective order in place. In addition, Mattel contends that MGA's objection to producing

9  documents relating to activities or conduct in foreign countries is wholly improper because those

10 documents may contain information relevant to Mattel's claims.

11         Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12 such documents relate to the "first generation" Bratz dolls. Mattel argues that whether the work

13 ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14 discovery purposes. Mattel contends that the works created by Bryant during his Mattel

15 employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16 a Bratz doll released at a particular time.[1]

17         Mattel next contends that MGA is improperly withholding documents about designs

18 Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19 be derivative of work he did when employed by Mattel. Mattel contends that it is entitled to

20 explore whether such works and the profits from Bratz dolls other than the "first generation"

21 Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22 and damages. Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23 improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24 information as well as MGA's unfair competition claims.

25

26         [1]  Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
   to compel Bryant to produce documents.

27

28 Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

EXHIBIT 20
PAGE 407

3

1   Mattel also asserts that MGA is improperly withholding documents relating to products,
2   services and matters other than those relating to "dolls." According to Mattel, it has evidence that
3   Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by
4   Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the
5   Inventions Agreement.

6   Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just
7   payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant
8   because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;
9   (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual
10  damages; and (3) payments may show when and what trade secret information Bryant and other
11  defendants allegedly misappropriated from Mattel.

12  Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel
13  contends that all agreements between Bryant and MGA are relevant, not just the original
14  September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all
15  documents relating to MGA and Bryant's alleged joint defense agreement because such
16  information would be relevant to demonstrate bias and lack of credibility.

17  Fifth, Mattel seeks production of all declarations, affidavits and other sworn written
18  statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such
19  information may reveal relevant information about the date of creation of Bryant's Bratz
20  drawings.

21  In response, MGA denies withholding responsive documents and asserts that it has
22  produced volumes of documents responsive to Mattel's requests. In particular, MGA represents
23  that it has produced all responsive and relevant documents that it was able to locate in response to
24  request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even
25  before the motion was filed, it had agreed to address the vast majority of the issues raised in this
26  motion. In particular, MGA represents that it is diligently working to produce documents related
27
28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)



4

1   to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,
2   49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100. MGA represents that it informed
3   Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that
4   have been released on the market. In addition, MGA represents that it has agreed to produce
5   documents relevant to Bratz or Prayer Angels that it received from Union Bank. More
6   specifically, MGA represents that it agreed to review and produce documents provided to it by
7   Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for
8   Bratz or Prayer Angels. MGA also represents that it has agreed to produce royalty statements.
9   Therefore, MGA views the motion as unnecessary.

10      MGA next contends that Mattel's motion should be denied for the following additional
11  reasons. First, MGA contends that Mattel is not entitled to MGA's product design documents for
12  unreleased products. MGA asserts that its product design documents for its unreleased toy
13  concepts are among its most highly valuable trade secrets. Furthermore, MGA contends that
14  designs and drawings for products currently under development, over six years after Bryant first
15  created his original Bratz drawings, have no relevance to any of Mattel's claims. In the event that
16  documents relating to unreleased products are ordered produced, MGA requests a protective order
17  under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically
18  than the current protective order provides. In the alternative, MGA requests that any order
19  compelling production of documents relating to unreleased products should essentially be stayed
20  until after MGA's products are publicly released.

21      Second, MGA contends that Mattel is not entitled to information concerning Bryant's
22  attorneys' fees because the information is privileged. Furthermore, MGA contends that the
23  information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24
25
26
27
28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                        5

                                            $2b$

                                            $409$

1   in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2   Opposition at 24:9-12.[2]

3       Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4   and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5   refused to produce similar types of documents. More significantly, MGA contends that Mattel's

6   requests for non-public witness statements are "a blatant attempt to avoid the discovery

7   limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8   imposed by this Court." MGA's Opposition at 25:6-7. MGA explains its position as follows.

9   MGA is involved in litigation against a number of counterfeiters and infringers in Asia. In 2003,

10   Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11   attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12   abandoned its claims based upon "Toon Teens" in this court. Thereafter, those defendants took

13   the position that MGA did not own, and therefore could not enforce, the rights to Bratz. MGA

14   was thus forced to litigate the issue of ownership. MGA contends that "[i]n effect, by prompting

15   foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16   a situation in which MGA has been forced to give testimony and provide evidence related to

17   issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

18       Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19   dispute between MGA's chief executive officer and his brother because such documents are in no

20   way relevant to this lawsuit. MGA explains that the brothers were involved in an arbitration

21   proceeding relating to MGA's CEO's purchase of his brother's interest in MGA. Moreover,

22   MGA contends that the brothers were bound by a protective order prohibiting the use of any

23   documents or testimony for any purpose other than the arbitration.

24

25

26     [2] Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the

  request.

27

28   Bryant v. Mattel, Inc.,
  CV-04-09049 SGL (RNBx)

6

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2  files because they contain confidential information and are not relevant to the lawsuit. Sixth,

3  MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4  in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd. Lastly,

5  MGA objects to producing documents relating to any testing performed to determine the date that

6  Bratz documents were created. MGA contends that such discovery is premature and should not

7  proceed until experts are designated.

8    B. Interrogatories

9    On April 28, 2005, Mattel served its Second Set of Interrogatories. On May 20, 2005,

10  however, the district court stayed the action. On May 17, 2006, the district court lifted the stay.

11  On May 30, 2006, MGA responded to the interrogatories.

12    Mattel contends that MGA's responses to the interrogatories were untimely. Further,

13  Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14  because they lack substantive information and consist almost entirely of objections. MGA

15  responds that the motion is moot because it is prepared to provide supplemental responses to its

16  interrogatories. MGA does not otherwise assert any additional grounds for opposing Mattel's

17  motion to compel responses to interrogatories.

18                                    III. DISCUSSION

19    A. Rule 26 of the Federal Rules of Civil Procedure

20    Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22  party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

23  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24  Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28

EXHIBIT 20

411

1 opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2 expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3 the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4 the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5 26(b)(2).

6     B. Document Requests

7         1. Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8           34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9     The requests above seek discoverable information regarding the origins of Bratz and

10 Bryant's work for MGA. MGA represents that it has produced all responsive documents in

11 response to request nos. 6, 26, 27, 32, 33, 34, 35, 55, and 69 (MGA's Opposition at 13:4-5), and is

12 "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13 and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14 14:1-4 and note 39). MGA does, however, object to producing design documents for unreleased

15 products and documents from MGA Hong Kong.

16     As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17 its production to "relevant and responsive non-objectionable documents" or documents

18 "sufficient" to show when events relating to Bratz occurred. These restrictions suggest that MGA

19 might be excluding documents that are responsive to the request based upon its unilateral

20 determination of what is "relevant" or "sufficient." Mattel shall provide the responses to

21 document requests ordered herein without these restrictions.

22                 Design Documents for Unreleased Products

23     MGA's design documents for unreleased products are relevant to Mattel's claims and

24 defenses and must be produced. See Order Modifying Protective Order. On April 23, 2007, the

25 parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26 design documents for unreleased products that constitute trade secret information. See Stipulation

27

28

1 | to Modify Protective Order; And Proposed Order Thereon ("stipulation"). The parties' stipulation

2 | has been approved and entered as an order of the court. MGA is ordered to produce design

3 | documents for unreleased products that are responsive to Mattel's document requests in

4 | accordance with the terms of the stipulation and order.

5 | Documents from MGA Hong Kong

6 | Documents relating to activities or conduct in foreign countries are relevant and

7 | discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8 | Bratz. Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9 | provides reciprocal discovery from its subsidiaries.

10 | Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11 | the context of this motion, and therefore is not addressed herein. MGA is ordered to produce

12 | documents from MGA Hong Kong.

13 | Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14 | 64, 69, 96, 97, 98, 99, 100.

15 | 2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16 | 61, 63, 66, 67, 70, 88, 90, 91

17 | Mattel contends that MGA is improperly limiting its document production to the "first

18 | generation" Bratz dolls. MGA represents, however, that it has agreed to produce subsequent

19 | generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20 | documents for yet unreleased products.

21 | As stated previously, design documents for yet unreleased products are relevant and

22 | discoverable. See Order Modifying Protective Order. Accordingly, MGA is ordered to produce

23 | all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24 | 59, 61, 63, 66, 67, 70, 88, 90, and 91.

25 | //

26 | //

27 |

28 |

EXHIBIT **20**

DATE **413**

9

1

      3. MGA's Payments to Bryant (Nos.43, 45)

2

      MGA represents that it has already agreed to produce documents related to Bratz, without

3

limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless,

4

Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's

5

motion is granted with respect to request nos. 43 and 45.

6

      4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

7

      MGA represents that it has already agreed to produce non-privileged documents

8

responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not

9

relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or

10

indemnity agreements between MGA and Bryant .

11

      Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility.

12

Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any

13

responsive documents withheld on the basis of a privilege must be properly identified in a

14

privilege log.

15

      5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40,

16

      41,

17

      In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits,

18

and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel

19

anticipates that these documents could provide evidence relating to the conception date for Bratz.

20

      Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception

21

date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against

22

alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the

23

arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother

24

Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

25

---

26

    [3]  Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

27

28

             20

             414

1   that MGA was developing Bratz by early 2000. Nevertheless, MGA objects to producing

2   documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3   protective order that prohibits the use of any documents or testimony for any purpose other than

4   the arbitration. MGA, however, has not provided any evidence of the protective order.

5   Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6          6. Documents Regarding Date-Testing (Request No. 92)

7          Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8   from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9   testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto." MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12         The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports. The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P. Accordingly, Mattel's motion is granted as to request no. 92.

15         C. Interrogatories

16         Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories. Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service. In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005. The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served. The district court lifted the stay on May 17, 2006.

22

23

24

25

26    [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's
      personal file based upon privacy grounds. The personnel file may have documents relevant to Bratz, and therefore
27    should be produced. The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

28
      Bryant v. Mattel, Inc.,                                    20                              11
      CV-04-09049 SGL (RNBx)
                                                                 415

1    Neither party has cited to any caselaw governing the calculation of the 30-day period
2    when there is an intervening stay in discovery. In the absence of any caselaw, MGA's responses
3    will be treated as timely in order to preserve any valid objections MGA may have asserted.

4    Interrogatory No. 5 seeks the identity of each and every person who was involved in the
5    conception, origin, creation, design, development, sculpting, engineering, reduction to practice,
6    tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz
7    before December 31, 2001, including a description of each person's role and the start and end
8    dates of each person's involvement. In response, MGA asserted numerous objections, but did
9    provide the names of five individuals.

10   The interrogatory clearly seeks information relevant to the claims at issue. MGA's
11   objections are without merit. The interrogatory is not vague, ambiguous, compound or overbroad.
12   Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls
13   for confidential, proprietary or commercially sensitive information, or seeks information
14   protected by the attorney-client privilege. Furthermore, MGA's response is incomplete insofar as
15   it fails to provide the description of each person's role and the start and end dates of each person's
16   involvement. Accordingly, MGA is ordered to provide a complete response to Interrogatory No.
17   5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18   Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any
19   embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 6 for
20   the reasons previously discussed in connection with Interrogatory No. 5.

21   Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to
22   December 31, 2001. In response, MGA asserted numerous objections and did not provide any
23   substantive information.

24   MGA's objections are without merit. The interrogatory clearly seeks information relevant
25   to establishing when Bryant first conceived Bratz. The interrogatory is not vague, ambiguous,
26   compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is
27
28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT   **20**
PAGE   **416**

12

1 | unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2 | seeks information protected by the attorney-client privilege. Accordingly, MG is ordered to

3 | provide a complete response to Interrogatory No. 7.

4 |     Interrogatory No. 8 asks MGA to identify each and every embodiment of Angel. MGA is

5 | ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6 | discussed in connection with Interrogatory No. 7.

7 |     Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8 | or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9 | or painting of Bratz. In response, MGA asserted numerous objections and did not provide any

10 | substantive information.

11 |     The interrogatory seeks information relevant to establishing when Bryant first conceived

12 | Bratz. Furthermore, MGA's boiler-plate objections are unsubstantiated. Accordingly, MGA is

13 | ordered to provide a complete response to Interrogatory No. 9.

14 |     Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15 | was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16 | which each such instance occurred, the location of each show or exhibit, and the identity of

17 | persons with knowledge of the shows or exhibits. In response, MGA asserted numerous

18 | objections and provided the following information: Hong Kong Toy Fair in Hong Kong in or

19 | about January 2001 and New York Toy Fair, New York, in or about February 2001.

20 |     Once again, MGA's boiler-plate objections are unsubstantiated. The information is

21 | potentially relevant to establish when Bryant conceived Bratz. Further, the response is

22 | incomplete insofar as it fails to identify any persons with knowledge. Therefore, MGA is ordered

23 | to provide a complete response to Interrogatory No. 10.

24 |     Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25 | including without limitation each office, home and cell phone number, in the name of, for the

26 | benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27 |

28 | Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

**20**

**417**

13

1 │ January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2 │ limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous

3 │ boiler-plate objections.

4 │      Once again, MGA has failed to substantiate any of its objections with supporting

5 │ declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to

6 │ provide a full response to Interrogatory No. 11.

7 │ IV. CONCLUSION

8 │      For the reasons set forth above, Mattel's motion to compel production of documents is

9 │ granted.  MGA shall produce all non-privileged documents that are responsive to the requests

10 │ identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except

11 │ for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's

12 │ motion to compel interrogatory answers is also granted.  MGA shall produce documents and

13 │ provide responses to interrogatories consistent with this Order, and produce a privilege log in

14 │ compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for

15 │ sanctions is denied.

16 │      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17 │ Master, Mattel shall file this Order with the Clerk of Court forthwith.

18 │

19 │

20 │

21 │ Dated: May /5/, 2007

22 │                           HON. EDWARD A. INFANTE (Ret.)

23 │                              Discovery Master

24 │

25 │

26 │

27 │

28 │

EXHIBIT 20

PAGE 418

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California

Anthony Sales

20
419

# EXHIBIT 21

RightFAX                   8/30/2007 2:34    PAGE 002/006   Fax Server

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority ✓      Send ✓
Entered ✓      Closed
JS-5/JS-6 ____  JS-2/JS-3 ____
Scan Only____   Docketed on CM ✓
____THIS CONSTITUTES NOTICE OF
ENTRY AS REQUIRED BY FRCP 77(d)
8/29/07
EASTERN DIVISION
BY____ DEPUTY

# PRIORITY SEND
## & ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL (RNBx)                      Date: August 27, 2007

Title:      CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
==================================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Gina L. Guzman                          Theresa Lanza
            Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker, Esq.                   John B. Quinn, Esq.
(morning session only)                Michael T. Zeller, Esq.
                                      Jon D. Corey, Esq.


ATTORNEYS PRESENT FOR MGA:

Patricia Glaser, Esq.
Diana M. Torres, Esq.

PROCEEDINGS:    **ORDER DENYING MOTION FOR TERMINATING SANCTIONS;
                ORDER DENYING REQUEST FOR INTERLOCUTORY
                APPEAL; ORDER REQUIRING FILING OF AFFIDAVITS RE
                EVIDENCE PRESERVATION**

        This matter is before the Court on MGA's and Carter Bryant's Motion for Terminating
Sanctions, filed on July 24, 2007 (docket #889).  This matter was heard on August 27, 2007, at
which time it was taken under submission.  The Court has considered the moving, opposition, and
reply briefs, as well as the many declarations and other evidence presented by the parties.  The

MINUTES FORM 90                                      Initials of Deputy Clerk _ glg
CIVIL -- GEN                                          Time: 02/52
                                1                    Docket No. 895

EXHIBIT          21
PAGE             420

Court has also considered the arguments presented at the August 27 hearing and the sworn testimony given by Michael C. Moore, in-house counsel for Mattel. Although at the hearing the Court indicated it would defer ruling on the present motion pending further filings by all parties regarding their efforts to preserve evidence, upon further reflection the Court sees no reason to delay ruling on the current motion.[1]  As set forth below, the Court **DENIES** the motion.

Based on their inherent power to sanction for "abusive litigation practices," district courts may impose sanctions against a party who destroys evidence, including the ultimate sanction of dismissal.  Leon v. IDX Systems Corp., 464 F.3d 951, 958 (9th Cir. 2006).  Dismissal is a harsh sanction, which may nonetheless be imposed upon those parties who have "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings."  Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995).  However, before imposing the ultimate sanction of dismissal, district courts should consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."  Id.  Nevertheless, district courts need not make explicit findings regarding each of these factors and, in any event, "a finding of willfulness, fault, or bad faith is required for dismissal to be proper."  Leon, 464 F.3d 951, 958 (9th Cir. 2006) (internal quotation marks and citation omitted).

"A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'"  Id. at 959 (quoting United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002) (finding no willful spoliation where documents were destroyed in the routine course of business).  Neither Leon nor Kitsap elaborate on when a party has the "notice" necessary to trigger the duty to preserve evidence.  However, in In re Napster, Inc. Copyright Litigation, 462 F.Supp.2d 1060, 1068 (N.D. Cal. 2006), the district court presented a persuasive discussion of the standard, first rejecting an argument that the duty to preserve evidence arises only when litigation is "imminent," and then setting forth a lesser standard.  Specifically, the Napster court noted that the duty arose "when a party should have known that the evidence may be relevant to future litigation," and that any such "future litigation" must be "probable," and not merely "possibl[e]." (Internal quotation marks and citation omitted).

Keeping in mind these standards, the Court turns to the categories of evidence MGA and Bryant allege that Mattel has despoiled.  As articulated by the Court at the hearing on this matter, those categories are (1) Mattel employees' emails, (2) documents maintained on the Zeus document storage system, (3) the delay in producing certain Rule 30(b)(6) witnesses, (4) Carter

---

[1]  By the same token, upon further reflection, the Court sees no reason to delay ruling on MGA's request for interlocutory appeal of the present order.  See 28 U.S.C. § 1292(b) (stating that certifications for interlocutory appeal should be set forth in the order to be appealed).  The Court's ruling on that matter appears infra.

MINUTES FORM 90                                         Initials of Deputy Clerk ___gig_____
CIVIL – GEN                                             Time: 02/52
                              2                         Docket No. 895

EXHIBIT    21

PAGE    421

Bryant's missing phone records, and (5) Carter Bryant's missing time records.

In considering the arguments of the parties regarding when Mattel's duty to begin to preserve evidence arose, the Court determines that November 24, 2003, marks the date when litigation between Mattel and Bryant became more than merely speculative and in fact became probable. On this date, in-house counsel for Mattel received in discovery in an unrelated action a copy of a contract between MGA and Bryant that pre-dated Bryant's resignation from Mattel. This contract appeared to violate certain employment agreements executed by Bryant and Mattel, thus giving rise to one of the current consolidated actions. Although prior to this date an internal investigation may have raised a suspicion on Mattel's part that litigation might arise, there was no evidence presented to the Court that Mattel should have known it had a viable claim against Bryant before November 2003. Cf. Fed. R. Civ. P. 11(b)(3) ("By presenting to the court . . . a pleading . . . , an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .").

The Court heard testimony from Michael C. Moore, in-house counsel for Mattel, regarding the efforts to preserve email communications and other evidence. Counsel for MGA and Bryant cross-examined Mr. Moore at the hearing on this matter. The Court credits his testimony. The efforts Mr. Moore described regarding the preservation of emails is reasonable, and certainly does not amount to spoliation. Moore described communications with specific individuals identified by Mattel as those most likely to have information relevant to the litigation and efforts made to preserve any evidence those individuals had in their custody or control. Emails not otherwise archived from the relevant time period – mostly September and October, 2000 – had already been deleted from Mattel's email servers in accordance with its email retention policies. Mattel cannot be faulted for deleting these emails in the regular course of business before it had notice of its claims against Bryant.

In April, 2005, the current litigation took a dramatic turn, when MGA filed suit against Mattel. At that time, all Mattel employees were instructed to maintain any evidence potentially relevant to the litigation. When that suit was filed, Mattel took action to preserve all of its emails, capturing emails that date back to December, 2004. They retain these backup tapes to this day. MGA and Bryant make much of Mattel's failure to suspend its 90-day auto-delete policy regarding emails, but fail to address two key points: First, Mattel altered only the storage mechanism for its emails, it did not actually delete any emails; and second, Mattel, a number of years ago, informed MGA that it was not planning on suspending its 90-day auto-delete policy, and MGA did not at that time object.

As for the Zeus tapes, there is simply no evidence of spoliation. First and foremost, as the system has been described to the Court, the system is a cumulative file system that continues to accumulate. The system is still in operation, does not have an auto-delete function, and

MINUTES FORM 90                                          Initials of Deputy Clerk ___glg_____
CIVIL -- GEN                                             Time: 02/52
                                    3                    **Docket No. 895**

EXHIBIT     21

PAGE        422

information dating back to all relevant time period in this case may be accessed from it. Additionally, Mattel's in-house counsel testified as to the existence of several backup tapes that it can make available to MGA and Bryant. Finally, outside of pure speculation, there is no evidence that anyone has deleted anything from the Zeus system. Although production issues may still remain with respect to these data, preservation of this data, in the Court's view, is simply not an issue based on the record before the Court.

The delay in producing certain Rule 30(b)(6) witnesses is not a proper basis for terminating sanctions in this case. No motions to compel were brought to compel these witnesses's depositions at earlier times, and MGA and Bryant's accusations that the delay in producing them for deposition is part of a cover-up of the destruction of evidence is mere unfounded speculation. Moreover, the Court is mindful that MGA has been found by the discovery master to be guilty of the very same unexcused delay of which it accuses Mattel. See August 14, 2007, J. Infante Order, at 8 and 9 (attached to the Supplemental Proctor Decl. as Ex. 1).

Although Mattel is at a loss to explain the missing phone records from the critical month of October, 2000, there is no evidence that the records were destroyed. Moreover, other evidence presented by Mattel, especially phone records produced by Bryant that show he was in contact with MGA during that time period, suggest that the missing records would not assist Bryant.

The "missing" time records were either never created or were deleted. There is no evidence that the latter occurred. In fact, the only evidence on this point, from Mattel's Rule 30(b)(6) witness, is that although deletion of time records is possible, he was unaware of any instances of that occurring. Artavia Depo. 116, 170-71.

In sum, MGA and Bryant have failed to present any evidence regarding the "willfulness, fault, or bad faith" required to justify the imposition of terminating sanctions. Leon, 464 F.3d at 958. Many of MGA and Bryant's allegations, especially those raised in connection with Mattel's failure to suspend its auto-delete policy (portrayed as a wholesale failure to preserve emails less than 90-days old) and the availability of data from the Zeus system, are nothing more than rhetoric laced with hyperbole. Other allegations, such as Mattel's motive for delaying certain Rule 30(b)(6) depositions, and the destruction of Bryant's October, 2000, phone records and time records, are nothing more than sheer speculation, unsupported by evidence. Although counsel impressed upon the Court MGA's conviction of the righteousness of its cause, such overzealous conviction as witnessed by the Court at the hearing is no substitute for proof.

Accordingly, the Court DENIES MGA's and Bryant's Motion for Terminating Sanctions.

At the hearing, counsel for MGA and Bryant requested the Court certify the present order for interlocutory appeal. That request is DENIED. Permissive interlocutory appeals are governed by 28 U.S.C. § 1292(b):

When a district judge, in making in a civil action an order not otherwise

MINUTES FORM 90
CIVIL — GEN

                                      4

Initials of Deputy Clerk ___glp_____
Time: 02/52
Docket No. 895

EXHIBIT          21

PAGE             423

appealable under this section, shall be of the opinion that such order involves a
controlling question of law as to which there is substantial ground for difference of
opinion and that an immediate appeal from the order may materially advance the
ultimate termination of the litigation, he shall so state in writing in such order.

Id.  Here, there is no "controlling question of law" in controversy.  The law is quite settled.
Accordingly, certification for interlocutory appeal of the present order is unwarranted.

    As stated at the hearing, the Court **ORDERS** all parties to set forth, in affidavit form, their
preservation efforts and policies with respect to the present litigation on or before September 10,
2007.

    **IT IS SO ORDERED.**

MINUTES FORM 90                                    Initials of Deputy Clerk ___glg_____
CIVIL – GEN                                        Time: 02/52
                          5                        Docket No. 895

EXHIBIT        21

PAGE          424

RightFAX                    8/30/2007 2:34      PAGE 001/006    Fax Server

**From:**   Name:         United States District Court
                          312 North Spring Street
                          Los Angeles, CA  90012
            Voice Phone:  (213) 894-5474


**To:**     Name:         Michael Zeller
            Company:
                          865 S Figueroa St, 10th Floor,
            City/State:   Los Angeles, CA 90017-2543
            Fax Number:   213-443-3100



### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

## Automated Document Delivery Service
*Notice pursuant to Rule 77(d) FRCiv.P*
*The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

Fax Notes:

Case 2:04-CV-09049 : CARTER BRYANT V. MATTEL INC

*Pursuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search Warrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents (Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail address for each division is as follows:*

*Western Division:  CrimIntakeCourtDocs-LA@cacd.uscourts.gov*
*Southern Division:  CrimIntakeCourtDocs-SA@cacd.uscourts.gov*
*Eastern Division:  CrimIntakeCourtDocs-RS@cacd.uscourts.gov*

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

**Switch to e-mail delivery and get these documents sooner!**
**To switch, complete and submit**
**Optical Scanning Enrollment / Update form G-76.**
**Call 213-894-5474 for help and free technical support.**

*If you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case, a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for which you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

Date and time of transmission:          Thursday, August 30, 2007 2:34:04 PM
Number of pages including this cover sheet:  06

EXHIBIT        21
PAGE           425

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority _____   Send _____
Entered _____   Closed _____
JS-5/JS-6 _____   JS-2/JS-3 _____
Scan Only_____   Docketed on CM _____
_____THIS CONSTITUTES NOTICE OF
ENTRY AS REQUIRED BY FRCP 77(d)

8/29/07

EASTERN DIVISION
BY_____ DEPUTY

# PRIORITY SEND
### & ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES – GENERAL

Case No.    CV 04-09049 SGL (RNBx)                    Date: August 27, 2007

Title:    CARTER BRYANT -v- MATTEL, INC.
          AND CONSOLIDATED ACTIONS
=================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Gina L. Guzman                          Theresa Lanza
        Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker, Esq.                   John B. Quinn, Esq.
(morning session only)                Michael T. Zeller, Esq.
                                      Jon D. Corey, Esq.

ATTORNEYS PRESENT FOR MGA:

Patricia Glaser, Esq.
Diana M. Torres, Esq.

PROCEEDINGS:    **ORDER DENYING MOTION FOR TERMINATING SANCTIONS;
                ORDER DENYING REQUEST FOR INTERLOCUTORY
                APPEAL; ORDER REQUIRING FILING OF AFFIDAVITS RE
                EVIDENCE PRESERVATION**

        This matter is before the Court on MGA's and Carter Bryant's Motion for Terminating
Sanctions, filed on July 24, 2007 (docket #689). This matter was heard on August 27, 2007, at
which time it was taken under submission. The Court has considered the moving, opposition, and
reply briefs, as well as the many declarations and other evidence presented by the parties. The

MINUTES FORM 90                                    Initials of Deputy Clerk __glg__
CIVIL -- GEN                                        Time: 02/52
                        1                          **Docket No. 895**

EXHIBIT            2 1

PAGE               426

Court has also considered the arguments presented at the August 27 hearing and the sworn testimony given by Michael C. Moore, in-house counsel for Mattel. Although at the hearing the Court indicated it would defer ruling on the present motion pending further filings by all parties regarding their efforts to preserve evidence, upon further reflection the Court sees no reason to delay ruling on the current motion.[1]  As set forth below, the Court **DENIES** the motion.

Based on their inherent power to sanction for "abusive litigation practices," district courts may impose sanctions against a party who destroys evidence, including the ultimate sanction of dismissal. Leon v. IDX Systems Corp., 464 F.3d 951, 958 (9th Cir. 2006). Dismissal is a harsh sanction, which may nonetheless be imposed upon those parties who have "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995). However, before imposing the ultimate sanction of dismissal, district courts should consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Id. Nevertheless, district courts need not make explicit findings regarding each of these factors and, in any event, "a finding of willfulness, fault, or bad faith is required for dismissal to be proper." Leon, 464 F.3d 951, 958 (9th Cir. 2006) (internal quotation marks and citation omitted).

"A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" Id. at 959 (quoting United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002) (finding no willful spoliation where documents were destroyed in the routine course of business)). Neither Leon nor Kitsap elaborate on when a party has the "notice" necessary to trigger the duty to preserve evidence. However, in In re Napster, Inc. Copyright Litigation, 462 F.Supp.2d 1060, 1068 (N.D. Cal. 2006), the district court presented a persuasive discussion of the standard, first rejecting an argument that the duty to preserve evidence arises only when litigation is "imminent," and then setting forth a lesser standard. Specifically, the Napster court noted that the duty arose "when a party should have known that the evidence may be relevant to future litigation," and that any such "future litigation" must be "probable," and not merely "possibl[e]." (internal quotation marks and citation omitted).

Keeping in mind these standards, the Court turns to the categories of evidence MGA and Bryant allege that Mattel has despoiled. As articulated by the Court at the hearing on this matter, those categories are (1) Mattel employees' emails, (2) documents maintained on the Zeus document storage system, (3) the delay in producing certain Rule 30(b)(6) witnesses, (4) Carter

---

[1]  By the same token, upon further reflection, the Court sees no reason to delay ruling on MGA's request for interlocutory appeal of the present order. See 28 U.S.C. § 1292(b) (stating that certifications for interlocutory appeal should be set forth in the order to be appealed). The Court's ruling on that matter appears infra.

EXHIBIT    2 |

PAGE      427

Bryant's missing phone records, and (5) Carter Bryant's missing time records.

In considering the arguments of the parties regarding when Mattel's duty to begin to preserve evidence arose, the Court determines that November 24, 2003, marks the date when litigation between Mattel and Bryant became more than merely speculative and in fact became probable. On this date, in-house counsel for Mattel received in discovery in an unrelated action a copy of a contract between MGA and Bryant that pre-dated Bryant's resignation from Mattel. This contract appeared to Mattel to violate certain employment agreements executed by Bryant and Mattel, thus giving rise to one of the current consolidated actions. Although prior to this date an internal investigation may have raised a suspicion on Mattel's part that litigation might arise, there was no evidence presented to the Court that Mattel should have known it had a viable claim against Bryant before November 2003. Cf. Fed. R. Civ. P. 11(b)(3) ("By presenting to the court . . . a pleading . . . , an attorney

. . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .").

The Court heard testimony from Michael C. Moore, in-house counsel for Mattel, regarding the efforts to preserve email communications and other evidence. Counsel for MGA and Bryant cross-examined Mr. Moore at the hearing on this matter. The Court credits his testimony. The efforts Mr. Moore described regarding the preservation of emails is reasonable, and certainly does not amount to spoliation. Moore described communications with specific individuals identified by Mattel as those most likely to have information relevant to the litigation and efforts made to preserve any evidence those individuals had in their custody or control. Emails not otherwise archived from the relevant time period – mostly September and October, 2000 – had already been deleted from Mattel's email servers in accordance with its email retention policies. Mattel cannot be faulted for deleting these emails in the regular course of business before it had notice of its claims against Bryant.

In April, 2005, the current litigation took a dramatic turn, when MGA filed suit against Mattel. At that time, all Mattel employees were instructed to maintain any evidence potentially relevant to the litigation. When that suit was filed, Mattel took action to preserve all of its emails, capturing emails that date back to December, 2004. They retain these backup tapes to this day. MGA and Bryant make much of Mattel's failure to suspend its 90-day auto-delete policy regarding emails, but fail to address two key points: First, Mattel altered only the storage mechanism for its emails, it did not actually delete any emails; and second, Mattel, a number of years ago, informed MGA that it was not planning on suspending its 90-day auto-delete policy, and MGA did not at that time object.

As for the Zeus tapes, there is simply no evidence of spoliation. First and foremost, as the system has been described to the Court, the system is a cumulative file system that continues to accumulate. The system is still in operation, does not have an auto-delete function, and

MINUTES FORM 90                                    Initials of Deputy Clerk __glg_____
CIVIL -- GEN                                       Time: 02/52
                           3                       Docket No. 895

EXHIBIT ___21___
PAGE ___428___

information dating back to all relevant time period in this case may be accessed from it. Additionally, Mattel's in-house counsel testified as to the existence of several backup tapes that it can make available to MGA and Bryant. Finally, outside of pure speculation, there is no evidence that anyone has deleted anything from the Zeus system. Although production issues may still remain with respect to these data, preservation of this data, in the Court's view, is simply not an issue based on the record before the Court.

The delay in producing certain Rule 30(b)(6) witnesses is not a proper basis for terminating sanctions in this case. No motions to compel were brought to compel these witnesses's depositions at earlier times, and MGA and Bryant's accusations that the delay in producing them for deposition is part of a cover-up of the destruction of evidence is mere unfounded speculation. Moreover, the Court is mindful that MGA has been found by the discovery master to be guilty of the very same unexcused delay of which it accuses Mattel. See August 14, 2007, J. Infante Order, at 8 and 9 (attached to the Supplemental Proctor Decl. as Ex. 1).

Although Mattel is at a loss to explain the missing phone records from the critical month of October, 2000, there is no evidence that the records were destroyed. Moreover, other evidence presented by Mattel, especially phone records produced by Bryant that show he was in contact with MGA during that time period, suggest that the missing records would not assist Bryant.

The "missing" time records were either never created or were deleted. There is no evidence that the latter occurred. In fact, the only evidence on this point, from Mattel's Rule 30(b)(6) witness, is that although deletion of time records is possible, he was unaware of any instances of that occurring. Artavia Depo. 116, 170-71.

In sum, MGA and Bryant have failed to present any evidence regarding the "willfulness, fault, or bad faith" required to justify the imposition of terminating sanctions. Leon, 464 F.3d at 958. Many of MGA and Bryant's allegations, especially those raised in connection with Mattel's failure to suspend its auto-delete policy (portrayed as a wholesale failure to preserve emails less than 90-days old) and the availability of data from the Zeus system, are nothing more than rhetoric laced with hyperbole. Other allegations, such as Mattel's motive for delaying certain Rule 30(b)(6) depositions, and the destruction of Bryant's October, 2000, phone records and time records, are nothing more than sheer speculation, unsupported by evidence. Although counsel impressed upon the Court MGA's conviction of the righteousness of its cause, such overzealous conviction as witnessed by the Court at the hearing is no substitute for proof.

Accordingly, the Court **DENIES** MGA's and Bryant's Motion for Terminating Sanctions.

At the hearing, counsel for MGA and Bryant requested the Court certify the present order for interlocutory appeal. That request is **DENIED**. Permissive interlocutory appeals are governed by 28 U.S.C. § 1292(b):

When a district judge, in making in a civil action an order not otherwise

MINUTES FORM 90
CIVIL -- GEN

4

Initials of Deputy Clerk __glg_____
Time: 02/52
Docket No. 895

EXHIBIT 21

PAGE 429

RightFAX                8/30/2007 2:34    PAGE 006/006    Fax Server

appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Id. Here, there is no "controlling question of law" in controversy. The law is quite settled. Accordingly, certification for interlocutory appeal of the present order is unwarranted.

As stated at the hearing, the Court **ORDERS** all parties to set forth, in affidavit form, their preservation efforts and policies with respect to the present litigation on or before September 10, 2007.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

5

Initials of Deputy Clerk __glg_____
Time: 02/52
**Docket No. 895**

EXHIBIT          21

PAGE          430

'RightFAX                    8/30/2007 2:34    PAGE 001/006    Fax Server

**From:**   Name:        United States District Court
                          312 North Spring Street
                          Los Angeles, CA 90012
            Voice Phone:  (213) 894-5474

**To:**     Name:        Michael Zeller
            Company:

                          865 S Figueroa St, 10th Fl,
            City/State:   Los Angeles, CA 90017-2543
            Fax Number:   213-624-0643



### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

## Automated Document Delivery Service
*Notice pursuant to Rule 77(d) FRCiv.P*
*The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

**Fax Notes:**

Case 2:04-CV-09049 : CARTER BRYANT V. MATTEL INC

*Pursuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search Warrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents (Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail address for each division is as follows:*

*Western Division: CrimIntakeCourtDocs-LA@cacd.uscourts.gov*
*Southern Division: CrimIntakeCourtDocs-SA@cacd.uscouts.gov*
*Eastern Division: CrimIntakeCourtDocs-RS@cacd.uscourts.gov*

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

**Switch to e-mail delivery and get these documents sooner!**
**To switch, complete and submit**
**Optical Scanning Enrollment / Update form G-76.**
**Call 213-894-6474 for help and free technical support.**

*If you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case, a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for which you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

Date and time of transmission:          Thursday, August 30, 2007 2:34:04 PM
Number of pages including this cover sheet:   06

8|29
21
43|

# EXHIBIT 22

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

12  |                                      | CASE NO. CV 04-09049 SGL (RNBx)
    | CARTER BRYANT, an individual,        | JAMS Reference No. 1100049530
13  |                                      |
    |         Plaintiff,                   |
14  |                                      |
    |         v.                           | Consolidated with
15  |                                      | Case No. CV 04-09059
    | MATTEL, INC., a Delaware corporation,| Case No. CV 05-2727
16  |                                      |
    |         Defendant.                   | **ORDER RE MATTEL'S MOTIONS TO**
17  |                                      | **COMPEL FARHAD LARIAN, KAYE**
    |                                      | **SCHOLER AND STERN &**
18  |                                      | **GOLDBERG TO PRODUCE**
    |                                      | **DOCUMENTS**
19  | CONSOLIDATED WITH                    |
20  | MATTEL, INC. v. BRYANT and           |
    | MGA ENTERTAINMENT, INC. v. MATTEL,   |
21  | INC.                                 |

22

23

24                         I. INTRODUCTION

25        The following motions are pending for decision, each of which seeks discovery from non-

26  parties:  Mattel, Inc.'s ("Mattel") (1) Motion to Compel Farhad Larian to Produce Documents; (2)

27  Motion to Compel Kaye Scholer to Produce Documents; and (3) Motion to Compel Stern &

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                          1

1   Goldberg to Produce Documents. Each of the non–parties submitted oppositions.[1] In addition,

2   MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de

3   Mexico S.R.L. de C.V. (collectively "MGA") submitted oppositions to the motions. Mattel

4   submitted a consolidated reply on January 3, 2008. The motions were heard on January 16, 2008,

5   at which time Mattel agreed to hold in abeyance its Motion to Compel Stern & Goldberg to

6   Produce Documents. This Order, therefore, addresses only Mattel's motions to compel Farhad

7   Larian and Kaye Scholer to produce documents.

8       On January 22, 2008, the parties submitted a Stipulation Regarding Protective Orders to

9   facilitate production of documents responsive to the subpoenas at issue.

10                          II. BACKGROUND

11      Since the inception of MGA in 1979 until December of 2000, Isaac Larian, a defendant

12  herein and MGA's CEO, and his brother Farhad Larian, a non-party, shared ownership and

13  management of MGA. A dispute developed between the two brothers and in March of 2000,

14  Isaac Larian proposed that Farhad Larian sell his interest in MGA to him.

15      On September 28, 2000, the Larian brothers agreed to have their uncle, Morad Zarabi,

16  arbitrate their dispute and decide a fair value for MGA and also decide which brother should sell

17  his ownership interest to the other. The brothers' agreement to arbitrate was entered into ten days

18  after the alleged effective date of Carter Bryant's contract purportedly assigning rights to Bratz to

19  MGA. Isaac Larian did not tell his brother about the contract with Bryant.

20      Mr. Zarabi retained an appraiser, Ernest Dutcher, to value MGA based on "the period

21  ending December 31, 1999." By December 4, 2000, Mr. Zarabi determined that Farhad Larian

22  should sell his 45% ownership interest in MGA to Isaac Larian and the two entered into an

23  Agreement for Sale of Stock by which Farhad Larian sold his interest for $8.775 million.

24

25

26      [1] Mattel contends that Kaye Scholer's opposition was not timely filed and therefore should not be

27  considered. Although the opposition was ten days late, Kaye Scholer's brief will nevertheless be considered in the
    interest of resolving these disputes on the merits.

28  Bryant v. Mattel, Inc.,                                                                      2
    CV-04-09049 SGL (RNBx)

EXHIBIT 22

PAGE

1    In the summer of 2002, Farhad Larian complained to Mr. Zarabi that Isaac Larian had

2  allegedly fraudulently concealed Bratz during the negotiations that led to Farhad Larian's sale of

3  MGA stock. Mr. Zarabi oversaw another appraisal of MGA based upon information he gathered

4  in 2002. Mr. Dutcher produced an appraisal on February 13, 2003 that valued MGA as of

5  December 31, 2000 and projected a 2001 revenue growth rate of twenty-five percent (25%) based

6  upon "hot projects that came along." Mattel's Motion at p.4, Ex. 8 to Decl. of Juan Pablo Albán.

7  Other information relied upon by Mr. Dutcher suggests that MGA had expansionary plans in 2000

8  compared to the prior four years.

9    Unable to resolve his disputes through Mr. Zarabi, Farhad Larian sued Isaac Larian,

10  alleging, among other things, that (a) in late 1999 or early 2000, Isaac Larian and MGA became

11  aware of a new product line called Bratz; (b) starting in early 2000 and throughout 2000, Isaac

12  Larian and MGA devised plans to develop and distribute Bratz; and (c) Isaac Larian concealed the

13  plans for Bratz from Farhad Larian and Mr. Zarabi in order to keep the valuation of MGA

14  artificially low. Notably, MGA and Bryant claim in the instant lawsuit that they did not even

15  meet until September 2000.

16    Isaac Larian successfully moved to compel arbitration of Farhad Larian's claims. In early

17  February 2005, Mr. Zarabi declined to serve as arbitrator and the court appointed another

18  arbitrator. A few weeks later, Farhad Larian filed suit against Mr. Zarabi alleging that he

19  conspired with Isaac Larian to conceal facts.

20    The arbitration of Farhad Larian's claims started on November 16, 2005. Two days into

21  the proceedings, however, Farhad Larian dismissed his claims. Isaac Larian sought to recover his

22  attorneys' fees and won an award in excess of $1 million against his brother.

23  Mattel Subpoenas Farhad Larian to Produce Documents

24    On August 31, 2007, Mattel subpoenaed Farhad Larian to appear for deposition and to

25  produce (1) documents relating to the Larian v. Larian disputes; (2) documents related to non-

26  Bratz allegations by Mattel and MGA, primarily related to allegations of trade secret theft; (3)

27  documents relating to Farhad Larian's relationship to MGA, including his position there,

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

22

3

1   ownership interests, and payments from MGA or Isaac Larian to Farhad Larian; (4) Farhad

2   Larian's knowledge and possession of documents specifically from the instant lawsuit, including

3   his communications with Mattel; and (5) information about the location of responsive documents.

4   The majority of Mattel's requests seek documents in the first category described above.

5           On September 21, 2007, Farhad Larian served responses and objections in which he

6   agreed to produce documents responsive to eleven of Mattel's forty-one document requests.

7   After a brief stay of discovery, counsel for Farhad Larian and Mattel met and conferred beginning

8   on November 20, 2007. During the meet and confer process, Farhad Larian agreed to produce

9   documents responsive to some, but not all of Mattel's forty-one requests. On November 21,

10  2007, Farhad Larian produced approximately one red well of documents.

11          The parties held a second meet and confer conference call on November 27, 2007, and

12  were able to resolve their disputes regarding many more, but not all requests. In particular, the

13  parties were ultimately able to resolve their disputes regarding the requests for documents related

14  to non-Bratz allegations. At the conclusion of the second meet and confer session, it was agreed

15  that Farhad Larian would make a supplemental production of documents on December 6, 2007,

16  and provide a written supplemental response. The parties attempted to schedule another meet and

17  confer session, but could not agree upon a date. On the evening of December 6, 2007, Mattel

18  filed the instant motion. Mattel seeks an order compelling Farhad Larian to produce documents

19  responsive to every request in its subpoena; overruling each of Farhad Larian's objections; and

20  ordering him to produce a document-by-document privilege log.

21  Mattel Subpoenas Isaac Larian's Attorney –Kaye Scholer

22          On or about September 6, 2007, Mattel also subpoenaed Kaye Scholer, the firm that

23  represented Isaac Larian in the Larian v. Larian proceedings. The subpoena consisted of thirty-

24  five (35) requests seeking the same five categories of documents it subpoenaed from Farhad

25  Larian. Kaye Scholer's representation of Isaac Larian included defending him in two related

26  Superior Court actions, two arbitration proceedings and an appeal to the California Court of

27  Appeals, all of which covered a period of several years. As a result of this representation Kaye

28

1  Scholer has accumulated approximately fifty-six (56) boxes of its client's files, including, among

2  other things, correspondence files, pleading files, discovery files, witness preparation files,

3  research files, exhibits, attorney work files, and billing files.

4        On or about September 18, 2007, Kaye Scholer served its objections, asserting, among

5  other things, that the requests are duplicative, unreasonably cumulative, harassing and oppressive.

6  The parties met and conferred on October 11 and 29, 2007. Kaye Scholer agreed to review the

7  following files for responsive documents: (1) pleading files; (2) discovery files; and (3)

8  arbitration exhibits. Kaye Scholer's rationale for limiting its search for responsive documents to

9  these three files was to avoid undue burden because most of the documents in other files would be

10  protected by the work product doctrine and/or the attorney-client privilege. Kaye Scholer also

11  agreed to produce documents responsive to the majority of Mattel's requests. However, Kaye

12  Scholer repeatedly informed Mattel that it objected to producing a document-by-document

13  privilege log because it would be unduly burdensome, expensive and inconvenient.

14        In the instant motion, Mattel seeks an order compelling Kaye Scholer to produce

15  documents responsive to every request in its subpoena and overruling Kaye Scholer's objections,

16  including privilege, or alternatively, compelling Kaye Scholer to produce a document-by-

17  document privilege log.

18  Mattel's Other Discovery Efforts

19        Mattel has attempted to obtain documents related to the Larian v. Larian proceedings from

20  MGA and Isaac Larian. As far as Mattel can ascertain, however, MGA has produced only four

21  documents relating to the Larian v. Larian proceedings and Isaac Larian has produced none.

22        Mattel also searched public filings in the Larian v. Larian and Larian v. Zarabi et al. civil

23  lawsuits. Mattel found Mr. Dutcher's declaration that included the appraisals described above,

24  however, Mattel was not able to locate any of the raw data on which Mr. Dutcher relied. Mattel

25  also served subpoenas on third parties involved in the Larian v. Larian proceedings, and met with

26  limited success.

27  //

28

EXHIBIT

22

433

5

### III. STANDARDS

1    Rule 45 of the Federal Rules of Civil Procedure requires third parties to produce

2    documents (and reasonably accessible electronically stored information) that are responsive to a

3    subpoena that a party serves on them. Fed.R.Civ.P. 45(b), (d). If the subpoenaed documents are

4    relevant and there is good cause for their production, the subpoena is enforced unless the

5    documents are privileged or the subpoena is unreasonable, oppressive, annoying or embarrassing.

6    The factors to be balanced by the trial court in determining the propriety of a subpoena are the

7    relevance of the discovery sought, the requesting party's need, and the potential hardship to the

8    party subject to the subpoena. A person withholding subpoenaed information under a claim of

9    attorney-client privilege or protected by the work product doctrine must expressly make the claim

10   and "describe the nature of the withheld documents, communications, or tangible things in a

11   manner that, without revealing information itself privileged or protected, will enable the parties to

12   assess the claim." Fed.R.Civ.P. 45(d)(2).

13    Rule 45(c)(1), Fed.R.Civ.P., provides that "[a] party or attorney responsible for issuing

14   and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on

15   a person subject to the subpoena." Furthermore, "[t]he issuing court must enforce this duty and

16   impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--

17   on a party or attorney who fails to comply." Id.

### IV. DISCUSSION

#### A. Documents Subpoenaed from Farhad Larian

Mattel contends that each of the categories of documents it seeks from Farhad Larian is

relevant and that there is good cause for production. First, Mattel contends that the Larian v.

Larian proceedings are relevant because Farhad Larian's allegations about the timing of the

origins and early development of Bratz and MGA's concealment thereof parallel and provide

support for the crux of Mattel's claims in the instant litigation. Second, Mattel contends that

documents about Farhad Larian's relationship with MGA are relevant to his credibility. In

particular, Mattel contends that payments from Isaac Larian and/or MGA to Farhad Larian are

1  relevant to credibility and possible bias.  Third, Mattel contends that documents relating to this

2  action are clearly relevant, especially in light of MGA and Isaac Larian's threat to disqualify

3  Mattel's counsel based upon purported communications between Mattel's counsel and Farhad

4  Larian.  Fourth, Mattel contends that it seeks information about the location of responsive

5  documents to determine whether Farhad Larian destroyed documents or for another reason no

6  longer has them.

7      Mattel next contends that Farhad Larian has failed to carry his burden of demonstrating

8  that the requests at issue are unreasonable, oppressive, annoying or embarrassing.  Further, Mattel

9  contends that the protective order in place in this lawsuit is sufficient to address Farhad Larian's

10  confidentiality or privacy concerns.  Lastly, Mattel contends that Farhad Larian's privilege log is

11  inadequate because it fails to justify his claims of privilege and work product protection on a

12  document-by-document basis.

13      Farhad Larian contends that Mattel's motion should be denied because Mattel violated its

14  meet and confer obligations by filing the motion before he made his scheduled supplemental

15  production and before the parties' meet and confer discussions had concluded.  According to

16  Farhad Larian, on November 27, 2007, it was agreed that he would make a supplemental

17  production of documents on December 6, 2007, and that he would provide a written supplemental

18  response.  Farhad Larian complied with this agreement and, on December 6, 2007, provided a

19  written supplemental response and, as Mattel acknowledges, approximately six boxes containing

20  approximately 12,000 pages of documents.  Nevertheless, Mattel filed the instant motion on

21  December 6, 2007, without reviewing the supplemental document production and written

22  supplemental response.  Farhad Larian also represents that as of December 6, 2007, the day

23  Mattel filed the instant motion, the parties acknowledged the need for a further meet and confer

24  session, as reflected in the numerous e-mails and correspondence exchanged between counsel.

25  Furthermore, Farhad Larian represents that after Mattel filed the instant motion, he requested that

26  Mattel take the motion off-calendar because his supplemental responses resolved the parties'

27  disputes as to all but three requests and because there was potential for resolving the remaining

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

ZZ

435

7

1   requests as well, but that Mattel refused.

2       Farhad Larian contends that in light of his supplemental production, he is now in full

3   compliance with Mattel's subpoena, except for three requests. He represents that he has produced

4   over 12,000 documents, including all non-privileged documents from the <u>Larian v. Larian</u> matters

5   that relate to Bratz (including its origin), Carter Bryant, Mattel, a fee agreement between Farhad

6   and MGA, and all documents related to appraisals of MGA that are not privileged or otherwise

7   covered by a protective order. He also contends that the privilege log he has produced to Mattel,

8   which describes the withheld documents by category instead of document-by-document, is

9   sufficient to substantiate his claims of privilege and work product protection. As for the three

10   remaining requests, Nos. 23, 24 and 41, Farhad Larian contends that they are overbroad, harassing

11   and cumulative and invade his and his family's privacy.

12   <u>Farhad Larian Has Substantially Complied with the Subpoena</u>

13       Farhad Larian made a substantial supplemental production and provided a supplemental

14   written response on December 6, 2007. Indeed, Mattel acknowledges that it received

15   approximately six boxes of documents from Farhad Larian, which contain approximately 12,000

16   pages of documents. Nevertheless, Mattel contends in its reply brief that there are a few

17   deficiencies in Farhad Larian's production. For example, Mattel contends that Farhad Larian has

18   not produced (1) documents bates stamped "MZ" and "ED"; (2) raw data provided to the

19   appraisers in the <u>Larian v. Larian</u> litigations and the 2000 financial models that Farhad Larian

20   claimed Isaac Larian prepared; (3) three boxes of documents that Farhad Larian's counsel showed

21   Mattel's counsel and upon which MGA's disqualification threats against Mattel's counsel are

22   based; (4) the Dutcher Declaration; and (5) documents responsive to Request Nos. 17-19. Mattel

23   also contends that Farhad Larian has improperly limited its production to only those documents

24   that directly reference Bratz and Carter Bryant.

25       At the hearing, counsel for Farhad Larian confirmed that all responsive documents,

26   including the documents identified in Mattel's reply brief, had been or would be produced after

27   the parties executed the Stipulation Regarding Protective Orders, which has now been

28   Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

22

436

8

1   accomplished. Significantly, counsel represented that Farhad Larian did not limit his production

2   to only those documents that directly reference Bratz and Carter Bryant, and that his supplemental

3   responses make this point clear. Counsel for Farhad Larian also represented that all privileged

4   documents have been identified on a privilege log.

5       In light of the December 6, 2007 supplementation, and based upon the representations

6   made by counsel for Farhad Larian at the hearing, Farhad Larian has substantially discharged his

7   obligation to comply with Mattel's subpoena. Therefore, there is no need for an order compelling

8   any further production of documents.

9               Farhad Larian's Objections to the Three Remaining Requests are Justified

10      The only three requests to which Farhad Larian objects are Nos. 23, 24 and 41, which are

11   set forth in full below:

12      Request No. 23: All DOCUMENTS RELATING TO any and all payments of
        money or transfers of anything of value that ISAAC LARIAN, his FAMILY
13      MEMBERS and/or MGA have made, have offered or have proposed, promised or
        agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS at
14      any time from January 1, 1999 through the present.

15      Request No. 24: All DOCUMENTS RELATING TO any and all payments of
        money or transfers of anything of value that any PERSON has made, has offered
16      or has proposed, promised or agreed to make, to or for the benefit of YOU or
        YOUR FAMILY MEMBERS and that was related in any way to BRATZ,
17      BRYANT, MGA or this ACTION at any time from January 1, 1999 through the
        present.

18

19      Request No. 41: DOCUMENTS sufficient to IDENTIFY since January 1, 1999
        through the present (a) each account with any bank or financial institution that
20      YOU have or have had, or that YOU have or have had any legal beneficial
        interest in; (b) each telephone subscription service account that YOU have or have
21      had, or that YOU use or have used; and (c) each email account that YOU have or
        have had, or that YOU use or have used.

22

23   Farhad Larian contends that Mattel's stated justification for the requests – bias and credibility – is

24   questionable because he is not an adverse witness to Mattel. Farhad Larian represents that MGA

25   has never asked him to testify on the company's behalf. Rather, only Mattel intends to call him as

26   a witness. Farhad Larian asserts that there is no reason for Mattel to impeach its own witness.

27      Furthermore, Farhad Larian contends that even if it is advantageous for Mattel to attack

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                    EXHIBIT   22                    9
                                             PAGE  437

1   his credibility, the scope of Mattel's requests go far beyond what Mattel is reasonably entitled to

2   receive through discovery. He contends that pursuant to Rule 26, Fed.R.Civ.P., he should not be

3   subjected to discovery that is burdensome, cumulative, unnecessarily costly, or insufficiently

4   probative to the issues in the litigation to warrant the expense of production. Furthermore, he

5   contends that the usual restrictions on discovery set forth in Rule 26 should be rigorously applied

6   to protect non-parties such as himself.

7        Farhad Larian contends that the three requests at issue are overbroad and harassing in

8   several respects. First, he points out that the requests seek documents from 1999, which is five

9   years before this action was filed and six years before MGA was involved in this action. Farhad

10   Larian contends that payments made to him and his family before this action was filed and before

11   MGA was a party to the case have no relevance to his credibility as a witness in this case.

12   Second, Farhad Larian contends that the requests, as phrased, would include any card that

13   accompanied a gift to anyone in the Larian family, regardless of the dollar value of the gift.

14   Farhad Larian contends that family gifts for birthdays, Chanukah, or general gifts of money

15   between family members, have nothing to do with bias and violate his and his family's privacy

16   rights. Third, Farhad Larian contends that the requests are overbroad because they would require

17   him to disclose all documents reflecting payments he received as an employee of MGA and its

18   predecessor, a company he was employed by for decades.

19        Furthermore, Farhad Larian contends that he has already produced all non-privileged

20   documents which could potentially show bias, including the amount of money he was paid for his

21   shares of MGA, his consulting agreement with MGA after he sold his shares, and his fee

22   agreement with MGA. He contends that requiring him to search for and produce additional

23   payment documents would only result in him producing cumulative information, which is not

24   only irrelevant but violates his and his family's right to privacy under the California Constitution.

25   Farhad Larian also contends that it would be far less intrusive for Mattel to question him at a

26   deposition about payments he received from Isaac Larian and MGA than for him to respond to the

27   three requests at issue.

28

1    Mattel's motion is denied with respect to Request Nos. 23, 24 and 41. The requests seek

2    information that is only minimally relevant to the claims and defenses in the case. Mattel's only

3    stated justification for the discovery is that it is relevant to establish Farhad Larian's credibility

4    and bias. Although impeachment information is discoverable, Mattel is not entitled to the type of

5    unfettered discovery it is now seeking. Rather, Rule 26(b)(2), Fed.R.Civ.P., requires the court to

6    restrict or prevent discovery if (i) the discovery is unreasonably cumulative or duplicative, or is

7    obtainable from some other source that is more convenient, less burdensome, or less expensive;

8    (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the

9    information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely

10   benefit, taking into account the needs of the case, the amount in controversy, the parties'

11   resources, the importance of the issues at stake in the litigation, and the importance of the

12   proposed discovery in resolving the issues. These restrictions are particularly important to

13   consider where the discovery requests are directed at a non-party. See Moon v. SCP Pool Corp.,

14   232 F.R.D. 633, 638 (C.D. Cal. 2005) (citing Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.,

15   649 F.2d 649 (9th Cir. 1980) (discovery should be "more limited to protect third parties from

16   harassment, inconvenience, or disclosure of confidential information.").

17       Aside from asserting that the requested information is relevant to bias and credibility,

18   Mattel has made no attempt to justify the significant breadth and burden of its requests. The

19   requests are so broad as to include every payment or gift, regardless of amount, made between

20   Farhad and Isaac Larian, their family members and MGA since 1999. The number of years for

21   which Mattel seeks financial information is overbroad. Mattel is seeking documents since 1999,

22   five years before this action was filed and six years before MGA became a party to this action.

23   Mattel fails to explain how any payments MGA or Isaac Larian made to Farhad or his family

24   members before this action was filed or MGA was a party to the action have any bearing on his

25   credibility as a witness in this action. The requests are also overbroad in that they encompass

26   customary gifts between family members and Farhad Larian's routine salary payments, which

27   have only minimal relevance to Farhad Larian's credibility and bias as a witness in this case.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

22

439

1   The requests are also cumulative of discovery Farhad Larian has already provided. In

2   particular, Farhad Larian represents that he has already disclosed to Mattel the amount of money

3   he was paid for his shares of MGA, his consulting agreement with MGA after he sold his shares,

4   and his fee agreement with MGA. In light of this production , it is unreasonable to require Farhad

5   Larian to search for and produce gift receipts, cards, and the breadth of other financial documents

6   responsive to Request Nos. 23, 24 and 41. Furthermore, there are other less intrusive and

7   burdensome means of obtaining discovery regarding Farhad Larian's credibility and bias. For

8   example, Mattel may question Farhad Larian about payments he received from his brother and

9   MGA during his deposition.

10  Nor has Mattel justified the intrusive and harassing nature of the requests. Personal

11  financial information is afforded protection by the California Constitution that is also recognized

12  by federal courts. Cal. Const., Art. I, §1; Valley Bank of Nevada v. Superior Court, 15 Cal.3d

13  652, 656 (1975); Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987) (federal courts

14  should give "some weight" to privacy rights that are protected by state constitutions); Soto v. City

15  of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995) (right to privacy in financial information has

16  been recognized by federal courts). When a privacy right is asserted as an objection to discovery,

17  the court must balance the need for the information versus the privacy right asserted. Soto, 162

18  F.R.D. at 616.

19  As discussed previously, there is little to no need for the breadth of financial information

20  sought by Mattel. Many of the documents covered by Request Nos. 23, 24, and 41 have little to

21  no relevance to Farhad Larian's credibility and bias as a witness in this case. Furthermore,

22  Farhad Larian has already produced numerous documents showing payments he received from

23  both his brother and MGA. There are also other less intrusive means for obtaining discovery

24  relating to Farhad Larian's credibility and bias. Furthermore, the scope of these three requests

25  unduly intrude into Farhad Larian's private affairs. The requests are so broad as to include gifts

26  exchanged between family members and Farhad Larian's paycheck stubs, and would require

27  Farhad Larian to disclose every account number he has at a bank or financial institution since

28  

EXHIBIT    22

PAGE    446

1    1999. Thus, the balance tips sharply in favor of protecting Farhad Larian's personal financial

2    information.

3                <u>Farhad Larian's Privilege Log is Inadequate</u>

4        Mattel challenges the sufficiency of Farhad Larian's privilege log. At issue is whether

5    Farhad Larian must describe and assert claims of privilege on a document-by-document basis, or

6    whether he may do so categorically. Farhad Larian is withholding approximately one bankers'

7    box of documents based upon claims of privilege and work product protection. Farhad Larian's

8    Opposition at p.20, n. 9.

9        Rule 45(d)(2), Fed.R.Civ.P., requires a party responding to a subpoena to provide

10    sufficient information to enable the party seeking discovery to assess the claims of privilege and

11    work product protection. The "universally accepted" means of claiming that requested documents

12    are privilege is by producing a document-by-document privilege log. <u>Gail v. New England Gas</u>

13    <u>Co., Inc.</u>, 234 F.R.D. 28, 33 (D. R.I. 2007). The advisory comments to the 1993 amendment to

14    Rule 26(b), however, state that a description of documents by category is appropriate where it

15    would be "unduly burdensome" to provide a document-by-document privilege log. Specifically,

16    the advisory comment states, "Details concerning time, persons, general subject matter, etc., may

17    be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous

18    documents are claimed to be privileged or protected, particularly if the items can be described by

19    categories."

20        Farhad Larian relies upon the advisory comments and cases citing the advisory comments

21    to support his contention that as a non-party, it would be unduly burdensome to require a

22    document-by-document privilege log in this case. The cases cited by Farhad Larian, however, are

23    distinguishable from the present case. In <u>SEC v. Thrasher</u>, 1996 WL 125661 (S.D. N.Y. 1996),

24    the Commission sought production of all communications between defense counsel concerning

25    the lawsuit. The court observed that this demand, on it face, sought wholesale production of

26    documents that are ordinarily protected from disclosure. Further, the defendant represented that

27    the requested documents were extremely voluminous and that a document-by-document privilege

28

EXHIBIT __22__

PAGE __441__

13

1   log would be a long and fairly expensive project to undertake. In Fifty-Six Hope Road Music,

2   Ltd. v. Mayah Collections, Inc., 2007 WL 1726558 (Nev. 2007), the withheld documents

3   consisted of e-mail communications between plaintiffs and their counsel or between plaintiffs'

4   counsel. Plaintiffs represented that there were hundreds and perhaps thousands of such email

5   communications which were protected by the attorney-client privilege and work product doctrine.

6         In contrast to the volume of documents at issue in Thrasher and Fifty-Six Hope Road

7   Music, Farhad Larian represents that he has about one bankers' box of privileged documents.

8   Farhad has not established that to produce a privilege log on a document-by-document basis for

9   this volume of documents is unduly burdensome. Furthermore, even if it were appropriate for

10  Farhad Larian to produce a privilege log that described documents categorically, which it is not,

11  the information provided in Farhad Larian's privilege log is insufficient to enable Mattel to assess

12  the claims of privilege and work product protection as required by Rule 45, Fed.R.Civ.P. For

13  example, in some instances, Farhad Larian fails to identify the author and recipient of the

14  documents being withheld. In other instances, Farhad Larian fails to provide the date or date

15  ranges for the documents being withheld. Therefore, Farhad Larian is ordered to provide a

16  supplemental privilege log that complies with Rule 45.

17  B. Documents Subpoenaed from Kaye Scholer

18        Mattel contends that the documents it seeks from Kaye Scholer are relevant for all the

19  same reasons previously articulated in the context of Mattel's motion to compel Farhad Larian to

20  produce documents. Mattel contends that its requests are not unreasonable, oppressive, annoying

21  or embarrassing. Mattel points out that Kaye Scholer has separate case files containing all or the

22  vast majority of responsive documents, which undermines Kaye Scholer's boilerplate burden

23  objections. Mattel also points out that it offered to alleviate some of the burden to Kaye Scholer

24  by paying for Kay Scholer's copying costs and by providing a paralegal to inspect documents

25  from Kaye Scholer's files with an agreement that the inspection would not result in a waiver of

26  any privileges. Further, Mattel contends that the protective order in place in this action is

27  sufficient to address any confidentiality concerns Kaye Scholer may have.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT   22

PAGE   442

14

1   Mattel next contends that the documents it seeks from Kaye Scholer are not available from
2   other sources, as evidenced by Mattel's repeated and unsuccessful attempts to seek the same
3   documents from MGA. Indeed, Mattel contends that the documents in Kaye Scholer's possession
4   are in fact documents within MGA's possession, custody and control that should have, but have
5   not yet been, produced pursuant to prior discovery orders obligating MGA and Isaac Larian to
6   produce documents from the Larian v. Larian proceedings. Mattel also points out that it has
7   searched public files and served additional subpoenas on other third parties involved in the Larian
8   v. Larian proceedings. Moreover, Mattel argues that federal law requires Kaye Scholer to comply
9   with the subpoena, even if the evidence sought is obtainable from another source. See e.g. State
10  Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840 at *1 (E.D. N.Y. 2007).

11  Mattel contends that Kaye Scholer's proposal to search only certain files for responsive
12  documents is unacceptable because it would inevitably exclude relevant documents. In particular,
13  Mattel contends that Kaye Scholer's proposal would exclude relevant documents likely to be
14  found in its correspondence file, such as an August 29, 2003 letter from Isaac Larian to Mr.
15  Zarabi relating to an appraisal of MGA, and a letter from Farhad Larian's attorney to Kaye
16  Scholer detailing the evidence of Isaac Larian's alleged concealment of Bratz. Mattel contends
17  that the relevance of these documents and others that are likely to exist justifies the burden of
18  production on Kaye Scholer.

19  Further, Mattel contends that Kaye Scholer has failed to produce a privilege log in
20  violation of Rule 45(d)(2), Fed.R.Civ.P., and therefore Kaye Scholer has waived any claims of
21  privilege. In the alternative, Mattel requests an order compelling Kaye Scholer to produce a
22  document-by-document privilege log.

23  Kaye Scholer contends that the instant motion is premature, unnecessary and a waste of
24  judicial resources. Kaye Scholer represents that after meeting and conferring in good faith, it
25  agreed to produce documents responsive to thirty of the thirty-five requests, and that the
26  remainder of the requests are grossly overbroad. Further, Kaye Scholer represents that it has
27  completed its review pursuant to the agreement, and is prepared to produce responsive

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT **22**

PAGE **443**

15

1    documents. However, Kaye Scholer continues to object to producing a document-by-document

2    privilege log on the grounds that it would be unduly burdensome and expensive. Kaye Scholer

3    emphasizes that Mattel is seeking documents from a law firm, and therefore the vast majority of

4    responsive documents are protected by multiple privileges, including but not limited to the

5    attorney-client privilege and the work product doctrine. Kaye Scholer estimates that it would take

6    in excess of seventy (70) hours to create a document-by-document privilege log for this case, and

7    that the Federal Rules of Civil Procedure do not require Kaye Scholer to undertake such an

8    unreasonable burden. Furthermore, Kaye Scholer contends that the failure to produce a

9    document-by-document privilege log does not result in a per-se waiver of any privilege.

10         MGA also opposes Mattel's motion for several reasons. First, MGA contends that

11   Mattel's requests are overbroad, encompassing documents that are only marginally related, if at

12   all, to the claims and defenses in the case. Second, MGA contends that Mattel's requests are

13   completely duplicative of requests it has served on the parties in the case. In particular, MGA

14   contends that Mattel has sought the Larian v. Larian documents from both MGA Entertainment,

15   Inc. and Isaac Larian. See Mattel's Request No. 41 in Mattel's First Set of Request for

16   Production of Documents and Tangible Things to MGA, and Request Nos. 123-125 in Mattel's

17   First Set of Requests for Documents and Things to Isaac Larian. MGA and Isaac Larian are both

18   under court order to comply with the requests, although Isaac Larian is only required to produce

19   documents that refer or relate to Bratz in response to Request Nos. 123-125. Third, MGA

20   contends that Mattel's requests to Kaye Scholer are much broader than requests Mattel previously

21   served on the parties to this case. Fourth, MGA contends that there is no reason Mattel cannot

22   obtain a complete set of all relevant documents from the Larian v. Larian proceedings without this

23   third-party subpoena. Fifth, MGA contends that the vast majority of documents Mattel seeks

24   from Kaye Scholer are protected by the attorney-client privilege, the work product doctrine, or

25   other privileges, and that it is improper for Mattel to attempt to subpoena these documents and

26   then insist that Kaye Scholer produce a document-by-document privilege log. In summary, MGA

27   contends that Mattel has misused the subpoena process by serving deliberately overbroad and

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

22

444

16

1    burdensome requests in an attempt to harass and intimidate MGA and non-parties.  Accordingly,

2    MGA contends that Mattel's motion should be denied or Mattel's subpoena should be

3    substantially limited in scope.

4                    Mattel's Subpoena is Overbroad, Unduly Burdensome and Cumulative

5           Mattel's subpoena to Kaye Scholer is overbroad and is not reasonably tailored to seek

6    documents relevant to the claims and defenses in this case.  Of the thirty-five requests Mattel

7    served on Kaye Scholer, all but one begin with the phrase "all documents" or a similarly broad

8    phrase.  For example, Request Nos. 1-3, which are set forth below, seek virtually all documents

9    relating to lawsuits and/or arbitrations between Isaac Larian and Farhad Larian:

10          Request No. 1:  All DOCUMENTS, including all COMMUNICATIONS,
            RELATING TO any and all arbitration proceedings between FARHAD LARIAN
11          and ISAAC LARIAN, including without limitation all video and/or sound
            recordings, transcripts, exhibits, memoranda, witness statements, declarations,
12          affidavits and sworn testimony given by any PERSON in connection with such
            arbitration proceedings.

13
            Request No. 2:  All DOCUMENTS including all COMMUNICATIONS,
14          RELATING TO Los Angeles Superior Court Case No. BC301371 filed by
            FARHAD LARIAN against ISAAC LARIAN and/or any related proceedings,
15          including any appeal thereof, and including without limitation all video and/or
            sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness
16          statements, declarations, affidavits and sworn proceedings and/or any appeal
            related to such lawsuit.

17
            Request No. 3:  All DOCUMENTS RELATING TO Los Angeles Superior Court
18          Case No. BC329501 filed by FARHAD LARIAN against ISAAC LARIAN,
            MORAD ZARABI and Kambiz Zarabi, and/or any related proceedings and/or any
19          appeal of such lawsuit, including without limitation all video and/or sound
            recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness
20          statements, declarations, affidavits and sworn testimony given by any PERSON in
            connection with such suit and/or related proceedings and/or any appeal related to
21          such lawsuit.

22   Mattel has not limited the subject matter of these requests (and others) in any way to exclude

23   irrelevant information.  To the contrary, Request Nos. 1-3 are drafted in the broadest possible

24   language, encompassing documents that are only marginally related, if at all, to this case.  As

25   such, Mattel's requests are also unduly burdensome.

26          Furthermore, Mattel's requests are clearly duplicative of other requests propounded to the

27

28   Bryant v. Mattel, Inc.,                                                                    17
     CV-04-09049 SGL (RNBx)

                                    EXHIBIT        22

                                    PAGE           445

1   parties in this action. In particular, the requests relating to the Larian v. Larian proceedings are

2   duplicative of Mattel's Request No. 41 to MGA and Request Nos. 123-125 to Isaac Larian.

3   During the hearing, counsel for MGA acknowledged that Isaac Larian is required to comply with

4   Request Nos. 123-125, and is prepared to review Kaye Scholer's files for responsive documents

5   to fulfill his responsibility. Also during the hearing, Kaye Scholer agreed to make its

6   correspondence file available to MGA's counsel for review.

7          In light of Mattel's failure to take reasonable steps to avoid unduly burdening Kaye

8   Scholer and in light of MGA's and Kaye Scholer's representations during the hearing as outlined

9   above, Mattel's motion to compel Kaye Scholer to comply with the full scope of the subpoena is

10  denied.

11              Kaye Scholer's Compromise is Reasonable Under the Circumstances

12         As an alternative to complying with the full scope of the subpoena, Kaye Scholer agreed

13  to review the following files for documents responsive to every one of Mattel's requests except

14  Nos. 1-3, 6 and 10:  (1) pleading files; (2) discovery files; and (3) arbitration exhibits. Kaye

15  Scholer's Opposition at p.5. Kaye Scholer's compromise is reasonable under the circumstances.

16  Narrowing the scope of Kaye Scholer's search in this manner will significantly minimize the

17  burden, expense, and inconvenience imposed by the subpoena because, unlike Kaye Scholer's

18  other files, most of the documents in the three files it agreed to search are not likely to be covered

19  by the attorney-client privilege or work product doctrine. Further, narrowing Kaye Scholer's

20  search in this manner will not significantly deprive Mattel of relevant discovery to which it is

21  entitled because, as stated previously, MGA's counsel represented during the hearing that Isaac

22  Larian is prepared to review Kaye Scholer's documents, including the correspondence file, to

23  comply with Request Nos. 123-125.

24         Accordingly, to the extent it has not already done so, Kaye Scholer shall conduct the

25  agreed upon search of its three files and produce documents responsive to all of Mattel's requests,

26  except Nos. 1-3, 6 and 10.

27  //

28
    Bryant v. Mattel, Inc.,                                                                    18
    CV-04-09049 SOL (RNBx)

1  Kaye Scholer Must Produce a Privilege Log in Compliance with Rule 45

2    Mattel contends that Kaye Scholer has waived its claims of privilege by failing to produce

3  any privilege log. The law is clear, however, that the failure to produce a document-by-document

4  privilege log does not result in a per-se waiver of any privilege. See Burlington Northern & Santa

5  Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont., 408 F.3d 1142, 1147 (9th Cir. 2005). In this

6  case, Kaye Scholer raised a legitimate objection to producing a document-by-document privilege

7  log on the grounds that it would impose an undue burden. Under these circumstances, a finding

8  of waiver is unjustified.

9    Nevertheless, Kaye Scholer's claim of undue burden is unpersuasive. Kaye Scholer has

10  acknowledged that most of the documents in the three files it has agreed to search are not likely to

11  be covered by the attorney-client privilege or work product doctrine. Kaye Scholer Opposition at

12  pp. 5 and 9. Indeed Kaye Scholer agreed to search these files precisely because they were not

13  likely to contain privileged documents. Therefore, requiring Kaye Scholer to produce a

14  document-by-document privilege log for documents withheld from these three files should not

15  impose an undue burden. Accordingly, Kaye Scholer is ordered to produce a document-by-

16  document privilege log for documents withheld from the three files it agreed to search.

17    V. CONCLUSION

18    For the reasons set forth above, it is ordered as follows:

19    1. Farhad Larian is in substantial compliance with Mattel's subpoena with respect to all of

20  the requests, except Nos. 23, 24 and 41. Request Nos. 23, 24 and 41 are overbroad, unduly

21  burdensome, cumulative, harassing and invade the right of privacy of Farhad Larian and his

22  family. Therefore, Mattel's motion to compel Farhad Larian to produce documents in response to

23  the subpoena is denied.

24    2. Farhad Larian shall produce a document-by-document privilege log to Mattel no later

25  than January 30, 2008.

26    3. Farhad Larian's request for sanctions against Mattel is denied.

27    4. Mattel's subpoena to Kaye Scholer is overbroad, unduly burdensome and cumulative.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

EXHIBIT 22

PAGE 447

1    Therefore, Mattel's motion to compel Kaye Scholer to produce documents responsive to the

2    subpoena is denied.  Instead, Kaye Scholer is ordered to abide by its agreement to review its

3    pleading files, discovery files, and arbitration exhibits for documents responsive to all of Mattel's

4    requests, except Request Nos. 1-3, 6 and 10.  Kaye Scholer shall produce responsive documents

5    no later than January 30, 2008.

6         5. Kaye Scholer shall also produce a document-by-document privilege log identifying all

7    documents withheld from its pleading files, discovery files, and arbitration exhibits, no later than

8    January 30, 2008.

9         6. Mattel shall abide by its agreement to reimburse Farhad Larian and Kaye Scholer for

10   their copying costs.

11        7. Isaac Larian is granted an extension of time to comply with Request Nos. 123-125.

12   Isaac Larian shall deliver documents responsive to these requests to Mattel no later than 12:00

13   p.m. on January 25, 2008.

14        8. Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

15   Master, Mattel shall file this Order with the Clerk of Court forthwith.

16

17   Dated: January 25, 2008              /s/Edward A. Infante
                                         _____
18                                        HON. EDWARD A. INFANTE (Ret.)
                                          Discovery Master
19

20

21

22

23

24

25

26

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)              EXHIBIT    22                         20

                                         PAGE       449

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2008, I served the attached ORDER RE MATTEL'S MOTIONS TO COMPEL FARHAD LARIAN, KAYE SHOLER AND STERN & GOLDBERG TO PRODUCE DOCUMENTS in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Patricia Glaser, Esq. | Christensen, Glaser, Fink, et al. | pglaser@chrisglase.com |
| Scott E. Gizer, Esq. | Christensen, Glaser, Fink, et al. | sgizer@chrisglase.com |
| Alisa Morgenthaler-Lever, Esq. | Christensen, Glaser, Fink, et al. | amorgentaler@chrisglase.com |
| Alan N. Goldberg, Esq. | Stern & Goldberg | agoldberg@sgattys.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| Bryant S. Delgadillo, Esq. | Kaye Scholer | bdelgadi@kayescholer.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 25, 2008, at San Francisco, California.

Sandra Chan

EXHIBIT    22

PAGE    441