EXHIBIT 11

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                     EASTERN DIVISION

11

12  | | |
    CARTER BRYANT, an individual,         CASE NO. CV 04-09049 SGL (RNBx)
13                                        JAMS Reference No. 1100049530
            Plaintiff,
14                                        Consolidated with
        v.                                Case No. CV 04-09059
15                                        Case No. CV 05-2727
    MATTEL, INC., a Delaware corporation,
16                                        **ORDER GRANTING IN PART AND**
            Defendant.                    **DENYING IN PART MATTEL'S**
17                                        **MOTION TO COMPEL RESPONSES**
                                          **TO INTERROGATORY NOS. 27-44**
18                                        **AND 46-50 BY THE MGA PARTIES**

19
    CONSOLIDATED WITH
20  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v. MATTEL,
21  INC.

22                   I. INTRODUCTION

23       On December 20, 2007, Mattel, Inc. ("Mattel") submitted a Motion to Compel Responses

24  to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties. MGA Entertainment, Inc., MGA

25  Entertainment (HK) Limited, MGAE De Mexico, S.R.L. De C.V., and Isaac Larian (collectively

26  referred to as "MGA parties") submitted an opposition on December 31, 2007. Mattel submitted

27  a reply on January 7, 2008. On February 8, 2008, the MGA parties submitted their second

28
    Bryant v. Mattel, Inc.,                                                              1
    CV-04-09049 SGL (RNBx)

EXHIBIT  11

609

1  supplemental responses and third supplemental responses to the interrogatories at issue.  The

2  matter was heard on February 11, 2008.

3  ## II. BACKGROUND

4     Mattel served its Revised Third Set of Interrogatories on the MGA parties on September

5  21, 2007, asking each of them the same fifteen questions (Nos. 27-41).  Mattel served its Fourth

6  Set of Interrogatories on the MGA parties on October 12, 2007, propounding four additional

7  interrogatories (Nos. 42-45).  Mattel served an Amended Fourth Set on October 23, 2007,

8  removing No. 45, but retaining Nos. 42-44.  Mattel served its Fifth Set of Interrogatories on

9  October 19, 2007, which consisted of two additional questions (Nos. 46-47).  On October 23,

10  2007, Mattel served its Sixth Set of Interrogatories, which consisted of Interrogatory No. 45 to

11  replace the previously withdrawn interrogatory.  On October 25, 2007, Mattel served its Seventh

12  Set of Interrogatories, which consisted of Nos. 48-50.

13     In November of 2007, the MGA parties served responses and objections to Mattel's

14  interrogatories, and in some instances supplemental responses.  For the most part, the answers of

15  each of the MGA parties are substantially similar.  However, in several instances where MGA

16  Entertainment, Inc. provides a response, either MGA Entertainment (HK), MGAE de Mexico

17  S.R.L. de C.V. and/or Larian do not, asserting that the interrogatory "appears directed at another

18  party."

19     The parties met and conferred on December 10 and 12, 2007 regarding the supplemental

20  responses.  The MGA parties offered to provide supplemental responses by January 7, 2008.

21  Mattel contends, however, that the scope of the MGA parties' proposed supplemental responses

22  was inadequate.  Therefore, Mattel filed the instant motion on December 20, 2007.[1]

23     Mattel contends that the interrogatories at issue seek information relevant to central issues

24  in the case, such as:  MGA's contentions regarding which Bratz inventions were created before,

25

26  ─────────────────

27     [1] One of the issues raised in the motions papers –whether the interrogatories exceed the 50 interrogatory per side limit -- has been rendered moot by Judge Larson's Order Granting in Part and Denying in Part Mattel's Motion for Leave to Take Additional Discovery, dated January 7, 2008.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                          2

EXHIBIT __11__
PAGE __610__

1   during and after Carter Bryant's ("Bryant") employment with Mattel; the identity of electronic

2   storage devices MGA used prior to 2002 for digital information related to Bratz; the identity of

3   the sources of information from which MGA has collected documents in this litigation which

4   relate to Bratz and the time period prior to February 28, 2001; the facts allegedly supporting

5   MGA's contention that the Bratz dolls are not based on designs Bryant created while employed

6   by Mattel; MGA's contentions regarding Mattel's claims against MGA, Bryant and others,

7   including how Bryant's Inventions Agreement with Mattel and his assignment of rights to Bratz

8   inventions to MGA and services with or for MGA while employed by Mattel affect who owns the

9   rights to Bratz inventions, and the alleged basis for MGA's claims that it purportedly acted with

10  innocent intent; the identity of MGA's bank or financial accounts; the identity of former Mattel

11  employees that have been employed by MGA; non-privileged facts concerning the dispute

12  leading to the withdrawal of MGA's prior counsel that relate to MGA's handling of discovery in

13  this case; the facts supporting MGA's claims against Mattel, including MGA's contentions that

14  Mattel has copied, infringed or diluted MGA's trade dress; and the relevant dates regarding the

15  products MGA asserts MGA has copied or infringed.  Mattel's Motion at pp. 2-3.

16          Mattel contends that although it has received responses to all of the interrogatories except

17  Nos. 39, 46 and 47, all of the responses are deficient.  As an initial matter, Mattel contends that

18  the MGA parties' "boilerplate" objections – that the interrogatories are vague and ambiguous,

19  overbroad, unduly burdensome and oppressive, seek information not in the possession, custody or

20  control of MGA, seek information protected by the attorney-client privilege, work product or joint

21  defense privileges, and call for a legal conclusion – are without merit.  Mattel contends that the

22  MGA parties fail to specify how the questions are overbroad, unduly burdensome or oppressive.

23  Mattel also contends that its interrogatories do not require the disclosure of privileged information

24  or work product, but rather require the MGA parties to state their contentions about facts or the

25  application of law to facts.

26          Mattel further contends that some of the MGA parties' responses are deficient in that they

27  merely lay out the "basic facts" (instead of "all facts") on which they intend to rely, without any

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT  11

PAGE  611

1  details.  Mattel contends that its contention interrogatories, including the purportedly "negative"

2  interrogatories asking for every fact which supports the denial of a statement or allegation, are

3  commonly used and well accepted to elucidate facts regarding a party's contentions, absent a

4  showing of undue burden.  Indeed, Mattel points to decisions by the district judge which it

5  contends supports its use of the contention interrogatories at issue.  Mattel also points out that it

6  provided the MGA parties with the details supporting its contentions in a one hundred-ten page

7  supplemental interrogatory response, and contends that the MGA parties ought to provide

8  comparable details to Mattel.

9        Mattel also contends that the MGA parties have unilaterally limited many of their

10  responses by disregarding Mattel's definitions of terms and phrases used in the interrogatories.

11  Further, Mattel contends that the MGA parties have failed to identify with specificity documents

12  they intend to rely upon, as requested by some of the interrogatories.

13        Mattel acknowledges that fully responding to the interrogatories will require some effort.

14  However, Mattel contends that the interrogatories are not unduly burdensome in this high stakes

15  litigation.  Mattel contends that its need to discover MGA's key contentions outweighs any effort

16  the MGA parties will be required to undertake to disclose the requested information.

17  Accordingly, Mattel seeks an order overruling all of the MGA parties' objections and compelling

18  the MGA parties to provide complete responses to Interrogatory Nos. 27-44 and 46-50.

19        The MGA parties contend that their current responses comply with Rule 33 of the Federal

20  Rules of Civil Procedure and that Mattel is not entitled to any additional information for a number

21  of reasons.  The MGA parties raise four main arguments in opposition to Mattel's motion.  First,

22  the MGA parties contend that Mattel is not entitled to information about MGA's substitution of

23  counsel because such information is protected by the attorney-client privilege or the work product

24  doctrine.  Second, the MGA parties contend that Mattel is not entitled to the sweeping financial

25  data that has been requested.  Third, the MGA parties contend that Mattel's contention

26  interrogatories contain misleading and unfair definitions and are unduly burdensome in that they

27  require a recitation of all facts supporting the MGA parties' contentions.  Fourth, the MGA parties

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                    4

EXHIBIT __11__

PAGE __612__

1  contend that Rule 33 does not require a response to a contention interrogatory to set forth more

2  than the principal factual and legal bases for the response.

3  III. STANDARDS

4       Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

5  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

6  party." Fed.R.Civ.P. 26(b)(1).  Fishing expeditions to discover new claims, however, are not

7  permitted.  See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

8  2004) ("District courts need not condone the use of discovery to engage in 'fishing

9  expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

10  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

11  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

12  the phrase "subject matter involved in the pending action," were intended to prevent discovery

13  that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

14  litigate the issues presented by the pleadings but to develop new claims or defenses.).

15       Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

16  extent of use of the discovery methods if the court determines that (i) the discovery sought is

17  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

18  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

19  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

20  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

21  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

22  the litigation, and the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P.

23  26(b)(2)(C).

24       Rule 33 of the Federal Rules of Civil Procedure allows a party to propound

25  interrogatories, for which the responding party is required to furnish such information as is

26  available to the party after conducting a reasonable inquiry.  "Each interrogatory must, to the

27  extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P.

28

EXHIBIT __11__

PAGE __613__

33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity." Fed.R.Civ.P. 33(b)(4).

## IV. DISCUSSION

### A. Interrogatories About the Identity of Bratz Inventions (Nos. 27, 28 and 29)

Interrogatory Nos. 27-29 request information relating to Bratz inventions created during three different time periods, namely before, during and after Bryant's employment with Mattel:

**Interrogatory No. 27:** IDENTIFY each and every BRATZ INVENTION YOU contend was CREATED, in whole or in part, prior to January 4, 1999, and for each BRATZ INVENTION so identified state all FACTS that support YOUR contention that such BRATZ INVENTION (or aspects or portions thereof) was CREATED prior to January 4, 1999, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

**Interrogatory No. 28:** IDENTIFY each and every BRATZ INVENTION YOU contend was CREATED, in whole or in part, after October 19, 2000 and before June 1, 2001, and for each BRATZ INVENTION so identified state all FACTS that support YOUR contention that such BRATZ INVENTION (or aspects or portions thereof) was CREATED after October 19, 2000 and before June 1, 2001, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

**Interrogatory No. 29:** IDENTIFY each and every BRATZ INVENTION that was CREATED, in whole or in part, after January 3, 1999 and before October 21, 2000, and for each BRATZ INVENTION so identified state all FACTS that REFER OR RELATE TO the timing of the creating of such BRATZ INVENTION and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

Mattel contends that these interrogatories seek information that is plainly relevant and discoverable, and that the MGA parties do not contend otherwise. Mattel further contends that the partial response given using the MGA parties' definition, not Mattel's definition, of BRATZ INVENTION is inadequate. Mattel also contends that the MGA parties have failed to carry their burden of showing that the interrogatories are burdensome or oppressive, particularly given the importance of the information sought. Mattel emphasizes that the information sought will prove liability as to a number of its claims. Moreover, Mattel contends that knowing which inventions

1    MGA claims were created before and just after Bryant's second period of employment at Mattel

2    is essential so that Mattel can avoid unfair surprise at trial and impeach the defendants'

3    chronology of Bratz design and development.

4         The MGA parties contend that Mattel is using misleading and unfair definitions to create

5    jury confusion.  In particular, the MGA parties object to Mattel's definition of "BRATZ

6    INVENTION," which they contend contains separate component parts ("representation, idea,

7    concept, work, process, procedure, plan, improvement, DESIGN or other development"), and

8    Mattel's definition of "DESIGN," which they contend adds at least another 21 elements ("all

9    works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints,

10   schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

11   practice, developments, inventions and/or improvements").  The MGA parties contend that

12   including all of these concepts in the definition "improperly conflates distinct issues of patent law,

13   copyright protection, trade secret law and the common law protecting original ideas, many of

14   which have no place in the ordinary usage of the term 'invention.'"  MGA Parties' Opposition at

15   2:11-13.  The MGA parties emphasize that these distinctions are important because Mattel lays

16   claim to Bratz under a January 4, 1999 "Employee Confidential Information and Inventions

17   Agreement."  Further, the MGA parties accuse Mattel of using the contention interrogatories to

18   elicit a misleading "sound bite" it can read to the jury to argue that the MGA parties concede that

19   Bryant "invented" Bratz while employed by Mattel.  The MGA parties contend that they have

20   provided adequate responses to the interrogatories using the common and ordinary meaning of the

21   term "invention," and should not be required to provide anything further.

22        Next, the MGA parties contend that they have given Mattel the principal factual and legal

23   bases for their contentions, and Rule 33 does not require them to provide anything further.  The

24   MGA parties contend that requiring a narrative response setting forth all evidence in support of

25   their contentions would render the interrogatories unduly burdensome and "inherently improper."

26   See e.g. Clean Earth Remediation & Constr. Servs. v. Am. Int'l Group, 245 F.R.D. 137, 141 (S.D.

27   N.Y. 2007) ("[A] number of cases have held that interrogatories seeking identification of all facts

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT   11

PAGE   615

1  supporting a particular allegation are *inherently improper*.").

2        Mattel's motion to compel further responses to Interrogatory Nos. 27-29 is denied because

3  the interrogatories are overbroad and unduly burdensome.  The definition of "Bratz Invention" is

4  extremely broad, encompassing numerous intellectual property concepts.  Mattel has not shown

5  how each and every concept embedded in its multi-faceted definition of "Bratz Invention" is

6  relevant to interpreting the term "invention" for purposes of enforcing the "Employee

7  Confidential Information and Inventions Agreement," signed by Bryant.  The breadth and undue

8  burden of Interrogatory Nos. 27-29 are also compounded by the fact that Mattel is employing an

9  extremely broad definition of "Bratz Invention" in a contention interrogatory seeking all facts

10  supporting the MGA parties' contentions, the identities of all persons knowledgeable, and all

11  supporting documents.  Not all contention interrogatories requiring a recitation of all facts,

12  documents and witness are objectionable.  See e.g. Tatum v. Schwartz, 2007 WL 2220977 at *1

13  (E.D. Cal. Aug. 2, 2007) (noting that contention interrogatories can impose undue burdens, but

14  that "courts have otherwise approved of them when they are limited to discrete, narrow factual

15  events"); Roberts v. Heim, 130 F.R.D. 424, 427 (N.D. Cal. 1989) (recognizing a broad spectrum

16  of contention interrogatories, and noting that it is not possible to announce a hard and fast rule as

17  to the exact amount of detail a party has to supply in response to a contention interrogatory).  In

18  the instant case, however, Mattel's contention interrogatories would force the MGA parties to

19  review the nearly 4 million pages of documents produced in this action and more than 50 days of

20  deposition testimony in search of information relating to "any representation, idea, concept, work,

21  process, procedure, plan, improvement, design or other development" that refers or relates to

22  Bratz, including "all works, designs, artwork, sketches, drawings, illustrations, representations,

23  depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,

24  rotocasts, reductions to practice, developments, inventions and/or improvements" that refer or

25  relate to Bratz.  It is not the MGA parties' responsibility to re-write the interrogatories in a

26  manner that will yield Mattel the most amount of information to support Mattel's claims and

27  defenses.  On balance, the burden of responding further to Interrogatory Nos. 27-29, as written,

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT __11__

PAGE __616__

1   outweighs the likely benefit of the interrogatories, taking into account the needs of the case, the

2   amount in controversy, the parties' resources, the importance of the issues at stake in the

3   litigation, and the importance of the proposed discovery in resolving the issues.

4          In any event, the MGA parties' responses are adequate under the circumstances.  Faced

5   with overbroad and unduly burdensome interrogatories, the MGA parties provide facts supporting

6   the contentions identified in the interrogatories, identify persons with knowledge of those facts,

7   and identify the principal documents or categories of documents that support each contention.

8   See e.g. Moses v. Halstead, 236 F.R.D. 667, 674 (D. Kan. 2006).  For example, in response to

9   Interrogatory No. 27, the MGA parties set forth their contention that the concept for a new line of

10  fashion dolls envisioned by Bryant in August and/or September of 1998 could not have been

11  patented as a utility patent because fashion dolls were in the public domain for the purposes of

12  utility patent protection.  However, the MGA parties contend that Bryant's idea of a line of

13  fashion dolls he called Bratz was sufficiently novel and original to be protected under California

14  law as a confidential novel idea under Desny v. Wilder, 46 Cal.2d 715 (1956) and its progeny.

15         The MGA parties' supplemental responses to Interrogatory No. 27 also include the MGA

16  parties' contention that Bryant's pre-1999 drawings were never reduced to practice; that design

17  patents are not available for drawings or two-dimensional flat art of the sort that Bryant sketched

18  in 1998; that Bryant was not a sculptor and any effort to translate his pre-1999 two-dimensional

19  flat art into a three-dimensional form for use as a fashion doll sculpt would have produced shapes

20  that were different from the actual shape of the final three-dimensional Bratz sculpt used in

21  manufacturing the first generation of Bratz dolls released on the market by MGA in or about June

22  2001; that the final physical shape of the first generation of Bratz dolls released on the market by

23  MGA in or about June 2001 was conceived by Margaret Leahy; and that Bryant's drawings used

24  standard fashion model poses, and thus were not novel or original.  Further, the MGA parties'

25  supplemental responses to Interrogatory No. 27 include the MGA parties' contention that the

26  drawings Bryant completed in August and September of 1998 contained original expression

27  covered by copyright, but that subsequent modifications and versions of the drawings made by

28

9

EXHIBIT  11

PAGE  617

1    Bryant in 1999 and 2000 did not contain original expression. The MGA parties also identify

2    numerous individuals having knowledge of the facts supporting their contentions, and identify

3    documents that are relevant to the MGA parties' contentions.

4    B. Interrogatory About the Identity of Former Mattel Employees Hired by MGA (No. 41)

5         Interrogatory No. 41 asks the MGA parties to "IDENTIFY" all former Mattel employees

6    "who are now or have been employed" by MGA since January 1, 1999.  More specifically,

7    Interrogatory No. 41 asks the MGA parties to:

8         IDENTIFY all PERSONS who at any time have been employed by or under
          contract with MATTEL who are now or have been employed by or under contract
9         with YOU since January 1, 1999, and, for each such PERSON, state his or her
          name, date of hire or effective date of contract, the date on which YOU first had
10        contact with such PERSON regarding potential employment or contracting, the
          date(s) on which such PERSON was interviewed for possible employment or
11        contracting, each title (if any) such PERSON has held while employed by or
          under contract with YOU, and the date of termination (if applicable).

12   In their supplemental response, the MGA parties assert numerous objections, but also provide a

13   list of well over a hundred individuals with their position title and employment dates.

14        Mattel contends that the MGA parties' response is incomplete because it does not contain

15   the date of first contact regarding potential employment or contracting, as well as the interview

16   date for potential employment or contracting.

17        The MGA parties contend that during the meet and confer process, they agreed to

18   investigate whether the additional requested information was reasonably available.  The MGA

19   parties represent that they are in the process of looking for the requested information, and that

20   they will supplement their response if the information is reasonably available without undue

21   burden.

22        Mattel's motion to compel a further response to Interrogatory No. 41 is granted in part.

23   The requested information is clearly relevant to Mattel's claims, and the MGA parties do not

24   contend otherwise.  In particular, the date of first contact, interview date, start date and end date

25   for Bryant's employment are highly relevant, but are conspicuously absent from the MGA

26   parties' response.  The MGA parties shall provide the missing information for Bryant.  In

27

28

1    addition, the MGA parties shall provide the interview dates for each of the individuals identified

2    in their supplemental responses.  The interview dates are potentially relevant to Mattel's claim

3    that the MGA parties induced former Mattel employees to abscond with Mattel's trade secrets.

4    However, the MGA parties are not required to provide the date of first contact for each individual

5    because the burden of producing such information outweighs its likely benefit, taking into

6    account the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

7    C. Interrogatories re Allegedly Copied or Infringed Products (Nos. 43-44)

8        Interrogatory Nos. 43 and 44 request dates on which each "concept, design, product,

9    product packaging or other matter that YOU contend Mattel copied or infringed" was (1)

10    "conceived" and (2) "first fixed in any tangible medium of expression," and the identity of

11    persons with knowledge and documents that refer or relate to the foregoing.  In the responses, the

12    MGA parties state numerous objections, but also refer Mattel to MGA's response to Interrogatory

13    No. 3 of Mattel's First Set of Interrogatories re Claims of Unfair Competition.  The MGA parties

14    also respond that, in general, at MGA, product development is completed 7-8 months before the

15    first invoice date, although that time period could be reduced in certain situations to 5-6 months.

16        Mattel contends that the information it seeks is relevant to its defense against MGA's

17    claims that Mattel copied or infringed MGA's products.  One of Mattel's defenses is that "Mattel

18    was the one who came up with relevant matters first – before MGA – and that MGA was the one

19    who copied or stole from Mattel."  Mattel's Motion at p.23.  Mattel contends that the MGA

20    parties' responses to Interrogatory Nos. 43 and 44 are inadequate because the referenced

21    Interrogatory No. 3 requested different information, namely the dates on which the products were

22    first "disclosed to any PERSON not employed by MGA" and first "made available for sale."

23        In response to the instant motion to compel, the MGA parties represent that they are

24    assessing whether they can provide more specific information without undue hardship, and will

25    supplement their responses if such information is available.  MGA's Opposition at p.29.

26        Mattel's motion to compel further responses to Interrogatory Nos. 43 and 44 is granted.

27    The requested information is relevant to Mattel's defense against the MGA parties' claims that

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT ||

PAGE 619

1    their products have been copied or infringed by certain Mattel products.  Although the MGA

2    parties served supplemental responses after filing their opposition brief, the supplemental

3    responses do not include the requested information.  The MGA parties have failed to establish

4    that the interrogatories are unduly burdensome.

5    D. Interrogatories About the Trade Dress MGA Claims Mattel Products Infringe (Nos. 48-50)

6         Interrogatory Nos. 48-50 are directed to the MGA parties' trade dress claims:

7         **Interrogatory No. 48**:  Separately IDENTIFY each trade dress that YOU
          contend MATTEL has copied, infringed or diluted or that is otherwise the
8         subject of YOUR claims, defenses or allegations in THIS ACTION.

9         **Interrogatory No. 49**:  For each trade dress identified in response to
          Interrogatory No. 48, separately and fully IDENTIFY each and every MATTEL
10        product, packaging or other matter that YOU contend copies, infringes or dilutes
          such trade dress, including without limitation by describing fully and separately,
11        for each such MATTEL product, packaging or other matter, each and every
          element of the claimed trade dress that YOU contend MATTEL has copied,
12        infringed or diluted.

13        **Interrogatory No. 50**:  For each trade dress identified in response to
          Interrogatory No. 48, separately and completely IDENTIFY all facts that support
14        YOUR contention that such trade dress is protectible, all DOCUMENTS that
          REFER OR RELATE to the foregoing and all PERSONS with knowledge of the
15        foregoing.

16        Mattel contends that these interrogatories seek core contentions underlying the MGA

17   parties' trade dress infringement claims and that the partial responses provided are inadequate

18   because they set forth only the "basic facts" without identifying a single product that MGA

19   alleges was infringed or any other details.  Mattel also contends that the responses are improper

20   insofar as the MGA parties state that their responses "may be incomplete" as the subject matter of

21   this interrogatory will be the source of expert testimony and an expert may identify additional

22   facts that support MGA's contentions.  Mattel contends that such a limitation would allow MGA

23   to sandbag Mattel by introducing new products into the litigation after fact discovery has closed.

24        As a preliminary matter, the MGA parties contend that Interrogatory Nos. 48-50 are

25   directed to a Phase 2 issue, and therefore, they reserve their right to supplement the responses in

26   Phase 2.  Nevertheless, the MGA parties contend that their responses provide Mattel with the

27   principal facts supporting their contentions in compliance with Rule 33.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT __11__

PAGE __620__

1    Mattel's motion to compel further responses to Interrogatory Nos. 48-50 is denied.  The

2  MGA parties are in substantial compliance with Rule 33, having identified numerous elements of

3  trade dress they contend Mattel has infringed.  More specifically, the MGA parties' responses

4  identify Mattel's "My Scene" fashion dolls and pet dolls as the Mattel products that infringe their

5  trade dress.  The MGA parties also set forth the principal facts supporting their contention that

6  their trade dress is protectible under the applicable trade dress legal principles, including that the

7  trade dress is aesthetic and non-functional, inherently distinctive, and has acquired secondary

8  meaning.  That the interrogatory responses include a reservation of rights to supplement during

9  expert discovery does not render the responses inherently improper or inadequate.  Mattel does

10  not contest that the identification of the elements and products subject to trade dress infringement

11  will be a subject of expert testimony.

12  E. Interrogatory About the Identity of MGA's Bank Accounts (No. 39)

13    Interrogatory No. 39 asks MGA to "IDENTIFY each and every bank or financial

14  institution account that REFERS OR RELATES TO YOU, including accounts in YOUR name or

15  for YOUR benefit, since January 1, 1999."  The MGA parties objected to this interrogatory as

16  seeking information "not relevant to the claims or defenses of any party to the action and not

17  reasonably calculated to lead to the discovery of admissible evidence.

18    Mattel contends that the information sought is discoverable because it may lead to direct

19  evidence of liability regarding Mattel's allegations of commercial bribery against MGA and

20  Larian.  More specifically, Mattel contends that the timing and amounts of payments made to

21  Bryant and to other then-Mattel employees from MGA's bank accounts would establish

22  commercial bribery and other tortious conduct.  Mattel also contends that the timing of such

23  payments would also be indicative of the timing of Bryant's first involvement with MGA.

24  Further, Mattel contends that the requested information is relevant to establish net worth for

25  purposes of calculating punitive damages.  Mattel also contends that the MGA parties' objection

26  based upon Rule 69(a), Fed.R.Civ.P., is without merit because the requested information is

27  independently relevant to many issues in the liability phase of trial, and is not just directed at

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT __11__

PAGE __621__

1  seeking discovery in aid of a judgment or execution.

2      The MGA parties contend that Mattel is not entitled to the sweeping financial data sought

3  in Interrogatory No. 39. The MGA parties are particularly concerned that Mattel will use the

4  information it obtains pursuant to Interrogatory No. 39 to launch abusive third-party discovery for

5  even more private financial information. Further, the MGA parties contend that Mattel has

6  already received substantial financial information from MGA Entertainment, Inc. directly, and

7  has not shown how that information is insufficient. More specifically, the MGA parties point out

8  that Mattel already has audited and unaudited quarterly and annual profit and loss statements;

9  audited and unaudited quarterly and annual statements; annual reports; various MGA financial

10  reports; various financial documents relating to Veronica Marlow; documents showing royalty

11  payments to Bryant; documents showing MGA's sales, returns and costs of good sold for each

12  month, by SKU, since 2001; documents showing MGA's promotional advertising and media

13  expenditures, including MGA's internal allocation of those expenditures by brand and/or product;

14  documents showing MGA's amortization and depreciation of certain capital assets and

15  expenditures; documents showing MGA's monthly general ledger entries aggregated by account,

16  including income and expense accounts, reserves and liabilities; and documents sufficient to

17  explain MGA's various accounts as presently and historically maintained in MGA's books and

18  records, as well as various nomenclature assigned to items, products, brands, sub-brands, and

19  profit centers. MGA's Opposition at pp. 10-11. Further, the MGA parties contend that MGA's

20  witness, Lisa Tonnu, has testified regarding payments to Mr. Bryant.

21      Mattel's motion to compel a further response to Interrogatory No. 39 is denied on the

22  grounds that the financial information sought is cumulative of other discovery already sought and

23  obtained by Mattel, as outlined above by the MGA parties. Mattel has also sought and obtained

24  documents sufficient to identify each of Mr. Larian's bank accounts or financial institutions and

25  other banking relationships since January 1, 1999. See Order Granting in Part and Denying in

26  Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for

27  Sanctions (Document Request No. 207). Further, as Mattel acknowledges, Mattel has sought and

28

1  obtained deposition testimony regarding payments to Mr. Larian, including the account to which

2  such payments were made.  See Order Granting in Part and Denying in Part Mattel's Motion to

3  Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6).

4  In light of the financial information discovery Mattel has already obtained, Interrogatory No. 39 is

5  unjustified, taking into consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

6  F. Contention Interrogatories (Nos. 30-38 and 42)

7       Mattel served several contention interrogatories on several additional topics.  The

8  remaining contention interrogatories at issue are set forth below.

**Interrogatory No. 30:** State all facts that support YOUR contention, if YOU so contend, that, assuming BRYANT assigned rights in any BRATZ INVENTION to MATTEL pursuant to the INVENTIONS AGREEMENT, MGA is entitled to priority over and/or has superior rights to MATTEL as to such BRATZ INVENTION, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 31:** State all facts that support YOUR contention, if YOU so contend, that the INVENTIONS AGREEMENT is not valid and enforceable, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 32:** State all facts that support YOUR contention, if YOU so contend, that MATTEL is not or would not be entitled to injunctive relief as requested in its COMPLAINT and/or COUNTERCLAIMS if it is not ultimately determined that MATTEL owns one or more BRATZ INVENTIONS, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 33:** State all facts that support YOUR contention, if YOU so contend, that MATTEL is not entitled to an award of punitive or exemplary damages against YOU, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 34:** State all facts that support YOUR contention, if YOU so contend, that YOU did not intentionally interfere with the INVENTIONS AGREEMENT when BRYANT purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 35:** State all facts that support YOUR contention, if YOU so contend, that YOU did not aid or abet any breach of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL when BRYANT performed work or services with or for MGA while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 36:** State all facts that support YOUR contention, if YOU so

EXHIBIT  11

PAGE  623

contend, that YOU acted with an innocent state of mind or reasonably believed
that MATTEL did not own any rights in any BRATZ INVENTION when Bryant
purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ,
and IDENTIFY all PERSONS with knowledge of such facts and all
DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 37:** State all facts that support YOUR contention, if YOU so
contend, that BRYANT did not breach the INVENTIONS AGREEMENT when
BRYANT purported to TRANSFER right to BRATZ to MGA, and IDENTIFY
all PERSONS with knowledge of such facts and all DOCUMENTS that REFER
OR RELATE TO such facts.

**Interrogatory No. 38:** State all facts that support YOUR contention, if YOU so
contend, that BRYANT did not breach BRYANT's duty of loyalty or fiduciary
duties to MATTEL when BRYANT performed work or services with or for
MGA while BRYANT was employed by MATTEL, and IDENTIFY all
PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
RELATE TO such facts.

**Interrogatory No. 42:** State all facts that support YOUR contention, if YOU so
contend, that any BRATZ DOLLS are not BASED ON BRATZ DESIGNS
created by BRYANT on or before October 19, 2000, and IDENTIFY all
PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
RELATE TO such facts.

Mattel contends that each of these interrogatories seeks facts relating to key issues in this case,

including MGA's contentions, if any, regarding the priority of Mattel's rights in Bratz vis-à-vis

MGA; how Bryant's Inventions Agreement with Mattel, Bryant's assignment of rights to Bratz

inventions to MGA, and Bryant's services with or for MGA while employed by Mattel affect who

owns the rights to Bratz inventions; Mattel's alleged entitlement to punitive damages and other

relief; MGA's purported innocent state of mind; MGA's alleged intentional interference with the

Inventions Agreement; MGA's alleged aiding and abetting of Bryant's breach of fiduciary duty

and duty of loyalty to Mattel; why the Bratz dolls purportedly are not based on designs Bryant

created during his Mattel employment; and why the trade dress MGA contends Mattel infringed is

protectible.  Mattel contends that the MGA parties cannot show burden sufficient to outweigh

Mattel's need for the information sought.

In addition to the objections discussed in connection with Interrogatory Nos. 27-29, the

MGA parties contend that they have given sufficient responses to Interrogatory Nos. 30 and 42.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT 11
PAGE 624

1    As for Interrogatory Nos. 31-38, the MGA parties contend that the interrogatories improperly

2    assume that Mattel owns Bryant's original idea for Bratz and ask the MGA parties to explain why

3    they should not be punished for developing Bryant's ideas.  Nevertheless, the MGA parties

4    represent that they responded to the interrogatories in good faith by providing the principal facts

5    supporting their contentions, and therefore are in compliance with Rule 33.

6         Mattel's motion to compel a further response to Interrogatory No. 30 is denied.  Like

7    Interrogatory Nos. 27-29, the definition of "Bratz Invention" in No. 30, combined with the

8    request for all facts, the identity of all persons and all supporting documents, render the

9    interrogatory overbroad and unduly burdensome.  In any event, the MGA parties have provided a

10   reasonably sufficient response.  The MGA parties' supplemental response includes their

11   contention that the "Inventions Agreement" did not apply to design patent rights.  Further, the

12   MGA parties contend that (a) the pre-October 21, 2000 drawings of characters that Bryant named

13   Bratz were never reduced to practice; (b) under 35 U.S.C. §171, design patents are available for

14   three-dimensional objections, not drawings or two-dimensional flat art of the sort that Bryant

15   sketched in 1998; (c) Bryant was not a sculptor, and any direct translation of his pre-October 21,

16   2000 two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt would

17   have produced shapes that were different from the actual shape of the final three-dimensional

18   Bratz sculpt used in manufacturing the first generation of Bratz dolls released on the market by

19   MGA in or about June 2001; (d) the final physical shape of the first generation of Bratz dolls,

20   released on the market by MGA in or about June 2001 was "conceived of" and "reduced to

21   practice" by Margaret Leahy, working on behalf of MGA, after October 20, 2000 and before June

22   1, 2001, along with other MGA agents and employees; (e) Bryant's drawings used standard

23   fashion model poses, and thus were not novel or original; and (f) the "dummy" brought by Bryant

24   to his meeting with MGA on September 1, 2000, was merely an assemblage of random pre-

25   existing doll parts that was never intended to, and did not, provide an accurate representation of

26   what became the Bratz sculpt.  Based on the foregoing, the MGA parties contend that, assuming

27   arguendo that both Bryant assigned his 1998 drawings to Mattel and that such drawings were the

28

EXHIBIT  11

PAGE  625

1  conception of what could have been developed into a tangible item that would have qualified for

2  protection under a design patent, such conception would not have covered the shape of the final

3  Bratz sculpt utilized in the first generation of Bratz dolls released to market in or about June 2001,

4  nor any subsequent three-dimensional Bratz shape.  The MGA parties' supplemental responses to

5  Interrogatory No. 30 also address copyright protection and trademark protection, and identify

6  persons with knowledge and documents relevant to the MGA parties' contentions.

7         Mattel's motion to compel further responses to Interrogatory Nos. 31-37 and 42 is denied.

8  The MGA parties are in substantial compliance with Rule 33, having set forth sufficient facts,

9  identified persons with knowledge, and identified documents to support their contentions.  To

10  require any further information would be unduly burdensome, taking into consideration all of the

11  factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

12         Mattel's motion to compel a further response to Interrogatory No. 38 is granted, however,

13  because the supplemental response does not identify supporting documents.

14  G. Interrogatories About MGA's Searches for Documents (40 and 47)

15         Mattel has propounded two interrogatories to the MGA parties about their searches for

16  documents and storage devices containing evidence of early work on Bratz:

17         **Interrogatory No. 40:**  IDENTIFY each and every STORAGE DEVICE that
        YOU have used for any purpose which contains or contained DIGITAL
18         INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL prior
        to January 1, 2002.

·19
        **Interrogatory No. 47:**  IDENTIFY each and every SOURCE OF
20         INFORMATION from which YOU have COLLECTED DOCUMENTS in THIS
        ACTION that REFER OR RELATE TO BRATZ and that also REFER OR
21         RELATE TO the time period prior to February 28, 2001 (regardless of when such
        DOCUMENT was, in whole or part, created, drafted, generated, sent, received or
22         transmitted).

23  In response to Interrogatory No. 40, the MGA parties described the computer systems that existed

24  worldwide at MGA prior to January 1, 2002.  The MGA parties did not provide any substantive

25  response to No. 47.

26         Mattel contends that the interrogatories are designed to test MGA's productions in this

27  litigation and obtain additional responsive documents and information.  Further, Mattel contends

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                                                          18

EXHIBIT  11

PAGE  626

1   that there is legal precedent allowing access to a party's information storage systems where the

2   party is shown to have improperly withheld relevant documents or information.  Mattel contends

3   that Interrogatory No. 40 seeks legitimate discovery regarding the identification of MGA's

4   storage devices because Mattel may have a right to access such storage devices.  In particular,

5   Mattel contends that it is entitled to, but the MGA parties have failed to provide, an identification

6   of specific storage devices, the individuals who have used them, the persons who currently

7   possess them, and the dates on which they were destroyed or copied, if any.  Mattel contends that

8   the information requested in Interrogatory No. 40 is necessary to determine whether MGA has

9   withheld responsive documents and to enable Mattel to obtain such documents.

10          Similarly, Mattel contends that Interrogatory No. 47 seeks relevant information regarding

11   the sources of information – i.e. the media – from which the MGA parties have collected

12   documents relating to Bratz and the period prior to February 28, 2001.  Mattel contends that the

13   information it seeks will enable it to determine what sources the MGA parties have examined and

14   have not examined to produce documents in the case.

15          During the meet and confer process, the MGA parties proposed that the parties exchange

16   "source logs" regarding the entirety of their productions in lieu of MGA's responses to Nos. 40

17   and 47.  The "source logs" would provide each document's Bates number, the identity of the

18   individual associated with or who maintained the document and the location where the document

19   was found.  Mattel contends that the "source log" proposal is unnecessary because Mattel is only

20   seeking information about key early Bratz documents, not every document produced in the case.

21   Mattel also contends that the "source log" proposal is unacceptable because the "source log,"

22   would not reveal sources that contain early Bratz documents that MGA has not produced

23   documents from, or where MGA looked for documents, as well as where MGA failed to look.

24          The MGA parties contend that the interrogatories assume, without any factual support,

25   that the MGA parties are aware of the existence of Bratz documents on their computer systems

26   that relate to the time period prior to January 1, 2002, and have not produced those documents.

27   The MGA parties contend that Mattel's speculation is not a basis to compel further responses to

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

EXHIBIT  11

PAGE  627

1    Interrogatory Nos. 40 and 47.  The MGA parties emphasize that they have already produced more

2    than 3.7 million pages of documents, whereas Mattel has only produced a few hundred thousand

3    pages of documents.  Furthermore, the MGA parties contend that these interrogatories are

4    cumulative of deposition testimony Mattel has previously sought and obtained regarding the

5    collection of documents produced in this action.  The MGA parties also represent that they have

6    agreed to provide additional testimony on this topic.

7            Mattel's motion to compel further responses to Interrogatory Nos. 40 and 47 is granted.

8    The interrogatories seek relevant information about the identity of each storage device that

9    contains or contained information referring or relating to Bratz prior to January 1, 2002, and other

10   sources of information from which the MGA parties collected documents in this action that refer

11   or relate to Bratz and the time period prior to February 28, 2001.  The "source log" information is

12   not a reasonable substitute for the information requested in the interrogatories because it would

13   not necessarily identify all storage devices used by the MGA parties during the relevant period.

14   The interrogatories are narrowly tailored to a key subject, namely early Bratz documents and

15   other information.  The MGA parties have failed to establish that the interrogatories are unduly

16   burdensome.  Nor are the interrogatories cumulative of other discovery propounded by Mattel.

17   Interrogatory Nos. 40 and 47 have the potential of imparting more detailed information than a

18   witness might be able to recall in the course of a deposition.  Furthermore, the information sought

19   in Interrogatory Nos. 40 and 47 will enable Mattel to question MGA's witnesses more effectively.

20   H. Interrogatory Regarding MGA's Substitution of Counsel (No. 46)

21           Interrogatory No. 46 seeks facts regarding MGA's substitution of counsel as follows:

22   **Interrogatory No. 46:**  Without disclosing the content of communications which
     are protected by the attorney-client privilege, state fully and in detail all facts

23   which REFER OR RELATE TO any dispute regarding THIS ACTION between,
     on the one hand, MGA, LARIAN, BRYANT and/or MACHADO and, on the

24   other hand, O'MELVENY and/or CHRISTENSEN, including but not limited to
     any and all disputes which were or have been asserted as a basis for, or which

25   underlie, contributed to or were a factor in, the withdrawal, termination and/or
     substitution of O'MELVENY and/or CHRISTENSEN as counsel of record in this

26   ACTION, and IDENTIFY all PERSONS with knowledge of such facts and all
     DOCUMENTS that REFER OR RELATE TO such facts.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

· 20

EXHIBIT   11

PAGE   628

1   Mattel contends that the interrogatory is limited to facts, and does not require the disclosure of

2   information protected by either the attorney-client privilege or the work product doctrine.

3   Further, Mattel contends that the requested facts are relevant and discoverable.  Mattel reasons

4   that O'Melveny cited to California Rule of Professional Conduct 3-700(c) as the basis for its

5   motion to withdraw, and that Rule 3-700(c) sets forth several grounds for withdrawal that could

6   be relevant to the case.  For example, Mattel contends that O'Melveny may have withdrawn

7   because MGA sought to provide false testimony, or was seeking "to pursue an illegal course of

8   conduct" or "insist[ed] that counsel pursue a course of conduct that is illegal or prohibited under

9   the State Bar Act."  Mattel's Motion at p. 38.

10         The MGA parties contend that Interrogatory No. 46 is predicated upon an imagined

11   "dispute" with former counsel, and moreover, that the information sought is protected by the

12   work product doctrine and/or attorney-client privilege.  The MGA parties reason that even if

13   Mattel is correct that there was some sort of dispute, either (1) the dispute does not relate to the

14   claims and defenses in this action, and therefore the requested information is irrelevant and

15   outside the proper scope of discovery, or (2) the dispute does relate to the claims or defenses in

16   this action, such that revelation of the substance of the dispute would necessarily reveal the

17   thought processes of trial counsel and the communication of those thought processes to the MGA

18   parties.

19         Mattel's motion to compel is denied as to Request No. 46.  The interrogatory is not

20   tethered to any particular claim or defense.  Nor is the interrogatory directed at uncovering the

21   factual events giving rise to any claim or defense.  Instead, the interrogatory assumes that there

22   was a "dispute" with former counsel involving false testimony, illegal conduct, or attorney

23   misconduct; that this "dispute" led to the withdrawal, termination and/or substitution of counsel;

24   and that this "dispute" potentially relates to a claim or defense in this suit.  There is no evidence,

25   however, to substantiate such a series of assumptions.  Although the publicly available

26   information suggests that there was a breakdown of the attorney-client relationship, this evidence,

27   without more, is insufficient to justify Interrogatory No. 46 because the burden or expense of the

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

21

EXHIBIT ___11___

PAGE __629__

1  proposed discovery outweighs its likely benefit under Rule 26(b)(2)(C), Fed.R.Civ.P.

2  Furthermore, the interrogatory is grossly overbroad in seeking information about "any and all

3  disputes" with former counsel, regardless of whether such disputes relate to a claim or defense in

4  the case.

5       The interrogatory is also objectionable because it intrudes upon MGA's relationship with

6  former counsel, and thus necessarily intrudes upon the protections afforded by the attorney-client

7  privilege and work product doctrine.  Mattel's rank speculation that there were attorney-client

8  discussions of wrongdoing is insufficient to vitiate the attorney-client privilege.  See e.g. In re

9  Napster, Inc. Copyright Litig., 479 F.3d 1078, 1090 (9th Cir. 2007).  Nor have the MGA parties

10  waived the attorney-client privilege.  Although the MGA parties discussed the reasons for their

11  substitution of counsel with the press, there has been no showing that the information they

12  disclosed revealed the substance of an attorney-client privileged communication.

13  V. CONCLUSION

14       For the reasons set forth above, it is hereby ordered as follows:

15       1.  Mattel's motion to compel is granted as to Interrogatory Nos. 38, 40, 41 (as narrowed),

16  43-44 and 47.  The MGA parties shall serve supplemental responses to said interrogatories no

17  later than February 26, 2008.

18       2.  Mattel's motion to compel is denied as to Interrogatory Nos. 27-37, 39, 42, 46 and 48-

19  50.

20  Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

21  Mattel shall file this Order with the Clerk of Court forthwith.

22

23  Dated: February 15, 2008

24                           HON. EDWARD A. INFANTE (Ret.)

25                             Discovery Master

26

27

28

EXHIBIT  11

PAGE  630

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on February 15, 2008, I

served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION

TO COMPEL RESPONSES TO INTERROGATORY NOS. 27-44 AND 46-50 BY THE MGA

PARTIES in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above

is true and correct.

Executed on February 15, 2008, at San Francisco, California.

_Sandra Chan_

Sandra Chan

EXHIBIT **11**

PAGE **631**

EXHIBIT 12

1 | Hon. Edward A. Infante (Ret.)
2 | JAMS
Two Embarcadero Center
3 | Suite 1500
San Francisco, California  94111
4 | Telephone:    (415) 774-2611
Facsimile:    (415) 982-5287

5

6

7

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

EASTERN DIVISION

11

12

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| | JAMS Reference No. 1100049530 |
| Plaintiff, | |
| | |
| v. | Consolidated with |
| | Case No. CV 04-09059 |
| MATTEL, INC., a Delaware corporation, | Case No. CV 05-2727 |
| | |
| Defendant. | **ORDER DENYING MATTEL'S** |
| | **MOTION TO COMPEL RESPONSES** |
| | **TO INTERROGATORY NOS. 27-33,** |
| | **36-40, 42, 45 AND 47 BY CARTER** |
| | **BRYANT** |
| CONSOLIDATED WITH | |
| MATTEL, INC. v. BRYANT and | |
| MGA ENTERTAINMENT, INC. v. MATTEL, | |
| INC. | |

I. INTRODUCTION

On December 13, 2007, Mattel, Inc. ("Mattel") submitted a Motion to Compel Responses to Interrogatory Nos. 27-33, 36-40, 42, 45 and 47 by Carter Bryant ("Bryant").  On December 17, 2007, Bryant served supplemental responses, and on December 20, 2007, Bryant submitted an opposition brief.  Mattel submitted a reply on December 27, 2007.  On January 28, 2008, Bryant served second supplemental responses, which he later submitted to the court on February 6, 2008.

EXHIBIT __12__

PAGE __632__

1   The matter was heard on February 11, 2008.

2   Mattel contends that all of the interrogatories at issue are relevant to central issues in the

3   case and that Bryant's interrogatory responses are deficient. Mattel contends that Bryant's

4   responses include unsubstantiated boilerplate objections that should all be overruled. In

5   particular, Mattel contends that Bryant's "unduly burdensome" objection to all interrogatories

6   asking him to state "all facts" is meritless because such contention interrogatories are commonly

7   used to elucidate facts regarding a party's contentions, and numerous courts have held them

8   proper. Mattel also emphasizes that "[t]his is a high stakes litigation for all parties, and Bryant is

9   a defendant and central figure in it." Mattel's Motion at p.3. Further, Mattel contends that Bryant

10   is willfully refusing to provide complete responses to the interrogatories at issue, and therefore

11   Mattel seeks $3,000 in sanctions.

12   Bryant contends that Mattel's motion is moot because he served supplemental responses

13   to all of the interrogatories except for the one that he contends is clearly objectionable.

14   Alternatively, Bryant contends that the motion is premature because it was filed before Mattel

15   ever received, much less analyzed or sought to meet and confer regarding, his supplemental

16   responses. Bryant requests that the court deny the motion as premature, without regard to the

17   substance of the motion, and sanction Mattel in the amount of $3,000 for failing to meet and

18   confer regarding his supplemental responses.

19   On the merits of the motion, Bryant contends that his objections should not be overruled

20   *en masse*, as requested by Mattel, because the interrogatories are defective in many respects and

21   his objections to them are specific and proper. In particular, Bryant contends that the

22   interrogatories requiring him to "state all facts" regarding his contentions are overbroad and

23   unduly burdensome.

24   ## II. STANDARDS

25   Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

26   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

27   party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT 12

PAGE 633

1    permitted.  See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

2    2004) ("District courts need not condone the use of discovery to engage in 'fishing

3    expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

4    (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

5    (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

6    the phrase "subject matter involved in the pending action," were intended to prevent discovery

7    that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

8    litigate the issues presented by the pleadings but to develop new claims or defenses.).

9          Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

10   extent of use of the discovery methods if the court determines that (i) the discovery sought is

11   unreasonably cumulative or duplicative, or is obtainable from some other source that is more

12   convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

13   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

14   expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

15   the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

16   the litigation, and the importance of the proposed discovery in resolving the issues.  Fed.R.Civ.P.

17   26(b)(2)(C).

18         Rule 33 of the Federal Rules of Civil Procedure allows a party to propound interrogatories

19   and requires the responding party to furnish such information as is available to the party after

20   conducting a reasonable inquiry.  "Each interrogatory must, to the extent it is not objected to, be

21   answered separately and fully in writing under oath."  Fed.R.Civ.P. 33(b)(3).  "The grounds for

22   objecting to an interrogatory must be stated with specificity."  Fed.R.Civ.P. 33(b)(4).

23                                     III. DISCUSSION

24   A. Interrogatories About the Identity of Bratz Inventions (Nos. 27, 28 and 29)

25         Interrogatory Nos. 27-29 request information relating to Bratz inventions created during

26   three different time periods, specifically before, during and after Bryant's employment with

27   Mattel.  Mattel's motion to compel further responses to Interrogatory Nos. 27-29 is denied

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              3

EXHIBIT __12__

PAGE __634__

1  because the interrogatories are overbroad and unduly burdensome.  Among other things, the

2  definition of "Bratz Invention" is extremely broad, encompassing numerous intellectual property

3  concepts.  Mattel has not shown how each and every concept imbedded in its multi-faceted

4  definition of "Bratz Invention" is relevant to interpreting the term "invention" for purposes of

5  enforcing the "Employee Confidential Information and Inventions Agreement," signed by Bryant.

6  The breadth and undue burden of Interrogatory Nos. 27-29 are also compounded by the fact that

7  Mattel is employing an extremely broad definition of "Bratz Invention" in a contention

8  interrogatory seeking all facts supporting Bryant's contentions, the identities of all persons

9  knowledgeable, and all supporting documents.

10      In any event, Bryant's second supplemental responses are adequate under the

11  circumstances.  Faced with overbroad and unduly burdensome interrogatories, Bryant provides

12  facts supporting the contentions identified in the interrogatories, identifies persons with

13  knowledge of those facts, and identifies the principal documents or categories of documents that

14  support each contention.  See e.g. Moses v. Halstead, 236 F.R.D. 667, 674 (D. Kan. 2006).  For

15  example, in response to Interrogatory No. 27, Bryant sets forth his contention that the conception

16  and/or reduction to practice of any "invention," as that term is defined in utility patent law and/or

17  the "Inventions Agreement," occurred before January 1999 and/or after October 20, 2000.  With

18  respect to design patents, Bryant contends that in or about August 1998, inspired by images he

19  was exposed to, including in the August 1998 issue of *Seventeen Magazine*, the appearance of

20  teenagers he observed at the time, as well as other images in the public domain, he conceived of

21  an idea for a line of dolls he named Bratz and sketched a series of drawings to illustrate his idea.

22  Bryant's second supplemental response to Interrogatory No. 27 also includes his contention that

23  to the extent his idea contained elements covered by design patent law, no such invention was

24  "reduced to practice" until after October 20, 2000.  Further, Bryant contends that his idea did not

25  fall within the scope of the term "invention" as used in the "Inventions Agreement."

26      Bryant also identifies portions of his deposition testimony by page and line number that

27  are relevant to Interrogatory No. 27.  Bryant also identifies numerous individuals having

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT  12

PAGE  635

1    knowledge of the facts supporting his contentions, and describes documents and/or identifies

2    documents by bates number that are relevant to his contentions.

3         On balance, the burden of responding further to Interrogatory Nos. 27-29, as written,

4    outweighs the likely benefit of the interrogatories, taking into account the needs of the case, the

5    amount in controversy, the parties' resources, the importance of the issues at stake in the

6    litigation, and the importance of the proposed discovery in resolving the issues.

7    B. Interrogatory About the Identity of Bryant's Bank Accounts (No. 39)

8         Interrogatory No. 39 asks Bryant to identify his bank and other financial institution

9    accounts.  Mattel's motion to compel a further response to Interrogatory No. 39 is denied.  The

10   interrogatory is overbroad, requiring account information for any account, no matter under whose

11   name or whose benefit, that in any way mentions Bryant or reflects his existence.  The

12   interrogatory also implicates Bryant's (and others) privacy interests, without reasonable

13   justification.  Mattel attempts to justify Interrogatory No. 39 as seeking information relevant to a

14   host of issues, including Mattel's claims for commercial bribery and other allegedly tortious

15   conduct, the timing of Bryant's first involvement with MGA, bias and punitive damages.  The

16   interrogatory, however, is not reasonably tailored to seek such information, and goes far beyond

17   what is relevant.  Furthermore, to the extent Interrogatory No. 39 seeks relevant information, that

18   information is readily available through alternative less intrusive sources.  For example, Bryant

19   represents that he has produced and will continue to produce his royalty statements from MGA.

20   Mattel has also had the opportunity to depose Bryant and MGA, and to obtain relevant financial

21   information from MGA.  In light of the financial information Mattel has already obtained and will

22   continue to receive, Interrogatory No. 39 is unjustified, taking into consideration all of the factors

23   set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

24   C. Interrogatory about Bryant's Profits from Bratz (No. 45)

25        Interrogatory No. 45 asks Bryant to identify each "Bratz Product" that has been sold by

26   him or his licensees, and for each "Bratz Product," state (a) the number of units of each "Bratz

27   Product" sold; (b) the gross and net revenue received by Bryant from such sales; (c) all costs

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 12

PAGE 636

1   incurred in connection with each "Bratz Product"; and (d) Bryant's gross and net profits from

2   each "Bratz Product."  Mattel's motion to compel a further response to Interrogatory No. 45 is

3   denied because Bryant is in substantial compliance with Rule 33.  In his second supplemental

4   response, Bryant states that he has not sold any "Bratz Product" as that term is commonly defined

5   and understood or as it is specially defined by Mattel in connection with this interrogatory.

6   Bryant explains that pursuant to a contract he executed in October 2000, he transferred rights to

7   his idea for a line of dolls he had named Bratz to MGA Entertainment, Inc.  Bryant also identifies

8   the contract by bates number, and explains that he is entitled to receive royalties on the sales of

9   any MGA products developed by MGA on which Bryant has provided his consulting services.

10  Further, Bryant represents that he has produced or will produce documents sufficient to show the

11  total royalties he received pursuant to his contract with MGA, and identifies numerous responsive

12  documents produced to date by bates number.  To require any further response to Interrogatory

13  No. 45 would be unduly burdensome, taking into consideration all of the factors set forth in Rule

14  26(b)(2)(C), Fed.R.Civ.P.

15  D. Contention Interrogatories (Nos. 30-33, 36-38 and 42)

16      Interrogatory Nos. 30-33, 36-38 and 42 seek facts relating to several issues in this case,

17  including Bryant's contentions, if any, regarding the priority of Mattel's rights in Bratz vis-à-vis

18  MGA; the validity and enforceability of Bryant's Inventions Agreement with Mattel; Mattel's

19  alleged entitlement to injunctive relief; Mattel's alleged entitlement to punitive or exemplary

20  damages; whether Bryant acted with an innocent statement of mind; and whether the Bratz dolls

21  are not based on designs Bryant created during his Mattel employment.

22      Mattel's motion to compel further responses to Interrogatory Nos. 30-33, 36-38 and 42 is

23  denied.  Bryant is in substantial compliance with Rule 33, Fed.R.Civ.P., having set forth sufficient

24  facts, identified persons with knowledge, and identified documents to support his contentions.

25  For example, in his second supplemental response to Interrogatory No. 33, Bryant incorporates by

26  reference his responses to Interrogatory Nos. 27-29, and responds further that hypothetically

27  assuming that he assigned rights to inventions related to Bratz pursuant to the "Invention

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT 12
PAGE 637

1  Agreement," MGA would have superior rights in the Bratz dolls because: (1) there were no

2  "inventions" related to Bratz covered by the "Inventions Agreement" during the period of

3  Bryant's employment with Mattel; (2) the Bratz dolls that were first marketed by MGA in 2001

4  were neither substantially similar to, nor a copy of, nor derivative of, any Bratz invention that

5  hypothetically could have been assigned to Mattel pursuant to the "Inventions Agreement"; and

6  (3) Mattel is precluded from enforcing any rights it may have had to any Bratz inventions due to

7  laches, the statute of limitations, unclean hands, estoppel, waiver and consent. Bryant also

8  identifies all persons and documents identified by MGA in its responses to this interrogatory and

9  interrogatories on related subject matter. To require any further information would be unduly

10  burdensome, taking into consideration all of the factors set forth in Rule 26(b)(2)(C),

11  Fed.R.Civ.P.

12  E. Interrogatories About Bryant's Searches for Documents (40 and 47)

13       Mattel has propounded two interrogatories to Bryant about his searches for documents and

14  storage devices containing evidence of early work on Bratz. Mattel's motion to compel further

15  responses to Interrogatory Nos. 40 and 47 is denied because Bryant is in substantial compliance

16  with Rule 33, Fed.R.Civ.P. In his supplemental responses, Bryant provides responsive

17  information about an HP desktop computer and a Compaq Presario Laptop. Bryant also identifies

18  portions of his deposition testimony by page and line number where he discusses the use of a

19  computer at his parents' home and his occasional use of Elise Cloonan's computer.

20                                    IV. CONCLUSION

21       For the reasons set forth above, Mattel's motion to compel further responses to

22  interrogatories by Carter Bryant is denied. The parties' respective requests for sanctions are

23  denied. Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

24  Master, Mattel shall file this Order with the Clerk of Court forthwith.

25

26  Dated: February 20, 2008

27                                    HON. EDWARD A. INFANTE (Ret.)
                                      Discovery Master

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              7

EXHIBIT 12

PAGE 638

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on February 20, 2008, I served the attached ORDER DENYING MATTEL'S MOTION TO COMPEL RESPONSES TO INTERROGATORY NOS. 27-33, 36-40, 42, 45 AND 47 BY CARTER BRYANT in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on February 20, 2008, at San Francisco, California.

*Sandra Ch*

Sandra Chan

EXHIBIT __12__

PAGE __639__

EXHIBIT 13

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3112**

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

February 25, 2008

**VIA FACSIMILE AND U.S. MAIL**

Timothy Miller, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Embarcadero Center Suite 3800
San Francisco, California 94111

Re:    Mattel, Inc. v. Bryant, et al.

Dear Tim:

I write to request a meet and confer on the Discovery Master's Order dated February 15, 2008, regarding Mattel's interrogatories.  I understand MGA contemplates moving to reconsider the February 15 Order in part.  Likewise, Mattel contemplates appealing from the Orders to Judge Larson, in part, as set forth below.

First, in Mattel's view the Discovery Master incorrectly ruled that further responses to Interrogatory Nos. 27-29 need not be provided.  The MGA Parties' responses to these interrogatories are inadequate.  Indeed, they do not identify *any* Bratz Inventions, let alone all of them.  Moreover, they expressly apply a definition of "invention" as "understood in normal, everyday usage under patent law," even though this is not a patent case and that is not the definition used by Mattel in its interrogatories.  Defendants may have arguments, disputed by Mattel, that the Inventions Agreement signed by Bryant only applies to patents and not copyrights, but Mattel is not required to accept such arguments in discovery.  Mattel seeks crucial information here relating to its claims.

Second,  Mattel believes the Discovery Master incorrectly ruled that defendants need not respond to Interrogatory No. 39 in any way.  Mattel has identified numerous reasons why it is entitled to discovery into defendants' bank accounts, including to discover information relevant to its claims for commercial bribery, to show bias, to discover information relevant to net worth calculations and punitive damages and to show the timing of Bryant's first involvement with MGA.

EXHIBIT 13

PAGE 640

**quinn emanuel urquhart oliver & hedges, llp**

07209/2414173.1    NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700

SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

Moreover, Mattel simply seeks an identification of accounts at this stage, so it is difficult to see how Mattel's interrogatory could be deemed burdensome or intrusive. Although the Discovery Master ruled that Mattel has already obtained an identification of bank accounts from Isaac Larian through his document production, the same does not appear to be true of MGA, and even as to Larian the information provided appears to be incomplete.

Third, Mattel believes it is entitled to a response from the MGA regarding Interrogatory No. 46, regarding the dispute relating to this action between MGA and its former counsel. The fact that MGA has made public statements about the dispute shows that not all information relating to it is privileged. Moreover, Mattel narrowly limited its interrogatory to disputes relating to this action.

Fourth, Mattel believes it is entitled to supplemental responses from the MGA Parties regarding Interrogatory Nos. 48-50. MGA's responses are broad and non-specific. For all of the reasons set forth in Mattel's motion papers, we believe the Discovery Master's order with respect to these interrogatories is clearly erroneous and/or contrary to law.

Last, Mattel will seek a full and complete response to Interrogatory No. 41, including date of first contact information. As the Discovery Master noted, such information is "highly relevant" but "conspicuously absent" from MGA's responses. It should be provided.

Please let me know when you are available to meet and confer on these issues pursuant to Local Rule 7-3.

Very truly yours,

/s/ B. Dylan Proctor

B. Dylan Proctor
07209/2414173.1

EXHIBIT __13__

PAGE __641__

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

February 27, 2008

<u>VIA FACSIMILE (415-397-7188) AND U.S. MAIL</u>

Matthew M. Werdegar, Esq.
Keker & Van Nest LLP
710 Sansome Street
San Francisco, California 94111

Re:    <u>Mattel, Inc. v. Bryant, et al.</u>

Dear Matthew:

I write to request a meet and confer on the Discovery Master's Order dated February 20, 2008, regarding Mattel's interrogatories.  Mattel contemplates appealing from the Order to Judge Larson, in part, as set forth below.

First, in Mattel's view the Discovery Master incorrectly ruled that further responses to Interrogatory Nos. 27-29 need not be provided.  Carter Bryant's responses to these interrogatories are inadequate.  Indeed, they do not identify *any* Bratz Inventions, let alone all of them.  Moreover, they expressly apply a definition of "inventions" as "that term is used in utility patent law," even though this is not a patent case and that is not the definition used by Mattel in its interrogatories.  Defendants may have arguments, disputed by Mattel, that the Inventions Agreement signed by Bryant only applies to patents and not copyrights, but Mattel is not required to accept such arguments in discovery.  Mattel seeks crucial information here relating to its claims.

Second,  Mattel believes the Discovery Master incorrectly ruled that Bryant need not respond to Interrogatory No. 39 in any way.  Mattel has identified numerous reasons why it is entitled to discovery into Bryant's bank accounts, including to discover information relevant to its claims for commercial bribery, to show bias, to discover information relevant to net worth calculations and punitive damages and to show the timing of Bryant's first involvement with MGA.

EXHIBIT  14

PAGE  642

**quinn emanuel urquhart oliver & hedges, llp**

07209/2415478.1

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

Moreover, Mattel simply seeks an identification of accounts at this stage, so it is difficult to see how Mattel's interrogatory could be deemed burdensome or intrusive.

Third, Mattel believes it is entitled to a response from Bryant regarding Interrogatory No. 47, regarding the sources of information from which Bryant has collected documents that refer or relate to Bratz and also refer to relate to the time period prior to February 28, 2001. Mattel's interrogatory was narrowly tailored to obtain responsive information regarding, among other things, the identification of where early Bratz documents came from and where Bryant did and did not look for such documents. Bryant's response merely lists general areas in which he looked for documents. It does not provide responsive information to Mattel's interrogatory as drafted and is so broad and generic that it does not allow Mattel to test Bryant's production. Although the Discovery Master denied Mattel's motion to compel a response to Interrogatory No. 47, the Discovery Master's Order does not provide any basis for that ruling beyond the assertion that Bryant's generic response is "in substantial compliance with Rule 33."

Last, based on my conversation with you of Monday, I understand that Bryant has set forth the "principal facts" on which he will rely in response to Interrogatory Nos. 30-33, 36-38 and 42. Assuming that understanding is correct, Mattel does not intend to appeal the ruling as to these interrogatories at this time. If my understanding is incorrect, please let me know immediately.

Please let me know when you are available to meet and confer on these issues pursuant to Local Rule 7-3.

Very truly yours,

*Dylan Proctor /BBS*

B. Dylan Proctor

EXHIBIT __14__

PAGE __643__

EXHIBIT 14

EXHIBIT 15

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

MATTHEW M. WERDEGAR
MWERDEGAR@KVN.COM

February 28, 2008

**VIA FACSIMILE & U.S. MAIL**

B. Dylan Proctor, Esq.
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017

Re:    Mattel v. Bryant, et al.

Dear Dylan:

I am writing in response to your letter dated February 27, 2008 regarding Mattel's contemplated appeal of the Discovery Master's February 20, 2008 Order regarding Mattel's interrogatories to Carter Bryant.  While I am not at all sure that a conference of counsel is required prior to the filing of an appeal from an order of the Discovery Master, I am happy to discuss the issues raised in your letter with you.  However, I must note that all of the issues raised in your letter were extensively briefed and argued before the Discovery Master, and the Discovery Master correctly ruled on all of them.  Nothing in your letter, or in the Discovery Master's Order, suggests any clear error of fact or law or any abuse of discretion by the Discovery Master in ruling on Mattel's Motion to Compel.  Consequently, Mr. Bryant believes that Mattel has no legitimate basis to appeal the Discovery Master's Order to Judge Larson.

As for your purported understanding, set forth in the second to last paragraph of your letter, that Mr. Bryant has set forth the "principal facts" on which he will rely in response to Interrogatory Nos. 30-33, 36-38, and 42, I never made that express representation to you during our call.  To the contrary, you asked me whether I would make such a representation, and I responded that I would consider doing so, if Mattel agreed to make the same representation regarding its responses to Mr. Bryant's interrogatories.  You declined this offer.  That said, Mr. Bryant stands by the arguments and representations regarding these interrogatories made by his counsel in opposition to Mattel's motion to compel and during the hearing before the Discovery Master.  You are free to take away whatever understanding you wish from those arguments and representations.

Very truly yours,

Matthew Werdegar

MMW/mls

412236.01

EXHIBIT  15

PAGE  644

B. Dylan Proctor, Esq.
February 28, 2008
Page 2


cc via facsimile:
    Raoul D. Kennedy
    Amy S. Park
    Alexander H. Cote

EXHIBIT ___15___

PAGE ___645___

EXHIBIT 16

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11

12   CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
13
              Plaintiff,
14                                          Consolidated with
         v.                                 Case No. CV 04-09059
15                                          Case No. CV 05-2727
16   MATTEL, INC., a Delaware corporation,
                                            ORDER GRANTING IN PART AND
              Defendant.                     DENYING IN PART MATTEL'S
17                                          MOTION TO COMPEL PRODUCTION
                                            OF DOCUMENTS BY ISAAC LARIAN;
18                                          DENYING REQUEST FOR
                                            SANCTIONS
19

20   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
21   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
22

23                          I. INTRODUCTION

24        On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production

25   of Documents by Isaac Larian and for Award of Monetary Sanctions." Specifically, Mattel seeks

26   an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First

27   Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

28
     Bryant v. Mattel, Inc.,                                                              1
     CV-04-09049 SGL (RNBx)

EXHIBIT 16
PAGE 646

15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199, 207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents withheld based on any claimed privilege. Mattel also seeks an award of sanctions against Larian in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing this motion. Larian submitted an opposition on December 5, 2007.[1] Mattel submitted a reply on December 10, 2007. The matter was heard on December 14, 2007. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

On June 13, 2007, Mattel propounded its First Set of Requests for Production of Documents and Things to Larian, the CEO and majority owner of MGA. On August 6, 2007, Larian filed his initial responses and objections. The parties met and conferred, and on September 25, 2007, Larian served supplemental responses and objections.

Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the 276 Requests. The parties met and conferred further, and Larian ultimately agreed to provide further responses to 55 of the disputed 87 Requests. Specifically, Larian agreed to supplement his responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that have not previously been produced." MGA's Opposition at pp. 1-2.

The remaining 32 Requests at issue can be grouped into ten categories: (1) personal financial data; (2) communications with Mattel employees; (3) statements to the media; (4) telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's arbitration; and (10) MGA Hong Kong and MGA Mexico.

//

---

[1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim statement of Mattel's position. The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve Mattel's motion on the merits.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT 16
PAGE 647

## II. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

The 55 Requests Resolved During Meet and Confer Session

During the meet and confer session held after the instant motion was filed, Larian agreed to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55 requests are no longer in dispute.

Nevertheless, a court order compelling production is warranted for two reasons. First, Larian has not yet produced documents responsive to the 55 requests or provided a date by which

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3



EXHIBIT __16__

PAGE __648__

1  he will do so.  Second, Larian's agreement to produce responsive documents is apparently limited

2  to documents from his so-called "personal files."  See Opposition at 2:2-3.

3       Mattel's counsel "never agreed that Larian could limit his response to the above requests

4  to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his

5  response to documents in Larian's 'personal files.'"  Supp. Decl. of Scott B. Kidman.

6  Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34,

7  Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding

8  parties' "possession, custody or control."  The limitation is also unworkable because, as Mattel

9  points out, it "would create a situation by which responsive and highly relevant documents might

10  never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and

11  Larian, on the other hand, deems [a] document not to be part of his 'personal files.'"  Reply at p.6.

12  Market Research for Products Not at Issue; Request Nos. 79-81

13       In Request No. 79, Mattel seeks all documents relating to any focus groups relating to

14  Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports.  In

15  his supplemental response, Larian agrees to produce the following documents, subject to his

16  general objections:

17       Larian will produce all documents within his possession, custody, or control that
     relate to focus groups for "MGA contested products" and "Mattel contested
18       products," as those terms are defined in Mattel's First Requests for Production
     regarding Claims of Unfair Competition, if any, and that have not already been
19       produced, that he discovers in the course of his reasonable search and diligent
     inquiry, and to which no privilege or other protection applies, including without
20       limitation, the attorney-client privilege or attorney's work product doctrine.

21

22  Mattel's Consolidated Separate Statement at pp. 20-21.

23       In Request No. 80, Mattel seeks all documents relating to any services or work performed

24  by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all

25  videotapes, summaries, notes and reports associated therewith.  In his supplemental response,

26  Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to

27  the request and to which no privilege or other protection applies.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT __16__

PAGE ___649___

1   In Request No. 81, Mattel seeks all documents relating to Alaska Momma.  In his

2   supplemental response, Larian agrees to produce all documents relating or referring to Bratz,

3   Angel or Bryant that are responsive to the request and to which no privilege or other protection

4   applies.

5   Mattel contends that the requests are as narrowly tailored as possible to capture relevant

6   information.  More specifically, Mattel contends that Request No. 79 seeks documents that bear

7   directly on the timing of the development of Bratz, as well as MGA's unfair competition claims

8   and Mattel's defense thereto.  Mattel contends that the requested documents may demonstrate that

9   MGA is guilty of copying Mattel's Barbie and My Scene products.

10   Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome.  As an

11   example, Larian points to Request No. 80, which requests all documents relating to any services

12   or work performed by L.A. Focus, regardless of whether that work has any relation to the claims

13   and defenses in the action or any of the products at issue.  Larian similarly contends that Request

14   Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or

    defense in this case.

15   Mattel's motion to compel Larian to produce all documents responsive to Request No. 79

16   is granted.  The request is reasonably limited in subject matter to Bratz and Angel.  The requested

17   documents are relevant to several issues in the case, including the origin, conception and creation

18   of Bratz.  The requested documents are also relevant to the unfair competition claims.  Larian's

19   supplemental response to Request No. 79 is unduly restrictive.  Among other things, the

20   definitions of "contested MGA products" encompass only those products that provide a basis for

21   any claim by MGA against Mattel, and not claims by Mattel against MGA.

22   Mattel's motion to compel Larian to produce all documents responsive to Request Nos.

23   80-81 is denied.  These requests, as drafted, are clearly overbroad because they have no

24   reasonable limitations on subject matter or time.  In particular, the requests are directed to L.A.

25   Focus and Alaska Momma without regard to whether the services or work the companies

26   provided has any relation to any product at issue.

27   Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 16
PAGE 650

1   documents related to the products at issue: Bratz and Angel. In Mattel's view, Larian's
2   supplemental response is too narrow and "may result in the exclusion of highly relevant
3   documents because the project, concept or design that is the subject of the focus group is deemed
4   not to relate to something then known as Bratz or Angel." However, Larian acknowledges that
5   these types of hypothetical documents would still fall within the narrower scope of production
6   proposed in his supplemental response.

7       Mattel also contends that it is entitled to all of the requested documents called for by
8   Request No. 80 because they are relevant to credibility and bias, particularly if the documents
9   show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A.
10  Focus used. It is, however, not apparent how deviations from standard procedures would impact
    credibility or bias.

11      As to Request No. 81, Mattel contends that the documents showing the relationship
12  between Larian or MGA and Alaska Momma are relevant, even if they do not themselves
13  specifically relate to Bratz, Angel or Bryant. Mattel contends that communications from Larian
14  or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant
15  claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's
16  and Bryant's stories about how and when they came to be introduced. Mattel also contends that
17  documents showing other dealings between Larian or MGA and Alaska Momma are relevant to
18  the issues of bias and credibility. Mattel's supposition about the types of documents that might
19  exist does not justify the type of far-reaching request it has propounded. Request No. 81 is also
20  not limited by either subject matter or time.

21      Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in
22  accordance with his supplemental responses.

23
24  Bryant's Attorney and Niece: Request Nos. 113-115
25      In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne
26  Wang, a lawyer who represented Bryant in his contract negotiations with MGA. In Request No.
27  114, Mattel seeks all documents, including without limitation all communications, between

28
    Bryant v. Mattel, Inc.,                                                    6
    CV-04-09049 SGL (RNBx)

EXHIBIT 16
PAGE 651

Larian or MGA and Anne Wang.  In Request No. 115, Mattel seeks documents relating to Brooke Gilbert, Bryant's niece.  In his supplemental responses, Larian agrees to produce documents relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or other protection applies.  Thus, the only issue is whether Larian should be required to produce responsive documents that do not relate to Bratz, Angel or Bryant.

Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin and conception of Bratz and the timing thereof.  Mattel also contends that the documents may disclose relevant information regarding Mattel's claims for breach of contract and inducing breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's contractual obligations with Mattel.  Mattel also contends that Larian has failed to carry his burden of demonstrating that the requests are overly burdensome.

Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114 are inadequate because the limitations on scope may eliminate otherwise relevant documents that do not specifically refer to Bratz, Angel or Bryant.  For example, Mattel contends that communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or Bryant may be relevant to the issues of credibility and bias.

Mattel contends that Request No. 115 seeks documents that are relevant to determine whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software that had been installed and run on the hard drive.  Bryant claims to have given his computer to his niece.  Mattel also contends that the requested documents are relevant to the issues of credibility and bias.  Further, Mattel contends that Larian's supplemental response to Request No. 115 is inadequate, because evidence of any communication between Larian and his niece, regardless of subject matter, is significant.

Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome because they lack any subject matter or time constraints.  Further, Larian contends that the requests constitute an improper fishing expedition and necessarily sweep in documents that are not relevant to any claim or defense.

//

EXHIBIT  16
PAGE  652

1   Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied. The
2   requests are overbroad because they are not focused on relevant subject matter and are untethered
3   to any claim or defense. Although Mattel asserts that responsive documents unrelated to Bratz,
4   Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility
5   is too remote to justify the breadth of Mattel's requests.

6   Larian's supplemental responses are sufficient to provide Mattel with relevant and
7   responsive documents. Larian shall produce documents responsive to Request Nos. 113-115 in
8   accordance with his supplemental responses.

9   The Larian Brothers' "Arbitrations and Suits": Request Nos. 123-125
10   In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and
11   suits between Larian and his brother, Farhad Larian. In Request No. 124, Mattel seeks all
12   documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad
13   Larian against Larian, including without limitation all declarations, affidavits, transcripts, video
14   and/or audio recordings and sworn testimony given by any person in such suit or arbitration
15   proceedings. In Request No. 125, Mattel seeks all documents relating to any and all settlements,
16   resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad
17   Larian. In his supplemental responses, Larian agrees to produce all documents referring or
18   relating to Bratz that are responsive to the requests and to which no privilege or other protection
19   applies.

20   Mattel contends that the court has already ruled that the arbitration proceedings between
21   Larian and his brother are relevant because they involve, among other matters, the conception and
22   creation date for Bratz. Mattel contends that Larian's supplemental responses improperly limit
23   the requests to the exclusion of potentially relevant documents. For example, Mattel contends
24   that documents that relate to the business, activities and plans of MGA in early 2000 are relevant
25   to the timing of the development of Bratz, whether or not they specifically refer to Bratz. Mattel
26   also contends that the requested documents are relevant to the value of the Bratz brand and
27   the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

28   Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                           8

EXHIBIT 16
PAGE 653

example, profits from the sale and licensing of Bratz and other information that would impeach Larian's testimony that he has not made any profits from Bratz. Further, Mattel contends that the requested documents may lead to evidence of the assessments or valuations of the net worth or value of MGA or Larian, regardless of any reference to Bratz specifically. Mattel also contends that settlement documents may contain information that bears on the merit of Farhad Larian's claims and the value of Bratz. Mattel also claims that the requested documents are relevant to motive, intent, bias and credibility.

Larian contends the instant requests are overbroad and unduly burdensome. Further, Larian contends that the relationship of the requested documents to any of the claims or defenses in the present action is questionable, and the existence of such documents is conjectural. Moreover, Larian contends that many of the categories of documents of interest to Mattel are already the subject of other requests. Larian also contends that Request Nos. 123-125 impose an undue burden because of the protective orders in place that strictly limit the use of any documents from an arbitration and suit between Larian and his brother. Larian represents that he is currently working with Mattel and his brother in an attempt to achieve suitable modifications to the orders that are agreeable to all parties.

Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is denied. The requests are clearly overbroad in calling for all documents from the arbitrations and suits between Larian and his brother, without any subject matter limitations. Furthermore, these requests are unduly burdensome to the extent they require production of documents that do not refer or relate to Bratz. Such documents have marginal relevance, at best, to the claims and defenses in the case.

Larian's supplemental responses to Request Nos. 123 -125 are sufficient. Larian's agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will enable Mattel to obtain documents relevant to the claims and defenses in the case, including many of the categories of documents of interest to Mattel. For example, under Larian's proposed limitation, documents that relate to the business, activities and plans of MGA in 2000 that also refer or relate to Bratz must be produced. Documents relating to the value of the Bratz brand are

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT __16__

PAGE __654__

also within the scope of Larian's proposed limitation and would have to be produced.  Documents relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be produced.  Further, Larian's proposed limitation does not necessarily foreclose discovery regarding the appraisal of MGA prepared by Mr. Dutcher.  In particular, documents relating to MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue projections must be produced if such documents refer or relate to Bratz.  Accordingly, Larian shall produce documents responsive to Request Nos. 123-125 in accordance with his supplemental responses.

Telephone Records: Request Nos. 178-181

In Request No. 178, Mattel seeks all documents relating to, including without limitation phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period from January 1, 1998 through January 1, 2001.  Larian objects to this request.

In Request No. 179, Mattel seeks all documents relating to, including without limitation phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel.  In his supplemental responses, Larian agrees to produce documents responsive to Request No. 179.  In response to this motion, however, Larian contends that he should be permitted to produce documents responsive to Request No. 179 in redacted form as discussed more fully below.

In Request No. 180, Mattel seeks all documents relating to, including without limitation phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period from April 1, 2004 through June 1, 2004.  Larian objects to this request.

In Request No. 181, Mattel seeks all documents relating to, including without limitation phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf at any time.  In his supplemental response, Larian agrees to produce all documents pertaining to communications made prior to January 1, 2001 that are responsive to the request and to which no privilege or other protection applies.

//

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT __16__

PAGE __655__

1    Mattel contends that Request No. 178 seeks documents relevant to show Larian's

2  communications with Bryant and other Mattel employees while such employees may still have

3  been employed by Mattel and before Larian claims to have known about Bratz.  Similarly, Mattel

4  contends that Request No. 180 seeks documents relevant to Mattel's allegation that MGA, and

5  Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them

6  to steal Mattel trade secrets.

7    Further, Mattel contends that the requested documents regarding telephone records are

8  relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show

9  communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent

10  they show communications with current and former Mattel employees, including Machado,

11  Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements

12  Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses.  With respect to

13  burden, Mattel contends that it would be more burdensome to attempt to produce the requested

14  records in redacted form, and further, that the protective order in place is sufficient to protect

15  Larian's privacy concerns.

16    Larian contends that the requests regarding telephone records are overbroad, completely

17  unbounded as to subject matter, and necessarily sweep in private information that is completely

18  irrelevant to any of the claims or defenses in the case.  Larian also points out that the court

19  previously considered similar requests served on Bryant and allowed production of redacted

20  copies of telephone records as long as Bryant provided a signed verification that none of his

21  redactions related to Bratz, MGA or any other project he worked on for MGA.  Specifically,

22  Bryant was permitted to produce redacted phone records as long as he provided a "signed

23  verification that none of the telephone records that were redacted relate or refer in any way to

24  MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA."

25  Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production

26  of Documents by Bryant).  Larian contends that he should be permitted to redact responsive

27  documents consistent with the court's prior order.  During the meet and confer, Larian offered to

28  provide redacted records and a signed verification that none of the redacted information was

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT ___16___

PAGE ___656___

1   relevant to the case, but Mattel did not respond to the offer.

2       Mattel's motion to compel documents responsive to Request Nos. 178 (all documents

3   relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied. The

4   request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in

5   private information that is completely irrelevant to the case. Larian should not be subjected to

6   such an intrusion into his private and business affairs when Mattel has made no attempt to tailor

7   the request to the communications, claims, and defenses identified above.

8       In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records

9   for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters

10  (Bratz and/or Angel). Accordingly, Larian shall abide by his agreement to comply with Request

11  No. 179, as stated in his supplemental response. Larian's proposal to produce responsive

12  documents in redacted form is appropriate to address his privacy concerns. More specifically,

13  Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian

14  provides a signed verification that none of the redacted material refers or relates in any way to

15  MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA,

    or that are otherwise relevant to the case.

16      Mattel's motion to compel documents responsive to Request No. 180 (documents relating

17  to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted. Request No. 180

18  is reasonably tailored to a two month period during which MGA and Larian allegedly recruited

19  employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets. See

20  Mattel's Second Amended Answer and Counterclaims, ¶¶37-54. Larian may produce documents

21  responsive to Request No. 180 in redacted form as specified above with respect to Request No.

22  179.

23      Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian)

24  is overbroad as written because it has no time limits. In his supplemental response, Larian agrees

25  to produce communications prior to January 1, 2001 that are responsive to the request. Larian's

26  proposed limitation is a reasonable compromise that will provide Mattel with relevant documents

27  without imposing an undue burden. Accordingly, Larian shall produce documents responsive to

28

EXHIBIT 16
PAGE 657

1    Request No. 181 consistent with his supplemental response, and may produce such documents in

2    redacted form as specified above with respect to Request No. 179.

3

4    <u>Statements to the Media:  Request Nos. 190-192, 194-197 and 199</u>

5         In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian

6    and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action.

7    Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes

8    to the issues in the lawsuit.  More specifically, Mattel contends that the request are relevant to

9    Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases

10    regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie

11    products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products.

12    Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may

13    also contain admissions regarding the origin and conception of Bratz and statements relevant to

     damages.

14         Larian contends that the requests are overbroad and unduly burdensome, particularly

15    because several of the requests seek publicly available information.  Further, Larian points out

16    that the court has already considered and rejected as overbroad a nearly identical request served

17    on MGA that called for all documents relating to any communications by MGA with any news

18    organization regarding the contested MGA products or the contested Mattel products.  Larian

19    contends that the same reasoning applies to the instant requests.

20         Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and

21    199 is denied.  Although several of the requests encompass potentially relevant documents, the

22    requests are overbroad and encompass documents that have little to no relevance to the claims and

23    defenses in the case.  Not one of the requests is limited to relevant subject matters, such as Bratz's

24    sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's

25    Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz,

26    or damages.

27    //

28

EXHIBIT 16

PAGE 658

1    Furthermore, many of these overbroad requests seek publicly available information that is

2    readily accessible to Mattel for which Larian should not be burdened.  To the extent the requested

3    documents and information are not publicly available, such documents and information are

4    marginally, if at all, relevant because they are not likely to have caused Mattel compensable harm.

5    In either case, the burden and expense of searching for and producing responsive documents are

6    unjustified.

7

8    Communications With Mattel Employees:  Request No. 198

9    In Request No. 198, Mattel seeks all communications between Larian and any individual

     while the individual was employed by Mattel.  Mattel contends that this request is directly

10   relevant to Mattel's claims of trade secret theft, and that the relevancy outweighs any purported

11   burden of production.

12   Larian contends that the request is overbroad and unduly burdensome because it is

13   unrestricted as to time and subject matter.  Larian also points out that the court has previously

14   found a similar request overbroad.  Larian further contends that employees in the toy industry are

15   likely to maintain contacts with other toy manufacturers, and that a large corporation such as

16   Mattel is likely to have a high number of employees communicating with MGA or its officers,

17   which makes the request more unduly burdensome and unreasonable than it appears on its face.

18   Unlike other requests regarding communications, Request No. 198 is reasonably tailored

19   to the specific and numerous allegations in the case regarding alleged trade secret theft.  Although

20   the request is not limited by subject matter, it is limited in other respects to seek relevant

21   documents without imposing an undue burden.  The request is limited to communications

22   between Larian (and not MGA or persons acting on his behalf) and individuals employed at

23   Mattel.  The request is also limited to only those communications that took place while the

24   individuals were employed at Mattel.

25   Nevertheless, an additional temporal limit is appropriate to tailor the request to Mattel's

26   allegations of trade secret theft.  The alleged trade secret theft began with Bryant's conduct in

27   1999 and continued to 2005.  Accordingly, Larian shall produce documents responsive to Request

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT __16__

PAGE __659__

1   No. 198 that are limited to the time frame 1999 to 2005.

2

3   Personal Financial Data:  Request Nos. 207-209 and 269

4       In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks

5   or financial institutions and other banking relationships since January 1, 1999.  In Request No.

6   208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such

7   income for each year from 1999 to the present.  In Request No. 209, Mattel seeks Larian's federal

    and state tax returns for each year from 1999 to the present.  In Request No. 269, Mattel seeks
8
    documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from
9
    1999 to the present.
10
        Mattel contends that Request No. 207 seeks information reasonably calculated to lead to
11
    information showing the timing of payments to Bryant and others, which in turn is relevant to the
12
    timing of the development of Bratz and issues of credibility.  Mattel contends that Request Nos.
13
    208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial
14
    condition, which in turn is relevant to damages.  Further, Mattel contends that it is entitled to
15
    information regarding the sources of Larian's income to determine whether they are attributable
16
    to the alleged misconduct and thus subject to disgorgement.
17
        Larian contends that the requested personal financial information is not relevant to the
18
    claims or defenses at issue.  More specifically, Larian contends that neither the names of his
19
    banks nor his gross income have any bearing upon either compensatory or punitive damages or
20
    Mattel's claim for disgorgement of profits.  Larian further contends that there is no support for
21
    Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.
22
        Larian also contends that all three of the requests overlap substantially with requests
23
    Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or
24
    burden posed by these requests to him.  Further, Larian contends that the court has previously
25
    found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered
26
    no reason why the same result should not apply here.
27
        Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted.  The
28
                                                                                    15
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT ___16___

PAGE ___660___

1   requests are reasonably calculated to lead to the discovery of admissible evidence relevant to

2   several issues in the case.  For example, the requested information is likely to lead to information

3   regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of

4   the creation of Bratz.  The requested information is also likely to show Larian's income and net

5   worth, which are relevant to damages.  Further, Larian has failed to establish that the requests are

6   unduly burdensome.  Although Mattel has sought and obtained broad discovery of financial

7   information from MGA, Mattel is also entitled to seek financial information directly from Larian.

8        Mattel's motion is denied as to Request No. 209, provided that Larian complies with

9   Request Nos. 207, 208 and 269.  In light of the discovery of financial information ordered herein

10   and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax

11   returns.

12   <u>Storage Devices:  Request Nos. 222 and 224</u>

13        In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating

14   to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive,

15   delete or modify digital information relating to Bratz, Angel, or Bryant.  Mattel contends that a

16   request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in

17   electronic form.  Mattel also contends that Rule 34 permits a party to obtain and test computer

18   hard drives and other storage devices.

19        Larian contends that the requests are overbroad, unduly burdensome, duplicative, and

20   ignore his privilege and privacy interests.  Larian also objects to an inspection of his actual hard

21   drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which

22   states that the amendment of Rule 34 relating to "electronically stored information is not meant to

23   create a routine right of direct access to a party's electronic information system."  <u>See</u>

24   Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes.  Larian contends that there is no justification for

25   an inspection of his electronic devices because there is no allegation that he improperly deleted

26   documents.

27        Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.

28

EXHIBIT  16

PAGE  661

1   With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to

2   authorize the routine production of a party's electronic devices.  Mattel attempts to justify

3.  Request No. 222 by pointing to various instances of alleged destruction of evidence.  See Mattel's

4   Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer

5   laptops; "wiping" information from the hard drives of Larian's computer laptops every six

6   months; redacting  "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and

7   destructive testing of Bryant's original Bratz drawings).  However, Mattel fails to explain how

8   these alleged instances of evidence destruction justify Request No. 222, other than to assert that it

9   has a right to inspect Larian's storage devices to ensure that relevant information has not been

10  deleted or permanently destroyed.  Mattel's stated purpose suggests instead that Mattel is

11  launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal

12  Rules of Civil Procedure.  See e.g. Rivera v. NIBCO, Inc., supra.  Furthermore, Mattel's stated

13  purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222.

14  Among other things, Request No. 222 encompasses every storage device that Larian has used to

15  copy digital information relating to Bratz.  Mattel does not need every CD and DVD containing

16  copies of Bratz-related video and audio content, but that is what the request seeks.

17       Request No. 222 is also duplicative because it requests information that is sought in

18  numerous other requests served on Larian as well as MGA.  Mattel has served hundreds of

19  requests for documents and communications relating to Bratz, Angel, and Bryant.  To comply

20  with the requests, Larian was required to search for documents in both hard-copy and electronic

21  form.  Under the circumstances, it is unnecessary for Larian to also produce the requested storage

22  devices.

23       Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims

24  and defenses in the case, and therefore do not justify the burden of production on Larian.

25  Bryant's Storage Devices:  Request Nos. 225, 227 and 228

26       In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents

27  relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT  16

PAGE  662

1   receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2   Larian contends that the requests are improperly directed to him because he does not have

3   personal possession of Bryant's hard drive or storage devices, or other information about those

4   devices. Mattel's Consolidated Separate Statement at p. 206. Larian also contends that the

5   requests are overbroad and unduly burdensome for the reasons discussed above in connection

6   with Request Nos. 222 and 224.

7   Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8   denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9
10   MGA Hong Kong and MGA Mexico:  Request Nos. 272 and 273

11   In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA

12   Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA

13   Mexico"), both of which are named defendants. In his supplemental responses, Larian agrees to

     produce documents sufficient to show the ownership of these entities.

14   Mattel contends that the requests seek information relevant to refute MGA Mexico's

15   personal jurisdiction defense, and which bear on whether the acts of Larian and others are

16   attributable to the entities. Mattel also contends that Larian's (or MGA's ) ownership interest in

17   these companies is relevant to net worth. Mattel contends that Larian's supplemental response is

18   inadequate because it would allow Larian to withhold contradictory information and conceal the

19   true ownership of the business entities. Furthermore, Mattel contends that it is entitled to know

20   the ownership of these entities at times when different allegedly wrongful acts took place and to

21   determine if the ownership structure changed as a means of concealing assets or concealing the

22   payments of commercial bribes.

23   Larian contends that these requests should not be made to him, but to the entities

24   themselves or to MGA. Further, Larian contends that the requests are duplicative of a request

25   Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

26   served on MGA. Moreover, Larian contends that the requests are overbroad and unduly

27   burdensome, and that at most, he should only have to produce a list of owners.

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                              18



EXHIBIT __16__

PAGE __663__

1   Mattel contends that Larian cannot avoid his duty to respond to these requests simply by
2   saying that the information is obtainable from another source.  Further, Mattel contends that
3   Larian has failed to establish that the requests are unduly burdensome.

4   Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied
5   pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable
6   from another source that is more convenient, less burdensome, or less expensive, namely MGA
7   Mexico and MGA Hong Kong.  The requests are also overbroad and unduly burdensome.

### IV. CONCLUSION

For the reasons set forth above, it is hereby ordered as follows:

9   1.   At meet and confer sessions held after the filing of this motion, Larian agreed to
10  produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-
11  146, 213, 221 and 223.  Accordingly, Larian shall produce, without limitation, all non-privileged
12  documents that are responsive to these Requests.

13  2.   With respect to the remaining requests that are at issue in this motion, Larian shall:

14  A.   produce, without limitation, all non-privileged documents that are
15  responsive to Request Nos. 79, 180, 198 (for the time period 1999-2005), 207, 208 and
16  269; and

17  B.   produce, in accordance with his supplemental responses, non-privileged
18  documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and
19  209.

20  C.   Larian may produce documents responsive to Request Nos. 179, 180 and
21  181 in redacted form as provided herein.

22  D.   Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199,
23  209, 222, 224, 225, 227, 228, 272 and 273.

24  3.   Larian shall produce all non-privileged documents that are required by this Order
25  that are in his possession, custody or control and that have not already been produced no later
26  than January 11, 2008.

27  4.   Larian shall produce a privilege log no later than January 15, 2008.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (KNBx)

19

EXHIBIT __16__

PAGE __664__

1        5.      Mattel's request for sanctions is denied.

2        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3    Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5    Dated: December 31, 2007

6                                              HON. EDWARD A. INFANTE (Ret.)
                                                    Discovery Master

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                      20

EXHIBIT ____16____

PAGE ____665____

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 2, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ISAAC LARIAN; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 2, 2008, at San Francisco, California.

Sandra Chan

EXHIBIT __16__

PAGE __666__