EXHIBIT 17

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with |
| vs. | Case No. CV 04-09039 |
| | Case No. CV 05-02727 |
| MATTEL, INC., a Delaware corporation, | MATTEL, INC.'S NOTICE OF MOTION AND MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S DECEMBER 31, 2007 ORDER REGARDING HARD DRIVES; AND |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | MEMORANDUM OF POINTS AND AUTHORITIES |

[Declaration of Scott B. Kidman filed concurrently]

Hearing Date:   February 25, 2008
Time:           10:00 a.m.
Place:          Courtroom 1

**Phase 1**
Discovery Cut-off:    January 28, 2008
Pre-trial Conference: April 21, 2008
Trial Date:           May 27, 2008

EXHIBIT 17

1-16

PAGE 667

07209/2348965.1

MATTEL'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S DECEMBER 31, 2007 ORDER

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that on February 25, 2008, at 10:00 a.m., or

3  as soon thereafter as counsel may be heard, in the Courtroom of The Honorable

4  Stephen G. Larson, located at 3470 Twelfth Street, Riverside, California 92501,

5  plaintiff and counter-defendant Mattel, Inc. ("Mattel") will, and hereby does, move

6  the Court to overrule portions of the Discovery Master's December 31, 2007 Order

7  Granting in Part and Denying in Part Mattel's Motion to Compel Production of

8  Documents by Isaac Larian; Denying Request for Sanctions relating to the

9  production of hard drives used by Isaac Larian and Carter Bryant.  In the alternative,

10  Mattel asks this Court to appoint an expert witness in the field of computer forensics

11  and electronic data recovery to determine if data relevant to this action has been

12  deleted or permanently destroyed off of hard drives in the possession of Isaac

13  Larian.

14          This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u>

15  72(a) and <u>Federal Rule of Evidence</u> 706 on the grounds that the Discovery Master's

16  Order was clearly erroneous and contrary to law in its ruling denying Mattel's

17  motion to compel production of Isaac Larian's and Carter Bryant's hard drives

18  relating to Bratz, and on the grounds that there is good cause for the appointment of

19  an independent, neutral expert in these areas because the analyses to be performed

20  are highly relevant, and to protect any privacy interests raised by Isaac Larian.

21          This Motion is based on this Notice of Motion and Motion, the

22  accompanying Memorandum of Points and Authorities, the Declaration of Scott B.

23  Kidman filed concurrently herewith, and all other matters of which the Court may

24  take judicial notice.

25

26

27

28

EXHIBIT __17__

PAGE __668__

07209/2348965.1

-2-

1    **Statement of Rule 37-1 Compliance**

2         The parties met and conferred regarding this motion on January 10,

3    2008.

4

5    DATED:  January 16, 2008        QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
6

7                                     By /s/ Scott B. Kidman
8                                        Scott B. Kidman
                                         Attorneys for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 17

PAGE 669

07209/2348965.1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL BACKGROUND ............................................................................. 2

    **A.**   Spoliation by Carter Bryant ......................................................... 2

    **B.**   Spoliation by Isaac Larian......................................................... 6

    **C.**   Mattel's Amended Complaint ..................................................... 8

    **D.**   Discovery Master's Order Denying Motion to Compel Production of Isaac Larian and Carter Bryant Hard Drives. .................. 9

ARGUMENT................................................................................................... 11

**I.**    THE DISCOVERY MASTER'S ORDER IS CLEARLY ERRONEOUS BECAUSE SPOLIATION IS AN ELEMENT OF MATTEL'S CLAIMS ................................................................... 12

**II.**   EVEN IF SPOLIATION WERE NOT PART OF MATTEL'S CLAIMS, IT WOULD STILL BE RELEVANT ......................................... 13

**III.**  IN THE ALTERNATIVE, THE COURT SHOULD APPOINT A NEUTRAL EXPERT WITNESS ........................................................ 14

CONCLUSION.................................................................................................. 15

EXHIBIT __17__

PAGE __670__

-i-

MATTEL'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S DECEMBER 31, 2007 ORDER

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Bridgeport Music, Inc. v. Universal Music Group, Inc.,*
244 F.R.D. 271 (S.D.N.Y. 2007)..................................................12

*DeAngelis v. A. Tarricone, Inc.,*
151 F.R.D. 245 (S.D.N.Y. 1993)..................................................15

*Glover v. BIC Corp.,*
6 F.3d 1318 (9th Cir. 1993) .........................................................13

*Kucala Enterprises, Ltd.,*
2003 WL. 21230605 ....................................................................13

*Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.,*
2003 WL. 21230605 (N.D. Ill. 2003) ..........................................13

*Leon v. IDX Systems Corp.,*
464 F.3d 951 (9th Cir. 2006) .......................................................13

*In re Philadelphia Mortgage Trust,*
930 F.2d 306 (3d Cir. 1991) ........................................................14

*Rambus, Inc. v. Infineon Technologies AG,*
222 F.R.D. 280 (E.D. Va. 2004)...................................................13

*Students of California School for the Blind v. Honig,*
736 F.2d 538 (9th Cir. 1984),
vacated on other grounds, 471 U.S. 148 (1985) ....................14, 15

**Statutes**

18 U.S.C. §§ 1961(1) .........................................................................8

Fed. R. Evid. 706 .......................................................................14, 15

Fed. R. Evid. 706(a) ...................................................................14, 15

Fed. R. Civ. Proc. 72(a) .............................................................11, 12

EXHIBIT 17
PAGE 671

07209/2348965.1

-ii-

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Mattel has uncovered serious evidence of spoliation. Among other things, after a drawn out discovery battle, Mattel discovered that evidence on Carter Bryant's hard drives was destroyed using a software program entitled "Evidence Eliminator." There is also deposition testimony that Isaac Larian routinely switches computers at least once a year, and has the old computer wiped of all information, and that often Larian has rendered the entire computer unusable. There is testimony that Larian ordered another MGA executive to white-out Mattel fax headers from Carter Bryant's signed contract with MGA in an attempt to hide the fact that Carter Bryant was working at Mattel at the time. These facts ultimately became part of the basis for Mattel's counterclaims alleging RICO violations.

In an attempt to learn the extent of this damage, and establish RICO liability, Mattel served requests for production on Isaac Larian seeking hard drives that were used by either him or Carter Bryant and relating to this action. After Mattel moved to compel, the Discovery Master denied production of these drives, finding them "minimally relevant (if at all)."

Far from being irrelevant, these drives—and the destruction of data on them—are specifically referenced in Mattel's counterclaims. The destruction of the data is one of the elements of these claims. Moreover, and as defendants themselves acknowledged in their motion for terminating sanctions, evidence of spoliation could ultimately result in a directed verdict for Mattel.

The Discovery Master's Order is clearly erroneous and contrary to law. It prevents Mattel from access to drives necessary to establish its claims, and it incorrectly applies a relevance standard to prevent investigation into spoliation, even where evidence has been adduced that spoliation occurred.

Finally, at a minimum, the Court should appoint its own expert witness in computer forensics and electronic data recovery to investigate spoliation. If

EXHIBIT 17

PAGE 672

1 | Mattel cannot access these drives, having an independent expert do so would be the
2 | only way of establishing whether in fact spoliation occurred.

3 | **Factual Background**

4 | During the course of discovery in this case, Mattel has uncovered
5 | evidence of spoliation by defendants Carter Bryant and Isaac Larian.

6 | A.   **Spoliation by Carter Bryant**

7 | During the course of discovery, Bryant repeatedly represented that he
8 | had possession of a single Desktop computer that he had purchased the day after he
9 | resigned from Mattel.  His counsel represented that it searched the drive and found
10 | no responsive documents.  Bryant confirmed this in a November 1, 2004 letter to
11 | Mattel claiming that the Desktop "has been retrieved and searched for responsive
12 | documents, and none have been located."[1]  Mattel wrote back asking that the
13 | Desktop hard drive be preserved.[2]

14 | Again, in January 2005, in response to a motion to compel production
15 | of the hard drive, Bryant's counsel represented to the Court that he had "tirelessly
16 | searched for and inspected" the Desktop drive "for relevant information" and had
17 | made an "extensive and diligent search" for responsive information.[3]  Bryant's

18 | _____

19 | [1]   Letter dated November 1, 2004 from Keith Jacoby, counsel for Bryant, to John
20 | Quinn, counsel for Mattel, at p. 2, attached as Exhibit 1 to the Declaration of Scott
21 | B. Kidman, dated January 16, 2007 filed concurrently herewith ("Kidman Dec.")
   | ("Regarding [Mattel's] requests to inspect Mr. Bryant's home computer, I have made
22 | further inquir[i]es on that subject to Mr. Bryant and my colleagues.  Mr. Bryant did
   | not own a home computer during his time at Mattel.  He later purchased a computer,
23 | which he used for a time, and then gave away to his niece.  That computer has been
24 | retrieved and searched for responsive documents, and none have been located.  Mr.
   | Bryant declines to produce his hard drive for inspection for the reasons articulated in
25 | his response to Mattel's document request.").
26 | [2]   Letter dated November 17, 2004 from Kirk Garey, counsel for Mattel, to Keith
27 | A. Jacoby, Kidman Dec., Exh. 2.
   | [3]   Joint Stipulation Re: Mattel's Motion to Compel Production of Documents,
28 | filed on January 6, 2005 (excerpts) ("Joint Stipulation") at 62:1-13, Kidman Dec.,
   |     (footnote continued)

07209/2348965.1

-2-

Exhibit 17

PAGE 673

1   counsel averred that he had "extensively" examined the Desktop and that the firm

2   had spent "scores of attorney hours" searching for responsive documents, and had

3   found none.[4]

4          Due to an intervening discovery stay, Mattel's original motion to

5   compel was not ruled on.  After Mattel renewed its motion, Bryant represented that

6   he had conducted a "diligent" search for the hard drives and stated that the *only*

7   drive he could locate was from the Desktop.[5]  Though Carter Bryant had previously

8   stated that he used two other computers, including one belonging to a laptop

9   computer, Bryant said they could not be found.[6]

10         The Discovery Master granted Mattel's motion to compel.[7]  Shortly

11   before the production deadline, Bryant asked Mattel for an extension of time to

12   comply with the Discovery Order, claiming additional time was required because (i)

13   the quantity of responsive documents "may be significant" and (ii) because Bryant

14

15

16

-------

17   Exh. 3; [Redacted] Declaration of Keith A. Jacoby in Support of Defendant and

18   Cross-Claimant Carter Bryant's Portion of Joint Stipulation (excerpted and without

19   exhibits) ("2005 Jacoby Dec.") at ¶¶ 22, 23, attached as Exh. 4 to the Kidman Dec.
    Bryant's opposition also made clear that the hard drive purportedly searched was

20   from the Desktop.  Id. at ¶ 23 (referencing the "hard drive from Bryant's home
    computer, which he gave to his niece in 2002").

21
    [4]   Joint Stipulation at 62:2-13, 18-20, Kidman Dec., Exh. 3; 2005 Jacoby Dec. at

22   ¶¶ 23, 24, Kidman Dec., Exh. 4.
    [5]   Separate Statement of Defendant Carter Bryant in Opposition to Mattel's

23   Motion to Compel, filed on January 11, 2007 ("Bryant's 2007 Separate Statement")

24   at 39, Kidman Dec., Exh. 5; Declaration of Keith A. Jacoby in Support of Carter
    Bryant's Opposition to Mattel, Inc.'s Motion to Compel Production of Documents

25   (excerpted and without exhibits) ("2007 Jacoby Dec.") at ¶ 31, Kidman Dec., Exh.

26   6.
    [6]   Bryant's 2007 Separate Statement at 39, Kidman Dec., Exh. 5.

27     [7]   Order of the Discovery Master Hon. Edward Infante (Ret.) dated January 25,

28   2007 at 17, Kidman Dec., Exh. 7.

07209/2348965.1

MATTEL'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S DECEMBER 31, 2007 ORDER

17

674

1  would be traveling.[8]  Mattel agreed to extend Bryant's time to produce the hard

2  drives.[9]

3       Four days later, in a February 27, 2007 email, Bryant asserted a new

4  reason for failing to produce the hard drives, i.e., that it contained some unspecified

5  "highly private material" and seeking "some sort of agreement" on that issue.[10]

6  Mattel's counsel agreed to extend the deadline.  In return, Bryant agreed to provide a

7  log of the "highly private" files at issue by no later than the end of the following

8  week (by March 23, 2007).[11]  By March 26, 2007, Bryant had still not produced that

9  log.[12]

10      In view of Bryant's failure to comply with the January 25, 2007 Order,

11  Mattel sought to meet and confer in advance of a motion to enforce it.[13]  Bryant's

12  counsel then made two new claims:

13      First, although Bryant had previously represented to the Court that he

14  *only* had the Desktop hard drive,[14] he now stated that forensic images of *two* Bryant

15

16  _____

17  [8]  Stipulation and Order re: Request to Extend Deadline Within Which Carter
     Bryant Must Comply with the Discovery master's January 25, 2007 Order Granting

18  Mattel's Motion to Compel Production of Documents dated February 23, 2007,
     Kidman Dec., Exh. 8.

19  [9]  Id.

20  [10]  E-mail dated February 27, 2007, from Douglas Wickham to John Quinn and
     Michael Zeller, Kidman Dec., Exh. 9.

21  [11]  Letter dated March 2, 2007 from Douglas Wickham to Michael Zeller,

22  Kidman Dec., Exh. 10; letter dated March 16, 2007 from Douglas Wickham to
     Michael Zeller, Kidman Dec., Exh. 11;  letter dated March 27, 2007 from Douglas

23  Wickham to Michael Zeller, Kidman Dec., Exh. 12.

24  [12]  Letter dated March 26, 2007 from Michael Zeller to Douglas Wickham,
     Kidman Dec., Exh. 16.

25  [13]  Id.

26  [14]  Bryant's 2007 Separate Statement at 39, Kidman Dec., Exh. 5; 2007 Jacoby

27  Dec. at ¶ 31, Kidman Dec., Exh. 6; Letter dated March 26, 2007 from Douglas
     Wickham to Michael Zeller, Kidman Dec. Exh. 13; Letter dated March 27, 2007

28  from Douglas Wickham to Michael Zeller, Kidman Dec. Exh. 14.

-4-

EXHIBIT  17

PAGE  675

1  hard drives had been made in *July 2004*—after this suit was filed and long before

2  Bryant's representations to the Court that *only* the Desktop drive had been located.[15]

3  Bryant claimed that one of these forensic images made in July 2004 was the laptop

4  drive that Bryant had represented to the Court had not been located.[16]  The existence

5  of these drives had thus been concealed since July 2004.[17]  Bryant further informed

6  Mattel that the imaged data were from the 2002 and 2003 time period, giving the

7  impression that the computers from which the hard drives were imaged were not in

8  use before that time.[18]

9          Second, in response to Mattel's specific requests for an explanation

10  regarding the status of the Desktop hard drive, Bryant's counsel stated that it no

11  longer knew the whereabouts of the Desktop.[19]  Counsel stated that it was "not sure"

12  about the accuracy of its prior representations—i.e., that the Desktop drive had been

13  retrieved from Bryant's niece—and that it may have been "wrong."[20]

14  _____

15  [15]  Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Kidman
16  Dec., Exh. 15.
    [16]  Id.  More specifically, Bryant identified the two images that were made in
17  July 2004 as being of (1) a 20 GB Travelstar hard drive from a Compaq Presario
18  laptop, and (2) a 20 GB Quantum Fireball LCT 15 hard drive.  Id., p. 1.  Also during
    the meet and confer process, Bryant's counsel represented that Bryant was still in
19  possession of the physical hard drive from the laptop but no longer had the Quantum
20  hard drive.  Id., p. 1.
    [17]  Letter dated March 27, 2007 from Douglas Wickham to Michael Zeller,
21  Kidman Dec. Exh. 14.  Bryant's counsel further disclosed that there were additional
22  "hard drive(s)" that had been "recently copied in Missouri," and that "[a]fter further
    examination, it appears that these drives also contain highly private, non-responsive
23  documents."  Id.  As noted above, in subsequent conversations, Bryant's counsel
24  stated that there were three images of these additional drives, for a total of at least
    five hard drive images.  Letter dated April 6, 2007 from Michael Zeller to Douglas
25  Wickham, Kidman Dec., Exh. 15.
26  [18]  Id.
    [19]  Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Kidman
27  Dec., Exh. 15.
28  [20]  Id.

-5-

EXHIBIT _17_

PAGE _676_

1    Faced with these starkly conflicting representations, Mattel moved to
2    enforce the Court's January 25, 2007 Order and again compel Bryant to produce the
3    computer hard drives.[21]  The day before Bryant's Opposition was due, Bryant's
4    counsel wrote stating that it had discovered an image of the Desktop in its
5    possession, and would now make it available to Mattel.[22]  Mattel imaged that drive,
6    and took its motion off calendar.[23]  Shortly after, Bryant's counsel (now at Keker &
7    Van Nest) subsequently produced the Laptop drive and the image.

8    Upon reviewing the drives, Mattel discovered that a software program
9    titled "Evidence Eliminator" had been installed and run on them.  Evidence
10    Eliminator purports to be a program designed to permanently destroy data to prevent
11    its use in legal proceedings:  "Evidence Eliminator ... the data destroyed is 'gone
12    forever' and it is impossible to create mirror images of defendants' hard drives ..."[24]
13    This meant that, although it is undisputed that Bryant used the Desktop from
14    October 21, 2000 to November 2003, data from 2000 – 2001 had been eliminated—
15    perhaps explaining why Bryant had represented that (without explanation) only data
16    from 2002 to 2003 was present on the drive.

17    **B.    Spoliation by Isaac Larian**

18    Carter Bryant is not the only defendant to have apparently destroyed
19    evidence.  To date, Mattel has uncovered evidence pointing to two types of actions
20    by Isaac Larian and MGA that have destroyed or altered relevant evidence.

21

22

_____

23    [21]    See Notice of Motion and Motion of Mattel, Inc. for an Order to Enforce
      Court's January 25, 2007 Order Compelling Bryant to Produce Desktop Computer
24    Hard Drive, dated April 10, 2007, Kidman Dec., Exh. 16.
25    [22]    Letter dated April 23, 2007, from Keith A. Jacoby to Michael Zeller, Kidman
      Dec., Exh. 17.
26    [23]    Mattel, Inc.'s Notice of Withdrawal Without Prejudice of Motion for an Order
      to Enforce Court's January 25, 2007 Order Compelling Bryant to Produce Desktop
27    Computer Hard Drive, Kidman Dec., Exh. 18.
28    [24]    Kidman Dec. ¶ 20, Exh. 19.

1    **Removal of Fax Headers from Carter Bryant's Contract.**  When

2  Larian first hired Carter Bryant, he was a Mattel employee.  Bryant sent his signed

3  contract with MGA to MGA from a Mattel fax machine.  Upon receiving this

4  document, Larian ordered an MGA executive to remove the fax headers showing

5  that the fax was sent from Mattel.  As this MGA executive testified:

6           When the original contract was executed by Carter Bryant,

7           it was sent to me via fax, and on the top of the fax listed

8           the phone number from where it was faxed, which said

9           "Barbie Collectibles," and at one point my boss, Isaac

10          Larian, asked me to white that out and send it to a lawyer,

11          Patty Glaser.[25]

12   **Destruction of Computers and Computer Hard Drives.**  Isaac

13 Larian has also destroyed his computers and the information contained on them,

14 including since the inception of this case.   Larian generally switches computers at

15 least once a year.[26]  In the process, he and MGA wipe the information from those

16 older hard drives of Mr. Larian's computers, preserving only a portion of the

17 information they contained.[27]  An MGA employee testified,

18          Q.   Have any of Mr. Larian's laptops that have been

19          replaced not been wiped?

20          A.   No.

21          Q.   They all have been wiped?  We had a double

22          negative there.  All of the laptops that Mr. Larian -- all of

23          the hard drives of the laptops that Mr. Larian has replaced

24          have been wiped?

25 _____

26  [25]  Tr. of Victoria O'Connor Depo. at 18:13-18, Kidman Dec., Exh. 20.
    [26]  See Depo. Tr. of Ken Lockhart (Vol. 2), dated June 15, 2007 at 255:20-21,
27 Kidman Dec., Exh. 21.
    [27]  Id. at 255:2-258:9.
28

EXHIBIT  17

PAGE  678

1         A.   The ones which were -- where the computer was

2         still functional get reimaged before anyone else is allowed

3         to use them.[28]

4 Larian has damaged many of his older computers so that they are no longer

5 functional. That same witness testified that, although Larian's computers are

6 frequently changed, "most of the time when we're replacing laptops for him, they're

7 generally nonfunctional."[29]

8     **C.**   **Mattel's Amended Complaint**

9         In July of 2007, after this Court's Order allowing Mattel to file its

10 counterclaims, Mattel incorporated the facts regarding spoliation as a basis for its

11 RICO claims—Mattel's RICO claim was explicitly based on alleged destruction of

12 evidence on the hard drives of Carter Bryant and Isaac Larian:

13        93.   The pattern of racketeering activity, as defined by 18

14            U.S.C. §§ 1961(1) and (5), presents both a history of

15            criminal conduct and a distinct threat of continuing

16            criminal activity . . . .These racketeering activities

17            included repeated acts of: . . .

18           (c)   Tampering With a Witness, Victim or

19                Informant:  Counter-defendants MGA, MGA

20                Entertainment (HK) Limited, MGA de

21                Mexico, Larian, Bryant, Machado and Does 4

22                through 10, aided and abetted by each other

23                and some or all of the remaining members of

24                the MGA Criminal Enterprise, did corruptly

25                alter, destroy, mutilate, or conceal more than

26

27   [28]  <u>Id.</u> at 257:24-258:9.

28   [29]  <u>Id.</u> at 256:4-5.

EXHIBIT _17_

PAGE _679_

07209/2348965.1

-8-

1              one a record, document, or other object, or

2              attempted to do so, with the intent to impair

3              the object's integrity or availability for use in

4              an official proceeding, including this action,

5              including without limitation by . . .

6         (iii)  destroying electronic and other evidence,

7              including by **destroying evidence**

8              **previously contained on Carter**

9              **Bryant's and Isaac Larian's computer**

10              **hard drives.**[30]

11   **D.**    **Discovery Master's Order Denying Motion to Compel Production**

12         **of Isaac Larian and Carter Bryant Hard Drives.**

13       On June 13, 2007, Mattel propounded its First Set of Requests for

14 Production of Documents and Things To Isaac Larian.[31]  Among these requests were

15 two seeking the production of Isaac Larian's hard drives that were used to store data

16 related to Bryant or Bratz, and any hard drives used by Carter Bryant to store

17 information relating to Bratz or MGA in Larian's possession.[32]  For the Court's

18 convenience, the text of these Requests is included verbatim, below:

19

20

21

22

23

24

25     [30]   Mattel, Inc.'s Second Amended Answer In Case No. 05-2727, dated July 12, 2007 (public redacted version, without exhibits), at ¶ 93, Kidman Dec., Exh. 22.

26     [31]   Kidman Dec., ¶ 24.

27     [32]   Request Nos. 222 and 225, found in the excerpts of Mattel, Inc.'s Consolidated Separate Statement in Support of Motion to Compel Production of

28 Documents by Isaac Larian at pp. 193-197, Kidman Dec., Exh. 23.

EXHIBIT 17

PAGE 680

1  **REQUEST FOR PRODUCTION NO. 222:**

2      Each STORAGE DEVICE that YOU have used to create, prepare, generate,

3  copy, transmit, receive, delete or modify any DIGITAL INFORMATION

4  RELATING TO BRATZ, ANGEL or BRYANT.

5  **REQUEST FOR PRODUCTION NO. 225:**

6      Each STORAGE DEVICE that BRYANT has used to create, prepare,

7  generate, copy, transmit, receive, delete or modify any DIGITAL INFORMATION

8  RELATING TO BRATZ, ANGEL or MGA.[33]

9

10      Larian refused to provide any documents in response to these and other

11  Requests, and Mattel moved to compel their production on October 11, 2007.[34]  In

12  its motion and reply, Mattel showed that its counterclaims were based on, among

13  other things, destruction of evidence from computer hard drives.[35]  Moreover,

14  defendants had placed spoliation in issue in their motion for terminating sanctions

15  against Mattel, and Mattel argued that it should have a right to inquire in this area on

16  that basis alone.[36]  Of course, the sanctions for spoliation of evidence can be

17  significant.

18      In Opposition, Larian argued that he should not have to produce his

19  hard drives because Mattel had shown no improper conduct sufficient to justify

20  production of the drives, and that he had privacy interests that would be impinged

21  upon by their production.[37]

22

23  _____

24  [33]  Id.
     [34]  Kidman Dec., ¶ 25.
25  [35]  Excerpts of Mattel, Inc.'s Consolidated Separate Statement in Support of
26  Motion to Compel Production of Documents by Isaac Larian at p. 203, Kidman
     Dec., Exh. 23.
27  [36]  Id.
28  [37]  Id. at 199-203.

EXHIBIT 17
PAGE 681

07209/2348965.1

-10-

1   Judge Infante ruled on the motion on December 31, 2007.[38]  In

2   considering the issue of the hard drive, Judge Infante stated that the only basis

3   Mattel had shown for seeking access to the hard drives was, "to ensure that relevant

4   information has not been deleted or permanently destroyed."[39]  As such, he stated

5   that Mattel was seeking to launch a "fishing expedition" for new claims.  This

6   ignored that Mattel was seeking access to drives specifically referenced in its

7   allegations regarding spoliation in its existing counterclaims.[40]  The Discovery

8   Master also found that the request was overbroad, because it could be interpreted to

9   encompass every CD and DVD in MGA's possession containing copies of Bratz-

10  related video and audio content.[41]  Finally, the Discovery Master ruled that the

11  request was duplicative, because other Mattel requests sought documents that would

12  require Larian and MGA to search the drives themselves.[42]

13                          **Argument**

14          By the stipulation and court order appointing a Discovery Master, the

15  Discovery Master's rulings are treated like those of a magistrate judge.  Such rulings

16  should be overruled if they are "clearly erroneous or [] contrary to law." Fed. R. Civ.

17  Proc. 72(a).

18

19

20

21  _____

22  [38]  Discovery Master's Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for

23  Sanctions, dated December 31, 2007, Kidman Dec., Exh. 24.

24  [39]  Id. at 17.
    [40]  Id.
25  [41]  Id.  Mattel does not believe the request is unduly burdensome, but is prepared

26  to limit its Request to seek only those hard drives that are or were in the possession

27  of Isaac Larian or Carter Bryant personally, or that stored files created or worked with by either of these two individuals.

28  [42]  Id.                          EXHIBIT 17

07209/2348965.1                      -11-                      PAGE 682

MATTEL'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S DECEMBER 31, 2007 ORDER

I.    **THE DISCOVERY MASTER'S ORDER IS CLEARLY ERRONEOUS BECAUSE SPOLIATION IS AN ELEMENT OF MATTEL'S CLAIMS**

As noted above, the Discovery Master's Order clearly stated as a basis for his ruling his belief that Mattel's search for evidence of deletion of relevant evidence "suggests that Mattel is launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal Rules of Civil Procedure."

Mattel is not "fishing" for new claims because it has *already alleged* the destruction of computer evidence as a basis for its existing counterclaims. In order to prove those allegations, Mattel must have access to the computers. See Fed. R. Civ. Proc. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."); Bridgeport Music, Inc. v. Universal Music Group, Inc., 244 F.R.D. 271, 272-273 (S.D.N.Y. 2007) (upholding magistrate judge's ruling that documents should be produced where they were encompassed in language of complaint).

Mattel cannot confirm whether evidence has been destroyed without obtaining the hard drives. It has discovered destruction of evidence on two drives already.[43] It has deposition testimony that data was destroyed on the drives at issue here.[44] But, without access to the computer hard drives, Mattel will be unable to prove its claims for the simple reason that it has been denied access to the very items it needs in order to do so.

In this context, the Discovery Master's findings that the requests are "duplicative" misses the point. The issue is not whether these drives have been reviewed for relevant documents. The issue is whether defendants deliberately destroyed relevant documents from the drives *before* having them reviewed. That

---

[43]    Kidman Dec. ¶ 20, Exh. 19.
[44]    Depo. Tr. of Ken Lockhart (Vol. 2), dated June 15, 2007 at 255:2-258:9, Kidman Dec., Exh. 21.

EXHIBIT 17

683

1  they did so is part of the basis for Mattel's RICO claims.  Whether MGA or Larian

2  have since reviewed drives and found that no relevant information is currently

3  present has no bearing on this issue.

4        Because the Discovery Master did not consider that spoliation of

5  information on computers is part of the very claims Mattel has made, his ruling is

6  clearly erroneous, and should be modified to require production of the drives.

7  **II.    EVEN IF SPOLIATION WERE NOT PART OF MATTEL'S CLAIMS,**

8        **IT WOULD STILL BE RELEVANT**

9        Even if electronic spoliation were not an element of Mattel's claims, the

10 Order would still be contrary to law.  The Discovery Master stated that investigation

11 into spoliation would be a "fishing expedition" for new claims.  But courts routinely

12 permit discovery on spoliation issues, particularly in cases like this, where Mattel

13 has adduced a basis to believe spoliation has occurred.  That spoliation might be a

14 basis for a new claim has not been an obstacle to such discovery.  See, e.g., Kucala

15 Enterprises, Ltd. v. Auto Wax Co., Inc., 2003 WL 21230605, *1 (N.D. Ill. 2003)

16 (noting prior order to produce drive for inspection for spoliation); Rambus, Inc. v.

17 Infineon Technologies AG, 222 F.R.D. 280, 296 (E.D. Va. 2004) (permitting

18 discovery on spoliation issues).

19       Potential spoliation is a relevant and proper subject of discovery.  As

20 MGA argued in its motion for terminating sanctions, one possible result of

21 spoliation could be a directed verdict in Mattel's favor.  See, e.g., Leon v. IDX

22 Systems Corp., 464 F.3d 951, 961 (9th Cir. 2006) (affirming dismissal of action for

23 deletion of files from computer hard drive); Kucala Enterprises, Ltd., 2003 WL

24 21230605 at *6 (dismissing action for use of Evidence Eliminator software to delete

25 computer files).  At the least, such spoliation would potentially give Mattel a

26 valuable presumption at trial of Bryant's work on Bratz while employed at Mattel.

27 See, e.g., Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993).

28

EXHIBIT 17

PAGE 684

1    Finally, it cannot be argued that Mattel is fishing for new claims, when
2  it was defendants who first raised the issue of spoliation, and made it a part of this
3  case.  Since defendants have opened the door, Mattel should be permitted its own
4  share of inquiry in this area.

5  **III.    IN THE ALTERNATIVE, THE COURT SHOULD APPOINT A**
6  **        NEUTRAL EXPERT WITNESS**

7    At a minimum, the Court should appoint a neutral expert to investigate
8  possible spoliation.  This is the only other method Mattel would have to prove its
9  counterclaims, and determine the extent of spoliation.  The Court's power to appoint
10  expert witnesses is codified at Federal Rule of Evidence 706.  Under that Rule,

11    The court may on its own motion or on the motion of any
12    party enter an order to show cause why expert witnesses
13    should not be appointed, and may request the parties to
14    submit nominations. The court may appoint any expert
15    witnesses agreed upon by the parties, and may appoint
16    expert witnesses of its own selection.

17  Fed. R. Evid. 706(a).  By nature, "a court-appointed expert witness is neutral with
18  regard to all parties."  In re Philadelphia Mortgage Trust, 930 F.2d 306, 309 (3d Cir.
19  1991).  Such an expert would also alleviate any of Isaac Larian's alleged concerns
20  regarding privacy and privilege, since Mattel would not have direct access to the
21  drives.

22    The Court has broad discretion to appoint experts whenever it deems
23  such appointments advisable.  See Students of California School for the Blind v.
24  Honig, 736 F.2d 538, 549 (9th Cir. 1984) (affirming *sua sponte* reopening of trial
25  and appointment of neutral expert in light of conflicting expert testimony proffered
26  by parties), vacated on other grounds, 471 U.S. 148 (1985); Fed. R. Evid. 706
27  advisory comm. notes ("The inherent power of a trial judge to appoint an expert of
28  his own choosing is virtually unquestioned.").  Provided the requirements expressly

07209/2348965.1

-14-

1  set forth in the <u>Rule</u> are satisfied,[45] a court's appointment of experts will be upheld.

2  See <u>Students of California School for the Blind</u>, 736 F.2d at 549 ("As required by

3  Rule 706, the judge allowed both parties to thoroughly cross-examine its appointed

4  expert. Thus, under Rule 706, the district court's appointment of a neutral expert

5  was proper."); <u>DeAngelis v. A. Tarricone, Inc.</u>, 151 F.R.D. 245, 246 (S.D.N.Y.

6  1993) (granting defendant's motion for appointment of experts because there was

7  good cause: "Use of one or more court-appointed experts . . . is appropriate where

8  called for by specific circumstances, provided that the parties have advance notice

9  and an opportunity to participate in selection of the expert and in the definition of

10  the expert's duties.").

<u>**Conclusion**</u>

12       For the foregoing reasons, Mattel respectfully requests that its motion

13  be granted in its entirety.

14

15  DATED: January 16, 2008       QUINN EMANUEL URQUHART OLIVER &

16                             HEDGES, LLP

17                            By /s/ Scott B. Kidman

18                                Scott B. Kidman
                              Attorneys for Mattel, Inc.

19

20

21

22

23

24

25
_____

26  [45] Appointed experts must consent to act, act pursuant to written instructions

27  from the Court, advise the parties of their findings, be willing to testify at deposition
and/or trial at the request of any party, and be subject to cross-examination by any

28  party. See <u>Fed. R. Evid.</u> 706(a).

07209/2348965.1

EXHIBIT 17

PAGE 686

EXHIBIT 18

EXHIBIT FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER

EXHIBIT 19

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

February 28, 2008

<u>VIA FACSIMILE AND U.S. MAIL</u>

Matthew Werdegar, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

Re:     <u>Mattel, Inc. v. Bryant</u>

Dear Matt:

I write in response to your letter of earlier today.

I am disappointed that you are now apparently going back on your representation during our last call that Mr. Bryant had satisfied his obligation -- which you acknowledged in your papers -- to at least provide the principal facts supporting his positions.  On our call, my recollection is that you did indeed affirm that Bryant had complied with this obligation.

That affirmation was consistent with Bryant's statements to the Discovery Master.  To induce him to deny Mattel's motion, Bryant argued:  "[W]hat is appropriate to seek material and principle facts, not to summarize the entire case in one interrogatory response.  And I believe Carter Bryant has done that.  He provided a detailed roadmap of what he believes supports his contentions.  And I think if the Court takes a closer look at the supplemental responses, hopefully it will agree."

EXHIBIT *19*

PAGE *968*

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

Why you now protest that you did not make an "express representation" that Bryant had in fact provided the "principal facts" supporting his contentions is unclear. In any case, you state in your letter that Bryant does in fact "stand by" the representations he made to the Discovery Master. I understand that as confirmation that Bryant has provided the principal facts and a "detailed roadmap of what he believes supports his contentions" as represented at argument. If that understanding is incorrect, please let me know and we will appeal on additional interrogatories or move to reconsider.

Very truly yours,

B. Dylan Proctor

BDP:lak
07209/2418380.1

EXHIBIT _19_

PAGE _969_

2

EXHIBIT 20

EXHIBIT FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER

EXHIBIT 21

EXHIBIT FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER

EXHIBIT 22



1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                          EASTERN DIVISION

10

11  CARTER BRYANT, an individual,            CASE NO. C 04-09049 SGL (RNBx)
                                             JAMS Reference No. 1100049530
12            Plaintiff,

13      v.                                   Consolidated with
                                             Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,    Case No. CV 05-2727

15            Defendant.                     **ORDER GRANTING MATTEL'S
                                             MOTION TO COMPEL RESPONSE
16                                           TO INTERROGATORY NO. 1;
                                             DENYING REQUEST FOR
17  CONSOLIDATED WITH                        SANCTIONS**
    MATTEL, INC. v. BRYANT and
18  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
19

20

21

22

23                          I. INTRODUCTION

24      On March 16, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Response to

25  Interrogatories By MGA Entertainment, Inc. ("MGA"). Mattel seeks an order compelling MGA

26  to provide a full response to Interrogatory No. 1, which asks MGA to identify persons involved in

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                             EXHIBIT 22
                                             PAGE 1047

1    the making and development of Bratz and other contested products, and to describe each person's

2    role and the start and end dates of each person's involvement.  Mattel also requests sanctions in

3    the amount of $3,000.  On March 23, 2007, MGA submitted its opposition brief, and on March

4    28, 2007, Mattel submitted a reply brief.  The matter was heard via telephonic conference on

5    April 5, 2007.  Having considered the motion papers and comments of counsel at the hearing,

6    Mattel's motion to compel is granted and the request for sanctions is denied.

7                                    II. BACKGROUND

8          This consolidated action includes MGA's claims for unfair competition against Mattel.

9    Among other things, MGA alleges that Mattel has engaged in "serial copycatting" of MGA

10   products, packaging and advertising, including Bratz dolls and other Bratz products, Bratz

11   packaging and Bratz television commercials.

12         In December of 2006, Mattel propounded its First Set of Interrogatories re Claims for

13   Unfair Competition to MGA, which contained ten interrogatories.  In early January of 2007,

14   MGA provided its initial disclosures relating to its unfair competition claims, which identified

15   three witnesses and two categories of other potential witnesses described as "various present or

16   former employees and contractors of" MGA and Mattel.  MGA's Rule 26(a) Disclosures dated

17   January 5, 2007.  Mattel filed a motion to compel MGA to provide initial disclosures.  Although

18   the initial disclosures were deficient, the undersigned denied the motion reasoning that it was

19   more efficient and orderly for Mattel to obtain the information it sought through discovery

     requests, including the interrogatories it had already propounded.

20         On January 19, 2007, MGA served Mattel with Responses to its First Set of

21   Interrogatories.  Interrogatory No. 1, which is the subject of this motion, asks MGA to:

22         IDENTIFY, fully and separately, each and every PERSON who was involved in
           the marketing, advertising, promotion, licensing, offering for sale, conception,
23         origin, creation, design, development, sculpting, engineering, reduction to
           practice, tooling or painting of, or who otherwise produced or contributed to any
24         EMBODIMENT of the CONTESTED MGA PRODUCTS, including without
           limitation by fully and separately describing each such PERSON's role and the
25         start and end dates of such PERSON's involvement.

26

27                                                                EXHIBIT 22

28                                                                PAGE 1048

     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                              2

1    Mattel's First Set of Interrogatories dated December 20, 2006, Alger Dec., Ex. 1 at 8-9.

2    "IDENTIFY" is defined, in pertinent part, as follows:

3        When used in reference to a natural person, such person's name, present or last-
         known home and business addresses, present or last-known employment or
4        business affiliation, present or last-known business title or position, and present or
         last-known home and business telephone number.
5

6    Id. at 7-8. "CONTESTED MGA PRODUCTS" is defined as follows:

7        "the CONTESTED BRATZ DOLLS PRODUCTS, the CONTESTED BRATZ
         PETZ PRODUCTS, the CONTESTED BRATZ FUNKY FASHION
8        MAKEOVER HEAD, the CONTESTED 4-EVER BEST FRIENDS
         PRODUCTS, the CONTESTED MOMMY'S LITTLE DOLL PRODUCTS, and
9        the CONTESTED ALIENRACERS PRODUCTS, and any doll, toy, portion
         thereof, or version thereof that is now or has ever been known as, or sold, offered
10       for sale, licensed, offered for license, or marketed under the name or terms
         "Bratz," "4-ever Best Friends," "Mommy's Little," "Alienracers," or any
11       derivative thereof, that provides a basis for any claim by YOU against MATTEL,
         including without limitation "Bratz Dolls," "Bratz Dogz," "Winter Wonderland,"
12       "Bratz Sportz," "Formal Funk," "Sun-Kissed Summer," "Funky Fashion
         Makeover Head," "Runway Disco," "4-ever Best Friends," "Mommy's Little
13       Patient," and "Alienracers."
14

15   Id. at 2-3.

16       In its response, MGA provided a list of seventy-one (71) names, job titles, and hiring

17   dates. Mattel and MGA met and conferred regarding all of MGA's responses to Mattel's First Set

18   of Interrogatories and MGA agreed, among other things, to provide a supplemental response to

19   Interrogatory No. 1 relating to those employees who worked on the "first generation" of the

20   contested products. Since then, MGA supplemented its responses twice, on March 2, 2007 and

21   again on March 6, 2007. MGA's supplemental responses to the First Set of Interrogatories,

22   however, did not include any changes to Interrogatory No. 1.

23       On March 16, 2007, Mattel filed the instant motion to compel a full response to

24   Interrogatory No. 1 and for sanctions. In response to the motion, MGA filed a letter brief and

25   attached a supplemental response to Interrogatory No. 1 dated March 23, 2007, which it believes

26   satisfies its discovery obligations. More specifically, MGA represents that the March 23rd

27   supplemental response now includes (1) the names of people who were "involved in the

28

EXHIBIT 22
PAGE 1049

1    been avoided in its entirety if Mattel had simply contacted MGA's counsel to discuss the

2    sufficiency of the supplemental responses as mandated by paragraph 5 of Judge Larson's Order

3    dated December 6, 2006.

4          Mattel contends that the supplemental response provided on March 23rd is deficient in

5    numerous respects.  First, Mattel contends that MGA's response includes a statement that

6    "various persons responsive to this interrogatory are identified in documents produced or to be

7    produced by MGA in discovery."  Mattel contends that this portion of the response violates Rule

8    33(d), Fed.R.Civ.P., because it fails to provide sufficient detail for Mattel to locate and identify

9    the responsive documents.  Second, Mattel contends that MGA's response fails to provide the

10   start and end dates for each person's involvement with MGA's products.  Instead, MGA either (a)

11   provides no information at all, (b) states that it is still investigating, (c) states that it "will produce

12   documents pursuant to Rule 33(d)," or (d) states that the dates requested are in documents (such

13   as invoices) that have been produced during discovery.  Third, Mattel contends that the response

14   is deficient insofar as it refers Mattel to Carter Bryant's deposition transcript without identifying

15   any particular pages where Mattel can find his dates of involvement with MGA's products.

16   Fourth, Mattel contends that as to some witnesses, MGA "persists in asserting the now-overruled

17   'first generation' Bratz limitation."  Finally, Mattel contends that sanctions are justified because it

18   took a motion by Mattel to get the new supplemental response, and even the new supplemental

19   response remains inadequate.

20                              III. DISCUSSION

21          Mattel's Interrogatory No. 1 clearly seeks information that is relevant within the meaning

22   of Rule 26, Fed.R.Civ.P.  Mattel needs the requested information in order to plan additional

23   discovery, particularly depositions because Mattel is limited to twenty-four depositions.

24   Although the request is extremely broad, it is not overbroad or unduly burdensome in light of the

25   breadth of MGA's unfair competition claims and Mattel's defenses to those claims.  In particular,

26   the information sought in Interrogatory No. 1 is relevant to determine the date of origin and the

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 24
PAGE 1057

1    early work on Bratz by MGA, which is a key issue in this litigation.  Accordingly, the Discovery

2    Master overrules MGA's overbreadth and burden objections.[1]

3           Although MGA provided substantial information in its supplemental response to

4    Interrogatory No. 1, the response nevertheless remains incomplete.  More specifically, MGA has

5    failed to provide the following individual's approximate start date and/or end dates of

6    involvement with MGA products:  Sarah Halpern, Baer Animation, Klasky Csupo, Margaret

7    Leahy, Veronica Marlow, South Bay Molds, Kevin Bloomfield, Leon Djiguerian, Kerri Brode,

8    Gerimi Burleigh, Yuval Caspi, Steve Cheng, Sarah Choi, Nick Contreras, David Dees, Margo

9    Eldridge, Joseph Feldman, Martha Garcia, Paula (Treantafelles) Garcia, Talar Gedikian,

10   Christopher Hardouin, Martin Hitch, Ken Kaufman, Kristin Kirst, Edmond Lee, Diana Luna,

11   Zachary Mellion, Ninette Pembleton, Pootipong Phoosopha, Maria Elena Salazar, Aileen Storer,

12   Gary Thomson, Chang-Chin Wang, Paul Warner, and Jenn Wong.

13          Furthermore, to the extent MGA has relied upon business documents produced during

14   discovery to supply responsive information, MGA has failed to comply with Rule 33(d),

15   Fed.R.Civ.P.  MGA is required, but has failed, to provide sufficient detail to permit Mattel to

16   locate and to identify, as readily as can MGA[2], the records from which the answer may be

17   ascertained.  For example, MGA's response indicates that Sarah Halpern did the artwork for the

18   fashions for "first generation" Bratz fashion dolls, and that the dates of her work are indicated in

19   invoices previously produced.  To comply with Rule 33(d), Fed.R.Civ.P., MGA should, if

20   possible, provide Bates numbers for the invoices.  See e.g. Ultratech, Inc. v. Tamarach Scientific

21   Co., 2005 WL 40074 (N.D.Cal. Jan 05, 2005) (NO. C 03-3235 CRB JL).

---

23   [1]  Interrogatory No. 1 is arguably compound insofar as it asks for information about multiple products.  See
24   e.g. Collaboration Properties, Inc. v. Polycom, Inc., 224 F.R.D. 473, 475 (N.D. Cal. 2004) (single interrogatory
     seeking information about 26 separate products in a patent case held to contain 26 discrete subparts).  Nevertheless,
25   the Discovery Master finds that Interrogatory No.1 seeks relevant information and should be answered.  The
     compound objection is overruled.

26   [2]  In contrast, MGA's reference to Carter Bryant's deposition transcript is adequate because Mattel should
27   be able to locate and identify, as readily as can MGA, the information Mattel seeks.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)
6

EXHIBIT 22
PAGE 1052

As to Mattel's contention that MGA is persisting in asserting the "first generation" Bratz limitation, the record is unclear. MGA apparently asserted the "first generation" Bratz limitation during the meet and confer process; however the limitation is not listed in the general objections or stated in the response. Although the phrase "first generation" Bratz dolls does appear in MGA's response, the phrase is used to provide the requested description of each person's role in MGA's products. To provide closure on the issue, the Discovery Master overrules any "first generation" Bratz limitation for the reasons previously set forth in the Discovery Master's Order Granting Mattel's Motion to Compel Production of Documents dated January 25, 2007.

The request for sanctions is denied. Although the March 23rd supplemental response remains deficient for the reasons stated previously, the Discovery Master finds that MGA made a reasonably good faith effort to provide a complete response to Interrogatory No. 1, which is an extremely broad interrogatory. Furthermore, sanctions are unwarranted because Mattel did not exhaust the meet and confer process prior to filing the instant motion. During the meet and confer process, MGA agreed to provide a supplemental response to Interrogatory No. 1, albeit with a limitation based upon "first generation" products. Upon receiving the supplementations on March 2nd and 6th, Mattel should have at least contacted MGA to determine whether a supplemental response to Interrogatory No. 1 was forthcoming.

## IV. CONCLUSION

For the reasons set forth above, Mattel's motion to compel a full response to Interrogatory No. 1 is GRANTED. MGA shall serve a complete response to Interrogatory No. 1 no later than April 30, 2007. Mattel's request for sanctions is DENIED.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

Dated: April 17, 2007

_Edward A. Infante_

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

EXHIBIT 22

PAGE 1053

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on April 17, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL RESPONSE TO INTERROGATORY NO. 1; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on April 17, 2007, at San Francisco, California.

_____
Sandra Chan

EXHIBIT 22
PAGE 1054