QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

**DISCOVERY MATTER**

**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]**

**MATTEL, INC.'S OPPOSITION TO CARTER BRYANT'S MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS**

Hearing Date: March 10, 2008
Time: 8:30 a.m.
Court Room: Telephonic

[Declarations of B. Dylan Proctor and Lissa Freed filed concurrently herewith]

**Phase I**
Discovery Cut-off: January 28, 2008
Pre-trial Conference: May 5, 2008
Trial Date: May 27, 2008

# TABLE OF CONTENTS

Page


PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 3

ARGUMENT ........ 5

I. BRYANT'S DISCOVERY REQUESTS WERE NEVER PROPERLY SERVED. ........ 5

A. Rule 5(b) Does Not Recognize Service by E-mail or Federal Express. ........ 5

B. Rule 5(b) Requires Express Written Consent to any Alternative Form of Service ........ 7

C. Even the Superseded Ninth Circuit Authority Cited by Bryant Would Not Have Excused His Improper Service. ........ 8

D. Mattel Did Not Waive Its Objection to the Improper Service ........ 9

E. The Alleged Absence of Prejudice Cannot Act to Excuse Noncompliant Service ........ 10

II. BRYANT'S MOTION AS TO INTERROGATORY NO. 20 IS NOW MOOT ........ 11

III. MATTEL'S ADDITIONAL OBJECTIONS TO BRYANT'S FIRST SET OF REQUESTS FOR ADMISSION ARE PROPER ........ 12

A. Bryant's Request for Admission Nos. 14-17, 26-42, 42-51, 57-66 and 95-112 Improperly Seek Information Concerning Acts of All Past and Present Mattel Employees ........ 12

1. The Discovery Master Has Already Held that the Subject Matter of Bryant's Requests Is Improper ........ 12

2. Bryant's Requests Seek Irrelevant and Unduly Burdensome Information Concerning the Acts of Thousands of Present and Former Mattel Employees ........ 14

3. Request Nos. 42-51 and 95-112 Seek Irrelevant Information ........ 19

4. Mattel's Alleged Failure to Prosecute Certain Breaches of Other Contracts Is Not Evidence of Its Intent as to Bryant ........ 24

5. Bryant's Request Nos. 14-17, 26-42, 43, 44, 47, 48 and 57-66 Are Unduly Burdensome ........ 26

6. Bryant Recognizes that His Requests Are Overly Broad and Unduly Burdensome ........ 28

B. Request Nos. 67-94 Pose Improper Hypotheticals and Seek Information in Violation of the Stay of Phase 2 Discovery ........ 29

1. Bryant Implicitly Concedes that His Requests Are Incomplete Hypotheticals ........ 29

2. Request Nos. 71-86 Improperly Seek Phase 2 Discovery ........ 30

3. The Requests Seek Irrelevant Information ........ 33

C. Request Nos. 1-13 -- Addressing Bryant's Employment at Mattel -- Are Vague, Ambiguous and Seek Irrelevant Information ........ 36

IV. BRYANT'S SECOND SET OF REQUESTS FOR ADMISSIONS ARE IMPROPER ........ 36

V. BRYANT'S FOURTH SET OF REQUESTS FOR PRODUCTION ARE IMPROPER ........ 39

A. Mattel Has Not Waived Its Objections ........ 39

B. Mattel Properly Objected to Request for Production Nos. 10 and 21-32 ........ 41

VI. BRYANT'S MOTION IS UNTIMELY AND CONTRARY TO THE LOCAL RULES AND SHOULD THEREFORE BE STRICKEN ........ 44

CONCLUSION ........ 45

# TABLE OF AUTHORITIES

Page(s)

## Cases


Abbott v. U.S., 177 F.R.D. 92 (N.D.N.Y. 1997) ... 30

Audio Enterprises, Inc. v. B & W Loudspeakers of America, 957 F.2d 406 (7th Cir. 1992) ... 6, 47

B.F. Goodrich Co. v. Vinyltech Corp., 711 F. Supp. 1513 (D. Ariz. 1989) ... 48

Ballard v. U.S., No. 06-CV-715, 2007 WL. 4794101 (C.D. Cal. Aug. 8, 2007) ... 44

Beverly v. Depuy Orthopaedics, Inc., No. 3:07-CV-137, 2008 WL. 45357 (N.D. Ind. Jan. 2, 2008) ... 43

Blumenthal v. Drudge, 186 F.R.D. 236 (D.D.C. 1999) ... 39

Estate of Broccolino v. McKesson Corp., No. 05-CV-0438, 2006 WL. 5217766 (D. Md. Feb. 23, 2006) ... 43

Burlington Insurance Co. v. Okie Dokie, Inc., 368 F. Supp. 2d 83 (D.D.C. 2005) ... 39

Dana Perfumes, Inc. v. Mullica, 268 F.2d 936 (9th Cir. 1959) ... 36

Deal v. Consumer Programs, Inc., 458 F. Supp. 2d 970 (E.D. Mo. 2005) ... 25

Dolgow v. Anderson, 53 F.R.D. 661 (E.D.N.Y. 1971) ... 26

Emerson Electric Co. v. Rogers, 418 F.3d 841 (8th Cir. 2005) ... 25

Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc., No. 2:05-CV-01059, 2007 WL. 1726558 (D. Nev. Jun. 11, 2007) ... 39

Fulhorst v. United Technologies Auto., Inc., No. 96-CV-5777, 1997 WL. 873548 (D. Del. Nov. 17, 1997) ... 30

Geico Cas. Co. v. Beauford, No. 8:05-CV-697T24-EAS, 2007 WL. 1192446 (M.D. Fla. Apr. 23, 2007) ... 11

Greer v. Lowes Home Centers, Inc., 2006 WL. 220823 (W.D. La. Jan. 26, 2006) ... 47

Ippolito v. Goord, No. 05-CV-6683L, 2007 WL. 2769503 (W.D.N.Y. Sep. 21, 2007) .................... 11

Karl v. Asarco, Inc., No. 93 CIV. 3819, 1997 WL. 642560 (S.D.N.Y. Oct. 17, 1997) ........................ 43

Keith H. v Long Beach Unified School District, 228 F.R.D. 652 (C.D. Cal. 2005) .......................................................... 26, 27, 28

Magnuson v. Video Yesteryear, 85 F.3d 1424 (9th Cir. 1996) .............................................................. 1, 6, 8, 10

Men of Destiny Ministries, Inc. v. Osceola County, Florida, No. 6:06-CV-624, 2006 WL. 2048288 (M.D. Fla. Jul. 20, 2006) ................. 30, 38

Microstar v. Formgen Inc., 154 F.3d 1107 (9th Cir. 1998) .................................................................... 46

Nat'l Union Fire Ins. Co. of Pittsburgh v. Elec. Transit Inc., 2006 WL. 1525809 (N.D. Cal. 2006) .......................................................... 46

Paramount Pictures Corp. v. Carol Publishing Group, 11 F. Supp. 2d 329 (S.D.N.Y. 1998) ........................................................... 24

Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd., 2000 WL. 1028634 (S.D.N.Y. 2000), vacated on other grounds 2004 WL 906301 (S.D.N.Y. 2004) ........................... 46

Pochopien v. Marshall, O'Toole, Gerstein, Murray & Borun, 315 Ill. App. 3d 329 (Ill. App. 2000) .............................................................. 46

RFR Industries, Inc. v. Century Steps, Inc., 477 F.3d 1348 (5th Cir. 2007) .............................................................................. 7

Ramirez v. County of Los Angeles, 231 F.R.D. 407 (C.D. Cal. 2005) ................................................................... 40

Rhea v. Uhry, No. 3:05CV189 (RNC), 2007 WL. 926908 (D.Conn. Mar. 26, 2007) ................ 11

Rodriguez v. M/V Washington Rainbow II, No. Civ.A. H-05-1129, 2005 WL. 2897387 (S.D. Tex. 2005) .............................................................. 7

Salley v. Board of Governors, 136 F.R.D. 417 (M.D.N.C. 1991) .......................................................... 6, 8

Samuels v. Huff, No. 04-0859-P, 2007 WL. 1237961 (W.D. La. Apr. 27, 2007) .......................... 11

Scottsdale Insurance v. American Re-Insurance Co., No. 8:06-CV-16, 2007 WL. 405870 (D. Neb. Feb. 2, 2007) ............................ 42

Sellers v. Regents of University of California, 432 F.2d 493 (9th Cir. 1970) ................................................................. 43

Sotelo-Camacho v. Morales, CIVA No. 1:05CV1349 WSD, 2006 WL 3709613 (N.D. Ga. Nov. 7, 2006) ........ 11

Starbucks Corp. v. Lundberg, No. 02-CV-948, 2004 WL. 1784753 (D. Or. Aug. 10, 2004) ........ 43

Storck USA, L.P. v. Farley Candy Co., No. 92-CV-552, 1995 WL. 153260 (N.D. Ill. Apr. 6, 1995) ........ 30

Story v. M/T Allegiance, No. 07-CV-139, 2007 WL. 2790760 (W.D. Wash. Sept. 24, 2007) ........ 30

Syverson v. IBM, 472 F.3d 1072 (9th Cir. 2007) ........ 9

Switzer v. Sullivan, No. 95 C 3793, 1996 WL 52911 (N.D. Ill. 1996) ........ 8-9

U.S. Cellular Investment Co. v. GTE Mobilenet, Inc., 281 F.3d 929 (9th Cir. 2002) ........ 18, 19

Zimmerman v. Atlanta Hawks, Ltd., No. 1:88-CV-2798-WCO, 1990 WL. 58462 (N.D. Ga. 1990) ........ 6

**Statutes**

Fed. R. Civ. P. 5 ........ 4, 5, 7

Fed. R. Civ. P. 5(b) ........ 1, 5, 6, 7, 8

Fed. R. Civ. P. 5(b)(2)(D) ........ 4, 7

Fed. R. Civ. P. 12(e) ........ 48

Fed. R. Civ. P. 26 ........ 11, 24

Fed. R. Civ. P. 26(b)(1) ........ 45

Fed. R. Civ. P. 26(b)(2)(C)(iii) ........ 26, 45

Fed. R. Civ. P. 30(b)(6) ........ 12

Fed. R. Civ. P. 34(b) ........ 42

Fed. R. Civ. P. 36 ........ 29, 38, 45, 46

Fed. R. Civ. P. 36(a)(1) ........ 38

Fed. R. Civ. P. 36(a)(1)(A) ........ 29

**Other Authorities**

Central District Local Rule 37-2.1 .......... 44

FEDERAL CIVIL PROCEDURE BEFORE TRIAL (Rutter 2007), at 12:84.10 .......... 6

**Preliminary Statement**

Carter Bryant's motion must be denied based on undisputed facts. It is undisputed that he did not serve his discovery requests in any manner allowed by the Federal Rules of Civil Procedure. It is also undisputed that there was no agreement, and certainly no written consent, allowing Bryant to serve discovery requests by Federal Express or electronic mail. That is dispositive. Rule 5(b) requires *written consent* for service by electronic means or any other means not specifically enumerated in Rule 5(b), and the Advisory Committee Notes specifically explain that "[t]he consent must be express, and cannot be implied from conduct."

Even apart from the fact that it was decided five years before the 2001 amendment to Rule 5(b) mandating written consent to alternative means of service, Magnuson v. Video Yesteryear, 85 F.3d 1424 (9th Cir. 1996), would not excuse Bryant's violation. Before it was superseded, Magnuson provided that an otherwise improper means of service could be deemed proper *only* if there was actual notice *and* "exceptional good cause." Bryant's bootstrap argument that his past improper service of discovery *responses* evidences an implicit agreement that Mattel would not object to improper service of discovery *requests* has never been adopted, and is not "exceptional good cause" as a matter of law.

Nor can principles of "fairness" aid Bryant. He had years to serve the discovery requests at issue, but attempted to serve them just 33 days before the discovery cut-off. Moreover, MGA and Bryant have repeatedly demanded strict compliance from Mattel with discovery rules. MGA's counsel Thomas Nolan recently compared the discovery rules to a football game, stating: "I bet you that Tom Brady and the Patriots would have loved to have had one more shot. But, you know, the rules were that the time ended in the fourth quarter." Transcript of

February 4, 2008 Hearing Before Judge Larson, 44:1-10.[1] Allowing Bryant to disregard the federal rules now for no good reason would be unfair to Mattel, which has always abided by the service rules.

Even apart from Bryant's unexcused failure to serve his latest round of discovery requests (and his failure to move before the January 28 discovery cut-off date), his motion is not well taken. For example, Mattel has answered Interrogatory No. 20, thus mooting it.

Bryant's First Set of Requests for Admissions largely seek information concerning the activities of thousands of other Mattel employees, ostensibly to aid in the interpretation of Mattel's employment contract with Bryant. The law, however, is to the contrary. The Ninth Circuit has emphasized that a party's contractual relations with others cannot aid in the interpretation of a contract with a different person. Not surprisingly, the Discovery Master has already held that Bryant could not compel deposition testimony on such topics because such discovery would "not [be] likely to lead to admissible evidence" and would "create undue burden." Otherwise, the First Set of RFAs seek to require Mattel to admit what it would have done in response to various fact patterns that never occurred. The law is clear that such hypotheticals are not properly the subject of admissions requests. The First Set of RFAs additionally, and improperly, seek Phase 2 discovery related to Mattel's MY SCENE and FLAVAS dolls.

The 221 RFAs in Bryant's Second Set are also improper. Virtually all -- 218 of them -- ask when the "design incorporated" in a sketch or other document was created. It is one thing to determine when a document was created but it is quite another to determine when a "design" incorporated in a document was created because the meaning of what is being asked is simply unclear. It is similarly

---

[1] Declaration of Dylan Proctor dated March 4, 2008 ("Proctor Dec."), Exh. 16.

impossible to address the two RFAs (Nos. 113-114), and the last RFA, No. 115, also improperly seeks a hypothetical admission.

Finally, Bryant's motion directed to Request Nos. 10 and 21-32 of his Fourth Set of Requests for Production should be denied. Mattel's objections were "untimely" only because the RFPs were never properly served (thus excusing Mattel from having to provide any response) and, as a consequence, a response date was never calendared. In any event, the individual requests do not seek documents identified with "reasonable particularity" but would require the production of documents unrelated to any claims and defenses at issue.

## Statement of Facts

Only 33 days before the Phase I discovery cut-off, Bryant purported to serve what he now claims are crucial discovery requests.[2] The requests were sent to Mattel's counsel by Federal Express and e-mail on Thursday, December 27, 2007.[3] Previously, Bryant had sent discovery *responses* on Mattel by Federal Express and e-mail, but had never served discovery *requests* in this manner.[4] Bryant had also served meet and confer letters on Mattel by e-mail -- but only after Mattel had expressly consented in writing to such service in a stipulation.[5] Mattel never gave written consent to the Federal Express and e-mail service of discovery requests.[6] In fact, Mattel previously objected numerous times to service by e-mail. On January 10, 2007, Mattel's counsel wrote to Discovery Master Infante and stated: "MGA has claimed that an agreement for the e-mail service of motions exists in paragraph 5 of the Discovery Master Order. It does not. . . . As a result, the service of *motions* --

---

[2] Carter Bryant's Motion to Compel Responses to Discovery Requests dated February 8, 2008 ("Motion") at 2:25-3:5, 8:16-19.

[3] Id., ¶ 3:16-19, 7:10-11; Proctor Dec., ¶ 13.

[4] Id.,¶ 13.

[5] Motion at 3:25-4:2.

[6] Proctor Dec. at ¶ 13.

which is not altered by the Discovery Master Order -- must be accomplished in compliance with Rule 5."[7] Two days later, Mattel's counsel wrote to Bryant's counsel to specifically object to service by e-mail and Federal Express:

> My office is in receipt of Bryant's purported e-mail service of Bryant's Opposition to Mattel's Motion to Compel the Production of Documents. Please be advised that there is no agreement or written consent among the parties to service of oppositions (or motions or replies) by electronic mail, which Fed. R. Civ. P. 5(b)(2)(D) requires. It also appears that Bryant elected to serve its opposition papers by facsimile and FedEx, again other manners of service to which the parties have not agreed as required by Rule 5. Indeed, counsel for MGA has specifically rejected Mattel's proposed facsimile service stipulation. Bryant's purported service of its opposition papers is therefore ineffective until Bryant serves said papers consistent with the Federal Rules, which Mattel awaits.[8]

Mattel's counsel wrote to Bryant's counsel on December 31, 2007, and January 3, 2008, requesting to meet and confer regarding certain Bryant and MGA Requests for Admission. Although counsel met and conferred, Mattel did not agree to respond substantively to the requests for admission.[9]

Mattel timely responded to all but one set of Bryant's requests, objecting to their improper service.[10] In early February, Mattel's counsel became aware that Bryant's Fourth Set of Requests for Production of Documents were never properly calendared due to the improper service. Owing to the mix-up, Mattel's responses to those Requests were served just over one week after they would have been due had they been served properly.[11]

---

[7] Proctor Dec., Exh. 14.

[8] Id., Exh. 15.

[9] Id., ¶ 14.

[10] Id., ¶ 15.

[11] Id.., ¶ 16.

On February 6, 2008, the parties met and conferred regarding Bryant's improper service.[12] Mattel agreed to respond substantively to Bryant's Interrogatory No. 20, but only on condition that Bryant would not argue that in responding Mattel had waived its right to object to the service of other discovery requests. Bryant's counsel agreed.[13] Nevertheless, Bryant improperly now makes the very argument he agreed not to make and, going back on his agreement, claims that Mattel waived its rights by responding to Interrogatory No. 20.[14]

## Argument

## I. BRYANT'S DISCOVERY REQUESTS WERE NEVER PROPERLY SERVED.

### A. Rule 5(b) Does Not Recognize Service by E-mail or Federal Express.

Federal Rule of Civil Procedure 5(b) specifies the proper means of serving discovery requests:

> **Service in General.** A paper is served under this rule by:
>
> **(A)** handing it to the person;
>
> **(B)** leaving it:
>
> **(i)** at the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office; or
>
> **(ii)** if the person has no office or the office is closed, at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there;
>
> **(C)** mailing it to the person's last known address--in which event service is complete upon mailing;

[12] Id., ¶ 17.

[13] Motion at 6, fn.5; Werdegar Dec. ¶ 30; Exh. T.

[14] Motion at 9:16-18.

> **(D)** leaving it with the court clerk if the person has no known address;
>
> **(E)** sending it by electronic means *if the person consented in writing*--in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served; or
>
> **(F)** delivering it by any other means *that the person consented to in writing*--in which event service is complete when the person making service delivers it to the agency designated to make delivery. (emphasis added).

The Ninth Circuit has held that service by Federal Express and electronic means is insufficient under Rule 5(b). See Magnuson v. Video Yesteryear, 85 F.3d 1424 (9th Cir. 1996) (holding that service by Federal Express and facsimile was invalid); FEDERAL CIVIL PROCEDURE BEFORE TRIAL (Rutter 2007), at 12:84.10 ("Neither fax, e-mail nor overnight courier service is an authorized means of service by the person being served."). See also Audio Enterprises, Inc. v. B & W Loudspeakers of America, 957 F.2d 406, 409 (7th Cir. 1992) (holding that Federal Express does not constitute service "by mail" for Rule 5(b) purposes).

Because Bryant served his discovery requests solely by Federal Express and e-mail,[15] the requests were never properly served. As a result, Mattel had no obligation to respond at all to Bryant's discovery requests. See Zimmerman v. Atlanta Hawks, Ltd., No. 1:88-CV-2798-WCO, 1990 WL 58462, at *1 (N.D. Ga. 1990) (denying motion to compel discovery responses because discovery was improperly served pursuant to Rule 5(b)); see also Salley v. Board of Governors, 136 F.R.D. 417, 420 (M.D.N.C. 1991) (holding prior to the 2001 amendment of Rule 5(b) that a party had no obligation to respond to discovery requests that were improperly served unless exceptional circumstances were shown).

---

15 Motion at 7:7-10.

**B. Rule 5(b) Requires Express Written Consent to any Alternative Form of Service.**

Federal Rule of Civil Procedure 5(b) was amended in 2001 to require express written consent to alternative forms of service, such as Federal Express and e-mail. At that time, the drafters added Rule 5(b)(2)(D), which read:

> Service under Rule 5(a) is made by: ... (D) Delivering a copy by any other means, including electronic means, *consented to in writing by the person served*. Service by electronic means is complete on transmission; service by other consented means is complete when the person making service delivers the copy to the agency designated to make delivery. If authorized by local rule, a party may make service under this subparagraph (D) through the court's transmission facilities. (emphasis added).

The Advisory Committee Notes regarding the 2001 amendment explain: "It authorizes service by electronic means or any other means, but only if consent is obtained from the person served. *The consent must be express, and cannot be implied from conduct.*" (Emphasis added.) In December 2007, the "written consent" requirement for alternative means of service was moved from Rule 5(b)(2)(D) to Rule 5(b)(2)(E-F).

After the 2001 amendment, a party's past acceptance of improper service cannot excuse further improper service as a matter of law. See RFR Industries, Inc. v. Century Steps, Inc., 477 F.3d 1348, 1351-52 (5th Cir. 2007) (refusing to excuse service by facsimile despite previous acceptance, and noting that "the advisory committee notes accompanying Rule 5 reiterate that consent to service under Rule 5(b)(2) 'must be express, and cannot be implied from conduct'"); Rodriguez v. M/V Washington Rainbow II, No. Civ.A. H-05-1129, 2005 WL 2897387 (S.D. Tex. 2005) (noting that pre-amendment cases interpreting Rule 5(b)'s service requirements are no longer persuasive authority). Because there was no written consent to Bryant's chosen means of service, his motion must be denied.

C. **Even the Superseded Ninth Circuit Authority Cited by Bryant Would Not Have Excused His Improper Service.**

In Magnuson, decided before the 2001 amendment to Rule 5(b), the Ninth Circuit set a very high threshold for excusing service that did not follow the requirements of Rule 5(b). The Court held that "actual notice by a means other than that authorized by Rule 5(b) does not constitute valid service and is not an exception to the rule." Magnuson, 85 F.3d at 1431 (quoting Salley, 136 F.R.D. at 420). Instead, it required that a party show both actual notice *and* "exceptional good cause." Magnuson, 85 F.3d at 1431. The Ninth Circuit did not explain what constituted "exceptional good cause," nor did it find "exceptional good cause" in that case -- the Ninth Circuit rejected the claimed service there. Indeed, it does not appear the Ninth Circuit has ever found exceptional good cause.

Even under Magnuson, Bryant's argument would fail. Bryant's argument that he had "exceptional good cause" to use Federal Express and e-mail to serve discovery *requests* because Mattel had previously accepted discovery *responses* served in that manner disregards the fact that Mattel objected several times to Bryant's chosen methods of service,[16] and also disregards the important distinction between discovery requests and discovery responses. Discovery requests trigger obligations that can be enforced by the Court. They demand information. If a party wishes to demand information, with the coercive power of the Court backing it, it must properly serve its demands.

Not surprisingly, Bryant has cited no case in which a party's lack of objection to improper service of discovery responses waived that party's right to object to improper service of other documents. Salley held that the defendants waived their right to object to facsimile service of discovery *requests* because they had previously accepted such service of other discovery *requests*. Switzer v.

Sullivan, No. 95 C 3793, 1996 WL 52911 (N.D. Ill. 1996), is equally inapplicable. The court held that because the defendant had requested that discovery requests be served by facsimile, he waived the right to object later.

**D. Mattel Did Not Waive Its Objection to the Improper Service.**

Mattel's failure to raise the issue during a meet and confer conference also cannot constitute a post hoc waiver. See Syverson v. IBM, 472 F.3d 1072, 1084 (9th Cir. 2007) (stating that waiver requires a "voluntary relinquishment or abandonment . . . of a legal right"). Indeed, there is no basis to claim the meet and confer conferences excused Bryant's improper service. Mattel timely objected to all but one set of discovery requests, and cannot have waived its rights because its timely responses state the service objection.

Moreover, Bryant's argument that Mattel somehow waived its right to object to improper service by agreeing to respond to Interrogatory No. 20 is counter factual; Mattel agreed to respond *only* on the basis that Bryant would not argue that Mattel had waived its right to object to the improper service. As Mattel's counsel confirmed to Bryant's counsel on February 7, 2008:

> [T]he only exception to the foregoing is Interrogatory No. 20, to which Mattel will respond, pursuant to Bryant's and MGA's request and as Mattel has agreed, since you have expressly acknowledged that doing so will not constitute (and you will not argue constitutes) a waiver of Mattel's service objections as to other discovery.[17]

Bryant's counsel had acknowledged the agreement in an e-mail sent February 6, 2008: "I hereby confirm that Bryant will not assert that Mattel's [sic] has waived its service objection as to Bryant's other discovery requests based on Mattel's agreement to respond to Bryant's interrogatory."[18] Bryant now concedes as much.[19]

---

[16] Proctor Dec., Exhs. 14, 15.

[17] Werdegar Dec., Exh. U.

[18] Proctor Dec., Exh. 12.

Nevertheless, Bryant has reneged on his agreement by arguing that Mattel's response to the interrogatory waives Mattel's rights to object to noncompliant service.

Moreover, in this case as any other, Bryant certainly had no reason to expect that Mattel would accept improper service. Mattel repeatedly told Bryant it would not. Further, as MGA's counsel has explained to Judge Larson, "Your honor, all I can say is that in this case, more than any case I've ever seen, every possible argument is reserved."[20] Bryant had no reason to think improper service would be excused by Mattel. The Court must deny Bryant's Motion.

**E. The Alleged Absence of Prejudice Cannot Act to Excuse Noncompliant Service.**

Bryant argues repeatedly that his improper service should be excused because Mattel did not suffer prejudice. That would be beside the point even if true. No case cited by Bryant holds that prejudice is a factor that courts may consider in determining whether to excuse noncompliant service. In Magnuson, for example, there was no indication of prejudice, but the Ninth Circuit nevertheless held that the improper service would not be excused. Magnuson, 85 F.3d at 1431. The Court confirmed that actual notice (which generally would result in no prejudice) could not justify improper service. Id.

In fact, Mattel was arguably prejudiced by Bryant's refusal to follow service rules.[21] Bryant's failure to serve his discovery requests properly led to internal docketing confusion. Because of that confusion, Mattel did not serve

---

[19] Motion at 6, fn. 5.

[20] Proctor Dec., Exh. 16.

[21] Proctor Dec., ¶ 18.

objections and responses to Bryant's requests for production when it served them as to his requests for admissions and interrogatories.[22]

## II. BRYANT'S MOTION AS TO INTERROGATORY NO. 20 IS NOW MOOT

As Bryant admits, Mattel agreed to provide a substantive response to Interrogatory No. 20 (but without waiver of its objections). Mattel served its substantive response on March 4, 2008,[23] thus mooting Bryant's motion as to this issue. As Bryant argued in opposing Mattel's Motion to Compel Responses to Interrogatories, after he "supplemented" his interrogatory responses:

> As courts across the country repeatedly have held, *motions to compel are rendered moot by the service of responses or supplemental responses to the discovery requests at issue. See e.g., Ippolito v. Goord*, No. 05-CV-6683L, 2007 WL 2769503, * 1-2 (W.D.N.Y. Sep. 21, 2007) (denying motion to compel responses to interrogatories as moot where opposing part had served responses after the motion was filed); *Samuels v. Huff*, No. 04-0859-P, 2007 WL 1237961, *1 (W.D. La. Apr. 27, 2007) (same); *Geico Cas. Co. v. Beauford*, No. 8:05-CV-697T24-EAS, 2007 WL 1192446, *2 (M.D. Fla. Apr. 23, 2007) (denying as moot motion to compel Rule 26 disclosures because defendant served amended and supplemental disclosures after motion to compel was filed); *Rhea v. Uhry*, No. 3:05CV189 (RNC), 2007 WL 926908, *2 (D.Conn. Mar. 26, 2007) (denying motion to compel responses to interrogatories as moot where opposing party had served responses after the motion was filed); *Sotelo-Camacho v. Morales*, CIVA No. 1:05CV1349 WSD, 2006 WL 3709613, * 1 (N.D. Ga. Nov. 7, 2006) (same) . . .[24]

---

[22] Id.

[23] Proctor Dec., ¶ 22.

[24] Carter Bryant's Opposition to Mattel, Inc.'s Motion to Compel Responses to Interrogatories, Nos. 27-33, 36-40, 42, 45, and 47, dated December 20, 2007, at 6:24-7:22 (emphasis added), attached to the Proctor Dec., Exh. 11.

As Bryant himself explained, because Mattel has provided a substantive response (which clearly is adequate) Bryant's motion to compel a further response to the interrogatory is now moot.

## III. MATTEL'S ADDITIONAL OBJECTIONS TO BRYANT'S FIRST SET OF REQUESTS FOR ADMISSION ARE PROPER

### A. Bryant's Request for Admission Nos. 14-17, 26-42, 42-51, 57-66 and 95-112 Improperly Seek Information Concerning Acts of All Past and Present Mattel Employees

#### 1. The Discovery Master Has Already Held that the Subject Matter of Bryant's Requests Is Improper

Even if they had been properly served, Bryant's Request Nos. 14-17, 26-42, 42-51, 57-66 and 95-112 would still be objectionable. They seek information concerning past and present Mattel employees, their business dealings with third parties and Mattel's enforcement of employment agreements in light of such business dealings. The Requests mirror Bryant's rejected Rule 30(b)(6) topics, which the Discovery Master found to be improper because they were "grossly overbroad, seek irrelevant information, and create undue burden."[25] The Rule 30(b)(6) topics, like Bryant's Requests now, sought information concerning Mattel's employment contracts with third parties, and Mattel's enforcement of the same.

Bryant relies upon the arguments asserted in MGA and Carter Bryant's Joint Motion to Overrule Mattel's Relevance Objection and Compel Discovery Relevant to Mattel's Employee Agreements in an effort to show that the requests are

---

[25] 2/11/2008 Hearing Transcript, 22:19-21, attached to the Proctor Dec., Exh. 1; see also Order Denying MGA's and Carter Bryant's Motion to Overrule Mattel's (footnote continued)

proper.[26] In that motion, Bryant argued that extrinsic evidence of Mattel's "prior interpretations and practical constructions" of its employment agreements, and its enforcement of the same against third parties, was relevant to determining Mattel's intent in its Employee Confidential Information and Invention Agreement entered into with Bryant and his Conflict of Interest Questionnaire provided to Mattel. In his Motion, Bryant asserts the same information is discoverable for the same reasons -- because the information is "relevant to how Mattel's form employment agreements should be construed by the Court"[27] and because it is "information relating to Mattel's interpretation and enforcement of the form agreements it claimed Bryant has breached."[28] The Discovery Master, however, denied the Joint Motion:[29]

> All right. Let me deal with the motion, with respect to topics 25 and 52, the 30(b)(6) deposition notice which originally was served on December '04. ***The motion to overrule Mattel's relevancy objections and compel discovery on those topics is denied. I find that both topics between the 25 and 52 are grossly overbroad, seek irrelevant information, and create undue burden. To the extent that portions of what is sought in those topics is relevant, that relevancy is substantially outweighed by the enormous burden it would take to prepare witnesses to deal with the scope of these topics. In my view, also, it's not likely to lead to admissible evidence. And for all those reasons, I would deny that motion.***[30]

---

Relevance Objection and Compel Discovery Relevant to Mattel's Employee Agreements, attached to the Proctor Dec., Exh. 2.

[26] Mot. at 14:3-6 ("This very issue is presently before the Court pursuant to MGA's and Bryant's Joint Motion to Overrule Mattel's Relevance Objection and Compel Discovery Relevant to Mattel's Employee Agreements ("Joint Motion"), which, in the interests of brevity, is incorporated herein by reference.").

[27] Mot. at 14:1-3.

[28] Mot. at 16:20-22.

[29] Order Denying MGA's and Carter Bryant's Motion to Overrule Mattel's Relevance Objection and Compel Discovery Relevant to Mattel's Employee Agreements, attached to the Proctor Dec., Exh. 2.

[30] 2/11/2008 Hearing Transcript, 22:13-23:3, attached to the Proctor Dec., Exh. 1.

The same relevancy, burden and overbreadth concerns infect Bryant's Requests for Admission.

### 2. Bryant's Requests Seek Irrelevant and Unduly Burdensome Information Concerning the Acts of Thousands of Present and Former Mattel Employees

Bryant seeks evidence of Mattel's employee agreements, their enforcement, and Mattel's dealings with non-parties purportedly to interpret Bryant's agreements with Mattel.[31] The following Requests seek such irrelevant and unduly burdensome information:

REQUEST FOR ADMISSION NO. 14:

Admit that, other than CARTER BRYANT, MATTEL has never sued any of its employees or former employees for breach of any INVENTION AGREEMENT.

REQUEST FOR ADMISSION NO. 15:

Admit that, other than CARTER BRYANT, MATTEL has sued one or more of its employees or former employees for breach of any INVENTION AGREEMENT.

REQUEST FOR ADMISSION NO. 16:

Admit that, other than CARTER BRYANT, MATTEL has never threatened to sue any of its employees or former employees for breach of any INVENTION AGREEMENT.

REQUEST FOR ADMISSION NO. 17:

Admit that, other than CARTER BRYANT, MATTEL has threatened to sue one or more of its employees or former employees for breach of any INVENTION AGREEMENT.

REQUEST FOR ADMISSION NO. 26:

Admit that MATTEL employees, excluding CARTER BRYANT, have performed work for entities other than MATTEL while employed by MATTEL.

REQUEST FOR ADMISSION NO. 27:

---

[31] Motion at § II(B)(2)(b).

Admit that MATTEL employees, excluding CARTER BRYANT, have performed work for entities other than MATTEL while employed by MATTEL without obtaining MATTEL's approval to perform such work.

REQUEST FOR ADMISSION NO. 28:

Admit that no MATTEL employee, excluding CARTER BRYANT, has performed work for entities other than MATTEL while employed by MATTEL.

REQUEST FOR ADMISSION NO. 29:

Admit that no MATTEL employee, excluding CARTER BRYANT, has performed work for entities other than MATTEL while employed by MATTEL without obtaining MATTEL's approval to perform such work.

REQUEST FOR ADMISSION NO. 30:

Admit that MATTEL employees, excluding CARTER BRYANT, have performed work for a MATTEL competitor while employed by MATTEL.

REQUEST FOR ADMISSION NO. 31:

Admit that MATTEL employees, excluding CARTER BRYANT, have performed work for a MATTEL competitor while employed by MATTEL without obtaining MATTEL's approval to perform such work.

REQUEST FOR ADMISSION NO. 32:

Admit that no MATTEL employee, excluding CARTER BRYANT, has performed work for a MATTEL competitor while employed by MATTEL.

REQUEST FOR ADMISSION NO. 33:

Admit that no MATTEL employee, excluding CARTER BRYANT, has performed work for a MATTEL competitor while employed by MATTEL without obtaining MATTEL's approval to perform such work.

REQUEST FOR ADMISSION NO. 34:

Admit that MATTEL employees, excluding CARTER BRYANT, have been paid by entities other than MATTEL while employed by MATTEL.

REQUEST FOR ADMISSION NO. 35:

Admit that MATTEL employees, excluding CARTER BRYANT, have been paid by entities other than MATTEL while employed by MATTEL and have not disclosed such payments to MATTEL.

REQUEST FOR ADMISSION NO. 36:

Admit that no MATTEL employee, excluding CARTER BRYANT, has been paid by entities other than MATTEL while employed by MATTEL.

REQUEST FOR ADMISSION NO. 37:

Admit that no MATTEL employee, excluding CARTER BRYANT, has been paid by entities other than MATTEL while employed by MATTEL without disclosing such payments to MATTEL.

REQUEST FOR ADMISSION NO. 38:

Admit that MATTEL employees, excluding CARTER BRYANT, have been paid by a MATTEL competitor while employed by MATTEL.

REQUEST FOR ADMISSION NO. 39:

Admit that MATTEL employees, excluding CARTER BRYANT, have been paid by a MATTEL competitor while employed by MATTEL and have not disclosed such payments to MATTEL.

REQUEST FOR ADMISSION NO. 40:

Admit that no MATTEL employee, excluding CARTER BRYANT, has been paid by a MATTEL competitor while employed by MATTEL.

REQUEST FOR ADMISSION NO. 41:

Admit that no MATTEL employee, excluding CARTER BRYANT, has been paid by a MATTEL competitor while employed by MATTEL without disclosing such payments to MATTEL.

REQUEST FOR ADMISSION NO. 42:

Admit that the INVENTION AGREEMENT does not prohibit MATTEL employees from leaving MATTEL to work for a competitor of MATTEL.

REQUEST FOR ADMISSION NO. 57:

Admit that MATTEL employees who perform doll hair rooting as part of the employment duties for MATTEL are not prohibited from performing doll hair rooting for PERSONS other than MATTEL while employed by MATTEL.

REQUEST FOR ADMISSION NO. 58:

Admit that MATTEL employees who perform doll hair rooting as part of the employment duties for MATTEL are prohibited from performing doll hair rooting for PERSONS other than MATTEL while employed by MATTEL.

REQUEST FOR ADMISSION NO. 59:

Admit that MATTEL employees who perform doll face painting as part of the employment duties for MATTEL are not prohibited from performing doll face painting for PERSONS other than MATTEL while employed by MATTEL.

REQUEST FOR ADMISSION NO. 60:

Admit that MATTEL employees who perform doll face painting as part of the employment duties for MATTEL are prohibited from performing doll face painting for PERSONS other than MATTEL while employed by MATTEL.

REQUEST FOR ADMISSION NO. 61:

Admit that MATTEL employees who perform sculpting as part of the employment duties for MATTEL are not prohibited from sculpting for PERSONS other than MATTEL while employed by MATTEL.

REQUEST FOR ADMISSION NO. 62:

Admit that MATTEL employees who perform sculpting as part of the employment duties for MATTEL are prohibited from sculpting for PERSONS other than MATTEL while employed by MATTEL.

REQUEST FOR ADMISSION NO. 63:

Admit that MATTEL doll designers are not prohibited from providing design services to PERSONS other than MATTEL while employed by MATTEL.

REQUEST FOR ADMISSION NO. 64:

Admit that MATTEL doll designers are prohibited from providing design services to PERSONS other than MATTEL while employed by MATTEL.

REQUEST FOR ADMISSION NO. 65:

Admit that MATTEL employees are not prohibited from using MATTEL property or resources for non MATTEL projects while employed MATTEL.

REQUEST FOR ADMISSION NO. 66:

> Admit that MATTEL employees are prohibited from using any MATTEL property or resources for non MATTEL projects while employed by MATTEL.[32]

Bryant asserts that these Requests seek information relevant to Mattel's enforcement of its "form employment contracts" to show how Mattel's form contracts "should be construed by the Court,"[33] and seek "extrinsic evidence of the parties' conduct" that "bears directly on their intent."[34] But Bryant's own authority emphasizes the limited role that extrinsic evidence plays in contract interpretation. In U.S. Cellular Investment Co. v. GTE Mobilenet, Inc., 281 F.3d 929, 939 (9th Cir. 2002), the Ninth Circuit affirmed the district court's order excluding parole evidence on the subject of contract interpretation on the basis that such evidence is admissible *only* to explain an ambiguous term in a contract.. Here, there is nothing ambiguous about the provisions of Bryant's contract.

Without a claim or defense to tie to Mattel's agreements with third parties, Bryant has again relied on his rejected theory from the Joint Motion, and one that the cited authority does not support. Although the pre-dispute conduct of parties to a contract may aid contract interpretation, courts have not expanded that principle to apply to contracts with non-parties. Bryant mis-cites authority to suggest that they have, and relies on that mis-citation to justify his demand that Mattel undertake the extraordinarily burdensome task of researching Mattel's contractual relationships with thousands of other employees for over a decade.

In arguing that the interpretation of his contract with Mattel can be informed by reference to other contracts with other employees made at different times -- even post-dating his employment at Mattel -- Bryant argues for new law. He does not cite any authority that such information is discoverable, let alone

---

32 Werdegar Dec., Exh. B.

33 Motion at 13:21-14:3.

34 Motion at 14:6-8.

relevant. Indeed, his authority actually undermines his argument. In U.S. Cellular, the Ninth Circuit explained that "Under California law, a court may consider the subsequent acts and conduct of the parties in the execution of the contract in order to determine the intent of those parties." 281 F.3d at 937 (citing Cal. Civ. Proc. Code § 1856(c)) (emphasis added). Here, the contracting parties are Bryant and Mattel. No other employee is a party to the contract between Bryant and Mattel. It necessarily follows that actions of the parties to other contracts are not relevant.

Finally, Bryant relies upon judicial estoppel cases in which a party interpreted the same document differently in different proceedings. See, e.g., U.S. Cellular, 281 F.3d at 938 (a party's "vigorous[] assert[ion]" of a contrary interpretation in another case undermined its later position that the contract was not subject to different reasonable interpretations). This case is easily distinguished because it involves gamesmanship by litigants who adopted diametrically opposed positions before different tribunals. Here, Bryant does not point to any instance where, in litigation with third parties, Mattel argued that doll designs created by a Mattel designer did not belong to Mattel. In all events, Bryant's suggestion that Mattel may have advocated an interpretation that grants it narrower contractual rights is simply implausible.

**3.** Request Nos. 42-51 and 95-112 Seek Irrelevant Information

Bryant's Request Nos. 42-51 and 95-112 also seek information concerning Mattel's employment agreements and Mattel's interpretation of the agreements as they apply to all employees, not only as to Bryant. As discussed above, they seek information that the Discovery Master has already found to be unlikely to lead to admissible evidence.[35] The Requests state:

---

[35] See Section III(A)(1), supra.

REQUEST FOR ADMISSION NO. 42:

Admit that the INVENTION AGREEMENT does not prohibit MATTEL employees from leaving MATTEL to work for a competitor of MATTEL.

REQUEST FOR ADMISSION NO. 43:

Admit that MATTEL employees are not prohibited from leaving MATTEL to work for a competitor of MATTEL.

REQUEST FOR ADMISSION NO. 44:

Admit that MATTEL employees, other than CARTER BRYANT, have left MATTEL to work for a competitor of MATTEL.

REQUEST FOR ADMISSION NO. 45:

Admit that the INVENTION AGREEMENT does not prohibit MATTEL employees from leaving MATTEL to start their own businesses.

REQUEST FOR ADMISSION NO. 46:

Admit that the INVENTION AGREEMENT does not prohibit MATTEL employees from leaving MATTEL to start their own toy businesses.

REQUEST FOR ADMISSION NO. 47:

Admit that MATTEL employees, other than CARTER BRYANT, have left MATTEL to start their own businesses.

REQUEST FOR ADMISSION NO. 48:

Admit that MATTEL employees, other than CARTER BRYANT, have left MATTEL to start their own toy businesses.

REQUEST FOR ADMISSION NO. 49:

Admit that CARTER BRYANT's employment with MATTEL was at will.

REQUEST FOR ADMISSION NO. 50:

Admit that MATTEL employees are not required to give notice prior to terminating their employment with MATTEL.

REQUEST FOR ADMISSION NO. 51:

Admit that CARTER BRYANT was not required to give notice prior to terminating his employment with MATTEL in October 2000.

REQUEST FOR ADMISSION NO. 95:

Admit that the "Conflict of Interest Questionnaire" produced in by MATTEL in this litigation as document M0001621 does not request the disclosure of any ideas, designs or inventions that CARTER BRYANT may have developed while not employed by MATTEL.

REQUEST FOR ADMISSION NO. 96:

Admit that the "Conflict of Interest Questionnaire" produced in by MATTEL in this litigation as document M0001621 does not require the disclosure of any ideas; designs or inventions that CARTER BRYANT may have developed while not employed by MATTEL.

REQUEST FOR ADMISSION NO. 97:

Admit that YOU do not contend that the "Conflict of Interest Questionnaire" produced in by MATTEL in this litigation as document M0001621 requests the disclosure of any ideas, designs or inventions that CARTER BRYANT may have developed while not employed by MATTEL.

REQUEST FOR ADMISSION NO. 98:

Admit that YOU contend that the "Conflict of Interest Questionnaire" produced in by MATTEL in this litigation as document M0001621 requests the disclosure of any ideas, designs or inventions that CARTER BRYANT may have developed while not employed by MATTEL.

REQUEST FOR ADMISSION NO. 99:

Admit that YOU do not contend that the "Conflict of Interest Questionnaire" produced in by MATTEL in this litigation as document M0001621 requires the disclosure of any ideas, designs or inventions that CARTER BRYANT may have developed while not employed by MATTEL.

REQUEST FOR ADMISSION NO. 100:

Admit that YOU contend that the "Conflict of Interest Questionnaire" produced in by MATTEL in this litigation as document M0001621 requires the disclosure of any ideas, designs or inventions that CARTER BRYANT may have developed while not employed by MATTEL.

REQUEST FOR ADMISSION NO. 101:

Admit that CARTER BRYANT was not requested by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL at the time that BRYANT resumed his employment with MATTEL in January 1999.

REQUEST FOR ADMISSION NO. 102:

Admit that CARTER BRYANT was not required by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL at the time that BRYANT resumed his employment with MATTEL in January 1999.

REQUEST FOR ADMISSION NO. 103:

Admit that CARTER BRYANT was never requested by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL.

REQUEST FOR ADMISSION NO. 104:

Admit that CARTER BRYANT was never required by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL.

REQUEST FOR ADMISSION NO. 105:

Admit that YOU do not contend that CARTER BRYANT was requested by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL at the time that BRYANT resumed his employment with MATTEL in January 1999.

REQUEST FOR ADMISSION NO. 106:

Admit that YOU contend that CARTER BRYANT was requested by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL at the time that BRYANT resumed his employment with MATTEL in January 1999.

REQUEST FOR ADMISSION NO. 107:

Admit that YOU do not contend that CARTER BRYANT was required by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL at the time that BRYANT resumed his employment with MATTEL in January 1999.

REQUEST FOR ADMISSION NO. 108:

Admit that YOU contend that CARTER BRYANT was required by MATTEL to disclose any ideas, designs, or

inventions that he may have developed while not employed by MATTEL at the time that BRYANT resumed his employment with MATTEL in January 1999.

REQUEST FOR ADMISSION NO. 109:

Admit that YOU do not contend that CARTER BRYANT was ever requested by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL.

REQUEST FOR ADMISSION NO. 110:

Admit that YOU contend that CARTER BRYANT was requested by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL.

REQUEST FOR ADMISSION NO. 111:

Admit that YOU do not contend that CARTER BRYANT was ever required by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL.

REQUEST FOR ADMISSION NO. 112:

Admit that YOU contend that CARTER BRYANT was required by MATTEL to disclose any ideas, designs, or inventions that he may have developed while not employed by MATTEL.[36]

Bryant again asserts that these Requests are relevant based on the Joint Motion, purportedly because the information sought is "directly relevant to Mattel's claims for breach of contract, breach of fiduciary duty and breach of the duty of loyalty, as well as Bryant's affirmative defenses."[37] He fails, however, to articulate how the career activities of Mattel's former employees are relevant to the claims or defenses in this matter, or how they "relate to Mattel's interpretation and enforcement of the form employment agreement it claims Bryant has breached."[38] Nor can he. As discussed above, Bryant's contract interpretation and construction

[36] Werdegar Dec., Exh. B.

[37] Motion at 16:22-25.

[38] Motion at 16:20-22.

arguments fail. Additionally, in the case of Request No. 49 Bryant seeks an admission that Bryant's employment with Mattel was "at will."[39] Bryant's "at will" status is not at issue and the Request is, again, irrelevant.

The requested information falls outside the scope of discovery as set forth in Rule 26. In any event, any marginal relevance would be outweighed by the Requests' gross overbreadth and burden.[40] Mattel should not be compelled to provide such information and responses.

**4. Mattel's Alleged Failure to Prosecute Certain Breaches of Other Contracts Is Not Evidence of Its Intent as to Bryant**

Bryant's assertions that information concerning its enforcement of its contracts against third parties, or the third parties' breach thereof, "bears directly on [the parties'] intent"[41] fails as a matter of law. Under copyright law, a failure to prosecute third party infringers is simply not probative of an intent to waive rights against the defendant. "Extending the doctrine of estoppel so that a defendant may rely on a plaintiff's conduct toward another party is both unsupported by law and pernicious as a matter of policy." Paramount Pictures Corp. v. Carol Publishing Group, 11 F. Supp. 2d 329, 337 (S.D.N.Y. 1998) (rejecting an affirmative defense based upon the copyright owner's failure to prosecute third party infringements). Accordingly, Mattel's decisions on whether to prosecute other employees for infringement have nothing to do with Mattel's interpretation of its contract with Bryant.

---

39 Werdegar Dec., Exh. B.

40 2/11/2008 Hearing Transcript, 22:19-21, attached to the Proctor Dec., Exh. 1; see also Order Denying MGA's and Carter Bryant's Motion to Overrule Mattel's Relevance Objection and Compel Discovery Relevant to Mattel's Employee Agreements, attached to the Proctor Dec., Exh. 2.

41 Motion at. 13:21-14:8.

The same rule applies to common law claims. In Emerson Electric Co. v. Rogers, 418 F.3d 841 (8th Cir. 2005), the plaintiff sued a former employee for breach of employment agreement and misappropriation of trade secrets. The employee argued, inter alia, that the plaintiff had waived its right to enforce the agreement against him because it did not enforce it against other employees. Id. at 844-845. The Eighth Circuit held that:

> While [the employer] may not have exercised its rights under the covenant on every occasion, there is no credible evidence that [its] failure to do so rose to a waiver of its right to enforce the agreement as to [the defendant employee] or that its failure to enforce the agreement as to other employees makes it any less likely that [defendant] could use information gained during his relationship with [the employer] to unfairly compete against it.

Id. at 845. See also Deal v. Consumer Programs, Inc., 458 F. Supp. 2d 970, 978 n.5 (E.D. Mo. 2005) (employer's alleged non-enforcement of a contractual provision against one executive did not operate as a waiver of that provision against another). Accordingly, Mattel's litigation decisions involving other employees under different circumstances are irrelevant to its present dispute with Bryant.

That rule makes good sense. Whether to pursue claims against a former employee is necessarily based on practical considerations entwined with the unique factual circumstances of each situation -- all of which have nothing to do with Mattel's interpretation of the underlying contracts. In some cases, for example, it might not have been clear that any infringement occurred. At other times, a dispute may have been settled prior to litigation. Mattel's unique decisions whether to sue other employees for dissimilar misconduct are wholly irrelevant.

### 5. Bryant's Request Nos. 14-17, 26-42, 43, 44, 47, 48 and 57-66 Are Unduly Burdensome[42]

A Discovery Master has "a duty, of special significance in lengthy and complex cases where the possibility of abuse is always present, to supervise and limit discovery to protect parties and witnesses from annoyance and excessive expense." Dolgow v. Anderson, 53 F.R.D. 661, 664 (E.D.N.Y. 1971). Here, such limitations are necessary to protect against Bryant's abusive discovery requests. Request Nos. 14-17, 26-42, 43, 44, 47, 48, 57-66, as set forth above, are unduly burdensome and would be excessively expensive to respond to. The following Requests are exemplary:

REQUEST FOR ADMISSION NO. 31:

Admit that MATTEL employees, excluding CARTER BRYANT, have performed work for a MATTEL competitor while employed by MATTEL without obtaining MATTEL's approval to perform such work.

REQUEST FOR ADMISSION NO. 34:

Admit that MATTEL employees, excluding CARTER BRYANT, have been paid by entities other than MATTEL while employed by MATTEL.

REQUEST FOR ADMISSION NO. 35:

Admit that MATTEL employees, excluding CARTER BRYANT, have been paid by entities other than MATTEL while employed by MATTEL and have not disclosed such payments to MATTEL.[43]

REQUEST FOR ADMISSION NO. 48:

Admit that MATTEL employees, other than CARTER BRYANT, have left MATTEL to start their own toy businesses.

---

42 The Requests are also impermissibly compound. See Fed.R. Civ. P. 36(a).

43 Bryant's First Set of Requests for Admission, Werdegar Dec., Exh. B.

As discussed below, the burden in responding to Bryant's Requests would exceed Bryant's purported justification of contract interpretation. Fed. R. Civ. P. 26(b)(2)(C)(iii) (court may impose limits on discovery if burden of responding outweighs its likely benefit); see also Keith H. v Long Beach Unified School District, 228 F.R.D 652, 659 (C.D. Cal. 2005) (denying plaintiff's motion because request was burdensome and the gravamen of complaint addressed other issues).

To respond, Mattel would need to conduct an exhaustive investigation of thousands of files, in both electronic and non-electronic form, in several departments, for thousands of employees. Additionally, the Requests seek information concerning past and former Mattel employees, for more than a decade. For example, Request No. 34 seeks the following admission:

REQUEST FOR ADMISSION NO. 34:

> Admit that MATTEL employees, excluding CARTER BRYANT, have been paid by entities other than MATTEL while employed by MATTEL.[44]

Mattel has employed thousands of employees. On any given day, a large number of its employees use computers and telephones, and generate documents in paper format. To respond to the Requests, Mattel may need to review the work history, in electronic and in hard copy, and all related personnel files, of each of thousands of its past and present employees. Bryant's Requests also assume that Mattel's thousands of employees -- unlike Bryant -- informed Mattel of their business dealings. Mattel has little way to know this without interviewing its employees.

The Requests are not limited only to electronic files. Nor has Bryant limited the Requests to a certain type of file. Thus, to perform a reasonable inquiry, even were a global computerized search possible, Mattel could still be required to conduct a manual search through all of its non-computerized records and files and

potentially be required to interview thousands of third parties. The total anticipated cost of a company-wide review of every computer and manual file for information to respond to each of the 58 Requests in this category is incalculably large.

**6. Bryant Recognizes that His Requests Are Overly Broad and Unduly Burdensome**

Bryant does not dispute that his Requests for Admission are overbroad. He has offered "to limit the scope of the search that Mattel would have to perform . . . to employees at Mattel's El Segundo, California Design Center and to the files of its Human Resources Department, its Legal Department, and its Global Security Department."[45] That itself is a grossly overbroad search. In order to protect Mattel's confidential information and trade secrets, Mattel typically asks that all new employees joining its El Segundo headquarters, including its Design Center personnel, sign an Employee Confidential Information and Inventions Agreement, and fill out a Conflict of Interest Questionnaire. Currently, Mattel employs nearly 750 people in the Design Center alone. Since 1995, Mattel has employed more than 2000 employees at the Design Center.[46] To conduct a search of the files of Mattel's Human Resources, Legal and Security Departments to ascertain information as to those 2000 or more employees would potentially entail a review of more than 7000 files. These files generally are not kept in a central location and exist in various formats. Many are maintained in paper format, requiring a manual review. An unknown number of documents are contained within each of those files.[47] To perform a search of all the files of Mattel's Human Resources, Legal and Security

---

[44] Werdegar Dec., Exh. B.

[45] Motion at 14:24-28.

[46] Declaration of Lissa Freed in Support of Mattel, Inc.'s Opposition to Bryant's Motion to Compel Responses to Discovery Requests, dated March 4, 2008 ("Freed Decl."), ¶ 4.

[47] Freed Decl., ¶ 5.

Departments to ascertain information as to the 2000 or more employees in Mattel's Design Center since 1995 would require at least many hundreds of hours of time, if not many thousands.[48] Bryant's Requests, limited or not, are unduly burdensome and Mattel should not be compelled to respond to the same.

**B. Request Nos. 67-94 Pose Improper Hypotheticals and Seek Information in Violation of the Stay of Phase 2 Discovery**

**1. Bryant Implicitly Concedes that His Requests Are Incomplete Hypotheticals**

Bryant does not dispute, and thereby implicitly concedes, that his Requests pose improper, incomplete hypotheticals not based on facts on the record. Such Requests violate Rule 36, which permits Requests for Admission that relate to "facts, the application of law to fact, or opinions about either."[49] Hypotheticals based on nonexistent facts do not meet this requirement.

By definition, Mattel is unable to admit or deny nonexistent, hypothetical facts and scenarios -- they do not exist. Request Nos. 67-70 seek the following admissions:

REQUEST FOR ADMISSION NO. 67:

Admit that if CARTER BRYANT had disclosed his idea for a line of fashion dolls which he named Bratz to MATTEL prior to October 20, 2000, MATTEL would have taken steps to commercially exploit the idea.

REQUEST FOR ADMISSION NO. 68:

Admit that if CARTER BRYANT had disclosed his idea for a line of fashion dolls which he named Bratz to MATTEL prior to October 20, 2000, MATTEL would not have taken steps to commercially exploit the idea.[50]

REQUEST FOR ADMISSION NO. 69:

---

[48] Id., ¶ 6.

[49] Fed. R. Civ. P. 36(a)(1)(A).

[50] Werdegar Dec., Exh. B.

> Admit that YOU contend that if CARTER BRYANT had disclosed his idea for a line of fashion dolls which he named Bratz to MATTEL prior to October 20, 2000, MATTEL would have taken steps to commercially exploit the idea.
>
> REQUEST FOR ADMISSION NO. 70:
>
> Admit that YOU do not contend that if CARTER BRYANT had disclosed his idea for a line of fashion dolls which he named Bratz to MATTEL prior to October 20, 2000, MATTEL would have taken steps to commercially exploit the idea.

These Requests ask Mattel to admit or deny events that never occurred, based on facts that never existed. Such Requests are improper. See, e.g., Men of Destiny Ministries, Inc. v. Osceola County, Florida, No. 6:06-CV-624, 2006 WL 2048288, at *3 (M.D. Fla. Jul. 20, 2006) (holding that request for admission which sought a course of action based on set of hypothetical facts was impermissible); see also Story v. M/T Allegiance, No. 07-CV-139, 2007 WL 2790760, at *1 (W.D. Wash. Sept. 24, 2007) (upholding objection that request improperly "seeks an admission as to a hypothetical"); Abbott v. U.S., 177 F.R.D. 92, 93 (N.D.N.Y. 1997) (party cannot pose "improper hypothetical factual scenarios"); Fulhorst v. United Technologies Auto., Inc., No. 96-CV-5777, 1997 WL 873548, *2 (D. Del. Nov. 17, 1997) (upholding objection to request for admission because, inter alia, it called for a conclusion based on hypothetical facts); Storck USA, L.P. v. Farley Candy Co., No. 92-CV-552, 1995 WL 153260, at *3 (N.D. Ill. Apr. 6, 1995) (party should "not be required to admit to hypothetical admissions" posed in request for admissions).

**2. Request Nos. 71-86 Improperly Seek Phase 2 Discovery**

Request Nos. 71-86 seek information concerning Phase 2 and are therefore improper. As Bryant is aware, all discovery related to Phase 2 is stayed.[51]

---

[51] On February 4, 2008, the Court ruled that "[a]ll discovery related to Phase 2, other than certain individual depositions that may be related to both Phase 1 and (footnote continued)

The Court clarified what was in Phase 1 and Phase 2 in its July 2, 2007 Minute Order.

> Phase 1(a) should be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues would impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the drawings. This approach has the appeal of limiting Phase 1(a) to discrete issue of the ownership to the original Bratz drawings. A finding that Bryant owns these drawings in Phase 1(a) has the potential to eliminate the need for Phase 1(b).[52]

Further, Bryant has withdrawn MGA's unclean hands defense and any unfair competition claims are part of Phase 2.[53]

Request Nos. 71-86 seek the following admissions:

REQUEST FOR ADMISSION NO. 71:

Admit that MATTEL did not decide to develop its MyScene Barbie line of products until after MATTEL learned of BRATZ.

REQUEST FOR ADMISSION NO. 72:

Admit that MATTEL decided to develop its MyScene Barbie line of products before MATTEL learned of BRATZ.

REQUEST FOR ADMISSION NO. 73:

---

Phase 2, is STAYED until further order of the Court." February 4, 2008 Minute Order, at p. 3, Proctor Dec., Exh. 4.

[52] July 2, 2007 Minute Order at p. 2, Proctor Dec., Exh. 5.

[53] See Order Denying as Moot Mattel's Motion for Leave to Take Additional Discovery Re MGA's Unclean Hands Defense, Order Re Production of Isaac Larian's Electronic Storage Devices, dated February 28, 2008 ("As set forth on the record, and in light of the representations by counsel for MGA and Carter Bryant that they will not assert MGA's unclean hands defense in Phase 1 of the trial, Mattel's motion is DENIED AS MOOT. The Court's ruling today does not affect Carter Bryant's right to assert his own unclean hands defense."), attached to the Proctor Dec., Exh. 9. Bryant does not address whether these requests are related to his unclean hands defense.

Admit that MATTEL did not decide to market its MyScene Barbie line of products until after MATTEL learned of BRATZ.

REQUEST FOR ADMISSION NO. 74:

Admit that MATTEL decided to market its MyScene Barbie line of products before MATTEL learned of BRATZ.

REQUEST FOR ADMISSION NO. 75:

Admit that MATTEL decided to develop its MyScene Barbie line of products, in whole or in part, because of the commercial success of BRATZ.

REQUEST FOR ADMISSION NO. 76:

Admit that MATTEL did not decide to develop its MyScene Barbie line of products, in whole or in part, because of the commercial success of BRATZ.

REQUEST FOR ADMISSION NO. 77:

Admit that MATTEL decided to market its MyScene Barbie line of products, in whole or in part, because of the commercial success of BRATZ.

REQUEST FOR ADMISSION NO. 78:

Admit that MATTEL did not decide to market its MyScene Barbie line of products, in whole or in part, because of the commercial success of BRATZ.

REQUEST FOR ADMISSION NO. 79:

Admit that MATTEL did not decide to develop its Flavas line of products until after MATTEL learned of BRATZ.

REQUEST FOR ADMISSION NO. 80:

Admit that MATTEL decided to develop its Flavas line of products before MATTEL learned of BRATZ.

REQUEST FOR ADMISSION NO. 81:

Admit that MATTEL did not decide to market its Flavas line of products until after MATTEL learned of BRATZ

REQUEST FOR ADMISSION NO. 82:

Admit that MATTEL decided to market its Flavas line of products before MATTEL learned of BRATZ.

REQUEST FOR ADMISSION NO. 83:

> Admit that MATTEL decided to develop its Flavas line of products, in whole or in part, because of the commercial success of BRATZ.
>
> REQUEST FOR ADMISSION NO. 84:
>
> Admit that MATTEL did not decide to develop its Flavas line of products, in whole or in part, because of the commercial success of BRATZ.
>
> REQUEST FOR ADMISSION NO. 85:
>
> Admit that MATTEL decided to market its Flavas line of products, in whole or in part, because of the commercial success of BRATZ.
>
> REQUEST FOR ADMISSION NO. 86:
>
> Admit that MATTEL did not decide to market its Flavas line of products, in whole or in part, because of the commercial success of BRATZ.[54]

Although Bryant does not say, these requests presumably seek information related to his claims of unfair competition and unclean hands defense. If so, they constitute Phase 2 discovery. Discovery is stayed on these issues pending resolution of Phase 1. Bryant's Requests seeking information related to Phase 2 are therefore improper and Mattel should not be compelled to respond.

### 3. The Requests Seek Irrelevant Information

Bryant states that Request Nos. 67-94 seek relevant information because they are "designed to flesh out exactly what Mattel's contentions are." In so arguing, Bryant creates a self-serving, and unsupported, interpretation of Mattel's claims in an effort to show that Request Nos. 67-94 are relevant. Bryant asserts that:

> A key premise of Mattel's claims against Bryant and MGA is that if Bryant had disclosed his ideas for Bratz to Mattel, as Mattel claims he should have, Mattel would have exploited those ideas and reaped the profits that MGA

---

[54] Werdegar Dec., Exh. B.

> instead has reaped from the sale of Bratz dolls and accessories.[55]

Bryant has simply made up this allegation. Bryant bases his "premise" on a section of the factual allegations in Mattel's complaint that is utterly unsupportive.[56] Entitled "MGA Steals a New Line of Fashion Dolls from Mattel," this action details Bryant's and MGA's theft of Mattel's property, including the Bratz materials. It also details Bryant's disloyalty, concealment of material facts, and improper uses of Mattel resources to aid himself and Mattel's competitors. At the outset of its Counterclaims, Mattel alleges ownership rights to Bratz:

> Carter Bryant conceived, created and developed Bratz designs while he was employed by Mattel as a doll designer. He concealed his Bratz work from Mattel and wrongfully sold Bratz to MGA while he was a Mattel employee. *As MGA knows, Mattel owns the Bratz designs that Bryant made. As the rightful owner of those Bratz designs, Mattel has registered copyrights for them and seeks damages arising from MGA's repeated infringement of those copyrights.*[57]

Mattel does not allege, however, here or elsewhere that Mattel's claims are premised upon the idea that, if Bryant had disclosed his ideas for Bratz to Mattel, "Mattel would have exploited those ideas and reaped the profits that MGA instead has reaped from the sale of Bratz dolls and accessories." What Mattel would have done with its intellectual property is irrelevant. Bryant's self-serving mischaracterization of Mattel's claims undercuts the propriety of his Requests. In addition to Request Nos. 67-86 set forth above, Request Nos. 87-94 ask:

REQUEST FOR ADMISSION NO. 87:

---

[55] Motion at 17:9-12.

[56] Motion at 17:12-14.

[57] Mattel, Inc.'s Second Amended Answer and Counterclaims, Public Redacted Version, ¶ 2, page 29:18-23, (emphasis added) attached to the Proctor Dec., Exh. 10.¶

Admit that, in 2000, MATTEL had a business policy or practice of not marketing more than one line of FLANKER PRODUCTS at any one time.

REQUEST FOR ADMISSION NO. 88:

Admit that, in 2000, MATTEL did not have a business policy or practice of not marketing more than one line of FLANKER PRODUCTS at any one time.

REQUEST FOR ADMISSION NO. 89:

Admit that, in 2001, MATTEL had a business policy or practice of not marketing more than one line of FLANKER PRODUCTS at any one time.

REQUEST FOR ADMISSION NO. 90:

Admit that, in 2001, MATTEL did not have any business policy or practice of not marketing more than one line of FLANKER PRODUCTS at any one time.

REQUEST FOR ADMISSION NO. 91:

Admit that, in 1999, MATTEL had a business policy or practice of not marketing more than one line of FLANKER PRODUCTS at any one time.

REQUEST FOR ADMISSION NO. 92:

Admit that, in 1999, MATTEL did not have any business policy or practice of not marketing more than one line of FLANKER PRODUCTS at any one time.

REQUEST FOR ADMISSION NO. 93:

Admit that MATTEL decided not to develop the doll concept known as Toon Teens, in whole or in part, for the reasons set forth in the document produced by MATTEL in this litigation as M0014264-14272, which document has also been marked as Exhibit 286.

REQUEST FOR ADMISSION NO. 94:

Admit that MATTEL decided not to develop the doll concept known as Toon Teens, in whole or in part, because of the large size of the dolls' head, legs, and feet compared to the body.[58]

[58] Werdegar Dec., Exh. B.

Interestingly, even Bryant cannot explain how these Requests relate to his mischaracterization or otherwise seek to elicit discoverable information.

**C. Request Nos. 1-13 -- Addressing Bryant's Employment at Mattel -- Are Vague, Ambiguous and Seek Irrelevant Information**

Mattel alleges that Bryant held a position of trust and confidence with Mattel, and that he breached this fiduciary relationship by, among other things, stealing Mattel's property and secretly aiding a Mattel competitor. Bryant asserts that the Requests are "extremely relevant" because they seek information concerning whether Bryant was a fiduciary "despite being an ordinary non-managerial employee."[59] Request Nos. 1-13 seek information concerning, for example, whether Bryant was an "officer of Mattel" or held "a management position" while employed by Mattel. Presumably, these Requests are intended to demonstrate that Bryant was not a "fiduciary."[60] Bryant misses the point. As a matter of law, an employer has the right to expect the undivided loyalty of its employees. See Dana Perfumes, Inc. v. Mullica, 268 F. 2d 936, 937 (9th Cir. 1959) (law imposes on an employee implied conditions of loyalty to the employer). As Mattel's employee, Bryant breached his duty of loyalty by stealing Mattel's property and aiding Mattel's competitor. Bryant's Requests concerning whether he was a managerial employee are therefore irrelevant.

## IV. BRYANT'S SECOND SET OF REQUESTS FOR ADMISSIONS ARE IMPROPER

Bryant suggests that nearly all the Requests for Admission in Bryant's Second Set would merely require Mattel to state when it contends Bryant created certain drawings. (Motion at 17.) But, as written, the Requests are not nearly so

---

[59] Mot. at 12:26-13:3.

[60] Werdegar Dec., Exh. B.

straightforward. 218 of the Requests (Nos. 116 - 333) are incapable of an answer because their meanings are subject to multiple interpretations. For example, No. 116 asks:

> Admit that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 175 prior to January 3, 1999 but after April 1998.

> Bryant's request No. 117, similarly asks:

> Admit that YOU do not contend that CARTER BRYANT created the DESIGN INCORPORATED in the document bearing the Bates no. BRYANT 175 after January 3, 1999.

The drawing referenced in request No. 117 is a sketch created by Carter Bryant[61]—but the request does not ask when Mattel contends Carter Bryant made that *specific sketch*. Instead, it asks when Bryant created the *design incorporated* in that sketch, whatever that means. Accordingly, Mattel objected that Request No. 117 (and the others) are vague and ambiguous because, by the request's very terms it is impossible to give any definite meaning to the phrase "design incorporated" as used in these requests. Bryant's definition of "design" and "incorporated" are un-illuminating, providing only that, here, the design incorporated could be a multitude of things:

> "DESIGN" means and refers to any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic, or other form, including, but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, or rotocasts.

> "INCORPORATED" means contained, represented, embodied, expressed, fixed or reflected in any manner, whether in whole or in part.

---

[61] See Bryant 175, Proctor Dec., Exh. 13.

Indeed, the answer may well change depending on the level of abstraction one uses in considering the incorporated design: if the design is the nascent concept eventually "reflected" or "embodied" in the drawing, it was created before the drawing was made; if the design is the image "contained," "expressed, [or] fixed" in the drawing itself, then it was created when it was sketched; and, if the design is the product "represented," then it was created after the drawing was made. Clearly these words have ascertainable meanings, which are not subject to debate. But, as used here in Bryant's requests, it becomes impossible to provide any meaningful answer for each of the requests which refer to the "DESIGN INCORPORATED" in another work.[62]

The three requests from Bryant's Second Set that do not follow this pattern are also deficient. Request Nos. 113 and 114 seek admissions relating to when Bryant "conceived" of Bratz:

> Admit that CARTER BRYANT conceived of the idea for BRATZ prior to January 3, 1999 but after April 1998.
>
> Admit that YOU do not contend that CARTER BRYANT conceived of the idea for BRATZ after January 3, 1999.

For the same reasons that it is impossible to say when Bryant created the "design incorporated" in a specific drawings without defining what that means, it is impossible to say when Bratz was conceived.

The remaining request from Bryant's second set to which Mattel objected, No. 115, improperly seeks an admission related to a hypothetical situation that never occurred. This request asks Mattel to assume a set of hypothetical facts and then draw speculative conclusions:

> Admit that if CARTER BRYANT conceived of his idea for BRATZ before January 3, 1999 and if CARTER BRYANT's idea was not reduced to practice until after

[62] As Bryant's motion makes clear, there is no difference between the more than two hundred requests written in this form, except as to the specific document referenced in each. (Motion at 17.)

October 21, 2000, then CARTER BRYANT did not breach section 2[a] of the INVENTION AGREEMENT

As discussed above in regard to Bryant's first Set of Requests for Admission, such requests are impermissible. They violate the Rule 36 limitation that requests for admissions must relate to "fact, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1); see also Men of Destiny Ministries, Inc. v. Osceola County, Florida, No. 6:06-CV-624, 2006 WL 2048288, at *3 (M.D. Fla. Jul. 20, 2006) (holding that request for admission concerning a course of action based on set of hypothetical facts was impermissible). Mattel's objections are therefore meritorious.

## V. BRYANT'S FOURTH SET OF REQUESTS FOR PRODUCTION ARE IMPROPER

Bryant seeks to compel further responses only to Request for Production Nos. 10 and 21-32. As explained below, Mattel's objections should be upheld.

### A. Mattel Has Not Waived Its Objections

Bryant's argument that this Court should ignore as untimely Mattel's valid objections to Bryant's inappropriately framed requests for production (Motion at 18) ignores that Bryant's requests were improperly served. It was Bryant's failure to serve Mattel properly that caused Mattel to overlook the response date, leading Mattel to serve its objections on February 6, 2008 (rather than concurrently with its objections to Bryant's First and Second Sets of Requests for Admissions on January 28, 2008).[63] Bryant should not be permitted to benefit from flouting the Rules—arguing, on the one hand, that his transgressions should be excused as

[63] See February 7, 2008 letter from B. Dylan Proctor to M. Werdegar, at 2, Werdegar Dec., Exh. U (stating that "Bryant's defective service . . . led to internal docketing confusion regarding the Requests for Production.").

"harmless procedural error," but that Mattel's objections should be strictly construed as untimely (even though he was the cause of the delay about which he complains).

In any event, a delay of nine days hardly warrants a finding of waiver. Courts frequently "hold that untimely objections are not waived where the delay is not substantial or good cause is shown for not making timely objections." Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc., No. 2:05-CV-01059, 2007 WL 1726558, at *4 (D. Nev. Jun. 11, 2007) (noting that a nine-day delay is more readily excusable than a two-month delay); see also Burlington Insurance Co. v. Okie Dokie, Inc., 368 F. Supp. 2d 83, 91 (D.D.C. 2005) (objections were not waived where responses were served nine days late); Blumenthal v. Drudge, 186 F.R.D. 236, 240 (D.D.C. 1999) (even though party had not demonstrated good cause for failing to timely object, court allowed objections where the responses were only five or nine days late).

Here, waiver is not warranted.[64] The purported delay was minor. Moreover, the cause for that purported delay was Bryant's own failure to follow the Federal Rules. And, of course, Bryant has not been prejudiced by any purported delay. Indeed, the only prejudice that Bryant alleges is that which would result from a failure to "resolve disputes on the merits." (Motion at 2) (citation omitted). Ironically, in arguing that Mattel has automatically waived its otherwise proper objections, that is exactly what Bryant seeks by his motion. Mattel's objections should be heard.

---

[64] Waiver is most often found when a party raises objections for the first time long after the initial responses have been submitted. See, e.g., Ramirez v. County of Los Angeles, 231 F.R.D. 407, 409 (C.D. Cal. 2005) (holding that court would not consider later asserted objections that were not raised in the responding party's original discovery responses).

**B. Mattel Properly Objected to Request for Production Nos. 10 and 21-32**

Bryant limits his motion to a handful of Mattel's objections. (Motion at 19.) Mattel's objections to each of Bryant's requests are proper and should be upheld. To start, Bryant's Request No. 10 broadly seeks documents "sufficient to show the date on which MATTEL hired outside counsel to represent MATTEL with respect to any litigation or potential litigation concerning BRYANT or BRATZ." Bryant argues that the request is "directly relevant" to Bryant's statute of limitations and laches defenses. (Motion at 19.) But the request is plainly overbroad because it is not limited to claims and defenses at issue in *this litigation* (or to any specific time limitation). Here, full compliance would require the production of documents related to *any* potential litigation without regard to relevance in this litigation. As the Discovery Master has frequently held, requests that require the production of documents without regard to whether they have anything to do with the "claims and defenses *in this case*" are "grossly overbroad."[65]

Further, as Mattel noted in its objections, this very subject is now pending before the Discovery Master. Bryant's complaint that Mattel "does not identify" the pending motion is absurd. (Motion at 19.) MGA's Motion to Overrule Mattel's Relevance Objection and Compel Discovery Relevant to Statute of Limitations and Laches Defenses (RFP, RFA & Interrogatories) was filed January 17, 2008, and is now fully briefed. In that motion, as here, MGA and Bryant broadly seek information that they claim is relevant to their statute of limitations and laches defenses. And, as here, Mattel has objected that relevance

---

[65] Order Granting in Part and Denying in Part MGA's Motion to Compel Documents Responsive to First Set of Requests for Production of Documents Dated November 22, 2006 ("May 22, 2007 Order"), at 18, Proctor Dec., Exh. 7 (emphasis added).

must be determined with an eye towards *this* litigation, as opposed to some other potential litigation.[66]

Bryant's motion states that Request No. 21 simply "seeks any fee agreements" between Mattel and witnesses in this case, and suggests that this is exactly the type of information that Mattel has sought from MGA and Bryant. (Motion at 20.) But the actual request is much broader and less specific than Bryant claims, seeking "ALL DOCUMENTS constituting or REFERRING OR RELATING TO any fee agreement between MATTEL and any witness in this case."

Requests for the production of documents must identify the documents at issue with "reasonable particularity." Fed. R. Civ. Proc. 34(b). The request is overbroad and seeks irrelevant documents because it is not limited to any specific fee agreements, but rather seeks "all documents" related to or referencing fee agreements with any number of unidentified witnesses. Such an "omnibus" request may "survive an objection that it is overly broad" only if it "modifies a sufficiently specific type of information or documents." Scottsdale Insurance v. American Re-Insurance Co., No. 8:06-CV-16, 2007 WL 405870, at *4 (D. Neb. Feb. 2, 2007). Unlike Mattel's requests—which were focused on specific individuals—Bryant's request does not have any particularity regarding individuals.

Finally, Bryant's Request Nos. 22-32 seek "all documents" that support Mattel's contentions regarding a variety of hypothetical situations that never occurred. For example, Request No. 26 seeks:

---

[66] See Mattel's Opposition to MGA's Motion to Overrule Mattel's Relevance Objection and Compel Discovery Relevant to Statute of Limitations and Laches Defenses (RFP, RFA & Interrogatories), dated January 31, 2008, at 8, Proctor Dec., Exh. 3 (MGA's requests "seek[] documents regarding Mattel's decisions not to file *any* lawsuit against Bryant, including any lawsuit that has nothing to do with Bratz, (footnote continued)

> ALL DOCUMENTS that support your contention, if you so contend in response to Request for Admission Number 69 to Carter Bryant's First Set of Requests for Admission to Mattel, Inc., that if CARTER BRYANT had disclosed his idea for a line of fashion dolls which he named Bratz to MATTEL prior to October 20, 2000, MATTEL would have taken steps to commercially exploit the idea.

Bryant misses the point in arguing that he "is entitled to know what documents Mattel is going to be relying on" in support of its contentions. (Motion at 21.) Whether Bryant's initial Requests for Admission (e.g., RFA No. 69 referenced above in RFP No. 26) are valid remains in dispute and is the subject of Bryant's own motion and Mattel's response.[67] Bryant's motion to compel these documents is, in essence, an impermissible attempt to seek an advisory opinion from the Court that *if* Mattel's objections to Bryant's RFAs are overruled, and *if* Mattel answers those contentions in the affirmative, *then* Bryant would be entitled to those documents.

Even as to everyday discovery disputes, a Court may resolve "only concrete legal issues, not abstractions." Sellers v. Regents of University of California, 432 F.2d. 493, 500 (9th Cir. 1970); see, e.g., Beverly v. Depuy Orthopaedics, Inc., No. 3:07-CV-137, 2008 WL 45357, at *4 (N.D. Ind. Jan. 2, 2008) (motion to compel not ripe where party had not had opportunity to object nor had the court ruled); Estate of Broccolino v. McKesson Corp., No. 05-CV-0438, 2006 WL 5217766, at *1 (D. Md. Feb. 23, 2006) (motion to compel discovery responses "not ripe for the court's consideration"); Karl v. Asarco, Inc., No. 93 CIV. 3819, 1997 WL 642560, at *1 (S.D.N.Y. Oct. 17, 1997) ("The court will address discovery disputes as they arise, and will not engage in speculative or conjectural analysis of requests which may never be made.").

---

MGA, or any of the claims or defenses at issue in this litigation.") (emphasis in original).

[67] See supra Part III discussing Mattel's objections RFA's.

Individually, each of these requests fails based on the specific grounds raised in Mattel's objections. Bryant should not be permitted to recast the same requests in a different form in the hope that, by their sheer multitude, some will be permitted. See, e.g., Starbucks Corp. v. Lundberg, No. 02-CV-948, 2004 WL 1784753, at *6 (D. Or. Aug. 10, 2004) ("Plaintiffs are essentially attempting to resubmit their requests for admission and interrogatories in the form of their first three requests for production."). In one form or another, over the course of the last years, Mattel has fully responded to discovery requests on these issue.

## VI. BRYANT'S MOTION IS UNTIMELY AND CONTRARY TO THE LOCAL RULES AND SHOULD THEREFORE BE STRICKEN

As Bryant is aware, the discovery cut-off for Phase 1 was January 28, 2008. As Bryant admits, after not propounding any written discovery for "more than three years,"[68] Bryant served overbroad discovery requests at the eleventh hour. Almost a month after the close of Phase One discovery, Bryant brings this untimely motion, seeking additional discovery. Bryant's motion to compel seeking Phase One discovery -- filed after the close of Phase One discovery -- is untimely and should be stricken.

Further, Bryant has also failed to comply with the Local Rules, which require that motions compelling further responses to general discovery requests be supported by a document setting forth either the specific requests or specific question, and any specific objections, so that the Discovery Master will have both precision and context for such rulings. Central District Local Rule 37-2.1; see, e.g., Ballard v. U.S., No. 06-CV-715, 2007 WL 4794101, at *2 (C.D. Cal. Aug. 8, 2007). Bryant has failed to do so, and Bryant's motion should be denied for this reason alone.

**Conclusion**

For the foregoing reasons, the Court should deny Carter Bryant's Motion to Compel Responses to Discovery Requests.

DATED: March 4, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Dylan Proctor (NEF)
B. Dylan Proctor
Attorneys for Mattel, Inc.

---

[68] Motion at 3:1-5.