QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>**[PUBLIC REDACTED]**<br>DECLARATION OF B. DYLAN PROCTOR IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO BRYANT'S MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS<br><br>Date: March 10, 2008<br>Time: 8:30 a.m.<br>Place: Telephonic<br><br>**Phase 1**<br>Discovery Cut-Off: January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

07209/2419202.1

1

## DECLARATION OF B. DYLAN PROCTOR

2

3          I, B. Dylan Proctor, declare as follows:

4     1.     I am a member of the bar of the State of California and a partner of

5  Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc.

6  ("Mattel")  I make this declaration in support of Mattel, Inc.'s Opposition to Bryant's

7  Motion To Compel Responses To Discovery Requests.  I make this declaration of

8  personal, firsthand knowledge, and if called and sworn as a witness, I could and

9  would testify competently thereto.

10    2.     Attached as Exhibit 1 is a true and correct copy of excerpts from the

11 Hearing before Discovery Master Infante on February 11, 2008.

12    3.     Attached as Exhibit 2 is a true and correct copy of the Order Denying

13 MGA's and Carter Bryant's Motion to Overrule Mattel's Relevance Objection and

14 Compel Discovery Relevant to Mattel's Employee Agreements, dated February 20,

15 2008.

16    4.     Attached as Exhibit 3 is a true and correct copy of Mattel's Opposition

17 to MGA's and Carter Bryant's Motion to Overrule Mattel's Relevance Objection,

18 dated December 28, 2007.

19    5.     Attached as Exhibit 4 is a true and correct copy of the Court's February

20 4, 2008 Minute Order.

21    6.     Attached as Exhibit 5 is a true and correct copy of the Court's July 2,

22 2007 Minute Order.

23    7.     Attached as Exhibit 6 is a true and correct copy of the Notice of

24 Deposition of Plaintiff and Counter-Defendant Mattel, Inc., dated December 21,

25 2004.

26    8.     Attached as Exhibit 7 is a true and correct copy of the Discovery

27 Master's May 22, 2007 Order Granting in Part and Denying in Part MGA's Motion

28

DECLARATION OF B. DYLAN PROCTOR

1 | to Compel Documents Responsive to First Set of Requests for Production of
2 | Documents Dated November 22, 2006.

3 |      9.     Attached as Exhibit 8 is a true and correct copy of Mattel's Opposition
4 | to MGA's Motion to Overrule Mattel's Relevance Objection and Compel Discovery
5 | Relevant to Statute of Limitations and Laches Defenses (RFP, RFA &
6 | Interrogatories), dated January 31, 2008.

7 |      10.     Attached as Exhibit 9 is a true and correct copy of the Court's Order
8 | Denying as Moot Mattel's Motion for Leave to Take Additional Discovery Re
9 | MGA's Unclean Hands Defense, Order Re Production of Isaac Larian's Electronic
10 | Storage Devices, dated February 28, 2008.

11 |      11.     Attached as Exhibit 10 is a true and correct copy of Mattel, Inc.'s
12 | Second Amended Answer and Counterclaims, Public Redacted Version.

13 |      12.     Attached as Exhibit 11 is a true and correct copy of Carter Bryant's
14 | Opposition to Mattel, Inc.'s Motion to Compel Responses to Interrogatories, Nos.
15 | 27-33, 36-40, 42, 45, and 47, dated December 20, 2007.

16 |      13.     Bryant purported to serve his First and Second Sets of Requests for
17 | Admission, Second Set of Interrogatories, and Fourth Set of Requests for Production
18 | on December 27, 2007, by Federal Express and e-mail.  Although Bryant had
19 | previously sent discovery responses to Mattel by Federal Express and e-mail, Bryant
20 | had not previously served discovery requests on Mattel in this manner to my
21 | knowledge.  Mattel also never consented, either orally or in writing, to accept
22 | service by Federal Express and e-mail to my knowledge.

23 |      14.     I met and conferred with Matthew Werdegar and counsel for MGA
24 | regarding Bryant's First and Second Sets of Requests for Admission and Second Set
25 | of Interrogatories on January 8 and 10, 2008.  This meet and confer also addressed
26 | MGA's Third Set of Requests for Admission, responses to which Mattel served on
27 | December 31, 2007.  During those meetings, I did not agree that Mattel would
28 |

-2-

DECLARATION OF B. DYLAN PROCTOR

1  respond substantively to the discovery requests at issue.  To the contrary, I made
2  clear that Mattel would not agree to provide substantive responses to those requests.

3       15.    Mattel responded to Bryant's First and Second Sets of Requests for
4  Admission and Second Set of Interrogatories on January 28, 2008.  Mattel's
5  responses included objections to the improper service of the requests.

6       16.    On February 4, 2008, I was informed by Mr. Werdegar that Mattel had
7  not responded to Bryant's Fourth Set of Requests for Production.  Upon
8  investigation, I learned that Bryant's improper service of the discovery requests led
9  to an internal docketing error.  Mattel then promptly served responses to the Fourth
10  Set of Requests for Production on February 6, 2008, to complete the record,
11  although no responses were required given Bryant's failure to serve his requests.

12       17.    On February 6, 2008, I met and conferred again with Mr. Werdegar.  I
13  agreed during that conference that Mattel would respond substantively to Bryant's
14  Interrogatory No. 20 if Bryant agreed not to argue that Mattel's response constituted
15  a waiver of Mattel's right to object to the improper service of the other discovery
16  requests.  Mr. Werdegar agreed.  Attached as Exhibit 12 is a true and correct copy of
17  a letter Mr. Werdegar sent to me on February 6, 2008, confirming the same.

18       18.    Attached as Exhibit 13 is a true and correct copy of a drawing produced
19  by Carter Bryant and Bates-stamped BRYANT 00175.

20       19.    Attached as Exhibit 14 is a true and correct copy of a letter my partner
21  Jon Corey sent to Judge Infante on January 10, 2007, specifically noting that Mattel
22  has not agreed to service by e-mail.

23       20.    Attached as Exhibit 15 is a true and correct copy of a letter sent by Mr.
24  Corey on January 12, 2007 to Diba Rastegar, Esq., of Littler Mendelson.  Ms.
25  Rastegar was Bryant's counsel at that time.  The letter complained about Bryant's
26  purported service of his Opposition to Mattel's Motion to Compel the Production of
27  Documents by e-mail.

28

-3-

DECLARATION OF B. DYLAN PROCTOR

1    21.    Attached as Exhibit 16 is a true and correct copy of the relevant pages

2  from the transcript of the hearing in front of Judge Larson on February 4, 2008.

3    22.    On March 4, 2008, Mattel served its supplemental response to Bryant's

4  Second Set of Interrogatories. Attached as Exhibit 17 is a true and correct copy of

5  Mattel's supplemental response.

6       I declare under penalty of perjury under the laws of the United States of

7  America that the foregoing is true and correct.

8       Executed on March 4, 2008, at Los Angeles, California.

9

10                                                    _____

                                                      B. Dylan Proctor

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1          UNITED STATES DISTRICT COURT
2          CENTRAL DISTRICT OF CALIFORNIA
3              EASTERN DIVISION
4
5   CARTER BRYANT, AN INDIVIDUAL,  )
                                   )
6                PLAINTIFF,        )
                                   )
7      VS.                         )  CASE NO.
                                   )
8   MATTEL, INC., A DELAWARE       )  CV 04-9049 SGL (RNBX)
    CORPORATION,                   )  [CONSOLIDATED WITH
9                                  )  CASE NO. 04-9059 AND
                 DEFENDANT.        )  CASE NO. 05-2727]
10                                 )
    _____ )
11                                 )
    AND CONSOLIDATED ACTION(S).    )
12  _____ )
13
14
15       TELEPHONIC TRANSCRIPT OF
16       PROCEEDINGS, TAKEN BEFORE HON.
17       EDWARD A. INFANTE, AT 865 SOUTH
18       FIGUEROA STREET, THIRD FLOOR, LOS
19       ANGELES, CALIFORNIA, COMMENCING
20       AT 8:30 A.M., MONDAY, FEBRUARY 11,
21       2008, BEFORE ANGELA DUPRE, CSR 7804.
22
23
24       EXHIBIT _____ 1 _____
25       PAGE _____ 5 _____

1   AGREEMENTS THEY HAVE TO SIGN; COMMUNICATIONS WITH

2   EMPLOYEES DURING THE COURSE OF THEIR EMPLOYMENT, AS

3   TO WHETHER THEY HAD -- IF THEIR ISSUE CAME UP

4   REGARDING MOONLIGHTING OR OTHER SPECIAL SITUATIONS

5   THAT THEY MADE REQUESTS ABOUT; COMMUNICATIONS WITH

6   THEIR SUPERVISORS.

7           THE THOUSANDS AND THOUSANDS OF HOURS THAT

8   IT WOULD TAKE TO TRACK THIS DOWN, ALL FOR

9   INFORMATION THAT HAS NO RELEVANCE, WHERE WE'VE GOT

10  NO AMBIGUITY IN THE CONTRACT, AND WE HAVE NO GAP

11  THAT NEEDS TO BE FILLED.  THAT WE SUBMIT, YOUR

12  HONOR.

13     JUDGE INFANTE:  ALL RIGHT.  LET ME DEAL WITH

14  THE MOTION, WITH RESPECT TO TOPICS 25 AND 52, THE

15  30(B)(6) DEPOSITION NOTICE WHICH ORIGINALLY WAS

16  SERVED ON DECEMBER '04.

17          THE MOTION TO OVERRULE MATTEL'S RELEVANCY

18  OBJECTIONS AND COMPEL DISCOVERY ON THOSE TOPICS IS

19  DENIED.  I FIND THAT BOTH TOPICS BETWEEN THE 25 AND

20  52 ARE GROSSLY OVERBROAD, SEEK IRRELEVANT

21  INFORMATION, AND CREATE UNDUE BURDEN.

22          TO THE EXTENT THAT PORTIONS OF WHAT IS

23  SOUGHT IN THOSE TOPICS IS RELEVANT, THAT RELEVANCY

24  IS SUBSTANTIALLY OUTWEIGHED BY THE ENORMOUS BURDEN

25  IT WOULD TAKE TO PREPARE WITNESSES TO DEAL WITH THE

EXHIBIT _____/_____

PAGE_____/_o_____

1    SCOPE OF THESE TOPICS.  IN MY VIEW, ALSO, IT'S NOT

2    LIKELY TO LEAD TO ADMISSIBLE EVIDENCE.  AND FOR ALL

3    THOSE REASONS, I WOULD DENY THAT MOTION.

4              NOW, I'D LOOK LIKE TO GO BACK TO THE

5    UNDERLYING MOTION FOR RECONSIDERATION.  WITH

6    RESPECT TO THE DOCUMENT REQUESTS THAT WERE AT ISSUE

7    BACK IN SEPTEMBER, WHICH I ORDERED PRODUCED, WITH

8    RESPECT TO THOSE, MY JUDGMENT IS TO ONLY PARTIALLY

9    GRANT THE MOTION FOR RECONSIDERATION, BY LIMITING

10   MY ORDER TO THE FEW HUNDRED PEOPLE THAT WERE

11   EMPLOYED IN THE DESIGN CENTER -- THE DESIGN CENTER

12   WHERE BRYANT WORKED.

13             ESSENTIALLY, THAT'S THE ONLY CHANGE TO MY

14   ORDER.

15             ARE THERE ANY QUESTIONS WITH RESPECT TO

16   THAT?

17        MR. ALGER:  YOUR HONOR, I DO HAVE A QUESTION AS

18   TO THE LAST PART OF YOUR ORDER.  AND THAT IS:  THE

19   PEOPLE IN THE DESIGN CENTER, IS THAT LIMITED AS TO

20   TIME?  BECAUSE OVER THE COURSE OF YEARS IT WOULD BE

21   QUITE A LARGE NUMBER OF PEOPLE.

22        JUDGE INFANTE:  WELL, I DON'T HAVE THE REQUEST

23   DIRECTLY IN FRONT OF ME, BUT I BELIEVE THE

24   REQUEST -- I DON'T RECALL WHETHER THE REQUEST WAS

25   LIMITED IN TIME.

EXHIBIT _____ / _____

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>      Plaintiff,<br><br>    vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>      Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-09059 and CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order of December 6, 2006]**<br><br>~~[PROPOSED]~~ ORDER DENYING MGA'S AND CARTER BRYANT'S MOTION TO OVERRULE MATTEL'S RELEVANCE OBJECTION AND COMPEL DISCOVERY RELEVANT TO MATTEL'S EMPLOYEE AGREEMENTS |

EXHIBIT _____2_____

PAGE _____8_____

07209/2393289.1

[PROPOSED] ORDER

1    Having received the motion of MGA Entertainment, Inc. And Carter

2  Bryant To Overrule Mattel's Relevance Objection And Compel Discovery Relevant

3  To Mattel's Employee Agreements (the "Motion"), and having considered the

4  Motion and all papers in support and opposition thereto, as well as the argument of

5  counsel on February 11, 2008, for the reasons stated on the record:

6         The Motion is DENIED.

7         Pursuant to Paragraph 6 of the Stipulation and Order for Appointment

8  of a Discovery Master, Mattel shall file this Order with the Clerk of the Court

9  forthwith.

10        IT IS SO ORDERED.

11

12

13  DATED:  February 20, 2008        By

14                                        Hon. Edward A. Infante (Ret.)
                                        Special Discovery Master
15

16

17

18

19

20

21

22

23

24

25

26                                              EXHIBIT _____2_____

27                                              PAGE _____9_____

28

-1-

[PROPOSED] ORDER

Case 2:04-cv-09049-SGL-RNB      Document 2310      Filed 02/20/2008      Page 3 of 3

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on February 20, 2008, I served the attached ORDER DENYING MGA'S AND CARTER BRYANT'S MOTION TO OVERRULE MATTEL'S RELEVANCE OBJECTION AND COMPEL DISCOVERY RELEVANT TO MATTEL'S EMPLOYEE AGREEMENTS in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on February 20, 2008, at San Francisco, California.

_Sandra Chan_

Sandra Chan

EXHIBIT ____2____

PAGE ____10____

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Counter-
Defendant Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated With Case No. 04-9059 and Case No. 05-2727 |
| vs. | **DISCOVERY MATTER** |
| MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]** |
| Defendant. | MATTEL, INC.'S OPPOSITION TO MGA'S AND CARTER BRYANT'S MOTION TO OVERRULE MATTEL'S RELEVANCE OBJECTION |
| AND CONSOLIDATED ACTIONS | |

Date:   January 10, 2008
Time:   1:30 p.m.
Place:  JAMS
        Two Embarcadero Center
        Suite 1500
        San Francisco, California

**Phase 1**
Discovery Cut-off:    January 28, 2008
Pre-trial Conference: May 5, 2008
Trial Date:           May 27, 2008

EXHIBIT _____3_____

PAGE _____11_____

07209/2335258.8

12-28

MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

# **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................... 3

ARGUMENT ......................................................................................................... 7

I.    THE DISCOVERY MASTER SHOULD DENY THE MOTION WITH RESPECT TO TOPIC NO. 52 ........................................................... 7

    A.    Topic No. 52 Is Not Reasonably Particularized, as *Rule* 30(b)(6) Requires, But Overbroad, Vague and Oppressive .................................... 7

    B.    Topic No. 52 Does Not Seek Relevant Information ................................. 9

        1.    Topic No. 52 Seeks Information Relating to Documents That Have Nothing to Do With the Claims or Defenses In This Case ............................................................................................. 9

        2.    As Apparently Interpreted by MGA, Topic No. 52 Is Completely Duplicative of Topics Nos. 1, 49 and 50, On Which Mattel Has Produced A Witness ............................................. 9

II.   THE DISCOVERY MASTER SHOULD DENY THE MOTION WITH RESPECT TO TOPIC NO. 25 ........................................................... 10

    A.    Topic No. 25 Is Not Reasonably Particularized .................................... 10

    B.    An Inquiry Into Mattel's Decision to Enforce the Agreements Necessarily Invades The Attorney-Client Privilege and the Work Product Protection ................................................................................. 12

    C.    Mattel's Enforcement, Efforts to Enforce or Contemplated Efforts to Enforce Agreements with Third Parties Are Not Relevant ................................................................................................ 12

        1.    Bryant's Sole Grounds for Relevancy Have Been Dismissed or Withdrawn .......................................................... 12

        2.    No California Court Has Adopted Bryant's New Theory That Agreements with Third Parties Are Relevant to Interpret Agreements Between the Parties ................................... 13

        3.    Mattel's Alleged Failure to Prosecute Every Breach of the Pertinent Contracts Is Not Evidence of Its Intent as to Bryant .......................................................................................... 16

EXHIBIT _____ 3 _____

PAGE _____ 12 _____

4.    Additional Discovery Is Unnecessary Even Under
Bryant's Theory ........................................................................... 19

D.    Compliance with Topic No. 25 Would Be Oppressive and
Unduly Burdensome .................................................................... 19

III.   BRYANT'S DEMAND THAT THE DISCOVERY MASTER ORDER
MATTEL TO RESPOND TO UNSPECIFIED DISCOVERY
REQUESTS IS IMPROPER ..................................................................... 22

CONCLUSION ............................................................................................... 23

EXHIBIT _____ 3 _____

PAGE _____ 13 _____

-ii-

17209/2335258.8

# TABLE OF AUTHORITIES

Page

## Cases

*Automobile Salesmen's Union v. Eastbay Motor Car Dealers, Inc.,*
   10 Cal. App. 3d 419 (1970)...................................................................... 14

*B.F. Goodrich Co. v. Vinyltech Corp.,*
   711 F. Supp. 1513 (D. Ariz. 1989)........................................................... 13

*Capitol Records, Inc. v. Naxos of America, Inc.,*
   372 F.3d 471 (2d Cir. 2004)..................................................................... 16

*Casey v. Lifespan Corp.,*
   672 F. Supp. 2d 471 (D.R.I. 1999)........................................................... 14

*Crestview Cemetery Ass'n v. Dieden,*
   54 Cal. 2d 744 (1960).............................................................................. 14

*Deal v. Consumer Programs, Inc.,*
   458 F. Supp. 2d 970 (E.D. Mo. 2005)....................................................... 17

*Dolgow v. Anderson,*
   53 F.R.D. 661 (E.D.N.Y. 1971) ............................................................... 19

*Emerson v. Electric Co. v. Rogers,*
   418 F.3d 841 (8th Cir. 2005)............................................................... 16, 17

*Estate of Gonzalez v. Hickman,*
   2007 WL. 3238725 (C.D. Cal. 2007)........................................................ 21

*Heston v. Farmer's Ins. Group,*
   160 Cal. App. 3d 402 (1984).................................................................... 15

*Hollenbeck Lodge (486) H.O.O.F. v. Wilshire Blvd. Temple,*
   175 Cal. App. 2d 469 (1959).................................................................... 17

*In re Independent Service Organizations Antitrust Litig.,*
   168 F.R.D. 651 (D. Kan. 1996)................................................................... 7

*Keith H. v Long Beach Unified Sch. Dist.,*
   228 F.R.D. 652 (C.D. Cal. 2005) ............................................................. 19

*Kitty-Anne Music Co. v. Swan,*
   112 Cal. App. 4th 30 (2003)....................................................................... 9

*Klapp v. United Ins. Group Agency, Inc.,*
   468 Mich. 459 (2003)............................................................................... 15

*Laker Airways Ltd. v. Pan American World Airways,*
   559 F. Supp. 1124 (D.D.C. 1983) ............................................................ 19

EXHIBIT _____3____

PAGE _____14____

MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

07209/2335258.8

*Microstar v. Formgen Inc.*,
   154 F.3d 1107 (9th Cir. 1998)............................................................................ 16

*Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.*,
   319 F. Supp. 2d 1040 (C.D. Cal. 2003)............................................................ 13

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Elec. Transit Inc.*,
   2006 WL. 1525809 (N.D. Cal. 2006).................................................................. 19

*Nissel v. Certain Underwriters at Lloyd's of London*,
   62 Cal. App. 4th 1103 (1998)............................................................................ 13

*Paramount Pictures Corp. v. Carol Publishing Group*,
   11 F. Supp. 2d 329 (S.D.N.Y. 1998)................................................................ 16

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*,
   2000 WL. 1028634 (S.D.N.Y. 2000), *vacated on other grounds* 2004 WL
   906301 (S.D.N.Y. 2004) .................................................................................... 16

*Pochopien v. Marshall, O'Toole, Gerstein, Murray & Borun*,
   315 Ill. App. 3d 329 (Ill. App. 2000) ............................................................... 17

*Reed v. Bennett*,
   193 F.R.D. 689 (D. Kan. 2000).......................................................................... 11

*S. Cal. Edison Co. v. Superior Court*,
   37 Cal. App. 4th 839 (1995)............................................................................... 14

*SmithKline Beecham Corp. v. Apotex Corp.*,
   2000 WL. 116082 (N.D. Ill 2000)...................................................................... 11

*Steinbach v. Credigy Receivables, Inc.*,
   2006 WL. 1007272 (E.D. Ky. 2006).................................................................. 11

*Tri-State Hosp. Supply Corp. v. U.S.*,
   226 F.R.D. 118 (D.D.C. 2005) ........................................................................... 11

*U.S. Cellular Inv. Co. of Los Angeles, Inc. v. GTE Mobilenet, Inc.*,
   281 F.3d 929 (9th Cir. 2002)............................................................. 13, 14, 15

*U.S. ex. rel. O'Connell v. Chapman University*,
   245 F.R.D. 646 (C.D. Cal. 2007) ...................................................................... 21

*Yuen v. Superior Court*,
   121 Cal. App. 4th 1133 (2004).......................................................................... 9

**Statutes**

*Cal. Civ. Code* § 1636 ......................................................................................... 13

*Cal. Civ. Code* § 1638 ......................................................................................... 13

*Cal. Civ. Code* § 1641 ......................................................................................... 13

EXHIBIT _____3_____

PAGE _____15_____

| | | |
|---|---|---|
| 1 | *Cal. Civ. Proc. Code § 1856(c)* | 14 |
| 2 | *Cal. Lab. Code § 96(K)* | 4 |
| 3 | *Cal. Lab. Code § 98.6* | 4 |
| 4 | *Fed. R. Civ. P. 26* | 8 |
| 5 | *Fed. R. Civ. P. 26(b)(2)(C)(iii)* | 19 |
| 6 | *Fed. R. Civ. P. 26(b)(2)(iii)* | 19 |
| 7 | *Fed. R. Civ. P. 30* | 1, 11 |
| 8 | *Fed R. Civ. P. 30(b)(6)* | 7, 9, 10, 11, 21, 22 |
| 9 | *Fed. R. Evid. 403* | 20 |
| 10 | *Local Rule 37* | 2 |
| 11 | *Local Rule 37-2.1* | 21 |

EXHIBIT _3_

PAGE _16_

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### Preliminary Statement

3        Judge Larson long ago rejected the only theories of relevance

4  Defendants ever proffered for the discovery at issue in this motion, and Bryant has

5  now formally abandoned those theories. To circumvent that ruling, Defendants now

6  assert a theory of relevance for Mattel's relationships with thousands of former and

7  current non-party employees that is based on fundamentally flawed legal assertions.

8  No California court has ever adopted Defendants' assertions about the relevance of

9  third-party contracts. Defendants' "groundbreaking" theories should be rejected.

10        When he first propounded the 30(b)(6) Topics at issue in this motion,

11  Bryant's position was that they were relevant to his claims that his agreements with

12  Mattel are unconscionable and pertained to claims he asserted on behalf of third

13  party employees. Judge Larson dismissed all these claims. In light of that

14  dismissal, Bryant recently abandoned his affirmative defenses of unconscionability

15  and illegality. Accordingly, the foundations of this discovery no longer exist.

16        Nevertheless, Defendants now improperly ask the Discovery Master to

17  radically expand the plain vanilla rule that the parties' conduct and interpretation *of*

18  *their own contract* before a controversy arose may be probative of their intent into a

19  rule that a party's contracts and interactions *with third parties* -- both those which

20  pre-date and post-date the actual contract at bar -- somehow inform the parties'

21  intent. This simply has no support in California law. The information at issue here·

22  is not reasonably likely to inform the interpretation of Bryant's contract with Mattel

23  and is not reasonably likely to lead to admissible evidence. Courts also consistently

24  reject Defendants' alternative theory that a failure to prosecute third party infringers

25  indicates an intent to waive rights against a particular defendant. The information

26  Defendants seek is irrelevant.

27        To the extent there could be any marginal relevance to some subset of

28  the information at issue now, the discovery Defendants demand is clearly     *3*

J7209/2335258.8

MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

1   outweighed by the burdens it would impose.  Defendants misrepresent that Mattel's

2   only objection to the noticed 30(b)(6) Topics is relevance.  To the contrary, as

3   Mattel advised Defendants, the Topics are not reasonably particularized, are

4   hopelessly overbroad, seek privileged information, are vague and ambiguous, and

5   compliance would be unduly burdensome and oppressive.  Defendants do not

6   address or challenge any of these other objections in their Motion.

7           The oppressiveness of the Topics is apparent on their face.  Topic No.

8   52 seeks a designee, literally, on all "documents" and "forms" current and former

9   employees were asked to sign since 1995.  Topic No. 25 seeks a designee to testify

10  regarding any action or consideration by Mattel to enforce any provisions of any

11  version of the "Employee Confidential Information and Inventions Agreement" and

12  "Conflict of Interest Questionnaire" against any employee since 1998, whether or

13  not those provisions, or even the same versions of the agreements, are at issue in this

14  case.  Such requests are not "reasonably particularized" as required by Rule 30.  The

15  Discovery Master has rejected such sweeping, unbounded discovery requests before,

16  and should do so again.

17          Indeed, it would be practically impossible for Mattel to produce a

18  corporate representative to testify regarding the myriad documents and forms that

19  Mattel employees sign in their daily responsibilities and all breaches of any of its

20  employment agreements with any of its employees in the past decade.  Educating a

21  witness on these topics would require a review of thousands if not tens of thousands

22  of files (not just personnel files) over thousands of hours and at a cost of hundreds of

23  thousands dollars.  Even if the requested information were relevant -- and it is not --

24  the Discovery Master should deny the motion on the grounds of undue burden.

25  Defendants are looking for a needle in a haystack, hoping that somewhere, somehow

26  in the past 10 years Mattel might have said something about some agreement with

27  some employee that conceivably could aid their cause, and show that *Mattel* does

28  not believe that doll designs its designers create belong to Mattel under their

EXHIBIT _____ 3

_____ /8

MATTEL'S OPPOSITION TO MOTION TO COMPEL; RULE RELEVANCE OBJECTION

07209/2335258.8

1   employment agreements.  That is preposterous.  This is a fishing expedition, and it

2   does not justify the burdens it would impose.

3          Finally, Defendants' attempt to shoehorn this Motion directed at two,

4   specific deposition topics into an broad general order compelling Mattel to

5   supplement unspecified, unidentified discovery responses "accordingly" violates

6   Local Rule 37.  However it rules, the Court should reject Defendants' invitation to

7   rule on matters that are not before it.

8                          **Statement of Facts**

9          Bryant's Notice of Deposition of Mattel.  On December 21, 2004,

10  Bryant served a notice of deposition upon Mattel.[1]  Topic No. 25 required a

11  corporate representative to testify regarding any Mattel efforts to enforce any

12  version of any Employee Confidential Information and Inventions Agreement or

13  Conflict of Interest Questionnaire against any employee between 1998 and the

14  December 2004:

15              All measures taken by Mattel including, without limitation,
            any legal action brought or threatened to be brought
16              (including in demand letters and other notices) from 1998
            to present to achieve, or attempt to achieve, compliance
17              with or adherence to any or all of the terms of Mattel's
            'Employee Confidential Information and Inventions
18              Agreement' (including all forms or versions of that
            agreement) from 1998 to present, and / or Mattel's
19              'Conflict of Interest Questionnaire' (including all forms or
            versions of that agreement) from 1998 to present.[2]

20
    Topic No. 52 is similarly overbroad.  It asks Mattel to designate and prepare a
21
    witness to testify regarding "[a]ll forms or other documents which Mattel has
22
    requested prospective and actual employees to sign from January 1, 1995."[3]
23

24  _____

25  [1]  *See* Declaration of Rory S. Miller, dated December 28, 2007 (hereinafter
    "Miller Decl."), Exh. 1 (Notice of Deposition of Plaintiff and Counter-Defendant
26  Mattel, Inc., dated December 21, 2004).

27  [2]  Miller Decl., Exh. 1 at 6-7.
    [3]  Miller Decl., Exh. 1 at 10.

28

EXHIBIT _____ 3 _____

PAGE _____ 19 _____

MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

07209/2315258.8

1    <u>Mattel Objects to Bryant's Notice</u>.  On December 29, 2004, Mattel

2  served objections to the topics in the Notice, including Topic Nos. 25 and 52, which

3  read as follows:

4           25.  In addition to the general objections above, Mattel
         objects to Topic No. 25 on the grounds that it calls for the
5         disclosure of information protected by the attorney-client
         privilege, work product doctrine and other privileges
6         afforded consulting experts and protected by the absolute
         litigation privilege, including without limitation in
7         seeking disclosure of "all measures taken by Mattel,"
         including "legal action."  Mattel further objects to Topic
8         No. 25 as vague, overbroad, unduly burdensome and not
         reasonably calculated to lead to the discovery of
9         admissible evidence.  Among other things, Topic No. 25
         purports to require testimony on "[a]ll" of the many
10        "measures" Mattel has taken over the past seven years as
         to multiple agreements with its thousands of employees
11        and former employees, including as to agreements that
         Bryant was not a party to and during time periods that he
12        was not a Mattel employee, and further fails to describe
         with reasonable particularity the matters on which
13        examination is requested.

14           52.  In addition to the general objections above, Mattel
         objects to Topic No. 52 as overbroad, unduly burdensome
15        and not reasonably calculated to lead to the discovery of
         admissible evidence.  Among other things, Topic No. 52
16        purports to require Mattel to produce witnesses to testify
         about unspecified matters relating to unspecified "forms
17        or other documents" signed by many thousands of
         "prospective and actual employees" over a ten-year
18        period, including such forms (such as those relating to
         health insurance) that have no relevance to this case and
19        including such forms that Bryant never saw or signed.
         For these same reasons, Mattel objects to Topic No. 52 on
20        the grounds that it fails to describe with reasonable
         particularity the matters on which examination is
21        requested.  Mattel further objects to Topic No. 52 on the
         grounds that it calls for the disclosure of information
22        protected by the attorney-client privilege, work product
         doctrine and privileges afforded consulting experts.[4]

23

24

25

26    [4]  *See* Miller Decl., Exh. 2 at 15, 27 (Mattel, Inc.'s Objections and Responses to

27  Defendant Carter Bryant's Notices of Deposition of Mattel, Inc., dated December

28  29, 2004).

EXHIBIT _____ 3

PAGE _____ 20

MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

1        <u>Mattel and Bryant Meet and Confer on Topic No. 25</u>.  On March 15,

2    2005, Douglas Wickham, counsel for Bryant, and Michael Zeller, counsel for

3    Mattel, met and conferred regarding Mattel's objections to the Topics in Bryant's

4    Notice, including Topic Nos. 25 and 52.  With respect to Topic No. 25, regarding

5    Mattel's attempts to enforce all other versions of the Inventions Agreement and the

6    Conflict of Interest Questionnaire, Mattel asked MGA to articulate why it was

7    entitled to such sweeping discovery.  Bryant articulated only two reasons why

8    Mattel's efforts vis-à-vis other employees, contractors, etc. were purportedly

9    relevant.

10       First, Bryant said that he was entitled to discovery regarding Mattel's

11   contracts with third parties because Bryant alleged that Mattel's contracts with

12   Bryant and all other Mattel employees were illegal.  Specifically, Bryant claimed

13   that they violated sections 96(k) and 98.6 of the *California Labor Code* and

14   California public policy, and so "Mattel's enforcement actions with regard to those

15   provisions are ones that are directly pertinent to Mattel's [sic Bryant's] claims

16   asserted in the counterclaim."[5]

17       Second, Bryant suggested that the Inventions Agreement that he signed

18   was unconscionable -- that it was "an adhesive contract rendering it procedurally

19   unconscionable, and that, given the nature -- given the way in which it's been

20   drafted, which is not in conformity with *Labor Code* sections 2870 and 2871, that it

21   is rendered substantively unconscionable."[6]

22       Significantly, Bryant's counsel justified Bryant's efforts to obtain

23   discovery of agreements beyond those between Mattel and Bryant because, at the

24

25   _____

26     [5]  *See* Miller Decl., Exh. 3 at 269:17-270:2 (Transcript of the March 15, 2005

27   Meet and Confer); *see generally id.* at 267:2-275:14.
       [6]  Miller Decl., Exh. 3 at 270:7-12.

28

EXHIBIT _____ 3

PAGE _____ 21

07209/2335258.8

MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

1  time, Bryant had purported to bring a representative action challenging these
2  agreements on behalf of all Mattel employees, current and former.[7]

3            <u>Bryant's Grounds for Seeking Testimony on Topic No. 25 Are</u>
4  <u>Dismissed or Withdrawn</u>.  In his Counterclaims against Mattel, Bryant alleged that
5  the contracts between Mattel and its employees formed "an unfair restraint of trade"
6  and that each was "a contract of adhesion and was procedurally unconscionable."[8]
7  Bryant sought relief not only on his own behalf, but on behalf of all current and
8  former Mattel employees in the form of a representative action.[9]  Mattel moved to
9  dismiss Bryant's counterclaims.  On July 18, 2006, Judge Larson dismissed both the
10  claims that Bryant asserted individually and those asserted on a representative
11  basis.[10]

12            Judge Larson afforded Bryant leave to amend, but Bryant elected not to
13  do so.[11]  Hence, the dismissal became permanent, and the alleged relevance of
14  Mattel's enforcement of all other agreements against all other employees vanished.

15            Thereafter, Bryant continued to assert affirmative defenses of
16  unconscionability and illegality, but then, when directed to Judge Larson's Order,
17  knowingly withdrew those defenses pursuant to a stipulation "so ordered" by Judge
18  Larson on October 5, 2007.[12]

19

20

21    [7]  Miller Decl., Exh. 3. at 270:24-271:4; *see also* Miller Decl., Exh. 4, ¶ 31
22  (Carter Bryant's Cross-Complaint, dated August 24, 2004).
  [8]  Miller Decl., Exh. 4, ¶¶ 32-37.
23    [9]  *See* Miller Decl., Exh. 4, ¶ 31.
  [10]  Miller Decl., Exh. 5 (Order Granting Motions to Dismiss dated July 18, 2006).
24    [11]  Miller Decl., Exh. 5 at 17 ("Bryant may file Amended Counterclaims that
25  conform with this Order...").
  [12]  *See* Miller Decl., Exh. 6 at 2 (Stipulation and Order Regarding Carter
26  Bryant's Amended Reply to Mattel's Counterclaims, dated October 5, 2007); *see*
27  *also* Miller Decl., Exh. 7 (Carter Bryant's Second Amended Reply to Mattel's
Counterclaims, dated October 16, 2007).
28

EXHIBIT _____ 3

PAGE _____ 22

07209/2335258.8

MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

1          <u>Bryant Withdrew Topic No. 52.</u>  During the March 15, 2005 meeting of

2    counsel, Mattel and Bryant also discussed Topic No. 52, which seeks a corporate

3    designee to testify about all documents Mattel employees signed over the past

4    decade.  The exchange was short, and Bryant withdrew the Topic:

5                   Mr. Zeller:  You don't really want to press 52; do you?
               Mr. Wickham:  Let me table 52.[13]

6

7    That withdrawal or "tabling" was "so ordered" by Magistrate Judge Block in a May

8    5, 2005 Order, and Bryant never raised Topic No. 52 again.[14]  Only recently,

9    counsel for MGA, not Bryant, has again raised this withdrawn Topic.

10                                      **<u>Argument</u>**

11   **I.**     **<u>THE DISCOVERY MASTER SHOULD DENY THE MOTION WITH</u>**

12           **<u>RESPECT TO TOPIC NO. 52</u>**

13         Bryant withdrew Topic No. 52.  That withdrawal or "tabling" was "so

14   ordered."  The Motion on Topic No. 52 should be denied on that ground alone.

15         If the Discovery Master elects not to do so, Mattel's objections to Topic

16   No. 52 should be sustained.

17        **A.**     **<u>Topic No. 52 Is Not Reasonably Particularized, as *Rule* 30(b)(6)</u>**

18             **<u>Requires, But Overbroad, Vague and Oppressive</u>**

19         Rule 30(b)(6) requires that a notice of deposition for a corporation must

20   "must describe with reasonable particularity the matters for examination."  *See Fed.*

21   *R. Civ. P.* 30(b)(6).  Overbroad and ambiguous deposition topics are improper.  *See,*

22   *e.g.*, *In re Independent Service Organizations Antitrust Litig.*, 168 F.R.D. 651, 654

23   (D. Kan. 1996).  Topic No. 52 is not particular, but impermissibly overbroad and

24   ambiguous.  It seeks testimony regarding "[a]ll forms or other documents which

25

26   ───────────────────

27   [13]   Miller Decl., Exh. 3 at 400:8-10.
   [14]   Miller Decl., Exh. 8.

28                                 **EXHIBIT** _____3_____

07209/2335258.8

MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

1 | Mattel has requested prospective and actual employees to sign from January 1,
2 | 1995."

3 | Mattel objects to this Topic because Bryant made no effort to limit it to
4 | the documents at issue, the Inventions Agreement and the Conflict of Interest
5 | Questionnaire. Rather, this Topic encompasses an unbounded array of documents
6 | that prospective and actual Mattel employees have signed, including everything
7 | from 401K forms, direct deposit information, citizenship and residency information,
8 | and employee evaluations, to disability and medical insurance information,
9 | discovery response verifications and certifications of the accuracy of Mattel's
10 | financial statements. Based on the vagueness of the Topic, Mattel cannot discern
11 | the bounds, if any, that apply to the testimony or how Mattel would prepare the
12 | parade of witnesses who would be necessary to address each iteration of each such
13 | document. Of course, none of these forms has anything to do with the actual issues
14 | in this case.

15 | The burden of identifying each version of each document signed by a
16 | Mattel employee between 1995 and the date of the Notice far exceeds the burden of
17 | looking through approximately 6,000 thousand personnel files, as is at issue in
18 | Mattel's renewed motion for reconsideration.[15] Mattel's thousands of employees are
19 | asked to sign "documents" and "forms" on a daily basis, and these "documents" and
20 | "forms" can be found in not only the 6,000 personnel files, but potentially in files in
21 | every single department at Mattel. A search of all Mattel's files for some category of
22 | documents bounded only by whether a Mattel employee signed it is strikingly
23 | oppressive.

24 |
25 |
─────────────────

26 | [15] *See* Declaration of Timothy L. Alger in Support of Mattel's Renewed Motion
27 | for Reconsideration, dated December 18, 2007, ¶ 4; Declaration of Lissa Freed,
      dated September 26, 2007, ¶ 6.
28 |

EXHIBIT _____ 3 _____

PAGE _____ 24 _____

B.   **Topic No. 52 Does Not Seek Relevant Information**

    1.   **Topic No. 52 Seeks Information Relating to Documents That Have Nothing to Do With the Claims or Defenses In This Case**

This Topic seeks information regarding documents that have nothing to do with the claims or defenses in the case, such as benefit and insurance documents, direct deposit documents, etc.  Under any interpretation, such documents fall outside the scope of discovery as set forth in Rule 26.  The Motion must be denied.

    2.   **As Apparently Interpreted by MGA, Topic No. 52 Is Completely Duplicative of Topics Nos. 1, 49 and 50, On Which Mattel Has Produced A Witness**

Adopting, in the alternative, an ambiguous but apparently more narrow interpretation of the Topic, MGA argues that this Topic calls for other versions of the agreements that Bryant signed, which may inform the interpretation of the Mattel/Bryant agreements.  Motion at 9 (citing *Kitty-Anne Music Co. v. Swan*, 112 Cal. App. 4th 30 (2003) and *Yuen v. Superior Court*, 121 Cal. App. 4th 1133 (2004)).[16]  While Mattel disagrees with that suggestion, MGA's narrowed interpretation renders Topic No. 52 completely duplicative of Topics No. 1, 49 and 50, which sought testimony relating to, respectively, "All Contracts, and terms thereof, You contend You had with Bryant," "[a]ll versions of the 'Employee Confidential Information and Inventions Agreement' used by Mattel since January 1, 1995. . . ," and "[a]ll versions of the 'Conflict of Interest Agreement' used by Mattel since January 1, 1995 . . . ."

---

[16]   *Kitty-Anne Music Co. and Yuen* stand for the unremarkable proposition that drafts of *the parties'* actual contract, or *the parties'* collateral agreements, may be used to interpret the final contract.  Here, of course, there are no collateral

(footnote continued)

EXHIBIT _____ 3 _____

PAGE _____ 25 _____

MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

37209/2335258.8

1    Mattel produced, and Bryant and MGA deposed a designee on that
2  topic, Ms. Lissa Freed, on May 3, 2007.  That deposition was concluded.  Because
3  MGA/Bryant have previously deposed someone on the very subject matter that it
4  claims is now at issue, the Motion should be denied.  And, contrary to MGA's
5  suggestion, Mattel has provided to MGA the "very documents upon which Mattel
6  based a number of its claims," including all documents related to its agreements
7  with Bryant, and prior and subsequent versions thereof.[17]

8  **II.    THE DISCOVERY MASTER SHOULD DENY THE MOTION WITH**
9          **RESPECT TO TOPIC NO. 25**
10         **A.    Topic No. 25 Is Not Reasonably Particularized**
11              As discussed above, Rule 30(b)(6) requires that a notice to a
12  corporation topics must "must describe with reasonable particularity the matters for
13  examination." *See Fed. R. Civ. P.* 30(b)(6).  Topic No. 25 is not particularized.
14  Instead, it demands that Mattel produce a corporate representative to testify
15  regarding:

> All measures taken by Mattel including, without
> limitation, any legal action brought or threatened to be
> brought (including in demand letters and other notices)
> from 1998 to present to achieve, or attempt to achieve,
> compliance with or adherence to any or all of the terms of
> Mattel's 'Employee Confidential Information and
> Inventions Agreement' (including all forms or versions of
> that agreement) from 1998 to present, and / or Mattel's
> 'Conflict of Interest Questionnaire' (including all forms or
> versions of that agreement) from 1998 to present.

---

22  agreements that are integrated in the contracts at issue.  Nor are third parties'
23  contracts with Mattel drafts of the Mattel/Bryant contracts in any sense.
24  [17] Even if limited to the specific forms referenced in the Motion, the topic is still
     overbroad.  For instance, the Employee Patent and Confidence Agreement,
25  referenced by MGA, contains language on the employees' "at will" status, and
     assignment to Mattel of the employees' right of publicity.  These contractual clauses
26  are not at issue in this case, and Mattel should not be forced to produce a corporate
27  representative to testify about them.

EXHIBIT ____3____

PAGE ____26____

07209/2335258.8

-10-

MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

1

2   Thousands of employees have left Mattel over the past decade. Mattel cannot

3   reasonably be expected to designate a corporate representative who could testify

4   knowledgeably about the unique circumstances of any and all actual or potential

5   contractual breaches--ranging from copyright infringement to pilfering of office

6   supplies -- that have occurred since 1998. In effect, MGA and Bryant seek an order

7   compelling Mattel to have a witness (a) identify every single contemplated or filed

8   enforcement action, (b) interview witnesses with respect to each such action, (c)

9   make an assessment as to the merits/viability of the action, and (d) testify about each

10  of them, creating, in essence, a witness to present, at deposition, a summary of all of

11  Mattel's disputes, potential or actual, with any employee, that ever arose or were

12  discussed, whether prosecuted or not over the past 10 years. Such a Topic is not

13  "reasonably particularized." *See Fed. R. Civ. P.* 30(b)(6). Indeed, it is not even

14  limited (nor did MGA and Bryant offer to limit it) to the language at issue in either

15  the Inventions Agreement or the Conflict of Interest Questionnaire.

16          Independently, the topic is overbroad because it utilizes "including

17  without limitation" language. In *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan.

18  2000), the court quashed a *Rule* 30(b)(6) notice with "including but not limited to"

19  language since the "outer limits of the areas of inquiry" could not be determined.

20  *See also Tri-State Hosp. Supply Corp. v. U.S.,* 226 F.R.D. 118, 124 (D.D.C. 2005)

21  (deposition topics with "including but not limited to" phrase were improper because

22  "[l]isting several categories and stating that the inquiry may extend beyond the

23  enumerated topics defeats the purpose of having any topics at all."). The Discovery

24  Master should deny the Motion to compel a witness to testify with respect to Topic

25  No. 25 for failure to comply with Rule 30.

26

27          EXHIBIT _____3_____

28          PAGE _____27_____

1  **B.**    **An Inquiry Into Mattel's Decision to Enforce the Agreements**

2  **Necessarily Invades The Attorney-Client Privilege and the Work**

3  **Product Protection**

4           Moreover, testimony regarding Mattel's decisions on whether to take

5  action against an employee internally, or to file suit against a current or former

6  employee, or to research and analyze the merits of a claim against a current or

7  former employee, would necessarily and impermissibly invade the company's

8  attorney client and work product privileges. *SmithKline Beecham Corp. v. Apotex*

9  *Corp.*, 2000 WL 116082, *9 (N.D. Ill 2000) (holding that the proposed areas of

10 inquiry "improperly trespasses into areas of work product and attorney-client

11 privilege"); *see also Steinbach v. Credigy Receivables, Inc.*, 2006 WL 1007272, *11

12 (E.D. Ky. 2006) (rejecting interrogatory and document request asking for criteria

13 considered in filing suit because parties, if they do not have a set formal policies and

14 procedures on the subject, "file a lawsuit based on the advice and/or

15 recommendation of counsel, clearly a privileged communication"). MGA and

16 Bryant should not be able to inquire into privileged subject matter that is necessarily

17 within the scope of Topic No. 25.

18 **C.**    **Mattel's Enforcement, Efforts to Enforce or Contemplated Efforts**

19 **to Enforce Agreements with Third Parties Are Not Relevant**

20 **1.**    **Bryant's Sole Grounds for Relevancy Have Been Dismissed**

21 **or Withdrawn**

22          As noted above, Bryant has consistently contended that the deposition

23 topics at issue here are relevant to the alleged unconscionability of the agreements

24 and/or his intent to bring a representative action with respect to third party

25 employees. These grounds are now gone because these claims have been

26

27                                  EXHIBIT _____ 3 _____

28                                  PAGE _____ 28 _____

7209/2335258.8

-12-

MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

1   dismissed.[18]  Similarly, although Bryant asserted affirmative defenses of

2   unconscionability and illegality, he withdrew those defenses in a stipulation "so

3   ordered" by Judge Larson on October 5, 2007.[19]  As the Discovery Master correctly

4   recognized, this withdrawal "affects the entire balance of relevancy versus

5   burden."[20]  This history is dispositive, placing Mattel's contracts with third parties

6   out of bounds.  Because the requested discovery is irrelevant to the claims and

7   defenses that remain in the case, the Discovery Master should deny Bryant's motion.

8           2.      **No California Court Has Adopted Bryant's New Theory**

9                   **That Agreements with Third Parties Are Relevant to**

10                  **Interpret Agreements Between the Parties**

11          Without a claim or defense to tie to Mattel's agreements with third

12  parties, Bryant and MGA have invented a new theory, albeit one that the cited

13  authority does not support.  While it is well settled that the pre-dispute conduct of

14  the *parties* to a contract may be an aid in interpretation, California courts have not

15  expanded that principle to apply to contracts with *non-parties*.  Bryant and MGA

16  mis-cite authority to suggest that they have, and rely on that mis-citation to justify

17  their demand that Mattel undertake the extraordinarily burdensome task of educating

18  a witness about Mattel's contractual relationships with thousands of other

19  employees.

20          Bryant's motion seeks evidence of Mattel's contracts with non-parties

21  to interpret Bryant's contracts with Mattel.  But Bryant's own authority emphasizes

22  the limited role that extrinsic evidence plays in contract interpretation:

23          California courts begin their analysis of a contract with the
            contract language. 'The language of a contract is to govern
24

25  ────────────────────────

    [18]  Miller Decl., Exh. 5.
26
    [19]  *See* Miller Decl., Exh. 6 at 2; *see also* Miller Decl., Exh. 7.
27
    [20]  *See* Miller Decl., Exh. 9 at 53:2 (Excerpts of the transcript of proceedings
28  before the Hon. Edward A. Infante, dated December 14, 2007).

EXHIBIT _____3_____

PAGE _____29_____

MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

07209/2335258.8

> its interpretation, if the language is clear and explicit, and does not involve an absurdity." *Cal. Civ. Code* § 1638. The California Civil Code mandates that the "intention of the parties [ ] be ascertained from the writing alone, if possible" and from the review of the contract as a whole. *Id.* at §§ 1636 & 1641.

*Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.*, 319 F. Supp. 2d 1040, 1046 (C.D. Cal. 2003). Indeed, in *U.S. Cellular Inv. Co. of Los Angeles, Inc. v. GTE Mobilenet, Inc.*, 281 F.3d 929, 939 (9th Cir. 2002), cited by Bryant, the Ninth Circuit affirmed the district court's order excluding parole evidence on the subject of contract interpretation. Here, there is nothing ambiguous about the contractual provisions at issue, despite Bryant's efforts to create ambiguity where there is none. *Cf. Nissel v. Certain Underwriters at Lloyd's of London*, 62 Cal. App. 4th 1103, 1111 (1998) ("it [is not] enough to find an abstract ambiguity or a meaning for a disputed word or phrase which [is] simply 'semantically permissible.'"); *B.F. Goodrich Co. v. Vinyltech Corp.*, 711 F. Supp. 1513, 1517 (D. Ariz. 1989) ("The mere fact that the parties disagree as to the meaning of language contained in the agreement is not sufficient to create an ambiguity.") (citation omitted).

Moreover, in asking the Discovery Master to hold that the interpretation of his contract with Mattel can be informed by reference to Mattel's *other* contracts with *other* employees made at *different* times, even *post-dating* Bryant's employment at Mattel, MGA asks the Discovery Master to do something no other California court has done. MGA does not cite a shred of authority for the proposition that such materials are discoverable, let alone relevant. To the contrary, MGA's authority is limited exclusively to situations where the contract *between the two litigants* was interpreted by *their* prior actions and contracts. *See, e.g., Crestview Cemetery Ass'n v. Dieden*, 54 Cal. 2d 744, 752 (1960) (interpreting a contract based upon how *the parties* previously performed under that contract); *S. Cal. Edison Co. v. Superior Court*, 37 Cal. App. 4th 839, 851 (1995) (same); *Automobile Salesmen's Union v. Eastbay Motor Car Dealers, Inc.*, 10 Cal. App. 3d

EXHIBIT _____

3

30

1    419, 424 (1970) (same).   Nor does MGA cite any support for its creative

2    proposition in the leading treatises on contract law, and Mattel has found none.

3           Indeed, MGA's authority actually undermines its argument.  In *U.S.*

4    *Cellular*, the Ninth Circuit explained, "Under California law, a court may consider

5    the subsequent acts and conduct of the parties in the execution of the contract in

6    order *to determine the intent of those parties.*"  281 F.3d at 937 (citing *Cal. Civ.*

7    *Proc. Code* § 1856(c)) (emphasis added).  Here, the contracting parties are Bryant

8    and Mattel.  No other employee is a party to the contract between Bryant and

9    Mattel.  It necessarily follows that actions of the parties to *other* contracts are not

10    relevant even under the rationale of *U.S. Cellular* and similar cases.  Quite simply,

11    no California court has adopted the radical expansion of the practical interpretation

12    doctrine to third party contracts proffered by defendants.

13           Defendants' authority from outside of California is equally

14    inapplicable.  In *Casey v. Lifespan Corp.*, 672 F. Supp. 2d 471, 489 (D.R.I. 1999),

15    the court considered prior interpretation of a bargaining agreement *by the two co-*

16    *defendants among themselves* where that interpretation was contrary to the one they

17    adopted in a later litigation.  Here, of course, third party employees are not parties to

18    this case.  Likewise, in *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459

19    (2003), the court *sought to reconcile two contradictory provisions* regarding

20    payment of benefits.  Only in that context, the court considered the plaintiff's

21    showing that the defendant in practice consistently ignored one of the provisions,

22    and that this provision was inadvertently carried over from an earlier version of the

23    document.  This simply is not the situation here and defendants do not contend

24    otherwise.  And, in any case, *Klapp* itself reiterates the general rule that "evidence

25    of practical interpretation *by the parties* is admissible as an aid in the determination

26    of the meaning to be given legal effect. . ." *Id.* at 478 (citation omitted, emphasis

27    added).  This principle merely permits evidence of the parties' conduct *toward each*

28

**EXHIBIT** _____ 3 _____

07209/2335258.8

1 | *other*, and does not extend to a party's interpretation of its other contracts *with third*
2 | *parties*. Thus, MGA's cases from foreign jurisdictions do not aid its case either.
3 |       Finally, MGA relies upon cases involving situations where a party
4 | interpreted the same document differently in two different judicial proceedings.
5 | *See, e.g., U.S. Cellular*, 281 F.3d at 938 (a party's "vigorous[] assert[ion]" of a
6 | contrary interpretation in another case undermined its later position that the contract
7 | was not subject to different reasonable interpretations); *Heston v. Farmer's Ins.*
8 | *Group*, 160 Cal. App. 3d 402 (1984) (allowing admission of evidence regarding the
9 | defendant's submission of a brief to the National Labor Relations Board interpreting
10 | a paragraph in an agent's agreement differently than in the underlying litigation).
11 | These cases are easily distinguishable because they involve gamesmanship by
12 | litigants who adopt diametrically opposed positions before different judicial
13 | tribunals. Mattel has not litigated against Bryant previously. Despite having the
14 | means to search public court records, defendants do not point to any instance where,
15 | in litigation with third parties, Mattel took the position that doll designs created by a
16 | Mattel designer do not belong to Mattel. And in all events, defendants' suggestion
17 | that Mattel may have advocated an interpretation that grants it *narrower* contractual
18 | rights is simply implausible, yet that is the needle in the haystack that defendants
19 | purport to seek.

20 |      **3.**    **Mattel's Alleged Failure to Prosecute Every Breach of the**
21 |              **Pertinent Contracts Is Not Evidence of Its Intent as to Bryant**
22 |       Bryant's argument that "the failure to take enforcement action [against
23 | third parties] is also demonstrative of intent"[21] fails as a matter of law. Under
24 | copyright law, a failure to prosecute third party infringers simply is not probative of
25 | intent to waive rights against the defendant. "Extending the doctrine of estoppel so
26 |
27 | [21] Motion, at 8:6-7.
28 |

J7209/23352258.8

-16-

EXHIBIT _____3_____

PAGE _____32_____

MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

1  that a defendant may rely on a plaintiff's conduct toward another party is both
2  unsupported by law and pernicious as a matter of policy." *Paramount Pictures*
3  *Corp. v. Carol Publishing Group*, 11 F. Supp. 2d 329, 337 (S.D.N.Y. 1998)
4  (rejecting an affirmative defense based upon the copyright owner's failure to
5  prosecute third party infringements). *See also Capitol Records, Inc. v. Naxos of*
6  *America, Inc.*, 372 F.3d 471, 484 (2d Cir. 2004) ("failure to pursue third-party
7  infringers has regularly been rejected as a defense to copyright infringement or as an
8  indication of abandonment"); *Penguin Books U.S.A., Inc. v. New Christian Church*
9  *of Full Endeavor, Ltd.*, 2000 WL 1028634, *20 (S.D.N.Y. 2000), *vacated on other*
10 *grounds* 2004 WL 906301 (S.D.N.Y. 2004) ("[n]otwithstanding the evidence that
11 [p]laintiffs did not always enforce the copyright as vigorously as they are currently
12 attempting to do, there is no evidence of an overt act by [p]laintiffs evidencing an
13 intent to surrender the copyright"); *cf. Microstar v. Formgen Inc.*, 154 F.3d 1107,
14 1114 (9th Cir. 1998) ("abandonment of a right must be manifested by some overt act
15 indicating an intention to abandon the right."). Accordingly, Mattel's unique
16 decisions on whether to prosecute any other employee for infringement have
17 nothing to do with Mattel's interpretation of its contract with Bryant.

18          The same rule applies to common law claims. In *Emerson v. Electric*
19 *Co. v. Rogers*, 418 F.3d 841 (8th Cir. 2005), the plaintiff sued a former employee
20 for breach of employment agreement and misappropriation of trade secrets. The
21 employee argued, *inter alia*, that plaintiff had waived its right to enforce the
22 agreement against him because it did not enforce it against other employees. *Id.* at
23 844-845. The Eighth Circuit held:

24          While [employer] may not have exercised its rights under
           the covenant on every occasion, there is no credible
25          evidence that [its] failure to do so rose to a waiver of its
           right to enforce the agreement as to [the defendant
26          employee] or that its failure to enforce the agreement as to
           other employees makes it any less likely that [defendant]
27          could use information gained during his relationship with
           [the employer] to unfairly compete against it.

28                                                          EXHIBIT _____ 3

1   *Id.* at 845. *See also Deal v. Consumer Programs, Inc.*, 458 F. Supp. 2d 970, 978 n 5

2   (E.D. Mo. 2005) (employer's alleged non-enforcement of a contractual provision

3   against one executive does not operate as a waiver of that provision against

4   another); *Pochopien v. Marshall, O'Toole, Gerstein, Murray & Borun*, 315 Ill. App.

5   3d 329, 339 (Ill. App. 2000) ("The non-enforcement of a provision as to previous

6   employees in different situations is insufficient to constitute waiver as to a

7   subsequent employee."). Accordingly, Mattel's decisions concerning prosecution of

8   its rights against other employees under different and necessarily unique

9   circumstances have no bearing on its present dispute with Bryant or the

10  interpretation of any contract between him and Mattel. Notably, here as well,

11  defendants do not cite any controlling or even persuasive authority.[22]

12          Even if the Discovery Master were to look beyond this authority --

13  which it need not -- the requested discovery cannot yield any evidence of Mattel's

14  intent as to Bryant because each of Mattel's decisions on whether to prosecute

15  claims against a former employee is based on practical considerations entwined with

16  the unique factual circumstances of each situation -- all of which have nothing to do

17  with Mattel's interpretation of the underlying contracts. In some cases, for example,

18  it may not be clear whether an infringement has in fact occurred. Other times, a

19  dispute may be settled prior to litigation. Not one of these unique decisions has

20  anything to do with Mattel's equally unique decision to prosecute claims against

21  Bryant for, among other things, breaching his agreement and fiduciary obligations to

22

23

24  [22] *Hollenbeck Lodge (486) H.O.O.F. v. Wilshire Blvd. Temple*, 175 Cal. App. 2d

25  469 (1959), is plainly inapposite. That case concerns *the same parties*: members of
    a lodge and a cemetery. Here, by contrast, Bryant claims that Mattel's alleged

26  failure to prosecute *third parties* is somehow relevant. Further, Bryant does not

27  claim that Mattel has failed to enforce its rights against him for nearly a decade, as
    was the case in *Hollenbeck Lodge*.

28

EXHIBIT _____ 3

PAGE _____ 34

1 | Mattel. Mattel's unique decisions on whether to sue *other* employees for *dissimilar*
2 | misconduct are wholly irrelevant.

### 4. Additional Discovery Is Unnecessary Even Under Bryant's Theory

5 | Even accepting defendants' far-fetched theory of relevance, the
6 | requested discovery would serve no purpose. Mattel disputes that its prior
7 | agreements with Bryant are probative of the scope and/or meaning of its later
8 | contracts with him. But even if the Discovery Master were to accept that premise,
9 | defendants already have all the evidence that they need to present this argument.
10 | Defendants do not dispute that he has already received all agreements between him
11 | and Mattel. They also admit that these agreements are "standard forms signed by
12 | other Mattel employees." Motion, 1:23-24. Discovery of thousands of "standard"
13 | agreements between Mattel and other employees would not offer defendants more
14 | evidence than they currently possess.

15 | And, to put meat on the bone of the documents, Lissa Freed, Mattel's
16 | Director of Human Resources, has already testified at length regarding the employee
17 | forms at issue, and was made available to answer any questions that MGA and
18 | Bryant had. Declaration of Stan Karas, Exh. A (Freed Depo., 20:9-22:15 and 28:2-
19 | 31:3 (testifying regarding changes to the inventions agreement); 25:5-27:5 and 72:9-
20 | 74:10 (testifying regarding the conflict of interest questionnaire); 121:22-125:21
21 | (testifying regarding the exit questionnaire)). Accordingly, additional discovery
22 | would serve no conceivable purpose.

### D. Compliance with Topic No. 25 Would Be Oppressive and Unduly Burdensome

25 | Even if the requested discovery were relevant, the extreme burden of
26 | their search and production substantially outweighs any possible probative value.
27 | *See Fed. R. Civ. P.* 26(b)(2)(C)(iii) (court has the power to deny discovery where
28 | "the burden or expense of the proposed discovery outweighs its likely benefit,

-19-
MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

EXHIBIT _____ 3
PAGE _____ 35

1  considering ... the importance of the discovery in resolving the issues."). A

2  Discovery Master has "a duty, of special significance in lengthy and complex cases

3  where the possibility of abuse is always present, to supervise and limit discovery to

4  protect parties and witnesses from annoyance and excessive expense." *Dolgow v.*

5  *Anderson*, 53 F.R.D. 661, 664 (E.D.N.Y. 1971); *see also Laker Airways Ltd. v. Pan*

6  *American World Airways*, 559 F. Supp. 1124, 1133 n.36 (D.D.C. 1983) (same).

7           The burden of complying with Bryant's request for a designee on Topic

8  No. 25 is extreme even in the context of this complex litigation. Even putting aside

9  the search for documents related to the enforcement of contract with employees

10  other than Bryant, --- which itself would require work -- the inquiry hardly ends

11  with a review of such documents. Instead, as set forth above, the designee or

12  counsel would have to interview witnesses involved with each such dispute--any

13  one of which could be a separate lawsuit and all that entails. That oppressive effort

14  far exceeds the justification for evidence that the Discovery Master found "thin" and

15  "tenuous" even *before* Bryant withdrew the only affirmative defenses to which they

16  could have plausibly related. *Fed. R. Civ. P.* 26(b)(2)(iii) (court may impose limits

17  on discovery if burden of responding outweighs its likely benefit); *Keith H. v Long*

18  *Beach Unified Sch. Dist.*, 228 F.R.D 652, 659 (C.D. Cal. 2005) (denying plaintiff's

19  motion, because request was burdensome and the gravamen of complaint addressed

20  other issues); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Elec. Transit Inc.*, 2006 WL

21  1525809, * 2 (N.D. Cal. 2006) (the court may deny a motion to compel if the burden

22  of discovery outweighs the utility of information sought).[23]

23

24  [23]  This burden is especially improper because MGA recently served Mattel with

25  numerous requests for admission on this issue, which would require hundreds of
   hours and many thousands of dollars to answer. *See* Miller Decl., Exh. 10 (MGA

26  Entertainment, Inc.'s Third Set of Requests for Admission to Mattel, Inc., dated

27  November 28, 2007).

28

EXHIBIT _____ 3 _____

PAGE _____ 36 _____

Y7209/2335258.8

MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

1           Although the issue upon this motion is discoverability, not

2   admissibility, of evidence, it is appropriate to assess the extraordinary burden of the

3   requested discovery in the context of what evidence defendants may actually

4   introduce at trial. Under *Federal Rule of Evidence* 403, defendants are highly likely

5   to be barred from presenting evidence regarding Mattel's decisions whether to

6   prosecute third party infringers, because it would inevitably transform the trial into

7   an interminable series of mini-trials regarding the facts and merits of any each

8   enforcement action, which would distract the jury from to the core issues.

9   Defendants cannot credibly argue that the hundreds of thousands of dollars it would

10  cost to review third-party files, to investigate the merits of each and to prepare a

11  designee to testify on every consideration to enforce these two agreements over a

12  decade is justified if he is not likely to be permitted to introduce any such evidence

13  at trial. Thus the present request reduces to an impermissible fishing expedition that

14  does not come close to justifying the extraordinary burden it would impose on

15  Mattel.

16          Finally, granting defendants' request would undoubtedly create an

17  avalanche of new discovery requests from defendants. If the Discovery Master

18  grants the motion, it would be opening the door to ever-increasing demands for a

19  complete turn-over of employee files in every case involving a breach of an

20  employment agreement, depositions of Mattel personnel regarding the unique

21  circumstances of such breaches, and subpoenas to the former employees. The

22  Discovery Master should nip Bryant's overreaching requests in the bud by denying

23  the Motion in full, lest this issue continue to create additional disputes between

24  parties.

25

26

27                                      EXHIBIT _____3_____

28                                      PAGE _____37_____

-21-

MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

1  **III.  BRYANT'S DEMAND THAT THE DISCOVERY MASTER ORDER**
2  **MATTEL TO RESPOND TO UNSPECIFIED DISCOVERY**
3  **REQUESTS IS IMPROPER**

4       The *Local Rules* mandate that all discovery motions be supported by a
5  document setting forth either the specific requests or the specific question, and any
6  specific objections, so that the Court will have both precision and context for its
7  rulings. *Local Rule* 37-2.1; *U.S. ex. rel. O'Connell v. Chapman University*, 245
8  F.R.D. 646, 648 (C.D. Cal. 2007) (entering order to show cause for failure to
9  comply with *Local Rule* 37-2.1); *Estate of Gonzalez v. Hickman*, 2007 WL 3238725,
10  at *2 (C.D. Cal. 2007) (refusing to hear motion because of party's failure to comply
11  with *Local Rule* 37-2.1).

12       Putting aside the two 30(b)(6) topics discussed above, defendants'
13  motion utterly fails to comply with the *Local Rule*, and instead asks the Discovery
14  Master to rule in a vacuum. Specifically, MGA demands an "order compelling
15  Mattel to supplement all of its discovery responses and document productions
16  accordingly." Notice of Motion, 1:9-10. MGA does not specify any particular
17  document request, interrogatory or request for admission that it deems to be affected
18  by the Discovery Master's order on this motion. Mattel cannot meaningfully
19  respond to -- and the Discovery Master cannot rule upon -- a motion to compel
20  further responses to unspecified discovery requests. The Discovery Master has
21  consistently rejected the parties' request that he lay down general discovery
22  guidelines not tied to specific discovery requests.[24] MGA's request for vague

23

24

25    [24] Declaration of B. Dylan Proctor In Support of Mattel Inc.'s Opposition to MGA's Motion to Compel Regarding Mattel's Privilege Waiver By Claim Assertion
26  dated December 27, 2007, Exh. 4 (Transcript of June 19, 2007 Hearing, at pp. 17-18
27  (refusing to hear matters regarding depositions not before the Discovery Master));
Exh. 5 (Transcript of May 4, 2007 Hearing, at pp. 12-13 (same)).

28                                   EXHIBIT _____ 3

1  discovery rulings without identification of the specific discovery requests or
2  information at issue should likewise be rejected here.

3          This argument is not a mere technicality. Because MGA's motion is
4  not directed at specific discovery requests, the Discovery Master could not grant
5  properly tailored relief, if it were inclined to grant any relief. An order that simply
6  grants the motion would leave all parties at a loss regarding which discovery
7  responses must be supplemented. For instance, MGA has asked Mattel to admit --
8  in literally hundreds upon hundreds of Requests for Admission -- that some of its
9  employees have performed non-Mattel work while employed by the company. An
10  order granting Bryant's non-specific request for relief could conceivably require
11  Mattel to search the computer and paper files of each of its thousands of employees
12  to be in compliance with the Order. The tremendous burden of such discovery
13  cannot be overstated, and Mattel is entitled to address it in context. This is the
14  precise situation that the Local Rule is designed to avoid, and the precise situation
15  that MGA seeks to create through its violation of the Local Rule.

16          Accordingly, even if the Discovery Referee grants the portion of
17  MGA's motion concerning *Rule* 30(b)(6) deposition, -- which it should not -- it
18  should deny the request that Mattel supplement "all of its discovery responses and
19  document productions accordingly."

20                              **Conclusion**

21          Defendants seek to open a new front in the ongoing discovery disputes
22  between the parties. The only practical result of such an order would be an
23  avalanche of additional discovery motions on a brand new topic. Defendants are not
24  entitled to the requested discovery, and it is unduly burdensome. The Discovery
25  Master should deny the motion in full.

26
27                                    EXHIBIT _____ 3 _____
28                                    PAGE _____ 39 _____

J7209/23352S8.8

1 | DATED:  December 28, 2007  QUINN EMANUEL URQUHART OLIVER &
2              HEDGES, LLP
3
          By _____ /FOR
4             B. Dylan Proctor
            Attorneys for Plaintiff and Counter-
5             Defendant Mattel, Inc.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27                EXHIBIT _____ 3
28
                PAGE _____ 40

07209/2335258.8

-24-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)              Date: February 4, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
========================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                          Theresa Lanza
        Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

Michael Page                          John Quinn
                                      Jon D. Corey

                                      ATTORNEY PRESENT FOR CARLOS
ATTORNEYS PRESENT FOR MGA:            GUSTAVO MACHADO GOMEZ:

Thomas J. Nolan
Carl A. Roth
Robert J. Harrington

ATTORNEYS PRESENT FOR THIRD-
PARTY WITNESSES

Larry W. McFarland
Scott Gizer
Ramit Mizrahi
Henry H. Gonzalez
Neal A. Potischman
John Patrick Petrullo


Alexander H. Cote


MINUTES FORM 90                    1      Initials of Deputy Clerk __jh
CIVIL -- GEN                              Time: 1/45

                                          EXHIBIT ____4____
                                          PAGE ____41____

PROCEEDINGS:

HEARING ON EX PARTE APPLICATIONS:

1722 EX PARTE APPLICATION to Compel Deposition of Ana Cabrera, Beatriz Morales, and Maria Salazar and Mel Woods

1724 EX PARTE APPLICATION to Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment, Inc.

1538 EX PARTE APPLICATION for Relief from 01-07-2008 Order re Motion Hearing

1583 EX PARTE APPLICATION to Compel Production of Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow

1624 EX PARTE APPLICATION to Enforce Court's Orders Compelling Production of Tangible Items

1628 EX PARTE APPLICATION to Stay pending Review of Discovery Master's January 11, 2008 Order Granting MGA's and Bryant's Motion to Compel

ORDER TO SHOW CAUSE DIRECTED TO COUNSEL LARRY McFARLAND

Having considered the documents submitted in support of and opposition to the applications set forth above, and having heard oral argument, the Court issues its rulings on these matters as stated on the record and as follows:

**EX PARTE APPLICATIONS REGARDING DEPOSITIONS**
**(DOCKET #1722 AND #1724) AND ORDER TO SHOW CAUSE**

These applications are DENIED IN PART, subject to the following rulings:

(1)     The Court's January 7, 2008, Order was intended to grant certain specified relief from the numerical limitations on discovery requests; it was not meant to make definitive rulings on burdensomeness, relevance, privilege, or service of discovery requests.

(2)     The Phase 1 discovery deadline has expired. Any Phase 1 discovery not properly served on or before this deadline may not now be pursued. Based on the representation of counsel that process for the letters rogatory on the Hong Kong witnesses has not been initiated, these witnesses may not be deposed on Phase 1 issues. Notwithstanding this ruling, however, the Court is concerned with the allegations by Mattel in its ex parte application regarding certain actions of Larry

MINUTES FORM 90
CIVIL -- GEN                                           2

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT _____4_____

PAGE _____42_____

McFarland, who represents certain third-party witnesses.  Mattel submits that Mr. McFarland has been deliberately evading service of a notice of deposition on him and his clients -- serious allegations when made by an officer of the Court against another officer of the Court.  Accordingly, Mr. McFarland is **ORDERED TO SHOW CAUSE** why he and his clients should not be ordered to appear for deposition.  A written response to this OSC must be filed no later than February 11, 2008.  Other parties may file written replies no later than February 19, 2008.  The Court will hear the matter at 10:00 a.m., February 25, 2008, in Courtroom One of the above-referenced Court.

(3)     Phase 1 depositions that have been scheduled past the discovery deadline for the convenience of the witnesses or pursuant to the stipulation of the parties and/or witnesses may proceed as scheduled.

(4)     All discovery related to Phase 2, other than certain individual depositions that may be related to both Phase 1 and Phase 2, is STAYED until further order of the Court.

(5)     As previously ordered and reaffirmed by this Court, all discovery matters shall be presented in the first instance to the Discovery Master.  The fact that the Discovery Master's ruling might impact upon the Court's scheduling order does not relieve the parties of following this procedure.  For instance, motions to compel, motions to quash, or motions challenging service as to existing discovery requests shall be brought before the Discovery Master.  So, too, must objections based on burdensomeness, relevancy, or privilege.  In general, and on the matters touched upon herein, the Court expresses no opinion as to these issues, and instead leaves those issues to the Discovery Master to decide in the first instance.

(6)     To the extent that certain challenged depositions are within the scope of the Court's January 7, 2008, Order, and are related to Phase 1 (or to the extent that a given deposition (other than a Rule 30(b)(6) deposition) is related to both Phase 1 and Phase 2), said deposition may proceed subject to the challenges set forth in the previous paragraph.  To the extent that the depositions are related to Phase 2, they are STAYED, as set forth above, notwithstanding the January 7, 2008, Order.

(7)     The parties' arguments require the Court to resolve an internal inconsistency in the Court's January 7, 2008, Order.  The Court's Order was meant to grant all parts of Mattel's Motion for Leave to Take Additional Discovery (docket #1134) except the relief sought as to the deposition of Carter Bryant.  The Court amends its 01.07.08 Order as follows:

>     Delete: <Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) and relating to the trade secret and RICO

MINUTES FORM 90
CIVIL -- GEN                                          3

Initials of Deputy Clerk ___jh_____
Time: 1/45

EXHIBIT _____4_____

PAGE _____43_____

claims (set forth in the moving papers at 13).>

Replace with: <Specifically, the Court grants Mattel's request to take
the individual depositions relating to the Bratz claims (set forth in the
moving papers at 9-11), relating to the trade secret and RICO claims
(set forth in the moving papers at 13), and relating to document
preservation (set forth in the moving papers at 14 (Joe Tiongco and
Daphne Gronich)).>

(8)     The Court's January 7, 2008, Order granted leave to take additional discovery over
and above the previously allocated 24 depositions per side.  Nevertheless, as to all
other depositions, how to "count" the previously allocated depositions is left to the
discretion of the Discovery Master.

(9)     At the hearing, counsel for Christensen, Glaser requested that the Court clarify that
its January 7, 2008, ruling granted leave to depose it on only one issue.  That is not
the case, and the request is DENIED.  Mattel has been granted relief from the
numerical limitations that previously restricted its ability to depose those individuals
and entities addressed by the Court's January 7, 2008, Order, including its ability to
depose Christensen, Glaser.  Unless otherwise restricted by the Discovery Master
upon proper presentation of the issue to him, Mattel may depose Christensen,
Glaser on any relevant, non-privileged matter.

## MACHADO GOMEZ'S EX PARTE APPLICATION RE
## JANUARY 7, 2008, ORDER (DOCKET # 1504)

This application is GRANTED.  As noted above, Phase 2 discovery is STAYED until further
order of the Court.  The Court will address Phase 2 discovery, motions, pretrial, and trial dates
after the conclusion of Phase 1 of the trial.

## MATTEL'S EX PARTE APPLICATION RE MOTION TO COMPEL PRODUCTION OF
## ELECTRONIC MEDIA FROM THIRD PARTIES (DOCKET #1538)

This application is DENIED.  This matter must be addressed in the first instance by the
Discovery Master.

## MATTEL'S EX PARTE APPLICATION TO ENFORCE COURT'S ORDERS
## COMPELLING PRODUCTION OF TANGIBLE ITEMS (#1624)

This application is GRANTED IN PART.  Counsel for MGA shall employ its best efforts to
arrange for shipment of those tangible things located in the Peoples' Republic of China ("PRC") to
Hong Kong Special Administrative Region ("Hong Kong") for examination in conjunction with those
tangible things already located in Hong Kong.  Otherwise, counsel for MGA shall cooperate in the

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT _____4_____

PAGE _____44/_____

arrangements for inspection in both Hong Kong and the PRC.   Mattel's request for costs is denied without prejudice.

Counsel are encouraged to meet and confer with the intent of reaching a stipulation regarding the supplementation of expert reports.  Absent such stipulation, at the appropriate time, the Court will entertain an ex parte application from any party regarding this issue.

### MATTEL'S EX PARTE APPLICATION TO STAY PENDING REVIEW OF DISCOVERY MASTER'S JANUARY 11, 2008 ORDER (DOCKET # 1628)

This application is GRANTED IN PART.  The Court sets the motion for hearing on February 11, 2008.  Opposition shall be filed no later than February 6, 2008; any reply shall be filed no later than February 8, 2008.  The Discovery Master's January 11, 2008, Order is stayed until the issuance of the Court's minute order regarding the February 11, 2008, hearing.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN                                  5

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT _____4_____

PAGE _____45_____

## NOTICE PARTY SERVICE LIST

Case No. __CV 04-09049 SGL(RNBx)__   Case Title __Carter Bryant v. Mattel, Inc.__

Title of Document __Minute Order of February 4, 2008__

| |
|---|
| Atty Sttlmnt Officer Panel Coordinator |
| BAP (Bankruptcy Appellate Panel) |
| Beck, Michael J (Clerk, MDL Panel) |
| BOP (Bureau of Prisons) |
| CA St Pub Defender (Calif. State PD) |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| Case Asgmt Admin (Case Assignment Administrator) |
| Catterson, Cathy (9th Circuit Court of Appeal) |
| Chief Deputy Admin |
| Chief Deputy Ops |
| Clerk of Court |
| Death Penalty H/C (Law Clerks) |
| Dep In Chg E Div |
| Dep In Chg So Div |
| Federal Public Defender |
| Fiscal Section |
| Intake Section, Criminal LA |
| Intake Section, Criminal SA |
| Intake Supervisor, Civil |
| PIA Clerk - Los Angeles (PIALA) |
| PIA Clerk - Riverside (PIAED) |
| PIA Clerk - Santa Ana (PIASA) |
| PSA - Los Angeles (PSALA) |
| PSA - Riverside (PSAED) |
| PSA - Santa Ana (PSASA) |
| Schnack, Randall (CJA Supervising Attorney) |
| Statistics Clerk |

| |
|---|
| US Attorneys Office - Civil Division -L.A. |
| US Attorneys Office - Civil Division - S.A. |
| US Attorneys Office - Criminal Division -L.A. |
| US Attorneys Office - Criminal Division -S.A. |
| US Bankruptcy Court |
| US Marshal Service - Los Angeles (USMLA) |
| US Marshal Service - Riverside (USMED) |
| US Marshal Service -Santa Ana (USMSA) |
| US Probation Office (USPO) |
| US Trustee's Office |
| Warden, San Quentin State Prison, CA |

✓ **ADD NEW NOTICE PARTY**
(If sending by fax, mailing address must also be provided)

Name: Ambassador Pierre-Richard Prosper

Firm:

Address (include suite or floor): P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

| **JUDGE / MAGISTRATE JUDGE (list below):** |
|---|
| |
| |
| |
| |

Initials of Deputy Clerk jh

EXHIBIT _____ 4 _____

PAGE _____ 46 _____

## NOTICE PARTY SERVICE LIST

**Case No.**   CV 04-09049 SGL(RNBx)   **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**   Minute Order of February 4, 2008

| |
|---|
| Atty Sttlmnt Officer Panel Coordinator |
| BAP (Bankruptcy Appellate Panel) |
| Beck, Michael J (Clerk, MDL Panel) |
| BOP (Bureau of Prisons) |
| CA St Pub Defender (Calif. State PD) |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| Case Asgmt Admin (Case Assignment Administrator) |
| Catterson, Cathy (9th Circuit Court of Appeal) |
| Chief Deputy Admin |
| Chief Deputy Ops |
| Clerk of Court |
| Death Penalty H/C (Law Clerks) |
| Dep In Chg E Div |
| Dep In Chg So Div |
| Federal Public Defender |
| Fiscal Section |
| Intake Section, Criminal LA |
| Intake Section, Criminal SA |
| Intake Supervisor, Civil |
| PIA Clerk - Los Angeles (PIALA) |
| PIA Clerk - Riverside (PIAED) |
| PIA Clerk - Santa Ana (PIASA) |
| PSA - Los Angeles (PSALA) |
| PSA - Riverside (PSAED) |
| PSA - Santa Ana (PSASA) |
| Schnack, Randall (CJA Supervising Attorney) |
| Statistics Clerk |

| |
|---|
| US Attorneys Office - Civil Division -L.A. |
| US Attorneys Office - Civil Division - S.A. |
| US Attorneys Office - Criminal Division -L.A. |
| US Attorneys Office - Criminal Division -S.A. |
| US Bankruptcy Court |
| US Marshal Service - Los Angeles (USMLA) |
| US Marshal Service -  Riverside (USMED) |
| US Marshal Service -Santa Ana (USMSA) |
| US Probation Office (USPO) |
| US Trustee's Office |
| Warden, San Quentin State Prison, CA |

| ✓ | *ADD NEW NOTICE PARTY* (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Hon. Edward A. Infante (Ret.)

Firm:

Address (*include suite or floor*):  Two Embarcadero Center, Suite 1500, San Francisco, CA  94111

*E-mail:

*Fax No.:

\* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |
| |

Initials of Deputy Clerk  jh

G-75  (03/07)                    NOTICE PARTY SERVICE LIST

EXHIBIT _____ 4

PAGE _____ 41

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

**PRIORITY SEND**
& ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES – GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                                    Date:  July 2, 2007

Title:   CARTER BRYANT -v- MATTEL, INC.
         AND CONSOLIDATED ACTIONS
=========================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                                      Theresa Lanza
        Courtroom Deputy Clerk                          Court Reporter

ATTORNEYS PRESENT FOR CARTER           ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                          John B. Quinn
                                       Brett Dylan Proctor
                                       Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:    | ENTERED                      |  | DOCKETED ON CM |
                             | CLERK, U.S. DISTRICT COURT    |  |                |
Dale M. Cendali              |                               |  |  JUL – 5 2007  |
Patricia Glaser              |      JUL – 5 2007             |  |                |
                             |                               |  | BY        164  |
PROCEEDINGS:   MINUTE ORDER  | CENTRAL DISTRICT OF CALIFORNIA|
                             | EASTERN DIVISION    BY DEPUTY |

       As set forth more fully herein, the Court hereby makes the following ruling regarding matters
heard on July 2, 2007:

(1)    The Court **GRANTS** Mattel's Motion re Trial Structure (docket #462);

(2)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Motion re Discovery Master's
       May 15, 2007, Order (docket #505);

(3)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Ex Parte Application

MINUTES FORM 90                                         Initials of Deputy Clerk ___
CIVIL – GEN                              1              Time: 01/15

EXHIBIT ___5___
                                                        608
PAGE ___48___

                                                        07|c2|c7

regarding date of production of documents (docket #545); and

(4)     The Court **DENIES** MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508).

(5)     The Court **DENIES** the parties' oral request for modification of pretrial and trial dates.

(1)     Motion re Trial Structure (docket #462)

        Previous orders of the Court specified that the claims and counterclaims brought in this action will be tried in two phases. The parties have agreed, in large part, to a refinement of the Court's mandate that all issues regarding the ownership of Bratz shall be tried in Phase 1. Where the parties differ is upon a proposal by Mattel that the Phase 1 be bifurcated into two sub-phases, with Mattel's copyright infringement claim (its first counterclaim in the 05-02727 case) and all Phase 1 damages being tried after all the other issues. Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the original drawings. This approach has the appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings. A finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the need for Phase 1(b).

        Accordingly, **THE COURT ADOPTS MATTEL'S MODIFICATION OF DEFENDANTS' PROPOSAL**, as set forth at 8-9 of its Memorandum Regarding Trial Structure, filed June 20, 2007. Phase 1(a) and Phase 1(b) (if necessary) will be tried to the same jury.

(2)     MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505), and
(3)     MGA's Ex Parte Application regarding date of production of documents (docket #545).

        The Discovery Master's May 15, 2007, Order compels production of documents regarding ink, paper, and chemical analysis and documents relating to unreleased MGA products. The order required that documents be produced no later than the end of May.

        The Court reviews the Discovery Master's orders under the "clearly erroneous" or "contrary to law" standard set forth in Fed. R. Civ. P. 72(a).

        The Discovery Master's order compels the production of only non-privileged documents. Therefore, MGA's arguments that the Discovery Master's order requires production of documents in violation of the attorney-client privilege are misplaced. If the only responsive documents are privileged, then MGA need not produce them, but must produce a privilege log.

        MGA acknowledges that it has raised an argument before the Court that was not raised

MINUTES FORM 90
CIVIL – GEN

2

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT _____5_____

PAGE _____49_____

before the Discovery Master, namely, that Mattel has failed to establish that there are "exceptional circumstances" that allow Mattel to "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B). MGA contends that the Discovery Master's order is contrary to law based on this standard, and that it was incumbent upon Mattel to raise it below. The Court disagrees. Mattel would be required to establish that exceptional circumstances existed if MGA objected to production on that grounds. A party seeking production cannot be expected to rebut all arguments that could possibly be raised by a party resisting production. MGA has not convinced the Court that the Discovery Master's failure to require Mattel to rebut an argument that was not raised by MGA is contrary to law.

MGA contends that the Discovery Master's order compelling production of documents regarding unreleased products is contrary to law. Relevant to that determination is a balancing test required to be applied by the Ninth Circuit when trade secrets are requested by a competitor in discovery. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) ("Specifically, in this case we must balance the risk to [defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [plaintiff] that protection of [defendant's] trade secrets [will] impair[] prosecution of [plaintiff's] claims.").

Here, the documents sought are of a particularly sensitive nature. They represent some of the most secretive documents maintained by MGA, and they are being ordered to be produced to MGA's fierce competitor. The Discovery Master recognized the sensitive nature of the documents and entered a strict protective order that severely limits access to those documents and that goes well beyond the normal "attorney eyes only" designation.

MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings. That is clear. However, MGA's argument attempts to limit the discovery to issues involved in Phase 1 of the trial. There has been no bifurcation of discovery.

Mattel correctly points out that these documents are relevant to a number of its other claims. Specifically, if they show unreleased products that are similar to Mattel's unreleased products, the documents would be highly probative of Mattel's misappropriation of trade secrets claim. Moreover, these documents could be relevant to Mattel's RICO claims based on alleged acts of criminal copyright infringement.

Balancing tests are inherently subjective and particularly susceptible to varying interpretation by individual judicial officers. This Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result. However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.

The parties have a long history regarding the production of documents ordered in the May 15, 2007, Order, which is set forth in their papers and which need not be repeated here. Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT _____5____

PAGE _____50__

later than two weeks after that date. Accordingly, the Court **ORDERS** that MGA complete the document production set forth in the Discovery Master's May 15, 2007, order no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which shall be produced no later than August 14, 2007.

Accordingly, the Court **GRANTS** in part MGA's motion re the Discovery Master's May 15, 2007, Order, extending the document production date as set forth above. The Motion is **DENIED** in all other respects.

Likewise, the Court **GRANTS** in part MGA's ex parte application re date of production of documents, extending the document production date as set forth above. The application is **DENIED** in all other respects.

(4)    MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508)

The Discovery Master's May 16, 2007, Order compelled the Rule 30(b)(6) depositions of witnesses on the topics of MGA's net worth, prior sworn statements, and ink, paper, and chemical analysis performed by MGA.

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters *known or reasonably available* to the organization.

Fed. R. Civ. P. 30(b)(6) (emphasis added). "The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation." Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz. 1991) (internal citation omitted). Another purpose of Rule 30(b)(6) is aptly described by the District Court for the District of Columbia:

> [The purpose of Rule 30(b)(6) is to] prevent[] serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying', which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself.

Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C. 1999) (citing the 1970 Advisory Committee Notes to Rule 30(b)(6)).

The Discovery Master's order compelling Rule 30(b)(6) depositions in the specified

MINUTES FORM 90
CIVIL – GEN

4

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT 5

PAGE 51

categories serve both these purposes and is not contrary to law.

Although MGA's net worth may not be known to it, MGA does not contend that the information is not readily available. That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law.

MGA likewise does not contend that information regarding prior sworn statements are not readily available to it. Although contending that this is not an appropriate subject for a Rule 30(b)(6) deposition, MGA fails to cite authority in support of that contention. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

The ink, paper, and chemical analysis topic is likewise a proper subject of a Rule 30(b)(6) deposition. To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this topic based on that blanket objection. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

Accordingly, the Court **DENIES** MGA's motion re the Discovery Master's May 16, 2007, Order.

(5)  Oral Request for Modification of pretrial and trial dates.

Although no motion or ex parte application on the subject was pending before the Court, the parties made an oral request at the hearing to continue certain pretrial and trial dates. A discussion ensued and it became apparent that no final agreement was reached by the parties regarding extending these dates. Accordingly, the Court **DENIES** the parties' oral request for modification of pretrial and trial dates. The Court will consider counsels' stipulation regarding extensions of those dates only where all counsel unqualifiedly stipulate to those dates. Until the scheduling order is modified by the Court, the dates previously set by the Court remain in effect. In addition, the Court is unlikely to entertain a continuance of the Phase 1 trial past April, 2008.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN

5

Initials of Deputy Clerk __jh____
Time: 01/15

EXHIBIT _____5_____

PAGE ____5 2____

RECEIVED

DEC 2 1 2004

1  ROBERT F. MILLMAN, Bar No. CA 062152
   DOUGLAS A. WICKHAM, Bar No. CA 127268
2  KEITH A. JACOBY, Bar No. 150233
   LITTLER MENDELSON
3  A Professional Corporation
   2049 Century Park East, 5th Floor
4  Los Angeles, CA 90067.3107
   Telephone:  310.553.0308
5  Facsimile:  310.553.5583

6  Attorneys for Defendant and Counter-Claimant
   CARTER BRYANT
7

8           UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC., a Delaware            Case No. CV 04-9059 NM (RNBx)
    Corporation,
12                                      HON. NORA M. MANELLA
                   Plaintiff,
13                                      NOTICE OF DEPOSITION OF
          v.                            PLAINTIFF AND COUNTER-
14                                      DEFENDANT MATTEL, INC.
    CARTER BRYANT, an individual;
15  and DOES 1 through 10, inclusive,   [F.R.C.P. 30(b)(6)]

16                 Defendant.           Date:      January 11, 2005
                                        Time:      9:30 a.m.
17                                      Place:     Littler Mendelson, PC
                                                   2049 Century Park East
18                                                 Suite 500, Los Angeles
                                                   California 90067
19  CARTER BRYANT, on behalf of
    himself, all present and former
20  employees of Mattel, Inc., and the
    general public,
21
                   Counter-Claimant,
22
          v.
23
    MATTEL, INC., a Delaware
24  Corporation,

25                 Counter-Defendant.

26

27  EXHIBIT _____ 6 _____

28  PAGE _____ 53 _____ 12/21.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

1   **TO PLAINTIFF MATTEL INC. AND ITS ATTORNEYS OF RECORD:**

2   PLEASE TAKE NOTICE that Defendant and Counter-Claimant Carter Bryant

3   ("Bryant") in the above-captioned matter shall take the deposition of the Person(s)

4   Most Knowledgeable from Plaintiff and Counter-Defendant Mattel, Inc. ("Plaintiff" or

5   "Mattel") at the offices of Littler Mendelson, 2049 Century Park East, Fifth Floor, Los

6   Angeles, California 90067, beginning at 9:30 a.m. on January 11, 2005. The

7   deposition shall continue from day to day excluding Saturdays, Sundays and holidays,

8   until completed. The deposition will be taken before an officer or other person duly

9   authorized to administer oaths and shall be recorded by stenographic, sound and visual

10   (videotape), and real-time transcription means.

11   Pursuant to Rule 30(b)(6), the deponent is directed to designate one or more

12   officers, directors, managing agents or other individuals able to fully and completely

13   testify on its behalf concerning the matters listed in Exhibit "A" attached hereto.

14

15   Dated: December 21, 2004                Respectfully submitted,

16                                            ROBERT F. MILLMAN
17                                            DOUGLAS A. WICKHAM
                                             KEITH A. JACOBY
18

19

20                                            DOUGLAS A. WICKHAM
21                                            LITTLER MENDELSON
                                             A Professional Corporation
22                                            Attorneys for Defendant
                                             and Counter-Claimant
23                                            CARTER BRYANT

24

25

26

27                   EXHIBIT _____6_____

28                   PAGE _____54_____

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

1.

EXHIBIT A

EXHIBIT _____ 6 _____

PAGE _____ 55 _____

## **EXHIBIT A**

### Definitions

1.     "You," "Your" and "Mattel" refer to Plaintiff Mattel, Inc. and its officers, directors, agents, employees and all individuals acting under its direction or control or on its behalf.

2.     "Complaint" means the complaint filed by Mattel against Bryant in the Superior Court of the State of California for the County of Los Angeles dated April 27, 2004.

3.     "Communication" means any oral or written transmittal or receipt of words or information, by whatever manner or means, and regardless of how or by whom the communication was initiated and shall include any contact between two or more persons, including but not limited to written contact by such means as letter, memorandum, telegram, telex, email, facsimile or any Document, and oral contact by such means as face-to-face meeting or telephone.

4.     "Concerning" means relating to, referring to, describing, discussing, mentioning, evidencing, or constituting.

5.     "Contract" and/or "Agreement" mean the contract or agreement itself, and any drafts thereof, together with all schedules, exhibits, attachments or addenda thereto and any amendments of the foregoing.

6.     "Document(s)" means all "WRITINGS" and "RECORDINGS," including, but not limited to, writings and records of every type and description including, but not limited to, notes (including notes made contemporaneously with meetings or conversations or thereafter), books, records, letters, telegrams, memoranda, electronic mail messages (including electronic mail messages stored on network or individual servers, hard drives, back up tapes or other storage media, collectively referred to as "e-mail"), reports, studies, speeches, calendars or diary entries, tabulations, data compilations, drawings, designs, sketches, paintings, artwork, graphs, charts, photographs, computer disks, backup tapes and diskettes and

2.

EXHIBIT     6

PAGE     56

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

1    other data compilations from which information can be obtained or tabulated through

2    detection devices into reasonably usable forms. "Document" also includes

3    reproductions or film impressions of any of the aforementioned documents, tape

4    recordings and copies of documents, which are not identical duplicates of the originals

5    and copies of all documents of which the originals are not in the possession, custody

6    or control of Mattel.

7         7.    "Relate To" and "Relating To" mean in any way directly or

8    indirectly, concerning, referring to, pertaining to, mentioning, discussing, describing,

9    disclosing, confirming, supporting, evidencing, representing, or being connected with

10   a stated subject matter or any aspect thereof.

11        8.    "And" and "Or" mean either the conjunctive or the disjunctive as context

12   may require so that the meaning of the term is inclusive rather than exclusive.

13        9.    "Person" or "Persons" means any or all entities including, without

14   limitation, any or all individuals, single proprietorships, associations, companies,

15   firms, partnerships, joint ventures, corporations, employees or former employees, or

16   any other business, governmental or labor entity, and any division, departments or

17   other units thereof.

18        10.   "MGA" means and refers to MGA Entertainment, Inc., formerly known

19   as ABC International Traders, Inc. dba MGA Entertainment and Micro Games of

20   America, Inc., and each of its officers, directors, agents, and employees or any other

21   person acting on its behalf.

22        11.   "Bryant" means and refers to Defendant Carter Bryant and each of his

23   agents, employees or any other person acting on his behalf.

24

25

26

27   EXHIBIT _____ 6 _____

28   PAGE _____ 57

3.

1      ## DESIGNATED SUBJECTS OF TESTIMONY AT PERSONS MOST
2      ## KNOWLEDGEABLE DEPOSITION

3      1.   All Contracts, and the terms thereof, that You contend You had with
4      Bryant.

5      2.   All contractual and non-contractual duties and obligations Bryant owed
6      or performed for Mattel during his employment with Mattel, and thereafter.

7      3.   All of Bryant's acts or omissions which breached any contractual or non-
8      contractual duty or obligation Bryant owed to Mattel.

9      4.   All of Bryant's acts or omissions which breached any duties or
10     obligations imposed by the Conflict of Interest Questionnaire and/or the Employee
11     Confidential Information and Inventions Agreement.

12     5.   All Mattel proprietary or confidential information Bryant had access to
13     during his employment with Mattel.

14     6.   All of Bryant's acts or omissions pursuant to which he aided, assisted
15     and worked for a competitor of Mattel while employed by Mattel from 1995 to the
16     present.

17     7.   The services and property belonging to Mattel that Bryant provided to
18     any third party, including MGA, from 1995 to the present.

19     8.   All acts, omissions, circumstances and/or evidence showing, or tending
20     to show, that any and all products of MGA, including but not limited to, any and all
21     products sold under the trade name "Bratz," originated from, were derived from, are
22     based upon, are copied or incorporated from, or are substantially or confusingly
23     similar to, any design, research and developmental work, work in progress, or product
24     owned at any time by Mattel or created by any Mattel employee, including but not
25     limited to Bryant, or by any independent contractor during the time that such Person
26     was working for Mattel.

27     9.   All facts and circumstances showing the conception, origination,
28     creation, development and/or reduction to practice of "Toon Teens."

4.

LITTLER MENDELSOH
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

EXHIBIT _____ 6

1     10.   All facts and circumstances showing the conception, origination,

2   creation, development and/or reduction to practice of "My Scene Barbie" and each of

3   the other "My Scene" characters or dolls.

4     11.   All facts and circumstances showing the conception, origination,

5   creation, development and/or reduction to practice of "Diva Starz."

6     12.   All facts and circumstances showing the conception, origination,

7   creation, development and/or reduction to practice of "Mini Diva Starz."

8     13.   All acts, omissions, circumstances and/or evidence showing, or tending

9   to show, that any product sold at any time by MGA under the trade name "Bratz"

10   originated from, is derived from, is based on, copies, incorporates, or is substantially

11   or confusingly similar to any design or work product owned at any time by Mattel or

12   created by Bryant during the time Bryant was working for Mattel.

13     14.   All acts, omissions, circumstances and/or evidence showing, or tending

14   to show, that Mattel has been damaged or suffered any financial or other loss by any

15   act or omission of Bryant.

16     15.   All acts, omissions, circumstances and/or evidence showing, or tending

17   to show, when Mattel first became aware of any alleged wrongful conduct of Bryant.

18     16.   All acts, omissions, circumstances and/or evidence showing, or tending

19   to show, the manner and mode by which Mattel first became aware of any alleged

20   wrongful conduct of Bryant.

21     17.   All acts, omissions, circumstances and/or evidence showing, or tending

22   to show, when You first became aware that Bryant was involved in the conception,

23   creation, design and/or reduction to practice of Bratz.

24     18.   All acts, omissions, circumstances and/or evidence showing, or tending

25   to show, how You first became aware that Bryant was involved in the conception,

26   creation, design and/or reduction to practice of Bratz.

27     19.   All acts, omissions, circumstances and/or evidence showing, or tending

28   to show, all actions taken by You, including but not limited to all circumstances

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

5.

EXHIBIT ___6___

PAGE ___59___

1  surrounding any investigations you have undertaken, relating to Bratz after You

2  learned that Bryant was involved in the conception, creation, design and/or reduction

3  to practice of Bratz.

4      20.    All acts, omissions, circumstances and/or evidence showing, or tending

5  to show, all actions taken by You, including but not limited to all circumstances

6  surrounding any investigations You have undertaken, relating to Bryant and any act or

7  omission of Bryant that breached any contractual or non-contractual duty or obligation

8  Bryant owed to Mattel.

9      21.    All Communications regarding Bryant's involvement in the conception,

10  creation, design and/or reduction to practice of Bratz from 1998 until the date of the

11  filing of the Complaint.

12      22.    All acts, omissions, circumstances and/or evidence showing, or tending

13  to show, that Bryant misappropriated Mattel property, including without limitation

14  intellectual property, at any time.

15      23.    All acts, omissions, circumstances and/or evidence showing, or tending

16  to show, that Bryant owed fiduciary duties to, or occupied a fiduciary relationship

17  with, Mattel.

18      24.    All acts, omissions, circumstances and/or evidence showing, or tending

19  to show, that prior to October 21, 2000, Mattel had any toy concept or project which

20  had not yet been offered for sale to the public, including without limitation, any toy

21  concept or project in the pre-production or development phase, that Bryant improperly

22  copied, replicated, borrowed or otherwise used in whole, or in any part, during or after

23  Bryant's employment with Mattel.

24      25.    All measures taken by Mattel including, without limitation, any legal

25  action brought or threatened to be brought (including in demand letters or other

26  notices), from 1998 to the present to achieve, or attempt to achieve, compliance with

27  or adherence to any or all of the terms and conditions of Mattel's "Employee

28  Confidential Information and Inventions Agreement" (including all forms or versions

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

EXHIBIT _____ 6

PAGE _____ 60

1   of that agreement) from 1998 to the present, and/or Mattel's "Conflict of Interest

2   Questionnaire" (including all forms or versions of that agreement) from 1998 to the

3   present.

4        26.    Communications, discussion, meetings, analyses and the decision-

5   making process regarding measures taken or contemplated by Mattel including,

6   without limitation, any legal action brought or threatened to be brought (including

7   demand letters or other notices) against Bryant including, without limitation, the filing

8   of the Complaint.

9        27.    Mattel's electronic mail system's ability to retrieve electronic mail

10  messages from any Mattel server, Mattel electronic mail archive tape, or hard drive

11  networked to the Mattel computer network, as that network existed from January 1998

12  to the present.

13       28.    Mattel's policies or procedures or practice in effect or use, from January

14  1998 to the present, regarding Document retention or destruction (including with

15  respect to e-mails), including without limitation, e-mail backup procedures and

16  policies; location of saved or backed-up e-mails, procedures for accessing saved or

17  backed-up e-mails; policies regarding deletion of e-mails; and Mattel's document

18  retention or destruction policies (including with respect to emails) when Mattel had

19  notice of a potential claim or lawsuit in each of the years 1998, 1999, 2000, 2001,

20  2002, 2003 and 2004.

21       29.    Mattel's policies, procedures and practices in effect or use, at any time

22  from January 1, 1998 to the present, regarding Document retention, deletion and

23  destruction (including with respect to electronic documents and e-mail), including

24  without limitation, e-mail backup policies, procedures and practices in effect or use;

25  location of saved or backed-up e-mails, procedures for accessing saved or backed-up

26  e-mails; policies, procedures and practices in effect or use regarding deletion of e-

27  mails; and policies, procedures and practices in effect or use regarding retention of e-

28  mails.

EXHIBIT _____ 6

7.

PAGE _____ 61

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

1      30.    All hardware and software used by Mattel at any time from January 1,

2    1998 to the present for Mattel's e-mail systems including, without limitation, all on-

3    site and off-site back-up computer systems and files, exchange servers and computer

4    storage space.

5      31.    The ability of Mattel to retrieve e-mail messages from any server, disk,

6    drive, archive disk, tape, server or drive, storage disk, tape server or drive, individual

7    computer hard drive, or any hard drive or server networked to any Mattel computer

8    network, at any time from January 1, 1998 to the present.

9      32.    Mattel's policies, procedures and practices in effect or use, at any time

10    from January 1, 1998 to the present, regarding Document retention, deletion or

11    destruction (including with respect to e-mails and other electronic documents) when

12    Mattel is aware of a potential claim or lawsuit in which it may be involved.

13      33.    Mattel's policies, procedures and practices in effect or use, at any time

14    from January 1, 1998 to the present, regarding Document retention, deletion or

15    destruction (including with respect to e-mails and other electronic documents) after

16    Mattel began considering or analyzing any potential claim or lawsuit against MGA or

17    Bryant regarding "Bratz" or other claim of any nature.

18      34.    Mattel's policies, procedures and practices in effect or use, at any time

19    from January 1, 1998 to the present, regarding Document retention, deletion or

20    destruction (including with respect to e-mails and other electronic documents) after

21    Mattel began investigating facts pertaining to Bryant's involvement with MGA or

22    "Bratz" or any claim of any nature, actual or potential, against Bryant.

23      35.    Mattel's policies, procedures and practices in effect or use, at any time

24    from January 1, 1998 to the present, regarding Document retention, deletion or

25    destruction  including with respect to e-mails and other electronic documents) after

26    Mattel began investigating facts pertaining to the relationship, if any, between

27    Bryant's involvement with MGA or "Bratz" and work or projects that Bryant may

28    have seen during his employment with Mattel.

EXHIBIT _____ 6

8.

PAGE _____ 62

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

1    36.    Files (including human resources and legal files and files kept or

2    maintained at business locations and personal residences), locations, offices,

3    computers (including business, lap top and residence computers), warehouses, records

4    centers, file rooms, archives, servers, storage facilities, back up or storage tapes, and

5    any and other method and/or location for maintaining or storing Documents that were

6    searched or reviewed by Mattel when searching for Documents responsive to Bryant's

7    Request for Identification and Production of Documents and Tangible Things (Set

8    One) including, without limitation, all efforts made and steps undertaken when

9    searching for and producing Documents in a tangible, electronic, magnetic or any

10   other form.

11   37.    The facts and circumstances surrounding the filing of the copyright

12   registration for "Toon Teens, produced by Mattel as Document Control Nos.

13   M0012564-65.

14   38.    The development of "Toon Teens," including Your decision to not offer

15   "Toon Teens" for sale to the public.

16   39.    What actions, if any, You took with respect to the "Toon Teens" project

17   after You decided not to offer this project for sale to the public.

18   40.    The current status of the "Toon Teens" project.

19   41.    All statements of Mattel or ex-Mattel employees in the July 2003 Wall

20   Street Journal article (produced by Mattel to Bryant in the present case), including,

21   without limitation, "Inside Mattel, some are convinced the Bratz borrow liberally from

22   a Mattel project that was scrapped at the testing stage in 1998"; "But the Bratz'

23   oversized heads -- with their pursed lips and cartoonist eyes -- are 'virtually identical'

24   to the heads of the dolls her team created"; "Anyone who passed by [Lily Martinez's]

25   cubicle would see the picture up on the wall"; and "The big heads, the big eyes, the

26   big feet -- they were all the same [as the Bratz]."

27   42.    Documents produced by Mattel as Document Control Nos. M0012567-

28   71.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

9.

EXHIBIT _____ 6 _____

PAGE _____ 63 _____

1    43.    Documents produced by Mattel as Document Control Nos. M0012572-

2    78.

3    44.    Documents produced by Mattel as Document Control Nos. M0012579-

4    86.

5    45.    Documents produced by Mattel as Document Control Nos. M0012587.

6    46.    Documents produced by Mattel as Document Control Nos. M0012594-

7    617 and Nos. M0001558-81.

8    47.    Mattel's phone log system, and the maintenance, storage and ability to

9    retrieve phone logs from an individual extension, such as the log produced by Mattel

10   as Document Control Nos. M0001808-24, including Bryant's phone logs for

11   extension 6099 for October 2000.

12   48.    All board of director's meeting minutes that evidence, relate or refer to

13   Bryant from January 1998 to the present.

14   49.    All versions of the "Employee Confidential Information and Inventions

15   Agreement" used by Mattel since January 1, 1995 including, without limitation, the

16   "Employee Confidential Information and Inventions Agreement" produced by Mattel

17   as Document Control Nos. M0001638-39 and the "Employee Confidential

18   Information and Inventions Agreement" attached to the Complaint as Exhibit "A."

19   50.    All versions of the "Conflict of Interest Agreement" used by Mattel since

20   January 1, 1995 including, without limitation, the "Conflict of Interest Agreement"

21   produced by Mattel as Document Control Nos. M0001636-37 and the "Conflict of

22   Interest Agreement" attached to the Complaint as Exhibit "B."

23   51.    The "Proprietary Information Checkout" form produced by Mattel as

24   Document Control No. M0001597.

25   52.    All forms or other documents which Mattel has requested prospective

26   and actual employees to sign since January 1, 1995.

27   53.    All recording and tracking of the time spent by Bryant while working on

28   various Mattel projects.

10.

EXHIBIT _____ 6

PAGE _____ 64

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

1    54.    Bryant's "Job Summary" report, produced by Mattel as Document

2    Control Nos. M001667-68.

3    55.    All acts, omissions, circumstances and/or evidence showing, or tending

4    to show, that Bryant made affirmative misrepresentations to any and all Mattel

5    employees upon his departure from Mattel.

6    56.    Bryant's "Exit Interview Report" dated October 19, 2000, produced by

7    Mattel as Document Control No. M0001654.

8

9

10

11

12

13    Los_Angeles:388196.2 028307.1010

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

11.

EXHIBIT _____ 6

PAGE _____ 65

## PROOF OF SERVICE BY MESSENGER

I am employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is Allstar Messenger Service, 345 South Figueroa Street, Suite 305, Los Angeles, California 90071.  On December 21, 2004, I personally served:

**NOTICE OF DEPOSITION OF PLAINTIFF AND COUNTER DEFENDANT MATTEL, INC.**

by delivering copies thereof to:

Michael T. Zeller, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

Diana M. Torres, Esq.
O'Melveny & Myers LLP
400 S. Hope Street, 10th Floor
Los Angeles, CA 90071

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on December 21, 2004, at Los Angeles, California.

_Marcus Robinson_

MARCUS ROBINSON

Los_Angeles:388357.1 028307.1010

EXHIBIT ____6____

PAGE ____66____

PROOF OF SERVICE

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                          EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12          Plaintiff,

13      v.                                 Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15          Defendant.                     **ORDER GRANTING IN PART AND
                                           DENYING IN PART MGA'S MOTION
16                                         TO COMPEL DOCUMENTS
                                           RESPONSIVE TO FIRST SET OF
17                                         REQUESTS FOR PRODUCTION OF
                                           DOCUMENTS DATED NOVEMBER
18  CONSOLIDATED WITH                      22, 2006**
    MATTEL, INC. v. BRYANT and
19  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
20                                         I. INTRODUCTION

21      On April 13, 2007, MGA Entertainment, Inc. ("MGA") submitted a motion to compel

22  Mattel, Inc. ("Mattel") to produce documents responsive to MGA's First Set of Requests for

23  Production of Documents dated November 22, 2006 (the "requests"), which generally seeks

24  documents that MGA contends are relevant to its Lanham Act and unfair competition claims.  On

25  April 25, 2007, Mattel submitted its opposition brief, and on May 2, 2007, MGA submitted a

26  reply brief.  The matter was heard via telephonic conference on May 11, 2007.  Having

27                                         EXHIBIT _____7_____

28                                         PAGE _____67_____
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                    1

considered the motion papers and comments of counsel at the hearing, MGA's motion to compel is granted in part and denied in part.

## II. BACKGROUND

There are two themes underlying MGA's claims for unfair competition against Mattel. First, MGA alleges that Mattel has intentionally "serially imitated and copy-catted the look of MGA products, trade dress, trademarks, themes, ideas, advertising and packaging, including for the 'Bratz' line of dolls," to dilute MGA's brand, create customer confusion, and unfairly stifle competition. MGA's Complaint at ¶¶9, 65. Second, MGA alleges, on information and belief, that "Mattel has intimidated, coerced and threatened retailers, licensees, suppliers and others in the industry – both in the U.S. and internationally – in order to inhibit and stifle MGA's ability to compete with Mattel and to prevent MGA from obtaining licensees, contracts and supplies for its products." Id. at ¶9.

### The Alleged Copy-catting

Mattel's alleged serial copycatting "began with the 'Bratz' dolls themselves, but quickly extended to MGA's packaging, themes, accessories, advertising and even other product lines." Id. at ¶33. Mattel allegedly "designed its 'My Scene' dolls to evoke the unique and distinctive look of the 'Bratz' – also with disproportionately oversized heads, artfully made-up almond-shaped eyes, large, overly-lined and lipsticked lips, trendy, hip clothes and hair styles, and over-sized feet." Id. at ¶34. Mattel also allegedly "systematically proceeded to modify the 'My Scene' dolls since their original release, particularly their eyes, to increase their similarity to 'Bratz' more and more over time." Id.

Further, Mattel allegedly "modified its 'My Scene' packaging, and the manner in which the dolls are displayed, to more closely mimic the packaging, trade-dress and overall look and total image of MGA's 'Bratz.'" Id. at ¶41. For example, Mattel allegedly changed its packaging "to the open and transparent style of the 'Bratz' packaging." Id. at ¶43. Mattel also allegedly hung its packaging and product display to "look even more closely and confusingly similar to

EXHIBIT _____7_____

PAGE _____68_____

2

1 | MGA's packaging and *'tout ensemble.'* " Id. at ¶45. Mattel also allegedly "discarded its

2 | traditional rectangular shaped box, and like 'Bratz', adopted an unusual, non-rectangular shaped

3 | box." Id. at ¶46. Mattel also allegedly "adopted the 'flying banner' ribbon-style slogan running

4 | across the middle of the box, similar to that used on the 'Bratz' packaging." Id.

5 |      In addition to the packaging changes, Mattel allegedly copied "MGA's practice of

6 | regularly releasing new dolls in connection with a theme – but not just any theme, often MGA's

7 | theme." Id. at ¶47. For example, when MGA released its "Wintertime Wonderland" theme,

8 | Mattel allegedly released "Chillin Out." Id. at ¶48. Mattel also allegedly imitated Bratz

9 | accessories and related products in order to create consumer confusion in the marketplace. Id. at

10 | ¶52. Further, Mattel allegedly "began running television commercials for its 'My Scene' dolls

11 | bearing a remarkable similarity to 'Bratz' commercials, combining live action with animated

12 | sequences set to similar sounding pop music and lyrics." Id. at ¶51. MGA alleges that Mattel's

13 | conduct described above "is a calculated and intentional effort unquestionably designed to trade

14 | off of MGA's hard work and goodwill, create confusion in the marketplace, steal MGA's thunder

15 | and momentum, and dilute and blur away the novelty and distinctiveness of MGA's products."

16 | Id. at ¶54.

17 |      Further, MGA alleges that when it "came out with a 'Bratz' 'Funky Fashion Makeover

18 | Head,' Mattel came out with a confusingly similar – indeed, practically identical – 'My Scene'

19 | styling head." Id. at ¶55. Mattel also allegedly "used a portion of the Bratz doll's now-famous

20 | trademarked tag line 'The Girls With a Passion for Fashion' on Mattel's website for its 'Diva

21 | Starz' dolls, asking its website users: 'Do you have a passion for fashion?'" Id. at ¶58.

22 |      MGA also alleges that Mattel recently came out with a confusingly similar line of "My

23 | Scene" plush pets that have the distinctive look of MGA's "Bratz" line. Id. at ¶59. In addition,

24 | Mattel allegedly "chose to package its pets the same way that MGA packaged its 'Bratz Petz',

25 | sitting in an open box, with no top and with partial side panels that slope from a narrow front

26 | panel to a higher back panel." Id. at ¶60. MGA alleges that the similarity of the "My Scene" pets

27 |

28 | Bryant v. Mattel, Inc., CV-04-09049 SGL (RNBx)

EXHIBIT _____ 7 _____

PAGE _____ 69 _____

3

1   and the "Bratz Petz" has confused sophisticated retailers who have mistakenly merchandised the

2   products together. Id. at ¶61.

3       MGA alleges that Mattel's television commercials and "My Scene" products have become

4   so confusingly similar to MGA's commercials and products that advertising executives have

5   expressed concern. Id. at ¶62. MGA also alleges that the press has taken notice of Mattel's

6   alleged attempts to confuse consumers. Id. at ¶63. Further, MGA alleges that some customers

7   have contacted MGA seeking to purchase "My Scene" dolls. Id. at ¶64.

8       MGA alleges that Mattel's conduct has reached beyond "Bratz" to include other new

9   MGA toy lines. Id. at ¶67. For example, Mattel allegedly modeled its "Wee 3 Friends" line of

10   dolls and packaging on MGA's "4-Ever Best Friends" line. Id. at ¶68. Mattel also allegedly

11   modeled its "Little Mommy Potty Training Baby Doll" on MGA's "Mommy's Little Patient." Id.

12   at ¶69. Mattel also allegedly revamped and renamed one of its "Hot Wheels" lines with the

13   "AcceleRacerS" logo based upon MGA's "AlienRacers" radio controlled racing vehicles. Id. at

14   ¶70.

15                             Additional Allegedly Anti-Competitive Conduct

16       MGA alleges that Mattel has engaged in additional allegedly anti-competitive conduct,

17   including "sending threatening letters to several of its former employees who now work for MGA

18   warning them not to disclose *even publicly available information* about Mattel, including the

19   names and positions of Mattel employees." Id. at ¶75 (emphasis in original). Mattel has also

20   allegedly "warned a number of companies, including the biggest publishing entity in the United

21   Kingdom, not to license MGA products, or risk retribution." Id. at ¶76. MGA alleges that it has

22   lost valuable licensing opportunities as a result of Mattel's conduct. Id.

23       MGA also alleges that "Mattel has used similar intimidation to pressure distributors and

24   retailers, particularly in foreign countries, not to distribute 'Bratz', to reduce shelf and display

25   space for 'Bratz' and to place 'Bratz' in unfavorable locations at retail outlets." Id. at ¶77. MGA

26   further alleges that "[w]hen MGA faced a shortage of doll hair in October 2002, MGA is

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 7 _____

PAGE _____ 70 _____

4

1   informed and believes that the reason for that shortage was that Mattel had locked MGA out by

2   buying up the supply from the two main hair supply companies." Id. at ¶78.

3      MGA also alleges that Mattel manipulated the retail market. More specifically, MGA

4   alleges that "Mattel merchandisers have been caught tampering with MGA's retail displays,

5   replacing favorably located MGA merchandise with Mattel merchandise instead." Id. at ¶79.

6   MGA further alleges on information and belief that "Mattel has falsely told a major United States

7   retailer that MGA was giving another major United States retailer below-market pricing and

8   falsely told a United Kingdom retailer that MGA was discontinuing one of its lines, in order to

9   make such line less attractive to buyers and thereby attempt to increase sales of the competitive

10  Mattel product and improve its own sales, at MGA's expense." Id.

11     Next MGA alleges on information and belief that NPD Funworld ("NPD"), the leading

12  supplier of sales statistics in the toy industry, terminated MGA's subscription ostensibly for

13  misusing NPD data and that "the termination was the result of pressure from Mattel." Id. at ¶¶80-

14  85. MGA also alleges on information and belief that Mattel pressured NPD into changing certain

15  product classifications for "Bratz" products to manipulate the data and preserve Mattel's market

16  share rankings in the "fashion doll" category. Id. at ¶86.

17     MGA further alleges on information and belief that Mattel used its influence as a major

18  contributor to the Children's Advertising Review Unit ("CARU"), which is a unit of the Council

19  of Better Business Bureaus, to "place onerous restrictions on MGA advertisements, and require

20  MGA to amend aspects of commercials that have gone unchallenged in other parties'

21  commercials." Id. at ¶89. As a result of CARU's restrictions, MGA allegedly incurred

22  unnecessary costs for reshooting and producing or re-editing its commercials. Id. at ¶90.

23     MGA also alleges on information and belief that Mattel's subsidiary, Fisher Price,

24  "orchestrated" a change to the selection process for TIA's "Toy-of-the-Year Awards," which

25  allegedly resulted in a Fisher Price toy beating out "BRATZ Formal Funk Super Stylin' Runway

26  Disco." Id. at ¶¶92-96. MGA also alleges on information and belief that one year "Mattel was

27

28

EXHIBIT _____ 7

PAGE _____ 71

5

1   instrumental in attempting to keep MGA from participating as a sponsor in the 'Kids' Choice

2   Awards.'" Id. at ¶97.

3       As a result of Mattel's alleged conduct described above, MGA has allegedly suffered, and

4   unless abated, will continue to suffer lost sales, lost licensing fees, lost contracts, lost

5   relationships, lost business opportunities and other damages. Id. at ¶100. MGA also alleges that

6   its ability to enter new markets and product lines has been hampered and delayed. Id.

7   Furthermore, MGA alleges that "[i]ts production costs have increased, its reputation and

8   relationships with important players in the industry have been negatively impacted, the value of

9   its business has been diminished, and its ability to attract, hire and retain employees has been

10   affected." Id. Based upon the foregoing, MGA asserts claims for (1) false designation of origin

11   or affiliation in violation of 15 U.S.C. §1125(a); (2) unfair competition in violation of 15 U.S.C.

12   §1125(a) and unfair competition and unfair business practices in violation of Cal. Bus. & Prof.

13   Code §17200 et seq. and California common law; (3) dilution in violation of 15 U.S.C. §1125(c),

14   Cal. Bus. & Prof. Code §14330 and California common law; and (4) unjust enrichment.

15   <u>MGA's First Set of Requests for Production of Documents</u>

16       On November 22, 2006, MGA propounded one hundred fifteen (115) document requests

17   seeking discovery regarding, among other things: (a) Mattel's alleged copycatting efforts and

18   activities with respect to Bratz and other MGA product lines; (b) anti-competitive business

19   practices allegedly carried out by Mattel; and (c) any similar or related activities. In response,

20   Mattel objected to many requests primarily on the grounds that they were overly broad and

21   unduly burdensome. Mattel agreed, however, to produce documents responsive to many of the

22   requests.

23       The parties met and conferred in person on March 9, 2007. MGA's counsel demanded

24   that Mattel withdraw all objections based on relevance. Alger Decl. in Support of Mattel's

25   Opposition at ¶7. Mattel's counsel responded that Mattel was producing responsive documents

26   and would continue to produce responsive documents, but had concerns over the "lack of focus

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT _____ 7 _____

PAGE _____ 72 _____

6

1  and infinite scope" of MGA's document requests. Id. Mattel's counsel suggested that MGA

2  narrow the requests to "those products, retailers, licensees, and time frames that MGA has put at

3  issue in its Complaint and response to interrogatories." Id. MGA's counsel, however, rejected

4  the proposal. Id.

5      A few days later, counsel for MGA sent Mattel's counsel a letter offering several

6  suggestions for limiting the requests. Glad Decl. in Support of MGA's Motion, Ex. 1. In

7  particular, MGA stated that "it would be amenable to certain limitations on the number and

8  identities of custodians whose files must be searched, so long as Mattel is willing to accept

9  reciprocal accommodations for MGA's own document review." Id. Mattel did not respond to the

10  letter, and the instant motion ensued.

11                               III. STANDARDS

12      Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

13  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

14  party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not

15  permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

16  2004) ("District courts need not condone the use of discovery to engage in 'fishing

17  expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

18  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

19  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

20  the phrase "subject matter involved in the pending action," were intended to target discovery that

21  swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

22  litigate the issues presented by the pleadings but to develop new claims or defenses.). Further,

23  pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit discovery where "the burden or

24  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

25  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

26  the litigation, and the importance of the proposed discovery in resolving the issues."

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 7 _____

PAGE _____ 73 _____

7

1                                    IV. DISCUSSION

2      A. General Objections

3              MGA contends that Mattel has improperly withheld documents based on three generalized

4      objections. First, MGA contends that Mattel has asserted an objection based upon relevance to

5      requests that are not related to facts specifically alleged in MGA's complaint. MGA contends the

6      objection is improper because it essentially grafts a heightened pleading standard onto discovery

7      requests, is inconsistent with the standard for discovery set forth in Rule 26(b), Fed.R.Civ.P., and

8      goes against the very purpose of discovery. MGA denies "fishing" for new claims, contending

9      that it is seeking discovery tending to support or refute existing claims.

10             Second, MGA contends that Mattel has improperly refused to produce "documents related

11     to MGA's BRATZ dolls unless the documents are 'in the context' of Mattel's BARBIE or MY

12     SCENE products." MGA's Motion at 9:10-11. MGA contends that all of the documents related

13     to Bratz that it seeks are relevant, regardless of whether they refer to or contemplate Barbie or My

14     Scene. In particular, MGA contends that documents related to Bratz, even if they do not refer to

15     Barbie or My Scene, are relevant to its claims that (1) Mattel has exerted pressure on licensees not

16     to license Bratz products; (2) Mattel has exerted pressure on retailers or distributors not to

17     distribute Bratz products; (3) Mattel has tampered with Bratz displays; and (4) Mattel

18     intentionally copied Bratz products.

19             Third, MGA contends that Mattel has improperly limited its production of My Scene

20     documents to only those documents related to the specific acts of product and packaging

21     infringement identified in MGA's complaint. MGA contends that it is entitled to far more,

22     including documents concerning potential acts of infringement not mentioned in the complaint

23     and documents concerning the development of the My Scene product line from inception of this

24     suit to the present. In particular, MGA contends that documents concerning the current

25     development of My Scene may tend to show continuing infringement, and therefore are relevant

26     to prove that Mattel's conduct is willful.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 7 _____

PAGE _____ 74 _____

8

1    Mattel contends that it has produced documents in response to many of MGA's requests,

2    and will continue to do so. Mattel objects, however, to those requests that require Mattel to

3    produce virtually every document, anywhere in the world, that mentions MGA, Larian, Bratz, or

4    any other MGA product. Mattel contends that MGA is engaging in an improper fishing

5    expedition, casting its requests so broadly as to require production of documents relating to

6    products and entire product lines that are irrelevant to the suit. Mattel also contends that the

7    requests are overbroad because they seek documents about subjects such as quality and pricing

8    which do not appear anywhere in MGA's pleadings. Id. Furthermore, Mattel contends that

9    MGA's requests are not linked in any manner to MGA's claims in the suit and do not reference

10   any particular alleged wrongdoing by Mattel.

11   Mattel also contends that responding to MGA's document requests would impose a

12   considerable, unjustifiable burden on Mattel. Mattel emphasizes that it is a large company, with

13   over 140 subsidiaries and affiliates in approximately 43 different countries. Mattel represents that

14   it has over 5,000 employees in the United States and more than 25,000 employees at subsidiaries

15   and affiliates worldwide.

16   Mattel also represents that its products are sold in thousands of stores. It represents that it

17   deals with Wal-Mart, Target, K-Mart, and Toys "R" Us on a daily basis, and that these four

18   retailers have more than 4,500 stores in the United States. Mattel also represents that it deals with

19   many hundreds more retailers domestically and overseas. Further, Mattel represents that it has

20   relationships with more than 1,400 licensees and licensors.

21   Mattel also represents that the toys it produces vary widely, including collectible card

22   games, electronic handheld devices, toy cars, and the Barbie doll line. Mattel asserts that it

23   introduces annually more than 2,000 different types of toys, dolls and other products in more than

24   150 nations throughout the world. Mattel asserts that many products often involve the creation of

25   many categories of documents relating to design, marketing, consumer and market research,

26   planning, engineering, cost, manufacturing, distribution, sales and finance. Mattel represents that

27

28

EXHIBIT _____ 7

PAGE _____ 75

9

1   these types of documents are stored on Mattel's over 800 computer servers worldwide, and that

2   countless others are stored in hardcopy or stored on individual employees' desktop computers and

3   laptops. Furthermore, Mattel represents that many of its network systems, including its e-mail

4   system, are not readily searchable, or searchable at all, by use of keyword terms. For example,

5   Mattel asserts that the computer system used by Mattel's designers and engineers overwhelmingly

6   consists of graphical files whose content cannot be searched by keywords.

7       Mattel estimates that MGA and its products are referenced in millions of pages of

8   documents and computer files at Mattel. More specifically, Mattel contends that many groups

9   across Mattel, such as marketing, consumer research, sales, finance, human resources and safety

10   testing, have documents that refer or relate to MGA or its products in some way. Mattel also

11   contends that a large volume of this information is from third party analysts and third party

12   sources, including retail sales reports that track doll sales across the entire industry, newspaper

13   and magazine articles, commercials and advertisements. Mattel also represents that it collects

14   great quantities of documents about its competitors that are readily available on the Internet or

15   other public sources, including catalogs, advertising, press releases, and media reports, and from

16   retailers and distributors throughout the world.

17       Furthermore, Mattel represents that its documents, particularly its marketing and sales

18   research documents, often reference many competing products, not just the Bratz dolls at issue.

19   Mattel contends that these types of documents would be difficult to search and collect because, in

20   many instances, the only way to determine whether a particular document mentions Bratz would

21   be to review the entire document.

22       Mattel contends that virtually any employee at Mattel might have documents that are

23   responsive to MGA's requests. Mattel estimates that "to locate all such documents would take

24   years, cost millions of dollars, and seriously interfere with the operation of Mattel's business."

25   Mattel's Opposition at 17. Matter also asserts that "[s]uch efforts – including search of Mattel's

26   servers, its employees' computer workstations, hard copy files, computer disks, and video files –

27

28

EXHIBIT _____ 7

PAGE _____ 76

10

1   would be in addition to the cost of attorney review of the materials before they are produced in

2   litigation." Id. Mattel also contends that the burden and expense of production is multiplied

3   several times further if Mattel is required to search the files in the possession of its worldwide

4   subsidiaries.

5          Mattel contends that even if the search for responsive documents could be accomplished,

6   the resulting document production would provide MGA with countless documents with little or

7   no relevance. For example, Mattel anticipates that many documents would be discussions of the

8   competition in the context of irrelevant dolls, such as any number of mainline Barbie dolls.

9   Mattel contends that other documents would simply be third party market reports which are

10  equally available to MGA from public sources. Accordingly, Mattel requests that the motion be

11  denied in full.

12         In its reply, MGA counters that the requests are not unduly burdensome. MGA contends

13  that contrary to Mattel's assertions, the requests are factually self-limited, containing restrictive

14  language and defining the outer parameters for the documents sought. Furthermore, MGA

15  contends that it told Mattel that it would be amenable to certain limitations on the number and

16  identities of custodians whose files must be searched, so long as Mattel was amenable to

17  reciprocal accommodations for MGA's own document review. MGA contends that, at a

18  minimum, Mattel should be required to search the physical and electronic files of its employees.

19  MGA contends that Mattel should not be released wholesale from its discovery obligations based

20  on a purported burden, particularly when it failed to work with MGA in good faith to mitigate that

21  burden.

22         Lastly, MGA argues that any burden to Mattel is outweighed by the benefit to be secured

23  from the discovery. MGA contends that it "realistically has no other way of obtaining documents

24  tending to support its claims that Mattel engaged in a pattern of conduct with suppliers,

25  distributors, licensees and others constituting unfair competition except from Mattel." MGA's

26

27

28

EXHIBIT _____7_____

PAGE _____77_____

11

1   Reply at 10.  Therefore, MGA believes that the benefits of the discovery it seeks are

2   immeasurable and that in contrast, the burden to Mattel is not unreasonable.[1]

3   B. Document Requests

4       In addition to the three general objections described above, Mattel has asserted other

5   objections to certain categories of document requests which MGA contends are improper.  The

6   general objections stated above, as well as the additional objections asserted by Mattel, are

7   reviewed herein in the context of the nine categories of document requests at issue.

8                           1. Document Request Nos. 32-33, 61

9       Request nos. 32, 33 and 61 seek production of communications with sales personnel,

10  merchandisers and retailers relating to alteration of displays or retail spacing of MGA products

11  other than Bratz.  MGA contends that the documents it seeks are relevant to the allegation in

12  paragraph 79 of its complaint that "Mattel merchandisers have been caught tampering with

13  MGA's displays, replacing favorably located MGA merchandise with Mattel merchandise

14  instead."  In its reply brief, MGA clarifies that it "seeks information tending to show that at any

15  time after June 2001, Mattel sales personnel tampered with, or directed others to tamper with,

16  MGA's in-store displays."  MGA's Reply at 8.

17      During the meet and confer process, Mattel agreed to produce documents responsive to

18  request nos. 32-33 and 61 insofar as they related to displays, retail spacing, or shelf space for

19  Bratz, but refused to produce responsive documents relating to any other MGA products.  Glad

20  Decl. in Support of MGA's Motion, Ex. 1.  Mattel contends that request nos. 32 and 33 are

21  overbroad and unduly burdensome insofar as they require production of communications relating

22  to displays, retail spacing, or shelf-space for any other MGA products.  Mattel views the requests

23  as a directive to "go out and find, review and produce essentially all of its retailer

24  _____

25      [1] In a footnote, MGA mentions that Mattel has also withheld documents relating to conduct occurring outside of the United States, and that this issue will be addressed in a separate motion.  MGA's Motion at 10, n. 29.

26  Nothing in this Order is intended in any way to permit or foreclose discovery relating to conduct occurring outside of the United States.

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT _____7_____                    12

PAGE _____78_____

1    communications about any 'change' in any 'display' or any 'retail spacing' for any MGA

2    product." Mattel's Opposition at 10. Mattel contends that MGA, not Mattel, should bear the

3    burden of identifying specific incidents of alleged tampering, and thereafter Mattel will attempt to

4    find and produce pertinent documents relating to those incidents. Id.

5         Mattel also contends that request no. 61 is overbroad and amounts to an improper fishing

6    expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA

7    product, whether or not they have anything to do with anything placed at issue by MGA. Mattel's

8    Opposition at 7-8. Mattel also contends that the request has no linkage to any possible consumer

9    confusion between Bratz and My Scene or between the other products mentioned in MGA's

10   complaint or MGA's responses to Mattel's contention interrogatories. Id. at 8.

11        Request nos. 32, 33, and 61 seek documents relevant to MGA's allegation that "Mattel

12   merchandisers have been caught tampering with MGA's displays, replacing favorably located

13   MGA merchandise with Mattel merchandise instead." MGA's allegation of tampering is broader

14   than just Bratz products, and therefore, Mattel's objection to producing responsive documents for

15   MGA products other than the Bratz line is overruled.

16        Further, the requests are not unduly burdensome. Request nos. 32 and 33 are limited to

17   communications between Mattel and its sales personnel and merchandisers relating to alterations

18   of display or retail spacing for MGA products, and therefore do not require Mattel to search for

19   documents from every single one of its employees. Request no. 61 is also reasonably tailored to

20   seek relevant information, requiring production of communications between Mattel and any

21   retailer, sales person or merchandiser referring or relating to the allocation of shelf space, altering

22   of retail displays, or placement of Bratz in retail stores, including but not limited to

23   communications concerning the placement of "Bratz" relative to My Scene. Contrary to Mattel's

24   assertion, request no. 61 does not require Mattel to search for virtually all documents that mention

25   MGA, Larian, Bratz, or any other MGA product, whether or not they have anything to do with

26   anything placed at issue by MGA. Instead request no. 61 is clearly limited to a defined category

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 7 _____

PAGE _____ 79 _____

13

1   of communications with certain individuals and/or entities regarding a defined subject matter. In

2   addition, MGA indicates in its reply brief that it seeks documents and communications from June

3   2001 forward. With this temporal limitation, MGA's motion is granted as to request nos. 32, 33

4   and 61.

5                              2. Document Request Nos. 37-39

6           Request nos. 37 through 39 call for production of Mattel's communications with CARU

7   relating to MGA and restrictions to be placed on MGA, as well as documents supporting Mattel's

8   allegation in its answer that MGA violated CARU standards. MGA contends that the documents

9   it seeks are relevant to its allegation in paragraph 89 of its complaint that "Mattel used its

10  influence as a major contributor to CARU's budget to induce CARU to place onerous restrictions

11  on MGA advertisements, and to require MGA to amend aspects of commercials that have gone

12  unchallenged in other parties' commercials."

13          In its opposition brief, Mattel represents that is prepared to produce documents that bear

14  on MGA's claims and Mattel's defenses involving CARU, but nothing further. Mattel contends

15  that the sweep of these requests "goes far beyond any particular advertisements or the allegations

16  in MGA's complaint that Mattel pressured CARU or obtained better treatment different than

17  MGA." Mattel's Opposition at 10. Furthermore, Mattel contends that the requests are improper

18  because CARU investigates complaints and claims in confidence.

19          MGA's request nos. 37 and 39 seek information relevant to MGA's allegation that Mattel

20  influenced CARU to place restrictions on MGA's advertisements. The Federal Rules of Civil

21  Procedure do not require MGA to identify every instance when CARU imposed restrictions or

22  required amendments to MGA's advertisements before propounding discovery on the subject.

23          Request no. 38 is much broader, however, seeking all communications between Mattel

24  and CARU referring or relating to MGA, Larian, Bratz, or MGA products. Request no. 38 is not

25  limited to the subject of MGA's advertisements, or any other subject that is at issue in the case.

26  Further, request no. 38 is, to a certain extent, cumulative of request nos. 37 and 39.

27

28

EXHIBIT _____ 7 _____

PAGE _____ 80 _____

14

1        Accordingly, MGA's motion is granted with respect to request nos. 37 and 39, but denied

2   as to request no. 38.

3                         3. Document Request No. 43

4        Request no. 43 seeks documents relating to any attempts by Mattel to price My Scene

5   below Bratz. MGA contends that the documents it seeks are likely to lead to admissible evidence

6   relating to whether Mattel has an "organic process" for setting prices, or whether it set prices

7   based on confidential information obtained from MGA. MGA's Motion at 13:22.

8        Mattel contends that there is no allegation in MGA's complaint of below-market pricing.

9   Further, Mattel contends that the request is overbroad and seeks documents that have no relevance

10  to any other subject matter in suit.

11       Request no. 43 seeks documents that have no relevance to any claim or defense in the

12  case. There is no allegation in MGA's complaint related to below-market pricing. Nor is there

13  any allegation that Mattel misappropriated confidential pricing information from MGA.

14  Accordingly, MGA's motion is denied as to request no. 43.

15                        4. Document Request No. 47

16       Request no. 47 calls for production of documents relating to Mattel's communications

17  with buyers, merchandisers, general merchandise managers, or retailers relating to whether MGA

18  was giving any other U.S. retailer below-market pricing or whether MGA was discontinuing one

19  of its product lines. MGA contends that these documents are relevant to the allegation in

20  paragraph 79 of its complaint that "Mattel has falsely told a major United States retailer that

21  MGA was giving another major United States retailer below-market pricing and falsely told a

22  United Kingdom retailer that MGA was discontinuing one of its lines."

23       Mattel contends that request no. 47 is improper because it demands documents about

24  "alleged statements to an unidentified retailer and an unidentified toy line" without giving Mattel

25  "a hint as to where to look in order to perform a good-faith search for documents." Mattel's

26  Opposition at 12.

27                          EXHIBIT _____ 7 _____

28     Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                   PAGE _____ 81 _____    15

1    Request no. 47 seeks documents relevant to MGA's allegation that Mattel made a false

2    representation to a major United States retailer that MGA was giving another retailer below-

3    market pricing, and falsely told a United Kingdom retailer that MGA was discontinuing a product

4    line.  The Federal Rules of Civil Procedure do not require MGA to identify the businesses to

5    whom Mattel allegedly made the false statements as a precondition to propounding discovery.

6    Nor is MGA required to identify every instance in which Mattel allegedly made such false

7    representations before propounding discovery.  Nevertheless, the request is extremely broad and

8    burdensome, requiring Mattel to search for "all documents referring or relating to any

9    communications between Mattel" and buyers, merchandisers, general merchandise managers, or

10   retailers referring or relating to whether MGA was giving another United States retailer below-

11   marketing pricing, or whether MGA was discontinuing one of its lines.  To alleviate some of the

12   burden to Mattel, the request is hereby limited to require production of only Mattel's

13   communications with any buyers, merchandisers, general merchandise managers or retailers

14   about MGA providing below-market pricing or MGA discontinuing a product line.  With this

15   limitation, MGA's motion is granted as to request no. 47.

16                          5. Document Request Nos. 48 – 50

17   Request nos. 48 through 50 essentially seek all documents referring or relating to Mattel's

18   communications with any buyers, merchandisers, general merchandise managers, retailers,

19   suppliers, licensees, and potential licensees, referring or relating to Bratz, Larian or MGA

20   regarding the origins, design, development, product launch, sales, promotions, advertising,

21   quality, or price of Bratz or any other MGA product.  During the meet and confer, Mattel agreed

22   to produce some, but not all, responsive documents.  In particular, Mattel objected to producing

23   documents relating to the pricing of Bratz or any MGA product.  Mattel also objected to

24   producing documents relating to Bratz unless the documents also referenced Mattel's My Scene

25   or Barbie products.

26

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT _____7_____

PAGE _____82_____

16

1    MGA contends that these documents are relevant to its allegation that Mattel interfered

2    with its business dealings with third parties. In its reply brief, MGA asserts that it seeks

3    documents and communications between Mattel and certain third parties "from June 2001 tending

4    to support or refute MGA's assertions that Mattel interfered with MGA's dealings with such

5    parties by providing false or misleading information concerning MGA products, the ownership of

6    'Bratz' and exerting pressure on these parties not to license or sell MGA products." MGA's

7    Reply at 8.

8        Mattel contends that these requests are overbroad and amount to an improper fishing

9    expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA

10   product, whether or not they have anything to do with anything placed at issue by MGA. Mattel's

11   Opposition at 7-8. Mattel also contends that the requests have no linkage to any possible

12   consumer confusion between Bratz and My Scene or between the other products mentioned in

13   MGA's complaint or MGA's responses to Mattel's contention interrogatories. <u>Id.</u> at 8.

14       This category of requests is clearly overbroad, requiring production of documents that

15   merely mention MGA, Larian, Bratz or other MGA products, regardless of whether or not they

16   have anything to do with the claims and defenses in the case. MGA has not made any attempt to

17   link these requests to any of the numerous and far-ranging allegations of unfair competition set

18   forth in its complaint. Instead MGA makes a very generalized argument that the requests seek

19   information relevant to its allegation that Mattel interfered with MGA's business dealings with

20   third parties. Furthermore, Mattel has carried its burden of establishing that the burden and

21   expense of complying with the requests far exceed their likely benefit, taking into account the

22   needs of the case. Accordingly, MGA's motion is denied as to request nos. 48 through 50.

23       <u>6. Document Request Nos. 51 – 55</u>

24       This category of document requests requires production of essentially all documents

25   referring or relating to any communications between Mattel and any public relations firms,

26   members of the press, current or former MGA employees, or former Mattel employees, relating to

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 7 _____

PAGE _____ 83 _____

17

1  Bratz, Larian, or MGA regarding the origins, design, development, product launch, sales,

2  promotions, advertising, quality, or price of Bratz or any other MGA product. During the meet

3  and confer process, Mattel agreed to produce some, but not all responsive documents.

4       MGA contends that these documents are relevant to its allegations that Mattel has engaged

5  in serial imitation of MGA products in an attempt to dilute their distinctiveness and create

6  confusion in the marketplace. MGA also contends that these documents are likely to lead to

7  admissible evidence relating to the creation and ownership of Bratz, Mattel's knowledge and

8  awareness of Bratz products and marketing and its attempt to imitate those products and dilute

9  their distinctiveness.

10       Mattel contends that these requests are overbroad and amount to an improper fishing

11  expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA

12  product, whether or not they have anything to do with anything placed at issue by MGA. Mattel's

13  Opposition at 7-8. Mattel also contends that the requests have no linkage to any possible

14  consumer confusion between Bratz and My Scene or between the other products mentioned in

15  MGA's complaint or MGA' responses to Mattel's contention interrogatories. Id. at 8.

16       Like the previous category of requests, this category of requests is grossly overbroad,

17  requiring production of documents that merely mention MGA, Larian, Bratz or other MGA

18  products, regardless of whether or not they have anything to do with the claims and defenses in

19  the case. MGA has not made any attempt to link these requests to any of the allegations of unfair

20  competition set forth in its complaint or to the responses it provided to Mattel's contention

21  interrogatories. Furthermore, Mattel has carried its burden of establishing that the burden and

22  expense of complying with these requests far exceed their likely benefit, taking into account the

23  needs of the case. Accordingly, MGA's motion is denied as to request nos. 51-55.

24                          7. Document Request Nos. 56 – 58

25       This category of requests requires production of all documents relating to business

26  dealings between any licensee, supplier, manufacturer, retailer, distributor, or merchandiser and

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 7 _____                    18

PAGE _____ 84 _____

1   MGA.  MGA contends that these document requests are specifically tailored to documents in

2   Mattel's possession, custody or control concerning MGA's business dealings with licensees,

3   suppliers, manufacturers, retailers, distributors, or merchandisers, and are directly relevant to its

4   claims that Mattel interfered with MGA's business dealings with third parties.

5        Again, Mattel contends that these requests are overbroad and amount to an improper

6   fishing expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other

7   MGA product, whether or not they have anything to do with anything placed at issue by MGA.

8   Mattel's Opposition at 7-8.  Mattel also contends that the requests have no linkage to any possible

9   consumer confusion between Bratz and My Scene or between the other products mentioned in

10   MGA's complaint or MGA' responses to Mattel's contention interrogatories.  Id. at 8.  Mattel

11   also objects to request nos. 57 and 58 insofar as they require Mattel to produce documents that

12   refer "explicitly or implicitly" to business dealings involving MGA.

13        Like the previous two categories of document requests, this category of requests is grossly

14   overbroad.  Request nos. 56 and 57 require production of documents referring or relating to

15   MGA's business dealings, without specifying any products or other subject matter limitations.

16   Request no. 58 is narrower, but is unreasonable insofar as it requires Mattel to produce documents

17   that refer "explicitly or implicitly" to business deals involving MGA's Bratz or other products.

18   Furthermore, Mattel has carried its burden of establishing that the burden and expense of

19   complying with the requests far exceed their likely benefit, taking into account the needs of the

20   case.  Accordingly, MGA's motion is denied as to request nos. 56 through 58.

21                 8. Document Request Nos. 59, 60, 62-63, 99, 101

22        This category of requests requires production of all documents relating to (a) any

23   interference with or inhibition of the licensing or potential licensing of MGA's products, or

24   relating to any limitations or restrictions on any MGA licensee (request nos. 59, 62-63); (b) any

25   third party's licensing or potential licensing of MGA products (request no. 60); and (c)

26   communications between Mattel and MGA's licensees and distributors referring to MGA, Bratz

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 7 _____

PAGE _____ 85 _____

19

1   or the claims in this lawsuit (request nos. 99, 101). MGA contends that the documents it seeks are

2   relevant to its allegation that Mattel exerted its influence on retailers and other third parties not to

3   do business with MGA.

4        Mattel contends that request nos. 59, 60, 62 and 63 are overbroad, seeking all documents

5   that might bear on MGA's business without identifying any particular business dealings. Mattel

6   also contends that they are overbroad insofar as they require production of all documents related

7   to "any MGA PRODUCT world wide," where "product" is defined as "each image, character,

8   logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been

9   manufactured, marketed or sold by MGA or others under license." Mattel's Opposition at 9.

10       Mattel also contends that request nos. 99 and 101 are overbroad and amount to an

11  improper fishing expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or

12  any other MGA product, whether or not they have anything to do with anything placed at issue by

13  MGA. Mattel's Opposition at 7-8. Mattel also contends that the requests have no linkage to any

14  possible consumer confusion between Bratz and My Scene or between the other products

15  mentioned in MGA's complaint or MGA' responses to Mattel's contention interrogatories. Id. at

16  8.

17       Request nos. 59, 60, 62, and 63 seek information relevant to MGA's allegations, including

18  among others, that Mattel "warned a number of companies, including the biggest publishing

19  entity in the United Kingdom, not to license MGA products, or risk retribution," and that Mattel

20  "terminated one of its licensees, apparently in retribution for licensing Bratz." MGA's Complaint

21  at ¶76. They are also reasonably tailored to require production of only those documents and

22  communications that refer or relate to interference with or inhibition of the licensing or potential

23  licensing of MGA's products, that refer or relate to any limitations or restrictions on any MGA

24  licensee, and that refer or relate to any third party's licensing or potential licensing of MGA

25  products. Mattel has not established that searching for theses types of responsive documents is

26  unduly burdensome. Therefore, MGA's motion is granted as to request nos. 59, 60, 62 and 63.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 7

PAGE _____ 86

20

1    In contrast, however, request nos. 99 and 101 are overbroad, requiring Mattel to search for

2    and produce all documents referring or relating to communications between Mattel and any MGA

3    licensee or distributor that refer or relate to MGA, Bratz, this lawsuit, other litigation involving

4    the parties or their employees, claims by MGA against Mattel or claims by Mattel against MGA

5    or its employees.  For example, the requests would potentially require production of documents

6    that merely mentioned MGA and Bratz but that otherwise have no relevance to the claims and

7    defenses in the suit.  Therefore, MGA's motion is denied as to request nos. 99 and 101.

8                              9. Document Request Nos. 64, 65, 66, 67

9    This category of requests requires production of all documents relating to (a) any third

10   party's agreement or decision not to license, manufacture, promote, distribute or sell MGA

11   products or supply materials or services to MGA, or to limit, restrict, curtail or reduce such

12   activities (request nos. 64-65); and (b) any interference with or inhibition of the supply of goods

13   or services to MGA, or of MGA's distribution of its products (request nos. 66-67).  MGA

14   contends that these documents are relevant to its claims that Mattel interfered with MGA's

15   business dealings with distributors, retailers, and other third parties, as alleged in paragraphs 76-

16   79 of its complaint.

17   Mattel contends that these requests are overbroad, seeking all documents that might bear

18   on MGA's business without identifying any particular business dealings.  Mattel also contends

19   that they are overbroad insofar as they require production of all documents related to "any MGA

20   PRODUCT world wide," where "product" is defined as "each image, character, logo, doll, toy,

21   accessory, product, packaging or other thing or matter that is or has ever been manufactured,

22   marketed or sold by MGA or others under license."  Mattel's Opposition at 9.

23   These requests seek information relevant to MGA's allegation that Mattel interfered with

24   its business dealings.  In particular, MGA has alleged that Mattel "warned a number of

25   companies, including the biggest publishing entity in the United Kingdom, not to license MGA

26   products, or risk retribution," and that Mattel "terminated one of its licensees, apparently in

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT _____7_____                    21

PAGE _____87_____

1    retribution for licensing Bratz." MGA's Complaint at ¶76.  MGA's requests are reasonably

2    calculated to lead to information relevant to this allegation.  Although the definition of product is

3    broad, the definition does not render the requests overbroad because they are otherwise limited in

4    subject matter.  Further Mattel has failed to establish that it is unduly burdensome to search for

5    and produce documents responsive to this category of requests.  Therefore, MGA's motion is

6    granted as to request nos. 64, 65, 66, and 67.

7                           10. Document Request Nos. 102-104

8         This category of requests requires production of Mattel's communications with three

9    companies referring to MGA, Bratz or Larian.  MGA contends that these documents are relevant

10   to its claims that Mattel interfered with its business dealings with third parties.

11        Mattel now represents that it will produce communications with Nickelodeon that bear on

12   MGA's allegation regarding sponsorship of the 2005 Kids Choice Awards.  Mattel contends,

13   however, that communications with Cartoon Network or 4kids Entertainment are not relevant to

14   any claim or defense in suit.

15        Mattel's communications with Nickelodeon regarding MGA, Bratz or Larian are relevant

16   in light of MGA's allegation that Mattel was "instrumental in attempting to keep MGA from

17   participating as a sponsor in the 'Kids' Choice Awards.'"  Id. at ¶97.  Therefore, MGA's motion

18   is granted as to request nos. 102.  In contrast, MGA has failed to establish that similar

19   communications with Cartoon Network and 4kids Entertainment are relevant to a claim or

20   defense in suit.  Therefore, MGA's motion is denied as to request nos. 103 and 104.

21   //

22   //

23   //

24

25

26

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT _____ 7 _____

PAGE _____ 88 _____

22

V. CONCLUSION

For the reasons set forth above, MGA's motion to compel is granted in part as to document request nos. 32 ( as modified), 33 (as modified), 61 (as modified), 37, 39, 47 (as modified) , 59, 60, 62, 63, 64, 65, 66, 67, and 102, and denied in part as to document request nos. 38, 43, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 99, 101, 103 and 104.  MGA's request for sanctions is denied.  Mattel shall produce responsive documents as set forth above no later than June 15, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, MGA shall file this Order with the Clerk of Court forthwith.

Dated: May 22, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___7___

PAGE ___89___

23

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 22, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL DOCUMENTS RESPONSIVE TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DATED NOVEMBER 22, 2006 in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 22, 2007, at San Francisco, California.

ANTHONY SALES

EXHIBIT ___7___

PAGE ___90___

# EXHIBIT 8

# CONFIDENTIAL
# THIS EXHIBIT FILED UNDER SEAL PURSUANT TO
# PROTECTIVE ORDER OF 1- 4 -2005

Case 2:04-cv-09049-SGL-RNB    Document 2365    Filed 02/28/2008    Page 1 of 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                         Date:  February 28, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
==============================================================================
=
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes                              Theresa Lanza
            Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR CARTER         ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

Michael H. Page                      Jon D. Corey
Matthew M. Werdegar

ATTORNEYS PRESENT FOR MGA:

Thomas J. Nolan
Carl A. Roth

PROCEEDINGS:    **ORDER DENYING AS MOOT MATTEL'S MOTION FOR LEAVE TO TAKE
                ADDITIONAL DISCOVERY RE MGA'S UNCLEAN HANDS DEFENSE**

                **ORDER RE PRODUCTION OF ISAAC LARIAN'S ELECTRONIC STORAGE
                DEVICES**

        As set forth on the record, and in light of the representations by counsel for MGA and Carter
Bryant that they will not assert MGA's unclean hands defense in Phase 1 of the trial, Mattel's
motion is **DENIED AS MOOT**.  The Court's ruling today does not affect Carter Bryant's right to
assert his own unclean hands defense.

        Also, as set forth on the record, the parties shall meet and confer with the goal of reaching a
protocol regarding production and examination of Mr. Larian's electronic storage devices designed
to minimize any invasion of privacy and to protect from disclosure any information not relevant to
the present proceeding.  If the parties agree on such a protocol, then they shall submit a stipulated
protective order for the Court's consideration.  If the parties are unable to agree, then MGA is
granted leave to seek, by way of ex parte application, appropriate relief from the Court.

**IT IS SO ORDERED.**                EXHIBIT _____9_____

                                     PAGE _____105_____
MINUTES FORM 90                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                              1              Time:  00/18

CONFORMED COPY

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2     John B. Quinn (Bar No. 90378)
      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Duane R. Lyons (Bar No. 125091)
5     (duanelyons@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
7   Facsimile: (213) 443-3100

8   Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12              Plaintiff, | Consolidated With Case No. 04-9059 and Case No. 05-2727 |
| 13       v. | MATTEL, INC.'S SECOND AMENDED ANSWER IN CASE NO. 05-2727 AND COUNTERCLAIMS FOR: |
| 14 | |
| 15  MATTEL, INC., a Delaware corporation, | 1.  COPYRIGHT INFRINGEMENT; |
| 16              Defendant. | 2.  VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT; |
| 17 | |
| 18  MGA ENTERTAINMENT, INC. a California corporation, | 3.  CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT; |
| 19 | |
| 20              Plaintiff, | 4.  MISAPPROPRIATION OF TRADE SECRETS; |
| 21       v. | 5.  BREACH OF CONTRACT; |
| 22  MATTEL, INC., a Delaware corporation, and DOES 1-10, | 6.  INTENTIONAL INTERFERENCE WITH CONTRACT; |
| 23              Defendants. | 7.  BREACH OF FIDUCIARY DUTY; |
| | 8.  AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; |
| 24 | 9.  BREACH OF DUTY OF LOYALTY; |
| 25 | |
| 26 | **PUBLIC REDACTED VERSION** |
| 27 | **Volume I** |
| 28 | EXHIBIT _____ 10 |

2154363.2

PAGE _____ 106

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  MATTEL, INC., a Delaware
   corporation,
2
                      Counter-claimant,
3
4         v.

5  MGA ENTERTAINMENT, INC., a
   California corporation; ISAAC
   LARIAN, an individual; CARTER
6  BRYANT, an individual; MGA
   ENTERTAINMENT (HK) LIMITED,
7  a Hong Kong Special Administrative
   Region business entity; MGAE DE
8  MÉXICO, S.R.L. DE C.V., a
   Mexico business entity; CARLOS
9  GUSTAVO MACHADO GOMEZ, an
   individual; and DOES 4 through 10,
10
                  Counter-defendants.
11

12  AND CONSOLIDATED CASES

13

10. AIDING AND ABETTING
    BREACH OF DUTY OF
    LOYALTY;
11. CONVERSION;
12. UNFAIR COMPETITION; AND
13. DECLARATORY RELIEF

DEMAND FOR JURY TRIAL

14

15

16

17

18

19

20

21

22

23

24

25

26                              EXHIBIT _____ 10

27                              PAGE _____ 107

28

21543632

-2-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

1 | ## SECOND AMENDED ANSWER

2 | Pursuant to the Court's Orders of January 12, 2007 and June 27, 2007,

3 | Defendant Mattel, Inc. ("Mattel") answers the Complaint of MGA Entertainment,

4 | Inc. ("Complaint") as follows:

5 | ### Preliminary Statement

6 | The Complaint in this case contravenes Rule 8(a) of the Federal Rules

7 | of Civil Procedure in multiple respects. For example, in many places, the Complaint

8 | improperly mixes factual averments with argumentative rhetoric. The Complaint

9 | also includes a selective recitation of alleged historical facts and "rumor," much of

10 | which is both irrelevant and inflammatory in tone and content. In addition, many of

11 | the allegations of the Complaint are overly broad, vague or conclusory and include

12 | terms which are undefined and which are susceptible to different meanings.

13 | Accordingly, by way of a general response, all allegations are denied unless

14 | specifically admitted, and any factual averment admitted is admitted only as to the

15 | specific facts and not as to any conclusions, characterizations, implications or

16 | speculations which are contained in the averment or in the Complaint as a whole.

17 | These comments and objections are incorporated, to the extent appropriate, into

18 | each numbered paragraph of this Second Amended Answer.

19 | Mattel further submits that the use of the headings throughout the

20 | Complaint is improper, and therefore no response to them is required. In the event

21 | that a response is required, Mattel denies those allegations.

22 | The Complaint also contains many purported photographs of various

23 | items, and it uses one or more headings purporting to describe, either individually or

24 | in groups, these various photographs. The images of these photographs contained in

25 | the Complaint are all relatively small and some are of less than optimal quality,

26 | making it difficult to evaluate the adequacy of the photographs or their fairness and

27 | accuracy in depicting what they purport to represent. The Complaint also does not

28 | describe the circumstances or time frame in which these photographs were taken,

**EXHIBIT** _____ _10_

-3-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

**PAGE** _____ _108_

2154363.2

1  and in many cases does not identify, or does not sufficiently or properly identify, the

2  item depicted in the photographs. All of these factors, as well as the use of these

3  photographs and headings out of context, or with an insufficient context, impair the

4  ability of Mattel to fully respond to these photographs and headings, or to any

5  purported allegations involving, or relying upon, the use of such photographs and

6  accompanying headings. By way of a general response, Mattel therefore does not

7  admit the authenticity of any photograph, or the accuracy or adequacy of any

8  heading, nor does it admit any allegation or inference that is based on, or purports to

9  be based on, any photograph or accompanying heading in the Complaint. Mattel

10 reserves the right to challenge the authenticity of any photograph and the accuracy

11 or adequacy of any heading (either as included in the Complaint or in the context of

12 additional material not included). Further, with reference to all photographs and

13 accompanying headings, or any averments based on the Complaint's use of such

14 photographs and headings, which might be offered into evidence, Mattel specifically

15 reserves its right to object to any use of such photographs, headings, and averments,

16 or the Complaint as a whole or in part, in evidence for any purpose whatsoever.

17        To the extent that Mattel has endeavored to answer any particular

18 allegation containing any such photographs and headings, any admission concerning

19 the item purported to be depicted in such photograph, or described in such headings,

20 shall not constitute an admission that the photograph is authentic, adequate, or

21 admissible, nor that any heading is accurate, adequate, or admissible. All such items

22 purportedly depicted in such photographs, and described in such headings, "speak

23 for themselves". Accordingly, to the extent that any such referenced materials are

24 deemed allegations against Mattel, they are denied.

25                               Responses

26        1.    Answering paragraph 1 of the Complaint, Mattel admits that

27 plaintiff MGA Entertainment, Inc. ("plaintiff" or "MGA") is a California

28 corporation with a principal place of business in Van Nuys, California.

EXHIBIT _____ _/0_____

-4-

2154363.2

PAGE _____ /09_____

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1         2.    Answering paragraph 2 of the Complaint, Mattel admits that

2    Mattel is a Delaware corporation with a principal place of business in El Segundo,

3    California.

4         3.    Answering paragraph 3 of the Complaint, Mattel denies that

5    there has been wrongful conduct on its part and states that it is without knowledge

6    or information sufficient to form a belief as to the truth or falsity of the remaining

7    allegations set forth therein and, on that basis, denies them.

8         4.    Answering paragraph 4 of the Complaint, Mattel admits that

9    plaintiff purports to assert claims under the Lanham Act, 15 U.S.C. §§ 1125(a) and

10    (c), California Business and Professions Code §§ 17200 et seq., California Business

11    and Professions Code § 14330 and California common law, denies that plaintiff is

12    entitled to any relief thereunder and denies the truth of the remaining allegations set

13    forth in paragraph 4.

14         5.    Answering paragraph 5 of the Complaint, Mattel admits that it is

15    subject to personal jurisdiction in this District and denies the truth of the remaining

16    allegations set forth in paragraph 5.

17         6.    Answering paragraph 6 of the Complaint, Mattel admits that

18    venue is proper in this District and denies the truth of the remaining allegations set

19    forth in paragraph 6.

20         7.    Answering paragraph 7 of the Complaint, Mattel admits that

21    MGA has filed the instant lawsuit and denies the truth of the remaining allegations

22    set forth in paragraph 7.

23         8.    Answering paragraph 8 of the Complaint, Mattel states that it is

24    without knowledge or information sufficient to form a belief as to the truth or falsity

25    of the allegations regarding MGA's history set forth therein and, on that basis,

26    denies them, states that MGA has made conflicting representations, including in

27    sworn statements, that are at odds with the allegations of the Complaint and denies

28    the truth of the remaining allegations set forth in paragraph 8.    **EXHIBIT** _____ /0

1      9.    Answering paragraph 9 of the Complaint, Mattel admits that
2 MGA filed this action, states that Mattel's web site and corporate governance
3 policies speak for themselves and denies the truth of the remaining allegations set
4 forth in paragraph 9.

5     10.   Answering paragraph 10 of the Complaint, Mattel admits that it
6 is the world's most successful toy company, states that the first doll in its BARBIE
7 line was publicly introduced in 1959 and that BARBIE-branded dolls have been the
8 world's best-selling toys, states that Mattel's sales and stock price speak for
9 themselves, and denies the truth of the remaining allegations set forth in paragraph
10 10.

11    11.   Answering paragraph 11 of the Complaint, Mattel admits that
12 Adrienne Fontanella is the former president for girls' toys at Mattel, states that it is
13 without knowledge or information sufficient to form a belief as to the truth or falsity
14 of the allegations regarding an alleged statement by Ms. Fontanella, and denies the
15 truth of the remaining allegations set forth in paragraph 11.

16    12.   Answering paragraph 12 of the Complaint, Mattel is without
17 knowledge or information sufficient to form a belief as to the truth or falsity of the
18 allegations regarding alleged statements by unidentified "analysts," states that
19 Mattel's sales and stock price speak for themselves, and denies the truth of the
20 remaining allegations set forth in paragraph 12.

21    13.   Answering paragraph 13 of the Complaint, Mattel admits that Jill
22 Barad became President and Chief Executive Officer of Mattel in January 1997, that
23 Mattel acquired Tyco Industries, Inc. ("Tyco") in March 1997, that Mattel acquired
24 Pleasant Company in 1998, Mattel acquired the Learning Company in May 1999,
25 that Mattel acquired Purple Moon in 1999, that the MATCHBOX brand was owned
26 by Tyco, that the AMERICAN GIRL line of dolls was made by Pleasant Company
27 at the time of that entity's acquisition, and denies the truth of the remaining
28 allegations set forth in paragraph 13.

EXHIBIT _____ *10*

PAGE _____ *11*

SECOND AMENDED ANSWER AND COUNTERCLAIMS

154363.2

1    14.    Answering paragraph 14 of the Complaint, Mattel states that its
2  public announcements speak for themselves, and denies the truth of the remaining
3  allegations set forth therein.

4    15.    Answering paragraph 15 of the Complaint, Mattel states that its
5  stock price and its public announcements speak for themselves, and denies the truth
6  of the remaining allegations set forth therein.

7    16.    Answering paragraph 16 of the Complaint, Mattel states that its
8  stock price speaks for itself, states that it is without knowledge or information
9  sufficient to form a belief as to the truth or falsity of the allegations regarding the
10 alleged views of unnamed "analysts" and "[i]nvestors," and denies the truth of the
11 remaining allegations set forth therein.

12    17.    Answering paragraph 17 of the Complaint, Mattel admits that
13 Ms. Barad resigned in February 2000.

14    18.    Answering paragraph 18 of the Complaint, Mattel admits that
15 Robert Eckert became Chairman and Chief Executive Officer of Mattel in May 2000
16 and that Mr. Eckert previously was employed at Kraft Foods, Inc. for 23 years, is
17 without knowledge or information sufficient to form a belief as to the truth or falsity
18 of the allegations regarding the views of unnamed "[i]nvestors" and others, and
19 denies the truth of the remaining allegations set forth in paragraph 18.

20    19.    Answering paragraph 19 of the Complaint, Mattel admits that the
21 *Wall Street Journal* published an article on August 10, 2000 the content of which
22 speaks for itself, and denies the truth of the remaining allegations set forth therein.

23    20.    Answering paragraph 20 of the Complaint, Mattel admits that it
24 disposed of the Learning Company in October 2000, states that its sales and
25 revenues speak for themselves, states that the remainder of the allegations contained
26 therein are characterizations, not factual assertions, and therefore no response is
27 necessary under Fed. R. Civ. P. 8(b) and, to the extent any further response is
28 required, denies the truth of any remaining allegations set forth in paragraph 20.

EXHIBIT _____ *10*

PAGE _____ *112*

-7-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1          21.   Answering paragraph 21 of the Complaint, Mattel admits that

2    products in plaintiff's "Bratz" line compete with products in Mattel's BARBIE and

3    other product lines and states that the remainder of the allegation contained

4    therein—consisting of a sentence fragment—is unintelligible and on that basis

5    denies the truth of any such remaining allegation set forth therein.

6          22.   Answering paragraph 22 of the Complaint, Mattel admits that

7    products in plaintiff's "Bratz" line compete with Mattel products, states that the

8    remainder of the allegations contained therein are characterizations, not factual

9    assertions, and that therefore no response is necessary under Fed. R. Civ. P. 8(b)

10   and, to the extent any further response is required, denies the truth of any remaining

11   allegations set forth therein.

12         23.   Answering paragraph 23 of the Complaint, Mattel states that

13   MGA has made conflicting statements, including in sworn statements, that are

14   inconsistent with the allegations set forth in paragraph 23 of the Complaint and

15   states that it is therefore without knowledge or information sufficient to form a

16   belief as to the truth or falsity of the allegations set forth therein and, on that basis,

17   denies them.

18         24.   Answering paragraph 24 of the Complaint, Mattel states that the

19   "look" of the referenced dolls speak for themselves and denies the truth of the

20   remaining allegations set forth therein. By way of further answer, Mattel states that

21   the photographs and their accompanying caption on page 7 of the Complaint are

22   false and misleading to the extent they are intended to suggest that MGA has

23   produced or used a consistent packaging shape or look or that it has protectible

24   rights in the matters depicted in the photographs.

25         25.   Answering paragraph 25 of the Complaint, Mattel admits that

26   Bratz dolls are between approximately 9.5 to 10 inches in height, states that the

27   appearances of the dolls speak for themselves, denies that "Bratz" dolls are or "were

28   intentionally shorter" than dolls in Mattel's BARBIE line, denies that the "Bratz"

EXHIBIT _____ 10 _____

PAGE _____ 113 _____

-8-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1    dolls "looked like no other" and denies the truth of the remaining allegations set

2    forth in paragraph 25.

3          26.    Answering paragraph 26 of the Complaint, Mattel states that the

4    use of the term "classic" is unintelligible, since Mattel has designed and sold

5    different dolls using different heads and with different fashions and themes over the

6    years, and denies the truth of any remaining allegations. By way of further answer,

7    Mattel states that the image encaptioned "Mattel's 'Barbie'" on page 8 of the

8    Complaint is misleading in that it depicts one of the doll heads that have been used

9    as part of the BARBIE line for many years, and therefore ignores that Mattel has

10    long designed and sold an array of different BARBIE line dolls that use different

11    doll heads, including doll heads which depict different ethnicities, and that are

12    dressed in different clothing and fashion styles.

13          27.    Answering paragraph 27 of the Complaint, Mattel admits that

14    MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

15    denies that MGA originated or otherwise has rights to that phrase, admits that one

16    audience for products in the "Bratz" line has been "tweens" and denies the truth of

17    the remaining allegations set forth in paragraph 27.

18          28.    Answering paragraph 28 of the Complaint, Mattel admits that

19    certain "Bratz" dolls have won certain awards, the terms of which speak for

20    themselves, states that it is without knowledge or information sufficient to form a

21    belief as to the truth or falsity of the allegations regarding the "awards" MGA claims

22    and, on that basis, denies them, denies that plaintiff has protectible rights and denies

23    the truth of any remaining allegations set forth in paragraph 28.

24          29.    Answering paragraph 29 of the Complaint, Mattel admits that

25    dolls in the "Bratz" line compete with dolls in Mattel product lines, denies that

26    Mattel has or has ever had a "stranglehold" on any market, states that the market

27    allegations contained in paragraph 29 are vague and ambiguous, including without

28    limitation in that the allegations fail to specify what products among the parties'

EXHIBIT _____ 10

PAGE _____ 114

-9-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  respective lines are being referred to and what time period is being referred to, and
2  denies the truth of any remaining allegations set forth in paragraph 29.

3          30.    Answering paragraph 30 of the Complaint, Mattel admits that
4  MGA has been a licensee of Mattel, states that the market allegations are vague and
5  ambiguous, including without limitation in that the allegations fail to specify what
6  products are being referred to and what time periods or points in time are being
7  referred to, and states that the remainder of the allegations contained therein are
8  characterizations, not factual assertions, and therefore no response is necessary
9  under Fed. R. Civ. P. 8(b) and, to the extent any further response is required, denies
10 the truth of any remaining allegations set forth in paragraph 30.

11         31.    Answering paragraph 31 of the Complaint, Mattel states that the
12 allegations contained therein are characterizations, not factual assertions, and
13 therefore no response is necessary under Fed. R. Civ. P. 8(b) and, to the extent any
14 further response is required, denies the truth of the allegations set forth in paragraph
15 31.

16         32.    Answering paragraph 32 of the Complaint, Mattel denies the
17 truth of the allegations set forth therein.

18         33.    Answering paragraph 33 of the Complaint, Mattel denies the
19 truth of the allegations set forth therein.

20         34.    Answering paragraph 34 of the Complaint, Mattel states that it
21 has released various MY SCENE dolls, including MY SCENE dolls named
22 "Madison", "Chelsea" and "Barbie," states that the appearance of the Bratz and MY
23 SCENE dolls speak for themselves, denies that Mattel designed its MY SCENE
24 dolls to "evoke" or resemble the alleged "look" of "Bratz" dolls, denies that plaintiff
25 has protectible rights, states that MGA has made conflicting representations that are
26 at odds with the allegations of the Complaint and that it is therefore without
27 knowledge or information sufficient to form a belief as to the truth or falsity of the
28 allegations regarding the "launch" of Bratz dolls set forth therein and, on that basis,

EXHIBIT _____ 10

2154363.2                                             -10-
                                        SECOND AMENDED ANSWER AND COUNTERCLAIMS

PAGE _____ 115

1 denies them, and denies the truth of the remaining allegations set forth therein. By
2 way of further answer, Mattel states that the photographs and their accompanying
3 captions on page 10 of the Complaint are misleading and false to the extent they are
4 intended to suggest that a particular Mattel doll has been changed over time as
5 purportedly depicted. Among other things, Mattel has long designed and sold an
6 array of different BARBIE line dolls using different doll heads, and the photographs
7 encaptioned "Mattel's Traditional 'Barbie'" is one of the doll heads that has been
8 used, and continues to be used, as part of the BARBIE line. In addition, the
9 photographs encaptioned MY SCENE doll "circa 2002" is, in fact, a Mattel doll
10 character called BARBIE that continues to be sold and/or marketed with that head,
11 and the photographs encaptioned MY SCENE doll "circa 2004" depict a MY
12 SCENE doll character separate and apart from the one depicted in the "circa 2002"
13 image (and is not a revised character as plaintiff apparently attempts to imply).
14       35.    Answering paragraph 35 of the Complaint, Mattel admits that
15 Mattel released a product line called FLAVAS, states that the appearance of the
16 FLAVAS dolls speaks for themselves, states that it is without knowledge or
17 information sufficient to form a belief as to the truth or falsity of the allegations
18 regarding the "rumor" relied upon by plaintiff and the undefined "media"
19 purportedly quoting Isaac Larian and, on that basis, denies them, denies that Mattel
20 has abandoned the FLAVAS line, and denies the truth of the remaining allegations
21 set forth in paragraph 35.
22       36.    Answering paragraph 36 of the Complaint, Mattel denies the
23 truth of the allegations set forth therein.
24       37.    Answering paragraph 37 of the Complaint, Mattel denies the
25 truth of the allegations set forth therein. By way of further answer, Mattel states that
26 the unnumbered photographs and their accompanying captions on pages 11 through
27 16 of the Complaint -- which apparently were included to purportedly support the
28 allegation that MY SCENE dolls "became 'Bratz,'" which allegation Mattel

EXHIBIT _____ 10
PAGE _____ 116

-11-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

21543632

1   specifically denies -- are false and misleading.  Among other things, the heads
2   depicted are among an array of different doll heads that Mattel has used, and
3   continues to use, over the course of many years.  Moreover, the images purport to
4   compare different Mattel doll lines to show alleged changes in appearance even
5   though, in fact, each of the heads are currently sold and/or marketed to the public.
6   The "Blonde" series of photographs encaptioned "original" and "recent" MY
7   SCENE is further and specifically misleading in that it purports to compare two
8   differently named and outfitted dolls in the MY SCENE doll line, both of which
9   continue to be sold and/or marketed.
10          38.    Answering paragraph 38 of the Complaint, Mattel states that the
11  phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,
12  denies that MGA was the originator of or the first to use the eye shape or makeup
13  depicted as purportedly constituting "the 'BRATZ' eye," denies that Mattel has
14  copied the "the 'BRATZ' eye" and denies the truth of the remaining allegations
15  contained in paragraph 38.  By way of further answer, Mattel states that the
16  unnumbered photographs and accompanying caption on page 13 of the Complaint
17  are false and misleading.  Among other things, the purported "Original Mattel 'My
18  Scene' Eye" is one of the eye and makeup designs that Mattel has used over the
19  course of many years, and Mattel continues to sell and/or market dolls using the eye
20  and makeup design depicted therein.
21          39.    Answering paragraph 39 of the Complaint, Mattel states that the
22  phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,
23  denies that MGA was the originator of or the first to use the eye shape or makeup
24  purportedly described as constituting "the 'BRATZ' eye," denies that Mattel has
25  copied the "the 'BRATZ' eye," states that the relevant dolls speak for themselves and
26  denies the truth of the remaining allegations contained in paragraph 39.  By way of
27  further answer, Mattel states that the unnumbered photographs and accompanying
28  captions on page 14 of the Complaint are false and misleading.  Among other things,

EXHIBIT _____ 10
                                                -12-
PAGE _____ 117          SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1  the purported "New Mattel 'My Scene' Eye" is one of the eye and makeup designs
2  that Mattel has used over the course of many years, and Mattel continues to sell
3  and/or market dolls using the eye and makeup design depicted on page 14 of the
4  Complaint.

5        40.    Answering paragraph 40 of the Complaint, Mattel denies the
6  truth of the allegations therein. By way of further answer, Mattel states that the
7  unnumbered photographs and their accompanying captions on pages 15 to 16 are
8  false and misleading. Among other things, the heads depicted are among an array of
9  different doll heads that Mattel has used, and continues to use, over the course of
10  many years. Moreover, the photographs purport to compare different Mattel doll
11  lines to show alleged changes in appearance even though, in fact, each of the heads
12  are currently sold and/or marketed to the public. The "Blonde" series of
13  photographs encaptioned "original" and "recent" MY SCENE is further and
14  specifically misleading in that it purports to compare two differently named and
15  outfitted dolls in the MY SCENE doll line, both of which continue to be sold and/or
16  marketed.

17        41.    Answering paragraph 41 of the Complaint, Mattel denies the
18  truth of the allegations set forth therein.

19        42.    Answering paragraph 42 of the Complaint, Mattel admits that the
20  photographs purport to depict two packages that were, among others, part of the MY
21  SCENE line, state that the packages speak for themselves and denies the truth of any
22  remaining allegations set forth therein.

23        43.    Answering paragraph 43 of the Complaint, Mattel admits that the
24  photograph purports to depict one of the packages that were, among others, part of
25  the MY SCENE line, states that the parties' packages speak for themselves, states
26  that MGA has failed to establish that it originated, or has protectible rights in, an
27  "open and transparent style" for packaging and denies the truth of the remaining
28  allegations set forth therein.

EXHIBIT _____ _10_

-13-    PAGE _____ _118_
SECOND AMENDED ANSWER AND COUNTERCLAIMS

1        44.    Answering paragraph 44 of the Complaint, Mattel admits that

2 one photograph purports to depict one of the packages that were, among others, part

3 of the MY SCENE line, admits that the other photograph purports to depict one of

4 the packages that were, among others, used as part of the Bratz line, states that the

5 parties' packages speak for themselves, denies that MGA originated, or has

6 protectible rights in, "the 'BRATZ' packaging" or in the packaging depicted in the

7 Complaint and denies the truth of any remaining allegations set forth therein.

8        45.    Answering paragraph 45 of the Complaint, Mattel admits that

9 one photograph purports to depict one of the packages that were, among others, part

10 of the MY SCENE line, admits that the other photograph purports to depict one of

11 the packages that were, among others, used as part of the Bratz line, states that the

12 parties' packages speak for themselves, denies that MGA originated, or has

13 protectible rights in, the packaging depicted in the Complaint and denies the truth of

14 any remaining allegations set forth therein.

15        46.    Answering paragraph 46 of the Complaint, Mattel states that it

16 has utilized a wide variety of packaging styles and shapes over the years, states that

17 the relevant packaging speaks for itself, states that MGA lacks protectible rights in

18 "non-rectangular shaped box" packaging or in the other elements MGA claims in

19 paragraph 46, and denies the truth of the remaining allegations set forth therein.

20        47.    Answering paragraph 47 of the Complaint, Mattel denies that

21 any alleged "theme" is "MGA's theme," denies that MGA originated or has rights to

22 any theme and denies the truth of the remaining allegations set forth therein.

23        48.    Answering paragraph 48 of the Complaint, Mattel admits that it

24 released a doll called "Chillin Out!", states that it has released such themed dolls

25 over the course of many years, admits MGA released a "Wintertime Wonderland"

26 themed doll, denies that MGA originated or has rights to such theme, states that the

27 relevant products speak for themselves and denies the truth of the remaining

28 allegations set forth therein.        **EXHIBIT** _____ _10_

1        49.    Answering paragraph 49 of the Complaint, Mattel admits that it

2    released a doll called "Night on the Town", states that it has released such themed

3    dolls over the course of many years, admits MGA released a "Formal Funk" themed

4    doll, denies that MGA originated or has rights to such theme, states that the relevant

5    products speak for themselves and denies the truth of the remaining allegations set

6    forth therein.

7        50.    Answering paragraph 50 of the Complaint, Mattel admits that it

8    released a doll called "Jammin' in Jamaica" and a playset called "Guava Gulch Tiki

9    Lounge", states that it has released such themed dolls and products over the course

10   of many years, admits that MGA released a "Sun-Kissed Summer" themed doll and

11   playset, denies that MGA originated or has rights to such theme, states that the

12   relevant products speak for themselves and denies the truth of the remaining

13   allegations set forth therein.

14       51.    Answering paragraph 51 of the Complaint, Mattel admits that it

15   has aired television commercials for its MY SCENE line, states that such

16   commercials speak for themselves, denies the truth of the remaining allegations set

17   forth therein and specifically denies that MGA was the originator of or has rights to

18   commercials "combining live action with animated sequences" set to "pop music

19   and lyrics".

20       52.    Answering paragraph 52 of the Complaint, Mattel denies the

21   truth of the allegations set forth therein.

22       53.    Answering paragraph 53 of the Complaint, Mattel admits that it

23   released a MY SCENE "Sound Lounge", admits that MGA released a product called

24   "Runway Disco", states that the relevant products speak for themselves, denies that

25   it "imitated MGA's trapezoidal box," denies that MGA has rights thereto, and

26   denies the truth of the remaining allegations set forth therein.

27       54.    Answering paragraph 54 of the Complaint, Mattel denies the

28   truth of the allegations set forth therein.

EXHIBIT _____ 10

1   55. Answering paragraph 55 of the Complaint, Mattel admits that,

2 among the styling heads it has produced and sold over the course of many years, it

3 released a MY SCENE styling head, admits that MGA released a styling head called

4 "Funky Fashion Makeover Head", states that the relevant products speak for

5 themselves, denies that MGA has protectible rights and denies the truth of the

6 remaining allegations set forth in paragraph 55.

7   56. Answering paragraph 56 of the Complaint, Mattel is without

8 knowledge or information sufficient to form a belief as to the truth or falsity of the

9 allegations set forth therein because plaintiff fails to identify the alleged instances of

10 confusion, including the source of the unidentified picture titled "Hairstyle practice",

11 and on that basis, denies them, and denies the truth of any remaining allegations set

12 forth in paragraph 56.

13   57. Answering paragraph 57 of the Complaint, Mattel admits that it

14 has aired television commercials for its MY SCENE line, states that such

15 commercials speak for themselves and denies the truth of the remaining allegations

16 set forth therein.

17   58. Answering paragraph 58 of the Complaint, Mattel admits that

18 MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

19 denies that MGA originated that phrase or otherwise has rights to it, states that

20 Mattel's web site speaks for itself and denies the truth of the remaining allegations

21 set forth therein.

22   59. Answering paragraph 59 of the Complaint, Mattel admits that,

23 among the plush products that it has produced and sold over the course of many

24 years, it has released plush dogs as part of its MY SCENE "Miami Getaway"

25 themed product line, states that Mattel has for many years sold plush pets of the type

26 used with its MY SCENE dog, admits that MGA has released various Bratz pets,

27 states that MGA was not the originator of and has no rights to the features and other

28

EXHIBIT _____ _10_

2154363.2

-16- PAGE _____ _121_

1 | elements described therein, states that the relevant products speak for themselves
2 | and denies the truth of the remaining allegations set forth therein.

3 |      60.   Answering paragraph 60 of the Complaint, Mattel admits that,
4 | among the plush toys that it has released over the course of many years, its MY
5 | SCENE dog has been sold in packaging depicted (in part) on page 22 of the
6 | Complaint, states that Mattel has for many years sold plush pets and other plush
7 | products in packaging of the type used with its MY SCENE dog, admits that MGA
8 | has released a "Bratz" dog, states that MGA was not the originator of and has no
9 | rights to the packaging described therein, states that the relevant packages speak for
10 | themselves and denies the truth of the remaining allegations set forth therein.

11 |      61.   Answering paragraph 61 of the Complaint, Mattel denies that it
12 | has intended to cause any consumer confusion and states that it is without
13 | knowledge or information sufficient to form a belief as to the truth or falsity of the
14 | allegations set forth therein concerning unnamed retailers, customers and others
15 | because plaintiff fails to identify any source for the matters alleged and, on that
16 | basis, denies them and denies the truth of any remaining allegations set forth therein.

17 |      62.   Answering paragraph 62 of the Complaint, Mattel denies that it
18 | has intended to cause any confusion and states that it is without knowledge or
19 | information sufficient to form a belief as to the truth or falsity of the allegations set
20 | forth therein concerning alleged comments and conversations because plaintiff fails
21 | to identify any source for the alleged comments and conversations and, on that
22 | basis, denies them, and denies the truth of any remaining allegations set forth
23 | therein.

24 |      63.   Answering paragraph 63 of the Complaint, Mattel denies that it
25 | has intended to cause any confusion and states that it is without knowledge or
26 | information sufficient to form a belief as to the truth or falsity of the allegations set
27 | forth therein because plaintiff fails to identify any source for the alleged comments
28 |

EXHIBIT _____ /0

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1 and conversations and, on that basis, denies them, and denies the truth of any
2 remaining allegations set forth therein.

3       64. Answering paragraph 64 of the Complaint, Mattel denies that it
4 has intended to cause any confusion and states that it is without knowledge or
5 information sufficient to form a belief as to the truth or falsity of the allegations set
6 forth therein because plaintiff fails to identify any source for the alleged comments
7 and conversations and, on that basis, denies them, and denies the truth of any
8 remaining allegations set forth therein.

9       65. Answering paragraph 65 of the Complaint, Mattel denies the
10 truth of the allegations set forth therein.

11       66. Answering paragraph 66 of the Complaint, Mattel admits that it
12 sued a competitor in the German courts for unfair competition for copying various
13 Mattel BARBIE line products, states that such claims exclusively arose under and
14 were the subject of German law, states that since that time the Federal Supreme
15 Court has rejected the contention made by MGA in paragraph 66 that
16 "systematically copying and borrowing elements" from competing dolls supports a
17 claim for unfair competition, and denies the truth of the remaining allegations set
18 forth therein.

19       67. Answering paragraph 67 of the Complaint, Mattel denies the
20 truth of the allegations set forth therein.

21       68. Answering paragraph 68 of the Complaint, Mattel admits that it
22 has released dolls called "Wee 3 Friends," admits that MGA has released dolls
23 called "4-Ever Best Friends," states that the relevant products speak for themselves,
24 denies that MGA's packaging is distinctive, denies that MGA has protectible rights
25 thereto and denies the truth of the remaining allegations set forth in paragraph 68.

26       69. Answering paragraph 69 of the Complaint, Mattel admits that its
27 Fisher Price division has released, among other dolls called "Little Mommy," the
28 "Little Mommy Potty Training Baby Doll," admits that MGA has released a

EXHIBIT _____ 10
PAGE _____ 123

-18-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1 │ "Mommy's Little Patient" doll and denies the truth of the remaining allegations set
2 │ forth therein.

3 │     70.     Answering paragraph 70 of the Complaint, Mattel admits that it
4 │ has released die-cast cars and other products called "Acceleracers" as part of its
5 │ HOT WHEELS line, admits that MGA has released products called "AlienRacers,"
6 │ denies that MGA was the originator of or has rights to the elements and matters
7 │ described in paragraph 70, states that the relevant products speak for themselves and
8 │ denies the truth of the remaining allegations set forth therein.

9 │     71.     Answering paragraph 71 of the Complaint, Mattel admits that it
10 │ has aired commercials relating to "Acceleracers," states that such commercials
11 │ speak for themselves, denies the truth of the remaining allegations set forth therein
12 │ and specifically denies that MGA originated or has rights to commercials and other
13 │ matters described therein.

14 │     72.     Answering paragraph 72 of the Complaint, Mattel states that its
15 │ web site speaks for itself, denies the truth of the remaining allegations contained in
16 │ paragraph 72 and specifically denies that Mattel intended to create confusion in the
17 │ marketplace.

18 │     73.     Answering paragraph 73 of the Complaint, Mattel denies the
19 │ truth of the allegations set forth therein.

20 │     74.     Answering paragraph 74 of the Complaint, Mattel denies the
21 │ truth of the allegations set forth therein.

22 │     75.     Answering paragraph 75 of the Complaint, Mattel admits that it
23 │ has reminded certain former employees who became employed by MGA by letter of
24 │ their contractual and fiduciary obligation to maintain the secrecy of all Mattel
25 │ confidential and proprietary business information, states that such letters were
26 │ prepared and sent to their recipients in good faith contemplation of litigation, admits
27 │ that it filed a complaint for declaratory relief against Ronald Brawer in Los Angeles
28 │ Superior Court, entitled Mattel, Inc. v. Brawer, Case No. BC323381, on October 21,

EXHIBIT _____ 10

PAGE _____ 124

-19-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1  2004, states that pursuant to the Court's Order of August 25, 2005 it need not
2  respond to the allegations in paragraph 75 relating to that action, and denies the truth
3  of the remaining allegations set forth in paragraph 75.

4       76.  Answering paragraph 76 of the Complaint, Mattel states that
5  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,
6  including such acts that are lawful in foreign nations, and denies the truth of
7  allegations set forth therein.

8       77.  Answering paragraph 77 of the Complaint, Mattel states that
9  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,
10  including such acts that are lawful in foreign nations, and denies the truth of the
11  allegations set forth therein.

12       78.  Answering paragraph 78 of the Complaint, Mattel states that it is
13  without knowledge or information sufficient to form a belief as to the truth or falsity
14  of the allegations regarding MGA's claimed "shortage of doll hair" and, on that
15  basis, denies them and denies the truth of the remaining allegations set forth therein.

16       79.  Answering paragraph 79 of the Complaint, Mattel states that
17  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,
18  including such acts that are lawful in foreign nations, and denies the truth of
19  allegations set forth therein.

20       80.  Answering paragraph 80 of the Complaint, Mattel denies the
21  truth of the allegations set forth therein.

22       81.  Answering paragraph 81 of the Complaint, Mattel admits that
23  NPD Funworld ("NPD") supplies sales statistics in *inter alia* the toy, PC games and
24  video games industries, admits that to Mattel's knowledge NPD restricts the use of
25  its subscriber information, states that MGA was sued by NPD and states that it is
26  without knowledge or information sufficient to form a belief as to the truth or falsity
27  of the allegations regarding the need of unspecified "toy companies" for NPD

28  EXHIBIT _____ 10

2154363.2

PAGE _____ 125

-20-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  statistics and, on that basis, denies them and denies the truth of any remaining
2  allegations set forth therein.

3        82.   Answering paragraph 82 of the Complaint, Mattel denies the
4  truth of the allegations set forth therein.

5        83.   Answering paragraph 83 of the Complaint, Mattel states that it is
6  without knowledge or information sufficient to form a belief as to the truth or falsity
7  of the allegations set forth therein because MGA fails to quantify its annual
8  subscription fees and, on that basis, denies them.

9        84.   Answering paragraph 84 of the Complaint, Mattel states that it is
10  without knowledge or information sufficient to form a belief as to the truth or falsity
11  of the allegations set forth therein and, on that basis, denies them.

12        85.   Answering paragraph 85 of the Complaint, Mattel states that
13  MGA was sued by NPD, states that it is without knowledge or information sufficient
14  to form a belief as to such nature and grounds for such litigation (to which Mattel
15  was not a party) and, on that basis, denies the allegations relating thereto, and denies
16  the truth of the remaining allegations set forth therein.

17        86.   Answering paragraph 86 of the Complaint, Mattel denies the
18  truth of the allegations set forth therein.

19        87.   Answering paragraph 87 of the Complaint, Mattel admits that the
20  Children's Advertising Review Unit ("CARU") is the children's arm of the
21  advertising industry's self-regulation program, states that compliance with CARU's
22  Privacy Program can provide FTC-approved Safe Harbor under the Children's
23  Online Privacy Protection Act ("COPPA"), and denies the truth of the remaining
24  allegations set forth therein.

25        88.   Answering paragraph 88 of the Complaint, Mattel admits that it
26  is one of dozens of CARU Supporters and denies the truth of the remaining
27  allegations set forth therein.

28

EXHIBIT _____ _10_

PAGE _____ _126_

21543632

-21-

1    89.  Answering paragraph 89 of the Complaint, Mattel denies the
2  truth of the allegations set forth therein.

3    90.  Answering paragraph 90 of the Complaint, Mattel states that it is
4  without knowledge or information sufficient to form a belief as to the truth or falsity
5  of the allegations as to the consequences to MGA of MGA's violations of CARU
6  standards and, on that basis, denies them.

7    91.  Answering paragraph 91 of the Complaint, Mattel states that it is
8  without knowledge or information sufficient to form a belief as to the truth or falsity
9  of the allegations as to the consequences to MGA of MGA violation of CARU
10  standards and, on that basis, denies them.

11    92.  Answering paragraph 92 of the Complaint, Mattel admits that the
12  Toy Industry Association, Inc. ("TIA") is a toy industry trade association, admits
13  that at certain times TIA has given awards called the People's Choice Toy of The
14  Year or the Toy of The Year Award, denies that Mattel wrongfully influenced TIA
15  and states that it is without knowledge or information sufficient to form a belief as
16  to the truth or falsity of the remaining allegations set forth therein and, on that basis,
17  denies them.

18    93.  Answering paragraph 93 of the Complaint, Mattel states that the
19  allegations set forth therein are vague and ambiguous, including in that they fail to
20  properly identify the years in which the referenced awards were given and/or the
21  particular product which won such awards, and accordingly lacks knowledge or
22  information sufficient to form a belief as to the truth or falsity of the allegations set
23  forth therein and, on that basis, denies them.

24    94.  Answering paragraph 94 of the Complaint, Mattel admits that
25  Neil Freidman was the chairman of TIA from approximately May 2002 to May
26  2004, states that Fischer Price is a division of Mattel and denies the truth of the
27  remaining allegations set forth therein.

EXHIBIT _____ 10
PAGE _____ 127

28

2154363.2

-22-
SECOND AMENDED ANSWER AND COUNTERCLAIMS