KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, <br><br> Plaintiff, <br><br> v. <br><br> MATTEL, INC. a Delaware Corporation, <br><br> Defendant. <br><br> CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727 <br><br> **DISCOVERY MATTER** <br><br> [To Be Heard by Discovery Master Hon. Edward Infante (Ret.)] <br><br> **CARTER BRYANT'S REPLY IN SUPPORT OF MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS** <br><br> Date: March 10, 2008 <br> Time: 8:30 a.m. <br><br> Judge: Hon. Stephen G. Larson <br> Date Comp. Filed: April 13, 2005 <br> Discovery Cut-Off: Jan. 28, 2008 <br> Trial Date: May 27, 2008 |

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ....................................................................... 1

II.  ARGUMENT .................................................................................................. 2

    A.  Mattel has long-since waived any objection to Bryant's service of discovery requests by Federal Express and email ............... 2

    B.  Bryant's Motion as to Bryant's Second Set of Interrogatories (No. 20) is not moot, as Mattel's belated response to this interrogatory is deficient and limited by inappropriate objections. ........................................................................................ 6

    C.  Mattel's objections to Bryant's First Set of Requests for Admission ................................................................................................... 9

        1.  Mattel does not contest (other than on service grounds) that it should be compelled to respond to Bryant's Request Nos. 18-25, seeking clarification of Mattel's trade secret contentions vis-à-vis Bryant. .................... 9

        2.  Bryant's Request Nos. 1-13 seek critical information, and Mattel's objections to them are frivolous and wrong. ................................................................................... 10

        3.  Mattel's claims of irrelevance and burden with regard to Bryant's Request Nos. 14-17, 26-42, and 57-66 are overblown. ............................................................................ 11

        4.  Mattel's relevance objections to Bryant's Request Nos. 42-51 and 92-112 regarding Mattel's contentions as to the meaning and scope its standard form employment agreements are without merit. .......................... 13

        5.  Requests Nos. 67-70, and 87-94 regarding Mattel's causation and damages contentions are relevant and appropriate. ....................................................................... 15

        6.  Bryant's Request Nos. 71-86. ................................................ 18

    D.  Mattel's objections to Bryant's Second Set of Requests for Admission .................................................................................................. 18

        1.  Mattel should not be permitted to avoid responding to Request Nos. 116-333 regarding Mattel's contentions as to when certain Bratz sketches were created. ..................... 18

        2.  Request Nos. 113-114 regarding Mattel's contentions as to when Bratz was conceived. ............................................ 20

        3.  Request Nos. 115-116 regarding Mattel's

1

interpretation of its form employment agreement. ...................21

2    E.    Mattel's objections to Bryant's Third Set of Requests for
             Production. ........................................................................21

3

4    F.    Mattel's other arguments are without merit........................................23

III.    CONCLUSION ........................................................................24

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYANT'S REPLY IN SUPPORT OF MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS
CASE NO. CV 04-09049 SGL (RNBx)

# TABLE OF AUTHORITIES

## FEDERAL CASES

<u>Page(s)</u>

*Abbott v. U.S.*,
  177 F.R.D. 92 (N.D.N.Y. 1997)............................................................16, 17

*Booth Oil Site Admin. Group v. Safety-Kleen Corp.*,
  194 F.R.D. 76 (W.D.N.Y. 2000).............................................11, 15, 20, 21

*City Solutions, Inc. v. Clear Channel Committee, Inc.*,
  201 F. Supp. 2d 1048 (N.D. Cal. 2002) ...............................................10

*Cooper v. Stender*,
  30 F.R.D. 389 (E.D. Tenn. 1962)...........................................................3

*Dubin v. E.F. Hutton Group, Inc.*,
  125 F.R.D. 372 (S.D.N.Y. 1989).............................................................11

*Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.*,
  403 F. Supp. 2d 968 (N.D. Cal. 2005) ..............................................10, 14

*Fulhorst v. United Tech. Automobile, Inc.*,
  No. 96-CV-5777, 1997 WL. 873548 (D. Del. Nov. 17, 1997)...........................17

*Magnuson v. Yesteryear*,
  85 F.3d 1424 (9th Cir. 1996)..................................................................3

*Pulsecard, Inc. v. Discover Card Serv., Inc.*,
  168 F.R.D. 295 (D. Kan. 1996)...............................................................19

*Salley v. Board of Governors*,
  136 F.R.D. 417 (M.D.N.C. 1991) ............................................................6

*Sigmund v. Starwood Urban Retail VI, LLC*,
  236 F.R.D. 43 (D.D.C. 2006).............................................................15. 21

*Spartan Grain & Mill Co. v. Ayers*,
  517 F.2d 214 (5th Cir. 1975)..................................................................3

i

412820.01

*Story v. M/T Allegiance,*
  No. 07-CV-139, 2007 WL. 2790760
  (W.D. Wash. Sep. 24, 2007) .......................................................................16

*Switzer v. Sullivan,*
  No. 95 C 3793, 1996 WL 52911 (N.D. Ill. Feb. 5, 1996) ............................3

*Tubar v. Clift,*
  No. C05-1154JCC, 2007 WL. 214260
  (W.D. Wash. Jan. 25, 2007) ..................................................................5, 6, 7

*United Coal Cos. v. Powell Construction Co.,*
  839 F.2d 958 (3rd Cir. 1988) .......................................................................11

**STATE CASES**

*Brandon & Tibbs v. George Kevorkian Accountancy Corp.,*
  226 Cal. App. 3d 442 (1990) .......................................................................16

*GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.,*
  83 Cal. App. 4th 409 (2000) ........................................................................10

*S. Cal. Edison Co. v. Super. Ct.,*
  37 Cal. App. 4th 839 (1995) ........................................................................12

*S. Pac. Transp. Co. v. Santa Fe Pac. Pipelines, Inc.,*
  74 Cal. App. 4th 1232 (1999) ......................................................................12

*Virtanen v. O'Connell,*
  140 Cal. App. 4 th 688 (2000) .......................................................................9

**FEDERAL STATUTES**

Federal Rule of Civil Procedure 5(b) ..........................................................1, 2

Fed. R. Civ. P. 45(b)(1) ....................................................................................5

ii

412820.01

1

## STATE STATUTES

2

3

Cal. Civ. Code § 3336............................................................................9

4

5

Cal. Civ. Code § 3358............................................................................16

6

## OTHER AUTHORITIES

7

8

Local Rule 37-2............................................................................24

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYANT'S REPLY IN SUPPORT OF MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS
CASE NO. CV 04-09049 SGL (RNBx)

412820.01

# I.    PRELIMINARY STATEMENT

Mattel's procedural efforts to sandbag Carter Bryant and avoid responding to Bryant's critical Phase I discovery requests are truly remarkable.  In the 70 pages of briefing that Mattel has now devoted to attacking these requests, it has pulled out every trick in the book, including tricks that already have been adjudicated.  Needless to say, had Mattel devoted even half the time and effort to responding to Bryant's requests that it has to cooking up procedural objections to them, Mattel could have answered these requests months ago.  Burden and diversion of resources from other litigation task plainly are not the real reasons for Mattel's all-out effort to avoid responding.  Yet despite the impressive volume of Mattel's briefing, its objections and arguments are without substantive merit. Bryant's Second Set of Interrogatories (No. 20), First and Second Sets of Requests for Admission, and Third Set of Requests for Production (collectively, "the discovery requests") are timely, relevant, appropriately-crafted requests that Mattel must answer.

Mattel's principal excuse for not responding to Bryant's requests is that they were not properly served.  But it is far too late for Mattel to be making this claim. Mattel consistently has accepted service of discovery documents from Bryant via email and/or Federal Express without objection.  Mattel never raised any concerns regarding service of the discovery requests by email and FedEx during the parties' extensive meet and confer sessions in January.  And Mattel itself repeatedly has served discovery documents, including documents that are required to be served in accordance with Federal Rule of Civil Procedure 5(b), on counsel for Bryant via Federal Express.  This conduct by Mattel is inconsistent with, and serves to estop Mattel from making, the service objection upon which it now seeks to rely.

Mattel's other objections to Bryant's requests, almost without exception, are boilerplate and without merit, despite the reams of paper that Mattel has sacrificed in its attempts to justify them.  For example, after years of arguing vociferously to

1

1 this Court that it is entitled to broad-ranging discovery on almost every

2 conceivable topic relating to Bryant, MGA and Bratz, Mattel now attempts to

3 argue that discovery requests seeking to confirm such straightforward facts as

4 whether or not Bryant was an officer or director of Mattel are irrelevant

5 (notwithstanding Mattel's breach of fiduciary duty claim).  Mattel also attempts to

6 argue that requests seeking to clarify Mattel's contentions regarding the scope and

7 meaning of the very employment documents it is accusing Bryant of breaching are

8 irrelevant.  The Court should not accept Mattel's invitation to apply a dramatically

9 different test for relevancy and burden now that Mattel is seeking to avoid its

10 discovery obligations, rather than championing ever more discovery.

## II.    ARGUMENT

**A.    Mattel has long-since waived any objection to Bryant's service of discovery requests by Federal Express and email.**

14     Mattel's principle argument in support of its refusal to respond to Bryant's

15 discovery requests is, as expected, that Bryant failed to comply with the letter of

16 Federal Rule of Civil Procedure 5(b).  But as explained in Bryant's opening brief,

17 Bryant acknowledges that he did not strictly comply Rule 5(b).  The question

18 before the Court, therefore, is whether there is good cause to excuse Bryant's

19 oversight.  And there is.

20     At the outset, it is worth reviewing what Mattel *does not* dispute in its epic

21 opposition brief.  Mattel does not dispute that it had actual notice of all of the

22 discovery requests on or before December 27, 2007—*i.e.,* sooner than if Bryant

23 had served the requests by mail.  Further, Mattel does not dispute that Bryant had

24 previously served discovery documents on Mattel via FedEx and email, without

25 any complaint or objection from Mattel.  Nor does Mattel dispute that it never

26 raised any objection regarding service during the parties' extensive conferences of

27

28

412820.01

counsel regarding the discovery requests in January 2008.[1]  Moreover, while Mattel claims that Bryant's service of his Third Set of Requests for Production (and only those requests) by FedEx and email "arguably" resulted in some prejudice (*i.e.,* some unspecified docketing confusion at Quinn Emanuel), Mattel's Opp. at 10, that arguable "prejudice" has long since been ameliorated. Consequently, Mattel cannot argue that it will presently suffer any prejudice on grounds of service if required to answer Bryant's requests.  And finally, Mattel does not dispute that Bryant will be prejudiced if Mattel is permitted to avoid responding to these requests based upon a harmless procedural technicality.

Unable to dispute any of these material issues, Mattel attempts instead to argue that the 2001 amendments to Rule 5(b) supersede the good cause exception to service by U.S. Mail or personal service recognized in *Magnuson v. Yesteryear*, 85 F.3d 1424 (9th Cir. 1996), and other cases.  Mattel is wrong.  In the seven years since the 2001 amendments to Rule 5(b), neither the Ninth Circuit nor any court within the Ninth Circuit has found *Magnuson* to be superseded.  To the contrary,

---

[1] Mattel does argue that its failure to raise its service objection during the parties' numerous conferences of counsel should not preclude it from later objecting on the basis of service.  *See* Mattel's Opp. at 9.  Notably, Mattel does not claim that it was unaware of its potential service objection at the time that it engaged in these conferences (nor could it, given that the form of service utilized by Bryant was in no way secret).  Rather, Mattel merely claims that it was under no obligation to raise that objection, and was entitled to lead Bryant to believe that it would be responding substantively to many, if not all, of the discovery requests.  However, this type of argument was rejected in *Switzer v. Sullivan*, No. 95 C 3793, 1996 WL 52911 (N.D. Ill. Feb. 5, 1996) (finding that defendant was estopped from objecting on the basis of service by facsimile given, *inter alia*, that defendant never "attempted to consult with [plaintiff's] attorney concerning the defect in service he now complains of").  And for good reason.  The goal of the discovery rules is to promote resolution of disputes on the merits and to prevent litigation by surprise. Mattel's "gottcha" tactics are contrary to this fundamental goal.  *See Spartan Grain & Mill Co. v. Ayers*, 517 F.2d 214, 220 (5th Cir. 1975) (explaining that the overall goal of the Federal Rules is "resolving disputes … on the merits"); *Cooper v. Stender*, 30 F.R.D. 389, 393 (E.D. Tenn. 1962) ("The broad purpose of the discovery rules is to enable the parties to prepare for trial.  If the discovery rules are properly used, each party will know what to expect at the trial on the merits. Each party will know the strength and weaknesses of his case and will not be taken by surprise at the trial on the merits.  It is not the purpose of the discovery rules to give one party a strategic advantage over the other.")

1    district courts within the Ninth Circuit have continued to find a waiver of Rule 5(b)

2    service objections based upon implied consent, notwithstanding the 2001

3    amendments.  For example, in *Tubar v. Clift*, No. C05-1154JCC, 2007 WL

4    214260, at *6 (W.D. Wash. Jan. 25, 2007), the defendants argued that certain

5    subpoenas should be quashed because notice of the subpoenas was served by the

6    plaintiff only by email, and they had not consented in writing to email service.  *Id.*

7    at *6.  The court agreed that service of a notice of subpoena by email, absent

8    written consent, failed to meet the requirements of Rule 5(b) (as amended in 2001).

9    *Id.*  However, the court went on to "find[] this defect in procedure to be an

10   insufficient basis by which to quash the subpoenas, given the fact that Defendants

11   themselves have electronically served documents on Plaintiff in the past."  *Id.*

12   Thus, six years after the 2001 amendments, implied consent to service my email,

13   based on the recipients' conduct, remained a valid basis for excusing technical

14   violations of Rule 5(b).

15        Tacitly acknowledging that *Magnuson* remains good law, Mattel next tries to

16   argue that it has not waived its right to object to service by Federal Express and

17   email by its conduct in this litigation.  First, Mattel argues that it has objected to

18   Federal Express and email service in the past.  However, these objections, which

19   date from more than a year ago, related to service of discovery pleadings relating

20   to motions pending before the Discovery Master.  *See* Proctor Decl. Exs. 14-15.

21   At that time, in an earlier round of "gottcha" gamesmanship, Mattel attempted to

22   argue that Mattel's signing of the stipulation and order appointing the Discovery

23   Master did not constitute consent to service by email, despite the stipulation's

24   express provision that "service of any document by fax or electronic mail prior to

25   6:00 p.m. shall constitute service on that day."  Stipulation for Appointment of a

26   Discovery Master; and Order dated December 6, 2006 ("Discovery Master

27   Order"), at 5, ¶ 5 (discussing the timing of discovery motions, oppositions and

28   replies).  That argument was without merit when it was made.  And in since

BRYANT'S REPLY IN SUPPORT OF MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS
CASE NO. CV 04-09049 SGL (RNBx)

making it, Mattel itself repeatedly has served its own discovery pleadings on counsel for Bryant exclusively by email and Federal Express. *See* Supplemental Declaration of Matthew M. Werdegar In Supp. of Bryant's Motion to Compel Responses to Discovery Requests ("Suppl. Werdegar Decl."), Exs. A-C (proofs of service for various Mattel discovery pleadings)

Second, Mattel argues that the Court should not construe its acceptance of service of discovery responses by Bryant via FedEx and email as consent to accept service of discovery requests by these means. In drawing this distinction, Mattel claims that "[i]f a party wishes to demand information, with the coercive power of the Court backing it, it must properly serve its demands." Mattel's Opp., at 8. The problem with this argument—in addition to the fact that it does not square with the exception recognized in *Manguson* and numerous other cases—is that Mattel itself has failed to live up to this purported standard. Indeed, Mattel repeatedly has served discovery demands of its own on counsel for Bryant by FedEx, and not U.S. Mail or personal service, as strictly required by Rule 5(b).

For example, on December 18, 2007, just a few days before Bryant served the discovery requests at issue on Mattel, Mattel served its Notice of Subpoena Issued to the Foothills Business Services ("Foothills")—Bryant's accountants—on Bryant's counsel via FedEx. Suppl. Werdegar Decl. Ex. D. Mattel's subpoena sought the production of any and all financial documents in Foothills' possession relating to Bryant or Carter Bryant Enterprises. *See id.* Mattel served this notice by FedEx, even though notices of subpoenas seeking the production of documents are expressly required to be served in accordance with Rule 5(b). *See, e.g., Tubar*, 2007 WL 214260, at *6 (notice of subpoena seeking documents required to be served in the manner prescribed by Rule 5(b); *see also* Fed. R. Civ. P. 45(b)(1).[2] A

---

[2] Up to the effective date of the 2007 amendments to the Federal Rules, Rule 45(b)(1) stated that prior notice of a subpoena seeking the production of documents "shall be served on each party in the manner prescribed by Rule 5(b)." The 2007 amendments omit the "in the manner prescribed by Rule 5(b)" language.

BRYANT'S REPLY IN SUPPORT OF MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS
CASE NO. CV 04-09049 SGL (RNBx)

1   few days earlier, on December 14, 2007, Mattel also served its Notice of Subpoena

2   Issued to the Isaac Larian and Angela Larian Trust and its Notice of Subpoena

3   Issued to the Isaac Larian Annuity Trust, both of which subpoenas sought the

4   production of documents, on counsel for Bryant via FedEx only, again in violation

5   of Rule 5(b). *See* Suppl. Werdegar Decl. Exs. E-F.

6           In short, Mattel itself repeatedly has done exactly what it accuses Bryant of

7   doing—serving discovery demands, which trigger obligations on the part of Bryant

8   (*e.g.,* to move to quash or acquiesce to the production of the demanded

9   documents)—by means other than those expressly permitted by Rule 5(b).  By

10  doing so—and by also repeatedly accepting discovery documents from Bryant

11  served in the same manner—Mattel led Bryant to believe that service by such

12  means was acceptable to Mattel.  Consequently, Mattel is now estopped from

13  objecting to service by the identical means by Bryant.  In this regard, Mattel's

14  objections are no different from those rejected by the court in *Tubar.*  2007 WL

15  214260, at *6.  As the *Tubar* court explained:  *"Defendants' objection to the same*

16  *method [of service] they have used when later employed by Plaintiff is*

17  *disingenuous." Id.*  (emphasis added); *see also Salley v. Bd. of Governors*, 136

18  F.R.D. 417, 421 (M.D.N.C. 1991) (defendant implicitly agreed to service by

19  facsimile where defendant accepted service by facsimile on prior occasions

20  without objection).  There is no reason for the Court to reach a different conclusion

21  in this case.  Accordingly, the Court should find the discovery requests to have

22  been properly served.

23  **B.    Bryant's Motion as to Bryant's Second Set of Interrogatories (No. 20) is**
        **not moot, as Mattel's belated response to this interrogatory is deficient**
24      **and limited by inappropriate objections.**

25          As noted in Bryant's Opening Memorandum, Mattel promised to provide a

26  substantive response to Bryant's Second Set of Interrogatories (No. 20) by

27  _____

28  However, the Advisory Committee notes regarding the 2007 amendments explain
    that "[t]hese changes are intended to be stylistic only."

February 22, 2008.  However, Mattel refused to stipulate that Bryant could bring a motion regarding the sufficiency of that response after receiving it, were such a motion necessary.  *See* Bryant's Opening Br., at 10-11; Werdegar Decl. Exs. U & W.  February 22nd came and went without any substantive response from Mattel, notwithstanding its counsel's promise.  Finally, on March 4, 2008, two weeks late, Mattel served a substantive response to this interrogatory, albeit one limited by all of the same boilerplate objections interposed in its original response served on January 28, 2008.  *See* Proctor Decl. Ex. 17.

Mattel claims its service of this response moots Bryant's motion to compel with respect to this interrogatory.  In making this argument, Mattel relies on certain arguments made by Bryant in opposing Mattel's Motion to Compel Responses to Interrogatories—namely, that service of a supplemental responses moots a motion to compel directed at the respondents original response—which Mattel vigorously opposed.  *See* Mattel's Opp. at 11.  However, as Mattel well-knows, the Discovery Master did not find Mattel's motion to be moot, notwithstanding Bryant's arguments.  *See generally* Order dated Feb. 20, 2008.  To the contrary, the Discovery Master carefully considered the adequacy of Bryant's supplemental interrogatory responses in ruling on Mattel's motion.  *See id.*, at 4, 6 (finding Bryant's supplemental responses to be adequate).  Consistent with this law of the case and as a matter of equity, the Discovery Master should do the same here.  And it should find that Mattel's response to be inadequate.

Mattel presents no argument whatsoever in defense of its boilerplate objections to Bryant's interrogatory.  Consequently, for all the reasons set forth in Bryant's opening brief, the Court should overrule those objections in their entirety. *See* Opening Br., at 11-12.

Turning to the substance of Mattel's response, even a cursory review shows that it is vague and, in many respects, non-responsive.  First, much of Mattel's interrogatory response is not about Bryant at all, but about the alleged wrongdoing

7

412820.01

1  of others, such as Veronica Marlow and Margaret Hatch-Leahy. *See* Proctor Decl.

2  Ex. 17, at 250-251. These portions of Mattel's response are entirely non-

3  responsive, as the Interrogatory only asks about Bryant's alleged misuse of Mattel

4  property and resources, not that of third-parties.

5        Second, Mattel's interrogatory response is couched throughout with terms

6  like "such as" and "for example", which terms are designed and intended to leave

7  Mattel room to assert additional or different contentions on this topic at trial. Most

8  glaringly, Mattel claims that Bryant "borrowed" some of his ideas from preexisting

9  Mattel projects, and provides a handful of alleged examples. But Mattel is careful

10 not state that these examples are the only Mattel projects that it is accusing Bryant

11 of borrowing from, leaving open the opportunity for Mattel to surprise Bryant at

12 trial with allegations that he utilized other, undisclosed Mattel projects. *See id.*, at

13 251-252. This late in the game, with Phase I discovery closed, such evasive tactics

14 should not be condoned.

15       Mattel's response with respect to tangible resources—as opposed to Mattel

16 intellectual property—that Mattel accuses Bryant of misusing is similarly vague

17 and evasive.  Mattel states that Bryant "recruited and used Mattel personnel and

18 materials to create Bratz", but nowhere indicates in its response whether the few

19 instances it thereafter cites represent all of the personnel and materials that Mattel

20 contends he utilized, or only selective examples. *See id.*, at 250. If the latter, then

21 Mattel should be compelled to supplement its response, so it cannot surprise

22 Bryant at trial. And if the former, Mattel should be compelled to make that clear

23 so that there is no confusion.

24       Third, Interrogatory No. 20 requires Mattel to state what it contends to be

25 the monetary value of each item of property and each resource misused by Bryant.

26 *See* Werdegar Decl. Ex. A, at 2 (defining "IDENTIFY" "with reference to

27 'MATTEL property or resources'" to mean "provide a complete description of the

28 property or the resource, *including but not limited, its monetary value or estimated*

1   *monetary value.* (emphasis added)).  Mattel's response fails to provide this

2   information with respect to any of the examples of Mattel property and resources

3   that it actually identifies, although Mattel did not object to providing this

4   information in its response.  Mattel should be compelled to provide this

5   information.  Information regarding the value of the property and resources that

6   Mattel contends Bryant misused is directly relevant to disproving Mattel's

7   exorbitant damages claims in this case, including in particular its damages claims

8   relating to its conversion cause of action.  *See Virtanen v. O'Connell*, 140 Cal.

9   App. 4th 688, 708 (2006) ("As a general rule, the normal measure of damages for

10   conversion is [t]he value of the property at the time of the conversion[.]" (internal

11   quotations omitted; alterations in original); Cal. Civ. Code § 3336 (damages for

12   conversion based upon "[t]he value of the property at the time of the conversion").

13        In sum, Mattel's objections to Bryant's Interrogatory No. 20 should be

14   overruled, and Mattel should be ordered to provide a complete response that makes

15   clear exactly what property and resources it is accusing Bryant of misusing and

16   converting, and Mattel's estimate of the value of the property.  This information is

17   necessary for Bryant to prepare his defense in this case and to prevent Mattel from

18   surprising Bryant at trial.

19   **C.    Mattel's objections to Bryant's First Set of Requests for Admission.**

20        **1.    Mattel does not contest (other than on service grounds) that it
            should be compelled to respond to Bryant's Request Nos. 18-25,**
21          **seeking clarification of Mattel's trade secret contentions vis-à-vis**
            **Bryant.**
22

23        Nowhere in its 45-page opposition brief does Mattel attempt to defend its

24   objections to Bryant's Request Nos. 18-25, which seek to clarify Mattel's

25   contentions regarding whether Bryant has stolen any Mattel trade secrets.

26   Consequently, the Court should treat this portion of Bryant's motion as unopposed

27   (except as to Mattel's general objection based on service), and it should order

28   Mattel to respond to these requests without objection.

9

412820.01

2.   **Bryant's Request Nos. 1-13 seek critical information, and Mattel's objections to them are frivolous and wrong.**

Mattel claims that Bryant's requests for Admission Nos. 1-13—which ask Mattel to admit or deny that Bryant had certain job duties or authority, such as whether Bryant was an officer or director of Mattel, or whether he had the authority to hire or fire other employees, while an employee at Mattel[3] —are irrelevant because "[a]s a matter of law, an employer has the right to expect the undivided loyalty of its employees." Mattel's Opp. at 36.  Even if this sweeping statement of law were accurate (which it is not; the true state of the law is far more nuanced), it is a complete non sequitur.  Although Mattel is accusing Bryant of breach of the duty of loyalty (Mattel's Ninth Counterclaim), which is the subject of the *Dana Perfumes* case cited by Mattel in support of its legal pronouncement, Mattel is *also* separately accusing Bryant of breach of fiduciary duty (Mattel's Seventh Counterclaim), which has entirely different legal requirements.

To prevail on its breach of fiduciary duty claim, Mattel must prove that Bryant either held a very senior position within Mattel, such as that of an officer or director, with significant discretionary authority, or that he contractually agreed to assume the duties and obligations of a legally-recognized fiduciary position, beyond merely entering into an employment or confidentiality agreement.  *See Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.*, 403 F. Supp. 2d 968, 976 (N.D. Cal. 2005) ("In California, a fiduciary of a corporation is defined as 'an officer who participates in management of the corporation, exercising some discretionary authority.'" (quoting *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 420-21 (2000)); *see also City Solutions, Inc. v. Clear Channel Comm., Inc.*, 201 F. Supp. 2d 1048, 1049 (N.D. Cal. 2002) (fiduciary obligations are not imposed "simply because the parties to a contract

---

[3] *See, e.g.,* Werdegar Decl. Ex. B at 3-4.

1   reposed trust and confidence in each other."). Request Nos. 1-13 all are directly

2   relevant to establishing that Mattel cannot prove that Bryant was a fiduciary based

3   on his position within Mattel. They thus serve the appropriate and critical role of

4   "narrow[ing] issues for trial to those which are genuinely contested." *United Coal*

5   *Cos. v. Powell Constr. Co.*, 839 F.2d 958, 967 (3rd Cir. 1988); *see also Booth Oil*

6   *Site Admin. Group v. Safety-Kleen Corp.*, 194 F.R.D. 76, 79-80 (W.D.N.Y. 2000)

7   ("The purpose of Fed.R.Civ.P. 36 is 'for facilitating the proof at trial by weeding

8   out facts and items of proof over which there is no dispute.'"); *Dubin v. E.F.*

9   *Hutton Group, Inc.*, 125 F.R.D. 372, 375 (S.D.N.Y. 1989) (Rule 36 allows

10  "narrowing or elimination of issues in a case" through obtaining admissions of

11  facts conceded by parties). Consequently, until and unless Mattel withdraws its

12  *breach of fiduciary duty* claim, these requests for admission are directly relevant

13  and well-within the scope Rule 26.

14      **3.    Mattel's claims of irrelevance and burden with regard to Bryant's Request Nos. 14-17, 26-42, and 57-66 are overblown.**

15

16      Mattel claims that Bryant's Request Nos. 14-17, 26-42, and 57-66 are

17  irrelevant and unduly burdensome. Mattel is wrong on both counts.

18      Request Nos. 57-66 simply ask Mattel whether it prohibits certain conduct

19  by its employees, such as whether Mattel doll hair rooters are prohibited from

20  performing doll hair rooting for persons other than Mattel while employed at

21  Mattel. Werdegar Decl. Ex. B, at 10 (Request No. 57). There is nothing "abusive"

22  or unduly burdensome about these requests. *Cf.* Mattel's Opp., at 26. To the

23  contrary, answering these requests only requires Mattel to admit or deny whether it

24  has certain employment rules and policies governing certain specified conduct,

25  which is something that any HR executive at Mattel ought to know. It does not

26  require any burdensome searching of any employee files. Bryant is unquestionably

27  entitled to know whether employee conduct that Mattel has put at issue in this

28  litigation is in fact prohibited by Mattel. *See, e.g.,* Proctor Decl. Ex. 17, at 250

1  (Mattel's Response to Interrogatory No. 20, citing as an example of Bryant's

2  misuse of Mattel resources that "Bryant also recruited another Mattel employee

3  named Carmen Monteagudo to perform hair rooting for the Bratz doll prototype").

4  Mattel should be required to answer all of these requests without objection.

5       Request Nos. 26-42 ask Mattel to admit or deny whether other Mattel

6  employees have moonlighted for other companies without obtaining Mattel's

7  approval, while requests Nos. 14-17 ask whether Mattel has sued or threatened to

8  sue any other former employees for breaching the standard form employment

9  agreement that forms the basis of its claims against Bryant.  Together, these

10  requests are relevant to show that Mattel has not interpreted or enforced its

11  employment polices and agreements in the draconian manner it is now seeking to

12  for purposes of this litigation.  Under well-established California law, the parties'

13  course of conduct after the contract was entered into, but before any dispute arose,

14  is relevant to interpreting the disputed terms.  *See S. Pac. Transp. Co. v. Santa Fe*

15  *Pac. Pipelines, Inc.* 74 Cal. App. 4th 1232, 1242 (1999).  Moreover, this rule is

16  not limited to the joint conduct of the parties; "the conduct of one party is relevant

17  to show that the contract is reasonably susceptible to the meaning evidenced by

18  that party's conduct."  *S. Cal. Edison Co. v. Super. Ct.*, 37 Cal. App. 4th 839, 851

19  (1995) (internal citations omitted).  These requests are all relevant to show that

20  Mattel has never acted in a manner consistent with its proffered interpretation of

21  the contract at issue in this case.  Furthermore, these requests are relevant to

22  Bryant's affirmative defenses of consent and waiver, in that they could lead to

23  admissible evidence that Mattel has acquiesced to outside creative work by its

24  employees, including Bryant.

25       Mattel's claims that these requests are unduly burdensome also are without

26  merit.  As explained in Bryant's opening brief, given the high stakes of this

27  litigation, and the burden that Mattel consistently has argued it is entitled to impose

28  on Bryant and MGA in responding to discovery, these requests are not unduly

12

1   burdensome.  Moreover, as Mattel acknowledges, Bryant offered in early January,

2   long before Mattel's responses were due, to limit the search that Mattel would be

3   required to perform to respond to these requests to employees at Mattel's El

4   Segundo Design Center and to the files of its Human Resources Department, its

5   Legal Department, and its Global Security Department.  Werdegar Decl. ¶¶ 20, 31.

6   At that time, Mattel's counsel stated that Bryant's proposal represented a

7   "substantial narrowing" of the requests.  *Id.* ¶ 20.

8          Mattel is unquestionably a litigious company, but even so, it cannot be very

9   difficult for Mattel's Legal Department to determine whether the company has

10  previously filed suit or threatened to file suit against any of its Design Center

11  employees based upon an alleged breach of its standard form employment

12  agreement (Request Nos. 14-17).  And with respect to moonlighting by those

13  employees (Request Nos. 26-42), the Discovery Master already has ordered Mattel

14  to conduct a search of its files that is just as burdensome, if not more so, than the

15  search that Mattel claims it would be required to perform to respond to these

16  requests (as limited by Bryant).  *See* Order dated Feb. 20, 2008 (a copy of which is

17  attached as Exhibit 2 to the Supplemental Declaration of Dylan Proctor filed on

18  March 5, 2008).  Indeed, Mattel could have performed both searches at the same

19  time, had it chosen to, thereby eliminating any additional burden imposed by these

20  requests.

21          **4.     Mattel's relevance objections to Bryant's Request Nos. 42-51 and
                     92-112 regarding Mattel's contentions as to the meaning and
22                   scope its standard form employment agreements are without
                     merit.**
23

24          The sole basis that Mattel relies upon in its opposition to justify its refusal to

25  respond to these requests (other than the service issue) is that they seek information

26  that is not relevant.  Mattel's position strains credulity.

27          Request Nos. 42-49 ask Mattel to admit or deny whether its standard form

28  employment agreement prohibits certain conduct by Mattel's employees, such as

13

412820.01

leaving Mattel to work for a competitor or start their own toy company, and whether other Mattel employees have in fact engaged in such conduct. Bryant is entitled to know Mattel's contentions regarding the meaning and scope of the contract it is accusing him of breaching, and these requests are aimed at exactly that. These requests, if admitted, will narrow the issues at trial, as they will make clear that Mattel is not basing its claims against Bryant on Bryant's decision to leave Mattel to work as an independent freelancer working with MGA, and that Bryant's decision to do so, by itself, did not breach his employment agreement with Mattel and was in no way out of the ordinary for Mattel employees.

Request No. 49 simply asks Mattel to admit that Bryant's employment was at will. This request is relevant, among other things, to show that Bryant was not a fiduciary of Mattel, as ordinary, at-will employees are not fiduciaries under California law. *See Enreach Tech*, 403 F. Supp. 2d at 976. Similarly, Request Nos. 50 and 51 simply ask Mattel to admit that its employees, including Bryant, are not required to give notice before terminating their employment. These requests too are relevant to proving that Bryant was not a fiduciary. All of these requests also are relevant to Mattel's breach of contract claim, as they will show that Bryant was free to leave Mattel at any time and for any reason, and that his decision to go work with MGA as a freelancer was lawful and appropriate. There is no burden associated with responding to these requests, since Mattel presumably knows, without searching its files, whether Bryant was an at will employee and whether it requires its employees to give notice before leaving the company.

Request Nos. 95-112 ask Mattel to admit or deny whether Bryant was required to disclose to Mattel, either in the Conflict of Interest Questionnaire he was required to sign on his first day at work or otherwise, any designs, ideas or inventions that he developed while not employed by Mattel. That Mattel claims these requests are irrelevant is simply incredible. In its SAAC (under the heading "MGA Steals a New Line of Fashion Dolls From Mattel"), Mattel specifically

14

alleges that:

> [¶ 24]  On January 4, 1999, Bryant also executed Mattel's Conflict of Interest Questionnaire (the "Conflict Questionnaire").  Among other things, Bryant certified in the Conflict Questionnaire that, other than as disclosed, he had not worked for any competitor of Mattel in the prior twelve months and had not engaged in any business venture or transaction involving a Mattel competitor that could be construed as a conflict of interest. …

> [¶ 25]  Pursuant to the Conflict Questionnaire, Bryant also agreed that he would immediately notify his supervisor of any change in his situation that would cause him to change any of the foregoing certifications.  Despite this obligation, at no time did Bryant disclose to Mattel that he was engaging in any business venture or transaction with MGA or any other Mattel competitor

*See also id.* ¶¶ 118-119 (claiming the Conflict Questionnaire is a valid and binding contract and accusing Bryant of breaching that contract).  Thus, Mattel directly accuses Bryant of failing to comply with terms of its form Conflict Questionnaire.  In light of those allegations, Bryant is entitled to know whether Mattel contends that he was obligated to disclose his pre-existing Bratz ideas under his agreements with Mattel.  *See Sigmund v. Starwood Urban Retail VI, LLC*, 236 F.R.D. 43, 46 (D.D.C. 2006) ("A request for admission that relates to the interpretation of a contract at issue in a case involves the application of law to the unique facts of that case and, therefore, would be permissible under the amended Rule 36."); *Booth Oil*, 194 F.R.D. at 80 ("[W]here the question of the meaning of the document is at issue in the case, a request directed to another party seeking an admission or denial of a document's meaning or intent by that party as stated in the request relates to a statement fact, and is authorized by Rule 36.").

### 5.    Request Nos. 67-70, and 87-94 regarding Mattel's causation and damages contentions are relevant and appropriate.

Mattel claims that Requests Nos. 67-70 pose improper hypothetical scenarios and, therefore, need not be answered.  Yet Request Nos. 69-70 do not ask Mattel to admit or deny any hypothetical; they merely ask Mattel to admit or deny whether it is making a particular contention in this case.  If, as Mattel claims, these

15

contentions are unrelated to the facts of the case as Mattel understands them, then it should be easy for Mattel to deny that it is making these contentions, in which case they will no longer be at issue.  Furthermore, all of these requests are relevant and are directly tied to Mattel's factual allegations in this case.  As discussed in Bryant's opening brief, a central premise of Mattel's case is that but for Bryant's wrongful conduct, Mattel would have been able to exploit his Bratz idea and reap the profits that MGA has reaped from that idea.  Opening Br., at 17.  Indeed, Mattel is expressly seeking the recovery of the profits it claims it has lost as a result of Bryant's and MGA's allegedly wrongful conduct.  *See, e.g.,* SAAC ¶ 160 ("Mattel is entitled to damages in an amount sufficient to indemnify Mattel for the loss suffered, which … includes *the lost profits that Mattel has suffered*" (emphasis added)), Prayer for Relief ¶ 10 ("That Mattel recover its actual damages and *lost profits*" (emphasis added)).  Consequently, Mattel's argument that "[w]hat Mattel would have done with its intellectual property is irrelevant", Mattel's Opp. at 34, is not supported by Mattel's own allegations.  Whether Mattel would have taken steps to commercially exploit Bryant's Bratz idea (or not, as is more likely the case) is relevant to disprove the lost profits aspect of Mattel's damages case.  *See, e.g.,* Cal. Civ. Code § 3358 ("[N]o person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides."); *Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal. App. 3d 442, 467-68 (1990) (holding same).

Because Request Nos. 67-70 are grounded in Mattel's own allegations in this case, they are distinctly different from the requests for admission disapproved of in the cases cited by Mattel.  In those cases, the requests at issue were requests seeking pure admissions of law.  *See, e.g., Story v. M/T Allegiance*, No. 07-CV-139, 2007 WL 2790760, at *1 (W.D. Wash. Sep. 24, 2007) ("[P]laintiff is requesting a legal conclusion in response to his request for admission…. Requests for admissions of law unrelated to the facts of a case are improper."); *Abbott v.*

1   *U.S.*, 177 F.R.D. 92, 93 (N.D.N.Y. 1997) ("The defect of this request is plain-

2   plaintiffs have attempted to have the Government respond to a legal question

3   unconnected to the facts of the case at bar."); *Fulhorst v. United Tech. Auto., Inc.*,

4   No. 96-CV-5777,  1997 WL 873548, at *2  (D. Del. Nov. 17, 1997) ("requests that

5   seek legal conclusions are not appropriate under Rule 36").  Notably, in *Fulhorst,*

6   the court stated that "requests for admission may relate to statements or opinions of

7   fact." 1997 WL 873548, at *2.

8       Request Nos. 87-91 are similarly relevant to Mattel's lost profits claims.

9   These straightforward requests ask Mattel to admit that in the relevant time period

10  it had a policy of not marketing more than one line of "flanker products"—*i.e.,*

11  products that Mattel believes will compete with its Barbie line.[4]  Bryant believes,

12  and documents and other evidence provided by Mattel show, that Mattel had such

13  a policy.  These requests simply seek to confirm that evidence, thereby eliminating

14  the need to spend time at trial proving the existence of this policy.  Of course, if

15  Mattel had such a policy, it would provide additional evidence that Mattel would

16  not have commercially exploited Bratz, had Bryant pitched it to Mattel, because

17  Mattel already had a line of flanker products in place during the relevant time

18  period.

19      Request Nos. 93-94 also relate to whether or not Mattel ever would have

20  sought to exploit Bratz.  These requests ask Mattel to admit that it cancelled its

21  "Toon Teens" doll project because of some of the very attributes that have made

22  Bratz so distinctive and successful in the marketplace.

23      Given that Mattel directly accuses Bryant of "borrowing" from Toon Teens

24  

_____

25  [4] The term "FLANKER PRODUCT", which is a term used within Mattel, is
    defined in Bryant's Requests for Admission to "mean brands, dolls, products, or

26  product lines that MATTEL believed would compete with its Barbie line of
    products in the marketplace or that customers might buy instead of buying one of

27  MATTEL's Barbie line of products, and includes, but is not limited to, products,
    dolls, or brands that MATTEL referred or refers to as 'flanker doll' or 'flanker

28  brand' in documents bearing bates numbers M0014259, M0014264, and
    M0067258-277." Werdegar Decl. Ex. B, at 1.

412820.01

1  to formulate his ideas for Bratz, these requests are plainly relevant. *See* Proctor

2  Decl. Ex. 17, at 252 (Mattel's Supplemental Response to Interrogatory No. 20,

3  stating: "[T]he evidence shows that Bryant borrowed from a Mattel project called

4  Toon Teens in formulating his ideas for Bratz."). Since Mattel killed Toon Teens

5  because, at least in part, of the large size of the dolls' head, legs and feet compared

6  to the body, it is reasonable to assume that Mattel would not have pursued Bryant's

7  Bratz idea, which featured—according to Mattel's own interrogatory response—

8  similar attributes.

9  **6.    Bryant's Request Nos. 71-86.**

10  Bryant agrees with Mattel that these requests seek information related to

11  Phase II. Consequently, in light of the Court's Order staying all Phase II

12  discovery, Bryant is prepared to have the Court defer consideration of this portion

13  of his motion to compel until such time as Phase II discovery is resumed.

14  **D.    Mattel's objections to Bryant's Second Set of Requests for Admission.**

15  **1.    Mattel should not be permitted to avoid responding to Request
16         Nos. 116-333 regarding Mattel's contentions as to when certain
        Bratz sketches were created.**

17  Mattel attempts to argue that Bryant's Requests Nos. 116-333, all of which

18  seek to find out whether Mattel contends that certain sketches of Bryant's Bratz

19  ideas were created by Bryant when he was not employed at Mattel, are so vague

20  that Mattel is incapable of providing any response. Mattel's argument fails for

21  several reasons.

22  First, if Mattel was truly confused by these requests, it easily could have

23  sought clarification from Bryant. Indeed, as discussed at length in Bryant's

24  opening brief, the parties met and conferred at length regarding other of Bryant's

25  requests for admission in January 2008. During those conferences, Mattel raised

26  no concerns regarding these requests. Suppl. Werdegar Decl. ¶ 2.

27  Second, as Mattel well-knows, since it has made the same argument itself

28  repeatedly before this Court, if it truly believed these requests were vague and

1    ambiguous, it could have provided its own clarifying definition for the allegedly

2    vague term "DESIGN INCORPORATED"—*e.g.*, it could have defined the terms

3    as meaning whether Bryant created the referenced the sketches. *See Pulsecard,*

4    *Inc. v. Discover Card Serv., Inc.,* 168 F.R.D. 295, 310 (D. Kan. 1996) ("To clarify

5    their answers, respondents may include any necessary, reasonable definition of

6    such terms or phrases.").[5]

7         Third, it is more than a little ironic that Mattel contends that Bryant's

8    definition of the terms "DESIGN" and "INCORPORATED" are unclear and

9    susceptible to multiple interpretations, since Bryant borrowed these definitions

10   from Mattel's own definition of "BRATZ WORK", which it utilized in its

11   mammoth Sixth Set of Requests for Admission to Bryant (numbering 782

12   requests).  Specifically, in those requests Mattel defined BRATZ WORK to mean:

13        any representation of BRATZ, whether in whole or in part, whether
     two-dimensional or three-dimensional, and whether in tangible,

14   digital, electronic or other form, including by not limited to any
     DESIGN that REFERS OR RELATES TO BRATZ, and including but

15   not limited to all works, designs, artwork, sketches, drawings,
     illustrations, representations, depictions, blueprints, schematics,

16   diagrams, images, photographs, sculptures, prototypes, models,
     samples, reductions to practice, and DOCUMENTS, in which any of

17   the foregoing are of have been expressed, embodied, contained, fixed
     or reflected in any manner, whether in whole or in part.

18

19   Suppl. Werdegar Decl. Ex. G, at 2-3.  And based on this definition, Mattel asked

20   Bryant to make such admissions as:  "Admit that you have not copied or prepared

21   any derivative works from the BRATZ WORK produced in THIS ACTION as M

22   0001497",  "Admit that YOU were not the sole author of the BRATZ WORK

23   produced as M 00001497", and "Admit that the work produced in THIS ACTION

24   as SABW-L 00075 … is a genuine and authentic copy of a BRATZ WORK

25   created, in whole or in part, by you." *Id*. at 5, 8.

26   _____

27   [5] Bryant did not phrase these requests in exactly that manner because he wanted to
     make clear that he was asking about the creation date of the artistic work or design

28   shown in the referenced document and not about any notations or marginalia,
     which may or may not have been added at a later date.

BRYANT'S REPLY IN SUPPORT OF MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS
CASE NO. CV 04-09049 SGL (RNBx)

1        In sum, Request Nos. 116-333 are not vague or ambiguous, but even if they

2    were, Mattel could have and should have either sought clarification from Bryant or

3    used its own clarifying definitions.  Again, Bryant simply wants to know which

4    sketches of Bryant's Bratz ideas, if any, Mattel admits were made when Bryant

5    was not a Mattel employee.  This information is relevant and critical to Bryant's

6    preparations for trial.  Responding to these requests will impose no undue burden

7    on Mattel.  Mattel should be compelled clearly to admit or deny each of these

8    requests.

9          **2.**     **Request Nos. 113-114 regarding Mattel's contentions as to when**
                **Bratz was conceived.**

10

11        Request Nos. 113 and 114 could not be more relevant to this litigation.

12    Mattel's entire case is premised on proving that Bryant either conceived or reduced

13    to practice his Bratz ideas while he was employed at Mattel.  *See, e.g.,* SAAC ¶ 34

14    ("Pursuant to Bryant's contract with Mattel … Mattel is the true owner of Bratz

15    designs and works, including those specifically that were *conceived or reduced to*

16    *practice* during Bryant's Mattel employment …." (emphasis added)).  Mattel needs

17    to prove this because, even under Mattel's own sweeping interpretation of Bryant's

18    employment agreement, it can only have rights to Bratz if Bryant conceived of

19    Bratz or reduced Bratz to practice when he was a Mattel employee.  Bryant

20    believes that it cannot be disputed that, at a minimum, he conceived of Bratz when

21    he was not a Mattel employee.  However, Mattel contends otherwise.  *See, e.g.,*

22    Proctor Decl. Ex. 17, at 246 ("While employed by Mattel as a designer, Bryant

23    used Mattel personnel and resources to conceive, create, develop, and improve and

24    reduce to practice his Bratz designs.").  These requests thus are relevant to

25    confirming Mattel's contentions on this issue.  *See Booth Oil*, 194 F.R.D. at 82

26    (explaining that requests for admission, like interrogatories, may inquire about the

27    "the precise nature of [a party's] contentions in support of its claims or defenses

28    and their respective bases in fact and law").

1

      **3.**     **Request Nos. 115-116 regarding Mattel's interpretation of its
form employment agreement.**

2

3          Request Nos. 115-116 do not pose improper hypotheticals, rather they

4  simply seek an admission or denial by Mattel regarding the meaning of the

5  inventions provision in the form employment agreement that Mattel is accusing

6  Bryant of breaching.  As discussed above, requests for admission, such as these,

7  seeking an admission or denial of a document's meaning or intent are permissible

8  under Rule 36.  *See Sigmund*, 236 F.R.D. at 46; *Booth Oil*, 194 F.R.D. at 80.

9  **E.**    **Mattel's objections to Bryant's Third Set of Requests for Production.**

10         Mattel claims that Bryant's Request No. 10, which seeks documents

11  sufficient to show the date on which Mattel hired outside counsel to represent

12  Mattel with respect to any litigation or potential litigation concerning Bryant or

13  Bratz is overbroad, because it is not limited to this litigation.  In asserting this

14  objection, Mattel is continuing its gamesmanship with respect to Bryant's and

15  MGA's statute of limitations and laches defenses.  As discussed at length in

16  MGA's Motion to Overrule Mattel's Relevance Objection and Compel Discovery

17  Relevant to Statute of Limitations (filed January 17, 2008), as well as MGA's

18  Motion to Compel Discovery as to Issues to Which Mattel Has Waived the

19  Attorney-Client and Work Product Privileges By Claim Assertion (filed January

20  18, 2008), there is ample evidence that Mattel was investigating Bryant, MGA and

21  Bratz long before the time that it contends it was on notice of its claims.  Mattel

22  argues that this investigation, even though it involved alleged wrongdoing by

23  Bryant relating to Bratz while Bryant was an employee at Mattel, was somehow

24  separate from its investigation of its claims and defenses in this case and did not

25  put Mattel on notice of those claims for limitations and laches purposes.  Bryant

26  believes Mattel's claims on this front are false, but ultimately the Court or the jury

27  will have to resolve this issue.  Whether Mattel's earlier investigations were related

28  to this litigation is not an issue to be resolved in a discovery motion.  And because

21

412820.01

1    Bryant (and MGA) contend as part of their affirmative defenses that Mattel's

2    earlier investigations are related (and have proffered substantial evidence to

3    support that contention), discovery as to when Mattel hired outside counsel to

4    participate in this investigation is relevant and well-within the scope of Rule 26.

5         Mattel also objects that Bryant's Request No. 21, seeking fee agreements

6    between witnesses in this case and documents relating those agreements, is

7    overbroad.  Nonsense.  Mattel does not even attempt to argue that fee agreements

8    between itself and witnesses in this case are irrelevant, rather it claims that Bryant

9    should have identified the particular witnesses that are the subject of this request.

10   But that argument sums up the problem.  Only Mattel knows the identity of the

11   witnesses whose legal and other fees it is paying.  If Mattel will identify the

12   complete list of such of witnesses, Bryant would be happy to limit his document

13   request to only those witnesses.  But as things currently stand, only Mattel knows

14   which witnesses it is funding in this litigation, which is why Bryant needs a

15   complete response to this request.

16        Additionally, Mattel challenges whether Bryant also is entitled to documents

17   relating to its fee agreements with witnesses.  Obviously, correspondence and other

18   similar documents relating to Mattel's, and the witness's, decision to enter into a

19   fee agreement and the negotiation of such agreements are equally relevant to

20   showing bias on the part of the witnesses.  Mattel should be compelled to produce

21   all fee agreements and all non-privileged documents relating to those agreements.

22        Next, Mattel claims that Bryant's Request Nos. 22-32 seek documents

23   supporting Mattel's contentions regarding a variety of "hypothetical situations that

24   never occurred.  Mattel's Opp., at 42.  But the one example that Mattel provides,

25   Request No. 26, is the only request to which this argument conceivable could

26   apply.  Request Nos. 22-25 all ask for documents supporting Mattel's trade secret

27   contentions—there is nothing hypothetical about the requests for admission to

28   which these requests for production relate (and Mattel has not opposed Bryant's

22

1    motion to compel as to these requests for admission. *See* Section II, C, 1, *supra*).

2    *See* Werdegar Decl. Ex. D, at 8-9; *id.* Ex. B, at 5-6.  If Mattel is willing to admit

3    that it is not accusing Bryant of taking any trade secrets from Mattel, then it need

4    not produce any documents supporting such contentions.  But until it makes such

5    an admission, Bryant is entitled to know what documents, if any, support Mattel's

6    theft of trade secret claims.  Similarly, Request Nos. 27-32 seek documents

7    supporting Mattel's contentions regarding the scope and meaning of the Conflict of

8    Interest Questionnaire that it has accused Bryant of breaching.  Again, there is

9    nothing hypothetical about any of these requests. *See id.* Ex. D, at 9-11.

10        Finally, in a supplemental "declaration" (which actually reads like, and

11   should be treated as, an unauthorized supplemental opposition) filed after the due

12   date for Mattel's opposition to Bryant's motion, Mattel claims that Bryant's

13   requests for production are duplicative of other requests served by MGA.  *See*

14   Supplemental Declaration of B. Dylan Proctor, filed March 5, 2008.  Bryant

15   disagrees.  But even if this were true, then Mattel need merely state in response to

16   Bryant's requests that it has already produced all responsive, non-privileged

17   documents, and identify those already-produced documents by Bates number.

18        In sum, Mattel's objections to Bryant's requests for production are entirely

19   without merit, and the Court should Mattel to respond fully to Request Nos. 10,

20   and 21-32.

21   **F.    Mattel's other arguments are without merit.**

22        Playing the role of the kitchen sink in Mattel's "everything and the kitchen

23   sink" opposition to Bryant's Motion to Compel are two throw-away arguments that

24   deserve little consideration.  First, Mattel again argues that Bryant's Motion to

25   Compel is untimely.  This issue was fully briefed, and the Court has ruled that the

26   Motion was timely. *See* Order dated Feb. 25, 2008.  Mattel provides no basis

27   whatsoever for reconsideration of this ruling.

28        Second, Mattel argues that Bryant's Motion to Compel failed to comply with

1   Local Rule 37-2.1 because Bryant did not submit an accompanying separate

2   statement.  This argument, which Mattel has lobbed into other opposition briefs

3   without success in past, is based on the faulty premise that Local Rule 37-2.1

4   applies to discovery disputes before the Discovery Master in this case.  It does not.

5   Local Rule 37 sets forth a detailed protocol and schedule for presenting discovery

6   disputes to a sitting Magistrate Judge in the Central District.  Here, however, the

7   parties have stipulated to, and the Court has ordered, an alternative, and materially

8   different, protocol and schedule, namely that set forth in Paragraph 5 of the

9   Discovery Master Order, with which Bryant has fully complied.  Unlike Local

10  Rule 37, Paragraph 5 provides for opening briefs, oppositions, and reply briefs, and

11  sets different due dates for discovery pleadings than Local Rule 37.  Furthermore,

12  if Local Rule 37-2.1 actually applied in this case, Mattel would have violated it

13  with every one of its myriad discovery motions, since it has never sought to submit

14  or submitted the Joint Stipulation called for by the rule.  *See* C.D. Cal. L.R. 37-2.4

15  ("The Court will not consider any discovery motion in the absence of a joint

16  stipulation or a declaration from counsel for the moving party establishing that

17  opposing counsel (a) failed to confer in a timely manner in accordance with L.R.

18  37-1; (b) failed to provide the opposing party's portion of the joint stipulation in a

19  timely manner in accordance with L.R. 37-2.2; or (c) refused to sign and return the

20  joint stipulation after the opposing party's portion was added.").  *See also* L.R. 37-

21  2.2.

22                      **III.   CONCLUSION**

23          For all the foregoing reasons, and for all the reasons set forth in Bryant's

24  opening Memorandum of Points and Authorities, the Court should issue an order

25  overruling Mattel's objections and requiring Mattel to respond fully and

412820.01

1   completely to Bryant's First and Second Sets of Requests for Admission, Second

2   Set of Interrogatories (No. 20), and Fourth Set of Requests for Production.

3

4                                          Respectfully submitted,

5   Dated:  March 7, 2008                  KEKER & VAN NEST, LLP

6

7                                    By: _____

8                                        MATTHEW M. WERDEGAR
                                         Attorneys for Plaintiff
9                                        CARTER BRYANT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYANT'S REPLY IN SUPPORT OF MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS
CASE NO. CV 04-09049 SGL (RNBx)