QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | [PUBLIC REDACTED] MATTEL, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; AND |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | MEMORANDUM OF POINTS AND AUTHORITIES |
| | [Declarations of B. Dylan Proctor, Jon Corey, Lee Loetz, Michael Moore, Rodney Palmer Jr. and Separate Statement of Uncontested Facts and Uncontested Conclusions of Law, Request for Judicial Notice filed concurrently herewith] |
| | Date:    April 23, 2008<br>Time:   10:00 a.m.<br>Place:  Courtroom 1 |
| | **Phase 1**<br>Discovery Cut-Off:   Jan. 28, 2008<br>Pre-Trial Conference:  May 5, 2008<br>Trial Date:   May 27, 2008 |

07209/2424109.3

TO PLAINTIFFS/COUNTER-DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on April 23, 2008 at 10:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Steven G. Larson, located at Courtroom 1, plaintiff and counterclaimant Mattel, Inc. ("Mattel") will, and hereby does, move the Court, pursuant to <u>Federal Rule of Civil Procedure</u> 56(a) and 56(d) and L.R. 56-4, for partial summary judgment against defendants Carter Bryant, Isaac Larian, MGA Entertainment Inc. ("MGA"),, and MGA Entertainment (HK), Ltd. ("MGA Hong Kong") in Mattel's favor on the following issues:

(1) the Employee Confidential Information and Inventions Agreement ("Inventions Agreement") executed by Bryant and Mattel on January 4, 1999 is enforceable;

(2) under the Inventions Agreement (a) Mattel owns all Bratz-related "inventions" Bryant conceived, created, made, or reduced to practice while he was employed by Mattel, (b) the term "inventions" covers designs, improvements, ideas, concepts, and copyrightable subject matter, such that if Mattel proves at trial that any such items were conceived, created, made, or reduced to practice by Bryant during his Mattel tenure, Mattel will be entitled to a judgment that it owns those inventions, and (c) there is no factual dispute that certain such inventions, including several drawings (Exs. 716-19, 721-22, 724-25, drawing Bates-numbered SL00044) and a dummy model, were conceived, created, made, or reduced to practice during Bryant's Mattel tenure, and hence are owned by Mattel;

(3) the first-generation Bratz dolls released to the public in the summer of 2001, Copyright Registration Nos. VA 1-218-487, VA 1-218-488, VA 1-218-489, VA 1-218-490 and VA 1-218-491, are substantially similar to seventeen drawings (Ex. 10) and a doll sculpt drawing or blueprint (SL00044) created by Bryant, which are original, protectable works of expression;

-2-

**(4)** Although damages and the full scope of Bryant's wrongdoing may involve disputed facts which need to be decided by the jury, on the undisputed facts Bryant is liable for breach of both the Inventions Agreement and the Conflict of Interest Questionnaire, breach of the duty of loyalty, and breach of fiduciary duty;

**(5)** Although damages and the full scope of their wrongdoing may involve disputed facts which need to be decided by the jury, on the undisputed facts MGA and Larian are liable for aiding and abetting Bryant's breaches of the duty of loyalty and fiduciary duty; and

**(6)** The affirmative defenses of MGA, Larian and MGA Hong Kong of (a) 17 U.S.C. § 205, (b) bona fide purchaser for value, (c) good faith, (d) acquiescence, (e) abandonment, (f) acts and omissions of others; and the affirmative defenses of MGA, Larian, MGA Hong Kong and Bryant of (a) statute of limitations, (b) laches, (c) waiver, (d) failure to mitigate damages, and (e) estoppel; and the affirmative defense of Bryant of (a) unclean hands and (b) consent, all fail as to Mattel's Phase 1 claims.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Separate Statement of Uncontested Facts and Conclusions of Law, the Declarations of B. Dylan Proctor ("Proctor Decl."), Jon D. Corey ("Corey Decl."), Lee Loetz ("Loetz Decl."), Michael Moore ("Moore Decl."), and Rodney Palmer Jr. ("Palmer"), and accompanying exhibits to these declarations, Request for Judicial Notice, the records and files of this Court, and all other matters of which the Court may take judicial notice.

<u>Local Rule 7-3 Certification</u>

This motion is made following the conference of counsel, which was held pursuant to <u>Local Rule</u> 7.3 on February 15, 2008.

1 | DATED:  March 7, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

2

3

By /s/ John B. Quinn
4       John B. Quinn
      Attorneys for Mattel, Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2424109.3

-4-

# TABLE OF CONTENTS

**Page**

Preliminary Statement ............................................................................................ 1

Argument ................................................................................................................ 2

I.   THE INVENTIONS AGREEMENT IS ENFORCEABLE............................ 2

    A.   This Court Has Already Ruled the Inventions Agreement Enforceable ........................................................................................ 3

    B.   Bryant's Work On Bratz Falls Within Section 2870. ...................... 4

II.   MATTEL OWNS ANY BRATZ INVENTIONS BRYANT CREATED, MADE, CONCEIVED, OR REDUCED TO PRACTICE WHILE EMPLOYED BY MATTEL. .................................................... 6

    A.   The Inventions Agreement Effects A Broad Assignment of "Inventions" to Mattel.................................................................... 6

    B.   Bryant Has Admitted That "Inventing" a Toy is Equivalent to Designing a Toy. ............................................................................ 7

    C.   Bryant Has Admitted Inventions "Conceived" During Employment With Mattel are Assigned to Mattel ............................ 8

    D.   Bryant Admitted Creating Certain Bratz Drawings and Models During His Mattel Tenure. ............................................................. 9

III.   THE FIRST-WAVE BRATZ DOLLS ARE SUBSTANTIALLY SIMILAR TO CERTAIN OF BRYANT'S DRAWINGS. ........................ 10

    A.   The First-Wave Bratz Dolls Are Substantially Similar To Bryant's Drawings, Which Mattel Has Registered With the Copyright Office. ......................................................................... 12

        1.   The Extrinsic Test Shows Substantial Similarity. ..................... 13

        2.   Mattel Also Clearly Satisfies the Intrinsic Test....................... 23

    B.   Proof of Substantial Similarity Disposes of Defendants' Affirmative Defense of De Minimis Use................................... 23

    C.   Bryant's Drawings Are Sufficiently Original To Qualify For Copyright Protection. .................................................................. 24

        1.   Bryant Has Admitted That His Drawings are Original Works of Authorship. ............................................................. 25

        2.   MGA's Registrations Create a Presumption of Copyrightability.................................................................. 25

3. Defendants Are Estopped from Contradicting Their Prior Sworn Statements That the Drawings Are Original........... 26

4. The Drawings Easily Satisfy the Low Threshold for a Finding of Originality........................................ 26

IV. BRYANT IS LIABLE FOR BREACH OF CONTRACT, BREACH OF THE DUTY OF LOYALTY, AND BREACH OF FIDUCIARY DUTY. ............................................................................. 30

A. Bryant Is Liable for Breach of Contract. ...................... 31

B. Bryant Is Liable for Breach of the Duty of Loyalty and Breach of Fiduciary Duty. ............................................ 33

1. Bryant Owed Mattel a Duty of Loyalty and a Fiduciary Duty. ....................................................... 33

2. Bryant Clearly Breached Both Duties. ................. 35

V. MGA AND LARIAN ARE LIABLE FOR AIDING AND ABETTING BRYANT'S BREACHES OF HIS DUTIES. ....................... 39

A. MGA And Larian Knew That Bryant's Behavior Was In Breach Of His Duty Of Loyalty And His Fiduciary Duty To Mattel. .............. 40

B. MGA And Larian Substantially Assisted Bryant in Breaching His Duties to Mattel. ................................................... 42

C. MGA and Larian Profited from Bryant's Breaches............ 43

D. MGA's and Larian's Aiding and Abetting Conduct Is Fatal to Their Affirmative Defense of Acts or Omissions of Others............. 43

VI. DEFENDANTS' REMAINING AFFIRMATIVE DEFENSES FAIL. ......... 43

A. Good Faith and 17 U.S.C. § 205. ................................. 44

1. Good Faith and 17 U.S.C. § 205 Are Not Valid Defenses to Mattel's Claim For Copyright Infringement ................ 44

2. Good Faith Is Not a Defense to Mattel's Strict Liability Claims. ............................................................. 45

3. Good Faith Is Not a Defense to Mattel's Intentional Tort Claims. ............................................................. 45

4. In Any Event, Undisputed Evidence Establishes that Defendants Did Not Act in Good Faith.................... 46

B. Statute of Limitations and Laches. .............................. 46

1. Applicable Statutes of Limitations. ...................... 47

2. Mattel's Original Claims Against Bryant Are Timely. ......... 49

MOTION FOR PARTIAL SUMMARY JUDGMENT

|  | 3. | Mattel's Amended Claims Against Bryant Are Timely............... | 50 |
|  | 4. | Mattel's Claims Against MGA Are Timely................................ | 50 |
|  | 5. | Mattel's Claims Against Larian and MGA Hong Kong Are Timely........................................................................ | 51 |
| C. | Laches Does Not Bar Mattel's Claims. ................................................ | | 52 |
| D. | Waiver and Consent. ......................................................................... | | 54 |
|  | 1. | Waiver........................................................................................ | 54 |
|  | 2. | Consent. .................................................................................... | 58 |
| E. | Abandonment. ................................................................................... | | 59 |
| F. | Estoppel............................................................................................ | | 59 |
| G. | Acquiescence. ................................................................................... | | 61 |
| H. | Unclean Hands ................................................................................. | | 62 |
| I. | Mitigation Of Damages ..................................................................... | | 64 |
| Conclusion | ........................................................................................................ | | 64 |

07209/2424109.3

1

## TABLE OF AUTHORITIES

2

**Page**

3

4

### Cases

A&M Records, Inc. v. Napster, Inc.,
239 F.3d 1004 (9th Cir. 2001)...................................................................52

Abbott v. City of Los Angeles,
50 Cal. 2d 438 (1958).............................................................................49

Am. Cas. Co. of Reading Pa. v. Baker,
22 F.3d 880 (9th Cir. 1994).....................................................................57

Am. President Lines, Ltd. v. Zolin,
38 Cal. App. 4th 910 (1995)......................................................................6

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)................................................................................56

April Enters., Inc. v. KTTV,
147 Cal. App. 3d 805 (1983)............................................................43, 44

Arthur v. Davis,
126 Cal. App. 3d 684 (1981)....................................................................61

Austin v. Mass. Bonding & Ins. Co.,
56 Cal. 2d 596 (1961).............................................................................49

Bancroft-Whitney Co. v. Glen,
64 Cal. 2d 327 (1966).......................................................................31, 39

Bank of the Sierra v. Kallis,
2006 WL 3513568 (E.D. Cal. Dec. 6 2006)............................................42

Bank of the West v. Superior Court,
2 Cal.4th 1254 (1992)...............................................................................6

Bell Atlantic Bus. Sys. Servs., Inc. v. Hitachi Data Sys. Corp.,
1995 WL 836331 (1995).........................................................................57

Bell Atlantic Business Systems Services, Inc. v. Hitachi Data Systems Corp.,
1995 WL 836331 (1995).........................................................................56

In re Bennett,
298 F.3d 1059 (9th Cir. 2002)...................................................................6

Berg & Berg Enters., LLC v. Sherwood Partners, Inc.,
131 Cal. App. 4th 802 (2005)..................................................................36

Bono v. Clark,
103 Cal. App. 4th 1409 (2003)................................................................44

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PARTIAL SUMMARY JUDGMENT

Brown Bag Software Corp. v. Symantec,
    960 F.2d 1465 (9th Cir. 1992)..................................................................... 10

CRST Van Expedited, Inc. v. Werner Enters., Inc.,
    479 F.3d 1099 (9th Cir. 2007).................................................................... 42

Cadence Design Sys., Inc. v. Bhandari,
    2007 WL. 3343085 (N.D. Cal. Nov. 8, 2007)............................................. 4

Casey v. U.S. Bank Nat'l Assoc.,
    127 Cal. App. 4th 1138 (2005)....................................................... 36, 39, 42

City & County of San Francisco v. Grant Co.,
    181 Cal. App. 3d 1085 (1986)..................................................................... 58

City of Ukiah v. Fones,
    64 Cal. 2d 104 (1966).................................................................................. 52

Classic Concepts, Inc. v. Linen Source, Inc.,
    2006 WL. 4756377 (C.D. Cal. Apr. 27 2006)............................................ 61

Community Assisting Recovery, Inc. v. Aegis Ins. Co.,
    92 Cal. App. 4th 886 (2001)....................................................................... 41

County of Ventura v. Blackburn,
    362 F.2d 515 (9th Cir. 1966)...................................................................... 41

Cubic Corp. v. Marty,
    229 Cal. Rptr.  828 (1986)............................................................................ 4

Cummings v. U.S.,
    704 F.2d 437 (9th Cir. 1983)...................................................................... 48

Daniel Orifice Fitting Co. v. Whalen,
    198 Cal. App. 2d 791 (1962)....................................................... 30, 34, 35

Danjaq LLC v. Sony Corp.,
    263 F.3d 942 (9th Cir. 2001)................................................................ 50, 51

DePinto v. Provident Sec. Life Ins. Co.,
    323 F.2d 826 (9th Cir. 1963)...................................................................... 48

Deal v. Consumer Programs, Inc.,
    458 F. Supp. 2d 970 (E.D. Mo. 2005)........................................................ 55

Dollar Systems, Inv. v. Avcar Leasing Systems, Inc.,
    890 F.2d  165 (9th Cir. 1989)..................................................................... 60

Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,
    109 F.3d 1394 (9th Cir. 1997)..................................................................... 11

Driscoll v. City of L.A.,
    67 Cal. 2d 297 (1967).................................................................................. 57

MOTION FOR PARTIAL SUMMARY JUDGMENT

Educ. Testing Serv. v. Simon,
  95 F. Supp. 2d 1081 (C.D. Cal. 1999).................................................... 10

Emerson Electric Co. v. Rogers,
  418 F.3d 841 (8th Cir. 2005)................................................................. 54

Feist Publications, Inc. v. Rural Telephone Service Co.,
  499 U.S. 340 (1991).............................................................................. 24

Fisher-Price Toys v. My-Toy Co.,
  385 F. Supp. 218 (S.D.N.Y. 1974)......................................................... 19

Fisher v. Dees,
  794 F.2d 432 (9th Cir. 1986)................................................................. 20

Fleisher Studios v. Ralph A. Freundlich, Inc.,
  73 F.2d 276 (2d Cir. 1934).................................................................... 20

Fowler v. Varian Assocs. Inc.,
  196 Cal. App. 3d 34 (1987)............................................................. 29, 35

Fox v. Ethicon Endo-Surgery, Inc.,
  35 Cal. 4th 797 (2005)................................................................... 44, 45

GAB Bus. Svcs. Inc. v. Lindsey & Newsom Claim Servs., Inc.,
  83 Cal. App. 4th 409 (2000)................................................................. 30

Garamendi v. SDI Vendome S.A.,
  276 F. Supp. 2d 1030 (C.D. Cal. 2003)................................................ 45

Greenawalt v. Rogers,
  151 Cal. 630 (1907).............................................................................. 56

Grudt v. City of Los Angeles,
  2 Cal. 3d 575 (1970)............................................................................. 47

Gund v. Russ Berrie & Co.,
  701 F. Supp. 1013 (S.D.N.Y. 1988)...................................................... 19

Hamilton v. State Farm Fire & Cas. Co.,
  270 F.3d 778 (9th Cir. 2001)................................................................ 22

Hampton v. Paramount Pictures Corp.,
  279 F.2d 100 (9th Cir.)......................................................................... 56

Harper & Row Publishers, Inc. v. Nation Enters.,
  471 U.S. 539 (1985).............................................................................. 14

Hobson v. Wilson,
  737 F.2d 1 (D.C. Cir. 1984), cert. denied, 470 U.S. 1084 (1985)................. 45, 46

Howard Jarvis Taxpayers Ass'n v. City of La Habra,
  25 Cal. 4th 809 (2001).......................................................................... 44

-vi-

MOTION FOR PARTIAL SUMMARY JUDGMENT

J. C. Peacock, Inc. v. Hasko,
    196 Cal. App. 2d 353 (1961) ............................................................ 29, 30, 35

JCW Investments, Inc. v. Novelty, Inc.,
    482 F.3d 910 (7th Cir. 2007) ...................................................................... 26

JCW Invs., Inc. v. Novelty, Inc.,
    289 F. Supp. 2d 1023 (N.D. Ill. 2003), aff'd 482 F.3d 910 (7th Cir. 2007) ......... 10

JW/EAI,
    1994 WL. 16458729 (N.D. Cal. 1993) .......................................................... 53

Jarrow Formulas, Inc. v. Nutrition Now, Inc.,
    304 F.3d 829 (9th Cir. 2002) ...................................................................... 50

Kamar Intern., Inc. v. Russ Berrie and Co.
    657 F.2d 1059 (9th Cir. 1981) .................................................................... 25

Kendall-Jackson Winery Ltd v. Superior Court,
    76 Cal. App. 4th 970 (1999) ....................................................................... 60

King Features Syndicate v. Fleisher,
    299 F. 533 (2d Cir. 1924) ........................................................................... 20

Kling v. Hallmark Cards Inc.,
    225 F.3d 1030 (9th Cir. 2000) .................................................................... 51

Korea Supply Co. v. Lockheed Martin Corp.,
    109 Cal. Rptr. 2d 417 (2001), rev'd on other grounds, 29 Cal.4th 1134 (2003).. 43

L.A. News Serv. v. Conus Commc'n Co.,
    969 F. Supp. 579 (C.D. Cal. 1997) .............................................................. 41

Litchfield v. Spielberg,
    736 F.2d 1352 (9th Cir. 1984) .................................................................... 12

Lopez v. Electrical Rebuilders, Inc.,
    416 F. Supp. 1133 (C.D. Cal. 1976) ............................................................ 56

Lyons P'ship, L.P. v. Morris Costumes, Inc.,
    243 F.3d 789 (4th Cir. 2001) ...................................................................... 50

Magnesystems, Inc.v. Nikken, Inc.,
    933 F. Supp. 944 (C.D.Cal. 1996) .............................................................. 61

Mandracio v. Bartenders Union, Local 41,
    41 Cal. 2d 81 (1953) ............................................................................. 50, iii

Marasco v. Wadsworth,
    21 Cal. 3d 82 (1978) .................................................................................. 49

Martel v. Trilogy Ltd.,
    872 F.2d 322 (9th Cir. 1989) ...................................................................... 47

07209/2424109.3

MOTION FOR PARTIAL SUMMARY JUDGMENT

Mass. Mutual Life Ins. Co. v. Superior Court,
    97 Cal. App. 4th 1282 (2002)..................................................44

Mattel, Inc. v. Goldberger Doll Mfg. Co.,
    365 F.3d 133 (2d Cir. 2004).............................................25, 26

Meta-Film Assoc., Inc. v. MCA, Inc.,
    586 F. Supp. 1346 (C.D. Cal. 1984).......................................10

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
    518 F. Supp. 2d 1197 (9th Cir. 2007).........................54, 57, 58

Michelson v. Hamada,
    29 Cal. App. 4th 1566 (1994)................................................31

Micro Star v. Formgen Inc.,
    154 F.3d 1107 (9th Cir. 1998)...............................................56

Miller v. Maxwell's Int'l Inc.,
    991 F.2d 583 (9th Cir. 1993).................................................50

Myers v. Phillip Morris, Inc.,
    2003 WL. 21756086 (E.D. Cal. 2003) ...................................49

Neilson v. Union Bank of Calif.,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003)............................36, 39

North Coast Indus. v. Jason Maxwell, Inc.,
    972 F.2d 1031 (9th Cir. 1992)...............................................24

Novell Inv. v. Weird Stuff, Inc.,
    No. C92-20467.......................................................53, 54, 58

Olson v. Nat'l Broad. Co.,
    855 F.2d 1446 (9th Cir. 1988)...............................................12

PMC, Inc. v. Kadisha,
    78 Cal. App. 4th 1368 (2000)................................................42

Palo Alto Mut. Bldg. & Loan Ass'n v. First Nat'l Bank,
    33 Cal. App. 214 (1917)........................................................32

Pivot Point Int'l, Inc. v. Charlene Prods., Inc.,
    372 F.3d 913 (7th Cir. 2004).................................................19

Pochopien v. Marshall, O'Toole, Gerstein, Murray & Borun,
    315 Ill. App. 3d 329 (Ill. App. 2000) .....................................55

Pye v. Mitchell,
    574 F.2d 476 (9th Cir. 1978).................................................41

R. Dakin & Co. v. A & L Novelty Co., Inc.,
    444 F. Supp. 1080 (E.D.N.Y. 1978)..................................24, 25

Rambus Inc. v. Samsung Electronics Co.,
2007 WL 39374 (N.D. Cal. 2007)................................................................44

Reeves v. Hanlon,
33 Cal. 4th 1140 (2004)...............................................................................30

River Colony Estates Gen. P'ship v. Bayview Fin. Trading Group, Inc.,
287 F. Supp. 2d 1213 (S.D.Cal. 2003).........................................................36

Roley v. New World Pictures, Ltd.,
19 F.3d 479 (9th Cir. 1994).....................................................................43, 48

Russell v. Price,
612 F.2d 1123 (9th Cir. 1979).......................................................................51

Russell v. Rolfs,
893 F.2d 1033 (9th Cir. 1990).......................................................................22

Sawyer v. Sonoma County,
719 F.2d 1001 (9th Cir. 1983).......................................................................57

Securities and Exchange Commission v. Lincoln Thrift Ass'n,
557 F.2d 1274 (9th Cir. 1977).......................................................................52

Sequoia Vacuum Sys. v. Stransky,
229 Cal. App. 2d 281 (1964).........................................................................34

Shaw v. Lindheim,
919 F.2d 1353 (9th Cir. 1990).......................................................................19

Sheet Metal Workers, Int'l Ass'n Local Union No. 24 v.
Architectural Metal Works, Inc.,
259 F.3d 418 (6th Cir. 2001)..........................................................................6

Sheldon v. Metro-Goldwyn Pictures Corp.,
81 F.2d 49 (2d Cir. 1936).............................................................................14

Sid & Marty Krofft Television Prods., Inc. v. McDonalds Corp.,
562 F.2d 1157 (9th Cir. 1977).........................................................10, 11, 12

Smeltzley v. Nicholson Mfg. Co.,
18 Cal. 3d 932 (1977)...................................................................................49

Snow v. A.H. Robins Co.,
165 Cal. App. 3d 120 (1985).........................................................................45

Stevens v. Marco,
147 Cal. App. 2d 357 (1956).........................................................................31

Stokes v. Dole Nut Co.,
41 Cal. App. 4th 285 (1995).....................................................................29, 35

Three Boys Music Corp. v. Bolton,
212 F.3d 477 (9th Cir. 2000).....................................................................11, 24

07209/2424109.3

MOTION FOR PARTIAL SUMMARY JUDGMENT

Transgo, Inc. v. Ajac Transmission Parts Corp.,
    768 F.2d 1001 (9th Cir. 1985)...................................................................22

U. S. v. King Features Entm't, Inc.,
    843 F.2d 394 (9th Cir. 1988)..............................................................52, 57

U.S. v. Union Pacific R. Co.,
    2008 WL 413765 (E.D.Cal. 2008) ..........................................................61

Unilogic, Inc. v. Burroughs Corp.,
    10 Cal. App. 4th 612 (1992)......................................................................50

Vernon v. Heckler,
    811 F.2d 1274 (9th Cir. 1987)..................................................................27

Virtanen v. O'Connell,
    140 Cal. App. 4th 688 (2006).....................................................................41

Wells Fargo Bank v. Bank of America,
    32 Cal. App. 4th 424 (1995)......................................................................50

Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc.,
    106 F.3d 894 (9th Cir. 1997)....................................................................45

Zivkovic v. Southern California Edison Co.,
    302 F.3d 1080 (9th Cir. 2002)..................................................................42

## Statutes

17 U.S.C. § 102.....................................................................................................21

17 U.S.C. § 205........................................................................................40, 41, 62

17 U.S.C. § 410(c).............................................................................................22

17 U.S.C. § 507.....................................................................................................48

17 U.S.C. § 507(b)...............................................................................................43

Cal. Bus. & Prof. Code § 16600 ............................................................................3

Cal. Bus. & Prof. Code § 17208 .........................................................................44

Cal. Civ. Code § 1639 .......................................................................................5, 6

Cal. Code Civ. Pro. § 3426.6 .......................................................................43, 44

Cal. Labor Code § 96(k)........................................................................................3

Cal. Labor Code § 98.6 .........................................................................................3

Labor Code § 232 .................................................................................................3

Labor Code § 232.5 ..............................................................................................3

07209/2424109.3

-x-

1   Cal. Labor Code § 2699 ........................................................................... 3

2   Cal. Labor Code § 2856 ......................................................................... 30

3   Cal. Labor Code § 2860 ......................................................................... 30

4   Cal. Labor Code § 2863 ......................................................................... 30

5   Cal. Labor Code § 2870 ............................................................... 3, 4, 5, 6

6   Cal. Labor Code § 2872 ........................................................................... 4

7   Fed. R. Civ. P. 15(c) ........................................................................ 47, 49

8   Fed. R. Civ. P. 15(c)(1)(B) .................................................................... 47

9   Fed. R. Civ. P. 56(d)(2) .................................................................... 27, 57

10

## Other Authorities

11   4 Kirby Wilcox and Erica Grubb, California Employment Law § 70.04 (2003) ...... 29

12   B.E. Witkin, Summary of California Law, Equity § 14(a)(2) (9th ed. 1987) ........... 49

13   Charles Alan Wright, et al., Federal Practice And Procedure,
14       § 4477 at 587 (3d ed. 2002) ........................................................... 22, 23

15   Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.06 ................ 52

16   Melville B. Nimmer & David Nimmer, Nimmer on Copyright §12.11[B][1]
17       ........................................................................................... 22, 24

     Restatement (Second) of Agency §§ 393, 403, 429, 469 (1958) ............................. 30

18   Wm. Moore, MOORE'S FEDERAL PRACTICE 3d, § 15.20[3] at 15-126 ............. 49

19

20

21

22

23

24

25

26

27

28

07209/2424109.3

MOTION FOR PARTIAL SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

One issue that must be tried is when Carter Bryant created certain Bratz-related drawings. Many other issues, however, are ripe for partial summary judgment and disposing of them now will streamline the trial.

**Enforceability of the Inventions Agreement.** Bryant has conceded that he executed an Employee Confidential Information and Inventions Agreement (the "Inventions Agreement"). Under the Inventions Agreement, Mattel owns the rights to all "inventions" -- including ideas and designs -- in Mattel's line of business that Bryant conceived or created while employed at Mattel, including any such "inventions" that relate to Bratz. This type of inventions agreement is routinely enforced by courts. Indeed, this Court has already considered and rejected defendants' challenges to its enforcement.

Defendants have conceded that Bryant created several designs while employed at Mattel, which he subsequently delivered to defendants MGA and Larian. While defendants dispute the date of creation of some items, at least as to some others there is no dispute. Accordingly, partial summary judgment can be entered that Mattel owns those.

As to the items whose date of creation is in dispute, this Court should rule as a legal matter that the term "inventions" encompasses designs, improvements, ideas/concepts, and copyrightable subject matter -- such that if Mattel proves at trial that the Bratz-related items were created during Bryant's Mattel tenure, it will be entitled to a judgment that it owns them.

**Copyright Infringement.** Similarly, there can be no plausible dispute that the first-wave Bratz dolls are substantially similar to Bryant's drawings. MGA has previously conceded that the drawings contain sufficient originality to qualify for copyright protection. Thus, this Court can determine as a matter of law that at least the first-generation Bratz dolls that were first released in or about June 2001

07209/2424109.3

MOTION FOR PARTIAL SUMMARY JUDGMENT

1   would infringe the copyrighted drawings if Mattel proves at trial that it owns those
2   copyrighted drawings.

3       **Breach of Loyalty, Breach of Contract and Breach of Fiduciary**
4   **Duty**.  Every employee owes a duty of loyalty to his employer.  Employees who,
5   like Bryant, are exposed to highly confidential information also owe a fiduciary duty
6   to their employer.  These duties were emphasized yet further when Bryant promised
7   in the Inventions Agreement that he would not disclose confidential information
8   "nor engage in any employment or business other than for the Company."  Yet
9   Bryant (and MGA) have had to admit in the face of e-mails and other documentary
10  evidence that Bryant began working for MGA while still a Mattel employee,
11  spending as much as 4 hours per day for MGA, and that Bryant delivered drawings
12  and other ideas and designs to MGA and Larian.  Moreover, he demonstrated his
13  knowledge of his own wrongdoing by misrepresenting his involvement with MGA
14  when he left Mattel.

15      Finally, a multitude of affirmative defenses that defendants have tossed
16  into this case may likewise be summarily adjudicated.  To do so will appropriately
17  clear away underbrush so that the jury's time is not wasted on issues that are without
18  substantial dispute.

19                      <u>**Argument**</u>
20  I.   <u>**THE INVENTIONS AGREEMENT IS ENFORCEABLE.**</u>

21      In 1999, Bryant assigned to Mattel "inventions ... conceived or reduced
22  to practice by [Bryant] (alone or jointly by others) at any time during [his]
23  employment by the Company" to the fullest extent of the law.[1]  The assignment is
24  broad and included "all [his] right, title and interest in such inventions, and all [his]
25

26  _____

27  [1]  Mattel Inc.'s Separate Statement of Uncontested Facts and Conclusions of Law
    ("Sep. Statement") at Uncontested Fact ("UF") 10 (Inventions Agreement ¶ 2(a)),
28  dated March 7, 2008 and filed concurrently herewith.

                                        MOTION FOR PARTIAL SUMMARY JUDGMENT

1   right title and interest in any patents, copyrights, patent applications and copyright

2   applications based thereon."[2]   The threshold issue is whether the Inventions

3   Agreement is enforceable.  This Court has already ruled that it is.

4        **A.**    **This Court Has Already Ruled the Inventions Agreement**

5              **Enforceable.**

6        This Court has denied Bryant's challenges to the enforceability of the

7   Inventions Agreement.  Bryant filed a complaint against Mattel challenging the

8   enforceability of the Inventions Agreement.  In an Order dismissing that complaint,

9   this Court ruled that the Inventions Agreement (1) is not an unlawful restraint of

10  trade in violation of Section 16600 of the <u>Business and Professions Code</u> (July 17,

11  2006 Order at 10-11), (2) does not violate Sections 96(k), 98.6 or 2699 of the <u>Labor</u>

12  <u>Code</u> (<u>id.</u> at 11-12), (3) does not violate Section 2870 of the <u>Labor Code</u> (<u>id.</u> at 12-

13  13), (4) is not substantively unconscionable (<u>id.</u> at 13-14), (5) does not violate

14  Sections 232 or 232.5 of the <u>Labor Code</u> (<u>id.</u> at 14), (6) was not obtained through

15  fraud or fraudulently concealed facts (<u>id.</u> at 14-15), and (7) was not obtained

16  through duress (<u>id.</u> at 16-17).[3]

17       The Court's legal rulings were unquestionably correct, and defendants

18  cannot adduce any evidence that would create a triable issue of fact as to the

19  enforceability of the Inventions Agreement.  Indeed, after the Court issued its Order,

20  Bryant withdrew by stipulation all of his affirmative defenses challenging the

21  enforceability or lawfulness of the Inventions Agreement.[4]  He cannot resuscitate

22  them now.

23

24

25

26

---

27  [2]  UF 10 (Inventions Agreement ¶ 2(a)).
   [3]  UF 3 (July 17, 2006 Order at 10-11).

28  [4]  <u>See</u> UF 2.

MOTION FOR PARTIAL SUMMARY JUDGMENT

1     **B.**    **Bryant's Work On Bratz Is Not Within the Scope of Section 2870.**

2           The Court has rejected the claim that the Inventions Agreement violates

3 Section 2870 of the <u>Labor Code</u>, given that the Agreement explicitly excludes

4 inventions that fall within that statute's scope.  This Court has not yet, however,

5 addressed whether the inventions at issue in this case are within the scope of

6 Section 2870.  There is no genuine dispute of fact that they are not, and this Court

7 should so rule on partial summary judgment.

8           Section 2870 prohibits contractual provisions that assign the

9 employee's "rights in an invention ... that the employee developed entirely on his or

10 her own time without using the employer's equipment, supplies, facilities, or trade

11 secret information ...." <u>Cal. Labor Code</u> § 2870.  The statute's prohibition does not

12 apply if the invention (1) relates to the employer's business "at the time of

13 conception or reduction to practice" or (2) if the invention results from any work

14 performed by the employee for the employer.  <u>Id</u>.  Thus, an invention lawfully may

15 be assigned in three independent circumstances: "(1) The invention was developed

16 using the employer's time or resources; or (2) The invention relates to the

17 employer's business or actual or demonstrably anticipated research or development;

18 or (3) The invention resulted from work performed by the employee for the

19 employer." <u>Cadence Design Sys., Inc. v. Bhandari</u>, 2007 WL 3343085, at *5 n.4

20 (N.D. Cal. Nov. 8, 2007).

21           As this Court has recognized, Bryant bears the burden of establishing

22 his inventions are within Section 2870's scope.[5]  Moreover, "[c]ourts interpreting

23 employee assignment agreements in the context of section 2870 have construed the

24 _____

25   [5]  <u>See</u> UF 3 (July 17, 2006 Order) ("The Agreement ... informs the employee

26 that he bears the burden of proving that the invention falls within the scope of

27 § 2870.  This is consistent with California law.  <u>See</u> Cal. Labor Code § 2872 ('In any suit or action arising thereunder, the burden of proof shall be on the employee

28 claiming the benefits of its provisions.').")

MOTION FOR PARTIAL SUMMARY JUDGMENT

1  'related to' phrase broadly." <u>Cadence</u>, 2007 WL 3343085, at *5.  Thus, in <u>Cadence</u>,
2  the court granted summary judgment to an employer, finding that the employee's
3  invention "related to" the employer's business even though the employer did not yet
4  have the invention in its product line and the invention merely improved the
5  employer's existing products.   <u>Id.</u>; <u>see also</u> <u>Cubic Corp. v. Marty</u>, 229 Cal.
6  Rptr. 828, 834-36 (1986) (finding that employee's invention fell within the scope of
7  company's actual or demonstrated research and development because it would
8  enhance the company's product capabilities).

9          There can be no factual dispute here that Bryant's Bratz work is related
10  to Mattel's business:  Mattel's business lines include dolls and toys, and Bratz is a
11  toy as well.   Specifically, Mattel's business as of 2000 was to "desig[n],
12  manufactur[e], and marke[t] a broad variety of toy products on a worldwide basis
13  through both sales to retailers (i.e. 'customers') and direct to consumers ... [and] to
14  create new brands...."[6]  And Bryant's drawings/models/mock-ups of Bratz, setting
15  aside for the moment the question when they were created, are related to dolls and
16  toys.[7]  Because Bratz and Bryant's Bratz designs are related to the toy business, and
17  toys are unquestionably Mattel business lines, the Court should rule that
18  Section 2870 does not render unenforceable the provisions of  the Inventions
19  Agreement that assigned to Mattel ownership of all Bratz-related inventions
20  conceived, created, made, or reduced to practice by Bryant while he was a Mattel
21  employee.

22

23

24  _____
       [6]  <u>See</u> UF 1.
25     [7]  <u>See</u> UF 4 (Bryant's testimony that "████████████████████████████
26  ████████████████"); UF 5
   (another Mattel employee's testimony that toy design involves "████████████████
27  ████████████"); UF 25 (Bryant <u>admitted</u> that he intended his Bratz
28  drawings to serve as guides for creation of the Bratz dolls).

## II. MATTEL OWNS ANY BRATZ INVENTIONS BRYANT CREATED, MADE, CONCEIVED, OR REDUCED TO PRACTICE WHILE EMPLOYED BY MATTEL.

The Court can determine the scope of the Inventions Agreement on partial summary judgment because interpretation of the plain language of the agreement is a pure legal question.  <u>See</u>, <u>e.g.</u>, <u>Cal. Civ. Code</u> § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible ...."); <u>In re Bennett</u>, 298 F.3d 1059, 1064 (9th Cir. 2002) ("'If contractual language is clear and explicit, it governs.'") (quoting <u>Bank of the West v. Superior Court</u>, 2 Cal.4th 1254, 1264 (1992)); <u>Am. President Lines, Ltd. v. Zolin</u>, 38 Cal. App. 4th 910, 923 (1995) (interpretation of a written instrument is essentially a judicial function); <u>Sheet Metal Workers, Int'l Ass'n Local Union No. 24 v. Architectural Metal Works, Inc.</u>, 259 F.3d 418, 426 (6th Cir. 2001) (interpretation of a contract is an issue of law and may be resolved by summary adjudication).

### A. The Inventions Agreement Effects A Broad Assignment of "Inventions" to Mattel.

By its terms, the Inventions Agreement applies to all inventions not excluded by the terms of Section 2870.  (As explained above, the Bratz-related inventions, as dolls and toys, are not covered by Section 2870, and thus within the scope of Bryant's assignment to Mattel.)   This is unambiguously a broad assignment.  At the outset, the Inventions Agreement states that it "is designed to make clear that ... inventions that I create will be owned by the Company"; it concludes with the capitalized, bold-faced statement that "**THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHT TO INVENTIONS THE EMPLOYEE MAY MAKE**

MOTION FOR PARTIAL SUMMARY JUDGMENT

07209/2424109.3

1  DURING HIS OR HER EMPLOYMENT."[8]  The term "inventions" is also

2  defined in broad terms.  UF 9.  All of this is consistent with the agreement's purpose

3  and function, which Bryant's own counsel described as a "broad based assignment

4  of … all things that were conceived and practiced."[9]

5          Although defendants contest this, the Inventions Agreement plainly

6  applies to copyright interests and copyrightable subject matter such as Bryant's

7  designs.  The plain language of the Inventions Agreement is dispositive, providing

8  that Bryant assigned to Mattel not only his "right, title and interest in such

9  inventions" conceived or reduced to practice during his Mattel employment, but also

10  his "right, title and interest in any patents, copyrights, patent applications or

11  copyright applications based" on those inventions.[10]  Moreover, even if no copyright

12  application has yet been filed, Bryant must assist Mattel "at any time" -- and thus

13  even after his Mattel employment ends -- "to obtain for [Mattel's] own benefit,

14  patents and copyrights for all such inventions anywhere in the world ...."[11]  The

15  Inventions Agreement means what it says.  Because the Inventions Agreement

16  expressly encompasses copyrights and copyright applications, Bryant assigned

17  Mattel the copyright interests in his creations.

18      **B.    Bryant Has Admitted That "Inventing" a Toy is Equivalent to**

19              **Designing a Toy.**

20          "[T]he term 'inventions' includes, but is not limited to, all discoveries,

21  improvements, processes, designs, know-how, data, computer programs and

22  formulae, whether patentable or unpatentable."[12]  Accordingly, the Agreement

23  assigned to Mattel "improvements" and "designs" to the extent they were

24  _____

25  [8]  UF 67.

26  [9]  UF 15.

27  [10]  UF 10 (emphasis added).
   [11]  Id. (emphasis added).

28  [12]  UF 9 (Inventions Agreement at ¶ 2(b)) (emphasis added).

1  "conceived or reduced to practice by [Bryant] (alone or jointly by others) at any

2  time during [Bryant's] employment by the Company."[13]  Not surprisingly, Bryant

3  himself admitted at deposition that "████████████████████████████████████████

4  ████"[14]

5  **C.     Bryant Has Admitted Inventions "Conceived" During Employment**

6  **With Mattel are Assigned to Mattel.**

7           The plain language of the Inventions Agreement also compels the

8  conclusion that ideas and concepts are within its scope.   Most notably,

9  paragraph 2(a) refers to inventions that are "<u>conceived</u> or reduced to practice"

10  (emphasis added).  <u>See also</u> ¶ 2(b) (defining "inventions" to include "know-how"

11  and "discoveries").[15]   Bryant himself acknowledged through counsel that the

12  Inventions Agreement "is a broad based assignment of all inventions during their

13  employment; all things that were <u>conceived</u> and practiced,"[16] and defendants' expert

14  D. Jan Duffy also described Mattel's and other employers' "████████████████████

15  ████████████████████████████████████████████████."[17]

16           The Court should accordingly grant partial summary judgment and

17  instruct the jury that any Bratz-related works and concepts conceived, created,

18  made, or reduced to practice by Bryant during his Mattel employment are covered

19  by the Inventions Agreement.   To the extent Mattel proves at trial that such

20  inventions were conceived, created, made, or reduced to practice by Bryant during

---

13  UF 10 (Inventions Agreement at ¶ 2(a)).

14  UF 11. And "designs" undoubtedly include drawings. UF 125.

15  <u>See</u> UF 9.  This conclusion is further corroborated by the "Proprietary Information Check Out" form that Bryant signed at the end of his Mattel tenure and that describes the Inventions Agreement as covering "any and all inventions, improvements and <u>ideas</u> (whether or not patentable) which I have made or <u>conceived</u> ... during the period of my employment with the Company." UF 14.

16  UF 15.

17  UF 16 (emphasis added).

his Mattel tenure, Mattel will be entitled to a judgment that it owns these inventions and their associated copyrights.

### D.   Bryant Admitted Creating Certain Bratz Drawings and Models During His Mattel Tenure.

Although there may be a factual question as to whether some specific "inventions" were created during Bryant's Mattel tenure (January 4, 1999 to October 20, 2000)[18] there is no genuine dispute that Bryant conceived, created, made, or reduced to practice during his Mattel tenure the following works:

- Evening fashion design drawings.[19]
- A "dummy" or model that Bryant admitted creating using Mattel resources.[20]
- A sculpt drawing.[21]

Under the Inventions Agreement, Mattel owns these items and their associated copyrights.[22]

---

[18]   See UF 9 (Inventions Agreement ¶ 2(b)); see also UF 69.  We identify here certain tangible "inventions" that were indisputably conceived or created during Bryant's Mattel tenure.   The parties dispute whether Bryant created intangible ideas/concepts during his Mattel tenure.  We nonetheless respectfully ask the Court to rule as a legal matter that all ideas/concepts (and all tangible inventions) conceived or created by Bryant during his Mattel tenure are covered by the Inventions Agreement and owned by Mattel, and to apply that rule to find that the specific tangible inventions listed in text are owned by Mattel.

[19]   UF 19.

[20]   UF 6.  Defendants claim that this dummy has been lost.

[21]   UF 21 & 22.  As discussed in Point II.D above, Mattel believes it indisputably owns this drawing because it is undisputed it was created by Bryant while in Mattel's employ.

[22]   While it is undisputed that Bryant worked on each of these enumerated inventions during his Mattel tenure, there may be a factual dispute whether certain of them were improvements on inventions that pre-date Bryant's Mattel tenure.  To the extent defendants prove such facts at trial, Mattel would nonetheless still own
(footnote continued)

III.   **THE FIRST-WAVE BRATZ DOLLS ARE SUBSTANTIALLY SIMILAR TO CERTAIN OF BRYANT'S DRAWINGS.**

We discussed above some inventions that Bryant indisputably conceived or created during his Mattel tenure.  As to other Bratz inventions, there may be a dispute as to date of conception/creation/reduction to practice (and thus ownership) to be resolved by the jury.  However, there is no genuine dispute that the first-generation Bratz dolls are substantially similar to a set of Bratz drawings provided by Bryant to MGA, which includes the drawings defendants claim he used to pitch Bratz to MGA.  This Court should so rule on partial summary judgment as to the following:[23]

- Seventeen drawings that the then-Managing Director of MGA Hong Kong identified as "17 initial concept and design drawings of the Bratz dolls made by Mr. Bryant in the year 2000 pursuant to the Agreement."[24]  Mattel has registered all 17 drawings with the U.S. Copyright Office;[25] MGA has registered five of them.[26]  Two are among the Bratz evening fashion drawings that Bryant has acknowledged creating in or about July 2000.[27]  See Point II.D, supra.

- A sculpt drawing for the first-wave Bratz dolls.[28]

_____

the incremental piece (whether it be colorization or something else) that Bryant indisputably added during his Mattel tenure.

[23] As discussed in Point II above, Mattel seeks a ruling that it owns all of Bryant's Bratz inventions, including drawings, created while employed by Mattel. The Court should issue a ruling that, to the extent the jury finds the drawings listed below were so created, they are owned by Mattel.

[24] UF 20.

[25] UF 24.

[26] UF 23.

[27] UF 19.

[28] UF 21 & 22.

07209/2424109.3

MOTION FOR PARTIAL SUMMARY JUDGMENT

To prove copyright infringement, a plaintiff must show (1) ownership of a valid copyright, (2) access to the original, and (3) substantial similarity of the works. Brown Bag Software Corp. v. Symantec, 960 F.2d 1465,1472 (9th Cir. 1992). It is undisputed that the second element is established here because MGA received the 17 design drawings from Bryant no later than September 2000 pitch and the sculpt drawing no later than October 2000. MGA, Bryant and Larian therefore undeniably had access to them when producing the first-generation Bratz dolls.[29] See Meta-Film Assoc., Inc. v. MCA, Inc., 586 F. Supp. 1346, 1355 (C.D. Cal. 1984) ("Access is proven when the plaintiff shows that the defendant had an opportunity to view or to copy the plaintiff's work.") (quoting Sid & Marty Krofft Television Prods., Inc. v. McDonalds Corp., 562 F.2d 1157, 1172 (9th Cir. 1977)).

The third element -- substantial similarity – is appropriately resolved at the summary judgment stage. See, e.g., JCW Invs., Inc. v. Novelty, Inc., 289 F. Supp. 2d 1023 (N.D. Ill. 2003) (granting summary judgment to plaintiff on copyright infringement claim involving copying of toys), aff'd 482 F.3d 910 (7th Cir. 2007); Educ. Testing Serv. v. Simon, 95 F. Supp. 2d 1081 (C.D. Cal. 1999) (testing materials).

Partial summary judgment is warranted here. Well-settled case law and facts not subject to reasonable dispute show that the Bratz dolls are substantially similar to Bryant's designs. Nor is there any reasonable dispute that the creative expression in the drawings is sufficient to qualify for protection under the copyright law. We address substantial similarity in subsection A below and originality in subsection B.

---

[29] UF 23.

## A.   The First-Wave Bratz Dolls Are Substantially Similar To Bryant's Drawings, Which Mattel Has Registered With the Copyright Office

As noted, defendants' access to the allegedly infringed work is undisputed:  MGA received the drawings at issue during Bryant's September 2000 pitch.[30]  The first-wave Bratz dolls came on the market in the summer of 2001.  Thereafter, MGA submitted some of Bryant's drawings to the Copyright Office for registration.[31]  Defendants' undisputed access lowers Mattel's quantum of proof with respect to substantial similarity.  See, e.g., Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000) ("Under our case law, substantial similarity is inextricably linked to the issue of access.  In what is known as the 'inverse ratio rule,' we require a lower standard of proof of substantial similarity when a high degree of access is shown.") (quotation marks and citation omitted); Krofft, 562 F.2d at 1172 (high "degree of access justifies a lower standard of proof to show substantial similarity").

The Ninth Circuit uses the extrinsic test and the intrinsic test to determine substantial similarity.  Under the extrinsic test, the plaintiff must establish that specific expressive elements of the works at issue are similar.[32]  The intrinsic test, on the other hand, looks at the overall similarity of expression in the two works from the perspective of an ordinary observer.[33]  The plaintiff must satisfy both tests

------

[30]   UF 23.

[31]   MGA has never contested that it had access to the remainder of the drawings.  UF 20 & 23.

[32]   As part of the extrinsic test, the court engages in "analytic dissection."  See, e.g., Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1398 (9th Cir. 1997).  This involves breaking works into their components to determine whether similarities between the works are attributable to unprotected elements, if any.  Id.  Any unprotected similarities are filtered out.  Id.

[33]   Because the intrinsic test focuses on a reasonable observer's overall impression, analytic dissection is not employed.  See Olson v. Nat'l Broad. Co., 855 F.2d 1446, 1449 (9th Cir. 1988).

1  to prevail on a claim of copyright infringement.  See, e.g., Krofft, 562 F.2d at 1164

2  (9th Cir. 1977); Litchfield v. Spielberg, 736 F.2d 1352, 1356 (9th Cir. 1984).  The

3  works at issue satisfy both tests.

4             **1.**    **The Extrinsic Test Shows Substantial Similarity.**

5          Defendants cannot plausibly dispute that the first-wave Bratz dolls are

6  based on Bryant's designs.  They repeatedly admitted the point:

7          •   Bryant's and MGA's 2004 Modification of their 2000 Agreement

8             states that "████████████████████████████████████

9             ████████████████████████████."[34]  The Agreement

10            explicitly confirms that Bryant's ████████████████

11            ███████████████, includes the Bratz drawings that

12            are the subject of MGA's Copyright Registration Nos. VA 1-

13            218-487, VA 1-218-488, VA 1-218-489, VA 1-218-490 and VA

14            1-218-491.[35]

15         •   Bryant admitted that he intended his Bratz drawings to serve as

16            guides for creation of the Bratz dolls.[36]

17         •   Defendant Larian testified in another case that the Bratz dolls he

18            showed to retailers were based on Bryant's drawings.[37]

19         •   The copyright registrations for numerous Bratz dolls reflect that

20            they are derived from Bryant's design drawings.  For example,

21            according to MGA's registrations for the doll configurations,

22            accessories and packaging for Jade (registration no. VA 1-301-

23            533), Sasha (VA 1-301-534), Cloe (VA 1-301-535) and Yasmin

24            (VA 1-301-536), these dolls are derived from Bryant's earlier

25

26   [34]  UF 99 (2004 Modification of 2000 Agreement § 3.2).

     [35]  Id.

27   [36]  UF 25.

     [37]  UF 26.

28

MOTION FOR PARTIAL SUMMARY JUDGMENT

drawings, registered by MGA, discussed above, all claimed as created before October 19, 2000.[38]

- In an April 25, 2001 email, Paula Garcia, MGA's Senior Project Manager for Bratz, responded to several interview questions posed by <u>Dolls Magazine</u>. In response to one question, "█████ ███████" Ms. Garcia stated: "████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████"[39]

- In <u>MGA v. Hunglam Toys</u>, Daphne Gronich, MGA's former general counsel, repeatedly identified fifteen Bryant drawings as the "artistic works" upon which the Bratz dolls are modeled.[40]

- In <u>MGA v. Double Grand Corporation Limited</u>, MGA's Lee Shiu Cheung declared under oath that "██████████████ ████████████████████████████████████████ █████████████████████████████"[41]

The inescapable conclusion is that defendants intended to make the Bratz dolls as close to the drawings as possible, and that any claimed dissimilarities are insignificant. "As Judge Learned Hand cogently remarked, 'no plagiarist can excuse the wrong by showing how much of his work he did not pirate.'" <u>Harper & Row Publishers, Inc. v. Nation Enters.</u>, 471 U.S. 539, 565 (1985) (quoting <u>Sheldon v. Metro-Goldwyn Pictures Corp.</u>, 81 F.2d 49, 56 (2d Cir. 1936)).

---

[38] UF 39-40.
[39] UF 68
[40] UF 42.
[41] UF 43.

1    A comparison of the drawings with the first-wave Bratz dolls confirms
2    defendants' admissions.  Mattel's expert Lee Loetz, a toy designer with more than a
3    decade of experience, has worked with companies throughout the industry and has
4    prepared artwork and designs that have been implemented in countless toys.[42]
5    Mr. Loetz explains that important similarities exist on every level, including:

6    • **Body Proportions**.  Comparing a picture of an unclothed Bratz doll with
7       Bryant's drawing shows that each major anatomical component -- including
8       chin, shoulders, waists, crotch, knees, and ankles -- lines up exactly.[43]  A side-
9       by-side comparison from a three-quarter view confirms the similarities.[44]

---

[42]  UF 84.
[43]  UF 27.
[44]  UF 28.



- **Facial Features**.  The proportional placement of the eyes, hair, and lips, which define Bratz's sultry look, also match nearly identically as between the drawings and the dolls.[45]  The eyes are a similar distance apart, as are the eyebrows.[46]  The cheek color application is in the same place.  The faces have a similar shape, from the brow, to the eye socket, to the outward curve of the cheek.  Even the moles are in the same location.[47]

---

[45]  UF 30.
[46]  UF 30.
[47]  UF 30.

- **The Eyes**.  Bryant's drawings include oversized almond shaped-eyes, with heavy lids, outlined with makeup.  The Bratz dolls' eyes share this almond shape, which is angled upward at its outside edge.[48]  The pupils are also placed in a similar location on the horizontal as well as vertical plane.[49]  And the eyebrows share the same distance from the eye, the same angular shape, and cover fifty percent of the pupils.[50]

- **Eye Makeup**.  The makeup on the eyes in Bryant's drawings was meticulously executed on the doll.  In the dolls and in the drawings, the characters' eyes have three eyelashes.  There are similarities in placement and design of the eye makeup.  The eyeliner design is similar in its painterly thickness and sweeping upward curves.[51]

---

[48]  UF 31.
[49]  UF 31.
[50]  UF 31.
[51]  UF 32.

-17-

1
2
3
4
5
6
7
8
9
10
11
12
13



14   • **Lips**.   The lips are substantially similar in Bryant's drawings and the dolls:

15   large, over-inflated, and outlined with lip gloss.[52]

16
17
18
19
20
21
22
23
24
25
26
27

28   [52]   UF 33.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



Exhibit 8

15  **Hair Styling**.   The dolls and drawings share braided hairstyles on a dark-haired
16  character, and pig tails and similar bangs on another character.[53]

17
18
19
20
21
22
23
24
25
26
27

28  [53]   UF 34.



Hair Bangs

Face Shape

Distance Between Eyebrows

Distance Between Eyes

Cheek Color Application

Width & Height

Exhibit 19

- **Clothing**.  The dolls and drawings share urban fashions of short skirts, layered tops, and high-heeled shoes.  Where pants are worn, the dolls and drawings share a flared style with wide cuffs and striped details.  The dolls and drawings also share knit hats, striped shirts, and cropped shirts.[54]

- **Accessories**.  The accessories in both the dolls and the drawings are youthful and funky, especially in the use of colorful backpacks that display the same graphic motifs, such as a  bunny with the words "Hip Hop."[55]

---

[54]  UF 35.
[55]  UF 36.

1      •   **Footwear**.  There are extensive similarities in the shoe design, including in

2          the execution of sneaker style and design, high heels, open toes, and belt

3          straps.[56]  Shoes in both the drawings and on the dolls are oversized.[57]



Boot Design Detail & Color

Exhibit 11

20      •   **Postures**.  In Bryant's drawings, the Bratz figures are posed with an

21          angular waist, knock-knees, pigeon toes, and hands upturned at the wrist.

22          The Bratz dolls match this posture to a remarkable degree.[58]

---

[56]   UF 37.
[57]   UF 37.
[58]   UF 29.

-21-

MOTION FOR PARTIAL SUMMARY JUDGMENT



These similarities easily satisfy Mattel's reduced burden of proof under the extrinsic test.  Courts have found far less sweeping similarities substantial.  For example, in Fisher-Price Toys v. My-Toy Co., 385 F. Supp. 218 (S.D.N.Y. 1974), the court entered judgment for the plaintiff-copyright owner where the accused dolls and the copyrighted dolls had similar shapes, facial features and proportion, eye shape and color, and clothes.  Likewise, in Gund v. Russ Berrie & Co., 701 F. Supp. 1013, 1019 (S.D.N.Y. 1988), the court issued an injunction because the infringing baby ostrich dolls and the copyrighted dolls had similarly curved necks, beaks, colored bodies, and "stubby" tails.  Under the circumstances of this case, no reasonable juror could find that the specific elements of protected expression in Bryant's drawings are not similar to the first-wave Bratz dolls.[59]

---

[59]   UF 23 (VA 1-090-287, VA 1-090-288, VA 1-090-289, VA 1-090-290, and VA 1-148-305 (Bratz doll sculpt)).

1    ## 2.   Mattel Also Clearly Satisfies the Intrinsic Test.

2           The intrinsic test ascertains the visceral reaction of the lay observer,

3    and as such is "virtually devoid of analysis." Shaw v. Lindheim, 919 F.2d 1353,

4    1357 (9th Cir. 1990). The similarities between Bryant's drawings[60] and the dolls[61]

5    are apparent upon first glance. The faces are the same, the proportions are virtually

6    identical, the attitude projected is the same,[62] and the clothes and the shoes are

7    markedly similar. These similarities are as pervasive as those between a film and its

8    screenplay, or a studio recording of song and its early demo recording.   No

9    reasonable jury could fail to find this test satisfied. Accordingly, the intrinsic test of

10   substantial similarity is satisfied, and the Court should find that the Bratz dolls are

11   substantially similar to Bryant's drawings.[63]

12   ## B.   Proof of Substantial Similarity Disposes of Defendants' Affirmative

13   ## Defense of De Minimis Use.[64]

14          As its Nineteenth Affirmative Defense, MGA asserts that Mattel's

15   copyright claims are barred by the doctrine of de minimis use. Because Mattel has

16   established substantial similarity, this affirmative defense fails as a matter of law.

17   "[A] taking is considered de minimis only if it is so meager and fragmentary that the

18   average audience would not recognize the appropriation." Fisher v. Dees, 794 F.2d

19   432, 434 n.2 (9th Cir. 1986). But here, the first-wave Bratz dolls are faithful

20

21          [60] UF 17-23.

22          [61] UF 27-40.

23          [62] Cf. Pivot Point Int'l, Inc. v. Charlene Prods., Inc., 372 F.3d 913, 931-32 (7th Cir. 2004) ("hungry look" expressed by a mannequin head is copyrightable).

24          [63]  Courts uniformly hold that a two-dimensional drawing may be infringed by a

25   three-dimensional toy. See King Features Syndicate v. Fleisher, 299 F. 533 (2d Cir. 1924) (copyrighted comic book character infringed by dolls); Fleisher Studios v.

26   Ralph A. Freundlich, Inc., 73 F.2d 276, 278 (2d Cir. 1934) (drawing of Betty Boop character infringed by a substantially similar doll).

27          [64]  We address defendants' other affirmative defenses in Points V.D and VI,

28   infra.

                                                      MOTION FOR PARTIAL SUMMARY JUDGMENT

executions of Bryant's original drawings.  The creative (and, thus, protected) expression in the drawings is reproduced in the dolls virtually unchanged.  Further, because Mattel has satisfied the intrinsic test for substantial similarity, which focuses on the average person's perception of similarity, defendants cannot show that "the average audience would not recognize the appropriation."  Id.. Defendants' argument that their copying was minimal and, thus, non-actionable lacks merit.  The Court should grant partial summary judgment rejecting the de minimis defense.

### C.   Bryant's Drawings Are Sufficiently Original To Qualify For Copyright Protection.

As shown above, there is no reasonable dispute that the first-wave Bratz dolls are substantially similar to Bryant's drawings.  To avoid that conclusion, defendants have asserted that the drawings are not sufficiently original to qualify for copyright protection.  This argument is meritless, and the Court should reject it on partial summary judgment.  First, Bryant himself submitted sworn responses to requests for admission in this action admitting that his drawings are original works of authorship.  Second, the absurdity of MGA's argument is perhaps best demonstrated by MGA's pursuit and receipt of copyright registrations for Bryant's drawings.[65]  When MGA did so, it created a presumption of originality that defendants cannot now rebut.  Third, defendants have made numerous statements, in this and other litigations, attesting to the drawings' originality.[66]  Therefore, defendants are estopped from contesting the matter here.  Finally, even aside from defendants' prior inconsistent positions, the drawings easily surpass the low originality bar to copyrightability.

---

[65] UF 23
[66] UF 43 & 44.

MOTION FOR PARTIAL SUMMARY JUDGMENT

1.   **Bryant Has Admitted That His Drawings are Original Works of Authorship.**

The Copyright Act protects "original works of authorship."  17 U.S.C. § 102.  In response to Mattel's requests for admission, Bryant admitted that the drawings at issue are original works of authorship within the meaning of the Copyright Act.[67]   With the author's admission that the drawings qualify for copyright protection, any contrary argument by defendants is a non-starter.

2.   **MGA's Registrations Create a Presumption of Copyrightability.**

A copyright registration obtained within five years of the work's publication "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."   17 U.S.C. § 410(c); see also Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1019 (9th Cir. 1985) ("[R]egistration by the Copyright Office is prima facie evidence of copyrightability. This presumption shifts the burden of proof to the challenging party to demonstrate why the item in question is not copyrightable."); NIMMER ON COPYRIGHT §12.11[B][1] at 12-201 (same).

It is undisputed that the Copyright Office twice issued registrations for the drawings at issue:  pursuant to both MGA's and Mattel's copyright applications. MGA obtained registrations in 2003, less than two years after MGA brought Bratz dolls to market.[68]   Mattel's registrations issued in 2006.[69]   Accordingly, the drawings are presumed to be protectible original works of authorship.

---

[67]  See, e.g., UF 44.

[68]  UF 23.

[69]  UF 24.

3.  **Defendants Are Estopped from Contradicting Their Prior Sworn Statements That the Drawings Are Original.**

Courts consistently "invoke[] judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" <u>Hamilton v. State Farm Fire & Cas. Co.</u>, 270 F.3d 778, 782 (9th Cir. 2001) (<u>quoting</u> <u>Russell v. Rolfs</u>, 893 F.2d 1033, 1037 (9th Cir. 1990)). "Inconsistency is the basic element that runs through both judicial reliance and more open-ended 'fast-and-loose' theories of judicial estoppel." CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE, § 4477 at 587 (3d ed. 2002). With the latter theory, "[t]he focus is not so much on a court's reliance as on the perceived unseemliness of a litigant's conduct." <u>Id</u>.

Defendants' prior admissions in this action estop them from changing their positions. MGA's principals have asserted repeatedly that Bryant's drawings are the foundation of the Bratz dolls' creative essence. Thus, when defendant Isaac Larian sought to enforce MGA's copyrights in the courts of Hong Kong, he swore that the defendant's dolls "███████████████████████████████████████████████████████."[70] Also, in <u>MGA v. Hunglam Toys.</u>, Daphne Gronich, MGA's former general counsel, repeatedly identified fifteen Bryant drawings as the "████████████" upon which the Bratz dolls are modeled.[71] Even MGA's complaint in this action is predicated on the uniqueness of Bratz: "At approximately 9.5 to 10 inches tall, the 'BRATZ' dolls were intentionally shorter than 'Barbie' dolls and looked like no other, with disproportionately large heads, big, dramatic eyes and lips, small, thin bodies, oversized feet (to emphasize shoe

---

[70]  UF 41.
[71]  UF 42.

MOTION FOR PARTIAL SUMMARY JUDGMENT

1  fashion and to stand on their own, unlike 'Barbie' which requires a stand), and up-
2  to-date fashions."[72]

3         And in another action, <u>MGA v. Double Grand Corp. Ltd.</u>, MGA
4  obtained a judgment of infringement of Bryant's drawings.[73]  There, MGA's
5  managing director, Lee Shiu Cheung, declared under oath that "▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."[74]  Daphne Gronich, MGA's former
8  general counsel, also identified Bryant's drawings as the "▮▮▮▮▮▮▮▮▮" upon
9  which the three dimensional Bratz dolls are modeled.[75]  Based on these MGA
10 sworn assertions and others, MGA obtained a ruling on summary judgment that the
11 accused three-dimensional dolls and products infringe MGA's copyrights in
12 Bryant's initial concept drawings, at issue here.[76]

13        These are not stray remarks.  Rather, they are repeated representations
14 -- many sworn -- that directly contradict defendants' newly minted assertion that
15 Bryant's Bratz drawings consist of unprotected stock elements.  Having obtained
16 advantage in other litigation by hinging their copyright claim on the originality of
17 Bryant's drawings, alleging it in this action, and, in the case of Bryant, admitting it
18 in this litigation, defendants cannot reverse course now.

19        **4.    <u>The Drawings Easily Satisfy the Low Threshold for a</u>**
20              **<u>Finding of Originality</u>.**

21        Defendants' admissions, prior judicial positions, and their registration
22 of Bratz copyrights, are dispositive on originality.  But even on a clean slate, the
23 drawings clearly surpass the low bar to originality under the Copyright Act.

24 _____

25 [72]  UF 93.
26 [73]  UF 130.
27 [74]  UF 43.
    [75]  UF 42.
28 [76]  UF 130.

                                  MOTION FOR PARTIAL SUMMARY JUDGMENT

In <u>Feist Publications, Inc. v. Rural Telephone Service Co.</u>, 499 U.S. 340 (1991), the Supreme Court held that the originality requirement in copyright law requires "only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." <u>Id.</u> at 345. Distinguishing the originality requirement of copyright law from the novelty requirement of patent law, the Court emphasized that "the requisite level of creativity is extremely low; even a slight amount will suffice," and "[t]he vast majority of works make the grade quite easily." <u>Id.</u> (quotation and citation omitted). The Ninth Circuit similarly has explained that originality means "little more than a prohibition of actual copying" and requires only that the author contribute "something more than a 'merely trivial' variation." <u>Three Boys</u>, 212 F.3d at 489 (quoting <u>North Coast Indus. v. Jason Maxwell, Inc.</u>, 972 F.2d 1031, 1033 (9th Cir. 1992)).

Defendants appear to argue that Bryant's drawings are not original because they purportedly incorporate pre-existing elements, such as anime-inspired large eyes and disproportionately large heads. Defendants are wrong as a matter of law. First, the existence of prior similar works is irrelevant for originality purposes without "evidence that [the work's author] copied from such works." NIMMER § 12.11[B][1] at 12-202; <u>see also</u> <u>R. Dakin & Co. v. A & L Novelty Co., Inc.</u>, 444 F. Supp. 1080, 1084 (E.D.N.Y. 1978). "Absent such evidence, works such as these, having copyright registration certificates, are entitled to a presumption of originality." <u>Id.</u> Here, defendants have utterly failed to demonstrate that Bryant saw, let alone copied, most of the sources on which they now may contend his drawings are based. While defendants' alleged expert points to a panoply of dolls and drawings that are purportedly similar to Bratz, (Spice Girls, Japanese anime-style cartoons, "Blythe" dolls, Margaret Keene's "Ladies in Waiting" illustrations, Lara Croft, and print advertisements by Steve Madden, Cover Girl, Paris Blues and

-28-

Coca Cola), Bryant testified that he had seen only the Steve Madden and Paris Blues ads before creating the Bratz drawings.[77]

Second, and in any event, Bryant does not contend that he engaged in the sort of mechanical copying of the cited works that would render the resulting drawing unoriginal. Given the low bar of originality, courts have uniformly rejected arguments that a work that purportedly draws on pre-existing material is not entitled to full protection under the Copyright Act. In Kamar International, the Ninth Circuit rejected the defendant's argument that the plaintiff's toys were not sufficiently original "because stuffed toy animals are widely available to manufacturers ..., and that because [the plaintiff's] concepts of toy animals were taken from the public domain, [its] stuffed animals are not copyrightable." 657 F.2d at 1061. The court held that "[a]nyone can copyright anything [including realistic depictions of animals], if he adds something original to its expression." Id. (emphasis added).

Mattel, Inc. v. Goldberger Doll Mfg. Co., 365 F.3d 133 (2d Cir. 2004), is particularly instructive. The district court had held that copyright protection did not extend to such purportedly common features of a BARBIE doll as the widely spaced eyes, pert nose, and slim figure. The Second Circuit reversed, holding:

> Mattel's copyright in a doll visage with an upturned nose, bow lips, and widely spaced eyes will not prevent a competitor from making dolls with upturned noses, bow lips, and widely spaced eyes, even if the competitor has taken the idea from Mattel's example, so long as the competitor has not copied Mattel's particularized expression.

Id. at 135-36. Importantly, the court emphasized that virtually imperceptible variations on common facial features may be extremely valuable. "One artist's

---

[77] UF 100.

version of a doll face with upturned nose, bow lips, and widely spaced eyes will be irresistible to an eight-year-old collector.   Another artist's version, which to a grownup may look very like the first, will be a dud to the eight-year-old. . . . We can surmise that <u>in the highly competitive, billion-dollar doll industry, getting the doll's face and expression exactly right is crucial to success</u>." <u>Id</u>. at 136 (emphasis added). <u>See also, e.g.</u>, <u>JCW Investments, Inc. v. Novelty, Inc.</u>, 482 F.3d 910 (7th Cir. 2007) (doll that "represent[ed] a combination of elements that were in the public domain or were *scènes à faire*" was sufficiently original because "the very combination of these elements as well as the expression that is [the doll] himself are creative")

In short, whether or not Bryant was inspired by other works, no reasonable jury would find that his drawings were not original.  Just as MGA claims in its complaint that the Bratz dolls "looked like no other,"[78] so too Bryant's drawings of the dolls were original.  Accordingly, the Bryant drawings are original and copyrightable.

## IV.   BRYANT IS LIABLE FOR BREACH OF CONTRACT, BREACH OF THE DUTY OF LOYALTY, AND BREACH OF FIDUCIARY DUTY.

Mattel's <u>damages</u> for Bryant's breaches of contract, fiduciary duty and duty of loyalty may well be disputed, but certain aspects of Bryant's <u>liability</u> are not. (Other aspects of Bryant's liability that are disputed will be resolved at trial and may expand its liability and damages.)  Partial summary judgment should be granted to Mattel.[79]

---

[78]   UF 93.

[79]   Among the issues susceptible to partial summary judgment are liability on a cause of action where a factual dispute remains only on damages, <u>see</u> <u>Fed. R. Civ. P.</u> 56(d)(2), and the availability of an affirmative defense, <u>see</u> <u>Vernon v. Heckler</u>, 811 F.2d 1274, 1278 (9th Cir. 1987) ("The affirmative defense of statute of limitations ... may be tested on summary judgment ....").

### A.    Bryant Is Liable for Breach of Contract.

In his Inventions Agreement, Bryant promised "to communicate to the Company as promptly and fully as practicable all inventions . . . conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company."[80]   As described in Point II, <u>supra</u>, the Inventions Agreement covers any Bratz "inventions" Bryant conceived, made, created, or reduced to practice during his Mattel tenure.  Bryant admits that he failed to disclose to Mattel that he worked on Bratz during his tenure at Mattel;[81] he therefore breached the Agreement.

Bryant not only failed to disclose these inventions, he also breached paragraphs two and three of the Inventions Agreement.  Specifically, Bryant signed a contract purporting to assign to <u>MGA</u> all "█████████," which included copyrights to "███████████████████████████████

███████"[82]  Bryant later signed a "Modification and Clarification" (of his MGA contract), which "███████" that "█████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████"[83]  This purported assignment indisputably includes the drawings (and associated copyrights) created during Bryant's Mattel tenure.   Indeed, paragraph 3.2 of the contract "██████"

assignment of "███████████████████████████████

_____

[80]  UF 10 (Inventions Agreement ¶ 2(a)).
[81]  UF 45.
[82]  UF 46 (Bryant-MGA Agreement ¶ 3(a)).
[83]  UF 48 (2004 Modification of 2000 Agreement § 2); <u>see also</u> UF 49 (2004 Modification of 2000 Agreement §§ 1.1, 1.4) (defining "███████" to include "█████████████████████████████████," and defining "███████" as "██████████████████████████████").

-31-

07209/2424109.3

1  ████████████████████ [84] Of course, prior to September 18, 2000, Bryant

2  was a Mattel employee.

3          Bryant also breached the term of the Inventions Agreement that

4  prohibited him from "engag[ing] in any employment or business other than for the

5  Company, or invest[ing] in or assist[ing] (in any manner) any business competitive

6  with the business or future business plans of the Company," unless he had "the

7  Company's express written consent."[85]   Discovery responses confirm that Bryant

8  pitched Bratz to MGA at least as of September 2000.[86]  Even before that, he had

9  taken significant steps to develop Bratz, including: (1) preparing a model doll using

10 Mattel's resources and the (unwitting) assistance of Mattel employees;[87] and

11 (2) working on Bratz drawings while employed by Mattel.  For example, Bryant

12 admits that he colored his Bratz drawings in 1999, and that, to his best recollection,

13 he assembled them in a packet in 1999.[88]  Then, while still a Mattel employee,

14 Bryant began <u>working</u> directly with and for MGA; indeed, an MGA employee's

15 contemporaneous email states that Bryant was working for MGA four hours a day

16 starting in September 2000.[89]  Also, before leaving Mattel, Bryant signed a contract

17 with MGA obligating him to provide his services to MGA on a "████████

18 ████."[90]   Bryant worked on an ostensibly separate dolls project called "Prayer

19 Angels" for MGA, and received payment in return.[91]

20          It beyond legitimate dispute that MGA -- a toy company -- was and is

21 "a business competitive with the business or future business plans of" Mattel within

22

23   [84] UF 99 (emphasis added).
24   [85] UF 50 (Inventions Agreement ¶ 3(a)).
     [86] UF 55.
25   [87] UF 6 & 54.
26   [88] UF 54.
     [89] UF 59.
27   [90] UF 47.
28   [91] UF 56.

the meaning of the Inventions Agreement.[92]   It is also undisputed that Mattel never granted Bryant "express written consent" to work with MGA while still employed by Mattel.[93]   Accordingly, Bryant's work with MGA while employed at Mattel breached the Inventions Agreement.

For all the same reasons, Bryant also clearly breached the Conflict of Interest Questionnaire.   The Questionnaire required Bryant to notify Mattel if he became engaged in any business venture with a Mattel competitor that could be construed as a conflict of interest.[94]   Even through Bryant worked with MGA while employed by Mattel, he did not notify Mattel of this fact, thereby breaching his contractual obligations.

Each of these breaches of contract is independently sufficient to establish Bryant's liability; the amount of damages will be determined at trial.

**B.**   **Bryant Is Liable for Breach of the Duty of Loyalty and Breach of Fiduciary Duty.**

**1.**   **Bryant Owed Mattel a Duty of Loyalty and a Fiduciary Duty.**

Every California employee owes a duty of undivided loyalty to his employer and may not take any action that is adverse to his employer.  See Stokes v. Dole Nut Co., 41 Cal. App. 4th 285, 295 (1995); Fowler v. Varian Assocs. Inc., 196 Cal. App. 3d 34, 41 (1987); J. C. Peacock, Inc. v. Hasko, 196 Cal. App. 2d 353, 357 (1961); 4 KIRBY WILCOX AND ERICA GRUBB, CALIFORNIA EMPLOYMENT LAW § 70.04 (2003).   The duty of loyalty is also codified in the Labor Code, which obligates every employee to comply with his employer's directions, to assign to the employer everything (except compensation) the employee acquires by virtue of his

---

[92]   UF 50 (Inventions Agreement ¶ 3(a)).
[93]   Id.
[94]   UF 131.

1   employment, and to give preference to the business of the employer over his own
2   similar interests.  Cal. Labor Code §§ 2856, 2860, 2863.

3              Thus, "[w]here a person is employed to design improvements to the
4   product of his employer, or to design new products for his employer, and he does so,
5   he may not use the results of such work for his own use and benefit and particularly
6   not to the detriment of his employer."  Daniel Orifice Fitting Co. v. Whalen,
7   198 Cal. App. 2d 791, 797-98 (1962) (stating that such a job does not contemplate a
8   right to pitch designs to competitors) (citations omitted).  The Restatement (Second)
9   of Agency explains that an employee who breaches his duty of loyalty is entitled to
10  no compensation and indeed provides that the employee must disgorge anything
11  received as a result of his violation of the duty.  See Restatement (Second) of
12  Agency §§ 393, 403, 429, 469 (1958).

13             Bryant was no ordinary employee, however; rather, he was entrusted by
14  Mattel with confidential, proprietary information and thus owed Mattel a fiduciary
15  duty in addition to a duty of loyalty.  The bases for this fiduciary duty are clear.
16  First, in the Inventions Agreement, Bryant specifically acknowledged: "The
17  Company depends on me to maintain that confidentiality, and I accept that position
18  of trust."[95]  The Inventions Agreement also required Bryant to maintain Mattel's
19  proprietary information in strict confidence.[96]  These provisions create a fiduciary
20  duty under California law.  See, e.g., GAB Bus. Svcs, Inc. v. Lindsey & Newsom
21  Claim Servs., Inc., 83 Cal. App. 4th 409, 417 (2000), overruled on other grounds,
22  Reeves v. Hanlon, 33 Cal. 4th 1140 (2004).

23             Second, even apart from the Inventions Agreement, Bryant owed
24  Mattel a fiduciary duty because Mattel entrusted him with highly confidential
25  information.  See Stevens v. Marco, 147 Cal. App. 2d 357 (1956) (fiduciary

26  _____

27  [95]   UF 51, (Inventions Agreement ¶ 1(a)).
28  [96]   UF 52, (Inventions Agreement ¶ 1(a)-(d)).

                                            MOTION FOR PARTIAL SUMMARY JUDGMENT

relationship existed because one party confidentially entrusted another with "a new and valuable idea"); Michelson v. Hamada, 29 Cal. App. 4th 1566, 1581 (1994) ("Confidential and fiduciary relations are, in law, synonymous, and may be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another.") (citations and quotation omitted).  It is undisputed that, while at Mattel, Bryant had extensive access to and exposure to confidential and proprietary information (including designs for BARBIE and proposed lines of other dolls and toys); confidential knowledge relating to design, marketing, production, sales; and access to the creative resources and concepts at the core of Mattel's business.[97]  This evidence clearly establishes that Bryant occupied a position of trust within the company.  Bryant admitted to this position of trust at least five different times during his deposition:  (1) "███████████████████████████████████ ██████████████████████████████████████████"; (2) Bryant had access to confidential information and stated: "███████████████████████████████████████ ████████████████████████";  (3) Bryant attended meetings regarding products and products in development; (4) Bryant acknowledged the openness of the Mattel design center and that "████████████████████████████████████████ ████████████████████████";  and (5) Bryant attended brainstorming sessions about future products where he "████████████████████"[98]

## 2.   **Bryant Clearly Breached Both Duties.**

A broad variety of conduct can breach an employee's duty of loyalty and fiduciary duty.  As the Court recognized in Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 346 (1966), "No ironclad rules as to the type of conduct which is permissible can be stated, since the spectrum of activities in this regard is as broad as the ingenuity of man itself."  Here, evidence shows beyond reasonable dispute

---

[97]  UF 53.
[98]  UF 53.

that Bryant worked for MGA and accepted payments from MGA while still a Mattel employee, conveyed Mattel property and concepts to MGA, and ultimately misrepresented to Mattel his future plans. This pattern of conduct is a classic breach of the duty of loyalty and fiduciary duty.

As an initial matter, Bryant breached his duties by conveying to MGA drawings and models he created while employed by Mattel and those he may have created later but that derived from his work at Mattel. "[I]n the absence of authority, express or implied, [an agent] cannot transfer his principal's property, and such authority will not be presumed." Palo Alto Mut. Bldg. & Loan Ass'n v. First Nat'l Bank, 33 Cal. App. 214, 221 (1917) (quotation and citation omitted). As discussed above, the Inventions Agreement formalized this common law duty by explicitly prohibiting such a transfer.

But even apart from his actual conveyance of these materials and concepts, Bryant breached his duty of loyalty and his fiduciary obligations to Mattel by secretly contracting with MGA while employed by Mattel. Without Mattel's knowledge, and certainly without its consent, Bryant entered into a contract with MGA dated as of September 18, 2000 -- while he was indisputably still employed by Mattel.[99] The MGA-Bryant contract required Bryant to provide design services on Bratz, a line of dolls created by Bryant, to MGA on a "█████████" basis.[100] Obviously, this contract squarely conflicted with Bryant's pre-existing obligations to Mattel.

Bryant's double life went beyond his dual contracts. Bryant himself specifically admitted to conduct during his Mattel tenure that constituted multiple breaches of his duties to Mattel, including:

---

[99]   UF 46.
[100]   UF 47.

MOTION FOR PARTIAL SUMMARY JUDGMENT

1    • **Drawing Bratz**. Bryant indisputably worked on some Bratz drawings
2       while employed by Mattel. He admitted this in binding responses to
3       requests for admission. He also admitted he showed them to MGA
4       while employed by Mattel.[101]

5    • **Using Mattel resources for Bratz**. Bryant used Mattel employees and
6       materials to prepare a three-dimensional doll prototype for his pitch to
7       MGA (a pitch he made while employed by Mattel), and separately paid
8       at least one Mattel employee for her work on Bratz.[102] Bryant also
9       called MGA dozens of times from his work telephone at Mattel and
10      sent MGA faxes from Mattel's fax machine.[103]

11   • **Soliciting Mattel vendors for Bratz**. Bryant targeted Mattel vendors
12      and engaged them to start their work on Bratz before he left Mattel.[104]
13      For example, he " ████████████████████████████████
14      ████████████████████████████████████ " and obtained its
15      contact information from another Mattel employee.[105]

16   • **Work on MGA's "Angel" Project**. Bryant worked for MGA on an
17      allegedly separate (from Bratz) doll called "Angel" while employed by
18      Mattel, and was paid by MGA for that work.[106]

19      Defendants have argued that Bryant's work on Bratz while employed at
20   Mattel should be dismissed as mere preparation to compete with Mattel, rather than
21   actual competition breaching his duties. But for any such "preparation to compete"
22   defense to apply, Bryant had to disclose his plans to Mattel. See Daniel Orifice

23
24   ———————————————
25   [101] See UF 54-55, 59.
     [102] UF 6 & 17.
26   [103] UF 8, 64 & 95.
     [104] UF 57.
27   [105] UF 7.
     [106] UF 56.
28

1  Fitting Co., 198 Cal. App. 2d at 800-01 (employee liable where he did not make a

2  "full disclosure of acts undertaken in preparation for entering into competition" with

3  the employer) (quotation and citation omitted); Sequoia Vacuum Sys. v. Stransky,

4  229 Cal. App. 2d 281, 287 (1964) ("Appellant argues that all his activities were

5  within the permissible scope of seeking other employment . . . But the protection of

6  the principal's interest requires a full disclosure of acts undertaken in preparation of

7  entering into competition").

8        Far from disclosing his plans, Bryant concealed his creation of Bratz

9  and relationship with MGA from Mattel.  Thus, he did not disclose his invention

10  and/or assignment of Bratz to MGA in his exit interview[107] or when he signed the

11  Proprietary Information Checkout Form, on October 19, 2000, in which he certified

12  that "[a]ll documents ... and other items including, but not limited to, ... sketches ...

13  relating to the business of the Company, made or obtained by me while employed

14  by the Company shall be the exclusive property of the Company and shall be

15  delivered by me to the Company on termination of my employment or at any time as

16  requested by the Company."[108]  Bryant even hid the truth from his co-workers.  For

17  instance, Jill Nordquist testified that "███████████████████████

18  ███████████████████████████."[109]  Likewise, Ivy Ross

19  recalled, "████████████████████████

20  ████████████████████████████████████

21  ████████████████████████████████████

22  ████████████████████████████████

23  ████████████,"[110]

24

25

26  [107]  UF 78 & 91.

27  [108]  UF 14 (Proprietary Information Checkout Form).
   [109]  UF 101.

28  [110]  UF 101.

MOTION FOR PARTIAL SUMMARY JUDGMENT

07209/2424109.3

In circumstances less egregious than those here, courts have consistently recognized that employers have a right to expect loyalty from their employees, and that employees have a legally enforceable duty to provide it. Daniel Orifice Fitting Company is on point: "There can be no doubt that [the defendant] breached his duties.... He was an officer in charge of an important part of the respondent's business and at the same time he was creating improvements to the respondent's product, he was concealing such improvements and stealthily doing all that was necessary to set up a competing business." 198 Cal. App. 2d at 800; see also Stokes, 41 Cal. App. 4th at 296 (employees breached the duty of loyalty by working toward establishing a competing business); Fowler, 196 Cal. App. 3d at 37, 42 (marketing manager's communications with third parties about a new competing business venture were a breach of his duty of loyalty); J. C. Peacock, Inc., 196 Cal. App. 2d at 358-59 (finding breach of the duty of loyalty where employees entered into business transactions that presented a conflict of interest).

Mattel was (and is) in the doll business. Carter Bryant was a doll designer. Rather than devote his talents to Mattel, he plotted against Mattel, exploited the resources available to him, accepted secret payments, pitched his idea, drawings and model for a new doll line to MGA, secretly paid Mattel employees to work on Bratz, entered into a secret contract to work for MGA, and then took affirmative steps to conceal it. The appropriate measure of damages for such wrongdoing may be determined at trial (and the full scope of Bryant's wrongdoing), but the Court can and should rule in Mattel's favor on partial summary judgment that Bryant is liable.

## V. MGA AND LARIAN ARE LIABLE FOR AIDING AND ABETTING BRYANT'S BREACHES OF HIS DUTIES.

MGA and Isaac Larian met with Bryant, paid for his designs, and contracted with him for his services, all the time knowing that Bryant was a Mattel employee in a confidential role and therefore that Bryant owed both a duty of

MOTION FOR PARTIAL SUMMARY JUDGMENT

loyalty and a fiduciary duty to Mattel.  These undisputed facts warrant partial summary judgment in Mattel's favor on MGA's and Larian's liability for aiding and abetting Bryant's breaches of the duty of loyalty and his fiduciary duty.[111]

A defendant aids and abets the commission of an intentional tort if he (1) knows the other's conduct constitutes a breach of duty, and (2) gives substantial assistance or encouragement to the other so to act.  See, e.g., Neilson v. Union Bank of Calif., 290 F. Supp. 2d 1101, 1119 (C.D. Cal. 2003); River Colony Estates Gen. P'ship v. Bayview Fin. Trading Group, Inc., 287 F. Supp. 2d 1213, 1225-26 (S.D.Cal. 2003); Casey v. U.S. Bank Nat'l Assoc., 127 Cal. App. 4th 1138, 1144 (2005).  Here, both requirements are indisputably met.

### A.    MGA And Larian Knew That Bryant's Behavior Was In Breach Of His Duty Of Loyalty And His Fiduciary Duty To Mattel.

Aiding and abetting requires actual knowledge of the underlying breach, Neilson, 290 F. Supp. 2d at 1118-19, but does not require a defendant to agree to join the wrongful conduct in the way one joins a conspiracy.  Berg & Berg Enters., LLC v. Sherwood Partners, Inc., 131 Cal. App. 4th 802, 823 n. 10 (2005).

Here, MGA and Larian knew that Bryant owed duties to Mattel and was breaching those duties.  First, both MGA and Larian admitted they knew Bryant was a Mattel employee at the time Bryant presented his drawings to MGA.[112]  Both MGA and Larian thus knew that Bryant owed Mattel a duty of loyalty because, as explained in Point IV, supra, all California employees owe their employers a duty of loyalty.  MGA and Larian also knew that Bryant owed Mattel a fiduciary duty because Bryant told MGA that he had signed a confidentiality agreement with Mattel, and MGA itself requires strict confidentiality from its own employees in

---

[111]  As with Bryant's liability, certain aspects of MGA's and Larian's liability on these claims may be disputed and will be resolved at trial.  Thus, trial may expand the scope of these defendants' liability and damages.

[112]  UF 62, 63, 104.

1  jobs such as Bryant's.[113]  Again, as explained in Point IV, supra, such an agreement
2  gives rise to a fiduciary duty.

3      Second, MGA and Larian knew that Bryant was breaching these duties.
4  Much of the evidence of what MGA and Larian knew on this score comes from
5  Bryant, who acknowledged at deposition that both MGA and Larian knew that he
6  was a Mattel employee at the time he pitched his ideas to them, accepted payments
7  from them, and worked for them, and entered into a conflicting agreement with
8  them.[114]  Bryant specifically wrote to MGA's counsel, in the course of their
9  negotiation of that agreement, that he had signed a confidentiality agreement with
10 Mattel, but did not forward it to him because securing a copy would "█████
11 █████" at Mattel.[115]  That same communication contained the header of 'Mattel
12 Collectibles" plainly inscribed on it, providing further indication that Bryant was
13 wrongfully using Mattel's resources to do MGA's bidding.[116]

14      Indeed, MGA employees have acknowledged that they knew that
15 Bryant was engaged in improper conduct vis-à-vis Mattel.  For example, MGA's
16 Rachel Harris, who herself attended an initial pitch meeting with Bryant and Larian,
17 testified that she and others knew then that Bryant was a Mattel employee and that it
18 would be "███" for Bryant if Mattel learned he was presenting drawings to MGA
19 while still employed by Mattel.[117]  MGA's records affirm this guilty knowledge:  in
20 a list of former Mattel employees then working at MGA, under Bryant's name, both
21 the end date at Mattel and the start date at MGA are denoted: "███████."[118]
22 Perhaps most damning, in an e-mail dated March 12, 2002 from Isaac Larian to
23
24 _____
25 [113] UF 64.
   [114] UF 64, 63, 65, 104.
26 [115] UF 64 & 95.
   [116] Id.
27 [117] UF 63.
28 [118] UF 107.

MOTION FOR PARTIAL SUMMARY JUDGMENT

1  MGA personnel regarding inquiries about Bratz, Larian stated that: "█████████

2  ████████████████████████████████████████████████

3  ████"[119]

4          Further, in response to a February 6, 2003 e-mail from Larian

5  proposing development of a collectible Bratz doll, an MGA employee suggested

6  creating a limited edition model that would create a marketing "██████." However,

7  she raised the question: "████████████████████████████████████

8  ████"[120]  Similarly, in public statements, Larian falsely identified himself, not

9  Bryant, as the creator of Bratz.[121]

10         In short, there is simply no genuine dispute that MGA and Larian knew

11 that in dealing with Bryant, they were dealing with a competitor's employee who

12 was breaching his duties to Mattel in order to serve MGA.

13     **B.    MGA And Larian Substantially Assisted Bryant in Breaching His**

14             **Duties to Mattel.**

15         California courts have held that even "ordinary business transactions"

16 that a bank performs for a customer can satisfy the substantial assistance element.

17 Casey, 127 Cal. App. 4th at 1145.  Here, MGA and Larian did much more.  Most

18 obviously, MGA specifically paid Bryant for his Bratz expenses, among other

19 things.[122]  Moreover, MGA had Bryant sign an agreement with MGA, which

20 purported to require Bryant to perform work for MGA on a "████████" basis even

21 while a Mattel employee.[123]  MGA thus encouraged Bryant to violate his duties to

22 Mattel and virtually guaranteed that outcome.  No reasonable juror could find MGA

23 and Larian did not provide substantial assistance on these facts.

24 _____

25 [119]  UF 82.

26 [120]  UF 83.

27 [121]  UF 85.

    [122]  UF 65.

28 [123]  UF 46 & 47.

07209/2424109.3                                    -42-

**C.      MGA and Larian Profited from Bryant's Breaches.**

There is also no dispute that MGA and Larian profited financially from encouraging Bryant to breach his duties to Mattel -- Bratz has been an incredibly successful product for MGA and Larian.[124]   Although financial gain and self-interested profit are not elements of an aiding and abetting claim, they corroborate the two elements of the claim.   Neilson v. Union Bank of Calif., 290 F. Supp. 2d 1101, 1127-28 (C.D. Cal. 2003).   In other words, if the aider/abetter is an active participant in the breach of a fiduciary duty and reaped the benefit, he cannot disclaim the burden of liability for the breach.   Id. (citing Heckmann v. Ahmanson, 168 Cal. App. 3d 119, 127 (1985); Bancroft-Whitney Co., 64 Cal. 2d at 353.   That is the case here.

**D.      MGA's and Larian's Aiding and Abetting Conduct Is Fatal to Their Affirmative Defense of Acts or Omissions of Others.**

In its Eighth Affirmative Defense, MGA contends that "Mattel's damages, if any, were not caused by MGA Defendants and are not attributable to any acts or omissions of MGA defendants."[125]   This affirmative defense fails because, as explained above, defendants are liable for aiding and abetting Bryant's wrongdoing.

**VI.      DEFENDANTS' REMAINING AFFIRMATIVE DEFENSES FAIL.**

Seeking to overcome the force of Mattel's claims, defendants assert a litany of affirmative defenses, including:   (1) 17 U.S.C. § 205 and good faith; (2) statute of limitations; (3) laches; (4) waiver; (5) abandonment; (6) consent; (7) acquiescence; (8) estoppel, and (9) unclean hands.   Because defendants cannot establish any genuine issues for trial, each should be rejected.

---

[124]   UF 66.

[125]   UF 113.

**A.    Good Faith and 17 U.S.C. § 205.**

The MGA defendants seek to avoid responsibility for their misconduct by asserting several affirmative defenses based upon defendants' purported good faith or lack of ill intent (collectively, "good faith defenses"). These defenses fail for several independent reasons, and partial summary judgment should be granted in Mattel's favor as to each.

**1.    Good Faith and 17 U.S.C. § 205 Are Not Valid Defenses to Mattel's Claim For Copyright Infringement[126]**

Defendants argue that Mattel's claim for copyright infringement is barred because MGA allegedly "acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA Defendants was valid and permissible."[127]

Good faith is not a valid defense to copyright infringement. "[E]ven where the defendant believes in good faith that he is not infringing a copyright, he may be found liable." Pye v. Mitchell, 574 F.2d 476, 481 (9th Cir. 1978) (citing County of Ventura v. Blackburn, 362 F.2d 515 (9th Cir. 1966)); see also L.A. News Serv. v. Conus Commc'n Co., 969 F. Supp. 579, 584 (C.D. Cal. 1997) ("Direct infringement does not require intent or any particular state of mind").

Although 17 U.S.C. § 205(d) can be a defense to copyright infringement, it is inapplicable here. That provision states that where there are competing transfers of copyright, a prior transferee (here, Mattel, by the virtue of the Inventions Agreement) prevails unless the later purported transferee (here, MGA) took in good faith without notice of the earlier transfer and recorded first. See 17 U.S.C. § 205(d) ("[T]he later transfer prevails if recorded first . . . and if taken in

---

[126] The MGA defendants have asserted the following affirmative defenses that fall under the rubric of good faith:  bona fide purchaser for value, 17 U.S.C. § 205(d), lawful competition, and good faith. UF 114.

[127] UF 91 (MGA's Answer at 22:19-21).

good faith . . . and without notice of the earlier transfer") (emphasis added). MGA has admitted did not record its copyright assignment, and the defense fails for this reason alone.[128] Mattel did.[129] The defense fails for this reason alone. <u>Peer Int'l Corp. v. Latin American Music Corp.</u>, 161 F. Supp. 2d 38, 48 (D.P.R. 2001)

**2.  <u>Good Faith Is Not a Defense to Mattel's Strict Liability Claims.</u>**

Good faith is not a viable defense Mattel's claims for unfair competition and conversion because these are strict-liability offenses for which intent is not even an element. <u>See, e.g.</u>, <u>Community Assisting Recovery, Inc. v. Aegis Ins. Co.</u>, 92 Cal. App. 4th 886, 891 (2001) ("The [unfair competition] statute imposes strict liability. It is not necessary to show that the defendant intended to injure anyone."); <u>Virtanen v. O'Connell</u>, 140 Cal. App. 4th 688, 707 (2006) ("Conversion is a species of strict liability in which questions of good faith, lack of knowledge and motive are ordinarily immaterial.") (quotation and citation omitted).

**3.  <u>Good Faith Is Not a Defense to Mattel's Intentional Tort Claims.</u>**

Although Mattel's intentional tort claims do include a scienter element, "[a] defense which demonstrates that plaintiff has not met its burden of proof [as to an element] is not an affirmative defense." <u>Zivkovic v. Southern California Edison Co.</u>, 302 F.3d 1080, 1088 (9th Cir. 2002); <u>see also</u> <u>Bank of the Sierra v. Kallis</u>, 2006 WL 3513568, *10 (E.D. Cal. Dec. 6 2006) (granting summary judgment on an affirmative defense where defendant was merely "challenging an element of the [plaintiff's] cause of action" because "mere negation of a required element of a cause of action is not an affirmative defense.").

---

[128]  UF 92.
[129]  UF 128.

MOTION FOR PARTIAL SUMMARY JUDGMENT

07209/2424109.3

1           Mattel's claims for aiding and abetting a breach of loyalty or a breach

2   of fiduciary duty and for interference with contract clearly fall within this category.

3   See, e.g., CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1105

4   (9th Cir. 2007) (interference with contract); PMC, Inc. v. Kadisha, 78 Cal. App. 4th

5   1368, 1382 (2000) (misappropriation of trade secrets); Casey v. U.S. Bank Nat'l

6   Ass'n, 127 Cal. App. 4th 1138, 1144 (2005) (aiding and abetting).[130] Accordingly,

7   defendants' assertion of good faith defenses as to these claims is also misplaced, and

8   the defenses should be rejected.

9         **4.**    **In Any Event, Undisputed Evidence Establishes that**

10                 **Defendants Did Not Act in Good Faith.**

11           Even if good faith were theoretically available as an affirmative

12   defense to some or all of Mattel's claims, no reasonable juror could find it on the

13   facts here.  Defendants did not receive the copyright transfer in good faith because

14   the evidentiary record can only lead to a finding that defendants aided and abetted

15   Bryant's breaches of his fiduciary duty and duty of loyalty to Mattel.  We discussed

16   that evidence in Point V, supra; we will not burden the Court by repeating it here.

17   At bottom, defendants have misrepresented and concealed too much and for too

18   long to argue now with any credibility that they acted in good faith.  Therefore, even

19   if defendants could pursue a good faith defense -- and, as a matter of law, they

20   cannot -- the undisputed evidence demonstrates that the defense has no basis in fact.

21       **B.**    **Statute of Limitations and Laches.**

22           There is no genuine dispute of fact here.  Mattel's claims are timely.

23

24

25   [130]   Mattel also asserts claims for breach of fiduciary duty and breach of the duty of loyalty against Bryant.  Bryant initially asserted a good faith defense, but

26   withdrew it in his amended answer.  UF 115 (Bryant's Amended Reply to Mattel's Counterclaims).  Although Bryant purports to incorporate by reference the

27   affirmative defenses of other defendants, it is evident that MGA's purported good

28   faith cannot excuse Bryant's breaches of his duty of loyalty and fiduciary duty.

1. **Applicable Statutes of Limitations.**

We begin by identifying each claim's limitations period.

| Claim | Statute of Limitations | Accrual |
|---|---|---|
| Copyright Infringement | rolling 3 years (17 U.S.C. § 507(b)) | upon discovery (see Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994)) |
| Misappropriation of Trade Secrets | 3 years (Cal. Code Civ. Pro. § 3426.6) | upon discovery (see Cal. Code Civ. Pro. § 3426.6) |
| Breach of Contract | 4 years (Cal. Code Civ. Pro. § 337(1)) | upon discovery where there is concealment (see April Enters., Inc. v. KTTV, 147 Cal. App. 3d 805, 831 (1983)) |
| Interference with Contract | 2 years (Cal. Code Civ. Pro. § 339(1)) | upon discovery (see Korea Supply Co. v. Lockheed Martin Corp., 109 Cal.Rptr. 2d 417, 428-9 (2001), rev'd on other grounds, 29 Cal.4th 1134 (2003)) |
| Breach of Fiduciary Duty | 4 years if gravamen of claim is not fraud (Cal. Code Civ. Pro. § 343) | upon discovery (see April Enters., 147 Cal. App. 3d at 827) |
| Aiding and Abetting Breach of Fiduciary Duty | 2 years (see Rambus Inc. v. Samsung Electronics Co., 2007 WL 39374, at *3 n.4 (N.D. Cal. 2007)) | upon discovery (see April Enters., 147 Cal. App. 3d at 827) |
| Breach of Duty of Loyalty | 3 years (by analogy to breach of fiduciary duty) | upon discovery (by analogy to breach of fiduciary duty) |
| Aiding and Abetting Breach of Duty of Loyalty | 2 years (by analogy to aiding and abetting breach of fiduciary duty) | upon discovery (by analogy to aiding and abetting breach of fiduciary duty) |
| Conversion | 3 years (Cal. Code Civ. Pro. § 338(c)) | upon act of wrongfully taking property (see Bono v. Clark, 103 Cal. App. 4th 1409, 1433 (2003)), but the discovery rule applies in cases where "a fiduciary has concealed the material facts giving rise to the cause of action." Id. |
| Unfair Competition | 2 years if based on common law (Cal. Code Civ. Pro. § 339(1)); 4 years if based on | upon discovery (see, e.g., Mass. Mutual Life Ins. Co. v. Superior Court, 97 Cal. |

-47-

MOTION FOR PARTIAL SUMMARY JUDGMENT

| | statute (Cal. Bus. & Prof. Code § 17208) | App.4th 1282, 1295 (2002)) |
|---|---|---|
| Declaratory Relief | period applicable to underlying claim (see Howard Jarvis Taxpayers Ass'n v. City of La Habra, 25 Cal.4th 809, 821 (2001)) | accrual applicable to underlying claim (see Howard Jarvis Taxpayers Ass'n, 25 Cal.4th at 821) |

A claim accrues when the plaintiff could have discovered the factual basis for the wrongful acts alleged in the complaint. See, e.g., Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797 (2005). In Fox, a patient filed a medical malpractice action against her surgeon. After learning in discovery about a potential surgical equipment malfunction, she amended her complaint to include a product liability claim against the equipment manufacturer. The California Supreme Court held that the plaintiff's product liability claim was timely because "if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim." Id. at 813 (emphasis added). See also Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc., 106 F.3d 894, 899 (9th Cir. 1997) (citing Hobson v. Wilson, 737 F.2d 1, 35 (D.C. Cir. 1984), cert. denied, 470 U.S. 1084 (1985)) (the party asserting the time bar must prove that the opposing party knew of facts giving it notice of the specific cause of action at issue, not just any cause of action); Snow v. A.H. Robins Co., 165 Cal. App. 3d 120, 124 (1985) (plaintiff's fraud claim based upon the manufacturer's concealment of product defect rates accrued upon her discovery of the misrepresentation, not when she learned that the product failed). Thus, the pertinent question for accrual is when the plaintiff discovered the specific misconduct for which it has sued.

Moreover, a plaintiff is "on notice" of a claim only when he has "an awareness of sufficient facts to identify a particular cause of action, be it a tort, a constitutional violation or a claim of fraud. [It does] not mean the kind of notice—

1    based on hints, suspicions, hunches or rumors—that requires a plaintiff to make
2    inquiries in the exercise of due diligence, but not to file suit." Garamendi v. SDI
3    Vendome S.A., 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003) (quoting Hobson,
4    737 F.2d at 35).

5             **2.    Mattel's Original Claims Against Bryant Are Timely.**

6             Mattel filed suit against Bryant on April 27, 2004, alleging several state
7    law claims including breach of contract and breach of duty of loyalty.[131]   There is no
8    reasonable dispute that these claims were timely.   Those claims subject to a three-
9    year limitations period are timely unless Mattel had notice of them prior to April 27,
10   2001, and claims subject to a two-year limitations period are timely unless Mattel
11   had notice of them prior to April 27, 2002.   Bryant has adduced no facts supporting
12   an earlier date.   To the contrary, the evidence shows that Mattel did not know the
13   facts of Bryant's disloyalty until November 24, 2003, when Mattel's in-house
14   counsel learned through discovery in another action that Bryant had entered a
15   contract with MGA while still employed by Mattel.[132]   Indeed, this Court ruled in
16   denying defendants' motion for terminating sanctions that "November 24, 2003[]
17   marks the date when litigation between Mattel and Bryant became more than merely
18   speculative and in fact became probable."[133]

19
20
21
22
23
24
25
26
_____
27   [131] UF 70.
     [132] UF 26.
28   [133] Id. (emphasis added).

### 3.   Mattel's Amended Claims Against Bryant Are Timely.

Mattel added a claim for copyright infringement against Bryant when it moved to amend on November 20, 2006.[134]  "[A] claim relates back if it "arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).  Here, the claim relates back to the filing date of the original complaint because it arises from the same transaction or occurrence as Mattel's other claims, i.e., working with MGA while employed by Mattel and creating Bratz while employed by Mattel.   Martel v. Trilogy Ltd., 872 F.2d 322, 327 (9th Cir. 1989) (new claim related back because it arose from the same transaction and occurrence as original claim); Grudt v. City of Los Angeles, 2 Cal. 3d 575, 583-84 (1970) (holding that amended complaint related back to filing of original complaint where new claim added new theory of recovery based on same acts and same injury alleged in original pleading).  The Court has already held that Mattel's copyright claim against Bryant relates back under Fed. R. Civ. P. 15(c) to Mattel's original complaint against Bryant.[135]  That ruling should not be disturbed.

### 4.   Mattel's Claims Against MGA Are Timely.

MGA intervened as defendant in Mattel's action against Bryant in December 2004.   As it pertains to Phase I, Mattel's amended pleading added interference with contract, aiding and abetting and copyright infringement claims against MGA, based on MGA's substantial assistance of Bryant's breaches of his duties to Mattel, and its copying of Mattel's copyrighted materials.  As this Court ruled in the January 11, 2007 Order (at 12-15), the relation-back principle applies to MGA even though it was not named a defendant in Mattel's original complaint, but rather intervened as a defendant thereafter.  See also Cummings v. U.S., 704 F.2d

---

[134]   UF 72.

[135]   See UF 75 (Order dated Jan. 11, 2007, at 13 ("By MGA's own admission Mattel's copyright claim arises out of the same conduct or transaction contained in the original complaint filed in April, 2004 …")).

MOTION FOR PARTIAL SUMMARY JUDGMENT

1  437 (9th Cir. 1983) (claimant's insurer's complaint in intervention seeking to

2  enforce its right of subrogation related back to filing of claimant's original

3  complaint); DePinto v. Provident Sec. Life Ins. Co., 323 F.2d 826, 831-32 (9th Cir.

4  1963) (intervention of a party plaintiff that shared interests with the original plaintiff

5  related back for statute of limitations purposes).[136]

6          The fact that Mattel, as it was given leave, asserted these claims against

7  MGA as counter-claims to MGA's complaint in the 05-2727 action does not alter the

8  conclusion that these claims are timely.  In the order granting Mattel leave to assert

9  these claims as counterclaims, the Court held, "None of the substantive concerns

10 raised by MGA and Bryant to the present amended complaint, e.g., statutes of

11 limitations, would appear to be affected if the new claims and defendants were

12 brought as defenses and counterclaims in the 05-2727 case as opposed to the 04-

13 9059 one.

14         **5.    Mattel's Claims Against Larian and MGA Hong Kong Are**

15                **Timely.**

16         Mattel's amended pleading substituted Isaac Larian and MGA Hong

17 Kong as "Doe defendants."  The Phase I claims against Larian include aiding and

18 abetting Bryant's breaches, interference with contract, conversion, unfair

19 competition and copyright infringement.  The Phase I claims against MGA Hong

20 Kong include copyright infringement, conversion, and unfair competition.  The

21 Court held -- and defendants cannot now dispute -- that Mattel's claims against them

22 are also timely because they arise from the same general set of facts as the claims

23

──────────────────────────────

24 [136] The copyright claim against MGA would also be timely even if did not relate

25 back (which it does).  The statute of limitations for a copyright infringement claim is
   three years.    17 U.S.C. § 507.    Mattel sought to amend its complaint, on

26 November 20, 2006, less than three years after discovering the infringement.

27 Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994) ("A cause of
   action for copyright infringement accrues when one has knowledge of a violation or

28 is chargeable with such knowledge.") (citation omitted).

against Bryant.[137]  Specifically, the claims are based Bryant's purported assignment of works that he created at Mattel to MGA, his breaches of duties to Mattel, and the MGA defendants' claims to Bratz.

The Court's order was correct.  Under Rule 15(c), the state relation back rules apply if state law provides "the applicable statute of limitations."  See also Wm. Moore, MOORE'S FEDERAL PRACTICE 3d, § 15.20[3] at 15-126. ("When a state relation-back rule is more generous than the federal relation-back rule, the more generous state rule should apply.").  California favors "liberality in the amendment of pleadings to encourage litigating causes on their merits." Myers v. Philip Morris, Inc., 2003 WL 21756086 at *4 (E.D. Cal. 2003) (quoting Marasco v. Wadsworth, 21 Cal. 3d 82, 89 (1978)).  Under California relation-back doctrine, the claims against new defendants, who were previously sued as Does, relate back to the date of the original complaint, as long as they are based on the same general set of facts.  See, e.g., Smeltzley v. Nicholson Mfg. Co., 18 Cal. 3d 932 (1977); Austin v. Mass. Bonding & Ins. Co., 56 Cal. 2d 596, 600 (1961). Accordingly, the claims against the newly-named defendants relate back to the original timely complaint, and these defendants' statute of limitations defense fails.

## C.   Laches Does Not Bar Mattel's Claims.

At the threshold, "[l]aches is not available as a defense to [a state-law based] action at law."[138]  Abbott v. City of Los Angeles, 50 Cal. 2d 438, 462 (1958);

---

[137]   UF 118, 127.

[138]   While some Ninth Circuit precedent holds that laches can bar a statutorily timely federal copyright claim, it will do so only in "unusual" or "extraordinary" circumstances not present here. See, e.g., Danjaq LLC v. Sony Corp., 263 F.3d 942, 954 (9th Cir. 2001) (plaintiff's 1998 lawsuit based on films released between 1962 and 1977 was barred by laches, even though claims were statutorily timely because of recent DVD re-releases); but see Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 586 (9th Cir. 1993) ("The doctrine of laches is inapplicable when Congress has provided a statute of limitations to govern the action."); Lyons P'ship, L.P. v. Morris (footnote continued)

1   <u>see also</u> 11 B.E. WITKIN, SUMMARY OF CALIFORNIA LAW, EQUITY § 14(a)(2) (9th ed.

2   1987) ("Laches can be asserted only in a suit in equity; an action at law may be

3   brought at any time within the period of the statute of limitations."). "The equitable

4   doctrine of laches has a legal equivalent in the statute of limitations. To allow a

5   laches defense in a legal action would be to override a time limit mandated by the

6   Legislature." <u>Unilogic, Inc. v. Burroughs Corp.</u>, 10 Cal. App. 4th 612, 619 (1992).

7         At best for defendants,, the only state-law equitable claims here are for

8   unfair competition and declaratory relief. (We note that these claims are arguably

9   legal because the nature of the underlying claim -- to establish that all profits from

10   Bratz should be placed in a constructive trust[139] -- resembles an action at law for

11   money damages. <u>See, e.g.</u>, <u>Wells Fargo Bank v. Bank of America</u>, 32 Cal. App. 4th

12   424, 439 (1995) ("Although declaratory relief is an equitable proceeding, whether

13   laches is available in a declaratory relief proceeding depends upon the nature of the

14   underlying claim.") As demonstrated above, however, Mattel satisfied the statute of

15   limitations for these claims. Only in the rarest of circumstances can a claim that

16   satisfies the statute of limitations be barred as untimely by laches. <u>See, e.g.</u>, <u>Jarrow</u>

17   <u>Formulas, Inc. v. Nutrition Now, Inc.</u>, 304 F.3d 829, 835-36 (9th Cir. 2002) ("[A]

18   laches determination is made with reference to the limitations period for the

19   analogous action at law. If the plaintiff filed suit within the analogous limitations

20   period, the strong presumption is that laches is inapplicable."); <u>Kling v. Hallmark</u>

21   <u>Cards Inc.</u>, 225 F.3d 1030, 1041, n.8 (9th Cir. 2000) ("When a limitation on the

22   period for bringing suit has been set by statute, laches will generally not be invoked

23   to shorten the statutory period.") (quoting <u>Advanced Cardiovascular Sys., Inc. v.</u>

24   <u>SciMed Life Sys., Inc.</u>, 988 F.2d 1157, 1161 (Fed. Cir. 1993)).

25   ————————————

26   <u>Costumes, Inc.</u>, 243 F.3d 789, 798 (4th Cir. 2001) (same). The purported delays

27   alleged by Bryant here are neither unusual nor particularly lengthy, especially compared to the decades-long prejudicial delay in <u>Danjaq</u>.

28   [139]  UF 119 (Mattel's Second Amended Answer ¶ 169).

-53-

1    In any event, on the undisputed facts Defendants cannot satisfy the
2   delay or prejudice elements of the laches doctrine.   See, e.g., Kling, 225 F.3d
3   at 1036 (defendant must show "both an unreasonable delay . . . and prejudice to
4   itself") (quotation omitted).   There is simply no evidence of unreasonable delay.
5   Further, defendants were not prejudiced because they did not rely on Mattel's
6   alleged delay; rather, they proceeded with developing and producing Bratz dolls
7   both before and after Mattel brought suit.[140]   See, e,g, Russell v. Price, 612 F.2d
8   1123, 1125-2f6 (9th Cir. 1979) ("Defendants at no time changed their film
9   distribution activities in reliance on [plaintiff's] conduct."); Danjaq, LLC v. Sony
10  Corp., 263 F.3d 942, 955 (9th Cir. 2001) ("A defendant may also demonstrate
11  prejudice by showing that it took actions or suffered consequences that it would not
12  have, had the plaintiff brought suit promptly.").   Nor is there any evidence that they
13  would have ceased producing Bratz had Mattel sued earlier, as defendants claim it
14  should have.

15      **D.    Waiver and Consent.**

16          **1.    Waiver.**

17          As an initial matter, the plain language of the Inventions Agreement
18  precludes waiver (and, therefore, consent) defenses.   In the Inventions Agreement,
19  Bryant acknowledged that his "obligations under this Agreement may not be
20  modified or terminated, in whole or in part, except in writing signed by a Vice-
21  President of the Company."[141]   See Securities and Exchange Commission v. Lincoln
22  Thrift Ass'n, 557 F.2d 1274, 1278 (9th Cir. 1977) (existence of nonwaiver clauses
23  was "important fact[]" militating against finding of waiver).   No authorized Mattel
24  executive ever provided Bryant with written consent to his assignment of Bratz to
25
26
27      [140]   UF 120.
28      [141]   UF 77 (Inventions Agreement at ¶ 4(a))(emphasis added).

1   MGA, or permitted him to work for MGA while in Mattel's employ.[142]
2   Accordingly, Bryant is barred from invoking waiver-based doctrines as a matter of
3   law.

4           In any event, reasonable jurors could not find a waiver here. "Waiver
5   is the intentional relinquishment of a known right with knowledge of its existence
6   and the intent to relinquish it." U. S. v. King Features Entm't, Inc., 843 F.2d 394,
7   399 (9th Cir. 1988) (citation omitted).  Waiver of copyright "occurs only if there is
8   an intent by the copyright proprietor to surrender rights in his work."  A&M
9   Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1026  (9th Cir. 2001) (quoting 4
10  MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT ¶ 13.06 (2000)).
11  Because the burden is on the party claiming a waiver of a right to prove it by clear
12  and convincing evidence, doubtful cases will be decided against a waiver. See City
13  of Ukiah v. Fones, 64 Cal. 2d 104, 107-08 (1966).

14          In this case, only one inference can be drawn from the evidence:
15  Mattel intended neither to relinquish rights to Bryant's Mattel-period "inventions"
16  nor to permit Bryant to work for MGA while still a Mattel employee receiving a
17  Mattel paycheck.  Defendants claim waiver, arguing that Mattel "sat" on its rights
18  with knowledge of Bryant's intent to sell the Bratz dolls to MGA.  Bryant's asserts
19  that "Mattel believed from the time that Bryant left Mattel's employ that he was
20  going to perform work for a Mattel competitor,"[143] There is no evidence of such a
21  belief.  To the contrary, the undisputed facts are that had Mattel been aware that
22  Bryant was going to a competitor, -- with an invention that he secretly developed
23  while at Mattel -- it would have followed its policy of not permitting employee to
24  return to Mattel's facilities as of  the same day of his announced resignation.[144]  In
25
26  _____
27  [142]  UF 121.
    [143]  UF 122.
28  [144]  UF 79.

1  any case, the allegation is irrelevant -- merely going to a competitor is not

2  actionable.  Prior to 2003, Mattel simply had no basis to know that Bryant, in

3  concert with MGA, had violated his contractual and legal duties, and thus, could not

4  have had the requisite knowledge or intent necessary to sustain a waiver claim.

5          Furthermore, inaction by itself is not an intentional relinquishment.

6  Novell Inv. v. Weird Stuff, Inc., No. C92-20467 JW/EAI, 1994 WL 16458729 (N.D.

7  Cal. 1993), illustrates this point.  In Novell, plaintiffs brought an action for

8  copyright infringement, trademark infringement, and false designation of origin

9  against defendants as a result of the unauthorized sale of approximately 1700 Novell

10  NetWare 3.11 serialized "system" disks which were retrieved from a dumpster by

11  defendants and sold to another party.  Defendants argued that Novell had waived its

12  right to claim infringement because it had knowledge of "dumpster divers" --

13  persons who comb through dumpsters for material -- for several years and failed to

14  take action to deter such activity.  The court rejected this claim, and held that "there

15  was no evidence that Novell was aware of 'dumpster divers' for years and failed to

16  take action to deter such activity." Id. at *13.  "Moreover, even if Novell failed to

17  take preventive measures to stop "dumpster diving," a failure to act, without more,

18  is insufficient evidence" to support a waiver claim.  Id.  Accordingly, the court

19  denied defendants' waiver defense and granted summary judgment to Novell.  See

20  also id. at *17 (applying same analysis to copyright claim).

21          The same conclusion follows here.  As in Novell, Mattel was unaware

22  of Bryant's working with MGA while employed by Mattel or his work on Bratz

23  while employed by Mattel, and thus, "did not knowingly and intentionally waive its

24  right," id. at *13, to enforce the Inventions Agreement or claim infringement.

25  Moreover, even assuming arguendo that Mattel delayed pursuing defendants'

26  violations, "failure to act, without more, is insufficient evidence of ... [plaintiff's]

27  intent to waive its right to claim infringement...." Id.

28

1    Additionally, defendants assert that waiver applies because Mattel
2    "tolerated conduct by other employees similar to the alleged conduct by Bryant."[145]
3    First, the Inventions Agreement provides that "[a]ny waiver by the Company of a
4    breach of any provision of this Agreement will not operate or be construed as a
5    waiver of any subsequent breach."[146]    Accordingly, Mattel's purported (but
6    unproven) choice not to prosecute breaches of the Agreement "will not operate or be
7    construed as a waiver of any subsequent breach" by Bryant.  Even aside from the
8    Inventions Agreement, the law is clear that litigants need not choose between
9    pursuing all offenders or none.    See Metro-Goldwyn-Mayer Studios, Inc. v.
10   Grokster, Ltd., 518 F. Supp. 2d 1197, 1225 (9th Cir. 2007) ("The Court knows of no
11   rule in copyright, and StreamCast has cited no authority for the proposition, that a
12   copyright holder is bound to pursue either all infringers or none at all."); Emerson
13   Electric Co. v. Rogers, 418 F.3d 841, 845 (8th Cir. 2005) ("While [employer] may
14   not have exercised its rights under the covenant on every occasion, there is no
15   credible evidence that [its] failure to do so rose to a waiver of its right to enforce the
16   agreement as to [the defendant employee] or that its failure to enforce the agreement
17   as to other employees makes it any less likely that [defendant] could use information
18   gained during his relationship with [the employer] to unfairly compete against it.");
19   Deal v. Consumer Programs, Inc., 458 F. Supp. 2d 970, 978 n.5 (E.D. Mo. 2005)
20   (employer's alleged non-enforcement of a contractual provision against one
21   executive does not operate as a waiver of that provision against another);
22   Pochopien v. Marshall, O'Toole, Gerstein, Murray & Borun, 315 Ill. App. 3d 329,
23   339 (Ill. App. 2000) ("The non-enforcement of a provision as to previous employees
24   in different situations is insufficient to constitute waiver as to a subsequent
25   employee.").

26   _____

27   [145]  UF 123.
28   [146]  UF 86.

MOTION FOR PARTIAL SUMMARY JUDGMENT

1    In any event, even assuming Mattel employees were moonlighting as
2  defendants have suggested, defendants' <u>own description</u> such work shows it was
3  completely unrelated to Mattel's core line of business and thus does not support an
4  inference that Mattel knowingly intended to waive its rights against Bryant.[147]
5  Bryant's Bratz-related work for MGA, by contrast, was doll design, the exact work
6  that Mattel had hired him to do.

7           **2.    Consent.**

8           The factual allegations in defendants' waiver and consent defenses are
9  virtually identical.[148]   Defendants claim that Mattel acquiesced to Bryant's
10 breaching his contract, duty of loyalty and fiduciary duty to Mattel by assigning to
11 MGA rights to Bratz and working for MGA while a Mattel employee.  This defense
12 may be worth discussing if the evidence showed that Bryant disclosed to Mattel the
13 any of his misconduct.  He did not, and absent actual knowledge of rights being
14 waived, there can be no waiver or consent.  Defendants base their defense on wrong
15 and innocuous facts.  Because the waiver defense is fatally flawed, the consent
16 defense is likewise doomed.  Defendants simply cannot demonstrate that Mattel
17 knew of, much less consented, to Bryant's misconduct, or that, if Mattel did consent,
18 it did so absent any fraud or mistake.[149]   <u>See</u> 2 SCHWING § 32:3 at 197 ("To be a
19 defense, the consent given must have been to the very act or circumstances that
20 caused the harm giving rise to the action.") (citation omitted); <u>Greenawalt v. Rogers</u>,
21 151 Cal. 630, 635 (1907) ("An apparent consent is not real or free when obtained
22 through ... fraud [or] mistake.").

23

24  _____

25  [147]  <u>See, e.g.</u>, UF 89.
26  [148]  <u>Compare</u> <u>id.</u> Section B, at 32-37 <u>with</u> Section E, at. 50-55 (copying and
27  pasting virtually identical pages).  <u>See</u> <u>id.</u> at 50 (construing consent claim as based
    on "the equitable doctrine of waiver).
28  [149]  UF 110.

**E.    Abandonment.**

Defendants likewise can not sustain an abandonment defense.   Like waiver, "[a]bandonment also requires intent to surrender rights."   <u>Bell Atlantic Business Systems Services, Inc. v. Hitachi Data Systems Corp.</u>, 1995 WL 836331 * 11 (1995) (<u>citing</u> <u>Hampton v. Paramount Pictures Corp.</u>, 279 F.2d 100, 103 (9th Cir.), and <u>Lopez v. Electrical Rebuilders, Inc.</u>, 416 F. Supp. 1133, 1135 (C.D. Cal. 1976)).   First, Mattel cannot have intended to surrender rights it did not know that it had.   Second, abandonment "must be manifested by some overt act indicative of a purpose to surrender the rights and allow the public to copy."   <u>Hampton</u>, 279 F.2d at 104; <u>see also</u> <u>Micro Star v. Formgen Inc.</u>, 154 F.3d 1107, 1114 (9th Cir. 1998).

In this case, defendants cannot establish any such overt act.   Indeed, Bryant does not even claim an abandonment defense, and MGA's answer advances only the one-line, unsupported assertion that "Mattel has abandoned any interest it may have had in the alleged copyrighted works."[150]   Such a vague and conclusory allegation cannot sustain an abandonment claim.   <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) ("a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading but ... must set forth specific facts showing there is a genuine issue for trial'" (<u>quoting</u> <u>Fed. R. Civ. P.</u> 56(e)).[151]

**F.    Estoppel**

For estoppel to apply, the party sought to be estopped (1) "must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must

---

[150]   UF 90 (MGA's Answer at 23).

[151]   Moreover, even assuming <u>arguendo</u> that Mattel was aware of Bryant's conduct and did not pursue him, "mere inaction ...would not constitute a manifestation of an intent to abandon...."   NIMMER § 13.06, at 13-279. Accordingly, defendants have no abandonment defense as a matter of law.

MOTION FOR PARTIAL SUMMARY JUDGMENT

1  be ignorant of the true facts; and (4) he must rely on the former's conduct to his
2  injury." Metro-Goldwyn-Mayer, 518 F. Supp. 2d at 1225; see also Bell Atlantic
3  Bus. Sys. Servs., Inc. v. Hitachi Data Sys. Corp, 1995 WL 836331 (1995) (citing U.
4  S. v. King Features Entm't, 843 F.2d 394, 399 (9th Cir. 1988)). "'Where any one of
5  the elements of equitable estoppel is absent, the claim must fail.'" Am. Cas. Co. of
6  Reading Pa. v. Baker, 22 F.3d 880, 891, 892 (9th Cir. 1994) (citation omitted).
7  Where, as here, only one inference can be drawn from the evidence, the question of
8  estoppel is one of law. See Sawyer v. Sonoma County, 719 F.2d 1001, 1006 n.12
9  (9th Cir. 1983) (citing Driscoll v. City of L.A., 67 Cal. 2d 297, 305 (1967)).

10         None of the elements is present here.  First, as shown above regarding
11  defendants' waiver and consent defenses, Mattel did not "know the facts."[152] Metro
12  Goldwyn-Mayer, 518 F. Supp. 2d at 1235.   Second, "[t]here is no evidence
13  suggesting that Plaintiffs intended or acted in a manner that would allow
14  [defendants] to believe that it could" infringe. Id.

15         Third, defendants allege no "true facts" of which they were ignorant.
16  To the contrary, it was Mattel, not defendants, that was kept in the dark about the
17  nature of Bryant's real involvement in Bratz.   While defendants attempt to argue
18  that Mattel knowingly allowed defendants to develop and market Bratz, such an
19  assertion is valid only if Mattel intended or acted in a manner that would allow
20  defendants to believe they could violate their legal obligations with impunity.  The
21  record is devoid of such evidence.[153]

22         Finally, with respect to the fourth element, defendants cannot show that
23  they detrimentally relied on Mattel's conduct.  There is not a shred of evidence that
24  defendants themselves would have behaved differently had Mattel filed suit earlier
25  as they have continued manufacturing the infringing dolls both before and after

26  _____

27  [152]   UF 124.
28  [153]   UF 111.

Mattel's filing of this action.[154]  As in Metro-Goldwyn-Mayer, defendants' "only apparent estoppel argument is based on  the belief that 'estoppel can result from Plaintiff's 'silence and inaction.'"  Id. n.23 (quoting 4 NIMMER § 13.07).  However, as the court pointed out, "such passive holding out can rarely be established in statutory infringement actions." Id.[155]

### G.    Acquiescence.

Defendants' acquiescence defense founders for similar reasons. "Acquiescence constitutes a ground for denial of relief only upon a finding of conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert ..." his rights against the defendant. Novell, 1994 WL 16458729 at * 13; see id. at *17 (applying standard to copyright infringement).  Defendants have not adduced any evidence that Mattel gave an "assurance" that it would not pursue its legal claims against them.  The dearth of such proof is particularly acute given the wealth of countervailing evidence demonstrating Mattel's concern with protecting its ownership of employee's work product.  See Point II.A supra (discussing purpose of Inventions Agreement).  Given Bryant's failure truthfully to report his involvement with MGA, as well as defendants' concealment of Bryant's involvement, no reasonable juror could find acquiescence.

---

[154]    UF 112.

[155]  This case is analogous to City & County of San Francisco v. Grant Co., 181 Cal. App.3d 1085, 1091-92 (1986), in which the State took no action while a restaurant was remodeled in violation of the handicap access requirements.  The court denied an estoppel defense on the ground that "the State had no notice of the remodeling, did nothing to induce any reliance by the restaurant owners, and did not intend to induce any reliance." 2 SCHWING § 34:2 & n.5.  So too here, Mattel was deprived of the truth regarding defendants' conduct.

## H.    Unclean Hands

Both Bryant and the MGA defendants initially alleged "unclean hands" defenses that were plainly beyond the scope of Phase 1, and would have converted this trial addressed to ownership of Bratz into a limitless search for supposed wrongdoing of some sort by Mattel in the conduct of its international toy business. Clearly recognizing that this effort would fail as a matter of law, and conflict squarely with the letter and spirit of this Court's scheduling order, MGA has withdrawn its defense entirely, and Bryant has sharply restricted his own.[156] What is left, from Bryant's original answer, is nothing more than a rehash of the waiver argument addressed above, as well as of the claim that the Inventions Agreement is unenforceable, recast as "unclean hands." As Bryant asserts it in his answer:

> Mattel's conduct towards Bryant and MGA regarding the matters at issue in this litigation has been unfair, and Mattel is undeserving of any relief against Bryant. In particular, Mattel believed from the time that Carter Bryant left Mattel's employ that he was going to perform work for a Mattel competitor, and Mattel shortly thereafter began investigating what it suspected to be wrongdoing in connection with the Bratz dolls. Yet, Mattel waited and said nothing while the dolls were successfully (and at great cost) developed, manufactured and sold, and only filed suit years later. Mattel also seeks to impose on Bryant duties and obligations (such as the alleged duty to assign to Mattel all inventions by Bryant) that are contrary to applicable law, including the sources of law on which Mattel's claims rely, as well as the

---

[156] See UF 17 & 18.

1  common-law principles of employment law in California

2  and the California Labor Code, including particularly

3  §§ 2870-2872.

4  As Mattel has shown above, there is no evidence that Mattel delayed

5  filing suit at all.  The fact that MGA and Bryant continued to produce and market

6  the Bratz dolls both before and after the filing of litigation against Bryant

7  undermines any claim of detrimental reliance.  As for the assertion that Mattel

8  "seeks to impose" duties on Bryant that are contrary to law, the discussion in Point

9  I, supra, shows this is not the case. The Court should grant summary judgment that

10 "unclean hands" offers no defense to Bryant to the claims raised in this action.

11 "The doctrine of unclean hands demands that a plaintiff act fairly in the

12 matter for which he seeks a remedy.... The determination of the unclean hands

13 defense cannot be distorted into a proceeding to try the general morals of the

14 parties." Kendall-Jackson Winery Ltd v. Superior Court, 76 Cal. App.4th 970, 978

15 (1999). "It is fundamental to the operation of the doctrine that the alleged

16 misconduct by the plaintiff related directly to the transactions concerning which the

17 complaint is made." Dollar Systems, Inv. v. Avcar Leasing Systems, Inc., 890 F.2d

18 165, 173 (9th Cir. 1989) (quoting Arthur v. Davis, 126 Cal. App. 3d 684, 693-94

19 (1981). See also Magnesystems, Inc.v. Nikken, Inc., 933 F. Supp. 944, 953

20 (C.D.Cal. 1996) (rejecting unclean hand defense based on plaintiffs' alleged patent

21 infringement in a patent infringement case against defendants, finding that

22 "[p]laintiff's alleged misconduct ha[d] no direct relationship to the [patent-in-suit]

23 or [p]laintiff's conduct in obtaining the patent-in-suit.").

24 Here, Bryant cannot point to any evidence of misconduct by Mattel in

25 any way related to the transactions between he and MGA which violated Mattel's

26 rights, and his own responsibilities to his former employer. The transactions

27 "concerning which the complaint is made" relate to his own improper dealings with

28

07209/2424109.3

MOTION FOR PARTIAL SUMMARY JUDGMENT

1   MGA. The Court should grant summary judgment that "unclean hands" offers no

2   defense for Bryant to the claims raised in this action.

3       **I.    Mitigation Of Damages.**

4           Defendants' mitigation of damages defense is tied to their

5   waiver/laches/estoppel arguments, and fails for the same reasons.[157]   The only way

6   Mattel could mitigate the damage caused by defendants' infringement was to file

7   suit to stop it.  As described in Point VI.B, <u>supra</u>, Mattel filed this action soon after

8   discovering defendants' misconduct.  The law requires nothing more.  In any event,

9   defendants have not produced any evidence showing that they would have ceased

10  production of Bratz had Mattel filed suit earlier.  Lack of such evidence is fatal to a

11  mitigation of damages defense.   <u>See</u>, <u>e.g.</u>, <u>Classic Concepts, Inc. v. Linen</u>

12  <u>Source, Inc.</u>, 2006 WL 4756377, *8 (C.D. Cal. Apr. 27 2006) (granting summary

13  judgment on a defense of mitigation of damages where defendant failed to introduce

14  any evidence supporting the defense).

15                      **<u>Conclusion</u>**

16          This Court should grant partial summary judgment in Mattel's favor

17  that:

18          **(1)** the Employee Confidential Information and Inventions Agreement

19  ("Inventions Agreement") executed by Bryant and Mattel on January 4, 1999 is

20  enforceable;

21          **(2)** under the Inventions Agreement (a) Mattel owns all Bratz-related

22  "inventions" Bryant conceived, created, made, or reduced to practice while he was

23  employed by Mattel, (b) the term "inventions" covers designs, improvements, ideas,

24  concepts, and copyrightable subject matter, such that if Mattel proves at trial that

25

26  _____

27    [157]   Courts routinely dispose of the affirmative defense of failure to mitigate on summary judgment.  <u>See</u>, <u>e.g.</u>, <u>U.S. v. Union Pacific R. Co.</u>,  2008 WL 413765

28  (E.D.Cal. 2008).

MOTION FOR PARTIAL SUMMARY JUDGMENT

1  any such items were conceived, created, made, or reduced to practice by Bryant
2  during his Mattel tenure, Mattel will be entitled to a judgment that it owns those
3  inventions, and (c) there is no factual dispute that certain such inventions, including
4  several drawings (Exs. 716-19, 721-22, 724-25, drawing Bates-numbered SL00044)
5  and a dummy model, were conceived, created, made, or reduced to practice during
6  Bryant's Mattel tenure, and hence are owned by Mattel;

7         (3) the first-generation Bratz dolls released to the public in the summer
8  of 2001, Copyright Registration Nos. VA 1-218-487, VA 1-218-488, VA 1-218-
9  489, VA 1-218-490 and VA 1-218-491, are substantially similar to seventeen
10 drawings (Ex. 10) and a doll sculpt drawing or blueprint (SL00044) created by
11 Bryant, which are original, protectable works of expression;

12        (4) Although damages and the full scope of Bryant's wrongdoing may
13 involve disputed facts which need to be decided by the jury, on the undisputed facts
14 Bryant is liable for breach of both the Inventions Agreement and the Conflict of
15 Interest Questionnaire, breach of the duty of loyalty, and breach of fiduciary duty;

16        (5) Although damages and the full scope of their wrongdoing may
17 involve disputed facts which need to be decided by the jury, on the undisputed facts
18 MGA and Larian are liable for aiding and abetting Bryant's breaches of the duty of
19 loyalty and fiduciary duty; and

20        (6) The affirmative defenses of MGA, Larian and MGA Hong Kong of
21 (a) 17 U.S.C. § 205, (b) bona fide purchaser for value, (c) good faith, (d)
22 acquiescence, (e) abandonment, (f) acts and omissions of others; and the affirmative
23 defenses of MGA, Larian, MGA Hong Kong and Bryant of (a) statute of limitations,
24 (b) laches, (c) waiver, (d) failure to mitigate damages, and (e) estoppel; and the
25 affirmative defense of Bryant of (a) unclean hands and (b) consent, all fail as to
26 Mattel's Phase 1 claims.

27

28

1    DATED: March 7, 2008        QUINN EMANUEL URQUHART OLIVER &
                                  HEDGES, LLP
2

3                                By /s/ John B. Quinn
                                   John B. Quinn
4                                  Attorneys for Mattel, Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2424109.3

-66-

MOTION FOR PARTIAL SUMMARY JUDGMENT