# EXHIBIT 104

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 105

DALE M. CENDALI (admitted pro hac vice)
DIANA M. TORRES (S.B. #162284)
MARC F. FEINSTEIN (S.B. #158901)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: dtorres@omm.com

PATRICIA GLASER (S.B. # 55668)
CHRISTENSEN, GLASER, FINK,
JACOBS, WEIL & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:   (310) 553-3000
Facsimile:   (310) 556-2920
Email: pglaser@chrisglase.com

Attorneys for Counter-defendants MGA
Entertainment, Inc., Isaac Larian, MGA
Entertainment (HK) Limited, and MGAE de
Mexico S.R.L. de C.V.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation,<br><br>Defendant<br><br><br>CONSOLIDATED WITH<br><br>MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 05-2727 SGL (RNBx)<br>(Consolidated with CV 04-09049 and CV 04-9059)<br><br>**AMENDED ANSWER AND AFFIRMATIVE DEFENSES OF MGA ENTERTAINMENT INC., MGA ENTERTAINMENT (HK) LIMITED, AND MGAE DE MEXICO S.R.L. DE C.V. TO MATTEL, INC.'S SECOND AMENDED ANSWER AND COUNTERCLAIMS**<br><br>Judge:      Hon. Stephen G. Larson<br>Courtroom:  1 |

EXHIBIT     105

PAGE     872

1          Counter-defendants MGA Entertainment, Inc. ("MGA"), MGA

2   Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively

3   the "MGA Defendants") hereby answer, for themselves alone, the Second

4   Amended Answer and Counterclaim of Counter-claimant Mattel Inc., as follows:

5          As a preliminary matter, Mattel's use of headings throughout its

6   counterclaims is improper, and therefore no response to Mattel's headings is

7   required. If any response is required, MGA Defendants deny all allegations

8   contained in Mattel's headings.

9                       **RESPONSES**

10         1.     MGA Defendants deny the allegations set forth in paragraph 1.

11         2.     MGA Defendants deny the allegations set forth in paragraph 2.

12         3.     MGA Defendants admit that MGA decided to expand into

13   Mexico in or about 2004, and deny the remaining allegations set forth in paragraph

14   3.

15         4.     MGA Defendants deny the allegations set forth in paragraph 4.

16         5.     MGA Defendants deny the allegations set forth in paragraph 5.

17         6.     MGA Defendants admit that the Court has federal question

18   jurisdiction over this action pursuant to 28 U.S.C. § 1331, deny that 17 U.S.C. §§

19   101 and 18 U.S.C. § 1964(c) apply to the extraterritorial conduct alleged in the

20   Counterclaims, and deny that Mattel is entitled to any relief on its Counterclaims.

21         7.     MGA Defendants admit that venue is proper in this District for

22   Mattel's claims based on conduct alleged to have occurred within this District and

23   deny that venue is proper in this District for acts alleged to have occurred in

24   Mexico, Canada, Hong Kong, or other places outside of this District.

25         8.     MGA Defendants admit the allegations set forth in paragraph 8.

26         9.     MGA Defendants admit the allegations set forth in the first and

27   second sentences of paragraph 9, and deny the remaining allegations set forth in

28   paragraph 9.

EXHIBIT _105_

PAGE _873_

10.     MGA Defendants admit the allegations set forth in paragraph 10.

11.     MGA Defendants admit the allegations set forth in the first sentence of paragraph 11, and deny the remaining allegations set forth in paragraph 11.

12.     MGA Defendants admit the allegations set forth in paragraph 12.

13.     MGA Defendants admit the allegations set forth in the first sentence of paragraph 13, and deny the remaining allegations set forth in paragraph 13.

14.     MGA Defendants admit the allegations set forth in paragraph 14.

15.     Paragraph 15 is a statement of Mattel's legal position, to which no response is necessary.  To the extent a response is required, MGA Defendants deny the allegations set forth in paragraph 15.

16.     MGA Defendants admit the allegations set forth in the first sentence of paragraph 16.  MGA Defendants are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 16, and on that basis, deny the remaining allegations set forth in paragraph 16.

17.     MGA Defendants are without sufficient knowledge to admit or deny the allegations set forth in paragraph 17, and on that basis, deny the allegations set forth in paragraph 17.

18.     MGA Defendants are without sufficient knowledge to admit or deny the allegations set forth in paragraph 18, and on that basis, deny the allegations set forth in paragraph 18.

19.     MGA Defendants admit that MGA is a toy manufacturer, that MGA began as a consumer electronics business and expanded into the toy business with licenses to sell handheld electronic games, and later expanded its business by

LA2:841935.2                                    - 3 -

EXHIBIT ____105____

PAGE ____874____

1    launching the Bratz fashion doll line, and deny the remaining allegations set forth in

2    paragraph 19.

3        20.    MGA Defendants deny the allegations set forth in paragraph 20.

4        21.    MGA Defendants admit that Carter Bryant is a former employee

5    of Mattel, and state that they are without sufficient knowledge to admit or deny the

6    remaining allegations set forth in paragraph 21, and on that basis, deny the

7    remaining allegations set forth in paragraph 21.

8        22.    MGA Defendants are without sufficient knowledge to admit or

9    deny the allegations set forth in paragraph 22, and on that basis, deny the

10   allegations set forth in paragraph 22.

11       23.    MGA Defendants are without sufficient knowledge to admit or

12   deny the allegations set forth in paragraph 23, and on that basis, deny the

13   allegations set forth in paragraph 23.

14       24.    MGA Defendants are without sufficient knowledge to admit or

15   deny the allegations set forth in paragraph 24, and on that basis, deny the

16   allegations set forth in paragraph 24.

17       25.    MGA Defendants are without sufficient knowledge to admit or

18   deny the allegations set forth in paragraph 25, and on that basis, deny the

19   allegations set forth in paragraph 25.

20       26.    MGA Defendants deny the allegations set forth in paragraph 26.

21       27.    MGA Defendants deny the allegations set forth in paragraph 27.

22       28.    MGA Defendants deny the allegations set forth in paragraph 28.

23       29.    MGA Defendants deny the allegations set forth in paragraph 29.

24       30.    MGA Defendants admit that after MGA made the decision to

25   proceed with the manufacture of the Bratz dolls, MGA employees communicated

26   with employees of MGA Entertainment (HK) Limited on subjects including the

27   manufacturing of Bratz, and deny the remaining allegations set forth in the first

28

LA2:841935.2                                    - 4 -        EXHIBIT ___105___

                                                            PAGE ___875___

1  sentence of paragraph 30. MGA Defendants admit the second sentence of

2  paragraph 30.

3      31.    MGA Defendants admit that samples of the four original Bratz

4  dolls were shown at the Hong Kong Toy Fair in January 2001, and deny the

5  remaining allegations set forth in paragraph 31.

6      32.    MGA Defendants admit that MGA and its subsidiaries have

7  distributed and sold Bratz and Bratz-related products in many countries throughout

8  the world, that MGA and its subsidiaries have licensed Bratz to third parties, that

9  MGA has derived annual revenues from its sales and licenses of Bratz in excess of

10  $500 million, that MGA and its subsidiaries continue to market, sell and license

11  Bratz and intend to continue to do so, and deny the remaining allegations set forth

12  in paragraph 32.

13      33.    MGA Defendants deny the allegations set forth in paragraph 33.

14      34.    MGA Defendants deny the allegations set forth in paragraph 34.

15      35.    MGA Defendants deny the allegations set forth in paragraph 35.

16      36.    MGA Defendants admit that Bryant had an agreement with

17  MGA, state that the terms of the agreement speak for themselves, and deny the

18  remaining allegations set forth in paragraph 36.

19      37.    MGA Defendants admit that in or about late 2003 or early 2004,

20  MGA decided to form a new corporation, MGAE de Mexico, S.R.L. de C.V., to

21  conduct business in Mexico, admit that MGAE de Mexico hired three employees of

22  Mattel's Mexican subsidiary, and deny the remaining allegations set forth in

23  paragraph 37.

24      38.    MGA Defendants admit that Carlos Gustavo Machado Gomez

25  was a Marketing Manager, Boys Division, for Mattel Mexico, admit that Machado

26  was employed at Mattel Mexico from April 1997 until April 19, 2004, admit that

27  Machado had access to some nonpublic business information of Mattel Mexico, and

28  state that they are without sufficient knowledge to admit or deny the remaining

LA2:841935.2                    - 5 -

EXHIBIT _____ 105

PAGE _____ 876

1   allegations set forth in paragraph 38, and on that basis, deny the remaining

2   allegations set forth in paragraph 38.

3          39.   MGA Defendants admit that Mariana Trueba Almada was a

4   Marketing Manager, Girls Division, for Mattel Mexico, admit that Trueba had

5   access to some nonpublic business information of Mattel Mexico, and state that

6   they are without sufficient knowledge to admit or deny the remaining allegations

7   set forth in paragraph 39, and on that basis, deny the remaining allegations set forth

8   in paragraph 39.

9          40.   MGA Defendants admit that Pablo Vargas San Jose was a Trade

10   Marketing Manager for Mattel Mexico, admit that Vargas was employed at Mattel

11   Mexico from March 2001 until April 19, 2004, admit that Vargas had access to

12   some nonpublic business information of Mattel Mexico, and state that they are

13   without sufficient knowledge to admit or deny the remaining allegations set forth in

14   paragraph 40, and on that basis, deny the remaining allegations set forth in

15   paragraph 40.

16          41.   MGA Defendants admit that in or about early 2004, Machado,

17   Trueba and Vargas discussed leaving Mattel Mexico, admit that Machado, Trueba

18   and Vargas resigned from Mattel Mexico on April 19, 2004, admit that they did not

19   identify their new employer to Mattel Mexico, admit that Machado, Trueba and

20   Vargas were offered and accepted employment with MGAE de Mexico, and deny

21   the remaining allegations set forth in paragraph 41.

22          42.   MGA Defendants admit that MGA personnel communicated by

23   telephone with Machado and Vargas prior to their Mattel resignations, admit that

24   MGA personnel, including Isaac Larian, communicated by e-mail with Machado

25   and Vargas concerning terms of employment through an America Online e-mail

26   account with the address <plot04@aol.com>, and deny the remaining allegations

27   set forth in paragraph 42.

28

EXHIBIT ___105___

PAGE ___877___

1   43.   MGA Defendants admit that in or about March 2004, Machado,

2   Trueba, and Vargas made plans to travel from Mexico to Los Angeles in April

3   2004, admit that in or about March 2004, Machado, Trueba and Vargas discussed

4   with MGA personnel, including Larian, employment at MGAE de Mexico, state

5   that the quoted <plot04@aol.com> e-mails speak for themselves, and deny the

6   remaining allegations set forth in paragraph 43.

7   44.   MGA Defendants are without sufficient knowledge to admit or

8   deny the allegations set forth in paragraph 44, and on that basis, deny the

9   allegations set forth in paragraph 44.

10   45.   MGA Defendants are without sufficient knowledge to admit or

11   deny the allegations set forth in paragraph 45, and on that basis, deny the

12   allegations set forth in paragraph 45.

13   46.   MGA Defendants are without sufficient knowledge to admit or

14   deny the allegations set forth in paragraph 46, and on that basis, deny the

15   allegations set forth in paragraph 46.

16   47.   MGA Defendants are without sufficient knowledge to admit or

17   deny the allegation set forth in the third sentence of paragraph 47, and on that basis,

18   deny these allegations, and deny the remaining allegations set forth in paragraph 47.

19   48.   MGA Defendants deny the allegations set forth in paragraph 48.

20   49.   MGA Defendants deny the allegations set forth in paragraph 49.

21   50.   MGA Defendants are without sufficient knowledge to admit or

22   deny the allegation that MGA publicized a claim that, in 2005, it had increased its

23   Mexican market share by 90% over the prior year, and on that basis, deny this

24   allegation, and deny the remaining allegations set forth in paragraph 50.

25   51.   MGA Defendants deny the allegations set forth in paragraph 51.

26   52.   MGA Defendants deny the allegations set forth in paragraph 52.

27   53.   MGA Defendants admit that on October 27, 2005, Mexican

28   authorities searched MGAE de Mexico and seized certain documents, and state that

LA2:841935.2                                    - 7 -

EXHIBIT ____105____

PAGE ____878____

1    they are without sufficient knowledge to admit or deny the remaining allegations

2    set forth in paragraph 53, and on that basis, deny the remaining allegations set forth

3    in paragraph 53.

4            54.    MGA Defendants admit that Machado was transferred from

5    MGAE de Mexico to MGA's office in Van Nuys, California, admit that Machado

6    resides in the County of Los Angeles, and deny the remaining allegations set forth

7    in paragraph 54.

8            55.    MGA Defendants admit the allegations set forth in the first

9    sentence of paragraph 55. MGA Defendants admit that Tyco Toys hired Brawer on

10   April 22, 1996, and state that they are without sufficient knowledge to admit or

11   deny the remaining allegations set forth in the second sentence of paragraph 55, and

12   on that basis, deny the remaining allegations set forth in the second sentence of

13   paragraph 55. MGA Defendants admit the allegations set forth in third sentence of

14   paragraph 55. MGA Defendants admit that on April 9, 1997, Brawer became a

15   Marketing Director for Mattel in Mount Laurel, New Jersey, and state that the

16   remaining allegations in the fourth sentence of paragraph 55 are a statement of

17   Mattel's legal position, to which no response is necessary. To the extent a response

18   is required, MGA Defendants deny the remaining allegations set forth in paragraph

19   55.

20           56.    MGA Defendants are without sufficient knowledge to admit or

21   deny the allegations set forth in paragraph 56, and on that basis, deny the

22   allegations set forth in paragraph 56. The last sentence of paragraph 56 is a

23   statement of Mattel's legal position, to which no response is necessary. To the

24   extent a response is required, MGA Defendants deny the remaining allegations set

25   forth in paragraph 56.

26           57.    MGA Defendants admit that by 2003, Brawer had advanced

27   within Mattel to a Senior Vice President position over customer marketing, and

28   state that the remaining allegations in the first sentence of paragraph 57 are a

LA2:841935.2                           - 8 -

EXHIBIT _____ 105

PAGE _____ 879

1   statement of Mattel's legal position, to which no response is necessary.  To the

2   extent a response is required, MGA Defendants deny the remaining allegations set

3   forth in the first sentence of paragraph 57.  MGA Defendants admit that in his

4   executive position, Brawer was provided access to certain nonpublic Mattel

5   information.

6          58.    MGA Defendants admit the allegations set forth in the first

7   sentence of paragraph 58.  MGA Defendants deny the allegations set forth in the

8   second sentence of paragraph 58.  MGA Defendants are without sufficient

9   knowledge to admit or deny the remaining allegations set forth in paragraph 58, and

10  on that basis, deny the remaining allegations set forth in paragraph 58.

11         59.    MGA Defendants are without sufficient knowledge to admit or

12  deny the allegations set forth in paragraph 59, and on that basis, deny the

13  allegations set forth in paragraph 59.

14         60.    MGA Defendants admit that in April 2004, Mattel made Brawer

15  a Senior Vice President/General Manager, and state that they are without sufficient

16  knowledge to admit or deny the remaining allegations set forth in paragraph 60, and

17  on that basis, deny the remaining allegations set forth in paragraph 60.

18         61.    MGA Defendants admit that in May 2004, Brawer began

19  performing General Manager duties, working with one of Mattel's major retail

20  customer accounts, and state that they are without sufficient knowledge to admit or

21  deny the remaining allegations set forth in paragraph 61, and on that basis, deny the

22  remaining allegations set forth in paragraph 61.

23         62.    MGA Defendants admit the allegations set forth in the first

24  sentence of paragraph 62.  MGA Defendants admit that as Brawer left, he carried a

25  large cardboard box, and deny the remaining allegations set forth in the second

26  sentence of paragraph 62.  MGA Defendants state that they are without sufficient

27  knowledge to admit or deny the remaining allegations set forth in paragraph 62, and

28  on that basis, deny the remaining allegations set forth in paragraph 62.

LA2:841935.2                          - 9 -

EXHIBIT ___105___

PAGE ___880___

63.     MGA Defendants admit the allegations set forth in paragraph 63.

64.     MGA Defendants admit that on September 20, 2004, Mattel hand-delivered a letter to Brawer, state that the contents of the letter speak for themselves, and deny the remaining allegations set forth in paragraph 64.

65.     MGA Defendants admit that at his exit interview on September 29, 2004, Brawer was given a copy of an agreement with Tyco that he had signed on April 22, 1996, and a copy of Mattel's Code of Conduct, admit that Brawer stated that he had not signed the Code of Conduct, and deny the remaining allegations set forth in paragraph 65.

66.     MGA Defendants admit that on October 1, 2004, Brawer's last day of employment with Mattel, Mattel delivered a letter to Brawer, state that the contents of the letter speak for themselves, and deny the remaining allegations set forth in paragraph 66.

67.     MGA Defendants admit that Brawer became MGA's Executive Vice President of Sales and Marketing, admit that he was responsible for sales worldwide, admit that he had and continues to have responsibility for MGA's accounts with some of the same retailers that he worked with while at Mattel, and deny the remaining allegations set forth in paragraph 67.

68.     MGA Defendants admit that Brawer stated during his exit interview that he had returned all confidential proprietary information to Mattel, state that he did not provide copies of information from his personal contacts file, and deny the remaining allegations set forth in paragraph 68.

69.     MGA Defendants admit that since leaving Mattel, Brawer has had contacts with certain Mattel employees, both by telephone and electronic mail, and deny the remaining allegations set forth in paragraph 69.

70.     MGA Defendants deny the allegations set forth in paragraph 70.

EXHIBIT ___105___

PAGE ___881___

1      71.   MGA Defendants are without sufficient knowledge to admit or

2  deny the allegations set forth in paragraph 71, and on that basis, deny the

3  allegations set forth in paragraph 71.

4      72.   MGA Defendants are without sufficient knowledge to admit or

5  deny the allegations set forth in paragraph 72, and on that basis, deny the

6  allegations set forth in paragraph 72.

7      73.   MGA Defendants admit that on September 26, 2005, Brisbois

8  resigned from Mattel Canada, state that she took a position as Vice President of

9  National Accounts at MGAE Canada, and deny the remaining allegations set forth

10  in the first sentence of paragraph 73. MGA Defendants are without sufficient

11  knowledge to admit or deny the remaining allegations set forth in paragraph 73, and

12  on that basis, deny the remaining allegations set forth in paragraph 73.

13      74.   MGA Defendants admit that Brisbois spoke with Isaac Larian

14  by telephone on or about the evening of September 22, 2005, deny that Brisbois

15  copied approximately 45 Mattel documents onto a USB or thumb drive on that

16  same date, deny that Brisbois concealed the thumb drive the last time she left

17  Mattel Canada's office, and state that they are without sufficient knowledge to

18  admit or deny the remaining allegations set forth in paragraph 74, and on that basis,

19  deny the remaining allegations set forth in paragraph 74.

20      75.   MGA Defendants are without sufficient knowledge to admit or

21  deny the allegations set forth in paragraph 75, and on that basis, deny the

22  allegations set forth in paragraph 75.

23      76.   MGA Defendants admit that Brisbois traveled several times to

24  MGA's offices in Van Nuys, California and met with Larian and Brawer, that

25  MGA issued a press release, state that the press release speaks for itself, and state

26  that they are without sufficient knowledge to admit or deny the remaining

27  allegations set forth in paragraph 76 and, on that basis, deny the remaining

28  allegations set forth in paragraph 76.

LA2:841935.2                      - 11 -

EXHIBIT _____ 105

PAGE _____ 882

1        77.    MGA Defendants admit that MGA has hired at least 25

2   employees directly from Mattel's United States operations in the past few years,

3   and deny the remaining allegations set forth in paragraph 77.

4        78.    MGA Defendants deny the allegations set forth in the first

5   sentence of paragraph 78. MGA Defendants admit that Larian has sent email

6   messages to a "Bratz News" distribution list, admit that the recipients of e-mail

7   messages sent to the "Bratz News" distribution list includes members of the media

8   as well as representatives of customers of both MGA and Mattel, and deny the

9   remaining allegations set forth in paragraph 78.

10        79.    MGA Defendants admit that on May 12, 2006, Larian sent an

11   email message to the "Bratz News" distribution list that included a reference to the

12   new My Scene product with real gems, and state that they are without sufficient

13   knowledge to admit or deny the remaining allegations set forth in paragraph 79, and

14   on that basis, deny the remaining allegations set forth in paragraph 79.

15        80.    MGA Defendants admit that Larian told one retailer that such

16   retailer was the only retailer with plans to purchase MY SCENE BLING BLING

17   with real gems, at a time when Larian had a good faith belief that such retailer was

18   the only retailer with plans to purchase MY SCENE BLING BLING with real

19   gems, and deny the remaining allegations set forth in paragraph 80.

20        81.    MGA Defendants deny the allegation set forth in paragraph 81.

21        82.    MGA Defendants repeat their responses contained in paragraphs

22   1 through 81 of this Answer and incorporate them by reference as though fully and

23   completely set forth herein.

24        83.    MGA Defendants deny the allegations set forth in paragraph 83.

25        84.    MGA Defendants deny the allegations set forth in paragraph 84.

26        85.    MGA Defendants deny the allegations set forth in paragraph 85.

27        86.    MGA Defendants deny the allegations set forth in paragraph 86.

28        87.    MGA Defendants deny the allegations set forth in paragraph 87.

LA2:841935.2

EXHIBIT ___ 105

PAGE _____ 883

88.   MGA Defendants repeat their responses contained in paragraphs 1 through 87 of this Answer and incorporate them by reference as though fully and completely set forth herein.

89.   MGA Defendants deny the allegations set forth in paragraph 89.

90.   MGA Defendants deny the allegations set forth in paragraph 90.

91.   MGA Defendants deny the allegations set forth in paragraph 91.

92.   MGA Defendants deny the allegations set forth in paragraph 92.

93.   MGA Defendants deny the allegations set forth in paragraph 93.

94.   MGA Defendants deny the allegations set forth in paragraph 94.

95.   MGA Defendants deny the allegations set forth in paragraph 95.

96.   MGA Defendants deny the allegations set forth in paragraph 96.

97.   MGA Defendants deny the allegations set forth in paragraph 97.

98.   MGA Defendants repeat their responses contained in paragraphs 1 through 97 of this Answer and incorporate them by reference as though fully and completely set forth herein.

99.   MGA Defendants deny the allegations set forth in paragraph 99.

100.   MGA Defendants deny the allegations set forth in paragraph 100.

101.   MGA Defendants deny the allegations set forth in paragraph 101.

102.   MGA Defendants deny the allegations set forth in paragraph 102.

103.   MGA Defendants deny the allegations set forth in paragraph 103.

104.   MGA Defendants deny the allegations set forth in paragraph 104.

105.   MGA Defendants deny the allegations set forth in paragraph 105.

EXHIBIT _____ 105

PAGE _____ 884

106.   MGA Defendants repeat their responses contained in paragraphs 1 through 105 of this Answer and incorporate them by reference as though fully and completely set forth herein.

107.   MGA Defendants deny the allegations set forth in paragraph 107.

108.   MGA Defendants deny the allegations set forth in paragraph 108.

109.   MGA Defendants deny the allegations set forth in paragraph 109.

110.   MGA Defendants deny the allegations set forth in paragraph 110.

111.   MGA Defendants deny the allegations set forth in paragraph 111.

112.   MGA Defendants deny the allegations set forth in paragraph 112.

113.   MGA Defendants deny the allegations set forth in paragraph 113.

114.   MGA Defendants deny the allegations set forth in paragraph 114.

115.   MGA Defendants deny the allegations set forth in paragraph 115.

116.   MGA Defendants repeat their responses contained in paragraphs 1 through 115 of this Answer and incorporate them by reference as though fully and completely set forth herein.

117.   MGA Defendants deny the remaining allegations set forth in paragraph 117.

118.   MGA Defendants deny the allegations set forth in paragraph 118.

LA2:841935.2

- 14 -

EXHIBIT __105__

PAGE ____885____

1            119.   MGA Defendants deny the allegations set forth in paragraph

2    119.

3            120.   MGA Defendants deny the allegations set forth in paragraph

4    120.

5            121.   MGA Defendants deny the allegations set forth in paragraph

6    121.

7            122.   MGA Defendants repeat their responses contained in paragraphs

8    1 through 121 of this Answer and incorporate them by reference as though fully and

9    completely set forth herein.

10           123.   MGA Defendants deny the allegations set forth in paragraph

11   123.

12           124.   MGA Defendants deny the allegations set forth in paragraph

13   124.

14           125.   MGA Defendants deny the allegations set forth in paragraph

15   125.

16           126.   MGA Defendants deny the allegations set forth in paragraph

17   126.

18           127.   MGA Defendants deny the allegations set forth in paragraph

19   127.

20           128.   MGA Defendants deny the allegations set forth in paragraph

21   128.

22           129.   MGA Defendants repeat their responses contained in paragraphs

23   1 through 128 of this Answer and incorporate them by reference as though fully and

24   completely set forth herein.

25           130.   The first and fifth sentences of paragraph 130 are statements of

26   Mattel's legal position, to which no response is necessary.  To the extent a response

27   is required, MGA Defendants deny the allegations set forth in the first and fifth

28   sentences of paragraph 130.  MGA Defendants are without sufficient knowledge to

1    admit or deny the remaining allegations set forth in paragraph 130, and on that

2    basis, deny the remaining allegations set forth in  paragraph 130.

3              131.   MGA Defendants deny the allegations set forth in paragraph

4    131.

5              132.   MGA Defendants deny the allegations set forth in paragraph

6    132.

7              133.   MGA Defendants deny the allegations set forth in paragraph

8    133.

9              134.   MGA Defendants deny the allegations set forth in paragraph

10   134.

11             135.   MGA Defendants deny the allegations set forth in paragraph

12   135.

13             136.   MGA Defendants repeat their responses contained in paragraphs

14   1 through 135 of this Answer and incorporate them by reference as though fully and

15   completely set forth herein.

16             137.   MGA Defendants deny the allegations set forth in paragraph

17   137.

18             138.   MGA Defendants deny the allegations set forth in paragraph

19   138.

20             139.   MGA Defendants deny the allegations set forth in paragraph

21   139.

22             140.   MGA Defendants deny the allegations set forth in paragraph

23   140.

24             141.   MGA Defendants deny the allegations set forth in paragraph

25   141.

26             142.   MGA Defendants repeat their responses contained in paragraphs

27   1 through 141 of this Answer and incorporate them by reference as though fully and

28   completely set forth herein.

LA2:841935.2                          - 16 -

EXHIBIT _____ 105

PAGE _____ 887

143.  Paragraph 143 is a statement of Mattel's legal position, to which no response is necessary.  To the extent a response is required, MGA Defendants deny the allegations set forth in the paragraph 143.

144.  MGA Defendants deny the allegations set forth in paragraph 144.

145.  MGA Defendants deny the allegations set forth in paragraph 145.

146.  MGA Defendants deny the allegations set forth in paragraph 146.

147.  MGA Defendants deny the allegations set forth in paragraph 147.

148.  MGA Defendants deny the allegations set forth in paragraph 148.

149.  MGA Defendants repeat their responses contained in paragraphs 1 through 148 of this Answer and incorporate them by reference as though fully and completely set forth herein.

150.  MGA Defendants deny the allegations set forth in paragraph 150.

151.  MGA Defendants deny the allegations set forth in paragraph 151.

152.  MGA Defendants deny the allegations set forth in paragraph 152.

153.  MGA Defendants deny the allegations set forth in paragraph 153.

154.  MGA Defendants deny the allegations set forth in paragraph 154.

LA2:841935.2

- 17 -

EXHIBIT _____105_____

PAGE _____888_____

1    155.   MGA Defendants repeat their responses contained in paragraphs
2    1 through 154 of this Answer and incorporate them by reference as though fully and
3    completely set forth herein.

4    156.   MGA Defendants deny the allegations set forth in paragraph
5    156.

6    157.   MGA Defendants deny the allegations set forth in paragraph
7    157.

8    158.   MGA Defendants deny the allegations set forth in paragraph
9    158.

10    159.   MGA Defendants deny the allegations set forth in paragraph
11    159.

12    160.   MGA Defendants deny the allegations set forth in paragraph
13    160.

14    161.   MGA Defendants deny the allegations set forth in paragraph
15    161.

16    162.   MGA Defendants deny the allegations set forth in paragraph
17    162.

18    163.   MGA Defendants repeat their responses contained in paragraphs
19    1 through 162 of this Answer and incorporate them by reference as though fully and
20    completely set forth herein.

21    164.   MGA Defendants deny the allegations set forth in paragraph
22    164.

23    165.   MGA Defendants deny the allegations set forth in paragraph
24    165.

25    166.   MGA Defendants deny the allegations set forth in paragraph
26    166.

27

28

LA2:841935.2

- 18 -

EXHIBIT _____ 105

PAGE _____ 889

167.   MGA Defendants repeat their responses contained in paragraphs 1 through 166 f this Answer and incorporate them by reference as though fully and completely set forth herein.

168.   MGA Defendants deny the allegations set forth in paragraph 168.

169.   Paragraph 169 is a statement of Mattel's legal position, to which no response is necessary.  To the extent a response is required, MGA Defendants deny the allegations set forth in the paragraph 169.

170.   Paragraph 170 is a statement of Mattel's legal position, to which no response is necessary.  To the extent a response is required, MGA Defendants deny the allegations set forth in the paragraph 170.

## AFFIRMATIVE DEFENSES

Without admitting any wrongful conduct on the part of MGA Defendants or any Counter-Defendant, and without admitting that Mattel suffered any loss, damage, or injury, MGA Defendants allege the following affirmative defenses to the Counterclaims.  By designating the following as affirmative defenses, MGA Defendants do not in any way waive or limit any defenses which are or may be raised by their denials, allegations, and averments set forth herein.  MGA Defendants also do not, by alleging any affirmative defense, admit that Mattel does not have the burden of proof for any or all facts underlying any of those defenses. These defenses are pled in the alternative, and are raised to preserve the rights of MGA Defendants to assert such defenses, and are without prejudice to their ability to raise other and further defenses.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Mattel's counterclaims fail to state a claim against MGA Defendants upon which relief can be granted.

LA2:841935.2                          - 19 -

EXHIBIT ___105___

PAGE ___890___

## SECOND AFFIRMATIVE DEFENSE

### (Unclean Hands/*in Pari Delicto*)

Mattel's counterclaims are barred in whole or in part by Mattel's unclean hands and wrongful acts.  This affirmative defense is based, in part, on Mattel's efforts to undermine MGA's business and to "kill" Bratz at any cost which include, but are not limited to, Mattel's efforts to infringe and dilute MGA's trade dress, copy MGA's products, packaging, themes, and advertising (including for Mattel products My Scene, Diva Starz, Wee 3 Friends, Acceleracers, Polly Pocket, and Little Mommy products, to name a few), and engage in other acts of unfair competition against MGA as alleged in MGA's complaint against Mattel; Mattel's efforts to create negative publicity or press about MGA, MGA products, Bryant, Larian, or MGA employees; Mattel's efforts to fund or commission market research or studies that portray Bratz or MGA products negatively; Mattel's efforts to interfere with MGA's acquisition of or investment in Zapf Creation AG; Mattel's efforts to include negative references to MGA or Bratz on Mattel's "We Believe in Girls" website; Mattel's efforts or intent to interfere with business dealings or contractual relations between MGA and Smoby Group; Mattel's influencing Nickelodeon to reject MGA advertisements or to limit time slots for advertisements; assisting parties in lawsuits against MGA; Mattel's monitoring, "spying on" or gaining knowledge of MGA's trade secrets, non-public information, non-public activities, unreleased products, and product development; gaining access, or attempts to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false pretenses; Mattel's wrongfully obtaining MGA's costs and sales information through Mattel-employed category managers at retailers; Mattel's inducing non-party customers to breach confidentiality agreements with MGA and divulge non-public information about MGA's unreleased products; Mattel's covertly investigating MGA, its officers and employees, and their family members; Mattel's contacting persons under false

EXHIBIT ___105___

PAGE ___841___

1    pretense in order to interrogate them about Bratz and this litigation; Mattel's

2    coercing its employees to accept restrictive covenants (right before a massive

3    layoff) and non-compete clauses and other efforts to prevent prospective MGA

4    employees from accepting offers of employment; Mattel's delay in suing Carter

5    Bryant because, *inter alia*, Mattel wanted Bryant to testify in an unrelated Mattel

6    case; Mattel's falsely inflating its Barbie sales figures in an effort to mislead the

7    public and retailers; and Mattel's taking all measures to conceal its bad acts,

8    including the willful non-retention and destruction of documents.  Additionally,

9    Mattel believed from the time that Carter Bryant left Mattel's employ that he was

10   going to perform work for a Mattel competitor.  Mattel began investigating Bryant

11   and MGA Defendants, including Bryant's role in the creation and development of

12   Bratz, at least as early as March 2002.  Nonetheless, Mattel waited years to bring

13   suit, all the while allowing MGA Defendants to spend years developing their

14   business and invest tens of millions of dollars developing the Bratz products and

15   building the Bratz brand.  These averments are made on information and belief

16   except where MGA Defendants have knowledge thereof.

### THIRD AFFIRMATIVE DEFENSE

#### (Laches)

19   Mattel's counterclaims are barred by the equitable doctrine of laches

20   because, among other things, Mattel believed from the time that Carter Bryant left

21   Mattel's employ that he was going to perform work for a Mattel competitor.  Mattel

22   began investigating Bryant and MGA Defendants, including Bryant's role in the

23   creation and development of Bratz, at least as early as March 2002 and thereafter

24   continued its investigation into Bryant's role in the creation and development of

25   Bratz, as well as his work with MGA, in August 2002 after Mattel's CEO, Robert

26   Eckert, received an "anonymous letter" that claimed that Bryant stole the idea for

27   Bratz from Mattel and sold it to MGA Defendants.  Nonetheless, Mattel waited

28   years to bring suit, all the while allowing MGA Defendants to spend years

LA2:841935.2

- 21 -

EXHIBIT ___105___

PAGE ___892___

1   developing their business and invest tens of millions of dollars developing the Bratz

2   products and building the Bratz brand.

### FOURTH AFFIRMATIVE DEFENSE

#### (Statute of Limitations)

5   Mattel's counterclaims are barred by the applicable statutes of limitations,

6   including but not limited to, 18 U.S.C. § 1961 *et seq.*, 17 U.S.C. § 507(b), and Code

7   of Civil Procedure §§ 337, 339, 343 and 338(c).

### FIFTH AFFIRMATIVE DEFENSE

#### (*Bona Fide* Purchaser for Value)

10   Mattel cannot maintain its counterclaims against MGA Defendants because

11   MGA Defendants paid valuable consideration for Bryant's assignment of his rights

12   in the original Bratz drawings to MGA Defendants, and MGA Defendants acted

13   with a good faith belief that Bryant owned the rights to his original Bratz drawings

14   and that his assignment of such rights to MGA Defendants was valid and

15   permissible.

### SIXTH AFFIRMATIVE DEFENSE

#### (17 U.S.C. § 205(d))

18   Mattel cannot maintain its counterclaims against MGA Defendants because,

19   among other things, MGA Defendants acted with a good faith belief that Bryant

20   owned the rights to his original Bratz drawings and that his assignment of such

21   rights to MGA Defendants was valid and permissible.

### SEVENTH AFFIRMATIVE DEFENSE

#### (Information Readily Ascertainable)

24   MGA Defendants cannot be liable, either on their own account or by

25   association with other defendants, for misappropriation of information that was

26   readily ascertainable by proper means at the time of the alleged acquisition or use.

27   Such information includes, but is not limited to, the identity of suppliers,

28

EXHIBIT _____ 105

PAGE _____ 893

1 │ manufacturers, distributors and retailers; contact information for the same; and

2 │ sales, marketing and media data.

### EIGHTH AFFIRMATIVE DEFENSE

#### (Acts or Omissions of Others)

5 │     Mattel's damages, if any, were not caused by MGA Defendants and are not

6 │ attributable to any acts or omissions of MGA Defendants.

### NINTH AFFIRMATIVE DEFENSE

#### (Estoppel)

9 │     Mattel's counterclaims are barred in whole or in part by the equitable

10 │ doctrine of estoppel because, among other things, Mattel believed from the time

11 │ that Carter Bryant left Mattel's employ that he was going to perform work for a

12 │ Mattel competitor. Mattel began investigating Bryant and MGA Defendants,

13 │ including Bryant's role in the creation and development of Bratz, at least as early as

14 │ March 2002. Nonetheless, Mattel waited years to bring suit, all the while allowing

15 │ MGA Defendants to spend years developing their business and invest tens of

16 │ millions of dollars developing the Bratz products and building the Bratz brand.

### TENTH AFFIRMATIVE DEFENSE

#### (Acquiescence)

19 │     Mattel's counterclaims are barred in whole or in part by acquiescence

20 │ because, among other things, Mattel believed from the time that Carter Bryant left

21 │ Mattel's employ that he was going to perform work for a Mattel competitor. Mattel

22 │ began investigating Bryant and MGA Defendants, including Bryant's role in the

23 │ creation and development of Bratz, at least as early as March 2002. Nonetheless,

24 │ Mattel waited years to bring suit, all the while allowing MGA Defendants to spend

25 │ years developing their business and invest tens of millions of dollars developing the

26 │ Bratz products and building the Bratz brand. Additionally, Mattel tolerated and

27 │ condoned conduct by other employees similar to the alleged conduct by Bryant and

28 │ others on which Mattel bases its claims.

LA2:841935.2

- 23 -

EXHIBIT 105

PAGE 894

## ELEVENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

MGA Defendants deny that Mattel suffered any damages, but even if it did, Mattel failed to take reasonable steps to mitigate those purported damages.

## TWELFTH AFFIRMATIVE DEFENSE

### (No Statutory Damages or Attorneys' Fees)

Mattel is barred from recovering statutory damages and/or attorneys' fees because it failed to register the copyrights that are purportedly at issue within the time required by 17 U.S.C. § 412.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Waiver)

Mattel's counterclaims are barred in whole or in part by waiver because, among other things, Mattel believed from the time that Carter Bryant left Mattel's employ that he was going to perform work for a Mattel competitor. Mattel began investigating Bryant and MGA Defendants, including Bryant's role in the creation and development of Bratz, at least as early as March 2002. Nonetheless, Mattel waited years to bring suit, all the while allowing MGA Defendants to spend years developing their business and invest tens of millions of dollars developing the Bratz products and building the Bratz brand.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Abandonment)

Mattel has abandoned any interest it may have had in the alleged copyrighted works.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (De Minimus Use)

MGA Defendants deny that Mattel owns any copyright interest in the alleged works, but even if Mattel could craft a claim that the Bratz dolls incorporate an

LA2:841935.2

- 24 -

EXHIBIT ____105____

PAGE ____895____

1  aspect of a Mattel copyrighted work, such use would be *de minimus* and non-

2  infringing.

### SIXTEENTH AFFIRMATIVE DEFENSE

#### (Joint Authorship)

5  MGA Defendants deny that Mattel owns any copyright interest in the alleged

6  works, but even if it did, any liability would be eliminated or greatly diminished by

7  the doctrine of joint authorship.

### SEVENTEENTH AFFIRMATIVE DEFENSE

#### (Competition Privilege/Justification)

10  Mattel's counterclaims are barred in whole or in part on the grounds that the

11  acts of the MGA Defendants were lawful competition or justified.

### EIGHTEENTH AFFIRMATIVE DEFENSE

#### (Good Faith)

14  Mattel's counterclaims are barred in whole or in part because the MGA

15  Defendants acted in good faith.

### NINETEENTH AFFIRMATIVE DEFENSE

#### (Lack of Authority)

18  Mattel's counterclaims are barred in whole or in part on the grounds that to

19  the extent any person committed an unlawful or tortious act, the person lacked

20  authority to commit such act on behalf of the MGA Defendants.

### TWENTIETH AFFIRMATIVE DEFENSE

#### (Lack of Standing)

23  Mattel's counterclaims are barred in whole or in part by its lack of standing.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

#### (Joinder in Defenses of Co-Defendants)

26  MGA Defendants hereby adopt and incorporate by reference any and all

27  other affirmative defenses that have been or will be asserted by any other defendant

28  (including Bryant) in this litigation to the extent that defendants may share in such

LA2:841935.2

105

PAGE _____ 896

1    affirmative defenses.

2    ### TWENTY-SECOND AFFIRMATIVE DEFENSE

3    ### (Undiscovered Defenses)

4    MGA Defendants have insufficient knowledge or information upon which to

5    form a belief as to whether additional defenses are available.  MGA Defendants

6    reserve the right to assert any further or additional defenses upon receiving more

7    complete information regarding the matters alleged in the Counterclaims, through

8    discovery or otherwise.

9

10   WHEREFORE, MGA Entertainment, Inc., MGA Entertainment (HK)

11   Limited, and MGAE de Mexico S.R.L. de C.V., pray for relief as follows:

12       a.    that the Counterclaims be dismissed with prejudice;

13       b.    that judgment be entered in favor of counter-defendants and against

14   counterclaimant;

15       c.    that counter-defendants recover their costs and attorneys' fees; and

16       d.    that the Court award such other and further relief as is just and proper.

17

18   Dated:  September 19, 2007        O'MELVENY & MYERS LLP

19

20

21                                 Marc F. Feinstein
                              Attorneys for Counter-defendants

22                                 MGA Entertainment, Inc., Isaac Larian,
                              MGA Entertainment (HK) Limited, and

23                                 MGAE de Mexico S.R.L. de C.V.

24

25

26

27

28

LA2:841935.2                       - 26 -

EXHIBIT _____105_____

PAGE _____897_____

1

## PROOF OF SERVICE

2

I, Karen A. Nakatsu, declare:

3

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On September 19, 2007, I served the within document(s):

4

5

**AMENDED ANSWER AND AFFIRMATIVE DEFENSES OF MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT (HK) LIMITED, AND MGAE DE MEXICO S.R.L. DE C.V. TO MATTEL, INC.'S SECOND AMENDED ANSWER AND COUNTERCLAIMS**

6

7

8

☒  by causing to be personally served the document(s) listed above to the person(s) listed below.

9

10  John B. Quinn, Esq.
Michael T. Zeller, Esq.
B. Dylan Proctor, Esq.

11  Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street,

12  10th Floor
Los Angeles, CA 90017

13

14  ☒  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

15

16

17

18

19  Patricia Glaser, Esq.                    Michael H. Page, Esq.
Christensen, Glaser, Fink, Jacobs,          Keker & Van Nest LLP

20  Weil & Shapiro, LLP                      710 Sansome Street
10250 Constellation Blvd.,                  San Francisco, CA 94111

21  19th Floor
Los Angeles, CA 90067

22

23  James W. Spertus, Esq.
Law Offices of James W. Spertus

24  12100 Wilshire Blvd., Suite 620
Los Angeles, CA 90025

25

26

27

28

LA2:817525.2

EXHIBIT _____ 105 _____

PAGE _____ 898 _____

1    I declare under penalty of perjury under the laws of the United States that the above is true and correct.

2

3        Executed on September 19, 2007, at Los Angeles, California.

4

5                                    _Karen A. Nakatsu_
                                    Karen A. Nakatsu
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA2:817525.2

EXHIBIT _____105_____

PAGE _____899_____

# Nationwide Legal, Inc.

## COURT • PROCESS • MESSENGER

DATE 9/19/07

CONTROL # 20223 021496

www.nationwideasap.com

legal@nationwideasap.com

316 W. 2nd Street, Suite 705  Los Angeles, CA 90012  (213) 625-9100  (213) 625-9111
611 Civic Center Drive W., Suite 204  Santa Ana, CA 92701  (714) 558-2400  (714) 558-2401
3637 Ninth Street  Riverside, CA 92501  (951) 275-0071  (951) 275-0074
1255 Post Street, Suite 500  San Francisco, CA 94109  (415) 351-0400  (415) 351-0407
121 Broadway, Suite 331  San Diego, CA 92101  (619) 232-7500  (619) 232-7600

Firm: O'MELVENY & MYERS
400 S. HOPE STREET      SUITE 1000
LOS ANGELES        CA  90071

213 430-6100      ACCT# 101

Telephone:

Attorney: T. GLAD

Secretary:

Email:

Ref./Billing #: 577436-008

## SERVICE TYPES

| SPECIAL | RUSH | HOT | STANDARD/REG | CLOCK RUN | SAME DAY | NEXT DAY |
|---|---|---|---|---|---|---|
| X | ☐ | ☐ | | | ☐ | ☐ |

## MESSENGER SERVICES

From:                                    To:

Address:                                 Address:

City:                     Zip:            City:                          Zip:

Sender:                                  Attention:

## COURT SERVICES

Case Number:

Case Name:

Court Address:

☐ Court Filing
☐ Research/Copy
☐ Courtesy Copy
☐ Recording

**DO NOT ADVANCE**

Fees Attached  $_____

Advanced Fees $_____

Check Number _____

## SERVICE OF PROCESS

Company/Person Being Served:

QUINN EMANUEL

Address: 865 S. FIGUEROA ST.

City: LA                Zip: 90017

☑ Office Service
☐ Business
☐ Substituted Service
☐ Residence

Service Deadline

**DO NOT ADVANCE**

Fees Attached  $_____

Advanced Fees $_____

Check Number _____

## TYPE OF DOCUMENTS:

CV 05-2727 SGL

BRYANT - V - MATTEL

## SPECIAL INSTRUCTIONS:

DROP SERVE  SIGN POS

EXHIBIT 105

PAGE 900

Received By:                    Date:        Time:

# EXHIBIT 106

RECEIVED

APR 0 2 2007

1  DALE M. CENDALI (admitted *pro hac vice*)
   DIANA M. TORRES (S.B. #162284)
2  JAMES P. JENAL (S.B. #180190)
   O'MELVENY & MYERS LLP
3  400 South Hope Street
   Los Angeles, CA 90071-2899
4  Telephone: (213) 430-6000
   Facsimile: (213) 430-6407
5  Email: jjenal@omm.com

6  PATRICIA GLASER (S.B. #55668)
   CHRISTENSEN, GLASER, FINK,
7  JACOBS, WEIL & SHAPIRO LLP
   10250 Constellation Boulevard, 19th Floor
8  Los Angeles, CA 90067
   Telephone: (310) 553-3000
9  Facsimile: (310) 556-2920
   Email: pglaser@chrisglase.com

10

11 Attorneys for Plaintiff
   MGA Entertainment, Inc.

12

13            UNITED STATES DISTRICT COURT

14           CENTRAL DISTRICT OF CALIFORNIA

              EASTERN DIVISION

15 CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
                                         (consolidated with CV 04-9059 & 05-2727)
16
              Plaintiff,                 **MGA ENTERTAINMENT, INC.'S**
17                                       **RESPONSES TO MATTEL, INC.'S**
      v.                                 **THIRD SET OF REQUESTS FOR**
18                                       **ADMISSION TO MGA**
   MATTEL, INC., a Delaware             **ENTERTAINMENT, INC.**
19 Corporation,

20
              Defendant.
21
   CONSOLIDATED WITH
22 MATTEL, INC. v. BRYANT and
   MGA ENTERTAINMENT, INC. v.
23 MATTEL, INC.

24

25

26                                       EXHIBIT ___106___

27                                       PAGE ___901___

28                                       MGA'S RESPONSES TO MATTEL'S THIRD SET
                                         OF REQUESTS FOR ADMISSION TO MGA

                                         3.30

1    **RESPONSE TO REQUEST FOR ADMISSION NO. 139:**

2           MGA incorporates by reference the above-stated general objections as

3    if fully set forth herein.  MGA specifically objects to this request on the grounds

4    that the request is vague and ambiguous, particularly in its use of the word

5    "represented," in that such phrase implies a representation of fact and the apparent

6    authority to make such representation of fact.

7           Subject to and without waiving the foregoing general and specific

8    objections, MGA responds as follows to the request: MGA denies the request.

9

10   **REQUEST FOR ADMISSION NO. 140:**

11          Admit that, prior to October 20, 2000, MGA knew that BRYANT was

12   employed by MATTEL.

13

14   **RESPONSE TO REQUEST FOR ADMISSION NO. 140:**

15          MGA incorporates by reference the above-stated general objections as

16   if fully set forth herein.  MGA specifically objects to this request on the grounds

17   that it is vague and ambiguous, particularly as to time and in its use of the term

18   "MGA" and the phrase "was employed by MATTEL."  MGA also specifically

19   objects to this request on the grounds that no time frame given for BRYANT's

20   employment with Mattel.

21          Subject to and without waiving the foregoing general and specific

22   objections, MGA responds as follows to the request: MGA admits that prior to

23   October 20, 2000, a limited number of people at MGA knew that BRYANT was

24   employed by Mattel at times preceding October 4, 2004.  Except as so admitted

25   MGA denies the request.

26          EXHIBIT __106__

27          PAGE __902__

28

MGA'S RESPONSES TO MATTEL'S THIRD SET
OF REQUESTS FOR ADMISSION TO MGA

**RESPONSE TO REQUEST FOR ADMISSION NO. 239:**

MGA incorporates by reference the above-stated general objections as if fully set forth herein. MGA further objects to this request on the grounds that it seeks information about a statement that is incomplete and/or out of context.

Subject to and without waiving the foregoing general objections, MGA responds as follows to this request: MGA has made a reasonable inquiry and the information known or readily obtainable by MGA is insufficient to enable MGA to admit or deny this request. On that basis, MGA denies the request.

**REQUEST FOR ADMISSION NO. 240:**

Admit that the work registered as VA 1-233-104 is a derivative of the works registered as VA 1-218-487, VA 1-218-488, VA 1-218-489, VA 1-218-490, VA 1-218-491, VA 1-090-287, VA 1-090-288, VA 1-090-289 and VA 1-090-290.

**RESPONSE TO REQUEST FOR ADMISSION NO. 240:**

MGA incorporates by reference the above-stated general objections as if fully set forth herein. MGA specifically objects to this request on the grounds that it calls for a legal conclusion. MGA also specifically objects to this request on the grounds that it calls for the disclosure of attorney-client privileged information or information protected from disclosure by the work-product doctrine, joint defense or common interest privilege or other privilege.

**REQUEST FOR ADMISSION NO. 241:**

Admit that, as of the date of these Requests, MGA has not recorded the agreement produced by BRYANT as BRYANT 00794-BRYANT 0000799, or any version thereof, with the U.S. Copyright Office.

MGA'S RESPONSES TO MATTEL'S THIRD SET
OF REQUESTS FOR ADMISSION TO MGA

EXHIBIT ___106___

PAGE ___903___

**RESPONSE TO REQUEST FOR ADMISSION NO. 241:**

MGA incorporates by reference the above-stated general objections as if fully set forth herein. MGA specifically objects to this request on the grounds that the request seeks information not relevant to any claim or defense of any party in this action.

Subject to and without waiving the foregoing general and specific objections, MGA responds as follows to this request: MGA admits the request.

**REQUEST FOR ADMISSION NO. 242:**

Admit that, as of the date of these Requests, MGA has not recorded the agreement produced by Bryant as BRYANT 00794-BRYANT 0000799, or any version thereof, with any state or federal agency, department or entity.

**RESPONSE TO REQUEST FOR ADMISSION NO. 242:**

MGA incorporates by reference the above-stated general objections as if fully set forth herein. MGA specifically objects to this request on the grounds that the request seeks information not relevant to any claim or defense of any party in this action.

Subject to and without waiving the foregoing general and specific objections, MGA responds as follows to this request: MGA admits the request.

**REQUEST FOR ADMISSION NO. 243:**

Admit that, as of the date of these Requests, MGA has not recorded the agreement produced by MGA as MGA000001-MGA000006, or any version thereof, with the U.S. Copyright Office.

MGA'S RESPONSES TO MATTEL'S THIRD SET OF REQUESTS FOR ADMISSION TO MGA

EXHIBIT ___ 106

PAGE ___ 904

**RESPONSE TO REQUEST FOR ADMISSION NO. 243:**

MGA incorporates by reference the above-stated general objections as if fully set forth herein. MGA specifically objects to this request on the grounds that the request seeks information not relevant to any claim or defense of any party in this action.

Subject to and without waiving the foregoing general and specific objections, MGA responds as follows to this request: MGA admits the request.

**REQUEST FOR ADMISSION NO. 244:**

Admit that, as of the date of these Requests, MGA have not recorded the agreement produced by MGA as MGA000001-MGA000006, or any version thereof, with any state or federal agency, department or entity.

**RESPONSE TO REQUEST FOR ADMISSION NO. 244:**

MGA incorporates by reference the above-stated general objections as if fully set forth herein. MGA specifically objects to this request on the grounds that the request seeks information not relevant to any claim or defense of any party in this action.

Subject to and without waiving the foregoing general and specific objections, MGA responds as follows to this request: MGA admits the request.

**REQUEST FOR ADMISSION NO. 245:**

Admit that, as of the date of these Requests, BRYANT has not recorded the agreement produced by MGA as MGA000001-MGA000006, or any version thereof, with the U.S. Copyright Office.

MGA'S RESPONSES TO MATTEL'S THIRD SET
OF REQUESTS FOR ADMISSION TO MGA

EXHIBIT ___106___

PAGE ___905___

1

2   **REQUEST FOR ADMISSION NO. 249:**

3          Admit that, as of November 7, 2006, MGA had not recorded the

4   agreement produced by BRYANT as BRYANT 00794-BRYANT 0000799, or any

5   version thereof, with the U.S. Copyright Office.

6

7   **RESPONSE TO REQUEST FOR ADMISSION NO. 249:**

8          MGA incorporates by reference the above-stated general objections as

9   if fully set forth herein. MGA specifically objects to this request on the grounds

10  that the request seeks information not relevant to any claim or defense of any party

11  in this action.

12         Subject to and without waiving the foregoing general and specific

13  objections, MGA responds as follows to this request: MGA admits the request.

14

15  **REQUEST FOR ADMISSION NO. 250:**

16         Admit that, as of November 7, 2006, MGA had not recorded the

17  agreement produced by Bryant as BRYANT 00794-BRYANT 0000799, or any

18  version thereof, with any state or federal agency, department or entity.

19

20  **RESPONSE TO REQUEST FOR ADMISSION NO. 250:**

21         MGA incorporates by reference the above-stated general objections as

22  if fully set forth herein. MGA specifically objects to this request on the grounds

23  that the request seeks information not relevant to any claim or defense of any party

24  in this action.

25         Subject to and without waiving the foregoing general and specific

26  objections, MGA responds as follows to this request: MGA admits the request.

27

28

- 150 -

MGA'S RESPONSES TO MATTEL'S THIRD SET
OF REQUESTS FOR ADMISSION TO MGA

EXHIBIT _____ 106

PAGE _____ 906

**REQUEST FOR ADMISSION NO. 251:**

Admit that, as of November 7, 2006, MGA had not recorded the agreement produced by MGA as MGA000001-MGA000006, or any version thereof, with the U.S. Copyright Office.

**RESPONSE TO REQUEST FOR ADMISSION NO. 251:**

MGA incorporates by reference the above-stated general objections as if fully set forth herein. MGA specifically objects to this request on the grounds that the request seeks information not relevant to any claim or defense of any party in this action.

Subject to and without waiving the foregoing general and specific objections, MGA responds as follows to this request: MGA admits the request.

**REQUEST FOR ADMISSION NO. 252:**

Admit that, as of November 7, 2006, MGA had not recorded the agreement produced by MGA as MGA000001-MGA000006, or any version thereof, with any state or federal agency, department or entity.

**RESPONSE TO REQUEST FOR ADMISSION NO. 252:**

MGA incorporates by reference the above-stated general objections as if fully set forth herein. MGA specifically objects to this request on the grounds that the request seeks information not relevant to any claim or defense of any party in this action.

Subject to and without waiving the foregoing general and specific objections, MGA responds as follows to this request: MGA admits the request.

- 151 -

MGA'S RESPONSES TO MATTEL'S THIRD SET
OF REQUESTS FOR ADMISSION TO MGA

EXHIBIT ___106___

PAGE ___907___

1  **RESPONSE TO REQUEST FOR ADMISSION NO. 256:**

2        MGA incorporates by reference the above-stated general objections as

3  if fully set forth herein.  MGA specifically objects to this request on the grounds

4  that the request seeks information not relevant to any claim or defense of any party

5  in this action.  MGA specifically objects to this request on the grounds that it seeks

6  information not reasonably expected to be in MGA's possession.

7        Subject to and without waiving the foregoing general and specific

8  objections, MGA responds as follows to this request:  MGA has made a reasonable

9  inquiry and the information known or readily obtainable by MGA is insufficient to

10  enable MGA to admit or deny this request.  On that basis, MGA denies the request.

11

12

13      Dated:  March 30, 2007          O'MELVENY & MYERS LLP

14

15

16                          By:  Diana M. Torres
                        Attorneys for MGA Entertainment, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

                       - 154 -      MGA'S RESPONSES TO MATTEL'S THIRD SET
                                     OF REQUESTS FOR ADMISSION TO MGA

EXHIBIT _____ 106

PAGE _____ 908

## PROOF OF SERVICE

I, C. Kelley Canning, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On March 30, 2007, I served the within document(s):

**MGA ENTERTAINMENT, INC.'S RESPONSES TO MATTEL, INC.'S THIRD SET OF REQUESTS FOR ADMISSION TO MGA ENTERTAINMENT, INC.**

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Michael T. Zeller, Esq.
Timothy Alger, Esq.
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Keith A. Jacoby, Esq.                    Patricia Glaser, Esq.
LITTLER MENDELSON, P.C.                  CHRISTENSEN, GLASER, FINK, JACOBS,
2049 Century Park East,                  WEIL & SHAPIRO, LLP
Fifth Floor                              10250 Constellation Blvd.,
Los Angeles, CA 90067                    19th Floor
                                         Los Angeles, CA 90067

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on March 30, 2007, at Los Angeles, California.

_C. Kelley Canning_
C. Kelley Canning

LA2:827618

- 155 -

EXHIBIT 106
PAGE 909

# EXHIBIT 107

1   DALE M. CENDALI
    (of counsel, not admitted in California)
2   DIANA M. TORRES (S.B. #162284)
    PAULA E. AMBROSINI (S.B. #193126)
3   O'MELVENY & MYERS LLP
    400 South Hope Street
4   Los Angeles, CA  90071-2899
    Telephone:  (213) 430-6000
5   Facsimile:   (213) 430-6407
    email:        dtorres@omm.com
6
    PATRICIA GLASER (S.B. # 55668)
7   CHRISTENSEN, MILLER, FINK,
    JACOBS, GLASER, WEIL &
8   SHAPIRO LLP
    10250 Constellation Boulevard, 19th Floor
9   Los Angeles, CA  90067
    Telephone:  (310) 553-3000
10  Facsimile:   (310) 556-2920

11  Attorneys for Plaintiff
    MGA Entertainment, Inc.
12

13
14                  UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

                        CV 05-02727 CBM(RZx)

16  MGA ENTERTAINMENT, INC.,        Case No.

17              Plaintiff,          COMPLAINT FOR FALSE
                                    DESIGNATION OF ORIGIN,
18        v.                        AFFILIATION, ASSOCIATION OR
                                    SPONSORSHIP (15 U.S.C. § 1125
19  MATTEL, INC., a Delaware        (a)); UNFAIR COMPETITION (15
    Corporation, and DOES 1-10,     U.S.C. § 1125 (a), Cal. Bus. & Prof.
20                                  Code § 17200 et seq. and California
                                    Common Law); DILUTION (15
21              Defendants.         U.S.C. § 1125 (c), Cal. Bus. & Prof
                                    Code § 14330 and California Common
22                                  Law); AND UNJUST ENRICHMENT

23                                  DEMAND FOR JURY TRIAL

24
25
26
27
28

                                    EXHIBIT ____107____
                                    PAGE ____910____

with reviving its ailing cheese business. Investors looked for him to do the same for Mattel.

19. Upon his arrival at Mattel, Mr. Eckert's promise, according to *Wall Street Journal* reports, was to deliver a "leaner and meaner" Mattel.

20. The "leaner" Mattel came quickly. Mr. Eckert laid off hundreds, closed factories in the United States, shipped production to Mexico, and sold off the Learning Company at a fraction of what Mattel had paid for it. It helped Mattel's bottom-line, but did nothing to spur sales growth. Even under Mr. Eckert's "leaner meaner" leadership, domestic "Barbie" sales remained in a slump into 2001. In an industry that had become increasingly driven by consumer whims and fads, and the hot, must-have toys of the moment, Mattel remained disinterested in devoting its resources to searching for or developing a new blockbuster toy. Mr. Eckert's business plan was not to diversify, but to build upon and expand sales of its existing brands. Mattel was, after all, still generating billions in revenue despite the decline of "Barbie." And so, Mattel remained committed to its age-worn icon and its two other core brands, Fisher-Price and Hot Wheels, with each of the three accounting for approximately a third of the company's sales.

21. Then came the competition · MGA's "BRATZ".

**"BRATZ" Dolls Revolutionize The Fashion Doll Market**

22. "BRATZ" challenged "Barbie's" half-century domination of the fashion-doll market like nothing ever before had been able to do.

23. MGA unveiled a preliminary sample of the "BRATZ" doll at the Hong Kong Toy Fair in January 2001, while continuing to finalize the product throughout that spring. Finished products were first shipped in May 2001. MGA introduced the line to consumers in June 2001.

6

EXHIBIT ____107____

PAGE ____911____

24. Unlike "Barbie" dolls, the "BRATZ" line of dolls and branded products sported a hip, multi-ethnic urban look that appealed to contemporary teenage and pre-teen girls.

### MGA's "BRATZ"



25. At approximately 9.5 to 10 inches tall, the "BRATZ" dolls were intentionally shorter than "Barbie" dolls and looked like no other, with disproportionately large heads, big, dramatic eyes and lips, small, thin bodies, oversized feet (to emphasize shoe fashion and to stand on their own, unlike "Barbie," which requires a stand), and up-to-date fashions.

7

EXHIBIT 107

PAGE 912

26.    Indeed, the classic "Barbie" look was nowhere to be seen in these dolls; they would never be confused with "Barbie".

**MGA's "BRATZ"**                    **Mattel's "Barbie"**

  

27.    Featuring and embodying the slogan "The Girls With a Passion for Fashion!", "BRATZ" dolls revitalized, transformed and expanded the fashion doll market, in particular proving popular among "tween" age girls — those between childhood and adolescence — who had been all but abandoned as a market by Mattel.

28.    The "BRATZ" line — with its unique and distinctive look — is well recognized and has been critically acclaimed and praised by consumers, retailers and toy industry analysts alike. In 2001, the "BRATZ" line won the Toy Industry Association ("TIA") People's Choice Toy of the Year Award, the Family Fun Toy of the Year Award and Toy Wishes Hot Pick Award. In 2002, the "BRATZ" line again won the TIA People's Choice Toy of the Year Award and the Family Fun Toy of the Year Award. LIMA, the licensing industry's official arm, awarded MGA's "BRATZ" the best character license of the year as well as the overall best licensed property of the year for 2003. MGA's "BRATZ" also earned the coveted TIA "Property of the Year" and "Girl Toy of the Year" for 2003, as well as the Family Fun Toy of the Year Award. MSNBC named "BRATZ" the "Hottest Toy of the Year," and both MGA and "BRATZ" received several other accolades in

8

EXHIBIT    107

PAGE    113

b.  unfair competition and unfair business practices; and

c.  dilution;

4.  For costs of suit and reasonable attorneys' fees;

5.  For punitive and/or exemplary damages as a result of Mattel's willful and malicious conduct to the extent allowable by law; and

6.  For such other and further relief as the Court deems just and proper.

Dated:  April 13, 2005

PATRICIA GLASER
CHRISTENSEN, MILLER, FINK,
JACOBS, GLASER, WEIL &
SHAPIRO LLP

DALE M. CENDALI
DIANA M. TORRES
PAULA E. AMBROSINI
O'MELVENY & MYERS LLP

By: _____
Diana M. Torres
Attorneys for Plaintiff
MGA ENTERTAINMENT, INC.

37

EXHIBIT ___107___

914

## DEMAND FOR JURY TRIAL

MGA hereby demands a jury trial on all triable issues.

Dated:      April 13, 2005

PATRICIA GLASER
CHRISTENSEN, MILLER, FINK,
JACOBS, GLASER, WEIL &
SHAPIRO LLP

DALE M. CENDALI
DIANA M. TORRES
PAULA E. AMBROSINI
O'MELVENY & MYERS LLP

By: _____
Diana M. Torres
Attorneys for Plaintiff
MGA ENTERTAINMENT, INC.

38

EXHIBIT ___107___

PAGE ___915___

# EXHIBIT 108

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 109

1 | William C. Conkle (SB# 076103)
Mark D. Kremer (SB# 100978)
2 | Eric S. Engel (SB# 105656), members of
CONKLE & OLESTEN
3 | Professional Law Corporation
3130 Wilshire Boulevard, Suite 500
4 | Santa Monica, California 90403-2403

5 | Telephone: (310) 998-9100

6 | Attorneys for Plaintiff
FARHAD LARIAN

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | FOR THE COUNTY OF LOS ANGELES

10

11 | FARHAD LARIAN,                    ) CASE NO. BC301371

12 |        Plaintiff,                  ) [PROPOSED]
                                       ) FIRST AMENDED VERIFIED
13 |    vs.                            ) COMPLAINT FOR:
                                       ) 1)  FRAUD & DECEIT IN THE
14 | ISAAC LARIAN, MORAD ZARABI,      )      INDUCEMENT OF
KAMBIZ ROBERT ZARABI and              )      ARBITRATION AGREEMENT;
15 | DOES 1 through 50, inclusive,     ) 2)  BREACH OF FIDUCIARY
                                       )      DUTIES;
16 |        Defendants.                ) 3)  FRAUD & DECEIT IN THE
                                       )      CONDUCT OF ARBITRATION
17 |                                   )      PROCESS;
                                       ) 4)  BREACH OF IMPLIED
18 |                                   )      COVENANT OF GOOD FAITH
                                       )      AND FAIR DEALING;
19 |                                   ) 5)  VIOLATION OF CALIFORNIA
                                       )      CORPORATIONS CODE §§ 25401
20 |                                   )      AND 25501;
                                       ) 6)  VIOLATION OF CALIFORNIA
21 |                                   )      CORPORATIONS CODE §§ 25402
                                       )      AND 25502;
22 |                                   ) 7)  FRAUD & DECEIT RE
                                       )      DECEMBER 2000 AGREEMENT;
23 |                                   ) 8)  NEGLIGENT
                                       )      MISREPRESENTATION;
24 |                                   ) 9)  UNFAIR COMPETITION, IN
                                       )      VIOLATION OF CALIFORNIA
25 |                                   )      BUSINESS & PROFESSIONS
                                       )      CODE § 17200;
26 |                                   ) 10) RESCISSION BASED ON
                                       )      MISTAKE;
27

28

FL 10569

Proposed First Amended Verified Complaint

1

2221.002\9890

RFC'D
CENTRAL
L.A. SUPERIOR COURT
FEB 1 0 2005

(33/95)
Exhibit no. 42.30
Date: 2/4/08
F. Larian      R. Pyburn

EXHIBIT _____ 109 _____

PAGE _____ 929 _____

11) PROMISSORY FRAUD INDUCING CONSENT TO THE ARBITRATION AGREEMENT;

12) NEGLIGENT MISREPRESENTATIONS INDUCING CONSENT TO THE ARBITRATION AGREEMENT;

13) CONSPIRACY TO COMMIT PROMISSORY FRAUD INDUCING CONSENT TO THE ARBITRATION AGREEMENT;

14) DECLARATORY RELIEF OVER VALIDITY OF THE ARBITRATION AGREEMENT AND THE DECEMBER ARBITRATION PROVISIONS;

15) FRAUD IN THE INDUCEMENT OF THE DECEMBER ARBITRATION PROVISIONS;

16) NEGLIGENT MISREPRESENTATION INDUCING CONSENT TO THE DECEMBER ARBITRATION PROVISIONS;

17) CONSPIRACY TO FRAUDULENTLY INDUCE EXECUTION OF THE DECEMBER ARBITRATION PROVISIONS;

18) DECLARATORY RELIEF OVER VALIDITY OF THE DECEMBER ARBITRATION PROVISIONS;

19) DECLARATORY JUDGMENT OVER THE DISQUALIFICATION OF MORAD ZARABI AND KAMBIZ ROBERT ZARABI FROM SERVING AS ARBITRATORS;

20) DECLARATORY JUDGMENT OVER ENFORCEABILITY OF ARBITRATION AGREEMENTS;

21) RESCISSION OF THE DECEMBER 2000 AGREEMENT BASED ON PROMISSORY FRAUD INDUCING CONSENT TO ARBITRATION AGREEMENT;

22) RESCISSION OF THE DECEMBER 2000 AGREEMENT;

23) RESCISSION BASED ON NEGLIGENT MISREPRESENTATIONS INDUCING THE DECEMBER 2000

Proposed First Amended Verified Complaint

FL 10570

2221.002\9890

EXHIBIT ___109___

PAGE ___930___

AGREEMENT;
24)   DECLARATORY RELIEF OVER
      VALIDITY OF THE DECEMBER
      2000 AGREEMENT; and
25)   CONSTRUCTIVE TRUST,
      PRELIMINARY INJUNCTION
      AND ACCOUNTING

DEMAND FOR JURY TRIAL

Plaintiff, FARHAD LARIAN ("Plaintiff" or "Fred") alleges as follows:

## COMMON ALLEGATIONS

**Parties and Venue**

1.      Plaintiff Farhad Larian, also known as "Fred" Larian, is now, and at all times herein mentioned was, a resident of the State of California.  He is currently residing in Los Angeles County, California.

2.      Defendant Isaac Larian ("Isaac") is now, and at all time herein mentioned was, a resident of Los Angeles County, California.

3.      Plaintiff is unaware of the true names and capacities of Defendant DOES 1 through 50, inclusive, and therefore sues such Defendants by fictitious names.  Plaintiff will amend this complaint to show the true names and capacities of, and to make specific allegations against, these Defendants if and when additional information against them is ascertained.  Plaintiff is informed and believes and thereon alleges that each of the Defendants, including each fictitiously named Defendant, is liable in some manner for the events referred to in this complaint.

4.      At all times mentioned herein, each Defendant was the agent of each of the other Defendants, and was acting within the course and scope of said agency in performing the acts described herein.

5.      Venue is proper in Los Angeles County under California Code of Civil Procedure § 395 because Defendant Isaac Larian resides in Los Angeles County.

EXHIBIT ____109____

PAGE ____931____

1    an outside appraisal of the Company, performed at the specific request of Isaac, valued the

2    Company at $35 million to $40 million.

3        12.    By 1999, Isaac, as President, had assumed control of sales, product

4    development and financial matters.  At Isaac's direction, Fred assumed responsibility for

5    major projects such as customs regulations, facilities management and warehouse distribution

6    control, and was not as involved in the day-to-day sales or financial control of the Company.

7    For his role, Isaac took a significantly greater salary.

8

9    **Defendant's Concealment of the Bratz Doll Line**

10       13.    Plaintiff is informed and believes that beginning in or about late 1999 and early

11   2000, Isaac became aware of a potential new product line that had tremendous potential for

12   the Company.  The new product line involved the "Bratz" dolls and related products.  Bratz

13   dolls are "hipper" and more "edgy" than Barbie and Barbie-type dolls, and are aimed at the

14   post-adolescent, pre-teen and early teen market, i.e., a market where the allure of playing

15   with Barbie-type dolls wanes.

16       14.    Plaintiff is informed and believes that during this same time period, Isaac

17   devised a plan to keep this business opportunity secret from Fred and to gain control of the

18   Company by buying Fred's shares at a value which did not include this new business

19   opportunity.  Isaac concealed from Plaintiff, his brother and partner and stockholder,

20   knowledge he had, as well as his intentions and actions undertaken, regarding the Bratz

21   product line.

22       15.    In or about early 2000, Isaac called a meeting to discuss the new Bratz product

23   line with selected individuals in the Company.  Plaintiff is informed and believes that those

24   present at the meeting spoke enthusiastically of the tremendous opportunity the Bratz line

25   presented for the Company as, *inter alia*, it captured a vacant market niche.

26

27

28                          Proposed First Amended Verified Complaint

     2221.002\9890                        5                          FL 10573

EXHIBIT ___109___

PAGE ___932___

1    Fred was not present for this meeting. Upon information and belief, Isaac took steps to

2    conceal the results of the meeting from Fred.

3          16.    Also in or about February 2000, Isaac tried to dissuade Fred from attending the

4    New York Toy Fair, even though Fred had routinely and regularly attended such toy fairs in

5    the past. The New York Toy Fair is an important venue for discussing and researching the

6    market potential of new product lines. Isaac was furious when he discovered that Plaintiff

7    was traveling to New York for the fair. Plaintiff was expelled by Isaac from meetings he

8    tried to attend and was excluded from any discussions Isaac may have had relating to the

9    Bratz line of products at the fair.

10         17.    In early March 2000, while continuing to conceal from Fred the Company's

11    plans for the Bratz line, Isaac offered to purchase all of Plaintiff's 45 percent interest in the

12    Company for $9 million. The offer was based on a total value of the Company of $20

13    million. Upon information and belief, Isaac knew at the time he made the offer of the

14    Company's plans already in place, and actions already undertaken, regarding the Bratz line,

15    and that such plans made the Company worth well in excess of $20 million.

16         18.    As set forth herein, the two brothers divided responsibilities with Isaac,

17    assuming control of sales, product development and financial matters, and Fred assuming

18    responsibility for major projects. Financial information was handled by Isaac and the

19    Controller, Dennis Medici. Throughout 2000 Isaac repeatedly and routinely shared with Fred

20    any financial information that showed the Company was performing poorly, while

21    withholding any positive financial information about the Company, including the plans for

22    the Bratz line. Indeed, in May 2000 Isaac told the Company's the Controller, Dennis Medici,

23    that he was to no longer give Fred any information regarding the financial operation of the

24    Company. During this period, Isaac gave Fred only bleak financial news about the Company

25    and continued to conceal the Company's plans and actions undertaken regarding Bratz.

26

27

28    2221.002\9890

EXHIBIT ___109___

PAGE ___933___

1       19.    On or about September 18, 2000, Isaac caused the Company to enter into a

2   worldwide licensing agreement for the Bratz dolls and related items.  The existence of this

3   license was concealed from Fred. Upon information and belief, these important and valuable

4   rights are already generating revenues of in excess of $500 million a year and are expected

5   to exceed $3 billion in the next few years.

6

7   **Fraud Regarding the Arbitration Agreement**

8       20.    In or about September 2000, Isaac resumed his efforts to buy Fred's interest

9   in the Company.  Isaac kept the Bratz opportunity and other information about the true

10  financial condition of the Company hidden from Fred in an effort to secure Fred's agreement

11  to a proposed arbitration process with their Uncle Morad Zarabi.  Isaac agreed, and induced

12  Fred to agree, to the arbitration process without disclosing that during the arbitration he

13  would conceal the Company's plans and actions undertaken regarding the Bratz line, and

14  other financial information about the Company so that such information would not be

15  included in Mr. Zarabi's valuation of the Company.  In or about September 2000, Isaac and

16  Fred executed the "Agreement to Arbitrate and Selection of Arbitrator" ("Arbitration

17  Agreement") attached hereto as Exhibit A.

18      21.    At all times before and up through his execution of the Arbitration Agreement

19  and for some considerable time thereafter, Fred was unaware of the true facts regarding the

20  new business opportunities and Bratz line of products, was unaware of the true financial

21  condition of the Company, and was unaware of the intention of Isaac to conceal such

22  material facts from the arbitrator and from him during the arbitration process. Had Fred been

23  aware of the new business opportunities, the Bratz line of products, the true financial

24  condition of the Company, and/or the plans of Isaac to conceal such material information

25  from him and from the arbitrator, he would not have agreed to enter into the arbitration

26

27                Proposed First Amended Verified Complaint

28  2221.002\9890                     7                     FL 10575

EXHIBIT ___109___

PAGE ___934___

13.   For punitive damages as allowed by law and according to proof at trial; and

14.   For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury herein on all causes of action so triable.

Dated: February 10, 2005

William C. Conkle
Mark D. Kremer
Eric S. Engel, members of
CONKLE & OLESTEN
Professional Law Corporation

By: _____
Mark D. Kremer
Attorneys for Plaintiff Farhad Larian

Proposed First Amended Verified Complaint

51

FL 10619

2221.002\9890

EXHIBIT ___109___

PAGE ___935___

## VERIFICATION

I have read the foregoing **Proposed First Amended Verified Complaint** and know its contents.

☒     I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐     I am _____ of _____, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

☐     I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

☒     The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐     I am one of the attorneys for _____, a party to this action.  Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on February 10, 2005.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

___Farhad Larian___
Print Name of Signator

Signature

FL 10620

109
936

1    **PROOF OF SERVICE BY HAND**

2        I am over the age of 18 and not a party to the within action. I am employed in the County of Los Angeles. My business address is: 3130 Wilshire Blvd., Suite 500, Santa Monica, CA 90403

3    

4        On February 10, 2005, I served the foregoing document described as: **[PROPOSED] FIRST AMENDED VERIFIED COMPLAINT FOR:** in this action by personal delivery of a true and correct copy to the following:

5    

6    Larry R. Feldman
     Kaye Scholer LLP

7    1999 Avenue of the Stars, Suite 1700
     Los Angeles, CA 90067-6048

8    

9        I declare under penalty of perjury under the laws of the State of California that the above is true and correct, and that this poof of service was executed this 10th day of February, 2005.

10   

11   

12   _Ronald Despues_                    _____
     TYPE OR PRINT NAME                  SIGNATURE

13   Registered Process Server No. (if any): _____

14   

15   

16   

17   

18   

19   

20   

21   

22   

23   

24   

25   

26   

27   Proposed First Amended Verified Complaint

28   2221.002\9890                    52                    FL 10621

EXHIBIT ___109___

PAGE ___937___

# EXHIBIT 110

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 111

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 112

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 113

RECEIVED

MAY 0 7 2007

1   DALE M. CENDALI (admitted *pro hac vice*)
    DIANA M. TORRES (S.B. #162284)
2   JAMES P. JENAL (S.B. #180190)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, CA  90071-2899
4   Telephone:   (213) 430-6000
    Facsimile:   (213) 430-6407
5   Email:  jjenal@omm.com

6   PATRICIA GLASER (S.B. #55668)
    CHRISTENSEN, GLASER, FINK,
7   JACOBS, WEIL & SHAPIRO LLP
    10250 Constellation Boulevard, 19th Floor
8   Los Angeles, CA  90067
    Telephone:   (310) 553-3000
9   Facsimile:   (310) 556-2920
    Email:  pglaser@chrisglase.com

10
    Attorneys for Plaintiff
11  MGA Entertainment, Inc.

12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA
                      EASTERN DIVISION

15  CARTER BRYANT, an individual,       Case No.  CV 04-09049 SGL (RNBx)
                                         (consolidated with CV 04-9059 & 05-2727)
16              Plaintiff,
                                         MGA ENTERTAINMENT, INC.'S
17       v.                              SUPPLEMENTAL AND AMENDED
                                         RESPONSES TO MATTEL, INC.'S
18  MATTEL, INC., a Delaware             THIRD SET OF REQUESTS FOR
    Corporation,                         ADMISSION TO MGA
19                                       ENTERTAINMENT, INC.

20              Defendant.

21

22  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
23  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.
24

25
                          EXHIBIT ___113___
26
                          PAGE ___961___
27

28                        MGA'S SUPPL + AMENDED RESPONSES TO
                          MATTEL'S 3RD SET OF RFA TO MGA

# INTRODUCTORY STATEMENT

MGA Entertainment, Inc. ("MGA") hereby provides supplemental and amended responses to certain of MATTEL, INC.'S THIRD SET OF REQUESTS FOR ADMISSION TO MGA ENTERTAINMENT, INC. The supplemental and amended responses below are made pursuant to the agreement reached by counsel for both parties at the in-person meet and confer that occurred on April 19, 2007. The supplemental and amended responses are made in a good faith effort to address Mattel's concerns. In accordance with the agreement reached at the meet and confer, the language of Requests for Admissions 136 to 139 has been changed to replace the word "represented" with the word "told," and responses have been supplemented and amended to reflect that change.

MGA's responses and objections are made solely for the purpose of this action, and are made based upon information presently known and available to MGA. MGA has not completed its investigation of facts relating to this case, has not fully completed its discovery in this action, and has not completed its preparation for trial. Accordingly, the following responses are based only upon such information and documents as are presently available and specifically known to MGA, and disclose only those facts and contentions that presently occur to MGA. Further discovery, independent investigation, legal research and analysis may supply additional facts, add meaning to known facts, and establish entirely new factual conclusions and legal contentions, any of which may lead to additions to, changes to, or variations from the responses set forth below.

The following responses are given without prejudice to MGA's right to produce evidence of any subsequently discovered facts that MGA may later recall or locate. MGA, accordingly, reserves the right to supplement and/or change any and all of the following responses as additional facts are ascertained, analyses are made, legal research is completed, and contentions are investigated, and reserves the right to rely upon and present at hearing or trial any information or

- 2 -

MGA'S SUPPL. AMENDED RESPONSES TO MATTEL'S 3RD SET OF RFA TO MGA

EXHIBIT 113
PAGE 942

1   documents that may be subsequently discovered as a result of this ongoing

2   discovery and investigation.  The responses contained herein are made in a good

3   faith effort to supply as much factual information and as much specification of legal

4   contentions as are presently known, but should in no way be to the prejudice of

5   MGA in relation to further discovery, research or analysis.

6          A response to any of the Requests does not constitute an admission by

7   MGA that it agrees with plaintiff's characterization or definition contained therein,

8   that the information sought is relevant to a claim or defense, or that the information

9   sought is likely to lead to admissible evidence.  Except for explicit facts admitted

10  herein, no admission of any nature whatsoever is to be implied by or inferred from

11  any response anywhere stated in this document.  By responding to these Requests,

12  MGA does not concede the relevancy, materiality, or admissibility of any

13  information sought by the requests or any responses thereto.

14         MGA responds on behalf of MGA Entertainment, Inc. alone and not

15  on behalf of any of its officers, employees, or affiliates.

16         This Introductory Statement applies to each and every response

17  contained herein.

18                        **GENERAL OBJECTIONS**

19         The following general objections apply to the entirety of Mattel's

20  Third Set of Requests for Admission (the "Requests").  The assertion of same,

21  similar, or additional objections to the individual requests does not waive any of

22  MGA's general objections as set forth below.

23         1.     To the extent these Requests request MGA to provide

24  information concerning the legal basis regarding its defense of this matter, MGA

25  objects on the grounds that the Requests impermissibly call for mental impressions,

26  conclusions, opinions and/or legal theories of MGA's attorneys.

27         2.     MGA also objects to the extent these Requests call for the

28  disclosure of information protected by the attorney-client privilege, the work-

-3-

1    product doctrine, the joint defense or common interest privilege or any other

2    applicable privilege.

3          3.    MGA further objects to the extent that these Requests seek

4    information comprising the trade secrets of MGA and/or third parties, and/or

5    otherwise constitute confidential information, protected from disclosure by

6    California and/or federal law.

7          4.    MGA objects to the Requests on the grounds that they attempt to

8    unfairly restrict the facts on which MGA may rely at trial.  Discovery has not been

9    completed and MGA is not yet necessarily in possession of all the facts and

10   documents upon which MGA intends to rely.  All of the responses submitted

11   herewith are tendered to Mattel with the reservation discovery is ongoing and, thus,

12   the responses are submitted without limiting the evidence on which MGA may rely

13   to support the contentions that MGA may assert at the trial of this action.  Further,

14   MGA reserves the right to supplement or amend these responses at a future date if

15   same is deemed appropriate.

16         5.    MGA objects to the Requests on the grounds that they are

17   compound, vague, overbroad, unduly burdensome or oppressive, seek information

18   that is not within MGA's knowledge, or seek information that is neither relevant to

19   this litigation nor reasonably calculated to lead to the discovery of admissible

20   evidence.

21         6.    MGA objects to the Requests on the grounds that they

22   prematurely seek discovery related to claims by Mattel that MGA has

23   misappropriated Mattel's trade secrets; pursuant to California Code of Civil

24   Procedure section 2019.210, which applies to this case, a party must designate its

25   trade secrets with particularity before it may commence discovery on any trade

26   secret claims; and Mattel has not identified its alleged misappropriated trade secrets

27   and therefore is not entitled to discovery on those claims.

28         7.    MGA objects to the defined terms "You," "MGA," "Mattel,"



EXHIBIT 113   MGA'S SUPPL + AMENDED RESPONSES TO
                ~~MATTEL'S 3RD SET~~ OF RFA TO MGA

PAGE ___904___

1  "Bryant," "Bratz" and "Bratz Work" on the grounds that these terms, as defined,

2  are overbroad, are vague and ambiguous, and call for legal conclusions.

3  These general objections shall be deemed incorporated into each

4  specific response below as if they were fully set forth below.  Nevertheless, without

5  waiver of, without prejudice to, and expressly hereby reserving all of the foregoing

6  general objections, MGA submits the following responses to the Requests.

7

8  **SUPPLEMENTAL AND AMENDED RESPONSES**

9

10  **REQUEST FOR ADMISSION NO. 136 (AS AMENDED):**

11  Admit that Isaac Larian told to at least one retailer that MATTEL

12  would not be supporting MY SCENE BLING BLING with real gems with

13  television advertising.

14

15  **RESPONSE TO REQUEST FOR ADMISSION NO. 136(AS AMENDED):**

16  MGA incorporates by reference the above-stated general objections as

17  if fully set forth herein.

18  Subject to and without waiving the foregoing general objections, MGA

19  responds as follows to the request: MGA denies the request.

20

21  **REQUEST FOR ADMISSION NO. 137 (AS AMENDED):**

22  Admit that Isaac Larian told to more than one retailer that MATTEL

23  would not be supporting MY SCENE BLING BLING with real gems with

24  television advertising.

25

26  **RESPONSE TO REQUEST FOR ADMISSION NO. 137 (AS AMENDED):**

27  MGA incorporates by reference the above-stated general objections as

28  if fully set forth herein.

-5-

EXHIBIT  113

MGA'S SUPPL + AMENDED RESPONSES TO
MATTEL'S 3RD SET OF RFA TO MGA

PAGE _____ 965

1    Subject to and without waiving the foregoing general objections, MGA

2    responds as follows to the request: MGA denies the request.

3

4    **REQUEST FOR ADMISSION NO. 138 (AS AMENDED):**

5    Admit that Isaac Larian told to at least one retailer that such retailer

6    was the only retailer to purchase MY SCENE BLING BLING with real gems.

7

8    **RESPONSE TO REQUEST FOR ADMISSION NO. 138 (AS AMENDED):**

9    MGA incorporates by reference the above-stated general objections as

10   if fully set forth herein.

11   Subject to and without waiving the foregoing general objections, MGA

12   responds as follows to the request: MGA admits that Isaac Larian told one retailer

13   that such retailer was the only retailer to purchase MY SCENE BLING BLING

14   with real gems, at a time when Isaac Larian had a good faith belief that such retailer

15   was the only retailer to purchase MY SCENE BLING BLING with real gems.

16

17   **REQUEST FOR ADMISSION NO. 139 (AS AMENDED):**

18   Admit that Isaac Larian told to more than one retailer that each such

19   retailer was the only retailer to purchase MY SCENE BLING BLING with real

20   gems.

21   **RESPONSE TO REQUEST FOR ADMISSION NO. 139 (AS AMENDED):**

22   MGA incorporates by reference the above-stated general objections as

23   if fully set forth herein.

24   Subject to and without waiving the foregoing general objections, MGA

25   responds as follows to the request: MGA denies the request.

26

EXHIBIT ___113___

27

PAGE ___966___

28

MGA'S SUPPL + AMENDED RESPONSES TO
MATTEL'S 3RD SET OF RFA TO MGA

1  **REQUEST FOR ADMISSION NO. 183:**

2         Admit that, prior to July 1, 2003, MGA had not issued any press

3  release that identified BRYANT as the creator of BRATZ.

4

5  **RESPONSE TO REQUEST FOR ADMISSION NO. 183:**

6         MGA incorporates by reference the above-stated general objections as

7  if fully set forth herein.  MGA specifically objects to this request on the grounds

8  that it is vague and ambiguous, particularly in its use of the phrase "identified

9  BRYANT as the creator of BRATZ."

10         Subject to and without waiving the foregoing general and specific

11  objections, MGA responds as follows to the request: MGA admits the request.

12

13  **REQUEST FOR ADMISSION NO. 184:**

14         Admit that MGA is not aware of any press report or publication that

15  identified BRYANT as the creator of BRATZ prior to July 15, 2003.

16

17  **RESPONSE TO REQUEST FOR ADMISSION NO. 184:**

18         MGA incorporates by reference the above-stated general objections as

19  if fully set forth herein.  MGA specifically objects to this request on the grounds

20  that it is vague and ambiguous, particularly in its use of the phrase "identified

21  BRYANT as the creator of BRATZ."

22         Subject to and without waiving the foregoing general and specific

23  objections, MGA responds as follows to the request: MGA admits the request.

24

25  **REQUEST FOR ADMISSION NO. 185:**

26         Admit that the first press report or publication that identified

27  BRYANT as the creator of BRATZ was the *Wall Street Journal* article entitled

28



EXHIBIT 113

MGA'S SUPPL + AMENDED RESPONSES TO
~~MATTEL'S 3RD SET OF RFA TO MGA~~

PAGE 947

1    "Dolled Up: To Lure Older Girls, Mattel Brings in Hip-Hop Crowd" and published

2    on July 18, 2003.

3

4    **RESPONSE TO REQUEST FOR ADMISSION NO. 185:**

5           MGA incorporates by reference the above-stated general objections as

6    if fully set forth herein.  MGA specifically objects to this request on the grounds

7    that it is vague and ambiguous, particularly in its use of the phrase "identified

8    BRYANT as the creator of BRATZ."

9           Subject to and without waiving the foregoing general and specific

10   objections, MGA responds as follows to the request: MGA admits the request.

11

12

13   Dated:  May 4, 2007              O'MELVENY & MYERS LLP

14

15

16                                   By:  Chris D. Nguyen
                                     Attorneys for MGA Entertainment, Inc.

17

18

19

20

21

22

23

24

25

26   EXHIBIT ____113____

27   PAGE ____968____

28

                          - 8 -

                                   MGA'S SUPPL + AMENDED RESPONSES TO
                                   MATTEL'S 3RD SET OF RFA TO MGA

1

**PROOF OF SERVICE**

2

I, C. Kelley Canning, declare:

3

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On May 4, 2007, I served the within document(s):

4

5

6

**MGA ENTERTAINMENT, INC.'S SUPPLEMENTAL AND AMENDED RESPONSES TO MATTEL, INC.'S THIRD SET OF REQUESTS FOR ADMISSION TO MGA ENTERTAINMENT, INC.**

7

8

9

10

11

☒   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

12

13

14

15

Michael T. Zeller, Esq.
Timothy Alger, Esq.
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Douglas A. Wickham, Esq.
LITTLER MENDELSON, P.C.
2049 Century Park East,
Fifth Floor
Los Angeles, CA 90067

16

17

18

19

Patricia Glaser, Esq.
CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
10250 Constellation Blvd.,
19th Floor
Los Angeles, CA 90067

Michael H. Page, Esq.
KEKER AND VAN NEST LLP
710 Sansome Street
San Francisco, CA 90067-3107

20

21

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

22

Executed on May 4, 2007, at Los Angeles, California.

23

24

25

*C. Kelley Canning*
C. Kelley Canning

26

LA2:827618

EXHIBIT 113

27

28

PAGE 969

- 9 -

MGA'S SUPPL + AMENDED RESPONSES TO MATTEL'S 3RD SET OF RFA TO MGA;
PROOF OF SERVICE

# EXHIBIT 114

KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727<br><br>**CARTER BRYANT'S AMENDED REPLY TO MATTEL'S COUNTERCLAIMS**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Dept:  Courtroom 1<br>Judge:  Hon. Stephen G. Larson<br><br>Discovery Cut-Off: Jan. 14, 2008<br>Pre-Trial Conference: April 7, 2008<br>Trial Date: April 29, 2008 |

Counter-defendant Carter Bryant ("Bryant") replies to Mattel's counter-claims, set forth in Mattel's Second Amended Answer and Counterclaims, as follows:

As a preliminary matter, Bryant notes that many of Mattel's allegations implicitly include false premises or assumptions. Bryant's denial of any allegation

9-12

1

EXHIBIT 114

PAGE 470

## Affirmative Defenses

Bryant states the following affirmative defenses, but does so without assuming the burden of proof on any defense or issue for which that burden rests with Mattel or any other party, and without admitting any wrongful conduct by any defendant or that Mattel has any right to relief of any kind:

### First Affirmative Defense (Unclean Hands)

Mattel's counterclaims, and each claim for relief, are barred by the equitable doctrine of unclean hands. Mattel's conduct towards Bryant and MGA regarding the matters at issue in this litigation has been unfair, and Mattel is undeserving of any relief against Bryant. In particular, Mattel believed from the time that Carter Bryant left Mattel's employ that he was going to perform work for a Mattel competitor, and Mattel shortly thereafter began investigating what it suspected to be wrongdoing in connection with the Bratz dolls. Yet, Mattel waited and said nothing while the dolls were successfully (and at great cost) developed, manufactured and sold, and only filed suit years later. Mattel also seeks to impose on Bryant duties and obligations (such as the alleged duty to assign to Mattel all inventions by Bryant) that are contrary to applicable law, including the sources of law on which Mattel's claims rely, as well as the common-law principles of employment law in California and the California Labor Code, including particularly §§ 2870-2872.

### Second Affirmative Defense (Waiver)

Mattel's counterclaims, and each claim for relief, are barred by the equitable doctrine of waiver. In particular, Mattel believed from the time that Carter Bryant left Mattel's employ that he was going to perform work for a Mattel competitor, and Mattel shortly thereafter began investigating what it suspected to be wrongdoing in connection with the Bratz dolls. Yet, Mattel waited and said nothing while the dolls were successfully (and at great cost) developed, manufactured and sold, and only filed suit years later. Mattel has also tolerated

EXHIBIT ____ 114

1  conduct by other employees similar to the alleged conduct by Bryant on which

2  Mattel now bases its contract and related claims.

3  ### Third Affirmative Defense (Estoppel)

4      Mattel's counterclaims, and each claim for relief, are barred by the equitable

5  doctrine of estoppel.  In particular, Mattel believed from the time that Carter

6  Bryant left Mattel's employ that he was going to perform work for a Mattel

7  competitor, and Mattel shortly thereafter began investigating what it suspected to

8  be wrongdoing in connection with the Bratz dolls.  Yet, Mattel waited and said

9  nothing while the dolls were successfully (and at great cost) developed,

10  manufactured and sold, and only filed suit years later.  Accordingly, Mattel should

11  be estopped from belatedly raising its claims.

12  ### Fourth Affirmative Defense (Laches)

13      Mattel's counterclaims, and each claim for relief, are barred by the equitable

14  doctrine of laches.  In particular, Mattel believed from the time that Carter Bryant

15  left Mattel's employ that he was going to perform work for a Mattel competitor,

16  and Mattel shortly thereafter began investigating what it suspected to be

17  wrongdoing in connection with the Bratz dolls.  Yet, Mattel waited and said

18  nothing while the dolls were successfully (and at great cost) developed,

19  manufactured and sold, and only filed suit years later.  Accordingly, laches should

20  bar Mattel from belatedly raising its claims.

21  ### Fifth Affirmative Defense (Consent)

22      Mattel's counterclaims, and each claim for relief, are barred by the equitable

23  doctrine of consent.  In particular, Mattel believed from the time that Carter Bryant

24  left Mattel's employ that he was going to perform work for a Mattel competitor,

25  and Mattel shortly thereafter began investigating what it suspected to be

26  wrongdoing in connection with the Bratz dolls.  Yet, Mattel waited and said

27  nothing while the dolls were successfully (and at great cost) developed,

28  manufactured and sold, and only filed suit years later.  Mattel has also tolerated

EXHIBIT ___114___

16

CARTER BRYANT'S AMENDED REPLY TO MATTEL'S COUNTERCLAIMS
CASE NO. CV 04-09049 SGL (RNBx) PAGE ___972___

1    conduct by other employees similar to the alleged conduct by Bryant on which

2    Mattel now bases its contract and related claims.

3    **Sixth Affirmative Defense (Statute of Limitations)**

4    Mattel's counterclaims, and each claim for relief, are barred by the

5    applicable statutes of limitations, including but not limited to Code of Civil

6    Procedure §§ 337, 339, 343, and 338(c).

7    **Seventh Affirmative Defense (Failure to Mitigate Damages)**

8    With respect to any alleged damages (the existence of which Bryant denies),

9    Mattel failed to mitigate its damages.

10    **Eighth Affirmative Defense (Lack of Causation)**

11    Any losses or harms allegedly sustained by Mattel resulted from causes

12    other than any act or omission of Bryant, including but not limited to Mattel's own

13    acts or omissions.

14    **Ninth Affirmative Defense (Failure of Contract)**

15    Any alleged contract with Mattel fails for lack of consideration, and/or is

16    vague and uncertain; accordingly, the alleged contract is void, voidable, and/or

17    unenforceable.

18    **Tenth Affirmative Defense (Duress/Unconscionability)**

19    Any alleged contract with Mattel was unconscionable and/or the result of

20    duress; accordingly, the alleged contract is void, voidable, and/or unenforceable.

21    **Eleventh Affirmative Defense (Alleged Duties Contrary to Law)**

22    Any alleged duties or obligations which Mattel claims are owed by Bryant

23    (such as the alleged duty to assign to Mattel all inventions by Bryant) are contrary

24    to applicable law, including the sources of law on which Mattel's claims rely, as

25    well as the common-law principles of employment law in California and the

26    California Labor Code, including particularly §§ 2870-2872.

27    **Twelfth Affirmative Defense (Lack of Standing)**

28    Mattel's counterclaims are barred in whole or in part by its lack of standing,

EXHIBIT ___114

17

1   in that Mattel does not own any valid copyright interests it seeks to assert against

2   Bryant.

### Thirteenth Affirmative Defense (Information Readily Ascertainable)

4       Bryant cannot be liable, either on his own account or by association with

5   MGA or other defendants, for alleged misappropriation of information that was

6   readily ascertainable by proper means at the time of the alleged acquisition or use.

7   Such information includes, but is not limited to, the identity of hair manufacturers.

### Fourteenth Affirmative Defense (Lack of Ownership)

9       Mattel is neither the legal nor beneficial owner in the copyrights purportedly

10   at issue.

### Fifteenth Affirmative Defense (Copyright Invalidity)

12       Mattel's purported copyrights are invalid.

### Sixteenth Affirmative Defense (No Statutory Damages or Attorney's Fees)

14       Mattel is barred from recovering statutory damages and/or attorneys' fees

15   because it failed to register the copyrights that are purportedly at issue within the

16   time required by 17 U.S.C. § 412.

### Seventeenth Affirmative Defense (Joinder in Defenses of Co-Defendants)

18       Bryant hereby adopts and incorporates by this reference any and all other

19   affirmative defenses that have been or will be asserted by any other defendant

20   (including MGA) in this litigation to the extent that defendants may share in such

21   affirmative defenses.

22

23       Bryant has not knowingly and intentionally waived any applicable

24   affirmative defense and reserves the right to raise additional affirmative defenses

25   as they become known to him through discovery in this litigation.  In stating the

26   above affirmative defenses, Bryant also does not in any way waive or limit any

27   defenses raised by its denials of Mattel's allegations above.  Bryant further

28   reserves the right to amend his answer and/or affirmative defenses accordingly

**EXHIBIT** 114

18

402580.01

**PAGE** 974

1  and/or to delete affirmative defenses that he determines during later discovery are

2  not applicable.

3                    **Prayer for Relief**

4        WHEREFORE, Bryant respectfully requests relief as follows:

5        1.    That Mattel's counterclaims be dismissed with prejudice;

6        2.    That Mattel take nothing by its counterclaims;

7        3.    That Mattel's request for injunctive and other equitable relief be

8  denied;

9        4.    That Bryant be awarded the cost of this litigation, including

10 reasonable attorneys' fees and interest; and

11       5.    That Bryant receive such other relief as the Court may deem proper.

12

13                                Respectfully submitted,

14 Dated:  September 12, 2007        KEKER & VAN NEST, LLP

15

16                          By:  Christ Ale AWH

17                                CHRISTA M. ANDERSON
                                  Attorneys for Plaintiff
18                                CARTER BRYANT

19

20

21

22

23

24

25

26

27                                EXHIBIT ___114___

28                                PAGE ___975___

                          19

402580.01

1

# DEMAND FOR JURY TRIAL

2

3          Bryant respectfully requests a trial by jury for all issues so triable.

4

5   Dated:  September 12, 2007                    KEKER & VAN NEST, LLP

6

7                                          By:  _Christ. Anderson /AWH_

8                                          CHRISTA M. ANDERSON
                                           Attorneys for Plaintiff
9                                          CARTER BRYANT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                              EXHIBIT ___114___

28                              PAGE ___776___

20

CARTER BRYANT'S AMENDED REPLY TO MATTEL'S COUNTERCLAIMS
CASE NO. CV 04-09049 SGL (RNBx)

402580.01

# PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On September 12, 2007, I served the following document(s):

## CARTER BRYANT'S AMENDED REPLY TO MATTEL'S COUNTERCLAIMS

## DEMAND FOR JURY TRIAL

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery.

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel: 213/443-3000
Fax: 213/443-3100
johnquinn@quinnemanuel.com
michaelzeller@quinnemanuel.com

Diana M. Torres
O'Melveny & Myers, LLP
400 S. Hope Street
Los Angeles, CA 90071
Tel: 213/430-6000
Fax: 213/430-6407
dtorres@omm.com

Patricia L. Glaser
Christensen Glaser Fink Jacobs Weil &
Shapiro
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Tel: 310/553-3000
Fax: 310/556-2920
pglaser@chrisglase.com

EXHIBIT ___114___

PAGE ___977___

Executed on September 12, 2007, at San Francisco, California.

395845.01

1    I declare under penalty of perjury under the laws of the State of California

2    that the above is true and correct.

3

4    _____

5    JULIE A. SELBY

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    EXHIBIT ___114___

28    PAGE ___978___

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

# EXHIBIT 115

CONFORMED COPY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
     Duane R. Lyons (Bar No. 125091)
5     (duanelyons@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11  | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |

12  Plaintiff, | Consolidated With Case No. 04-9059 and Case No. 05-2727 |

13  v. | MATTEL, INC.'S SECOND AMENDED ANSWER IN CASE NO. 05-2727 AND COUNTERCLAIMS FOR: |

14  MATTEL, INC., a Delaware corporation, |

15  Defendant. | 1. COPYRIGHT INFRINGEMENT; 2. VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT; |

FILED
2009 JUL 12 PM 3:02

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated With Case No. 04-9059 and Case No. 05-2727

MATTEL, INC.'S SECOND AMENDED ANSWER IN CASE NO. 05-2727 AND COUNTERCLAIMS FOR:

1.  COPYRIGHT INFRINGEMENT;
2.  VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT;
3.  CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT;
4.  MISAPPROPRIATION OF TRADE SECRETS;
5.  BREACH OF CONTRACT;
6.  INTENTIONAL INTERFERENCE WITH CONTRACT;
7.  BREACH OF FIDUCIARY DUTY;
8.  AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;
9.  BREACH OF DUTY OF LOYALTY;

CARTER BRYANT, an individual,

        Plaintiff,

   v.

MATTEL, INC., a Delaware corporation,

        Defendant.

_____

MGA ENTERTAINMENT, INC. a California corporation,

        Plaintiff,

   v.

MATTEL, INC., a Delaware corporation, and DOES 1-10,

        Defendants.

**PUBLIC REDACTED VERSION**

Volume I
EXHIBIT ___115___

PAGE ___979___

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1   MATTEL, INC., a Delaware
    corporation,

2                          Counter-claimant,

3        v.

4   MGA ENTERTAINMENT, INC., a
5   California corporation; ISAAC
    LARIAN, an individual; CARTER
6   BRYANT, an individual; MGA
    ENTERTAINMENT (HK) LIMITED,
7   a Hong Kong Special Administrative
    Region business entity; MGAE DE
8   MEXICO, S.R.L. DE C.V., a
    Mexico business entity; CARLOS
9   GUSTAVO MACHADO GOMEZ, an
    individual; and DOES 4 through 10,

10                         Counter-defendants.

11

12  AND CONSOLIDATED CASES

13

10.  AIDING AND ABETTING
     BREACH OF DUTY OF
     LOYALTY;
11.  CONVERSION;
12.  UNFAIR COMPETITION; AND
13.  DECLARATORY RELIEF

DEMAND FOR JURY TRIAL

EXHIBIT ___115___

PAGE ___980___

54363.2

-2-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

### Thirteenth Counterclaim

### Declaratory Relief

### (Against All Counter-defendants)

167. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 166, above, as though fully set forth at length.

168. As shown in the foregoing paragraphs above, an actual controversy exists between Mattel and Counter-defendants regarding Counter-defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

169. Accordingly, Mattel seeks a declaration of the Court that Counter-defendants have no valid or protectable ownership rights or interests in Bratz, and that Mattel is the true owner of the same, and further seeks an accounting and imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and over all revenues and other monies or benefits derived or obtained from MGA's and Bryant's purported ownership, use, sale, distribution and licensing of Bratz.

170. Mattel seeks a declaration of the Court that any and all agreements between Bryant, on the one hand, and MGA, on the other hand, in which Bryant purports to assign to MGA any right, title or interests in any work that he conceived, created or reduced to practice while a Mattel employee, including but not limited to the Bratz designs, is void and of no effect, including without limitation because Bryant had previously assigned said right, title or interest to Mattel and because Mattel was otherwise the owner of said right, title or interest.

### Prayer for Relief

WHEREFORE, Mattel respectfully requests judgment:

1. For a declaration that Counter-defendants have no valid or protectable ownership interests or rights in Bratz designs and works conceived,

EXHIBIT 115
PAGE 981

1          15.   That Mattel have such other and further relief as the Court may

2  deem just and proper.

3

4  DATED:  July 12, 2007           QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

5

6                        By_____

7                        John B. Quinn
                            Attorneys for Defendant and Counter-

8                            claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                  EXHIBIT _____115_____

28                                  PAGE _____982_____

                             SECOND AMENDED ANSWER AND COUNTERCLAIMS

# EXHIBIT 116

Fees are effective through June 30, 2002. After that date, check the Copyright Office Website at www.loc.gov/copyright or call (202) 707-3000 for current fee information.

RECEIVED

NOV 8 2006

DOCUMENT SECTION

**DOCUMENT COVER SHEET**
For Recordation of Documents
UNITED STATES COPYRIGHT OFFICE

DATE OF RECORDATION
(Assigned by Copyright Office)

Month **11**   Day **06**   Year **06**

Volume **3544**   Page **330**

Volume _____   Page _____

FUNDS RECEIVED _____

Do not write above this line.

To the Register of Copyrights:

*Please record the accompanying original document or copy thereof.*

FOR OFFICE USE ONLY

**1** Name of the party or parties to the document spelled as they appear in the document (List up to the first three)

CARTER H. BRYANT

MATTEL, INC.

**2** Date of execution and/or effective date of the accompanying document   **01** (month)   **04** (day)   **1999** (year)

**3** Completeness of document
☒ Document is complete by its own terms.
☐ Document is not complete. Record "as is."

**4** Description of document
☒ Transfer of Copyright
☐ Security Interest
☐ Change of Name of Owner

☐ Termination of Transfer(s) [Section 304]
☐ Shareware
☐ Life, Identity, Death Statement [Section 302]
☐ Transfer of Mask Works

☐ Other _____

**5** Title of first work as given in the document _____

**6** Total number of titles in document   **0**

**7** Amount of fee calculated   $ **95.00**

**8** Fee enclosed
☐ Check
☐ Money Order

**9** ☒ Fee authorized to be charged to:
Copyright Office
Deposit Account number   **37842**

Account name   **Mattel, Inc.**

**Affirmation:** I hereby affirm to the Copyright Office that the information given on this form is a true and correct representation of the accompanying document. This affirmation will not suffice as a certification of a photocopy signature on the document.
(Affirmation *must* be signed even if you are also signing Space 10.)

Signature

Date   **November 8, 2006**

(703) 415-1640     (703) 415-0788
Phone Number          Fax Number

**Certification:** Complete this certification in addition to the Affirmation if a photocopy of the original signed document is substituted f a document bearing the actual signature.
NOTE: This space *may not* be used for an official certification.
I certify that the accompanying document is a true copy States of America that the accompanying document is a true copy the origin...

Signature   Mattel, Inc.
Duly Authorized Agent for

Date   **November 6, 2006**

Recordation will be mailed in window envelope to this address:

Name ▼ **Michael Moore, Senior Counsel**
**Mattel, Inc.**

Number/Street/Apt ▼
**333 Continental Blvd., Ml-1518**

City/State/ZIP ▼
**El Segundo, CA 90245**

YOU MUST:
· Complete all necessary spaces
· Sign your Cover Sheet in Space 9
SEND ALL 3 ELEMENTS TOGETHER:
1. Two copies of the Document Cover Sheet
2. Check/money order payable to *Register of Copyrights*
3. Document
MAIL TO:
Library of Congress, Copyright Office
Documents Recordation Section, LM-462
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

*Knowingly and willfully falsifying material facts on this form may result in criminal liability. 18 U S C §1001
June 1999—20,000

EXHIBIT   **116**

PAGE   **983**

M 0059686



# Certificate of Recordation

This is to certify that the attached document was recorded
in the Copyright Office on the date and in the place shown below.

This certificate is issued under the seal of the
United States Copyright Office.

| DATE OF RECORDATION | |
|---|---|
| 6Nov06 | |
| VOLUME | DOC. NO. |
| 3544 | 330 |
| VOLUME | DOC. NO. |

*Marybeth Peters*

Register of Copyrights and
Associate Librarian for Copyright Services

c·762 · JANUARY 2004 — 4,000

EXHIBIT _116_

PAGE _984_

M 0059687

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

**1. Provisions Related to Trade Secrets**

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

**2. Ownership of Inventions**

(a) I agree to communicate to the Company as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly with others) at any time during my employment with the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such Inventions, and all my rights, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Invention" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data, computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any Invention does not apply to an Invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an Invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those Inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

**3. Conflicts with Other Activities**

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist in any manner any business competitive with the business or future business plans of the Company.

**4. Miscellaneous**

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body as limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to any continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. The Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS
THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.

Employee Signature _(signed)_

Employee Name (print) CARTER A. BRYANT

Date 01/04/99

MATTEL, INC.

By: _(signed)_ Teresa Newcomb
Signature

Name of Witness (print) TERESA NEWCOMB

V3544 D330
Page 1

V3544 D330

EXHIBIT 116

PAGE 985

M 0059688

# EXHIBIT 117

Fees are effective through June 30, 2002. After that date, check the Copyright Office Website at www.loc.gov/copyright or call (202) 707-3000 for current fee information.

RECEIVED

NOV 8 2006

DOCUMENT SECTION

**DOCUMENT COVER SHEET**
For Recordation of Documents
UNITED STATES COPYRIGHT OFFICE

DATE OF RECORDATION
(Assigned by Copyright Office)

Month 11  Day 6  Year 06

Volume 3544  Page 329

Volume _____  Page _____

FUNDS RECEIVED

Do not write above this line.

To the Register of Copyrights:

*Please record the accompanying original document or copy thereof.*

FOR OFFICE USE ONLY

**1** Name of the party or parties to the document spelled as they appear in the document (List up to the first three)

MATTEL, INC.

CARTER H. BRYANT

**2** Date of execution and/or effective date of the accompanying document

Nov.  6  2006
(month) (day) (year)

**3** Completeness of document
☒ Document is complete by its own terms.
☐ Document is not complete. Record "as is."

**4** Description of document
☒ Transfer of Copyright
☐ Security Interest
☐ Change of Name of Owner
☐ Termination of Transfer(s) [Section 304]
☐ Shareware
☐ Life, Identity, Death Statement [Section 302]
☐ Transfer of Mask Works
☐ Other _____

**5** Title of first work as given in the document

JADE Drawing  VA 1-218-487

**6** Total number of titles in document  5

**7** Amount of fee calculated
$ 120.00

**8** Fee enclosed
☐ Check
☐ Money Order

☒ Fee authorized to be charged to:
Copyright Office
Deposit Account number  37842

Account name  MATTEL, INC.

**9** Affirmation: I hereby affirm to the Copyright Office that the information given on this form is a true and correct representation of the accompanying document. This affirmation will not suffice as a certification of a photocopy signature on the document.
(Affirmation *must* be signed even if you are also signing Space 10.)

Signature _____

Date  November 6, 2006

(703) 415-1640  (703) 415-0788
Phone Number  Fax Number

**10** Certification: Complete this certification in addition to the Affirmation if a photocopy of the original signed document is substituted for a document bearing the actual signature.
NOTE: This space *may not* be used for an official certification.
I certify under penalty of perjury under the laws of the United States of America that the accompanying document is a true copy of the original document.

Signature  MATTEL, INC.

Duly Authorized Agent of:

Date  November 6, 2006

Recordation will be mailed in window envelope to this address:

Name  Michael Moore, Senior Counsel
Mattel, Inc.

Number/Street/Apt▼  333 Continental Blvd., M1-1518

City/State/Zip▼  El Segundo, CA  90245

YOU MUST:
• Complete all necessary spaces
• Sign your Cover Sheet in Space 9
SEND ALL 3 ELEMENTS TOGETHER:
1. Two copies of the Document Cover Sheet
2. Check/money order payable to Register of Copyrights
3. Document
MAIL TO:
Library of Congress, Copyright Office
Documents Recordation Section, LM-462
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

*Knowingly and willfully falsifying material facts on this form may result in criminal liability. 18 U.S.C. §1001.
June 1999—20,000

EXHIBIT  117

PAGE  986

M 0059681



# Certificate of Recordation

This is to certify that the attached document was recorded
in the Copyright Office on the date and in the place shown below.

This certificate is issued under the seal of the
United States Copyright Office.

| DATE OF RECORDATION | |
|---|---|
| 6Nov06 | |
| VOLUME | DOC. NO. |
| 3544 | 329 |
| VOLUME | DOC. NO. |

*Marybeth Peters*

Register of Copyrights and
Associate Librarian for Copyright Services

c-765   JANUARY 1984 — 4,000

EXHIBIT ___117___

PAGE ___987___

M 0059682



## NOTICE OF COPYRIGHT ASSIGNMENT

Mattel, Inc. hereby provides notice that, in that certain Employee Confidential

Information and Inventions Agreement executed by Mattel, Inc., on the one hand, and Carter H.

Bryant, on the other hand, on January 4, 1999, a copy of which is attached hereto and separately

recorded, Carter H. Bryant assigned to Mattel, Inc., as of and from the time of creation,

exclusively and throughout the universe, all right, title and interest in and to the following works:

| Title | Copyright Registration No. |
|-------|---------------------------|
| JADE Drawing | VA 1-218-487 |
| SASHA Drawing | VA 1-218-488 |
| BRATZ Group Drawing | VA 1-218-489 |
| CLOE Drawing | VA 1-218-490 |
| YASMIN Drawing | VA 1-218-491 |

including without limitation, all copyrights therein (and extensions, renewals and reinstatements

thereof), all neighboring rights, moral rights, and any and all other ownership and exploitation

rights now or hereafter recognized anywhere.

1

EXHIBIT ___117___

PAGE ___988___

M 0059683

IN WITNESS WHEREOF the undersigned has executed this notice of assignment by its duly authorized officer as of this 6th day of November, 2006.

Mattel, Inc.

By: *Alan Kaye*

Its: *Senior Vice President, Human Resources*

State of California )
) SS.
County of Los Angeles )

Subscribed and sworn to (or affirmed) before me on

this __*6th*__ day of November, 2006

by *Alan Kaye*

personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Seal:

```
F. FAHMIE
Comm. No. 1639288
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Jan. 17, 2010
```

Signature *F. Fahmie*

V3544 D329
Page 2

2

EXHIBIT ___117___

PAGE ___989___

M 0059684

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) Inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

**1. Provisions Related to Trade Secrets**

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use in any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other material (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

**2. Ownership of Inventions**

(a) I agree to communicate to the Company as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. Thereby assign to the Company and/or its nominees all my right, title and interest in such Inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those Inventions that either (1) relate at the time of conception or reduction to practice of the Invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

**3. Conflicts with Other Activities**

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

**4. Miscellaneous**

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach or any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement. In addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS
THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.

Employee Signature

Employee Name (print)   CARTER A. BRYANT

Date   01/04/99

MATTEL INC.

By   Teresa Newcomb
Signature

Teresa Newcomb
Name of Witness (print)

V3544 D329
Page 3

EXHIBIT   117

PAGE   990

M 0059685

# EXHIBIT 118

fees are effective through June 30, 2002.
After that date, check the Copyright Office Website at www.loc.gov/copyright or call (202) 707-3000 for current fee information.

RECEIVED

NOV 6 2006

DOCUMENT SECTION

**DOCUMENT COVER SHEET**
For Recordation of Documents
UNITED STATES COPYRIGHT OFFICE

DATE OF RECORDATION
(Assigned by Copyright Office)

Month **11** Day **7** Year **06**

Volume **35 44** Page **331**

Volume _____ Page _____

FUNDS RECEIVED

Do not write above this line.

To the Register of Copyrights:

*Please record the accompanying original document or copy thereof.*

FOR OFFICE USE ONLY

**1** Name of the party or parties to the document spelled as they appear in the document (List up to the first three)

MATTEL, INC.
CARTER H. BRYANT

**2** Date of execution and/or effective date of the accompanying document

Nov. 7 2006
(month)   (day)   (year)

**3** Completeness of document
☒ Document is complete by its own terms.
☐ Document is not complete. Record "as is."

**4** Description of document
☒ Transfer of Copyright
☐ Security Interest
☐ Change of Name of Owner
☐ Termination of Transfer(s) [Section 304]
☐ Shareware
☐ Life, Identity, Death Statement [Section 302]
☐ Transfer of Mask Works
☐ Other _____

**5** Title of first work as given in the document   drawing of Doll No. 1

VA 1-378-648

**6** Total number of titles in document   21

**7** Amount of fee calculated
$ 580.00

**8** Fee enclosed
☐ Check
☐ Money Order

☒ Fee authorized to be charged to:
Copyright Office
Deposit Account number   37842

Account name   MATTEL, INC.

**9** Affirmation: I hereby affirm to the Copyright Office that the information given on this form is a true and correct representation of the accompanying document. This affirmation will not suffice as a certification of a photocopy signature on the document. (Affirmation must be signed even if you are also signing Space 10.)

Signature

Date   November 7, 2006

Phone Number   (703) 415-1640   Fax Number   (703) 415-0788

**10** Certification: Complete this certification in addition to the Affirmation if a photocopy of the original signed document is substituted for a document bearing the actual signature.
NOTE: This space may not be used for an official certification.
I certify under penalty of perjury under the laws of the United States of America that the accompanying document is a true copy of the original document.

Signature   MATTEL, INC.

Duly Authorized Agent of   November 7, 2006

Date

Name ▼   Michael Moore, Senior Counsel
Mattel, Inc.

Recordation will be mailed in window envelope to this address:

Number/Street/Apt ▼   333 Continental Blvd., M1-1518

City/State/ZIP ▼   El Segundo, CA 90245

YOU MUST:
• Complete all necessary spaces
• Sign your Cover Sheet in Space 9
SEND ALL 3 ELEMENTS TOGETHER:
1. Two copies of the Document Cover Sheet
2. Check/money order payable to Register of Copyrights
3. Document
MAIL TO:
Library of Congress, Copyright Office
Documents Recordation Section, LM-462
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

The recordation fee for the Document Cover Sheet is 130 and 515 for each group of 10 additional titles as of July 1, 1999.

*Knowingly and willfully falsifying material facts on this form may result in criminal liability. 18 U.S.C. §1001.
June 1999—20,000
WEB REV: June 1999   ☼ PRINTED ON RECYCLED PAPER

☆U.S. GOVERNMENT PRINTING OFFICE: 1999-454-879/56

EXHIBIT __**11B**__

PAGE __**991**__

M 0059689



# Certificate of Recordation

This is to certify that the attached document was recorded
in the Copyright Office on the date and in the place shown below.

This certificate is issued under the seal of the
United States Copyright Office.

| DATE OF RECORDATION | |
|---|---|
| 7Nov06 | |
| **VOLUME** | **DOC. NO.** |
| 3544 | 331 |
| **VOLUME** | **DOC. NO.** |
| | |

*Marybeth Peters*

Register of Copyrights and
Associate Librarian for Copyright Services

L-762 · JANUARY 2004 — 4,000

**EXHIBIT** 118

**PAGE** 992

M 0059690

D331

## NOTICE OF COPYRIGHT ASSIGNMENT

Mattel, Inc. hereby provides notice that, in that certain Employee Confidential Information and Inventions Agreement executed by Mattel, Inc., on the one hand, and Carter H. Bryant, on the other hand, on January 4, 1999, a copy of which is attached hereto and separately recorded, Carter H. Bryant assigned to Mattel, Inc., as of and from the time of creation, exclusively and throughout the universe, all right, title and interest in and to the following works:

| Title | Copyright Registration No. | Also Registered As |
|---|---|---|
| drawing of Doll No. 1 | VA 1-378-648 | JADE Drawing, VA 1-218-487 |
| drawing of Doll No. 2 | VA 1-378-649 | SASHA Drawing, VA 1-218-488 |
| group drawing of Dolls | VA 1-378-650 | BRATZ Group Drawing, VA 1-218-489 |
| drawing of Doll No. 3 | VA 1-378-651 | CLOE Drawing, VA 1-218-490 |
| drawing of Doll No. 4 | VA 1-378-652 | YASMIN Drawing, VA 1-218-491 |
| drawing of Doll No. 5 | VA 1-378-653 | |
| drawing of Doll No. 6 | VA 1-378-654 | |
| drawing of Doll No. 7 | VA 1-378-655 | |
| drawing of Doll No. 8 | VA 1-378-656 | |
| drawing of Doll No. 9 | VA 1-378-657 | |
| drawing of Doll No. 10 | VA 1-378-658 | |
| drawing of Doll No. 11 | VA 1-378-659 | |
| drawing of Doll No. 12 | VA 1-378-660 | |
| body drawing | VAu 715-270 | |
| drawing of two dolls | VAu 715-271 | |
| drawing of heads | VAu 715-273 | |

including without limitation, all copyrights therein (and extensions, renewals and reinstatements thereof), all neighboring rights, moral rights, and any and all other ownership and exploitation rights now or hereafter recognized anywhere, in perpetuity.

1

V3544 D331
Page 1

EXHIBIT ___118___

PAGE ___993___

M 0059691

IN WITNESS WHEREOF the undersigned has executed this notice of assignment by its duly authorized officer as of this 7th day of November, 2006.

Mattel, Inc.

By: _____

Its: *Senior Vice President — HR*

State of California          )
                             ) SS.
County of Los Angeles        )

Subscribed and sworn to (or affirmed) before me on

this __7th__ day of November, 2006

by ____ALAN KAYE_____

personally known to me ~~or proved to me on the basis of satisfactory evidence~~ to be the person(s) who appeared before me.

Seal:

> R. S. GELBART
> Commission # 1644437
> Notary Public - California
> Los Angeles County
> My Comm. Expires Feb 27, 2010

Signature _R.S. Gelbart_____

V3544 D331
Page 2

2

EXHIBIT ____118____

PAGE ____994____

M 0059692

## EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

### 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

### 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such Inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer, or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

### 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

### 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will insure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right in my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS
THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.

Employee Signature _(signature)_

MATTEL, INC.

By _(signature)_
Signature

Employee Name (print)   CARTER H. BRYANT

Name of Witness (print)   TERESA NEWCOMB

Date   01/04/99

EXHIBIT ___118___

PAGE ___995___

M 0059693

# EXHIBIT 119

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

February 5, 2008

**VIA EMAIL AND U.S. MAIL**

Michael H. Page, Esq.                    Thomas J. Nolan, Esq.
Keker & Van Nest, LLP                    Skadden, Arps, Slate, Meagher & Flom LLP
710 Sansome Street                       300 South Grand Avenue, Suite 3400
San Francisco, CA 94111                  Los Angeles, CA 90071

Re:    Mattel, Inc. v. Bryant, et al.

Dear Counsel:

Pursuant to Local Rule 7-3, we write to request a conference of counsel regarding Mattel's anticipated Phase 1 motion for summary judgment. Mattel anticipates that the motion will raise the following issues:

**The Inventions Agreement Is Enforceable, and Encompasses All Doll Ideas and Designs That Bryant Conceived or Created While Employed By Mattel**

Mattel will seek to dispose of any remaining challenges to the enforceability or interpretation of the Inventions Agreement ("Agreement"). Defendants' characterization of the Agreement as a "contract of adhesion" proves nothing, and the Court has previously ruled it is enforceable. *See, e.g., Perdue v. Crocker National Bank*, 38 Cal. 3d 913, 925 (1985). Similarly, defendants' contention that the Inventions Agreement does not encompass copyright subject matter and/or ideas is without merit and simply misreads the Agreement. Under the Agreement, Mattel owns all doll ideas and/or designs conceived or created by Bryant while in Mattel's employ.

**Defendants' Affirmative Defenses of Estoppel, Waiver, Consent and Acquiescence Fail**

Mattel will seek a ruling that Defendants' other defenses to the enforceability of the Agreement also fail. The defense that Mattel waived (or is estopped, or consented, or acquiesced or has unclean hands) by allegedly not prosecuting misconduct similar to Bryant's fails both as a matter

EXHIBIT   119

PAGE   996

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

of law and on the facts. Under the Copyright Act and in common law, a failure to prosecute rights against a third party is not probative of intent to waive rights against a defendant. *See, e.g., Paramount Pictures Corp. v. Carol Publishing Group*, 11 F. Supp. 2d 329, 337 (S.D.N.Y. 1998) ("Extending the doctrine of estoppel so that a defendant may rely on a plaintiff's conduct toward another party is both unsupported by law and pernicious as a matter of policy."); *Emerson Electric Co. v. Rogers*, 418 F.3d 841, 844-845 (8th Cir. 2005).

Moreover, these defenses are not supported by the evidence. To establish its affirmative defenses, defendants bear the burden of proving that Mattel intentionally relinquished known rights after full knowledge of all the facts. Because no reasonable trier of fact could find that Mattel intentionally relinquished its rights to the Bratz franchise after full knowledge of defendants' misconduct, Mattel is entitled to summary judgment on these defenses.

**Bryant Is Liable for Breach of Fiduciary Duty and The Duty of Loyalty, and Breach of Contract, and MGA Is Liable for Aiding and Abetting These Breaches**

Mattel will seek a finding of liability for Mattel's claims and counterclaims for breach of contract, breach of fiduciary duty, and breach of the duty of loyalty against Bryant and a finding of liability against MGA Entertainment, Inc. and Isaac Larian for Mattel's claims for aiding and abetting breaches of duty of loyalty and breach of fiduciary duty. Under California law every employee owes a duty of undivided loyalty to his employer, and may not take any action that is adverse to his employer. *See, e.g., Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 295 (1995). "Where a person is employed to design improvements to the product of his employer, or to design new products for his employer, and he does so, he may not use the results of such work for his own benefit and particularly not to the detriment of his employer." *Daniel Orifice Fitting Co. v. Whalen*, 198 Cal. App. 2d 791, 797 (1962). Bryant also owed Mattel a fiduciary duty because the Agreement imposes on him a position of trust, and because Mattel granted Bryant access to highly confidential information, among other reasons. *See, e.g., Stevens v. Marco*, 147 Cal.App. 2d 357 (1956) (fiduciary relationship existed because one party confidentially entrusted another with "a new and valuable idea"); *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1581 (1994) ("Confidential and fiduciary relations are, in law, synonymous, and may be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another.")

Discovery has uncovered extensive evidence of Bryant's disloyalty. Bryant worked for MGA (and was paid by MGA) while employed by Mattel. Bryant secretly entered into a contract with MGA that required him to provide design services to MGA on a "top priority" basis while employed by Mattel. Bryant worked on a line of dolls while employed by Mattel and did not disclose that work to Mattel. These are clear breaches of Bryant's duties to Mattel.

MGA and Isaac Larian knew that Bryant was a Mattel employee when they first met with him. They also knew or should have known that Bryant had pre-existing obligations to Mattel, including a duty to assign to Mattel all designs created while employed there. This and other evidence amply support a finding of aiding and abetting liability.

2

EXHIBIT __119__

PAGE __997__

**Defendants' Affirmative Defenses of Unclean Hands Fail As To Phase 1 Claims and Counterclaims**

Defendants' unclean defense fails as to all Phase 1 claims and counterclaims because the alleged improper conduct that forms the basis for the MGA defendants' unclean hands defense has nothing to do with the claims in Phase 1. Further, the alleged defense is unsupported by evidence.

**Defendants' Statute of Limitations and Laches Affirmative Defenses Fail**

The Court has rejected defendants' statute of limitations and laches defenses in the past. Mattel will seek a ruling rejecting these defenses. The shortest pertinent statute of limitations is two years. *See, e.g.,* Cal. Code of Civ. Proc. § 339(1). Because Mattel filed suit less than two years after its claims accrued and its Phase 1 counterclaims relate back, its claims are timely.

The defense of laches also fails. "Laches is not available as a defense to an action at law." *Abbott v. City of Los Angeles*, 50 Cal. 2d 438, 462 (1958). Moreover, defendants have not been prejudiced by any alleged delay. Even after Mattel brought suit, they proceeded with developing and producing the infringing Bratz dolls. *See, e.g., Russell v. Price*, 612 F.2d 1123, 1126 (9th Cir. 1979) ("Defendants at no time changed their film distribution activities in reliance on [Plaintiff's] conduct. Defendants cite no case in which a false sense of security alone has been enough to bar an otherwise proper claim."); *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 942 (7th Cir. 1989) (no detrimental reliance where the defendant commenced marketing of infringing works prior to learning of the plaintiff's claim). Mattel did not unreasonably delay filing suit.

**Defendants' *Bona Fide* Purchaser, Good Faith and 17 U.S.C. § 205(d) Affirmative Defenses Fail**

Defendants assert that Section 205(d) of the Copyright Act bars Mattel's claim for copyright infringement, and also assert a variety of other "good faith" defenses. These defenses lack merit. MGA has admitted that it did not record its purported assignment from Bryant, rendering any claim to priority under Section 205 invalid. Moreover, the facts show that MGA has not acted in good faith, and, without more, good faith is not a defense to Mattel's copyright infringement claim.

**Mattel Owns Drawings Bryant Created While Employed by Mattel**

Mattel also intends to seek a finding that specific drawings which Bryant indisputably created while employed by Mattel are owned by Mattel under the Inventions Agreement.

* * *

EXHIBIT ___119___

PAGE ___998___

In addition to these substantive issues, we also wish to invite a discussion the length of the motion papers, and the appropriate briefing schedule. We look forward to discussing these matters with you. Please let us know your availability.

Very truly yours,

B. Dylan Proctor
07209/2378698.3

4

EXHIBIT ____119____

PAGE ____999____

# EXHIBIT 120

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188

## FACSIMILE TRANSMISSION COVER SHEET

### February 27, 2008

| To | Telephone | Facsimile |
|---|---|---|
| B. Dylan Proctor | 213/443-3000 | 213/443-3100 |
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | | |

*cc:*

| | Telephone | Facsimile |
|---|---|---|
| Thomas J. Nolan | 213/687-5000 | 213/687-5600 |
| Skadden Arps Slate Meagher & Flom | | |
| Paul M. Eckles | 212/735-2578 | 212/777-2578 |
| Skadden, Arps, Slate, Meagher & Flom | | |
| Alexander Cote | 213/613-4655 | 213/613-4656 |
| Overland Borenstein Scheper & Kim LLP | | |

| From | Telephone | Code |
|---|---|---|
| Matthew M. Werdegar | 415-391-5400 | 6647/mls |

Re    **Bryant v. Mattel: (ED) 2:04-cv-09049-SGL-RNB**

### Number of Pages (including Cover): 3

### COMMENTS

Please see attached.

Operator _____          Time Sent _____

## IF YOU ENCOUNTER ANY DIFFICULTIES RECEIVING THIS TRANSMISSION, PLEASE CALL (415) 676-2277 OR (415) 391-5400

The information contained in this facsimile transmission is legally privileged and confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify us immediately by telephone, and return the original transmission to us at the above address via the U.S. Postal Service. Thank you.

393005.01

EXHIBIT ___120___

PAGE ___1000___

02.27.2008 10:19 FAX 4153877108          KEKER & VAN NEST          ☐002/003

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

MATTHEW M. WERDEGAR
MWERDEGAR@KVN.COM

February 27, 2008

**VIA FACSIMILE & U.S. MAIL**

B. Dylan Proctor, Esq.
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Re:     Mattel v. Bryant, et al.

Dear Dylan:

I am writing to follow-up on our telephonic conference on February 25, 2008 regarding Cater Bryant's response to Mattel's Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses.

As we discussed, Mr. Bryant believes that the time has now passed for Mattel to file any motion to compel or enforce with respect to this discovery response. Mr. Bryant served his response to this interrogatory on January 7, 2008, nearly seven weeks ago. Mattel thus was on notice of any alleged deficiencies in Mr. Bryant's response three weeks before the close of Phase I discovery, and it easily could have brought a motion to compel before the discovery cut-off had it acted diligently. However, Mattel elected to wait more than a month after receiving Mr. Bryant's response, and nine days after the Phase I discovery cut-off, before seeking to meet and confer regarding this response. Moreover, Mattel waited another full week after Mr. Bryant stated he was prepared to meet and confer before seeking to schedule that conference. In light of this time line, and the lack of diligence on Mattel's part that this time line illustrates, any motion Mattel may now seek to file plainly would be untimely under the *Days Inn Worldwide, Inc. v. Sonia Investments* factors, *see* 237 F.R.D. 395, 398 (N.D. Tex. 2006), and the reasoning of the Discovery Master's February 25, 2008 Order.

Second, as we also discussed, Mr. Bryant believes that his response to Mattel's Amended Supplemental Interrogatory is substantively sufficient and in full compliance with Federal Rule of Civil Procedure 33. As I noted, the Discovery Master recently has ruled that it is appropriate for a responding party to "IDENTIFY" documents by categories, especially in response to broadly-framed contention interrogatories such as Mattel's Amended Supplemental

EXHIBIT ___120___

PAGE ___1001___

B. Dylan Proctor, Esq.
February 27, 2008
Page 2

Interrogatory, and that a list of bates numbered documents is not required. *See generally* Order
dated Feb. 20, 2008 & Order dated Feb. 15, 2008.

Finally, you asked (for the first time) that Mr. Bryant clarify the scope of his Phase I
unclean hands affirmative defense. Although Mr. Bryant is under no obligation to do so, as
Mattel's Amended Supplemental Interrogatory was directed at defendants' affirmative defenses
for both Phases I and II, Mr. Bryant hereby voluntarily provides the following clarifying
information in an effort to avoid a needless motion for summary judgment on this issue by
Mattel: Mr. Bryant does not intend to assert all of the facts and contentions set forth in the
"unclean hands" portion of his response to Mattel's Amended Supplemental Interrogatory in
support of his unclean hands defense during the Phase I trial in this case, as some of those facts
and contentions relate exclusively to Phase II. Specifically, Mr. Bryant does not intend to assert
or rely upon the contentions and facts set forth at page 8, line 5 through page 28, line 7, and page
28, lines 11 through 14 of Mr. Bryant's response to Mattel's Amended Supplemental
Interrogatory. Mr. Bryant reserves all of his rights to rely upon all of the facts and contentions
set forth in the balance of his response to Mattel's Amended Supplemental Interrogatory, as well
as any additional supporting facts relating to those facts and contentions, any and all facts that
further analysis or discovery may reveal are also relevant to those facts and contentions, and any
and all facts that have yet to be disclosed in discovery. In this regard, I note that Mattel has yet
to provide critical discovery relevant to Mr. Bryant's Phase I unclean hands defense, despite
Court orders that it do so, and other critical discovery is the subject of pending motions to
compel filed by Mr. Bryant and/or MGA.

Very truly yours,

Matthew Werdegar

MMW/mls

cc via facsimile:
    Thomas J. Nolan
    Paul M. Eckles
    Alexander Cote

412198.01

EXHIBIT 120
PAGE 1002

The attached fax was received from 4153977188 on 2/27/2008 at 4:20:31 PM

JobID: 095001

EXHIBIT ___120___

PAGE ___1003___

# EXHIBIT 121

1 | THOMAS J. NOLAN (Bar No. 66992)
  | (tnolan@skadden.com)
2 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
  | 300 South Grand Avenue, Suite 3400
3 | Los Angeles, CA  90071
  | Tel.: (213) 687-5000/Fax: (213) 687-5600
4 |
  | KENNETH PLEVAN (admitted *pro hac vice*)
5 | (kplevan@skadden.com)
  | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 | Four Times Square
  | New York, NY  10046
7 | Tel.: (212) 735-3000 / Fax: (212) 735-2000
8 | Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
  | MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian
9 |

10 |                UNITED STATED DISTRICT COURT

11 |              CENTRAL DISTRICT OF CALIFORNIA

12 |

13 | CARTER BRYANT, an individual,            ) CASE NO. CV 04-9049 SGL (RNBx)
14 |                          Plaintiff,      )
  |                                          ) MGA'S NOTICE OF
15 |                                          ) WITHDRAWAL OF UNCLEAN
  |          v.                              ) HANDS AFFIRMATIVE DEFENSE
16 |                                          ) AS IT PERTAINS TO PHASE 1
  | MATTEL, INC., a Delaware                 )
17 | corporation,                            )
  |                                          )
18 |                          Defendant.     )
19 |                                          )
  |                                          )
20 | AND CONSOLIDATED ACTIONS                )
  |                                          )
21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

MGA'S NOTICE OF WITHDRAWAL OF UNCLEAN HANDS AFFIRMATIVE DEFENSE AS IT PERTAINS TO PHASE I

EXHIBIT 121

PAGE 1004

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that the MGA Parties hereby withdraw their affirmative defense based on unclean hands as it pertains to Phase 1 of this action. The MGA Parties will assert unclean hands as an affirmative defense only in connection with Phase 2 of this action.

DATED: February 15, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____
Thomas J. Nolan
Attorney for MGA Entertainment, Inc.

MGA'S NOTICE OF WITHDRAWAL OF UNCLEAN HANDS AFFIRMATIVE DEFENSE AS IT PERTAINS TO PHASE 1
1

EXHIBIT ___121___

PAGE ___1005___

1   THOMAS J. NOLAN (Bar No. 066992)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2   300 South Grand Avenue
    Los Angeles, CA  90071-3144
3   Telephone:   (213) 687-5000
    Facsimile:   (213) 687-5600
4   E-mail:       tnolan@skadden.com

5   KENNETH PLEVAN (admitted *pro hac vice*)
    (kplevan@skadden.com)
6   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    Four Times Square
7   New York, NY  10036
    Tel.: (212) 735-3000 / Fax: (212) 735-2000
8
    Attorneys for Counter-Defendants,
9   MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
    (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.
10
                    **UNITED STATES DISTRICT COURT**
11
                    **CENTRAL DISTRICT OF CALIFORNIA**
12
                         **EASTERN DIVISION**
13

14  CARTER BRYANT, an individual        )   CASE NO. CV 04-9049 SGL (RNBx)
                                        )
15                    Plaintiff,        )   Consolidated with Case No. 04-9059
                                        )   and Case No. 05-2727
16        v.                            )
                                        )   **PROOF OF SERVICE**
17  MATTEL, INC., a Delaware            )
    corporation                         )
18                                      )
                      Defendant.        )
19                                      )
                                        )
20                                      )
                                        )
21                                      )
                                        )
22  Consolidated with MATTEL, INC. v.   )   Discovery Cut-Off:  January 28, 2008
    BRYANT and MGA                      )
23  ENTERTAINMENT, INC. v.              )
    MATTEL, INC.                        )
24                                      )
25
26
27
28

PROOF OF SERVICE                                    NO. CV 04-9049 SGL (RNBx)

EXHIBIT _____121_____

PAGE _____1006_____

1

## PROOF OF SERVICE

2

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3
4

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, 34th Floor, Los Angeles, CA 90071.

5

On February 15, 2008, I served the foregoing documents described as:

6

### SEE ATTACHED DOCUMENT LIST

7

on the interested parties in this action addressed as follows:

8
9

### SEE ATTACHED SERVICE LIST

10

☒    (BY PERSONAL SERVICE)    ☐    By personally delivering copies to the person served. (FEDERAL)

11
12

☒    I caused such document to be hand delivered to the above addressees. (FEDERAL)

13
14
15

☒    (BY FEDERAL EXPRESS) I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with Federal Express and the fact that the correspondence would be deposited with Federal Express that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices.

16
17
18
19

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

20

Executed on February 15, 2008 at Los Angeles, California.

21
22

Matthew Bowman
PRINT NAME                          SIGNATURE

23
24
25
26
27
28

PROOF OF SERVICE                                        NO. CV 04-9049 SGL (RNBx)

EXHIBIT _____ 121

PAGE _____ 1007

1

## **DOCUMENT LIST**

2

1)  MGA'S NOTICE OF WITHDRAWAL OF UNCLEAN HANDS
3  AFFIRMATIVE DEFENSE AS IT PERTAINS TO PHASE 1

4  2)  PROOF OF SERVICE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___121___

PAGE ___1008___

1 | SERVICE LIST

2

3 | John B. Quinn, Esq.
Michael T. Zeller, Esq.
4 | Jon D. Corey, Esq.
Timothy L. Alger, Esq.
5 | Quinn Emanuel Urquhart Oliver &
Hedges, LLP
6 | 865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
7 | (213) 443-3000
(213) 443-3100 (Fax)

8

9 | Attorneys for Mattel, Inc.
[Personal Service]

10

11

12 | Mark E. Overland, Esq.
Alexander H. Cote, Esq.
David C. Scheper, Esq.
13 | Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
14 | Los Angeles, CA 90071
(213) 613-4655
15 | (213) 613-4656 (Fax)

16 | [Federal Express]

John W. Keker, Esq.
Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400
(415) 397-7188 (Fax)

Attorneys for Carter Bryant
[Federal Express]

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___121___

PAGE ___1009___