KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>                    Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx)<br>(consolidated with CV 04-9059 & 05-2727)<br><br>Hon. Stephen G. Larson<br><br>**[PUBLIC REDACTED]<br>CARTER BRYANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Public Redacted Declaration of Christa M. Anderson; Separate Statement of Undisputed Facts; and [Proposed] Order filed concurrently]<br><br>Date:        April 23, 2008<br>Time:        10:00 a.m.<br>Place:        Courtroom 1<br><br>**Phase I:**<br>Date Comp. Filed:  April 13, 2005<br>Discovery Cut-Off:  Jan. 28, 2008<br>Trial Date:  May 27, 2008 |

412879.01

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND FACTS ................................................................................... 3

    A.   Bryant returned to Mattel in 1999 and signed Mattel's mandatory "on-boarding" paperwork. .............................................. 4

    B.   Mattel did nothing to ensure that Bryant understood the terms of the Employee Agreement .................................................. 6

    C.   Bryant worked at Mattel as a low-level designer, without any managerial or real discretionary authority. .......................... 6

    D.   Mattel's course of conduct demonstrates that Mattel did not assert any ownership rights to employees' moonlighting or personal portfolio work—contrary to Mattel's litigation position now. ...................................................................................... 7

    E.   Bryant left Mattel, signing Mattel's mandatory "exit" paperwork. ............................................................................................. 8

III.  ARGUMENT .......................................................................................................... 8

    A.   Mattel's breach of fiduciary duty claim fails because Bryant did not enter into a fiduciary relationship with Mattel as a matter of law .................................................................................... 10

        1.   In California, an employee must be an officer, participate in the management of the company, and exercise discretionary authority for a fiduciary relationship to be imposed by law. .............................. 11

        2.   Based on the undisputed facts, Bryant did not enter into a confidential relationship with Mattel ............................ 13

    B.   No contract gives Mattel any ownership of Bratz under California law, regardless of when Bryant had the idea. ................... 17

        1.   California contract law requires the Court to consider extrinsic evidence of the parties' intentions in interpreting Mattel's paperwork, and to protect the weaker party to one-sided agreements ..................................... 18

        2.   Bryant's contract with Mattel is a contract of adhesion, and any ambiguities must be interpreted in Bryant's favor. ........................................................................... 20

        3.   The Employee Agreement does not give Mattel rights to Bratz. ............................................................................... 21

i

412879.01

a.   "Inventions" under the Employee Agreement
     do not include Bratz..........................................................21

     (i)   In ordinary English usage, and in the
           textual context of the Employee
           Agreement, "inventions" do not include
           an idea or sketches for doll characters. ................22

     (ii)  Extrinsic evidence also supports a narrow
           meaning for "inventions."....................................25

     (iii) Mattel's post-hoc, all-inclusive
           interpretation of the term "inventions" is
           unreasonable and unsupported by either
           the intrinsic or extrinsic evidence. .......................27

b.   Regardless of when it was done, Bryant's Bratz
     work was not conceived and reduced to practice
     "during [Bryant's] employment" at Mattel
     within the meaning of the Employee
     Agreement. .......................................................................28

c.   The Employee Agreement does not make Bratz
     Mattel's "Proprietary Information" or trade
     secret.................................................................................29

d.   The adhesive Employee Agreement cannot be
     interpreted to encompass Bratz, because that
     result would be outside of an employee's
     reasonable expectations. ................................................31

e.   The adhesive Employee Agreement cannot be
     interpreted as Mattel claims, because that result
     would be unconscionable. ..............................................33

4.   The Employment Agreement is not a valid transfer of
     copyright ownership under Section 204(a) of the
     Copyright Act .........................................................................34

5.   Mattel's Conflict of Interest Questionnaire gives
     Mattel no rights to Bratz because it is not a valid
     contract and by its own terms it conveys no rights to
     Bratz........................................................................................36

     a.   Mattel did not intend the Questionnaire to be a
          contract, and neither Mattel, Bryant, nor other
          Mattel employees understood it to be one.....................36

     b.   Even if the Questionnaire were a contract, it
          would not give Mattel any ownership rights
          over Bratz. ......................................................................37

6.   Mattel's deceptive Proprietary Information Checkout
     is not a valid contract and cannot convey rights to
     Bratz........................................................................................38

ii

412879.01

C.    Mattel's claim for unjust enrichment—if it still asserts one—fails because unjust enrichment is not a valid separate cause of action. ........................................................................40

D.    The Copyright Act preempts Mattel's Conversion and Unfair Competition claims against Bryant, as set forth in the MGA parties' summary judgment motion. ...........................................41

E.    Mattel's unfair competition claims against Bryant fail because Mattel can prove no conduct by Bryant that could support such a claim. .................................................................42

       1.    Mattel's statutory unfair competition claims lack merit. ................................................................................42

       2.    Mattel's common law unfair competition claim also fails. .............................................................................43

F.    Mattel's First, Eleventh, and Thirteenth Counterclaims are Time-Barred, as set forth in the MGA parties' summary judgment motion. ............................................................44

IV.    CONCLUSION .......................................................................44

412879.01

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Alfred Bell & Co. v. Catalda Fine Arts, Inc.,*
  191 F.2d 99 (2d Cir. 1951)...................................................................25

*Am. Home Prods. Corp. v. Johnson & Johnson, Inc.,*
  654 F. Supp. 568 (S.D.N.Y. 1987)......................................................32

*Bieg v. Hovnonian Ents., Inc.,*
  157 F. Supp. 2d 475 (E.D. Pa. 2001) ............................................31, 35

*City of Oakland v. Harding ESE, Inc.,*
  2004 WL. 2646654 (N.D. Cal. Nov. 17, 2004)...................................26

*City Solutions, Inc. v. Clear Channel Communications, Inc.,*
  201 F. Supp. 2d 1048 (2002)..........................................................*passim*

*Effects Assocs., Inc. v. Cohen,*
  908 F.2d 555 (9th Cir. 1990)........................................................31, 35

*Enreach Techn., Inc. v. Embedded Internet Solutions, Inc.,*
  403 F. Supp. 2d 968 (N.D. Cal. 2005) ...............................................12

*FTC v. Cyberspace.com,*
  453 F.3d 1196 (9th Cir. 2006).............................................................32

*Foraste v. Brown Univ.,*
  290 F. Supp. 2d 234 (D.R.I. 2003).......................................................35

*Geoffroy v. Washington Mut. Bank,*
  484 F. Supp. 2d 1115 (S.D. Cal. 2007)...............................................32

*Hutchins v. Zoll Med. Corp.,*
  492 F.3d 1377 (Fed. Cir. 2007)...........................................................25

*In re Thompson Med. Co.,*
  104 F.T.C. 648 (1984) aff'd 791 F.2d 189 (D.C. Cir. 1986),
  cert. denied, 479 U.S. 1086 (1987) .....................................................33

iv

412879.01

*Konigsberg, Int'l, Inc. v. Rice,*
   16 F.3d 355 (9th Cir. 1994)...............................................................35

*Pamfiloff v. Giant Records, Inc.,*
   794 F. Supp. 933 (N.D. Cal. 1992) ...................................................35

*Papa's-June Music v. McLean,*
   921 F. Supp. 1154 (S.D.N.Y. 1996)..................................................32

*Radio Tele. Espanola v. New Works Entm't, Ltd.,*
   183 F.3d 922 (9th Cir. 1999).............................................................36

*Rita Med. Systems, Inc. v. Resect Med., Inc.,*
   Slip Copy 2007 WL 161049 (N.D. Cal. 2007) ................................17

*Roots Ready Made Garments v. Gap, Inc.,*
   C 07-03363 CRB, U.S. Dist. LEXIS 9191 (N.D. Cal. 2008) ...........41

*Smith & Hawken, Ltd. v. Gardendance, Inc.,*
   2004 WL. 2496163 (N.D. Cal. Nov. 5, 2004).................................43

## STATE CASES

*Amid v. Hawthorne Cmty. Med. Group,*
   212 Cal. App. 3d 1383 (1989)............................................................11

*Badie v. Bank of America,*
   67 Cal. App. 4th 779 (1998).........................................................19, 21

*Bancroft-Whitney v. Glen,*
   411 P.2d 921 (Cal. 1966) .................................................................12

*Bank of the West v. Superior Court,*
   2 Cal. 4th 1254 (1992).......................................................................43

*Calvao v. Superior Court,*
   201 Cal. App. 3d 921 (1988).............................................................11

412879.01

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.,*
  35 Cal. 3d 197 (1983)...............................................................10, 14, 15

*Crosstalk Products v. Jacobson,*
  65 Cal. App. 4th 631 (1998)..............................................................42

*Cubic Corp. v. Marty,*
  185 Cal. App. 3d 438 (1986)........................................................20, 21

*Daniel Orifice Fitting Co. v. Whalen,*
  198 Cal. App. 2d 791 (1962)...............................................................12

*Discover Bank v. Superior Court,*
  36 Cal. 4th 148 (2005)...............................................................20, 34

*GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs, Inc.,*
  83 Cal. App. 4th 409 (2000), overruled on other grounds by
  *Reeves v. Hanlon,* 33 Cal. 4th 1140 (2004).................................*passim*

*Goddard v. S. Bay Union High Sch. Dist.,*
  79 Cal. App. 3d 98 (1978)..................................................................19

*Gosnell v. Lloyd,*
  215 Cal. 244 (1932)............................................................................14

*Graham v. Scissor-Tail, Inc.,*
  28 Cal. 3d 807 (1981)...............................................19, 20, 21, 32, 34

*Gray v. Zurich Ins. Co.,*
  65 Cal. 2d 263 (1966)..................................................................31, 32

*Hayward Union Etc. School Dist. v. Madrid,*
  234 Cal. App. 2d 100 (1965)..............................................................14

*Hayter Trucking, Inc. v. Shell W. E & P, Inc.,*
  18 Cal. App. 4th 1 (1993)...........................................................22. 30

*JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.,*
  115 Cal. App. 4th 168 (2004)............................................................17

*Lynch v. Cruttenden & Co.,*
  18 Cal. App. 4th 802 (1993)..............................................................14

[PUBLIC REDACTED] BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. CV 04-09049 SGL (RNBx)

412879.01

*Maglica v. Maglica,*
    66 Cal. App. 4th 442 (1998)................................................................14, 16

*Mayhew v. Benninghoff,*
    53 Cal. App. 4th 1365 (1997)...................................................................19

*McBride v. Boughton,*
    123 Cal. App. 4th 379 (2004)...................................................................41

*McKell v. Washington Mut., Inc.,*
    142 Cal. App. 4th 1457 (2006).................................................................41

*Mirpad, LLC v. Cal. Ins. Guarantee Ass'n,*
    132 Cal. App. 4 th 1058 (2005)................................................................23

*Montrose Chem. Corp. v. Admiral Ins. Co.,*
    10 Cal. 4th 645 (1995)............................................................................26

*Neal v. State Farm Ins. Co.,*
    188 Cal. App. 2d 690 (1961)...............................................................19, 20

*Oakland Raiders v. Nat'l Football League,*
    131 Cal. App. 4th 621 (2005)..............................................................14, 16

*Odorizzi v. Bloomfield School Dist.,*
    246 Cal. App. 2d 123 (1966)....................................................................11

*Pac. Gas & Elec. Co. v. G.W. Thomas Drayage
    & Rigging Co.,*
    69 Cal. 2d 33 (1968)...........................................................................18, 19

*Parsons v. Bristol Dev. Co.,*
    62 Cal. 2d 861 (1965).............................................................................18

*People v. Shelton,*
    37 Cal. 4th 759 (2006)............................................................................19

*People ex rel Lockyer v. R.J. Reynolds Tobacco Co.,*
    116 Cal. App. 4th 1253 (2004)..................................................................30

vii

412879.01

*Powerline Oil Co. v. Superior Court,*
  37 Cal. 4th 377 (2005).................................................................19

*Selby v. Battley,*
  149 Cal. App. 2d 659 (1957)........................................................38

*S. Cal. Edison Co. v. Superior Court,*
  37 Cal. App. 4th 839 (1995)....................................................26, 31

*S. Pac. Transp. Co. v. Santa Fe Pac. Pipelines, Inc.,*
  74 Cal. App. 4th 1232 (1999).......................................................25

*Steven v. Fid. & Cas. Co.,*
  58 Cal. 2d 862 (1962).................................................................32

*Vai v. Bank of America,*
  56 Cal. 2d 329 (1968).................................................................14

*Wolf v. Superior Court,*
  107 Cal. App. 4th 25 (2003)....................................................16, 17

*Wolf v. Superior Court,*
  114 Cal. App. 4th 1343 (2004)......................................................18

*Worldvision Enter., Inc. v. Am. Broad. Companies,*
  142 Cal. App. 3d 589 (1983)....................................................13, 14

**FEDERAL STATUTES**

17 U.S.C. § 101.............................................................................35

17 U.S.C. § 102.............................................................................25

17 U.S.C. § 204(a).....................................................................35, 40

17 U.S.C. § 501(b).........................................................................35

35 U.S.C. § 101.............................................................................23

35 U.S.C. § 102.............................................................................24

viii

412879.01

Fed. R. Civ. P. 56(c) ............................................................................8

Fed. R. Civ. P. 56(d) ....................................................2, 10, 18, 41

## STATE STATUTES

Cal. Civil Code § 1640 ....................................................................39

Cal. Civil Code § 1641 ....................................................................24

Cal. Civil Code § 1644 ................................................................22, 30

Cal. Civil Code § 1645 ....................................................................24

Cal. Civil Code § 1647 ................................................................19, 26

Cal. Civil Code § 1648 ................................................................23, 26

Cal. Civil Code § 1649 ................................................................26, 28

Cal. Civil Code § 1654 ................................................................19, 28

Cal. Civil Code § 1689 ....................................................................40

Cal. Civil Code § 3399 ....................................................................40

Cal. Labor Code § 2870 ....................................................................39

Cal. Labor Code § 2872 ....................................................................39

Cal. Penal Code § 641.3(a) ..........................................................42, 43

[PUBLIC REDACTED] BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. CV 04-09049 SGL (RNBx)

412879.01

1

## OTHER AUTHORITIES

2

1 B.E. Witkin, *Summary of California Law*, Contracts § 749
3  (10th ed. 2007) ................................................................................27

4

American Heritage Dictionary (4th ed. 2006) ......................................22, 29, 30, 33
5

6  Cal. Prac. Guide Employment Litigation Ch. 14-B..................................................11

7

Eskridge & Frickey, *Legislation* 637 (2d ed. 1995) ...............................................33
8

9  Merriam-Webster's Third New Int'l Dictionary (1986)...........................................35

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PUBLIC REDACTED] BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. CV 04-09049 SGL (RNBx)

412879.01

## NOTICE OF MOTION AND MOTION

CARTER BRYANT HEREBY GIVES NOTICE to all parties and their attorneys of record that on April 23, 2008, at 10:00 a.m., or as soon thereafter as counsel may be heard in the above-captioned Court, located at 3470 Twelfth Street in Riverside, California, he will, and hereby does, move this Court for partial summary judgment on Mattel Inc.'s claims against him, as set forth in the accompanying memorandum of points and authorities and proposed order. Specifically, Bryant moves for summary judgment on the following claims (set forth in Mattel's Second Amended Answer and Counterclaims in Case No. 05-2727 ("AC") and Mattel's Complaint against Bryant in Case No. 04-9059 ("MC")) in their entirety: Copyright Infringement (AC 1), Breach of Fiduciary Duty (AC 7, MC 2), Unjust Enrichment (MC 4), Conversion (AC 11, MC 5), Unfair Competition (AC 12), and Declaratory Relief (AC 13). Bryant also moves for summary judgment on Mattel's claims for Breach of Contract (AC 5, MC 1), Copyright Infringement (AC 1), Breach of Fiduciary Duty (AC 7, MC 2), Unjust Enrichment (MC 4), Conversion (AC 11, MC 5), Unfair Competition (AC 12), and Declaratory Relief (AC 13), as each claim relies entirely on Mattel's alleged ownership of Bryant's Bratz idea, sketches, Bratz sketches or other material, or any copyright therein.[1]

Bryant's motion is brought under Federal Rule of Civil Procedure 56 and relevant case law, on the basis that there is no disputed issue of material fact, and summary judgment is appropriate as a matter of law, with respect to the claims listed above. The motion is based upon the attached memorandum of points and

---

[1] Bryant seeks entry of partial summary judgment as to each of these claims. However, to the extent that the Court determines that any of these claims does not depend entirely on Mattel's alleged ownership of Bryant's Bratz idea, sketches, or other material, Bryant in the alternative moves the Court for an order under Fed. R. Civ. P. 56(d) establishing that Mattel does not have any such right of ownership. Bryant also requests similar relief as to any other claim or issue that the Court might determine to survive this motion for summary judgment to any degree.

412879.01

1   authorities, including those portions of argument joined by reference from the

2   MGA parties' memorandum of points and authorities in support of their separate

3   motion for partial summary judgment; Bryant's separate statement of undisputed

4   facts filed herewith, and certain undisputed facts set forth in the MGA parties'

5   separate statement of undisputed facts (to the extent necessary to the arguments in

6   which Bryant is joining); the Declaration of Christa M. Anderson filed herewith;

7   the pleadings, records, and papers on file in this action; and such argument and

8   evidence as may be presented to the Court in further related filings or at the

9   hearing on the Motion.

10

11              **STATEMENT OF LOCAL RULE 7-3 COMPLIANCE**

12          The parties met and conferring regarding this motion on dates including

13   February 20, 2008.

14

15                                      Respectfully submitted,

16   Dated:  March 7, 2008              KEKER & VAN NEST, LLP

17

18

19                              By:   /s/ Christa M. Anderson
                                      CHRISTA M. ANDERSON
20                                    Attorney for Plaintiff
                                      CARTER BRYANT

21

22

23

24

25

26

27

28

[PUBLIC REDACTED] BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. CV 04-09049 SGL (RNBx)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

As part of Mattel's scorched-earth campaign to destroy Bratz through litigation (after years of defeat in the marketplace), Mattel has accused Carter Bryant of breaching duties that he never had and of stealing from Mattel what always belonged to Bryant.  No evidence can support such claims.  Bryant was never a fiduciary of Mattel, and no contract gave Mattel any rights to Bratz.  In addition, Mattel has filed a tangle of overlapping, duplicative claims that must be rejected in large part as preempted, untimely, and otherwise legally defective. Bryant should not be forced to endure a trial on any of these deficient claims. Accordingly, he brings this motion for partial summary judgment on those Phase I claims as to which the undisputed material facts dictate a judgment in Bryant's favor.

Bryant will disprove the rest of Mattel's false allegations at trial, but the law and undisputed evidence in this case require a grant of partial summary judgment in Bryant's favor on the following matters:

*First*, Mattel's claim for breach of fiduciary duty fails in its entirety because Bryant was never a fiduciary of Mattel, either by contract or as a result of his position within the company.  The undisputed facts establish that Bryant was an ordinary, low-level Mattel employee (like many other creative artists at the company), who held no management role or discretionary authority over Mattel's business, and whose adhesive written contract with the company did not create any fiduciary obligations.  As such, Bryant was not subject to any fiduciary duty to Mattel.

*Second*, the undisputed facts establish that no contract between Bryant and Mattel gives Mattel any valid claim of ownership over Bryant's Bratz idea or other Bratz work (namely his sketches and any related documents, as the Bratz *doll* line evolved only later, with the help of many other people).  The only contract Bryant

1

1  signed with Mattel was a non-negotiable form document that Mattel drafted and

2  required Bryant to sign when he began work at Mattel:  Mattel's Employee

3  Confidential Information and Inventions Agreement ("Employee Agreement").

4  The terms of that contract do not encompass any part of Bratz even under ordinary

5  rules of contract interpretation (especially because ambiguities must be resolved

6  against Mattel, the drafter), let alone the more stringent requirements applicable to

7  a contract of adhesion.  The two other documents on which Mattel may intend to

8  rely (Mattel's Conflict of Interest Questionnaire and Proprietary Information

9  Checkout) are not valid contracts and, even if they were, they would assign Mattel

10  no rights to Bratz.  Accordingly, summary judgment for Bryant is proper as to

11  Mattel's claims for Breach of Contract (AC 5, MC 1), Copyright Infringement (AC

12  1), Breach of Fiduciary Duty (AC 7, MC 2), Unjust Enrichment (MC 4),

13  Conversion (AC 11, MC 5), Unfair Competition (AC 12), and Declaratory Relief

14  (AC 13), as each claim depends on Mattel's alleged ownership of Bryant's Bratz

15  idea, Bratz sketches or other material, or any copyright therein.

16      *Third*, Mattel's claim for Unjust Enrichment (MC 4) fails as a matter of law

17  because unjust enrichment is not a valid cause of action under California law.

18      *Finally*, Bryant joins in the MGA parties' arguments, set forth in their

19  separate summary judgment motion, that (1) the Copyright Act preempts Mattel's

20  Conversion (AC 11, MC 5) and Unfair Competition (AC 12) claims, as they

21  concern Bryant's Bratz idea and Bratz material, and any copyright therein, (2)

22  Mattel's Unfair Competition (AC 12) claims fail as a matter of law (for the reasons

23  explained below, including both certain arguments stated by MGA in which Bryant

24  joins and argument stated separately herein), and (3) Mattel's claims for Copyright

25  Infringement (AC 1), Conversion (AC 11, MC 5), common law Unfair

26  Competition (AC 12), and Declaratory Relief (AC 13) are all untimely.

27

28

2

412879.01

## II.   BACKGROUND FACTS[2]

As Carter Bryant will prove at trial, this battle of the dollhouse titans had a humble start.  In 1997, Bryant was a young artist who had been working for a couple of years as a junior designer in Mattel's mainline Barbie division.  In that position, Bryant drew fashions for dolls, alongside many other such artist employees.  While the work was steady, Bryant had limited prospects for creative freedom in his job.

By the end of 1997, Bryant decided to return to live with his parents in Missouri, where he sought to pursue a freelance artist career.  During his time in 1998 as a freelance artist, Bryant sketched a number of freelance ideas (including sketches for greeting cards and dolls), and did freelance work for the Ashton Drake galleries.  One of the independent creative ideas Bryant came up with and sketched during his time as a freelancer was an idea for a group of four fashionable characters—Hallidae, Lupe, Jade, and Zoë—intended to communicate a particular youthful attitude, that he called Bratz.  The characters were inspired by a number of ideas and images in the public domain, including (among other things) teenagers Bryant had observed and prominent ad campaigns by Steve Madden and Coca-Cola.  At the time, nothing came of that idea, nor many of the other ideas Bryant sketched in his freelance role.

By the end of 1998, after unsuccessful attempts to market his freelancing ideas, Bryant's money ran out, and he returned to California to rejoin the ranks of Mattel's doll fashion designers.  Almost two years later, Bryant's idea and sketches provided the inspiration for the Bratz doll line developed by MGA—a doll line that has supplanted Barbie as the premiere fashion doll enjoyed by youth around the

---

[2] Many of the facts provided in this Background Facts section are not material to determination of the motion and, instead, are provided as background.  Those undisputed facts cited in support of this motion are identified in the Separate Statement of Undisputed Material Facts filed herewith and are cited here as "SUF ¶ __"  Bryant also relies upon and refers to certain undisputed facts set forth in the MGA parties' separate statement ("MGA SUF").

3

[PUBLIC REDACTED] BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. CV 04-09049 SGL (RNBx)

412879.01

1  world.

2      While Mattel disputes many facts surrounding the timing of Bryant's idea

3  and the history of Bratz, the evidence permits no dispute over the facts material to

4  this motion.  In particular, and as set forth below, Mattel cannot dispute the

5  essential facts surrounding Bryant's return to work at Mattel in 1999, the

6  paperwork Mattel made him sign, and the nature of his duties at Mattel.  Together

7  these undisputed facts (discussed within the section below) require the entry of

8  partial summary judgment against Mattel on numerous claims.

9  **A.**    **Bryant returned to Mattel in 1999 and signed Mattel's mandatory "on-boarding" paperwork.**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

412879.01

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

412879.01

**B.** **Mattel did nothing to ensure that Bryant understood the terms of the Employee Agreement.**

Mattel did nothing to ensure that employees understood that they were signing contracts which (according to Mattel) potentially surrendered their entire artistic lives to the company. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

**C.** **Bryant worked at Mattel as a low-level designer, without any managerial or real discretionary authority.**

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████

[PUBLIC REDACTED] BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. CV 04-09049 SGL (RNBx)

412879.01

1　████████████████████████████████████████████████

2　█████████████████████████████████████████████████████

3　████████████████████████████████████████████████████

4　████████████████████████████████████████████████

5　█████████████████████████████████████████████████

6　█████████████████████████████████████████████

7　███████████████████████████████████

8　████████████████████████████████████████████████

9　██████████████████████████████████████████████████████

10　██████████████████████████████████████████████████████

11　██████████████████████████████████████████████████████

12　█████████████████████████████████████████████████████

13　██████████████████████████████████████████████████████

14　███████████████████

15　**D.**　**Mattel's course of conduct demonstrates that Mattel did not assert any ownership rights to employees' moonlighting or personal portfolio work—contrary to Mattel's litigation position now.**

16

17　████████████████████████████████████████████████████

18　████████████████████████████████████████████████

19　████████████████████████████████████████████████

20　████████████████████████████████████████████████

21　█████████████████████████████████████████████████████

22　████████████████████████████████████████████████

23　██████████████████████████████████████████████

24　█████████████████████████████████████████████████████

25　████████████████████████████████████████████████

26　No evidence suggests that Mattel established any routines or processes to

27　identify, investigate, punish or prevent this "moonlighting" work. ██████████

28　████████████████████████████████████████████████████

1 ███████████████████████████████████

2 ███████████████████████████████████

3 █████████████████████████████████████████

4 ████████████████████████████████████████

5 ██████████████████████████████████████

6 ████████████████████████████████████

**E.**      **Bryant left Mattel, signing Mattel's mandatory "exit" paperwork.**

Bryant left Mattel in October 2000, after voluntarily giving two weeks notice, to pursue his Bratz idea as an independent freelancer working with MGA.

10 ██████████████████████████████████████

11 ███████████████████████████████████████

12 ████████████████████████████████████████

13 ████████████████████████████████████████

14 ████████████████████████

Years later, after its attempts to compete with Bratz in the marketplace failed, Mattel turned to litigation.[4]

### III.   ARGUMENT

The law and undisputed evidence in this case do not require a trial on most of Mattel's claims against Bryant.  Partial summary judgment in Bryant's favor is proper because "there is no genuine issue as to any material fact and [Bryant] is entitled to judgment as a matter of law" on the issues and claims set forth below. Fed. R. Civ. P. 56(c).

First, Mattel's claim for breach of fiduciary duty fails in its entirety because Bryant was an ordinary, low-level Mattel employee who was never a fiduciary of Mattel, either by contract or as a result of his position within the company, and

---

[4] MGA's summary judgment brief summarizes the long history of this litigation and of facts related to Bryant's statute of limitations arguments, showing Mattel's early notice of its claims.  Bryant incorporates MGA's explanation of those facts here by reference, as though fully set forth herein.

8

thus owed no fiduciary duty to Mattel.

Second, no contract between Bryant and Mattel gives Mattel any valid claim of ownership over Bryant's Bratz idea or his sketches and related work. The undisputed evidence and California principles of contract interpretation establish the following:

- The only contract Bryant signed with Mattel was a non-negotiable form document that Mattel drafted and required Bryant to sign when he began work at Mattel: Mattel's Employee Confidentiality and Employee Agreement (the "Employee Agreement");

- The intrinsic and extrinsic evidence show that the terms of the Employee Agreement do not give Mattel any ownership of Bratz, even under ordinary rules of contract interpretation (especially because ambiguities must be resolved against Mattel, who drafted the agreement through its lawyers);

- Even if the Employee Agreement could otherwise give Mattel rights to Bratz (which it does not), it cannot do so because it is an adhesion contract that must be interpreted to avoid results that are either outside an employee's reasonable expectations or substantively unconscionable;

- Additionally, the Employee Agreement cannot transfer ownership of any copyright in Bratz to Mattel because it does not satisfy Section 204(a) of the Copyright Act, which requires a clear, unequivocal and negotiated written instrument to transfer copyright ownership; and

- Mattel's Conflict of Interest Questionnaire and Proprietary Information Checkout are not valid contracts, and even if they were they would assign Mattel no rights to Bratz.

Accordingly, summary judgment for Bryant is proper as to Mattel's claims for Breach of Contract (AC 5, MC 1), Copyright Infringement (AC 1), Breach of Fiduciary Duty (AC 7, MC 2), Unjust Enrichment (MC 4), Conversion (AC 11, MC 5), Unfair Competition (AC 12), and Declaratory Relief (AC 13) as each claim relies on Mattel's alleged ownership of Bryant's Bratz idea, Bratz work, or any copyright therein.

In addition, Mattel's claim for unjust enrichment fails as a matter of law because unjust enrichment is not a valid separate cause of action under California law.

9

412879.01

1       Finally, Bryant joins in the MGA parties' arguments, set forth in their

2 separate summary judgment motion, that (1) the Copyright Act preempts Mattel's

3 Conversion (AC 11, MC 5) and Unfair Competition (AC 12) claims, as they

4 concern Bryant's Bratz idea, Bratz work, and any copyright therein, (2) Mattel's

5 Unfair Competition (AC 12) claims fail as a matter of law as set forth below, and

6 (3) Mattel's claims for Copyright Infringement (AC 1), Conversion (AC 11, MC

7 5), common law Unfair Competition (AC 12), and Declaratory Relief (AC 13) are

8 all untimely.

9 **A.**    **Mattel's breach of fiduciary duty claim fails because Bryant did not**

10         **enter into a fiduciary relationship with Mattel as a matter of law.**

11       The Court should reject Mattel's attempt to create a fiduciary relationship

12 where the undisputed facts establish a straightforward employment relationship,

13 which is insufficient to establish a fiduciary relationship as a matter of California

14 law.  In California, there are two types of fiduciary relationships, those imposed by

15 law and those undertaken by agreement.  *Comm. on Children's Television, Inc. v.*

16 *Gen. Foods Corp.*, 35 Cal. 3d 197, 222 (1983); *GAB Bus. Servs., Inc. v. Lindsey &*

17 *Newsom Claim Services, Inc.*, 83 Cal.App.4th 409, 416 (2000) ("*GAB Business*"),

18 *overruled on other grounds by Reeves v. Hanlon,* 33 Cal. 4th 1140 (2004).

19 Because the undisputed facts show that Bryant was nothing more than Mattel's

20 employee, Mattel cannot demonstrate a fiduciary relationship should be imposed

21 by law or was entered into by agreement.

22       *First,* Mattel cannot satisfy the established criteria of the leading California

23 case, *GAB Business,* which held that in order for an employee of a corporation to

24 have a fiduciary duty imposed by law, the employee must be an officer of the

25 company, must participate in management of the company, ***and*** must have

26 discretionary authority in his managerial capacity.  *GAB Bus.*, 83 Cal. App. 4th at

27 420-21.  Here, because Bryant was not an officer of Mattel, and did not participate

28 in Mattel's management, under California law, the court must conclude that the

1  law will not impose a fiduciary relationship between Bryant and Mattel.

2  *Second,* Mattel cannot avoid *GAB Business* (and thus summary judgment) by

3  simply asserting that Bryant entered into a confidential relationship as a factual

4  matter.  To the contrary, California law requires more than the mere assertion of

5  the sharing of confidences or the placement of trust in another.  Indeed, California

6  courts consistently grant summary judgment where a party does not set forth facts

7  establishing the hallmarks of an agreed upon confidential relationship:  the

8  *voluntary and knowing* acceptance of trust that creates a *legally recognized*

9  fiduciary relationship, placing the fiduciary in a superior position of control over

10 the dependent party.  *City Solutions, Inc. v. Clear Channel Communications,* Inc.,

11 201 F. Supp. 2d 1048, 1050-51 (N.D. Cal. 2002).  Because Mattel can point to no

12 facts which establish the hallmarks of such a "confidential relationship," the Court

13 should grant summary judgment as to Mattel's claim for breach of fiduciary duty.

14     **1.**    **In California, an employee must be an officer, participate in the management of the company, and exercise discretionary authority**
15             **for a fiduciary relationship to be imposed by law.**

16     As a threshold matter, "[i]n general, an employment contract does not

17 indicate the existence of a fiduciary relationship."  *Calvao v. Superior Court,* 201

18 Cal. App. 3d 921, 923 (1988); *see also Amid v. Hawthorne Community Med.*

19 *Group,* 212 Cal. App. 3d 1383, 1391 (1989); Cal. Prac. Guide Employment

20 Litigation Ch. 14-B ("Employees who are not officers or directors are generally not

21 considered to be fiduciaries"); *Odorizzi v. Bloomfield School Dist.,* 246 Cal. App.

22 2d 123, 129 (1966) (observing that "no presumption of confidential relationship

23 arises from the bare fact that the parties to a contract are employer and employee

24 ").[5]  Indeed, under California law, an employee owes a fiduciary duty to his

25 employer only in limited circumstances, when he is "an *officer* who participates in

---

[5] In contrast, the duty of loyalty is a significantly lesser duty imposed on California employees in certain circumstances.  Although Mattel has asserted a claim for breach of loyalty (a claim that Bryant denies and will address at trial), Mattel nevertheless attempts to saddle Bryant—an ordinary employee—with the more onerous duties of a fiduciary.

11

412879.01

1   management of the corporation, exercising some discretionary authority." *GAB*

2   *Bus.*, 83 Cal. App. 4th at 420-21 (emphasis added).  In *GAB Business*, the court

3   held that a regional vice president, who reported directly to the president of GAB,

4   and who was responsible for the overall regional planning, sales, quality control,

5   budgeting and the performance of the region, owed GAB a fiduciary duty as a

6   matter of law.  *Id.* at 422.  Relying on a long-line of California authority in which

7   officers of corporations were found to owe the corporation fiduciary duties, the

8   court reasoned that, although an officer need not exercise control of the

9   corporation, he must at least participate in the management of the corporation *and*

10  have some discretionary authority in order to warrant legally imposing a fiduciary

11  relationship.  *Id.* at 420.[6]

12      Federal courts, in determining whether an employee owed its employer a

13  fiduciary duty under California law, have consistently followed the test set forth in

14  *GAB Business.*  For example, in *Enreach Tech., Inc. v. Embedded Internet*

15  *Solutions, Inc.*, 403 F. Supp. 2d 968 (N.D. Cal. 2005), the court denied an

16  employer's motion for summary judgment on a claim of fiduciary duty, because

17  there was no evidence that the chief software architect in question was an officer of

18  the company or that he participated in the software company's management such

19  that he would owe the company a fiduciary duty.  The court made this finding

20  despite evidence that the employee managed a team of twenty software engineers

21  and held significant responsibilities within the company.  *Id.* at 976.

22      Here, similarly, the undisputed facts show that, as a matter of law, Mattel

23  cannot satisfy the criteria set forth in *GAB Business.* ███████████████████

24  ████████████████████████████████████████████████████████

25  ████████████████████████████████████████████

26

27  _____

    [6]   *See Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327 (1966) (president of company owed
28  fiduciary duty); *Daniel Orifice Fitting Co. v. Whalen*, 198 Cal. App. 2d 791 (1962)
    (officer who participated in management owed fiduciary duty).

412879.01

1 ████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 █████████████████████████████████

## 2. Based on the undisputed facts, Bryant did not enter into a confidential relationship with Mattel.

Tacitly acknowledging that Bryant does not owe Mattel a fiduciary duty imposed by law, Mattel may seek to avoid summary judgment by asserting that Bryant held a "position of trust" and had access to "highly confidential information" and thus owed Mattel fiduciary duties. The undisputed facts, however, demonstrate that Mattel and Bryant never left the ambit of a straightforward employer-employee relationship, and thus there is no triable issue of fact for a jury to preclude summary judgment on Mattel's claim.[8]

Although a party may agree to undertake a fiduciary duty by entering into a "confidential relationship" with another party, *GAB Bus.*, 83 Cal. App. 4th at 417, "[a] confidential relationship arises only 'where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence.'" *City*

---

[7] ████████████████████████████████████████, the court need not consider whether he participated in management with sufficient discretionary authority to justify imposing a fiduciary relationship as a matter of law. However, it is worth noting that the factors bearing on whether an employee "participated in management" are whether he held the title of officer; whether he made decisions and commitments on behalf of the company; and whether he had final responsibility for matters involving the supervision and management of others, including work assignments, discipline, hiring, compensation adjustments, and terminations. Applying these factors here, the undisputed evidence supports only a single inference: that Bryant did not participate in the management of Mattel. *See* SUF ¶¶ 28-36.

[8] Although the question of whether a confidential relationship exists involves evaluation of facts, *City Solutions*, 201 F.Supp. 2d at 1051, courts may grant summary judgment on a breach of fiduciary duty claim when, as here, "the facts, taken in the light most favorable to plaintiff, make it perfectly clear the parties' dealings fall into a category of relationships not susceptible to fiduciary obligations and that the parties have not, by their actions, taken themselves out of its ambit." *Id.*; *see also, Worldvision Enterprises., Inc. v. Am. Broad. Companies*, 142 Cal. App. 3d 589, 595 (1983).

13

412879.01

*Solutions*, 201 F. Supp. 2d at 1050 (citations omitted).  "A 'confidential relationship' imposing fiduciary duties does not arise every time two parties share confidences with one another."  *Worldvision Enterprises*, 142 Cal. App. 3d at 595. Courts do not lightly impose fiduciary duties where no legally recognized duty exists because such duties are onerous, requiring the fiduciary to set the interests of the beneficiary ahead of his own.  *See Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 222 (1983) ("*Children's Television*") (fiduciary must "giv[e] priority to the best interest of the beneficiary"); *see GAB Bus.*, 83 Cal. App. 4th at 416 (listing legally recognized fiduciary relationships); *Oakland Raiders v. Nat'l Football League*, 131 Cal.App.4th 621, 632-33 (2005) (same).

Indeed, in addition to the establishment of trust and confidence, there must also be a separate "act creating or establishing a fiduciary relationship known to law."  *Id.* (citing *Hayward Union Etc. School Dist. v. Madrid*, 234 Cal. App. 2d 100, 124 (1965); *Gosnell v. Lloyd*, 215 Cal. 244, 254 (1932)); *see also Maglica v. Maglica*, 66 Cal. App. 4th 442, 448 (1998) (absent a legally-recognized relationship, "there can be no fiduciary relationship no matter how 'confidential' a relationship" exists between the parties).  Moreover, the essence of a "confidential relationship" is that the "parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party."  *City Solutions,* 210 F. Supp. 2d at 1050; *see also Vai v. Bank of America*, 56 Cal.2d 329, 338 (1968) ("The key factor in the existence of a fiduciary relationship lies in control by a person over the property of another."); *Lynch v. Cruttenden & Co.*, 18 Cal. App. 4th 802, 809 (1993) (the person in whom confidence is reposed obtains control over the other person's affairs).

Here, Mattel cannot point to a triable issue of fact as to the criteria required by courts to establish a "confidential relationship."  First, the undisputed facts show that Bryant did not *knowingly* or *voluntarily* agree to enter into a confidential

14

1   relationship with Mattel.  *See Comm. on Children's Television*, 35 Cal. 3d at 221

2   (party must knowingly agree to act as a fiduciary).  ████████████████

3   ████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████

7   ████████████████

8        Presumably Mattel will rely upon language in the Employee Agreement

9   stating that Mattel ████████████████████████████████████████████

10  ████████████████████████████████████████████████████

11  ████████████████   However, this is nothing more than evidence that the

12  parties to the contract placed trust and confidence in each other, a fact which

13  numerous courts have held to be insufficient to give rise to a fiduciary relationship.

14  *See City Solutions,* 201 F. Supp. 2d at 1050; *Worldvision Enterprises,* 142

15  Cal.App.3d at 595.  Indeed, as discussed above, the Employee Agreement was an

16  adhesive form agreement, ████████████████████████████████

17  ████████████████████████████████████████████████

18  ████████████████████████████████   Mattel cannot credibly claim that it

19  creates a confidential relationship giving rise to a fiduciary relationship with every

20  employee it hires by ████████████████████████████████████

21  ████████████████████████████████████████   *Cf. GAB Bus.,* 83 Cal.

22  App. 4th at 420 ("After all, a corporation cannot make a mail clerk its fiduciary by

23  simply bestowing upon the clerk the title of officer.").

24        Moreover, Mattel cannot point to any act creating a legally recognized

25  fiduciary relationship.  As discussed above, a confidential relationship does not

26  arise whenever two parties share confidence with one another—there must be an

27  act creating a fiduciary relationship known to law.  For example, in *Maglica v.*

28  *Maglica,* 66 Cal. App. 4th 442, 448 (1998), the court held that parties living

15

412879.01

1  together as husband and wife, who were not legally married, could not claim a

2  fiduciary relationship based on a confidential relationship since the relationship, no

3  matter how confidential, could not meet the requirements of a fiduciary

4  relationship known to law (legal marriage).  Similarly, in *Wolf v. Superior Court*,

5  107 Cal. App. 4th 25, (2003), the court held various contractual rights in a contract

6  between a novelist and a movie studio, such as the right to contingent

7  compensation, profit sharing rights, and rights to an accounting, did not create a

8  fiduciary relationship rather than an arms-length transaction.  *Id.* at 30-33.

9        Further, there is no evidence that Bryant was placed in a position of control

10  over Mattel's property or affairs.  As discussed above, ███████████████

11  ████████████████████████████████████████████

12  ████████████████████████  *See Oakland Raiders*, 131 Cal. App. 4th at

13  633 (granting summary judgment and holding that no confidential relationship

14  exists where one party is not placed in superior position to other party); *see also*

15  *City Solutions*, 201 F. Supp. 2d at 1049 (granting summary judgment to defendant

16  on breach of fiduciary duty claim because, among other things, the contract

17  demonstrated that defendant did not have balance of power over the other);

18  *Maglica*, 66 Cal. App. 4th at 488 (no matter how "confidential" a relationship

19  between an unmarried, cohabiting couple, without the entrustment of property

20  there can be no fiduciary relationship).

21        Lastly, the existence of the contracts governing the relationship between

22  Bryant and Mattel precludes a finding that the parties entered into a separate

23  "confidential relationship."  As a general rule, courts have found that no fiduciary

24  duty exists "where other legal relationships clearly existed between parties which

25  covered the transaction in suit and which were inconsistent with the existence of

26  fiduciary duty."  *Oakland Raiders*, 131 Cal. App. 4th at 634 (internal quotation

27  marks omitted); *see also City Solutions*, 201 F. Supp. 2d at 1049 (existence of

28  confidentiality agreement precludes finding of breach of fiduciary duty not

16

412879.01

1    explicitly required by the agreement); *Wolf v. Superior Court,* 107 Cal. App. 4th

2    25, 31 (2003) (reposing trust and confidence in the party to a contract does not

3    create a fiduciary relationship but rather affords redress for breach of contract).

4          Thus, here, where the Employee Agreement ████████████████

5    ████████████████████████████████████████████████████████████████

6    ██████  the court should reject Mattel's attempt to convert its breach of contract

7    claim into a tort claim, merely in order to obtain additional damages. *See Rita*

8    *Med. Systems, Inc. v. Resect Med., Inc.,* No. C 05-03291, 2007 WL 161049 (N.D.

9    Cal. Jan. 17, 2007) (granting summary judgment as to employer's claim of breach

10   of fiduciary duty where the employment contract between the parties did not

11   "clearly indicate that [the employee] had a fiduciary duty" but did create other

12   legal duties, such as the duty to keep trade secrets confidential, which covered all

13   the theories of breach of fiduciary duty); *see also JRS Prods., Inc. v. Matsushita*

14   *Elec. Corp. of Am.,* 115 Cal. App. 4th 168, 183 (2004).[9]

15         Because Bryant owed Mattel no fiduciary duty, he cannot have breached any

16   such duty.  Accordingly, he is entitled to summary judgment on Mattel's claims for

17   Breach of Fiduciary Duty (AC 7, MC 2), in their entirety.

18   **B.    No contract gives Mattel any ownership of Bratz under California law,**
     **regardless of when Bryant had the idea.**

19

20         Bryant is also entitled to summary judgment in his favor on Mattel's claims

21   of breach of contract, copyright infringement, and related claims which depend on

22   Mattel's alleged ownership of Bryant's Bratz idea, Bratz sketches, or any copyright

23

24   [9] Although Mattel alleged that Bryant was an agent of Mattel, the undisputed facts show

25   that Bryant was Mattel's employee, not its agent. *See supra,* note 9.  To the extent Mattel
     relies upon a theory of agency, it is an improper attempt to avoid the holding of *GAB*

26   *Business* and therefore should be rejected. *See GAB Business,* 83 Cal. App. 4th at 420-21
     (California law does not impose fiduciary duty on non-officer employees that do not

27   "participate in management."); *see also, Rita Med. Sys., Inc. v. Resect Med. Inc.,* C 05-
     03291 WHA, 2007 WL 161049, at *5 (N.D. Cal. Jan. 17, 2007) (rejecting argument that

28   employees with managerial authority owe fiduciary duties as agents as it "extends
     fiduciary duties much too far").

therein.[10]  Bryant maintains that he had the idea for Bratz while he was not working at Mattel, and did not violate any duties to Mattel.  However, even if Bryant had come up with the idea for Bratz and done his early artwork illustrating the concept while working at Mattel (which he did not), the undisputed facts prove that no contract gives Mattel any rights to Bratz.

> 1.  **California contract law requires the Court to consider extrinsic evidence of the parties' intentions in interpreting Mattel's paperwork, and to protect the weaker party to one-sided agreements.**

Under the basic California principles governing the interpretation of any contract between Bryant and Mattel, the Court must consider all available evidence of the parties' intent to determine whether the contract is reasonably susceptible to more than one interpretation.  *Parsons v. Bristol Dev. Co.*, 62 Cal. 2d 861; 865-66 (1965).  Even if contractual language appears unambiguous on its face, the Court must undertake this preliminary review of all credible evidence offered to prove the parties' intent.  *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39-40 (1968); *Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1351 & 1356 (2004).  "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.'"  *Pac. Gas & Elec.*, 69 Cal. 2d at 37 (citations omitted).  Thus, "'[t]he mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances

---

[10] Specifically, Mattel's lack of ownership of Bratz defeats each of the following claims: Breach of Contract (AC 5, MC 1), Copyright Infringement (AC 1), Breach of Fiduciary Duty (AC 7, MC 2), Unjust Enrichment (MC 4), Conversion (AC 11, MC 5), Unfair Competition (AC 12), and Declaratory Relief (AC 13).  These claims also fail for additional, independent reasons discussed in other sections of this brief.

18

1   under which the parties negotiated or entered into the contract; the object, nature

2   and subject matter of the contract; and the subsequent conduct of the parties.'"

3   *People v. Shelton,* 37 Cal. 4th 759, 767 (2006) (citations omitted); *Pacific Gas &*

4   *Elec. Co.,* 69 Cal. 2d at 39-40; Cal. Civil Code § 1647 ("A contract may be

5   explained by reference to the circumstances under which it was made, and the

6   matter to which it relates.").

7        Where a contract remains reasonably susceptible to two interpretations, even

8   taking into consideration the extrinsic evidence of the parties' understanding and

9   intent, the remaining conflict must be resolved against the drafter of the contract.

10  Logic and equity require that, where contract terms are uncertain, their language

11  must be read to limit the rights of the party who caused the uncertainty: the drafter

12  of the contract.  *Graham v. Scissor-Tail,* 28 Cal. 3d 807, 819-20, n. 16 (1981).; *see*

13  *also Powerline Oil Co. v. Superior Court,* 37 Cal. 4th 377, 391 (2005); Cal. Civil

14  Code § 1654 ("[T]he language of a contract should be interpreted most strongly

15  against the party who caused the uncertainty to exist.").  This doctrine of *contra*

16  *preferentem* applies with particular force to contracts of adhesion and contracts

17  prepared by one party's attorney.  *Badie v. Bank of America,* 67 Cal. App. 4th 779

18  (1998) (adhesion); *Neal v. State Farm Ins. Co.,* 188 Cal. App. 2d 690, 694 (1961)

19  (adhesion); *Mayhew v. Benninghoff,* 53 Cal. App. 4th 1365 (1997) (one party's

20  attorney).

21        Additional limitations apply to a contract of adhesion, in which "the party

22  with superior bargaining power permits the other party to adhere to the contract or

23  reject it, but does not permit an opportunity to bargain over its terms." *Goddard v.*

24  *S. Bay Union High Sch. Dist.,* 79 Cal. App. 3d 98, 105 (1978); *see also Graham v.*

25  *Scissor-Tail, Inc.,* 28 Cal. 3d 807, 817 (1981) (defining adhesion contract as "a

26  standardized contract, which, imposed and drafted by the party of superior

27  bargaining strength, relegates the subscribing party only the opportunity to adhere

28  to the contract or reject it" (quoting *Neal v. State Farm Ins. Co.,* 188 Cal. App. 2d

19

[PUBLIC REDACTED] BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. CV 04-09049 SGL (RNBx)

412879.01

690, 694 (1961)).  Because of this imbalance of power, even if a contract term is *not* ambiguous, courts impose two further limitations on contracts of adhesion:  (1) a provision that does not fall within the reasonable expectations of the adhering party will not be enforced against him; and (2) a contract or provision will be denied enforcement if considered in its context it is an unduly oppressive or unconscionable provision.  *Graham v. Scissor-Tail,* Inc., 28 Cal. 3d at 820; *Cubic Corp. v. Marty*, 185 Cal. App. 3d 438 (1986).  Unconscionability has "both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results."  *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 160 (2005) (quotations and citations omitted).  A contract of adhesion—by definition the result of oppressively unequal bargaining power—is necessarily procedurally unconscionable.  *Id.*  "Substantively unconscionable terms may take various forms but may generally be described as unfairly one-sided."  *Id.*  Thus, an adhesion contract must be read to avoid results that are either outside the reasonable expectations of the weaker party or results that are substantively unconscionable.

**2.    Bryant's contract with Mattel is a contract of adhesion, and any ambiguities must be interpreted in Bryant's favor.**

Under the principles outlined above, Mattel's Employee Agreement is a contract of adhesion.[11]  Even setting aside Mattel's indisputably superior position as Bryant's new employer, Mattel had vastly superior resources and power as compared to Bryant.  As described above, ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[11] Mattel's Questionnaire and Proprietary Information Checkout are not contracts binding on Bryant, as explained below.  To the extent that either document could conceivably be treated as a contract, however, it would also be a contract of adhesion for the same reasons explained here.  SUF ¶¶ 7, 15, 19.

20

[PUBLIC REDACTED] BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. CV 04-09049 SGL (RNBx)

412879.01



6  Given the adhesive nature of the Employee

7  Agreement, the doctrine of *contra preferentem* applies with special force, *Badie v.*

8  *Bank of America*, 67 Cal. App. 4th 779 (1998), and any interpretation is improper

9  if it leads to a result that is either outside of Bryant's reasonable expectations, or

10  oppressive and unfairly one-sided. *Graham*, 28 Cal. 3d at 820; *Cubic Corp. v.*

11  *Marty*, 185 Cal. App. 3d 438 (1986).

12  **3.  The Employee Agreement does not give Mattel rights to Bratz.**

13  **a.  "Inventions" under the Employee Agreement do not include Bratz.**

15  The Employee Agreement purports to give Mattel rights only to Bryant's

16  "inventions" while employed at the company, but the term "inventions" does not

17  encompass Bryant's Bratz idea, sketches, or other material.[12]  Although Mattel (in

18  hindsight) seeks to stretch the term to include any and all creative effort or ideas,

19  its ordinary meaning—and the meaning that must prevail here even if the term can

20  be considered ambiguous—is limited to technical, scientific discoveries and

---

[12] The Employee Agreement states:



[PUBLIC REDACTED] BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. CV 04-09049 SGL (RNBx)

412879.01

1   devices.  The express language of the Employee Agreement does not impose the

2   broad meaning Mattel now seeks.

3           **(i)**      **In ordinary English usage, and in the textual context**

**of the Employee Agreement, "inventions" do not**

4   **include an idea or sketches for doll characters.**

5        An "invention" is a useful device, method or process, resulting from

6   scientific or technical experimentation and discovery.  *See* American Heritage

7   Dictionary 4th ed. (2006) (defining invention as "A new device, method, or

8   process developed from study and experimentation: the phonograph, an invention

9   attributed to Thomas Edison.").  In this common definition, a lightbulb or a robot is

10  an invention; an idea or sketch of a fashion doll character (no matter how

11  artistically creative) is not.  Under California law, this ordinary meaning applies to

12  the Employee Agreement.  *Hayter Trucking, Inc. v. Shell Western E & P. Inc.*, 18

13  Cal. App. 4th 1, 15 (1993) ("Generally speaking, words in a contract are to be

14  construed according to their plain, ordinary, popular or legal meaning, as the case

15  may be."); Cal. Civil Code § 1644 (providing that "[t]he words of a contract are to

16  be understood in their ordinary and popular sense").

17       Moreover, Mattel's Employee Agreement defines "inventions" in a way that

18  reinforces this common meaning and is also consistent with the term's meaning

19  under United States patent law.  The Employee Agreement states that the word

20  ████████████████████████████████████████████████

21  ████████████████████████████████████████████████

22  ████████████████████████████████████████████████

23  ████████████████████████████████████████████████████

24  ████████████████████████████  *See* 35 U.S.C. § 101 (offering potential

25  patent protection to those who "invent[] or discover[] any new and useful process,

26  machine, manufacture, or composition of matter, or any new and useful

27  improvement thereof"). █████████████████████████████████

28  ████████████████████████████████████████████████████

412879.01

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4 ▮▮▮▮▮▮▮▮▮▮▮▮

5      Words in a contract, as in any other text, take their meaning from context.

6 Under California law, in keeping with traditional canons of interpretation, a word

7 of doubtful meaning should be read to fit conceptually with others grouped with it,

8 to preserve the overall good sense of the text and avoid broadening the meaning of

9 the contract beyond what the parties intended.  Although "most words, when

10 considered in isolation, may have more than one definition or usage," the

11 California Court of Appeals has explained that "in construing a contract the court's

12 function is not merely to import all of the possible definitions or even the broadest

13 definition, but to glean the meaning of the words *from the context and usage of*

14 *the words in the contract itself*."  *Mirpad, LLC v. Cal. Ins. Guarantee Ass'n*, 132

15 Cal. App. 4th 1058, 1069 (2005) (emphasis in original).  *See also* Cal. Civil Code §

16 1648 ("However broad may be the terms of a contract, it extends only to those

17 things concerning which it appears that the parties intended to contract."); Eskridge

18 & Frickey, *Legislation* 637 (2d ed. 1995) (discussing *noscitur a sociis* canon).

19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23      Further reinforcing this patent focus, the Employee Agreement ▮▮▮▮

24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27 ▮▮▮▮▮▮▮▮▮▮▮▮▮     *See* Section 102(g)(2) of the Patent Act

28 (35 U.S.C. § 102) ("In determining priority of invention … there shall be

23

1  considered not only the respective dates of *conception* and *reduction to practice* of

2  the invention, but also the reasonable diligence of one who was first to *conceive*

3  and last to *reduce to practice*") (emphasis added); Cal. Civil Code § 1645

4  (providing that technical words must ordinarily be given their technical meaning).

5        Likewise, the Employee Agreement's ████████████████████

6  ██████████████████████████████████████████████████████

7  ██████████████████████████████████████████████████████

8  ██████████████████████████████████████████████████████

9  ██████████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████

11 ██████████████████████████████████████████████████████

12 ██████████████████████████████████████████████████████

13 ██████████████████████████████████████████████████████

14 ████████████████████████████████████████████

15 ████████████████████████ a result that California law precludes.  Cal.

16 Civ. Code § 1641 ("[t]he whole of a contract is to be taken together, so as to give

17 effect to every part, if reasonably practicable, each clause helping to interpret the

18 other").  The only consistent and plausible interpretation of ████████████ is that

19 "inventions" includes matter of a type that could potentially be eligible for patent

20 protection, but for which for some reason no patent is available.

21       Moreover, ██████████████████████████████████████████

22 ██████████████████████████████████████████████████████

23 ████████████████████████ [13] United States statutes and case law

24

25 [13] ████████████████████████████████████████████████████████

26 ██████████████████████████████████████████████████████████

27 ██████████████████████████████████████████████████████████

28 ██████████████████████████████████████████████████ *See,*

24

412879.01

clearly distinguish between patent and copyright ownership. *See Alfred Bell & Co. v. Cataldo Fine Arts, Inc.*, 191 F.2d 99, 101 (2d Cir. 1951) (explaining that "the very language of the Constitution [Art. I, sec. 8, cl. 8] differentiates (a) 'authors' and their 'writings' from (b) 'inventors' and their 'discoveries'"). The words "invent," "invention," and "inventor" never appear in the Copyright Act, which instead provides for protection on "original works of authorship" including, among others, "literary works" and "pictorial, graphic, and sculptural works." 17 U.S.C. § 102(a). The Employee Agreement Bryant signed ███████████████

██████████████████████████████████████

████████████████████████████████████████

████████ Instead, the Employee Agreement refers ███████████

███████████████████████████████████████

███████████████████

### (ii)   Extrinsic evidence also supports a narrow meaning for "inventions."

Not only does the ordinary meaning of "invention" in the Employee Agreement fail to encompass Bryant's Bratz idea or sketches, but the extrinsic evidence of circumstances surrounding the contract also does not support a broader meaning. That is because neither the circumstances in which Mattel imposed the Employee Agreement on its employees nor the parties' conduct under the Agreement supports a broad reading of the term "inventions." Cal. Civil Code §§ 1647-1649.

The parties' course of conduct after the contract was entered into, but before any dispute arose, is relevant to interpreting the disputed terms. *S. Pac. Transp. Co. v. Santa Fe Pac. Pipelines, Inc.* 74 Cal. App. 4th 1232, 1242 (1999). This rule is not limited to the joint conduct of the parties; "the conduct of one party is

*e.g.*, *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1380-85 (Fed. Cir. 2007) (involving a computer system eligible for both patent and copyright protection).

25

1   relevant to show that the contract is reasonably susceptible to the meaning

2   evidenced by that party's conduct." *S. Cal. Edison Co. v. Superior Court*, 37 Cal.

3   App. 4th 839, 851 (1995) (internal citations omitted).  Here, ▇▇▇▇▇▇▇▇▇

4   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

5   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

6   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

7   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

8   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

9   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇   If Mattel had in fact

10  believed that all such efforts belonged to Mattel under its Employee Agreements,

11  one would have expected the company to take some steps to protect its rights.

12  Instead, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

13  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

14  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

15      Indeed, even Mattel itself has acknowledged through its own actions the

16  limitations on the scope of the Employee Agreement by ▇▇▇▇▇▇▇▇▇▇▇

17  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇;

18  *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 670 (1995) (drafting

19  history of standardized form policy was relevant to interpreting meaning of

20  contract); *City of Oakland v. Harding ESE, Inc.*, 2004 WL 2646654, at *4 (N.D.

21  Cal. Nov. 17, 2004) ("The Court may consider subsequent conduct of the parties to

22  determine their contractual intent."); 1 B.E. Witkin, Summary of California Law,

23  Contracts § 749 (10th ed. 2007) (same). Specifically, ▇▇▇▇▇▇▇▇▇▇▇

24  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

25  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

26  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

27  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

28  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

412879.01

1 ████████████████████████████████████████████

2 ████████████████████████████████████████

3 ██████████████████████████████████████████

4 ███████████████████████████████████████████████

5 ███████████████████████████████████[14]

      **(iii)**    **Mattel's post-hoc, all-inclusive interpretation of the term "inventions" is unreasonable and unsupported by either the intrinsic or extrinsic evidence.**

With the benefit of hindsight, Mattel now seeks to expand the term "inventions" in the 1999 Employee Agreement to include any and all creative ideas or acts by its employees—an interpretation that no express language in the Employee Agreement itself provides.  Indeed, under the interpretation Mattel urges in litigation, the Employee Agreement would give it unbounded rights to its employees' very creative souls. ████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████

[14] ████████████████████████████████████████

412879.01

1 ██████████████████████████████████████████████████████

2 ███████████████████

Even if the term "invention" were reasonably susceptible to such a vast and expansive reading (which it is not), however, that interpretation would not be appropriate given the textual context of the Employee Agreement and the circumstances surrounding its formation. Under Mattel's view, its adhesive agreement means not what it fairly communicates to the party without bargaining power, but rather whatever the party with the power claims (in retrospect) to have intended—whether expressly stated or otherwise. That is not the law, nor could equity permit such a result. *See* Cal. Civ. Code § 1649 (promise understood as promisor believed the promise understood it); Cal. Civ. Code § 1654 (language interpreted against the drafter).

   **b.   Regardless of when it was done, Bryant's Bratz work was not** ██████████████████████ **the meaning of the Employee Agreement.**

Even if Bryant's Bratz idea or sketches were an "invention" under the Employee Agreement (which they are not), the Employee Agreement ████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████████████. This language does not include projects that Bryant came up with on his own time, and not during the performance of his duties.

First, the text of the agreement is ambiguous on its face. █████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

412879.01

1 ████████████████████████████████████████

2 ███████████████████████████████████████

3 ███████████████████████████████████████

4 ████████████████████████████████████████

5 ███████████████████████████████████████

6      Second, all of the circumstances that support a narrow reading of the term

7 "invention," discussed above, also support a narrow reading of the phrase ████████

8 ████████████████████████████████████████

9 ████████████████████████████████████████

10 ████████████████████████████████████████

11 ████████████████████████████████████████

12 ██████████████████ The only reasonable interpretation, especially given Mattel's

13 superior position as the drafter (through lawyers) of the Employee Agreement, is

14 one that limits Mattel's rights to the product of its employees' labors during

15 performance of their actual work assignments for Mattel.

16     **c.**    **The Employee Agreement does not make Bratz Mattel's**
   ████████████████████████ **or trade secret.**

17

18     In addition to assigning rights to certain "inventions," the Employee
   Agreement also addresses Mattel ████████████████ or trade secrets.

19

20 However, the Employee Agreement does not give Mattel any rights to Bryant's

21 Bratz idea, sketches, and other material, because they do not constitute ████████

22 ███████████ within the meaning of the agreement.[16]

23 [15] Indeed. ██████████████████████████████████████████████

24 ████████████████████████████████████████████████████████

25 [16] The relevant portions of the Employee Agreement read as follows:

26 ████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████

[PUBLIC REDACTED] BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. CV 04-09049 SGL (RNBx)

1       The term "Proprietary information" does not include Bratz, because Bryant's

2 Bratz ideas, sketches and other work, regardless of when created, were not

3 information ███████████████████████████████████████████████████████

4 ███████████████████████████████████████████████████████████████

5 ████████████████ is not ambiguous here and the court should give the phrase its

6 ordinary common meaning.  Cal. Civ. Code § 1644; *Hayter Trucking Inc. v. Shell*

7 *Western E & P. Inc.*, 18 Cal. App. 4th 1, 15 (1993) ("Generally speaking, words in

8 a contract are to be construed according to their plain, ordinary, popular or legal

9 meaning, as the case may be.").  Courts consult a dictionary to determine ordinary

10 meaning.  *People ex rel Lockyer v. R.J. Reynolds Tobacco Co.*, 116 Cal. App. 4th

11 1253, 1263 (2004). ██████████████████████████████████████████████

12 ████████████████████████████ *See* American Heritage Dictionary

13 (4th ed. 2006) (defining ████████████████████████████████████████

14 ██████████████████████████.  The phrase would thus encompass only

15 information that Bryant created as part of his job responsibilities at Mattel. ████

16 █████████████████████████████████████████████████████████████

17 █████████████████████████████████████████████████████████████

18 Also, ████████████████████████████████████████████████████

19 █████████████████████████████████████████████████████

20 ███████████████████████████████████████

21       In addition, to the extent the phrase ███████████████████████ is at all

22 uncertain, the extrinsic evidence supports Bryant's interpretation.  All of the

23 extrinsic evidence concerning Mattel and other employees' treatment of the

24 agreement, as well as █████████████████████████████ (discussed above

25 ███████████████████████████████████████████████████████████████

26 ███████████████████████████████████████████████████████████████

27 ███████████████████████████████████████████████████████████████

28 ████████████████ (emphasis added).

412879.01

1   with respect to other terms of the Employee Agreement) also supports a narrow

2   reading of this term. *See, e.g., S. Cal. Edison Co. v. Superior Court,* 37 Cal. App.

3   4th 839, 851 (1995) ("[T]he practical interpretation of the contract by one party,

4   evidenced by his words or acts, can be used against him on behalf of the other

5   party, even though that other party had no knowledge of those words or acts when

6   they occurred").

7          Finally, even if any of the terms of the Employee Agreement could

8   conceivably mean what Mattel claims (which the evidence shows they do not),

9   despite their plain meaning and the extrinsic evidence, under the *contra*

10  *preferentem* doctrine all ambiguities must be resolved in Bryant's favor.[17]  Mattel

11  drafted a less sweeping contract than it now claims, and (as the drafter) should be

12  held to the terms it established. *See supra* Section B(3)(a).  Therefore, the

13  Employee Agreement cannot give Mattel any ownership of Bryant's Bratz idea or

14  materials, and Mattel's claims against Bryant fail, as they rely on Mattel's

15  allegations of such ownership.

16          **d.     The adhesive Employee Agreement cannot be interpreted to**
            **encompass Bratz, because that result would be outside of an**
17          **employee's reasonable expectations.**

18          In addition, even if ordinary contract interpretation allowed the result Mattel

19  seeks here (which it does not), the Employee Agreement could not give Mattel

20  ownership of Bratz because that result would be outside of a Mattel employee's

21  reasonable expectations in signing it.  As explained above, a contract of adhesion

22  provision that "does not fall within the reasonable expectations of the weaker

23  'adhering' party will not be enforced against him." *Cubic,* 185 Cal. App. 3d at

24  450; *Gray v. Zurich Ins. Co.,* 65 Cal. 2d 263 (1966).  The standard for determining

25  "expectations" is an objective one; the meanings of adhesive terms are determined

26  _____

27  [17] In addition, as discussed further below, ambiguities in purported transfers of copyright ownership must also be interpreted to favor the original owner (here, Bryant), to avoid inadvertent transfers. *See Effects Assocs., Inc. v. Cohen,* 908 F.2d 555, 557 (9th Cir.

28  1990); *Bieg v. Hovnonian Enterprises, Inc.,* 157 F. Supp. 2d 475, 480 (E.D. Pa. 2001).

[PUBLIC REDACTED] BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. CV 04-09049 SGL (RNBx)

412879.01

1   by considering them in light of what a "hypothetical reasonable" person in the

2   weaker party's position or circumstances would "glean from the wording." *Id.*; *see*

3   *also Gray*, 65 Cal. 2d at 271. The question for the Court, then, is what a Mattel

4   employee would reasonably have understand he or she had "signed away."

5         Notice is "an extremely significant [factor] to be weighed in assessing the

6   reasonable expectations of the adhering party," and provisions contrary to the

7   reasonable expectations of the adhering party must be "denied enforcement in the

8   absence of 'plain and clear notification' and 'an understanding consent.'" *Graham*

9   *v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 820 n.18 (1981). Accordingly, counter-

10  intuitive terms and definitions must be "conspicuous, clear, and plain," *Steven v.*

11  *Fid. & Cas. Co.*, 58 Cal. 2d 862, 878 (1962), not buried in the "fine-print." *See,*

12  *e.g., Geoffroy v. Washington Mut. Bank*, 484 F. Supp. 2d 1115, 1122 (S.D. Cal.

13  2007). *Cf. Papa's-June Music v. McLean*, 921 F. Supp. 1154, 1159 (S.D.N.Y.

14  1996) (the "terms of any writing purporting to transfer copyright interests, even a

15  one-line pro forma statement, must be clear" or they will not be enforced).

16        The Employee Agreement fails this test. Nothing in the express terms of the

17  agreement provides the broad interpretation Mattel now seeks to impose. SUF ¶ 7

18  (Ex. 8). Moreover, ████████████████████████████████████

19  ██████████████████████████████████████████████████

20  ██████████████████████████████████████████████

21

22  [18] A new Mattel employee being handed the Inventions Agreement as part of the HR in-
    processing, with no explanation of the legalese and no choice but to sign it, is in a

23  position comparable to a typical consumer obtaining information from commercial
    advertising. Federal false advertising law under the Lanham Act, accordingly, provides

24  useful analogous principles. Generally, "persons reading a print ad often will read only
    the headline, and will take their sole impression of the ad from it." *In re Thompson Med.*

25  *Co.*, 104 F.T.C. 648, 799 (1984), aff'd, 791 F.2d 189 (D.C. Cir. 1986), cert. denied, 479
    U.S. 1086 (1987). Here, the "headlines" are the name of the contract and the cautionary

26  statement making the Inventions Agreement, the counterpart to an advertisement
    dominated by its headlines. In determining whether an advertisement is false or

27  misleading, a "definition or disclaimer which purports to change the apparent meaning ...
    but which is so inconspicuously located or in such fine print that readers tend to overlook

28  it, it will not remedy its misleading nature." *Am. Home Prods. Corp. v. Johnson &*
    *Johnson, Inc.*, 654 F. Supp 568, 590 (S.D.N.Y. 1987); *see also FTC v. Cyberspace.com*,

32

412879.01

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 █████████████████████████████████████████████████████

4 ████████████████████████████████████

5 ████████████████████████████████████ Merriam-

6 Webster's Third New Int'l Dictionary 1188 (1986); American Heritage Dictionary

7 (4th ed. 2006) ("a new device, method or process developed from study and

8 experimentation; the phonograph, an invention attributed to Thomas Edison").

9 That reading is consistent with the common meaning that, for example, Thomas

10 Alva Edison and Alexander Graham Bell were "inventors," but Michelangelo was

11 an artist.  In that common understanding, an idea or sketch of a fashion doll is

12 certainly not an "invention."

13      Thus, the "reasonable expectation" of a new Mattel employee in 1999,

14 provided with the Employee Agreement during HR in-processing, would be that

15 devices that the employee might "invent," but not his or her ideas or artistic works,

16 would be owned by Mattel.  Nothing in the agreement's express language provides

17 for the broad meaning Mattel now seeks.  Bryant should not be held to Mattel's

18 sweeping revisionist reading of the limited contract it actually imposed upon him.

19      **e.      The adhesive Employee Agreement cannot be interpreted as Mattel claims, because that result would be unconscionable.**

20

21      Mattel claims that the Employee Agreement covers any and all creative

ideas or acts by its employees, but even if the agreement supported that

22 interpretation, it would be an unconscionable result.[19]  Interpreting the provision to

23

24 453 F.3d 1196, 1200-01 (9th Cir. 2006) (fine print notices placed on mail solicitations did not cure overall misleading impression of the solicitations). The provisions Mattel relies

25 on are all in the "fine print."

26 [19] The Court has already considered the terms of the Employee Agreement on motions to dismiss and concluded, looking only within the four corners of the document, that it is

27 not unconscionable for Mattel to expect "that the works of its design staff—created by Mattel's employees, using Mattel's resources, during time for which Mattel paid the

28 employee—be considered its property."  July 18, 2006 Order at 14.  However, the Court has not previously addressed the different question presented here: whether Mattel's

33

412879.01

1  apply to information Bryant developed outside his job at Mattel would be

2  "oppressive" and "unconscionable." *Graham v. Scissor-Tail*, 28 Cal. 3d at 820.

3  Mattel's interpretation of this provision is unfairly one-sided and against public

4  policy. *Discover Bank v. Superior Court*, 36 Cal. 4th at 160-163.  Mattel appears

5  to interpret the Employee Agreement as a Faustian document in which its

6  employees surrender their very souls to the company: every thought, idea, or

7  creative inspiration, whatever its nature and whenever it arises, is sacrificed. *See,*

8  *e.g.*, SUF ¶ 50-52.  The ordinary plain meaning of Mattel's Employee Agreement

9  does not warn employees of anything like this result, and it would be unfair to

10  impose such a sweeping sacrifice without due notice and a meaningful opportunity

11  for reflection and counsel. *See* SUF ¶ 39.  Mattel's contemporaneous treatment of

12  the Agreement (discussed above) further underscores the unfair and oppressive

13  impact, under all the circumstances, of the expansive interpretation Mattel now

14  seeks for its own poorly-drafted contract.  Finally, a sweeping interpretation of the

15  Employee Agreement would undermine federal copyright law's core goals of

16  ensuring predictability of ownership by avoiding inadvertent transfers (discussed

17  further below).

18      **4.    The Employment Agreement is not a valid transfer of copyright
             ownership under Section 204(a) of the Copyright Act**

19

20      In addition to its other defects, the Employee Agreement cannot transfer any

21  copyright in Bratz from Bryant to Mattel because it does not satisfy the Copyright

22  Act's requirements for such a transfer of ownership.[20]  Under Section 204(a) of the

23  broader interpretation of the Agreement's provisions, which seizes for Mattel all of its
24  employees' creative acts (even those done outside their Mattel employment), is
    unreasonable or unconscionable on the particular facts presented here.

25  [20] To bring any copyright infringement claim based on any copyright in Bryant's Bratz
    sketches or other materials (to the extent copyright protection is available), Mattel would
26  need to prove that it owned the copyright, 17 U.S.C. § 501(b), either as the original
    owner or through a valid transfer of ownership.  Here, Mattel cannot claim that any Bratz
27  copyright vested initially in Mattel, because ███████████████████████████████
    ███████████████████████████████████████████████████████████████████ 17
28  U.S.C. § 101 (defining work for hire).  Thus, Mattel can only seek to claim ownership

                                          34

[PUBLIC REDACTED] BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. CV 04-09049 SGL (RNBx)

412879.01

1  Copyright Act, any transfer of copyright ownership must be clear and in writing to

2  be valid.  17 U.S.C. § 204(a); *Pamfiloff v. Giant Records, Inc.*, 794 F. Supp. 933,

3  936 (N.D. Cal. 1992); *Foraste v. Brown Univ.*, 290 F. Supp. 2d 234, 240-41

4  (D.R.I. 2003) (collecting cases holding that 204(a) requires the drafter of a transfer

5  document to be "explicit," "precis[e]," "clear," and "unequivocal").  Specifically,

6  the written transfer instrument must (1) "reasonably identify the subject matter of

7  the agreement"; (2) "be sufficient to indicate that the parties have come to an

8  agreement"; and (3) "state with reasonable certainty the essential terms of the

9  contract." *Pamfiloff*, 794 F. Supp. at 936; *Konigsberg, Int'l, Inc. v. Rice*, 16 F.3d

10  355, 357 (9th Cir. 1994) (requiring written transfer instrument to "be the product of

11  the parties' negotiations").  These requirements prevent the inadvertent transfer of

12  ownership rights by "forc[ing] a party who wants to use the copyright work to

13  negotiate with the creator to determine precisely what rights are being transferred

14  and at what price," thus serving Congress's "paramount goal" of "enhancing

15  predictability and certainty of copyright ownership." *Effects Assocs., Inc. v.*

16  *Cohen*, 908 F.2d 555, 557 (9th Cir. 1990).  In keeping with this goal of avoiding

17  inadvertent transfers, any ambiguity in a purported transfer should be resolved in

18  favor of the original copyright holder. *Bieg v. Hovnonian Enterprises, Inc.*, 157 F.

19  Supp. 2d 475, 480 (E.D. Pa. 2001).

20       As explained in the previous section, the Employee Agreement Bryant

21  signed here fails to give Mattel any rights to Bratz at all, even without considering

22  the independent and additional limitations of Section 204(a).  In addition, however,

23  the Employee Agreement fails to satisfy Section 204(a) for all the same reasons

24  that it fails to transfer rights to Bratz under the ordinary principles of California

25  contract law.  The Employee Agreement was not the result of any negotiations, but

26  a form adhesion contract that Mattel unilaterally forced upon Bryant.  SUF ¶¶ 9,

27

28  through a valid transfer—which, as explained here, did not occur.

412879.01

11-12, 17, 20. ████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████      Also, no evidence suggests that either Mattel or (more

importantly) a reasonable employee would have understood that the Employee

Agreement would transfer ownership of his creative work outside the course and

scope of his employment at Mattel.   Thus, summary judgment in Bryant's favor is

proper on all of Mattel's claims based on ownership of any copyright in Bratz.

*Radio Tele. Espanola v. New Works Entm't*, Ltd., 183 F.3d 922, 926-29 (9th Cir.

1999) (affirming summary judgment based on lack of written transfer document

satisfying Section 204).

> **5.      Mattel's Conflict of Interest Questionnaire gives Mattel no rights
> to Bratz because it is not a valid contract and by its own terms it
> conveys no rights to Bratz.**
>
> > **a.      Mattel did not intend the Questionnaire to be a contract,
> > and neither Mattel, Bryant, nor other Mattel employees
> > understood it to be one.**

Mattel's choices in drafting the Questionnaire, and its undisputed handling

of the Questionnaire, make clear that Mattel never intended the Questionnaire to be

a contract. ████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████████

████████████████████.   Whether or not that clause influences the meaning of the

Employee Agreement as it applies to Bryant, it precludes Mattel (the drafter and

more powerful party) from claiming that it intended the Questionnaire to serve as a

36

1  contract.

2  Also, the Questionnaire is expressly labeled a "questionnaire," not a

3  "contract" or an "agreement."  Both the document's title ("Conflict of Interest

4  Questionnaire") and ████████████████████████████████████████████████

5  ████████████████████████████████████████████

6  █████████████████████████████████████████████

7  ██████████████████████████████████████████

8  ████████████████████████████████████████████████

9  ██████████████████████████████████████████████

10  █████████████████████████████████████████████

11  ██████████████████████████████████████████████

12  ████████████████████████████████████████████████

13  █████████████████████████████████████████████

14  ████████████████████████████████████████████████████

15  ████████████████████████████████████████████████

16  ███████████████████████████████████████████████

17  ██████████████████████████████████████████

18  Moreover, █████████████████████████████████████████

19  ████████████████████████████████████████████████████

20  ██████████████████████████████████████████████████

21  █████████████████  Thus, based on the Questionnaire itself and Mattel's course of

22  conduct related to the Questionnaire, a reasonable employee would not understand

23  the Questionnaire as a contract.

24  **b.    Even if the Questionnaire were a contract, it would not give
        Mattel any ownership rights over Bratz.**

25  Even if the Questionnaire were a contract, it could transfer no rights in Bratz

26  to Mattel.  The Questionnaire, █████████████████████████████████████████

27  ████████████████████████████████████████████████

28

[PUBLIC REDACTED] BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. CV 04-09049 SGL (RNBx)

412879.01

1
2
3

### 6. Mattel's deceptive Proprietary Information Checkout is not a valid contract and cannot convey rights to Bratz.

Finally, Mattel's Proprietary Information Checkout form is not a valid contract and cannot convey any rights to Bratz. *See* SUF ¶ 47. As explained above,

First, the Checkout form was not a valid separate contract, and could not create any new obligations for Bryant, because of the complete absence of any consideration. "[A]n additional agreement by which new and onerous terms are imposed upon one of the parties without any compensating advantage requires consideration to support it." *Selby v. Battley*, 149 Cal. App. 2d 659, 664 (1957).

Thus, no binding contract could exist.

Moreover, the Checkout form flatly misrepresented the terms of Bryant's

38

412879.01

1   actual Employee Agreement with Mattel.  It asserted that Bryant ███████████

2   ████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████

12  ████████████████████████████████████████████████  Even

13  if the Checkout form could otherwise be binding on Bryant, Mattel's

14  misrepresentation and fraud would render it unenforceable.  *See* Cal. Civ. Code §

15  1640 (portion of contract that fails to express the parties' true intentions, through

16  fraud, must be disregarded); § 1572 (defining fraud to include "the suggestion as a

17  fact of that which is not true, by one who does not believe it to be true" and "the

18  positive assertion, in a manner not warranted by the information of the person

19  making it, of that which is not true, though he believes it to be true"); § 1565

20  (consent required for contract), § 1689 (contract can be rescinded if consent of the

21  party rescinding was given by mistake, or obtained through duress, menace, fraud

22  or undue influence); § 3399 (contract may be revised due to fraud or mistake).

23  Mattel could not remedy its failure to obtain ownership of Bratz in the 1999

24  Employee Agreement by later requiring Bryant to sign a form that grossly

25  mischaracterized the terms of that agreement.

26

27  21  ████████████████████████████████████████████████

28  ████████████████████████████████████

[PUBLIC REDACTED] BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. CV 04-09049 SGL (RNBx)

412879.01

\* \* \*

In sum, the undisputed facts establish that no contract between Bryant and Mattel gives Mattel any valid claim of ownership over the Bratz idea or any of its various manifestations.  The only contract Bryant signed with Mattel, the Employee Agreement, was a non-negotiable form document that ████████████ ██████████████████████████████████████████  The terms of that contract do not encompass any part of Bratz even under ordinary rules of contract interpretation (especially because its ambiguities must be resolved against Mattel, whose lawyers drafted it), let alone the more stringent requirements applicable to a contract of adhesion.  The Employee Agreement also fails to satisfy 17 U.S.C. § 204(a)'s requirements for a valid transfer of copyright ownership.  The two other documents on which Mattel appears to rely (Mattel's Conflict of Interest Questionnaire and Proprietary Information Checkout) are not valid contracts, and even if they were they would assign Mattel no rights to Bratz.  Accordingly, summary judgment for Bryant is proper as to Mattel's claims for Breach of Contract (AC 5, MC 1), Copyright Infringement (AC 1), Breach of Fiduciary Duty (AC 7, MC 2), Unjust Enrichment (MC 4), Conversion (AC 11, MC 5), Unfair Competition (AC 12), and Declaratory Relief (AC 13), as each claim depends on Mattel's alleged ownership of Bryant's Bratz idea, Bratz-related work, or any copyright therein.[22]

**C.    Mattel's claim for unjust enrichment—if it still asserts one—fails because unjust enrichment is not a valid separate cause of action.**

It is unclear whether Mattel still asserts a claim for unjust enrichment, but any such claim fails.  The claim was not included in Mattel's Amended Answer filed on January 12, 2007 nor was it listed in Mattel's Motion to Try All Claims

---

[22] To the extent that the Court determines that any of these claims does not depend entirely on Mattel's alleged ownership of Bryant's Bratz idea, sketches, or other material, Bryant in the alternative moves the Court for an order under Fed. R. Civ. P. 56(d) establishing that Mattel does not have any such right of ownership.

40

1  Related to BRATZ Ownership in Phase One, filed on May 8, 2007.  Docket Nos.

2  143 and 162.  Mattel did, however, include the claim in its Memorandum

3  Regarding Trial Structure which it submitted to the Court on June 20, 2007 and

4  which the Court adopted by order dated July 2, 2007.  Docket Nos. 560 and 608.

5  (Mattel has not responded to Bryant's counsel's request that Mattel clarify whether

6  or not it continues to assert a claim for unjust enrichment. Anderson Decl. ¶ 2.)

7      If Mattel continues to assert a claim for unjust enrichment, that claim must

8  be rejected.  California law is unambiguous: "There is no cause of action for unjust

9  enrichment.  Rather, unjust enrichment is a basis for obtaining restitution based on

10  quasi-contract or imposition of a constructive trust."  *McKell v. Wash. Mut., Inc.*,

11  142 Cal. App. 4th 1457, 1490 (2006); *see also McBride v. Boughton*, 123 Cal.

12  App. 4th 379, 387 (2004) ("Unjust enrichment is not a cause of action . . . or even a

13  remedy, but rather a general principle, underlying various legal doctrines and

14  remedies.  It is synonymous with restitution.") (quotation marks and citations

15  omitted); *Roots Ready Made Garments v. Gap, Inc.*, C 07-03363 CRB, 2008 U.S.

16  Dist. LEXIS 9191, at *20-21 (N.D. Cal. 2008) (dismissing claim for unjust

17  enrichment with prejudice because "[u]nder California law, there is no cause of

18  action for unjust enrichment.") (quotation marks omitted).  Mattel's claim for

19  unjust enrichment, if it makes one, must therefore fail.

20  **D.    The Copyright Act preempts Mattel's Conversion and Unfair**
   **Competition claims against Bryant, as set forth in the MGA parties'**
21  **summary judgment motion.**

22      Bryant joins in MGA's argument that the Copyright Act preempts Mattel's

23  claims for Conversion (AC 11, MC 5) and for Unfair Competition (AC 12),

24  because those claims seek to protect under state law material for which Mattel

25  claims (falsely) to hold federal copyright protection.  Those claims fall within the

26  exclusive scope of federal copyright law, and are preempted in their entirety.

27  Bryant incorporates the related arguments and facts set forth in the Memorandum

28  of Points and Authorities in Support of MGA and Isaac Larian's Motion for Partial

1  Summary Judgment ("MGA's Brief") and MGA's Separate Statement of

2  Undisputed Facts as though fully set forth herein .

3  **E.     Mattel's unfair competition claims against Bryant fail because Mattel can prove no conduct by Bryant that could support such a claim.**

4

5  Mattel's statutory and common law Unfair Competition claims (AC 12)

6  against Bryant also fail in their entirety, and Bryant is entitled to summary

7  judgment.

8  **1.     Mattel's statutory unfair competition claims lack merit.**

9  First, as to Mattel's statutory claims, Bryant joins in MGA's arguments that

10  Mattel's unfair competition claims fail because (1) Mattel cannot show that Bryant

11  engaged in any practice that would threaten a violation of anti-trust law or policy,

12  as required to support a finding of unfairness, and (2) Mattel cannot show that

13  Bryant engaged in any practices deceptive to the public (*not* merely Mattel or any

14  other competitor), as required to support a finding of fraudulent conduct.[23]  Mattel

15  also cannot prove a statutory unfair competition claim against Bryant based on

16  unlawful conduct.  The only theory Mattel advances for such a claim is one

17  premised on commercial bribery violating California Penal Code § 641.3(a).

18  Such commercial bribery is a criminal offense, however, that simply ***cannot***

19  encompass all situations in which an ordinary employee agrees (before actually

20  departing) to leave his employer to work with another company.  *See Crosstalk*

21  *Prods. v. Jacobson*, 65 Cal. App. 4th 631, 644 (1998) (affirming dismissal of

22  commercial bribery claim where no allegation that contract allegedly subject of

23  bribery was obtained improperly).  Mattel cannot prove commercial bribery here

24  because Bryant did not act "corruptly" in his business dealings with MGA, as

25  Section 641.3 requires, nor did he "use" or "agree[] to use" his Mattel position for

26  MGA's benefit.  *Id.*  To the contrary, for all the reasons explained above in

27

28  [23] Bryant incorporates by reference as though fully set forth herein the argument sections of MGA's Brief on these two points.

42

1  discussing Bryant's contract with Mattel, Bryant assigned to MGA only what was

2  rightfully his own.  Thus, Mattel can offer no evidence that Bryant acted

3  "corruptly" within the meaning of Section 641.3.  Likewise, Mattel does not allege,

4  nor can it prove, that Bryant used his position at Mattel to benefit MGA.  Rather,

5  Mattel alleges that Bryant assigned to MGA rights that he had allegedly already

6  assigned to Mattel (which he did not).  This ownership dispute has nothing to do

7  with any alleged use of Bryant's position at Mattel.  Mattel does not dispute that

8  Bryant had and sketched his Bratz idea outside the scope of his Mattel

9  employment, and not at Mattel's direction.  *See* MGA SUF ¶ 80 (not works for

10 hire); SUF ¶ 27.  Thus, Mattel's statutory unfair competition claims fail in their

11 entirety.

## 2.    Mattel's common law unfair competition claim also fails.

13     In addition, Mattel cannot show that Bryant engaged in common law unfair

14 competition, because Bryant did not pass off his own goods as Mattel's, and Mattel

15 neither invested time and energy in developing the Bratz idea that it never owned

16 nor was injured by Bryant's own use of his idea.  No evidence suggests that Bryant

17 engaged in anything resembling the ordinary common law tort of unfair

18 competition: the "passing off" of his goods for Mattel's.  *See Bank of the West v.*

19 *Sup. Ct.*, 2. Cal. 4th 1254, 1263 (1992).  Mattel does not even allege that Bryant (as

20 opposed to MGA) ever produced Bratz dolls, or that Mattel invested any—let

21 alone substantial—time and money in developing Bratz dolls (which is not

22 surprising, of course, given that Mattel never had any rights to Bryant's Bratz idea,

23 sketches, or other work, for all the contract and other reasons set forth above).  *See*

24 *Smith & Hawken, Ltd. v. Gardendance, Inc.*, 2004 WL 2496163, *6-7 (N.D. Cal.

25 Nov. 5, 2004).  Mattel also was not "injured," *see id.*, by Bryant or anyone else's

26 use of the Bratz idea and sketches, since (as explained above) they were never

27 Mattel's property at all.  Thus, Bryant is also entitled to summary judgment on

28 Mattel's common law unfair competition claim.

43

[PUBLIC REDACTED] BRYANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. CV 04-09049 SGL (RNBx)

412879.01

**F.      Mattel's First, Eleventh, and Thirteenth Counterclaims are Time-Barred, as set forth in the MGA parties' summary judgment motion.**

Bryant also joins in MGA's argument (with supporting undisputed facts) that the statute of limitations bars Mattel's claims of Copyright Infringement (AC 1), Conversion (AC 11, MC 5), common law Unfair Competition (AC 12), and Declaratory Relief (AC 13).  In sum, Mattel's claim of copyright infringement is barred because at its core it is simply a claim for copyright ownership (not infringement), Mattel was on notice of the claim by February 2001 but did not file within the applicable three-year statute of limitations, and Mattel could not have filed timely because it failed to register its purported copyright in Bratz until after the three-year statute had expired.  Likewise, Mattel's conversion claim fails because any claim accrued no later than October 2000, when Bryant left Mattel, and Mattel did not file within the three-year statute of limitations.  Mattel's common law unfair competition claim is also untimely because Mattel was on notice of the claim by February 2001 and failed to file within the three-year statute. Finally, Mattel's claim for declaratory relief bears the same statute of limitations as its equivalent non-declaratory claims, and thus is untimely for the reasons above to the extent Mattel seeks a declaration concerning any of its untimely claims.  Bryant incorporates the related arguments set forth in MGA's brief as though fully set forth herein.

## IV.    CONCLUSION

For all the foregoing reasons, Bryant respectfully requests that the Court grant partial summary judgment in his favor on each of the matters addressed

412879.01

1    above, as set forth in the proposed Order submitted with this motion.[24]

2                                        Respectfully submitted,

3    Dated:  March 7, 2008                KEKER & VAN NEST, LLP

4

5

6    By:    /s/ Christa M. Anderson
            CHRISTA M. ANDERSON
7            Attorney for Plaintiff
            CARTER BRYANT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    [24] It is important to note that this motion does not present all of Bryant's defenses in this
28    matter.  Each of Mattel's claims fail for a host of additional reasons (factual and legal)
     that would be presented at the trial of this matter.

---

45

412879.01