1 │ QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
2 │ (johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
3 │ (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 │ (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
5 │ Los Angeles, California 90017-2543
Telephone: (213) 443-3000
6 │ Facsimile: (213) 443-3100

7 │ Attorneys for Mattel, Inc.

8 │ UNITED STATES DISTRICT COURT

9 │ CENTRAL DISTRICT OF CALIFORNIA

10 │ EASTERN DIVISION

11 │ CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)
                                          Consolidated with
12 │            Plaintiff,                 Case Nos. CV 04-09059 & CV 05-2727

13 │      vs.                              **DISCOVERY MATTER**

14 │ MATTEL, INC., a Delaware              **[To Be Heard By Discovery Master
                                          Hon. Edward Infante (Ret.)]**
15 │ corporation,
                                          MATTEL, INC.'S OPPOSITION TO
16 │            Defendant.                 MGA'S MOTION TO COMPEL THE
                                          DEPOSITION TESTIMONY OF
17 │                                       MATTHEW BOUSQUETTE AND TINA
                                          PATEL
18 │ AND CONSOLIDATED ACTIONS
                                          [Declaration of Jon Corey filed
19 │                                       concurrently herewith]

20 │                                       Hearing Date: March 10, 2008
                                          Time:          8:30 a.m.
21 │                                       Place:         Telephonic

22 │                                       **Phase 1**
                                          Discovery Cut-Off:     January 28, 2008
23 │                                       Pre-Trial Conference:  May 5, 2008
                                          Trial Date:            May 27, 2008
24

25

26

27

28

07209/2425757.4

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT.......................................................................................................... 2

I.    THE DISCOVERY MASTER LACKS JURISDICTION TO COMPEL
      MATTHEW BOUSQUETTE TO APPEAR FOR DEPOSITION................... 2

II.   THE DISCOVERY MASTER HAS RULED THAT BOUSQUETTE
      SHOULD NOT SIT FOR DEPOSITION UNTIL MGA'S
      DOCUMENT PRODUCTION IS SUBSTANTIALLY COMPLETE;
      AND MGA ADMITS IT IS NOT .................................................................. 4

III.  BOUSQUETTE AND PATEL ARE NOT PROPERLY PHASE 1
      WITNESSES ............................................................................................... 6

      A.    Phase 1 Relates Solely to Ownership of Bratz ....................................... 6

      B.    MGA Identified Bousquette and Patel as Exclusively Phase 2
            Witnesses .................................................................................... 6

      C.    MGA's New Argument That Bousquette and Patel Are Proper
            Phase 1 Witnesses Fails ................................................................. 7

            1.    Matthew Bousquette ................................................................ 7

            2.    Tina Patel .............................................................................. 10

CONCLUSION........................................................................................................ 13

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alexander v. Jesuits of Missouri Province,*
    175 F.R.D. 556 (D. Kan. 1997) ................................................................. 3

*Montrose Chemical Corp. v. Montrose Ins. Co.,*
    10 Cal. 4th 645 (1995) .............................................................................. 9

*Parsons v. Jefferson-Pilot Corp.,*
    141 F.R.D. 408 (M.D.N.C. 1992) ........................................................... 10

*U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.,*
    444 F.3d 462 (6th Cir. 2006) .................................................................... 3

## Statutes

Fed. R. Civ. P. 37(a)(1) ................................................................................. 4

Fed. R. Civ. P. 45(b) ...................................................................................... 3

07209/2425757.4

1

# MEMORANDUM OF POINTS AND AUTHORITIES

2

## Preliminary Statement

3        MGA's motion to compel the deposition of Matthew Bousquette must be
4 denied because the Discovery Master lacks jurisdiction over Mr. Bousquette. MGA
5 never served Mr. Bousquette with a deposition subpoena. MGA purportedly served the
6 subpoena on Quinn Emanuel Urquhart Oliver & Hedges, but neither Mr. Bousquette
7 nor his attorney have ever provided Quinn Emanuel with the authority to accept service
8 on his behalf. Nor did Quinn Emanuel ever say that they would accept service on his
9 behalf. Absent proper service, the Discovery Master lacks jurisdiction to grant the
10 motion.    Even were the subpoena properly served (and it was not), to compel the
11 deposition of a non-party the Rules require that a motion must be filed with the district
12 court in which the deposition is to take place. With respect to Mr. Bousquette, that is
13 the Northern District of Illinois, not the Central District of California.

14        Independently,    the    Discovery    Master    previously    ruled    that
15 Mr. Bousquette's deposition should not take place until MGA's unfair competition
16 document production is substantially complete. It is not. To persuade Mattel to
17 produce Mr. Bousquette, MGA represented that its production was substantially
18 complete on December 10, 2007. The truth turned out to be far different. Since
19 December 10, MGA has produced more than 400,000 pages of documents. If that were
20 not enough, MGA's counsel recently acknowledged that MGA owed Mattel "a bunch of
21 discovery" regarding its unclean hands defense, which incorporates all of MGA's unfair
22 competition claims. This "debt" of discovery owed to Mattel caused MGA to withdraw
23 its unclean hands defense to Mattel's Phase 1 claims.

24        MGA's motion should also be denied for the independent reason that
25 Mr. Bousquette only has knowledge regarding Phase 2 matters, and Phase 2 discovery
26 is stayed. MGA claims that Mr. Bousquette is a Phase 1 witness. Not so. The Court
27 has limited Phase 1 to issues "surrounding Carter Bryant's employment with Mattel,
28 and to those issues that impact the ownership of certain original Bratz drawings."

07209/2425757.4

-1-

1  Mr. Bousquette has no knowledge of those issues.  He worked in Mattel's Boys

2  Division until years after Bryant left the company.  MGA recognized this.  In its

3  supplemental disclosures from the fall of last year, MGA represented  that

4  Mr. Bousquette's knowledge related only to MGA's unfair competition claims against

5  Mattel, including trade dress and interference claims and MGA's now withdrawn

6  unclean hands defense.

7          MGA's efforts to depose Tina Patel -- another non-party, former Mattel

8  employee -- similarly fail.  Ms. Patel did not even begin working with Mattel until

9  2003, years after Carter Bryant left the company in late 2000.  In MGA's supplemental

10  disclosures, it identified her as having knowledge only regarding MGA's unfair

11  competition claims and unclean hands defense, exclusively Phase 2 issues.  MGA's

12  entire basis for now claiming that Ms. Patel is a Phase 1 witness is her purported role in

13  a *2003* study regarding Mattel's MY SCENE product.  That product is not at issue in

14  Phase 1.  MGA is unable to cite to any Mattel disclosure or discovery response that

15  links Patel to any Phase 1 issues.  MGA is simply trying to interject Phase 2 issues into

16  Phase 1, contrary to its own, now successful arguments to Judge Larson that Phase 2

17  discovery is inappropriate until after Phase 1 trial.  The Discovery Master should deny

18  MGA's motion to compel.

19                          **Argument**

20  **I.     THE DISCOVERY MASTER LACKS JURISDICTION TO COMPEL**

21          **MATTHEW BOUSQUETTE TO APPEAR FOR DEPOSITION**

22          MGA never served Mr. Bousquette with his deposition subpoena.  As

23  explained in the brief submitted by Mr. Bousquette's long-time counsel, Caldwell

24  Leslie, neither Mr. Bousquette nor Caldwell Leslie have permitted Quinn Emanuel

25  to accept the service of a subpoena on his behalf.  Nor has Quinn Emanuel ever

26  represented to MGA that it was authorized to accept service of Mr. Bousquette.  To

27  the contrary, it has been Mattel's consistent position that for former Mattel

28  executives and directors, MGA's counsel can ask Mattel's counsel if they are

07209/2425757.4

1  authorized to accept service; Mattel's counsel will then inquire. For example, on
2  September 18, 2007, Michael Zeller, counsel for Mattel, wrote to MGA's prior
3  counsel, "[I]f you wish to serve a subpoena on any *former* executive or director,
4  please let us know and we will attempt to locate them and get authority to accept
5  service."[1]

6  Here, although counsel for MGA never asked Quinn Emanuel about
7  accepting service for Mr. Bousquette, Timothy Alger, counsel for Mattel, asked
8  Christopher Caldwell, counsel for Mr. Bousquette, if Quinn Emanuel could accept
9  service of a subpoena for Mr. Bousquette. Mr. Caldwell said "no."[2]

10  Any "service" of a subpoena upon Quinn Emanuel was not effective.
11  Mr. Bousquette cannot be compelled to appear for deposition because he has never
12  been served. See Fed. R. Civ. Proc. 45(b) (requiring that "[s]ervice of a subpoena
13  upon a person named therein shall be made by delivering a copy thereof to such
14  person"); see also Alexander v. Jesuits of Missouri Province, 175 F.R.D. 556, 558
15  (D. Kan. 1997) (holding that witness was not required to appear for deposition in
16  response to a subpoena which was not properly served).

17  MGA's motion to compel is improper for the independent reason that
18  an application to compel discovery from a non-party must be made "in the district
19  where the discovery is being, or is to be, taken." Fed. R. Civ. P. 37(a)(1). "With
20  regard to the district court's enforcement authority, the Federal Rules provide that a
21  motion to compel discovery or disclosure by a nonparty must be made to the court
22  in the district where the discovery is being taken". U.S. ex rel. Pogue v. Diabetes
23  Treatment Centers of America, Inc., 444 F.3d 462, 468 (6th Cir. 2006). Judge
24  Larson specifically has recognized that motion practice with respect to non-party

25  _____
26  [1]. See Declaration of Jon D. Corey, filed concurrently herewith ("Corey Dec.")
    (emphasis in original), Exh. 1.
27
28

1   subpoenas in this case must be in the districts where the depositions will take place.[3]

2   Here, MGA's subpoena purports to seek Mr. Bousquette's deposition in Chicago,

3   Illinois.[4]  Accordingly, any motion to compel him to appear in Chicago, where he

4   resides, must be filed in the Northern District of Illinois.   The Discovery Master

5   lacks jurisdiction to compel Mr. Bousquette to appear for deposition in Chicago,

6   Illinois, pursuant to a motion filed in the wrong forum based on an unserved

7   subpoena.

8   **II.      THE DISCOVERY MASTER HAS RULED THAT BOUSQUETTE**

9   **SHOULD NOT SIT FOR DEPOSITION UNTIL MGA'S DOCUMENT**

10  **PRODUCTION IS SUBSTANTIALLY COMPLETE; AND MGA**

11  **ADMITS IT IS NOT**

12          Even if the Discovery Master had jurisdiction to compel

13  Mr. Bousquette's deposition, he should not do so.  The Discovery Master has

14  instructed that Bousquette's deposition "should not take place until [MGA's]

15  document discovery is substantially completed" as to him.[5]  MGA's document

16  production with respect to Mr. Bousquette is not substantially complete.  MGA's

17  efforts to depose Mr. Bousquette prior to the substantial completion of its document

18  production contravene the Discovery Master's direction and should therefore be

19  rejected.

20

21      [2]   See Declaration of Timothy Alger in support of Mattel's Opposition to MGA's
22  Ex Parte Application to Compel the Depositions of Bousquette and Patel, dated
    February 22, 2008, ¶ 2.
23      [3]   February 4, 2008 Hearing Tr., at 63:13-19, Corey Dec. Exh. 2.]
        [4]   See Amended Notice of Depositions and Service of Subpoenas to Adrienne
24  Fontanella, Ivy Ross, Robert Eckert and Matt Bousquette, dated January 14, 2008,
25  Corey Dec., Exh. 5.
        [5]   February 13, 2007 Hearing Transcript, at 34:15 - 34:18, Declaration of B.
26  Dylan Proctor in support of Mattel's Opposition to MGA's Ex Parte Application to
27  Compel the Depositions of Bousquette and Patel, dated February 22, 2008 ("Proctor
    Dec."), Exh. 14.
28

1    MGA represented that its unfair competition document production was
2    substantially complete on December 10, 2007.[6] In reliance on that representation,
3    Mattel informed MGA the next day that Mattel would seek a date for
4    Mr. Bousquette's deposition. Since December 10, 2007, belying that representation,
5    MGA has produced more than 400,000 pages of documents.[7] In its reply in support
6    of its *ex parte* application, MGA argued that those documents relate to Mattel's trade
7    secrets and RICO claims and therefore are not related to Bousquette or MGA's
8    unfair competition claims. As the Court has repeatedly ruled, however, the opposite
9    is true and MGA's unfair competition claims are intertwined with the trade secret
10   claims.[8] Indeed, it is MGA's trade secret thefts that show MGA was copying Mattel,
11   and not the other way around as MGA's unfair competition claims allege.

12   MGA's argument that its relevant discovery is substantially complete --
13   shown to be false by its actions since December 2007 -- is also belied by MGA's
14   own statements. MGA's counsel admitted little more than two weeks ago that the
15   representation of completeness is wrong. During a meeting of counsel on
16   February 15, 2008, counsel for MGA conceded that if MGA were to proceed in
17   Phase 1 with its unclean hands defense, which incorporates all of MGA's unfair
18   competition claims, then MGA owed Mattel "a bunch of discovery."[9] MGA has
19   now submitted two briefs on this issue since Mattel filed its opposition, but has not
20   disputed this. Rather than cough up this "bunch of discovery," MGA withdrew
21   unclean hands as a Phase 1 defense to Mattel's Phase 1 claims (while purporting to
22   maintain it as a Phase 2 defense). So, despite MGA's previous representation, it has

23
24   [6]   Letter from Corey to Mumford, dated December 11, 2007, at p. 2, Proctor
      Dec., Exh. 4.
25   [7]   Proctor Dec., ¶ 4.
26   [8]   See Order Regarding Mattel's Motion for Leave to Amend, date January 11,
      2007, at 19:20-21:6, Corey Dec. Exh. 4, Scheduling Orders, dated February 22,
27   2007, Corey Dec. Exh. 3; Court's July 2, 2007 Minute Order, Proctor Dec. Exh. 7,
      and Mattel's Memorandum Regarding Trial Structure, Proctor Dec. Exh. 8.
28

1 | not substantially completed its document production as to Mr. Bousquette (or unfair
2 | competition or unclean hands).  Until MGA can credibly represent that it has
3 | complied with the Discovery Master's prior direction, MGA's motion to compel
4 | Mr. Bousquette's deposition should be denied.

5 | **III.   BOUSQUETTE AND PATEL ARE NOT PROPERLY PHASE 1**
6 | **WITNESSES**

7 | **A.   Phase 1 Relates Solely to Ownership of Bratz**

8 | The Court has held that Phase 1 relates to the ownership of Bratz.
9 | Specifically, the Court has defined the scope of Phase 1 as limited to "issues
10 | surrounding Carter Bryant's employment with Mattel, and how those issues would
11 | impact the ownership of certain original Bratz drawings" and the "approximately
12 | two-hundred Bratz products that are potentially derivative of the drawings."[10]  MGA
13 | has failed to make any showing that either Mr. Bousquette or Ms. Patel have
14 | knowledge regarding those issues.

15 | **B.   MGA Identified Bousquette and Patel as Exclusively Phase 2**
16 | **Witnesses**

17 | In its most recent supplemental disclosures, MGA identified
18 | Mr. Bousquette and Ms. Patel as witnesses on solely Phase 2 issues.  Mr. Bousquette
19 | was identified by MGA as possessing knowledge regarding:

20 | Mattel's serial copying of MGA's distinctive trade dress,
21 | trademarks, product packaging, themes, ideas, and advertising;
22 | Mattel's dilution of MGA's famous marks; Mattel's interference
23 | with MGA's advertising efforts; Mattel's threats to and
24 | intimidation of retailers, suppliers, licensees, distributors,
25 | manufacturers, and former employees and freelancers; Mattel's
26 | improper influence of standard-setting and industry organization;

27 |
28 | [9]  Proctor Dec., ¶ 3.

1              Mattel's manipulation of MGA's retail displays and other aspects

2                 of Mattel's unclean hands.[11]

3 MGA identified Ms. Patel as possessing knowledge regarding "Mattel's investigation of

4 MGA and its executives, employees and freelancers, and other aspects of Mattel's

5 unfair competition and unclean hands."[12]

6             Now that MGA has withdrawn its unclean hands defense as to Phase 1,[13]

7 these are unquestionably and exclusively Phase 2 issues. None are related to the

8 ownership of Bratz and MGA has not argued otherwise. And, having convinced the

9 Court to stay Phase 2 discovery, MGA has no basis on which to depose Mr. Bousquette

10 or Ms. Patel now.

11       **C.**     **MGA's New Argument That Bousquette and Patel Are Proper**

12            **Phase 1 Witnesses Fails**

13            Only after convincing the Court that Phase 2 discovery should be

14 stayed does MGA now claim that, despite its supplemental disclosures,

15 Mr. Bousquette and Ms. Patel are Phase 1 witnesses. MGA's claim fails.

16            **1.**     **Matthew Bousquette**

17            MGA asserts that Mr. Bousquette has knowledge regarding Phase 1 issues

18 for several reasons. Each are without merit.

19            First, in an effort to claim that Mattel has identified Mr. Bousquette as a

20 Phase 1 witness, MGA mischaracterizes Mattel's description of Mr. Bousquette in its

21 initial disclosures and interrogatory responses. MGA claims that Mattel identifed

22 Mr. Bousquette as having knowledge regarding "Mattel's business operations and the

23

     [10]    July 2, 2007 Minute Order at p. 2, Proctor Dec., Exh. 7.

24     [11]    MGA Entertainment, Inc.'s Supplemental Disclosures and MGA

25 Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V., and Larian's Initial
Disclosures under Rule 26(a)(1), at p. 2, dated September 21, 2007, Proctor Dec.,

26 Exh. 12.

27     [12]    Id., at p. 13.

28

1  development and ownership of intellectual property at issue."[14] Mattel's identification

2  of Bousquette was with respect to Mattel's Phase 2 claims and the intellectual property

3  at issue in Phase 2.  Mattel's business operations are not at issue in Phase 1.  With

4  respect to Mattel's intellectual property, MGA makes much of the fact that

5  Mr. Bousquette was the former head of the Barbie Girls Division. He was, but not until

6  years after Bryant left Mattel.[15]  While Bryant was a Mattel employee, Mr. Bousquette

7  had nothing to do with Mattel's Girls Division and instead worked exclusively on *Boys*

8  brands (e.g., HOT WHEELS MATCHBOX), a different division.[16]

9         Second, MGA argues that Mr. Bousquette has knowledge regarding "the

10  meaning and scope of Mattel's Employee Inventions Agreement -- the core document at

11  issue in this case."[17]  Even MGA, however, claims that Bousquette's only involvement

12  with the Employee Inventions Agreement was presiding over a meeting in March 2004

13  (five years after Carter Bryant had left Mattel) in which the agreement was revised.[18]

14  Bousquette had no involvement in the Employee Inventions Agreement that was in

15  effect when Bryant signed it, five years earlier.

16         In its reply, MGA claims that the revision of the Employee Inventions

17  Agreement years after Bryant signed it is relevant to interpreting the contract.  The only

18  case MGA cites, however, does not support its position.  In <u>Montrose Chemical</u>

19  <u>Corp. v. Montrose Ins. Co.</u>, 10 Cal. 4th 645, 670-72 (1995), the California Supreme

20  Court found that the *prior-drafting history* for a standard form contract was relevant to

21  interpreting the agreement.  It did not hold or suggest that *subsequent changes* to the

22

23  [13]   MGA's Notice of Withdrawal of Unclean Hands Affirmative Defense as it Pertains to Phase 1, dated February 15, 2008, Proctor Dec., Exh. 3.

24  [14]   MGA's Application, at p. 3.

25  [15]   Eckert Depo. Tr. at 15:8-15, 23:2-24:2, Declaration of Jon Corey in support of Mattel's Opposition to MGA's Ex Parte Application to Compel the Depositions of

26  Bousquette and Patel, dated February 22, 2008 ("02/22/08 Corey Dec."), Exh. 4.

27  [16]   <u>Id.</u>

   [17]   MGA's Application, at p. 1.

28  [18]   MGA's Application, at p. 3.

1   contract were relevant to its interpretation. MGA fails to provide any authority
2   demonstrating that a revision to the Employee Inventions Agreement five years after
3   Bryant signed it is relevant to its interpretation. In any event, the construction of the
4   only agreements at issue in Phase 1 (the ones Bryant signed) is for the Court, not a
5   stranger to the agreement who may have seen another agreement five years later. And,
6   if MGA's unsupported arguments that this suffices to make a witness relevant to Phase
7   1 are accepted, then there would be little to nothing left of the Phase 2 stay. The Mattel
8   employees who MGA solicited to steal Mattel trade secrets signed versions of Mattel's
9   inventions agreements. By MGA's illogic, since they too have knowledge of such
10  agreements, discovery from them is necessarily Phase 1 as well.

11          Third, MGA claims that Bousquette has knowledge regarding "the
12  strategic reasons Mattel filed this lawsuit -- namely supposedly because Mattel was
13  unable to compete with Bratz in the marketplace."[19]  MGA's allegation in support of its
14  unclean hands defense that Mattel's motive in bringing suit -- i.e., that Mattel is seeking
15  to "undermine MGA's business and to 'kill' Bratz at any cost -- was purportedly
16  improper is irrelevant.[20]  That is the only basis that MGA has ever articulated for why
17  it is relevant, but MGA has now withdrawn that defense to all of Mattel's Phase 1
18  claims.[21]  As a result, Mattel's alleged motivation is only relevant -- if at all -- to Phase
19  2.  "It is well established that in ordinary litigation, not involving the clean hands
20  defense, the plaintiff's motive in bringing suit is not relevant to the subject matter of the
21  litigation and is not a matter for discovery."  Parsons v. Jefferson-Pilot Corp., 141
22  F.R.D. 408, 414-15 (M.D.N.C. 1992) (discussing at length standard rule that, absent

23

24      [19]  MGA's Application, at p. 1.
25      [20]  Amended Answer and Affirmative Defenses of MGA Entertainment, Inc.,
        MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. to
26  Mattel, Inc.'s Second Amended Answer and Counterclaims, at pp. 20-21, Proctor
        Dec., Exh. 13.
27      [21]  MGA's Notice of Withdrawal of Unclean Hands Affirmative Defense as it
28  Pertains to Phase 1, dated February 15, 2008, Proctor Dec., Exh. 3.

1   unclean hands defense, motive in bringing suit is not discoverable, and citing several
2   cases in support).

3           Fourth, MGA points to statements Bousquette allegedly made to a Wall
4   Street Journal reporter that Mattel brought its FLAVAS product from design to
5   production in three months.  MGA argues that the statements "directly contradict
6   Mattel's theory of the case," because, it asserts, Mattel claims that it is impossible to
7   bring a doll from design to production in that time.[22]  Not so.  Mattel has never claimed
8   that it would be impossible as some abstract matter for any company to bring a product
9   from design to production in three months.  Mattel contends that MGA's claim in this
10  litigation that *MGA* -- a company that had never done a fashion doll before -- could
11  bring Bratz to market in three months is false and not supported by the evidence
12  produced in this case.  The timing in which Mattel -- a company with far greater
13  resources and decades of experience and expertise in the doll industry -- could with
14  extraordinary effort take FLAVAS from design to production is not relevant to that
15  contention.  In any event, Mr. Bousquette's statement does not justify a deposition at
16  this stage.

17          In its reply, MGA asserts for the first time that Mr. Bousquette has
18  knowledge regarding why Mattel allegedly "waited so long to file this litigation."  But
19  MGA makes absolutely no showing in support of that assertion.  Instead, MGA simply
20  cites to portions of its *ex parte* application that set forth the four arguments addressed
21  above.    Those  arguments  are  without  merit  and  MGA's  efforts  to  depose
22  Mr. Bousquette in Phase 1 should be rejected.

23          **2.    Tina Patel**

24          MGA's arguments that Ms. Patel has knowledge regarding Phase 1 issues
25  are similarly baseless.  As even MGA acknowledges, Patel did not begin work for
26  Mattel until 2003 – years after Bryant had left the company.  MGA's claim that she is
27
28  [22]   MGA's Application, at p. 4.

1   somehow an important Phase 1 witness is based solely on Ms. Patel's involvement in a
2   study done in 2003 for Mattel's MY SCENE product.[23]  Mattel's response to Bratz is
3   not at issue in Phase 1.  Indeed, Judge Larson has specifically observed that the issue of
4   Mattel's response in Phase 2 was itself a principal reason for the trial phasing in the first
5   place.  As Judge Larson explained, "[t]he proverbial dog (ownership in BRATZ) should
6   be wagging the proverbial tail (the remaining commercial disputes), not the other way
7   around.[24]  Rather, Mattel's alleged response to Bratz and its MY SCENE line, among
8   many other issues, are the basis for many of MGA's unfair competition claims that are
9   to be tried in Phase 2.[25]  It is also the basis for MGA's unclean hands defense, which it
10  has withdrawn as to Phase 1.[26]  There is simply no basis for MGA to depose Ms. Patel
11  with Phase 2 discovery stayed.

12          MGA's efforts to depose Mr. Bousquette and Ms. Patel in Phase 1 are
13  part of its broader campaign to interject Phase 2 issues into Phase 1 while
14  simultaneously obstructing Mattel from obtaining discovery into those issues.  MGA
15  has now begun to argue that Mattel's damages should be reduced because the
16  reasons for Bratz's success is not Bryant's designs, but MGA' ostensibly superior
17  business practices.  The short answer to MGA's self-aggrandizement is that MGA
18  stole them from Mattel as well.

19

20  [23]   Notably, MGA does not seek the deposition of Lily Martinez, who was
21  designated to discuss MY SCENE, thus implicitly conceding that MY SCENE is a
    Phase 2 issue.
22  [24]   Order Re: Mattel's Motion for Leave to Amend, dated January 11, 2007, at
    20:21-23, Corey Dec. Exh. 4.
23  [25]   See, e.g., MGA's Complaint in Case No. 05-02727, dated April 13, 2005,
24  ¶¶ 31-65 (entitled, "Mattel's Response to BRATZ and Efforts to Thwart MGA's
    Competition") and ¶¶ 101-123, Proctor Dec. Exh. 15.
25  [26]   MGA's Notice of Withdrawal of Unclean Hands Affirmative Defense as it
26  Pertains to Phase 1, dated February 15, 2008, Proctor Dec., Exh. 3; Amended
    Answer and Affirmative Defenses of MGA Entertainment, Inc., MGA
27  Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. to Mattel, Inc.'s
28  Second Amended Answer and Counterclaims, at p. 20-21, Proctor Dec., Exh. 13.

07209/2425757.4

1          Illustrative of MGA's inappropriate efforts to interject Phase 2 issues

2  into Phase 1 -- while simultaneously refusing Mattel any discovery on them -- are

3  MGA's expert reports. Under the rubric of explaining "why Bratz was successful,"

4  MGA's experts seek to put at issue in Phase 1 details regarding Mattel's competitive

5  business practices and MGA's purported unique marketing, advertising and

6  innovation. Indeed, much of the report from one of MGA's purported experts,

7  Dr. Erich Joachimsthaler, appears to be lifted from MGA's unfair competition

8  complaint against Mattel.[27] As another example, Robert Tonner's report extensively

9  claims that Mattel's MY SCENE product is a "knock-off" of Bratz and that Mattel

10  "countered Bratz doing something that competing companies had always done to

11  them; they came out with something very similar to Bratz -- the MY SCENE

12  dolls."[28] Tonner argues that MY SCENE relied "heavily on the Bratz look."[29] MY

13  SCENE has no relevance to Phase 1. It is relevant to MGA's Phase 2 claims that

14  Mattel is liable for, among other things, false designation of origin and dilution,

15  because Mattel has supposedly "produc[ed], [sold] and market[ed] 'My Scene' dolls,

16  including styling heads and doll heads, and 'My Scene' pets that are confusingly

17  similar to MGA's 'BRATZ' line."[30]

18          MGA's efforts to interject MY SCENE products is a transparent, and

19  wholly improper, effort to interject Phase 2 issues into Phase 1 in violation of the

20  Court's phasing decisions, after representing to Judge Larson that "nobody was

21  trying to shove phase two into phase one."[31] MGA's attempt to depose

22

23    [27]  Compare Expert Report of Dr. Erich Joachimsthaler, dated February 11, 2008, at ¶¶ 138-142 (discussing Mattel's competitive approach to doll industry in

24  late 1990s and early 2000s), 02/22/08 Corey Dec., Exh. 2, with MGA's Complaint in Case No. 05-02727, dated April 13, 2005, ¶¶ 13-20 (same), Proctor Dec., Exh. 15.

25    [28]  Expert Report of Robert Tonner, at p. 17, 02/22/08 Corey Dec., Exh. 3.

26    [29]  Id.

27    [30]  MGA's Complaint in Case No. 05-02727, dated April 13, 2005, ¶ 104, Proctor Dec., Exh. 15.

28    [31]  February 4, 2008 Hearing Transcript, at 34:25-35:7, Proctor Dec., Exh. 9.

1   Mr. Bousquette and Ms. Patel here in Phase 1 is merely a part of those efforts.

2   Mattel has begun the process of seeking relief from Judge Larson to strike the Phase

3   2 issues from MGA's expert reports, and the Discovery Master should reject MGA's

4   attempts to circumvent the District Court's phasing Orders.

5                              **Conclusion**

6                For the foregoing reasons, Mattel respectfully requests that the

7   Discovery Master deny MGA's motion to compel the depositions of Matthew

8   Bousquette and Tina Patel.

9   DATED: March 7, 2008            QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
10

11                                   By _Jon Corey_ O.S.

12                                      Jon D. Corey
                                        Attorneys for Mattel, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**quinn emanuel**

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On March 7, 2008, I served true copies of the following document(s) described as **MATTEL, INC.'S OPPOSITION TO MGA'S MOTION TO COMPEL THE DEPOSITION TESTIMONY OF MATTHEW BOUSQUETTE AND TINA PATEL** on the parties in this action as follows:

Thomas J. Nolan
**Skadden, Arps, Slate, Meageher & Flom
LLP**
300 South Grand Ave., Ste. 3400
Los Angeles, CA 90071

Mark E. Overland
David C. Scheper
Alexander H. Cote
**Overland Borenstein Scheper & Kim
LLP**
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071

**BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 7, 2008, at Los Angeles, California.

NOW LEGAL -- Dave Quintana

07209/2217862 1

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On March 7, 2008, I served true copies of the following document(s) described as **MATTEL, INC.'S OPPOSITION TO MGA'S MOTION TO COMPEL THE DEPOSITION TESTIMONY OF MATTHEW BOUSQUETTE AND TINA PATEL** on the parties in this action as follows:

> John W. Keker, Esq.
> Michael H. Page, Esq.
> Christina M. Anderson, Esq.
> **Keker & Van Nest, LLP**
> 710 Sansome Street
> San Francisco, CA 94111

**BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

**BY FEDEX:** I deposited such document(s) in a box or other facility regularly maintained by FedEx, or delivered such document(s) to a courier or driver authorized by FedEx to receive documents, in sealed envelope(s) or package(s) designated by FedEx with delivery fees paid or provided for, addressed to the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 7, 2008, at Los Angeles, California.

_A. Navarro_

Amanda Navarro