# EXHIBIT 4

CALENDARED

ENTERED
CLERK, U.S. DISTRICT COURT

JAN 12 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION          BY DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT,<br><br>        Plaintiff,<br><br>v.<br><br>MATTEL, INC.,<br><br>        Defendant.<br><br>and related actions. | CASE NO. CV-04-9049-SGL<br><br>(Consolidated with cases CV-04-9059 and CV-05-2727)<br><br>ORDER REGARDING MATTEL'S MOTION FOR LEAVE TO AMEND |

This case has, increasingly, become one of the proverbial tail wagging the proverbial dog.

Back in April, 2004, Mattel, Inc., ("Mattel") filed a complaint in Los Angeles County Superior Court against its former employee and the reputed creator of the BRATZ dolls, Carter Bryant. The complaint pressed five separate state-law theories relating to certain agreements Bryant signed while an employee with Mattel, namely, an Employee Confidential Information and Inventions Agreement ("Inventions Agreement") and a Conflict of Interest Questionnaire ("COI Questionnaire"). Although couched in state law terms and ostensibly pled as a simple employment action, lurking beneath the allegations in the complaint was whether Bryant had either misappropriated Mattel's intellectual property or

EXHIBIT 4 PAGE 47

1-12

1  resources in creating and/or developing the BRATZ dolls or whether he continued
2  to develop his BRATZ design while still working in Mattel's employ. In either event,
3  the rights to the BRATZ dolls could become the property of Mattel, either through
4  infringement or through operation of the agreements noted above. The case was
5  later removed to this Court and was assigned the case number CV-04-9059. MGA
6  Entertainment, Inc. ("MGA"), the maker of the BRATZ doll line, then intervened "to
7  protect its rights to Bratz dolls" that were at stake in the action. Mattel, Inc. v.
8  Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006); see also id. at 1013 ("Mattel argues, 'a
9  significant risk of prejudice' to MGA [exists] if the ownership of rights to intellectual
10 property, i.e., the Bratz creations, were decided in the absence of MGA").

11      In the interim, Bryant filed a declaratory judgment action in this Court,
12 seeking for the Court to declare that his BRATZ doll creations did not infringe
13 Mattel's copyright in its Toon Teens products. See Court's July 18, 2006, Order at
14 3 (noting that, although "Bryant's complaint . . . makes reference to 'other Mattel
15 products,' . . . the substance of his allegations all address the product 'Toon
16 Teens'"). The declaratory judgment action was assigned the case number CV-04-
17 9049.

18      MGA then filed an action against Mattel in this Court broadening the scope
19 of the controversy beyond that concerned with the ownership rights to the BRATZ
20 doll line. MGA's complaint asserted various Lanham Act claims and their California
21 state law equivalent arising out of Mattel's alleged "habitual and unfair tactics of
22 competition-by-intimidation and serial copycatting of MGA's products." (Compl.
23 ¶ 7). In essence, although the prior actions were concerned with ownership in the
24 rights to the BRATZ doll line, the allegations in 05-2727 concerned whether there
25 had been unlawful efforts to block the marketing of those rights in the BRATZ dolls.
26 MGA's complaint did make mention of other products that were affected by Mattel's
27 alleged predatory business practices, but by far the largest portion of its complaint
28 concerned Mattel's conduct in undermining (or seeking to undermine) MGA's rival

2

EXHIBIT 4 PAGE 48

1  line of BRATZ dolls.[1]

2      By Order dated June 19, 2006, the Court consolidated all three cases "for all

3  purposes" as they "involve[d] a number of common issues of law and fact." As the

4  Court later noted in its August 10, 2006, Order: "At its heart, this case asks the

5  question: Who owns the rights to the Bratz dolls?" Resolution of this question lies

6  at the heart of or, at the very least, affects many of the other claims set forth in

7  each of the three respective cases. For instance, even though the allegations in

8  05-2727 concern Mattel's alleged efforts at defeating the marketing of the BRATZ

9  dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot

10  many of those allegations. It is hard to imagine how it is unlawful for a company to

11  thwart or otherwise undermine the marketing of a product it owns. Thus, if Mattel

12  owned the rights to the BRATZ dolls, many of the allegations in the 05-2727

13  complaint would become moot. That said, such consolidation did not do away with

14  the distinctions that do exist between the three cases. As the Court highlighted in

15  its consolidation order, when either party files a pleading in the case, "the first

16  paragraph of [that] document . . . shall inform the Court to which case(s) the

17  document relates."

18      On July 18, 2006, the Court dismissed Bryant's declaratory judgment action,

19  04-9049, finding there existed no reasonable apprehension of an imminent

20  copyright infringement claim being filed against him by Mattel based on Mattel's

21  Toon Teen intellectual property. See Court's July 18, 2006, Order at 4. The

22  Court's Order was predicated entirely upon counsel for Mattel's representation

23  during oral argument that it "will not maintain that Bratz infringes the copyright in

24  Toon Teens." Owing to this representation, the Court, in dismissing the declaratory

25  judgment action, made clear that any future "claim by Mattel of copyright

26

27  _____

    [1] That the marketing of the BRATZ dolls lies at the heart of the issues
28  between the rival doll makers in the 05-2727 case is best illustrated by the Court's
    discussion of those allegations in its August 26, 2005, Order, Granting in Part and
    Denying Part Mattel's Motion to Strike portions of MGA's complaint.

EXHIBIT 4 PAGE 49

1   infringement based on the Toon Teens product is barred by counsel's

2   representation." July 18, 2006, Order at 4.

3       Presently before the Court is Mattel's request for leave to file an amended

4   complaint in the 04-9059 action. The complaint broadens considerably the nature

5   of the action from its genesis in state court. Whereas before the complaint simply

6   sought to litigate alleged contractual and fiduciary breaches by Bryant while in the

7   employ of Mattel (no doubt geared toward procuring a legal basis for Mattel to lay

8   claim to the BRATZ doll line), the amended complaint adds five more defendants

9   and nine new legal claims, alleging a wide range of commercial disputes between

10   the rival doll makers that spans three countries. For instance, the amended

11   complaint now contains RICO claims, a misappropriation of trade secrets claim,

12   and various aiding and abetting claims all stemming from allegations that MGA

13   cherry-picked certain high-ranking Mattel executives in foreign markets (many also

14   named as defendants in the amended complaint) or designers (namely, Bryant),

15   and then enticed or encouraged those same individuals to steal various trade and

16   proprietary secrets (be it sales plans, sales projections, customer profiles, or

17   intellectual property) from Mattel and hand them over to MGA before going to work

18   at MGA.

19       Moreover, the amended complaint expands upon the existing breaches of

20   contract and fiduciary duty claims in the original complaint by expanding the

21   universe of former employees (namely, the cherry-picked executives) to whom

22   those claims now apply.

23       Finally, Mattel now makes plain what was always lurking in its original

24   complaint — a copyright claim, but one directed not only to Bryant but also to MGA,

25   MGA's Hong Kong subsidiary, and MGA's President and CEO Isaac Larian.

26   Moreover, Mattel characterizes its copyright claim somewhat differently from that at

27   issue in Bryant's declaratory relief action: "The Amended Complaint does not

28   include a claim for infringement of copyrights in Toon Teens, but rather

4

EXHIBIT 4 PAGE 50

1  infringement of copyrights in Bratz." (Reply to MGA Opp. at 11).  Toward that end,

2  Mattel has recently filed copyright registrations with the U.S. Copyright Office

3  claiming ownership in various BRATZ doll design drawings penned by Bryant.

4  A.    ANALYSIS

5         Federal Rule of Civil Procedure 15(a) provides that, once a responsive

6  pleading has been served, "a party may amend the party's pleading only by leave of

7  court or by written consent of the adverse party; and leave shall be freely given

8  when justice so requires." With no consent to Mattel's proposed filing proffered by

9  MGA and Bryant, determining whether to grant Mattel leave to file an amended

10  complaint is gauged by looking to the familiar formulation of factors set forth by the

11  Supreme Court in <u>Forman v. Davis</u>:

12
13              In the absence of any apparent or declared
                reason—such as undue delay, bad faith or dilatory
14              motive on the part of the movant, repeated failure to
                cure deficiencies by amendments previously allowed,
15              undue prejudice to the opposing party by virtue of
                allowance of the amendment, futility of amendment,
16              <u>etc.</u>—the leave sought should, as the rules require, be
                'freely given.' Of course, the grant or denial of an
17              opportunity to amend is within the discretion of the
                District Court, but outright refusal to grant the leave
18              without any justifying reason appearing for the denial is
                not an exercise of discretion; it is merely abuse of that
19              discretion and inconsistent with the spirit of the Federal
                Rules.

20  371 U.S. 178, 182 (1962).

21         MGA and Bryant offer the following reasons for denying Mattel leave to

22  amend:  (1) Mattel has long known of the factual predicates underlying its copyright

23  and intentional interference claims but delayed in asserting them; (2) the proposed

24  amendment to add the copyright claim and the intentional interference claims

25  (against the new defendants) are futile because they are barred by the applicable

26  statute of limitations; (3) the copyright claim had been brought in bad faith by Mattel

27  because of its prior public disavowal of an intent to assert such a claim; and (4)

28  MGA and Bryant would incur undue prejudice were the copyright claim added to the

5

EXHIBIT 4 PAGE 51

1  suit because of alleged spoilation of evidence issues involving Mattel's ZEUS

2  computer system used by doll designers at Mattel and its e-mail system. None of

3  these arguments are persuasive.

4      1.    Awareness of Factual Predicate for Copyright and Intentional

5            Interference Claims

6      MGA argues that Mattel has long known about the factual predicate for its

7  recently added copyright claim, observing that, "[o]ver four years ago, in August

8  2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant

9  created the project that became the 'Bratz' dolls — and worked with MGA to 'steal'

10 that project — while still employed at Mattel." (MGA Opp. at 9). Similarly, MGA

11 argues that Mattel has long known of the factual predicate for its intentional

12 interference claim with respect to Bryant's contract given that, "[b]y Mattel's own

13 admission, it learned in November 2003 — more than three years ago — that

14 Bryant had signed a contract with MGA 'dated as of' a month prior to his final day at

15 Mattel." (MGA Opp. at 11-12).

16     At the outset it must be observed that "[m]ere delay in proffering an

17 amendment does not justify denying leave to amend." Sierra Club v. Union Oil Co.

18 of California, 813 F.2d 1480, 1493 (9th Cir. 1987), vacated on other grounds by,

19 485 U.S. 931 (1988), and reinstated by, 853 F.2d 667 (9th Cir. 1988). Seizing upon

20 this point of law, Mattel argues that "only in . . . cases" when "granting leave would

21 require discovery to be reopened after summary judgment motions have been filed"

22 has the Ninth Circuit found the denial of leave "justified" based on the passage of

23 time alone. (Reply to MGA Opp. at 3). That is incorrect. There is a line of cases

24 from the Ninth Circuit finding that, if a "party seeking amendment knows or should

25 know of the facts underlying the amendment when the original complaint is filed,

26 the motion to amend may be denied." Sierra Club, 813 F.2d at 1493 (citing Jordan

27 v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982)). And, recently, the

28 Ninth Circuit upheld the denial of leave to amend based on the passage of time

6

EXHIBIT 4 PAGE 52

1   even though the requested leave to amend was tendered before the time, as set

2   forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired.

3   See AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946 (9th Cir. 2006).

4   The Ninth Circuit observed that, even when a request for leave to amend is timely

5   under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless

6   still deny the request based on any of the Forman factors. Id. at 951-52. The Ninth

7   Circuit then noted that the issue of untimeliness (regardless of whether the

8   amendment is tendered "within the period of time allotted by the district court in a

9   Rule 16 scheduling order") in seeking to amend can constitute a justification for

10  denying leave to amend if "the moving party knew or should have known the facts

11  and theories raised by the amendment in the original pleading." Id. at 953.

12  Toward that end, the Ninth Circuit observed that "an eight month delay between the

13  time of obtaining a relevant fact and seeking a leave to amend is unreasonable."

14  Id. In this regard, the Ninth Circuit in Dialysist was unpersuaded by the fact that,

15  even though the moving party had known of the facts prompting the amendment for

16  a long period of time, there still remained eight more months of discovery for the

17  parties to marshal facts against the allegations raised by the amended pleading:

18  "Even though eight months of discovery remained, requiring the parties to scramble

19  and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was

20  tainted, would have unfairly imposed potentially high, additional litigation costs on

21  Dialysist West that could have easily been avoided had AmerisourceBergen

22  pursued its 'tainted product' theory in its original complaint or reply." Id. Thus,

23  absent "a satisfactory explanation" for the delay in amending the complaint, the

24  Court is well within its rights to deny leave to amend. Id.

25       Mattel proffers the following reasons for taking the time that it did before

26  presenting its amended complaint: (1) Acting out of an abundance of caution to its

27  obligations under Rule 11 to present "factual contentions [that] have evidentiary

28  support," Mattel waited until its claims were better supported by evidence

7

EXHIBIT 4 PAGE 53

1 uncovered in discovery; and (2) the delay in the proceedings caused by "the year-

2 long stay and the parties' prior jurisdictional disputes" have left the case still in its

3 "nascent stage." (Reply to MGA Opp. at 2, 4).

4 The first reason is not well-founded. Rule 11 specifically allows parties to

5 aver factual allegations that "are likely to have evidentiary support after a

6 reasonable opportunity for further investigation or discovery" so long as the party

7 makes clear in its pleading that its factual contentions on those points are with the

8 caveat that they are based on a good faith belief that further discovery would

9 unearth evidence to support them. See FED. R. CIV. P. 11(b)(3). Simply put, Rule

10 11 did not stand in the way of Mattel averring the factual contentions it now claims it

11 "merely suspected" as being the case based on the limited information before it.

12 Mattel could have gone ahead and made such suspected factual allegations so

13 long as it caveated those claims with the declaration that it reasonably believed that

14 those allegations would be borne out by further discovery. Perhaps the time by

15 which Mattel could have reasonably believed such allegations would be borne out

16 by further discovery occurred after the dates noted by MGA, but it is hard to fathom

17 that such materialization took three or four years to occur.

18 The second reason would have some merit to it but for the fact that the

19 information that alerted (or should have alerted) Mattel to the existence of its now

20 asserted copyright and intentional interference claims was brought to Mattel's

21 attention well before the case was stayed on May 20, 2005. The stay, therefore,

22 did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the

23 stay does not explain why Mattel waited nearly six months after the stay was lifted

24 on May 16, 2006, to present those claims now.

25 All of that being said, the one thing that gives the Court pause in denying

26 leave based on the tardiness in Mattel's presentation is the lack of any evidence

27 that MGA or Bryant have been prejudiced by the delay. Delay unconnected to

28 some showing of prejudice, be it prejudice to the parties or disruption in judicial

8

EXHIBIT 4 PAGE 54

1  management of the case, does not suffice to deny granting leave to amend.  The

2  Ninth Circuit has noted that, "where a defendant is on notice of the facts contained

3  in an amendment to a complaint, there is no serious prejudice to defendant in

4  allowing the amendment" even if it is made tardily.  Sierra Club, 813 F.2d at 1493.

5  Indeed, the denial of leave was proper in the Dialysist case not simply because of

6  the length of the delay, but because the delay itself was "detrimental" in that it

7  would entail the opposing party to have "unfairly" incurred "potentially high,

8  additional litigation costs" that could have been avoided if the moving party had

9  made clear its intentions earlier.  465 F.3d at 953.

10      Here, as well demonstrated in Mattel's papers, it is readily apparent from the

11  pleadings filed by MGA and Bryant in this case that both have been aware for some

12  time of the factual predicates now underlying Mattel's copyright claim and

13  intentional interference claim.  (See MGA Opp. at 5 ("As Bryant and MGA

14  suspected at the time of filing — and Mattel now concedes by conduct — those

15  deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all

16  along")(emphasis added)).  The parties have engaged in meaningful discovery

17  regarding many of the facts touched upon by these new claims, be it tracking down

18  experts in various forensic fields or taking depositions of various of the key players

19  to those claims.  In point of fact, in their papers filed with this Court before this

20  present motion, both Bryant and MGA have made it abundantly clear that they have

21  long suspected that a copyright infringement claim was in the offing as evidenced

22  by Bryant's filing of the declaratory judgment action and MGA's intervention in the

23  05-9059 matter to protect its rights to the BRATZ dolls.  Similarly, MGA and Bryant

24  have been on notice to the facts comprising the interference claim concerning

25  Bryant's contract as evidenced by the identity of the individuals who have been

26  deposed by Mattel, as well as the nature of the questions posed and the testimony

27  proffered at those depositions.  MGA's argument that, with the amendments, it

28  faces the prospect of defending "against stale claims" owing to faded memories and

9

EXHIBIT 4 PAGE 55

1 loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13),
2 is diminished by the fact that (no doubt owing to the sophistication of all counsel
3 involved) discovery on these very issues have been proceeding apace by both
4 sides long before Mattel filed its proposed amendments. This is simply not a case
5 where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by
6 allowing the proposed amendments; much of those costs have already been borne
7 by the parties for some time.

8          2.     Spoilation of Evidence

9          MGA next argues that Mattel's delay in bringing the amended complaint has
10 caused it prejudice as, in the interim, critical pieces of evidence have been or are
11 suspected of having become lost. For instance, MGA asserts that Mattel's Rule
12 30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that,
13 "although Mattel identified and segregated its most relevant backup tapes available
14 for Zeus, Mattel allowed its tape backup system to expire the database for those
15 backup tapes, thereby eliminating all information about what was actually stored on
16 those backup tapes." (MGA Opp. at 9-10). Information on the Zeus computer
17 system is critical because of Mattel's assertion that part of its copyright claim rests
18 on Bryant's exposure to Mattel development programs. (First Am. Compl. ¶ 26(a)).
19 As explained by MGA: "[C]oncept data and drawings created by [Mattel] design
20 center personnel are stored on Zeus. Thus, the electronic documents stored on
21 Zeus – which should include the metadata showing who created, edited and
22 accessed Mattel's concept drawings and designs – during the time Bryant worked
23 in the design center at Mattel is vitally important to defending against Mattel's
24 claims." (MGA Opp. at 14). MGA's argument is neither an accurate
25 characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure
26 claim.

27          Ms. Marine did not testify that the information on the backup tapes (some
28 fifty in total) was lost, but rather that Mattel no longer carried the type of hardware

10

EXHIBIT 4 PAGE 56

1  that could restore the information still found on those tapes:

2      Q.    So if you wanted to restore that 2002 backup
            tape[s] then, how would you go about doing that?

3

4                                . . . .

       A.    You need the hardware so if we don't have the
5            hardware — if [the technology used by the tape
            is] DLT we don't have the hardware and you've
6            got to buy it and — well, first you have to find a
            place to put it with adequate power which we
7            don't have in the design center. You need to
            have a tape library. You need to have the tape
8            drives that carried those tapes. You need a
            server that has the capability to — that's big
9            enough to handle all of the hardware. You need
            the software – the license for the backup
10           software[, Net Backup]. You need the disk space
            to restore it to and then you have to start reading
11           in all those tapes.

12     Q.    You said that you don't have that in the design
            center. Do you have that hardware anywhere
13           else in the company?

14     A.    DLT? No, no.

15     Q.    At what point did you get rid of the hardware?

16     A.    Once the last backups — DLT backups expired
            so it would have been a couple years ago
17           probably.

18  (Decl. Diana Torres, Ex. K at 118-119).

19       The above testimony clearly denotes the difficulty in restoring what was on

20  Mattel's Zeus computer system during the relevant time frame, but it certainly does

21  not demonstrate that the information on those backup tapes has been "eliminated"

22  or forever lost. Undoubtedly it will be a costly endeavor to recover that information

23  (not to mention to later search and sort through it); but to argue, as MGA does, that

24  the information is "unavailable" or "lost", (MGA Opp. at 9, 14), exaggerates its

25  plight. Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the

26  information on the Zeus backup tapes has been present for some time (maybe

27  since 2004 or perhaps even earlier). This is important because it undermines

28  MGA's claim that Mattel's undue delay in bringing its amended complaint will cause

11

EXHIBIT __4__ PAGE __57__

1    it to suffer prejudice it otherwise would not have faced if the amendments were
2    brought sooner. Such prejudice has been present for years, and Mattel's failure to
3    bring its amended complaint sooner would not have changed this situation.

4        Similarly, MGA's point that access to what was on the Zeus computer
5    system is vital in demonstrating that Bryant was not exposed to or otherwise did not
6    hack the system to steal other designers work is diminshed to some extent by the
7    fact that Bryant himself testified that he did not use the Zeus computer system and
8    was "pretty much computer illiterate" while employed at Mattel. Admittedly, the
9    ability to point to information on the Zeus system backup tapes to prove that Bryant
10    did not access other designers drawings or to prove the date those drawings were
11    created by those other designers would be useful evidence to negate Mattel's
12    factual claims. Nonetheless, such evidence still would not discount other avenues
13    outside of the Zeus computer system by which Mattel could seek to prove that
14    Bryant was exposed to its copyrighted works, _e.g._, witness testimony that Bryant
15    saw drawings of the same posted on other designers' cubicles.

16        MGA next surmises that Mattel's e-mail records have disappeared, not
17    because it has any proof on that point, but simply because Mattel has postponed
18    the deposition of the individual most knowledgeable of Mattel's e-mail records until
19    after the hearing on Mattel's motion for leave to amend. (MGA Opp. at 10).
20    Speculation of spoilation does not suffice. That MGA's argumentation on this point
21    is nothing more than speculation is best exhibited by the evidence it has proffered
22    in support of its argument: "[I]f the sole retained backup for Zeus is no longer
23    available, it is not hard to imagine that Mattel's electronic mail archives are similarly
24    out of reach." (MGA Opp. at 15 (emphasis added)). MGA then makes much of a
25    deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his
26    inbox would be automatically deleted if they had remained there for more than a
27    certain time period. (Decl. Diana Torres, Ex. H at 292-93). MGA takes from this
28    acknowledgment that Mattel has an "automatic email deletion system" that has

12

EXHIBIT 4 PAGE 58

1  compromised Mattel's "duty to preserve documents." (MGA's Opp. at 14).

2  Noticeably absent from MGA's argument is any evidence that the e-mails so

3  deleted from a Mattel employee's inbox are forever lost or, as is far more likely,

4  whether such information remains or is otherwise archived on some backup file on

5  Mattel's computer system. Absent concrete proof that spoilation has occurred,

6  nothing in MGA's argument forms a basis for denying Mattel its requested leave to

7  amend.

8        3.    Statute of Limitations

9        MGA next argues that Mattel's copyright and intentional interference claims

10  are futile as both are barred by the applicable statute of limitations. This argument

11  was pressed emphatically at oral argument. With respect to the copyright claim,

12  MGA argues that the applicable statute of limitations is three years, with the

13  limitations period accruing from when a party has knowledge of a violation or when

14  a reasonably diligent person would have been put on inquiry of the infringement.

15  (MGA Opp. at 16 (citing Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir.

16  1994)). MGA argues that Mattel was put on notice about its copyright claim in

17  August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant

18  had stolen the idea for BRATZ while working at Mattel. Thus, according to MGA,

19  the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's

20  current copyright claim stale.

21        The problem with MGA's analysis is it fails to take into account the relations-

22  back principles found in Rule 15(c), which provides that "[a]n amendment of a

23  pleading relates back to the date of the original pleading when "the claim . . . in the

24  amended pleading arose out of the conduct, transaction, or occurrence set forth . . .

25  in the original pleading," or if such relation back is otherwise permissible by the

26  state "law that provides the statute of limitations applicable to the action." By

27  MGA's own admission Mattel's copyright claim arises out of the same conduct or

28  transaction contained in the original complaint filed in April, 2004, well within the

EXHIBIT 4 PAGE 59

●                                            ●

1  applicable limitations period.[2] (MGA Opp. at 12 ("These very same allegations
2  [contained in the original complaint] underlie the copyright infringement and
3  intentional interference contract claims Mattel now seeks to allege against MGA,
4  Mr. Larian and Bryant")).

5       MGA's statute of limitations argument with respect to the intentional
6  interference claims fares no better. According to MGA, the applicable statute of
7  limitations is two years for an intentional interference with contract claim and Mattel
8  was aware of the facts alerting it to this claim (insofar as Bryant's contract is
9  concerned) on November 24, 2003, when it learned "that Bryant worked with MGA
10 to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence,
11 prior to the expiration of his contractual relationship with Mattel."[3] (MGA Opp. at 18
12 (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999)). Such a time line
13 would, according to MGA, mean that the applicable limitations period expired on
14 Mattel's interference with Bryant's contract claim on November 24, 2005, well
15 before Mattel sought leave to file its amended complaint. (Id). The problem again
16 with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional
17 interference claim would relate back to when it filed its original complaint in April,

18
19
_____

20  [2] The same would appear to be true — that the amendments would be timely
21  — if the amendments related back to Mattel's answer (filed on May 13, 2005) to
    MGA's complaint in the 05-2727 case.
22

23  [3] With respect to Mattel's interference with contract claim as to one of its
    former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim
24  on September 17, 2004, when Brawer informed Mattel that he leaving to go to work
    for MGA. (MGA Opp. at 19-20). The problem with this argument is that nothing from
25  that simple event — Brawer's declaration of his intent to leave — in any way would
    apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct
26  (the stealing of proprietary information) causing Brawer to breach his contract with
    Mattel that he would not do anything to help a competitor while working for them.
27  MGA's contention that Mattel must have known of those misdeeds in mid-September
    is nothing more than speculation. Futility cannot be founded on what might or might
28  not be the case; either a claim is futile to bring or it is not.

14

EXHIBIT 4 PAGE 20

1   2004, well before the limitations period expired.[4]

2        Accordingly, MGA's futility argument is not well-founded.

3        4.    Prior Disavowals of Asserting a Copyright Claim

4        Finally, MGA takes umbrage with the cageyness to which Mattel has taken in

5   this case as to whether or not it is asserting a copyright infringement claim against

6   it. To MGA, such ducking and weaving on Mattel's part renders its effort to now

7   bring such a copyright claim as one done in bad faith. No doubt the Court itself has

8   been subjected to Mattel's overly vague statements on this point, but in the end

9   nothing in those statements has ever foreclosed the possibility that such a claim

10  may be in the offing. Indeed, during the oral argument on Mattel's motion to

11  dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as

12  to whether it would assert such a copyright claim against Bryant as it is currently

13  seeking to do. The most that Mattel's counsel would proffer was that Mattel would

14  not assert a copyright claim against Bryant based on Mattel's copyright rights in

15  TOON TEENS. At that point, the Court directed the parties to engage in a meet

16  and confer based on counsel for Mattel's representation and to provide a report to

17  the Court based on those discussions. The report submitted to the Court made

18  clear that, although Mattel was willing to accede that it would not bring a copyright

19  claim based on TOON TEENS, it refused to accede to Bryant's broader request

20  that "Bryant 'never copied anything' and that no Mattel product has any 'relevance'

21  to any claim that Mattel has or ever will assert against Bryant." This by itself should

22  have dispelled any illusion either Bryant or MGA was operating under that Mattel's

23  prior statements had foreclosed any potential copyright claim against them.[5]

24

25        [4] Again the relations-back principle would also seem to render its claim timely
          if it were filed as an amended answer (the original having been filed in May, 2005) in
26        the 05-2727 case.

27        [5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac
          Larian, for the "Doe" defendants listed in its original complaint is improper because
28        Mattel knew of their identity when it filed the original complaint. The argument is

15

EXHIBIT 4 PAGE 61

1    That said, Mattel's allegation in the amended complaint as to how it is

2  seeking to lay claim to the copyright in BRATZ is disconcerting. Paragraph 26,

3  subsection a, in the amended complaint alleges that Bryant "misappropriated and

4  misused Mattel property" by "using his exposure to Mattel development programs to

5  create the concept, design and name of Bratz." (First Am. Compl. ¶ 26(a)). Such

6  "exposure" could include Bryant misappropriating the Mattel design concept in

7  TOON TEENS in drawing his inspiration for the BRATZ doll. Were Mattel's

8  copyright claim so predicated it would be barred by this Court's July, 2006, Order,

9  dismissing Bryant's declaratory judgment action. Mattel was pressed on this point

10  during oral argument and conceded that such "exposure" to Mattel "development

11  programs" did not include TOON TEENS. With this representation, nothing in

12  Mattel's proposed copyright claim is barred under the rubric of bad faith.

13    5.    Judicial Economy Considerations

14    In his opposition, Bryant adds an additional reason for denying leave beyond

15  those contained in MGA's papers — the amendment would muddy the waters in the

16  04-9059 by adding "tangential" issues that would only serve to delay resolution of

17  the key issue lying at the heart of the complaint: Who owns the rights to the

18  BRATZ line of dolls. (Bryant Opp. at 2 ). Bryant notes that the case has proceeded

19  apace in moving toward resolving that issue, and the amendment would "transform

21  misplaced. As made clear by Mattel, California law allows a plaintiff to substitute in a
22  defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or
ignorant of the basis for liability at the time the complaint was filed. See Miller v.
23  Thomas, 121 Cal.App.3d 440 (1981). MGA does not dispute this legal contention
24  but at oral argument disputed that Mattel did not know the basis for liability against
itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in
25  the original complaint and those now proffered against the two in the amended
complaint. Specifically, MGA notes that the original complaint spoke of Bryant
26  working for one of Mattel's competitiors and of that employee's theft of Mattel's
intellectual property before leaving to work for that competitior. At most, all this
27  shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr.
28  Larian encouraged Bryant's alleged unlawful behavior recited in the original
complaint.

16

EXHIBIT 4 PAGE 42

1  what Mattel has always claimed was a straightforward employment action against
2  an individual defendant into a global commercial dispute against Mattel's primary
3  competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns
4  BRATZ.[6] (Bryant Opp. at 2). Mattel argues that "the law does not deny leave to
5  amend because claims are 'tangential'" and then reiterates its point that some
6  showing of prejudice, namely, seeking leave after expiration of discovery, is
7  necessary. (Reply to Bryant Opp. at 3). That is not entirely correct.

8      As noted previously, the Ninth Circuit recently upheld a denial for leave to
9  amend because the amendment would have "drastically changed" the litigation,
10 even though the leave request was tendered before the time, as set forth in a Rule
11 16(b) pre-trial scheduling order, for filing a motion to amend had expired and well
12 before the discovery cut-off. See AmerisourceBergen Corp. v. Dialysist West, Inc.,
13 465 F.3d 946, 953 (9th Cir. 2006). In justifying its reasoning the Ninth Circuit cited
14 approvingly to the following statement from a well-respected treatise: "If an
15 amendment substantially changes the theory on which the case has been
16 proceeding and is proposed late enough so that the opponent would be required to
17 engage in significant new preparation, the court may deem it prejudical." Id. at 953
18 n.2 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,
19 FEDERAL PRACTICE AND PROCEDURE § 1487 (2nd ed. 1990)). Thus, Dialysist
20 recognized that the introduction of "different legal theories" and/or proof of
21 materially different facts well into the litigation can itself be a basis for finding
22 prejudice regardless of whether the period for discovery has expired (or is even
23 close to expiring) or the parties have already filed summary judgment motions. Id.
24 at 953-54.

25      Although the parties can safely be said to be at this point well into the

26

27      [6] Bryant also brings intricate legal arguments about the sufficiency of the
28 allegations Mattel has averred in building its RICO claims against him. Such
considerations are best left to be resolved on a properly filed motion to dismiss.

17

EXHIBIT 4 PAGE 63

1  litigation in this consolidated action (as evidenced by the protracted discovery
2  disputes contained in the docket sheet that the parties have had before the
3  magistrate judge and now the special master, and the litigation of motions to
4  dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel
5  has made painfully clear in its papers, no scheduling order has been entered in this
6  case.[7] This takes away somewhat from the prejudice Dialysist found to exist when
7  a "drastic change [in a party's] litigation theory" takes place mid-stream in the
8  litigation process. Id. at 953. Simply put, without a schedule for the filing of pre-trial
9  motions and other matters (e.g., discovery cutoff), the parties have been given free
10 reign in how to conduct the litigation in this case.

11       That the delay in bringing the proposed amendments and the relative length
12 of time into the litigation when those amendments were brought may not neatly fold
13 into Dialysist's reasoning does not mean that leave must nonetheless be granted.
14 The 04-9059 action, as it is presently constituted, is not a complex one. It asks a
15 rather narrow and straightforward question — Did anything from Bryant's
16 employment at Mattel during the 1999-2000 period give Mattel ownership rights to
17 the BRATZ doll line? The proposed amendments would radically alter the litigation
18 in that case to include far ranging disputes involving multiple parties and concerning
19 events not connected with the BRATZ ownership issue. That the original action
20 was a relatively simple and straight-forward matter raises another point beyond the
21 change in the action's litigation posture — whether entangling the rival doll makers'
22 other commercial disputes into this particular case would serve to muddy the waters
23 and make the matter that much more difficult to manage from the Court's
24 perspective.

25

26    [7] Mattel's repeated refrain that the matter is in its nascent stage as evidenced
   by the fact that the parties only just recently exchanged in initial disclosures is
27 misleading. The exchange of initial disclosures referred to by Mattel is in the 05-
   2727 case. With respect to the 04-9059 case it appears that such initial disclosures
28 were completed long ago as evidenced by the fact that discovery disputes appeared
   in that case as far back as January, 2005.

18

EXHIBIT 4 PAGE 04

1   As has long been recognized, equally important in determining whether to
2   grant such leave is what impact such amendments would have on the court's ability
3   to manage the case. See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE
4   § 15.15[1] at 15-42.1 to 15-43 (3rd ed. 2006)("A court should also consider judicial
5   economy and its ability to manage the case. . . . The court should also temper the
6   policy favoring freely granting leave to amend with consideration of the ability of the
7   district court to manage the case adequately if amendment is allowed"). As Judge
8   Clark for the Fifth Circuit once observed: "In keeping with the purposes of the rule,
9   the court should consider judicial economy and whether the amendments would
10  lead to expeditious disposition of the merits of the litigation. Finally, the court
11  should consider whether the amendment adds substance to the original allegations,
12  and whether it is germane to the original case of action." Chitimacha Tribe of
13  Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also
14  Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir.
15  1987)("General considerations of judicial economy also justify allowing the
16  amendments. The violations included in the proposed amendment relate to the
17  same subject matter as the original complaint. Allowing the amendment will further
18  the federal policy of 'wrapping in one bundle all matters concerning the same
19  subject matter.'").

20  Mattel's amendments do not add substance to the claims contained in its
21  original complaint. Rather, they would expand the universe of claims and
22  defendants stretching well-beyond the questions raised in the original complaint
23  over whether Bryant's conduct while in the employ of Mattel subjected his later
24  attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions
25  Agreement or otherwise rendered his creation subject to an infringement action.
26  Nowhere does Mattel seek to reconcile the breadth of its present amendments with
27  the narrowness of the allegations contained in its original complaint. In fact, the
28  precise opposite is true. Mattel acknowledges that its proposed amendments bear

19

EXHIBIT 4 PAGE 105

1 more congruity to the allegations leveled against it in MGA's Lanham Act case than

2 to those in the action to which it seeks to add them:

> [M]any of the matters raised by Mattel's proposed
> Amended Complaint are and will remain at issue
> because of MGA's Complaint, whether or not leave to
> amend is granted. MGA's claims allege that a broad
> array of purported Mattel conduct across the globe,
> starting at least as early as 1999, has violated the
> Lanham Act and unfair competition law. This includes
> Mattel's alleged infringement of Bratz and other MGA
> products. As a result, issues in the proposed Amended
> Complaint are already part and parcel of Mattel's
> defenses to MGA's unfair competition claims, including
> because they show that MGA and Bryant, and not
> Mattel, are ones who stole the products and other
> properties involved.

11 (Reply to Bryant Opp. at 7 (emphasis added)). Mattel apparently finds this

12 discongruity unimportant because "all of these matters have been consolidated with

13 the Bryant case." (Id. at 7). As noted earlier, the fact that the cases have been

14 consolidated does not mean that the parties can ignore the distinctions that still

15 exist between them. If, as Mattel acknowledges, the present amendments are

16 nothing more than re-formulated defenses and counterclaims it presently has to

17 MGA's complaint against it in the 05-2727 case, then such amendments should be

18 brought in the form of an amended answer and counterclaim in that case.

19 Consideration of the distinctions between the two cases is wise as it serves

20 as a useful tool in providing the Court a better means to manage the cases now

21 that they have been consolidated. The proverbial dog (ownership in BRATZ)

22 should be wagging the proverbial tail (the remaining commercial disputes), not the

23 other way around. Admittedly, the dog's tail has grown in size both by MGA's filing

24 of its complaint in the 05-2727 action and Mattel's response thereto through its

25 proposed amendments. Nonetheless, it is readily apparent to the Court that the

26 crown jewel in this action still remains the ownership rights to the BRATZ dolls. The

27 parties have engaged in extensive and undoubtedly expensive discovery on this

28 very issue (from hiring world-renowned experts to test the age of Bryant's design

20

EXHIBIT 4 PAGE 66

1   drawings to technically complex discovery of what is on each other's computers).

2         Indeed the separateness of the two matters is reflected in how the cases are

3   currently structured, namely, the narrowness of the issue involved in 04-9059 and

4   the expansiveness of the facts at issue in 05-2727. In light of this fact, the Court

5   believes a two-track scheduling order wherein the 04-9059 matter's discovery cut

6   off and trial date are set well-ahead of those in 05-2727 makes the most sense. As

7   noted earlier, many of the legal claims being pressed in 05-2727 will be affected by

8   the result of the litigation in 04-9059. If, for instance, Mattel does own the rights to

9   the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's

10   "development programs" or by way of the Inventions Agreement because he

11   continued to work on his designs while at Mattel), then large portions of MGA's

12   Lanham Act infringement claims may become moot. By the same token, if Mattel

13   does not own rights to BRATZ, then some of the defenses and counterclaims set

14   forth as independent claims in the present amended complaint may become moot,

15   including Mattel's copyright infringement claim as well as portions of its remaining

16   RICO, misappropriation, and aiding and abetting claims. If, however, the Court

17   were to allow the amended complaint to be filed in the 04-9059 action, such case

18   management would be difficult, if not impossible as many of the issues being

19   litigated in the 05-2727 case would have been poured into the 04-9059 case by the

20   amendment. Due to this substantial overlap in claims and facts, a two-track

21   scheduling order utilizing the case number distinctions would be impossible to craft.

22   When pressed by the Court at oral argument as to which of its proposed claims it

23   believed would not undermine the BRATZ ownership posture of the 04-9059 case,

24   Mattel cited to its copyright and RICO claims. However, upon further questioning

25   by the Court, counsel for Mattel acknowledged that much of those claims were, like

26   the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

27         In light of the burden allowing Mattel's amendment to proceed would have on

28   this Court's ability to efficiently manage these consolidated matters denial of

21

EXHIBIT 4 PAGE 67

1  Mattel's request to amend its complaint in the 04-9059 matter is justified.  <u>See</u>

2  <u>Perrian v. O'Grady</u>, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial

3  system can justify a denial of a motion to amend 'even if the amendment would

4  cause no hardship at all to the opposing party'").  Buttressing the Court's decision is

5  the fact that, even with such a denial, Mattel may file (and the Court provides leave

6  to Mattel to so file) an amended answer and counterclaim in the 05-2727 case

7  raising all the new claims and defendants presently sought to be achieved through

8  amendment of its complaint in the 04-9059 action.  None of the substantive

9  concerns raised by MGA and Bryant to the present amended complaint, <u>e.g.</u>,

10  statutes of limitations, would appear to be affected if the new claims and

11  defendants were brought as defenses and counterclaims in the 05-2727 case as

12  opposed to the 04-9059 one.

13        Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed

14  amendments, but only insofar as they are pled in the form of an amended answer

15  and counterclaim in the 05-2727 case.

16        Finally, the lack of a scheduling order in this case is problematic; one should

17  have been entered long ago.  <u>See</u> Fed. R. Civ. P. 16(b)(noting that a scheduling

18  "order shall issue as soon as practicable but in any event within 90 days after the

19  appearance of a defendant and within 120 days after the complaint has been

20  served on a defendant").  In light of the fact that entry of a scheduling order is

21  woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b)

22  scheduling conference be held in this consolidated matter on February 12, 2007, at

23  1:30 p.m. in Courtroom One.  The parties are directed to file a Joint Rule 26(f)

24  report with the Court by February 5, 2007.

25        IT IS SO ORDERED.

26  DATE: _/- //- o ⁊_

27

28                      STEPHEN G. LARSON
                         UNITED STATES DISTRICT JUDGE

22

EXHIBIT 4 PAGE 68

# EXHIBIT 5

CALENDARED
RECEIVED

JAN 1 5 2008

1  THOMAS J. NOLAN (Bar No. 066992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:   (213) 687-5600
4  E-mail:  tnolan@skadden.com

5
   RAOUL D. KENNEDY (Bar No.  40892)
6  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   4 Embarcadero Center, 38th Floor
7  San Francisco, CA  94111-5974
   Telephone:  (415) 984-6400
8  Facsimile:  (415) 984-2698
   Email: rkennedy@skadden.com
9

10  Attorneys for Counter-Defendants,
    MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
11  (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                    EASTERN DIVISION

15  CARTER BRYANT, an individual          )  CASE NO. CV 04-9049 SGL (RNBx)
                                          )
16              Plaintiff,                )  Consolidated with Case No. 04-9059
                                          )  and Case No. 05-2727
17        v.                              )
                                          )  **AMENDED NOTICE OF
18  MATTEL, INC., a Delaware              )  DEPOSITIONS AND SERVICE
    corporation                           )  OF SUBPOENAS TO ADRIENNE
19                                        )  FONTANELLA, IVY ROSS,
                                          )  ROBERT ECKERT AND MATT
20              Defendant.                )  BOUSQUETTE**
                                          )
21                                        )
                                          )
22                                        )
                                          )
23                                        )
                                          )
24                                        )  Discovery Cut-Off:  January 28, 2008
                                          )
25  Consolidated with MATTEL, INC. v.     )
    BRYANT and MGA                        )
26  ENTERTAINMENT, INC. v.                )
    MATTEL, INC.                          )
27                                        )

28

1-14  EXHIBIT 5 PAGE 69

1      **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2      PLEASE TAKE NOTICE that, pursuant to Rules 30 and 45 of the Federal

3 Rules of Civil Procedure, MGA Entertainment, Inc., by its attorneys, Skadden, Arps,

4 Slate, Meagher & Flom, LLP, will take the depositions of Adrienne Fontanella, Ivy

5 Ross, Robert Eckert and Matt Bousquette. The depositions will take place on oral

6 examination before a duly authorized notary public or other officer authorized to

7 administer oaths at depositions, and will continue from day to day, Saturdays,

8 Sundays and legal holidays excepted until completed.

9      PLEASE TAKE FURTHER NOTICE that the examination of **Adrienne**

10 **Fontanella** will commence at 9:00 a.m. on January 16, 2008 at Skadden, Arps, Slate,

11 Meagher & Flom, LLP, located at 300 S. Grand Avenue, Los Angeles, CA 90071, or

12 at such other places and on such other dates as agreed upon by counsel for all

13 interested parties.

14      PLEASE TAKE FURTHER NOTICE that the examination of **Ivy Ross** will

15 commence at 9:00 a.m. on January 17, 2008 at Skadden, Arps, Slate, Meagher &

16 Flom, LLP, located at 300 S. Grand Avenue, Los Angeles, CA 90071, or at such

17 other places and on such other dates as agreed upon by counsel for all interested

18 parties.

19      PLEASE TAKE FURTHER NOTICE that the examination of **Robert Eckert**

20 will commence at 8:00 a.m. on January 28, 2008 at the Doubletree Hotel - LAX,

21 located at 1985 East Grand Ave., El Segundo, CA 90245, or at such other places and

22 on such other dates as agreed upon by counsel for all interested parties.

23      PLEASE TAKE FURTHER NOTICE that the examination of **Matt**

24 **Bousquette** will commence at 9:00 a.m. on February 13, 2008 at Skadden, Arps,

25 Slate, Meagher & Flom, LLP, located at 333 West Wacker Dr., Chicago, IL 60606,

26 or at such other places and on such other dates as agreed upon by counsel for all

27 interested parties.

28

EXHIBIT 5 PAGE 70

1      PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P.

2 30(b)(2), the depositions will be videotaped.  MGA also reserves the right to use

3 Livenote or other technology for real-time transcription of the testimony.

4

5 DATED: January 14, 2008

6

7                      SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

8                      By: _____

9                           Robert J. Herrington

                     Attorneys for Counter-Defendants, MGA

10                      ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED,

11                      AND MGAE de MEXICO S.R.L. de C.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                       3          EXHIBIT 5 PAGE 71

AO88  (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

CENTRAL    DISTRICT OF    CALIFORNIA

CARTER BRYANT, an individual, Plaintiff,

V.

MATTEL, INC., a Delaware corporation, Defendant

AND CONSOLIDATED ACTIONS
TO:

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] CV 04-09049 SGL (RNBx)
Consolidated with Case Nos. CV 04-9059 and
CV 05-2727

ADRIENNE FONTANELLA c/o Quinn Emanuel Urquhart Oliver & Hedges, 865 S. Figueroa St., 10th Fl. Los Angeles,CA 90017

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  The deposition will be recorded by videotape and stenographic means.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom, 300 S. Grand Ave., Los Angeles, CA 90017 | January 16, 2008 - 9:00 AM |

☐  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Atty for Counter Defendant MGA Ent. et al. | January 14, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Robert J. Herrington, Skadden, Arps, Slate, Meagher & Flom LLP, 300 S. Grand Ave., Los Angeles, CA 90071-3144 (213) 687-5000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

EXHIBIT 5 PAGE 72

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                          DATE                                          SIGNATURE OF SERVER

                                                                       ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

American LegalNet, Inc.
www.FormsWorkflow.com

EXHIBIT 5 PAGE 73

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

CENTRAL      DISTRICT OF      CALIFORNIA

CARTER BRYANT, an individual, Plaintiff,

V.

MATTEL, INC., a Delaware corporation, Defendant

AND CONSOLIDATED ACTIONS

TO:

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] CV 04-09049 SGL (RNBx)
Consolidated with Case Nos. CV 04-9059 and
CV 05-2727

IVY ROSS c/o Quinn Emanuel Urquhart Oliver & Hedges, 865 S. Figueroa St., 10th Fl. Los Angeles, CA 90017

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.  The deposition will be recorded by videotape and stenographic means.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom, 300 S. Grand Ave., Los Angeles, CA 90017 | January 17, 2008 - 9:00 AM |

☐  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Atty for Counter Defendant MGA Ent. et al. | January 14, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Robert J. Herrington, Skadden, Arps, Slate, Meagher & Flom LLP, 300 S. Grand Ave., Los Angeles, CA 90071-3144 (213) 687-5000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

EXHIBIT 5 PAGE 74

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose appropriate sanction on the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

American LegalNet, Inc.
www.FormsWorkflow.com



EXHIBIT 5 PAGE 76

〜AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

CENTRAL    DISTRICT OF    CALIFORNIA

| CARTER BRYANT, an individual, Plaintiff, | **SUBPOENA IN A CIVIL CASE** |
|---|---|

V.

MATTEL, INC., a Delaware corporation, Defendant

AND CONSOLIDATED ACTIONS
TO:

Case Number:[1] CV 04-09049 SGL (RNBx)
Consolidated with Case Nos. CV 04-9059 and
CV 05-2727

ROBERT ECKERT c/o Quinn Emanuel Urquhart Oliver & Hedges, 865 S. Figueroa St., 10th Fl. Los Angeles, CA 90017

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.   The deposition will be recorded by videotape and stenographic means.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| The Doubletree Hotel - LAX - 1985 East Grand Ave., El Segundo, CA 90245 | January 28, 2008 - 8:00 AM |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Atty for Counter Defendant MGA Ent. et al. | January 14, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Robert J. Herrington, Skadden, Arps, Slate, Meagher & Flom LLP, 300 S. Grand Ave., Los Angeles, CA 90071-3144 (213) 687-5000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com


EXHIBIT 5 PAGE 77

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) |  | MANNER OF SERVICE |
|---|---|---|
|  |  |  |

| SERVED BY (PRINT NAME) |  | TITLE |
|---|---|---|
|  |  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
   (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
   (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
   (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
   (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
      (i) fails to allow reasonable time for compliance;
      (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
      (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) If a subpoena
      (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
      (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
      (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
   (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
   (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
   (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
   (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
   (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
   (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it.  The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate excuse for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

American LegalNet, Inc.
www.FormsWorkflow.com

EXHIBIT 5 PAGE 78

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

| NORTHERN | DISTRICT OF | ILLINOIS |

CARTER BRYANT, an individual, Plaintiff,

V.

MATTEL, INC., a Delaware corporation, Defendant

ALL CONSOLIDATED ACTIONS

**SUBPOENA IN A CIVIL CASE**

Central District of California

Case Number:[1] CV 04-09049 SGL (RNBx)
Consol. w/ CV 04-9059 and 05-2727

TO: MATT BOUSQUETTE
c/o Quinn Emanuel Urquhart Oliver & Hedges
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  The deposition will be recorded by videotape and stenographic means.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Dr., Chicago, IL 60606 | February 13, 2008 - 9:00 AM |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
| --- | --- |
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| Atty for Counter Defendant MGA Ent. et al. | January 14, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Robert J. Herrington, Skadden, Arps, Slate, Meagher & Flom LLP, 300 S. Grand Ave., Los Angeles, CA 90071-3144 (213) 687-5000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

EXHIBIT 5 PAGE 79

AO88  (Rev.  12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____        _____
                          DATE                                    SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
   (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
   (2) (A)  A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
   (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested.  If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling.  Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
   (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
      (i) fails to allow reasonable time for compliance;
      (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
      (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) If a subpoena
      (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
      (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
      (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
   (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
   (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
   (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
   (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify conditions for the discovery.
   (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
   (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved.  A receiving party may promptly present the information to the court under seal for a determination of the claim.  If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it.  The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued.  An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

EXHIBIT 5 PAGE 80

American LegalNet, Inc.
www.FormsWorkflow.com

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM, LLP
300 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071
PH: 213-687-5000

12776

CITIBANK(WEST), FSB
TORRANCE, CA 90503
90-7172/3222

1/14/2008

PAY TO THE
ORDER OF    Adrienne Fontanella                                    $ **137.00

One Hundred Thirty-Seven and 00/100***************************************************** DOLLARS

MEMO
Witness Fee & Mileage

⑆012776⑆ ⑆322227172⑆ 2000 23547⑆

---

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM, LLP
300 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071
PH: 213-687-5000

12777

CITIBANK(WEST), FSB
TORRANCE, CA 90503
90-7172/3222

1/14/2008

PAY TO THE
ORDER OF    Ivy Ross                                              $ **137.00

One Hundred Thirty-Seven and 00/100***************************************************** DOLLARS

MEMO
Witness Fee & Mileage

⑆012777⑆ ⑆322227172⑆ 2000 23547⑆

EXHIBIT 5 PAGE 81



**SKADDEN, ARPS, SLATE,**
**MEAGHER & FLOM, LLP**
300 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071
PH: 213-687-5000

CITIBANK(WEST), FSB
TORRANCE, CA 90505
90-1725/3222

12778

1/14/2008

PAY TO THE
ORDER OF    Robert Eckert                                                      $ **137.00

One Hundred Thirty-Seven and 00/100****************************************    DOLLARS

MEMO
        Witness Fee & Mileage

⑆012778⑆ ⑉322271724⑉: 2000 21547⑈

---

**SKADDEN, ARPS, SLATE,**
**MEAGHER & FLOM, LLP**
300 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071
PH: 213-687-5000

CITIBANK(WEST), FSB
TORRANCE, CA 90505
90-1725/3222

12779

1/14/2008

PAY TO THE
ORDER OF    Matt Bousquette                                                    $ **137.00

One Hundred Thirty-Seven and 00/100****************************************    DOLLARS

MEMO
        Witness Fee & Mileage

⑆012779⑆ ⑉322271724⑉: 2000 21547⑈

EXHIBIT 5 PAGE 82

1

**PROOF OF SERVICE**

2       I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service,

3  1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4       On March 7, 2008, I served true copies of the following document(s) described as **DECLARATION OF JON D. COREY IN SUPPORT OF MATTEL, INC.'S OPPOSITION**

5  **TO MGA'S MOTION TO COMPEL THE DEPOSITION TESTIMONY OF MATTHEW BOUSQUETTE AND TINA PATEL** on the parties in this action as follows:

6

7  Thomas J. Nolan                                    Mark E. Overland
   **Skadden, Arps, Slate, Meageher & Flom**          David C. Scheper
   **LLP**                                            Alexander H. Cote

8  300 South Grand Ave., Ste. 3400                    **Overland Borenstein Scheper & Kim**
   Los Angeles, CA 90071                              **LLP**

9                                                      300 South Grand Avenue, Suite 2750
                                                       Los Angeles, CA 90071

10

11

12  **BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s) being served.

13       I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

14

15       Executed on March 7, 2008, at Los Angeles, California.

16

17  NOW LEGAL -- Dave Quintana

18

19

20

21

22

23

24

25

26

27

28

07209/2217862.1

1   **PROOF OF SERVICE**

2       I am employed in the County of Los Angeles, State of California.  I am over the age of
eighteen years and not a party to the within action; my business address is 865 South Figueroa
3   Street, 10th Floor, Los Angeles, California 90017-2543.

4       On March 7, 2008, I served true copies of the following document(s) described as
**DECLARATION OF JON D. COREY IN SUPPORT OF MATTEL, INC.'S OPPOSITION
5   TO MGA'S MOTION TO COMPEL THE DEPOSITION TESTIMONY OF MATTHEW
BOUSQUETTE AND TINA PATEL** on the parties in this action as follows:

6
        John W. Keker, Esq.
7       Michael H. Page, Esq.
        Christina M. Anderson, Esq.
8       **Keker & Van Nest, LLP**
        710 Sansome Street
9       San Francisco, CA 94111

10  **BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I
deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with
11  postage thereon fully prepaid.

12  **BY FEDEX:**  I deposited such document(s) in a box or other facility regularly maintained by
FedEx, or delivered such document(s) to a courier or driver authorized by FedEx to receive
13  documents, in sealed envelope(s) or package(s) designated by FedEx with delivery fees paid or
provided for, addressed to the person(s) being served.

14
        I declare that I am employed in the office of a member of the bar of this Court at whose
15  direction the service was made.

16      Executed on March 7, 2008, at Los Angeles, California.

17

18                                          _____
                                            Amanda Navarro
19

20

21

22

23

24

25

26

27

28

07209/2217871.1