**Exhibit A**

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2     John B. Quinn (Bar No. 090378)
      johnquinn@quinnemanuel.com
3     Michael T. Zeller (Bar No. 196417)
      (michaelzeller@quinnemanuel.com)
4     Jon D. Corey (Bar No. 185066)
      (joncorey@quinnemanuel.com)
5     Timothy L. Alger (Bar No. 160303)
      (timalger@quinnemanuel.com)
6   865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
7   Telephone: (213) 443-3000
    Facsimile: (213) 443-3100

8   Attorneys for Mattel, Inc.

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                        EASTERN DIVISION

12  CARTER BRYANT, an                CASE NO. CV 04-9049 SGL (RNBx)
    individual,
13                                   Consolidated with
               Plaintiff,            Case No. CV 04-09059
14                                   Case No. CV 05-02727
         vs.
15                                   **DECLARATION OF MELISSA GRANT IN
    MATTEL, INC., a Delaware         SUPPORT OF MATTEL, INC.'S REPLY
16  corporation,                     REGARDING MATTEL'S MOTION FOR
                                     LEAVE TO OBTAIN DISCOVERY AFTER
17             Defendant.            THE PHASE 1 DISCOVERY CUT-OFF IN
                                     REPOSE TO A SUBPOENA SERVED ON
18                                   PEOPLE'S BANK OF THE OZARKS**
    AND CONSOLIDATED
19  ACTIONS                          **DISCOVERY MATTER**

20                                   **[To Be Heard By Discovery Master
21                                   Hon. Edward Infante (Ret.) Pursuant To The
                                     Court's Order Of December 6, 2006]**
22
                                     Hearing Date:   TBA
23                                   Time:           TBA
                                     Courtroom:      TBA
24
                                     **Phase 1:**
25                                   Discovery Cut-off:      January 28, 2008
                                     Pre-trial Conference:   May 5, 2008
26                                   Trial Date:             May 27, 2008

27  ─────────────────────────────────────────────────────────
    **CONFIDENTIAL - FILED UNDER SEAL PURSUANT TO PROTECTIVE
28                              ORDER**        EXHIBIT   A

07209/2413666.2
13666.1                                                   PAGE   7
                              GRANT DECLARATION IN OPPOSITION TO BRYANT'S MOTION
                              TO QUASH PEOPLE'S BANK OF OZARKS SUBPOENA

# DECLARATION OF MELISSA GRANT

I, Melissa Grant, declare as follows:

1.      I am a member of the bar of the State of California and an associate at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for plaintiff and counter-defendant, Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.      Attached as Exhibit A is a true and correct copy of MGA's Complaint in this matter, filed April 13, 2007.

3.      Attached as Exhibit B is a true and correct copy of Mattel's Second Amended Answer and Counterclaims excluding Exhibit C.

4.      Attached as Exhibit C is a true and correct copy of Mattel's subpoena *duces tecum* served on People's Bank of the Ozarks (the "Bank") on January 21, 2008 and the notice thereof.

## The Bank's Statement of Compliance Without Objection and Request for Additional Time

5.      On Friday, January 25, 2008, I received a telephone call from Alison Holmes of the Bank advising me that the Bank would comply with Mattel's subpoena. Ms. Holmes said that the Bank had already collected almost all the responsive documents (consisting of a stack of paper two feet high) but that some of the older records had to be retrieved from microfilm. Ms. Holmes also said that because of technical problems, the Bank needed additional time to retrieve and produce the records on microfilm. Later that day, I received two e-mails from James Bowles, the attorney for the Bank, reiterating what Ms. Holmes had told me regarding their difficulty in retrieving the microfilm documents, and requesting 14 additional days from January 28, 2008 (the return date on the subpoena) to produce those documents. Attached as Exhibit D are true and correct copies of the e-mail messages from James Bowles.  Subsequently, Ms.

EXHIBIT _____ A

07209/2413666.207209/
13666.1

GRANT DECLARATION IN SUPPORT OF MOTION FOR LEAVE RE PEOPLE'S BANK OF THE OZARKS

1    Holmes and Mr. Bowles informed me that the documents the Bank had assembled

2    and was ready to produce on January 28, 2008 (the return date of the subpoena)

3    consisted of responsive documents spanning the period October 2002 to the

4    present.  They also said that the documents to be retrieved from microfilm

5    consisted of records from February 2002 through September 2002.

6            6.      Later that day, I sent an e-mail message to opposing counsel for

7    MGA, Carter Bryant ("Bryant"), Isaac Larian ("Larian"), and Carlos Gustavo

8    Machado Gomez ("Machado") requesting that they stipulate to extend the

9    deadline for the Bank to produce documents responsive to Mattel's subpoena from

10   January 28, 2008 to February 11, 2008, without prejudice to Mattel's right to

11   move to compel after the Phase 1 discovery cut-off in the event that the bank's

12   responses were insufficient.  I informed counsel that if they would not agree to the

13   stipulation, Mattel would file a motion seeking leave for additional time.

14   Attached as Exhibit E is a true and correct copy of my January 25, 2008 e-mail

15   message.

16           7.      On the evening of January 25, 2008, I sent an e-mail message to

17   Mr. Bowles (the Bank's counsel) advising him that Mattel had no objection to the

18   Bank's request for 14 additional days to produce all documents responsive to the

19   subpoena, but requested that the Bank produce the documents it had already

20   assembled on the subpoena return date of Monday, January 28, 2008.  To

21   facilitate production, I offered to arrange for Federal Express to pick the

22   documents from the Bank.  I asked Mr. Bowles to let me know whether that was

23   acceptable.  Attached as Exhibit F is a true and correct copy of my e-mail message

24   to Mr. Bowles.

25           8.      As of January 27, 2008, neither Bryant's counsel nor MGA's

26   counsel had responded to my January 25, 2008 e-mail message requesting that the

27   parties stipulate to additional time for the Bank's production.  Because opposing

28   counsel had agreed to stipulate to a similar extension proposed by Mattel on

07209/2413666.207209/14
13666.1

-3-

**EXHIBIT   A**

GRANT DECLARATION IN SUPPORT OF MOTION FOR LEAVE RE PEOPLE'S BANK OF THE OZARKS

**PAGE   9**

1    January 27, 2008 regarding a subpoena *duces tecum* served on Wachovia Bank, I

2    sent a second e-mail message to Bryant's counsel and other opposing counsel

3    asking them if they would agree to the proposed stipulation regarding People's

4    Bank of the Ozarks. Attached as Exhibit G is a true and correct copy of my e-

5    mail message dated January 27, 2008. Less than five minutes later, I received an

6    e-mail message from Bryant's counsel, Michael Page, stating in full: "No, we will

7    not agree." Bryant's counsel gave no reason for their refusal to so stipulate.

8    Attached as Exhibit H is a true and correct copy of the e-mail message from Mr.

9    Page.

10        9.    By e-mail message dated January 26, 2008, Mr. Bowles told me

11   that he would check with the Bank president and let me know Monday morning

12   whether Mattel could pick up on the return date of January 28, 2008 the responsive

13   documents already assembled by the Bank. Attached as Exhibit I is a true and

14   correct copy of Mr. Bowles' e-mail message.

15        10.   On Monday, January 28, 2008 at 8:18 a.m., I received another e-

16   mail message from Mr. Bowles stating that Mattel could arrange with Ms. Holmes

17   to pick up the responsive documents already assembled later that day. Less than

18   two hours later, before any pick-up arrangements were made, I received an e-mail

19   message from Mr. Bowles, informing me that the Bank had received notification of

20   an unspecified "attempt to quash the subpoena" and that therefore production was

21   "on hold." Approximately three hours later, I received another e-mail from Mr.

22   Bowles, which read: "We now have a threatening letter from John Trinidad

23   regarding the subpoena. He is moving to quash, accordingly, we are going to hold

24   off until we get a court order or the parties come to an agreement." As a result, no

25   documents responsive to the subpoena have been produced to Mattel by People's

26   Bank of the Ozarks. Attached collectively as Exhibit J are true and correct copies of

27   Mr. Bowles' three e-mail messages to me dated January 28, 2008.

28

EXHIBIT ___ A

PAGE ___ 10

1          11.    At 9:08 a.m. on January 28, 2008, I received by e-mail a letter

2  from John Trinidad, Bryant's counsel, asserting that the subpoena was invalid and

3  advising that Bryant would file a motion to quash or for a protective order "should

4  Mattel not withdraw its subpoena." Attached as Exhibit K is a true and correct

5  copy of Mr. Trinidad's January 28, 2008 e-mail message and letter. Mattel would

6  not agree to do so because the subpoena is valid and seeks relevant and

7  discoverable documents that Bryant has failed to produce despite promises and his

8  agreement to do so.

9          12.    I am unaware of any prejudice that Bryant has suffered by the

10  lack of "prior notice" of the subpoena. On the other hand, Bryant or his counsel

11  appear to have advised the Bank that the subpoena was invalid and "threatened"

12  the Bank, implicitly or explicitly, if it produced documents responsive to Mattel.

13  As a result of that action and the Motion to Quash, the Bank has not produced <u>any</u>

14  documents to Mattel in response to the subpoena despite the Bank's ability and

15  previous willingness to do so.

16

17               **Foothill Business Services Document Production**

18          13.    On December 11, 2007, Mattel issued a subpoena to Foothill

19  Business Services ("Foothill"), Bryant's accountants, seeking relevant financial

20  information relating to Bryant and Carter Bryant Enterprises; Mattel amended the

21  subpoena on December 18, 2007 ("Foothill Subpoena"). Attached as Exhibit L is a

22  true and correct copy of the Foothill Subpoena.

23          14.    Bryant's counsel objected to the Subpoena and advised Mattel

24  that Bryant intended to file a motion to quash or for a protective order if Mattel did

25  not withdraw it. Over the course of the next month, counsel met and conferred by

26  telephone, e-mail message, and letter regarding Bryant's objections to the Foothill

27  Subpoena. Attached collectively as Exhibit M are true and correct copies of the

28  meet and confer communications.

**EXHIBIT** _____ *A*

**PAGE** _____ *II*

1    15.    By letter dated January 11, 2008, to my colleague Jon D. Corey,

2  from Mathew Werdegar, counsel for Bryant, Bryant agreed to gather from Foothill

3  and produce to Mattel the following documents:

4    a.    All available profit and loss income statements for Carter Bryant

5  Enterprises ("CBE");

6    b.    Documents sufficient to show all payments to Bryant from MGA

7  and/or Isaac Larian;

8    c.    Documents sufficient to show all payments to Veronica Marlow

9  from Bryant or CBE;

10    d.    Documents sufficient to show Bryant's net worth;

11    e.    Documents sufficient to identify any witness or witnesses'

12  counsel to whom Bryant has made any payments for fees, costs, or expenses

13  incurred by that witness in connection with the present litigation and the amount

14  paid, if any, to or on behalf of such witness;

15    f.    Foothill's document retention policy, if it has one; and

16    g.    Documents constituting communications between Bryant and

17  Foothill substantively related to Bratz.

18  Attached as Exhibit N is a true and correct copy of Mr. Werdegar's January 11,

19  2008 letter.

20    16.    On January 23, 2008—five days before the Phase 1 discovery

21  cut-off—Bryant purported to produce by e-mail "documents in accordance with our

22  stipulation regarding Mattel's subpoena of Foothill Business Services." However,

23  the Foothill production consisted of only 11 documents:  two CBE income

24  statements from 2003, four CBE quarterly income statements from 2006, four CBE

25  quarterly incomes statements from 2007, and a ledger of payments to Veronica

26  Marlow in 2006 and 2007 only.  Attached collectively as Exhibit O are true and

27  correct copies of Bryant's January 23, 2008 Foothill production.

28

EXHIBIT ___ A

## Bryant Has Not Provided Mattel with "Prior Notice" of Subpoenas Before Serving Them to Third Parties

17.     Bryant has served at least six subpoenas on third parties in this action. They include subpoenas to Anna Rhee, Verizon California, SBC, Pacific Bell Telephone Co., Steven Linker, and Ogilvy and Mather Worldwide, all of which requested the production of specified documents. A review of the documents served on Mattel related to those subpoenas shows that Bryant never provided Mattel with "prior notice" of those subpoenas before serving them on the third parties.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 28th day of February, 2008, at Los Angeles, California.

_____/S/_____
Melissa Grant

EXHIBIT ____ A

PAGE ____ 13

07209/2413666.207209/
13666.1

GRANT DECLARATION IN SUPPORT OF MOTION FOR LEAVE RE PEOPLE'S BANK OF THE OZARKS

**Exhibit B**

CONFORMED COPY

FILED

2007 JAN 25   PM 12: 25

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111
415-774-2611
415-982-5287 (fax)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                Plaintiff,<br><br>        v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                Defendant.<br><br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS** |

## I.  INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1]  Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT 26 B

PAGE 14

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel Production of Documents is GRANTED.

## II.  BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls.  This highly lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of Bratz dolls now rival Mattel's Barbie doll.

A.  Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed suit against its former employee Bryant in state court asserting claims for breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion.  Mattel employed Bryant as a product designer from September 1995 through April 1998, and from January 1999 through October 2000.  Upon starting his second term, Bryant signed an Employee Confidential Information and Inventions Agreement which required him not to engage in any employment or business other than for Mattel, or invest or assist in any manner any business competitive with the business or future business plans of Mattel.  Bryant also assigned to Mattel all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that he had not worked for any of Mattel's competitors in the prior twelve months and had not engaged in any business dealings creating a conflict of interest.  Bryant agreed to notify Mattel of any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for a Mattel competitor (later identified as MGA).  Bryant entered into an agreement with MGA to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

provide product design services on a "top priority" basis.[2]  The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA.  Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel.  In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction).  Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA.  The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls.  In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls.  In August of 2004, the district court remanded the action.

B. Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement.  Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

---

[2] Bryant has already produced his agreement with MGA.  Therefore, the existence of the agreement does not appear to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

EXHIBIT __B__

PAGE __17__

G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT ___ B
PAGE ___ 18

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal

to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at

the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to

compel. The parties informed the court that they would submit a stipulation and order. See

Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel

Production of Documents, counsel will be submitting a stipulation and order which will be

dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to

memorialize the parties' meet and confer session, but were unable to reach final agreement

because Bryant insisted upon including the following sentence in the stipulation: "The stipulation

resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's

Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and

motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23.

From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel

waive its right to all further discovery in connection with its requests. Mattel proposed the

following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in
> this Stipulation shall preclude or limit Mattel from seeking further discovery on
> any matter, including as to matter on which the parties could not reach complete
> agreement, or preclude or limit any right of Bryant to object or resist to such
> discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was

unacceptable to Bryant. At the direction of the Discovery Master, the parties met and

conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT ___ B

PAGE ___ 19

1,600 pages of documents to date. Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3] Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

J. Mattel's Motion to Compel Production of Documents

Mattel's motion has three parts. First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents: (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel. Mattel's Motion at 6. Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations. According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3] According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear. Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed. Mattel again obtained a court order compelling the deposition and sanctions. To date, only Bryant and Larian have been deposed.

EXHIBIT     B

PAGE     20

his earnings from his work for MGA.  Mattel's Motion at 7.  Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel.  He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004.  Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims.  Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter.  See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies.").  Accordingly, in the summer and fall of 2004, he produced the following categories of documents:  documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4]   There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center.  MGA denies the accusation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT ___B___

PAGE ___24___

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

EXHIBIT ____ B
PAGE ____ 22

requests and that the stipulation controlled to the extent they were inconsistent. Bryant's Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process and asks the Discovery Master to order the disposition of this motion in a manner consistent with the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks the Discovery Master to order Mattel not to revisit any of the requests that were the subject of Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone records and financial information because these records are protected by privacy rights. Lastly, Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit was filed.

### III. DISCUSSION

A. The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

The parties' extensive submissions make it clear that the parties did not resolve the issues raised in the instant motion. The parties met and conferred extensively and in good faith, reaching compromises on virtually all categories of documents in dispute. Despite their efforts, however, the parties were ultimately unable to execute a binding stipulation because they were unable to agree on any provision to govern Mattel's future right to pursue additional discovery from Bryant. It is clear that the parties deemed it necessary to include such a provision in the draft stipulation in order to protect their respective positions. Because the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

EXHIBIT ___B___

PAGE ___23___

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48:  Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements.  Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

EXHIBIT   B

PAGE   24

1  agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel
2  other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c)
3  documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating
4  to this action.
5
6       The Discovery Master finds that the withheld documents are relevant to Mattel's claims.
7  Among other things, the withheld documents could establish the timing, nature and scope of
8  Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages.  In
9  addition, the withheld documents could be used for impeachment purposes.  Further, documents
10  relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate
11  bias and lack of credibility.  Bryant has failed to establish that the requested discovery is barred
12  by Rule 26(b)(2), Fed.R.Civ.P.  Accordingly, Bryant is ordered to produce all non-privileged
13  documents responsive to Request Nos. 2, 13, and 48.
14
15       Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55:  Documents Relating to Bratz's
16       Development and Other Projects that Bryant Worked on for MGA
17
18       Mattel seeks documents relating to the Bratz project and any other projects Bryant worked
19  on for MGA.  Bryant produced documents relating only to the First Generation Bratz dolls.
20  Bryant is prepared to produce additional documents relating to work he performed for MGA prior
21  to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant
22  breached his employee agreement by allegedly performing services for Mattel and MGA at the
23  same time.  Bryant objects to the requests to the extent they seek any additional documents on
24  relevancy and overbreadth grounds.
25
26       The Discovery Master finds that Mattel's requests seek relevant information and are not
27  overbroad.  The lawsuit is much broader than the First Generation Bratz dolls issued in June 30,
28  2001.  For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel
29

employment, regardless of whether they resulted in a Bratz doll released in June of 2001.  Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001.  Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works.  Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46:  Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA.  Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA.  Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information.  Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns.  Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims.  First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion.  Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel.  Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

EXHIBIT ___B___

PAGE ___26___

when the payments were actually made. Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement. Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works. Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages. 17 U.S.C. §504(b). The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market. For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation. Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel. Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant. Among other things, the protective order provides protection for confidential trade secret information. It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only." The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46. Bryant,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT _____ B

PAGE _____ 27

however, is not required to produce tax returns, provided that he otherwise fully complies with these requests as ordered.

Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

Mattel seeks production of Bratz-related communications and communications with MGA. More specifically, Mattel seeks production of four categories of documents Bryant has refused to produce: (1) communications between Bryant and MGA or third parties that explicitly relate to designs Bryant created while employed by Mattel; (2) communications between Bryant and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment; and (4) communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant contends that the discovery requests for communications between Bryant and MGA are overbroad. Bryant asserts that there are many former Mattel employees and friends of his who have privacy rights that would be impinged upon if he were to disclose his communications. Bryant also asserts that he has his own confidentiality interest regarding any information that he shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they would require him to reveal the identity of current Mattel employees seeking employment with MGA or Bryant.

The Discovery Master finds that Mattel's requests for all communications between Bryant and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential" private information about current or former employees, contractors or vendors (including employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

EXHIBIT __B__

PAGE __28__

privileged documents responsive to Request Nos. 20, 23, 27, and 28. However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA. Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

Request Nos. 49, 51: Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

Request No. 9: Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration. Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper. Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

## IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1. Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT _B_

PAGE _29_

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2. Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3. Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4. Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5. Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6. Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7. Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT ___ B
PAGE ___ 70