QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
(timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED CASES | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>NOTICE OF ERRATA RE [PUBLIC REDACTED] MATTEL, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Date: April 23, 2008<br>Time: 10:00 a.m.<br>Place: Courtroom 1<br><br>**Phase 1:**<br>Discovery Cut-Off: January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Mattel, Inc.'s [Public Redacted] Motion for Partial Summary Judgment ("Mattel's Public Redacted Motion"), docket number 2504, served on March 7, 2008, inadvertently included the wrong Copyright Registrations Nos. on page 2 lines 25-26 of its Notice of Motion and on page 65 lines 8-9 of Mattel's Public Redacted Motion. The Copyright Registrations Nos. should read consistent with Mattel's [Proposed] Order Granting Mattel's Motion for Partial Summary Judgment on page 3 lines 2-3, as: "Copyright Registration Nos. VA 1-090-287, VA 1-090-288, VA 1-090-289, VA 1-090-290 and VA 1-148-305."

Mattel is filing concurrently a Corrected Public Redacted Motion which includes the correct Copyright Registration Nos. Mattel also submits the corrected pages herewith, attached as Exhibit 1.

DATED: March 10, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ B. Dylan Proctor
B. Dylan Proctor
Attorneys for Mattel, Inc.

**EXHIBIT 1**

TO PLAINTIFFS/COUNTER-DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on April 23, 2008 at 10:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Steven G. Larson, located at Courtroom 1, plaintiff and counterclaimant Mattel, Inc. ("Mattel") will, and hereby does, move the Court, pursuant to <u>Federal Rule of Civil Procedure</u> 56(a) and 56(d) and L.R. 56-4, for partial summary judgment against defendants Carter Bryant, Isaac Larian, MGA Entertainment Inc. ("MGA"),, and MGA Entertainment (HK), Ltd. ("MGA Hong Kong") in Mattel's favor on the following issues:

**(1)** the Employee Confidential Information and Inventions Agreement ("Inventions Agreement") executed by Bryant and Mattel on January 4, 1999 is enforceable;

**(2)** under the Inventions Agreement (a) Mattel owns all Bratz-related "inventions" Bryant conceived, created, made, or reduced to practice while he was employed by Mattel, (b) the term "inventions" covers designs, improvements, ideas, concepts, and copyrightable subject matter, such that if Mattel proves at trial that any such items were conceived, created, made, or reduced to practice by Bryant during his Mattel tenure, Mattel will be entitled to a judgment that it owns those inventions, and (c) there is no factual dispute that certain such inventions, including several drawings (Exs. 716-19, 721-22, 724-25, drawing Bates-numbered SL00044) and a dummy model, were conceived, created, made, or reduced to practice during Bryant's Mattel tenure, and hence are owned by Mattel;

**(3)** the first-generation Bratz dolls released to the public in the summer of 2001, Copyright Registration Nos. VA 1-090-287, VA 1-090-288, VA 1-090-289, VA 1-090-290 and VA 1-148-305, are substantially similar to seventeen drawings (Ex. 10) and a doll sculpt drawing or blueprint (SL00044) created by Bryant, which are original, protectable works of expression;

In circumstances less egregious than those here, courts have consistently recognized that employers have a right to expect loyalty from their employees, and that employees have a legally enforceable duty to provide it. <u>Daniel Orifice Fitting Company</u> is on point: "There can be no doubt that [the defendant] breached his duties.... He was an officer in charge of an important part of the respondent's business and at the same time he was creating improvements to the respondent's product, he was concealing such improvements and stealthily doing all that was necessary to set up a competing business." 198 Cal. App. 2d at 800; see also <u>Stokes</u>, 41 Cal. App. 4th at 296 (employees breached the duty of loyalty by working toward establishing a competing business); <u>Fowler</u>, 196 Cal. App. 3d at 37, 42 (marketing manager's communications with third parties about a new competing business venture were a breach of his duty of loyalty); <u>J. C. Peacock, Inc.</u>, 196 Cal. App. 2d at 358-59 (finding breach of the duty of loyalty where employees entered into business transactions that presented a conflict of interest).

Mattel was (and is) in the doll business. Carter Bryant was a doll designer. Rather than devote his talents to Mattel, he plotted against Mattel, exploited the resources available to him, accepted secret payments, pitched his idea, drawings and model for a new doll line to MGA, secretly paid Mattel employees to work on Bratz, entered into a secret contract to work for MGA, and then took affirmative steps to conceal it. The appropriate measure of damages for such wrongdoing may be determined at trial (and the full scope of Bryant's wrongdoing), but the Court can and should rule in Mattel's favor on partial summary judgment that Bryant is liable.

### V. <u>MGA AND LARIAN ARE LIABLE FOR AIDING AND ABETTING BRYANT'S BREACHES OF HIS DUTIES.</u>

MGA and Isaac Larian met with Bryant, paid for his designs, and contracted with him for his services, all the time knowing that Bryant was a Mattel employee in a confidential role and therefore that Bryant owed both a duty of

loyalty and a fiduciary duty to Mattel. These undisputed facts warrant partial summary judgment in Mattel's favor on MGA's and Larian's liability for aiding and abetting Bryant's breaches of the duty of loyalty and his fiduciary duty.[111]

A defendant aids and abets the commission of an intentional tort if he (1) knows the other's conduct constitutes a breach of duty, and (2) gives substantial assistance or encouragement to the other so to act. See, e.g., Neilson v. Union Bank of Calif., 290 F. Supp. 2d 1101, 1119 (C.D. Cal. 2003); River Colony Estates Gen. P'ship v. Bayview Fin. Trading Group, Inc., 287 F. Supp. 2d 1213, 1225-26 (S.D.Cal. 2003); Casey v. U.S. Bank Nat'l Assoc., 127 Cal. App. 4th 1138, 1144 (2005). Here, both requirements are indisputably met.

### A. MGA And Larian Knew That Bryant's Behavior Was In Breach Of His Duty Of Loyalty And His Fiduciary Duty To Mattel.

Aiding and abetting requires actual knowledge of the underlying breach, Neilson, 290 F. Supp. 2d at 1118-19, but does not require a defendant to agree to join the wrongful conduct in the way one joins a conspiracy. Berg & Berg Enters., LLC v. Sherwood Partners, Inc., 131 Cal. App. 4th 802, 823 n. 10 (2005).

Here, MGA and Larian knew that Bryant owed duties to Mattel and was breaching those duties. First, both MGA and Larian admitted they knew Bryant was a Mattel employee at the time Bryant presented his drawings to MGA.[112] Both MGA and Larian thus knew that Bryant owed Mattel a duty of loyalty because, as explained in Point IV, supra, all California employees owe their employers a duty of loyalty. MGA and Larian also knew that Bryant owed Mattel a fiduciary duty because Bryant told MGA that he had signed a confidentiality agreement with Mattel, and MGA itself requires strict confidentiality from its own employees in

---

[111] As with Bryant's liability, certain aspects of MGA's and Larian's liability on these claims may be disputed and will be resolved at trial. Thus, trial may expand the scope of these defendants' liability and damages.

[112] UF 62, 63, 104.

jobs such as Bryant's.[113] Again, as explained in Point IV, supra, such an agreement gives rise to a fiduciary duty.

Second, MGA and Larian knew that Bryant was breaching these duties. Much of the evidence of what MGA and Larian knew on this score comes from Bryant, who acknowledged at deposition that both MGA and Larian knew that he was a Mattel employee at the time he pitched his ideas to them, accepted payments from them, and worked for them, and entered into a conflicting agreement with them.[114] Bryant specifically wrote to MGA's counsel, in the course of their negotiation of that agreement, that he had signed a confidentiality agreement with Mattel, but did not forward it to him because securing a copy would "▮▮▮▮▮▮" at Mattel.[115] That same communication contained the header of 'Mattel Collectibles" plainly inscribed on it, providing further indication that Bryant was wrongfully using Mattel's resources to do MGA's bidding.[116]

Indeed, MGA employees have acknowledged that they knew that Bryant was engaged in improper conduct vis-à-vis Mattel. For example, MGA's Rachel Harris, who herself attended an initial pitch meeting with Bryant and Larian, testified that she and others knew then that Bryant was a Mattel employee and that it would be "▮▮" for Bryant if Mattel learned he was presenting drawings to MGA while still employed by Mattel.[117] MGA's records affirm this guilty knowledge: in a list of former Mattel employees then working at MGA, under Bryant's name, both the end date at Mattel and the start date at MGA are denoted: "▮▮▮▮▮."[118] Perhaps most damning, in an e-mail dated March 12, 2002 from Isaac Larian to

---

[113] UF 64.
[114] UF 64, 63, 65, 104.
[115] UF 64 & 95.
[116] Id.
[117] UF 63.
[118] UF 107.

MGA personnel regarding inquiries about Bratz, Larian stated that: "███████ ████████████████████████████ ██",[119]

Further, in response to a February 6, 2003 e-mail from Larian proposing development of a collectible Bratz doll, an MGA employee suggested creating a limited edition model that would create a marketing "███." However, she raised the question: "████████████████████████ ██",[120] Similarly, in public statements, Larian falsely identified himself, not Bryant, as the creator of Bratz.[121]

In short, there is simply no genuine dispute that MGA and Larian knew that in dealing with Bryant, they were dealing with a competitor's employee who was breaching his duties to Mattel in order to serve MGA.

### B. MGA And Larian Substantially Assisted Bryant in Breaching His Duties to Mattel.

California courts have held that even "ordinary business transactions" that a bank performs for a customer can satisfy the substantial assistance element. Casey, 127 Cal. App. 4th at 1145. Here, MGA and Larian did much more. Most obviously, MGA specifically paid Bryant for his Bratz expenses, among other things.[122] Moreover, MGA had Bryant sign an agreement with MGA, which purported to require Bryant to perform work for MGA on a "█████" basis even while a Mattel employee.[123] MGA thus encouraged Bryant to violate his duties to Mattel and virtually guaranteed that outcome. No reasonable juror could find MGA and Larian did not provide substantial assistance on these facts.

---

[119] UF 82.
[120] UF 83.
[121] UF 85.
[122] UF 65.
[123] UF 46 & 47.

### C. MGA and Larian Profited from Bryant's Breaches.

There is also no dispute that MGA and Larian profited financially from encouraging Bryant to breach his duties to Mattel -- Bratz has been an incredibly successful product for MGA and Larian.[124] Although financial gain and self-interested profit are not elements of an aiding and abetting claim, they corroborate the two elements of the claim. Neilson v. Union Bank of Calif., 290 F. Supp. 2d 1101, 1127-28 (C.D. Cal. 2003). In other words, if the aider/abetter is an active participant in the breach of a fiduciary duty and reaped the benefit, he cannot disclaim the burden of liability for the breach. Id. (citing Heckmann v. Ahmanson, 168 Cal. App. 3d 119, 127 (1985); Bancroft-Whitney Co., 64 Cal. 2d at 353. That is the case here.

### D. MGA's and Larian's Aiding and Abetting Conduct Is Fatal to Their Affirmative Defense of Acts or Omissions of Others.

In its Eighth Affirmative Defense, MGA contends that "Mattel's damages, if any, were not caused by MGA Defendants and are not attributable to any acts or omissions of MGA defendants."[125] This affirmative defense fails because, as explained above, defendants are liable for aiding and abetting Bryant's wrongdoing.

## VI. DEFENDANTS' REMAINING AFFIRMATIVE DEFENSES FAIL.

Seeking to overcome the force of Mattel's claims, defendants assert a litany of affirmative defenses, including: (1) 17 U.S.C. § 205 and good faith; (2) statute of limitations; (3) laches; (4) waiver; (5) abandonment; (6) consent; (7) acquiescence; (8) estoppel, and (9) unclean hands. Because defendants cannot establish any genuine issues for trial, each should be rejected.

---

[124] UF 66.
[125] UF 113.

A. **Good Faith and 17 U.S.C. § 205.**

The MGA defendants seek to avoid responsibility for their misconduct by asserting several affirmative defenses based upon defendants' purported good faith or lack of ill intent (collectively, "good faith defenses"). These defenses fail for several independent reasons, and partial summary judgment should be granted in Mattel's favor as to each.

1. **Good Faith and 17 U.S.C. § 205 Are Not Valid Defenses to Mattel's Claim For Copyright Infringement[126]**

Defendants argue that Mattel's claim for copyright infringement is barred because MGA allegedly "acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA Defendants was valid and permissible."[127]

Good faith is not a valid defense to copyright infringement. "[E]ven where the defendant believes in good faith that he is not infringing a copyright, he may be found liable." Pye v. Mitchell, 574 F.2d 476, 481 (9th Cir. 1978) (citing County of Ventura v. Blackburn, 362 F.2d 515 (9th Cir. 1966)); see also L.A. News Serv. v. Conus Commc'n Co., 969 F. Supp. 579, 584 (C.D. Cal. 1997) ("Direct infringement does not require intent or any particular state of mind").

Although 17 U.S.C. § 205(d) can be a defense to copyright infringement, it is inapplicable here. That provision states that where there are competing transfers of copyright, a prior transferee (here, Mattel, by the virtue of the Inventions Agreement) prevails unless the later purported transferee (here, MGA) took in good faith without notice of the earlier transfer and recorded first. See 17 U.S.C. § 205(d) ("[T]he later transfer prevails if recorded first . . . and if taken in

---

[126] The MGA defendants have asserted the following affirmative defenses that fall under the rubric of good faith: bona fide purchaser for value, 17 U.S.C. § 205(d), lawful competition, and good faith. UF 114.

[127] UF 91 (MGA's Answer at 22:19-21).

-44-

good faith . . . and without notice of the earlier transfer") (emphasis added). MGA has admitted did not record its copyright assignment, and the defense fails for this reason alone.[128] Mattel did.[129] The defense fails for this reason alone. Peer Int'l Corp. v. Latin American Music Corp., 161 F. Supp. 2d 38, 48 (D.P.R. 2001)

### 2. Good Faith Is Not a Defense to Mattel's Strict Liability Claims.

Good faith is not a viable defense Mattel's claims for unfair competition and conversion because these are strict-liability offenses for which intent is not even an element. See, e.g., Community Assisting Recovery, Inc. v. Aegis Ins. Co., 92 Cal. App. 4th 886, 891 (2001) ("The [unfair competition] statute imposes strict liability. It is not necessary to show that the defendant intended to injure anyone."); Virtanen v. O'Connell, 140 Cal. App. 4th 688, 707 (2006) ("Conversion is a species of strict liability in which questions of good faith, lack of knowledge and motive are ordinarily immaterial.") (quotation and citation omitted).

### 3. Good Faith Is Not a Defense to Mattel's Intentional Tort Claims.

Although Mattel's intentional tort claims do include a scienter element, "[a] defense which demonstrates that plaintiff has not met its burden of proof [as to an element] is not an affirmative defense." Zivkovic v. Southern California Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002); see also Bank of the Sierra v. Kallis, 2006 WL 3513568, *10 (E.D. Cal. Dec. 6 2006) (granting summary judgment on an affirmative defense where defendant was merely "challenging an element of the [plaintiff's] cause of action" because "mere negation of a required element of a cause of action is not an affirmative defense.").

---

[128] UF 92.
[129] UF 128.

any such items were conceived, created, made, or reduced to practice by Bryant during his Mattel tenure, Mattel will be entitled to a judgment that it owns those inventions, and (c) there is no factual dispute that certain such inventions, including several drawings (Exs. 716-19, 721-22, 724-25, drawing Bates-numbered SL00044) and a dummy model, were conceived, created, made, or reduced to practice during Bryant's Mattel tenure, and hence are owned by Mattel;

        **(3)** the first-generation Bratz dolls released to the public in the summer of 2001, Copyright Registration Nos. VA 1-090-287, VA 1-090-288, VA 1-090-289, VA 1-090-290 and VA 1-148-305, are substantially similar to seventeen drawings (Ex. 10) and a doll sculpt drawing or blueprint (SL00044) created by Bryant, which are original, protectable works of expression;

        **(4)** Although damages and the full scope of Bryant's wrongdoing may involve disputed facts which need to be decided by the jury, on the undisputed facts Bryant is liable for breach of both the Inventions Agreement and the Conflict of Interest Questionnaire, breach of the duty of loyalty, and breach of fiduciary duty;

        **(5)** Although damages and the full scope of their wrongdoing may involve disputed facts which need to be decided by the jury, on the undisputed facts MGA and Larian are liable for aiding and abetting Bryant's breaches of the duty of loyalty and fiduciary duty; and

        **(6)** The affirmative defenses of MGA, Larian and MGA Hong Kong of (a) 17 U.S.C. § 205, (b) bona fide purchaser for value, (c) good faith, (d) acquiescence, (e) abandonment, (f) acts and omissions of others; and the affirmative defenses of MGA, Larian, MGA Hong Kong and Bryant of (a) statute of limitations, (b) laches, (c) waiver, (d) failure to mitigate damages, and (e) estoppel; and the affirmative defense of Bryant of (a) unclean hands and (b) consent, all fail as to Mattel's Phase 1 claims.