QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |
| vs. | **DISCOVERY MATTER** |
| MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]** |
| Defendant. | [PUBLIC REDACTED] MATTEL, INC.'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER PREVENTING MGA'S UNAUTHORIZED DESTRUCTIVE SAMPLING OF THE PRINCE NOTARY BOOK; |
| AND CONSOLIDATED ACTIONS | AND MEMORANDUM OF POINTS AND AUTHORITIES |
| | [Declaration of Diane C. Hutnyan filed concurrently herewith] Date: TBA Time: TBA Place: TBA |
| | **Phase 1:** Discovery Cut-off: January 28, 2008 Pre-trial Conference: May 5, 2008 Trial Date: May 27, 2008 |

1 │ TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 │       Pursuant to Local Rule 7-19, Mattel, Inc. respectfully submits this *ex parte*

3 │ application for a protective order barring its counsel and its experts, MGA, and all those

4 │ acting in concert with them, from handling or engaging in any destructive sampling or

5 │ testing of Jacqueline Prince's notary book unless and until MGA obtains this Court's

6 │ approval or Mattel's consent to the expert(s) involved and the protocol to be employed.

7 │       This Motion is made pursuant to Federal Rule of Civil Procedure 26 on the

8 │ grounds that Ms. Prince's notary book, a key piece of evidence in this case, should not

9 │ be subjected to handling or destructive testing over Mattel's objection and without prior

10 │ Court approval of the expert(s) and exact protocol to be used.

11 │       Pursuant to Local Rule 7-19, on March 8, 2008, counsel for MGA, Ryan

12 │ Weinstein of Skadden, Arps, Slate, Meagher & Flom LLP was given notice of this *ex*

13 │ *parte* application. MGA has informed Mattel that it opposes this *ex parte* application.[1]

14

15

16

17

18

19

20

21

22 │ [1]   Declaration of Diane C. Hutnyan In Support Of Mattel, Inc.'s *Ex Parte* Application for a Protective Order (hereinafter, "Hutnyan Dec."), Exh. 1. Previous

23 │ efforts to resolve the issue (including a telephone conversation on February 25, 2008 and detailed correspondence between Mattel's counsel, MGA's counsel, and Ms.

24 │ Prince's counsel, Daniel Warren, between February 16 and March 10 ) were wholly

25 │ unsuccessful. Id., ¶ 2. As explained in detail in the accompanying memorandum, MGA began taking the position that it was free to engage in destructive treatment of the

26 │ notary book without the Court's approval or Mattel's agreement and secured the notary

27 │ book for that purpose. That prompted this *ex parte*.

28

1        This Application is based on this Notice of Application, the accompanying

2    Memorandum of Points and Authorities, the Declaration of Diane C. Hutnyan filed

3    concurrently herewith, the records and files of this Court, and all other matters of which

4    the Court may take judicial notice.

5

6    DATED:  March 10, 2008        QUINN EMANUEL URQUHART OLIVER &

7                                    HEDGES, LLP

8

9                         By _____

10                            Diane C. Hutnyan
                              Attorneys for Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

**Page**

4  MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

5  PRELIMINARY STATEMENT ................................................................................ 1

6  STATEMENT OF FACTS ........................................................................................ 2

7  ARGUMENT ............................................................................................................ 5

8  I.   MGA MUST OBTAIN COURT APPROVAL AND/OR MATTEL'S
      AGREEMENT PRIOR TO PERFORMING ANY DESTRUCTIVE
9     SAMPLING AND TESTING .......................................................................... 5

10 II.  MGA HAS PREVIOUSLY ENGAGED IN UNILATERAL,
      UNAPPROVED DESTRUCTION OF EVIDENCE AND REFUSED
11    TO PROVIDE COURT-ORDERED TESTIMONY AS TO WHAT
      WAS DONE ................................................................................................... 10

12 III. THE COURT SHOULD ISSUE A PROTECTIVE ORDER ......................... 15

13 CONCLUSION ....................................................................................................... 16

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## Cases

Cameron v. Priest,
565 P.2d 925 (Colo. 1977) ................................................................. 6

Dabney v. Montgomery Ward & Co., Inc.,
761 F.2d 494 (8th Cir. 1985) ............................................................. 6

Diepenhorst v. City of Battle Creek,
2006 WL 1851243 (W.D. Mich. June 30, 2006) ................................. 6

Marrocco v. General Motors Corp.,
966 F.2d 220 (7th Cir. 1992) ............................................................. 5

Mirchandani v. Home Depot,
235 F.R.D. 611 (D. Md. 2006) ........................................................... 6

Sedrati v. Allstate Life Ins. Co.,
185 F.R.D. 388 (M.D. Ga. 1998) ....................................................... 5

## Statutes

Fed. R. Civ. P. 26(c) ................................................................... 2, 15

Fed. R. Civ. P. 30(b)(6) ............................................................... 4, 11

## Miscellaneous

Am. Jur. 2d Depositions and Discovery § 166 ............................... 6, 7, 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

The law requires that a party, prior to performing irreversible destructive sampling or testing on evidence, obtain the Court's approval and allow the Court to have oversight of the testing process.  In fact, in this case, the Discovery Master required Mattel to follow a detailed protocol before its experts could even examine, _non-destructively,_ any Bryant original documents.

Prior to allowing Mattel's experts to non-destructively examine these documents, the Discovery Master reviewed the experts' C.V.s along with statements from them regarding the nature of their laboratory facilities and their practices with regard to the preservation of evidence.[2]  Only after the Discovery Master had approved Mattel's experts, along with a detailed protocol for the delivery, timing, and handling of the documents, did he grant Mattel's motion to compel Bryant to produce his original documents for expert examination.[3]

MGA, rather than presenting the Discovery Master with any information about its "experts," or any proposed stipulation or order setting forth a specific protocol for destructive sampling or testing, is seeking to circumvent the Court's authority by subpoenaing a third party for an original notary book on March 5 so that it can destructively sample and test it today, on March 10.  MGA plans to put almost 400 holes in the two pages of the notary book that Mr. Bryant has testified is evidence of his having created the original Bratz sketches in 1998.  And that is just the first "expert" who MGA suggests may be destructively handling the notary book.[4]  MGA has claimed

---

[2]  Id., Exh. 2 (Discovery Master's Order dated August 30, 2007).

[3]  Id., Exh. 2, ¶¶ 2-5.

[4]  Id., Exh. 3 (Revised Proposed Stipulation of March 3, 2008), ¶ 3 (19 set of up to 20 plugs from MGA's unlimited number of experts); _see also_ id., Exh. 3 (Letter from Matt Sloan to Diane Hutnyan, dated March 3, 2008), at 3 (last paragraph).

-1-

1   to "reserve[] the right to employ more than one expert," so if it does not get the answers
2   it wants, it will take another 400 holes.[5]  There is no limit to MGA's "destructive
3   testing" plan for this book.  MGA continues to claim that it need not have Court
4   approval to perform destructive sampling or testing on evidence in this case.

5          Accordingly, Mattel respectfully requests that the Discovery Master issue
6   a protective order pursuant to Federal Rule of Civil Procedure 26(c) preventing MGA
7   from performing destructive sampling or testing on the Prince notary book unless and
8   until MGA obtains prior Court approval of its experts and their facilities, along with a
9   protocol for the testing.

10                           **Statement of Facts**

11         On March 5, 2008, MGA issued a subpoena to Mr. Warren, Ms. Prince's
12  counsel and the custodian of her notary book, requesting that he ship the notary book
13  within two calendar days from his office in Georgia via FedEx to an MGA expert in
14  North Carolina.[6]  Though the subpoena was facially invalid, Mr. Warren immediately[7]
15  shipped the book to one of MGA's "experts" who apparently plans to begin his
16  destructive sampling and testing today, March 10, 2008.[8]

17
18
19
20
_____

[5]  Id., Exh. 3 (Stipulation), at ¶3.

[6]  Id., Exh. 4 (MGA's Subpoena to Ms. Prince, dated March 5, 2008).

21  [7]  Mr. Warren shipped the notary book the same day to MGA's expert the same day
22  that he received the subpoena, despite his awareness that Mattel objected to any testing
    of the notary book without court approval.  Id., Exh. 5 (Letter from Daniel Warren to
23  Mr. Lyter, dated March 6, 2008) and Exh. 6 (Letter from Diane Hutnyan to Daniel
24  Warren, dated February 18, 2008).  Before the subpoena was issued, Mr. Warren
    argued for sending the notary book to MGA.  See id., Exh. 7 (Letter from Daniel
25  Warren to Ryan Weinstein and me, dated February 20, 2008).

26  [8]  Id., Exh. 8 (Letter from Matthew Sloan to Diane Hutnyan dated March 6, 2008),
    at 1.  MGA's counsel also informed Mattel on March 6 that "the sampling must be
27  conducted by no later than Tuesday, March 11").  Id., Exh. 8 at 2.

28

MATTEL'S EX PARTE APPLICATION FOR PROTECTIVE ORDER

1          Prior to MGA issuing the subpoena, Mattel expressed its willingness to

2 agree that MGA's experts could perform destructive testing on the notary book if the

3 parties could arrive a stipulation containing a protocol similar to that in the Discovery

4 Master's August 30, 2007 order that the Discovery Master could approve.[9] After nearly

5 a week of correspondence and phone calls during which MGA's counsel accused Mattel

6 of delay, MGA finally sent a draft stipulation to Mattel.[10]  Mattel responded with a

7 detailed letter pointing out deficiencies in the stipulation.[11]  Among other things,

8 MGA's proposal did not (1) name any of the "experts" who would perform the

9 destructive sampling and testing; (2) limit the number of "experts" who would handle

10 and subject the notary book to sampling and testing; (3) contemplate the submission of

11 the experts' CVs, or any of the other specific information the Discovery Master had

12 required of Mattel's experts, for Court approval in advance of receiving the notary book

13 from Mr. Warren; (4) set forth any protocol regarding how, when, and where the notary

14 book would be shipped and stored; (5) limit the time period of the handling, sampling

15 and/or testing so that Mattel's expert could reasonably attend the sampling procedure;

16 (6) allow any such attendance by Mattel's already Court-approved expert without his

17 credentials being presented to MGA for approval; or (7) limit the number of holes that

18 would be punched into the notary book's pages.[12]  Given the findings of Mattel's Court-

19 approved expert, Dr. Aginsky, that the entry in the notary book that Mr. Bryant and Ms.

20 Prince have testified relates to Ms. Prince's 1999 notarization of key original Bratz

21

22

---

23    [9]   Id., Exh. 6 and Exh. 9 (Email to Daniel Warren from Diane Hutnyan dated February 22, 2008).

24    [10] Id., Exh. 10 (Email from Ryan Weinstein to Diane Hutnyan, dated February 27,

25 2008, enclosing MGA's proposed stipulation).

26    [11] Id., Exh. 11 (Letter from Diane Hutnyan to Ryan Weinstein dated March 3, 2008).

27    [12] Id., Exh. 10, cf. id., Exh. 11.

28

1  drawings was altered to add the notation "From 1998 Missouri," protecting the
2  evidence in the notary book is of paramount importance.

3        MGA refused to cure any of these defects,[13] flatly rejected Mattel's request
4  that it have an opportunity to rebut MGA's experts' findings through further
5  examination or testing of the notary book, should that be necessary,[14] and ignored
6  Mattel's request for agreement that the notary book be made available at trial.[15]  MGA
7  sent over a new version of the stipulation that was not only as defective as the first, but
8  also reserved a 35-day period for MGA to keep custody of the notary book.[16]  No
9  reason was provided for this change, which apparently was designed either to keep
10 Mattel from having access to the book for any rebuttal-related examination, or to
11 subject the notary book to sampling and/or testing by other unnamed "experts," or
12 both.[17]  MGA also stated that if Mattel would not agree to the new stipulation "as is"
13 within 18 hours, MGA would subpoena the notary book directly and initiate the
14 sampling and testing despite MGA's lack of Court authorization.[18]

15       Mattel responded that it thought that the parties still could arrive at a
16 mutually satisfactory stipulation, and, in any event, MGA must have prior Court

17

18    [13]  Id., Exh. 3 (Letter and Stipulation).
19    [14]  Id., Exh. 3 (Letter), at 4.  MGA's counsel told Mattel that if it wanted more
20 information about what its consultant-expert did with the notary book, it could "ask
   him in his deposition."  See id., Exh. 3 (Letter) at 3.  But MGA has not presented any
21 consultant for deposition, there is no guarantee that any of the "experts" MGA subjects
   the notary book to will be testifying experts or otherwise subject to deposition, and as
22 further described in this Application, even when Judge Larson found that MGA had
23 waived its privilege and ordered MGA to provide a Rule 30(b)(6) witness on the
   subject of MGA's consultant's earlier plugging of key documents in this case, MGA
24 refused to educate its witness, depriving Mattel of this information.
25    [15]  Id., Exh. 3 (Letter), cf. id., Exh. 11, at 3.
      [16]  Id., Exh. 3 (Stipulation), at ¶14.
26    [17]  Hutnyan Decl. ¶ 13.
27    [18]  Id., Exh. 3 (Letter), at 4.

1   approval before performing destructive testing.[19]   But instead of continuing the
2   negotiations, on March 5, MGA subpoenaed Mr. Warren, who sent the notary book to
3   the first of MGA's "experts" the next day.[20]  Also on March 6, MGA announced for the
4   first time that the sampling would begin on March 10 or March 11 and that Mattel's
5   expert could only attend if he could attend on one of those two unilaterally dictated
6   days.[21]  To date, MGA refuses to acknowledge the need for Court approval prior to any
7   destructive sampling or testing.[22]

8                                                   **Argument**
9

10  **I.     MGA MUST OBTAIN COURT APPROVAL AND/OR MATTEL'S**
11          **AGREEMENT PRIOR TO PERFORMING ANY DESTRUCTIVE**
12          **SAMPLING AND TESTING**

13                  "Destructive" sampling or testing means any sampling or testing that
14  would alter the documents' inherent physical status.  Because of the permanent nature
15  of destructive sampling or testing, it cannot be performed without prior approval of the
16  Court or agreement by other parties; and, if it is done without prior approval or
17  agreement, such conduct is sanctionable. E.g., Marrocco v. General Motors Corp., 966
18  F.2d 220, 221 (7th Cir. 1992) (*ex parte* destructive testing warranted dismissal
19  sanction); Sedrati v. Allstate Life Ins. Co., 185 F.R.D. 388, 390-94 (M.D. Ga. 1998)
20  (excluding results of document testing performed by defendant *ex parte*; "The Court
21  neither condones nor approves of Defendant's conduct in handling the subject
22  documents or performing the analyses upon them without providing sufficient prior

23  _____

24  [19]   Id., Exh. 12 (Letter from Diane Hutnyan to Ryan Weinstein and Matthew Sloan
25  dated March 5, 2008 ), at 2.
       [20]   Id., Exhs. 4 and 5.
26     [21]   Id., Exh. 8, at 1-2.
27     [22]   Id., Exh. 1, at 2 (Email from Matt Sloan to Michael Zeller dated March 9, 2008).
28

1 notice to the Plaintiff and the Court."); Mirchandani v. Home Depot, 235 F.R.D. 611,

2 613 (D. Md. 2006) ("[h]ad plaintiffs proceeded to destructively test components of the

3 ladder without first seeking guidance from the court, they would have risked the

4 consequences that may befall a litigant deemed to have engaged in spoliation of

5 evidence, such as an adverse inference instruction to the jury . . . or even outright

6 dismissal of their case"); Cameron v. Priest, 565 P.2d 925, 929 (Colo. 1977) ("plaintiff

7 correctly brought the matter before the trial court for a judicial determination prior to

8 administration of the destructive test").

9          "The district court . . . retains discretion to impose reasonable conditions

10 surrounding a request to test tangible objects, especially to protect against damage by

11 destructive testing." Diepenhorst v. City of Battle Creek, 2006 WL 1851243, at *1

12 (W.D. Mich. June 30, 2006; see also Dabney v. Montgomery Ward & Co., Inc.,

13 761 F.2d 494, 498 (8th Cir. 1985) (same); see also 23 Am. Jur. 2d Depositions and

14 Discovery § 166 (". . . Destructive testing may be permitted in the court's discretion, []

15 if the rights of opposing litigants are protected, such as by assuring that the object is not

16 totally consumed[] or by giving the parties adequate opportunity to photograph and

17 inspect the object before destructive testing and an opportunity to view the tests with

18 their experts or representatives.[]  Protective arrangements are necessary if the test

19 would so alter the exhibit that it would be difficult for the [other party] to present his or

20 her claim") (citations omitted).  Indeed, perhaps due to the stated concerns of the

21 District Court with regard to earlier unauthorized destructive testing that MGA

22 conducted on at least 16 of Mr. Bryant's supposedly original Bratz drawings before

23 Mattel's counsel ever was permitted to see the drawings,[23] the Discovery Master in this

24

25

26    [23] Id., ¶ 21 and Exh. 13 (photocopies and photographs of plugged documents). *See*

27 *also* id., Exh. 14 (Mattel's Inc's Motion and Notice of Motion for Appointment of

(footnote continued)

28

1  case required that a specific protocol be established before experts could perform any

2  testing, *even non-destructive testing,* on original documents.  At the August 23, 2007

3  hearing on Mattel's Motion to Compel Production of the Bryant Original Documents

4  for expert non-destructive examination, Judge Infante commented to Mattel's counsel:

5      WELL, I THINK IT'S IMPORTANT TO KNOW WHO

6      YOUR EXPERTS ARE TO DETERMINE THAT

7      THEY'RE REPUTABLE AND HAVE SYSTEMS IN

8      PLACE AND UNDERSTAND THEIR IMPORTANT

9      DUTY

10

11      THE ONLY WAY THAT COULD BE

12      DEMONSTRATED AND STILL PROTECT YOUR

13      WORK PRODUCT WOULD BE FOR YOU TO SUBMIT

14      TO ME IN CAMERA A LIST OF WHO THE EXPERTS

15      ARE, WITH ANY RESUME OR STATEMENT OF

16      THEIR QUALIFICATIONS AND PRACTICES AND

17      THEIR LOCATIONS.

18

19      THAT COULD BE SUBMITTED TO ME IN CAMERA,

20      SO THAT I WOULD FEEL MORE COMFORTABLE IN

21      FOLLOWING YOUR RECOMMENDATIONS HERE

22      REGARDING PROTOCOL.[24]

23

24

25

26  Expert Witnesses; and Memorandum of Points and Authorities dated June 19, 2006) at 20.

27  [24] Id., Exh. 15 (Hearing Transcript dated August 23, 2007), at 12:20-13:6.

28

07209/2430318.10729/24:
0318.1

-7-

1    Mattel complied in full, as reflected in the Discovery Master's Order of
2  August 30, 2007:

3         The following materials were provided to the Discovery
4         Master, at his request, for *in camera* review: the C.V. of
5         the four experts who will be conducting examination,
6         inspection and testing of the documents; and statements
7         from each of them as to the location and nature of their
8         laboratory facilities, as to their individual practices with
9         regard to the preservation of evidence, and as to their
10        understanding that they are fully accountable for Bryant's
11        original documents while those documents are in their
12        custody. The Discovery Master has found Mattel's showing
13        with respect to the experts satisfactory.[25]

14  In this Order, the Discovery Master also required that Mattel abide by a detailed
15  protocol that set forth the exact manner, time, location, storage, and handling of the
16  documents.[26]   Thirty-five days was the total time that was given to Mattel for
17  examination of eight large boxes of Bryant original documents by four different Court-
18  approved experts in four different parts of the country.[27]

19        After the non-destructive examination was complete, Mattel conducted
20  destructive testing on certain Bryant originals and on Ms. Prince's notary book. With
21  respect to the Bryant originals, which were governed by the August 30, 2007 Order,
22  Mattel selected approximately 200 pages from among the eight boxes to conduct paper
23  testing on and pursuant to its obligations in paragraph 6 of that Order, notified all the

24

25   [25]   Id., Exh. 2, at ¶ 2.
26   [26]   Id., Exh. 2, at ¶¶ 4-7.
27   [27]   Id., Exh. 2, at ¶ 4.

28

07209/2430318.10/209/24:
0318.1
                                         -8-            Case No. CV 04-9049 SGL (RNBx)

1  parties, including MGA, of its intention to take samples of the documents for such
2  testing.[28]  The parties were then able to negotiate a specific protocol for the sampling
3  procedure, which included the name of the expert doing the sampling (who had
4  previously been approved by the Discovery Master), set forth a total period of four
5  business days for the sampling, and gave MGA's consultant the right to attend the
6  sampling (which he did) and to object (which he did not).[29]  This stipulation was
7  presented to the Discovery Master, who approved it.[30]

8         The testing of Ms. Prince's notary book -- which was a relatively small
9  project in comparison to the other examinations, amounting to less than 60 hypodermic-
10  needle-sized microplugs from two pages, was accomplished by agreement.  In advance
11  of the sampling, Mattel notified Mr. Warren and the parties of its intent to have its
12  Court-approved expert, Dr. Aginsky, take the samples and they agreed with it, so long
13  as their consultant, Mr. Speckin, was permitted to attend and object.[31]  This sampling
14  was completely uneventful and the notary book was returned to Mr. Warren in the same
15  condition it had arrived in with the exception of the agreed-upon microplugs that had
16  been taken.[32]

17         Here, MGA's plan to have unlimited numbers of non-Court-approved
18  "experts" take unlimited numbers of plugs from ink lines in the entries of the notary
19  book on those two pages would very likely destroy the entries in question or render
20  them incomprehensible to the jury.  At a minimum, MGA has threatened to -- and taken

21  _____

22  [28]  Id., Exh. 16 (Letter from Diane Hutnyan to Michael Page and Timothy Miller,
23  dated December 13, 2007).
      [29]  Id., Exh. 17 (Stipulation and Order, dated January 11, 2008).
24  [30]  Id., Exh. 17.
25  [31]  Id., Exh. 18 (Letter from Diane Hutnyan to Daniel Warren, dated December 25,
      2007).
26  [32]  Id., ¶ 20.

27

28
                                              -9-                    Case No. CV 04-9049 SGL (RNBx)

                                                    MATTEL'S EX PARTE APPLICATION FOR PROTECTIVE ORDER

1 steps to accomplish -- the destructive sampling and testing of evidence in this case. As

2 is undisputed, MGA has neither sought or obtained Court approval of that plan nor

3 obtained agreement with the parties for it.

4

5 **II. MGA HAS PREVIOUSLY ENGAGED IN UNILATERAL,**

6 **UNAPPROVED DESTRUCTION OF EVIDENCE AND REFUSED TO**

7 **PROVIDE COURT-ORDERED TESTIMONY AS TO WHAT WAS**

8 **DONE**

9 As the Court knows, the originals of at least 16 of Bryant's drawings have

10 unexplained plug holes in them. Every one of these documents was, according to

11 Bryant's testimony, a Bratz-related sketch that he purportedly created in 1998.[33] Mr.

12 Bryant testified in November 2004 that he did not know where the plugholes in his

13 original documents came from.[34] After refusing to disclose where the holes came from,

14 Erich Speckin, in his July 21, 2006 declaration to the Court, admitted that he performed

15 tests on "various" original documents that included "extracting small microplugs" from

16 an unspecified number of unidentified documents.[35] Judge Larson stated in his August

17 2006 Order with respect to these materials: "That there are serious questions

18 concerning the handling of these critical documents certainly causes the Court much

19

20

21

_____

22 [33] Id., Exh. 19 (Excerpts from Deposition Transcript of Carter Bryant Deposition,

23 dated November 5, 2004, at 328:1-6 (re Bryant 00179); at 328:18-20 (re Bryant 00180);
at 328:22-329:7 (re Bryant 00181-00183); at 329:17-19 (re Bryant 00186);at 332:121-

24 333:6 (re Bryant 00194-00195); at 334:14-21 (re Bryant 00201-00202; 00204); at

25 335:12-21 (re Bryant 00207-00208; 00210); and at 336:2-6 (re Bryant 00211)).
[34] Id., Exh. 20 (Court Order dated August 9, 2006) at 4-5.

26 [35] Id., Exh. 21 (Declaration of Erich J Speckin, dated July 21, 2006, at ¶¶ 8 and 13);

27 Exh. 20, at 6-7.

28

1  concern about whether the truth seeking functions of the adversarial system have been
2  fundamentally compromised in this case."[36]

3          In an effort to discern which docum`ents Mr. Speckin tested, how many
4  holes he removed from them, and what other damage he may have caused, Mattel
5  sought <u>Rule</u> 30(b)(6) testimony from MGA.  Topic No. 41 of Mattel's Notice requested
6  that MGA provide a <u>Rule</u> 30(b)(6) witness with knowledge of "the testing of or
7  sampling from documents that refer or relate to Bratz."[37]  MGA presented Lisa Tonnu
8  on this topic twice, but her testimony was found to be inadequate, and the Discovery
9  Master found MGA had waived its privilege as to the handling of the documents and
10  ordered MGA to "produce a witness to testify fully on Topic No. 41."[38]

11         Again, MGA designated Ms. Tonnu.  In her first session of the continued
12  deposition in January 2008,



---

[36] <u>Id.</u>, Exh. 20 at 11.
[37] <u>Id.</u>, Exh. 22 (Second Notice of Deposition of MGA Entertainment, Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6), dated February 1, 2007), at 11.
[38] <u>Id.</u>, Exh. 23 (Court Order, dated January 8, 2008), at 22.
[39] <u>Id.</u>, Exh. 24 (Tonnu Deposition, dated January 17, 2008), at 929:8-13.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19   In her last session of deposition, taken January 24, 2008,

20

21

22

23

24

25

26   [40] Id., Exh. 24, at 929:10-25.

27

28



Counsel for Mattel then asked Ms. Tonnu

---

[41]   Id., Exh. 25 (Tonnu Deposition, dated January 24, 2008), at 1267:22-1268:5; Exh. 26 (Deposition Exhibit 1723). The six documents in Exhibit 1723 are photocopies of Bryant original documents 00179, 00180, 00181, 00182, 00183 and one that has not been identified by Bates number.  No explanation has ever been given for the microplugs taken from Bryant original documents 00186, 00192, 00194, 00195, 00201, 00202, 00204, 00207, 00208, 00210, 00211).  Hutnyan Decl. ¶ 24.

1   ████████████████████████████████████

2   █████████████████████████████

3   ████████████

4           Counsel for Mattel showed Ms. Tonnu Exhibit 1748 (photocopies and

5   photographs of original Bryant document 00201); Exhibit 1750 (photocopies and

6   photographs of original Bryant document 00204); and Exhibit 1751 (photocopies and

7   photographs of original Bryant document 00210).[43]   Each of these three documents

8   were sketches that Mr. Bryant testified were purportedly created in 1998 and notarized

9   by Ms. Prince in August of 1999.[44]   Each of these three original documents had

10  microplugs taken from them.[45]   In each case, ████████████████████████████

11  ████████████████████████.[46]   With respect to a fourth Prince-notarized

12  microplugged Bratz sketch, original Bryant document 00211, ██████████████████

13  ████████████████████████████████████████████████████████████████████

14  ████████████████████████.[47]

15          Thus, Mattel remains in the dark regarding how these holes were put in

16  these vital pieces of evidence.   Despite a Court Order, MGA refuses to provide a

17  responsive 30(b) witness on this topic and has blocked every attempt Mattel has made

18  to garner this information from Mr. Speckin.[48]   MGA should not be permitted to

19  destroy or alter evidence in this case again.

20  _____

21

22  [42]  Id., Exh. 25, at 1268:12-23 and Exh. 27 (Deposition Exhibit 1747).

    [43]  Id., Exhs. 28-30 (Deposition Exhibits 1748, 1750, 1751, respectively).

23  [44]  Id., Exh. 19 (Deposition Transcript of Carter Bryant, dated November 5, 2004),

    at 335:12-21.

24  [45]  Id., Exhs. 28-30.

25  [46]  Id., Exh. 25, at 1269:13-19; 1270:19-1271:8; 1272:4-1273:21; 1273:22-1275:1.

    [47]  Id., Exh. 25, at 1277:20-1280:7, and Exh. 31 (Deposition Exhibit 1752).

26  [48]  Hutnyan Dec. ¶ 34.

27

MATTEL'S EX PARTE APPLICATION FOR PROTECTIVE ORDER

1  ## III.  **THE COURT SHOULD ISSUE A PROTECTIVE ORDER**

2          As shown above, MGA is required to obtain the Court's approval or

3  Mattel's agreement before engaging in the destructive sampling or testing of originals.

4  Federal Rule of Civil Procedure 26(c) also provides that "the court in which the action

5  is pending may make any order which justice requires to protect a party or person from

6  annoyance, embarrassment, oppression, or undue burden or expense, including that

7  certain matters not be inquired into, that the scope of the disclosure or discovery be

8  limited to certain matters, or that a trade secret or other confidential research,

9  development, or commercial information not be revealed or be revealed only in a

10  designated way." Fed. R. Civ. P. 26(c).

11          The Court should enter an order barring MGA from handling, sampling or

12  destructively testing the Prince notary book until and unless MGA seeks and obtains

13  Mattel's agreement to or the Court's approval of a proper protocol with approved

14  experts and appropriate limits on its activities, and including Mattel's participation.

15          Mattel does not seek to prevent MGA entirely from performing reasonable

16  testing on the notary book. But given the importance of this piece of evidence; MGA's

17  undisputed record of document-tampering in this case, as discussed above; the

18  requirements the Discovery Master has placed on non-destructive and destructive

19  testing in this case, and MGA's refusal to meet those requirements; MGA's refusal to

20  limit its testing protocol in any way; and the unlimited number of experts it plans to use

21  and microplugs it plans to take, MGA should be enjoined from proceeding until it

22  establishes an appropriate protocol and gets it, and its expert, approved by the Court.

23

24

25

26

27

1

## Conclusion

2         For the reasons discussed above, Mattel respectfully requests that the

3  Court issue a protective order preventing MGA, and its experts, from handling,

4  sampling or testing the Prince notary book unless and until MGA obtains Court

5  approval or agreement.

6  DATED: March 10, 2008        QUINN EMANUEL URQUHART OLIVER &
                                HEDGES, LLP
7

8

9  By _____
                                Diane C. Hutnyan
10                               Attorneys for Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28