QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Plaintiff and Cross-
Defendant Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | [PUBLIC REDACTED]<br>DECLARATION OF DIANE C. HUTNYAN IN SUPPORT OF MATTEL, INC.'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER PREVENTING MGA'S DESTRUCTIVE TESTING OF THE PRINCE NOTARY BOOK |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |
| | Hearing Date: TBA<br>Time: TBA<br>Place: TBA |
| | Discovery Cut-Off: January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

-1-
HUTNYAN DECLARATION ISO EX PARTE PROTECTIVE ORDER

# DECLARATION OF DIANE C. HUTNYAN

I, Diane C. Hutnyan, declare as follows:

1. I am a member of the bar of the State of California, am admitted to practice before this court and am a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for plaintiff and cross-defendant Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2. Pursuant to Local Rule 7-19, on March 8, 2008, counsel for MGA, Ryan Weinstein and Matthew Sloan of Skadden, Arps, Slate, Meagher & Flom LLP were given written and verbal notice of this *ex parte* application. MGA has informed Mattel that it opposes this ex parte application. A true and correct copy of my notice, MGA's response, and further exchange about the *ex parte* application is attached hereto as Exhibit 1. Previous efforts to resolve the issue (including a telephone conversation between me and Messrs. Sloan and Weinstein that took place on February 25, 2008, and detailed correspondence between me, Mr. Sloan, Mr. Weinstein, and Ms. Prince's counsel, Daniel Warren between February 16 and March 10, 2008) were wholly unsuccessful.

3. Attached hereto as Exhibit 2 is a true and correct copy of the Discovery Master's Order dated August 30, 2007.

4. Attached hereto as Exhibit 3 is a true and correct copy of a letter sent to me on March 3, 2008 by Matt Sloan enclosing a revised proposed stpulation.

5. Attached hereto as Exhibit 4 is a true and correct copy of the subpoena, dated March 5, 2008, that was issued by MGA to Jacqueline Prince c/o Daniel Warren.

6. Mr. Warren shipped the notary book the same day to MGA's expert, Mr. Lter, the same day that he received the subpoena. Attached hereto as Exhibit 5 is a true and correct copy of a letter from Daniel Warren to Mr. Lyter, dated March 6, 2008, letting him and us know that he was forwarding the notary book. In a letter to Mr. Warren dated February 18, 2006, a true and correct copy of which is attached as Exhibit 6, I had notified Mr. Warren of Mattel's objection to his sending the notary book to MGA without an agreement or Court order in place for the destructive testing. In response to that letter, Mr. Warren had argued for sending the notary book to MGA. Attached hereto as Exhibit 7 is a true and correct copy of a letter from Daniel Warren to Ryan Weinstein and to me, dated February 20, 2008.

7. Attached hereto as Exhibit 8 is a true and correct copy of a letter from Matthew Sloan to me dated March 6, 2008, informing us for the first time that the sampling was to take place on March 10 or 11th and that the sampling had to be conducted by "no later than Tuesday, March 11."

8. Along with the objection that we had sent Mr. Warren and Mr. Weinstein on February 20, 2008, we expressed Mattel's willingness to agree that MGA's experts could perform destructive testing on the notary book if the parties could arrive a stipulation containing a protocol similar to that in the Discovery Master's August 30, 2007 order and that the Discovery Master could approve for the sampling and testing to be done. *See* Exh. 6 above. Two days later, we again signaled our willingness to work with MGA on an appropriate protocol. A true and correct copy of an email dated February 22, 2008, to Mr. Warren, which was also sent to Mr. Weinstein, is attached hereto as Exhibit 9.

9. On February 25, 2008, I had a telephonic conference with Mr. Sloan and Mr. Weinstein about the subject of the destructive testing they planned.

1  I reiterated our view that MGA could not engage in destructive sampling or testing
2  of any kind without an agreement with Mattel, and/or Court approval. I suggested
3  to them that they come up with a similar protocol to the one we had proposed for
4  some of the testing we had done in the case. I told Mr. Weinstein and Mr. Sloan
5  that without an agreed-upon protocol and/or Court order in place, given MGA's
6  refusal to provide information about the other microplugs that MGA took earlier in
7  the case, we objected to the notary book being in MGA's or MGA's expert's
8  custody.

9        10.    After nearly a week of correspondence and phone calls, MGA's
10  counsel finally sent a draft stipulation to me. Attached hereto as Exhibit 10 is a
11  true and correct copy of an email from Ryan Weinstein to me, dated February 27,
12  2008, enclosing MGA's first proposed stipulation.

13        11.    I responded with a detailed letter pointing out deficiencies in
14  the stipulation and explaining our concerns. Attached hereto as Exhibit 11 is a true
15  and correct copy of my letter to Mr. Weinstein, dated March 3, 2008. Among
16  many other issues, I was concerned because MGA's proposal did not name any of
17  the "experts" who would perform the destructive sampling and testing; did not
18  limit the number of "experts" who would handle and subject the notary book to
19  sampling and testing; did not contemplate the submission of the experts' CVs, or
20  any of the other specific information the Discovery Master had required of Mattel's
21  experts, for Court approval in advance of receiving the notary book from Mr.
22  Warren; did not set forth any protocol regarding how, when, and where the notary
23  book would be shipped and stored; did not limit the time period of the handling,
24  sampling and/or testing so that Mattel's expert could reasonably attend the
25  sampling procedure; did not allow any such attendance by Mattel's already Court-
26  approved expert without his credentials being presented to MGA for approval; and
27
28

-4-

did not limit the number of holes that would be punched into the notary book's pages.

12. Mr. Sloan responded with his letter of March 3, 2008, which is attached hereto as Exhibit 3. In this letter, MGA refused to cure any of these defects. Mr. Sloan rejected Mattel's request that it have an opportunity to rebut MGA's experts' findings through further examination or testing of the notary book. Mr. Sloan did not respond to Mattel's request for agreement that the notary book be made available at trial. The new version of the stipulation had the same deficiencies I had identified, but now also included a 35-day period for MGA to keep custody of the notary book. Mr. Sloan's letter stated that if Mattel would not agree to the new stipulation "as is" within 18 hours, MGA would subpoena the notary book directly and initiate the sampling and testing despite MGA's lack of Court authorization.

13. No reason was provided for the 35-day time period that was added to the revised stipulation. Attached hereto as Exhibit 12 is a true and correct copy of my response letter to Mr. Weinstein and Mr. Sloan, dated March 5, 2008. In it, I asked why MGA felt it needed 35 days for the sampling and testing. Neither of them responded to my inquiry. I believe MGA's intent was to keep Mattel from having access to the book for any rebuttal-related examination, or to subject the notary book to sampling and/or testing by other unnamed "experts," or both.

14. In my letter that is attached as Exhibit 12, I responded that the parties still could arrive at a mutually satisfactory stipulation, and, in any event, MGA must have prior Court approval before performing destructive testing. But instead of continuing the negotiations, as mentioned above, that same day, MGA subpoenaed Mr. Warren.

-5-

15. In Matthew Sloan's March 6 letter to me (Exhibit 8), he informed us for the first time (although claiming that "notice" of the sampling had been given to us previously in the proposed stipulation that was sent for our consideration) that the sampling would begin on March 10 or March 11 and that Mattel's expert could only attend if he could attend on one of those two unilaterally dictated days. To date, MGA refuses to acknowledge the need for Court approval prior to any destructive sampling or testing.

16. Attached hereto as Exhibit 14 is a true and correct copy of Mattel Inc.'s Motion and Notice of Motion for Appointment of Expert Witnesses; and Memorandum of Points and Authorities dated June 19, 2006.

17. Attached hereto as Exhibit 15 is a true and correct copy of excerpts from the August 23, 2007 Hearing Transcript of the hearing on Mattel's Motion to Compel Production of the Bryant Original Documents. At that time, Mattel was seeking access to the documents for its experts' non-destructive examination only.

18. Pursuant to the August 30, 2007 Order, Mattel conducted that non-destructive examination and testing of Bryant's original documents. In December 2007, I sent a letter to counsel for Bryant and counsel for MGA notifying them of Mattel's desire to conduct paper testing on approximately 200 pages of Bryant original documents. Attached hereto as Exhibit 16 is a true and correct copy of my December 13, 2007 letter to that effect.

19. The parties then negotiated a specific protocol for the paper sampling procedure. The protocol included the name of the expert doing the sampling (Mr. Rantanen, who had previously been approved by the Discovery Master), set forth a total period of four business days for the sampling, and gave MGA's consultant the right to attend the sampling. A true and correct copy of the resulting Stipulation and Order, dated January 11, 2008 is attached hereto as

1 | Exhibit 17. The paper sampling took place in Mr. Speckin's presence. He did not
2 | object to any portion of it.

3 |     20.    The testing of Ms. Prince's notary book was a relatively small
4 | project in comparison to the other examinations, amounting to less than 60
5 | hypodermic-needle-sized microplugs from two pages. In advance of the ink
6 | sampling, I notified Mr. Warren and the parties of Mattel's intent to have its Court-
7 | approved expert, Dr. Aginsky, take the samples. Mr. Warren and MGA agreed
8 | with it, so long as MGa's consultant, Mr. Speckin, was permitted to attend and
9 | object as with the paper sampling. A true and correct copy of my letter dated
10 | December 25, 2007 is attached hereto as Exhibit 18. The notary book was returned
11 | to Mr. Warren in the same condition it had arrived in with the exception of the
12 | agreed-upon microplugs that had been taken.

13 |     21.    The originals of at least 16 of Bryant's drawings have
14 | unexplained plug holes in them. Attached hereto as Exhibit 13 is a true and correct
15 | photocopies and printed photographs that were taken of 16 of the original Bryant
16 | documents from which microplugs had been taken at some point prior to Mr.
17 | Bryant's November 2004 deposition.

18 |     22.    Attached hereto as Exhibit 19 is a true and correct copy of
19 | excerpts from the deposition transcript of Carter Bryant, taken November 5, 2004.

20 |     23.    Attached hereto as Exhibit 20 is a true and correct copy of
21 | Judge Larson's Order, dated August 9, 2006.

22 |     24.    Attached hereto as Exhibit 21 is a true and correct copy of
23 | Erich Speckin's declaration dated July 21, 2006 in which Mr. Speckin admitted he
24 | had performed tests on "various" original documents that included "extracting
25 | small microplugs" from an unspecified number of unidentified documents. No
26 | explanation has been given by MGA for the plugs it took in most of the documents
27 | collected and attached hereto as Exhibit 13.
28

-7-

HUTNYAN DECLARATION ISO EX PARTE FOR PROTECTIVE ORDER

25. Attached hereto as Exhibit 22 is a true and correct copy of Mattel's Second Notice of Deposition of MGA Entertainment, Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6), dated February 1, 2007.

26. MGA designated Ms. Lisa Tonnu as its designee on Topic No. 41. Ms. Tonnu was found to be unprepared for her deposition, and the Court ordered MGA to "produce a witness to testify fully on Topic No. 41." Attached hereto as Exhibit 23 is a true and correct copy of the Court's Order, dated January 8, 2008.

27. Attached hereto as Exhibit 24 and Exhibit 25 respectively are true and correct copies of excerpts of the deposition transcripts of Ms. Tonnu, taken on January 17 and January 24, 2008.

28. Attached hereto as Exhibit 26 is a true and correct copy of Deposition Exhibit 1723, which was marked at Ms. Tonnu's deposition on January 24, 2008.

29. Attached hereto as Exhibit 27 is a true and correct copy of Deposition Exhibit 1747, which was marked at Ms. Tonnu's deposition on January 24, 2008.

30. Attached hereto as Exhibit 28 is a true and correct copy of Deposition Exhibit 1748, which was marked at Ms. Tonnu's deposition on January 24, 2008.

31. Attached hereto as Exhibit 29 is a true and correct copy of Deposition Exhibit 1750, which was marked at Ms. Tonnu's deposition on January 24, 2008.

32. Attached hereto as Exhibit 30 is a true and correct copy of Deposition Exhibit 1751, which was marked at Ms. Tonnu's deposition on January 24, 2008.

33. Attached hereto as Exhibit 31 is a true and correct copy of Deposition Exhibit 1752, which was marked at Ms. Tonnu's deposition on January 24, 2008.

34. Throughout this litigation MGA has opposed any effort by Mattel to learn about the handling and destructive sampling/testing of the 16 original Bryant documents identified as Exhibit 13 above.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 10th day of March, 2008, in Los Angeles, California.

*[signature]*
Diane C. Hutnyan