# EXHIBIT 21

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 22

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                       EASTERN DIVISION

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)
12              Plaintiff,
13                                        SECOND NOTICE OF DEPOSITION
                                          OF MGA ENTERTAINMENT, INC.
14       vs.                              PURSUANT TO FEDERAL RULE OF
                                          CIVIL PROCEDURE 30(B)(6)
15  MATTEL, INC., a Delaware
16  corporation,                          Discovery Cut-off:  None Set
                                          Pre-trial Conference:  None Set
17              Defendant.                Trial Date:  None Set

18
   AND CONSOLIDATED ACTIONS
19

20

21

22

23

24

25

26

27

28

Δ π EXHIBIT 452
Deponent Lockhart
Date 6/14/07 Rptr. Dupre
WWW.DEKOBOOK.COM

'209/2048031.1

2-1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 15, 2007 beginning on 9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017. Pursuant to Fed. R. Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf concerning each of the topics set forth in Exhibit A hereto.

PLEASE TAKE FURTHER NOTICE that the deposition will take place before a duly authorized notary public or other officer authorized to administer oaths at depositions, and will continue from day to day, Sundays, Saturdays and legal holidays excepted, until completed.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(2), the deposition will be videotaped.

DATED: February 1, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By _____
Michael T. Zeller
Attorneys for Mattel, Inc.

452-2

9/2048031.

-1-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT _22_

PAGE _209_

**Exhibit A**

4523

EXHIBIT 22

PAGE 210

# EXHIBIT A

1.      "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.      "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.      "BRATZ" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also, previously or subsequently called) and any product or doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product or doll or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each EMBODIMENT of such doll or any portion thereof.  As used herein, "product or doll or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.

4.      "DESIGN" or "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the

-2-

452-4

EXHIBIT __22__

PAGE __211__

7209/2048031.

foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

5.   "EMBODIMENT" means any representation, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

6.   The DRAWINGS means those documents produced as Bates Nos. MGA000053-57,   MGA000392-395,   MGA000435-439,   MGA000455-481 MGA004606,  MGA004608,  MGA004640,  MGA005065,  MGA006423-6426, MGA006432-6436, MGA006438-06440, MGA006442-6467, and SL00016-45.

7.   "BASED ON" means copied or reproduced from, substantially similar to, based on or derived from in any manner, whether in whole or in part.

8.   "CREATED" means produced, prepared, created, authored, conceived of or reduced to practice, whether in whole or in part and whether alone or jointly with others.

9.   "IDENTIFY" or "IDENTITY" means the following:

(a)   With reference to an individual, means such individual's name, current or last known business title, current or last known business affiliation, current or last known relationship to YOU, current or last known residential and business address, and current or last known telephone number.

(b)   With reference to an entity or governmental organization, means such entity's or organization's name, present or last-known address, and present

209/2048031.

-3-

452-5

EXHIBIT  22

PAGE  212

or last-known telephone number and the IDENTITY of each individual who has served or participated as a contact for or on behalf of such entity or organization.

(c)     With reference to an EMBODIMENT, means the IDENTITY of the individual author(s) or creator(s) of the EMBODIMENT as well as of each other individual who contributed in any manner to the EMBODIMENT; the form, material and medium of the EMBODIMENT (*e.g.*, preliminary three-dimensional resin sculpture, final three-dimensional wax sculpture, digitized file of final three-dimensional wax sculpture, two-dimensional design drawing on paper); each title or name of the EMBODIMENT; the start and end date(s) of the EMBODIMENT's creation or preparation; and the current location of the EMBODIMENT.

10.     "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

11.     "ACTION" shall mean this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

12.     "DIGITAL INFORMATION" shall mean any information created or stored digitally, including but not limited to electronically, magnetically or optically.

13.     "SYSTEM" or "SYSTEMS" shall mean any computer or network of computers or other network devices that allow a two or more computers to share information and equipment, including but not limited to local area networks, wide area networks, storage area networks, client-server networks or peer-to-peer networks. The

209/2048031.

-4-

452-6

EXHIBIT ᵭᵭ

PAGE 213

1    use of the term "SYSTEM" or "SYSTEMS" shall also include the brand, model

2    number, technical specifications, and capacities of the computers who are part of each

3    such SYSTEM.

4        14.    "REFER OR RELATE TO" means constituting, embodying,

5    containing, referring to, commenting on, evidencing, regarding, discussing, describing,

6    mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting,

7    negating, revoking or otherwise relating to in any manner.

8        15.    "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as

9    those terms are defined in <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u> and

10   <u>Rule</u> 1001 of the <u>Federal Rules of Evidence</u>, including, but not limited to, all writings

11   and records of every type and description including, but not limited to, contracts,

12   agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"),

13   records of telephone conversations, handwritten and typewritten notes of any kind,

14   statements, reports, minutes, recordings, transcripts and summaries of meetings, voice

15   recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and

16   records of all types, studies, instruction manuals, policy manuals and statements, books,

17   pamphlets, invoices, canceled checks and every other device or medium by which or

18   through which information of any type is transmitted, recorded or preserved. Without

19   any limitation on the foregoing, the term "DOCUMENT" shall include all copies that

20   differ in any respect from the original or other versions of the DOCUMENT, including,

21   but not limited to, all drafts and all copies of such drafts or originals containing initials,

22   comments, notations, insertions, corrections, marginal notes, amendments or any other

23   variation of any kind.

24       16.    "PERSON" or "PERSONS" means all natural persons, partnerships,

25   corporations, joint ventures and any kind of business, legal or public entity or

26   organization, as well as its, his or her agents, representatives, employees, officers and

27

28

209/2048031.

-5-

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

452-7

EXHIBIT 22

PAGE 214

directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

17.     The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

## Topics of Examination

1.     The origin, conception, creation, design, sculpting, development, engineering, rotocasting, modeling and prototyping of BRATZ and BRATZ DESIGNS CREATED prior to June 30, 2001 (regardless of when or whether such was released in any form to the public), including without limitation the timing thereof, the IDENTITY of each PERSON with knowledge thereof, the IDENTITY of each PERSON involved therein, and the nature, extent and time period(s) of each such PERSON's involvement.

2.     The circumstances under which BRATZ or any BRATZ DESIGN first came to YOUR attention, including without limitation the timing, method and manner thereof and the IDENTITY of each PERSON with knowledge thereof.

3.     The identity of each doll, product, work or item produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or on YOUR behalf that was BASED ON any BRATZ DESIGN which BRYANT CREATED.

4.     To the extent not covered by Topic 3, each EMBODIMENT of any doll, doll accessory or toy that BRYANT CREATED prior to June 30, 2001.

5.     The work, activities and/or services that BRYANT performed for or with YOU or on YOUR behalf prior to June 30, 2001.

452-8

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT __22__

PAGE __215__

209/2048031.

6.    The origin, conception and creation of DESIGNS that BRYANT CREATED prior to June 30, 2001 and in which YOU claim to have, or have ever claimed to have, any right, title or interest (whether in whole or in part).

7.    The identity of, and the design, development, sculpting, development, engineering, rotocasting, modeling, prototyping and first sale of, any doll, product, work or item that has been produced, developed, manufactured, licensed, sold or offered for sale by, for or on behalf of YOU and that was BASED ON any DESIGN referenced in Topic 6.

8.    Each EMBODIMENT of BRATZ that was CREATED prior to June 30, 2001 or that was at any time BASED ON any BRATZ DESIGN which was CREATED prior to June 30, 2001.

9.    The DRAWINGS, including without limitation the authorship, creation, dissemination and use thereof and the source, meaning, authenticity and timing of any dates thereon.

10.    The IDENTITY of each vendor or third party who performed or contributed, or who was considered, solicited, requested, proposed or contemplated by YOU or BRYANT to perform or contribute, any activities, work or services in connection with BRATZ or BRATZ DESIGNS prior to June 30, 2001, YOUR COMMUNICATIONS therewith, and the nature, extent and timing of such activities, work or services.

11.    The exhibition, or proposed, offered, contemplated or requested exhibition, of BRATZ or any BRATZ DESIGN to any third party prior to June 30, 2001, including without limitation each instance in which BRATZ or any BRATZ DESIGN was marketed, offered for sale, pitched, shown or disclosed to, or otherwise discussed with or communicated to, any retailer, wholesaler or distributor and the DOCUMENTS that REFER OR RELATE thereto.

12.    The actual, proposed, requested or contemplated manufacture, fabrication or tooling (including the production of molds) of BRATZ, including without

209/2048031.

-7-

452-9

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT 22

PAGE 216

1  limitation the timing thereof and the IDENTITY of each manufacturer and potential
2  manufacturer used, proposed or considered.

3      13.   COMMUNICATIONS prior to June 30, 2001 between YOU and
4  any manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or
5  potential manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE
6  TO BRATZ or any BRATZ DESIGN.

7      14.   When and where BRATZ was first manufactured, shipped,
8  distributed and sold, and the IDENTITIES and roles of PERSONS involved therein.

9      15.   The licensing, including without limitation the proposed or
10 requested licensing, of BRATZ or any BRATZ DESIGN prior to December 31, 2001,
11 including without limitation the timing thereof, the IDENTITY of each such licensee or
12 proposed or requested licensee and the product(s) or proposed product(s) involved.

13     16.   COMMUNICATIONS between YOU and BRYANT prior to
14 January 1, 2001, including without limitation the content, means and timing of such
15 COMMUNICATIONS, the IDENTITY of the PERSONS who were parties thereto and
16 the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

17     17.   COMMUNICATIONS that BRYANT made for YOU or on YOUR
18 behalf with any PERSON other than YOU that REFER OR RELATE TO BRATZ prior
19 to June 30, 2001.

20     18.   YOUR agreements and contracts with BRYANT, including without
21 limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that
22 REFER OR RELATE thereto, and any actual or proposed amendments thereto.

23     19.   Each agreement or contract between YOU and any PERSON other
24 than BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that
25 REFERS OR RELATES to the time period prior to December 31, 2001 (regardless of
26 when such agreement or contract was negotiated or executed), including without
27 limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that
28 REFER OR RELATE thereto, and any actual or proposed amendments thereto.

209/2048031.

-8-

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

452-10

EXHIBIT __ 88 __

PAGE __ 217 __

20. YOUR knowledge, prior to April 29, 2004, of BRYANT's contracts and agreements with, and his obligations to, MATTEL.

21. YOUR knowledge of, and access to, non-public MATTEL DIVA STARZ project information and DESIGNS prior to June 30, 2001.

22. The payment of money or anything of value by or for YOU or on YOUR behalf that has been made to, for or on behalf of BRYANT (a) for work, services or activities performed by BRYANT prior to January 1, 2001 (regardless of when such payment was actually made), (b) for DESIGNS CREATED by BRYANT prior to January 1, 2001 (regardless of when such payment was actually made) or (c) in connection with BRATZ or any BRATZ DESIGN at any time, including without limitation the timing, manner and amount(s) thereof and the reasons therefor.

23. The payment of royalties to, for or on behalf of BRYANT made by or for YOU or on YOUR behalf, including the timing, manner and amounts of such payments and the reasons therefor.

24. Any indemnification and fee arrangement that YOU and/or BRYANT has sought, proposed, requested or obtained in connection with this ACTION.

25. YOUR revenues and profits from BRATZ, including without limitation YOUR gross and net profits, and YOUR costs associated therewith.

26. YOUR net worth.

27. The payment of money or anything of value that YOU have made or offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought or received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s) and reasons therefor.

28. COMMUNICATIONS between YOU and Elise Cloonan that REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

452-11

EXHIBIT ___22___

PAGE ___218___

1        29.    COMMUNICATIONS made by, for or on behalf of YOU, whether

2  directly or indirectly, with Anna Rhee, including without limitation since February

3  2005 (but not including any such COMMUNICATIONS with her legal counsel).

4        30.    COMMUNICATIONS between YOU and Veronica Marlow,

5  Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), Sarah

6  Halpern, Steve Linker, Liz Hogan and/or Jesse Ramirez that REFER OR RELATE TO

7  BRYANT, MATTEL, BRATZ and/or Anna Rhee, including without limitation all

8  DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

9        31.    The IDENTITY of each PERSON who, at any time since January 1,

10  1998, has performed any work or services for, by or on behalf of YOU while such

11  PERSON was employed by MATTEL, the nature and timing of each such PERSON's

12  work or services and the amount(s) paid by YOU to each such PERSON.

13        32.    COMMUNICATIONS between YOU and BRYANT that REFER

14  OR RELATE TO MATTEL or REFER OR RELATE TO any DOCUMENT that was

15  prepared, authored or created by MATTEL that BRYANT has ever provided to, shown,

16  described to, communicated to or disclosed in any manner to YOU.

17        33.    The applications for registration and the registrations for copyright,

18  patent, trademark or any other right that REFER OR RELATE TO BRATZ or BRATZ

19  DESIGNS sought, made or obtained by, for or on behalf of YOU or BRYANT,

20  including without limitation COMMUNICATIONS pertaining thereto.

21        34.    Other than those previously filed and served in this ACTION or in

22  which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony,

23  transcripts, declarations, affidavits and other sworn written statements of any other type

24  by or from YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ

25  THAT REFER OR RELATE TO the time period prior to June 30, 2001 (regardless of

26  when such testimony or sworn statement was taken, given, signed, made or filed).

27        35.    COMMUNICATIONS between YOU and Universal Commerce

28  Corp., Ltd. prior to June 30, 2001.

209/2048031.

-10-

452-12

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT 22

PAGE 319

36. The source, meaning and authenticity of SL00013-14, including without limitation the timing of its creation and the handwriting thereon.

37. YOUR corporate structure since January 1, 1999, including without limitation the relationship between MGA Entertainment, Inc. and any of its predecessors, affiliates and subsidiaries.

38. The retention or destruction policies, procedures and practices for YOUR DOCUMENTS and DIGITAL INFORMATION that REFER OR RELATE TO BRATZ since January 1, 1999, including without limitation the retention or destruction of DOCUMENTS and DIGITAL INFORMATION when (a) hardware is replaced, modified or upgraded and (b) when PERSONS leave YOUR employ.

39. The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

40. The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1, 1999 that REFER OR RELATE TO MATTEL (including without limitation to any MATTEL product, plan or information) that YOU received in any manner from any PERSON who was at the time an employee of MATTEL or who had previously been an employee of MATTEL.

41. The testing of or sampling from DOCUMENTS that REFER OR RELATE TO BRATZ or BRYANT, including without limitation such testing or sampling in connection with any ink, paper or chemical analysis performed or attempted to be performed to date, any DOCUMENTS that REFER OR RELATE thereto and all results and reports relating thereto.

42. YOUR DIGITAL INFORMATION data backup policies, practices and procedures from January 1, 1999 to the present, including without limitation the location and specifications of any media used to preserve YOUR DIGITAL

209/2048031.

452-13

EXHIBIT _22_

PAGE _220_

1 INFORMATION and the software, if any, used to preserve YOUR DIGITAL
2 INFORMATION.

3     43.    The DIGITAL INFORMATION SYSTEMS and the application
4 software that YOU have used since January 1, 1999 that REFER OR RELATE TO
5 design, development, planning, inventory, manufacturing, sales, shipping and
6 accounting, including without limitation the common or shared storage for such
7 DIGITAL INFORMATION SYSTEMS, remote access of such DIGITAL
8 INFORMATION SYSTEMS, and any changes, modifications or upgrades to such
9 DIGITAL INFORMATION SYSTEMS or application software.

10     44.    The IDENTITY of PERSONS, including without limitation
11 vendors, who since January 1, 1999 have been responsible for or supported YOUR
12 DIGITAL INFORMATION SYSTEMS, including without limitation the IDENTITY of
13 such PERSON who serviced or provided hardware for YOUR DIGITAL
14 INFORMATION SYSTEMS, hosted, stored, archived or maintained YOUR DIGITAL
15 INFORMATION, including but not limited to internet service providers, and provided
16 analytical, training or implementation services with respect to YOUR DIGITAL
17 INFORMATION SYSTEMS.

18     45.    The electronic messaging SYSTEMS used by YOUR employees
19 within the scope of their employment between January 1, 1999 and the present,
20 including but not limited to electronic mail, instant messenger, telephone or voice-mail,
21 and the routing of such electronic messages to, from or within MGA.

22     46.    YOUR policies, practices and procedures regarding the use of
23 transportable media that contain or are capable of containing DIGITAL
24 INFORMATION, including but not limited to floppy discs, compact discs, DVDs, USB
25 drives, portable hard drives, digital cameras and personal digital assistants.

26
27
28

452-14

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT 22

PAGE 221

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On February 1, 2007, I served true copies of the following document(s) described as **SECOND NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)** on the parties in this action as follows:

**BY MAIL TO:**

Keith A. Jacoby, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
Telephone: (310) 553-0308
Facsimile: (310) 553-5583

I enclosed the foregoing as well as a **COURTESY COPY** into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. (Courtesy copy

**BY PERSONAL SERVICE ON:**

Diana M. Torres, Esq.
O'Melveney & Meyers
400 So. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

I delivered such envelope(s) **(COURTESY COPY INCLUDED)** by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 1, 2007, at Los Angeles, California.

_____
Mia Albert

_____
Dave Quintana

07209/2049386.1

EXHIBIT _____ 22

PAGE _____ 222

452-15

# EXHIBIT 23

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone: (415) 774-2611
Facsimile: (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>    Defendant. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; TO OVERRULE PURPORTEDLY IMPROPER INSTRUCTIONS; AND FOR SANCTIONS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

1-9

EXHIBIT 23

PAGE 223

## I. INTRODUCTION

On December 5, Mattel, Inc. ("Mattel") submitted a "Motion to (1) Enforce Court's Discovery Orders and to Compel; (2) to Overrule Improper Instructions; and (3) for Sanctions." Mattel's motion challenges the sufficiency of the testimony provided by four of MGA Entertainment Inc.'s Rule 30(b)(6) witnesses, Lisa Tonnu, Kenneth Lockhart, Rebecca Harris, and Spencer Woodman, on sixteen separate topics identified in Mattel's Second Notice of Deposition of MGA.  MGA submitted an opposition on December 18, 2007.  Mattel submitted a reply on December 26, 2007.  The matter was heard on January 3, 2008.  Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in part and denied in part, and the request for sanctions is granted in part.

## II. BACKGROUND

On May 16, 2007, MGA was ordered to produce Rule 30(b)(6) designees for all topics identified in Mattel's Second Notice of Deposition of MGA, except Topic Nos. 25 and 26, on or before June 30, 2007.  Mattel's Second Notice of Deposition includes many topics relevant to the case, including, *inter alia*, the development of Bratz before it was made available for purchase; when and whom MGA first offered Bratz for sale; who first manufactured, shipped and distributed Bratz; Bratz revenues and profits; MGA's access to Mattel's earlier DIVA STARZ project that allegedly had elements which subsequently appeared in Bratz; the identity of persons who worked on Bratz and payments made to them; fee and indemnification agreements; MGA's testing and handling of original Bratz drawings; MGA's sworn statements pertaining to Bratz's creation and development; and MGA's evidence preservation and collection.  On July 2, 2007, the district court rejected MGA's objections to the May 16, 2007 Order.

MGA designated four different witnesses to testify on the topics identified in Mattel's Second Notice of Deposition of MGA.  First, MGA designated Kenneth Lockhart to testify on Topic Nos. 38, 39 and 42.  He testified on June 14-15, 2007.

Second, MGA designated Lisa Tonnu to testify on Topic Nos. 24-25, 31, 37, 39 (in part), 40 and 41.  She testified on July 19, 2007.  In the meantime, Mattel moved for an order compelling MGA to produce witnesses for deposition and sanctions because MGA did not

1   produce witnesses on certain topics as required by the May 16, 2007 Order.  On August 14, 2007,

2   Mattel's motion was granted in part and denied in part and MGA was ordered, once again, to

3   produce witnesses to testify on several topics.  On September 24-25, 2007, Mattel deposed Ms.

4   Tonnu further on Topic Nos. 21, 24-26, 31, 39, 40 and 41.

5         Third, MGA designated Rebecca Harris to testify on Topic Nos. 11, 13, 14, 19, 22-23 and

6   27-28.  Ms. Harris' deposition was scheduled, but unilaterally cancelled by MGA, on two

7   different occasions.  MGA ultimately produced Ms. Harris on July 20, 2007.

8         Fourth, MGA designated Spencer Woodman to testify on Topic No. 34.  He testified on

9   October 9, 2007.

10        In September of 2007, the parties exchanged several meet and confer letters regarding

11  purported deficiencies in the witnesses' depositions.  In mid October, MGA notified Mattel that it

12  had retained new counsel who would be responding to Mattel's letters.  After a month-long stay

13  that MGA obtained as a result of its substitution of counsel, the parties met and conferred on

14  November 16, 2007 and again on November 21, 2007.  MGA offered to produce Ms. Tonnu

15  again, but only on some of the topics for which she had been designated previously, and only

16  during the second week of January 2008.  The parties continued to exchange letters; however,

17  they were apparently unable to resolve any issues before Mattel filed the instant motion on

    December 5, 2007.

18        Mattel essentially contends that MGA's witnesses were not sufficiently knowledgeable to

19  provide complete testimony on the 30(b)(6) topics at issue, and furthermore, that MGA's counsel

20  obstructed the depositions by making improper objections and instructing witnesses not to

21  answer.  Accordingly, Mattel seeks the following eight categories of relief:  (1) an order enforcing

22  the May 16, 2007 and August 14, 2007 Orders and compelling MGA to comply therewith by

23  designating and producing fully prepared witnesses to testify on Topic Nos. 11, 13, 14, 19, 21-25,

24  27, 28, 31, 34 and 39-41 in Mattel's Second Notice of Deposition of MGA on dates of Mattel's

25  selection; (2) an order overruling each of the purportedly improper instructions not to answer

26  questions interposed at the deposition of MGA designees Spencer Woodman and compelling

27  Woodman or other such person selected by MGA as its designee to provide complete testimony

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                                          3

EXHIBIT ___23___

PAGE ___225___

on Topic No. 34; (3) an order compelling MGA to produce documents that MGA designee Kenneth Lockhart identified during his June 14, 2007 deposition as documents which he reviewed and relied upon to refresh his recollection in preparation for his deposition; (4) an order overruling each of the purportedly improper instructions not to answer questions interposed at the deposition of MGA designee Lisa Tonnu; (5) an order reopening the deposition of MGA designee Lisa Tonnu based on a purported "complete reversal of testimony" made through written "changes" to her deposition transcript; (6) an order compelling Rebecca Harris to sit for the completion of her deposition and/or compelling such person selected by MGA as its designee to complete the testimony on topics for which Harris was previously designated; (7) an order imposing monetary sanctions ($10,000) for MGA's alleged willful violations of the May 16, 2007 and August 14, 2007 Orders, for MGA's allegedly improper instructions not to answer deposition questions and for MGA's alleged improper coaching, harassing and obstructionist conduct at the September 24-25, 2007 deposition of Lisa Tonnu and at the October 9, 2007 deposition of Spencer Woodman; and (8) a report and recommendation to Judge Stephen G. Larson that recommends the imposition of preclusion sanctions, that certain facts related to the topics compelled be deemed admitted, and/or that MGA be found in contempt for MGA's allegedly willful and repeated violations of the Orders.

      MGA opposes the motion, contending that it substantially complied with its obligation to produce witnesses knowledgeable on each of the topics at issue and that Mattel has had a full and fair opportunity to conduct its examinations. According to MGA's calculations, the four witnesses testified intelligently for nearly 36 hours over five deposition days. MGA also explains that its counsel instructed witnesses not to answer two types of questions, namely questions that invaded MGA's work product protection or attorney-client privilege, and questions that exceeded the scope of Topic No. 34. MGA also contends that Mattel is not entitled to additional time to depose Ms. Harris in particular because Mattel's counsel wasted time and badgered the witness. MGA acknowledges, however, that Ms. Tonnu did change her testimony and that there are some deficiencies in its witnesses' testimony that justify additional deposition time. Indeed, MGA points out that prior to the filing of the instant motion, MGA agreed to produce witnesses to

EXHIBIT ___23___

PAGE ___336___

1   provide additional testimony on Topic Nos. 21, 24, 25, 31, 34 and 40.  Further, after the filing of

2   the motion, MGA agreed to produce witnesses to provide additional testimony on Topic No. 39.

3   MGA contends that Mattel's motion to compel additional testimony with respect to topics on

4   which MGA has already agreed to provide additional testimony is premature and should be

5   denied.

6   <center>III. STANDARDS</center>

7   　　Depositions of a corporation are governed by Rule 30(b)(6) of the Federal Rules of Civil

8   Procedure, which provides in pertinent part that:

9   　　　　In its notice or subpoena, a party may name as the deponent a public or
    private corporation, a partnership, an association, a governmental agency, or other

10   entity and must describe with reasonable particularity the matters for examination.
    The named organization must then designate one or more officers, directors, or

11   managing agents, or designate other persons who consent to testify on its behalf;
    and it may set out the matters on which each person designated will testify. . . .

12   The persons designated must testify about information known or reasonably
    available to the organization.

13

14   Fed.R.Civ.P. 30(b)(6) (effective Dec. 1, 2007).  Rule 30 also provides that the examination and

15   cross-examination of a deponent proceed as they would at trial under the Federal Rules of

16   Evidence.  Fed.R.Civ.P. 30(c)(1).  Further, "[a]n objection at the time of the examination--

17   whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking

18   the deposition, or to any other aspect of the deposition--must be noted on the record, but the

19   examination still proceeds; the testimony is taken subject to any objection."  Fed.R.Civ.P.

20   30(c)(2).  "An objection must be stated concisely in a nonargumentative and nonsuggestive

21   manner. A person may instruct a deponent not to answer only when necessary to preserve a

22   privilege, to enforce a limitation ordered by the court, or to present a motion under Rule

23   30(d)(3)."  Id.

24   　　Rule 30(d)(1), Fed.R.Civ.P., provides that a deposition is limited to one day of seven

25   hours, unless otherwise stipulated or ordered by the court.  "The court must allow additional time

26   consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another

27

28

EXHIBIT __23__

PAGE __227__

1   person, or any other circumstance impedes or delays the examination."[1]  Fed.R.Civ.P. 30(d)(1).

2   Furthermore, sanctions may be imposed --including the reasonable expenses and attorney's fees

3   incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the

4   deponent.  Fed.R.Civ.P. 30(d)(2).

### IV. DISCUSSION

6   A. Mattel's Request for Relief No. 1:  Mattel seeks an order enforcing the May 16, 2007 and

7   August 14, 2007 Orders and compelling MGA to comply therewith by designating and producing
    fully prepared witnesses to testify on Topic Nos. 11, 13, 14, 19, 21-25, 27, 28, 31, 34 and 39-41 in
    Mattel's Second Notice of Deposition of MGA on dates of Mattel's selection.

9       Mattel contends that MGA's witnesses were inadequately prepared and failed to provide

10  sufficient testimony on sixteen of the topics identified in the Second Notice of Deposition of

11  MGA.  Each of the sixteen 30(b)(6) topics at issue is addressed separately below.

12      **Topic No. 11:**  The exhibition, or proposed, offered, contemplated or requested exhibition,
    of BRATZ or any BRATZ DESIGN to any third party prior to June 30, 2001, including
13  without limitation each instance in which BRATZ or any BRATZ DESIGN was marketed,
    offered for sale, pitched, shown or disclosed to, or otherwise discussed with or
14  communicated to, any retailer, wholesaler or distributor and the DOCUMENTS that
    REFER OR RELATE thereto.

15      Mattel contends that Ms. Harris lacked sufficient knowledge on this topic.  In particular,

16  Mattel contends that Ms. Harris could not confirm what form of Bratz or Bratz design ("sculpts")

17  was first exhibited to third parties prior to June 30, 2001.

18      MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

19  this topic.  More specifically, MGA contends that Ms. Harris testified about the first exhibition,

20  sale and distribution of Bratz, including presentations to Target stores, and the first sale,

21  distribution and shipment of Bratz under an agreement with Bandai in Spain.  MGA contends that

22  it is not reasonable to expect MGA to have investigated specifically what type of Bratz "sculpts"

23  were shown at particular exhibitions.

---

24      [1] Rule 26(b)(2), Fed.R.Civ.P., provides that the court shall limit the frequency or extent of use of the
25  discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or
    is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party
26  seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the
    burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case,
27  the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the
    importance of the proposed discovery in resolving the issues."  Fed.R.Civ.P. 26(b)(2).

28

EXHIBIT __23__

PAGE __228__

1    Furthermore, MGA points out that Mattel has taken the deposition of MGA HK on the

2    subject of the initial manufacture of Bratz.  More specifically, MGA contends that Mattel took the

3    deposition of the head of MGA's Hong Kong operations, Edmond Lee, for two full days, and

4    questioned him about the first manufacture of Bratz by Early Light.  Therefore, MGA contends

5    that Mattel has had a full and fair opportunity to examine MGA regarding the first manufacture of

6    Bratz.

7    A review of the transcript confirms that Ms. Harris was not reasonably prepared for her

8    deposition, especially in light of the importance of the timing of the creation of Bratz.  For

9    example, she could not specify what was shown to retailers during the year 2000.  She testified

10   that MGA used "boards" (i.e. sketched drawings) to show retailers Bratz during the year 2000

11   based upon a telephone conversation she had with Paula Garcia during a break.  Mattel is entitled

12   to delve into more detail about these "boards," and such information should be reasonably

13   available to MGA.  Ms. Harris testified that Julie Chemo likely attended presentations during the

14   year 2000.  Therefore, Mattel is entitled to an order compelling MGA to produce a witness to

     provide complete testimony on Topic No. 11.

15   **Topic No. 13:**  COMMUNICATIONS prior to June 30, 2001 between YOU and any

16   manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or potential

17   manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE TO BRATZ or
     any BRATZ DESIGN.

18   Mattel contends that Ms. Harris' testimony was wholly inadequate.  In particular, Mattel

19   contends that Ms. Harris had no knowledge concerning early MGA communications with Bandai,

20   which distributed Bratz in the first market in which it was allegedly sold.  Ms. Harris did not have

21   any knowledge or information as to when MGA and Bandai first had any type of contact or

22   communication regarding Bratz.  Similarly, Ms. Harris did not have any knowledge or

23   information as to when MGA first had contact with a company called J.H.N. regarding the sale of

     Bratz in Australia.

24   MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

25   Topic No. 13, as described above in connection with Topic No. 11.  Accordingly, MGA objects to

26   any further examination on Topic No. 13.

27   A review of the deposition transcript confirms that Ms. Harris provided significant

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT ___23___

PAGE ___224___

1   testimony on Topic No. 13.  However, as Mattel points out, her testimony lacked many details

2   relevant to when Bratz was developed.  For example, Ms. Harris was unable to testify as to any

3   communications or negotiations between MGA and Bandai leading up to the execution of written

4   agreements.  Indeed, Ms. Harris did not know when MGA and Bandia first had any contact

5   regarding Bratz.  Furthermore, MGA did not conduct a reasonable investigation to prepare Ms.

6   Harris for Topic No. 13.  Among other things, MGA made no effort to determine whether the

7   former MGA HK employee known to have been directly involved in the first discussions with

8   Bandai (Martin Hitch) had retained any documents responsive to this topic.  Nor did Ms. Harris

9   speak to Isaac Larian and Jim Olmstead, both of whom authored emails referencing existing

10   distributorship deals in Europe and Australia.  Therefore, Ms. Harris did not fulfill MGA's duty to

11   produce a witness to testify on information known or reasonably available to MGA.  Mattel is

12   entitled to an order compelling MGA to produce a witness to provide complete testimony on

   Topic No. 13.

13       **Topic No. 14:**  When and where BRATZ was first manufactured, shipped, distributed and
14       sold, and the IDENTITIES and roles of PERSONS involved therein.

15       Mattel contends that Ms. Harris did not have any knowledge regarding the identity or role

16   of any person who was involved in the first manufacture of Bratz dolls by Early Light.  Mattel

17   also contends that Ms. Harris had no knowledge as to the date when manufacturing began for the

18   first Bratz dolls.  Furthermore, Mattel contends that MGA should not be permitted to rely on the

19   testimony given by MGA HK's corporate designee to evade providing testimony on this topic

20   because that designee's testimony was deficient.

21       MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

22   Topic No. 14, as described above in connection with Topic No. 11.  Accordingly, MGA objects to

23   any further examination on Topic No. 14.

24       A review of the deposition transcript confirms that Ms. Harris did not have any knowledge

25   regarding the identity or role of any person at MGA who first had contact with Early Light, the

26   first manufacturer of Bratz dolls.  Nor did she know the identity of any person at MGA or at Early

27   Light who was involved in the first manufacture of Bratz dolls.  Furthermore, Ms. Harris stated

28   that she did not undertake any investigation to uncover these facts.  Ms. Harris also had no

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                                                    8

EXHIBIT ___23___

PAGE ___230___

1  information or knowledge regarding the date when manufacturing began for the first Bratz dolls.

2  Ms. Harris testified that personnel in MGA's Hong Kong affiliate coordinated with Early Light.

3  Thus, the information sought by Mattel is reasonably available to MGA.  That Mattel also seeks

4  testimony from MGA's Hong Kong affiliate does not excuse MGA from producing a witness

5  sufficiently knowledgeable on Topic No. 14.  Therefore, Mattel is entitled to an order compelling

6  MGA to produce a witness to provide complete testimony on Topic No. 14.

7      **Topic No. 21**:  YOUR knowledge of, and access to, non-public MATTEL DIVA STARZ
       project information and DESIGNS prior to June 30, 2001.

8

9      Mattel contends that Ms. Tonnu was not sufficiently prepared to provide testimony, as

10  evidenced by the fact that two other MGA employees, Paula Garcia and Margaret Leahy, testified

    that they had "access" to non-public DIVA STARZ information.

11      MGA contends that Ms. Tonnu prepared for her deposition by speaking with five MGA

12  employees, including Paula Garcia.  Based upon that investigation, Ms. Harris testified that the

13  five employees did not work on DIVA STARZ.  MGA explains that Ms. Garcia merely testified

14  that when she was at Mattel she often spoke to co-workers at Mattel who happened to work on the

15  DIVA STARZ, that those co-workers may have mentioned the existence of the project and that

16  they told Ms. Garcia it was confidential.  MGA contends that Ms. Garcia's testimony does not

17  establish "access to" DIVA STARZ information, but the opposite – that the employees did not

18  share details with Ms. Garcia and told her the project was confidential.  MGA acknowledges,

19  however, that Ms. Garcia testified that on one occasion she saw a sketch of a DIVA STARZ

20  character.

21      Nevertheless, MGA represents that during the meet and confer process MGA designated

22  Ms. Tonnu to provide further testimony on Topic No. 21, and that she will be deposed on January

23  9, 2008.  MGA represents that Ms. Tonnu will be prepared to testify whether each former Mattel

24  employee now employed by MGA had "access to" DIVA STARZ information while employed by

    Mattel.

25

26      A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently

    prepared to testify on Topic No. 21.  Ms. Tonnu did not know what DIVA STARZ was.

27  Furthermore, she was not sufficiently informed of the identities of the MGA employees and

28

EXHIBIT  23

PAGE  231

1   contractors who had access to or worked on DIVA STARZ. For example, Ms. Tonnu was

2   uninformed of Ms. Garcia's and Ms. Leahy's knowledge and access to DIVA STARZ

3   information while employed by Mattel. Such information was known or reasonably available to

4   MGA. Therefore, Mattel is entitled to an order compelling MGA to produce a knowledgeable

5   witness to provide complete testimony on Topic No. 21.

6   **Topic No. 24:** Any indemnification and fee arrangement that YOU and/or BRYANT has

7   sought proposed, requested or obtained in connection with this ACTION.

8   Mattel contends that MGA's designee, Lisa Tonnu, was not sufficiently prepared to

9   testify, despite having been produced twice to testify on this topic. For example, Mattel points

10  out that Ms. Tonnu did not know why MGA agreed to pay Carter Bryant's attorneys' fees or how

11  much MGA had paid or whether Littler Mendelson's fees had been paid in full. Mattel's Motion

12  at pp. 14-15. Furthermore, Mattel points out that Ms. Tonnu did not make any effort to find out

13  the answers to these questions.

14  MGA contends that Ms. Tonnu substantially discharged MGA's obligation to provide

15  testimony in response to this topic. MGA contends that Ms. Tonnu reviewed responsive

16  documents and was able to identify the agreements in her deposition. Further, MGA contends

17  that Ms. Tonnu spoke to MGA's in-house counsel about the agreements and was able to identify

18  the individuals involved in the negotiations of those agreements.

19  MGA acknowledges, however, that Ms. Tonnu was not able to testify regarding the

20  specifics of those negotiations or the terms of those agreements. MGA represents that prior to the

21  filing of this motion, it designated in-house counsel Sam Khare to provide additional testimony on

22  this topic and that Mattel will depose him on January 8, 2008.

23  A review of the deposition transcript confirms that Ms. Tonnu was not prepared to testify

24  as to information known or reasonably available to MGA. For example, Ms. Tonnu did not know

25  why MGA agreed to pay Bryant's fees, did not know how much MGA had paid in fees, and did

26  not know whether MGA had paid Littler Mendelson's fees in full. Accordingly, Mattel is entitled

27  to an order compelling MGA to produce a knowledgeable witness to provide complete testimony

28  on Topic No. 24.

10

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___23___

PAGE ___282___

1   **Topic No. 25**: YOUR revenues and profits from BRATZ, including without limitation,
2   YOUR gross and net profits, and YOUR costs associated therewith.

3   Mattel contends that Ms. Tonnu lacked the most basic information called for by this topic.
4   For example, Mattel contends that Ms. Tonnu testified that: she did not recall nor could she
5   provide an estimate of how much distribution revenue MGA derived from the Bratz brand
6   between 2001 and the end of 2006; she did not know and could not provide a best estimate for the
7   episodic costs or production costs associated with the distribution revenue; she did not know who
8   in the company could provide this information; she did not know and could not provide a range
9   for how much licensing revenue MGA had received for licensing anything associated with the
10  Bratz brand between 2001 and the end of 2006; she did not know and could not estimate how
11  much revenue the Bratz movie generated; she did not know how much revenue MGA had earned
12  from the Bratz brand; and she did not know how much profit MGA had generated from the Bratz
    brand.

13  MGA contends that it substantially discharged its obligation to provide testimony on this
14  topic.  More specifically, MGA contends that Ms. Tonnu testified with the aid of Exhibit 660, a
15  143-page report summarizing the units sold from 2001 to 2006 organized by "stock-keeping-unit"
16  or "SKU."  MGA contends that Ms. Tonnu prepared for her deposition by speaking with MGA's
17  Director of Finance, Anisse Evans, regarding Exhibit 660.

18  In the meet and confer process, MGA's counsel offered to provide Mattel with source
19  information from which the profitability of Bratz products at the SKU level could be derived and
20  to produce Ms. Tonnu for follow-up testimony regarding that source financial information so that
21  Mattel's experts would be in a position to draw their own conclusions and opinions as to MGA's
22  profits from Bratz.  MGA represents that Mattel has agreed to depose Tonnu on this topic on
23  January 9, 2008.  MGA also represents that it has produced more than 27,700 pages of source
24  financial information that will be the "starting point" from which MGA's and Mattel's experts
25  will analyze the profitability of Bratz products.  MGA represents that Ms. Tonnu will be prepared
    to discuss the source financial information produced to Mattel at her continued deposition.

26  A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently
27  prepared to provide testimony on Topic No. 25.  Ms. Tonnu could not identify, generally or by

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT __23__

PAGE __233__

1    product, Bratz revenues, costs, or gross or net profits. Furthermore, MGA has failed to provide

2    any explanation for why Ms. Tonnu was not educated on the source financial information before

3    her deposition. Accordingly, Mattel is entitled to an order compelling MGA to produce a

4    knowledgeable witness to provide complete testimony on Topic No. 25.

5        **Topic No. 27:** The payment of money or anything of value that YOU have made or
         offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought or
6        received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s) and
         reasons therefore.

7

8        Ms. Cloonan was Carter Bryant's roommate at some point. Bryant testified that he

9    showed her early drawings prior to showing them to MGA. She is not and never has been an

10   employee of MGA.

11       Mattel contends that Ms. Harris' testimony was incomplete because she only searched for

12   evidence of payment by reviewing vendor files and MGA's electronic purchase order files, and

13   did not review the individual documents within each account payable vendor file. Mattel also

14   contends that Ms. Harris was not sufficiently prepared because she had no knowledge or

     information as to who was paying her legal fees in this case.

15       MGA contends that it discharged its obligation to testify on Topic No. 27, emphasizing

16   that Ms. Harris unequivocally represented on behalf of MGA that MGA made no payments to,

17   had no agreements with and had no communications with Elise Cloonan. Furthermore, MGA

18   points out that Mattel took the deposition of Elise Cloonan on December 14, 2007, and she

19   confirmed that she had received no payments from and had no communications with MGA.

20       A review of the transcript confirms that Ms. Harris' preparation for and testimony

21   regarding Topic No. 27 was adequate. Furthermore, the burden and expense of conducting a

22   deposition on this topic substantially outweigh the potential relevance of the testimony sought.

23   Mattel's motion is denied with respect to Topic No. 27.

24       **Topic No. 28:** COMMUNICATIONS between YOU and Elise Cloonan that REFER OR
         RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including
25       DOCUMENTS that REFER OR RELATE to such COMMUNICATIONS.

26       Mattel contends that Ms. Harris's testimony was insufficient because she admitted she did

27   not have any knowledge or information as to what systems or hard drives in MGA were searched

28

EXHIBIT _23_

PAGE _234_

1   for e-mails referencing Elise Cloonan.

2       MGA contends that Mattel is not entitled to further examination on Topic No. 28 because

3   Ms. Harris substantially discharged MGA's obligation to testify on the topic, as described above

4   in reference to Topic No. 27 above.

5       A review of the transcript confirms that Ms. Harris' preparation for and testimony

6   regarding Topic No. 28 was adequate.  Furthermore, the burden and expense of conducting a

7   deposition on this topic substantially outweigh the potential relevance of the testimony sought.

8   Mattel's motion is denied with respect to Topic No. 28.

9       **Topic No. 31:** The IDENTITY of each PERSON who, at any time since January 1, 1998, has performed any work or services for, by or on behalf of YOU while such PERSON was employed by MATTEL, the nature and timing of each such PERSON's work or services

10   and the amount(s) paid by YOU to each such PERSON.

11       Mattel contends that the first time MGA produced Ms. Tonnu to testify, she lacked any

12   personal knowledge regarding this topic and that MGA failed to educate her properly on the topic.

13   Ms. Tonnu testified that she spoke to an accounts payable clerk, Ms. Brooks, who had "a list of

14   vendors and the dates in which they were either employed or freelancing with Mattel, and she

15   cross-referenced that in her research."  Tonnu Tr. at 147:5-148:20.  Mattel points out, however,

16   that Ms. Tonnu testified that she did not know who prepared the list; did not see the criteria used

17   to prepare the list; did not know who the vendors or freelance people were on the list; and did not

18   know whether the list included all former Mattel employees who were working at MGA.  MGA

19   produced Ms. Tonnu for a second time regarding Topic No. 31, however, Mattel contends that she

20   was still unprepared.

21       MGA contends that it has substantially discharged its obligation to provide testimony on

22   this topic.  MGA explains that Ms. Tonnu testified on this topic based on a review of MGA

23   business records.  MGA explains that to prepare for the deposition, it prepared a list of MGA

24   employees who were former Mattel employees, including the dates each person was employed by

25   Mattel.  Next, Ms. Brooks searched MGA's accounting records reflecting payments to outside

26   vendors for any evidence of a payment to a former Mattel employee on the list during the period

27   of that person's Mattel employment, or with respect to work or services performed during that

28   period.  MGA contends that Ms. Tonnu testified about this search and the results of the search

EXHIBIT ___23___

PAGE ___235___

1   leading to the identification of three instances of payments to former Mattel employees while the

2   employee was still at Mattel.

3          Nevertheless, MGA represents that prior to the filing of this motion, it designated Ms.

4   Tonnu to provide additional testimony on this topic.  Specifically, MGA is prepared to produce

5   Ms. Tonnu to testify regarding whether former Mattel employees may have performed work or

6   services for MGA during their employment with Mattel without being paid for those services.

7   Ms. Tonnu's  deposition is scheduled for January 9, 2008.

8          A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently

9   prepared to testify on Topic No. 31.  Notably, Ms. Tonnu admitted that she did not know whether

10  any person has at any time since 1998 performed work or services for MGA while that person

11  was a Mattel employee.  Further, she testified that she did not speak with or ask any of the former

12  Mattel employees who were working at MGA whether they had provided work or services for

13  MGA while they were Mattel employees.  Instead, Ms. Tonnu only knew whether or not

14  payments were made to the former Mattel employees while they were still employees of Mattel.

15  Furthermore, the list of former Mattel employees provided by Ms. Brooks was incomplete

16  because it did not include twelve former Mattel employees.  Accordingly, Mattel is entitled to an

17  order compelling MGA to produce a witness to provide complete testimony on Topic No. 31.

18          **Topic No. 34:** Other than those previously filed and served in this ACTION or in which
    Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony, transcripts,
    declarations, affidavits and other sworn written statements of any other type by or from
    YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ THAT REFER
    OR RELATE TO the time period prior to June 30, 2001 (regardless of when such
    testimony or sworn statement was taken, given, signed, made or filed).

19          Mattel contends that Mr. Woodman had not been adequately prepared for his deposition

20  and lacked the most basic knowledge on the topic.  Mattel points out that Mr. Woodman had been

21  employed with MGA for less than one year and that his responsibilities had been limited to the

22  administration of licensing contracts and royalties.  Further, Mattel contends that in preparation

23  for his deposition, Mr. Woodman "did no more than review a selection of sworn statements

24  previously made by others, review transcripts of Carter Bryant's deposition testimony, and speak

25  'for a few minutes' with one other person besides counsel."  Mattel's Consolidated Separate

26  Statement, p.130.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT 23

PAGE 230

1     Mattel also contends that Mr. Woodman was not sufficiently prepared to testify regarding

2     "sworn statements in MGA's many submissions to the Copyright Office or Patent and Trademark

3     Office," and sworn testimony from the "Art Attacks" trial. Id. Further, Mattel contends that

4     MGA's counsel improperly instructed Mr. Woodman not to answer certain questions on the basis

5     that Topic No. 34 did not include sworn statements made in connection with the "Art Attacks"

6     matter or statements made in various submissions to the Copyright Office or Patent and

7     Trademark Office.  Counsel also instructed Mr. Woodman not to answer certain questions about

8     sworn statements that related to Topic No. 33 and statements that MGA believed did not

9     sufficiently relate to conduct prior to June 30, 2001.  Topic No. 33 seeks testimony on

10    applications for registration and the registrations for copyright, patent, trademark or any other

11    right that refer or relate to Bratz or Bratz designs, sought, made or obtained by, for or on behalf of

12    MGA or Bryant, including communications pertaining thereto.

13     MGA contends that Mattel is not entitled to any further testimony on this topic.  MGA

14    explains that Mr. Woodman reviewed 30-50 sworn statements, read the transcript of the

15    depositions of Carter Bryant and Victoria O'Connor, MGA's former Vice President of Licensing,

16    and interviewed Leon Djiguerian in MGA's Product Development.  MGA further asserts that Mr.

17    Woodman answered questions as to the completeness or incorrectness of many factual statements

18    contained in the sworn statements placed in front of him by Mattel's counsel.  Thus, MGA

19    contends that Mattel obtained exactly the testimony it sought.  In MGA's view, Mr. Woodman's

20    testimony regarding the correctness or incorrectness of factual statements identified from the

21    sworn statements is binding on MGA.  MGA also contends that Mr. Woodman was not required

22    to investigate the preparation, review and approval of MGA's various sworn statements because

23    such information would be protected from disclosure by the attorney-client privilege and work

24    product doctrine.

25     MGA next contends that most of the documents shown to Mr. Woodman were not "sworn

26    statements," but rather (i) copyright registrations and certificates that include a statement that the

27    application is "correct to the best of my knowledge," (ii) certificates of registration issued by the

28    USPTO, and (iii) an office action summary by the USPTO.  Nevertheless, MGA implicitly

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

EXHIBIT 23

PAGE 237

1   acknowledges that Mr. Woodman did not provide sufficient testimony as to certain applications

2   for registrations containing declarations by Isaac Larian documents (Exhibits 580-584, 590), a

3   declaration by Bryant (Exhibit 502), and an application and amendment referred to in the Bryant

4   declaration (Exhibits 500, 548), and one additional declaration by Isaac Larian, by agreeing to

5   produce Sam Khare to testify regarding these documents. Mattel is scheduled to depose Mr.

6   Khare on January 8, 2008.

7       MGA contends that prior counsel properly objected to certain questions as outside the

8   scope of Topic No. 34. In particular, MGA contends that questions directed at statements that did

9   not refer or relate to the time period prior to June 30, 2001 are outside the scope of Topic No. 34.

10  Further, MGA contends that where a sworn statement relates in part to the time period before

11  June 30, 2001, and in part to other time periods, the scope of Topic No. 34 is limited by its own

12  terms to that portion of the statement that relates to the specified time period. MGA also contends

13  that sworn testimony taken at the Art Attacks trial is outside the scope of Topic No. 34 because

14  Mattel's counsel was present at that trial.

15      MGA represents that its present counsel does not condone the instructions not to answer

16  made by prior counsel, and will not attempt to justify those instructions. Nevertheless, MGA

17  contends that Mattel was not deprived of any discoverable testimony by those instructions

18  because the disputed questions sought information outside the scope of Topic No. 34. More

19  specifically, MGA represents that each exhibit that was excluded from Mr. Woodman's testimony

20  on the grounds that it was not a "sworn statement" was the subject of examination of MGA's

21  designees on Topic No. 33, Bryan Armstrong and Sam Khare. MGA also contends that

22  resumption of a deposition on Topic No. 34 beyond what MGA has agreed to provide is

23  unwarranted because Mattel obtained two full days of 30(b)(6) testimony on Topic No. 33.

24      A review of the deposition transcript confirms that Mr. Woodman was not sufficiently

25  prepared to provide testimony on Topic No. 34. Mr. Woodman did no more than review the

26  sworn statements made by others and the transcripts of Carter Bryant's deposition. For the sworn

27  statements he did review, Mr. Woodman offered little information beyond what was apparent on

28  the face of the documents. For example, Mr. Woodman did not know who authorized submitting

EXHIBIT __23__

PAGE __238__

1   the sworn statement. Ultimately, Mr. Woodman only testified as to whether or not a particular

2   sworn statement was consistent with deposition testimony of Carter Bryant. Furthermore, Mr.

3   Woodman admitted that the testimony he gave had nothing to do with MGA's current beliefs, was

4   not based on any investigation, and had nothing to do with the actual correctness or incorrectness

5   of any of the sworn statements. Mr. Woodman admitted that no matter what inconsistencies

6   existed between Carter Bryant's testimony and MGA's sworn statements, Mr. Woodman always

7   presented Carter Bryant's testimony as to the facts as "true." Thus, Mr. Woodman failed to

8   testify as to information known or reasonably available to MGA. Mr. Woodman's lack of

9   preparedness alone justifies re-opening Topic No. 34. Furthermore, MGA cannot rely on blanket

10  claims of privilege to preclude testimony on Topic No. 34.

11         A further deposition on Topic No. 34 is also justified in light of the admittedly improper

12  instructions not to answer, and MGA's acknowledgement that Mr. Woodman did not provide

13  testimony as to Exhibits 500, 502, 548, 580-584, 590. MGA shall abide by its agreement to

14  produce a witness to testify on these exhibits.

15         MGA's interpretation of Topic No. 34 as excluding statements not made under oath or

16  penalty of perjury, and as excluding any portion of a statement under oath that does not refer or

17  relate to the time period prior to June 30, 2001, is overly technical. There is, however, a clear

18  overlap between Topic No. 34 and Topic No. 33, which is not at issue in this motion. When the

19  deposition on Topic No. 34 is resumed, MGA's corporate designee is not required to provide

20  further testimony on statements that were the subject of examination of MGA's designees on

    Topic No. 33.

21         MGA's interpretation of Topic No. 34 as excluding testimony from the Art Attacks trial is

22  appropriate. Mattel does not contest that its counsel attended the Art Attacks trial. Topic No. 34

23  clearly excludes any proceeding attended by Mattel's counsel. When the deposition on Topic No.

24  34 is resumed, MGA's corporate designee is not required to provide further testimony with

25  respect to the Art Attacks trial.

26         **Topic No. 39:** The preservation, collection, destruction, removal, transfer, loss or
    impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection with
27  the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

28                                                                                              17

EXHIBIT  23
PAGE  239

MGA designated two individuals to testify on this topic:  Kenneth Lockhart to testify on electronic evidence; and Lisa Tonnu, to testify on documentary evidence.  Mattel contends that both designees were unable to provide substantive testimony.

Mattel points out that Mr. Lockhart did not know whether the MGA's "PST files" had been searched; whether e-mails had been deleted from the exchange mailbox between late 2004 and the present; whether MGA's "snap servers" had been searched; whether keywords were used to search "PST" files; and what user files were searched.  Further, Mattel contends that Mr. Lockhart was not aware of the location of any hard drive or any image of any hard drive that had been preserved for litigation purposes.

MGA contends that Mr. Lockhart substantially discharged MGA's obligation on Topic 39 with respect to electronic documents.  MGA represents that Mr. Lockhart prepared extensively for his testimony by speaking with various individuals and that he testified at length about the configuration of MGA's computer systems and MGA's policies, practices and procedures for the retention and preservation of electronic documents.

Nevertheless, MGA is willing to produce a witness to testify on its behalf regarding the collection of electronic documents in connection with this action in order to shore up the one area of Mr. Lockhart's testimony that MGA agrees was lacking.

As for Ms. Tonnu, Mattel contends that MGA made no discernible effort to educate her concerning the topic.  Ms. Tonnu testified that she did not know whether MGA has a document retention policy.  Mattel also contends that MGA's counsel instructed Ms. Tonnu not to answer any questions about MGA's preservation and collection of documents based upon unfounded claims of attorney-client privilege.[2]

MGA produced Ms. Tonnu a second time to testify on Topic No. 39, however Mattel contends that her testimony remained deficient.  For example, Ms. Tonnu testified that she prepared for the deposition by speaking with Rich Daniels, MGA's counsel, and by reviewing a

//

---

[2] The instructions not to answer are discussed in a separate section of this Order.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

18

EXHIBIT 23

PAGE 240

1   declaration prepared by Daphne Gronich, MGA's General Counsel on the subject of document

2   preservation. Mattel points out, however, that Ms. Tonnu never spoke with Ms. Gronich, and

3   therefore was unable to provide any information beyond what was stated in the four corners of the

4   declaration. In particular, Mattel contends that Ms. Tonnu did not know whether any documents

5   at the MGA campus had been searched for responsive documents. Nor did Ms. Tonnu know what

6   documents were stored at MGA's three off-site facilities and could not confirm whether they had

7   been searched for documents responsive to Mattel's requests.

8       MGA contends that Ms. Tonnu testified fully and completely regarding MGA's

9   preservation of documents in connection with this action. Indeed, MGA contends that the

10  Gronich declaration, which had already been provided to Mattel, contains detailed information

11  regarding MGA's document preservation efforts. MGA also points out that Tonnu testified,

12  based on her investigation and MGA's general policy (that documents generated by employees in

13  the ordinary course of business should not be destroyed and the wide distribution of document

14  preservation notices to MGA employees), that MGA did not knowingly destroy any documents

    potentially relevant to this action.

15      MGA acknowledges, however, that Ms. Tonnu was not able to testify regarding the actual

16  collection of documents for production in this action. MGA represents that it is willing to

17  produce an additional witness to discuss the collection of hard copy and electronic documents in

18  connection with this action.

19      A review of the deposition transcripts confirms that MGA's witnesses provided a

20  significant amount of testimony on this topic, and in particular regarding document preservation.

21  The one area where they were glaringly deficient was regarding document "collection."

22  Accordingly, MGA is ordered to abide by its agreement to produce a witness to testify further

23  with respect to the "collection" of hard copy and electronic documents. In all other respects,

24  MGA is in substantial compliance with Topic No. 39, and the burden and expense of re-opening a

25  deposition on the entirety of Topic No. 39 outweighs the likely benefit of the testimony Mattel

26  seeks.

27      **Topic No. 40:** The preservation, collection, destruction, removal, transfer, loss or

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

EXHIBIT ___23___

PAGE ___241___

1    impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1, 1999 that

2    REFER OR RELATE TO MATTEL (including without limitation to any MATTEL product, plan

3    or information) that YOU received in any manner from any PERSON who was at the time an

4    employee of MATTEL or who had previously been an employee of MATTEL.

5         This topic appears to be based, at least in part, upon Mattel's allegations that former

6    Mattel employee Ron Brawer, former Mattel employees in Mattel's offices in Mexico; and a

7    former Mattel employee located in Canada improperly provided MGA with documents containing

8    Mattel trade secrets.

9         Mattel contends that MGA made no discernible effort to educate Ms. Tonnu on Topic No.

10   40, and therefore she was unable to answer whether MGA has or has had in its possession any (1)

11   Mattel strategic plans, (2) any sales or profit information of Mattel, (3) any documents related to

12   Mattel's advertising strategy, (4) any documents relating to the results of Mattel's advertising, (5)

13   documents related to Mattel's pre-release line lists, and (6) documents related to Mattel's strategy

14   with respect to specific customers.  MGA produced Ms. Tonnu a second time, however, Mattel

15   contends that her testimony remained deficient.  In particular, Mattel complains that MGA spoke

16   with only two former employees about the documents described above, when there are many

17   more former Mattel employees working at MGA.

18        MGA contends that Ms. Tonnu spoke with the three individuals at MGA who would be

19   most knowledgeable about the allegations against MGA and testified as to any documents they

20   brought with them from Mattel:  Ron Brawer, Susana Kuemmerle and Janine Brisbois.  MGA

21   contends that Ms. Tonnu's preparation to testify on Topic 40 was reasonable.

22        Nevertheless, MGA represents that it has agreed to provide additional testimony through

23   Ms. Tonnu to address Mattel's concerns, and that her deposition will take place on January 9,

     2008.

24        A review of the deposition transcript indicates that Ms. Tonnu did not prepare sufficiently

25   for her testimony.  Ms. Tonnu spoke to only three individuals.  Clearly, there are far more sources

26   of information reasonably available to MGA, namely the many more former Mattel employees

27   now employed at MGA.  MGA made no effort to determine what Mattel documents, if any, these

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

20

EXHIBIT  23

PAGE  242

1  individuals possess. Therefore, Mattel is entitled to an order compelling MGA to produce a

2  witness to provide complete testimony on Topic No. 40.

3  **Topic No. 41:** The testing or sampling from DOCUMENTS that REFER OR RELATE
   TO BRATZ or BRYANT, including without limitation such testing or sampling in

4  connection with any ink, paper or chemical analysis performed or attempted to be
   performed to date, any DOCUMENTS that REFER OR RELATE thereto and all results

5  and reports relating thereto.

6  Mattel deposed Ms. Tonnu on this topic on two separate occasions. Mattel contends that

7  in each instance, she was unprepared to given any meaningful testimony regarding any ink, paper

8  or chemistry testing performed on Bratz documents. In particular, Mattel contends that Ms.

9  Tonnu's preparation for her deposition was inadequate because she did not speak to the MGA

10 litigation consultant who performed the testing, Mr. Speckin, but merely read his declaration.

11 Furthermore, Mattel contends that MGA's counsel improperly instructed Ms. Tonnu not to

12 answer questions based upon unfounded claims of work product protection. Mattel explains that

13 it is not seeking information concerning Mr. Speckin's opinions or the results of his test on Bratz

14 documents. Instead, Mattel contends that it is seeking factual information concerning the

15 handling and shipment of original Bratz documents, as well as the specific documents that were

16 tested. In Mattel's view, the factual circumstances surrounding Mr. Speckin's testing are not

17 protected from discovery by the work-product doctrine.

18 Moreover, Mattel contends that MGA provided Mattel's counsel with a list identifying the

19 documents that Mr. Speckin tested and allowed Ms. Tonnu to testify about the identification of

20 documents, thereby waiving any work product protection with respect to the identification of

21 documents. Mattel also contends that Mr. Speckin's declaration, which was submitted in the

22 case, already discloses the types of tests conducted and therefore any privilege that may have

23 applied has been waived with respect to this subject.

24 MGA contends that it complied with this topic and that Mattel is not entitled to any further

25 examination because further questioning about the testing performed by Mr. Speckin would

26 violate MGA's attorney work product protection. Mr. Speckin is one of MGA's non-testifying

27 experts. MGA objects to any further questioning regarding Mr. Speckin's selection of which

28 documents to test, how the documents were handled, which tests were performed on the

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

21

EXHIBIT ___23___

PAGE ___243___

1   documents, how they were shipped and how they were stored.  MGA contends that further

2   questioning on these subjects would necessarily reveal the mental impressions, legal theories, and

3   conclusions of MGA's counsel and its non-testifying experts formed in anticipation of litigation

4   with Mattel.  Further, MGA contends that Mattel has not carried its heavy burden to demonstrate

5   the "exceptional circumstances" required to invade MGA's work product.

6         A review of the deposition transcript confirms that Ms. Tonnu was not reasonably

7   prepared to testify on Topic No. 41.  Ms. Tonnu did not speak with Mr. Speckin or anyone

8   involved in the testing.  She had only read Mr. Speckin's declaration.  Therefore, she clearly was

9   not in a position to testify as to information known or reasonably available to MGA.  On this basis

10  alone, Mattel is entitled to an order compelling MGA to produce a witness to testify fully on

11  Topic No. 41.

12        As for MGA's claims of work production protection, Judge Larson has already indicated

13  that questions of privilege regarding the testing of the Bratz documents must be handled on a

14  question-by-question basis.  The questions at issue are set forth in Mattel's Separate Statement

15  No. 2, and are discussed below in connection with Mattel's Request for Relief No. 4.

16  B. Mattel's Request for Relief No. 2:  Mattel seeks an order overruling each of the purportedly
    improper instructions not to answer questions interposed at the deposition of MGA designees
17  Spencer Woodman (Instruction Nos. 46-57) and compelling Woodman or other such person
    selected by MGA as its designee to provide complete testimony on Topic No. 34.

18        Mattel identifies each instance of allegedly improper instructions in its Separate Statement

19  No. 2.  In each instance identified by Mattel, MGA's counsel instructed the witness not to answer

20  questions about matters that counsel believed exceeded the scope of the deposition.  The

21  instructions not to answer were not based upon a claim of privilege, and therefore were clearly

22  improper.

23        Furthermore, as stated previously, MGA has acknowledged that some questions fell within

24  the scope of Topic No. 34 and should be answered.  To that end, MGA has agreed to produce a

25  corporate designee to provide supplemental testimony as to Exhibits 500, 502, 548, 580-584, 590.

26  MGA shall abide by its agreement to produce a witness to testify on these exhibits.

27        Nevertheless, many of the questions identified in the Separate Statement No. 2 for which

28                                                                                    22

EXHIBIT ___23___

PAGE ___244___

1   an improper instruction not to answer was given clearly exceeded the scope of the deposition

2   notice.  MGA is not required to provide further testimony as to those questions.  For example, the

3   question regarding the Art Attacks trial that Mattel's counsel attended (Instruction No. 46) exceed

4   the scope of Topic No. 34, and do not require any further testimony.  MGA is also not required to

5   provide further testimony as to documents that have been the subject of questioning during the

6   30(b)(6) deposition on Topic No. 33.[3]

7   C. Mattel's Request for Relief No. 3:  Mattel seeks an order compelling MGA to produce
    documents that MGA designee Kenneth Lockhart identified during his June 14, 2007 deposition

8   as documents which he reviewed and relied upon to refresh his recollection in preparation for his
    deposition.

9         Mattel seeks an order compelling MGA to produce documents that Mr. Lockhart

10  identified during his deposition as documents which he reviewed and relied upon to refresh his

11  recollection in preparation for his deposition.

12        MGA contends that the documents Mattel seeks are privileged e-mail communications

13  from MGA's General Counsel to MGA employees regarding their document preservation

14  obligations in light of the present action.  MGA contends that its privilege log demonstrates that

15  the documents are protected by both the attorney-client privilege and the work product doctrine.

16  Furthermore, MGA contends that Mr. Lockhart was required to review the privileged emails

17  because they related to MGA's preservation of documents in connection with this action and they

18  were reasonably available to MGA.

19        Moreover, MGA contends that waiver of the attorney-client privilege and work product

20  doctrine is not automatic where a witness refreshes his recollection with privileged prior to a

21  deposition.  In re Managed Care Litig., 415 F.Supp.2d 1378 (S.D. Fla. 2006); Medtronic Xomed,

22  Inc. v. Gyrus ENT LLC, 2006 WL 786425, at *1, 3, 6-7 (M.D. Fla. March 27, 2006).

23        MGA's bare bones privilege log, unaccompanied by any supporting declarations, is

24  insufficient to establish the attorney-client privilege and the work product doctrine.  Further,

25  although there appears to be a split in authority, the weight of authority supports a finding of

26
27    [3] MGA represents that virtually all of the questioning quoted in Mattel's Separate Statement No. 2 at
    Instruction Nos. 47-57 was covered in the deposition on Topic No. 33.  However, MGA's representation cannot be
    confirmed by the excerpts of the deposition transcript submitted in connection with this motion.

28
                                                                                                        23
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                                              EXHIBIT ___23___

                                                                              PAGE ___245___

1   waiver. See e.g. United States ex rel. Bagley v. TRW Inc., 212 F.R.D. 554, 565-566 (C.D. Cal.

2   2003) (requiring disclosure of documents reviewed by relator in preparing for his deposition

3   based upon waiver of work product protection); U.S. v. 22.80 Acres of Land, 107 F.R.D. 25-26

4   (N.D. Cal. 1985) (work product waived where deponents used documents to refresh recollection);

5   Ehrlich v. Howe, 848 F.Supp. 482, 493 (S.D. N.Y. 1994) ("when [c]onfronted with the conflict

6   between the command of Rule 612 to disclose materials used to refresh recollection and the

7   protection afforded by the attorney-client privilege . . . the weight of the authority holds that the

8   privilege is waived."); Marshall v. United States Postal Service, 88 F.R.D. 348, 350 (D. D.C.

9   1980) ("[I]t is apparent that once a document is used to refresh the recollection of a witness,

10  privileges as to that document have been waived.").

11          Furthermore, the interests of justice compel production of the e-mail documents used by

12  Mr. Lockhart to refresh his recollection.  MGA acknowledges that Mr. Lockhart was required to

13  review the e-mails because they related to MGA's preservation of documents.  Mr. Lockart

14  testified that the e-mails refreshed his recollection as to what MGA employees had been requested

15  to preserve.  Accordingly, MGA is ordered to produce the e-mails reference in Mr. Lockhart's

16  deposition.

17  D. Mattel's Request for Relief No. 4.  Mattel seeks an order overruling each of the purportedly
    improper instructions not to answer questions interposed at the deposition of MGA designee Lisa
    Tonnu.

18          In Mattel's Separate Statement No. 2, Mattel identifies each purported instance of

19  improper objections and/or instructions not to answer for which it seeks a ruling.  Each instance

20  of allegedly improper conduct is discussed below.

21

22                                  Instruction Nos. 1-5

23          Mattel's counsel posed a series of questions regarding Mr. Larian's trusts.  In each

24  instance, MGA's counsel instructed Ms. Tonnu not to answer.  MGA's counsel objected to the

25  question on privilege and privacy grounds, and objected that the question exceeded the scope of

26  deposition.

27          The privilege objections are overruled because MGA has failed to establish the requisite

28

                                                                                                24

EXHIBIT   23

PAGE   246

1  elements of any applicable privilege.  The privacy objections are overruled since there is a

2  protective order in place to address Mr. Larian's privacy concerns regarding his personal finances.

3  The remaining objections do not justify an instruction not to answer.  See Fed.R.Civ.P. 30(c)(2)

4  (an objection must be noted on the record, but the examination still proceeds and the testimony is

5  taken subject to any objection).  Accordingly, MGA shall produce a knowledgeable 30(b)(6)

6  designee to provide complete responses to the questions identified in Mattel's Separate Statement

7  No. 2 as Instruction Nos. 1-5.

### Instruction No. 6

8       In this excerpt, the witness wanted to clarify her testimony regarding voucher payments,

9  which prompted Mattel's counsel to ask a series of questions about what prompted her make the

10  clarification, including "that's what counsel told you at the break?"; "[h]ow was your recollection

11  refreshed"; and "[d]id Mr. Jenal tell you what the dates were?"  MGA's counsel objected on

12  privilege grounds and instructed the witness not to answer.

13       The objections are overruled.  The attorney-client privilege protects an attorney's

14  communication of legal advice to his client, as well as the client's communication of information

15  to the attorney "to enable him to give sound and informed advice."  Upjohn Co. v. United States,

16  449 U.S. 383, 390 (1981).  In this instance, the question posed did not require the witness to

17  disclose the substance of an attorney-client communication.  Instead, the questions posed called

18  for the disclosure of underlying facts to which Mattel is entitled.  See Upjohn, supra at 395

19  (finding that the attorney-client privilege does not preclude disclosure of factual information and

20  that the privilege does not protect facts communicated to an attorney).

21       Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

22  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 6.

### Instruction Nos. 7-20 and 23

23       In each of these excerpts, Mattel's counsel posed questions regarding testing performed on

24  Bratz drawings.  MGA's counsel objected to the questions based upon the work product doctrine

25  and instructed the witness not to answer.

26       The work product objections are overruled.  The work product doctrine, now codified in

27

28                                                                          25

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT  23

PAGE  247

1   part in Rule 26(b)(3) of the Federal Rules of Civil Procedure, provides qualified protection for

2   materials prepared by or at the behest of counsel in anticipation of litigation or for trial. The party

3   claiming work product immunity has the burden of establishing its elements by competent

4   evidence. In re Kidder Peabody Securities Litigation, 168 F.R.D. 459, 462 (S.D. N.Y. 1996).

5        In the instant case, all of the questions posed to the witness take one of four forms: "do

6   you know whether" or "do you know who" or "do you know what" or "do you know why." The

7   questions thus call for a simple "yes" or "no" response that did not require divulging any

8   information protected by the work product doctrine.

9        Even if the questions are construed to require substantive responses beyond "yes" or "no,"

10   the information sought is factual (what test was conducted, how documents were stored, whether

11   the documents were handled with cotton or latex gloves, who was with the expert when he

12   performed his tests, what precautions he took). The questions do not require the witness to

13   divulge the mental impressions, the legal theories, or conclusions of Mr. Speckin.

14        Moreover, Rule 26(b)(4)(B), Fed.R.Civ.P., provides that a party may discover facts known

15   or opinions held by an non-testifying expert upon a showing of exceptional circumstances under

16   which it is impracticable for the party seeking discovery to obtain facts or opinions on the same

17   subject by other means. In the instant case, there is no other practicable means for Mattel to

18   obtain information about the handling, shipping and testing of original Bratz documents while in

19   Mr. Speckin's possession. Mr. Speckin is a non-testifying expert. The manner in which Mr.

20   Speckin transported, analyzed, tested or otherwise used the original Bratz drawings is uniquely

21   within his knowledge and plainly relevant. The original Bratz drawings are a key piece of

22   evidence in this case. Mattel needs information concerning what, if any, changes, damage, or

23   other alterations were made to the original Bratz drawings. Mattel is not seeking information

24   regarding Mr. Speckin's opinions or the results of his tests. Rather, Mattel is seeking only

25   information regarding the handling of the original Bratz documents and more precise

26   identification information for the specific documents that were handled by Mr. Speckin.

27        MGA objects to providing information concerning Mr. Speckin's testing, the testing

28   conditions, the selection of which drawings to test and other logistics. MGA, however, has

EXHIBIT _23_

PAGE _248_

already disclosed the types of tests performed by Mr. Speckin in a declaration submitted to the court, and has provided Mattel with a list identifying the documents that Mr. Speckin tested, although the list did not identify the documents by Bates numbers. Therefore, MGA has waived any work product protection to which it may have been entitled with respect to the identification of the original Bratz drawings that were subjected to testing and which tests were performed.

Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 7-20 and 23.

### Instruction Nos. 21-22

In these excerpts, Mattel's counsel asked Ms. Tonnu whether she could identify or describe any of the documents that were tested by Mr. Speckin. MGA's counsel objected to the questions based upon the work product doctrine and instructed the witness not to answer. The objections are overruled. As discussed immediately above, the questions call for factual information that is not protected by the work product doctrine. Even if the work product doctrine applied, the protection has been waived. Furthermore, this case presents exceptional circumstances under which it is impracticable for Mattel to obtain the information sought by other means. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 21-22.

### Instruction Nos. 24-26

In these excerpts, Mattel's counsel asked the witness (1) what Ms. Garcia told her about Diva Starz and (2) whether Ms. Garcia told the witness she had access to Diva Starz information while she was at Mattel. MGA's counsel objected to the questions to the extent the witness' conversations with Ms. Garcia occurred in the presence of counsel and instructed the witness not to answer.

The objections are overruled. The questions do not require the witness to divulge the substance of any privileged communication. Instead, the questions call for factual information to which Mattel is entitled.

EXHIBIT 23

PAGE 249

1    Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

2    responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 24-

3    26.

4                                    Instruction No. 27

5    In this excerpt, Mattel's counsel asked the witness twice whether MGA had access to

6    Mattel internal information regarding Diva Starz prior to February 1st, 2000.  MGA's counsel

7    made a speaking objection, which clearly violated Rule 30(c)(2), Fed.R.Civ.P.  However, the

8    questions do not need to be repeated because the witness provided responses.

9                                    Instruction No. 28

10   In this excerpt, Mattel's counsel asked, "MGA is denying that it had access to internal

11   information about Mattel's Diva Starz project prior to September 1st, 2000?"  MGA's counsel

12   objected on the grounds that the question calls for a legal conclusion, calls for the disclosure of

13   privileged information, and exceeds the scope of the deposition.  Counsel also instructed the

14   witness not to answer.

15   The objections are overruled.  The question does not call for a legal conclusion and MGA

16   has failed to establish the elements of the attorney-client privilege.

17   Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

18   responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 28.

19                                   Instruction Nos. 29-34

20   In these excerpts, Mattel's counsel asked as series of questions regarding whether MGA

21   knew Mattel was considering using the name "Brats" and "Boyz" in connection with the Diva

22   Starz project and whether MGA knew Mr. Linker worked on the project.  MGA's counsel made

23   several objections including the following:  assumes facts not in evidence; misstates the witness'

24   prior testimony; compound; outside the scope of the deposition; improper as to form; lacks

25   foundation; vague and ambiguous; calls for speculation; argumentative; and asked and answered.

26   MGA's counsel objected to one question (Instruction No. 30) on the additional ground that it may

27   call for attorney-client communications.  MGA's counsel also instructed the witness not to

28   answer.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___23___

PAGE ___250___

1    The repeated instructions not to answer were clearly improper.  Accordingly, MGA shall

2  produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions

3  identified in Mattel's Separate Statement No. 2 as Instruction Nos. 29-34.

<u>Instruction No. 35</u>

4

5    In this excerpt, the witness indicated that she did not know whether Mr. Linker worked on

6  the Bratz project.  Mattel's counsel then asked, "But you don't know one way or the other?"

7  MGA's counsel objected to the question, asserting that it had been asked and answered and was

8  argumentative.  MGA's counsel also instructed the witness not to answer.

The instruction not to answer was clearly improper.  Accordingly, MGA shall produce a

9

10  knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in

11  Mattel's Separate Statement No. 2 as Instruction No. 35.

<u>Instruction No. 36</u>

12    In this excerpt, Mattel's counsel asked, "Did you have a conversation with Mr. Jenal about

13  the net worth or the valuation of the company?"  MGA's counsel objected on privilege grounds

14  and instructed the witness not to answer.

15    The objection is overruled.  The question calls for a "yes" or "no" answer and does not

16  require the witness to divulge the substance of a privileged communication.

17    Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

18  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 36.

<u>Instruction No. 37</u>

19

20    In this excerpt, Mattel's counsel asked, "What did Mr. Daniels tell you about the net worth

21  or valuation of the company?"  MGA's counsel objected on privilege grounds.

22    The objection is sustained.  As phrased, the question potentially calls for the disclosure of

23  the substance of a privileged communication.

<u>Instruction Nos. 38-40</u>

24

25    In these excerpts, MGA's counsel instructed the witness not to answer.  The instruction

26  was not based upon a claim of privilege, and therefore was improper.  MGA's counsel also made

27  an improper speaking objection.  Accordingly, MGA shall produce a knowledgeable 30(b)(6)

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

29

EXHIBIT    23

PAGE    251

designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 38-40.

### Instruction No. 41

In this excerpt, Mattel's counsel asked the witness to identify the litigation for which Exhibit 660 was prepared. MGA's counsel objected to the question as calling for work product and instructed the witness not to answer.

The work product objection is overruled. The question calls for the disclosure of facts, not work product. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 41.

### Instruction Nos. 42-44

In these excerpts, Mattel's counsel posed more questions about the litigation for which Exhibit 660 was prepared, including the identity of the parties to the litigation and whether the litigation was ongoing. MGA's counsel objected on privilege and work product grounds.

The objections are overruled. The questions call for the disclosure of facts, not work product. Further, MGA has failed to establish that the questions require the witness to disclose the substance of a privileged communication. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 42-44.

### Instruction No. 45

In this excerpt, Mattel's counsel asked whether an attorney by the name of Mr. Daniels wrote a document. The work product objection by MGA's counsel is overruled. The "yes" or "no" question calls for the disclosure of facts, not work product. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 45.

E. Mattel's Request for Relief No. 5: Mattel seeks an order reopening the deposition of MGA designee Lisa Tonnu based on a purported "complete reversal of testimony" made through written "changes" to her deposition transcript.

Ms. Tonnu made changes to her deposition transcript after her deposition was completed.

EXHIBIT  23

PAGE  252

1   Counsel asked Ms. Tonnu whether any documents had been collected from MGA's Filenet

2   storage facility, to which she responded "no"; whether Mr. Daniels told her that he was going to

3   collect documents from Filenet, to which she responded "yes"; and whether the documents at

4   Filenet contained any documents responsive to Mattel's request, to which she responded "no."

5   Later, Ms. Tonnu revised her deposition transcript and reversed each of her answers.

6        Mattel contends that Ms. Tonnu's initial answers in the negative precluded a line of

7   questioning into, for example, who collected documents, which documents were collected and

8   how.

9        MGA contends that the changes Ms. Tonnu made do not justify re-opening a deposition.

10  Nevertheless, MGA has no objection to follow-up questions about Ms. Tonnu's revision when she

11  is deposed again in January.

12       In light of MGA's lack of opposition, MGA shall make Ms. Tonnu available for follow-up

13  questioning regarding the revisions to her deposition testimony.

14  <u>F. Mattel's Request for Relief No. 6:  Mattel seeks an order compelling Rebecca Harris to sit for the completion of her deposition and/or compelling such person selected by MGA as its designee to complete the testimony on topics for which Harris was previously designated.</u>

15       Mattel seeks an additional day to depose Ms. Harris.  Mattel contends that it needs more

16  than the 7-hours it has already deposed Ms. Harris to complete its questioning on all topics for

17  which she was designated.  Mattel emphasizes that Ms. Harris is designated to testify on nine

18  separate topics, each of which pertains to issues at the heart of the litigation, including the origin,

19  creation, design and development of Bratz prior to June 30, 2001; relevant contracts concerning

20  Carter Bryant and Bratz; payments made to Bryant and other financial information relating to

21  Bratz; and third parties who were involved in or otherwise have knowledge about the creation,

22  design and development of Bratz.

23       In addition to the topics already discussed above in Section "A" to this Order, Mattel

24  contends that it did not have sufficient time to depose Ms. Harris on Topic Nos. 19, 22 and 23,

25  which are set forth below:

26       **Topic No. 19:**  Each agreement or contract between YOU and any PERSON other than
         BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that REFERS

27       OR RELATES to the time period prior to December 31, 2001 (regardless of when such
         agreement or contract was negotiated or executed), including without limitation the timing

28       thereof, the negotiations, drafts and COMMUNICATIONS that REFER OR RELATE

31

EXHIBIT _23_

PAGE _253_

1    thereto, and any actual or proposed amendments thereto.

2    **Topic No. 22:** The payment of money or anything of value by or for YOU or on YOUR behalf that has been made to, for or on behalf of BRYANT (a) for work, services or activities performed by BRYANT prior to January 1, 2001 (regardless of when such payment was actually made), (2) for DESIGNS CREATED by BRYANT prior to January 1, 2001 (regardless of when such payment was actually made) or (c) in connection with BRATZ or any BRATZ DESIGN at any time, including amount(s) thereof and the reasons therefore,

3

4

5

6    **Topic No. 23:** The payment of royalties to, for or on behalf or BRYANT made by or for YOU or on YOUR behalf, including the timing, manner and amounts of such payments and the reasons therefore.

7

8    MGA contends that Mattel has not made the required showing that additional time is "needed to

9    fairly examine the deponent" or that "the deponent, another person, or any other circumstance

10    impedes or delays the examination." Fed.R.Civ.P. 30(d)(1). Furthermore, MGA contends that

11    Mattel wasted much of the 7-hours with Ms. Harris by asking questions outside the topics for

12    which she was designated and badgering the witness.

13       As discussed already above, Ms. Harris was not sufficiently prepared to testify on several

14    topics and did not discharge MGA's duty to produce a witness to testify as to information known

15    or reasonably available to MGA. Her lack of preparedness alone justifies additional deposition

16    time. The relatively large number of topics for which Ms. Harris was designated (Topic Nos. 11,

17    13, 14, 19, 21, 22, 23, 27 and 28), also justifies additional deposition time to enable Mattel to

18    fairly examine the deponent. Many of the topics for which Ms. Harris was designated are highly

19    relevant to the case. Mattel has identified a few instances where Mattel was inefficient in

20    conducting her deposition; however, the deposition generally proceeded at a reasonable pace.

21    Accordingly, Mattel is granted an additional four hours to complete the deposition of Ms. Harris

22    on all of the topics for which she was designated, except Topic Nos. 27 and 28 which were discussed previously.

23    G. Mattel's Request for Relief No. 7: Mattel seeks an order imposing sanctions for MGA's alleged willful violations of the May 16, 2007 and August 14, 2007 Orders, for MGA's allegedly improper instructions not to answer deposition questions and for MGA's alleged improper coaching, harassing and obstructionist conduct at the September 24-25, 2007 deposition of Lisa Tonnu and at the October 9, 2007 deposition of Spencer Woodman in the amount of $10,000.

24

25

26       Sanctions are appropriate based upon MGA's failure to produce 30(b)(6) designees who

27    were reasonably prepared to testify on seven out of the sixteen topics at issue, namely Topic Nos.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___23___

PAGE ___254___

21, 24, 25, 31, 34, 39 and 40. By agreeing to provide supplemental testimony on these topics, MGA implicitly acknowledges that the witnesses provided insufficient testimony. Further, MGA's counsel also repeatedly flouted Rule 30(c)(2), Fed.R.Civ.P., and prior orders prohibiting instructions not to answer for reasons other than privilege. Accordingly, pursuant to Rule 30(d)(2) and 37(b), Fed.R.Civ.P., sanctions are imposed in the amount of $6,000.

H. Mattel's Request for Relief No. 8: Mattel seeks a report and recommendation to Judge Stephen G. Larson that recommends the imposition of preclusion sanctions, that certain facts related to the topics compelled be deemed admitted, and/or that MGA be found in contempt for MGA's allegedly willful and repeated violations of the Orders.

As previously stated at the December 14, 2007 hearing, it is premature to consider preclusion sanctions and contempt at this time. If Mattel intends to pursue such sanctions, it may do so only after the close of Phase 1 discovery.

## V. CONCLUSION

For the reasons set forth above, it is hereby ordered as follows:

1.    No later than January 30, 2008, MGA shall produce witnesses who are prepared to testify about information known or reasonably available to MGA in accordance with Rule 30(b)(6), Fed.R.Civ.P., and to provide complete testimony on the following topics as specified herein: Topic Nos. 11, 13, 14, 19, 21-25, 31, 34 (with limitations noted herein) 39 (with limitations noted herein), 40 and 41. Mattel's motion is denied as to Topic Nos. 27 and 28.

2.    MGA's 30(b)(6) designee Spencer Woodman shall provide full and complete responses to each of the questions identified in Mattel's Separate Statement No. 2 that are identified herein as requiring a further response because the objections have been overruled and/or the instructions not to answer have been found improper, and the question seeks relevant and privileged information to which Mattel is entitled.

3.    MGA shall produce the e-mails that MGA designee Kenneth Lockhart identified during his June 14, 2007 deposition as documents which he reviewed and relied upon to refresh his recollection in preparation for his deposition. Mattel is also permitted to conduct reasonable follow-up questioning regarding those documents.

4.    MGA's 30(b)(6) designee Lisa Tonnu shall provide full and complete responses to each of the questions identified in Mattel's Separate Statement No. 2 that are identified herein as

EXHIBIT ___23___

PAGE ___255___

1 | requiring a further response because the objections have been overruled and/or the instructions

2 | not to answer have been found improper, and the question seeks relevant information to which

3 | Mattel is entitled.

4 |      5.    In addition to the deposition testimony authorized above, Mattel is granted leave to

5 | depose Ms. Tonnu regarding the changes she made to her deposition transcript.

6 |      6.    Mattel is granted additional time to complete a full and fair examination of Ms.

7 | Harris on all of the topics for which she was designated, except Topic Nos. 27 and 28.  The

8 | deposition of Ms. Harris shall not exceed four (4) hours.

9 |      7.    Mattel's request for monetary sanctions is granted in part pursuant to Fed.R.Civ.P.

10 | 37(b).  MGA shall pay sanctions in the amount of $6,000 no later than February 11, 2008.

11 |      8.    Mattel's request for preclusion sanctions and/or a finding of contempt is denied

12 | without prejudice.

13 |      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

14 | Master, Mattel shall file this Order with the Clerk of Court forthwith.

15 | Dated:  January 8, 2008

16 |                              HON. EDWARD A. INFANTE (Ret.)

17 |                                   Discovery Master

18

19

20

21

22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 23

PAGE 256

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 9, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; TO OVERRULE PURPORTEDLY IMPROPER INSTRUCTIONS; AND FOR SANCTIONS in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | crna@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 9, 2008, at San Francisco, California.

_Sandra Chan_
Sandra Chan

EXHIBIT __23__

PAGE __257__

# EXHIBIT 24

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 25

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 26

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 27

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 28

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 29

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 30

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 31