1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2   johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
    Timothy L. Alger (Bar No. 160303)
5   (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
7   Facsimile: (213) 443-3100

8   Attorneys for Plaintiff Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) Consolidated With Case No. 04-9059 and Case No. 05-2727 |
| 13       Plaintiff, | |
| 14   vs. | **DISCOVERY MATTER** |
| 15  MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]** |
| 16 | |
| 17       Defendant. | DECLARATION OF JOHN S. GORDON IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO MGA'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM THIRD PARTY RIGHT MANAGEMENT CONSULTANTS, INC. |
| 18  AND CONSOLIDATED ACTIONS | |
| 19 | |
| 20 | |
| 21 | Hearing Date:     TBD Time:             TBD |
| 22 | |
| 23 | **Phase 1:** Discovery Cut-off:   January 28, 2008 |
| 24 | Pre-trial Conference: May 5, 2008 Trial Date:       May 27, 2008 |

25

26

27

28

18298/2429614.1

## DECLARATION OF JOHN S. GORDON

I, John S. Gordon, declare as follows:

1.      I am a member of the bar of the State of California and a partner in Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc.  I make this declaration in support of Mattel Inc.'s ("Mattel") Opposition to MGA Entertainment Inc.'s ("MGA") Motion to Compel Production of Documents from Third Party Right Management Consultants, Inc. ("Right").  I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.      On January 21, 2008, counsel for MGA wrote to counsel for Right (cc:ed to counsel for Mattel) in response to Right's objections, dated January 18, 2008, to MGA's subpoena for documents, dated December 19, 2007.  Attached as Exhibit A is a true and correct copy of Lance Etcheverry's letter to Cara Braslow (cc:ed to B. Dylan Proctor), dated January 21, 2008.

3.      On February 15, 2008, counsel for MGA and counsel for Mattel stipulated that MGA would have until March 3, 2008 to file a motion to compel Right to respond to MGA's subpoena.  That day, I e-mailed counsel for MGA regarding the drafting of that stipulation.  In that e-mail, I also confirmed that Mattel objected to the production of any documents by Right on the grounds that MGA's subpoena does not pertain to Phase 1 discovery.  Attached as Exhibit B is a true and correct copy of my e-mail to Thomas Haroldson, dated February 15, 2008 (3:28 pm).

4.      On February 25, 2008, on behalf of Mattel, I participated in a meet-and-confer with counsel for MGA and counsel for Right.  During this conference, I objected that MGA's requests sought documents that are confidential to Mattel or to former Mattel employees.  Additionally, counsel for Right and I objected to MGA's subpoena on the grounds that it does not seek information relevant to Phase 1.

1 │ Counsel for MGA responded that the documents sought by the subpoena could show

2 │ that Mattel had a motive to file meritless claims against Bryant and MGA alleging

3 │ ownership of Bratz because the lay-offs identified in the records could evidence

4 │ Mattel's recognition that Bratz was seriously eroding Barbie's market share and

5 │ necessitated measures such as lay-offs.

6 │     5.    On February 26, 2008, I e-mailed counsel for MGA and counsel for

7 │ Right to state that Mattel maintains its objections to MGA's subpoena.  Attached as

8 │ Exhibit C is a true and correct copy of my e-mail to Lance Etcheverry and Cheryl

9 │ Plambeck, dated February 26, 2008 (12:16 am).

10 │     6.    MGA manually filed its Motion to Compel on March 3, 2008.  Right

11 │ was not included on MGA's service list for this motion.  Instead, on March 4, 2008,

12 │ counsel for MGA e-mailed to Right's counsel and Mattel's counsel a redacted copy

13 │ of the motion and the supporting declaration and exhibits.  Attached as Exhibit D is

14 │ a true and correct copy of Thomas Haroldson's e-mail to Cheryl Plambeck and Jon

15 │ Corey, dated March 4, 2008 (2:10 pm) and Ms. Plambeck's forwarding Email to me

16 │ the same day.

17 │     7.    Attached as Exhibit E is a true and correct copy of the Stipulated

18 │ Protected Order, entered by the Court on January 4, 2005.

19 │

20 │     Executed on March 10, 2008, at Los Angeles, California.

21 │

22 │

23 │     John S. Gordon

24 │

25 │

26 │

27 │

28 │

# EXHIBIT A

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

### 300 SOUTH GRAND AVENUE

### LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

DIRECT DIAL
(213) 687-5432
DIRECT FAX
(213) 621-5432
EMAIL ADDRESS
LETCHEYE@SKADDEN.COM

FIRM/AFFILIATE OFFICES
——
BOSTON
CHICAGO
HOUSTON
NEWARK
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
——
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 21, 2008

**VIA E-MAIL**

Ms. Cara Levy Braslow, Esq.
Right Management
1818 Market Street, 33rd Floor
Philadelphia, Pennsylvania 19103

RE:    *Bryant v. Mattel, Inc.*

Dear Ms. Braslow:

I am in receipt of Right Management's ("Right") responses and objections to the December 18, 2007 subpoena served on it by our client, MGA Entertainment, Inc. (the "Responses and Objections"). In reviewing the Responses and Objections, I was surprised by the sweeping objections and Right's wholesale refusal to produce responsive information. When you contacted me on January 14, 2008 (27 days after service of the subpoena) in search of an extension of time to respond to the subpoena, you assured me that Right had been working diligently and "as quickly as possible" to assemble all responsive information (both in paper and electronic formats). Nevertheless, you indicated that Right would need a few additional days to comply with the subpoena because, among other things, Right believed that certain personal information concerning individual Mattel employees would need to be redacted from the production set. In reliance on your representations, I agreed to give Right an extension until January 22, 2008 to produce the responsive information. Having received the extension, Right now appears to take the position that the subpoena is defective and, thus, it is under no obligation to comply with its terms.

Right's objections to the subpoena are without merit. Thus, I write to request a meet and confer pursuant to Section 5 of the Stipulation for Appointment of a

Cara Levy Braslow, Esq.
January 21, 2008
Page 2

Discovery Master (a copy of which is attached) to discuss Right's objections. Please let me know on which day this week you are available for a meet and confer.

In advance of the meet and confer, I respond briefly to Right's objections:

<u>Overbroad And Burdensome</u>

Right objects to Request Nos. 1 and 3 on grounds that they are impermissibly overbroad and unduly burdensome. Neither objection is appropriate, as both Requests are narrowly tailored to seek *only* communications between Right and Mattel with respect to several discrete topics. Indeed, Request No. 1 focuses on communications regarding Right's "participation or involvement in Mattel layoffs" and Request No. 2 specifically targets communications relating to Mattel employees "taking or contemplating position[s] of employment with Mattel competitors."

Right further claims that a search for electronic documents responsive to Request Nos. 1 and 3 would require significant business interruption and hence be unduly burdensome. As such, Right requests that MGA cover the cost of an outside consultant to review the e-mail archives of 25 Right employees who worked with Mattel (to the extent that the employees are still employed by Right). This request is unnecessary. Right is a large multi-national company employing thousands of employees in over 54 countries and, therefore, cannot credibly be heard to argue that it does "not have the personnel to conduct this search internally" – particularly since the review would be confined to the e-mail accounts of only a small number of already-identified Right employees.

<u>Proprietary/Confidential Information</u>

Right objects to Requests Nos. 1-4 on the basis that they seek proprietary information. As I informed you during our January 14 call, there is a Protective Order in the above-referenced litigation that permits third parties to designate documents they produce as confidential. I have attached a copy of the Protective Order for your convenience. The Protective Order should allay any concerns that Right may have regarding production of proprietary information.

<u>Relevance</u>

Finally, Right objects to Requests Nos. 2 and 4 on relevance grounds. This objection is likewise unfounded, as Mattel has alleged that MGA, a purported competitor of Mattel, acted inappropriately by employing certain of Mattel's former employees. Communications between Right and Mattel concerning the referral or placement of Mattel employees with Mattel competitors is therefore directly relevant to Mattel's claims in the litigation.

Cara Levy Braslow, Esq.
January 21, 2008
Page 3


     Should you have any questions prior to the meet and confer, please do not hesitate to contact me.  I look forward to hearing from you.


          Sincerely,


          Lance A. Etcheverry

Enclosures

cc:    B. Dylan Proctor

# EXHIBIT B

**From:** John Gordon
**Sent:** Friday, February 15, 2008 3:28 PM
**To:** 'Haroldson, Thomas E'; 'acote@obsklaw.com'; 'mhp@kvn.com'
**Cc:** 'Etcheverry, Lance A (LAC)'; John Gordon; 'Plambeck, Cheryl'; Michael T Zeller
**Subject:** RE: Right Management Consultants Stip

I am fine with stipulating to a further extension, but I want to make sure that we aren't agreeing that Right Management is producing any Mattel-related files responsive to the requests that remain in dispute after Right Management's original responses to the bulk of the requests.  Mattel believes that the remaining requests clearly seek Phase 2, not Phase 1, discovery, and therefore compliance with that remaining portion of the SDT is stayed until the court lifts the stay.  So I think the following portion of the stipulation should be revised to delete the blue highlighted portion of the sentence..  Assuming you delete that portion of the sentence, we are fine with you signing the stipulation on our behalf.

WHEREAS, MGA and Right continue to meet and confer to seek resolution of Right's objections and avoid the need for motion practice on the Request, and require time for Right to determine the scope of relevant files, how best to retrieve responsive documents, etc., and for MGA and Right to resolve any remaining differences;

John

John Gordon
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3613
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  johngordon@quinnemanuel.com
Web:  www.quinnemanuel.com

---

**From:** Haroldson, Thomas E [mailto:Thomas.Haroldson@skadden.com]
**Sent:** Friday, February 15, 2008 3:12 PM
**To:** John Gordon; acote@obsklaw.com; mhp@kvn.com
**Cc:** Etcheverry, Lance A (LAC)
**Subject:** Right Management Consultants Stip
**Importance:** High

Dear Counsel:

Attached is a third stipulation for your review and signature regarding third party discovery against Right Management Inc.  The stip, if approved by the Discovery Master, would grant MGA until March 3, 2008 (i.e., two weeks from Monday) to negotiate responses to its document request before having to serve and file a motion to compel.  Please review at your earliest convenience, and if the stipulation is acceptable, either sign and return by pdf or grant me your permission to sign on your behalf.

We would like to file the documents today, if possible. Thank you.

Thomas Haroldson
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3200
Los Angeles, California 90071
Tel. 213-687-5327
Fax 213-621-5327

------------------------------------------------------------------------

*************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. ***************************************************************
*************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
***************************************************

2/26/2008

# EXHIBIT C

**From:** John Gordon
**Sent:** Monday, February 25, 2008 9:30 PM
**To:** 'Etcheverry, Lance A'; 'CPlambeck@dglaw.com'
**Cc:** Michael T Zeller; John Gordon
**Subject:** RE: Mattel's position re: MGA"s remaining document subpoena requests to RM

Ok.  Thx for the heads-up.

**From:** Etcheverry, Lance A [mailto:Lance.Etcheverry@skadden.com]
**Sent:** Monday, February 25, 2008 9:25 PM
**To:** John Gordon; CPlambeck@dglaw.com
**Cc:** Michael T Zeller
**Subject:** Re: Mattel's position re: MGA"s remaining document subpoena requests to RM

Regrettable, but thanks in any event for the prompt response. Assuming that Right Management will refuse to produce responsive documentatio based on Mattel's objection, we will be filing a motion to compel on or before Monday's deadline.

Regards,

- Lance

*********************************************
This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
*********************************************

----- Original Message -----
From: John Gordon <johngordon@quinnemanuel.com>
To: Etcheverry, Lance A (LAC); 'Plambeck, Cheryl' <CPlambeck@dglaw.com>
Cc: John Gordon <johngordon@quinnemanuel.com>; Michael T Zeller <michaelzeller@quinnemanuel.com>
Sent: Tue Feb 26 00:16:48 2008
Subject: Mattel's position re: MGA"s remaining document subpoena requests to RM

Lance,

I have confirmed that Mattel's position is what I expressed this afternoon.  It opposes production of the Right Management documents relating to laid-off Mattel personnel that MGA seeks under its purported theory of motive to belatedly file claims against Carter Bryant and MGA re: ownership of Bratz designs due to lay-offs in the division(s) of Mattel related to Barbie dolls.

We can't see how the documents are relevant to any Phase 1 issue, especially when, according to my review of exemplars of such documents, the documents don't even show which divisions of Mattel the laid-off employees previously worked in.

Regards,

2/26/2008

John Gordon
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3613
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  johngordon@quinnemanuel.com <mailto:ujohngordon@quinnemanuel.com>
Web:  www.quinnemanuel.com <http://www.quinnemanuel.com/>

--------------------------------------------------------------------------
************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. ************************************************************************** ************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. ****************************************************
==============================================================

.

# EXHIBIT D

**From:** Plambeck, Cheryl [mailto:CPlambeck@dglaw.com]
**Sent:** Tuesday, March 04, 2008 11:16 AM
**To:** John Gordon
**Subject:** FW: Right Management Subpoena MTC

REDACTED -
ATTY-CLIENT PRIVILEGE AND
WORK PRODUCT

**From:** Haroldson, Thomas E [mailto:Thomas.Haroldson@skadden.com]
**Sent:** Tuesday, March 04, 2008 2:10 PM
**To:** Plambeck, Cheryl
**Cc:** Bowman, Matthew (LAC); Chun, Jean A (LAC); joncorey@quinnemanuel.com; johnquinn@quinnemanuel.com
**Subject:** Right Management Subpoena MTC

Cheryl:

Attached please find documents filed with the Discovery Master late yesterday.  We needed to redact certain portions designated Confidential – Attorneys' Eyes Only before serving Right Management.  You will receive a hard copies via FedEx.

Tom

Thomas Haroldson
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3200
Los Angeles, California  90071
Tel. 213-687-5327
Fax 213-621-5327

------------------------------------------------------------------------

************************************************* To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. *************************************************
************************************************* This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. *************************************************

1 | THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
2 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
3 | Los Angeles, CA 90071-3144
Tel.: (213) 687-5000/Fax: (213) 687-5600
4 |
RAOUL D. KENNEDY (Bar No. 40892)
5 | (rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 | 4 Embarcadero Center, 38th Floor
San Francisco, CA 94111-5974
7 | Tel.: (415) 984-6400 / Fax: (415) 984-2698

8 | Attorneys for MGA Entertainment, Inc.

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

| | | |
|---|---|---|
| 12 | CARTER BRYANT, an individual, | ) CASE NO. CV 04-9049 SGL (RNBx) |
| 13 | Plaintiff, | ) Consolidated with Case No. 04-9059<br>) and Case No. 05-2727 |
| 14 | v. | ) **DISCOVERY MATTER** |
| 15 | MATTEL, INC., a Delaware<br>corporation, | ) [PUBLIC REDACTED] MGA'S<br>) NOTICE OF MOTION AND |
| 16 | | ) MOTION TO COMPEL<br>) PRODUCTION OF DOCUMENTS |
| 17 | Defendant. | ) FROM THIRD PARTY RIGHT<br>) MANAGEMENT CONSULTANTS, |
| 18 | | ) INC. |
| 19 | | ) [To be heard by Discovery Master |
| 20 | AND CONSOLIDATED ACTIONS | ) Hon. Edward Infante (Ret.) Pursuant<br>) to Court Order of December 6, 2006] |
| 21 | | Hearing Date: TBD |
| 22 | | Time: TBD |

23 |

24 |

25 |

26 |

27 |

28 |

MGA'S MOTION TO COMPEL RIGHT MANAGEMENT CONSULTANTS

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |     PLEASE TAKE NOTICE that MGA Entertainment, Inc. ("MGA")

3 | hereby moves the Court for an order pursuant to Federal Rule of Civil Procedure 45

4 | compelling third party Right Management Consultants, Inc. ("Right") to produce

5 | documents responsive to MGA's subpoena dated December 18, 2007.

6 |     This motion is made on the grounds that Right has in its possession,

7 | custody and control a small number of documents that are relevant to Phase I of this

8 | case, but which it is refusing to produce on a variety of grounds – not least of which

9 | is the fact that Mattel does not want them to be produced.  Counsel met and

10 | conferred regarding this Motion, as mandated by Local Rule 37-1 and Section 5 of

11 | the Discovery Master Stipulation, but were unable to come to a resolution of the

12 | dispute.

13 |     This Motion is based upon this notice of motion and accompanying

14 | memorandum of points and authorities, the Declaration of Lance A. Etcheverry filed

15 | concurrently herewith, the records and files of this Court, and any other matter of

16 | which the Court may take judicial notice.  Discovery Master Hon. Edward Infante

17 | (Ret.) will preside over the hearing on this Motion, which will occur at a date and

18 | time to be determined.

19 | DATED:  March 3, 2008

20 |                           SKADDEN, ARPS, SLATE, MEAGHER &

21 |                           FLOM, LLP

22 |                           By:

23 |                           Raoul D. Kennedy<br>                          Attorneys for MGA Entertainment, Inc.

24 |

25 |

26 |

27 |

28 |

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................................ 1

FACTUAL BACKGROUND OF DISPUTE ..................................... 3

ARGUMENT ...................................................................................... 5

I.   THE COURT SHOULD COMPEL RIGHT TO PRODUCE THE SMALL HANDFUL OF RESPONSIVE DOCUMENTS. ........................................... 5

    A.   There Is No Potential Hardship To Right Management........................ 5

    B.   The Discovery Is Needed By MGA For Issues Relevant To Phase I Of The Case.................................................................. 5

CONCLUSION .................................................................................. 7

# **INTRODUCTION**

After more than seven weeks of effort by MGA's counsel to assuage the stated concerns of third party Right Management Consultants, Inc. ("Right") regarding MGA's December 18, 2007 subpoena (the "Subpoena"), MGA is now regrettably forced to bring this motion to compel production of a *one-and-a-half inch stack* of relevant documents that Right has refused to produce. Taking its directions from Mattel, Right has asserted a litany of objections to the Subpoena – ranging from claims of excessive burden to a need to protect the confidential information of laid-off Mattel employees who had used Right's outplacement services. In an effort to avoid unnecessary motion practice, MGA accommodated Right's concerns, agreeing to the redaction of any confidential information regarding former Mattel employees and limiting substantially the scope of the subpoena, such that only a small handful of documents would be responsive. Despite these concessions, Right persists in its refusal to produce *any* responsive documents, now seeking refuge in Mattel's assertion that the responsive documents are relevant only to Phase II of this matter. Right's and Mattel's position is baseless.

Right has for years provided outplacement services to former Mattel employees who fell victim to Mattel layoffs. On December 18, 2007, MGA served the Subpoena on Right, seeking information concerning the company's role in Mattel layoffs – including, in particular, information supporting MGA's position that Mattel's layoffs were evidence of its ongoing struggle to maintain market share in the face of Bratz's growing popularity. Although initially, Right claimed that the Subpoena would call for vast numbers of electronic documents, the parties met-and-conferred and were able to confine the potentially responsive information to Mattel-related e-mail correspondence maintained in the e-mail accounts of 35 Right employees and a *one-and-a-half inch thick* stack of hard copy documents that have already been collected. To accommodate Right's claims of excessive burden, and to

1  ensure that the requested discovery related to Phase I of this case, MGA offered to

2  table until Phase II any further discussion of Right's electronic files or documents (as

3  well as some hard copy documents that relate to Mattel's termination policies).

4  Instead, MGA sought, and seeks with this motion, *only* a small handful of reports

5  printed by Right, which list the various Mattel employees who have been laid-off

6  and used Right's services.

7        This information is unquestionably relevant to Phase I of this case.

8  Among the many hurdles that Mattel must overcome in asserting its claim of

9  ownership of Bratz is its failure to assert its purported ownership rights in a timely

10  fashion.  Put differently, had Mattel truly believed that it had any ownership interest

11  related to Bratz, it would not have waited a half-decade to assert its purported rights

12  (which is what it did).  As the discovery in this matter is beginning to make clear,

13  Mattel did not initially believe that it possessed any ownership right relating to Bratz.

14  Rather, it was only after it became apparent that Bratz would be a success and strip

15  precious market share from Barbie, Mattel's flagship product line, that Mattel

16  invented its claim of ownership.

17        In response to Bratz's growing popularity, which prompted Mattel to

18  declare that :       **REDACTED**       it is MGA's position that Mattel,

19  among other things, shook up its employment ranks with a series of layoffs.[1]

20  Information concerning the numbers and titles of employees who were laid off from

21  Mattel and worked with Right would shed light on the extent of Mattel's inner-

22  turmoil – and, in turn, provide valuable insight regarding the motive behind Mattel's

23  eleventh-hour claim of ownership rights relating to Bratz.  This is precisely the

24  information that would be gleaned from the computer printouts that are the subject of

25

26  [1]    *See* Declaration of Lance A. Etcheverry in Support of MGA's Motion To
     Compel Production of Documents from Third Party Right Management Consultants,
27  Inc. ("Etcheverry Decl."), Ex. 6 at 2; Ex. 7.  Subsequent exhibit references are to the
     Etcheverry Decl..
28

this motion.  Right and Mattel have *no* basis for blocking production of this relevant information.

## FACTUAL BACKGROUND OF DISPUTE

On December 20, 2007, MGA served Right with the Subpoena, which had a return date of January 18, 2008.  (Ex. 1.)  The Subpoena called for Right to produce, among other things, "ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO YOUR participation or involvement in MATTEL LAYOFFS and all DOCUMENTS REFERRING OR RELATING TO such communications."  *Id.* at 6 (Request No. 1).

On January 14, 2008, four days prior to the Subpoena's return date, in-house counsel for Right called MGA's counsel to ask for more time to respond.  (Ex. 4 at 1.)  Right's counsel represented that the company had been working diligently to assemble all responsive information, both in paper and electronic forms, but needed a few additional days to comply with the Subpoena because, among other things, certain personal information concerning individual Mattel employees would purportedly need to be redacted from the production set.  (*Id.*)  MGA agreed to an extension until January 22, 2008 to produce the responsive documents.  (*Id.*; Ex. 2.)

Rather than producing the documents as promised, on January 18, 2008, Right served objections claiming it was under no obligation to comply with the terms of the Subpoena.  (Ex. 3.)  On January 21, MGA responded to Right's objections and requested a meet and confer to resolve the question of Right's discovery obligations.  (Ex. 4 at 1-2.)

On January 24, 2008, an attorney from the Davis & Gilbert firm called MGA's counsel and indicated that her firm had been retained to handle the subpoena dispute.  There followed a series of negotiations over the appropriate scope of Right's production.[2]  On February 1, 2008, Right's counsel e-mailed MGA

---

[2]    In the hope of reaching an amicable resolution of the dispute, MGA submitted a series of stipulations that continued the date for MGA to move to compel compliance with the Subpoena.  Each was entered by the Discovery Master as an

1   indicating that Right was "in the process of identifying all of the people who worked

2   on Mattel-related projects" during the relevant time period, and explaining that more

3   time would be needed to complete the process and confer with MGA on a suitable

4   list of keywords for searches of electronic files. (Ex. 5.)

5          On February 14, 2008, nearly two months after service of the Subpoena,

6   counsel for Right raised the issue of whether the documents requested pursuant to the

7   Subpoena related to Phase I or Phase II of the instant litigation.  Counsel for Right

8   said that Mattel believed all of MGA's requests related only to Phase II and, thus,

9   should not be produced until that phase of the case. (Etcheverry Decl. ¶ 6.)  In

10  addition, Right said that Mattel objected to production of documents that related to

11  Mattel termination policies. (*Id.*)  MGA's counsel proposed a three-way meet and

12  confer, including Mattel's counsel, to discuss these issues. (*Id.*)

13         On February 25, 2008, counsel for MGA, Right and Mattel met and

14  conferred via telephone.  Counsel for Right indicated that the hard copy documents

15  responsive to the Subpoena amounted to a stack about an inch-and-a-half thick –

16  consisting primarily of computer printouts of all Mattel employees, by name and title,

17  who used Right's services after having been laid off. (*Id.* ¶ 7.)  To ease Right's

18  concern about turning over this employee information, MGA agreed to having the

19  names of such employees redacted, so long as Right's non-descript control number

20  remained so that the individuals could later be differentiated. (*Id.*)

21         Despite all of MGA's concessions, Right and Mattel objected to

22  production of the computer printouts on grounds that they bear no relevance to Phase

23  I issues. (*Id.* ¶ 8.)  MGA's counsel explained the relevance of the layoff information

24  contained in the computer printouts, but to no avail. (*Id.*)  Right and Mattel were

25  Order, ultimately extending MGA's filing deadline until March 3, 2008. *See*

26  Stipulation and Order Re: MGA's Time to Serve and File Motion to Compel Third
    Party Right Management Consultants Inc. to Produce Documents Pursuant to

27  Subpoena, dated January 28, 2008; Second Stipulation and Order re Right
    Management dated February 15, 2008; Third Stipulation and Order re Right

28  Management dated February 19, 2008.

1   simply dead-set against producing *any* information in response to the Subpoena –

2   even where, as in this case, there would be *no* burden to Right in doing so.  (*Id.*)

3   **ARGUMENT**

4   I.   **THE COURT SHOULD COMPEL RIGHT TO PRODUCE THE**
     **SMALL HANDFUL OF RESPONSIVE DOCUMENTS.**

5

6   Federal Rule of Civil Procedure 45 obligates third parties to produce

7   documents responsive to a subpoena served by a party.  Fed. R. Civ. P. 45(b), (d).

8   "[T]he factors required to be balanced by the trial court in determining the propriety

9   of a subpoena are the relevance of the discovery sought, the requesting party's need,

10  and the potential hardship to the party subject to the subpoena."  Heat & Control, Inc.

11  v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986).  As applied to this case,

12  these factors weigh overwhelmingly in favor of requiring production of the requested

13  materials.

14       A.   **There Is No Potential Hardship To Right Management.**

15          "The burden of showing that a subpoena is unreasonable and oppressive

16  is upon the party to whom it is directed."  Goodman v. U.S., 369 F.2d 166, 169 (9th

17  Cir. 1966).  Here, Right faces no hardship whatever in producing the inch-and-a-half

18  of documents MGA seeks under Phase I discovery – *all* of which have already been

19  collected.  (*See* Etcheverry Decl. ¶ 7.)  They need only to be copied and produced.

20  *See* Goodman, 369 F.2d at 169 (reversing trial court's order quashing subpoena

21  defended on grounds it represented a "fishing expedition," and ordering production

22  where the amount of documents was disputed to be "between 'one folder ...' and 'a

23  couple of large file cabinets.'").  Here, it is undisputed that the volume of documents

24  sought is a stack an inch-and-a-half thick.  (*See* Etcheverry Decl. ¶ 7.)

25       B.   **The Discovery Is Needed By MGA For Issues Relevant To Phase I**
     **Of The Case.**

26

27          Documents are discoverable so long as they are nonprivileged and

28  "relevant to any party's claim or defense – including the existence, description,

1  nature, custody, condition, and location of any documents or other tangible things
2  and the identity and location of persons who know of any discoverable matter." Fed.
3  R. Civ. P. 26(b)(1).  "Whether the information sought would be admissible evidence
4  at trial is *not* the test …. *Relevant* information may be discoverable if it 'appears
5  *reasonably calculated to lead* to the discovery of admissible evidence.'" Judge
6  William W. Schwarzer, et al., California Practice Guide: Federal Civil Procedure
7  Before Trial, § 11:614 (The Rutter Group 2007) (quoting Fed. R. Civ. P. 26(b)(1)).
8        MGA asserts that, although Mattel had previously been aware of the
9  essential facts underlying its lawsuit, it only brought this action after the widespread
10 success of Bratz threw Mattel's business into turmoil.  As a result of Bratz's impact
11 on Mattel's business, Mattel was desperate to restore its competitiveness in the
12 marketplace. (*See* Ex. 6
13        MGA believes the measures
14 taken by Mattel in response to this crisis included employee layoffs
15                                                         Ex. 7.
16        The computer printouts that Right has collected would shed
17 light on the scope of these layoffs and the positions held by the Mattel employees
18 who were let go.  This limited group of documents plainly meets the relevance
19 standard set forth in Rule 26 of the Federal Rules of Civil Procedure.
20
21
22
23                       **REDACTED**
24
25
26
27
28

## CONCLUSION

For the foregoing reasons, MGA respectfully requests this Court to issue an order compelling Right to produce documents responsive to MGA's Subpoena relating to Phase I issues, specifically the computer printouts that have previously been collected by Right's counsel.

DATED:  March 3, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____
Raoul D. Kennedy
Attorneys for MGA Entertainment, Inc.

1 | THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
2 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
3 | Los Angeles, CA 90071-3144
Tel.: (213) 687-5000/Fax: (213) 687-5600
4 |
RAOUL D. KENNEDY (Bar No. 40892)
5 | (rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 | 4 Embarcadero Center, 38th Floor
San Francisco, CA 94111-5974
7 | Tel.: (415) 984-6400 / Fax: (415) 984-2698

8 | Attorneys for MGA Entertainment, Inc.

9 |

10 | UNITED STATES DISTRICT COURT

11 | CENTRAL DISTRICT OF CALIFORNIA

12 | EASTERN DIVISION

13 | CARTER BRYANT, an individual,      ) CASE NO. CV 04-9049 SGL (RNBx)
                                        ) Consolidated with Case No. 04-9059
14 |                    Plaintiff,      ) and Case No. 05-2727
                                        )
15 |         v.                         ) **DISCOVERY MATTER**
                                        )
16 | MATTEL, INC., a Delaware           ) [PUBLIC REDACTED]
    corporation,                       ) DECLARATION OF LANCE A.
17 |                                    ) ETCHEVERRY IN SUPPORT OF
                    Defendant.         ) MGA'S MOTION TO COMPEL
18 |                                    ) PRODUCTION OF DOCUMENTS
                                        ) FROM THIRD PARTY RIGHT
19 |                                    ) MANAGEMENT CONSULTANTS,
                                        ) INC.
20 |                                    )
                                        ) [To be heard by Discovery Master
21 |                                    ) Hon. Edward Infante (Ret.) Pursuant
                                        ) to Court Order of December 6, 2006]
22 | AND CONSOLIDATED ACTIONS          )
                                        ) Hearing Date: TBD
23 |                                    ) Time: TBD

24 |

25 |

26 |

27 |

28 |

DECLARATION OF LANCE ETCHEVERRY

I, Lance A. Etcheverry, declare and state as follows:

I am an attorney with Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden"), counsel of record for MGA Entertainment, Inc. ("MGA").

1.     Attached as Exhibit 1 hereto is a true and correct copy of the subpoena dated December 18, 2007 (the "Subpoena") served on Right Management Consultants, Inc. ("Right").

2.     Attached as Exhibit 2 hereto is a true and correct copy of e-mail correspondence between Lance A. Etcheverry, Esq. and Cara Braslow, Esq. dated January 17, 2008.

3.     Attached as Exhibit 3 hereto is a true and correct copy of an e-mail message dated January 18, 2008, from Cara Braslow, Esq. to Lance A. Etcheverry, Esq., attaching Right's objections to the Subpoena.

4.     Attached as Exhibit 4 hereto is a true and correct copy of a letter dated January 21, 2008, from Lance A. Etcheverry, Esq. to Cara Braslow, Esq., enclosing the Order for Appointment of Discovery Master and Protective Order.

5.     Attached as Exhibit 5 hereto is a true and correct copy of e-mail correspondence from Cara Braslow, Esq. to Lance A. Etcheverry, Esq. dated February 1 and February 5, 2008.

6.     On February 14, 2008, during a meet and confer teleconference, counsel for Right raised the issue of whether the documents requested pursuant to the Subpoena related to Phase I or Phase II of the instant litigation.  Right's counsel said that Mattel believed all of MGA's requests related only to Phase II and thus should not be produced, if at all, until that phase of the case.  In addition, Right's counsel said that Mattel objected to production of documents that related to Mattel termination policies.  I proposed a three-way meet and confer, including Mattel's counsel, to discuss these issues.

DECLARATION OF LANCE ETCHEVERRY
-1-

7.     On February 25, 2008, I met and conferred with counsel for MGA, Right and Mattel via telephone.  Counsel for Right indicated that the hard copy documents responsive to the Subpoena amounted to a stack about an inch-and-a-half thick – consisting primarily of computer printouts of all Mattel employees, by name and title, who used Right's services after having been laid off.  To ease Right's concern about turning over this employee information, I agreed to having the names of such employees redacted, so long as Right's non-descript control number remained so that the individuals could later be differentiated.

8.     Despite all of MGA's concessions, Right and Mattel objected to production of the computer printouts on grounds that they bear no relevance to Phase I issues.  I explained the relevance of the lay-off information contained in the computer printouts, but to no avail.  Right and Mattel were simply dead-set against producing any information in response to the Subpoena – even where, as in this case, there would be *no* burden to Right in doing so.

9.     Attached as Exhibit 6 hereto

**REDACTED**

10.    Attached as Exhibit 7 hereto

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 3, 2008, at Los Angeles, California.

By: _Lance A. Etcheverry_
Lance A. Etcheverry

DECLARATION OF LANCE ETCHEVERRY
-2-

496604-Los Angeles Server 1A - MSW

Exhibit 1

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

CENTRAL     DISTRICT OF     CALIFORNIA

CARTER BRYANT, an individual, Plaintiff,

V.

MATTEL, INC., a Delaware corporation, Defendant

AND CONSOLIDATED ACTIONS
TO:

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] CV 04-09049 SGL (RNBx)
Consolidated with Case Nos. CV 04-9059 and
CV 05-2727

RIGHT MANAGEMENT CONSULTANTS INC., 222 North Sepulveda Blvd., Suite 1450, El Segundo, CA 90245

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP, 300 S. Grand Ave., Los Angeles, CA 90071 | January 18, 2008 - 9:00 AM |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _[signature]_  Atty for Counter Defendant MGA Ent. et al. | December 19, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Lance A. Etcheverry, Skadden, Arps, Slate, Meagher & Flom LLP, 300 S. Grand Ave., Los Angeles, CA 90071-3144 (213) 687-5000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

Exhibit 1, P. 3

| Attorney or Party without Attorney: LANCE A. ETCHEVERRY, Bar #199916 SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP 300 SOUTH GRAND AVENUE SUITE 3400 LOS ANGELES, CA  90071 Telephone No: 213-687-5000      FAX No: 213-687-5600 | For Court Use Only |
|---|---|

Ref. No. or File No.:

Attorney for: Defendant

Insert name of Court, and Judicial District and Branch Court:
United States District Court, Central District Of California

Plaintiff: CARTER BRYANT, ETC.

Defendant: MATTEL, INC., ETC.

| PROOF OF SERVICE SUBPOENA IN A CIVIL | Hearing Date: Fri, Jan. 18, 2008 | Time: 9:00AM | Dept/Div: | Case Number: CV04-09049 SGL (RNBX) |
|---|---|---|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the SUBPOENA IN A CIVIL CASE

3. a. Party served:                RIGHT MANAGEMENT CONSULTANTS INC.
   b. Person served:              CHRISTINA VASQUEZ, AUTHORIZED TO ACCEPT SERVICE.

4. Address where the party was served:    222 NORTH SEPULVEDA BLVD.
                                          SUITE 1450
                                          EL SEGUNDO, CA  90245

5. I served the party:
   a. by personal service.  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: Thu., Dec. 20, 2007 (2) at: 9:45AM
   b. I received this subpena for service on:        Thursday, December 20, 2007

6. Witness fees were not demanded or paid.

7. Person Who Served Papers:                         Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. MEHRAN KHARAZI                        d.  The Fee for Service was:

   **First Legal Support Services** in                e.  I am: Not a Registered California Process Server
   ATTORNEY SERVICES
   1511 BEVERLY BOULEVARD
   Los Angeles, CA 90026
   (213) 250-1111, FAX (213) 250-1197

8. I declare under penalty of perjury under the laws of the State of California and under the laws of the United States Of America that the foregoing is true and correct.
   Date: Fri, Dec. 21, 2007

Judicial Council Form
Rule 982.9.(a)&(b) Rev January 1, 2007

PROOF OF SERVICE
SUBPOENA IN A CIVIL                                  (MEHRAN KHARAZI)        3979383.lanet.104067

Exhibit  1 , P.  4

# ATTACHMENT A
# DEFINITIONS

As used in these Requests:

1.     "BRYANT" means and refers to Carter Bryant individually.

2.     "COMMUNICATION[S]" means and refers to any transmission of information from one person or entity to another, including, without limitation, by personal meeting, conversation, letter, telephone, facsimile or electronic mail.  Each request that encompasses information relating in any way to communications to, from or within a business or corporate entity is hereby designated to mean, and should be construed to include, all communications by and between representatives, employees, agents or servants of the business or corporate entity.

3.     "CONFIDENTIALITY, TRANSFER AND NO-CONFLICT OBLIGATIONS" means and refers to the obligations of MATTEL EMPLOYEES under the EMPLOYEE INVENTIONS AGREEMENT to, *inter alia*, (i) maintain the confidentiality of MATTEL's trade secrets, (ii) assign to MATTEL all rights, title and interest to inventions conceived or reduced to practice by MATTEL EMPLOYEES during their employment with MATTEL and (iii) only engage in employment or business with or for MATTEL.

4.     "CONFLICT OF INTEREST QUESTIONNAIRE" means and refers to any form of employment agreement concerning, *inter alia*, relations, if any, between Mattel's employees, suppliers, and/or competition, whether known by the title "Conflict of Interest Questionnaire" or any other title, including without limitation the form of Conflict of Interest Questionnaire entitled "Conflict of Interest Questionnaire" executed by BRYANT on or about January 4, 1999.

5.     "DISCLOSURE OBLIGATIONS" means and refers to the obligations of MATTEL EMPLOYEES under the CONFLICT OF INTEREST QUESTIONNAIRE and PROPRIETARY INFORMATION CHECK-OUT FORM

Exhibit ___1___ , P. __5__          1

to disclose, *inter alia*, any (i) conflicts of interests with MATTEL arising from their relations with MATTEL suppliers and competitors and (ii) inventions, improvements, ideas, suggestions, designs, trademarks, copyright subject matter, literary or artistic works made or conceived by MATTEL EMPLOYEES during their employment with MATTEL.

      6.    "DOCUMENT[S]" incorporates the full meaning of Federal Rule of Civil Procedure 34, and shall be construed in the broadest sense to mean any and all writings, tangible things and property, of any kind, that are now or that have been in YOUR actual or constructive possession, custody or control, including, but not limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed, punched, copied, recorded, transcribed, graphic or photographic matter of any kind or nature, in, through, or from which information may be embodied, translated, conveyed or stored, whether an original, a draft or copy, however produced or reproduced, whether sent or received or neither, including, but not limited to, notes, memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports, inter- and intra-office COMMUNICATIONS, work papers, work sheets, work records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets, estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders, telephone records, telegrams, telexes, literature, invoices, contracts, purchase orders, estimates, recordings, transcriptions of recordings, records, books, pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs, video, audio and digital recordings, television commercials, story boards, website or other spot advertisements, movies, movie trailers, prototypes, products, diaries, calendars, charts, drawings, sketches, messages, photographs and data contained in or accessible through any electronic data processing system, including, but not limited to, computer databases, data sheets, data processing cards, computer files and tapes, computer disks, CD-ROMs, computer metadata, microfilm, microfiche, electronic mail, website and web pages and transcriptions thereof and all other

2

Exhibit ___1___ , P. ___6___

memorializations of any conversations, meetings and conference, by telephone or otherwise.  The term DOCUMENT also means every copy of a DOCUMENT, where such copy is not an identical duplicate of the original, whether because of deletions, underlinings, showing of blind copies, initialing, signatures, receipt stamps, comments, notations, differences in stationery or any other difference or modification of any kind.

7.      "EMPLOYEE INVENTIONS AGREEMENT" means and refers to any form of Mattel employment agreement concerning, *inter alia*, (i) ownership of inventions, (ii) trade secrets and/or (iii) conflicts, whether known by the title "Employee Confidential Information and Inventions Agreement" or any other title, including without limitation the form of Employee Inventions Agreement entitled "Employee Confidential Information and Inventions Agreement" executed by BRYANT on or about January 4, 1999.

8.      "MATTEL" means and refers to the party Mattel, Inc. and any of its past or present officers, directors, agents, employees, representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, entities and persons acting in joint venture or partnership relationships with MATTEL and any others acting on MATTEL's behalf, pursuant to its authority or subject to its control.

9.      "MATTEL EMPLOYEES" means and refers to at least one or more than one of MATTEL's current or former employees, except BRYANT.

10.     "MATTEL LAYOFF[S]" means and refers to the termination of employment of at least one or more than one of MATTEL EMPLOYEES.

11.     "MGA" means and refers to MGA Entertainment, Inc. and any of its past or present officers, directors, agents, employees, representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, entities and persons acting in joint venture or partnership relationships with MGA and any others acting on MGA's behalf, pursuant to its authority or subject to its control.

3

Exhibit ___1___ , P. _7_

12.    "PROPRIETARY INFORMATION CHECK-OUT FORM" means and refers to any agreement concerning, *inter alia*, the transfer and ownership of inventions upon termination of the employment of MATTEL employees, whether known by the title "Proprietary Information Check-Out Form" or any other title, including without limitation the Proprietary Information Check-Out Form entitled "Proprietary Information Check-Out Form" executed by BRYANT on or about October 19, 2000.

13.    "REFERRING OR RELATING TO" should be construed in the broadest possible sense to mean concerning, consisting of, referring to, relating to, describing, discussing, constituting, evidencing, containing, reflecting, mentioning, pertaining to, citing, summarizing, analyzing or bearing any logical or factual connection with the matter discussed.

14.    "RIGHT MANAGEMENT," "YOU," or "YOUR" means and refers to Right Management Consultants, Inc. and any of its past or present officers, directors, agents, employees, representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, entities and persons acting in joint venture or partnership relationships with YOU and any others acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

## INSTRUCTIONS

1.    YOU are instructed to produce all non-privileged DOCUMENTS in YOUR possession, custody or control.  A DOCUMENT is in YOUR "possession, custody, or control" if it is in YOUR physical possession, or if, as a practical matter, YOU have the ability, upon request, to obtain possession of the DOCUMENT or a copy thereof from another person or entity who has physical possession of the DOCUMENT.

4    Exhibit  1  , P. 8

2. YOU are instructed to produce all non-privileged DOCUMENTS responsive to these REQUESTS to the extent YOU have not previously produced them to MGA.

3. Each DOCUMENT is to be produced as it is kept in the usual course of business, including all file folders, binders, notebooks, and other devices by which such DOCUMENTS may be organized, separated, or identified.

4. Each DOCUMENT maintained or stored electronically in native, electronic format is to be produced with all relevant metadata intact and in an appropriate and useable electronic manner.

5. If YOU withhold any DOCUMENT, or portion of a DOCUMENT, on grounds that it is protected from discovery by the attorney-client privilege, work product doctrine, or other privilege, please set forth for each DOCUMENT or portion of a DOCUMENT withheld:

(a) The date the DOCUMENT was created;

(b) The names and organization position, if any, of each author, sender, and recipient of the DOCUMENT;

(c) A general description of the subject-matter of the DOCUMENT;

(d) The basis of any claim of privilege; and

(e) If work-product is asserted, the proceeding for which the DOCUMENT was created.

6. Unless otherwise noted, these Requests seek DOCUMENTS from January 1, 1998, to the present.

7. These Requests shall be deemed continuing so as to require prompt, supplemental production if YOU obtain or create additional DOCUMENTS subsequent to the date hereof.

Exhibit __1__ , P. _9_

# REQUESTS FOR PRODUCTION

REQUEST NO. 1:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO YOUR participation or involvement in MATTEL LAYOFFS and all DOCUMENTS REFERRING OR RELATING TO such COMMUNICATIONS.

REQUEST NO. 2:

ALL DOCUMENTS REFERRING OR RELATING TO any decision or contemplation by YOU or MATTEL to place or refer any MATTEL EMPLOYEES to MATTEL competitors, including, without limitation, MGA.

REQUEST NO. 3:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO MATTEL EMPLOYEES taking or contemplating positions of employment with MATTEL competitors, including, without limitation, MGA.

REQUEST NO. 4:

ALL COMMUNICATIONS with MATTEL EMPLOYEES REFERRING OR RELATING TO their taking or contemplating positions of employment with MATTEL competitors, including, without limitation, MGA.

REQUEST NO. 5:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO the preservation of MATTEL confidential information, proprietary information and trade secrets during MATTEL LAYOFFS.

REQUEST NO. 6:

ALL COMMUNICATIONS with MATTEL EMPLOYEES REFERRING OR RELATING TO the preservation of MATTEL confidential information, proprietary information and trade secrets during MATTEL LAYOFFS.

6

Exhibit 1 , P. 16

REQUEST NO. 7:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO the preservation of MATTEL confidential information, proprietary information and trade secrets during or after the acceptance by MATTEL EMPLOYEES of employment with MATTEL competitors, including, without limitation, MGA.

REQUEST NO. 8:

ALL COMMUNICATIONS with MATTEL EMPLOYEES REFERRING OR RELATING TO the preservation of MATTEL confidential information, proprietary information and trade secrets during or after their acceptance of employment with MATTEL competitors, including, without limitation, MGA.

REQUEST NO. 9:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO the compliance of MATTEL EMPLOYEES with the DISCLOSURE OBLIGATIONS under the CONFLICT OF INTEREST QUESTIONNAIRE.

REQUEST NO. 10:

ALL COMMUNICATIONS with MATTEL EMPLOYEES REFERRING OR RELATING TO the compliance with the DISCLOSURE OBLIGATIONS under the CONFLICT OF INTEREST QUESTIONNAIRE.

REQUEST NO. 11:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO MATTEL's enforcement of the DISCLOSURE OBLIGATIONS of MATTEL EMPLOYEES under the CONFLICT OF INTEREST QUESTIONNAIRE.

Exhibit __1__, P. __11__

REQUEST NO. 12:

ALL COMMUNICATIONS with MATTEL EMPLOYEES REFERRING OR RELATING TO MATTEL's enforcement of the DISCLOSURE OBLIGATIONS under the CONFLICT OF INTEREST QUESTIONNAIRE.

REQUEST NO. 13:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO the compliance of MATTEL EMPLOYEES with the CONFIDENTIALITY, TRANSFER AND NO-CONFLICT OBLIGATIONS under the EMPLOYEE INVENTIONS AGREEMENT.

REQUEST NO. 14:

ALL COMMUNICATIONS with MATTEL EMPLOYEES REFERRING OR RELATING TO the compliance with the CONFIDENTIALITY, TRANSFER AND NO-CONFLICT OBLIGATIONS under the EMPLOYEE INVENTIONS AGREEMENT.

REQUEST NO. 15:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO MATTEL's enforcement of the CONFIDENTIALITY, TRANSFER AND NO-CONFLICT OBLIGATIONS of MATTEL EMPLOYEES under the EMPLOYEE INVENTIONS AGREEMENT.

REQUEST NO. 16:

ALL COMMUNICATIONS with MATTEL EMPLOYEES REFERRING OR RELATING TO MATTEL's enforcement of the CONFIDENTIALITY, TRANSFER AND NO-CONFLICT OBLIGATIONS under the EMPLOYEE INVENTIONS AGREEMENT.

Exhibit __1__ , P. _12_

REQUEST NO. 17:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO the compliance of MATTEL EMPLOYEES with the DISCLOSURE OBLIGATIONS under the PROPRIETARY INFORMATION CHECK-OUT FORM.

REQUEST NO. 18:

ALL COMMUNICATIONS with MATTEL EMPLOYEES REFERRING OR RELATING TO the compliance with the DISCLOSURE OBLIGATIONS under the PROPRIETARY INFORMATION CHECK-OUT FORM.

REQUEST NO. 19:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO MATTEL's enforcement of the DISCLOSURE OBLIGATIONS of MATTEL EMPLOYEES under the PROPRIETARY INFORMATION CHECK-OUT FORM.

REQUEST NO. 20:

ALL COMMUNICATIONS with MATTEL EMPLOYEES REFERRING OR RELATING TO MATTEL's enforcement of the DISCLOSURE OBLIGATIONS under the PROPRIETARY INFORMATION CHECK-OUT FORM.


DATED: December 18, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____
        Lance A. Etcheverry
Attorneys for Counter-Defendants MGA
ENTERTAINMENT, INC., ISAAC LARIAN,
MGA ENTERTAINMENT (HK) LTD., and MGAE
de MEXICO S.R.L. de C.V.

9

Exhibit 1 , P. 13

Exhibit 2

**Etcheverry, Lance A (LAC)**

| | |
|---|---|
| **From:** | Braslow, Cara (Corporate) [Cara.Braslow@right.com] |
| **Sent:** | Thursday, January 17, 2008 7:56 AM |
| **To:** | Etcheverry, Lance A (LAC) |
| **Subject:** | RE: Subpoena Response |

Thanks, Lance.

Cara

---

**From:** Etcheverry, Lance A [mailto:Lance.Etcheverry@skadden.com]
**Sent:** Thursday, January 17, 2008 10:52 AM
**To:** Braslow, Cara (Corporate)
**Subject:** Subpoena Response

Cara -

I am writing to confirm the substance of our conversation this morning. In response to your request for an extension of time to respond to the subpoena served on Right Management Consultants, Inc. by our client, MGA Entertainment, Inc., we agreed that Right will provide written responses and objections, if any, to the subpoena on the originally-scheduled return date, January 18, 2008. Please send those responses and objections to us by e-mail or facsimile to ensure that we receive them no later than January 18. As for the production of responsive information, we agreed that Right will have until January 22, 2008 to do so in accordance with the procedures set forth in the subpoena.

Please contact me with any questions you may have or if this e-mail does not comport with your understanding of our agreement. Thank you for your cooperation.

- Lance

LANCE A. ETCHEVERRY
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California  90071
213/687-5432

---

-----------------------------------------------------------------------
**************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. **************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided

Exhibit 2 , P. 14

2/26/2008

Exhibit 3

**Etcheverry, Lance A (LAC)**

| | |
|---|---|
| **From:** | Braslow, Cara (Corporate) [Cara.Braslow@right.com] |
| **Sent:** | Friday, January 18, 2008 11:03 AM |
| **To:** | Etcheverry, Lance A (LAC) |
| **Cc:** | Young, Ted (Corporate) |
| **Subject:** | Right Management Responses |

**Attachments:**   EAS

Attached please find Right Management's responses to the subpoena dated December 19, 2007.  Please contact me with any questions.


Regards,

Cara Braslow


Cara Levy Braslow

Assistant General Counsel

Right Management Inc.

1818 Market Street, 33rd Floor

Philadelphia, PA  19103

Tel.: 215.640.7103

Email: cara.braslow@right.com <mailto:cara.braslow@right.com>


This e-mail and its attachments may contain Right Management Inc. proprietary information, which is PRIVILEGED, CONFIDENTIAL, or subject to COPYRIGHT belonging to Right Management Inc. This e-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering this e-mail to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this e-mail is STRICTLY PROHIBITED and may be UNLAWFUL. If you have received this e-mail in error, please notify the sender immediately and permanently delete the original and any copy of this e-mail and any printout. Right Management is a registered trademark of Right Management Inc. Thank Yo

Attachments:
    3040_001.pdf (251520 Bytes)


Exhibit _3_ , P. _15_



January 18, 2008

Lance A. Etcheverry, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
300 S. Grand Avenue
Los Angeles, CA 90071

Dear Lance:

Attached are Right Management's responses to your requests for information set forth in the subpoena dated December 19, 2007.

Please call me with any questions or comments.

Very truly yours,

Cara Levy Braslow
Assistant General Counsel

MANAGING THE HUMAN SIDE OF CHANGE®

Right Management • 1818 Market Street, Thirty-Third Floor • Philadelphia, Pennsylvania 19103
Phone 215 988-1588 Fax 215 988-0147 • www.right.com

Exhibit __3__ , P. __16__

Right Management Responses
January 18, 2008

## RESPONSES TO SUBPOENA FROM MGA ENTERTAINMENT

**1.  All communications with Mattel referring or relating to your participation or involvement in Mattel layoffs and all documents referring or relating to such communications.**

RESPONSE:  Right Management does not maintain communication files in hard copy with regard to Mattel layoffs.  Right Management has located a small amount of documentation concerning Right Management's career transition programs, including client/candidate reports and career transition manuals, relating to Mattel reductions in force, but none of those documents concern MGA, any other competitor of Mattel, or Carter Bryant, or any litigation or dispute between MGA or any other competitor of Mattel or Bryant and Mattel.  Additionally, the documents are proprietary information of Right Management and/or Mattel or constitute confidential employment records of participants in career transition services who are not parties to the litigation.  Based on the objections described above, Right Management objects to producing the hard copy records it has located that respond to the first category of documents requested in MGA's subpoena.  The document request is impermissibly overbroad.

Right Management does maintain archived correspondence files as part of its e-mail system.  With respect to Right Management employees in the field (i.e., those who have had contact with Mattel and/or candidates in Mattel's career transition programs), e-mail is retained for a period of one (1) year.  Archived e-mail correspondence is not retained for Right Management employees who have left the firm or for consultants (i.e., non-employees) of Right Management who may have provided services to Mattel and/or candidates in Mattel's career transition program.

In order to determine what e-mail files exist, Right Management first needs to assess the list of approximately 25 persons associated with Right Management who worked with Mattel and/or candidates in Mattel's career transition programs.  To this end, Right Management will need to contact its Human Resources Department and determine the employment status of each such individual.  Employees will have e-mail accounts; independent consultants typically do not.  Furthermore, only current field employees will have e-mail accounts archived for a one-year period; any field employee who has left Right Management no longer has an archived e-mail account.

Once Right Management is able to determine who from its end currently has an archived e-mail account, it will be able to begin a search of such accounts.  Because Right Management does not have the personnel to conduct this search internally, it will need to hire a consultant for this purpose.  Right Management's estimate is that a consultant will charge at least $100 per hour per archived account needing to be searched.  Right Management also estimates that it will take approximately 30 hours of searching time per archived account, for a total of $3,000 per archived e-mail account.  Right Management cannot guarantee the retrieval of any particular item account or item.

Exhibit __3__, P. __17__

Right Management Responses
January 18, 2008

It is also possible that Right Management would need to purchase an additional server and software to create a location in order to recover the e-mail. The cost of doing so is not known at this time.

For Right Management to proceed with these searches is unduly burdensome and would require significant interruption of its business, and Right Management therefore objects to the request as being overbroad. Right Management has already invested significant time and expense in responding to this third party subpoena. There is no guarantee that Right Management could retrieve the items being requested or that the information retrieved would be relevant to the current MGA/Mattel/Carter Bryant dispute. If MGA agrees to bear the cost of conducting the search for possibly responsive e-mails, then Right Management will arrange for a search of e-mails to be done to determine whether it possesses any responsive e-mails.

**2. All documents referring or relating to any decision or contemplation by you or Mattel to place or refer any Mattel employees to Mattel competitors, including without limitation, MGA.**

RESPONSE: Right Management possesses notes of internal discussions with candidates in Mattel's career transition programs that were never shared with Mattel and which are deemed confidential and proprietary to Right Management, or are confidential employment records of non-parties having nothing to do with MGA's litigation with Mattel, and, in Right Management's view, are not relevant to the dispute between Mattel, MGA and Carter Bryant. Right Management objects to their production.

**3. All communications with Mattel referring or relating to Mattel employees taking or contemplating positions of employment with Mattel competitors, including without limitation, MGA.**

RESPONSE: Please see Response #1.

**4. All communications with Mattel employees referring or relating to their taking or contemplating positions of employment with Mattel competitors, including without limitation, MGA.**

RESPONSE: Please see Response #2.

**5. All communications with Mattel referring or relating to the preservation of Mattel confidential information, proprietary information and trade secrets during Mattel layoffs.**

RESPONSE: Right Management possesses no responsive documents.

**6. All communications with Mattel employees referring or relating to the preservation of Mattel confidential information, proprietary information and trade secrets during Mattel layoffs.**

2

Exhibit 3 , P. 18

Right Management Responses
January 18, 2008

RESPONSE:  Right Management possesses no responsive documents.

**7.   All communications with Mattel referring to the preservation of Mattel confidential information, proprietary information and trade secrets during or after the acceptance by Mattel employees of employment with Mattel competitors, including without limitation MGA.**

RESPONSE:  Right Management possesses no responsive documents.

**8.   All communications with Mattel employees referring or relating to the preservation of Mattel confidential information, proprietary information and trade secrets during or after their acceptance of employment with Mattel competitors, including without limitation MGA.**

RESPONSE:  Right Management possesses no responsive documents.

**9.  All communications with Mattel referring or relating to the compliance of Mattel employees with the disclosure obligations under the Conflict of Interest questionnaire.**

RESPONSE:  Right Management possesses no responsive documents.

**10.   All communications with Mattel employees referring or relating to the compliance with the disclosure obligations under the Conflict of Interest questionnaire.**

RESPONSE:  Right Management possesses no responsive documents.

**11.  All communications with Mattel referring or relating to Mattel's enforcement of the disclosure obligations of Mattel employees under the Conflict of Interest questionnaire.**

RESPONSE:  Right Management possesses no responsive documents.

**12.   All communications with Mattel employees referring or relating to Mattel's enforcement of the disclosure obligations under the Conflict of Interest questionnaire.**

RESPONSE:  Right Management possesses no responsive documents.

**13.  All communications with Mattel referring or relating to the compliance of Mattel employees with the confidentiality, transfer and no-conflict obligations under the Employee Inventions Agreement.**

RESPONSE:  Right Management possesses no responsive documents.

3

Exhibit 3 , P. 19

Right Management Responses
January 18, 2008

14. All communications with Mattel employees referring or relating to the compliance with the confidentiality, transfer and no-conflict obligations under the Employee Inventions Agreement.

RESPONSE: Right Management possesses no responsive documents.

15. All communications with Mattel referring or relating to Mattel's enforcement of the confidentiality, transfer and no-conflict obligations of Mattel employees under the Employee Inventions Agreement.

RESPONSE: Right Management possesses no responsive documents.

16. All communications with Mattel employees referring or relating to Mattel's enforcement of the confidentiality, transfer and no-conflict obligations under the Employee Inventions Agreement.

RESPONSE: Right Management possesses no responsive documents.

17. All communications with Mattel referring or relating to the compliance of Mattel employees with the disclosure obligations under the Proprietary Information Check-Out Form.

RESPONSE: Right Management possesses no responsive documents.

18. All communications with Mattel employees referring or relating to the compliance with the disclosure obligations under the Proprietary Information Check-Out form.

RESPONSE: Right Management possesses no responsive documents.

19. All communications with Mattel referring or relating to Mattel's enforcement of the disclosure obligations of Mattel employees under the Proprietary Information Check-Out form.

RESPONSE: Right Management possesses no responsive documents.

20. All communications with Mattel employees referring or relating to Mattel's enforcement of the disclosure obligations under the Proprietary Information Check-Out form.

RESPONSE: Right Management possesses no responsive documents.

4

Exhibit 3 , P. 20

Exhibit 4

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000

FAX: (213) 687-5600

www.skadden.com

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
NEWARK
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
(213) 687-5432
DIRECT FAX
(213) 621-5432
EMAIL ADDRESS
LETCHEVE@SKADDEN.COM

January 21, 2008

**VIA E-MAIL**

Ms. Cara Levy Braslow, Esq.
Right Management
1818 Market Street, 33rd Floor
Philadelphia, Pennsylvania 19103

RE:   *Bryant v. Mattel, Inc.*

Dear Ms. Braslow:

I am in receipt of Right Management's ("Right") responses and objections to the December 18, 2007 subpoena served on it by our client, MGA Entertainment, Inc. (the "Responses and Objections"). In reviewing the Responses and Objections, I was surprised by the sweeping objections and Right's wholesale refusal to produce responsive information. When you contacted me on January 14, 2008 (27 days after service of the subpoena) in search of an extension of time to respond to the subpoena, you assured me that Right had been working diligently and "as quickly as possible" to assemble all responsive information (both in paper and electronic formats). Nevertheless, you indicated that Right would need a few additional days to comply with the subpoena because, among other things, Right believed that certain personal information concerning individual Mattel employees would need to be redacted from the production set. In reliance on your representations, I agreed to give Right an extension until January 22, 2008 to produce the responsive information. Having received the extension, Right now appears to take the position that the subpoena is defective and, thus, it is under no obligation to comply with its terms.

Right's objections to the subpoena are without merit. Thus, I write to request a meet and confer pursuant to Section 5 of the Stipulation for Appointment of a

Exhibit 4 , P. 21

Cara Levy Braslow, Esq.
January 21, 2008
Page 2

Discovery Master (a copy of which is attached) to discuss Right's objections. Please let me know on which day this week you are available for a meet and confer.

In advance of the meet and confer, I respond briefly to Right's objections:

Overbroad And Burdensome

Right objects to Request Nos. 1 and 3 on grounds that they are impermissibly overbroad and unduly burdensome. Neither objection is appropriate, as both Requests are narrowly tailored to seek *only* communications between Right and Mattel with respect to several discrete topics. Indeed, Request No. 1 focuses on communications regarding Right's "participation or involvement in Mattel layoffs" and Request No. 2 specifically targets communications relating to Mattel employees "taking or contemplating position[s] of employment with Mattel competitors."

Right further claims that a search for electronic documents responsive to Request Nos. 1 and 3 would require significant business interruption and hence be unduly burdensome. As such, Right requests that MGA cover the cost of an outside consultant to review the e-mail archives of 25 Right employees who worked with Mattel (to the extent that the employees are still employed by Right). This request is unnecessary. Right is a large multi-national company employing thousands of employees in over 54 countries and, therefore, cannot credibly be heard to argue that it does "not have the personnel to conduct this search internally"− particularly since the review would be confined to the e-mail accounts of only a small number of already-identified Right employees.

Proprietary/Confidential Information

Right objects to Requests Nos. 1-4 on the basis that they seek proprietary information. As I informed you during our January 14 call, there is a Protective Order in the above-referenced litigation that permits third parties to designate documents they produce as confidential. I have attached a copy of the Protective Order for your convenience. The Protective Order should allay any concerns that Right may have regarding production of proprietary information.

Relevance

Finally, Right objects to Requests Nos. 2 and 4 on relevance grounds. This objection is likewise unfounded, as Mattel has alleged that MGA, a purported competitor of Mattel, acted inappropriately by employing certain of Mattel's former employees. Communications between Right and Mattel concerning the referral or placement of Mattel employees with Mattel competitors is therefore directly relevant to Mattel's claims in the litigation.

Exhibit 4 , P. 22

Cara Levy Braslow, Esq.
January 21, 2008
Page 3


       Should you have any questions prior to the meet and confer, please do not hesitate to contact me.  I look forward to hearing from you.


             Sincerely,


             Lance A. Etcheverry

Enclosures

cc:    B. Dylan Proctor


Exhibit _4_, P. _23_

ORIGINAL
LODGED



1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
       John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
       Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
       Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
5   865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
6   Facsimile:  (213) 443-3100

7   Attorneys for Mattel, Inc.

8   [Additional counsel listed on following page]

9

10                      UNITED STATES DISTRICT COURT

11                     CENTRAL DISTRICT OF CALIFORNIA

12   CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)

13                  Plaintiff,            Consolidated with
                                          Case No. CV 04-09059
14          v.                            Case No. CV 05-02727

15   MATTEL, INC., a Delaware             STIPULATION FOR APPOINTMENT
     corporation,                         OF A DISCOVERY MASTER; AND
16
                    Defendant.            [PROPOSED] ORDER
17
                                          Discovery Cutoff Date:  Not Set
18                                        Trial Date:  Not Set

19

20

21

22

23

24

25

26

27

28

                    Exhibit  4 , P.  24

                                    Case No. CV 04-09049 SGL (RNBx)
                            STIPULATION FOR APPOINTMENT OF A DISCOVERY
                            MASTER AND [PROPOSED] ORDER

1  LITTLER MENDELSON
      Robert F. Millman (Bar No. 062152)
2     Douglas A. Wickham (Bar No. 127268)
      Keith A. Jacoby (Bar No. 150233)
3  2049 Century Park East, 5th Floor
   Los Angeles, California  90067-3107
4  Telephone:  (310) 553-0308
   Facsimile:  (310) 553-5583
5
   Attorneys for Carter Bryant
6
   O'MELVENY & MYERS LLP
7     Diana M. Torres (Bar No. 162284)
   400 S. Hope Street
8  Los Angeles, California  90017
   Telephone:  (213) 430-6000
9  Facsimile:  (213) 430-6407

10 O'MELVENY & MYERS LLP
      Dale Cendali
11 Times Square Tower
   7 Times Square
12 New York, NY 10036

13 CHRISTENSEN, GLASER, FINK, JACOBS WEIL & SHAPIRO, LLP
      Patricia Glaser (Bar No. 55668)
14 10250 Constellation Boulevard - 19th Floor
   Los Angeles, CA 90067
15 Telephone:  (310) 553-3000
   Facsimile:  (310) 556-2920
16
   Attorneys for MGA Entertainment, Inc.
17

18

19

20

21

22

23

24

25

26

27

28
                    Exhibit _4_, P. _25_

                    STIPULATION FOR APPOINTMENT OF A DISCOVERY
                    MASTER AND [PROPOSED] ORDER

1  WHEREAS, the parties are in agreement that a discovery master should be

2 appointed in this matter to resolve any discovery disputes and to minimize the

3 burden on the Court; and

4  WHEREAS, the parties have agreed upon a nominee, Hon. Edward A. Infante

5 (Ret.), and he has agreed to serve as a discovery master in this matter;

6  NOW, THEREFORE, to facilitate the fair and efficient completion of pre-

7 trial discovery, the parties Mattel, Inc. and Carter Bryant and MGA Entertainment,

8 Inc., by and through their respective counsel of record, hereby stipulate and agree as

9 follows:

10  1.  The Discovery Master shall be appointed to assure and provide cost-

11 effective discovery and to minimize the burden of discovery disputes upon the

12 Court.  Any and all discovery motions and other discovery disputes in the above

13 captioned action shall be decided by a master ("Discovery Master") pursuant to

14 Federal Rule of Civil Procedure 53.  Any motions currently pending before

15 Magistrate Judge Block shall be transferred to the Discovery Master.  The moving

16 party shall provide to the Discovery Master all papers associated with each pending

17 motion.

18  2.  The Discovery Master shall be Hon. Edward A. Infante (Ret.).  His

19 business address is: Two Embarcadero Center, Suite 1500, San Francisco, CA

20 94111.

21  3.  Judge Infante shall serve as the Discovery Master until all issues herein

22 have been finally disposed of or determined, or until he shall withdraw in

23 accordance with applicable law.  If at any time he becomes unable to serve as the

24 Discovery Master, the parties shall confer to present an alternative agreed-upon

25 designee to the Court.  In the event that the parties cannot agree to an alternate

26 designee, then the Court shall appoint a Discovery Master.

27  4.  The Discovery Master shall have the authority to set the date, time, and

28 place for all hearings determined by the Discovery Master to be necessary; to

1   preside over hearings (whether telephonic or in-person); to take evidence in

2   connection with discovery disputes; to issue orders resolving discovery motions

3   submitted to the Discovery Master; to conduct telephonic conferences to resolve

4   discovery disputes arising during depositions; to issue orders awarding non-

5   contempt sanctions, including, without limitation, the award of attorney's fees, as

6   provided by Rules 37 and 45; and to prepare, file and serve other orders, reports and

7   recommendations, as appropriate.

8       5.      All discovery disputes shall be resolved by motion (except those arising

9   during a deposition which the Discovery Master determines can be resolved by

10  telephonic conference during the deposition). The moving party shall first identify

11  each dispute, state the relief sought, and identify the authority supporting the

12  requested relief in a meet and confer letter that shall be served on all parties by

13  facsimile or electronic mail. The parties shall have five court days from the date of

14  service of that letter to conduct an in-person conference to attempt to resolve the

15  dispute. If the dispute has not been resolved within five court days after such

16  service, the moving party may seek relief from the Discovery Master by formal

17  motion or letter brief, at the moving party's option. The opposing party shall have

18  five court days from the date of service of the motion or letter brief to submit a

19  formal opposition or response. Any reply brief or letter brief shall be served within

20  three court days from the date of service of a formal opposition or response. The

21  hearing on the motion shall take place within five court days of the service of any

22  reply brief or letter unless (a) the parties agree to another hearing date or agree that

23  no hearing is necessary; (b) the Discovery Master determines that no hearing is

24  necessary; or (c) the Discovery Master is not available, in which case the hearing

25  shall take place on the Discovery Master's first available date. The foregoing shall

26  not prohibit (i) the parties from agreeing to alternate procedures, or (ii) a party from

27  seeking the Discovery Master's immediate resolution of a dispute or resolution of a

28  dispute upon shortened time upon a showing of good cause why a party would be

Exhibit _4_, P. _27_           -4-

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

1  prejudiced absent prompt resolution.  Service of any document by fax or electronic

2  mail prior to 6:00 p.m. shall constitute service on that day.

3          6.        The Discovery Master's orders resolving discovery disputes, reports, or

4  recommendations pursuant to Rule 53(e) or (f) shall be treated as rulings made by a

5  Magistrate Judge of the United States District Court.  The Discovery Master shall

6  file each order, report, or recommendation pursuant to Rule 53(e) or (f) and serve

7  the parties within five court days of his/her decision on a matter.

8          7.        A court reporter shall transcribe any hearing or other proceeding before

9  the Discovery Master.

10         8.        The cost of any proceeding before the Discovery Master, including the

11 fees of the Discovery Master, the fees of court reporters who transcribe hearings or

12 other proceedings before the Discovery Master, and the fees of any other person

13 necessary to the efficient administration of the proceeding before the Discovery

14 Master, shall be paid one-half by Mattel, Inc., and one-half by MGA Entertainment,

15 Inc. and Carter Bryant unless, consistent with the Federal Rules of Civil Procedure,

16 the Discovery Master Orders otherwise.  By agreeing to share costs among the

17 parties, no party waives its right to seek recovery or reimbursement for such costs

18 from any other party.

19         9.        The Discovery Master shall be compensated according to his regular

20 hourly rate of $750.

21         10.       Pursuant to Federal Rule of Civil Procedure 53(b)(2), the Discovery

22 Master shall proceed with all reasonable diligence.

23         11.       Based on an affidavit filed by Hon. Edward A. Infante pursuant to

24 28 U.S.C. § 455 and Federal Rule of Civil Procedure 53(b)(3), the parties are not

25 aware that he has a relationship to the parties, to counsel, to the action, or to the

26 Court that would require disqualification of a judge under 28 U.S.C. § 455, and

27 based thereon the parties expressly waive any ground for disqualification disclosed

28 therein of Hon. Edward A. Infante to serve as master in these proceedings.

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

Exhibit  4 , P. 28                 - 5 -

12-08-2006  02:59pm  From-QUINN EMANUEL                    2136240643          T-707  P.008/010  F-346

12.    The Discovery Master shall not have ex parte communications with the Court, a party or counsel.

13.    The Discovery Master shall preserve and maintain all documents and materials submitted by the parties as well as all orders, reports, and recommendations issued by the Discovery Master. These documents, materials, orders, reports and recommendations shall be the record of the Discovery Master's activities, and shall be maintained in chronological order until the Discovery Master is informed by the parties that all issues herein have been finally disposed of and determined.

14.    The Discovery Master is hereby authorized to receive and consider information and documents designated "CONFIDENTIAL" and "CONFIDENTIAL-ATTORNEYS EYES ONLY" pursuant to the January 4, 2005 Stipulated Protective Order. The Discovery Master agrees to be bound by the January 4, 2005 Order.

15.    All third parties subject to discovery requests or deposition in this litigation shall be bound by the terms of this Stipulation and Order.

Dated: November ___, 2006                    O'MELVENY & MYERS LLP

                                            By: _____
                                            Diana Torres
                                            Attorneys for MGA Entertainment, Inc.

Dated: November ___, 2006                    LITTLER MENDELSON

                                            By: _____
                                            Douglas A. Wickham
                                            Attorneys for Carter Bryant

-6-

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

Exhibit _4_, P. _29_

Dated: ~~November~~ December 4, 2006

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP

By: _Jon D. Corey_
Jon D. Corey
Attorneys for Mattel, Inc.

## ORDER

The foregoing Stipulation for Appointment of a Discovery Master is SO
ORDERED *as modified.*

Dated: _12-6-06._                  _S. G. Larson_
Hon. Stephen G. Larson
United States District Court Judge

## CONSENT OF DISCOVERY MASTER

If appointed by the Court, I, the undersigned, consent to serve as Discovery
Master in the above referenced proceeding consistent with this Order.

Dated: _12-5-06_                   _Edward A. Infante_
Hon. Edward A. Infante (Ret.)

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

-7-

Exhibit _4_, P. _30_

RightFAX 1/6/2005 9:22 PAGE 002/023 Fax Server



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
  Jon D. Corey (Bar No. 185066)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant
Mattel, Inc.

FILED
CLERK, U.S. DISTRICT COURT

JAN - 4 2005

CENTRAL DISTRICT OF CALIFORNIA
CM                                    DEPUTY

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware Corporation,

                    Plaintiff,

          v.

CARTER BRYANT, an individual; and DOES 1 through 10, inclusive,

                    Defendants.

CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public,

                    Counter-Claimant,

          v.

MATTEL, INC., a Delaware Corporation,

                    Counter-Defendant.

CASE NO. CV 04-9059 NM (RNBx)

STIPULATED PROTECTIVE ORDER; AND

[PROPOSED] ORDER

[Discovery Matter]

DOCKETED ON CM

JAN - 5 2005

BY _____ 006

07272/625581.2

E 1/4/05

PROTECTIVE ORD

Exhibit 4, P. 31

54

## GOOD CAUSE STATEMENT

Plaintiff Mattel, Inc. ("Mattel"), defendant Carter Bryant, and intervenor-defendant MGA Entertainment, Inc. ("MGA") are parties to the above-captioned litigation (hereinafter, the "Action"). (Mattel, Carter Bryant and MGA Entertainment, Inc. are each referred to herein as a "Party" and collectively are the "Parties.")

In this Action, Mattel has alleged, and defendants dispute, that Bryant worked for and otherwise aided and assisted MGA while defendant was employed by Mattel as a designer, in violation of his contractual and other legal duties to Mattel.

All parties believe that they will or may be required to produce or disclose in this Action, and that nonparties may produce or disclose, information that is trade secret, proprietary, confidential and/or is of a private or personal nature and that, if disclosed in this Action without restriction on its use or further disclosure, may cause disadvantage, harm, damage and loss to the disclosing Party or to the disclosing nonparty.

In addition, the Parties are currently in a competitive relationship in the toy industry, with Mattel and MGA operating as a manufacturers and marketers of dolls, toys and other products and Bryant working at this time as a contractor for a Mattel competitor, MGA, and further anticipate that nonparty competitor information may be produced or disclosed in this Action.

In particular, without prejudice to any Party's right to object to or resist disclosure of such categories of information on relevance or any other grounds, the Parties currently anticipate that categories of such trade secret, proprietary, confidential and/or private documents and other information that may be disclosed in discovery by the Parties and by nonparties will or may include:

(1)     Personnel files and other private or confidential employment, contractor or vendor information;

07272/625581.2

-2-

PROTECTIVE ORDER

Exhibit 4, P. 32

(2)      The specific terms of agreements with, and information received from, third parties that a Party is required to disclose only under conditions of confidentiality;

(3)      Personal or private financial information, and confidential financial data that is not known generally to the trade or to competitors, including financial data relating to specific sales, cost and profit information for specific products and product lines; and

(4)  · Business plans and product information that are not known generally to the trade or to competitors, including non-public information relating to product development and design.

WHEREFORE, believing that good cause exists, the Parties HEREBY STIPULATE that, subject to the Court's approval, the following procedures shall be followed in this Action to facilitate the orderly and efficient discovery of relevant information while minimizing the potential for unauthorized disclosure or use of confidential or proprietary information:

## SCOPE OF THIS ORDER

1.      This Protective Order shall apply to trade secret, confidential and proprietary information, documents and things that are produced or disclosed in any form during the course of the Action by any Party or any nonparty:

(a)      through discovery;

(b)      in any pleading, document or other writing; or

(c)      in testimony given at a deposition.

(The foregoing information, documents and things shall be referred to hereinafter collectively as "Litigation Materials.")

07272/625581.2

-3-

PROTECTIVE ORDER

Exhibit _4_ , P. _33_

## CONFIDENTIAL AND ATTORNEYS' EYES ONLY INFORMATION

2.     Any Party or nonparty producing or disclosing Litigation Materials in this Action may designate such information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by designating it in the manner set forth in paragraph 3 below.   The designation of Litigation Materials as "CONFIDENTIAL" shall be limited to information which the disclosing Party or nonparty believes in good faith contains, constitutes or reveals confidential design, engineering or development information, confidential commercial information, non-public financial information, confidential or private information about current or former employees, contractors or vendors (including employee, contractor and vendor personnel records), or other information of a confidential, proprietary, private or personal nature.   The designation of information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be limited to trade secrets or other confidential commercial information, including without limitation non-public designs and drawings, which the disclosing Party or nonparty in good faith believes will result in competitive disadvantage or harm if disclosed to another Party to this Action without restriction upon use or further disclosure.   Information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may only be used and disclosed as provided in this Protective Order.

## MANNER OF DESIGNATION OF MATERIALS

3.     A Party or nonparty may designate Litigation Materials as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in the following manner:

(a)   <u>Documents or Things</u>.   "CONFIDENTIAL"   or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment may be

obtained by typing or stamping "CONFIDENTIAL" or "CONFIDENTIAL --
ATTORNEYS' EYES ONLY" on the particular document or thing.

        (b)    <u>Interrogatory Answers and Responses to Requests for
Admissions</u>. In answering any interrogatory or request for admission, or any
part thereof, a Party may designate its or his answer as "CONFIDENTIAL" or
"CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by affixing thereto the
legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES
ONLY." Such "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'
EYES ONLY" answers shall be made on separate pages from any other
answers or portions thereof that are not designated as "CONFIDENTIAL" or
"CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

        (c) .  <u>Deposition Testimony</u>.  Any Party or nonparty giving
deposition testimony in this Action may obtain "CONFIDENTIAL" or
"CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment therefor by
designating, during the course of that testimony, for which "CONFIDENTIAL"
or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment is desired,
the testimony that is claimed to be "CONFIDENTIAL" or "CONFIDENTIAL
-- ATTORNEYS' EYES ONLY," or alternatively by designating the entire
testimony to be "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'
EYES ONLY," subject to a good faith obligation to identify any non-
confidential portions of the testimony (and/or any lesser "CONFIDENTIAL"
portions in the event that the entire testimony is designated "CONFIDENTIAL
-- ATTORNEYS' EYES ONLY") within fourteen (14) calendar days after
receipt of the transcript of the testimony.  The reporter shall separately
transcribe and bind the testimony so designated as "CONFIDENTIAL" and
"CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and shall mark the face
of the separate bound transcript containing such testimony with the term
"CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

A Party or nonparty also may make the above-referenced designation of confidentiality in writing and within fourteen (14) calendar days of the receipt by said Party or nonparty of the transcript of said testimony. In that event, said portion of the transcript will be treated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" under the provisions of this Protective Order, except that it will not be separately bound. If, during the course of deposition testimony, any Party or nonparty reasonably believes that the answer to a question will result in the disclosure of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information, all persons other than those persons entitled to receive such information pursuant to paragraphs 5 and 6 hereof shall be excluded from the room in which the deposition testimony is given.     Unless previously designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," all transcripts of deposition testimony and any related exhibits, and all information adduced in deposition, shall, in their entirety, be treated as "CONFIDENTIAL" for a period of fourteen (14) calendar days after receipt of the transcript by counsel for the designating Party or nonparty. The Party or nonparty designating the testimony or information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may, within that fourteen (14) calendar day period described above, specifically designate information contained in the transcript(s) and/or exhibit(s) as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," whether or not previously designated as such, by notifying all Parties in writing of the portions of the transcript or exhibit which contains such information. Each Party shall attach a copy of such written statement to the face page of the transcript or exhibit and to each copy in its or his possession, custody or control. Thereafter, these portions of the transcript or exhibits designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be treated in

07272/625581.2

-6-

PROTECTIVE ORDER

Exhibit  4 , P.  36

accordance with the terms of this Protective Order. In addition, the provisions of Paragraph 3(e) for later designating transcripts or exhibits shall apply after the expiration of the fourteen (14) calendar day period described in this Paragraph 3(c).

(d)  Typing or stamping the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" upon the first page of a collection of Litigation Materials which are bound together shall have the effect of designating such collection in its entirety as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."  In the case of disks, tapes, CD-ROMs, DVDs and other tangible storage media or devices, labeling, stamping or marking the outside of such disk, tape, CD-ROM, DVD or other medium or device with the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall have the effect of designating the entire contents of such disk, tape, CD-ROM, DVD or other medium or device, and all data stored thereupon, as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," as the case may be.

(e)  Except as otherwise provided in Paragraph 3(c) of this Protective Order, the receiving Party shall not reveal any information produced for a period of seven (7) calendar days following receipt. Failure to designate a document, thing or other information as CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in accordance with this Protective Order shall not preclude any Party or nonparty desiring to so designate the document, thing or information from so designating thereafter; provided that the Party or nonparty proceeds promptly after discovery of any omission of marking, in good faith marks the document, thing or other information and requests, in writing, that each receiving Party so mark and treat the document, thing or other information in accordance with this Protective Order. Thereafter, the document, thing or other information shall

Exhibit _4_, P. _37_

1    be fully subject to this Protective Order.  No Party shall incur liability for any
2    disclosures made prior to notice of such designation, except to the extent that
3    any such disclosures occurred prior to the seven (7) day period described above
4    or prior to such other time periods as are provided by this Protective Order,
5    including without limitation such time periods as are provided in Paragraph
6    3(c) above.

7

8    <u>RESTRICTIONS ON DISCLOSURE OF DESIGNATED MATERIALS</u>

9

10          4.    Any Litigation Materials produced or disclosed in this Action,
11   whether  or  not  designated  "CONFIDENTIAL"  or  "CONFIDENTIAL --
12   ATTORNEYS' EYES ONLY," may only be used by the receiving Party of such
13   information for purposes of litigation and not for any other purpose, including
14   without limitation for any business or trade purpose.  As used herein, the term
15   "litigation" shall mean preparation for, participation in and prosecution and defense
16   of any suit, motion, trial, appeal, hearing, review or other judicial proceeding or in
17   connection with any mediation or other alternative dispute resolution procedure that
18   this or any other court may order or that the Parties may agree to.

19          5.    Subject to Paragraph 7 herein, and unless as otherwise ordered by
20   the Court, Litigation Materials designated as "CONFIDENTIAL" shall not be
21   disclosed to any person other than:

22               (a)   the attorneys for the Parties and their partners, shareholders,
23   associates, document clerks and paralegals who are necessary to assist such
24   attorneys;

25               (b)   secretaries, stenographers and other office or clerical
26   personnel employed by said attorneys and who are necessary to assist such
27   attorneys;

28

07272/625581.2

-8-

PROTECTIVE ORDER

Exhibit  4 , P.  38

(c)     a named Party or officers or employees of a named Party, to the extent deemed necessary by their respective attorneys for purposes assisting in litigation;

(d)     the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL" information;

(e)     such other persons as may be consented to by the Party or nonparty designating such information as "CONFIDENTIAL" information;

(f)     outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(g)     professional court reporters engaged to transcribe deposition testimony, professional videographers engaged to videotape deposition testimony and translators;

(h)     independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for purposes of litigation; and

(i)     non-party fact witnesses in a deposition, provided, however, that such persons may not retain such "CONFIDENTIAL" information unless otherwise authorized to receive it. If the attendance of a non-party fact witness at a deposition can only be obtained through compulsory process, the witness need not execute an Assurance of Compliance in the form attached as Exhibit A, provided that: (1) the witness acknowledges his obligation to maintain the confidentiality of "CONFIDENTIAL" information under oath; and (2) such "CONFIDENTIAL" information may only be shown to the witness during the deposition.

07272/625581.2

-9-

PROTECTIVE ORDER

Exhibit _4_, P. _39_

6. Subject to paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be disclosed to any person other than:

(a) the attorneys for the Parties (but not including in-house counsel for the Parties or any attorney who is an officer, director, shareholder or employee of any Party or its corporate affiliates) and their partners, shareholders, associates, document clerks and paralegals who are assigned to and necessary to assist such attorneys. For the purposes of this subparagraph, "affiliate" shall mean any corporate parent or subsidiary of any Party, or any other entity that is under common control with any Party or corporate parent or subsidiary of any Party, or any of their successors or predecessors in interest;

(b) secretaries, stenographers and other office or clerical personnel employed by said attorneys and who assist them with respect to litigation;

(c) the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(d) such other persons as may be consented to by the Party designating such information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(e) outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(f) independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for the purposes of litigation; and

07272/625581.2

-10-

PROTECTIVE ORDER

Exhibit 4 , P. 40

(g)   professional court reporters engaged to transcribe deposition testimony, professional videographers engaged to videotape deposition testimony and translators.

7.   None of the following is bound by or obligated under this Order in any respect and specifically are not bound or obligated to treat information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in any particular manner: The Court hearing this Action (including the Court having jurisdiction of any appeal), Court personnel, court reporters working for the Court, translators working for the Court, or any jury impaneled in this Action.

8.   Other than those identified in Paragraph 7 above, each person to whom information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" is disclosed shall be informed of the terms of this Protective Order and agree to be bound by it before disclosure to such persons of any such information. The persons described in Paragraphs 5(f), 5(h), 6(e) and 6(f) shall not have access to either "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information, as the case may be, until they have certified that they have read this Protective Order and have manifested their assent to be bound thereby by signing a copy of the Assurance of Compliance attached hereto as Exhibit A. Once a person has executed such an Assurance of Compliance, it shall not be necessary for that person to sign a separate Assurance of Compliance each time that person is subsequently given access to confidential material.  Any person who signed an Assurance of Compliance in connection with the Stipulation for Protection of Confidential Information and Protective Order filed September 16, 2004 in <u>Mattel Inc. v. Bryant</u>, Case No. BC 314398, pending in Los Angeles County Superior Court, need not re-sign the Assurance of Compliance attached hereto but shall, by virtue of his or her prior signature, be deemed to have signed the attached Assurance of Compliance.

9.    The failure of any Party to object to the designation   of information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be deemed an admission that such information qualifies for such designation.

10.    If any Party wishes to have any information, document or testimony marked "CONFIDENTIAL" or  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by another Party or nonparty reclassified as non-confidential, or from "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" to "CONFIDENTIAL," the Parties and/or relevant nonparty or nonparties will confer and try to reach agreement. If the Parties and/or relevant nonparty or nonparties cannot reach agreement, either Party and/or the relevant nonparty or nonparties may apply to the Court to resolve the matter in accordance with the Local Rules.  Unless and until this Court enters an Order changing the designation of the information, it shall be afforded the treatment prescribed in this Protective Order for its designation.

11.    Nothing contained in this Protective Order shall restrict or prevent any Party or nonparty from disclosing or otherwise using its or his own Litigation Materials which that Party or nonparty produces or discloses in this action.

12.    The inadvertent or unintentional disclosure by a producing Party or nonparty of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" Litigation Materials during the course of this litigation, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a Party's or nonparty's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter.  Counsel for the Parties and/or nonparties shall in any event, to the extent possible, upon discovery of inadvertent error, cooperate to restore the confidentiality of the "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material that was inadvertently or unintentionally disclosed.

07272/625581.2

-12-

PROTECTIVE ORDER

13.     If a Party or nonparty through inadvertence produces or provides discovery that it, he or she believes is subject to a claim of attorney-client privilege or work product immunity, the producing Party or nonparty may give written notice to the receiving Party that the document is subject to a claim of attorney-client privilege or work product immunity and request that the document be returned to the producing Party or nonparty. The receiving Party shall promptly return to the producing Party or nonparty the inadvertedly disclosed document and all copies of such document. Return of the document by the receiving Party shall not constitute an admission or concession, or permit any inference, that the returned document is, in fact, properly subject to a claim of attorney-client privilege or work product immunity, nor shall it foreclose any Party from moving the Court for an Order that such document has been improperly designated or should be producible for reasons other than a waiver caused by the inadvertent production.

14.     Nothing contained in this Protective Order shall affect the right of any Party or nonparty to make any objection, claim any privilege, or otherwise contest any request for production of documents, interrogatory, request for admission, or question at a deposition or to seek further relief or protective orders from the Court in accordance with the <u>Federal Rules of Civil Procedure</u> and the <u>Local Rules</u>. Nothing in this Protective Order shall constitute an admission or waiver of any claim or defense by any Party.

## <u>FILING AND USE IN COURT OF DESIGNATED MATERIALS</u>

15.     Except when the filing under seal is otherwise authorized by statute or federal rule, the Parties shall seek the Court's prior approval for the filing under seal of pleadings and other documents containing properly designated "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information in accordance with the procedures set forth in <u>Local Rule</u> 79-5.1, as such

07272/625581.2

-13-

PROTECTIVE ORDER

Exhibit _4_, P. _43_

1   Rule may be amended from time to time. Prior to the time that a Party receiving the

2   "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY"

3   information from any other Party files with the Court an application and the other

4   materials required by Local Rule 79-5.1, as such Rule may be amended from time to

5   time, to seal the producing Party's confidential information, the receiving Party shall

6   consult with the producing Party's attorney to determine whether the producing Party

7   will re-designate the previously designated confidential information so as to avoid the

8   need for the request to file such information under the seal. Upon the default of a

9   Party to seek the Court's approval to file a document containing "CONFIDENTIAL"

10  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information under seal, any

11  Party may subsequently seek the approval of the Court to file that document under

12  seal, in accordance with the procedures set forth in Local Rule 79-5.1, as such Rule

13  may be amended from time to time.

14

15          **THIRD-PARTY REQUEST FOR DESIGNATED MATERIALS**

16

17          16.     If any Party or nonparty receives a subpoena or document request

18  from a third party which purports to require the production of materials in that Party's

19  possession which have previously been designated as "CONFIDENTIAL" or

20  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by any other Party or nonparty,

21  the Party or nonparty receiving such subpoena or document request (a) shall object

22  and refuse to produce documents absent a Court Order or the consent of the Party or

23  nonparty who designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL

24  -- ATTORNEYS' EYES ONLY", (b) immediately notify the Party or nonparty who

25  designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL --

26  ATTORNEYS' EYES ONLY" of the receipt of said subpoena or document request,

27  and (c) shall not oppose any effort by the Party or nonparty which designated the

28  material as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

07272/625581.2

-14-

PROTECTIVE ORDER

Exhibit 4 , P. 44

RightFAX                1/6/2005 9:22        PAGE 016/023    Fax Server

1  ONLY" to quash the subpoena or obtain a protective order limiting discovery of such

2  material.

3

### DISCOVERY FROM NONPARTIES

5

6          17.    Discovery of nonparties may involve receipt of information,

7  documents, things or testimony which include or contain "CONFIDENTIAL" or

8  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" materials or information.  A

9  nonparty producing such material in this case may designate as "CONFIDENTIAL"

10 or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" some or all of the material it

11 produces in the same manner provided for in this Protective Order with respect to

12 material furnished by or on behalf of the Parties.  Any Party may also designate as

13 "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any

14 materials or information produced by a nonparty that constitute "CONFIDENTIAL"

15 or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material of the designating

16 Party under Paragraph 2 of this Protective Order, regardless of whether the producing

17 nonparty has also so designated.  In addition, a nonparty may also designate as

18 "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any

19 materials or information produced by a Party that constitute "CONFIDENTIAL" or

20 "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material or information of such

21 nonparty under Paragraph 2 of this Protective Order, regardless of whether the

22 producing Party has also so designated.  In either such an event, the designation

23 providing for the greater level of protection for the material information shall control,

24 subject to Paragraph 10 of this Protective Order.  Nonparty materials designated

25 "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by a

26 nonparty or Party shall be governed by the terms of this Protective Order.

27

28

PROTECTIVE ORDER

Exhibit 4, P. 45

## CONCLUSION OF LITIGATION

18.    Within thirty (30) days of the conclusion of this Action, including any post-trial motions or appellate proceedings relating thereto, all documents, transcripts or other things or information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," and all copies thereof, shall be returned to the attorneys for the Party or nonparty furnishing the same, or shall be destroyed by the attorneys having such documents in their possession. In addition, all summaries or other materials containing or disclosing information contained in such documents, answers, transcripts or other things shall be destroyed; provided, however, that outside counsel for each Party may retain one complete and unredacted set of pleadings and papers filed with the Court or served on the other Parties. Such retained copy of pleadings and papers shall be maintained in a file accessible only to outside counsel bound by this Protective Order. This Protective Order shall continue to be binding after the conclusion of this Action.

## AMENDMENT OF THIS AGREEMENT

19.    The provisions of this Stipulation and Protective Order may be modified at any time by stipulation of the Parties as approved by Order of the Court. In addition, a Party may at any time apply to the Court for modification of this

07272/625581.2

-16-

PROTECTIVE ORDER

Exhibit 4 , P. 46

1  Stipulation and Protective Order pursuant to a motion brought in accordance with the

2  rules of the Court.

4  **IT IS SO STIPULATED.**

6  DATED: December 22, 2004     QUINN EMANUEL URQUHART
                                OLIVER & HEDGES, LLP

8

9  By _____
         Jon Corey
10        Attorneys for Plaintiff
          Mattel, Inc.

11

12  DATED: December __, 2004     LITTLER MENDELSON

13  By _____
          Douglas A. Wickham
14        Attorneys for Defendant
          Carter Bryant

15

16  DATED: December __, 2004     O'MELVENY & MEYERS, LLP

17

18  By _____
          Diana M. Torres
19        Attorneys for Interventor-Defendant
          MGA Entertainment, Inc.

20

21

22  **IT IS SO ORDERED.**

23  DATED: ___1/4/05___

24                               THE HONORABLE ROBERT N. BLOCK
25                               United States Magistrate Judge

26

27

28

07272/625581.2                   -17-

                                         PROTECTIVE ORDER

Exhibit  4 , P. 47

1   Stipulation and Protective Order pursuant to a motion brought in accordance with the

2   rules of the Court.

3

4        IT IS SO STIPULATED.

5

6   DATED: December __, 2004          QUINN EMANUEL URQUHART
                                      OLIVER & HEDGES, LLP
7

8                                     By
9                                        Jon Corey
                                         Attorneys for Plaintiff
10                                       Mattel, Inc.

11  DATED: December 2l, 2004          LITTLER MENDELSON

12

13                                    By
14                                       Douglas A. Wickham
                                         Attorneys for Defendant
15                                       Carter Bryant

16  DATED: December __, 2004          O'MELVENY & MEYERS, LLP

17

18                                    By
                                         Diana M. Torres
19                                       Attorneys for Intervenor-Defendant
                                         MGA Entertainment, Inc.
20

21

22        IT IS SO ORDERED.

23

24  DATED: _____            THE HONORABLE ROBERT N. BLOCK
                                       United States Magistrate Judge
25

26

27

28

07272/625581.2                        -17-

                                                           PROTECTIVE ORDER

Exhibit _4_, P. _48_

1  Stipulation and Protective Order pursuant to a motion brought in accordance with the

2  rules of the Court.

3

4  **IT IS SO STIPULATED.**

5

6  DATED: December ___, 2004          QUINN EMANUEL URQUHART
                                       OLIVER & HEDGES, LLP
7

8                                      By
9                                         Jon Corey
                                          Attorneys for Plaintiff
10                                        Mattel, Inc.

11
   DATED: December ___, 2004          LITTLER MENDELSON
12

13                                     By
                                          Douglas A. Wickham
14                                        Attorneys for Defendant
                                          Carter Bryant
15

16  DATED: December ___, 2004          O'MELVENY & MEYERS, LLP

17                                     By
18                                        Diana M. Torres
                                          Attorneys for Intervenor-Defendant
19                                        MGA Entertainment, Inc.

20

21

22  **IT IS SO ORDERED.**

23

24  DATED: _____          _____
                                          THE HONORABLE ROBERT N. BLOCK
25                                        United States Magistrate Judge

26

27

28

07272/625581.2                              -17-

                                                         **PROTECTIVE ORDER**

Exhibit  4 , P. 49

## EXHIBIT A

## ASSURANCE OF COMPLIANCE

I, _____, under penalty of perjury under the laws of the United States of America, declare and state as follows:

I reside at _____, in the City/County of _____ and State/Country of _____;

I have read the annexed Stipulated Protective Order, ("Protective Order") dated _____ in the action entitled *Mattel, Inc. v. Carter Bryant,* Case No. CV 04-9059 NM (RNBx), which currently is pending in the United States District Court for the Central District of California; that I am fully familiar with and agree to comply with and be bound by the provisions of that Protective Order;

I will not divulge to persons other than those specifically authorized by the Protective Order, and will not copy or use any Litigation Materials designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" except solely as permitted by the Protective Order; and

I consent to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing said Protective Order, enjoining any violation or threatened violation of the Protective Order or seeking damages for the breach of said Protective Order.

_____
(Signature)

Exhibit 4, P. 50

**PROTECTIVE ORDER**

Exhibit 5

**Etcheverry, Lance A (LAC)**

**From:** Plambeck, Cheryl [CPlambeck@dglaw.com]
**Sent:** Tuesday, February 05, 2008 11:41 AM
**To:** Etcheverry, Lance A (LAC)
**Subject:** RE: Right Management Subpoena - follow up

Lance,

Right Management has identified so far approximately 35 employees who worked on Mattel-related projects who have active e-mail accounts with Right. There may be additional Right employees who worked on Mattel but who left within the past year, and therefore have no active e-mail account with Right, and Right is still working on identifying how many such employees there may be.

I'm out of the office (jury duty) today but hope to be back in the office by tomorrow. I will be in touch with you later this week after we learn more.

Thanks,
Cheryl

---

**From:** Plambeck, Cheryl
**Sent:** Friday, February 01, 2008 12:33 PM
**To:** 'Etcheverry, Lance A'
**Cc:** 'Michael T Zeller'; John Gordon
**Subject:** Right Management Subpoena - follow up

Lance,

Right Management confirmed that it did work in the past 12 months for Mattel. Right is in the process of identifying all of the people who worked on Mattel-related projects in that period. There are well over 100 and Right's IT department is attempting to ascertain which of them have active e-mail accounts with Right. Then HR will have to pull employment files for the rest of them and determine whether any are/were employees as opposed to independent contractors, and, if employees, whether they left Right within the past year. These tasks are time-consuming and will not likely be completed today.

At my request, Mattel's counsel has agreed to stipulate to a further two-week extension of time for you to make any compulsion motions so that we can continue to meet and confer without being under the threat of an immediate motion from you. Please send a stip to John Gordon.

I'll be in touch with you next week after Right has completed the steps noted above. Assuming that there are e-mail accounts, as we discussed yesterday, the issues to be discussed will include payment by your clients for restoration and searching of the e-mail accounts, and establishment of an appropriately narrow keyword list for same.

Thanks,

Cheryl

Cheryl M. Plambeck, Esq.
Davis & Gilbert LLP
1740 Broadway
New York, New York 10019
Tel. (212) 468-4965

Exhibit _5_, P. _51_

2/26/2008

**<u>CONFIDENTIAL – ATTORNEYS' EYES ONLY</u>**

Exhibit 6

**<u>CONFIDENTIAL – ATTORNEYS' EYES ONLY</u>**

Exhibit 7

# EXHIBIT E

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2     Michael T. Zeller (Bar No. 196417)
      Jon D. Corey (Bar No. 185066)
3   865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
4   Telephone: (213) 443-3000
    Facsimile: (213) 443-3100
5
    Attorneys for Plaintiff and Counter-Defendant
6   Mattel, Inc.
7
8                        UNITED STATES DISTRICT COURT
9                       CENTRAL DISTRICT OF CALIFORNIA
10
11  MATTEL, INC., a Delaware            )   CASE NO. CV 04-9059 NM (RNBx)
    Corporation,                        )
12                                      )   STIPULATED PROTECTIVE
                         Plaintiff,     )   ORDER; AND
13                                      )
          v.                            )   [PROPOSED] ORDER
14                                      )
    CARTER BRYANT, an individual; and   )   [Discovery Matter]
15  DOES 1 through 10, inclusive,       )
16                       Defendants.    )
17  _____ )
18  CARTER BRYANT, on behalf of         )
    himself, all present and former     )
    employees of Mattel, Inc., and the  )
19  general public,                     )
20                     Counter-Claimant,)
21        v.                            )
22  MATTEL, INC., a Delaware            )
    Corporation,                        )
23                                      )
                   Counter-Defendant.   )
24  _____ )
25
26
27
28

07272/625591.2

PROTECTIVE ORD

## GOOD CAUSE STATEMENT

Plaintiff Mattel, Inc. ("Mattel"), defendant Carter Bryant, and intervenor-defendant MGA Entertainment, Inc. ("MGA") are parties to the above-captioned litigation (hereinafter, the "Action"). (Mattel, Carter Bryant and MGA Entertainment, Inc. are each referred to herein as a "Party" and collectively are the "Parties.")

In this Action, Mattel has alleged, and defendants dispute, that Bryant worked for and otherwise aided and assisted MGA while defendant was employed by Mattel as a designer, in violation of his contractual and other legal duties to Mattel.

All parties believe that they will or may be required to produce or disclose in this Action, and that nonparties may produce or disclose, information that is trade secret, proprietary, confidential and/or is of a private or personal nature and that, if disclosed in this Action without restriction on its use or further disclosure, may cause disadvantage, harm, damage and loss to the disclosing Party or to the disclosing nonparty.

In addition, the Parties are currently in a competitive relationship in the toy industry, with Mattel and MGA operating as a manufacturers and marketers of dolls, toys and other products and Bryant working at this time as a contractor for a Mattel competitor, MGA, and further anticipate that nonparty competitor information may be produced or disclosed in this Action.

In particular, without prejudice to any Party's right to object to or resist disclosure of such categories of information on relevance or any other grounds, the Parties currently anticipate that categories of such trade secret, proprietary, confidential and/or private documents and other information that may be disclosed in discovery by the Parties and by nonparties will or may include:

(1)   Personnel files and other private or confidential employment, contractor or vendor information;

07272/625581.2

-2-

PROTECTIVE ORDER

1           (2)    The specific terms of agreements with, and information received

2   from, third parties that a Party is required to disclose only under conditions of

3   confidentiality;

4           (3)    Personal or private financial information, and confidential

5   financial data that is not known generally to the trade or to competitors, including

6   financial data relating to specific sales, cost and profit information for specific

7   products and product lines; and

8           (4) · Business plans and product information that are not known

9   generally to the trade or to competitors, including non-public information relating to

10  product development and design.

11

12          WHEREFORE, believing that good cause exists, the Parties HEREBY

13  STIPULATE that, subject to the Court's approval, the following procedures shall be

14  followed in this Action to facilitate the orderly and efficient discovery of relevant

15  information while minimizing the potential for unauthorized disclosure or use of

16  confidential or proprietary information:

17

18          <u>SCOPE OF THIS ORDER</u>

19

20          1.    This Protective Order shall apply to trade secret, confidential and

21  proprietary information, documents and things that are produced or disclosed in any

22  form during the course of the Action by any Party or any nonparty:

23          (a)    through discovery;

24          (b)    in any pleading, document or other writing; or

25          (c)    in testimony given at a deposition.

26  (The foregoing information, documents and things shall be referred to hereinafter

27  collectively as "Litigation Materials.")

28

-3-

PROTECTIVE ORDER

<u>CONFIDENTIAL AND ATTORNEYS' EYES ONLY INFORMATION</u>

   2. Any Party or nonparty producing or disclosing Litigation Materials in this Action may designate such information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by designating it in the manner set forth in paragraph 3 below. The designation of Litigation Materials as "CONFIDENTIAL" shall be limited to information which the disclosing Party or nonparty believes in good faith contains, constitutes or reveals confidential design, engineering or development information, confidential commercial information, non-public financial information, confidential or private information about current or former employees, contractors or vendors (including employee, contractor and vendor personnel records), or other information of a confidential, proprietary, private or personal nature. The designation of information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be limited to trade secrets or other confidential commercial information, including without limitation non-public designs and drawings, which the disclosing Party or nonparty in good faith believes will result in competitive disadvantage or harm if disclosed to another Party to this Action without restriction upon use or further disclosure. Information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may only be used and disclosed as provided in this Protective Order.

<u>MANNER OF DESIGNATION OF MATERIALS</u>

   3. A Party or nonparty may designate Litigation Materials as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in the following manner:

     (a) <u>Documents or Things</u>. "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment may be

1    obtained by typing or stamping "CONFIDENTIAL" or "CONFIDENTIAL --

2    ATTORNEYS' EYES ONLY" on the particular document or thing.

3          (b)   <u>Interrogatory Answers and Responses to Requests for</u>

4    <u>Admissions</u>. In answering any interrogatory or request for admission, or any

5    part thereof, a Party may designate its or his answer as "CONFIDENTIAL" or

6    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by affixing thereto the

7    legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

8    ONLY." Such "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'

9    EYES ONLY" answers shall be made on separate pages from any other

10    answers or portions thereof that are not designated as "CONFIDENTIAL" or

11    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

12          (c) .  <u>Deposition Testimony</u>.  Any Party or nonparty giving

13    deposition testimony in this Action may obtain "CONFIDENTIAL" or

14    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment therefor by

15    designating, during the course of that testimony, for which "CONFIDENTIAL"

16    or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment is desired,

17    the testimony that is claimed to be "CONFIDENTIAL" or "CONFIDENTIAL

18    -- ATTORNEYS' EYES ONLY," or alternatively by designating the entire

19    testimony to be "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'

20    EYES ONLY," subject to a good faith obligation to identify any non-

21    confidential portions of the testimony (and/or any lesser "CONFIDENTIAL"

22    portions in the event that the entire testimony is designated "CONFIDENTIAL

23    -- ATTORNEYS' EYES ONLY") within fourteen (14) calendar days after

24    receipt of the transcript of the testimony. The reporter shall separately

25    transcribe and bind the testimony so designated as "CONFIDENTIAL" and

26    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and shall mark the face

27    of the separate bound transcript containing such testimony with the term

28    "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

A Party or nonparty also may make the above-referenced designation of confidentiality in writing and within fourteen (14) calendar days of the receipt by said Party or nonparty of the transcript of said testimony. In that event, said portion of the transcript will be treated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" under the provisions of this Protective Order, except that it will not be separately bound. If, during the course of deposition testimony, any Party or nonparty reasonably believes that the answer to a question will result in the disclosure of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information, all persons other than those persons entitled to receive such information pursuant to paragraphs 5 and 6 hereof shall be excluded from the room in which the deposition testimony is given.    Unless previously designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," all transcripts of deposition testimony and any related exhibits, and all information adduced in deposition, shall, in their entirety, be treated as "CONFIDENTIAL" for a period of fourteen (14) calendar days after receipt of the transcript by counsel for the designating Party or nonparty. The Party or nonparty designating the testimony or information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may, within that fourteen (14) calendar day period described above, specifically designate information contained in the transcript(s) and/or exhibit(s) as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," whether or not previously designated as such, by notifying all Parties in writing of the portions of the transcript or exhibit which contains such information. Each Party shall attach a copy of such written statement to the face page of the transcript or exhibit and to each copy in its or his possession, custody or control. Thereafter, these portions of the transcript or exhibits designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be treated in

-6-

PROTECTIVE ORDER

1  accordance with the terms of this Protective Order. In addition, the provisions
2  of Paragraph 3(e) for later designating transcripts or exhibits shall apply after
3  the expiration of the fourteen (14) calendar day period described in this
4  Paragraph 3(c).

5         (d)   Typing or stamping the legend "CONFIDENTIAL" or
6  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" upon the first page of a
7  collection of Litigation Materials which are bound together shall have the
8  effect of designating such collection in its entirety as "CONFIDENTIAL" or
9  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY." In the case of disks,
10  tapes, CD-ROMs, DVDs and other tangible storage media or devices, labeling,
11  stamping or marking the outside of such disk, tape, CD-ROM, DVD or other
12  medium or device with the legend "CONFIDENTIAL" or "CONFIDENTIAL
13  -- ATTORNEYS' EYES ONLY" shall have the effect of designating the entire
14  contents of such disk, tape, CD-ROM, DVD or other medium or device, and
15  all data stored thereupon, as "CONFIDENTIAL" or "CONFIDENTIAL --
16  ATTORNEYS' EYES ONLY," as the case may be.

17         (e)   Except as otherwise provided in Paragraph 3(c) of this
18  Protective Order, the receiving Party shall not reveal any information produced
19  for a period of seven (7) calendar days following receipt. Failure to designate
20  a document, thing or other information as CONFIDENTIAL" or
21  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in accordance with this
22  Protective Order shall not preclude any Party or nonparty desiring to so
23  designate the document, thing or information from so designating thereafter;
24  provided that the Party or nonparty proceeds promptly after discovery of any
25  omission of marking, in good faith marks the document, thing or other
26  information and requests, in writing, that each receiving Party so mark and
27  treat the document, thing or other information in accordance with this
28  Protective Order. Thereafter, the document, thing or other information shall

PROTECTIVE ORDER

1    be fully subject to this Protective Order.  No Party shall incur liability for any

2    disclosures made prior to notice of such designation, except to the extent that

3    any such disclosures occurred prior to the seven (7) day period described above

4    or prior to such other time periods as are provided by this Protective Order,

5    including without limitation such time periods as are provided in Paragraph

6    3(c) above.

7

8    <u>RESTRICTIONS ON DISCLOSURE OF DESIGNATED MATERIALS</u>

9

10            4.      Any Litigation Materials produced or disclosed in this Action,

11   whether or not designated "CONFIDENTIAL" or "CONFIDENTIAL --

12   ATTORNEYS' EYES ONLY," may only be used by the receiving Party of such

13   information for purposes of litigation and not for any other purpose, including

14   without limitation for any business or trade purpose.  As used herein, the term

15   "litigation" shall mean preparation for, participation in and prosecution and defense

16   of any suit, motion, trial, appeal, hearing, review or other judicial proceeding or in

17   connection with any mediation or other alternative dispute resolution procedure that

18   this or any other court may order or that the Parties may agree to.

19            5.      Subject to Paragraph 7 herein, and unless as otherwise ordered by

20   the Court, Litigation Materials designated as "CONFIDENTIAL" shall not be

21   disclosed to any person other than:

22                   (a)      the attorneys for the Parties and their partners, shareholders,

23            associates, document clerks and paralegals who are necessary to assist such

24            attorneys;

25                   (b)      secretaries, stenographers and other office or clerical

26            personnel employed by said attorneys and who are necessary to assist such

27            attorneys;

28

07272/625581.2                              -8-

PROTECTIVE ORDER

NightFAX                    1/6/2005 9:22   Page 010/023   Fax Server

(c)     a named Party or officers or employees of a named Party, to the extent deemed necessary by their respective attorneys for purposes assisting in litigation;

(d)     the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL" information;

(e)     such other persons as may be consented to by the Party or nonparty designating such information as "CONFIDENTIAL" information;

(f)     outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(g)     professional court reporters engaged to transcribe deposition testimony, professional videographers engaged to videotape deposition testimony and translators;

(h)     independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for purposes of litigation; and

(i)     non-party fact witnesses in a deposition, provided, however, that such persons may not retain such "CONFIDENTIAL" information unless otherwise authorized to receive it. If the attendance of a non-party fact witness at a deposition can only be obtained through compulsory process, the witness need not execute an Assurance of Compliance in the form attached as Exhibit A, provided that: (1) the witness acknowledges his obligation to maintain the confidentiality of "CONFIDENTIAL" information under oath; and (2) such "CONFIDENTIAL" information may only be shown to the witness during the deposition.

PROTECTIVE ORDER

6.      Subject to paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be disclosed to any person other than:

(a)      the attorneys for the Parties (but not including in-house counsel for the Parties or any attorney who is an officer, director, shareholder or employee of any Party or its corporate affiliates) and their partners, shareholders, associates, document clerks and paralegals who are assigned to and necessary to assist such attorneys. For the purposes of this subparagraph, "affiliate" shall mean any corporate parent or subsidiary of any Party, or any other entity that is under common control with any Party or corporate parent or subsidiary of any Party, or any of their successors or predecessors in interest;

(b)      secretaries, stenographers and other office or clerical personnel employed by said attorneys and who assist them with respect to litigation;

(c)      the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(d)      such other persons as may be consented to by the Party designating such information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(e)      outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(f)      independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for the purposes of litigation; and

07272/625581.2

-10-

PROTECTIVE ORDER

(g) professional court reporters engaged to transcribe deposition testimony, professional videographers engaged to videotape deposition testimony and translators.

7. None of the following is bound by or obligated under this Order in any respect and specifically are not bound or obligated to treat information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in any particular manner: The Court hearing this Action (including the Court having jurisdiction of any appeal), Court personnel, court reporters working for the Court, translators working for the Court, or any jury impaneled in this Action.

8. Other than those identified in Paragraph 7 above, each person to whom information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" is disclosed shall be informed of the terms of this Protective Order and agree to be bound by it before disclosure to such persons of any such information. The persons described in Paragraphs 5(f), 5(h), 6(e) and 6(f) shall not have access to either "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information, as the case may be, until they have certified that they have read this Protective Order and have manifested their assent to be bound thereby by signing a copy of the Assurance of Compliance attached hereto as Exhibit A. Once a person has executed such an Assurance of Compliance, it shall not be necessary for that person to sign a separate Assurance of Compliance each time that person is subsequently given access to confidential material. Any person who signed an Assurance of Compliance in connection with the Stipulation for Protection of Confidential Information and Protective Order filed September 16, 2004 in Mattel Inc. v. Bryant, Case No. BC 314398, pending in Los Angeles County Superior Court, need not re-sign the Assurance of Compliance attached hereto but shall, by virtue of his or her prior signature, be deemed to have signed the attached Assurance of Compliance.

9.     The failure of any Party to object to the designation of information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be deemed an admission that such information qualifies for such designation.

10.    If any Party wishes to have any information, document or testimony marked "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by another Party or nonparty reclassified as non-confidential, or from "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" to "CONFIDENTIAL," the Parties and/or relevant nonparty or nonparties will confer and try to reach agreement. If the Parties and/or relevant nonparty or nonparties cannot reach agreement, either Party and/or the relevant nonparty or nonparties may apply to the Court to resolve the matter in accordance with the Local Rules. Unless and until this Court enters an Order changing the designation of the information, it shall be afforded the treatment prescribed in this Protective Order for its designation.

11.    Nothing contained in this Protective Order shall restrict or prevent any Party or nonparty from disclosing or otherwise using its or his own Litigation Materials which that Party or nonparty produces or discloses in this action.

12.    The inadvertent or unintentional disclosure by a producing Party or nonparty of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" Litigation Materials during the course of this litigation, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a Party's or nonparty's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. Counsel for the Parties and/or nonparties shall in any event, to the extent possible, upon discovery of inadvertent error, cooperate to restore the confidentiality of the "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material that was inadvertently or unintentionally disclosed.

PROTECTIVE ORDER

13.     If a Party or nonparty through inadvertence produces or provides discovery that it, he or she believes is subject to a claim of attorney-client privilege or work product immunity, the producing Party or nonparty may give written notice to the receiving Party that the document is subject to a claim of attorney-client privilege or work product immunity and request that the document be returned to the producing Party or nonparty.  The receiving Party shall promptly return to the producing Party or nonparty the inadvertently disclosed document and all copies of such document.  Return of the document by the receiving Party shall not constitute an admission or concession, or permit any inference, that the returned document is, in fact, properly subject to a claim of attorney-client privilege or work product immunity, nor shall it foreclose any Party from moving the Court for an Order that such document has been improperly designated or should be producible for reasons other than a waiver caused by the inadvertent production.

14.     Nothing contained in this Protective Order shall affect the right of any Party or nonparty to make any objection, claim any privilege, or otherwise contest any request for production of documents, interrogatory, request for admission, or question at a deposition or to seek further relief or protective orders from the Court in accordance with the <u>Federal Rules of Civil Procedure</u> and the <u>Local Rules</u>. Nothing in this Protective Order shall constitute an admission or waiver of any claim or defense by any Party.

<u>FILING AND USE IN COURT OF DESIGNATED MATERIALS</u>

15.     Except when the filing under seal is otherwise authorized by statute or federal rule, the Parties shall seek the Court's prior approval for the filing under seal of pleadings and other documents containing properly designated "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information in accordance with the procedures set forth in <u>Local Rule</u> 79-5.1, as such

07272/625581.2

-13-

PROTECTIVE ORDER

1  Rule may be amended from time to time.  Prior to the time that a Party receiving the

2  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY"

3  information from any other Party files with the Court an application and the other

4  materials required by Local Rule 79-5.1, as such Rule may be amended from time to

5  time, to seal the producing Party's confidential information, the receiving Party shall

6  consult with the producing Party's attorney to determine whether the producing Party

7  will re-designate the previously designated confidential information so as to avoid the

8  need for the request to file such information under the seal.  Upon the default of a

9  Party to seek the Court's approval to file a document containing "CONFIDENTIAL"

10 or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information under seal, any

11 Party may subsequently seek the approval of the Court to file that document under

12 seal, in accordance with the procedures set forth in Local Rule 79-5.1, as such Rule

13 may be amended from time to time.

14

15          THIRD-PARTY REQUEST FOR DESIGNATED MATERIALS

16

17          16.     If any Party or nonparty receives a subpoena or document request

18 from a third party which purports to require the production of materials in that Party's

19 possession which have previously been designated as "CONFIDENTIAL" or

20 "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by any other Party or nonparty,

21 the Party or nonparty receiving such subpoena or document request (a) shall object

22 and refuse to produce documents absent a Court Order or the consent of the Party or

23 nonparty who designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL

24 -- ATTORNEYS' EYES ONLY", (b) immediately notify the Party or nonparty who

25 designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL --

26 ATTORNEYS' EYES ONLY" of the receipt of said subpoena or document request,

27 and (c) shall not oppose any effort by the Party or nonparty which designated the

28 material as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

07272/625581.2                          -14-

PROTECTIVE ORDER

1 | ONLY" to quash the subpoena or obtain a protective order limiting discovery of such

2 | material.

3

## DISCOVERY FROM NONPARTIES

5

6      17.    Discovery of nonparties may involve receipt of information,

7 | documents, things or testimony which include or contain "CONFIDENTIAL" or

8 | "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" materials or information. A

9 | nonparty producing such material in this case may designate as "CONFIDENTIAL"

10 | or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" some or all of the material it

11 | produces in the same manner provided for in this Protective Order with respect to

12 | material furnished by or on behalf of the Parties. Any Party may also designate as

13 | "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any

14 | materials or information produced by a nonparty that constitute "CONFIDENTIAL"

15 | or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material of the designating

16 | Party under Paragraph 2 of this Protective Order, regardless of whether the producing

17 | nonparty has also so designated. In addition, a nonparty may also designate as

18 | "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any

19 | materials or information produced by a Party that constitute "CONFIDENTIAL" or

20 | "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material or information of such

21 | nonparty under Paragraph 2 of this Protective Order, regardless of whether the

22 | producing Party has also so designated. In either such an event, the designation

23 | providing for the greater level of protection for the material information shall control,

24 | subject to Paragraph 10 of this Protective Order. Nonparty materials designated

25 | "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by a

26 | nonparty or Party shall be governed by the terms of this Protective Order.

27

28

07272/625581.2

-15-

PROTECTIVE ORDER

## CONCLUSION OF LITIGATION

18.    Within thirty (30) days of the conclusion of this Action, including any post-trial motions or appellate proceedings relating thereto, all documents, transcripts or other things or information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," and all copies thereof, shall be returned to the attorneys for the Party or nonparty furnishing the same, or shall be destroyed by the attorneys having such documents in their possession.  In addition, all summaries or other materials containing or disclosing information contained in such documents, answers, transcripts or other things shall be destroyed; provided, however, that outside counsel for each Party may retain one complete and unredacted set of pleadings and papers filed with the Court or served on the other Parties.  Such retained copy of pleadings and papers shall be maintained in a file accessible only to outside counsel bound by this Protective Order.  This Protective Order shall continue to be binding after the conclusion of this Action.

## AMENDMENT OF THIS AGREEMENT

19.    The provisions of this Stipulation and Protective Order may be  modified at any time by stipulation of the Parties as approved by Order of the Court.  In addition, a Party may at any time apply to the Court for modification of this

1 | Stipulation and Protective Order pursuant to a motion brought in accordance with the

2 | rules of the Court.

3

4 | **IT IS SO STIPULATED.**

5

6 | DATED: December 22, 2004          QUINN EMANUEL URQUHART

7                                    OLIVER & HEDGES, LLP

8                                    By _Jon Corey_

9                                    Jon Corey

10                                   Attorneys for Plaintiff
                                     Mattel, Inc.

11

12 | DATED: December __, 2004          LITTLER MENDELSON

13                                   By _____

14                                   Douglas A. Wickham
                                     Attorneys for Defendant

15                                   Carter Bryant

16 | DATED: December __, 2004          O'MELVENY & MEYERS, LLP

17

18                                   By _____
                                     Diana M. Torres

19                                   Attorneys for Intervenor-Defendant
                                     MGA Entertainment, Inc.

20

21 | **IT IS SO ORDERED.**

22

23 | DATED: __1/4/05__

24                                   THE HONORABLE ROBERT N. BLOCK
                                     United States Magistrate Judge

25

26

27

28

07272/625581.2                       -17-

PROTECTIVE ORDER

1   Stipulation and Protective Order pursuant to a motion brought in accordance with the

2   rules of the Court.

3

4       **IT IS SO STIPULATED.**

5

6   DATED: December ___, 2004        QUINN EMANUEL URQUHART
                                     OLIVER & HEDGES, LLP
7

8                                    By _____
9                                       Jon Corey
                                        Attorneys for Plaintiff
10                                      Mattel, Inc.

11

12  DATED: December 21, 2004         LITTLER MENDELSON

13                                   By _____
14                                      Douglas A. Wickham
                                        Attorneys for Defendant
15                                      Carter Bryant

16  DATED: December ___, 2004        O'MELVENY & MEYERS, LLP

17

18                                   By _____
                                        Diana M. Torres
19                                      Attorneys for Intervenor-Defendant
                                        MGA Entertainment, Inc.

20

21      **IT IS SO ORDERED.**

22

23

24  DATED: _____       THE HONORABLE ROBERT N. BLOCK
                                        United States Magistrate Judge
25

26

27

28

07272/625881.2                          -17-

                                              PROTECTIVE ORDER

1  Stipulation and Protective Order pursuant to a motion brought in accordance with the

2  rules of the Court.

3

4          IT IS SO STIPULATED.

5

6  DATED: December ___, 2004          QUINN EMANUEL URQUHART
                                      OLIVER & HEDGES, LLP
7

8                                     By
9                                        Jon Corey
                                         Attorneys for Plaintiff
10                                       Mattel, Inc.

11
    DATED: December ___, 2004          LITTLER MENDELSON
12

13                                     By
14                                        Douglas A. Wickham
                                          Attorneys for Defendant
15                                        Carter Bryant

16  DATED: December ___, 2004          O'MELVENY & MEYERS, LLP

17
                                       By
18                                        Diana M. Torres
                                          Attorneys for Interventor-Defendant
19                                        MGA Entertainment, Inc.

20

21          IT IS SO ORDERED.

22

23  DATED: _____
24                                     THE HONORABLE ROBERT N. BLOCK
                                       United States Magistrate Judge
25

26

27

28

07272/625581.2                              -17-
                                                           PROTECTIVE ORDER

# EXHIBIT A

## ASSURANCE OF COMPLIANCE

I, _____, under penalty of perjury under the laws of the United States of America, declare and state as follows:

I reside at _____, in the City/County of _____ and State/Country of _____;

I have read the annexed Stipulated Protective Order, ("Protective Order") dated _____ in the action entitled *Mattel, Inc. v. Carter Bryant*, Case No. CV 04-9059 NM (RNBx), which currently is pending in the United States District Court for the Central District of California; that I am fully familiar with and agree to comply with and be bound by the provisions of that Protective Order;

I will not divulge to persons other than those specifically authorized by the Protective Order, and will not copy or use any Litigation Materials designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" except solely as permitted by the Protective Order; and

I consent to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing said Protective Order, enjoining any violation or threatened violation of the Protective Order or seeking damages for the breach of said Protective Order.

_____
(Signature)

07272/625581.2

PROTECTIVE ORDER