QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
JOHN B. QUINN (State Bar No. 090378)
MICHAEL T. ZELLER (State Bar No. 196417)
JON D. COREY (State Bar No. 185066)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000; Facsimile: (213) 443-3100

STROOCK & STROOCK & LAVAN LLP
BARRY B. LANGBERG (State Bar No. 048158)
MICHAEL J. NIBORSKI (State Bar No. 192111)
2029 Century Park East, Suite 1600
Los Angeles, California 90067-3086
(lacalendar@stroock.com)
Telephone: (310) 556-5800; Facsimile: (310) 556-5959

Attorneys for MATTEL, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                Plaintiff,<br><br>        vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                Defendant. | Case No. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>MATTEL, INC.'S NOTICE OF MOTION AND MOTION OBJECTING TO DISCOVERY MASTER'S FEBRUARY 26, 2008 ORDER DENYING MATTEL'S MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI<br><br>[Notice of Lodging and Supplemental Declaration of Michael J. Niborski filed concurrently]<br><br>Hearing Date:    April 7, 2008<br>Time:          10:00 a.m.<br>Place:         Courtroom 1 |
| AND CONSOLIDATED ACTIONS | **Phase 1**<br>Discovery Cut-off:    January 28, 2008<br>Pre-trial Conference:   April 21, 2008<br>Trial Date:        May 27, 2008 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 7, 2008, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Stephen G. Larson, located at 3470 Twelfth Street, Riverside, California 92501, plaintiff and counter-defendant Mattel, Inc. ("Mattel") will, and hereby does, move the Court to overrule the Discovery Master's February 26, 2008 Order Denying Mattel's Motion to Compel Deposition of Christopher Palmeri.

This Motion is made pursuant to Federal Rules of Civil Procedure 72(a) on the grounds that the Discovery Master's Order was clearly erroneous and contrary to law. Specifically, the Discovery Master erred in concluding (1) the information sought by Mattel fell within the scope of the qualified journalist's privilege, and (2) Mattel had failed to establish that the deposition should proceed notwithstanding the claim of privilege.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Supplemental Declaration of Michael J. Niborski filed concurrently herewith, the Notice of Lodging filed concurrently herewith, and all other matters of which the Court may take judicial notice.

### Statement of Rule 7-3 Compliance

The parties met and conferred regarding this motion on March 6 and 10, 2008.

Dated: March 11, 2008      STROOCK & STROOCK & LAVAN LLP
BARRY B. LANGBERG
MICHAEL J. NIBORSKI


By:    /s/ Michael J. Niborski
       Michael J. Niborski
       Attorneys for MATTEL, INC.

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ............................................................ 1

II.    FACTUAL BACKGROUND ............................................................ 4

III.   ARGUMENT ............................................................................. 6

    A.     In Applying the Reporter's Privilege to the Verification of Published Statements, the Discovery Master's Order Is Clearly Erroneous or Contrary to Law .................................................. 6

    B.     To the Extent the Discovery Master Implicitly Concluded that Mattel Seeks Unpublished Information, His Ruling Is Clearly Erroneous and Contrary to Law .............................................. 9

    C.     Even If the Reporter's Privilege Does Apply, the Discovery Master's Application of the Privilege Is Clearly Erroneous or Contrary to Law ..................................................................... 12

        1.     The Discovery Master's Finding that the Information Sought Is Not Clearly Relevant to an Important Issue Is Clearly Erroneous or Contrary to Law ........................................ 12

        2.     The Discovery Master's Finding that the Information Sought Is Cumulative Is Clearly Erroneous or Contrary to Law.............................................................................. 14

        3.     The Discovery Master's Finding that the Information Sought Is Available From Another Source Is Clearly Erroneous or Contrary to Law ........................................ 15

IV.    CONCLUSION ........................................................................... 17

MATTEL'S MOTION OBJECTING TO DISCOVERY MASTER'S FEBRUARY 26, 2008 ORDER

# TABLE OF AUTHORITIES

**Page**

## Cases

*Baker v. Los Angeles Herald Examiner*,
42 Cal. 3d 254 (1986) ................................................................. 11

*Branzburg v. Hayes*,
408 U.S. 665 (1972) ..................................................................... 17

*Brinston v. Dunn*,
919 F. Supp. 240 (S.D. Miss. 1996) ............................................. 6

*Dillon v. City and County of San Francisco*,
748 F. Supp. 722 (N.D. Cal. 1990) .............................................. 7

*Gonzales v. National Broadcasting Co.*,
194 F.3d 29 (2d Cir. 1999) .......................................................... 7

*Herbert v. Lando*,
441 U.S. 153 (1979) ..................................................................... 7

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ................................................... 11

*MacLeod v. Tribune Publishing Co.*,
52 Cal. 2d 536 (1959) ................................................................ 11

*Miami Herald Publishing Co. v. Morejon*,
529 So. 2d 1204 (Fla App. 1988) ................................................ 8

*Morningstar, Inc. v. Superior Court*,
23 Cal. App. 4th 676 (1994) ...................................................... 11

*NLRB v. Mortenson*,
701 F. Supp. 244 (D.D.C. 1988) .................................................. 7

*Norse v. Henry Holt & Co.*,
991 F.2d 563 (9th Cir. 1993) ..................................................... 11

*Patton v. Royal Indus.*,
263 Cal. App. 2d 760 (1968) ...................................................... 11

*SEC v. Seahawk Deep Ocean Tech., Inc.*,
166 F.R.D. 268 (D. Conn. 1996) ................................................. 7

*Shoen v. Shoen*,
5 F.3d 1289 (9th Cir. 1993) ......................................... 6, 7, 9, 17

*Shoen v. Shoen*,
48 F.3d 412 (9th Cir. 1995) ........................................... 6, 9, 12

*Sipple v. Foundation for National Progress*,
71 Cal. App. 4th 226 (1999) ...................................................... 11

ii

*Sullivan v. Warner Bros. Theaters*,
    42 Cal. App. 2d 660 (Cal. App. 1941) .................................................... 11

*United States v. Bryan*,
    339 U.S. 323 (1950) ................................................................................ 9

*United States v. LaRouche Campaign*,
    841 F.2d 1176 (1st Cir. 1988) ................................................................ 9

*United States v. Nixon*,
    418 U.S. 683 (1974) ................................................................................ 7

*In re Vmark Software, Inc.*,
    1998 WL 42252 (E.D. Pa. 1998) .......................................................... 16

## **Miscellaneous**

Fed. R. Civ. Proc. 72(a) ............................................................................ 6

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   PRELIMINARY STATEMENT

This motion presents a simple question:  Can a magazine reporter avoid testifying at deposition about a published statement made by defendant Isaac Larian because the reporter did not expressly attribute the statement with the words, "Larian said."

The answer is "no."  No authority supports the proposition that the qualified journalist's privilege can be stretched so far as to relieve a reporter of his obligation to affirm in court proceedings information that already has been published to the world – simply because the reporter does not want to confirm what the article made crystal clear to reasonable readers:  that Larian claimed to have gotten "the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers."

Mattel seeks nothing more than a limited deposition from reporter Christopher Palmeri about a statement by Larian that Palmeri provided to the general public.  Confirmation of Larian's published statements goes to the heart of important issues in this litigation, including MGA's deliberate and intentional concealment of facts that Mattel was the true owner of Bratz.

Larian's assertion to Mr. Palmeri that he invented Bratz was published in July 2003, during the same period that MGA and Carter Bryant are now contending Mattel knew or should have known it had a claim for ownership of Bratz because of Bryant's employment by Mattel.  Defendants attempt in this lawsuit to make much of a Wall Street Journal article published on July 18, 2003 that discusses Bryant's invention of Bratz and a 1999 fashion doll design contest at MGA.  But BusinessWeek published Larian's claim that <u>he</u> invented Bratz in its July 28, 2003 edition, distributed within days of the Journal article.

Thus, Mr. Palmeri has unique possession of evidence for trial that goes to two critical issues:  (1) whether Larian engaged in a cover-up of the true origins of Bratz

and Bryant's involvement by claiming that Larian was inspired by his children's clothing to invent Bratz; and (2) whether Mattel's claims accrued for purposes of the statute of limitations and laches in July 2003.  Larian's assertions to Palmeri go directly to Mattel's affirmative claims against Larian, Bryant and MGA, and bear on the defenses raised in response to those claims.

Nonetheless, the Discovery Master denied Mattel this important testimony, applying the federal reporter's privilege to find that Mattel was not entitled to a deposition about public, published statements by Larian.  The Discovery Master's Order is clearly erroneous and contrary to law.

The Discovery Master skipped over the essential first step of any qualified privilege analysis:  Are the circumstances such that the privilege is implicated?  Only if the answer is "yes" does a court proceed to balance the interests of the journalist and the need for discovery.

Under Ninth Circuit law, the qualified reporter's privilege restricts inquiry into <u>unpublished</u> information a journalist obtains in the newsgathering process.  No court in this Circuit has ever applied the privilege to the mere authentication of published information.

Moreover, public policy does not support Mr. Palmeri's claim of privilege. There has been no assertion by Mr. Palmeri (or anyone, including Larian) that Larian's statements to BusinessWeek were confidential.  There has been no assertion by Mr. Palmeri (or anyone, including Larian) that Mr. Palmeri got it wrong, and Larian did not claim to have invented Bratz based on inspiration from his children.

There is no contention that the deposition will intrude on or interfere with the newsgathering efforts of Mr. Palmeri or BusinessWeek.  There is no burden on Mr. Palmeri beyond a very brief deposition, which Mattel has offered to conduct at any time and location convenient for Mr. Palmeri.  Factors that in other circumstances might weigh in favor of a reporter are absent here.

To the extent the Discovery Master can be understood to have found that the mere fact that Larian <u>made</u> the published statement is "unpublished," that finding is clearly erroneous and contrary to law.  Mr. Palmeri's argument that the source of the statement is unknown defies common sense and requires the type of parsing and hyper-technical reading of a publication that courts have consistently rejected.

Even if the Discovery Master was correct in applying the qualified reporter's privilege (he was not), his finding that Mattel has not satisfied the requirements to obtain testimony from Mr. Palmeri was error.  Mr. Palmeri's testimony is not primarily for impeachment – it is critical evidence of defendants' deliberate concealment of the origins of Bratz, and that this concealment continued at least through the summer of 2003.  Nor is Mr. Palmeri's testimony cumulative:  Even as the Wall Street Journal was reporting that Bryant created Bratz as part of a contest at MGA in 1999 (while Bryant was employed by Mattel), Larian was telling BusinessWeek something completely different – that <u>he</u> invented Bratz – and giving no credit to Bryant.  Mr. Palmeri's testimony is not about "inconsistent" Larian statements.  Rather, Mr. Palmeri will testify that Larian represented himself as the inventor of Bratz in July 2003 – a time when MGA is now asserting that Mattel was on notice of a claim that Bryant invented Bratz while employed by Mattel.

Further, Mattel has already deposed Larian regarding his statements to reporters and about the origins of Bratz.  No other source is available to confirm his statements to Mr. Palmeri.  The Discovery Master's view that Mattel is not entitled to Mr. Palmeri's testimony about a known, public statement because it has not deposed other unidentified witnesses "such as co-workers, publicists or industry analysts" imposes a burden on Mattel that is unsupported by the law and which, in effect, would make absolute what the courts have carefully crafted and limited as a <u>qualified</u> privilege.  Mr. Palmeri is the only witness to a public statement by Larian that is central to this lawsuit.

MATTEL'S MOTION OBJECTING TO DISCOVERY MASTER'S FEBRUARY 26, 2008 ORDER

The journalists' privilege rests on the need to protect the flow of information to the public; it does not permit reporters to withhold evidence that they have obtained and published to the world without restriction.  The Court should overrule the Discovery Master's February 26, 2008 Order Denying Mattel's Motion to Compel Deposition of Christopher Palmeri and order Mr. Palmeri to appear for deposition.

## II.   FACTUAL BACKGROUND

Christopher Palmeri is a reporter for BusinessWeek.  In July 2003, he authored an article entitled "To Really Be A Player, Mattel Needs Hotter Toys" (the "Article").  The Article contains several statements clearly attributable to Isaac Larian, one of which is as follows:

> Mattel won't live or die on every new toy it develops.  But it can't just rely on Barbies, either.  "Like they say in business school – no risk, no reward," says Isaac Larian, CEO of privately held MGA.  He should know:  He got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers.[1]

Mattel served Mr. Palmeri with a deposition subpoena on July 25, 2007, in order to obtain testimony about Larian's statements in the Article.[2]

Beginning even before service of the subpoena, counsel for Mattel and Mr. Palmeri and BusinessWeek met and conferred about the need for, and scope of, Mr. Palmeri's deposition.  Mattel made clear that it seeks testimony relating to published statements.[3]  Mattel offered to conduct the deposition at a time and place of Mr. Palmeri's choosing, and offered to agree to a limited period of time for questioning.

---

[1]  Declaration of Michael J. Niborski, dated January 20, 2008 ("Niborski Dec."),  ¶ 2, Ex. 1 (Article).  The Niborski Declaration is attached as Exhibit 2 to the concurrently filed Notice of Lodging.

[2]   Niborski Dec., Ex. 2 (Subpoena in a Civil Case, dated July 25, 2007).

[3]   Niborski Dec., ¶¶ 6-8, 16; Ex. 6 (Email from Wickers to Alger dated August 16, 2007); Ex. 5 (Letter from Alger to Wickers, dated August 17, 2007); Ex. 7 (Letter from Niborski to Wickers, dated September 5, 2007); Ex. 13 (Letter from Niborski to Wickers, dated January 14, 2008).

In addition, Mattel offered to discuss the exact scope of the prospective questions with counsel for Mr. Palmeri in advance of the deposition.[4]

On January 7, 2008, the Court granted Mattel's Motion for Leave to Take Additional Discovery in this action. In its moving papers, Mattel identified Mr. Palmeri as one of the individuals it sought to depose, informed the Court that Mr. Palmeri is a reporter for BusinessWeek, and provided the Court with a description of the relevance of Mr. Palmeri's anticipated testimony during oral argument.[5] The Court found that Mattel was entitled to conduct additional depositions, including Mr. Palmeri's.[6]

Nevertheless, on January 14, 2008, Mr. Palmeri's counsel informed counsel for Mattel that Mr. Palmeri would not appear for deposition.[7] Mattel filed a motion to compel Mr. Palmeri's deposition with the Discovery Master on January 21, 2008.[8] In his opposition, Mr. Palmeri claimed that Mattel was precluded from obtaining its requested testimony by both the federal reporter's privilege and California's state shield law.[9]

On February 26, 2008, the Discovery Master entered an order denying Mattel's motion to compel.[10] Although he did not find that the fact that Larian made the

---

[4] Niborski Dec., ¶¶ 6-8, 14-16; Ex. 7 (Letter from Niborski to Wickers, dated September 5, 2007); Ex. 13 (Letter from Niborski to Wickers, dated January 14, 2008).

[5] Niborski Dec., ¶¶ 11-12; Ex. 10 (Motion of Mattel for Leave to Take Additional Discovery, at 8, 11); Ex. 11 (Transcript of January 7, 2008 hearing).

[6] Niborski Dec., ¶ 13, Ex. 12 (Order Granting In Part And Denying In Part Mattel's Motion For Leave To Take Additional Discovery, dated January 7, 2008; Order Amending Court's Minute Order of January 7, 2008).

[7] Niborski Dec., ¶¶ 1-16; Ex. 13 (Letter from Niborski to Wickers dated January 14, 2008).

[8] Mattel, Inc.'s Notice of Motion and Motion to Compel the Deposition of Christopher Palmeri, dated January 21, 2008, attached as Exhibit 1 to the concurrently filed Notice of Lodging.

[9] Opposition to Mattel's Motion to Compel the Deposition of Christopher Palmeri, dated January 29, 2008 ("Palmeri's Opposition"), attached as Exhibit 3 to the concurrently filed Notice of Lodging.

[10] Supplemental Declaration of Michael J. Niborski, filed concurrently ("Supp. Niborski Dec."), Ex. 1 (Order Denying Mattel's Motion to Compel Deposition of Christopher Palmeri, dated February 26, 2008 ("February 26 Order")).

-5-

statement that "[h]e got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers" was unpublished, the Discovery Master applied the federal reporter's privilege.  The Discovery Master did not find that California's state shield law applies.

## III.   ARGUMENT

By the stipulation and court order appointing a Discovery Master, the Discovery Master's rulings are treated like those of a magistrate judge.  Such rulings should be overruled if they are "clearly erroneous or [] contrary to law."  <u>Fed. R. Civ. Proc.</u> 72(a).  The Discovery Master's determination that Mr. Palmeri can avoid deposition in this litigation is clearly erroneous or contrary to law.

### A.   In Applying the Reporter's Privilege to the Verification of Published Statements, the Discovery Master's Order Is Clearly Erroneous or Contrary to Law

The Discovery Master erred in denying Mattel's motion to compel the deposition of Mr. Palmeri by skipping the very first step in any analysis involving privilege.  The Discovery Master incorrectly assumed that Mr. Palmeri is entitled to assert the journalist's privilege under <u>Shoen v. Shoen</u>, 5 F.3d 1289 (9th Cir. 1993), ("<u>Shoen I</u>") and <u>Shoen v. Shoen</u>, 48 F.3d 412 (9th Cir. 1995) ("<u>Shoen II</u>").  Neither decision supports this assumption.

The reporter's privilege does not relieve a journalist from his obligation to testify about published information.  The <u>Shoen</u> decisions involved an attempt to obtain discovery about a journalist's <u>unpublished</u> research materials, and the Ninth Circuit did not extend – or even discuss extending – the privilege beyond research materials.  When the issue has been addressed, courts have been reluctant to relieve journalists of the obligation to provide evidence where the information sought does not implicate research materials.  <u>See, e.g.</u>, <u>Brinston v. Dunn</u>, 919 F. Supp. 240, 244 (S.D. Miss. 1996) (holding that it was proper to compel the deposition of journalist to

authenticate published statements, but not regarding unpublished information);
Dillon v. City and County of San Francisco, 748 F. Supp 722, 726 (N.D. Cal. 1990)
(holding that the privilege did not apply to the personal observations of a reporter
who "has not been asked to reveal any confidential sources or information, nor has
been requested to produce or discuss any resource materials").

Indeed, the question of mere confirmation by reporters of published statements
has very rarely even arisen. This makes sense because journalists (and their lawyers)
have vigorously asserted the privilege where it served a purpose recognized by
public policy and the First Amendment – protecting the collection and dissemination
of news. Courts have expressed concern about interference with newsgathering
where journalists have been asked to disclose confidential news sources and disgorge
their research materials. But such concern is absent where the testimony involves
published statements. See, e.g., Gonzales v. National Broadcasting Co., 194 F.3d 29,
32-36 (2d Cir. 1999) (reviewing the origins and application of the qualified
journalist's privilege to non-confidential information); SEC v. Seahawk Deep Ocean
Tech., Inc., 166 F.R.D. 268, 271-72 (D. Conn. 1996 (refusing to quash subpoena for
deposition seeking verification of published statements); NLRB v. Mortenson, 701 F.
Supp. 244, 250 (D.D.C. 1988) (requiring reporters to testify about published
statements).

The "privilege is a recognition that society's interest in protecting the integrity
of the newsgathering process, and in ensuring the free flow of information to the
public." Shoen I, 5 F.3d at 1292. But this is not carte blanche. The Supreme Court
teaches us that "[e]videntiary privileges in litigation are not favored, and even those
rooted in the Constitution must give way in proper circumstances." Herbert v.
Lando, 441 U.S. 153, 175 (1979). "'Whatever their origins, these exceptions to the
demand for every man's evidence are not lightly created nor expansively construed,
for they are in derogation of the search for truth.'" Id. (quoting United States v.
Nixon, 418 U.S. 683, 710 (1974)).

1        Just as any other private citizen is expected to give his eyewitness

2        testimony to . . . relevant events in subsequent court proceedings, so,

3        too, a journalist, as a citizen, is expected to give similar testimony.  The

4        fact that the journalist is on a newsgathering mission . . . cannot change

5        this result because the ability of the journalist to gather and report on the

6        witnessed event is not substantially threatened by requiring the

7        disclosure of what was seen in a subsequent court proceeding – and thus

8        no substantial free-press interests are imperiled.  Moreover, the fact that

9        it is inconvenient for a journalist to respond to a witness subpoena and

10        give his eyewitness testimony is of no constitutional significance; all

11        persons who witness such events are equally inconvenienced by having

12        to respond to such witness subpoenas, and a journalist occupies no

13        privileged position in this respect from any other person in the

14        community.

15  Miami Herald Publishing Co. v. Morejon, 529 So.2d 1204, 1208 (Fla App. 1988)

16  (citing cases).

17       A limited deposition to authenticate a published statement does not undermine

18  the integrity of the newsgathering process or inhibit the free flow of information to

19  the public.  The instances in which the Ninth Circuit has held that the privilege

20  applies – to protect non-public information – stand in stark contrast to the limited

21  deposition Mattel seeks here.  While a reporter might be hampered in his or her

22  ability to gather information if forced to reveal the identity of confidential sources or

23  research materials, that is not what Mattel seeks here.  Mattel simply seeks Mr.

24  Palmeri's confirmation under oath of an important statement by Larian that was

25  published to the world.

26       Mr. Palmeri presented the Discovery Master with an array of cases regarding

27  the journalist's privilege, and is likely to do the same with the Court in opposition to

28  this motion.  But the courts' development of the privilege has arisen from situations

1   where a party was seeking unpublished information, and there was legitimate

2   concern about intrusion into the newsgathering process and burden on the news

3   media.  The Shoen decisions do not require the Court to apply the test of the

4   qualified privilege where a litigant seeks evidence about published statements.  See

5   Shoen I, 5 F.3d at 1290-91, 1295 (discussing disclosure of "resource materials" for

6   an unpublished book); Shoen II, 48 F.3d at 416 (discussing "research materials" and

7   quoting United States v. LaRouche Campaign, 841 F.2d 1176, 1182 (1st Cir. 1988),

8   which recognized the threat posed by demands for "outtakes, notes, and other unused

9   information").

10      Mr. Palmeri reported what Mr. Larian told him, and admissible evidence of

11   that statement is necessary for fair consideration by the jury of whether defendants

12   endeavored to conceal the origins of Bratz.  In this situation, where no privileged

13   information is being sought by Mattel, Mr. Palmeri's testimony falls within the

14   "broad right of discovery . . . based on the general principle that litigants have a right

15   to 'every man's evidence.'"  Shoen I, 5 F.3d at 1292 (quoting United States v. Bryan,

16   339 U.S. 323, 331 (1950)).

17      The Discovery Master's threshold decision to apply the reporter's privilege was

18   erroneous, should be overruled, and Mr. Palmeri should be ordered to appear for

19   deposition.

20

21      **B.     To the Extent the Discovery Master Implicitly Concluded that**

22      **Mattel Seeks Unpublished Information, His Ruling Is Clearly**

23      **Erroneous and Contrary to Law**

24      The Discovery Master did not find the Larian statements Mattel seeks

25   authenticated to be "unpublished."  Instead, contrary to law, he simply applied the

26   Ninth Circuit's balancing test for unpublished information, as stated in Shoen II.  But

27   even if the Discovery Master can be said to have somehow implicitly found that

28

Larian's statements involved unpublished information, that ruling is clearly erroneous or contrary to law.

In his arguments before the Discovery Master, Mr. Palmeri sought to avoid testifying altogether by arguing that the fact that <u>Larian made</u> the statement was "unpublished." That argument is contrary to law and common sense.

The relevant paragraph states:

Mattel won't live or die on every new toy it develops. But it can't just rely on Barbies, either. "Like they say in business school – no risk, no reward," says Isaac Larian, CEO of privately held MGA. He should know: He got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers.[11]

The plain language of Mr. Palmeri's article and the context of the words used make clear that <u>Larian</u> told Mr. Palmeri that he (Larian) "got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers." This statement follows immediately from a direct quote of Larian. BusinessWeek is not in the business of mind-reading. Mr. Palmeri and the magazine intended to convey that the information about the "idea for Bratz" and its inspiration came directly from Larian.

Mr. Palmeri argued to the Discovery Master that the paragraph should be parsed and the last sentence examined in a vacuum, claiming that "the information could have come from any number of sources."[12] This contention does not entitle Mr. Palmeri to claim protection under the journalists' privilege. First, it is absolute nonsense. If it came from someone other than Larian, the Article is misleading. If Larian did not make the statement, Mr. Palmeri need only say so in a declaration, and there is no need for a deposition.

---

[11] Niborski Dec., ¶ 2, Ex. 1.
[12] Palmeri's Opposition, at p. 21.

Second, the hyper-technical analysis demanded by Mr. Palmeri is contrary to any reasonable reading of the paragraph.  Courts are most frequently asked to interpret published statements in the context of defamation actions.  There, the law is clear that a publication "may not be divided into segments and each portion treated as a separate unit."  <u>Baker v. Los Angeles Herald Examiner</u>, 42 Cal. 3d 254, 261 (1986).  A statement must be interpreted "from the standpoint of the average reader, judging the statement not in isolation, but within the context in which it is made."  <u>Norse v. Henry Holt & Co.</u>, 991 F.2d 563, 567 (9th Cir. 1993) (citations omitted).

Here, an average reader would plainly understand the statement that Larian "got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers" was made by  Larian.  The statement is preceded by a direct quote from Larian.  Under Mr. Palmeri's logic, to be "published" the statement would need to be in direct quotes, and be proceeded or followed with the words "Larian said."  If that is the law, the application of the reporter's privilege would depend on the stylistic decisions of a reporter rather than a plain reading of the article.  A court should not "give the language used the . . . critical analysis of a mind trained in legal technicalities."  <u>Sullivan v. Warner Bros. Theaters</u>, 42 Cal. App. 2d 660, 662 (1941); <u>accord</u> <u>Morningstar, Inc. v. Superior Court</u>, 23 Cal. App. 4th 676, 688 (1994) (a "'publication is to be measured no so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural and probable effect upon the mind of the average reader'" (quoting <u>MacLeod v. Tribune Publishing Co.</u>, 52 Cal. 2d 536, 547 (1959))); <u>Patton v. Royal Indus.</u>, 263 Cal. App. 2d 760, 770 (1968) (the "meaning the average reader would give the letter was not . . . for the opinions of grammarians").  <u>See also, e.g.</u>, <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1073-74 (9th Cir. 2005) (requiring court to view a challenged statement in context); <u>Sipple v. Foundation for National Progress</u>, 71 Cal. App. 4th 226, 240-42 (1999) (rejecting parsing of magazine article to determine whether particular published statements were made in court and therefore fell within the litigation privilege).

The plain language, in context, used by Mr. Palmeri conveys to reasonable readers that Larian told Mr. Palmeri that he (Larian) "got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers."  After conveying to this message to his readers, Mr. Palmeri cannot now hide behind the journalist's privilege and assert that the source of the statement is a mystery.

The Discovery Master properly declined to engage in the hyper-technical analysis that Mr. Palmeri urged.  However, to the extent the Discovery Master did implicitly make that ruling, the ruling is clearly erroneous and contrary to law.  By asking Mr. Palmeri to simply confirm Larian's statements, Mattel is not seeking unpublished information, and the journalist's privilege is not implicated.

C.    **Even If the Reporter's Privilege Does Apply, the Discovery Master's Application of the Privilege Is Clearly Erroneous or Contrary to Law**

Even if the reporter's privilege did apply here – and it does not – Mattel has overcome the privilege and is entitled to the limited deposition it seeks.  The privilege yields where "the requested evidence is: '(1) unavailable despite the exhaustion of all reasonable alternative sources; (2) non-cumulative; and (3) clearly relevant to an important issue in the case.'"  February 26, 2008 Order, at 4 (quoting <u>Schoen II</u>, 48 F.3d at 416).  The Discovery Master's finding that Mattel has not satisfied this test is clearly erroneous or contrary to law.

1.    <u>**The Discovery Master's Finding that the Information Sought Is Not Clearly Relevant to an Important Issue Is Clearly Erroneous or Contrary to Law**</u>

The Discovery Master found that Mr. Palmeri's testimony is not relevant to an important issue in the case because, "[f]or the purposes of the statute of limitations, the information published within the four corners of the Article is relevant, regardless

1   of who was the source of the information."[13]  That finding mischaracterizes Mattel's

2   allegations.  Mattel alleges that "Bryant and MGA <u>deliberately and intentionally</u>

3   concealed facts sufficient for Mattel to suspect or to know that it was the true owner

4   of Bratz," including by "concealing Bryant's role in Bratz by falsely claiming that

5   Larian and others were the creators of Bratz."[14]  To demonstrate MGA's intent and to

6   show Larian's guilty knowledge of the theft of Bratz from Mattel, Mattel must obtain

7   admissible evidence (*i.e.,* not hearsay) that Larian did in fact make the statements

8   Mr. Palmeri included in his article.  Mattel cannot simply introduce the

9   BusinessWeek article at trial to establish the truth of its contents – <u>i.e.</u>, that Larian

10  told Mr. Palmeri that he (Larian) got the "idea for Bratz" based on the inspiration of

11  his children's clothing.

12      The content of the BusinessWeek article, which appeared in the July 28, 2003

13  edition, is particularly important because Larian's statements call into question

14  MGA's assertion in this litigation that the Wall Street Journal article of July 18, 2003

15  established Mattel's knowledge of a claim based on Bryant's invention of Bratz

16  while he was employed by Mattel.  (The BusinessWeek article appeared at

17  approximately the same time as the Journal article, given that weekly magazines are

18  distributed at least one week before their cover date.)

19      Throughout this litigation, MGA has claimed that the Wall Street Journal

20  article is important evidence demonstrating that Mattel had knowledge of its claims

21  at least as early as July 2003.  For example, in opposition to Mattel's motion to

22  remand, MGA argued that the article proved that by July 2003 Mattel believed Carter

23  Bryant had copied a Mattel product in creating Bratz.[15]  In a May 17, 2006 letter sent

24

25  [13]  February 26 Order, at p. 4.

26  [14]  Niborski Dec., Ex. 15 (Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, ¶ 35) (emphasis added).

27  [15]  Supp. Niborski Dec., Ex. 3 (Defendant Carter Bryant's Opposition to Plaintiff Mattel, Inc.'s Motion to Remand, dated December 22, 2004, at pp. 3-5); Supp.

28  Niborski Dec., Ex. 4 (Defendant in Intervention MGA Entertainment, Inc.'s Joinder in Defendant Carter Bryant's Opposition to Plaintiff Mattel, Inc.'s Motion to Remand, dated December 22, 2004).

to Mattel's counsel, MGA again stressed the purported importance of the Wall Street Journal article in "foreshadowing Mattel's belief with regard to its core contention in this case."[16]  And in a motion to compel filed in September 2007, MGA claimed that Mattel's knowledge regarding the Wall Street Journal article "is vital to Defendants' laches defense."[17]  Indeed, the Journal article is so important to MGA and Bryant that they insisted that Mattel provide a witness about the article under Rule 30(b)(6).[18]

What Larian was telling Mr. Palmeri (and the public) in the summer of 2003 about the invention of Bratz is no less important to Mattel's claims than the Wall Street Journal article is to the defenses asserted by MGA and Bryant.

## 2. The Discovery Master's Finding that the Information Sought Is Cumulative Is Clearly Erroneous or Contrary to Law

The Discovery Master's finding that Mr. Palmeri's testimony would be cumulative was also erroneous, and rests on the false premise that Mattel seeks the deposition solely to impeach Larian.  The Discovery Master states that "Mattel is essentially seeking evidence of Larian's allegedly inconsistent statements regarding the origins of Bratz" and that therefore "[a]ny testimony that Palmeri might provide on the same subject would be cumulative impeachment evidence."[19]

This is incorrect.  As described in Section III.C.1, the information Mattel seeks is relevant to Mattel's allegations that MGA deliberately and intentionally concealed "Bryant's role in Bratz by falsely claiming that Larian and others were the creators of Bratz."  Larian's statement that "[h]e got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers" is vital to Mattel's allegation that Larian affirmatively covered up Bryant's involvement by telling a reporter for the

---

[16]   Supp. Niborski Dec., Ex. 2 (Letter from Ambrosini to Zeller, dated May 17, 2006, at p. 4).

[17]   Supp. Niborski Dec., Ex. 5 (MGA Entertainment, Inc.'s and Carter Bryant's Joint Notice of Motion to Compel Re: Mattel's Bandying of 30(b)(6) Witnesses, dated September 6, 2007, at p. 12).

[18]   Id.

[19]   February 26 Order, at p. 5.

nation's most popular business magazine in July 2003 – when the Wall Street Journal was reporting something completely different – that he (Larian) invented Bratz.  The concealment in the BusinessWeek article is <u>not</u> cumulative of anything in the Wall Street Journal.[20]  And Larian's assertion to Mr. Palmeri that he invented Bratz is far different than the claims made to other reporters, such as Denise O'Neal of the Chicago Sun-Times, who reported in March 2004 about Larian's shift of MGA's product focus and the source of the "Bratz" name.[21]

Mr. Palmeri does not deny that no one else has testified about Larian's claim that Bratz was inspired by seeing "his own kids run around in navel-baring tops and hip-huggers."  Mr. Palmeri also fails to identify any other similar published statement by Larian or alternative source for Larian's contradiction of the Wall Street Journal article.  Mr. Palmeri's requested testimony is not cumulative.  The Discovery Master's finding otherwise is clearly erroneous or contrary to law.

### 3.   The Discovery Master's Finding that the Information Sought Is Available From Another Source Is Clearly Erroneous or Contrary to Law

The Discovery Master also found that Mattel is not entitled to depose Mr. Palmeri because it can obtain the information sought from other sources.  This conclusion ignores the evidence in this case, the realities of discovery in this litigation, and fact that Mattel is merely seeking confirmation under oath of a public statement.

First, the Discovery Master found that "Mattel cannot claim to have exhausted alternative sources unless and until Mattel deposes Larian and exhausts Larian's recollection of his communications with Palmeri."[22]  But the Discovery Master's Order does not address the fact that Mattel has deposed Larian and has asked him about his statements to journalists and his claims regarding the origins of Bratz.

---

[20]   <u>See</u> Supp. Niborski Dec., Ex. 6 (Wall Street Journal Article, dated July 18, 2003).
[21]   Niborski Dec., Ex. 9 (O'Neal Depo. Tr.).
[22]   February 26 Order, at p. 6.

1   Indeed, Mattel deposed Larian at length about Carter Bryant and the invention of

2   Bratz.

3           Larian testified that Bryant conceived of Bratz and brought the concept to

4   MGA in September 2000.[23]  That testimony is directly contrary to the statement

5   published in Mr. Palmeri's article.  Moreover, Mattel specifically questioned Larian

6   on statements he had made to reporters regarding the origins of Bratz.  Larian

7   responded by stating, "a lot of these reporters -- I've seen some of these articles

8   which put things in there which was not my quote."[24]  It is clear that Larian either

9   will not or cannot verify the statements he made to Mr. Palmeri, or any other

10  reporter.  Only Mr. Palmeri can provide the objective testimony that Mattel needs

11  regarding Larian's statements in July 2003.  See In re Vmark Software, Inc., 1998

12  WL 42252 at *2 (E.D. Pa. 1998) (where plaintiff sought deposition testimony and

13  documents from a reporter regarding a published interview with the defendant, the

14  reporter was "the only access to this information").

15          Second, the Discovery Master found that "[t]here may be other witnesses with

16  whom Larian may have discussed the origins of Bratz dolls, such as co-workers,

17  publicists or industry analysts."[25]  Again, the Discovery Master misunderstands the

18  primary purpose for which Mattel seeks to authenticate the statement Larian made to

19  Mr. Palmeri.  It is not simply to show that Larian discussed the origins of Bratz with

20  people, or even that he discussed them with Mr. Palmeri.  Rather, Larian's actual

21  statement to Mr. Palmeri is unique evidence demonstrating MGA's deliberate

22  concealment of "Bryant's role in Bratz by falsely claiming that Larian and others

23  were the creators of Bratz."  This concealment included a false claim that Larian

24  made to the world at large -- with the assistance of the largest business magazine in

25  the country  Neither Mr. Palmeri nor the Discovery Master have identified any other

26  sources from which Mattel can obtain objective verification of Larian's statement to

27

28

---

[23]  Niborski Dec., Ex. 14 (Larian Depo. Tr. at 55:23-78:10, 96:22-102:23).

[24]  Niborski Dec., Ex. 14 (Larian Depo. Tr. at 62:24 - 63:1).

[25]  February 26 Order, at p. 6.

<u>16</u>

1   Mr. Palmeri.  The Discovery Master's ruling that Mattel can obtain the information

2   from other available sources is clearly erroneous and contrary to law.

3        Finally, the Discovery Master's suggestion that Mattel depose countless

4   unknown witnesses on the off-chance that Larian said something similar to what he

5   told Mr. Palmeri ignores the limits on deposition discovery in this case, and it

6   effectively blocks Mattel from obtaining known evidence from the one person who

7   has it, Mr. Palmeri.  A deposition of Mr. Palmeri will consume about a half-hour.  To

8   require Mattel to depose any number of other people simply to prove that Mr.

9   Palmeri is the only person who can authenticate Mr. Larian's published statement

10  defies common sense and Mattel's right to "relevant facts" in the "search for truth."

11  Shoen I, 5 F.3d 1292.  Imposing such a requirement is not a "balance," id. at 1292-

12  93, but the creation of the very privilege that the federal courts have consistently

13  rejected.[26]

14

15  **IV.   CONCLUSION**

16        In his deciding concurrence, Justice Powell in Branzburg v. Hayes made clear

17  that a claim by a journalist of privilege must always be evaluated in light of the

18  surrounding facts.  There is no blanket protection that permits a reporter to refuse to

19  testify.  "The balance of these vital constitutional and societal interests on a case-by-

20  case basis accords with the tried and traditional way of adjudicating such questions."

21  408 U.S. 665, 709-10 (1972) (Powell, J., concurring).

22        The scale here requires Mr. Palmeri to submit to the very limited deposition

23  sought by Mattel.  Mattel's need for admissible evidence of Larian's statements far

24  outweighs any interest Mr. Palmeri might claim – which is, in actuality, quite

25  difficult to discern – in not confirming, in a half-hour deposition, the accuracy of

26  published statements by Larian about the origins of Bratz.

27

28

---

[26]  Shoen I, 5 F.3d at 1292-93 (discussing the qualified -- not absolute -- nature of the First Amendment-based privilege).

17

1       For the foregoing reasons, Mattel respectfully requests that the Discovery

2  Master's February 26, 2008 Order be overruled and that Christopher Palmeri be

3  compelled to appeal for deposition.

4

5  Dated:  March 11, 2008         STROOCK & STROOCK & LAVAN LLP

6                                 BARRY B. LANGBERG

7                                 MICHAEL J. NIBORSKI

8

9                      By:    /s/ Michael J. Niborski

10                            Michael J. Niborski

11                            Attorneys for MATTEL, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28