THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000 / Fax: (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, CA 94111-5974
Tel.: (415) 984-6400 / Fax: (415) 984-2698

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>MGA DEFENDANTS' *EX PARTE* APPLICATION FOR AN ORDER EXTENDING THE MARCH 17 DEADLINE FOR MGA TO SERVE ITS REBUTTAL EXPERT REPORT CONCERNING MS. PRINCE'S NOTARY BOOK OR, IN THE ALTERNATIVE, PRECLUDING MATTEL FROM INTRODUCING ANY EXPERT EVIDENCE REGARDING ITS EXAMINATION OF THE NOTARY BOOK<br><br>Date:   TBD<br>Time:   TBD<br>Place:  TBD |

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that, pursuant to Local Rules 7-19 and 16-14, and

3  Rules 16, 26, 37 and 45 of the Federal Rules of Civil Procedure, counter-defendants

4  MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE de Mexico

5  S.R.L. de C.V., and Isaac Larian (collectively, "MGA"), submit this *ex parte*

6  Application for a court order extending the March 17, 2008 deadline (the "March 17

7  deadline") by which MGA must serve its expert report rebutting the report of

8  Mattel's expert Valery Aginsky ("Aginsky") concerning his analysis of Jacqueline

9  Prince's notary log book (the "notary book") or, in the alternative, precluding Mattel

10  from introducing any expert testimony from Aginsky or any other expert witness

11  concerning the notary book.[1]

12       This Application is made on the ground that Mattel has unfairly blocked

13  MGA's attempts to take "microplug" samples of Ms. Prince's notary book in a

14  calculated attempt to prevent MGA's expert, Dr. Albert Lyter, from being able to

15  complete his examination of the notary book and prepare his rebuttal report before

16  the March 17 deadline. Mattel's expert, Valery Aginsky, offered opinions in his

17  recent expert report based on his testing of "microplug" samples of ink extracted

18  from the notary book. Dr. Lyter needs to extract a similar set of samples to prepare

19  his own rebuttal report for MGA. After receiving the Aginsky report, MGA moved

20  expeditiously to find an expert, subpoena the notary book, and extract the microplug

21  samples necessary to complete its expert report. In the spirit of cooperation and

22  efficiency, MGA proposed that Dr. Lyter perform the exact same sampling pursuant

23  _____
   [1]     MGA also expressly reserves its right to move for preclusionary and/or other
24  sanctions following the Discovery Master's resolution of Mattel's currently pending
   *Ex Parte* Application for Protective Order Preventing MGA's Destructive Sampling
25  of the Prince Notary Book, Docket No. 2563. Such relief would be warranted if the
   Court finds, as MGA contends, that Mattel's attempts to block MGA's extraction of
26  samples from the notary book were made in a bad faith attempt to thwart MGA's
   ability to prepare and submit an expert rebuttal report in advance of the March 17
27  deadline.

28  _____

1  to the exact same protocol used by Mattel.  At every turn, however, Mattel's counsel
2  has obstructed MGA's efforts through calculated delays and inexcusable objections
3  to MGA's proposed protocol.  Most recently, on March 10, 2008, the day noticed for
4  Dr. Lyter's extraction of the samples, and only one week before the March 17
5  deadline, Mattel submitted an *ex parte* application to the Discovery Master to block
6  MGA from taking the samples.  Although MGA informed Mattel on March 12, 2008
7  that it would not extract any samples from the notary book pending the resolution of
8  Mattel's pending *ex parte* application, Mattel has refused to stipulate to extend the
9  March 17 deadline.

10      This Application is based on this notice of application, the accompanying
11  memorandum of points and authorities, the concurrently filed declarations of
12  Matthew Sloan and Albert Lyter, and all other pleadings and papers on file with the
13  Court in this action.

## Statement of Compliance with Local Rule 7-19

14
15      Counsel for Mattel, Inc. is Diane Hutnyan of Quinn, Emaunel, Urquhart,
16  Oliver & Hedges, LLP (telephone: 213-443-3000; address: 865 South Figueroa
17  Street, 10th Floor, Los Angeles, CA 90017).

18      Pursuant to Local Rule 7-19.1, counsel for MGA gave notice of this
19  Application to counsel for Mattel by phone and e-mail on March 12, 2008.
20  (Declaration of Matthew Sloan ("Sloan Decl."), Ex. 1.)  Mattel's counsel indicated
21  that Mattel will oppose the Application.  (Sloan Decl., Ex. 1.)

22
23  DATED:  March 14, 2008          SKADDEN, ARPS, SLATE, MEAGHER &
                                    FLOM, LLP
24
25                                  By: _____
                                        Thomas J. Nolan
26                                      Attorneys for MGA Entertainment, Inc.,
                                        MGA Entertainment (HK) Ltd., MGAE de
27                                      Mexico, S.R.L. de C.V., and Isaac Larian
28
_____
MGA DEFENDANTS' *EX PARTE* APPLICATION FOR AN ORDER EXTENDING THE MARCH 17 DEADLINE
Case No. CV 04-9049 SGL (RNBx)

# TABLE OF CONTENTS

**PAGE**

I.    PRELIMINARY STATEMENT ............................................................ 1

II.   FACTUAL BACKGROUND.............................................................. 3

    A.    Jacqueline Prince's Notary Book.................................................. 3

    B.    Mattel Obtains Ms. Prince's Notary Book In September 2007 ............ 4

    C.    Mattel Advises Ms. Prince's Counsel Of Its Intent To Perform Destructive Sampling On The Notary Book; MGA Does Not Object........................................................................................ 4

    D.    MGA's Request To Take Microplug Samples From Notary Book To Test The Accuracy Of Aginsky's Findings ...................................... 6

III.  ARGUMENT ................................................................................. 13

    A.    An Order Extending The Time To Serve A Rebuttal Expert Report Is Necessary Because The March 17 Deadline Is Only Days Away.................................................................................. 13

        1.    MGA Would Be Irreparably Prejudiced If This *Ex Parte* Motion Were Not Granted Or It Was Heard According To The Regular Noticed Motion Procedures................................. 14

        2.    MGA's Application For An *Ex Parte* Order Extending The March 17 Deadline Should Be Granted Because The Present Crisis Was Created By Mattel, Not MGA.................... 15

    B.    Mattel Has No Basis To Object To This *Ex Parte* Application......... 18

    C.    In the Event the Court Decides Against Extending the March 17 Deadline, It Should Preclude Mattel From Introducing Any Expert Testimony About the Notary Book........................................... 20

IV.   CONCLUSION.............................................................................. 21

# TABLE OF AUTHORITIES

**CASES**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) ............................. 15

*Congressional Air, Ltd. v. Beech Aircraft Corp.,*
    176 F.R.D. 513 (D. Md. 1997) ..................................................................... 14

*Gumbel v. Pitkin,*
    124 U.S. 131, 8 S. Ct. 379, 31 L. Ed. 2d 374 (1888) ................................. 20

*Jackson v. Laureate, Inc.,*
    186 F.R.D. 605 (E.D. Cal. 1999) ................................................................. 19

*Mission Power Engineering Co. v. Continental Casualty Co.,*
    883 F. Supp. 488 (C.D. Cal. 1995) .............................................................. 13

*Sacramona v. Bridgestone/Firestone, Inc.,*
    106 F.3d 444 (1st Cir. 1997) ....................................................................... 20

*Uniguard Sec. Ins. Co. v. Lakewood Engineering & Manufacturing Corp.,*
    982 F.2d 363 (9th Cir. 1992) ....................................................................... 20

*Von Brimer v. Whirlpool Corp.,*
    536 F.2d 838 (9th Cir. 1976) ....................................................................... 14

*Williams v. National Security Insurance Co.,*
    237 F.R.D. 685 (M.D. Ala. 2006) ................................................................ 14

*Zivkovic v. Southern California Edison Co.,*
    302 F.3d 1080 (9th Cir. 2002) ............................................................... 13, 18

**STATUTES**

Fed. R. Civ. P. 6(b)(1) ...................................................................................... 19

Fed. R. Civ. P. 16(b)(4) .................................................................................... 13

Fed. R. Civ. P. 26(a)(2)(B)-(C) ........................................................................ 14

Fed. R. Civ. P. 34(a)(1) .................................................................................... 14

Fed. R. Civ. P. 37(b)-(c) ................................................................................... 14

**RULES**

Fed. R. Evid. 706(d) ......................................................................................... 14

## I.   **PRELIMINARY STATEMENT**

The issue here is one of simple fairness. Mattel has admitted, as it must, that MGA has a right to have an expert extract samples from Jacqueline Prince's notary book (the "notary book") and prepare an expert report in rebuttal to Mattel's expert report.[1] This is only fair given that MGA allowed Mattel's expert to take such samples in January 2008, and Mattel's expert, Valery Aginsky, now claims that a key notation regarding Carter Bryant's drawings was added to the notary book *after* the date of the initial entry.

Yet, Mattel has engaged in a systematic campaign of obstruction and delay to ensure that MGA cannot meet the March 17, 2008 deadline for rebuttal reports (the "March 17 deadline") to challenge Aginsky's findings. First, Mattel blocked MGA's attempt to subpoena the notary book from Prince's counsel by claiming that MGA needed Mattel's agreement or a Court order to begin testing, although Mattel had sought neither MGA's agreement nor Court approval before it conducted its sampling. Then, when MGA proposed a stipulation that would have provided substantial safeguards to Mattel and required court approval if Mattel objected to MGA's procedures, Mattel derailed MGA's testing by raising a series of baseless objections. Mattel's campaign culminated with Mattel's recent filing of an *ex parte* application to prevent MGA's expert from taking the same "microplug" samples that Mattel's expert extracted from the notary book even though MGA agreed to a protocol that provided Court review and was substantially more protective than the informal protocol followed by Mattel's expert when he extracted samples.

Mattel's *ex parte* application was filed on March 10, 2008, the same day MGA's expert was scheduled to perform the testing on the notary book. That

---

[1] *See* Mattel, Inc.'s *Ex Parte* Application for Protective Order Preventing MGA's Destructive Sampling of the Prince Notary Book, at 15 ("Mattel does not seek to prevent MGA entirely from performing reasonable testing on the notary book"), Docket No. 2563.

1  application remains pending before the Discovery Master and will not be fully
2  briefed until after the close of business on March 14, when Mattel's reply brief is due.
3  As such, MGA's expert cannot possibly test the notary book and prepare his report
4  before the March 17 deadline.[2]  Yet, despite its attempts to block MGA's proposed
5  sampling, Mattel has repeatedly refused to stipulate to a reasonable extension of the
6  March 17 deadline, even after MGA promised that it would refrain from any testing
7  pending the resolution of Mattel's *ex parte* application.  Accordingly, MGA has no
8  choice but to seek an extension of the deadline by way of this *ex parte* application.

*     *     *     *     *

10       The contrast between MGA's conduct towards Mattel and Mattel's tactics
11  towards MGA is striking, and instructive.  In December 2007, Mattel requested the
12  right to take samples from Prince's notary book in order to perform forensic ink
13  testing.  MGA did not object, requesting only that Mattel give MGA's expert an
14  opportunity to observe the sampling.  Now that Mattel has completed its analysis,
15  and released its expert report, MGA simply seeks the right to perform the same
16  testing, under the exact same circumstances, so that MGA too can prepare a rebuttal
17  expert report.  Nothing more and nothing less.

18       Rather than agree to such a protocol, Mattel has tried to shut down MGA's
19  sampling at every turn in a transparent attempt to prevent MGA from completing its
20  sampling and testing in time to meet the March 17 deadline.  When MGA first
21  sought to obtain the notary book for testing, in mid-February 2008, Mattel threatened
22  MGA and Ms. Prince's counsel, Daniel Warren, with sanctions if Warren even dared
23  to send the notary book to MGA.  MGA responded by proposing a detailed
24  stipulation which would have given Mattel advance notice of the name and
25  curriculum vitae of MGA's expert; an opportunity to observe the proposed sampling;

26

27  [2]    Declaration of Albert H. Lyter, III ("Lyter Decl."), ¶ 9.

28

1 and the right to seek Court review and approval before Warren could even release
2 the notary book to MGA's expert. Notwithstanding these substantial procedural
3 safeguards, which afforded far more protection than Mattel provided MGA, Mattel
4 repeatedly dragged its feet and raised baseless objections in order to thwart MGA's
5 timely testing. Moreover, Mattel repeatedly refused MGA's requests to extend the
6 March 17 deadline in order to give the parties, and the Court, sufficient time to
7 resolve the Mattel's objections.

8      The Court should now put a stop to Mattel's unprincipled campaign to run out
9 the clock on MGA, and allow MGA a reasonable extension of the March 17 deadline
10 to test the notary book and prepare its own expert report. MGA respectfully requests
11 that the March 17 deadline be extended for a period of fourteen days following the
12 Discovery Master's resolution of Mattel's pending *ex parte* application to provide
13 MGA sufficient time to complete these tasks and submit its rebuttal report. In the
14 alternative, the Court should preclude Mattel from introducing any expert testimony
15 at trial from Aginsky, or anyone else, concerning Mattel's examination of the notary
16 book.

## II.   FACTUAL BACKGROUND

### A.   Jacqueline Prince's Notary Book

19      Ms. Prince is a former Mattel employee who was a notary. In August 1999,
20 Carter Bryant came to Prince's apartment and asked her to notarize some drawings
21 which Bryant told her he had made when he was living with his parents in Missouri
22 in 1998. The entry in the notary book, dated August 26, 1999, indicates that Bryant's
23 drawings were "Original Sketches of [a] doll idea." At the bottom of the entry, there
24 is a notation – "From 1998 Missouri" – confirming that Byrant made the drawings in

1  Missouri after he resigned from Mattel in April 1998 and returned to live with his

2  parents.[3]

3  **B.   Mattel Obtains Ms. Prince's Notary Book In September 2007**

4  Mattel first sought to examine Ms. Prince's notary book over six months ago.

5  On September 8, 2007, Mattel's counsel sent a letter to Ms. Prince's counsel, Daniel

6  Warren, requesting him to send the notary book and stamp to Bryant's counsel so

7  that Mattel could pick it up and have its experts examine both items.[4]  Significantly,

8  Mattel did not seek advance approval from MGA or the Court before seeking the

9  notary book.  On September 11, 2007, Warren transmitted the notary book to

10  Mattel's counsel via Federal Express.[5]  Mattel's counsel and its experts proceeded to

11  maintain possession of the notary book for the following four and one-half months

12  until Mattel's expert, Valery Aginsky, returned the notary book to Warren in late

13  January 2008.[6]  At no time during that four-and-a-half month period did Mattel seek

14  or obtain any Court approval for Mattel's handling or testing of the notary book.[7]

15  **C.   Mattel Advises Ms. Prince's Counsel Of Its Intent To Perform Destructive Sampling On The Notary Book; MGA Does Not Object**

16

17  On December 13, 2007, *over three months after obtaining possession of the*

18  *notary book from Warren*, Mattel's counsel sent Warren a letter notifying him that

19  Mattel wished to conduct "destructive testing" on the notary book in order to test the

20  ink, and asking whether *Warren* had any objection to such testing.[8]  MGA's counsel

21  [3]  Sloan Decl., Ex. 34: Transcript of Dec. 21, 2004 Deposition of Jacqueline Prince.

22  [4]  *Id.*

23  [5]  Sloan Decl., Ex. 2: Sept. 11, 2007 letter from D. Warren to M. Jones.

24  [6]  Sloan Decl., Ex. 3: Expert Report of Valery Aginsky at 8.

24  [7]  The Court's August 30, 2007 Order ("August 30 Order"), to which Mattel

25  repeatedly incorrectly points as the source of Mattel's authorization in its *ex parte* Application before the Discovery Master, dealt solely with Mattel's expert

26  examination and testing of the Bryant documents, not the notary book.  (*See* Sloan Decl., Ex. 4: August 30 Order.)

27  [8]  Sloan Decl., Ex. 5: Dec. 13, 2007 letter from D. Hutnyan to D. Warren.

28

1  was copied on the letter, but Mattel's counsel sought neither MGA's nor Bryant's

2  agreement to allow such testing.[9]  Nor, despite Mattel's claims that "[t]he law

3  requires a party" to obtain court approval before engaging in destructive sampling or

4  testing,"[10] did Mattel seek -- or indicate that it intended to seek -- any Court approval

5  for such destructive testing.

6         MGA responded to Mattel's request on December 20, 2007.[11]  MGA did not

7  object to the testing in principal, nor request Mattel to obtain a Court order.[12]  MGA

8  merely requested that Mattel give MGA notice of the proposed date and location of

9  the testing, and allow MGA's "ink testing consultant" to be present for and observe

10 any destructive testing.[13]  On December 25, 2007, Mattel responded to MGA's

11 request by way of a letter to Warren, copying MGA's and Bryant's counsel.[14]

12 Mattel's counsel indicated that she wished to "inform" Warren "in greater detail, of

13 the procedure our expert plans to use when extracting samples" from the log book.[15]

14 The letter provided very limited details about the testing process, however, and

15 provided neither the curriculum vitae nor the identity of Mattel's expert.[16]

16        On December 26, 2007, MGA sent a letter to Mattel's counsel informing

17 Mattel of a range of dates on which MGA's ink testing consultant would be available

18 to observe the sampling, and asking Mattel to propose a prospective date and

19 location for the testing.  Ultimately, the parties agreed that Mattel's sampling of the

20

---

[9]    Id.  In fact, notwithstanding Mattel's newly fabricated claim that a party cannot
21 engage in destructive testing without the agreement of the interested parties, Mattel
22 did not even copy Bryant's counsel on this letter.

[10]    Docket No. 2563 at 1.

23 [11]    Sloan Decl., Ex. 6: Dec. 20, 2007 letter from C. Roth to D. Hutnyan.

24 [12]    Id.

25 [13]    Id.

[14]    Sloan Decl., Ex. 7: Dec. 25, 2007 letter from D. Hutnyan to D. Warren.

26 [15]    Id.

27 [16]    Id.

28

1  notary book would commence on January 4, 2008.  However, before MGA's expert

2  would be permitted to observe the sampling, Mattel's counsel insisted that MGA

3  provide it with the curriculum vitae of MGA's observing expert, purportedly so that

4  "[Mattel] is able to properly assess and counter any objection [the expert] might

5  make."[17]  Mattel's counsel imposed this new condition less than 24 hours before

6  Mattel's testing was to begin.[18]  Left with little other choice, MGA acceded to the

7  request.[19]  MGA's counsel observed the sampling by Mattel's expert on January 4,

8  2008.[20]

9        In early February, 2008, Mattel sent MGA a copy of Dr. Aginsky's expert

10  report dated, February 8, 2008.[21]  In the report, Dr. Aginsky concluded, among other

11  things, that two different inks were used in the notary book's entry involving Bryant's

12  drawing, and that the notation "From 1998 Missouri" was made after the other

13  entries on that page of the notary book.[22]

14    **D.    MGA's Request To Take Microplug Samples From Notary Book To**

15    **Test The Accuracy Of Aginsky's Findings**

16        In response to Aginsky's report, MGA sent a letter to Warren on February 18,

17  2008, notifying him that MGA "*contemplates* conducting forensic ink tests on certain

18  entries" in the notary book, and requesting Warren to send the log book to MGA in

19  anticipation of such testing.[23]  The letter, which was carbon copied to Mattel's and

20  Bryant's counsel, indicated that MGA sought to "replicate Mattel's testing of the

21

22  [17]    Sloan Decl., Ex. 8: Jan. 3, 2008 email from D. Hutnyan to R. Weinstein.

23  [18]    Id.
     [19]    Sloan Decl., Ex. 9: Jan. 4, 2008 email from R. Weinstein to D. Hutnyan.

24  [20]    Sloan Decl., ¶ 11.

25  [21]    Sloan Decl., Ex. 3: Expert Report of Valery Aginsky.

26  [22]    Id. at 8.
     [23]    Sloan Decl., Ex. 10: Feb. 18, 2008 letter from R. Weinstein to D. Warren

27  (emphasis added).

28

1    same notary book" and would "employ the same sampling methodology that Mattel's

2    expert has used" as set forth in Mattel's December 25 letter.[24]  MGA's letter also

3    provided significant additional details about the proposed testing protocol, including

4    (1) identifying the size of the proposed "microplugs" that MGA's expert would

5    extract ("small, hypodermic-needle sized holes . . . of about 0.5 millimeters in

6    diameter"); (2) representing that MGA's expert would seek to preserve a significant

7    portion of the subject handwriting for future sampling; and (3) promising that if

8    MGA elected to perform such sampling it would (a) notify the parties of the identity

9    and qualifications of its experts and the sampling location and (b) give the parties an

10   opportunity to observe the sampling.[25]

11        Mattel's counsel wrote back to Warren the same day, February 18, 2008,

12   asserting that MGA's proposal – although identical to Mattel's own testing protocol –

13   was "unacceptable to Mattel" and warning Warren that if he produced the notary

14   book to MGA's counsel, Mattel would seek court relief contending that Warren's

15   (and MGA's) actions "constitute[d] improper spoliation."[26]  After Warren indicated

16   that he planned to forward the notary book to MGA despite Mattel's objections,

17   Mattel's counsel wrote back to Warren and MGA on February 21, 2008, asserting

18   that Warren's transmission of the notary book to MGA without Mattel's consent or a

19   court order would "constitute violations of California statutes governing the handling

20   of notary books. . . ."[27]  Mattel's counsel threatened that if Warren produced the

21   notary book to MGA, Mattel would seek sanctions against MGA and its counsel, as

22   well as against Ms. Prince and her counsel.[28]

---

23   [24]    Id.

24   [25]    Id.

25   [26]    Sloan Decl., Ex. 11: Feb. 18, 2008 letter from D. Hutnyan to D. Warren at 1, 2.

26   [27]    Sloan Decl., Ex. 12: Feb. 21, 2008 letter from D. Hutnyan to R. Weinstein and D. Warren at 1.  Significantly, Mattel did not specify in the letter – and to this day, has not identified – any statute that would bar the production of the notary book.

27   [28]    Id. at 2.

28

On February 22, 2008, MGA wrote to Warren to correct many of the inaccuracies and distortions in Mattel's February 21 letter.[29]  MGA noted first that, "contrary to Ms. Hutnyan's suggestions, Mattel did not obtain Ms. Prince's notary book by way of Court Order"; nor had Mattel sought court approval to destructively test it.[30]  Rather, MGA pointed out, Mattel had obtained the notary book simply by writing a letter to Warren requesting to test it.  "Now that MGA has done likewise, we merely ask that you extend MGA the same courtesy that you have extended Mattel."[31]  MGA further noted that Mattel's objections were *premature* because MGA had not yet even decided whether to perform destructive testing and had represented that if it did, MGA would give notice to Mattel of (1) the nature of the proposed testing; (2) the name and credentials of the expert who would conduct the testing; (3) the location of the testing; and provide (4) an opportunity to observe the testing.  "Thus, *before MGA even begins sampling,* Mattel will have a full opportunity to raise any objections it believes appropriate."[32]

After Mattel once again rejected MGA's proposed protocol in an email to Warren, MGA sent an email to Mattel asking to schedule a telephonic meet-and-confer to work out the parties' differences.[33]  On February 25, 2008, at approximately 1:00 p.m., the parties held a telephonic meet-and-confer.[34]  During the conference, Mattel's counsel indicated (to the astonishment of MGA's counsel) *that she did not trust MGA's counsel* to maintain possession of the notary book pending any expert testing, but that she would consider entering a stipulation if it provided that the

---

[29]   Sloan Decl., Ex. 13: Feb. 22, 2008 letter from R. Weinstein to D. Warren.
[30]   Id. at 1.
[31]   Id.
[32]   Id. at 2.
[33]   Sloan Decl., Ex. 14: Feb. 22, 2008 email from M. Sloan to D. Hutnyan, & prior Feb. 22, 2008 email from D. Hutnyan to D. Warren.
[34]   Sloan Decl., ¶ 17.

1  notary book would be transmitted directly to MGA's proposed expert.[35]  *This was the*
2  *first time that Mattel's counsel had ever requested MGA to prepare a stipulation for*
3  *submission to the Court.*  In response, MGA's immediately set about drafting such a
4  stipulation.
5      Contrary to Mattel's suggestions that MGA delayed drafting such a
6  stipulation,[36] MGA forwarded its proposed stipulation to MGA within 45 hours of
7  the parties meet-and-confer.[37]  MGA's proposed stipulation responded to most, if not
8  all, of the concerns raised by Mattel's counsel in the meet-and-confer.  It limited the
9  number of samples which MGA's expert could extract and provided that the
10  "microplugs" would be less than one millimeter in diameter.[38]  It provided that
11  Mattel could elect to have its own expert attend and observe the extraction of the
12  microplug samples.[39]  Most importantly, it provided that the notary book would stay
13  in Warren's possession until after MGA notified Mattel by letter of: (1) the name of
14  the MGA expert or experts who would conduct the sampling; (2) the expert's
15  curriculum vitae; (3) the location of the expert's laboratory; and (4) samples of
16  "microplugs" similar to those that would be extracted from the notary book.[40]  Mattel
17  would then have "three days from its receipt of the above-referenced letter to object
18  to the contemplated testing."[41]  During this three-day period, the notary book would
19
20  [35]    Sloan Decl., ¶ 18.
21  [36]    Docket No. 2563 at 3.
    [37]    Sloan Decl., Ex. 15: Feb. 27, 2008 email from R. Weinstein to D. Hutnyan;
22  attaching proposed Stipulation.  MGA's email to Mattel's counsel, attaching the
    proposed stipulation, indicates that it was transmitted to Ms. Hutnyan at exactly
23  11:00 a.m. on Wed., Feb. 27, 2008. (Id.).  The parties' telephonic meet and confer on
    Mon., Feb. 25 had ended at approximately 2:00 p.m., (Sloan Decl., ¶ 17), or
24  approximately 45 hours earlier.
    [38]    Sloan Decl., Ex. 16: Proposed Stipulation at ¶¶ 3, 4.
25  [39]    Id., ¶ 12.
26  [40]    Id., ¶ 7.
27  [41]    Id., ¶ 11.
28

1 remain in Warren's custody, and could not be transmitted to MGA barring an

2 agreement of the parties or an order by the Court.[42]  In return for these additional

3 safeguards, MGA sought only one concession: Mattel's agreement that the March 17

4 deadline for submitting expert rebuttal reports would be continued until after the

5 court resolved any objections Mattel raised to the proposed testing.[43]

6      Due to the rapidly approaching deadline for submitting rebuttal expert reports,

7 MGA sent several emails to Mattel in the following days seeking to expedite Mattel's

8 review and approval of the proposed stipulation.[44]  On February 28, 2008, Mattel's

9 counsel indicated that it was still reviewing the stipulation, but that it "would

10 probably move things along significantly" if MGA would identify the expert it

11 planned to employ to perform the sampling.[45]  Within hours, MGA sent a letter to

12 Mattel's counsel identifying MGA's ink expert, Dr. Albert Lyter III, and transmitting

13 his curriculum vitae.[46]

14      Notwithstanding this accommodation by MGA, *Mattel did not respond to*

15 *MGA's proposed stipulation for over five days.*  On Monday, March 3, 2008, Mattel

16 finally sent a letter to MGA objecting to the stipulation on numerous grounds,

17 including the following.  First, Mattel complained that the stipulation "does not

18 reflect any plan to obtain the Court's approval of Mr. Lyter and his credentials,"[47]

19 although as Mattel well knew, the stipulation specifically provided that no testing

20 could take place until after the Court had resolved any objections raised by Mattel –

21

---

22 [42]   Id., ¶¶ 8-9.

23 [43]   Id., ¶ 15.

23 [44]   Sloan Decl., Ex. 17: Feb. 28, 2008 email from M. Sloan to D. Hutnyan; Ex. 18:
24 Feb. 29, 2008 email from M. Sloan to D. Hutnyan; Ex. 19: Mar. 2, 2008 email from
M. Sloan to D. Hutnyan.

25 [45]   Sloan Decl., Ex. 20: Feb. 28, 2008 email from D. Hutnyan to M. Sloan.

26 [46]   Sloan Decl., Ex. 21: Feb. 28, 2008 letter from R. Weinstein to D. Hutnyan.

26 [47]   Sloan Decl., Ex. 22: Mar. 3, 2008 letter from D. Hutnyan to R. Weinstein at 1-
27 2.

28

1 thus ensuring that the Court *would have to approve* Dr. Lyter's credentials before any

2 testing could proceed.[48]  Second, Mattel insisted that the stipulation should prohibit

3 MGA's expert from handling the notary book outside the presence of Mattel's expert

4 for any reason,[49] notwithstanding that Mattel and its expert had had unfettered access

5 to the notary book for over four and half months.  Third, Mattel also refused MGA's

6 request to extend the deadline for expert rebuttal reports pending any resolution of

7 Mattel's objections.[50]

8      MGA responded to Mattel's letter within 11 hours.  On Monday evening,

9 March 3, MGA sent Mattel a letter responding to Mattel's objections and attaching

10 an amended stipulation responding to some of those concerns.[51]  Contrary to Mattel's

11 claims that "MGA refused to cure any" of the purported "defects" in the proposed

12 stipulation, (App. at 4), MGA agreed, "[i]n the spirit of compromise," to make

13 several amendments requested by Mattel.[52]  MGA noted, however, that the whole

14 stipulation would be rendered futile if Mattel refused to agree to the provision

15 extending the March 17 deadline for submitting expert rebuttal reports.[53]  MGA

16 requested Mattel to approve the amended stipulation by the following day, March 4,

17 2008, by no later than 4:00 p.m.[54]

---

18 [48]   Sloan Decl., Ex. 16: Proposed Stipulation at ¶ 11.

19 [49]   Sloan Decl., Ex. 22: Mar. 3, 2008 letter from D. Hutnyan to R. Weinstein at 2.

20 [50]   Id.

21 [51]   Sloan Decl., Ex. 23: Mar. 3, 2008 letter from M. Sloan to D. Hutnyan at 1; Ex.
22 24: Amended Proposed Stipulation).  MGA transmitted the letter and amended
stipulation to Mattel's counsel by email at 10:51 p.m. on Monday, March 3, 2008.
(Sloan Decl., Ex. 25.)  Mattel's March 3 letter transmitted to MGA by email
23 approximately 11 hours earlier, at 11:39 a.m. (Sloan Decl., Ex. 26.)

[52]   *See, e.g.,* Sloan Decl., Ex. 23: Mar. 3, 2008 letter from M. Sloan to D.
24 Hutnyan at 3 (stating that MGA will amend stipulation to "conform more closely
with Judge Infante's August 30, 1997 Order;" to define "normal environmental
25 conditions;" and provide that all samples must be take in one day).  *See also* Sloan
Decl., Ex. 24: Amended Proposed Stipulation, ¶¶ 5, 9, 10, 14.

26 [53]   Sloan Decl., Ex. 23: Mar. 3, 2008 letter from M. Sloan to D. Hutnyan at 4.

27 [54]   Id.

28

On March 5, 2008, Mattel finally wrote back rejecting the amended stipulation and raising a host of new, largely baseless objections.[55]  Recognizing that MGA was unlikely to be able to work out a compromise with Mattel, and facing the rapidly approaching March 17 deadline, MGA finally subpoenaed the notary book from Warren on March 5, 2008 and directed Warren to send the notary book directly to Dr. Lyter.[56]  On March 6, 2008, MGA sent a letter to Mattel, informing Mattel that due to the March 17 deadline, Dr. Lyter would have to perform the sampling on March 10 or March 11, 2008, and inviting Mattel to have its expert attend and observe any sampling.[57]

On March 8, 2008, Mattel gave MGA notice of its intent to file its application *ex parte*.[58]  In response, MGA once again asked Mattel to stipulate to continue the March 17 deadline, and noted that without such a commitment, "we have little choice but to proceed with the sampling immediately in order to meet the Court's expert discovery deadline."[59]  Mattel responded once again by threatening to seek sanctions against MGA if it engaged in any destructive testing and refusing to extend the March 17 deadline.[60]

In response to Mattel's threats and its *ex parte* application, MGA has instructed Dr. Lyter not to engage in any destructive sampling pending the Discovery Master's resolution of Mattel's *ex parte* application.[61]

---

[55]   Sloan Decl., Ex. 27: Mar. 5, 2008 letter from D. Hutnyan to M. Sloan and R. Weinstein.
[56]   Sloan Decl., Ex. 28: Mar. 5, 2008 letter from R. Weinstein to D. Warren, with attached subpoena.
[57]   Sloan Decl., Ex. 29: Mar. 6, 2008 letter from M. Sloan to D. Hutnyan.
[58]   Sloan Decl., Ex. 30: Mar. 8, 2008 email from D. Hutnyan to M. Sloan.
[59]   Sloan Decl., Ex. 31: Mar. 8, 2008 email from M. Sloan to D. Hutnyan.
[60]   Sloan Decl., Ex. 32: Mar. 9, 2008 email from M. Zeller to M. Sloan and D. Hutnyan; Ex. 33: Mar. 9, 2008 email from D. Hutnyan to M. Sloan.
[61]   Sloan Decl., ¶ 37.

1   On March 12, MGA informed Mattel's counsel, by phone and email, that it

2   had instructed Dr. Lyter not to perform any sampling pending the resolution of

3   Mattel's *ex parte* application, and told Mattel that MGA would need to file this *ex*

4   *parte* application unless Mattel agreed to stipulate to the extension of the March 17

5   deadline.[62] Even in the face of this information, Mattel refused to stipulate to an

6   extension.[63]

### III.   ARGUMENT

7

8   **A.   An Order Extending The Time To Serve A Rebuttal Expert Report Is Necessary Because The March 17 Deadline Is Only Days Away**

9

10   A deadline established by a scheduling order may be modified upon a showing

11   of "good cause." Fed. R. Civ. P. 16(b)(4); *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d

12   1080, 1087-88 (9th Cir. 2002).  An *ex parte* application may be granted where the

13   evidence shows that the moving party's cause will be irreparably prejudiced if the

14   motion is heard according to the regular noticed motion procedures, and the moving

15   party is without fault in creating the crisis that requires *ex parte* relief. *Mission*

16   *Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

17   Here, MGA's Application should be heard *ex parte* and the requested relief

18   granted because there is "good cause" to extend the March 17 deadline.  MGA will

19   be irreparably prejudiced if it cannot submit a rebuttal expert report.  Moreover,

20   despite MGA's diligence attempts to meet the March 17 deadline, an extension is

21   necessary as a direct result of Mattel's obstructionist delays.

22

23

24

25

---

26   [62]   Sloan Decl., ¶ 2 & Ex. 1.

27   [63]   Sloan Decl., Ex. 1.

28

1.  **MGA Would Be Irreparably Prejudiced If This _Ex Parte_ Motion Were Not Granted Or It Was Heard According To The Regular Noticed Motion Procedures**

Mattel's expert Valery Aginsky wrote a report in which he opined that the notation "From 1998 Missouri" in the notary book entry was written "at a later time" compared to the rest of the August 26, 1999 entry concerning Carter Bryant's drawings.[64]  He also opined regarding the "most probable sequence" of the writing of certain entries in the notary book.[65]

Mattel's obvious intent in obtaining this expert "opinion," albeit misplaced as a matter of fact and circumstance, is to suggest that either Ms. Prince, Mr. Bryant or some other person improperly added this notation after the August 1999 entry had been made.  Given the potential importance in this case of establishing the date on which these drawings were made, MGA has the right to contest such expert "opinion" by conducting independent testing of the notary book and proffering an expert opinion in rebuttal.  Fed. R. Civ. P. 34(a)(1) (permitting a party to "inspect, copy, test or sample . . . any designated documents"); _see also_ Fed. R. Evid. 706(d) ("Nothing in this rule limits the parties in calling expert witnesses of their own selection"); _Williams v. Nat'l Sec. Ins. Co._, 237 F.R.D. 685, 695 (M.D. Ala. 2006) (defendant "would naturally have the right to present expert testimony to rebut the plaintiffs' case").  If MGA is prevented from serving a rebuttal expert report because the March 17 deadline expires without extension, MGA may be unable to contest Aginsky's purported scientific findings, which to date have gone untested and unchallenged.  Fed. R. Civ. P. 26(a)(2)(B)-(C); Fed. R. Civ. P. 37(b)-(c); _Von Brimer v. Whirlpool Corp._, 536 F.2d 838, 844 (9th Cir. 1976) (failure to obey a discovery order may result in order preclusion of evidence); _Congressional Air, Ltd. v. Beech_

---

[64]    Sloan Decl., Ex. 3: Expert Report of Valery Aginsky at 8.

[65]    _Id._

1  *Aircraft Corp.*, 176 F.R.D. 513, 517 (D. Md. 1997) (rebuttal expert report stricken

2  where not timely served).  The denial of an opportunity to test and challenge

3  evidence imposes irreparable prejudice.  *Cf. Daubert v. Merrell Dow Pharm., Inc.*,

4  509 U.S. 579, 596, 113 S. Ct. 2786, 2798, 125 L. Ed. 2d 469 (1993) ("Vigorous

5  cross-examination, presentation of contrary evidence, and careful instruction on the

6  burden of proof are the traditional and appropriate means of attacking shaky but

7  admissible evidence").

8    2.   **MGA's Application For An *Ex Parte* Order Extending The**
9          **March 17 Deadline Should Be Granted Because The Present**
         **Crisis Was Created By Mattel, Not MGA**

10      MGA has diligently pursued the "microplug" samples ever since receiving the

11  Aginsky report so that it could meet the March 17 deadline.

12      On or about February 11, 2008, Mattel served MGA with a copy of Aginsky's

13  expert report.  By February 18, 2008, only one week later and over four weeks

14  before rebuttal reports were due, MGA had digested the report, located an expert to

15  review and test the accuracy of Aginsky's findings, and commenced the process of

16  obtaining the notary book from Prince's counsel in anticipation of testing.[66]  To avoid

17  any unnecessary delay, MGA specifically volunteered to "replicate Mattel's testing

18  of the same notary book" and "employ the same sampling methodology that Mattel's

19  expert has used."[67]

20      Mattel immediately commenced its campaign to obstruct MGA's efforts to

21  meet the March 17 deadline.  As if its objection had already been loaded in the

22  chamber, Mattel immediately fired off a letter objecting to the protocol Mattel itself

23  had already followed.[68]  Mattel's counsel threatened sanctions on everyone in sight:

24

25  ──────────────
    [66]  Sloan Decl., Ex. 10: Feb. 18, 2008 letter from R. Weinstein to D. Warren.

26  [67]  *Id.*

27  [68]  Sloan Decl., Ex. 11: Feb. 18, 2008 letter from D. Hutnyan to D. Warren.

28

1  MGA, MGA's counsel, Prince, and Prince's counsel.[69]  During a February 25, 2008
2  meet-and-confer initiated by MGA in an attempt to resolve Mattel's concerns (about
3  the procedures Mattel had previously employed when Aginsky took his samples),
4  Mattel's counsel proclaimed that she did not trust MGA's counsel to maintain
5  possession of the notary book pending any expert testimony, even telling MGA's two
6  attorneys on the conference call that "You have an overinflated sense of your
7  integrity."[70]

8       Notwithstanding these unfounded statements, MGA's counsel set about the
9  task of expeditiously drafting a stipulation *requested by Mattel* that included even
10 greater "protections" concerning the handling and sampling of the notary book.
11 MGA drafted and forwarded the proposed stipulation within 45 hours of the meet-
12 and-confer.[71]  The day after receiving the proposed stipulation, in response to an
13 email from MGA requesting her comments, Mattel's counsel advised that she was
14 still reviewing the proposed stipulation, but asked for the name of MGA's expert.[72]
15 MGA provided the name and a copy of Dr. Lyter's curriculum vitae within hours.[73]

16      Finally, on March 3, 2008, five days after receiving the stipulation, Mattel's
17 counsel responded to the proposed stipulation with a letter listing a litany of largely
18 baseless and trivial objections.[74]  Notwithstanding the dearth of any well-grounded
19 and substantive objections, in the spirit of compromise, MGA amended the proposed
20 stipulation and returned it to Mattel for consideration—and did so on the same day,

21

22 [69]   Sloan Decl., Ex. 12: Feb. 21, 2008 letter from D. Hutnyan to R. Weinstein and
23 D. Warren.
   [70]   Sloan Decl., ¶ 18.
24 [71]   Sloan Decl., ¶ 17 & Ex. 15: Feb. 27, 2008 email from R. Weinstein to D.
   Hutnyan, attaching proposed stipulation.
25 [72]   Sloan Decl., Exs. 17-21.
26 [73]   Sloan Decl., Ex. 21.
27 [74]   Sloan Decl., Ex. 22.

28

1    March 3, 2008.[75]  MGA respectfully requested Mattel's approval of the amended

2    stipulation by March 4, at 4:00 p.m.[76]  Mattel waited until March 5 to respond and,

3    when it did, again raised a host of baseless objections most of which had not

4    previously been mentioned by Mattel.[77]  Mattel also objected to an extension of the

5    March 17 deadline.[78]

6       Realizing that Mattel was intent on delaying the process as opposed to

7    reaching an agreement, MGA finally sent a subpoena to Ms. Prince's counsel on

8    March 5, 2008 in order to obtain the notary book and begin testing so that the

9    rebuttal expert report could be completed before the March 17 deadline.[79]  In

10    response, Mattel noticed and then filed an *ex parte* application seeking a protective

11    order to prevent MGA from taking any samples from the notary book for expert

12    testing.[80]  Notably, Mattel did not seek a protective order that would have provided it

13    the protections it claimed were necessary, but rather one to prevent testing

14    altogether.[81]  In addition, Mattel has repeatedly refused to agree to a simple

15    extension of the March 17 deadline, without providing a single meaningful

16    explanation why.

17       Viewed in context, Mattel's purpose in opposing MGA's simple request—to

18    perform the exact same testing pursuant to the exact same protocol—is readily

19    apparent: to cause inconvenience and delay, so that MGA could never timely file its

20    rebuttal export report.  From its calculated delays in responding to MGA's requests

21    and inquiries, to its baseless "objections," to its repeated, inexcusable refusals to

22

[75]    Sloan Decl., Ex. 23.

23 [76]    Id.

24 [77]    Sloan Decl., Ex. 27.

[78]    Id.

25 [79]    Sloan Decl., Ex. 28.

26 [80]    Docket No. 2563.

27 [81]    Id.

28

1  agree to an extension of the March 17 deadline, Mattel has made its goal readily
2  clear. Delay, delay, delay. And interfere, at all costs, with MGA's right to replicate
3  Aginsky's tests and challenge the accuracy of his findings. The complete lack of
4  merit of its *ex parte* application to the Discovery Master to prevent testing altogether,
5  and its nonsensical opposition to this Application, are merely the latest plays in
6  Mattel's arsenal of obstructionist tactics.

7       In light of the foregoing, MGA has clearly demonstrated the "good cause"
8  necessary to obtain *ex parte* relief extending the March 17 deadline for submitting an
9  expert report. *Zivkovic*, 302 F.3d at 1087-88 (good cause must be shown to modify
10  scheduling order deadline).

### B.   Mattel Has No Basis To Object To This *Ex Parte* Application

13       Mattel has no basis to oppose this Application, other than achievement of its
14  calculated effort to prevent MGA from preparing a rebuttal report. When asked to
15  stipulate to the relief requested by this Application, Mattel responded that it opposed
16  the Application on the grounds that "[i]t is premature, unnecessary and unfounded."
17  [82] These unexplained, one-word objections to the Application are clearly insufficient
18  and unsupported by law and fact.

19       First, the Application is clearly not "premature." The Application is being
20  filed on Friday, March 14. The current deadline for rebuttal expert reports to be
21  served is Monday, March 17. Because of Mattel's obstructionist tactics, including an
22  unresolved motion that must be decided before testing on the notary book can even
23  commence, MGA will be unable to meet the March 17 deadline.[83] To suggest that
24  this Application for an extension is premature under such circumstances is simply

26  [82]    Sloan Decl., Ex. 1.
27  [83]    *See also* Lyter Decl., ¶¶ 7-9.

28

absurd.  A party should make a prompt request for modification once it becomes apparent that compliance is not possible. *E.g., Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999).  In addition, as a general matter, *ex parte* applications for extensions of time are to be brought before the prescribed time has expired. Fed. R. Civ. P. 6(b)(1).

Second, the Application is clearly not "unnecessary," except in the sense that it would have (and should have) been unnecessary but for Mattel's unreasonable efforts to block MGA's testing of the notary book, and its unjustifiable refusal to agree to extend the March 17 deadline even after it threatened to seek sanctions against MGA if it took samples from the notary book while Mattel's *ex parte* application was pending.  Reasonable counsel would have simply agreed to the requested extension. However, because Mattel has repeatedly refused to cooperate and stipulate to an extension of the March 17 deadline, the Application is indeed "necessary."

Finally, for the reasons set forth above, the Application is clearly not "unfounded."  MGA cannot meet the March 17 deadline because, *inter alia*, Mattel filed an *ex parte* application on the day MGA's expert was to begin testing and, as of today's date (one business day before the March 17 deadline), that *ex parte* application has not been resolved by the Discovery Master.  In fact, Mattel's reply brief is not due until 6:00 p.m. on Friday, March 14 -- after the close of business at the office of the Discovery Master.  It is thus difficult to comprehend how the Application could be considered  "unfounded."[84]

---

[84]    Mattel has on at least one occasion intimated that the March 17 deadline should not be extended because MGA has had years to perform expert testing on the Prince notary book.  Sloan Decl., Ex. 32.  This is nonsense.  MGA had no cause to test the ink on the notary book until Mattel served the Aginsky report on February 11, 2008.

**C.** **In the Event the Court Decides Against Extending the March 17
Deadline, It Should Preclude Mattel From Introducing Any Expert
Testimony About the Notary Book**

In the alternative to extending the March 17 deadline, the Court should
preclude Mattel from introducing testimony from Aginsky or any other expert
concerning the notary book, or the ink used in the notary book, in order to penalize
Mattel for its bad-faith attempts to block MGA's sampling of the notary book. The
Court can impose such sanction pursuant to its inherent disciplinary authority. *See
Gumbel v. Pitkin*, 124 U.S. 131, 144, 8 S. Ct. 379, 383, 31 L. Ed. 2d 374 (1888)
(courts have the inherent equitable power over their own process "to prevent abuses,
oppression, and injustices"); *Uniguard Sec. Ins. Co. v. Lakewood Eng'g & Mfg.
Corp.*, 982 F.2d 363, 368-69 n.2 (9th Cir. 1992) (district court has inherent
sanctioning power to exclude expert testimony not only for bad faith but also for
willfulness or fault); *Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444, 446
(1st Cir. 1997) (district court has inherent power to exclude evidence to prevent
unfair prejudice).

Such sanctions are warranted here. In short, Mattel has obstructed MGA's
ability to rebut Mattel's expert testimony by, *inter alia*, objecting to the very same
sampling that Mattel's own expert performed on the notary book in spite of the fact
that MGA offered to abide by a stipulated protocol that provided substantially more
safeguards than Mattel provided to MGA. As such, Mattel's conduct can only be
characterized as obstructionist.

1

## IV.   CONCLUSION

2   For these reasons set forth above, MGA respectfully requests that its *Ex Parte*

3   Application be granted and the Proposed Order submitted along with this

4   Application be issued.

5

6   DATED:  March 14, 2008                    SKADDEN, ARPS, SLATE, MEAGHER &
                                             FLOM, LLP

7

8                                            By: _____
                                             Thomas J. Nolan

9                                            Attorneys for MGA Entertainment, Inc.,
                                             MGA Entertainment (HK) Limited,
10                                           MGAE de Mexico, S.R.L. de C.V., and Isaac
                                             Larian
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28