# Exhibit 1

**Lanstra, Allen L (LAC)**

| | |
|---|---|
| From: | Diane Hutnyan [dianehutnyan@quinnemanuel.com] |
| Sent: | Thursday, March 13, 2008 10:08 AM |
| To: | Sloan, Matthew E (LAC) |
| Cc: | Weinstein, Ryan (LAC); Lanstra, Allen L (LAC); Michael T Zeller; Chris Grohman |
| Subject: | Re: Notice of Intent to File Ex Parte Application or in the Alternative Request for Stipulation Extending Expert Report Deadline |

Matt,

We will oppose your motion. It is premature, unnecessary and unfounded.

Diane

Diane Hutnyan
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 3rd Floor
Los Angeles, CA   90017

Direct:  (213) 443-3666
Main Phone:  (213) 443-3000
Main Fax:  (213) 443-3100

E-mail:  dianehutnyan@quinnemanuel.com
Web:   www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

----- Original Message -----
From: Sloan, Matthew E <Matthew.Sloan@skadden.com>
To: Diane Hutnyan
Cc: Weinstein, Ryan (LAC) <Ryan.Weinstein@skadden.com>; Lanstra, Allen L (LAC) <Allen.Lanstra@skadden.com>
Sent: Thu Mar 13 09:58:16 2008
Subject: FW: Notice of Intent to File Ex Parte Application or in the Alternative Request for Stipulation Extending Expert Report Deadline

Diane -- As I indicated in my email yesterday (below), please notify us immediately whether you will agree to our proposed stipulation.  We have already had to begin work on the ex parte, and would like to stop any unnecessary work if you will agree to our very reasonable proposal.  We would greatly appreciate your immediate response.

Thanks,

- Matt

From: Sloan, Matthew E (LAC)
Sent: Wednesday, March 12, 2008 3:44 PM
To: 'Diane Hutnyan'
Cc: Lanstra, Allen L (LAC); Weinstein, Ryan (LAC)
Subject: Notice of Intent to File Ex Parte Application or in the Alternative Request for Stipulation Extending Expert Report Deadline

1

Exhibit 1 ,
P. 6

Diane -- Per our phone call earlier today, I am writing to once again request your agreement to enter into a stipulation extending the March 17, 2008 deadline for submitting MGA's expert rebuttal report on any ink testing or other forensic examination performed on Ms. Prince's notary book. In the event Mattel is unwilling to extend this deadline, please consider this email notice, under Local Rule 7-19.1 and any other applicable rules, that MGA will be filing an ex parte application with Judge Larson tomorrow or Friday seeking to extend the March 17 deadline so as to give MGA an opportunity to perform forensic tests and submit an expert report regarding MGA's testing of Ms. Prince's notary book. In connection with the ex parte, MGA may also seek as an alternative (or additional) remedy an order precluding Mattel from introducing any testimony or other evidence concerning its testing of the notary book as a result of what we consider to be Mattel's improper actions in blocking MGA from completing its own testing of the notary book before the March 17 deadline.

As indicated, our proposed stipulation would provide that MGA would have three weeks from the Discovery Master's Order resolving Mattel's pending ex parte application for a protective order in which to take samples from the notary book and serve its rebuttal expert report on Mattel. (MGA will try to complete the testing and service of the expert report in a shorter time frame, but given our expert's busy schedule, we think the three-week window is justified and appropriate.)

Please inform me whether Mattel would agree to sign such a stipulation. Because the expert report deadline is on Monday, and we therefore want to file our ex parte, if necessary, no later than Friday, we need your answer to this question by 8:00 p.m. PST tonight.

In the event Mattel rejects our proposed stipulation, MGA will have no choice but to file the ex parte application mentioned above.

Thanks for your prompt consideration of this matter.

-- Matt

Matthew E. Sloan
Skadden, Arps, Slate, Meagher & Flom LLP

Los Angeles Office
300 South Grand Ave., Suite 3400
Los Angeles, CA 90071
T: (213) 687-5276 | F: (213) 687-5600
Main: (213) 687-5000
E: matthew.sloan@skadden.com <mailto:matthew.sloan@skadden.com>

------------------------------------------------------------------------
******************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
*************************************************
*************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
*************************************************
==================================================================================

Exhibit 1,
P. 7

# Exhibit 2



**Sutherland
▪ Asbill & ▪
Brennan** LLP

ATTORNEYS AT LAW

999 Peachtree Street, NE
Atlanta, GA 30309-3996
404.853.8000
fax 404.853.8806
www.sablaw.com

Daniel J. Warren
DIRECT LINE: 404.853.8028
E-Mail: daniel.warren@sablaw.com

September 11, 2007

<u>**VIA FEDERAL EXPRESS**</u>

Ms. Monita Jones
Quinn Emanuel Urquhart Oliver & Hedges, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111

RE:   Ms. Prince's Notary Book & Stamp
Our Ref. No. 22897.0001

Dear Ms. Jones

Per Diane Hutnyan's request of September 10, 2007, please find enclosed Jacqueline Prince's notary journal and stamp.  Please return these items to me at your convenience.

Very truly yours,

SUTHERLAND ASBILL & BRENNAN LLP

Daniel J. Warren

DJW/tlc
Enclosure

cc: Diana Torres, Esq.
      Michael Page, Esq.

AO 1757097.1

Atlanta   ▪   Austin   ▪   Houston   ▪   New York   ▪   Tallahassee   ▪   Washington, DC

Exhibit  2
P.  8

# Exhibit 3

www.rileywelch.com

# RILEY WELCH AGINSKY
## &
### FORENSIC DOCUMENT EXAMINATIONS, Inc.
P.O. Box 80225, Lansing, Michigan 48908-0225
Telephone (517) 394-1512  Fax (517) 882-2767

Thomas P. Riley, BS
Forensic Document Examiner *, **

Valery N. Aginsky, Ph.D., Ink Chemist
Gregoire P. Michaud, BA, Latent Print Examiner
Felix Adatsi, Ph.D., Toxicologist

Todd W. Welch, BA
Forensic Document Examiner*

February 8, 2008

Diane Cafferata Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3666

Re: Bryant v. Mattel

Dear Ms. Hutnyan:

I have examined the following document:

**A-1:** Official Journal of Notarial Acts comprising handwritten entries dated from 1/15/96
(pages 1 and 2) to 9/14/99 (pages 11 and 12).[1]

## EXAMINATION TASK

I was asked to determine whether the 8/26/99 notation "From 1998 Missouri" was written
contemporaneously with the rest of the entry dated 8/26/99 on pages 11 and 12 of document **A-1**
or whether it was written at a later date.

## QUALIFICATIONS

I am a forensic chemist of 27 years' experience. I am currently employed, as a Forensic Chemist
specializing in the field of ink analysis and document dating, with Riley, Welch & Aginsky
Forensic Document Examinations, Inc. (formerly known as Riley, Welch & Associates Forensic
Document Examinations, Inc.) I received my Ph.D. in Analytical Chemistry in 1980. Prior to
joining Riley, Welch & Associates I worked as a senior research chemist with the Forensic

---

[1] Also, I have reviewed the following documents: the August 30, 2007 Order of Judge Infante; 8 boxes of
original Carter Bryant production documents described in Judge Infante's August 30, 2007 Order; bates
numbered photocopies, video and photographs of these documents; the transcripts of Carter Bryant's
depositions taken on 11/4/2004 (Vol. 1), 11/5/2004 (Vol. 2), 11/8/2004 (Vol. 3); the transcripts of
Jacqueline Prince's deposition taken on 12/21/2004.

*Diplomate of the American Board of Forensic Document Examiners, Inc.
**American Society of Questioned Document Examiners

Exhibit 3 ,
P. 9



Science Center, Ministry of the Interior, Russia. I am experienced in a wide range of examination techniques, but my particular specialty is the analysis and dating of ink on documents by Thin-Layer Chromatography and Gas Chromatography-Mass Spectrometry. I am the author of more than 20 peer-reviewed articles on ink analysis and dating, including chapters in three books and two encyclopedias.

A copy of my curriculum vitae showing further details of my professional history and a list of my professional publications is attached hereto as Exhibit "VNA-1."

In the past five years I have been deposed in my capacity as an expert fifteen times and have testified at trial and hearings as an expert on thirteen occasions, a list of which is attached hereto as Exhibit "VNA-2." I am being compensated for my work in this case according to my hourly rate, which is outlined in the fee schedule attached hereto as Exhibit "VNA-3."

## REPORT OF LABORATORY EXAMINATION

The addition of extra writing can greatly change the meaning of the wording or the value of a document. Therefore, forensic document examinations are often conducted in order to determine whether two pieces of written text originated from the same pen.

As it is usually preferable not to damage the document, the process of forensic ink comparison always begins with the physical examination of the inks using techniques designed to obtain as much information as possible from the ink (and the document as a whole) by visual examination and other nondestructive means, such as microscopic and infrared absorption examinations.[2] If any of the nondestructive techniques shows that the inks being compared are different, then no additional tests, including more sophisticated chemical tests, are required to prove that the two pieces of the written text did not originate from the same pen.

If the nondestructive techniques cannot discriminate between the inks being compared, then chemical methods are to be used. A few samples of each ink are taken from the paper for their chemical analysis. Chemical methods are more effective for discriminating between inks of the same color than the physical (nondestructive) methods. It is widely accepted in the field of forensic writing ink analysis that a combination of two chemical methods, thin-layer chromatography (TLC) and gas chromatography-mass spectrometry (GC-MS), allows the examiner to retrieve maximum information about the composition of writing ink.

Writing inks are made of colorants (dyes, pigments) and a carrier (vehicle). Oil- and water-based ballpoint ink vehicles consist of two main ingredients – solvents that are used to dissolve or disperse the colorants, and the resins that are used to thicken the inks. TLC analyzes ink colorants (ink colored components) and GC-MS analyzes ink vehicle components (volatile solvents, resins and other noncolored ink components, such as modifiers, lubricants, thickeners, antiseptics, surfactants, by-products, etc.) That is, each of these two chemical methods, TLC and

---

[2] ASTM Standard Guide E1422-05, "Standard Guide for Test Methods for Forensic Writing Ink Comparison." Published January 2006. Originally approved in 1991. Last previous edition approved in 2001 as E 1422 – 01.

Exhibit  3  ,
P.  10



Ms. Diane Hutnyan                    February 8, 2008                    Page 3 of 8

GC-MS, can provide only some partial information about the composition of writing ink. In simple terms, TLC can analyze one half of the ink composition (1/2 of the "chemical fingerprint" of an ink), and GC-MS can analyze the other half of the ink composition (the other 1/2 of the "chemical fingerprint" of the ink). Thus, these two methods perfectly complement each other.[3]

The physical and chemical examinations including visual, microscopic, and infrared absorption examinations, TLC, and GC-MS were conducted in the following succession.

## PHYSICAL (NONDESTRUCTIVE OPTICAL) EXAMINATIONS

VISUAL EXAMINATION

As mentioned above, the insertion of a modifying clause or sentence may change the meaning of a document. Visual examination is an accepted method in the field of forensic document examination that is used to detect insertions (interlineations or additions). To determine that an insertion or addition has been made usually involves a study of the document as a whole.

Two most common indications of the insertion of a handwritten sentence are as follows[4]:

1. The inserted sentence and the balance of the document are written with different inks.

2. Some sentence is either ($A$) inserted between the lines of the initial text (if no sufficient space was available within the initial text) or ($B$) inserted/added immediately after the last line of the initial text (if no sufficient space is available immediately after the last line of the initial text, then the spacing/distance between the inserted sentence and the last line of the text is usually smaller than the spacing between the lines of this text).

All the pages of document A-1 that contained handwritten entries were examined visually (pages 1 through 12; entries dated 1/15/96 through 9/14/99; see Attachment 3). Among these pages, the only place that showed the insertion of material to the initial text was where the notation "From 1998 Missouri" was added to the entry dated 8/26/99 on page 11.[5] The 4 lines of the text "Original sketches of doll idea – characters 6-total = Names are: Zoe, Lupe, Hallidae, Jade, 2 males." appear evenly spaced and, without the presence of the 5th line (the notation "From 1998 Missouri"), they appear to fill up the entire cell of the table on page 11. Thus, a person wishing to add further information to this 4-line entry would have to squeeze the new wording in between the last line of the entry and the printed horizontal line of the cell of the table in a way that would prevent the same even spacing as was in the original entry. Because no sufficient space was available immediately after the last line of the initial 4-line entry, there is almost no spacing

---

[3] Aginsky, V.N. "Using TLC and GC-MS to Determine whether Inks Came from the Same Manufacturing Batch," *Journal of the American Society of Questioned Document Examiners*, Vol. 9, No. 1, 2006, pp. 19-27.

[4] Scientific Examination of Questioned Documents / Edited by J.S. Kelly and B.S. Lindblom. – 2nd edition, CRC Press, Taylor & Francis, 2006, pp. 319-335.

[5] There might be other notations on pages 1 through 12 that could have been inserted, but the overall appearance of the other entries on pages 1 through 12 did not suggest later insertion.

Exhibit 3 ,
P. 11



RILEY WELCH AGINSKY
Forensic Document Examiners Inc.

Ms. Diane Hutnyan                    February 8, 2008                    Page 4 of 8

between the inserted 5th line (the notation "From 1998 Missouri") and the last line of the initial 4-line entry.

## MICROSCOPY

The eye is in itself a powerful scientific instrument capable of discovering much information from an examination of ink on paper. With the aid of glass lenses for magnifying and focusing or a microscope (that uses visual light for illumination), the appearance of a line written on paper gives the document examiner valuable information that may allow discrimination between inks or may individualize the writing instrument through its performance characteristics.

In this examination, 4X and 10X magnifying glasses and a microscope with magnification up to 140X were used. I noted that the width of the ink lines in the notation "From 1998 Missouri" was slightly larger than the width of the ink lines in the rest of the 8/26/99 entry.

The microscopic study did not detect any significant differences between the inks or writing instruments used to produce the notation "From 1998 Missouri" and the surrounding entries written by the Notary Public on pages 11 and 12 of document A-1. This indicates that these inks are either of the same composition (formulation) or of different compositions that cannot be distinguished by the microscopic examination.

## INFRARED ABSORPTION

Inks of the same color (indistinguishable to the naked eye) may differently absorb/reflect invisible radiation beyond the red portion of the visible spectrum. This may allow discrimination between similar (in color) but not identical (in composition) inks. The infrared absorption examination did not detect any differences between the inks used to produce the notation "From 1998 Missouri" and the surrounding entries written by the Notary Public on pages 11 and 12 of document A-1. This indicates that these inks are either of the same composition (formulation) or of different compositions that cannot be distinguished by the infrared absorption examination method.

## CHEMICAL EXAMINATIONS

### SAMPLING

The sampling procedure involved removing portions of the written lines from the entries to be examined. This was accomplished with a hypodermic needle sized hole punch, which removes hole punches of less than 1 mm in diameter. (The bored out ink samples are removed with a plunger). The ink-on-paper samples were taken from 17 areas on pages 11 and 12 of document A-1. The paper blank samples were taken from two areas of paper (on page 11) that did not contain ink. These 17 sets of ink samples and 2 sets of paper blank samples were then analyzed by TLC and GC-MS (as described below). Prior to their analysis by TLC and GC-MS, the samples were kept in my laboratory at normal environmental conditions.[6]

---

[6] Normal room/office humidity and temperature: 72 degrees Fahrenheit plus/minus up to approximately 15 degrees Fahrenheit (i.e. 22°C +/- ca. 8°C).

Exhibit 3 ,
P. 12



RILEY WELCH AGINSKY
• FORENSIC DOCUMENT EXAMINATIONS •

Ms. Diane Hutnyan                    February 6, 2008                    Page 5 of 8

Black and white copies of pages 11 and 12 from which I took ink samples are attached to this report as Attachments 1 and 2, respectively. On these two attachments, each of the above 17 areas is circled and numbered. The questioned notation "From 1998 Missouri" is numbered as entry "8" (see Attachment 1).

CHROMATOGRAPHY

Chromatography is used to separate mixtures of substances into their components. Chromatography was discovered in 1901 when Michael S. Tswett separated pigments from chlorophyll using self-made chromatographic columns packed with various adsorbents. This fundamental discovery marked a milestone in the development of chromatographic separation techniques that led to Nobel prizes in chemistry. Today, chromatography has become the main analytical method in the pharmaceutical industry, food analysis, petrochemical analysis (crude oil, gasoline, kerosene, etc.), biochemical research, environmental analysis (e.g., pesticides in drinking water), clinical analysis (e.g., therapeutic drug monitoring, metabolism disorders), toxicology, forensic and doping analysis, and in many other areas. Thin-layer chromatography (TLC) and gas chromatography-mass spectrometry (GC-MS) are 2 chromatographic methods that are most widely used in analytical and forensic science laboratories all over the world.

Both methods, TLC and GC-MS, were used in this examination.

THIN-LAYER CHROMATOGRAPHY (TLC)

A TLC plate is a sheet of glass or plastic that is coated with a thin layer of a solid adsorbent (usually silica). A sample of the substance to be analyzed is dissolved in an appropriate solvent, and a small amount of the obtained solution is spotted near the bottom of the TLC plate. The TLC plate is then placed in a shallow pool of a solvent in a developing chamber so that only the very bottom of the plate is in the liquid. This liquid, or the eluent, is the mobile phase, and it slowly rises up the TLC plate by capillary action. The components of the sample become separated from one another because of their different degrees of attachment to the coating material (stationary phase) on the plate. The solvent is then allowed to evaporate, and the separated components of the mixture are visualized. If the separated components are colored, visualization is straightforward. If the colorant of ink is a mixture of different dyes, then these dyes are separated on the TLC plate into spots of different colors. Thus, TLC is a very effective method for discriminating between similarly colored inks (if the colorants of the inks consist of different ink dye components that can be separated on the TLC plate).

In this examination, the TLC analysis of the ink samples was conducted as follows. A subset consisting of 3 samples of ink (microplugs) was isolated from each of the above 17 sets of ink samples. Each subset of microplugs was placed into a small glass vial. To each of the vials 2-3 microliters of dimethylformamide were added. The ink was extracted for 30 minutes. The ink extract (visually colorless) was transferred by a capillary pipette to the TLC plate. This transfer process continued until the entire extract had been transferred to the TLC plate (for each sample to be tested). The TLC plate was allowed to air dry and was then placed in a vertical orientation into a developing tank. The tank was a glass enclosure with a removable lid and contained a few milliliters of solution (ethyl acetate – isopropanol – water – acetic acid = 30:15:10:1). After 10 minutes of development the TLC plate was removed from the tank and viewed in both UV (254

Exhibit 3 ,
P. 13



RILEYWELCHAGINSKY

and 365 nm) and white light with the unaided eye. Often similarities and differences in colored (dyes) and non-colored components present and relative proportions of the components are noted resulting in conclusions about the number of different ink formulations within the ink samples examined. In this examination, the TLC analysis of the ink samples showed that none of them contained any extractable ink components that could be seen in the form of separated colored spots on the TLC plate. It indicates that the colorant of the ink(s) within the ink samples examined is either carbon black or another insoluble black pigment. Thus, the TLC analysis did not detect any differences between the inks used to produce the notation "From 1998 Missouri" and the surrounding entries written by the Notary Public on pages 11 and 12 of document A-1. This indicates that these inks are either of the same composition (formulation) or of different compositions that cannot be distinguished by TLC.

GAS CHROMATOGRAPHY-MASS SPECTROMETRY (GC-MS)

GC-MS is a widely accepted analytical method of determining the qualitative composition of multi-component systems. It is routinely used in analytical and forensic science laboratories all over the world.[7] In the field of forensic document examination, GC-MS is used for discriminating between similarly colored inks that have been made using different ink vehicle components (solvents, resins, modifiers, lubricants, thickeners, antiseptics, surfactants, by-products, etc.)

The procedure of the GC-MS analysis involves vaporizing a sample and sweeping it through a column with a moving stream of gas termed the mobile phase or the carrier gas. Compressed gas cylinders commonly supply the gases. The sample is introduced into the injection port. The most common type of analysis involves the injection of approximately 1 microliter of a liquid sample into a heated injection port, which is interfaced to the capillary column where the actual separation takes place. The capillary column's inner walls are coated with a viscous liquid material (it is called the stationary phase). This inner coating will interact with different molecules to different extents. Those components of the mixture, which weakly interact with the stationary phase, pass more quickly through the column than those compounds, which have strong interactions with the stationary phase. For this reason, different components of the mixture exit the column at different times. As each component of the mixture comes off the column, it is detected by the MS detector. The detector sends a signal to the attached computer, which displays each signal as a peak on a chart. The array of peaks (one peak for each component) is called a chromatogram. A chromatogram obtained for a certain material can be considered as a "chemical fingerprint" of the vehicle components of this material. When GC-MS is used for comparing, say, 10 entries written with similarly colored inks, the chromatograms are recorded for each of the 10 inks, and then these "chemical fingerprints" are compared to determine the number of different ink formulations used to produce the entries.

In this examination, the GC-MS analysis of the ink samples was conducted as follows. A subset consisting of 3 to 5 microplugs was isolated from each of the above 17 sets of ink samples. Each subset of microplugs was placed into a small glass vial. (3 microplugs of the paper blanks were placed into another vial). To each of the vials 2 microliters of chloroform were added. The ink

---

[7] For example, GC-MS is used for separating accelerants in fire residue from suspected arson fires and for the analysis of drugs.

Exhibit __3__ ,
P. __14__



was extracted for 30 minutes. The extracts were analyzed using an Agilent 6850 gas chromatograph interfaced with an Agilent 5973N mass selective detector and equipped with a split/splitless injection system.

The GC-MS conditions and parameters were as follows:

Column: HP-5MS, 30 m x 0.25 mm ID x 0.25-micrometer film thickness (cross-linked 5%-phenyl-95%-dimethylpolysiloxane)

Carrier: helium (column flow 1 mL/min)

Oven program: isothermal for 1 min at 35°C, program 15°C/min to 230°C and hold for 7 minutes

Injection: 1 microliter, splitless, T=250°C

Purge on time: 1 minute

GC-MS transfer line: 280°C

The GC-MS analysis revealed the presence of 2 different inks of black color within the ink samples examined: the ink (*ink 1*) used to produce the notation "From 1998 Missouri" on page 11 of document A-1 and the ink (*ink 2*) used to produce the other examined entries on pages 11 and 12 of document A-1.

The difference between *ink 1* and *ink 2* revealed by the GC-MS test is that *ink 1* contains a vehicle component (alkyl derivative of cyclohexanol) that is absent in *ink 2*. This result of the GC-MS analysis shows that *ink 1* and *ink 2* are of different compositions.

## SUMMARY OF EXAMINATION RESULTS

I.     The black inks of two different compositions were found among the examined entries appearing on pages 11 and 12 of document A-1:

- *Ink 1:* the ink used to produce the notation "From 1998 Missouri" on page 11 of document A-1 (entry 8; see Attachment 1).

- *Ink 2:* the ink used to produce the remainder of the writing made by the Notary Public on pages 11 and 12 of document A-1 (entries 1 through 7 and 9 through 17; see Attachments 1 and 2).

II.     As considered above, in section Visual Examination, the location of the notation "From 1998 Missouri" on page 11 of document A-1 clearly shows that this notation is squeezed in between the last line of the 8/26/99 entry "Original sketches of doll idea — characters 6-total = Names are: Zoe, Lupe, Hallidae, Jade, 2 males." and the printed horizontal line below it.

Exhibit 3 ,
P. 15



## CONCLUSION

Based on the results of this examination and my professional experience, it is my opinion that the notation "From 1998 Missouri" was written on page 11 of document A-1 at a later time compared to the rest of the 8/26/99 entry written on pages 11 and 12 of document A-1.

It is also my opinion that the most probable sequence of the writing of the entries on pages 11 and 12 of document A-1 was as follows:

1. The entry dated 8/26/99
2. The entry dated 9/14/99
3. The second entry dated 9/14/99
4. The notation "From 1998 Missouri"

## DISPOSITION OF EVIDENCE

The evidence was returned to Mr. Daniel J. Warren, Esq. (Sutherland Asbill & Brennan, LLP, 999 Peachtree Street, Suite 2300, Atlanta, GA 30309) on January 31, 2008 via Federal Express, tracking number 8635 6224 9130.

<div align="center">

Very truly yours,

RILEY, WELCH & AGINSKY
FORENSIC DOCUMENT EXAMINATIONS, INC.

Valery N. Aginsky, Ph.D.
Forensic Chemist

</div>

Attachments:

Attachment 1 – Reduced copy of page 11 of document A-1
Attachment 2 – Reduced copy of page 12 of document A-1
Attachment 3 – Reduced copies of the cover page and pages 1 through 12 of document A-1
Exhibit "VNA-1" – Curriculum Vitae (incl. List of publications)
Exhibit "VNA-2" – Court Cases and Depositions
Exhibit "VNA-3" – RWAFDE Schedule of Fees

<div align="center">

Exhibit 3,
P. 16

</div>

# Attachment 1

## Reduced copy of page 11

## of document A-1

Exhibit $\mathcal{3}$ ,
P. 17

Carter Bryant - 11

1319 W. 160th St.

Gardena, CA 90247

Joseph Josef Kubick

Victoria Pelzin - 10

Original sketches of F

Power of Attorney - 9

Letter

Acknowledgement - 14

Acknowledgement - 15

Acknowledgement - 16

PB-2

Exhibit 3,
P. 18

# Attachment 2

## Reduced copy of page 12

## of document A-1

Exhibit 3
P. 19

Handwritten notes:
- 13 drawings — 12
- Each drawing stamped & signed to adtn. sig. attorn — 17
- page — form contain signature notarized — 13

Exhibit 3, P. 20

# Attachment 3

## Reduced copies of the cover page and

## pages 1 through 12 of document A-1

Exhibit 3 ,
P. 21



OFFICIAL

Journal of Notarial

Exhibit 3,
P. 22

| # | Date | Type of Signature | Type of Document | Name and Address of Signer |
|---|---|---|---|---|
| 1 | | Acknowledgment | Letter of Authorization | John Koczis<br>% Western States Mechanical<br>1005 W 190th St., Gardena, CA 90248 |
| 2 | | Acknowledgment | Deposition Release | Rick Loff<br>% SMAARDAN |
| | | | | 14009 Halldale Ave. Gardena, CA ... |
| 3 | | General Release | General Release for Turner Construction | Karen Roach<br>% Western States Mechanical<br>1005 W. 190th St. Gardena CA 9... |
| 4 | | Affidavit/Declaration for Collection of Decedent's Deposit Money | From Jury Pool Facility | Kurt Werter<br>4044 Micaleread .<br>Buck Blu Vodar, CA 90215 |
| 5 | | Acknowledgment | Letter of Authorization | John Koczis<br>% Western States Mechanical<br>1005 W 190th Street Gardena, CA |
| 6 | | Acknowledgment | Letter of Authorization | John Koczis<br>% Western States Mechanical<br>1005 W 190th Street Gardena |
| 7 | 5/20/06 | General Release Acknowledgment | Warranty Release | Rick Loff<br>% SMAARDAN |
| | | | | 14009 Halldale Ave. Gardena CA 90248 |
| 8 | | Acknowledgment | Power of Attorney | David Johnson<br>% Western States Mechanical<br>1005 W 190th Stray, Gardena |

Exhibit 3,
P. 23

2

| Identification | Additional Information | Notary Fee | Signature of Signer | Right Thumbprint of Signer | |
|---|---|---|---|---|---|
| ☒ Personally Known by the Notary<br>☐ ID Cards — Describe each card below<br>☐ Credible Witness(es) — include signature of each witness | | Ø N/A | [signature] | Top of thumb here | 1 |
| ☒ Personally Known by the Notary<br>☐ ID Cards — Describe each card below<br>☐ Credible Witness(es) — include signature of each witness | Rick is V.P. for Smerdon | Ø N/F | [signature] | Top of thumb here | 2 |
| ☒ Personally Known by the Notary<br>☐ ID Cards — Describe each card below<br>☐ Credible Witness(es) — include signature of each witness | | Ø N/F | [signature] | Top of thumb here | 3 |
| ☒ Personally Known by the Notary<br>☐ ID Cards — Describe each card below<br>☐ Credible Witness(es) — include signature of each witness | | Ø N/F | [signature] | Top of thumb here  | 4 |
| ☒ Personally Known by the Notary<br>☐ ID Cards — Describe each card below<br>☐ Credible Witness(es) — include signature of each witness | | Ø N/F | [signature] | Top of thumb here | 5 |
| ☒ Personally Known by the Notary<br>☐ ID Cards — Describe each card below<br>☐ Credible Witness(es) — include signature of each witness | | Ø N/F | [signature] | Top of thumb here | 6 |
| ☒ Personally Known by the Notary<br>☐ ID Cards — Describe each card below<br>☐ Credible Witness(es) — include signature of each witness | | Ø N/F | [signature] | Top of thumb here | 7 |
| ☒ Personally Known by the Notary<br>☐ ID Cards — Describe each card below<br>☐ Credible Witness(es) — include signature of each witness | V.P. for Western States | Ø N/F | [signature] | Top of thumb here | 8 |

Exhibit 3
P. 24

| Name and Address of | | |
|---|---|---|
| Eric Johnson ℅ Western States Mechanical 1002 W. 190th St. Gardena, CA 9024... | | |
| Stan Makowski ℅ Western States | | |
| 1002 W. 190th Street, Gardena, CA 2000... | | |
| Lea Johnson ℅ Western States | | |
| 1002 W. 190th St. Gardena, CA 90... | | |
| Ben Johnson ℅ Western States | | |
| Karen Roach ℅ Western States Mechan... 1002 W. 190th, Gardena, CA | | |
| Lea Johnson ℅ Western States Mechanical | | |
| Bobbi Kacir ℅ Western States Mechanical | | |
| John J. Kosser | | |

Exhibit 3
P. 25

Exhibit 3 ,
P. 26

| Printed Name and Address of Signer | Title | | Acknowledgment | |
|---|---|---|---|---|
| Elizabeth Anne Kocis | | | Acknowledgment | |
| Lewis Johnson<br>Vice President / Western Region<br>1005 W. 19th Street Garden Grove | | | Acknowledgment | |
| John Kocis<br>Western States Mechanical<br>Gardena CA 90249 | | | Acknowledgment | |
| Daniel Funk<br>% Image Media Interactive<br>1635 Street South Hand | | | Acknowledgment | |
| Daniel Funk<br>% Image Media International<br>1435 16th Street Four Brands | | | Acknowledgment | |
| David Funk<br>% Image Media | | | Acknowledgment | |
| Mark J. Kubicek | | | Acknowledgment | |
| Joseph | | | | |

Exhibit 3
P. 28

| Name and Address | | | |
|---|---|---|---|
| Amber Strick, c/o Mattel, 333 Continental, El Segundo, CA 90245 | | | |
| Jim Wagner, c/o Mattel, 333 Continental, El Segundo, CA | | | |
| Patricia Nunzio, 2227 Rolland Ave., Unit B, Redondo Beach, CA 90278 | | | |
| Ed Tibbit, Superior Insulation | | | |
| Carrie Mackel, International Plan Tek | | | |
| Diane McMillan, 1310 S. Parkcrest, Mesa, AZ 85206 | | | |
| Jeff Kubick, Rolling Ave., Rolling Hills, CA | | | |

Exhibit 3 P. 29

Exhibit 3,
P. 30

| # | | | |
|---|---|---|---|
| | | Actually-u | Power of Attorney<br>Trade Francois-Mark | 2601 Antonio Blvd<br>Rancho Royal CT |
| 2 | | | Power of Attorney<br>Hereby from<br>Olga Lichuva of Florida | To vanity Joseph<br>saw Harry J. ...<br>Signature |
| 3 | | | Power of Attorney<br>International Trade<br>Customer Forwarding | 450 N. Rossmore<br>Los Angeles |
| 4 | | | Manual Settlement<br>Agreement | 918 S. Leland St<br>San Pedro |
| 5 | | | Judgement<br>Deposition of Mumby | |
| 6 | | | Dept Store<br>Motor Vehicle Div<br>AZ | Victoria Polzin<br>Anza<br>Torrance CA |
| 7 | | | Claim Form | Sharon Zuckerman<br>414 2nd Street #15 |
| 8 | | | Decision Summary<br>California Police | Hermosa Beach CA 90254<br>Robert Allen Cokerman |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |

Top of thumb here (repeated for each column)

| Driver License | 316.0995 | To release an active Chinese title that Ron ordered. | | | | | | |

Exhibit 3,
P. 30

Carter Bryant
1319 W. 160th St.
Gardena, CA 90247

Joseph Jasof Kubick

Victoria Polzin

Original ... card ...
Power of Attorney

Letter

Acknowledgment

Acknowledgment

Acknowledgment

Exhibit 3,
P. 33

13 drawings
Each drawing stamped
& signed in the signature

PDGc - drawn, dated
signature, notarized

Exhibit 2
P. 24

# Exhibit "VNA-1"

## Curriculum Vitae

## (List of publications)

Exhibit 2,
P. 35

# VALERY N. AGINSKY, Ph.D.

## Curriculum Vitae

| | |
|---|---|
| **Position:** | *Forensic Chemist / Document Dating Specialist*<br>Riley, Welch & Aginsky Forensic Document Examinations, Inc.<br>Lansing, Michigan |

**Education:** *Ph.D. Analytical Chemistry - 1980*
Military Academy of Chemical Defense (formerly known as the Chemical Faculty of the Institute of Mechanical Engineering prior to 1940), Moscow, USSR

*M.S. Analytical Chemistry - 1977*
Military Academy of Chemical Defense, Moscow, USSR

**Professional Experience:** Riley, Welch & Associates Forensic Document Examinations, Inc., Lansing, Michigan
*Forensic Chemist (1998 to April 2005)*

Riley, Welch & Aginsky Forensic Document Examinations, Inc., Lansing, Michigan
*Forensic Chemist (April 2005 to present)*

Responsible for chemical analysis of ink on documents (ink comparison and dating). Uses ink dating methods developed as a result of many years of research of the methodology developed and published by Dr. Antonio Cantu. These methods measure certain parameters of ink that decrease as ink ages on paper. They analyze *ink volatile components* (their residues are always present in ink lines, no matter the ink age) and enable <u>*absolute* ink age determination</u>: one determines a time frame within which a questioned entry has been written, not relative to other known dated entries, as *relative* ink age determination technology requires.

Forensic Science Center of the Ministry of the Interior, Moscow, Russia
*Senior Research Chemist (1980 to 2000)*

**Exhibit 3 ,**
**P. 36**

Involved in methods development, technical assistance to investigative personnel, including training and presentations to legal proceedings and routine examination of evidence. Developed several techniques for examining questioned documents, drugs of abuse, explosives and gunshot residues.

About ten years of professional research and practical experience as a questioned document examiner: the dating of writing, stamp pad and printing inks, alteration of records, indented writings, erasures/eradications/obliterations, sequence of strokes, paper/ink/toners, computer printers and documents generated, counterfeit currency, currency exposed to an exploding dye-pack.

*Methods:* microscopy, microspectrophotometry, electrostatic imaging analysis, video enhancement techniques, infrared spectroscopy, ultraviolet/visual spectrophotometry, thin-layer chromatography, and gas chromatography-mass spectrometry.

**Honors/Awards:**  *Diploma and the First Prize for new techniques on Dating Inks*
Ministry of the Interior, 1993

*Award for excellence in service (Best Forensic Chemist)*
Ministry of the Interior, 1982

*Silver medal in chemistry at the 1976 All-Union Contest of Scientific Works,*
Ministry of Defense

*Co-Chair of the Questioned Documents Sections at the First International Forensic Science Symposium, Moscow, Russia, 1994, the 13th and 14th Meetings of the International Association of Forensic Sciences, Dusseldorf, Germany, 1993, and Tokyo, Japan, 1996.*

**Teaching Experience:**  Conducted numerous training seminars for the personnel of forensic laboratories in Russia and the former Soviet Union in the framework of the Ministry of the Interior's training programs:

*Technical and Chemical Examination of Counterfeit Currency*

*Detecting and Dating Alterations Made to Documents*

*Ink/Paper Comparison by Thin-Layer Chromatography and Other Analytical Methods*

*Detection and Characterization of Explosive Residues*

Exhibit 3
P. 37

Served as visiting examiner to the Division of Identification and Forensic Science, Israel Police Headquarters, 1996 & 1997.

Conducted seminars on ink analysis and dating for the Division of Identification and Forensic Science, Israel Police Headquarters, Jerusalem, Israel, 1995; Ministry of Justice and Ministry of the Interior Combined Scientific Council for Forensic Science and Criminalistics, Moscow, Russia, 1997;   the Forensic Sciences Division of the Canada Customs and Revenue Agency, Ottawa, Canada, 1998; Istanbul University, Institute of Forensic Sciences, Istanbul, Turkey 2000.

Conducted a seminar on Quantitative Thin-Layer Chromatography (Internal Standard Method) at the Russian-German Summer School on Thin-Layer Chromatography, Moscow, Russia, 1993.

**Court
Testimony:** Testified regarding ink analysis and ink and document dating in criminal and civil matters and in arbitrations.

**Professional
Affiliations:**

International Association for Identification, Questioned Documents Section (1992 - present)

International Association of Forensic Sciences, Questioned Documents Section (1993 - present)

Ministry of Justice and Ministry of the Interior Combined Scientific Council for Forensic Science and Criminalistics (Russia, 1995-1999)

Regional Representative for the Russian Charted Division of the International Association for Identification (1998 - 2000)

American Society for Testing & Materials (2003 - present)

Exhibit 3 ,
P. 28

# Professional Publications

## Books

1. Document Analysis / Analytical Methods. *Encyclopedia of Forensic Sciences*, J.A. Siegel (Ed.), Academic Press, Harcourt Publishers Ltd., 2000.

2. Writing Media and Documents. Chapter 19. *Handbook of Analytical Separations.* Vol. 2 – Forensic Science, M.J. Bogucz (Ed.), ELSEVIER, Amsterdam – New York – Oxford – Shannon – Singapore – Tokyo, 2000.

3. Writing Media and Documents. Chapter 28. *Handbook of Analytical Separations (2nd Edition).* Vol. II – Forensic Science (publication pending).

4. An Application of Chromatographic Methods for Dating Questioned Documents. *Chromatography (Celebrating the 125th Birthday of the Inventor of Chromatography, Dr. Michael Tswett)*, O. Kaiser, R.E. Kaiser, H. Gunz, and W. Gunther (Eds.), InCOM, Duesseldorf, Germany, 1997.

5. A New Version of the Internal Standard Method in Quantitative Thin-Layer Chromatography. Chapter 4.6. *Handbook of Modern Thin-Layer Chromatography,* O.G. Larionov (Ed.), Russian Academy of Science, Chromatography Council, Moscow, Russia, 1994 (in Russian).

6. Aginsky, V.N. and Dildin, Yr. M., *Forensic Examination of Explosives,* VNII MVD SSSR, Moscow, USSR, 1982 (in Russian).

7. Aginsky, V.N., Safronenko, T.I., and Sorokina, G.I., *Forensic Examination of Questioned Documents*, VNII MVD SSSR, Moscow, USSR, 1987 (in Russian).

8. Aginsky, V.N., Safronenko, T.I., and Sorokina, G.I., *Detecting and Dating Alterations Made to Documents,* VNII MVD SSSR, Moscow, USSR, 1989 (in Russian).

9. Aginsky, V.N., Zibrov, G.S., and Sorokina, G.I., *Analysis of Drugs, Inks, Petroleum Products, and Explosives by Reversed Phase Thin-Layer Chromatography,* Forensic Science Center of the Russia's Ministry of the Interior, Moscow, 1993 (in Russian).

## Peer-Reviewed Articles and Presentations at Scientific Conferences

10. A New Application of Instrumental Planar Chromatography in Forensic Analysis, *Journal of Planar Chromatography,* Vol. 4, 1991, pp. 167-169.

11. Some New Ideas for Dating Ballpoint Inks – A Feasibility Study, *Journal of Forensic Sciences,* 1993, No. 5.

12. Comparative Examination of Inks by Using Instrumental Thin-Layer Chromatography and Microspectrophotometry, *Journal of Forensic Sciences,* Vol. 38, No. 5, Sept. 1993, pp. 1111-1130.

13. Forensic Examination of "Slightly Soluble" Inks Pigments Using Thin-Layer Chromatography, *Journal of Forensic Sciences,* Vol. 38, No. 5, Sept. 1993, pp. 1131-1133.

Exhibit 3 ,
P. 39

14. Mechanism and Kinetics of the Aging of Some Ink Dyes. *Advances in Forensic Sciences.* Vol. 3 - Forensic Criminalistics, Proceedings of the 13th Meeting of the International Association of Forensic Sciences, Dusseldorf 1993, B. Jacob and W. Bonte, Eds., Verlag Dr. Koster, Berlin, 1995.

15. Discrimination between Naturally and Artificially Aged Ballpoint Inks, ibid.

16. Determination of the Age of Ballpoint Pen Ink by Gas and Densitometric Thin-Layer Chromatography, *J. Chromatography*, 1994, Vol. 678.

17. A New Version of the Internal Standard Method in Quantitative Thin-Layer Chromatography, *Journal of Planar Chromatography*, July/August 1994, Vol. 7, pp. 309-314.

18. A Microspectrophotometric Method for Dating Ballpoint Inks - A Feasibility Study, *Journal of Forensic Sciences*, Vol. 40, No. 3, May 1995, pp. 475-478.

19. Dating and Characterizing Writing, Stamp Pad and Jet Printer Inks by Gas Chromatography/Mass Spectrometry, *International J. Forensic Document Examiners*, 1996, No. 2, pp.103-115.

20. Accelerated Aging – Its Use in Methods for Dating Ink (Letter to the Editor), *International J. Forensic Document Examiners*, 1996, No. 3.

21. Ink Dating – The State of the Art in 1996, Proceedings of the 14th Meeting of the International Association of Forensic Sciences, Tokyo 1996, Shunderson Communications, 1997, Vol. 4.

22. Current Methods for Dating Inks – Which is the Best? Presented at the 49th Annual Meeting of the American Academy of Forensic Sciences, New York, NY, 1997.

23. Dating Ink on Questioned Documents – The State of the Art in 1997, presented at the First European Meeting of Forensic Science, Lausanne, Switzerland, 1997.

24. Measuring Ink Extractability as a Function of Age – Why the Relative Aging Approach is Unreliable and why it is More Correct to Measure Ink Volatile Components than Dyes, *International J. Forensic Document Examiners*, 1998, No. 3.

25. Ink Dating – The State of the Art, presented at the 50th Annual Meeting of the American Academy of Forensic Sciences, San Francisco, CA, 1998.

26. Ink Dating – The State of the Art, presented at the First Regional Symposium on Criminalistics, April 20-22, 2000, Istanbul University, Institute of Forensic Sciences, Turkey.

27. Determining the Sequence of Non-Intersecting Media on Documents: Ballpoint Pen Ink and Laser Toner Entries, *Journal of the American Society of Questioned Document Examiners*, 2002.

28. Current Methods for Dating Ink on Documents, presented at the 60th Annual Conference of the American Society of Questioned Document Examiners, San Diego, California, August 14-19, 2002, and at the Midwestern Association of Forensic Scientists Fall 2002 Meeting, Milwaukee, Wisconsin, September 15-20, 2002.

29. Using TLC and GC-MS to Determine whether Inks Came from the Same Manufacturing

Exhibit 3 ,
P. 40

Batch, presented at the 63rd Annual Conference of the American Society of Questioned Document Examiners, Montreal, Canada, August 11-16, 2005.

30. Using TLC and GC-MS to Determine whether Inks Came from the Same Manufacturing Batch, *Journal of the American Society of Questioned Document Examiners*, Vol. 9, No. 1, 2006, pp. 19-27.

31. Current Methods for Dating Ink on Documents, presented at the 65th Annual Conference of the American Society of Questioned Document Examiners, Boulder, Colorado, August 11-16, 2007.

## Other Professional Publications

32. Aginsky, V.N. and Sorokina, G.I., "Detecting Explosives in Post Explosion Debris Contaminated by Petroleum Products", *Expertnaya Praktika [Expert Practice]*, Vol. 19, 1982, pp. 73-75 (in Russian).

33. Aginsky, V.N. and Sorokina, G.I., "Detection of Explosive Residues Intruded into Asphalt", *Expertnaya Praktika [Expert Practice]*, Vol. 20, 1983, pp. 109, 110 (in Russian).

34. Aginsky, V.N. and Sorokina, G.I., *Detection and Quantitative Determination of Clonidine and Other Psychotropic Drugs in Beverages*, VNII MVD SSSR, Moscow, USSR, 1990 (in Russian).

35. Aginsky, V.N., "A New Application of Instrumental Planar Chromatography in Forensic Analysis," presented at the 6th International Symposium on Instrumental Planar Chromatography, Interlaken, Switzerland, April 23-26, 1991.

36. Aginsky, V.N., Sorokina, G.I., and Zibrov, G.S., "Detection, Identification and Comparative Examination of Narcotics and Drugs of Abuse," Proceedings of the Forensic Science Symposium, Linkoping, June 1992, Report 27, National Laboratory of Forensic Science, Linkoping, Sweden, 1993.

37. Aginsky, V.N., Savilov, A.P., and Sorokina, G.I., "Chromatographic Screening of Drugs of Abuse," Proceedings of the Forensic Science Symposium, Moscow, March 1994, Forensic Science Center of the Ministry of the Interior, Moscow, Russia, 1994.

38. Aginsky, V.N., "Increasing the Reliability of the Identification of Separated Substances in Densitometric Thin-Layer Chromatography", *Advances in Forensic Sciences*. Vol. 3 - Forensic Criminalistics, Proceedings of the 13th Meeting of the International Association of Forensic Sciences, Dusseldorf 1993, B. Jacob and W. Bonte, Eds., Verlag Dr. Koster, Berlin, 1995.

39. Aginsky, V.N., "A New Approach in Determining the Age of Inks Using Densitometric Thin-Layer Chromatography," ibid.

40. Aginsky, V.N., "Instrumental Techniques for Comparing Similarly Colored Inks," ibid.

41. Aginsky, V.N., Lesnikov, V.A. and Sorokina, G.I., "Time of Shooting - Feasibility of Discriminating "Fresh" and "Old" Organic Gunshot Residues," Proceedings of the 14th Meeting of the International Association of Forensic Sciences, Tokyo 1996, Shunderson Communications, 1997, Vol. 4.

42. Aginsky, V.N., "Application of GC/MS in Some Areas of Forensic Analysis," presented at the Hewlett-Packard Analytical Forum, Moscow, Russia, April 1998.

43. Aginsky, V.N., "Determining the Sequence of Non-Intersecting Media on Documents — Ballpoint pen ink and laser toner entries," presented at the 49th Annual Conference of the American Society of Questioned Document Examiners, Des Moines, Iowa, August 2001.

Exhibit 3
P. 41

# Exhibit "VNA-2"

## Court Cases and Depositions

Exhibit 3 ,
P. 42

**Valery N. Aginsky, Ph.D.**                                                          - 1 -

**COURT CASES AND DEPOSITIONS**

| Date | Location | Type of Proceeding | Case |
|------|----------|--------------------|------|
| 10-22-01 through 10-31-01 | Hong Kong | Trial | Wang Din Shin  vs  Nina Kung alias Nina T.H. Wang<br><br>High Court,  Case No. HCAP8/1999 |
| 01-15-02 | Pennsylvania | Arbitration Hearing | Labor's Union International of North America  - vs - Prudencio Martinez, Jr. |
| 05-06-02 | Cayman Islands | Trial | CVC/Opportunity Equity Partners Limited  - vs - Luis Roberto Demarco Almeida<br><br>The Grand Court of the Cayman Islands Case No. 389 of 1999 |
| 8-21-02 8-22-02 | Chicago, IL | Trial | MULTIUT CORPORATION  - vs -  DRAIMAN, *et al*<br>Circuit Court of Cook County, Illinois<br>Case No. 01 CH 9989 |
| 10-16-02 | Farmington Hills MI | Deposition | Robert J. Petz |
| 03-12-03 | Los Angeles, CA | Trial | Estate of Yvette Smith<br><br>Superior Court of the State of California Case No. 069111 |
| 09-26-03 | Toronto, Canada | Arbitration Hearing | FCLG Enterprises, Ltd.  - vs - 668152 ONTARIO, Ltd., *et al* |
| 11-05-03 | Chicago, IL | Deposition | Rempala  - vs -  Ebner, *et al*<br><br>Circuit Court of Cook County, Illinois Case No. 00 CH 01783 |
| 02-11-04 | Okemos, MI | Deposition | JJK Industries, L.P.  - vs -  KPlus, *et al*<br><br>District Court for the Southern District of Taxes, Houston,  Case No. H-02-2252 |
| 05-06-04 | East Lansing, MI | Deposition | Digital Control, Inc.  - vs -  Charles Machine Works,  Arbitration Hearing, Seattle, Washington |
| 01-26-05 12-05-05 | Okemos, MI West Palm Beach, FL | Deposition Hearing | Jupiter Medical Center  - vs -  Orlon Carr, III, MD<br>Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, Case No. CL-00-9971-AD |
| 03-14-05 04-06-05 | Glendale, CA Van Nuys, CA | Deposition Trial | SP22, Inc. *et al* v. Yurdumyan, *et al*<br><br>Superior Court of the State of California County of Los Angeles, Northwest District Case No. LC067829 |

Exhibit _3_ ,<br>P. _43_

Valery N. Aginsky, Ph.D.                                                          - 2 -

**COURT CASES AND DEPOSITIONS**

| Date | Location | Type of Proceeding | Case |
|------|----------|--------------------|------|
| 10-27-05 | Washington, DC | Deposition | L.G. Phillips LCD Co., Ltd. v. Tatung Co. of America, Tatung Company, and Chunghwa Picture Tubes, Ltd.<br><br>District Court, Central District of California Case No.  CV-02-6775 CBM (JTLx) |
| 04-14-06<br><br>06-20-06<br>06-20-06 | Los Angeles, CA | Deposition<br><br>Court Hearing<br>Trial | 1124 Marilyn Drive Development LLC v. Shahram Elyaszadeh<br><br>Superior Court of California, County of Los Angeles,  Case No.  SC 085 437 |
| 05-29-06 | Lansing, MI | Deposition | Van Cleave v.  Newbrough, M.D., et al<br><br>Superior Court of California, County of Kern Case No.  S-1500-CV-255754-AEW |
| 09-07-06 | Wichita, KS | Deposition | Bolton v. Coombs, et al<br><br>District Court, Sedgwick County, Kansas Case No.  05 CV 2332 |
| 02-06-06<br>03-09-07 | Laguna Hills, CA<br>Los Angeles, CA | Deposition<br>Arbitration Hearing | Angeline Hebert v. Bank of America, et al<br><br>Superior Court of California, County of Orange Case No.  04CC10405 |
| 05-07-07 | Vancouver, Canada | Trial | Osooli-Talesh v. Emami<br><br>Supreme Court of British Columbia Vancouver Registry No. S026800 |
| 07-07-06<br><br>06-29-07 | Lansing, MI<br><br>Clearwater, FL | Deposition<br><br>Trial | Estate of Paul R. Smith et al v. William P. Gregory, et al<br><br>Circuit Court of the 6th Judicial Circuit in and for Pinellas County, Florida, Probate Division Case No. 02-4488-ES-003 |
| 04-26-07<br>07-18-07 | Okemos, MI<br>Troy, MI | Deposition<br>Trial | Quality Manufacturing, Inc. v. Brian D. Mann, et al<br><br>Genesee County Circuit Court Case No. 04-79512-CZ |
| 08-03-07 | Lansing, MI | Deposition | Hypoxico v. Colorado Altitude Training, et al<br><br>District Court, Southern District of New York Case No.  02 Civ 6191 (JGK) |
| 10-05-07 | San Francisco, CA | Deposition | Plant Insulation Company v. Fireman's Fund Insurance Company, et al<br><br>Superior Court of California, County of San Francisco,  Case No. 06-448618 |

Exhibit  3  ,
P.  44

# Exhibit "VNA-3"

## RWAFDE Schedule of Fees

Exhibit 3 ,
P. 45

www.rileywelch.com



# RILEYWELCHAGINSKY
## & ##
### FORENSIC DOCUMENT EXAMINATIONS, Inc.
PO Box 80225, Lansing, Michigan 48908-0225
Telephone (517) 394-1512 Fax (517) 882-2767

# SCHEDULE OF FEES

Tax I.D. 38-3294972

**Call for a physical address to send any deliveries, packages or evidence**

| **Document Examinations:** | | **Latent Prints:** | |
|---|---|---|---|
| Retainer: | $1500.00 | Retainer: | $1000.00 |
| Retainer: | $2500.00 (Medical Malpractice) | Hourly Rate: | $200.00 |
| Hourly Rate: | $250.00 | | |

| **Chemical Analysis of Ink (Ink Dating or Comparison):** | | **Toxicology:** | |
|---|---|---|---|
| Retainer: | $3000.00 | Retainer: | $1500.00 |
| Hourly Rate: | $300.00 | Hourly Rate: | $250.00 |

## Court/Deposition/Hearings: *(payment in advance [estimated] is required)*

Rate:   $50.00 above hourly rate   (portal to portal)

Travel:  Court hourly rate x 4 hours (minimum)

* Travelling (air or ground) hours over the 4 hour minimum billed at .5 court hourly rate (hours worked during air or ground travel billed at court hourly rate)
* Court room (deposition) testimony time and weekdays/weekends waiting to testify = 8-hour minimum at court rate (*hourly rate + $50.00*); minimum of 2 hours preparation time per event.

## On-Site Document Examinations:

| Limited Inspections: | $250.00 per hour (plus any setup, tear down, mileage & expenses) |
|---|---|
| Complete Instrumentation: | $500.00 per hour (2 examiners, plus setup, tear down, mileage & expenses) |

## Miscellaneous:

| Travel: | Case related travel is billed portal to portal for purposes of on-site document examination, taking ink samples, or any other travel requested by client. Amounts due for travel must be paid in advance (estimate of expenses will be provided). |
|---|---|
| Mileage: | .485 per mile. |
| Meals: | $38.50 or $50.00[1] per day |
| Rush Cases: | $100.00 above hourly rate. Any request for cases to be completed in less than 14 days. |
| Evidence Courier: | Customary Law Clerk Rate + .485 per mile. |
| All Related Charges: | Any and all taxes, fees, airfare, lodging, interpretation services, shipping, mail, telephone, travel fees & required documentation, or any other expenses incurred by this firm on behalf the client. |
| International Cases: | Payment via wire transfer is required. |
| Payment: | The retainer is non-refundable and must be paid with the submission of evidence, prior to the firm or examiner's name to be added to witness lists (payment precludes consultations with opposing parties). This amount is applied towards examination, consultation and report preparation time (the first six hours in document cases, the first five hours in print cases and toxicology cases, and the first ten hours in ink dating cases). Any outstanding balance is due prior to the rendering of an opinion. Court appearances and travel fees must be paid in advance, based upon a quoted estimate of expenses provided to the client and billed against for travel; any remaining balances on quotes for service will be refunded upon final billing. |
| Late Fees: | Any accounts over thirty days old are assessed the fee of 10% of the outstanding balance, per month; along with any costs incurred by this firm in collection actions, including attorney fees. |
| Cancellation: | Any cancellation of court testimony (deposition, or other proceeding) at less than 48 hours notice will result in a minimum billing of 2 hours. Cancellation of court testimony at less than 24 hours notice will result in a minimum billing of 4 hours. Same day cancellation will result in full day fee (8 hours at court hourly rate). |

ALL FEES ARE ASSESSED ON THE BASIS OF THIS FIRM'S FEE SCHEDULE ON THE DATE SERVICE IS RENDERED.

---

[1] Select high cost cities are taken from State of Michigan government traveler listings.

* Diplomate of the American Board of Forensic Document Examiners, Inc.
** American Society of Questioned Document Examiners

**Exhibit   3  ,**
**P.  46**

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On February 11, 2008, I served true copies of the following document(s) described as **EXPERT REPORT OF VALERY AGINSKY, DATED February 8, 2008** on the parties in this action as follows:

<table>
<tr>
<td>

John W. Keker, Esq.
Michael H. Page, Esq.
Christina M. Anderson, Esq.
**Keker & Van Nest, LLP**
710 Sansome Street
San Francisco, CA 94111
*jkeker@kvn.com*
*mhp@kvn.com*
*canderson@kvn.com*

</td>
<td>

Thomas J. Nolan
Timothy A. Miller
**Skadden, Arps, Slate, Meagher &
Flom LLP**
300 South Grand Ave.,
Suite 3400
Los Angeles, CA 90071
*thomas.nolan@skadden.com*
*timothy.miller@skadden.com*

</td>
</tr>
</table>

Mark E. Overland
**Overland Borenstein Scheper & Kim
LLP**
300 South Grand Ave.
Suite 2750
Los Angeles, CA 90071
*moverland@obsklaw.com*

**BY ELECTRONIC MAIL TRANSMISSION:** By electronic mail transmission on February 11, 2008, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es). The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 11, 2008, at Los Angeles, California.

Andrea Hoeven

Exhibit __3__,
P. __47__

07209/2217862.1

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026.

On February 12, 2008, I served true copies of the following document(s) described as **EXPERT REPORT OF VALERY AGINSKY, DATED February 8, 2008** on the parties in this action as follows:

John W. Keker, Esq.
Michael H. Page, Esq.
Christina M. Anderson, Esq.
**Keker & Van Nest, LLP**
710 Sansome Street
San Francisco, CA 94111

[√]   [PERSONAL] by personally delivering the document listed above to the person(s) at the address(es) set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 12, 2008, at San Francisco, California.



Erin Gilbride

07209/2217862.1

-2-

Exhibit __3__,
P. __48__

1

## PROOF OF SERVICE

2

3

    I am employed in the County of Los Angeles, State of California. I am over the age of

4

eighteen years and not a party to the within action; my business address is NOW Messenger

5

Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026.

6

    On February 12, 2008, I served true copies of the following document(s) described

7

as **EXPERT REPORT OF VALERY AGINSKY, DATED February 8, 2008** on the parties in

8

this action as follows:

9

10

11

12

13

Mark E. Overland
**Overland Borenstein Scheper & Kim LLP**
300 South Grand Ave.
Suite 2750
Los Angeles, CA 90071

Thomas J. Nolan
Timothy A. Miller
**Skadden, Arps, Slate, Meagher & Flom LLP**
300 South Grand Ave.,
Suite 3400
Los Angeles, CA 90071

14

15

    [√]    **[PERSONAL]** by personally delivering the document listed above to the person(s)

16

at the address(es) set forth above.

17

    I declare that I am employed in the office of a member of the bar of this court at whose

18

direction the service was made.

19

    Executed on February 12, 2008, at Los Angeles, California.

20

21

22

_____
Dave Quintana

23

24

25

26

27

28

Exhibit __3__,
P. __49__