# EXHIBIT G

1 | KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
2 | jkeker@kvn.com
MICHAEL H. PAGE - #154913
3 | mpage@kvn.com
CHRISTA M. ANDERSON - #184325
4 | canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
5 | mwerdegar@kvn.com
710 Sansome Street
6 | San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
7 | Facsimile:  (415) 397-7188

8 | Attorneys for Plaintiff
CARTER BRYANT

9

10

11 | UNITED STATES DISTRICT COURT

12 | CENTRAL DISTRICT OF CALIFORNIA

13 | EASTERN DIVISION

14

15 | CARTER BRYANT, an individual,          Case No. CV 04-09049 SGL (RNBx)
                                        (consolidated with CV 04-9059 & 05-
16 |                         Plaintiff,  2727

17 |        v.                            **DISCOVERY MATTER**

18 | MATTEL, INC. a Delaware              [To Be Heard by Discovery Master
     Corporation,                        Hon. Edward Infante (Ret.)]
19 |                         Defendant.

20 |                                      **CARTER BRYANT'S SURREPLY**
     CONSOLIDATED WITH MATTEL,           **RE:  MATTEL INC.'S MOTION**
21 | INC., v. BRYANT and MGA             **FOR AN ORDER ENFORCING**
     ENTERTAINMENT, INC. v.              **COURT'S JANUARY 25, 2007**
22 | MATTEL, INC.                         **ORDER COMPELLING BRYANT**
                                         **TO PRODUCE COMPUTER HARD**
23 |                                      **DRIVES AND FOR SANCTIONS**

24 |                                      Judge:    Hon. Stephen G. Larson

25 |                                      Date Comp. Filed:  April 13, 2005

26 |                                      Discovery Cut-Off:  Jan. 28, 2008
                                         Pre-Trial Conference:  May 5, 2008
27 |                                      Trial Date:  May 27, 2008

28

413384.01

Exhibit __G__
Page __72__

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.    ARGUMENT.......................................................................................................2

    A.    How—and *when*--Evidence Eliminator works. ......................................2

    B.    Mr. Bryant's Desktop................................................................................4

        1.    EE was not used on the Desktop after July 29, 2002. .................4

        2.    The revised USER.DAT file is a red herring...............................5

    C.    Mr. Bryant's Laptop..................................................................................6

        1.    Evidence Eliminator was not used on July 14, 2004...................6

        2.    Evidence Eliminator did not delete any files on July 12, 2004.................................................................................8

III.    CONCLUSION .................................................................................................10

Exhibit  G

Page   73

i

BRYANT'S SURREPLY RE: MATTEL INC.'S MOTION FOR AN ORDER
ENFORCING COURT'S JANUARY 25, 2007 ORDER
CASE NO. CV 04-09049 SGL (RNBx)

413384.01

Case 2:04-cv-09049-DOC-RNB   Document 2684-8   Filed 03/17/08   Page 4 of 16   Page ID
#:41628
Case 2:04-cv-09049-SGL-RNB   Document 2662   Filed 03/17/2008   Page 3 of 15

## I.   INTRODUCTION

Mattel's Reply Brief repeats dramatic and wide ranging allegations of spoliation by Mr. Bryant, asserting that in July 2004 Mr. Bryant deliberately erased thousands of files from two computers he owned shortly after leaving his job at Mattel. On that basis, Mattel asserts, this court should order Mr. Bryant to turn over five *different* computers, none of which existed any time close to the relevant events in this case, for unsupervised forensic analysis.

Mattel's argument has many problems, including the lack of any argument pertaining to the computers it actually seeks to inspect. Mattel's argument is instead directed entirely to two computers it has *already* inspected. But the most fundamental problem with Mattel's argument is that its claims of spoliation are flatly and demonstrably false. As set forth below, Mattel and its expert Mark Menz have ***no evidence that a single file was ever deleted by Mr. Bryant from either computer.*** Their claims to the contrary are based on fundamental misunderstandings of the operation of the Evidence Eliminator ("EE") program, compounded by counsel's overstatement of those already-incorrect findings.

Long before this case began, Evidence Eliminator was installed on two of Mr. Bryant's computers: the desktop that he purchased the day after he left Mattel, and the laptop he purchased more than a year later.[1] Mattel now claims that Mr. Bryant deliberately erased data from both of those machines in July 2004. Mattel is wrong. As regards the desktop computer, we can go farther than simply saying that Mattel has no evidence of spoliation: we can ***affirmatively*** state, based on the forensic record available to (but misunderstood by) Mattel's expert, that ***Evidence Eliminator was not used in July 2004, or at any time after July 29, 2002.***

---

[1] Mattel and its expert give short shrift to Bryant's explanation for his use of Evidence Eliminator: to eliminate spyware and make his computer run faster. They claim Evidence Eliminator is never marketed for this purpose. But it is: as Mr. Menz admits in deposition, the *first* feature listed in EE's marketing materials is "speeds up your PC!." Deposition of Mark ("Menz Depo."), Page Decl. Exh. 2, at 87:16-89:16.

1

BRYANT'S SURREPLY RE: MATTEL INC.'S MOTION FOR AN ORDER
ENFORCING COURT'S JANUARY 25, 2007 ORDER
CASE NO. CV 04-09049 SGL (RNBx)

413384.01

Exhibit 6
Page 74

1  As regards the laptop computer, which did not even exist until more than a

2  year after Mr. Bryant left Mattel, Mattel's evidence is similarly wrong. Mattel's

3  brief claims that there is evidence that *Mr. Bryant* deleted more that 9,400 *files* on

4  *July 12 and 14, 2004.* The evidence, however, shows no such thing. Instead, it

5  shows only that a total of 9,400 files were deleted from Mr. Bryant's laptop, either

6  by a user or (as is more frequent) by the normal actions of the operating system or

7  applications, at some time between the purchase of the computer in November

8  2001 and July 2004, and that remnants of the *filenames* of those files were

9  automatically overwritten by EE on July 12, 2004. EE was not used *at all* on July

10  14, 2004.

11     The technical details of these findings are admittedly hard slogging for non-

12  technicians, and are set out in full detail in the accompanying expert report of Gary

13  Funck. But they are crucial, as they conclusively rebut a serious charge of

14  spoliation that has been flung about repeatedly and irresponsibly by Mattel in this

15  case. Mattel and its expert are simply wrong, fundamentally and repeatedly, and it

16  is important that the court understand the ways in which they are wrong, as

17  summarized below.

18

19                    **II.    ARGUMENT**

20  **A.     How—and *when*--Evidence Eliminator works.**

21     Evidence Eliminator is a publicly-available utility that performs a number of

22  functions. It can clean out the history of websites a user has visited. It can clean

23  out internet "cookies." It can clean out deleted email. It can find remnants of

24  previously-deleted files and replaces those remnants with zeroes or random data. It

25  can also be set to erase any file contained in any directory the user specifies. As

26  explained below, which of these functions it performs, and when, is determined by

27  the user's choices recorded in EE's configuration files. Expert Report of Gary

28  Funck ("Funck Rep."), at 10-12, Declaration of Michael H. Page ISO Sur-reply

2

413384.01

Exhibit _G_

Page _15_

1    ("Page Decl.") Exh. 1.

2    　　　Once EE is installed on a user's computer, it "runs," in a trivial sense, every

3    single time the computer is turned on and the user logs in.  But at that time, it

4    doesn't actually do anything.  Instead, it simply places an icon in the computer's

5    system tray (the area in the lower left of a Windows screen) and then waits

6    patiently for instructions.  Funck Rep., at 1, 12-13; Menz Depo., at 11:25-12:9;

7    76:15-77:13.

8    　　　EE only *does* anything if the user subsequently invokes it, by (for example)

9    clicking on the icon and selecting "Safe Shutdown."  Unlike a normal Windows

10   "shutdown," EE's Safe Shutdown causes EE to perform its functions before

11   shutting down the computer.  *Which* functions it performs is determined by EE's

12   config.dat file, which contains the settings the user has selected either at

13   installation or later.  Mr. Funck has examined the config.dat files from both of Mr.

14   Mr. Bryant's computers.  The settings in both are identical, and are unchanged

15   from EE's default settings on installation (with one exception not relevant here).[2]

16   Funck Rep., at 10-14; Menz Depo., at 21:23-23:6.  Specifically, in neither

17   config.dat file is EE set to delete *any* files, as Mr. Menz confirmed in deposition.

18   Menz Depo., at 16:16-18:6.

19   　　　If the user does not perform a Safe Shutdown or Safe Restart, but instead

20   simply shuts down the computer, EE does *nothing*.  The program will have "run,"

21   in the sense that its code began executing and it placed an icon in the system tray,

22   but it will have performed no functions.  Funck Rep., at 4, 5, 12-13.[3]

23

24

25   [2] On installation, EE's default is to not clear "swap space," but the installation process
     recommends that the user check that option, which Mr. Bryant did on both machines.
26   Funck Report at 10-11 and Exh. B, at Fig. B-4,5.  Swap space is used for virtual memory,
     and is not at issue here.
27   [3] Mr. Menz testified at deposition that he believes EE performs certain cleanup functions
     on internet files and cookies while running in background.  Menz Dep., at 7:25-9:1.  He is
28   mistaken.

3

413384.01

**Exhibit** G
**Page** 76

Case 2:04-cv-09049-DOC-RNB   Document 2684-8   Filed 03/17/08   Page 7 of 16   Page ID
#:41631
Case 2:04-cv-09049-SGL-RNB      Document 2662      Filed 03/17/2008      Page 6 of 15

**B.    Mr. Bryant's Desktop**

  **1.    EE was not used on the Desktop after July 29, 2002.**

Mattel claims that Mr. Bryant "used [EE] once on his Desktop resulting in an undetermined loss of data the day before the Desktop was imaged." Reply Br., at 1. ***This is flatly, incontrovertibly, and demonstrably false.*** Mr. Bryant did not use EE on his Desktop in July 2004, or at any time since *at least* July 29, 2002. As set forth in Mr. Funck's report (Funck Rep., at 24-27), we know this as follows:

Each time a file is created, accessed, or modified, the Windows operating system records the date and time.[4] The EE config.dat file on the Desktop was both created and last modified on July 24, 2002, which means that the configuration of EE was set when it was installed and was never changed thereafter. By examining the settings in that file, we can therefore determine what functions EE would have performed each and every time it was used.

One of those functions is to clean out the IE Cache, which is the cache of previously-visited websites Internet Explorer keeps. Each time EE cleans out that cache, it also erases Internet Explorer's index.dat file, which contains the index of the IE Cache. The next time IE is used, it creates a new index.dat. Thus, by checking the creation date of the index.dat file on the Desktop, we can establish the most recent date on which EE was used. On the Desktop, the creation date of the index.dat file is July 29, 2002, which establishes that EE was never used on that computer after that day, five days after Mr. Bryant first installed it and nearly two years before this lawsuit was filed.

As Mr. Menz admitted in deposition, there is no contrary evidence. The sole basis for his opinion that EE was used on Mr. Bryant's Desktop is the fact that the executable file for EE was accessed on July 13, 2004. But as noted above, this happens every time the computer is turned on, and means nothing more than that

---

[4] Windows ME, which was installed on the Desktop, records only the date of last access, but both the date and time of last modification and creation.

413384.01

Exhibit G

Page 77

Case 2:04-cv-09049-DOC-RNB   Document 2684-8   Filed 03/17/08   Page 8 of 16   Page ID
#:41632
Case 2:04-cv-09049-SGL-RNB   Document 2662   Filed 03/17/2008   Page 7 of 15

1   EE placed its icon in the system tray.  We know conclusively that EE was not used

2   on that date, or any time in the prior two years.[5]

3        2.      **The revised USER.DAT file is a red herring.**

4        Mattel next argues that "Bryant breached his duty to preserve Bratz-related

5   electronic evidence on or about April 28, 2004—the day after Mattel filed its

6   original complaint and the day before Bryant was served" by allegedly creating a

7   new USER.DAT directory.  Reply Br., at 9.  This is utter nonsense, for multiple

8   reasons.

9        *First*, Mattel does not explain—because it cannot—how the USER

10  configuration file of a computer could contain "Bratz-related" electronic evidence.

11  The user.dat file is an internal file of the Windows operating system that contains

12  various bits of information about the configuration of the computer.  Funck Rep.,

13  at 28-31.

14       *Second*, there is no reason to believe that *anyone* created a new USER

15  directory.  Windows ME—the version of Windows installed on the Desktop—

16  creates new USER directories automatically in response to errors.  That is likely

17  what occurred here.  *Id.*

18       *Third*, even if someone had deliberately created a new USER directory, no

19  data would have been lost, because there is a *backup* of the previous USER.DAT

20  directory from only days earlier.  *Id.* at 30-31.  Mr. Menz at deposition stated that

21  he might have looked for one, but that he failed to find one.

22       And *fourth*, Mattel's argument ignores the most important fact:  in April

23  2004, *Mr. Bryant didn't own the Desktop!*  The uncontradicted testimony of both

24  Mr. Bryant and his niece Brooke Gilbert is that he gave the computer to her in

25  October or November 2003.  Mattel simply ignores that testimony.  But the court

26

27  _____

    [5] This further confirmed by the fact that EE did not access other configuration files on
    that date; files it accesses each time it performs any functions.  Funck Rep., at 27; Menz
28  Depo., at 67:6-8.

413384.01

**Exhibit** G
**Page** 78

1    need not rely solely on that uncontroverted testimony. It can confirm that, in April

2    2004, the Desktop was being used not by the childless Mr. Bryant, but by his niece

3    and young grandniece: In the weeks before and after April 2004, the programs

4    being installed on that computer were "Reader Rabbit Kindergarten," "Reader

5    Rabbit Reading Age 6-9," and "Reader Rabbit Math Age 6-9." Funck Rep., at 30.

6    **C.    Mr. Bryant's Laptop**

7         Mattel's allegations concerning Mr. Bryant's Laptop are also wrong. Mattel

8    claims that Mr. Bryant "ran Evidence Eliminator on his Laptop two days before it

9    was imaged and again the day it was imaged, with the result that 9,400+ files

10   and/or folders were forever deleted." Reply Br., at 1.

11        This is wrong in multiple ways. *First*, EE was not used *at all* on July 14,

12   2004. Mr. Menz's conclusion to the contrary is based on fundamental mistakes

13   concerning the operation of EE. *Second*, EE did not delete any *files* on July 12.

14   Again Mattel's claim is based on fundamental misunderstandings of how EE

15   works. Instead, the most that can be said is that EE automatically overwrote

16   *filenames* on that date, and that those filenames corresponded to unknown files that

17   could have been deleted at any time, by either a user or the operating system,

18   between the time the computer was first used in 2001 and July 2004.

19        **1.    Evidence Eliminator was not used on July 14, 2004.**

20        Mattel's assertion that EE was used by Mr. Bryant on July 14, 2004 is once

21   again simply wrong. Mr. Menz claims both that EE was run on that date, and that

22   "[c]hanges were made to the basic configuration of the program" at that time.

23   Both conclusions are errors, based on Mr. Menz's lack of understanding of the

24   operation of EE.

25        As noted above, EE "runs" each time the user logs in, in the trivial sense that

26   it places an icon in the system tray and then performs no functions. But Mr. Menz

27   makes the incorrect assumption that, because the modification date of the EE

28   config.dat was changed at 3:13 pm on July 14, Mr. Bryant must have used EE at

413384.01

BRYANT'S SURREPLY RE: MATTEL INC.'S MOTION FOR AN ORDER
ENFORCING COURT'S JANUARY 25, 2007 ORDER
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit _G_

Page _79_

1  that time, and made changes to EE's settings.  Mr. Menz is wrong because Mr.

2  Menz does not understand how EE works.

3  　　　As set forth in detail in Mr. Funck's report,[6] EE writes data to its config.dat

4  file (and thus changes its modification date) *every time any user logs in.*

5  Specifically, EE writes the current version number of the program into the

6  config.dat file each time.  Thus the fact that the config.dat file was modified

7  indicates only that the computer was turned on, not that EE was used.[7]

8  　　　That error by Mr. Menz constitutes the *only* evidence on which he relies for

9  his mistaken conclusion that EE was used on July 14, 2004:

10  　　　　　Q.　Other than the fact that the config.dat last written
date is on 7/14, do you have *any* evidence that Evidence
11  Eliminator performed *any* functions on this computer on July
14th.
12
　　　　　A.　The – *no.*
13

14  Menz Depo. at 70:17-22 (emphasis added).

15  　　　Moreover, we know who was operating the Laptop computer on July 14,

16  2004, and it was not Mr. Bryant.  As Mattel notes, the forensic image of the Laptop

17  from which all of this data comes was made by a forensic technician named Lee

18  Curtis on that date.  Specifically, he made that image at 3:30 pm that day.  And we

19  also know that the computer was booted only once on that day, at 3:12 pm.  And

20  we also know that a "dongle" for connecting the Laptop to the technician's own

21  computer was installed at 3:25.  The sequence is as follows:

22  　　　3:12 pm　　　Technician starts computer.

23  　　　3:13 pm　　　EE automatically updates its config.dat on startup

24  　　　3:25 pm　　　Technician connects dongle

25  　　　3:29 pm　　　Technician takes forensic image

26
　　[6] Funck Rep., at 6; 21-22.
27
　　[7] Mr. Menz was not aware of this, and admitted he had done nothing to determine
28  whether EE changes the modification date each time it launches.  Menz Depo., at 67:13-70:22.

7

413384.01

Exhibit ___G___

Page ___80___

Case 2:04-cv-09049-DOC-RNB   Document 2684-8   Filed 03/17/08   Page 11 of 16   Page ID
#:41635
Case 2:04-cv-09049-SGL-RNB   Document 2662   Filed 03/17/2008   Page 10 of 15

1   Mr. Menz struggled mightily to avoid these facts at deposition, speculating

2   that perhaps (a) the clock on either the technician's computer or the Laptop was

3   wrong *and* (b) the technician had removed the hard drive from the Laptop and

4   imaged it without turning on the Laptop, or by booting the laptop from another

5   disk.  Menz Depo., at 73:7-75:20.  But we know this is not the case, because

6   (apparently unknown to Mr. Menz) an EnCase dongle was connected to the

7   Laptop, which was running under its own operating system and recorded that

8   connection, minutes before the image was taken.  Funck Rep., at 23.

9   In short, EE was never used by anyone on July 14, and the Laptop was not

10   even being used by Mr. Bryant when it was turned on that day.

11   **2.      Evidence Eliminator did not delete any files on July 12, 2004.**

12   Finally, Mattel claims that Mr. Bryant used EE to delete "9,400+ files and/or

13   folders" on July 24, 2004, files which Mattel describes as "clearly relevant

14   documents."  Reply Br., at 1, 2.  Once again, Mattel is wrong, based on yet another

15   fundamental misunderstanding of how EE works.

16   In its default mode (and as configured on Mr. Bryant's computers) EE

17   searches the computer's hard drive for evidence of previously-deleted files in what

18   is known as "unallocated space" (*i.e.*, space that is not currently being used).

19   When it locates remnants of such files, it goes to the computer's "Master File

20   Table" ("MFT") and replaces the name corresponding to that space with gibberish.

21   The 9,400+ filenames that Mr. Menz identifies are entries in the MFT on the

22   Laptop.  EE does not *delete* any *files*:  it merely overwrites *filenames*

23   corresponding to files that have *already* been deleted.  Funck Rep., at 16-19.

24   More importantly, EE re-overwrites *every* such filename *every time it runs*,

25   regardless whether that filename was previously overwritten once or a hundred

26   times.  Thus, suppose one runs EE on Day 1, and it overwrites 1000 filenames with

27   gibberish (and dates that gibberish as having been written on Day 1).  If one then

28   runs EE again on Day 100, without deleting any other files, all 1000 filenames

8

BRYANT'S SURREPLY RE: MATTEL INC.'S MOTION FOR AN ORDER
ENFORCING COURT'S JANUARY 25, 2007 ORDER
CASE NO. CV 04-09049 SGL (RNBx)

413384.01

Exhibit _G_
Page _8_

Case 2:04-cv-09049-DOC-RNB   Document 2684-8   Filed 03/17/08   Page 12 of 16   Page ID
#:41636
Case 2:04-cv-09049-SGL-RNB   Document 2662   Filed 03/17/2008   Page 11 of 15

1   (which already contain gibberish) will be replaced with *new* gibberish dated on

2   Day 100. *Id.*

3       As a result, the fact that EE automatically overwrote 9,400+ filenames on

4   July 12, 2004 tells us nothing about when the files corresponding to those

5   filenames were either created or deleted: We know only that they were deleted

6   sometime during the entire life of the computer. Funck Rep., at 2-4; 17-19. When

7   pressed, Mattel's own expert conceded that he could not say when any of the files

8   were deleted. Menz Depo., at 39:23-41:25.

9       Moreover, the evidence adduced by Mattel tells us nothing about how the

10   underlying files were deleted. As Mr. Funck explains, thousands of files are

11   automatically created and deleted, without the user's knowledge or intervention,

12   during normal operation of a personal computer. Every website one visits creates

13   multiple files on one's computer (one for every separate graphic and element on

14   every page), which are later automatically deleted. Every time one edits a Word

15   file, a temporary file is created, and then deleted. Every internet "cookie," and

16   every internet "favorite," is its own file. That 9,400 files were deleted during the

17   lifetime of Mr. Bryant's Laptop is evidence, if anything, only of the fact that the

18   computer was only lightly used. Funck Rep., at 19-20; *see also* Menz Depo., at

19   44:11-45:14; 54:9-16.

20       In short, there is no evidence that Mr. Bryant *ever* deleted *a single file* from

21   his Laptop, much less that he deleted any responsive documents after the filing of

22   this lawsuit. Mr. Menz admitted this in deposition:

23       Q.  So the underlying files that correspond to the entries
    in this exhibit could have been created and deleted at any time
24       between when the computer -- when the operating system was
25       loaded on the computer and the date that Evidence Eliminator
    was run, correct?
26

27       A.  That is one possibility, yes.

28       Q.  Okay.  So let's go back to my hypothetical.

9

413384.01

**Exhibit** _G_
**Page** _82_

Case 2:04-cv-09049-DOC-RNB   Document 2684-8   Filed 03/17/08   Page 13 of 16   Page ID
#:41637
Case 2:04-cv-09049-SGL-RNB   Document 2662   Filed 03/17/2008   Page 12 of 15

1    A. Okay.

2    Q. Right? Which is Mr. Bryant buys his computer, uses

3    it for a while, installs Evidence Eliminator on the 10th of
     September 2002, runs it every once in a while. On July 12th of

4    2004, he turns on his computer, which causes Evidence

5    Eliminator to run in background. He then reads his e-mail, he
     does a safe shutdown and Evidence Eliminator then proceeds to

6    find every deleted file name in the MFT and overwrite it. **And**

7    **at no point in that string has Mr. Bryant ever dragged a
     single file to the trash bin.**

8    **Is there any evidence that you have to disprove that**

9    **hypothetical?**

10    A. **Not that I've seen to this point in time.**

11
     Menz Depo. 55:5-56:04 (emphasis added).

12

13                    **III.    CONCLUSION**

14    Mattel's motion seeks unfettered access to five of Mr. Bryant's personal

15    computers—computers that did not even exist until years after the relevant events

16    in this case[8]—based on allegations of spoliation of data on two different computers

17    that, although older, also postdate the relevant timeframe. But those allegations of

18    spoliation are baseless: as to the Desktop (the computer used closest in time to the

19    relevant dates), there is affirmative proof that Evidence Eliminator was *never* used.

20    And as to the Laptop, there is no evidence that any files—let alone responsive

21    documents—were ever deleted by Mr. Bryant.

22    Based on wildly inaccurate "expert" analysis, combined with deliberate

23    misrepresentations of that analysis, Mattel now asks this court to allow it to seize

24    and examine every one of Mr. Bryant's other computers, even though they date

25    _____

26    [8] This case, despite its Dickensian excesses, is at root simple: Did Mr. Bryant create
     Bratz in 1998 or 1999, what are the terms of his 1999-2000 employment, and what were

27    the circumstances surrounding his exit from Mattel in the fall of 2000? The Desktop
     postdates that departure by a day. The Laptop postdates it by over a year. But the five

28    computers at issue in *this* motion were used from 2004 to the present, postdating the
     events at issue by between 4 and 8 years.

                                    10

413384.01

**Exhibit** 6

**Page** 83

1   from years after any relevant events.  Mattel makes no effort to explain what

2   relevant evidence it expects to find there.  Nor can it;  as set forth in Mr. Bryant's

3   Opposition Brief, each of Mr. Bryant's computers has already been reviewed for

4   responsive documents, and all responsive documents have been produced.  Strident

5   and irresponsible accusations of "spoliation" cannot justified this wholesale fishing

6   expedition.  Mattel's motion should be denied.

7   Dated: March 17, 2008                              KEKER & VAN NEST, LLP

8

9

10                                         By:  /s/ Michael H. Page
                                                MICHAEL H. PAGE
11                                              Attorneys for Plaintiff
                                                CARTER BRYANT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

BRYANT'S SURREPLY RE: MATTEL INC.'S MOTION FOR AN ORDER
ENFORCING COURT'S JANUARY 25, 2007 ORDER
CASE NO. CV 04-09049 SGL (RNBx)

413384.01

Exhibit  $\underline{5}$

Page  $\underline{84}$

Case 2:04-cv-09049-DOC-RNB   Document 2684-8   Filed 03/17/08   Page 15 of 16   Page ID
#:41639
Case 2:04-cv-09049-SGL-RNB     Document 2662     Filed 03/17/2008     Page 14 of 15

## PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On March 17, 2008, I served the following document(s):

**CARTER BRYANT'S SURREPLY RE:  MATTEL INC.'S MOTION FOR AN ORDER ENFORCING COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE COMPUTER HARD DRIVES AND FOR SANCTIONS**

by regular **UNITED STATES MAIL** by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for collection and processing of correspondence for mailing. According to that practice, items are deposited with the United States Postal Service at San Francisco, California on that same day with postage thereon fully prepaid. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after the date of deposit for mailing stated in this affidavit; and

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

| | |
|---|---|
| Hon. Edward A. Infante  (via Fed Ex) | John B. Quinn |
| JAMS | Michael T. Zeller |
| Two Embarcadero Center, Suite 1500 | Quinn Emanuel Urquhart Oliver & |
| San Francisco, CA 94111 | Hedges, LLP |
| Tel:   415/774-2649 | 865 South Figueroa Street, 10th Floor |
| Fax:   415/982-5287 | Los Angeles, CA  90017-2543 |
| Email:      schan@jamsadr.com | Tel:   213/443-3000 |
| | Fax:   213/443-3100 |
| | Email: |
| | johnquinn@quinnemanuel.com |
| | Email: |
| | michaelzeller@quinnemanuel.com |

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit  G
Page     85

1   Thomas J. Nolan                          Alexander H. Cote
2   Skadden Arps Slate Meagher &             Overland Borenstein Scheper & Kim LLP
    Flom                                     300 S. Grand Avenue, Suite 2750
3   300 South Grand Avenue, Suite            Los Angeles, California 90071
    3400                                     Tel:   213/613-4660
4   Los Angeles, CA 90071-3144               Fax:   213/613-4656
5   Tel:   213/687-5000                      Email :      acote@obsklaw.com
    Fax:   213/687-5600
6   Email: tnolan@skadden.com
7
8
        Executed on March 17, 2008, at San Francisco, California.
9
10      I declare under penalty of perjury under the laws of the State of California
    that the above is true and correct.
11
12
13                                  _Julie Selby_____
                                    Julie A. Selby
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28