1  THOMAS J. NOLAN (Bar No. 66992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, CA  90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:  (213) 687-5600
4  E-mail:     tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No.  40892)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Embarcadero Center, 38th Floor
   San Francisco, CA  94111-5974
7  Telephone:  (415) 984-6400
   Facsimile:  (415) 984-2698
8  Email:      rkennedy@skadden.com

9  Attorneys for Counter-Defendants,
   MGA ENTERTAINMENT, INC.,
10 ISAAC LARIAN, MGA
   ENTERTAINMENT (HK) LIMITED,
11 and MGAE de MEXICO S.R.L. de C.V.

12              UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14 | CARTER BRYANT, an individual | ) | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|---|
15 | Plaintiff, | ) ) | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
16 | v. | ) ) | |
17 | MATTEL, INC., a Delaware corporation | ) ) | **THE MGA PARTIES' OPPOSITION TO MATTEL, INC.'S MOTION OBJECTING TO** |
18 | Defendant. | ) ) | **PORTIONS OF DISCOVERY MASTER'S FEBRUARY 15, 2008** |
19 | | ) ) | **ORDER REGARDING MATTEL'S MOTION TO COMPEL** |
20 | | ) ) | **RESPONSES TO INTERROGATORIES BY THE** |
21 | | ) ) | **MGA PARTIES** |
22 | | ) ) | Honorable Stephen G. Larson |
23 | Consolidated with MATTEL, INC. v. BRYANT and MGA | ) ) | Date:  March 31, 2008 |
24 | ENTERTAINMENT, INC. v. MATTEL, INC. | ) ) | Time:  10:00 a.m. Place:  Courtroom 1 |
25 | | ) | |

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. iii

I.    PRELIMINARY STATEMENT ..........................................................1

II.   THE DISCOVERY MASTER'S RULING MAY NOT BE OVERTURNED UNLESS CLEARLY ERRONEOUS OR CONTRARY TO LAW. ..................................................................2

III.   STATEMENT OF FACTS. .............................................................3

    A.   Mattel's Interrogatories, MGA's Responses, And The Predictable Mattel Motion to Compel ......................................3

    B.   Judge Infante's Well-Reasoned and Amply Supported Opinion....................................................................3

        1.   Interrogatory Nos. 27-29 (Mattel's Transparent Attempt To Manufacture An Unfair "Sound Bite" for the Jury Regarding the "Invention" of "Bratz") ..............4

        2.   Interrogatory No. 39 (Mattel's Fishing Expedition for Cumulative Financial Information) ................................7

        3.   Interrogatory No. 41 (Another Fishing Expedition Based on Mattel's Speculation that Every Former Mattel Employee Who Joined MGA Must Have Been Bribed By MGA To Steal Mattel Trade Secrets) ................................................................9

        4.   Interrogatory No. 46 (Mattel's Attempt To Invade The Relationship Between MGA and Its Former Counsel Based On "Rank Speculation" Of A "Dispute") ....................................................................10

        5.   Interrogatory Nos. 48-50 (Mattel's Contention Interrogatories Directed To MGA's Phase Two Trade Dress Claims) ..........................................................11

IV.   ARGUMENT...............................................................................12

    A.   The Discovery Master's Orders As To Interrogatory Nos. 27-29 Are Not Clearly Erroneous Or Contrary To Law. .........12

    B.   The Discovery Master's Orders As To Interrogatory No. 39 Are Not Clearly Erroneous Or Contrary To Law....................14

    C.   The Discovery Master's Orders As To Interrogatory No. 41 Are Not Clearly Erroneous Or Contrary To Law....................16

    D.   The Discovery Master's Orders As To Interrogatory No. 46 Are Not Clearly Erroneous Or Contrary To Law....................17

MGA PARTIES' OPP. TO MATTEL'S MOT. OBJECTING TO DISCOVERY MASTER'S FEB. 15, 2008 ORDER

E.   The Discovery Master's Orders As To Interrogatory Nos. 48-50 Are Not Clearly Erroneous Or Contrary To Law. .........19

F.   Judge Infante's Determination That MGA's Categorical Identification Of Documents Was Sufficient Under Rule 33 Was Not Clearly Erroneous Or Contrary To Law. ..................20

V.   ANY FURTHER OBLIGATION TO RESPOND TO PHASE TWO INTERROGATORIES HAS BEEN STAYED. ......................23

VI.   CONCLUSION ................................................................................24

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*Anderson v. City of Bessemer City*,
  470 U.S. 564 (1985)................................................................. 2

*Bernstein v. Travelers Ins. Co.*,
  447 F. Supp. 2d 1100 (N.D. Cal. 2006) ................................ 4

*Clean Earth Remediation & Constr. Servs.  Inc. v. Am. Int'l Group*,
  245 F.R.D. 137 (S.D.N.Y. 2007)...................................14, 22

*Ctr. for Biological Diversity v. Fed. Highway Admin.*,
  290 F. Supp. 2d 1175 (S.D. Cal. 2003)................................12

*Feshbach v. S.E.C.*,
  5 F. Supp. 2d 774 (N.D. Cal. 1997)......................................18

*Grynberg v. Total S.A.*,
  No. 03-cv-01280-WYD-BNB,
  2006 WL 1186836 (D. Col. May 3, 2006)............................14

*Hickman v. Taylor*,
  329 U.S. 495 (1947).............................................................18

*Hiskett v. Wal-Mart Store, Inc.*,
  180 F.R.D. 403 (D. Kan. 1998) ............................................14

*IBP, Inc. v. Mercantile Bank of Topeka*,
  179 F.R.D. 316 (D. Kan. 1998) ............................................14

*In re Grand Jury Subpoena to Kan. City Bd. of Pub. Utils.*,
  246 F.R.D. 673 (D. Kan. 2007) ............................................19

*In re Napster, Inc. Copyright Litig.*,
  479 F.3d 1078 (9th Cir. 2007)..............................................18

*Johnson v. Kraft Foods N. Am., Inc.*,
  236 F.R.D. 535 (D. Kan. 2006) .....................................14, 21

*Katrina Canal Breaches Consol. Litig.*,
  No. 05-4182, 2007 WL 1959193 (E.D. La. June 27, 2007) .................17

*King v. Georgia Power Co.*,
  50 F.R.D. 134 (N.D. Ga. 1970) ............................................17

*Miller v. Fed. Express Corp.*,
  186 F.R.D. 376 (W.D. Tenn. 1999) ......................................21

*Moses v. Halstead*,
  236 F.R.D. 667 (D. Kan. 2006) .......................................7, 14

*Rivera v. NIBCO, Inc.*,
   364 F.3d 1057 (9th Cir. 2004) ................................................................. 4

*S.E.C. v. Rubera*,
   350 F.3d 1084 (9th Cir. 2003) ................................................................. 2

*Schaap v. Executive Indus., Inc.*,
   130 F.R.D. 384 (N.D. Ill. 1990) ...........................................................19

*Seff v. General Outdoor Adver. Co.*,
   11 F.R.D. 597 (N.D. Ohio 1951) ..........................................................17

*Ukiah Automotive Investments, v. Mitsubishi Motors of N. Am., Inc.*,
   No. C-04-3932 MMC (MEJ),
   2006 WL 1348562 (N.D. Cal. May 17, 2006) .....................................22

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) ..............................................................................18

*VNA Plus, Inc. v. Apria Healthcare Group, Inc.*,
   No. CIV. A. 98-2138-KHV, 1999 WL 386949 (D. Kan. June 8, 1999) ..........14, 21

**Statutes**

Fed. R. Civ. P. 26(a)(3)(A)(iii) .................................................................23

Fed. R. Civ. P. 26(b)(1) ............................................................................18

Fed. R. Civ. P. 26(b)(3) ............................................................................18

Fed. R. Civ. P. 72(a) ................................................................................. 2

C. D. Local Rule 16-2.3 ............................................................................23

MGA PARTIES' OPP. TO MATTEL'S MOT. OBJECTING TO DISCOVERY MASTER'S FEB. 15, 2008 ORDER

## I.      PRELIMINARY STATEMENT

In this motion, Mattel objects to that portion of Judge Infante's February 15, 2008, Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 (the "February 15 Order") which denied Mattel's motion to compel, in part.  In ruling on Mattel's motion to compel further responses to 21 interrogatories, Judge Infante considered over 100 pages of briefing, over 430 pages of "Separate Statements," and over 2,200 pages of supporting exhibits, including over 1,100 pages of interrogatory responses.  Even a cursory examination of Judge Infante's 22-page opinion demonstrates that his rulings are not clearly erroneous or contrary to law.

Mattel offers no more than its disagreement with Judge Infante and a restatement of the arguments that were considered and rejected by Judge Infante in his well-reasoned and amply supported February 15 Order.  Mattel has utterly failed to demonstrate the abuse of discretion required to overturn Judge Infante's findings and conclusions that the MGA Parties[1] have substantially discharged their obligations under Rule 33 to respond to the interrogatories, and that the burden of further response to the interrogatories outweighs any likely benefit and, therefore, should be limited under the dictates of Rule 26(b)(2)(C).

In addition, pursuant to this Court's February 4, 2008 Minute Order, Phase Two discovery has been stayed.  Interrogatory Nos. 39, 41 (to the extent at issue here) and 48-50 relate solely to Phase Two issues.  Thus, even if Mattel could show that Judge Infante's rulings on these interrogatories were clearly erroneous or contrary to law (which it has not and cannot), any obligation to provide supplemental responses would be stayed under this Court's order.

Mattel's "objection" should be overruled and Judge Infante's rulings upheld.

---

[1]  The "MGA Parties" are MGA Entertainment, Inc. ("MGA"), Isaac Larian ("Larian"), MGA Entertainment (HK) Limited ("MGA HK"), and MGAE de Mexico S.R.L. de C.V. ("MGA Mexico").

## II. THE DISCOVERY MASTER'S RULING MAY NOT BE OVERTURNED UNLESS CLEARLY ERRONEOUS OR CONTRARY TO LAW.

Mattel concedes, as it must, that this Court may not overturn Judge Infante's rulings unless it finds that the February 15, 2008 Order is "clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); Motion. at 6:18-20.  *See also* J. Larson's Standing Order at 2:11-13 (¶ 3 Discovery) ("[t]he decision of the Magistrate Judge shall be final, subject to modification by the District Court *only* where it has been shown that the Magistrate Judge's order is clearly erroneous or contrary to law.") (emphasis added).

Applying the "clearly erroneous" standard to the factual findings of district court judges, the Ninth Circuit has recognized that if the lower court's "view of the evidence is plausible in light of the record viewed in its entirety, it *cannot* be clearly erroneous, even if the reviewing court would have weighed the evidence differently had it sat as the trier of fact." *S.E.C. v. Rubera*, 350 F.3d 1084, 1093-94 (9th Cir. 2003).  The Supreme Court has held that a fact finder's decision *cannot* be clearly erroneous if the fact finder is forced to choose from among multiple plausible alternative views of the evidence. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985).  This Court has similarly deferred to Judge Infante in its review of his prior rulings in this case. *See* July 2, 2007 Minute Order at 3 (overruling MGA's objection to a Judge Infante order, the Court stated that "[t]his Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result.  However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.") (Miller Decl., Ex. A.)

III.   **STATEMENT OF FACTS.**

   A.   **Mattel's Interrogatories, MGA's Responses, And The Predictable Mattel Motion to Compel**

During the period from late September 2007 to late October 2007, Mattel served the four sets of interrogatories at issue on each of the MGA Parties.  (Proctor Decl. Exs. 1-4.)  As with Mattel's Motion, this opposition will focus on the responses of MGA.  Each argument herein applies equally to the responses of the other MGA Parties, MGA HK, MGA Mexico and Mr. Larian.

In November of 2007, the MGA Parties served responses and objections to Mattel's interrogatories, and in some instances supplemental responses.  (Decl. of Tim Miller In Support Of MGA Entertainment Inc.'s Opposition to Mattel, Inc.'s Motion to Compel Responses to Interrogatories (Nos. 27-44 and 46-50) by the MGA Parties ¶¶ 2 and 4, dated December 31, 2007 ("Miller Decl. In Support of MGA's Opposition"), Notice of Lodging, Ex. 11.)  The parties met and conferred on December 10 and 12, 2007 regarding the supplemental responses.  (*Id.* at ¶ 7.)  The MGA Parties offered to provide a substantial supplement of their interrogatory responses on December 12, 2007.  (*Id.* at ¶ 13.)  However, on December 20, 2007, Mattel filed a motion to compel further responses to 21 of the interrogatories under discussion.  (Feb. 15, 2008 Order at 1:23-24, Proctor Decl. Ex. 11.)  The MGA Parties served second and third supplemental responses after the close of briefing on Mattel's motion.  (Supplemental Miller Decl, dated Feb. 8, 2008 at ¶ 2, Notice of Lodging Ex. 18.)  Judge Infante considered all supplemental responses in his ruling. (Telephonic Tr. of Proceedings, Feb. 11, 2008 at 38:8-9, Proctor Decl. Ex. 10.)

   B.   **Judge Infante's Well-Reasoned and Amply Supported Opinion**

Judge Infante heard the parties' arguments on February 11, 2008.  (Proctor Decl. Ex. 10.)  On February 15, 2008, Judge Infante issued his Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties (the "February 15 Order").  Judge Infante

- 3 -

1 │ granted Mattel's motion with respect to Interrogatory Nos. 38, 40, 41 (as narrowed),

2 │ 43-44 and 47.  (February 15, 2008 Order at 22:15-16.)  The MGA Parties have not

3 │ objected to the order and have already provided supplemental responses to all Phase

4 │ One interrogatories.

5 │       Judge Infante denied Mattel's motion to compel as to Interrogatory Nos. 27-37,

6 │ 39, 42, 46 and 48-50, setting forth his findings, conclusion and analysis in a well-

7 │ reasoned 22-page opinion containing detailed factual findings and legal conclusions

8 │ with respect to each of the interrogatories at issue in this objection.  Judge Infante

9 │ noted at the outset the law of the Ninth Circuit that "District courts need not condone

10 │ the use of discovery to engage in 'fishing expeditions.'"  (*Id.* at 5:6-9 (citing *Rivera v.*

11 │ *NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004)).  Judge Infante also considered

12 │ *Bernstein v. Travelers Insurance Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006)

13 │ for its analysis on Congressional intent.  (*Id.* at 5:9-14) ("Congress' changes in the

14 │ language of Rule 26(c), substituting the words "claim or defense" for the phrase

15 │ "subject matter involved in the pending action," were intended to prevent discovery

16 │ that swept far beyond the claims and defenses of the parties and that seemed

17 │ designed not to fairly litigate the issues presented by the pleadings but to develop

18 │ new claims or defense.").

19 │       The following are the highlights from Judge Infante's opinion:

20 │       **1.**   **Interrogatory Nos. 27-29 (Mattel's Transparent Attempt To**
   │              **Manufacture An Unfair "Sound Bite" for the Jury Regarding**
21 │              **the "Invention" of "Bratz")**

22 │       In Interrogatory Nos. 27-29, Mattel seeks information regarding "Bratz

23 │ Inventions" that were "created" by Bryant before, during and after his employment

24 │ by Mattel.  (Motion at 7:12-14.)  The overly broad and complex nature of these

25 │ interrogatories is illustrated by Interrogatory No. 27:

26 │              IDENTIFY each and every BRATZ INVENTION YOU
   │              contend was CREATED, in whole or in part, prior to
27 │              January 4, 1999 and for each BRATZ INVENTION so
   │              identified state all facts that support YOUR contention that
28 │              such BRATZ INVENTION (or aspects or portions thereof)
   │              was CREATED prior to January 4, 1999, and IDENTIFY

- 4 -

> all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts

(Proctor Decl. Ex. 1 at 9:21-27.)  To unpack this interrogatory, one must begin with the 39-word definition of the term "BRATZ INVENTION," which Mattel defines as:

> any representation, idea, concept, work, process, procedure, plan, improvement, design or other development, whether fixed in tangible form or not, that REFERS OR RELATES TO BRATZ including but not limited to any DESIGN that REFERS OR RELATES TO BRATZ.

(*Id.* at 4:5-8.)  It is then necessary to go to Mattel's 205 word definition of "BRATZ":

> "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or DESIGN or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.  Without limiting the generality of the foregoing, and contrary to MGA's recent assertions in connection with other Mattel discovery requests, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Interrogatories.

(*Id.* at 3:17-4:4.)  It is then necessary to go to Mattel's 86-word definition of "DESIGN" or "DESIGNS":

> "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

- 5 -

1   (Proctor Decl. Ex. 1 at 3:8-16) (*See Appendix 1* to this Memorandum, illustrating the

2   extent of the complexity and overbreadth of Mattel's definition of "BRATZ

3   INVENTION," how it conflates various areas of intellectual property law.)

4        Mattel contends that its definition of "Bratz Invention" was "comprehensive,

5   but straightforward." (Motion at 9, fn 22.) Not surprisingly, Judge Infante disagreed,

6   concluding that Mattel's definition of "Bratz Invention" was "extremely broad,

7   encompassing numerous intellectual property concepts." (Feb. 15, 2008 Order at

8   8:3-4, Proctor Decl. Ex. 11.) In doing so, Judge Infante agreed with MGA's showing

9   that Mattel's definition of "invention" unfairly conflated distinct issues of patent law,

10  copyright protection, trade secret law and the common law protecting original ideas,

11  many of which have no place in the ordinary usage of the term "invention." (*See id.*

12  at 7:11-14 (noting MGA's argument).) As the MGA Parties argued before Judge

13  Infante, these distinctions are important because Mattel lays claim to Bratz under a

14  January 4, 1999 "Employee Confidential Information and Inventions Agreement."

15  (*Id.* at 7:15-17.) Putting a stop to Mattel's definitional gamesmanship, Judge Infante

16  held that "Mattel has not shown how each and every concept embedded in its multi-

17  faceted definition of 'Bratz Invention' is relevant to interpreting the term 'invention'

18  for purposes of enforcing the 'Employee Confidential Information and Inventions

19  Agreement,' signed by Bryant." (*Id.* at 8:4-7.)

20        Judge Infante concluded that "[o]n balance, the burden of responding further

21  to Interrogatory Nos. 27-29, as written, outweighs the likely benefits of the

22  interrogatories, taking into account the needs of the case, the amount in controversy,

23  the parties' resources, the importance of the issues at stake in the litigation, and the

24  importance of the proposed discovery in resolving the issues." (*Id.* at 8:27-9:3.)

25  This conclusion, based on the dictates of Federal Rule of Civil Procedure 26(b)(2)(C),

26  was based on Judge Infante's finding, supported by record evidence, that the

27  "interrogatories would force the MGA Parties to review the nearly 4 million pages of

28

1  documents produced in this action and more than 50 days of deposition testimony in
2  search" of the information requested in the interrogatories.  (*Id.* at 8:18-25.)

3      Independently, Judge Infante found that the MGA Parties' responses to
4  Interrogatory Nos. 27-29 were adequate under Federal Rule of Civil Procedure 33.
5  (Feb. 15, 2008 Order at 9:4-7, Proctor Decl. Ex. 11.)  Judge Infante considered the
6  MGA Parties' responses in great detail.  (*Id.* at 9:9-10:3.)  Based on his review of
7  those responses, Judge Infante found the MGA Parties' responses to be "adequate
8  under the circumstances" because the MGA Parties "provide facts supporting the
9  contentions identified in the interrogatories, identify persons with knowledge of
10  those facts, and identify the principal documents or categories of documents that
11  support each contention."  (*Id.* at 9:4-7.)  In doing so, Judge Infante adopted the
12  MGA Parties' argument, based on substantial case law, that a response to a
13  contention interrogatory is adequate if it sets forth the principal facts supporting the
14  contention.  (*Id.* at 9:8, citing *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan.
15  2006), which held that "'contention interrogatories' are overly broad and unduly
16  burdensome on their face if they seek 'all facts' supporting a claim or defense, such
17  that the answering party is required to provide a narrative account of its case," and
18  that the duty to respond to such an interrogatory is limited to an identification of the
19  "'principal or material' facts which support" the contention.)

## 2.    Interrogatory No. 39 (Mattel's Fishing Expedition for Cumulative Financial Information)

22      Mattel's Interrogatory No. 39 requests the MGA Parties to identify every bank
23  or financial institution account that "refers or relates" to them since January 1, 1999.
24  Mattel admitted to Judge Infante that it seeks this information so that it can subpoena
25  a broad array of financial information from these banks and financial institutions.
26  (Mattel Inc.'s Motion to Compel Responses to Interrogatories (Nos. 27-44, 46-50) By
27  the MGA Parties at 25:16-27:11, Notice of Lodging, Ex. 3.)  The MGA Parties
28  presented Judge Infante with evidence of the substantial financial information they

- 7 -

1  have already produced to Mattel, and argued that Mattel has not shown how the

2  37,000 pages of financial information it already received is insufficient.  (*Id.* at 14:5-

3  7; MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to Compel

4  Responses to Interrogatories (Nos. 27-44 and 46-50) by the MGA Parties at 10:21-

5  11:14( "MGA's Opposition") , Notice of Lodging, Ex. 10.)

6         Judge Infante specifically noted, based on evidence submitted by the MGA

7  Parties, that Mattel had already received a broad array of financial information from

8  the MGA Parties, including:

9            audited and unaudited quarterly and annual profit and loss
             statements; audited and unaudited quarterly and annual
10           statements; annual reports; various MGA financial reports;
             various financial documents relating to Veronica Marlow;
11           documents showing royalty payments to Bryant;
             documents showing MGA's sales, returns and costs of good
12           sold for each month, by SKU, since 2001; documents
             showing MGA's promotional advertising and media
13           expenditures, including MGA's internal allocation of those
             expenditures by brand and/or product; documents showing
14           MGA's amortization and depreciation of certain capital
             assets and expenditures; documents showing MGA's
15           monthly general ledger entries aggregated by account,
             including income and expense accounts, reserves and
16           liabilities; and documents sufficient to explain MGA's
             various accounts as presently and historically maintained in
17           MGA's books and records, as well as various nomenclature
             assigned to items, products, brands, sub-brands and profit
18           centers.

19  (February 15, 2008 Order at 14:7-19.)  Judge Infante also noted that MGA had

20  produced a witness to testify regarding any payments to Carter Bryant.  (*Id.* at 14:19-

21  20.)  Judge Infante also found the interrogatory cumulative of previously granted

22  discovery of documents sufficient to identify Mr. Larian's bank accounts or financial

23  institutions and other banking relationships since January 1, 1999, and noted that

24  Mattel has obtained deposition testimony regarding payments to Mr. Larian,

25  including the account to which such payments were made.  (*Id.* at 14:22-15:2.)

26         Based on his review of the record, and applying the requirements of Rule

27  26(b)(2)(C), Judge Infante denied Mattel's motion to compel further responses to the

28

1  interrogatories on the grounds that it is cumulative of discovery Mattel has already

2  obtained from the MGA Parties.  (*Id.* at 14:21-15:5.)

3      **3.    Interrogatory No. 41 (Another Fishing Expedition Based on Mattel's Speculation that Every Former Mattel Employee**

4      **Who Joined MGA Must Have Been Bribed By MGA To Steal Mattel Trade Secrets)**

5

6      Interrogatory No. 41 asks MGA to identify former Mattel employees who

7  came to work at MGA.  (Feb. 15, 2008 Order at 10:5-12.)  As Judge Infante found,

8  the MGA Parties "provide[d] a list of well over a hundred individuals with their

9  position title and employment dates."  (*Id.* at 10:13-14.)  Mattel contended the

10 response was incomplete because it did not include the date of first contact and date

11 of first interview for each employee.  (*Id.* at 10:15-17.)  In its opposition papers, the

12 MGA Parties represented that they were looking for the information and would

13 produce it if it was reasonably available without undue burden.  (*Id.* at 10:19-21.)  At

14 oral argument, counsel for the MGA Parties focused on the request for "date of first

15 contact," arguing that the term was so vague and broad that it could be read to

16 include numerous informal contacts, necessitating an extensive and unduly

17 burdensome inquiry to determine whether any employee of the MGA Parties had a

18 "first contact" with any of the 188 former Mattel employees who came to work at

19 MGA prior to the first interview.  (Telephonic Tr. of Proceedings, Feb. 11, 2008, at

20 36:7-17, Proctor Decl. Ex. 10.)

21     The Discovery Master carefully considered Mattel's arguments and, in fact,

22 granted Mattel's motion to compel regarding Interrogatory No. 41 regarding the date

23 of first contact, interview date, start date and end date for *Bryant's* employment.

24 (Feb. 15, 2008 at 10:23-27.)  The MGA Parties have provided this information.

25 However, Judge Infante distinguished Bryant, the alleged creator of  Bratz, from

26 other former Mattel employees later hired by MGA, whose employment information

27 is only potentially relevant to Mattel's Phase Two "commercial bribery," RICO and

28 trade secret claims.  (*Id.* at 10:25-27; 11:4-6.)  With respect to the latter, Judge

- 9 -

1  Infante held that "[t]he interview dates are potentially relevant to Mattel's claim that

2  the MGA parties induced former Mattel employees to abscond with Mattel's trade

3  secrets," and compelled the MGA Parties to provide that information.  (*Id.* at 11:2-3.)

4  However, applying the factors set forth in Federal Rule of Civil Procedure

5  26(b)(2)(C), Judge Infante held that "the MGA parties are not required to provide the

6  date of first contact for each individual because the burden of producing such

7  information outweighs its likely benefit."  (*Id.* at 11:4-6.)

8          **4.   Interrogatory No. 46 (Mattel's Attempt To Invade The**
           **Relationship Between MGA and Its Former Counsel Based**
9          **On "Rank Speculation" Of A "Dispute")**

10         The MGA Parties substituted their counsel in this action.  Interrogatory No. 46

11 assumes that substitution was the product of a "dispute" with MGA's former counsel

12 and seeks to invade that attorney-client relationship in a search for potentially

13 relevant information.  Judge Infante put a stop to this invasive fishing expedition:

14              Mattel's motion to compel is denied as to Request No. 46.
                The interrogatory is not tethered to any particular claim or
15              defense.  Nor is the interrogatory directed at uncovering the
                factual events giving rise to any claim or defense.  Instead,
16              the interrogatory assumes that there was a "dispute" with
                former counsel involving false testimony, illegal conduct,
17              or attorney misconduct; that this "dispute" led to the
                withdrawal, termination and/or substitution of counsel; and
18              that this "dispute" potentially relates to a claim or defense
                in this suit.  *There is no evidence, however, to substantiate*
19              *such a series of assumptions*.

20 (Feb. 15, 2008 Order at 21:19-25 (emphasis added), Proctor Decl. Ex. 11.)  Judge

21 Infante also found the interrogatory was "grossly overbroad" because it sought

22 information concerning "any and all disputes" with MGA's former counsel

23 "regardless of whether such disputes relate to a claim or defense in the case."  (*Id.* at

24 22:2-4.)  Judge Infante thus held under Rule 26(b)(2)(C) that the burden of providing

25 the information outweighed any likely benefit.  (*Id.* at 21:25-22:1.)

26         Independently, Judge Infante found that Interrogatory No. 46 improperly

27 invaded the attorney-client privilege and work product protections, finding that

28 "Mattel's rank speculation that there were attorney-client discussions of wrongdoing

1  is insufficient to vitiate the attorney-client privilege," citing controlling Ninth Circuit

2  law addressing the crime-fraud exception to the attorney-client privilege.  (*Id.* at

3  22:5-10.)  Finally, Judge Infante found there had been no waiver because there had

4  been no public disclosure of the substance of any privileged communications.  (*Id.* at

5  22:10-12.)

6  **5.  Interrogatory Nos. 48-50 (Mattel's Contention Interrogatories Directed To MGA's Phase Two Trade Dress Claims)**

7

8  Interrogatory Nos. 48 through 50 ask MGA to identify each trade dress that

9  has been infringed by Mattel and the Mattel product that infringes that trade dress,

10  and to explain how that trade dress is protectible.  (Feb. 15, 2008 Order at 12:6-15,

11  Proctor Decl. Ex. 11.)  These are Phase Two issues because MGA's trade dress

12  infringement claims will be tried in Phase Two.  The MGA Parties answered the

13  interrogatories and reserved the right to supplement their answers during Phase Two

14  discovery.  (*Id.* at 12:24-27.)

15  Judge Infante considered the responses of the MGA Parties -- including their

16  identification of numerous elements of trade dress they contend Mattel has infringed

17  (*id.* at 13:1-3), MGA's specific identification of Mattel's "My Scene" fashion dolls

18  and pet dolls as the Mattel products that infringe its trade dress (*id.* at 13:3-5), and

19  MGA's identification of the principal facts supporting its contention that its trade

20  dress is protectible under the applicable trade dress legal principles (*id.* at 13:5-8) –

21  and concluded that the "MGA Parties are in substantial compliance with Rule 33."

22  (*Id.* at 13:1-8.)  Judge Infante also concluded that the MGA Parties' reservation of

23  rights to supplement the interrogatories during Phase two did not undermine the

24  sufficiency of the responses, finding that just because "interrogatory responses

25  include a reservation of rights to supplement during expert discovery does not render

26  the responses inherently improper or inadequate."  (*Id.* at 13:8-9.)

27

28

## IV.   **ARGUMENT**

In its objection to Judge Infante's well-reasoned and well-supported opinion, Mattel offers only its disagreement with Judge Infante and a regurgitation of arguments considered and rejected by Judge Infante based on a careful analysis of the record and legal authorities submitted by the parties.  Mattel's disagreement fails to establish that Judge Infante's rulings were clearly erroneous or contrary to law. *See Ctr. for Biological Diversity v. Fed. Highway Admin.*, 290 F. Supp. 2d 1175, 1200 (S.D. Cal. 2003) (denying plaintiffs' objections to magistrate's pre-trial discovery order because magistrate thoroughly and thoughtfully analyzed plaintiffs' request for discovery and articulated her reasons for denying discovery, and plaintiffs raised essentially the same arguments before court as they did before magistrate).

### A.   **The Discovery Master's Orders As To Interrogatory Nos. 27-29 Are Not Clearly Erroneous Or Contrary To Law.**

Mattel contends that Judge Infante's ruling was clearly erroneous because he permitted the MGA Parties to limit the definition of "invention" to the term as it is used in utility patent law.  (Motion at 8:15-9:4.)  Mattel sells Judge Infante short.  In fact, Judge Infante completely dismantled Mattel's abuse of its defined terms and scuttled Mattel's attempt to obtain a misleading "sound bite" for the jury on the central issue of the purported "invention" of Bratz.  As discussed above, Judge Infante found that (i) Mattel's definition of "Bratz Invention" was overly broad and unduly burdensome (February 15, 2008 Order at 8:2-3, Proctor Decl. Ex. 11), (ii) Mattel failed to show that the various intellectual property concepts implicated by the definition were relevant to the key issue of "invention" under Mattel's "Inventions Agreement" with Bryant (*id.* at 8:4-7), (iii) the MGA Parties had provided an adequate response under the circumstances (*id.* at 9:4-7), and (iv) the burden of any further responses would be outweighed by the likely benefit (or lack thereof).  (*Id.* at 8:27-9:3.)  Judge Infante's conclusions were supported by ample

1  legal authority.  In reaching his conclusion, Judge Infante had the benefit of the

2  MGA Parties' briefing on the matter, which cited federal and state statutes and case

3  law, as well as the revered *Chisum on Patents*, to illustrate how Mattel's definition of

4  "BRATZ INVENTION," while purporting on its face to relate to "inventions," in fact

5  touched on multiple areas of intellectual property law, many of which do not relate to

6  the commonly understood meaning of "invention."  (MGA 's Opposition at 14:3-15:8,

7  Notice of Lodging Ex. 10.)  As Judge Infante found, it was not only proper but

8  necessary to limit Mattel's potentially limitless and misleading definition.

9      Mattel emphasizes the importance of its interrogatories, arguing that

10  "[w]hether Bryant invented Bratz while employed by Mattel, and thereby assigned

11  the rights to Bratz to Mattel pursuant to the terms of the Inventions Agreement, is at

12  the heart of this case."  (Motion at 8:1-3.)  The importance of the issues addressed by

13  these interrogatories is all the more reason for increased scrutiny of Mattel's

14  deceptive litigation tactics.  Judge Infante addressed the issue head on, holding that

15  "Mattel has not shown how each and every concept embedded in its multi-faceted

16  definition of 'Bratz Invention' is relevant to interpreting the term 'invention' for

17  purposes of enforcing the 'Employee Confidential Information and Invention

18  Agreement,' signed by Bryant." (Feb. 15, 2008 Order at 8:4-7, Proctor Decl. Ex. 11.)

19  Mattel fails to show how Judge Infante's finding was clearly erroneous or contrary to

20  law.

21      Mattel complains that the MGA Parties identified no Bratz "inventions" in

22  their responses, arguing that Judge Infante has allowed MGA to avoid identifying

23  intellectual property that Bryant allegedly created while employed by Mattel.

24  (Motion at 8:9-14.)  The MGA Parties have not identified a Bratz "inventions" by

25  Bryant while he was employed by Mattel because the MGA Parties contends that

26  there were no such inventions.  As Judge Infante found, the MGA Parties have

27  provided Mattel with the principal facts supporting their contention.  (Feb. 15, 2008

28  Order at 9:4-7.)  The parties will argue at trial whether these facts amount to an

- 13 -

1  "invention" by Bryant under his "Inventions Agreement" with Mattel.  Under the

2  authorities cited by the MGA Parties to Judge Infante, nothing more is required.[2]

3  Indeed, even the cases cited by Mattel support the responses of the MGA Parties.

4  *See VNA Plus, Inc. v. Apria Healthcare Group, Inc.*, No. CIV. A. 98-2138-KHV,

5  1999 WL 386949, at *6 (D. Kan. June 8, 1999) ("[A]n interrogatory which seeks 'all

6  facts' supporting allegations within one paragraph of a complaint is overly broad and

7  unduly burdensome on its face."); *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D.

8  535, 544 (D. Kan. 2006) ("[A] contention interrogatory which seeks 'all facts'

9  supporting allegations within one paragraph of a complaint is overly broad and

10  unduly burdensome on its face.").

11  **B.    The Discovery Master's Orders As To Interrogatory No. 39 Are Not**
12  **Clearly Erroneous Or Contrary To Law.**

13      Mattel asserts that information from the MGA Parties' bank accounts may lead

14  to direct evidence of liability regarding its allegations of commercial bribery against

15  MGA and Larian.  (Motion at 12:6-12.)  Judge Infante found that the information

16  sought is cumulative of other discovery already obtained by Mattel.  (Feb. 15, 2008

17  Order at 14:21-23.)  The Discovery Master grounded his finding in the fact that

18  Mattel has already obtained documents sufficient to identify each of Mr. Larian's

19

---

20      [2]   The following are some of the authorities cited by the MGA Parties to Judge
21  Infante on this point: *Clean Earth Remediation & Constr. Servs. Inc.  v. Am. Int'l
   Group*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007) ("[A] number of cases have held that
22  interrogatories seeking identification of all facts supporting a particular allegation are
   *inherently improper*.") (emphasis added) (collecting cases); *Moses v. Halstead,* 236
23  F.R.D. 667, 674 (D. Kan. 2006) ("'[C]ontention interrogatories' are overly broad and
   unduly burdensome on their face if they seek 'all facts' supporting a claim or defense,
   such that the answering party is required to provide a narrative account of its case.")*;
24  Grynberg v. Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *7 (D.
   Col. May 3, 2006) ("It is proper, of course, to inquire about the material facts
25  supporting specific factual matters raised in the pleadings."); *IBP, Inc. v. Mercantile
   Bank of Topeka*, 179 F.R.D. 316, 321 (D. Kan. 1998) ("[t]o require specifically 'each
26  and every' fact and application of law to fact . . . would too often require a laborious,
   time-consuming analysis, search and description of incidental, secondary, and
27  perhaps irrelevant and trivial details."); *Hiskett v. Wal-Mart Store, Inc.*, 180 F.R.D.
   403, 404-05 (D. Kan. 1998) ("Interrogatories should not require the answering party
28  to provide a narrative account of its case.").

---

- 14 -

1  bank accounts or financial institutions and other banking relationships since January

2  1, 1999 (Feb. 15, 2008 Order at 14:23-25, Proctor Decl. Ex. 11, citing Proctor Decl.

3  Ex. 16 at 15-16) and also obtained deposition testimony regarding payments to Mr.

4  Larian, including the accounts to which such payments are made.  (*Id.* at 14:27-15:2.)

5  Judge Infante also considered the more than 37,000 pages of financial information

6  MGA has produced to Mattel.  (*See*, *supra* at 8:6-25.)  As Judge Infante recognized,

7  Lisa Tonnu, MGA's 30(b)(6) witness, provided deposition testimony on July 19,

8  2007 regarding payments to Mr. Bryant.  (Feb. 15, 2008 Order at 14:19-20, Proctor

9  Decl. Ex. 11; Miller Decl. In Support of MGA's Opposition, at ¶ 15, Notice of

10  Lodging Ex. 11).  Given the ample support in the record, Judge Infante's factual

11  finding was not clearly erroneous.

12      Mattel seizes upon the Discovery Master's December 31, 2007 Order and

13  claims that Interrogatory 39 seeks relevant information because Judge Infante

14  previously granted a motion to compel similar information.  (Motion at 11:8-10.)

15  Mattel's argument misses the point -- the Discovery Master denied Mattel's motion to

16  compel further response to Interrogatory 39 in part *because* it is cumulative of

17  information compelled in his previous discovery orders.  The Discovery Master

18  found that the discovery already granted in the case is sufficient such that Mattel's

19  instant interrogatory would be cumulative and unjustified in light of the factors set

20  forth in Rule 26(b)(2)(C).  (Feb. 15 2008 Order at 15:4-5, Proctor Decl. Ex. 11.)

21      Mattel further claims that the Discovery Master's Order did not address the

22  clear relevance of payments to those individuals other than Bryant.  This is incorrect.

23  Judge Infante acknowledged Mattel's relevance arguments (*Id.* at 13:20-22), but

24  nonetheless found that "[i]n light of the financial information discovery Mattel has

25  already obtained, Interrogatory No. 39 is unjustified, taking into consideration all of

26  the factors set forth in Rule 26(b)(2)(C), Fed. R. Civ. P."  (*Id.* at 15:4-5.)  Mattel fails

27  to show that this ruling is clearly erroneous or contrary to law.

28

1    **C.    The Discovery Master's Orders As To Interrogatory No. 41 Are Not**
2    **Clearly Erroneous Or Contrary To Law.**

3    Mattel argues that Judge Infante "recognized that the date of interview and

4    first contact 'is clearly relevant to Mattel's claims' but is 'conspicuously absent from

5    the MGA parties' response'" (Motion at 15:6-8), but nevertheless permitted MGA to

6    "conceal the earlier first date of contact for each individual identified." (*Id.* at 15:8-

7    10.)  Mattel fails to note that Judge Infante was referring to *Bryant's employment*.

8    (Feb. 15, 2008 Order at 10:24-26, Proctor Decl. Ex. 11) ("In particular, the date of

9    first contact, interview date, start date and end date *for Bryant's employment* are

10   highly relevant, but are conspicuously absent from the MGA parties' responses.")

11   (emphasis added).  Accordingly, the Discovery Master ordered the MGA Parties to

12   supply the date of first contact *for Bryant* (*id.* at 10:26), but determined that the

13   MGA Parties were not required to provide the date of first contact for other

14   individuals identified in the supplemental responses of the MGA Parties because "the

15   burden of producing such information outweighs its likely benefit, taking into

16   account the factors set forth in Rule 26(b)(2)(C), Fed. R. Civ. P." (*Id.* at 11:4-6.)

17   Mattel asserts that the Discovery Master's finding is not supported by the

18   record.  (Motion at 16:8-11.)  All that is required is a consideration of the scope of

19   Mattel's request for the "date of first contact" as it would apply to the more than 180

20   former Mattel employees identified by MGA.  As counsel for the MGA Parties

21   explained at oral argument, determining the date of first contact is an extremely

22   burdensome, and perhaps impossible task for all 188 former Mattel employees.  The

23   date of first contact could conceivably be something as informal and difficult to trace

24   as a MGA employee running into one of the listed former Mattel employees at the

25   local bowling alley and casually mentioning that the person should consider coming

26   to MGA over a conversation in which the Mattel employee is complaining about his

27   or her job.  (Telephone Tr. of Proceedings, Feb. 11, 2008, at 36:11-17, Proctor Decl.

28

- 16 -

1   Ex. 10.)  Judge Infante's conclusion that the burden of providing such information

2   outweighed the likely benefit is well supported and not clearly erroneous. [3]

3           **D.**    **The Discovery Master's Orders As To Interrogatory No. 46 Are Not Clearly Erroneous Or Contrary To Law.**

4

5        Mattel asserts that the Discovery Master's findings as to Interrogatory No. 46

6   are clearly erroneous or contrary to law based on Mattel's contrived speculation that

7   O'Melveny and Myers ("OMM"), MGA's former counsel, may have withdrawn from

8   its representation of MGA over a "dispute" that involved a request to engage in

9   illegal conduct.  (Motion at 17:13-18:3.)  Mattel claims that Judge Infante "puts the

10   cart before the horse" by refusing to permit Mattel to engage in this fishing

11   expedition.  (*Id.* at 18:8-9.)  Mattel fails to demonstrate that this ruling was clearly

12   erroneous or contrary to law. Judge Infante correctly recognized that "the

13   interrogatory assumes that there was a 'dispute' with former counsel involving false

14   testimony, illegal conduct, or attorney misconduct; that this 'dispute' led to the

15   withdrawal, termination and/or substitution of counsel; and that this 'dispute'

16   potentially relates to a claim or defense in this suit."  (Feb. 15, 2008 Order at 21:21-

17   24, Proctor Decl. Ex. 11.)  The Discovery Master found that "[t]here is no evidence,

18   however, to substantiate such a series of assumptions."  (*Id.* at 21:24-25.)

19        Mattel also asserts that Judge Infante's finding that the interrogatory intrudes

20   upon the protections afforded by the attorney-client privilege and the work product

21   doctrine was clear error because Mattel expressly limited its interrogatory to non-

22

---

23       [3] Mattel cites *In re Katrina Canal Breaches Consolidated Litigation*, No. 05-

24   4182, 2007 WL 1959193, at *6 (E.D. La. June 27, 2007), *King v. Georgia Power Co.*, 50 F.R.D. 134, 136 (N.D. Ga. 1970) and *Seff v. General Outdoor Advertising Co.*, 11

25   F.R.D. 597, 598 (N.D. Ohio 1951) to support the proposition that a defendant's objections that discovery is overly burdensome can be overruled where the

26   information sought is critical.  These cases are inapposite for the simple reason that Mattel's overly broad request, which seeks the date of first contact whether or not the

27   first contact caused the person to leave Mattel's employ, calls for information that has not been demonstrated to be critical, or even relevant, to the claims and defenses

28   in this action.  Judge Infante's determination that the information was not critical is entitled to deference under the clearly erroneous standard.

1  privileged information.  (Motion at 18:18-23.)  As MGA argued below, no such

2  category of information exists.  If the imagined "dispute" between MGA and its prior

3  counsel does not relate to the claims or defenses in this action, then it is not relevant

4  and is not subject to discovery.  Fed. R. Civ. P. 26(b)(1).  On the other hand, if the

5  dispute does relate to the claims or defenses in this action, then it necessarily

6  involves prior counsel's mental impressions as to how this action should or should

7  not be litigated.  Such mental impressions are protected by the attorney work product

8  doctrine.  *See Feshbach v. S.E.C.*, 5 F. Supp. 2d 774, 781-82 (N.D. Cal. 1997) (work

9  product doctrine protects from disclosure "'the mental impressions, conclusions,

10  opinions or legal theories of an attorney or other representative of a party concerning

11  the litigation' as well as documents 'prepared in anticipation of litigation'") (citing

12  Fed. R. Civ. P. 26(b)(3)); *see also Hickman v. Taylor*, 329 U.S. 495, 510-511 (1947).

13  Moreover, for there to be a "dispute," there must have been communication between

14  attorney and client as to their differing views.  Thus, Interrogatory No. 46 seeks to

15  invade the attorney-client privilege by requiring MGA to disclose the nature of any

16  such dispute, which would require MGA to disclose the content of attorney-client

17  communications regarding the dispute.  *Upjohn Co. v. United States*, 449 U.S. 383,

18  389-390 (1981).

19      Judge Infante correctly prohibited Mattel from intruding on the attorney-client

20  privilege based on nothing more than its rank speculation.  This finding is well-

21  supported in the record and in the law.  (Feb. 15 Order at 22:7-8, Proctor Decl. Ex.

22  11) (citing *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007)

23  (party seeking to vitiate the attorney-client privilege or work-product doctrine based

24  on the crime-fraud exception must demonstrate the applicability of the exception by

25  a preponderance of evidence)).

26      Mattel further argues that MGA waived its attorney-client privilege and work

27  product protections by making public statements regarding some facts underlying its

28  dispute with its former counsel.  However, the Discovery Master found that the

1   MGA Parties did not waive the attorney-client privilege, reasoning that "[a]lthough

2   the MGA parties discussed the reasons for their substitution of counsel with the press,

3   there has been no showing that the information they disclosed revealed the substance

4   of an attorney-client privileged communication."  (Feb. 15, 2008 Order at 22:9-12,

5   Proctor Decl. Ex. 11.)  Judge Infante's finding is supported by case law holding that

6   there can be no waiver of protected material where none of the statements disclosed

7   the substance of any of the confidential legal advice.  *See, e.g., In re Grand Jury*

8   *Subpoena to Kan. City Bd. of Pub. Utils.*, 246 F.R.D. 673, 680 (D. Kan. 2007) (no

9   waiver resulting from interview about report where "[a]ll that was discussed during

10  the interview were non-privileged matters").  Thus, Judge Infante's ruling was

11  correct because, as he found based on a review of the public statements at issue,

12  MGA merely acknowledged the change in counsel and discussed the reasons for it

13  generally without divulging privileged communications.  (Feb. 15, 2008 Order at

14  22:10-12, Proctor Decl. Ex. 11.)

15      **E.      The Discovery Master's Orders As To Interrogatory Nos. 48-50 Are Not Clearly Erroneous Or Contrary To Law.**

16

17          Mattel contends sensationally that Judge Infante's ruling that MGA's responses

18  to Interrogatory Nos. 48-50 were sufficient effectively granted MGA "license to

19  sandbag" Mattel with "new" trade dress infringement contentions through

20  supplementation in Phase 2 discovery.  (Motion at 20:1-6.)  Mattel makes no serious

21  attempt to show that Judge Infante's ruling was clearly erroneous or contrary to law.

22  In its two-paragraph argument, Mattel fails to cite a single case supporting its *ipse*

23  *dixit* assertion that "MGA's responses describing contentions in general terms are

24  insufficient."  (Motion at 19:8-20:15.)

25          Mattel cites *Schaap v. Executive Industries, Inc.*, 130 F.R.D. 384, 388 (N.D. Ill.

26  1990), for the proposition that "for the litigation to proceed fairly and effectively,

27  there must be mutual access to all relevant facts."  (Motion at 20:7-10.)  Mattel has

28  not shown how Judge Infante has deprived it of equal access to relevant facts.  As

- 19 -

1   Judge Infante held, based on his review of MGA's interrogatory responses, MGA

2   identified the elements of its trade dress, identified Mattel's "My Scene" fashion dolls

3   and pet dolls as the Mattel products that infringe its trade dress, and identified the

4   principal facts supporting its contention that its trade dress is protectible under the

5   applicable trade dress legal principles.  (Feb. 15 Order at 13:2-8, Proctor Decl. Ex.

6   11.)

7          Mattel makes much of the fact that MGA reserved the right, as Mattel has

8   done in many of its own responses, to supplement its responses in Phase 2 expert

9   discovery.  (Motion at 20:1-3.)  Mattel claims that this is an admission that MGA's

10  responses were not complete.  (*Id.*)  Judge Infante considered Mattel's argument and

11  concluded that just because "the interrogatory responses include a reservation of

12  rights to supplement during expert discovery does not render the responses

13  inherently improper."  (Feb. 15 Order at 13:8-9, Proctor Decl. Ex. 11.)  There is

14  nothing clearly erroneous or contrary to law about this ruling, particularly in light of

15  the current stay of all Phase Two discovery (as discussed below).

16  **F.   Judge Infante's Determination That MGA's Categorical Identification Of Documents Was Sufficient Under Rule 33 Was**
17  **Not Clearly Erroneous Or Contrary To Law.**

18         Judge Infante held with respect to several of the interrogatories at issue that

19  the MGA Parties' categorical identification of documents relevant to the contentions

20  referenced in those interrogatories was a sufficient response under Rule 33.  (*See,*

21  *e.g.*, Feb. 15, 2008 Order at 9:7 (holding that the MGA Parties adequately responded

22  to Interrogatories 27-29 by identifying "the principal documents or categories of

23  documents that support each contention"), Proctor Decl. Ex. 11.)  Mattel claims that

24  Judge Infante erred by not requiring the MGA Parties to identify documents by Bates

25  number in response to Interrogatory Nos. 27-38, 46-47 and 50.  (Motion 25:8-14.)

26  Mattel's argument confuses MGA's responses to Mattel's contention interrogatories

27  with the option permitted under Rule 33(d) to identify documents *in lieu of* providing

28  a response.

1     The cases cited by Mattel generally stand for the proposition that when a party

2   elects to respond to an interrogatory by directing the requesting party to appropriate

3   documents in lieu of a written response under Rule 33(d), the party must specify the

4   documents from which the answer may be derived with sufficient detail to permit the

5   requesting party to locate them.  *Miller v. Fed. Express Corp.*, 186 F.R.D. 376, 385

6   (W.D. Tenn. 1999) (responding party under 33(d) must specify documents from

7   which the answer may be derived with sufficient detail to permit the requesting party

8   to locate it); *Johnson*, 236 F.R.D. at 545 (a party answering an interrogatory by

9   referring another party to documents previously produced or disclosed must do so in

10   sufficient detail to permit the interrogating party to locate and identify, as readily as

11   can the party served, the records from which the answer may be ascertained); *VNA*

12   *Plus, Inc.*, 1999 WL 386949, at *5 (under Fed. R. Civ. P. 33(d), defendants must

13   identify in their answers to the interrogatories specifically which documents contain

14   the answer or completely answer the interrogatories without referring to the

15   documents).  These cases are simply inapplicable because the MGA Parties did not

16   respond to any of the interrogatories at issue by referring to documents under Rule

17   33(d). Rather, the MGA Parties made substantive responses which Judge Infante has

18   found adequate under Rule 33.

19     Mattel's reliance on Judge Infante's April 17, 2007, Order Granting Motion to

20   Compel Response to Interrogatory No. 1 (Motion at 24:6-13) is likewise misplaced

21   because that order addressed the adequacy of a response to an interrogatory with

22   reference to documents under Rule 33(d), holding that "[t]o comply with Rule 33(d),

23   Fed. R. Civ. P., MGA should, if possible, provide Bates numbers for the invoices."

24   (Proctor Decl., Ex. 22 at 6:18-19.)  MGA has not answered any of the interrogatories

25   at issue under Rule 33(d) and, therefore, compliance with Rule 33(d) is not at issue.

26   Moreover, even in the Rule 33(d) context, the Discovery Master held that

27   identification by Bates Number was required only "if possible."  *Id.*  Here, the

28   Discovery Master has ruled that any further responses to the interrogatories beyond

- 21 -

1   the categorical identification of the documents would be unduly burdensome in part

2   because it would require the review of more than 4 million pages of documents to

3   identify the potentially responsive documents.  (Feb. 15, 2008 Order at 8:18-25,

4   Proctor Decl. Ex. 11.)

5       Mattel's own case supports the MGA Parties' approach here.  In *Clean Earth*

6   *Remediation and Construction Services, Inc. v. American International Group, Inc.*,

7   245 F.R.D. 137 (S.D.N.Y. 2007), plaintiff responded to defendants' contention

8   interrogatories by identifying the witnesses and categories of documents that plaintiff

9   believed would be sources of relevant information.  (*Id.* at 140-41.)  The district

10  court found those responses sufficient, commenting that "plaintiff consistently

11  provided responsive and apparently *complete* information."  (*Id.* at 142) (emphasis

12  added).  Given that Mattel's own case supports Judge Infante's ruling, it cannot be

13  contrary to law.

14      The only non-Rule 33(d) case cited by MGA is *Ukiah Automotive Investments,*

15  *v. Mitsubishi Motors of North America, Inc.*, No. C-04-3932 MMC (MEJ), 2006 WL

16  1348562 (N.D. Cal. May 17, 2006), in which a magistrate judge ordered the plaintiff

17  to identify documents by bates number or file number in response to an interrogatory

18  seeking all documents supporting the plaintiff's claims of compensatory damages.

19  (*Id.* at *1) (Interrogatory 19).  *Ukiah Automotive* is distinguishable because the

20  interrogatory at issue there sought a far more narrow category of documents.  Here,

21  as Judge Infante found, Mattel's extremely broad defined terms combined with

22  interrogatories seeking the identification of all documents that "refer or relate" to the

23  contentions referenced in the interrogatories would require the MGA Parties to

24  review millions of pages of documents for potentially responsive documents.  (Feb.

25  15, 2008 Order at 8:17-27, Proctor Decl. Ex. 11.)  The magistrate judge's ruling as to

26  one of the interrogatories at issue in *Ukiah Automotive* does not render Judge

27  Infante's rulings with respect to the overly broad interrogatories propounded by

28  Mattel clearly erroneous or contrary to law.

1   Mattel's contention that it will be "sandbagged" absent more complete

2   responses ring hollow because, as the MGA Parties' counsel noted in oral argument

3   before Judge Infante, Mattel will receive a specific identification of the documents to

4   be relied upon by MGA at trial.  (Telephonic Tr. of Proceedings, Feb. 11, 2008 at

5   34:25-35:11, Proctor Decl. Ex. 10.)  The parties are obliged under the Federal Rules

6   of Civil Procedure to disclose before trial "an identification of each document or

7   other exhibit, including summaries of other evidence – separately by identifying

8   those items the party expects to offer and those it may offer if the need arises."  Fed.

9   R. Civ. P. 26(a)(3)(A)(iii).  Similarly, Local Rule 16-2.3 provides that "[t]he parties

10  shall disclose all exhibits to be used at trial other than those contemplated to be used

11  solely for impeachment . . . ."  Local Rule 16-2.3.  On March 11, 2008, in

12  accordance with those rules and based on the stipulation of the parties, this Court

13  entered its Order Regarding Pre-Trial Deadlines requiring, in part, an exchange of

14  exhibit lists by April 1, 2008.  (Miller Decl. Ex. B.)  Mattel's attempt to force the

15  MGA Parties to review over 4 million pages of documents in search of documents

16  that "refer or relate" to the facts set forth in their responses to Mattel's contention

17  interrogatories is not about legitimate trial preparation, but instead is a transparent

18  attempt to divert the MGA Parties' resources and attention away from preparation for

19  the upcoming Phase One trial.

20  **V.   ANY FURTHER OBLIGATION TO RESPOND TO PHASE TWO**
    **INTERROGATORIES HAS BEEN STAYED.**

21

22  On February 4, 2008, this Court issued a Minute Order staying Phase Two

23  Discovery until further order of the Court.  (Miller Decl. Ex. C, at 3 ¶ 4.)

24  Interrogatories 39, 41 (to the extent at issue here), and 48-50 relate solely to Phase

25  Two issues:

26  - Interrogatory 39:  Mattel argues that the information regarding the MGA

27    Parties' bank accounts may lead to direct evidence of liability regarding

28    Mattel's allegations of commercial bribery against MGA and Larian.

- 23 -

(Motion at 12:6-8.)  Mattel clearly asserts that these claims are "explicitly alleged as predicate acts for [its] RICO claims." (*Id.* at 12:7-8.)  Mattel's RICO claims will be tried in Phase Two.  (Miller Decl. Ex. D, Mattel's June 20, 2007 Memorandum Re: Trial Structures at 8.)

- Judge Infante found that the interview dates for individuals identified in the supplemental responses are potentially relevant to Mattel's claim that the MGA parties induced former Mattel employees to abscond with trade secrets.  (Feb. 15, 2008 Order at 11:2-3, Proctor Decl. Ex. 11).  Mattel's trade secret claims will be tried in Phase Two.  (Miller Decl. Ex. D at 8.)

- Interrogatories 48-50 are directed to MGA's trade dress claims against Mattel.  (Feb. 15, 2008 Order at 12:6-15, Proctor Decl. Ex. 11.)  MGA's trade dress claims will be tried in Phase Two.  (Miller Decl. Ex. D at 8.)  Mattel does not contest that Interrogatory Nos. 48-50 address Phase Two issues.   (Feb. 15, 2008 Order at 13:9-11, Proctor Decl. Ex. 11.)

Therefore, even if Mattel could show that Judge Infante's rulings with respect to these interrogatories were clearly erroneous or contrary to law, any obligation to provide further responses to the interrogatories would be stayed.

## VI.   **CONCLUSION**

For the foregoing reasons, the MGA Parties respectfully request that the Court deny Mattel's Objections to Portions of the Discovery Master's February 15, 2008 Order.

DATED:  March 17, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By:
    /s/ Raoul D. Kennedy

Attorneys for Counter-Defendants, MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, and MGAE de MEXICO S.R.L. de C.V.