QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
(timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]<br><br>**REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL ADDITIONAL DEPOSITION TESTIMONY AND PRODUCTION OF DOCUMENTS BY VERONICA MARLOW**<br><br>Date: TBA<br>Time: TBA<br>Place: Telephonic<br><br>**Phase 1**<br>Discovery Cut-off: January 28, 2008<br>Pre-trial Conference: April 21, 2008<br>Trial Date: May 27, 2008 |

07209/2394163.2

## Preliminary Statement

The Opposition concedes that Marlow is a "key" witness with knowledge of the origins, design and development of Bratz covering several years from before Bryant allegedly met with MGA and continuing through 2005. Mattel's inability to cover that entire time span and crucial subjects at the first session of her deposition was compounded by her surprise disclosure that Bryant was not the only Mattel employee who worked on Bratz for MGA. Marlow disclosed that she used three other Mattel employees to do so.

In an attempt to blunt her shocking revelations, the Opposition makes an irrelevant attack on Mattel's investigation of Marlow's use of Mattel employees, and then blames Mattel for having insufficient time to complete the deposition. Of course, Mattel had no way of knowing Marlow and the employees were using false names to secretly work on Bratz. Marlow and defendants had managed to conceal this evidence: first, by paying these employees in cash, and under false names and social security numbers, and second, by providing false answers to discovery concerning work done on Bratz by Mattel employees.

In sum, the breadth of Marlow's knowledge on key topics, along with defendants' foot dragging and hiding of evidence, prevented the completion of this deposition. Mattel respectfully submits that it should now be permitted to complete it without further delay, and with all relevant documents in hand.

## Argument

### I. THE OPPOSITION DOES NOT DISPUTE THAT MARLOW HAS ADDITIONAL KNOWLEDGE REGARDING THE DEVELOPMENT OF BRATZ PRODUCTS AND HER WORK WITH CARTER BRYANT

The Opposition concedes that Marlow is a "key witness." (Opp. at 4.) Although she is nominally a non-party, she is plainly an agent of MGA (and likely

Bryant) and had over 8,000 pages of responsive documents in her possession. This underscores the extent of her knowledge and role in this case.

To support Marlow's claims that Mattel has had sufficient time to examine her, the Opposition cites selected portions of deposition testimony which touch on various topics. (See Motion at 8-10.) But topics merely touched on are not topics completed. Marlow has *unique* knowledge on these subjects. She introduced Bryant to MGA,[1] for which she has received millions in alleged finder's fees.[2] She was one of the few persons to whom Bryant claims to have shown his Bratz works before presenting them to MGA.[3] She continued to work on Bratz for at least the next four years, through 2005.[4] The Opposition cites no specifics in the transcript regarding the work she did for Bratz throughout that lengthy period of time.[5] That topic simply could not be covered at the deposition in the time allotted.

Mattel also needs to examine Marlow on her additional knowledge regarding the timing of Anna Rhee's work on Bratz and Prayer Angels. (Motion at 10). The evidence MGA witnesses have given on that issue is conflicting, and Mattel has had no opportunity to discuss those discrepancies with Marlow. The Opposition can cite to nothing on that topic either.[6] Similarly, Marlow has additional information she has yet to disclose regarding the purported evolution of Bryant's drawings into the Bratz dolls. The Opposition cites only rudimentary information provided at the deposition regarding her work on Bratz packaging and

---

[1] Marlow Depo. Tr. at 106:11-14, 115:10-122:3, attached as Exhibit 9 to the Declaration of James J. Webster dated January 28, 2007 ("Webster Dec.").
[2] Marlow Depo. Tr. at 113:10-114:3, Webster Dec., Exh. 9.
[3] Bryant Depo. Tr. at 46:22-47:8, Webster Dec., Exh. 8.
[4] Marlow Depo. Tr. at 307:8-308:1, Webster Dec., Exh. 9.
[5] See Opp. at nn. 8-14, 20, 27, 38, 41, 53.
[6] Id. See also Marlow Depo. Tr. at 383:22-385:19 (discussing Anna Rhee's role, but not discussing conflicts between Marlow's testimony and that of Paula Garcia and Kerri Brode), Webster Dec., Exh. 9.

fashions. No information has been elicited regarding details as to, for example, the various fashions that are the subject of both MGA's and Mattel's claims,[7] the development of the Bratz packaging (on which MGA has based claims) beyond initial brainstorming,[8] or how the doll itself was finalized.[9] The Opposition cannot show that Mattel has had sufficient time to explore those subjects either because Mattel did not. (Cf. Opp. at 4).

## II. THE OPPOSITION DOES NOT DISPUTE THAT MARLOW HAS ADDITIONAL KNOWLEDGE REGARDING HER SECRET USE OF MATTEL EMPLOYEES TO CREATE BRATZ PRODUCTS

### A. Mattel Has Additional Questions To Address Concerning Marlow's Use of Mattel Employees Following Its Investigation

Marlow hired (at least) three Mattel employees to work on Bratz.[10] Mattel was not able to thoroughly depose Ms. Marlow on the topic. For example, Mattel never had the opportunity to ask specifics about what kind of work one of the employees, Maria Elena Salazar, did on Bratz. Nor has Mattel had an opportunity to examine Marlow on each of the Bratz products she had these Mattel employees develop.

---

[7] See Opp. at n. 12; Further excerpts of the deposition of Veronica Marlow, dated December 28, 2007 ("Add. Marlow Depo. Tr.") at 338:23-340:3, attached as Exhibit 1 to the concurrently filed declaration of Cyrus S. Naim ("Naim Dec.").

[8] See Opp. at n. 12; Add. Marlow Depo. Tr. at 334:12-335:20 (discussing brainstorming sessions regarding packaging, but not the results of those sessions), Naim Dec., Exh. 1.

[9] See Opp. at Opp. at n. 12; Add. Marlow Depo. Tr. at 236:12-238:7 (discussing early prototype of Bratz doll, but not how it was finalized), Naim Dec., Exh. 1.

[10] Marlow Depo. Tr. at 306:14-308:1, 363:15-365:17, Webster Dec., Exh. 9.

After the deposition, Mattel investigated Marlow's use of Mattel employees and uncovered additional information on which it should be allowed to depose her. Marlow secretly paid the Mattel employees in cash, under false names and fake social security numbers. None of that information could be addressed at the deposition, because neither defendants nor Marlow disclosed it (even at deposition). The Opposition offers no reason why Mattel should be prevented from examining her on that subject. Mattel submits that it is entitled to information regarding the manner in which the employees were compensated, who had knowledge of her fraudulent scheme, the reasons why these three Mattel employees were targeted, and the involvement of Bryant and MGA. Mattel will also seek to authenticate Cabrera's and Morales' time-sheets and receipts, many of which neither defendants nor Marlow have produced to this day.[11]

Finally, the Opposition does not address Mattel's need to defend against MGA's claims that Mattel copied MGA's dolls, fashions, themes and packaging. (Motion at 10.) As now made evident by Ms. Marlow's revelations, it turns out that Mattel employees have secretly worked (with Marlow and defendants) on many of the very Bratz dolls MGA accuses Mattel of copying. The admitted facts are that Marlow was directly involved in that secret work on <u>over 50 Bratz products</u>. MGA cannot prevail on its copying claims if Mattel has an ownership interest in those works because its employees created them. MGA's claims are also barred by its unclean hands. At the deposition, there was insufficient time to examine Marlow about each of these products. Marlow does not dispute that she is a unique source of this information.[12]

---

[11] Naim Dec., ¶ 7.
[12] Indeed, for its part, MGA has denied even knowing that Mattel employees were used, and thus proclaims that it is not an alternative source of information regarding the contribution of Mattel's employees to the dolls.

### B. Marlow's Argument That Mattel Had "Notice" Of Her Secret Scheme And Is Thus Barred From Further Examination Is Meritless

The Opposition argues that Mattel should not be granted additional deposition time because it should have known about these employees' disloyal activities before the deposition. (Opp. at 5.) This is assertedly so because Mattel employees' names appeared among thousands of pages of documents produced before the Marlow deposition.[13]

But the documents did not reveal the secret scheme, which was just that: <u>secret</u>. Shortly before the deposition Marlow did produce documents that, she has <u>since explained</u>, show her use of Mattel employees. But as originally (and belatedly) produced these appeared to be nothing more than employee records showing that particular dolls were worked on at particular times.[14] Mattel did not immediately make the connection because it had no reason to check random names against the names of thousands of current and former employees. Indeed, that is particularly so given that MGA and Bryant had stated <u>under oath</u> that no Mattel employees other than Bryant had worked on Bratz. Despite Court Orders compelling the information, defendants' answers to interrogatories that sought information about the identities of those who worked on Bratz and the dates on

---

[13] Marlow states, "It is undisputed that Ms. Marlow produced numerous documents that identified all of these individuals no later than November 21, 2007." (Opp. at 5.) There was no excuse for Marlow withholding these documents, which Mattel had literally been seeking for years, until some two months before the close of fact discovery other than to hinder Mattel's ability to ascertain their significance and take follow-up discovery on them.

[14] For that matter, Marlow's production of documents is still incomplete; Mattel looks forward to receiving documents that show the use of false names and social security numbers, and corresponding time sheets and receipts.

which they did so made no reference at all to Cabrera or Morales.[15] Salazar was mentioned in those responses, but defendants falsely swore she worked on Bratz only starting in 2003—well after she left Mattel.[16] Despite Court Orders compelling the information, MGA's Rule 30(b)(6) designee also identified no one as having done work for MGA while also employed by Mattel at any time since 1998.[17] Bryant for his part denied being aware of any other Mattel employee working for MGA while he or she was employed by Mattel.[18] Because of Marlow's and defendants' false and misleading responses and their failure to disclose the involvement of other Mattel employees, Mattel was aware that Bryant was the only Mattel employee to knowingly work on Bratz. Mattel should not now be penalized for failing to suspect that defendants had concealed evidence ordered to be disclosed. Nor should defendants or Marlow be rewarded for such improper behavior.

### C. Marlow's Claims Regarding Mattel's Investigation Are Both False And Irrelevant

Marlow attempts to distract from her own wrongful conduct by attacking Mattel's investigation undertaken after her deposition—an investigation that revealed that Marlow and defendants were still concealing yet more facts and evidence.[19] Marlow's complaints about the investigation itself are wholly irrelevant to whether she should appear for deposition.

---

[15] MGA's Supplemental Responses to Mattel's Revised Third Set of Interrogatories at 64-70, Webster Dec., Exh. 30.
[16] Id.
[17] Tonnu Depo. Tr. at 301:2-17, Webster Dec., Exh. 20.
[18] Bryant Depo. Tr. at 286:25-287:5, Webster Dec., Exh. 8.
[19] MGA has previously attacked Mattel for its investigation of the Mattel employees who secretly worked for Marlow and MGA. At the Court's request, (footnote continued)

07209/2394163.2

-6-
REPLY ISO MATTEL'S MOTION TO COMPEL MARLOW DEPOSITION

After learning about Marlow's use of Mattel employees, two Mattel representatives, one from Human Resources and another from Security, interviewed the two were still Mattel employees—Ms. Cabrera and Ms. Morales—to hear their side of the story. Ms. Cabrera and Ms. Morales admitted to having worked on more than *50* Bratz doll products while employed by Mattel.[20] Both admitted knowing this was wrong.[21] Both revealed that, with Marlow's help, they tried to hide their tracks by receiving cash payments under false names and false social security numbers.[22] Ms. Cabrera alone received in excess of $100,000 for her unlawful work on Bratz.[23] Mattel had no choice but to terminate their employment.

The Opposition nevertheless complains that Mattel conducted the interviews without an interpreter. (Opp. at 7.) Both employees worked for many years at Mattel in El Segundo—in Ms. Cabrera's case for over a decade—without the assistance of an interpreter. The Opposition complains that Mattel used misleading "interrogation tricks." But Mattel's agent did not lie when he stated that Marlow had testified that Cabrera began working on Bratz by 2001. Marlow herself testified that Cabrera began working on Bratz within days of Bryant's pitch to Isaac Larian. That was well before 2001.[24] Marlow blames Mattel for referring to

---

Mattel has responded to those attacks, and the Court has not sought any further information about them. Unperturbed, Marlow now uses the Opposition to attack Mattel for the same conduct.

[20] Naim Dec., ¶¶ 5-6.
[21] Transcript of the interview of Ana Cabrera, dated January 2, 2008 ("Cabrera Tr.") at 117:10-118:8, Naim Dec., Exh. 2; Transcript of the interview of Beatriz Morales, dated January 14, 2008 ("Morales Tr.") at 24:14-25:14, 27:11-17, Naim Dec., Exh. 3.
[22] Cabrera Tr. at 46:3-22, 118:3-19:23, Naim Dec., Exh. 2; Morales Tr. at 24:14-25:14, 27:11-17, 115:2-20, Naim Dec., Exh. 3.
[23] Naim Dec., ¶ 8.
[24] Marlow stated that Ms. Cabrera worked for her before she received the sculpt marked Exhibit 1231. Add. Marlow Depo. Tr. at 286:1-287:8, Naim Dec., Exh. 1.
(footnote continued)

Marlow's deposition in the investigation, claiming that was done so Ms. Cabrera would "change her story." There was nothing improper in confronting Ms. Cabrera with Marlow's conflicting version of events. Ms. Cabrera had initially claimed that she never knew she was working on Bratz; she only admitted the truth—that she *did* know—when told of Marlow's testimony to the contrary.[25]

The Opposition's focus on the investigation only highlights the importance of the additional testimony Mattel now seeks. It is shocking that Mattel employees in addition to Bryant were recruited by defendants and their agents to work on Bratz dolls while employed by Mattel, that they continued to do so into 2005—well after this lawsuit was commenced—and that defendants, Marlow and the employees sought to cover it up. MGA and Bryant's knowledge and participation in this misconduct, and its true scope, are all important topics for deposition.

### III. THIS MOTION WAS TIMELY

The Opposition argues that the discovery cut-off has passed, and that Mattel should therefore be barred from further deposition of Marlow. (Opp. at 20.) Mattel filed its motion to compel on the discovery cut-off date, January 28, 2008. As the Discovery Master has already held, discovery motions are considered timely if filed before the discovery cut-off. "The scheduling order issued by Judge Larson established January 28, 2008 as the discovery cut-off date. Although the order did not specify that January 28, 2008 was also the deadline for filing discovery motions, it is common practice among litigation counsel to use the discovery cut-off date as

---

She had earlier testified that she had received that sculpt only a few days after the meeting between Carter Bryant and Isaac Larian, which defendants have claimed occurred on September 1, 2001. Marlow Depo. Tr. at 206:18-24, 209:9-21, 275:19-276:3, Naim Dec., Exh. 1.

[25] Cabrera Tr. at 41:18-44:22, Naim Dec., Exh. 2

-8-
REPLY ISO MATTEL'S MOTION TO COMPEL MARLOW DEPOSITION

| | |
|---|---|
| 1 | the discovery motion cut-off date when the local rules do not specify otherwise."[26] |
| 2 | There is thus no basis for Marlow's suggestion that this motion was untimely. |

### IV. MARLOW HAS AGREED TO PRODUCE UNREDACTED AND LEGIBLE COPIES OF DOCUMENTS

A final issue raised in Mattel's motion was Marlow's failure to provide unredacted and legible copies of all responsive documents. Mattel is pleased to inform the Court that after meeting and conferring on this issue, Marlow has agreed to provide these documents to Mattel by the end of this week. Assuming that Mattel in fact receives them, the portion of Mattel's motion seeking the production of those documents will become moot. Of course, the late production still remains a basis for granting Mattel additional time to depose Marlow.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that its motion be granted in its entirety.

DATED: March 14, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
    Michael T. Zeller
    Attorneys for Mattel, Inc.

---

[26] Order Denying Mattel's Ex Parte Application to Strike Carter Bryant's Motion to Compel Responses to Discovery Requests; Setting Briefing Schedule, dated February 25, 2008, Naim Dec., Exh. 4.

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On March 14, 2008, I served true copies of the following document(s) described as **REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL ADDITIONAL DEPOSITION TESTIMONY AND PRODUCTION OF DOCUMENTS BY VERONICA MARLOW** on the parties in this action as follows:

Thomas J. Nolan, Esq.
**Skadden, Arps, Slate, Meagher & Flom LLP**
300 So. Grand Ave.
Suite 3400
Los Angeles CA 90071

Larry McFarland, Esq.
**Keats McFarland & Wilson LLP**
9720 Wilshire Boulevard, Penthouse Suite
Beverly Hills, CA 90212

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 14, 2008, at Los Angeles, California.

_____
NOW LEGAL -- Dave Quintana

07209/2169461.1

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On March 14, 2008, I served true copies of the following document(s) described as **REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL ADDITIONAL DEPOSITION TESTIMONY AND PRODUCTION OF DOCUMENTS BY VERONICA MARLOW** on the parties in this action as follows:

| | |
|---|---|
| John W. Keker | Mark E. Overland, Esq. |
| Michael H. Page | David E. Scheper, Esq. |
| Christa M. Anderson | Alexander H. Cote, Esq. |
| **Keker & Van Nest, LLP** | **Overland Borenstein Scheper & Kim, LLP** |
| 710 Sansome Street | 300 South Grand Avenue |
| San Francisco, CA 94111 | Suite 2750 |
| *Attorneys for CARTER BRYANT* | Los Angeles, CA 90071-3144 |
| | *Attorneys for Carlos Gustavo Machado* |

**BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 14, 2008, at Los Angeles, California.

Yalonda J. Dekle

07209/2359511.1