# EXHIBIT 24

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 25

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 26

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 27

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 28

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 29

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 30

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 31

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 32

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

———

TEL: (213) 687-5000

FAX: (213) 687-5600

www.skadden.com

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

February 18, 2008

**BY E-MAIL**

Daniel Warren, Esq.
Sutherland Asbil & Brennan LLP
999 Peachtree Street
Suite 2300
Atlanta, GA 30309

RE:   Bryant v. Mattel

Dear Dan:

As I mentioned in my voice mail to you, our client, MGA Entertainment, contemplates conducting forensic ink tests on certain entries in Ms. Prince's notary book. These tests would seek to replicate Mattel's testing of the same notary book, and, as such, would employ the same sampling methodology that Mattel's expert has used. That methodology was set forth in a letter to you from Mattel's counsel, dated December 25, 2007.

Per your request, I write to provide you with additional detail on the sampling methodology. MGA's expert would extract small, hypodermic-needle sized holes or "microplugs" of about 0.5 millimeters in diameter from certain handwritten portions of the log entries. The sampled log entries would include, but would not necessarily be limited to, Ms. Prince's 8/26/1999 log entry. To the extent possible, MGA's expert would seek to preserve a significant portion of the handwritten text to allow for future sampling.

If MGA elects to proceed with the sampling, it would first provide notice to you, Carter Bryant, and Mattel of (1) MGA's intent to conduct the sampling; (2) the identity and qualifications of MGA's expert; and (3) the sampling location. We would further provide you and all parties with the opportunity to

**EXHIBIT** _32_

**PAGE** _356_

Daniel Warren, Esq.
February 18, 2008
Page 2

observe the sampling at the expert's laboratory.  Once the sampling is completed, we would promptly return the notary book to your custody.

If this arrangement is agreeable to you, please send Ms. Prince's notary book to my attention at the above address.  As you may know, the deadline for providing expert rebuttal reports is fast approaching and time is of the essence.  We therefore ask that you please send Ms. Prince's notary book as soon as practicable, or, alternatively, that you notify us promptly of any objections you might have to the above arrangement.

Thanks very much for your assistance.

Sincerely,

Ryan Weinstein

Ryan Weinstein

cc:     Matthew M. Werdegar, Esq.
        Diane C. Hutnyan, Esq.

EXHIBIT _____ 32

PAGE _____ 357

# EXHIBIT 33

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S INTERNET ADDRESS
dianehutnyan@quinnemanuel.com

February 18, 2008

<u>VIA EMAIL</u>

Daniel Warren, Esq.
Sutherland Asbil & Brennan, LLP
999 Peachtree Street
Suite 2300
Atlanta, GA 30309

Re:   <u>Mattel v. Carter Bryant</u>

Dear Dan:

The arrangement outlined in Mr. Weinstein's letter of today is unacceptable to Mattel and we request that you do not release the notary book to MGA or Bryant or MGA's or Bryant's counsel absent a Court Order.

When Mattel received certain production documents in this case from Bryant, it noticed that microplugs appeared to have already been taken from them. Mattel's 2004 inspections of the originals showed that to be the case. Since then, although a Mr. Speckin produced a declaration saying he had handled "various" unidentified Bryant original documents, MGA has never unable to explain or account for all of the microplugs that were taken, and in particular has never explained or accounted for any of the microplugs that were taken from certain documents that Ms. Prince testified she had notarized for Mr. Bryant. This is the case even despite MGA having been ordered to provide a Rule 30(b)(6) witness to testify as to the handling and testing of all such documents. Mr. Bryant has been similarly unwilling or unable to provide any information about those microplugs and what caused them.

The Court has been understandably quite concerned with this earlier incident of tampering by MGA and its expert(s), and (upon MGA's and Bryant's insistence) required a showing as to our experts' qualifications and methods of preserving evidence before even letting them examine the

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711
FAX +81 3 5561-1712

07209/2392406.1

EXHIBIT _____ 33

PAGE _____ 358

Dan Warren, Esq.
February 18, 2008

documents non-destructively, much less letting them put microplugs in them. We worked with the other parties to come up with a specific protocol for the testing we did, that included attendance by their own consultant, and all that was approved by our Judge. Here, Mattel objects to your or your client's turning over the original notary book or any originals to MGA or Bryant (or their counsel or experts), given their history of tampering and given that there is neither any approval from the Court nor any agreement by us. Please be advised that should you or your client nevertheless turn over the notary book or any originals to MGA or Bryant (or their counsel or experts), we would consider such an action to constitute improper spoliation and will seek relief from the Court as such. We expect that you and your client will not provide the notary book or any other originals absent the Court's Order directing it or pursuant to a written agreement among the parties.

Please be so kind as to confirm that your office will maintain and preserve the notary book in its current condition and location until entry of a Court Order releasing it or written agreement among all of the parties.

Sincerely,


/s/

Diane C. Hutnyan


cc:     Ryan Weinstein, Esq.
        Matthew Werdegar, Esq.


07209/2392406.1                                    2

EXHIBIT _____ 33

PAGE _____ 359

# EXHIBIT 34

**Diane Hutnyan**

| | |
|---|---|
| **From:** | Andrea Hoeven |
| **Sent:** | Thursday, February 21, 2008 11:24 AM |
| **To:** | 'Ryan Weinstein (ryan.weinstein@skadden.com)'; 'djwarren@sablaw.com' |
| **Cc:** | 'Matthew Werdegar'; Diane Hutnyan; Michael T Zeller |
| **Subject:** | Bryant v. Mattel |

**Attachments:** 2395632_February 21, 2008 Letter from Diane Hutnyan.PDF

Counsel,

Please see attached correspondence, also to follow via facsimile.

Andrea Hoeven
Assistant to Diane Hutnyan, Bridget Hauler and Jerry Chow
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct Phone: (213) 443-3316
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
Email: AndreaHoeven@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT ___ 3 4 ___

PAGE ___ 360 ___

3/17/2008

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000  FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3666**

WRITER'S INTERNET ADDRESS
**dianehutnyan@quinnemanuel.com**

February 21, 2008

<u>VIA E-MAIL AND FACSIMILE</u>

Ryan Weinstein, Esq.  
Skadden, Arps, Slate, Meagher & Flom LLP  
300 South Grand Avenue  
Suite 3400  
Los Angeles, CA  90071

Daniel J. Warren, Esq.  
Sutherland Asbill & Brennan, LLP  
999 Peachtree Street  
Suite 2300  
Atlanta, GA 30309

Re:   <u>Bryant v. Mattel:  Ms. Prince's Notary Book</u>

Dear Counsel:

As I have explained previously, there is no basis for Mr. Warren's unilaterally sending the
original notary book to MGA's counsel on Monday or at any time absent an agreement of the
parties or the approval of the Court.  As you know, the Court retains the authority and discretion
to determine what testing will be allowed, how it will be done, and by whom.  Indeed, these are
positions that Bryant and MGA argued to the Court, and the Court agreed.  To release custody of
the original notary book to MGA in advance of any such testing being approved -- indeed,
without MGA even proposing a protocol, or identifying its expert and his credentials -- can only
be designed to allow MGA to engage in further spoliation without scrutiny by the Court or
Mattel.  To this day, despite Court Orders compelling MGA to do so, MGA and Bryant still have
not accounted for their spoliation of original Bryant drawings.  You should also be aware that
Mr. Warren's sending and your receipt of the original notebook without the parties' consent or
approval by the Court will constitute violations of California statutes governing the handling of
notary books by MGA, Ms. Prince and their counsel.

If MGA had any legitimate testing to do, it would have spent its time discussing the protocol and
appropriate information about its expert with us rather than trying to induce Mr. Warren to

EXHIBIT _____ 34

**quinn emanuel urquhart oliver & hedges, llp**

PAGE _____ 361

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY  10010  | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA  94111  | TEL (415) 875-6600  FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA  94065  | TEL (650) 801-5000  FAX (650) 801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711  FAX +81 3 5561-1712

Ryan Weinstein and Daniel Warren
February 21, 2008

proceed with improper conduct on the sole, purported basis of discovery deadlines. Of course, the discovery deadlines do nothing to excuse that misconduct. MGA had every opportunity to get Court approval for testing throughout this case, but did not seek it. MGA and Bryant literally have had years to inspect the notary books and conduct any testing in accordance with proper procedures. Indeed, as is well documented and as you are aware, MGA and Bryant unlawfully had taken possession of the original notary book prior to Ms. Prince's deposition. In any event, if after its review of the protocol and the expert and if the Court concludes that MGA's testing by such expert is appropriate, the Court can provide a reasonable timeframe for MGA to accomplish it based on the circumstances presented to the Court and in light of the Court's deadlines.

If the original notary book is placed in the custody of MGA, Bryant or their counsel absent a Court Order (or agreement of the parties), we view this as a serious threat to the integrity of the evidence. We will seek preclusion and sanctions orders against MGA and Bryant for that misconduct, including but limited to orders precluding MGA and Bryant from being allowed to refute, contradict, deny or comment on Mattel's expert's analysis and orders deeming such analysis to be conclusive. We will also seek sanctions against Ms. Prince and her counsel for their participation in this misconduct.

If MGA and/or Bryant proceed on their planned course, please consider this a request to counsel for MGA, Bryant and Ms. Prince to meet and confer under the Local Rules in advance of such a motion.

Very truly yours,

Diane C. Hutnyan

DH:dh

cc:     Matthew Werdegar, Esq.

2

EXHIBIT ___34___

PAGE ___362___

# EXHIBIT 36

# Diane Hutnyan

| | |
|---|---|
| **From:** | Diane Hutnyan |
| **Sent:** | Friday, February 22, 2008 4:10 PM |
| **To:** | 'Warren, Daniel J.'; 'Lopez, Alejandra' |
| **Cc:** | 'mwerdegar@kvn.com'; 'Weinstein, Ryan (LAC)'; Michael T Zeller |

**Subject:** RE: Bryant v. Mattel

Dan,

No, I'm afraid it does not.

We are certainly willing to work with MGA when there is something to work out.  But we believe MGA's record of tampering in this case is more than enough reason for it not to have this original third-party evidence outside of the parties' agreement or the Court's specific approval.  We further believe that if MGA's ultimate plan is legitimate, it should simply pursue an appropriate agreement and/or a Court order governing its actions, the way that Mattel did.  It is well developed in the case law that destructive testing is supposed to be done with the agreement of the parties and/or the approval of the Court.

MGA has made no move to do any of this.  When it develops a protocol, we will be happy to consider it and work something out with MGA that is appropriate.  And if we cannot work it out, MGA still has the right to try to convince the Court of its position.

We expect you to maintain the notary book in its current condition until the parties can agree or the Court orders it.

Thank you.

---

**From:** Warren, Daniel J. [mailto:Daniel.Warren@sablaw.com]
**Sent:** Friday, February 22, 2008 2:32 PM
**To:** Lopez, Alejandra
**Cc:** Diane Hutnyan; mwerdegar@kvn.com; Weinstein, Ryan (LAC)
**Subject:** RE: Bryant v. Mattel

Dear Ms. Hutnyan, Does this resolve your concerns?  If not, I would ask both of you to work this out.  Thank you. Dan Warren

---

**From:** Lopez, Alejandra [mailto:Alejandra.Lopez@skadden.com]
**Sent:** Friday, February 22, 2008 1:28 PM
**To:** Warren, Daniel J.
**Cc:** dianehutnyan@quinnemanuel.com; mwerdegar@kvn.com; Weinstein, Ryan (LAC)
**Subject:** Bryant v. Mattel

Dear Counsel, please see attached correspondence from Ryan Weinstein.

**Alejandra Lopez**
**Legal Secretary**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**300 South Grand Avenue | Los Angeles | California | 90071-3144**
**T: 213.687.5604 | F: 213.687.5600**
**alejandra.lopez@skadden.com**

Skadden

please consider the environment before printing this email

EXHIBIT _____36_____

PAGE _____363_____

3/10/2008

---

********************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. **********************************************

CIRCULAR 230 DISCLOSURE:   To comply with Treasury
Department regulations, we inform you that, unless
otherwise expressly indicated, any tax advice contained in
this communication (including any attachments) is not
intended or written to be used, and cannot be used, for the
purpose of (i)avoiding penalties that may be imposed under
the Internal Revenue Code or any other applicable tax law,
or (ii) promoting, marketing or recommending to another
party any transaction, arrangement, or other matter.

The information contained in this message from Sutherland
Asbill & Brennan LLP and any attachments are confidential
and intended only for the named recipient(s). If you have
received this message in error, you are prohibited from
copying, distributing or using the information. Please
contact the sender immediately by return email and delete
the original message.

EXHIBIT _____36_____

PAGE _____369_____

3/10/2008

# EXHIBIT 37

## Diane Hutnyan

| | |
|---|---|
| From: | Weinstein, Ryan [Ryan.Weinstein@skadden.com] |
| Sent: | Wednesday, February 27, 2008 11:00 AM |
| To: | Diane Hutnyan |
| Cc: | Sloan, Matthew E (LAC) |
| Subject: | Stipulation re Testing of Prince's Log Book |

**Attachments:** lac1-495716-3.doc

Diane,

Per your request, please find our proposed stipulation attached.

As we would like to finalize this tomorrow, please provide us with your comments as soon as possible.

Thanks,
Ryan

Ryan Weinstein
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Los Angeles, CA 90071
Phone: (213) 687-5526
Fax: (213) 621-5526
E-mail: ryan.weinstein@skadden.com

------------------------------------------------------------------------
*************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. ***************************************************
*************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. ***************************************************

EXHIBIT ____37____

PAGE ____365____

3/10/2008

1 | THOMAS J. NOLAN (Bar No. 66992)
  | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 | 300 South Grand Avenue
  | Los Angeles, CA 90071-3144
3 | Telephone: (213) 687-5000
  | Facsimile: (213) 687-5600
4 | E-mail: tnolan@skadden.com

5 | KENNETH A. PLEVAN
  | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 | Four Times Square
  | New York, New York, 10036-6522
7 | Telephone: (212) 735-3000
  | Facsimile: (212) 735-2000
8 | Email: kplevan@skadden.com

9 | Attorneys for Counter-Defendants
  | MGA ENTERTAINMENT, INC., ISAAC LARIAN,
10 | MGA ENTERTAINMENT (HK) LIMITED, and
  | MGAE de MEXICO S.R.L. de C.V.

11

12 | **UNITED STATES DISTRICT COURT**

13 | **CENTRAL DISTRICT OF CALIFORNIA**

14 | **EASTERN DIVISION**

15

16 | CARTER BRYANT, an individual,

17 |             Plaintiff,

18 | v.

19 | MATTEL, INC., a Delaware
   | corporation,

20 |             Defendant.

21

22 | Consolidated with MATTEL, INC. v.
23 | BRYANT and MGA
   | ENTERTAINMENT, INC. v.
24 | MATTEL, INC.

| ) | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| ) | Consolidated with: |
| ) | Case No. CV 04-9059 |
| ) | Case No. CV 05-2727 |
| ) | **DISCOVERY MATTER** |
| ) | Hon. Edward A. Infante (Ret.) |
| ) | Discovery Master |
| ) | **STIPULATION RE MGA'S PROPOSED TESTING OF JACQUELINE PRINCE'S NOTARY BOOK; [PROPOSED] ORDER** |

**Phase 1**

| Discovery Cut-Off: | Jan. 28, 2008 |
|---|---|
| Expert Rebuttal Reports Due: | March 17, 2008 |
| Expert Discovery Cut-Off: | March 31, 2008 |
| Pre-Trial Conference: | May 5, 2008 |
| Trial Date: | May 27, 2008 |

25

26 | EXHIBIT ___37___

27

28 | PAGE ___366___

---

STIPULATION RE MGA'S PROPOSED TESTING OF PRINCE'S NOTARY LOG BOOK AND [PROPOSED] ORDER
495716.03-Los Angeles Server 1A                              MSW - Draft February 27, 2008 - 10:23 AM

1

## STIPULATION

2      This Stipulation is entered into by and between Mattel, Inc. ("Mattel") on the

3  one hand, and MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK)

4  Limited, and MGAE de Mexico S.R.L. de C.V. (collectively referred to herein as

5  "MGA"), on the other hand, with reference to the following:

6      WHEREAS, Jacqueline Prince, a notary public, made notations in a log book

7  entitled "Official Journal of Notarial Acts" (the "log book") which relate to the date

8  on which certain of plaintiff and counter-defendant Carter Bryant's ("Bryant")

9  drawings were created;

10      WHEREAS, on page 11 of the notary book, there is an entry, dated 8/26/99,

11  which identifies 6 sketches of dolls made by Bryant;

12      WHEREAS, the same entry includes the notation "From 1998 Missouri";

13      WHEREAS, on or about December 25, 2007, counsel for Mattel sent a letter

14  to Daniel J. Warren, counsel for Ms. Prince, requesting production of the notary

15  book for purposes of conducting a forensic analysis on the ink used on the above-

16  referenced entry;

17      WHEREAS, in response, Mr. Warren produced said log book to Mattel, and

18  MGA did not object;

19      WHEREAS, on January 4, 2008, Mattel's expert, Valery N. Aginsky,

20  extracted 17 sets of hypodermic needle-sized samples or "microplugs" from written

21  lines appearing on pages 11 and 12 of the notary book and two sets of blank paper

22  "microplug" samples from page 11 of the notary book;

23      WHEREAS, Mr. Aginsky subsequently subjected the "microplug" samples to

24  various chemical analyses, including chromatography, thin-layer chromatography

25  ("TLC"), and gas chromatography-mass spectrometry ("GC-MS");

26      WHEREAS, on January 31, 2008, Mr. Aginsky returned Ms. Prince's log

27  book to Mr. Warren;

28

EXHIBIT _____ 37

PAGE _____ 367

-1-

1  WHEREAS, on February 11, 2008, Mattel transmitted to MGA a copy of Mr.

2 Aginsky's expert report, wherein Mr. Aginsky set forth the results of ink tests that he

3 performed on samples extracted from the notary book;

4  WHEREAS, on the basis of his tests, Mr. Aginsky concluded that the notation

5 "From 1998 Missouri" on page 11 of the notary book was written in different ink

6 than the remainder of the 8/26/99 entry;

7  WHEREAS, MGA now seeks to test the accuracy of Mr. Aginsky's findings

8 by having its own expert replicate Mr. Aginsky's ink testing;

9  WHEREAS, the current deadline for submitting expert rebuttal reports is

10 March 17, 2008;

11  THEREFORE, the undersigned parties, through their undersigned counsel,

12 stipulate and agree as follows:

13  1. MGA will be allowed to take samples and conduct testing on the notary

14 book to test the accuracy of Mr. Aginsky's findings, pursuant to the following

15 protocol.

16  2. MGA's testing of Ms. Prince's log book will be limited to analysis of

17 "microplug" samples extracted from pages 11 and 12 of the notary book.

18  3. MGA's expert (or experts) will remove no more than 17 sets of

19 "microplug" samples from the written portions of the entries on pages 11 and 12 of

20 the notary book, and no more than two sets of blank paper "microplug" samples from

21 the areas of pages 11 and 12 which do not contain writing. (Although this

22 Stipulation refers to MGA's "expert," MGA reserves the right to employ more than

23 one expert for the proposed sampling and testing of the notary book).

24  4. MGA's expert will extract all "microplug" samples using a hypodermic-

25 needle-sized hole punch, which removes holes of less than one millimeter in

26 diameter.

27  5. Before subjecting the samples to ink analysis, MGA's expert will

28 maintain the samples at his or her laboratory in normal environmental conditions.

-2-

EXHIBIT _____ 37

PAGE _____ 368

6.    All sampling and testing will occur at the laboratory of MGA's expert.

7.    Before Mr. Warren sends the notary book to MGA's expert, MGA will send a letter to Mattel's counsel by facsimile (and U.S. Mail) setting forth: (a) the name of MGA's expert (or experts) who will conduct the sampling; (b) the expert's curriculum vitae; (c) the location of the expert's laboratory; and (d) samples of "microplugs" similar to those that would be extracted from the notary book.

8.    Mattel will have three days from its receipt of the above-referenced letter by facsimile to object to the contemplated testing. During this three-day period, Mr. Warren will maintain custody of the notary book, and no testing will be performed. If Mattel raises no objection, then Mr. Warren will be directed to transmit the notary book to MGA's expert and MGA's expert will be authorized to conduct testing pursuant to the protocol set forth herein.

9.    In the event Mattel objects to the proposed testing, Mattel's counsel must notify MGA by letter and/or a telephone call within the 3-day period set forth above. The parties must then meet and confer and, within two more Court days, file a joint statement to Judge Infante seeking resolution of the dispute.

10.    Mattel may elect to have its own expert attend the extraction of "microplug" samples provided that (1) Mattel makes the election in writing within the three-day objection period; (2) Mattel provides counsel for MGA with the credentials of any observing expert; and (3) the testing can take place within ten (10) calendar days of the execution of this Stipulation. At this time, MGA's expert is available to conduct the sampling on March 10, 11, or 12, 2008.

11.    If Mattel's expert raises any issues about the sampling being performed while he or she is observing the sampling, the parties will seek immediate resolution from the Court so that the sampling will not be delayed. If Mattel's counsel does not object or seek attendance by its expert within the three-day objection period, the proposed destructive testing shall be deemed unobjectionable and may be carried out by MGA's expert without further delay.

EXHIBIT ____ 37

PAGE ___ 36 9

1      12.    With the exception of alterations resulting from any destructive testing,

2 which would be conducted in accordance with the protocol set forth above, the

3 notary book will be returned promptly to Mr. Warren in the same condition it was

4 received.

5      13.    The parties agree that, should Mattel raise any objections to the

6 proposed sampling, testing, or credentials of Mattel's expert, or to any other aspects

7 of the testing process, MGA will be granted an extension of time within which to

8 submit a rebuttal report in response to Mr. Aginsky's initial expert report.

9 Specifically, in the event that Mattel objects to MGA's proposed expert sampling,

10 the current March 17, 2008 deadline for submitting MGA's rebuttal expert report

11 will be extended by one calendar day for each day from the date Mattel raises its

12 objection to the date upon which any such objection is resolved by Judge Infante or

13 by the agreement of the parties.

14      IT IS SO STIPULATED.

15 DATED: February __, 2008    SKADDEN, ARPS, SLATE, MEAGHER

16                    & FLOM, LLP

17

18                    By: _____

19                       Matthew E. Sloan
                        Attorneys for Counter-Defendants

20                       MGA ENTERTAINMENT, INC., ISAAC LARIAN,
                       MGA ENTERTAINMENT (HK) LIMITED, and

21                       MGAE de MEXICO S.R.L. de C.V.

22 DATED: February __, 2008    QUINN EMANUEL URQUHART OLIVER

23                    & HEDGES, LLP

24

25                    By: _____

26                       Diane C. Hutnyan
                        Attorneys for Mattel, Inc.

27

28                       EXHIBIT _____ 37

                 -4-     PAGE _____ 370

1
2
3                           **ORDER**
4            The Court, having reviewed MGA and Mattel's Stipulation Re MGA's
5    Proposed Testing Of Jacqueline Prince's Notary Book (the "Stipulation") and for
6
7    good cause shown, hereby approves the procedure for MGA's proposed expert
8    testing of the notary book set forth in the Stipulation.
9
10           IT IS SO ORDERED.
11
12   DATED: _____
13                                        _____
                                          Hon. Edward A. Infante (Ret.)
                                          Discovery Master
14
15
16
17
18
19
20
21
22
23
24
25
26
27                                        EXHIBIT _____ 37
28
                                          PAGE _____ 371
                              -5-

# EXHIBIT 38

## Diane Hutnyan

| | |
|---|---|
| **From:** | Diane Hutnyan |
| **Sent:** | Thursday, February 28, 2008 4:03 PM |
| **To:** | 'Sloan, Matthew E' |
| **Cc:** | 'Weinstein, Ryan (LAC)'; Michael T Zeller; Chris Grohman |
| **Subject:** | RE: Stipulation re Testing of Prince's Log Book |

Hi, Matt,

We are working on it.

One thing that troubles us a lot, frankly, is MGA's continuing refusal to identify the expert (actually, now expertS). MGA has no Court-approved experts, as we did. And the stip suggests that you know already who the candidates are, but do not want to share that information with us now, but then prefer to disclose it at a point later when Mattel has a very narrow window in which to resolve and/or brief the issue. That is clearly unfair. MGA should disclose that person or persons to us know so that we can assess the situation fairly.

We are reviewing and preparing comments on the rest of the stipulation, but if you could rethink your decision to conceal this information, that would probably move things along significantly.

Diane

---

**From:** Sloan, Matthew E [mailto:Matthew.Sloan@skadden.com]
**Sent:** Thursday, February 28, 2008 3:21 PM
**To:** Diane Hutnyan
**Cc:** Weinstein, Ryan (LAC)
**Subject:** FW: Stipulation re Testing of Prince's Log Book

Diane – Per Ryan's email from yesterday, please give us your comments on the attached stipulation as soon as possible. We would like to submit this to Judge Infante tomorrow given the quickly approaching deadline for submitting our expert rebuttal report(s).

Thank you for your prompt consideration of the stipulation.

-- Matt

**Matthew E. Sloan**
**Skadden, Arps, Slate, Meagher & Flom LLP**

**Los Angeles Office**
*300 South Grand Ave., Suite 3400*
*Los Angeles, CA 90071*
*T: (213) 687-5276 | F: (213) 687-5600*
*Main: (213) 687-5000*
*E: matthew.sloan@skadden.com*

EXHIBIT _____38_____

PAGE _____372_____

3/17/2008

Page 2 of 2

**From:** Weinstein, Ryan (LAC)
**Sent:** Wednesday, February 27, 2008 11:00 AM
**To:** 'Diane Hutnyan'
**Cc:** Sloan, Matthew E (LAC)
**Subject:** Stipulation re Testing of Prince's Log Book

Diane,

Per your request, please find our proposed stipulation attached.

As we would like to finalize this tomorrow, please provide us with your comments as soon as possible.

Thanks,
Ryan

Ryan Weinstein
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Los Angeles, CA 90071
Phone: (213) 687-5526
Fax: (213) 621-5526
E-mail: ryan.weinstein@skadden.com

--------------------------------------------------------------------------------
************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. **************************************************
************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. **************************************************

**EXHIBIT** _38_

**PAGE** _373_

# EXHIBIT 39

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

———

TEL: (213) 687-5000

FAX: (213) 687-5600

www.skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
213-687-5526
DIRECT FAX
213-621-5526
EMAIL ADDRESS
RYAN.WEINSTEIN@SKADDEN.COM

February 28, 2008

**BY E-MAIL**

Diane C. Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

> RE:   Bryant v. Mattel:  Stipulation Re Proposed Testing of
> Prince's Log Book

Dear Diane:

I write in response to your e-mail of today in which you indicate that it would expedite Mattel's likely approval of MGA's proposed stipulation re the testing of Ms. Prince's notary log book if MGA provided you with the name of the expert who would be performing the testing and extracting of "microplug" samples from the notary book.

Per your request, and in the interests of expediting agreement on a testing protocol, I enclose herewith a copy of the curriculum vitae of Albert H. Lyter III.  MGA intends to have Mr. Lyter extract the "microplug" samples described in the stipulation we have submitted for your review.

EXHIBIT ___3 9___

PAGE ___374___

Diane C. Hutnyan, Esq.
February 28, 2008
Page 2


      Please call me if you should have any questions about the above.  I trust that this will obviate any concerns you may have and that you will get back to us soon with any comments on the proposed stipulation.


                Very truly yours,

                Ryan H. Weinstein


Enclosures


EXHIBIT ___3 9___

PAGE ___375___

# Federal Forensic Associates, Inc.

<u>Back to main site page</u>

# *Albert H. Lyter, III*

**Education:**

- B.S. Chemistry, Oklahoma City University, 1973
- B.S. Biology, Oklahoma City University, 1973
- M.S. Forensic Science, George Washington University, 1975
- Ph.D. Analytical Chemistry, University of North Carolina-Chapel Hill, 1999

**Training:**

- Fiber Microscopy, Institute of Paper Chemistry, 1975
- X-ray Spectrometry, State University of New York, 1976
- Questioned Documents, United States Secret Service, 1977
- High Pressure Liquid Chromatography, Waters Associates, 1978
- High Pressure Liquid Chromatography, American Chemical Society, 1978
- Forensic Microscopy, McCrone Research Institute, 1978
- Surface Analysis Techniques, Physical Electronics, 1992
- Identification of Photocopiers, New Mexico State Police, 1983
- Canon Facsimile Workshop, <u>American Society of Questioned Document Examiners,</u> 1991

**Experience:**

- September 1981 to present

  President and Chief Scientific Officer of Federal Forensic Associates, Inc.
  Engaged in consultation, examination, training, research and testimony in Forensic Science, including ink and paper analysis, trace evidence and questioned document examination.
  Qualified trace evidence areas include fire debris, explosives, paint, hair, fiber, glass and wood.

- January 1975 to September 1981

  Forensic Chemist, U.S. Treasury Department, Bureau of Alcohol, Tobacco and Firearms, National Laboratory Center, Rockville, Maryland.
  Engaged in consultation, examination, training, research and testimony as service to federal and state law enforcement.
  Court qualified in federal, state and military courts in over 33 states, U.S. Virgin Islands, Australia, Canada, Mexico, Malaysia and Singapore.
  Instructor at the FBI Academy, Federal Law Enforcement Training Center, Naval Investigative Service, Florida Department of Law Enforcement, colleges and universities.
  Lecturer at numerous scientific and legal organization meetings to include the American Academy of Forensic Sciences, American Society of Questioned Documents Examiners, California Association of Criminalists, International Association of Forensic Scientists.

**Professional Organizations:**

- 
  <u>Fellow, American Academy of Forensic Sciences</u>
- Mid-Atlantic Association of Forensic Scientists

EXHIBIT __39__

PAGE __376__

- Examination committee member to the American Board of Criminalistics.
-
  California Association of Criminalists
- Society of Forensic Ink Analysts
  - President
- Southwestern Association of Forensic Document Examiners
- International Association of Forensic Sciences
-
  American Society For Testing and Materials
- American Chemical Society

## Publications:

- Comparison of Paper Samples - IAI News, 1976
- Comparison of Typewriter Ribbon Inks by Thin Layer Chromatography - Journal of Forensic Science, 1977
- A Scientific Study of Pencil Lead - Journal of Forensic Science, 1978
- Analysis of Water Soluble Paper - Journal of Forensic Science, 1980
- Comparison of Typewritten Carbon Impressions - Journal of Forensic Science, 1982
- Examination of Ball Pen Ink by High Pressure Liquid Chromatography - Journal of Forensic Science, 1982
- Ink Analysis, A Key Element in Questioned Document Examination - Trial, 1983
- A High Performance Liquid Chromatographic (HPLC) Study of Seven Common Explosive Materials - Journal of Forensic Science, 1983
- Finding Fraudulent Documents - Family Advocate, 1989
- Attempted Determination of Authorship by Ball Pen Line Characteristics - Forensic Science International, 1990
- Analysis of Writing Ink - chapter in book HPLC in Forensic Science, 1982
- Contributions to the book Forensic Ink and Paper Examination by Brunelle and Reed, 1982
- Ph.D. Dissertation - Surface Characterization of Polymeric Materials by X-ray Photoelectron Spectroscopy and Time-of-Flight Secondary Ion Mass Spectrometry: Biomedical Materials and Forensic Applications

## Honors:

- Honorary Assistant Attorney General, State of Alabama
- Treasury Award for Outstanding Performance
- Honorary Member - Southwestern Association of Forensic Document Examiners

## Certification:

- Diplomat of the American Board of Criminalistics

## Cases of Note:

- Mormon Will of the late Howard R. Hughes
- Slander trial of CBS, Sixty Minutes and Dan Rather
- Nazi war crimes case of Ivan Demjanjuk

Contact Federal Forensic Associates FFA@InkDating.com

Back to main site page

EXHIBIT _____ 39

PAGE _____ 377

# EXHIBIT 40

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3666

WRITER'S INTERNET ADDRESS
dianehutnyan@quinnemanuel.com

March 3, 2008

VIA EMAIL AND FACSIMILE

Ryan Weinstein, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Los Angeles, CA 90071

Re:    Carter Bryant v. Mattel

Dear Ryan:

We have reviewed the proposal you sent and found that there are a number of issues with the proposal you sent that still need to be resolved.

The proposed stipulation appears to contemplate the idea of a future potential protocol, rather than contain an actual protocol, for the delivery, handling and sampling of the materials. You seem to have obtained the idea from paragraph 6 of Judge Infante's August 30, 2007 Order. Paragraph 6 contemplated the development of a future protocol for the potential destructive testing that we didn't even know would be needed at that time. That is not the case here. Here, you already know what destructive testing you expect to do. So the stipulation should be more consistent with paragraphs 3, 4, 5, and 7 of that Order in terms of outlining what will be, or will not be, done with the documents.

Another issue is that the stipulation does not reflect any plan to obtain the Court's approval of Mr. Lyter and his credentials. As is set forth in the transcript of the hearing last summer on Mattel's contemplated non-destructive testing, Judge Infante required that specific information be submitted with respect to the experts that Mattel was going to use for non-destructive testing. That information was submitted in camera at the time because the only testing contemplated was all non-destructive, and thus such information was privileged in nature. But since you are

EXHIBIT ___4 0_____

PAGE _378_____

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

Ryan Weinstein
March 3, 2008

planning destructive testing with our expert present, the submission that we made for each of our experts, along the lines of what was set forth in the transcript, should be made both to us (with an opportunity for us to object) and then should be made to the Court for approval.

As I have explained to you previously at length, we are quite concerned about having the notary book in anyone's hands or possession but the (by then Court-approved) expert in the presence of our expert. So the protocol for delivery and handling of the notary book should be designed to prevent access by anyone besides those two people. And the notary book should not be handled by either expert outside the presence of the other.

We are also concerned about the custody of the notary book generally. The delivery plan should be specific in setting forth the exact method of delivery, time of delivery, location of delivery, and return date, and be done in a way that all parties can track the package. What are the specific conditions the book will be stored in, if at all, while it is at Mr. Lyter's lab?

While we will insist upon our expert, Dr. Aginsky, attending, we do not want him to have to take time out of his schedule waiting around. So all of the samples must be taken in one day. Bryant and MGA afforded Mattel four days to find and punch samples from within eight boxes of original documents, so one day is certainly more than enough to take the microplugs in question from the two pages you have contemplated.

The number of microplugs in the proposed stipulation also seems open-ended. A "set" should be limited to some reasonably small number that is agreed upon in advance.

We view the "Whereas" section of the stipulation as unnecessary and improper argument. Whether Mattel did destructive testing on the document does not give MGA a right to do any destructive testing it wants; MGA must show the appropriateness of the destructive testing it plans to do, independent of what Mattel obtained Court approval to do and did. Please remove this section.

In paragraph 13, MGA appears to request an extension of time to file its rebuttal reports if Mattel's expert raises any objections to the procedures he is observing. Mattel might be willing to toll the time that Mr. Lyter has with the book, but it should have no bearing on the rebuttal report deadline. Further, as to any objections made prior to the sampling, those should all be resolved through agreement or by Judge Infante before Mr. Lyter even takes possession of the notary book.

The stipulation also must include a provision whereby Mattel would be guaranteed additional access to the notary book and the right to take further samples after MGA has served its rebuttal reports and/or after Mr. Lyter has been deposed. Also, thus, the stipulation should be expressly approved by Mr. Warren and the other parties to the case so that no one can later object to try to

2

EXHIBIT ___4___ 0

PAGE ___374___

Ryan Weinstein
March 3, 2008

block Mattel's expert's access.  Similarly, all the parties and Ms. Prince must agree that the notary book will be made available in California during the trial if Mattel so requests.

I look forward to your response.

Very truly yours,

Diane C. Hutnyan

3

EXHIBIT ___40___

PAGE ___380___

# EXHIBIT 41

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

DIRECT DIAL
213-687-5276
DIRECT FAX
213-621-5276
EMAIL ADDRESS
MATTHEW.SLOAN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
NEWARK
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

March 3, 2008

**VIA E-MAIL AND U.S. MAIL**

Diane C. Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

RE:     Bryant v. Mattel:  Stipulation Re Proposed Testing of
        Prince's Log Book

Dear Diane:

I am writing in response to your letter to Ryan Weinstein, dated March 3, 2008, which you transmitted to us earlier today.  As we feared, rather than respond in good faith to our proposed stipulation regarding the testing of Ms. Prince's notary book, you have raised largely frivolous objections in a transparent attempt to delay MGA's testing of the notary book and obstruct our ability to challenge the findings reached by your expert, Dr. Aginsky.  In the spirit of compromise, we are willing to make certain minor amendments to the stipulation to accommodate your alleged concerns.  (A copy of the amended stipulation (the "amended Stipulation") is attached hereto).  The overwhelming majority of your objections, however, are frivolous and clearly designed primarily, if not solely, for the purpose of obtaining an unfair litigation advantage by obstructing MGA's ability to conduct the very same testing, under the very same conditions, that MGA allowed your expert to conduct without objection or court intervention.  I discuss your objections and our responses to them below.

First, you object that the stipulation "appears to contemplate the idea of a future protocol, rather than contain an actual protocol."  We do not know what you

EXHIBIT ____41____

PAGE ____381____

Diane C. Hutnyan, Esq.
March 3, 2008
Page 2

mean by this and you have failed to specify precisely how you would revise the stipulation or why any additional procedures are necessary. Notwithstanding these shortcomings in your letter, we will slightly modify the testifying protocol as set forth below and in the amended Stipulation to provide further procedure. We believe this should cover any reasonable concerns you may have.

Second, you object that the "stipulation does not reflect any plan to obtain the Court's approval of Mr. Lyter and his credentials." This is not accurate. The Stipulation specifically provides that MGA must provide Mattel with notice of the expert we plan to use to perform the sampling and provide Mattel the expert's curriculum vitae. *See* Stipulation, ¶ 7. Mattel then has three days to object to the expert's credentials or the proposed testing, during which time Mr. Warren will not transmit the notary book to MGA. Accordingly, if Mattel has any objections to Mr. Lyter's credentials, then the Court will have to approve Dr. Lyter and his proposed testing. If Mattel has no such objection, there is no reason for MGA to have to obtain court approval – unless Mattel is trying to delay the testing to obtain an unfair litigation advantage.[1]

Third, you complain that you are "concerned about having the notary book in anyone's hands or possession but the (by then Court-approved) expert in the presence of [Mattel's] expert." To the extent you are concerned about the custody of the notary book, we will amend the stipulation to provide that the notary book must be maintained in the custody of Dr. Lyter or one of his employees or assistants at all times from the time Dr. Lyter's lab receives the notary book from Mr. Warren until it is transmitted back to Mr. Warren. *See* Amended Stipulation, ¶ 10.

The rest of your concerns are unfounded, and designed primarily to obstruct. As explained above, if you object to the delivery of the notary book to Dr. Lyter, you will have a full opportunity to litigate this matter before Judge Infante *before* the

---

[1]    As you know, the only reason that Judge Infante required Mattel to submit its experts' curriculum vitae to the court and obtain advance court approval before Mattel could perform any sampling on Bryant's drawings *is because Mattel refused to reveal the identity of its experts to Mr. Byrant's counsel.* Given that MGA has disclosed the identity and curriculum vitae of our expert already, there is no need for the added step of obtaining court approval of MGA's experts – unless, of course, Mattel has some good faith basis to object to Dr. Lyter's credentials. We assume by your silence that you recognize that Dr. Lyter is a highly-respected expert, and that any such objections would therefore be unfounded.

It is worth noting, moreover, that Mattel failed to give MGA *any* advance notice of the identity of Mattel's expert until just before Dr. Aginsky took his samples from the notary book. We simply fail to comprehend how you can claim the procedure we have proposed is insufficient compared to the paltry notice and procedure you provided MGA in connection with the testing of the notary book.

EXHIBIT ___4 l___

PAGE ___382___

Diane C. Hutnyan, Esq.
March 3, 2008
Page 3

notary book is delivered to Dr. Lyter. Thus, under the Stipulation, Dr. Lyter will not obtain possession unless he is either approved by the Court (over Mattel's objections) or you decide not to object to his performing the sampling. As for your request that "the notary book should not be handled by either expert outside the presence of the other," this is absurd. Mattel's expert, Dr. Aginsky, had possession of the notary book for at least 27 days[2] without any oversight. Mattel's expert is entitled to observe our expert's destructive sampling procedure; he is not entitled to be present at all times while Dr. Lyter visually inspects the notary book or engages in other non-destructive testing. You have provided no basis for such an invasive request to monitor our expert's examination and, as you well know, no such basis exists. If you want more information about Dr. Lyter's non-destructive examination of the notary book, you will have to do what any litigant must do (and what MGA will have to do with respect to Dr. Aginsky): ask him in his deposition.

Fourth, you complain that the stipulation must be "more specific in setting forth the exact method or delivery, time of delivery, location of delivery, and return date" and must set forth the "specific conditions" under which the book will be stored. Although MGA thinks that these objections are largely irrelevant, at your suggestion we have revised the stipulation to conform more closely with Judge Infante's August 30, 2007 Order. *See* Amended Stipulation, ¶¶ 9, 10, 14.

As for the storage conditions, the Stipulation specifies that the notary book will be maintained in "normal environmental conditions." *See* Stipulation, ¶ 5. We think this is more than sufficient to ensure the integrity of the notary book, but in the spirit of compromise, we will amend Paragraph 5 by providing that "normal environment conditions," means "generally accepted laboratory conditions that will preserve the integrity of the notary book from any damage caused by heat, cold, humidity, or other conditions."

Fifth, you have asked for a provision that all the samples must be taken in one-day. We think this is reasonable and will amend the Stipulation accordingly.

Sixth, you have asked that MGA limit the number of "microplug" samples which Dr. Lyter can take in any one "set" of samples. We believe this is also a reasonable request, and are prepared to stipulate that each "set" will be limited to 15-20 microplugs, subject to MGA's right to apply to the court for the right to increase the amount of "microplugs" allowed. We will amend the Stipulation accordingly. *See* Amended Stipulation, ¶ 3.

---

[2]   Per Mr. Aginsky's report, he removed the "microplug" samples from the notary book on January 4, 2008, and did not return the notary book to Ms. Prince's counsel, Mr. Warren, until January 31, 2008.

EXHIBIT ____41____

PAGE ____383____

Diane C. Hutnyan, Esq.
March 3, 2008
Page 4

Seventh, you object to the "Whereas" section of the Stipulation as
unnecessary and argumentative. We disagree. It is appropriate and necessary for
the Court to know the history of testing that has been performed on the notary book,
and to be informed that Mattel performed the very same testing, in order to render a
decision. We see no valid reason that you should object to presenting the whole
story unless you have something to hide. Accordingly, we will not revise the
"Whereas" provisions in the Stipulation.

Eighth, you remarkably reject our reasonable and necessary request for an
agreement that the deadline for submitting our rebuttal report should be extended
during the pendency of any court proceedings regarding Dr. Lyter's right to obtain
samples from the notary book. Your refusal to agree to such a provision reveals your
true intentions. Failing to include such a provision would render the whole
stipulation futile from MGA's perspective because you would undoubtedly use it as
an opportunity to tie us up in litigation until the March 17 deadline for rebuttal
reports had passed, and thereby prevent us from engaging in any expert testing.

Finally, you request that Mattel be guaranteed access to the notary book to
perform additional tests after MGA has served its rebuttal report and/or Mr. Lyter
has been deposed. Given that Dr. Aginsky has already had free and unfettered
access to the notary book for almost a month, and no constraints were placed on his
ability to test the book, we see no reason to address such a request at this juncture.
If you can present grounds for such additional testing later, we will consider them,
but we think that any request at this juncture is premature and we will not
incorporate it in the amended Stipulation.

Please review the attached Amended Stipulation and let us know by 4:00 pm
PST tomorrow, Tuesday, March 4, 2008, whether you are willing to sign the
Amended Stipulation as is. In the event you reject this reasonable proposal, we will
proceed to subpoena the notary book from Mr. Warren so that Mr. Lyter can perform
his sampling in time to meet the March 17, 2008 deadline for submitting MGA's
expert rebuttal reports. In the event Mattel seeks to delay our legitimate testing

EXHIBIT _____ 41

PAGE _____ 384

Diane C. Hutnyan, Esq.
March 3, 2008
Page 5

further by improper obstructionist tactics, and interferes with our ability to perform the necessary sampling before the March 17 deadline, we will seek preclusionary sanctions to prevent Mattel from introducing Dr. Aginsky's testimony or expert report at trial.

Very truly yours,

Matthew E. Sloan

Enclosures

cc:  Ryan Weinstein, Esq.
     Carl Roth, Esq.

EXHIBIT _____41_____

PAGE _____385_____

1 | THOMAS J. NOLAN (Bar No. 66992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 | 300 South Grand Avenue
Los Angeles, CA  90071-3144
3 | Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600
4 | E-mail:      tnolan@skadden.com

5 | KENNETH A. PLEVAN
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 | Four Times Square
New York, New York, 10036-6522
7 | Telephone:  (212) 735-3000
Facsimile:   (212) 735-2000
8 | Email:       kplevan@skadden.com

9 | Attorneys for Counter-Defendants
MGA ENTERTAINMENT, INC., ISAAC LARIAN,
10 | MGA ENTERTAINMENT (HK) LIMITED, and
MGAE de MEXICO S.R.L. de C.V.

11 |

12 | **UNITED STATES DISTRICT COURT**

13 | **CENTRAL DISTRICT OF CALIFORNIA**

14 | **EASTERN DIVISION**

15 |

16 | CARTER BRYANT, an individual,          )   CASE NO. CV 04-9049 SGL (RNBx)

17 |                 Plaintiff,            )   Consolidated with:
                                          )   Case No. CV 04-9059
18 |      v.                              )   Case No. CV 05-2727
                                          )
19 | MATTEL, INC., a Delaware              )   **DISCOVERY MATTER**
corporation,                              )
20 |                                      )   Hon. Edward A. Infante (Ret.)
                 Defendant.               )   Discovery Master
21 |                                      )
                                          )   **STIPULATION RE MGA'S**
22 |                                      )   **PROPOSED TESTING OF**
Consolidated with MATTEL, INC. v.         )   **JACQUELINE PRINCE'S**
23 | BRYANT and MGA                        )   **NOTARY BOOK;  [PROPOSED]**
ENTERTAINMENT, INC. v.                    )   **ORDER**
24 | MATTEL, INC.                          )
                                          )   **Phase 1**
25 |                                      )   Discovery Cut-Off:    Jan. 28, 2008
                                              Expert Rebuttal
26 |                                          Reports Due:          March 17, 2008
                                              Expert Discovery
27 |                                          Cut-Off:              March 31, 2008
                                              Pre-Trial Conference: May 5, 2008
28 |                                          Trial Date:           May 27, 2008

STIPULATION RE MGA'S PROPOSED TESTING OF PRINCE'S NOTARY LOG BOOK AND [PROPOSED] ORDER

EXHIBIT _____ 41

PAGE _____ 386

## STIPULATION

This Stipulation is entered into by and between Mattel, Inc. ("Mattel") on the one hand, and MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively referred to herein as "MGA"), on the other hand, with reference to the following:

WHEREAS, Jacqueline Prince, a notary public, made notations in a log book entitled "Official Journal of Notarial Acts" (the "log book") which relate to the date on which certain of plaintiff and counter-defendant Carter Bryant's ("Bryant") drawings were created;

WHEREAS, on page 11 of the notary book, there is an entry, dated 8/26/99, which identifies 6 sketches of dolls made by Bryant;

WHEREAS, the same entry includes the notation "From 1998 Missouri";

WHEREAS, on or about December 25, 2007, counsel for Mattel sent a letter to Daniel J. Warren, counsel for Ms. Prince, requesting production of the notary book for purposes of conducting a forensic analysis on the ink used on the above-referenced entry;

WHEREAS, in response, Mr. Warren produced said log book to Mattel, and MGA did not object;

WHEREAS, on January 4, 2008, Mattel's expert, Valery N. Aginsky, extracted 17 sets of hypodermic needle-sized samples or "microplugs" from written lines appearing on pages 11 and 12 of the notary book and two sets of blank paper "microplug" samples from page 11 of the notary book;

WHEREAS, Mr. Aginsky subsequently subjected the "microplug" samples to various chemical analyses, including chromatography, thin-layer chromatography ("TLC"), and gas chromatography-mass spectrometry ("GC-MS");

WHEREAS, on January 31, 2008, Mr. Aginsky returned Ms. Prince's log book to Mr. Warren;

STIPULATION RE MGA'S PROPOSED TESTING OF PRINCE'S NOTARY LOG BOOK AND [PROPOSED] ORDER

EXHIBIT _____ 4(

PAGE _____ 387

1  WHEREAS, on February 11, 2008, Mattel transmitted to MGA a copy of

2  Mr. Aginsky's expert report, wherein Mr. Aginsky set forth the results of ink tests

3  that he performed on samples extracted from the notary book;

4  WHEREAS, on the basis of his tests, Mr. Aginsky concluded that the notation

5  "From 1998 Missouri" on page 11 of the notary book was written in different ink

6  than the remainder of the 8/26/99 entry;

7  WHEREAS, MGA now seeks to test the accuracy of Mr. Aginsky's findings

8  by having its own expert replicate Mr. Aginsky's ink testing;

9  WHEREAS, the current deadline for submitting expert rebuttal reports is

10  March 17, 2008;

11  THEREFORE, the undersigned parties, through their undersigned counsel,

12  stipulate and agree as follows:

13  1.   MGA will be allowed to take samples and conduct testing on the notary

14  book to test the accuracy of Mr. Aginsky's findings, pursuant to the following

15  protocol.

16  2.   MGA's testing of Ms. Prince's log book will be limited to analysis of

17  "microplug" samples extracted from pages 11 and 12 of the notary book.

18  3.   MGA's expert (or experts) will remove no more than 17 sets of

19  "microplug" samples from the written portions of the entries on pages 11 and 12 of

20  the notary book, and no more than two sets of blank paper "microplug" samples from

21  the areas of pages 11 and 12 which do not contain writing.   (Although this

22  Stipulation refers to MGA's "expert," MGA reserves the right to employ more than

23  one expert for the proposed sampling and testing of the notary book).   MGA's

24  expert will take no more than 15 to 20 "microplugs" from any set of "microplug"

25  samples.   However, MGA retains the right to apply to the Court for the right to

26  increase the number of "microplugs" from each set of samples if necessary.

27

28

-2-

EXHIBIT _____ 41

PAGE _____ 388

4.     MGA's expert will extract all "microplug" samples using a hypodermic-needle-sized hole punch, which removes holes of less than one millimeter in diameter.

5.     Before subjecting the samples to ink analysis, MGA's expert will maintain the samples at his or her laboratory in normal environmental conditions, which means generally accepted laboratory conditions that will preserve the integrity of the notary book from any damage that could be caused by heat, cold, humidity or other conditions.

6.     All sampling and testing will occur at the laboratory of MGA's expert.

7.     Before Mr. Warren sends the notary book to MGA's expert, MGA will send a letter to Mattel's counsel by facsimile (and U.S. Mail) setting forth: (a) the name of MGA's expert (or experts) who will conduct the sampling; (b) the expert's curriculum vitae; (c) the location of the expert's laboratory; and (d) samples of "microplugs" similar to those that would be extracted from the notary book.

8.     Mattel will have three days from its receipt of the above-referenced letter by facsimile to object to the contemplated testing.  During this three-day period, Mr. Warren will maintain custody of the notary book, and no testing will be performed.  If Mattel raises no objection, then Mr. Warren will be directed to transmit the notary book to MGA's expert and MGA's expert will be authorized to conduct testing pursuant to the protocol set forth herein.

9.     Mr. Warren will transmit the notary book to MGA's expert by overnight mail, using Federal Express or UPS or a similar service that Mr. Warren selects.

10.     Upon receipt of the notary book, MGA's expert and/or his employees and assistants will maintain custody of the notary book in a safe place at all times, and will not release the notary book to any unauthorized third parties.

11.     In the event Mattel objects to the proposed testing, Mattel's counsel must notify MGA by letter and/or a telephone call within the 3-day period set forth

-3-

1  above. The parties must then meet and confer and, within two more Court days, file

2  a joint statement to Judge Infante seeking resolution of the dispute.

3       12.    Mattel may elect to have its own expert attend the extraction of

4  "microplug" samples provided that (1) Mattel makes the election in writing within

5  the three-day objection period; (2) Mattel provides counsel for MGA with the

6  credentials of any observing expert; and (3) the testing can take place within ten (10)

7  calendar days of the execution of this Stipulation. At this time, MGA's expert is

8  available to conduct the sampling on March 10, 11, or 12, 2008.

9       13.    If Mattel's expert raises any issues about the sampling being performed

10  while he or she is observing the sampling, the parties will seek immediate resolution

11  from the Court so that the sampling will not be delayed. If Mattel's counsel does not

12  object or seek attendance by its expert within the three-day objection period, the

13  proposed destructive testing shall be deemed unobjectionable and may be carried out

14  by MGA's expert without further delay.

15       14.    With the exception of alterations resulting from any destructive testing,

16  which would be conducted in accordance with the protocol set forth above, the

17  notary book will be returned promptly to Mr. Warren in the same condition it was

18  received. MGA's expert will return the notary book to Mr. Warren by overnight

19  mail, using Federal Express or UPS or a similar service, on the 35th day after

20  receiving such notary book from Mr. Warren, providing MGA's expert's testing is

21  not delayed by any court proceedings. In the event MGA's expert's testing is

22  delayed by such proceedings, MGA's expert will have an additional 15 days after the

23  resolution of such proceedings to perform testing on the notary book before having

24  to return it to Mr. Warren.

25       15.    The parties agree that, should Mattel raise any objections to the

26  proposed sampling, testing, or credentials of Mattel's expert, or to any other aspects

27  of the testing process, MGA will be granted an extension of time within which to

28  submit a rebuttal report in response to Mr. Aginsky's initial expert report.

-4-

EXHIBIT _____ Ψ1

PAGE ___ 39𝒐

1 | Specifically, in the event that Mattel objects to MGA's proposed expert sampling,

2 | the current March 17, 2008 deadline for submitting MGA's rebuttal expert report

3 | will be extended by one calendar day for each day from the date Mattel raises its

4 | objection to the date upon which any such objection is resolved by Judge Infante or

5 | by the agreement of the parties.

6 |     IT IS SO STIPULATED.

7 | DATED: February ___, 2008    SKADDEN, ARPS, SLATE, MEAGHER

8 |         & FLOM, LLP

9 |

10 |     By: _____

11 |         Matthew E. Sloan

        Attorneys for Counter-Defendants

12 |     MGA ENTERTAINMENT, INC., ISAAC LARIAN,

    MGA ENTERTAINMENT (HK) LIMITED; and

13 |     MGAE de MEXICO S.R.L. de C.V.

14 | DATED: February ___, 2008    QUINN EMANUEL URQUHART OLIVER

15 |         & HEDGES, LLP

16 |

17 |     By: _____

18 |         Diane C. Hutnyan

        Attorneys for Mattel, Inc.

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

STIPULATION RE MGA'S PROPOSED TESTING OF PRINCE'S NOTARY LOG BOOK AND [PROPOSED] ORDER

EXHIBIT _____ 41

PAGE ____ 391

## <u>ORDER</u>

The Court, having reviewed MGA and Mattel's Stipulation Re MGA's Proposed Testing Of Jacqueline Prince's Notary Book (the "Stipulation") and for good cause shown, hereby approves the procedure for MGA's proposed expert testing of the notary book set forth in the Stipulation.

IT IS SO ORDERED.

DATED: _____

_____
Hon. Edward A. Infante (Ret.)
Discovery Master

-6-

EXHIBIT _____ 41
PAGE _____ 392

# EXHIBIT 42

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3666

WRITER'S INTERNET ADDRESS
dianebutnyan@quinnemanuel.com

March 5, 2008

VIA EMAIL AND FACSIMILE

Ryan Weinstein, Esq.                        Matthew Sloan, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP    Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue                      300 South Grand Avenue
Los Angeles, CA 90071                       Los Angeles, CA 90071

Re:    Carter Bryant v. Mattel

Dear Ryan and Matthew:

We were disappointed by your letter. Contrary to your view, our intent in our March 3 letter was to let you know, point by point, specifically what our concerns were and specific ways that you might meet them. It appeared to us that we were moving closer to each other on some key issues up until you sent your latest proposal and letter.

Since you seem bent on proceeding with a subpoena today, I do not have time to address all of the points in your letter fully, but I will try to address a few quickly, in the hopes that you will reconsider and try to work out an agreement with us.

You had said you did not understand my comment about the future protocol, and what I meant by that is that you seem to have an artificially short period of time between official disclosure and resolution of any objection, rather than officially disclosing the expert now and having us work out any objections right away. We do not see any reason why you would set it up this way, other than to try to prevent us from being able to meaningfully object. And it seems that if you are in a hurry to do the testing, you would want to officially disclose the expert now anyway. I note that although you had previously represented Mr. Lyter as being the expert, the latest stipulation seems to contemplate multiple unnamed experts again.

EXHIBIT ____42____

PAGE ___393___

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

Also, you have pointed out that the rebuttal expert report date is March 17 and stated that the proposed microplugging is limited to two pages. Yet the latest stipulation seeks thirty-five days' custody of the notary book. Thirty-five days was the length of time the Court allotted for the non-destructive examination of eight boxes of original documents by four different experts in four different parts of the country. MGA and Bryant had insisted on no more than four days for the paper plugging of 190 individual sheets of paper that needed to be located within eight boxes of original documents. So I cannot imagine any reason why your expert would need them for longer than one day. Could you tell me why you need thirty-five days?

Also, you point out that Dr. Aginsky had the notary book at his lab for longer than one day, but there was no need to return it immediately then, whereas here it should be made available to us or our expert witness during that timeframe. For all the same reasons that you would like to review Dr. Aginsky's work, we should have the right to review your expert's work. Yet it appears that you will not even consider that, which seems inconsistent with your many statements about how unobjectionable your testing plans are. Further, after MGA's refusal to provide the Court-ordered Topic 41 deposition testimony on MGA's handling and destructive sampling of the other original documents, we believe that we are entitled to more explanation than just a deposition. If you seek to do this by agreement, I would ask you to reconsider the reasonableness of our request for access to the notary book and help us figure out a way that we can both do what we need to do.

Also, please explain your basis for modification of the scheduling order. It, too, seems designed to keep us from being able to appropriately respond to your expert's findings.

I am certainly happy to discuss a reasonable proposal, but as these few examples show, much of what you have proposed does not seem to have a reasonable basis. If it does, and I am missing it, I would appreciate you letting me know what that basis is so that maybe we can work something out. If you are interested, let me know; I am available to discuss by telephone tonight or tomorrow.

Your alternate plan, to issue a subpoena and take possession of the notary book, with neither Court approval nor an agreement in place, is problematic for all the reasons I have set forth in my prior correspondence. If you do that, we will move to quash the subpoena and/or move for a protective order. So, to the extent MGA is unwilling to proceed by seeking Court approval or our agreement, please also consider this letter a request to meet and confer pursuant to paragraph 5 of the Discovery Master Stipulation in advance of such motion(s).

I look forward to hearing from you.

Very truly yours,

Diane C. Hutnyan
07209/2424163.1

2

EXHIBIT _____42_____

PAGE _____39 4_____