THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA  90071-3144
Tel.: (213) 687-5000 / Fax: (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, CA  94111-5974
Tel.: (415) 984-6400 / Fax: (415) 984-2698

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | REPLY BRIEF IN FURTHER SUPPORT OF MGA DEFENDANTS' *EX PARTE* APPLICATION FOR AN ORDER EXTENDING THE MARCH 17 DEADLINE FOR MGA TO SERVE ITS REBUTTAL EXPERT REPORT CONCERNING MS. PRINCE'S NOTARY BOOK OR, IN THE ALTERNATIVE, PRECLUDING MATTEL FROM INTRODUCING ANY EXPERT EVIDENCE REGARDING ITS EXAMINATION OF THE NOTARY BOOK |
| MATTEL, INC., a Delaware corporation, | |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |
| | Date:  TBD |
| | Time:  TBD |
| | Place:  TBD |

MGA's REPLY IN SUPPORT OF THE MGA DEFENDANTS' *EX PARTE* APPLICATION FOR AN ORDER EXTENDING
THE MARCH 17 DEADLINE
Case No. CV 04-9049 SGL (RNBx)

Case 2:04-cv-09049-DOC-RNB   Document 2723   Filed 03/19/08   Page 2 of 18   Page ID #:42441


# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.   PRELIMINARY STATEMENT .................................................................... 1

II.  ARGUMENT ............................................................................................... 5

    **A.**  MGA Was Diligent In Seeking To Extract Samples and Complete Its Expert Report in Advance of the March 17 Deadline .................... 5

    **B.**  MGA Does Not Have To Seek A Court Order To Engage In Destructive Testing; The Burden Is On Mattel To Obtain A Protective Order ................................................................................... 8

    **C.**  Mattel's Allegations About MGA's Prior Sampling and its Attacks Against MGA's Expert Are False and Irrelevant ............................... 13

    **D.**  MGA's Request for Relief is Not Premature ...................................... 14

III. CONCLUSION ........................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Cameron v. Dist. Court,*
565 P.2d 925 n.1 (Colo. 1977)..................................................................10

*Dabney v. Montgomery Ward & Co.,*
761 F.2d 494 (8th Cir. 1985) .....................................................................9

*Jackson v. Laureate, Inc.,*
186 F.R.D. 605 (E.D. Cal. 1999) ..............................................................13

*Marrocco v. Gen. Motors Corp.,*
966 F.2d 220 (7th Cir. 1992) .....................................................................9

*Mirchandani v. Home Depot, U.S.A., Inc.,*
235 F.R.D. 611 (D. Md. 2006) ..................................................................9

*Ostrander by Ostrander v. Cone Mills, Inc.,*
119 F.R.D. 417 (D. Minn. 1988) ...............................................................10

*Sedrati v. Allstate Life Ins. Co.,*
185 F.R.D. 388 (M.D. Ga. 1998)...............................................................9

*Spell v. Kendall-Futuro Co.,*
155 F.R.D. 587 (E.D. Tex. 1994) .............................................................10

*United States v. City of Torrance,*
163 F.R.D. 590 (C.D. Cal. 1995)..............................................................10

**Statutes**

Fed. R. Civ. P. 34(a) ...................................................................................8

Fed. R. Civ. P. 45(a)(1)(D) ........................................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  PRELIMINARY STATEMENT

Mattel's opposition to MGA's *ex parte* application to extend the March 17 deadline is – like so many of Mattel's filings – an exercise in distortion and obfuscation.  The sole issue for the Court to decide is whether MGA should be granted an extension of the deadline to submit its expert rebuttal report where, as here, MGA would have easily met that deadline *but for* Mattel's last minute motion blocking MGA from completing its testing of Ms. Prince's notary book.  Put more starkly, does Mattel have grounds to object to such an extension where Mattel's own actions prevented MGA from completing its expert report on time?  It does not take a Solomon to figure out the answer.  Simple fairness demands that MGA be given an extension.

Rather than admit this simple truth, however, Mattel tries to distort the facts and distract the Court by repeatedly misstating the law, and making a series of false, misleading and unsubstantiated allegations against MGA and its experts.  For example:

> ➤ Mattel alleges that MGA would have been able to meet the March 17 deadline if it had only begun arranging its testing earlier.  Mattel neglects to mention, however, that Mattel's counsel and its experts had exclusive possession of the notary book from September 11, 2007 through January 31, 2008, and that MGA had no reason to test the book until it received Mr. Aginsky's report on February 11, 2008.  MGA sought to begin testing within a week of receiving this report.

➤ Mattel falsely alleges that "MGA had every opportunity to negotiate, or litigate, a sensible protocol for testing, but failed to do so." (Opp. at 17.) The record is clear, however, that MGA made Herculean efforts to negotiate a reasonable protocol, but Mattel repeatedly rejected MGA's good-faith proposals in order to block the testing. (*See Ex Parte* at 3-13.)

➤ Mattel misleadingly suggests that MGA's proposed protocol was deficient. In fact, it provided far more safeguards than the agreement governing Mattel's testing of the notary book, which provided little more than MGA's right to have its expert observe the testing. (*Id.*).

➤ Mattel falsely states that MGA's proposed protocol did not provide for Court review of MGA's proposed expert. In fact, MGA's proposed stipulation provided that *if Mattel objected,* the notary book *could not even be released* to MGA's expert, Dr. Lyter, until the Court had resolved Mattel's objection. (*Ex Parte* at 9; Sloan Decl., Ex. 16: Proposed Stipulation, ¶¶ 3, 4.) Significantly, moreover, Mattel has had Dr. Lyter's CV for weeks, and has identified no good cause to prevent him from testing the notary book. In fact, Mattel's counsel has such high esteem for Dr. Lyter *that they tried to retain him to represent Mattel in this case* back in 2005. (*See* Hutnyan Decl., Ex. 47.) Unfortunately for Mattel, Dr. Lyter had already been hired by MGA, so Mattel had to hire Aginsky instead.

➤ Mattel falsely states that MGA had an obligation to obtain court approval before extracting any samples from the notary book. (Opp. at 4.) In fact, Fed. R. Civ. P. 34(a) expressly allows parties to "test, or sample" documents, and puts the burden on the opposing party (i.e., Mattel) to move for a protective order.

➤ Mattel suggests misleadingly that the Discovery Master has required the parties to obtain court approval before conducting *any* examination of original documents. (Opp. at 1, 17.) In fact, Judge Infante's August 30 Order governs only *Matte*l's testing of the *Carter Bryant drawings*, not *MGA's testing* of the *notary book.* Moreover, Judge Infante only required Mattel to get advance court approval of its experts because Mattel refused to disclose the names of its experts to Bryant and sought to have them examine over 2,000 original Bryant drawings over the course of two months. Here, by contrast, MGA has disclosed Dr. Lyter's identity and only seeks to have him examine a single document (the notary book), which Mattel has already thoroughly sampled.

➢ Mattel also falsely, and without basis, alleges that if Dr. Lyter does not get the results MGA desires, MGA intends to "shop the notary book around" to a host of other experts until MGA either "receives the results it is looking for or until the book is effectively destroyed as a trial exhibit." (Opp. at 19-20.) In fact, MGA has no present intent to have anyone other than Dr. Lyter test the notary book, and would never purposely try to destroy evidence. Mattel's accusations are false, unsubstantiated and unprofessional, and do not merit a response, other than a reprimand from the Court.

Finally, Mattel tries to distract the Court's attention by repeatedly attacking MGA and its former consultant, Erich Speckin, for allegedly engaging in "secret acts of destructive sampling" and trying "to conceal these acts from the Court." (Opp. at 3.) As an initial matter, these allegations are totally irrelevant. They have no bearing on whether MGA is entitled to an extension of the March 17 deadline, especially given that MGA intends to employ Dr. Lyter, rather than Mr. Speckin, to extract the micro-plug samples. Moreover, Mattel's claims that MGA tried to conceal these acts from the Court is baseless. Mr. Speckin submitted a detailed affidavit to the Court in July 2006, which described in detail the testing he performed. The most disturbing and unprincipled aspect of Mattel's opposition are the *ad hominem* attacks Mattel's counsel launches against Mr. Speckin's character, which reflect a degree of hypocrisy that is surprising even for Mattel and its counsel. What Mattel conveniently neglects to mention is that Mattel's law firm, Quinn Emmanuel, in actuality thinks so highly of Mr. Speckin that they have previously

*hired* him as an expert in at least two other cases and tried to hire him for this case in 2006 before they learned that he had been hired by MGA.[1]

In short, Mattel's arguments are much ado about nothing. The matter here is one of simple fairness. A party should not be allowed to object to continuing a deadline which it has, though its own obstructionist tactics and last minute filings, prevented its adversary from meeting. Mattel's position smacks of hypocrisy. If Mattel were so confident in Aginsky's results, it should welcome the opportunity to have those results confirmed by an opposing expert. The fact that Mattel has gone to such extremes to prevent MGA from conducting its testing speaks volumes about the purported reliability of Aginsky's tests.

The Court should put an end to Mattel's obstruction and obfuscation, and grant MGA a reasonable amount of time after the Discovery Master has ruled on Mattel's outstanding application for a protective order to extract samples from the notary book and submit its rebuttal expert report.

---

[1]    Supplemental Sloan Declaration, Ex. 1: Declaration of Erich Speckin, dated July 21, 2006 at 2, ¶ 6.

## II.   ARGUMENT[2]

### A.   MGA Was Diligent In Seeking To Extract Samples and Complete Its Expert Report in Advance of the March 17 Deadline

Mattel's principal argument against granting MGA an extension of the March 17 deadline appears to be that MGA was negligent in failing to perform the testing on the notary book earlier.  (Opp. at 1, 17.)  Mattel states that MGA knew in late December 2006 that Mattel's consultant, Valery Aginsky, would be taking microplug samples from the notary book and that Aginsky extracted the samples on January 4, 2008, and therefore should have begun the process of taking samples months ago. (*Id.*)

Mattel fails to mention, however, that Mattel and its experts had exclusive possession of the notary book from September 11, 2007 through January 31, 2008, when Aginsky finally returned it to Ms. Prince's counsel, Dan Warren.[3]  Thus, MGA could not have reasonably sought to test the notary book until February 2008.  More importantly, MGA had *no* reason to even want to test the notary book until February

---

[2]     As an initial matter, MGA notes that Mattel's opposition is untimely because it was not filed within the 24 hour deadline prescribed by this Court's Standing Order, which requires oppositions to *Ex Parte* Applications to be filed within 24 hours of the filing of the *ex parte* application, which arguably occurred here as early as Friday March 14, 2008, when the *ex parte* was initially filed *under seal. See* Standing Order, ¶ 6.  Unlike Mattel's objection to the extension of the March 17 deadline, however, MGA will not object to this brief extension in the filing deadline apparently sought by Mattel.

[3]     *See* MGA's *Ex Parte* Application at 4-7.

11, 2008, when Mattel served Aginsky's report on MGA.    Aginsky's report alleged, for the first time, that the 8/26/99 entry in Ms. Prince's notary book was made with two different inks, and that the "From 1998 Missouri" notation was made at a later time.[4]    While MGA questions the significance of this finding *even if it were accurate*, MGA understands that Mattel will highlight this finding at trial, and therefore decided to seek its own chemical analysis of the ink in the notary book.[5]

Once MGA received Aginsky's report, moreover, it moved diligently and expeditiously to obtain the notary book and complete its testing.  (*See Ex Parte Application* at 6-13.)  First, on February 18, 2008, within a week of receiving Aginsky's report, MGA sent a letter to Warren to obtain the notary book.  (*Id.* at 6-7.)  Then, on February 22,  after receiving several threatening letters from Mattel's counsel, MGA sent an email to MGA's counsel seeking to negotiate a resolution.[6]  In the following days, MGA's counsel  (1) prepared a detailed stipulation, which provided court oversight and substantially more safeguards than Mattel had afforded

[4]    Id.; Sloan Decl., Ex. 4: Expert Report of Valery Aginsky at 7-8.
[5]    Mattel's suggestion that MGA should have anticipated Aginsky's finding in December and tried to work out a protocol in advance (Opp. at 17) is disingenuous. MGA simply had no reason, nor obligation, to anticipate the results of Aginsky's report nor to expect that it would have to perform similar testing.  More importantly, even if MGA had anticipated the need for such testing, it had no reason to suspect that Mattel would refuse MGA's reasonable request to extract samples under the same, loose agreement which governed Mattel's sampling of the notary book. MGA was only *negligent* in not anticipating the lengths to which Mattel would go to block MGA's legitimate testing.
[6]    Sloan Decl., Ex. 14: M. Sloan Feb 22, 2008 Letter to D. Huntnyan.

to MGA before its sampling; (2) disclosed the identity and curriculum vitae of its expert, Dr. Lyter; and (3) revised its stipulation to respond to several of Mattel's alleged concerns. (*Ex Parte* Application at 8-11.)  At every step of the way, Mattel raised trivial and largely baseless objections.  Nevertheless, MGA did not give up trying to reach a negotiated solution until less than two weeks before the March 17 deadline, when Mattel's dilatory tactics and its refusal to agree to an extension of the March 17 deadline made Mattel's objective painfully clear – block MGA's testing at all costs.

Now that MGA has pointed out Mattel's obstructionist tactics to the Court, Mattel raises a host of attacks against MGA's stipulation, most of which are specious.[7]  Most perniciously, Mattel makes the totally unsubstantiated and slanderous claim that, if Dr. Lyter does not reach the result MGA desires, MGA will "shop" the notary book to multiple unnamed experts until MGA either receives the result it is looking for or "until the book is effectively destroyed as a trial exhibit" as a result of the holes punched in it.  (Opp. at 19-20.)  Mattel, of course, has no basis to support this slanderous and preposterous claim.  Rather, it is merely another trick to

---

[7]     Mattel alleges, for instance, that MGA "refuses" to name any of its "experts" who will perform destructive sampling  besides Dr. Lyter.  (Opp. at 18.)  The reason for this is simple; because there are none.  Dr. Lyter will perform the sampling. Mattel also complains that MGA failed to submit its expert's CV (Opp. at 19) – although MGA produced Dr. Lyter's CV to Mattel on February 28 – and that MGA required Mattel to divulge the credentials of its expert before allowing him or her to observe MGA's sampling procedures (Opp. at 19.)  Ironically, MGA borrowed this requirement straight from Mattel.  (Ex Parte Application at 6-7.)

distract the Court from the real issue here:  whether MGA is entitled to a brief extension of the March 17 deadline.  The evidence shows that MGA was diligent in trying to set up a testing protocol and made significant compromises to negotiate a protocol with Mattel.  It would thus be grossly unfair to punish MGA by failing to extend the March 17 deadline.

**B.    MGA Does Not Have To Seek A Court Order To Engage In Destructive Testing; The Burden Is On Mattel To Obtain A Protective Order**

Mattel's suggestion that MGA should be denied relief because it improperly sought to circumvent the Court's authority by seeking to perform destructive testing without Court approval or the agreement of Mattel is also baseless, as MGA has previously pointed out to Mattel.[8]  Contrary to Mattel's repeated claims, a party is *not* required to obtain Court approval prior to performing destructive testing— especially where, as here, the opposing party has already performed identical testing and the testing will not completely destroy the evidence or prevent further testing. Rather, the party opposing such discovery has the burden of showing good cause for a protective order.

The Federal Rules of Civil Procedure expressly allow a party to "test" and "sample" documents and things obtained through discovery.  Fed. R. Civ. P. 34(a)

---

[8]    *See* MGA's Opposition to Mattel's *Ex Parte* Application For a Protective Order Preventing MGA's Destructive Testing at 5-8, 13-16.

("A party may serve on any other party a request . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . ."); Fed. R. Civ. P. 45(a)(1)(D) ("subpoena to produce documents, electronically stored information, or tangible things requires the responding party to permit inspection, copying, testing, or sampling of the materials").  Nowhere do the Federal Rules require a court order prior to performing destructive "testing" or "sampling."  To the contrary, relevant discovery is permitted absent a protective order:[9]

> Rule 34 of the Federal Rules of Civil Procedure governs the pretrial production of evidence for testing and inspection by one's adversary.  Production for purposes of destructive testing falls within that rule as well.  When production is

---

[9]    The case law cited by Mattel does not provide otherwise.  At best, the cases cited imply that a party is well-served by seeking court approval prior to testing that would *completely destroy* the evidence or substantially prejudice the opposing party.  *See Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611, 613 (D. Md. 2006) ("Had plaintiffs proceeded to destructively test components of the ladder without first seeking guidance from the court, they would have risked the consequences that may befall a litigant deemed to have engaged in spoliation of evidence, such as an adverse inference instruction to the jury"); *Dabney v. Montgomery Ward & Co.*, 761 F.2d 494, 497 (8th Cir. 1985) (method of testing would have completely destroyed furnace during testing process).  Other cases cited by Mattel did not concern court approval prior to destructive testing, but rather violations of a standing protective order.  *See Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 221 (7th Cir. 1992) (appellate court consolidated 2 cases to address "questions about how severely a judge may sanction a party for violating a pretrial protective order").  What the cases cited do make clear is that court intervention is only useful where the destructive testing would prejudice the opposing party.  *Sedrati v. Allstate Life Ins. Co.*, 185 F.R.D. 388, 393-94 (M.D. Ga. 1998) (party sanctioned for completely destroying evidence and prejudicing opposing party).  That is not the case here given that Mattel has already thoroughly examined, photographed, and tested the notary book.

---

resisted, Rule 26(c) provides the standard for denial or

limitation of the request . . . .

*Ostrander by Ostrander v. Cone Mills, Inc.*, 119 F.R.D. 417, 419 (D. Minn. 1988);

*see also Spell v. Kendall-Futuro Co.*, 155 F.R.D. 587, 587 (E.D. Tex. 1994)

("Production for purposes of destructive testing falls within the scope of Rule 34").[10]

Mattel's claim that the "Discovery Master in this case required that a specific

protocol be established before experts could perform any testing, *even non-*

*destructive testing*, on original documents" is similarly false and misleading.  (Opp. at

7.)  This Court's August 30, 2007 Order ("August 30 Order"), requiring the Court to

approve *Mattel's* experts in advance of any testing, grew out of a very different

circumstance and is not applicable to MGA's testing of the notary book, as Mattel

well knows.  To the contrary, the August 30 Order directly applies only to Mattel's

---

[10]    Under Rule 26(c), a party opposing discovery must show good cause for a protective order limiting or prohibiting the discovery. *United States v. City of Torrance*, 163 F.R.D. 590, 594 (C.D. Cal. 1995) (no protective order absent showing of good cause with particularity and specificity); *see also Cameron v. Dist. Court*, 565 P.2d 925, 928 n.1 (Colo. 1977) ("Inspection and testing, within the bounds of relevancy, are thereby permitted without judicial supervision and simply upon request.  By contrast, a party opposing discovery under Rule 34 must still comply with the showing of 'good cause' required for a protective order.").  Here, given the safeguards already offered by MGA, Mattel has shown no good cause for a protective order which is different in any significant way from MGA's proposed stipulations.

testing of Bryant's drawings.[11]  It does not mention the notary book or the protocols governing testing by MGA's experts.  More importantly, the principal (if not only) reason that Mattel was forced to obtain the Discovery Master's approval of Mattel's experts in advance of any expert examinations was because Mattel sought the right to examine over 2,000 original Bryant drawing, but refused to reveal the identity of any of its experts to Bryant or MGA on purported work product grounds.[12]  Here, by contrast, MGA has long since disclosed the identity and curriculum vitae of its expert, Dr. Lyter, and Mattel has failed to raise a single objection to his qualifications.  Indeed as mentioned above, Mattel apparently thinks so highly of Dr. Lyter's qualifications that Mattel's counsel tried to hire him to perform testing for Mattel *in this case* in 2005, and even sent him a $2,500 retainer, which Dr. Lyter had to return when he realized that he had already agreed to perform consulting for MGA.[13]  It would be hard to imagine better proof of how disingenuous Mattel's objections are.  How can Mattel argue with a straight face that it needs the Discovery Master to

---

[11]    Hutnyan Decl., Ex. 4 at ¶3.

[12]    *See* Hutnyan Decl., Ex. 4: Bryant's Opposition to Mattel's Motion to Compel Bryant to Make Original Documents Available for Expert Examination and Testing at 1; Ex. 5: Aug. 23, 2007 Hearing Tr. at 12-13.  (Judge Infante noting that given Mattel's desire to protect its work product, it would have to disclose the identities and qualifications of its experts *in camera* so that the Court could ensure they were reputable and trustworthy).

[13]    *See* Hutnyan Decl., Ex. 47: A. Lyter January 20, 2005 Letter to T. Krebs of Quinn Emmanuel, returning $2,500 retainer check.

1 approve Dr. Lyter's credentials when its own counsel has already given Dr. Lyter its
2 seal of approval by trying to hire him?

3
4 Moreover, as opposed to the 2,000 original drawings that Mattel sought to
5 examine in connection with the August 30 Order, here we are only dealing with a
6 single document (Ms. Prince's notary book), which Mattel has already thoroughly
7 examined and photographed. Thus, it is hard to see how Mattel could be prejudiced
8
9 by allowing MGA the same right to sample the book as Warren and MGA allowed
10 Mattel.

11

12 **C.** **Mattel's Allegations About MGA's Prior Sampling and its Attacks**
13 **Against MGA's Expert Are False and Irrelevant**

14 Mattel's complaints about MGA's prior sampling of Bryant's original drawings
15 and its *ad hominem* attack on Mr. Speckin, the expert who extracted those samples
16
17 (Opp. at 10-13), are little more than red herrings, sophomoric attempts to distract the
18 Court from the real matter at issue here: whether Mattel's filing of its *ex parte*, and its
19 other obstructionist tactics, entitle MGA to a brief extension of the March 16 deadline.

20
21 As an initial matter, the attacks against Mr. Speckin are totally irrelevant
22 because MGA does not plan to have him test the notary book; Dr. Lyter will be
23 extracting all the samples. Mattel's complaints are also old news, which the parties
24
25 have already fully litigated. Indeed, contrary to Mattel's suggestions about the
26 Court's grave concerns, this Court previously found that "no colorable claim of

27
28

spoliation has been established at this time <u>vis-à-vis</u> Mr. Speckin's testing of the documents." [14]

Mattel's attacks on Mr. Speckin's ethics and integrity are particularly hypocritical given that Mattel's counsel, Quinn Emmanuel, has previously retained Mr. Speckin as its expert in at least two previous cases, [15] and continued using him as an expert after the publication of the court opinions, which Quinn Emmanuel now claims are the basis of its personal attacks against him. Perhaps most tellingly, Quinn Emmanuel apparently thought so highly of Mr. Speckin that it tried to hire him for this case in July 2006.[16]

**D.** <u>MGA's Request for Relief is Not Premature</u>

Mattel's claim that MGA's request for an extension of the March 17 deadline is "premature" is also baseless. (Opp. 20-21.) It is well-settled that a party should make a prompt request for modification of an order once it becomes apparent that compliance is not possible. *E.g.*, *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607-08 (E.D. Cal. 1999). Thus, as a general matter, *ex parte* applications for extensions

---

[14]    Huntyan Decl., Ex. 20: Court's August 10, 2006 Order Denying Motion for Appointment of Expert Witnesses at 13 (emphasis in original).

[15]    Supplemental Sloan Decl., Ex. 1: Declaration of Erich Speckin, dated July 21, 2006, at 2, ¶ 5).

[16]    *Id.* at 2, ¶ 6 (noting that "On or about July 6, 2006, I received a call from a lawyer named Tania at Quinn Emanuel seeking to retain me for this case.")

of time must be brought before the prescribed time limit has expired.  Fed. R. Civ. P. 6(b)(1).

Mattel's argument that MGA should wait until the Discovery Master has ruled on Mattel's pending *ex parte* application is disingenuous.  If MGA had let the March 17 deadline pass, and then sought to revive its right to perform testing only after the Discovery Master's ruling, Mattel would undoubtedly argue that MGA had waived its right to engage in further testing by failing to move for an extension of the deadline *before* March 17.   Mattel can not have it both ways.  It should not be allowed to subject MGA to this legal *Catch-22*.  Justice therefore demands that the March 17 deadline be extended to give MGA sufficient time to take samples and perform testing on the notary book.

## III.   CONCLUSION

For the reasons set forth above, MGA respectfully requests that its *Ex Parte* Application be granted and that the Court grant MGA's request for an extension of the March 17, 2008 rebuttal expert deadline with respect to the testing of Ms. Prince's notary book.

DATED:  March 19, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____
    Thomas J. Nolan
    Attorneys for MGA Entertainment, Inc.,
    MGA Entertainment (HK) Limited,
    MGAE de Mexico, S.R.L. de C.V., and Isaac
    Larian