THOMAS J. NOLAN (Bar No. 66992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
E-mail: tnolan@skadden.com

RAOUL D. KENNEDY (Bar No. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, CA 94111-5974
Telephone: (415) 984-6400
Facsimile: (415) 984-2698
E-mail: rkennedy@skadden.com

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian

UNITED STATED DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>    Defendant. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**DECLARATION OF PAUL M. ECKLES IN SUPPORT OF MGA DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION TO SET AN EXPEDITED HEARING DATE**<br><br>Honorable Stephen G. Larson<br><br>Date: TBD<br>Time: TBD<br>Place: TBD |
| AND CONSOLIDATED ACTIONS | |

I, Paul M. Eckles, hereby declare as follows:

1. I am an attorney licensed to practice law in the State of California and am a partner at the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, attorneys of record for MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively, the "MGA Defendants") in the above-captioned matter. I submit this Declaration in Support of MGA Defendants' Opposition to Mattel's <u>Ex Parte</u> Application to Set an Expedited Hearing Date. Unless otherwise stated, I have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

2. I had meet-and-confer sessions with Dylan Proctor from Quinn Emanuel on March 4, 2008 and March 11, 2008 relating to Mattel's threatened disqualification motion. During the conversations, Mr. Proctor informed me that Mattel intended to move to disqualify Tina Tomiyama, Skadden, Arps, MGA's in-house counsel, Craig Holden, as well as anyone else who received a copy of Ms. Tomiyama's expert report. During our conversations, I inquired as to the basis for Mattel's claim that Ms. Tomiyama had disclosed privileged information, as well as the grounds for Mattel to seek such a drastic remedy.

<u>Mattel's Refusal to Substantiate its Claims Relating to Ms. Tomiyama's Report</u>

3. In both of our conversations, I asked Mr. Proctor the basis for Mattel's claim that the document that Ms. Tomiyama attached to her expert report (<u>see</u> Zeller Decl., Ex. 8 at 120) was both privileged and relevant to this litigation. Based on the information Ms. Tomiyama had provided to Skadden, the document did not appear to be privileged or relevant. For example, the document itself contained only a group of photos and was not marked "confidential," "privileged" or "work product." Further, I understood that Ms. Tomiyama had told Ken Plevan, the Skadden attorney with whom she was dealing, that she had prepared the document specifically for the purpose of it being disclosed to a Mattel competitor to provide it guidance. She also told Mr. Plevan that she understood that the document had been disclosed to Mattel's

competitor. During her deposition, she confirmed both her purpose in creating the document and her belief that, at a minimum, some subset of the pictures had been shared with the competitor.

4. During our meet-and-confer, I asked Mr. Proctor about the basis for Mattel's claim that, contrary to Ms. Tomiyama's testimony, the document was privileged. During our initial conversation, he stated that some "subset" of the drawings may have been disclosed, but that it was his understanding that the document in the form prepared by Ms. Tomiyama had not been disclosed. He also said that Mattel was continuing its factual investigation.

5. During our March 11, 2008 conversation, I again inquired about the document. Mr. Proctor refused to tell me what Mattel's investigation had revealed, including whether any "subset" of the drawings had been shared with Mattel's competitor. All that Mr. Proctor would tell me was that it was Mattel's position that the document was privileged.

### Skadden's Efforts to Take Remedial Steps to Remedy the Purported Disclosure of Privileged Information

6. Mr. Proctor suggests in his Declaration that Skadden refused to take any steps to rectify the purported dissemination of privileged information. Mr. Proctor's statement is incorrect.

7. First, Mr. Proctor never inquired as to what, if any, prophylactic measures Skadden had taken since Mattel raised its privilege concerns. In fact, out of an abundance of caution, upon learning of Mattel's concerns and before we even held our first meet-and-confer, Skadden took substantial measures to maintain the status quo pending a resolution of this matter. On March 3, 2008, every Skadden attorney working on this matter was instructed to destroy all copies of both Ms. Tomiyama's expert report and exhibits and her deposition transcript and exhibits. Both Ms. Tomiyama's expert report and deposition transcript were also removed from Skadden's internal databases. Since March 3, 2008, only those Skadden

attorneys involved in responding to Mattel's motion for disqualification have had access to those materials.

8.   Second, I also told Mr. Proctor that, if Mattel could substantiate its claims relating to Ms. Tomiyama and the document she attached to her report, MGA would be willing to discuss appropriate remedies. Specifically, I inquired as to (i) why Mattel believed the document that Ms. Tomiyama attached to her report was relevant to this action, and (ii) how Mattel would be prejudiced if Skadden destroyed all copies of the document and agreed to withdraw Ms. Tomiyama as a witness. As to the first issue, Mr. Proctor pointed out that MGA had sought documents from Mattel relating to the Simba litigation, and that Ms. Tomiyama had attached the document to her expert report. He did not offer any other explanation as to how the document was relevant, much less material to any pending issue in the case. As to the second issue, Mr. Proctor did not provide any explanation as to how Mattel would be prejudiced. He simply stated that Mattel did not believe the withdrawal of Ms. Tomiyama would constitute a sufficient remedy.

9.   As to my purported refusal to answer various questions posed by Mr. Proctor, I inquired whether there was any potential answer to the questions that would dissuade Mattel from filing its motion. Mr. Proctor responded that Mattel would be filing its motion regardless of the answers.

### MGA's Attempt to Negotiate a Reasonable Briefing Schedule

10.   During the meet-and-confer process, I attempted to reach an agreement with Mr. Proctor on a reasonable briefing schedule. I offered to waive the 20-day meet-and-confer period set by Local Rule 7-3 if Mattel would agree to set the motion for hearing on April 21, 2008, with the parties dividing the intervening time to brief the matter. Mr. Proctor refused this offer and insisted that MGA waive the 20-day period <u>and</u> respond to Mattel's motion in seven days – with two of those days being Good Friday and Easter Sunday. I also suggested as a compromise that Mattel set

1 | the motion for hearing on April 14, 2008, which would allow MGA two weeks to
2 | respond.  Mr. Proctor also refused this offer.
3 |     I declare under penalty of perjury under the laws of the United States that the
4 | foregoing is true and correct.
5 |     Executed this 19th day of March, 2008, in New York, New York.

                                        */s/ Paul M. Eckles*
                                        Paul M. Eckles