DAVIS & GILBERT LLP
Cheryl Plambeck
(cplambeck@dglaw.com)
1740 Broadway
New York, New York 10019
Telephone: (212) 468-4965
Facsimile: (212) 621-0934
Attorneys for Right Management Inc.

FILED
2008 MAR 19 PM 3:23
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)
Consolidated with
Case Nos. CV 04-09059 & CV 05-2727

**DISCOVERY MATTER**

**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order of December 6, 2006]**

RIGHT MANAGEMENT INC.'S OPPOSITION TO MGA'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM THIRD PARTY RIGHT MANAGEMENT CONSULTANTS, INC.

Hearing Date: TBD
Time: TBD

**Phase 1**
Discovery Cut-Off: January 28, 2008
Pre-Trial Conference: May 5, 2008
Trial Date: May 27, 2008

**Preliminary Statement**

MGA's subpoena to Right (the "Subpoena") purports to seek a wide range of documents responsive to twenty different topics. Right does not have documents responsive to the sixteen more narrowly tailored topics. However, MGA included four improper and overbroad requests, intended as catch-alls such that everything that Right may have concerning its work for Mattel would be technically "responsive." Right properly objected to those requests.

Right possesses limited hard copy documents concerning its work for Mattel that may be responsive to MGA's overbroad, overreaching catch-all requests in its Subpoena. However, Right should not be compelled to produce any of them because they are not relevant to this litigation, and, therefore, are not discoverable under Federal Rule of Civil Procedure 25(b)(1).

MGA claims for the first time in this motion that it seeks *only* Right's hard copy documents. Obviously, if MGA has abandoned any request for electronic documents – and it is by no means clear that MGA has done so - the burden on Right would be lessened. However, *any* burden that MGA seeks to impose on Right through this Subpoena – great or small – is necessarily undue, because Right's documents are simply irrelevant to this litigation. MGA's claims concerning the potential relevancy of Right's documents to Phase 1 of this litigation (concerning ownership of the Bratz dolls) strain credulity, and Right understands that discovery in Phase 2 was recently stayed. Even if statistics concerning layoffs from Mattel were relevant, Right does not maintain statistics or information of the type that would allow MGA to draw any conclusion as to how many Mattel employees may have been laid off from which departments, or whether they ever worked on Barbie dolls that may have competed with Bratz. Thus, Right's materials are useless for the very purpose MGA claims they would be relevant.

Right does not have documents in most of the specific categories MGA listed in its Subpoena. Right should not be compelled to produce everything

it *has* simply because it does *not* have what MGA was fishing for when this misguided exercise began.

**Factual Background**

As set forth in the accompanying Declaration of Patrick Reilly ("Reilly Dec."), Right has, over the years, provided career transition services to former employees of Mattel, including individualized career consulting, workshops and seminars on various post-termination financial issues and coaching in connection with their job searches, resumes and interviews. (Reilly Dec., ¶ 2) Typically, Mattel provides Right with only the name, class of employee and contact information for the employee, and whether Right ultimately works with any given individual depends upon that individual's personal choice to use Right's services. (Reilly Dec., ¶ 8) Right does not gather or maintain statistics concerning the departments from which the former Mattel employees came or the products on which they worked at Mattel.

Right retains limited hard copy files concerning its work for Mattel, and gathering all electronic files would be a massive and prohibitively expensive endeavor. (Reilly Dec., ¶ 13) However, we understand from MGA's submissions on this motion that it has abandoned its request for electronic documents for the time being.

The balance of the factual background of this dispute is set forth in Mattel's Opposition to MGA' s Motion To Compel Production of Documents From Third Party Right Management Consultants, Inc. ("Mattel Opposition), at pp. 2-3. Right respectfully refers the Court to the Mattel Opposition for the underlying facts of this matter.

**Argument**

MGA's motion to compel Right to produce documents sought by its overbroad subpoena to Right (the "Subpoena") should be denied for three reasons:

First, MGA's motion is untimely, and MGA failed to serve Right in accordance with the Federal Rules of Civil Procedure. The motion should be denied outright due to MGA's failure to comport with the applicable rules and the terms of the stipulation it reached with Mattel.

Second, Right's materials are not relevant to these proceedings and, therefore, are not discoverable under Federal Rule of Civil Procedure 25(b)(1). Moreover, any burden that MGA seeks to impose on Right through this Subpoena – great or small – is necessarily an undue burden under Federal Rule of Civil Procedure 45, because the material sought by MGA is not relevant. The only arguable relevance Right's materials could possibly have – which Right denies – would relate to Phase 2 of this litigation, not Phase 1, and Phase 2 discovery is currently stayed.

Third, Right's documents contain confidential, personal information concerning former Mattel employees. The documents are irrelevant, and the protections of the Confidentiality Order which MGA cite are inadequate. The protections are not absolute, and Right would be substantially burdened by any contestation of the confidentiality designations by MGA.

Notably, Right is at an unfair disadvantage in the instant motion because MGA chose to rely heavily on information from the motion papers that were improperly and untimely served upon Right. Right is a non-party and has no access to an unredacted copy of MGA's papers. The redacted portions are, therefore, improper *ex parte* communications, insofar as they concern Right, and should not be considered by the Court in deciding MGA's motion against Right.

To the extent Right has documents responsive to *any* of the twenty requests in the Subpoena, they are responsive only to four improperly overbroad requests that seek every shred of paper or piece of data exchanged between Right and Mattel. However, the entire universe of such documents is obviously not relevant to this litigation, and the relevance of all those documents cannot be

established simply by claiming that they may be potentially responsive to MGA's overbroad subpoena.

## I. MGA'S MOTION WAS UNTIMELY AND IMPROPERLY SERVED

MGA did not serve Right by the time stipulated between MGA and Mattel. Nor has MGA ever served or attempted to serve on Right a complete copy of MGA's motion; Right has received only redacted motion papers from MGA. MGA apparently filed this motion with the Court late on March 3, and then purported to "serve" Right via FedEx and e-mail on March 4, 2008. FedEx and e-mail are not authorized methods of service under Federal Rule of Civil Procedure 5(b)(2) because Right never agreed in writing (or otherwise) that such methods of service could be used in lieu of those specifically provided for in Rule 5(b)(2). As such, MGA's purported "service" of its motion was not effective. MGA's motion was, therefore, untimely and improperly made.

### A. Service was Untimely.

It is Right's understanding that all Phase 2 discovery is currently stayed, and that all motions concerning Phase 1 discovery were required to be made pursuant to the order of this Court no later than January 28, 2008. (Plambeck Dec., ¶ 3.) MGA and Mattel entered into stipulations extending MGA's time to make any motion concerning the Right Subpoena until March 3, 2008. MGA apparently filed its motion on March 3, 2008, but Right has not seen what MGA actually filed. (Plambeck Dec., ¶ 11.) MGA did not e-file its papers such that they would be available via ECF and, in any event, Right is a non-party and cannot be served via ECF in this matter. MGA did not even attempt to serve Right until March 4, and then only by defective e-mail service of redacted papers. (Plambeck Dec., ¶ 9.) MGA subsequently sent a redacted copy of the motion via Federal Express on March 4, 2008, which arrived on March 5, 2008. (Plambeck Dec., ¶ 9.) Despite the

defective and belated service, it was MGA's position that Right's response would be due a mere 3 business days later, on Monday, March 10. (Plambeck Dec., ¶ 12.) However, MGA subsequently consented to an extension, making Right's response due March 17. (Plambeck Dec., ¶ 12.)

**B. Service was Improper.**

Service by e-mail or Federal Express is improper absent express written consent. Fed. R. Civ. P. 5(b). Right was not asked to and did not consent to either e-mail or Federal Express service. Pursuant to Federal Rule of Civil Procedure 5(b)(2), service of a pleading may be accomplished by one of the following proper means:

> **Service in General.** A paper is served under this rule by:
>
> **(A)** handing it to the person;
>
> **(B)** leaving it:
>
> **(i)** at the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office; or
>
> **(ii)** if the person has no office or the office is closed, at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there;
>
> **(C)** mailing it to the person's last known address--in which event service is complete upon mailing;
>
> **(D)** leaving it with the court clerk if the person has no known address;
>
> **(E)** sending it by electronic means *if the person consented in writing*--in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served; or
>
> **(F)** delivering it by any other means *that the person consented to in writing*--in which event service is complete when the person making service delivers it to the agency designated to make delivery. (emphasis added).

The Advisory Committee Notes regarding the 2001 amendment explain: "It authorizes service by electronic means or any other means, but only if

consent is obtained from the person served. *The consent must be express, and cannot be implied from conduct.*" (Emphasis added.) In December 2007, the "written consent" requirement for alternative means of service was moved from Rule 5(b)(2)(D) to Rule 5(b)(2)(E-F). Right did not consent to service pursuant to email or facsimile. (Plambeck Dec., ¶ 10.)

The Ninth Circuit has held that service by Federal Express and electronic means, such as facsimile, is insufficient under Rule 5(b). See Magnuson v. Video Yesteryear, 85 F.3d 1424 (9th Cir. 1996) (holding that service by Federal Express and facsimile was invalid); FEDERAL CIVIL PROCEDURE BEFORE TRIAL (Rutter 2007), at 12:84.10 ("Neither fax, e-mail nor overnight courier service is an authorized means of service by the person being served."); see also Audio Enterprises, Inc. v. B & W Loudspeakers of America, 957 F.2d 406, 409 (7th Cir. 1992) (holding that Federal Express does not constitute service "by mail" for Rule 5(b) purposes).

MGA has acted in disregard of the Federal Rules of Civil Procedure and the rights of non-party Right in this matter. MGA has never effected proper service of the instant motion upon Right, and even its defective service was late. MGA's motion should be denied for these reasons alone, without reaching its dubious merits.

## II. MGA'S MOTION TO COMPEL SHOULD BE DENIED BECAUSE IT SEEKS IRRELEVANT MATERIAL AND IMPOSES AN UNDUE BURDEN ON NON-PARTY RIGHT

### A. Irrelevant Material Is Not Discoverable from Nonparties.

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). However, the Court shall

limit the frequency or extent of use of the discovery methods if it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C).

The use of subpoenas to obtain documents and information from non-parties such as Right is governed by Rule 45 of the Federal Rules of Civil Procedure. Pursuant to Fed. R. Civ. P. 45(c)(1), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Where a party fails in this duty, "[t]he issuing court must . . . impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

In assessing whether a subpoena imposes an undue burden, relevance is, of course, a key consideration, even though non-parties such as Right are, of course, not involved in the underlying litigation. Thus, "although irrelevance is not among the enumerated reasons for quashing a subpoena under Rule 45(c)(3), federal courts have incorporated relevance as a factor to be considered when ruling on motions to quash." Anderson v. Abercrombie And Fitch Stores, Inc., Case No. 06cv991-WGU (BLM) 2007 U.S. Dist. LEXIS 47795, *6 (S.D. Cal., July 2, 2007) (granting motion for protective order and for order limiting discovery as to certain documents sought by subpoena upon determination of their irrelevance). This is because where documents sought from a non-party by subpoena are not relevant nor calculated to lead to the discovery of admissible evidence, "then *any* burden

whatsoever imposed upon [a non-party] would be, by definition, undue." Compaq Computer Corp. v. Packard Bell Electronics, Inc., 163 F.R.D. 329, 335-336 (N.D. Cal. 1995).

**B. MGA's Subpoena Improperly Seeks Irrelevant Materials From Right, A Non-Party**

In its Reply to Mattel's opposition to the instant motion, MGA emphasizes how many pages have been produced by *other* parties in this action and how many subpoenas Mattel has served. While these facts are certainly colorful and add dramatic effect to MGA's submissions, they are patently irrelevant to the issue here.

Here, MGA is improperly pressing Right, a non-party, for documents concerning *Mattel* layoffs, apparently in lieu of following proper discovery channels and requesting them *from Mattel.* This is significant for two reasons:

First, if the documents were as important as MGA claims, MGA certainly would have pursued the issue with Mattel. The fact that MGA is seeking them from Right indicates either that MGA failed to even request the documents from Mattel during discovery – belying the claimed importance of the documents to the litigation – or that requests for documents concerning Mattel layoffs over the years were properly objected to as irrelevant.

Second, it is improper to burden a non-party with a subpoena for documents where those documents could be obtained from a party to the action. Pursuant to Fed. R. Civ. P. 45(c), "a party or an attorney responsible for issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." All purportedly material information about laid-off employees contained in the documents demanded by MGA could have been sought from Mattel. That means that MGA did not take the reasonable step of seeking the documents from a party, and the burden MGA seeks

to impose on Right is therefore undue. See Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005) (granting defendant's request to quash subpoena served by plaintiffs on non-party witness where value of the information sought was questionable and much of it could be requested from defendant).

MGA's proffered explanation of its purported need for the Right documents is incoherent. MGA alleges that Mattel laid off personnel in response to the growing popularity of the Bratz dolls, and that information concerning the numbers and titles would "shed light on the extent of Mattel's inner turmoil." If MGA were entitled to Right's documents pursuant to the overbroad Subpoena – which it is not – MGA would be surely disappointed.

As Right has explained to MGA's counsel, Right does not have documents that would allow any inferences or conclusions to be drawn concerning any alleged connection between layoffs at Mattel and Mattel's commencement of any action against MGA. Right does not keep statistical information of the type MGA is looking for. Right has, of course, some lists of former Mattel employees whom Right has assisted through the career transition process. (Reilly Dec., ¶ 7) However, as Right's documents do not indicate the products on which former Mattel employees were working, and only indicate the departments from whence a relative few of the former Mattel employees who have passed through Right's doors came, no proper conclusions may be drawn as to any relationship between an increase in the market share for Bratz dolls and layoffs at Mattel. The Subpoena is, quite simply, a fishing expedition.

**C. MGA's Subpoena Seeks Information Confidential To Right, Mattel and Former Mattel Employees**

The hard copy documents that Right possesses concerning work it has performed for Mattel include confidential documents prepared by Right for Mattel, confidential documents prepared by Mattel and provided to Right, and confidential


information concerning former Mattel employees. Neither Right nor the former Mattel employees Right has served are parties to this action. MGA has asserted that the existence of a Confidentiality Order is a panacea for all concerns about disclosure of confidential information, but that is simply not true. Right insisted that, if any documents would be provided, it would be without personally identifying information, and MGA grudgingly agreed. (Plambeck Dec., ¶ 7) However, as Mattel points out, MGA did not agree that it would never ask for this information or that it would not use any Right documents in any non-confidential setting. Nor has MGA agreed that it will not contest any of Right's confidentiality designations. Without such assurances, the mere existence of the Confidentiality Order does not sufficiently mitigate Right's genuine concerns about the confidentiality of its records and those of its clients.

**Conclusion**

For the reasons set forth above, Right respectfully requests that the Discovery Master deny MGA's Motion to Compel Production of Documents from non-party Right.

DATED: March 19, 2008

DAVIS & GILBERT, LLP

By ____________________
Cheryl Plambeck
Attorneys for Right Management Inc.