Patricia Glaser, State Bar No. 55668
Alisa Morgenthaler Lever, State Bar No. 146940
Scott E. Gizer, State Bar No. 221962
CHRISTENSEN, GLASER, FINK, JACOBS,
  WEIL & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

Attorneys for Non-Party Christensen, Glaser, Fink,
Jacobs, Weil & Shapiro, LLP

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>                 Plaintiff,<br><br>         v.<br><br>MATTEL, INC., a Delaware corporation<br><br>                 Defendant.<br><br>――――――――――――――――――<br><br>AND CONSOLIDATED ACTIONS<br><br>――――――――――――――――――  | CASE NO. CV 04-09049 SGL (RNBx)<br><br>Consolidated with Case Nos.<br>CV 04-9059 & CV 05-2727<br><br>**DISCOVERY MATTER**<br><br>**DECLARATION OF SCOTT E. GIZER IN SUPPORT OF CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL DEPOSITION AND PRODUCTION OF DOCUMENTS OF CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP**<br><br>[Filed concurrently with Christensen Glaser's Memorandum of Points and Authorities in Opposition to Motion, Response to Separate Statement re Document Requests, and Response to Separate Statement re Document Requests]<br><br>Date:  April 4, 2008<br>Time:  TBA<br>Place:  Telephonic |

LAW OFFICES
CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

621663

# DECLARATION OF SCOTT E. GIZER

I, Scott E. Gizer, declare and state as follows:

1.     I am an attorney at law duly licensed to practice before all courts of the State of California and am an Attorney with the law firm of Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP , ("Christensen Glaser") attorneys of record herein for Non-Party Christensen Glaser.  The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

2.     Christensen Glaser represented MGA in this action from the filing of the action, in April 2004, until October 2007.  Christensen Glaser also represented MGA in a variety of other matters dating back to 1999.  Through the course of its representation of MGA, Christensen Glaser has amassed millions of pages of documents related to MGA, Bratz and Carter Bryant.  While Christensen Glaser is no longer trial counsel of record in this case, Christensen Glaser continues to provide legal advice to MGA and Isaac Larian in connection with this action, and still represents them in other matters.

3.     After Mattel served its subpoena on Christensen Glaser, we immediately conferred with Christopher Price of Quinn, Emmanuel, Urquhart, Oliver & Hedges ("Quinn Emanuel"), Mattel's counsel, to discuss whether Mattel's attempt to depose Christensen Glaser was proper.  Mr. Price's only justification for the subpoena was that in Judge Larson's January 7, 2008 order, he purportedly authorized Mattel to take an unrestricted deposition of Christensen Glaser.  A true and correct copy of Mattel's subpoena is attached hereto as Exhibit "A."

4.     Since Judge Larson's order did not support the position taken by Mattel, on January 23, 2008, I contacted Mr. Price to further discuss Judge Larson's order.  I also sought to discuss Mattel's subpoena further because it failed to comply with the *Shelton* rule.  I informed Mr. Price that all information sought was either available from another source or privileged, and therefore, the subpoena was improper.  Mr.

LAW OFFICES
CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

621663

2

CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1  Price did not dispute my position, or otherwise discuss Mattel's position, in this

2  telephone conversation.  Mr. Price was more interested in whether Christensen Glaser

3  would agree to a deposition date.  I informed Mr. Price that Christensen Glaser would

4  not be appearing for deposition, and that I would be sending a letter along with

5  objections to Mattel's subpoena.

6       5.    On January 24, 2008, I sent a letter to Mattel's counsel reiterating that

7  Mattel's subpoena did not comply with the *Shelton* rule, and that Mattel's subpoena

8  appeared to violate Judge Larson's January 7, 2008 order.  A true and correct copy of

9  this letter is attached to Juan Pablo Alban's Declaration as Exhibit 15.  At the

10  conclusion of the letter, I invited Quinn Emanuel to meet and confer.   Quinn

11  Emanuel did not respond to this letter.

12       6.    I also caused to be served timely objections to Mattel's subpoena on

13  January 28, 2008.  A true and correct copy of Christensen Glaser's objections is

14  attached to Juan Pablo Alban's Declaration as Exhibit 14.  Quinn Emanuel did not

15  respond to these objections.

16       7.    On January 28, 2008 Mattel filed an ex parte application in Judge

17  Larson's Court requesting leave to take third party depositions, including Christensen

18  Glaser's deposition, after the discovery cut-off date.  The hearing date for the ex parte

19  was set for February 4, 2008.  But no where in Mattel's ex parte application did it

20  address the merits of its subpoena to Christensen Glaser.  A true and correct copy of

21  Mattel's Ex Parte Application is attached hereto as Exhibit "B."

22       8.    Christensen Glaser was not even given notice of Mattel's ex parte

23  application.  The only reason we became aware of the ex parte hearing was that Judge

24  Larson ordered all third parties affected by it to be present.  A true and correct copy of

25  Judge Larson's minute order is attached hereto as Exhibit "C."

26       9.    At the February 4, 2008 hearing, Judge Larson addressed his January 7,

27  2008 order granting Mattel leave to take additional third party depositions.  Judge

28  Larson was careful to state on several occasions that his January 7, 2008 order only

621663

3

1  granted Mattel leave to take the depositions, and did not touch upon whether the

2  discovery requests were proper.  Any challenges to the appropriateness of the

3  subpoenas were to be brought before Judge Infante.  A true and correct copy of the

4  relevant portions of the February 4, 2008 hearing transcript is attached hereto as

5  Exhibit "D."

6          10.     At the conclusion of the hearing, Judge Larson took comments and

7  questions from all attorneys representing non-parties.  I asked Judge Larson to clarify

8  whether his January 7, 2008 order was meant to grant Mattel leave to serve

9  Christensen Glaser with a limited subpoena regarding the Carter Bryant Agreement

10  sent by Victoria O'Conner.  Judge Larson stated that he would review his prior order

11  and inform the parties of his decision.  Importantly, at no time during the hearing, or

12  at any other point that day, did I meet and confer with Quinn Emanuel about the

13  subpoena.

14          11.     Contrary to Mattel's assertions, Christensen Glaser did not receive a

15  February 27, 2008 letter, requesting a meeting of counsel, prior to the filing of this

16  motion.  The fax cover sheet and confirmation sheet for this February 27, 2008 letter

17  clearly shows that the letter was faxed to the another location.  The fax cover sheet

18  lists Christensen Glaser's telephone number as (310) 248-3830 and fax number as

19  (310) 860-0363.  It is unclear what entity these numbers relate to, but Christensen

20  Glaser's correct phone number is (310) 553-3000 and correct fax number is (310)

21  556-2920.

22          12.     After being served with Mattel's Motion on February 29, 2008, I advised

23  Mr. Alban that we never received the February 27, 2008 letter as Mattel claimed in its

24  Motion.  Thus, I requested that Mattel withdraw its Motion because it failed to meet

25  and confer as required.

26          13.     On March 1, 2008, after reviewing the copy of the February 27, 2008

27  letter attached to Mr. Alban's declaration in support of the Motion, I informed Mr.

28  Alban that the February 27, 2008 letter was faxed to the wrong location and reiterated

621663                                                  4

LAW OFFICES
CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1   its request that Mattel withdraw the Motion so that the parties could meet and confer

2   as required.   Mattel refused to withdraw its improper Motion.  A true and correct

3   copy of my March 1, 2008 e-mail to Juan Pablo Alban and his response is attached

4   hereto as Exhibit "E."

5        14.    On March 4, 2008, we finally received a mail copy of the February 27,

6   2008 letter.  The envelope for this letter was postmarked March 3, 2008.   A true and

7   correct copy of Quinn Emanuel's February 27, 2008 letter and post-marked envelope

8   are attached hereto as Exhibit "F."

9        15.    Subsequent to Mattel's filing of this motion, I met and conferred with

10  Mr. Alban.  I again explained that all documents and information in Christensen

11  Glaser's possession were either obtained from MGA or other parties, making the

12  information available from other sources, and to the extent the documents and

13  information was not available from other sources, it constituted Christensen Glaser's

14  work product.  Lastly, I pointed out that Mattel already conducted exhaustive

15  discovery on the topics and requests covered by the subpoena.

16        16.    In an attempt to resolve the dispute informally, I offered to provide a

17  declaration stating that all documents and information in Christensen Glaser's

18  possession were either available from another source or privileged.  Quinn Emanuel

19  would not agree to this offer.

20        I declare under penalty of perjury under the laws of the United States of

21  America that the foregoing is true and correct.

22        Executed on March 21, 2008, at Los Angeles, California.

23

24

25                           Scott E. Gizer

26

27

28

CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

EXHIBIT A

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

CENTRAL     DISTRICT OF CALIFORNIA

CARTER BRYANT, an individual,

**SUBPOENA IN A CIVIL CASE**

V.

MATTEL, INC., a Delaware corporation,

Case Number:[1]  CV 04-9049 SGL (RNBx)

Consolidated with cases CV 49-9059 and CV50-2727

TO: Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP
10250 Constellation Boulevard -19th Floor
Los Angeles, CA 90067

[ ]   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

[X]   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. Testimony will be recorded by stenographer and videographer. Topics of testimony are set forth in Exhibit B.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges LLP<br>865 S. Figueroa St, 10th Fl, Los Angeles, CA 90017 | January 28, 2008<br>9:00 am |

[x]   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT B

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges LLP<br>865 S. Figueroa St, 10th Fl, Los Angeles, CA 90017 | January 28, 2008 |

[ ]   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Mattel, Inc. | January 18, 2008 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Jon D. Corey, Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa Street, 10th Floor, Los Angeles, CA  90017-2543  (213)  443-3000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

AO88  (Rev.  12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE                                    SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena·shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested.  If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved.  A receiving party may promptly present the information to the court under seal for a determination of the claim.  If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it.   The person who produced the information must preserve the information until the claim is resolved.

e) CONTEMPT.  Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued.  An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

ATTACHMENT A

Documents To Be Produced

I.   DEFINITIONS.

1.   "YOU" or "YOUR" means Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control, including but not limited to Patricia Glaser, Esq.

2.   "BRYANT" means Carter Bryant and any of his current or former agents, representatives, employees, attorneys, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.   "MGA" means MGA Entertainment Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control. Without limiting the generality of the foregoing, "MGA" includes "LARIAN."

4.   "MATTEL" means Mattel, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

5.   "ISAAC LARIAN" means Isaac Larian and any of his current or former agents, representatives, employees, attorneys, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control. Without limiting the generality of the foregoing, "ISAAC LARIAN" includes any trusts held in the name of or for the benefit of Isaac Larian or of which Isaac Larian is a trustee.

6.     "FARHAD LARIAN" means Farhad Larian and any of his current or former agents, representatives, employees, attorneys, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.  Without limiting the generality of the foregoing, "FARHAD LARIAN" includes any trusts held in the name of or for the benefit of Farhad Larian or of which Farhad Larian is a trustee.

7.     "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or DESIGN or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.  Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the subpoena requests.

8.     "BRATZ WORK" or "BRATZ WORKS" means any representation of BRATZ, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including any DESIGN REFERRING OR RELATING TO BRATZ, in whole or in part.

9.     "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

10.     "BRYANT/MGA AGREEMENT" means the agreement related to BRATZ between MGA and BRYANT titled "MGA Consulting Agreement,"

dated as of September 18, 2000, and purportedly executed on or about October 4, 2000.

11.    "INVENTIONS AGREEMENT" means the Confidential Information and Inventions Agreement between MATTEL and BRYANT signed by BRYANT on or about January 4, 1999 and produced in this action by MATTEL as M0001596, or any other version of such January 4, 1999 agreement.

12.    "ACTION" means this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel, Inc. v. Bryant*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

13.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

14.    "DOCUMENT" means any "writing" or "recording" as defined in Federal Rule of Civil Procedure 34 or Federal Rule of Evidence 1001 and includes any tangible thing upon which any expression, communication or representation has been recorded, including but not limited to correspondence, e-mails, preliminary, intermediate or final drafts, memoranda, notes, reports of telephone or other oral conversations, audio or videotape recordings, computer tape, computer disk or storage media, computer printout, CD-ROM disk, optical storage disk, other electronic medium, and all other writings and recordings of any kind.

15.    "REFER OR RELATE TO" or "REFERRING OR RELATING TO" means reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing or indicating in any way.

16.    "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

17.     Wherever used herein, the singular shall include the plural and the plural shall include the singular.

II.     INSTRUCTIONS.

A.      YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

B.      If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such DOCUMENTS identify each DOCUMENT and provide the following information:

1.      The privilege or protection that you claim precludes disclosure;

2.      The subject matter of the DOCUMENT (without revealing the content as to which the privilege or protection is claimed);

3.      The date, author(s), addressee(s); and

4.      Any additional facts on which YOU would base YOUR claim of privilege or protection.

C.      YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

D.      YOU are required to identify the source of all DOCUMENTS produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

E.      Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

III.   <u>DOCUMENTS TO BE PRODUCED.</u>

1.     ALL DOCUMENTS generated, created, prepared or transmitted in whole or part prior to April 27, 2004 that REFER OR RELATE to the BRYANT/MGA AGREEMENT, including without limitation such agreement (or version thereof) that Victoria O'Connor of MGA testified she sent YOU in 2000 and including without limitation any iteration, version or draft thereof, and all COMMUNICATIONS with BRYANT relating thereto.

2.     To the extent not produced in response to Request No. 1, all contracts or agreements, or proposed, requested or offered contracts or agreements, between MGA and BRYANT and all other DOCUMENTS generated, created, prepared or transmitted in whole or part prior to April 27, 2004 that REFER OR RELATE thereto.

3.     All DOCUMENTS generated, created, prepared or transmitted in whole or part prior to April 27, 2004 that REFER OR RELATE TO BRYANT's employment by, or any contracts or agreements with, MATTEL, including without limitation to the INVENTIONS AGREEMENT, and all COMMUNICATIONS with BRYANT relating thereto.

4.     All DOCUMENTS generated, created, prepared or transmitted in whole or part prior to April 27, 2004 that REFER OR RELATE TO BRATZ or any BRATZ WORK and REFER OR RELATE TO the time period prior to December 31, 2001.

5.     To the extent not produced in response to any other Request, all DOCUMENTS generated, created, prepared or transmitted in whole or part prior to April 27, 2004 that REFER OR RELATE TO BRYANT and that REFER OR RELATE TO the time period prior to December 31, 2001.

6.     All DOCUMENTS that were generated, created, prepared or transmitted in whole or part prior to April 27, 2004 and that REFER OR RELATE TO the origins, reduction to practice, conception, creation or development, or the timing of conception, creation, development or reduction to practice, of BRATZ or any BRATZ WORK, including without limitation any COMMUNICATIONS between YOU and BRYANT relating thereto and any investigations, analysis or inquiry performed by any PERSON in connection therewith.

ATTACHMENT A

7.     All opinion letters provided, transmitted or otherwise shared with MGA prior to April 27, 2004 REFERRING OR RELATING TO BRYANT, the origins, reduction to practice, conception or creation of BRATZ or any BRATZ WORK or the ownership of any right, title or interest in or to BRATZ or any BRATZ WORK.

8.     All contracts or agreements between MATTEL and any PERSON other than BRYANT that REFERS OR RELATES TO the ownership, or putative or potential ownership, of inventions, designs, works or ideas and that YOU sent or transmitted to, received from, or shared with MGA or that MGA sent or transmitted to, received from, or shared with YOU, prior to April 27, 2004.

9.     All DOCUMENTS, including but not limited to opinion letters, that REFER OR RELATE TO the ownership, or putative or potential, ownership of inventions, designs, works or ideas created, made, conceived or reduced to practice by BRYANT while employed by MATTEL.

10.    All COMMUNICATIONS transmitted by YOU or received by YOU prior to April 27, 2004 REFERRING OR RELATING TO the ownership, or putative or potential ownership, of inventions, designs, works or ideas created, conceived or reduced to practice by BRYANT while he was employed by MATTEL.

11.    All    DOCUMENTS,    including    without    limitation COMMUNICATIONS between YOU and any BRYANT, REFERRING OR RELATING TO statements, assertions, claims or suggestions that BRYANT conceived, created, worked on, reduced to practice, modified or improved BRATZ or any BRATZ WORK between January 4, 1999 and October 20, 2000, including without limitation any denials or refutations, whether in whole or in part, of any such statements, assertions, claims or suggestions.

12.    All COMMUNICATIONS REFERRING OR RELATING TO BRYANT, BRATZ, any BRATZ WORK, MGA, FARHAD LARIAN, MATTEL or THIS ACTION to or from Veronica Marlow, Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), Mercedeh Ward, Elise Cloonan, Sarah Halpern, Jesse Ramirez and/or Anna Rhee.

13.    All COMMUNICATIONS REFERRING OR RELATING TO BRYANT, BRATZ, any BRATZ WORK, MGA, FARHAD LARIAN, MATTEL or THIS ACTION to or from Ana Cabrera, Beatriz Morales and/or Maria Salazar.

14.     To the extent not produced in response to any other Request, all COMMUNICATIONS REFERRING OR RELATING TO BRYANT, BRATZ, any BRATZ WORK, MGA, FARHAD LARIAN, MATTEL or THIS ACTION to or from any MATTEL employee while such person was employed by MATTEL.

15.     All DOCUMENTS that REFER OR RELATE TO any indemnification that BRYANT or FARHAD LARIAN has sought, proposed, requested or obtained from MGA or that MGA has sought, proposed, requested or obtained from BRYANT or FARHAD LARIAN.

16.     Any fee or indemnification agreements REFERRING OR RELATING TO this ACTION or any MATTEL claim, including without limitation by or with BRYANT, MGA or FARHAD LARIAN, including but not limited to all drafts thereof and COMMUNICATIONS RELATED thereto.

17.     All DOCUMENTS that FARHAD LARIAN showed MATTEL at any time since January 1, 1999, including all such DOCUMENTS that he showed MATTEL in connection with this ACTION, including without limitation each of the following:

(a)     The MGA email dated November 16, 2000 that summarizes "last week's meeting" with K-Mart and references BRATZ.

(b)     FARHAD LARIAN's email to ISAAC LARIAN dated November 22, 2000 mentioning prices for a "Bratz Fashion Pack."

(c)     The November 22, 2000 chart describing changes to the Bratz Doll Assortment and Bratz Holiday doll.

(d)     FARHAD LARIAN's August 19, 2005 email to Scott Bachrach (at scottbac@aol.com) inquiring about the first contact between Mr. Bachrach and MGA concerning BRATZ, as well associated COMMUNICATIONS.

(e)     FARHAD LARIAN's August 22, 2005 email to Colleen O'Higgins asking about BRYANT and BRATZ, as well as associated COMMUNICATIONS.

(f)     The COMMUNICATIONS with Bin Ton, Michael Lingg and Jennifer Maurus regarding BRATZ, including without limitation those relating to

actual and/or draft declaration(s) by the foregoing regarding BRATZ.

(g)     The December 21, 2000 email from ISAAC LARIAN to Paul Warner, with copies to Dennis Medici and FARHAD LARIAN, that mentions TRU purchases for products including BRATZ.

(h)     FARHAD LARIAN's August 1, 2005 email to Victoria O'Connor regarding BRATZ licensees, as well as associated COMMUNICATIONS.

(i)     FARHAD LARIAN's August 1, 2005 email chain with employees at dng.com asking about BRATZ, as well as associated COMMUNICATIONS.

(j)     The August 7, 2005 email from Mark Fragel responding to questions regarding BRATZ materials shown to Paulette Prim in November 2000.

(k)     FARHAD LARIAN's May 24, 2000 email to ISAAC LARIAN that states ISAAC LARIAN had instructed FARHAD LARIAN to withhold original documents that had been located in connection with the Fireman's Fund case and "to tell him [an MGA attorney] we could not find the originals."

(l)     The document entitled "Analysis of Design, Packaging & Mock-Up Expense for 6 Months Ending 6/30/99 and 6/30/00" attached to the August 11, 2000 email from Dennis Medici to ISAAC LARIAN and FARHAD LARIAN.

(m)     The August 14, 2000 ISAAC LARIAN email to Medici, Warner and FARHAD LARIAN that references cost tracking software used by MATTEL that ISAAC LARIAN says he learned about from interviewing MATTEL employees.

(n)     The emails between ISAAC LARIAN and Jahangir Makabi requesting that Mr. Makabi sign an affidavit that he lost his original stock certificates despite Mr. Makabi's protestation that he never had any such certificates, as well as associated COMMUNICATIONS.

(o)     The January 31, 2001 email from ISAAC LARIAN to All in Marketing and Product Development, Medici and Didi Brown asserting that he (ISAAC LARIAN) had been purportedly diagnosed with "Alzheimer's" and denying in substance that he ever said anything that cannot be confirmed by a writing.

(p)     The November 15, 2000 Paula Treantafelles email to FARHAD LARIAN that says MGA will be selling a BRATZ backpack and states that a design for it is attached.

18.     All DOCUMENTS that REFER OR RELATE to any surveillance or recording, including without limitation any tape or video recording, made by or at the direction of YOU or MGA of any officer, director or employee of MATTEL or MATTEL's counsel (excluding recordings made by duly authorized Court reporters of sworn testimony taken in THIS ACTION).

19.     All DOCUMENTS RELATING TO the payment, offering or promising of money or anything of value by MGA and/or YOU to any PERSON who was at the time employed by or worked for MATTEL.

20.     All DOCUMENTS RELATING TO the payment, offering or promising of money or anything of value by MGA to FARHAD LARIAN (excluding any gifts with a value of less than $500) at any time since January 1, 1999.

21.     All DOCUMENTS REFERRING OR RELATING TO the destruction or loss of any DOCUMENT sought by or the subject of Request Nos. 1 through 20.

22.     Any instruction or COMMUNICATION from any PERSON, including without limitation BRYANT, MGA or FARHAD LARIAN, with respect to the retention, preservation, collection, search, transmittal, transfer or destruction of any DOCUMENT sought by or the subject of Request Nos. 1 through 20.

ATTACHMENT A

# EXHIBIT B

Attachment B

Topics of Testimony

## I.     DEFINITIONS.

1.     "YOU" or "YOUR" means Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control, including but not limited to Patricia Glaser, Esq.

2.     "BRYANT" means Carter Bryant and any of his current or former agents, representatives, employees, attorneys, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.     "MGA" means MGA Entertainment Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.  Without limiting the generality of the foregoing, "MGA" includes "LARIAN."

4.     "MATTEL" means Mattel, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

5.     "ISAAC LARIAN" means Isaac Larian and any of his current or former agents, representatives, employees, attorneys, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.  Without limiting the generality of the foregoing, "ISAAC LARIAN" includes any trusts held in the name of or for the benefit of Isaac Larian or of which Isaac Larian is a trustee.

6.     "FARHAD LARIAN" means Farhad Larian and any of his current or former agents, representatives, employees, attorneys, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.  Without limiting the generality of the foregoing,

"FARHAD LARIAN" includes any trusts held in the name of or for the benefit of Farhad Larian or of which Farhad Larian is a trustee.

7.    "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. As used herein, "product, doll or DESIGN or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith. Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the subpoena requests.

8.    "BRATZ WORK" or "BRATZ WORKS" means any representation of BRATZ, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including any DESIGN REFERRING OR RELATING TO BRATZ, in whole or in part.

9.    "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

10.    "BRYANT/MGA AGREEMENT" means the agreement related to BRATZ between MGA and BRYANT titled "MGA Consulting Agreement," dated as of September 18, 2000, and purportedly executed on or about October 4, 2000.

11.    "INVENTIONS AGREEMENT" means the Confidential Information and Inventions Agreement between MATTEL and BRYANT signed

by BRYANT on or about January 4, 1999 and produced in this action by MATTEL as M0001596, or any other version of such January 4, 1999 agreement.

12.    "ACTION" means this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel, Inc. v. Bryant*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

13.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

14.    "DOCUMENT" means any "writing" or "recording" as defined in Federal Rule of Civil Procedure 34 or Federal Rule of Evidence 1001 and includes any tangible thing upon which any expression, communication or representation has been recorded, including but not limited to correspondence, e-mails, preliminary, intermediate or final drafts, memoranda, notes, reports of telephone or other oral conversations, audio or videotape recordings, computer tape, computer disk or storage media, computer printout, CD-ROM disk, optical storage disk, other electronic medium, and all other writings and recordings of any kind.

15.    "REFER OR RELATE TO" or "REFERRING OR RELATING TO" means reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing or indicating in any way.

16.    "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

17.    Wherever used herein, the singular shall include the plural and the plural shall include the singular.

II.   SPECIFIC TOPICS

1.   Any contract or agreement between MGA and BRYANT, amendments thereto, drafts thereof, and COMMUNICATIONS related thereto.

2.   Any proposed, requested or offered contracts or agreements between MGA or ISAAC LARIAN, on one hand, and BRYANT, on the other hand; drafts thereof; and COMMUNICATIONS related thereto.

3.   The origins, reduction to practice, conception, creation or development, or the timing of conception, creation, development or reduction to practice of BRATZ and BRATZ WORK and COMMUNICATIONS related thereto.

4.   Opinion letters provided, transmitted or otherwise shared with MGA prior to April 27, 2004 REFERRING OR RELATING TO BRYANT, the origins, reduction to practice, conception or creation of BRATZ or any BRATZ WORK or the ownership of any right, title or interest in or to BRATZ or any BRATZ WORK.

5.   Contracts or agreements between MATTEL and any PERSON other than BRYANT that REFERS OR RELATES TO the ownership, or putative or potential ownership, of inventions, designs, works or ideas that you received, reviewed or transmitted prior to April 27, 2004.

6.   Opinion letters or other DOCUMENTS that REFER OR RELATE TO the ownership, or putative or potential, ownership of inventions, designs, works or ideas created, made, conceived or reduced to practice by BRYANT while employed by MATTEL.

7.   The ownership, or putative or potential ownership, of inventions, designs, works or ideas created, conceived or reduced to practice by BRYANT while he was employed by MATTEL.

8.   The DOCUMENTS that FARHAD LARIAN showed to MATTEL.

9.   COMMUNICATIONS between MGA OR YOU, on the one hand, and any MATTEL employee.

10.   Any surveillance or recording, including without limitation any tape or video recording, made by or at the direction of YOU or MGA of any officer, director or employee of MATTEL or MATTEL's counsel (excluding recordings