QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |
| vs. | **DISCOVERY MATTER** |
| MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]** |
| Defendant. | REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL MGA AND CARTER BRYANT TO RETURN PRIVILEGED DOCUMENT AND FOR PROTECTIVE ORDER |
| AND CONSOLIDATED ACTIONS | Hearing Date:      T.B.D.<br>Time:              T.B.D.<br>Place:             T.B.D. |

07209/2442089.1

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 2

I.      DEFENDANTS CONCEDE THAT THEY VIOLATED THE FEDERAL RULES OF CIVIL PROCEDURE AND THE PROTECTIVE ORDER ......................................................................................... 2

II.     MATTEL DID NOT WAIVE THE ATTORNEY-CLIENT PRIVILEGE OR WORK PRODUCT DOCTRINE ......................................... 5

        A.      Production of the Disputed Entry Was Inadvertent ................................ 5

                1.      The Alger Declaration Establishes Inadvertence ......................... 5

                2.      The Discovery Master's July 10, 2007 Order Does Not Support a Finding of Waiver ........................................................ 6

        B.      Mattel Did Not Waive Any Privilege at the Depositions of Alan Kaye and Richard de Anda ..................................................................... 8

III.    THE DISPUTED ENTRY IS PRIVILEGED ................................................. 10

        A.      The Disputed Entry is Protected by the Attorney-Client Privilege ...... 10

        B.      The Entry is Protected by the Work Product Doctrine .......................... 12

CONCLUSION ...................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

## Cases

Abel v. JBC Legal Group, P.C.,
   2005 WL 3839309 (N.D. Cal. Oct. 21, 2005) ............................................ 14

Alldread v. City of Grenada,
   988 F.2d 1425 (5th Cir. 1993) ......................................................... 5, 6

Eureka Financial Corp. v. Hartford Accident and Indemnity Co.,
   136 F.R.D. 179 (E.D. Cal. 1991) ....................................................... 7, 8

First Chicago Int'l v. United Exch. Co.,
   125 F.R.D. 55 (S.D.N.Y. 1989) .......................................................... 11

Gomez v. Vernon,
   255 F.3d 1118 (9th Cir. 2001) ............................................................ 4

In re Grand Jury Investigation,
   974 F.2d 1068 (9th Cir. 1992) ........................................................... 10

In re Grand Jury Subpoena,
   282 F.3d 156 (2d Cir. 2002) ............................................................. 13

Jackson v. County of Sacramento,
   175 F.R.D. 653 (E.D. Cal. 1997) ........................................................ 14

In re M & L Bus. Mach. Co., Inc.,
   161 B.R. 689 (D. Colo. 1993) ........................................................... 12

Martin v. Department of Justice,
   488 F.3d 446 (D.C. Cir. 2007) .......................................................... 13

Palazzetti Import/Export, Inc. v. Morson,
   2000 WL 1015921 (S.D.N.Y. 2000) ...................................................... 10

Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.,
   1997 WL 736726 (S.D.N.Y. Nov. 26, 1997) .............................................. 7

Real v. Cont'l Group, Inc.,
   116 F.R.D. 211 (N.D. Cal. 1986) ........................................................ 11

SEC v. Cassano,
   189 F.R.D. 83 (S.D.N.Y. 1999) ........................................................... 7

The Diversified Group, Inc. v. Daugerdas,
   304 F. Supp. 2d 507 (S.D.N.Y. 2003) ................................................... 10

United States v. City of Torrance,
   163 F.R.D. 590 (C.D. Cal. 1995) ........................................................ 14

07209/2442089.1

United States v. Kovel,
    296 F.2d 918 (2d Cir. 1961) .................................................................................. 11

**Statutes**

Fed. R. Civ. P.
    Rule 26 .................................................................................................................. 4, 10
    Rule 26(b)(5)(B) ...................................................................................................... 3

MATTEL'S REPLY ISO MTC RETURN OF PRIVILEGED DOC. & FOR PROTECTIVE ORDER

1

### Preliminary Statement

2          Defendants admit to conduct that violates the <u>Federal Rules of Civil</u>
3   <u>Procedure</u> and the Stipulated Protective Order.  After Mattel informed them that the
4   unredacted entry in document M 0074372 (the "disputed entry") had been
5   inadvertently produced and was protected by the attorney-client privilege and work
6   product doctrine, Defendants were <u>required</u> to (1) return and/or destroy all copies of
7   M 0074372 containing the disputed entry, and (2) not use it for any purpose.  If they
8   disagreed with Mattel's assertion of privilege, <u>Defendants had the obligation to seek</u>
9   <u>relief from the Court</u> – which they did not do.

10          In response to Mattel's request for return of the document so it could be
11   properly redacted, Bryant "declined" to return the document – but promised not to
12   use it until its status had been resolved.  MGA promised to return or destroy all
13   copies of the document.  Thereafter, MGA and Bryant broke their word and used the
14   disputed entry at deposition.  Their only explanation is that they disputed Mattel's
15   claim of privilege and, apparently, they did not know any better.  This is no
16   justification.  The obligations imposed by <u>Rule</u> 26 and the Stipulated Protective
17   Order are mandatory, not discretionary, and they are not postponed until the merits
18   of the privilege claim are resolved.

19          Moreover, Mattel's request that Defendants return or destroy all copies
20   of the disputed entry was appropriate.  Defendants' argument that the disclosure was
21   intentional is unsupported by the law and facts.  The entry was identified as
22   privileged, along with one other on the same page, and ordered redacted.  The
23   person responsible for carrying out those instructions, however, only redacted one
24   entry.

25          Defendants' argument that Mattel waived the privilege by purportedly
26   failing to object to its use at deposition also fails.  Defendants deposed Alan Kaye
27   after Mattel notified them that the disputed entry had been inadvertently produced
28   and was protected by the attorney-client privilege and work-product doctrine.

07209/2442089.1

1   Defendants included the document containing the disputed entry in a 90-page
2   exhibit they introduced at Mr. Kaye's deposition, but the entry itself was never
3   discussed.  Further, by the time Defendants deposed Richard de Anda, Mattel had
4   demanded the return or destruction of the disputed entry five times and Defendants
5   had agreed not to use the document.  Under these circumstances, the purported
6   failure of Mattel attorneys who had not been involved in the parties' discussions
7   about the disputed entry to recognize MGA's violation at Mr. de Anda's deposition
8   and correct MGA's misbehavior on the spot is not a waiver.  To find otherwise
9   would reward Defendants' violation of Rule 26 and the Protective Order and
10   encourage gamesmanship over claims of privilege.

11          Finally, Defendants contend that the disputed entry is not protected by
12   the attorney-client privilege or the work product doctrine.  As the memorialization
13   of a communication between a Mattel attorney and a Mattel employee regarding a
14   pending case, the disputed entry is protected by both.

15
16                              **Argument**
17   **I.    DEFENDANTS CONCEDE THAT THEY VIOLATED THE FEDERAL**
18         **RULES OF CIVIL PROCEDURE AND THE PROTECTIVE ORDER**

19          By conceding that they failed to return and destroy the inadvertently
20   produced document and used it to question witnesses at deposition, Defendants
21   admit to conduct that violates the Federal Rules of Civil Procedure, the Court's
22   Protective Order, and governing Ninth Circuit case law.

23          When Mattel requested the return and/or destruction of the disputed
24   entry, Bryant "declined" to do so but assured Mattel that he would not disseminate
25   the disputed entry "pending Judge Infante's ruling on its status."[1]  MGA, meanwhile,

26

27   [1]   Letter from Michael Page to Timothy Alger, dated June 25, 2007, Declaration
28   of Timothy L. Alger ("Alger Dec."), Exh. 4 (emphasis added).  All Exhibits are to
     the Alger Declaration unless otherwise stated.

assured Mattel that it would return documents containing the disputed entry and destroy all copies.[2] As their joint opposition concedes, however, both parties broke their word and in violation of the Protective Order, used the disputed entry to ambush Mattel, its witnesses, and counsel at deposition.

There is no justification for their actions. Defendants attempt to obscure their misconduct by pointing fingers at Mattel, and asserting that Mattel should have done more to stop their violations. Mattel did, in fact, repeatedly assert its right to the return of the document. But that is not the real issue here. There is no dispute that Defendants were informed by Mattel that the 7/22/03 entry in the security log was privileged, yet they continued to use that privileged material without the permission of the Court.[3]

Defendants cannot and do not dispute that they were required to return and/or destroy all copies of the disputed entry and refrain from using it. Pursuant to Fed. R. Civ. P. 26(b)(5)(B), after receiving notice that privileged information was inadvertently produced, the receiving party "must promptly return, sequester, or destroy the specified information" and "must not use or disclose the information until the claim is resolved." And, pursuant to the Stipulated Protective Order in this

---

[2]   Letter from David Hurwitz to Timothy Alger, dated July 6, 2007, Alger Dec., Exh. 7.

[3]   Defendants' baseless assertion that Mattel intentionally waived privilege is particularly ironic when compared to their contention that they did not know any better because they were new to the case. (See Mumford Dec. ¶ 10.) Simply because MGA's counsel could not readily find the replacement copy of the document, MGA now contends that Mattel should have known that MGA would be using the document at the de Anda deposition. (Opp. 6:1-3.) And because Mattel did not see and immediately respond to a letter many months after a meet-and-confer among other counsel (not including Skadden Arps), MGA asserts that the ambush of de Anda and Mattel's counsel was Mattel's own fault. Mattel is not required to give MGA's new lawyers a primer on the litigation, the previous promises of the parties, the obligations imposed by the law, and the Protective Order.

1  case, once a producing party provides written notice of an inadvertently produced
2  document, the receiving party "<u>shall</u> promptly return" the relevant information.[4]

3        The Ninth Circuit also has recognized that attorneys have an ethical
4  obligation to refrain from using any documents subject to a claim of privilege "until
5  a definitive ruling . . . is obtained from a court." <u>Gomez v. Vernon</u>, 255 F.3d 1118,
6  1132 (9th Cir. 2001). The receiving parties have no discretion to "decline" the
7  request because they dispute the producing parties' claim of privilege or
8  inadvertence or want to avoid the expense of litigating the issue. The disputed
9  document <u>must</u> be returned and not used for any purpose until the claim of privilege
10 is resolved.

11       MGA and Bryant violated <u>Rule</u> 26 and the Protective Order by failing
12 to return and/or destroy all copies of M 0074372, which contained the disputed
13 entry. Flouting his legal and ethical obligations, Bryant "declined" to do so.[5] MGA
14 claimed it would, but then broke its word. When its lawyers could not find a copy
15 of the document in their evidence files – which should have signaled to them that
16 there was something special about this document – they obtained additional copies
17 of the improperly redacted document from elsewhere and then pulled it out for use
18 at deposition without any warning to Mattel.[6] As they have done repeatedly in the
19 past, MGA's counsel asks the Court to look the other way – to give them a "pass" for
20 violating the law – simply because they took over this case from other counsel last
21 autumn.

22       MGA and Bryant also violated <u>Rule</u> 26 and the Protective Order, as
23 well as governing Ninth Circuit case law, by using the disputed entry at deposition
24 after Mattel demanded its return. Their behavior is especially egregious because
25 they used the disputed entry after assuring Mattel that they would not do so until the

26
27 [4] Stipulated Protective Order; and Order ("Stip. Protective Order") § 13 (emphasis added), Alger Dec., Exh. 3.
28 [5] Alger Dec., Exh. 4.
   [6] Alger Dec., Exh. 7.

1 Discovery Master ruled on the issue.  Indeed, despite representing several times that

2 they would request that the Discovery Master rule on the status of the disputed

3 entry, Defendants never did so.  Instead, Defendants attempted to exploit the

4 document with Mattel counsel unfamiliar with the parties' discussions about its

5 return and destruction. This improper conduct alone justifies the granting of this

6 Motion.

7

8 **II.**    **MATTEL DID NOT WAIVE THE ATTORNEY-CLIENT PRIVILEGE**

9 **OR WORK PRODUCT DOCTRINE**

10    **A.**    **Production of the Disputed Entry Was Inadvertent**

11        **1.**    **The Alger Declaration Establishes Inadvertence**

12        Defendants' contention that Mattel provides "no factual support" for its

13 assertion of inadvertent production (Opp. 12:9-18) is belied by the undisputed

14 evidence about Mattel's review production of documents.  Mattel employs a team of

15 attorneys to review documents in this case prior to production.  Part of their

16 responsibility is to identify possibly privileged documents.[7]  Timothy Alger is the

17 attorney primarily responsible for supervising this effort.  One of the documents he

18 reviewed prior to Mattel's February 23, 2007 production was M 0074372.  He noted

19 that it contained two entries protected by the attorney-client privilege and work

20 product doctrine and directed that they be redacted.  Unfortunately, through

21 inadvertence, the person responsible for carrying out Mr. Alger's instructions made

22 only a single redaction.[8]

23        Despite this evidence, Defendants contend that more is required, such

24 as the identity of the person who failed to follow Mr. Alger's instructions.  (Opp.

25 12:19-21.)  Such information is not required and would serve no proper purpose.

26 The one case Defendants offer in support of their argument is <u>Alldread v. City of</u>

27

28    [7]  Alger Dec., ¶ 9.
       [8]  Alger Dec., ¶ 4.

1   Grenada, 988 F.2d 1425 (5th Cir. 1993).  However, Alldread says nothing about the
2   amount of detail a party must present to support its claim of inadvertent disclosure.
3   Moreover, although the court in Alldread found that the disclosing party "had not
4   taken reasonable and available precautions to protect the material from disclosure,"
5   it nevertheless found that there had been no waiver because the disclosing party had
6   promptly asserted the privilege when it discovered the production.  Id. at 1433.

7           Here, Mattel not only took reasonable and mostly successful
8   precautions against inadvertent disclosure, upon learning of the inadvertent
9   production of the disputed entry, Mattel promptly requested its return so it could be
10  replaced with a properly redacted version.[9]  That Mattel was diligent in its document
11  review is particularly clear when one considers the many hundreds of thousands of
12  pages produced in this litigation.[10]

13

14          **2.      The Discovery Master's July 10, 2007 Order Does Not**
15                  **Support a Finding of Waiver**

16          Defendants also argue that Mattel "should not be permitted to
17  relitigate" the issue of privilege because counsel for Mattel failed to discuss the
18  disputed entry in relation to their April 10, 2007 Joint Motion to Compel, which
19  involved the portion of M 0074372 which was properly redacted.  (Opp. 13:15-
20  14:12.)  As discussed more fully below, however, the disputed entry was not at issue
21  because Mattel had not yet discovered that it was inadvertently produced.

22

---

23  [9]  Alger Dec., ¶¶ 7-10.
    [10]  Alger Dec., ¶ 9.  Defendants attempt to make much of the parties' discussions
24  regarding de-designation of documents in April 2007.  (Opp. 13:9-11.)  Counsel for
    the parties discussed hundreds of pages of documents at that time, and the question
25  of privilege was not raised.  Rather, as shown in the correspondence attached to the
    Mumford declaration (which is only part of a lengthy meet-and-confer process
26  regarding a large quantity of documents), the parties were discussing whether
    certain categories of materials (such as the Mattel security files) were properly
27  designated "Confidential" or "Confidential – Attorneys' Eyes Only."  See Mumford
    Dec., Exhs. 1 and 2.  Some documents were redesignated on a categorical basis
28  because they did not contain trade secrets.  There was no examination of documents
    for privilege.

1          Defendants contend, nevertheless, that because Mr. Alger was involved

2  in opposing their Joint Motion, his failure to address the disputed entry at the time

3  means that its production was intentional. Mr. Alger's declaration, however, makes

4  clear that he did not discover the inadvertent production of the disputed entry until

5  after briefing was complete. This is understandable. The Joint Motion did not

6  involve the disputed entry, which was only a tiny portion of the production

7  Mr. Alger had supervised. As noted in Mattel's Motion, the fact that the

8  inadvertently produced privileged information constitutes a small portion – less than

9  1 percent – of the total documents involved that day's production is an important

10  factor mitigating against waiver. <u>Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.</u>,

11  1997 WL 736726, at \*6 (S.D.N.Y. Nov. 26, 1997) ("Courts have routinely found

12  that where a large number of documents are involved, there is more likely to be an

13  inadvertent disclosure rather than a knowing waiver.").

14          Mr. Alger has supervised the review of millions of pages of documents

15  by a large team of lawyers and paralegals and the production of over 900,000 pages

16  of documents. On the day the disputed entry was produced, Mr. Alger supervised

17  the production of over 2,600 pages of documents.[11] The disputed entry was only

18  one handwritten entry on a single page in that production. Under these

19  circumstances, Mattel's failure to discover the inadvertent disclosure cannot possibly

20  constitute an intentional waiver.

21          The cases relied on by defendants fail to support their argument. In

22  <u>SEC v. Cassano</u>, 189 F.R.D. 83 (S.D.N.Y. 1999), the producing party had failed to

23  review the documents at issue before they were produced. <u>Id</u>. at 86 ("[T]he SEC

24  attorney authorized production of this document, sight unseen."). In <u>Eureka</u>

25  <u>Financial Corp. v. Hartford Accident and Indemnity Co.</u>, 136 F.R.D. 179 (E.D. Cal.

26  1991), the producing party took "absolutely no precautions to properly assert the

27

---

28  [11]  Alger Dec., ¶ 3.

1  privilege." Id. at 184. Here, the documents were reviewed prior to production and

2  substantial precautions were taken to prevent the production of privileged

3  information.

4

5  **B.    Mattel Did Not Waive Any Privilege at the Depositions of Alan**

6  **Kaye and Richard de Anda**

7          Defendants next argue that Mattel waived the privilege by failing to

8  object to the use of the disputed entry at the Kaye and de Anda depositions. (Opp.

9  14, 25-26). Both of these depositions, however, took place after Mattel had asserted

10 the attorney-client privilege and the work product doctrine and demanded that

11 Defendants return the inadvertently produced document.

12         Defendants took the deposition of Alan Kaye the day after Mattel

13 demanded the return of documents containing the disputed entry. Despite Mattel's

14 demand, Defendants buried the page containing the disputed entry in a 90-page

15 exhibit. However, no portion of the disputed entry was read into the record, nor did

16 Defendants ask any questions about it. It is likely no one at the deposition even saw

17 the disputed entry. The purported failure to object, therefore, was not a waiver.

18 That is particularly so since it was MGA's violation of the Protective Order that lead

19 to the document being improperly marked in the first place.

20         The argument regarding the deposition of Mr. de Anda is similarly

21 unpersuasive. By the time Defendants deposed Mr. de Anda, Mattel had demanded

22 the return of the unredacted version of the document three times by letter and twice

23 in telephonic meet and confer sessions.[12] Both MGA and Bryant had assured Mattel

24 that they would not use the disputed entry absent a ruling by the Discovery Master.[13]

25

26

27

28
    [12]  Alger Dec., ¶¶ 10-18, 20-21; Exhs. 2, 5, and 6.
    [13]  Alger Dec., ¶ 18; Exhs. 4 and 7.

1   The parties even met-and-conferred in anticipation of a motion by MGA, but no
2   motion was filed.[14]

3          Defendants now claim that despite their promises to the contrary, they
4   were justified in using the disputed entry at Mr. de Anda's deposition because Mattel
5   "ignored" a letter sent a mere two days before asking for a properly redacted version
6   of M 0074372. As Defendants know, Mattel did not ignore the request.[15] Rather,
7   MGA sent the letter to the wrong attorney. As MGA knew, Mr. Alger, not
8   Mr. Corey (who was out of the office), was primarily responsible for handling
9   Mattel's privilege claims and was the one who handled all discussions with
10  Defendants regarding the disputed entry.[16] Nevertheless, MGA did not even "cc"
11  Mr. Alger.

12         Furthermore, Defendants do not explain why they did not follow up
13  with a phone call or e-mail or raise the issue at the deposition. They knew the
14  version of M 0074372 they intended to, and did, use at the deposition was subject to
15  Mattel's claim of inadvertent production. Indeed, the first version of the exhibit they
16  provided to Mr. de Anda and his attorney did not include the page containing the
17  disputed entry.[17] Counsel for MGA "apologize[d]" for the missing page, but failed

18

---

19  [14] Alger Dec., ¶ 14
    [15] Declaration of Jon Corey ("Corey Dec."), ¶ 7. Here, again, MGA attempts to
20  get "slack" from the Court because Skadden Arps took over the case from
    O'Melveny & Myers. Mr. Alger has consistently handled document discovery on
21  behalf of Mattel, including the production of documents, privilege logs and the
    clawback of inadvertently produced documents, technical issues relating to
22  produced documents, motion practice relating to Mattel's production of documents,
    and designation of documents. Mattel will not burden the court with the hundreds
23  of pages of correspondence between Mr. Alger and counsel for MGA and Bryant
    over the past two years relating to document discovery. Skadden Arps chose to send
24  a letter relating to an issue that had been solely handled by Mr. Alger on behalf of
    Mattel to an attorney who had not been involved with M 0074372. Skadden Arps
25  then confronted Mr. de Anda with the document without any prior discussion with
    Mattel's counsel at the deposition – even though it had determined that M 0074372
26  had been removed from its evidence files. Mumford Dec., ¶ 10.
    [16] Alger Dec., ¶ 22.
27  [17] Deposition Transcript of Richard de Anda ("de Anda Tr.") at 290:17-291:1,
28  Alger Dec., Exh. 11; Corey Dec. ¶ 5.

1   to explain that the reason for the omission was because they could not find it in their

2   evidence files and hunted it up from other sources.[18]  Additionally, as Defendants

3   knew, neither Mr. Corey or Ms. Thomas had been involved in Mattel's repeated

4   attempts to recover the inadvertently produced document.  Under these

5   circumstances, the purported failure of Mr. Corey and Ms. Thomas to object yet

6   again – Mattel had already asserted its privilege at least five times – to the use of the

7   document was not a knowing waiver.[19]  To hold otherwise would reward

8   Defendants' flagrant violations of Rule 26, the Protective Order, and governing

9   Ninth Circuit case law.

10

11   **III.   THE DISPUTED ENTRY IS PRIVILEGED**

12          **A.     The Disputed Entry is Protected by the Attorney-Client Privilege**

13                 Defendants argue that Mattel has failed to establish the applicability of

14   the attorney-client privilege because it did not submit "any declaration from Mr. De

15   [sic] Anda" (Opp. 9:2-6).  The law, however, does not require that all parties to a

16   privileged communication submit declarations asserting the privilege.  Rather, the

17   law requires a prima facie showing that the privilege applies.  In re Grand Jury

18   Investigation, 974 F.2d 1068, 1071 (9th Cir. 1992).  Mattel has met that standard by

19   submitting the Declaration of Jill Thomas.  Ms. Thomas initiated the communication

20   memorialized in Mr. de Anda's chronological record and submitted a declaration

21   establishing that it is privileged.[20]  Moreover, on its face the disputed entry states

22

23

24   _____

     [18]   Corey Dec. ¶ 5; de Anda Depo. Tr. at 291:2-7, Alger Dec., Exh. 11.

25        [19]   The cases relied on by defendants are again inapposite.  In The Diversified Group, Inc. v. Daugerdas, 304 F. Supp.2d 507 (S.D.N.Y. 2003), the privilege was

26   waived because it had never been asserted until after the deposition.  In Palazzetti Import/Export, Inc. v. Morson, 2000 WL 1015921 (S.D.N.Y. 2000), the attorney

27   had not only failed to previously assert the privileges, he instructed his client to "go ahead and answer, what the hell."

28        [20]   Declaration of Jill Thomas ("Thomas Dec."), ¶ 6.

1 | that it memorializes work performed at the request of the Mattel Law Department;
2 | specifically, Ms. Thomas.[21]

3 |       The Declaration of Richard de Anda, submitted in opposition to
4 | Defendants' April 10, 2007 Joint Motion to Compel further supports Mattel's claim
5 | of privilege.[22] As stated therein, Mr. de Anda, as the head of Mattel Global
6 | Security, frequently works and consults with Mattel's in-house and outside counsel
7 | for purposes of obtaining legal advice to carry out Global Security's corporate
8 | responsibilities and because they concern either actual or potential litigation
9 | involving Mattel. Moreover, on some occasions his work is carried out at the
10 | express request and direction of Mattel's lawyers for purposes of assisting them in
11 | actual or potential litigation involving Mattel.[23] Conjoined with Ms. Thomas'
12 | declaration, there can be no doubt that the disputed entry is privileged.

13 |       Defendants also argue that the disputed entry is not privileged because
14 | it is merely a "time record." (Opp. 9:13.) The very case they cite, however,
15 | disproves their argument. In Real v. Cont'l Group, Inc., 116 F.R.D. 211 (N.D. Cal.
16 | 1986), the court found that time records were relevant to a fee dispute, but ruled that
17 | they were protected by the attorney-client privilege because their production "would
18 | necessarily reveal the nature of legal services provided." Id. at 113-14. The only
19 | information the court ordered produced were the number of hours billed, the fee
20 | arrangement, and total costs and fees paid. Id. Here, the disputed entry not only is
21 | part of a chronological record, it memorializes a communication between an
22 | attorney and an employee of Mattel. The privilege, therefore, applies. See United
23 | States v. Kovel, 296 F.2d 918, 921 (2d Cir. 1961) (documents prepared by an agent
24 | of an attorney are protected by the attorney-client privilege); First Chicago Int'l v.
25 | United Exch. Co., 125 F.R.D. 55, 57-8 (S.D.N.Y. 1989) (privilege applies to

26 |
27 | [21] Mattel has provided an unredacted version of M 0037432 to the Discovery Master for in camera review.
28 | [22] Opposition to Joint Motion to Compel, 1:22-28, Mumford Dec., Exh. 5.
    [23] Id.

-11-

1   documents created at behest of external and internal legal counsel to "assess [the

2   corporation's] legal options"); In re M & L Bus. Mach. Co., Inc., 161 B.R. 689, 693

3   (D. Colo. 1993) (privilege applies to memoranda prepared by bank's employees at

4   request of bank's internal counsel to assess bank's potential liability).[24]

5          Finally, although Defendants elsewhere note that the status of

6   M 0074372 was previously at issue in their Joint Motion to Compel, they ignore the

7   substance of the Discovery Master's Order.  In his July 10, 2007 Order, the

8   Discovery Master ruled that the privilege applies to entries in Mr. de Anda's

9   chronological record.  Specifically, the Discovery Master held that a similar entry on

10  the same page of Mr. de Anda's chronological record as the disputed entry was

11  protected by the attorney-client privilege.[25]  Defendants fail to explain why one

12  entry in Mr. de Anda's chronological record is protected by the attorney-client

13  privilege, but not another entry on the same page.

14

15          **B.     <u>The Entry is Protected by the Work Product Doctrine</u>**

16          Defendants argue that the disputed entry is not protected by the work

17  product doctrine because the "Discovery Master already has held M0074372 is not

18  protected by the work product doctrine." (Opp. 10:5-6.)  This is misleading because

19  Mattel had not discovered the inadvertent production of the disputed entry when the

20  Joint Motion was briefed.[26]  As a result, the issue of whether the disputed entry in

21  M 0074372 is work product was not before the Discovery Master.  It is axiomatic

22  that a court does decide an issue not before it.[27]

23

24  [24]  These cases were cited in Mattel's Motion but ignored by Defendants.
    [25]  Exh. 8.

25  [26]  Nowhere in Defendants' brief is the disputed entry discussed.
    [27]  Defendants' argument that "the failure to assert attorney work product

26  immunity on a privilege log constitutes waiver" also fails. (Opp. 10:10-11.)  As
    with the briefs for Defendants' Joint Motion to Compel, the privilege log at issue

27  was originally prepared prior to discovery of the inadvertent disclosure.  Further,
    Mattel has stated several times in writing that the attorney-client privilege and work

28  product doctrine applies to the disputed entry.  Finally, the most recent version of
    (footnote continued)

1    Next, Defendants contend that the disputed entry is not work product
2    because it "was not prepared in anticipation of litigation." (Opp. 11:4-9.) The basis
3    for their argument – that Mattel has stated that it first learned of its claims in this
4    action on November 24, 2003 – is specious. The disputed entry does not refer to
5    this action. Rather, it memorializes the communication of a task requested by
6    Mattel's legal department for another case pending at the time. As attested by the
7    Declaration of Jill Thomas, the disputed entry relates to <u>Gunther Wahl</u>
8    <u>Productions, Inc. v. Mattel, Inc.</u>[28] Mattel was a party to that pending action and
9    despite having left Mattel, Bryant was a percipient witness. (His deposition was
10   taken in that case on September 9, 2003).[29] Ms. Thomas communicated the request,
11   memorialized in the disputed entry, to Mr. de Anda so that she could provide legal
12   advice to Mattel regarding the <u>Gunther Wahl</u> case, not this matter. Accordingly, the
13   communication and memorialization was made in anticipation of litigation.

14   Defendants also argue that the entry is not work product because it
15   refers only to the conduct of Mr. de Anda and not any "mental impressions of an
16   attorney." (Opp. 11:16-17.) The mental impressions of a lawyer, however, do not
17   exist in a vacuum. Rather, decisions regarding how to litigate a case -- including
18   decisions about what legal and factual research to undertake -- will be reflected in
19   the conduct of others. "[T]he work product privilege applies to preparation not only
20   by lawyers, but also by other types of party representatives including, for example,
21   investigators seeking factual information." <u>In re Grand Jury Subpoena</u>, 282 F.3d
22   156, 161 (2d Cir. 2002). <u>See also</u> <u>Martin v. Department of Justice</u>, 488 F.3d 446,
23   455 (D.C. Cir. 2007) (memo regarding factual investigation requested by attorney
24   protected by the work-product doctrine.).

25

26   _____

27   Mattel's privilege log notes that the disputed entry is protected by the work product
     doctrine.
28   [28] Thomas Dec., ¶¶ 6-7.
     [29] <u>Id.</u>

1    The cases cited by defendants are inapposite.  <u>Abel v. JBC Legal</u>

2  <u>Group, P.C.</u>, simply recites the rule that the identity and location of trial witnesses is

3  not protected by the work-product doctrine. 2005  WL 3839309, *3 (N.D. Cal.

4  Oct. 21, 2005).  Here, the disputed entry memorializes work communicated by

5  Mattel's Law Department.  In <u>United States v. City of Torrance</u>, the document at

6  issue was not work product because it had been communicated to a testifying expert.

7  163 F.R.D. 590, 593 (C.D. Cal. 1995).  That is not the case here.  Finally, in

8  <u>Jackson v. County of Sacramento</u>, the documents at issue were not work product

9  because no attorney was involved in the investigation at issue.  175 F.R.D. 653,

10  657-58 (E.D. Cal. 1997).  Here, the communication memorialized in the disputed

11  entry was made by an attorney to an investigator regarding the pending <u>Gunther</u>

12  <u>Wahl</u> case.[30]

13    Accordingly, the disputed entry is protected by the work product

14  doctrine as well as the attorney-client privilege.

15

16                              **Conclusion**

17    For the foregoing reasons, Mattel respectfully requests that the

18  Discovery Master (i) compel Defendants to return or destroy all copies of a partially

19  redacted version of the document Bates stamped M 0074372, and (ii) issue a

20  protective order striking all deposition testimony regarding the privileged material,

21  requiring the redaction of deposition transcripts and exhibits, and barring MGA and

22

23

---

24    [30]  Defendants' argument that Mattel has "made no showing that the testimony at the Kay and De [sic] Anda depositions ... is privileged" (Opp. 16:3-10) is factually

25  and legally incorrect.  Mattel did not request that any portion of the Kaye deposition transcript be redacted.  Rather, it asked that the exhibit containing the disputed entry

26  be redacted.  (Motion, 24:25-28.)  Additionally, Mattel requested that portions of the de Anda transcript and the deposition transcript of Robert Simoneau that contain

27  questioning about the disputed entry be redacted.  <u>Id.</u>  These portions of the transcript reveal information protected by the attorney-client privilege and work

28  product doctrine and should be redacted.

1  Bryant from any further use of the privileged portion of the document in discovery
2  and at trial.

3

4  DATED:  March 21, 2008          Respectfully submitted,

5                                  QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES, LLP
6

7                                  By_____

8                                     Timothy L. Alger
                                      Attorney for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2442089.1

MATTEL'S REPLY ISO MTC RETURN OF PRIVILEGED DOC. & FOR PROTECTIVE ORDER

1                           **PROOF OF SERVICE**

2        I am employed in the County of Los Angeles, State of California.  I am over the age of

3 eighteen years and not a party to the within action; my business address is 865 South Figueroa

4 Street, 10th Floor, Los Angeles, California 90017.

5        On March 21, 2008, I served true copies of the following documents described as:

6 **REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL MGA AND**

7 **CARTER BRYANT TO RETURN PRIVILEGED DOCUMENT AND FOR PROTECTIVE**

8 **ORDER** on the parties in this action as follows:

| |
|---|
| Keker & Van Nest, LLP<br>  John W. Keker, Esq.<br>  Michael H. Page, Esq.<br>  Christa M. Anderson, Esq.<br>710 Sansome Street<br>San Francisco, CA 94111<br>Telephone: 415.391.5400<br>Facsimile: 415.397.7188 |

14      [√]      **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other

15 facility regularly maintained by the overnight service carrier, or delivered such document(s) to a

16 courier or driver authorized by the overnight service carrier to receive documents, in sealed

17 envelope(s) or package(s) designated by the overnight service carrier with delivery fees paid or

18 provided for, addressed to the person(s) being served.

19        I declare that I am employed in the office of a member of the bar of this court at whose

20 direction the service was made.

21        Executed on March 21, 2008, at Los Angeles, California.

22

23

24                               Kelly Velazquez

25

26

27

28

07209/2364038.1

1    **PROOF OF SERVICE**

2        I am employed in the County of Los Angeles, State of California.  I am over the age of

3    eighteen years and not a party to the within action; my business address is NOW Messenger

4    Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026.

5        On March 21, 2008, I served true copies of the following documents described as:

6    **REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL MGA AND**

7    **CARTER BRYANT TO RETURN PRIVILEGED DOCUMENT AND FOR PROTECTIVE**

8    **ORDER** on the parties in this action as follows:

| | |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP<br>  Thomas J. Nolan, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA  90071 | Overland Borenstein Scheper & Kim, LLP<br>  Mark E. Overland, Esq.<br>  David C. Scheper, Esq.<br>  Alexander H. Cote, Esq.<br>300 South Grand Avenue, Suite 2750<br>Los Angeles, CA 90071<br>Telephone:  213.613.4655<br>Facsimile:  213.613.4656 |

15       [√ ]    **[PERSONAL]** by personally delivering the document listed above to the person(s)

16   at the address(es) set forth above.

18       I declare that I am employed in the office of a member of the bar of this court at whose

19   direction the service was made

20       Executed on March 21, 2008, at Los Angeles, California.

23   _____

24                  David Quintana

07209/2364038.1