QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017–2543
Telephone: (213) 443–3000
Facsimile: (213) 443–3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>            Plaintiff,<br><br>     vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>            Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04–9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04–09039<br>Case No. CV 05–02727<br><br>MATTEL, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S (1) FEBRUARY 15, 2008 ORDER REGARDING MATTEL'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES BY THE MGA PARTIES; AND (2) FEBRUARY 20, 2008 ORDER REGARDING MATTEL'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES BY CARTER BRYANT<br><br>[Declaration of Bernard Smyth concurrently filed herewith]<br><br>Hearing Date:    March 31, 2008<br>Time:            10:00 a.m.<br>Place:           Courtroom 1<br><br>**Phase 1**<br>Discovery Cut–off:    January 28, 2008<br>Pre–trial Conference:  April 21, 2008<br>Trial Date:            May 27, 2008 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT ................................................................................................................ 2

I.  IN DENYING A FURTHER RESPONSE TO INTERROGATORY NOS. 27–29, THE DISCOVERY MASTER ERRONEOUSLY OVERLOOKED THE TERMS OF BRYANT'S AGREEMENT WITH MATTEL .............................................................................................................. 2

II. THE ORDERS AS TO INTERROGATORY NO. 39 ARE BASED ON MISTAKEN ASSUMPTIONS ................................................................................ 4

   A.  MGA Never Provided Responsive Information ........................................ 4

   B.  The Discovery Master Misread the Interrogatory ..................................... 4

III. THE ORDER AS TO INTERROGATORY NO. 41 IS NOT SUPPORTED BY THE RECORD OR LAW ........................................................ 6

IV. AS TO INTERROGATORY NO. 46, THE ORDER IMPROPERLY OVERLOOKED THE CIRCUMSTANCES OF MATTEL'S REQUEST ......... 7

V.  THE ORDER AS TO INTERROGATORY NOS. 48–50 IGNORES MGA'S OWN REPRESENTATIONS ................................................................ 9

VI. THE ORDER AS TO INTERROGATORY NO. 47 FAILED TO CONSIDER THE RELEVANCE OF SPOLIATION OF EVIDENCE ........... 10

VII. THE ORDERS ERRONEOUSLY FAILED TO REQUIRE DEFENDANTS TO SPECIFICALLY IDENTIFY DOCUMENTS ................ 11

CONCLUSION ........................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

## Cases

*A. Farber and Partners, Inc. v. Garber*,
  234 F.R.D. 186 (C.D. Cal. 2006) ...................................................................... 5

*Clean Earth Remediation and Constr. Serv., Inc. v. Am. Int'l Group, Inc.*,
  245 F.R.D. 137 (S.D.N.Y. 2007) .................................................................... 11

*Cook v. Yellow Freight Sys., Inc.*,
  132 F.R.D. 548 (E.D. Cal. 1990) ..................................................................... 6

*Does I-VI v. Yogi*,
  110 F.R.D. 629 (D.D.C. 1986) ........................................................................ 6

*Garcia v. City of El Centro*,
  214 F.R.D. 587 (S.D. Cal. 2003) ..................................................................... 9

*In re Katrina Canal Breaches Consol. Litig.*,
  2007 WL. 1959193 (E.D. La. 2007) ............................................................... 7

*King v. Georgia Power Co.*,
  50 F.R.D. 134 (N.D. Ga. 1970) ....................................................................... 7

*Oakes v. Halvorsen Marine Ltd.*,
  179 F.R.D. 281 (C.D. Cal. 1998) ..................................................................... 8

*Peskoff v. Faber*,
  230 F.R.D. 25 (D.D.C. 2005) ........................................................................... 6

*Premium Serv. Corp. v. Sperry & Hitchinson Co.*,
  511 F.2d 225 (9th Cir. 1975) ........................................................................... 6

*Rambus, Inc. v. Infineon Tech. AG*,
  222 F.R.D. 280 (E.D. Va. 2004) ...................................................................... 9

*Seff v. Gen. Outdoor Adver. Co.*,
  11 F.R.D. 597 (N.D. Ohio 1951) ..................................................................... 7

*Ukiah Auto. Invs. v. Mitsubishi Motors of N. Am.*,
  2006 WL. 1348562 (N.D. Cal. 2006) ............................................................ 12

*Upjohn Co. v. U.S.*,
  449 U.S. 383 (1981) ........................................................................................ 9

## Statutes

Fed R. Civ. P. 26 ....................................................................................................... 8

Fed R. Civ. P. 26(a) ................................................................................................ 12

Fed R. Civ. P. 26(b)(2) .................................................................................................. 7

Fed R. Civ. P. 33 .................................................................................................... 9, 11

Fed R. Civ. P. 33(d) ............................................................................................... 11, 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

In light of the voluminous motions in this high stakes litigation, it is unsurprising that the Discovery Master has overlooked a few critical facts. For example, in finding that Mattel improperly used a definition that encompassed more than patentable works in requesting the dates that Bryant made Bratz-related "inventions," the Discovery Master overlooked that Mattel is claiming ownership of Carter Bryant's copyrightable works based on his entry into an "inventions" agreement that expressly applied to "copyrights" and "designs."

Similarly, the ruling that it would be cumulative to require an identification of MGA's and Bryant's bank accounts overlooked that only Isaac Larian's have been identified, and that the same rationale applies for requiring MGA and Bryant to identify theirs. Likewise, in failing to require MGA to provide specific information related to its trade dress counterclaim, the Discovery Master overlooked that MGA has expressly conceded that its responses are inadequate. And, while acknowledging the relevance of the dates on which MGA first contacted former Mattel employees to discuss working for MGA, he overlooked that MGA failed to substantiate any claim of burden and that burden is of secondary concern when so much is at stake.

The Discovery Master also misapprehended the purpose for requiring Bryant to identify the sources he used in searching for and collecting documents. Because this Court has observed that evidence of possible spoliation is critical, and evidence of Bryant's failure to properly search for and/or produce relevant documents would be as well, it was clear error not to require Bryant to answer.

Similarly, it was error to deny Mattel's request to compel the disclosure of unprivileged information concerning O'Melveny's withdrawal. The sole available information suggests the possibility that O'Melveny withdrew for ethical reasons, perhaps even to avoid participating in a fraud on the Court. Because all other evidence was submitted to this Court in camera, it was error to require Mattel to

support its request with such "evidence" that is inherently unavailable to Mattel.

Finally, the Discovery Master failed to consider that, after stonewalling Mattel's discovery efforts for years, defendants have very recently engaged in a "box car" production of millions of documents. It is contrary to the Federal Rules of Civil Procedure to allow interrogatory responses that simply refer to categories of documents without specifically identifying them—especially where, as here, the interrogatory required the specific identification of documents.

## Argument

I. IN DENYING A FURTHER RESPONSE TO INTERROGATORY NOS. 27–29, THE DISCOVERY MASTER ERRONEOUSLY OVERLOOKED THE TERMS OF BRYANT'S AGREEMENT WITH MATTEL

Interrogatory Nos. 27–29 primarily seek disclosure of the dates Carter Bryant created various BRATZ "inventions." That information is critical because Bryant was subject to the Mattel Employee Confidential Information and Inventions Agreement, pursuant to which he agreed to assign to Mattel:

> all my right, title and interest in such inventions, and all my right, title and interest in any patents, ***copyrights***, patent applications or copyright applications based thereon."[1]

The agreement defines the term "inventions" as including, "but not limited to":

> all discoveries, ***improvements***, processes, ***developments***, [and] ***designs***, know–how, data computer programs and formulae, ***whether patentable or unpatentable***.[2]

In approving defendants' responses that Bryant had not developed any "patentable" inventions, the Discovery Master erroneously ignored that the Mattel agreement, and Mattel's claims, extend largely to copyrightable works. His finding that Mattel's interrogatory definition of "inventions" referred to various types of

---

[1] Bryant's Employee Confidential Information and Inventions Agreement, dated Jan. 4, 1999, Dec. 13 Proctor Dec., Exh. 21 (emphasis added).
[2] Id. (emphasis added).

intellectual property was correct—but beside the point. The agreement on which Mattel's claims are based extends to "copyrights," "designs" and other works "whether patentable or unpatentable." Mattel's interrogatory definition was intended to discover defendants' positions regarding the dates of creation of BRATZ–related "inventions," as described in the agreement. The ownership of these inventions is vigorously disputed, and largely turns on when they were created and worked on. Defendants do not deny they have not provided their contentions about this obviously core issue.

There is no dispute that Bryant created at least some BRATZ–related designs or drawings during the relevant periods. He acknowledges that Interrogatory Nos. 27–29 seek his identification of such work and contentions about when it was done.[3] No one denies this is relevant; Bryant even acknowledges that he conditionally agreed to identify his tangible BRATZ drawings or designs as requested, but failed to do so.[4] Yet, despite this, Bryant claims to have provided "the most complete responses he could,"[5] applying a self-imposed definition of "inventions" that purportedly excludes all of the BRATZ–related work he did during these key time periods. That is gamesmanship, which the Discovery Master's Order failed to recognize.

MGA's non–responses are no better. MGA, citing the "revered <u>Chisum on Patents</u>," asserts the MGA Parties "have not identified a Bratz 'inventions' [sic] by Bryant while he was employed by Mattel because the MGA Parties contends [sic] that there were no such inventions," based on their view that the "commonly understood meaning of inventions" refers exclusively to patents.[6] This is not a patent case, and defendants know it. Because the Discovery Master overlooked the breadth

---

[3] Bryant's Opposition at 8.
[4] Id. at 10.
[5] Id.
[6] MGA's Opposition at 13.

of the Inventions Agreement, and instead adopted defendants' skewed view that it covers only patents, his ruling erroneously deprived Mattel of important evidence.

## II. THE ORDERS AS TO INTERROGATORY NO. 39 ARE BASED ON MISTAKEN ASSUMPTIONS

### A. MGA Never Provided Responsive Information

In denying Mattel's request to compel a further response from MGA to Interrogatory No. 39 (asking MGA to identify its financial accounts), the Discovery Master erroneously concluded that Mattel's request was cumulative of other discovery already sought "and obtained" by Mattel. Not so. It is undisputed that Mattel has never discovered the identity of all MGA's accounts. The Discovery Master based his decision in part on his previous order that Isaac Larian produce information sufficient to identify his accounts, thereby reflecting the relevance of such a request. But MGA certainly has accounts of its own separate from Larian's.

Further, the Discovery Master's assumption that Mattel can glean the information it needs from the limited financial records that MGA produced is erroneous. Mattel seeks to discover the identity of MGA's accounts to determine, among other things, (1) where MGA maintains assets relevant to its net worth and profits, and (2) what accounts MGA may have used to make secret payments to Bryant or others related to BRATZ, or to other Mattel employees. What MGA has produced does not show this. MGA does not claim otherwise.

Thus, the finding that MGA has already produced sufficient financial information is simply irrelevant. The production of profit and loss statements and financial reports does not reveal the identity of MGA's accounts -- the discoverable information Interrogatory No. 39 seeks, which MGA has not provided. The Discovery Master's Order should be overturned.

### B. The Discovery Master Misread the Interrogatory

The denial of Mattel's request to compel a further response from Bryant on the purported basis that the interrogatory is (1) overbroad, (2) impinges on Bryant's

privacy and (3) seeks information more readily available through other sources is based on a misreading of the interrogatory.

First, the Discovery Master erroneously concluded that the interrogatory was overbroad because it sought "account information for any account, no matter under whose name or whose benefit, that in any way mentions Bryant or reflects his existence."[7] However, Mattel merely asked Bryant to identify accounts that refer or relate to him. Other than accounts that are held for his benefit or the benefit of entities he controls (e.g., Carter Bryant Enterprises)—accounts that are clearly relevant and which Mattel is entitled to have identified—no other accounts are likely to refer or relate to Bryant. Significantly, even Bryant does not attempt to defend the finding of purported overbreadth.

The overbreadth finding is surprising because the Discovery Master compelled Larian to produce similar information, noting its relevance to payments from MGA/Larian to Bryant, and to Larian's net worth.[8] The Discovery Master failed to explain why the identity of Bryant's accounts is not similarly discoverable.

In finding that the interrogatory also "implicates Bryant's (and others) privacy interests,"[9] the Discovery Master erroneously overlooked the protective order, which prohibits other use of confidential information. Ironically, the Discovery Master earlier held that the protective order is sufficient to address privacy concerns.[10] When an adequate protective order is in place, a party's need for relevant information outweighs privacy concerns. See, e.g., A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 191 (C.D. Cal. 2006) (need for financial documents outweighed claim of privacy because information could be protected by protective order).

The cases Bryant cites to the contrary are inapposite. None involved a request

---

[7] Feb. 20 Order at 5.
[8] Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by Isaac Larian, dated Dec. 31, 2007, at 15–16, March 3 Proctor Dec., Exh. 16.
[9] Feb. 20 Order at 5.
[10] Order Granting Mattel's Motion to Compel Production of Documents, dated Jan. 25, 2007, at 14, Dec. 20 Proctor Dec., Exh. 54.

for financial information made pursuant an adequate protective order.[11] Bryant's privacy objections are also meritless because Mattel is seeking only the identity of Bryant's accounts. Mattel is not seeking detailed financial information. The Discovery Master's order erroneously ignores that fact.

It was also error to conclude that the identity of Bryant's accounts "is readily available through alternative less intrusive sources."[12] It is undisputed that Bryant has not produced information sufficient to identify all his accounts. Bryant states in his brief that he produced information regarding (1) payments from MGA and/or Larian to himself, (2) payments from himself to others related to BRATZ, and (3) his net worth, but Mattel is entitled to the identity of Bryant's financial accounts to verify that Bryant has produced all relevant financial information—Mattel is not required to take Bryant's word for it.

Interrogatory No. 39 seeks the identification of bank accounts. Such identifying information is likely to lead to the discovery of admissible evidence for a variety of reasons fully set forth below. There is no burden in responding.[13] There simply is no basis for the order denying Mattel's motion to compel a response to this interrogatory.

### III. THE ORDER AS TO INTERROGATORY NO. 41 IS NOT SUPPORTED BY THE RECORD OR LAW

Pursuant to Interrogatory No. 41, Mattel seeks MGA's first date of contact with former Mattel employees regarding potential MGA work. The Discovery Master correctly held that "[t]he requested information is clearly relevant to Mattel's claims,

---

[11] Bryant's Opposition at 10–11 (citing Premium Serv. Corp. v. Sperry & Hitchinson Co., 511 F.2d 225 (9th Cir. 1975) (quashing subpoena where no protective order in place); Peskoff v. Faber, 230 F.R.D. 25 (D.D.C. 2005) (entering protective order for production of confidential documents, including personal financial records); Does I–VI v. Yogi, 110 F.R.D. 629 (D.D.C. 1986) (same); and Cook v. Yellow Freight Sys., Inc., 132 F.R.D. 548 (E.D. Cal. 1990) (denying motion to compel where no protective order in place).
[12] Feb. 20 Order at 5.
[13] Bryant asserts that Interrogatory No. 39 is "unduly burdensome." The Discovery Master made no such finding. That is unsurprising because Bryant failed to demonstrate any burden, undue or otherwise, in identifying financial accounts that refer or relate to him. It is difficult to imagine that Bryant could have had so many financial accounts since 1999 that merely identifying these accounts would pose an undue burden.

and the MGA parties to not contend otherwise."[14]  Nevertheless, he found that the burden of providing the information outweighed its benefit.  That finding is not supported by the record.  MGA did not even argue burden in its papers opposing the motion.  MGA asserts that its counsel addressed it at the hearing by speculating that the first date of contact was "when conceivably somebody from MGA ran into one of these people down at the bowling alley, and they said they were unhappy at Mattel, and we said 'Gee, you should really consider coming to MGA, if you're that unhappy.'"[15]  Such rank speculation does not provide sufficient support for the finding of undue burden.

Even if it did, MGA should nevertheless be required to provide the information.  Even when a burden is demonstrated, the burden is outweighed if the information sought is clearly relevant and the amount in controversy justifies any work responding fully would require.[16]  MGA cites no contrary authority.  MGA's attempts to distinguish Mattel's cases as "inapposite for the simple reason that Mattel's overly broad request ... calls for information that has not been demonstrated to be critical or even relevant" ignores the finding the Discovery Master correctly made that the information sought is "clearly relevant to Mattel's claims."  The decision to deny as to Interrogatory No. 41 is clearly erroneous and contrary to law.[17]

## IV. AS TO INTERROGATORY NO. 46, THE ORDER IMPROPERLY OVERLOOKED THE CIRCUMSTANCES OF MATTEL'S REQUEST

Interrogatory No. 46 sought the facts regarding MGA's dispute with its former

---

[14] Feb. 20 Order at 10.
[15] MGA's Opposition at 16–17 (citing Transcript of Feb. 11, 2008 Hearing, at 36:11–17, Mar. 3 Proctor Dec., Exh. 10).
[16] See Mattel's Motion at 16 (citing Fed R. Civ. P. 26(b)(2); In re Katrina Canal Breaches Consol. Litig., 2007 WL 1959193, at *6 (E.D. La. 2007); King v. Georgia Power Co., 50 F.R.D. 134, 136 (N.D. Ga. 1970) and Seff v. Gen. Outdoor Adver. Co., 11 F.R.D. 597, 598 (N.D. Ohio 1951)).
[17] MGA asserts that Mattel miscited the Discovery Master's Order holding that the date of first contact "'is clearly relevant to Mattel's claims' but 'is conspicuously absent from the MGA parties' response,'" claiming that the Discovery Master was referring only to Bryant. Not so.  The Discovery Master's finding that the information is "clearly relevant" was with respect to *all* former Mattel employees.  While the Discovery Master only noted that the information was "conspicuously absent" with respect to Bryant, there is no dispute that MGA has not provided the information for other former Mattel employees as well.

counsel, O'Melveny & Myers. When O'Melveny sought to withdraw, MGA stated, at in a telephonic hearing with the Court, that the withdrawal related to a dispute over who would be lead counsel (a story MGA has repeatedly told the press). In response, O'Melveny said that it "disagreed with [those] representations," and advised the Court that irreconcilable differences between it and MGA forced it to withdraw.[18] O'Melveny's statements at least suggest that MGA wanted O'Melveny to engage in unethical conduct—something MGA's new counsel, Skadden Arps, has now done.[19] Yet the only evidence submitted regarding O'Melveny's withdrawal was submitted <u>in camera</u>. The Discovery Master failed to consider that impossibility of proof in finding that Mattel failed to present sufficient evidence that O'Melveny withdrew for reasons of ethics to avoid perpetrating fraud on the Court.

The finding that Mattel adduced insufficient "evidence" to obtain discovery regarding O'Melveny's withdrawal is inconsistent with the low relevance threshold of <u>Rule</u> 26. Mattel does not bear the burden to prove the content of MGA's dispute with its former counsel to obtain discovery of that content. <u>See</u> <u>Oakes v. Halvorsen Marine Ltd.</u>, 179 F.R.D. 281, 283 (C.D. Cal. 1998) (party resisting discovery has burden to show that discovery should not be allowed).

The Discovery Master also found erroneously that the interrogatory "intrudes upon the protections afforded by the attorney–client privilege and work product doctrine." That is contradicted by the plain language of the interrogatory, which is expressly limited to non–privileged information. Significantly, MGA has made public statements regarding its change of counsel, indicating that at least some non–privileged responsive information exists.[20] Moreover, MGA's claim that any responsive information must be privileged misstates the law. <u>Facts</u> do not become privileged simply because they are the subject of a privileged communication or are

---

[18] Transcript of Oct. 10, 2007 Hearing, at 9:2–11:7, Jan. 7 Proctor Dec., Exh. 9.
[19] <u>See</u> Mattel's Motion to Disqualify MGA's Counsel Skadden Arps and Expert Christina Tomiyama, dated March 18, 2008, attached as Exhibit 1 to the concurrently filed Declaration of Bernard Smyth ("Smyth Dec.").
[20] Article entitled <u>Behind the Scenes, Bratz Doll Case Heats Up</u>, published on Law.com on Nov. 11, 2007, Dec. 20 Proctor Dec., Exh. 53.

contained in work product—the underlying facts remain discoverable.  See Upjohn Co. v. U.S., 449 U.S. 383, 390 (1981) (privilege extends only to communications not to facts revealed in privileged communications); Garcia v. City of El Centro, 214 F.R.D. 587, 591 (S.D. Cal. 2003) ("[B]ecause the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts ... contained within work product.").  In addition, if the dispute related to a request that O'Melveny destroy evidence, or something comparable, communications and attorney mental impressions regarding the request would not be privileged.  See Rambus, Inc. v. Infineon Tech. AG, 222 F.R.D. 280, 298 (E.D. Va. 2004) (communications and work product regarding plan to destroy discoverable information falls within crime/fraud exception to privilege).  This issue need not be resolved now, however, because at least some indisputably non-privileged responsive information exists.  It should be provided.

## V. THE ORDER AS TO INTERROGATORY NOS. 48–50 IGNORES MGA'S OWN REPRESENTATIONS

Interrogatory Nos. 48–50 ask MGA to identify (1) each trade dress subject to MGA's claims, defenses or allegations, (2) each Mattel product that infringes that trade dress, and (3) all facts that support MGA's contention that the trade dress is protectible.  Such information is critical to Mattel's defense.  MGA said it would "supplement these responses in the course of Phase 2 discovery," thereby acknowledging the inadequacy of its responses.  The Discovery Master erroneously found, however, that MGA was "in substantial compliance with Rule 33."

MGA asserts that "just because 'the interrogatory responses include a reservation of rights to supplement during expert discovery does not render the responses inherently improper.'"[21]  That is irrelevant.  MGA's purported right to supplement its responses is not at issue.  The point is that MGA's responses are inadequate.  Notably, MGA does not contend that it has even supplied the "principal"

---

[21] MGA's Opposition at 20.

facts in support of its contentions, which it claims is required.[22]  The finding that MGA's current responses are adequate is thus clearly erroneous and contrary to law.

## VI. THE ORDER AS TO INTERROGATORY NO. 47 FAILED TO CONSIDER THE RELEVANCE OF SPOLIATION OF EVIDENCE

The Discovery Master denied Mattel's motion to compel a further response to Interrogatory No. 47 (asking Bryant to identify the sources of information from which he collected documents in this action that refer or relate to Bratz before February 28, 2001), confining his decision to a single paragraph that also denied a related interrogatory seeking the identification of storage devices used by Bryant. The Discovery Master erroneously cited Bryant's responses identifying the storage devices as adequate for both interrogatories.  But Mattel sought more detailed and different information—the sources of information that Bryant has searched to collect early–BRATZ documents.  Bryant's response omitted the source of those documents. He merely described generally where he looked.  That is insufficient.  Mattel cannot determine where Bryant has and has not searched for early BRATZ documents, and where he found the documents he produced.

That is particularly important given the substantial evidence that Bryant has spoliated evidence.  Mattel has raised the issue of Bryant's spoliation innumerable times before the Discovery Master.[23]  Indeed, Bryant asserts that "Mattel's accusation that Bryant has engaged in spoliation of evidence is ... tired" and that "Mattel apparently hopes that if it accuses Bryant of spoliation often enough ... the allegation will stick in the Court's mind."[24]  Nevertheless, the Discovery Master ignored that evidence of Bryant's spoliation makes a complete response crucial.  Bryant claims he did not spoliate evidence and that running "Evidence Eliminator" on his computers

---

[22] MGA's Opposition at 13–14.
[23] See, e.g., Mattel's Motion for an Order Enforcing Court's Jan. 25, 2007 Order Compelling Bryant to Produce Computer Hard Drives and for Sanctions, dated Jan. 28, 2008, Smyth Dec., Exh. 2; Mattel's Motion to Compel Deposition of Littler Mendleson, P.C. Pursuant to Subpoena, dated Dec. 13, 2007, Smyth Dec., Exh. 3.
[24] Bryant's Opposition at 15.

deleted only file names but not files.[25] A response, showing what BRATZ documents he produced from those computers, will shed light on the accuracy of that claim.

This Court recently overruled an order by the Discovery Master denying Mattel access to Isaac Larian's computer hard drives based on Mattel's allegations that defendants have destroyed electronic evidence. The Court held that the "Discovery Master's Order denying such evidence to Mattel was clearly erroneous and contrary to law," finding that "[d]estruction of electronic evidence on hard drives is relevant to Mattel's claims, including specific predicate acts alleged in Mattel's RICO claims."[26] The same basis for discovery exists here.

## VII. THE ORDERS ERRONEOUSLY FAILED TO REQUIRE DEFENDANTS TO SPECIFICALLY IDENTIFY DOCUMENTS

Mattel's interrogatories included requests that defendants "IDENTIFY" relevant documents. The definitions provided that "IDENTIFY" means "to describe each DOCUMENT by Bates number." Defendants did not "IDENTIFY" them. The Discovery Master failed to address Mattel's request that defendants be compelled to specifically identify documents, although Mattel raised this issue.[27]

Mattel cited substantial authority holding that in identifying documents in response to an interrogatory, a party must do so specifically and in detail, either by Bates numbers or through a sufficiently detailed description that allows the identification of the specific documents referenced. Defendants argue that the cases cited by Mattel largely involved responses pursuant to Rule 33(d), which allows a party to identify documents rather than provide a narrative response to an interrogatory.[28] Defendants cite no authority that in identifying documents in

---

[25] See Bryant's Surreply Re: Mattel's Motion for an Order Enforcing Court's Jan. 25, 2007 Order, at 8-9, Punak Dec., Exh. G.
[26] Order Granting Mattel's Motion Objecting to Portions of Discovery Master's Dec. 31, 2007 Order Regarding Hard Drives, at 2, Smyth Dec., Exh. 4.
[27] Mattel's Motion to Compel Responses to Interrogatories (Nos. 27-44 and 46-50) by the MGA Parties at 17.
[28] Clean Earth Remediation and Constr. Serv., Inc. v. Am. Int'l Group, Inc., 245 F.R.D. 137 (S.D.N.Y. 2007) does not aid MGA. The court found sufficient detailed "categories," including identification of documents by file name. Id. at 141. However, the court found
(footnote continued)

response to an interrogatory, a party may provide less specificity than identification of documents pursuant to Rule 33(d) requires. Moreover, as MGA acknowledges, in response to an interrogatory requiring the identification of documents, the documents should be identified "by Bates–number or file number." Ukiah Auto. Invs. v. Mitsubishi Motors of N. Am., 2006 WL 1348562, at *1 (N.D. Cal. 2006). Ukiah did not involve a response pursuant to Rule 33(d). MGA attempts to distinguish Ukiah on the grounds that the interrogatory at issue sought a narrower category of documents. Not so. It sought all documents supporting plaintiff's compensatory damages claim.[29]

Defendants also made no showing of any burden in identifying documents by Bates–number. Even if they had, given the amount in controversy, such burden would be outweighed by the benefit to Mattel in obtaining sufficient information to locate documents as readily as defendants. That is especially true because MGA has dumped literally millions of pages of documents on Mattel at the last minute—shortly before and even after the discovery cut–off. MGA should not be permitted to benefit from its delay by hiding relevant documents in a boxcar production after withholding them for months or years.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court grant Mattel's motion in its entirety.

DATED: March 24, 2008    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ B. Dylan Proctor
B. Dylan Proctor
Attorneys for Mattel, Inc.

---

more general category descriptions such as "numerous letters and e–mails between and among [plaintiff] and Defendants" insufficient. Id. at 142. Here, MGA's purported identification of documents is of the type the Clean Earth court found insufficient. For example, in response to Interrogatory No. 28, MGA identifies "documents showing the development of the first generation of Bratz dolls" with no description of the file the documents are contained in.

[29] Bryant also cites Rule 26(a) as permitting the identification of documents by category. However, he cites no authority, and offers no reason, why an interrogatory cannot demand more specificity than initial disclosures. It obviously can.