1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  jkeker@kvn.com
   MICHAEL H. PAGE - #154913
3  mpage@kvn.com
   CHRISTA M. ANDERSON - #184325
4  canderson@kvn.com
   MATTHEW M. WERDEGAR - #200470
5  mwerdegar@kvn.com
   JOHN E. TRINIDAD - #250468
6  jtrinidad@kvn.com
   AUDREY WALTON-HADLOCK- #250574
7  awaltonhadlock@kvn.com
   710 Sansome Street
8  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
9  Facsimile:  (415) 397-7188

10 Attorneys for Plaintiff
   CARTER BRYANT

11

12             UNITED STATES DISTRICT COURT

13     CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

14

15 CARTER BRYANT, an individual,          Case No. CV 04-09049 SGL (RNBx)
                                          (consolidated with CV 04-9059 & 05-
                        Plaintiff,        2727)
16
17       v.                              **[PUBLIC REDACTED]
                                         BRYANT'S MEMORANDUM OF
18 MATTEL, INC. a Delaware               POINTS AND AUTHORITIES IN
   Corporation,                          OPPOSITION TO MATTEL'S
19                                       MOTION FOR PARTIAL
                        Defendant.       SUMMARY JUDGMENT**
20
   CONSOLIDATED WITH MATTEL,             [Public Redacted Declaration of
21 INC., v. BRYANT and MGA               Matthew Werdegar; Statement of
   ENTERTAINMENT, INC. v.                Genuine Issues; and [Proposed] Order
22 MATTEL, INC.                          filed concurrently]

23

24                                       Date:      April 22, 2008
                                         Time:      10:00 a.m.
                                         Dept:      Courtroom 1
25                                       Judge:     Hon. Stephen G. Larson

26                                       Date Comp. Filed:  April 13, 2005

27                                       Discovery Cut-Off:  Jan. 28, 2008
                                         Pre-Trial Conference:  May 5, 2008
28                                       Trial Date:  May 27, 2008

413922.01

# TABLE OF CONTENTS

**Page**

I.  Introduction ...................................................................................................1

II.  Factual Background .......................................................................................3

    A.  Mattel's Employee Agreement is far more limited in scope than Mattel now claims. ..................................................3

    B.  Bryant honored all of his obligations to Mattel while pitching his Bratz idea to MGA and preparing to transition to a new career opportunity. ...................................................4

III.  Argument ......................................................................................................5

    A.  Mattel's claims to Bratz fail because the Employee Agreement does not include the sweeping definitions Mattel now seeks to assert against Bryant, and even if it did Mattel could not enforce such definitions here.........................................6

        1.  Mattel ignores and misstates controlling principles of California contract interpretation (as set forth in Bryant's Motion). ...................................................7

        2.  Mattel disregards the actual language of the agreement it forced on Bryant, which (as explained in Bryant's Motion) does not encompass Bryant's Bratz idea and material. .................................................8

        3.  California Labor Code Section 2870 does not help Mattel. ...................................................9

        4.  Mattel cannot prevail on summary judgment as to any of Bryant's Bratz sketches ███████████████ ███████████████ —because they are not "inventions" and were not ███████████ within the meaning of the Employee Agreement. ...................................................13

        5.  If the Employee Agreement means what Mattel claims (which it does not), it cannot be enforced against Bryant. ...................................................15

    B.  Mattel's copyright infringement claims lack merit, as set forth in the MGA parties' opposition brief. ...................................................16

    C.  Mattel's claims for breach of contract, breach of fiduciary duty, and breach of loyalty all fail....................................................16

        1.  Bryant breached no contractual obligation to Mattel...............16

        2.  Bryant did not owe Mattel any fiduciary duty as a

i

[PUBLIC REDACTED] BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413922.01

result of his position at Mattel or due to any alleged sharing of confidential information, and breached no duty to Mattel. ................................................................ 18

    a.    In California, an employee must be an officer, participate in the management of the company, and exercise discretionary authority for a fiduciary relationship to be imposed by law. ................ 18

    b.    Bryant's Employee Agreement and his alleged access to highly confidential information did not transform his ordinary employee relationship into a fiduciary relationship. ...................... 19

        (i)    The Employee Agreement's provisions do not create a confidential relationship as a matter of law. ............................................... 20

        (ii)    Bryant's alleged access to confidential information is insufficient to create a fiduciary relationship. ........................................... 21

    3.    Bryant did not breach his limited duty of loyalty (or any alleged fiduciary duty) by preparing to compete with Mattel *after* leaving his employment. ............................. 24

    a.    Bryant did not directly compete with Mattel while a Mattel employee—and thus he did not breach his duty of loyalty to Mattel. ............................ 26

    b.    Bryant was not required to disclose his efforts to pursue the Bratz idea. ................................................. 28

    c.    Bryant owned the Bratz idea and, thus, his assignment of the idea to MGA cannot be the basis for a claim of breach. ................................. 30

    d.    Bryant undertook no acts of direct competition with Mattel while still an employee. ............................ 31

  D.    Mattel is not entitled to summary judgment on Bryant and MGA's affirmative defenses. ................................................. 34

    1.    Bryant's affirmative defenses based on applicable statutes of limitations, laches, waiver, consent, and estoppel must go to the jury, as set forth in the MGA parties' opposition brief. ........................................... 34

    2.    Bryant's Phase I unclean hands defense must go to the jury. ................................................................ 34

IV.    Conclusion ............................................................................... 37

ii

413922.01

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

Page(s)

4

*Abraham Zion Corp. v. Lebow,*
   593 F. Supp. 551 aff'd, 761 F. 2d 93 (2d Cir. 1985) ........................ 26. 27, 29, 31

5

6

*Applera Corp.-Applied Biosystems Group v. Illumina, Inc.,*
   07-02845 WHA, 2008 WL. 170597 (N.D. Cal. Jan. 17, 2008) .................... 11, 13

7

8

*Braxton-Secret v. A.H. Robins Co.,*
   769 F.2d 528 (9th Cir. 1985) ................................................................6

9

10

*BurroughsWellcome Co. v. Barr Labs, Inc.,*
   40 F.3d 1223 (1994) .................................................................. 14

11

12

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.,*
   213 F.3d 474 (9th Cir. 2000) ...............................................................5

13

14

*City Solutions, Inc. v. Clear Channel Communications, Inc.,*
   201 F. Supp. 2d 1048 (N.D. Cal. 2002)............................................. 19, 20, 22, 23

15

16

*Eckard Brandes, Inc. v. Riley,*
   338 F.3d 1082 (9th Cir. 2003) ............................................................ 25, 27

17

18

*Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.,*
   403 F. Supp. 2d 968 (N.D. Cal. 2005)................................................ 18

19

20

*Fitzgerald v. Arbib,*
   268 F.2d 763 (C.C.P.A. 1959)............................................................. 14

21

22

*Franklin Music Co. v. American Broadcasting Cos.,*
   616 F.2d 528 (3d Cir. 1979) .............................................................. 32

23

24

*Hitzeman v. Rutter,*
   243 F.3d 1345 (Fed. Cir. 2001) .......................................................... 14

25

26

*IPVenture, Inc. v. Prostar Computer, Inc.,*
   503 F.3d 1324 (Fed. Cir. 2007) .......................................................... 11

27

28

i

413922.01

*Lahr v. Nat'l Trans. Safety Bd.*,
   453 F. Supp. 2d 1153 (C.D. Cal. 2006) ..................................................6

*Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*,
   146 F.3d 983 (D.C. Cir. 1998) ..................................................... 27, 28

*Merger Mgmt. Consulting, Inc. v. Wilde*,
   920 F. Supp. 219 (D. D.C. 1996) ................................................ 26, 27

*Miller v. Glenn Miller Products*,
   454 F.3d 975 (9th Cir. 2006) ................................................... 5, 6, 25

*Rita Medical Sys., Inc. v. Resect Medical, Inc.*,
   No. C. 05-03291 WHA, 2007 WL. 161049
   (N.D. Cal. Jan. 17, 2007) ........................................................... 11, 22

*Seward v. Union Pump Co.*,
   428 F. Supp. 161 (S.D. Texas 1977) ............................................... 26

*T.A. Pelsue Co. v. Grand Enters, Inc.*,
   782 F. Supp. 1476 (D. Colo. 1991) ................................................. 27

*Verigy US, Inc. v. Mayder*,
   No. C-07-04330 RMW, 2008 WL. 564634
   (N.D. Cal. Feb. 29, 2008) ............................................................... 11

*Voith Hydro Inc. v. Hydro West Group*,
   1997 WL 154400 (N.D. Cal. 1997) ................................................. 12

*Western Medical Consultants, Inc. v. Johnson*,
   80 F.3d 1331 (1996) ....................................................................... 27

*Wommack v. Durham Pecan Co.*,
   715 F.2d 962 (5th Cir. 1983) .......................................................... 14

**STATE CASES**

*Aero Bolt & Screw Co. v. Iaia*,
   180 Cal. App. 2d 728 (1960) .......................................................... 12

*Am. Home Shield of Cal., Inc. v. Fidelity Nat'l Home Warranty
   Co.*, 2003 WL 21085278 (Cal. App. 4 Dist. 2003) ........................ 29

[PUBLIC REDACTED] BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413922.01

*Auxton Computer Enters., Inc. v. Parker,*
  174 N.J. Super. 418 (1980)............................................24, 25, 26, 27, 29, 31, 32

*Badie v. Bank of America,*
  67 Cal. App. 4th 779 (1998)............................................................7

*Banner Metals Co. v. Lockwood,*
  178 Cal. App. 2d 643 (1960)...........................................................12

*Bancroft Whitney Co. v. Glen,*
  64 Cal. 2d 327 (1966)...................................................24, 25, 26, 28

*Computer Sciences Corp. v. Ferguson,*
  74 Cal. Rptr. 86 (1968)................................................................27

*Daniel Orifice Fitting Co. v. Whalen,*
  198 Cal. App. 2d 791 (1962)...........................................25, 26, 28, 30

*Edenbaum v. Dalton,*
  2002 WL 31474450 (Cal. Ct. App. Nov. 6, 2002)............................26, 27

*Fibreboard Paper Prods. Corp. v. East Bay Union of*
  *Machinists,* 227 Cal. App. 2d 675 (1964)...............................34, 37

*Fowler v. Varian,*
  196 Cal. App. 3d 34 (1987)............................................................32

*GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.,*
  83 Cal. App. 4th 409 (2000), overruled on other grounds by
  *Reeves v. Hanlon,* 33 Cal. 4th 1140 (2004)..............................18, 20

*Graham v. Scissor-Tail,*
  28 Cal. 3d 807 (1981).................................................................7

*J.C. Peacock, Inc. v. Hasko,*
  196 Cal. App. 2d 353 (1961)...........................................................32

*Kendall-Jackson Winery, Ltd. v. Super. Ct,*
  76 Cal. App. 4th 970 (1999)................................................33, 34, 36

*Maglica v. Maglica,*
  66 Cal. App. 4th 442 (1998)...........................................................23

iii

413922.01

*Maryland Metals, Inc. v. Metzner,*
   282 Md. 31 (1978) ................................................................. 26, 28, 29

*Mayhew v. Benninghoff,*
   53 Cal. App. 4th 1365 (1997) .................................................................. 7

*Michelson v. Hamada,*
   29 Cal. App. 4th 1566 (1994) ................................................................. 21

*Neal v. State Farm Ins. Co.,*
   188 Cal. App. 2d 690 (1961) ................................................................... 7

*Oakland Raiders v. Nat'l Football League,*
   131 Cal. App. 4th 621 (2005) ................................................................. 23

*Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,*
   69 Cal. 2d 33 (1968) .............................................................................. 7

*Parsons v. Bristol Dev. Co.,*
   62 Cal. 2d 861 (1965) ............................................................................ 7

*Pond v. Ins. Co. of N. America,*
   151 Cal. App. 3d 280 (1989) ................................................................. 33

*Powerline Oil Co. v. Super. Ct.,*
   37 Cal. 4th 377 (2005) ........................................................................... 7

*Rapistan Corp. v. Michaels,*
   511 N.W. 2d 918 (Mich. Ct. App. 1994) ............................................... 26

*Science Accessories Corp. v. Summagraphics Corp.,*
   425 A.2d 957 (1980) ................................................ 24, 26, 27, 28, 30, 31

*Sequoia Vacuum System v. Stransky,*
   229 Cal. App. 2d 281 (1964) ................................................ 24, 25, 26, 28

*Stevens v. Marco,*
   147 Cal. App. 2d 357 (1956) ........................................................... 21, 22

*Stokes v. Dole Nut Co.,*
   41 Cal. App. 4th 285 (1995) ................................................................. 32

iv

413922.01

*Warrantech Corp. v. Computer Adapters Servs., Inc.,*
    134 S.W.3d 516 (Tex. App. 2004) ................................................. 31

*Wolf v. Super. Ct.,*
    107 Cal. App. 4th 25 (2003) ........................................................ 23

*Wolf v. Superior Court,*
    114 Cal. App. 4th 1343 (2004) ...................................................... 7

*Worldvision Enter., Inc. v. Am. Broad. Companies,*
    142 Cal. App. 3d 589 (1983) ....................................................... 19


# FEDERAL STATUTES

17 U.S.C.S. 204(a) ...................................................................... 10


# STATE STATUTES

Cal. Civ. Code § 1636 ..................................................................... 8

Cal. Civ. Code §§ 980-989 ............................................................ 10

Cal. Civ. Code § 1654 ..................................................................... 7

Cal. Labor Code § 2870 ................................................. 1, 8, 9, 10, 11


# OTHER AUTHORITIES

19 Williston on Contracts, Sect. 54:26 (4th ed.) ....................... 25

Rest. 2d Agency § 393 cmt e ..................................................... 25, 26

Rest. (Third) of Agency, Sect. 8.04 cmt. c .......................... 24, 25, 31

413922.01

# I.    Introduction

Mattel's motion for summary judgment ("Mattel's Motion") misstates the law and distorts the facts of this case, and cannot justify summary judgment for Mattel on any part of its claims.  As explained below, in MGA's opposition brief, and in Bryant's own summary judgment motion ("Bryant's Motion"), the only possible grant of partial summary judgment here must be against Mattel, not for it.

*First*, Sections I and II of Mattel's Motion ignore critical questions of contract scope and interpretation and distort the nature of the inquiry before the Court.  For all the reasons discussed in Bryant's Motion, a proper analysis in fact mandates judgment in Bryant's favor, not Mattel's.  Mattel's self-serving and conclusory argument cannot hide the fact that its only contract with Bryant gives it no rights to his Bratz idea and creative efforts.  Moreover, California Labor Code § 2870 does not define the outer limits of Mattel's Employee Agreement, as Mattel claims (although even then Bryant's work would fall within its protections); rather, the nature and history of Section 2870 re-confirm that the Agreement drafted by Mattel had a narrow, technological and patent-oriented focus that does not encompass any part of Bratz.  All of this analysis (as well as other defects) also belies Mattel's assertion that its claims to certain Bratz sketches and Bryant's rough, patchwork "dummy" could be undisputed based merely on their dates of creation.  Finally, the Employee Agreement would be unconscionably draconian if interpreted as Mattel now claims it should be.

*Second*, Mattel is not entitled to summary judgment on its copyright claims (Mattel's Section III) both because (1) Mattel does not own any of the works it claims have been infringed, based both on a proper analysis of Mattel's Employee Agreement (regardless of the works' factual history) and, in addition, on the actual history of Bryant's creative process (which he will prove at trial), and (2) MGA's Bratz dolls are not substantially similar to Bryant's sketches, under principles of

413922.01

1  copyright law.  Bryant joins in and incorporates by reference MGA's arguments on

2  these issues as set forth in MGA's Memorandum of Points and Authorities in

3  Opposition to Mattel's Motion for Partial Summary Judgment ("MGA

4  Opposition"), and the relevant portions of MGA's Opposition to Mattel, Inc.'s

5  [Corrected] Separate Statement of Uncontested Facts and Conclusions of Law in

6  Support of Mattel, Inc.'s Motion for Partial Summary Judgment, as though fully

7  set forth herein.

8         *Third*, Mattel is not entitled to summary judgment on any part of its claims

9  for breach of contract, breach of fiduciary duty or breach of duty of loyalty

10  (Mattel's Section IV).  Bryant did not breach any contractual obligation to Mattel,

11  because Bryant owned everything he conveyed to MGA and honored all legitimate

12  requirements of Mattel's Employee Agreement.  Likewise, Bryant was not a

13  fiduciary of Mattel, either based on his position as an ordinary, low-level Mattel

14  employee or due to being "entrusted by Mattel with confidential, proprietary

15  information" (Mattel MSJ 34), and thus owed Mattel no fiduciary duty.  Moreover,

16  Bryant did not breach his limited duty of loyalty as an ordinary employee, and

17  Mattel cannot prove that his limited involvement with MGA prior to his departure

18  from Mattel (which he will prove at trial) was anything more than preparations to

19  compete with Mattel after leaving the company, which California law permits.

20         *Finally*, Mattel is not entitled to summary judgment on any of Bryant's

21  affirmative defenses (Mattel's Section VI), which either must be resolved in

22  Bryant's favor or present issues of material fact for the jury.  Bryant joins MGA's

23  argument supporting his defenses based on the statutes of limitations, laches,

24  waiver, consent, and estoppel, incorporating all related arguments and facts from

25  the MGA Opposition as though fully set forth here.  Bryant's unclean hands

26  defense must also survive summary judgment, as set forth below, because it

27  involves quintessential factual questions of Mattel's motivation and intent, and the

28

[PUBLIC REDACTED] BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413922.01

1  equitable significance of Mattel's unfair conduct surrounding this litigation.

## II.   Factual Background[1]

**A.   Mattel's Employee Agreement is far more limited in scope than Mattel now claims.**

As discussed at length in Bryant's Motion, both the text of Mattel's Employee Agreement (which Mattel labels an "Inventions Agreement") and the circumstances surrounding it make clear that the Agreement seizes for Mattel far less of its employees' creative work than Mattel now claims in this litigation. The Employee Agreement was an adhesive, one-sided contract ███████████ ████████████████████████████████████████████████████████████ ████████████  SGI 131.[2]  The terms of the Agreement claim for Mattel only "inventions" that are either "conceived or reduced to practice by [an employee] [alone or jointly by others] at any time during [his] employment by the Company"—terms of art invoking patent law.  Bryant Motion 21-25; SUF 7 (Ex. 8).  Although Mattel now claims (in litigation) that the Employee Agreement effected a sweeping assignment of all creative efforts by Mattel employees, except as prohibited under California law, Mattel in fact never had—and thus made no attempt to enforce—such sweeping rights.  Bryant Motion 7-8, 25-28; SUF 37-42. Instead, ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ *Id.*

As also discussed in Bryant's Motion, no other document Bryant signed at Mattel was a valid, binding contract.  Bryant Motion 36-40; SGI 134.

---

[1] To avoid repetition, Bryant refers the Court to his summary judgment papers (including portions of MGA's motion papers incorporated therein) for additional facts, incorporating them here by reference.  Bryant also relies on and incorporates here by reference certain facts stated in the MGA Opposition and supporting evidence, as stated herein.

[2] "SUF" refers to Bryant's Separate Statement of Undisputed Facts in support of Bryant's Motion.  Similarly, "SGI" refers to Bryant's Statement of Genuine Issues, filed herewith.

3

413922.01

1

**B.     Bryant honored all of his obligations to Mattel while pitching his Bratz idea to MGA and preparing to transition to a new career opportunity.**

2

3       Bryant's efforts to seek a more creatively fulfilling career by pitching his

4   Bratz idea to MGA were lawful and violated no rights of Mattel.  Instead, as

5   Bryant will prove at trial, his actions prior to leaving Mattel were nothing more

6   than preparations to pursue an idea of his own with MGA after leaving Mattel.

7   Taking the facts in the light most favorable to Bryant, Bryant had an idea



8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

413922.01

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### III.   Argument

25

Because Mattel bears the burden of proving its claims against Bryant at trial,

26

"it must come forward with evidence which would entitle it to a *directed verdict* if

27

───────────────

28

[3] Any contrary testimony by Mattel's witnesses can only create a fact issue for trial.

5

[PUBLIC REDACTED] BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413922.01

1  the evidence went uncontroverted at trial" to satisfy even its initial burden in

2  seeking summary judgment. *Miller v. Glenn Miller Prods.*, 454 F.3d 975, 987 (9th

3  Cir. 2006) (emphasis added); *C.A.R. Transp. Brokerage Co., Inc. v. Darden*

4  *Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).  In evaluating Mattel's

5  motion, all of Bryant's evidence must be believed, and all reasonable inferences

6  must be drawn in his favor. *Miller*, 454 F.3d at 988.  Mattel falls far short of even

7  this heavy "initial burden of establishing the absence of a genuine issue of fact on

8  each issue material to its case." *Id.* at 987.  Moreover, even where facts are

9  undisputed, summary judgment is not proper "where divergent ultimate inferences

10  may reasonably be drawn from the undisputed facts." *Lahr v. Nat'l Transp. Safety*

11  *Bd.*, 453 F. Supp. 2d 1153, 1169 (C.D. Cal. 2006) (citing *Braxton-Secret v. A.H.*

12  *Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985)).

13       Here, as set forth below, in the MGA Opposition, and in Bryant's Motion

14  (which Bryant will not repeat here, but incorporates by reference in full), the only

15  proper grant of partial summary judgment would be against Mattel, not for it.  The

16  undisputed facts require judgment for Bryant on many of Mattel's claims, while all

17  other claims raised in Mattel's Motion involve fact issues that must go to trial.

18  **A.  Mattel's claims to Bratz fail because the Employee Agreement does not include the sweeping definitions Mattel now seeks to assert against**
19  **Bryant, and even if it did Mattel could not enforce such definitions here.**

20       Sections I and II of Mattel's Motion ignore critical questions of contract

21  scope and interpretation (on which the undisputed facts, as discussed in Bryant's

22  own summary judgment motion, mandate judgment in Bryant's favor), and distort

23  the nature of the inquiry before the Court.  The Court should reject Mattel's glibly

24  misleading approach to the contractual issues before it.  The fundamental flaws in

25  Mattel's argument discussed here infect—and must defeat—not only Mattel's

26  breach of contract claim, but also its claims of copyright infringement, breach of

27

28

413922.01

1    fiduciary duty, and breach of the duty of loyalty.[4]

2    **1.    Mattel ignores and misstates controlling principles of California contract interpretation (as set forth in Bryant's Motion).**

3

4    Contrary to Mattel's simplistic presentation of the law, the Court must

5    consider all available evidence of the parties' intent to determine whether Mattel's

6    Employee Agreement—or any other purported contract with Bryant—is

7    reasonably susceptible to more than one interpretation, even if the language

8    appears to be clear on its face (which is not always the case here). *Parsons v.*

9    *Bristol Dev. Co.*, 62 Cal. 2d 861, 865-66 (1965); *Pac. Gas & Elec. Co. v. G.W.*

10   *Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 37, 39-40 (1968); *Wolf v. Superior*

11   *Court*, 114 Cal. App. 4th 1343, 1351 & 1356 (2004).

12   Then, all ambiguities must be resolved against Mattel, the drafter of the

13   contract. *Graham v. Scissor-Tail,* 28 Cal. 3d 807, 819-20, n. 16 (1981); *see also*

14   *Powerline Oil Co. v. Superior Court*, 37 Cal. 4th 377, 391 (2005); Cal. Civil Code

15   § 1654.  For a contract that is drafted by one party's lawyers or a contract of

16   adhesion (and the Employee Agreement is ***both***), this *contra preferentem* rule

17   applies with extra force. *Badie v. Bank of America*, 67 Cal. App. 4th 779 (1998)

18   (adhesion); *Neal v. State Farm Ins. Co.*, 188 Cal. App. 2d 690, 694 (1961)

19   (adhesion); *Mayhew v. Benninghoff*, 53 Cal. App. 4th 1365 (1997) (attorneys).

20   In addition, and regardless of whether or not the text is ambiguous, the Court

21   must not give Mattel's adhesive form contract an interpretation that would fall

22   outside the reasonable expectations of a weaker party in Bryant's position.

23   *Graham v. Scissor-Tail, Inc.,* 28 Cal. 3d 807, 820 (1981).  Nor can the Court

24   permit an unfairly one-sided interpretation of an adhesive contract. *Id.*

25   Under these principles, which Mattel entirely fails to address, the only

26   possible grant of summary judgment regarding Mattel's claims to any ownership of

27

28   _____
     [4] The particular flaws of each claim are discussed in more detail in the sections below.

[PUBLIC REDACTED] BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413922.01

1   Bratz must be for Bryant, not Mattel.  *See* Bryant Motion 17-40.

2         **2.**    **Mattel disregards the actual language of the agreement it forced on Bryant, which (as explained in Bryant's Motion) does not encompass Bryant's Bratz idea and material.**

3

4         Mattel's argument disregards not only the applicable legal principles, but the

5   facts of this case.  First, Mattel's argument fails to mention this critical fact:

6   Mattel's Employee Agreement does not claim for Mattel the rights that Mattel now

7   asserts against Bryant.  For all the reasons set forth in Bryant's Motion, Mattel's

8   Employee Agreement is not so sweeping as Mattel now claims; nor does Mattel

9   make any real effort to justify the broad contract reading it seeks.  By its plain

10  terms, the Agreement does not encompass Bryant's Bratz idea, sketches, and other

11  material, because none of Bryant's work was an "invention" under the Agreement,

12  nor would any hypothetical such "invention" have been "conceived or reduced to

13  practice by [Bryant] (alone or jointly by others) at any time during [his]

14  employment by the Company."  See Bryant Motion 17-36.  Nothing in Mattel's

15  actual Employee Agreement states or implies that Mattel owns Bryant's creative

16  work "to the fullest extent of the law," as Mattel now contends—without any

17  detailed analysis.  Mattel MSJ 2; SGI 159.

18        Mattel seeks to sidestep the plain language and scope of its Employee

19  Agreement by claiming that ███████████████████████████████████

20  ████  Mattel MSJ 8.  He does not, nor would any such agreement help Mattel here.

21  Mattel relies for this supposed "admission" on a deposition answer, taken out of

22  context, which had nothing to do with Mattel's Employee Agreement.  Also,

23  Mattel offers no evidence (and there is none) that Bryant's idea for a set of doll

24  characters, or his related sketches, would constitute "designing toys" even if

25  designing toys were in fact "inventing."  Moreover, Mattel offers no evidence—

26  again, because it has none—that Bryant had Mattel's claimed understanding of

27  "inventing" ████████████████████████████████████  or that a

28

[PUBLIC REDACTED] BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413922.01

1  reasonable employee in Bryant's position would understand the Agreement in this

2  way. Where everything about the Employee Agreement and the circumstances at

3  the time of its execution indicates that all reasonable parties would understand it to

4  have a far narrower meaning, that narrower meaning must prevail. Cal. Civ. Code

5  § 1636 (providing contracts "must be so interpreted as to give effect to the mutual

6  intention of the parties as it existed at the time of contracting").

### 3.  California Labor Code Section 2870 does not help Mattel.

8  Mattel claims that California Labor Code Sections 2870-2872 define the

9  outer limits of Mattel's Employee Agreement; they do no such thing, as both the

10  Employee Agreement itself and the nature and history of Section 2870 make clear.

11  Mattel's Agreement does not claim for Mattel all employee thoughts and creative

12  ideas, except inventions protected by Section 2870, as Mattel now falsely claims.

13  Mattel MSJ 6; SGI 159. Rather, the Agreement's scope is far more limited, as

14  described above and in Bryant's Motion.

15  In addition, because Mattel now claims that the Employee Agreement

16  directly tracks Section 2870 and its limits, the Agreement should also share the

17  limitations of that legislation. And the history of Section 2870 reveals that it was

18  intended to promote scientific and technological innovation by securing certain

19  patent rights for engineers and scientists—that concern for patent rights permeates

20  the entire legislative history.[5] SGI 158. Thus, to the extent that Section 2870 is at

---

[5] The following are just a few highlights illustrating this strong patent focus:

- Assembly Bill No. 2902, Jan. 29, 1976 (first version of Section 2870, explaining that bill is needed because "existing law contains no provisions relating to the right to the patent for an invention made by an employee.");

- Bill Digest for May 17, 1976 hearing (explaining that "patents are governed by federal law" but "state law may affect certain aspects of patents," which bill will do by "provid[ing] that patent rights to an invention" belong to employees under certain conditions");

- March 29, 1976 letter of George H. Murphy, Legislative Counsel, to Assemblyman John J. Miller (analyzing proposed legislation for conflict with federal patent laws, with no mention of copyright) (in legislative history file of A.B. 474, the version of the patent bill that passed in 1979);

9

413922.01

1   all relevant to this dispute, it only serves to reaffirm the narrow, technologically-

2   focused meaning of Mattel's Employee Agreement, which is already clear from the

3   Agreement's text and surrounding circumstances (as discussed in Bryant's own

4   motion for partial summary judgment).[6]

5       Moreover, Mattel's Employee Agreement follows Section 2870 in using the

6   language of patent law – not of copyright law.  In contrast, the California code

7   contains numerous provisions that do address copyright issues, using the distinct

8   language of copyright law.  *See, e.g.*, Cal. Civ. Code §§ 980-989 (protecting

9   "products of the mind").  Some of these provisions even illustrate the contrasting

10   language used for copyrights and patents by addressing both types of protection, in

11   parallel (but separate) subsections.  *Compare, e.g.*, Cal. Civ. Code § 980(a)

12   (addressing "original work[s] of authorship" by an "author") *with* Cal. Civ. Code §

13   980(b) (addressing "invention[s] or design[s]" by an "inventor or proprietor").

14   These provisions confirm that the California legislature is fully capable of enacting

15   copyright-related laws (to the extent not preempted by federal law), but that

16   Section 2870 is not such a law:  it addresses inventions, and is a patent-oriented

17   law intended to protect and promote technological innovation.  Mattel's Employee

---

19   • Memo re A.B. 474 for Labor, Employment & Consumer Affairs Committee
20      hearing March 20, 1979 (explaining that "patents are governed by federal law. The United States Constitution specifically empowers Congress to protect inventions.");

21   • Assemblyman Terry Goggin, A.B. 474 Statement Assembly Comm. on Labor,
22      Employment & Consumer Affairs, March 20, 1979 (A.B. 474's author explaining that the bill "guarantees patent rights to employed inventors"; describing need for
23      bill because lack of employee control over inventions "undermines the patent system itself by removing any incentive to create," contributing to United States's
24      "fall[] from 1st to 7th place since World War II" in "patents of origin").

*See* Bryant's Request for Judicial Notice (filed herewith), Exs. A-E.

25   [6] In the event that the Court disagrees with Bryant's interpretation of the term "invention"
26   in the Employee Agreement and Section 2870, Bryant contends and will argue at trial that his Bratz idea and creative efforts nonetheless belong solely to him under the
27   protections of Section 2870.  However, under the most coherent reading of the Agreement and Section 2870, the Court (and the jury) need not reach the question
28   whether Section 2870 protects Bryant here.

10

1   Agreement, which tracks and incorporates Section 2870 (according to Mattel, by

2   using Section 2870 to define the scope of the Agreement), is similarly patent-

3   oriented and cannot encompass Bryant's Bratz idea, sketches, and other materials.[7]

4          A review of court decisions applying Section 2870 also confirms that, unlike

5   some other employers' agreements, Mattel's Employee Agreement simply does not

6   claim for Mattel "all inventions not excluded by the terms of Section 2870" (as

7   Mattel now claims, without analysis, Mattel MSJ 6), and that Section 2870 and

8   agreements referencing it ordinarily apply to technological and scientific

9   innovations.  Where employers' agreements do expressly claim all inventions not

10  exempted under Section 2870, courts may enforce that agreement; but Mattel's

11  Employee Agreement contains no such express language.  SGI 159.  *Cf. Verigy*

12  *US, Inc. v. Mayder*, No. C-07-04330 RMW, 2008 WL 564634, *1 (N.D. Cal. Feb.

13  29, 2008) (technical employer's agreement claiming all proprietary developments

14  not exempted under Section 2870).  Also, and tellingly, Mattel has pointed to no

15  decision applying Section 2870 or an "inventions" assignment agreement to a doll

16  character idea, sketch, or other artistic effort.  Rather, Section 2870 typically

17  affects cases and agreements involving patent disputes in a wide range of technical

18  fields.  *See, e.g., IPVenture, Inc. v. Prostar Computer, Inc.*, 503 F.3d 1324 (Fed.

19  Cir. 2007) (patent for management of computer systems); *Applera Corp.-Applied*

20  *Biosystems Group v. Illumina, Inc.*, No. C 07-02845 WHA, 2008 WL 170597, *1-5

21

22  [7] Bryant's Motion also refutes Mattel's claim that the Employee Agreement's limited

23  reference to copyright in inventions alters the basic technology and patent-oriented nature
    of the Agreement.  Bryant Motion 22-25 & n.13.  To the extent that the Court might find

24  (or Mattel might argue) that Section 2870 carries a narrower definition of "inventions"
    than the Employee Agreement (which it does not), Bryant's Bratz idea and efforts would

25  still belong to him under principles of copyright law.  *Id.* 34-36.  Section 2870 does not
    attempt to displace the federal copyright regime, under which Bryant's work belongs to

26  him unless (1) Mattel owns it as a work for hire, or (2) Bryant knowingly transferred
    ownership in a clear, explicit written instrument.  As Bryant's Motion explains, Mattel

27  admits that Bryant's Bratz work was not a "work for hire" done in the scope of his Mattel
    employment, *id.* 34 n.20; MGA SUF para 80, and the adhesive and unclear Employee

28  Agreement is not a valid transfer of copyright ownership under 17 U.S.C. s 204(a).

11

413922.01

1  (N.D. Cal. Jan. 17, 2008) (patents related to DNA sequencing); *Rita Medical Sys.,*

2  *Inc. v. Resect Medical, Inc.*, No.. C 05-03291 WHA, 2007 WL 161049, *2 (N.D.

3  Cal. Jan. 17, 2007) (patents related to medical devices).

4      Finally, even if Mattel's Employee Agreement did claim all inventions not

5  protected by Section 2870, and even if that claim could potentially encompass

6  Bryant's Bratz idea and sketches, material factual disputes would remain as to

7  whether Section 2870 would protect Bryant's Bratz efforts here.  Mattel grossly

8  oversimplifies this analysis, with a glib and conclusory argument that ignores key

9  factual disputes and the precise scope of Section 2870.  In fact, a reasonable jury

10  could find that any "invention" involving Bryant's Bratz idea and creative efforts

11  was developed on his own time, without using Mattel's resources within the

12  meaning of the law, and did not relate to Mattel's actual or anticipated business.

13      First, Bryant's testimony and other evidence indicate that Bryant had his

14  Bratz idea and made his early sketches while not working at Mattel, and that any

15  actual development of the idea during the years he worked at Mattel used only

16  Bryant's own time and resources.  SGI 135-150.  Indeed, in the shop rights

17  context, courts consistently hold that use of a *de minimis* amount of materials gives

18  the employer no rights to an employee's invention.[8]  Also, Mattel's "resources"

19  cannot include its ████████████████████████████████████

20      Second, a jury could find that any efforts by Bryant related to his Bratz idea

21

22  [8] *See Voith Hydro Inc. v. Hydro West Group*, 1997 WL 154400, *6-8 (N.D. Cal. 1997)

23  (where invention was conceived before employment and reduced to practice afterward, the employee's use of "some time and resources" to work on one component of the

24  invention was insufficient to give rise to any ownership rights in the employer); *Banner Metals Co. v. Lockwood*, 178 Cal. App. 2d 643, 649-50, 656-58, 662 (1960) (use of some

25  wire and employer's welding machine after hours was "negligible and unimportant and in no substantial way produced or contributed to the development of a receptacle of a

26  commercially acceptable form"); *Aero Bolt & Screw Co. v. Iaia*, 180 Cal. App. 2d 728, 737-39 (1960) (use of employer's paper pads, bolts for early models and prototypes,

27  typists and copier in connection with drawings submitted to manufacturers, and employer's shop on weekends to make samples did not create ownership rights in the

28  employer because employee did not use a "substantial amount" of its resources).

---

12

[PUBLIC REDACTED] BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413922.01

1   during the years he worked at Mattel ███████████████████████████

2   ████████████ did not constitute "development" of the idea, but only

3   preparations to pitch and pursue it after leaving Mattel.  *See infra* Section C.III.

4      Finally, a jury could find that (despite Mattel's current self-servingly broad

5   definitions of its "business") Mattel in fact had more limited business interests and

6   plans that did not encompass Bratz, based on at least the following facts: ████████

7   ████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████

11  ████████████████████████████   SGI 160-163.

12     Courts have denied summary judgment in similar (though patent-related)

13  situations, properly recognizing that the jury must be permitted to evaluate the

14  evidence and determine whether Section 2870 applies.  *Applera Corp.-Applied*

15  *Biosystems Group*, 2008 WL 170597 at *4-5 (denying summary judgment in

16  Section 2870 dispute despite "strong" evidence favoring employer, where

17  employee testified he thought up and developed his invention on his own time, jury

18  could find that minimal company resources used were not part of "developing" his

19  invention, and company knew about the invention but delayed suit).

20   **4.   Mattel cannot prevail on summary judgment as to any of Bryant's**
     **Bratz sketches—including the ███████████████████████████ it**
21   **claims are undisputedly its property—because they are not**
     **"inventions" and were not "conceived or reduced to practice . .**
22   **during [Bryant's] employment" within the meaning of the**
     **Employee Agreement.**
23

24     The analysis above (and in Bryant's Motion) amply demonstrates that Mattel

25  does not own any of Bryant's Bratz material, regardless of when it was created—

26  or, at the very least, that the material facts underlying Mattel's claims of ownership

27  are disputed, precluding any grant of summary judgment to Mattel as to any of

28

[PUBLIC REDACTED] BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413922.01

1   Bryant's Bratz materials.  That analysis applies equally to the ███████████

2   ████████████████████ that Mattel claims were undisputedly made within the

3   time period that Bryant was employed at Mattel; whatever their dates of creation,

4   they still do not belong to Mattel.  First, they are not Mattel's because (as shown

5   above) none of Bryant's Bratz idea or creative efforts are inventions conceived or

6   reduced to practice during his employment, within the meaning of the Employee

7   Agreement.  Second, even if Bryant's overall Bratz idea, or some combination of

8   sketches and other materials could be an invention satisfying all the terms of the

9   Agreement (which is not the case), the individual items Mattel claims here still

10  would not constitute "inventions" "conceived" or "reduced to practice" "during

11  [Bryant's] employment."  Tracing or coloring a sketch logically cannot constitute

12  "conceiving" or "reducing to practice" an invention.[9]  Also, if such a thing is

13  possible, it makes even less sense to claim that sketches for ███████████████

14  ████████████████████ are "inventions" than that a complete doll

15  character idea is one.  Nor does Mattel offer any explanation of how it claims the

16  ██████████████ were ever reduced to practice during Bryant's Mattel

17  employment (especially since ███████████████████████████████),

18  or how they were "conceived" separately from Bryant's core Bratz idea and earlier

19  sketches (whose factual history is disputed).  Also, Mattel offers (and has) no

20  _____

21  [9] The terms "conceived" and "reduced to practice" are terms of art in patent law that do
    not encompass sketching, tracing, or coloring a doll character idea.  *See Hitzeman v.*

22  *Rutter*, 243 F.3d 1345, 1356 (Fed Cir. 2001) ("[T]he test for conception is whether the
    inventor had an idea that was definite and permanent enough that one skilled in the art

23  could understand the invention . . . An idea is definite and permanent when the inventor
    has a specific, settled idea, a particular solution to the problem at hand, not just a general

24  goal or research plan . . ."); (quoting *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40
    F.3d 1223, 1228 (1994)); *Wommack v. Durham Pecan Co.*, 715 F.2d 962, 966 (5th Cir.

25  1983) ("[R]educed to practice [] includes not only the reduction [of an idea] to reality, but
    also sufficient testing or experimentation to demonstrate that the device as it exists

26  possesses sufficient utility to justify a patent, i.e., that the invention is suitable for its
    intended purpose.") (quotations omitted); *Fitzgerald v. Arbib*, 268 F.2d 763, 765

27  (C.C.P.A. 1959)  ("[T]his court and its predecessors in patent jurisdiction have held that
    reduction to practice of a three-dimensional design invention requires the production of

28  an article embodying that design.").  *See also* Bryant Motion 23-24.

14

413922.01

evidence that any of the sketches were created during Bryant's working hours at Mattel.  SGI 164.  The same problems defeat Mattel's claims to the ██████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████   *See*

MGA SGI 21.

### 5.    If the Employee Agreement means what Mattel claims (which it does not), it cannot be enforced against Bryant.

It does not matter whether the Employee Agreement is enforceable or not, because as a matter of common sense and ordinary contract interpretation it does not give Mattel the rights the company now claims.  However, Mattel also mistakes Bryant's argument against enforcing the agreement with the meaning Mattel now claims for it:  Bryant does not contend that the Employee Agreement in itself is unenforceable, but only that it is unconscionably draconian if interpreted as Mattel now claims it should be, and thus cannot be interpreted or enforced in that manner.  Under the proper interpretations set forth in Bryant's Motion and above, the Employee Agreement is enforceable—but it gives Mattel no rights to Bryant's Bratz idea, sketches, and other material.

Bryant recognizes that the Court has already considered the terms of the Employee Agreement on motions to dismiss and concluded, looking only within the four corners of the document, that it is not unconscionable for Mattel to expect "that the works of its design staff—created by Mattel's employees, using Mattel's resources, during time for which Mattel paid the employee—be considered its property."  July 18, 2006 Order at 14.[10]  However, the Court has not considered whether the Employee Agreement is enforceable if it is given the meaning Mattel

---

[10] Bryant preserves all of his rights with respect to the Court's July 18, 2006 Order dismissing Bryant's counterclaims pertaining to the validity and enforceability of the Employee Agreement, including any and all rights on appeal.

15

413922.01

1   now claims for it, on the facts of this particular case.  Based on its past conduct and

2   the circumstances surround the Employee Agreement, as well as California public

3   policy, Mattel simply cannot enforce any improper interpretation of the Employee

4   Agreement—such as one purporting to prohibit Bryant from engaging in good faith

5   and reasonable efforts to seek employment or professional opportunities with other

6   companies, including Mattel competitors, while still employed by Mattel.[11]

7          In sum, the Employee Agreement gives Mattel no rights to any part of

8   Bryant's Bratz idea or sketches.  Thus, all of Mattel's claims based on its supposed

9   ownership of Bryant's idea and sketches fail.  As discussed below, this

10  fundamental defect—as well as other flaws—must defeat Mattel's motion for

11  summary judgment on its claims for copyright infringement, breach of contract,

12  breach of fiduciary duty, and breach of loyalty.

13  **B.    Mattel's copyright infringement claims lack merit, as set forth in the MGA parties' opposition brief.**

14

15         Bryant joins in MGA's arguments that Mattel's copyright infringement

16  claims fail because Mattel does not own the works it claims MGA and Bryant have

17  infringed, and because MGA's Bratz dolls are not substantially similar to Bryant's

18  original sketches.  To the extent summary judgment is possible on any copyright

19  issues, that judgment must be in Bryant's favor – not Mattel's – so Mattel's

20  summary judgment motion must be denied.  Bryant incorporates the arguments and

21  facts set forth in MGA's Opposition Brief and factual submissions on this subject,

22  as though fully set forth herein.

23  **C.    Mattel's claims for breach of contract, breach of fiduciary duty, and breach of loyalty all fail.**

24         **1.    Bryant breached no contractual obligation to Mattel.**

25         Mattel's adhesive Employee Agreement is the only contract between Mattel

26  ――――――――――――――――

27  [11] Mattel is also precluded from enforcing the Employee Agreement against Bryant in this litigation on the bases of various statutes of limitations, and Mattel's unclean hands, waiver, estoppel, laches, and consent.  *See infra* Section D.

28

16

413922.01

and Bryant, and Bryant did not breach any of that agreement's requirements. First, as explained above, Bryant did not breach the Employee Agreement by failing to turn his Bratz idea, sketches and other material over to Mattel, because the Agreement gave Mattel no rights to any of Bryant's Bratz material, even setting aside the clear factual disputes over the history of Bryant's idea and creative efforts surrounding Bratz.[12]

Bryant also did not breach any contractual obligation to Mattel by pitching his Bratz idea and pursuing the opportunity to develop it with MGA. The Employee Agreement does contain a clause barring Bryant from engaging in employment or business other than for the company, or investing in or assisting (in any manner) any business competitive with the business or future business plans of the Company, without Mattel's consent. SUF 7 (Ex. 8 ¶ 3(a)). However, this language on its face does not prohibit a Mattel employee from pursuing new employment opportunities or preparing to leave the company. As discussed below, that is all Bryant did before he left his Mattel employment. The language of the Employee Agreement and Mattel's related conduct ███████████████████ ████████████ do not logically support a broader interpretation. Moreover, (1) the Employee Agreement must be read narrowly against Mattel, its drafter, (2) a broader interpretation would impermissibly violate the reasonable expectations of Mattel employees, the weaker parties to an adhesive contract, and (3) a broader interpretation would violate California's strong public policy in favor of employee mobility, as demonstrated by California's law that preparations to compete with an employer to not violate an employee's duty of loyalty (discussed below).[13]

---

[12] Even Mattel acknowledges that the parties dispute the history of Bryant's Bratz idea and of "some items" related to it—a rather coy description for *all* of Bryant's tangible Bratz work (including his original Bratz sketches) except for the six allegedly undisputed items identified in Mattel's motion. SGI 165; Mattel MSJ 1, 9.

[13] The principles of California contract law discussed in Bryant's Motion and above apply equally here, and Mattel's course of conduct (including imposing an adhesive contract and tolerating moonlighting) is equally significant. Bryant Motion 17-34.

17

413922.01

Mattel's claims also fail to the extent they are based on any other purported contract. As discussed in Bryant's Motion, Mattel's Conflict of Interest Questionnaire is not a contract (nor did Mattel intend it to be), and does not bind Bryant. Bryant Motion 36-38. Thus, even if Mattel's claims that Bryant failed to comply with the supposed terms of the Questionnaire were accurate (which they are not), that failure would not breach any contractual obligation to Mattel. And in fact, as the facts set forth above demonstrate, ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ Bryant cannot be blamed for Mattel's failure to seek more information about that opportunity once informed of it.

### 2. Bryant did not owe Mattel any fiduciary duty as a result of his position at Mattel or due to any alleged sharing of confidential information, and breached no duty to Mattel.

The Court also should reject Mattel's attempt to sidestep established California law in order to create a fiduciary relationship where the undisputed facts (much less disputed facts) show a straightforward employment relationship giving rise to a modest duty of loyalty, but not a more onerous fiduciary duty.

### a. In California, an employee must be an officer, participate in the management of the company, and exercise discretionary authority for a fiduciary relationship to be imposed by law.

*First,* Mattel tacitly concedes that Bryant does not owe Mattel any fiduciary duty *imposed by law* as a result of his position as a Mattel employee. Mattel fails to even mention that under California law employees ordinarily do *not* owe employers fiduciary duties. In addition, Mattel omits any discussion of the limited circumstances under which an employee of a corporation will owe his employer a fiduciary duty—the employee must be an officer of the company, must participate in management of the company, *and* must have discretionary authority in his managerial capacity. *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs.,*

413922.01

*Inc.,* 83 Cal.App. 4th 409, 420-21 (2000) ("*GAB Business*"), *overruled on other grounds by Reeves v. Hanlon,* 33 Cal. 4th 1140 (2004); *Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.,* 403 F. Supp. 2d 968 (N.D. Cal. 2005). Mattel has provided no evidence (much less undisputed facts) to satisfy the criteria set forth in *GAB Business* or in *Enreach Technology.*[14]  Mattel's complete failure to address the criteria set forth in *GAB Business* alone requires the denial of summary judgment on Mattel's claim for breach of fiduciary duty. *Enreach Tech.,* 403 F. Supp. 2d at 976. Nevertheless, we address Mattel's additional arguments below.

### b. Bryant's Employee Agreement and his alleged access to highly confidential information did not transform his ordinary employee relationship into a fiduciary relationship.

Omitting any reference to the established principles set forth in *GAB Business* and discussed in Bryant's Motion, Mattel instead asserts that Bryant held a "position of trust" and was "entrusted . . . with highly confidential information" and thus owed Mattel fiduciary duties as a matter of law. Mattel MSJ 34-35. Given that Mattel cannot satisfy the standard set forth in *GAB Business* to demonstrate a fiduciary relationship imposed by law, Mattel presumably claims that Bryant entered into the second type of fiduciary relationship, a "confidential relationship" undertaken by agreement. However, the two alleged "facts" relied upon by Mattel—that Bryant held a "position of trust" and had access to "highly confidential information"—do not even come close to demonstrating as a matter of law that Bryant was in a "confidential relationship" with Mattel such that he owed



14 [REDACTED]

(as was the chief software architect in *Enreach*) [REDACTED]

. SUF ¶¶ 28-33. Indeed, the provisions of the Employee Agreement relied upon by Mattel are not even relevant to the analysis under *GAB Business.*

19

413922.01

1    Mattel fiduciary duties.[15]

2              **(i)   The Employee Agreement's provisions do not create a**
               **confidential relationship as a matter of law.**

3

4         As discussed at length in Bryant's Motion, California law requires more than

5    the mere assertion of the placement of trust in another or the sharing of

6    confidential information to establish a fiduciary relationship.  Indeed, California

7    courts consistently grant summary judgment on this issue *in favor of defendants*

8    where a party does not set forth facts establishing the hallmarks of an agreed upon

9    confidential relationship:  the *voluntary and knowing* acceptance of trust that

10   creates a *legally recognized* fiduciary relationship, placing the fiduciary in a

11   superior position of control over the dependent party.  *City Solutions, Inc. v. Clear*

12   *Channel Communications,* Inc., 201 F. Supp. 2d 1048, 1050-51 (N.D. Cal. 2002).

13   Mattel simply has not met its burden of setting forth undisputed facts which

14   establish the hallmarks of such a "confidential relationship."

15        Mattel fails to mention these established requirements for creating a

16   confidential relationship.  Instead, it summarily asserts that the provisions of the

17   Employee Agreement stating that Mattel "depends upon [the employee] to

18   maintain [the confidentiality of Proprietary Information] and [the employee]

19   accept[s] that position of trust...create a fiduciary duty under California law."

20   Mattel MSJ 34.  Remarkably, the only case Mattel cites to support its flatly

21   incorrect assertion is *GAB Business.  Id.*  In fact, *GAB Business* specifically notes

22   that *even when an employee is an officer*, something more than mere title is needed

23

24   [15]  Indeed, as argued in Bryant's Motion, no triable issue of fact precludes summary
     judgment *against Mattel* on Mattel's claim for breach of fiduciary duty.  Although the
25   question of whether a confidential relationship exists involves evaluation of facts, *City
     Solutions,* 201 F.Supp. 2d at 1051, courts may grant summary judgment on a breach of
26   fiduciary duty claim when, as here, "the facts, taken in the light most favorable to
     plaintiff, make it perfectly clear the parties' dealings fall into a category of relationships
27   not susceptible to fiduciary obligations and that the parties have not, by their actions,
     taken themselves out of its ambit."  *Id.; see also, Worldvision Enters., Inc. v. Am. Broad.*
28   *Cos.,* 142 Cal. App. 3d 589, 595 (1983).

                                              20

413922.01

1    to create a fiduciary relationship. *GAB Business*, 83 Cal. App. 4th at 420. "After

2    all, a corporation cannot make a mail clerk its fiduciary by simply bestowing upon

3    the clerk the title of officer." *Id.*

4         Thus, *GAB* Business rejected the very proposition upon which Mattel now

5    appears to rely—that a party can claim a fiduciary relationship is created merely by

6    stating that an employee has a particular title or, as here, is designated as holding a

7    "position of trust." As discussed above, the Employee Agreement was an adhesive

8    form agreement, ████████████████████████████

9    ████████████████████████████████████████████

10   ████████  SUF ¶¶ 11-13, 17-18. Mattel asserts that this fact alone—the

11   inclusion of a Proprietary Information provision in an adhesive contract—creates a

12   confidential relationship giving rise to a fiduciary relationship with every

13   employee it hires, including Bryant. Mattel's failure to cite any additional case for

14   this position underscores its absurdity.[16]

15              **(ii)    Bryant's alleged access to confidential information is
                          insufficient to create a fiduciary relationship.**
16

17        Mattel then argues that even if the provisions of the Employee Agreement

18   do not create a "confidential relationship," Bryant became a fiduciary because

19   Mattel entrusted him with highly confidential information, relying on *Stevens v.*

20   *Marco,* 147 Cal. App. 2d 357 (1956). Mattel MSJ 34-35. Again, Mattel fails to

21   satisfy the standards set forth in the cases it relies upon. In *Stevens v. Marco*,

22   Stevens, an inventor, disclosed a secret invention to Marco, the officer of a

23   company capable of manufacturing the invention. Stevens then entered into a

24   [16] Mattel perhaps relies upon *GAB* Business only for its recitation of the general
25   requirements of a confidential relationship that gives rise to a fiduciary relationship. If
     so, *GAB Business* is equally unhelpful to Mattel. In reaching its holding, *GAB Business*
26   acknowledged the line of authority discussing the "*other kind* of fiduciary duty—one
     'undertaken by agreement' rather than 'imposed by law.'" *Id.* at 417. The court then
27   explained that this line of authority was not germane to the issue before it—when to
     impose a fiduciary duty on an officer of a corporation. *Id.* at 417-19. *GAB Business*
28   offers no support for Mattel's claim that the insertion of a confidentiality provision in

413922.01

1   series of agreements with Marco in which Marco promised that, in exchange for

2   transferring Steven's interest in the invention, Marco would prosecute an

3   application for a patent, manufacture and sell the device, and pay plaintiff a royalty

4   on gross sales. *Stevens v. Marco*, 147 Cal. App. 2d at 373.  The court specifically

5   noted that "all the classic elements of a confidential relation" were present:  (1)

6   entrusting of a secret invention to a person with the ability to develop, patent and

7   exploit it; (2) Marco's superior position, since he was in charge of marketing,

8   production and bookkeeping; and (3) a relationship akin to that of a trustee or joint

9   venturer. *Id.* at 373-74.[17]

10       Here, even Bryant's supposed admissions (which Mattel overstates) do not

11   even approach the factual situation in *Stevens v. Marco*.  According to Mattel,

12   ███████████████████████████████████████████████████████████████

13   ███████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████

16   ███████████████████████████████   Mattel MSJ 35.  Thus, the information

17   "entrusted" to Bryant is nothing more than the information he needed to do his

18   job—it is not analogous to the entrusting of a secret invention to the business

19   person who will take sole charge of exploiting it.

20       More importantly, courts, including the court in *Stevens v. Marco*, have

21   repeatedly held that the entrusting of confidential information is not sufficient to

22

23   ───────────────────────────────────────────────
     Bryant's Employee Agreement creates a fiduciary relationship.
     [17] Mattel also relies upon *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1581 (1994) for

24   the general proposition that confidential and fiduciary relationships arise whenever trust
     and confidence is reposed by one person in the integrity of another.  However, *Michelson*

25   goes on to note that courts have not found confidential relationships in certain
     relationships such as employer-employee, landlord-tenant, insurer-insured, and other

26   contractual relationships. *Id.*  Moreover, in *Michelson,* the alleged fiduciary relationship
     arose out of the plaintiff's agreement with the defendant that the defendant would perform

27   bookkeeping, billing and collection services for plaintiff's professional corporation in
     exchange for 50% of the first $120,000 collected.  Defendant was not an employee of

28   plaintiff, nor did the case turn on access to confidential information. *Id.* at 1576-77.

[PUBLIC REDACTED] BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

1 | create a "confidential relationship" that gives rise to fiduciary duties. *Stevens*, 147

2 | Cal. App. 2d at 373-74; *see also City Solutions,* 201 F. Supp. 2d at 1050

3 | (confidentiality agreement between two parties considering bidding on a public

4 | contract and sharing of confidential information did not create a confidential

5 | relationship where the contract did not); *Rita Medical Systems, Inc. v. Resect*

6 | *Medical, Inc.,* 2007 WL 161049 (N.D.Cal.) *6 (employee had no fiduciary duty as

7 | a matter of law where the employment contract required employee to keep trade

8 | secrets confidential but did not clearly indicate he had a fiduciary duty). If an

9 | employee's access to confidential information needed to do his job were sufficient

10 | to create a fiduciary relationship, then nearly every employee in California would

11 | be a fiduciary—a result *GAB Business* and other courts have already rejected.

12 | In short, Mattel has not even attempted to show that the additional "classic

13 | elements of a confidential relations" are present. Nor can it. Mattel points to no

14 | facts that show that Bryant *knowingly* or *voluntarily* agreed to enter into a

15 | "confidential relationship" with Mattel.[18] Nor does Mattel point to any act creating

16 | a legally recognized fiduciary relationship—such as a trustee or joint venturer.[19]

17 | Mattel also fails to set forth evidence that Bryant was placed in a position of

18 | control over Mattel's property or affairs.[20] Indeed, the existence of the contracts

19 | governing the relationship between Bryant and Mattel precludes a finding that the

20 | parties entered into a separate "confidential relationship."[21] Thus, because the

---

[18] To the contrary, as set forth in Bryant's Motion and incorporated herein, the undisputed facts show that Bryant did not voluntarily assume any fiduciary duty to Mattel.

[19] *See* Bryant's Motion at 15-16 (discussing *Magica v. Magica*, 66 Cal. App. 4th 442 (1998) and *Wolf v. Superior Court*, 107 Cal. App. 4th 25 (2003)).

[20] To the contrary, Bryant was merely ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Bryant's Motion 6-7.

[21] As a general rule, courts have found that no fiduciary duty exists "where other legal relationships clearly existed between parties which covered the transaction in suit and which were inconsistent with the existence of fiduciary duty." *Oakland Raiders v. Nat'l Football League*, 131 Cal. App. 4th 621, 634 (2005) (internal quotation marks omitted); *see also City Solutions*, 201 F. Supp. 2d at 1049 (existence of confidentiality agreement precludes finding of breach of fiduciary duty not explicitly required by the agreement);

23

Employee Agreement specifically covers the relationship between Mattel and Bryant and does not impose a fiduciary duty, SUF ¶¶ 14, the court should reject Mattel's attempt to convert its breach of contract claim into a tort claim, merely in order to obtain additional damages. [22]

### 3. Bryant did not breach his limited duty of loyalty (or any alleged fiduciary duty) by preparing to compete with Mattel *after* leaving his employment.

Mattel also moves for summary judgment on the issue of breach—claiming that the undisputed facts show a "pattern of conduct [that] is a classic breach of the duty of loyalty and fiduciary duty." Mattel MSJ 36. Mattel's motion must be denied because Mattel again misstates the legal standard and relies on highly disputed facts.

As set forth below and as Bryant will prove at trial, Bryant's actions before leaving Mattel were nothing more than preparations to compete, privileged under California law. In particular, (1) Bryant was *not* required to disclose his efforts to obtain another job; (2) Bryant owned the Bratz idea and sketches he pitched to MGA; (3) Bryant undertook no acts of direct competition with Mattel while employed at Mattel; (4) Bryant's use of any Mattel resources (including his own time) was *de minimis* and thus does not establish a breach of any duty; and (5) Bryant fully fulfilled his job responsibilities at Mattel.

As a preliminary matter, whether an employee has breached his duty of loyalty (or his alleged fiduciary duty) is a question for the trier of fact. *See Sequoia Vacuum Sys. v. Stransky*, 229 Cal. App. 2d 281, 288 (1964) ("For that reason, the determination of the particular factual circumstances and the application of the ethical standards of fairness and good faith required of a fiduciary in a given

---

*Wolf,* 107 Cal. App. 4th at 25 (reposing trust and confidence in the party to a contract does not create a fiduciary relationship but rather affords redress for breach of contract).

[22] Mattel cannot raise a triable issue of fact defeating Bryant's Motion as to its claim for breach of fiduciary duty. However, in the event the Court disagrees, certainly Bryant has raised a triable issue of fact to *defeat* Mattel's Motion on this issue.

24

situation are for the trier of facts."); *Science Accessories Corp. v. Summagraphics Corp.*, 425 A. 2d 957, 962 (1980).  This question of breach is highly dependent of the facts of each case, in part because "[n]o ironclad rules as to the type of conduct which is permissible can be stated . . ." *Bancroft Whitney Co. v. Glen*, 64 Cal. 2d 327, 346 (1966).  Moreover, it is "difficult to draw a clean distinction between acts prior to termination . . . that constitute mere preparation for competition . . . and actions that constitute competition."  Restatement (Third) of Agency § 804 cmt c; *see also Auxton Computer Enters., Inc. v. Parker*, 174 N.J. Super. 418, 424 (1980) ("Obviously, each case must be decided upon its own facts; because of the competing interests the actionable wrong is a matter of degree.").  Further, this distinction between "mere preparation to compete" and "actions that constitute competition" is difficult to assess because the propriety of certain actions may "depend on the intention with which the [employee] acted and the surrounding circumstances."  Restatement (Third) of Agency § 804 cmt c.[23]  This is precisely the type of factual issue ill-suited to summary adjudication – especially on a motion brought by Mattel, which bears the burden of proof at trial and cannot prevail unless its evidence would justify a directed verdict in its favor.  *See Miller*, 454 F.3d at 975.

---

[23]  Indeed, although the duty of loyalty is one that every employee in California owes his employer, the scope of that duty is determined by the level and job responsibilities of the employee.  19 Williston on Contracts § 54:26 (4th ed.) ("the scope of the duty of loyalty that an employee owes to his or her employer may vary with the nature of their relationship; it is generally agreed that a higher duty of loyalty exists for employees who occupy positions of trust and confidence than for those who occupy low-level positions."  Bryant has presented undisputed evidence that he was an ordinary Mattel employee, with no managerial responsibilities or decision-making authority.  Thus, any reliance by Mattel on cases such as *Sequoia Vacuum*, 229 Cal. App. 2d 281 (1964), *Daniel Orifice Fitting Co. v. Whalen*, 198 Cal. App. 2d 791 (1962), and *Bancroft Whitney*, 64 Cal. 2d 327 (1966) to define the scope of Bryant's duties to Mattel is misplaced.  These cases all base their analysis on the fact that the employees at issue were officers, with managerial responsibilities, and with unique *fiduciary* duties as a result of their status as officers.

### a.   Bryant did not directly compete with Mattel while a Mattel employee—and thus he did not breach his duty of loyalty to Mattel.

Despite the intensely factual nature of the inquiry, courts have consistently distinguished between permissible *preparations to compete* with one's employer *after leaving employment*, on the one hand, and impermissible *direct competition* with one's employer *while still employed*, on the other hand. Therefore, "[t]he mere fact that [an employee] makes preparations to compete before he resigns his office is not sufficient to constitute a breach of duty." *Bancroft Whitney*, 64 Cal. 2d at 346; *accord Eckard Brandes, Inc., v. Riley*, 338 F. 3d 1082, 1086 (9th Cir. 2003). An employee does, however, breach the duty of loyalty (or a fiduciary duty) if he engages *in direct competition* with his employer, such that the employer is harmed during the term of employment. *Auxton Computer Enters., Inc.,* 174 N.J. Super. at 424 ("It is something more than preparation which is so harmful as to substantially hinder the employer in the continuation of his business); Restatement 2d Agency § 393 cmt e (employee may not do "similar acts in direct competition with the employer's business"). Moreover, "[p]roof of serious employee misconduct causing injury to the employer must also be shown before relief will generally be granted." *Science Accessories*, 425 A. 2d at 965; *see also Auxton Computer Enters.*, 174 N.J. Super. at 424.[24]

Following these guiding principles, courts have held that employees may, during the term of their employment, undertake extensive efforts to establish a competing business and immediately compete upon termination of employment. *Bancroft Whitney,* 64 Cal. 2d at n. 10 (quoting Restatement 2d Agency § 393 cmt

---

[24] Even an officer (which Bryant indisputably was not), who has a far greater duty to a company, may engage in a competing business while he remains an officer *provided that he does not cripple or injure the business. See Sequoia Vacuum Sys.,* 229 Cal. App. 2d at 286 (citing *Daniel Orifice,* 198 Cal. App. 2d at 800 ("[A] party may not enter into a competing enterprise which cripples or injures a business or corporation *of which he remains an officer or director.*") (emphasis added).

413922.01

1   e);  *Maryland Metals, Inc. v. Metzner,* 282 Md. 31 (1978).  Employees may use *de*

2   *minimis* amounts of their employer's resources, such as phones, faxes, computers,

3   and employee time.  *Science Accessories Corp.*, 425 A. 2d at 962 (use of telephone

4   and small amount of wire worth $30); *Edenbaum v. Dalton*, 2002 WL 31474450

5   (Cal. Ct. App. Nov. 6, 2002) (use of office resources during working hours);

6   *Abraham Zion Corp. v. Lebow,* 593 F. Supp. 551, 570-71 *aff'd*, 761 F. 2d 93 (2d

7   Cir. 1985) (use of employer's clothing pattern where such use caused no economic

8   harm); *Merger Mgmt. Consulting, Inc. v. Wilde,* 920 F. Supp. 219 (D. D.C. 1996)

9   (use of laptop).[25]

10      Employees also may discuss their competing venture with other employees

11   and ask customers whether work might be available.  *Abraham Zion Corp.*, 593 F.

12   Supp. at 570-71 (discussion with retailers regarding potential collaboration);

13   *Computer Sciences Corp. v. Ferguson*, 74 Cal. Rptr. 86, 92-93 (1968)

14   (unpublished) (discussion with fellow employees and customers); *Merger Mgmt.*

15   *Consulting,* 920 F. Supp. 219 (executives identified clients and sent them discs of

16   all work).  Employees may use some time during work hours to prepare to

17   compete, and be paid their salary while they do so, provided they continue to

18   perform their job responsibilities.  *Edenbaum,* 2002 WL 31474450 *8 (payment of

19   salary while employee performed outside work);  *Computer Sciences Corp.*, 74

20   Cal. Rptr. at 93 (no evidence defendant failed to perform work competently);

21   *Auxton Computer Enters., Inc.,* 174 N.J. Super at 424-25 (employee said he was ill

22   in order to attend meeting on behalf of competitor with whom employee sought a

23

24   [25]  *See also Rapistan Corp. v. Michaels*, 511 N.W. 2d 918 (Mich. Ct. App. 1994) (employees use of "funds, facilities, personnel, and compensated time, in minimal

25   amounts" to assist in the acquisition of $29 million company was insufficient to show a "substantial nexus or causal connection" between the assets used and the business

26   opportunity and therefore employees were not estopped to deny acquisition was a corporate opportunity); *Seward v. Union Pump Co.*, 428 F. Supp. 161 (S.D. Texas 1977)

27   (no breach of fiduciary duty where officer used secretary for matters associated with side business where performance of ministerial tasks did not work to "the detriment of Union

28   Pump" because secretary performed all his duties to the fullest extent).

27

413922.01

1  job); *Science Accessories Corp.,* 425 A. 2d at 962 (use of off-hours time to work

2  on invention).  Employees may even use marketing plans, customer lists or other

3  information learned during their employment provided it is not a trade secret or

4  confidential information.  *Western Medical Consultants Inc. v. Johnson*, 80 F. 3d

5  1331, 1336-38  (1996) (use of marketing plans and customer lists obtainable from

6  public sources); *Abraham Zion*, 593 F. Supp. at 570 (use of pattern for clothing

7  was not prohibited where the information obtained was generally available from

8  public sources to members of the trade).

9      In contrast, courts have found a breach of the duty of loyalty where an

10  employee, while still employed by the former employer, engaged *in direct*

11  *competition* with his employer, such that an employer was harmed while the

12  employee remained in its employ.  For example, employees breached their duty of

13  loyalty (or fiduciary duty) where they formed a competing company and bid

14  against their employers while still employed or sold competing products or

15  diverted sales away from their employer.  *Eckard Brandes,* 338 F. 3d at 1086 (bid

16  against employer); *T.A. Pelsue Co. v. Grand Enters., Inc.*, 782 F. Supp. 1476, 1486

17  (D. Colo. 1991) (sold competing products while still employed);  *Material Supply*

18  *Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F. 3d 983, 993 (D.C. Cir. 1998) (use of

19  employer's trademark to solicit sales for its own private label).[26]

## b.   Bryant was not required to disclose his efforts to pursue the Bratz idea.

20

21      Thus, in order to establish that Bryant breached his duty of loyalty to Mattel

22

23  as a matter of law, Mattel must set forth undisputed facts showing that Bryant

24

---

25  [26]  Courts have attempted to summarize the preparation to compete doctrine by stating that employees have a privilege to prepare to compete while still employed, but

26  misconduct such as misappropriation of trade secrets, misuse of confidential information, solicitation of an employer's customers before terminating employment, conspiracy to

27  cause 'mass resignation' of key employees, and usurpation of a corporate opportunity will defeat the privilege. *Science Accessories Corp.*, 425 A. 2d at 962  (*citing Maryland*

28  *Metals, Inc.*, 382 A. 2d at 569-70.

[PUBLIC REDACTED] BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413922.01

1  engaged in *direct competition* with Mattel *while employed at Mattel*. Mattel does

2  not even attempt to make any such showing. Instead it acknowledges in a cursory

3  sentence that preparations to compete do not constitute breach of any duty, and

4  then erroneously states that "for any such preparation to compete defense to apply,

5  Bryant had to disclose his plans to Mattel," relying on *Daniel Orifice Fitting Co.,*

6  198 Cal. App. 2d at 800-01 and *Sequoia Vacuum Sys.,* 229 Cal. App. 2d 281, 287

7  (1964). Mattel MSJ 37-38.[27]

8       Mattel is simply wrong. In *Bancroft Whitney Co. v. Glen,* 64 Cal. 2d 327

9  (1966), the California Supreme Court specifically rejected Mattel's interpretation

10  of *Daniel Orifice* and *Sequoia Vacuum.* The Court held that, even for an officer

11  (which Bryant was not) with fiduciary duties (which Bryant lacked), "[t]here is *no*

12  *requirement that an officer disclose his preparations to compete with the*

13  *corporation in every case,* and failure to disclose such acts will render the officer

14  liable for breach of his fiduciary duties only where particular circumstances render

15  nondisclosure harmful to the corporation." *Id.* at 347 (emphasis added). Indeed, as

16  numerous courts have held, to require an at-will employee, such as Bryant, to

17  disclose preparations to compete would render the employee's right to prepare to

18  compete meaningless.[28]

19

---

20  [27] Mattel's characterization of "preparations to compete" as a "defense" is also incorrect. Mattel bears the burden on the issue of Bryant's alleged breach. As the above cases

21  establish, Mattel must show Bryant engaged in acts of direct competition—which it has not done simply by pointing to acts constituting preparations to compete.

22  [28] Rest. 3d Agency § 8.04 cmt. c. ("An employee or other agent who plans to compete with the principal does not have a duty to disclose this fact to the principal. To be sure,

23  the fact that an agent has such a plan is information that a principal would find useful, but the agent's fiduciary duty to the principal does not oblige the agent to make such

24  disclosure. Nor does an agent's duty to provide facts to the principal . . . require disclosure to the principal of an agent's competitive plans. In this respect, the social

25  benefits of furthering competition outweigh the principal's interest in full disclosure by its agents."); *Auxton Computer Enters,* 174 N.J. Super at 324 ("If the right to changes

26  jobs is to be in any way meaningful for an employee not under contract for a definite term, it must be exercisable without the necessity of revealing the plans to the

27  employer."); *Abraham Zion Corp. v. Lebow,* 593 F. Supp. 551, 571, *aff'd,* 761 F. 2d 93 (2d Cir. 1985) (no duty to notify employer of preparations to compete, since doing so

28  would render the right to engage in such conduct meaningless); *Maryland Metals,* 382

29

413922.01

1   Mattel not only misleads the Court by asserting disclosure is required, but it

2   also fails to point to any particular circumstances that rendered Bryant's failure to

3   disclose his plans harmful.  *Cf. id.* at 347-48 (president misled employer into

4   thinking competitor would not raid employees, suggested a two-step salary

5   increase that made employees more vulnerable to raid, and disclosed confidential

6   salary information to competitor).  To the contrary, as described above, ██████████

7   ████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████

10  ████████████   SGI 151.  *Cf. id.* at 330 (noting that president signed contract

11  with competitor but failed to give notice to employer).  Further, ██████████████████

12  ████████████████████████████████████████████████████

13  ████████████████████   SGI 154-156.  Thus, Bryant simply exercised

14  his right under California law to pursue a new job without disclosing every step of

15  that process to his current employer.  *See Am. Home Shield of Cal., Inc. v. Fidelity*

16  *Nat'l Home Warranty Co.,* 2003 WL 21085278, *12 (Cal. App. 4 Dist. 2003)

17  (sustaining demurrer without leave to amend and noting that plaintiff failed to "cite

18  any authority for the proposition that an at-will employee violates any duty of

19  loyalty by negotiating an agreement with a prospective employer and not divulging

20  plans to change employment until she has made a final decision.").

21          **c.     Bryant owned the Bratz idea and, thus, his assignment of
              the idea to MGA cannot be the basis for a claim of breach.**

22

23      Setting aside lack of disclosure as a basis for establishing a breach of an

24  employee's duty of loyalty (or fiduciary duty), Mattel complains that Bryant

25  breached his duty of loyalty because he "conveyed to MGA drawings and models

26  _____

27  A.2d at 573 ("an employee's privilege to plan and prepare for future competition while in
    the employ of a prospective competitor would be rendered practically meaningless if the
28  employee were required by law to reveal the details of such arrangements").

                                          30

413922.01

he created while employed by Mattel." Mattel MSJ 36. However, taking the facts in the light most favorable to Bryant, as the Court must, ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ Thus, Mattel cannot rely on its disputed claim of ownership of the Bratz idea and sketches as a basis for claiming that Bryant breached his duty of loyalty to Mattel *as a matter of law*.[29]

### d. Bryant undertook no acts of direct competition with Mattel while still an employee.

The remaining facts Mattel complains of also fail to establish any breach of a duty of loyalty to Mattel, and certainly show no direct acts of competition by Bryant while still employed at Mattel. Bryant's use of ██████████████████ ██████████████████████████████████ is insufficient to establish a breach. *E.g, Auxton Computer Enters,* 174 N.J. Super at 424-25

---

[29] For this reason, Mattel's reliance on *Daniel Orifice Fitting Co. v. Whalen*, 198 Cal. App. 2d 791 (1962), is misplaced. In *Daniel Orifice,* the vice president and chief engineer was found by the trier of fact to have breached his fiduciary duty to the company by secretly using the confidential information he obtained as a result of his position as chief engineer to design improvements and modifications to the company's valves while still employed at the company. *Id.* at 796. Rather than turning over the improvements to the company (as he had done for years), he retained them for his own use, and immediately upon resigning started a directly competing business. *Id. Daniel Orifice* relies upon a holding that Whalen's inventions created while employed as chief engineer were owned by his employer under his employment contract, in part because Whalen had turned over previous inventions to his employer. *Id.* at 798. Again, here, the facts taken in the most favorable light to Bryant, shows that Bryant owned his Bratz idea and sketches; this alone distinguishes the holding of *Daniel Orifice.* Moreover, here, unlike in *Daniel Orifice,* ████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
█████████ *See also Science Accessories*, 425 A. 2d at 962 (invention was not a corporate opportunity where evidence showed corporation would not have been interested in developing it).

31

413922.01

1   (employee's excuse of illness on day he attended interview on behalf of competitor

2   was insufficient to establish breach).  Bryant's use of a *de minimis* amount of

3   Mattel's resources— ██████████████████████████████████████████████

4   ████████████████████████████ is also insufficient to establish a breach.

5   *E.g. Science Accessories*, 425 A. 2d at 962 (use of telephone and wire were not a

6   breach); *Abraham Zion*, 593 F. Supp. at 570-71 (use of employer's clothing

7   pattern). ███████████████████████████████████████████████████████

8   ████████████████████████████████████████████████[30] *Auxton*

9   *Computer Enters*, 174 N.J. Super at 424-25 (attending meeting on behalf of

10   competitor was nothing more than part of employee's effort to obtain a new job).[31]

11        Further, Bryant's █████████████████████████████████████████████

12   ████████████████████████████████████████████████—is also

13   insufficient to establish a breach.  *Computer Sciences Corp.*, 74 Cal. Rptr. At 92-

14   93 (asking customer whether work might be available not a breach); *Abraham Zion*

15   *Corp.*, 593 F. Supp. at 570-71 (asking retailers about potential collaboration and

16   using information generally available to the trade not a breach).[32]  Lastly, the trier

---

[30] Also, ████████████████████████████████████████████████████

[31] Moreover, █████████████████████████████████████████████ as discussed above.  *See* Restatement (Third) Agency Sect. 8.04, cmt. b (even if an employer's consent is necessary for an employee to be free to compete during the term of his employment, such consent need not be explicit, but can be shown by "implied understandings and known customs."); *Warrantech Corp. v. Computer Adapters Servs., Inc.*, 134 S.W.3d 516, 531 (Tex. App. 2004) (employer implicitly sanctioned moonlighting by its employees because supervisors made efforts to structure employee work schedules so as not to interfere with their second jobs).

[32] Mattel's reliance on *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, (1995) and *Fowler v. Varian Associates, Inc.*, 196 Cal. App. 3d 34, 37 (1987), is misplaced.  Both cases held that an employee's claim of wrongful discharge failed because the employee at issue had become sufficiently involved with a potential competitor to justify the employer's termination of the employee.  Thus, *Stokes* held that Dole Nut had cause to terminate two long term employees (the night shift manager and production supervisor) who had taken several steps toward starting their own almond processing plant—including buying land, speaking with bank representatives about getting a loan, discussing the project with other employees, producing financial projections, producing several proposals, and approaching governmental and financing agencies.  However, the court in Stokes specifically noted that the standard for termination with cause is not identical to the

32

of fact is entitled to consider and (for the purposes of this motion) believe that Bryant's intentions prior to leaving were simply to pursue a new career opportunity. *Auxton Computer Enters.,* 174 N.J. Super. at 425 (defendant was "simply trying to get a job"); *cf. Franklin Music Co.,* 616 F. 2d at 532-33 (trier of fact could believe that president wanted to harm majority owner of company).

All the circumstances Mattel complains of do not amount to any actual injury to Mattel while Bryant was still employed at Mattel, and thus do not even approach the conduct in the remaining cases relied upon by Mattel. Bryant's efforts to seek a new career opportunity are in no way similar to forming a fraudulent subcontracting business with the specific purpose of defrauding one's employer. *J.C. Peacock, Inc. v. Hasko,* 196 Cal. App. 2d 353, 358-59 (1961).[33] Nor do these facts show any direct competition with Mattel similar to the engineering of an *en masse* resignation of employees (*Bancroft Whitney*), or the direct bidding for contracts against an employer while still employed (*Eckard Brandes*). Thus, Mattel has failed to meet its burden of establishing a breach of the duty of loyalty (or any alleged fiduciary duty) as a matter of law. Of course, Mattel's true complaint is that months after Bryant left Mattel, MGA launched a doll that beat Mattel in the market place. And, that, as Bryant and MGA will prove

standard for tortious behavior of an employee, noting that "an employer is not required to retain an employee while awaiting the commission of a tort." 41 Cal. App. 4th at 295. Similarly, in *Fowler,* the court held that the employer, Varian, had good cause to discharge its marketing manager, who had met with those forming a competing venture, had provided ideas, had assisted in efforts to obtain financing, and had examined a possible building site. The employee's refusal to provide Varian with any information regarding the competing venture was held to be good cause for his discharge. 196 Cal. App. 3d at 41-42. Thus, although Mattel could perhaps rely on *Stokes* or *Fowler* to justify terminating Bryant for his contacts with a competitor, neither case offers support for the Mattel's claim that Bryant's actions establish an actionable breach of Bryant's duty of loyalty.

[33] Mattel misleadingly claims the facts in this case are more "egregious" than those in *J.C. Peacock, Inc. v. Hasko,* 196 Cal. App. 2d 353, 358-59 (1961). Mattel MSJ 39. Not so. In *Hasko,* the general manager for J.C. Peacock formed a partnership "for the purpose of cheating and defrauding [J.C. Peacock] in the subcontracting work of the partnership." *Id.* Moreover, he and another defendant falsely represented J.C. Peacock's profits to the owner in order to obtain bonuses based on the false profits. *Id.*

33

413922.01

1   at trial, is not an actionable wrong of any kind.

2   **D.   Mattel is not entitled to summary judgment on Bryant and MGA's affirmative defenses.**

3

4   **1.   Bryant's affirmative defenses based on applicable statutes of limitations, laches, waiver, consent, and estoppel must go to the jury, as set forth in the MGA parties' opposition brief.**

5

6   Bryant joins in MGA's arguments opposing Mattel's motion for summary

7   judgment on MGA and Bryant's affirmative defenses based on the statute of

8   limitations, laches, waiver, consent, and estoppel.  Bryant incorporates the related

9   arguments and facts in the MGA Opposition, as though fully set forth here.

10   **2.   Bryant's Phase I unclean hands defense must go to the jury.**

11   Bryant's unclean hands defense must also go to the jury, because it presents

12   genuine issues of fact (including intent and motive) not amenable to decision on

13   summary judgment.  "Whether the doctrine of unclean hands applies is a question

14   of fact."  *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970,

15   978 (1999).  Summary adjudication of the unclean hands defense is particularly

16   difficult because the defense is intimately related to the facts of the specific case,

17   and requires broad consideration of Mattel's entire course of conduct.  Courts have

18   consistently held that, even if a party's conduct is not outright illegal, the equitable

19   principles underlying the unclean hands doctrine dictate that "[a]ny

20   unconscientious conduct upon his part which is connected to the controversy will

21   repel him from the forum whose very foundation is good conscience."  *Pond v.*

22   *Insurance Co. of N. Am.*, 151 Cal. App. 3d 280, 291 (1989); *Kendall-Jackson*, 76

23   Cal. App. 4th at 979 ("[T]he misconduct need not be a crime or an actionable tort.

24   Any conduct that violates conscience, good faith, or other equitable standards of

25   conduct is sufficient cause to invoke the doctrine."); *Fibreboard Paper Prods.*

26   *Corp. v. East Bay Union of Machinists*, 227 Cal. App. 2d 675, 727 (1964).

27   Although unclean hands does not warrant a wholesale trial of a party's morals, the

28   fact-finder can consider any inequitable conduct connected to the controversy or

34

413922.01

1  transactions at issue: unclean hands is not a technical defense tied to any particular

2  element of a specific cause of action, but an equitable rationale based on principles

3  of fairness. *Kendall-Jackson*, 75 Cal. App. 4th at 986. To avoid an unclean hands

4  defense, a party must "act fairly in the matter for which he seeks a remedy," and

5  must keep clean hands both before and after coming into court. *Id.* at 978.

6      Mattel's hands in this litigation are far from clean, and only the jury can

7  decide whether Mattel's conduct should bar its claims against Bryant. Bryant's

8  unclean hands defense here does not depend on overt, easily-documented crimes or

9  illegality (for which, after all, the law provides other remedies), but on a more

10  subtle balance of equities and intent that the unclean hands defense exists to

11  evaluate: given its acts in this matter, is Mattel a worthy claimant in a court of

12  equitable justice? Bryant has raised numerous issues for trial as to Mattel's subtle

13  and secretive misbehavior (just as inequitable and damning to Mattel's claims as

14  any crime); the jury must weigh these issues through the mechanism of unclean

15  hands precisely because they involve questions of motive, credibility, and intent

16  that are not clear-cut and susceptible of proof on a cold record, but depend on

17  inferences to be made with a holistic understanding of a case at trial. Whether

18  those acts bear a close enough connection to Mattel's claims to support the defense

19  is also a question for the jury. *See Kendall-Jackson*, 75 Cal. App. 4th at 988.

20      Mattel's wrongs in this matter are many. First, Mattel continues to assert

21  rights to Bryant's Bratz idea and sketches based on ███████████████████████

22  ████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████

24  Bryant Motion 38-39. The jury must determine whether Mattel did so in bad faith,

25  in an attempt to intimidate and coerce its employees into ceding to Mattel rights it

26  could not legitimately claim. Also, Mattel now claims that its Employee

27  Agreement documents a draconian seizure of its employees' entire creative lives,

28

[PUBLIC REDACTED] BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413922.01

1   but ████████████████████████████████████

2   ████████████████████████████████ *See id.* 25-28.  If (as Mattel now

3   claims) it always understood the Employee Agreement to have such a drastic effect

4   on its employees' rights, a jury could reasonably find that Mattel acted unfairly and

5   deceptively by asking its employees, including Bryant, ████████████████████

6   ████████████████████████████████████████████

7   ████████████████████████████████████[34]  *See id.*

8      Similarly, ████████████████████████████████████

9   ████████████████████████████████████████████

10  ████████████████████████████████████████████

11  ████████████████████████████████  *Id.* 7-8;

12  SUF 37-41.  By doing so, Mattel deliberately (a jury could find) induced in Bryant

13  a false sense of independence and privacy, which Mattel intended to destroy only

14  when it served the company's purposes.  The jury could infer that Mattel

15  deliberately declined to enforce ████████████████████████████████

16  ████████████████████████████████████████████████

17  ████ thus preserving its market dominance through deliberate deceit and

18  manipulation.  Further evidence confirms that this was Mattel's settled practice:

19  even after Bryant left Mattel, the company continued to ignore widespread

20  ████████████████████████████████████████████

21  ████████████████████████████ in the interests of obtaining an edge

22  in this litigation, by any means possible, ████████████████████████

23  ████████████████████████████████  SGI 166.

24  *See* Declaration of Marcus R. Mumford In Support of MGA's and Carter Bryant's

25  Motion For An Evidentiary Hearing Re: Witness Tampering (Docket No. 2651),

26  

27  [34]  Bryant contends that Mattel had no such belief, as the document does not mean what Mattel claims; however, if Mattel's *post hoc* interpretation prevails, then its conduct in

28  forcing employees like Bryant to sign it was plainly inequitable.

36

[PUBLIC REDACTED] BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413922.01

1   Exs. 3-6.[35]

2       In addition, ████████████████████████████████████

3   ██████████ (which the jury can find was intended to gain an improper advantage in

4   trying Mattel's Phase I claims against Bryant), Mattel has dirtied its hands during

5   the course of this litigation, which necessarily relates to the matters being litigated.

6   Because a claimant "must come into court with clean hands, and *keep them clean*"

7   to escape an unclean hands defense, Mattel's recent acts sullying its hands also

8   independently defeat its claims against Bryant. *Kendall-Jackson*, 76 Cal. App. 4th

9   at 978 (emphasis added). Mattel also acted inequitably by delaying this suit for

10  several years after it knew about Bryant's involvement in Bratz, in order to

11  maximize its damages and use Bryant to its advantage in another litigation. *See*

12  SGI 167; MGA Motion 15-29.

13      Any one of these unjust acts by Mattel would permit the jury to find that

14  Mattel's hands are unclean and deny Mattel any relief against Bryant. Only the

15  jury, and not the Court, may make the inferences and evaluations of character and

16  credibility at the heart of Bryant's unclean hands defense. The jury must weigh the

17  evidence above, and all the other evidence to be presented at trial, to determine

18  whether—considering Mattel's entire course of conduct towards Bryant—Mattel's

19  conduct "violates conscience, or good faith, or other equitable standards of

20  conduct." *Fibreboard Paper Products*, 227 Cal. App. 2d at 727.

## IV.   Conclusion

22      For all the foregoing reasons, Bryant respectfully requests that the Court

23  deny Mattel's motion for summary judgment in its entirety.

24                                  Respectfully submitted,

25

---

[35] Bryant will not burden the Court by re-submitting these materials, which (along with
remaining exhibits to this Mumford Declaration, on which Bryant also relies) total nearly
500 pages. Bryant also incorporates by reference here the discussion and analysis of
these materials contained in MGA and Carter Bryant's Motion For An Evidentiary
Hearing Regarding Witness Tampering (Docket No. 2650).

37

413922.01

1    Dated:  March 24, 2008                      KEKER & VAN NEST, LLP

2

3

4                                                By:   /s/ Christa M. Anderson
                                                     CHRISTA M. ANDERSON
5                                                    Attorneys for Plaintiff
                                                     CARTER BRYANT
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PUBLIC REDACTED] BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413922.01