KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF CARTER BRYANT'S OPPOSITION TO MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Filed concurrently with Bryant's Opp. to Mattel, Inc.'s Mot. for Partial Summ. J. and Decl. of Jan Raymond]<br><br>Date:      April 22, 2008<br>Time:      10:00 a.m.<br>Dept:      Courtroom 1<br>Judge:     Hon. Stephen G. Larson<br><br>Date Comp. Filed:  April 13, 2005<br><br>Discovery Cut-Off:  Jan. 28, 2008<br>Pre-Trial Conference:  May 5, 2008<br>Trial Date:  May 27, 2008 |

413815.01

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Pursuant to Federal Rule of Evidence 201, Carter Bryant respectfully requests that the Court take judicial notice of the following portions of the legislative history for California Labor Code § 2870:

(A) California Assembly Bill No. 2902, 1975-76 Regular Sess. (introduced by Assemblyman Goggin, Jan. 29, 1976);

(B) California Assembly Committee on Judiciary, Bill Digest re Assembly Bill 2902 (Hearing Date: May 17, 1976);

(C) Letter from George H. Murphy, Legislative Counsel of California, to Hon. John J. Miller, California Assemblyman (Mar. 29, 1976);

(D) California Assembly Committee on Labor, Employment, & Consumer Affairs, Memo re Assembly Bill 474 (Hearing Date:  Mar. 20, 1979);

(E) Assemblyman Terry Goggin, A.B. 474 Statement, Assembly Committee on Labor, Employment & Consumer Affairs (Mar. 20, 1979).

True and correct copies of these portions of the legislative history for California Labor Code § 2870 are attached hereto as Exhibits A – E respectively. *See* Decl. of Jan Raymond at ¶ 6-10, Exs. 1-5.  As explained in the concurrently filed Declaration of Jan Raymond, these documents were gathered by Raymond Legislative Research at the direction of counsel.  Decl. of Jan Raymond at ¶ 1.

Under Rule 201(b) of the Federal Rules of Evidence, the Court can take judicial notice of facts that are (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by

1

413815.01

1  resort to sources whose accuracy cannot reasonably be questioned.  Judicial notice

2  is mandatory if requested by a party and if the Court has been supplied with "the

3  necessary information."  Fed. R. Evid. 201(d).

4          It is well established that legislative history is the proper subject of judicial

5  notice.  *Chaker v. Crogan*, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005) (granting

6  judicial notice of legislative history of section of California Penal Code); *Louie v.*

7  *McCormick & Schmick Restaurant Corp.*, 460 F. Supp. 2d 1153, 1155-56 (C.D.

8  Cal. 2006) (granting plaintiff's request for judicial notice of certain portions of

9  legislative history).  Furthermore, the legislative history that Bryant requests

10 judicially noticed is capable of accurate and ready determination by resort to the

11 collection of the California State Law Library, the bill file of the Assembly

12 Committee on Labor and Employment, the bill file of the Senate Committee on

13 Industrial Relations, sources whose accuracy cannot reasonably be questioned.  *See*

14 Decl. of Jan Raymond at ¶¶ 6-10.

15

16 Dated:  March 24, 2008                    KEKER & VAN NEST, LLP

17

18

19                            By:  /s/ Matthew M. Werdegar
                                    MATTHEW M. WERDEGAR
20                                  Attorneys for Plaintiff
                                    CARTER BRYANT
21

22

23

24

25

26

27

28

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF CARTER BRYANT'S OPPOSITION
TO MATTEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 04-09049 SGL (RNBx)

413815.01

# EXHIBIT A

CALIFORNIA LEGISLATURE—1975-76 REGULAR SESSION

# ASSEMBLY BILL                                No. 2902

## Introduced by Assemblyman Goggin

### January 29, 1976

———————

REFERRED TO COMMITTEE ON JUDICIARY

———————

An act to add Chapter 7.8 (commencing with Section 1130) to Part 3 of Division 2 of the Labor Code, relating to employees.

LEGISLATIVE COUNSEL'S DIGEST

AB 2902, as introduced, Goggin (Jud.).   Labor: employee inventions.

The existing law contains no provisions relating to the right to the patent for an invention made by an employee.

This bill would provide that the right to the patent for an invention made by an employee belongs to the employee, unless the employer makes a declaration of interest in the invention pursuant to specified procedures. If such a declaration is made by the employer, the right to the patent would belong to the employer and the employee would have a right to remuneration for the invention.

This bill would also provide that the rights conferred on the employee by the bill shall not be reduced by contract.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1    SECTION 1.   Chapter 7.8 (commencing with Section
2  1130) is added to Part 3 of Division 2 of the Labor Code,

AB 2902                           — 2 —

1   to read:
2
3   CHAPTER 7.8.   INVENTIONS MADE BY AN EMPLOYEE
4
5      1130.   The right to the patent for an invention made
6   by an employee in the execution of an employment
7   contract or by using data or means available to him
8   through his employment shall belong to the employee,
9   unless the employer makes a declaration of interest in the
10  invention.
11     1131.   An employee who makes an invention of the
12  kind referred to in Section 1130 shall immediately inform
13  his employer thereof in a written report.
14     1132.   Where the employer makes a declaration of
15  interest in the invention, the right to the patent shall be
16  considered as having belonged to the employer from the
17  beginning, provided that the employee is notified in
18  writing of the employer's declaration of interest in the
19  invention within four months after either the date of
20  receipt of the employee's report, or the date on which the
21  invention became otherwise known to the employer,
22  whichever date is earlier.
23     1133.   If the employer makes a declaration of interest
24  in the invention, the employee shall have a right to
25  remuneration for the invention, taking into account his
26  salary, the importance of the invention, and any benefit
27  derived from the invention by the employer. In the
28  absence of agreement between the parties, the
29  remuneration shall be fixed by a court of competent
30  jurisdiction.
31     1134.   The rights conferred on the employee by the
32  provisions of this chapter shall not be reduced by
33  contract.

O

# EXHIBIT B

ASSEMBLY COMMITTEE ON JUDICIARY
JOHN J. MILLER, CHAIRMAN

BILL DIGEST

BILL:        AB 2902                    HEARING DATE:   5/17/76

AUTHOR:      Goggin

SUBJECT:     Patents:   Employee Inventions

BILL DESCRIPTION:

     Generally, patents are governed by federal law.
The federal constitution specifically authorizes Congress
to enact legislation for the protection of inventions.
Certain subject matters relating to patents are not
proper subjects for state legislation:  patentability of
inventions, grant of patents, patent infringement, and
the validity or invalidity of a patent.  However, state
law may affect certain aspects of patents including
ownership, agreements between co-owners, licenses, agree-
ments not to infringe, and various patent related torts.


     This bill provides that patent rights to an invention
belong to an employee unless an employer makes a declaration
of interest in the invention.  The bill applies to patents
made in an employment capacity.  The bill specifies the
following procedure when an employee makes an invention:

1.  The employee must immediately notify the employer
    of the invention in a written report.

2.  In order for an employer to acquire patent rights in
    an invention made by an employee, the employer must
    notify the employee of his declaration of interest
    within four months after receipt of the employee's
    report or the date on which the invention became
    known to the employer, whichever date is first.


                                        (CONTINUED)

AB 2902
Page 2

3.  When an employer makes a declaration of interest, the employee must be compensated for the invention. If the parties cannot agree to the compensation, the compensation would be fixed by the court.

4.  The bill specifically provides that patent rights conferred by this bill could not be reduced by contract, except that employers and employees may agree at any time after the declaration of interest on a proportional share of invention value as compensation.

SOURCE:

  Author

SUPPORT:

  The California Sections of the American Chemical
    Society
  The California Society of Professional Engineers
  Institute of Electrical and Electronics Engineers, Inc.

OPPOSITION:

  General Electric Company
  Atlantic Richfield Company
  Continental Oil Company
  Exxon Corporation
  Gulf Oil Corporation
  Mobil Oil Corporation
  Phillips Petroleum Company
  Shell Oil Company
  Standard Oil Company of California
  Texaco, Inc.
  Union Oil Company of California
  Association of Motion Picture and Television
    Producers, Inc.
  McDonnel Douglas Corporation

(CONTINUED)

AB 2902
Page 3


COMMENT:


This bill is almost identical to sections of the Draft Model Provisions on Rights Under the Patent prepared by the World Intellectual Property Organization. The Draft Model Provisions are also similar to the corresponding sections of Model Law for developing countries on inventions and know-how 1965. The purpose of this bill is to give employed inventors a right to compensation if their employers take their inventions. Proponents of the bill assert that corporations have replaced individual inventors in the marketing of inventions. The proponents assert that employers, as a condition of employment, require employee-inventors to assign their inventions to the employer. The proponents feel that this system discourages employee-inventors from inventing.


This bill raises some drafting problems as well as public policy considerations. The bill provides that patent rights belong to an employee-inventor unless his employer makes a "declaration of interest" in the invention. The bill does not establish guidelines for the form or contents of the "declaration of interest."


The bill requires an employee who makes an invention to immediately inform his employer of the invention. However, the bill does not specify the time period in which employee-inventors must report their inventions to employers. This time period should be specified in the bill.


The bill does not specify what happens when more than one employee makes an invention. How would patent rights be allocated between inventing co-workers?


In order for an employer to acquire patent rights in an invention made by an employee, the employer must declare his interest in the invention within four months after receipt of the employee's report or the date when the invention becomes known to the employer, whichever is earlier. Is the four month period after notice by the employee-inventor too long?


(CONTINUED)

AB 2902
Page 4


    The bill does not specify any penalties against employers who refuse to carry out the provisions of this bill.  Shouldn't remedies be provided to the employee-inventor when an employer refuses to comply with the provisions of this bill?


    The opponents of the bill have raised these general issues:

1.  Would this bill necessarily encourage employee-inventors to become more productive?

2.  How would the bill affect an employer's incentive to engage in research and development activities and other business practicalities?

3.  Is the bill an undue intrusion by government into a basically employer-employee relationship?

EXHIBIT C

# Legislative Counsel
# of California

GEORGE H. MURPHY

BERNARD CZESLA
CHIEF DEPUTY

OWEN K. KUHS
EDWARD K. PURCELL
RAY H. WHITAKER

KENT L. DE CHAMBEAU
ERNEST H. KUNZI
STANLEY M. LOURIMORE
SHERWIN C. MACKENZIE, JR
ANN M. MACKEY
EDWARD F. NOVAK
RUSSELL L. SPARLING
PRINCIPAL DEPUTIES

3021 STATE CAPITOL
SACRAMENTO 95814

107 SOUTH BROADWAY
LOS ANGELES 90012

GERALD ROSS
DAVID D. ALI
MARTIN L. ANDERSON
PAUL ANTILLA
JEFFREY D. ARTHUR
CHARLES C. ASBILL
JAMES L. ASHFORD
JOHN CORVINE
BEN E. DALE
CLINTON J. DEWITT
C. DAVID DICKERSON
FRANCES S. DORBIN
ROBERT CULLEN DUFFY
CARL NED ELDER, JR.
LAWRENCE H. FEIN
JOHN FOSSETTE
HARVEY J. FOSTER
HENRY CLAY FULLER III
ALVIN D. GRESS
ROBERT D. GRONKE
JAMES W. HEINZER
THOMAS R. HEUER
EILEEN K. JENKINS
MICHAEL J. KERSTEN
L. DOUGLAS KINNEY
JEAN KLINGENSMITH
VICTOR KOZIELSKI
STEPHEN E. LENZI
DANIEL LOUIS
JAMES A. MARSALA
DAVID R. MEEKER
PETER F. MELNICOE
MIRKO A. MILICEVICH
ROBERT G. MILLER
JOHN A. MOGER
VERNE L. OLIVER
EUGENE L. PAINE
TRACY O. POWELL, II
MARGUERITE ROTH
HUGH P. SCARAMELLA
MARY SHAW
WILLIAM K. STARK
JOHN T. STUDEBAKER
BRIAN L. WALKUP
THOMAS D. WHELAN
JIMMIE WING
CHRISTOPHER ZIRKLE
DEPUTIES

Sacramento, California
March 29, 1976

Honorable John J. Miller
Assembly Chamber

Rights to Inventions - #6452

Dear Mr. Miller:

### QUESTION

You have asked whether Assembly Bill No. 2902, if enacted as introduced, would conflict with the federal statutes regarding patents.

### OPINION

Assembly Bill No. 2902,[1] if enacted as introduced, would not conflict with federal statutes regarding patents.

### ANALYSIS

Assembly Bill No. 2902 would allocate by statute the right to patents of employers and employees as to inventions made by an employee in the execution of an employment contract or in the course of employment.

With regard to the federal law, Clause 8 of Section 8 of Article I of the United States Constitution invests the Congress with power to enact legislation for the protection of inventions, as follows:

_____

[1]   Hereinafter referred to as A.B. 2902.

Honorable John J. Miller - p. 2 - #6452

   "The Congress  shall have power ...
to promote the progress of science and
useful arts, by securing for limited times
to authors and inventors the exclusive right
to their respective writings and discoveries;"

   Pursuant to this constitutional authority, Congress,
in 1790, enacted the first federal patent law and since that
time has established peremptorily the conditions upon which
patents may be granted (see Sec. 1 et seq., Title 35,
U.S.C.).  The federal patent laws are the supreme law of
the land and, in the words of the United States Supreme
Court, "when state law touches upon the area of these fed-
eral statutes, it is 'familiar doctrine' that the federal
policy 'may not be set at naught, or its benefits denied' by
the state law" (Sears, Roebuck & Co. v. Stiffel Co. (1964),
11 L. Ed. 2d 661, 665.  See also Kewanee Oil Co. v. Bicron
Corp. (1974), 40 L. Ed. 2d 315).

   Thus, the subject matters relating to patents
which are provided for by federal law are not proper sub-
jects for state legislation.  For example, matters relating
to the patentability of inventions and the grant of patents
(see Part II (commencing with Section 100), Title 35,
U.S.C.) and matters relating to patent infringement and
questions generally concerning the validity or invalidity
of a patent are all provided for by federal law and are not
proper subjects for state legislation.  Moreover, since
actions relating to such matters as patentability of inven-
tions, infringement of patent rights, and the validity of
patents arise under federal law, the federal courts have
original jurisdiction thereof.  (See, e.g., Unarco Industries,
Inc. v. Kelley Co. (1972) 465 F. 2d 1303.)

   However, state law is said to control or affect in
varying degrees many incidents of patents, including owner-
ship, agreements between co-owners, licenses, agreements
not to infringe, and some torts involving patent rights
(See, e.g., Cooper, State Law of Patent Exploitation, 56
Minn. L. Rev. 313, 344).  With respect to such incidents,

Honorable John J. Miller - p. 3 - #6452

absent federal diversity jurisdiction, state courts have
exclusive original jurisdiction, since such matters do not
arise under the patent or other federal laws, but rather
arise, if at all, pursuant to state law (Luckett v. Delpark,
Inc. (1926), 70 L. Ed. 703, 708-709; Thiokol Chemical Corp.
v. Burlington Industries, Inc. (1970), 313 F. Supp. 253).
Indeed, state court decisions concerning such incidents of
patent law are not subject to federal court review where
there exists no question of patent or other federal law
(Wade v. Lawder (1897), 41 L. Ed 851; Marsh v. Nichols,
Shepard & Co. (1891), 35 L. Ed. 413).

        The case of Farmland Irrigation Co. v. Dopplmaier
(1957), 48 Cal. 2d 208, contains a cogent and incisive dis-
cussion of the authority of a state to affect patent laws.
In that case, it was contended that because a patent is a
creature of federal law and can be assigned only in the
manner provided by federal law the assignability of rights
under a patent license is also to be determined by federal
law.  The court concluded, to the contrary, that, so long as
state law does not destroy the advantages of the monopoly of
a patent and so long as it respects the federal purpose of
patents, there is no reason why state law should not govern
ancillary aspects of patents for which no provision is made
by the federal patent laws.  Thus, the common law of the
state controlled in determining the outcome of the question
before the court.

        Similarly, the federal patent laws are silent with
regard to the relationship between employers and employees
and their respective rights to patent ownership.  Nonethe-
less, the employment relationship is critical to patent
rights since the respective rights and obligations of the
employer and employee, touching an invention conceived by an
employee, arise out of the contract of employment (United
States v. Dubilier Condenser Corp. (1932), 77 L. Ed. 1114,
1118).

        Under present law, in the absence of a contract
allocating the rights between an employer and his employee
to inventions perfected by an employee, the mere existence
of an employer-employee relationship does not entitle the
employer to ownership of the inventions of an employee, but
where an employee is hired for the purpose of making an
invention and he succeeds, the invention belongs to the
employer and the employee is bound to assign any patent he

Honorable John J. Miller - p. 4 - #6452

obtains to the employer (Standard Parts Co. v. Peck (1924), 68 L. Ed. 560). However, inventions made completely independent of an employee's employment are the employee's, to do with as he chooses. In between these two extremes, the "shop right" doctrine applies. Under this doctrine, an employer is deemed entitled to limited rights in an employee's invention where the employer has made some significant contribution to the invention, as, for example, by permitting the use of the employer's equipment, time, or resources. While, under the shop right doctrine, any patents that are awarded belong to the employee, the employer is entitled to a royalty-free, personal, nonassignable license to use the invention in the conduct of his business (see Costner and Einhorn, 14 Business Organizations-Patents, Sec. 2.07 (1975)).

However, where the respective rights of an employer and employee are allocated by contract, the shop right doctrine is superseded (Jamesburg Corp. v. Worcester Valve Co. (1971), 443 F. 2d 205).

Thus, in determining rights of an employer and his employees to inventions of the employees, one presently must look to the employment contract, involving the law of contracts, or, if none, to the employment relationship, involving the common law, and the law of trade secrets and awards programs (see Stedman, The Employed Inventor, The Public Interest, and Horse and Buggy Law in the Space Age, 45 N.Y.U.L. Rev. 1 (1970). Each such area of law traditionally and primarily is controlled by state law. Moreover, there is no doubt that the Legislature generally may regulate an employer-employee relationship.

Accordingly, since there is nothing in the federal law of patents prohibiting such legislation, since state law already is looked to in determining numerous incidents to patents, and since the employer-employee relationship is a matter traditionally within the scope of the so-called police power, we think the Legislature may regulate the employer-employee relationship in the context of rights to inventions, so long as such regulation does not interfere with any paramount federal policy arising from the federal patent laws (see, e.g., Goldstein v. California, 37 L. Ed. 2d 163; Lear v. Adkins (1969), 23 L. Ed. 2d 610; Sears, Roebuck & Co. v. Stiffel (1964), 11 L. Ed. 2d 661; Unarco Industries, Inc. v. Kelley Co., supra).

Honorable John J. Miller - p. 5 - #6452

In this connection, the extent to which a state may regulate with respect to rights of inventors is an open question, as yet not definitively resolved by the Supreme Court (Lear v. Adkins, supra, at 625). In adjudging the validity of a state law in this regard, under existing case law, a court would inquire as to whether the overriding federal policies embodied in the federal patent laws would be significantly frustrated by applying state law (Lear v. Adkins, supra, at 624).

The Supreme Court has stated the general policy of the federal patent laws to be as follows:

"                    * * *

"The stated objective of the Constitution in granting the power to Congress to legislate in the area of intellectual property is to promote the Progress of Science and useful Arts. The patent laws promote this progress by offering a right of exclusion for a limited period as an incentive to inventors to risk the often enormous costs in terms of time, research, and development. The productive effort thereby fostered will have a positive effect on society through the introduction of new products and processes of manufacture into the economy, and the emanations by way of increased employment and better lives for our citizens ... ." (Kewanee Oil Co. v. Bicron Corp., supra, at 325. See also, Goldstein.)

In our opinion, A.B. 2902 would not have a negative effect upon such federal policy by discouraging or decreasing the introduction of new products and processes of manufacture into the economy.

Very truly yours,

George H. Murphy
Legislative Counsel

By C. David Dickerson
C. David Dickerson
Deputy Legislative Counsel

CDD:pfb

Two copies to the Honorable Terry Goggin, pursuant to Joint Rule 34.

# EXHIBIT D

ASSEMBLY COMMITTEE ON LABOR, EMPLOYMENT, & CONSUMER AFFAIRS
Bill Lockyer, Chairman

HEARING DATE: March 20, 1979

BILL:     AB 474

AUTHOR:   Goggin

SUBJECT:  Inventions

BACKGROUND

Generally, patents are governed by federal law. The United States Constitution specifically empowers Congress to protect inventions. However, certain matters relating to patents are proper subjects for state legislation. They include ownership, agreements between co-owners, licenses, agreements not to infringe, and some torts involving patent rights.

In the absence of a contract allocating the rights between an employer and an employee to inventions perfected by an employee, the mere existence of an employer-employee relationship does not entitle the employer to ownership of the employee's invention. Where an employee is specifically hired for the purpose of making an invention, the invention belongs to the employer and the employee is bound to assign the patent he obtains to the employer. Inventions which are made completely independent of the employee's employment are the employee's. Between these two extremes, the "shop right" doctrine applies. Under this doctrine, an employer is deemed entitled to limited rights in an employee's invention where the employer has made some significant contribution to the invention such as permitting the use of the employer's equipment, time, or resources. Where the rights of an employer and an employee are allocated by contract, however, the shop right doctrine is superseded.

Most inventors are employed by corporations or educational institutions. In nearly all cases, the employed inventor is required to enter a contract assigning all of his or her future inventions to the employer as a condition of employment. These contracts often do not distinguish between inventions related to the employment and inventions perfected independent of the employment. The compensation provided the employed inventor by the employer varies widely. Often, the inventor receives only nominal compensation, such as a dollar. On the other hand, the University of California, for example, pays its employees 50 percent of the royalties resulting from an invention, minus 15 percent of the royalties for overhead expenses plus a deduction for the cost of patenting and protection of the patent rights.

AB 474
Page 2

BILL

This bill provides that any employment agreement which assigns the rights of an invention to an employer shall not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and:

(a) does not relate (1) directly to the business of the employer, or (2) to the employer's actual or demonstrably anticipated research or development, or
(b) does not result from any work performed by the employee for the employer.

ANALYSIS

This bill is identical to AB 2257 which was passed by the committee, as amended, last year.  The bill is patterned after a similar Minnesota law which was enacted in 1977 (House File 763, Chapter 47, 1977).  The author of this bill, Representative Stanley Fudro, reports that there has been complete compliance and cooperation by Minnesota businesses with this law.  In addition, he states that such corporations as 3M, Honeywell, and Federal Munitions have had no problems obtaining contracts with the federal government as a result of the law.

The purpose of this bill is to guarantee the rights to an invention perfected by an employed inventor independent of the inventor's employment.  Many companies require the assignment of all an employee's inventions.  This creates a disincentive to invent since the inventor will receive little or no compensation for his or her "free invention".  Proponents of the bill state that the disincentive to invent has resulted in a slackening of creative inventiveness in the United States and note that the U.S. has fallen to seventh place in terms of patents of origin.  This bill would place in statute the legal concept that the right to an invention made independent of the employee's employment belongs to the employee.

SUPPORT:  California Society of Professional Engineers


Consultant:  Steve Holloway
(mh)

# EXHIBIT E

JOHN HUSING
ADMINISTRATIVE ASSISTANT

HARRY E. REYNOLDS
FIELD REPRESENTATIVE

DISTRICT OFFICE
VANIR TOWER PLAZA
290 NORTH "D" STREET
SUITE 802
SAN BERNARDINO, CALIFORNIA
92201
(714) 884-1241

JEFF RUCH
LEGISLATIVE ASSISTANT

STATE CAPITOL
SACRAMENTO, CALIFORNIA
95814
(916) 445-4843

COMMITTEES
CHAIRMAN
WAYS AND MEANS SUBCOMMITTEE
ON RESOURCES AND
TRANSPORTATION

MEMBER
PUBLIC EMPLOYEES AND
RETIREMENT
RESOURCES, LAND USE AND
ENERGY
WAYS AND MEANS



# Assembly
# California Legislature

### TERRY GOGGIN
ASSEMBLYMAN, SIXTY-SIXTH DISTRICT
SAN BERNARDINO COUNTY

AB 474 STATEMENT
ASSEMBLY COMMITTEE ON LABOR,
EMPLOYMENT & CONSUMER AFFAIRS
March 20, 1979

AB 474 IS A BILL ABOUT FUNDAMENTAL FAIRNESS. IT GUARANTEES PATENT RIGHTS TO EMPLOYED INVENTORS FOR INVENTIONS MADE ON THE EMPLOYEE'S OWN TIME, WITH HIS OWN RESOURCES, BASED ON HIS OWN IDEAS, COMPLETELY OUTSIDE THE SCOPE OF HIS EMPLOYMENT.

AS A CONDITION OF EMPLOYMENT, WORKERS ARE TYPICALLY REQUIRED TO SIGN AWAY ALL OR NEARLY ALL OF THEIR RIGHTS TO ANY INVENTIONS THEY MIGHT DEVELOP. THESE CONTRACTS OFTEN DO NOT DISTINGUISH BETWEEN INVENTIONS RELATED TO EMPLOYMENT AND THOSE PERFECTED INDEPENDENT OF THE JOB. EMPLOYED INVENTORS USUALLY RECEIVE LITTLE OR NOTHING FOR THEIR CREATIONS. ONE SURVEY OF CHEMICAL PATENT-HOLDERS IN CALIFORNIA FOUND THAT MORE THAN HALF RECEIVED A DOLLAR OR LESS IN DIRECT COMPENSATION. THIS IS NOT ONLY UNFAIR TO THE EMPLOYEE BUT ALSO UNDERMINES THE PATENT SYSTEM ITSELF BY REMOVING ANY INCENTIVE TO CREATE.

THE U.S. IS ONE OF THE FEW INDUSTRIALIZED COUNTRIES IN THE WORLD WITHOUT STATUTORY PROTECTION FOR EMPLOYED INVENTORS. GERMANY AND JAPAN, TWO OF OUR COMPETITORS WHO HAVE LAWS SIMILAR TO AB 474, ARE NOW LEADING THE WORLD IN PATENTS OF ORIGIN, WHILE THE U.S. HAS FALLEN FROM 1ST TO 7TH PLACE SINCE WORLD WAR II.

AB 474
Page 2

BILL

This bill provides that any employment agreement which assigns the rights of an invention to an employer shall not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and:

(a) does not relate (1) directly to the business of the employer, or (2) to the employer's actual or demonstrably anticipated research or development, or
(b) does not result from any work performed by the employee for the employer.

ANALYSIS

This bill is identical to AB 2257 which was passed by the committee, as amended, last year.  The bill is patterned after a similar Minnesota law which was enacted in 1977 (House File 763, Chapter 47, 1977).  The author of this bill, Representative Stanley Fudro, reports that there has been complete compliance and cooperation by Minnesota businesses with this law.  In addition, he states that such corporations as 3M, Honeywell, and Federal Munitions have had no problems obtaining contracts with the federal government as a result of the law.

The purpose of this bill is to guarantee the rights to an invention perfected by an employed inventor independent of the inventor's employment.  Many companies require the assignment of all an employee's inventions.  This creates a disincentive to invent since the inventor will receive little or no compensation for his or her "free invention".  Proponents of the bill state that the disincentive to invent has resulted in a slackening of creative inventiveness in the United States and note that the U.S. has fallen to seventh place in terms of patents of origin.  This bill would place in statute the legal concept that the right to an invention made independent of the employee's employment belongs to the employee.

SUPPORT:  California Society of Professional Engineers

OPPOSE:   TRW Inc. (Redondo Beach)
          American Safety Equipment Corp. (Encino)
          California Manufacturers Association
          Rockwell International

Consultant:  Steve Holloway
(mh)