# EXHIBIT 1

MGA ENTERTAINMENT
16730 Schoenborn Street
North Hills, California 91343

Dated as of September 18, 2000

Mr. Carter Bryant
1319 West 160th Street
Gardena, California 90247

Dear Mr. Bryant:

Set forth below are the terms and conditions upon which we (hereinafter "MGA") are retaining you ("Bryant") to consult and advise MGA in the design and development of certain products which MGA wishes to manufacture and distribute (hereinafter our agreement is sometimes referred to as the "MGA Consulting Agreement"). The parties' agreement is as follows:

1.    Retention as Consultant/Services: MGA retains Bryant to provide his services to consult with MGA and advise MGA on the design and development by MGA of a line of dolls presently known as "Bratz" (the "MGA Products"). Bryant will render his services at such locations and times as may be reasonably designated by MGA. It is understood and agreed that Bryant shall provide his services on a "top priority" basis as his services pertain to other clients of Bryant. In addition, Bryant and all other Bryant staff will take direction from and be under the supervision of such person(s) as may be reasonably designated by MGA from time to time upon notice to Bryant. It is understood and agreed that, subject to MGA's prior written consent, Bryant may retain third party contractors ("Contractors") to assist at his direction in the services to be rendered hereunder. Such third parties shall be compensated in a manner ("Contractor Fees") to be determined between Bryant and such third parties and shall be subject to the terms of this Agreement, including without limitation, paragraphs 3, 4, and 7, below. Bryant shall enter into agreements with all Contractors on a form approved by MGA as conforming to the terms of this Agreement and confirming MGA's ownership of all results and proceeds of the services provided by any such Contractors; such form is attached a Exhibit "A" to this Agreement, and is incorporated herein by reference.

2.    Term/Exclusivity: The Term shall commence on the date of this Agreement. MGA shall have the right to terminate this Agreement on not less than forty-five (45) days prior written notice to Bryant. During the Term of this Agreement, Bryant will not provide consulting services to any person, firm or corporation engaged in the design, development and manufacture and sale of dolls or similar products.

3.    Ownership:

(a)    All results and proceeds of the services provided by Bryant hereunder and any Contractor, including without limitation, any inventions, and any documentation related thereto, and any other material, whether written or oral (collectively, the "Bryant Work Product") shall be considered "work made for hire" and shall be owned exclusively, throughout the world, and in perpetuity by MGA (including all copyrights and patents therein and thereto, and all renewals and extensions thereof). MGA shall have the sole and exclusive right to use the Bryant Work Product, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify the Bryant Work Product and the results of Bryant's services hereunder and the Contractors' services, and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised. MGA shall have the sole and exclusive right to copyright or patent the Bryant Work Product in MGA's name, as the owner and author thereof, and to secure any and all registrations, renewals and extensions of such copyrights and

[0C00E662.DOC/2 / 10/04/2000  03:05 PM]

1

EXHIBIT _____1_____

PAGE _____4_____

M 0001547

...ents in MGA's name or Bryant's name or the Contractors' names, as permitted pursuant to applicable statute. Bryant expressly waives, and shall cause all Contractors to waive, any "moral rights" (as such term is commonly understood around the world) in and to the Bryant Work Product prepared by Bryant and/or the Contractors pursuant to the Agreement. Bryant shall, upon request, execute, acknowledge and deliver, and shall cause each Contractor to execute, acknowledge and deliver, to MGA such additional documents as MGA may deem necessary to evidence and effectuate MGA's rights hereunder, and Bryant hereby grants to MGA the right as Bryant's attorney-in-fact to execute, acknowledge, deliver and record in the U.S. Copyright Office, the U.S. Patent Office or elsewhere any and all such documents. If, whether by statutory amendment to the U.S. Copyright and/or Patent Laws, or a decision by a court of competent jurisdiction interpreting such laws, MGA shall not be deemed to be the author or owner of the Bryant Work Product, this Agreement and each agreement with a Contractor shall, nevertheless, constitute an irrevocable assignment by Bryant and each Contractor, as applicable, to MGA of any and all of Bryant's and each Contractors' right, title and interest, including copyright and patent (and all renewals and extensions thereof), in and to the Bryant Work Product. Bryant acknowledges and agrees, and shall cause each Contractor to acknowledge and agree, that he and they have no interest in and shall not, by virtue of this Agreement or any services rendered by Bryant and/or each Contractor to MGA acquire any interest in the MGA Products and that MGA may exploit the MGA Products and any derivative works thereto, without obligation to Bryant and/or the Contractors, except as provided in Paragraph 4, below.

(b)     Without limiting the generality of the provisions of Paragraph 3(a), above, with respect only to any inventions, and any documentation related thereto, and any other material, whether written or oral, created by or for Bryant relating to the MGA Products prior to the commencement of the term of this Agreement, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Bryant, Bryant hereby irrevocably grants, conveys, transfers, sets over and assigns to MGA in perpetuity all of Bryant's right, title and interest, in an to the such material, including, without limiting the generality of the foregoing, all rights under copyright and patent (and all renewals and extensions thereof) including the right to produce and authorize the production of any and all derivative works, and all proprietary rights of any kind therein, now known or hereafter created throughout the world. MGA shall have the sole and exclusive right to use such material, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify such materials and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised or refrain from doing so as MGA may determine. Bryant expressly waives any "moral rights" (as such term is commonly understood around the world) in and to such materials.

4.    **Compensation/Costs:**

(a)     For the first six (6) months of the Term of this Agreement, MGA shall pay Bryant for his services at the rate of five thousand five hundred dollars ($5,500.00) per month; for the next three (3) months of the Term, MGA shall pay Bryant for his services at the rate of five thousand dollars ($5,000.00) per month. All sums paid to Bryant as monthly fees shall be deemed to be non-refundable, fully-recoupable advances against any royalties that may be payable to Bryant pursuant to paragraph 4(b), below.

(b)     MGA shall pay to Bryant a royalty of three percent (3%) of the Net Sales Receipts from the sales by MGA of any of the MGA Products developed by MGA on which Bryant provided his consulting services. As used herein, the term "Net Sales Receipts" means all monies actually received by MGA from its customers on sales of MGA Products less (i) any and all excise, sales, value added or comparable or similar taxes; (ii) freight and similar third party handling charges paid or payable by MGA; and (iii) returns, discounts, allowances or credits (inclusive of co-op and trade discounts and allowances). MGA shall account to Bryant on a calendar quarterly basis within thirty (30) days after the end of each quarter. All statements of royalties rendered by MGA hereunder shall be conclusive, final,

2

EXHIBIT 1
PAGE 5
M 0001548

...ing on Bryant, shall constitute an account stated, and shall not be subject to any question for reason whatsoever unless specific written objection, stating the basis thereof, is given by Bryant to GA within two (2) years after the date rendered. No action, suit, or proceeding of any nature in respect of any royalty statement or other accounting rendered by MGA hereunder may be maintained against MGA unless such action, suit, or proceeding is commenced against MGA in a court of competent jurisdiction within one (1) year after the date of MGA's notice rejecting such objection. Bryant or his representatives shall have the right, not more than once per year and not more than once per statement of royalties, to examine MGA's books and records relating to the sales of such MGA Products, such examination to be conducted during MGA's normal business hours and upon reasonable prior written notice.

(c)    All costs and expenses incurred by Bryant in connection with the performance of his obligations hereunder shall be borne solely by Bryant, except as otherwise agreed and incurred with MGA's prior written consent. In the event MGA requests Bryant to travel to the Orient on MGA's behalf in connection with his services hereunder, MGA will reimburse Bryant for all travel expenses incurred in connection therewith, such as parking, airfare (economy class), auto rental, meals and hotel accommodations. Reimbursement shall be at the actual cost of such item without any mark-up.

(d)    Bryant shall submit invoices to MGA for his monthly fees (and reimbursable expenses, if and as agreed) on a monthly basis. Each invoice shall provide sufficient detail to support the monthly fee charges and hours rendered (and shall include satisfactory copies of bills and/or payments for reimbursable expenses, as applicable). MGA shall pay each such invoice within fifteen (15) days after receipt of such invoice, provided, however, MGA reserves the right to request further explanation or documentation before paying any invoice submitted by Bryant.

(e)    MGA shall use its reasonable business efforts, consistent with its business judgment, to market, promote, distribute, sell and/or exploit the MGA Products and to collect on all monies due from sales. MGA has not made and does not hereby make any representation or warranty with respect to the quantity of sales (if any) of MGA Products embodying the Property which MGA may sell. Bryant recognizes and acknowledges that the sale of MGA Products is speculative and agrees that MGA's judgment and the judgment of its subsidiaries and affiliated companies with regard to the sales of any of its MGA Products and with regard to the marketing, promotion, advertising and exploitation of the MGA Products shall be binding and conclusive upon Bryant. Bryant warrants and agrees that Bryant will not make any claim, nor shall any liability be imposed upon MGA based upon any claim, that more sales could have been made or that better business could have been done than what was actually made or done by MGA or any of MGA's subsidiaries or its affiliated companies, or that better prices or terms could have been obtained.

5.    **Warranties and Indemnity:** Bryant represents, warrants and agrees that:

(a)    he has the right and is free to execute this Agreement, to grant the rights granted by him to MGA hereunder, and to perform each and every term and provision hereof;

(b)    neither the execution and delivery of this Agreement nor the performance by Bryant of any of his obligations hereunder will constitute a violation, breach or default under any agreement, arrangement or understanding, or any other restriction of any kind, to which Bryant is a party or by which Bryant is bound;

(c)    the Bryant Work Product shall be free of all liens and encumbrances and there will be no claims, demands or actions pending or threatened with respect thereto; and that the Bryant Work Product is original and no part thereof infringes or shall infringe upon any common law or statutory rights or intellectual property rights of any third party including, without limitation, contractual rights,

[C0006662.DOC/2 / 10/04/2000 03:05 PM]

3

EXHIBIT ___1___

PAGE ___6___

M 0001549

copyrights, mask-work rights, trade secrets, rights of privacy and other intellectual property.

    (d)    he shall comply with all applicable laws and regulations in force during the Term of this Agreement with respect to the services to be rendered hereunder; and

    (e)    he shall indemnify and hold MGA harmless from and against any and all claims, losses, costs, judgments, settlements, damages and expenses (including reasonable counsel fees) arising from any breach by him of any of the warranties, representations and agreements made by him hereunder.

6.    <u>Default/Termination</u>:

    (a)    In the event either Party fails to perform any of its material obligations hereunder, or breaches any representation, warranty or agreement contained herein, the other Party may terminate this Agreement on thirty (30) days prior written notice, provided the breaching Party shall not have remedied such failure within such thirty (30) day period.

    (b)    Upon the termination of this Agreement Bryant shall turn over to MGA all materials relating to the MGA Products furnished by MGA to Bryant or shall give MGA satisfactory evidence of their destruction.

7.    <u>Confidentiality</u>:

    (a)    Bryant shall keep in confidence and not disclose to any third party, without the written permission of MGA, the Confidential Information made known to him under this Agreement. As used herein, the term "Confidential Information" means information relating to MGA's products (whether current or projected), product titles, customers, employees, tools and techniques, designs, drawings, schematics and other documentation relating thereto and other confidential and proprietary business information of MGA and which is expressly labeled or identified to Bryant in writing as "confidential" or which, under the circumstances of such disclosure, Bryant knows, or reasonably should know, are treated by MGA as confidential. This requirement of confidentiality shall not apply to any information that is (i) in the public domain through no wrongful act of Bryant; (ii) rightfully received by the Bryant from a third party who is not bound by a restriction of nondisclosure; (iii) already in the Bryant's possession without restriction as to disclosure; or (iv) required to be disclosed by operation of law or by order of a court or administrative body of competent jurisdiction, (provided that prior to such disclosure, MGA shall first receive notice thereof from Bryant and have the opportunity to contest such order or requirement of disclosure or seek appropriate protective order).

    (b)    Bryant agrees and acknowledges that all Confidential Information disclosed to him shall be and remain the sole property of MGA. Nothing contained in this Agreement shall be construed as granting to Bryant any right, title or interest of any kind, by license or otherwise, to the Confidential Information disclosed by MGA, the intellectual property therein or any part or copy thereof. Bryant further acknowledges and agrees that nothing contained herein shall be construed as granting Bryant any right to develop, manufacture, produce and/or distribute any product(s) derived from or which otherwise uses any of the Confidential Information disclosed by MGA, or authorize or in any way assist others to do so. Bryant may not make, sell, license or distribute copies of the Confidential Information disclosed by MGA and may not sublicense, transfer or assign in any manner whatsoever this Agreement or any of Bryant's rights or obligations under this Agreement.

    (c)    Bryant acknowledges that his failure to perform any of the terms or conditions of this Agreement shall result in immediate and irreparable damage to MGA. Bryant also acknowledges that there may be no adequate remedy at law for such failures and that in the event thereof MGA shall be

EXHIBIT _____1_____

PAGE _____7_____

M 0001550

equitable relief in the nature of injunction and to all other available relief, at law and/or in

8.   **Notices:** All notices, statements and/or payments to be given to the parties hereunder shall be addressed to the parties at the addresses set forth on the first page hereof or at such other address as the parties shall designate in writing from time to time. All notices shall be in writing and shall either be served by personal delivery, mail, or facsimile (if confirmed by mail or personal delivery of the hard copy), all charges prepaid. Except as otherwise provided herein, such notices shall be deemed given when personally delivered, all charges prepaid, or on the date five (5) days following the date of mailing, except that notices of change of address shall be effective only after the actual receipt thereof. Copies of all notices to MGA shall be sent to Fischbach, Perlstein & Lieberman LLP, 1875 Century Park East, Suite 850, Los Angeles, California 90067, Attention: David S. Rosenbaum, Esq. Copies of all notices to Bryant shall be sent to Carter Bryant 1319 West 160th Street, Gardena, California 90247.

9.   **Independent Contractor/No Partnership/Third Party Beneficiary:** Bryant's relationship with MGA is that of an independent contractor. Bryant does not have, and will not represent that he has, any power, right or authority to bind MGA, or to assume or create any obligation or responsibility, express or implied, on behalf of MGA in MGA's name. Nothing stated in the Agreement shall be construed as constituting a partnership or as creating the relationships of employer/employee or principal/agent between the parties. In all matters relating to the Agreement, Bryant shall not act as MGA's employee within the meaning or application of any federal or state unemployment insurance laws, or any other laws or regulations which may impute any obligations or liabilities to MGA by reason of an employment relationship. Bryant will be solely responsible for all taxes, including without limitation, employee and employer, and that he carries all of his own insurance. Neither of the parties hereto shall hold itself out contrary to the terms of this provision by advertising or otherwise. This Agreement shall not be construed to be for the benefit of any third party.

10.  **Services Rendered Deemed Special, etc.:** Bryant acknowledges that the services to be rendered by him hereunder are of a special, unique, extraordinary and intellectual character which gives them peculiar value, the loss of which cannot be adequately compensated for in an action at law and that a breach of any term, condition or covenant hereof will cause irreparable harm and injury to MGA and in addition to any other available relief MGA will be entitled to seek injunctive relief.

11.  **General Provisions:**

(a)   This Agreement may not be assigned by either Party hereto either voluntarily or by operation of law. Any such assignment shall not relieve such Party of its obligations hereunder.

(b)   The titles of the paragraphs of this Agreement are for convenience only and shall not in any way affect the interpretation of any paragraph of this Agreement or the Agreement itself.

(c)   A waiver by either Party of the terms or conditions of this Agreement in any instance shall not be deemed or construed to be a waiver of such terms or conditions for the future or of any subsequent breach thereof. All remedies, rights, undertakings, obligations and agreements contained herein shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either Party.

(d)   Neither Party hereto shall be liable to the other for any incidental, consequential, special or punitive damages of any nature or kind, arising out of in connection with a breach by such Party of this Agreement, whether such liability is asserted on the basis of contract, tort (including negligence or strict liability), or otherwise, even if such Party has been warned of the possibility of any such loss or damage.

EXHIBIT ___1___

PAGE ___8___

M 0001551

(e)      This Agreement shall be construed and interpreted pursuant to the laws of the State of California, applicable to agreements made and to be performed entirely therein, and the parties hereto submit and consent to the jurisdiction of the courts of the State of California, including Federal Courts located therein, should Federal jurisdiction requirements exist, in any action brought to enforce (or otherwise relating to) this contract.

(f)      This Agreement constitutes the entire Agreement between the parties hereto and supersedes all prior agreements, whether written or oral, with respect to the subject matter herein contained. No provision of this Agreement shall be deemed waived, amended or modified by either Party unless such waiver, amendment or modification shall be in writing and signed by a duly authorized officer of the Party against whom the waiver, amendment or modification is to be enforced.

(g)      Nothing contained in this Agreement shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provision of this Agreement and any material statute, law, ordinance, order or regulation contrary to which the parties hereto have no legal right to contract, the latter shall prevail, but in such event any provision of this Agreement so affected shall be curtailed and limited only to the extent necessary to bring it within the legal requirements.

Kindly indicate your agreement with the foregoing by signing in the space provided below.

Very truly yours,

MGA ENTERTAINMENT

By: _____

Its: _____

AGREED TO AND ACCEPTED:

_____
CARTER BRYANT

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
Social Security Number

{00006662.DOC/2 / 10/04/2000  03:05 PM}

6

EXHIBIT ____1____

PAGE ____9____

M 0001552

# EXHIBIT 2



HCA 2152/2002

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

CIVIL ACTION NO. 2152 OF 2002

_____

BETWEEN

ABC INTERNATIONAL TRADERS, INC.                                    Plaintiff
doing business as MGA ENTERTAINMENT

and

(1) TOYS & TRENDS (HONG KONG) LIMITED

(2) CITYWORLD LIMITED

(3) JURG WILLI KESSELRING                                          Defendants

_____

AFFIRMATION OF LEE SHIU CHEUNG
_____

I, Lee Shiu Cheung of Room 1001, Empire Centre, 68 Mody Road, Tsimshatsui East, Kowloon, Hong Kong do solemnly, sincerely and truly affirm and say as follows: -

1.    I am the Managing Director of MGA (HK) Entertainment Ltd. (hereinafter referred to as "MGAHK"), an affiliate of ABC International Traders Inc, doing business as MGA Entertainment, the Plaintiff herein (hereinafter referred to as "MGA") and duly authorised by MGA to make this affirmation on its behalf. Unless otherwise stated, the facts and matters contained herein are true and they are either within my own personal knowledge or gleaned from books and records of MGAHK to which I have free access or supplied or related to me by Isaac Larain, the CEO of MGA. Insofar as facts and matters that do not fall within the aforesaid category, they are related to me by the respective sources stated hereinafter and are true to the best of my information and belief.

Exhibit 941
E. Lee
10 5 /07 12 PM
Angela Dupre, CSR 7804

M 0001570

EXHIBIT 2

PAGE 10

2.   MGA was originally founded in 1979 as a consumer electronics business. However, in 1987 MGA obtained exclusive rights to sell Nintendo hand held LCD games (Game Boy) in the USA and naturally, Game Boy was an instant success which paved the way for MGA to enter the toy business.   MGA obtained licenses to deal with a series of action figures known as Power Rangers back in the 1990s which was again another mega success worldwide. This year MGA added Spider-Man: The Movie to its already existing collection of licences.   Thus one can see that MGA is a reputable company in the toy business with substantial goodwill by successfully acquiring the aforesaid licences of these "mega hits".   MGA holds a total of 17 licences and others include Hello Kitty and Coca Cola.   Now produced and shown to me marked "LSC-1" is a copy of the corporate profile of MGA downloaded from its website.

3.   Since 1987 MGA has primarily concentrated and focused its efforts in the toy industry and as at the date hereof, MGA has 8 product categories and they are smart toys, interactive dolls, handheld games, fashion dolls, youth electronics, music, licensed products and small dolls.   In the years 2000 and 2001, MGA's revenue exceeded US$93 million and US$98 million respectively.   The projected revenue for the year 2002 is US$250 million due to the success of a range of dolls known as BRATZ which is the subject matter of this action and will be dealt with in detail hereinafter.   For the year 2001, the sale of BRATZ dolls, accessories and income from licence fees accounted for 22% of the total revenue of US$160 million.   MGA forecasts that the sale of BRATZ dolls, accessories and income from licence fees for the year 2002 will account for 50% of the revenue for that year.

4.   Toys designed and marketed by MGA have been the subject of numerous awards and prizes.   However, the most successful toy designed and marketed by MGA must be the BRATZ dolls.   In the year 2001, BRATZ dolls won the

2

M 0001571

EXHIBIT ___2___

PAGE ___11___

941-2

following awards in the USA, namely, Toy of the Year Award (Winner) and People's Choice Toy of the Year (Winner).

**BRATZ DOLLS**

5.    On 18 September 2000, MGA entered into an agreement to commission Mr. Carter Bryant (hereinafter referred to as "Mr. Bryant") to design and develop a line of dolls known as BRATZ (hereinafter referred to as "the Agreement"). Mr. Bryant was a graduate of Ottis College in fashion and toy design. Although BRATZ is a misspelling of the word "brats", the former was coined by MGA not to denote naughty or spoilt children but to denote hip and cool young adolescent or teenage girls. This idea of hip and cool is born out in the design of the BRATZ dolls.

6.    Now produced and shown to me marked "LSC-2" is a copy of the Agreement. I crave leave to draw this Court's attention to clause 3 of the Agreement whereby all intellectual property right including copyright subsisting in the works generated by Mr. Bryant shall be owned by MGA. Pursuant and prior to the Agreement and commission, Mr. Bryant did design a range of 4 dolls known as BRATZ and did make original design drawings of the BRATZ dolls. At all material times, Mr. Bryant is a resident of and domiciled in the USA.

7.    Now produced and shown to me marked "LSC-3" are copies of 17 initial concept and design drawings of the BRATZ dolls made by Mr. Bryant in the year 2000 pursuant to the Agreement. Now produced and shown to me marked "LSC-4" is a copy of a sheet of paper setting out the initial concept and idea of the BRATZ dolls by Mr. Bryant. The 4 dolls represent 4 best friends in high school who love to trade clothes, shoes and hairdos. Since these accessories are interchangeable, the 4 dolls can look different every day. And furthermore, there would be a lucrative business of supplying accessories to the owners of BRATZ dolls thus ensuring a steady stream of revenue.

3

M 0001572

EXHIBIT ____2____

PAGE ____12____    942-3

8.  Each of the 4 BRATZ dolls was given a name and a different ethnic origin so they could appeal to everyone in the targeted age group of girls between 5 to 14 years old.  Chloe is Caucasian, Sasha is black, Yasmin is Hispanic and Jade is Oriental.

9.  The BRATZ dolls are the subject matter of copyright protection in the United States and copies of their registration certificates are now produced and shown to me marked "LSC-5".  Samples of each of the 4 dolls in their original packaging are now produced and shown to me marked "LSC-6a to d".

10. The BRATZ dolls and accessories are marketed and sold in the following packs: -

    a)  BRATZ dolls, Beach Party doll and micro BRATZ doll- BRATZ dolls are those exhibited as "IL-6a to d", Beach Party dolls are BRATZ dolls wearing beach apparel and micro BRATZ dolls are smaller versions of BRATZ dolls.  The total sales of the Bratz dolls and Micro Bratz dolls for 2001 was over US$22 million.  The 1st quarter sales (FOB) for dolls this year has so far been over US$17 Million.  Now produced and shown to me marked "LSC-7" is a sample of 1 micro BRATZ doll.

    b)  BRATZ fashion pack- These are separately sold apparel so that the dolls could have a wider selection of new clothing.  The total sales value (FOB) of the fashion packs for the year 2001 was over US$940,000.  The first quarter sales(FOB) for the said fashion packs this year has so far been over US$1.5 million.  Now produced and shown to me marked "LSC-8" is a sample of a BRATZ fashion pack.

    c)  BRATZ shoe pack- These are additional shoes of different styles sold in separate packs.  The total sales value (FOB) of the shoe packs for the year 2001 was over US$140,000.

4

EXHIBIT _____ 2 _____

PAGE _____ 13 _____

M 0001573

941-4

11.   The BRATZ dolls and accessories are marketed and sold in the European Union, the Americas, Australia, New Zealand, Philippines, Indonesia, Israel, Japan and Switzerland.

12.   The BRATZ dolls have their own website at www.bratzpack.com. The site also maintains a fan club known as BRATZ pack which maintains a list of its members. The aim of this fan club is to notify its members of new fashion trends that the BRATZ dolls will wear themselves and the launch and marketing thereof. Now produced and shown to me marked "LSC-9" are downloaded copies from the said website.

13.   So far MGA has spent a total of US$7.5 million in advertising and promotion expenses in USA alone. A further sum of US$5 million has been spent in MGA's other markets worldwide as listed hereinabove.

14.   As mentioned hereinbefore, the BRATZ dolls have become an instant success and they have become collectibles. Considerable media coverage have been given to these dolls and now produced and shown to me marked "LSC-10" is a selection of press cuttings and celebrity photos of the BRATZ pack.

15.   Another major source of revenue generated by the BRATZ dolls is income derived from merchandising rights by granting non-exclusive licences to other companies worldwide. So far, 27 merchandise licence agreements have been granted in respect of a wide range of products including paper napkins, girls clothing, jewelry, bedding, home furnishing, stationery, toiletries, video games and footwear etc. Now produced and shown to me marked "LSC-11" is a sample of a merchandise licence agreement.

16.   Furthermore, MGA has granted exclusive distribution rights of the BRATZ dolls and accessories to Bandai Inc. for a term of 3 years starting from 1 April 2001 in France, Belgium, Germany, Austria, Switzerland, Spain, UK, Portugal, Ireland, Luxembourg and Netherlands.

5

M 0001574

EXHIBIT _____ 2

PAGE _____ 14

941-5

17.

18.

19.

20.

6

M 0001575

EXHIBIT    2

PAGE    15

941-6

21.

22.

23.

24.

7

M 0001576

EXHIBIT    2
PAGE    16

941-7

25.

26.

27.

28.

29.

8

M 0001577

EXHIBIT 2

PAGE 17

9418



30.

31.

32.

9

M 0001578

EXHIBIT     2

PAGE        18

941-9

33.

34.

35.

10

EXHIBIT ___2___

PAGE ___19___

M 0001579

941-10



36.

37.

38.

11

M 0001580

EXHIBIT _____2_____

PAGE _____20_____

941-11

39.    Finally, I state that this affidavit is made on behalf of MGA, the owner of the copyright subsisting in the artistic works exhibited as "LSC-3" herein and: -

a)    The said artistic works were made on divers dates between 1998 and 2000 in the USA;

b)    The author of the said artistic works is one Carter Bryant and at all material times he was a resident of and domiciled in the USA;

c)    Copies of the said artistic works exhibited as "IL-3" are true copies of the said artistic works.

Affirmed at the office of Messrs.    )
C.L. Chow& Macksion Chan,    )
Rooms 501-502, 5th. Hang    )
Seng Bldg, 77 Des Voeux    )
Road Central, H.K    )
this 18th day of  June  2002    )

Before me,

Chan Yin Chee
Solicitor, Hong Kong SAR
C.L. Chow & Macksion Chan, Solicitors

Solicitor
This affirmation is filed on behalf of the Plaintiff.

12

M 0001581

EXHIBIT    2

PAGE    21

941-12



HCA 2152/2002

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

CIVIL ACTION NO. 2152 OF 2002

BETWEEN

        ABC INTERNATIONAL TRADERS, INC.        **Plaintiff**
        doing business as MGA ENTERTAINMENT

            and

(1)  TOYS & TRENDS (HONG KONG) LIMITED

(2)  CITYWORLD LIMITED

(3)  JURG WILLI KESSELRING        **Defendants**

This is the exhibit marked "LSC-3" referred to in the Affirmation of Lee Shiu Cheung dated the 18th day of June 2002.

| Description of document | Date | No. of pages |
|---|---|---|
| Copies of 17 initial concept and Design drawings of the BRATZ Dolls made by Mr. Bryant in the year 2000 | divers | 17 |

Before me,

*Chung Chee*

Solicitor, HKSAR

Chan Yin Chee
Solicitor, Hong Kong SAR
C.L. Chow & Macksion Chan, Solicitors

DEPOSITION EXHIBIT

M 0001489A

EXHIBIT _2_

PAGE _22_



All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

JUNE 2000
Contract date . 9/18/2000

EXHIBIT _____ 2

PAGE _____ 23

M 0001489



8/1998

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Consent date 9/5/00

EXHIBIT _____ 2

PAGE _____ 24

M 0001490



EXHIBIT _____ 2
PAGE _____ 25

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date - 9/18/00

M 0001491



8/1998

EXHIBIT _____ 7

PAGE _____ 74

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date   9/11/00

M 0001492



© 1998

EXHIBIT _____ 2

PAGE _____ 27

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date   9/11/00

M 0001493



All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date · 9/18/00

EXHIBIT    _γ_

PAGE    _γ8_

M 0001494



©
8/1998

EXHIBIT ___ 𝓎 ___

PAGE ___ 𝓎𝓆 ___

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date   9/18/00

M 0001495



8/1998

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Commenced date   9/15/00

EXHIBIT _____ 2

PAGE _____ 30

M 0001496



8/1998

EXHIBIT _____ 2

PAGE _____ 31

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date  9/18/00

M 0001497



All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date 9/9/00

EXHIBIT _____ 2

PAGE _____ 32

M 0001498



All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract dude. 4/18/00

EXHIBIT ___2___

PAGE ___33___

M 0001499



All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

EXHIBIT 2

PAGE 34

M 0001500



EXHIBIT ___2___

PAGE ___35___

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date. 9/18/00

M 0001501



# DOLL PIECE COUNT*

HAIRSTYLE #1

LONG TEE

SHORT TEE

JEANS

SNEAKERS

HAIRSTYLE #2

MARY JANES

TOTAL PIECES*
- LONG SLEEVED TEE SHIRT
- CUFFED "JEANS"
- SHORT SLEEVED TEE SHIRT
- SKIRT
- POP ON/OFF SNEAKERS
- POP ON/OFF MARY JANES
- BACKPACK
- LONG HAIRSTYLE "WIG" (POP ON/OFF)
- SHORT HAIRSTYLE "WIG" (POP ON/OFF)
- DOLL BODY/HEAD

* DESIGN SUBJECT TO CHANGE

DRAWINGS NOT TO ACTUAL SIZE

EXHIBIT ___2___

PAGE ___36___

M 0001502

BODY



NOT ACTUAL SIZE

ACTUAL DOLL HEIGHT (WITH HEAD) APPX. 9½" - 10"

M 0001503

EXHIBIT _____ 2 _____

PAGE _____ 37 _____



To give Zoe a whole new look for night, change her short dark brown hairstyle to her long blonde hairdo (included), change her pants to a skirt (also included) and change her sneakers to platform sandals (you get those too!)

M 0001504

EXHIBIT ___2___

PAGE ___38___



M 0001505

EXHIBIT ___2___

PAGE ___39___