**EXHIBIT  30**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   31**

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

## 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company all my right, title and interest in such Inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any Invention does not apply to an Invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an Invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those Inventions that either (1) relate at the time of conception or reduction to practice of the Invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

## 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature

Employee Name (print) CARTER H. BRYANT

Date 01/04/99

MATTEL, INC.
By
Signature

Name of Witness (print) TERESA NEWCOMB

M 0001596



EXHIBIT ____31____

PAGE ____545____

# EXHIBIT 32

## CONFLICT OF INTEREST QUESTIONNAIRE

*BRYANT, CARTER H.*          *PROJECT DESIGNER*

Name (Last, First, M.I.)          Job Title          Department

**Instructions:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Recipient of any commission, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

○ YES ● NO   1. Have you owned, directly or indirectly, any interest in a Mattel supplier?

○ YES ● NO   2. Have you owned, directly or indirectly, and interest in a Mattel competitor?

○ YES ● NO   3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?

● YES ○ NO   4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?

● YES ○ NO   5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?

○ YES ● NO   6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?

○ YES ● NO   7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?

○ YES ● NO   8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?

○ YES ● NO   9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

*4, 5, freelance design & artwork in 1998,*
*from apprx. 5/98 - 11/98 for the Ashton Drake*
*galleries.*

I certify that I have read Mattel's policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

Signature: *Carter A. Bryant*          Date: *01/04/98*

M 0001621



EXHIBIT _____ 32 _____

PAGE _____ 546 _____

**EXHIBIT  33**

Employee Confidential Information
and Inventions Agreement

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates, I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment by the Company and other good and valuable consideration, I agree that:

1.   *Provisions Related to Trade Secrets.*

(a)  I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b)  As used in this Agreement, "Proprietary Information" means any information (including any formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information of the Company, its customers, suppliers, joint venturers, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c)  I will not disclose or use at any time, either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d)  Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

2.   *Ownership of Inventions.*

(a)  I agree to communicate to the Company as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company.  I hereby assign to the Company and/or its nominees all my right, title and interest in such Inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time and in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b)  As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data, computer programs and formulae, whether patentable or unpatentable.

(c)  Any provision in this Agreement requiring me to assign my rights in any Invention does not apply to an Invention which qualifies under the provisions of Section 2870 of the California Labor Code.  That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

(d)  I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

M 0001638

DEPOSITION
EXHIBIT
23

EXHIBIT _____33_____

PAGE _____541_____

3. *Conflicts with Other Activities.*

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or the future business plans of the Company.

(b) My employment with the Company and my compliance with this Agreement do not and will not breach any agreement to keep in confidence information acquired by me prior to or outside of my employment with the Company. I have not brought and will not bring with me to the Company for use in the performance of my duties at the Company any materials, documents or information of a former employer or any third party that are not generally available to the public unless I have obtained express written authorization from the owner for their possession and use by or for the Company. I have not entered into, and will not enter into, any agreement either oral or written, in conflict with this Agreement.

4. *Miscellaneous.*

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in a writing signed by a Vice-President of the Company. Any waiver by the Company of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligations under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This Agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company

CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.

_Carter H Bryant_
Employee Signature

MATTEL, INC.

By _N. Newcomb_

CARTER H. BRYANT
Employee Name  (print)

I. NEWCOMB
Name of Witness  (print)

11/6/95
Date

M 0001639

EXHIBIT _33_

PAGE _548_

**EXHIBIT   34**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   35**



# Teen Skipper™

by Scott Arend

It's Skipper doll's 33rd birthday, and in the usual limited life span of toys, that makes her something of a legend. During that time she's had five face lifts, a new body, two boyfriends, several cars, a boat and a horse. She's perfected her athletic skills on roller skates, teeter boards, sleds and in the ice skating rink, while still finding time to babysit, act as a flower girl or bridesmaid in dozens of weddings and be elected Homecoming Queen. In spite of these triumphs—she's never really gotten to grow up—until now.

1997 is the year that Barbie doll's little sister, Skipper, finally becomes a real teenager. Teen Skipper has grown an additional two inches, has a new body style, face mold, hairstyle, clothes, a hip new attitude and is officially 16 years old. Available since May, Teen Skipper and her friends, Nikki and Courtney, are cute, cool and catching the interest of vintage and new doll collectors—an unusual surprise for a doll designed as part of the children's play line.

An adult-figured doll with breasts was still a radical idea to many parents in the early 1960s, and their children were not allowed to play with the Barbie doll. Mattel appealed to this group of parents and kids with the introduction of Skipper, Barbie doll's little sister. Only 9" tall and lacking the full-figured body of Barbie doll, Skipper was approximately 7–10 years of age. The sister connection between the two dolls was firmly

BRYANT 00943          CONFIDENTIAL

EXHIBIT 35

PAGE 551



established by Mattel through the use of companion outfits. All 10 of Skipper doll's original 1964 ensembles and 8 of the 12 ensembles from 1965, coordinated with Barbie doll's wardrobe.

Skipper doll's success can be measured by the profusion of ensembles she received and by the world of friends that was soon added for her. Although she continued to be involved in many activities younger children enjoyed, such as giving tea parties and jumping rope, her wardrobe reflected the eye-popping influences of mod fashion. Wild colors, prints, patterns and accessories definitely made her the coolest preteen in toydom.

The first head mold for Skipper doll was used exclusively through

*Teen Skipper, left, as she appears on store shelves  if you like Skipper, chances are you will love friends Nikki and Courtney.*
*Below  Talented fashion illustrator Carter Bryant  prepared these preliminary sketches of this new teen doll*

1978, and occasionally between 1978 and 1984. This original doll was superseded by "Super Teen Skipper" who was introduced in 1979 and, by following the lead of the Superstar Barbie, had a smiling face. Although a teen-ager, she still had the shapeless body of her predecessor, and was meant to be about 13 years old. Not too popular with kids, she underwent cosmetic surgery again for another smiling debut in 1985 as Hot Stuff Skipper. Looking rather demonic, the doll was as unpopular as the one she replaced, and a new look was again developed.

Radically different from the earlier versions, the fourth incarnation of Skipper doll, introduced in 1988, had a large head and a flatter, cartoon-like face. She resembled the humans prevalent in Japanese animation, and was somewhat similar to the Takara Jenny doll with her big eyes and small, closed mouth. Although her make over included a new body with small breasts, the doll looked very childlike. She had a wide age range with younger activities reflected in Pet Pals Skipper and Babysitter Skipper, as well as older teen-aged activities such as Homecoming Queen and Teen Sweetheart. Whatever age she portrayed, she was extremely appealing to children, and over two dozen versions of this doll were created, including the first introduction of an African American Skipper.

A revamped, smiling Skipper doll, who appeared to be 12 or 13 years of age, was introduced in 1995. Her head size was smaller and she didn't have the large painted eyes used over the past seven years, but she still seemed to be at an awkward



38 *Barbie Bazaar*

"Cool Streaker Nikki"

BRYANT 00944
EXHIBIT 35                    CONFIDENTIAL

PAGE  552

**EXHIBIT  36**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   37**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   38**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   39**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   40**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  41**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   42**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   43**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   44**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   45**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   46**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   47**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   48**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   49**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   50**

# THIS EXHIBIT IS FILED UNDER SEAL
# PURSUANT TO PROTECTIVE ORDER

**EXHIBIT  51**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  52**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   53**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  54**

**Immigrant's Creative Company Shakes Up Toy Industry**

By JEFF WEISS; Contributing Reporter
1,098 words
29 March 2004
San Fernando Valley Business Journal
English
2004 San Fernando Valley Business Journal.  All rights reserved.

Large Business Award - MGA Entertainment, North Hills

Only 16 years old, with a mere $750 in his pocket, and with parents across the globe in Iran, **Isaac Larian** never expected to eventually be the founder of one of the fastest growing toy companies in the world.

Initially undecided whether to emigrate to the United States or to Israel, Larian opted to pursue the American dream. The Business Journal's recipient of the family business Best Large Company award, MGA Entertainment, is the end product of Larian's hard work, determination, and foresight in capitalizing upon opportunity.

Yet before becoming a toy mogul, Larian set out to forge a career in the civil engineering industry before realizing his true talents lay elsewhere.

"I came here to get a civil engineering degree because I thought I'd be a civil engineer and go back to Iran and build infrastructure," Larian said. "I graduated in 1978 from Cal State Los Angeles but I never worked as an engineer. Shortly after graduating, the (Iranian) revolution broke out and I discovered that engineering wasn't for me. I was more of an entrepreneur."

The following year Larian and his brother Farhad founded MGA as a consumer electronics company. Their first foray into the toy industry didn't come until 1987 when Isaac saw the opportunity to manufacture Nintendo's hand-held electronic games.

"I'm an entrepreneur and in 1987 I saw an opportunity to become the distributor for Nintendo's hand-held games. I just saw opportunity. Most entrepreneurs do that," Larian said.

After two years in the hand-held video game industry, MGA left the toy game and returned to consumer

© 2005 Dow Jones Reuters Business Interactive LLC (trading as Factiva). All rights reserved.

EXHIBIT ___54___

PAGE ___787___

M 0101133

electronics. Returning in 1993 to produce Mighty Morphin Power Rangers accessories, MGA never left the toy industry, having its first breakthrough item with 1997's wildly successful Singing Bouncing Baby Doll.

"Singing Bouncing Baby was our first doll and it was a huge hit," Larian said. "We ended up winning Family Fun Toy of the Year which is the Oscars of the toy industry. We ended up doing in excess of a million pieces," said Larian.

Introducing Bratz

But MGA's greatest success came later, with the introduction of 2001's Bratz dolls. Against all odds, Larian pioneered a line of dolls able to undercut the success of Barbie, the only company to do so since Barbie's 1959 debut.

However, the modest Larian is quick to acknowledge others for contributing to the company's success. A close knit family, Larian's sister, Shirin Makabi, is the company's director of travel and expenses. Shirin's husband, Eli Makabi, is MGA's vice-president in charge of traffic in sales. In addition, the Makabis co-own the business with Larian. But Larian family involvement does not stop there; Larian's children have played a crucial role in MGA's development.

"My oldest son, 17-year-old Jason, is very creative and a music writer. He has come up with some of our popular toys," Larian said. "He came up with Commandobot—a robot that was the first ever robot toy to work on voice recognition. It was a fantastic seller that was featured in Wired magazine. It was Jason's idea for Bratz."

Larian's other children have also been key to product development.

"Yasmin, my 15-year-old daughter, is involved in the business as well. She's particularly interested in fashion and focus groups. One of the Bratz is named after her," Larian said. "My 10-year-old son, Cameron, is also the namesake for one of the boy Bratz. Cameron comes up with different product ideas. One of our best ideas was a winter wonderland Bratz line. We were on a family ski vacation and he said 'Dad, you should do a Bratz winter break.' So we did it and it sold wonderfully."

Thanking the employees

Larian also credits the company's 430 employees for much of MGA's success.

"Our success is due to the passion of the people we have working for us. Each one has contributed to our success because they are passionate about the company and winning."

Page 230      © 2005 Dow Jones Reuters Business Interactive LLC (trading as Factiva). All rights reserved.

EXHIBIT __54__

PAGE __788__

M 0101134

With business booming, a Bratz licensing deal with 20th Century Fox has been inked. A Bratz DVD and a Bratz feature film are soon on the way.

"The Bratz are a true phenomenon that has taken the toy/doll industry by storm," Jim Gianopulos, chairman of Fox Filmed Entertainment, said. "They are more than just toys; they reflect the cultural diversity and contemporary style that kids relate to. That kind of success and impact on young people make the company a natural in a major motion picture, and we look forward to turning the Bratz figures into major motion picture stars."

MGA's projected revenue for 2004 is $1 billion and the company has openings for 110 employees in a variety of positions. Although MGA's success is now assured, there were obstacles along the way.

"I noticed some discrimination when I first got into the business world. I think that after living here for 33 years, there is unfortunately discrimination whether you're Jewish, Persian, black or whatever," Larian said. "But it made me stronger to go out and fight. People become resilient and they get angry and they need to turn that anger into positive energy."

Larian has certainly come a great distance from being a teenager with inclinations towards civil engineering and less than a thousand dollars in his pocket. Thanks to MGA, Barbie's pedestal seems a little less secure.

"I'm having a lot of fun and enjoying what I'm doing here right now and I think as long as you have fun at your job, it's a great thing," Larian said. "I believe that in life you have to have passion for what you do and if you lose that passion you shouldn't do it. My vision is for MGA to become a multibillion-dollar entertainment company and specialize in other things besides just toys."

Looking back on the whirlwind rise of MGA, Larian still seems a bit surprised by the amount of success he's encountered.

"My life is proof that dreams come true. You can't give up. They were definitely moments of self-doubt. I just didn't want to fail, I always had that desire to win," Larian said. "We've made history by unseating Barbie and for a small San Fernando Valley company to do that is a miracle."

Document SFVBJ00020041020e03t0003p

Page 231      © 2005 Dow Jones Reuters Business Interactive LLC (trading as Factiva). All rights reserved.

EXHIBIT __54__

PAGE __789__

M 0101135

**EXHIBIT   55**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  56**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  57**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  58**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   59**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   60**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   61**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   62**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   63**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   64**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   65**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   66**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   67**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 68**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   69**

1 | THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
2 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
3 | Los Angeles, CA 90071
Tel.: (213) 687-5000/Fax: (213) 687-5600
4
KENNETH PLEVAN (admitted *pro hac vice*)
5 | (kplevan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 | Four Times Square
New York, NY 10046
7 | Tel.: (212) 735-3000 / Fax: (212) 735-2000

8 | Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian
9

10 | UNITED STATED DISTRICT COURT

11 | CENTRAL DISTRICT OF CALIFORNIA

12

13 | CARTER BRYANT, an individual,

14 | Plaintiff,

15 | v.

16 | MATTEL, INC., a Delaware corporation,

17

18 | Defendant.

19

20 | AND CONSOLIDATED ACTIONS

21

CASE NO. CV 04-9049 SGL (RNBx)

MGA'S NOTICE OF WITHDRAWAL OF UNCLEAN HANDS AFFIRMATIVE DEFENSE AS IT PERTAINS TO PHASE 1

22

23

24

25

26

27

28

2·15·08

MGA'S NOTICE OF WITHDRAWAL OF UNCLEAN HANDS AFFIRMATIVE DEFENSE AS IT PERTAINS TO PHASE I

EXHIBIT ___69___

PAGE ___1096___

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that the MGA Parties hereby withdraw their affirmative defense based on unclean hands as it pertains to Phase 1 of this action.  The MGA Parties will assert unclean hands as an affirmative defense only in connection with Phase 2 of this action.


DATED:  February 15, 2008

                                SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

                                By: _____
                                    Thomas J. Nolan
                                    Attorney for MGA Entertainment, Inc.

EXHIBIT ___69___

PAGE ___1097___

1  THOMAS J. NOLAN (Bar No. 066992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, CA  90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:  (213) 687-5600
4  E-mail:     tnolan@skadden.com

5  KENNETH PLEVAN (admitted *pro hac vice*)
   (kplevan@skadden.com)
6  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   Four Times Square
7  New York, NY  10036
   Tel.: (212) 735-3000 / Fax: (212) 735-2000
8
   Attorneys for Counter-Defendants,
9  MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
   (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.
10
                    UNITED STATES DISTRICT COURT
11
                   CENTRAL DISTRICT OF CALIFORNIA
12
                          EASTERN DIVISION
13

14  CARTER BRYANT, an individual        )   CASE NO. CV 04-9049 SGL (RNBx)
                                        )
15                   Plaintiff,         )   Consolidated with Case No. 04-9059
                                        )   and Case No. 05-2727
16           v.                         )
                                        )   **PROOF OF SERVICE**
17  MATTEL, INC., a Delaware            )
    corporation                         )
18                                      )
                     Defendant.         )
19                                      )
                                        )
20                                      )
                                        )
21                                      )
                                        )
22  Consolidated with MATTEL, INC. v.   )   Discovery Cut-Off:  January 28, 2008
    BRYANT and MGA                      )
23  ENTERTAINMENT, INC. v.              )
    MATTEL, INC.                        )
24                                      )
25
26
27
28
                           2·15·08
    ────────────────────────────────────────────────────────
    PROOF OF SERVICE                      NO. CV 04-9049 SGL (RNBx)

                    EXHIBIT ___69___

                    PAGE ___1098___

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, 34th Floor, Los Angeles, CA 90071.

On February 15, 2008, I served the foregoing documents described as:

**SEE ATTACHED DOCUMENT LIST**

on the interested parties in this action addressed as follows:

**SEE ATTACHED SERVICE LIST**

☒ (BY PERSONAL SERVICE) ☐ By personally delivering copies to the person served. (FEDERAL)

☒ I caused such document to be hand delivered to the above addressees. (FEDERAL)

☒ (BY FEDERAL EXPRESS) I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with Federal Express and the fact that the correspondence would be deposited with Federal Express that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on February 15, 2008 at Los Angeles, California.

Matthew Bowman
PRINT NAME                    SIGNATURE

- 2 -

PROOF OF SERVICE                              NO. CV 04-9049 SGL (RNBx)

EXHIBIT _____ 69

PAGE _____ 1099

## **DOCUMENT LIST**

1) MGA'S NOTICE OF WITHDRAWAL OF UNCLEAN HANDS AFFIRMATIVE DEFENSE AS IT PERTAINS TO PHASE 1

2) PROOF OF SERVICE

- 3 -

PROOF OF SERVICE                                                   NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___69___

PAGE ___1100___

1  SERVICE LIST

2

3  John B. Quinn, Esq.
   Michael T. Zeller, Esq.
4  Jon D. Corey, Esq.
   Timothy L. Alger, Esq.
5  Quinn Emanuel Urquhart Oliver &
   Hedges, LLP
6  865 South Figueroa Street, 10th Floor
   Los Angeles, CA 90017-2543
7  (213) 443-3000
   (213) 443-3100 (Fax)
8
   Attorneys for Mattel, Inc.
9  [Personal Service]

10

11

12  Mark E. Overland, Esq.
    Alexander H. Cote, Esq.
13  David C. Scheper, Esq.
    Overland Borenstein Scheper & Kim
14  300 South Grand Avenue, Suite 2750
    Los Angeles, CA 90071
15  (213) 613-4655
    (213) 613-4656 (Fax)

16  [Federal Express]

17

18

19

20

21

22

23

24

25

26

27

28

John W. Keker, Esq.
Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400
(415) 397-7188 (Fax)

Attorneys for Carter Bryant
[Federal Express]

- 4 -

PROOF OF SERVICE                    NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___69___

PAGE ___1101___

**EXHIBIT  70**

SEND

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| MGA ENTERTAINMENT, INC., | ) | Case No. CV 05-02727 SGL(RNBx) |
|---|---|---|
| Plaintiff, | ) | SCHEDULING ORDER [FRCP 16(b)] |
| v. | ) | 1.  Establishing a Discovery Cut-off Date of March 3, 2008 |
| MATTEL, INC., | ) | 2.  Non-Discovery Motion Hearing Cutoff date of April 7, 2008, at 10:00 a.m. |
| Defendants. | ) | 3.  Setting Final Pretrial Conference for June 2, 2008, at 11:00 a.m. |
|  | ) | 4.  Setting Jury Trial Date of July 1, 2008, at 9:30 a.m. |

**READ THIS ORDER CAREFULLY. IT CONTROLS THE CASE AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES.**

FEB 2 2 2007

The above matter is set for trial before the Honorable Stephen G. Larson, United States District Judge, Courtroom 1, United States District Court, Eastern Division, 2nd Floor, Riverside, California.

1.  **Discovery Cut-Off:** This is the last date to complete discovery, including

DOCKETED ON C.

FEB 2 2 2007

2-21

EXHIBIT ___70___

PAGE ___1102___

1  expert discovery, and the resolution of any discovery motions before this court. If expert

2  witnesses are to be called at trial, the parties shall designate experts to be called at trial and

3  provide reports required by Fed. R. Civ. P. 26(a)(B), not later than eight weeks prior to the

4  discovery cutoff date. Rebuttal expert witnesses shall be designated and reports provided as

5  required by Fed.R.Civ.P. 26(a)(2)(B), not later than five weeks prior to the discovery cutoff

6  date. Failure to timely comply with this deadline may result in the expert being excluded at

7  trial as a witness. The Court requires compliance with Local Rule 37-1 and 37-2 in the

8  preparation and filing of discovery motions. Discovery motions may not be heard on an ex

9  parte basis.

10      2.      **Joinder of Parties and Amendment of Pleadings:**  Any motions to join other

11  parties or for leave to amend the pleadings shall be filed within sixty (60) days of the date of

12  this Order so that they can be heard and decided prior to the deadline. This deadline does

13  not apply if the deadline for joining parties or amending pleadings has already been

14  calendared or occurred by virtue of an order issued by another Judge.

15      In addition to the requirements of Local Rules 15-1, 15-2, and 15-3, all motions to

16  amend the pleadings shall (a) state the effect of the amendment; (b) be serially numbered to

17  differentiate the amendment from previous amendments and (c) state the page, line

18  number(s), and wording of any proposed change or addition of material.

19      3.      **Motion Filing Cut-Off:** The Court hears motions on Mondays at 10:00 a.m.

20  The motion filing cut-off date is the last day motions may be heard (not filed). The Court will

21  not decide late motions. Issues left undetermined by the passage of the motion cut-off date

22  should be listed as issues for trial in the Final Pretrial Conference Order. As an exception to

23  the above, motions in limine dealing with evidentiary matters may be heard at or before trial;

24  however, summary judgment motions disguised as motions in limine will not be heard.

25  Parties need not wait until the discovery cut-off to bring motions for summary judgment or

26  partial summary judgment. However, in the usual case, the court expects that more than the

27  minimum notice will be provided to counsel opposing motions for summary judgment. In the

28

2

EXHIBIT ___70___

PAGE ___1103___

1   usual case, the parties should confer and agree on the date for setting such motions.

2       Ex parte applications are entertained solely for extraordinary relief.  See Mission Power
3   Eng. Co. v. Continential Casualty Co., 883 F.Supp. 488 (C.D. Cal. 1995).  Strict adherence to
4   proper ex parte procedures is required for any ex parte application filed with the Court.

5       4.   Stipulations to Extend Time:  Stipulations to extend the time to file any required
6   document or to continue any pretrial or trial date must set forth (a) the existing due date or
7   hearing date; (b) the current pretrial conference date and trial date; (c) the specific reasons
8   supporting good cause for granting the extension or continuance; and (d) whether there have
9   been any prior requests for extensions or continuances, and whether these were granted or
10  denied by the Court.

11      5.   Summary Judgment Motions:  The Separate Statement of Undisputed Facts is to
12  be prepared in a two-column format.  The left-hand column should set forth the allegedly
13  undisputed fact.  The right-hand column should set forth the evidence that supports the
14  factual statement. The fact statements should be set forth in sequentially numbered
15  paragraphs.  Each paragraph should contain a narrowly focused statement of fact.  Each
16  numbered paragraph should address a single subject in as concise a manner as possible.

17      The opposing party's statement of genuine issues must be in two columns and
18  track the movant's separate statement exactly as prepared.  The document must be in two
19  columns; the left-hand column must restate the allegedly undisputed fact, and the right-hand
20  column must indicate either undisputed, or disputed.  The opposing party may dispute all or
21  only a portion of the statement, but if disputing only a portion, must clearly indicate what part
22  is being disputed.  Where the opposing party is disputing the fact in whole or part, the
23  opposing party must, in the right-hand column, label and restate the moving party's evidence
24  in support of the fact, followed by the opposing party's evidence controverting the fact.
25  Where the opposing party is disputing the fact on the basis of an evidentiary objection, the
26  party must cite to the evidence alleged to be objectionable and state the ground of the

27
28
                                3

EXHIBIT ___70___
PAGE ___1104___

1  objection and nothing more.  **No argument should be set forth in this document.**

2      The opposing party may submit additional material facts that bear on or relate to the

3  issues raised by the movant, which shall follow the format described above for the moving

4  party's separate statement.  These additional facts shall follow the movant's facts, shall

5  continue in sequentially numbered paragraphs (i.e., if movant's last statement of fact was set

6  forth in paragraph 30, then the first new fact will be set forth in paragraph 31), and shall set

7  forth in the right hand column the evidence that supports that statement.

8      The moving party, in its reply, shall respond to the additional facts in the same

9  manner and format that the opposition party is required to adhere to in responding to the

10  statement of undisputed facts, as described above.

11      (a)  **Supporting Evidence:** No party should submit any evidence other than the

12  specific items of evidence or testimony necessary to support or controvert a proposed

13  statement of undisputed fact.  Thus, for example, the entire transcript of a deposition, entire

14  sets of interrogatory responses, and documents that do not specifically support or controvert

15  material in the separate statements, should not be submitted in support or opposition to a

16  motion for summary judgment.  Any such material will not be considered.

17      Evidence submitted in support of or in opposition to a motion should be submitted

18  either by way of stipulation or as exhibits to declarations sufficient to authenticate the

19  proffered evidence, and should not be attached to the Memorandum of Points and

20  Authorities.  The Court will accept counsel's authentication of deposition transcript, of written

21  discovery responses, and of the receipt of documents in discovery if the fact that the

22  document was in the opponent's possession is of independent significance.  Documentary

23  evidence as to which there is no stipulation regarding foundation must be accompanied by

24  the testimony, either by declaration or properly authenticated deposition transcript, of a

25  witness who can establish its authenticity.

26      If evidence in support of or in opposition to a motion exceeds twenty pages, the

27

28

4

EXHIBIT 70

PAGE 1105

1   evidence must be in a separate bound volume and include a Table of Contents.

2       **(b) Objections to Evidence:** If a party disputes a fact based in whole or in part

3   on an evidentiary objection, the ground of the objection, as indicated above, should be

4   stated in the separate statement but not argued in that document. Evidentiary objections

5   are to be addressed in a separate memorandum to be filed with the opposition or reply brief

6   of the party. This memorandum should be organized **to track the paragraph numbers of**

7   **the separate statement in sequence.** It should identify the specific item of evidence to

8   which objection is made, the ground of the objection, and a very brief argument with citation

9   to authority as to why the objection is well taken. The following is an example of the format

10  contemplated by the Court:

11          Separate Statement Paragraph 1: Objection to the supporting deposition transcript

12          of Jane Smith at 60:1-10 on the grounds that the statement constitutes inadmissible

13          hearsay and no exception is applicable. To the extent it is offered to prove her

14          *state of mind, it is irrelevant since her state of mind is not in issue.*

15          Fed. R. Evid. 801, 802.

16      Do not submit blanket or boilerplate objections to the opponent's statements of

17  undisputed fact: these will be disregarded and overruled.

18      **(c) The Memorandum of Points and Authorities:** The movant's memorandum of

19  points and authorities should be in the usual form required under Local Rule 7-5 and should

20  contain a narrative statement of facts as to those aspects of the case that are before the

21  Court. All facts should be supported with citations to the paragraph number in the Separate

22  Statement that supports the factual assertion and not to the underlying evidence.

23          Unless the case involves some unusual twist on Rule 56, the motion need only

24  contain a brief statement of the Rule 56 standard; the Court is familiar with the Rule and

25  with its interpretation under Celotex and its progeny. If at all possible, the argument should

26  be organized to focus on the pertinent elements of the cause(s) of action or defense(s) in

27

28

                                        5

EXHIBIT  **70**

PAGE  **1106**

1   issue, with the purpose of showing the existence or non-existence of a genuine issue of

2   material fact for trial on that element of the claim or defense.

3         Likewise, the opposition memorandum of points and authorities should be in the

4   usual form required by Local Rule 7-5, and where the opposition memorandum sets forth

5   facts, the memorandum should cite to paragraphs in the separate statement if they are not in

6   dispute, to the evidence that contravenes the fact where the fact is in dispute or, if the fact is

7   contravened by an additional fact in the statement of genuine issues, the citation should be

8   to such fact by paragraph number.

9         (d) **Timing:** In virtually every case, the Court expects that the moving party will

10   provide more than the minimum twenty-one (21) day notice for such motions. The moving

11   party should deliver to chambers a copy of a diskette, in WordPerfect format (11.0 or earlier

12   versions), containing the Statement of Uncontroverted Facts and Conclusions of Law.

13     6.  **Motions in Limine:**  The parties must file motions in limine addressing the

14   admissibility of evidence in accordance with Local Rule 7-3. The parties shall file their

15   opposing and reply papers in accordance with Local Rules 7-9 and 7-10 respectively.

16     7.  **Pretrial Conference and Trial Setting:**  Compliance with the requirements of

17   Local Rule 16 is mandatory. Counsel shall submit carefully prepared Memoranda of

18   Contentions of Fact and Law (which may also serve as the trial briefs) and Proposed Pre-

19   Trial Conference Order ("PTCO") in accordance with the provisions of Local Rules 16-1

20   through 16-7. The Proposed Pre-Trial Conference Order shall conform to the example set

21   forth in Appendix A to the Local Rules, modified as necessary to comply with this order.

22         The Memoranda of Contentions of Fact and Law, Exhibit Lists, and Witness Lists

23   shall be served and filed no later than fourteen (14) calendar days before the Pre-Trial

24   Conference. The Proposed Pre-Trial Conference Order shall be lodged fourteen (14)

25   calendar days before the Pre-Trial Conference.

26         The Proposed Pre-Trial Conference Order must contain a Table of Contents. Place

27

28

EXHIBIT ___70___

PAGE ___1107___

1  in all capital letters and in bold the separately numbered headings for each category in the

2  PTCO.  Under paragraph 1, list each claim, counterclaim, or defense that has been

3  dismissed or abandoned.  In multiple-party cases where not all claims or counterclaims will

4  be prosecuted against all remaining parties on the other side, please specify to which party

5  each claim or counterclaim is directed.  The factual issues in dispute should track the

6  elements of a claim or defense upon which the jury would be required to make findings.

7  Counsel should state issues in ultimate fact form, not as evidentiary fact issues (i.e., "was the

8  defendant negligent," "was defendant's negligence the proximate cause of plaintiff's injury;"

9  not "was the plaintiff standing on the corner of 12th Street and Lemon Avenue at 10:00 a.m.

10  on March 1").  Issues of law should state legal issues upon which the Court will be required

11  to rule after the Pre-Trial Conference, including during the trial, and should not list ultimate

12  fact issues to be submitted to the trier of fact.

13          In drafting the PTCO, the court expects that counsel will attempt to agree on and

14  set forth as many non-contested facts as possible.  The court will normally read the

15  uncontested facts to the jury at the start of the trial.  Carefully drafted and comprehensively

16  stated stipulation of facts will reduce the length of trial and increase jury understanding of the

17  case.

18          If expert witnesses are to be called at trial, each party must list and identify its

19  respective expert witnesses, both retained and non-retained.  <u>Failure of a party to list and</u>

20  <u>identify an expert witness in the  Proposed Pre-Trial Conference Order shall preclude a party</u>

21  <u>from calling that expert witness at trial.</u>

22          This case has been placed on calendar for a Final Pretrial Conference ("PTC")

23  pursuant to Fed. R. Civ. P. 16 and Local Rule 16-1, <u>et seq.</u>, unless the PTC was expressly

24  waived at the Scheduling Conference by the court.  Unless excused for good cause, each

25  party appearing in this action shall be represented at the PTC and all pretrial meetings of

26  counsel, by lead trial counsel.  The failure to attend the PTC or to submit the required pretrial

27

28

7

EXHIBIT    70

PAGE    1108

1  documents may result in the dismissal of the action, striking the answer and entering a
2  default, and/or the imposition of sanctions.
3        A continuance of the Final Pretrial Conference at counsel's request or stipulation
4  will only be approved upon a showing of good cause.  Counsel should plan to do the
5  necessary pretrial work on a schedule which will insure its completion with time to spare
6  before the Final Pretrial Conference.  Specifically, failure to complete discovery work,
7  including expert discovery, is not a ground for a continuance.
8        Compliance with the requirements of Local Rules 16-1 to 16-13 is required by the
9  court.  Carefully prepared Memoranda of Contentions of Fact (which may also serve as the
10 trial brief) and a proposed Final Pretrial Conference Order shall be submitted in accordance
11 with the provisions of Local Rule 16-7 and the form of the proposed Final Pretrial Conference
12 Order shall be in conformity with the format set forth in Appendix A to the Local Rules.
13       At the PTC, counsel should be prepared to discuss means of streamlining the trial,
14 including, but not limited to: bifurcation, presentation of non-critical testimony by deposition
15 excerpts, stipulations as to the content of testimony, presentation of testimony on direct
16 examination by declaration subject to cross-examination, and qualification of experts by
17 admitted resumes.  In certain cases where the PTC is waived by the court, counsel must
18 follow Local Rule 16-11.
19     **8.   Witness List and Times Estimates:**  Counsel shall prepare a list of their witnesses,
20 an estimate of the length of time needed for direct examination for each witness, and whether
21 the witness will testify by deposition or in person.  Counsel shall exchange these lists with
22 opposing counsel.[1]  **Counsel shall jointly file a single witness list, including estimates for**
23 **direct examination of their own witnesses and estimates for cross-examination of**
24 **opposing witnesses.**  This list shall be filed at the time counsel lodge the Proposed Pre-Trial
25
26 _____
27   [1] See "Joint Trial Witness Estimate Form" appended to this order.
28

8

EXHIBIT _____ 70
PAGE _____ 1109

1  Conference Order, i.e., fourteen (14) days before the Pre-Trial Conference.

2        **9.   Jury Instructions and Verdict Forms:** Fourteen (14) calendar days prior to

3  counsel's Rule 16 pre-trial meeting, counsel shall exchange proposed jury instructions

4  (general and special) and special verdict forms (if applicable).  Seven (7) calendar days prior

5  to the Rule 16-2 meeting, counsel shall exchange any objections to the instructions and

6  special verdict forms.  Prior to, or at the time of the Rule 16 meeting, counsel shall meet and

7  confer with the goal of reaching agreement on one set of joint jury instructions and one special

8  verdict form.

9        The parties should make every attempt to agree upon the jury instructions before

10  submitting them to the Court.  The Court expects counsel to agree on the substantial majority

11  of jury instructions, particularly when pattern instructions provide a statement of applicable law.

12  When the Manual of Model Civil Jury Instructions for the Ninth Circuit provides a version of an

13  applicable requested instruction, the parties should submit the most recent version of the

14  Model instruction.  Where language appears in brackets in the model instruction, counsel shall

15  select the appropriate text and eliminate the inapplicable bracketed text.  Where California law

16  applies, counsel should use <u>Judicial Council of California Civil Jury Instructions</u> (June 2006)

17  ("CACI").  If neither of the above sources is applicable, counsel are directed to use the

18  instructions from O'Malley, Grenig & Lee (formerly Devitt, <u>et al.</u>), <u>Federal Jury Practice and</u>

19  <u>Instructions</u> (latest edition).  Each requested jury instruction shall cover only one subject or

20  principle of law and shall be numbered and set forth in full on a separate page, citing the

21  authority or source of the requested instruction (except for the "clean" jury copy discussed

22  below).

23        When the parties disagree on an instruction, the party opposing the instruction must

24  attach a short statement (one to two paragraphs) supporting the objection, and the party

25  submitting the instruction must attach a short statement supporting the instruction.  Each

26  statement should be on a separate page and should follow directly after the disputed

27

28

                                   9

EXHIBIT ___70___

PAGE ___110___

1 | instruction.

2 |     The parties ultimately must submit one document or, if the parties disagree over any

3 | proposed jury instructions, two documents.  If the parties submit two documents, those

4 | documents shall consist of: (a) a set of Joint Proposed Jury Instructions and (b) a set of

5 | Disputed Jury Instructions, along with reasons supporting and opposing each disputed

6 | instruction in the format set forth in the previous paragraph.

7 |     The parties must file proposed jury instructions fourteen (14) calendar days before

8 | the Pre-Trial Conference.  If the court is closed that day, counsel shall file the proposed

9 | instructions the preceding Friday.  No later than 4:00 p.m. on the date such instructions are

10 | due, the parties must submit conformed courtesy copies to the Court's courtesy box located

11 | outside the entrance to Courtroom 1, United States District Court, 3470 Twelfth Street, 2nd

12 | Floor, Riverside, California.  Counsel shall also provide the Court with a 3½ inch diskette

13 | compatible with WordPerfect version 11.0 or lower containing the proposed jury instructions, in

14 | accordance with this paragraph and the previous paragraph.

15 |     The Court will send a copy of the instructions into the jury room for the jury's use

16 | during deliberations.  Accordingly, in addition to the file copies described above, the diskette

17 | submitted with the jury instructions shall contain a "clean set" of Joint Proposed and/or

18 | Disputed Jury Instructions, containing only the text of each instruction set forth in full on each

19 | page, with the caption "Court's Instruction No. ___" (eliminating titles, supporting authority,

20 | indication of party proposing, etc.).

21 |     An index page shall accompany all jury instructions submitted to the Court.  The

22 | index page shall indicate the following:

23 |     (a)  The number of the instruction;

24 |     (b)  A brief title of the instruction;

25 |     (c)  The source of the instruction and any relevant case citations; and

26 |     (d)  The page number of the instruction.

27 |

28 |

10

EXHIBIT 70
PAGE 1111

EXAMPLE:

| Number | Title | Source | Page |
|--------|-------|--------|------|
| 1 | Trademark-Defined (15 U.S.C. § 1127) | 9th Cir. 15.3.2 | 7 |

Along with the jury instructions, counsel shall submit any necessary special verdict form fourteen (14) calendar days before the Pre-Trial Conference.

10. **Voir Dire Questions:** Counsel may, but need not, submit brief proposed voir dire questions for the jury at the Pre-Trial Conference. The Court will conduct its own voir dire after consulting any proposed voir dire submitted by counsel. After the Court conducts its own voir dire, counsel will be provided an opportunity to ask supplemental questions subject to Court approval.

11. **Joint Statement of the Case:** Counsel shall submit a joint statement of the case at the Pretrial Conference. The joint statement of the case will be read to the prospective panel of jurors prior to the commencement of voir dire. The statement should not exceed one page. The statement shall be filed with the Court no later than 4:00 p.m., on the Wednesday prior to the Pre-Trial Conference.

12. **Exhibits:** The parties shall file their witness lists and exhibits lists in accordance with Local Rule 16. Counsel are to assemble their exhibits by placing them in three-ring binders labeled on the spine portion of the binder showing both the volume number and the exhibit numbers. Each exhibit shall be separated by a tabbed divider on the right side. Counsel shall provide original exhibits for the courtroom deputy clerk and a duplicate set for the judge. The original exhibits shall be tagged with the appropriate exhibit tags in the upper or lower right corner of the first page of each exhibit and include the case number, case name, and exhibit number. Each binder shall contain a Table of Contents. Counsel must comply with Local Rule 26-3 when numbering the exhibits. The Clerk's Office, located at the United States District Court, 3470 Twelfth Street, Riverside, California can supply counsel with appropriate exhibit tags.

11

EXHIBIT __70__
PAGE __1112__

1    The Court requires the following to be submitted to the courtroom deputy clerk on the

2    first day of trial: (a) The original exhibits with the Court's exhibit tags; (b) one bench book with

3    a copy of each exhibit for the Court's use, tabbed as described above; (c) three (3) copies of

4    exhibit lists and a floppy disk containing the exhibit list; (d) three (3) copies of witness lists in

5    the order in which the witnesses will be called to testify; and (e) file a Notice of Lodging of

6    Deposition Transcripts  (original and 2 copies) and Lodge all anticipated trial deposition

7    transcripts directly with the deputy clerk in the courtroom.

8    All counsel are to meet no later than ten (10) calendar days before trial to discuss

9    and agree to the extent possible on issues including foundation and admissibility.

10   **13. Pre-Trial Exhibit Stipulation:** The parties shall prepare a Pre-Trial Exhibit

11   Stipulation which shall contain each party's numbered list of trial exhibits, with objections, if

12   any, to each exhibit including the basis of the objection and the offering party's response. All

13   exhibits to which there is no objection shall be deemed admitted. All parties shall stipulate to

14   the authenticity of exhibits whenever possible, and the Pre-Trial Exhibit Stipulation shall

15   identify any exhibits whose authenticity has not been stipulated to and the specific reasons for

16   the party's failure to stipulate.

17   The Stipulation shall be substantially in the following form:

18                          Pre-Trial Exhibit Stipulation

19   Plaintiff's Exhibits

20   | Number | Description | Objection | Response to Question |

21

22   Defendant's Exhibits

23   | Number | Description | Objection | Response to Question |

24

25   The Pre-Trial Exhibit Stipulation shall be filed at the same time as counsel lodges the

26   Proposed Pre-Trial Conference Order. Failure to comply with this paragraph may constitute a

27

28

12

EXHIBIT     70

PAGE     113

1    waiver of all objections.

2        **14. Findings of Fact and Conclusions of Law:** For a non-jury trial, counsel for each

3    party shall lodge proposed findings of fact and conclusions of law fourteen (14) days before

4    trial. The parties should deliver to chambers a copy of these findings and conclusions of law

5    on disk in WordPerfect format.

6            (a)    Underline in red the portions which it disputes;

7            (b)    Underline in blue the portions which it admits; and

8            (c)    Underline in black the portions which it deems not disputed, but deems

9                   irrelevant.

10       Counsel may agree with a part of a finding or conclusion, disagree with a part of it

11   and/or consider a part of irrelevant.

12       Two marked copies of opposing counsel's proposed findings of fact and conclusions of

13   law shall be lodged with the court seven (7) days before trial and one marked copy shall be

14   served on opposing counsel. Courtesy copies of the marked copies shall be deposited in the

15   drop box located outside the entrance of Courtroom 1 of the above-entitled court on the date

16   due.

17       **15. Settlement:** Local Rule 16-15.2 provides that the Settlement Conference shall be

18   conducted not later than 45 days before the Pretrial Conference. The Court believes that in

19   most cases completion of all discovery and dispositive motions will help the parties assess

20   their positions before they embark on the costly pre-trial process. However, in many cases,

21   the parties find it more difficult to settle after they have incurred the cost of all discovery and

22   motion practice. Accordingly, the Court strongly encourages counsel and the parties to pursue

23   settlement earlier.

24       The Court has a keen interest in helping the parties achieve settlement. If the parties

25   believe that it would be more likely that a settlement would be reached if they conduct

26   settlement conference at an earlier time than that specified by the Court, they should conduct

27

28

                                        13

EXHIBIT    70

PAGE    114

1   it at that time.  In any event, the parties must file a Status Report re Settlement at the time

2   they lodge the Proposed Pretrial Order.

3        The Court will not conduct settlement conferences in non-jury cases which the Court will

4   try.  In jury cases, the Court will conduct a settlement conference at the parties' request if

5   three conditions exist: (a) The parties are satisfied that the fact issues in the case will be tried

6   to a jury; (b) all significant pre-trial rulings which Court must make have been made; and (c)

7   the parties desire the Court to conduct the conference, understanding that if settlement fails,

8   the Court will preside over the trial of the case.

9        **If a settlement is reached, it shall be reported immediately to this Court as**

10  **required by Local Rule 16-15.7.**

11       16.  The failure to attend the pretrial conference or to submit timely in conformity

12  with the format set forth in this order, the jury instructions, pre-trial exhibit stipulation, joint

13  statement of the case, voir dire questions, summary of witness testimony and times estimates,

14  proposed Pretrial Conference Order or the memorandum of contentions of fact and law may

15  result in the dismissal of the action, striking the answer and entering default and/or the

16  imposition of sanctions.

17       17. **Telephonic Status Conference:**

18       Telephonic status conferences are sometimes set by the court to discuss settlement

19  status and other pending issues.  If a telephonic status conference has been set, all counsel

20  are ordered to discuss the matter with their clients and opposing counsel before the telephonic

21  status conference.  Plaintiff's counsel must make the arrangements and place the conference

22  call.  Plaintiff's counsel shall include all counsel of record and the Court on the date and time

23  scheduled.  The conference operator is to place the final call to the Court at (951) 328-4410.

24  To assist the Court and staff, participants shall identify themselves each time they speak.  No

25  cellular telephones or speaker telephones will be allowed.

26                          **Internet Site**

27

28

14

EXHIBIT    70

PAGE    1115

1    Counsel are encouraged to review the Central District's website for additional Information.

2    The address is "http: //www.cacd.uscourts.gov".

3

4    The courtroom deputy clerk is ordered to serve a copy of this Order by mail, facsimile or

5    e-mail on counsel for all parties to this action.

6

7    IT IS SO ORDERED.

8    Dated: _____    FEB 2 1 2007

9

10

11

12    STEPHEN G. LARSON
      UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

EXHIBIT ___70___

PAGE ___1116___

Case: _____         Joint Trial Witness Estimate Form         Trial Date: _____

| | WITNESS NAME | PARTY CALLING WITNESS AND ESTIMATE | X- EXAMINER'S ESTIMATE | DESCRIPTION OF TESTIMONY | COMMENTS |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| | Total Estimates This Page: | | | | |

**Instructions:**
(1) List witnesses (last name first); (2) For description, be extremely brief, e.g. "eyewitness to accident." Or "expert on standard of care"(3) Use estimates within fractions of an hour, rounded off to the closest quarter of an hour, e.g. if you estimate 20 minutes, make it .25. An estimate of one and one-half hours would be 1.5. An estimate of three-quarters of an hour would be .75; (4) Note special factors in "Comments" column. e.g. "Needs interpreter." (5) Entries may be in handwriting if very neat and legible.

-16-

EXHIBIT __70__

PAGE __1117__

Confirmation Report - Memory Send

Page         : 001
Date & Time: 02-22-2007  03:22pm
Line 1       : 2136240643
Line 2       :
Machine ID : QUINN EMANUEL

| Job number | : | 446 |
| Date | : | 02-22  03:18pm |
| To | : | ☎76039#20257#13104771699 |
| Number of pages | : | 016 |
| Start time | : | 02-22  03:18pm |
| End time | : | 02-22  03:22pm |
| Pages sent | : | 016 |
| Status | : | OK |

Job number      : 446                    *** SEND SUCCESSFUL ***

## QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA  94111
(415) 875-6600
Facsimile: (415) 875-6700

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065
(650) 801-5000
Facsimile: (650) 801-5100

LOS ANGELES OFFICE
### FACSIMILE TRANSMISSION

DATE:     February 22, 2007                    NUMBER OF PAGES, INCLUDING COVER:  16

NAME/COMPANY                              PHONE NO.            FAX NO.
Rahul Ravipudi, Esq.                       (310) 477-1700      (310) 477-1699

FROM:     Allison Burkholder, Esq.

RE:       Gulati v. IBM

MESSAGE:   PLEASE SEE ATTACHED

| 20257/2004946.3 | | | | ☐ CONFIRM FAX |
| CLIENT # | 20257 | ROUTE/ RETURN TO: | Monica Argathum | ☐ INCLUDE CONF. REPORT |
| OPERATOR: Rafael | | | CONFIRMED?   ☐ No   ☐ Yes | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT     70

PAGE     1118

RightFAX          2/22/2007 3:18      PAGE 001/017    Fax Server

From:    Name:       United States District Court
                     312 North Spring Street
                     Los Angeles, CA  90012
         Voice Phone: (213) 894-5474


To:      Name:       Michael Zeller
         Company:

                     865 S Figueroa St, 10th Floor,
         City/State: Los Angeles, CA 90017-2543
         Fax Number: 213-443-3100

                 UNITED STATES DISTRICT COURT
                 CENTRAL DISTRICT OF CALIFORNIA               

                 **Automated Document Delivery Service**
                   *Notice pursuant to Rule 77(d) FRCiv.P*
          *The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

Fax Notes:

Case 2:05-CV-02727 : MGA ENTERTAINMENT INC V. MATTEL INC ET AL


*Pursuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search Warrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents (Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail address for each division is as follows:*

                 *Western Division:  CrimIntakeCourtDocs-LA@cacd.uscourts.gov*
                 *Southern Division:  CrimIntakeCourtDocs-SA@cacd.uscourts.gov*
                 *Eastern Division:  CrimIntakeCourtDocs-RS@cacd.uscourts.gov*

   *For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

                 Switch to e-mail delivery and get these documents sooner!
                         To switch, complete and submit
                     Optical Scanning Enrollment / Update form G-76.
                 Call 213-894-5474 for help and free technical support.

*If you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case, a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for which you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

Date and time of transmission:       Thursday, February 22, 2007 3:14:36 PM
Number of pages including this cover sheet:  17

EXHIBIT  70

PAGE  119

**EXHIBIT   71**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   72**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   73**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  74**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   75**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   76**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   77**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   78**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT   79

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  80**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 81**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   82**

RECEIVED

MAY 3 0 2007

1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  MICHAEL H. PAGE - #154913
   CHRISTA M. ANDERSON - #184325
3  710 Sansome Street
   San Francisco, CA 94111-1704
4  Telephone: (415) 391-5400
   Facsimile: (415) 397-7188
5
6  Attorneys for Plaintiff
   CARTER BRYANT
7

8
                    UNITED STATES DISTRICT COURT
9
                   CENTRAL DISTRICT OF CALIFORNIA
10

11

12  CARTER BRYANT, an individual,          Case No. CV 04-09049 SGL (RNBx)
                                           (consolidated with CV 04-9059 & 05-2727)
13                        Plaintiff,
                                           CARTER BRYANT'S SUPPLEMENTAL
14       v.                                AND AMENDED RESPONSES TO
                                           MATTEL, INC.'S THIRD SET OF
15  MATTEL, INC., a Delaware Corporation,  REQUESTS FOR ADMISSION TO
                                           CARTER BRYANT
16                        Defendant.

17  CONSOLIDATED WITH MATTEL, INC. v.
    BRYANT and MGA ENTERTAINMENT,
18  INC. v. MATTEL, INC.

19

20

21  PROPOUNDING PARTY:   Defendant MATTEL, INC. ("Defendant")

22  RESPONDING PARTY:    Plaintiff CARTER BRYANT ("Plaintiff")

23  SET NUMBER:          THREE (3)

24

25

26

27

28

EXHIBIT 82

PAGE 1272

1    Carter Bryant ("Defendant" or "Bryant") hereby provides supplemental and amended

2  responses to certain requests included in Mattel, Inc.'s ("Plaintiff" or "Mattel") Third Set of

3  Requests for Admission.  Bryant, in good faith, provides these supplemental and amended

4  responses in an effort to address concerns raised by Mattel in its letter dated April 25, 2007, and

5  as outlined in Bryant's letter to Mattel dated May 15, 2007.

6    Bryant's responses and objections are made solely for the purpose of this action.

7    Bryant points out that discovery is still pending, that it has not concluded its investigation

8  of the facts relating to this case, has not completed its own discovery in this case, and has not

9  completed preparation for trial.  In light of the foregoing, the following Responses are given

10  without prejudice to Bryant's right to stand on its objections, to continue its investigation and

11  discovery, to rely on subsequently discovered facts, and to utilize subsequently discovered or

12  subsequently identified evidence or documents.

13    The following Responses reflect the current status of Bryant's knowledge and belief

14  respecting the matters about which inquiry is made.  Discovery will continue as long as

15  permitted by statute or stipulation of the parties, and investigation by Bryant, its attorneys and

16  agents will continue up to and throughout the trial of this action.  Bryant specifically reserves the

17  right to introduce at the time of trial any evidence from any source, including documents and

18  testimony from any witnesses which may hereafter be discovered.

19    If any information has been unintentionally omitted from these Responses, Bryant hereby

20  reserves the right to amend these Responses to include the omitted information.  Bryant also

21  reserves the right to change, amend or supplement any or all of the matters contained in these

22  responses as additional facts are ascertained, analyses are made, and research is completed.

23  These introductory paragraphs apply to each and every Response herein and shall be

24  incorporated as though fully set forth in each and every Response.

25    All of Bryant's responses are based upon information and documentation that is currently

26  available and specifically known to Bryant.  The responses are made in a good-faith effort to

27  provide information now known to Bryant which are responsive, but Bryant specifically reserves

28

1

1 | the right both to supplement any of the responses set forth below and to utilize at trial any further
2 | information or documents.

3

4 | **GENERAL OBJECTIONS**

5 | Bryant incorporates the General Objections originally set forth in his response to Mattel's
6 | Third Set of Requests for Admissions.

7

8 | **RESPONSES TO REQUESTS FOR ADMISSION**

9 | **REQUEST FOR ADMISSION NO. 1:**

10 | Admit that the document attached hereto as Exhibit 1 is a true and correct copy of a
11 | registration MGA obtained from the U.S. Copyright Office as of June 18, 2001.

12 | **RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

13 | Bryant incorporates by reference the above-stated general objections as if fully set forth
14 | herein. Bryant specifically objects to this request on the grounds that the request seeks to have
15 | Bryant characterize the document. Bryant also asserts that the document speaks for itself.
16 | Bryant specifically objects to this request on the grounds that it calls for Bryant to speculate
17 | about matters to which Bryant lacks personal knowledge.

18 | Subject to and without waiving the foregoing general and specific objections, Bryant
19 | responds to this request by incorporating MGA's response to Request Number 1 in Mattel's
20 | Fourth Set of Requests for Admissions, served on MGA by Mattel, as follows: MGA responds
21 | that the document appears to be a copy of the original, and Bryant is presently unaware of any
22 | facts which refute that response.

23

24 | **REQUEST FOR ADMISSION NO. 2:**

25 | Admit that the document attached hereto as Exhibit 2 is a true and correct copy of a
26 | supplementary registration MGA obtained from the U.S. Copyright Office as of March 28, 2005.

27

28

2

PLAINTIFF'S SUPPLEMENTAL AND AMENDED RESPONSES TO
DEFENDANT'S THIRD SET OF REQUESTS FOR ADMISSION
CASE NO. CV 04-09049

EXHIBIT 82

PAGE 1274

1   on or about October 4, 2000, copies of which have been produced in this litigation. One of the

2   clauses of that contract includes the following language: "Without limiting the generality of the

3   provisions of Paragraph 3(a), above, with respect only to any inventions, and any documentation

4   related thereto, and any other material, whether written or oral, created by or for Bryant relating

5   to the MGA Products prior to the commencement of the term of this Agreement, for good and

6   valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Bryant,

7   Bryant hereby irrevocably grants, conveys, transfers, sets over and assigns to MGA in perpetuity

8   all of Bryant's right, title and interest, in an[sic] to the such material, including without limiting

9   the generality of the foregoing, all rights under copyright and patent (and all renewals and

10  extensions thereof) including the right to produce and authorize the production of any and all

11  derivative work, and all proprietary rights of any kind therein, now known or hereafter created

12  through out the world."

13

14  **REQUEST FOR ADMISSION NO. 80:**

15      Admit that, prior to July 1, 2003, MGA had not issued any press release that identified

16  YOU as the creator of BRATZ.

17  **RESPONSE TO REQUEST FOR ADMISSION NO. 80:**

18      Bryant incorporates by reference the above-stated general objections as if fully set forth

19  herein. Bryant specifically objects to this request on the grounds that it is vague and ambiguous,

20  particularly in its use of the phrase "identified BRYANT as the creator of BRATZ." Bryant

21  specifically objects to this request on the grounds that it calls for Bryant to speculate about

22  matters to which Bryant lacks personal knowledge.

23      Subject to and without waiving the foregoing general and specific objections, Bryant

24  responds to this request by incorporating MGA's supplemental response to Request Number 183

25  in Mattel's Third Set of Requests for Admissions, served on MGA by Mattel, as follows: MGA

26  admits the request, and Bryant is presently unaware of any facts which refute that response.

27

28                                      29

---

1  **REQUEST FOR ADMISSION NO. 81:**

2      Admit that YOU are not aware of any press report or publication that identified YOU as

3  the creator of BRATZ prior to July 15, 2003.

4  **RESPONSE TO REQUEST FOR ADMISSION NO. 81:**

5      Bryant incorporates by reference the above-stated general objections as if fully set forth

6  herein. Bryant specifically objects to this request on the grounds that it is vague and ambiguous,

7  particularly in its use of the phrases "press report," "publication," and "identified Bryant as the

8  creator of BRATZ."

9      Subject to and without waiving the foregoing general and specific objections, Bryant

10  responds to this request as follows:  Bryant admits the request.

11

12  **REQUEST FOR ADMISSION NO. 82:**

13      Admit that the first press report or publication that identified YOU as the creator of

14  BRATZ was the *Wall Street Journal* articled entitled "Dolled Up:  To Lure Older Girls, Mattel

15  Brings in Hip-Hop Crowd" and published on July 18, 2003.

16  **RESPONSE TO REQUEST FOR ADMISSION NO. 82:**

17      Bryant incorporates by reference the above-stated general objections as if fully set forth

18  herein. Bryant specifically objects to this request on the grounds that it is vague and ambiguous,

19  particularly in its use of the phrases "press report," "publication," and "identified Bryant as the

20  creator of BRATZ."

21      Subject to and without waiving the foregoing general and specific objections, Bryant

22  responds to this request by incorporating MGA's supplemental response to Request Number 185

23  in Mattel's Third Set of Requests for Admissions, served on MGA by Mattel, as follows:  Bryant

24  has made reasonable inquiry and that the information known or readily obtainable by Bryant is

25  insufficient to enable Bryant to admit or deny this Request, and, on that basis, Defendant denies

26  the same.  Bryant, however, admits that he is not aware of any press report or publication that

27  identified Bryant as the creator of the Bratz dolls prior to the July 18, 2003 publication of the

28                                                  30

EXHIBIT __82__

PAGE __1276__

1   *Wall Street Journal* articled entitled "Dolled Up:  To Lure Older Girls, Mattel Brings in Hip-Hop

2   Crowd."

3

4   **REQUEST FOR ADMISSION NO. 83:**

5      Admit that, as of the date of these Requests, MGA has not recorded the agreement

6   produced by YOU as BRYANT 00794-BRYANT 0000799, or any version thereof, with the U.S.

7   Copyright Office.

8   **RESPONSE TO REQUEST FOR ADMISSION NO. 83:**

9      Bryant incorporates by reference the above-stated general objections as if fully set forth

10   herein. Bryant specifically objects to this request on the grounds that the request seeks

11   information not relevant to any claim or defense of any party in this action.  Bryant specifically

12   objects to this request on the grounds that it calls for Bryant to speculate about matters to which

13   Bryant lacks personal knowledge.

14      Subject to and without waiving the foregoing general and specific objections, Bryant

15   responds to this request by incorporating MGA's response to Request Number 241 in Mattel's

16   Third Set of Requests for Admissions, served on MGA by Mattel, as follows:  MGA admits the

17   request, and Bryant is presently unaware of any facts which refute that response.

18

19   **REQUEST FOR ADMISSION NO. 84:**

20      Admit that, as of the date of these Requests, MGA has not recorded the agreement

21   produced by YOU as BRYANT 00794-BRYANT 0000799, or any version thereof, with any

22   state or federal agency, department or entity.

23   **RESPONSE TO REQUEST FOR ADMISSION NO. 84:**

24      Bryant incorporates by reference the above-stated general objections as if fully set forth

25   herein. Bryant specifically objects to this request on the grounds that the request seeks

26   information not relevant to any claim or defense of any party in this action.  Bryant specifically

27   objects to this request on the grounds that it calls for Bryant to speculate about matters to which

28          31

EXHIBIT 82
PAGE 1277