**RESPONSE TO REQUEST FOR ADMISSION NO. 141:**

Bryant incorporates by reference the above-stated general objections as if fully set forth herein. Bryant specifically objects to this request on the grounds it calls for a legal conclusion. Bryant also specifically objects to this request on the grounds that it calls for the disclosure of information subject to the attorney-client privilege, the work product doctrine, and other applicable privileges.

**REQUEST FOR ADMISSION NO. 143:**

Admit that the work registered as V A 1-233-273 is a derivative of the works registered as V A 1-218-487, V A 1-218-488, V A 1-218-489, V A 1-218-490, V A 1-218-491, V A 1-090-287, V A 1-090-288, V A 1-090-289, and V A 1-090-290.

**RESPONSE TO REQUEST FOR ADMISSION NO. 143:**

Bryant incorporates by reference the above-stated general objections as if fully set forth herein. Bryant specifically objects to this request on the grounds it calls for a legal conclusion. Bryant also specifically objects to this request on the grounds that it calls for the disclosure of information subject to the attorney-client privilege, the work product doctrine, and other applicable privileges.

Dated: May 29, 2007

KEKER & VAN NEST

By: _____
CHRISTA M. ANDERSON
Attorneys for Plaintiff
CARTER BRYANT

61

EXHIBIT 82

PAGE 1278

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On May 29, 2007, I served the following document(s):

**CARTER BRYANT'S SUPPLEMENTAL AND AMENDED RESPONSES TO MATTEL, INC.'S THIRD SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT**

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery; AND

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel:    213/443-3000
Fax:    213/443-3100
Email: johnquinn@quinnemanuel.com
Email: michaelzeller@quinnemanuel.com

Diana M. Torres
O'Melveny & Myers, LLP
400 S. Hope Street
Los Angeles, CA 90071
Tel:    213/430-6000
Fax:    213/430-6407
Email: dtorres@omm.com

Patricia L. Glaser
Christensen Glaser Fink Jacobs Weil & Shapiro
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Tel:    310/553-3000
Fax:    310/556-2920
Email: pglaser@chrisglase.com

Executed on May 29, 2007, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_Julie A. Selby_
JULIE A. SELBY

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT    82

PAGE    1279

**EXHIBIT   83**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 84**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   85**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  86**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  87**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   88**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT  89**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   90**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 91**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   92**

# THIS EXHIBIT IS FILED UNDER SEAL
# PURSUANT TO PROTECTIVE ORDER

**EXHIBIT  93**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   94**

| ☒ Yahoo! Finance | Search - Finance Home - Yahoo! - Help | ☐ Reuters |

☒ Click here for more information

[ Latest Headlines | Market Overview | News Alerts ]

**Thursday February 14, 3:18 pm** Eastern Time

# With Bratz, a toy maker's dreams come true

By Jan Paschal

NEW YORK, Feb 14 (Reuters) - For Isaac Larian, a toy maker who first set foot on U.S. soil in 1971 as a teenager from Tehran with $570 in his pocket, this year's Toy Fair represented his ``wildest dreams come true."

ADVERTISEMENT

☒ Click Here!

The reason? The ``People's Choice Toy of the Year Award" went to his company, privately held MGA Entertainment Inc., of North Hills, California, for the Bratz -- a quartet of 11-inch dolls with attitude.

The Bratz, marketed as ``the dolls with a passion for fashion," favor clothes that take their style cues from pop music superstars Britney Spears and J. Lo, as well as from American teen girls who make the club scenes on both coasts.

``The People's Choice" awards -- where consumers pick their favorites -- are sponsored by the Toy Industry Association, which owns and manages Toy Fair. Other ``Toy of the Year" awards, called ``T.O.T.Y.'s" in the business, are given in other categories, including best boy's, best girl's and best educational toys.

The Bratz, known as Yasmin, Cloe, Jade and Sasha, love thick-soled sneakers, boots and shoes (think Skechers and Steve Madden). Though sold separately, they run in a pack like 'tweens and teens often do. (Check them out at http://www.bratzpack.com/.)

``When they announced the girl's toy winner and we didn't get it, I threw my acceptance speech away," Larian told Reuters. ``Then, when it came time for 'People's Choice' and they called out MGA, I ran up to the podium and gave my speech from memory. Now I know what the Oscars feel like."

Larian, the chief executive of MGA Entertainment, who has a master's degree in business, founded the

EXHIBIT ___94___

PAGE ___1551___

Los Angeles area company as a maker of electronic handheld games in the late 1970s. The company made its name as the licensee for the handheld Pac-Man and Ms. Pac-Man games.

Last year, MGA entered the competitive fashion doll category by creating the Bratz, designed to appeal to fashion-conscious girls ages 7 to 12, and intended, as MGA's public relations director Dave Malacrida put it, ``to take market share away from Barbie,'' Mattel Inc.'s best-selling doll for the last 43 years.

``Bratz are the anti-Barbie,'' Malacrida said.

The Bratz favor low-rise glitter jeans, micro skirts and midriff-baring tops. Their bodies resemble those of teen girls, instead of Barbie's shape, which is rarely seen on a real woman. Their hair, eyes and skin reflect various ethnicities. Before Christmas, Sasha, Jade and Yasmin disappeared quickly from the shelves of the huge new Toys 'R Us (NYSE:TOY - news) store in New York City's Times Square, leaving blue-eyed blonde Cloe to fend for herself. The same thing happened at Wal-Mart (NYSE:WMT - news) and other toy retailers.

``If you look at Barbie, the scale is a girl about 5 feet, 11 inches tall,'' Larian said. ``Not every girl looks like that. You see all kinds of girls, all kinds of beauty, in every shape and color. We wanted to make dolls who look like real girls.''

Larian, a doting father of two boys and a girl, named one of the dolls Yasmin after his own daughter.

BEATING BARBIE

In December 2001, the Bratz did the unthinkable. In the crowded fashion doll category, they outsold Barbie, the perennial best seller for Mattel Inc. (NYSE:MAT - news), the largest publicly traded U.S.-based toymaker. The Bratz ranked No. 1, with about $8.5 million in sales, or 588,282 units sold at an average price of $14.41 each, for December alone, at retailers representing 65 percent of the U.S. market, according to NPD TRSTS, a report by The NPD Group, of Port Washington, New York.

``My reaction was, 'Oh my God, we beat Barbie,''' said Larian, whose company's sales were estimated at $100 million in 2001.

Tina Sederberg, a buyer for Target stores, recalled her first impression of the Bratz dolls at a Toy Fair 2001 preview.

``They were very different, very beautiful, fashion forward and a little bit edgy, which is what attracted girls to the line,'' she said, in an interview from Target Corp. (NYSE:TGT - news) headquarters in Minneapolis. ``We are very happy with current sales results.''

IS ``RAPUNZEL BARBIE'' READY TO RUMBLE?

Mattel, with fourth-quarter 2001 sales of $1.61 billion, dominated the fashion doll category's sales for all of 2001 ``with strong sales of Holiday Barbie and the Barbie VW Beetle,'' The NPD Group said in a report this week. ``Not far behind was MGA Entertainment's new introduction, the Bratz doll assortment, capturing third position in the overall dolls supercategory.''

At Toy Fair this year, Mattel showed ``Rapunzel Barbie'' in Caucasian and African-American versions with hair flowing past her feet, much like Rapunzel of the classic fairy-tale fame. The line's ``sold separately'' items include Ken, in a fairy-tale prince costume; an animated video, and a carriage drawn

EXHIBIT ____94____

PAGE ____1582____

Confidential - For Attorney's Eyes Only

MGA 0142776

by a horse with an exceptionally long, flowing (yes, brushable!) mane.

``Hair play is the No. 1 play category for girls,'' said Julia Jensen, Mattel's spokeswoman for Barbie.

CLUB CLOTHES AND A CAR

At Toy Fair 2002, MGA Entertainment showed a new version of the Bratz with Funk N' Glow clothes embedded with fiber-optics -- a fashion trend already seen on teen club dance floors. When you close the front of the jacket, the icon on the back lights up.

The Funk N' Glow line of dolls will be priced about $10 higher -- suggested retail is $24.99 -- than the original Bratz.

A Bratzmobile, which looks like a squared-off blue 1957 Cadillac with a built-in FM radio and a trunk that pops open, is part of this year's extended toy line. It will sell for about $34.99. A Stylin' Salon and Spa, with salon chairs upholstered in leopard print and a mauve tub on one side, and an aqua health-club juice bar on the other side, will sell for $49.99.

``We're building a brand,'' MGA spokesman Malacrida said.

Email this story - Most-emailed articles - Most-viewed articles

**Related News Categories:** US Market News

Search News    Help

Copyright © 2002 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service
Copyright © 2002 Reuters Limited. All rights reserved. Republication or redistribution of Reuters content is expressly prohibited without the prior written consent of Reuters. Reuters shall not be liable for any errors or delays in the content, or for any actions taken in reliance thereon.
Questions or Comments?

EXHIBIT ___94___

PAGE ___1553___

Confidential - For Attorney's Eyes Only

MGA 0142777

**EXHIBIT   95**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   96**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   97**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

July 19, 2007

**VIA FACSIMILE AND U.S. MAIL**

Diana M. Torres, Esq.
O'Melveny & Myers, LLP
400 South Hope Street
Los Angeles, California  90071

Re:    <u>Mattel, Inc. v. Bryant</u>

Dear Diana:

At the <u>Art Attacks v. MGA</u> trial, Isaac Larian testified that Carter Bryant's lawyer wrote a letter to MGA confirming that Bryant created Bratz drawings in 1998.  No such letter has ever been produced by MGA or Bryant in this case.  We request that you please produce the document immediately, if it exists - - it would obviously be discoverable.  In the alternative, please consider this a request to meet and confer within the next five days pursuant to Paragraph 5 of the Order for the Appointment of a Discovery Master.  If MGA refuses to produce the document, Mattel contemplates moving to enforce the Court's May 15, 2007 Order, to compel its production, and for sanctions.

I look forward to hearing from you.

Very truly yours,

B. Dylan Proctor

BDP:lak
cc:    Michael Page, Esq.

EXHIBIT ___97___

PAGE ___1560___

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2172300.1

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**     July 19, 2007                    **NUMBER OF PAGES, INCLUDING COVER: 2**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Diana Torres, Esq. **O'Melveny & Myers, LLP** | (213) 430-6000 | (213) 430-6407 |
| Michael H. Page, Esq. **Keker & Van Nest, LLP** | (415) 391-5400 | (415) 397-7188 |

**FROM:**     B. Dylan Proctor, Esq.

**RE:**     *Bryant v. Mattel*

**MESSAGE:**



07209/2172399.1

| CLIENT # | 7209 | ROUTE/ RETURN TO: | Mia Albert/3rd Floor | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED?   ☐ No  ☐ Yes: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT _____ G7

PAGE _____ 1561

07/19/2007 17:00 FAX 12134433J^^         QEUOH-LAO-2                              ☑001

```
                              *****************************
                              ***   MULTI TX/RX REPORT   ***
                              *****************************
     TX/RX NO               2883
     PGS.                      2
     TX/RX INCOMPLETE
                              -----
     TRANSACTION OK
                         (1)   9414#07209#12134306407
                         (2)   9414#007209#14153977188
     ERROR INFORMATION
                              -----
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   July 19, 2007

**NUMBER OF PAGES, INCLUDING COVER: 2**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Diana Torres, Esq. **O'Melveny & Myers, LLP** | (213) 430-6000 | (213) 430-6407 |
| Michael H. Page, Esq. **Keker & Van Nest, LLP** | (415) 391-5400 | (415) 397-7188 |

**FROM:**   B. Dylan Proctor, Esq.

**RE:**   *Bryant v. Mattel*

**MESSAGE:**

EXHIBIT ___97___

PAGE ___562___

**EXHIBIT  98**

Received:    7/25/07  5:00PM·                    -> QUINN EMANUEL;   Page 2
07/25/2007 16:42 FAX                                                    002/002

# O

## O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
CENTURY CITY
HONG KONG
LONDON
NEWPORT BEACH

400 South Hope Street
Los Angeles, California 90071-2899

TELEPHONE (213) 430-6000
FACSIMILE (213) 430-6407
www.omm.com

NEW YORK
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TOKYO
WASHINGTON, D.C.

July 25, 2007

OUR FILE NUMBER
527436-4

WRITER'S DIRECT DIAL
(213) 430-6556

WRITER'S E-MAIL ADDRESS
dtorres@omm.com

**VIA FACSIMILE**

Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street - 10th Floor
Los Angeles, California 90017

Re:  *Mattel, Inc. v. Carter Bryant*

Dear Dylan:

    We are in receipt of your letters concerning certain testimony of Mr. Larian,
Mr. Ackerman and Mr. Kennedy at the *Art Attacks v. MGA* trial. With respect to the letter you
reference, we know of no written communication from Mr. Bryant's attorney to MGA and
therefore are unable to produce any such letter. With respect to the referenced transcripts and
exhibits, the deadline for their production is, at the earliest, not until July 31, 2007, and therefore
no conference of counsel in anticipation of a motion is appropriate at this time. If you have any
questions or concerns, please do not hesitate to contact me.

                                        Very truly yours,

                                        Diana M. Torres
                                        of O'MELVENY & MYERS LLP

DMT/mds
LA2:837780.1

cc: Michael Page, Esq.

EXHIBIT ___98___

PAGE ___1503___

Received:   7/25/07   4:59PM
07/25/2007 16:42 FAX                                    -> QUINN EMANUEL;   Page 1                    ☑001/002

# O'MELVENY & MYERS LLP

400 South Hope Street
Los Angeles, California 90071-2899

TELEPHONE (213) 430-6000
FACSIMILE (213) 430-6407

## FAX TRANSMITTAL

| DATE: | | TOTAL NUMBER OF PAGES: |
|---|---|---|
| July 25, 2007 | | 2 |

| TO: | FAX NUMBER: | TELEPHONE NUMBER: |
|---|---|---|
| Dylan Proctor, Esq. Quinn Emanuel Urquhart Oliver & Hedges, LLP | (213) 443-3100 | (213) 443-3000 |
| Michael Page, Esq. Keker & Van Nest LLP | (415) 397-7188 | (415) 391-5400 |

| FROM: | RETURN FAX NUMBER: | TELEPHONE NUMBER: |
|---|---|---|
| Diana Torres | (213) 430-6407 | (213) 430-6556 |

## MESSAGE

JUL 25 '07 PM4:39

EXHIBIT ___98___

PAGE ___1504___

**IF YOU DID NOT RECEIVE ALL PAGES, PLEASE CALL OUR FAX DEPARTMENT AT (213) 430-6357.**

| FILE NO.: | 527,436-04 | RETURN ORIGINAL TO: | Mila Suegang |
|---|---|---|---|
| USER NO.: | 08350 | EXTENSION: | 6556 |
| RESPONSIBLE ATTY NAME: | Diana Torres | LOCATION: | 15th Floor |
| SPECIAL INSTRUCTIONS: | | | |

This document is intended for the exclusive use of the addressee. It may contain privileged, confidential, or non-disclosable information. If you are not the addressee, or someone responsible for delivering this document to the addressee, you may not read, copy, or distribute it. If you have received this document by mistake, please call us promptly and securely dispose of it. Thank you.

**EXHIBIT   99**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3112**

WRITER'S INTERNET ADDRESS
**dylanproctor@quinnemanuel.com**

August 1, 2007

**VIA FACSIMILE AND U.S. MAIL**

William J. Charron, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:   Mattel, Inc. v. Bryant

Dear Bill:

I write further to our conversation yesterday regarding the sealed portions of the <u>Art Attacks v. MGA Entertainment, Inc.</u> trial testimony given on May 1, 2007 and May 2, 2007 by Isaac Larian, Patrick Kennedy and William Ackerman, and sealed exhibits from that case.

You stated that MGA is amenable to producing the sealed transcripts and exhibits at issue subject to the Protective Order in this case, assuming they are responsive to Mattel's requests, which we are supposed to discuss again tomorrow. These documents clearly are responsive. You agreed that the transcripts of Isaac Larian's testimony are responsive to Request No. 38 from Mattel's First Set of Requests for Production of Documents and Tangible Things to MGA dated March 14, 2005, which seeks "All transcripts . . . of statements made by YOU under oath, including without limitation all . . . trial transcripts . . . that REFER OR RELATE TO BRATZ." Moreover, as MGA's expert, the testimony of Mr. Ackerman also falls within the scope of the foregoing request, to which MGA has been compelled to produce responsive documents. The term "YOU" in the Request includes not only MGA and its officers, such as Mr. Larian, but also "any of its current or former . . . agents, representatives, . . . and any other PERSON acting on its behalf, pursuant to its authority or subject to its control."

Moreover, the transcripts of testimony of both Messrs. Kennedy and Ackerman are also responsive to a number of other Mattel requests regarding MGA's finances, revenues, costs and profits. Many such requests are set forth in my prior letter. For each such reference, however, I

99

EXHIBIT

PAGE 1505

**quinn emanuel urquhart oliver & hedges, llp**

07209/2182162.2

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

suggest you look specifically at Mattel's First Set of Requests for Documents and Things Re Claims of Unfair Competition to MGA, dated December 18, 2006, Nos. 28, 29 & 30, and Mattel's Second Set of Requests for Documents and Things to MGA, dated June 6, 2007, Nos. 5-7, 20, 22-24, 37-39, 44 and 45. Request No. 44, for example, seeks "All DOCUMENTS that REFER OR RELATE TO the value of the Bratz brand." Request No. 37 seeks "DOCUMENTS sufficient to show the revenue and profits derived by YOU from the sale by YOU or YOUR licensees of BRATZ PRODUCTS including, without limitation, DOCUMENTS sufficient to show sales revenue, cost of goods sold, variable costs, gross margins, royalties paid and received, gross profits and net profits." Request No. 28 seeks "All DOCUMENTS RELATING TO revenues received by YOU in connection with each of the CONTESTED MGA PRODUCTS [which includes Bratz and all other MGA products at issue]." The testimony of Messrs. Kennedy and Ackerman is responsive to all of these requests, and others.

Accordingly, assuming MGA will not dispute that the transcripts are responsive, the only outstanding question is whether MGA will simply produce them or whether the parties will need to seek relief from Judge Brewster. On that point, I have enclosed herewith the <u>Art Attacks</u> sealing orders of which we are aware for your reference. As we discussed, if based on these orders MGA believes it needs to seek relief from Judge Brewster before it produces the sealed transcripts or documents in this case, we can prepare a stipulation for relief from the sealing orders for the parties to submit to Judge Brewster, which you confirmed MGA would be willing to sign.

On a separate issue, we also discussed the letter from Carter Bryant's lawyer to MGA confirming that Bryant created Bratz drawings in 1998 that Isaac Larian testified about at the <u>Art Attacks v. MGA</u> trial. You confirmed that, after double-checking, MGA does not possess any such document, and that is why it has not been produced. Thank you for providing that confirmation.

I look forward to speaking with you tomorrow.

Very truly yours,

B. Dylan Proctor

Enclosures
07209/2182162.2

EXHIBIT _____ 99

PAGE ____ 1566



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ART ATTACKS INK, LLC a
California limited liability company,

                    Plaintiff,

        v.

MGA ENTERTAINMENT, INC., a
California corporation, Isaac Larian,
an individual, and DOES 1 through
200, inclusive,

                    Defendants.

Case No. 04 CV 1035 B (BLM)

**ORDER RE: UNSEALING OF TRIAL
TRANSCRIPT AND TRIAL EXHIBITS
FOR LIMITED PURPOSE**

Trial Dates:  April 23, 2007-May 4, 2007

[Hon. Rudi M. Brewster]

LA2:830564.1                    - 1 -                    ORDER RE: UNSEALING OF TRIAL
                                                        TRANSCRIPTS AND TRIAL EXHIBITS

EXHIBIT _____ 99

PAGE _____ 1507

1    By this Order, the Court hereby permits the unsealing and disclosure of the sealed

2    transcripts of the trial testimony and sealed exhibits for the limited purpose of disclosure

3    to the parties in this action and counsel of record for such parties. There shall be no

4    disclosure of the sealed trial transcripts or sealed trial exhibits to any other person other

5    than a party to this action or such party's counsel of record.

6

7    The parties and their counsel of record are prohibited from disclosing portions of

8    the trial transcript and trial exhibits which have been sealed to any other person other than

9    a party to this action or such party's counsel of record.

10

11    The parties and their counsel of record are as follows:

12    For Plaintiff Art Attacks Ink LLC: Richard Clegg of Seltzer Caplan McMahon

13    Vitek; Douglas Grinnell of Epsten, Grinnell & Howell and Amy Allemann and Michael

14    W. Quade of Quade and Associates.

15    For Defendants MGA Entertainment Inc. and Isaac Larian: Patricia L Glaser of

16    Christiansen Miller Fink Jacobs Glasser Weil and Shapiro, Dale M Cendali of

17    O'Melveny and Myers and Edward P Swan, JR of Luce Forward Hamilton and Scripps.

18

19

20    **IT IS SO ORDERED.**

21

22    Dated: May 4, 2007          By: _____

23                                                        Honorable Rudi M. Brewster,
                                                        U.S. Senior District Court Judge

24

25

26

27

28

LA2:830564.1                                    - 2 -                           ORDER RE: SEALING OF
                                                                                        TRIAL TRANSCRIPT

EXHIBIT _____99_____

PAGE _____1508_____

1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| ART ATTACKS INK, LLC a California limited liability company,<br><br>                    Plaintiff,<br><br>          v.<br><br>MGA ENTERTAINMENT, INC., a California corporation, Isaac Larian, an individual, and DOES 1 through 200, inclusive,<br><br>                    Defendants. | Case No. 04 CV 1035 B (BLM)<br><br>**ORDER RE: SEALING OF TRIAL TRANSCRIPT AND TRIAL EXHIBITS**<br><br>Trial Dates:  April 23, 2007-May 4, 2007<br><br>[Hon. Rudi M. Brewster] |

LA2:830564.1                                  - 1 -                    ORDER RE: SEALING OF TRIAL
                                                                     TRANSCRIPT AND TRIAL EXHIBITS

EXHIBIT _____ 99

PAGE _____ 1509

1   The Court hereby seals the transcripts of the trial testimony given on May 1, 2007,
2   including the testimony of Isaac Larian, Patrick Kennedy and William Ackerman which
3   relates to the confidential financial condition of Defendants Isaac Larian and/or MGA
4   Entertainment, Inc.

5
6       The Court hereby seals the following trial exhibits which relate to the confidential
7   financial condition of Defendants Isaac Larian and/or MGA Entertainment, Inc.:  Exhibit
8   nos. 3052-3057, 3070, 2311-2313, 5087, 5253 and 5255.  The information contained in
9   these exhibits is subject to the Protective Order in this litigation and has been designated
10  as attorney's eyes only.

11
12
13  **IT IS SO ORDERED.**

14
15  Dated: May 4, 2007       By: _____
                                 Honorable Rudi M. Brewster,
16                               U.S. Senior District Court Judge

17
18
19
20
21
22
23
24
25
26
27
28                                              ORDER RE: SEALING OF
                                                TRIAL TRANSCRIPT

                            - 2 -

LA2:830564.1

EXHIBIT _____ 99

PAGE _____ 1570

1

2

3

4

5

6

7

8                 **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   ART ATTACKS INK, LLC a          Case No. 04 CV 1035 B (BLM)

12   California limited liability company,

                               **ORDER RE: SEALING OF TRIAL**

13           Plaintiff,           **TRANSCRIPT AND TRIAL**
                                 **EXHIBITS**

14          v.

15   MGA ENTERTAINMENT, INC., a
    California corporation, Isaac      Trial Dates:  April 23, 2007-May 4, 2007

16   Larian, an individual, and DOES 1
    through 200, inclusive,

17          Defendants.      [Hon. Rudi M. Brewster]

18

19

20

21

22

23

24

25

26

27

28

ORDER RE: SEALING OF TRIAL TRANSCRIPT AND
TRIAL EXHIBITS

495816.1

EXHIBIT _____ 99

PAGE _____ 1571

1    The Court hereby seals the transcripts of the trial testimony given on May 2,

2  2007, including the testimony of Patrick Kennedy and William Ackerman which

3  relates to the confidential financial condition of Defendants Isaac Larian and/or

4  MGA Entertainment, Inc.

5

6    The Court hereby seals the following trial exhibits which related to the

7  confidential financial condition of Defendants Isaac Larian and/or MGA

8  Entertainment, Inc.:  Exhibit nos. 3052-3057, 3070, 2311-2313, 5087, 5253 and

9  5255.  The information contained in these exhibits is subject to the Protective Order

10  in this litigation and has been designated as attorney's eyes only.

11

12

13  **IT IS SO ORDERED.**

14

15

16  Dated: May 7, 2007                     By: _____

17                                              Honorable Rudi M. Brewster,
                                                U.S. Senior District Court Judge

18

19

20

21

22

23

24

25

26

27

28

- 1 -

04 CV 1035 B (BLM)

495816.1

EXHIBIT ___99___

PAGE ___1572___

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

**DATE:**     August 1, 2007

**NUMBER OF PAGES, INCLUDING COVER: 9**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| William J. Charron, Esq. **O'Melveny & Myers LLP** | 310-246-8462 | 310-246-6779 |

**FROM:**     B. Dylan Proctor, Esq.

**RE:**     *Mattel, Inc. v. Bryant*

**MESSAGE:** PLEASE SEE ATTACHED

---

07209/2166768.1

| CLIENT # | 7209 | ROUTE/ RETURN TO: | Charlene Ho/4th Floor | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED?   ☐ NO  ☐ YES: _____ | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

EXHIBIT _____ 99

PAGE _____ 1573

TRANSMISSION VERIFICATION REPORT

TIME    : 08/01/2007 19:56
NAME    : JOHN B QUINN
FAX     : 2134890088
TEL     : 2134433201
SER.#   : BROE5J272067

| | |
|---|---|
| DATE,TIME | 08/01  19:54 |
| FAX NO./NAME | 13102466779 |
| DURATION | 00:01:47 |
| PAGE(S) | 09 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

EXHIBIT ___99___

PAGE ___1574___

**EXHIBIT   100**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   101**

**ATTACHMENT 5**
**CONFLICT OF INTEREST QUESTIONNAIRE**

MAT-3968-O

NAME (PLEASE TYPE OR PRINT)    *CARTER H. BRYANT*    BUSINESS TELEPHONE AND EXTENSION    *(310) 252-4942*    DATE    *11/6/95*

JOB TITLE    *ASSOSIATE DESIGNER*    DEPARTMENTAL/MAIL STOP    *BARBIE PRELIM*    COMPANY    *MATTEL TOYS*

**INSTRUCTIONS:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest (Attachment 4). Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**MATTEL SUPPLIER** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**MATTEL COMPETITOR** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**INTEREST** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. YOU MAY DISREGARD MUTUAL INVESTMENT TRUSTS AND PUBLICLY-OWNED CORPORATIONS WHOSE SECURITIES ARE TRADED PUBLICLY, IN WHICH YOU OWN NOT MORE THAN $25,000 IN MARKET VALUE, BUT NOT TO EXCEED 10% OF AN INDIVIDUAL'S NET WORTH.

**RECIPIENT OF ANY COMMISSION, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

| | | |
|---|---|---|
| 1. Have you owned, directly or indirectly, any interest in a Mattel supplier? (See definition above.) | ☐ YES | ☒ NO |
| 2. Have you owned, directly or indirectly, any interest in a Mattel competitor? (See definition above.) | ☐ YES | ☒ NO |
| 3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier? | ☐ YES | ☒ NO |
| 4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor? | ☐ YES | ☒ NO |
| 5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity? | ☐ YES | ☒ NO |

CONTINUED ON REVERSE SIDE

M 0001636

DEPOSITION EXHIBIT
24
11-8-04   SH

EXHIBIT ___101___

PAGE ___1516___

| | | |
|---|---|---|
| 6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee or representative of or acted for any Mattel supplier in any capacity? | ☐ YES | ☒ NO |
| 7. Have you engaged in any activity including the acquisition or ownership of any interest for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor? | ☐ YES | ☒ NO |
| 8. Excepting normal everyday transactions (purchase or toys, etc.,) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance? | ☐ YES | ☒ NO |
| 9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel? | ☐ YES | ☒ NO |

I certify that I have read Mattel's policies concerning Conflict of Interest (Attachment 4) and the answers to the above questions are true. I understand that failure to answer this Questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged since the date of the last Questionnaire in any capacity which creates a Conflict of Interest.

**SIGNATURE REQUIRED BELOW**

SIGNATURE: _Carter H. Bryant_   DATE: 11/6/95

**IF YOUR ANSWER TO ANY OF THE ABOVE IS "YES" PLEASE EXPLAIN IN THE SPACE BELOW**

M 0001637

EXHIBIT 101

PAGE 1577

**EXHIBIT   102**

1   KEKER & VAN NEST, LLP
    JOHN W. KEKER - #49092
2   jkeker@kvn.com
    MICHAEL H. PAGE - #154913
3   mpage@kvn.com
    CHRISTA M. ANDERSON - #184325
4   canderson@kvn.com
    710 Sansome Street
5   San Francisco, CA  94111-1704
    Telephone: (415) 391-5400
6   Facsimile:  (415) 397-7188

7   Attorneys for Plaintiff
    CARTER BRYANT

8

9

10                  UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12                        EASTERN DIVISION

13

14   CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
                                           (consolidated with CV 04-9059 & 05-
15                         Plaintiff,      2727

16        v.                              **CARTER BRYANT'S RESPONSES
                                           TO MATTEL, INC'S FIFTH SET
17   MATTEL, INC. a Delaware               OF REQUESTS FOR ADMISSION
     Corporation,                          TO CARTER BRYANT**

18                         Defendant.

19   CONSOLIDATED WITH MATTEL,
     INC., v. BRYANT and MGA
20   ENTERTAINMENT, INC. v.
     MATTEL, INC.
21

22

23

24   PROPOUNDING PARTY:        Defendant MATTEL, INC. ("Defendant")

25   RESPONDING PARTY:         Plaintiff CARTER BRYANT ("Plaintiff")

26   SET NUMBER:               FIFTH (5)

27                             EXHIBIT ____102____

28                             PAGE ____1578____

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S
FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT
CASE NO. CV 04-09049 SGL (RNBx)

1    Carter Bryant ("Defendant" or "Bryant") hereby objects and responds to

2  Mattel, Inc.'s ("Plaintiff" or "Mattel") Fifth Set of Requests for Admission.

3    Bryant's responses and objections are made solely for the purpose of this

4  action.

5    Bryant points out that discovery is still pending, that he has not concluded

6  his investigation of the facts relating to this case, has not completed his own

7  discovery in this case, and has not completed preparation for trial. In light of the

8  foregoing, the following Responses are given without prejudice to Bryant's right to

9  stand on his objections, to continue his investigation and discovery, to rely on

10  subsequently discovered facts, and to utilize subsequently discovered or

11  subsequently identified evidence or documents.

12    The following Responses reflect the current status of Bryant's knowledge

13  and belief respecting the matters about which inquiry is made. Discovery will

14  continue as long as permitted by statute or stipulation of the parties, and

15  investigation by Bryant, his attorneys and agents will continue up to and

16  throughout the trial of this action. Bryant specifically reserves the right to

17  introduce at the time of trial any evidence from any source, including documents

18  and testimony from any witnesses which may hereafter be discovered.

19    If any information has been unintentionally omitted from these Responses,

20  Bryant hereby reserves the right to amend these Responses to include the omitted

21  information. Bryant also reserves the right to change, amend or supplement any or

22  all of the matters contained in these responses as additional facts are ascertained,

23  analyses are made, and research is completed. These introductory paragraphs

24  apply to each and every Response herein and shall be incorporated as though fully

25  set forth in each and every Response.

26    All of Bryant's responses are based upon information and documentation

27  that is currently available and specifically known to Bryant. The responses are

28  made in a good-faith effort to provide information now known to Bryant which is

1

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S
FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT
CASE NO. CV 04-09049 SGL (RNBx)

398501.01

EXHIBIT __102__

PAGE __1579__

1  responsive, but Bryant specifically reserves the right both to supplement any of the

2  responses set forth below and to utilize at trial any further information or

3  documents.

## GENERAL OBJECTIONS

5       The following general objections apply to the entirety of Mattel's Fourth Set

6  of Requests for Admission (the "Requests").  The assertion of the same, similar, or

7  additional objections to the individual requests does not waive any of Bryant's

8  general objections as set forth below.

9       1.     To the extent these Requests request Bryant to provide information

10  concerning the legal basis of his defense of this matter, Bryant objects on the

11  grounds that the Requests impermissibly call for mental impressions, conclusions,

12  opinions and/or legal theories of Bryant's attorneys.

13      2.     Bryant also objects to the extent these Requests call for the disclosure

14  of information protected by the attorney-client privilege, the work-product

15  doctrine, the joint defense or common interest privilege or any other applicable

16  privilege.

17      3.     Bryant objects to the Requests to the extent that they call for legal

18  conclusions.

19      4.     Bryant objects to the extent that these Requests seek information

20  comprising the trade secrets of MGA and/or third parties, and/or otherwise

21  comprising confidential information, protected from disclosure by California

22  and/or federal law.

23      5.     Bryant objects to the Requests on the grounds that they attempt to

24  unfairly restrict the facts on which Bryant may rely at trial.  Discovery has not

25  been completed and Bryant is not yet necessarily in possession of all the facts and

26  documents upon which Bryant intends to rely.  All of the responses submitted

27  herewith are tendered to Mattel with the reservation that discovery is ongoing and

28  thus the responses are submitted without limiting the evidence on which Bryant

2

398501.01

EXHIBIT _102_

PAGE _1580_

1   may rely to support the contentions that Bryant may assert at the trial of this action.

2   Further, Bryant reserves the right to supplement or amend these responses in the

3   future if it deems that to be appropriate.

4       6.    Bryant objects to the Requests to the extent that they are compound.

5       7.    Bryant objects to the Requests on the grounds that they are vague and

6   overbroad, unduly burdensome and oppressive, seek information that is not

7   reasonably within Bryant's knowledge, and/or seek information that is neither

8   relevant to this litigation nor reasonably calculated to lead to the discovery of

9   admissible evidence. In particular, Bryant also objects to these Requests on the

10   grounds that they are oppressively repetitive.  Bryant also objects to these Requests

11   as burdensome in their sheer number (Mattel has now propounded nearly 500

12   Requests to Bryant alone, many of which consists of multiple interlocking

13   Requests apparently designed to take the place of a single interrogatory).

14       8.    Bryant objects to the Requests to the extent they are vague and

15   ambiguous or call for a legal conclusion as to the scope of Bryant's employment at

16   Mattel.  To the extent that Bryant responds to any request regarding what Bryant

17   did or did not do "while employed" at Mattel, Bryant does so without waiving or

18   intending to waive but rather, on the contrary, preserving and intending to

19   preserve, his contention that anything Bryant did on weekends, evenings ,vacation

20   and any other time outside ordinary business hours was not done while he was

21   working for Mattel.  Bryant's response to any such request may not be taken as an

22   admission that the information provided in his response in any way reflects or

23   evidences work performed by Bryant while he was working for Mattel or that

24   Bryant adopts or agrees with any fact or legal conclusion assumed, presumed or

25   contained in Mattel's request.

26       9.    Bryant objects to the defined terms YOU, BRYANT, MGA,

27   AFFILIATES, BRATZ, BRATZ WORK and BRATZ WORKS, THE BRATZ

28   PITCH MATERIALS, BRYANT/MGA AGREEMENT, CONTEND, CREATE

3

398501.01

EXHIBIT _10L_

PAGE _1581_

1  the BRYANT/MGA AGREEMENT that entering into the BRYANT/MGA

2  AGREEMENT could or might subject YOU to legal liability.

3  **RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

4      Bryant incorporates by reference the above-stated general objections as if

5  fully set forth herein. Bryant also specifically objects to this request on the

6  grounds that it is compound. Bryant also specifically objects to this request on the

7  ground that it calls for information that is beyond the scope of this litigation.

8  Bryant also specifically objects to this request on the grounds that it calls for

9  disclosure of information protected by the attorney-client privilege, the work

10  product doctrine, the joint defense privilege, and any other applicable privileges.

11  Bryant also specifically objects to this request on the grounds that it is oppressively

12  repetitive and unnecessary in combination with Mattel's other requests.

13      Subject to and without waiving the foregoing general and specific

14  objections, Bryant responds to this request as follows: Bryant denies that anyone

15  told him the BRYANT/MGA AGREEMENT could or might subject him to legal

16  liability to Mattel.

17  **REQUEST FOR ADMISSION NO. 27:**

18      Admit that YOU CREATED OR IMPROVED at least one of THE BRATZ

19  PITCH MATERIALS while employed by MATTEL.

20  **RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

21      Bryant incorporates by reference the above-stated general objections as if

22  fully set forth herein. Bryant also specifically objects to this request on the

23  grounds that it is compound. Bryant also specifically objects to this request on the

24  grounds that it calls for legal conclusions as to what constitutes "CREATED OR

25  IMPROVED" and "employed." Bryant also specifically objects to this request

26  because "while employed at Mattel" is vague and ambiguous; without waiving or

27  intending to waive, but rather preserving and intending to preserve, his contention

28  that anything Bryant did on weekends, evenings ,vacation and any other time

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S
FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT /02

PAGE 1582

1    outside ordinary business hours was not done while he was working for Mattel,

2    Bryant responds to this request based on his interpretation that "while employed"

3    refers only to the dates of Bryant's employment, and not to whether Bryant's

4    specific acts at specific times were part of his employment at Mattel.  Bryant's

5    response, based on that interpretation, is not an admission that the information

6    provided in his response in any way reflects or evidences work performed by

7    Bryant while he was working for Mattel or that Bryant adopts or agrees with any

8    fact or legal conclusion assumed, presumed or contained in Mattel's request.  To

9    the extent this request asks Bryant to provide information concerning the legal

10   basis of his defense of this matter, Bryant also specifically objects on the grounds

11   that the request impermissibly calls for mental impressions, conclusions, opinions

12   and/or legal theories of Bryant's attorneys.  Bryant also specifically objects to this

13   request on the grounds that it calls for disclosure of information protected by the

14   attorney-client privilege, the work product doctrine, the joint defense privilege, and

15   any other applicable privileges.  Bryant also specifically objects to this request on

16   the grounds that it is oppressively repetitive and unnecessary in combination with

17   Mattel's other requests.

18        Subject to and without waiving the foregoing general and specific

19   objections, Bryant responds to this request as follows: Bryant admits that he traced

20   his 1998 drawings and colored such tracings in the spring or summer of 1999, a

21   period in which he was employed by Mattel, and that he traced his 1998 drawings,

22   colored such tracings, and drew a few outfits of formal wear between January 1,

23   2000 and October 20, 2000, a period in which he was employed by Mattel.  Bryant

24   accordingly admits this request to the extent that this tracing, coloring such

25   tracings, and drawing formal wear outfits constitutes CREAT[ING] OR

26   IMPROV[ING] BRATZ PITCH MATERIALS while employed at Mattel, as

27   Bryant interprets those terms.

28

398501.01

EXHIBIT _____102_____

PAGE _____1583_____

1    **REQUEST FOR ADMISSION NO. 28:**

2        Admit that YOU CREATED OR IMPROVED more than one of THE

3    BRATZ PITCH MATERIALS while employed by MATTEL.

4    **RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

5        Bryant incorporates by reference the above-stated general objections as if

6    fully set forth herein.  Bryant also specifically objects to this request on the

7    grounds that it is compound.  Bryant also specifically objects to this request on the

8    grounds that it calls for legal conclusions as to what constitutes "CREATED OR

9    IMPROVED" and "employed."  Bryant also specifically objects to this request

10    because "while employed at Mattel" is vague and ambiguous; without waiving or

11    intending to waive, but rather preserving and intending to preserve, his contention

12    that anything Bryant did on weekends, evenings ,vacation and any other time

13    outside ordinary business hours was not done while he was working for Mattel,

14    Bryant responds to this request based on his interpretation that "while employed"

15    refers only to the dates of Bryant's employment, and not to whether Bryant's

16    specific acts at specific times were part of his employment at Mattel.  Bryant's

17    response, based on that interpretation, is not an admission that the information

18    provided in his response in any way reflects or evidences work performed by

19    Bryant while he was working for Mattel or that Bryant adopts or agrees with any

20    fact or legal conclusion assumed, presumed or contained in Mattel's request.  To

21    the extent this request asks Bryant to provide information concerning the legal

22    basis of his defense of this matter, Bryant also specifically objects on the grounds

23    that the request impermissibly calls for mental impressions, conclusions, opinions

24    and/or legal theories of Bryant's attorneys.  Bryant also specifically objects to this

25    request on the grounds that it calls for disclosure of information protected by the

26    attorney-client privilege, the work product doctrine, the joint defense privilege, and

27    any other applicable privileges.  Bryant also specifically objects to this request on

28    the grounds that it is oppressively repetitive and unnecessary in combination with

26

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S
FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT
CASE NO. CV 04-09049 SGL (RNBx)

398501.01

EXHIBIT ___102___

PAGE ___1584___

1   Mattel's other requests.

2       Subject to and without waiving the foregoing general and specific

3   objections, Bryant responds to this request as follows: Bryant admits that he traced

4   his 1998 drawings and colored such tracings in the spring or summer of 1999, a

5   period in which he was employed by Mattel, and that he traced his 1998 drawings,

6   colored such tracings, and drew a few outfits of formal wear between January 1,

7   2000 and October 20, 2000, a period in which he was employed by Mattel.  Bryant

8   accordingly admits this request to the extent that this tracing, coloring such

9   tracings, and drawing formal wear outfits constitutes CREAT[ING] OR

10  IMPROV[ING] BRATZ PITCH MATERIALS while employed at Mattel, as

11  Bryant interprets those terms.

12  **REQUEST FOR ADMISSION NO. 29:**

13      Admit that YOU CREATED OR IMPROVED all of THE BRATZ PITCH

14  MATERIALS while employed by MATTEL.

15  **RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

16      Bryant incorporates by reference the above-stated general objections as if

17  fully set forth herein.  Bryant also specifically objects to this request on the

18  grounds that it is compound.  Bryant also specifically objects to this request on the

19  grounds that it calls for legal conclusions as to what constitutes "CREATED OR

20  IMPROVED" and "employed."  Bryant also specifically objects to this request

21  because "while employed at Mattel" is vague and ambiguous; without waiving or

22  intending to waive, but rather preserving and intending to preserve, his contention

23  that anything Bryant did on weekends, evenings ,vacation and any other time

24  outside ordinary business hours was not done while he was working for Mattel,

25  Bryant responds to this request based on his interpretation that "while employed"

26  refers only to the dates of Bryant's employment, and not to whether Bryant's

27  specific acts at specific times were part of his employment at Mattel.  Bryant's

28  response, based on that interpretation, is not an admission that the information

27

398501.01

EXHIBIT _102_

PAGE _1585_

1  provided in his response in any way reflects or evidences work performed by

2  Bryant while he was working for Mattel or that Bryant adopts or agrees with any

3  fact or legal conclusion assumed, presumed or contained in Mattel's request. To

4  the extent this request asks Bryant to provide information concerning the legal

5  basis of his defense of this matter, Bryant also specifically objects on the grounds

6  that the request impermissibly calls for mental impressions, conclusions, opinions

7  and/or legal theories of Bryant's attorneys. Bryant also specifically objects to this

8  request on the grounds that it calls for disclosure of information protected by the

9  attorney-client privilege, the work product doctrine, the joint defense privilege, and

10  any other applicable privileges. Bryant also specifically objects to this request on

11  the grounds that it is oppressively repetitive and unnecessary in combination with

12  Mattel's other requests.

13  Subject to and without waiving the foregoing general and specific

14  objections, Bryant responds to this request as follows: Bryant admits that he traced

15  his 1998 drawings and colored such tracings in the spring or summer of 1999, a

16  period in which he was employed by Mattel, and that he traced his 1998 drawings,

17  colored such tracings, and drew a few outfits of formal wear between January 1,

18  2000 and October 20, 2000, a period in which he was employed by Mattel. Bryant

19  accordingly admits this request to the extent that this tracing, coloring such

20  tracings, and drawing formal wear outfits constitutes CREAT[ING] OR

21  IMPROV[ING] BRATZ PITCH MATERIALS while employed at Mattel, as

22  Bryant interprets those terms.

23  **REQUEST FOR ADMISSION NO. 30:**

24  Admit that YOU deny YOU willfully infringed any copyrights in BRATZ

25  WORKS.

26  **RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

27  Bryant incorporates by reference the above-stated general objections as if

28  fully set forth herein. Bryant also specifically objects to this request on the

28

398501.01

EXHIBIT _102_

PAGE _1586_

1    Dated: July 9, 2007                    KEKER & VAN NEST, LLP

2

3

4                                           By: Michael H Page /AWM

5                                           MICHAEL H. PAGE
                                            Attorneys for Plaintiff
5                                           CARTER BRYANT

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

46

398501.01

EXHIBIT 102

PAGE 1587

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On July 9, 2007, I served the following document(s):

## CARTER BRYANT'S RESPONSES TO MATTEL, INC'S FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery; AND

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel:    213/443-3000
Fax:    213/443-3100
Email: johnquinn@quinnemanuel.com
Email: michaelzeller@quinnemanuel.com

Diana M. Torres
O'Melveny & Myers, LLP
400 S. Hope Street
Los Angeles, CA 90071
Tel:    213/430-6000
Fax:    213/430-6407
Email: dtorres@omm.com

Patricia L. Glaser
Christensen Glaser Fink Jacobs Weil & Shapiro
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Tel:    310/553-3000
Fax:    310/556-2920
Email: pglaser@chrisglase.com

Executed on July 9, 2007, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_Julie Selby_
JULIE A. SELBY

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT ___102___

PAGE ___1588___

**EXHIBIT   103**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   104**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   105**

FILED

2006 JUL 18 AM 10: 16

ENTERED

JUL 1 8 2006

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION
DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CARTER BRYANT,

       Plaintiff,

v.

MATTEL, INC.,

       Defendant,

and related actions.

CASE NO. CV 04-09049 SGL (RNBx)

(Consolidated with cases CV 04-09059 and CV 05-02727)

ORDER GRANTING MOTIONS TO DISMISS

## I. Introduction

This consolidated action involves the individual cases of Bryant v. Mattel, Inc., CV 04-09049; Mattel, Inc. v. Bryant, CV 04-09059; and MGA Entertainment, Inc. v. Mattel, Inc., CV 05-02727. This Order rules on Motions to Dismiss previously docketed in cases 04-09049 and 04-9059.

The factual background underlying this consolidated action is complex. The Court sets forth the factual background only to the extent that it is necessary to discuss its ruling on two pending motions to dismiss. A hearing regarding these motions was held on June 26, 2006. For the reasons and in the manner set forth below, the Court grants both motions.

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(D).

DOCKETED ON CM

JUL 1 8 2006

EXHIBIT _____ 105
PAGE _____ 1603

7-18

045

(03)

Received:   7/18/06   4:41PM          RightFAX -> JetFax   320;   Page 3
RightFAX                7/_8/2006 4:37   PAGE 003/019   Fax Server

## II. Motion to Dismiss (04-09049)

A.   **Factual Background**

Carter Bryant is a designer to whom creation of MGA's "Bratz" line of dolls has been attributed. Compl. ¶ 6. Mattel has sued him under a variety of state-law theories relating to certain agreements Bryant signed while an employee with Mattel. See generally Compl. filed in 04-09059. Although Mattel has not sued him for copyright infringement of any Mattel product, Bryant nevertheless claims that he is reasonably apprehensive regarding being sued for copyright infringement. Specifically, Bryant makes the following allegations in his complaint seeking declaratory relief:

First, Bryant claims that an article published in the Wall Street Journal in July, 2003, attributed to Mattel sources a belief that "the Bratz borrow liberally from a Mattel project that was scrapped at the testing stage in 1998." Compl. Ex. A; Compl. ¶ 54. The scrapped Mattel project is alleged to be the project referred to by Mattel as "Toon Teens." Compl. ¶ 56.

Second, Bryant alleges that he suggested, as a way to resolve a discovery dispute, that Mattel stipulate that it would not sue based on "Toon Teens." Compl. ¶ 55. Mattel refused to do so. Id. However, since that initial refusal, Mattel has represented to the Court that it "will not maintain that Bratz infringes the copyright in Toon Teens." June 26, 2006, Tr. at 64 (statement of Mattel counsel John B. Quinn). Mattel has reiterated this position in a post-hearing brief, filed on July 5, 2006.

Third, Mattel cooperated with a Hong Kong toy company that MGA sued for copyright infringement. Compl. ¶ 56. MGA's claims involved the Bratz dolls. Id. Mattel's cooperation consisted of providing the Hong Kong toy company with documents and photographs of the Toon Teens products, ostensibly to help prove that Bratz was not an original design and that Bryant had copied and infringed Toon Teens. Compl. ¶ 57.

Finally, Bryant notes that Mattel did not seek copyright registration until November, 2003, which is the same time Mattel claims it first learned of Bryant's

EXHIBIT    105
PAGE    1604

1  contract with MGA. Compl. ¶¶ 59-60. Bryant alleges that registration of a copyright is

2  a necessary step to be taken prior to filing a copyright infringement action. Compl.

3  ¶ 60.

4  **B.    Standing to Seek Declaratory Relief**

5       The purpose of the Declaratory Judgment Act is "to relieve potential defendants

6  from the Damoclean threat of impending litigation which a harassing adversary might

7  brandish, while initiating suit at his leisure — or never." Societe de Conditionnement

8  v. Hunter Engineering Co., 655 F.2d 938, 943 (9th Cir.1981). However, a party

9  seeking declaratory relief must still satisfy the "case or controversy" requirement found

10  in 28 U.S.C. § 2201(a). Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896

11  F.2d 1542,1555 (9th Cir. 1990). This requirement must be satisfied at the time the

12  suit is filed and must continue throughout the term of the suit. Id. at 1556 (citing

13  International Harvester Co. v. Deere & Co., 623 F.2d 1207, 1210 (7th Cir.1980)).

14       To meet this requirement, a party seeking declaratory relief must show that,

15  based on his reasonable perceptions, under all the circumstances of the case, there is

16  a substantial controversy between parties having adverse legal interests that causes

17  in the plaintiff a real and reasonable apprehension that he will be subject to liability,

18  and the controversy is of sufficient immediacy and reality to warrant declaratory relief.

19  Hal Roach, 896 F.2d at 1555. The apprehension must have been caused by the

20  defendant's actions. Id. (citing International Harvester, 623 F.2d at 1211).

21       Viewing Bryant's allegations in light of this standard, and in light of recent

22  developments, the Court must conclude that Bryant, although having a reasonable

23  apprehension of suit prior to counsel's representations regarding the intent to sue

24  based on Toon Teens, no longer has a reasonable apprehension that he will be

25  subject to liability. Bryant's Complaint, of course, makes reference to "other Mattel

26  products;" however, the substance of his allegations all address the product "Toon

27  Teens." The Wall Street Journal article is alleged to have involved Toon Teens.

28  Mattel's cooperation with the Hong Kong toy company allegedly involved Toon Teens.

EXHIBIT   105

PAGE   1605

3

Received:   7/18/08   4:42PM          RightFAX -> JotFax    20;   Page 5
RightFAX              7/_3/2006 4:37    PAGE 005/019   Fax Server

1    The copyright registration referenced in the Complaint relates to Toon Teens.  No

2    other allegations are made that might tend to raise a real and reasonable

3    apprehension that Bryant could be subject to liability for copyright infringement based

4    on any other Mattel product.  Accordingly, Bryant has not met the standard for

5    asserting a claim for declaratory relief.

6    **C.**    **Ruling on Motion to Dismiss**

7       Accordingly, the Court **GRANTS** the Motion to Dismiss and dismisses without

8    prejudice Bryant's claim for declaratory relief.  Should Bryant, through discovery or

9    otherwise, acquire a real and reasonable apprehension of being subject to liability on

10    the basis of another identifiable Mattel product, Bryant may file a declaratory relief

11    claim.  A claim by Mattel of copyright infringement based on the Toon Teens product

12    is barred by counsel's representation; therefore, Bryant may not seek declaratory relief

13    regarding this issue.

14         **III. Motion to Dismiss (04-9059)**

15    **A.**    **Factual Background**

16       The parties make the following factual allegations and assert the following

17    claims and counterclaims.

18       Bryant was employed by Mattel from September, 1995, to April, 1998, and

19    again beginning in January, 1999, and ending in October, 2000.  Compl. ¶ 9.  In

20    January, 1999, Bryant signed documents entitled "Employee Confidential Information

21    and Inventions Agreement" ("Employee Agreement") and "Conflict of Interest

22    Questionnaire" ("COI Questionnaire").  The Employee Agreement provides:

23      This Agreement is designed to make clear that: (i) I will maintain the

24      confidentiality of the Company's trade secrets; (ii) I will use those trade

25      secrets for the exclusive benefit of the Company; (iii) inventions that I

26      create will be owned by the Company; (iv) my prior and continuing

27      activities separate from the Company will not conflict with the Company's

28      development of its proprietary rights; and (v) when and if my employment

EXHIBIT ___ 105
PAGE ___ 1006

with the Company terminates I will not use my prior position with the Company to the detriment of the Company.

1.    Provisions Related to Trade Secrets

. . . .

(b) As used in the Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does Business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing, I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

. . . .

2.    Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all inventions [as defined below] conceived or reduced to practice to me (alone or jointly by others) at any time during my employment by the Company, I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. . . .

EXHIBIT __105__

PAGE __1607__

5

Received:   7/18/06   4:42PM          RightFAX -> JetFax     20;   Page 7
RightFAX              7/13/2006 4:37    PAGE 007/019   Fax Server

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this Agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

. . . .

3.     Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

4.     Miscellaneous

. . . .   EXHIBIT _/05_

6   PAGE _1608_

Received:   7/18/08   4:43PM          RightFAX -> JetFax   20;   Page 8
RightFAX              7/18/2006  4:37   PAGE 008/019   Fax Server

1           (f) This agreement will be governed by and interpreted in

2    accordance with the laws of the State of California.

3                        . . . .

4           CAUTION: THIS AGREEMENT CREATES IMPORTANT

5    OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS

6    TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER

7    EMPLOYMENT.

8    Employment Agreement, attached to the Compl. as Ex. A.[1]

9    **B.    The Parties' Claims**

10          Mattel brings a number of claims based on these documents, including breach

11   of contract, breach of fiduciary duty, breach of the duty of loyalty, unjust enrichment,

12   and conversion.

13          Bryant brings a number of counterclaims based on these documents.

14   Specifically, Bryant makes the following challenges to the Employment Agreement:

15          In his first counterclaim, Bryant claims that the Employment Agreement violates

16   Cal. Bus. & Prof. Code §§ 17200 (unfair competition law) because (a) it is an unfair

17   restraint of trade (restricting job mobility and use of publicly available information) in

18   violation of Cal. Bus. & Prof. Code § 16600; (b) it violates Cal. Labor Code §§ 96(k),

19   98.6, and 2699; (c) it violates Cal. Labor Code § 2870; and (d) it is procedurally and

20   substantively unconscionable. See Bryant's Counterclaims ¶¶ 33-47.

21          In his second counterclaim, Bryant claims that the Employment Agreement

22   should be rescinded because it was procured due to mistake, duress, menace and/or

23

24   ─────────────────

25          [1] Bryant objects to the Court's consideration of the Agreement and the COI
     Questionnaire. Bryant purports to dispute the authenticity of these documents.
26   However, examining the substance of Bryant's objections, it becomes clear that Bryant
     objects not to the content of these documents, but to the validity and legal effect of
27   these documents. Accordingly, the Court's consideration of these documents in
     connection with the present Motion to Dismiss is proper. See Parrino v. FHP, Inc., 146
28   F.3d 699, 706 (9th Cir. 1998) (the Court may consider documents whose authenticity is
     not questioned and upon which the complaint necessarily relies).

EXHIBIT   105
PAGE   1609

Received: 7/18/06 4:43PM   RightFAX -> JetFax   20; Page 9
RightFAX          7/18/2006 4:37   PAGE 009/019   Fax Server

1    fraud. See Bryant's Counterclaims ¶¶ 48-54.

2          In his third counterclaim, Bryant alleges that the Employment Agreement was

3    procured by fraud in that Mattel "fail[ed] to disclose to Bryant the true meaning of the

4    terms and the purported legal effect of the [Employment] Agreement." See Bryant's

5    Counterclaims ¶¶ 55-60.

6          Finally, in his fourth counterclaim, Bryant seeks declaratory judgment that

7    Mattel's conduct in requiring Bryant and other employees to execute the Employment

8    Agreement constitutes unfair competition and unfair business practices in violation of

9    Cal. Bus. & Prof. Code §§ 17200 and 16600. Bryant also seeks a declaration that the

10   Employment Agreement is unlawful and unenforceable as to him and as to other

11   current and former employees of Mattel. See Bryant's Counterclaims ¶¶ 61-65.

12   C.    **Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

13         The present Motion to Dismiss requires the Court to determine whether the

14   counterclaims state any claim upon which relief may be granted. See Fed R. Civ. P.

15   12(b)(6). The Court will not dismiss the claims for relief unless Bryant cannot prove

16   any set of facts in support of the claims that would entitle him to relief. See Steckman

17   v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir. 1998). In limiting its inquiry to the

18   content of the counterclaims, the Court must take the allegations of material fact as

19   true and construe them in the light most favorable to Bryant. See Western Reserve

20   Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985). Additionally, the Court "is

21   not required to accept legal conclusions cast in the form of factual allegations if those

22   conclusions cannot be reasonably drawn from the facts alleged." Clegg v. Cult

23   Awareness Network, 18 F.3d 752, 755 (9th Cir. 1994).

24   D.    **§ 17200 Claim**

25         1.    **Generally**

26         "California's unfair competition law (UCL) (17200 et seq.) defines 'unfair

27   competition' to mean and include any unlawful, unfair or fraudulent business act or

28   practice. . . ." Kasky v. Nike, Inc., 27 Cal.4th 939, 949, 119 Cal.Rptr.2d 296 (2002)

EXHIBIT _105_

PAGE_____ 1010

Received:   7/18/06   4:44PM          RightFAX -> JetFax   20;  Page 10
RightFAX            7/18/2006 4:37    PAGE 010/019   Fax Server

1   (internal quotation marks and citation omitted).  Because "section 17200 is written in

2   the disjunctive, it establishes three varieties of unfair competition—acts or practices

3   which are unlawful, unfair, or fraudulent."  Cel-Tech Communications v. Los Angeles

4   Cellular Telephone Co., 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548 (1999) (emphasis

5   added).  "Unlawful" practices are those practices that are prohibited by law, whether

6   "civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made."

7   Saunders v. Superior Court, 27 Cal.App.4th 832, 839 (citing People v. McKale, 25

8   Cal.3d 626, 632 (1979)).  The prohibition against "unfair" conduct is not as broad as it

9   would seem.  In Cel-Tech, the California Supreme Court announced that the test of

10  "unfairness" for commercial cases:  "Unfair" means "conduct that threatens an

11  incipient violation of an antitrust law, or violates the policy or spirit of one of those laws

12  because its effects are comparable to or the same as a violation of the law, or

13  otherwise significantly threatens or harms competition."  Cel-Tech, 20 Cal.4th at 187.

14        **2.    Standing**

15        Bryant claims to be bringing the § 17200 "on his own behalf, on behalf of all

16  current and former employees of Mattel employees . . . and on behalf of the general

17  public."  See Counterclaims ¶ 10.  The parties disagree as to whether he may bring

18  such a claim on behalf of anyone other than himself and argue this point on state-law

19  grounds.  However, it is clear under established Ninth Circuit authority that Bryant's

20  purported claims on behalf of others suffer from a federal constitutional deficiency:

21  Bryant must satisfy the case-or-controversy requirement of Article III for any claim that

22  he brings under § 17200.  Bryant has not alleged facts that establish that he has

23  standing to bring his claims on behalf of anyone other than himself.[2]  See Lee v.

24  American Nat. Ins. Co., 260 F.3d 997, 1001 (9th Cir. 2001) (rejecting, on

25  constitutional grounds, a plaintiff's attempt to assert a § 17200 claim on behalf of

26  others noting that "Article III of the Constitution . . . limits the jurisdiction of the federal

27

28        _____

     [2] As stated below, Bryant has failed to state a claim on his own behalf as well.

EXHIBIT __AS__
PAGE __1611__

9

Received:  7/18/06  4:44PM          RightFAX -> JetFax    10;  Page 11
RightFAX            7/18/2006  4:37    PAGE 011/019    Fax Server

1   courts to 'cases and controversies,' a restriction that has been held to require a

2   plaintiff to show, *inter alia*, that he has actually been injured by the defendant's

3   challenged conduct.") (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,

4   528 U.S. 167, 180, 120 S.Ct. 693 (2000)).

5          Absent class-action type allegations (and a successful motion to certify a class

6   pursuant to Fed. R. Civ. P. 23), it appears to the Court that Bryant cannot assert

7   claims challenging the Employee Agreement or the COI Questionnaire on behalf of

8   anyone other than himself.  Therefore, the Court considers only whether Bryant has

9   stated a claim pursuant to § 17200 on his own behalf.

10         **3.    Cal. Bus. & Prof. Code § 16600**

11         Bryant argues that the Agreement is "unlawful" because it violates Cal. Bus. &

12  Prof. Code § 16600, which provides: "Except as provided in this chapter, every

13  contract by which anyone is restrained from engaging in a lawful profession, trade, or

14  business of any kind is to that extent void." Id.  Specifically, Bryant argues (without

15  further elaboration) that "the [Employment] Agreement unlawfully impair[s] Bryant's

16  right to prepare to compete with Mattel."  Opp. at 7.

17         California law permits an employee to seek other employment and even to

18  make some "preparations to compete" before resigning.  See Bancroft-Whitney Co. v.

19  Glen, 64 Cal.2d 327, 346 (1966) ("The mere fact that the officer makes preparations

20  to compete before he resigns his office is not sufficient to constitute a breach of duty.

21  It is the nature of his preparations which is significant.")  However, "an employee may

22  not transfer his loyalty to a competitor."  Stokes v. Dole Nut Co., 41 Cal.App.4th 285,

23  295 (1995).  "During the term of employment, an employer is entitled to its employees'

24  undivided loyalty."  Id. (internal citations and quotation marks omitted).

25         Mattel alleges in the Complaint that Bryant entered into an agreement with

26  MGA to provide MGA design services on a "top priority" basis while he was still

27  employed with by Mattel. Compl. ¶ 13.  Bryant also makes similar allegations in the

28  related case, Bryant v. Mattel, Inc., 04-09049: "MGA ultimately offered Bryant a

EXHIBIT   105
PAGE   1612

Received:   7/18/08   4:45PM            RightFAX -> JetFax   20;   Page 12
RightFAX                7/18/2006 4:37     PAGE 012/019   Fax Server

1   consulting arrangement.  His agreement with MGA was signed on or about October 4,

2   2000.  Bryant resigned from Mattel immediately, giving two weeks notice, but stayed at

3   the company until October 20 to finish up and transition the projects on which he had

4   been working."  Compl. ¶ 38.

5          The parties' arguments assume that the Employment Agreement would prohibit

6   such conduct;[3] therefore, the Court considers whether an agreement prohibiting an

7   employee from entering into a contract with a competitor *during the course of his*

8   *employment* constitutes an unfair restraint of trade in violation of § 16600.  The Court

9   concludes that it does not.  Such an agreement is more akin to ensuring the employer

10  has the "employee's undivided loyalty" than it is to an agreement that restricts an

11  employee from "prepar[ing] to compete."  For this reason, Plaintiff cannot state a

12  § 17200 claim on this basis.

13         **4.    Cal. Labor Code §§ 96(k), 98.6 and 2699**

14         Bryant also argues that the Agreement is "unlawful" because it violates a

15  number of provisions of the California Labor Code.  Specifically, Bryant alleges that

16  the Agreement is "unlawful" because it violates § 96(k), which provides:

17         The Labor Commissioner and his or her deputies and

18         representatives authorized by him or her in writing shall, upon the filing

19         of a claim therefor by an employee, or an employee representative

20         authorized in writing by an employee, with the Labor Commissioner, take

21         assignments of: . . . (k) Claims for loss of wages as the result of

22         demotion, suspension, or discharge from employment for lawful conduct

23         occurring during nonworking hours away from the employer's premises.

24  Cal. Labor Code § 96(k).

25         Section 98.6 prohibits discrimination or retaliation against an employee who

26  engages in conduct described in §96(k).  Section 2699 authorizes a private right of

27

28
    ───────────────────────
    [3]  The Court does not mean to imply that Bryant has conceded this point.

EXHIBIT _10_

PAGE _1013_

Received:   7/18/06   4:46PM          RightFAX -> JetFax   20;   Page 13
RightFAX                7/13/2006 4:37    PAGE 013/019   Fax Server

1   action for certain violations of the Labor Code.

2       Assuming that § 96(k) would otherwise support a § 17200 claim, Bryant has still

3   failed to allege any "loss of wages" or "demotion, suspension or discharge" based on

4   lawful off-duty conduct.  Therefore, Bryant has not alleged facts sufficient to support a

5   violation of § 96(k) that would, in turn, support his § 17200 claim.

6       Despite Mattel's arguments against § 98.6 and § 2699 as a proper basis for

7   Bryant's § 17200 claim, Bryant did not defend such claims in his opposition; therefore,

8   the Court treats these claims as abandoned.

9       5.     Cal. Labor Code § 2870

10      Bryant also argues that the Agreement is "unlawful" because it violates Cal.

11  Labor Code § 2870.  That provision states:

12          (a) Any provision in an employment agreement which provides

13      that an employee shall assign, or offer to assign, any of his or her rights

14      in an invention to his or her employer shall not apply to an invention that

15      the employee developed entirely on his or her own time without using the

16      employer's equipment, supplies, facilities, or trade secret information

17      except for those inventions that either:

18          (1) Relate at the time of conception or reduction to practice of the

19      invention to the employer's business, or actual or demonstrably

20      anticipated research or development of the employer; or

21          (2) Result from any work performed by the employee for the

22      employer.

23          (b) To the extent a provision in an employment agreement

24      purports to require an employee to assign an invention otherwise

25      excluded from being required to be assigned under subdivision (a), the

26      provision is against the public policy of this state and is unenforceable.

27  Cal. Labor Code § 2870.

28      The Employment Agreement assigns the rights to certain inventions by the

EXHIBIT _105_

PAGE _1014_

Received:    7/18/06   4:45PM              RightFAX -> JetFax      20;  Page 14
RightFAX              7/13/2006 4:37    PAGE 014/019   Fax Server

1   employee to the Company. The Agreement limits the scope of this assignment to the
2   extent required by § 2870 by specifically incorporating and quoting § 2870. The
3   Agreement also informs the employee that he bears the burden of proving that the
4   invention falls within the scope of § 2870. This is consistent with California law. See
5   Cal. Labor Code § 2872 ("In any suit or action arising thereunder, the burden of proof
6   shall be on the employee claiming the benefits of its provisions.").

7       Therefore, Bryant cannot maintain a § 17200 claim based on § 2870.

8       **6.   Unconscionability**

9       Unconscionability has both procedural and substantive elements. Armendariz
10   v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 99 (2000). Both must
11   be present for a court to invalidate a contract or one of the contract's provisions. Id. at
12   114. However, "[t]he more substantively oppressive the contract term, the less
13   evidence of procedural unconscionability is required to come to the conclusion that the
14   term is unenforceable, and vice versa." Id.

15       Procedural unconscionability focuses on the elements of oppression and
16   surprise. Discover Bank v. Superior Court, 36 Cal.4th 148, 160 (2005). "Oppression
17   arises from an inequality of bargaining power which results in no real negotiation and
18   an absence of meaningful choice . . . . Surprise involves the extent to which the terms
19   of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior
20   bargaining position." Crippen v. Central Valley RV Outlet, 124 Cal.App.4th 1159, 1165
21   (2004).

22       Substantive unconscionability focuses on the actual terms of the agreement
23   and evaluates whether they create "overly harsh" or "one-sided results." Armendariz,
24   24 Cal.4th at 114. To be substantively unconscionable, a contractual provision must
25   shock the conscience. California Grocers Assn. v. Bank of America, 22 Cal.App.4th
26   205, 214 (1994).

27       Here, Bryant alleges that the Employee Agreement is a contract of adhesion.
28   Counterclaims ¶ 26. For purposes of the present analysis, the Court assumes that the

13

EXHIBIT _105_

PAGE _1615_

1   Employment Agreement is procedurally unconscionable. See Discover Bank v.

2   Superior Court, 36 Cal.4th 148, 160 (2005) ("The procedural element of an

3   unconscionable contract generally takes the form of a contract of adhesion, which,

4   imposed and drafted by the party of superior bargaining strength, relegates to the

5   subscribing party only the opportunity to adhere to the contract or reject it.") (internal

6   quotation marks and citation omitted).  However, upon examination of the terms of the

7   Employment Agreement, the Court is unable to conclude that the element of

8   substantive unconscionability has been met.  It is not surprising or overly harsh that

9   Mattel would expect its trade secrets and proprietary information to be kept

10  confidential; the same is true regarding Mattel's expectation that the works of its

11  design staff — created by Mattel's employees, using Mattel's resources, during time

12  for which Mattel paid the employee — be considered its property.  Therefore, Bryant

13  cannot state a claim based on unconscionability.

14          **7.     Cal. Labor Code §§ 232 and 232.5**

15          Although not pleaded in the Counterclaims, Bryant argues that his § 17200

16  claim is supported by an alleged violation of §§ 232 and 232.5.  These provisions

17  prohibit limitations on an employee's ability to disclose the amount of his or her wages

18  or information about his or her working conditions.  Bryant's arguments fail to address

19  how the Employment Agreement (which prohibits the disclosure of "trade secrets" and

20  "proprietary information") prevented him from disclosing the amount of his wages or

21  information about his working conditions.  Bryant has failed to state a § 17200 claim

22  based on §§ 232 and 232.5.

23          **8.     Unfairness**

24          As noted above, there is only a limited basis on which a plaintiff may challenge

25  conduct as an "unfair" business practice.  See Cel-Tech Communications, 20 Cal.4th

26  at 187 ("unfair" conduct that may be challenged pursuant to § 17200 is conduct that is,

27  or is similar to, conduct that constitutes a violation of antitrust laws).  Bryant's

28  allegations do not state a claim for an "unfair" business practice in violation of

EXHIBIT  105

14

PAGE  1616

Received:   7/18/06   4:46PM                    RightFAX -> JetFax ˜20;   Page 16
RightFAX                    7/__/2006 4:37    PAGE 016/019    Fax Server

1    § 17200.

2        **9.    "Fraudulent" Conduct**

3        Bryant also argues that the same conduct complained of in connection with his

4    fraud claim also supports a § 17200 claim based on the prohibition against

5    "fraudulent" conduct. This claim is not cognizable. Bryant's fraud claim, explored

6    more fully in the following section, is based upon Mattel's alleged failure to explain to

7    him the terms of the Employment Agreement. However, to allege a "fraudulent

8    business practice" under § 17200, a plaintiff must allege that "members of the public

9    are likely to be deceived." Comm. on Children's Television, Inc. v. Gen. Foods Corp.,

10    35 Cal.3d 197, 211 (1983). Bryant has not alleged facts that would tend to establish

11    that the public might be deceived by Mattel's conduct regarding its employment

12    practices.

13    **E.    Fraud Claim**

14        The parties agree that Bryant's fraud claim is one for fraudulent concealment,

15    and that Bryant must allege all the elements set forth in Marketing West, Inc. v. Sanyo

16    Fisher Corp., 6 Cal.App.4th 603, 612-13 (1992): (1) Mattel must have concealed or

17    suppressed a material fact; (2) Mattel must have been under a duty to disclose the

18    fact to Bryant; (3) Mattel must have intentionally concealed or suppressed the fact with

19    the intent to defraud Bryant; (4) Bryant must have been unaware of the fact and would

20    not have acted as he did if he had known of the concealed or suppressed fact; and (5)

21    as a result of the concealment or suppression of the fact, Bryant must have sustained

22    damage. Bryant alleges that "Mattel required [him] to execute the [Employment]

23    Agreement without disclosing to him its true import and terms." Counterclaims ¶ 56.

24    Bryant's claim is, in essence, that Mattel failed to inform him of the potential legal

25    effect the Agreement might have; in other words, Bryant claims that Mattel failed to

26    fully explain the Agreement to him. This does not support a fraudulent concealment

27    claim.

28        Bryant argues, based on Marketing West, that because Mattel chose to

15

EXHIBIT  105

1617

1  respond to his inquiries, Mattel was under a duty to disclose material facts. Under

2  Marketing West, where a party is "under no duty to speak" but nevertheless

3  "undertakes to do so, either voluntarily or in response to inquiries, he is bound not only

4  to state truly what he tells but also not to suppress or conceal any facts within his

5  knowledge which materially qualify those stated." Marketing West, 6 Cal.App.4th at

6  613 (citing Rogers v. Warden, 20 Cal.2d 286, 289 (1942)) (internal quotation marks

7  omitted). In other words, one who speaks "must make a full and fair disclosure." Id.

8  　　　Bryant makes no allegations that suggest that anyone at Mattel falls into this

9  category. He alleges that he was "presented with the form Agreement by Mattel," and

10  that "he was told that his execution of the Agreement was a condition of his

11  employment." Counterclaims ¶ 26. He then alleges that "[t]he terms of the Agreement

12  were not explained to him." Id. This is not the situation discussed in Marketing West

13  which, not surprisingly, prohibits a party from disclosing only that part of the truth that

14  favors it. Here, Bryant's allegations complain that Mattel did not disclose anything

15  regarding the Employment Agreement.

16  F.    Rescission

17  　　　Bryant asserts that rescission is proper because (1) the Agreement was

18  obtained through fraud; (2) Mattel required Bryant to execute the document as a

19  condition of employment, which resulted in duress; and (3) Mattel did not explain the

20  terms of the Agreement to Bryant, did not give him sufficient time to review it, and did

21  not permit or encourage him to seek legal counsel regarding the Agreement.

22  　　　Bryant failed to state a fraud claim; therefore, rescission based on his fraud

23  claim would be improper.

24  　　　Bryant's allegations do not meet the standard for duress, and Mattel's failure to

25  encourage him to seek legal counsel also does not require rescission of the

26  Employment Agreement. See Robison v. City of Manteca, 78 Cal.App.4th 452, 457

27  (2000). Additionally, although Bryant argues that he was not "given a meaningful

28  opportunity to review the Agreement at the time he executed it," he does not allege

16

EXHIBIT  10 5

Received:   7/18/06   4:47PM·                RightFAX -> JetFax M⁻³0;   Page 18
RightFAX              7/. /2006 4:37    PAGE 018/019   Fax Server

1   that he asked for, and was refused, sufficient time to actually read the Agreement with
2   which he was presented.

3   G.   **Declaratory Relief**

4        Finally, in his fourth counterclaim, Bryant seeks declaratory judgment that
5   Mattel's conduct in requiring Bryant and other employees to execute the Employment
6   Agreement constitutes unfair competition and unfair business practices in violation of
7   Cal. Bus. & Prof. Code §§ 17200 and 16600.  This claim for declaratory relief fails
8   because the underlying § 17200 fails.

9        Bryant also seeks a declaration that the Employment Agreement is unlawful
10  and unenforceable as to him and as to other current and former employees of Mattel.
11  See Bryant's Counterclaims ¶¶ 61-65.  As discussed previously, Bryant has no
12  standing to assert claims on behalf of anyone other than himself.  As discussed
13  throughout this Order, Bryant has not sufficiently alleged that the Employment
14  Agreement is unlawful or unenforceable as to him.

15  H.   **Ruling on Motion to Dismiss (04-09059)**

16       The Motion to Dismiss is **GRANTED** in its entirety.  Bryant requested in his
17  Opposition for an opportunity to amend his counterclaims.  Therefore, the Court
18  dismisses Bryant's counterclaims without prejudice.  Bryant may file Amended
19  Counterclaims that conform with this Order within ten days of the entry of this Order.

20                         **IV. Conclusion**

21       For the reasons set forth above, the Court **GRANTS** the Motion to Dismiss in
22  04-09049 and **DISMISSES WITHOUT PREJUDICE** Bryant's action for declaratory
23  relief.  The Court also **GRANTS** the Motion to Dismiss in 04-09059, and **DISMISSES**
24  **WITHOUT PREJUDICE** Bryant's counterclaims.  Bryant is granted ten days' leave to
25  amend the counterclaims in conformity with this Order.

26

27

28

/0 S
1619

Received:   7/18/06  4:47PM·          RightFAX -> JetFax '''20;   Page 19
RightFAX              7/  /2006 4:37    PAGE 019/019    Fax Server

1   Although this Order dismisses the Complaint in 04-09049, any future filings in

2   the consolidated action shall continue to be filed under 04-09049 in conformity with

3   the Court's consolidation order.

4       IT IS SO ORDERED.

5   DATE:  7 - 17 - 06

6

7                                   STEPHEN G. LARSON
                                    UNITED STATES DISTRICT JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

**EXHIBIT   106**

JUN 2 0 2006

# PRIORITY SEND & ENTER JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES -- GENERAL

Case No.    CV 05-02727 SGL(RNBx)                    Date:  June 19, 2006

Title:    MGA ENTERTAINMENT, INC. -v- MATTEL, INC.

============================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                              None Present
Courtroom Deputy                        Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:

None present                            None present

PROCEEDINGS:    MINUTE ORDER (IN CHAMBERS) RE CONSOLIDATION

On May 16, 2006, this Court issued orders to show cause why the following three cases should not be consolidated: Bryant v. Mattel, Inc., CV 04-09049; Mattel, Inc. v. Bryant, CV 04-09059; MGA Entertainment, Inc. v. Mattel, Inc., CV 05-02727. All parties have responded, and the Court has reviewed those responses. Because the Court has determined that these actions involve a number of common issues of law and fact, the Court orders that these three cases be consolidated for all purposes.

Mattel's request that the Court stay MGA Entertainment, Inc. v. Mattel, Inc., CV 05-02727, pending the outcome of the other two cases. The Court denies this request.

For ease of record keeping, the Court ORDERS that all further documents and proceedings occur under Bryant v. Mattel, 04-09049 SGL, and that Case Number CV 04-09059 and 05-02727 be CLOSED by the Clerk. Counsel are directed to file all further documents under Case Number CV 04-09049. The first paragraph of any document filed with the Court shall inform the Court to which case(s) the document relates.

IT IS SO ORDERED.

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority ___✓___ Send ___✓___
Entered _____ Closed _____
JS-5/JS-6 _____ JS-2/JS-3 _____
Scan Only _____ Docketed on CM _____
/Initials of Deputy Clerk __jh__
THIS CONSTITUTES NOTICE OF
ENTRY AS REQUIRED BY FRCP 77(d)

MINUTES FORM 90
CIVIL -- GEN

JUN 20 2006

EASTERN DIVISION

EXHIBIT _____106_____

PAGE _____1021_____

#47

**EXHIBIT   107**

1

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3              EASTERN DIVISION

4                 - - -

5      HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                 - - -

7   CARTER BRYANT, INDIV,              )
                                       )
8                      PLAINTIFF,      )
                                       )
9              VS.                     )   NO. ED CV 04-09049
                                       )   (LEAD LOW NUMBER)
10  MATTEL, INC.,                      )
                                       )
11                     DEFENDANTS.     )
    _____)
12  AND RELATED ACTIONS,               )
    _____)

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17             MONDAY, JANUARY 8, 2007

18                 10:26 A.M.

19

20

21

22

23          THERESA A. LANZA, RPR, CSR
         FEDERAL OFFICIAL COURT REPORTER
24          3470 12TH STREET, RM. 134
         RIVERSIDE, CALIFORNIA  92501
25              (951) 274-0844
         CSR11457@SBCGLOBAL

**CERTIFIED COPY**

EXHIBIT    167

PAGE    1022

1   AND THEY ARE IN THE 'OR.' THEY'RE NOT ALL OF THEM; ANY ONE OF

2   THEM COULD SURVIVE.

3        IN THIS SITUATION, EVERY SINGLE FACTOR IS IN PLACE

4   WITH REGARD TO THEIR COPYRIGHT INFRINGEMENT AND THEIR TORTIOUS

5   INTERFERENCE CLAIMS, AT LEAST WITH REGARD TO MGA AND LARIAN.        10:42

6        LET'S TALK ABOUT UNDUE DELAY, BECAUSE AS JACKSON SAID

7   IN THE NINTH CIRCUIT, IN DETERMINING WHETHER THERE'S DELAY,

8   COURTS LOOK TO WHETHER THE MOVING PARTY KNEW OR SHOULD HAVE

9   KNOWN THE FACTS AND THEORIES RAISED BY THE AMENDMENT IN THE

10  ORIGINAL PLEADING.                                                  10:43

11       SO YOU'VE GOT TO LOOK BACK AT THE ORIGINAL PLEADING.

12       AND THE AMENDMENT IS NOT VIEWED FAVORABLY WHEN THE

13  PLAINTIFF KNEW THE FACTS AND THEORIES SINCE THE INCEPTION.  AND

14  THE NINTH CIRCUIT, EVEN IN THE ACURA CASE, WENT ON TO

15  SPECIFICALLY SAY, IF SOMEBODY IS PLAYING A TACTICAL GAME IN        10:43

16  CHOOSING NOT TO DO SOMETHING, THAT'S REALLY NOT GOING TO BE

17  FAVORED.

18       NOW, LET'S LOOK AT TORRES EXHIBIT G.

19       TORRES EXHIBIT G IS THE ANONYMOUS LETTER THAT WAS

20  SENT IN AUGUST OF 2002 TO MATTEL'S CEO, BOB ECKERT.  AND THINK     10:43

21  HOW MUCH IT EXACTLY TRACKS BOTH THEIR ORIGINAL COMPLAINT AND

22  THE AMENDED COMPLAINT.

23       "I HAVE INFORMATION MATTEL SHOULD INVESTIGATE.  IN

24  2000, A MATTEL EMPLOYEE BY THE NAME OF CARTER BRYANT WAS

25  WORKING WITH MATTEL TO DESIGN DOLLS.  ONE OF THE DOLLS HE WAS      10:44

EXHIBIT  _107_

1   WORKING ON CREATING WAS THE BRATZ DOLLS." IT GOES ON TO SAY,

2   "WHILE HE WAS WORKING WITH MATTEL AND WORKING TO CREATE THESE

3   DOLLS, HE WORKED OUT A DEAL WITH MGA THAT LET HIM COLLECT MONEY

4   IN EXCHANGE FOR THESE DOLLS BEING HIS."

5          MGA KNEW THAT CARTER WAS AN EMPLOYEE WITH MATTEL AND          10:44

6   THAT IT WAS WRONG TO PAY HIM TO STEAL THIS PRODUCT FROM MATTEL.

7          THE COURT:  COUNSEL, I WOULD HATE TO HAVE SOMEONE

8   BRING A COMPLAINT BASED ON AN ANONYMOUS LETTER.  I MEAN, THE

9   LANGUAGE IN THE LETTER ITSELF STATES THAT THIS IS SOMETHING

10  MATTEL SHOULD INVESTIGATE.  MR. QUINN'S POSITION IS TO SATISFY      10:44

11  THE RULE 11 REQUIREMENT.  THAT'S EXACTLY WHAT THEY DID, AND

12  THAT'S WHAT THEY HAVE BEEN DOING, AND NOW THEY'RE SATISFIED,

13  FROM THEIR PERSPECTIVE, THAT THE INFORMATION IS TRUE.

14         MS. CENDALI:  WELL, FIRST OFF, YOUR HONOR, THIS

15  LETTER IS NOT TRUE.  BUT TO BE CLEAR -- JUST TO BE CLEAR THAT       10:44

16  MR. ECKERT DIDN'T JUST PUT IT IN A BOX, HE ASKED HIS HEAD OF HR

17  TO HAVE HIS HEAD OF SECURITY INVESTIGATE IT.  WHAT THEY DID

18  BEYOND THAT WE DON'T KNOW BECAUSE THEY REFUSE TO ANSWER

19  QUESTIONS AND TO PRODUCE A PRIVILEGE LOG ABOUT IT.

20         BUT WHAT WE DO KNOW IS, ON APRIL 27, 2004, THEY WERE         10:45

21  ABLE TO FILE THE ORIGINAL COMPLAINT IN THIS ACTION AGAINST

22  MR. BRYANT; SO CLEARLY, THEY HAD SATISFIED THEIR DUE DILIGENCE

23  OBLIGATIONS --

24         THE COURT:  WITH RESPECT TO THAT ASPECT, RIGHT.  BUT

25  I CERTAINLY KNOW THAT O'MELVENY & MYERS WOULD NOT FILE A            10:45

EXHIBIT _107_

1-8-07          ED CV 04-09049

PAGE _1624_

1  COMPLAINT BASED ON AN ANONYMOUS LETTER FROM SOMEBODY SUGGESTING

2  THAT THERE IS A COPYRIGHT INFRINGEMENT.

3  MS. CENDALI:  WELL, IF THEY INVESTIGATE IT AS THEY

4  SHOULD, BECAUSE THERE IS A DUTY OF INQUIRY WITH REGARD TO

5  ALLEGATIONS.  THEY WERE ON INQUIRY NOTICE AT THIS TIME.  AND          10:45

6  THEN LET'S TAKE A LOOK AT WHAT THEIR ACTUAL COMPLAINT ENDED UP

7  SAYING THAT THEY FILED AGAINST --

8  THE COURT:  COUNSEL, I UNDERSTAND.  IT SAID THE

9  SAME -- I UNDERSTAND YOUR ARGUMENT.  THERE'S NOTHING WHICH

10  REFUTES THE POSITION OF MR. QUINN THAT IT TOOK HIM THAT LONG,        10:46

11  THIS MUCH TIME, TO REASONABLY AND DILIGENTLY INVESTIGATE THIS.

12  MS. CENDALI:  BUT THIS IS THE POINT I WANT TO MAKE,

13  YOUR HONOR, AND IT'S IN PARAGRAPHS 12, 19, 23, 30, 36, AND 41

14  OF THE ORIGINAL COMPLAINT.  WHAT I'M TRYING TO SAY IS THAT THE

15  ORIGINAL COMPLAINT ALLEGED AT ITS TIME -- THOUGH IT DIDN'T NAME      10:46

16  MGA AND LARIAN BY NAME, THEY ADMITTED THAT THEY HAD A COPY OF

17  HIS CONTRACT WITH MGA.  IT SAID MGA ON IT.  IT WAS SIGNED BY

18  MR. LARIAN.  AND WHAT DID THEY SAY?

19  THEY DIDN'T JUST SAY THINGS ABOUT BRYANT.  THEY SAID

20  THAT, IN PARAGRAPH 12, "MATTEL LEARNED THAT BRYANT HAD SECRETLY      10:46

21  AIDED, ASSISTED AND WORKED FOR A MATTEL COMPETITOR, INCLUDING

22  WITH THAT LIMITATION BY ENTERING INTO AN AGREEMENT.  IN

23  ADDITION, WHILE BRYANT WAS EMPLOYED, BRYANT AND THE OTHER

24  DEFENDANTS CONVERTED MISAPPROPRIATE AND MISUSED MATTEL

25  PROPERTY."  IT GOES ON TO SAY THAT IT --                            10:47

EXHIBIT _107_

30

1

2

3                              CERTIFICATE

4

5    I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
6    THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
     ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
7    CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

8

9                                                    7-9-07

10   THERESA A. LANZA, RPR, CSR                    DATE
     OFFICIAL COURT REPORTER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                            EXHIBIT ___107___

**EXHIBIT 108**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   109**

# THIS EXHIBIT IS FILED UNDER SEAL
## PURSUANT TO PROTECTIVE ORDER

**EXHIBIT   110**

1  THOMAS J. NOLAN (Bar No. 66992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:  (213) 687-5600
4  E-mail:     tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No. 40892)
   TIMOTHY A. MILLER (Bar No. 154744)
6  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   Four Embarcadero Center, 38th Floor
7  San Francisco, California 94111-5974
   Telephone:  (415) 984-6400
8  Facsimile:  (415) 984-2698
   E-mail:     rkennedy@skadden.com
9
   Attorneys for Cross-Defendants
10 MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
   MGAE De Mexico, S.R.L. De C.V., and ISAAC LARIAN

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                    EASTERN DIVISION

14 CARTER BRYANT, an individual          )  CASE NO. CV 04-9049 SGL (RNBx)
                                         )
15              Plaintiff,               )  Consolidated with Case No. 04-9059
                                         )  and Case No. 05-2727
16      v.                               )
                                         )  **DISCOVERY MATTER**
17 MATTEL, INC., a Delaware              )
   corporation                          )  **ISAAC LARIAN'S THIRD**
18                                       )  **SUPPLEMENTAL RESPONSES TO**
                Defendant.               )  **MATTEL, INC.'S AMENDED**
19                                       )  **FOURTH SET OF**
                                         )  **INTERROGATORIES**
20 ─────────────────────────────        )
   Consolidated with MATTEL, INC. v.     )
21 BRYANT and MGA                        )
   ENTERTAINMENT, INC. v.                )
22 MATTEL, INC.                          )  **Phase 1:**
                                         )  Discovery Cut-Off:    January 28, 2008
23                                       )  Pre-Trial Conference: May 5, 2008
   **CONFIDENTIAL – ATTORNEYS'**         )  Trial Date:           May 27, 2008
24 **EYES ONLY**                         )

25 **PROPOUNDING PARTY:    MATTEL, INC. ("MATTEL")**

26 **RESPONDING PARTY:     ISAAC LARIAN**

27 **SET NUMBER:           AMENDED FOURTH**

28                    1-28-08
   ─────────────────────────────────────────────────────
   LARIAN'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT 11°
PAGE 1744



## PRELIMINARY STATEMENT

The General Response set forth herein applies to all responses that Isaac Larian ("Larian") is providing in response to these interrogatories (the "Interrogatories") or may in the future provide in response to any discovery request in this action. The Response is made without waiving, or intending to waive but, on the contrary, expressly reserving: (a) the right to object, on the grounds of competency, privilege, relevancy or materiality, or any other proper grounds, to the use of the Response, for any purpose in whole or in part, in any subsequent step or proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other interrogatories or other discovery procedures; and (c) the right at any time to revise, correct, add to, or clarify any of the responses propounded herein.

The Response reflects only the present state of Larian's discovery regarding the information that Mattel seeks. Discovery for Phase Two and other investigation or research concerning this litigation are continuing. It is anticipated that further discovery, independent investigation, and legal research and analysis will supply additional facts and meaning to the known facts, as well as establish entirely new factual conclusions, all of which may lead Larian to discover other information responsive to these Interrogatories. Larian therefore reserves the right to amend or supplement this Response at any time in light of future investigation, research or analysis, and also expressly reserves the right to rely on, at any time, including trial, subsequently discovered information omitted from this Response as a result of mistake, error, oversight or inadvertence. Larian does not hereby admit, adopt or acquiesce in any factual or legal contention, assertion or characterization contained in the Interrogatories or any particular request therein, even where Larian has not otherwise objected to a particular interrogatory, or has agreed to provide information responsive to a particular interrogatory.

No incidental or implied admissions are intended by this Response.

1

EXHIBIT __11 0__

PAGE __1745__

1  These responses should not be taken as an admission that Larian accepts or admits

2  the existence of any facts set forth or assumed by any instruction, definition or

3  interrogatory.

4  **GENERAL OBJECTIONS**

5           Larian responds to these Interrogatories subject to the following general

6  objections and limitations, each of which is incorporated into each and every

7  response as though fully set forth therein:

8           1.    Larian objects to these Interrogatories to the extent they seek

9  information that is not subject to disclosure under any applicable privilege, doctrine

10 or immunity, including without limitation the attorney-client privilege, the work

11 product doctrine, the right of privacy, and all other privileges recognized under the

12 constitutional, statutory or decisional law of the United States of America, the State

13 of California or any other applicable jurisdiction. Larian shall not produce such

14 information in response to Mattel's interrogatories. Any disclosure of such protected

15 or privileged information is inadvertent and shall not be construed as a waiver of

16 those privileges or protections. Larian reserves the right to correct the record with

17 regard to any such inadvertent disclosure, as provided for in the Protective Order

18 governing this case.

19          2.    Larian objects to these Interrogatories to the extent they seek

20 information not relevant to the claims or defenses of any party to this action and not

21 reasonably calculated to lead to the discovery of admissible evidence.

22          3.    Larian objects to these Interrogatories to the extent they seek

23 information which by reason of public filing or otherwise is already in Mattel's

24 possession or is readily accessible to Mattel.

25          4.    Larian objects to these Interrogatories to the extent they seek the

26 disclosure of information (1) not within his possession, custody or control; (2) that

27 Larian cannot locate after a reasonably diligent search; or (3) that refer to persons,

28 entities, or events not known to Larian. Such instructions, definitions, or requests are

2

1  objectionable where they seek to require more of Larian than any obligation imposed

2  by the Federal Rules of Civil Procedure; subject Larian to unreasonable and undue

3  annoyance, oppression, burden, and expense; and/or seek to impose upon Larian an

4  obligation to investigate or discover information or materials from sources equally

5  accessible to Mattel.

6        5.      Larian objects to these Interrogatories to the extent they are

7  overbroad and unduly burdensome.

8        6.      Larian objects to the definitions and instructions to the extent

9  such definitions and instructions purport to enlarge, expand, or alter in any way the

10  plain meaning and scope of any specific term or specific interrogatories on the

11  ground that such enlargement, expansion, or alteration renders such a term or request

12  vague, ambiguous, unintelligible, overly broad, unduly burdensome, and/or

13  uncertain.

14        7.      Larian objects to the terms YOU, YOUR, BRYANT, LARIAN,

15  MGA, MATTEL, AFFILIATES, PERSON, PERSONS, DESIGN, DESIGNS,

16  BRATZ, SOLD, SELL, SALE, BRATZ DOLL, BRATZ PRODUCT, BRATZ

17  MOVIE, BRATZ TELEVISION SHOW, BASED ON, and REFER OR RELATE

18  TO on the grounds that these terms render the interrogatories overbroad, unduly

19  burdensome, vague and ambiguous and to the extent that they could be read to call

20  for legal conclusions in responding to the interrogatories, including, by way of

21  example and without limitation, as follows:

22        (a)      Larian objects to the definition of the term "BRATZ"

23  (Definitions ¶ 9) as vague, ambiguous, overly broad and unduly burdensome, and

24  designed to mislead and confuse the trier of fact. The definition includes "any

25  project, product, doll or DESIGN ever known by [the Bratz] name (whether in whole

26  or in part and regardless of what such project, product or doll is or has been also,

27  previously or subsequently called) and any product, doll or DESIGN or any portion

28  thereof that is now or has ever been known as, or sold or marketed under, the name

3

EXHIBIT _11 0_

PAGE __1747__

1  or term 'Bratz' (whether in whole or in part and regardless of what such product, doll

2  or DESIGN or portion thereof is or has been also, previously or subsequently called)

3  or that is now or has ever been sold or marketed as part of the 'Bratz' line, and each

4  version or iteration of such product, doll or DESIGN or any portion thereof," and it

5  goes on. By incorporating the definition of DESIGN, the overly broad definition of

6  BRATZ includes two-dimensional and three-dimensional representations, including

7  "works, designs, artwork, sketches, drawings, illustrations, representations,

8  depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models,

9  samples, rotocasts, reductions to practice, developments, inventions and/or

10 improvements ...." (Definitions ¶ 8.) These convoluted and multi-part definitions

11 combine to render the interrogatories vague, ambiguous and overly broad, and to

12 include within the term BRATZ things that do not fairly represent the Bratz line of

13 dolls, accessories and related products that are the subject of this case. In responding

14 to these interrogatories, Larian will interpret the term BRATZ to mean the line of

15 dolls introduced by MGA to the market for sale in May or June of 2001 and

16 subsequent dolls, accessories and other products known as Bratz or associated by

17 Larian with the Bratz line of dolls;

18           (b)     Larian objects to the definition of the term "BRATZ

19 DOLL" (Definitions ¶ 12) as vague, ambiguous, overly broad and unduly

20 burdensome, and designed to mislead and confuse the trier of fact. The definition

21 includes any doll that "REFERS OR RELATES TO BRATZ." Mattel's definition of

22 the terms "BRATZ" and "REFERS OR RELATES" renders the definition of

23 "BRATZ DOLL" unintelligible because Larian cannot know, by way of example,

24 what dolls may "deal with, comment on, respond to,... or pertain" (Definitions ¶ 17)

25 to "BRATZ." In responding to these interrogatories, Larian will interpret the term

26 "BRATZ DOLL" to mean the line of dolls introduced by MGA to the market for sale

27 in May or June of 2001 and subsequent dolls known as Bratz;

28           (c)     Larian objects to the definition of the term "BASED ON,"

4

EXHIBIT ___1/0___

PAGE ___1748___

1   as vague, ambiguous, overly broad and unduly burdensome, and designed to mislead

2   and confuse the trier of fact. The definition strays far from the English meaning of

3   "based on" by including terms loaded with legal significance in intellectual property

4   law, such as "substantially similar to," or "a derivative of." In responding to these

5   interrogatories, Larian will not interpret the term "BASED ON," but rather will

6   respond using "based on" in its normal accepted meaning.

7         (d)    Larian objects to the terms "IDENTIFY" or "IDENTITY"

8   as overbroad, unduly burdensome, vague, ambiguous, and oppressive. Mattel's

9   definition of these terms inherently call for answers to multiple discrete questions or

10   subparts to questions. For example, when those terms are used to reference any

11   BRATZ PRODUCT, the use of those terms requests at least 6 different and distinct

12   facts: (a) the full name of the product; (b) the number of the product; (c) the SKU of

13   the number; (d) any other applicable designation of the product useful for

14   identification; (e) the period of time during which the product was, has been, or will

15   be sold; and (f) the identity of each person who has licensed from YOU the right to

16   sell such BRATZ PRODUCT. Therefore, any interrogatory that includes or

17   incorporates the terms IDENTIFY or IDENTITY are necessarily compound and

18   should be posed as separate interrogatories.

19         (e)    Larian objects to the term "any" and "REFER OR

20   RELATE TO" on the grounds and to the extent that they are overbroad, unduly

21   burdensome, and/or are vague and ambiguous in the context of the interrogatories as

22   written and as those interrogatories would be plainly understood absent Mattel's

23   definitions.

24      8.    Larian objects to these interrogatories to the extent that they may

25   unfairly seek to restrict the facts on which Larian may rely at trial. Discovery has not

26   been completed and Larian is not yet necessarily in possession of all the facts and

27   documents upon which Larian intends to rely. All of the responses submitted

28   herewith are tendered to Mattel with the reservation that the responses are submitted

EXHIBIT _____ 11 0

PAGE _____ 1749

1 without limiting the evidence on which Larian may rely to support the contentions

2 and defenses that Larian may assert at the trial of this action and to rebut or impeach

3 the contentions, assertions and evidence that Mattel may present. Larian reserves the

4 right to supplement or amend these responses at a future date.

5            9.     Larian objects to each interrogatory to the extent that it seeks

6 information that will be the subject of expert witness testimony and that is therefore

7 premature.

8            10.    In responding to these interrogatories, Larian has not and will not

9 comply with any instructions or definitions that seek to impose requirements in

10 addition to those imposed by the Federal Rules of Civil Procedure and any applicable

11 local rule, any orders entered by the Court in this Action, or other applicable law.

12            11.    Consistent with Rule 33(d) of the Federal Rules of Civil

13 Procedure, Larian objects to providing responses to interrogatories that can be

14 derived from documents that have or will be produced (when requested in

15 compliance with Rule 26) and where the burden to derive such information is

16 substantially the same for Mattel as it is for Larian.

17            12.    Larian objects to each interrogatory to the extent that it seeks the

18 disclosure of confidential, proprietary, or trade-secret information.

19            13.    Larian objects to each interrogatory to the extent that it calls for a

20 legal conclusion.

21            14.    Larian objects to several of those interrogatories that appear to be

22 directed at other parties to the litigation and not to Larian, given the nature of the

23 claims asserted against Larian in this case.

24            15.    Larian reserves the right to object on any ground at any time to

25 such other or supplemental discovery requests as Mattel may propound involving or

26 relating to the same subject matter of these interrogatories.

27            16.    To the extent Larian responds to an interrogatory, he does so

28 without waiving or intending to waive but rather, on the contrary, preserving and

EXHIBIT __11 0__

__1750__

1  intending to preserve, his contention that anything Mr. Bryant did on weekends,
2  evenings, vacation and any other time outside ordinary business hours was not done
3  while he was working for Mattel. Larian's response may not be taken as an admission
4  that the information he provides in his response in any way reflects or evidences
5  work performed by Mr. Bryant while he was working for Mattel or that Larian
6  adopts or agrees with any fact or legal conclusion assumed, presumed or contained in
7  Mattel's interrogatory.

8       17.  Larian objects to each of Mattel's interrogatories because Mattel
9  has propounded more than 50 interrogatories, including discrete subparts. Under
10  Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each
11  side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

12       18.  Larian's responses are made based on his understanding and
13  interpretation of each interrogatory. Larian reserves the right to supplement its
14  objections and responses should Mattel subsequently put forth an interpretation of
15  any interrogatory that differs from those of Larian.

16  **OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES**

17       Without waiving or departing from his General Response and General
18  Objections, and specifically incorporating them in his response to each Interrogatory
19  below, Larian makes the following additional objections and responses to specific
20  Interrogatories:

21  **INTERROGATORY NO. 42:**

22       State all facts that support YOUR contention, if YOU so contend, that
23  any BRATZ DOLLS are not BASED ON BRATZ DESIGNS created by BRYANT
24  on or before October 19, 2000, and IDENTIFY all PERSONS with knowledge of
25  such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

26  **RESPONSE TO INTERROGATORY NO. 42:**

27       Larian incorporates by reference his General Response and General
28  Objections above, as though fully set forth herein and specifically incorporates

EXHIBIT _____ 110

PAGE _____ 1751

1 | General Objection No. 7 (regarding Definitions), including without limitation
2 | Larian's objection to the definition of the terms BASED ON, BRATZ DOLLS,
3 | BRATZ, DESIGN, IDENTIFY and REFER OR RELATE TO, and further objects to
4 | this interrogatory on the ground that it is overbroad, unduly burdensome, vague and
5 | ambiguous.

6 |     Larian also objects to this interrogatory to the extent it seeks
7 | information that is not subject to disclosure under any applicable privilege, doctrine
8 | or immunity, including without limitation the attorney-client privilege, the work
9 | product doctrine, the right of privacy, and all other privileges recognized under the
10 | constitutional, statutory or decisional law of the United States of America, the State
11 | of California or any other applicable jurisdiction. Larian objects to this interrogatory
12 | to the extent it calls for a legal conclusion.

13 |     Larian further objects to this interrogatory on the ground that it is
14 | premature because the invention, creation, conception, or reduction to practice of
15 | Bratz (and other legal concepts that may be relevant) will be the subject of expert
16 | testimony at trial. Larian objects to this interrogatory to the extent it seeks to limit
17 | the expert testimony that Larian may seek to introduce at trial. Larian will identify
18 | his experts and make related disclosures in accordance with the Court's orders and
19 | applicable rules.

20 |     Larian further objects to this interrogatory on the grounds that it seeks
21 | information that is not relevant to the claims or defenses of any party to the action
22 | and is not reasonably calculated to lead to the discovery of admissible evidence
23 | because the INVENTIONS AGREEMENT executed by Carter Bryant in or around
24 | January 1999, purports to state that any inventions conceived or reduced to practice
25 | by him during his employment with Mattel would be owned by Mattel. The
26 | references to the conception and reduction to practice of an invention are terms of art
27 | in patent law. Accordingly, copyright law principles of substantial similarity,
28 | copying, and derivative works are not relevant to the INVENTIONS AGREEMENT

8

EXHIBIT

PAGE _____ 1752

1   which, by its terms, involves only principles of patent law.

2         Larian further objects on the ground that this interrogatory is an
3   overbroad and unduly burdensome contention interrogatory to the extent it asks for
4   "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*
5   *Am. v. Rawstron*, 181 F.R.D. 441,447-48 (CD. Cal. 1998) (rejecting discovery
6   requests seeking "all facts, documents, and witnesses that support the denial of a
7   statement or allegation of fact" because the "universe of potentially responsive
8   information is almost endless").

9         Larian further objects to the extent that this interrogatory seeks
10  information that is outside Larian's knowledge and is not in Larian's possession,
11  custody, or control. In particular, Larian objects to this interrogatory to the extent
12  that it requests that Larian "state *all* facts ... and IDENTIFY *all* PERSONS... and *all*
13  DOCUMENTS" (emphasis added).

14        Larian further objects to this interrogatory because Mattel has
15  propounded more than 50 interrogatories. Under Judge Larson's order of February
16  22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-
17  04049-SGL and CV 05-02727]."

18  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 42:**

19        Larian incorporates by reference his General Response and General
20  Objections above, as though fully set forth herein and specifically incorporates
21  General Objection No. 7 (regarding Definitions), including without limitation
22  Larian's objection to the definition of the terms BASED ON, BRATZ DOLLS,
23  BRATZ, DESIGN, IDENTIFY and REFER OR RELATE TO, and further objects to
24  this interrogatory on the ground that it is overbroad, unduly burdensome, vague and
25  ambiguous.

26        Larian also objects to this interrogatory to the extent it seeks
27  information that is not subject to disclosure under any applicable privilege, doctrine
28  or immunity, including without limitation the attorney-client privilege, the work

EXHIBIT _____

PAGE _____

1    product doctrine, the right of privacy, and all other privileges recognized under the
2    constitutional, statutory or decisional law of the United States of America, the State
3    of California or any other applicable jurisdiction. Larian objects to this interrogatory
4    to the extent it calls for a legal conclusion.

5           Larian further objects to this interrogatory on the ground that it is
6    premature because the invention, creation, conception, or reduction to practice of
7    Bratz (and other legal concepts that may be relevant) will be the subject of expert
8    testimony at trial. Larian objects to this interrogatory to the extent it seeks to limit
9    the expert testimony that Larian may seek to introduce at trial. Larian will identify
10   his experts and make related disclosures in accordance with the Court's orders and
11   applicable rules.

12          Larian further objects to this interrogatory on the grounds that it seeks
13   information that is not relevant to the claims or defenses of any party to the action
14   and is not reasonably calculated to lead to the discovery of admissible evidence
15   because the INVENTIONS AGREEMENT executed by Carter Bryant in or around
16   January 1999, purports to state that any inventions conceived or reduced to practice
17   by him during his employment with Mattel would be owned by Mattel. The
18   references to the conception and reduction to practice of an invention are terms of art
19   in patent law. Accordingly, copyright law principles of substantial similarity,
20   copying, and derivative works are not relevant to the INVENTIONS AGREEMENT
21   which, by its terms, involves only principles of patent law.

22          Larian further objects on the ground that this interrogatory is an
23   overbroad and unduly burdensome contention interrogatory to the extent it asks for
24   "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*
25   *Am. v. Rawstron*, 181 F.R.D. 441,447-48 (CD. Cal. 1998) (rejecting discovery
26   requests seeking "all facts, documents, and witnesses that support the denial of a
27   statement or allegation of fact" because the "universe of potentially responsive
28   information is almost endless").

EXHIBIT __ 10
PAGE ___ 1754

1    Larian further objects to the extent that this interrogatory seeks
2  information that is outside Larian's knowledge and is not in Larian's possession,
3  custody, or control. In particular, Larian objects to this interrogatory to the extent
4  that it requests that Larian "state *all* facts ... and IDENTIFY *all* PERSONS... and *all*
5  DOCUMENTS" (emphasis added).
6    Subject to and without waiving the foregoing objections, Larian
7  responds as follows:
8    Should there be a finding that any intellectual property rights associated
9  with the drawings completed by Carter Bryant in August or September, 1998, and/or
10  subsequent drawings, sketches, and/or representations that Bryant created prior to
11  October 4, 2000, are owned by Mattel, it is Larian's position that the first generation
12  of Bratz dolls, first "reduced to practice," and first expressed in a tangible medium,
13  after October 20, 2000, and all subsequent Bratz dolls, are not substantially similar
14  to, are not a copy of, and are not derivative of Carter Bryant's aforementioned works.
15    Larian further responds that said first generation of Bratz dolls differ
16  markedly and significantly from the drawings or designs completed by Carter Bryant
17  prior to October 19, 2000. First, with respect to the three-dimensional "dummy" to
18  which Bryant referred at his deposition, it had no material resemblance to the first
19  generation of Bratz dolls. Second, with respect to Carter Bryant's drawings, Larian
20  points out that two-dimensional drawings do not translate into three-dimensional
21  dolls without original, creative effort. Third, there are recognizable and material
22  differences in the total overall look and feel of the first generation Bratz dolls
23  compared to Carter Bryant's drawings completed prior to October 21, 2000. Fourth,
24  there are recognizable and material differences in individual elements of the first
25  generation Bratz dolls compared to Carter Bryant's drawings completed prior to
26  October 21, 2000, including, but not limited to, with respect to the following: hair
27  styles; hair colors; facial expression; depiction of noses; eye art; extent of detail of
28  eye art; lip art; eyebrow art; proportions of the bodies; posture; spatial arrangement

11

LARIAN'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT ____ 110

PAGE ____ 1755

1   of hands; wrists and arms; and proportions and spatial arrangements of the eyes,
2   noses, and mouths. Additional details regarding such differences will be the subject
3   of expert disclosures and will be provided at a later time.

4          With respect to any design relating to the Bratz concept that Carter
5   Bryant may have contributed after October 4, 2000 and before October 21, 2000, i.e.,
6   during a period that he was performing such services for MGA pursuant to a
7   freelance contract, Larian notes that any such design would have incorporated the
8   original and/or creative input of other artists working for or on behalf of MGA on the
9   Bratz concept, which was owned by MGA as a consequence of the October 4, 2000
10  transfer of rights from Bryant to MGA. In addition, the first generation of Bratz
11  dolls, and all subsequent Bratz dolls, are not substantially similar to, derivative of,
12  and/or a copy of any work performed or created by Carter Bryant from October 4-
13  October 20, 2000.

14         The following persons have knowledge of said facts: Isaac Larian;
15  Carter Bryant; Margaret Leahy; Veronica Marlow; Anna Rhee; Mercedeh Ward;
16  Sarah Halpern; Paula Treantafelles (Garcia); Steve Tarmichael; Rebecca Harris;
17  Cecilia Kwok; David Dees; Jesse Ramirez; and Samuel Wong.

18         The following documents may be relevant to these facts: all
19  DOCUMENTS that refer to or evidence the work performed by MGA employees
20  and freelancers toward the reduction to practice of the first generation of Bratz dolls
21  during the period after October 20, 2000 through June 1, 2001, including but not
22  limited to: Carter Bryant's drawings; the Bratz dolls; My Scene dolls;
23  DOCUMENTS evidencing the development of the first generation of Bratz dolls by
24  employees and freelance artists working for MGA; and invoices submitted by
25  freelancers for work performed on the Bratz Project. The documents evidencing this
26  work are too numerous to identify individually.

27  **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 42:**

28         Larian incorporates by reference his General Response and General

12

EXHIBIT ___10

PAGE ___1756

1  Objections above, as though fully set forth herein and specifically incorporates General
2  Objection No. 7 (regarding Definitions), including without limitation Larian's objection to
3  the definition of the terms BASED ON, BRATZ DOLLS, BRATZ, DESIGN, IDENTIFY
4  and REFER OR RELATE TO, and further objects to this interrogatory on the ground that it
5  is overbroad, unduly burdensome, vague and ambiguous.

6  　　　　　Larian also objects to this interrogatory to the extent it seeks information that
7  is not subject to disclosure under any applicable privilege, doctrine or immunity, including
8  without limitation the attorney-client privilege, the work product doctrine, the right of
9  privacy, and all other privileges recognized under the constitutional, statutory or decisional
10 law of the United States of America, the State of California or any other applicable
11 jurisdiction. Larian objects to this interrogatory to the extent it calls for a legal conclusion.

12 　　　　　Larian further objects to this interrogatory on the ground that it is
13 premature because the invention, creation, conception, or reduction to practice of
14 Bratz (and other legal concepts that may be relevant) will be the subject of expert
15 testimony at trial. Larian objects to this interrogatory to the extent it seeks to limit
16 the expert testimony that Larian may seek to introduce at trial. Larian will identify
17 his experts and make related disclosures in accordance with the Court's orders and
18 applicable rules.

19 　　　　　Larian further objects to this interrogatory on the grounds that it seeks
20 information that is not relevant to the claims or defenses of any party to the action
21 and is not reasonably calculated to lead to the discovery of admissible evidence
22 because the INVENTIONS AGREEMENT executed by Carter Bryant in or around
23 January 1999, purports to state that any inventions conceived or reduced to practice
24 by him during his employment with Mattel would be owned by Mattel. The
25 references to the conception and reduction to practice of an invention are terms of art
26 in patent law. Accordingly, copyright law principles of substantial similarity,
27 copying, and derivative works are not relevant to the INVENTIONS AGREEMENT
28 which, by its terms, involves only principles of patent law.

EXHIBIT ___ ||0

PAGE ___ 1757

1     Larian further objects on the ground that this interrogatory is an

2   overbroad and unduly burdensome contention interrogatory to the extent it asks for

3   "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*

4   *Am. v. Rawstron*, 181 F.R.D. 441,447-48 (CD. Cal. 1998) (rejecting discovery

5   requests seeking "all facts, documents, and witnesses that support the denial of a

6   statement or allegation of fact" because the "universe of potentially responsive

7   information is almost endless").

8     Larian further objects to the extent that this interrogatory seeks

9   information that is outside Larian's knowledge and is not in Larian's possession,

10   custody, or control. In particular, Larian objects to this interrogatory to the extent

11   that it requests that Larian "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*

12   DOCUMENTS" (emphasis added).

13     Larian objects to the interrogatory on the ground that it is compound

14   and therefore Mattel has propounded more than 50 interrogatories, including discrete

15   subparts, in violation of Judge Larson's order of February 22, 2007, that

16   "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-

17   SGL and CV 05-02727]." In its supplemental response to this interrogatory, Larian

18   did not refuse to answer the interrogatory based on the 50-interrogatory limit, but

19   rather refused to use the compound and misleading defined terms that permeate

20   Mattel's interrogatories. The interrogatories attempt to use misleading and unfair

21   definitions to create jury confusion or to circumvent 50-interrogatory limit. For

22   example, Mattel's definition of "BRATZ INVENTION" contains ten separate

23   component parts ("representation, idea, concept, work, process, procedure, plan,

24   improvement, DESIGN or other development"). The incorporation of the defined

25   term "DESIGN" adds at least another 21 elements ("all works, designs, artwork,

26   sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

27   diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

28   practice, developments, inventions and/or improvements"). The inclusion of these

1  disparate concepts in the term "invention" improperly conflates distinct issues of

2  patent law, copyright protection, trade secret law and the common law protecting

3  original ideas, many of which have no place in the ordinary usage of the term

4  "invention." In its previous supplemental responses, Larian used the word

5  "invention" in its ordinary usage, and does so again in these second supplemental

6  responses. During the meet and confer process regarding Larian's supplemental

7  responses, Mattel's counsel objected to Larian's responses, and argued that Larian

8  must either use Mattel's distorted definitions or respond to each of the many

9  component parts of Mattel's defined terms. As was made clear during the meet and

10  confer process and as more fully set forth in MGA's Opposition to Mattel, Inc.'s

11  Motion To Compel Responses To Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 34,

12  35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 47, 48, 49 and 50) By The MGA Parties,

13  Larian objects to this interrogatory as compound and a violation of the 50-

14  interrogatory limit to the extent that Mattel continues to assert that Larian is required

15  to respond to each component part of Mattel's defined terms.

16         Subject to and without waiving the foregoing objections, Larian

17  provides its Second Supplemental Response as follows:

18         Larian contends that, applying the generally-accepted definitions of the

19  words "based on" and "design", neither the first generation of Bratz dolls nor any

20  subsequent Bratz products were based on any Carter Bryant designs created on or

21  before October 19, 2000. Larian further contends that even if Larian applies Mattel's

22  misleading definitions of "BASED ON" and "DESIGN," neither the first generation

23  of Bratz dolls nor any of subsequent Bratz products were "BASED ON" any Carter

24  Bryant "DESIGNS" created on or before October 19, 2000. Larian further contends

25  that the first generation of Bratz dolls (and subsequent Bratz products) were

26  "conceived of" and "reduced to practice" for purposes of design patent law, and first

27  expressed in a tangible medium for purposes of copyright law, after October 20,

28  2000, as a result of original, creative efforts of artists employed by, or working on

15

EXHIBIT ___ || D

PAGE ___ 1759

1  behalf of, MGA.  All first-generation Bratz dolls and subsequent Bratz products are
2  not substantially similar to, are not a copy of, and are not derivative of, any Carter
3  Bryant designs completed on or before October 19, 2000.

4          To the extent that Mattel argues that the shapes of characters in Carter
5  Bryant's drawings that he called "Bratz" (including, but not limited to, those
6  drawings identified by Carter Bryant in Exhibit 5 of his deposition as being sketched
7  in August 1998) represented a conception of what could have later become a three-
8  dimensional object that could have been the subject of a design patent, Larian
9  contends as follows:

10         Carter Bryant was not a sculptor, and any effort to translate his pre-1999
11  two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt
12  would have produced shapes that were different from the actual shape of the final
13  three-dimensional Bratz sculpt used in manufacturing the first generation of Bratz
14  dolls released on the market by MGA in or about June 2001.  Also, different sculpt
15  artists would have created different sculpts – Bryant's two-dimensional drawings did
16  not dictate a specific three-dimensional object.  The shapes of the characters in
17  Bryant's drawings bear little resemblance to the final shape of the actual Bratz dolls.
18  Differences between the drawings and the final shape of the actual Bratz dolls
19  include, but are not limited to, the following:  posture; hip-to-waist ratio; feet size
20  (dolls' feet are not as exaggerated as characters' feet in the drawings); head size
21  (dolls' heads are proportionally smaller than characters' heads in the drawings); eyes
22  (dolls' eyes are more open than characters' eyes in the drawings); other facial
23  features including lips, cheek bones, chin and forehead.

24         Moreover, the final physical shape of the first generation of Bratz dolls,
25  released on the market by MGA in or about June 2001, was conceived of by
26  Margaret Leahy, working on behalf of MGA, along with other MGA agents and
27  employees such as employees in Hong Kong and Mercedeh Ward.  The conception
28  of this physical shape was completed on or after October 20, 2000, and reduced to

16

EXHIBIT _____ 110

PAGE _____ 1760

1  practice no earlier than December 19, 2000.

2        Copyright infringement analysis under Ninth Circuit law requires that

3  "objective" or "extrinsic" elements that are "scènes-à-faire" in the public domain, or

4  public domain materials that Bryant was aware of and that directly or indirectly

5  influenced him in developing his concept for a new line of fashion dolls, be filtered

6  out of the subject works, and, thereafter, that the remaining "subjective" or

7  "intrinsic" elements be evaluated for substantial similarity.  Carter Bryant's 1998

8  drawings contain many elements that must be filtered out, including but not limited

9  to the oversized head, eyes, lips, and feet of the figures in Bryant's drawings and the

10  stock model and/or doll poses.  A non-exhaustive list of examples of prior existing

11  works that incorporate such elements includes the following:  sources of inspiration

12  specifically identified by Carter Bryant, including Steve Madden advertisements and

13  Paris Blues advertisements, which were highly visible in 1998 (various Steve

14  Madden advertisements also served as a key inspiration for Mattel's own "Toon

15  Teens" dolls); Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and Barbie

16  dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little Miss No

17  Name; Hello Kitty; Coca-Cola advertisements; anime, including, e.g., Sailor Moon;

18  and manga.

19        Once all of the materials that directly or indirectly influenced Bryant

20  and all "scène-à-faire" features are eliminated from the analysis, the first generation

21  Bratz dolls (and all subsequent Bratz products) are readily seen as not substantially

22  similar to Carter Bryant's 1998 drawings.  The differences between the drawings and

23  the first generation Bratz dolls include, but are not limited to, the following:

24      • Posture

25      • Hip-to-waist ratio

26      • Feet size (dolls' feet are not as exaggerated as characters' feet in

27        the drawings)

28      • Head size (dolls' heads are proportionally smaller than

EXHIBIT __110__

PAGE __1701__

characters' heads in the drawings)

- Eyes (dolls' eyes are more open than characters' eyes in the drawings)
- Eye to lips ratio (lips of characters in drawings are proportionally larger relative to eyes than are lips of dolls)
- Hair (characters in drawings have much edgier hairstyles than the dolls do)
- Shapes of eyes and eye design
- Shapes of lips
- Overall look and feel (dolls are overall softer, less extreme than drawings)

That the dolls and the drawings are not substantially similar also is consistent with the fact that Carter Bryant was not a sculptor, and, as discussed above, any effort to translate his pre-1999 two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt would have produced shapes that were different from the actual shape of the final three-dimensional Bratz sculpt used in manufacturing the first generation of Bratz dolls released on the market by MGA in or about June 2001. Indeed, a team of highly-skilled artists (including several that had been used by Mattel) spent months developing the Bratz first-generation dolls—valuable time and original creative effort that would not have been necessary if said first-generation Bratz dolls were simply a copy of Bryant's designs.

The absence of substantial similarity is further shown in the close correlation between Bryant's drawings and the inspiration he points to, including but not limited to the Steve Madden and Paris Blues advertisements in the August 1998 issue of *Seventeen Magazine*, as well as other advertisements in that issue, such as the Coca Cola advertisement.

Mattel's own My Scene Barbie line of dolls provides further proof that the first generation of Bratz dolls was not substantially similar to the Bryant

18

EXHIBIT ____1/0
PAGE ____1762

1 | drawings, in that (i) Mattel asserts that the My Scene Barbie dolls are independent
2 | works of art, not copied from Bratz, yet (ii) said dolls are far closer in appearance to
3 | Bratz dolls than are Bryant's two-dimensional drawings.

4 |       Additional details regarding such differences will be the subject of
5 | expert disclosures and will be provided in accordance with the Court's schedule for
6 | expert discovery.

7 |       With respect to any Carter Bryant contribution to the first generation
8 | Bratz product after October 4, 2000 and before October 21, 2000, i.e., during a
9 | period that he was performing such services for MGA pursuant to a freelance
10 | contract while completing a two-week end-of-employment notice period at Mattel,
11 | Larian notes that any such contribution was far outweighed by the original and/or
12 | creative input of other artists working for or on behalf of MGA on the Bratz concept,
13 | which was owned by MGA as a consequence of the October 4, 2000 transfer of
14 | rights from Bryant to MGA.

15 |       With respect to Bratz two-dimensional character art utilized on, for
16 | example, Bratz product packaging and licensed products, while the initial Bratz
17 | character art was derivative of Bryant's initial sketches from 1998, by no later than
18 | August, 2003, the Bratz character art had changed sufficiently such that it was no
19 | longer derivative of Bryant's sketches.

20 |       The following persons have knowledge of facts and circumstances
21 | surrounding the foregoing: Isaac Larian; Carter Bryant; Margaret Leahy; Veronica
22 | Marlow; Mercedeh Ward; Sarah Halpern; Paula Garcia; Steve Tarmichael; Rebecca
23 | Harris; Tina Tomiyama; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong;
24 | Lily Martinez; Ei Akiko Fong; John Steven Baulch; Aileen Storer; Debora
25 | Middleton; Ronan Spelman; Charlotte Broussard.

26 |       The following documents may be relevant to the foregoing:  all
27 | DOCUMENTS that refer to or evidence the work performed by MGA employees
28 | and freelancers toward the reduction to practice of the first generation of Bratz dolls

19

EXHIBIT _____ 11 U

PAGE _____ 1703

1 | during the period after October 20, 2000 through June 1, 2001, including but not
2 | limited to:  Carter Bryant's drawings; documents and tangible things produced by
3 | Margaret Leahy; tangible things produced by Veronica Marlow; invoices submitted
4 | by employees and/or freelance artists working for MGA for work performed on the
5 | Bratz project; all DOCUMENTS that constitute samples of the following items in the
6 | public domain in 1998: Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and
7 | Barbie dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little
8 | Miss No Name; Hello Kitty; anime, including, e.g., Sailor Moon; manga; Coca-Cola
9 | advertisements; Steve Madden advertisements; and Paris Blues advertisements;
10 | Bratz prototypes, samples, sculpts, and rotocasts found in Hong Kong and produced
11 | to Mattel.  The documents evidencing this work are too numerous to identify
12 | individually.

**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 42:**

Larian incorporates by reference his General Response and General
Objections above, as though fully set forth herein and specifically incorporates General
Objection No. 7 (regarding Definitions), including without limitation Larian's objection to
the definition of the terms BASED ON, BRATZ DOLLS, BRATZ, DESIGN, IDENTIFY
and REFER OR RELATE TO, and further objects to this interrogatory on the ground that it
is overbroad, unduly burdensome, vague and ambiguous.

Larian also objects to this interrogatory to the extent it seeks information that
is not subject to disclosure under any applicable privilege, doctrine or immunity, including
without limitation the attorney-client privilege, the work product doctrine, the right of
privacy, and all other privileges recognized under the constitutional, statutory or decisional
law of the United States of America, the State of California or any other applicable
jurisdiction. Larian objects to this interrogatory to the extent it calls for a legal conclusion.

Larian further objects to this interrogatory on the ground that it is
premature because the invention, creation, conception, or reduction to practice of
Bratz (and other legal concepts that may be relevant) will be the subject of expert

20

EXHIBIT _____ 11 U

PAGE _____ 1704

1  testimony at trial. Larian objects to this interrogatory to the extent it seeks to limit

2  the expert testimony that Larian may seek to introduce at trial. Larian will identify

3  his experts and make related disclosures in accordance with the Court's orders and

4  applicable rules.

5        Larian further objects to this interrogatory on the grounds that it seeks

6  information that is not relevant to the claims or defenses of any party to the action

7  and is not reasonably calculated to lead to the discovery of admissible evidence

8  because the INVENTIONS AGREEMENT executed by Carter Bryant in or around

9  January 1999, purports to state that any inventions conceived or reduced to practice

10 by him during his employment with Mattel would be owned by Mattel. The

11 references to the conception and reduction to practice of an invention are terms of art

12 in patent law. Accordingly, copyright law principles of substantial similarity,

13 copying, and derivative works are not relevant to the INVENTIONS AGREEMENT

14 which, by its terms, involves only principles of patent law.

15        Larian further objects on the ground that this interrogatory is an

16 overbroad and unduly burdensome contention interrogatory to the extent it asks for

17 "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*

18 *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (CD. Cal. 1998) (rejecting discovery

19 requests seeking "all facts, documents, and witnesses that support the denial of a

20 statement or allegation of fact" because the "universe of potentially responsive

21 information is almost endless").

22        Larian further objects to the extent that this interrogatory seeks

23 information that is outside Larian's knowledge and is not in Larian's possession,

24 custody, or control. In particular, Larian objects to this interrogatory to the extent

25 that it requests that Larian "state *all* facts ... and IDENTIFY *all* PERSONS ... and *all*

26 DOCUMENTS" (emphasis added).

27        Larian objects to the interrogatory on the ground that it is compound

28 and therefore Mattel has propounded more than 50 interrogatories, including discrete

21

EXHIBIT ___11 U

PAGE ___ 1765

1  subparts, in violation of Judge Larson's order of February 22, 2007, that

2  "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-

3  SGL and CV 05-02727]." In its supplemental response to this interrogatory, Larian

4  did not refuse to answer the interrogatory based on the 50-interrogatory limit, but

5  rather refused to use the compound and misleading defined terms that permeate

6  Mattel's interrogatories. The interrogatories attempt to use misleading and unfair

7  definitions to create jury confusion or to circumvent the 50-interrogatory limit. For

8  example, Mattel's definition of "BRATZ INVENTION" contains ten separate

9  component parts ("representation, idea, concept, work, process, procedure, plan,

10 improvement, DESIGN or other development"). The incorporation of the defined

11 term "DESIGN" adds at least another 21 elements ("all works, designs, artwork,

12 sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

13 diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

14 practice, developments, inventions and/or improvements"). The inclusion of these

15 disparate concepts in the term "invention" improperly conflates distinct issues of

16 patent law, copyright protection, trade secret law and the common law protecting

17 original ideas, many of which have no place in the ordinary usage of the term

18 "invention." In its previous supplemental responses, Larian used the word

19 "invention" in its ordinary usage, and does so again in these third supplemental

20 responses. During the meet and confer process regarding Larian's supplemental

21 responses, Mattel's counsel objected to Larian's responses, and argued that Larian

22 must either use Mattel's distorted definitions or respond to each of the many

23 component parts of Mattel's defined terms. As was made clear during the meet and

24 confer process and as more fully set forth in MGA's Opposition to Mattel, Inc.'s

25 Motion To Compel Responses To Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 34,

26 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 47, 48, 49 and 50) By The MGA Parties,

27 Larian objects to this interrogatory as compound and a violation of the 50-

28 interrogatory limit to the extent that Mattel continues to assert that Larian is required

EXHIBIT ___ //ᴏ

PAGE ___ 1766

1   to respond to each component part of Mattel's defined terms.

2         Subject to and without waiving the foregoing objections, Larian

3   provides his Third Supplemental Response as follows:

4         Larian contends that, applying the generally-accepted definitions of the

5   words "based on" and "design", neither the first generation of Bratz dolls nor any

6   subsequent Bratz products were based on any Carter Bryant designs created on or

7   before October 19, 2000. Larian further contends that even if Larian applies Mattel's

8   misleading definitions of "BASED ON" and "DESIGN," neither the first generation

9   of Bratz dolls nor any of the subsequent Bratz products were "BASED ON" any

10   Carter Bryant "DESIGNS" created on or before October 19, 2000. Larian further

11   contends that the first generation of Bratz dolls (and subsequent Bratz products) were

12   "conceived of" and "reduced to practice" for purposes of design patent law, and first

13   expressed in a tangible medium for purposes of copyright law, after October 20,

14   2000, as a result of original, creative efforts of artists employed by, or working on

15   behalf of, MGA. All first-generation Bratz dolls and subsequent Bratz products are

16   not substantially similar to, are not a copy of, and are not derivative of, any Carter

17   Bryant designs completed on or before October 19, 2000.

18         To the extent that Mattel argues that the shapes of characters in Carter

19   Bryant's drawings that he called "Bratz" (including, but not limited to, those

20   drawings identified by Carter Bryant in Exhibit 5 of his deposition as being sketched

21   in August 1998) represented a conception of what could have later become a three-

22   dimensional object that could have been the subject of a design patent, Larian

23   contends as follows:

24         Carter Bryant was not a sculptor, and any effort to translate his pre-1999

25   two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt

26   would have produced shapes that were different from the actual shape of the final

27   three-dimensional Bratz sculpt used in manufacturing the first generation of Bratz

28   dolls released on the market by MGA in or about June 2001. Also, different sculpt

EXHIBIT _____ 42

PAGE _____ 1767

1  artists would have created different sculpts – Bryant's two-dimensional drawings did
2  not dictate a specific three-dimensional object.  The shapes of the characters in
3  Bryant's drawings bear little resemblance to the final shape of the actual Bratz dolls.
4  Differences between the drawings and the final shape of the actual Bratz dolls
5  include, but are not limited to, the following:  posture; hip-to-waist ratio; feet size
6  (dolls' feet are not as exaggerated as characters' feet in the drawings); head size
7  (dolls' heads are proportionally smaller than characters' heads in the drawings); eyes
8  (dolls' eyes are more open than characters' eyes in the drawings); removable hair (a
9  feature present only in the drawings); other facial features including lips, cheek
10  bones, chin and forehead.

11        Moreover, the final physical shape of the first generation of Bratz dolls,
12  released on the market by MGA in or about June 2001, was conceived of by
13  Margaret Leahy, working on behalf of MGA, along with other MGA agents and
14  employees such as employees in Hong Kong and Mercedeh Ward.  The conception
15  of this physical shape was completed on or after October 20, 2000, and reduced to
16  practice no earlier than December 19, 2000.

17        Copyright infringement analysis under Ninth Circuit law requires that
18  "objective" or "extrinsic" elements that are "scènes-à-faire" in the public domain, or
19  public domain materials that Bryant was aware of and that directly or indirectly
20  influenced him in developing his concept for a new line of fashion dolls, be filtered
21  out of the subject works, and, thereafter, that the remaining "subjective" or
22  "intrinsic" elements be evaluated for substantial similarity.  Carter Bryant's 1998
23  drawings contain many elements that must be filtered out, including but not limited
24  to the oversized head, eyes, lips, and feet of the figures in Bryant's drawings and the
25  stock model and/or doll poses.  A non-exhaustive list of examples of prior existing
26  works that incorporate such elements includes the following:  sources of inspiration
27  specifically identified by Carter Bryant, including Steve Madden advertisements and
28  Paris Blues advertisements, which were highly visible in 1998 (various Steve

24

EXHIBIT _____ 11 U

PAGE _____ 1768

1  Madden advertisements also served as a key inspiration for Mattel's own "Toon

2  Teens" dolls); Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and Barbie

3  dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little Miss No

4  Name; Hello Kitty; Coca-Cola advertisements; anime, including, e.g., Sailor Moon;

5  and manga.

6           Once all of the materials that directly or indirectly influenced Bryant

7  and all "scène-à-faire" features are eliminated from the analysis, the first generation

8  Bratz dolls (and all subsequent Bratz products) are readily seen as not substantially

9  similar to Carter Bryant's 1998 drawings.  The differences between the drawings and

10 the first generation Bratz dolls include, but are not limited to, the following:

11         • Posture

12         • Hip-to-waist ratio

13         • Feet size (dolls' feet are not as exaggerated as characters' feet in

14           the drawings)

15         • Head size (dolls' heads are proportionally smaller than

16           characters' heads in the drawings)

17         • Eyes (dolls' eyes are more open than characters' eyes in the

18           drawings)

19         • Eye to lips ratio (lips of characters in drawings are proportionally

20           larger relative to eyes than are lips of dolls)

21         • Hair (characters in drawings have much edgier hairstyles than the

22           dolls do; unlike the drawings, the dolls' hair is not removable)

23         • Shapes of eyes and eye design

24         • Shapes of lips

25         • Overall look and feel (dolls are overall softer, less extreme than

26           drawings)

27         That the dolls and the drawings are not substantially similar also is

28 consistent with the fact that Carter Bryant was not a sculptor, and, as discussed

25

LARIAN'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT ___ *//U*

PAGE ___ *1769*

1   above, any effort to translate his pre-1999 two-dimensional flat art into a three-

2   dimensional form for use as a fashion doll sculpt would have produced shapes that

3   were different from the actual shape of the final three-dimensional Bratz sculpt used

4   in manufacturing the first generation of Bratz dolls released on the market by MGA

5   in or about June 2001.  Indeed, a team of highly-skilled artists (including several that

6   had been used by Mattel and other toy companies in the past) spent months

7   developing the Bratz first-generation dolls—valuable time and original creative

8   effort that would not have been necessary if said first-generation Bratz dolls were

9   simply a copy of Bryant's designs.

10         The absence of substantial similarity is further shown in the close

11   correlation between Bryant's drawings and the inspiration he points to, including but

12   not limited to the Steve Madden and Paris Blues advertisements in the August 1998

13   issue of *Seventeen Magazine*, as well as other advertisements in that issue, such as

14   the Coca Cola advertisement.

15         Mattel's own My Scene Barbie line of dolls provides further proof that

16   the first generation of Bratz dolls was not substantially similar to the Bryant

17   drawings, in that (i) Mattel asserts that the My Scene Barbie dolls are independent

18   works of art, not copied from Bratz, yet (ii) said dolls are far closer in appearance to

19   Bratz dolls than are Bryant's two-dimensional drawings.

20         Additional details regarding such differences will be the subject of

21   expert disclosures and will be provided in accordance with the Court's schedule for

22   expert discovery.

23         With respect to any Carter Bryant contribution to the first generation

24   Bratz product after October 4, 2000 and before October 21, 2000, i.e., during a

25   period that he was performing such services for MGA pursuant to a freelance

26   contract while completing a two-week end-of-employment notice period at Mattel,

27   Larian notes that any such contribution was far outweighed by the original and/or

28   creative input of other artists working for or on behalf of MGA on the Bratz concept,

EXHIBIT __11 O__

PAGE __1770__

1 which was owned by MGA as a consequence of the October 4, 2000 transfer of
2 rights from Bryant to MGA.
3          With respect to Bratz two-dimensional character art utilized on, for
4 example, Bratz product packaging and licensed products, while the initial Bratz
5 character art was derivative of Bryant's initial sketches from 1998, by no later than
6 August 2003, the Bratz character art had changed sufficiently such that it was no
7 longer derivative of Bryant's sketches.
8          The following persons have knowledge of facts and circumstances
9 surrounding the foregoing: Isaac Larian; Carter Bryant; Margaret Leahy; Veronica
10 Marlow; Mercedeh Ward; Sarah Halpern; Paula Garcia; Steve Tarmichael; Rebecca
11 Harris; Tina Tomiyama; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong;
12 Lily Martinez; Ei Akiko Fong; John Steven Baulch; Aileen Storer; Debora
13 Middleton; Ronan Spelman; Charlotte Broussard; Cassidy Park; Katherine Dumas;
14 Michelle McShane; Ivy Ross.
15          The following documents may be relevant to the foregoing:  all
16 DOCUMENTS that refer to or evidence the work performed by MGA employees
17 and freelancers toward the reduction to practice of the first generation of Bratz dolls
18 during the period after October 20, 2000 through June 1, 2001, including but not
19 limited to:  Carter Bryant's drawings; documents and tangible things produced by
20 Margaret Leahy; tangible things produced by Veronica Marlow; invoices submitted
21 by employees and/or freelance artists working for MGA for work performed on the
22 Bratz project; all DOCUMENTS that constitute samples of the following items in the
23 public domain in 1998: Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and
24 Barbie dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little
25 Miss No Name; Hello Kitty; anime, including, e.g., Sailor Moon; manga; Coca-Cola
26 advertisements; Steve Madden advertisements; and Paris Blues advertisements;
27 Bratz prototypes, samples, sculpts, and rotocasts found in Hong Kong and produced
28 to Mattel.  The documents evidencing this work are too numerous to identify

27

EXHIBIT __10__

PAGE __1711__

1 individually.

2 **INTERROGATORY NO. 43:**

3       For each concept, design, product, product packaging or other matter

4 that YOU contend MATTEL copied or infringed, including but not limited to those

5 identified in MGA's Responses To Mattel, Inc.'s First Set Of Interrogatories Re

6 Claims Of Unfair Competition, Response To Interrogatory No. 2 (and any

7 Supplemental Responses to such Interrogatory), state the date that each such concept,

8 design, product, product packaging or other matter was conceived, and IDENTIFY

9 all PERSONS with knowledge of, and all DOCUMENTS that REFER OR RELATE

10 TO, the foregoing.

11 **RESPONSE TO INTERROGATORY NO. 43:**

12       Larian incorporates by reference his General Response and General

13 Objections above, as though fully set forth herein and specifically incorporates

14 General Objection No. 7 (regarding Definitions), including without limitation its

15 objections to the terms IDENTIFY and REFER OR RELATE.

16       Larian also objects to this interrogatory to the extent it seeks

17 information that is not subject to disclosure under any applicable privilege, doctrine

18 or immunity, including without limitation the attorney-client privilege, the work

19 product doctrine, the right of privacy, and all other privileges recognized under the

20 constitutional, statutory or decisional law of the United States of America, the State

21 of California or any other applicable jurisdiction. Larian further objects to the

22 interrogatory to the extent it calls for a legal conclusion.

23       Larian also objects to this interrogatory on the ground that it is

24 premature because the invention, creation, conception, or reduction to practice of

25 Bratz (and related issues) will be the subject of expert testimony at trial. Larian

26 objects to this interrogatory to the extent it seeks to limit the expert testimony that

27 Larian may seek to introduce at trial. Larian will identify his experts and make

28 related disclosures in accordance with the Court's orders and applicable rules.

28

EXHIBIT ___11𝒰___

PAGE ___1772___

1    Larian further objects to this interrogatory to the extent that it seeks
2 information that is not relevant to the claims or defenses of any party to this action
3 and is not reasonably calculated to lead to the discovery of admissible evidence; the
4 term "conceived" is not a legal term of art that is relevant to Larian's affirmative
5 claims for false designation of origin, affiliation, association or sponsorship, unfair
6 competition, dilution, and unjust enrichment.

7    Larian further objects to the extent that this interrogatory seeks
8 information that is outside Larian's knowledge and is not in Larian's possession,
9 custody, or control. In particular, Larian objects to this interrogatory to the extent
10 that it requests that Larian "IDENTIFY *all* PERSONS... and *all* DOCUMENTS"
11 (emphasis added).

12    Larian further objects to this interrogatory because Mattel has
13 propounded more than 50 interrogatories. Under Judge Larson's order of February,
14 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-
15 04049-SGL and CV 05-02727]."

16    Subject to and without waiving the foregoing objections, Larian
17 responds as follows:  Larian is willing to meet and confer with Mattel regarding this
18 interrogatory and the obligation of Mattel to supplement its responses to MGA's First
19 Set of Interrogatories.

20 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 43:**

21    Larian incorporates by reference his General Response and General
22 Objections above, as though fully set forth herein and specifically incorporates
23 General Objection No. 7 (regarding Definitions), including without limitation its
24 objections to the terms IDENTIFY and REFER OR RELATE.

25    Larian also objects to this interrogatory to the extent it seeks
26 information that is not subject to disclosure under any applicable privilege, doctrine
27 or immunity, including without limitation the attorney-client privilege, the work
28 product doctrine, the right of privacy, and all other privileges recognized under the

29

1  constitutional, statutory or decisional law of the United States of America, the State
2  of California or any other applicable jurisdiction. Larian further objects to the
3  interrogatory to the extent it calls for a legal conclusion.

4       Larian also objects to this interrogatory on the ground that it is
5  premature because the invention, creation, conception, or reduction to practice of
6  Bratz (and related issues) will be the subject of expert testimony at trial. Larian
7  objects to this interrogatory to the extent it seeks to limit the expert testimony that
8  Larian may seek to introduce at trial. Larian will identify his experts and make
9  related disclosures in accordance with the Court's orders and applicable rules.

10      Larian further objects to this interrogatory to the extent that it seeks
11 information that is not relevant to the claims or defenses of any party to this action
12 and is not reasonably calculated to lead to the discovery of admissible evidence; the
13 term "conceived" is not a legal term of art that is relevant to Larian's affirmative
14 claims for false designation of origin, affiliation, association or sponsorship, unfair
15 competition, dilution, and unjust enrichment.

16      Larian further objects to the extent that this interrogatory seeks
17 information that is outside Larian's knowledge and is not in Larian's possession,
18 custody, or control. In particular, Larian objects to this interrogatory to the extent
19 that it requests that Larian "IDENTIFY *all* PERSONS...and *all* DOCUMENTS"
20 (emphasis added).

21      Subject to and without waiving the foregoing objections, Larian
22 responds as follows:

23      The interrogatory appears to be directed to other parties. Larian does not
24 assert claims of copying or infringement against Mattel. MGA will respond to this
25 interrogatory.

26 **INTERROGATORY NO. 44:**

27      For each concept, design, product, product packaging or other matter
28 that YOU contend MATTEL copied or infringed, including but not limited to those

30

EXHIBIT _____ 1 ( )

PAGE _____ 1774

1  identified in MGA's Responses To Mattel, Inc.'s First Set Of Interrogatories Re

2  Claims Of Unfair Competition, Response To Interrogatory No. 2 (and any

3  Supplemental Responses to such Interrogatory), state the date that each such concept,

4  design, product, product packaging or other matter was first fixed in any tangible

5  medium of expression (if ever), and IDENTIFY all PERSONS with knowledge of,

6  and all DOCUMENTS that REFER OR RELATE TO, the foregoing.

7  **RESPONSE TO INTERROGATORY NO. 44:**

8        Larian incorporates by reference his General Response and General

9  Objections above, as though fully set forth herein and specifically incorporates

10  General Objection No. 7 (regarding Definitions), including without limitation its

11  objections to the terms IDENTIFY and REFER OR RELATE. Larian also objects to

12  this interrogatory to the extent it seeks information that is not subject to disclosure

13  under any applicable privilege, doctrine or immunity, including without limitation

14  the attorney-client privilege, the work product doctrine, the right of privacy, and all

15  other privileges recognized under the constitutional, statutory or decisional law of

16  the United States of America, the State of California or any other applicable

17  jurisdiction. Larian also objects to this interrogatory to the extent that it calls for a

18  legal conclusion.

19        Larian also objects to this interrogatory on the ground that it is

20  premature because the invention, creation, conception, or reduction to practice of

21  Bratz (and related issues) will be the subject of expert testimony at trial. Larian

22  objects to this interrogatory to the extent it seeks to limit the expert testimony that

23  Larian may seek to introduce at trial. Larian will identify his experts and make

24  related disclosures in accordance with the Court's orders and applicable rules.

25        Larian further objects to this interrogatory to the extent that it seeks

26  information that is not relevant to the claims or defenses of any party to this action

27  and not reasonably calculated to lead to the discovery of admissible evidence

28  because the phrase "fixed in a tangible medium of expression" is a legal term of art

31

EXHIBIT ___110___

PAGE ___1775___

1  that does not have relevance to Larian's affirmative claims, which are for false

2  designation of origin, affiliation, association or sponsorship, unfair competition,

3  dilution, and unjust enrichment.

4          Larian further objects to the extent that this interrogatory seeks

5  information that is outside Larian's knowledge and is not in Larian's possession,

6  custody, or control. In particular, Larian objects to this interrogatory to the extent

7  that it requests that Larian "IDENTIFY *all* PERSONS... and *all* DOCUMENTS"

8  (emphasis added).

9          Larian further objects to this interrogatory because Mattel has

10  propounded more than 50 interrogatories. Under Judge Larson's order of February

11  22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

12  04049-SGL and CV 05-02727]."

13          Subject to and without waiving the foregoing objections, Larian

14  responds as follows: Larian is willing to meet and confer with Mattel regarding this

15  interrogatory and the obligation of Mattel to supplement its responses to MGA's First

16  Set of Interrogatories.

17  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 44:**

18          Larian incorporates by reference his General Response and General

19  Objections above, as though fully set forth herein and specifically incorporates

20  General Objection No. 7 (regarding Definitions), including without limitation its

21  objections to the terms IDENTIFY and REFER OR RELATE. Larian also objects to

22  this interrogatory to the extent it seeks information that is not subject to disclosure

23  under any applicable privilege, doctrine or immunity, including without limitation

24  the attorney-client privilege, the work product doctrine, the right of privacy, and all

25  other privileges recognized under the constitutional, statutory or decisional law of

26  the United States of America, the State of California or any other applicable

27  jurisdiction. Larian also objects to this interrogatory to the extent that it calls for a

28  legal conclusion.

LARIAN'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT ___10___

PAGE ___176___

1         Larian also objects to this interrogatory on the ground that it is
2 premature because the invention, creation, conception, or reduction to practice of
3 Bratz (and related issues) will be the subject of expert testimony at trial. Larian
4 objects to this interrogatory to the extent it seeks to limit the expert testimony that
5 Larian may seek to introduce at trial. Larian will identify his experts and make
6 related disclosures in accordance with the Court's orders and applicable rules.

7         Larian further objects to this interrogatory to the extent that it seeks
8 information that is not relevant to the claims or defenses of any party to this action
9 and not reasonably calculated to lead to the discovery of admissible evidence
10 because the phrase "fixed in a tangible medium of expression" is a legal term of art
11 that does not have relevance to Larian's affirmative claims, which are for false
12 designation of origin, affiliation, association or sponsorship, unfair competition,
13 dilution, and unjust enrichment.

14         Larian further objects to the extent that this interrogatory seeks
15 information that is outside Larian's knowledge and is not in Larian's possession,
16 custody, or control. In particular, Larian objects to this interrogatory to the extent
17 that it requests that Larian "IDENTIFY *all* PERSONS...and *all* DOCUMENTS"
18 (emphasis added).

19         Subject to and without waiving the foregoing objections, Larian
20 responds as follows:

21         The interrogatory appears to be directed to other parties. Larian does not
22 assert claims of copying or infringement against Mattel. MGA will respond to this
23 interrogatory.

24
25
26
27
28

LARIAN'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT _____ 110

PAGE _____ 1777

1  DATED:  January 28, 2008

2

3                                    SKADDEN, ARPS, SLATE, MEAGHER &
                                     FLOM LLP
4

5                                    By: _____
                                            Timothy A. Miller
6                                    Attorneys for Counter-Defendants, MGA
                                     ENTERTAINMENT, INC., ISAAC LARIAN,
7                                    MGA ENTERTAINMENT (HK) LTD., and
                                     MGAE de MEXICO S.R.L.de C.V.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LARIAN'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES
203369-San Francisco Server 1A - MSW

EXHIBIT  110

PAGE  1178

## **VERIFICATION**

I, Isaac Larian, declare:

I have read ISAAC LARIAN'S THIRD SUPPLEMENTAL RESPONSES TO MATTEL INC.'S AMENDED FOURTH SET OF INTERROGATORIES (including the supplemental, second supplemental and third supplemental responses) and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Van Nuys, California on this 28 day of January, 2008.

1

EXHIBIT ___11U___

PAGE ___1779___

**EXHIBIT   111**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES-GENERAL

_____ Priority
_____ Send
_____ Clsd
_____ Enter
_____ JS-5/JS-6
_____ JS-2/JS-3

CV04-09059-NM(RNBx)
CASE NO. CV05-02727-NM(RNBx)      DATE:  5/20/05

TITLE:  Mattel Inc. -v- Carter Bryant, et al
        MGA Entertainment Inc. -v- Mattel, Inc.

PRESENT:            HON. NORA M. MANELLA, JUDGE

Judith Hurley              N/A
Deputy Clerk               Court Reporter

ATTORNEY FOR PLAINTIFF        ATTORNEY  FOR DEFENDANT

    N/A                          N/A

PROCEEDINGS:  IN CHAMBERS

    Now that the Ninth Circuit has granted Mattel's petition for permission to file
an interlocutory appeal, all discovery in these actions is stayed pending the
determination of the appeal.  The stay of discovery also applies to pending &
prospective discovery motions.

DOCKETED ON CM

MAY 20 2005

BY _____

cc: Counsel
CIVIL MINUTES 11

Initials of Deputy Clerk _____

EXHIBIT ____ 111 ____

PAGE ____ 1786 ____

REDACTED

EXHIBIT \_\_\_\_ 111 \_\_\_\_

PAGE \_\_\_\_ 1781 \_\_\_\_

**EXHIBIT   112**

Righ tFAX          5  7/2006 2:28    PAGE 002/002   Fax Server

# PRIORITY SEND

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
### CIVIL MINUTES -- GENERAL

Case No.    CV 05-02727 SGL(RNBx)                    Date: May 16, 2006

Title: ·   MGA ENTERTAINMENT, INC. -v- MATTEL, INC.
===========================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                            None Present
        Courtroom Deputy                      Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

None present                          None present

PROCEEDINGS:    MINUTE ORDER (IN CHAMBERS)

      This matter is before the Court on its own motion.  The Court orders the parties to show
cause why this action should not be consolidated for all purposes with the two related actions:
Bryant v. Mattel, Inc., CV 04-09049 SGL (RNBx); Mattel, Inc. v. Bryant, CV 04-09059 SGL (RNBx).
The parties' briefs re consolidation must be filed no later than June 5, 2006.  The Court will
address the matter at the hearing on the motions set in the related cases on June 26, 2006.

      The Court's stay order, entered May 20, 2005, is vacated.

      IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN                          1          Initials of Deputy Clerk   jh

                                                EXHIBIT 112
                                                PAGE 1782

**EXHIBIT   113**

1   DALE M. CENDALI (admitted *pro hac vice*)
    O'MELVENY & MYERS LLP
2   400 South Hope Street
    Los Angeles, CA 90071-2899
3   Telephone:  (213) 430-6000
    Facsimile:   (213) 430-6407
4   Email:     jjenal@omm.com

5   PATRICIA GLASER (S.B. # 55668)
    CHRISTENSEN, GLASER, FINK,
6   JACOBS, WEIL & SHAPIRO, LLP
    10250 Constellation Boulevard, 19th Floor
7   Los Angeles, CA 90067
    Telephone:  (310) 553-3000
8   Facsimile:   (310) 557-9815

9   Attorneys for MGA Entertainment, Inc.

10  JOHN KECKER
    KECKER & VAN NEST, LLP
11  710 Sansome Street
    San Francisco, CA 94111
12  Telephone:  (415) 391-5400
    Facsimile:   (415) 397-7188
13
14  Attorneys for Carter Bryant

    UNITED STATES DISTRICT COURT
15
    CENTRAL DISTRICT OF CALIFORNIA
16
17

18  CARTER BRYANT, an individual,          Case No. CV 04-09049 SGL (RNBx)
                                           (consolidated with CV 04-9059 & 05-
19              Plaintiff,                  2727)

20       v.                                **MGA ENTERTAINMENT, INC.'S
                                           NOTICE OF MOTION FOR
21  MATTEL, INC., a Delaware              TERMINATING SANCTIONS
    Corporation,                          AGAINST MATTEL, INC. DUE TO
22                                         SPOLIATION OF EVIDENCE; AND**
                Defendant.
23                                         **[PROPOSED] ORDER**

24                                         Hearing Date: August 13, 2007
                                           Time: 10:00 a.m.
25                                         Place: Courtroom 1

26                                         Discovery Cutoff: January 14, 2008
    AND CONSOLIDATED ACTIONS              Pre-trial Conference: April 7, 2008
27                                         Trial Date: April 29, 2008

28

                                       MGA'S NOTICE OF MTN FOR
                                   TERMINATING SANCTIONS DUE TO
                               SPOLIATION CV 04-09049 SGL (RNBX)

                               **EXHIBIT        113**

                               PAGE        1783

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that, on August 13, 2007, at 10:00 a.m.

3  before Hon. Stephen G. Larson, MGA Entertainment, Inc. ("MGA") and Carter

4  Bryant ("Bryant") jointly will, and hereby do, move the Court to issue an order for

5  terminating sanctions against Mattel, Inc. ("Mattel") due to Mattel's spoliation of

6  evidence.

7        This Motion is made on the grounds that Mattel has engaged in a

8  conscious and systematic effort to destroy evidence relevant to its claims against

9  MGA and Mr. Bryant, and then deliberately sought to conceal its efforts. Mattel's

10  conduct is in plain violation of its legal obligations, is highly prejudicial, and

11  warrants terminating sanctions.

12        This Motion is based on this Notice of Motion, the accompanying

13  Memorandum of Points and Authorities, the Declaration of Michael Keats filed

14  concurrently herewith and attached exhibits, the Declaration of Kendall J. Burr filed

15  concurrently herewith and attached exhibits, the Declaration of James P. Jenal filed

16  concurrently herewith and attached exhibits, the Declaration of Yvonne L. Garcia

17  filed concurrently herewith and attached exhibits, the record and files of this Court,

18  and all other matters of which the Court may take judicial notice.

19

20     Dated:     July 23 , 2007    MICHAEL KEATS

21                           O'MELVENY & MYERS LLP

22

23                       By: _Michael Keats_

24                         Michael Keats
                        Attorneys for MGA Entertainment, Inc.

25

26

27

28

MGA'S NOTICE OF MTN FOR
TERMINATING SANCTIONS DUE TO
SPOLIATION CV 04-09049 SGL (RNBX)

EXHIBIT ___113___

PAGE ___1784___

1

## [PROPOSED] ORDER

2

   Based on the above Application, and good cause appearing for the

3

entry thereof, IT IS HEREBY ORDERED that each of the following actions:

4

   1. Case No. CV 04-9059 SGL (RNBx); and

5

   2. Mattel's Counterclaims in Case No. CV 05-2727 SGL (RNBx)

6

are hereby dismissed with prejudice.

7

8

DATED: _____    _____

9

           Hon. Stephen G. Larson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

MGA'S NOTICE OF MTN FOR
TERMINATING SANCTIONS DUE TO
SPOLIATION CV 04-09049 SGL (RNBX)

EXHIBIT _____ 113

PAGE _____ 1785

**EXHIBIT   114**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   115**



(Folio 1)

**HCA 3856/2003**

IN THE HIGH COURT OF THE
HONG KONG SPECIAL ADMINISTRATIVE REGION
COURT OF FIRST INSTANCE
CIVIL ACTION NO. *3856* OF 2003

HIGH COURT ACC. OFFICE

Saved by   FEESPAID

FC2                    1045
CHEQUE          1045.(
OCT16 '03&001A0101 16:01R
                        FEESPA

*******************************

BETWEEN:-

**MGA ENTERTAINMENT INC.**                        Plaintiff

and

**UNI-FORTUNE TOYS INDUSTRIAL LIMITED**       1st  **Defendant**
**FU WEI TOYS COMPANY LIMITED**                2nd  **Defendant**

*******************************

To the 1st Defendant **UNI-FORTUNE TOYS INDUSTRIAL LIMITED** whose registered office is situate at Flat A-B, 21st Floor, Cheung Hing Shing Centre, 23 Sha Tsui Road, Tsuen Wan, New Territories, Hong Kong

And to the 2nd Defendant **FU WEI TOYS COMPANY LIMITED** whose registered office situate at Flat A-B, 21st Floor, Cheung Hing Shing Centre, 23 Sha Tsui Road, Tsuen Wan, New Territories, Hong Kong

**THIS WRIT OF SUMMONS** has been issued against you by the above-named Plaintiff in respect of the claim set out on the back.

Within 14 days after the service of this Writ on you, counting the day of service, you must either satisfy the claim or return to the Registry of High court the accompanying **ACKNOWLEDGEMENT OF SERVICE** stating therein whether you intend to contest these proceedings.

If you fail to satisfy the claim or to return the Acknowledgement within the time stated, or if you return the Acknowledgement without stating therein an intention to contest the proceedings, the Plaintiff(s) may proceed with the action and judgment may be entered against you forthwith without further notice.

Issued from the Registry of the High Court this 16th day of October 2003

Note:-    This Writ may not be served later than 12 calendar months beginning with that date unless renewed by order of the Court.

**IMPORTANT**
Directions for Acknowledgement of Service are given with the accompanying form.
S.C.549 (s)

C:\MAG\OHEA\P.copyright\WYF-1878-MGA\WHL.doc

M0012593

**DEPOSITION EXHIBIT**
3 2

EXHIBIT ___115___    (32)

PAGE ___1795___

### STATEMENT OF CLAIM

**(Please see attached)**

~~*(Where the Plaintiff's claim is for a debt or liquidated demand only: If, within the time for returning the Acknowledgment of Service, the Defendant pays the amount claimed and $1,550.00 for costs and, if the Plaintiff obtains an order for substituted service, the additional sum of $565.00, further proceedings will stayed. The money must be paid to the Plaintiff or his Solicitors.)~~

**THIS WRIT**   was issued by Messrs. William W. L. Fan & Co. of Room 507, 5th Floor, Hang Seng Building, 77 Des Voeux Road Central, Hong Kong, Solicitors for the Plaintiff MGA Entertainment Inc. whose principal place of business is situate at 16730 Schoenborn Street, North Hills, Ca 91343-6122, USA and c/o Room 1001, 10th Floor, Empire Centre, 68 Mody Road, Tsimshatsui East, Kowloon, Hong Kong.

C:\MAGGIE\IP\copyright\WF-1876-MGAWrit.doc

M0012594

EXHIBIT ___115___

PAGE ___1796___

## STATEMENT OF CLAIM

1. The Plaintiff is and at all material times a corporation existing under the laws of the U.S.A. carrying on business in the design, manufacture, marketing and selling of toys, in particular, fashion dolls.

2. The 1st and 2nd Defendants were and at all material times companies incorporated and existing under the laws of Hong Kong carrying on the business in the manufacture and marketing of toys. The shareholders, directors and registered office of 1st and 2nd Defendant are identical.

3. The Plaintiff is and at all material times, has been the owner of the copyright subsisting in original artistic works in respect of the Plaintiff's Bratz fashion dolls ("the said Artistic Works").

### Particulars of Original Artistic Works

(a) 18 design drawings of various Bratz fashion dolls made between the years 1998 and 2000.

(b) Wax models of the head, body and shoes of the Bratz fashion dolls made between the year 2000 and 2001.

C:\MAGGIE\IP\copyright\WP-1876-MGA\WRB.DOC

M0012595

EXHIBIT ___115___

PAGE ___1797___

(c) Silicon rubber moulds and polyurethane samples made therefrom of the Bratz fashion dolls made between the years 2000 and 2001.

(d) 4 drawings of the facial decoration of the Bratz fashion dolls made between the years 2000 and 2001.

(e) 8 drawings 4 of which are pantone colour guides of the facial decorations of the Bratz fashion dolls made between the years of 2000 and 2001.

(f) 4 hand painted deco-masters on 4 rubber head sculpts made between the years 2000 and 2001.

### Particulars of Ownership and Subsistence

(g) Carter Bryant (hereinafter referred to as "Mr. Bryant") was commissioned by the Plaintiff to make the design drawings referred to in sub-paragraphs (a) and (e) hereof. At all material times, it was the understanding and agreement between the Plaintiff and Mr. Bryant that copyright subsisting in the artistic works should vest in the Plaintiff. Pursuant thereto, a confirmatory assignment was made between the Plaintiff and Mr. Bryant in September 2000.

C:\MAGGIE\WP\copyright\WF-1978-MGA\WR.doc

M0012596

EXHIBIT __115__

PAGE ___1798___

(h) At all material times, Mr. Bryant is a resident of and domiciled in the U.S.A.

(i) Margaret Leahy (hereinunder referred to as "Ms. Leahy") was commissioned by the Plaintiff to make the artistic works referred to in subparagraph (b) hereof. At all material times, it was the understanding and agreement between the Plaintiff and Ms. Leahy that copyright subsisting in the artistic works should vest in the Plaintiff. Pursuant thereto, a confirmatory assignment was made between the Plaintiff and Ms. Leahy in June 2003.

(j) At all material times, Ms. Leahy is a resident of and domiciled in the USA.

(k) Jessie Ramirez (hereinunder referred to as "Ms. Ramirez") was commissioned by the Plaintiff to make the silicon rubber moulds and polyurethane samples referred in subparagraph (c) hereof. At all material times, it was the understanding and agreement between the Plaintiff and Ms. Ramirez that copyright subsisting in the artistic works should vest in the Plaintiff. Pursuant thereto, a confirmatory assignment was made between the Plaintiff and Ms. Ramirez on 16th June 2003.

(l) At all material times, Ms. Ramirez is a resident of and domiciled in the USA.

(m) Anna Rhee (hereinunder referred to as "Ms. Rhee") was commissioned by the Plaintiff to make the artistic works referred to in sub-paragraphs (d) and (f) hereof. At all material times, it was the understanding and agreement

C:\MAGGIE\IP\copyright\WP-1878-MGA\WHL.doc

M0012597

EXHIBIT 115
PAGE 1799

between the Plaintiff and Ms. Rhee that copyright subsisting in the artistic works should vest in the Plaintiff. Pursuant thereto, a confirmatory assignment was made between the Plaintiff and Ms. Rhee on 12th June 2003.

(n) At all material times, Ms. Rhee is a resident of and domiciled in the USA.

(o) The said Artistic Works as described in sub-paragraphs (a) to (f) above were first published in the USA in or about June 2001 when the Bratz fashion dolls were exhibited and offered for sale. Alternatively, the said Artistic Works are unpublished. The artistic works referred to in sub-paragraph (b) hereof and the silicon rubber moulds referred to in sub-paragraph (c) hereof were destroyed in the course of the Plaintiff's business.

4. Prior to the issue of the Writ herein, the 1st and 2nd Defendants have infringed the said Artistic Works by authorising the manufacture, the manufacture of and/or importing into and exporting from Hong Kong in its course of business, possessing for the purpose of trade or business, selling or offering or exposing for sale, for the purpose of trade or business exhibiting in public or distributing fashion dolls known as Glitter Girls which are reproductions of or a reproduction of a substantial part of the said Artistic Works without the license of the Plaintiff (hereinafter collectively

C:\MAGGIE\P\copyrightWF-1876-MGAWWL.DOC

M0012598

EXHIBIT ___115___

PAGE ___1800___

referred as "the Infringing Dolls")

## Particulars

The Plaintiff will in particular rely on the following facts and matters:-

a) The exposure for sale of the Infringing Dolls to an investigator employed by the Plaintiff by the distribution of leaflets depicting the Infringing Dolls on 8th February 2003 and 14th February 2003.

b) The possession for the purpose of trade or business and exposure for sale of the Infringing Dolls by the 1st and/or the 2nd Defendants in a showroom at Room 802A, Empire Centre, Tsimshatsui East, Kowloon on the 14th February 2003 to an investigator employed by the Plaintiff.

c) The sale and/or distribution of 2 Infringing Dolls by the 1st Defendant at the 1st and 2nd Defendant's registered offices on the 11th March 2003 to an investigator employed by the Plaintiff.

d) The exposure for sale by the 2nd Defendant of the Infringing Dolls by the provision of a quotation dated 11th March 2003.

e) The exposure for sale of the Infringing Dolls by the 1st and 2nd Defendants

C:\MAGGIE\VP\copymgrt\WF-1878-MGA\WHE.doc

M0012599

EXHIBIT 115

PAGE 1801

by way of an advertisement in p.140 of Vol. 2 of 2003 issue of the Hong Kong Toys Magazine.

f)  The exhibition in public of the Infringing Dolls by the 1st and/or 2nd Defendants at the Hong Kong Houseware Fair and Hong Kong Gifts & Premium Fair 2003 ("the Hong Kong Fair") in July 2003.

g)  The manufacture, authorization of manufacture, sale and export on divers dates an unknown quantity of the Infringing Dolls to Europe and the United States by the 1st and 2nd Defendants.

h)  The admission by the 1st and 2nd Defendants that the 2nd Defendant was the supplier of the Infringing Dolls to the 1st Defendant in a letter dated 21st August 2003 sent by the 1st and 2nd Defendants' solicitor to the Plaintiff's solicitors.

The Plaintiff is, prior to proper discovery and/or interrogatories, unable to give full particulars of all the wrongful acts of copyright infringement of the 1st and 2nd Defendants but will seek to recover damages in respect of each and every such wrongful act.

5.  The Plaintiff will in so far as is necessary rely on the fact that at all material times

C:\MAGGIE\IP\copyright\NEWF - 1878-MGA\WM.doc

M0012600

EXHIBIT ___115___

PAGE ___1802___

by way of an advertisement in p.140 of Vol. 2 of 2003 issue of the Hong Kong Toys Magazine.

f)   The exhibition in public of the Infringing Dolls by the 1st and/or 2nd Defendants at the Hong Kong Houseware Fair and Hong Kong Gifts & Premium Fair 2003 ("the Hong Kong Fair") in July 2003.

g)   The manufacture, authorization of manufacture, sale and export on divers dates an unknown quantity of the Infringing Dolls to Europe and the United States by the 1st and 2nd Defendants.

h)   The admission by the 1st and 2nd Defendants that the 2nd Defendant was the supplier of the Infringing Dolls to the 1st Defendant in a letter dated 21st August 2003 sent by the 1st and 2nd Defendants' solicitor to the Plaintiff's solicitors.

The Plaintiff is, prior to proper discovery and/or interrogatories, unable to give full particulars of all the wrongful acts of copyright infringement of the 1st and 2nd Defendants but will seek to recover damages in respect of each and every such wrongful act.

5.   The Plaintiff will in so far as is necessary rely on the fact that at all material times

C:\MAGGIE\IP\copyright\WF-1875-MGA\WK.doc

M0012601

EXHIBIT ___115___

PAGE ___1803___

the 1st and 2nd Defendants knew or had reason to believe that the Infringing Dolls

are infringing copies of the said Artistic Works within the meaning of the Copyright

Ord., Cap. 528.


### Particulars of Knowledge


The Plaintiff will in particular rely upon the following facts and matters:-


(a)     The Plaintiff relies on the fact that the 1st and 2nd Defendants are in the

same business as the Plaintiff, the Bratz fashion dolls being first

exhibited and sold in the USA in June 2001.


(b)     The Bratz fashion dolls have won numerous awards including Toy of the

Year Award, People's Choice of the Year Award, Doctor Toy Award and

Family Fun Best Toy Award and numerous articles have been about the

Bratz fashion dolls and their success.  The Bratz fashion dolls have

achieved worldwide fame and publicity.


(c)     The Plaintiff relies on the objective similarity between the said Artistic

Works and the Infringing Dolls.


(d)     On 14th February 2003, a Mr. Allen Ho on behalf of the 1st and 2nd

Defendants informed an investigator employed by the Plaintiff that

some modifications were made to the Infringing Dolls so that the

Infringing Dolls would not resemble the Bratz fashion dolls too much.


(e)     In correspondence dated 7th August 2003 between the solicitors for the

C:\MADGIC\IP\copyright\WF-1878-MGADWfa.doc

M0012602

EXHIBIT 115

PAGE 1804

the 1ˢᵗ and 2ⁿᵈ Defendants knew or had reason to believe that the Infringing Dolls are infringing copies of the said Artistic Works within the meaning of the Copyright Ord., Cap. 528.

## Particulars of Knowledge

The Plaintiff will in particular rely upon the following facts and matters:-

(a)   The Plaintiff relies on the fact that the 1ˢᵗ and 2ⁿᵈ Defendants are in the same business as the Plaintiff, the Bratz fashion dolls being first exhibited and sold in the USA in June 2001.

(b)   The Bratz fashion dolls have won numerous awards including Toy of the Year Award, People's Choice of the Year Award, Doctor Toy Award and Family Fun Best Toy Award and numerous articles have been about the Bratz fashion dolls and their success.  The Bratz fashion dolls have achieved worldwide fame and publicity.

(c)   The Plaintiff relies on the objective similarity between the said Artistic Works and the Infringing Dolls.

(d)   On 14ᵗʰ February 2003, a Mr. Allen Ho on behalf of the 1ˢᵗ and 2ⁿᵈ Defendants informed an investigator employed by the Plaintiff that some modifications were made to the Infringing Dolls so that the Infringing Dolls would not resemble the Bratz fashion dolls too much.

(e)   In correspondence dated 7ᵗʰ August 2003 between the solicitors for the

C:\MAGGIE\IPcopyright\WF-187&-MGA\Writ.doc

M0012603

EXHIBIT   115

PAGE   1805

1st and 2nd Defendants and the Plaintiff's solicitors, the 1st Defendant asserted that it ceased dealing with the Infringing Dolls upon learning the infringement of copyright, however on 21 August 2003, the 1st Defendant asserted that prior to the receipt of the cease and desist letter dated 30th July 2003, it had not promoted, offered and/or exposed for sale and/or sold the Infringing Dolls. On 10th September 2003, the 1st Defendant further asserted that it has not promoted, offered and/or exposed for sale and/or sold the Infringing Dolls. The Plaintiff refers to sub-paragraphs (a) to (e) of paragraph 4 herein. In light of the foregoing, the Plaintiff relies on the deliberate attempt by the 1st Defendant to conceal its infringing activities to show that the 1st Defendant had knowledge or had reason to believe that the Infringing Dolls were infringing copies of the said Artistic Works. The Plaintiff also relies on the fact that the 1st and 2nd Defendants have identical directors and thus any knowledge of the 1st Defendant is imputed to the 2nd Defendant as well.

The Plaintiff is, prior to proper discovery and/or interrogatories, unable to give full particulars of all the particulars of knowledge of the 1st and 2nd Defendants.

6. By reason of the foregoing, the Plaintiff has suffered loss and unless the 1st and 2nd Defendants are restrained by this Honourable Court, will continue to suffer loss and damage.

7. By reason of all the circumstances of this case, including the flagrancy of the infringement, the benefit accruing to the 1st and 2nd Defendants by reason of the

M0012604

EXHIBIT __115__

PAGE __1806__

infringement and the completeness, accuracy and reliability of the 1st and 2nd Defendants' business accounts and records, the Plaintiff claims additional damages under Section 108 of the Copyright Ord., Cap. 528.

<u>**Particulars**</u>

The Plaintiff will in particular rely upon the following facts and matters:-

(a) The Plaintiff repeats the particulars supplied under paragraphs 5 hereof.

(b) The 1st and 2nd Defendants in infringing the said Artistic Works have reaped substantial benefits in that the 1st and 2nd Defendants do not have to incur development costs, marketing costs and the risks that the Infringing Dolls might not be popular with its customers. The 1st and 2nd Defendants knew that in copying the said Artistic Works they will be able to produce, market and sell a product that has proven to be successful and is in demand by members of the trade and public.

8. By reason of the 1st and 2nd Defendants' wrongful acts and/or by reason of the 1st and 2nd Defendants' dealing in the Infringing Dolls, the 1st and 2nd Defendants owe a duty to the Plaintiff to assist the Plaintiff by supplying the Plaintiff with full information relating to the products complained of, all dealings therein or therewith

C:\MAGIC\EVP\copyright\IVF -1678-MGA\WK.DOC

M0012605

EXHIBIT 115

PAGE 1807

and the identities of all other wrong doers.

9.  Further by virtue of sections 48 and 49 of the High Court Ordinance (Cap. 4) the Plaintiff is entitled to and claims to recover interest on any amount found to be due to the Plaintiff at such rate(s) and for such period(s) as this Honourable Court considers just and proper.

AND the Plaintiff claims:-

1.  An injunction to restrain the 1st and 2nd Defendants whether acting by themselves, their directors, officers, servants or agents or any of them or otherwise howsoever from infringing the Plaintiff's copyright in original artistic works relating to the Plaintiff's fashion dolls under the name "Bratz" and/or from directing, procuring, instigating, causing, enabling or assisting others to do so.

2.  An order for delivery up or destruction upon oath of all articles and materials in the 1st and 2nd Defendants' possession, power, custody or control including dies, plates, templates, labels, moulds, leaflets, catalogues and packaging the use or sale or dealing therewith by the 1st and 2nd Defendants would offend against the foregoing injunction.

C:\MAGGIE\P:copyright\WT-1978-MGAWH.doc

M0012606

EXHIBIT ___115___

PAGE ___1808___

3. An inquiry as to damages, alternatively damages or, at the Plaintiff's option, account of profits, in respect of the 1st and 2nd Defendants' wrongful acts of infringement of copyright.

4. Additional damages pursuant to section 108(2) of the Copyright Ordinance.

5. An order for the payment by the 1st and 2nd Defendants' of all sums found due to the Plaintiff upon making such inquiries and/or accounts together with such interest thereon as this Honourable Court shall deem just pursuant to Section 48 of the High Court Ordinance.

6. An order for discovery or verification upon oath of all matters relating to the foregoing.

7. Costs

8. Such further or other relief as this Honourable Court shall deem just.

Dated this 16th day of October 2003.

William W.L. Fan & Co.

Solicitors for the Plaintiff

C:\MAGGIE\IP\copyright\WF-1878-MGATWH.doc

M0012607

EXHIBIT __115__

PAGE __1809__

HCA    /2003

**IN THE HIGH COURT OF THE**
**HONG KONG SPECIAL ADMINISTRATIVE REGION**
**COURT OF FIRST INSTANCE**
**ACTION NO.     OF 2003**

BETWEEN:-

MGA ENTERTAINMENT INC.                                         Plaintiff

and

UNI-FORTUNE TOYS INDUSTRIAL LIMITED                  1st Defendant

FU WEI TOYS COMPANY LIMITED                              2nd Defendant

## ACKNOWLEDGMENT OF SERVICE OF WRIT OF SUMMONS

**If you intend to instruct a Solicitor to act for you, give him this form IMMEDIATELY.**

**Important.**   Read the accompanying directions and notes for guidance carefully before completing this form.  If any information required is omitted or given wrongly, **THIS FORM MAY HAVE TO BE RETURNED.**

Delay may result in judgment being entered against a Defendant whereby he or his Solicitor may have to pay the costs of applying to set it aside.

| | | |
|---|---|---|
| See Notes 1. 3,4, and 5 | 1. | State the full name of the Defendant by whom or on whose behalf the service of the Writ of Summons is being acknowledged. |
| | 2. | State whether the Defendant intends to contest the proceedings (tick appropriate box)     Yes [    ]     No [    ] |
| See Direction 3. | 3. | If the claim against the Defendant is for a debt or liquidated demand, AND he does not intend to contest the proceedings, state if the Defendant intends to apply for a stay of execution against any judgment entered by the Plaintiff(s) (tick box) |
| where words appear between square brackets delete if inapplicable | | Service of the Writ of Summons is acknowledged accordingly. |

(Signed) [Defendant in person] [Solicitor] (                    )
Address for service :-

Notice as to Address for Service
Solicitor.   Where the Defendant is represented by a Solicitor, state the Solicitor's place of business in Hong Kong.
Defendant in person.  Where the Defendant is acting in person, he must give his residence OR, if he does not reside in Hong Kong, he must give an address in Hong Kong where communications for him should be sent.  In the case of a limited company, "residence" mean its registered or principal office.
S.C 551(s)

William W. L. Fan & Co., Solicitors for the Plaintiff,
Room 507, 5th Floor, Hang Seng Building,
77 Des Voeux Road Central, Hong Kong.
[Ref: WF-1878-RC]

C:\MAGGIE\Pcopyright\WF - 1878-MGA\Writ.doc

M0012608

EXHIBIT ___115___

PAGE ___1810___

HCA    /2003

## IN THE HIGH COURT OF THE
## HONG KONG SPECIAL ADMINISTRATIVE REGION
## COURT OF FIRST INSTANCE
## ACTION NO.    OF 2003

BETWEEN:-

MGA ENTERTAINMENT INC.                                    Plaintiff

and

UNI-FORTUNE TOYS INDUSTRIAL LIMITED          .1st Defendant

FIJ WEI TOYS COMPANY LIMITED                      2nd Defendant

## ACKNOWLEDGMENT OF SERVICE OF WRIT OF SUMMONS

**If you intend to instruct a Solicitor to act for you, give him this form IMMEDIATELY.**

**Important.** Read the accompanying directions and notes for guidance carefully before completing this form. If any information required is omitted or given wrongly, **THIS FORM MAY HAVE TO BE RETURNED.**

Delay may result in judgment being entered against a Defendant whereby he or his Solicitor may have to pay the costs of applying to set it aside.

| See Notes 1. 3,4, and 5 | 1. | State the full name of the Defendant by whom or on whose behalf the service of the Writ of Summons is being acknowledged. |
| | 2. | State whether the Defendant intends to contest the proceedings (tick appropriate box)   Yes [      ]   No [      ] |
| See Direction 3. | 3. | If the claim against the Defendant is for a debt or liquidated demand, AND he does not intend to contest the proceedings, state if the Defendant intends to apply for a stay of execution against any judgment entered by the Plaintiff(s) (tick box) |

where words appear between square brackets delete if inapplicable

Service of the Writ of Summons is acknowledged accordingly.

(Signed) [Defendant in person] [Solicitor] (                    )
Address for service :-

Notice as to Address for Service

Solicitor.   Where the Defendant is represented by a Solicitor, state the Solicitor's place of business in Hong Kong.

Defendant in person.   Where the Defendant is acting in person, he must give his residence OR, if he does not reside in Hong Kong, he must give an address in Hong Kong where communications for him should be sent.   In the case of a limited company, "residence" mean its registered or principal office.
S.C 551(s)

William W. L. Fan & Co., Solicitors for the Plaintiff,
Room 507, 5th Floor, Hang Seng Building,
77 Des Voeux Road Central, Hong Kong.
[Ref: WF-1878-RC]

C:\MAGGIE\P\copyright\WF-1878-MGA\WIE.DOC

M0012609

EXHIBIT   115

PAGE   1811

HCA      /2003

## IN THE HIGH COURT OF THE
## HONG KONG SPECIAL ADMINISTRATIVE REGION
## COURT OF FIRST INSTANCE
## ACTION NO.      OF 2003

BETWEEN:-

MGA ENTERTAINMENT INC.                                    Plaintiff

and

UNI-FORTUNE TOYS INDUSTRIAL LIMITED              1ST Defendant

FU WEI TOYS COMPANY LIMITED                          2nd Defendant

## ACKNOWLEDGMENT OF SERVICE OF WRIT OF SUMMONS

### If you intend to instruct a Solicitor to act for you, give him this form IMMEDIATELY.

**Important.** Read the accompanying directions and notes for guidance carefully before completing this form. If any information required is omitted or given wrongly, **THIS FORM MAY HAVE TO BE RETURNED.**

Delay may result in judgment being entered against a Defendant whereby he or his Solicitor may have to pay the costs of applying to set it aside.

| See Notes 1, 3,4, and 5 | 1. | State the full name of the Defendant by whom or on whose behalf the service of the Writ of Summons is being acknowledged. |
| | 2. | State whether the Defendant intends to contest the proceedings (tick appropriate box)      Yes [ ]          No [ ] |
| See Direction 3. | 3. | If the claim against the Defendant is for a debt or liquidated demand, AND he does not intend to contest the proceedings, state if the Defendant intends to apply for a stay of execution against any judgment entered by the Plaintiff(s) (tick box) |

where words appear between square brackets delete if inapplicable

Service of the Writ of Summons is acknowledged accordingly.

(Signed) [Defendant in person] [Solicitor] (                    )
Address for service :-

Notice as to Address for Service

Solicitor.   Where the Defendant is represented by a Solicitor, state the Solicitor's place of business in Hong Kong.

Defendant in person. Where the Defendant is acting in person, he must give his residence OR, if he does not reside in Hong Kong, he must give an address in Hong Kong where communications for him should be sent. In the case of a limited company, "residence" mean its registered or principal office.
S.C 551(s)

William W. L. Fan & Co., Solicitors for the Plaintiff,
Room 507, 5th Floor, Hang Seng Building,
77 Des Voeux Road Central, Hong Kong.
[Ref: WF-1878-RC]

C:\MAGGIE\Property\WF-1878-MGA\Writ.doc

M0012610

EXHIBIT ___115___

PAGE ___1812___

Acknowledgment of Service of Writ of Summons

(O.12   r.3)

Directions for Acknowledgment of Service

1.      The accompanying from of ACKNOWLEDGMENT OF SERVICE should be detached and completed by Solicitor acting on behalf of the Defendant or by the Defendant if acting in person. After completion it must delivered or sent by post to the Registry of the High Court at the following address:-

LG1, High Court Building, 38 Queensway, Hong Kong.

2.      A Defendant who states in this Acknowledgment of Service that he intends to contest the proceedings MUS ALSO file a DEFENCE which must be written in the English language with the registry and serve a cop thereof on the Solicitor for the Plaintiff (or on the Plaintiff if acting in person).

If a statement of Claim is indorsed on the Writ (i.e. the words "Statement of Claim" appear at the top of the bac the Defence must be filed and served within 14 days after the time for acknowledging service of the Writ, unless in th meantime a summons for judgment is served on the Defendant.

If a Statement of Claim is not indorsed on the Writ, the Defence need not be filed and served until 14 days after Statement of Claim has been served on the Defendant.

If the Defendant fails to the file and save his defence within the appropriate time, the Plaintiff may enter judgmer against him without further notice.

3.      A STAY OF EXECUTION against the Defendant's goods may be applied for where the Defendant is unable t pay the money for which any judgment is entered. If a Defendant to an action for a debt or liquidated deman (i.e. a fixed sum) who does not intend to contest the proceedings states, in answer to Question 3 in th Acknowledgment of Service, that he intends to apply for a stay, execution will be stayed for 14 days after hi Acknowledgment, but he must within that time, ISSUE A SUMMONS for a stay of execution, supported b and affidavit of his means. The affidavit should state any offer which the Defendant desires to make fo payment of the money by instalments or otherwise.

See attached Notes for Guidance

Notes for Guidance

1.      Each Defendant (if there are more than one) is required to complete an Acknowledgment of Service an return it to the Registry of the High Court.

2.      For the purpose of calculating the period of 14 days for acknowledging service, a writ served on the Defendant personally is treated as having been served on the day it was delivered to him and a writ served b post or by insertion through the Defendant's letter box is treated as having been served on the seventh day after the date of posting or insertion.[Not applicable if the defendant is a company served at its registerec office.]

3.      Where the Defendant is sued in a name different from his own, the form must be completed by him with the addition in paragraph 1 of the words "send as (the name stated on the Writ of Summons)".

4.      Where the Defendant is a FIRM and a Solicitor is not instructed, the form must be completed by a PARTNER by name, with the addition in paragraph 1 of the description "partner in the firm of (..........)" after his name.

5.      Where the Defendant is sued as an individual TRADING IN A NAME OTHER THAN HIS OWN, the form must be completed by him with the addition in paragraph 1 of the description" trading as (..........)" after his name.

6.      Where the Defendant is a LIMITED COMPANY the form must be completed by a Solicitor or by someone authorized to act on behalf of the Company, but the Company can take no further step in the proceedings without a Solicitor acting on its behalf.

7.      Where the Defendant is a MINOR or a MENTAL Patient, the form must be completed by a Solicitor acting for guardian ad litem.

8.      A Defendant acting in person may obtain help in completing the form at the Registry of the High Court.

9.      These notes deal only with the more usual cases. In case of difficulty a Defendant in person should refer t paragraph 8 above.

M0012611

EXHIBIT   115

PAGE   1813

因這是法律文件，忽視它可帶來嚴重的後果，如有疑問，請儘向發出文件的法庭登記處，香港金鐘道38號高等法院大樓LG1查詢你亦應考慮聽取律師的意見或是申請法律援助。

(This is legal document. The consequences of ignoring it may serious. If in doubt you should enquire as soon as possible at the Regis of the Court issuing the document, namely, LG1 High Court Buildin No.38 Queensway, Hong Kong. You should also consider taking t advice of a Solicitor or applying for legal Aid.).

M0012612

EXHIBIT    115

PAGE    1814

HCA　　　　　/2003

香港特別行政區

高等法院

原訟法庭

高院民事訴訟二零零三年第　　　　號

　　　　　　　　　　　　　　　　　　　　　　　原告人

對

　　　　　　　　　　　　　　　　　　　　　　　被告人

致被告人 .................................................................................

地址 .......................................................................................

　　本傳訊令狀由上述原告人就背頁所列出的索償聲請而向你發出。

　　在本令狀送達給你（14）天內，由送達之日起計，你必須清償有關的索償要求，或於夾附的令狀送達認收書內述明是否擬對本訴訟進行抗辯，然後把該認收書交回高等法院登記處。

　　若你在上述指定期限內不清償有關的索償要求，或不交回送達認收書，或不在交回的送達認收書內述明是否擬提出抗辯，則你不會接獲進一步通知，原告人即可繼續進行訴訟，而屆時法庭亦可逕行判你敗訴。

　　本令狀由高等法院登記處在二零零三年　　　月　　　日發出。

　　註：本令狀必須在發出日期起計 12 個曆月內送達被告人；但經法庭下令准予延期則不在此限。

重要事項

有關填寫送達認收書的須知事項已載列在夾附表格內。

M0012613

EXHIBIT ___115___

PAGE ___1815___

　　若原告人的索償請只是爲了追討一筆債務或算定索償款額時：在交回送達認收書的規定期限內，如果被告人清付所索償款額和訟費＄　　　　又倘原告人獲准以間接方式送達令狀時，另加數額＄　　　　則本訴訟即于擱置。該筆款項必須付給原告人或其代表律師。

　　本令狀由范偉廉律師行，地址爲香港中環德輔道中七十七號恒生大廈五字樓五零七室代表上述原告人申請發出，原告人的地址爲：

　　　　　　　　　　　　　　　　原告人代表律師
　　　　　　　　　　　　　　　　范偉廉律師事務所

M0012614

EXHIBIT _____115_____

PAGE _____1816_____

香港高等法院

原訴法庭

2003 年訟案第　　　　宗

原告人

被告人

傳訊令狀送達認收書

如你擬委託律師代為辦理，須用此表格交給他處理。

重要事項：填寫這表格前，必須小心閱讀附件內載的填寫須知事項和指南。如所提供的資料有錯漏時，則這份表格可能被退回。

如退還填寫，可導致被告人被判敗訴，而被告人或其代表御申請撤銷原判時，或須付出堂費。

| 參照填寫指南1、3、4及5項 | 1. | 應填寫認收傳訊令狀的被告人全名；或倘由他人代表接收已送達的令狀時，亦須填寫該名被告人的全名。 |
|---|---|---|
| | 2. | 請註明該被告人是否擬就這宗訴訟提出抗辯（請在適用的方格內加「✓」符號） |

　　　　　　　　　　□ 是　　　　　　　□ 否

| 請參照填寫須知事項3。 | 3. | 如果訴訟是關於要請被告人清付一筆債務或一筆算定索償款項，而被告人不擬對訴訟加以抗辯時，則須註明是否有意申請延緩執行由原告人呈請法庭裁定的事項。（請在方格內加上「✓」符號）　□ |

| 方格內如不適用的字句請刪去。 | | 本人現承認已收到傳訊令狀 |

　　　　　　　　　　　　　　（簽署）[律師（　　　　　　　　）
　　　　　　　　　　　　　　[無律師作代表的被告人]
　　　　　　　　　　　　　　認收傳訊令狀地址

填寫有關認收傳訊令狀地址須知：

　　律師：如被告人由律師代表他，則須填寫律師在香港的辦事處。

　　沒有律師作代表的被告人——如被告人沒有律師代表他，則他須填寫他本人的住址；或如果他並非居於香港，則須填寫他在本港的通訊地址。如果被告是一間有限公司時，則須填寫公司的註冊地址或該辦事處地址。

原告人代表律師　：范偉業律師事務所
地址　　　　　　：香港中環德輔道中七十七號恒生大廈五字樓五零七室。
電話號碼　　　　：2110 2128
傳真號碼　　　　：2111 9336
檔案號碼　　　　：WF-1

M0012615

EXHIBIT ___115___

PAGE ___1817___

傳訊令狀送達認收書

填寫送達認收書須知

(一)　傳訊令狀上的送達認收書，應由被告人的代表律師填寫，或如無律師代表他，則由被告本人把附件拆出填妥，並應送交或用郵遞方式交高等法院登記處，該登記處地址是 :—

香港金鐘道三十八號高等法院地下一層

(二)　被告人如在令狀送達認收書內表示要對訴訟提出抗辯時，必須同時以英文填寫一份無爭議書呈交高等法院登記處，並把副本一份送達原告人的代表律師（或如原告人並無律師代表他，則送達原告人）。

令狀背面如果載有索償聲請書（即在背頁上寫註有「索償聲請書」等字眼 時），被告人須要在認收傳訊令狀期限屆滿後 14 天內，把無爭議書呈交高等法院登記處和送達原告人。但如在該段期限內，被告人已按照原告人呈請法庭判決未傳票一份，則不在此限。

傳訊令狀背面如果並未載有索償聲請書時，則被告人僅須要在收到索償聲請書後 14 天後，把無爭議書呈交法院和送達原告人。

如被告人於指定期限內不把無爭議書呈交法院和送達原告人，則原告人毋須再行通知，即可呈請法庭直接向被告人敗訴。

(三)　如法庭直判被告人敗訴，而被告人未能清付所判數額時，被告人可向法庭申請暫緩執行及針對被告人財物令。如果被告人是由於一筆債款或一筆固定款額（即一固定款額）而被要求，而又不獲即時現款債務時則未必如此。但縱在傳訊令狀送達認收書第三部範圍內並無任何要針對財物令時，則聯署封合就予以處理，在其認收傳訊令狀 14 天後才予執行；但在這段期限內，他必須提出要求延緩執行針對令的傳票，並且須夾一份列明其資產或支狀況的聲書，以作證明。被告人並須在聲言內述分期付款數額及期限或其他清償辦法。

(請參閱背頁內的填寫指南)

填寫指南

(一)　每一被告人（如超過一名）必須填妥送達認收書一份，並把認收書交回高等法院登記處。

(二)　就如何計算傳訊令狀送達 14 天期限來說，如果傳票送達被告人本身，則以傳訊令狀交到被告人手上當天作為送達日期；如以郵遞方式或把傳訊令狀放入被告人的通常方式時，則以傳訊令狀寄出之日起放入被告人信箱日起計的第七天作為送達日期。（如被告人是一間公司，而傳票是送達該公司的註冊辦事處，則此條並不適用。）

(三)　如被告人以另一名籍被控訴時，則該表格必須由他本人填寫，並須在第一段內加上「以某某名籍被訴」字樣（即載其傳訊令狀上的名籍）。

(四)　如被告是一商號，而並沒有委任律師作代表時，則該表格必須由一名合夥人填寫，並須在第一段內緊接其姓名之後加寫「某某商號合夥人」字樣。

(五)　被告人是以個人身份用其他商業商號而被控訴時，則該表格必須由他填寫，並須在第一段內緊接他本身姓名之後加寫「經營某某商號」字樣。

(六)　如被告人是一間有限公司，該表格必須由律師代為填寫，或由該公司所授權人士填寫，但如無律師代表，該公司不得採取進一步訴訟程序。

(七)　如被告人未成年或是一名精神病患者，則該表格必須由訴訟監護人的代表律師填寫。

(八)　如被告人沒有律師代表他，可向高等法院登記處請求協助填寫表格。

(九)　此「填寫指南」只適用於一般案件，沒有律師代表的被告人遇到困難時，可參閱上文第 8 段。

M0012616

EXHIBIT ___115___

PAGE ___1818___

HCA     /2003

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

ACTION NO. 3856 OF 2003

---

MGA ENTERTAINMENT INC.                          Plaintiff

and

UNI-FORTUNE TOYS INDUSTRIAL LIMITED     1st Defendant
FU WEI TOYS COMPANY LIMITED             2nd Defendant

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

WRIT OF SUMMONS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Issued this 16th day of October 2003.  at 4:25pm.

WILLIAM W. L. FAN & CO.
SOLICITORS
Room 507, 5th Floor,
Hang Seng Building,
77 Des Voeux Road Central,
Hong Kong.
Tel.: 2110 2128  Fax: 2111 9336
Ref: WF-1878-RC

M0012617

EXHIBIT 115

PAGE 1819

**EXHIBIT   116**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   117**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   118**

7/18/03 WSJ A1
7/18/03 Wall St. J. A1
2003 WL-WSJ 3974434
(Publication page references are not available for this document.)

Page 2

The Wall Street Journal
(Copyright (c) 2003, Dow Jones & Company, Inc.)

Friday, July 18, 2003

Dolled Up: To Lure Older Girls, Mattel Brings In
Hip-Hop Crowd

---

It Sees Stalwart Barbie Lose Market Share, So
'Flavas' Will Take on the 'Bratz'

---

Battle of the Big Heads
By Maureen Tkacik

LOS ANGELES — Tika, 10 inches tall with two-toned hair, is of ambiguous ethnic origin — maybe she's Asian, maybe Latina — but her "platinum" medallion, airbrushed jean jacket, shell-toe sneakers and graffiti-streaked packaging make one thing clear.

"She's like . . . hip-hop," said Crystal Audigier, 10 years old, as she rifled through the first crate of "Flavas" dolls to arrive at a Los Angeles FAO Schwarz store last week.

Mattel Inc. hopes the dolls are hip enough to take on the "Bratz." The Flavas (pronounced "Flay-vuhs," like "flavors"), a set of six dolls brought from design to production in just three months, represent a striking gamble for the giant toy company. In the 44 years since it introduced its bombshell Barbie, Mattel has rarely brought out a doll line to compete with her.

But Mattel, which had become accustomed to its buxom blonde dominating the market, has watched in alarm as Barbie has been challenged by a smaller toy maker's Bratz — a line of big-headed, pouty-lipped characters. While Barbie, which posted about $1.7 billion in sales for Mattel last year, is still queen, her share of the so-called fashion-doll market has fallen, almost entirely due to the Bratz.

After trying — and failing — to defeat the Bratz with a trendier Barbie last year, Mattel has come up with a radical battle plan. Among other things, that means curtailing its reliance on, and near-reverence toward, its cash cow. While Barbie is still a plaything of choice for girls 3 to 7 years old, it's been years since she managed to hold the attention of the tweens, or 8-

to 12- year-olds. With the Flavas, Mattel is trying to get back into that market — even if it risks cannibalizing its biggest product.

Mattel has tweaked Barbie many times since she was introduced in 1959: bronzing her skin during the 1970s, introducing black and Hispanic counterparts and giving her a band (the fuchsia-clad "Rockers") during the 1980s. Mattel even shrunk her chest and widened her hips in 1998.

But Mattel now concedes Barbie has gradually lost touch with some young girls' lives. "Barbie began as a great girl who was simply a reflection of popular culture, but in the past few years we had sort of put her on a pedestal," says Matt Bousquette, president of the newly created Mattel Brands unit, which consolidated the boys' and girls' toys divisions. "We're taking her off that pedestal."

While Mr. Bousquette and his team overhaul Barbie, he is also enlisting the Flavas, who wear sweats and heavy chains and have names like "Tre" and "P. Bo," as a second force with which to fight the Bratz. Mattel says hip-hop — which it defines as "a cultural phenomenon . . . dimensionalized through freestyle dance, street sports, music and fashion" — has gained sufficient ground in the mainstream to have its own toy line.

"Mattel is recognizing that there are other trends besides Barbie that girls want to play with," says Manny Francione, divisional merchandise manager for Toys "R" Us Inc., Paramus, N.J. "Hip-hop is one of those trends."

The Bratz, developed by a toy maker called MGA Entertainment Inc., North Hills, Calif., were introduced in the summer of 2001. They became a hit with tweens, an age group of girls that the toy industry had almost written off.

For the past decade, toy makers have been grappling with a phenomenon analysts call "age compression," in which media-saturated youngsters are outgrowing dolls and other toys at an earlier age. NPD Group Inc., a market-research firm, says toy spending on children peaks at age 3 and steadily declines after

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

DEPOSITION EXHIBIT

M 0012536

EXHIBIT 118
PAGE 1842

7/18/03 WSJ A1
7/18/03 Wall St. J. A1
2003 WL-WSJ 3974434
(Publication page references are not available for this document.)

Page 3

that, with spending on 12-year-olds at about a quarter of the peak level. By attracting tweens, the Bratz bucked that trend.

Bratz "appealed to an older girl . . . who is not necessarily still a Barbie customer," says Sean McGowan, a longtime industry analyst with Gerard Klauer Mattison. "Nothing's ever challenged Barbie like the Bratz." At Barbie's 1997 peak, a year in which Mattel posted $1.9 billion in sales of the doll, her clothing and accessories, she boasted more than a 90% share of the fashion-doll market, Mr. McGowan says. Barbie held at least 85% of the market right before the Bratz were introduced, he says, but her share has now dropped to about 70%.

The history of the Bratz is intertwined with Mattel. MGA says the Bratz were designed by Carter Bryant, a former member of the Barbie team. Inside Mattel, some are convinced the Bratz borrow liberally from a Mattel project that was scrapped at the testing stage in 1998. Mattel declined to comment.

Mr. Bryant didn't work on the line that Mattel scrapped, according to former and current Mattel designers. But most Barbie designers had seen the prototypes, his former colleagues say. Mr. Bryant, through MGA, declined to be interviewed.

The Mattel doll line that was scrapped wasn't exactly like the Bratz, says a longtime Mattel designer who worked on the project. But the Bratz's oversized heads -- with their pursed lips and cartoonish eyes -- are "virtually identical" to the heads of the dolls her team created, says the designer, who left Mattel in 2001.

Lily Martinez, a designer who still works at Mattel, came up with the idea for the big doll heads for Mattel, colleagues say. Mattel declined to comment. She even posted her sketch on her cubicle, colleagues say. "Anyone who passed by her cubicle would see the picture up on the wall," says another designer who also left Mattel in 2001. "The big heads, the big eyes, the big feet -- they were all the same" as the Bratz. Ms. Martinez declined to comment.

The Mattel dolls were scrapped in testing, current and

former designers say, because Mattel had strict quotas that allowed only one "flanker brand" -- that is, a brand that would compete with Barbie for shelf space -- on the market at a time. At the time, Mattel chose a product called "What's Her Face" -- a doll with a blank face on which kids could draw expressions. That doll remains on the market; Mattel declined to discuss its sales.

Designers say they often faced a higher bar for non-Barbie projects. And Barbie's image was carefully protected. Bruce Stein, who was president of Mattel until 1998, says that former Chief Executive Jill Barad nixed an idea for "Barbie as Xena" dolls in 1998.

Ms. Barad was replaced in 2000, after Mattel's disastrous $3.5 billion acquisition of a software maker called The Learning Company. Under her successor, Robert Eckert, a former Kraft Foods president, the company has returned to profitability by cutting its work force 10%, streamlining its supply chain and developing international sales, among other things. Mattel, which reported a net loss of $431 million in 2000, reported net income of $230 million last year. Its stock has risen about 76% since Mr. Eckert arrived.

Isaac Larian, chief executive of MGA, says he had never heard of a project similar to the Bratz at Mattel. He says he chose Mr. Bryant's idea for the Bratz over several others after holding a sort of fashion-doll design contest in late 1999.

Mr. Larian, who emigrated to the U.S. from Iran, founded his company in the late 1970s, making a name by picking up the license for hand-held Pac-Man games. Though his company had made baby dolls before, it had never made fashion dolls. He says he was motivated by a challenge from a Wal-Mart Stores Inc. buyer to "give me something that can compete with Barbie."

This year, closely held MGA expects revenue of about $800 million -- with 65% of that coming from the Bratz. The company says it's profitable, but won't discuss specifics. Mr. Bryant still does design work for MGA, Mr. Larian says, and collects royalties on the Bratz line.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

M 0012537

EXHIBIT 118
PAGE 1843

7/18/03 WSJ A1
7/18/03 Wall St. J. A1
2003 WL-WSJ 3974434
(Publication page references are not available for this document.)

Page 4

Mattel began worrying about the Bratz's momentum during the 2001 holiday season. Barbie sales fell 12% in the U.S. that year, despite a marketing campaign featuring an animated video, "Barbie in the Nutcracker."

By spring of 2002, Adrienne Fontanella, then president of the girls' division, decided to launch what the company termed a more "reality based" Barbie line. Like the Bratz, the "My Scene" Barbies boasted bigger heads and feet and fuller lips, as well as trendier clothes.

Mr. Larian, the head of MGA, calls the My Scene dolls a "cheap imitation" of the Bratz. Mattel declined to comment. Introduced in October 2002, the My Scene Barbies helped Mattel's sales, but still ranked behind the Bratz during the 2002 holiday season, according to NPD. "My Scene has been just OK for us," says Fred Hurley, a longtime girls'-toys buyer for KB Toys Inc., Pittsfield, Mass.

In February, Ms. Fontanella's job, along with others, was eliminated in what Mr. Eckert called a "restructuring" of Mattel's executive ranks aimed at "increasing efficiency."

Mr. Bousquette, the then-head of Mattel's boys' toy division, became the first man to take control of Barbie in more than a decade. "It used to be that whoever ran Barbie ran the company, not the other way around," says Mr. Stein, the former president. "For Matt to be in charge is a major shift."

Mattel no longer has quotas on how many products can compete with Barbie. After sitting through a girls'-design-team presentation in March, Mr. Bousquette seized upon the Flavas as the ideal dolls to compete for the dollars of Bratz buyers. Ivy Ross, head of girls' design, suggested bringing them to market for the spring 2004 season. Mr. Bousquette said the company should aim for this July instead.

"We were stunned," says a designer who worked on the Flavas and left the company in May. Another surprise: Mr. Bousquette asked the team to make the dolls look more hip-hop than the prototypes. "No one had really believed in the concept before that meeting, and it was stuck in this back-and-forth where first they were too edgy, then they weren't edgy enough," says the designer. "Matt came through and cut all of that out." Mr. Bousquette says he told designers to make the dolls "as authentic as possible, as quickly as possible."

Flavas are more complicated to manufacture than most fashion dolls. They are all different heights — meaning separate molds — and they have 10 points at which they can move, allowing them to strike a variety of poses. The Flavas design team often slept in their cubicles to get the dolls ready in time for summer shipment. Two designers each clocked 53 hours during Memorial Day weekend to prepare the line for the company's annual toy fair held in the first week of June.

Some buyers have been impressed. Mattel's girls' division "has never been a particularly forward-thinking group, but the Flavas are right on trend," says KB's Mr. Hurley. The six dolls in the Flavas line are certainly edgier than anyone in Barbie's clique. The Flavas girls have highlighted hair, flashier jewelry and wear midriff-baring tops with low-slung pants. Unlike Barbie, they have flat feet and wear sneakers. The two boy Flavas dolls sport earrings and serious expressions. Boxer underwear appears to show from the top of their cargo pants.

The Flavas come in boxes splashed with black-and-white photos of urban scenes shot around Venice Beach. When arranged together, the boxes create a "graffiti" mural that reads: "FA SIZZLE." It is a play on the hip-hop expression "Fa' shizzle," which means "For sure." Marketing director Lisa Tauber explains that it is also an acronym that stands for "Fashion, Attitude and Sizzlin' Style." The dolls, aimed at 9- to 11-year-olds, are "all about fearless self- expression," she says.

MGA's Mr. Larian says he isn't scared by the Flavas. "The only thing that's missing is a cocaine vial," he says. "You think of Mattel, you think of Barbie and you think of sweetness. . . . This is like 'gangster' Barbie, and I think it's going to backfire."

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

M 0012538

EXHIBIT ___118___

PAGE ___1844___

7/18/03 WSJ A1
7/18/03 Wall St. J. A1
2003 WL-WSJ 3974434
(Publication page references are not available for this document.)

Page 5

Telejah Dean, a nine-year-old from West Los Angeles noticed the Flavas last week, as she was admiring Mattel's Mary-Kate and Ashley dolls. The Flavas are "not as pretty as Barbie," she said. But her older sister, Tiffany, 22, seemed impressed by the blond Happy D. doll. "Look, she's got black [hair] extensions like Christina," she exclaimed, referring to pop singer Christina Aguilera.

In fact, Mattel has hired people to give out Flavas hats, wristbands and decals during Ms. Aguilera's concert tour this summer. Ms. Aguilera, who got her start on the Disney Channel, is now probably as well known for her 11 body piercings and her mud wrestling-themed MTV video called "Dirty."It's a sign of the changing times, says Mattel spokeswoman Julia Jensen. "The old Mattel probably wouldn't try to tie up with someone like Christina Aguilera."

---- INDEX REFERENCES ----

COMPANY:          KB Holdings LLC (KBTY);
Mattel Inc (MATL)

NEWS SUBJECT:        (Marketing (C31); Market Share (C313); Corporate/Industrial News (CCAT); Content Types (NCAT); Page-One Story (NPAG); Editor's Choice - Consumer Products (REQRCP); Editor's Choice - Industry Trends/Analysis (REQR))

INDUSTRY:          (Dolls/Toys/Games (I4941); Retail (I64); Specialty Stores (I654); Hobby/Toy/Game Stores (I6540030); Consumer Products (ICNP); Media (IMED))

REGION:          (North American Countries (NAMZ); United States (USA); United States - California (USCA); Northeast U.S. (USE); United States - Massachusetts (USMA); Western U.S. (USW))

OTHER INDEXING:   Marketing; Market Share; Page-One Story; Content Types; Corporate/Industrial News; United States - California; United States - Massachusetts; United States; Northeast U.S.; Western U.S.; North American Countries; Dolls/Toys/Games; Retail; Specialty Stores; Hobby/Toy/Game Stores; Consumer Products;

Media; Consumer Cyclical; Newswire More Code; Newswire End Code; All Entertainment & Leisure; Limited Product Specialty Retailers; Recreational Products & Services; All Specialty Retailers; Toys; Islamic Index; S&P 500 Index component; Newspapers' Section Fronts; Marketing; Market

Word Count: 2217

7/18/03 WSJ A1

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

M 0012539

EXHIBIT ____ 118
PAGE ____ 1845

**EXHIBIT   119**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   120**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   121**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT   122**

RECEIVED

DEC 1 0 2004

SEND

1　M. RANDALL OPPENHEIMER (S.B. #77649)
　　DIANA M. TORRES (S.B. #162284)
2　O'MELVENY & MYERS LLP
　　400 South Hope Street
3　Los Angeles, California 90071-2899
　　Telephone: (213) 430-6000
4　Facsimile: (213) 430-6407

5

6　Attorneys for Applicant-Intervenor
　　MGA ENTERTAINMENT, INC.

FILED
CLERK, U.S. DISTRICT COURT

DEC - 7 2004

CENTRAL DISTRICT OF CALIFORNIA
BY　　　　　　　　　　DEPUTY

7

8　　　　　UNITED STATES DISTRICT COURT

9　　　　　CENTRAL DISTRICT OF CALIFORNIA

10

11　MATTEL, INC., a Delaware
　　Corporation,
12
　　　　　　　　　Plaintiff,
13
　　　v.
14
　　CARTER BRYANT, an individual;
15　and DOES 1 through 10, inclusive,
16
　　　　　　　　　Defendant.
17

Case No. CV 04-9059 NM (RNBx)

**STIPULATION PERMITTING MGA TO INTERVENE AS A PARTY TO THIS ACTION** ✗ ORDER

Hon. Nora Manella

18

19

20

21

22

23

24

25

26

27

28

DOCKETED ON CM

DEC - 8 2004

006

BY

STIPULATION PERMITTING MGA TO
INTERVENE AS A PARTY

EXHIBIT　　122

PAGE　　1864

1       WHEREAS, on April 27, 2004, Plaintiff Mattel, Inc. ("Mattel") filed suit

2   against Carter Bryant ("Bryant") and ten unnamed "Does" alleging breach of

3   contract, breach of the duty of loyalty, breach of fiduciary duty, conversion and

4   unjust enrichment.

5       WHEREAS, MGA, believes, at this time, that it has a significantly

6   protectable interest relating to the subject matter of the action, that the disposition

7   of the action may impair or impede MGA's ability to protect its interest absent

8   intervention, and that MGA's interest is not adequately represented by the existing

9   parties.

10      WHEREAS, Mattel is agreeable to the filing of the Answer in Intervention as

11  a procedural matter pursuant to this Stipulation, without waiver of, or prejudice to,

12  its rights, defenses or positions in this or any other action or to the Answer in

13  Intervention, including without limitation to Mattel's jurisdictional objections;

14      WHEREAS, Bryant is agreeable to the filing of the Answer in Intervention as

15  a procedural matter pursuant to this Stipulation, without waiver of, or prejudice to,

16  his rights, defenses or positions in this or any other action;

17      NOW THEREFORE, MGA, Mattel and Bryant hereby stipulate, subject to

18  this Court's approval, as follows:

19      1.      MGA may intervene as a party to this action; and

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

- 1 -

EXHIBIT _122_

PAGE _1865_

1    2.    MGA shall be permitted to file its Answer in Intervention, lodged

2    concurrently with this Stipulation.

3

4    Dated:    December 3, 2004    O'MELVENY & MYERS LLP

5

6    By: _____
           Diana M. Torres
7          Attorneys for Applicant-Intervenor
           MGA ENTERTAINMENT, INC.

8

9    Dated:    December___, 2004    QUINN EMANUEL URQUHART
                                    OLIVER & HEDGES LLP
10

11

12   By: _____
           Michael T. Zeller
13         Attorneys for Plaintiff
           MATTEL, INC.

14

15   Dated:    December___, 2004    LITTLER MENDELSON, P.C.

16

17   By: _____
           Keith A. Jacoby
18         Attorneys for Defendant
           CARTER BRYANT

19   IT IS SO ORDERED.

20

21   Dated:    December___, 2004

22

23                                  Hon. Nora M. Manella
                                    United States District Judge
24

25

26

27

28

-2-

EXHIBIT 122

PAGE 1860

2. MGA shall be permitted to file its Answer in Intervention, lodged concurrently with this Stipulation.

Dated:      December___, 2004      O'MELVENY & MYERS LLP


By:_____
        Diana M. Torres
Attorneys for Applicant-Intervenor
MGA ENTERTAINMENT, INC.


Dated:      December___, 2004      QUINN EMANUEL URQUHART
                                   OLIVER & HEDGES LLP


By:_____
        Michael T. Zeller
Attorneys for Plaintiff
MATTEL, INC.

Dated:      December___, 2004      LITTLER MENDELSON, P.C.


By:_____
        Keith A. Jacoby
Attorneys for Defendant
CARTER BRYANT

IT IS SO ORDERED.

Dated:      December_____, 2004

                                   _____
                                   Hon. Nora M. Manella
                                   United States District Judge

-2-

EXHIBIT __122__

PAGE __1867__

DEC-03-2004 09:27 FROM:LITTLE, MENDELSON    310 553 5583         2#852#12134306407    P.4/4

2.   MGA shall be permitted to file its Answer in Intervention, lodged concurrently with this Stipulation.

Dated:    December___, 2004    O'MELVENY & MYERS LLP

By:_____
    Diana M. Torres
    Attorneys for Applicant-Intervenor
    MGA ENTERTAINMENT, INC.

Dated:    December___, 2004    QUINN EMANUEL URQUHART
                              OLIVER & HEDGES LLP

By:_____
    Michael T. Zeller
    Attorneys for Plaintiff
    MATTEL, INC.

Dated:    December 3, 2004    LITTLER MENDELSON, P.C.

By:_____
    Keith A. Jacoby
    Attorneys for Defendant
    CARTER BRYANT

IT IS SO ORDERED.

Dated:    December 7th, 2004

_____
Hon. Nora M. Manella
United States District Judge

- 2 -

EXHIBIT ___122___
PAGE ___1868___

**EXHIBIT   123**

1  M. RANDALL OPPENHEIMER (S.B. #77649)
   DIANA M. TORRES (S.B. #162284)
2  O'MELVENY & MYERS LLP
   400 South Hope Street
3  Los Angeles, California 90071-2899
   Telephone: (213) 430-6000
4  Facsimile: (213) 430-6407

5  Attorneys for Applicant-Intervenor
   MGA ENTERTAINMENT, INC.

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 MATTEL, INC., a Delaware          Case No. CV 04-9059 NM (RNBx)
   Corporation,
12                                    **MGA ENTERTAINMENT, INC.'S**
                  Plaintiff,          **ANSWER IN INTERVENTION TO**
13                                    **PLAINTIFF'S UNVERIFIED**
        v.                            **COMPLAINT**
14
   CARTER BRYANT, an individual;      Hon. Nora Manella
15 and DOES 1 through 10, inclusive,

16                Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

LA2:730044

                                      ANSWER IN INTERVENTION TO
                                 PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT _____ 123_____

PAGE _____ 1869_____ #247

1      As it has now become abundantly clear that its rights are directly at stake in

2 this action, MGA Entertainment, Inc. ("MGA") intervenes in this case as a

3 defendant. Plaintiff Mattel, Inc. ("Mattel") filed suit against Carter Bryant

4 ("Bryant"), a design consultant for MGA, asserting, among other claims, that he

5 "wrongfully converted Mattel property" for his own benefit and "the benefit and

6 gain of others" and seeking both monetary and injunctive relief. It is now evident

7 that Mattel's claims are based on Mattel's misguided theory that Bryant allegedly

8 converted intellectual property from Mattel and used it as the underlying work for

9 his own and MGA's benefit. MGA reaches this conclusion in light of at least the

10 following:

11     (a)    Mattel's recent registration for an unreleased project created in

12           approximately 1999 that it now calls "Toon Teens," from which Mattel

13           has asserted in the press Bryant "borrowed liberally" for his work on

14           "Bratz," and which is also the subject of the declaratory relief action

15           that Bryant has filed;

16     (b)    the questioning of Bryant at his recent deposition focusing on the

17           creation and development of "Bratz;"

18     (c)    Mattel's recent efforts to subpoena third parties who worked on

19           MGA's "Bratz" products and have no information concerning Bryant's

20           employment relationship with Mattel; and

21     (d)    Mattel's recent attempts to assist those who have infringed MGA's

22           rights in other countries to prove (falsely) that MGA does not own the

23           copyrights to its "Bratz" products.

24 Indeed, Mattel's purported conversion claim is nothing more than a copyright claim

25 in disguise. It is preempted by federal copyright law, accordingly, and must be

26 recast as a copyright claim under federal law. This copyright action necessarily

27 implicates MGA's rights, as MGA owns all intellectual property rights in "Bratz."

28 While MGA denies that Mattel is entitled to rights in any of MGA's intellectual

EXHIBIT     23

PAGE     1870

1  property, including, without limitation, MGA's copyrights in the "Bratz" line of

2  products, MGA must now intervene in this action to defend its intellectual property

3  rights. Therefore Defendant in Intervention MGA, as answer to the Complaint

4  herein, admits, denies, and alleges as follows:

5         1.      Upon information and belief, MGA admits that Mattel is a corporation

6  organized and existing under the laws of the State of Delaware and has a place of

7  business in El Segundo, California. Except as so admitted, MGA is without

8  sufficient information to admit the allegations of ¶ 1, and on that basis denies the

9  same.

10        2.      MGA admits that defendant Bryant is an individual currently residing

11  in Springfield, Missouri.

12        3.      MGA is without sufficient information concerning either Mattel's

13  knowledge or the identities of the Doe Defendants, if any, to enable it to admit the

14  allegations of ¶ 3, and on that basis denies the same.

15        4.      MGA denies the allegations of ¶ 4.

16        5.      MGA denies the allegations of ¶ 5.

17        6.      MGA admits that Bryant does not currently reside in California and

18  that Los Angeles County is a proper venue for this action. Except as so admitted,

19  MGA denies the allegations of ¶ 6.

20        7.      MGA is without information to admit the specific allegations of ¶ 7

21  and on that basis denies the same, but admits that reports from Mattel and other

22  public sources make assertions similar to those alleged in ¶ 7.

23        8.      MGA is without information to admit the specific allegations of ¶ 8

24  pertaining to Mattel's operations, and on that basis denies the same, but admits that

25  Mattel has a large facility in El Segundo, California, in which Mattel employs a

26  number of people.

27        9.      MGA is without information to admit the specific allegations of ¶ 9

28  pertaining to Mattel's operations, and on that basis denies the same, but admits that

LA2:730044                              - 2 -              ANSWER IN INTERVENTION TO
                                                          PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT _____ 123

PAGE _____ 1871

1   Bryant was employed by Mattel during two time periods.

2       10.   MGA is informed and on that basis admits that Bryant signed

3   documents during his employment at Mattel. MGA alleges that Exhibit A speaks

4   for itself as to its contents. MGA lacks information sufficient to enable it to

5   identify or authenticate Exhibit A and on that basis denies each and every allegation

6   in ¶ 10 purporting to describe the content of Exhibit A. MGA further alleges that

7   the allegations in ¶ 10 purporting to describe the legal effect of Exhibit A consist of

8   legal argument and conclusions to which no response is required.

9       11.   MGA is informed and on that basis admits that Bryant signed

10   documents during his employment at Mattel. MGA alleges that Exhibit B speaks

11   for itself as to its contents. MGA lacks information sufficient to enable it to

12   identify or authenticate Exhibit B and on that basis denies each and every allegation

13   in ¶ 11 purporting to describe the content of Exhibit A. MGA further alleges that

14   the allegations in ¶ 11 purporting to describe the legal effect of Exhibit B consist of

15   legal argument and conclusions to which no response is required.

16       12.   MGA admits that Bryant signed a contract with MGA on or about

17   October 4, 2000 that provided that Bryant would receive royalties in connection

18   with certain work to be performed by him thereafter under that agreement, and that

19   MGA would own all intellectual property rights in property for which Bryant

20   provided services, as well as in the work assigned thereunder by Bryant to MGA.

21   Except as so admitted, MGA denies the allegations of ¶ 12.

22       13.   MGA is without information sufficient to admit the allegations in ¶ 13

23   and on that basis denies the same.

24       14.   MGA denies the allegations of ¶ 14.

25       15.   In answer to ¶ 15, MGA repeats its answers to the allegations in

26   paragraphs 1 through 14, above.

27       16.   MGA is informed and on that basis admits that Bryant signed

28   documents during his employment at Mattel. MGA alleges that any purported

EXHIBIT ___123___

PAGE ___1872___

1   "Mattel Employment Agreement" and "Conflict Questionnaire" speak for

2   themselves as to their contents.  MGA lacks information sufficient to enable it to

3   identify or authenticate the purported "Mattel Employment Agreement" and

4   "Conflict Questionnaire" and on that basis denies each and every allegation in ¶ 16

5   purporting to describe the contents of such documents.  MGA further alleges that

6   the allegations in ¶ 16 purporting to describe the legal effect of any purported

7   "Mattel Employment Agreement" or "Conflict Questionnaire" consist of legal

8   argument and conclusions to which no response is required.

9        17.    MGA alleges that any purported "Mattel Employment Agreement" and

10  "Conflict Questionnaire" speak for themselves as to their contents.  MGA lacks

11  information sufficient to enable it to identify or authenticate the purported "Mattel

12  Employment Agreement" and "Conflict Questionnaire" and on that basis denies

13  each and every allegation in ¶ 16 purporting to describe the contents of such

14  documents.  MGA further alleges that the allegations in ¶ 16 purporting to describe

15  the legal effect of any purported "Mattel Employment Agreement" or "Conflict

16  Questionnaire" consist of legal argument and conclusions to which no response is

17  required.  MGA is without sufficient information concerning Mattel's performance,

18  if any, and on that basis denies all allegations regarding the same.

19       18.    MGA denies the allegations of ¶ 18.

20       19.    MGA denies the allegations of ¶ 19 and affirmatively asserts that the

21  relief sought by Mattel in this paragraph indicates that Mattel's first cause of action

22  implicates federal copyright laws.  To the extent that Mattel herein purports to set

23  forth the allegations in support of its first cause of action to substantiate a federal

24  copyright claim, these allegations are also expressly denied.

25       20.    MGA denies the allegations of ¶ 20 except that MGA alleges that any

26  purported "Employment Agreement" speaks for itself as to its contents.  MGA

27  lacks information sufficient to enable it to identify or authenticate the purported

28  "Employment Agreement" and on that basis denies each and every allegation in ¶

LA2:730044                          - 4 -                ANSWER IN INTERVENTION TO
                                                    PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT ___123___

PAGE ___1877___

1   20 purporting to describe the contents of such document. MGA further alleges that

2   the allegations in ¶ 20 purporting to describe the legal effect of any purported

3   "Employment Agreement" consist of legal argument and conclusions to which no

4   response is required.

5       21.    In answer to ¶ 21, MGA repeats its answers to the allegations in

6   paragraphs 1 through 20, above.

7       22.    MGA is without information sufficient to admit the allegations of ¶ 22,

8   and on that basis denies same except that MGA alleges that any purported

9   "Employee Agreement" speaks for itself as to its contents. MGA lacks information

10  sufficient to enable it to identify or authenticate the purported "Employee

11  Agreement" and on that basis denies each and every allegation in ¶ 22 purporting to

12  describe the contents of such document. MGA further alleges that the allegations in

13  ¶ 22 purporting to describe the legal effect of any purported "Employee

14  Agreement" consist of legal argument and conclusions to which no response is

15  required.

16      23.    MGA denies the allegations of ¶ 23 and affirmatively asserts that the

17  relief sought by Mattel in this paragraph indicates that Mattel's first cause of action

18  implicates federal copyright laws. To the extent that Mattel herein purports to set

19  forth the allegations in support of its first cause of action to substantiate a federal

20  copyright claim, these allegations are also expressly denied.

21      24.    MGA denies the allegations of ¶ 24.

22      25.    MGA denies the allegations of ¶ 25.

23      26.    MGA denies the allegations of ¶ 26.

24      27.    MGA denies the allegations of ¶ 27.

25      28.    In answer to ¶ 28, MGA repeats its answers to the allegations in

26  paragraphs 1 through 27, above.

27      29.    MGA denies the allegations of ¶ 29.

28      30.    MGA denies the allegations of ¶ 30 and affirmatively asserts that the

LA2:730044                           - 5 -        ANSWER IN INTERVENTION TO
                                                  PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT _____ 121

PAGE _____ 4374

1    relief sought by Mattel in this paragraph indicates that Mattel's first cause of action

2    implicates federal copyright laws.  To the extent that Mattel herein purports to set

3    forth the allegations in support of its first cause of action to substantiate a federal

4    copyright claim, these allegations are also expressly denied.

5        31.    MGA denies the allegations of ¶ 31.

6        32.    MGA denies the allegations of ¶ 32.

7        33.    MGA denies the allegations of ¶ 33.

8        34.    MGA denies the allegations of ¶ 34.

9        35.    In answer to ¶ 35, MGA repeats its answers to the allegations in

10   paragraphs 1 through 34, above.

11       36.    MGA denies the allegations of ¶ 36 and affirmatively asserts that the

12   allegations in this paragraph indicate that Mattel's fourth cause of action implicates

13   federal copyright laws.  To the extent that Mattel herein purports to set forth the

14   allegations in support of its fourth cause of action to substantiate a federal copyright

15   claim, these allegations are also expressly denied..

16       37.    MGA denies the allegations of ¶ 37.

17       38.    MGA denies the allegations of ¶ 38.

18       39.    MGA denies the allegations of ¶ 39.

19       40.    In answer to ¶ 40, MGA repeats its answers to the allegations in

20   paragraphs 1 through 39, above.

21       41.    MGA denies the allegations of ¶ 41 and affirmatively asserts that the

22   allegations in this paragraph assert legal or equitable rights that are equivalent to

23   exclusive rights within the general scope of copyright protection and are, therefore,

24   expressly preempted by the Copyright Act, 17 U.S.C. § 101 *et seq.* and must be

25   recast as a federal question under copyright law.  To the extent that Mattel herein

26   purports to set forth the allegations in support of its fifth cause of action to support

27   a federal copyright claim, these allegations are also expressly denied.

28       42.    MGA denies the allegations of ¶ 42 and affirmatively asserts that the

LA2:730044                          - 6 -              ANSWER IN INTERVENTION TO
                                                       PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT ___123___

PAGE ___1875___

1   allegations in this paragraph assert legal or equitable rights that are equivalent to
2   exclusive rights within the general scope of copyright protection, which are
3   expressly preempted by the Copyright Act, 17 U.S.C. § 101 *et seq.* and must be
4   recast as a federal question under copyright law. To the extent that Mattel herein
5   purports to set forth the allegations in support of its fifth cause of action to
6   substantiate a federal copyright claim, these allegations are also expressly denied.
7        43.   MGA denies the allegations of ¶ 43 and affirmatively asserts that the
8   allegations in this paragraph assert legal or equitable rights that are equivalent to
9   exclusive rights within the general scope of copyright protection, which are
10  expressly preempted by the Copyright Act, 17 U.S.C. § 101 *et seq.* and must be
11  recast as a federal question under copyright law. To the extent that Mattel herein
12  purports to set forth the allegations in support of its fifth cause of action to
13  substantiate a federal copyright claim, these allegations are also expressly denied.
14       44.   MGA denies the allegations of ¶ 44.
15       45.   MGA denies the allegations of ¶ 45.
16
17                       **AFFIRMATIVE DEFENSES**
18       MGA asserts the following affirmative defenses:
19                   **FIRST AFFIRMATIVE DEFENSE**
20       1.    Plaintiff's Complaint and each purported claim for relief therein is
21  preempted by the Federal Copyright Act.
22                 **SECOND AFFIRMATIVE DEFENSE**
23       2.    Plaintiff's Complaint and each purported claim for relief therein fail to
24  state facts sufficient to constitute a claim for relief.
25                  **THIRD AFFIRMATIVE DEFENSE**
26       3.    Plaintiff's Complaint and each purported claim for relief therein are
27  barred by the equitable doctrine of unclean hands.
28

EXHIBIT ___B3___

PAGE ___187b___

**FOURTH AFFIRMATIVE DEFENSE**

4.      Plaintiff's Complaint and each purported claim for relief therein are barred by the equitable doctrine of waiver.

**FIFTH AFFIRMATIVE DEFENSE**

5.      Plaintiff's Complaint and each purported claim for relief therein are barred by the equitable doctrine of estoppel.

**SIXTH AFFIRMATIVE DEFENSE**

6.      Plaintiff's Complaint and each purported claim for relief therein are barred by the equitable doctrine of laches.

**SEVENTH AFFIRMATIVE DEFENSE**

7.      Plaintiff's Complaint and each purported claim for relief therein are barred by the equitable doctrine of consent.

**EIGHTH AFFIRMATIVE DEFENSE**

8.      Plaintiff's Complaint and each purported claim for relief therein, or some of them, are barred by the applicable statutes of limitations, including California Code of Civil Procedure sections 337, 339, 343 and 338(c) .

**NINTH AFFIRMATIVE DEFENSE**

9.      Plaintiff's Complaint and each purported claim for relief therein, or some of them, are barred because no Defendant owed a legal duty to Plaintiff or, if any legal duty arose, it was not breached by any Defendant.

**TENTH AFFIRMATIVE DEFENSE**

10.     Without admitting, and specifically denying, that any Defendant owed any duty to Plaintiff, any duty or obligation, contractual or otherwise, which Plaintiff claims was owed by any Defendant has been fully performed, satisfied and/or discharged.

**ELEVENTH AFFIRMATIVE DEFENSE**

11.     Plaintiff's Complaint and each purported claim for relief therein are barred because each Defendant has complied fully with his and/or its obligations, if

LA2:730044

- 8 -

ANSWER IN INTERVENTION TO
PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT ___
PAGE ___

1   any, under all applicable laws.

2             **TWELFTH AFFIRMATIVE DEFENSE**

3       12.   Plaintiff's Complaint and each purported claim for relief therein are

4   barred because Plaintiff has failed to exercise reasonable diligence in properly

5   mitigating its damages, if any in fact were suffered.

6            **THIRTEENTH AFFIRMATIVE DEFENSE**

7       13.   Plaintiff's Complaint and each purported claim for relief therein are

8   barred because the alleged losses or harms sustained by Plaintiff, if any, resulted

9   from causes other than any act or omission by any Defendant.

10           **FOURTEENTH AFFIRMATIVE DEFENSE**

11       14.   Plaintiff's Complaint and each purported claim for relief therein, or

12   some of them, are barred because to the extent Plaintiff has suffered any harm, and

13   Defendant in Intervention denies that Plaintiff has suffered any harm, it is due to

14   Plaintiff's own acts and omissions.

15            **FIFTEENTH AFFIRMATIVE DEFENSE**

16       15.   Plaintiff's Complaint and each purported claim for relief therein, or

17   some of them, are barred because any alleged contract between Plaintiff and

18   Defendant Bryant fails for lack of consideration, is vague and uncertain, and

19   therefore is void, voidable and/or unenforceable.

20            **SIXTEENTH AFFIRMATIVE DEFENSE**

21       16.   Plaintiff's Complaint and each purported claim for relief therein, or

22   some of them, are barred because any breaches of an alleged contract or duty,

23   which Defendant in Intervention denies, are excused by Plaintiff's acts or

24   omissions.

25           **SEVENTEENTH AFFIRMATIVE DEFENSE**

26       17.   To the extent Plaintiff's Complaint and any purported claim for relief

27   therein, or some of them, seek the remedy of injunctive relief, that remedy is barred

28   because Plaintiff's remedies at law are adequate and any alleged harms, and

ANSWER IN INTERVENTION TO
PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT _____ ₿₿

PAGE _____ 1878

1   Defendant in Intervention denies that there are harms, are not irreparable.

2   **EIGHTEENTH AFFIRMATIVE DEFENSE**

3   18.    Plaintiff's Complaint and each purported claim for relief therein

4   cannot be maintained because any duties or obligations, contractual or otherwise,

5   which Plaintiff claims are owed by Defendant Bryant, are contrary to applicable

6   law.

7   **NINETEENTH AFFIRMATIVE DEFENSE**

8   19.    Plaintiff is barred from recovering punitive and/or exemplary damages

9   from Defendant or Defendant in Intervention ("Defendants") because an award of

10  such damages would violate the United States and/or California Constitutions, and

11  applicable case law.

12  **TWENTIETH AFFIRMATIVE DEFENSE**

13  20.    Defendant in Intervention does not presently know all facts concerning

14  the conduct of Plaintiff sufficient to state all affirmative defenses at this time.

15  Defendant in Intervention will seek leave of Court to amend this Answer in

16  Intervention should it later discover facts demonstrating the existence of additional

17  affirmative defenses.

18

19  **WHEREFORE**, Defendant in Intervention prays for judgment as follows:

20  1.    Plaintiff's Complaint shall be dismissed in its entirety with prejudice;

21  2.    Plaintiff shall take nothing by its action against Defendant;

22  3.    Defendant in Intervention shall be awarded its costs of suit and

23  attorneys' fees incurred in this matter (to the extent permitted by applicable law);

24  and

25  4.    Defendant in Intervention shall be awarded such other further relief as

26  may be deemed just and proper.

27

28

LA2:730044                                     - 10 -                 ANSWER IN INTERVENTION TO
                                                                      PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT ___*23*___

PAGE ___*1879*___

1    Dated:        December 3, 2004

2                                          O'MELVENY & MYERS LLP

3

4                                          By _____

5                                               Diana M. Torres
                                           Attorneys for Defendant-in-Intervention
6                                          MGA ENTERTAINMENT, INC.

7

8    LA2:730044

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA2:730044                    - 11 -
                                               ANSWER IN INTERVENTION TO
                                          PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT 123
PAGE 1880