THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
MARINA V. BOGORAD (Bar No. 217524)
(mbogorad@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Los Angeles, CA  90071-3144
Tel.: (213) 687-5000 / Fax: (213) 687-5600

KENNETH PLEVAN (admitted *pro hac vice*)
(kplevan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square, New York, NY 10046
Tel.: (212) 735-3000 / Fax: (212) 735-2000

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                              Plaintiff,<br><br>          v.<br><br>MATTEL,     INC.,     a     Delaware corporation,<br><br>                              Defendant.<br><br>AND CONSOLIDATED ACTIONS<br><br><br><br>**PUBLIC REDACTED** | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated   with   Case   No.   04-9059 and Case No. 05-2727<br><br>Honorable Stephen G. Larson<br><br>MGA PARTIES' MEM. OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>**FILED UNDER SEPARATE COVER**:<br>(1) MGA PARTIES' OPP'N TO MATTEL, INC.'S [CORRECTED] SEP. STMT. OF UNCONTESTED FACTS AND CONCLUSIONS OF LAW;<br>(2) DECLARATIONS OF THOMAS J. NOLAN, ROBERT TONNER, CARTER BRYANT, PETER S. MENELL, GLENN V. VILPPU and PAULA GARCIA;<br>(3) MGA PARTIES' OPP'N TO MATTEL, INC.'S REQ. FOR JUDICIAL NOTICE;<br>(4) MGA PARTIES' REQ. FOR JUDICIAL NOTICE;<br>(5) MGA PARTIES' OBJECTIONS TO MATTEL, INC.'S EVIDENCE;<br>(6) [PROPOSED] ORDER; and<br>(7) PROOF OF SERVICE.<br><br>Hearing Date: April 22, 2008; Time: 10:00 a.m. |

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................ 1

ARGUMENT ........................................................................................... 3

I.  THERE ARE GENUINE FACTUAL ISSUES PRECLUDING
    SUMMARY JUDGMENT ON MATTEL'S CLAIM OF COPY-
    RIGHT INFRINGEMENT ................................................................ 3

    A.  Summary Judgment On Substantial Similarity Is Almost
        Never Proper ........................................................................... 3

    B.  Applicable Legal Standards ..................................................... 5

        1.  The "Intrinsic/Extrinsic" Test For Copyright
            Infringement ................................................................... 5

        2.  The Appropriate Extrinsic "Virtual Identity" Analysis ................. 7

        3.  Standards for Proving /Disproving Factual Copying ................... 7

            (a)  Evidence of Independent Creation ........................... 7

            (b)  Mattel's Reliance on the "Inverse Ratio" Rule ................. 8

    C.  Some Of The Genuine Factual Issues That Remain
        Unresolved ............................................................................... 9

        1.  Evidence of Independent Creation ................................. 9

        2.  Mattel's Similarity Analysis Is Completely
            Controverted by Vilppu .............................................. 10

        3.  Filtration of Unprotectable Elements Based on Analytic
            Dissection .................................................................. 12

            (a)  Bryant's Contributions Were Unprotectable
                 "Ideas" .......................................................... 13

            (b)  Similarities of Human Anatomy and Standard
                 Proportioning ................................................... 13

            (c)  The Concept of Big Head/Big Feet/Big Eyes Was
                 Not Original ..................................................... 13

            (d)  Mimicking Contemporary Fashions Was Not
                 Original .......................................................... 14

    D.  Mattel's Attempt To Rely On Collateral Evidence Is
        Misplaced ............................................................................. 14

II.   MGA AND LARIAN DID NOT AID AND ABET ANY BREACH OF DUTY ................................................................................... 15

   A.   By Meeting, Negotiating and Signing A Contract, Bryant and the MGA Parties Did Not Violate Any Duty to Mattel as a Matter of Law ........................................................................... 16

   B.   Assuming Bryant Breached Duties Owed to Mattel, There Are Genuine Issues Whether the MGA Parties Had Actual Knowledge of the Breaches ................................................. 17

   C.   Whether MGA and Larian Substantially Assisted Bryant in His Purported Breaches of Duty Presents a Genuine Issue of Fact ..................................................................................... 20

   D.   Mattel Did Not Prove as an Undisputed Fact that any Actions or Omissions of MGA Parties Caused Damage to Mattel ................... 21

III.  MATTEL IS NOT ENTITLED TO SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS DEFENSE AS ALL ITS CLAIMS ARE TIME BARRED .......................................................................... 21

   A.   Mattel Was on Notice Of Its Claims Years Before November of 2003 .................................................................................... 22

   B.   Mattel's Claims Against MGA Had Expired Prior to Filing the '04 Complaint ............................................................................. 24

   C.   Mattel's Only Claim that Could Be Revived by the "Relation-Back" Doctrine Is Made Against "New" Defendants and Cannot Relate Back, as Mattel Knew of these Defendants at the Time of the Original Complaint .......................................... 26

IV.   THERE ARE ISSUES OF MATERIAL FACT PRECLUDING DISMISSAL OF THE MGA PARTIES' OTHER AFFIRMATIVE DEFENSES .................................................................................... 27

   A.   Mattel Is Not Entitled to Summary Judgment on the Laches Defense .................................................................................... 27

      1.   Laches Is Not Appropriately Resolved on Summary Judgment ........................................................................ 27

      2.   Mattel's Delay in Bringing Suit Is Unreasonable and Prejudicial ...................................................................... 28

         (a)   Mattel's Delay in Asserting Claims Was Unreasonable ......................................................... 29

         (b)   The MGA Parties Were Prejudiced by Mattel's Delay ................................................................... 29

   B.   There Are Genuine Issues On MGA's Defense Under 17 U.S.C. § 205 ................................................................... 30

C.    MGA Can Present Evidence of Good Faith Where Mattel's Alleges Intent ................................................................. 31

    1.    Mattel's Copyright Claims Include an Element of Scienter ................................................................. 32

    2.    Mattel's Conversion Claims Include an Element of Scienter ................................................................. 32

    3.    Unfair Competition Claims Require a Showing of Scienter ................................................................. 33

    4.    Interference and Aiding and Abetting Require Intent ................. 33

    5.    There Is At Least A Genuine Issue On the MGA Parties' Good Faith ................................................... 33

D.    There Are Genuine Issues On The Defense Of Waiver ....................... 34

E.    There Are Genuine Issues On The Defense Of Estoppel ..................... 35

F.    There Are Genuine Issues On the Defense of Consent ......................... 37

G.    There Are Genuine Issues On The Acquiescence Defense .................. 37

H.    There Are Genuine Issues On The Abandonment Defense.................. 38

I.    Mattel Failed to Mitigate Its Alleged Damages .................................... 39

V.    IF THE COURT HAS ANY DOUBTS, THEN THE MGA PARTIES ARE ENTITLED TO 56(F) RELIEF TO OBTAIN PENDING DISCOVERY ................................................................. 40

CONCLUSION ................................................................................ 40

**TABLE OF AUTHORITIES**

<u>CASES</u>

American Mortgage Network v. LoanCity.com,
    D 044550,
    2006 WL 3199291 (Cal. App. Nov. 7, 2006) ................................................ 16

Apple Computer, Inc. v. Microsoft Corporation,
    35 F.3d 1435 (9th Cir. 1994)............................................................. 2, 5, 13

Ard v. County of Contra Costa,
    93 Cal. App. 4th 339 (2001)............................................................ 35

Arnstein v. Porter,
    154 F.2d 464 (2d Cir. 1946) .............................................................. 8

Bank of the West v. Superior Court,
    2 Cal. 4th 1254 (1992) .................................................................. 33

Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.,
    131 Cal. App. 4th 802 (2005).................................................... 16, 17

Bensbargains.net v. xpbaragins.com,
    No. 06CV1445 BTM, 2007 WL 2385092
    (S.D. Cal. Aug. 16, 2007) ................................................................. 8

Berkic v. Crichton,
    61 F.2d 1289 (9th Cir. 1985) ............................................................. 6

Berkla v. Corel Corporation,
    66 F. Supp. 2d 1129 (E.D. Cal. 1999) ................................................ 8

Bickel v. City of Piedmont,
    16 Cal. 4th 1040 (1997) .................................................................. 34

Bratton v. Bethlehem Steel Corporation,
    649 F.2d 658 (9th Cir. 1980)........................................................27-28

Butler v. San Diego District Attorneys Office,
    No. 01CV2087 BTM (JMA), 2007 WL 935711
    (S.D. Cal. Feb. 27, 2007) ................................................................. 23

Casey v. U.S. Bank National Association,
    127 Cal. App. 4th 1138 (2005)......................................................... 16

Cavalier v. Random House, Inc.,
    297 F.3d 815 (9th Cir. 2002)...................................................... 4, 5, 7

CDN Inc. v. Kapes,
    197 F.3d 1256 (9th Cir. 1999) ............................................................. 6

Chosun Int'l Inc. v. Chrisha Creations, Ltd.,
    413 F.3d 324 (2nd Cir. 2005) ............................................................. 14

City of Long Beach v. Mansell,
    3 Cal. 3d 462 (1970) ........................................................................ 35

Community Assisting Recovery v. Aegis Security Insurance Company,
    92 Cal. App. 4th 886 (2001) ............................................................. 33

Cosmos Jewelry Ltd. v. Po Sun Hon Company,
    470 F. Supp. 2d 1072 (C.D. Cal. 2006) ............................................... 7

Couveau v. American Airlines,
    218 F.3d 1078 (9th Cir. 2000) ........................................................... 27

Cummings v. United States,
    704 F.2d 437 (9th Cir. 1983) ............................................................. 25

Danjaq LLC v. Sony Corporation,
    263 F.3d 942 (9th Cir. 2001) ....................................................... 29, 30

Davis v Outdoor Equipment Company,
    551 S.W.2d 72 (Tex. Ct. App. 1977) .................................................. 25

DePinto v. Provident Sec. Life Insurance Company,
    323 F.2d 826 (9th Cir. 1963) ............................................................. 25

Edenbaum v. Dalton,
    No. D037255,
    2002 WL 31474450 (Cal. App. Nov. 6, 2002) .................................... 18

Edward Brown & Sons v. City and County of San Francisco,
    36 Cal. 2d 272 (1950) ...................................................................... 37

Eichman v. Fotomat Corporation,
    880 F.2d 149 (9th Cir. 1989) ............................................................. 22

Elmore v. Oak Valley Hospital District,
    204 Cal. App. 3d 716 (1988) ............................................................. 35

Espino v. Ocean Cargo Line, Ltd.,
    382 F.2d 67 (9th Cir. 1967) ............................................................... 28

Family Home & Finance Center., Inc. v. Federal Home Loan Mortgage Corporation,
    461 F. Supp. 2d 1188 (C.D. Cal. 2006) .......................................................... 33

Feist Publications, Inc. v. Rural Telephone Service, Company,
    499 U.S. 340 (1990) ........................................................................................ 9

Fidelity Appraisal Company v. Federal Appraisal Company,
    217 Cal. 307 (1933) ....................................................................................... 33

Funky Films, Inc. v. Time Warner Entertainment Company, L.P.,
    462 F.3d 1072 (9th Cir. 2006) ..................................................................... 3, 5

Ganley v. County of San Mateo,
    No. C06-3923 THE,
    2007 WL 902551 (N.D. Cal. Mar. 22, 2007) .......................................... 34, 35

Garamendi v. SDI Vendome S.A.,
    276 F. Supp. 2d 1030 (C.D. Cal. 2003) ........................................................ 22

Gerard v. Ross,
    204 Cal. App. 3d 968 (1988) ........................................................................ 17

Grisham v. Philip Morris U.S.A., Inc.,
    40 Cal. 4th 623 (2007) ................................................................................. 26

Haas v. Leo Feist, Inc.,
    234 F. 105 (S.D.N.Y. 1916) .................................................................... 28, 29

Harper House v. Thomas Nelson,
    889 F.2d 197 (9th Cir. 1989) .......................................................................... 7

Herbert Rosenthal Jewelry Corporation v. Kalpakian,
    446 F.2d 738 (9th Cir. 1971) ..................................................................... 8, 13

Hill v. Kaiser Aetna,
    130 Cal. App. 3d 188 (1982) ........................................................................ 35

Hynix Semiconductor Inc. v. Rambus Inc.,
    No. CV-00-2090SRMW, 2007 WL 3284060
    (N.D. Cal. Nov. 2, 2007) .............................................................................. 22

Idema v. Dreamworks, Inc.,
    162 F. Supp. 2d 1129 (C.D. Cal. 2001) ................................................. 6, 7, 13

Identity Arts v. Best Buy Entertainment Services, Inc.,
    No. C 05-4656 PJH, No. C 06-1631 PJH,
    2007 U.S. Dist LEXIS 32060 (C.D. Cal. 2007)..................................4

International Telephone & Telegraph v. General Telephone & Electronics,
    Corporation,
    518 F.2d 913 (9th Cir. 1975)...............................................28

Jada Toys, Inc.v. Mattel, Inc.,
    __ F.3d __, NO. 05-55627,
    2008 WL 450891 (9th Cir. Feb. 21, 2008) .....................................1

Jarrow Formulas, Inc. v. Nutrition Now, Inc.,
    304 F.3d 829 (9th Cir. 2002)...............................................28

Jolly v. Eli Lilly & Company,
    44 Cal. 3d 1103 (1988) ..................................................23, 24

Jones v. Blanas,
    393 F.3d 918 (9th Cir. 2004)...............................................40

Kling v. Hallmark Cards, Inc,
    225 F.3d 1030 (9th Cir. 2000) ............................................2, 27

Korea Supply Company v. Lockheed Martin Corporation,
    109 Cal. Rptr. 2d 417 (Cal. App. Jul. 18, 2001),
    rev'd in part by, 29 Cal. 4th 1134 (2003) ...................................25

Kramer v. Thomas,
    No. CV 05-8381 AGCTX,
    2006 WL 4729242 (C.D. Cal. Sept. 28, 2006) ................................35

Leonard v. City of Oakland,
    No. C-92-4937 MHP,
    1993 WL 341285 (N.D. Cal. Aug. 23, 1993) ................................27

Lindley v. General Electric Company,
    780 F.2d 797 (9th Cir. 1986)...............................................27

Litchfield v. Spielberg,
    736 F.2d 1352 (9th Cir. 1984)...............................................3

Lopez v. Electrical Rebuilders, Inc.,
    416 F. Supp. 1133 (C.D. Cal. 1976)........................................39

Lyons Partnership, L.P. v. Morris Costumes, Inc.,
    243 F.3d 789 (4th Cir. 2001)...............................................28

Massachusetts Mutual Life Insurance Company v. Superior Court,
    97 Cal. App. 4th 1282 (2002)..........................................................26

Mattel, Inc. v. Goldberger Doll Manufacturing Company,
    365 F.3d 133 (2d Cir. 2004)..................................................... 6, 13

McLaughlin v. Liu,
    849 F.2d 1205 (9th Cir. 1988).......................................................34

Mendelsohn v. Capital Underwriters, Inc.,
    490 F. Supp. 1069 (N.D. Cal. 1979)................................................20

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007)...........................................35

Metro Traffic Control, Inc. v. Shadow Traffic Network,
    22 Cal. App. 4th 853 (1994).....................................................32-33

Miller v. Maxwell's International, Inc.,
    991 F.2d 583 (9th Cir. 1993).........................................................28

Miller v. Miramax Film Corporation,
    CV 99-08526 DDP (AJWx),
    2001 U.S. Dist. LEXIS 25967 (C.D. Cal. 2001)................................8

MJT Securities, LLC v. Toronto-Dominion Bank,
    No. C 03-3815 CW, 2007 WL 1725421
    (N.D. Cal. June 14, 2007) ............................................................16

Moore v. Regents of University of California,
    51 Cal. 3d 120 (1990) .................................................................32

Muraoka v. Budget Rent-A-Car, Inc.,
    160 Cal. App. 3d 107 (1984).........................................................35

In re Napster, Inc. Copyright Litigation,
    462 F. Supp. 2d 1060 (N.D. Cal. 2006)..........................................24

Neilson v. Union Bank of California N.A.,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................... 16, 17, 20

Nichols v. Universal Pictures Corp.,
    45 F.2d 119 (2d Cir. 1930)...........................................................6

Norgart v. Upjohn Company,
    21 Cal. 4th 383 (1999) ................................................................23

Novell Inc. v. Weird Stuff, Inc.,
    0094 WL 16458729 (N.D. Cal. Aug. 2, 1993) .................................35

Oliker v. Gershunoff,
    195 Cal. App. 3d 1288 (1987).......................................................34

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Orlando Residence, Ltd. v. GP Credit Company, LLC,
       No. 04-C-439,
       2006 WL 2849866 (E.D. Wis. Sept. 29, 2006) ................................. 40

Papenthien v. Papenthien,
       16 F. Supp. 2d 1235 (S.D. Cal. 1998) ............................................ 25

People v. Sangiacomo,
       129 Cal. App. 3d 364 (1982) .......................................................... 38

People v. Webb,
       74 Cal. App. 4th 688 (1999) ...................................................... 31, 33

Peterson v. Dein,
       No. C050530,
       2006 WL 3020935 (Cal. App. Oct. 25, 2006) ............................... 22

Polar Bear Products, Inc. v. Timex Corporation,
       384 F.3d 700 (9th Cir. 2004) .......................................................... 24

Read v. Turner,
       239 Cal. App. 2d 504 (1966) .......................................................... 39

Resolution Trust Corporation v. Rowe,
       No. C 90-20114 BAC,
       1993 WL 183512 (N.D. Cal. Feb. 8, 1993) ................................... 20

Richard B. LeVine, Inc. v. Higashi,
       131 Cal. App. 4th 566 (2005) .................................................... 15, 33

River Colony Estates General Partnership v. Bayview
       Financial Trading Group, Inc.,
       287 F. Supp. 2d 1213 (S.D. Cal. 2003) ......................................... 16

Russell v. Price,
       612 F.2d 1123 (9th Cir. 1979) ........................................................ 30

Sandvik v. Alaska Packers Association,
       609 F.2d 969 (9th Cir. 1979) .......................................................... 28

Sarkes Tarzian, Inc. v. Audio Devices, Inc.,
       166 F. Supp. 250 (S.D. Cal. 1958),
       aff'd, 283 F.2d 695 (9th Cir. 1960) ................................................ 18

Satava v. Lowry,
       323 F.3d 805 (9th Cir. 2003) ...................................................... 7, 13

Sawyer v. Sonoma County,
       719 F.2d 1001 (9th Cir. 1983) ........................................................ 35

Security Pacific National Bank v. Wozab,
       51 Cal. 3d 991 (1990) ..................................................................... 37

Shaw v. Lindheim,
        919 F.2d 1353 (9th Cir. 1990) ............................................................ 3

Siam v. Potter,
        2005 U.S. Dist. LEXIS 11893 (N.D. Cal. May 16, 2005) .............................. 39

Sid & Marty Krofft Television Products, Inc. v. McDonald's Corp.,
        562 F.2d 1157 (9th Cir. 1977) ............................................................ 5

Siegel v. Time Warner Inc.,
        496 F. Supp. 2d 1111 (C.D. Cal. 2007) ................................................ 6

Smart Inventions, Inc. v. Allied Communications Corporation,
        94 F. Supp. 2d 1060 (C.D. Cal 2000) .................................................. 13

Smith v. Jackson,
        84 F.3d 1213 (9th Cir. 1996) ............................................................ 3

Snapp & Associates Insurance Services, Inc. v. Malcolm Bruce
        Burlingame Robertson,
        96 Cal. App. 4th 884 (2002) ............................................................ 22

Sobhani v. @Radical.Media, Inc.,
        257 F. Supp. 2d 1234 (C.D. Cal. 2003) ................................................ 8

Soliman v. Philip Morris Inc.,
        311 F.3d 966 (9th Cir. 2002) ............................................................ 23

Sony Pictures Entertainment, Inc. v. Fireworks Entertainment Group, Inc.,
        156 F. Supp. 2d 1148 (C.D. Cal. 2001) ................................................ 4

State Department of Health Services v. Superior Court,
        31 Cal. 4th 1026 (2003) ................................................................. 35

Streamcast Networks, Inc. v. Skype Technologies, S.A.,
        No. CV-06-391 FMC (EX), 2006 WL 5441237
        (C.D. Cal. Sept. 14, 2006) .............................................................. 27

Swirsky v. Carey,
        376 F.3d 841 (9th Cir. 2004) ......................................................... 3, 6-7

Three Boys Music v. Bolton,
        212 F.3d 477 (9th Cir. 1999) ............................................................ 8

United States v. King Features Entertainment Inc.,
        843 F.2d 394 (9th Cir. 1988) ........................................................... 34

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Watermark Publishers. v. High Technology Systems,
        No. 95-3839-IEG (CGA), 1997 WL 717677,
        44 U.S.P.Q. 2d 1578 (S.D. Cal. 1997)..................................................... 29, 30

Williams v. Crichton,
        84 F.3d 581 (2d Cir. 1996).............................................................. 6, 13

Wood v. Santa Barbara Chamber of Commerce, Inc.,
        705 F.2d 1515 (9th Cir. 1983)............................................................... 23

Zella v. E.W. Scripps Company,
        529 F. Supp. 2d 1124 (C.D. Cal. 2007) ............................................. 4, 8

Zivkovic  v. Southern California Edison Company,
        302 F.3d 1080 (9th Cir. 2002).............................................................. 32

**STATUTES**

Cal. Bus. & Prof. Code § 16600....................................................................... 32

Cal. Civ. Code § 3515..................................................................................... 37

Cal. Civ. Code § 3516..................................................................................... 37

Cal. Civ. Proc. Code § 474............................................................................. 27

Cal. Penal Code § 641.3.................................................................................. 33

17 U.S.C. § 504(c)(2)...................................................................................... 32

17 U.S.C. § 507(b)........................................................................................... 26

**MISCELLANEOUS**

2 Nimmer on Copyright § 7.16 (2007) ............................................................ 31

3 Nimmer on Copyright § 12.10 [B][2][b] (2007) ........................................... 8

4 Nimmer on Copyright § 13.03[D] (2007)................................................. 8, 9

4 Nimmer on Copyright § 13.06 (2007) ...................................................38-39

Moore's Federal Practice 3d § 15.20 3 ......................................................... 26

43 Cal. Jur. 3d Limitation of Actions § 150 ................................................. 27

5 B.E. Witkin, California Procedure: Pleadings § 1008 (4th ed. 1997).................... 31

Robert C. Lind, Copyright Law (3d ed.) ................................................. 6, 7, 9

## PRELIMINARY STATEMENT

The MGA Parties highlighted in their summary judgment motion that Mattel had embarked on a campaign to "█████████████████" and engaged in a pattern of overreaching in litigation to carry out that goal.  Mattel's summary judgment motion merely confirms this approach.  Under the guise of "streamlining the issues," Mattel seeks summary judgment on its copyright, contract, and tort claims and to do away with <u>all</u> of the MGA Parties' affirmative defenses.  However, Mattel's overreaching motion shows neither that Mattel is entitled to judgment as a matter of law nor that the undisputed facts support its contentions.  If anything, the MGA Parties are entitled to summary judgment on every issue.

<u>First</u>, MGA joins Carter Bryant's Memorandum of Points and Authorities in Opposition to Mattel, Inc.'s Motion for Partial Summary Judgment ("Bryant Opp'n"), which shows that Mattel's contractual arguments fail. The plain language of the Inventions Agreement shows it does not convey the rights that Mattel claims. Even if one could construct an interpretation supporting Mattel, Bryant offers a more plausible construction that Mattel has no rights under that agreement. Because the agreement is a purported transfer of copyright interests (and a contract of adhesion), Section 204 of the Copyright Act and basic contract law compel that if the contract is ambiguous (and it is), then Mattel loses, as such rights cannot be transferred unless done so clearly and unambiguously.

<u>Second</u>, Mattel's request for partial summary judgment on infringement (based on its assumption that it owns certain of Bryant's BRATZ drawings created or colored while employed at Mattel) is built upon faulty statements of the law and improper analysis of the works.  Mattel proposes a standard that the Ninth Circuit has squarely rejected and then purports to apply it to the facts by ignoring the record and MGA Parties' expert reports. As Mattel well knows, having had summary judgment <u>reversed</u> on this very issue, summary judgment on the factually intense issue of "substantial similarity" is strongly disfavored. <u>Jada Toys, Inc. v. Mattel, Inc.</u>, __ F.3d __, 2008 WL 450891, at *6 (9th Cir. 2008).  Not only is Mattel unable to prove that it owns a copyright interest in any of the BRATZ drawings (at best, there is a genuine issue under the contract), but also cannot prove as a

matter of law that the drawings it challenges are substantially similar to the BRATZ dolls purchased by consumers.  Moreover, although required, Mattel made no effort to "filter" the protected elements of the sketches from the portions that are unprotected by copyright law. As this is a prerequisite to prove infringement, see Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994), Mattel's motion cannot be granted. (See Section I, infra.)

Third, Mattel seeks summary judgment that MGA and Larian aided and abetted Bryant in breaching his purported fiduciary duty and duty of loyalty to Mattel. There are many genuine issues, including: whether there is a duty at all, whether MGA and Larian had actual knowledge that Bryant owed or breached such duties given his contrary written representations, and whether MGA's and Larian's conduct in interviewing and hiring Bryant (an at-will employee) constitutes substantial assistance.  (See Section II, infra.)

Fourth, Mattel seeks summary judgment on the MGA Parties' statute of limitations defenses by ignoring the undisputed record that Mattel was on inquiry notice as early as February of 2001 and no later than March of 2002.  As Mattel's claims expired long before Mattel ever sued the MGA Parties, they are time-barred.  At best for Mattel, there would be genuine issue such that the defense would go to a jury for resolution.  (See Section III, infra.)

Finally, Mattel unleashes a litany of unsubstantiated of attacks on the MGA Parties' remaining affirmative defenses, which range from the specious to the absurd. For example, Mattel arguing that laches is not a defense to its claims and then that the facts purportedly do not support the defense. Nonsense. Laches is a defense to a copyright action and bars a calculated delay by a putative copyright holder in asserting claims only if defendant's investment yields a valuable copyrighted work. Mattel well knows that summary judgment is improper on laches, as the Ninth Circuit reversed it the last time it sought summary judgment on laches. Kling v. Hallmark Cards, Inc., 225 F.2d 1030, 1041 (9th Cir. 2000).

Mattel also seeks summary judgment on the MGA Parties' defense of good faith.  Out of an abundance of caution (knowing Mattel's propensity to overreach), MGA Parties' prior counsel asserted good faith as an affirmative defense, even though evidence of good faith is admissible to negate an element of any claim alleging intent.  Exalting form over substance,

Mattel seeks summary judgment that good faith is not an affirmative defense, in effect clarifying that Mattel, not the MGA Parties, bears the burden on intent. Mattel's challenges to the MGA Parties' remaining defenses are equally untenable.  (Section IV, infra.)

## ARGUMENT[1]

## I.    THERE ARE GENUINE FACTUAL ISSUES PRECLUDING SUMMARY JUDGMENT ON MATTEL'S CLAIM OF COPYRIGHT INFRINGEMENT

### A.    Summary Judgment On Substantial Similarity Is Almost Never Proper

Summary judgment is disfavored on questions of substantial similarity, and "[w]here reasonable minds could differ on the issue of substantial similarity, summary judgment is improper."  Shaw v. Lindheim, 919 F.2d 1353, 1355 (9th Cir. 1990). Accord Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004) (reversing summary judgment on substantial similarity); Litchfield v. Spielberg, 736 F.2d 1352, 1355-58 (9th Cir. 1984). Although accused infringers occasionally obtain summary judgment by showing the lack of "substantial similarity" under the objective "extrinsic" prong of the two-prong "extrinsic/intrinsic" infringement test, plaintiffs almost never are granted summary judgment for alleged copyright infringement because "the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury."  Funky Films, Inc. v. Time Warner Entm't Co., L.P., 462 F.3d 1072, 1077 (9th Cir. 2006).  Accord Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996) ("intrinsic test's subjective inquiry must be left to the jury and ... summary judgment must be denied"). Mattel's own expert concedes that "

"  (Lind Report at 10; see also id. at 9 ("

[1]    To avoid repetition, the MGA Parties refer the Court to their summary judgment papers, as well as Bryant's summary judgment submissions and opposition for the facts relevant to the arguments herein and incorporate them by reference.  (See MGA MSJ at 4-15; Bryant MSJ at 3-8; Bryant Opp'n § II.) All "OF" references below are to MGA Parties' Opposition to Mattel, Inc.'s Separate Statement of Uncontroverted Facts and Conclusions of Law, filed concurrently herewith. All "MGA UF", "Mattel UF" and "Bryant UF" references are to MGA Parties', Mattel's, and Bryant's Separate Statements of Uncontroverted Facts and Conclusions of Law, respectively.

1 ████████████████████████████████████████████████████████████ ").)[2]

2   Mattel's request for summary judgment on infringement should be denied as it is

3 based on disputed facts and an erroneous recitation and application of the legal standards.

4 Although Mattel concedes the propriety of the two-part "extrinsic/intrinsic" test for

5 copyright infringement, it does not properly apply either part of that test. The "extrinsic"

6 prong of the test requires that the Court eliminate elements of the allegedly infringed work

7 that are not protected by copyright law and limit the inquiry to whether the "protectable

8 elements" in the copyrighted and accused works, standing alone, are "substantially similar."

9 Mattel makes no effort whatsoever to parse the allegedly protectable elements in Bryant's

10 sketches from those that are unprotected (see, e.g., uncopyrightable "ideas," "scenes à

11 faire," etc.). This fundamental failure alone dooms Mattel's motion.

12   MGA Parties' experts show that when Bryant's sketches are filtered of their

13 unprotectable elements, little original expression remains and that expression is not

14 duplicated in the BRATZ dolls.  They also show that the sketches and dolls are not

15 "substantially similar" under the extrinsic part of the infringement test.  They also show that

16 Bryant's sketches are only entitled to "thin" copyright protection and that the subjective,

17 "intrinsic" part of the infringement test should be conducted under a "virtually identical

18 standard," not the "substantially similar" standard cited by Mattel.  Copyright infringement

19 for works that are only entitled to "thin" protection exists only if the protectable elements in

20 the sketches were essentially directly copied in the dolls.   That is plainly not the case here.

21   Mattel relies on its expert's (Loetz) opinion that the " ████████████████

22 ████████████████████████████████████████████████ " But

23 Loetz failed to "filter" protectable and unprotectable elements. And MGA Parties' expert,

24 Vilppu (Loetz's former teacher, who Loetz recognizes as one of the " ████████████

25 ─────────────────
[2]   Accord Cavalier v. Random House, Inc., 297 F.3d 815, 824 (9th Cir. 2002) (same); Zella v.

26 E.W. Scripps Co., 529 F. Supp. 2d 1124, 1133 n.8 (C.D. Cal. 2007) ("Only extrinsic test is
assessed prior to a jury trial … because 'intrinsic test, which examines an ordinary person's

27 subjective impressions of the similarities between two works, is exclusively the province of the
jury.'"); Identity Arts v. Best Buy Enter. Serv., Inc., 2007 WL 1149155, at *8 (C.D. Cal. Apr. 18,

28 2007); Sony Pictures Entm't. v. Fireworks Entm't, 156 F. Supp. 2d 1148, 1157 (C.D. Cal. 2001).

1  ▮ ''), shows that Loetz's analysis is simply wrong.  In his 50+ page report, Vilppu refutes

2  Loetz's similarity analysis point-by-point, showing that the differences between the

3  sketches and dolls are considerable, and that Loetz's "similarities" are mostly irrelevant, as

4  they represent standard and well-known aspects of human anatomy and character art.

5      Finally, material fact disputes exist on the issue of "factual" copying.  While there is

6  no dispute that MGA started with Bryant's sketches as the inspiration for the first

7  generation BRATZ dolls, the doll design moved well beyond those sketches, after MGA's

8  initial assessment revealed that MGA wanted a different look and feel to the dolls.  Thus,

9  the record includes direct evidence of significant development of the dolls independent of

10  Bryant's sketches, and this evidence is confirmed by MGA Parties' experts, who document

11  the numerous significant differences between Bryant's sketches and BRATZ dolls.

12      **B.  Applicable Legal Standards**

13          **1.  The "Intrinsic/Extrinsic" Test For Copyright Infringement**

14      Although it does not correctly apply it, Mattel admits that determining whether two

15  works are substantially similar involves an extrinsic (objective) test and intrinsic (subjective)

16  test.  (Mattel MSJ at 12.) See also Swirsky, 376 F.3d at 845; Apple, 35 F.3d at 1443.

17      The extrinsic test considers whether two works share a similarity of ideas and

18  expression measured by external, objective criteria.  Swirsky, 376 F.3d at 845.  The

19  "extrinsic" analysis "is objective in nature.  '[I]t depends not on the responses of the trier of

20  fact, but on specific criteria which can be listed and analyzed.'"  Funky Films, L.P., 462 F.3d

21  at 1077, quoting Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d

22  1157, 1164 (9th Cir. 1977).  The extrinsic test requires "analytical dissection of [the

23  copyrighted] work," which involves breaking the work down into its "constituent elements."

24  Swirsky, 376 F.3d at 845. As the "substantial similarity" analysis involved in the extrinsic

25  test is limited to protected elements of copyrighted work, "it is essential to distinguish

26  between the protected and unprotected material in a plaintiff's work."  Id.; see also Funky

27  Films, 462 F.3d at 1077 (court "must take care to inquire only whether 'the *protectable*

28  *elements, standing alone*, are substantially similar'"), citing Cavalier, 297 F.3d at 822.

1    "The unprotectable elements have to be identified, or filtered, before the works can

2  be considered as a whole." Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176-77

3  (C.D. Cal. 2001).  Such filtration is necessary as "nearly any two (or more) works" will

4  show a certain similarity "at a sufficient level of abstraction." Id. at 1178-79 (citing Berkic

5  v. Crichton, 761 F.2d 1289, 1293 (9th Cir. 1985)).  "What is required is not just 'similarity,'

6  but 'substantial similarity,' and it must be measured at the level of the concrete 'elements'

7  of each work." Id. at 1179; see also CDN Inc. v. Kapes, 197 F.3d 1256, 1261-62 (9th Cir.

8  1999) ("We have endorsed Judge Hand's abstractions formulation laid out in Nichols v.

9  Universal Pictures Corp., 45 F.2d 119, 121 (2d Cir. 1930). The formulation recognizes that

10  every work can be described at varying levels of abstraction, and the higher the level of

11  abstraction copied, the less likely this taking will be infringement of a copyright."); Siegel v.

12  Time Warner Inc., 496 F. Supp. 2d 1111, 1154 (C.D. Cal. 2007) ("The controlling principle

13  was stated by Judge Learned Hand long ago" in Nichols).  Filtering is crucial for fashion

14  dolls. See, e.g., Mattel, Inc. v. Goldberger Doll Mfg Co., 365 F.3d 133 (2d Cir. 2004) ("An

15  upturned nose, full lips and wide eyes are the 'idea' of a certain type of doll face. That idea

16  belongs not to Mattel but to the public domain."); Williams v. Critchton, 84 F.3d 581 (2d

17  Cir. 1996) (no infringement even where dolls looked "remarkably similar" as "similarities

18  are all attributable to the unprotectable idea of a superhuman muscleman crouching in what

19  since Neanderthal Times has been a traditional fighting pose.").

20       Among the "unprotectable" elements that must be "filter[ed] out" are ideas, elements

21  borrowed from preexisting works, "public domain" works and "scenes-a-faire", Idema, 162

22  F. Supp. 2d at 1176-77, which Mattel's copyright expert confirms. Robert C. Lind,

23  Copyright Law (3d ed.) ("Lind, Copyright Law") at 169 ("court must distill the material in

24  the plaintiff's work which is not protected by copyright, such as ideas, facts, scene a faire,

25  elements dictated by efficiency or non-original material, from the material in plaintiff's

26  work which is protected by copyright. This latter material constitutes the only elements for

27  which plaintiff may press her claim").  Until unprotectable elements are filtered, a fact

28  finder cannot evaluate the alleged similarities between two works at issue. Swirsky, 376

1  F.3d at 845.  *After* the unprotected elements are filtered, the test is whether the protected

2  elements in the copyrighted and accused works are "substantially similar." Id.   If the

3  copyright holder cannot show "substantial similarity" under the extrinsic, objective

4  evaluation of the works, there is no infringement. Id. Mattel cannot obtain summary

5  judgment on infringement without even offering a filtration analysis.

### 2.   The Appropriate Extrinsic "Virtual Identity" Analysis

7        If the fact-finder finds "substantial similarity" between the protectable elements in

8  connection with the "extrinsic" test, only then does the fact finder turn to the "intrinsic"

9  (subjective) part of the test.  The intrinsic test is an evaluation of the "total concept and feel"

10 of the works, but it involves only a comparison of those elements that remain after the

11 filtering required by the "extrinsic" test. See, e.g., Cavalier, 297 F.3d at 822; see also Lind,

12 Copyright Law at 173 (application of the "'total concept and feel' analysis without first

13 distilling the copyrightable elements from the plaintiff's work ... can be criticized for its

14 inclusion of noncopyrightable elements in its comparison on the works at issue").

15       The "substantial similarity" test for the "extrinsic" analysis does not carry over to the

16 "intrinsic" analysis in situations like this one where the alleged copyrighted work only

17 involves minimal original protectable expression.  The "intrinsic" test recognizes a

18 "continuum" between highly original works that are entitled to "broad" copyright protection

19 and works involving minimal originality which are entitled to only "thin" copyright

20 protection.  Idema, 162 F. Supp. 2d at 1178 (citing Apple, 35 F.3d at 1446-47).   Work

21 entitled only to "thin" copyright protection requires the copyright owner to show that the

22 infringing work is "virtually identical" to the copyrighted work.  Satava v. Lowry, 323 F.3d

23 805, 812 (9th Cir. 2003); Harper House v. Thomas Nelson, 889 F.2d 197 (9th Cir. 1989);

24 Cosmos Jewelry Ltd. v. Po Sun Hon Co., 470 F. Supp. 2d 1072, 1082-84 (C.D. Cal. 2006).

### 3.   Standards for Proving /Disproving Factual Copying

#### (a)   Evidence of Independent Creation

27       Mattel relies on the inference of factual copying that arises from access and alleged

28 significant similarities.  (See, e.g., Mattel MSJ at 11.)  But, a "defendant may rebut the

1  inference of copying (resulting from the plaintiff's evidence of substantial similarity and
2  access) with evidence of independent creation of the alleg[ed] ... infringing work." <u>Miller v.</u>
3  <u>Miramax Film Corp.</u>, 2001 U.S. Dist. LEXIS 25967, at **31-32 (C.D. Cal. Sept. 26, 2001).
4  <u>See also</u> <u>Herbert Rosenthal Jewelry Corp. v. Kalpakian</u>, 446 F.2d 738, 741 (9th Cir. 1971);
5  <u>Sobhani v. @Radical.Media, Inc.</u>, 257 F. Supp. 2d 1234, 1237 (C.D. Cal. 2003).   Where
6  such evidence is offered, genuine issues exist. <u>Miller</u>, 2001 U.S. Dist. LEXIS 25967, at *31.

7  **(b)   <u>Mattel's Reliance on the "Inverse Ratio" Rule</u>**

8  To support its position on circumstantial evidence of copying, Mattel relies heavily
9  on the "inverse ratio" rule. (Mattel MSJ at 12.) Given MGA Parties' evidence disproving
10  copying, the "inverse ratio" rule cannot obviate factual findings on the copying element. 3
11  <u>Nimmer on Copyright</u> § 12.10 [B][2][b] (2007) (where "defendant denies copying and
12  maintains independent creation, a factual issue arises, which it is for trial to resolve.").[3]

13  Mattel tries to unmoor the "inverse ratio" rule from its limitations, contending that it
14  not only provides enhanced circumstantial evidence of factual copying, but also decreases
15  the "substantial similarity" tests applicable under the extrinsic and intrinsic tests for legal,
16  not factual copying.  (Mattel MSJ at 12, 22.)  Although, as Professor Nimmer has pointed
17  out, there has been a degree of confusion regarding the Ninth Circuit's guidance on this
18  issue, 4 <u>Nimmer on Copyright</u> §13.03[D] (2007), recent district court decisions have
19  provided clarification, squarely rejecting Mattel's position in comparable circumstances:
20  "Plaintiff confuses the issues of copying as a *factual matter* and actionable copying.  The
21  inverse ratio rule applies to the issue of copying as a factual matter only." <u>BensBargains.net</u>
22  <u>v. xpbargains.com</u>, 2007 WL 2385092, at *3 (S.D. Cal. Aug. 16, 2007); <u>see also</u> <u>Zella v.</u>
23  <u>E.W. Scripps Co.</u>, 529 F. Supp. 2d 1124, 1133 (C.D. Cal. 2007) ("Even if a defendant
24  concedes use of a plaintiff's work, the copyright claim still fails absent substantial
25  similarity."); <u>Berkla v. Corel Corp.</u>, 66 F. Supp. 2d 1129, 1141 (E.D. Cal. 1999) ("even if

26  _____
   [3]      Even in the very case that Mattel cited for the element of copyright infringement, <u>Three</u>
27  <u>Boys Music v. Bolton</u>, 212 F.3d 477 (9th Cir. 2000) (Mattel MSJ at 11), the Ninth Circuit
   recognized a presumption of copying can be rebutted through "proof of independent creation." <u>Id.</u>
28  at 486, quoting <u>Arnstein v. Porter</u>, 154 F.2d 464, 469 (2d Cir. 1946) (emphasis added).

1  [plaintiff] did have evidence of direct copying or modeling … he still remains unexcused

2  from demonstrating the requisite similarity"); Lind, Copyright Law at 168 ("No amount of

3  access negates the need to prove substantial similarity").

4      BensBargains.net is instructive. At issue was alleged copying of a listing of "best

5  deals" from plaintiff's website. Evidence of access and copying was clear inasmuch as

6  plaintiff had placed intentional errors on its website listings and these errors appeared on

7  defendant's website.  2007 WL 2385092, at *3 n.1.  The court, nevertheless, refused to

8  water down the standards for legal copying based on the inverse ratio rule:  "Proof of access

9  can logically aid in showing copying as a factual matter ....  But access logically exerts no

10 impact on copying as a legal matter; no matter how steeped in plaintiff's work defendant

11 may have been, if the resulting product is non-actionable as a matter of law, then the

12 absence of substantial similarity that must underlie every successful claim still dooms the

13 infringement lawsuit."  Id. at *3 (quoting 4 Nimmer on Copyright § 13.03 [D] (2007)).  The

14 distinction between copying as a factual matter and legal copying also follows from Feist

15 Publ'ns., Inc. v. Rural Tel. Serv., Co., 499 U.S. 340, 361 (1990), which held that "[n]ot all

16 copying … is copyright infringement," because copyright infringement requires establishing

17 the "copying of constituent *elements* of the work *that are original*."  Id. (emphasis added).

18     **C.**    **Some Of The Genuine Factual Issues That Remain Unresolved**

19         **1.**    **Evidence of Independent Creation**

20     Evidence of independent creation raises a genuine issue on the key element of factual

21 copying.  (Supra § I.A.)  MGA's manager of doll development, Garcia, will testify at trial

22 that various aspects of what she observed in 2000 in the Bryant sketches were inappropriate

23 for the teenaged dolls MGA wanted to create to appeal to "tweens" (pre-teenagers).  (OF ¶¶

24 163-64, 169-70.) More particularly, that: (1)  Bryant's sketches reflected a "████████████"

25 overall expression -- for example, █████████████

26 ████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████

28 ████████████████████████████████████████" for fashion dolls meant to represent teenagers.

1   (Id.)  Under her guidance, MGA's development team did not try to copy Bryant's drawings,

2   in fact they decided that the final dolls should <u>not</u> look like the drawings.  (Id.)

3        In addition, Margaret Leahy, the sculptor commissioned to create the exploratory

4   sculpt for the new doll line, was given full freedom to utilize her own artistic vision in

5   creating the sculpt.  (See, e.g., OF ¶ 25.)  When Bryant provided Leahy with his sketches,

6   he told her: "'█████████████████████████████████████'"  (Id.)  Leahy

7   recognized  that,  "████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████

9   ████████████████████████"  (Vilppu Report  ("Vilppu") ¶¶ 25-26.)

10       The preliminary sculpt completed on October 25, 2000 differed from the figures in

11  Bryant's sketches in significant ways: (i) the hips were far more narrow, and the legs were

12  far more slender, than depicted in Bryant's sketches; (ii) the posture was straight-up-and-

13  down, rather than slouched-back as in Bryant's sketches; the angle at which the hands met

14  the arms  was  reversed; (iii) the cheeks were rounder than in Bryant's sketches and the

15  features were  "██████████," rather than rigidly defined as in Bryant's sketches; (iv) the

16  upper torso was made smaller relative to the waist, creating a less curvy silhouette, than that

17  depicted in Bryant's sketches; and (v) the lips on the sculpt were reduced in overall size and

18  became less pouty and more conservative vis-à-vis Bryant's sketches. (OF ¶ 167.)  The

19  October 25, 2000 version of the sculpt, however, was by no means final, as the involvement

20  of engineering and other creative input resulted in more changes.  (Id. ¶ 168.)

21       Finally, the face designs of MGA's BRATZ dolls were created independently by a

22  freelance artist.  (Id. ¶ 61.)  Thus, the BRATZ dolls looked considerably different than the

23  Bryant sketches. (Garcia Decl. ¶ 19.) As Vilppu notes, "███████████████████████

24  ████████████████████████████████████████████████████."  (Vilppu ¶ 24.) Thus,

25  ample evidence supports MGA's denial of copying, which presents a genuine issue.

26            **2.    <u>Mattel's Similarity Analysis Is Completely Controverted by Vilppu</u>**

27       In a 50-plus page rebuttal report, Vilppu comprehensively refutes the position of

28  Mattel's art expert, Lee Loetz – using the same exhibit comparisons Loetz used.  A few

examples are as follows: [redacted]

**Body Proportions**. Many of the similarities cited by Mattel stem from the human anatomy, and thus are not similarities of note. [redacted] (Vilppu ¶¶ 29-43.)

**Facial features / Eyes / Eye Makeup**. Focusing on Loetz Ex. 6, [redacted]

**Lips**. [redacted]

**Hair Styling**. [redacted]

[redacted]

**<u>Accessories</u>.** [redacted]

**<u>Clothing</u>.** [redacted]

**<u>Postures</u>.** [redacted]

More of Vilppu's analysis is set out in MGA's Opposing Facts at paragraphs 27-38.

**3. <u>Filtration of Unprotectable Elements Based on Analytic Dissection</u>**

Even though the Ninth Circuit mandates filtering ideas, scenes à faire, and expression taken from pre-existing works from copyrighted works, which Mattel concedes (Mattel MSJ at 12, n.32), Mattel offered no such analysis – itself reason to deny the Motion. Bryant's



sketches require <u>considerable</u> analysis of elements that should be "███████":[4]

**(a)   <u>Bryant's Contributions Were Unprotectable "Ideas"</u>**

Bryant's core concept – ████████████████████████████████
████████████████████████ "██████" (Tonner Decl. ¶ 21; Vilppu ¶ 16) that
must be filtered out. ███████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████ <u>Mattel</u>, 365 F.3d at 136
("upturned nose, bow lips and wide eyes are the 'idea' of a certain type of doll face. That
idea belongs not to Mattel but to the public domain"); <u>Williams</u>, 84 F.3d at 588 ("similarity"
was "unprotectable idea of 'a superhuman muscleman crouching in what since Neanderthal
Times has been a traditional fighting pose'").

**(b)   <u>Similarities of Human Anatomy and Standard Proportioning</u>**

Many of Loetz's "███████" between the sketches and final dolls are "████
████████████████████████████████████████████████." (Vilppu ¶ 18.)
████████████████████████████████████████████████████
███████████████████████████████████████████████████"
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
███████████████████████████████████████████. <u>Satava</u>, 323 F.3d
at 812 (as elements in glass jellyfish sculpture governed by jellyfish physiology or glass-in-
glass medium, copyright protection was "thin," "comprising no more than his original
contribution to ideas already in the public domain."); <u>see also</u> <u>Mattel</u>, 365 F.3d at 136.

**(c)   <u>The Concept of Big Head/Big Feet/Big Eyes Was Not Original</u>**
███████████████████████████████████████████████████

---

[4]     Unprotectable "ideas" include jeweled bee pins (<u>Herbert Rosenthal Jewelry Corp.</u>, 446 F.2d at 738), document-shaped icons for computers (<u>Apple</u>, 35 F.3d at 1444), and a story-line of bringing a "backpack nuke" into the U.S. in a diplomatic pouch to blow up the UN (<u>Idema</u>, 162 F. Supp. 2d 1129).  Scenes à faire are "'expressions that are as a practical matter, indispensable or at least standard in the treatment of a given [idea].'" <u>Smart Inv., Inc. v. Allied Corp.</u>, 94 F. Supp. 2d 1060, 1067 (C.D. Cal 2000) (citing <u>Apple</u>, 35 F.3d at 1444).

1   ▮   This type of expression was borrowed by Bryant from pre-existing works, for

2   example including two advertisements appearing in an August, 1998 Seventeen Magazine, a

3   Steve Madden ad and a Paris Blues ad (Bryant Decl. ¶¶ 3-5; OF ¶¶ 100, 135), both of which

4   feature oversize heads and oversized feet.  (See Vilppu ¶ 10.)  As Vilppu explains: "▮

5   ▮

6   ▮

7   ▮."  (Id. ¶ 35, citing the two ads.)  As respects

8   "▮."  (Id. ¶ 36; see

9   also Bryant Decl. ¶ 7 (documenting familiarity with Japanese anime art).)  As the influence

10   of these pre-existing materials on Bryant's sketches is clear, they create genuine issues.

11           **(d)   Mimicking Contemporary Fashions Was Not Original**

12           Bryant's use of contemporary fashions in his sketches should be filtered because it

13   simply mimicked what he found in the public domain.  (See Tonner Decl. ¶ 18 ("▮

14   ▮

15   ▮.");  Vilppu ¶ 54 ("▮

16   ▮.").)  Also, "[f]or many years, articles of clothing

17   have been identified as 'useful' items and, hence, excluded from copyright eligibility."

18   Chosun Int'l Inc. v. Chrisha Creations, Ltd., 413 F.3d 324, 328 (2nd Cir. 2005).

19                  *   *   *

20           These are the most obvious examples of elements in Bryant's sketches that must be

21   filtered out. One of MGA's expert witnesses, Peter Menell of Boalt Law School, who has

22   made presentations on copyright law to federal judges through the Federal Judicial Center,

23   conducted a comprehensive filtering analysis. (Menell Report ¶¶ 34-66; Menell Decl. ¶¶ 3-

24   10.)   Professor Menell explains the standards that must be applied before Mattel's

25   infringement claims can be resolved and confirms that summary judgment is improper.

26           **D.   Mattel's Attempt To Rely On Collateral Evidence Is Misplaced**

27           Mattel relies on collateral evidence that does not address the design features of the

28   works. (Mattel MSJ at 13-14.) For example, Mattel argues that Bryant "intended his Bratz

1  drawings to serve as guides for the creation of the Bratz dolls." (Id.)  But Bryant testified

2  that "I think the drawings generally show the idea of how these characters could look" (OF

3  ¶ 25), i.e., his drawings were an "██████" (Vilppu ¶ 16).  Mattel also cites references that the

4  BRATZ dolls were "based on" the sketches (Mattel MSJ at 13), "█████████" on these

5  sketches (id. at 14), or that MGA tried to "stay true" to Bryant's "█████." (Id.)  Such loose

6  phraseology could be interpreted by a jury as reflecting MGA's intent to use Bryant's

7  "idea."  Finally, Mattel argues that "copyright registrations for numerous BRATZ dolls

8  reflect that they are derived from Bryant's design drawings."  (Mattel MSJ at 13.)  MGA

9  has shown there was no such connection between the drawings and dolls.  (OF ¶ 25.)[5]

10      Citing Mattel, 365 F.3d 133, Mattel argues that "████████████████████

11  ██████████████" may be significant.  (Mattel MSJ at 29.)  Here, MGA Parties'

12  experts pointed out many differences, not only in facial features, but on all aspects of the

13  comparison between Bryant's sketches and the dolls.  And said variations are not "███████

14  ██████████" but will be quite noticeable to the jury; they certainly raise genuine issues.

15  ## II.   MGA AND LARIAN DID NOT AID AND ABET ANY BREACH OF DUTY

16      Mattel seeks summary judgment on its 8th and 10th Counterclaims for aiding and

17  abetting Bryant in alleged breaches of fiduciary duty and duty of loyalty to Mattel because

18  the MGA Parties "met with Bryant, paid for his designs, and contracted with him for his

19  services, all the time knowing that Bryant was a Mattel employee."  (Mattel MSJ at 39.)  As

20  a matter of law, such actions by a potential subsequent employer do not rise to the level of

21  aiding and abetting breach of duty.  To prove aiding and abetting a breach of a duty, Mattel

22  must first establish an underlying duty and breach of duty by Bryant. Richard B. LeVine,

23  Inc. v. Higashi, 131 Cal. App. 4th 566, 574 (2005).  In his summary judgment motion and

24  opposition to Mattel's motion, which the MGA Parties join, Bryant proves that he did not

25

26  [5]    Mattel spends considerable time arguing Bryant's sketches qualify for copyright protection.
(Mattel MSJ at 24-30.)  This is not disputed, except for the "██████████." (Id. at 10; Mattel UF
27  ¶¶ 21-22.)  As to this drawing, Mattel does not claim it is covered by a copyright registration, and
evidence shows that Bryant simply copied it from a sculpt prepared by MGA's sculptor (OF ¶ 21),
28  so for this drawing, there is a genuine issue regarding minimal originality.

1  owe or breach any such duties.  But assuming a duty existed, Mattel must prove the MGA
2  Parties' (1) "substantial assistance or encouragement in accomplishing the breach", and (2)
3  "actual knowledge" of the specific wrong they substantially assisted.  MJT Sec., LLC v.
4  Toronto-Dominion Bank, 2007 WL 1725421, at **7-8  (N.D. Cal. June 14, 2007).[6]

5       Mattel cites no case where plaintiff obtained summary judgment on an aiding and
6  abetting claim, but only one where a defendant was denied summary judgment given issues
7  of fact as to knowledge, intent, and assistance.  River Colony Estates Gen. P'ship v. Bayview
8  Fin. Trading Group, Inc.,  287 F. Supp. 2d 1213, 1225-26 (S.D. Cal. 2003).  Mattel's failure
9  to find supporting authority is unsurprising, as "in the context of an [employee]'s leaving
10  and competing with the corporation, whether the [employee]'s conduct constitutes a breach
11  of [] duty is a fact-specific inquiry that must be resolved on a case-by-case basis."  Am.
12  Mortg. Network v. LoanCity.com,  2006 WL 3199291, at *4 (Cal. App. Nov. 7, 2006).[7]

13       Mattel's "undisputed" evidence is disputed, inconclusive, and dwarfed by the
14  undisputed facts showing that, far from aiding and abetting any breach by Bryant, the MGA
15  Parties did not know of or intend to assist in any breach and took steps to avoid a breach.

16  **A.   By Meeting, Negotiating, and Signing A Contract, Bryant and the MGA**
17  **Parties Did Not Violate Any Duty to Mattel as a Matter of Law**

18       As Bryant shows in his opposition, in California an employee does not breach a duty
19  of loyalty by "preparing to compete" with its employer, and is under no duty to disclose to
20  his current employer those preparations or negotiations with a competitor employer. (Bryant
21  Opp'n at § III.C.3.)   The employee can be paid by his new employer and continue to
22  "receiv[e] salary and benefits and us[e] office resources while performing outside work"
23  without breaching duties to his current employer.  (Id.)  As the record establishes that
24  Bryant did not owe or breach any duties to Mattel, the claim fails as to the MGA Parties, too.

25  _____
   [6]   Mattel trumpets that the MGA Parties' profits from BRATZ "corroborate" the elements of
26  its aiding and abetting claims (Mattel MSJ at 43) but fails to show how MGA Parties' success is
   "evidence of knowledge, substantial assistance, or both." Neilson v. Union Bank of California,
   N.A., 290 F. Supp. 2d 1101, 1128 (C.D. Cal. 2003).

27  [7]   Mattel's other cases are procedurally distinguishable. Neilson, 290 F. Supp. 2d at 1119-20
28  (motion to dismiss); Casey v. U.S. Bank Nat'l., 127 Cal. App. 4th 1138 (2005) (demurrer); Berg &
   Berg Enters., LLC v. Sherwood Partners, Inc.,  131 Cal. App. 4th 802 (2005) (leave to amend).

1

## B.   Assuming Bryant Breached Duties Owed to Mattel, There Are Genuine Issues Whether the MGA Parties Had Actual Knowledge of the Breaches

To prove actual knowledge of the underlying violations, Mattel must show that the MGA Parties not only knew of Bryant's breach but also that they intentionally engaged in wrongful activity designed to assist Bryant in his breaches. Neilson, 290 F. Supp. 2d at 1119-20.[8]  Mattel glosses over the intent element by seeking to distinguish its aiding and abetting claim from one for conspiracy (Mattel MSJ at 40), but its own case, Berg & Berg Enters., LLC v. Sherwood Partners, Inc., notes that while "aiding and abetting may not require a defendant to agree to join the wrongful conduct, it necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." 131 Cal. App. 4th 802, 823 n.10 (2005) (em. added). Mattel argues that the MGA Parties "knew that Bryant owed Mattel a fiduciary duty" as Bryant told MGA that he signed a confidentiality agreement with Mattel.[9] (Mattel MSJ at 40.)  But until this case, MGA and Larian never saw the Inventions Agreement (MGA UF ¶ 19), so Mattel cannot show that MGA and Larian "actually knew" what contractual duties Bryant owed to Mattel, especially as Bryant represented that he was not breaching any.

Mattel claims that the MGA Parties "knew" Bryant owed Mattel a duty of loyalty as "all California employees owe their employers a duty of loyalty" (Mattel MSJ at 40) – but Mattel's view of that duty is flawed.  For example, Mattel claims that the MGA Parties' awareness that Bryant covertly worked for Mattel while "he pitched his ideas to them … and entered into a conflicting agreement with them" makes the MGA Parties complicit in a breach of duty by Bryant  (Mattel MSJ at 41). Mattel relies on a fax sent by Bryant[10] to

---

[8]    See also Gerard v. Ross, 204 Cal. App. 3d 968, 983 (1988) ("an aider and abettor is called a cotortfeasor…. A defendant can be held liable as a cotortfeasor on the basis of acting in concert only if he or she knew that a tort had been, or was to be, committed, and acted with the intent of facilitating the commission of that tort.") (emphasis added).

[9]    Mattel bizarrely argues that as MGA "requires strict confidentiality from its own employees," MGA "knew" that Bryant owed a fiduciary duty to Mattel.  (Mattel MSJ at 40-41.) Mattel has no evidence of this and cannot explain how MGA's familiarity with its own expectations translates to "knowledge" of Mattel's practices – especially as Mattel ensures those practices are kept secret by not giving employees copies of their own agreements. (OF ¶¶ 9, 106.)

[10]    Mattel also alleges that MGA knew that, in using a Mattel fax machine, "Bryant was wrongfully using Mattel's resources to do MGA's bidding" (Mattel MSJ at 41), but California law

1   MGA counsel David Rosenbaum stating that obtaining his confidentiality agreement would

2   ███████████████████████████████████████████████████████████████████████████████

3   ███████████████████████████████████████████████████████████████████████████████

4   ███████"[11]   (Id.)  But as Bryant as a matter of law committed no breach of duty by choosing

5   not to disclose his pitch to and negotiations with MGA to Mattel, the MGA Parties likewise

6   cannot as a matter of law be liable for aiding and abetting a breach of that non-duty.[12]

7          Moreover, Mattel cannot prove that the MGA Parties had the requisite knowledge

8   and intent to substantially assist in an alleged breach of duty by Bryant because during

9   negotiations with Bryant, the MGA Parties sought and received assurances from Bryant and

10  his attorney that the BRATZ concept and drawings fell outside any contractual obligations

11  owed to Mattel  (MGA UF ¶¶ 14-22; Mattel UF ¶ 94), and Bryant's contract with MGA and

12  Larian included a warranty that BRATZ was Bryant's exclusive property and indemnified

13  MGA and Larian against any claims raised by a third party.  (MGA UF ¶ 23, Mattel UF ¶¶

14  97-98.)  Anything Bryant prepared while employed at Mattel to pitch the BRATZ idea to

15  MGA was believed by MGA and Larian as also created outside the scope of his duties to

16  Mattel, based on the representations of Bryant and his attorney.  (OF ¶¶ 6, 19, 133.)  Given

17  the MGA Parties' efforts to establish their rightful ownership of BRATZ, a genuine issue

18  exists whether they had the intent, or "actual knowledge", that in acquiring the property

19  ─────────────────────────────────────────────────────────────────────

20  does not recognize the use of office resources as a breach of duty owed an employer.  See Edenbaum v. Dalton,  2002 WL 31474450, at *8 (Cal. App. Nov. 6, 2002) (unpublished) (noting that "using office resources while performing outside work would constitute improper behavior by

21  an employee and are cause for discharge, but they do not amount to a breach of a fiduciary duty").

22  [11]   Mattel's characterization of this conversation is just wrong.  ███████████████

23  ████████████  (OF ¶ 63.)  Moreover, the word "bad" is not found in Mattel's cited pages.  Even if it was, Bryant breached no duty to Mattel in meeting with MGA and not telling Mattel about it.

24  [12]   See Sarkes Tarzian, Inc. v. Audio Devices, Inc., 166 F. Supp. 250 (S.D. Cal. 1958), aff'd, 283 F.2d 695 (9th Cir. 1960), which rejected allegations of conspiracy by a former employer

25  against a competitor for hiring a former employee, dismissing the fact that "no disclosure of intention to leave was made and that [the employee] even accepted an advancement a few days

26  before tendering his resignation" as "unimportant" because "[a]n employee who is dischargeable at will is under no obligation to treat his employer otherwise or with more consideration than he can

27  be treated by him. It follows that, as [the employee] had a right to leave at will, his arrangement with the other employees and with [defendant competitor] Audio did not amount to a conspiracy on

28  their part or on the part of Audio."  Id. at 267. (See also Bryant Opp'n at § III.C.3.)

─────────────────────────────────────────────────────────────────────

they were substantially assisting Bryant to breach any duties to Mattel.

Mattel argues the MGA Parties had "guilty knowledge" that Bryant breached a duty to Mattel by ███████████████████████████████████████████████

[13] (Mattel MSJ at 41-42, OF ¶ 82.)

Mattel's assertions that MGA "knew Bryant breached his duties to Mattel by "accept[ing] payments from [MGA Parties] and work[ing] for them" while still at Mattel are disputed, as from the time of the contract negotiation until Bryant left Mattel, "█████████████████████████████████████████" (OF ¶ 65; ¶¶ 131-32, 138-40, 143-44, 147.)  MGA and Bryant confirm that he was "██████████████████████████████████████████████" (id. ¶ 59), ████████████████████████████████████████████████████████████████

---

[13] ████████████████████████████████████████████

[14] ████████████████████████████████████████████



Thus, there are significant questions of disputed fact whether defendants had actual knowledge as Mattel contends.

**C.   Whether MGA and Larian Substantially Assisted Bryant in His Purported Breaches of Duty Presents a Genuine Issue of Fact**

"[P]laintiff must show that the aider and abettor provided assistance that was a substantial factor in causing the harm suffered." Neilson, 290 F. Supp. 2d at 1135. "Because the concept of substantial assistance is one of causation, the substantial assistance requirement is 'inversely related' to the knowledge factor." Resolution Trust Corp. v. Rowe, 1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993). Accord Mendelsohn v. Capital Underwriters, Inc., 490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (plaintiff must show "a substantial causal connection between the culpable conduct of the alleged aider and abettor and the harm to the plaintiff"). Where, as here, Mattel has offered no evidence of the MGA Parties' "knowledge" of Bryant's alleged breach, Mattel "ha[s] to show that [the MGA Parties] *rendered a high degree of substantial assistance* in [Bryant's breach] in order to maintain its claim for aiding and abetting liability." Id. (emphasis added).

Mattel claims Bryant's consulting agreement "encouraged" a breach as requiring (Mattel MSJ at 42; Mattel UF ¶ 47.) (OF ¶¶ 56, 144.) The

1  financial "assistance" MGA gave Bryant netted him a **$162.38** – hardly "substantial."[15]

2  ### D.   Mattel Did Not Prove as an Undisputed Fact that any Actions or Omissions of MGA Parties Caused Damage to Mattel

3
4  Finally, Mattel attempts to dispose of the MGA Parties' Eighth Affirmative Defense

4  that Mattel's damages were not caused by or attributable to any acts and omissions of the

5  MGA Parties by urging this Court to find them "liable for aiding and abetting Bryant's

6  wrongdoing" (Mattel MSJ at 43), but as shown above, many disputed facts preclude that.

7  ### III.   MATTEL IS NOT ENTITLED TO SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS DEFENSE AS ALL ITS CLAIMS ARE TIME BARRED

8

9  The MGA Parties showed in their Motion for Partial Summary Judgment that all of

10  Mattel's claims are time-barred. (MGA MSJ at 15-34.) Mattel's motion does not prove

11  otherwise. (Mattel MSJ at 46-52.) The undisputed record shows that Mattel was on notice of

12  its claims as early as February 2001 (when it saw BRATZ at the New York Toy Fair) and

13  no later than March 2002 (when Mattel actually investigated). (MGA MSJ at 17-20.)  When

14  Mattel asserted its claims on November 20, 2006, the claims, governed by statutes of

15  limitations ranging from two- to four- years, had already expired. (Id. at 20-28.)  Although

16  Mattel may dispute when it was on inquiry notice, it cannot win summary judgment here.

17  Mattel's argument that its claims relate back to the '04 Complaint is irrelevant for its

18  claims governed by the two- and three- year statutes of limitations expired before the '04

19  Complaint was filed. (Id. at 29.) The relation-back doctrine only has meaning for Mattel's

20  statutory unfair competition claim, which has a four-year statute of limitations. (Id. at 27-28;

21  Mattel MSJ at 47-48.) However, Mattel admits that its statutory unfair competition claims

22  were only asserted against MGA (HK) and Larian – i.e., "new" parties to the '04 Action. (Id.

23  at 51.)  Claims against these "new" defendants cannot relate back unless Mattel proves they

24  were omitted from the original complaint by Mattel's mistake or ignorance about their

25  ─────────────────
[15]  ████████████████

26  ████████████████████████████████████████

27  ████████████████████████████████████████

28  ████████████████████████████████████████

─────────────────

1 identity or role, which Mattel does not allege. (MGA MSJ at 29-34.)

2     **A.**     **Mattel Was On Notice Of its Claims Years Before November of 2003**

3     Mattel was on notice of its claims as early as February 2001 and no later than March

4 2002. (MGA MSJ at 17-20.) And the clock on its aiding and abetting duty of loyalty claims

5 started running in October 2000. Bryant told Mattel in October 2000 that he was leaving to

6 design a line of dolls, and his immediate supervisor was sure that Bryant was going to work

7 for a competitor, which she believed to be MGA. (MGA UF ¶¶ 27-30.)[16]

8

9

10     Those phone records show that the calls were placed

11 from Bryant's extension to MGA, and Mattel admits it regularly logs external outgoing calls

12 information, including the specific extension used. (OF ¶ 8.) Thus, Mattel had constructive

13 knowledge as to key facts for its aiding and abetting duty of loyalty claims in October 2000.

14     Barely two months after Bryant left to "work on [his] own doll line", Mattel attended

15 toy fairs in New York and Hong Kong in January and February 2001. (MGA MSJ at 18; OF

16 ¶ 109; OF ¶ 160.) There, Mattel saw the BRATZ prototypes and became aware of the

17 alleged similarities between them and Mattel's "Diva Starz" and "Toon Teens." (MGA MSJ

18

19     [16]    Mattel cites Garamendi v. SDI Vendome S.A., 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003), for the proposition that notice based on "hints, suspicions, hunches or rumors" is insufficient to trigger the limitations period. (Mattel MSJ at 25.) Garamendi dealt with tolling of statute of limitations based on fraudulent concealment of the underlying facts and is irrelevant here because, as the MGA Parties already showed, such tolling ends as soon as plaintiff is on notice of its claims. (MGA MSJ at 25 n.30.) Under California law, "a suspicion of wrongdoing, coupled with a knowledge of the harm and its cause" is sufficient to end tolling based on fraudulent concealment. Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 890-911 (2002); Hynix Semiconductor Inc. v. Rambus Inc., 2007 WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007) ("fraudulent concealment doctrine does not toll the statute of limitations, no matter what the defendant has done to conceal his wrongs, if a plaintiff has a suspicion of wrongdoing and knowledge of the harm and its cause"); Peterson v. Dein, 2006 WL 3020935, at *3 (Cal. App. Oct. 25, 2006) (unpublished) ("once a plaintiff … is aware of facts sufficient to give rise to a reasonable suspicion of wrongdoing, then the fraudulent concealment rule has no further application regardless of the lengths to which the defendant has gone to conceal the wrongs"); accord Eichman v. Fotomat Corp., 880 F.2d 149, 157 (9th Cir. 1989) (applying similar rule for claims asserted under federal law); cf. Garamendi, 276 F. Supp. 2d at 1043 (relying on a decision by the D.C. Circuit, noting that "[n]o California court appears explicitly to have adopted this formulation" of the rule). As the MGA Parties established in their summary judgment papers, Mattel was on notice of its claims by no later than March 2002; thus, the fraudulent concealment doctrine is inapplicable.

at 8, 18.)  The BRATZ display at the Hong Kong Toy Fair included not only doll prototypes, but also BRATZ drawings from Bryant's sketches. (OF ¶ 153.) [17]  On March 5, 2001, the drawings were published in a trade journal, with a write up of the BRATZ display at the New York Toy Fair. (Id. ¶ 157.)

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████ [18]

Given the alleged similarities between Mattel's products and the BRATZ prototypes, the logical connection to ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████  Meanwhile, Mattel was bombarded by publicity surrounding BRATZ, MGA and Larian. (MGA UF ¶¶ 35-36; OF ¶¶ 154, 156-57, 160.)  By the time BRATZ were released on the market in summer 2001, it was "██████████████████████" within Mattel's design center that Bryant was the BRATZ's creator. (MGA UF ¶ 53.) █████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

---

[17] ████████████████████████████████████████████████████████████████████████

Moreover, throughout 2001, there was significant publicity surrounding the BRATZ, MGA and Isaac Larian, the man behind BRATZ' success. (Id. ¶ 160.)

[18]      Mattel has argued that notice of infringement of one product does not trigger the statute of limitations as to potential infringement of other similar products. (Mattel's Opp'n to MGA's Mot. For Terminating Sanctions, at 20-21; Mattel MSJ at 48.) Mattel is wrong.  Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1521 (9th Cir. 1983) (where plaintiff had "suspicion that at least one of his photographs had been infringed … [, t]hat suspicion placed upon … [him] a duty to investigate further into possible infringements of his copyrights [as to the other photographs]. Although … [plaintiff] may not actually have conducted this further investigation, equity will impute to a litigant knowledge of facts that would have been revealed by reasonably required further investigation."). California law similarly provides that once plaintiff is on notice of a claim, he is also deemed to be on notice of other claims arising from the same underlying facts. Soliman v. Philip Morris Inc., 311 F.3d 966, 971-72 (9th Cir. 2002) (under California law, plaintiff "need not be aware of the specific 'facts' necessary to establish the claim" in order for a cause of action to accrue. Nor need he be aware of the particular legal theory that will support it. His claim accrues "when, simply put, he at least 'suspects ... that someone has done something wrong' to him."), citing Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999), and Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1110-11 (1988); id. at 1110 n.7 (the "wrong" that plaintiff is to be aware of for purposes of the statute of limitations need not be in any technical sense, but rather in accordance with its "lay understanding"); Butler v. San Diego Dist. Attorneys Office, 2007 WL 935711, at *3 (S.D. Cal. Feb. 27, 2007) (in California, "the statute of limitations begins to run when the plaintiff suspects or should suspect that someone has done something wrong to him").

Mattel ignores these facts showing inquiry notice, relying exclusively on this Court's decision denying MGA's Motion for Terminating Sanctions, wherein the Court held that Mattel's *duty to preserve evidence* did not arise until November 2003. (Mattel MSJ at 49, incorrectly relying on Mattel UF ¶ 26, which has nothing to do with the issue; see also id. ¶ 73.) However, the standard triggering the duty to preserve evidence is markedly different from the inquiry notice standard triggering the clock on Mattel's claims, as the former requires the relevant litigation to be "probable," while the latter requires a mere suspicion that a wrong has been done.  In the same decision, this Court observed that the March 2002 internal investigation "may have raised suspicion on Mattel's part" as to its potential claims (MGA MSJ at 20 n.26), which would have started the clock on all of Mattel's claims. Compare In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060 (N.D. Cal. 2006) (cited in Mattel's Opp'n to MGA Mot. For Terminating Sanctions, at 11) (for a duty to preserve evidence to attach, the potential claims must be "probable", which means "more than a mere possibility"), with, e.g., Jolly v. Eli Lilly Co., 44 Cal. 3d 1103, 1111 (1988) (inquiry notice is triggered by "a suspicion of wrongdoing"); cf. Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) (copyright statute of limitations is triggered when plaintiff knew or should have known of the alleged infringement).

## B.   Mattel's Claims Against MGA Expired Prior to Filing the '04 Complaint

Mattel was on notice of its claims as early as February 2001.  (See MGA MSJ at 29.) Mattel's only Phase 1 claims against MGA are: aiding and abetting and interference with

1  contract,[19] (with two-year limitations periods) and copyright infringement[20] (a three-year

2  limitations period). (Mattel MSJ at 47, 50; accord MGA MSJ at 20-22.)  These claims were

3  barred before Mattel filed its April 2004 complaint against Bryant, the earliest pleading in

4  this action. Thus, "relation-back" is irrelevant as there is no pleading filed within the

5  limitations period that could revive Mattel's claims against MGA. (MGA MSJ at 29 n.35,

6  citing, inter alia, Papenthien v. Papenthien, 16 F. Supp. 2d 1235, 1240-41 (S.D. Cal. 1998).)

7  In any event, the claims cannot "relate back", as MGA was a "new" party to the '04

8  Complaint. Although Mattel argues that MGA intervened in the '04 Action (Mattel MSJ at

9  50-51) in December 2004, that intervention granted Mattel no substantive rights, as Mattel

10  allowed the intervention "as a procedural matter" only. (MGA MSJ at 14 & n.18.)[21]

11  [19]  Mattel asserts that its interference claim accrued upon discovery due to MGA's alleged
12  fraudulent concealment. (Mattel MSJ at 47, citing Korea Supply Co. v. Lockheed Martin Corp.,
109 Cal. Rptr. 2d 417, 428-9 (Cal. App. Jul. 18, 2001), rev'd in part by, 29 Cal.4th 1134 (2003).)
13  Fraudulent concealment is not available to Mattel.  (Supra n.16.) Moreover, the MGA Parties
showed that such claims accrue upon the alleged breach of the underlying contract. (MGA MSJ at
14  21.) Even if Mattel's interference claim accrued at the latest date allowed by the "discovery" rule,
i.e., March 2002, it would have expired in March 2004 – before Mattel filed its '04 Complaint.

15  [20]  While Mattel argues that its copyright claim is governed by a "rolling" statute of limitations
16  (Mattel MSJ at 51 n.136), the MGA Parties already showed that the "rolling" theory is inapplicable
where, as here, Mattel's claim is one for copyright ownership, upon which the limitations clock
17  started running as soon as MGA asserted its ownership rights over BRATZ. (MGA MSJ at 23-24.)
And, as the MGA Parties further showed, "relation-back" cannot save Mattel's infringement claim
18  as Mattel did not register its copyright interests until October 2006, which makes "relation-back" to
any pleading filed prior to that date impossible as a matter of law. (Id. at 24-26.)

19  [21]  Contrary to Mattel's assertions (Mattel MSJ at 50:23-24), this Court did not reach the issue
of MGA's procedural intervention in its decision granting Mattel leave to amend. (Jan. 11, 2007
20  Order at 15-16 n.5 (discussing MGA's substitution as a "Doe" defendant); id. at 13-15 (addressing
"relation-back" on the issue whether claims against MGA arose from same facts as those alleged in
21  the original pleading).) Unlike "relation-back" of claims by intervening plaintiffs in the Mattel's
cases, some courts have disallowed "relation-back" of claims against intervening defendants. See,
22  e.g., Davis v Outdoor Equip. Co., 551 S.W.2d 72, 73 (Tex. Ct. App. 1977) (partnership, which had
never been named or served, was entitled to directed verdict where partnership made voluntary
23  appearance after statute of limitations had run, as date of original filing against corporate defendant
did not toll statute to new and different defendant). (Cf. Mattel MSJ at 50-51, citing Cummings v.
24  United States, 704 F.2d 437, 439 (9th Cir. 1983) (relation back for claims asserted by intervening
plaintiff deemed to be a "real party" in interest under F.R.C.P. 17; "[b]ecause the insurance
25  company as subrogee stands in the shoes of the insured, it is the real party in interest in the
insured's suit to the extent of the subrogation. The insurer subrogee's complaint in intervention
26  therefore has the same effect as pro tanto substitution of the real party in interest"); DePinto v.
Provident Sec. Life Ins. Co., 323 F.2d 826, 831-32 (9th Cir. 1963) (intervening plaintiff).) This
27  makes sense, as relation-back of claims by intervening plaintiffs allows them to benefit from
actions undertaken by the original plaintiffs, who are aligned with their interests.  That obviously
28  would not be true for intervening defendants, who have a right to assume that if they join after the
limitations period has expired, they are free from stale claims.

**1**

**C.** **Mattel's Only Claim that Could Be Revived by the "Relation-Back" Doctrine Is Made Against "New" Defendants and Cannot Relate Back, as Mattel Knew of these Defendants at the Time of the Original Complaint**

**2**

**3**       Mattel's claims against MGA (HK) and Larian also are time-barred and cannot relate

**4** back to the '04 Complaint because MGA (HK) and Larian were "new" parties for purposes

**5** of that pleading. (MGA MSJ at 29-34.)[22] The only claim against MGA (HK) and Larian that

**6** even conceivably could be revived by the "relation-back" doctrine is for statutory unfair

**7** competition, as it is the only claim with a four-year limitations period.[23]  The remaining

**8** claims against these parties are governed by two- and three-year limitations periods and

**9** expired long before Mattel filed the '04 Complaint.[24]

**10**       While Mattel argues that the "Doe" defendant substitution allows "relation-back" for

**11** its claims against MGA (HK) and Larian,[25] that argument is irrelevant for its copyright

**12**
**13**
**14**
[22]       As Mattel's Mem. Re Trial Structure did not clarify which MGA Parties were involved in its Phase 1 claims, MGA Parties' summary judgment motion did not differentiate between MGA Enter. and MGA (HK) in its discussion of "relation-back" for Mattel's claims. However, it is undisputed that MGA (HK) was a new party for the '04 and '05 Actions, and all arguments made on Larian's behalf in the MGA Parties' summary judgment motion apply equally to MGA (HK).

**15**
**16**
**17**
**18**
**19**
**20**
**21**
[23]       The only relevant pleading for "relation-back" here is the '04 Complaint, because this claim expired by October 2004, as the statute of limitations for statutory unfair competition claims starts running once the underlying violation takes place, which in this case would be around October 2000. (MGA MSJ at 27-28.) Mattel's contrary arguments to the effect that accrual of statutory unfair competition claims should be delayed by the "discovery" rule (Mattel MSJ at 47) are unavailing, since Mattel's sole authority held only that the "discovery" rule "probably" applied, Mass. Mutual Life Ins. Co. v. Sup. Ct., 97 Cal. App. 4th 1282, 1295 (2002), while the weight of authority cited by the MGA Parties shows otherwise (MGA MSJ at 27 n.33 (collecting authority)). See also Grisham v. Philip Morris U.S.A., Inc., 40 Cal. 4th 623, 635 n.7 (2007) (noting that whether "the delayed discovery rule applies to unfair competition claims … is currently not settled under California law" and declining to address the issue). In any event, even if the claim did not expire until March 2006 – i.e., four years after Mattel was on "inquiry" notice in March 2002, it was still time-barred by the time Mattel asserted it in November 2006 and cannot relate back to the '05 Action because neither MGA (HK) nor Larian were parties in that action.

**22**
**23**
**24**
**25**
[24]       Mattel concedes that its common law unfair competition claim is governed by a two-year statute of limitations. (Mattel MSJ at 47.) As for Mattel's conversion claim, which is governed by a three-year statute of limitations (id.), it expired by October 2003, since the limitations period started running in October 2000, when Bryant allegedly took Mattel's property (MGA MSJ at 25-26). While Mattel implies that the clock on its conversion claim was delayed by fraudulent concealment, that theory is unavailable to Mattel here given Mattel's inquiry notice.  (Supra n.16.)

**26**
**27**
**28**
[25]       Mattel's reliance on Moore's for the proposition that a more favorable state "relation-back" rule applies here is valid only as to those claims for which state law provides the applicable statute of limitations. (Mattel MSJ at 52, citing Wm. Moore, Moore's Federal Practice 3d § 15.20[3], at 15-126 (discussing conflicts of "relation-back" rules in diversity cases); cf. SAA ¶ 6 (alleging federal question jurisdiction).) Mattel's copyright infringement claims are governed by the statute of limitations provided by federal law. (Mattel MSJ at 47, citing 17 U.S.C. § 507(b).)

1   infringement claims, as they are governed by federal law. (MGA MSJ at 16 n.21, citing,

2   inter alia, Streamcast Networks, Inc. v. Skype Techs., S.A., 2006 WL 5441237, at *6 (C.D.

3   Cal. Sept. 14, 2006).)   Federal law does not allow "relation-back" of claims against new

4   parties unless Mattel shows that those parties were omitted by mistake. (MGA MSJ at 29-

5   34.) The "Doe" defendant procedure also does not allow "relation-back" for Mattel's

6   California law claims, as Mattel cannot show that it was ignorant of MGA (HK)'s and

7   Larian's identities or their role in the alleged wrongs when Mattel filed its '04 Complaint.

8   (Id.)[26] In fact, Mattel has already conceded that it knew of these defendants and their alleged

9   roles as of November 2003, when it received a copy of Bryant's agreement with MGA. (Id.

10   at 32.) Thus, "relation-back" cannot revive Mattel's claims against MGA (HK) and Larian.

11   **IV.   THERE ARE ISSUES OF MATERIAL FACT PRECLUDING DISMISSAL
       OF THE MGA PARTIES' OTHER AFFIRMATIVE DEFENSES**

12

13   **A.   Mattel Is Not Entitled to Summary Judgment on the Laches Defense**
           **1.   Laches Is Not Appropriately Resolved on Summary Judgment**

14   Mattel knows that laches is not appropriately resolved on summary judgment.   In

15   2000, while represented by Quinn, Mattel prevailed on a laches defense on summary

16   judgment. The Ninth Circuit reversed, holding that summary judgment was improper, as "a

17   claim of laches depends on a close evaluation of all the particular facts in a case, it is

18   seldom susceptible to resolution by summary judgment." Kling, 225 F.3d at 1041.   The

19   Ninth Circuit is legion that laches is too fact intensive for summary judgment. Couveau v.

20   Am. Airlines, Inc., 218 F.3d 1078, 1083 (9th Cir. 2000); Bratton v. Bethlehem Steel Corp.,

21

22   [26]     Mattel apparently believes that as long as claims against "Doe" defendants "are based on the
23   same general set of facts", they automatically relate back to the original pleading. (Mattel MSJ at
     52.) But Cal. Civ. Proc. Code § 474 requires Mattel to prove it was ignorant of the proposed
24   defendants' identities and their roles when it filed the original complaint. Lindley v. Gen. Elec. Co.,
     780 F.2d 797, 800 (9th Cir. 1986) (adopting rule requiring that "plaintiff must be unaware of the
25   identity of certain defendants when the complaint is filed" for "relation-back" under California
     "Doe" defendants procedure to apply); Leonard v. City of Oakland, 1993 WL 341285, at *4 (N.D.
26   Cal. Aug. 23, 1993) ("relation-back" was unavailable for claims stated against those "Doe"
     defendants whose names were publicly available when plaintiff filed original complaint); 43 Cal.
27   Jur. 3d Limitation of Actions § 150 ("If the identity-ignorance requirement [re "Doe" defendants]
     is not met, a new defendant may not be added after the statute of limitations has expired even if the
28   new defendant cannot establish prejudice resulting from the delay."). Mattel's cases (Mattel MSJ at
     52) are inapposite, as plaintiff's ignorance was not in dispute there.

1  649 F.2d 650, 666-67 (9th Cir. 1980); Sandvik v. Alaska Packers Ass'n, 609 F.2d 969, 974

2  (9th Cir. 1979); Espino v. Ocean Cargo Line, Ltd., 382 F.2d 67, 70 (9th Cir. 1967).

3  **2.    Mattel's Delay in Bringing Suit Is Unreasonable and Prejudicial**

4  Laches requires (1) lack of diligence by plaintiff, and (2) prejudice to defendant.

5  Bratton, 649 F.2d at 666-67.  Both are present here.  Mattel's federal and state-law claims,

6  which accrued as early as February 2001 (MGA MSJ § I.A.), are barred, as Mattel's delay

7  in suing the MGA Parties is unreasonable and prejudicial.  As Judge Learned Hand

8  explained long ago, "It is inequitable for the [alleged] owner of a copyright, with full notice

9  of an intended infringement, to stand inactive while the proposed infringer spends large

10 sums of money in its exploitation, and to intervene only when his speculation has proved a

11 success.  Delay under such circumstances allows the owner to speculate without risk with

12 the other's money; he cannot possibly lose, and he may win."  Haas v. Leo Feist, Inc., 234 F.

13 105, 108 (S.D.N.Y. 1916).  Mattel waited over *five years* before challenging MGA's

14 ownership of the highly successful BRATZ dolls, until MGA spent millions on

15 development and production.  (MGA MSJ at 15-33 & MGA UF ¶¶ 32-36.)  Mattel's tactical

16 delay is both unreasonable in its length and prejudicial in its effect on the MGA Parties, as

17 Mattel was on notice of MGA's alleged infringement as early as February 2001.[27]

18 Mattel concedes that laches may bar federal copyright claims but argues it applies

19 only in "unusual or extraordinary" circumstances.[28]  Such "unusual" circumstances are

20

21 [27]   (MGA MSJ at 6-12 & 15-33.)  The cases holding "[i]f plaintiff filed suit within the
   analogous limitations period, the strong presumption is that laches is inapplicable" (Mattel MSJ at
22 53) are irrelevant as Mattel's claims are facially time-barred and Mattel relies on relation-back and
   tolling theories to revive them.  Where plaintiff files suit after the limitations period, the
23 presumption is reversed.  Jarrow Formulas v. Nutrition Now, 304 F.3d 829, 838 (9th Cir. 2002).

   [28]   (Mattel MSJ at n.138.)  Mattel cites Miller v. Maxwell's Int'l, Inc., 991 F.2d 583, 586 (9th
24 Cir. 1993), and Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 798 (4th Cir. 2001), in
   support of the proposition that laches is unavailable where Congress has provided a statute of
25 limitations to govern the action.  These cases do not apply here.  The Miller court dismissed laches
   as inapplicable in a single sentence, citing only a case involving Section 16 of the Clayton Act,
26 whose limitations clause expressly incorporates the doctrine of laches.  See 991 F.2d at 586 (citing
   IT&T v. General Tel. & Elecs. Corp., 518 F.2d 913, 926 (9th Cir. 1975)).  In Morris Costumes, the
27 Fourth Circuit refused to employ laches to bar a claim that had been filed within the statutory
   period, due to concerns that a judicially created doctrine would usurp the role of the legislature.
28 243 F.3d at 798.  Here, Mattel's claims are barred by the relevant statutes of limitations and laches.

1  present here, as shown below. Then, Mattel argues that "the only state-law equitable claims

2  here to which laches may apply are for unfair competition and declaratory relief" (id. at 53),

3  but ignores that the gravamen of all its claims is ownership of BRATZ. (MGA MSJ at 15-40;

4  Mattel UF ¶ 119 ("nature of the underlying claim" is copyright ownership).)

5  (a)   **Mattel's Delay in Asserting Claims Was Unreasonable**

6  In determining reasonableness, courts look to the cause of the delay and hold that

7  "delay is impermissible when its purpose is to capitalize on the value of the alleged

8  infringer's labor, by determining whether the infringing conduct will be profitable." Danjaq

9  LLC v. Sony Corp., 263 F.3d 942, 954 (9th Cir. 2001). A four year delay is unreasonable.

10  Watermark Publrs. v. High Tech. Sys., Inc., 1997 WL 717677, 44 U.S.P.Q.2d 1578, 1583-

11  84 (S.D. Cal. 1997) (barring plaintiff's claims on laches grounds after 4 year delay in suing).

12  Mattel waited for nearly five and a half years to sue and then did so with the hope of

13  "█████████████" and capitalizing on the profits the MGA Parties and Bryant

14  gained with the success of the BRATZ dolls.  Having failed to beat BRATZ in the

15  marketplace, Mattel sued to recoup market share losses sustained due to Barbie's failings.

16  (MGA MSJ at 11-13.)  Mattel's delay in suing the MGA Parties until November 2006 was

17  strategic and is precisely the type of "speculation" that laches bars.  Haas, 234 F. at 108.

18  (b)   **The MGA Parties Were Prejudiced by Mattel's Delay**

19  Courts recognize two chief forms of prejudice: evidentiary prejudice and

20  expectations-based prejudice. Danjaq, 263 F.3d at 955. Evidentiary prejudice involves "lost,

21  stale, or degraded evidence, or witnesses whose memories have faded or who have died."

22  Id.  Expectations-based prejudice involves a "showing [by defendant] that it took actions or

23  suffered consequences that it would not have, had the plaintiff brought suit promptly." Id.

24  Either form, standing alone, meets the prejudice prong. Id.  MGA suffered both forms here.

25  First, Mattel's propensity for "misplacing" and destroying evidence has rendered

26  discovering important facts from the relevant time period anything but simple.  (See MGA's

27  Mot. for Terminating Sanctions, at 11-14.)  The MGA Parties could not discover virtually

28  any internal Mattel emails pertaining to MGA, BRATZ, or Bryant from 1998 through 2005

because

Danjaq, 263 F.3d at 955; see also Watermark Publrs., 1997 WL 717677, 44 U.S.P.Q.2d at 1583-84.

Second, Mattel argues that the MGA Parties "were not prejudiced because they did not rely on Mattel's alleged delay; rather, they proceeded with developing and producing BRATZ dolls both before and after Mattel brought suit."[29]  Mattel has it backwards. The MGA Parties were prejudiced precisely because they did rely on Mattel's failure to sue. Mattel zealously claims infringement; it knew the parties and their respective roles, but did not sue for years. In MGA's mind, this confirmed the representations of Bryant and his attorney that Bryant owned BRATZ clear of any obligation to Mattel.  (MGA UF ¶¶ 15, 20-22.)  Relying on Mattel's inaction, MGA spent millions developing its BRATZ dolls, which constitutes expectation-based prejudice. Watermark Publrs., 44 U.S.P.Q.2d at 1583-84.[30]

## B.   There Are Genuine Issues On MGA's Defense Under 17 U.S.C. § 205

Mattel's contention that the MGA Parties failed to record MGA's transfer agreement with Bryant before Mattel ignores that MGA registered Bryant's drawings on December 22,

---

[29]     (Mattel UF ¶ 120.) Mattel includes as an "Uncontroverted Fact[]" two independent conclusions of law – that (1) MGA Parties were not prejudiced, and (2) MGA Parties did not rely on Mattel's alleged delay. (Id.) These skeletal conclusions belong in Mattel's brief, not its statement of undisputed facts, and cannot serve as the sole factual support for a finding of "no prejudice" on summary judgment.

[30]     Mattel's authority that MGA's continued production of BRATZ after Mattel sued means that MGA Parties have not been prejudiced misses the mark.  In Russell v. Price, plaintiffs did not speculate, as Mattel has here, on the success of a costly work in which they believed they held a copyright.  612 F.2d 1123, 1125-26 (9th Cir. 1979).  Furthermore, as the Russell plaintiffs were exploiting the copyrighted work themselves (through a licensing arrangement), despite the alleged infringement of the work, the delay in bringing suit was not as unreasonable as it is here.

2003, ***three years in advance of Mattel.*** (Mattel UF ¶ 23.)  Each Certificate of Registration lists Bryant as the author of the drawings, 1998 as the year they were created, and that MGA obtained ownership through an "assignment." (Id.)  When MGA registered its copyrights, Mattel had neither registered nor recorded any alleged interest in Bryant's drawings (id. ¶ 24), even though Mattel admits it knew of its present claims.  Thus, when MGA registered, it took the assignment in good faith without notice of any earlier claims by Mattel (MGA UF ¶¶ 14-22; OF ¶ 133), and it publicly filed documents noting its copyright interest came by assignment (Mattel UF ¶ 23).  Thus, Mattel was on notice of the Bryant-MGA transfer when it went to register the same drawings in 2006.  As Nimmer makes clear concerning the rights of a subsequent transferee: "although an instrument of transfer to a first purchaser [Mattel] may be recorded prior to the time that the copyright owner purports to sell the same copyright interest to a *bona fide* subsequent purchaser [MGA], the latter does not have constructive notice of the first purchase if the work has not been registered at the time the subsequent purchaser acquired his interest." 2 Nimmer on Copyright § 7.16 (2007).  As Mattel failed to register or record until late 2006, MGA was not on constructive notice of the competing transfer and is a *bona fide* subsequent purchaser for value under Section 205(d).

## C.    MGA Can Present Evidence of Good Faith Where Mattel Alleges Intent

Mattel effectively concedes (Mattel MSJ at 44-46) that evidence of a defendant's good faith is relevant to any claim where intent is required or pled as an element.  See, e.g., People v. Webb, 74 Cal. App. 4th 688, 694 (1999). As a technical matter, good faith is not an affirmative defense, as it is not "[a] statement of any new matter constituting a defense" (Cal. Civ. Proc. Code § 431.30), but rather, is evidence showing that an element of Mattel's claim, on which Mattel bears the burden of proof, cannot be met.  5 B.E. Witkin, Cal. Proc.: Pleadings § 1008 (4th ed. 1997) (distinguishing new matters from facts constituting a denial of an element and identifying good faith as the latter and, thus, not an affirmative defense).

Out of an abundance of caution, the MGA Parties' prior counsel asserted good faith as an affirmative defense.  Mattel now asks this Court to rule that good faith is not an affirmative defense. In effect, Mattel seeks a ruling clarifying that it, not the MGA Parties,

1   bears the burden of proof on any claim where intent is relevant. As Mattel's cases make

2   clear, the MGA Parties' over-cautious assertion of good faith as an affirmative defense in no

3   way shifts the burden or precludes the MGA Parties from introducing evidence of their own

4   good faith on all claims where intent is an element.  (Mattel MSJ at 45, citing Zivkovic v. S.

5   Cal. Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002) (evidence that shows that negates an

6   element is not an affirmative defense and plaintiff retains the burden of proof on the issue).)

7          **1.    Mattel's Copyright Claims Include an Element of Scienter**

8          Mattel alleges that the MGA Parties "knowingly" and "deliberately" infringed

9   Mattel's copyright, indicating that Mattel intends to seek enhanced statutory damages under

10  17 U.S.C. § 504(c). (SAA ¶ 85.) By these allegations, Mattel placed directly at issue the

11  MGA Parties' good faith.  Unquestionably, the MGA Parties' good faith with respect to

12  their alleged infringement is properly considered.  17 U.S.C. § 504(c)(2).

13         **2.    Mattel's Conversion Claims Include an Element of Scienter**

14         Mattel's assertion that good faith is irrelevant to conversion is belied by its pleadings,

15  which allege that the MGA Parties "wrongfully" converted Mattel's property.  (SAA ¶¶ 156,

16  161.)  By assuming the burden to prove "wrongful" conduct, Mattel cannot prevent the

17  MGA Parties from showing they did not know that they were converting Mattel's property.

18         As a matter of public policy, Mattel's suggestion that good faith is not relevant is

19  simply incorrect.  In Moore v. Regents of Univ. of Cal., 51 Cal. 3d 120, 144-46 (1990), the

20  Court rejected a conversion claim against recipients of human cells based on national and

21  California policy in favor of socially beneficial research. In doing so, the Court held that

22  conversion should not apply to "innocent" third parties and imputed a knowledge element to

23  the tort to prevent imposing liability "on all those into whose hands the [allegedly converted

24  property] come[s], *whether or not the particular defendant participated in, or knew of*" the

25  primary party's purported wrongdoing.  Id. (emphasis added).  That rationale applies here,

26  given California pro-employee-mobility policy, Cal. Bus. & Prof. Code § 16600.  Applying

27  conversion strictly to the MGA Parties would frustrate employers' ability to hire employees

28  and employees' ability to change employers. Metro Traffic Control, Inc. v. Shadow Traffic

Network, 22 Cal. App. 4th 853, 859 (1994) ("public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice").

### 3.   Unfair Competition Claims Require a Showing of Scienter

Mattel's statutory unfair competition claim contains an intent element, so evidence of MGA's good faith is relevant.[31]  Questions of "unfairness," "deception," and "corruption"[32] necessarily implicate MGA Parties' intent and good faith, as does Mattel's claim for exemplary damages (SAA at 77, ¶ 11).  Fidelity Appraisal Co. v. Federal Appraisal Co., 217 Cal. 307 (1933). Mattel's common law unfair competition claim also requires intent.[33]

### 4.   Interference and Aiding and Abetting Require Intent

Mattel concedes it must prove intent on its intentional interference and aiding and abetting claims.  (Mattel MSJ at 45.)  The intent elements of these claims are at the heart of the MGA Parties' good faith defense. By pointing out that good faith in this context is equivalent to the element of intent, Mattel appears merely to assert that it bears the burden of proof on its interference and aiding and abetting claims.  Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 461 F. Supp. 2d 1188, 1193 (C.D. Cal. 2006) (proof of inducement of breach needed to sustain intentional interference); Richard B. LeVine, 131 Cal. App. 4th at 574.  Thus, evidence of the MGA Parties' good faith is admissible.

### 5.   There Is At Least A Genuine Issue On the MGA Parties' Good Faith

Mattel boldly claims that "[e]ven if good faith were theoretically available as an affirmative defense to some or all of Mattel's claims, no reasonable juror could find it on the facts here." (Mattel MSJ at 46.) To the contrary, the undisputed facts establish that MGA entered into an agreement with Bryant on October 4, 2000 without any knowledge of

---

[31]   Mattel's unfair competition case is cited for the proposition that California's unfair competition law is a strict liability statute, not that good faith is irrelevant to such a claim. Cmty. Assisting Recovery v. Aegis Sec. Ins. Co., 92 Cal. App. 4th 886, 895 (2001).

[32]   Commercial bribery requires that the parties involved act "corruptly."  Cal Penal Code § 641.3. (See also MGA MSJ at III.C.)

[33]   Common law unfair competition is "synonymous with the act of 'passing off' one's goods as those of another," Bank of the West v. Sup. Ct., 2 Cal. 4th 1254, 1263 (1992), which is a tort that sounds in fraud and requires proof of intent, Webb, 74 Cal. App. 4th at 694.

1 Mattel's alleged ownership over Bryant's drawings.  (MGA UF ¶¶ 14-26.)  As the MGA

2 Parties have discussed their good faith at length in their opening brief and elsewhere herein,

3 they will not repeat that discussion here. Suffice it to say that MGA and Larian lacked the

4 intent to induce Bryant to breach his contract with Mattel (<u>see</u> MGA MSJ at 44-49) and

5 could not have aided and abetted a breach of Bryant's alleged duties to Mattel, since the

6 MGA Parties did not know that he owed such a duty. (<u>Supra</u> § II.B.)

### D. There Are Genuine Issues On The Defense Of Waiver

8       Mattel waived any claims arising out of Bryant's employment with Mattel.  Waiver is

9 not appropriately resolved on summary judgment, as it is a quintessential factual question.

10 <u>Bickel v. City of Piedmont</u>, 16 Cal. 4th 1040, 1052 (1997) (overruled on other grounds by

11 unrelated statute) ("[w]hether there has been a waiver is a question of fact").[34]  Mattel

12 ignores that the facts on waiver either support the MGA Parties or are genuinely disputed.

13      Mattel's conduct proves a clear waiver of its alleged rights to enforce Bryant's

14 employment agreement, even if there was no express waiver.  "A waiver can be explicit or

15 it can be implied from a party's conduct and waiver does not require consideration to

16 support it."  <u>Oliker v. Gershunoff</u>, 195 Cal. App. 3d 1288, 1297 (1987); <u>see also</u> <u>Ganley v.</u>

17 <u>County of San Mateo</u>, 2007 WL 902551, at *6 (N.D. Cal. Mar. 22, 2007) (waiver may occur

18 "either expressly or by conduct inconsistent with an intent to enforce that right").

19      Mattel seeks ownership of drawings that Bryant contends he made on his own time.



23                                                                Mattel easily could have controlled its

---

[34]     Mattel disputes this assertion by citing <u>United States v. King Features Entm't Inc.</u>, 843 F.2d 394 (9th Cir. 1988) but, as the Ninth Circuit explained in <u>McLaughlin v. Liu</u>, 849 F.2d 1205, 1208 n.8 (9th Cir. 1988), <u>King Features</u> is inapposite. In <u>McLaughlin</u> the court rejected a motion for summary judgment due to contested facts, explaining that "[<u>King Features</u>] is not to the contrary. The sole issue in that case was whether a contract interpretation was plausible, which 'is a matter of law.' It is of course permissible on summary judgment to assess the plausibility of a legal argument, as opposed to assessing the weight or credibility of direct evidence of a material fact."

1   employees, ████████████████████████████████████████████████████████

2   ████████████████████████████████████████████████████████████████████

3   ████████████████████████████████   This is not a matter of a company failing to pursue

4   every possible claim again an almost infinite number of violations.   Mattel was not

5   selectively enforcing its employment contracts – it simply was not enforcing the contracts <u>at</u>

6   <u>all</u>. Allowing its employees to moonlight is "inconsistent with an intent to enforce" its rights

7   under the contract and constitutes a waiver.   <u>Ganley</u>, 2007 WL 902551, at *6.[35]

8   **E.   <u>There Are Genuine Issues On The Defense Of Estoppel</u>**

9   Estoppel is a question of fact not appropriate for resolution on summary judgment.

10  <u>Elmore v. Oak Valley Hospital District</u>, 204 Cal. App. 3d 716, 724 (1988).[36] Mattel argues

11  that summary judgment is proper, as there are no genuine issues of fact.  Mattel is wrong.

12  Estoppel bars all of Mattel's claims.  Estoppel prevents a plaintiff from bringing

13  claims that are inequitable given its prior conduct.  "The doctrine of estoppel by conduct is

14  embodied in Evidence Code section 623, which states: 'Whenever a party has, by his own

15  statement or conduct, intentionally and deliberately led another to believe a particular thing

16  true and to act upon such belief, he is not, in any litigation arising out of such statement or

17  conduct, permitted to contradict it.'" <u>Hill v. Kaiser Aetna</u>, 130 Cal. App. 3d 188, 195 (1982).

18  Conduct giving rise to estoppel includes "silence or negative omission to do anything."

19  <u>City of Long Beach v. Mansell</u>, 3 Cal. 3d 462, 448 n.22 (1970).  Mattel's inaction led the

20  _____

21  [35] ████████████████████████████████████████████████████████████████

22  ██████████████████████. In <u>Novell Inc. v. Weird Stuff, Inc.</u>, 0094 WL 16458729 (N.D. Cal. Aug. 2, 1993),
    the court found that there were no disputed facts supporting a waiver defense when Novell had

23  taken the affirmative steps of disposing of its products and verbally informing defendants that it
    had no intention of waiving copyright.  Mattel has taken no such steps.  In <u>MGM Studios, Inc. v.</u>

24  <u>Grokster, Ltd.</u>, 518 F. Supp. 2d 1197 (C.D. Cal. 2007), the Ninth Circuit rejected the notion that to
    seek an injunction, MGM had to first show that it pursued **every** copyright infringer on the internet.

25  [36]   <u>Accord</u> <u>Kramer et al. v. Thomas et al.</u>, 2006 WL 4729242, at *9 (C.D. Cal. Sept. 28, 2006)

26  (even when defendant had met all the elements of estoppel, summary judgment was inappropriate
    as estoppel is a fact question); <u>Ard v. County of Contra Costa</u>, 93 Cal. App. 4th 339, 347 (2001);

27  <u>Muraoka v. Budget Rent-a-Car</u>, 160 Cal. App. 3d 107, 117 (1984).  Mattel cites <u>Sawyer v. Sonoma</u>
    <u>County</u>, 719 F.2d 1001 (9th Cir. 1983), which confirms that "[g]enerally, the existence of estoppel

28  is a question for the trier of fact." <u>Id.</u> at 1006 n.12.

1   MGA Parties to believe that Mattel had no copyright claim as to the drawings that were the

2   inspiration for BRATZ, and led Bryant to believe that Mattel did not object to moonlighting.

3        Mattel is estopped from asserting its copyright claims as a result of its prolonged

4   silence regarding alleged infringement and its prior conclusion that the BRATZ does not

5   infringe on its copyrights.  Despite knowing that Bryant created the BRATZ and believing

6   that the BRATZ infringed on its copyright, Mattel took no action for five and a half years.

7   (Supra § III.) The MGA Parties had every right to assume that Mattel's silence indicated

8   that Mattel believed BRATZ did not infringe on its copyrights.  While Mattel sat on its

9   claims, MGA spent millions of dollars marketing and developing the BRATZ.  Estoppel

10  prevents Mattel from delaying its action to maximize the financial damage to its competitor.

11  Moreover, Mattel went beyond willfully choosing to delay this current action.

16      Mattel's investigation and

17  decision not to pursue any claim certainly raise a genuine issue whether Mattel is estopped

18  from proceeding on any of its claims related to the alleged violations of its copyrights.

19       Mattel also is estopped from asserting claims arising out of Bryant's employment as a

20  result of its longstanding pattern of allowing employees to moonlight.

26      As Mattel allowed all of its other employees to moonlight without consequences, it is

27  estopped from bringing claims against Bryant for violations of his employment agreement.

28

1   **F.      There Are Genuine Issues On the Defense of Consent**

2   Consent is a question of fact not appropriate for resolution on summary judgment.

3   Under California law, "[h]e who consents to an act is not wronged by it." Cal. Civ. Code §

4   3515; see also Edward Brown & Sons v. City and County of San Francisco, 36 Cal. 2d 272,

5   279 (1950). Mattel knew that its employees were moonlighting with its competitors and did

6   not object. (OF ¶¶ 110, 124.) Mattel consented when it allowed its employees, all of whom

7   signed employment agreements like Bryant's, to engage in this behavior. Having consented,

8   equity will not allow Mattel to claim that it was harmed by Bryant engaging in such conduct.

9   At the very least, there is a genuine issue whether Mattel's conduct shows its consent and

10  bars its action against the MGA Parties and Bryant for conduct arising out of Bryant's

11  employment relationship. Moreover, Mattel fails to cite a single authority that suggests that

12  allowing employees to moonlight without protest does not amount to consenting to such

13  behavior under Section 3515 of the California Civil Code.[37]

14  **G.      There Are Genuine Issues On The Acquiescence Defense**

15  Acquiescence is generally a question of fact inappropriate for resolution on summary

16  judgment. A party may not bring an action objecting to conduct to which it has acquiesced.

17  Cal. Civ. Code § 3516; see also Security Pac. Nat'l Bank v. Wozab, 51 Cal. 3d 991, 1005

18  (1990) (as plaintiffs had acquiesced in the decision not to foreclose, they were now deprived

19  of the benefit of the rule requiring foreclosure). Here, Mattel contends that it owns various

20  drawings and colorings on drawings done while Bryant was employed at Mattel, but the

21  evidence is undisputed that such activities occurred, if at all, on Bryant's own time and not

22  in the course and scope of his employment. (OF ¶ 175.) Mattel's longstanding practice of

23  allowing its employees to moonlight demonstrates its acquiescence in such conduct. Indeed,

24  so many Mattel employees moonlighted with Mattel's competitors that they developed a

25  ―――――――――――――――――
[37]

26  

27  

28

1  name for these jobs.  (OF ¶¶ 110, 124.)  Every one of these employees signed the same form
2  employment agreement with Mattel as did Bryant.  (Bryant UF ¶¶ 9-11.)  Despite the
3  widespread knowledge of this practice at Mattel, it never investigated or punished this
4  behavior.  (Id. ¶ 41.)  As a result, equity will not allow Mattel to pursue its claims against
5  Bryant arising out of his alleged breach of his employment agreement.

6      It was thus perfectly reasonable for Bryant to infer that Mattel acquiesced to
7  moonlighting, given that his co-workers moonlighted without any objection from the
8  company.  See People v. Sangiacomo, 129 Cal. App. 3d 364, 368 (1982) (defendants had
9  acquiesced to the formation of a class and, under the circumstances, plaintiffs "might have
10 fairly inferred that the defendants had otherwise acquiesced").  Mattel knew (or should have
11 known) of Bryant's conduct no later than 2001.  (MGA UF ¶¶ 53-54, 56.)  Nonetheless, it
12 waited until 2004 to bring an action based on Bryant's employment agreement.  Mattel
13 never brought such an action against any of the other numerous employees who
14 moonlighted during the same period.

15     Mattel's claims that the MGA Parties have violated its copyrights are also barred due
16 to Mattel's acquiescence.  Mattel learned of the BRATZ dolls five and a half years before
17 bringing an action against MGA Parties.  (Id. ¶¶ 31-32, 34-37.)  Mattel offers no valid
18 explanation for this considerable delay.  Meanwhile, the MGA Parties have expended
19 millions of dollars marketing and developing the BRATZ.  The MGA Parties could
20 reasonably infer that, to the extent that Mattel had any copyrights to the BRATZ, it had
21 acquiesced in the MGA Parties' alleged copying.  Such an inference was reasonable and
22 predictable, given the unreasonably long period of the time that Mattel asserted no
23 objections to the MGA Parties' products.  See Sangiacomo, 129 Cal. App. 3d at 368.  At the
24 very least, there is a disputed issue of material fact as to whether Mattel's silence and
25 considerable delay amount to acquiescence.

26     **H.    There Are Genuine Issues On The Abandonment Defense**

27     The doctrine of waiver under California law technically does not exist in copyright.
28 Instead, the defense is treated as "abandonment" under copyright law.  4 Nimmer on

1  Copyright § 13.06 (2007) (while courts, including California's, use terms interchangeably,

2  "abandonment is the particular copyright doctrine closest to waiver. Instead, *abandonment*

3  of the copyright (whether by plaintiff herself or her predecessor in interest) constitutes an

4  effective defense in an infringement action."). Like waiver, abandonment is a question of

5  fact inappropriate for resolution on summary judgment. "[A]bandonment occurs when the

6  proprietor engages in some overt act which manifests his purpose to surrender his rights."

7  Lopez v. Elec. Rebuilders, Inc., 416 F. Supp. 1133, 1135 (C.D. Cal. 1976).

8      Mattel abandoned any copyrights it may have had in the BRATZ in favor of the

9  MGA Parties.

10

11

12

13

14

15

16

17      See Lopez, 416 F. Supp. at 1135 (even though plaintiff may not have intended to

18  lose her copyright, her conduct was "consistent with an intent to abandon"); Read v. Turner,

19  239 Cal. App. 2d 504, 511 (1966) (regardless of intent, general publication "implies an

20  abandonment"). As Mattel abandoned its copyrights and delayed another four years in

21  initiating this litigation against the MGA Parties, there is a genuine issue of material fact.

22      **I.   Mattel Failed to Mitigate Its Alleged Damages**

23      Mitigation involves predominantly factual issues that are not readily resolved on

24  summary judgment. State Department of Health Servs. v. Sup. Ct., 31 Cal. 4th 1026, 1049

25  (2003) (mitigation raises "predominately factual questions"); Siam v. Potter, 2005 U.S. Dist.

26  LEXIS 11893, at *65 (N.D. Cal. May 16, 2005) (same). Mattel concedes that a failure to

27  timely file suit would support a mitigation defense, but argues that it filed suit timely.

28  (Mattel MSJ at 64.) Here, Mattel delayed for five and a half years before filing suit, and

1   then did so only as a means of "███████████" (MGA MSJ at 1-4, 12.)  If Mattel

2   had legitimate claims, it does not, its failure to act on them promptly is a failure to mitigate.

3   **V.    IF THE COURT HAS ANY DOUBTS, THEN THE MGA PARTIES ARE**
        **ENTITLED TO 56(F) RELIEF TO OBTAIN PENDING DISCOVERY**

4       "[S]ummary judgment is disfavored where relevant evidence remains to be

5   discovered," and can be granted only where such discovery would be "fruitless."  Jones v.

6   Blanas, 393 F.3d 918, 930, 935 (9th Cir. 2004).  Although the MGA Parties believe there is

7   ample evidence to deny Mattel's motion, if the Court has any doubts on the MGA Parties'

8   affirmative defenses of statute of limitations, laches, waiver, estoppel, acquiescence,

9   consent, abandonment, or mitigation, then Rule 56(f) relief is plainly warranted.[38]

10      Indeed, Mattel is withholding vital ███████████████████████████

11  ████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████

17  ███████████████████████████████████████  These items are subject to pending

18  motions to compel that will not be resolved until summary judgment briefing is complete.

19                          **CONCLUSION**

20      For the foregoing reasons, Mattel's partial summary judgment motion should be denied.

21  DATED:  March 24, 2008            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

22
                                  By: _____
23                                        Marina V. Bogorad
24                                        Attorneys for the MGA Parties

25

26  [38]    Orlando Residence, Ltd. v. GP Credit Co., LLC, 2006 WL 2849866, at *11 (E.D. Wis. Sept.
27  29, 2006) (continuing summary judgment motion under Rule 56(f) until pending motions to
    compel discovery relating to statute of limitations issues were resolved to allow plaintiff to
28  "conduct [further] discovery ... regarding the accrual of its causes of action ... [and] any tolling of
    the statute(s) of limitations" and "supplement its summary judgment response" accordingly).

508727-Los Angeles Server 2A - MSW