1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
      Telephone: (213) 443-3000
6   Facsimile: (213) 443-3100

7   Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11  CARTER BRYANT, an individual,      CASE NO. CV 04-9049 SGL (RNBx)

12              Plaintiff,             Consolidated with
                                       Case No. CV 04-09059
13        vs.                          Case No. CV 05-02727

14  MATTEL, INC., a Delaware           [PUBLIC REDACTED] CORRECTED
    corporation,                       MATTEL, INC.'S STATEMENT OF
15                                     GENUINE ISSUES REGARDING
                Defendant.             BRYANT'S SEPARATE STATEMENT
16                                     OF UNCONTESTED FACTS IN
                                       SUPPORT OF BRYANT'S MOTION FOR
17  AND CONSOLIDATED ACTIONS           PARTIAL SUMMARY JUDGMENT

18                                     Date:  April 22, 2008
                                       Time:  10:00 a.m.
19                                     Place: Courtroom 1

20                                     **Phase 1**
                                       Discovery Cut-Off:      Jan. 28, 2008
21                                     Pre-Trial Conference:   May 5, 2008
                                       Trial Date:             May 27, 2008
22

23

24

25

26

27

28

1   Pursuant to Local Rules 56-1, 56-4, and this Court's February 22, 2007

2   Scheduling Order, Mattel submits its Corrected Statement of Genuine Issues

3   Regarding Bryant's Separate Statement of Uncontested Facts in Support of

4   Bryant's Motion for Partial Summary Judgment.

5

| Material Fact | Disputed or Undisputed |
|---|---|
| No Number:  Bryant returned to work for Mattel in early 1999 after spending several months pursuing a career as a freelance artist in Missouri. | **Disputed**<br><br>Bryant cites no evidence to support this improper heading. |
| 1.    In 1998 Bryant worked as a freelance artist, including doing freelance work for the Ashton Drake galleries. | **Disputed**<br><br>Anderson Decl. Ex. 1 (Bryant Dep. 143:2-16)[1]<br><br>**Contrary evidence:**<br><br>According to Bryant, he *only* worked as a freelance artist for Ashton Drake galleries in 1998. Deposition Transcript of Carter Bryant Vol. 1 ("Bryant Tr. Vol. 1"), dated November 4, 2004, at 143:12-16 (clarifying that although he designed greeting cards, ███████ ████████████████████████ ████████████████████████<br><br>Bryant denies doing anything in the design field at this time.  Deposition of Carter Bryant in <u>Gunther-Wahl Productions, Inc. v. Mattel, Inc.</u>, dated September 9, 2003, at 89:23-90:7, Zeller Dec., Exh. 6. |
| 2.    Bryant sought to return to work at Mattel in late 1998. | **Undisputed**<br><br>Exs. 1 (Bryant Dep. 150:1-14), 3 (Bryant Dep. 610:12-22, 611:13-22) |
| 3.    After interviewing Bryant twice, Mattel offered him a job as a doll designer. | **Undisputed**<br><br>Ex. 3 (Bryant Dep. 612-5-614:19) |

[1] All exhibits cited to by Bryant are to the Declaration of Christa M. Anderson in Support of Bryant's Motion for Partial Summary Judgment unless otherwise specified.

| Material Fact | Disputed or Undisputed |
|---|---|
| | Ex. 10 (BRYANT 001198-001199) (December 9, 1998 letter from Mattel to Bryant stating offer of employment) |
| 4. Bryant accepted the offer of employment at Mattel and moved from Missouri to California to commence work at Mattel in early 1999. | **Undisputed**<br><br>Ex. 2 (Bryant Dep. 442:15-18) |
| No Number: On his first day of employment at Mattel in January 1999, Bryant was required to sign multiple form employment documents. | **Disputed**<br><br>**Contradictory evidence:**<br>Bryant cites no evidence to support this improper heading. |
| 5. Except for an offer letter, Mattel did not send Bryant any paperwork until after he had accepted its offer of at-will employment with the company. | **Disputed**<br><br>Ex. 3 (Bryant Dep. 615:4-5) (Bryant does not recall receiving enclosures with offer letter)<br>Ex. 6 (Newcomb Dep. 31:1-34:19) (explaining Mattel practice of making offer of employment first and sending new hire paperwork separately and subsequently).<br><br>**Contrary evidence:**<br><br>Bryant received the Inventions Agreement in the mail prior to his first day at Mattel. Deposition Transcript of Lissa Freed ("Freed Tr."), dated May 3, 2007 at 37:7-18 (Mattel new hires are mailed a packet before they arrive for orientation that includes both their Mattel Conflict of Interest Questionnaire and Inventions Agreement.), Zeller Dec., Exh. 57. |
| 6. Upon resuming work at Mattel in January 1999, Bryant was required to sign various "on-boarding" paperwork. | **Disputed**<br><br>Ex. 6 (Newcomb Dep. 43:21-45:14, 18:9-25) (Mattel practice of having new hires sign documents during first-half hour of orientation)<br>Ex. 11 (Freed Dep. 36:6-37:25) (Types of documents new hires receive in association with their commencement of employment at Mattel)<br>Ex. 7 (Decl. of Lissa Freed In Support |

2

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT

| Material Fact | Disputed or Undisputed |
|---|---|
| | Of Mattel's Opp. to Bryant's Mot. to Compel Resps. to Disc. Reqs.) ("Freed Decl."), ¶ 4 (Mattel typically asks all new employees joining El Segundo headquarters to sign Employee Confidential Information and Inventions Agreement and Conflict of Interest Questionnaire). **Contrary evidence:** A prospective employee has the option of signing the on-boarding paperwork if he or she wishes to become a Mattel employee. The prospective employee is free not to join Mattel and not sign the paperwork. |
| 7.    The "on-boarding" paperwork that Bryant was required to sign included tax paperwork, benefits paperwork, a document titled "Employee Confidential Information and Inventions Agreement," ("Employee Agreement") and a "Conflict of Interest Questionnaire" ("Questionnaire"). | **Undisputed** Ex. 11 (Freed Dep. 36:6-37:25) (types of documents new hires receive in association with their commencement of employment at Mattel) Ex. 7 (Freed Decl.), ¶ 4 (Mattel typically asks all new employees joining El Segundo headquarters to sign Employee Agreement and Questionnaire). Ex. 8 (M 001596 – Employee Agreement signed by Bryant) Ex. 9 (M0001621 – Questionnaire signed by Bryant) |
| 8.    Bryant completed and signed the "on-boarding" paperwork on January 4, 1999 during the first half-hour of his Mattel orientation, following Mattel's standard orientation procedures for new employees. | **Disputed as to "during the first half-hour"** Ex. 6 (Newcomb Dep. 15:11-16:23, 43:21-45:14, 48:9-25, 250:2-22) (Mattel practice is to have new hires sign documents during first-half hour of orientation and this practice was followed during Bryant's orientation) Ex. 7 (Freed Decl.), ¶ 4 (Mattel typically asks all new employees joining El Segundo headquarters to sign Employee Agreement and Questionnaire). |

3

| Material Fact | Disputed or Undisputed |
|---|---|
| | Ex. 3 (Bryant Dep. 632:7-633:25) (Bryant signed paperwork during orientation on first day of work at Mattel in 1999) **Contrary evidence:** Deposition Transcript of Carter Bryant Vol. 3 ("Bryant Tr. Vol. 3"), dated November 8, 2004, at 633:17-20 (Bryant testified that the orientation session for his second period of employment at Mattel ▮▮▮▮ ▮▮▮▮▮▮▮▮▮ Zeller Dec., Exh. 3; id. at 634:12-635:22 (Bryant could only remember signing ▮▮▮▮▮ and even then, he does not recall when he signed it), Zeller Dec., Exh. 3. |
| No Number: The Employee Agreement and Questionnaire were non-negotiable form documents that were presented to Bryant as forms that he was required to sign in order to commence employment. | **Disputed** Bryant cites no evidence to support this improper heading. |
| 9. Mattel's offer letter to Bryant states that the offer of employment is subject to his completion of the Employee Agreement. | **Undisputed** Ex. 10 (BRYANT 001198-001199) (December 9, 1998 offer letter from Mattel to Bryant) |
| 10. Mattel's offer letter to Bryant makes no mention of a confidential or fiduciary relationship. | **Disputed** Ex. 10 (BRYANT 001198-001199) (December 9, 1998 offer letter from Mattel to Bryant) **The evidence cited does not support the stated proposition:** The December 9, 1998 offer letter from Mattel to Bryant reflects an intention to enter into a confidential relationship. Mattel's Vice President of Human Resources states ▮▮▮▮▮▮▮▮▮▮ |

| Material Fact | Disputed or Undisputed |
|---|---|
| | ████████████████████ |
| | Mattel 1998 Offer letter (emphasis added), Anderson Dec., Exh. 10. |
| 11. The Employee Agreement signed by Bryant is a pre-printed form document that was not customized for Bryant in any way. | **Disputed**<br><br>Ex. 8 (M 001596 – Employee Agreement signed by Bryant)<br>Ex. 11 (Freed Dep. 31:10-17; 32:6-12) (Employee Agreement signed by Bryant was a standard form that all new Mattel employees were required to sign in January of 1999)<br>Ex. 7 (Freed Decl.), ¶ 4 (Mattel typically asks all new employees joining El Segundo headquarters to sign Employee Agreement).<br><br>**Contrary evidence:**<br><br>Bryant never asked to negotiate, modify or customize his Inventions Agreement. Bryant Tr. Vol. 3 at 631:9-639:22, Zeller Dec., Exh. 3.<br><br>Mattel employee Alan Kaye testified employees had refused to sign the inventions agreement ████ and that there were ██████<br>████<br>Deposition Transcript of Alan Kaye, Vol. 1 ("Kaye Tr."), December 10, 2004, at 215:3-216:23, Zeller Dec., Exh. 65; see also Deposition Transcript of Adrienne Fontanella ("Fontanella Tr."), dated January 16, 2008, at 26:11-28:3, Zeller Dec., Exh. 114.<br><br>Robert Hudnut, a Mattel employee deposed in this case, made changes to Mattel's Employee Confidential Information and Inventions Agreement, as well as the Conflict of Interest Questionnaire. Hudnut Agreement, Bates-numbered M 0098318-9, (on |

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT

| Material Fact | Disputed or Undisputed |
|---|---|
| | which he writes ████████ ████ Zeller Dec., Exh. 7; Hudnut's side letter, Bates-numbered M 0098320-1, Zeller Dec., Exh. 8; Hudnut's Questionnaire, Bates-numbered M 0098322-3, (on which he writes ████ ████████████ Zeller Dec., Exh. 9; Deposition Transcript of Robert Hudnut Vol. 1 ("Hudnut Tr. Vol. 1"), dated July 13, 2007, at 209:14-211:15, 216:25-220:3, Zeller Dec., Exh. 10. |
| 12. Mattel's lawyers drafted the Employee Agreement. | **Undisputed** Ex. 12 (Mattel's Responses to MGA's Fifth Set of Reqs. for Admis.), Nos. 26, 27 (Mattel admits that it drafted the Employee Agreement signed by Bryant) Ex. 13 (Simpson-Taylor dep. 65:4-14, 52:17-53:25) (Mattel's lawyers drafted Employee Agreement) |
| 13. The Employee Agreement has no blank lines or options for filling in or altering the specific terms. | **Disputed as to "or options"** Ex. 8 (M 001596 – Employee Agreement signed by Bryant) **Contrary evidence:** Bryant never asked to negotiate, modify or customize his Inventions Agreement. Bryant Tr. Vol. 3 at 631:9-639:22, Zeller Dec., Exh. 3. Mattel employee Alan Kaye testified employees had refused to sign the inventions agreement ████ and that there were ████████ ████████████ Kaye Tr. at 215:3-216:23, Zeller Dec., Exh. 65; see also Fontanella Tr. at 26:11-28:3, Zeller Dec., Exh. 114. Robert Hudnut made changes to Mattel's Employee Confidential Information and |

| Material Fact | Disputed or Undisputed |
|---|---|
| | Inventions Agreement, as well as the Conflict of Interest Questionnaire. Hudnut Agreement, Bates-numbered M 0098318-9, (on which he writes ███████ ██████ Zeller Dec., Exh. 7; Hudnut's side letter, Bates-numbered M 0098320-1, Zeller Dec., Exh. 8; Hudnut's Questionnaire, Bates-numbered M 0098322-3, (on which he he writes ██████ ████████████ ████████ Zeller Dec., Exh. 9; Hudnut Tr. Vol. 1 at 209:14-211:15, 216:25-220:3, Zeller Dec., Exh. 10. |
| 14. The Employee Agreement does not state that Bryant has a fiduciary duty to Mattel. | **Disputed** <br><br> Ex. 8 (M 001596 – Employee Agreement signed by Bryant) <br><br> **The evidence cited does not support the stated proposition:** <br><br> The opening paragraph of the agreement states, among other things, that the employee ███████████████████ ██████████████████ when employment with the company ends. Further, ██████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ Inventions Agreement (emphasis added), Anderson Dec., Exh. 8. |

| Material Fact | Disputed or Undisputed |
|---|---|
| 15. Mattel's lawyers drafted the Questionnaire. | **Undisputed**<br><br>Ex. 12 (Mattel's Responses to MGA's Fifth Set of Reqs. for Admis.), Nos. 28, 29 (Mattel admits that it drafted the Questionnaire signed by Bryant)<br>Ex. 14 (Tafoya dep. 88:9-14) (Mattel's lawyers drafted the Questionnaire)<br>Ex. 9 (M 0001621 - Questionnaire signed by Bryant) |
| 16. The Employee Agreement does not reference any particular invention that falls under it. | **Disputed**<br><br>Ex. 12 (Mattel's Responses to MGA's Fifth Set of Reqs. for Admis.), No. 11.<br><br>**The evidence cited does not support the stated proposition:**<br><br>Mattel admitted that ███████ ████████████████████████ █████████ However, Mattel further admitted that ████████████ ████████████████████████ ███████████████ <u>See</u> Mattel's Response to Bryant's Request for Admission No. 11, Anderson Dec., Exh. 12.<br><br>**Contrary evidence:**<br><br>The Inventions Agreement reads, ███ ████████████████████████ ████████████████████████ ████████████ Inventions Agreement at ¶ 2(b), Anderson Dec., Exh. 8. |
| 17. The Employee Agreement was presented to Bryant as a form that he was required to sign in order to commence employment. | **Disputed**<br><br>Ex. 1 (Bryant Dep. 30:21-31:25) (Bryant was instructed to sign forms to begin work)<br>Ex. 14 (Tafoya Dep. 38:22-39:10) |

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT

| Material Fact | Disputed or Undisputed |
|---|---|
| | (Mattel employee responsible for Bryant's orientation testifies that if a new hire had asked if all of the forms had to be signed, she would have replied that they did)<br><br>Ex. 6 (Newcomb Dep. 115:12-24) (new Mattel employees required to sign Employee Agreement)<br><br>Ex. 14 (Tafoya Dep. 31:14-18) (new Mattel employees required to sign Employee Agreement and Questionnaire as written)<br><br>Ex. 7 ("Freed Decl."), ¶ 4 (Mattel typically asks all new employees joining El Segundo headquarters to sign Employee Agreement and Questionnaire)<br><br>**The evidence cited in Ex. 14 does not support the stated proposition:**<br><br>In the first portion of Ms. Tafoya's testimony cited by Bryant, she states simply that she thinks that she conducted ▮▮▮▮▮▮ of the new-hire orientations at Mattel's El Segundo headquarters from roughly sometime in 1997 through sometime in 1999. Deposition Transcript of Maureen Tafoya ("Tafoya Tr."), dated January 28, 2008, at 38:22- 39:10, Anderson Dec., Exh. 14.<br><br>**Contrary evidence:**<br><br>Bryant never asked to negotiate, modify or customize his Inventions Agreement. Bryant Tr. Vol. 3 at 631:9-639:22, Zeller Dec., Exh. 3.<br><br>Mattel employee Alan Kaye testified employees had refused to sign the inventions agreement ▮▮▮▮▮ and that there were ▮▮▮▮▮▮▮▮▮▮ Kaye Tr. at 215:3-216:23, Zeller Dec., Exh. |

| Material Fact | Disputed or Undisputed |
|---|---|
| | 65; see also Fontanella Tr. at 26:11-28:3, Zeller Dec., Exh. 114. |
| | Robert Hudnut made changes to Mattel's Employee Confidential Information and Inventions Agreement, as well as the Conflict of Interest Questionnaire. Hudnut Agreement, Bates-numbered M 0098318-9, (on which he writes ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ Zeller Dec., Exh. 7; Hudnut's side letter, Bates-numbered M 0098320-1, Zeller Dec., Exh. 8; Hudnut's Questionnaire, Bates-numbered M 0098322-3, (on which he he writes ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ Zeller Dec., Exh. 9; Hudnut Tr. Vol. 1 at 209:14-211:15, 216:25-220:3, Zeller Dec., Exh. 10. |
| | The Court found previously that Bryant could not state a claim based on unconscionability. Court's Order Granting Motion to Dismiss, dated July 17, 2006, at 14, ("It is not surprising or overly harsh that Mattel would expect its trade secrets and proprietary information to be kept confidential; the same is true regarding Mattel's expectation that the works of its design staff - created by Mattel employees, using Mattel's resources, during time for which Mattel paid the employee - be considered its property. Therefore, Bryant cannot state a claim based on unconscionability."), Zeller Dec., Exh. 105. |
| 18.   The Employee Agreement was signed by all Design Center employees, and many others, amounting to thousands (even tens of thousands) of Mattel employees. | **Disputed as to "even tens of thousands" and as to Tafoya testimony** Ex. 7 (Freed Decl.), ¶ 4 (Mattel typically asks all new employees joining El Segundo headquarters, including the Design Center, to sign Employee |

| Material Fact | Disputed or Undisputed |
|---|---|
| | Agreement).<br>Ex. 7 (Freed Decl.), ¶ 4 (Mattel currently employes nearly 750 people in the Design Center alone and, since 1995, Mattel has employed more than 2000 employees at the Design Center).<br>Ex. 15 (2000 Mattel, Inc. Annual Report, 16) (Mattel has over 30,000 employees worldwide)<br>Ex. 14 (Tafoya Dep. 30:4-21, 40:14-41:5) (Employee Agreement was signed by new Mattel employees as part of standard orientation procedure)<br>Ex. 16 (Park Dep. 240:25-241:4) (new Mattel employees must sign paperwork upon arrival at Mattel)<br>Ex. 17 (Mattel's Supplemental Resps. to Bryant's Second Set of Interrogs.), No. 20 (Mattel seamstresses signed agreements relating to employment at Mattel)<br><br>**The evidence cited does not support the stated proposition:**<br><br>Bryant does not present any evidence that ▮▮▮▮▮▮▮▮▮ of Mattel employees have signed the Inventions Agreement.<br><br>In the testimony of Ms. Tafoya cited, she does not say whether or not the Employee Agreement was signed by new Mattel employees as part of the standard orientation procedure. Tafoya Tr. at 30:4-21, 40:14-41:5.<br><br>**Contrary evidence:**<br><br>Bryant never asked to negotiate, modify or customize his Inventions Agreement. Bryant Tr. Vol. 3 at 631:9-639:22, Zeller Dec., Exh. 3.<br><br>Mattel employee Alan Kaye testified employees had refused to sign the |

| Material Fact | Disputed or Undisputed |
|---|---|
| | inventions agreement ████ and that there were ████ ████ Kaye Tr. at 215:3-216:23, Zeller Dec., Exh. 65; see also Fontanella Tr. at 26:11-28:3, Zeller Dec., Exh. 114. |
| | Robert Hudnut made changes to Mattel's Employee Confidential Information and Inventions Agreement, as well as the Conflict of Interest Questionnaire. Hudnut Agreement, Bates-numbered M 0098318-9, (on which he writes ████ ████ Zeller Dec., Exh. 7; Hudnut's side letter, Bates-numbered M 0098320-1, Zeller Dec., Exh. 8; Hudnut's Questionnaire, Bates-numbered M 0098322-3, (on which he he writes ████ ████ Zeller Dec., Exh. 9; Hudnut Tr. Vol. 1 at 209:14-211:15, 216:25-220:3, Zeller Dec., Exh. 10. |
| 19.   The Questionnaire was presented to Bryant as a form that he was required to sign in order to commence employment. | **Disputed**<br><br>Ex. 1 (Bryant Dep. 30:21-31:25) (Bryant was instructed to sign forms to begin work)<br>Ex. 14 (Tafoya Dep. 38:22-39:10) (Mattel employee responsible for Bryant's orientation testifies that if a new hire had asked if all of the forms had to be signed, she would have replied that they did)<br>Ex. 14 (Tafoya Dep. 31:14-18) (new Mattel employees required to sign Employee Agreement and Questionnaire as written)<br>Ex. 7 ("Freed Decl."), ¶ 4 (Mattel typically asks all new employees joining El Segundo headquarters to sign Employee Agreement and Questionnaire)<br><br>**The evidence cited in Ex. 14 does not** |

| Material Fact | Disputed or Undisputed |
|---|---|
| | support the stated proposition: |
| | In the first portion of Ms. Tafoya's testimony cited by Bryant, she states simply that she thinks that she conducted ▮▮▮▮▮▮▮▮▮▮▮▮ of the new-hire orientations at Mattel's El Segundo headquarters from roughly sometime in 1997 through sometime in 1999.   Tafoya Tr. at 38:22- 39:10, Anderson Dec., Exh. 14. |
| | **Contradictory evidence:** |
| | Robert Hudnut made changes to Mattel's Employee Confidential Information and Inventions Agreement, as well as the Conflict of Interest Questionnaire. Hudnut Agreement, Bates-numbered M 0098318-9, (on which he writes ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Zeller Dec., Exh. 7; Hudnut's side letter, Bates-numbered M 0098320-1, Zeller Dec., Exh. 8; Hudnut's Questionnaire, Bates-numbered M 0098322-3, (on which he he writes ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Zeller Dec., Exh. 9; Hudnut Tr. Vol. 1 at 209:14-211:15, 216:25-220:3, Zeller Dec., Exh. 10. |
| | In addition, the Court found previously that Bryant could not state a claim based on unconscionability.   Court's Order Granting Motion to Dismiss, dated July 17, 2006, at 14, ("It is not surprising or overly harsh that Mattel would expect its trade secrets and proprietary information to be kept confidential; the same is true regarding Mattel's expectation that the works of its design staff - created by Mattel employees, using Mattel's resources, during time for which Mattel paid the employee - be considered its property.   Therefore, |

| Material Fact | Disputed or Undisputed |
|---|---|
| | Bryant cannot state a claim based on unconscionability."), Zeller Dec., Exh. 105. |
| 20. Mattel gave new Mattel employees no opportunity to negotiate the terms of their employment paperwork, including the Employee Agreement | **Disputed**<br><br>Ex. 6 (Newcomb Dep. 43:17-20) (Mattel Senior Recruiter not aware of any instance in which non-executive employee has negotiated the terms of their employment with Mattel)<br>Ex. 6 (Newcomb Dep. 113:12-19) (Mattel Senior Recruiter who witnessed Bryant sign Employee Agreement testifies that Employee Agreement is not a negotiable document)<br>Ex. 6 (Newcomb Dep. 114:7-12) (Mattel Senior Recruiter who witnessed Bryant sign Employee Agreement not aware of any employee not signing Employee Agreement or Questionnaire)<br>Ex. 11 (Freed Dep. 39:21-40:24) (Mattel human resources employees not authorized to make any changes to Employee Agreement)<br>Ex. 14 (Tafoya Dep. 31:19-32:11) (Mattel employee responsible for Bryant's orientation understood that new hires were required to sign the forms as written)<br><br>**The evidence cited in Ex. 14 does not support the stated proposition:**<br><br>Tafoya explained that ███████████████ ██████████████ Anderson Dec., Exh. 14 at 31:19-25.<br><br>**Contrary evidence:**<br><br>Bryant never asked to negotiate, modify or customize his Inventions Agreement. Bryant Tr. Vol. 3 at 631:9-639:22, Zeller Dec., Exh. 3. |

| Material Fact | Disputed or Undisputed |
|---|---|
| | Mattel employee Alan Kaye testified employees had refused to sign the inventions agreement ▮▮▮▮ and that there were ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Kaye Tr. at 215:3-216:23, Zeller Dec., Exh. 65; see also Fontanella Tr. at 26:11-28:3, Zeller Dec., Exh. 114.

Newcomb did not differentiate between executives and non-executives. Rather, she did not remember either type of employee negotiating the terms of their employment. See Newcomb Tr. at 42:25-43:20, Zeller Dec., Exh. 14.

Nonetheless, Newcomb witnessed the Inventions Agreement of Robert Hudnut who negotiated his agreement with Mattel. Robert Hudnut made changes to Mattel's Inventions Agreement, as well as the Conflict of Interest Questionnaire. See Hudnut Agreement, Bates-numbered M 0098318-9, (on which he writes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ Zeller Dec., Exh. 7; Hudnut's side letter, Bates-numbered M 0098320-1, Zeller Dec., Exh. 8; Hudnut's Questionnaire, Bates-numbered M 0098322-3, (on which he he writes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Zeller Dec., Exh. 9; Hudnut Tr. Vol. 1 at 209:14-211:15, 216:25-220:3, Zeller Dec., Exh. 10. |
| 21. Maureen Tafoya, the Mattel human resources employee responsible for conducting Bryant's orientation, understood that new hires were obligated to sign the Employee Agreement and Questionnaire as written. | **Disputed**

Ex. 14 (Tafoya Dep. 31:19-32:11) (Mattel employee responsible for Bryant's orientation understood that new hires were required to sign the forms as written)
Ex. 11 (Freed Dep. 40:16-20) (Ms. Tafoya was Mattel manager who conducted Bryant's orientation) |

15

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT

| Material Fact | Disputed or Undisputed |
|---|---|
|  | **The evidence cited does not support the stated proposition:** Tafoya explained that ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ Anderson Dec., Exh. 14 at 31:19-25. Freed testified that she ▮▮▮▮ Tafoya was doing orientation when Bryant was rehired in 1999. Anderson Dec., Exh. 11 at 40:16-20. Bryant never asked to negotiate, modify or customize his Inventions Agreement. Bryant Tr. Vol. 3 at 631:9-639:22, Zeller Dec., Exh. 3. Mattel employee Alan Kaye testified employees had refused to sign the inventions agreement ▮▮▮▮ and that there were ▮▮▮▮▮ Kaye Tr. at 215:3-216:23, Zeller Dec., Exh. 65; see also Fontanella Tr. at 26:11-28:3, Zeller Dec., Exh. 114. Robert Hudnut made changes to Mattel's Employee Confidential Information and Inventions Agreement, as well as the Conflict of Interest Questionnaire. Hudnut Agreement, Bates-numbered M 0098318-9, (on which he writes ▮▮▮▮ ▮▮▮▮▮▮▮ Zeller Dec., Exh. 7; Hudnut's side letter, Bates-numbered M 0098320-1, Zeller Dec., Exh. 8; Hudnut's Questionnaire, Bates-numbered M 0098322-3, (on which he he writes ▮▮▮▮▮ ▮▮▮▮ Zeller Dec., Exh. 9; Hudnut Tr. Vol. 1 at 209:14-211:15, 216:25-220:3, Zeller Dec., Exh. 10. |

16

| Material Fact | Disputed or Undisputed |
|---|---|
| 22.   Teresa Newcomb, the Mattel Senior Recruiter who witnessed Bryant sign the Employee Agreement in 1999, admitted that the Employee Agreement is not a negotiable document. | **Disputed**<br><br>Ex. 6 (Newcomb Dep. 113:12-19) (Mattel Senior Recruiter who witnessed Bryant sign Employee Agreement testifies understood that Employee Agreement is not a negotiable document)<br>Ex. 6 (Newcomb Dep. 43:21-44:9) (Ms. Newcomb witnessed Bryant sign Employee Agreement)<br><br>**Contrary evidence:**<br><br>Bryant never asked to negotiate, modify or customize his Inventions Agreement. Bryant Tr. Vol. 3 at 631:9-639:22, Zeller Dec., Exh. 3.<br><br>Mattel employee Alan Kaye testified employees had refused to sign the inventions agreement ▇▇▇ and that there were ▇▇▇ ▇▇▇ Kaye Tr. at 215:3-216:23, Zeller Dec., Exh. 65; see also Fontanella Tr. at 26:11-28:3, Zeller Dec., Exh. 114.<br><br>Newcomb witnessed the Inventions Agreement of Robert Hudnut who negotiated his agreement with Mattel. Robert Hudnut made changes to Mattel's Inventions Agreement, as well as the Conflict of Interest Questionnaire. See Hudnut Agreement, Bates-numbered M 0098318-9, (on which he writes ▇▇▇ ▇▇▇ Zeller Dec., Exh. 7; Hudnut's side letter, Bates-numbered M 0098320-1, Zeller Dec., Exh. 8; Hudnut's Questionnaire, Bates-numbered M 0098322-3, (on which he he writes ▇▇▇ ▇▇▇ Zeller Dec., Exh. 9; Hudnut Tr. Vol. 1, at 209:14-211:15, 216:25- |

17

| Material Fact | Disputed or Undisputed |
|---|---|
|  | 220:3, Zeller Dec., Exh. 10. |
| No Number:   Mattel did nothing to ensure that Bryant understood the terms of the Employee Agreement. | **Disputed**<br><br>Bryant cites no evidence to support this improper heading. |
| 23.   Mattel did not provide employees with any written instructions or explanations of the Employee Agreement. | **Disputed**<br><br>Ex. 6 (Newcomb Dep. 221:18-223:11) (sole role of Mattel witness at orientation was to insure that new employees signed the documents—not to instruct new employees to read documents or to verify that documents had been read)<br>Ex. 6 (Newcomb Dep. 223:12-225:20) (not appropriate for Mattel human resources employees who served as witnesses at new employee orientations to answer questions regarding the forms)<br>Ex. 6 (Newcomb Dep. 15:21-16:23) (first half hour of Mattel orientation is allotted to ████████ paperwork that new employees should have filled out in advance)<br>Ex. 14 (Tafoya Dep. 41:3-5) (Mattel employee responsible for Bryant's orientation does not recall any instruction being provided to new employees regarding the terms or form of the Employee Agreement)<br><br>**Contrary evidence:**<br><br>Bryant never asked to negotiate, modify or customize his Inventions Agreement. Bryant Tr. Vol. 3 at 631:9-639:22, Zeller Dec., Exh. 3.<br><br>Deposition Transcript of Amy Myers ("Myers Tr."), dated February 22, 2008, at 216:19-23 (former Mattel employee Amy Myers testified that the Mattel agreement had been explained to her), Zeller Dec., Exh. 12. |

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT

| Material Fact | Disputed or Undisputed |
|---|---|
| | Neither Newcomb or Tafoya recalled anyone ever asking any questions about the Inventions Agreement. Newcomb Tr. at 223:12-15, Anderson Dec., Exh. 6; <u>see also</u> Tafoya Tr. at 31:19-25, Anderson Dec., Exh. 14. Newcomb further testified that if someone had asked her a question, she would have referred them to ███████ ████████████ Newcomb Tr. at 223:16-21, Anderson Dec., Exh. 6. |
| 24. Mattel did nothing to verify that Bryant had read the Employee Agreement, nor did it instruct him to read the document or give him time to do so. | **Disputed as to "or give him time to do so" and "instruct him to read the document"**<br><br>Ex. 6 (Newcomb Dep. 221:18-223:11) (sole role of Mattel witness at orientation was to insure that new employees signed the documents—not to instruct new employees to read documents or to verify that documents had been read)<br><br>**Contrary evidence:**<br><br>Bryant received the Inventions Agreement in the mail prior to his first day at Mattel. Freed Tr. at 37:7-18, Zeller Dec., Exh. 57 (Mattel new hires are mailed a packet before they arrive for orientation that includes both their Mattel Conflict of Interest Questionnaire and Inventions Agreement.).<br><br>The Inventions Agreement Bryant signed in 1999 was similar to the one he executed when he previously worked for Mattel. 1995 Inventions Agreement, Zeller Dec., Exh. 33.<br><br>Bryant understood the employment agreement. In 2001, Bryant explained to Marlow the copyright assignment in his contract with MGA, which was at least as technical as his Mattel |

| Material Fact | Disputed or Undisputed |
|---|---|
| | Inventions Agreement. E-mail Exchange between Carter Bryant and Veronica and Peter Marlow, Bates-numbered KMW-M 007635-8, at 007636 (where Bryant explained, [redacted] Zeller Dec., Exh. 13; Deposition Transcript of Carter Bryant Vol. 4 ("Bryant Tr. Vol. 4"), dated January 23, 2008, at 861:18-862:2, Zeller Dec., Exh. 4.

The Employee Confidential Information and Inventions Agreement itself instructed Bryant to read it. Above Bryant's signature line, the agreement stated in bold, capital letters: "CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT." Inventions Agreement, Proctor Dec., Exh. 5. |
| 25.   Mattel personnel who witnessed new employees sign the Employee Agreement were instructed not to answer questions about the document. | **Disputed**

Ex. 6 (Newcomb Dep. 223:12-225:20) (Mattel Senior Recruiter who witnessed Bryant sign Employee Agreement testified that it was not appropriate for Mattel human resources employees who served as witnesses at new employee orientations to answer questions regarding the forms)

**The evidence cited does not support the stated proposition:** |

| Material Fact | Disputed or Undisputed |
|---|---|
| | The parenthetical summarizing Ex. 6 is misleading. While the cited testimony of Newcomb does state that Mattel personnel who *witnessed* new employees sign the Employee Agreement were instructed not to answer questions about the document, Newcomb also testifies that new employees could easily obtain such answers from a Mattel employee, simply by asking. See Newcomb Tr. at 223:12-225:20, Anderson Dec., Exh. 6.<br><br>**Contrary evidence:**<br><br>Former Mattel employee Amy Myers testified that Mattel explained her Mattel agreement to her. Myers Tr. at 216:19-23, Zeller Dec., Exh. 12. |
| 26. Mattel orientation for new employees did not involve any substantive discussion of the Employee Agreement. | **Disputed**<br><br>Ex. 6 (Newcomb Dep. 15:21-16:23) (first half hour of Mattel orientation is allotted to ▓▓▓▓ paperwork that new employees should have filled out in advance)<br><br>**Contrary evidence:**<br><br>Former Mattel employee Amy Myers testified that Mattel explained her Mattel agreement to her. Myers Tr. at 216:19-23, Zeller Dec., Exh. 12. |
| No Number: Bryant's position at Mattel did not entail managerial or real discretionary authority. | **Disputed**<br><br>Bryant cites no evidence to support this improper heading. |
| 27. From January 4, 1999 until October 19, 2000, Bryant worked as a "Project Designer" in the Mattel Barbie collectibles department, which makes higher-end dolls for adult collectors. | **Disputed as to "higher-end dolls for adult collectors."**<br><br>Ex. 10 (BRYANT 001198-001199) (December 9, 1998 letter from Mattel to Bryant offering Bryant employment as a Project Designer at Mattel)<br>Ex. 18 (Nordquist Dep. 57:11-18) |

21

| Material Fact | Disputed or Undisputed |
|---|---|
| | (Bryant worked at Mattel as a designer in the collectibles department) Ex. 19 (Hoffman-Briggs Dep. 54:7-14) (Bryant worked as a designer at Mattel) **Contrary evidence:** Some BARBIE Collectibles dolls are played with and purchased by or for children. See Tomiyama Tr. at 48:19-49:3, Zeller Dec., Exh. 15. |
| 28.    As a Project Designer, Bryant worked on a team of several dozen employees all of whom were supervised by Ann Driskill. | **Disputed** Ex. 20 (Driskill Dep. 302:9) (Bryant's former supervisor explaining ███████ ████████) Ex. 1 (Bryant Dep. 241:13-25) (Bryant's job responsibilities at Mattel included taking an assignment from his supervisors and creating a design that he believed was responsive to those instructions) Ex. 19 (Hoffman-Briggs Depo. 54:23-55:12) (process for doll design at Mattel entails an assignment from management, the creation of a 2-D design by a designer, and, if that design is approved, the creation of a 3-D design by a pattern maker) **Contrary evidence:** Bryant's role at Mattel included directing other employees. Tomiyama testified that his job duties at Mattel included instructing people on what to do e.g., hair, face, and fashion details for dolls, Deposition Transcript of Christina Tomiyama, ("Tomiyama Tr."), dated February 27, 2008, at 34:19-36:20 (confirming that Bryant ████ ████████████████████████████ ████████████████████ and that he ████   ██ Zeller Dec., Exh. 15. |

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT

| Material Fact | Disputed or Undisputed |
|---|---|
| | Mattel designer Renee Pasko stated that her job at Mattel included directing others since as a designer she would ███████████ as well as be consulted on ███████ Deposition Transcript of Rene Pasko, ("Pasko Tr."), dated June 13, 2007, at 50:21-52:21, Zeller Dec., Exh. 16 |
| | Preliminary designers like Bryant also instructed development designers. Tomiyama Tr. at 37:25-39:8 (acknowledging that ███████████ Zeller Dec., Exh. 15. |
| | Pasko Tr. at 51:22-52:12 (explaining that ███████████ She would do this by using the resources that she had by consulting with and giving direction to ███████ Zeller Dec., Exh.16 . |
| | Bryant directed, reviewed, and commented on the work of other Mattel employees. Bryant Tr. Vol. 5 at 1093:14-1094:7 (commenting that ███████████ Zeller Dec., Exh. 5; Bryant Tr. Vol. 5 at 1094:8-1095:13 (confirming that he gave direction and saw whether his directions were complied with), Zeller Dec., Exh. 5. |
| | **Evidentiary Objections** |

| Material Fact | Disputed or Undisputed |
|---|---|
|  | Objection to the supporting deposition transcript of Ann Driskill at 302:7-9 on the grounds that it is an incomplete excerpt. Fed. R. Evid. 106. |
| 29.    Each of the individuals on a Mattel design team—as well as Mattel marketing personnel, Ms. Driskill and her supervisors, and several outside vendors—contributed to the process of creating and producing a collectible doll. | **Disputed**<br><br>Ex. 20 (Driskill Dep. 302:9) (Bryant's former supervisor explaining ███████ ███████)<br><br>Ex. 1 (Bryant Dep. 241:13-25) (Bryant's job responsibilities at Mattel included taking an assignment from his supervisors and creating a design that he believed was responsive to those instructions)<br>Ex. 19 (Hoffman-Briggs Depo. 54:23-55:12) (process for doll design at Mattel entails an assignment from management, the creation of a 2-D design by a designer, and, if that design is approved, the creation of a 3-D design by a pattern maker).<br><br>**Evidentiary Objections**<br><br>Objection to the supporting deposition transcript of Ann Driskill at 302:7-9 on the grounds that it is an incomplete excerpt. Fed. R. Evid. 106. |
| 30.    Bryant did not control or initiate the projects he worked on at Mattel. | **Disputed**<br><br>Ex. 1 (Bryant Dep. 241:13-25) (Bryant's job responsibilities at Mattel included taking an assignment from his supervisors and creating a design that he believed was responsive to those instructions)<br>Ex. 19 (Hoffman-Briggs Depo. 55:16-56:4) (designers at Mattel are assigned specific projects from management and given guidelines on how to execute the project)<br>Ex. 19 (Hoffman-Briggs Depo. 54:23-55:12) (process for doll design at Mattel entails an assignment from |

24

| Material Fact | Disputed or Undisputed |
|---|---|
| | management, the creation of a 2-D design by a designer, and, if that design is approved, the creation of a 3-D design by a pattern maker) |

**Contrary Evidence:**

Bryant's role at Mattel included directing other employees. Tomiyama testified that his job duties at Mattel included instructing people on what to do e.g., hair, face, and fashion details for dolls, Tomiyama Tr. at 34:19-36:20 (confirming that Bryant ███████████████████████████████ and that he ████████ Zeller Dec., Exh. 15.

Also, see testimony of Pasko (stating that her job at Mattel included directing others since as a designer she would ████████████ as well as be consulted on "rough costs,") Pasko Tr., dated June 13, 2007, at 50:21-52:21, Zeller Dec., Exh. 16.

Preliminary designers like Bryant also instructed development designers. Tomiyama Tr. at 37:25-39:8 (acknowledging that ████████████████████████████ Zeller Dec., Exh. 15.

Pasko Tr. at 51:22-52:12 (explaining ████████████████████████████████ She would do this by using the resources that she had by consulting with and giving direction to ████████ Zeller Dec., Exh. 16 .

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT

| Material Fact | Disputed or Undisputed |
|---|---|
|  | Bryant directed, reviewed, and commented on the work of other Mattel employees. Bryant Tr. Vol. 5 at 1093:14-1094:7 (commenting ████████████████████████████████████████ Zeller Dec., Exh. 5; id. at 1094:8-1095:13 (confirming that he would give direction and see whether his directions were complied with). |
|  | Bryant had responsibilities with respect to vendors and was involved in decisions as to which vendors to use. Bryant Tr. Vol. 5 at 1091:17-1093:12 (Bryant confirmed he reviewed their work, and made judgments concerning the adequacy or acceptability of their work), Zeller Dec., Exh. 5. |
|  | Bryant participated in brainstorms were both designers and marketing personnel would suggest ideas for new products. Tomiyama Tr. at 50:18-53:22, Zeller Dec., Exh. 15. |
| 31.   Bryant was assigned design projects by the supervisor of the design team, with specific guidelines as to how he should implement that project. | **Disputed** Ex. 1 (Bryant Dep. 241:13-25) (Bryant's job responsibilities at Mattel included taking an assignment from his supervisors and creating a design that he believed was responsive to those instructions) Ex. 19 (Hoffman-Briggs Depo. 55:16-56:4) (designers at Mattel are assigned specific projects from management and given guidelines on how to execute the project) Ex. 19 (Hoffman-Briggs Depo. 54:23-55:12) (process for doll design at Mattel entails an assignment from management, the creation of a 2-D |

07209/2447783.1072209/2447783.1

| Material Fact | Disputed or Undisputed |
|---|---|
| | design by a designer, and, if that design is approved, the creation of a 3-D design by a pattern maker) |
| | **Contrary Evidence:** |
| | In the 1999-2000 time frame the goal of everyone else in the doll development process was to be faithful to the vision of the preliminary designer so that the final product would be faithful to the preliminary designer's vision. Tomiyama Tr. Vol. 1 at 46:9-21, Zeller Dec., Exh. 15. |
| | Christine Tomiyama, a former Mattel employee who worked with Bryant when he was a preliminary designer in Barbie Collectibles, noted that he gave extremely detailed direction as to the look of his dolls when she worked with him. Tomiyama Tr. Vol. 1 at 34:16-36:20, Zeller Dec., Exh. 15. |
| | Tomiyama further testified that final products on which Bryant was the preliminary designer looked as consistent with his initial vision as they could and still meet Mattel's cost requirements. Tomiyama Tr. Vol. 1 at 45:6-15, Zeller Dec., Exh. 15. |
| | Bryant participated in brainstorms were both designers and marketing personnel would suggest ideas for new products. Tomiyama Tr. at 50:18-53:22, Zeller Dec., Exh. 15. |
| 32.    Ms. Driskill and other managers had final approval over all ideas, developments and changes made to a doll. | **Undisputed** <br><br> Ex. 19 (Hoffman-Briggs Depo. 55:6-58:14, 60:14-16) (describing process of doll development at Mattel, including role of Ms. Driskill and other managers in supervising and approving of design at various stages in its development) Ex. 3 (Bryant Dep. 544:14-23; 545:2- |

| Material Fact | Disputed or Undisputed |
|---|---|
|  | 21) (Mattel management would provide parameters of a design assignment) |
| 33.    Bryant was one of two or three dozen people who contributed to the doll-making process in the design team led by Ms. Driskill. | **Disputed**<br><br>Ex. 20 (Driskill Dep. 302:1-12)<br><br>**Contrary Evidence:**<br><br>Bryant participated in brainstorms were both designers and marketing personnel would suggest ideas for new products. Tomiyama Tr. at 50:18-53:22, Zeller Dec., Exh. 15.<br><br>In the 1999-2000 time frame the goal of everyone else in the doll development process was to be faithful to the vision of the preliminary designer so that the final product would be faithful to the preliminary designer's vision. Tomiyama Tr. Vol. 1, at 46:9-21, Zeller Dec., Exh. 15.<br><br>Christine Tomiyama, a former Mattel employee who worked with Bryant when he was a preliminary designer in Barbie Collectibles, noted that he gave extremely detailed direction as to the look of his dolls when she worked with him.  Tomiyama Tr. Vol. 1 at 34:16-36:20, Zeller Dec., Exh. 15.<br><br>Tomiyama further testified that final products on which Bryant was the preliminary designer looked as consistent with his initial vision as they could and still meet Mattel's cost requirements.  Tomiyama Tr. Vol. 1 at 45:6-15, Zeller Dec., Exh. 15.<br><br>Bryant's role at Mattel included directing other employees.  Tomiyama testified that his job duties at Mattel included instructing people on what to do e.g., hair, face, and fashion details for dolls, Tomiyama Tr. Vol. 1 at 34:19- |

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT

| Material Fact | Disputed or Undisputed |
|---|---|
| | 36:20 (confirming that Bryant ███████████████ and that he ███ ████████████ Zeller Dec., Exh. 15.<br><br>Mattel designer Rene Pasko stated that her job at Mattel included directing others since as a designer she would ████████████████ as well as be consulted on ██████████ Pasko Tr. at 50:21-52:21, Zeller Dec., Exh. 16<br><br>Preliminary designers like Bryant also instructed development designers. Tomiyama Tr. Vol. 1 at 37:25-39:8 (acknowledging that █████ ███████████████████████████ Zeller Dec., Exh. 15.<br><br>Pasko Tr. at 51:22-52:12 (explaining that █████████████████████████████ She would do this by using the resources that she had by consulting with and giving direction to ██████████ Zeller Dec., Exh. 16.<br><br>Bryant directed, reviewed, and commented on the work of other Mattel employees. Bryant Tr. Vol. 5 at 1093:14-1094:7 (commenting ███████████████████████████████ Zeller Dec., Exh. 5; Bryant Tr. Vol. 5 at 1094:8-1095:13 (confirming that he would give direction and see whether his directions were complied with), |

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT

| Material Fact | Disputed or Undisputed |
|---|---|
| | Zeller Dec., Exh. 5.<br><br>Bryant had responsibilities with respect to vendors and was involved in decisions as to which vendors to use. Bryant Tr. Vol. 5 at 1091:17-1093:12 (Bryant confirmed he reviewed their work, and made judgments concerning the adequacy or acceptability of their work), Zeller Dec., Exh. 5.<br><br>**Evidentiary Objections**<br><br>Objection to the supporting deposition transcript of Ann Driskill at 302:1-12 on the grounds that it is an incomplete excerpt. Fed. R. Evid. 106. |
| 34.    Bryant was not an officer or director of Mattel. | **Undisputed**<br><br>Ex. 13 (Simpson-Taylor Dep. 299:9-13) |
| 35.    While Bryant did provide creative input to others on his design team, he did not manage them. | **Disputed**<br><br>Ex. 19 (Hoffman Briggs Dep. 64:23-65:15) (describing how pattern maker and doll designer would work together to translate two-dimensional drawing of fashion to three-dimensional doll fashion)<br>Ex. 3 (Bryant Dep. 545:22-546:19) (Bryant would work with model maker to determine how to make a design workable)<br>Ex. 5 (Bryant Dep. 1094:1-17) (explaining that, while Bryant did not supervise other employees, he did work together with other employees and share his ideas and comments with them)<br><br>**Contrary Evidence:**<br><br>In the 1999-2000 time frame the goal of everyone else in the doll development process was to be faithful to the vision of the preliminary designer so that the final product would be faithful to the preliminary designer's vision. |

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT

| Material Fact | Disputed or Undisputed |
|---|---|
| | Tomiyama Tr. at 46:9-21, Zeller Dec., Exh. 15. |
| | Christine Tomiyama, a former Mattel employee who worked with Bryant when he was a preliminary designer in Barbie Collectibles, noted that he gave extremely detailed direction as to the look of his dolls when she worked with him. Tomiyama Tr. at 34:16-36:20, Zeller Dec., Exh. 15. |
| | Tomiyama further testified that final products on which Bryant was the preliminary designer looked as consistent with his initial vision as they could and still meet Mattel's cost requirements. Tomiyama Tr. at 45:6-15, Zeller Dec., Exh. 15. |
| | Bryant's role at Mattel included directing other employees. Tomiyama testified that his job duties at Mattel included instructing people on what to do e.g., hair, face, and fashion details for dolls, Tomiyama Tr. at 34:19-36:20 (confirming that Bryant ███████ ████████████████████████████ and that he ███ ████████ Zeller Dec., Exh. 15. |
| | Mattel designer Rene Pasko stated that her job at Mattel included directing others since as a designer she would ████████████████ as well as be consulted on ██████████ Pasko Tr. at 50:21-52:21, Zeller Dec., Exh. 16. |
| | Preliminary designers like Bryant also instructed development designers. Tomiyama Tr. Vol. 1 at 37:25-39:8 (acknowledging that ████████ |

31

| Material Fact | Disputed or Undisputed |
|---|---|
| | ███████████████████████<br>Zeller Dec., Exh. 15.<br><br>Pasko Tr. at 51:22-52:12 (explaining that ██████████████████████████████████████████ She would do this by using the resources that she had by consulting with and giving direction to ████████ Zeller Dec., Exh. 16.<br><br>Bryant directed, reviewed, and commented on the work of other Mattel employees. Bryant Tr. Vol. 5 at 1093:14-1094:7 (commenting that ██████████████████████████████████████████ Zeller Dec., Exh. 5; id. at 1094:8-1095:13 (confirming that he would give direction and see whether his directions were complied with). |
| 36.   There is no evidence that Bryant disciplined other employees, wrote performance reviews of other employees, hired of fired employees, set salaries or determined promotions. | **Disputed**<br><br>Ex. 13 (Simpson-Taylor Dep. 300:3-14) (Mattel 30(b)(6) designee "not aware" of Bryant being "involved in a hiring process" at Mattel)<br>Ex. 13 (Simpson-Taylor Dep. 305:17-21) (Bryant did not write performance reviews for other Mattel employees)<br><br>**Evidentiary Objections**<br><br>Objection to the supporting deposition transcript of Kathleen Simpson-Taylor at 300:3-14 and 305:17-21 on the grounds that these are incomplete excerpts. Fed. R. Evid. 106. |
| No   Number:   During   Bryant's employment at Mattel, Mattel did not assert ownership rights to employees' | **Disputed**<br><br>Bryant cites no evidence to support this |

| Material Fact | Disputed or Undisputed |
|---|---|
| moonlight or personal portfolio work | improper heading. |
| 37. While Bryant was at Mattel, other Mattel employees did non-Mattel work on their own time, both independently and with other businesses, including Mattel competitors. | **Disputed**<br><br>Ex. 21 (Cloonan Dep. 100:21-107:2) (Mattel employees would ███ and that this was ███ in the Mattel Design Center)<br>Ex. 21 (Cloonan Dep. 304:20-305:16) (describing Mattel employee who worked for Mattel and its competitors, as a vendor)<br>Ex. 22 (Leahy Dep. 179:14-191:12) (describing that it was a common practice for Mattel employees to take on additional work outside of Mattel, including for vendors)<br><br>**Contrary evidence:**<br><br>Cloonan was not aware of any Mattel employee doing work for its competitors. Deposition Transcript of Elise Cloonan Vol. 1 ("Cloonan Tr. Vol. 1"), dated December 14, 2007 at 100:12-18 ███████ Zeller Dec., Exh. 17. <u>See also id.</u> at 106:22-107:2, Zeller Dec., Exh. 17.<br><br>Margaret Hatch Leahy admitted to doing work for a Mattel vendor while she was employed by Mattel, but she also acknowledged that it was in violation of her employment agreement and that she did not talk about her side work with senior executives. Deposition Transcript of Margaret Leahy ("Leahy Tr."), dated December 12, 2007, at 186:23-187:21, Zeller Dec., Exh. 18. |

| Material Fact | Disputed or Undisputed |
|---|---|
| | **Evidentiary Objections** Objection to the supporting deposition transcript of Elise Cloonan at 100:21-107:2 on the grounds that the statement lacks foundation and personal knowledge, is irrelevant, speculative, an incomplete excerpt, and constitutes inadmissible hearsay.   Fed. R. Evid. 104, 106, 602, 801, 802. Objection to the supporting deposition transcript of Margaret Hatch-Leahy at 179:14-188:14 on the grounds that the statement lacks foundation, is speculative and constitutes inadmissible hearsay. Fed. R. Evid. 104, 602, 801, 802. |
| 38.    It was ▮▮▮ at Mattel that Mattel employees did non-Mattel work on their own time. | **Disputed** Ex. 23 (Marlow Dep. 47:8-49:23) (it was ▮▮▮ that Mattel employees took on additional work outside of Mattel) Ex. 22 (Leahy Dep. 179:14-191:12) (describing that employees at Mattel ▮▮▮ **Contrary evidence:** Margaret Hatch Leahy admitted to doing work for a Mattel vendor while she was employed by Mattel, but she also acknowledged that it was in violation of her employment agreement and that she did not talk about her side work with senior executives. Leahy Tr. Vol. 1 at 186:23-187:21, Zeller Dec., Exh. 18. The remaining witnesses who testified that it was ▮▮▮ that Mattel employees took on additional work outside of Mattel could not name any examples of employees actually |

| Material Fact | Disputed or Undisputed |
|---|---|
| | working for competitors.  See Marlow Tr. at 47:8-49:23, Anderson Dec., Exh. 23; see also Cloonan Tr. at 105:23-106:22, Zeller Dec., Exh. 17; Bryant Tr. Vol. 4 at 866:21-870:12.<br><br>**Evidentiary Objections**<br><br>Objection to the supporting deposition transcript of Veronica Marlow at 48:7-49:23 on the grounds that the statement lacks foundation, is speculative and constitutes inadmissible hearsay.  Fed. R. Evid. 104, 602, 801, 802.<br><br>Objection to the supporting deposition transcript of Leahy at 179:14-11:14 on the grounds that the statement lacks foundation and personal knowledge, is speculative and constitutes inadmissible hearsay.  Fed. R. Evid. 104, 602, 801, 802. |
| 39.   Mattel employees believed that Mattel did not own work they did on their own time, outside of Mattel. | **Disputed**<br><br>Ex.  23  (Marlow  dep.  58:7-59:11) (former Mattel employee explaining that she understood that ideas she came up outside of her work at Mattel did not belong to Mattel)<br>Ex. 24 (De Anda dep. of 12/19/2007, 160:16-162:14) (Mattel head of security explains that work he does for non-Mattel entities at home or on weekends is done on his own time, not on Mattel's time)<br>Ex. 25 (Ongchangco Dep. 250:7-22.) (Mattel  staff  designer  explains  that when he draws something at home, not related to his work at Mattel, he does not show it to Mattel)<br><br>**Evidence cited does not support the stated proposition:**<br><br>Neither De Anda's nor Ongchangco's testimony  was  about  work  related  to |

| Material Fact | Disputed or Undisputed |
|---|---|
| | Mattel's work.  De Anda Tr. at 160:16-162:14, Anderson Dec., Exh. 24; Ongchangco Tr. at 250:7-22, Anderson Dec., Exh. 25. |

**Contrary Evidence:**

Bryant himself knew that work outside of Mattel was owned by Mattel.   In 1998, while Bryant was employed by Mattel, he discussed with his mother the fact that he could not sell sketches on the side because it would ████ ████████████████  Deposition Transcript of Janet Bryant, Vol. 1 ("J. Bryant Vol. 1"), dated September 25, 2007 at 83:20-86:22, Zeller Dec., Exh. 20.

Elise Cloonan knew that work outside of Mattel was owned by Mattel. Cloonan Tr. Vol. 1 at 131:8-23 (noting a conversation in November 2002 that she had with Bryant in which ████ █████████████████████████ ████████████████████████ ████████  Zeller Dec., Exh. 17.

Cloonan testified that she was aware that ████████████████████████ ████████  Cloonan Tr. Vol. 1 at 99:4-100:10, Zeller Dec., Exh. 17.

Margaret Leahy testified that she knew moonlighting for other competitors was inconsistent with her Mattel agreement. Further, she did not disclose her activities to senior executives.   Leahy Tr. Vol. 1 at 186:23-187:21, Zeller Dec., Exh. 18.

Christine Tomiyama testified that Mattel employees were aware that they did not own projects they did on their

| Material Fact | Disputed or Undisputed |
|---|---|
| | own time.  Tomiyama Tr. at 149:6-9 ████████████████████████ ████████████████████████ ████████████████████████ ████  Zeller Dec., Exh. 15. Ann Driskill testified that she was aware that Mattel owns inventions that she creates or invents as a designer at Mattel irrespective of whether it is created at home or at work.  Deposition Transcript of Ann Driskill ("Driskill Tr. Vol. 1") dated December 15, 2004, at 34:1-25 ██████████████████████ ██████  Zeller Dec., Exh. 19. **Evidentiary Objections** Objection to the supporting deposition transcript of Veronica Marlow at 58:7-59:11 on the grounds that the statement is irrelevant and confusing and constitutes improper opinion by lay witness.  Fed. R. Evid. 402, 403, 701. Objection to the supporting deposition transcript of Richard De Anda at 160:16-162:14 on the grounds that the statement is irrelevant and confusing and constitutes improper opinion by lay witness.  Fed. R. Evid. 402, 403, 701. Objection to the supporting deposition transcript of Kislap Ongchangco at 250:8-22 on the grounds that the statement is irrelevant and confusing and constitutes improper opinion by lay witness.  Fed. R. Evid. 402, 403, 701. |
| No Number:  No evidence suggests that Mattel established any routines or processes to identify, investigate, punish or prevent "moonlighting" work. | **Disputed** Bryant cites no evidence to support this improper heading. |
| 40.    Margaret    Leahy's    supervisor, | **Disputed** |

| Material Fact | Disputed or Undisputed |
|---|---|
| Michael Hebden, helped her to find freelance work outside Mattel by suggesting that she contact Mattel vendors. | Ex. 22 (Leahy dep. 183:22-185:6)<br><br>**The evidence cited does not support the stated proposition.**<br><br>**Contrary evidence:**<br><br>Margaret Hatch Leahy admitted to doing work for a Mattel vendor while she was employed by Mattel, but she also acknowledged that it was in violation of her employment agreement and that she did not talk about her side work with senior executives. Leahy Tr. Vol. 1 at 186:23-187:21, Zeller Dec., Exh. 18.<br><br>**Evidentiary Objections**<br><br>Objection to the supporting deposition transcript of Margaret Hatch-Leahy at 183:22-185:6 on the grounds that the statement is irrelevant and confusing, an incomplete excerpt and inadmissible hearsay. Fed. R. Evid. 402, 403, 106, 801, 802. |
| 41.   Mattel's head of security, Richard De Anda, could not remember any specific instance in which his department investigated allegations of moonlighting. | **Disputed**<br><br>Ex. 24 (De Anda dep. 157:20-25)<br><br>**Contrary evidence:**<br><br>After De Anda was deposed, his department investigated allegations of moonlighting by Ana Isabel Cabrera, Beatrice Morales and Maria Salazar after the deposition of Veronica Marlow on December 28, 2007, where she first revealed that they had worked for a competitor while employed by Mattel. Witness Interview of Isabel Ana Cabrera, dated January 2, 2008 at 1:1-4:3, Zeller Dec., Exh. 103; see also Witness Interview of Beatriz Morales, |

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT

| Material Fact | Disputed or Undisputed |
|---|---|
| | dated January 14, 2008 at 1:1-4:1, Zeller Dec., Exh. 104. Marlow testified that all three had performed Bratz work during their employment at Mattel. Marlow Tr. at 286:23-290:13 (regarding Cabrera), 306:14-308:1 (regarding Morales), 363:15-364:9 (regarding Salazar), Zeller Dec., Exh. 21. |
| 42. Mattel's head of ▇▇▇ at the time, did not know ▇▇▇ about moonlighting at Mattel. | Undisputed<br><br>Ex. 26 (Fontanella dep. 52:2-8) |
| No Number: Mattel did not provide Bryant with any payment or other consideration for signing Mattel's "Proprietary Information Checkout." | Disputed<br><br>Bryant cites no evidence to support this improper heading. |
| 43. Immediately before Bryant left Mattel in October 2000, Mattel asked him to participate in an exit interview conducted by Sandy Yonemoto. | Undisputed<br><br>Ex. 11 (Freed dep. 42:24-43:21) |
| 44. During the exit interview, Bryant signed Mattel's "Proprietary Information Checkout" ("Checkout Form"). | Undisputed<br><br>Ex. 27 (M 0001604 – Mattel Proprietary Information Checkout signed by Bryant) |
| 45. There is no evidence that Mattel provided Bryant with a copy of the Employee Agreement when he signed the Checkout Form. | Disputed<br><br>There is no evidence that Mattel did not provide Bryant with a copy of the Inventions Agreement when he signed the Checkout Form. |
| 46. Mattel admits that it did not give Bryant any additional money for signing the Checkout Form. | Undisputed<br><br>Ex. 12 (Mattel's Responses to MGA's Fifth Set of Reqs. for Admis.), No 39. |
| 47. Mattel's 30(b)(6) representative did not identify the Checkout Form as among Bryant's contracts with Mattel. | Disputed<br><br>Ex. 11 (Freed Dep. 31:4-7; 42:17-21)<br><br>**The evidence cited does not support the stated proposition:**<br><br>Freed was asked what contracts Bryant signed when he was hired in 1995 and rehired in 1999, not what contracts he signed when he left in 1998 and again in 2000. See Freed Tr. at 31:4-7; 42:17-21, Anderson Dec., Exh. 11. |

39

| Material Fact | Disputed or Undisputed |
|---|---|
| | **Contrary evidence:** |
| | Mattel's Responses to MGA's Fifth Set of Requests for Admission at Response No. 40, Anderson Dec., Exh. 12. |
| No Number: Mattel substantially expanded the scope of the Employee Agreement in March 2004.[2] | **Disputed**<br><br>Bryant cites no evidence to support this improper heading. |
| 48.   In 2004, Mattel had all existing employees execute a revised Employee Agreement ("2004 Employee Agreement"). | **Disputed**<br><br>Ex. 31 (M 0079346-M 0079350 – 2004 version of Mattel Employee Confidentiality and Inventions Agreement)<br>Ex. 11 (Freed Dep. 55:21-56:8).<br><br>**Evidentiary Objections**<br><br>Objection to the supporting deposition transcript of Lissa S. Freed at 55:21-56:8 on the grounds that the statement is irrelevant and confusing. <u>Fed. R. Evid.</u> 402, 403. |
| 49.   The 2004 Employee Agreement was substantially rewritten and expanded in scope from the version signed by Bryant. | **Disputed**<br><br>Ex. 31 (2004 version of Mattel Employee Confidentiality and Inventions Agreement)<br>Ex. 8 (M 001596 – Employee Agreement signed by Bryant)<br><br>**Evidentiary Objections**<br><br>Objection to the Exhibit 31 to the supporting declaration of Christa Anderson on the grounds that this document is irrelevant and confusing. <u>Fed. R. Evid.</u> 402, 403. |
| No Number:   Mattel seeks to interpret | **Undisputed** |

[2] Bryant does not believe that the following facts (SUF ¶¶ 50-52) are material to resolution of his motion for partial summary judgment. These facts are included in this statement to comport with the Court's requirement that no factual evidence be cited directly within the brief.

| Material Fact | Disputed or Undisputed |
|---|---|
| the term ▇▇▇▇ in the 1999 Employee Agreement very broadly.[3] | |
| 50.    Mattel's former President of its Girls Division, Adrienne Fontanella, testified ▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | Undisputed<br><br>Ex. 26 (Fontanella Dep. 32:9-11) |
| 51.    Mattel executive described her own ▇▇▇▇▇ at Mattel as including a worldwide licensing model; advertising; logos; branding messages; ▇▇▇▇▇▇ and ▇▇▇▇▇ the Polly Pocket doll; a ▇▇▇▇▇ to expand the Girls business beyond Barbie; and even ▇▇▇ ▇▇▇▇▇▇ | Undisputed<br><br>Ex. 26 (Fontanella Dep. 33:2-39:24) |
| 52.    Senior-Vice President responsible for Mattel's Design Center in 1999 testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | Undisputed<br><br>Ex. 28 (Ross Dep. 76:23-77:12) |

| Additional Material Facts | Evidentiary Support |
|---|---|
| 53.    Bryant testified that he got the inspiration for Bratz in late August 1998 when he was driving by Kickapoo High School either to or from work at an Old Navy at Battlefield Mall.  The kids were ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | Deposition Transcript of Carter Bryant Vol 1 ("Bryant Tr. Vol. 1), November 4, 204 at 140:9-142:13, Zeller Dec., Exh.1. |

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT

| | |
|---|---|
| ████████████████ He testified that he also was influenced by a Paris Blues ad, a Steve Madden ad and an ad for a Dixie Chicks album in Seventeen Magazine.) | |
| 54.   Bryant has given inconsistent testimony as to whether he worked as a freelance artist in 1998. | According to Bryant, he *only* worked as a freelance artist for Ashton Drake galleries in 1998. Bryant Tr. Vol. 1 at 143:12-16 (clarifying that although he designed greeting cards, ████████ ███████████████████████) <br><br> Cf. Bryant denies doing anything in the design field at this time. Deposition of Carter   Bryant   in   Gunther-Wahl Productions, Inc. v. Mattel, Inc., dated September 9, 2003, at 89:23-90.7, Zeller Dec., Exh. 6. |
| 55.   Bryant convinced Sheila Kyaw to paint a Bratz doll's head in the Mattel Design Center. | Deposition Transcript of Sheila Kyaw, Vol. I, ("Kyaw Transcript Vol. 1"), January   24,   2008   at   299:22-301:3, Corey Dec., Exh. 8. |
| 56.   Mattel's offer letter to Bryant reflects an intention to enter into a confidential relationship. | The December 9, 1998 offer letter from Mattel to Bryant reflects an intention to enter into a confidential relationship. Mattel's   Vice   President   of   Human Resources states ████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ Mattel   1998   Offer   letter   (emphasis added), Bates-numbered M 0001613-4, Zeller Dec., Exh. 11. |
| 57.   Mattel employees can negotiate the terms of their Inventions Agreement and have done so, including at least one witness deposed in this case. | Mattel employee Alan Kaye testified employees had refused to sign the inventions agreement █████ and that there   were ██████████████ ████████████████████ Kaye Tr., Dec. 10, 2004, at 215:3-216:23, Zeller Dec., Exh. 65; see also Fontanella Tr., Jan. 16, 2008, at 26:11-28:3. |

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT

| | |
|---|---|
| | Robert Hudnut made changes to Mattel's Employee Confidential Information and Inventions Agreement, as well as the Conflict of Interest Questionnaire. Hudnut Agreement, Bates-numbered M 0098318-9, (on which he writes ▮▮▮ ▮▮▮▮ Zeller Dec., Exh. 7; Hudnut's side letter, Bates-numbered M 0098320-1, Zeller Dec., Exh. 8; Hudnut's Questionnaire, Bates-numbered M 0098322-3, (on which he writes ▮▮▮ ▮▮▮▮ Zeller Dec., Exh. 9; Hudnut Tr. at 209:14-211:15, 216:25-220:3, Zeller Dec., Exh. 10. |
| 58.   In the Inventions Agreement, Bryant specifically acknowledged: ▮▮▮▮▮▮▮ | The opening paragraph of the agreement states, among other things, that Bryant ▮▮▮▮▮▮▮ when employment with the company ends.<br><br>Further, ▮▮▮▮▮▮▮ Inventions Agreement (emphasis added), Proctor Dec., Exh. 5. |
| 59.   Bryant received the Inventions Agreement in the mail prior to his first day at Mattel. | Mattel new hires are mailed a packet before they arrive for orientation that includes both their Mattel Conflict of Interest Questionnaire and Inventions Agreement.  See Freed Tr. at 37:7-18, Zeller Dec., Exh. 57. |

43

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT

60.   As a preliminary designer in Barbie Collectibles, Bryant exercised discretion in design, supervised others and ███████████████████████████ ████████████████████████████

Bryant's role at Mattel included directing other employees.  Tomiyama testified that his job duties at Mattel included instructing people on what to do e.g., hair, face, and fashion details for dolls, Tomiyama Tr. at 34:19-36:20 (confirming that Bryant ██████ ███████████████████████████ ███████████████████████████ ███████████████████████████ ███████████████████████████  Zeller Dec., Exh. 15.

Mattel Designer Renee Pasko stated that her job at Mattel included directing others since as a designer she would ███████████████ as well as be consulted on ██████████ Pasko Tr. at 50:21-52:21, Zeller Dec., Exh. 16

Preliminary designers like Bryant also instructed development designers. Tomiyama Tr. at 37:25-39:8 (acknowledging that ██████ ███████████████████████████ ███████████████████████████ ███████████████████████████ Zeller Dec., Exh. 15.

Pasko Tr. at 51:22-52:12 (explaining that █████████████████████████ ███████████████████████████ ███████████████████████████ ██████████████  She would do this by using the resources that she had by consulting with and giving direction to ███████████████  Zeller Dec. Exh.16 .

Bryant directed, reviewed, and commented on the work of other Mattel employees.   Bryant Tr. Vol. 5 at 1093:14-1094:7 (commenting that ███████████████████████████

44

| | |
|---|---|
| | ▬▬▬▬▬ Zeller Dec., Exh. 5; <u>id.</u> at 1094:8-1095:13 (confirming that he would give direction and see whether his directions were complied with). |
| 61.    Bryant and the MGA witnesses dispute among themselves exactly when Bryant pitched Bratz to MGA, but the pitch occurred no later than September 2000. | See Mattel, Inc.'s Statement of Genuine Issues Regarding MGA Parties' [Proposed] Separate Statement of Undisputed Statements of Fact and Conclusions of Law at Additional Material Fact ("AMF") 81. |
| 62.    Bryant admitted creating a Bratz ▬▬▬▬ or model using Mattel resources and that he paid at least one Mattel employee for her work on Bratz. | Bryant Tr. Vol. 3 at 666:5-667:9, Corey Dec., Exh. 3; Bryant Tr. Vol. 1 at 166:10-170:15 (describing his recruitment of two Mattel employees to make his ▬▬▬▬ Corey Dec., Exh. 1; <u>id.</u> at 165:6-8 ▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬ Deposition Transcript of Carter Bryant, Vol. 4 ("Bryant Tr. Vol. 4"), dated January 23, 2008, at 817:8-19 (where Bryant admits paying Sheila Kyaw for her work on the dummy), Corey Dec., Exh. 4; <u>see also</u> Kyaw Tr. at 169:23-170:21, 173:24-176:8, 251:3-4, 251:24-252:1, Corey Dec., Exh. 8. |
| 63.    Bryant had told the two Mattel employees who worked on his ▬▬▬▬ that their work was for a personal project. | Bryant Tr. Vol. 1 at 169:18-170:10 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬ Zeller Dec., Exh. 1. |
| 64.    Bryant created Bratz designs that bore March and April 2000 fax header dates -- six to seven months before his last day at Mattel. | Bratz designs with March and April 2000 fax headers, Bates-numbered KMW-M 01647-8, MGA HK 0001928, MGA HK 0001935, KMW-M 007726, KMW-M 007729, KMW-M 007734 & BRYANT 00167, Proctor Dec., Exh. 8; <u>see also</u> Bryant Tr. Vol. 2 at 317:17-23, Corey Dec., Exh. 2. |
| 65.    Before even signing the Bryant-MGA Agreement, Bryant met with the sculptor of the Bratz doll, Margaret Leahy, and gave her direction regarding the look of the doll. | Bryant Tr. Vol. 1 at 71:10-76:21, 107:19-110:11, Zeller Dec., Exh. 1; Bryant Tr. Vol. 2 at 341:18-342:11 (testifying about the drawing he gave to Margaret Leahy while he was still at Mattel for her to begin her sculpting work on Bratz), Corey Dec., Exh. 2. |

| | |
|---|---|
| 66. Bryant acknowledged that he ███████████████████████ | Bryant Tr. Vol. 1 at 133:9-15, Corey Dec., Exh. 1; see also id. at 135:25-136:1 ██████████████ |
| 67. Bryant placed dozens of phone calls to MGA from his extension at Mattel. | M 0001820-24 (Mattel phone records showing that Bryant called MGA's main line on 9/11/00, 9/12/00, 9/13/00, 9/14/00, 9/15/00, 9/18/00, 9/19/00, 9/20/00, 9/21/00, 9/25/00, 9/26/00, and 9/27/00, and that he called Isaac Larian on 9/27/00), attached as Exhibit 1 to the Declaration of Rodney Palmer, Jr. ("Palmer Dec."), dated March 6, 2008. |
| 68. Bryant admitted creating drawings of the Bratz characters wearing evening fashion designs in or about July 2000. | Bryant admitted creating drawings of the Bratz characters wearing evening fashion designs in or about July 2000. See Drawing Bates-numbered BRYANT 00273 and a photograph of BRYANT 00273 marked as Exhibit 717 in this action, Zeller Dec., Exh. 24; Bryant Tr. Vol. 2 at 340:21-23, Corey Dec., Exh. 2; BRYANT 00228 and a photograph of BRYANT 00228 marked as Exhibit 719 in this action, Zeller Dec., Exh. 25; Bryant Tr. Vol. 2 at 301:25-302:3, Corey Dec., Exh. 2; BRYANT 00221 and a photograph of BRYANT 00221 marked as Exhibit 722 in this action, Zeller Dec., Exh. 26; Bryant Tr. Vol. 2 at 340:2-4, Corey Dec., Exh. 2; BRYANT 00297 and a photograph of BRYANT 00297 marked as Exhibit 725 in this action, Zeller Dec., Exh. 27; Bryant Tr. Vol. 2 at 358:2-358:4, Corey Dec., Exh. 2; see also Bryant Tr. Vol. 1 at 229:14-230:5, Corey Dec., Exh. 1; Bryant Tr. Vol. 2 at 302:4-19, Corey Dec., Exh. 2; Bryant's Responses to Mattel, Inc.'s Third Set of Requests for Admission Propounded to All Defendants at Response Nos. 9-12; Proctor Dec., Exh. 88. |
| 69. Bryant testified that he drew a key sculptural drawing to give to the sculptor of Bratz to █████ her sculpt. | Bryant Tr. Vol. 2 at 350:16-25, Corey Dec., Exh. 2; sculptural drawing Bates-numbered BRYANT 00278, Zeller |

46

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT

| | |
|---|---|
| Bratz program manager Paula Garcia testified that the same drawing was completed between October 4, 2000 and October 19, 2000. | Dec., Exh. 28; Deposition Transcript of Paula Garcia Vol. 2 ("Garcia Tr. Vol. 2"), dated May 25, 2007, at 589:25-592:7 (Garcia testifies that she thinks the drawing was created in between October 4, 2000 and October 19, 2000, and that it was given to Margaret Leahy), Corey Dec., Exh. 20. |
| 70.   Steven Linker, a third party vendor, testified that he received the same key sculptural drawing that Bryant created for the sculptor as part of a packet of materials from Bryant and MGA while Bryant was still employed by Mattel.   Linker described the drawing as ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ | See Collection of drawings marked as Exhibit 323 in this action at SL00044, Proctor Dec., Exh. 16; see also Deposition Transcript of Steven Linker ("Linker Tr."), dated September 13, 2006 at 77:11-13 (describing Ex. 323, Bates-numbered SL00013-63, as ▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Corey Dec., Exh. 9; id. at 89:11-21 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Corey Dec., Exh. 9. |
| 71.   Bryant admits that he worked on his Bratz drawings while employed by Mattel. | See collection of Bratz drawings marked as Exhibit 2 in this action, Proctor Dec., Exh. 73; Bryant Tr. Vol. 2 at 296:4-297:12 (Bryant admits to coloring the drawings collectively marked as Exhibit 2 in this action in 1999, and that, to his best recollection, he put them together to form a packet in 1999), Zeller Dec., Exh. 2; Werdeger letter to Proctor, dated February 27, 2008, Proctor Dec., Exh. 120. |
| 72.   Bryant admits to not telling anyone at Mattel about his Bratz drawings. | Bryant Tr. Vol. 4 at 885:3-18, Zeller Dec., Exh. 4 |
| 73.   Bryant specifically wrote to MGA's counsel, in the course of their negotiation of the Bryant-MGA Agreement, that he had signed a confidentiality agreement with Mattel, | Facsimile from Bryant to David Rosenbaum, Bates-numbered MGA007337-40, Proctor Dec., Exh. 86. |

| | |
|---|---|
| but could not forward it to him because securing a copy would ███████ ███████ at Mattel. That same communication contained the header of 'Mattel Collectibles" plainly inscribed on it, providing further indication that Bryant was wrongfully using Mattel's resources to do MGA's bidding. | |
| 74. Neither Bryant nor the MGA defendants dispute that Bryant showed MGA his Bratz drawings while employed by Mattel. | MGA's [Proposed] Statement of Uncontroverted Facts and Conclusions of Law in Support of Their Motion for Partial Summary Judgment ("MGA UF") at ¶¶ 8-9, 11-12. |
| 75. The Bryant-MGA Agreement obligated Bryant to provide his services to MGA on a ███████████ while Bryant was still a Mattel employee. | Agreement between Carter Bryant and MGA ("Bryant-MGA Agreement") at 1, Bates-numbered BRYANT 00794-799, Zeller Dec., Exh. 30. |
| 76. While still employed at Mattel, Bryant entered into the Bryant-MGA Agreement which assigned to MGA all ███████████████ including copyrights to ███████████ ████████████████████████ | Bryant-MGA Agreement at ¶ 3(a), Zeller Dec., Exh. 30. |
| 77. The Mattel Inventions Agreement assigns to Mattel ███████████ ███████████ in Bryant's inventions to the extent they were ███████████ ███████████████████████ ███████████████████████ And also his ███████████ ███████████████████████ | Mattel's Employee Confidential Information and Inventions Agreement at ¶2 (a) ("Inventions Agreement"), Bates-numbered M 0001596, Zeller Dec., Exh. 31. |
| 78. The Conflict of Interest Questionnaire requires employees to ███████████████████████ The COI Questionnaire also requires employees to ███████████ ███████████████████████ ███████████████████████ | Conflict of Interest Questionnaire ("COI Questionnaire), Bates-numbered M 0001621, Zeller Dec., Exh. 32. |
| 79. Bryant first worked for Mattel as a designer in the mainline Barbie group | Bryant's 1995 Employee Confidential Information and Inventions Agreement |

48

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT

| | |
|---|---|
| from 1995 to 1998. | ("1995 Inventions Agreement"), Zeller Dec., Exh. 33; Bryant's Employment Application, dated January 1, 1999, listing his first term of employment with Mattel as ▮▮▮▮▮▮ Zeller Dec., Exh 34. |
| 80. · Bryant was credited with successfully re-designing the body of Mattel's fashion doll "Teen Skipper" during his first period of employment at Mattel. | News article about Teen Skipper, Bates-numbered BRYANT 00943-4 (noting Bryant at BRYANT 00944), Zeller Dec., Exh. 35. See also Bryant's cover letter to Hasbro, dated July 14, 1998, Bates-numbered BRYANT 00377 (where Bryant writes ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Zeller Dec., Exh. 36; Bryant's Resume, Bates-numbered BRYANT 00871-2, (Bryant's Special Accomplishments section of his resumes lists him as ▮▮▮▮▮▮▮▮▮ Zeller Dec., Exh. 37. Bryant's Cover Letter to Leggett & Platt, Bates-numbered BRYANT 04647, ( Indicating that his experience at Mattel ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Zeller Dec., Exh. 38. |
| 81. Bryant's ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | Bryant's cover letter to Leggett & Platt, Inc., dated May 27, 1998, Bates-numbered BRYANT 04674, Zeller Dec., Exh. 38. |
| 82. In 1998, while Bryant was ▮▮▮▮▮ to Mattel, he discussed with his mother the fact that he could not sell sketches on the side because it would ▮▮▮▮▮▮▮▮ | J. Bryant Vol. 1 at 83:20-86:22, Zeller Dec., Exh. 20. |

| | |
|---|---|
| 83.   In 2001, Bryant explained to Marlow the copyright assignment in his contract with MGA, which was at least as technical as his Mattel Inventions Agreement. | E-mail exchange between Bryant and Veronica and Peter Marlow, Bates-numbered KMW-M 007635-8, at 007636 (where Bryant explained, ███████████████████████ Zeller Dec., Exh. 13; Bryant Tr. Vol. 4 at 861:18-862:2, Zeller Dec., Exh. 4. |
| 84.   Bryant does not claim ownership of many designs he created at Mattel, including the following: Teen Skipper, Barbie Collectibles Greek Goddesses, Grand Entrance Barbie, Mann's Chinese Barbie, Barbie Awards Night/Hollywood Collection, Barbie Spring Mass Getaway, Barbie Collectible Birds of Beauty-- Swan. | Defendants have not provided any facts to dispute this. |
| 85.   Witnesses have given conflicting accounts of why Bryant left Mattel in early 1998. | Deposition Transcript of Richard Irmen Vol. 1 ("Irmen Tr. Vol. 1"), dated September 28, 2007, at 46:6-48:16 (testifying that Bryant left Mattel the first time to pursue a freelance career in design because he did not like ████ Zeller Dec., Exh. 39; J. Bryant Tr. Vol. 1 at 23:14-25:13 (testifying that Bryant moved back to Missouri in 1998 because he was ████ ████ Zeller Dec., Exh. 20; Bryant Tr. Vol. 1 at 145:13-146:13 (testifying that he wanted to pursue a freelance career and that he missed his family; also acknowledging that he had broken up with his partner Irmen at the time), Zeller Dec., Exh. 1. |
| 86.   Bryant claims he created black and white Bratz sketches while living in Missouri in 1998. | Bryant Tr. Vol. 1 at 140:9-141:14 (discussing his first drawings which were done in Missouri), 149:2-15 (acknowledging the drawings were in |

50

| | |
|---|---|
| | black and white), Zeller Dec., Exh. 1. |
| 87.   Mattel expert William Flynn determined Bryant's 1998 Missouri drawings were created *after* those he testified as having created in 1999. | Expert Report of William Flynn ("Flynn Report"), dated February 11, 2008, at 8 (noting ███████████████████ ███████████████████ ███████████████████ ███████████████████ ███████████████████ ███████████████████ ██████████████ see also Flynn Report at 7; *with* Bryant Vol. 2 at 334:9-10 (regarding BRYANT 0199, ███████████████ and Bryant Vol. 2 at 339:14-340:1 (regarding BRYANT 00220, ███████████ ███████████ |
| 88.   Mattel expert Lloyd Cunningham determined that drawings Bryant claimed to have created in 1998 were torn out of a notebook containing images and entries Bryant completed while he was employed by Mattel in the 1999-2000 period. | Expert Report of Lloyd Cunningham ("Cunningham Report"), dated February 11, 2008, at 2 ██████████ ███████████████████ ███████████████████ ██████████ where Q-4 has been marked as Exhibit 1155 in these proceedings; id. at 3-4 (noting that 00179 and 00182 bled onto pages located within the Q-4 Pen-Tab spiral notebook); id. at 4 ██████████ ███████████████████ ███████████████████ ███████████ Cf. Bryant Tr. Vol. 2 at 328:4-329:1 (noting BRYANT 00179-82 were among the first drawings he did in 1998 on notebook paper); Zeller Dec., Exh. 2; id. at 394:25-395:13 (discussing BRYANT 00334 as a drawing from the Barbie jewel-themed project and responding ██████ to whether BRYANT 00334 and BRYANT 00179-82 came from the |

| | |
|---|---|
| | same notebook); Zeller Dec., Exh. 2; Pen-Tab Spiral Notebook referenced in Cunningham's Report, marked as Exhibit 1155 in these proceedings (and which, notably, includes BRYANT 00334), Zeller Dec., Exh. 40. |
| 89.   Mattel expert Valery Aginsky determined that information regarding when and where the drawings were created was added to a notary book *after* Bryant's drawings had already been notarized. | Expert Report of Valery Aginsky ("Aginsky Report") dated February 8, 2008, at 8 (suggesting that the entry "From 1998 Missouri" was added at some point after the initial four lines regarding the dolls); id. at 7, Attachment 1 (noting two different inks were used to make the entries); id. at 3-4 (The spacing between the initial four lines and the entry at issue also bolster the theory that "From 1998 Missouri" was subsequently added to the log). |
| 90.   The only drawings that Bryant has produced with a handwritten date of "8/1998" are drawings that he admits are color drawings he created in 1999. | Collection of drawings that "8/1998" notations, Bates-numbered BRYANT 00222-34 and marked as Exhibit 3 in these proceedings, Zeller Dec., Exh. 41; Bryant Vol. 2 at 297:17-301:7, Zeller Dec., Exh. 2. |
| 91.   Bryant does not recall when "8/1998" was written on those drawings. | Bryant Vol. 2 at 297:17-301:7, Zeller Dec., Exh. 2. |
| 92.   Bryant admits that he colored his Bratz drawings in 1999, and that, to his best recollection, he assembled them in a packet in 1999. | Collection of drawings, Bates-numbered BRYANT 00310-19, marked as Exhibit 2 in these proceedings, Proctor Dec., Exh. 73; Bryant Tr. Vol. 2 at 296:4-297:14, Zeller Dec., Exh. 2. |
| 93.   Bryant testified to showing his initial Bratz drawings to his mother in 1998. | Bryant Tr. Vol. 1 at 149:16-20, Zeller Dec., Exh. 1. |
| 94.   Bryant's mother testified to seeing drawings in 1998 -- drawings that Bryant testified he did not create until later.  She also testified as having not seen other drawings in 1998 -- drawings Bryant identified as drawings he created in 1998. | E.g., J. Bryant Vol. 1 at 160:14-161:1 (testifying that she believes she saw BRYANT 00164, marked as Exhibit 713, in Missouri in 1998); Zeller Dec., Exh. 20.<br><br>Cf. Bryant Tr. Vol. 2 at 315:19-317:2 (testifying that he did drew BRYANT 00164 ██████████ Zeller Dec., Exh. 2.<br><br>See also J. Bryant Tr. Vol. 1 at 198:3-12 (saying she ██████ whether |

| | |
|---|---|
| | she saw BRYANT 00179, marked as Exhibit 751 in these proceedings,  in Missouri), Zeller Dec., Exh. 20.<br><br>Cf. Bryant Tr. Vol. 2 at 328:4-6 (confirming BRYANT 00179 ████████<br><br>████████ Zeller Dec., Exh. 2 |
| 95.  Bryant returned to Mattel in January 1999 to work as a designer in Mattel's Barbie Collectible's group. | Bryant's  Employment  Application, dated January 1, 1999, Zeller Dec., Exh 34; Inventions Agreement, Zeller Dec., Exh. 31; Bryant Tr. Vol. 2 at 274:13-14, Zeller Dec., Exh. 2. |
| 96.  Mattel's 1998 offer letter to Bryant informed him the offer was contingent upon, among other things, Bryant completing a Confidential Information and Inventions Agreement. | Mattel offer letter dated December 9, 1998,  Bates-numbered  BRYANT 001198-9, Zeller Dec., Exh. 11. |
| 97.  The Inventions Agreement Bryant signed in 1999 was similar to the one he executed when he previously worked for Mattel. | 1995 Inventions Agreement, Zeller Dec., Exh. 33. |
| 98.  The Mattel Inventions Agreement is standard in the toy industry. | Myers Tr. at 214:17-215:2 ████████<br><br>████████████████████<br><br>████████████████████<br><br>████████████████████<br><br>Zeller Dec., Exh. 12.; Rosenbaum Tr. at 231:3-16, Zeller Dec., Exh. 75; Expert Report of Stein at ¶ 3, Stein Dec., Exh. 1;  Expert Report of McRae at ¶ 7, McRae Dec., Exh. 2. |
| 99.  Mattel employees could-- and some did-- negotiate elements of their Mattel Inventions Agreements. | Mattel employee Alan Kaye testified employees had refused to sign the inventions agreement █████ and that there were |

| | |
|---|---|
| | ████████ Kaye Tr., Dec. 10, 2004, at 215:3-216:23, Zeller Dec., Exh. 65; see also Fontanella Tr. at 26:11-28:3.<br><br>Robert Hudnut made changes to Mattel's Employee Confidential Information and Inventions Agreement, as well as the Conflict of Interest Questionnaire. Hudnut Agreement, Bates-numbered M 0098318-9, (on which he writes ████ ███████████████ Zeller Dec., Exh. 7; Hudnut's side letter, Bates-numbered M 0098320-1, Zeller Dec., Exh. 8; Hudnut's Questionnaire, Bates-numbered M 0098322-3, (on which he writes ██████ ████████████████ ██████ Zeller Dec., Exh. 9; Hudnut Tr. at 209:14-211:15, 216:25-220:3, Zeller Dec., Exh. 10. |
| 100. Former Mattel employee Margaret Leahy testified that she understood her obligations to Mattel under her Mattel employment agreements. | Leahy Tr. Vol. 1 at 186:23-187:5, Zeller Dec., Exh. 18. |
| 101. MGA requires its employees to sign analogous agreements. In fact, MGA Hong Kong's 30(b)(6) designee testified to the following: employment agreements are signed by employees, employees do not negotiate the terms of the agreement, employees are not advised to consult an attorney, designs created by employees during their term of employment are owned by the company, moonlighting at competitors or non-competitors of the company is not allowed. | Deposition Transcript of Edmond Lee Vol. 1 ("Lee Tr. Vol. 1"), dated October 4, 2007, at 65:14-70:8, Zeller Dec., Exh. 42. |
| 102. Former Mattel employees Kami Gillmour and Paula Garcia, who left Mattel to work for MGA, signed agreements analogous to those they signed at Mattel. | Collection of documents referencing Kami Gillmour's Confidentiality and Inventions Agreement with MGA, Bates-numbered MGA 0886848-51 (noting ███████████████████ ██████████████████████████ |

| | |
|---|---|
| | ██████████████████████████ ██████████████████████████ ████████████████ Zeller Dec., Exh 43.; Garcia's offer letter and employment terms, Bates-numbered MGA 0876578-85 and marked as Exhibit 1117 in these proceedings, Zeller Dec., Exh. 44; Deposition Transcript of Paula Garcia Vol. 4 ("Garcia Tr. Vol. 4"), dated October 10, 2007, at 1219:21-1222:15, Zeller Dec., Exh. 45. |
| 103. Bryant's consulting agreement with MGA contains an assignment provision analogous to that in Mattel's Inventions Agreement: The ███████████████████████████ ███████████████████████████ ███████████████████████████ ████████ | Bryant-MGA Agreement at ¶ 3 (a), Zeller Dec., Exh. 30. |
| 104. Bryant's consulting agreement with MGA places restrictions on Bryant, even as a contractor, analogous to those to which he agreed in Mattel's Conflict of Interest Questionnaire: ████████ ███████████████████████████ ███████████████████████████ ███████████████████████████ ████████ | Bryant-MGA Agreement at ¶ 2, Zeller Dec., Exh. 30. |
| 105. Former MGA employee Victoria O'Connor testified that Larian referred to Bryant as an inventor. | Deposition Transcript of Victoria O'Connor Confidential ("O'Connor Tr. Conf"), dated December 6, 2004, at 79:3-11 █████████████████████████ █████████████████████████ █████████████████████████ (emphasis added), Zeller Dec., Exh. 46. |

| | |
|---|---|
| 106.   Bryant signed both the Inventions Agreement and the Conflict of Interest Questionnaire. | Inventions Agreement, Zeller Dec., Exh. 31; Conflict of Interest Questionnaire, dated January 4, 1998 [sic; should be 1999], Bates-numbered M 0001621, Zeller Dec., Exh. 32; Bryant Tr. Vol. 3 at 646:20-648:2 (confirming that the date should have been January 4, 1999), Zeller Dec., Exh. 3. |
| 107.   The Inventions Agreement is explained to Mattel employees before they sign it. | Myers Tr. Vol. 1 at 216:19-23, Zeller Dec., Exh. 12. |
| 108.   The Inventions Agreement states that the agreement ███████████████ ████████████████████ | Inventions Agreement, Zeller Dec., Exh. 31. |
| 109.   The Inventions Agreement states that Employee agrees ████████████ ████████████████████████ ████████████████████████ ███████████████ | Inventions agreement, Zeller Dec., Exh. 31. |
| 110.   The Inventions Agreement states ████████████████████████ ████████████████████████ ████████████████████████ ███████████████ | Inventions Agreement, Zeller Dec., Exh. 31. |
| 111.   The Inventions Agreement provides ████████ ████████████████████████ ████████████████████████ ██████████████ | Inventions Agreement at ¶ 2(b), Zeller Dec., Exh. 31. |
| 112.   Under the Inventions Agreement, Bryant must assist Mattel ████████ ██████████████████ | Inventions Agreement at ¶ 2(a), Zeller Dec., Exh. 31. |
| 113.   Bryant is required by the Inventions Agreement to maintain Mattel's proprietary information in strict confidence.   Specifically, ████████ ██████████ | Inventions Agreement at ¶ 1(a)-(d), Zeller Dec., Exh. 31. |

| | |
|---|---|
| ████████████████ | |
| 114. Per the Inventions Agreement, Bryant was required to ███ ████████████████ | Inventions Agreement at ¶ 3(a), Zeller Dec., Exh. 31. |
| 115. The Inventions Agreement prohibited Bryant from ███ ████████████████ | Inventions Agreement at ¶ 3(a), Zeller Dec., Exh. 31. |
| 116. In Mattel's Conflict of Interest Questionnaire, Bryant represented that he was not presently working for any Mattel competitor or ███ ████████████████ | COI Questionnaire, Zeller Dec., Exh. 32. |
| 117. Bryant testified that he understood the yes and no questions in the Questionnaire when he completed it. | Bryant Tr. Vol. 3 at 656:12-19, Zeller Dec., Exh. 3. |
| 118. Bryant testified inconsistently under oath as to whether he understood at least one aspect of his Mattel Conflict of Interest Questionnaire. | Bryant first testified that in 1999, he had no understanding of the sentence in the Questionnaire requiring him to notify his supervisor if circumstances changed. He also did not understand this at the time of his deposition. Bryant Tr. Vol. 3 at 648:14-650:25, Zeller Dec., Exh. 3. He later testified, however, that he understood the sentence, summarizing it as follows, ████████████████ ████████████████ Bryant Tr. Vol. 4 at 858:11-859:24, Zeller Dec., Exh. 4. |
| 119. Bryant admitted that he failed to disclose his Bratz inventions to Mattel. | Bryant Tr. Vol. 4 at 885:3-8, Zeller Dec., Exh. 4. |
| 120. Bryant testified that, while at Mattel, he had extensive access to and | Bryant Tr. Vol. 1 at 17:5-6 ████ |

| | |
|---|---|
| exposure to confidential and proprietary information, including not only the designs for the Barbie line, but other proposed lines of dolls and toys; that he had confidential knowledge relating to design, marketing, production, sales; that his access to the creative resources and concepts at the core of Mattel's business put him in a position of trust within the company. | Corey Dec., Exh. 1; id. at 14:20-16:8 (admitting that he had access to confidential information and stating ████████ Corey Dec., Exh. 1; Bryant Tr. Vol. 4 at 822:1-826:20 (discussing his attendance at meetings regarding products and products in development), Corey Dec., Exh. 7; id. at 828:11-830:15 (acknowledging the openness of the Mattel design center and the possibility that "███████ Corey Dec., Exh. 4; Bryant Tr. Vol. 5 at 1095:15-1097:4 (admitting that he attended brainstorming sessions and that he ████ Corey Dec., Exh. 5. |
| 121. In the 1999-2000 time frame the goal of everyone else in the doll development process was to be faithful to the vision of the preliminary designer so that the final product would be faithful to the preliminary designer's vision. | Tomiyama Tr. at 46:9-21, Zeller Dec., Exh. 15. |
| 122. Christine Tomiyama, a former Mattel employee who worked with Bryant when he was a preliminary designer in Barbie Collectibles, noted that he gave extremely detailed direction as to the look of his dolls when she worked with him. | Tomiyama Tr. Vol. 1 at 34:16-36:20, Zeller Dec., Exh. 15. |
| 123. Tomiyama testified that final products on which Bryant was the preliminary designer looked as consistent with his initial vision as they could and still meet Mattel's cost requirements. | Tomiyama Tr. Vol. 1 at 45:6-15, Zeller Dec., Exh. 15. |
| 124. Evidence establishes that Bryant performed work for MGA while employed by Mattel and that MGA paid him for this work. | See, e.g., Bryant's invoice dated August 31, 2000 and marked as Exhibit 593 in this action, Proctor Dec., Exh. 76; Brode Percipient Tr. at 117:10-118:6, Corey Dec., Exh. 21; internal MGA e-mail regarding setting Bryant up as a vendor, Bates-numbered MGA 001291, |

| | |
|---|---|
| | Proctor Dec., Exh. 89; Deposition Transcript of MGA Designee Kerri Brode ("Brode Designee Tr.") dated January 19, 2007, at 53:6-14, Corey Dec., Exh. 26; Bryant's actual expense report, receipts, and MGA's payment to Bryant for his Bratz expenses, Bates-numbered MGA 3786749-60, Proctor Dec., Exh. 111. |
| 125. Bryant provided direction and feedback on at least two completed versions of the Bratz sculpt before he even left Mattel. | Leahy Tr. Vol. 1 at 158:3-8 (regarding first sculpt), Zeller Dec., Exh. 18; id. at 222:8-19 (noting that she received comments on her revised sculpt on October 6, 2000), Zeller Dec., Exh. 18. |
| 126. Bryant represented to a third party vendor in Japan that he was working for MGA while he was still employed by Mattel. | Facsimile from Bryant to Universal Commerce Corp., Bates-numbered BRYANT 01200-03, Zeller Dec., Exh. 47; see also ¶ 54. |
| 127. Bryant met with a vendor regarding packaging for the Bratz dolls, and provided the vendor with detailed information regarding the piece count and size of the Bratz dolls. | October 12, 2000 e-mail from Liz Hogan to Paula Treantafelles and Carter Bryant, copy to Steve Linker, Bates-numbered SL00001, Zeller Dec., Exh. 48; Linker Tr. Vol. 1 at 57:7-21, Corey Dec. Exh. 9; October 14, 2000 e-mail from Hogan to Treantafelles copying Linker, Bates-numbered SL00005-7, Zeller Dec., Exh. 49; Linker Tr. Vol. 1 at 66:16-67:9, Corey Dec., Exh. 9; Bryant Tr. Vol. 1 at 221:21-222:11 (noting that before he signed his contract with MGA, he and Garcia met with Steve Linker regarding packaging designs for Bratz), Corey Dec., Exh. 1. |
| 128. Before Bryant left Mattel, he misrepresented to a vendor who knew him from Mattel when the vendor asked whether Bryant was still working at Mattel. | Linker Tr. Vol. 1 at 63:22-64:3 (testifying ███████████████ ████████████████████████ ████████████████ Zeller Dec., Exh. 50. See also id. at 64:4-9 (adding ████████████████████████ ████████████████████████ ███████████████ Zeller Dec., Exh. 50. |
| 129. During his exit interview, Bryant claimed that he was leaving to start his own freelancing business and work for | Bryant Tr. Vol. 1. at 208:22-24, Corey Dec., Exh. 1. |

59

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT

| | | |
|---|---|---|
| | himself doing design and development. | |
| 1 | 130. Had Mattel been aware that Bryant was going to a competitor, it would have followed its policy of expelling that employee the same day of his announced resignation. | Deposition Transcript of Sandra Yonemoto, Confidential ("Yonemoto Conf. Tr. Vol. 1"), dated May 30, 2007, at 67:16-19, Corey Dec., Exh. 28. |
| 2 | | |
| 3 | | |
| 4 | 131. When Bryant left Mattel's employ in October 2000, he misrepresented about where he was going, telling Mattel employees that he was not going to work for a competitor. | Bryant Tr. Vol. 1 at 209:16-17 ███████ |
| 5 | | |
| 6 | | |
| 7 | | Corey Dec., Exh. 1; Deposition Transcript of Jill Nordquist ("Nordquist Tr."), dated July 31, 2007, at 145:1-9 (Nordquist testified that ███████ |
| 8 | | |
| 9 | | |
| 10 | | ███████ Corey Dec., Exh. 30; id. at 127:22-128:9 (when asked whether Bryant was going to a competitive doll company, Bryant responded ███████ Corey Dec., Exh. 30; Deposition Transcript of Ivy Ross ("Ross Tr."), dated January 17, 2008, at 87:5-23 |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | ███████ Corey Dec., Exh. 31; id. at 88:17-19 (noting what Bryant described ███████ |
| 20 | | |
| 21 | | Corey Dec., Exh. 31; id. at 220:5-12 (Ross explains that Ron Longsdorf suggested ███████ |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | ███████ Corey Dec., Exh. 31. |
| 26 | 132. Jill Nordquist testified that Mina Mirkazemi did not know where Bryant was going. | Nordquist Tr. Vol. 1 at 125:20-126:6, Zeller Dec., Exh. 51. |
| 27 | | |
| 28 | 133. Larian directed a subordinate to | O'Connor Conf. Tr., dated December 6, |

07209/2447783.107209/2447783.1

| | |
|---|---|
| conceal a fax header from Bryant's signed contract signature page before sending the page to Patricia Glaser, Larian's attorney. The concealed fax header would have shown that the page was faxed from ███████ | 2004, at 18:13-18, Corey Dec., Exh. 14. |
| 134. MGA has produced a document that shows Bryant's ███████ are ███████ and ███████ Bryant's ███████ are ███████ | MGA spreadsheet listing former Mattel employees, Bates-numbered MGA 1134723-30, at 26, Proctor Dec., Exh. 112. |
| 135. It was communicated within MGA -- including by both Isaac Larian and Paula Garcia -- that no one was to discuss Bryant's involvement with Bratz outside of MGA. | Deposition Transcript of Rachel Harris Vol. 1 ("Rachel Harris Tr. Vol. 1"), dated February 26, 2008, at 170:12-172:10, Zeller Dec., Exh. 52; id. at 262:25-263:17, Zeller Dec., Exh. 52. |
| 136. In an e-mail dated March 12, 2002, from Isaac Larian to MGA personnel, regarding inquiries about Bratz, Larian stated that ███████ | E-mail from Isaac Larian dated March 12, 2002 instructing MGA personnel, Bates-numbered MGA 3801819-22, Proctor Dec., Exh. 97. |
| 137. When an MGA vendor wrote about Bryant to a Bratz fan site, Larian directed that the vendor in question was no longer to receive any work from MGA. | Rachel Harris Tr. Vol. 1 at 265:24-267:15, Zeller Dec., Exh. 52. |
| 138. In response to an e-mail from Larian proposing development of a collectible Bratz doll, Dee Dee Valencia proposed creating a limited edition model that would create a marketing ███████ However, she raised the question: ███████ | E-mail from Isaac Larian to Dee Dee Valencia dated February 6, 2003, Bates-numbered MGA 3801558-9, Proctor Dec., Exh. 98. |
| 139. In public statements, Larian identified himself, not Bryant, as the creator of Bratz. | See Affidavit of Isaac Larian in MGA v. Metson at p. 2, ¶ 8, Bates-numbered MGA 0868039-91 (Larian claiming he " ███████ Proctor Dec., Exh. 99; Woodman Tr. Vol. 1 at 218:1-21, Corey Dec., Exh. 17; Business Week article discussing Mattel and Bratz, Bates-numbered M 0074054-6, ███████ |

| | |
|---|---|
| | ███████████  Zeller Dec., Exh. 53; San Fernando Valley Business Journal article discussing Larian, (Larian states ████████████████ Zeller Dec., Exh. 54. |
| | Similarly, Larian represented to the U.S. Patent and Trademark Office that he had created the Bratz feet and packaging: U.S. patent application for Bratz feet marked as Exhibit 500 in this action, Proctor Dec., Exh. 101; Amendment to U.S. patent application for Bratz feet marked as Exhibit 548 in this action, Proctor Dec., Exh. 102; Patent for trapezoidal packaging marked as Exhibit 552 in this action, Proctor Dec., Exh. 103; Patent application for trapezoidal packaging marked as Exhibit 615 in this action, Proctor Dec., Exh. 104. See also e-mail from Isaac Larian dated March 12, 2002 instructing MGA personnel, Bates-numbered MGA 3801819-22 (Larian demanded that a Bratz website make no reference to Mattel), Proctor Dec., Exh 97. |
| 140. MGA admits that no public statement even recognizing Bryant as Bratz's creator was issued until July 18, 2003, when the Wall Street Journal published an article with that information. | MGA Entertainment, Inc.'s Supplemental and Amended Responses to Mattel, Inc.'s Third Set of Requests for Admission to MGA Entertainment, Inc., Proctor Dec., Exh. 106. |
| 141. The Inventions Agreement provides, ██████████████████ ██████████████████ ████████████ | Inventions Agreement at ¶ 4 (a), Zeller Dec., Exh. 31. |
| 142. Elise Cloonan testified that individuals moonlighted at Mattel, but she knew of no specific examples, except Amy Myers who Cloonan claimed was disciplined for working at department store while working for Mattel. | Cloonan Tr. at 105:23-106:22, Zeller Dec., Exh. 17. |
| 143. Myers, however, denies that she ever worked for another company while | Myers Tr. at 62:10-23, Zeller Dec., Exh. 12. |

| | |
|---|---|
| 1 | employed by Mattel or that she was ever disciplined for doing so. | |
| 2<br>3<br>4<br>5<br>6 | 144. After a break in his deposition in which he talked with counsel, Bryant ▮▮▮▮▮ his testimony, stating that there were rumors of individuals moonlighting at Mattel. Bryant, however, did not any specific examples of employees moonlighting-- just generalized rumors. | Bryant Tr. Vol. 4 at 866:21-870:12, Zeller Dec., Exh. 4. |
| 7<br>8<br>9<br>10<br>11 | 145. Assuming Mattel employees were moonlighting as defendants suggest, such work, based on defendants' own description, was completely unrelated to Mattel's core line of business. | See, e.g., Carter Bryant's Responses to Mattel, Inc.'s Third Set of Requests for Admission Propounded to All Defendants at 35 (Joni Pratte's volleyball and basketball books; Lori Sipos' puppets; Veronica Marlow's handbags; other employees' weekend nail and hair salon work), Proctor Dec., Exh. 88. |
| 12<br>13<br>14<br>15<br>16<br>17 | 146. Margaret Hatch Leahy admitted to doing work for a Mattel vendor while she was employed by Mattel, but she also acknowledged that it was in violation of her employment agreement and that she did not talk about her side work with senior executives. Accordingly, Mattel did not learn of her actions until she was deposed in this case in December 2007. | Leahy Tr. Vol. 1 at 186:23-187:21, Zeller Dec., Exh. 18. |
| 18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 147. Mattel did not learn of three Mattel employees who had performed Bratz work during their employment at Mattel until Veronica Marlow's deposition on December 28, 2007. | Mattel learned of the work performed on Bratz by Ana Isabel Cabrera, Beatrice Morales, and Maria Salazar, while each was still employed by Mattel, at Veronica Marlow's deposition ("Marlow Tr."), on December 28, 2007, at 286:23-290:13 (regarding Cabrera), 306:14-308:1 (regarding Morales), 363:15-364:9 (regarding Salazar), Zeller Dec., Exh. 21.<br><br>This was the first time Mattel learned of these individuals, despite having specifically sought the names of such individuals from Defendants years ago. See e.g., Bryant Tr. Vol. 2 at 286:25-287:5, Zeller Dec., Exh. 2; Deposition Transcript of Lisa Tonnu Vol. 2 |

07209/2447783.1   07209/2447783.1

("Tonnu Tr. Vol. 2"), dated, at 301:2-17, Zeller Dec., Exh. 22; MGA's Supplemental Responses to Mattel's Revised Third Set of Interrogatories at 64-70, Zeller Dec., Exh. 23.  In each instance, Defendants failed to disclose that any of these individuals worked on Bratz while employed by Mattel.

Carter Bryant denied being aware of any other Mattel employee working for MGA while he or she was employed by Mattel.  Bryant Tr. Vol. 2 at 286:25-287:5, Zeller Dec., Exh. 2.

As Marlow confirmed, however, Cabrera was a co-worker of Bryant's in Mattel's Barbie Collector department and worked directly with Mr. Bryant. Marlow Tr. Vol. 1 at 296:18-24, Zeller Dec., Exh. 21.

MGA's Rule 30(b)(6) designee on this topic, Lisa Tonnu, identified no one as having performed work or services for MGA while also employed by Mattel at any time since 1998.  Tonnu Tr. Vol. 2 at 301:2-17, Zeller Dec., Exh. 22.

MGA's interrogatory responses entirely failed to name either Ms. Cabrera or Ms. Morales as ever having worked on Bratz and claimed that Ms. Salazar, who subsequently became an MGA employee, did not work on Bratz until more than two years after she left Mattel.  MGA's Supplemental Responses to Mattel's Revised Third Set of Interrogatories at 64-70, Zeller Dec., Exh. 23.

| | |
|---|---|
| 148.  Bryant's role at Mattel included directing other employees. | Tomiyama testified that his job duties at Mattel including instructing people on what to do e.g., hair, face, and fashion details for dolls, Tomiyama Tr. at 34:19-36:20 (confirming that Bryant |

| | |
|---|---|
| | ████████████ and that he ████████ |
| | Zeller Dec., Exh. 15. |
| | Also, see testimony of Pasko (stating that her job at Mattel included directing others since as a designer she would ████ as well as be consulted on ████ Pasko Tr. at 50:21-52:21, Zeller Dec., Exh.16 |
| 149. Preliminary designers like Bryant also instructed development designers. | Tomiyama Tr. at 37:25-39:8 (acknowledging that ████ ████████████ Zeller Dec., Exh. 15. |
| | Pasko Tr. at 51:22-52:12 (explaining that ████████████ She would do this by using the resources that she had by consulting with and giving direction to ████ Zeller Dec., Exh.16. |
| 150. Bryant directed, reviewed, and commented on the work of other Mattel employees. | Bryant Tr. Vol. 5 at 1093:14-1094:7 (commenting that ████████████ Zeller Dec., Exh. 5; id. at 1094:8-1095:13 (confirming that he would give direction and see whether his directions were complied with), Zeller Dec., Exh. 5. |
| 151. Bryant had responsibilities with respect to vendors and was involved in decisions as to which vendors to use. | Deposition Transcript of Carter Bryant Vol. 5 ("Bryant Tr. Vol. 5"), dated, at 1091:17-1093:12 (Bryant confirmed he reviewed their work, and made judgments concerning the adequacy or acceptability of their work), Zeller Dec., Exh. 5. |

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT

| | |
|---|---|
| 152. Bryant admitted to having his drawings notarized in order to get ▆▆▆ ▆▆▆ and to show their date of creation. | Bryant Tr. Vol. 1 at 53:24-54:10 (Bryant ▆▆▆ ▆▆▆ ▆▆▆ Zeller Dec., Exh. 1. |
| 153. Ramona Prince testified that Bryant wanted to have his Bratz drawings notarized because he wanted ▆▆▆ Missouri. | Prince Tr. Vol. 1 at 138:20-159:21, Zeller Dec., Exh. 55. |
| 154. Bryant's father believes that he had a discussion with his son regarding his employment contract. | Deposition Transcript of Thomas Bryant ("T. Bryant Tr."),dated September 26, 2007, at 57:13-60:21 (Bryant's father testified ▆▆▆ ▆▆▆ Zeller Dec., Exh. 56. |
| 155. Prior to his first period of employment at Mattel employment, Bryant was aware of the need to obtain intellectual property rights for his creations. In fact, he spoke of a ▆▆▆ ▆▆▆ for his songs. | T. Bryant at 150:23-152:16 (Bryant's father noting that it may have been before Bryant was a student at Otis that he had conversations with Bryant about the need to obtain intellectual rights to protect ▆▆▆ Zeller Dec., Exh. 56. |
| 156. Bryant's former roommate and close friend at Mattel, Elise Cloonan, testified that she heard through the ▆▆▆ that Bryant was involved with Bratz, but she also testified ▆▆▆ ▆▆▆ | Cloonan Tr. at 132:10-133:3, Zeller Dec., Exh. 17. |
| 157. Cloonan testified that ▆▆▆ ▆▆▆ that she became aware that he might be involved with Bratz. | Cloonan Tr. at 158:15-17, Zeller Dec., Exh. 17. |
| 158. Cloonan testified that when she first learned he was leaving Mattel for the second time, she thought that he was going back to Missouri to work on a music CD. | Cloonan Tr. at 129:54-160:7 ▆▆▆ ▆▆▆ Zeller Dec, Exh. 17. |

| | |
|---|---|
| 159. After Bryant left Mattel, Cloonan learned he was still in California when she saw his car in the driveway at his house. She then was under the impression that he was working on | Cloonan Tr. at 160:4-6, Corey Dec, Exh.6; see id. at 161:11-19 "His car, if his car is in the driveway - he's still there." Zeller Dec. Exh. 17 |
| 160. Cloonan testified that she never had a discussion with Bryant about Bratz until November 2002 -- after she left Mattel. She confronted him, and he told her that he had not told her about his work on Bratz because ▮▮▮▮ | Cloonan Tr. at 131:8-20, Zeller Dec., Exh. 17. |
| 161. When asked about Bryant by others in the Design Center after he left, Cloonan stated that she did not know what Bryant was doing. | Cloonan Tr. at 325:10-19 ▮▮▮▮ ▮▮▮▮ Zeller Dec., Exh. 17. |
| 162. The Checkout Form provides ▮▮▮▮ | Proprietary Information Checkout, Bates-numbered M 0001597, Proctor Dec., Exh. 7. |
| 163. In a facsimile to Paula Garcia from trademark counsel, Lucy Arant asks Paula Garcia, the Bratz project manager, to confirm that she indicated that the original four Bratz dolls' names have a date of first use of June 15, 2000. | Bates-number MGA0829297, Zeller Dec., Exh. 119. |
| 164. In other litigation, MGA stated that the designs of the Bratz dolls were originally created by Mr. Carter Bryant *in 1999* and subsequently amended. | MGA Entertainment, Inc. (1st Plaintiff), MGA Entertainment (HK) Limited (2nd Plaintiff) and Double Grand Corporation Limited (Defendant), Bates numbered MGA 0885348-MGA 0885418 at 0885376, Zeller Dec., Exh. 120. |
| 165. The Bryant-MGA Agreement was referred to as a ▮▮▮▮ in the litigation between MGA Entertainment, Inc. and Uni-Fortune Toys Industrial Limited Fu We Toys Limited. | Bates-numbered M00125293-M0012617 at M0012596, Zeller Dec., Exh. 115. |
| 166. Mattel developed the "Grand | Deposition Transcript of Jill Nordquist |

67

| | |
|---|---|
| Entrance Doll", a series of dolls that were to be designed by a specific designer. Carter Bryant was selected to design the first Grand Entrance Doll. | Vol. 1 ("Nordquist Tr. Vol. 1"), July 31, 2007, at 110:114-111:17, Zeller Dec., Exh. 51. |
| 167.  Bryant never asked to negotiate, modify or customize his Inventions Agreement or Conflict of Interest Quesitonnaire. | Bryant Tr. Vol. 3 at 631:9-639:22, Zeller Dec., Exh. 3. |
| 168.  The Conflict of Interest Questionnaire that Bryant signed in 1995 had identical language to the one he signed in 1999. | See 1995 Conflict of Questionnaire, Zeller Dec., Exh. 101; see also 1999 COI Questionnaire, Zeller Dec., Exh. 32. |
| 169.  When Bryant started at Mattel in 1995, he signed a Conflict of Interest Questionnaire. | Conflict of Interest Questionnaire, dated November 6, 1995, Zeller Dec. Exh 101. |
| 170.  Bryant disclosed in the 1999 COI Questionnaire the design work that he did for Ashton Drake galleries while he was in Missouri.  Notably, he did not disclose any work related to Bratz as having been done during that time. | COI Questionnaire, Zeller Dec., Exh. 32. |
| 171.  The Inventions Agreement provided, in compliance with California Labor Code § 2870, that the assignment did not reach inventions that Bryant might develop exclusively on his own time and with his own resources, unless they related to Mattel's toy business or resulted from work he performed for Mattel. | Inventions Agreement, Anderson Dec., Exh. 8. |
| 172.  At no time did Bryant disclose to Mattel either his work on Bratz or the agreement that he entered into with MGA while a Mattel employee. | Bryant Tr. Vol. 4 at 885:3-18, Corey Dec., Exh. 4; Bryant Tr. Vol. 1 at 209:18-23, Corey Dec., Exh. 1. |
| 173.  Bryant has admitted creating and/or revising more than a dozen of his Bratz drawings while employed by Mattel, including works registered with the Copyright Office by Mattel. | Carter Bryant's Responses to Mattel, Inc.'s Fifth Set of Requests for Admission at Response Nos. 27-29, Zeller Dec., Exh. 102. |
| 174.  Bryant testified that he has earned approximately $20 million in royalties from MGA with respect to Bratz. | Bryant Vol. 5 at 948:17-949:24, Zeller Dec., Exh. 5. |
| 175.  Bryant himself testified that ▇▇▇▇▇ is equivalent to ▇▇ an admission that puts Bryant's Bratz works within the terms of the Agreement. | Deposition Transcript of Carter Bryant, Vol. 4 ("Bryant Tr. Vol. 4"), dated January 23, 2008, at 861:4-13, Corey Dec., Exh. 4. |

07209/2447783.107209/2447783.1

| | |
|---|---|
| 176. During the last portion of Bryant's employment with Mattel, he did not record any time in Mattel's time-keeping system to any Mattel projects, but recorded an unprecedented amount of ▮▮▮▮▮ and ▮▮▮▮▮ time. | See Bryant Time Record, marked as Exhibit 350 at the Deposition of Arnold Artavia, at 6, Zeller Dec., Exh. 124; Deposition Transcript of Arnold Artavia at 95:6-96:9, 105:24-106:1, Zeller Dec., Exh. 125. |
| 177. He claims he solicited Elise Cloonan—his roommate and a fellow Mattel employee—to help him prepare his Bratz pitch materials, but she has no recollection of this. | Bryant Tr. Vol. 2 at 292:14-293:3, Zeller Dec., Exh. 2; Cloonan Tr. at 129:14-132:5, Zeller Dec., Exh. 17. |
| 178. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | Inventions Agreement, Proctor Dec., Exh. 5. |
| 179. Bryant also falsely certified that he had returned to Mattel all the designs and other work he had done while employed by Mattel. | Proprietary Information Checkout Form, Proctor Dec., Exh. 7. |
| 180. Even Bryant's counsel has conceded ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | Transcript of Hearing Regarding Mattel's Motion to Dismiss Bryant's Counter-claims, dated June 26, 2006, at 12:23-25, Proctor Dec., Exh. 8. |
| 181. Bryant left California in early 1998 and moved to Missouri to live with | Bryant Tr. Vol. 1 at 44:24-45:3, Zeller Dec., Exh. 1. |

| | |
|---|---|
| 1 | his parents. Bryant Tr. Vol. 1 at 44:24-45:3. | |
| 2 | 182.  Victoria O'Connor testified that Bryant  would  ████████████ | O'Connor Tr. at 222:1-7, Zeller Dec., Exh. 46. |
| 3 | ████████  because   he   invented   a | |
| 4 | concept. | |

DATED:  March 25, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Jon. D. Corey
Jon D. Corey
Attorneys for Mattel, Inc.

70

MATTEL'S STATEMENT OF GENUINE ISSUES RE BRYANT